Confidential - Subject to Further Confidentiality Review

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                  EASTERN DISTRICT OF LOUISIANA

 3

 4

 5                                        )

 6                                        )

 7                                        ) MDL No. 2047

 8    IN RE: CHINESE-MANUFACTURED         )

 9    DRYWALL PRODUCTS LIABILITY          ) SECTION: L

10    LITIGATION                          )

11                                        ) JUDGE FALLON

12                                        )

13                                        ) MAG. JUDGE WILKINSON

14

15              ***** Confidential *****

16       ***** Subject to Further Confidentiality Review *****

17

18        VIDEOTAPED DEPOSITION OF JOHN SALAMANCA

19                   May 21, 2015

20                Seattle, Washington

21

22

23            GOLKOW TECHNOLOGIES, INC.

24       877.370.3377 ph | 917.591.5672 fax

25              deps@golkow.com
```

<div style="border:1px solid black">

**CONTEMPT**
**Exhibit 96**

</div>

Confidential - Subject to Further Confidentiality Review

```
 1                APPEARANCES
 2    For the Plaintiffs:
 3              Matthew C. Gaughan, Esquire
               Brian F. Fox, Esquire
 4              Levin Fishbein Sedran & Berman
               510 Walnut Street
 5              Suite 500
               Philadelphia, PA  19106-3697
 6              215.592.1500
               215.592.4663 Fax
 7              Mgaughan@lfsblaw.com
 8
      For Defendant BNBM PLC and BNBM Group:
 9
               Kenneth J. Pfaehler, Esquire
10              Dentons US LLP
               1301 K Street NW
11              Suite 600, East Tower
               Washington, DC  20005-3364
12              202.408.6468
               Kenneth.pfaehler@dentons.com
13
14    For Defendant CNBM Group, CNBM Company, and
         CNBM Forest Products:
15
               Jason Cabot, Esquire
16              Orrick Herrington & Sutcliffe LLP
               405 Howard Street
17              San Francisco, CA  94105-2669
               415.773.5605
18              415.773.5759 Fax
               Jcabot@orrick.com
19
20    For Defendant Taishan Gypsum Co., LTD.
         (via telephone):
21
               Mackenzi (Mack) Kahnke, Esquire
22              Alston & Bird, LLP
               1201 West Peachtree Street
23              Atlanta, GA  30309-3424
               404.881.7000
24              404.881.7777 Fax
               Mackenzie.kahnke@alston.com
25
```

Confidential - Subject to Further Confidentiality Review

```
 1    APPEARANCES (CONTINUED)

 2

 3        For Western Wood Lumber Company:

 4                    Mark P. Wittman, Esquire

                      Law Offices of Mark P. Wittman

 5                    1520 140th Avenue NE

                      Suite 200

 6                    Bellevue, WA  98005

                      425.861.1900

 7                    425.558.5993 Fax

                      Mark@wittmanlawfirm.com

 8

 9

10

          Also present:  Nicholas Rapp, Videographer

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Confidential - Subject to Further Confidentiality Review

```
 1                    EXAMINATION INDEX
 2     EXAMINATION BY:                      PAGE NO.
 3     MR. GAUGHAN                             10
 4
 5                     EXHIBIT INDEX
 6     EXHIBIT NO.     DESCRIPTION           PAGE NO.
 7
 8  Exhibit No. 1    Amended notice of expedited    16
                     oral and videotaped
 9                   deposition.
10  Exhibit No. 2    Western Wood offer sheet,      23
                     BNBM(Group)0002862.
11
    Exhibit No. 3    Western Wood offer sheet,      26
12                   BNBM(Group)0002863.
13  Exhibit No. 4    Western Wood offer sheet,      28
                     BNBM(Group)0002864.
14
    Exhibit No. 5    Western Wood offer sheet,      29
15                   BNBM(Group)0002857.
16  Exhibit No. 6    Western Wood offer sheet,      32
                     WW 000352.
17
    Exhibit No. 7    Packet of documents regarding  34
18                   Booking #SEA504517700,
                     WW 000353-61.
19
    Exhibit No. 8    Packet of documents regarding  41
20                   Booking #YCH413979,
                     WW 000362-73.
21
    Exhibit No. 9    Packet of documents regarding  48
22                   Booking #YCH417162,
                     WW 000374-85.
23
    Exhibit No. 10   Letter of credit,              55
24                   WW 000387-90.
25
```

```
 1                  EXHIBIT INDEX (CONTINUED)
 2
    Exhibit No. 11    Packet of documents regarding    56
 3                    Booking #SEA411592700,
                      WW 000391-401.
 4
    Exhibit No. 12    Packet of documents regarding    62
 5                    Booking #SEA414638400,
                      WW 00402-11.
 6
    Exhibit No. 13    Packet of documents regarding    67
 7                    Booking #YCH388973,
                      WW 000412-21.
 8
    Exhibit No. 14    Packet of documents regarding    73
 9                    Booking #YCH388974,
                      WW 000422-30.
10
    Exhibit No. 15    Western Wood offer sheet,        75
11                    WW 000431.
12  Exhibit No. 16    Letter of credit,                76
                      WW 000432-35.
13
    Exhibit No. 17    Packet of documents regarding    78
14                    Booking #YCH385646,
                      WW 000436-44.
15
    Exhibit No. 18    Packet of documents regarding    80
16                    Booking #YCH385648,
                      WW 000445-56.
17
    Exhibit No. 19    Western Wood offer sheet,        84
18                    WW 000457.
19  Exhibit No. 20    Packet of documents regarding    86
                      Booking #8009614700,
20                    WW 000458-64.
21  Exhibit No. 21    Letter of credit,                89
                      WW 000465-68.
22
    Exhibit No. 22    Packet of documents regarding    90
23                    Booking #SEA418669500,
                      WW 000469-75.
24
25
```

Confidential - Subject to Further Confidentiality Review

```
 1                   EXHIBIT INDEX (CONTINUED)

 2

    Exhibit No. 23   Packet of documents regarding     94
 3                   Booking #YCH391447,
                     WW 000476-86.
 4
    Exhibit No. 24   Packet of documents regarding     98
 5                   Booking #YCH393185,
                     WW 000487-95.
 6
    Exhibit No. 25   Western Wood offer sheet,        100
 7                   WW 000512.

 8  Exhibit No. 26   Packet of documents regarding    103
                     Booking #SEA422570500 A,
 9                   WW 000513-20.

10  Exhibit No. 27   Packet of documents regarding    107
                     Booking #YCH400682,
11                   WW 000496-505.

12  Exhibit No. 28   Packet of documents regarding    109
                     Booking #YCH401696,
13                   WW 000506-11.

14  Exhibit No. 29   Packet of documents regarding    111
                     Booking #SEA422571600 B,
15                   WW 000521-29.

16  Exhibit No. 30   Packet of documents regarding    115
                     Booking #YCH395521,
17                   WW 000530-41.

18  Exhibit No. 31   Packet of documents regarding    122
                     Booking #YCH399747,
19                   WW 000542-50.

20  Exhibit No. 32   Packet of documents regarding    124
                     Booking #YCH402487,
21                   WW 000551-58.

22  Exhibit No. 33   Packet of documents regarding    125
                     Booking #YCH402494,
23                   WW 000560-65.

24

25
```

Confidential - Subject to Further Confidentiality Review

```
 1                    EXHIBIT INDEX (CONTINUED)

 2

    Exhibit No. 34    Packet of documents regarding    128
 3                    Booking #YCH404909,
                      WW 000566-73.
 4
    Exhibit No. 35    Packet of documents regarding    130
 5                    Booking #YCH405510,
                      WW 000574-80.
 6
    Exhibit No. 36    Packet of documents regarding    132
 7                    Booking #YCH409991,
                      WW 000581-90.
 8
    Exhibit No. 37    Western Wood offer sheet,        134
 9                    WW 000591.
10  Exhibit No. 38    Packet of documents regarding    136
                      Booking #SEA423730403,
11                    WW 000592-600.
12  Exhibit No. 39    Packet of documents regarding    138
                      Booking #SEA427614200,
13                    WW 000601-09.
14  Exhibit No. 40    Packet of documents regarding    140
                      Booking #YCH409998,
15                    WW 000610-26.
16  Exhibit No. 41    Packet of documents regarding    143
                      Booking #YCH416053,
17                    WW 000627-35.
18
19
20
21
22
23
24
25
```

Confidential - Subject to Further Confidentiality Review

1                          BE IT REMEMBERED that on Thursday,

2        May 21, 2015, at 1201 Third Avenue, Suite 3200, Seattle,

3        Washington, at 2:49 p.m., before Terilynn Pritchard,

4        Certified Court Reporter, CCR, RMR, CRR, CLR, appeared

5        JOHN D. SALAMANCA, the witness herein;

6                          WHEREUPON, the following proceedings

7        were had, to wit:

8

9                          <<<<<< >>>>>>

10

11                         VIDEOGRAPHER:  We are now on the

12       record.  My name is Nicholas Rapp.  I'm a videographer

13       for Golkow Technologies.

14          Today's date is May 21st, 2015.  The time is 2:49

15       p.m.

16          This 30(b)(6) video deposition is being held at 1201

17       Third Avenue, Suite 3200, Seattle, Washington 98101, in

18       the matter of In Re Chinese-Manufactured Drywall Products

19       Liability Litigation, Case No. 2:09-MD-02047-EEF-JCW, for

20       the U.S. District Court, Eastern District of Louisiana.

21          The deponent is John Salamanca.

22          Counsel, could you please voice identify yourselves

23       for the record?

24                         MR. GAUGHAN:  Good afternoon.

25          Matthew Gaughan from Levin Fishbein on behalf of the

```
 1     Plaintiff Steering Committee.

 2                    MR. WITTMAN:  Mark Whittman, counsel

 3     for the deponent's employer, Western Wood Lumber

 4     Company.

 5                    MR. PFAEHLER:  Kenneth Pfaehler,

 6     Dentons US LLP, counsel for BNBM PLC and BNBM Group.

 7                    MR. CABOT:  Jason Cabot from Orrick

 8     Herrington & Sutcliffe, counsel for CNBM Group, CNBM

 9     Company, and CNBM Forest Products.

10                    MR. FOX:  Brian Fox from Levin

11     Fishbein on behalf of Plaintiff Steering Committee.

12                    MR. PFAEHLER:  And somebody on the

13     phone?

14                    MR. GAUGHAN:  Phone?

15                     MS. KAHNKE:  This is Mack Kahnke on

16     behalf of Taishan Gypsum Co., LTD.

17                    MR. GAUGHAN:  Okay.

18                    VIDEOGRAPHER:  The court reporter

19     today is Terilynn Pritchard and may now swear in the

20     witness.

21

22     JOHN SALAMANCA,        having been first duly sworn

23                            by the Certified Court Reporter,

24                            testified as follows:

25     /////
```

Confidential - Subject to Further Confidentiality Review

```
1                    MR. GAUGHAN:  And before we get

2      started, we are going to have the same stipulation as

3      usual, that all objections by one defense attorney are--

4      stand for all other defense attorneys.

5          Is that okay?

6                        MR. PFAEHLER:  That works for me.

7                       MR. GAUGHAN:  Okay.

8                        MR. PFAEHLER:  Is that okay for all

9      of us?

10                       MR. WITTMAN:  Yes.

11

12

13                               EXAMINATION

14      BY MR. GAUGHAN:

15   Q   Good afternoon, Mr. Salamanca.

16          Can you please state your name for the record?

17   A   John Salamanca.

18   Q   And can you spell your last name?

19   A   S-A-L-A-M-A-N-C-A.

20   Q   Okay.  Thank you.

21          And thank you for coming here today.  I appreciate

22      you doing this.

23          I guess just before we get started, can you tell me

24      your current address, your business address?

25   A   853 Watson Street, Suite 2A, Enumclaw, Washington 98022.
```

Confidential - Subject to Further Confidentiality Review

1   Q   And have you ever had your deposition taken before?

2   A   Yes.

3   Q   How many times?

4   A   One.

5   Q   One time?

6       Was that a professional matter or was it a personal

7       matter?

8   A   No, professional.

9   Q   Okay.  And how long ago was that?

10  A   Within the past year.

11  Q   Okay.  And I realize you have given a deposition

12      recently, but I do want to go through some of the

13      instructions, if that's okay with you.

14  A   Okay.

15  Q   The first thing is this is-- we are trying to create a

16      record that's a written record, so if I ask you a

17      question, if you could please answer it verbally, you

18      know, either "yes," "no"-- try to avoid things like

19      "uh-huh," "mm-hm," that sort of thing, because it's

20      sometimes a little bit unclear what you actually mean

21      when you say that, okay?

22  A   Okay.  Yes.

23  Q   And along the same lines, I know when you're having

24      conversation normally, you might anticipate what I'm

25      going to ask you and start answering before I complete

Confidential - Subject to Further Confidentiality Review

 1      my question, but because we're trying to create a record

 2      that's clear, if you can try to avoid doing that, and

 3      I'll try to do the same for you-- is that okay?

 4  A   Okay.  Yeah.

 5  Q   And also, if you don't understand any of my questions,

 6      please let me know.

 7          From time to time I might ask a question that's a

 8      little confusing.  Just let me know.  I'll rephrase the

 9      question.

10          You know, if you don't do that, then I'll assume

11      that you did understand the question, which can lead to

12      some additional confusion down the line, okay?

13  A   Okay.

14  Q   From time to time lawyers-- some of the lawyers in this

15      room might object to some of my questions.

16          A lot of times that's just for the record.  If they

17      think there's something confusing with my question,

18      something like that, they'll just state an objection.

19          You can still answer the question, unless your

20      counsel instructs you not to answer, okay?

21  A   Okay.

22  Q   Also, if you need to take a break at any time today,

23      it's not an endurance competition, so if you have to use

24      the restroom, anything like that, let me know, and we'll

25      take a break.

1          The only thing I ask is if I had just asked you a

2      question, that you answer that question before we take a

3      break, okay?

4   A   Okay.

5   Q   Can you tell me how long you've been working with

6      Western Wood?

7   A   I think since December of 2009.

8   Q   Okay.  And then prior to working with Western Wood, what

9      company were you with at that time point, if any?

10  A   A company called Black Pebble.

11  Q   Okay.  And what did Black Pebble do?

12  A   They were involved with home interiors, flooring tile,

13     wood, carpeting.

14                    MR. PFAEHLER:  Counsel, can you hold

15     for a second?  I'm not getting a realtime feed.

16         Do I need to hit something over here?

17                    MR. GAUGHAN:  Is there anything

18     blinking?

19                    We have to go off the record.

20                    MR. PFAEHLER:  We have to go off the

21     record for a second.

22                    VIDEOGRAPHER:  We are going off the

23     record.  The time is now 2:54 p.m.

24                    (Recess 2:54 to 2:59 p.m.)

25     /////

Confidential - Subject to Further Confidentiality Review

```
 1                      VIDEOGRAPHER:  Back on record.  The

 2        time is now 2:59 p.m.

 3   Q    (By Mr. Gaughan)  Okay.  Before we took that brief

 4        break, we were talking about your past employment, and

 5        you mentioned one position with some work involving

 6        interior floorings and that sort of thing?

 7   A    Correct, yes.

 8   Q    Is that basically install work, that sort of thing?

 9   A    Yes, and retail side also.

10   Q    And that didn't have anything to do with export or that

11        sort of business that you are doing now, correct?

12   A    No.

13   Q    Okay.  And getting back to your current employment with

14        Western Wood, starting in 2009, you said-- correct?

15            Is that right?

16   A    Yes.

17   Q    What was your first position with Western Wood?

18   A    I have been the controller since day-- since I started

19        there, so--

20   Q    Okay.  What is that-- what sort of-- what does that

21        involve?

22   A    I oversee the financials and the finance and accounting.

23   Q    Okay.

24   A    Day-to-day operations.

25                      MR. PFAEHLER:  Counsel, may I--
```

Confidential - Subject to Further Confidentiality Review

```
 1       Mr. Salamanca, are you saying "comptroller" or

 2       "controller"?

 3                      THE WITNESS:  Con, C-O-N.

 4                      MR. PFAEHLER:  Thank you.

 5           Sorry, Counsel.

 6   Q   (By Mr. Gaughan)  Does your employment as controller

 7       involve any sort of interaction with buyers?

 8   A   "Buyers" meaning our customers or--

 9   Q   Customers, yes.

10   A   Yes, when orders are filled, you know, I send them the

11       proper documents, invoice, packing lists.

12           I'd make sure, you know, terms for payment are in

13       order.

14   Q   Okay.  Are you involved in any sort of negotiations,

15       that sort of thing, when you're entering a new business

16       venture with someone, a customer?

17   A   No, I'm not involved in the negotiation.

18   Q   Do you know who is involved with the actual

19       negotiations?

20   A   John Tortorelli.

21   Q   Okay.  And has that been the case since you first joined

22       the company back in 2009?

23   A   Yes.

24                      MR. GAUGHAN:  I am going to mark our

25       first exhibit.
```

Confidential - Subject to Further Confidentiality Review

```
 1            We are going to start this-- let me go-- go off the

 2       record for a second.  I don't want this whole thing on.

 3                        VIDEOGRAPHER:  One moment.

 4            We are going off the record.  The time is now 3:01

 5       p.m.

 6                                   (Recess 3:01 to 3:02 p.m.)

 7                              (Exhibit No. 1 marked for

 8                                 identification.)

 9

10                        VIDEOGRAPHER:  Back on record.  The

11       time is now 3:02 p.m.

12  Q    (By Mr. Gaughan)  And I've just handed you or the court

13       reporter is handing you what's been marked as Exhibit

14       No. 1 to your deposition, if you could just take a quick

15       look at that.

16  A    Okay.

17  Q    I guess, first off, let me know if you've seen it

18       before, if you've seen this document.

19  A    A couple pages I've seen.

20            I have seen a couple pages.

21  Q    Okay.  I understand.

22            And we have actually served a subpoena on your-- on

23       Western Wood, with another version-- an earlier version

24       of this notice.

25            Is it your understanding that you are appearing
```

```
 1        today to provide testimony and documents based on that

 2        subpoena?

 3   A    Yes.

 4   Q    Okay.  Thank you.

 5            If you look at the top right-hand corner, you see

 6        where it says, "Page 1 of 35"?

 7   A    Yes.

 8   Q    I am going to direct you to Page 11 of 35.

 9            Do you see under Paragraph N it has, "Taishan

10        affiliates and subsidiaries"?

11   A    Yes.

12                        MR. GAUGHAN:  And I understand

13        Counsel objects to that designation, correct?

14                        MR. CABOT:  Yes.

15                        MR. PFAEHLER:  That is correct.

16   Q    (By Mr. Gaughan)  But irrespective of that, there's a

17        series of entities listed underneath that paragraph,

18        beginning with Subparagraph A, and then for some reason

19        after B they disappear, but I'm going to ask you to read

20        through this list, which goes up to Page 15 of 35, and

21        as-- if you recognize entities there, just read it to

22        yourself, and just let me know which entities you

23        recognize, and we'll-- I'll have some questions for you

24        after that.

25   A    Okay.  Well, I've seen this, so I had a couple people
```

Confidential - Subject to Further Confidentiality Review

```
 1        from my staff go through to check off what-- so the

 2        obvious ones that we've done business with-- do you want

 3        me to name--

 4   Q    Yeah.

 5   A    Say word for word?

 6            Beijing New Building Materials Group, China

 7        National Building Material Import and Export Company,

 8        CNBM Forest Products, CNBM Forest Products Canada.

 9            Then on Page 13-- no.

10            Yeah, it was just those companies on Page 11.

11   Q    Okay.  And so just for my own purpose, you mentioned

12        CNBM-- I should say China National Building Materials

13        Group Company Limited; is that correct?

14                        MR. CABOT:  I think that misstates

15        the testimony.

16   Q    (By Mr. Gaughan)  Well, is that an entity you recognize,

17        sir?

18   A    Yeah-- well, when I see "CNBM," I-- I consider them one

19        in the same, so CNBM is the same to me as CNBM Forest

20        Products, China National Building Material Import and

21        Export Company.

22            I consider-- I consider them the same.

23   Q    Okay.

24   A    All our documents that go out is just labelled "CNBM."

25   Q    Yeah, I understand.
```

Confidential - Subject to Further Confidentiality Review

```
 1   A   Yeah, so--

 2   Q   And there's a couple of other entities I do want to ask

 3       you about and see if-- do you happen to know a company

 4       called Taishan Gypsum?  Have you heard of that company?

 5   A   No, I have not.

 6   Q   How about Tai'an Taishan Plasterboard?

 7   A   No, I have not.

 8   Q   Have you heard of a company called CNBM USA Corp.?

 9   A   No.

10   Q   How about BNBM of America Inc.?

11               MR. PFAEHLER:  Objection; asked and

12       answered.

13               THE WITNESS:  No.

14               MR. GAUGHAN:  Earlier today.

15       I think I asked that at the first deposition, but

16       okay.  We'll move on.

17               MR. PFAEHLER:  And just now too.

18   Q   (By Mr. Gaughan)  And you mentioned a couple companies

19       you do recognize in this list.

20       I just want to confirm that with respect to all of

21       those companies you do recognize, that the business

22       interactions you've had with those companies have all

23       involved lumber or logs and no other products?

24   A   That's correct.

25               MR. PFAEHLER:  Objection.
```

Confidential - Subject to Further Confidentiality Review

```
1   Q   (By Mr. Gaughan)  And you've been with the company for a

2       number of years now, since 2009.

3           With respect to the companies that you do remember,

4       how long have you been doing business with those

5       companies?

6                       MR. PFAEHLER:  Objection; compound.

7                       THE WITNESS:  BNBM since 2011 and

8       CNBM since third quarter 2014.

9                       MR. CABOT:  I just want to make a

10      standing objection to the term "CNBM" because it's not

11      clear what company is being referred to.

12  Q   (By Mr. Gaughan)  We'll go over some documents later,

13      but when you say "CNBM," do you have a specific company

14      that you're referring to?

15  A   I don't.

16          I might have to look at an offer sheet, one of the

17      documents I provided, to verify.

18  Q   Sure.

19          We will be doing that today, but I just wanted to,

20      before I gave you the documents, ask if you have a

21      specific understanding of-- in your mind, what specific

22      company, but if you don't, that's fine.  We'll look at

23      some documents.

24  A   Okay.  Yeah.

25  Q   Okay.  Do you have any sense-- the entity that you
```

```
 1       consider to be BNBM, you mentioned since 2011 you've

 2       been doing business with that entity?

 3   A   Yes.

 4                   MR. PFAEHLER:  Objection to form.

 5   Q   (By Mr. Gaughan)  Do you have a sense of how many

 6       transactions have occurred during that time period?

 7                   MR. PFAEHLER:  Objection.

 8                   THE WITNESS:  Not off the top of my

 9       head.

10           I'd have to look.

11           Yeah, I'd have to--

12   Q   (By Mr. Gaughan)  And I understand.

13           Would it be more than 20, in your--

14   A   Yes.

15                   MR. PFAEHLER:  Objection.

16                   THE WITNESS:  Yes.

17   Q   (By Mr. Gaughan)  Okay.  The next thing I want to do is

18       in this same exhibit, I want to direct you to Page

19       No. 19 of 35, and these are just document requests that

20       we had for Western Wood.

21   A   Yes.

22   Q   I understand you guys have produced a lot of documents,

23       but I do want to just have you read through this, and

24       let me know if there's any specific materials that you

25       are aware of that would be responsive to these requests
```

Confidential - Subject to Further Confidentiality Review

```
1       that were not produced, and we can discuss that, okay?

2   A   Okay.

3   Q   So just let me know when you're done reading it.

4                       MR. WITTMAN:  Can we go off the

5       record for a moment while he's reading?

6                       MR. GAUGHAN:  Sure, that's fine.

7                       VIDEOGRAPHER:  We are going off the

8       record.  The time is 3:10 p.m.

9                           (Recess 3:10 to 3:12 p.m.)

10

11                      VIDEOGRAPHER:  Back on record.  The

12      time is now 3:12 p.m.

13  Q   (By Mr. Gaughan)  Have you had a chance to review the

14      document requests in our amended deposition notice?

15  A   Yes, I have.

16  Q   Okay.  I guess my question is:

17          You produced documents in advance of today's

18      deposition?

19  A   Yes.

20  Q   Are there any documents that you did not produce that

21      would be responsive to these requests, that you are

22      aware of?

23  A   No.

24          As far as I'm aware of, I've produced the documents

25      relating to these pages.
```

Confidential - Subject to Further Confidentiality Review

```
 1   Q   Okay.  And you can put this deposition notice aside,

 2       okay?

 3   A   (Witness complies.)

 4                              (Exhibit No. 2 marked for

 5                               identification.)

 6

 7   Q   (By Mr. Gaughan)  And I am showing you what's been

 8       marked as Exhibit No. 2.

 9           Just for your own edification, this was a document

10       that was produced not by you yourself, your company, but

11       by one of the defendants in this Chinese Drywall

12       Litigation, a company called BNBM Group, okay?

13   A   Okay.

14   Q   But this does appear to be an offer sheet from your

15       company, Western Wood, to Beijing New Building Materials

16       Company Limited?

17   A   Yes.

18   Q   Is that correct?

19           Earlier we mentioned a company that you considered

20       to be BNBM.

21   A   Yes.

22   Q   Is this that company, Beijing New Building Materials

23       Company Limited?

24   A   Yes.

25   Q   And this appears to be an offer that your company made
```

Confidential - Subject to Further Confidentiality Review

```
 1        to BNBM; is that correct?

 2   A    That's correct.

 3   Q    And it was for lumber or logs, right?

 4   A    Logs, yes.

 5   Q    Okay.  And I don't actually see a date on this offer,

 6        but it looks like the-- at least at the time the offer

 7        was made, the last ship date for these logs would be

 8        July 31st, 2014; is that correct?

 9   A    That's correct.

10   Q    Do you know whether this particular offer was accepted

11        and whether you shipped these logs to BNBM?

12   A    Yes, I believe so.

13            It would be one of the documents I produced.

14   Q    And we'll look at those documents as well, but I wanted

15        to start with some of these documents first.

16            Do you know-- have an idea in your mind about when

17        this offer was made and when it was accepted?

18                        MR. PFAEHLER:  Objection; form.

19            Witness has testified that there's documents that

20        would show that.

21   Q    (By Mr. Gaughan)  You can answer the question.

22            Do you have a sense of when this offer was actually

23        made?

24                        MR. PFAEHLER:  Same objection.

25                        THE WITNESS:  Generally offers are
```

Confidential - Subject to Further Confidentiality Review

```
 1       made based on the expiration of the shipping date.

 2            Offers are generally made 30 to 45 days before.

 3   Q   (By Mr. Gaughan)  Okay.  So maybe July 1st or even

 4       earlier than that?

 5   A   Sometime--

 6                      MR. PFAEHLER:  Objection.

 7                      THE WITNESS:  Sometime in June.

 8            It allows us time to load-- to be able to load

 9       their order.

10            Rarely an order this size we would do that in one

11       shipment.

12            It probably would take two or three different

13       shipments to fulfill this order.

14   Q   (By Mr. Gaughan)  And this order-- I'm not sure what

15       this-- "Douglas Fir 300 MBF," what does that stand for?

16            Do you see that?

17   A   Yes.  "MBF" means it's a thousand board feet, so this is

18       for 300,000 board feet.

19   Q   And 300,000 board feet at a cost of a thousand dollars--

20       $1,005 per board foot, is that how I read that?

21   A   For every thousand board feet it's $1,005, yes.

22   Q   So the total, I guess, contemplated price under this

23       would be around $300,000; is that fair to say?

24   A   Correct, yes.

25   Q   I am an attorney.  I'm not good at math, but it's
```

Confidential - Subject to Further Confidentiality Review

```
 1      somewhere in that neighborhood, correct?

 2   A   Yes.

 3                      MR. PFAEHLER:  I would suggest

 4      301,500.

 5                      MR. GAUGHAN:  We have someone that's

 6      good at math here, so that's good.

 7                      MR. PFAEHLER:  No.  I'm just reading

 8      the document.

 9                      MR. GAUGHAN:  Did I miss it?

10                      MR. PFAEHLER:  Top line.

11                      MR. GAUGHAN:  All right.  I do see

12      it.

13   Q   (By Mr. Gaughan)  All right.  And I'm going to mark my

14      next exhibit.

15                         (Exhibit No. 3 marked for

16                          identification.)

17

18   Q   (By Mr. Gaughan)  I am showing you what's been marked as

19      Exhibit No. 3 to your deposition.

20          This looks like another offer sheet from Western

21      Wood LLC, and the offer is CZY 0604.

22          Is that correct?

23          Do you see that at the top?

24   A   Oh, yes.

25   Q   Okay.  And the offer was made to Beijing New Building
```

```
 1      Materials Company Limited, correct?

 2   A  Correct.

 3   Q  Okay.  And the total amount listed for this offer was

 4      588,000, is that correct, U.S. dollars?

 5   A  Yes.

 6   Q  And this is similar to the last document we looked at

 7      where the last ship date was contemplated as July 31st,

 8      2014; is that correct?

 9   A  Yes.

10   Q  But unlike the last document, this one was actually-- it

11      looks like it was countersigned by Beijing New Building

12      Materials Company Limited, correct?

13   A  Correct.

14   Q  And I take it, like the rest of us, you cannot read that

15      signature there?

16   A  That's correct.

17   Q  And do you know whether this-- I guess this offer was

18      accepted?

19   A  Yes.

20   Q  Do you know whether you actually shipped logs pursuant

21      to this agreement?

22   A  Yes, we shipped logs.

23   Q  And I guess as with the last document, this is marked as

24      an offer sheet; is that correct?

25   A  Yes, it's similar to the last document.
```

```
 1   Q   Does that mean you would be making an offer directly to

 2       Beijing New Building Materials Company Limited?

 3                     MR. PFAEHLER:  Objection.

 4                     THE WITNESS:  Yes.

 5                          (Exhibit No. 4 marked for

 6                           identification.)

 7

 8   Q   (By Mr. Gaughan)  I am showing you what's been marked as

 9       Exhibit No. 4 to your deposition, and this is another

10       offer sheet.

11           This one indicates CZY 0705; is that correct?

12   A   Yes.

13   Q   Okay.  And this is another offer that Western Wood made

14       to Beijing New Building Materials Company Limited; is

15       that correct?

16   A   Yes.

17   Q   And this one contemplates a total purchase amount of

18       826,500 U.S. dollars, correct?

19   A   Correct.

20   Q   And the last ship date here is listed as September 30,

21       2014?

22   A   Yes, correct.

23   Q   And based on your prior testimony, that date of

24       September 30, 2014, does that give you a sense of when

25       the offer might have actually been made?
```

Confidential - Subject to Further Confidentiality Review

```
 1   A   Based on the last shipping date, the offer would have

 2       been made probably August sometime, late July, early

 3       August.

 4   Q   And the payment terms contemplated are by an irrevocable

 5       100 percent letter of credit?

 6   A   Yes.

 7   Q   And we looked at two earlier offers, and they-- if you

 8       want to take a look at them and just confirm that they

 9       also contemplate payment by 100 percent irrevocable

10       letter of credit?

11   A   Yes, correct.  Yes.

12   Q   Thank you.

13           And going back to Exhibit No. 4, this offer was

14       actually accepted, correct?

15   A   Yes.

16   Q   All right.  You can put that aside.

17   A   (Witness complies.)

18                       MR. PFAEHLER:  Were we looking at--

19                       MR. GAUGHAN:  Exhibit No. 4.

20                       MR. PFAEHLER:  Nevermind.  I

21       mismarked.  Thank you.

22                          (Exhibit No. 5 marked for

23                           identification.)

24

25   Q   (By Mr. Gaughan)  I am showing you what's been marked as
```

Confidential - Subject to Further Confidentiality Review

 1      Exhibit No. 5 to your deposition, and this appears to be

 2      another offer sheet listing Contract No. YXJ 010915; is

 3      that correct?

 4   A  Yes.

 5   Q  And this one actually has an offer issue date, and it's

 6      January 6th, 2005, correct?

 7   A  Correct.

 8   Q  And this offer would have expired on January 13, 2015--

 9      excuse me.  Is that correct?

10   A  Yes.

11   Q  And this is another offer by Western Wood to Beijing New

12      Building Materials Company Limited; is that correct?

13   A  Correct.

14   Q  And this one involved a contemplated amount of 269,500

15      U.S. dollars, correct?

16   A  Correct.

17   Q  And indicates a last shipping date of March 15, 2015,

18      correct?

19   A  Correct.

20   Q  And based on your review of this document, this offer

21      was actually accepted, correct?

22   A  Correct.

23   Q  And we do see a signature by someone on behalf of BNBM,

24      correct?

25   A  Yes.

Confidential - Subject to Further Confidentiality Review

```
 1   Q   And when I say "BNBM," I mean Beijing New Building

 2       Materials Company Limited.

 3           Is that fair?

 4   A   Yes.

 5                     MR. PFAEHLER:  Objection.

 6   Q   (By Mr. Gaughan)  And as we go forward, when I say

 7       "BNBM," will you agree that that refers to Beijing New

 8       Building Materials Company Limited?

 9   A   Yes.

10   Q   Okay.  Thank you.  And you can put that aside.

11   A   (Witness complies.)

12   Q   Maybe I got a little ahead of myself, but I do have some

13       questions about what Western Wood actually does.

14           Can you describe the nature of the business?

15   A   We're an export company, and we export logs to Korea and

16       China, so we have the logs-- we bid on, you know,

17       certain logs, tree farms, and they get delivered to our

18       log yards.

19           One is in Enumclaw.  One is in Cle Elum.

20           From there, we load the logs into containers, and

21       they leave the vessels from the port of Seattle or the

22       port of Tacoma.

23   Q   And would Western Wood set up the entire export process?

24   A   Yes.

25   Q   Okay.  And I don't know if you mentioned this, but does
```

Confidential - Subject to Further Confidentiality Review

```
 1        Western Wood have its own tree farms or do you purchase

 2        from someone else?

 3   A    We purchase them.

 4   Q    Who do you purchase from?

 5   A    Some companies, Weyerhaeuser, Plum Creek, sometimes we

 6        purchase from individuals, Colville Tree Farms.

 7   Q    Is "Tree Farms" the name of a specific company or is

 8        that--

 9   A    No.  It's Colville-- they're an Indian tribe in Eastern

10        Washington.

11            I'm not-- I'm trying to recall what it says exactly

12        on the check.

13            Erickson Logging, Western Timber.

14            You know, there's a good list of vendors.

15            I am drawing a blank.

16   Q    That's fine.  I think you mentioned quite a few.

17            If you think of any later on, you can certainly let

18        me know, okay?

19   A    Okay.

20                              (Exhibit No. 6 marked for

21                               identification.)

22

23   Q    (By Mr. Gaughan)  I am showing you what's been marked as

24        Exhibit No. 6 to your deposition.

25            This is another offer sheet, and it looks like
```

```
 1        there's handwriting on there.

 2            Is that your handwriting, by chance?

 3   A    No, it's not.

 4   Q    Do you know whose handwriting that is?

 5   A    Michelle Zaun.  She's an employee of Western Wood.

 6   Q    Okay.  And then in there we see, in her handwriting, it

 7        looks like, "Contract No. YXJ 010915"; is that correct?

 8   A    Yes.

 9   Q    And then "At $980"; is that correct?

10   A    Yes.

11   Q    And this offer was dated January 6, 2015; is that

12        correct?

13   A    Correct.

14   Q    And do you know whether this was an offer involving

15        BNBM?

16   A    Based on the contract number, it appears so.

17   Q    Okay.  And this particular offer involved--

18        contemplated, at least, a sale worth $1,067,000; is that

19        correct?

20   A    Yes.

21   Q    U.S. dollars?

22   A    Yes.

23   Q    And it also had a last ship date of March 15, 2015; is

24        that correct?

25   A    Correct.
```

Confidential - Subject to Further Confidentiality Review

```
1   Q   Do you know whether this offer was accepted?

2   A   I believe so.

3           I'd have to check our records.

4   Q   Okay.  And--

5                       MR. PFAEHLER:  Are you finished

6       answering?

7                       THE WITNESS:  I was going to say more

8       often than not when we provide offers to our customers,

9       it's-- the negotiations have already happened, so this

10      is the document that solidifies the deal.

11  Q   (By Mr. Gaughan)  Okay.  I understand.

12          And we'll be looking through some documents today

13      throughout the deposition, and we'll see if we see

14      documents that pertain to this specific contract number.

15          Is that okay?

16  A   Okay.  Yes.

17                          (Exhibit No. 7 marked for

18                           identification.)

19

20  Q   (By Mr. Gaughan)  I am showing you what's been marked as

21      Exhibit No. 7 to your deposition.

22          And this actually appears to be several different

23      documents, but this is how it was produced to us.

24          Is this how you would retain these sort of

25      materials in your files?
```

```
 1   A   Yes.

 2                   MR. PFAEHLER:  Objection to form.

 3   Q   (By Mr. Gaughan)  Can you tell me what this, I guess,

 4       compendium of documents involved?

 5   A   Page 1 is just kind of a checklist of just our-- you

 6       know, going through the documents to make checks and

 7       balances, I guess.

 8   Q   Would this be something that you would prepare?

 9   A   Yes.  I'm the final-- you know, I'm the final person to

10       see this, the packet.

11   Q   Okay.  If you look at this, do you have a sense of which

12       contract this would involve?

13   A   Yes.

14   Q   Which contract is that?

15   A   YXJ 010915.

16   Q   Is this the contract we were just looking at?

17   A   Yes.

18   Q   Okay.

19                   MR. PFAEHLER:  Can I ask you to ask

20       the witness-- he was referring to a page, if he could

21       refer to the page.

22   Q   (By Mr. Gaughan)  You were looking at something before I

23       asked that last question?

24   A   No.  I--

25                   MR. PFAEHLER:  To get the number?
```

Confidential - Subject to Further Confidentiality Review

1                    THE WITNESS:  The contract number is

2      on Page 5.

