# Exhibit "21"

**T: 6/2/15-6/4/15**
**Exhibit 42-1(H)**

**CONTEMPT**
**Exhibit 142**

Record and return to:
Frank Lyman, Esq.
McCauley Lyman LLC
617 Shore Drive
Edgewater, MD 21037

*This space reserved for Recorder's use only*

Property address: 602 Cedar Lane, Church Hill, Maryland 21623, Queen Anne's County, Maryland

# MORTGAGE

**Church Hill Solar Farm, LLC**, a Maryland limited liability company having an office at 1 North LaSalle Street, Suite 1515, Chicago, Illinois 60602 ("Mortgagor"), for consideration paid, grants the Premises to **China Triumph International Engineering Co., Ltd.**, a People's Republic of China limited liability company having an office at 2000 Zhongshanbeilu Road, Shanghai, China ("Mortgagee") with **MORTGAGE COVENANTS**, to secure the payment, performance and observance of all the Obligations.

"Obligations" means all of the debts, liabilities, agreements and other obligations of Mortgagor due Mortgagee under the Loan Documents, whether direct or indirect, absolute or contingent, joint or several, due or to become due, now existing or arising in the future including, but not limited to, payment of the Fixed Price, as defined in the EPC Agreement.

"Loan Documents" includes, without limitation, all obligations of Mortgagor under the Engineering, Procurement and Construction Agreement between the parties, dated on or about November 25, 2014 (the "EPC Agreement"), this Mortgage, the Assignment of Lease between the parties with respect to the Premises, dated on or about November 25, 2014, all other documents delivered to Mortgagee in connection with this Mortgage by Mortgagor or by others, and all amendments, restatements, modifications, extensions and renewals of this Mortgage and the other agreements and documents referred to above.

"Premises" includes the following, all of which are subject to this Mortgage:

(i)  The land in Queen Anne's County, Maryland commonly known as 602 Cedar Lane, Church Hill, Maryland 21623, more particularly described in Exhibit A attached;

(ii)  All buildings, structures and improvements now or at any time in the future on the land;

(iii)  All "Fixtures", which term means (1) all goods, equipment, fixtures, building materials and tangible personal property now or in the future located on, attached to or incorporated in the construction of and used in connection with the operation of the Premises including, but not limited to, all energy generating facilities, heating, lighting, power, plumbing, electrical, communications, ventilating, refrigerating, air conditioning, sprinkler, incinerating and building service equipment, and (2) all related accessories, additions and replacements;

EXHIBIT 6
WIT: Kim
DATE: 4-17-15
Juliana Zajicek CSR

HIGHLY CONFIDENTIAL-RESTRICTED-SUBJECT TO PROTECTIVE ORDER

    (iv)    All right, title and interest of Mortgagor in all easements, rights (including mineral, air and water rights), privileges, appurtenances, licenses, permits and governmental approvals, now or in the future pertaining to the Premises; and

    (v)    All rents, income, profits, royalties or accounts receivables from the Premises.

**Section 1 - General Covenants of Mortgagor**. Until the Obligations are paid, performed and observed in full, Mortgagor covenants and agrees as follows:

    1.1    **Insurance**. To keep all buildings, improvements and Fixtures which are part of the Premises insured against direct risk of physical loss in an amount not less than 100% of their replacement cost. Mortgagor agrees to maintain such other insurance and in such amounts as Mortgagee reasonably requests, including, without limitation, business interruption/rent loss insurance in an amount and on terms satisfactory to Mortgagee. If a structure which is part of the Premises is within a flood hazard area, Mortgagor agrees to carry flood insurance to the extent required under applicable law or by Mortgagee. Mortgagor agrees to keep all buildings and improvements under construction insured under a Builder's Risk, Completed Value, non-reporting form of policy which provides coverage for "completion and/or premises occupancy." All insurance will (i) be written with a standard mortgagee clause by companies of recognized responsibility authorized to write such insurance in Maryland and having a Best's financial rating of B or better, (ii) be in amounts and on forms satisfactory to Mortgagee, (iii) be payable in case of loss to Mortgagee, as its interest may appear, and (iv) contain a provision that it may not be cancelled or modified without at least ten (10) days prior written notice to Mortgagee. Mortgagor agrees to deliver to Mortgagee, when requested, satisfactory evidence of (a) all existing insurance policies, (b) new policies for insurance about to expire at least thirty (30) days before the expiration and (c) payment of all insurance premiums.

