000066

# EPC AGREEMENT

for the Maryland Church Hill 7.344 MW Solar Power Project

by and between

**Church Hill Solar Farm, LLC**



and

## China Triumph International Engineering Co., Ltd



CTIEC

PENG SHOU: Exhibit 364

November 26th, 2014



EXHIBIT _8_
WIT: _Kim_
DATE: _4·17·15_
Juliana Zajicek CSR

**CONTEMPT**
**Exhibit 144**

HIGHLY CONFIDENTIAL-RESTRICTED SUBJECT TO PROTECTIVE ORDER

000067

# ENGINEERING, PROCUREMENT AND CONSTRUCTION AGREEMENT
## (Church Hill Solar Farm Project)

This Agreement (the "**Agreement**") is by and between **Church Hill Solar Farm, LLC**, a Maryland limited liability company ("**CHSF**"), with offices located at 1 North LaSalle Street, Suite 1515, Chicago, Illinois 60602 and **China Triumph International Engineering Co., Ltd.**, a People's Republic of China company ("**EPC Contractor**") with an address of 2000 Zhongshanbeilu Road, Shanghai, China.

## RECITALS

A. EPC Contractor is in the business of designing and installing energy systems.

B. CHSF, the special purpose project entity, is wholly owned by Sunpin Solar Chicago, LLC, and is an affiliate of Sunpin Solar Development, LLC.

C. CHSF desires to install a 7.344 MW DC (6.0 MW AC) Photovoltaic System entitled the Church Hill Solar Farm (the "**Project**") at the property commonly known as 602 Cedar Lane, Church Hill, Maryland 21623 (the "**Properties**"). CHSF desires to obtain the services of EPC Contractor to procure equipment and perform design services, construction, and commissioning for the Project.

D. As per the EPC Framework Agreement dated November 3, 2014 entered into by the parties hereto ("**Framework Agreement**"), EPC Contractor is interested in providing the foregoing services to CHSF for the Project.

**Exhibits**

A – Scope of Work
B – Project Schedule
C – Schedule of Values – Fixed Price Allocation
D – Schedule of Equipment
E – Warranties
F – Security Agreement

## AGREEMENT

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are acknowledged, the parties hereby agree as follows:

1. Scope of Work. EPC Contractor, its employees, consultants and contractors shall perform the design and engineering, procurement, construction, installation and interconnection work for the Project, comprising a "turnkey" 7.344 megawatt photovoltaic power system, as set forth herein and further delineated in the Project Scope of Work attached as Exhibit A. EPC Contractor and CHSF shall each appoint authorized representatives to act on their behalf in all communications with respect to the Project.

HIGHLY CONFIDENTIAL-RESTRICTED-SUBJECT TO PROTECTIVE ORDER

000068

2. Project Cost/Payment Schedule. Fixed Price, all inclusive Contract. CHSF agrees to pay EPC Contractor the EPC Contractor's Fixed Price as defined herein. The budgeted total contract amount of US$1.512/**watt**, comprising a total Fixed Price of ELEVEN MILLION ONE HUNDRED THREE THOUSAND FIVE HUNDRED EIGHTY FOUR dollars (US$11,103,584.00 as set forth in Exhibit C ("**Fixed Price**"), excludes applicable sales taxes, permit fees and testing fees for the Project but is inclusive of all costs for engineering, procurement, financing and construction for the Project. The Fixed Price may be changed pursuant to the provisions of Section 26 (relating to changes). The Parties agree that this Contract shall result in EPC Contractor completing all activities necessary to effectuate the completion of the Project as an operating, interconnected and commissioned solar photovoltaic electric power plant (excluding land acquisition rights, the processing of permits for the Project and other preliminary development activities as delineated below), and with a design life of 25 years. Payments from CHSF to EPC Contractor shall be made in accordance with the requirements of Section 8. EPC Contractor is NOT responsible for any federal, state, and local taxes relating to or arising from the Project. The Fixed Price includes the Project Administrative Costs (1.5% of Project Construction Costs) and Profit Margin (7% of Project Construction Costs) as set forth in Paragraph 5 of the Framework Agreement.

3. Description of Equipment. Equipment to be supplied by EPC Contractor is set forth in Exhibit A.

4. Compliance With Applicable Law. EPC Contractor shall design and engineer the Project in accordance with all federal, state and local laws, rules, regulations, ordinances, policies and procedures materially applicable to the Project and in existence at the date of execution of this Agreement.

5. Permit Process. EPC Contractor shall prepare for CHSF all applications and other submissions required to obtain all permits required for the Project. EPC Contractor, on behalf of CHSF, shall promptly submit and be responsible to pay for any and all such required permit applications to the appropriate government agency(ies) having jurisdiction over the Project. After EPC Contractor has submitted the required permit applications, EPC Contractor shall actively manage and support all permit processes supplying additional information as required, and secure permits when approvals are completed. CHSF shall support EPC Contractor as needed by providing documents, personnel, or other support as needed to aid the EPC contractor in obtaining permits.

6. Final Design and Engineering Phase. EPC Contractor and its subcontractors shall provide design and engineering services by competent personnel to complete the design and engineering work for the Project, including the preparation of (a) final design, engineering and construction documents, (b) all required permit applications, and (c) an updated implementation schedule for the Project. EPC Contractor shall submit all documents produced as part of the design and engineering services to CHSF for review and approval in accordance with the terms of this Agreement.

