# Exhibit "135"

T: 6/2/15-6/4/15
Exhibit 44-1(C)

CONTEMPT
Exhibit 179

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CHINA NATIONAL BUILDING MATERIAL INVESTMENT CO., LTD. (F/K/A BND CO., LTD.) | § § § § | |
| Plaintiff, | § § | Civil Action No. 1:14-cv-701-SS |
| v. | § § § | JURY TRIAL DEMANDED |
| BNK INTERNATIONAL, LLC and JEFFREY J. CHANG | § § § | |
| Defendants. | § § | |

## SUMMONS IN A CIVIL ACTION

To: BNK International, LLC, by serving its agent or officer, Jeffrey J. Chang, 9102 Country Canyon Cove, Austin, Texas 78759, or wherever he may be found

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

**Sheehy, Ware & Pappas, P.C.**
**R. Edward Perkins**
**2500 Two Houston Center**
**909 Fannin Street**
**Houston, Texas 77010**

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

WILLIAM G. PUTNICKI
CLERK OF COURT

Date: July 31, 2014      _Olga Schroeder_
                        Signature of Clerk or Deputy Clerk

Chang
Exhibit
4

08/01/14

AO 440 (Rev. 12/09) Summons in a Civil Action (Page 2)
Civil Action No. 1:14-cv-00701

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for **BNK International, LLC** was received by me on *(date)* _____.

☐ I personally served the summons on the individual at *(place)* _____
   _____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____
   _____ , a person of suitable age and discretion who resides there,
   on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is
   designated by law to accept service of process on behalf of *(name of organization)* _____
   _____ on *(date)* _____ ; or

☐ Other *(specify)*:


My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____         _____
                                                                *Server's signature*

                                              _____
                                                                *Printed name and title*

                                              _____
                                                                *Server's address*

Additional information regarding attempted service, etc:

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| CHINA NATIONAL BUILDING MATERIAL INVESTMENT CO., LTD. (F/K/A BND CO., LTD.) § § § § § Plaintiff, § § v. § § BNK INTERNATIONAL, LLC and § JEFFREY J. CHANG § § Defendants. § | Civil Action No. 14-701 JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff, China National Building Material Investment Co., Ltd. (f/k/a BND Co., Ltd.) ("CNBMI"), files this Original Complaint against Defendants BNK International, LLC ("BNK") and Jeffrey J. Chang ("Chang"), and respectfully shows unto this Court the following:

### JURISDICTION AND VENUE

1. This Court has original jurisdiction over this action under 28 U.S.C. §1332(a)(2) because CNBMI is a Chinese citizen and Defendants are citizens of Texas and the amount in controversy exceeds $75,000.00, excluding interest and costs.

2. Venue is proper in this Court under 28 U.S.C. §1391(a) because all Defendants reside in Travis County, Texas in the Western District of Texas, Austin Division. Venue is also proper because the Western District of Texas is where a substantial part of the events or omissions giving rise to this claim occurred.

### THE PARTIES

3. CNBMI is a Chinese entity with its principal place of business at 12/F International Trade Center, Shenzhen, 518014, P.R. China.

4. BNK is a domestic limited liability company. It may receive service of process by serving its registered agent Jeffrey J. Chang at 9102 Country Canyon Cove, Austin, Texas 78759.

5. Chang is an individual and a citizen of the State of Texas. Chang may be served with process at 9102 Country Canyon Cove, Austin, Texas 78759.

## FACTUAL BACKGROUND

### A. CNBMI's Judgment Against BNK and Proceedings Thereon

6. At all relevant times, Chang was and is BNK's sole member, sole director, and president.

7. On May 8, 2004, CNBMI entered into an Agency Agreement (the "Agreement") with BNK and Chang, whereby BNK and/or Chang were to act as CNBMI's agent, authorized to identify, negotiate, and secure customers in the United States of America to purchase from CNBMI hardwood floor products, in exchange for payment of certain commissions. A copy of the Agency Agreement is attached as Exhibit A.

8. Pursuant to the Agency Agreement, BNK and/or Chang owed CNBMI fiduciary duties of care and loyalty and were required to report accurate sales to CNBMI and pay CNBMI its specified share of those sales. They also had a fiduciary duty to CNBMI with regard to all funds BNK received and held from third parties in accordance with Agency Agreement.

9. Pursuant to the Agency Agreement, from 2004 to 2008, BNK and/or Chang procured sales of CNBMI's materials to Lumber Liquidators, Inc. ("Lumber Liquidators"). CNBMI shipped those materials, and Lumber Liquidators received those materials and paid BNK.