3   Q  (By Mr. Gaughan)  I see it, yeah.  Thank you.

4        So this, to you, would demonstrate that the offer

5      we were looking at before, which was Exhibit No. 6, was

6      actually accepted?

7                    MR. PFAEHLER:  Objection to form, as

8      the terms are different.

9   Q  (By Mr. Gaughan)  You can answer the question.

10                    MR. PFAEHLER:  Highly misleading

11     question, Counsel.

12  Q  (By Mr. Gaughan)  You can answer.

13                    MR. PFAEHLER:  It would suggest to me

14     that the offer wasn't-- Counsel-- objection.

15                    THE WITNESS:  What's the question?

16  Q  (By Mr. Gaughan)  Well, we just talked about a

17     particular contract number, which was YXJ 1010915, and

18     if you look at this page we were looking at earlier,

19     which is Page 5, we see that same contract number,

20     correct?

21  A  Yes.

22  Q  And this is an actual invoice?

23  A  Yes.

24  Q  And so this suggests-- does it suggest to you that the

25     offer that you made, that we looked at, as Exhibit

1       No. 6, was actually accepted and you made delivery?

2    A   Yes.

3                    MR. PFAEHLER:  Objection.

4    Q   (By Mr. Gaughan)  If I look at the first page of this

5        document, there's a booking number?

6    A   Yes.

7    Q   Is that a bill of lading number?

8    A   It could be-- yes, for the shipping company, for Hanjin,

9        it is-- the booking number is the same as the bill of

10       lading number.

11   Q   If you don't mind, if you could go through each of these

12       documents and tell me what specifically they are.

13   A   Page 2 is just a summary of the containers loaded for

14       this particular booking, so on Page 2 you'll see there

15       were three containers loaded.

16       Page 3 is just a continuation of Page 2 about

17       what's in the containers specifically.

18       Page 5 is the invoice.

19       Page 6 is the packing lists.

20       Page 7 is just for our internal records, which

21       shows where the logs-- which yard the logs came from,

22       White River in Cle Elum.

23       The last two pages are just-- when we enter BL

24       instructions to the shipping company, this is just a

25       printout of confirmation that the instructions were

Confidential - Subject to Further Confidentiality Review

```
 1        entered.

 2   Q    Okay.  And with respect to this particular shipment, do

 3        you know how many logs were shipped?

 4            Does it give a total somewhere?

 5   A    Yes.

 6            If you look at Page 2-- Page 2 or Page 3, it would

 7        be 85 logs.

 8   Q    Okay.

 9   A    Yeah, 85 total logs.

10   Q    And do you know when these were shipped?

11            Can you tell me from looking at these documents?

12   A    On the invoice, Page 5, they would have shipped around

13        February 14th, 2015, the ETD date on the invoice, and

14        the estimated arrival date would have been March 2nd.

15   Q    And then at the top I see an invoice date of February 9,

16        2015?

17   A    Yes.

18   Q    Do you invoice before the documents actually get

19        shipped?

20   A    Yes.

21   Q    Okay.  And if you look at the packing list, which is

22        358, I see a document credit number.

23            Do you see that?

24   A    Yes.

25   Q    Is that a letter of credit number?
```

Confidential - Subject to Further Confidentiality Review

 1  A  Yes.

 2  Q  And that's 11042010001568, correct?

 3  A  Yes.

 4  Q  Okay.  And if you look at the shipping-- Hanjin-- is

 5     that how you say it, shipping--

 6  A  Hanjin, yes.

 7  Q  The shipper is listed as Western Wood, correct?

 8  A  Correct.

 9  Q  Notify party is Beijing New Building Materials Company;

10     is that correct?

11  A  Correct.

12  Q  And the port of loading is Seattle; is that correct?

13  A  Yes, correct.

14  Q  And the place of delivery is Shanghai; is that correct?

15  A  Correct.

16  Q  And with respect to the document we looked at as Exhibit

17     No. 6, which is the offer that we looked at, as well as

18     the materials that are appended-- that are included in

19     Exhibit No. 7, would these documents have all been

20     prepared at or near the time they were executed?

21               MR. PFAEHLER:  Multiple objections to

22     form, including an objection that there's no indication

23     that Exhibit No. 6 was ever executed, as opposed to

24     Exhibit No. 5.

25  Q  (By Mr. Gaughan)  You can answer the question.

Confidential - Subject to Further Confidentiality Review

1   A   Yes.

2       The answer is yes.

3   Q   And these documents would have all been prepared as part

4       of Western Wood's regular business practices; is that

5       correct?

6                       MR. PFAEHLER:  Objection to form.

7                       THE WITNESS:  Correct.

8   Q   (By Mr. Gaughan)  And Western Wood would have retained

9       copies as part of your regular business practices?

10                      MR. PFAEHLER:  Objection to form.

11                      THE WITNESS:  Yes.

12  Q   (By Mr. Gaughan)  Thank you.

13      And with respect to that last invoice, obviously

14      you did not reach the amount that was contemplated in

15      that contract, which was over a million dollars,

16      correct?

17  A   Correct.

18                      MR. PFAEHLER:  Objection.

19  Q   (By Mr. Gaughan)  Is that because you would typically

20      send out different shipments, containers, that sort of

21      thing, to fulfill your contracts?

22  A   Yes--

23                      MR. PFAEHLER:  Objection.

24                      THE WITNESS:  Rarely offers are

25      fulfilled in one order.

Confidential - Subject to Further Confidentiality Review

```
 1          It takes multiple orders to fulfill an offer.

 2                    MR. PFAEHLER:  Objection-- strike

 3     that.

 4                    MR. CABOT:  Can I interject for one

 5     second?

 6          Could you maybe just give a second just to lodge

 7     objections before answering.

 8                    THE WITNESS:  Oh, sure, yes.

 9                    MR. PFAEHLER:  Just so we are not

10     talking over each other.

11                         (Exhibit No. 8 marked for

12                          identification.)

13

14  Q  (By Mr. Gaughan)  I am showing you what's been marked as

15     Exhibit No. 8 to your deposition.

16          If you can, take a look at this and tell me what

17     this is.

18  A  This is another packet of 33 containers that were

19     shipped to BNBM.

20  Q  And from your review of this document, does it involve

21     the same contract we were just discussing, which is YXJ

22     010915?

23  A  Yes.

24  Q  Okay.  And would these documents have been prepared by

25     someone with knowledge of these transactions at or near
```

Confidential - Subject to Further Confidentiality Review

```
1        the time that they are dated?
2                      MR. PFAEHLER:  Objection.
3                      THE WITNESS:  Yes.
4   Q  (By Mr. Gaughan)  Would these documents have been
5        prepared as part of Western Wood's regular business
6        practices?
7                      MR. PFAEHLER:  Objection.
8                      THE WITNESS:  Yes.
9   Q  (By Mr. Gaughan)  And they would have been retained also
10       as part of Western Wood's regular business practices?
11  A  Yes.
12  Q  And we mentioned before that-- you mentioned before that
13       this involved 33 containers, is that correct, this
14       document?
15  A  Correct.
16  Q  And this was another shipment to fulfill this same
17       contract we've been discussing?
18  A  Yes.
19  Q  And whose handwriting is that on page-- the first page
20       of this document?
21          Do you know?
22  A  On the far right?
23  Q  Yeah.
24  A  The note?  It could either be Michelle Zaun or Jake
25       Spencer, two employees at Western Wood.
```

Confidential - Subject to Further Confidentiality Review

```
 1   Q   Okay.  So it says there-- the last thing that's stated

 2       in that handwriting, "2/10, e-mailed Jessie - Re: quick

 3       payment."

 4           Do you see that?

 5   A   Yes.

 6   Q   Who is Jessie?

 7   A   Jessie, he's our contact at BNBM.

 8   Q   Does he actually work for BNBM?

 9                       MR. PFAEHLER:  Objection to form.

10   Q   (By Mr. Gaughan)  To your knowledge?

11                       MR. PFAEHLER:  Objection to form.

12                       THE WITNESS:  Yes.

13   Q   (By Mr. Gaughan)  Do you know his full name?

14   A   Jessie Wu, W-U.

15   Q   Do you actually know Jessie yourself?

16   A   We've never met him.

17   Q   Have you ever corresponded with him or had any phone

18       conversations or anything like that?

19   A   I have not personally.

20   Q   Who at Western Wood would actually have conversations or

21       correspond with Mr. Wu?

22   A   If there's been a phone conversation, it would be with

23       John Tortorelli.

24                       MR. PFAEHLER:  I will object to the

25       last question.
```

Confidential - Subject to Further Confidentiality Review

```
 1                      MR. GAUGHAN:  Sure.

 2   Q   (By Mr. Gaughan)  The second page, what is the second

 3       page here?

 4   A   This is just a summary of the 33 containers.

 5   Q   And that continues to the following page, so it's two

 6       pages, correct?

 7   A   Yes.

 8   Q   Okay.  And then the fourth page, what is that document?

 9   A   A total of what's inside the containers.

10   Q   Okay.  And the next page is also the same?

11   A   Just a continuation--

12   Q   A continuation?

13   A   Yes.

14   Q   And the next page, which is Bates labelled WW 367,

15       that's an actual invoice, correct?

16   A   Yes.

17   Q   And the date of this invoice is January 29, 2015,

18       correct?

19   A   Correct.

20   Q   And this is a Western Wood invoice?

21   A   Yes.

22   Q   And it says, "Sold to Beijing New Building Materials

23       Company Limited"; is that correct?

24   A   Correct.

25   Q   And we see John Tortorelli's name there, correct?
```

Confidential - Subject to Further Confidentiality Review

```
 1   A   Yes.

 2   Q   And he's the sales rep who handled this particular

 3       transaction, I take it?

 4   A   Yes.

 5   Q   And then what does the "EDT date" mean again?

 6   A   Estimated time of departure.

 7   Q   And that's January 25, 2015, correct?

 8   A   Yes.

 9   Q   And the estimated time of arrival is March 2nd, 2015?

10   A   Correct.

11   Q   And the total invoice amount listed here is $169,775.20;

12       is that correct?

13   A   Yes, correct.

14                   MR. CABOT:  Counsel, once you are

15       done with this set, could we take a break?

16                   MR. GAUGHAN:  That's a lot of breaks,

17       but you can take them.

18           Let me just finish this section.

19   Q   (By Mr. Gaughan)  And then the next page is the packing

20       list, correct?

21   A   Yes.

22   Q   All right.  And the booking number, does that correspond

23       to a bill of lading number?

24   A   No.  I guess it corresponds to-- if you look at WW

25       000370, this would be a copy of the bill of lading.
```

Confidential - Subject to Further Confidentiality Review

```
 1          At the top you'll see the booking number, YCH

 2     413979.

 3  Q  And to the right of that is the bill of lading number,

 4     so it's a different number actually?

 5  A  Yes.

 6  Q  I understand.

 7          Okay.  But looking back at the same packing list,

 8     there's also a document credit number.

 9          Is that also a letter of credit number?

10  A  That's correct.

11  Q  Okay.  And is that the same letter of credit number that

12     we looked at with respect to the last exhibit, which was

13     Exhibit No. 7?

14  A  Yes.

15  Q  Okay.  If you go to the bill of lading, which starts at

16     370, is that all the bill of lading all the way through

17     373, or is that something else?

18  A  No, you're correct, that's--

19                  MR. PFAEHLER:  I'm sorry, 370

20     through--

21                  MR. GAUGHAN:  373.

22                  MR. PFAEHLER:  373.

23          All bill of lading, that's the question?

24                  MR. GAUGHAN:  Yes.

25                  THE WITNESS:  Yes, it is.
```

Confidential - Subject to Further Confidentiality Review

```
 1   Q   (By Mr. Gaughan)  And the bill of lading lists Western

 2       Wood as the shipper, correct?

 3   A   Correct.

 4   Q   And the notify party is Beijing New Building Materials

 5       Co.; is that correct?

 6   A   Correct.

 7   Q   I should say "Co. Limited."  Sorry.

 8           And the place of loading was listed as Tacoma,

 9       Washington, correct?

10   A   Yes, correct.

11   Q   And the place of delivery is Shanghai; is that correct?

12   A   Correct.

13   Q   All right.  And looking at this, do you have a sense of

14       how many logs were shipped?

15   A   Yes.

16   Q   How many is that?

17   A   1,272 logs.

18   Q   And do you know when the logs would have been loaded?

19                   MR. PFAEHLER:  Objection; form,

20       foundation.

21                   THE WITNESS:  Within ten days of the

22       sailing date.

23   Q   (By Mr. Gaughan)  Okay.  So you can't tell, from looking

24       at the bill of lading, when they were actually loaded,

25       you just look--
```

1    A    No, not when they're actually loaded.

2         They would be before the CRD date-- CRD, it's

3         1/28/15.

4                        MR. PFAEHLER:  I'm sorry, can I ask

5         what page you are looking at?

6                        THE WITNESS:  Oh, 370.  Sorry.

7         It's on the right-- under "Freight prepaid"--

8                        MR. PFAEHLER:  All right.  Thank you.

9    Q    (By Mr. Gaughan)  So that 1/28/15, is that what you're

10        talking about?

11   A    Yes.

12   Q    And what were you saying?  That would have been ten days

13        before that date you're saying?

14   A    No more than ten days before.

15                        MR. GAUGHAN:  And we can take a

16        break.

17                        VIDEOGRAPHER:  We are going off the

18        record.  The time is now 3:47 p.m.

19                        (Recess 3:47 to 3:57 p.m.)

20                          (Exhibit No. 9 marked for

21                            identification.)

22

23                        VIDEOGRAPHER:  Back on record.  The

24        time is now 3:57 p.m.

25   Q    (By Mr. Gaughan)  Mr. Salamanca, I am showing you what's

Confidential - Subject to Further Confidentiality Review

1    been marked as Exhibit No. 9 to your deposition.

2        If you could take a look and just review this

3    document real quick, and let me know when you've

4    completed looking at it.

5  A  Okay.  Yeah.

6  Q  Okay.  And I guess upon your review, does this involve

7    another shipment with respect to that same contract we

8    looked at earlier, which is YXJ 010915?

9  A  Yes.

10 Q  Okay.  And can you tell me if these documents, that we

11    are looking at, would have been prepared at or around

12    the time they're dated, by someone with knowledge with

13    respect to these documents and the underlying

14    transactions?

15                    MR. PFAEHLER:  Objection.

16                    THE WITNESS:  Yes.

17 Q  (By Mr. Gaughan)  And these documents would have been

18    prepared as part of Western Wood's regular business

19    practices, correct?

20                    MR. PFAEHLER:  Objection.

21                    THE WITNESS:  Correct.

22 Q  (By Mr. Gaughan)  And you would have retained a copy of

23    these documents as part of your regular business

24    practices as well, correct?

25 A  Yes.

Confidential - Subject to Further Confidentiality Review

```
 1   Q   And if you look at the first page-- which is similar to

 2       what we looked at before, correct?

 3   A   Yes.

 4   Q   This is kind of a summary of what the transaction is, a

 5       summary--

 6   A   Yeah, this is our checklist.

 7                       MR. PFAEHLER:  Looking at Page 374?

 8                       MR. GAUGHAN:  Yes.

 9                       MR. PFAEHLER:  Thank you.

10   Q   (By Mr. Gaughan)  And what is the second page again?

11   A   This is a summary-- this is a listing of the containers

12       for this particular booking.

13   Q   And can you tell me when this, I guess, load was

14       shipped?

15                       MR. PFAEHLER:  Objection to the form.

16   Q   (By Mr. Gaughan)  Do you understand what I mean when I

17       say "load"?

18   A   Yes.

19   Q   What does that mean to you?

20   A   This order, booking-- this booking.

21   Q   Okay.  Can you tell me when this load shipped?

22   A   It was estimated to ship around February 20th, 2015.

23   Q   Okay.  If you look at the second page, at the top, it

24       says, "February 23rd, 2015."

25           Would that be the actual shipping date?
```

Confidential - Subject to Further Confidentiality Review

```
 1                    MR. PFAEHLER:  Objection to form.

 2                    THE WITNESS:  No.  I think that would

 3        have been the date that this document was produced.

 4   Q    (By Mr. Gaughan)  Okay.  And the following page, what is

 5        that document?

 6   A    This is a summary of what's in the containers.

 7   Q    Okay.  Can you tell me a total number of logs, based on

 8        your review of this page?

 9   A    687.

10   Q    Okay.  And if you go to the next page, which is Bates

11        labelled 377, WW 377, is that the corresponding invoice

12        for this particular transaction?

13   A    Yes.

14   Q    And, again, this is an invoice from Western Wood, and it

15        indicates the materials were sold to Beijing New

16        Building Materials Company Limited; is that correct?

17   A    Correct.

18   Q    And the invoice is dated February 23rd, 2015?

19   A    Correct.

20   Q    And the ETD date again, what is that date again?

21   A    Estimated date of departure.

22   Q    And that's the February 2015 date we discussed before?

23   A    Yes.

24   Q    And the total invoice for this particular load was

25        $101,626; is that correct?
```

Confidential - Subject to Further Confidentiality Review

```
 1   A   Correct.

 2   Q   The packing list on the next page, 378, that refers to

 3       the same letter of credit we've been discussing earlier?

 4   A   Yes.

 5   Q   Thank you.

 6           And that's the document credit number that we see?

 7   A   Correct.

 8   Q   And the next page would be the bill of lading; is that

 9       correct?

10   A   Yes.

11   Q   And does this indicate a specific load date?

12   A   Not specific.

13   Q   But it does list Western Wood LC as the shipper?

14   A   Yes.

15   Q   And notify party is Beijing New Building Materials

16       Company Limited, correct?

17   A   Yes, correct.

18   Q   And the port of loading was Tacoma, Washington, correct?

19   A   Correct.

20   Q   And the place of delivery was Shanghai, correct?

21   A   Correct.

22   Q   Can you go to Page 381?

23   A   (Witness complies.)

24   Q   I guess my question is:

25           This is the way these documents were produced.
```

```
 1              I guess does this involve another load, so to

 2        speak?

 3   A    Yes.

 4   Q    Okay.  And the customer, again, is indicated as BNBM,

 5        correct?

 6   A    Correct.

 7   Q    And the next page, that's your summary document; is that

 8        correct?

 9   A    Yes, correct.

10   Q    And this transaction involved 34 logs, correct?

11   A    Correct.

12   Q    And if you go to the following page, which is 383, what

13        is this document again?

14   A    A summary of what is in-- what is in the containers--

15        container, in this case.

16   Q    And at the top we see a date of 2/23/15.

17              Do you see that?

18   A    Yes.

19   Q    And this appears to be the same date as the earlier

20        document that we looked at in the same exhibit; is that

21        correct?

22   A    Yes.

23   Q    Okay.  Is there a reason why there would be two separate

24        transactions if these went out on or about the same day?

25   A    Yes.
```

```
 1              In this particular case it was probably-- it was

 2         about this time when the ports finally-- they had been

 3         on strike since November, so it is about-- I think it

 4         was around this time when they re-signed a new deal, so

 5         in this particular situation one container might have

 6         been rolled over to a different vessel.

 7    Q    Okay.  And if we look at the next page, the invoice for

 8         this transaction, which is 384--

 9    A    Yes.

10    Q    And we see that this is an invoice from Western Wood to

11         Beijing New Building Materials Co. Limited, correct?

12    A    Correct.

13    Q    Dated February 23rd, 2015, correct?

14    A    Yes, correct.

15    Q    And it has an estimated time of-- the "ETD" is estimated

16         time of departure, correct?

17    A    Yes.

18    Q    And that's March 1, 2015?

19    A    Correct.

20    Q    But the value of this transaction is-- the amount of

21         this invoice is $5,086.26, correct?

22    A    Correct.

23    Q    And it involves the same contract we have been looking

24         at, correct, the YXJ 010915?

25    A    Correct.
```

Confidential - Subject to Further Confidentiality Review

```
 1   Q   That final page, is that the packing list for this

 2       particular load?  Is that correct?

 3   A   Yes, correct.

 4   Q   And the document credit number is the same-- identifies

 5       the same letter of credit that we've been discussing,

 6       correct?

 7   A   Correct.

 8   Q   You can put that aside.

 9                               (Exhibit No. 10 marked for

10                                identification.)

11

12   Q   (By Mr. Gaughan)  I am showing you what's been marked as

13       Exhibit No. 10 to your deposition.

14          What is this document?

15          Can you tell me what this is?

16   A   This is a letter of credit.

17   Q   Okay.  And does it identify Beijing New Building

18       Materials Co. as the applicant?

19   A   Yes.

20   Q   And what is the issuing bank?  Can you tell me that?

21   A   DBS Bank (China) Limited.

22   Q   Okay.  And do you have an understanding of what the

23       letter of credit number is for this particular letter of

24       credit?

25   A   Yes.
```

1    Q    And what is that?

2    A    334-01-0007580.

3    Q    And do you know the date this letter of credit was

4         issued?

5    A    July 2, 2014.

6    Q    And would you receive copies of-- like a letter of

7         credit of this nature, as a regular part of your

8         business-- of Western Wood's business activities?

9    A    Yes.

10   Q    Okay.  And you would retain copies as part of your

11        business practices?

12   A    Yes.

13   Q    And you can put that aside.

14                                (Exhibit No. 11 marked for

15                                  identification.)

16

17   Q    (By Mr. Gaughan)  I will show you what's been marked as

18        Exhibit No. 11 to your deposition.

19            Can you tell me what this document is or documents,

20        I should say?

21   A    This is just another packet that we produce for each

22        customer, for our records.

23   Q    Okay.  Can you tell me what contract number this

24        document corresponds to, or exhibit, I should say?

25            If you look at 400, hopefully that might help you.

Confidential - Subject to Further Confidentiality Review

```
 1   A   Contract No. CZY 0604.

 2   Q   Okay.  And if you look at Exhibit No. 2 again, is that

 3       the same contract number?

 4               MR. PFAEHLER:  Exhibit number-- I'm

 5       sorry?

 6               MR. GAUGHAN:  Exhibit No. 2.

 7               THE WITNESS:  Exhibit No. 3.

 8   Q   (By Mr. Gaughan)  Exhibit No. 3, you're correct.

 9               MR. PFAEHLER:  Hold on.

10               MR. GAUGHAN:  I misnumbered here.

11       It's actually Exhibit No. 3.

12       Does that help you?

13               MR. PFAEHLER:  Yes.

14        Can you just give me one minute, Counsel?

15       Everything looks so much alike.

16       Okay.  Got it.  Fire away.

17   Q   (By Mr. Gaughan)  So with respect to Exhibit No. 11,

18       would these various documents have been prepared at or

19       near the times indicated on these documents by someone

20       with knowledge either at Western Wood or elsewhere on

21       behalf of Western Wood?

22   A   Yes.

23   Q   And these documents would have been prepared as part of

24       Western Wood's regular business practices, correct?

25   A   Correct.
```

Confidential - Subject to Further Confidentiality Review

```
1    Q    And you would have retained copies as well, as part of

2         your regular business practices, correct?

3    A    Yes.

4    Q    If we look at Page 1, this is, again, the summary or

5         checklist you would prepare, correct?

6    A    Correct.

7    Q    And the customer indicated here again is BNBM?

8    A    Yes, correct.

9    Q    And this would involve-- this package would involve a

10        shipment pursuant to the contract we looked at, that was

11        Exhibit No. 3, correct?

12   A    Correct.

13   Q    If you go to Page 394, can you tell me what that

14        document is?

15   A    This indicates what-- how many logs are in the

16        containers for this booking.

17   Q    Okay.  And how many logs were involved in this booking?

18   A    1,329.

19   Q    Okay.  And if you go to Page 396, this is a document-- I

20        haven't seen this exact format before, so I was

21        wondering if you could tell me what this document is?

22   A    These are the containers that were-- that pertain to

23        this booking.

24   Q    Okay.  And if you want to go to the next page, which is

25        397, this is the actual invoice that involved this
```

Confidential - Subject to Further Confidentiality Review

```
 1       booking, correct?

 2    A  Yes, correct.

 3    Q  And it's dated July 23, 2014, correct?

 4    A  Correct.

 5    Q  Again, Western Wood-- it's a Western Wood invoice,

 6       correct?

 7    A  Yes, correct.

 8    Q  And the invoice indicates that the materials were sold

 9       to Beijing New Building Materials Company Limited,

10       correct?

11    A  Correct.

12    Q  Okay.  And the total amount listed on this invoice is

13       $212,111.20, correct?

14    A  Correct.

15    Q  And the estimated time of delivery or-- excuse me,

16       estimated time of departure was listed as July 26th,

17       2014?

18    A  Correct.

19    Q  And if you look at the next page, which is the packaging

20       list, does that identify a letter of credit number?

21    A  Yes.

22    Q  Does that number correspond with what is on Exhibit

23       No. 10, the letter of credit we just looked at?

24    A  Yes.

25    Q  Thank you.  If you look at Page 399, what is this
```

Confidential - Subject to Further Confidentiality Review

```
 1      document?

 2   A  This is just a booking receipt-- I guess a booking

 3      confirmation to us before we start loading.

 4   Q  And-- I'm sorry, go ahead and finish.

 5   A  I'm finished.

 6   Q  And we see John Tortorelli on there.

 7         We already talked about him, correct?

 8         He was a sales rep?

 9   A  Yes.  I just list him as a sales-- I mean, he's the

10      owner of the company.  I just--

11   Q  Okay.  But he's involved in a lot of the sales

12      activities?

13   A  Yes.

14         Where is his name?

15   Q  At the very top.

16         It says, "To" and "From."

17         Do you see that?

18   A  Oh, I see that, yes.

19   Q  And then we see, "From branch office Seattle" and

20      "Francis Madrid."

21         Who is that, Francis Madrid?

22   A  An employee at Hanjin.

23   Q  At where?  I'm sorry?

24   A  Hanjin Shipping.

25         This comes from the shipping company.
```

```
1    Q    So she's not an employee of Western Wood?

2    A    No.

3                    MR. PFAEHLER:  He?

4    Q    (By Mr. Gaughan)  Is it a he?

5                    MR. GAUGHAN:  Don't you think?

6    Q    (By Mr. Gaughan)  And then the sales rep there is Usak

7         Kim (phonetic).

8            Do you know who that is?

9    A    We would go-- call him by "Eugene Kim."

10           He's the sales rep for Hanjin Shipping.

11   Q    Okay.  He would have been involved in just the actual

12        shipping-- the booking of the containers, that sort of

13        thing?

14   A    Right, just us solidifying however many-- 36 containers.

15   Q    And the Document 400 through 401, is that the bill of

16        lading?

17   A    Yes.

18   Q    Okay.  And, again, Western Wood is identified as the

19        shipper/exporter; is that correct?

20   A    Correct.

21   Q    And notify party is Beijing New Building Materials

22        Company Limited; is that correct?

23   A    Correct.

24   Q    And this also refers to the contract number we discussed

25        earlier, which was marked as Exhibit No. 3?
```

```
 1   A   Yes, correct.

 2                          (Exhibit No. 12 marked for

 3                           identification.)

 4

 5   Q   (By Mr. Gaughan)  I am showing you what's been marked as

 6       Exhibit No. 12 to your deposition, if you could take a

 7       look through this and tell me what this represents, this

 8       document.

 9   A   This is another packet of-- that we keep on file for our

10       records of a complete booking.

11   Q   And these documents in the packet, they would have been

12       prepared either by someone at Western Wood or by outside

13       parties, at your direction, at or near the time that

14       they are dated?

15   A   Yes.

16   Q   And these documents would have been prepared as part of

17       Western Wood's regular business practices, correct?

18                          MR. PFAEHLER:  Objection.

19                          THE WITNESS:  Yeah.

20   Q   (By Mr. Gaughan)  And you would have retained copies of

21       these documents as part of your regular business

22       practices?

23                          MR. PFAEHLER:  Objection; form.

24                          THE WITNESS:  Yes, correct.

25   Q   (By Mr. Gaughan)  Okay.  And on this document we can see
```

Confidential - Subject to Further Confidentiality Review

```
 1       BNBM as the customer; is that correct?

 2   A   Correct.

 3   Q   Looking at Page 1, which is your checklist?

 4   A   Yes.

 5   Q   Okay.  If you want to go to Page 405, can you tell me

 6       what this document is here?

 7   A   A summary of the items in the containers.

 8   Q   Okay.  And how many logs were in these containers?

 9   A   945.

10   Q   Okay.  At Page 407, that's similar to one of the

11       documents we just looked at, correct, where it involves

12       the shipping company?

13   A   Yes.

14   Q   Okay.  And Document No. 408 is the invoice for this

15       particular transaction?

16   A   Correct.

17   Q   And this refers to Contract No. CZY 0604, correct?

18   A   Correct.

19   Q   And this is the same contract we were looking at before

20       that was marked as Exhibit No. 3 to your deposition; is

21       that correct?

22   A   Correct.

23   Q   Okay.  And the invoice date for this particular load is

24       July 31st, 2014, correct?

25   A   Correct.
```

1   Q   And it's a Western Wood invoice that indicates the

2       materials were sold to Beijing New Building Materials

3       Company Limited, correct?

4   A   Correct.

5   Q   And the estimated departure date for this transaction is

6       August 2nd, 2014; is that correct?

7   A   Correct.

8                   MR. CABOT:  Can I just make a

9       suggestion?

10          If he's just going to be reading off what the

11      document says, can we just authenticate the document and

12      then move on because it doesn't seem like he's

13      testifying based on his personal knowledge?

14          You are just asking him what the document says.

15                  MR. GAUGHAN:  Well, I am putting in

16      the record what I need to put in.

17                  MR. CABOT:  That's fine.  I just

18      think it would go faster.

19                  MR. GAUGHAN:  That's fine.  Thank

20      you.  I'll keep that in mind.

21  Q   (By Mr. Gaughan)  And for this particular invoice, the

22      invoice total is $144,128.60, correct?

23                  MR. CABOT:  Objection; document

24      speaks for itself.

25                  MR. PFAEHLER:  You know, there is a

1       point that has just been made, which-- you know, to the

2       extent we are here to authenticate documents, which

3       appears to be what you are doing, you know, we could do

4       it much more quickly.

5           You can draw out whatever points you want from it,

6       but we do have a witness-- and this is the third depo we

7       have done this, with witnesses being asked questions,

8       which are basically, "Read me this line on the document.

9       Read me that line."

10          You don't need that to create the record.  You can

11      read to the judge the parts of the document you want to

12      read.

13                      MR. GAUGHAN:  Well, I will bear that

14      in mind.

15          I mean, I'm getting objections to some of my

16      questions where I am trying to authenticate documents,

17      and I'm also trying to put important pieces of

18      information in the record, which is what I'm trying to

19      do, but I understand your objection.

20          I am trying to do this as quickly as possible--

21                      MR. CABOT:  But you are not asking

22      him if the transaction took place on a date.

23          You are asking, "Does the document say that it was

24      July 31st, two thousand"-- I mean, that's essentially

25      asking him to read the document--

1              MR. GAUGHAN:  Well, he might not

2      exactly know when the date was, just from memory.

3              MR. CABOT:  Right, but that's what

4      you should determine.

5              MR. GAUGHAN:  The document is what I

6      have to ask him about.

7   Q   (By Mr. Gaughan)  Let's go back to this.

8          Do you know when these documents-- this load was

9      actually loaded?

10  A   It would have been completed July 31st, 2014.

11  Q   Okay.  But the estimated time of departure is August

12      2nd, 2014, correct?

13  A   Yes.

14  Q   So you're saying that the materials would have been

15      loaded before that and the vessel would set sail after;

16      is that correct?

17              MR. PFAEHLER:  Objection to form.

18              THE WITNESS:  Correct.

19  Q   (By Mr. Gaughan)  Okay.  And the total amount of this

20      invoice is $144,128.60, correct?

21  A   Correct.

22  Q   And if you go to the next page, which is the packing

23      list--

24  A   Yes.

25  Q   This indicates a document credit number, which

```
 1         corresponds to what we looked at as Exhibit No.--

 2                         MR. PFAEHLER:  10.

 3    Q   (By Mr. Gaughan)  --10, correct?

 4    A   Yes, correct.

 5    Q   And that's how you would have received payment, is under

 6        that letter of credit; is that correct?

 7    A   Correct.

 8    Q   And the final page of this document, this is the bill of

 9        lading; is that correct?

10    A   Yes, correct.

11    Q   And can you tell me the load date, based on this

12        particular document?

13                         MR. PFAEHLER:  Objection; foundation.

14                         THE WITNESS:  Onboard 8/2/14.

15                             (Exhibit No. 13 marked for

16                              identification.)

17

18                         MR. PFAEHLER:  You don't happen to

19        have one more, do you?

20                         MR. GAUGHAN:  I think that was it.

21                         MR. WITTMAN:  That's okay.

22                         MR. PFAEHLER:  If you want to look,

23        we can share-- although they feel different-- wait a

24        minute, these two must be stapled together-- hold on.

25            Nevermind.  We have two stapled together.
```

```
 1                      MR. WITTMAN:  Thanks, Counsel.

 2                      MR. PFAEHLER:  Notice how I take the

 3        safety risk for you.

 4            Full service over here.

 5                      MR. GAUGHAN:  I had a little incident

 6        with staples recently.

 7                      MR. CABOT:  I heard about that.

 8            I thought that was an intimidation thing.

 9                      MR. GAUGHAN:  That was me trying to

10        put my exhibits together is what it really was.

11   Q    (By Mr. Gaughan)  All right.  So I am showing you what's

12        been marked as Exhibit No. 13 to your deposition.

13            Can you take a look at those documents, sir?

14   A    Yes.

15   Q    Can you tell me what these documents are?

16   A    It's our finished packet for our records at Western

17        Wood, with the packing list, summary, invoice, and

18        booking confirmation, and a copy of the bill of lading.

19   Q    Okay.  And on this first document, the checklist that

20        we've referred to in other transactions, the customer is

21        BNBM; is that correct?

22   A    Correct.

23   Q    Based on your review of the documents, can you tell me

24        what contract number is involved in this particular

25        packet of materials?
```

Confidential - Subject to Further Confidentiality Review

```
 1   A   Contract CZY 0604.

 2   Q   This is the same contract that we have been looking at

 3       in Exhibit No. 3?

 4   A   Correct.

 5   Q   And as with the earlier documents we looked at, these

 6       materials would have been prepared either by someone at

 7       Western Wood or someone, you know, at a different

 8       company at Western Wood's direction at or near the time

 9       of-- that they're dated; is that correct?

10   A   Correct.

11   Q   Okay.  And Western Wood would have-- these documents

12       would have been prepared as part of Western Wood's

13       regular business activity; is that correct?

14   A   Yes, correct.

15   Q   And you would have retained copies of these documents as

16       part of your regular business activities?

17   A   Correct.

18   Q   All right.

19                MR. PFAEHLER:  I am going to make an

20       objection to the second to the last question about

21       whether all these were prepared by Western Wood as part

22       of their regular business activities.

23   Q   (By Mr. Gaughan)  Well, I think what I said, I thought,

24       was whether they were prepared by Western Wood or by

25       third parties at Western Wood's direction.
```

Confidential - Subject to Further Confidentiality Review

```
 1            Would you agree that these documents were prepared

 2       either by Western Wood or by third parties at Western

 3       Wood's direction?

 4            Would you agree with that?

 5   A   Yes.

 6   Q   Okay.  And as part of Western Wood's regular business

 7       activities, they would have been prepared?

 8                    MR. PFAEHLER:  I am going to still

 9       object to the last question.

10                    MR. GAUGHAN:  Which one, the first--

11                    MR. PFAEHLER:  Yeah, "prepared at

12       Western Wood's direction."

13            We have several documents that appear to be

14       prepared by third parties in the course of their

15       business, such as the Yang Ming Marine Transport booking

16       confirmation and the nonnegotiable bill of lading--

17       particularly the items that I was concerned about.

18   Q   (By Mr. Gaughan)  Well, would you agree that when you

19       get a bill of lading, that's by a third party company,

20       at your direction, that you have requested that

21       transaction, and-- that that document is prepared as

22       part of that process?

23                    MR. PFAEHLER:  Objection to form.

24                    THE WITNESS:  Yes.

25   Q   (By Mr. Gaughan)  Okay.  And same for these other third
```

Confidential - Subject to Further Confidentiality Review

```
 1      party documents, they are being prepared as part of your

 2      business practice by third parties, correct?

 3                      MR. PFAEHLER:  Objection; form.

 4                      THE WITNESS:  Yes.

 5   Q  (By Mr. Gaughan)  The second document, the booking

 6      confirmation, what is that document?

 7   A  Just confirms the order for-- in this particular-- the

 8      booking, YCH 388973, we had set aside 35 containers for

 9      this particular booking, but we only used 22.

10          It's kind of like buying ten seats on an airplane

11      and only using five.

12   Q  Okay.  And based on your review of this document, can

13      you tell me when these materials shipped?

14                      MR. PFAEHLER:  Objection to form.

15                      MR. GAUGHAN:  Let me see that.

16          What was the last question?

17                      THE WITNESS:  Estimated date, August

18      2nd, 2014.

19   Q  (By Mr. Gaughan)  I should probably clarify my last

20      question.

21          What I meant was, can you tell me the date that

22      this load actually shipped?

23                      MR. PFAEHLER:  Objection; form.

24                      THE WITNESS:  Oh, the actual date?

25                      MR. GAUGHAN:  Yeah.
```

Confidential - Subject to Further Confidentiality Review

```
 1                      THE WITNESS:  I can't tell you the

 2        actual date.

 3            I can estimate the date.

 4   Q   (By Mr. Gaughan)  What would be your--

 5   A   Well, based on Yang Ming's booking confirmation, they

 6        estimated the sailing date as July 30th, 2014.

 7                      MR. PFAEHLER:  Move to strike;

 8        nonresponsive.

 9   Q   (By Mr. Gaughan)  And based on that estimated sail date,

10        would that be what you anticipated the sail-- what you

11        would understand the sail date to have been?

12                      MR. PFAEHLER:  Objection to form.

13                      THE WITNESS:  Yes.

14   Q   (By Mr. Gaughan)  In looking at the invoice, this refers

15        back to the same contract that we looked at that was

16        marked as Exhibit No. 3; is that correct?

17   A   Correct.

18   Q   And the total invoice amount from Western Wood to

19        Beijing New Building Materials Company Limited was

20        $120,863.40; is that correct?

21   A   Correct.

22   Q   And if you look at the next page, the packaging list,

23        this refers to the same letter of credit we looked at as

24        Exhibit No. 10; is that correct?

25   A   Yes, correct.
```

Confidential - Subject to Further Confidentiality Review

```
 1                            (Exhibit No. 14 marked for

 2                             identification.)

 3

 4    Q   (By Mr. Gaughan)  I am showing you what's been marked as

 5        Exhibit No. 14 to your deposition.

 6            Can you take a look at this document and just

 7        verify this is similar to the other packets we've been

 8        looking at?

 9    A   Yes, it is.

10    Q   Okay.  Again, on the first page, the checklist indicates

11        BNBM as the customer; is that correct?

12    A   Correct.

13    Q   And as with the prior packets that we've looked at, the

14        documents included in this packet would have been

15        prepared by either Western Wood or third parties, at or

16        near the dates that are indicated on these documents,

17        correct?

18    A   Correct.

19    Q   And these documents would have been prepared as part of

20        Western Wood's regular business practices, correct?

21    A   Correct.

22    Q   And you would have retained copies of them as part of

23        your regular business practices as well?

24    A   Yes.

25                        MR. GAUGHAN:  I am going to object to
```

1      the second to the last question.