    1.2    **Taxes**. To pay or cause to be paid, before the last day on which payment may be made without penalty or interest (the "Payment Date") all taxes (or payments in lieu of taxes), special or general assessments, water and sewer charges and other municipal charges with respect to the Premises ("Taxes") and to furnish evidence of payment to Mortgagee. After demand by Mortgagee, Mortgagor agrees (i) to deposit with Mortgagee within 10 business days of Mortgagee's demand, a sum equal to that fraction of the Taxes for each year estimated by Mortgagee to be sufficient to provide, in total, a sum adequate to pay the Taxes on the Payment Date, (ii) to deposit with Mortgagee the balance necessary to pay the Taxes in full before the Payment Date and (iii) to forward to Mortgagee bills for the Taxes as soon as they are received by Mortgagor. Mortgagee may invest all sums deposited by Mortgagor for its own account without obligation to pay interest to Mortgagor.

    1.3    **Mortgages and Encumbrances**. To keep the title to the Premises free of all mortgages and other encumbrances, except the lien for Taxes not yet due and encumbrances assented to by Mortgagee, regardless of whether the mortgage or encumbrance has priority over this Mortgage.

    1.4    **Maintenance and Use of Premises**. To maintain the Premises in as good condition as they are as of the date of this Mortgage or may be in the future, reasonable wear and tear excepted. Mortgagor agrees not to permit (i) removal, demolition or other waste of the Premises, (ii) lapse or revocation of any license, permit or other governmental authorization issued with respect to the Premises, (iii) material change in the structure or use of the Premises or (iv) violation of a law or

HIGHLY CONFIDENTIAL-RESTRICTED-SUBJECT TO PROTECTIVE ORDER

ordinance affecting the Premises or its use. At Mortgagee's request, Mortgagor agrees to provide evidence of compliance with the provisions of this or any other covenant in the Loan Documents.

1.5  **Leases**. To deliver to Mortgagee for examination and copying originals of any and all leases, licenses, franchises and other agreements under which a person occupies any part of the Premises ("Leases"). Mortgagor assigns the Leases and all rent, income, fees and other amounts due Mortgagor under the Leases ("Rents") to Mortgagee as additional security for the Obligations. Mortgagor grants to Mortgagee full power, as irrevocable attorney-in-fact of Mortgagor, to execute and deliver assignments of the Leases and the Rents to itself, to any future holder of this Mortgage or to any person claiming title to the Premises as a result of foreclosure proceedings. After the occurrence of an Event of Default, Mortgagee may in accordance with Section 2 hereof, without waiving any of its other rights, collect the Rents and enforce all obligations of tenants under the Leases without taking possession of the Premises and without performing any obligations of the landlord under the Leases.

1.6  **Environmental Laws and Compliance**. To comply with and to cause the Premises to comply with all applicable Federal, state and local laws, codes, ordinances, rules, regulations and interpretations now or in the future existing, and all applicable orders of administrative agencies including, but not limited to, the Comprehensive Environmental Response Compensation and Liability Act, the Resource Conservation and Recovery Act of 1976, the Superfund Amendments and Reauthorization Act of 1986 and Maryland laws relating to the environment, health, safety, sanitation, underground storage tanks and the "release or threat of release" of Hazardous Materials (the "Environmental Laws"). The term "Hazardous Materials" means (i) lead paint, asbestos, radon and (ii) "oil", "hazardous materials", "hazardous wastes" and "hazardous substances" as those terms are defined in the Environmental Laws.

1.7  **Copies of Notices**. To give to Mortgagee, immediately, copies of all notices, reports, citations and other communications given or received by Mortgagor in connection with any Environmental Laws whether or not relating to the Premises.