6.1 Final Design Documents. Within 30 days of the effective date of this Agreement, EPC Contractor shall deliver Final Design Documents to CHSF. "Final Design Documents" shall include the following: (a) drawings and specifications sufficient to establish the size, quality and

HIGHLY CONFIDENTIAL-RESTRICTED-SUBJECT TO PROTECTIVE ORDER

000069

character of the entire Project, its structural, mechanical, heating and electrical systems and the materials needed and construction steps necessary to complete the Project; (b) design and engineering drawings and specifications for laying and connecting required wiring/piping and switch gear, placement of the PV modules, and other components reasonably necessary for the installation, testing and commissioning of the Project as an operational system; (c) equipment and material specifications; (d) any other drawings or design documents necessary to obtain all permit and/or governmental approvals for the Project in accord with the Schedule. A 90% design review will be held prior to submission of Final Design Documents.

6.2 <u>Project Schedule.</u> A Preliminary Project Schedule will be developed with CHSF and will be considered <u>Exhibit B</u> of this Agreement. At the end of the final design and engineering phase, EPC Contractor shall update and submit to CHSF for review and approval a project schedule ("**Project Schedule**") providing phasing of construction and commissioning, including dates for building shut downs, times of commencement and completion required for each phase or category of the Project, ordering and delivery of system components requiring lead time, adequate periods of time for CHSF's review and approval of the Final Design Documents and government agency(ies) review of applications and submissions prepared by EPC Contractor and/or CHSF for any and all permits required for the Project, and working around any critical timing requirements of CHSF. The EPC Contractor shall achieve substantial completion of the Project not later than as provided for in the approved Project Schedule, subject to adjustments as provided for in this Agreement for events of Force Majeure and/or changes in the schedule approved by CHSF. EPC Contractor shall update and reissue the Project Schedule in the event of such adjustments.

6.3 <u>CHSF Review and Approval of Final Design Documents, Materials, Contractors, Consultants and Project Schedule.</u> CHSF shall have the right to approve (prior to finalization or engagement) and request modifications to the following: a) Final Design Documents; b) all materials to be used on the Project (including the solar modules, inverters, racking and balance of system materials/equipment ("**BOS**")); c) contractors; d) design and general consultants; and e) the Project Schedule. EPC Contractor shall provide CHSF with up to two (2) revisions of <u>Project</u> drawings. Additional drawings requested will be billed on an hourly basis going forward. If CHSF requested changes that will increase cost or change the Project Schedule, the Change Order process described in Section 26 may be applicable.

7. <u>Construction Phase.</u> During construction, EPC Contractor shall carry out the Project in accordance with the latest approved Project Schedule and the terms and conditions of this Agreement. EPC Contractor shall also (a) schedule and conduct weekly meetings or conference calls with CHSF to discuss procedures, progress and scheduling of the Project; (b) schedule and coordinate the sequence of construction and assignment of space at the Property in accordance with the Project Schedule, the Final Design Documents, this Agreement and all building rules and regulations; (c) record the progress of the Project and submit weekly written progress reports to CHSF showing percentages of the Project completed; (d) supply a plan of action to CHSF regarding courses of action to correct any situations where the Project is not meeting the requirements of the Final Design Documents or Project Schedule; (e) make recommendations to CHSF with respect to requests for change in the Project and prepare proposed Change Orders (as defined herein) which incorporate any modification to the Project; and (f) maintain at the Project site, one record copy of the Final Design Documents, the Agreement, relevant addenda, Change Orders or other modifications thereto and make all such records available to CHSF upon request

HIGHLY CONFIDENTIAL-RESTRICTED-SUBJECT TO PROTECTIVE ORDER

000070

and deliver them to CHSF upon completion of the Project. CHSF shall cooperate with EPC Contractor in the foregoing duties and responsibilities and shall arrange for necessary access to the Property for EPC Contractor and its subcontractors to carry out the Project, subject to the security procedures of the Property.

7.1  The EPC Contractor shall supervise and direct the construction and installation work (the "**Work**"), using the EPC Contractor's best skill and attention. Subject to EPC remaining in compliance at all times with the Project Schedule and Budget, CHSF will not have control over or charge of and will not be responsible for construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work, since the EPC Contractor shall be solely responsible for and have control over construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the Agreement.

7.2.  Unless otherwise provided in this Agreement, the EPC Contractor shall provide and pay for labor, materials, equipment, tools, construction equipment and machinery, transportation, and other facilities and services necessary for the proper execution and completion of the Work, whether temporary or permanent and whether or not incorporated or to be incorporated in the Work.

7.3  The EPC Contractor shall enforce strict discipline and good order among the EPC Contractor's employees and other persons carrying out the Work. The EPC Contractor shall not permit employment of unfit persons or persons not skilled in tasks assigned to them.

7.4  All workmanship, materials and equipment furnished under the Agreement shall be of good quality and new. The Work shall be free from defects in materials, workmanship and design and otherwise conform with the requirements of the Agreement. Work not conforming to these requirements, including substitutions not properly approved and authorized, may be considered defective. If required by CHSF, the EPC Contractor shall furnish satisfactory evidence as to the kind and quality of materials and equipment.

7.5  The EPC Contractor shall comply with and give notices required by laws, ordinances, rules, regulations, and lawful orders of public authorities bearing on performance of the Work. The EPC Contractor shall promptly notify CHSF if any drawings or specifications are observed by the EPC Contractor to be at variance therewith.

7.6  The EPC Contractor shall be responsible to CHSF for the acts and omissions of the EPC Contractor's employees, subcontractors and their agents and employees, and other persons performing portions of the Work under a contract with the EPC Contractor.

7.7  The EPC Contractor shall make reasonable efforts to keep the premises and surrounding area free from accumulation of waste materials or rubbish caused by operations under the Agreement. At completion of the Work, the EPC Contractor shall remove from and about the Project waste materials, rubbish, the EPC Contractor's tools, construction equipment, machinery and surplus materials.

HIGHLY CONFIDENTIAL-RESTRICTED-SUBJECT TO PROTECTIVE ORDER

000071

7.8 The EPC Contractor shall pay all royalties and license fees, if any; shall defend suits or claims for infringement of patent rights and shall hold CHSF harmless from loss on account thereof.