10. BNK and/or Chang reported to CNBMI that the sales of the materials totaled $21,343,145.01, and BNK and/or Chang paid CNBMI the amount of $18,243,072.58 on those sales.

11. As the Agreement terms provided for a larger portion of the $21,343,145.01 in reported sales to be paid to CNBMI, CNBMI sought legal remedies against BNK and initiated an arbitration proceeding against BNK as provided in the Agency Agreement.

12. CNBMI won an award of $3,141,835.32.

13. On June 25, 2009, CNBMI filed an Application and Motion to Confirm a Foreign Arbitration Award ("Motion to Confirm") against BNK, docketed in this Court as Civil Action No. A09CA-488SS.

14. The Motion to Confirm included as Exhibits BNK's Agency Agreement with CNBMI and the Final Award as Exhibits thereto.

15. On December 3, 2009, this Court granted CNBMI's Motion to Confirm and rendered a Judgment in favor of CNBMI ("underlying Judgment"). A copy of CNBMI's Judgment is attached as Exhibit B.

16. On December 31, 2009, BNK filed its Notice of Appeal.

17. On May 5, 2010, the Fifth Circuit Court of Appeals dismissed BNK's appeal.

B. **CNBMI's Collection Efforts**

18. After BNK filed its Notice of Appeal, but before the appeal was dismissed, on April 14, 2010, CNBMI served its Post-Judgment Requests for Production of Documents ("CNBMI's Requests").

19. CNBMI's Requests sought information for purposes of collecting on the underlying Judgment, including BNK's bank records and statements of financial affairs.

20. On May 17, 2010, BNK served its responses to CNBMI's Requests.

21. The only documents BNK produced in its initial responses to CNBMI's Requests were as follows: (1) a Convertible Promissory Note and Line of Credit from an entity named Crossroads Enterprise, Inc. and (2) a Royalty Agreement. BNK did not produce any of BNK's bank or financial records in its initial responses to CNBMI's Requests.

22. On July 16, 2010, CNBMI filed its Motion to Compel and Motion for Sanctions against BNK requesting that the Court: (1) overrule BNK's objections to CNBMI's Requests and (2) order BNK to produce all responsive documents to CNBMI's Requests.

23. Around the same time, in early July 2010, CNBMI issued a Subpoena to Produce Documents to Lumber Liquidators seeking sales records, invoices, purchase orders, and payment records related to BNK's products purchased by customers from Lumber Liquidators.

24. Sometime after July 30, 2010, Lumber Liquidators produced documents responsive to CNBMI's subpoena, including documents identifying BNK's bank accounts maintained at Bank of America. These records showed that, in fact, the actual amounts paid by Lumber Liquidators to BNK on the sales totaled $29,001,278.71. Lumber Liquidators also provided a declaration of an individual named Franklin Marcus. A copy is attached as Exhibit C.

25. Based on the foregoing, BNK and Chang defrauded CNBMI, breached the fiduciary duties owed to CNBMI, and breached the Agency Agreement by failing to pay CNBMI all of the amounts owed to CNBMI on the Lumber Liquidator sales.

26. CNBMI was not previously aware of this fraud, breach of fiduciary duty, or breach of contract, and because of the unique way in which the relationship between CNBMI and BNK worked, CNBMI could not have known.

27. On July 30, 2010, BNK paid CNBMI $1,500,000.00 in partial satisfaction of the underlying Judgment; however, the remainder was outstanding. CNBMI was not aware at the time that the amount paid by Lumber Liquidators in fact exceeded $29 million

28. As a result of the $1.5 million payment, on August 3, 2010, CNBMI filed its Advisory to the Court stating that it desired to withdraw its Motion to Compel and Motion for Sanctions. In a further attempt to resolve the underlying dispute and reach a settlement of all potential claims against BNK and Chang, CNBMI and BNK agreed to attend a settlement meeting.

29. In preparation for the settlement meeting, and based upon the information received from Lumber Liquidators, on August 6, 2010, CNBMI issued a Subpoena to Produce Documents to Bank of America Corporation seeking any and all bank records for BNK's accounts.

30. Bank of America produced documents responsive to CNBMI's subpoena, including documents identifying BNK's account wire transfers, bank statements, copies of checks drawn on BNK's accounts, and banking resolutions. The records were surprising to say the least. They showed a complete pattern of lies, deceit and self-dealing by Chang and his family members, all to the detriment of BNK and CNBMI.