2  Q   (By Mr. Gaughan)  I will ask another question.

3          So these documents would have been prepared either

4      by Western Wood or by third parties as part of Western

5      Wood's regular business practices, correct?

6                      MR. PFAEHLER:  Objection; form.

7                      THE WITNESS:  Correct.

8  Q   (By Mr. Gaughan)  And can you tell me the total load

9      that was involved in this packet, how many logs?

10  A   1,170.

11  Q   Okay.  And if you look at the invoice, does it refer to

12      the same contract we've been looking at as Exhibit No. 3

13      to your deposition?

14  A   Yes.

15  Q   Okay.  And this is an invoice, I guess, that is dated

16      August 1st, 2014, from Western Wood to Beijing New

17      Building Materials Company Limited; is that correct?

18  A   Correct.

19  Q   And the total invoice amount is $165,081; is that

20      correct?

21  A   Correct.

22                      MR. CABOT:  Counsel, could we-- once

23      you're done with this packet, can we go off the record

24      for a minute?

25          I have a stipulation to offer.

Confidential - Subject to Further Confidentiality Review

```
 1                    MR. GAUGHAN:  Sure.  I'll finish the

 2        packet up, and we'll talk about it.

 3   Q    (By Mr. Gaughan)  If you can go to the next document,

 4        which is 427-- and this is the packing list, correct?

 5   A    Yes.

 6   Q    All right.  And this refers to the same document credit

 7        number we looked at earlier, 334-01-0007580?

 8   A    Correct.

 9   Q    That was marked as Exhibit No. 10 to your deposition?

10   A    Yes.

11   Q    And the final document in this package is the bill of

12        lading.

13           Does this give you a time that this load was

14        loaded?

15   A    Yes.

16   Q    And when was that?

17   A    8/1/2014.

18                    MR. GAUGHAN:  Okay.  And I guess

19        we'll go off the record now.

20                    VIDEOGRAPHER:  We are going off the

21        record.  The time is now 4:34 p.m.

22                         (Recess 4:34 to 4:47 p.m.)

23                         (Exhibit No. 15 marked for

24                          identification.)

25        /////
```

Confidential - Subject to Further Confidentiality Review

```
 1              VIDEOGRAPHER:  This marks the

 2      beginning of DVD No. 2.  The time is now 4:47 p.m.  We

 3      are on record.

 4              MR. GAUGHAN:  Counsel, we have

 5      discussed off the record and we agreed to stipulate that

 6      what's been marked as Exhibit No. 15 is a business

 7      record for purposes of the federal rules of civil

 8      procedure.

 9   Q  (By Mr. Gaughan)  My question for the witness, with

10      respect to this document, is:

11          Would you agree, if you look at Exhibit No. 2,

12      which is previously marked, this is the same contract

13      number?

14   A  Yes.

15                      (Exhibit No. 16 marked for

16                       identification.)

17

18   Q  (By Mr. Gaughan)  I am showing you what's been marked as

19      Exhibit No. 16, and this is-- for the record, it's Bates

20      labelled WW 432 through 435.

21          Can you tell me what this is, sir, this document?

22   A  The letter of credit.

23   Q  And what is the date on this document?

24   A  July 2nd, 2014.

25   Q  And what is the number on this letter of credit?
```

Confidential - Subject to Further Confidentiality Review

```
 1   A   334-01-0007599.

 2   Q   And do you know what bank issued this letter of credit?

 3   A   DBS Bank (China) Limited.

 4   Q   And the applicant is Beijing New Building Materials

 5       Company Limited; is that correct?

 6   A   Yes.

 7   Q   And if you go to the second page, under Paragraph

 8       No. 32B, the total U.S. dollars amount of this letter of

 9       credit was $301,500; is that correct?

10   A   Yes, correct.

11                   MR. PFAEHLER:  Sorry, Line 32?

12                   MR. GAUGHAN:  32B.

13   Q   (By Mr. Gaughan)  And Western Wood received letters of

14       credit similar to this one as part of your regular

15       business activities?

16   A   Yes.

17   Q   And you would have retained copies of them as part of

18       your regular business activities as well?

19                   MR. PFAEHLER:  Objection; form.

20                   THE WITNESS:  Yes.

21                   MR. CABOT:  I will stipulate to this,

22       that it's a business record.

23                   MR. GAUGHAN:  Do we have an agreement

24       on that, Counsel?

25                   MR. PFAEHLER:  I will stipulate for
```

1      purposes of authenticating whether it's a business

2      record.

3                    MR. CABOT:  Yeah, same caveats.

4                    MR. GAUGHAN:  When you say

5      "authenticity," are you including the hearsay, you know,

6      business record exception?

7                    MR. PFAEHLER:  I can't stipulate to

8      that in advance because I don't know how it might be

9      used-- how it might be used or what purpose it might be

10     used for--

11                   MR. GAUGHAN:  Okay.

12                   MR. PFAEHLER:  --in a later

13     proceeding or trial.

14        I would stipulate that it can be considered an

15     authentic business record of Western Wood LLC.

16                   MR. GAUGHAN:  Okay.

17                   MR. PFAEHLER:  If that helps.

18                   MR. GAUGHAN:  Yeah, that helps a

19     little bit.

20                        (Exhibit No. 17 marked for

21                          identification.)

22

23   Q   (By Mr. Gaughan)  I am showing you what's been marked as

24     Exhibit No. 17.

25        Can you take a look at this document?

```
 1   A   Okay.

 2   Q   And it's another packet similar to the ones we looked at

 3       previously?

 4   A   Yes.

 5   Q   Would you agree that this particular packet would be

 6       prepared by someone with knowledge of the underlying

 7       transactions, either at Western Wood or at a third party

 8       company at or near the time these documents are dated?

 9                   MR. PFAEHLER:  Objection to form.

10                   THE WITNESS:  Yes.

11   Q   (By Mr. Gaughan)  Okay.  And these documents would have

12       been prepared either by Western Wood or by third parties

13       at Western Wood's direction as part of Western Wood's

14       regular business practices, correct?

15   A   Yes.

16   Q   And you would have retained copies of these documents as

17       part of your regular business activities?

18   A   Yes.

19   Q   And I guess on the summary sheet, you would agree that

20       the customer is identified as BNBM, correct?

21   A   Correct.

22   Q   And do you know-- after reviewing these documents, can

23       you tell me what date these particular loads shipped?

24   A   Around July 16, 2014.

25   Q   Okay.  And can you tell me what contract this particular
```

Confidential - Subject to Further Confidentiality Review

```
 1       shipment involved?

 2   A   CZY 0603.

 3   Q   And this is the-- if you look back at Exhibit No. 2, is

 4       that the corresponding document?

 5   A   Yes.

 6   Q   603?

 7           And the total invoice amount under this transaction

 8       is $146,046.60; is that correct?

 9   A   Correct.

10   Q   Again, according to the invoice of Western Wood, these

11       materials were sold to Beijing New Building Materials

12       Company Limited; is that correct?

13   A   Yes, that's correct.

14   Q   And if you look at the packing list, would you agree

15       that the document credit number there corresponds with

16       the letter of credit that we saw that was marked as

17       Exhibit No. 16?

18   A   Correct.

19   Q   You can put that aside.  I am going to mark my next

20       exhibit.

21                             (Exhibit No. 18 marked for

22                              identification.)

23

24   Q   (By Mr. Gaughan)  And I am showing you what's been

25       marked as Exhibit No. 18.
```

Confidential - Subject to Further Confidentiality Review

```
1                      MR. GAUGHAN:  Counsel, are we going

2       to have the same stipulation as to authenticity as a

3       business record but not as to hearsay?

4                      MR. PFAEHLER:  You know, we are not

5       saving anything much by stipulating, so let's just move

6       forward and do what you're going to do with these.

7           I don't see us speeding the process at all with our

8       attempts to stipulate.

9                      MR. GAUGHAN:  Okay.

10                     MR. PFAEHLER:  So let's just proceed.

11   Q  (By Mr. Gaughan)  I am showing you what's been marked as

12      Exhibit No. 17 to your deposition.

13          And this is the similar packet to the ones we've

14      looked at previously; is that correct?

15   A  Yeah.

16          18?

17   Q  Did I say "17"?  I meant 18.  I'm sorry.

18   A  Yes.

19   Q  And would these documents in here have been prepared by

20      someone with knowledge, whether at Western Wood or at a

21      third party company at or near the time they were dated?

22                     MR. PFAEHLER:  Objection.

23                     THE WITNESS:  Yes.

24   Q  (By Mr. Gaughan)  And they would have been prepared

25      either by Western Wood or at Western Wood's direction as
```

Confidential - Subject to Further Confidentiality Review

 1       part of Western Wood's regular business practices?

 2   A   Yes.

 3                   MR. PFAEHLER:  Objection.

 4   Q   (By Mr. Gaughan)  And you would have retained copies as

 5       part of your regular business practices?

 6   A   Yes.

 7   Q   And the customer identified on this particular

 8       transaction is also BNBM; is that correct?

 9   A   Correct.

10   Q   And at least according to the cover sheet, which is your

11       checklist, it identifies the contract number as CZY

12       0603; is that correct?

13   A   Correct.

14   Q   And that's the same contract number we've been looking

15       at as Exhibit No. 2 to your deposition, correct?

16   A   Yes, correct.

17   Q   Can you tell me when this particular load shipped?

18                   MR. PFAEHLER:  Objection.

19           Is the question, "Looking from the face of this

20       document can you tell me what the document"--

21                   MR. GAUGHAN:  I am asking him if he

22       can tell me when it ships.

23                   MR. PFAEHLER:  Are you asking him if

24       he actually has knowledge of when it shipped?

25           Objection.

Confidential - Subject to Further Confidentiality Review

```
 1                         MR. GAUGHAN:  If he can tell me when

 2      it shipped, and then you can ask him what his knowledge

 3      of that might be.

 4                         THE WITNESS:  It was around July

 5      23rd, 2014.

 6   Q  (By Mr. Gaughan)  I guess to speed things along, just

 7      tell me, is that based on your review of these

 8      documents?

 9   A  Yes.

10   Q  And in your experience in dealing with shipping

11      companies, are those dates generally accurate?

12                         MR. PFAEHLER:  Objection.

13                         THE WITNESS:  Yeah.  I mean,

14      generally accurate, yes.

15   Q  (By Mr. Gaughan)  Within a matter of days?

16   A  Yes, within days, yes.

17   Q  Not months or anything like that?

18   A  No.  No.

19   Q  Okay.

20                         MR. PFAEHLER:  Objection.

21   Q  (By Mr. Gaughan)  Can you tell me the number of logs

22      that are involved in this shipment?

23   A  993.

24   Q  And where did these materials ship from?

25   A  The port of Tacoma.
```

1  Q  Okay.  And was it also-- they were also delivered to

2     Shanghai; is that correct?

3  A  Yes.

4  Q  If we can look at the invoice, which was 454, this is an

5     invoice from Western Wood, and it indicates the

6     materials were sold to Beijing New Building Materials

7     Company Limited; is that correct?

8  A  Correct.

9  Q  And the total amount of this invoice is $180,638.70; is

10    that correct?

11 A  Correct.

12 Q  And the invoice is dated July 19, 2014, correct?

13 A  Correct.

14 Q  If you look to the next page, which is the packing list,

15    this identifies the same letter of credit document that

16    we looked at, marked as Exhibit No. 16; is that correct?

17 A  Correct.

18                          (Exhibit No. 19 marked for

19                            identification.)

20

21                    MR. GAUGHAN:  I think we can have a

22    similar stipulation on this document to our earlier

23    contract we looked at.

24       Can we have the same stipulation to this now?

25                    MR. PFAEHLER:  No.

1   Q   (By Mr. Gaughan)  I am showing you what's been marked as

2       Exhibit No. 19 to your deposition.

3           This is an offer sheet, and it indicates on the

4       top, in someone's handwriting, "CZY 0705," correct?

5   A   Yes.

6   Q   And this corresponds to the document number that is

7       identified in Exhibit No. 4 to your deposition, correct?

8   A   Correct.

9   Q   And the offer date-- offer issue date on this document

10      is July 7, 2014; is that correct?

11  A   Correct.

12  Q   And the offer was made to Beijing New Building Materials

13      Company Limited; is that correct?

14  A   Correct.

15  Q   And the total amount listed is $1,102,000; is that

16      correct?

17  A   Correct.

18  Q   And the anticipated last ship date is September 15,

19      2014; is that correct?

20  A   Correct.

21  Q   Do you know who would have prepared this document?

22  A   This one, Michelle Zaun.

23  Q   And that would have been signed by John Tortorelli; is

24      that correct?

25  A   Yes.

Confidential - Subject to Further Confidentiality Review

1  Q   And you indicated Michelle would have prepared this?

2  A   Yes, Exhibit No. 19.

3  Q   Yes.

4          And she would have had knowledge of this document

5      at the time she prepared it?

6  A   Yes.

7  Q   And she would have prepared it on or about July 7, 2014;

8      is that correct?

9  A   Yes.

10  Q   And it would have been prepared as part of her regular

11      business duties at Western Wood; is that correct?

12  A   Yes.

13  Q   And you would have retained copies of this document as

14      part of your regular business practices?

15  A   Yes.

16                              (Exhibit No. 20 marked for

17                                  identification.)

18

19  Q   (By Mr. Gaughan)  Okay.  I am showing you what's been

20      marked as Exhibit No. 20 to your deposition.

21          This is a similar packet to some of the other ones

22      we've looked at today; is that correct?

23  A   Yes.

24  Q   And this document-- these documents would have been

25      prepared by either someone at Western Wood or by third

Confidential - Subject to Further Confidentiality Review

```
 1       parties at Western Wood's direction; is that correct?

 2    A  Correct.

 3    Q  And they would have been prepared at or near the dates

 4       that are identified in these documents; is that correct?

 5    A  Yes, correct.

 6    Q  And these documents were prepared as part of Western

 7       Wood's regular business practices; is that correct?

 8    A  Correct.

 9    Q  And you would have retained copies of these documents as

10       part of your regular business practices; is that

11       correct?

12    A  Correct.

13    Q  And looking at the cover page, this identifies BNBM as

14       the customer; is that correct?

15    A  Yes, correct.

16    Q  And can you tell me the number of logs that was involved

17       in this load?

18    A  853.

19    Q  And where are you getting that number from?

20    A  You can get it from Page 459, at the bottom.

21    Q  And what is that document again?

22    A  This is a list of containers for this particular

23       shipping booking.

24    Q  Okay.  Can you tell me when this shipment would have

25       been made?
```

```
 1   A   The vessel would have been left-- estimated to leave
 2       September 2nd, 2014.
 3   Q   Okay.  And where are you getting that date from?
 4   A   The invoice on Page 462.
 5   Q   And this indicates it involves a contract JT073014; is
 6       that correct?
 7   A   Correct.
 8   Q   And that's not one of the contracts we've looked at
 9       today?
10   A   Correct.
11   Q   And the total invoice amount is $105,421.50; is that
12       correct?
13   A   Correct.
14   Q   And the invoice date is August 29, 2014, correct?
15   A   Correct.
16   Q   And as with the other invoices, this invoice identifies
17       Beijing New Building Materials Company Limited as
18       being-- as the materials being sold to that entity; is
19       that correct?
20   A   Correct.
21   Q   If you look at the following page, the packing list,
22       this refers to a Letter of Credit No. 334-01-0007857; is
23       that correct?
24   A   Correct.
25   Q   Okay.  Put that one aside.
```

Confidential - Subject to Further Confidentiality Review

```
 1                              (Exhibit No. 21 marked for

 2                               identification.)

 3

 4   Q   (By Mr. Gaughan)  I am showing you what's been marked as

 5       Exhibit No. 21.

 6           Can you tell me what this document is?

 7   A   It's a letter of credit.

 8   Q   And does the letter of credit number here match the

 9       letter of credit number referenced in the last document,

10       the packaging list?

11   A   Yes.

12   Q   Okay.  And Beijing New Building Materials Company is

13       identified as the applicant; is that correct?

14   A   Correct.

15   Q   And the issue bank is DBS Bank (China) Limited; is that

16       correct?

17   A   Correct.

18   Q   And the total amount of this letter of credit, if you

19       look at-- I am not finding it myself at the moment.

20   A   32B.

21   Q   What is the amount of the letter of credit?

22   A   Looks like 826,500.

23   Q   $826,500; is that correct?

24   A   Yes.

25   Q   And that's U.S. dollars?
```

Confidential - Subject to Further Confidentiality Review

1    A    Yes.

2    Q    And you can set that aside.

3                          (Exhibit No. 22 marked for

4                           identification.)

5

6    Q    (By Mr. Gaughan)  I am showing you what's been marked as

7         Exhibit No. 22 to your deposition.

8              This is a similar packet of documents to those we

9         have already looked at today; is that correct?

10                        MR. PFAEHLER:  Hold on.

11            Sorry, Counsel.

12                        THE WITNESS:  Yes.

13   Q    (By Mr. Gaughan)  And in the various documents included

14        in this exhibit, they would have been either prepared by

15        Western Wood or by another company at Western Wood's

16        direction; is that correct?

17   A    Correct.

18   Q    And the individuals preparing these documents would have

19        prepared them at or around the time they were dated; is

20        that correct?

21   A    Correct.

22                        MR. PFAEHLER:  Objection; form.

23   Q    (By Mr. Gaughan)  And these documents would have been

24        prepared as part of Western Wood's regular business

25        practices; is that correct?

Confidential - Subject to Further Confidentiality Review

```
 1                        MR. PFAEHLER:  Objection.

 2                        THE WITNESS:  Yes.

 3    Q   (By Mr. Gaughan)  And you would have retained copies of

 4        these documents as part of your regular business

 5        activities?

 6    A   Yes.

 7    Q   And if you look at the first page of this document,

 8        which is your-- I guess your checklist, it identifies

 9        BNBM as a customer; is that correct?

10    A   Correct.

11    Q   And this particular document involves a different

12        contract, correct?

13            The contract we looked at is Exhibit No. 4 to your

14        deposition; is that correct?

15                        MR. PFAEHLER:  Different-- I'm sorry,

16        Counsel, different contract from what?

17                        MR. GAUGHAN:  Well, than some of the

18        other ones.

19    Q   (By Mr. Gaughan)  We have not looked at any documents

20        relative to this particular contract; is that correct?

21                        MR. PFAEHLER:  Oh, I disagree.

22            Objection.

23    Q   (By Mr. Gaughan)  All right.  I am going to ask that

24        question again.

25            This particular packet of documents, that's been
```

Confidential - Subject to Further Confidentiality Review

```
 1       marked as Exhibit No. 22 to your deposition, this

 2       involves the document that we looked at earlier that was

 3       marked as Exhibit No. 4 to your deposition; is that

 4       correct?

 5   A   Yes.

 6   Q   Okay.  Can you tell me the ship date for this particular

 7       load?

 8   A   Estimated September 20, 2014.

 9   Q   Okay.  Can you tell me the number of logs that were

10       involved in this particular shipment?

11   A   580.

12   Q   And where are you getting that number from?

13   A   Page 471.

14   Q   Okay.  And what is that document again?

15   A   This is a summary of everything in the containers.

16   Q   Okay.  And if you look at the invoice, which is 472--

17   A   Yes.

18   Q   This is the invoice-- Western Wood's invoice, and it

19       indicates these materials were sold to Beijing New

20       Building Materials Company Limited; is that correct?

21   A   Yes.

22   Q   Okay.  And this invoice is dated September 19, 2014; is

23       that correct?

24   A   Yes.

25   Q   And based on your business practices, does that mean
```

Confidential - Subject to Further Confidentiality Review

1      shipment would have loaded on or about that date?

2   A  Yes.

3   Q  Okay.  And the total amount for the shipment was

4      $91,295?

5   A  Yes.

6   Q  And on the following page, which is the packing list, we

7      see reference to a letter of credit number.

8         Do you see that?

9   A  Yes.

10  Q  And does the letter of credit number there match the

11     letter of credit we looked at earlier as Exhibit No. 21

12     to your deposition?

13  A  Yes.

14              MR. PFAEHLER:  I'm sorry, Counsel, I

15     hate to do this to you, but what's the number of the

16     exhibit we are looking at now, just the overall exhibit

17     number?

18              MR. GAUGHAN:  22.

19              MR. PFAEHLER:  22?

20              MR. GAUGHAN:  Mm-hm.

21              MR. PFAEHLER:  Okay.

22              MR. GAUGHAN:  Everything okay?

23              MR. PFAEHLER:  Actually, if you can

24     just assist me here for one second, the exhibit

25     beginning 469, what number was that, anybody?

1           It was one of these--

2                    MR. CABOT:  It was 22.

3                    MR. GAUGHAN:  That's 22.

4                    MR. PFAEHLER:  That was 22.

5                     MR. GAUGHAN:  Did we all get a

6      different one maybe?

7                      MR. PFAEHLER:  And then the exhibit

8      that begins 458, what's that?

9                    MR. GAUGHAN:  That's 20.

10                     MR. PFAEHLER:  That's 20.  Thank you.

11                    MR. GAUGHAN:  That's what I have.

12     Does everyone?

13                    MR. PFAEHLER:  Thank you, folks.

14          I told you I was going to lose track if you kept me

15     here too long.

16          Us old guys, you know.

17           We wear down.

18                          (Exhibit No. 23 marked for

19                            identification.)

20

21   Q   (By Mr. Gaughan)  I am showing you what's been marked as

22     Exhibit No. 23 to your deposition.

23          This is another packet of documents similar to some

24     of the other packets that we looked at today, correct?

25   A   Yes, correct.

Confidential - Subject to Further Confidentiality Review

```
 1   Q   These documents would have been prepared either by

 2       someone at Western Wood or by third parties; is that

 3       correct?

 4   A   Yes.

 5   Q   And if they're prepared by third parties, they would

 6       have been prepared at your direction; is that correct?

 7   A   Yes.

 8   Q   And they would have been prepared at or near the dates

 9       indicated in these documents; is that correct?

10   A   Yes.

11   Q   And these documents would have been prepared, whether by

12       Western Wood or by third parties, as part of your

13       regular business activities; is that correct?

14   A   Correct.

15   Q   And you would have retained copies of these documents as

16       part of your regular business activities; is that

17       correct?

18   A   Yes, correct.

19   Q   If you look at the first page, it identifies BNBM as a

20       customer; is that correct?

21   A   Correct.

22   Q   And based on your review of these documents, can you

23       tell me the number of logs this shipment would have

24       involved?

25   A   2,244.
```

```
 1   Q   Okay.  Do you know the date this load would have

 2       shipped?

 3   A   Around September 4, 2014.

 4   Q   And where are you getting that figure from again?

 5                   MR. PFAEHLER:  Objection, by the way,

 6       to the last question and to that question.

 7                   THE WITNESS:  The invoice, Page 481.

 8                   MR. PFAEHLER:  I'm sorry, from the

 9       invoice?

10                   MR. GAUGHAN:  Yes, 481.

11   Q   (By Mr. Gaughan)  And based on your experience working

12       at Western Wood, would you-- would generally the loads

13       ship at or about the invoice date?

14   A   Yes.

15                   MR. PFAEHLER:  Objection.

16   Q   (By Mr. Gaughan)  And this invoice we discussed, which

17       is at Document 481 or Page 481, this indicates Western

18       Wood sold these materials to Beijing New Building

19       Materials; is that correct?

20   A   Correct.

21   Q   And the total price listed here is $297,198; is that

22       correct?

23   A   Correct.

24   Q   And we see a contract number identified in here as

25       JT073014; is that correct?
```

Confidential - Subject to Further Confidentiality Review

1   A   Yeah.  That's what it says, yes.

2       It's not the right contract though.

3   Q   Do you know what contract that would be?

4   A   Yes.  It's on the bill of lading, Page 483.

5   Q   Okay.

6   A   It's CZY 0705.

7                   MR. PFAEHLER:  May I just ask the

8       witness to show me where he's looking on that page?

9       I'm just not following you.

10                  THE WITNESS:  On this page, right in

11      the middle.

12                  MR. PFAEHLER:  Thank you very much.

13      I see it.

14  Q   (By Mr. Gaughan)  And that's the contract number we

15      looked at on Exhibit No. 4; is that correct?

16  A   Yes.

17  Q   Did you say 705?

18      Is that-- was that what the ending number of that--

19                  MR. PFAEHLER:  0705.

20                  THE WITNESS:  Yes.

21  Q   (By Mr. Gaughan)  Okay.  So that does match Exhibit

22      No. 4, correct?

23  A   Yes.

24  Q   And what were the total number of logs involved in this

25      shipment?

Confidential - Subject to Further Confidentiality Review

```
 1   A    2,244.

 2   Q    And the invoice total on this document is $297,198; is

 3        that correct?

 4   A    Correct.

 5   Q    If you look at the packing list, which is 482, does that

 6        refer to the same letter of credit number that we've

 7        marked as Exhibit No. 21?

 8   A    Yes.

 9                           (Exhibit No. 24 marked for

10                                identification.)

11

12   Q    (By Mr. Gaughan)  I am showing you what's been marked as

13        Exhibit No. 24 to your deposition.

14          This is another package of documents similar to

15        some of the other packets we have looked at today,

16        correct?

17   A    Correct.

18   Q    These documents would have been prepared either by

19        someone at Western Wood or by third parties at the

20        direction of Western Wood, correct?

21   A    Correct.

22   Q    And they would have been prepared at or about the dates

23        that are indicated on the documents, correct?

24   A    Correct.

25   Q    And these documents would have been prepared as part of
```

Confidential - Subject to Further Confidentiality Review

1        Western Wood's regular business practices, correct?

2    A   Correct.

3    Q   And you would have retained copies of them as part of

4        your regular business practices as well, correct?

5    A   Correct.

6    Q   And if you look at the first page, this packet indicates

7        BNBM is the customer, correct?

8    A   Correct.

9    Q   And looking at this package of documents, can you tell

10       me the total number of logs that were shipped?

11   A   769.

12   Q   And if you look at Page 491, which is the invoice for

13       this particular transaction, this invoice is dated

14       September 8, 2014?

15   A   Yes.

16   Q   Okay.  Does that suggest to you these-- excuse me, this

17       load would have shipped on or about that date?

18   A   Yes.

19   Q   And this invoice is from Western Wood and indicates the

20       materials were sold to Beijing New Building Materials

21       Company; is that correct?

22   A   Correct.

23   Q   And the total invoice amount was $98,021; is that

24       correct?

25   A   Correct.

Confidential - Subject to Further Confidentiality Review

```
 1    Q    And the contract number listed on this invoice is the

 2         same contract number on Exhibit No. 4; is that correct?

 3    A    Correct.

 4    Q    If you look at the packing list, this identifies the

 5         same letter of credit that we looked at in Exhibit

 6         No. 21, correct?

 7    A    Correct.

 8                            (Exhibit No. 25 marked for

 9                              identification.)

10

11                    MR. PFAEHLER:  Awe, CNBM.

12                    MR. GAUGHAN:  Now you have to start

13         listening.

14                    MR. PFAEHLER:  My offer stands.

15                    MR. GAUGHAN:  I think you should

16         just--

17                    MR. PFAEHLER:  I'm just hoping I--

18         take a nap.

19           Do you understand that?

20                    MR. GAUGHAN:  I understand.

21                    MR. PFAEHLER:  I want to be able to

22         turn my brain off at some point here.

23                    MR. GAUGHAN:  I think that the

24         problem is some of these documents are a little bit

25         jumbled, and then I have e-mails too I was going to ask
```

Confidential - Subject to Further Confidentiality Review

```
1        about separately.

2    Q   (By Mr. Gaughan)  I am showing you what's been marked as

3        Exhibit No. 25 to your deposition.

4            This is an offer sheet.

5            I don't see a corresponding contract number listed

6        here.

7            Do you know whether this would have been accepted

8        or is there a way for you to tell that by looking at it?

9    A   I just know it was an accepted offer because we loaded

10       off this particular offer.

11   Q   How do you know that?

12   A   The invoices that I provided.

13   Q   Okay.  So the invoices you provided for today's

14       deposition, you looked at them?

15   A   Yes.

16   Q   And you recall you actually loaded this contract?

17   A   Yes, because--

18                    MR. CABOT:  Objection; vague.

19   Q   (By Mr. Gaughan)  Okay.  So you-- having looked at the

20       invoices prior to today's deposition, it is your belief

21       that you actually-- this offer was accepted because you

22       saw corresponding invoices involving transactions,

23       correct?

24   A   Yes.

25   Q   Okay.  And the offer date on this particular document is
```

Confidential - Subject to Further Confidentiality Review

```
1        September 5, 2014; is that correct?

2                       MR. CABOT:  Objection; document

3        speaks for itself.

4                       THE WITNESS:  Correct.

5   Q    (By Mr. Gaughan)  You can answer the question.

6           And the offer, in this instance, was made to CNBM

7        Forest Products; is that correct?

8   A    Correct.

9   Q    And the total amount that was contemplated in this offer

10       was $1,008,800; is that correct?

11  A    Correct.

12  Q    And this particular offer anticipated a last shipping

13       date of October 31st, 2014; is that correct?

14  A    Correct.

15  Q    And who would have prepared this offer?

16  A    Michelle Zaun.

17  Q    And she would have had knowledge of this particular

18       transaction at the time she prepared the document?

19  A    Yes.

20  Q    Okay.  And she would have prepared it at or about

21       September 5, 2014; is that correct?

22  A    Yes.

23  Q    Okay.  And it would have been prepared as part of her

24       regular business duties as an employee of Western Wood;

25       is that correct?
```

Confidential - Subject to Further Confidentiality Review

```
 1   A    Yes.

 2   Q    And you would have retained copies of this document as a

 3        general business practice at Western Wood; is that

 4        correct?

 5   A    Yes.

 6   Q    Is this the entity we spoke about earlier at the

 7        beginning of the deposition, CNBM Forest Products, that

 8        you were referring to when we began the deposition?

 9   A    Yes.

10   Q    Okay.  Do you know anything about CNBM Forest Products?

11                        MR. CABOT:  Objection; vague.

12                        THE WITNESS:  Nothing specific.

13   Q    (By Mr. Gaughan)  Do you know where they're located?

14   A    China.

15                        MR. CABOT:  Objection; vague.

16   Q    (By Mr. Gaughan)  Have you heard of a company called

17        CNBM Forest Products Canada Limited?

18   A    The name sounds familiar.

19                           (Exhibit No. 26 marked for

20                              identification.)

21

22   Q    (By Mr. Gaughan)  Okay.  And I'm showing you what's been

23        marked as Exhibit No. 26 to your deposition.

24            This is another packet similar to some of the other

25        packets we looked at today, correct?
```

Confidential - Subject to Further Confidentiality Review

```
 1    A    Yes, correct.

 2    Q    And these documents would have been prepared either by

 3         someone at Western Wood or by a third party at the

 4         direction of Western Wood; is that correct?

 5    A    Correct.

 6    Q    Okay.  And they would have been prepared at or near the

 7         dates indicated on the documents; is that correct?

 8    A    Correct.

 9    Q    Okay.  And these documents would have been prepared at

10         the direction of Western Wood as part of its regular

11         business practices?

12    A    Correct.

13    Q    And you would have retained copies of these documents as

14         part of your regular business practice?

15    A    Yes.

16    Q    And according to the first document here, the customer

17         is identified as CNBM; is that correct?

18    A    Correct.

19    Q    And can you tell me when this-- how many logs were

20         involved in this shipment?

21    A    625.

22    Q    Okay.  And how are you getting that number from?

23    A    Page 514, at the bottom-- the container listing, total

24         of all loads, 625 logs.

25    Q    And can you also tell me what contract this transaction
```

Confidential - Subject to Further Confidentiality Review

```
 1        involved?

 2   A    No.

 3            There is no listed contract.

 4   Q    And if you look on the invoice, which is 517-- do you

 5        see that?

 6   A    Yes.

 7   Q    And this identifies CNBM Forest Canada Limited, and it

 8        indicates that these materials were sold to CNBM Forest

 9        Canada Limited; is that correct?

10                    MR. CABOT:  Objection.  It's not the

11        name of the entity.

12                    THE WITNESS:  Yes.

13                    MR. GAUGHAN:  That's what it says

14        there.

15                    MR. CABOT:  It doesn't say "Forest

16        Canada."

17                    MR. GAUGHAN:  CNBM Forest Products

18        Canada Limited.

19   Q    (By Mr. Gaughan)  Is that correct?

20   A    Yes.

21   Q    This document indicates that Western Wood sold this load

22        to CNBM Forest Products Canada Limited, correct?

23   A    Yes.

24   Q    Okay.  And the invoice is dated December 2nd, 2014; is

25        that correct?
```

Confidential - Subject to Further Confidentiality Review

```
 1   A   Correct.

 2   Q   Does that indicate to you that these materials would

 3       have shipped on or about that date?

 4   A   Yes.

 5   Q   Okay.  And the total amount of this invoice is

 6       $117,874.40; is that correct?

 7   A   Correct.

 8                   MR. CABOT:  I will just have a

 9       standing objection that for all of these questions the

10       document speaks for itself and the witness appears to

11       lack personal knowledge and appears to be reading from

12       the document.

13                   MR. GAUGHAN:  That's fine, you can

14       have that standing objection.

15                   MR. CABOT:  All right.

16   Q   (By Mr. Gaughan)  Do you have an idea of when these

17       documents-- excuse me, when this shipment would have

18       been made?

19   A   Around December 7th, 2014.

20   Q   If you look at the next page, 518, this refers to a

21       booking number.

22          Did that correspond to the booking number for the

23       bill of lading?

24   A   Yes.

25   Q   Okay.  And before, earlier today, you had looked at a
```

```
 1      bill of lading, you were able to pick out a contract

 2      number.

 3          Do you see a contract number in this bill of

 4      lading?

 5   A  No, there's not.

 6   Q  Okay.  Can you tell me where this load shipped to?

 7   A  Xingang.

 8   Q  China?

 9   A  Yeah, X-I-N-G-A-N-G.

10   Q  And it would-- the shipment would have been loaded in

11      Seattle, is that correct, Washington?

12   A  Yes, correct.

13                              (Exhibit No. 27 marked for

14                                identification.)

15

16   Q  (By Mr. Gaughan)  I am going to show you what's been

17      marked as Exhibit No. 27 to your deposition.

18          This is a similar packet to some of the packets we

19      looked at earlier; is that correct?

20   A  Correct.

21   Q  Okay.  And with respect to these various documents,

22      these would have been prepared either by someone at

23      Western Wood or by a third party at Western Wood's

24      direction; is that correct?

25   A  Correct.
```

```
 1                    MR. PFAEHLER:  Objection; form.

 2   Q   (By Mr. Gaughan)  And these documents would have been

 3       prepared on or about the dates that we see on them; is

 4       that correct?

 5   A   Correct.

 6   Q   Okay.  And these documents would have been prepared as

 7       part of Western Wood's regular business activities; is

 8       that correct?

 9   A   Correct.

10   Q   And you would have retained copies of them as part of

11       your regular business activities as well; is that

12       correct?

13   A   Yes, correct.

14   Q   And according to the first document, BNBM is listed as a

15       customer; is that correct?

16   A   Correct.

17   Q   Can you tell me the total number of logs in this

18       shipment?

19   A   948.

20   Q   Can you also tell me the date this shipment was made?

21                    MR. PFAEHLER:  Objection; form.

22                    THE WITNESS:  Around September 17,

23       2014.

24   Q   (By Mr. Gaughan)  And you're getting that from the

25       invoice date; is that correct?
```

Confidential - Subject to Further Confidentiality Review

```
 1   A   Yes, correct.

 2   Q   Okay.  And this is the Western Wood invoice that

 3       indicates its materials were sold to Beijing New

 4       Building Materials Company Limited; is that correct?

 5   A   Correct.

 6   Q   And the total invoice amount for the shipment is

 7       $133,047.50; is that correct?

 8   A   Correct.

 9   Q   And this invoice references the same contract that we

10       looked at that was marked as Exhibit No. 4 to your

11       deposition; is that correct?

12   A   Correct.

13   Q   And if you look at the packing list, it references the

14       same letter of credit we looked at as Exhibit No. 21 to

15       your deposition, correct?

16   A   Correct.

17                        (Exhibit No. 28 marked for

18                         identification.)

19

20   Q   (By Mr. Gaughan)  I am showing you what's been marked as

21       Exhibit No. 28 to your deposition, and this is another

22       packet of documents that are similar to the other

23       packets we looked at, correct?

24   A   Yes, correct.

25   Q   Okay.  And this document would have been prepared either
```

Confidential - Subject to Further Confidentiality Review

```
 1        by someone at Western Wood or by a third party at the

 2        direction of Western Wood; is that correct?

 3   A    Correct.

 4   Q    And these documents would have been prepared at or near

 5        the dates that are identified in the documents; is that

 6        correct?

 7   A    Correct.

 8   Q    And these documents would have been prepared as part of

 9        Western Wood's regular business practices; is that

10        correct?

11                     MR. PFAEHLER:  Objection to form.

12                     THE WITNESS:  Correct.

13   Q    (By Mr. Gaughan)  And these documents would have been

14        retained as part of Western Wood's regular business

15        practices, correct?

16   A    Correct.

17   Q    And at least according to the cover sheet, BNBM is

18        identified as the customer; is that correct?

19   A    Correct.

20   Q    Can you tell me how many logs is involved in this

21        shipment?

22   A    373.

23   Q    And do you know the date this shipment would have been

24        made?

25                     MR. PFAEHLER:  Objection to form;
```

Confidential - Subject to Further Confidentiality Review

1        foundation.