1.8  **Testing and Remediation**. Mortgagee or its agents may enter the Premises at any time and perform, or may require Mortgagor to deliver to Mortgagee, whatever tests it considers necessary to determine the existence or non-existence of Hazardous Materials. If Hazardous Materials exist on the Premises, Mortgagee has the right (but not the obligation) to cause the Hazardous Materials to be contained and/or removed, and, using contractors of its choice, to enter the Premises to perform any remedial action it considers necessary, all without incurring liability to Mortgagor for any action taken by Mortgagee or its agents.

1.9  **Indemnification**. To defend, indemnify and hold Mortgagee and its directors, officers, agents and employees harmless against all claims, losses and liabilities, including reasonable attorneys' fees and costs of litigation, incurred by Mortgagee on account of (i) Mortgagor's failure to comply with Environmental Laws, (ii) a release or threat of release of Hazardous Materials on the Premises, (iii) any activity on or condition of the Premises and (iv) any future law, regulation, judicial order or governmental action affecting the Premises.

1.10  **Alienation**. Not to cause or permit, directly or indirectly, whether voluntarily or by operation of law, (i) title to all or part of the Premises to become vested in a person other than Mortgagor, or (ii) any change in ownership of the legal or beneficial interest in Mortgagor. If any of the changes described above occur, in addition to exercising remedies available to it, Mortgagee may,



HIGHLY CONFIDENTIAL-RESTRICTED-SUBJECT TO PROTECTIVE ORDER

000088

at its option and without notice to Mortgagor, deal with the successor in interest with reference to this Mortgage and the Obligations in the same manner as with Mortgagor, without reducing or discharging Mortgagor's liability for the Obligations. When requested, without delay Mortgagor shall disclose to Mortgagee the name, address and ownership interest of each legal and beneficial owner of the Premises or Mortgagor.

**Section 2 - Events of Default**. One or more of the following events or conditions is an Event of Default and a breach of a condition of this Mortgage:

    (i)    The failure to maintain insurance as required in accordance with Section 1.1 hereof;

    (ii)    The failure to perform or observe an Obligation (other than maintenance of insurance) hereunder which continues for thirty (30) days after written notice of such failure from Mortgagee to Mortgagor; the thirty (30) day period may be extended for up to an additional thirty (30) days (sixty (60) days in the aggregate) so long as Mortgagor is diligently pursuing cure and such cure cannot be completed within such initial thirty (30) day period; or

    (iii)    The occurrence of an Event of Default under the EPC Agreement.

**Section 3- Rights and Remedies**. Without prejudice to Mortgagee's rights with respect to Obligations payable on demand, after the occurrence of an Event of Default, Mortgagee may, without notice, except to the extent notice is required by law, exercise the rights and remedies provided in this Section 3, conferred by law or under the Loan Documents with respect to the Premises, Mortgagor or any other person. Mortgagee's rights and remedies are cumulative and not exclusive of or alternative to any rights or remedies it would otherwise have. A delay or failure by Mortgagee in exercising or enforcing its rights or remedies does not constitute a waiver.

3.1    **Remedies**. After the occurrence of an Event of Default, Mortgagee may:

    (i)    Declare the Obligations immediately due and payable, without presentment, notice, protest or further demand, all of which are hereby expressly waived;

    (ii)    Exercise the **STATUTORY POWER OF SALE**;

    (iii)    Initiate actions or proceedings available to Mortgagee under applicable law to protect its interest in the Premises and the Obligations; and/or

    (iv)    Petition for the appointment of a receiver of the Premises, which appointment may be made *ex parte* and without notice except to the extent notice is required by law, without regard to the solvency of Mortgagor at the time of application for the receiver and without regard to the value of the Premises.

3.2    **Receiver**. Mortgagor consents to the appointment of Mortgagee or other qualified person as receiver, to take possession of and to operate the Premises and to collect the Rents. Notwithstanding the appointment of a receiver or other custodian, Mortgagee is entitled, as pledgee, to the possession and control of all cash, deposits and instruments at the time payable or deliverable under this Mortgage.