7.9 Subject to the provisions of Section 8.1B (providing the EPC Contractor, *inter alia*, a security interest in the Project), the EPC Contractor warrants that title to all Work, materials and equipment will pass to CHSF upon execution of the Bill of Sale as provided in Section 13, free and clear of all liens, claims, security interests or encumbrances and that no Work, materials or equipment will have been acquired by the EPC Contractor, or by any person performing Work at the site or furnishing materials and equipment for the Project, subject to an agreement under which an interest therein or an encumbrance thereon is retained by the person providing such Work, materials or Equipment.

7.10 EPC Contractor shall not cause or permit any Hazardous Substances or Hazardous Materials (as defined below) to be used, stored, generated or disposed of, on or in the Property or any other portion thereof, without compliance with applicable federal, state and local laws, ordinances, regulations and statutes now in force or which are hereafter enacted, relating to, governing or regulating Hazardous Substances or Hazardous Materials ("**Environmental Laws**"). EPC Contractor will abide by all applicable Environmental Laws in performing its duties hereunder, including without limitation all Environmental Laws, pertaining to documentation and record-keeping and will make such records available to CHSF upon request. If EPC Contractor encounters any Hazardous Substance on the Property, the EPC Contractor shall immediately advise CHSF and, if prudent or required pursuant to Environmental Laws, cease work on the affected area of the Property until the Hazardous Substance is handled in a manner acceptable to CHSF. EPC Contractor shall indemnify and hold CHSF harmless from loss on account of any breach of its obligations under this Section 7.10. "**Hazardous Substances**" or "**Hazardous Materials**" shall mean any toxic or hazardous material, waste, pollutant or substance defined as a Hazardous Substance or Hazardous Material under applicable Environmental Laws.

7.11 CHSF understands and agrees that the EPC Contractor will satisfy some of its obligations under this Agreement by subcontracting with one or more affiliates of CHSF. CHSF agrees that EPC Contractor shall have no responsibility or liability whatsoever for any obligation so delegated by subcontract to a CHSF affiliate.

8. Payments. CHSF shall pay the Fixed Price to the EPC Contractor. The Fixed Price may be changed pursuant to the provisions of Section 26 (relating to changes). CHSF shall make payments on account of the Fixed Price to the EPC Contractor in the manner set forth below.

8.1 CHSF shall pay $200,000 of the Fixed Price within five (5) days of the execution of this Agreement. CHSF shall pay the remaining portion of an initial deposit of twenty (20%) percent of the Fixed Price within thirty (30) days of the execution of this Agreement. EPC Contractor shall finance the remaining eighty (80%) percent of the Fixed Price ("**EPC Financing**") to complete the Project.

8.1A CHSF shall pay EPC Contractor the balance of eighty (80%) percent of the Fixed Price value, upon the earlier of:

000072

     i.     Within seven (7) business days of the sale of the Project or of a majority interest in CHSF; or

     ii.     Within seven (7) business days of the closing of project financing of greater than fifty (50%) percent of the Project's value or 50% of the sum of (A) the Fixed Price and, (B) the Project Development Costs, whichever is less; or

     iii.     In the event that no such sale or financing takes place within ninety (90) days after the Commercial Operations Date of the project ("**COD**"), CHSF shall pay to CTIEC all of the net project revenues on a quarterly basis until the Fixed Price is paid in full. (As used in the previous sentence, "net project revenues" means all project revenue, less out-of-pocket expenses, each determined on an accrual accounting basis. "Out-of-pocket expenses" does not include non-cash items such as depreciation.) If the balance of the Fixed Price is not paid in full within 90 days of COD, interest at an annual interest rate of 10% of the unpaid portion of the Fixed Price shall be paid quarterly by CHSF to EPC Contractor.

Alternatively, with the written consent of EPC Contractor, such interest may be added to the amount of unpaid Fixed Price and, if so added, subsequent calculations of interest due shall include both the unpaid portion of the Fixed Price and unpaid accumulated interest (i.e., compounded quarterly). For purposes of this provision, "quarter" shall refer to each 90-day period following the COD.

     iv.     Failure to pay the unpaid Fixed Price and accumulated interest with 180 days of COD is a material breach and default of this agreement. At any time after such an event of default, EPC Contractor may exercise its rights under the Security Agreement (defined in Section 8.1B).

CHSF acknowledges and agrees that this financial accommodation is a purchase money loan.

EPC Contractor agrees to provide commercially reasonable cooperation to CHSF and its member(s) in connection with the refinancing and/or sale of the Project.

As used in Section 8.1A.ii, above, and in the Security Agreement attached as Exhibit F, "Project Development Costs" is deemed to be $3,000,000.00.

     8.1B     Security Agreements. The security agreement attached as Exhibit F (the "**Security Agreement**") is part of this Agreement and may be separately executed, filed, and enforced. CHSF acknowledges and agrees that its member(s) are separately pledging its (their) membership interests in CHSF as security for the payment of the Fixed Price, as it may be adjusted pursuant to Section 26 (relating to changes), and related interest. CHSF's leasehold interest in the land upon which the Project will be constructed is also being provided as collateral security in a separate mortgage (the "**Mortgage**").

     8.2     EPC Contractor shall make progress payments to approved contractors and other payees participating in the Project, and all such progress payments paid to such 3rd parties shall be based on Applications For Payment setting forth the percentage completion of each item on the Schedule of Values allocating the Fixed Price as provided in Exhibit C. Except as otherwise

HIGHLY CONFIDENTIAL-RESTRICTED-SUBJECT TO PROTECTIVE ORDER

provided in this Agreement, the period covered by each Application For Payment shall be one calendar month ending on the last day of the month.