31. CNBMI and BNK participated in a settlement meeting on October 11, 2010 in Austin, Texas to discuss BNK's under-payment to CNBMI and the underlying Judgment. However, the parties were unable to resolve the matter.

C. **BNK's Chapter 11 Filing**

32. In an effort to stall CNBMI, Chang caused BNK to file a Voluntary Petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the

Western District of Texas, Austin Division, Case No. 10-13034 (CAG) on October 27, 2010. The bankruptcy case was converted to a Chapter 7 on March 31, 2011.

33. On October 18, 2011, CNBMI and the bankruptcy trustee for BNK entered into an Asset Purchase Agreement, a copy of which is attached as Exhibit D. Through the Asset Purchase Agreement, CNBMI acquired, among other things, any and all claims that BNK might have against Chang, including, without limitation, any claims for breach of fiduciary duty.

34. The bankruptcy court subsequently issued an order approving the Asset Purchase Agreement. Thereafter, as part of the bankruptcy process, BNK's assets were liquidated.

D. **Chang's Misdeeds at BNK**

35. Chang undercapitalized BNK, comingled assets, mismanaged the company's business dealings and financial transactions, and defrauded business associates, including CNBMI, all to his benefit.

36. Based on the documents thereafter produced by Lumber Liquidators and Bank of America, CNBMI learned of Chang's improper handling of BNK's finances and his manipulation of information given to and withheld from CNBMI.

37. Through a series of fraudulent and improper transactions, made while Chang had total control over BNK, he proceeded to denude the company of any assets, avoiding having to pay those sums to CNBMI. Over the course of several years, Chang systematically transferred over $8 million to family members and dummy companies he controlled. These persons include Andy Kuan, Cindy Kuan, Linda Chang-Shimaura, Yen Ching, Erica Huang, Crossroads Enterprise, Inc., HK BNG International, CNYES.com, Interpacific Goldenline, Jin-Bao Mountain, Grace Covenant Church, Children's Courtyard, Total Smile Management, A+ Federal Credit Union, and Jose Menchaca. At the same time, he intentionally withheld information from

CNBMI about these transactions or gave CNBMI false or incomplete information. CNBMI had no way of knowing of these misdeeds by Chang until it obtained the records from Lumber Liquidators and Bank of America. Chang knew that these sums should have been paid by BNK to CNBMI or retained by BNK, and not used for his personal benefit. These transfers served no legitimate business purpose of BNK. BNK received no reasonably equivalent value from the transferees which, in fact, caused BNK to default in its obligations to CNBMI. Chang caused the transfers to be made at a time when the remaining assets of BNK were insufficient to allow it to continue as a viable entity.

E. **Additional Facts Supporting Liability of BNK and Chang**

1. **Chang's Improper Wire Transfers from BNK's Account**

38. Chang, as authorized by BNK, made all wire transfers from BNK's account, as set forth below.

39. Chang made wire transfers to himself from BNK's accounts for personal use from 2005 until 2008 totaling $88,000.00.

40. Chang made the wire transfers to himself for personal use through Bank of America's on-line website.

41. At least one of the wire transfers made to Chang in 2006 for $8,000.00 was made for the purpose of paying Chang's house payment.

42. BNK from 2005 until 2007 made wire transfers to Chang's family members, Andy and Cindy Kuan, totaling $157,200.55.

43. One of the wire transfers by BNK to Andy and Cindy Kuan was used to pay for the Kuan's house payment.

44. BNK from 2005 through 2007 made wire transfers to Chang's sister, Linda Chang-Shimaura, totaling $91,000.

45. BNK from 2006 through 2007 made wire transfers to family member, Yen Ching, totaling $46,400.

46. BNK in 2005 made wire transfers to family member, Erica Huang, totaling $25,774.90.

47. BNK from 2007 through 2010 made wire transfers to Crossroads Enterprise, Inc. totaling $1,926,000.

48. BNK in 2007 made wire transfers to HK BNG International totaling $4,599,017.22.

49. BNK from 2004 through 2006 made wire transfers to CNYES.com totaling $415,335.37.

50. BNK, from 2005 through 2008, made wire transfers to Interpacific Goldenline totaling $161,215.19.

51. BNK, on October 28, 2004, wired $16,345.51 to Jin-Bao Mountain.

2. **Chang's Improper Issuance of BNK Checks**

52. Chang was the authorized signatory on all BNK checks including those issued to Chang and his family members from BNK's account, as set forth below.