2                          THE WITNESS:  Around September 24,

3        2014.

4    Q   (By Mr. Gaughan)  And where are you getting that number

5        from?

6    A   The invoice, 509.

7    Q   Okay.  And this is another invoice from Western Wood to

8        Beijing New Building Materials Company Limited; is that

9        correct?

10   A   Yes, correct.

11   Q   And the amount of this invoice was $50,863; is that

12       correct?

13   A   Correct.

14   Q   And this references the same contract number we looked

15       at and marked as Exhibit No. 4 to your deposition; is

16       that correct?

17   A   Correct.

18   Q   And if you look at the packing list, this identifies the

19       same letter of credit we marked as Exhibit No. 21 to

20       your deposition, correct?

21   A   Correct.

22                          (Exhibit No. 29 marked for

23                          identification.)

24

25   Q   (By Mr. Gaughan)  I am showing you what's been marked as

Confidential - Subject to Further Confidentiality Review

```
 1          Exhibit No. 29 to your deposition.

 2              This is a similar packet to some of the others we

 3          looked at today, correct?

 4   A      Correct.

 5   Q      And this package of documents, the various documents

 6          included would have been prepared either by Western Wood

 7          or by third parties at Western Wood's direction,

 8          correct?

 9   A      Correct.

10   Q      And they would have been prepared-- the documents would

11          have been prepared on or about the dates that are

12          identified in each document?

13   A      Yes.

14   Q      And the documents would have also been prepared as part

15          of Western Wood's regular business practices, correct?

16   A      Correct.

17   Q      And you would have retained copies of these documents as

18          part of your regular business practices as well?

19   A      Yes.

20   Q      Okay.  And according to the cover document, the customer

21          here was CNBM, correct?

22                      MR. CABOT:  Objection.

23                      THE WITNESS:  Yes, correct.

24   Q   (By Mr. Gaughan)  And the number of logs, can you tell

25          me the number of logs that are involved in this
```

1     shipment?

2  A  515.

3  Q  And can you tell me the date this shipment was made?

4  A  Around November 29, 2014.

5  Q  Okay.  And where are you getting that date from again?

6  A  The invoice on 525.

7  Q  Okay.  And according to this invoice, it is an invoice

8     from Western Wood to CNBM Forest Products Canada

9     Limited; is that correct?

10  A  Correct.

11  Q  And the total amount of this invoice is $91,635.90; is

12     that correct?

13  A  Correct.

14  Q  Can you tell me the total log count on this particular

15     shipment?

16  A  515.

17  Q  Okay.  And do you know whether your shipments to CNBM

18     Forest Products Canada Limited involved letter of credit

19     transactions?

20  A  No.

21       They always paid by wire transfer.

22  Q  And would you receive payment prior to the actual

23     shipments?

24  A  Yes.

25  Q  Do you know what bank they used for those wire

Confidential - Subject to Further Confidentiality Review

```
 1        transfers?

 2   A    Not offhand.

 3            I think it's in one of the e-mail records that you

 4        might have.

 5   Q    Is it a banking institution located in the United

 6        States?

 7            Do you know?

 8   A    I can't recall.

 9   Q    And we talked about how we didn't see any contract

10        numbers in these documents.

11            Is that because there was no letter of credit

12        transaction involved?

13   A    No.  Usually-- the contract number usually comes from

14        the customer.

15   Q    Okay.

16   A    So we don't require it.

17            Western Wood doesn't require contract numbers, but

18        some of the letters of credit that you saw with BNBM,

19        they list the contract number.

20   Q    Okay.  So would you have actually contracts with CNBM

21        Forest Products Canada Limited, for instance?

22   A    We wouldn't have an actual contract number.

23            We have those-- we would have like the offer sheet.

24   Q    Okay.  The one we looked at earlier?

25   A    Yes.
```

Confidential - Subject to Further Confidentiality Review

1    Q    I understand.

2         But just doesn't have a contract number?

3    A    Correct.

4                   MR. CABOT:  I'm sorry, I am just

5         looking at the transcript.

6         I want to object to "the one we looked at earlier."

7         I'm not sure what document we're referring to.

8    Q    (By Mr. Gaughan)  What document is that in your hand?

9    A    Exhibit No. 25.

10   Q    Okay.

11                  MR. CABOT:  And just to be clear,

12        that's not a CNBM Forest Products Canada document, is

13        it?

14                  MR. GAUGHAN:  We marked one.

15                  MR. CABOT:  It is.  Nevermind.

16                      (Exhibit No. 30 marked for

17                       identification.)

18

19   Q    (By Mr. Gaughan)  I am showing you what's been marked as

20        Exhibit No. 30 to your deposition.

21        This is another bundle of documents that's similar

22        to the others we looked at today, correct?

23   A    Yes.

24   Q    And this document would have been prepared either by

25        someone at Western Wood or by a third party at the

Confidential - Subject to Further Confidentiality Review

1       direction of Western Wood?

2    A  Correct.

3    Q  And these documents would have been prepared at or near

4       the dates identified in each document; is that correct?

5    A  Correct.

6    Q  And they would have-- and these documents would have

7       been prepared as part of Western Wood's regular business

8       practices, correct?

9    A  Correct.

10   Q  Okay.  And it's a standard practice of Western Wood to

11      retain copies of these documents?

12   A  Yes.

13   Q  And if we look at the first page of this document, we

14      see CNBM indicated as the customer, correct?

15   A  Correct.

16   Q  Can you tell me the total number of logs that were

17      involved in this shipment?

18   A  961.

19   Q  Can you also tell me the date this shipment was made?

20   A  Our invoice says around October 1st, 2014, which-- the

21      same as the booking confirmation, which is Page 533.

22   Q  Okay.  If you could turn to 534, there's another offer

23      sheet.

24          Do you see that?

25   A  Yes.

Confidential - Subject to Further Confidentiality Review

```
 1   Q   Okay.  And this offer issue date is September 5, 2014;

 2       is that correct?

 3   A   Yes.

 4   Q   Okay.  And the offer was made to CNBM Forest Products

 5       Canada Limited; is that correct?

 6   A   Yes.

 7   Q   And the offer-- the total amount of the offer indicated

 8       is $1,008,800-- let me strike that.

 9           The total amount in the offer is $1,008,800; is

10       that correct?

11   A   Correct.

12   Q   And the last shipping date indicated is October 21,

13       2014, correct?

14   A   Correct.

15   Q   And we see a seal there, which says, "CNBM Forest

16       Products Canada Limited."

17           Does that-- a seal.

18           Does that indicate to you that this document-- this

19       offer was accepted by CNBM?

20   A   Yes.

21   Q   And I will correct that, CNBM Forest Products Canada

22       Limited?

23   A   Yes.

24   Q   If we take another look at this invoice, this invoice is

25       dated September 24, 2014, correct?
```

1    A    Correct.

2    Q    And it indicates the materials were sold to CNBM Forest

3         Products Canada Limited, correct?

4    A    Correct.

5    Q    And the total amount of the invoice is $128,214.60,

6         correct?

7    A    Correct.

8    Q    Can you tell me where this load shipped to?

9    A    Xingang, China.

10   Q    And where did it ship out of?

11   A    Tacoma.

12   Q    If you look at Page 537, it appears to be some sort of

13        e-mail correspondences?

14   A    Yes.

15   Q    Who-- if you look at the top, it's from Danielle--

16   A    Daniel.

17   Q    Who is that?  Can you tell me who that is?

18   A    He's our CNBM contact.

19                       MR. CABOT:  Objection.

20                        MR. GAUGHAN:  To what?

21                       MR. CABOT:  To the reference to CNBM.

22        It's not a company.

23                       MR. GAUGHAN:  Are you moving to

24        strike his testimony or--

25                       MR. CABOT:  Actually, I will.  I move

Confidential - Subject to Further Confidentiality Review

```
 1      to strike.

 2  Q   (By Mr. Gaughan)  When you said "CNBM," do you also

 3      incorporate in there CNBM Forest Products Canada

 4      Limited?

 5  A   Yes, he's our contact--

 6                      MR. PFAEHLER:  Objection.

 7                      THE WITNESS:  --at CNBM Forest

 8      Products Canada Limited.

 9  Q   (By Mr. Gaughan)  Do you know where he's located?

10  A   Canada.

11  Q   Okay.  Has he ever visited you guys in Seattle?

12  A   Yes.

13  Q   Okay.  And how often has that been?

14                      MR. CABOT:  Objection; vague.

15                      THE WITNESS:  I don't-- a couple

16      times.

17  Q   (By Mr. Gaughan)  Have you met him personally?

18  A   I wasn't formally introduced to him.

19  Q   But you saw him coming to your, I guess, office--

20  A   Into the office, yes.

21  Q   Okay.  When was the last time he visited your office?

22  A   I don't know, third quarter, 2014.

23  Q   Did he make any other visits to your office in 2014?

24  A   I can't recall.

25  Q   Do you know who he met with?
```

Confidential - Subject to Further Confidentiality Review

```
 1   A    He would have met with--

 2                    MR. CABOT:  Objection; speculation.

 3                    THE WITNESS:  --Tortorelli, Larry

 4        Mitchem, he's our vice president, and there's another

 5        guy, Alan.  I don't have-- you'll find him in one of the

 6        e-mails.

 7            He's the Alan that appears to be a partner with

 8        Daniel, and he's located in Olympia.

 9   Q    (By Mr. Gaughan)  Okay.  How do you know he met with

10        these individuals?

11   A    They were at the office.

12   Q    Okay.  So you saw him go over and talk to them?

13   A    Yes, because they wanted to look at our logs.

14   Q    Okay.  So you are just aware-- were you just aware of

15        him coming once in 2014?

16            Is that correct?

17   A    At least once, yes.

18   Q    How many times do you think total he has visited your

19        office?

20   A    No more than three.

21   Q    Okay.  Since you've started in 2009?

22   A    Yes.

23   Q    How long have you been doing business with CNBM Forest

24        Products Canada Limited?

25                    MR. CABOT:  Objection; vague, calls
```

Confidential - Subject to Further Confidentiality Review

1       for a legal conclusion as far as the definition of

2       "doing business."

3   Q   (By Mr. Gaughan)  You can answer the question.

4   A   Our first invoice to them was in September 2014.

5   Q   Okay.  And whose e-mail address is that for Western

6       Wood?

7   A   That's our Western Wood e-mail address.

8           It's shared by everyone in the office.

9   Q   Who is John?

10          Is that the individual we spoke of earlier, John

11      Tortorelli?

12  A   Tortorelli.

13  Q   Tortorelli, okay.

14  A   Yes.  He's the owner of Western Wood.

15  Q   And this e-mail correspondence is discussing this

16      particular load we were discussing about earlier?

17                  MR. CABOT:  Objection; document

18      speaks for itself.

19                  THE WITNESS:  Yes.

20  Q   (By Mr. Gaughan)  Okay.  If you could take a look at

21      Document No. 539, and this looks like another e-mail

22      from Daniel that we just spoke of, correct?

23  A   Yes.

24  Q   This is dated 9/29/14, correct?

25  A   Yes.

Confidential - Subject to Further Confidentiality Review

```
1    Q    And this is also discussing the same load that's

2         discussed in this exhibit, correct?

3    A    Yes.

4                              (Exhibit No. 31 marked for

5                               identification.)

6

7    Q    (By Mr. Gaughan)  I am showing you what's been marked as

8         Exhibit No. 31 to your deposition.

9             This is another package of documents similar to

10        those we looked at earlier, correct?

11   A    Correct.

12   Q    And these documents would have been prepared either by

13        Western Wood or by third parties at the direction of

14        Western Wood, correct?

15   A    Correct.

16   Q    And they would have been prepared at or near the dates

17        indicated in each document, correct?

18   A    Correct.

19   Q    And these documents would have been prepared as part of

20        Western Wood's regular business practices, correct?

21   A    Correct.

22   Q    And you would have retained copies of these documents as

23        part of your regular business activities, correct?

24   A    Correct.

25   Q    If you look at the first page, this identifies CNBM as
```

1       the customer?

2    A   Yes.

3    Q   Can you tell me the total number of logs involved in

4        this particular shipment?

5    A   871.

6    Q   Can you tell me the date this shipment was sent?

7    A   It was around October 22nd, 2014.

8    Q   And where are you getting that from?

9    A   The invoice on Page 547.

10   Q   This is an invoice from Western Wood to CNBM Forest

11       Products Canada Limited, correct?

12   A   Yes.

13   Q   And the total amount of the invoice is $127,079.70?

14   A   Yes.

15   Q   And if we look at Page 546, this is another e-mail; is

16       that correct?

17   A   Yes.

18   Q   And this is also from Daniel; is that correct?

19   A   Yes.

20   Q   And it is directed to Michelle.

21       Is that the same individual we discussed earlier?

22   A   Yes.

23   Q   Okay.  And it also discusses this particular shipment,

24       correct?

25   A   Correct.

Confidential - Subject to Further Confidentiality Review

```
 1   Q   And what is Michelle's last name again?

 2   A   Zaun, Z-A-U-N.

 3                           (Exhibit No. 32 marked for

 4                            identification.)

 5

 6   Q   (By Mr. Gaughan)  And I am showing you what's been

 7       marked as Exhibit No. 32 to your deposition.

 8           This is another packet of documents similar to the

 9       others we have looked at today, correct?

10   A   Correct.

11   Q   And these documents would have been prepared either by

12       Western Wood or by third parties at the direction of

13       Western Wood, correct?

14   A   Correct.

15   Q   And they would have been prepared at or near the dates

16       indicated in each document?

17   A   Yes.

18   Q   And these documents would have been prepared as part of

19       Western Wood's regular business practices?

20   A   Yes.

21   Q   And you would have retained copies of these documents as

22       part of your regular business practices?

23   A   Yes.

24   Q   Okay.  And according to the cover page, the customer

25       indicated here is CNBM, correct?
```

Confidential - Subject to Further Confidentiality Review

```
 1   A   Correct.

 2   Q   Can you tell me the date this particular load shipped?

 3   A   Around October 29, 2014.

 4   Q   Okay.  And do you know the number of logs involved in

 5       this shipment?

 6   A   878.

 7   Q   Okay.  And the invoice is dated October 24, 2014,

 8       correct?

 9   A   Correct.

10   Q   And the invoice is from Western Wood to CNBM Forest

11       Products Canada Limited, correct?

12   A   Correct.

13   Q   Okay.  And the total invoice amount is $146,392.40,

14       correct?

15   A   Correct.

16   Q   And do you know where this particular load was being

17       shipped to?

18   A   Xingang, China.

19   Q   Out of Tacoma, Washington, correct?

20   A   Yes.

21                         (Exhibit No. 33 marked for

22                             identification.)

23

24   Q   (By Mr. Gaughan)  I am showing you what's been marked as

25       Exhibit No. 33 to your deposition, and this is another
```

Confidential - Subject to Further Confidentiality Review

```
 1      package of documents similar to some of the other ones

 2      we looked at today, correct?

 3   A  Yes, correct.

 4                    MR. PFAEHLER:  I am going to object

 5      to that.

 6         There's a few things in here that are like-- it

 7      seems much smaller to me.

 8                    MR. GAUGHAN:  It does seem smaller,

 9      yes.

10   Q  (By Mr. Gaughan)  Again, these documents in this package

11      would have been-- packet, I should say, would have been

12      prepared either by Western Wood or by a third party at

13      the direction of Western Wood; is that correct?

14   A  Correct.

15   Q  And they would have been prepared on or near the date

16      indicated in each document?

17   A  Yes.

18   Q  Okay.  And you would have-- they would have been

19      prepared as part of Western Wood's regular business

20      practices?

21   A  Yes.

22   Q  And you would have retained copies of these documents as

23      part of your regular business practices?

24   A  Yes.

25   Q  And according to this document, at least the cover, the
```

```
 1        customer here was CNBM; is that correct?

 2                    MR. CABOT:  Objection.  That's

 3        actually not what the document says, and that applies to

 4        the last few documents we looked at as well.

 5   Q    (By Mr. Gaughan)  Who does it indicate the customer is

 6        here on this particular document?

 7   A    CNBM/Keerun.

 8   Q    Who is Keerun?

 9   A    That could be the end user.

10   Q    Who would be most knowledgeable on that topic?

11   A    Michelle Zaun.

12   Q    Okay.  Can you tell me the total number of logs involved

13        in this shipment?

14   A    1,178.

15   Q    Okay.  Do you know the date the shipment would have been

16        made?

17   A    Around November 7, 2014.

18   Q    And that's from the invoice; is that correct?

19   A    Correct.

20   Q    Okay.  And that's Document No. 564?

21   A    Yes.

22   Q    Okay.  And that's an invoice from Western Wood to CNBM

23        Forest Products Canada Limited; is that correct?

24   A    Correct.

25   Q    And the total invoice amount is $209,830.40, correct?
```

Confidential - Subject to Further Confidentiality Review

```
 1   A   Correct.

 2                             (Exhibit No. 34 marked for

 3                               identification.)

 4

 5   Q   (By Mr. Gaughan)  I am showing you what's been marked as

 6       Exhibit No. 34.

 7           These are another group of documents similar to

 8       some of the other packets we looked at earlier today,

 9       correct?

10   A   Correct.

11   Q   And these documents would have been prepared either by

12       Western Wood or by a third party at the direction of

13       Western Wood, correct?

14   A   Yes, correct.

15   Q   And they would have been prepared at or about the dates

16       that are indicated in each document?

17   A   Yes.

18   Q   And these documents would have been prepared as part of

19       Western Wood's regular business practices; is that

20       correct?

21   A   Yes.

22   Q   And you would have retained copies of them as part of

23       your regular business practices; is that correct?

24   A   Correct.

25   Q   And according to the cover sheet, CNBM was the customer
```

Confidential - Subject to Further Confidentiality Review

```
 1        here, correct?

 2   A    Correct.

 3   Q    And one of the notes in this cover page-- or a couple of

 4        them refer to an individual called Vicki.

 5            Do you know who that is?

 6   A    Yes.  Vicki Do, D-O.  She works for Vantage

 7        International.

 8            They are a freight forwarding company.

 9            They help us prepare the bills of lading.

10   Q    Is that a company in--

11   A    Seattle.

12   Q    Okay.  Can you tell me the date this load was shipped?

13   A    It was scheduled to depart on November 26th, 2014.

14   Q    Okay.  Is that according to the invoice?

15   A    Yes.

16   Q    And can you tell me the number of logs involved in this

17        shipment?

18   A    201 logs.

19   Q    Okay.  And according to the invoice, which is Document

20        No. 570, this is another invoice from Western Wood to

21        CNBM Forest Products Canada Limited; is that correct?

22   A    Correct.

23   Q    And the date of this invoice is November 26, 2014; is

24        that correct?

25   A    Yes, correct.
```

```
 1   Q   And the total amount of this invoice is $35,249.80; is

 2       that correct?

 3   A   Correct.

 4   Q   And according to the bill of lading, these documents

 5       were shipped out of the port of Tacoma to that same area

 6       in China we talked about earlier, the X-I-N-G-A-N-G?

 7   A   Yes.

 8                           (Exhibit No. 35 marked for

 9                            identification.)

10

11   Q   (By Mr. Gaughan)  I am showing you what's been marked as

12       Exhibit No. 35 to your deposition.

13       This is another packet that's similar to some of

14       the other packets we looked at earlier today?

15   A   Yes.

16   Q   Okay.  And these documents would have been prepared by

17       either Western Wood or by third parties at the direction

18       of Western Wood?

19   A   Correct.

20   Q   And they would have been prepared on or about the dates

21       indicated in each document; is that correct?

22   A   Yes.

23   Q   Okay.  And these documents would have been prepared as

24       part of your regular business practices; is that

25       correct?
```

Confidential - Subject to Further Confidentiality Review

```
 1   A   Correct.

 2   Q   And you would have retained copies of them as part of

 3       your regular business practices, correct?

 4   A   Yes.

 5   Q   Okay.  And whose handwriting is this on the first page?

 6   A   Michelle Zaun.

 7   Q   Okay.  And this document indicates CNBM as a customer;

 8       is that correct?

 9   A   Yes.

10   Q   Can you tell me the total number of logs involved in

11       this shipment?

12   A   382.

13   Q   Okay.  And do you know when this shipment would have

14       been sent out?

15   A   It was scheduled to depart December 3rd, 2014.

16   Q   Okay.  And that's according to the invoice, correct?

17   A   Yes.

18   Q   And that's Document No. 577?

19   A   Yes.

20   Q   And this is an invoice from Western Wood to CNBM Forest

21       Products Canada Limited, correct?

22   A   Correct.

23   Q   And the total invoice amount is $66,192.80, correct?

24   A   Correct.

25                   MR. GAUGHAN:  We'll take a break, I
```

Confidential - Subject to Further Confidentiality Review

```
 1        think.

 2                        VIDEOGRAPHER:  We are going off the

 3        record.  The time is now 6:03 p.m.

 4                            (Recess 6:03 to 6:13 p.m.)

 5                            (Exhibit No. 36 marked for

 6                                identification.)

 7

 8                        VIDEOGRAPHER:  Back on record, the

 9        time is now 5:13 p.m.-- 6:13 p.m., excuse me.

10   Q    (By Mr. Gaughan)  I am showing you what's been marked as

11        Exhibit No. 36 to your deposition.

12            This is another packet of documents similar to the

13        other packets we have looked at earlier today, correct?

14   A    Yes, correct.

15   Q    And with respect to these various documents, these

16        documents would have been either prepared by Western

17        Wood or by third parties at the direction of Western

18        Wood, correct?

19   A    Correct.

20   Q    And they would have been prepared on or near the dates

21        indicated in each document?

22   A    Yes, correct.

23   Q    And these documents would have been prepared as part of

24        your regular business practices; is that correct?

25   A    Yes, correct.
```

Confidential - Subject to Further Confidentiality Review

```
1    Q    And you would have retained copies of these documents as

2         part of the regular business practices, correct?

3    A    Correct.

4    Q    Okay.  And if we look at the first document in this

5         package, it indicates a customer CNBM; is that correct?

6    A    Correct.

7    Q    Okay.  And how many logs were involved in this shipment?

8    A    769.

9    Q    Okay.  And do you know what the date that this shipment

10        would have gone out was?

11   A    It was scheduled to leave December 10, 2014.

12   Q    Okay.  Is that according to the invoice?

13   A    Yes.

14   Q    And that invoice is dated December 5, 2014, correct?

15   A    Correct.

16   Q    And it's an invoice from Western Wood to CNBM Forest

17        Products Canada Limited, correct?

18   A    Correct.

19   Q    And the amount of this invoice is $126,420.10, correct?

20   A    Correct.

21   Q    Do you know where these logs would have shipped to?

22   A    Xingang, China.

23   Q    Do you know where they shipped out of?

24   A    Tacoma, Washington.

25        /////
```

Confidential - Subject to Further Confidentiality Review

```
1                        (Exhibit No. 37 marked for

2                         identification.)

3

4                   MR. FOX:  Can we go off the record

5        for a second?

6                   VIDEOGRAPHER:  We are going off

7        record.  The time is now 6:16 p.m.

8                        (Recess 6:16 to 6:17 p.m.)

9

10                  VIDEOGRAPHER:  Back on record.  The

11       time is now 6:17 p.m.

12   Q   (By Mr. Gaughan)  And I am showing you what's been

13       marked as Exhibit No. 37 to your deposition.

14          Do you see that document?

15   A   Yes.

16   Q   And this is another offer sheet; is that correct?

17   A   Correct.

18   Q   And this offer sheet is an offer-- involves an offer by

19       Western Wood to CNBM Forest Products; is that correct?

20   A   Correct.

21   Q   And it's dated December 4, 2014; is that correct?

22   A   Correct.

23   Q   And the total amount indicated on this-- contemplated by

24       this offer sheet is $1,019,200; is that correct?

25   A   Correct.
```

Confidential - Subject to Further Confidentiality Review

```
 1    Q    And the last ship date indicated in this document is

 2         January 31st, 2015; is that correct?

 3    A    Correct.

 4    Q    Do you know whether this particular offer was accepted

 5         or not?

 6    A    Yes.

 7    Q    How do you know that?

 8    A    The corresponding invoices that will relate to this

 9         order.

10    Q    Okay.

11    A    I don't--

12    Q    Would those have been any of the invoices we just looked

13         at?  Do you know?

14    A    Yes.

15             Based on the dates, yes.

16    Q    Okay.  Thank you.

17             I should ask, actually, do you know who prepared

18         this offer?

19    A    Michelle Zaun.

20    Q    Okay.  And she would have prepared this offer on or

21         about December 4, 2014?

22    A    Yes.

23    Q    And that would have been part of her regular business

24         duties to prepare these sort of offers?

25    A    Yes.
```

Confidential - Subject to Further Confidentiality Review

```
 1    Q    Okay.  And you would have retained copies of these

 2         offers as part of your regular business activities?

 3    A    Yes.

 4                              (Exhibit No. 38 marked for

 5                               identification.)

 6

 7    Q    (By Mr. Gaughan)  Okay.  I am showing you what's been

 8         marked as Exhibit No. 38 to your deposition.

 9         This appears to be another packet of documents

10         similar to those we looked at earlier today, correct?

11    A    Correct.

12    Q    These documents would have been prepared either by

13         personnel at Western Wood or by third parties at the

14         direction of Western Wood, correct?

15    A    Correct.

16    Q    And these documents would have been prepared on or about

17         the dates indicated on them, on the documents, correct?

18    A    Correct.

19    Q    And these documents would have been prepared as part of

20         Western Wood's regular business activities, correct?

21    A    Correct.

22    Q    And you would have retained copies of these documents as

23         part of your regular business activities?

24    A    Yes.

25    Q    Okay.  And according to the cover document, the
```

```
 1      customer, with respect to this particular transaction,

 2      is CNBM; is that correct?

 3   A  Correct.

 4   Q  And what was the number of logs involved in this

 5      particular shipment?

 6   A  982.

 7   Q  Is it 927?  I'm sorry.

 8   A  No.  It's 982.  We combined two bookings.

 9         You will see-- you see the 927 on Page 594?

10   Q  Yes.

11   A  And then there's 55 on Page 597.

12   Q  Okay.  I understand.  Thank you.

13   A  The bill of lading also says 982, so--

14   Q  Okay.  I am not sure I see an invoice with respect to

15      this particular transaction.

16   A  That's correct.

17   Q  Okay.  Do you know if one exists?

18   A  Yes.

19   Q  Okay.  Is that something that maybe you can produce to

20      us?

21   A  Yes.

22   Q  Okay.  Thank you.

23         And I guess your counsel will just--

24                   MR. GAUGHAN:  Can you make a note of

25      it?
```

Confidential - Subject to Further Confidentiality Review

```
 1                         MR. WITTMAN:  Why don't we identify

 2       it again so we can help him track it.

 3            The invoice for this booking number on Exhibit

 4       No. 38?

 5                         MR. GAUGHAN:  Yes.

 6                         MR. WITTMAN:  Okay.

 7                         MR. GAUGHAN:  Thank you.

 8   Q   (By Mr. Gaughan)  Do you know when this shipment would

 9       have gone out, by the way?

10            Is there anything--

11   A   The BL-- let's see, around January 3rd, 2015.

12   Q   And where are you getting that--

13   A   On the bill of lading 599, in the lower right-corner.

14            It says, "Laden onboard the vessel."

15                              (Exhibit No. 39 marked for

16                               identification.)

17

18   Q   (By Mr. Gaughan)  Showing you what's been marked as

19       Exhibit No. 39, this is a similar packet of documents to

20       the others we've looked at today, correct?

21   A   Correct.

22   Q   And these documents would have been prepared either by

23       Western Wood or by third parties at the direction of

24       Western Wood, correct?

25   A   Correct.
```

Confidential - Subject to Further Confidentiality Review

```
 1    Q    And these documents would have been prepared on or about

 2         the dates indicated on each document, correct?

 3    A    Correct.

 4    Q    And you would have retained copies of these documents as

 5         part of your regular business practices, correct?

 6    A    Correct.

 7    Q    And these documents would have been prepared in

 8         furtherance of your business activities; is that

 9         correct?

10    A    Yes, correct.

11    Q    And on the cover page we see the customer indicated as

12         CNBM; is that correct?

13    A    Correct.

14    Q    Can you tell me the total number of logs that are

15         involved in this shipment?

16    A    351.

17    Q    Do you know the date this shipment was made?

18    A    It was scheduled to depart around December 31st, 2014.

19    Q    And is that according to the invoice?

20    A    Yes.

21    Q    And it's Page No. 605, correct?

22    A    Yes, correct.

23    Q    And this is an invoice from Western Wood to CNBM Forest

24         Products Canada Limited, correct?

25    A    Correct.
```

Confidential - Subject to Further Confidentiality Review

```
 1   Q   And the total invoice amount is $59,466.40, correct?

 2   A   Correct.

 3                            (Exhibit No. 40 marked for

 4                             identification.)

 5

 6   Q   (By Mr. Gaughan)  I am showing you what's been marked as

 7       Exhibit No. 40 to your deposition.

 8           This is another packet of documents similar to

 9       those we looked at earlier today, correct?

10   A   Correct.

11   Q   And these documents would have been prepared either by

12       Western Wood personnel or by third parties at the

13       direction of Western Wood, correct?

14   A   Correct.

15   Q   And these documents would have been prepared on or about

16       the dates indicated on these documents, correct?

17   A   Correct.

18   Q   And they would have been prepared as part of Western

19       Wood's regular business practices?

20   A   Yes.

21   Q   And you would have retained copies of them as part of

22       your regular business practices?

23   A   Yes.

24   Q   Okay.  And according to this document, the customer was

25       CNBM; is that correct?
```

Confidential - Subject to Further Confidentiality Review

```
 1   A   Correct.

 2   Q   At least according to the cover page, I should say?

 3   A   Correct, yes.

 4   Q   And could you tell me the total number of logs that are

 5       involved in this shipment?

 6   A   For this particular booking, we had combined two

 7       different-- we combined a Part A, a Part B, for a total

 8       of 1,286.

 9   Q   Okay.  And the Part A was 963 logs; is that correct?

10   A   Yes.

11   Q   And the Part B was-- is it 323 logs?

12   A   Correct.

13   Q   And can you tell me when these logs would have been

14       shipped?

15   A   Around December 17, 2014.

16   Q   Is that from the invoice?

17   A   Yes.

18   Q   Okay.  And the invoice is dated December 12, 2014; is

19       that correct?

20   A   Correct.

21   Q   And this is an invoice from Western Wood LLC indicating

22       these materials were sold to CNBM Forest Products Canada

23       Limited, correct?

24   A   Correct.

25   Q   And the total on this invoice is $233,161.60, correct?
```

Confidential - Subject to Further Confidentiality Review

```
 1   A   Correct.

 2   Q   And do you know where these logs would have been shipped

 3       to?

 4   A   To Xingang, China.

 5   Q   Okay.  According to the bill of lading instruction, Page

 6       622, it indicates Shanghai, China.

 7           Is that--

 8   A   Wait, which--

 9   Q   Page 622.

10   A   Oh, 622.

11           Yeah, that's-- those are just the instructions, but

12       the final copy is Page 624.

13   Q   Okay.  So 624 is more-- is the more accurate--

14   A   Yeah, they had changed-- they had changed the notify

15       party.

16   Q   And these--

17                   MR. CABOT:  Objection; move to

18       strike.

19   Q   (By Mr. Gaughan)  What was the answer?  I'm sorry.

20   A   I said they had-- the reason for the different-- they

21       had changed the notify party.

22   Q   Okay.

23   A   So the--

24   Q   The notify party is Tewoo Metals International Trade

25       Company Limited; is that correct?
```

Confidential - Subject to Further Confidentiality Review

1   A   Yes.

2   Q   Have you done business with that company before?

3   A   I would have to check our records to--

4   Q   Do you know anything about Tewoo Metals International

5       Trade Co. Limited?

6   A   No, not specifically.

7               MR. GAUGHAN:  If everyone is okay, I

8       am just going to do one more document, and that should

9       wrap up this series of documents.

10              MR. PFAEHLER:  And we'll take over

11      the questioning first thing in the morning, you're done?

12              MR. GAUGHAN:  I don't know about

13      that.

14              MR. PFAEHLER:  Hope springs eternal

15      with me.

16              MR. GAUGHAN:  It does.

17                  (Exhibit No. 41 marked for

18                   identification.)

19

20  Q   (By Mr. Gaughan)  And I am showing you what's been

21      marked as Exhibit No. 41 to your deposition.

22          This is another packet of documents similar to

23      those we looked at earlier today, correct?

24  A   Correct.

25  Q   And these documents would have been prepared either by

Confidential - Subject to Further Confidentiality Review

```
 1        Western Wood or by third parties at the direction of

 2        Western Wood, correct?

 3   A    Correct.

 4   Q    And these documents would have been prepared on or about

 5        the dates identified in each document, correct?

 6   A    Correct.

 7   Q    And these documents would have been prepared as part of

 8        Western Wood's regular business practices?

 9   A    Yes.

10   Q    And you would have retained copies as part of your

11        regular business practices?

12   A    Yes.

13   Q    And according to the cover document, CNBM was a customer

14        with respect to this particular transaction?

15   A    Yes.

16   Q    And what's the total number of logs in this particular

17        shipment?

18   A    675.

19   Q    Do you know what-- the date these logs were shipped out?

20   A    They were scheduled to depart December 30, 2014.

21   Q    And is that according to the invoice?

22   A    Yes.

23   Q    And the invoice is dated December 19, 2014, correct?

24   A    Yes.

25   Q    And it's an invoice from Western Wood LLC to CNBM Forest
```

Confidential - Subject to Further Confidentiality Review

1      Products Canada Limited, correct?

2   A  Correct.

3   Q  And the total invoice amount was $95,148.20, correct?

4   A  Correct.

5   Q  And can you tell me where these logs were shipped to?

6   A  Xingang, China.

7   Q  And they were loaded where?

8   A  Tacoma, Washington.

9                  MR. GAUGHAN:  Okay.  Thank you.

10         I guess we'll conclude for the night.

11                 VIDEOGRAPHER:  We are going off the

12      record.  The time is now 6:31 p.m.