HIGHLY CONFIDENTIAL-RESTRICTED-SUBJECT TO PROTECTIVE ORDER

000089

3.3   **Specific Performance**. Failure by Mortgagor to perform its agreements contained herein will result in irreparable harm to Mortgagee for which Mortgagee has no adequate remedy at law. Therefore, Mortgagor agrees that its agreements contained herein are specifically enforceable by Mortgagee.

3.4   **Foreclosure Sales**. Mortgagee has the right in case of a sale which it is entitled to make, to sell the Premises at public auction, as a whole and without regard to other collateral now or in the future securing the Obligations. The foreclosure sale may be held at the offices of Mortgagee or on or near the Premises, without notice or demand, except to the extent notice or demand is required by law.

3.5   **Foreclosure Expenses, Surplus**. If (i) foreclosure, bankruptcy or other legal proceedings involve Mortgagee's interest under this Mortgage, whether the proceedings are begun by Mortgagee or others and whether the proceedings are suspended or terminated or the Premises redeemed, or (ii) Mortgagee takes possession of the Premises, Mortgagee will be entitled to collect and Mortgagor agrees to reimburse Mortgagee for all expenses, including reasonable attorneys' fees, incurred by Mortgagee in the foreclosure, bankruptcy or other legal proceeding or in the maintenance, protection and management of the Premises. If surplus proceeds are realized from a foreclosure sale, Mortgagee will not be liable for interest on the proceeds pending distribution, and all costs and reasonable attorneys' fees incurred by it in proceedings to determine the person or persons entitled to the surplus will be paid from the surplus proceeds.

3.6   **Forbearance not a Waiver**. The liability of Mortgagor will not be reduced, the priority of this Mortgage will not be affected, and the rights of Mortgagee with respect to Mortgagor or the security for the Obligations will not be impaired by any of the following events, regardless of whether Mortgagee receives additional consideration: (i) the sale of all or part of the Premises, (ii) a forbearance by Mortgagee, (iii) an extension of the time for payment or performance of the Obligations, (iv) a release of security for or a guarantor of the Obligations or (v) an indulgence given by Mortgagee to Mortgagor or to any other person having an interest in the Premises or liable for the Obligations. Mortgagor waives notice of any extension, forbearance or indulgence and agrees that no waiver, express or implied, by Mortgagee of a default by a party to the Loan Documents will constitute a waiver of a future default in the same or any other provision of the Loan Documents.

**Section 4- Damage to Premises**. Mortgagor appoints Mortgagee as its irrevocable attorney-in-fact (i) to adjust and to settle claims on account of damage to the Premises resulting from a taking or casualty, (ii) to receive all condemnation and insurance proceeds ("Proceeds") arising out of the damage and (iii) to endorse in favor of itself or any other person drafts or checks for Proceeds received by it.

All Proceeds may be applied by Mortgagee, at its option, to expenses including, but not limited to, the reasonable fees and disbursements of attorneys and other professionals incurred by Mortgagee in collecting the Proceeds, to the cost of restoring the Premises or to the Obligations, whether or not then due, in any order Mortgagee determines.

If Mortgagee elects to apply the Proceeds to restoration, it may, in its discretion, (a) pay the Proceeds to Mortgagor for application to the cost of the work, or (b) advance the Proceeds from time to time to Mortgagor and/or its contractor for application to the cost of the work as the cost is certified to Mortgagee by an architect or contractor in charge of the restoration who has been approved in writing by Mortgagee.

HIGHLY CONFIDENTIAL-RESTRICTED-SUBJECT TO PROTECTIVE ORDER

000090

Mortgagee is not obligated to make advances if, as a result, the balance of the Proceeds are or will become less than the amount specified in the architect's or contractor's certificate as the amount required to complete the restoration. Unless Mortgagee elects to apply the Proceeds to the Obligations, upon receipt by Mortgagee of satisfactory evidence that the restoration has been completed, that the cost of all labor and materials has been paid in full and that there are no liens on the Premises and if no Event of Default exists, Mortgagee agrees to pay the balance of the Proceeds held by it to Mortgagor. If the Proceeds held by Mortgagee are insufficient to pay the entire cost of restoration, Mortgagor agrees to pay the deficiency on demand.