8.3    (omitted)

8.4 With respect to each progress Payment (including final payment) which it makes to contractors, EPC Contractor shall obtain and shall furnish to CHSF each such contractor's partial (or final) waiver of lien for the amount paid.  All lien waivers and releases shall be in accordance with the lien laws of the state in which the property is located.  EPC Contractor shall obtain partial waivers of lien from each subcontractor, materialman, supplier and lien-eligible independent contractor expected to provide goods and services to the Project of a value exceeding $25,000.00 in total for each payment made to such persons or entities, and final waivers of lien for all such persons or entities upon final payments.  EPC Contractor shall deliver such lien waivers to CHSF, together with EPC Contractor's own lien waivers and EPC Contractor's sworn statement on AIA Form G-706 (Contractor's Affidavit of Payments of Debts) or in such other form as EPC Contractor and CHSF shall agree (accounting for the applicable progress payment, and listing all such persons and/or entities performing work or providing materials on the Project) relating to each progress payment.  All requests for payment from contractors to EPC Contractor shall be on AIA Form G-702 (Application and Certificate for Payment) or in such other form as EPC Contractor and CHSF shall agree.

8.5    (omitted)

8.6  Final payment shall be earned by EPC Contractor and payable to EPC Contractor as provided below, only after the Work has been completed, the Equipment has been accepted by CHSF (as evidenced by CHSF executing the Project Completion Certificate as provided in Section 12), the system is fully operational and this Agreement fully performed.

9. Commissioning Phase. After the system is operational and in compliance with the requirements of Exhibit A, EPC Contractor shall test and commission the Project as a fully operational system as directed by CHSF. EPC Contractor shall comply with the Commissioning Checklist to be provided by CHSF. EPC Contractor shall give notice to CHSF and demonstrate that the Project is fully operational, i.e. the system is capable of supplying electricity for CHSF as provided in the Scope of Work (Exhibit A). EPC Contractor shall provide CHSF with documentation thereof, including the execution and delivery to CHSF of a Commissioning Certificate in substantially the form to be provided by CHSF and a mutually agreed upon punch list (the "**Punch List**"). EPC Contractor will make commercially reasonable efforts to address any remaining items on the Punch List in a timely fashion. The Warranty Period (as described in Section 21) will commence upon the first to occur of the execution of the Commissioning Certificate, or operation of the system in a non-test mode.

10. Substantial Completion.  Upon completion of the Commissioning Phase and CHSF approval of Commissioning documents, EPC Contractor will submit a date to perform the Capacity Test.  Successful completion of the Capacity Test will constitute "Substantial Completion".

HIGHLY CONFIDENTIAL-RESTRICTED-SUBJECT TO PROTECTIVE ORDER

000074

11. Documentation Phase. EPC Contractor shall provide to CHSF a system level Plant Operations & Maintenance Manual comprised of the following: (a) a binder of relevant literature for installed equipment such as O&M manuals, wiring diagrams, installation diagrams, piping details, cut sheets, and specification sheets; (b) a binder of test results for equipment and systems; (c) written confirmation of completed punch list items (if any); and (d) as-built drawings including detailed drawings of systems requiring registered professional services, such as structural, architectural, mechanical, electrical, plumbing and fire protection. Timing of delivery of this documentation will be as indicated in the Project Schedule.

12. Project Completion. CHSF shall immediately execute the Project Completion Certificate substantially in the form provided by CHSF upon completion of all Punch List items, delivery by EPC Contractor of documentation specified in the Documentation Phase, and final acceptance of a fully operational system by CHSF.

13. Bill of Sale. After CHSF's execution of the Commissioning Certificate, EPC Contractor will issue a Bill of Sale and thereby transfer title to the Project and all Equipment to CHSF. CHSF acknowledges and agrees that after such transfer the Project will remain subject to the EPC Contractor's rights under the Security Agreement.

14. CHSF's Response to Information Requests. CHSF shall respond to reasonable requests of EPC Contractor regarding CHSF's requirements for the Project in a reasonable time period, including CHSF's objectives, schedule, constraints and criteria for the Project. CHSF shall designate a representative to act on its behalf in communicating with EPC Contractor with respect to the Project.

15. Site Information and Acceptance of Site. Execution of this Agreement by EPC Contractor is a representation by EPC Contractor that (i) EPC Contractor has extensive experience in the type of engineering, procurement and construction required hereunder and with the construction industry standards for the means and methods required to satisfactorily complete the Project, (ii) EPC Contractor has visited the site, become familiar with the local conditions under which the work is to be performed, including roof and subsurface conditions as applicable, and accepts the site as satisfactory to complete the Project, (iii) EPC Contractor has received and accepted all available documents it needs to complete the Project, and (iv) EPC Contractor is prepared to provide to CHSF a completely operational system as described in this Agreement and on the Project Schedule. CHSF shall cooperate with EPC Contractor to arrange access to the Property for EPC Contractor and subcontractors as necessary to complete the Project, subject to reasonable security procedures as determined by the owner and managing agent of the Property.

16. Use of CHSF's Name. EPC Contractor shall not in the course of performance of this Agreement or thereafter use or permit the use of CHSF's name nor the name of any affiliate or subsidiary of CHSF, in any advertising, promotional or other materials prepared by or on behalf of EPC Contractor, nor disclose or transmit the same to any other party, without the prior written consent of CHSF.

17. Risk of Loss. EPC Contractor shall bear risk of loss of Equipment prior to its acceptance by CHSF and delivery to CHSF of the Bill of Sale described above. CHSF bears risk

000075

of loss of Equipment after its acceptance of the Equipment and receipt of the Bill of Sale for the Equipment.