53. BNK issued checks to Chang from 2004 until 2008 totaling $185,999.50.

54. BNK issued checks to Jennie Chang from 2005 until 2007 totaling $165,182.

55. BNK issued checks to Grace Covenant Church.

56. BNK issued tuition checks to an early childhood education school, Children's Courtyard, attended by Chang's children Alison and Valerie.

57. BNK issued checks to Total Smile Management for dental work performed on Chang's children.

58. BNK issued checks to Grace Covenant Church for "Jeffrey Chang and Jennie Chang".

59. BNK issued checks to A⁺ Federal Credit Union in 2009 and 2010.

60. BNK issued checks to Jose Menchaca for home remodeling.

61. BNK to wire additional funds and issued additional checks to others in amounts presently unknown, as shall be further established through continuing investigation and discovery in this matter.

## CAUSES OF ACTION

### Count I – Alter Ego/Piercing the BNK Veil

62. CNBMI reasserts and incorporates all of the foregoing paragraphs by reference as if fully stated herein.

63. Chang has a financial interest, ownership and/or control of BNK.

64. There is such a unity between Chang and BNK that the separateness of BNK has ceased.

65. Chang paid personal debts and obligations with corporate assets.

66. BNK's assets and profits have been diverted by Chang and his family for their personal use.

67. BNK was inadequately capitalized. Chang treated it as a mere conduit for his personal use and gain. Chang used the corporation for the purpose of perpetrating and did perpetrate an actual fraud on CNBMI primarily for his direct personal benefit.

68. Holding only BNK liable on the underlying Judgment and other claims and allowing Chang to escape personal responsibility would result in an injustice, especially since the underlying Judgment against BNK is otherwise uncollectible.

69. CNBMI requests that BNK's corporate form be disregarded and Judgment be rendered against Chang individually, in addition to BNK, for the remaining amount to be satisfied on the underlying Judgment and other obligations of BNK to CNBMI.

### Count II – Sham to Perpetrate a Fraud Requiring Piercing of the BNK Veil

70. CNBMI reasserts and incorporates all of the foregoing paragraphs by reference as if fully stated herein.

71. The conduct of Chang described above involves dishonesty of purpose and intent to deceive. Chang treated BNK as a mere conduit for his personal gain. Chang used the corporation for the purpose of perpetrating and did perpetrate an actual fraud on CNBMI primarily for his direct personal benefit.

72. Chang deceived CNBMI who reasonably relied on BNK to collect receivables, remit them less contractually agreed-upon commissions to CNBMI, and retain funds necessary to meet BNK's business debts, obligations and expenses.

73. Chang disregarded BNK's form and used its assets and profits for his personal, family expenses and to benefit third parties, rather for BNK's legitimate business debts, obligations and expenses.

74. CNBMI requests that BNK's corporate form be disregarded and Judgment be rendered against Chang individually, in addition to BNK, for the remaining amount to be satisfied on the underlying Judgment and other obligations of BNK to CNBMI.

### Count III – Breach of Contract

75. CNBMI incorporates all of the foregoing paragraphs by reference as if fully stated herein.

76. As detailed above, CNBMI and BNK and Chang entered into a valid contractual arrangement, through the Agency Agreement.

77. CNBMI fully performed its obligations under the Agreement.

78. BNK and Chang breached the contract by fraudulently understating the amount of sales to Lumber Liquidators and underpaying CNBMI for those sales.

79. As a result of the breach by BNK and Chang, CNBMI has been damaged in an amount of at least $7,658,133.70. This amount is in excess of the amounts due under the underlying Judgment for which Chang should be held individually liable, as set forth above.

### Count IV – Fraud by BNK and Chang

80. CNBMI incorporates all of the foregoing paragraphs by reference as if fully stated herein.

81. By intentionally understating the value of the sales to Lumber Liquidators, BNK and Chang made material misrepresentations to CNBMI. BNK and Chang also withheld vital information about the sales to Lumber Liquidators that was otherwise not knowable by CNBMI. BNK and Chang knew that CNBMI, located in China, had no other means of knowing the true facts. They were deliberately silent when, as fiduciaries, they had a duty to speak. These misrepresentations and omissions prevented CNBMI from otherwise discovering the wrongdoing of BNK and Chang. BNK had a duty to fully disclose proper information to CNBMI regarding the sales made and intentionally failed to do so. They did so for the purpose of lining their own pockets at the expense of their principal.

82. These misrepresentations and omissions were material and were made by BNK and Chang with knowledge of their falsity.

83. These misrepresentations and omissions were made by BNK and Chang with the intention they should be acted on by CNBMI, or alternatively, were made to induce CNBMI to not act. CNBMI justifiably did rely and was damaged as a result.