13                 (Deposition recessed at 6:31 p.m.)

14                   (Signature reserved.)

15

16

17

18

19

20

21

22

23

24

25

Confidential - Subject to Further Confidentiality Review

```
 1      STATE OF WASHINGTON )    I, Terilynn Pritchard, RMR, CRR,
                            ) ss CLR, a certified court reporter
 2      County of Pierce    )    in the State of Washington, do
                                 hereby certify:

 3

 4
                That the foregoing deposition of JOHN D. SALAMANCA
 5      was taken before me and completed on May 21, 2015, and
        thereafter was transcribed under my direction; that the
 6      deposition is a full, true and complete transcript of the
        testimony of said witness, including all questions, answers,
 7      objections, motions and exceptions;

 8              That the witness, before examination, was by me
        duly sworn to testify the truth, the whole truth, and
 9      nothing but the truth, and that the witness reserved the
        right of signature;

10

                That I am not a relative, employee, attorney or
11      counsel of any party to this action or relative or employee
        of any such attorney or counsel and that I am not
12      financially interested in the said action or the outcome
        thereof;

13
                That I am herewith securely sealing the said
14      deposition and promptly delivering the same to
        Attorney Matthew C. Gaughan.

15
                IN WITNESS WHEREOF, I have hereunto set my
16      signature on the 23rd day of May, 2015.

17

18

19

20

21

22      _____

        Terilynn Pritchard, CCR, RMR, CRR, CLR
23      Certified Court Reporter No. 2047.

24

25
```

1            -  -  -  -  -

               E R R A T A

2            -  -  -  -  -

3

4    PAGE  LINE  CHANGE

5    _____ _____ _____

6       REASON: _____

7    _____ _____ _____

8       REASON: _____

9    _____ _____ _____

10      REASON: _____

11   _____ _____ _____

12      REASON: _____

13   _____ _____ _____

14      REASON: _____

15   _____ _____ _____

16      REASON: _____

17   _____ _____ _____

18      REASON: _____

19   _____ _____ _____

20      REASON: _____

21   _____ _____ _____

22      REASON: _____

23   _____ _____ _____

24      REASON: _____

25

Confidential - Subject to Further Confidentiality Review

```
 1

 2          ACKNOWLEDGMENT OF DEPONENT

 3

 4              I,_____, do

 5     hereby certify that I have read the

 6     foregoing pages, and that the same is

 7     a correct transcription of the answers

 8     given by me to the questions therein

 9     propounded, except for the corrections or

10     changes in form or substance, if any,

11     noted in the attached Errata Sheet.

12

13

14     _____

15      JOHN SALAMANCA                 DATE

16

17

18     Subscribed and sworn
       to before me this

19     _____ day of _____, 20_____.

20     My commission expires:_____

21

       _____

22     Notary Public

23

24

25
```

Confidential - Subject to Further Confidentiality Review

1                    LAWYER'S NOTES

2     PAGE   LINE

3     _____  _____   _____

4     _____  _____   _____

5     _____  _____   _____

6     _____  _____   _____

7     _____  _____   _____

8     _____  _____   _____

9     _____  _____   _____

10    _____  _____   _____

11    _____  _____   _____

12    _____  _____   _____

13    _____  _____   _____

14    _____  _____   _____

15    _____  _____   _____

16    _____  _____   _____

17    _____  _____   _____

18    _____  _____   _____

19    _____  _____   _____

20    _____  _____   _____

21    _____  _____   _____

22    _____  _____   _____

23    _____  _____   _____

24    _____  _____   _____

25    _____  _____   _____

Confidential - Subject to Further Confidentiality Review

```
 1                IN THE UNITED STATES DISTRICT COURT

 2                  EASTERN DISTRICT OF LOUISIANA

 3

 4                                   )

                                     ) MDL No. 2047

 5    IN RE: CHINESE-MANUFACTURED DRYWALL ) SECTION: L

      PRODUCTS LIABILITY LITIGATION,     ) JUDGE FALLON

 6                                   ) MAG. JUDGE WILKINSON

 7

           VIDEOTAPED 30(b)(6) DEPOSITION OF JOHN SALAMANCA

 8

                              VOLUME II

 9

                          May 22, 2015

10

                      Seattle, Washington

11

                   ***** Confidential *****

12

      ***** Subject to Further Confidentiality Review *****

13

14

15

16

17

18

19

20

21

22

23           GOLKOW TECHNOLOGIES, INC.

24       877.370.3377 ph | 917.591.5672 fax

25              deps@golkow.com
```

Confidential - Subject to Further Confidentiality Review

```
 1               APPEARANCES
 2   For the Plaintiffs:
 3           Matthew C. Gaughan, Esquire
             Levin Fishbein Sedran & Berman
 4           510 Walnut Street
             Suite 500
 5           Philadelphia, PA 19106-3697
             215.592.1500
 6           215.592.4663 Fax
             mgaughan@lfsblaw.com
 7
 8   For Defendants BNBM PLC and BNBM Group:
 9           Kenneth J. Pfaehler, Esquire
             Dentons US LLP
10           1301 K Street NW
             Suite 600, East Tower
11           Washington, DC 20005-3364
             202.408.6468
12           kenneth.pfaehler@dentons.com
13
     For Defendants CNBM Group, CNBM Company, and
14     CNBM Forest Products:
15           Jason Cabot, Esquire
             Orrick Herrington & Sutcliffe LLP
16           405 Howard Street
             San Francisco, CA 94105-2669
17           415.773.5605
             415.773.5759 Fax
18           jcabot@orrick.com
19
     For Western Wood Lumber Company:
20
             Mark P. Wittman, Esquire
21           Law Offices of Mark P. Wittman
             1520 140th Avenue NE
22           Suite 200
             Bellevue, WA 98005
23           425.861.1900
             425.558.5993 Fax
24           mark@wittmanlawfirm.com
25
```

Confidential - Subject to Further Confidentiality Review

```
 1                    EXAMINATION INDEX

 2   EXAMINATION BY:                         PAGE NO.

 3   Mr. Gaughan                                155

 4   Mr. Pfaehler                               197

 5   Mr. Cabot                                  246

 6   Mr. Gaughan                                262

 7   Mr. Pfaehler                               268

 8   Mr. Gaughan                                272

 9

10                     EXHIBIT INDEX

11   EXHIBIT NO.    DESCRIPTION              PAGE NO.

12   Exhibit No. 42  Invoice No. SEA423730400 dated   154
                     12/18/14 and attachment
13

     Exhibit No. 43  3-page email chain ending    157
14                   10/14/14; WW 000168-170

15   Exhibit No. 44  2-page email chain ending    159
                     5/11/15; WW 000298-299
16

     Exhibit No. 45  Email chain ending 9/17/14;   163
17                   WW 000233-247

18   Exhibit No. 46  Email chain ending 5/11/15;   164
                     WW 000254
19

     Exhibit No. 47  Email chain ending 10/8/14;   166
20                   WW 00264-268

21   Exhibit No. 48  Email chain ending 5/11/15;   167
                     WW 000278-280
22

     Exhibit No. 49  Email chain ending 12/4/14;   168
23                   WW 00312-314

24   Exhibit No. 50  Email chain ending 5/11/15;   169
                     WW 00325
25
```

1                    EXHIBIT INDEX (Continuing)

2    EXHIBIT NO.     DESCRIPTION                    PAGE NO.

3    Exhibit No. 51  Email chain ending 1/6/15;     171
                     WW 000344-351
4
     Exhibit No. 52  Email to Michelle from Jesse   172
5                    dated 3/2/15; WW 000021

6    Exhibit No. 53  Email chain ending 2/26/15;    173
                     WW 000027-31
7
     Exhibit No. 54  Email and attachment to Michelle  175
8                    from Jesse dated 9/3/14;
                     WW 000209213
9
     Exhibit No. 55  Email and attachment to Michelle  175
10                   from Jesse dated 7/14/14;
                     WW 000230-232
11
     Exhibit No. 56  2-page email chain ending     176
12                   10/20/14; WW 000262-263

13   Exhibit No. 57  Email chain ending 12/7/14 with  178
                     attachment; WW 000308-311
14
     Exhibit No. 58  Email chain ending 1/5/15 and  179
15                   attachment; WW 000114-117

16   Exhibit No. 59  Email chain ending 3/30/15;    202
                     WW 000001-85
17
     Exhibit No. 60  Western Wood Job Profitability  270
18                   Summary, July 14-December 31,
                     2014, BNBM
19
     Exhibit No. 61  Western Wood Job Profitability  270
20                   Summary, January 2015-March
                     2015, BNBM
21
     Exhibit No. 62  Western Wood Job Profitability  270
22                   Summary, July 17-December 31,
                     2014, CNBM
23

24

25

1                    BE IT REMEMBERED that on Friday,

2    May 22, 2015, at 1201 Third Avenue, Seattle, Washington,

3    at 9:00 a.m., before Cindy M. Koch, Certified Court

4    Reporter, RPR, CRR, CLR, appeared JOHN SALAMANCA, the

5    witness herein;

6                    WHEREUPON, the following proceedings

7    were had, to wit:

8

9                    <<<<<< >>>>>

10

11                        (Exhibit No. 42 marked for

12                         identification.)

13

14                    THE VIDEOGRAPHER:  We are now on the

15   record.  My name is Nicholas Rapp.  I am a videographer

16   for Golkow Technologies.  Today's date is May 22nd, 2015,

17   and the time is 9:13 a.m.

18       This continued video deposition is being held at

19   1201 Third Avenue, Suite 3200, Seattle, Washington 98101,

20   concerning the matter of In Re Chinese-manufactured

21   Drywall Products Liability Litigation, Case No.

22   2:09-MD-02047-EEF-JCW for the U.S. District Court,

23   Eastern District of Louisiana.

24       The deponent is John Salamanca.

25       Counsel, could you please voice identify yourselves.

Confidential - Subject to Further Confidentiality Review

```
 1                      MR. GAUGHAN:  Yes.  Good morning.

 2         Matthew Gaughan, from Levin Fishbein, on behalf of the

 3         Plaintiff's Steering Committee.

 4                      MR. WITTMAN:  Mark Wittman, counsel

 5         for the deponent's employer, Western Wood Lumber.

 6                      MR. PFAEHLER:  Kenneth Pfaehler,

 7         Dentons US LLP, counsel for BNBM and BNBM Group.

 8                      MR. CABOT:  Jason Cabot, from Orrick

 9         Herrington & Sutcliffe, on behalf of CNBM Group, CNBM

10         Company, CNBM Forest Products Limited, and CNBM Forest

11         Products Canada Limited.

12                      THE VIDEOGRAPHER:  The court -- excuse

13         me.  Sorry.

14                      MR. GAUGHAN:  Go ahead.

15                      THE VIDEOGRAPHER:  The court reporter

16         is Cindy Koch, and may now swear in the witness.

17

18         JOHN SALAMANCA,       having been first duly sworn

19                               by the Certified Court Reporter,

20                               testified as follows:

21

22                      EXAMINATION

23         BY MR. GAUGHAN:

24    Q    Good morning, Mr. Salamanca.  I'm handing you what's been

25         marked as Exhibit 42 to your deposition.
```

Confidential - Subject to Further Confidentiality Review

```
 1          And this was a document you brought with you today;

 2     is that correct?

 3  A  Yes.

 4  Q  And during yesterday's testimony, we went over a series

 5     of shipping packets.  And with respect to one of those

 6     shipping packets, I had asked you about a missing

 7     invoice; is that correct?

 8  A  Correct.

 9  Q  And this is the missing invoice?

10  A  Yes.

11  Q  And what's the date on that invoice?

12  A  December 18, 2014.

13  Q  And the invoice was to CNBM Forest Products Canada

14     Limited; is that correct?

15  A  Correct.

16  Q  And the total amount on that invoice is $152,142.80; is

17     that correct?

18  A  $154.80.

19  Q  Okay.  Can you read it to me, please?

20  A  Yeah.  $152,154.80.

21  Q  Okay.  Thank you.

22          And you can put that aside.

23  A  Okay.

24  Q  And thank you for bringing that with you today.

25     ////
```

Confidential - Subject to Further Confidentiality Review

```
 1                              (Exhibit No. 43 marked for

 2                               identification.)

 3   Q   (By Mr. Gaughan)  And I'm showing you what's been marked

 4       as Exhibit 43 to your deposition.

 5           And this is an email chain; is that correct?

 6   A   Yes.

 7   Q   And the -- I guess the first email we see is from

 8       October 14, 2014; is that correct?

 9   A   Correct.

10   Q   And the initial email on Page 170 is dated October 9,

11       2014; is that correct?

12   A   Correct.

13   Q   I did want to ask you about this email.  I notice this

14       top -- the first email in the chain is from Jesse; is

15       that correct?

16   A   Yes.

17   Q   And that's the same individual we spoke about yesterday;

18       is that correct?

19   A   Yes.

20   Q   What's his full name again?

21   A   Jesse Wu, W-u.

22   Q   And is he your agent in -- and by "you," I mean Western

23       Wood's agent in Asia?  Is that correct?

24   A   For BNBM.

25   Q   Okay.  So you understand he works for BNBM; is that
```

Confidential - Subject to Further Confidentiality Review

```
 1      correct?

 2                      MR. PFAEHLER:  Objection.  Form.

 3                      THE WITNESS:  Yes.

 4   Q  (By Mr. Gaughan)  Okay.  And this, I guess, the first

 5      email, the top email, identifies a company called

 6      Shanghai Su Sen International; is that correct?

 7   A  Yes.

 8   Q  Is that a company that is one of your ultimate customers

 9      in Asia?

10   A  Yes.

11   Q  Okay.  And they are talking about -- this email discusses

12      a venture involving BNBM with respect to Shanghai Su Sen

13      International; is that correct?

14                      MR. PFAEHLER:  Objection to form.

15      Mischaracterizes the document.

16   Q  (By Mr. Gaughan)  Okay.  Why don't you tell me what you

17      understand this email thread to be discussing.

18   A  Okay.  Basically we're just trying to strike a deal with

19      Jesse with regards -- he's basically telling us, if --

20      which LLC's going to come in first, one, if it's going to

21      come in from BNBM first, or Shanghai Su Sen

22      International.

23   Q  Okay.  And this talks about a business venture involving

24      the shipment of 100 cans; is that correct?  Total number?

25                      MR. PFAEHLER:  Objection.  Form.
```

Confidential - Subject to Further Confidentiality Review

```
 1                          THE WITNESS:  Looks -- it would --

 2        looks like it would be 100 cans for Shanghai Su Sen and

 3        50 for -- 50 cans for BNBM.

 4    Q   (By Mr. Gaughan)  Okay.  Thank you.  And you can put that

 5        document aside for now.

 6                              (Exhibit No. 44 marked for

 7                               identification.)

 8    Q   (By Mr. Gaughan)  And I'm showing you what's been marked

 9        as Exhibit 44 to your deposition.

10            And this is another email thread.  I guess the first

11        email in this chain was dated December 19, 2014; is that

12        correct?

13    A   Yes, correct.

14    Q   And who's Larry Mitchem?

15    A   Larry, he's our vice president.

16    Q   Okay.

17    A   At Western Wood.

18    Q   And who's Alan Brunstad?

19    A   He's our -- he works with Daniel at CNBM.  So those two

20        were, I guess, partners with the deal with Western Wood.

21                          MR. CABOT:  And I'm going to move to

22        strike.  There's no such entity as CNBM.

23    Q   (By Mr. Gaughan)  I'm going to pose a -- who do you

24        understand CNBM to refer to, when you say that?

25    A   CNBM Forest Products Canada Limited.
```

Confidential - Subject to Further Confidentiality Review

```
1    Q    Okay.  Thank you.

2         So Alan Brunstad, to your understanding, works at

3         CNBM Forest Products Canada Limited; is that correct?

4                        MR. CABOT:  Objection.  Speculation,

5         lack of personal knowledge.

6    Q    (By Mr. Gaughan)  You can testify.

7    A    Oh, I don't believe he works for them.  He works with

8         them, maybe as an agent.

9    Q    Okay.  Has --

10                       MR. CABOT:  Move to strike on the

11        basis of speculation.

12                       MR. GAUGHAN:  Oppose.

13   Q    (By Mr. Gaughan)  So has Mr. Brunstad visited your

14        offices in the United States?

15   A    Yes.  He's located here in Washington State.

16   Q    Do you know what company he works for?

17   A    No, I do not.

18   Q    But you understand he's -- he works with CNBM Forest

19        Products Canada; is that correct?

20                       MR. CABOT:  Objection.

21        Mischaracterizes the testimony.

22   Q    (By Mr. Gaughan)  You can answer.

23   A    He works in rel- -- with Daniel.

24   Q    Okay.  And he's worked in setting up some of the ventures

25        we looked at yesterday with respect to those shipping
```

Confidential - Subject to Further Confidentiality Review

```
1         packages?

2                         MR. CABOT:  Objection.  Vague and

3         ambiguous.

4    Q    (By Mr. Gaughan)  You can answer.

5    A    Yes.

6    Q    And does he -- how often does he visit your offices?

7    A    He's -- three times.

8    Q    Okay.

9    A    I know yesterday I -- I confirmed this morning.  Daniel's

10        visited us twice, and Alan's --

11                        MR. CABOT:  Objection.  Move to

12        strike.  Nonresponsive.

13   Q    (By Mr. Gaughan)  Okay.  You mentioned you had verified

14        this morning that Daniel had visited you twice; is that

15        correct?

16   A    Correct.

17   Q    When was that?

18   A    The first one was sometime last summer in the initial

19        meeting with Western Wood.  Daniel, Alan, John

20        Tortorelli, and Larry Mitchem --

21   Q    Okay.

22   A    -- were at that first meeting.  And then -- it was

23        actually the same four had lunch a few months later.

24   Q    Okay.  So that would have been in the fall of 2014?

25   A    Yes.
```

Confidential - Subject to Further Confidentiality Review

```
 1   Q   Yes?

 2   A   Yes.

 3   Q   Okay.  Sorry.

 4           And how often has Alan visited -- Alan Brunstad --

 5       your offices?

 6                        MR. CABOT:  Objection.  Vague.

 7                        THE WITNESS:  Other than those two

 8       times, he had visited one other time to pick up

 9       documents.

10   Q   (By Mr. Gaughan)  Okay.  So he was present during the two

11       instances when Daniel visited your offices; is that

12       correct?

13   A   Yes.

14   Q   Okay.  And then he came by one other time to pick up

15       documents?

16   A   Yes.

17   Q   And when was that?

18   A   Sometime in the fall, late fall, early winter 2014.

19   Q   What sort of documents was he picking up?

20   A   The phyto certificate, which is issued by the U.S.

21       Department of Agriculture.

22   Q   And that would have been with respect to one of the --

23       the shipments that you helped facilitate with --

24       involving CNBM Forest Products Canada?

25   A   Yes.
```

Confidential - Subject to Further Confidentiality Review

```
1   Q   Thank you.

2       And at least according to this exhibit that we

3       marked as Exhibit 44 to your deposition, there would have

4       been some continuing discussions involving CNBM Forest

5       Products Canada on or about December 19, 2014; is that

6       correct?

7                       MR. CABOT:  Objection.  Vague.

8                       THE WITNESS:  Yes.

9   Q   (By Mr. Gaughan)  And it looks like, according to this

10      email chain, they were having some issues with pricing in

11      Asia; is that correct?

12                      MR. CABOT:  Objection.  Vague, and

13      document speaks for itself.

14  Q   (By Mr. Gaughan)  And you can review the document if that

15      helps you.

16  A   Oh, yes.  Well, at this particular time, they were having

17      problems paying us for a couple invoices.  They were late

18      on payment, so . . .

19  Q   And they wanted to continue the relationship; was that

20      your understanding at that time?

21                      MR. CABOT:  Same objections.

22                      THE WITNESS:  Yes.

23  Q   (By Mr. Gaughan)  You can put that aside.

24                          (Exhibit No. 45 marked for

25                           identification.)
```

Confidential - Subject to Further Confidentiality Review

```
 1    Q    (By Mr. Gaughan)  And I'm showing you what's been marked

 2         as Exhibit 45 to your deposition.

 3              And this appears to be a series of email threads

 4         involving individuals at Western Wood and Daniel, who we

 5         spoke about earlier, Daniel -- is it Daniel Wu?  Am I --

 6    A    No.  Daniel Deng, D-e-n-g.

 7    Q    Okay.  Is that correct, though, it's a series -- this

 8         looks like an email thread involving discussions of

 9         individuals at Western Wood and Daniel Deng; is that

10         correct?

11    A    That's correct.

12    Q    Okay.  And the first email -- it's the top email in this

13         chain -- is from September 17, 2014; is that correct?

14    A    Yes.

15    Q    And so there were still ongoing negotiations between

16         Western Wood and CNBM Forest Products Canada Limited in

17         September of 2014; is that correct?

18                        MR. CABOT:  Objection.  Vague.

19                        THE WITNESS:  Yes.

20    Q    (By Mr. Gaughan)  You can put that aside.

21                             (Exhibit No. 46 marked for

22                               identification.)

23    Q    (By Mr. Gaughan)  And I'm showing you what's been marked

24         as Exhibit 46 to your deposition.

25              And this is another email chain.  The top email in
```

Confidential - Subject to Further Confidentiality Review

```
 1       this chain is dated May 11, 2015; correct?

 2   A   Yes.

 3   Q   Okay.

 4                     MR. WITTMAN:  I'd object that --

 5                     MR. CABOT:  Yeah.

 6                     MR. WITTMAN:  -- Exhibit 46 appears to

 7       be one email as opposed to a chain.

 8   Q   (By Mr. Gaughan)  Okay.  I see a -- two "froms" and

 9       two -- does anyone understand what's -- can you explain

10       to me what you understand this email to be showing?

11   A   Yes.  Larry was the main contact with Alan and Daniel, so

12       I'd asked Larry to forward any emails -- correspondence

13       between himself and Alan and Daniel.

14   Q   So --

15   A   So this is what -- initially this email went from Alan

16       to -- to Larry on July 20, 2014.

17   Q   Uh-huh.

18   A   And we had -- hadn't seen this, so I'd asked him to

19       forward.

20   Q   Okay.  And -- so in the July 20, 2014, email that was

21       forwarded to you, it discusses an offer for CNBM to

22       purchase 100 containers at 940 to Shanghai; is that

23       correct?

24                     MR. CABOT:  Objection.  Vague.  The

25       document speaks for itself.
```

Confidential - Subject to Further Confidentiality Review

1                    THE WITNESS:  Correct.

2   Q   (By Mr. Gaughan)  Thank you.

3                    MR. CABOT:  And I just have a standing

4       objection that -- for essentially every question

5       involving documents where the witness is asked to say

6       what the document says.  The witness [sic] speaks for

7       itself.  The witness appears to lack personal knowledge

8       and is simply reading from the document.

9                    MR. GAUGHAN:  Counsel, you can have a

10      standing objection.  That's fine.

11                   MR. PFAEHLER:  I will join in that

12      standing objection and urge Mr. Gaughan, if possible, to

13      perhaps skip the questions where we're simply asking the

14      witness to look at documents.  We could be here for a

15      very long time doing that, and we already have been.

16                   MR. WITTMAN:  Particularly those that

17      are not authored by the deponent.

18                       (Exhibit No. 47 marked for

19                        identification.)

20  Q   (By Mr. Gaughan)  And I'm showing you what's been marked

21      as Exhibit 47 to your deposition.

22          And this is a -- at least on the cover, we see an

23      email from Daniel Deng dated October 8, 2014; is that

24      correct?

25  A   Yes.

Confidential - Subject to Further Confidentiality Review

1    Q    And if you look at the second page of this document, and

2         he's forwarding you information regarding a wire

3         transfer; is that correct?

4    A    Correct.

5    Q    And this wire transfer would have been made on -- at

6         least according to the document, on October 8, 2014; is

7         that correct?

8    A    Correct.

9    Q    And what's the amount of that wire transfer?

10   A    $128,214.60.

11   Q    Okay.  Thank you.

12                         (Exhibit No. 48 marked for

13                              identification.)

14   Q    (By Mr. Gaughan)  And I'm showing you what's been marked

15        as Exhibit 48 to your deposition.

16        And this is another -- it looks like an email chain

17        that was -- or email that was forwarded to you; is that

18        correct?

19   A    Yes.

20   Q    Okay.  And this email that was forwarded to you is dated

21        November 26, 2014?

22   A    Yes.

23   Q    Okay.  And this is discussing a new contract with CNBM

24        Forest Products Canada; is that correct?

25   A    Yes.

Confidential - Subject to Further Confidentiality Review

1    Q    You can put that aside.

2                    MR. CABOT:  And I'm going to object to

3         that last question because I don't -- well, I'll just

4         object to form.

5    Q    (By Mr. Gaughan)  Do you understand that document to be

6         discussing a new offer by CNBM Forest Canada?

7    A    Yes.

8    Q    Thank you.

9                        (Exhibit No. 49 marked for

10                           identification.)

11   Q    (By Mr. Gaughan)  And I'm showing you what's been marked

12        as Exhibit 49 to your deposition.

13            And this is a -- on the cover email's dated

14        December 4, 2014; is that correct?

15   A    Correct.

16   Q    And this is an email from Daniel Deng to Western Wood; is

17        that correct?

18   A    Correct.

19   Q    This is also discussing a CNBM offer sheet; is that

20        correct?

21   A    Correct.

22   Q    And if you look to the last page of this document, which

23        is 314, is that the offer sheet that's being discussed in

24        this email chain?

25   A    Yes.

```
 1   Q   Okay.  And it's dated December 4, 2014; is that correct?

 2   A   Correct.

 3   Q   And it reflects a total amount of $1,019,200; is that

 4       correct?

 5   A   Correct.

 6   Q   Do you know if this offer was accepted?

 7   A   Yes, it was.

 8   Q   Okay.  Is this -- is this one of the ones we looked at

 9       yesterday, to your knowledge?

10   A   I believe so.  I'd have to refer back to the documents to

11       confirm.

12   Q   Okay.  And how do you know it was accepted, though, the

13       offer?

14   A   We wouldn't issue an offer sheet unless it's already been

15       discussed.

16   Q   And you can put that aside.

17                            (Exhibit No. 50 marked for

18                             identification.)

19   Q   (By Mr. Gaughan)  I'm showing you what's been marked as

20       Exhibit 50 to your deposition.

21           And this is another email that was forwarded to you;

22       is that correct?

23   A   Yes.

24   Q   And the email that was forwarded to you was dated

25       March 13, 2015; is that correct?
```

Confidential - Subject to Further Confidentiality Review

```
 1   A    Yes.

 2   Q    And that was an email from Alan Brunstad to Larry

 3        Mitchem; correct?

 4   A    Yes.

 5   Q    And what's this email discussing?

 6   A    At the time CNBM Forest Products Canada Limited owed

 7        us -- still had a remaining balance owed to Western Wood,

 8        and we were -- I guess we were trying to keep the

 9        relationship going with them.

10            So it looks like they owed us 20,000 at the time,

11        and instead of a $20,000 payment, we offered, you know,

12        our current price of 880 plus 10, for basically an offer

13        of 890 to -- you know, to -- so we would load under the

14        890 price until the $20,000 amount that was owed to us

15        was made up.

16   Q    Okay.  So there was still ongoing discussions at this

17        point in March --

18   A    No.  No, we don't have any relationship with them

19        anymore.

20   Q    Okay.  But at least as of March 13, 2015, you were

21        trying --

22   A    Yes --

23   Q    -- there was efforts --

24   A    Yes.  They wound up wiring the 20,000 and that --

25                        MR. CABOT:  Move to strike.
```

Confidential - Subject to Further Confidentiality Review

1    Nonresponsive.

2                        THE WITNESS:  That was the last of it.

3                        MR. GAUGHAN:  I'm going to oppose the

4    move to strike there.

5    Q   (By Mr. Gaughan)  So when did they pay you that 20,000?

6        Do you know?

7    A   Sometime in March, the second half of March 2015.

8    Q   Thank you.

9                        (Exhibit No. 51 marked for

10                         identification.)

11   Q   (By Mr. Gaughan)  And I'm showing you what's been marked

12       as Exhibit 51 to your deposition.

13   A   Yes.

14   Q   Okay.  And I guess the cover email is -- is an email from

15       Western Wood to Jesse Wu; is that correct?

16   A   Correct.

17   Q   Okay.  This is dated January 6, 2015; correct?

18   A   Correct.

19   Q   And you apparently made an offer to -- you know, through

20       Jesse at this time; is that correct?

21   A   Yes.

22   Q   Okay.  And it would involve 200 containers at 970; is

23       that correct?

24   A   Correct.

25   Q   Do you know who this offer was to?

```
 1   A   To Jesse at BNBM.

 2   Q   Okay.  Thank you.

 3           So at least as of January 6, 2015, you were making

 4       offers to BNBM; is that correct?

 5   A   Yes.

 6   Q   Thank you.

 7                           (Exhibit No. 52 marked for

 8                             identification.)

 9                   MR. PFAEHLER:  Do you happen to have

10       one more, Matt?

11                   MR. GAUGHAN:  Let me see.

12                   MR. PFAEHLER:  We could share this

13       one.

14                   MR. GAUGHAN:  Yeah, unfortunately, I

15       don't.

16                   MR. WITTMAN:  Oh, that's okay.  I'll

17       defer to -- I'll scan it and then --

18                   MR. PFAEHLER:  We can look on

19       together.

20                   MR. GAUGHAN:  Okay.  And I apologize

21       for that.  I guess we lost a copy somewhere along the

22       way.

23                   MR. WITTMAN:  No big deal.

24   Q   (By Mr. Gaughan)  And so I'm showing you what's been

25       marked Exhibit 52 to your deposition, which is an email
```

```
 1       from Jesse Wu dated March 2, 2015; is that correct?

 2   A   Correct.

 3   Q   And it's to, I guess, Western Wood; is that correct?

 4   A   Yes.

 5   Q   And it's discussing a contract, CZY1030; is that correct?

 6   A   Yes.

 7   Q   And he's discussing the arrival of certain materials that

 8       would be -- involve that contract; correct?

 9   A   Correct.

10   Q   And I don't know that we saw this contract yesterday.

11       Can -- is it one of the ones we discussed yesterday?  Do

12       you know?

13   A   No.  It's -- it's fairly new, so I don't --

14   Q   Okay.

15   A   -- think we discussed it yesterday.

16   Q   Okay.  And I didn't see it.  So is that something that

17       you can provide us a copy of?

18   A   Yes.

19   Q   Okay.  So at least as of March 2, 2015, you were filling

20       a contract that involved a shipment to BNBM; is that

21       correct?

22   A   Correct.

23   Q   Okay.  Thank you.

24                            (Exhibit No. 53 marked for

25                             identification.)
```

Confidential - Subject to Further Confidentiality Review

```
 1   Q    (By Mr. Gaughan)  I'm showing you what's been marked as

 2        Exhibit 53 to your deposition.

 3             And this is another email chain; is that correct?

 4   A    Yes.

 5   Q    And this is date- -- the top email is dated February 26,

 6        2015; is that correct?

 7   A    Correct.

 8   Q    And the email is from Jesse Wu; correct?

 9   A    Yes.

10   Q    And it's to Western Wood?

11   A    Yes.

12   Q    Okay.  And in this particular email chain, there's a

13        discussion of an offer sheet for 100 containers; is that

14        correct?

15   A    Yes.

16   Q    And this would have been an offer to BNBM?

17   A    Yes.

18   Q    Do you know if this offer --

19                     MR. PFAEHLER:  Objection to form.

20   Q    (By Mr. Gaughan)  Do you know if this offer was accepted?

21   A    I don't know.

22   Q    But at least as of February 26, 2015, there were

23        discussions involving a shipment of 100 containers to

24        BNBM; is that correct?

25                     MR. PFAEHLER:  Objection.  Form.
```

```
 1                    THE WITNESS:  Correct.

 2   Q   (By Mr. Gaughan)  And you can set that aside.  Thank you.

 3                    (Exhibit No. 54 marked for

 4                      identification.)

 5   Q   (By Mr. Gaughan)  And I'm showing you what's been marked

 6       as Exhibit 54 to your deposition.  And the cover email

 7       here is an email from Jesse Wu dated September 3, 2014;

 8       is that correct?

 9   A   Correct.

10   Q   And that's attaching a -- some sort of contract, it looks

11       like, or agency agreement, I should say; is that correct?

12   A   Yes.

13   Q   Have you seen this document before?

14   A   No, I have not.

15   Q   Okay.  Are you aware of a company called Czemate Pte

16       Limited?

17   A   No, I'm not.

18   Q   Do you know if that was one of your customers?

19                    MR. PFAEHLER:  Objection.  Form.

20       Asked and answered.

21                    THE WITNESS:  No, I don't -- I do not.

22   Q   (By Mr. Gaughan)  And you can set that aside.

23                    (Exhibit No. 55 marked for

24                      identification.)

25   Q   (By Mr. Gaughan)  Showing you what's been marked as
```

Confidential - Subject to Further Confidentiality Review

```
 1        Exhibit 55 to your deposition, and this is another email

 2        on top from Jesse Wu; is that correct?

 3   A    Yes.

 4   Q    And it's dated, it looks like, July 14, 2014; is that

 5        correct?

 6   A    Yes.

 7   Q    Okay.  And it's to Western Wood?

 8   A    Yes.

 9   Q    And it looks like he's forwarding you a copy of a

10        contract; is that correct?

11   A    Correct.

12   Q    And if we look at the actual contract -- and there's two

13        of them, actually, I should say.  Can you confirm that

14        the contract he's forwarding you on 231 is the contract

15        that was marked as Exhibit 2 to your deposition

16        yesterday?

17                    MR. PFAEHLER:  Objection to form.

18                    THE WITNESS:  That's correct.

19   Q    (By Mr. Gaughan)  Okay.  And if you turn to the next

20        page, can you confirm that that's the contract that was

21        marked as Exhibit No. 3 to your deposition yesterday?

22   A    Correct.

23   Q    Thank you.  You can set that aside.

24                         (Exhibit No. 56 marked for

25                          identification.)
```

```
 1   Q   (By Mr. Gaughan)  And I'm showing you what's been marked

 2       as Exhibit 56 to your exhibit -- to your deposition,

 3       excuse me.

 4           And this looks like on top an email from Daniel Deng

 5       to Western Wood; correct?

 6   A   Correct.

 7   Q   And you understand Mr. Deng to be an employee of CNBM

 8       Forest Products Canada Limited; correct?

 9   A   Correct.

10   Q   And this is dated October 20, 2014; is that correct?

11   A   Correct.

12   Q   And this email is discussing a shipment; is that correct?

13   A   Correct.

14   Q   And CNBM Forest is asking to be listed as a co-shipper?

15   A   Yes.

16                   MR. CABOT:  Objection.  Vague.

17   Q   (By Mr. Gaughan)  What does a co-shipper mean?

18   A   It's on the bill of lading.  At the top of the bill of

19       lading, there's a shipper.  They -- they also wanted to

20       be listed as a co-shipper, showing that they were part of

21       the -- part of the shipment because these -- these logs

22       eventually went to Shanghai Keerun Industrial.

23   Q   Okay.

24   A   So they would have been the end user.  But CNBM Forest

25       Products Canada Limited wanted to be listed as a
```

Confidential - Subject to Further Confidentiality Review

```
 1        co-shipper to show that they were also involved.

 2    Q   Was there a reason they want- -- you think they wanted to

 3        do that?

 4    A   That would -- Michelle Zaun would know the answer to that

 5        question.

 6    Q   Okay.  Thank you.  You can set that aside.

 7                              (Exhibit No. 57 marked for

 8                                identification.)

 9    Q   (By Mr. Gaughan)  And I'm showing you what's been marked

10        as Exhibit 57 to your deposition.

11            And this appears to be another email chain; is that

12        correct?

13    A   Correct.

14    Q   And on top we see an M -- an email from Daniel Deng dated

15        December 7, 2014, to Western Wood; correct?

16    A   Yes.

17    Q   And I see an individual named Zhang Bo copied on that.

18        Who is that individual?

19    A   I don't know.

20    Q   Okay.  And so he's providing you an attached stamped

21        contract; is that correct?

22    A   Correct.

23    Q   And that's the -- if you'll turn to the final page of

24        this document, Page 311, is that a copy of the stamped

25        contract he's discussing here?
```

Confidential - Subject to Further Confidentiality Review

```
 1   A   Yes.

 2   Q   Okay.  And do you know if this is one of the contracts we

 3       looked at yesterday?

 4   A   I think so.  I'd have to go back and confirm.

 5   Q   Okay.  And the offer here was issued on December 4, 2014;

 6       is that correct?

 7   A   Yes.

 8   Q   And the offer was to CNBM Forest Products Canada Limited;

 9       is that correct?

10   A   Yes.

11   Q   And the total purchase amount was contemplated at

12       $1,092,200; is that correct?

13   A   Correct.

14                           (Exhibit No. 58 marked for

15                               identification.)

16   Q   (By Mr. Gaughan)  And I'm showing you what's been marked

17       as Exhibit 58 to your deposition.

18           And this appears to be an email -- another email

19       chain; is that correct?

20   A   Correct.

21   Q   This involves Jesse Wu; is that correct?

22   A   Correct.

23   Q   Okay.  And it looks like, at least in the -- not the top

24       email, but the email below that, from Western Wood,

25       there's discussion of a commission; is that correct?
```

1   A   Yes.

2   Q   Do you know if Jesse received a commission from Western

3       Wood?

4   A   I don't know who -- if you look on 116, the customer --

5       the beneficiary at the bottom there, I -- the Chinese

6       name, L-i-u, Q-i-u-m-e-i.