**Section 5- Payments by Mortgagee**. Mortgagee is authorized but not obligated (i) to pay all Taxes with accrued interest, penalties and charges, (ii) to pay the premiums for insurance required under the Loan Documents, (iii) to incur and pay reasonable expenses, including attorneys' fees, in protecting its rights under the Loan Documents, and maintaining, protecting or managing the collateral securing the Obligations, (iv) to pay indebtedness secured by a mortgage of real estate or security interest in property or Fixtures included as part of the Premises, (v) to add all amounts paid or incurred for the above purposes to the principal amount of the Obligations, and (vi) to apply to the above purposes or to the repayment of amounts paid by Mortgagee, sums paid under the Loan Documents as interest or principal. The amounts paid by Mortgagee will bear interest at the highest rate payable under the Loan Documents and will be payable on demand.

**Section 6 - Entry by Mortgagee**. Mortgagee or its agents may enter the Premises at any time, before or after an Event of Default, to inspect the Premises, to appraise the Premises, to determine compliance with the provisions of the Loan Documents and to take any action while on the Premises authorized under this Mortgage or which it considers necessary to preserve the value of the Premises. Entry by Mortgagee for the purposes authorized under this Section will not be considered entry for any other purpose or constitute possession of the Premises. Mortgagor agrees to reimburse Mortgagee on demand for all expenses incurred in connection with an entry made under this Section, including the cost of appraisal, testing, remedial action or other activities by Mortgagee or its agents while on the Premises.

**Section 7 - Notices and Communications**. All notices, demands, requests and other communications provided for or permitted under this Mortgage must be in writing and be delivered by hand or sent by nationally recognized and reputable overnight delivery service, express mail, certified mail or first-class mail, postage prepaid, to the parties, respectively at the following addresses:

    (a)    If to Mortgagee, at the address stated at the beginning of this Mortgage (or at such other address as Mortgagee designates in writing to Mortgagor), with a copy to the persons Mortgagee designates in writing to Mortgagor, or

    (b)    if to Mortgagor, at the address stated at the beginning of this Mortgage (or at such other address as Mortgagor designates in writing to Mortgagee) with a copy to the persons Mortgagor designates in writing to Mortgagee.

A communication provided for in this Mortgage will become effective only when the person to whom it is given receives it or is considered to have received it. If it is mailed by express, certified

HIGHLY CONFIDENTIAL-RESTRICTED-SUBJECT TO PROTECTIVE ORDER

000091

or first-class mail, it will be considered to be received on (i) the second business day after being mailed or (ii) the day of its receipt, whichever is earlier.

**Section 8 - Miscellaneous Provisions**. The following miscellaneous provisions are applicable to this Mortgage:

8.1 **Successors and Assigns**. For purposes of this Mortgage, the term "Mortgagee" means Mortgagee and its successors and assigns and any subsequent holder or holders of the Mortgage. The term "Mortgagor" includes Mortgagor and any subsequent owner or owners of the equity of redemption of the Premises assented to by Mortgagee. All of the agreements of Mortgagor are binding upon the successors and assigns of the original Mortgagor and any person claiming under Mortgagor.

8.2 **Amendment**. This Mortgage may not be amended except by written agreement signed by Mortgagor and Mortgagee.

8.3 **Headings**. The headings contained in this Mortgage are for reference purposes only and do not affect the meaning or interpretation of this Mortgage.

8.4 **Governing Law**. This Mortgage will be construed under and governed by the laws of the State of Illinois.

8.5 **Severability**. If any non-material part of this Lease is held to be unenforceable, the rest of the Mortgage will continue in effect. If a material provision is determined to be unenforceable and the Party which would have been benefited by the provision does not waive its unenforceability, then the Parties shall negotiate in good faith to amend the Mortgage to restore to the Party that was the beneficiary of such unenforceable provision the benefits of such provision. If the Parties are unable to agree upon an amendment that restores the Parties benefits, an arbitrator or court of jurisdiction may reform the Mortgage as deemed just and equitable in order to restore to the Party that was the beneficiary of the unenforceable provision the economic benefits of such provision.