18. Insurance. The EPC Contractor shall purchase from and maintain in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located insurance for protection from claims under workmen's compensation acts and other employee benefit acts which are applicable, claims for damages because of bodily injury, including death, and from claims for damages, other than to the Work itself, to property which may arise out of or result from the EPC Contractor's operations under this Agreement, whether such operations be by the EPC Contractor or by a subcontractor or anyone directly or indirectly employed by any of them. This insurance shall be written for not less than limits of liability specified in this Agreement or required by law, whichever coverage is greater. Certificates of such insurance shall be provided to CHSF prior to the commencement of the Work, and prior to the start of work on the Project by any subcontractor, a certificate of insurance shall be obtained from the subcontractor naming CHSF and the owner of the Property, and their respective agents, as additional insureds on the subcontractor's policies. As EPC Contractor will not be performing the installation of the actual systems themselves, EPC Contractor will ensure that all subcontracted entities will maintain said insurances naming CHSF and EPC Contractor as additionally insured.

18.1 The insurance required by Section 17 shall be written for not less than the following, or greater if required by law:

Workers' Compensation:

| | |
|---|---|
| (a) State: | Statutory |
| (b) Applicable Federal: | Statutory |
| (c) Employer's Liability: | $1,000,000 |

Comprehensive General Liability (including but not limited to comprehensive form, premises operations, explosion and collapse hazard and underground hazard, products and completed operations hazard, contractual liability, broad form property damage (including completed operations), independent contractors' protective, personal injury, automobile liability comprehensive form for owned, hired and non-owned vehicles):

(a) Combined single limits for bodily injury and property damages:
$5,000,000............... Each Occurrence
$10,000,000........... Annual Aggregate
(b) Products and Completed Operations to be maintained for 3 years after final payment. Owner responsible for requesting yearly certificates.
(c) Property Damage Liability Insurance shall provide X, C and U coverage if EPC Contractor's operations involve any exposure to explosion, collapse or underground damage.
(d) Errors and omissions or professional liability insurance respecting any insurable professional services hereunder in the amount of at least $5,000,000.

18.2 The certificates of insurance shall contain the following provisions:

HIGHLY CONFIDENTIAL-RESTRICTED-SUBJECT TO PROTECTIVE ORDER

000076

Name CHSF, the owner of the Property and their respective agents, beneficiaries, assigns and mortgagees, as additional insureds (excluding workers' compensation);

In the event of any change in the limits of liability, decrease in coverage or other material change in coverage, or the cancellation of insurance in its entirety, the insurer must give CHSF and the owner of the Property, written notice at least thirty (30) days prior to the effective date of such change or cancellation, and insurance coverage shall remain in force during said thirty (30) day period; and

Waiver of any right of subrogation of the insurers against CHSF, the owner of the Property and their respective agents, beneficiaries and mortgagees.

18.3  If EPC Contractor fails to carry or provide evidence of insurance provided for herein, CHSF may, but shall not be obligated to, procure the same and charge the cost thereof to EPC Contractor.

19. Conditions to EPC Contractor's Obligations.

19.1    EPC Contractor shall have no obligation to perform this Agreement until its security interests have been perfected by the filings contemplated by the Security Agreement, the Mortgage, and the pledge of membership interests referred to in Section 8.1B.

19.2    EPC Contractor shall have no obligation to initiate procurement of inverters until it has received the initial payment described in Section 8.1.

19.3    EPC Contractor shall have no obligation to procure modules until it has received the balance of the payment of 20% of the Fixed Price described in Section 8.1.

19.4    EPC Contractor shall have no obligation to perform this Agreement until the lease of the Project site is amended to provide a description of the leased property reasonably satisfactory to the EPC Contractor.

19.5    EPC Contractor shall have no obligation to perform this Agreement until the lease of the Project site is amended to provide that any right of the lessor to purchase the equipment of the Project at the conclusion of the lease is for at least the fair market value of the equipment.

19.5    EPC Contractor shall have no obligation to perform this Agreement until EPC Contractor shall have received a title report with respect to the Project site confirming to EPC Contractor's reasonable satisfaction that the Project lease, a form of which has been provided to EPC Contractor, is true and correct.

20. Subcontractors. EPC Contractor, as soon as practicable after completion of the Preliminary Design and Engineering Phase of the Project, shall furnish in writing to CHSF the names of persons or entities proposed as subcontractors for each principal portion of the Project which are not affiliates of CHSF. CHSF will promptly reply to EPC Contractor in writing stating whether or not CHSF has reasonable objection to any such proposed person or entity. Failure of CHSF to reply in writing within five (5) business days shall constitute notice of no reasonable objection.  Except as provided in Section 7.11 above (relating to subcontracts with affiliates of

000077

CHSF), EPC Contractor's subcontracting of any of the Work hereunder shall not relieve EPC Contractor of any of its obligations under this Agreement.

21. Warranty.

21.1    EPC Contractor warrants that all materials, equipment and supplies furnished under the Agreement shall be free of defects in design, materials and workmanship for twelve (12) months (the "**Warranty Period**") from the first to occur of the date of execution of the Commissioning Certificate, or operation of the system in a non- test mode. This warranty does not cover repairs due to CHSF's failure to properly operate and maintain the Project in accordance with official manufacturers' operating manuals and maintenance schedules that are delivered to CHSF by EPC Contractor prior to the effective date of this warranty. This warranty does not cover repairs resulting from neglect, natural disasters or alterations and repairs by other than authorized EPC Contractor personnel. Any implied warranty that may be imposed is limited in duration to the period provided in this expressed warranty. No responsibility is assumed for incidental or consequential damages; nor damages due to misuse or the use of any unauthorized attachment. The foregoing is in lieu of all other warranties whether expressed or implied, including, but not limited to, the implied warranties of merchantability and fitness for a particular purpose. This warranty can only be modified by EPC Contractor in writing, signed by an officer of the company. To the extent that any part of the Project is warranted by a manufacturer or supplier, and to the extent that such warranties are assignable to CHSF, EPC Contractor hereby assigns to CHSF any rights and remedies it has relating to such goods or equipment. Assignment of such warranty rights shall not relieve EPC Contractor from any of its obligations under this Agreement.