84. BNK and Chang are therefore indebted to CNBMI for that portion of the $7,658,133.7 that is still due pursuant to the Agency Agreement. This amount is in excess of the amounts due on the underlying Judgment for which Chang should be held individually liable, as set forth above.

### Count V – Breach of Fiduciary Duty by BNK and Chang to CNBMI

85. CNBMI incorporates all of the foregoing paragraphs by reference as if fully stated herein.

86. Based on the Agency Agreement and the transactions with Lumber Liquidators, BNK and Chang owed fiduciary duties to CNBMI.

87. By failing to disclose the full $29,001,278.71 in sales and failing to pay CNBMI on the $7,658,133.7 discrepancy, BNK and Chang breached their fiduciary duties to CNBMI.

88. As a result, CNBMI has been damaged in that it has not received the portion of the $7,658,133.7 that is due pursuant to the Agency Agreement. BNK and Chang are thus indebted to CNBMI for that portion of the $7,658,133.7 that is still due pursuant to the Agency Agreement. This amount is in excess of the amounts due on the underlying Judgment for which Chang should be held individually liable, as set forth above.

### Count VI – Breach of Fiduciary Duty by Chang to BNK

89. CNBMI incorporates all of the foregoing paragraphs by reference as if fully stated herein.

90. As detailed above, CNBMI purchased the rights to BNK's claims against Chang, including that for breach of fiduciary duty.

91. As an officer and director of BNK, Chang owed BNK fiduciary duties. He had a duty to avoid self-dealing and personal enrichment and a duties of care and loyalty

92. Chang breached those fiduciary duties by improperly withdrawing and/or transferring BNK funds for personal, family, and non-business reasons, mismanaging the company's business dealings and financial transactions, and defrauding business contacts, and otherwise poorly performing his functions as an officer and director of BNK.

93. Due to Chang's breach of fiduciary duty, Chang's siphoning off funds from BNK to himself, his family members, and third parties rather than for BNK's business debts and expenses, BNK was unable to meet its obligations to CNBMI, became unprofitable, and went through the bankruptcy process, ending with no remaining assets or operations.

94. Based on the foregoing, BNK has been damaged by Chang at least to the extent that it is liable to CNBMI. Chang is thus indebted to BNK and CNBMI for that portion of the $7,658,133.7 that is still due pursuant to the Agency Agreement. This amount is in excess of the amounts due on the underlying Judgment for which Chang should be held individually liable, as set forth above.

### Count VII – Exemplary Damages

95. CNBMI incorporates all of the foregoing paragraphs by reference as if fully stated herein.

96. The harm caused to CNBMI by BNK and Chang, as set forth above, results from fraud and malicious activity. CNBMI is entitled to recover exemplary damages from BNK and Chang, jointly and severally, in accordance with Chapter 41 of the Texas Civil Practice and Remedies Code.

## Count VIII – Attorneys' Fees

97. CNBMI incorporates all of the foregoing paragraphs by reference as if fully stated herein.

98. Because of the BNK's and Chang's actions, CNBMI has been required to retain the services of the undersigned legal counsel to prosecute its interests. Pursuant to the terms of the Agency Agreement, the Asset Purchase Agreement and Texas Civil Practices and Remedies Code 38.001, CNBMI is entitled to the recovery of its reasonable attorneys' fees from BNK and Chang, jointly and severally.

## JURY DEMAND

99. CNBMI requests a trial by jury on all claims and defenses asserted in this matter

## PRAYER FOR RELIEF

WHEREFORE, China National Building Material Investment Co., Ltd. prays that:

1. Judgment be rendered in favor of CNBMI and against BNK International, LLC and Jeffrey J. Chang, jointly and severally.

2. CNBMI be awarded its actual, compensatory, special, incidental, and/or consequential damages;

3. CNBMI be awarded exemplary damages pursuant to Chapter 41 of the Texas Civil Practice and Remedies Code.

4. CNBMI be awarded its costs of court, attorneys' fees, prejudgment and post-judgment interest; and

5. CNBMI be awarded all and other relief to which it may be justly entitled.

Dated: July 30, 2014

Respectfully submitted,

/s/ R. Edward Perkins
R. Edward Perkins
State Bar No. 15790410
Sheehy, Ware & Pappas, P.C.
909 Fannin Street
Suite 2500
Houston, Texas 77010
(713) 951-1004
(713) 951-1199 fax
eperkins@sheehyware.com

*Attorneys for Plaintiff China National Building Material Investment Co., Ltd.*