7                     MR. PFAEHLER:  I'm sorry; can I ask

8       the witness to just direct me?  Which page are you on?

9                     THE WITNESS:  116.

10                    MR. PFAEHLER:  116.  And you're --

11                    THE WITNESS:  These were instructions

12      as to who to wire the payment to.

13                    MR. PFAEHLER:  Yeah, I see what you

14      were just reading.  I'm sorry.  I just couldn't find it

15      on the page.  Thank you.  And I'm sorry to interrupt,

16      Counsel.

17                    MR. GAUGHAN:  That's fine.

18  Q   (By Mr. Gaughan)  I still don't see the Chinese entity

19      you're referencing on 116.  Can you just --

20  A   It's at the -- right here.  Right above "Shanghai," two

21      lines above.

22  Q   Oh, I see that.  And so do you know -- it sounds like you

23      understood BNBM, you know, Jesse Wu, to be an employee of

24      BNBM; is that correct?

25                    MR. PFAEHLER:  Whoa.  Multiple

Confidential - Subject to Further Confidentiality Review

```
 1      objections to form.  Mischaracterizes the testimony.

 2   Q  (By Mr. Gaughan)  Is that correct?

 3   A  Yes.

 4                      MR. PFAEHLER:  Mischaracterizes the

 5      facts.

 6   Q  (By Mr. Gaughan)  Do you understand that BNBM would

 7      receive a commission on sales?

 8                      MR. PFAEHLER:  Objection to form.

 9                      THE WITNESS:  The company?

10   Q  (By Mr. Gaughan)  Yeah.

11                      MR. PFAEHLER:  Objection.

12                      THE WITNESS:  I know -- I'm aware that

13      a commission goes to -- Jesse charges a commission.

14   Q  (By Mr. Gaughan)  Okay.  But not BNBM, to your knowledge?

15   A  Correct.

16   Q  Okay.  And we looked at various contracts and, I guess,

17      packets for shipments, etc., yesterday.

18        Do you remember that?

19   A  Yes.

20   Q  Are those all authentic exhibits -- or documents as they

21      exist in your files?

22   A  Yes.

23   Q  Okay.  And we looked at various email correspondences

24      today, and you also produced additional emails that we

25      did not discuss today; is that correct?
```

Confidential - Subject to Further Confidentiality Review

```
1   A    Yes.

2   Q    And your counsel provided those to us; correct?

3   A    Yes.

4   Q    Okay.  Are those all true and accurate copies of the

5        emails as they exist on your server?

6   A    Yes.

7                      MR. PFAEHLER:  Objection.  Counsel,

8        you've got to lay some foundation for that.

9                      MR. GAUGHAN:  I think we're -- we're

10       all set.  I did.

11                     MR. PFAEHLER:  I don't think he's

12       testified that he's got any knowledge of the server, any

13       basis for the testimony you just elicited.  I'd like to

14       know what exactly underlies the answer to that question.

15  Q    (By Mr. Gaughan)  Well, let me ask you a question:  Did

16       you -- were you involved in gathering those email

17       correspondences?

18  A    Yes.

19  Q    Okay.  And you're the one that printed them?

20  A    Yes.

21  Q    And how did you go about gathering those particular

22       items?

23  A    Went into our email file -- email folder, I guess, and

24       went under either the BNBM folder or the CNBM folder that

25       we have set up.
```

1   Q   Okay.  And then you printed them off of there; is that

2       correct?

3   A   Yes.  Or an employee at Western Wood printed them.

4   Q   Okay.

5   A   Yes.

6   Q   And you're -- and those are saved on your server; is that

7       correct?

8   A   Yes.

9   Q   And with respect to the emails that we looked at today,

10      those emails would have been, I guess, written by Western

11      Wood employees and exchanged with third parties as part

12      of their regular business activities at Western Wood; is

13      that correct?

14              MR. CABOT:  Objection.

15      Mischaracterizes the documents.

16  Q   (By Mr. Gaughan)  You can answer.

17              MR. PFAEHLER:  Additional objections

18      here.

19              THE WITNESS:  Yes.

20  Q   (By Mr. Gaughan)  And those emails, because of the nature

21      of the communications, would be written at or near the

22      time they were sent; correct?

23  A   Correct.

24  Q   Okay.  And those email exchanges would have been part of

25      Western Wood's regular business activities; is that

Confidential - Subject to Further Confidentiality Review

1       correct?

2    A  Correct.

3    Q  And you would have saved them on your server as part of

4       your regular business activities; is that correct?

5    A  Correct.

6    Q  Okay.  And with respect to the other emails that were

7       produced that we did not discuss today, is the same also

8       true?

9    A  Yes.

10                      MR. CABOT:  Objection, mult- -- yeah,

11      objection.

12                      MR. PFAEHLER:  Yeah, objections.

13   Q  (By Mr. Gaughan)  Okay.  We can go through it.

14        So with respect to the emails that were produced by

15      you that we did not go over today, those emails would

16      have involved communications between Western Wood

17      employees and third parties as part of their regular

18      business activities; is that correct?

19                      MR. PFAEHLER:  Objections to form.

20                      THE WITNESS:  Correct.

21   Q  (By Mr. Gaughan)  And because of the nature of email

22      correspondences, they would have been sent on or about

23      the time that they are -- appear to be dated on the

24      emails; is that correct?

25   A  Correct.

Confidential - Subject to Further Confidentiality Review

```
 1   Q   Okay.  And you would have retained copies of those as

 2       part of your regular business practices?

 3   A   Yes.

 4   Q   Okay.  Thank you.

 5       We talked a lot about Beijing New Building Materials

 6       Company Limited; correct?

 7   A   Yes.

 8   Q   When had you first heard of this company?

 9   A   When they first became a customer of ours in 2011.

10   Q   And do you have any sense of the total number of

11       contracts that you've entered with -- or -- by "you," I

12       mean Western Wood has entered with BNBM since 2011?

13               MR. PFAEHLER:  Objection to form.

14       Asking the witness to speculate about matters that are

15       contained in documents.

16   Q   (By Mr. Gaughan)  You can answer the question.

17   A   I don't -- that's tough to say exactly.

18   Q   Do you think it's more than 20, or less?  Do you have a

19       sense of that?

20   A   More than --

21               MR. PFAEHLER:  Objection.  Asked and

22       answered, calling for a hypothetical, speculation.

23   Q   (By Mr. Gaughan)  You can answer.

24   A   More than 20.

25   Q   Is Jesse the primary -- Jesse Wu the primary person that
```

1    communicates with people at Western Wood from BNBM?

2                          MR. PFAEHLER:  Objection to the

3    characterization of Jesse Wu being from BNBM, among other

4    things.  Vague.

5                          THE WITNESS:  Yes.

6    Q  (By Mr. Gaughan)  Okay.  Is there anyone else that you

7       know that's a BNBM employee who has had communications

8       with people at Western Wood?

9                          MR. PFAEHLER:  Objection.

10   Mischaracterization of Jesse Wu as a BNBM employee.

11                         THE WITNESS:  No.

12   Q  (By Mr. Gaughan)  Do you know if anyone from BNBM has

13      ever discussed other entities, parent entities of BNBM,

14      anything like that, with anyone from Western Wood?

15   A  No.

16                         MR. CABOT:  Hang on.  Just a minute.

17   Okay.  Objection to form.

18   Q  (By Mr. Gaughan)  Do you know if anyone from BNBM ever

19      discussed the fact that BNBM is a subsidiary of CNBM --

20                         MR. CABOT:  Objection.

21   Q  (By Mr. Gaughan)  -- with anyone at Western Wood?

22                         MR. CABOT:  Objection.  Vague.

23                         THE WITNESS:  No.

24                         MR. PFAEHLER:  Yeah, I've got an

25      objection as well, additional objections to Mr. Cabot's

```
 1        objection.

 2                        MR. GAUGHAN:  Okay.  Bear in mind, he

 3        did say no, so --

 4                        MR. PFAEHLER:  I know I'm coming in

 5        slow here.

 6   Q    (By Mr. Gaughan)  Do you know if Mr. Wu, he speaks

 7        English?  Do you know that?

 8   A    I don't know.

 9   Q    Have you exchanged email correspondence with him?

10   A    Yes.

11   Q    And those were in English?

12   A    Yes.

13   Q    And who are the people at Western Wood who were

14        responsible for communicating with BNBM?

15   A    Other than myself, Michelle Zaun and John Tortorelli.

16   Q    Okay.  Does anyone from Western Wood ever go to China?

17   A    No.

18   Q    And with respect to the various contracts and shipments

19        we discussed over the past two days involving BNBM and

20        CNBM Forest Products Canada Limited, do you know if any

21        of -- either of these companies has sent anyone to the

22        United States to observe your shipping of these actual

23        items to China?

24                        MR. CABOT:  Objection.  Vague.

25                        THE WITNESS:  Of the actual
```

```
 1     shipping --

 2  Q  (By Mr. Gaughan)  Yeah.

 3  A  -- no.  No.

 4  Q  How about to visit your tree farms or anything like that?

 5              MR. CABOT:  Same objection.

 6              THE WITNESS:  Yes.  We've had a

 7     representative from CNBM Forest Products Limited visit

 8     our log yard.

 9  Q  (By Mr. Gaughan)  Who was that?

10  A  Daniel.

11  Q  And was that during one of the visits we discussed

12     previously, where he came to your offices?

13  A  Yes.

14  Q  Okay.  And do you know when that was, that he actually

15     went out to the log yard?

16  A  Either late -- probably late second quarter 2014 or early

17     third quarter 2014.

18  Q  Do you have any knowledge of what compensation either

19     BNBM or CNBM Forest Products Canada would receive on any

20     of the agreements we looked at yesterday and today?

21              MR. CABOT:  Objection.  Vague.

22              MR. PFAEHLER:  Objection.  Compound.

23              THE WITNESS:  No.

24  Q  (By Mr. Gaughan)  And has anyone from BNBM ever told you

25     what they actually do with these logs once they're
```

Confidential - Subject to Further Confidentiality Review

```
 1        shipped to China?

 2    A   No.

 3    Q   Do you have any independent knowledge of what they do

 4        with the logs once they're shipped?

 5    A   No.

 6    Q   And how about with respect to the -- the logs that you

 7        would -- you sold to CNBM Forest Products Canada?  Do you

 8        have any knowledge of what they did with those logs once

 9        they received them?

10    A   Ye- -- yes.

11    Q   Okay.  What --

12    A   I mean, just based on the documents that we've looked at,

13        I do know those logs were shipped to a third party, an

14        independent party, not . . .

15    Q   Do you have a sense of the total compensation that you've

16        received on the various contracts and -- that we looked

17        at today and yesterday with respect to BNBM?

18                  MR. PFAEHLER:  Objection to form.

19        Objections to form.

20                  THE WITNESS:  Yes.

21    Q   (By Mr. Gaughan)  And what is that?

22    A   Just based on the time period in question.

23    Q   Yes, the stuff we looked at yesterday and today.

24    A   Yeah --

25                  MR. PFAEHLER:  Objection to form.
```

Confidential - Subject to Further Confidentiality Review

1                        THE WITNESS:  Over two -- $2 million.

2    Q   (By Mr. Gaughan)  And that's for BNBM; correct?

3    A   Yes.

4    Q   Okay.  And how about for CNBM Forest Products Canada

5        Limited?

6                        MR. CABOT:  Same objection as

7        Mr. Pfaehler.

8                        THE WITNESS:  1 to 1.5 million.

9    Q   (By Mr. Gaughan)  I take it you never actually -- you

10       would never actually provide any compensation to BNBM as

11       part of any of your business dealings with that entity;

12       is that correct?

13   A   Correct.

14   Q   And is the same also true for CNBM Forest Products Canada

15       Limited?

16                        MR. CABOT:  Objection.  Vague.

17                        THE WITNESS:  Correct.

18   Q   (By Mr. Gaughan)  And you have no current contracts with

19       either BNBM or CNBM Forest Products Canada Limited; is

20       that correct?

21                        MR. PFAEHLER:  Objection.  Compound.

22                        THE WITNESS:  Correct.

23   Q   (By Mr. Gaughan)  Do you have any outstanding obligations

24       on any of your prior contracts?

25                        MR. CABOT:  Objection.

Confidential - Subject to Further Confidentiality Review

```
 1                         THE WITNESS:  No.

 2   Q   (By Mr. Gaughan)  And are you aware of BNBM having any

 3       bank accounts or real property or other assets in the

 4       United States?

 5   A   No.

 6   Q   How about warehouse space?  Are you aware of any of that?

 7   A   No.

 8   Q   Are you aware of BNBM having any joint ventures with any

 9       other companies in the United States?

10   A   No.

11   Q   How about CNBM?  Are you -- CNBM Forest Products Canada

12       Limited, excuse me.  Are you aware of them having any

13       bank accounts or real property or other assets in the

14       United States?

15   A   No.

16   Q   Are you aware of them having any warehouse space,

17       anything like that?

18   A   No.

19   Q   How about any joint ventures that involve CNBM Forest

20       Products Canada Limited in the United States?

21                         MR. CABOT:  Objection --

22                         THE WITNESS:  No.

23                         MR. CABOT:  -- vague.

24   Q   (By Mr. Gaughan)  I think I touched on this with BNBM,

25       but not CNBM.  But when did you first hear of CNBM Forest
```

Confidential - Subject to Further Confidentiality Review

```
 1        Products Canada Limited?

 2                     MR. CABOT:  Objection.  Are you asking

 3        for his knowledge or the company's knowledge?

 4                     MR. GAUGHAN:  Well, he's a 30(b)(6)

 5        witness, so --

 6                     THE WITNESS:  Late --

 7                     MR. PFAEHLER:  That doesn't clarify

 8        the objection, but -- sorry.

 9                     MR. GAUGHAN:  Well, it's for the

10        company.

11                     THE WITNESS:  Late second quarter,

12        early third quarter 2014.

13   Q    (By Mr. Gaughan)  And do you have -- is there a primary

14        contact person at CNBM Forest Products Canada Limited

15        that you're aware of with Western Wood?

16                     MR. CABOT:  Objection.  Vague.

17                     THE WITNESS:  Yes.

18   Q    (By Mr. Gaughan)  And who would that be?

19   A    Daniel.

20   Q    Anyone else that -- at CNBM Forest Canada Limited that

21        your company would communicate with?

22   A    No.

23   Q    We did talk about Alan Brunstad, but is he -- you don't

24        understand him to be an employee of CNBM Forest Products

25        Canada Limited?
```

Confidential - Subject to Further Confidentiality Review

```
 1                         MR. CABOT:  Objection.  Lack of

 2       personal knowledge and --

 3                         THE WITNESS:  I don't believe he's an

 4       employee.

 5                         MR. CABOT:  -- asked and answered.

 6    Q  (By Mr. Gaughan)  Do you have any understanding of what

 7       the parent corporation of CNBM Forest Products Canada

 8       Limited is?

 9    A  No.

10    Q  And that's -- that information has never been brought to

11       your attention?

12    A  That's correct.

13    Q  And we discussed some individuals at your company that

14       would have communicated with BNBM.  Are these the same

15       individuals who would have been responsible for

16       communicating with people at CNBM Forest Products Canada

17       Limited?

18                         MR. PFAEHLER:  Objection to form.

19                         THE WITNESS:  Yes.

20    Q  (By Mr. Gaughan)  And during the period of time that

21       you've been -- or Western Wood has been doing business

22       with BNBM, are you ever aware of anyone at BNBM ever

23       advising that Chinese secrecy laws prevent them from

24       sharing information with Western Wood?

25    A  No.
```

Confidential - Subject to Further Confidentiality Review

```
 1                         MR. PFAEHLER:  Objection.

 2                         MR. CABOT:  Yeah.

 3    Q    (By Mr. Gaughan)  And same question with respect to CNBM

 4         Forest Products Canada Limited.  Are you aware of anyone

 5         at CNBM Forest Products Canada Limited ever advising

 6         anyone at Western Wood that Chinese secrecy laws prevent

 7         them from sharing information?

 8                         MR. PFAEHLER:  Objection.

 9                         MR. CABOT:  Multiple objections to

10         form.

11                         THE WITNESS:  No.

12    Q    (By Mr. Gaughan)  Have you had any discussions with

13         anyone at BNBM regarding your deposition?

14    A    No.

15    Q    How about anyone at CNBM Forest Products Canada Limited?

16    A    No.

17    Q    Are you aware of anyone from either of those two

18         companies contacting your attorney?

19    A    No.

20    Q    Okay.  Are you aware of counsel from either party

21         contacting your attorney?

22    A    No.

23    Q    During your business dealings with BNBM, were you ever

24         advised by BNBM that there -- a federal judge had issued

25         a contempt order that potentially impacted their ability
```

Confidential - Subject to Further Confidentiality Review

```
 1        to do business with Western Wood?

 2                        MR. CABOT:  Objection.

 3                        MR. PFAEHLER:  Objections to form.

 4                        MR. CABOT:  And calls for a legal

 5        conclusion.

 6                        THE WITNESS:  No.

 7    Q   (By Mr. Gaughan)  Okay.  Did they ever inform you that a

 8        federal judge had issued a contempt order that might

 9        impact BNBM?

10                        MR. PFAEHLER:  Oh, plea- -- objection.

11                        THE WITNESS:  No.

12    Q   (By Mr. Gaughan)  Did they ever discuss a contempt order

13        at all with anyone at Western Wood?

14                        MR. PFAEHLER:  Objection.

15                        THE WITNESS:  No.

16    Q   (By Mr. Gaughan)  And how about CNBM Forest Products

17        Canada Limited?  Did anyone from that company ever advise

18        Western Wood that a federal judge had issued a contempt

19        order that potentially impacted their ability to do

20        business in the United States?

21                        MR. CABOT:  Same objections.

22                        THE WITNESS:  No.

23    Q   (By Mr. Gaughan)  Did they ever advise you that a federal

24        judge had issued a contempt order at all?

25    A   No.
```

Confidential - Subject to Further Confidentiality Review

```
 1   Q   And we've looked at various contracts and -- as well as

 2       shipping documents during your deposition, both today and

 3       yesterday; is that correct?

 4   A   Yes.

 5   Q   Is it fair to say that all of those contracts and

 6       shipping documents involved the shipment of -- excuse

 7       me -- of logs from the United States to China?

 8   A   Yes.

 9   Q   And with respect to all the contracts that we looked at

10       and shipping documents, all of those documents either

11       identified BNBM as a -- as a party to those documents or

12       China National Building -- or CNBM Forest Products Canada

13       Limited; is that correct?

14                   MR. PFAEHLER:  That's actually not

15       accurate.  Multiple objections to form, and directly

16       mischaracterizes documents we've looked at even this

17       morning.

18   Q   (By Mr. Gaughan)  And you can answer that.

19                   MR. PFAEHLER:  Oh, come on.  Can't you

20       ask a proper question?  Seriously.  We looked at -- we

21       looked at documents that have nothing to do with BNBM,

22       and you know it.  And now you're asking him to say

23       everything had to do with BNBM or CNBM.

24          We're going to be asking him in a minute about the

25       exact documents that -- that you asked him this morning
```

Confidential - Subject to Further Confidentiality Review

```
1       that have nothing to do with these two companies.

2   Q   (By Mr. Gaughan)  Can you answer the question?

3                       MR. PFAEHLER:  It's a completely

4       improper question.

5                       THE WITNESS:  Yes.

6                       MR. PFAEHLER:  I don't know that

7       anyone could answer that.

8                       MR. GAUGHAN:  And I'll pass the

9       witness.

10                          EXAMINATION

11      BY MR. PFAEHLER:

12  Q   Let's look at Exhibit 53, just to follow -- no.  Let's

13      start with 58.  We'll follow up with a question that --

14      that Mr. Gaughan just asked you a minute ago.

15                      MR. GAUGHAN:  Where are we at?

16                      MR. PFAEHLER:  58.

17  Q   (By Mr. Pfaehler)  Let me know when you have that in

18      front of you, Mr. Salamanca.

19  A   Yes.

20  Q   Mr. Salamanca, would you look at the -- at Page 116?

21  A   Okay.

22  Q   And we looked at this document, and this involved a

23      commission that was being wired by Western Wood to Jesse

24      Wu; is that correct?

25  A   I don't know if it went to Jesse Wu.
```

Confidential - Subject to Further Confidentiality Review

```
 1   Q   Well, let's go back to the first page then.  Let's look

 2       at Page 114.

 3   A   Okay.

 4   Q   This is a contract from your business -- I'm sorry --

 5       this is an email from your business records; correct?

 6   A   Yes.

 7   Q   And in this email, does Jesse email John and Michelle at

 8       Western Wood and say, "Please check the attached

 9       commission 10.  It is appreciated you can arrange it.

10       Thank you.  Best regards, Jesse"?

11           Did he write that?

12   A   Yes.

13   Q   And did John Tortorelli -- do I have that right?

14   A   Tortorelli.

15   Q   Tortorelli.  Thank you.

16           Did John email Jesse Wu on January 6th and say, "Hi,

17       Jesse.  We wired your commission payment today.  Happy

18       New Year"?

19                   MR. GAUGHAN:  Objection to form.  The

20       document speaks for itself.

21                   MR. PFAEHLER:  That's an interesting

22       objection for you to make after two days of asking these

23       questions.

24                   MR. GAUGHAN:  Well, it's ironic,

25       Counsel, because you're doing the same thing right now.
```

```
 1                    MR. PFAEHLER:  Well, I have to do it,

 2      Counsel, because you just mischaracterized this document

 3      in the very last question you asked.  And the witness is

 4      having some confusion, so we're going to walk through the

 5      document.  That's a very different use of the documents

 6      than you've been doing.

 7   Q  (By Mr. Pfaehler)  Now, Mr. Salamanca, I'm sorry for that

 8      exchange between counsel that you had to hear.

 9          Did Mr. Tortelli -- Tortorelli, sorry, email Mr. Wu

10      on January 6th and say, "We wired your commission payment

11      today"?

12   A  Yes.

13   Q  And do you believe that in fact Mr. Tortorelli wired that

14      commission payment on January 6th?

15   A  Yes.

16   Q  Now, can we turn to Page 116.  Can you tell me what

17      Page 116 is?

18   A  These are instructions as to where the wire payment is to

19      be made to.

20   Q  To be made to or to be made from?

21   A  Well, who -- who's -- who -- who the beneficiary is for

22      the wire payment.

23   Q  Who's the beneficiary for the wire payment here?

24   A  The name -- first name is L-i-u, last name is

25      Q-i-u-m-e-i.
```

Confidential - Subject to Further Confidentiality Review

```
1   Q   And who is L-i-u, Q-u -- Q-i-u-m-e-i?

2   A   That name, I don't know.

3   Q   And this wire is being sent to the Agricultural Bank of

4       China, Shanghai branch; right?

5   A   Yes.

6   Q   And we've looked at BNBM letters of credit, and they're

7       all from a bank called DBS; correct?

8                       MR. GAUGHAN:  Object to form.

9                       THE WITNESS:  Correct.

10  Q   (By Mr. Pfaehler)  You have no reason to believe that the

11      Agricultural Bank of China, Shanghai branch, has anything

12      to do with BNBM, do you?

13                      MR. GAUGHAN:  Object to form.

14                      THE WITNESS:  Correct.

15  Q   (By Mr. Pfaehler)  You have no reason to believe that

16      BNBM holds an account there, do you?

17  A   Correct.

18  Q   You have no reason to believe that this commission

19      payment has anything to do with BNBM, do you?

20                      MR. GAUGHAN:  Object to form.

21                      THE WITNESS:  Correct.

22  Q   (By Mr. Pfaehler)  In fact, Mr. Wu represents a number of

23      Chinese businesses in their dealings with Western Wood;

24      isn't that correct?

25                      MR. GAUGHAN:  Objection to form.
```

Confidential - Subject to Further Confidentiality Review

```
 1      Mischaracterizes the testimony.

 2                      THE WITNESS:  Can you --

 3   Q  (By Mr. Pfaehler)  I'm asking a question.  Let me ask it

 4      a different way.

 5                      MR. GAUGHAN:  Sure.

 6   Q  (By Mr. Pfaehler)  I'll make this very clean.

 7          Does Mr. Wu represent businesses other than BNBM in

 8      his dealings with Western Wood?

 9   A  Yes.

10   Q  And in fact, if we could turn to Exhibit 53.  Do you have

11      that in front of you?

12   A  Yes, I do.

13   Q  Exhibit 53 refers to contract with a company called

14      Sumec; correct?

15   A  Yes.

16   Q  Sumec is a bulk commodities trader, isn't it?

17                      MR. GAUGHAN:  Object to form.

18                      THE WITNESS:  I don't know.

19   Q  (By Mr. Pfaehler)  Confused about that?  Do you know who

20      Sumec is?  What's your understanding of who Sumec is?

21   A  Well, they're another customer of ours.

22   Q  Yeah.  And they have nothing to do with BNBM; right?

23                      MR. GAUGHAN:  Object to form.  Lacks

24      foundation.

25                      THE WITNESS:  Correct.
```

Confidential - Subject to Further Confidentiality Review

```
 1   Q   (By Mr. Pfaehler)  I'm going to -- I'm going to show you,

 2       Mr. Salamanca, Sumec's website.

 3   A   Okay.  Well, based on this email -- based on that email,

 4       John was explaining to Jesse that Sam at Sumec was

 5       inquiring about Douglas fir.

 6   Q   Right.

 7   A   The same type of wood Jesse was inquiring about.

 8   Q   Yes.  And in fact -- let's go to --

 9                   MR. PFAEHLER:  Let's mark as

10       Exhibit -- what are we at?

11                   THE COURT REPORTER:  59.

12                   MR. PFAEHLER:  -- a group of emails.

13       It bears pages Western Wood 1 through Western Wood 85.

14                       (Exhibit No. 59 marked for

15                        identification.)

16   Q   (By Mr. Pfaehler)  Mr. Salamanca, before we go there, let

17       me show you a page.  This bears -- for the record, the

18       website is http://en.sumec -- S-u-m-e-c --

19       .com/html/2014/smyfw404/11.html.

20           And it says, "Bulk commodity trade," and identifies

21       one of the areas that Sumec bulk commodity trades in as

22       logs?

23                   MR. GAUGHAN:  And I'm going to raise

24       an objection to showing the witness a third-party website

25       that he has no knowledge of.
```

Confidential - Subject to Further Confidentiality Review

```
1   Q   (By Mr. Pfaehler)  Do you have any reason to believe that

2       the representation on this website by Sumec that they do

3       log imports is incorrect?

4   A   Say that --

5   Q   Do you have any reason to believe that Sumec, as they

6       represent, is not in the business of the bulk commodity

7       trade of, among other things, logs?

8   A   I'm --

9   Q   Do you have any reason to believe that Sumec does not

10      engage in the bulk importation of logs from the United

11      States?

12  A   Based on --

13                    MR. GAUGHAN:  Object to form.

14                    THE WITNESS:  Based on the website?

15  Q   (By Mr. Pfaehler)  Yes.  Any reason to believe that

16      website is inaccurate?

17  A   No.  I -- pretty accurate.

18                    MR. CABOT:  And, Counsel, I typed down

19      the Web address, but I think I may have gotten it wrong.

20                    MR. PFAEHLER:  I will give it again.

21                    MR. CABOT:  Sure.  Thanks.

22                    MR. PFAEHLER:

23      http://en.sumec.com/html/2014/smyfw_0404/11.html.

24                    MR. CABOT:  That time it worked.

25      Thanks.
```

Confidential - Subject to Further Confidentiality Review

1                    MR. PFAEHLER:  I might have had it

2      wrong the first time.

3   Q  (By Mr. Pfaehler)  Let's look at what we've marked -- was

4      that Exhibit 59?  Let's look at 59, and if you could turn

5      to Page 22.

6           And if you look at the top of Page 22, do you see an

7      email from Jesse to Western Wood?

8   A  Yes.

9   Q  And was that -- that email was sent, to your

10     understanding, to Mr. Tortorelli?

11  A  Yes.

12  Q  Am I pronouncing that right this time?

13  A  Yes.

14  Q  Thank you.

15          And do you see he says, "Hi, John, if Sam shi wants

16     to get some small DF to other ports I can accept.

17     Normally 200 cans per month to Shanghai is enough.  If I

18     want more I'll let you know in advance"?

19  A  Yes.

20  Q  And could you turn to -- can you turn to what was marked

21     as Exhibit 45, sir.

22  A  Okay.

23  Q  And this is an email exchange between Jesse Wu and

24     Michelle Zaun, to your understanding?

25  A  What was the number?  I'm sorry.

Confidential - Subject to Further Confidentiality Review

1    Q    I'm sorry.  45 is what I wrote down.

2    A    Yeah, that's --

3                         MR. CABOT:  I think -- do you mean 43?

4                         MR. PFAEHLER:  It's --

5                         MR. CABOT:  That's 43.

6                         MR. PFAEHLER:  Let me try again.

7                         THE WITNESS:  Okay.

8    Q    (By Mr. Pfaehler)  Can you look at Exhibit 43.

9    A    Okay.  43.

10   Q    Thank you.

11        Do you see an email exchange between Mr. Wu and

12       Ms. Zaun?

13   A    Yes.

14   Q    And do you see he says, "Sorry, I am afraid that BNBM

15       can't issue this week on time, and you will have no LC

16       for loading.  So I let Shanghai Su Sen International

17       issue 100 cans first"?

18   A    Yes.

19   Q    And can you tell me who Shanghai Su Sen International

20       Trade Company is?

21   A    They are another customer of ours.

22   Q    And are you aware of any connection between them and

23       BNBM?

24   A    No.

25                         MR. GAUGHAN:  Object to form.

1    Q    (By Mr. Pfaehler)  And they are issuing a separate letter

2         of credit, separate from BNBM's; correct?

3                        MR. GAUGHAN:  Object to form.

4                        THE WITNESS:  Yes.

5    Q    (By Mr. Pfaehler)  Can you go in Exhibit 59,

6         Mr. Salamanca --

7    A    Okay.

8    Q    -- for the big one I marked, can you turn to Page 63 with

9         me.

10   A    Okay.

11   Q    And can you tell me what Jesse is emailing Michelle about

12        in that email that's at the bottom of the page, sent on

13        February 12th at 4:58?  That's February 12, 2015, for the

14        record.

15   A    Oh, these are documents that were going from our bank,

16        U.S. Bank, to the China bank listed on each of these --

17        the three -- or the two particular -- to each of the

18        banks listed on each of these bookings.

19   Q    And these involve two different customers of Mr. Wu's, is

20        that correct, Sheng Wosheng and BNBM?

21   A    Yes.

22   Q    And --

23                        MR. GAUGHAN:  I'm going to object to

24        the form of that last question.

25   Q    (By Mr. Pfaehler)  Is Sheng Wosheng a short name for

Confidential - Subject to Further Confidentiality Review

1    China National Forest Products Company Shanghai Sheng

2    Wosheng?

3  A  Not that I'm aware.

4  Q  Do you believe it refers to some other company?

5  A  No.  I -- to me, Sheng Wosheng is the company.

6  Q  And do you have any reason to believe that Sheng Wosheng

7    has anything to do with BNBM?

8                    MR. GAUGHAN:  Object to form.

9                    THE WITNESS:  No.

10  Q  (By Mr. Pfaehler)  Mr. Salamanca, a couple times in your

11    deposition you referred to Mr. Wu as an employee of BNBM.

12    Do you have any reason to believe that he's employed

13    and -- as an employee of BNBM Group?

14  A  As BNBM Group.  That's --

15  Q  As somebody who's actually employed by and goes to work

16    every day for --

17  A  Oh.

18  Q  -- simply one employer, BNBM Group, BNBM PLC, or any

19    related entity?

20                    MR. GAUGHAN:  Object to form.

21                    THE WITNESS:  That's always been my

22    understanding.

23  Q  (By Mr. Pfaehler)  Do you believe you may have a

24    different understanding, having looked at a number of

25    emails this morning, where, for example, Mr. Wu is being

Confidential - Subject to Further Confidentiality Review

```
 1        issued a commission on something that does not appear to

 2        have anything to do with BNBM?

 3                    MR. GAUGHAN:  Object to form.

 4                    THE WITNESS:  It's possible.

 5   Q    (By Mr. Pfaehler)  And the fact that he is representing

 6        or dealing with Western Wood on behalf of both Sheng

 7        Wosheng and BNBM, would that suggest to you he's not an

 8        employee of BNBM?

 9                    MR. GAUGHAN:  Object to form.

10                    THE WITNESS:  It's possible.

11   Q    (By Mr. Pfaehler)  Do you have any knowledge that he is

12        employed by BNBM?

13   A    No.

14   Q    What was the basis for your testimony that he was

15        employed by BNBM?

16   A    Conversation -- conversation with Michelle and John --

17        Michelle Zaun and John Tortorelli.

18   Q    And what did Michelle Zaun and John Tortorelli tell you?

19   A    That they've always -- it's always been their

20        understanding that he's -- Jesse's been an employee at

21        BNBM.

22   Q    And what did they say was the basis for their

23        understanding?

24                    MR. GAUGHAN:  Object to form.

25                    THE WITNESS:  Just our standing
```

```
 1      relationship with BNBM.

 2   Q  (By Mr. Pfaehler)  Did Jesse ever tell you or Mr. Wu --

 3      I'm sorry, ever tell you, Mr. Salamanca, that he was an

 4      employee of BNBM?

 5   A  I don't think so.  I -- looking at the emails, I haven't

 6      seen it.

 7   Q  Have -- has Mr. Wu ever come here to the United States to

 8      meet with you?

 9   A  No.

10   Q  And have you ever gone to China or to Hong Kong or

11      Shanghai or anywhere to meet with him?

12   A  No.

13   Q  Do you speak with Mr. Wu on the phone?

14   A  No.  Mr. Tortorelli might.  I'm not -- I know he --

15      Mr. Tortorelli speaks to a couple of our Chinese people,

16      but I don't know if Jesse's one of them.

17   Q  Right before I started questioning, Mr. Gaughan asked you

18      whether all the documents that you were looking at this

19      morning had to do with timber contracts with BNBM and

20      CNBM, and you answered yes, and I was objecting.  I

21      thought the question was confusing, and maybe misleading.

22         We've just looked at a number --

23                     MR. GAUGHAN:  Move to strike.

24   Q  (By Mr. Pfaehler)  -- of documents --

25                     MR. PFAEHLER:  I oppose your motion.
```

Confidential - Subject to Further Confidentiality Review

```
1   Q   (By Mr. Pfaehler)  We've just looked at a number of

2       documents that -- make sure we have a nice clean question

3       here.

4                       MR. GAUGHAN:  Go ahead.

5   Q   (By Mr. Pfaehler)  New question for you, Mr. Salamanca.

6       We've looked at a number of documents just in the

7       last few minutes that don't have to do with BNBM.  They

8       have to do with Sumec and Sheng Wosheng and --

9                       MR. GAUGHAN:  Object to form.

10  Q   (By Mr. Pfaehler)  -- Shanghai Su Sen.

11      Those have nothing to do with timber contracts with

12      BNBM or CNBM, do they?

13                      MR. GAUGHAN:  Object to form.

14                      THE WITNESS:  That's correct.

15  Q   (By Mr. Pfaehler)  Do you know a company called Hanton,

16      H-a-n-t-o-n?

17  A   H-a-n-t-o-n, no.  I'm familiar with H-o-n-t-o-n.

18  Q   Thank you.  That's what I meant to say.

19  A   Oh, okay.

20  Q   I'm -- I must be tired this morning.  I need more coffee.

21      So thank you.

22      Can you tell me what Honton -- is that the way to

23      say it, H-o-n-t-o-n?

24  A   Yes.

25  Q   Is that a word for today?  -- what Honton is?
```

Confidential - Subject to Further Confidentiality Review

1   A   I know a company in China.  I know we've issued documents

2       to them before.

3   Q   And you've sold timber to that company through Mr. Wu;

4       correct?

5                   MR. GAUGHAN:  Object to form.  Lacks

6       foundation.