8.6 **Consent to Jurisdiction; Waivers**. MORTGAGOR IRREVOCABLY AND UNCONDITIONALLY (i) SUBMITS TO PERSONAL JURISDICTION IN THE STATE OF ILLINOIS OVER ANY ACTION OR PROCEEDING ARISING OUT OF THE LOAN DOCUMENTS, AND (ii) WAIVES ALL PERSONAL RIGHTS UNDER THE LAWS OF ANY STATE (a) TO TRIAL BY JURY, (b) TO OBJECT TO JURISDICTION WITHIN THE STATE OF ILLINOIS OR VENUE IN A PARTICULAR FORUM WITHIN THE STATE OF ILLINOIS AND (c) TO CLAIM OR RECOVER ANY DAMAGES OTHER THAN ACTUAL DAMAGES INCLUDING EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES. MORTGAGOR AGREES THAT, IN ADDITION TO METHODS OF SERVICE OF PROCESS PROVIDED FOR UNDER APPLICABLE LAW, SERVICE MAY BE MADE BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, DIRECTED TO MORTGAGOR AT THE ADDRESS PROVIDED IN THE RECITALS HERETO (OR AT SUCH OTHER ADDRESS AS MORTGAGOR DESIGNATES IN WRITING TO MORTGAGEE PURSUANT TO SECTION 7 HEREOF), WHICH SERVICE WILL BE COMPLETE FIVE (5) DAYS AFTER BEING MAILED. This provision may not be construed to prevent Mortgagee from bringing an action or proceeding or exercising its rights in any other jurisdiction. Mortgagor acknowledges that it has been informed by Mortgagee that the provisions of this Section constitute a material inducement upon which Mortgagee has relied, is relying and will rely in entering into this Mortgage and the other Loan Documents, and that it has

HIGHLY CONFIDENTIAL-RESTRICTED-SUBJECT TO PROTECTIVE ORDER

reviewed the provisions of this Section with its counsel. Either party may file an original counterpart or a copy of this Section with any court as written evidence of the consent of Mortgagor and Mortgagee to the waiver of their rights to trial by jury.

WITNESS the execution hereof under seal November 25, 2014.

**Church Hill Solar Farm, LLC**

By Sunpin Solar Chicago, LLC

By: _[signature]_

Print Name: Tian Li

Its: Chairman
Authorized Signatory

STATE OF New Jersey )
COUNTY OF Essex )

On November 26, 2014, TIAN LI of **Sunpin Solar Chicago, LLC**, (the "Principal") personally appeared before me and proved to me through satisfactory evidence of identification, which was State ID that the Principal is the person whose name is signed on the preceding or attached document, and acknowledged to me that (he) (she) signed it voluntarily for its stated purpose as Member and Authorized Signatory for **Church Hill Solar Farm, LLC**, a limited liability company.

_[signature]_
Notary Public

CHRISTINE A. OERTEL
NOTARY PUBLIC
NEW JERSEY
COMMISSION EXPIRES: 04/13/2019

Printed Name: Christine A Oertel

My Commission Expires: 4/13/19

This is to certify that the within instrument has been prepared under the supervision of the undersigned Maryland attorney.

By: _____
Francis Frank Lyman

CTIEC – CHSF Mortgage

Page 8 of 9

HIGHLY CONFIDENTIAL-RESTRICTED-SUBJECT TO PROTECTIVE ORDER

000093

# EXHIBIT A

## TO MORTGAGE
## FROM
## Church Hill Solar Farm, LLC
## TO
## China Triumph International Engineering Co., Ltd.

The land in Queen Anne's County, Maryland, described as follows:

The Site (Queen Anne's County Tax Map 23, parcel 22, lot 1) is located at approximately 39.111539 degrees latitude and -75.957 degrees longitude, immediately adjacent to the Price Substation, consisting of approximately 49 acres along Cedar Lane, bisected by a Delmarva Power transmission line easement, and is part of the approximately 348 acre farm owned by R. Brett Patchett, Dorsey D. Patchett, Jr. and Sally Ann Patchett, Trustee, located at 200 New Manor Farm Lane, Church Hill, MD 21623.

HIGHLY CONFIDENTIAL-RESTRICTED-SUBJECT TO PROTECTIVE ORDER