21.2    In addition, EPC Contractor shall provide CHSF the following equipment manufacturer warrantees:

a. Modules shall be warranted for workmanship for ten (10) years
b. Modules power output shall be warranted to be not less than 90% of the minimum peak power at STC for a minimum of 10 years
c. Modules power output shall be warranted to be not less than 80% of the minimum peak power at STC for a minimum of 25 years
d. Inverters shall carry a structured warranty of 5 years from the warranty start date/commercial operations

22. (omitted)

23. Relationship Between Parties. The Parties are independent contractors with respect to each other. Except as is expressly provided to the contrary in this Agreement, nothing in this Agreement shall be construed to create any relationship of partnership, joint venture, trust, association, employer/employee, or principal/agent between the parties.

24. Indemnity.

24.1    Except to the extent caused by the negligence or willful misconduct of the Indemnitees (as defined below), EPC Contractor shall defend, indemnify and hold harmless CHSF and the owner of the Property, and their respective agents, representatives, employees, contractors,

HIGHLY CONFIDENTIAL-RESTRICTED-SUBJECT TO PROTECTIVE ORDER

000078

subcontractors, shareholders, directors, officers, and attorneys (collectively "**Indemnitees**") from and against any and all liabilities, damages, claims, losses, injuries, deaths, penalties, actions, proceedings, arbitrations, costs, fees, interest, awards, judgments or damages (collectively "**Liabilities**") which any of the Indemnitees may incur in, on, about or with respect to the Project, that in any way arise out of, result from, are based upon or are connected with any act, error, omission or conduct of EPC Contractor and/or its agents, representatives, employees, contractors, or subcontractors during the course of performance of this Agreement.  In claims against any person or entity indemnified under this Section 24.1 by an employee of the EPC Contractor, a subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation under this Section 24.1 shall not be limited by a limitation on amount or type of damages, compensation or benefits payable by or for EPC Contractor or a subcontractor under workers' or workmen's compensation acts, disability benefit acts or other employee benefit acts.

24.2    Except to the extent caused by the negligence or willful misconduct of the Indemnitees (as defined below), CHSF shall defend, indemnify and hold harmless EPC Contractor and its respective agents, representatives, employees, contractors, subcontractors, shareholders, directors, officers, and attorneys (collectively also "**Indemnitees**") from and against any and all liabilities, damages, claims, losses, injuries, deaths, penalties, actions, proceedings, arbitrations, costs, fees, interest, awards, judgments or damages (collectively "**Liabilities**") which any of the Indemnitees may incur in, on, about or with respect to the Project, that in any way arise out of, result from, are based upon or are connected with any act, error, omission or conduct of CHSF and/or its agents, representatives, employees, contractors, or subcontractors during the course of performance of this Agreement.  In claims against any person or entity indemnified under this Section 24.2 by an employee of CHSF, a subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation under this Section 24.2 shall not be limited by a limitation on amount or type of damages, compensation or benefits payable by or for CHSF or a subcontractor under workers' or workmen's compensation acts, disability benefit acts or other employee benefit acts.

25. Force Majeure. If either party is rendered wholly or partially unable to perform its obligations under this Agreement because of an event of Force Majeure (as defined below), that party shall be excused from whatever performance is affected by the event of Force Majeure to the extent, and for the time period, so affected and shall not be considered to be in default in respect of any obligation under this Agreement to the extent that failure of performance shall be due directly to an event of Force Majeure. Within five (5) days after becoming aware of an event of Force Majeure, the affected party shall give written notice to the other party stating the nature of the event, its anticipated duration and effect upon the performance of such party's obligations. If an event of Force Majeure occurs that affects either party's performance, the Project Schedule affected by such delay shall be adjusted and extended by a period equal to the amount of time (including a period for mobilization and demobilization) necessary to make up for such delay. The term "**Force Majeure**" as used in this Agreement, means any cause beyond the control and not due to the negligence of the party affected, as a result of which the party affected is delayed in the performance of, or unable to perform, its obligations under this Agreement, including, but not limited to, natural disasters, flood, extreme weather conditions, earthquake, fire, lightning, epidemic, war (whether declared or undeclared), acts of God, terrorism, riots, explosions, civil disturbance, sabotage, strikes, or lockouts.

000079

26. <u>Changes in the Project.</u> Changes in the Project may be accomplished after execution of this Agreement, and without invalidating such Agreement, only by a written change order ("**Change Order**") subject to the limitations stated in this Section 26 and elsewhere in this Agreement. A Change Order shall be based upon agreement between CHSF and EPC Contractor. Any Change Order executed by anyone other than CHSF's representative, or his/her written designee shall be of no force and effect or binding on CHSF in any way. Unless otherwise provided in the Change Order, EPC Contractor and CHSF shall proceed promptly to carry out all such changes. Additional services to be provided by EPC Contractor in connection with an approved Change Order shall be compensable provided CHSF and EPC enter into a prior written agreement relating to the additional work. Work performed by subcontractors and approved in writing by CHSF in connection with an approved Changed Order shall be at EPC Contractor's actual cost plus a five percent mark-up for EPC Contractor's technical support and supervision. EPC Contractor and Client shall agree on a reasonable budget for such services before commencement of such work.