7                   THE WITNESS:  It -- I don't know

8       who -- who brokered the deal.

9   Q   (By Mr. Pfaehler)  Well, can you turn -- Counsel's

10      objected that there isn't foundation.  I think there's

11      some confusion on your part as well.  So let's turn in 59

12      to Page 9.

13                  MR. GAUGHAN:  Page what?  I'm sorry.

14                  MR. PFAEHLER:  9.  09.

15  Q   (By Mr. Pfaehler)  And if you could just look at Pages 9

16      and 10, Mr. Salamanca, and tell me when you've had a

17      minute to do that.

18  A   Yes, I've looked.

19  Q   Okay.  What do these pages refer to, sir, these emails?

20  A   An exchange between Jesse and Western Wood regarding

21      documents.

22  Q   And these are documents for a sale of logs to Honton?

23  A   Yes.  Yes, the sale was to Honton.  And it looks like

24      Honton held them -- took possession in LC to customers in

25      Qingdao.  But the -- Western Wood, the sale was to

Confidential - Subject to Further Confidentiality Review

1        Honton.

2    Q   In the Exhibit 59, these -- and to your knowledge, Honton

3        has nothing to do with BNBM, does it?

4                      MR. GAUGHAN:  Object to form.

5                      THE WITNESS:  Yes, that's correct.

6    Q   (By Mr. Pfaehler)  Now, Exhibit 59 is an 85-page

7        collection of emails, and by my count, out of those 85

8        pages, only Pages 63 and 66 reference BNBM at all, or

9        CNBM.  Is that correct?

10                     MR. GAUGHAN:  I'm going to object to

11       form.  The document speaks for itself.

12                     THE WITNESS:  Correct.

13   Q   (By Mr. Pfaehler)  Thank you.

14           If we could turn to what Mr. Gaughan marked, if I

15       wrote it down right this time, as Western Wood 55, which

16       I have as an email with two attachments bearing Bates

17       Nos. 230 to 232.

18   A   Okay.

19   Q   Now, this was an email that Mr. Wu sent to Michelle Zaun

20       on July 17, 2014; is that correct?

21   A   July 14.

22   Q   I'm sorry.  Thank you.  That's an important correction.

23       I appreciate that.

24           July 14, 2014?

25   A   Yes.

Confidential - Subject to Further Confidentiality Review

```
 1   Q   And he was forwarding two offer sheets; is that correct?

 2   A   Yes.

 3   Q   And the first offer sheet is for the -- an offer to

 4       Beijing New Building Materials Co. Limited of American

 5       soft wood round logs, Douglas fir, 300 MBF, at 1005 per

 6       MBF, total of $301,500; correct?

 7   A   Yes.

 8   Q   What was the offer issue date for that?

 9   A   June 13, 2014.

10   Q   And what was the offer expiration date for that?

11   A   June 20, 2014.

12   Q   Now, Mr. Wu was forwarding this offer sheet to Michelle

13       on July 14th to provide her with a contract number; is

14       that correct?

15   A   Yes.

16   Q   And the same goes for Page 232, which was an offer with

17       Contract No. CZY0604?

18   A   Correct.

19   Q   And what was the issue date for that offer?

20   A   June 13, 2014.

21   Q   And what was the expiration date for that offer?

22   A   June 20, 2014.

23   Q   And in that contract, CZY0604, that was a contract that

24       was made in between June 13th and June 20, 2014; correct?

25   A   Yes.
```

Confidential - Subject to Further Confidentiality Review

```
1   Q   And Contract CZY0603, that was a contract that was made

2       between June 13th and June 20, 2014; correct?

3   A   Yes.

4                   MR. GAUGHAN:  I'm going to object on

5       the grounds that this document speaks for itself.

6           Can I just have a continuing objection on that

7       basis?

8                   MR. PFAEHLER:  No.  I'll actually

9       request that you make your objections --

10                  MR. GAUGHAN:  Okay.

11                  MR. PFAEHLER:  -- as we go along --

12                  MR. GAUGHAN:  I will do that.

13                  MR. PFAEHLER:  -- so I can respond to

14      them if I need to.

15                  MR. GAUGHAN:  Okay.

16                  MR. PFAEHLER:  Thank you, Counsel.

17                  MR. GAUGHAN:  Sounds good.

18  Q   (By Mr. Pfaehler)  Now, as we look at CZY0603, the

19      payment term calls for an irrevocable 100 percent letter

20      of credit; is that correct?

21  A   Correct.

22                  MR. GAUGHAN:  Objection.  The document

23      speaks for itself.

24  Q   (By Mr. Pfaehler)  Why does Western Wood require an

25      irrevocable letter of credit in such a contract?
```

Confidential - Subject to Further Confidentiality Review

```
 1   A    That's just the way that U.S. Bank has informed us when

 2        setting up letter of credits.

 3   Q    Why does Western Wood like to have a letter of credit

 4        when it sells timber to China?

 5                  MR. GAUGHAN:  Object to form.

 6                  THE WITNESS:  To -- well, to us, it

 7        just confirms that the customer's bank has, you know, I

 8        guess backed the customer's demand for -- for money, and

 9        then once we get the approval -- or once our bank, U.S.

10        Bank, gets the approval, they review the letter of

11        credit.  And if they agree to it, then -- then we feel

12        pretty confident that that's -- that an order has been

13        executed and that we can start loading off that order.

14   Q    (By Mr. Pfaehler)  And is it true that Western Wood

15        relies on letters of credit in international transactions

16        because, as long as the documents it produces to the bank

17        are facially valid, that letter of credit will be paid

18        and those documents are presented, and you get the money,

19        and the buyer can't stop that payment from being made; is

20        that correct?

21                  MR. GAUGHAN:  Object to form.

22                  THE WITNESS:  Correct.  That's the

23        reason why we like letter of credits.

24   Q    (By Mr. Pfaehler)  Because, that way, you don't have to

25        worry once a contract is formed, and you've got timber
```

Confidential - Subject to Further Confidentiality Review

```
 1        coming in, and you're loading timber on ships, about

 2        whether you'll be paid or not; right?

 3                      MR. GAUGHAN:  Object to form.

 4                      THE WITNESS:  Yes.

 5    Q   (By Mr. Pfaehler)  The buyer no longer controls the

 6        process, as long as you present facially valid documents;

 7        correct?

 8    A   Correct.

 9    Q   Nothing the buyer can do to stop that payment if the

10        documents you produce are facially valid; correct?

11                      MR. GAUGHAN:  Object to form.

12                      THE WITNESS:  Correct.

13    Q   (By Mr. Pfaehler)  Now, we looked at -- if we could go

14        all the way back to Exhibit 2.  But if you could keep

15        out --

16    A   Oh.

17    Q   -- Exhibit -- yeah, I'm going to ask you to sort of line

18        these up next to each other, if that's all right.

19            So Exhibit 2 is the offer sheet executed by BNBM;

20        correct?

21    A   Yes.

22    Q   And those were not actually forwarded on to you.  They

23        don't form part of the business records of Western Wood,

24        do they?

25                      MR. GAUGHAN:  Object to form.
```

Confidential - Subject to Further Confidentiality Review

1                        THE WITNESS:  This --

2                        MR. PFAEHLER:  Let me try to ask a

3       better question.  That was a better question.

4    Q   (By Mr. Pfaehler)  The countersigned document that we're

5        looking at as Exhibit 2 was not forwarded to BN- -- to

6        Western Wood, was it?

7    A   Correct.

8                        MR. GAUGHAN:  Object to form.

9    Q   (By Mr. Pfaehler)  That doesn't form part of your

10       business records, does it?

11   A   No.  This was the -- yesterday was the first I have seen

12       this document.

13   Q   Thank you.

14                       MR. GAUGHAN:  Object to form of the

15       last question.

16   Q   (By Mr. Pfaehler)  But this document is the same contract

17       that was entered into between June 13th and June 20,

18       2014, that we looked at, at Page 231; correct?

19   A   Yes.

20   Q   And if we could look at Exhibit 16.  Exhibit 16 is the

21       letter of credit that was issued in connection with that

22       same contract; is that correct?

23   A   Correct.

24   Q   Can you tell me --

25                       MR. GAUGHAN:  Object to form.

Confidential - Subject to Further Confidentiality Review

```
1    Q    (By Mr. Pfaehler)  -- when that letter of credit was

2         issued?

3    A    July 2, 2014.

4                        MR. GAUGHAN:  Object to the form.

5         Document speaks for itself.

6    Q    (By Mr. Pfaehler)  And it's an irrevocable letter of

7         credit?

8    A    Yes.

9    Q    Now let's turn to what Mr. Gaughan marked yesterday as

10        Exhibit 18.  And if I could ask you to turn to Page 454

11        in that exhibit.

12   A    Okay.

13   Q    This is an invoice that is delivered to the bank to draw

14        on the letter of credit that we looked at as Exhibit 16;

15        correct?

16   A    Correct.

17                        MR. GAUGHAN:  I don't mean to

18        interrupt, but what page are we on?

19                        MR. PFAEHLER:  I'm sorry.  Yeah,

20        calling attention to Page 454.

21                        MR. GAUGHAN:  Okay.  Thank you.

22                        MR. PFAEHLER:  Exhibit 18.

23   Q    (By Mr. Pfaehler)  And are you there with me?

24   A    Yes --

25                        MR. GAUGHAN:  Yes.
```

Confidential - Subject to Further Confidentiality Review

1                         THE WITNESS:  Yes.

2   Q   (By Mr. Pfaehler)  And this is an invoice that's prepared

3       and provided to the bank to draw on the letter of credit;

4       right?

5   A   Yes.

6                         MR. GAUGHAN:  Object to form.

7   Q   (By Mr. Pfaehler)  And when you look at -- can you look

8       at the column "Payment Terms."

9           Do you see that?

10  A   Yes.

11  Q   And there's a number in there.

12          Do you see that?

13  A   Yes.

14  Q   Is that the letter of credit number for the letter of

15      credit that's Exhibit 16?

16  A   Yes.

17                        MR. GAUGHAN:  Object to form.

18      Document speaks for itself.

19  Q   (By Mr. Pfaehler)  And is that how this invoice was paid?

20  A   Yes.  It drew off the letter of credit.

21  Q   Thank you.

22          This invoice was not delivered to BNBM; correct?  It

23      was delivered to the bank to draw on the letter of

24      credit?

25  A   Yes.

Confidential - Subject to Further Confidentiality Review

```
 1                        MR. GAUGHAN:  I object to the form of

 2      the last question.

 3   Q  (By Mr. Pfaehler)  You know, Mr. Gaughan asked a few

 4      questions about -- looking at invoices, more probable

 5      than not just this one, but a number of them.  And we

 6      looked at the invoices, and he asked you, with respect to

 7      them, when shipments were made.

 8   A  Yes.

 9   Q  And on this invoice, I believe your testimony -- anyone

10      can correct me if I get this wrong -- was that the

11      shipment was made on or about July 23, 2014?

12                        MR. GAUGHAN:  I'm just going to put an

13      objection here.  Obviously his prior testimony speaks for

14      itself, but I'll allow you to ask the question.

15                        MR. PFAEHLER:  Yeah, and fair

16      objection if I mischaracterize -- in fact, let me ask

17      this.

18   Q  (By Mr. Pfaehler)  There's a couple dates on this

19      invoice.  Because I don't want to get into a mess if I've

20      got your testimony from yesterday wrong, and goodness

21      knows I'm a little tired this morning.

22          But as you look at this, there's a couple dates that

23      have to do with shipping and arrival; correct?

24   A  Yes.

25   Q  And ETD you testified yesterday was the estimated time of
```

Confidential - Subject to Further Confidentiality Review

1       departure; is that right?

2    A  Correct.

3    Q  It's not the actual time of departure on any of these

4       invoices, is it?

5    A  No.  That's correct.

6    Q  It might be, but it might not be; correct?

7    A  Correct.

8    Q  And the invoice date says July 19, 2014; right?

9    A  Yes.

10   Q  That's not a date that tells you that you know the

11      shipment was made on that date, is it?

12   A  That's correct.

13   Q  Okay.  When Mr. Gaughan was showing you invoices

14      yesterday and asking you about when goods had shipped,

15      were you basing your answers simply on the dates of the

16      invoice or the estimated time of departure date?

17                      MR. GAUGHAN:  Object to form.

18                      THE WITNESS:  Yes.

19   Q  (By Mr. Pfaehler)  And you weren't testifying that you

20      actually knew goods were put on a ship and sent on any

21      particular date, were you?

22                      MR. GAUGHAN:  Object to form.

23                      THE WITNESS:  Not -- not specific

24      dates.

25   Q  (By Mr. Pfaehler)  You would expect, in the ordinary

Confidential - Subject to Further Confidentiality Review

```
 1      course, that the date of shipping could be -- would be

 2      sometime, in some range, around the dates that are stated

 3      on the invoice; right?

 4                      MR. GAUGHAN:  Object to form.

 5                      THE WITNESS:  Correct.

 6   Q  (By Mr. Pfaehler)  But you don't actually know when the

 7      goods were loaded on a ship and when the ship sailed, do

 8      you?

 9                      MR. GAUGHAN:  Object to form.

10                      THE WITNESS:  Specifically, no.  I --

11      yeah.  I mean, the invoice date is usually the last

12      date -- is the date that the last container was sent to

13      the port.  From there, it's the port's discretion when

14      they load the containers on the vessels.

15   Q  (By Mr. Pfaehler)  Do you prepare the invoices,

16      Mr. Salamanca?

17   A  Yes.

18   Q  What triggers your preparation of an invoice?

19   A  So for this particular example, once we -- once we

20      know -- we load all the containers, we scan all the data,

21      and that gets transmitted to the -- Northwest Log

22      Scalers, which is -- you'll see their name on Page 447.

23          And they provide the -- provide us with a summary of

24      the containers for this particular booking, the container

25      number logs.  And once these summaries come in, that
```

```
 1        triggers us to start the process of providing the

 2        invoices.

 3   Q    And you don't actually know -- you're assuming that the

 4        Northwest Log Scalers' manifest is accurate, but you

 5        don't know that for a fact, do you?

 6                      MR. GAUGHAN:  Object to form.

 7                      THE WITNESS:  Oh, there -- it's

 8        accurate because we keep track.  Also we know which

 9        containers -- we write down the containers.  We know

10        which containers the drivers haul to the port and which

11        booking they belong to.

12   Q    (By Mr. Pfaehler)  So you have a way to check?

13   A    We double-check everything, yes.

14   Q    And is there a record in here that would show that in

15        the -- in here, I mean within, say, Exhibit 18?

16   A    To confirm --

17   Q    Yeah.

18   A    No.  There's no record.  I mean, if you want to -- the --

19        so the Northwest Log Scaling, on Page 447, that matches

20        up with Page 452, which is the manifest -- the bill of

21        lading from the -- the container company, Yang Ming.  So

22        you will -- you will find each container on Page 447, the

23        same as Page 452.

24   Q    They line up together.

25   A    Yes.
```

1    Q    Say, let me ask you to look for a second, it should be

2         right there in your pile, at Exhibit 17, that Mr. Gaughan

3         showed you yesterday.

4    A    Okay.

5    Q    And if you could turn to Page 440 of that.  And this is

6         another invoice that you prepared to provide to the bank

7         to go on the letter of credit?

8    A    Yes.

9                        MR. GAUGHAN:  And what was the -- I'm

10        sorry; what was the document number again?

11                       MR. PFAEHLER:  Yes.  Exhibit 17,

12        Page 440.

13                       MR. GAUGHAN:  Thank you.

14                       MR. PFAEHLER:  You need a minute to

15        get there?

16                       MR. GAUGHAN:  No.  You can proceed.

17   Q    (By Mr. Pfaehler)  And can you tell me what the invoice

18        is here -- I'm sorry.  Let me try again.

19             Can you tell me what the invoice date is here?

20   A    July 11, 2014.

21                       MR. GAUGHAN:  Form.

22   Q    (By Mr. Pfaehler)  And that's the date that you would

23        have received the manifest from Northwest Log Scalers

24        that -- that the logs were in containers and on their way

25        to the port?

```
 1   A   Yes.

 2   Q   And July 16th here was the estimated time of departure;

 3       is that right?

 4   A   Yes.

 5   Q   And you're drawing on that same letter of credit that was

 6       issued on July 2, 2014; correct?

 7   A   Yes, correct.

 8   Q   For a contract that was entered into between June 13th

 9       and June 20, 2014; correct?

10   A   Yes.

11   Q   And that's how you received all the payments for all of

12       the shipments that were made on Contract CZY0603;

13       correct?

14   A   Yes.

15                   MR. PFAEHLER:  I'm going to ask that

16       we take just a brief break now.  I won't have a whole lot

17       to do when we come back, but I need a moment.

18                   THE WITNESS:  Okay.

19                   THE VIDEOGRAPHER:  We are going off

20       the record.  The time is now 10:45 a.m.

21                   (Recess.)

22                   THE VIDEOGRAPHER:  Back on the record.

23       The time is now 10:56 a.m.

24       ////

25       ////
```

Confidential - Subject to Further Confidentiality Review

```
 1                    EXAMINATION (Continuing)

 2      BY MR. PFAEHLER:

 3   Q  Can I call your attention, Mr. Salamanca, to Page 44

 4      through -- through 51 of Exhibit 59.

 5         Are these communications between Mr. Wu and Western

 6      Wood, I guess Michelle Zaun at Western Wood, about a

 7      contract to sell 50 cans of timber to Mai Lin LC?

 8   A  Yes.

 9   Q  And if you would turn to Page 47, can you tell me what

10      Page 47 is.

11   A  This is a copy of a letter of credit.

12   Q  And is that a letter of credit for whom the applicant was

13      Shanghai Mai Lin International Trade Co. Limited?

14   A  Yes.

15   Q  And to your knowledge, does Shanghai Mai Lin

16      International Trade Co. Limited have anything to do with

17      BNBM?

18                     MR. GAUGHAN:  Object to form.

19                     THE WITNESS:  No.

20   Q  (By Mr. Pfaehler)  And Mr. Wu was the person negotiating

21      with Western Wood over this contract or contracts for

22      Shanghai Mai Lin?

23                     MR. GAUGHAN:  Object to form.

24                     THE WITNESS:  Yes.

25   Q  (By Mr. Pfaehler)  And, Mr. Salamanca, if I could ask you
```

Confidential - Subject to Further Confidentiality Review

```
 1        to pull up again Exhibit 55, the --

 2   A    Okay.

 3   Q    And do I have it right?  Is it an email with Bates

 4        No. 230 on it?

 5                     MR. GAUGHAN:  Yes.

 6                     THE WITNESS:  Yes, yes.

 7   Q    (By Mr. Pfaehler)  Thank you.

 8         And if you could also pull up Exhibit 3.

 9   A    Okay.

10   Q    And this -- these, if we turn to Page 232 of Exhibit 55,

11        and if we turn to Exhibit 3, again, this is Contract

12        CZY0604; correct?

13   A    Correct.

14   Q    Entered into between June 13th and June 20, 2014?

15   A    Yes.

16   Q    For the sale of $588,000 of timber to -- that is offered

17        to Beijing New Building Materials; right?

18   A    Yes.

19   Q    Now, when you testified about Exhibit 3, I wrote down

20        that you said that Western Wood was, quote, making an

21        offer directly to BNBM, close quote.

22         Can you tell me what you meant by that?

23                     MR. GAUGHAN:  Object to form.  Just

24        the testimony stands for itself.

25   Q    (By Mr. Pfaehler)  Yeah.  Can you -- do you recall giving
```

```
 1      that testimony?

 2   A  Yes.

 3   Q  What did you mean by that?

 4   A  Well, just based on the offer sheet here, it's -- we were

 5      offering to Beijing New Building Materials Company

 6      Limited 600,000 board feet of Douglas fir.

 7   Q  And it wasn't your understanding that they were the

 8      ultimate customer, was it?

 9                      MR. GAUGHAN:  Object to form.

10                      THE WITNESS:  With them, it is my

11      understanding, they are the ultimate customer.

12   Q  (By Mr. Pfaehler)  What's the basis for that

13      understanding?

14   A  When the letter of credit comes in for the -- all our

15      documents -- invoices, the phytos, certificate of

16      origins -- are all directed to Beijing New Building

17      Materials.

18   Q  And the phytos and the certificates of origin and the

19      invoices and the other documents, they're prepared and

20      delivered to BNBM's bank to draw on the letter of credit;

21      correct?

22                      MR. GAUGHAN:  Object to form.

23                      THE WITNESS:  The invoice and packing

24      list is, yes.  The --

25   Q  (By Mr. Pfaehler)  And the phyto's also delivered under
```

Confidential - Subject to Further Confidentiality Review

1       the letter of credit here; is that right?

2   A   No.  Our -- in our business practice, we prefer not to

3       have the phyto and certificate of origin included as part

4       of our -- included to the bank.  We send those directly

5       to -- to the customer.

6   Q   Okay.  And who did you send them to here?

7   A   For this particular one, I would have to get a copy of

8       that phyto.

9   Q   The letter of credit for Contract CZY0604 is Exhibit 10;

10      correct?

11  A   Yes.

12  Q   When was that letter of credit issued?

13  A   July 2, 2014.

14  Q   And it was an irrevocable letter of credit; is that

15      correct?

16  A   Yes.

17  Q   And if the terms provided in the letter of credit were

18      met by Western Wood, the payment had to be made on the

19      letter of credit; correct?

20              MR. GAUGHAN:  Object to form.

21              THE WITNESS:  Correct.

22  Q   (By Mr. Pfaehler)  If I could ask you to turn to

23      Exhibit 11 that Mr. Gaughan marked yesterday.

24  A   Okay.

25  Q   And could you turn to Page 396?

Confidential - Subject to Further Confidentiality Review

```
 1   A   Yes.

 2   Q   And do I recall yesterday that you testified that

 3       Page 396 was a page prepared by Hanjin Shipping Company?

 4   A   Yes.

 5   Q   And can you tell me what "empty start" means?  Do you

 6       see, in the middle of the page, it says, "SSCO Hanjin

 7       Shipping Co.; Vessel Name: Hanjin New York; Voyage No.:

 8       0023W," and then "empty start" and "full start"?

 9   A   Yes.  The empty start and full start, that's basically

10       the day we can start pulling containers to start loading

11       for this particular booking.  And the cutoff is the --

12       the date and time when the containers have to be inside

13       the port.

14   Q   Okay.  Now, when you say -- let me make sure I use the

15       words right -- start pulling containers to start loading,

16       what do you mean by that?

17   A   That means our -- our drivers can go to the port, give

18       them this booking number, SEA411592700, and then in

19       return they'll -- they can get a container off of that

20       booking.

21   Q   And on July 16th, the wood's already in the containers;

22       right?

23   A   On or around -- I mean, that's the first day we could

24       start loading into those containers.

25   Q   Would you expect, with respect to this shipment, that by
```

Confidential - Subject to Further Confidentiality Review

1     July 16th the wood was already in the containers, or

2     mostly already in the containers?

3                    MR. GAUGHAN:  Object to form.

4                    THE WITNESS:  No.  Thirty-six

5     containers -- this probably would have been loaded over

6     three or four days.

7  Q  (By Mr. Pfaehler)  Into the containers, or the containers

8     onto the ship?

9  A  The -- well, for example, Cle Elum.  We might -- we might

10    only have nine drivers, and from Cle Elum, they can do --

11    they can only do two loads a day, so it might have been

12    over two days.  Because, if you have nine drivers, two

13    containers a day, 18 containers a day.

14 Q  Now, are the containers already loaded up at Cle Elum and

15    they just need to be moved?

16 A  Yes.  We pick -- we pick up the containers empty, and

17    then they get loaded in our yard and sent back to the

18    port.

19 Q  So by July 16th, the containers should be loaded and

20    sitting in Cle Elum; is that right?

21                   MR. GAUGHAN:  Object to form.

22                   THE WITNESS:  By -- no.  July 16th is

23    the first day we could start.

24 Q  (By Mr. Pfaehler)  To load the containers?

25 A  Yes.  But we have until July 24th to finish it.  So we --

Confidential - Subject to Further Confidentiality Review

```
 1       we might have -- we -- it's -- well, if you look here, at

 2       the bottom, so the date, 7/7 --

 3   Q   Right.

 4   A   -- 7/21, those would have been the days that the

 5       containers were pulled and returned.

 6   Q   So five containers were pulled and returned on July 17,

 7       2014?  I take that back.  Six containers?

 8   A   Seven --

 9   Q   Seven?

10   A   Yeah.

11   Q   You're right.  Thank you.

12                       MR. GAUGHAN:  Object to form.

13                       THE WITNESS:  And this is --

14                       MR. PFAEHLER:  Sorry for the "you're

15       right."

16   Q   (By Mr. Pfaehler)  But seven -- seven were pulled on

17       July 17th?

18   A   Yes.  At least.  This is not the full list of the -- the

19       36, so --

20   Q   It's only -- only a partial list?

21   A   Yes.

22   Q   Now, let's look at what Mr. Gaughan marked as Exhibit 12.

23           Do you have that in front of you?

24   A   Yes, I do.

25   Q   And if you could turn to Page 408.
```

Confidential - Subject to Further Confidentiality Review

```
 1   A   Okay.

 2   Q   Is this an invoice that was submitted to the bank for

 3       payment under the irrevocable letter of credit

 4       No. 334-01-0007580?

 5   A   Yes.

 6                   MR. GAUGHAN:  Object to the form.

 7   Q   (By Mr. Pfaehler)  And that letter of credit was issued

 8       on July 2, 2014; is that correct?

 9   A   Yes.

10   Q   Pursuant to Contract No. CZY0604 entered into between

11       June 13th and June 20, 2014?

12   A   Yes.

13   Q   And that would be true for all of the contracts that draw

14       on that letter of credit, and -- I'm sorry.  Strike that.

15       That would be true for all of the invoices that

16       present draws on that letter of credit under Contract

17       CZY0604?

18   A   Yes.

19                   MR. GAUGHAN:  Object to form.

20   Q   (By Mr. Pfaehler)  And if we could turn -- turn to the

21       document that was marked Exhibit 14 yesterday.

22   A   Okay.

23   Q   Page 426 is also an invoice presented to draw on that

24       same letter of credit?

25   A   Correct.
```

 1                    MR. GAUGHAN:  Form.

 2    Q   (By Mr. Pfaehler)  And Page 429 is a bill of lading

 3        issued for logs that were being shipped under that same

 4        contract pursuant to that same letter of credit; correct?

 5    A   Correct.

 6                    MR. GAUGHAN:  Object to form.

 7    Q   (By Mr. Pfaehler)  Let's look, if we would, at Exhibit --

 8        I'd like you to pull up two exhibits, Exhibit 5 and

 9        Exhibit 6, that Mr. Gaughan marked yesterday.

10    A   Okay.

11    Q   Now, Exhibit 6 says that it's an offer sheet; correct?

12    A   6.  Yes.

13    Q   And it doesn't have a contract number typed into it in

14        any way, does it?

15    A   Correct.

16    Q   These offer sheets were created on a computer at Western

17        Wood; is that true?

18    A   Exhibit -- Exhibit 6, yes.

19    Q   And do you see somebody wrote on Exhibit 6, "YXJ01" --

20        I'm sorry.  Let me try again.

21        Somebody wrote on Exhibit 6 "YXJ010915."

22        Do you see that?

23    A   Yes.

24    Q   And I believe you said yesterday you believed that was

25        Michelle Zaun's notation?

```
 1    A    Yes.

 2    Q    Now, if we look at Exhibit 5, we see a contract that's

 3         actually been countersigned by BNBM Group; correct?

 4    A    Correct.

 5    Q    And this has the contract number typed in.

 6              Do you see that?

 7    A    Yes.

 8    Q    Is it your understanding that Exhibit 5 is the final

 9         version of a contract that in Exhibit 6 was simply a

10         draft that was still in the process of being negotiated?

11                        MR. GAUGHAN:  Object to form.  Calls

12         for a legal conclusion.

13                        THE WITNESS:  Well, Exhibit 6 is what

14         we sent Jesse, and -- and then we later found out he was

15         getting a $10 commission, which is -- which is why that

16         980 was written.  And I believe Exhibit 5 is probably

17         BNBM's copy.

18    Q    (By Mr. Pfaehler)  Is Exhibit 6 a draft of a proposal,

19         and Exhibit 5 the final contract?

20                        MR. GAUGHAN:  Objection to form.

21         Calls for a legal conclusion.

22                        THE WITNESS:  Yes.

23    Q    (By Mr. Pfaehler)  And Exhibit 5 reflects the deal that

24         was --

25    A    Oh, no.  I'm sorry.
```

1   Q   Okay.

2   A   Sorry.

3   Q   Tell me why not.

4   A   The board feet are different.  It's --

5   Q   They're very different, aren't they?

6   A   Yeah, yeah.

7   Q   The price is different?

8   A   Right.  What -- yeah.  Yes.  A common practice that -- so

9       we would issue Jesse an offer letter, and he would maybe

10      break it up into three or four different LCs.  So our

11      initial offer to Jesse was for 1100 board feet, and then

12      he would come back and we would receive maybe three --

13      you know, a couple different LCs that totaled up to 1100

14      board feet.

15  Q   Let me ask you this:  If you could take a look -- if I

16      could ask you to pull out Exhibits 7, 8, and 9 that

17      Mr. Gaughan marked yesterday.  And if you could first go

18      to Exhibit 7.

19  A   Okay.

20  Q   And if you'd go to Page 357, Exhibit 7.

21  A   Okay.

22                  MR. PFAEHLER:  Do you need a minute?

23                  MR. GAUGHAN:  No, that's okay.

24  Q   (By Mr. Pfaehler)  Do you see on -- on Page 357, there's

25      an invoice that you prepared and submitted to the bank to

Confidential - Subject to Further Confidentiality Review

1      draw on the letter of credit that is referred to in

2      Exhibit 5?

3   A   Yes.

4   Q   And what's the unit price in Exhibit 7?

5                   MR. GAUGHAN:  Object to form.

6   Q   (By Mr. Pfaehler)  On Page 357, the invoice?

7   A   980.

8   Q   And 980 is the unit price that's in Exhibit 5; correct?

9   A   Correct.

10  Q   It's not the unit price that's in Exhibit 6; correct?

11  A   Correct.

12  Q   And the invoice on Page 357 of Exhibit 7, that shows that

13      you were taking a draw on the letter of credit for

14      $14,553; right?

15  A   Correct.

16                  MR. GAUGHAN:  Object to form.

17  Q   (By Mr. Pfaehler)  And then if you would turn with me in

18      Exhibit 8 to Page 367.

19          And this is another invoice presented on the same

20      contract; right?

21  A   Yes.

22  Q   And what's the unit price?

23  A   980.

24  Q   The same letter of credit; right?

25  A   Yes.

Confidential - Subject to Further Confidentiality Review

```
 1   Q   And this is for a total draw that you're taking of

 2       $169,775.20; correct?

 3   A   Yes.

 4   Q   And then let's go to Exhibit 9, if you would, please, and

 5       turn to Page 377.  And is this another draw on the same

 6       contract and the same letter of credit?

 7                       MR. GAUGHAN:  Object to form.

 8                       THE WITNESS:  Yes.

 9   Q   (By Mr. Pfaehler)  And the draw's for a total of

10       $101,626; right?

11   A   Correct.

12                       MR. GAUGHAN:  Object to form.

13   Q   (By Mr. Pfaehler)  Now, if we add those three invoices

14       together, we come out to $291,020, approximately; right?

15   A   Okay.

16   Q   Which is slightly more, but in the range of what we're

17       looking at on Exhibit 5; correct?

18   A   Yes.  Within 10 percent.

19   Q   Okay.

20   A   Plus or -- all our LCs are issued at plus or minus

21       10 percent.

22   Q   It's within 10 percent.  It's why you could draw under

23       that same LC, even though it's a little bit higher than

24       269,000; right?

25   A   Correct.
```

1   Q   Now, there isn't a single invoice that we've seen, aside

2       from these three, that relate to Contract YXJ010915;

3       correct?

4                       MR. GAUGHAN:  Object to the form.

5                       THE WITNESS:  Can you repeat?

6   Q   (By Mr. Pfaehler)  Yeah.  Let me try again.

7           Exhibits 7, 8, and 9 --

8   A   Yes.

9   Q   -- that's it.  That's all the invoices that go with

10      Contract 10915; correct?

11  A   Yes.

12                      MR. GAUGHAN:  Object to form.

13  Q   (By Mr. Pfaehler)  We don't have any invoices that show a

14      sale under this contract at 970 NBF, do we?

15  A   No.

16                      MR. GAUGHAN:  Form.

17  Q   (By Mr. Pfaehler)  And we don't have any invoices under

18      this contract for any amount greater than 291,000;

19      correct?

20  A   Correct.

21                      MR. GAUGHAN:  Object to form.

22  Q   (By Mr. Pfaehler)  There was no sale of the 700,000-plus

23      difference shown between Exhibits 5 and 6, was there?

24                      MR. GAUGHAN:  Object to form.

25  Q   (By Mr. Pfaehler)  Does that make sense?  Do I need to

```
 1        try to --

 2   A    Yeah, that's -- that's --

 3   Q    That's correct?

 4   A    That's fair, yes.

 5   Q    So Exhibit 6, in fact, is not a final contract that was

 6        carried out between the companies; correct?

 7                      MR. GAUGHAN:  Object to form.  Calls

 8        for a legal conclusion.

 9                      THE WITNESS:  Correct.

10   Q    (By Mr. Pfaehler)  Now I'd like you to turn, if you

11        would, to Exhibit 19, and also pull up Exhibit 4.

12   A    Okay.

13   Q    Is Exhibit 19 the offer sheet that goes with Exhibit 4,

14        the executed offer sheet CZY0705?

15                      MR. GAUGHAN:  Object to the form.

16                      THE WITNESS:  Yes, it would have --

17        yes.

18   Q    (By Mr. Pfaehler)  When was the offer issued?

19   A    July 7, 2014.

20   Q    When was the offer expiration date?

21   A    July 14, 2014.

22   Q    What we're looking at as Exhibit 4 then is a contract

23        that was entered into between July 7th and July 14,

24        2014?

25                      MR. GAUGHAN:  Object to form.
```

1    Q    (By Mr. Pfaehler)  Is that correct?

2    A    Yes.  It was issued -- yes.

3    Q    During that period, between July 7th and July 14, 2014?

4    A    That's when it was issued, yes.

5    Q    And it called for an irrevocable letter of credit; is

6         that right?

7    A    Yes.

8    Q    And that irrevocable letter of credit was issued pursuant

9         to that contract?

10                   MR. GAUGHAN:  Object to form.

11                   THE WITNESS:  Yes.

12   Q    (By Mr. Pfaehler)  Let's turn to what was marked as

13        Exhibit 20.  Actually, if we could turn first to 21, but

14        keep 20 out.

15   A    Okay.

16   Q    21's the letter of credit that goes with this contract;

17        right?

18                   MR. GAUGHAN:  Object to form.

19                   THE WITNESS:  Yes.

20   Q    (By Mr. Pfaehler)  And it's letter of credit

21        No. 334-01-0007857?

22   A    Yes.

23   Q    Would you turn with me then to Exhibit 20, and turn to

24        Page 462.

25   A    Okay.

Confidential - Subject to Further Confidentiality Review

1    Q    This is a draw on that letter of credit; correct?

2    A    Yes.

3    Q    Now, there's a contract number here that is -- says

4         "JT073014."

5              Do you see that?

6    A    Yes.

7    Q    Is that a mistake?

8    A    At the time, no.  This -- according to the terms of the

9         letter of credit, under 46 A on Page 467, it said -- it

10        says "Pre-" -- it just indicates that -- "Indicate

11        contract number," and "Attention:  Ms. Liling, fax."  Do

12        you see that?  "Indicate contract number."

13   Q    You're looking at 46 A?

14   A    Yes, at the top.

15   Q    Just give me one second, if you don't mind.

16   A    Okay.

17   Q    Yes.  Yes, I see that.

18   A    So at the -- usually LCs will have a contract number

19        included, but this particular one didn't, so to has- --

20        you know, to speed up the process of us trying to get

21        paid, I guess, we just put in a -- typed in our own

22        contract number.  So JT would -- you know, John

23        Tortorelli -- the date matches up with the LC date.

24             And then it was -- it was afterwards that Jesse gave

25        us a contract number to -- for the particular LC.

Confidential - Subject to Further Confidentiality Review

1   Q   I see.  So that's a placeholder, as it were --

2   A   Yes.

3   Q   -- in this invoice.

4       And as a placeholder, it actually refers back to

5       Contract CZY0705?

6   A   Yes.

7   Q   Which was made between July 7th and July 14, 2014?

8   A   Yes.

9   Q   And in case I didn't ask it, this document we're looking

10      at, 462, is a draw on the irrevocable letter of credit

11      issued under that contract; right?

12                          MR. GAUGHAN:  Object to form.

13                          THE WITNESS:  Yes.

14  Q   (By Mr. Pfaehler)  And if I could ask you to turn to

15      Exhibit 22, Page 472.  The same question.  This is a draw

16      on a letter of credit issued pursuant to the contract

17      entered into between July 7th and July 14, 2014?