27. <u>Events of Defaults and Remedies.</u> The following events shall be deemed to be events of default by a party to this Agreement: (i) failure to comply with any material provision of this Agreement and such failure shall continue for a period of ten (10) business days after written notice of such failure is delivered to the defaulting party, <u>provided</u>, <u>however</u>, if such condition cannot reasonably be cured within such ten (10) business day period, it instead shall be an event of default if the defaulting party shall fail to commence to cure such condition within such ten (10) business day period and/or shall thereafter fail to prosecute such action diligently and continuously to completion within a reasonable time period following non-defaulting party's notice of default; (ii) a party shall become insolvent or unable to pay its debts as they become due, or a party notifies the other party that it anticipates either condition; (iii) a party takes any action to, or notifies the other party that it intends to file a petition under any section or chapter of the United States Bankruptcy Code, as amended from time to time, or under any similar law or statute of the United States or any State thereof, or a petition shall be filed against a party under any such statute which is not be dismissed within thirty (30) days; or (iv) a receiver or trustee shall be appointed for all or a substantial part of the assets of a party. Upon the occurrence of any event or events of default by a party, the non-defaulting party shall have the option to terminate this Agreement, without prejudice to any other remedies available to it under this Agreement, at law or in equity.

28. <u>Ownership of Documents and Other Materials.</u> All originals, disks, duplicates and negatives of all plans, drawings, reports, photographs, charts, programs, models, specimens, specifications, and other documents or materials required to be furnished by EPC Contractor hereunder, including drafts and reproduction copies thereof, shall become the exclusive property of CHSF upon transfer pursuant to Section 13 (relating to bill of sale), and CHSF shall have the unlimited right to publish and use all or any part of the same without payment of any additional royalty, charge, or other compensation to EPC Contractor. Upon the completion of the Project, EPC Contractor shall promptly deliver all such materials to CHSF. EPC Contractor shall not publish, transfer, license or, except in connection with carrying out obligations under this Agreement, use or reuse all or any part of such reports and other documents, including working papers, without the prior written approval of CHSF, provided, however, that EPC Contractor may retain copies of the same for EPC Contractor's own general reference. Any reuse by CHSF is at its sole risk unless approved in writing by EPC Contractor

HIGHLY CONFIDENTIAL-RESTRICTED-SUBJECT TO PROTECTIVE ORDER

000080

29. No Personal Liability. No general or limited partner, officer, director, principal, employee, agent, affiliate or shareholder of CHSF or EPC Contractor shall be personally liable for the performance of that party's obligations under this Agreement.

30. Spare Parts. Prior to completion of installation of the Equipment, EPC Contractor shall provide CHSF with a list of spare parts and their prices, FOB final destination. The prices for such spare parts shall remain firm and valid for orders issued by CHSF for such spare parts up to one year from the date of delivery of the list. Payment for such Spare Parts shall be net thirty (30) days after delivery receipt of a complete and accurate invoice. The provisions of Section 21 (warranty) shall also apply to orders issued by CHSF for spare parts.

31. Maintenance Agreement. If CHSF requests, EPC Contractor shall propose a binding and assignable maintenance agreement for the system (inverters and modules) with the supplier thereof, with such terms and conditions as are approved by and acceptable to CHSF. This cost will be paid by CHSF directly to the supplier.

32. Recitals and Exhibits. This Agreement shall be construed in light of its Recitals and Exhibits, which are incorporated by reference as contractual terms and conditions.

33. Parties Bound and Benefited. The covenants, terms and conditions contained in this Agreement shall be binding upon and inure to the benefit of the heirs, devisees, administrators, executors, representatives, assigns, successors and successors-in-interest of the respective parties hereto. No other third parties are intended to be benefited by this Agreement, except for (a) potential Indemnitees, loss payees, and additional insureds under this Agreement and (b) any other parties (if any) expressly referred to in this Agreement as beneficiaries of this Agreement. No such excepted third parties are bound by this Agreement.

34. Assignment; Financing Assistance.

34.1     Assignment. Neither party shall have the right to assign the whole or any part of this Agreement or the rights thereunder without the express written consent of the other party. Such consent must be reasonably given.

34.2     Cooperation with Financing Parties. EPC Contractor shall reasonably cooperate with CHSF and any debt, equity or lease financing parties for the Project or any parties seeking to acquire the Project (collectively, "**Financing Parties**") in connection with the financing or acquisition of the Project, including without limitation, by (i) furnishing such information as may be reasonably requested by CHSF or the Financing Parties, (ii) delivering one or more estoppel certificates as may be reasonably requested by CHSF or the Financing Parties, and (iii) delivering one or more consents as may be reasonably requested by CHSF or the Financing Parties (including any consent to assignment of this Agreement).

34.3     Security Interests in Project. EPC Contractor acknowledges that CHSF may be financing a part of the development, acquisition, installation, operation and/or maintenance of the Project with financing accommodations from one or more Financing Parties and that CHSF's obligations will be secured by, among other collateral, a pledge or collateral assignment of this Agreement, which pledge or assignment shall be subject to EPC Contractor's prior written consent, which consent shall not be unreasonably withheld, conditioned, ot delayed. CHSF

HIGHLY CONFIDENTIAL-RESTRICTED-SUBJECT TO PROTECTIVE ORDER

000081

acknowledges and agrees that the priority of any such Financing Parties in collateral subject to the Security Agreement shall be subordinate to the rights of EPC Contractor until the Fixed Price is paid in full.

35. <u>Amendment.</u> No amendment to this Agreement shall be effective unless it is in a writing executed by all of the parties to this Agreement.

36. <u>Marginal Titles and Headings</u>. The marginal titles, subtitles, headings an subheadings of the paragraphs, subparagraphs, sections and subsections herein are intended to be for reference and for the sake of convenience only and shall not be construed to narrow or broaden the scope of or affect whatever interpretation or construction would otherwise be given to the plain and ordinary meanings of the words herein.

37. <u>Entire Agreement</u>. This written Agreement is fully integrated, constitutes the entire agreement between the parties with respect to the subject matter hereof, and supersedes all other prior and contemporaneous agreements, contracts, representations, promises, acknowledgments, warranties and covenants, oral or written, by and between the parties with respect to such subject matter which are not expressly included herein.