18                          MR. GAUGHAN:  Object to form.

19                          THE WITNESS:  Yes.

20  Q   (By Mr. Pfaehler)  And if we can turn to Exhibit 23,

21      Page 481.

22      Is this a draw on the same letter of credit?

23  A   Yes.

24                          MR. GAUGHAN:  Object to form.

25  Q   (By Mr. Pfaehler)  And if you turn to Page 483, the Yang

1      Ming bill of lading, that reflects, again, that these

2      logs were being shipped under Contract CZY0705, and with

3      payment under the same irrevocable letter of credit;

4      correct?

5   A   Yes.

6                       MR. GAUGHAN:  Object to form.

7   Q   (By Mr. Pfaehler)  And if we look at Exhibit third- --

8      24 -- strike that.

9          If we look at Exhibit 24, and turn again to

10     Page 491.  This, again, is a presentment for payment of

11     logs shipped under the same contract?

12  A   Yes.

13                      MR. GAUGHAN:  Object to form.

14  Q   (By Mr. Pfaehler)  And it's a draw on the same letter of

15     credit?

16  A   Correct.

17                      MR. GAUGHAN:  Object to form.

18  Q   (By Mr. Pfaehler)  If we look at Exhibit 27, are we again

19     looking at a draw on the letter of credit for logs that

20     were shipped under the same contract entered into between

21     July 7th and July 14, 2014?

22                      MR. GAUGHAN:  Object to form.

23                      THE WITNESS:  Yes.

24  Q   (By Mr. Pfaehler)  It's a draw on an irrevocable letter

25     of credit issued under that contract?

Confidential - Subject to Further Confidentiality Review

```
 1   A    Yes.

 2                      MR. GAUGHAN:  Object to form.

 3   Q    (By Mr. Pfaehler)  And if we could look at Exhibit 28,

 4        Page 509.

 5            Is this again an invoice that was presented to the

 6        bank to draw on the irrevocable letter of credit issued

 7        under the contract that was made between July 7th and

 8        July 14, 2014?

 9                      MR. GAUGHAN:  Object to form.

10                      THE WITNESS:  Yes.

11                      MR. PFAEHLER:  No further questions at

12        this time.  Thank you, sir.

13                      THE WITNESS:  Thanks.

14                      MR. GAUGHAN:  Are you going to have a

15        lot of questions, Counsel?

16                      MR. CABOT:  Probably 20 minutes, 30

17        minutes.

18                      MR. GAUGHAN:  Should we take a brief

19        break?  Is that okay?

20                      MR. PFAEHLER:  I wouldn't mind

21        stretching my legs if -- are you okay, John, if we take a

22        break?

23                      THE WITNESS:  Yes.

24                      THE VIDEOGRAPHER:  We are going off

25        the record.  The time is now 11:24 a.m.
```

Confidential - Subject to Further Confidentiality Review

```
 1                           (Recess.)

 2                     THE VIDEOGRAPHER:  Back on record.

 3       The time is now 11:36 a.m.

 4                           EXAMINATION

 5       BY MR. CABOT:

 6    Q  Good morning, Mr. Salamanca.

 7    A  Good morning.

 8    Q  Have you or anyone from Western Wood had communications

 9       with Plaintiffs' counsel?

10    A  No.

11    Q  Do you know if your lawyers has had communications with

12       Plaintiffs' counsel?

13    A  For?

14    Q  At any time?

15    A  To exchange documents, or to -- for him to forward

16       documents.

17    Q  Well, how were you notified of the deposition?

18    A  We were summoned.

19    Q  And after you received -- so you received a subpoena?

20    A  Yes.  At our office.  I briefly looked through it, and

21       then I just decided that's something Mark should take

22       care of, so we just had it sent to his office.

23    Q  And Mark's your attorney?

24    A  Yes.  Mark Wittman.

25    Q  And do you know if he followed up with someone from
```

Confidential - Subject to Further Confidentiality Review

```
 1        Plaintiffs regarding the subpoena?

 2   A    I believe so.

 3   Q    Okay.  But you're not aware of the substance of those

 4        communications?

 5   A    No.

 6   Q    You mentioned earlier that Western Wood is no longer

 7        doing business with BNBM or CNBM Forest Products; is that

 8        correct?

 9   A    That's correct.  We don't have any current contracts or

10        orders with them.

11   Q    And why is that?

12   A    To us, we just think it's marking -- market conditions.

13        It's been tough with the China market the past few

14        months, the slowdowns at the port, that just were

15        completed in February.  So it's just -- it's just been a

16        hard time getting new China business for the first --

17        first half of this year.

18   Q    Are you saying the transactions aren't profitable?

19   A    Price-wise, we're -- you know, we've been negotiating.

20        We have a price in mind and we ask the -- our customers,

21        and then they have a price, and there's too far of a

22        spread, so . . .

23   Q    Does the fact that you're not doing business with BNBM or

24        CNBM Forest Products have anything to do with this case

25        at all?
```

```
 1   A   No, not -- not that I'm aware of.

 2   Q   Now, yesterday you testified, and let me pull up your

 3       exact words.  You said, "When I say CNBM, I consider them

 4       one and the same, so CNBM is the same to me as CNBM

 5       Forest Products, CNBM National Building Material Import

 6       and Export Company."

 7           Do you remember saying that?

 8   A   Yes, I do.

 9   Q   And just to be clear, we've looked at a number of

10       documents involving CNBM Forest Products Canada Limited;

11       correct?

12   A   Yes.

13   Q   And have -- to your knowledge, have you seen a contract

14       that just says "CNBM"?

15   A   No.

16   Q   So when you stated that you consider CNBM one and the

17       same, you were just referring to how Western Wood refers

18       to CNBM Forest Products Canada Limited; correct?

19   A   Yes.

20   Q   And to be clear, have you ever had a contract with C- --

21       China National Building Materials Import and Export

22       Company?

23   A   No.

24   Q   So you've only had imports with CNBM Forest Products

25       Limited; correct?
```

1    A    Yes.

2    Q    You -- we discussed Alan Brunstad earlier, and do you

3         know whether Alan Brunstad is an employee of CNBM Forest

4         Products Canada or any CNBM company?

5    A    I do not know.

6    Q    I'd like to show you a LinkedIn profile for Alan

7         Brunstad.  And for the record, the webpage is

8         www.linkedin.com/pub -- p-u-b -- slash, Alan-Brunstad,

9         B-r-u-n-s-t-a-d, slash, 19, slash, A72, slash, 222.

10                   MR. GAUGHAN:  And I'm just going to

11        object to the extent you're showing the witness a

12        document he has no knowledge of it.

13                   THE WITNESS:  Okay.

14   Q    (By Mr. Cabot)  Having seen that, can you tell at all,

15        based on that document, whether Mr. Brunstad is an

16        employee of CNBM Forest Products Canada Limited?

17                   MR. GAUGHAN:  Object to the form.

18                   THE WITNESS:  Based on his title, it

19        appears he's not an employee.

20   Q    (By Mr. Cabot)  Okay.  So it appears that he's an

21        independent professional; correct?

22   A    Yes.

23   Q    Okay.

24                   MR. GAUGHAN:  Object to the form of

25        that last question.

```
 1   Q    (By Mr. Cabot)  The emails we've seen from Daniel Deng

 2        have used a CBMIE -- CBMIE dot -- I think dot-com --

 3        what's the word I'm looking for here? -- email address;

 4        correct?

 5   A    Yes.

 6   Q    And have you seen any emails from Alan Brunstad with that

 7        same email server?

 8   A    I have not.

 9   Q    Okay.  In fact, Mr. Brunstad uses a -- I think a public

10        email address; correct?

11   A    Yes.

12   Q    Will you take a look at Exhibit 40.

13   A    Okay.

14   Q    And will you turn to Bates stamp WW 624.

15   A    Yes.

16   Q    Now, do you see where it says "Notify party"?

17   A    Yes.

18   Q    And what's the company that's listed there?

19   A    Tewoo Metals International Trade.

20   Q    And are you familiar with that company?

21   A    No.

22   Q    Do you know why they're listed as the notify party?

23   A    They -- we were instructed by Daniel to -- to list them

24        as the notify party.

25   Q    So who was taking delivery of the shipments?
```

Confidential - Subject to Further Confidentiality Review

```
 1   A   According to this, it would be Tewoo Metals International

 2       Trade.

 3   Q   So not CNBM Forest Products Canada Limited?

 4   A   Correct.

 5   Q   Okay.  And would you take a look at -- just a second --

 6       Exhibit 33, I believe.

 7           Now, on the cover page, the customer is listed as

 8       CNBM/Keerun; correct?

 9   A   Correct.

10   Q   What is Keerun?

11   A   Again, they would have been -- we would have been

12       instructed by Daniel that they are the end user who the

13       shipment is going to.

14   Q   Okay.  Would you turn to Bates stamp 563.

15   A   Yes.

16   Q   Do you know what a consignee is?

17   A   I have an idea.

18   Q   Okay.  What -- what is a consignee?

19   A   They're the ones who ultimately -- they can sign on for

20       the -- for the goods.

21   Q   Okay.  They take delivery of the goods; correct?

22   A   Yes.

23   Q   And on Bates stamp Page 563, who's listed as the

24       consignee?

25   A   Shanghai Keerun Industrial Company Limited.
```

```
 1   Q   Okay.  Do you see CNBM Forest Products Canada or even the

 2       word "CNBM" anywhere on that document?

 3   A   No.

 4   Q   And on Bates stamp 565, that's a certificate of origin;

 5       correct?

 6   A   Yes.

 7   Q   What is a certificate of origin?

 8   A   It's -- usually it's required by Chinese companies.  It

 9       just certifies where the product came from and what the

10       product is.

11   Q   Okay.  And likewise, who's listed as the consignee on

12       that document?

13   A   Shanghai Keerun Industrial Company Limited.

14   Q   And do you see the letters CNBM anywhere on that

15       document?

16   A   No.

17   Q   Could you take a look at Exhibit 39.

18   A   Okay.

19   Q   Bates stamp 608.

20   A   Okay.

21   Q   Who was taking delivery of that shipment?

22   A   Tewoo Metals International Trade.

23   Q   Thanks.

24           And will you take a look at Exhibit 38, Bates

25       stamp 599.
```

```
 1   A   Okay.

 2   Q   Okay.  The same question.  Who was taking delivery of

 3       that shipment?

 4   A   Tewoo Metals International Trade.

 5   Q   Okay.  And would you take a look at Exhibit 32, Bates

 6       stamp 544.

 7   A   Okay.

 8   Q   Who was taking delivery of that shipment?

 9   A   Shanghai Keerun Industrial Company Limited.

10   Q   And would you take a look at Exhibit 31.

11   A   Okay.

12   Q   Bates stamp 549.  Who was taking delivery of that

13       shipment?

14   A   Shanghai Keerun Industrial Company Limited.

15   Q   And would you take a look at Exhibit 29, Bates stamp 528.

16   A   Okay.

17   Q   Same question.  Who was taking delivery of that shipment?

18   A   Shanghai Keerun Industrial.

19   Q   And Exhibit 30.

20   A   Okay.

21   Q   Bates stamp 540.  Who was taking delivery of that

22       shipment?

23   A   Shanghai Keerun Industrial.

24   Q   And Exhibit 26, Bates stamp 519.

25   A   Okay.
```

Confidential - Subject to Further Confidentiality Review

1   Q   Who was taking delivery of that shipment?

2   A   Shanghai Keerun Industrial.

3   Q   Okay.  Have we seen a single order where CNBM Forest

4      Products Canada or any entity with the word "CNBM" was

5      taking delivery of a shipment?

6   A   No.

7   Q   Now, earlier you were asked by Plaintiffs' counsel what

8      your compensation was from the orders with CNBM Forest

9      Products Canada.

10       Do you remember that question?

11   A   Yes.

12   Q   Okay.  And you answered 1 million to 1.5 million?

13   A   Yes, that was --

14   Q   What did you mean by "compensation"?

15   A   What they owed us for -- for the invoices we sent.

16   Q   Okay.  To be clear, that's not a -- that's not your

17      company's profit, is it?

18   A   Our profit?  No, no.

19   Q   Okay.  So what -- do you know approximately what the

20      profit would have been on a million or $1.5 million worth

21      of shipments?

22   A   I have that information.

23   Q   Okay.  What would that be?

24   A   Oh, let me -- you want me --

25   Q   You can just approximate.

```
 1   A   Oh, I mean, usually our profit can range between 15 and

 2       20 percent.

 3   Q   Okay.  So --

 4   A   So --

 5   Q   -- about 200,000, somewhere in that vicinity?

 6   A   Yeah.

 7   Q   And to be clear, that's not CNBM Forest Products Canada

 8       Limited's profit; correct?

 9   A   No.

10   Q   In fact, do you even know if CNBM Forest Products Canada

11       Limited was profitable?

12                   MR. GAUGHAN:  Object to form.

13                   THE WITNESS:  I don't know.

14   Q   (By Mr. Cabot)  And you've never heard that CNBM Forest

15       Products Limited or CNBM Forest Products Canada Limited

16       was not profitable?

17                   MR. GAUGHAN:  Object to form.

18                   THE WITNESS:  I haven't heard either

19       way.

20   Q   (By Mr. Cabot)  And this figure of 1 million to 1.5

21       million, how did you calculate that?

22   A   Just -- I was just basing it on the five- to eight-month

23       period we had done business with them.

24   Q   And --

25   A   It --
```

Confidential - Subject to Further Confidentiality Review

```
 1   Q   Again, how did you -- how did you calculate that?

 2   A   I mean, if you want it exactly, I can give you that in

 3       two seconds.

 4   Q   Oh, so you actually independently looked at it and

 5       figured out the --

 6   A   Well, I have -- yeah, it was one of my printouts.  I

 7       don't think it was forwarded.  It wasn't included in

 8       the -- the scans.

 9   Q   I see.

10               MR. GAUGHAN:  We could put that in the

11       record, I guess, if you want to do that.

12               MR. CABOT:  Yeah, sure.

13   Q   (By Mr. Cabot)  Do you have it with you?

14   A   Yes.  Yeah.  It's right here.

15               MR. PFAEHLER:  Does that go to BNBM as

16       well or --

17               THE WITNESS:  Yes, I can -- I have

18       that as well.

19               MR. GAUGHAN:  Why don't we just put

20       them both in.

21               MR. CABOT:  Can we mark that as an

22       exhibit?

23               MR. GAUGHAN:  We'll mark two exhibits,

24       I guess, if that's -- mark one for CNBM and one for BNBM.

25       I mean CNBM Forest Canada Limited, of course.
```

Confidential - Subject to Further Confidentiality Review

```
 1                        MR. CABOT:  Forest Products Canada.

 2                        MR. GAUGHAN:  Oh, I forgot the forest

 3     part.

 4                        MR. WITTMAN:  I think I need to place

 5     an objection on the record on two bases.  First, that

 6     this document, Job Profitable Summary, is not within the

 7     scope of the documents that were the subject of the

 8     subpoena served upon my client.

 9         Secondly, that it appears to be limited to

10     profitability of my client's ventures and contracts,

11     which are in the realm of proprietary and not relevant to

12     issues involving the parties to this litigation, of which

13     we're not one.

14                        MR. GAUGHAN:  Are you concerned about

15     the profitability aspect or the general gross sales

16     figure?  Is there a general gross sales figure in there?

17                        THE WITNESS:  Not company-wide.  This

18     is just strictly --

19                        MR. GAUGHAN:  No, I understand, I

20     understand.  But with respect to BNBM and CNBM, is

21     there -- I'm not -- I don't necessarily want to know your

22     profit margin.  That's not my concern.  I just want to

23     see the gross figure, if that's in there.  We can redact

24     it, if that would make you happy.

25                        MR. CABOT:  Or, in fact, if he can
```

Confidential - Subject to Further Confidentiality Review

```
 1      just look at the document --

 2                      MR. GAUGHAN:  And tell us the gross

 3      figures.

 4                      MR. CABOT:  And say the amount of

 5      revenue from the CNBM Forest Products Canada and the BNBM

 6      transactions, I'd be fine with that without marking it as

 7      an exhibit.

 8                      MR. WITTMAN:  Okay.

 9                      MR. GAUGHAN:  I'd be fine with that as

10      well.  That works.

11                      MR. WITTMAN:  That's exactly.  Revenue

12      as opposed to profit.

13                      MR. GAUGHAN:  Yeah, gross revenue,

14      yeah.

15                      MR. CABOT:  Revenue as opposed to

16      profit.

17  Q   (By Mr. Cabot)  So looking at that document, does that

18      refresh your recollection regarding the gross revenues

19      from transactions involving CNBM Forest Products Canada?

20  A   Yes.

21  Q   And what -- and what's the date range on that, on those

22      transactions?

23  A   July 17 through December 31, 2014.

24  Q   And does that reflect dates of payment or dates of

25      contract, dates of shipment?
```

Confidential - Subject to Further Confidentiality Review

```
 1   A   Dates of shipment.  These -- these are all the invoices

 2       between the -- that time period.

 3   Q   Okay.  And so what's the amount of -- of the contracts?

 4   A   $1,583,505.30.

 5   Q   And does that reflect actual payment by CNBM Forest

 6       Products Canada of that amount?

 7   A   This document?

 8   Q   Yes.

 9   A   No.

10   Q   So the number you gave me, is that the amount that was

11       actually paid by CNBM Forest Products Canada, or do you

12       know that?

13   A   It would have been the amount, yes.

14   Q   Okay.  So there -- there would not have been any

15       discounts on that or anything like that?

16   A   That's correct.

17   Q   Okay.  Now, I've looked at the documents that we've gone

18       through, the invoices, and those don't add up to -- to

19       $1.5 million.

20          So are there other invoices that we have not seen

21       involving CNBM Forest Products Canada?  And in fact, I

22       don't even think they exceed $500,000?

23   A   I -- yeah, I don't know if we went through every one.

24   Q   Well, let me ask you this.  Would you turn to Exhibit 45.

25   A   Okay.
```

```
 1    Q    Bates stamp 247.

 2    A    Okay.

 3    Q    And I believe you testified earlier that that reflects a

 4         contract of $1,008,800; correct?

 5    A    Yes.

 6    Q    And looking at the document you referred to just a moment

 7         ago, do you see an invoice or a shipment for $1,008,800?

 8    A    No.  It would have been broken up into different -- a few

 9         different shipments.

10    Q    Okay.  So do you have the dates of shipment on the

11         document that you're looking at?

12    A    I don't have the dates of shipment.

13    Q    Can you tell what transactions around September 5th or

14         September of 2014 add up to $1,008,800?

15    A    If I were to look at my computer, I could tell you.

16    Q    But you don't have that information here; correct?

17    A    I do have it here.  My computer.

18    Q    Well, okay.  Let me ask you a question.  Would you turn

19         to Exhibit 57.

20    A    Okay.

21    Q    Bates stamp 311.

22    A    Yes.

23    Q    And what's the amount on that contract?

24    A    $1,019,200.

25    Q    Okay.  And the last contract we looked at was also
```

Confidential - Subject to Further Confidentiality Review

```
1        over -- for over $1 million; correct?

2   A    Yes.

3   Q    So you would agree with me that those contracts combined

4        add up to over $2 million; correct?

5   A    Yes.

6   Q    And yet you said there were only about $1.5 million worth

7        of shipments?

8   A    Yes.  Because of market conditions and problems CNBM

9        Forest Products Canada Limited was having paying us for

10       those shipments, we did not fulfill this offer on -- we

11       did not complete the offer dated December 4, 2014.

12  Q    Okay.  So to be clear, even though the offer is signed,

13       even though it says "Offer accepted," the amounts listed

14       in these contracts do not necessarily reflect the actual

15       amounts that were purchased ultimately; correct?

16                    MR. GAUGHAN:  Object to form.

17                    THE WITNESS:  Correct.

18  Q    (By Mr. Cabot)  Let me rephrase that question.

19          The amounts listed in the contract are not

20       indicative of the total revenue by your company from

21       sales to CNBM Forest Products Canada or Shanghai Keerun

22       or Tewoo; correct?

23                    MR. GAUGHAN:  Object to form.

24                    THE WITNESS:  Correct.

25                    MR. CABOT:  Okay.  I have no further
```

1      questions.

2                      MR. GAUGHAN:  And I'm just going to

3      have a few, so we won't be too long, I promise.  I know

4      it's been a long day already.

5                          FURTHER EXAMINATION

6      BY MR. GAUGHAN:

7  Q   And I guess we looked at -- Counsel asked you to look at

8      some documents that we had previously looked at, and some

9      of those documents identify parties other than CNBM

10     Forest Products Canada, as well as BNBM; is that correct?

11 A   Correct.

12 Q   Would the invoice be the most accurate place to look in

13     terms of the actual customer?

14                     MR. PFAEHLER:  Object to form.

15                     THE WITNESS:  Yes.

16 Q   (By Mr. Gaughan)  For purposes of your records.

17 A   For our records, yes.

18 Q   And is it common, for your transactions with Chinese

19     corporate entities, for you to send shipments over where

20     multiple parties are identified in your -- in your

21     packages?

22 A   Yes.

23 Q   Okay.  So in other words, one party might be listed in

24     the contract, and another party might be receiving the

25     actual shipment; is that correct?

1    A    Yes.

2    Q    Okay.  And before, Counsel had asked you about a document

3         that you brought here with you today with respect to

4         profits earned -- or not -- I'm sorry, not profits, but

5         gross revenue earned on your -- on the various

6         contractual dealings you had with CNBM Forest Products

7         Canada.

8             Do you also have a similar document with respect to

9         BNBM?

10   A    Yes.

11   Q    Can you tell me what the gross profit was for BNBM

12        transaction- -- not -- excuse me, gross revenue.  I'll

13        strike that.

14   A    Revenue, okay.

15                       MR. PFAEHLER:  Objection.

16                       THE WITNESS:  July 14 through

17        December 31, 2014, $1,592,083.22.

18             And then January 1st through March 15 -- or

19        January -- January 1st through March 31, 2015,

20        $288,141.02.

21   Q    (By Mr. Gaughan)  Okay.  And how is it that you prepared

22        both of these documents?

23   A    Just ran a report.

24   Q    Okay.  So you --

25   A    I just basically used this information as a -- as a

Confidential - Subject to Further Confidentiality Review

```
 1       check -- checklist for the documents that you had

 2       requested.

 3   Q   Okay.  So there's -- there's a methodology you would use

 4       when you -- you could actually log onto your system, pull

 5       up a specific company -- customer, and then see what, you

 6       know, I guess monies were collected from that customer?

 7                      MR. PFAEHLER:  Multiple objections to

 8       form, and objection to seeking to get the witness to

 9       testify from a document that has not been produced and

10       whose production the -- his counsel has objected to.

11          So I would move to strike all of the questions and

12       answers relating to a document that's being read at the

13       other end of the table and not shared with us.  This is

14       improper.

15                      MR. GAUGHAN:  I mean, we can -- did

16       you want to perhaps reach an agreement on a methodology

17       for producing this document -- these two documents?

18                      MR. PFAEHLER:  I don't need to agree

19       on anything.  I need to have the proper evidence in front

20       of me and proper questions, sir, and I'm not getting

21       that.

22   Q   (By Mr. Gaughan)  Okay.  So you did a calculation with

23       respect to gross revenues collected from CNBM Forest

24       Products Canada Limited from July 17 to the present; is

25       that correct?
```

Confidential - Subject to Further Confidentiality Review

```
 1   A   Yes.

 2   Q   And how did you go about making that calculation?

 3   A   I just ran a report in our system, a -- well, the report

 4       I ran was a job profit -- profitability report.

 5   Q   Okay.  And by pulling that report, you can also see gross

 6       revenues?

 7   A   Yes.  I could edit it any way.  I could, you know, run

 8       the report to show revenue only, so it doesn't include

 9       our -- our costs and our profit.

10   Q   Okay.  And the same is true with respect to BNBM;

11       correct?  You ran a similar report?

12   A   Yes.

13   Q   And you used that -- you provided a gross revenue figure

14       during today's deposition; correct?

15   A   Yes.

16                   MR. PFAEHLER:  Objection to form.

17       You're asking him about figures that were provided from a

18       document and a report that the witness has declined to

19       provide.

20   Q   (By Mr. Gaughan)  But you did make that calculation;

21       correct?

22                   MR. PFAEHLER:  Objection.

23                   THE WITNESS:  Yes.

24   Q   (By Mr. Gaughan)  Okay.  And you shared that calculation

25       with us today; correct?
```

Confidential - Subject to Further Confidentiality Review

```
 1                    MR. PFAEHLER:  Objection.

 2                    THE WITNESS:  Yes.

 3   Q   (By Mr. Gaughan)  And earlier we looked at various emails

 4       that had been produced and marked as Exhibit 59.

 5          Do you remember that?

 6   A   Yes.

 7   Q   Okay.  And you produced emails that involved various

 8       other entities, correct, other than BNBM or CNBM Forest

 9       Products Canada?

10   A   Correct.

11   Q   Okay.  Is there a reason why you included those documents

12       when you produced documents for today's deposition?

13   A   Emails --

14   Q   Yes.  I mean, did you believe they were related in some

15       way to either BNBM or CNBM Forest Products Canada

16       Limited?

17                    MR. PFAEHLER:  Multiple objections to

18       form.  And you just asked another question before he

19       answered the prior one.

20                    MR. GAUGHAN:  Oh, strike the initial

21       question.

22                    MR. PFAEHLER:  And leading.

23          So I've got multiple objections to your second

24       question.  The proper question would be why did you

25       include them, not suggesting an answer to the witness.
```

Confidential - Subject to Further Confidentiality Review

```
 1                    MR. GAUGHAN:  Okay.  Well --

 2                    MR. PFAEHLER:  Who --

 3    Q   (By Mr. Gaughan)  Why did you include those documents?

 4    A   Just based on the assumption Jesse Wu work for BNBM, I

 5        just included all emails that -- that were from him or to

 6        him.

 7    Q   I understand.  And earlier there was some testimony about

 8        dates on invoices, that sort of thing.

 9            Do you recall that testimony?

10    A   Yes.

11    Q   So you -- I forget the entity that you said you'd get

12        that figure from.  What was the name of the company?

13    A   Northwest Log Scalers.

14    Q   Okay.  So you'd get a figure from them, and then you

15        would double-check that figure on your end; is that

16        correct?

17    A   Yes.  They'd provide us a -- the reports of the container

18        numbers, number of logs per container.

19    Q   And based on that process, you believe those numbers to

20        be accurate, those --

21    A   Yes --

22    Q   -- dates?

23    A   -- each log is tagged --

24                    MR. PFAEHLER:  Objection as to form.

25                    THE WITNESS:  As those logs come into
```

Confidential - Subject to Further Confidentiality Review

```
 1      our yard, we tag them -- it's a two-part tag.  One tag

 2      stays with the log, the other tag is scanned, and that

 3      information is transmitted to the Scaling Bureau.  And

 4      those tags stay on until -- until they arrive at their

 5      destination.

 6                       MR. GAUGHAN:  Okay.  Thank you.

 7      That's all I have.

 8                       MR. PFAEHLER:  A couple super quick

 9      follow-up questions here, going to the report again.

10                          FURTHER EXAMINATION

11      BY MR. PFAEHLER:

12   Q  You mentioned two numbers, I think it was about a million

13      and a half, and then I think 288,000, as the figures for

14      the -- was it gross revenues to Western Wood from

15      contracts with BNBM?  The first number for 2014, the

16      period you mentioned; and the second, 2015?  Correct?

17   A  Yes.

18   Q  And you said that you knew those numbers because you ran

19      a report?

20   A  Correct.

21   Q  And are you willing to produce that report to us here

22      today?

23                       MR. GAUGHAN:  Can we get a redacted

24      version of it, Counsel?

25                       MR. WITTMAN:  Here's what I would
```

Confidential - Subject to Further Confidentiality Review

```
 1     propose:  The documents Counsel refers to -- I'd be happy

 2     to show them to Counsel before admitting them --

 3     basically identify three numbers:  my client's actual

 4     cost, revenue from that account, differential being the

 5     profit.

 6        So my view, we would need to redact the columns for

 7     our actual cost and profit, and that would leave the

 8     account revenue from each contract.  If that's

 9     acceptable, then we can go off the record and --

10                    MR. GAUGHAN:  It's acceptable to me.

11     I don't know what your feeling is, Counsel.

12                    MR. WITTMAN:  I'm happy to show

13     Counsel --

14                    MR. GAUGHAN:  Yeah.

15                    MR. WITTMAN:  -- without admitting it,

16     what that would be, report would be.

17                    MR. GAUGHAN:  Well, maybe we can put a

18     placeholder in for now, we can substitute a redacted

19     version, and counsel -- these fine lawyers can ask your

20     client questions about the gross revenue calculation, if

21     that works for you, and we can just later substitute the

22     exhibit with redactions.

23                    MR. PFAEHLER:  Sorry, Matt.  I wasn't

24     listening to what you just --

25                    MR. GAUGHAN:  Well, I was just
```

Confidential - Subject to Further Confidentiality Review

1    agreeing with the proposition that we will allow you to

2    take questions -- ask questions about these documents

3    about the revenue figure, gross revenue figure, and that

4    we will later substitute a redacted -- a version of this

5    exhibit that removes the profit and cost figures.

6                    MR. PFAEHLER:  Right.  So I'm looking

7    at four columns, Mr. Wittman.

8                    MR. WITTMAN:  Yes.

9                    MR. PFAEHLER:  One has a --

10                   MR. WITTMAN:  Can we go off the record

11   a moment?

12                   MR. GAUGHAN:  Yes, let's go off the

13   record.

14                   MR. PFAEHLER:  Yes, let's go off the

15   record.  Much easier.

16                   THE VIDEOGRAPHER:  We are going off

17   the record.  The time is 12:10 p.m.

18                        (Discussion off the record.)

19                   THE VIDEOGRAPHER:  Back on record.

20   The time is now 12:16 p.m.

21                   MR. GAUGHAN:  Okay.  We are now

22   introducing Exhibits 60 to 62.  And Exhibit 60 is a

23   Western Wood job profitability summary from July 14 to

24   December 31, 2014, with respect to BNBM.

25       Exhibit 61 is a Western Wood job profitability

 1        summary from January through March 2015 with respect to

 2        BNBM.

 3            And Exhibit 62 is a Western Wood job profitability

 4        summary from July 17 to December 31, 2014, with respect

 5        to CNBM Forest Products Canada.

 6    Q   (By Mr. Pfaehler)  Now, with respect to each of these

 7        three exhibits, the plaintiff -- I'm sorry -- the

 8        deponent today brought with him documents that have four

 9        columns.

10            Mr. Salamanca, the first column again refers to?

11    A   That is the booking number.

12    Q   Right.  The first column is booking number.  The second

13        column is actual cost.  The third column is actual

14        revenue.  The fourth column is differential.

15                    MR. PFAEHLER:  Counsel -- and please

16        correct me, Mr. Wittman, if I get this wrong -- has

17        agreed that the exhibits that will be marked here and

18        will be produced will consist of the first column, the

19        booking number, and the third column, the actual revenue.

20        Actual cost and differential will be removed?

21                    MR. WITTMAN:  That's correct.

22                    MR. PFAEHLER:  Thank you.

23    Q   (By Mr. Pfaehler)  And, Mr. Salamanca, one last question.

24        You were reading the numbers from these charts today in

25        answer to questions from Mr. Gaughan a few minutes ago.

Confidential - Subject to Further Confidentiality Review

```
 1            My question to you is, do you have any independent

 2      knowledge of the -- the actual revenue that was -- the

 3      total amount of actual revenue derived, for example, for

 4      BNBM contracts between July 14th and December 31, 2014?

 5   A  On their side?

 6   Q  Do you have any independent knowledge of that total

 7      number, or do you know that only from having gone through

 8      the process of creating this table?

 9   A  Oh, only from going through that process.

10   Q  And same question with respect to the table for

11      January through March 2015, for BNBM.

12   A  Same.

13   Q  And same question for the table regarding CNBM.

14   A  Correct.

15                  MR. PFAEHLER:  No further questions.

16                  MR. CABOT:  I have nothing.

17                  MR. GAUGHAN:  I just have a few

18      questions with respect to the same calculations here.

19                     FURTHER EXAMINATION

20      BY MR. GAUGHAN:

21   Q  Now, this -- these sort of calculations, that's something

22      you could perform with respect to other customers of

23      Western Wood?

24   A  Yes.

25   Q  And are the actual revenue figures -- how is that
```

Confidential - Subject to Further Confidentiality Review

1    calculated?

2  A  Those are the revenue -- that just should -- should match

3    up to the invoice that we send the customer.

4  Q  Okay.  Do you compare against a wire transfer or another

5    payment that you would have received?

6  A  Can I compare?

7  Q  Did you.  I'm saying, would you?

8  A  Would I?

9  Q  Yes.

10              MR. PFAEHLER:  Objection to form.

11              THE WITNESS:  I could, yes.

12 Q  (By Mr. Pfaehler)  Okay.  That's not something you did

13    with respect to these particular items?

14 A  No.  I did not match up the payments received versus the

15    revenue numbers --

16 Q  Okay.

17 A  -- on these documents.

18              MR. GAUGHAN:  All right.  I guess

19    that's all I have.

20              MR. PFAEHLER:  Nothing further here.

21    Thank you for joining us, Mr. Salamanca.

22              THE WITNESS:  Thank you, guys.

23              MR. GAUGHAN:  Thank you.

24              THE VIDEOGRAPHER:  We are going off

25    the record.  The time is now 12:19 p.m.

1       (Exhibit Nos. 60-62 were identified and marked with

2        placeholders, to be marked for identification after

3       conclusion of deposition.)

4                                    (Signature reserved.)

5                                    (Deposition concluded at

6                                     12:19 p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Confidential - Subject to Further Confidentiality Review

```
 1    STATE OF WASHINGTON )    I, Cindy M. Koch, CCR, RPR, CRR,
                         ) ss CLR, a certified court reporter
 2    County of Pierce   )    in the State of Washington, do
                              hereby certify:
 3

 4
              That the foregoing deposition of JOHN D. SALAMANCA
 5    was taken before me and completed on May 22, 2015, and
      thereafter was transcribed under my direction; that the
 6    deposition is a full, true and complete transcript of the
      testimony of said witness, including all questions, answers,
 7    objections, motions and exceptions;

 8            That the witness, before examination, was by me
      duly sworn to testify the truth, the whole truth, and
 9    nothing but the truth, and that the witness reserved the
      right of signature;
10
              That I am not a relative, employee, attorney or
11    counsel of any party to this action or relative or employee
      of any such attorney or counsel and that I am not
12    financially interested in the said action or the outcome
      thereof;
13
              That I am herewith securely sealing the said
14    deposition and promptly delivering the same to
      Attorney Matthew C. Gaughan.
15
              IN WITNESS WHEREOF, I have hereunto set my
16    signature on the 26th day of May, 2015.
17

18

19

20

21

22

23                         _____

      Cindy M. Koch, CCR, RPR, CRR, CLR
24    Certified Court Reporter No. 2357
      (Certification expires 06/09/15.)
25
```

Confidential - Subject to Further Confidentiality Review

1                    -   -   -   -   -

                    E  R  R  A  T  A

2                    -   -   -   -   -

3

4       PAGE   LINE   CHANGE

5       ____   ____   _____

6         REASON:   _____

7       ____   ____   _____

8         REASON:   _____

9       ____   ____   _____

10        REASON:   _____

11      ____   ____   _____

12        REASON:   _____

13      ____   ____   _____

14        REASON:   _____

15      ____   ____   _____

16        REASON:   _____

17      ____   ____   _____

18        REASON:   _____

19      ____   ____   _____

20        REASON:   _____

21      ____   ____   _____

22        REASON:   _____

23      ____   ____   _____

24        REASON:   _____

25

Confidential - Subject to Further Confidentiality Review

```
 1

 2              ACKNOWLEDGMENT OF DEPONENT

 3

 4                  I,_____, do

 5      hereby certify that I have read the

 6      foregoing pages, and that the same is

 7      a correct transcription of the answers

 8      given by me to the questions therein

 9      propounded, except for the corrections or

10      changes in form or substance, if any,

11      noted in the attached Errata Sheet.

12

13

14      _____

15       JOHN SALAMANCA                    DATE

16

17

18      Subscribed and sworn

        to before me this

19      _____ day of _____, 20____.

20      My commission expires:_____

21

        _____

22      Notary Public

23

24

25
```

1                        LAWYER'S NOTES

2          PAGE  LINE

3          _____ _____ _____

4          _____ _____ _____

5          _____ _____ _____

6          _____ _____ _____

7          _____ _____ _____

8          _____ _____ _____

9          _____ _____ _____

10         _____ _____ _____

11         _____ _____ _____

12         _____ _____ _____

13         _____ _____ _____

14         _____ _____ _____

15         _____ _____ _____

16         _____ _____ _____

17         _____ _____ _____

18         _____ _____ _____

19         _____ _____ _____

20         _____ _____ _____

21         _____ _____ _____

22         _____ _____ _____

23         _____ _____ _____

24         _____ _____ _____

25         _____ _____ _____