38. <u>Waivers</u>. The failure by any party to object to a default or exercise any rights or remedies under this Agreement shall not constitute a waiver of the right to do so in the future, unless such failure is accompanied by an express written waiver by such party.

39. <u>Interpretation</u>. The language in all parts of this Agreement shall be construed (a) according to its fair meaning and common usage and (b) not strictly for or against any party to this Agreement.

40. <u>Counterparts.</u> This Agreement may be executed in counterparts, so long as each of the parties to this Agreement executes at least one counterpart.  All such executed counterparts shall collectively constitute one and the same original document.

41. <u>Warranties of Authority.</u> In addition to the warranties set forth in Section 21, each party acknowledges, warrants and represents for the benefit of the other party(ies) to this Agreement: (a) that the person executing this Agreement is duly authorized and empowered to execute this Agreement on behalf of such entity; (b) that, if a corporation, limited liability company, joint venture, trust, partnership, limited liability company or other entity (i) such entity has been duly formed and organized and is in good standing and (ii) all necessary and appropriate resolutions and actions by such entity's board of directors, general partner(s), manager(s), members or other policy-making authority authorizing such entity to enter into, execute and perform this Agreement and the transactions contemplated by this Agreement have been obtained; and (c) that all steps have been taken and acts performed that are conditions precedent to making this Agreement valid, enforceable and binding against such entity in accordance with its terms and conditions.

42. <u>Independent Counsel</u>. Each party to this Agreement acknowledges that it has enjoyed the advice and representation of competent independent legal, business, tax and financial counsel in negotiating, entering into and executing this Agreement or knowingly, voluntarily and unconditionally waived its right to do so. The fact that this Agreement may have been drafted in

HIGHLY CONFIDENTIAL-RESTRICTED-SUBJECT TO PROTECTIVE ORDER

000082

whole or in part by one such party's counsel shall not cause any part of this Agreement to be construed against such party.

43. Severability. If any non-material provision of this Agreement is held invalid or unenforceable by any court of competent jurisdiction, the other provisions of this Agreement shall remain in full force and effect. If a material provision is determined to be unenforceable and the Party which would have been benefited by the provision does not waive its unenforceability, then the Parties shall negotiate in good faith to amend the Agreement to restore to the Party that was the beneficiary of such unenforceable provision the benefits of such provision. If the Parties are unable to agree upon an amendment that restores the Parties' benefits, then the Party that was the beneficiary of such unenforceable provision may terminate this agreement upon written notice of termination.

44. Notices. Each notice required under this Agreement or by law shall: (a) be in writing; (b) contain a clear statement setting forth the subject and substance thereof and the reasons therefore; and (c) be personally delivered, facsimile transmitted (""**FAX**""), transmitted as a pdf file via email, or duly mailed by certified mail, return receipt requested, to each party to this Agreement at its following address or number or to such other address or number as that party may have most recently given notice of to all of the other parties:

CHSF:        Church Hill Solar Farm, LLC
c/o Sunpin Solar LLC
1 North LaSalle Street
Suite 1515
Chicago, Illinois 60602
Attn: Tom Li (tom@sunpinsolar.us)

With a copy to:

Thomas Rosenberg, Esq.
RKJ Legal, Ltd.
1 N. LaSalle Street
Suite 1515
Chicago, IL 60602
tdr@rkjlegal.com

EPC Contractor:  China Triumph International Engineering Co., LTD.
27th Floor
2000 Zhong Shan Bei Road
Shanghai, China 200063
Attn: Dongliang Zhang (zdllldz@hotmail.com)

With a copy to:
Jill Winans/Frank Lyman
McCauley Lyman LLC
617 Shore Drive
Edgewater, Maryland 21037

HIGHLY CONFIDENTIAL-RESTRICTED-SUBJECT TO PROTECTIVE ORDER

000083

45. Survival. All of the representations and warranties of the parties shall survive the termination of this Agreement for any reason.

46. Attorneys' Fees and Legal Costs. All of the attorney's fees and legal costs incurred by the respective parties in negotiating and forming this Agreement shall be borne by the respective parties. All legal costs and attorneys' fees actually incurred by any party to this Agreement to enforce any obligations of any other party under this Agreement or any instruments executed in connection herewith shall be paid to the prevailing party by the other party and shall bear interest at the legal rate.

47. Governing Law; Disputes and Remedies. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF ILLINOIS, WITHOUT GIVING EFFECT TO THE CHOICE OF LAW PRINCIPLES THEREOF, INCLUDING AS TO MATTERS OF CONSTRUCTION, VALIDITY, AND PERFORMANCE.

48.      Arbitration. Notwithstanding any other provision of this Agreement, any controversy or claim arising out of this Agreement, or the breach thereof, shall be settled by binding Arbitration, if it cannot be resolved directly by the parties in reasonable time. The matter will be heard in the Chicago location of and pursuant to the Commercial Arbitration Rules of the American Arbitration Association, and the substantive rules of the State of Illinois. Any judgment or award rendered by the Arbitrator(s) shall be non-appealable, and may be entered in any court of competent jurisdiction. This section shall not prevent either party from obtaining an injunction in any court of competent jurisdiction.

49.      Time is of the Essence. Time is of the essence for the performance of each covenant and term of this Agreement.

*(Signatures appear on the following page(s).)*

HIGHLY CONFIDENTIAL-RESTRICTED-SUBJECT TO PROTECTIVE ORDER

000084

In Witness Whereof, the parties hereto have executed this Agreement the day and year first written above.

**CHURCH HILL SOLAR FARM, LLC**

By: _Leechan_

Name:  Tian Li

Title: President & Chairman

**CHINA TRIUMPH INTERNATIONAL ENGINEERING CO., LTD**

By: _____

Name: Shou Peng

Title:   President & Chairman

HIGHLY CONFIDENTIAL-RESTRICTED-SUBJECT TO PROTECTIVE ORDER