```
 1              UNITED STATES DISTRICT COURT

 2              EASTERN DISTRICT OF LOUISIANA

 3  *****************************************************

 4  IN RE:  CHINESE-MANUFACTURED  MDL NO. 2047

    DRYWALL PRODUCTS LIABILITY

 5  LITIGATION                   SECTION:  L

 6  THIS DOCUMENT APPLIES TO     JUDGE FALLON

    ALL CASES

 7                               MAG. JUDGE WILKINSON

 8  *****************************************************

 9

              CONFIDENTIAL - SUBJECT TO FURTHER

10               CONFIDENTIALITY REVIEW

11               Friday, July 10, 2015

12                    — — —

13

14      Continuing Videotaped 30(b)(6) Deposition of

15  BEIJING NEW BUILDING MATERIALS PUBLIC LIMITED CO.

16  through the testimony of YU CHEN, held at the offices

17  of Phelps Dunbar LLP, 365 Canal Street, Suite 2000,

18  New Orleans, Louisiana, commencing at 7:34 a.m., on

19  the above date, before Michael E. Miller, Certified

20  Court Reporter (#27009), Registered Diplomate

21  Reporter, Certified Realtime Reporter.

22                    — — —

23               GOLKOW TECHNOLOGIES, INC.

         877.370.3377 ph | 917.591.5672 fax

24               deps@golkow.com

25
```

Page 311

```
 1  A P P E A R A N C E S :
 2  COUNSEL FOR THE PLAINTIFF CLASS:
 3     HERMAN HERMAN & KATZ LLC
       BY:  MADELYN M. O'BRIEN, ESQUIRE
 4       mobrien@hhklawfirm.com
       820 O'Keefe Avenue
 5     New Orleans, Louisiana 70113
       (504) 581-4892
 6
 7     LEVIN FISHBEIN SEDRAN & BERMAN
       BY:  ARNOLD LEVIN, ESQUIRE
 8       alevin@lfsblaw.com
         SANDRA L. DUGGAN, ESQUIRE
 9       sduggan@lfsblaw.com
       510 Walnut Street, Suite 500
10     Philadelphia, Pennsylvania 19106
       (215) 592-1500
11
12     IRPINO LAW FIRM
       BY:  ANTHONY IRPINO, ESQUIRE
13       airpino@irpinolaw.com
         PEARL A. ROBERTSON, ESQUIRE
14       probertson@irpinolaw.com
       2216 Magazine Street
15     New Orleans, Louisiana 70130
       (504) 525-1500
16
17     GAINSBURGH BENJAMIN DAVID MEUNIER &
       WARSHAUER LLC
18     BY:  RACHEL A. STERNLIEB, ESQUIRE
         rsternlieb@gainsben.com
19     2800 Energy Centre, 1100 Poydras Street
       New Orleans, Louisiana 70163-2800
20     (504) 522-2304
21
       THE LAMBERT FIRM, PLC
22     BY:  HUGH P. LAMBERT, ESQUIRE
         hlambert@thelambertfirm.com
23     701 Magazine Street
       New Orleans, Louisiana 70130-3629
24     (504) 581-1750
25
```

Page 313

```
 1  A P P E A R A N C E S :
 2  COUNSEL FOR BNBM DEFENDANTS:
 3     PHELPS DUNBAR LLP
       BY:  HARRY ROSENBERG, ESQUIRE
 4       harry.rosenberg@phelps.com
       365 Canal Street
 5     Suite 2000
       New Orleans, Louisiana 70130-6534
 6     (504) 566-1311
 7
 8  COUNSEL FOR CNBM DEFENDANTS:
 9     ORRICK HERRINGTON & SUTCLIFFE LLP
       BY:  KELLY M. DALEY, ESQUIRE
10       kdaley@orrick.com
       51 West 52nd Street
11     New York, New York 10119-6142
       (212) 506-5000
12
13     GORDON ARATA McCOLLAM DUPLANTIS & EAGAN LLP
       BY:  EWELL E. EAGAN, JR., ESQUIRE
14       eeagan@gordonarata.com
       201 St. Charles Avenue
15     40th Floor
       New Orleans, Louisiana 70170-4000
16     (504) 582-1111
17
18  COUNSEL FOR THE STATE OF LOUISIANA:
19     PERKINS COIE LLP
       BY:  DAVID L. BLACK, ESQUIRE
20       dblack@perkinscoie.com
       1900 Sixteenth Street
21     Suite 1400
       Denver, Colorado 80202
22     (303) 291-2400
23
24
25
```

Page 312

```
 1  A P P E A R A N C E S :
 2  COUNSEL FOR TAISHAN GYPSUM COMPANY:
 3     ALSTON & BIRD LLP
       BY:  CHRISTY HULL EIKHOFF, ESQUIRE
 4       christy.eikhoff@alston.com
         ALIYYA Z. HAQUE, ESQUIRE
 5       aliyya.haque@alston.com
         (via teleconference)
 6     One Atlantic Center
       1201 West Peachtree Street
 7     Atlanta, Georgia 30309-3424
       (404) 881-7000
 8
 9  COUNSEL FOR BNBM DEFENDANTS:
10     DENTONS US LLP
       BY:  MICHAEL H. BARR, ESQUIRE
11       michael.barr@dentons.com
       1221 Avenue of the Americas
12     New York, New York 10020
       (212) 768-6700
13
14     DENTONS US LLP
       BY:  MATTHEW T. NICKEL, ESQUIRE
15       matt.nickel@dentons.com
         C. MICHAEL MOORE, ESQUIRE
16       mike.moore@dentons.com
         (via teleconference)
17     2000 McKinney Avenue
       Suite 1900
18     Dallas, Texas 75201
       (214) 259-0900
19
20     DENTONS HK LLP
       BY:  TODD LIAO, ESQUIRE
21       todd.liao@dentons.com
         ANNIE QIU, ESQUIRE
22       annie.qiu@dentons.com
       5th Floor The Center
23     989 Changle Road
       Shanghai, 200031 China
24     +86 21 2315 6000
25
```

Page 314

```
 1  A P P E A R A N C E S :
 2  ALSO PRESENT:
 3     SUNNY WANG, MANDARIN INTERPRETER
 4     TONI XU, HERMAN HERMAN & KATZ LLC
 5     MARK ANCALADE, VIDEOGRAPHER
 6         — — —
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 315

```
1              INDEX
             YU CHEN
2          July 10, 2015
3
4    PROCEEDINGS                    329
5
6    EXAMINATION OF YU CHEN:
7        BY MR. LEVIN            329
8        BY MS. DUGGAN          339
9        BY MR. LEVIN            341
10       BY MS. DUGGAN          368
11       BY MR. LEVIN            375
12
13   REPORTER'S CERTIFICATE        527
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 317

DEPOSITION EXHIBITS

| NUMBER | DESCRIPTION | MARKED |
|---|---|---|
| Exhibit 42-2(FF) | Portions of Exhibit 47 to the PSC Emergency Motion | 421 |
| Exhibit 42-2(G) | Exhibit 38 to the PSC Emergency Motion | 415 |
| Exhibit 42-2(GG) | Portions of Exhibit 47 to the PSC Emergency Motion | 421 |
| Exhibit 42-2(H) | Exhibit 39 to the PSC Emergency Motion | 415 |
| Exhibit 42-2(HH) | Portions of Exhibit 47 to the PSC Emergency Motion | 421 |
| Exhibit 42-2(I) | Exhibit 40 to the PSC Emergency Motion | 415 |
| Exhibit 42-2(II) | Portions of Exhibit 47 to the PSC Emergency Motion | 422 |
| Exhibit 42-2(J) | Exhibit 41 to the PSC Emergency Motion | 415 |
| Exhibit 42-2(JJ) | Portions of Exhibit 47 to the PSC Emergency Motion | 422 |
| Exhibit 42-2(K) | Portions of Exhibit 34 to the PSC Emergency Motion | 416 |
| Exhibit 42-2(KK) | Portions of Exhibit 47 to the PSC Emergency Motion | 422 |
| Exhibit 42-2(L) | Portions of Exhibit 34 to the PSC Emergency Motion | 416 |
| Exhibit 42-2(LL) | Portions of Exhibit 47 to the PSC Emergency Motion | 422 |
| Exhibit 42-2(M) | Portions of Exhibit 34 to the PSC Emergency Motion | 416 |

Page 316

DEPOSITION EXHIBITS
YU CHEN
July 10, 2015

| NUMBER | DESCRIPTION | MARKED |
|---|---|---|
| Exhibit 42-2 | Revised Global Contempt Violations Chart | 411 |
| Exhibit 42-2(A) | Exhibit 36 to the PSC Emergency Motion | 412 |
| Exhibit 42-2(AA) | Exhibit 49 to the PSC Emergency Motion | 420 |
| Exhibit 42-2(AAA) | Portions of Exhibit 47 to the PSC Emergency Motion | `426 |
| Exhibit 42-2(B) | Portions of Exhibit 34 to the PSC Emergency Motion | 413 |
| Exhibit 42-2(BB) | Exhibit 50 to the PSC Emergency Motion | 420 |
| Exhibit 42-2(BBB) | Portions of Exhibit 47 to the PSC Emergency Motion | 426 |
| Exhibit 42-2(C) | Exhibit 35 to the PSC Emergency Motion | 413 |
| Exhibit 42-2(CC) | Portions of Exhibit 47 to the PSC Emergency Motion | 420 |
| Exhibit 42-2(D) | Portions of Exhibit 34 to the PSC Emergency Motion | 414 |
| Exhibit 42-2(DD) | Portions of Exhibit 47 to the PSC Emergency Motion | 420 |
| Exhibit 42-2(E) | Exhibit 37 to the PSC Emergency Motion | 414 |
| Exhibit 42-2(EE) | Portions of Exhibit 47 to the PSC Emergency Motion | 421 |
| Exhibit 42-2(F) | Portions of Exhibit 34 to the PSC Emergency Motion | 415 |

Page 318

DEPOSITION EXHIBITS

| NUMBER | DESCRIPTION | MARKED |
|---|---|---|
| Exhibit 42-2(MM) | Portions of Exhibit 47 to the PSC Emergency Motion | 423 |
| Exhibit 42-2(N) | Portions of Exhibit 34 to the PSC Emergency Motion | 416 |
| Exhibit 42-2(NN) | Portions of Exhibit 47 to the PSC Emergency Motion | 423 |
| Exhibit 42-2(O) | Exhibit 42 to the PSC Emergency Motion | 417 |
| Exhibit 42-2(OO) | Portions of Exhibit 47 to the PSC Emergency Motion | 423 |
| Exhibit 42-2(P) | Exhibit 43 to the PSC Emergency Motion | 417 |
| Exhibit 42-2(PP) | Portions of Exhibit 47 to the PSC Emergency Motion | 423 |
| Exhibit 42-2(Q) | Portions of Exhibit 47 to the PSC Emergency Motion | 417 |
| Exhibit 42-2(QQ) | Portions of Exhibit 47 to the PSC Emergency Motion | 424 |
| Exhibit 42-2(R) | Portions of Exhibit 34 to the PSC Emergency Motion | 418 |
| Exhibit 42-2(RR) | Portions of Exhibit 47 to the PSC Emergency Motion | 424 |
| Exhibit 42-2(S) | Portions of Exhibit 34 to the PSC Emergency Motion | 418 |
| Exhibit 42-2(SS) | Portions of Exhibit 47 to the PSC Emergency Motion | 424 |
| Exhibit 42-2(T) | Portions of Exhibit 34 to the PSC Emergency Motion | 418 |

Page 319

DEPOSITION EXHIBITS

| NUMBER | DESCRIPTION | MARKED |
|---|---|---|
| Exhibit 42-2(TT) | Portions of Exhibit 47 to the PSC Emergency Motion | 424 |
| Exhibit 42-2(U) | Exhibit 44 to the PSC Emergency Motion | 418 |
| Exhibit 42-2(UU) | Portions of Exhibit 47 to the PSC Emergency Motion | 424 |
| Exhibit 42-2(V) | Exhibit 45 to the PSC Emergency Motion | 419 |
| Exhibit 42-2(VV) | Portions of Exhibit 47 to the PSC Emergency Motion | 425 |
| Exhibit 42-2(W) | Portions of Exhibit 34 to the PSC Emergency Motion | 419 |
| Exhibit 42-2(WW) | Portions of Exhibit 47 to the PSC Emergency Motion | 425 |
| Exhibit 42-2(X) | Portions of Exhibit 46 to the PSC Emergency Motion | 419 |
| Exhibit 42-2(XX) | Portions of Exhibit 47 to the PSC Emergency Motion | 425 |
| Exhibit 42-2(Y) | Portions of Exhibit 47 to the PSC Emergency Motion | 419 |
| Exhibit 42-2(YY) | Portions of Exhibit 47 to the PSC Emergency Motion | 425 |
| Exhibit 42-2(Z) | Exhibit 48 to the PSC Emergency Motion | 419 |
| Exhibit 42-2(ZZ) | Portions of Exhibit 47 to the PSC Emergency Motion | 426 |
| Exhibit 43-2(A) | Exhibit 51 to the PSC Emergency Motion | 426 |

Page 320

DEPOSITION EXHIBITS

| NUMBER | DESCRIPTION | MARKED |
|---|---|---|
| Exhibit 43-2(AA) | Exhibit 82 to the PSC Emergency Motion | 433 |
| Exhibit 43-2(B) | Exhibit 52 to the PSC Emergency Motion | 427 |
| Exhibit 43-2(BB) | Exhibit 83 to the PSC Emergency Motion | 433 |
| Exhibit 43-2(C) | Exhibit 54 to the PSC Emergency Motion | 427 |
| Exhibit 43-2(CC) | Exhibit 94 to the PSC Emergency Motion | 433 |
| Exhibit 43-2(D) | Exhibit 53 to the PSC Emergency Motion | 427 |
| Exhibit 43-2(DD) | Exhibit 84 to the PSC Emergency Motion | 433 |
| Exhibit 43-2(E) | Exhibit 55 to the PSC Emergency Motion | 427 |
| Exhibit 43-2(EE) | Exhibit 95 to the PSC Emergency Motion | 433 |
| Exhibit 43-2(F) | Exhibit 56 to the PSC Emergency Motion | 428 |
| Exhibit 43-2(FF) | Exhibit 85 to the PSC Emergency Motion | 434 |
| Exhibit 43-2(G) | Exhibit 57 to the PSC Emergency Motion | 428 |
| Exhibit 43-2(GG) | Exhibit 96 to the PSC Emergency Motion | 434 |
| Exhibit 43-2(H) | Exhibit 58 to the PSC Emergency Motion | 428 |

Page 321

DEPOSITION EXHIBITS

| NUMBER | DESCRIPTION | MARKED |
|---|---|---|
| Exhibit 43-2(HH) | Exhibit 97 to the PSC Emergency Motion | 434 |
| Exhibit 43-2(I) | Exhibit 59 to the PSC Emergency Motion | 428 |
| Exhibit 43-2(II) | Exhibit 92 to the PSC Emergency Motion | 434 |
| Exhibit 43-2(J) | Exhibit 60 to the PSC Emergency Motion | 428 |
| Exhibit 43-2(JJ) | Exhibit 86 to the PSC Emergency Motion | 434 |
| Exhibit 43-2(K) | Exhibit 61 to the PSC Emergency Motion | 429 |
| Exhibit 43-2(KK) | Exhibit 87 to the PSC Emergency Motion | 434 |
| Exhibit 43-2(L) | Exhibit 62 to the PSC Emergency Motion | 429 |
| Exhibit 43-2(LL) | Exhibit 88 to the PSC Emergency Motion | 435 |
| Exhibit 43-2(M) | Exhibit 63 to the PSC Emergency Motion | 430 |
| Exhibit 43-2(MM) | Exhibit 89 to the PSC Emergency Motion | 435 |
| Exhibit 43-2(N) | Exhibit 64 to the PSC Emergency Motion | 430 |
| Exhibit 43-2(NN) | Exhibit 90 to the PSC Emergency Motion | 435 |
| Exhibit 43-2(O) | Exhibit 65 to the PSC Emergency Motion | 430 |

Page 322

DEPOSITION EXHIBITS

| NUMBER | DESCRIPTION | MARKED |
|---|---|---|
| Exhibit 43-2(OO) | Exhibit 72 to the PSC Emergency Motion | 435 |
| Exhibit 43-2(P) | Exhibit 66 to the PSC Emergency Motion | 431 |
| Exhibit 43-2(PP) | Exhibit 73 to the PSC Emergency Motion | 435 |
| Exhibit 43-2(Q) | Exhibit 67 to the PSC Emergency Motion | 431 |
| Exhibit 43-2(QQ) | Exhibit 91 to the PSC Emergency Motion | 436 |
| Exhibit 43-2(R) | Exhibit 68 to the PSC Emergency Motion | 431 |
| Exhibit 43-2(RR) | Exhibit 93 to the PSC Emergency Motion | 436 |
| Exhibit 43-2(S) | Exhibit 69 to the PSC Emergency Motion | 431 |
| Exhibit 43-2(SS) | Exhibit 80 to the PSC Emergency Motion | 436 |
| Exhibit 43-2(T) | Exhibit 70 to the PSC Emergency Motion | 432 |
| Exhibit 43-2(U) | Exhibit 74 to the PSC Emergency Motion | 432 |
| Exhibit 43-2(V) | Exhibit 75 to the PSC Emergency Motion | 432 |
| Exhibit 43-2(W) | Exhibit 76 to the PSC Emergency Motion | 432 |
| Exhibit 43-2(X) | Exhibit 77 to the PSC Emergency Motion | 432 |

Page 323

DEPOSITION EXHIBITS

| NUMBER | DESCRIPTION | MARKED |
|---|---|---|
| Exhibit 43-2(Y) | Exhibit 78 to the PSC Emergency Motion | 432 |
| Exhibit 43-2(Z) | Exhibit 79 to the PSC Emergency Motion | 433 |
| Exhibit 44-2(A) | Exhibit 150 to the PSC Emergency Motion | 437 |
| Exhibit 44-2(B) | Exhibit 151 to the PSC Emergency Motion | 437 |
| Exhibit 44-2(C) | Exhibit 152 to the PSC Emergency Motion | 437 |
| Exhibit 44-2(D) | Exhibit 153 to the PSC Emergency Motion | 438 |
| Exhibit 44-2(E) | Exhibit 154 to the PSC Emergency Motion | 438 |
| Exhibit 44-2(F) | Exhibit 155 to the PSC Emergency Motion | 438 |
| Exhibit 44-2(G) | Exhibit 156 to the PSC Emergency Motion | 438 |
| Exhibit 44-2(H) | Exhibit 157 to the PSC Emergency Motion | 439 |
| Exhibit 44-2(I) | Exhibit 158 to the PSC Emergency Motion | 439 |
| Exhibit 44-2(J) | Exhibit 159 to the PSC Emergency Motion | 439 |
| Exhibit 44-2(K) | Exhibit 160 to the PSC Emergency Motion | 439 |
| Exhibit 44-2(L) | Exhibit 161 to the PSC Emergency Motion | 439 |

Page 324

DEPOSITION EXHIBITS

| NUMBER | DESCRIPTION | MARKED |
|---|---|---|
| Exhibit 44-2(M) | Exhibit 162 to the PSC Emergency Motion | 439 |
| Exhibit 44-2(N) | Exhibit 163 to the PSC Emergency Motion | 440 |
| Exhibit 44-2(O) | Exhibit 164 to the PSC Emergency Motion | 440 |
| Exhibit 44-2(P) | Exhibit 165 to the PSC Emergency Motion | 440 |
| Exhibit 44-2(Q) | Exhibit 166 to the PSC Emergency Motion | 440 |
| Exhibit 44-2(R) | Exhibit 167 to the PSC Emergency Motion | 440 |
| Exhibit 44-2(S) | Exhibit 168 to the PSC Emergency Motion | 441 |
| Exhibit 44-2(T) | Exhibit 169 to the PSC Emergency Motion | 441 |
| Exhibit 93 | Various Documents Regarding Service of BNBM | 378 |
| Exhibit 96 | Various Documents Regarding BNBM Drywall Shipments to the U.S. | 513 |
| Exhibit 106 | Additional Efforts to Serve Complaints and Related Pleadings on BNBM | 380 |
| Exhibit 109 | E-mail(s) BNBMPLC-E-0000470 | 389 |
| Exhibit 110 | Company Listing BNBMPLC-E-0000819 - BNBMPLC-E-0000820 | 515 |

Page 325

DEPOSITION EXHIBITS

| NUMBER | DESCRIPTION | MARKED |
|---|---|---|
| Exhibit 115 | Explanation Regarding the Product Quality Dispute BNBMPLC-E-0001225 | 450 |
| Exhibit 116 | Compilation of Press Coverage BNBMPLC-E-0001226 - BNBMPLC-E-0001252 | 447 |
| Exhibit 119 | Compilation of Press Coverage BNBMPLC-E-0002110 - BNBMPLC-E-0002154 | 450 |
| Exhibit 119R | Red-Lined Version of Exhibit 119 | 450 |
| Exhibit 121R | Red-Lined Version of Exhibit 121 | 456 |
| Exhibit 123 | Communications About the Problems of BNBM BNBMPLC-E-0006059 - BNBMPLC-E-0006060 | 374 |
| Exhibit 124R | Red-Lined Version of Exhibit 124 | 459 |
| Exhibit 138 | Statistical Spreadsheet of Gypsum Boards Exported to the U.S. 2006 BNBMPLC-E-0029161 | 517 |
| Exhibit 140 | Work Report BNBMPLC-E-0030088 - BNBMPLC-E-0030091 | 399 |
| Exhibit 140R | Red-Lined Version of Exhibit 140 | 399 |

Page 326

DEPOSITION EXHIBITS

| NUMBER | DESCRIPTION | MARKED |
|---|---|---|
| Exhibit 144 | December 12, 2011 Deposition of Donald H. Wilson | 520 |
| Exhibit 151A | Chinese Version of Exhibit 151 | 442 |
| Exhibit 151R | Red-Lined Version of Exhibit 151 | 442 |
| Exhibit 152A | Chinese Version of Exhibit 152 | 442 |
| Exhibit 152R | Red-Lined Version of Exhibit 152 | 442 |
| Exhibit 153A | Chinese Version of Exhibit 153 | 443 |
| Exhibit 153R | Red-Lined Version of Exhibit 153 | 443 |
| Exhibit 154A | Chinese Version of Exhibit 154 | 443 |
| Exhibit 154R | Red-Lined Version of Exhibit 154 | 443 |
| Exhibit 155A | Chinese Version of Exhibit 155 | 443 |
| Exhibit 155R | Red-Lined Version of Exhibit 155 | 444 |
| Exhibit 156A | Chinese Version of Exhibit 156 | 444 |
| Exhibit 156R | Red-Lined Version of Exhibit 156 | 444 |

DEPOSITION EXHIBITS

| NUMBER | DESCRIPTION | MARKED |
|---|---|---|
| Exhibit 157A | Chinese Version of Exhibit 157 | 444 |
| Exhibit 157R | Red-Lined Version of Exhibit 157 | 444 |
| Exhibit 158A | Chinese Version of Exhibit 158 | 444 |
| Exhibit 158R | Red-Lined Version of Exhibit 158 | 445 |
| Exhibit 159A | Chinese Version of Exhibit 159 | 445 |
| Exhibit 159R | Red-Lined Version of Exhibit 159 | 445 |
| Exhibit 160A | Chinese Version of Exhibit 160 | 445 |
| Exhibit 160R | Red-Lined Version of Exhibit 160 | 446 |
| Exhibit 162 | FRE 1006 Summary Chart of BNBM Guarantees to Taishan Gypsum | 362 |

PREVIOUSLY MARKED EXHIBITS

| NUMBER | PAGE |
|---|---|
| Exhibit 1 | 468 |
| Exhibit 22 | 330 |
| Exhibit 22A | 330 |
| Exhibit 40 | 469 |
| Exhibit 40A | 469 |
| Exhibit 66 | 491 |
| Exhibit 66A | 491 |
| Exhibit 101 | 338 |
| Exhibit 102 | 368 |
| Exhibit 102R | 368 |
| Exhibit 103 | 371 |
| Exhibit 103R | 371 |
| Exhibit 104 | 373 |

PROCEEDINGS

(July 10, 2015 at 7:34 a.m.)

THE VIDEOGRAPHER:  This is the beginning of Disc 1 of Volume 3 of the deposition of Beijing New Building Material Public Limited Company.  Today is July 10th, 2015, at the time indicated on the video screen, which is 7:34. We're now on the record.

YU CHEN,

having been duly sworn,

testified as follows:

EXAMINATION

BY MR. LEVIN:

Q   Good morning, sir.

A   Good morning.

Q   Have a good evening?

A   Very good.

Q   Then we'll have a good day.

A   Thank you.

Q   When last we met at 5:00 p.m. yesterday evening, you affirmed that there was a noncompete clause between CNBM and BNBM and its affiliate, Taishan; am I correct?

MR. BARR:  Object to the form of the question.

MS. DALEY:  Objection to form.

A   There has been no competitive relationship between CNBM and BNBM, neither has there been competitive relationship between CNBM and Taishan Gypsum.

BY MR. LEVIN:

Q   In fact, under the documents that you subscribe to at BNBM and that your colleagues at CNBM subscribe to, you're prohibited from competing with each other, are you not?

MR. BARR:  Object to the form of the question.

MS. DALEY:  Objection, form.

A   I have not seen that document.

MR. LEVIN:  Well, why don't we turn to Exhibit 22 and Exhibit 22A, which is the Chinese version.  Would you show it to the witness, sir?

MR. BARR:  Sure.

BY MR. LEVIN:

Q   And, sir, I call your attention to Bates number 2995, and the English version is 3207 through 3208R.  And let the record show that the English version has been approved by BNBM.

Have you read it, sir?

MR. EAGAN:  Arnie, what's the page

Page 331

1   again, please?
2        MR. LEVIN:  On the English, 3207 through
3   3208R.
4        MR. EAGAN:  Thank you.
5   A    This is the information disclosed in our
6   annual report, like I have said previously to you,
7   that there has been no competitive relationship
8   between CNBM and BNBM.  As to the specific promises in
9   the document, I have not read it, but just like what I
10  said yesterday, there was no competitive relationship.
11  BY MR. LEVIN:
12  Q    Well, having -- this is the annual report,
13  which I believe you've testified to on prior days that
14  you had read.
15  A    That is correct.  I did read the company's
16  annual report, but the annual report consists of
17  hundreds of pages.  If you are referring to any
18  specific paragraphs, I do not recall.  But I know for
19  a fact that there has no -- there has been no
20  competitive relationship.
21  Q    And now, sir, having the report in front of
22  you, has it refreshed your memory as to the fact that,
23  not only have you not competed -- CNBM and BNBM, not
24  competed with each other, but they're prohibited from
25  competing with each other?

Page 332

1        MR. BARR:  Objection to the form of the
2     question.  The document speaks for itself.
3        MS. DALEY:  Same objection.
4   A    That's what the document says, but if even I
5   had not seen this document, I know that there is no
6   such a competitive relationship existing.
7   BY MR. LEVIN:
8   Q    I don't want to beat a dead horse --
9        MR. BARR:  Feels like you are.
10  BY MR. LEVIN:
11  Q    -- but let's beat a dead horse.
12       You're prohibited from competing,
13  pursuant to the terms of that document, aren't you,
14  sir?
15       MR. BARR:  Objection, asked and
16    answered -- I'm sorry.
17       (Translation.)
18       MR. BARR:  Objection, asked and answered
19    multiple times, and the document speaks for
20    itself.
21  A    This is the promise from the controlling
22  shareholder, CNBM, to BNBM, and CNBM Company is the
23  actual controller of BNBM; therefore, its promises are
24  legally binding.
25  BY MR. LEVIN:

Page 333

1   Q    And, in fact, sir, you have never been shown
2   the global prospectus, have you?
3        MR. BARR:  What global prospectus?
4        MR. LEVIN:  CNBM public global offering.
5   A    Which year was that?
6   BY MR. LEVIN:
7   Q    2006.
8   A    I have not seen it.
9   Q    Would it surprise you that the very language
10  that you've read in your annual report, the BNBM
11  annual report, is in the CNBM global offering?
12       MR. BARR:  Objection to the form of the
13    question, calls for speculation.
14       MS. DALEY:  Same objection.
15       THE WITNESS:  I'd like the interpreter
16    to reinterpret.
17       (Translation.)
18  A    No.
19  BY MR. LEVIN:
20  Q    Let's turn to document, also in 22, dash,
21  22A, 3052 in Chinese and 3253R in English.
22       MR. BARR:  32?
23       MR. LEVIN:  3253.
24       MR. BARR:  I don't think that's in the
25    R, though, is it?  Is that the page we added

Page 334

1   yesterday?
2        MR. LEVIN:  Yes.
3        MR. BARR:  Do I have a copy of that?
4        MR. NICKEL:  We gave you guys copies,
5     ten copies yesterday, to distribute.
6        MR. LEVIN:  Okay.  Sorry.  That's not my
7     job.  Just bear with us.  I apologize.
8        MR. BARR:  Okay.  Arnold, you can
9     proceed.  I've got at least one, so if you've
10    got one, we can go ahead.
11  BY MR. LEVIN:
12  Q    Sir, I'd like you to read paragraph 3, which
13  is on the page that I indicated to you.
14       MR. BARR:  And what page did you say in
15    the Chinese, in Exhibit 22A?
16       MR. LEVIN:  Chinese is at --
17       MS. ROBERTSON:  3052.
18       MR. BARR:  3052?  Okay.  Okay.  You can
19    go ahead.
20  BY MR. LEVIN:
21  Q    Have you read it, sir?
22  A    I want to make sure this is the paragraph
23  you want me to read.
24  Q    Starts with, "Basis for determining control
25  and significant influence on invested entities."  Let

1  me show you on the Chinese document.

2     A    Okay.  I got it.

3          "'Control' refers to the powers over

4  the invested party and entities in the vesting party

5  to variable returns through participating in relevant

6  activities in vested party, and enables the investing

7  party to influence the amount of return by exercising

8  the powers over the invested party.  'Significant

9  influences' refers to the powers of the investing

10 party in participating in making decisions on the

11 financial and operational policies of the invested

12 entity without controlling, or jointly, with other

13 parties, controlling the making of such policies."

14    Q    Now, sir, this is from the BNBM Plc annual

15 report 2014, is it not?

16    A    Yes, it is a terminology from the audit

17 report in midst of the 2004 annual report.

18    Q    Sir --

19         MR. BARR:  2014 annual report,

20    Translator?

21    A    Yes, 2014.

22         MR. BARR:  Okay.

23 BY MR. LEVIN:

24    Q    And this is a directive that you follow in

25 the ordinary course of business in functioning in

1  BNBM?

2         MR. BARR:  Object to the form of the

3    question.

4     A    The word "control" is a terminology in

5  accounting.  The definition of the word "control" is

6  defined in the standard of accounting.  My

7  understanding is that since it is also -- it is in the

8  audit report, therefore the word "control" is a

9  terminology in accounting.

10 BY MR. LEVIN:

11    Q    Now, CNBM Group is the actual controller of

12 BNBM, is it not?

13    A    Yes, the word "actual controller" is a legal

14 terminology, and its definition can be found in

15 company law as well as company charter.

16    Q    And the actual controller, CNBM Group, has

17 no share -- is not a shareholder of BNBM Plc, is it?

18         (Translation.)

19 BY MR. LEVIN:

20    Q    Now --

21         MR. BARR:  Is that a statement or a

22    question?  He didn't say anything.  Are you

23    testifying?

24         MR. LEVIN:  When it says "is it," it

25    becomes a question.

1         MR. BARR:  Well, you were continuing on,

2  so I didn't know whether you wanted an answer to

3  the question you posed.

4         MR. LEVIN:  I have to wait for the

5  answer, I've been told.

6         MR. BARR:  That's what I was thinking.

7  Thank you.

8         Can the translator please read back the

9  question?

10         (Translation.)

11         MR. BARR:  And I object to the form of

12 the question.

13         MS. DALEY:  Same objection.

14    A    It is not my shareholder.

15 BY MR. LEVIN:

16    Q    Nevertheless, the word -- the legal --

17 strike that.

18         The word "control," in its legal

19 meaning, is used when we refer to the actual

20 controller; am I correct?

21         MR. BARR:  Object to the form of the

22 question.

23         MS. DALEY:  Same objection.

24    A    The word "control" can be used in many

25 places.

1  BY MR. LEVIN:

2     Q    In fact, sir, in the documents that you have

3  provided to us, the word "control" appears in many

4  places, does it not?

5     A    Correct.

6     Q    And --

7     A    But it should have different meanings when

8  placed in different places.

9         MR. LEVIN:  Okay.  Let's move on.

10         MR. BARR:  Are we done with Exhibit 22

11 for the moment?

12         MR. LEVIN:  Yes.

13         MR. BARR:  Okay.

14         MR. LEVIN:  Yes, let's go to the meeting

15 minutes, Sandy.

16         MS. DUGGAN:  Turning to Exhibit 101 --

17         MR. BARR:  Okay.  We'll give Mr. Nickel

18 a bit of exercise, lifting these binders.  Okay.

19         MS. DUGGAN:  Plaintiffs' Steering

20 Committee marked --

21         MR. BARR:  Wait.  We're still grabbing

22 binders.  Okay.

23         This is all of it?

24         (Conference out of the hearing of the

25 reporter.)

Page 339

1     MR. BARR:  Okay.  Sandy, you can go
2  ahead.
3     MS. DUGGAN:  I just wanted to note for
4  the record that the Plaintiffs' Steering
5  Committee marked Exhibit 101 for the record and
6  we were presented with red-lines to certain
7  pages by the defendants, which we agreed to, and
8  those have been now integrated into this binder
9  which --
10    MR. BARR:  We have done the same.
11    MS. DUGGAN:  -- the parties have agreed
12  to all of the English translations of the
13  documents contained within Exhibit 101.
14    MR. ROSENBERG:  Yes.
15       EXAMINATION
16 BY MS. DUGGAN:
17   Q    Mr. Chen, I believe, when I asked you the
18 other day if you had seen these announcements of
19 temporary and interim meetings of the board of
20 directors from 2005 to March of 2015, you said you
21 had; is that correct?
22   A    Correct.
23   Q    Are these announcements prepared in the
24 regular course of your business at BNBM?
25   A    These announcements were published according

Page 340

1  to the law and the requirement of managing public
2  listed companies.
3    Q    Are they published on the website for the
4  Shenzhen Stock Exchange?
5    A    Correct.
6    Q    And who authorizes their publication?
7    A    The board of directors authorizes its
8  publication.
9    Q    And do these announcements contain accurate
10 information?
11   A    Yes.
12   Q    Have there been any corrections to these
13 announcements after they were published?
14      THE INTERPRETER:  The interpreter needs
15   to clarify with deponent.
16      (Translation.)
17   A    To my recollection, it rarely happened, but
18 according to the regulation, if there were any
19 corrections, we would immediately, following those
20 corrections, to publish an announcement in regard to
21 the corrections.  These are also publicly disclosed.
22   Q    And if there had been any corrections on a
23 rare occasion and it had been published, were those
24 produced to the Plaintiffs' Steering Committee in this
25 litigation?

Page 341

1     MR. BARR:  It is our understanding that
2   all of them have been produced.
3   A   I know that we have provided all public
4  disclosed announcements according to requirements.
5      EXAMINATION
6  BY MR. LEVIN:
7    Q   Sir, is it true that the board of directors
8  reviews and approves resolutions that involve Taishan
9  Gypsum?
10     MR. BARR:  Objection to the form.
11   A   Can you specify which board of directors?
12 BY MR. LEVIN:
13   Q   BNBM's board of directors.
14     MR. BARR:  Still object to the form.
15     THE WITNESS:  Please repeat the
16   interpretation.
17     (Translation.)
18   A   BNBM, the public listed company, as the
19 controlling shareholder of Taishan Gypsum, according
20 to the company law and company charter, as well as
21 rules and regulation of stock exchanges transactions,
22 some of those transactions of Taishan Gypsum would be
23 brought to the board of directors of BNBM, the
24 shareholder, for discussion and approval.
25     MR. LEVIN:  Mike, can you read that back

Page 342

1  for me, please?
2      (The following portion of the record was
3      read.)
4      "ANSWER:  BNBM, the public listed
5      company, as the controlling shareholder of
6      Taishan Gypsum, according to the company law and
7      company charter, as well as rules and regulation
8      of stock exchanges transactions, some of those
9      transactions of Taishan Gypsum would be brought
10     to the board of directors of BNBM, the
11     shareholder, for discussion and approval."
12 BY MR. LEVIN:
13   Q   And so the board of directors approves
14 BNBM's loans to Taishan; is that correct?
15   A   As far as I know, if BNBM provides loans to
16 the subsidiary company it has control in, which is
17 Taishan Gypsum, it is not necessary to be approved by
18 the board of directors.
19   Q   Well, I don't read Chinese, but I do read
20 English.  And when I see all of the board of directors
21 minutes approving loans, I'm really seeing what occurs
22 at BNBM, am I not?
23     MS. EIKHOFF:  Object to form.
24     MR. BARR:  I'll object to the form
25   and -- object to the form.

Page 343

1    MR. LEVIN:  It's a double objection to
2    form?
3    MR. BARR:  I was pondering other ones,
4    and I let it go with an objection to form.
5    A    Please show me the document, if you have it.
6    BY MR. LEVIN:
7    Q    Sir, you're the general manager of BNBM and
8    a director of BNBM and director of Taishan.  Do you
9    have to see a document to refresh your recollection to
10   know that BNBM board of directors approves loans of
11   BNBM to Taishan, and without the document, you can't
12   answer my question?
13   MR. BARR:  Object to the form of the
14   question.
15   (Translation.)
16   MR. BARR:  Object to the form of the
17   question.  Objection that it mischaracterizes
18   the witness' testimony.
19   A    Respect of Mr. Levin, according to my
20   recollection, as the general manager and director, the
21   board of directors of BNBM had not discussed about
22   BNBM providing loans to Taishan.
23   BY MR. LEVIN:
24   Q    Does the board of directors approve
25   proposals of Taishan Gypsum to offer loans to

Page 344

1    Taishan's subsidiaries?
2    MR. BARR:  Objection to the form.
3    A    No, BNBM board of directors has not
4    discussed this topic.
5    BY MR. LEVIN:
6    Q    Now, I'm trying to understand what a
7    controlling shareholder is and an actual controller
8    is, and maybe you can help me.
9    Is BNBM the actual controller of a
10   subsidiary of -- a subsidiary of Taishan?
11   A    As far as what I understand, no.
12   Q    Could you turn to Tab 73.
13   MR. LEVIN:  Do we have the Bates number
14   on it?
15   MS. EIKHOFF:  Tab 73 of Exhibit 101?
16   MS. DUGGAN:  Yes.
17   MR. BARR:  The witness has the document
18   in front of him.
19   MR. LEVIN:  Okay.
20   BY MR. LEVIN:
21   Q    Does that document show BNB -- reflect BNB's
22   approval of various activities of Taishan?
23   (Translation.)
24   MR. LEVIN:  Um --
25   MR. BARR:  Let him answer the question.

Page 345

1    MR. LEVIN:  Can I?
2    MR. BARR:  Sure.
3    A    This is BNBM's board of directors resolution
4    announcement 2014-034 regarding its discussion and
5    approval of Taishan Gypsum's invested projects
6    according to company law, company charter and rules
7    and regulations of stock exchange.  BNBM -- this is
8    the reviewing and approval procedure of BNBM as its
9    shareholder.
10   BY MR. LEVIN:
11   Q    Sir, does this document reflect that BNBM is
12   approving an investment by Taishan Gypsum, a
13   subsidiary of the company, and another entity?
14   MR. BARR:  Objection to the form of the
15   question.  The document speaks for itself.
16   A    It reflects that Taishan Gypsum had two
17   investing projects which had clearly -- which had been
18   clearly stated in the document.
19   BY MR. LEVIN:
20   Q    So in order for Taishan to make that
21   investment, they needed BNBM's approval; is that
22   correct?
23   A    First of all, Taishan Gypsum's board of
24   director would review and approve this, and at the
25   same time, BNBM, as a public listed company and

Page 346

1    shareholder, would perform its review and approval
2    procedure, as well as public announce all of it to the
3    investors.
4    MR. LEVIN:  Is that it, Sunny?
5    THE INTERPRETER:  Yes.
6    BY MR. LEVIN:
7    Q    Let's be very clear.  That transaction could
8    not be accomplished without BNBM's approval; am I
9    correct?
10   A    For investment projects such as this,
11   according to the company charter of Taishan Gypsum,
12   Taishan Gypsum can make an independent decision about
13   it.
14   Q    But in practice, sir, Taishan Gypsum didn't
15   make an independent decision here; they required
16   BNBM's approval before they accomplished that
17   endeavor.
18   MS. EIKHOFF:  Object to form.
19   A    This is only that's BNBM, as the shareholder
20   of Taishan Gypsum, performing the review and approval
21   procedure.
22   BY MR. LEVIN:
23   Q    Sir, BNBM was not on a frolic of their own,
24   were they?  The directors of BNBM were required to
25   approve that transaction; is that not a fact?

1       MR. BARR:  Objection to the form of the
2  question.
3       (Pause.)
4       MR. BARR:  She's looking up "frolic."
5  Could make it simpler.
6       THE INTERPRETER:  The interpreter
7  inquires the meaning of "frolic of their own" in
8  the context.
9       MR. BARR:  Can you rephrase the
10  question, please?
11  BY MR. LEVIN:
12     Q     BNBM was not being frivolous when they
13  endeavored in the situation at issue, where they
14  approved that particular endeavor of Taishan Gypsum?
15       MR. BARR:  Object to the form.
16       THE WITNESS:  I don't quite understand.
17  Can the interpreter reinterpret?
18       (Translation.)
19     A     BNBM, as a shareholder of Taishan Gypsum,
20  BNBM's board of directors does not discuss all issues
21  of Taishan Gypsum.  It only, in accordance with the
22  requirements of the stock exchange and company
23  charter, to review and approve those issues -- rather,
24  transactions, that qualified to be discussed in
25  Taishan Gypsum.  And as Taishan Gypsum's shareholder,

1  it provides its opinions.
2  BY MR. LEVIN:
3     Q     Did BNBM, in approval, give them an opinion,
4  or was it a definite approval to do what they wanted
5  to do?
6     A     Under the circumstances when Taishan Gypsum
7  plans to invest in projects and it believes it has
8  reached the standard of bringing it up to the
9  awareness of BNBM's board of directors and
10  shareholder, then it would be brought up to the board
11  of directors of BNBM to be discussed.
12     Q     If BNBM's board of directors did not approve
13  this transaction, could Taishan have accomplished it?
14       THE INTERPRETER:  The interpreter would
15  like to add to her prior interpretation of the
16  answer given by Mr. Chen.  Mr. Chen also said in
17  his answer "according to the requirements of the
18  stock exchange."
19       (Translation.)
20       MR. LEVIN:  Is that your answer, sir?
21       MR. BARR:  The interpreter specifically
22  said that that was part of his prior answer she
23  had not yet translated.
24       MR. LEVIN:  Okay.
25       MR. BARR:  Maybe for clarity of the

1  record, if the reporter could simply now read
2  the question you just posed.
3       MR. LEVIN:  Okay.
4       MR. LIAO:  She just did.
5       MR. BARR:  Well, I'm saying for Mike to
6  put it in the transcript.
7       THE INTERPRETER:  The interpreter will
8  reinterpret the question.
9       (Translation.)
10     A     According to Taishan Gypsum -- Taishan
11  Gypsum's company charter, the decision of Taishan
12  Gypsum has different limitations in authorities.
13       There are limitations of authorities
14  on the level of the management.  There are limitations
15  of authorities on the levels of board of directors
16  meeting.  There are limitations of authorities on the
17  level of shareholders meeting.
18       BNBM, as a shareholder, only expresses
19  its opinion on the level of shareholders meeting.
20       MR. BARR:  Might take a break briefly,
21  if we can.
22       MR. LEVIN:  Okay.
23       THE VIDEOGRAPHER:  This is the end of
24  Disc 1.  We're now off the record at 8:33.
25       (Recess taken, 8:33 a.m. to 8:48 a m.)

1       THE VIDEOGRAPHER:  This is Disc 2.
2  We're now back on the record.  The time is 8:48.
3       MR. LEVIN:  Mike, could you please read,
4  for the record, the witness' last answer?
5       (The following portion of the record was
6  read.)
7       "ANSWER:  According to Taishan Gypsum --
8  Taishan Gypsum's company charter, the decision
9  of Taishan Gypsum has different limitations in
10  authorities.
11       "There are limitations of authorities on
12  the level of the management.  There are
13  limitations of authorities on the levels of
14  board of directors meeting.  There are
15  limitations of authorities on the level of
16  shareholders meeting.  BNBM as a shareholder
17  only expresses its opinion on the level of
18  shareholders meeting."
19       THE WITNESS:  I have not competed my
20  answer to this question.
21       MR. LEVIN:  Oh.  By all means, go ahead.
22     A     The reason BNBM discusses Taishan Gypsum's
23  investing projects is to be able to form BNBM as
24  shareholder's opinion, as well as to reach the goal of
25  voting and make a resolution in Taishan Gypsum's

Page 351

1  shareholders meeting.
2  BY MR. LEVIN:
3      Q    Well, with regard to this particular
4  project, am I to take your answer as a yes?
5          MR. BARR:  Objection to the form of the
6  question.
7          MS. EIKHOFF:  Object to form.
8          MR. BARR:  I just think it's too
9  separated in time, if you could just rephrase
10 it.
11         MR. LEVIN:  I think after -- no, I have
12 a reason for using one word, after a long
13 explanation from that, to a question that could
14 be answered yes or no.
15         MR. BARR:  I object to the form of the
16 question.
17         MS. EIKHOFF:  Are you referring to the
18 question that was posed before the break?
19         MR. LEVIN:  I'm referring to my --
20         MS. EIKHOFF:  I'm sorry, I need to
21 understand what's -- what the pending question
22 is.
23         MR. LEVIN:  Read the transcript.
24         MS. EIKHOFF:  Thank you, Arnie.
25         MR. BARR:  My objection is noted for the

Page 352

1      record.
2          THE WITNESS:  Can you repeat your
3  question?
4          MR. LEVIN:  Want to pull it up, Sandy?
5          THE REPORTER:  You want me to read it?
6  I've got it.
7          MR. LEVIN:  Okay.
8  BY MR. LEVIN:
9      Q    The question that I asked, sir, that I will
10 repeat, that you spoke to at length, is as follows:
11         If BNBM's board of directors did not
12 approve this transaction, could Taishan have
13 accomplished it?
14     A    As for these two transactions, the two
15 Taishan Gypsum's investments, Taishan Gypsum's
16 shareholders meeting would have to have more than 50%
17 of the vote, according to Taishan Gypsum's company
18 charter, in order for the resolution to be
19 implemented.
20         If BNBM's board of directors had
21 formed an opinion of objection to these two projects,
22 then BNBM's representative will vote no at Taishan
23 Gypsum's shareholders meeting.  If that's the case,
24 Taishan Gypsum's shareholders meeting would not
25 approve these projects.

Page 353

1      Q    And you are a member of both the board of
2  directors at BNBM as well as Taishan; am I correct?
3          MR. BARR:  Objection, asked and
4  answered, multiple times.
5          MR. LEVIN:  Just a little color.
6      A    Yes.
7  BY MR. LEVIN:
8      Q    And how many members are there of Taishan's
9  board of directors?
10     A    Five.
11     Q    And how many of the five are appointed by
12 BNBM?
13     A    Three --
14     Q    And --
15     A    -- came from BNBM.
16     Q    I'm sorry.
17         And BNBM's directors -- strike that.
18         And the Taishan directors that are
19 appointed by BNBM owe their fidelity to BNBM; am I
20 correct?
21         MR. BARR:  Objection to the form of the
22 question.  Objection, lack of foundation.
23     A    As a director of Taishan Gypsum, while
24 performing the duties as a director, I exercise my
25 rights according to the best welfare of Taishan

Page 354

1  Gypsum.
2  BY MR. LEVIN:
3      Q    And isn't it a fact, sir, that the best
4  welfare of Taishan Gypsum, on all occasions that you
5  voted, were to vote the way the board of directors,
6  that you're a member of at BNBM, voted?
7          MR. BARR:  Objection to the form.
8          THE WITNESS:  Your question is rather
9  long.  I would like the interpreter to
10 reinterpret.
11         (Translation.)
12     A    No.  When there is a conflict of interest
13 between the voting issues in the board of directors of
14 Taishan Gypsum and BNBM, as a director appointed by
15 BNBM, I would avoid such a vote.
16 BY MR. LEVIN:
17     Q    And if the BNBM directors on Taishan who
18 voted one way on the vote at the board of directors
19 meeting in BM, you would all exclude yourself from the
20 vote at Taishan and let the two non-BNBM members
21 control that particular issue?  Is that your
22 testimony?
23         MR. BARR:  Objection to the form.
24 Objection, mischaracterizes the witness'
25 testimony.

1      THE WITNESS:  Repeat the interpretation.
2      (Translation.)
3   A   I don't understand your question.
4   BY MR. LEVIN:
5   Q   Has there ever been an occasion where the
6   three members of BNBM board of directors -- the three
7   members -- strike that.
8      Has there ever been an occasion where
9   BNBM's designated directors on the Taishan board of
10  directors collectively refused to vote because they
11  could not carry out the directive that they had from
12  BNBM?
13     MR. BARR:  Object to the form.
14  A   What do you mean by the last two sentences?
15     MR. LEVIN:  Can you answer my question,
16  sir?
17     THE WITNESS:  I'd like the interpreter
18  to reinterpret.
19     (Translation.)
20  A   To give up voting?  No, not according to my
21  knowledge.
22  BY MR. LEVIN:
23  Q   Does --
24     MR. LEVIN:  We can move on, Tab 58.
25     MS. DUGGAN:  This is Tab 58 of

1   Exhibit 101.
2   BY MR. LEVIN:
3   Q   Could you identify that document, sir?
4   A   I identify with the document.
5   Q   Okay.  Could you tell everybody here and
6   everybody that will read this transcript what the
7   document is titled?
8   A   "BNBM Group Company, Limited Resolution
9   Announcement on the Fourth Board of Directors Meeting,
10  the Ninth Meeting."
11     MR. BARR:  And we have stipulated to the
12  translation of that document to state "Beijing
13  New Building Materials Public Limited Company
14  Announcement of the Resolutions of the Ninth
15  Interim Meeting of the Fourth Session of the
16  Board of Directors."
17     MR. LEVIN:  Thank you, Michael, for
18  saving my voice.
19     MR. BARR:  My pleasure.
20     THE INTERPRETER:  Can I have the English
21  translation, the stipulated English translation?
22     MR. BARR:  It's right in the same tab.
23  It's the third document that has R.
24     THE INTERPRETER:  Oh, yes.  Thank you.
25     MR. BARR:  After the pink sheet, I think

1   it is.
2      THE INTERPRETER:  This one?
3      MR. BARR:  Keep going.  Yes.  That's the
4   translated version.
5      THE INTERPRETER:  Okay.  Thank you.
6   I've got it.
7   BY MR. LEVIN:
8   Q   Could you please turn to Roman numeral XII
9   on that document.
10     (Comments off the stenographic record.)
11  BY MR. LEVIN:
12  Q   Sir, do you see the paragraph that starts
13  with Roman numeral XII?
14  A   Yes.
15  Q   Rather than test your memory, does that
16  indicate that BNBM approves the guaranties for Taishan
17  Gypsum Company, Limited?
18  A   It was approved and agreed for BNBM to
19  provide guaranty for Taishan Gypsum.
20  Q   In the normal course of business, as you run
21  your corporation at BNBM, in your relationship with
22  your subsidiary, Taishan, do you often approve
23  guaranties for Taishan?
24  A   Yes, we provide guaranty for Taishan Gypsum
25  for years.

1   Q   And this is a regular course of undertaking
2   by BNBM, is it not?
3      MR. BARR:  Objection to the form.
4      THE WITNESS:  Please reinterpret.
5      (Translation.)
6   A   This is not a kind of responsibility, but
7   this is in order to increase the profitability of
8   Taishan Gypsum, BNBM provides its guaranty to Taishan
9   Gypsum as a business consideration.
10     THE INTERPRETER:  This is the
11  interpreter speaking.  There is no corresponding
12  Chinese translation for the word "undertaking."
13  The interpreter interpreted as "responsibility."
14  BY MR. LEVIN:
15  Q   Well, on this particular date, March 16th,
16  2012, let's look at what your board at BNBM approved.
17  Ms. Duggan is going to read it into the record.
18     MS. DUGGAN:  This is from Bates page
19  BNBMPLC0004734, and it's also contained in
20  Chinese at Bates BNBMPLC20004727.
21     Roman numeral XII, "Reviewed and
22  approved the 'resolution about providing
23  guaranty for Taishan Gypsum Company, Limited.'
24  The company agreed to provide guaranty for
25  comprehensive credit line, working capital loan

Page 359

1   and project loan of 900 million for Taishan
2   Gypsum Company, Limited, with details as
3   follows.
4        "1.  To provide guaranty for Taishan
5   Gypsum for comprehensive credit line of RMB
6   220 million in Taian bank -- excuse me, Taian
7   branch of Bank of China Limited, and the
8   warranty period is one year.
9        "2.  To provide guaranties for loans for
10  comprehensive credit line of RMB 350 million in
11  Taian Longze branch of Agricultural Bank of
12  China Company, Limited, and the warranty period
13  is one year.
14       "3.  To provide guaranty for Taishan
15  Gypsum for comprehensive credit line of RMB
16  130 million in China Industrial & Commercial
17  Bank, Ningyang branch, with the guaranteed
18  period of one year.
19       "4.  To provide guaranty for Taishan
20  Gypsum Company, Limited for comprehensive credit
21  line of RMB 73 million in Taian Branch of Bank
22  of Communications, Limited, and the warranty
23  period is one year.
24       "5.  To provide guaranty for Taishan
25  Gypsum for working capital loan of RMB

Page 360

1   27 million in Jinan branch of China Everbright
2   Bank Company, Limited, and the warranty period
3   is one year.
4        "6.  To provide guaranty for Taishan
5   Gypsum for the working capital of RMB
6   100 million yuan in Taian Youth Road branch of
7   China Construction Bank, Limited, and the
8   warranty period is one year.
9        "The total guaranteed amount above RMB
10  900 million only.  The resolution is subject to
11  the deliberation and approval of the
12  shareholders general meeting.  The resolution
13  was approved with nine votes in favor, zero
14  against, and zero abstentions."
15       THE WITNESS:  You don't have to read it.
16       MR. BARR:  Please.
17       MR. LEVIN:  Okay.  Are you ready for me
18  or --
19       MR. BARR:  Yes.  She was about to
20  retranslate.
21       MR. LEVIN:  I understand, and I was
22  keeping my mouth shut.  I was afraid you'd
23  holler at me.
24  BY MR. LEVIN:
25       Q    Sir, isn't it a fact that BMB provides

Page 361

1   substantial financial support for Taishan?
2        MR. BARR:  Objection to the form of the
3   question.
4        A    BNBM did provide guaranties for Taishan
5   Gypsum.  If you believe it is substantial, then let it
6   be.
7   BY MR. LEVIN:
8        Q    Do you believe it's substantial?
9        A    I think it's very substantial.
10       Q    And is it a fact that Taishan could not
11  succeed in its business endeavors without the
12  financial support of BNBM?
13       MR. BARR:  Objection, calls for
14  speculation.
15       A    I'm not able to make judgments on the issue
16  because history cannot repeat itself.
17  BY MR. LEVIN:
18       Q    Sir, when the board of directors approves
19  the guaranties of Taishan, they're doing so, so that
20  Taishan can succeed in its business endeavors, are
21  they not?
22       A    Correct.  In consideration of this issue in
23  the board of directors of BNBM, BNBM believes if
24  Taishan Gypsum accomplishes success in the project,
25  then, as the biggest shareholder of Taishan Gypsum,

Page 362

1   BNBM will also enjoy the success of Taishan Gypsum
2   through the dividends it receives.
3        Q    Sir, have you ever read "The Three
4   Musketeers"?
5        MR. BARR:  Arnold, let's move on,
6   please.  We're at day three here.  Let's just
7   move on.  Ask a real question.
8        MR. LEVIN:  Can I say all for one and
9   one for all?
10       MR. BARR:  Like I said, keep going.
11       MR. LEVIN:  Okay.  Strike that.
12  BY MR. LEVIN:
13       Q    Sir, I've --
14       MR. LEVIN:  Do we have -- here we go,
15  the envelope.
16       Pursuant to Federal Rule of Evidence
17  1006, I want to present Michael with this
18  document.  And ready for me?
19       MR. BARR:  Sure.
20       (B:7/8/15-7/11/15 Exhibit 162 marked.)
21       MR. LEVIN:  Let the record show that
22  this will be marked as Exhibit 162.  The
23  supporting documentation is noted in the
24  Bates-numbered English version of the document,
25  and the Bates numbers should reflect that --

1   they should be precede -- they should be
2   identified with an R because they have been
3   translated by the defendant, and we accept their
4   translation.
5        MS. DUGGAN:  The defendants' red-lines.
6        MR. LEVIN:  The defendants' red-line.
7        MR. BARR:  Okay.  Show an English
8   document to the witness?
9        MR. LEVIN:  That's a good question.
10       MR. BARR:  I mean, this is a compilation
11  that you've just provided to us in English
12  referencing, you know, carloads of documents
13  here.  We have no way to evaluate this.  I
14  understand you presented this to us, and now we
15  have it.  But beyond that, what can you do with
16  it now?
17  BY MR. LEVIN:
18       Q    Sir, is it a fact that from 2005 through
19  2014, there are guaranties, substantial guaranties,
20  provided to Taishan each and every year in order for
21  Taishan to maintain its profitability and business
22  interest?
23       A    Yes.
24       Q    And, sir, are you aware that money passed
25  hands between Taishan and the plaintiffs in this

1   litigation, the PSC, as well as the east -- the Court
2   in the Eastern District of Louisiana in connection
3   with the contempt order?
4        MR. BARR:  Can you rephrase the question
5   to eliminate the colloquial expression?  It will
6   take us longer --
7        MR. LEVIN:  Which was colloquial?
8   Because I speak colloquially.
9        MR. BARR:  "Money passed hands."  It'll
10  take us more time than it's worth.
11       (Translation.)
12       MR. BARR:  He's going to rephrase the
13  question.
14       MR. LEVIN:  I'm going to rephrase the
15  question.
16       MR. BARR:  He's going to rephrase the
17  question.
18       MR. LEVIN:  Okay.  It's my language.
19       MR. BARR:  I can have a conversation
20  with you over dinner, but we're here in a
21  deposition, I'd like this to move along.
22       MR. LEVIN:  We can put that off for
23  another time.
24  BY MR. LEVIN:
25       Q    Are you aware, sir, that Taishan made

1   payment to the Germano plaintiffs in this litigation,
2   counsel for the Germano plaintiffs, and a penalty
3   imposed by the Court in connection with the contempt
4   order of Judge Fallon in the Eastern District of
5   Louisiana?
6        A    I'm aware of that.  Taishan Gypsum had
7   notified us for this matter, and BNBM had also made
8   public announcements in that regard.
9        Q    Whose funds were utilized to make those
10  payments?
11       A    Taishan.
12       Q    Now, money is the most fungible product
13  known to man, and I would like to know whether BNBM
14  contributed, in whole or in part, to that payment.
15       MS. EIKHOFF:  Object to form.
16       MR. BARR:  Object to form.  And can we
17  go off the record for a second?
18       MR. LEVIN:  Sure.
19       THE VIDEOGRAPHER:  We're now off the
20  record at 9:28.
21       (Discussion off the record.)
22       THE VIDEOGRAPHER:  We're now back on the
23  record.  The time is 9:29.
24  BY MR. LEVIN:
25       Q    Sir, in making that payment, did Taishan

1   receive any funds from BNBM?
2        A    No.
3        Q    Did they receive any funds from BNBM Group?
4        A    Not to my knowledge.
5        Q    Well, if you have no knowledge of that and I
6   wanted to gain knowledge of that, what would you do to
7   obtain knowledge of that?
8        MR. BARR:  Well, now, I'm going to make
9   an objection.  The witness is here -- well, I'm
10  going to make an objection because -- maybe you
11  want to rephrase that question.  The witness is
12  here as the 30(b)(6) of BNBM Plc.  He's not here
13  as a 30(b)(6) for BNBM Group, who will be
14  deposed next week.  And you certainly are free
15  to ask the question of Group next week.
16       MR. LEVIN:  I understand that, but he
17  may know the answer despite --
18       MR. BARR:  I think he already indicated
19  he doesn't know the answer.
20       MR. LEVIN:  Well, he may know how I can
21  find out the answer.
22       MR. BARR:  Objection noted.
23       THE INTERPRETER:  Should the interpreter
24  interpret the question?  She has not gotten an
25  opportunity to interpret it.

Page 367

1      MS. DUGGAN:  Yes.

2      (Translation.)

3   A    According to the management rules and

4   regulations of public listed company, if there are any

5   transactions between Taishan Gypsum and BNBM, it

6   should be characterized as affiliated transaction.  As

7   a director, I should be notified.

8   BY MR. LEVIN:

9   Q    Sir, do you know whether CNBM made any

10  payment to Taishan to facilitate the payments of

11  Taishan to the Germano seven plaintiffs?

12  A    My answer will be the same as my prior

13  answer.

14  Q    In the year -- calendar year 2015, did BNBM

15  provide any loan guaranties for Taishan?

16  A    Yes.

17  Q    On or about March of 2015, did BNBM provide

18  any loan guaranties for Taishan?

19  A    There are terms for loans.  Of course there

20  were the existence of such guaranty at that time

21  point.

22  Q    Were any new guaranties provided in March of

23  2015?

24  A    All the loan guaranties provided to Taishan

25  by BNBM were being discussed on the board of directors

Page 368

1   meeting of BNBM, and subsequent announcements were

2   made.

3   Q    Were the previous guaranties for the year

4   2014, that being the previous year, increased during

5   2015?

6   A    I don't have a clear recollection on the

7   specific amount of the guaranty, but if you would like

8   to have knowledge of that, I can pull out the board of

9   directors resolution to check.

10  Q    Would you do that, sir.

11      (Document review.)

12      MR. LEVIN:  Maybe we should break and

13   allow him to look and I'll come back.

14      MR. BARR:  Let's go off the record.

15      THE VIDEOGRAPHER:  This is the end of

16   Disc 2.  We're now off the record at 9:39.

17      (Recess taken, 9:39 a.m. to 9:55 a.m.)

18      THE VIDEOGRAPHER:  This is Disc 3.

19   We're now back on the record, and the time is

20   9:55.

21      EXAMINATION

22  BY MS. DUGGAN:

23  Q    Mr. Chen, you have before you Exhibit 102

24  and Exhibit 102R.  We showed you this exhibit two days

25  ago.  It contains BNBM Plc announcements on the

Page 369

1   resolutions from interim and regular meetings of

2   shareholders from 2005 to 2014, and it contains Bates

3   numbers BNBMPLC0005014 through 5207.  We've integrated

4   the original Exhibit 102 with 102R, containing the

5   red-lines of the English translations that have been

6   agreed to by all parties.

7      This binder contains Tabs 1 through

8   31.  You testified previously that you had seen these

9   documents before, and I want to ask you whether these

10  documents were prepared in the regular course of the

11  business of BNBM by somebody knowledgeable, whether

12  the information is accurate, and if these were

13  published to the stock exchange, Shenzhen Stock

14  Exchange website.

15      MR. BARR:  Just stop there.

16  A    To my knowledge, yes.

17  BY MS. DUGGAN:

18  Q    And is the information contained within

19  these announcements accurate?

20      THE INTERPRETER:  The interpreter would

21   like to correct her prior interpretation.

22   Mr. Chen said "to my understanding, yes."

23      (Translation.)

24  A    To my knowledge, yes.

25  BY MS. DUGGAN:

Page 370

1   Q    And when you say to your knowledge, are you

2   speaking on behalf of the company, BNBM Plc?

3   A    I represent all.

4   Q    In other words, yes, you're speaking on

5   behalf of BNBM Plc?

6   A    Correct.

7   Q    And is BNBM present at the shareholders

8   meetings that are contained in these announcements?

9      MR. BARR:  I'm sorry.

10      (Translation.)

11      MR. BARR:  These are BNBM meetings.  I

12   don't understand the question.  Object to the

13   form.

14  A    I also do not understand the question.  This

15  is the shareholders meeting of BNBM.  When you asked

16  whether BNBM was present, I didn't quite understand.

17  BY MS. DUGGAN:

18  Q    In other words, does BNBM hold these

19  shareholder meetings?

20  A    BNBM's board of directors held the

21  shareholders meeting.

22  Q    After these announcements were published on

23  the website for the Shenzhen Stock Exchange, have

24  there been any corrections or edits made to the

25  announcements?

Page 371

1   A   I can't accurately say whether it was
2  revised or not.  If they were revised, they would have
3  been announced also, on the website of Shenzhen Stock
4  Exchange.
5   Q   And similar to Exhibit 101, if there were
6  any revisions to any of these announcements, they
7  would have been produced to the PSC; is that correct?
8   A   I did not do the work personally.  If there
9  were any corrections, we will try our best to provide
10  it to the plaintiffs' committee.
11   Q   And who prepared these announcements?
12   A   By the company's security and legal
13  department.
14   Q   I'd like to ask you to look at Exhibit 103
15  and Exhibit 103R, which are contained in the binder
16  that was marked two days ago.  It contains BNBM Plc
17  board of directors meeting minutes from 2005 to 2015,
18  Bates range BNBMPLC0005923 to 609.  The binder has
19  Tabs 1 through 28, and the red-lines of the
20  translations in English that have been agreed to by
21  the parties are now integrated in the binder with 103.
22       I'm going to ask you the similar
23  questions that I asked you about Exhibit 102.  You
24  stated two days ago that you've reviewed these
25  documents before.  Are they prepared in the regular

Page 372

1  course of BNBM's business by somebody with knowledge
2  of the information contained in these meeting minutes?
3   A   Your question is very long.  What is it that
4  I need to confirm?
5   Q   Are these -- were these board of director
6  meeting minutes prepared by somebody with knowledge of
7  what transpired at the meetings on behalf of BNBM?
8   A   Correct.
9   Q   Were they prepared at or about the time that
10  the meetings occurred?
11   A   Are you referring to the time of recording
12  or the time of submission?
13   Q   Are these minutes prepared as the meeting is
14  occurring, or are they prepared after the meeting
15  occurs?
16   A   At the time the meeting is occurring.
17   Q   Are these minute meetings approved by the
18  board of directors of BNBM?
19   A   Yes.
20   Q   And who is responsible --
21   A   At the end of every minute of the meeting
22  there's the signatures of the participating directors.
23   Q   Who approve the minute meetings before
24  they're published?
25   A   Correct.

Page 373

1   Q   Are these minute meetings then published on
2  the website for the Shenzhen Stock Exchange?
3   A   No, it is not necessary to disclose publicly
4  the meeting minutes.
5   Q   Have there been any edits or corrections to
6  any of the minute meetings contained within
7  Exhibit 103 and 103R?
8   A   No.
9   Q   And is the information contained within
10  these minutes accurate?
11   A   Yes.
12   Q   I'd like to turn your attention to
13  Exhibit 104.  104 is a binder that contains BNBM Plc
14  extraordinary, annual and interim shareholder meetings
15  from 2005 to 2015.  It contains Bates numbers
16  BNBMPLC0006284 through 6428, Tabs 1 through 31.
17       Are these documents contained within
18  this binder kept in the regular course of the business
19  of BNBM?
20   A   Yes.
21   Q   And who prepares these documents?
22   A   The staff of the company's security and
23  legal department.
24   Q   And is the information contained within
25  these documents accurate?

Page 374

1   A   Whether the information is accurate?  At
2  least it accurately reflects the content of the
3  meeting.
4   Q   And are the minutes transcribed
5  contemporaneously as the meeting is occurring?
6   A   Correct.
7   Q   Are these minutes published by the company?
8   A   No.
9   Q   And, to your knowledge, have there been any
10  edits or corrections to any of these meeting minutes?
11   A   No.
12       MR. BARR:  Just so the record is clear,
13    that with respect to all of the documents you've
14    just questioned about in 102, 103 and 104, all
15    those questions pertain to the Chinese-language
16    versions as opposed to the English translations
17    that are interpolated within the binders?
18       MS. DUGGAN:  Yes.
19       MR. BARR:  Okay.
20       MR. LEVIN:  Okay.
21       (B:7/8/15-7/11/15 Exhibit 123 marked.)
22       MR. LEVIN:  Okay.  Exhibit 123.
23       MR. BARR:  Put these away?
24       MR. LEVIN:  Yes.
25       MS. DUGGAN:  Plaintiffs are marking for

Page 375

1  identification Exhibit 123, showing a copy to
2  the witness, a copy to the interpreter, a copy
3  to all counsel present at the deposition.
4        This document is a partial translation
5  prepared by the PSC of document
6  BNBMPLC-E-0006059 through 6060.  Following the
7  PSC's partial translation is a machine
8  translation provided by BNBM, and a Chinese
9  document at Bates number BNBMPLC-E-0006059 to
10 6060.  The PSC has highlighted in the Chinese
11 document the portion that was translated.
12       MR. BARR:  And, Ms. Duggan --
13       MS. DUGGAN:  We understand that
14 defendants have not previously seen this
15 document and have not agreed to the translation,
16 but they will have an opportunity to red-line it
17 later in the deposition or after the deposition.
18       MR. BARR:  Thank you.
19            EXAMINATION
20 BY MR. LEVIN:
21    Q    Sir, have you ever seen this document
22 before?
23    A    The issues stated in this document seems to
24 have taken place in the year 2006 and 2007.  At the
25 time, I was not yet working for BNBM.  I have not seen

Page 376

1  this document before.
2    Q    Are you inferring the year 2006 from the
3  content of the full document?
4        THE INTERPRETER:  Interpreter needs to
5  clarify.
6    A    I've misspoken.
7  BY MR. LEVIN:
8    Q    Well, are you familiar with this document,
9  sir?
10   A    No.
11   Q    Do you know who generated this document?  It
12 was provided to us by your employer, BNBM.
13   A    I don't know.
14   Q    Do you know -- the document, to me, in
15 English, mentions a spot check.  Do you know who
16 conducted the spot check?  Was it internal or external
17 to BNBM?
18       (Pause.)
19 BY MR. LEVIN:
20   Q    Referring, sir, to the highlighted
21 paragraph --
22       THE INTERPRETER:  This is the
23 interpreter speaking.  There is no exact
24 corresponding translation for "spot check."  May
25 the interpreter interpret it into "random

Page 377

1  check"?
2        MR. LEVIN:  That's fine, as far as I'm
3  concerned.
4    A    I don't know.
5  BY MR. LEVIN:
6    Q    It also indicates that there was a
7  40 million fund transfer from the same account number,
8  but it was actually a transfer from CNBM to BNBM, and
9  then to Taishan Gypsum, likewise.  The voucher
10 displayed a transfer of 40 million yuan at Taihe's
11 repayment to CEM through a BNBM account.
12        Could you tell us, as general manager
13 and a director of BNBM, what that means to you?
14       MR. BARR:  I'm going to object to the
15 question -- object to the question.  It calls
16 for speculation --
17       THE INTERPRETER:  Can I interpret the
18 question?
19       MR. LEVIN:  She goes first.
20       (Translation.)
21       MR. BARR:  I'm going to object to the
22 question, to its form, and to the fact that the
23 question calls for speculation on the part of
24 the witness.
25       MS. DALEY:  Same objections.

Page 378

1        MR. LEVIN:  Please note that the -- when
2  I look at the transcript, I see that I said
3  "CEM."  That was meant to be "CNBM."  You may --
4        MR. BARR:  My objection stands.  It was
5  not on that basis.
6        MR. LEVIN:  I was correcting it not on
7  the basis of your objection.
8        THE INTERPRETER:  The interpreter asked
9  the deponent whether he would like a
10 reinterpretation.  The deponent said, "Please
11 reinterpret the question."
12       (Translation.)
13   A    The document itself had clearly stated what
14 it says.  I, myself, had not seen this document.  At
15 the time, I had not yet come to work for the company;
16 therefore, I do not know what were the facts according
17 to the statements of the document, neither do I know
18 who prepared the document.
19       (CG:7/8/15-7/11/15 Exhibit 93 marked.)
20       MS. DUGGAN:  Plaintiffs are marking for
21 identification and introduction into the record
22 in this case Exhibit 93.  We're going to be
23 offering a copy to the witness, to the
24 interpreter and to counsel for all defendants.
25 This exhibit is a compilation of various

1    documents, which I'm going to describe.
2        The first document is proof of service
3    upon Beijing New Building Material Company.
4    There's a certificate by Gross v. Knauf Gips KG, the
5    in the case of Gross v. Knauf Gips KG, the
6    addressee refused to accept the documents, and
7    then there's a proof of service in Chinese.
8        The second document is proof of service
9    upon BNBM by APS for August 25th, 2010.  APS was
10    the agent of the Plaintiffs' Steering Committee
11    to achieve service under the Hague Convention.
12    There's a certificate by APS that BNBM refused
13    service of the Wiltz complaint in Wiltz v.
14    Beijing New Building Materials.
15        The third document is an attestation of
16    service by APS International on BNBM and a
17    certificate that the company has moved, the
18    current address is unknown.  This was service in
19    the Gross case in December 2010.
20        The next document is a document
21    attesting to service upon BNBM in the Gross
22    case.  The addressee refused to accept the
23    documents on July 27, 2011, in the Gross case.
24        The next document is a certificate and
25    proof of service from APS International of

1    service upon BNBM on April 9, 2014, in the
2    Amorin Louisiana case v. Taishan Gypsum.  The
3    recipient refused to accept the documents.
4        The next document is a certificate of
5    service upon BNBM in the Amorin Virginia case v.
6    Taishan Gypsum.  The recipient refused to accept
7    the documents April 9th, 2014.
8        And the last document within this
9    exhibit is a certificate of service from APS
10    International upon BNBM in the Amorin Florida
11    case v. Taishan Gypsum.  The recipient refused
12    to accept the documents, April 9th, 2014.
13        MR. BARR:  And I understand that you are
14    describing the documents for purposes of
15    identification, but obviously the documents say
16    what they say.
17        MS. DUGGAN:  Yes.
18        MR. LEVIN:  They sure do.
19        (B:7/8/15-7/11/15 Exhibit 106 marked.)
20        MS. DUGGAN:  We're also going to offer
21    Exhibit 106 into the record and provide copies
22    to the witness, to the interpreter and all
23    counsel for defendants.
24        This exhibit is contained in a binder
25    described as "Additional efforts to serve

1    complaints and related pleadings on BNBM."  It
2    contains a chart that's a summary chart
3    describing the documents supporting the chart.
4        We offer it as a summary chart pursuant
5    to Federal Rule of Evidence 1006.  It contains
6    Tabs 1 through 11, which are letters from the
7    Plaintiffs' Steering Committee directed to BNBM,
8    as well as Federal Express invoices to BNBM.
9    These were additional efforts by the PSC to
10    serve complaints and related pleadings on BNBM
11    in this litigation.
12        MR. BARR:  And, again, the documents say
13    what they say.  This is the first time we've
14    seen the summary, nor have we obviously had an
15    opportunity to look at the documents before, but
16    we can proceed.  They've been marked for
17    identification in this deposition.
18        Do you have another binder for me?
19        (Comments off the stenographic record.)
20        MR. BARR:  Okay.  Maybe now I have more
21    than I want.  You may proceed.
22    BY MR. LEVIN:
23    Q    Sir, the Exhibit 93 indicates that BNBM
24    refused to accept service.  Do you have any idea why
25    BNBM would refuse to accept service?

1        MR. BARR:  Object to the form of the
2    question.
3    A    When you said "service," I don't quite
4    understand the terminology, nor the procedure, of this
5    word, since it's a legal terminology.
6        MR. BARR:  Well, I want to caution the
7    witness to the extent that his testimony in
8    response to the next series of questions, if
9    they come, from Mr. Levin are based upon
10    communications you've had with counsel, I would
11    direct you not to answer.  But if you have
12    independent knowledge, you may respond.
13        (Translation.)
14        MR. LEVIN:  Is there --
15        MR. BARR:  There's no question pending.
16    BY MR. LEVIN:
17    Q    Well, did you get -- you're the corporate
18    representative of BNBM, who have presented themselves
19    in this litigation with you as their representative to
20    answer all questions dealing with your particular
21    employer, a corporation where you are general manager
22    and a director; is that correct, sir?
23        MR. BARR:  Objection, mis -- please go
24    ahead and translate.
25        THE INTERPRETER:  Okay.

Page 383

1      (Translation.)
2      MR. BARR: Objection, the 30(b)(6)
3   notices are not unlimited scope. Furthermore,
4   we objected to provisions and parts of those
5   notices with respect to topics to be addressed
6   that focused on legal issues and legal terms.
7      THE WITNESS: Please reinterpret.
8      (Translation.)
9      THE INTERPRETER: The interpreter asked
10  the deponent, "Which part?" The deponent said,
11  "My attorney's statement."
12     (Translation.)
13  A   This is a question of --
14     THE INTERPRETER: The interpreter will
15  restart the interpretation.
16  A   This question was very much in the scope of
17  legal profession and terminologies. According to the
18  privilege between attorney and client, I cannot answer
19  this question.
20  BY MR. LEVIN:
21  Q   Sir, at BNBM, is there a receptionist, where
22  people that visit your facilities first present
23  themselves to?
24  A   Yes.
25  Q   And is that receptionist an attorney?

Page 384

1   A   No.
2   Q   And do you know why, if any, the person that
3   was at BNBM when the process -- when the document
4   arrived, refused to accept it?
5      MR. BARR: And, again, I'm going to give
6   the witness the same caution. If whatever
7   knowledge you have is based upon communications
8   with your attorneys, either internal or outside
9   counsel, I'm directing you not to answer. If
10  you have independent knowledge, you may respond.
11  A   I don't know.
12  BY MR. LEVIN:
13  Q   Did you ever inquire, before coming here
14  today, as to what individual refused to accept
15  service?
16     MR. BARR: The witness may answer that
17  question yes or no.
18  A   No.
19  BY MR. LEVIN:
20  Q   Now, I call your attention to Exhibit 106,
21  which is in English, and obviously you haven't seen
22  it, but let me describe. It is letters from my office
23  in Philadelphia, Pennsylvania, in the United States of
24  America, that sent you various pleadings, filings that
25  were made in the Eastern District of Louisiana before

Page 385

1   a U.S. Court, by Federal Express.
2      Do you have any knowledge of any of
3   those pleadings, letters, that were sent to you and
4   accepted by your employer in the normal course of your
5   business?
6      MR. BARR: I object to the form of the
7   question, lack of foundation.
8      And, again, I give the same caution to
9   the witness. If your knowledge is based upon
10  communications with counsel, I direct you not to
11  answer, but if you have independent knowledge,
12  you may respond.
13  A   Are you referring to these documents,
14  Exhibit 93?
15     MR. BARR: No, he's referring to
16  Exhibit 106.
17  BY MR. LEVIN:
18  Q   106.
19  A   What was your question?
20     THE INTERPRETER: The interpreter will
21  reinterpret the question.
22  BY MR. LEVIN:
23  Q   Do you have any knowledge --
24     MR. LEVIN: Oh, I'm sorry.
25     (Translation.)

Page 386

1      MR. BARR: I repeat and reaffirm the
2   objections I made and the caution I gave to the
3   witness. But you may answer that question yes
4   or no.
5   A   I have never seen these documents. I don't
6   know what your question is, whether I have accepted
7   it, whether -- or whether I have knowledge of it or
8   something else.
9   BY MR. LEVIN:
10  Q   Which person at BNBM would have knowledge of
11  receipts of Federal Express mail?
12  A   I don't know.
13     MR. BARR: Mr. Levin, I'm sure you don't
14  know who gets the Federal Express mail at your
15  office, neither do I.
16     MR. LEVIN: Yes, I do. It's Barbara
17  Sproehnle.
18     MR. BARR: Well, you're much more
19  knowledgeable about your firm than I.
20     MR. LEVIN: Let's take five minutes.
21     MR. BARR: Sure.
22     THE VIDEOGRAPHER: This is the end of
23  Disc 3. We're now off the record at 10:40.
24     (Recess taken, 10:40 a.m. to 10:52 a.m.)
25     THE VIDEOGRAPHER: This is the beginning

Page 387

1   of Disc 4.  We're now back on the record.  The
2   time is 10:52.
3   BY MR. LEVIN:
4       Q    Can we go back and, sir, could you look at
5   document 123.  It's in English, but just for a point
6   of reference, I have a few more questions with regard
7   to it.  It's this one.
8           MS. DUGGAN:  Exhibit 123 is a
9       translation of BNBMPLC-E-006059 through 6060.
10      It's a machine translation, and a Chinese
11      document in full behind the machine translation.
12  BY MR. LEVIN:
13      Q    Sir, you have -- okay.
14           Sir, as general manager of BNBM, you
15  have knowledge of the day-to-day operations of BNBM,
16  do you not?
17      A    I do know.
18      Q    And if I wanted to know the name of an
19  individual that I could talk to that would have
20  knowledge of the 40 million fund transfer from the
21  same account, but was actually a transfer from CNBM to
22  BNBM and then to Taishan, and likewise, that a voucher
23  displayed a transfer of 40 million yuan at Taihe's
24  repayment to CNBM through BNBM's account, who would I
25  go to at BNBM to get that information?

Page 388

1           MR. BARR:  Object to the form.
2           You may answer.
3           MS. DALEY:  Same objection.
4       A    Are you talking about the 40 million stated
5   in this report?
6   BY MR. LEVIN:
7       Q    Yes.
8       A    You can find the general manager or the
9   director of finance at the time for inquiry.
10      Q    Okay.  If you had this document before you
11  came to the United States and wanted to find out an
12  explanation for the 40 million fund transfer and the
13  path that that money took, who would you go and see?
14      A    I will go to the vice president in charge of
15  finance.
16      Q    And what is the name of that vice president
17  in charge of finance?
18      A    Y-A-N-G, space, Y-A-N-J-U-N.
19      Q    Does that particular transaction surprise
20  you, as a general manager of BNBM?
21           MR. BARR:  Object to the form of the
22      question.  Object, calls for speculation.
23           MS. DALEY:  Same objection.
24           THE INTERPRETER:  The interpreter needs
25      to clarify with deponent.

Page 389

1           (Translation.)
2           THE INTERPRETER:  Here's the deponent's
3       answer.
4       A    I do not have comments on that because it is
5   something that had happened before; therefore, I do
6   not have comments or opinion about it.
7   BY MR. LEVIN:
8       Q    Have you seen things like this happen in the
9   normal course of business at BNBM?
10      A    I have not seen that.
11           (B:7/8/15-7/11/15 Exhibit 109 marked.)
12  BY MR. LEVIN:
13      Q    Okay.  Let's go to Exhibit 109.
14           MS. DUGGAN:  The PSC is marking as
15      Exhibit 109 and offering into the record in this
16      matter a translation of BNBMPLC-E-0000470.  This
17      translation was prepared by the PSC.  Following
18      the PSC's translation is a machine translation
19      of the document provided by defendants, and the
20      last page of the exhibit is a Chinese document,
21      Bates number BNBMPLC-E-0000470.
22           It's my understanding that the
23      defendants have not disagreed to the PSC's
24      translation, but will have an opportunity to
25      red-line it and present it to the PSC either

Page 390

1   during or after the deposition.
2   BY MR. LEVIN:
3       Q    Sir, have you reviewed the document?
4       A    I don't recall.
5       Q    Could you identify the document for the
6   record?
7       A    The document is in front of me.  I can take
8   a look.
9       Q    Who...
10           (Document review.)
11           MR. BARR:  Can we just move forward to a
12      question about the substance?  I mean, if you're
13      going to ask him to identify it, we're going to
14      be here all day.
15  BY MR. LEVIN:
16      Q    Who authored the document?
17      A    L-U, space, P-I-N-G.
18      Q    And who is Mr. Lu?
19      A    She's a lady.  She's a staff in the
20  company's security and legal department.
21      Q    Okay.  And you were copied on that document,
22  were you not?
23      A    Correct.
24      Q    And do you know why you were copied?
25      A    I also don't know why it was copied to me.

1 Perhaps she wanted me to be notified on this.
2    Q    Well, the document says "All Leaders."  Were
3 you one of the leaders that that document refers to?
4    A    Correct, according my understanding.
5    Q    How were -- was this a committee that you
6 were a leader on?
7    A    No.
8    Q    Who were the other leaders?
9    A    I don't know who she was referring to when
10 she said "All Leaders," but I know that I was included
11 in the leaders.
12    Q    Did you take any action as a result of
13 receipt of this document?
14    A    Because this is a court document, according
15 to my recollection, I did not even open the
16 attachment.
17    Q    You make a habit of not opening attachments
18 of documents that you receive from your colleagues at
19 BNBM?
20    A    I rely on our attorney and people in our
21 security and legal department for professional legal
22 documents such as this.
23    Q    Well, this person in your securities and
24 legal department thought it was important enough to
25 send you this document, and you didn't open it to find

1 out what was in there?
2        MR. BARR:  Objection to the form of the
3     question, argumentative, lacks foundation, calls
4     for speculation.  I'm sure I can come up with a
5     few others, given the question.
6        MR. LEVIN:  Well, we'll keep the record
7     open for that.
8    A    Because the e-mail was not directly sent to
9 me, but to a person by the name of Shi Keping, I was
10 only copied on it.
11 BY MR. LEVIN:
12    Q    Well, if somebody copies you on a letter,
13 could we assume that they copy you on that letter for
14 a purpose?
15        MR. BARR:  Object to the form.
16     Objection, calls for speculation.
17    A    I can't speculate what she was thinking.
18 BY MR. LEVIN:
19    Q    Well, if you had opened the letter, sir, and
20 looked at the document, maybe you wouldn't be engaged
21 in speculation.  You'd know what she was thinking.
22        MR. BARR:  I'm going to direct the
23     witness not to answer that.  That's not a
24     question.  That's just a statement.
25        MS. EIKHOFF:  Argumentative.

1 BY MR. LEVIN:
2    Q    Sir, if you had opened the document, would
3 you know what Ms. Lu was referring to in that letter?
4        MR. BARR:  Objection, form and calls for
5     speculation.
6    A    Because on the body of this e-mail states it
7 is a legal document --
8        THE INTERPRETER:  The interpreter would
9     like to restart.
10    A    Because in the body of this e-mail states it
11 is a court document, and the court document is in the
12 attachment.  Because I'm not able to understand court
13 documents, therefore, I rely on the attorneys to do
14 so.
15 BY MR. LEVIN:
16    Q    Who is Shi Keping?  S-H-I, space,
17 K-E-P-I-N-G.
18    A    She is the secretary of the company's board
19 of directors, as well as the manager of security and
20 legal department.
21    Q    Is she an attorney?
22    A    She is not.
23    Q    What position does Lu Ping hold?
24        MR. BARR:  Objection, asked and
25     answered.

1    A    She is a staff of the company's security and
2 legal department.
3 BY MR. LEVIN:
4    Q    Is she an attorney?
5    A    No.
6    Q    Are you on any committee at BNBM delegated
7 to tracking this litigation?
8        MR. BARR:  At what point in time are you
9     asking?  At what point in time are you asking?
10        MR. LEVIN:  2014.
11    A    Can you specify what committee?
12 BY MR. LEVIN:
13    Q    I'm asking you, sir:  What committee do you
14 serve a function at BNBM in connection with tracking
15 the litigation involving 4,000 destroyed homes in the
16 United States of America where people have been
17 displaced for five or six years?
18        MR. BARR:  Now, based upon the documents
19     that have been submitted to the Court recently,
20     that number may be highly inflated and also
21     provacative and argumentative and unnecessary.
22     But if you would like to ask the witness a
23     question that he can actually just respond to,
24     that will be fine.
25    A    Your question is very complicated.  Can you

Page 395

1  specify?
2  BY MR. LEVIN:
3      Q    No.  That assumes I would think it's
4  complicated.  It's my question, and I don't think it's
5  complicated.
6          MR. LEVIN:  Could you -- Mike, could you
7      read the question over again, this uncomplicated
8      question to the witness?
9          MR. BARR:  Could we go back just to the
10     question you asked prior to the colloquy between
11     counsel, where you simply asked, "Are you on any
12     committee at BNBM delegated to tracking
13     litigation."  And that question is acceptable.
14         MR. LEVIN:  You didn't find it
15     complicated?
16         MR. BARR:  That wasn't the -- that
17     wasn't the question before.
18         MR. LEVIN:  Okay.
19     A    The security and legal department of the
20  company, under the direction of the attorneys, will
21  track the progress of BNBM's case.
22  BY MR. LEVIN:
23     Q    Are you part of the group that does the
24  tracking of the litigation?
25     A    I'm not, but under the direction of the

Page 396

1  attorneys, the security and legal department will
2  notify me on the progress of the case.  Me, as the
3  company's general manager, of course, is very
4  concerned about the progress of the case.
5      Q    Do they notify -- why are they notifying
6  you, sir?  What function do you serve in the
7  notification process?
8          MR. BARR:  Objection, asked and
9      answered.
10         You may answer again.
11         THE WITNESS:  Please repeat the
12     interpretation.
13         (Translation.)
14     A    The security and legal department would
15  notify me the progress of the case.
16  BY MR. LEVIN:
17     Q    Did you receive Exhibit 109 pursuant to the
18  securities and legal department notifying you of the
19  progress of the case?
20         THE WITNESS:  Please repeat the
21     interpretation.
22         (Translation.)
23     A    According to the document, it was received.
24         MR. LEVIN:  Could I have that answer
25     read back, please?

Page 397

1          MR. BARR:  "According to the document,
2      it was received."
3  BY MR. LEVIN:
4      Q    Was there anything in particular about the
5  court document on January 22, 2015, that was important
6  to you?
7          MR. BARR:  To the extent your knowledge
8      is based upon communications with counsel, I
9      direct you not to answer the question.  If you
10     have independent knowledge, you may respond.
11         MS. EIKHOFF:  Object to form.
12     A    I don't know the full content of the
13  attachment.
14  BY MR. LEVIN:
15     Q    Do you know why you were given the amended
16  class action complaint that was filed -- strike that.
17         Do you know why this document refers
18  to the complaint of the State of Louisiana and the
19  Attorney General, Buddy Caldwell?
20         MR. BARR:  Again, I'm going to give the
21     witness the same caution.  If your knowledge is
22     based upon your communications with counsel, I
23     direct you not to answer.  If you have
24     independent knowledge, you may respond.
25  BY MR. LEVIN:

Page 398

1      Q    Let's go to Exhibit 130.
2          MR. BARR:  While we're getting that
3      document, we've been at this for four hours
4      already this morning.  We've been at this for
5      two and a half days at this point.  In order to
6      accommodate a maximum number of questions, we
7      arrived at 7:30 this morning to begin.  At this
8      juncture, I'm simply asking you to move this
9      along a little more rapidly.  We've all been
10     here a long time.  None of the depositions in
11     this case extended beyond three days.  We're
12     here to respond to questions.  Again, at this
13     juncture, I'd simply request that we pick up the
14     pace here, please.
15         MR. LEVIN:  My clients --
16         MR. BARR:  Because both of us know that
17     any lawyer that's been doing this as long as you
18     and I have can ask an endless series of
19     questions about an endless series of documents,
20     and depositions could go on for a year.  We need
21     to move this process forward.
22         MR. LEVIN:  I take your comment under
23     advisement.  But my clients have waited six
24     years for this date.
25         MR. BARR:  Nonetheless, these are court

Page 399

1   procedures.  The federal rules generally provide
2   for only seven-hour depositions, as you know.
3   Obviously, we have a translator involved, which
4   makes it a harder process to go through.  We're
5   being as accommodating as we can.  I'm simply
6   asking to pick up the pace.
7        MR. LEVIN:  We don't get seven hours in
8   cases like this.  This is not red car versus
9   blue car.  Let's -- I will move on.
10       (Translation.)
11       MR. BARR:  One moment.  Off the record.
12       THE VIDEOGRAPHER:  We're now off the
13  record at 11:26.
14       (Recess taken, 11:26 a.m. to 11:27 a.m.)
15       THE VIDEOGRAPHER:  We're now back on the
16  record.  The time is 11:27.
17       MR. BARR:  This is a document that
18  appears on its face to be privileged and was
19  inadvertently produced, and I'm going to direct
20  the witness not to respond to questions
21  pertaining to it.  And to claw back pursuant to
22  the provisions that are a part of this
23  litigation and what the Court has directed.
24       (B:7/8/15-7/11/15 Exhibit 140 marked.)
25       (B:7/8/15-7/11/15 Exhibit 140R marked.)

Page 400

1        MR. LEVIN:  Okay.  Let's go to
2   Exhibit 140, which has been red-lined as
3   Exhibit 140R.
4        MS. DUGGAN:  Exhibit 140R is a partial
5   translation of BNBMPLC-E-0030088, dash, 30091.
6   This is a translation prepared by the PSC.  The
7   defendants have red-lined the translation, and
8   the parties have agreed to the language.
9   There's a machine translation that was provided
10  by the defendants, and a document in Chinese
11  with Bates numbers BNBMPLC-E-003008 [sic]
12  through 30091.
13       The PSC has highlighted in yellow in the
14  Chinese document the portions of the document
15  that have been translated.
16       MR. LEVIN:  Ms. Duggan, could you read
17  the translated portions that the defendant has
18  agreed to?
19       MS. DUGGAN:  This is a work report,
20  "Beijing New Building Materials Public Limited
21  Company, Yu Chen, year 2014.  Work assigned to
22  me:  Securities and legal affairs department,
23  investment development department, gypsum
24  industry development department (January to
25  October), purchase and commercial department

Page 401

1   (October to December).
2        "1. Main Work in 2014" --
3        MR. BARR:  It's not necessary to
4   retranslate.
5        MR. LEVIN:  No, it's certainly not.
6        MR. BARR:  He has the Chinese in front
7   of him and --
8        MR. LEVIN:  He has the Chinese, and
9   we're dealing with the agreed-to English.
10       MS. DUGGAN:  "2.  Legal Affairs Work.
11  Subparagraph 1, American Gypsum Board
12  Litigation:  Continue to track the lawsuit,
13  collect those media coverage materials,
14  attorneys opinions, statistics, monitoring
15  results and legal departments that are relevant
16  to the lawsuit.  Organize and participate in
17  specialized discussions based on the attitude to
18  be responsible for investors, timely and
19  completely disclose the case developments."
20       Then from -- this is at page
21  BNBMPLC-E-0030091, Roman numeral III,
22  "Shortcoming During Work and Direction for
23  Improvement.  1, during coping with the American
24  Gypsum board proficiency" --
25       MR. BARR:  No "proficiency" --

Page 402

1        MS. DUGGAN:  Excuse me.  Let me start
2   over.
3        "1, during coping with the American
4   Gypsum board litigation, deeply felt the shallow
5   understanding of American laws and the
6   insufficiency of my English proficiency, which
7   resulted in strong reliance on the attorneys and
8   also impacted efficiency, and need to continue
9   to make great efforts to study and research,
10  January 6, 2015."
11  BY MR. LEVIN:
12  Q    Sir, does what Ms. Duggan read you refresh
13  your recollection as to why Lu Ping copied you on
14  Exhibit 109?
15       MS. EIKHOFF:  Object to form.
16       MR. BARR:  Object to form as well.
17  A    I don't know why she copied it to me, and
18  I'm unable to speculate her purposes.  This is her
19  work report to her direct superior, Ms. Shi Keping.  I
20  was only copied on it.
21  BY MR. LEVIN:
22  Q    So you were copied, once again, on a report
23  by Lu Ping; is that correct?
24  A    Are you referring to the document in my
25  hand --

Page 403

1  Q   Yes, sir.

2  A   -- document 1402?

3  Q   Yes.

4       You want to correct whose work report

5  that is?

6  A   This is my own work report.

7  Q   Okay.  And --

8       MR. BARR:  I think he was just confused.

9       MR. LEVIN:  I agree.  I agree he was

10      confused.  I was surprised, and he was confused.

11 BY MR. LEVIN:

12 Q   So this document indicates that you were

13 assigned to the securities and legal affairs

14 department, does it not?

15      MR. BARR:  Objection, mischaracterizes

16      the document.

17      MR. LEVIN:  Strike that.

18 BY MR. LEVIN:

19 Q   That work was assigned to you by the

20 securities and legal department?

21      MR. BARR:  Same objection.

22      (Translation.)

23      MR. BARR:  Objection to the form,

24      mischaracterizes the document.

25 A   Security and legal department assigned work

Page 404

1  to me?  That can't be so.

2       MR. BARR:  You got that backwards.  They

3      report to him.

4       MR. LEVIN:  Do I have an answer?

5       MR. BARR:  I think he doesn't understand

6      your question.

7       THE WITNESS:  I don't understand your

8      question.

9       MR. LEVIN:  Let me start over again

10      because Mr. Barr is in a hurry.

11 BY MR. LEVIN:

12 Q   Is it a fact, sir, that the securities and

13 legal affairs department asked you to continue to

14 track the lawsuit?

15      MR. BARR:  Objection to the form,

16      mischaracterizes the document.

17 A   No.

18 BY MR. LEVIN:

19 Q   Did you track the lawsuit in this

20 litigation?

21 A   Under the notification of the attorneys and

22 the security and legal department, I tracked the

23 development of the lawsuit.

24 Q   Okay.  And what did the tracking of the

25 lawsuit entail?

Page 405

1       MR. BARR:  For him?

2       MR. LEVIN:  For him.

3  A   The development of the lawsuit.

4  BY MR. LEVIN:

5  Q   How did you do it?

6  A   They'd report to me.

7  Q   Who is "they"?

8  A   The attorneys and the security and legal

9  department.

10 Q   And what were they reporting to you?  Were

11 they reporting the status of the lawsuit?

12      MR. BARR:  You may answer that question

13      yes or no, and not disclose communications you

14      had with counsel.

15 A   Yes.

16 BY MR. LEVIN:

17 Q   And what did you do after you were -- the

18 status of the lawsuit was reported to you by the

19 securities and legal department?  Did you disseminate

20 that information to others at BNBM?

21 A   I rely on the attorneys for the complete

22 handling of the lawsuit.

23      MR. LEVIN:  Is that it, Sunny?

24      THE INTERPRETER:  Yes.

25 BY MR. LEVIN:

Page 406

1  Q   Well, when the attorneys that you relied on

2  for the complete handling of the lawsuit made reports

3  to you, did you report to others what they told you?

4       THE WITNESS:  Please repeat the

5      interpretation.

6       (Translation.)

7  A   I did not report it to anybody else.

8  BY MR. LEVIN:

9  Q   Well, when I look at the document that

10 Ms. Lu sent you, you seem to be one of just two people

11 that were copied with that document, aren't you?

12 A   Yes.

13 Q   And when you obtained this knowledge from

14 the securities and legal department, did you take this

15 knowledge with you into the directors meeting at

16 Taishan when you appeared there as a director?

17      MR. BARR:  Objection to the form.

18 A   I don't even know the accurate information

19 stated in this e-mail.  Therefore, I was not able to

20 bring this information to Taishan's board of directors

21 meeting.

22      MR. LEVIN:  Could you repeat the last

23      question --

24      MR. BARR:  You asked him to focus just

25      on what he got from this document, and that's

Page 407

1    what he was answering.
2  BY MR. LEVIN:
3    Q    Did you -- as a director of BNBM who
4  attended meetings of the directors of Taishan, and as
5  a director of Taishan, did you discuss this lawsuit at
6  those meetings at Taishan?
7         MR. BARR:  And I'm going to direct --
8         (Translation.)
9         MR. BARR:  I object to the form of the
10  question.
11         But you may answer that question yes or
12  no.
13    A    In the board of directors meeting of BNBM,
14  the information disclosed in the annual report was
15  disclosed.  None other information was discussed,
16  other than that.
17  BY MR. LEVIN:
18    Q    Well, when you went to Taishan as a BNBM
19  director and as a director of Taishan appointed by
20  BNBM, did you discuss this lawsuit?
21         MR. BARR:  And, again --
22         (Translation.)
23         MR. BARR:  And, again, Mr. Chen, you may
24  answer that question yes or no, so that we can
25  make a determination of whether attorney-client

Page 408

1  privilege material is involved.
2         MS. EIKHOFF:  I object to form.
3         THE WITNESS:  It's confusing.  Can you
4  reinterpret?
5         (Translation.)
6    A    There had never been a discussion discussed
7  regarding BNBM's lawsuit on Taishan's board of
8  directors -- in Taishan's board of directors meetings.
9  BY MR. LEVIN:
10    Q    So do I understand that the Taishan board of
11  directors never discussed, as the board of directors
12  at a meeting of the board of directors, the lawsuit by
13  the American citizens against Taishan, BNBM, CNBM
14  entities for defective drywall which caused them to
15  lose their homes?  Is that your testimony, sir?
16         MR. BARR:  Prior to the witness
17  answering the question and it being translated,
18  I would direct you, Mr. Levin, to the answer he
19  just gave, which referenced the lawsuit against
20  BNBM.  And that was the answer that he gave.
21  I'm just --
22         MR. LEVIN:  I'm getting to that, because
23  I heard that.
24         MR. BARR:  Well, then, your question,
25  which is argumentative, to say the least, and in

Page 409

1  a form to which I object, the witness can
2  answer, if he can.
3         MR. LEVIN:  That's --
4         MR. BARR:  But it --
5         MR. LEVIN:  That's a speaking objection.
6         MR. BARR:  Well, it may be in this
7  context --
8         MR. LEVIN:  "If you can" is something
9  that we all know is done to caution the witness.
10         MR. BARR:  I'm not cautioning the
11  witness here at all.  I am raising the fact that
12  your question is highly misleading, given the
13  witness' prior answer.  And if you understood
14  the witness' prior answer, it is troubling to me
15  that you would ask him such an argumentative
16  question, rather than following up with a
17  straightforward one here.
18         MR. LEVIN:  I'm sorry to trouble you.
19         MR. BARR:  Well, you are troubling me on
20  that score.
21         MR. LEVIN:  Sorry.
22         MR. BARR:  So my caution stands to the
23  witness.
24         MR. LEVIN:  Could you answer my
25  question, sir?

Page 410

1         (Translation.)
2         MR. BARR:  I object to the form --
3         (Translation.)
4         THE INTERPRETER:  Go ahead.
5         MR. BARR:  I object to the form of the
6  question.  I object to the argumentative nature
7  of the question, and the question
8  mischaracterizes the witness' testimony.
9         MR. LEVIN:  Can you answer the question,
10  sir?  And then we'll take a break.
11    A    Ever since I became the director of Taishan
12  Gypsum in November 2014, I don't recall Taishan
13  Gypsum's lawsuit was ever discussed in Taishan
14  Gypsum's board of directors meeting.
15         MR. LEVIN:  Okay.  We can take a break
16  now.
17         THE VIDEOGRAPHER:  This is the end of
18  Disc 4.  We're now off the record at 11:52.
19         (Recess taken, 11:52 a.m. to 12:17 p.m.)
20         (The following proceedings were
21         conducted off the videotaped record in
22         the presence of Ms. Duggan,
23         Ms. Sternlieb and Mr. Nickel.)
24         MS. DUGGAN:  Plaintiffs' Steering
25  Committee previously introduced at the

1  deposition of CNBM Group Exhibit 42-1, which is
2  a revised summary chart of violations of
3  contempt order, Volume 1 of 3.  Plaintiffs have
4  further revised that summary chart, based on
5  additional productions of evidence.
6      (T:7/8/15-7/11/15 Exhibit 42-2 marked.)
7      MS. DUGGAN:  We are now offering into
8  the record Exhibit 42-2, which is a further
9  revised summary chart of violations of contempt
10 order.  This is Volume 1 of 3.  It contains
11 Exhibits 1 to 50, and we've provided a copy to
12 all defendants in the case.  This exhibit has
13 three volumes.  Exhibit 43-3 is Volume 2, and
14 Exhibit 44 -- I'm sorry.  Exhibit 43-2 is
15 Volume 2, and Exhibit 44-2 is Volume 3.
16     So the record the clear, the chart is
17 contained only within Volume 1, which is 42-2,
18 so there will not be a physical binder that
19 contains 2 and 3 that is any different from what
20 we've previously produced.  But what we are
21 offering to all parties are the additional
22 exhibits now that are referenced in the summary
23 chart contained in Volume 1, and we've handed
24 those out to all defendants.
25     MR. NICKEL:  So just to clarify,

1  Exhibit 1 to 50 are not in the production that
2  we're getting right now.  Those have been
3  previously offered at previous depositions.
4      MS. DUGGAN:  Exactly.  And we asked all
5  defendants to maintain those binders, to bring
6  them back to the depositions.  And what we're
7  providing now are the additional new exhibits
8  that are referenced in Exhibit 42-2.
9      MR. NICKEL:  Which are tabbed 150
10 through 169?
11     MS. DUGGAN:  Correct.
12     MR. NICKEL:  Okay.
13     MS. DUGGAN:  And those will go into
14 Volume 3.  That's where they belong.  That's
15 where they physically belong.
16     MR. NICKEL:  Okay.  That makes sense.
17     MS. DUGGAN:  In addition to revising the
18 summary chart and adding additional exhibits to
19 the chart, we are marking separately for
20 identification a number of exhibits, which I'm
21 going to now read into the record.  And these
22 exhibits have been provided to all parties for
23 defendants.
24     (T:7/8/15-7/11/15 Exhibit 42-2(A)
25 marked.)

1      MS. DUGGAN:  Exhibit 42-2(A) is the
2  deposition of Jin Wooh for WH International Inc.
3  dated May 21, 2015.
4      (T:7/8/15-7/11/15 Exhibit 42-2(B)
5  marked.)
6      MS. DUGGAN:  Exhibit 42-2(B) is an
7  e-mail dated August 13, 2014, from Zhang George
8  to Jin Wooh and Simon Wooh, regarding contract
9  between BNBM and WH International for the
10 purchase of logs in the United States.  Bates
11 number is WHI000015.
12     (T:7/8/15-7/11/15 Exhibit 42-2(C)
13 marked.)
14     MS. DUGGAN:  Exhibit 42-2(C) is a
15 contract dated August 13, 2014, between BNBM and
16 WH International for the purchase of $98,000
17 worth of logs in the United States.  The Bates
18 number is BNBM(Group)2846.
19     MR. NICKEL:  Can I make one statement
20 just before we go on?  The exhibits that are
21 marked 42-2 and then have a letter after them on
22 the right corner of the document --
23     MS. DUGGAN:  And that's correct, and the
24 cover page references an exhibit number.  That
25 is the exhibit to the summary chart of

1  violations of the contempt order that is
2  contained in 42-2.
3      MR. NICKEL:  I just want to make sure
4  that was clear, that there are two different
5  exhibit markings, but the one for the purposes
6  of the deposition are added in the lower corner.
7      MS. DUGGAN:  Yes.  Correct.
8      MR. NICKEL:  Okay.
9      MS. DUGGAN:  And the cover page with the
10 large exhibit number references the summary
11 chart.
12     (T:7/8/15-7/11/15 Exhibit 42-2(D)
13 marked.)
14     MS. DUGGAN:  Exhibit 42-2(D) are e-mails
15 dated August 14, 2014, among Jin Wooh, Simon
16 Wooh and Zhang George regarding BNBM contracts
17 for purchase of logs in the United States, Bates
18 number WHI000039.
19     (T:7/8/15-7/11/15 Exhibit 42-2(E)
20 marked.)
21     MS. DUGGAN:  Exhibit 42-2(E) is a
22 contract dated August 15, 2014, between BNBM and
23 WH International for the purchase of $485,000
24 worth of logs in the United States, Bates
25 BNBM(Group)2849.

Page 415

1    (T:7/8/15-7/11/15 Exhibit 42-2(F)
2    marked.)
3    MS. DUGGAN:  Exhibit 42-2(F) are e-mails
4    regarding BNBM contracts for the purchase of
5    logs in the United States, Bates WHI000026 to
6    28.
7    (T:7/8/15-7/11/15 Exhibit 42-2(G)
8    marked.)
9    MS. DUGGAN:  Exhibit 42-2(G) is a
10   contract dated September 1, 2014, between BNBM
11   and WH International for the purchase of
12   $100,800 worth of logs in the United States,
13   Bates BNBM(Group)2851.
14   (T:7/8/15-7/11/15 Exhibit 42-2(H)
15   marked.)
16   MS. DUGGAN:  Exhibit 42-2(H) is a letter
17   of credit dated September 2, 2015, Bates
18   WHI000090, dash, 91.
19   (T:7/8/15-7/11/15 Exhibit 42-2(I)
20   marked.)
21   MS. DUGGAN:  Exhibit 42-2(I) is a letter
22   of credit dated September 2, 2015, Bates
23   WHI000092 to 94.
24   (T:7/8/15-7/11/15 Exhibit 42-2(J)
25   marked.)

Page 416

1    MS. DUGGAN:  Exhibit 42-2(J) is a letter
2    of credit dated September 12, 2015, Bates range
3    WHI000095 to 96.
4    (T:7/8/15-7/11/15 Exhibit 42-2(K)
5    marked.)
6    MS. DUGGAN:  Exhibit 42-2(K) is a
7    commercial invoice dated September 16, 2014, for
8    $115,517.30 for logs purchased by BNBM in the
9    United States for shipment to China, and related
10   shipping records, Bates WHI000041 to 48.
11   (T:7/8/15-7/11/15 Exhibit 42-2(L)
12   marked.)
13   MS. DUGGAN:  Exhibit 42-2(L) is a
14   commercial invoice dated October 6, 2014, for
15   $145,703.70 for logs purchased by BNBM in the
16   United States for shipment to China, and related
17   shipping records, Bates WHI000049 to 57.
18   (T:7/8/15-7/11/15 Exhibit 42-2(M)
19   marked.)
20   MS. DUGGAN:  Exhibit 42-2(M), commercial
21   invoice dated October 6, 2014, for $91,051.81
22   for logs purchased by BNBM in the United States
23   for shipment to China, and related shipping
24   records, Bates WHI000017 to 24.
25   (T:7/8/15-7/11/15 Exhibit 42-2(N)

Page 417

1    marked.)
2    MS. DUGGAN:  Exhibit 42-2(N), commercial
3    invoice dated October 6, 2014, for $97,298.60
4    for logs purchased by BNBM in the United States
5    for shipment to China, and related shipping
6    records, Bates WHI000030 to 37.
7    (T:7/8/15-7/11/15 Exhibit 42-2(O)
8    marked.)
9    MS. DUGGAN:  Exhibit 42-2(O), contract
10   dated October 13, 2014, between BNBM and WH
11   International for purchase of $261,800 worth of
12   logs in the United States.  BNBM(Group)2852 is
13   the Bates number.
14   (T:7/8/15-7/11/15 Exhibit 42-2(P)
15   marked.)
16   MS. DUGGAN:  Exhibit 42-2(P), a letter
17   of credit dated October 22, 2014, Bates
18   WHI000097 to 99.
19   (T:7/8/15-7/11/15 Exhibit 42-2(Q)
20   marked.)
21   MS. DUGGAN:  Exhibit 42-2(Q) is a
22   commercial invoice dated October 22, 2014, for
23   $236,893.40 for logs purchased by BNBM in the
24   United States for shipment to China, and related
25   shipping records, Bates WHI000058 to 68.

Page 418

1    (T:7/8/15-7/11/15 Exhibit 42-2(R)
2    marked.)
3    MS. DUGGAN:  Exhibit 42-2(R), commercial
4    invoice dated November 17, 2014, for $127,870.60
5    for logs purchased by BNBM in the United States
6    for shipment to China, and related shipping
7    records, Bates WHI000071 to 78.
8    (T:7/8/15-7/11/15 Exhibit 42-2(S)
9    marked.)
10   MS. DUGGAN:  Exhibit 42-2(S), commercial
11   invoice dated November 17, 2014, for $132,704.55
12   for logs purchased by BNBM in the U.S. for
13   shipment to China, and related shipping records,
14   Bates WHI000079 to 86.
15   (T:7/8/15-7/11/15 Exhibit 42-2(T)
16   marked.)
17   MS. DUGGAN:  Exhibit 42-2(T), e-mails
18   dated January 1 to 28, 2015, Bates WHI000001 to
19   3.
20   (T:7/8/15-7/11/15 Exhibit 42-2(U)
21   marked.)
22   MS. DUGGAN:  Exhibit 42-2(U), contract
23   dated January 28, 2015, between BNBM and WH
24   International for the purchase of $129,500 worth
25   of logs in the United States, Bates

1 BNBM(Group)2861.

2     (T:7/8/15-7/11/15 Exhibit 42-2(V)

3 marked.)

4     MS. DUGGAN:  Exhibit 42-2(V), letter of

5 credit dated February 5, 2015, WHI000087 to 89.

6     (T:7/8/15-7/11/15 Exhibit 42-2(W)

7 marked.)

8     MS. DUGGAN:  Exhibit 42-2(W), commercial

9 invoice dated March 3rd, 2015, for $125,293 for

10 logs purchased by BNBM in the U.S. for shipment

11 to China, and related shipping records,

12 WHI000005 to 12.

13     (T:7/8/15-7/11/15 Exhibit 42-2(X)

14 marked.)

15     MS. DUGGAN:  Exhibit 42-2(X), deposition

16 of Samuel I. Hull from Hull Forest Products

17 dated May 13, 2015.

18     (T:7/8/15-7/11/15 Exhibit 42-2(Y)

19 marked.)

20     MS. DUGGAN:  Exhibit 42-2(Y),

21 irrevocable letter of credit dated May 9, 2014,

22 Bates Hull0019.

23     (T:7/8/15-7/11/15 Exhibit 42-2(Z)

24 marked.)

25     MS. DUGGAN:  Exhibit 42-2(Z), contract

1 dated May 15, 2015, between Hull and BNBM for

2 purchase of $23,200 worth of logs in the U.S.,

3 Bates BNBM(Group)2827 to 2828.

4     (T:7/8/15-7/11/15 Exhibit 42-2(AA)

5 marked.)

6     MS. DUGGAN:  Exhibit 42-2(AA), contract

7 dated May 15, 2015, between Hull and BNBM for

8 purchase of $11,600 worth of logs in the U.S.,

9 and commercial invoice dated May 29, 2014, in

10 the amount of $12,319.20 for shipment of logs to

11 China, Bates BNBM(Group)2829 to 2831.

12     (T:7/8/15-7/11/15 Exhibit 42-2(BB)

13 marked.)

14     MS. DUGGAN:  Exhibit 42-2(BB), contract

15 dated June 13, 2014, between Hull and BNBM for

16 purchase of $414,500 worth of logs in the U.S.,

17 Bates BNBM(Group)0002834 to 36.

18     (T:7/8/15-7/11/15 Exhibit 42-2(CC)

19 marked.)

20     MS. DUGGAN:  Exhibit 42-2(CC) is an

21 irrevocable letter of credit dated July 18,

22 2014, Bates Hull0001 to 3.

23     (T:7/8/15-7/11/15 Exhibit 42-2(DD)

24 marked.)

25     MS. DUGGAN:  Exhibit 42-2(DD),

1 commercial invoice dated July 20, 2014, for

2 $43,724.90 for purchase of logs by BNBM in the

3 U.S. for shipment to China, Hull0018.

4     (T:7/8/15-7/11/15 Exhibit 42-2(EE)

5 marked.)

6     MS. DUGGAN:  Exhibit 42-2(EE),

7 commercial invoice dated July 23, 2014, for

8 $31,535.10 purchase of logs by BNBM in the U.S.

9 for shipment to China, Hull0017.

10     (T:7/8/15-7/11/15 Exhibit 42-2(FF)

11 marked.)

12     MS. DUGGAN:  Exhibit 42-2(FF),

13 commercial invoice dated July 23, 2014, for

14 $9,639.60 for purchase of logs by BNBM in the

15 U.S. for shipment to China, Hull0030.

16     (T:7/8/15-7/11/15 Exhibit 42-2(GG)

17 marked.)

18     MS. DUGGAN:  Exhibit 42-2(GG),

19 commercial invoice dated July 24, 2014, for

20 $73,332.50 for purchase of logs by BNBM in the

21 U.S. for shipment to China, Hull0026.

22     (T:7/8/15-7/11/15 Exhibit 42-2(HH)

23 marked.)

24     MS. DUGGAN:  Exhibit 42-2(HH),

25 commercial invoice dated July 24, 2014, for

1 $130,791.10 for purchase of logs by BNBM in the

2 U.S. for shipment to China, Hull0016.

3     (T:7/8/15-7/11/15 Exhibit 42-2(II)

4 marked.)

5     MS. DUGGAN:  Exhibit 42-2(II),

6 commercial invoice dated July 25, 2014, for

7 $61,149.90 for purchase of logs by BNBM in the

8 U.S. for shipment to China, Hull0015.

9     (T:7/8/15-7/11/15 Exhibit 42-2(JJ)

10 marked.)

11     MS. DUGGAN:  Exhibit 42-2(JJ),

12 commercial invoice dated July 30, 2014, for

13 $4,910 for purchase of logs by BNBM in the U.S.

14 for shipment to China, Hull0025.

15     (T:7/8/15-7/11/15 Exhibit 42-2(KK)

16 marked.)

17     MS. DUGGAN:  Exhibit 42-2(KK),

18 commercial invoice dated August 5, 2014, for

19 $12,702 for purchase of logs by BNBM in the U.S.

20 for shipment to China, Hull0029.

21     (T:7/8/15-7/11/15 Exhibit 42-2(LL)

22 marked.)

23     MS. DUGGAN:  Exhibit 42-2(LL),

24 commercial invoice dated August 7, 2014, for

25 $42,725.70 for purchase of logs by BNBM in the

Page 423

1  U.S. for shipment to China, Hull0014.
2      (T:7/8/15-7/11/15 Exhibit 42-2(MM)
3      marked.)
4      MS. DUGGAN:  Exhibit 42-2(MM),
5  commercial invoice dated August 12, 2014, for
6  $16,511.25 for purchase of logs by BNBM in the
7  U.S. for shipment to China, Hull0024.
8      (T:7/8/15-7/11/15 Exhibit 42-2(NN)
9      marked.)
10     MS. DUGGAN:  Exhibit 42-2(NN),
11 commercial invoice dated August 15, 2014, for
12 $106,816.25 for purchase of logs by BNBM in the
13 U.S. for shipment to China, Hull0023.
14     (T:7/8/15-7/11/15 Exhibit 42-2(OO)
15     marked.)
16     MS. DUGGAN:  Exhibit 42-2(OO),
17 commercial invoice dated August 15, 2014, for
18 $10,570 for purchase of logs by BNBM in the U.S.
19 for shipment to China, Hull0013.
20     (T:7/8/15-7/11/15 Exhibit 42-2(PP)
21     marked.)
22     MS. DUGGAN:  Exhibit 42-2(PP),
23 commercial invoice dated August 15, 2014, for
24 $55,809.35 for purchase of logs by BNBM in the
25 U.S. for shipment to China, Hull0012.

Page 424

1      (T:7/8/15-7/11/15 Exhibit 42-2(QQ)
2      marked.)
3      MS. DUGGAN:  Exhibit 42-2(QQ),
4  commercial invoice dated August 20, 2014, for
5  $5,569.60 for purchase of logs by BNBM in the
6  U.S. for shipment to China, Hull0011.
7      (T:7/8/15-7/11/15 Exhibit 42-2(RR)
8      marked.)
9      MS. DUGGAN:  Exhibit 42-2(RR),
10 commercial invoice dated August 20, 2014, for
11 $80,137.50 for purchase of logs by BNBM in the
12 U.S. for shipment to China, Hull0022.
13     (T:7/8/15-7/11/15 Exhibit 42-2(SS)
14     marked.)
15     MS. DUGGAN:  Exhibit 42-2(SS),
16 commercial invoice dated August 20, 2014, for
17 $10,518.30 for purchase of logs by BNBM in the
18 U.S. for shipment to China, Hull0028.
19     (T:7/8/15-7/11/15 Exhibit 42-2(TT)
20     marked.)
21     MS. DUGGAN:  Exhibit 42-2(TT),
22 commercial invoice dated August 22, 2014, for
23 $17,086.60 for purchase of logs by BNBM in the
24 U.S. for shipment to China, Hull0010.
25     (T:7/8/15-7/11/15 Exhibit 42-2(UU)

Page 425

1      marked.)
2      MS. DUGGAN:  Exhibit 42-2(UU),
3  commercial invoice dated August 26, 2014, for
4  $5,540 for purchase of logs by BNBM in the U.S.
5  for shipment to China, Hull0021.
6      (T:7/8/15-7/11/15 Exhibit 42-2(VV)
7      marked.)
8      MS. DUGGAN:  Exhibit 42-2(VV),
9  commercial invoice dated August 27, 2014, for
10 $13,052.80 for purchase of logs by BNBM in the
11 U.S. for shipment to China, Hull0009.
12     (T:7/8/15-7/11/15 Exhibit 42-2(WW)
13     marked.)
14     MS. DUGGAN:  Exhibit 42-2(WW),
15 commercial invoice dated August 27, 2014, for
16 $19,507.20 for purchase of logs by BNBM in the
17 U.S. for shipment to China, Hull0008.
18     (T:7/8/15-7/11/15 Exhibit 42-2(XX)
19     marked.)
20     MS. DUGGAN:  Exhibit 42-2(XX),
21 commercial invoice dated August 28, 2014, for
22 $35,778 for purchase of logs by BNBM in the U.S.
23 for shipment to China, Hull0007.
24     (T:7/8/15-7/11/15 Exhibit 42-2(YY)
25     marked.)

Page 426

1      MS. DUGGAN:  Exhibit 42-2(YY),
2  commercial invoice dated August 28, 2014, for
3  $7,713.60 for purchase of logs by BNBM in the
4  U.S. for shipment to China, Hull0006.
5      (T:7/8/15-7/11/15 Exhibit 42-2(ZZ)
6      marked.)
7      MS. DUGGAN:  Exhibit 42-2(ZZ),
8  commercial invoice dated September 2, 2014, for
9  $23,549.10 for purchase of logs by BNBM in the
10 U.S. for shipment to China, Hull0005.
11     (T:7/8/15-7/11/15 Exhibit 42-2(AAA)
12     marked.)
13     MS. DUGGAN:  Exhibit 42-2(AAA),
14 commercial invoice dated September 3, 2014, for
15 $8,218.60 for purchase of logs by BNBM in the
16 U.S. for shipment to China, Hull0027.
17     (T:7/8/15-7/11/15 Exhibit 42-2(BBB)
18     marked.)
19     MS. DUGGAN:  Exhibit 42-2(BBB),
20 commercial invoice dated September 3, 2014, for
21 $5,500.80 for purchase of logs by BNBM in the
22 U.S. for shipment to China, Hull0004.
23     (T:7/8/15-7/11/15 Exhibit 43-2(A)
24     marked.)
25     MS. DUGGAN:  Exhibit 43-2(A), contract

Page 427

1  dated June 15, 2015, between Hull and BNBM for
2  purchase of $23,200 worth of logs, Bates
3  BNBM(Group)2837 to 38.
4      (T:7/8/15-7/11/15 Exhibit 43-2(B)
5  marked.)
6      MS. DUGGAN:  Exhibit 43-2(B), contract
7  dated August 15, 2014, between Hull and BNBM,
8  Bates BNBM(Group)2847 to 48.
9      (T:7/8/15-7/11/15 Exhibit 43-2(C)
10  marked.)
11      MS. DUGGAN: Exhibit 43-2(C), deposition
12  of Philip Fenwick for Baillie Lumber dated
13  May 28, 2015.
14      (T:7/8/15-7/11/15 Exhibit 43-2(D)
15  marked.)
16      MS. DUGGAN:  Exhibit 43-2(D), Baillie
17  acknowledgement dated July 7, 2014.  That's at
18  Baillie00039 to 40.
19      MR. NICKEL:  Can we pause there real
20  quick? Does Exhibit 43-2 still relate to the
21  summary chart?
22      MS. DUGGAN:  Yes, and that would go in
23  Volume 2 to the binder of contempt violations.
24      MR. NICKEL:  Okay.
25      (T:7/8/15-7/11/15 Exhibit 43-2(E)

Page 428

1  marked.)
2      MS. DUGGAN:  Exhibit 43-2(E), Baillie
3  acknowledgement dated July 15, 2014, Bates
4  Baillie41 to 42.
5      (T:7/8/15-7/11/15 Exhibit 43-2(F)
6  marked.)
7      MS. DUGGAN:  Exhibit 43-2(F), Baillie
8  acknowledgement dated July 15, 2014, at Baillie
9  44 to 46.
10      (T:7/8/15-7/11/15 Exhibit 43-2(G)
11  marked.)
12      MS. DUGGAN:  Exhibit 43-2(G), Baillie
13  acknowledgement dated August 25, 2014, Bates
14  Baillie47 to 48, and BNBM(Group)2850.
15      (T:7/8/15-7/11/15 Exhibit 43-2(H)
16  marked.)
17      MS. DUGGAN:  Exhibit 43-2(H), Baillie
18  acknowledgement dated December 5, 2014, Bates
19  Baillie49 to 52.
20      (T:7/8/15-7/11/15 Exhibit 43-2(I)
21  marked.)
22      MS. DUGGAN:  Exhibit 43-2(I), Baillie
23  acknowledgement dated December 5, 2014.
24  Baillie53 to 55 is the Bates number.
25      (T:7/8/15-7/11/15 Exhibit 43-2(J)

Page 429

1  marked.)
2      MS. DUGGAN:  Exhibit 43-2(J), Baillie
3  acknowledgement dated December 31, 2014,
4  Baillie26 to 27.
5      (T:7/8/15-7/11/15 Exhibit 43-2(K)
6  marked.)
7      MS. DUGGAN:  Exhibit 43-2(K), Baillie
8  invoice and acknowledgement dated December 31,
9  2014, Bates Baillie28 to 29 and BNBM(Group)2854.
10      (T:7/8/15-7/11/15 Exhibit 43-2(L)
11  marked.)
12      MS. DUGGAN:  Exhibit 43-2(L), Baillie
13  invoice and acknowledgement dated December 31,
14  2014.  The Bates is Baillie30 to 31.
15      MR. NICKEL:  I actually have in that
16  document another attachment as a separate Bates
17  number.
18      MS. DUGGAN:  Yes, I was going to note
19  that this should be Exhibits 62 and 62A of the
20  contempt binder Volume 2.
21      MR. NICKEL:  62A has a different Bates
22  number that you're going to read.
23      MS. DUGGAN:  If you could tell me what
24  it is, I'd appreciate it.
25      MR. NICKEL:  Okay.  BNBM(Group)0002856.

Page 430

1      (T:7/8/15-7/11/15 Exhibit 43-2(M)
2  marked.)
3      MS. DUGGAN: Exhibit 43-2(M), Baillie
4  acknowledgement dated July 14, 2015, Bates
5  Baillie32 to 33 and BNBM(Group)2858.
6      (T:7/8/15-7/11/15 Exhibit 43-2(N)
7  marked.)
8      MS. DUGGAN:  Exhibit 43-2(N), Baillie
9  acknowledgement dated January 14, 2015.  That's
10  at Baillie32 to 33 and BNBM(Group)2859.
11      (T:7/8/15-7/11/15 Exhibit 43-2(O)
12  marked.)
13      MS. DUGGAN:  Exhibit 43-2(O), Baillie
14  acknowledgement dated --
15      MR. NICKEL:  Can we stop for a second?
16  My 43-2(N) is Baillie34 and 35 and
17  BNBM(Group)2859.
18      MS. DUGGAN:  Okay.  We'll correct the
19  record for that.
20      Exhibit 43-2(O), Baillie acknowledgement
21  dated January 14, 2015, Baillie36 to 37 and
22  BNBM(Group)2860.
23      MR. NICKEL:  And on that one, my exhibit
24  is marked 43-3(O), rather than 43-2(O)?
25      MS. DUGGAN:  It should be 43-2(O).

Page 431

1    MR. NICKEL:  I'll just make the
2  correction with a pen on the exhibit.
3          (T:7/8/15-7/11/15 Exhibit 43-2(P)
4      marked.)
5          MS. DUGGAN:  Exhibit 43-2(P) is a
6  Baillie acknowledgement dated March 11, 2015,
7  Baillie4 to 6.  And that should be Exhibits 66
8  and 60A to the contempt binder.
9          MR. NICKEL:  66A?
10         MS. DUGGAN:  Yes, 66A.
11         (T:7/8/15-7/11/15 Exhibit 43-2(Q)
12     marked.)
13         MS. DUGGAN:  Exhibit 43-2(Q) is a
14  Baillie acknowledgement dated March 11, 2015,
15  Baillie7 to 8.
16         (T:7/8/15-7/11/15 Exhibit 43-2(R)
17     marked.)
18         MS. DUGGAN:  Exhibit 43-2(R), Baillie
19  acknowledgement dated March 18, 2015, Baillie9
20  to 12.
21         (T:7/8/15-7/11/15 Exhibit 43-2(S)
22     marked.)
23         MS. DUGGAN:  Exhibit 43-2(S), Baillie
24  acknowledgement dated March 18, 2015, Baillie16
25  to 17.

Page 432

1          (T:7/8/15-7/11/15 Exhibit 43-2(T)
2      marked.)
3          MS. DUGGAN:  Exhibit 43-2(T), Baillie
4  acknowledgement dated March 23, 2015, Baillie18
5  to 19.
6          (T:7/8/15-7/11/15 Exhibit 43-2(U)
7      marked.)
8          MS. DUGGAN:  Exhibit 43-2(U), offer
9  sheet from Western Wood to BNBM, WW000431.
10         (T:7/8/15-7/11/15 Exhibit 43-2(V)
11     marked.)
12         MS. DUGGAN:  Exhibit 43-2(V), offer
13  sheet from Western Wood to BNBM.
14  BNBM(Group)2862 is the Bates number.
15         (T:7/8/15-7/11/15 Exhibit 43-2(W)
16     marked.)
17         MS. DUGGAN:  Exhibit 43-2(W), offer
18  sheet from Western Wood to BNBM.  Bates is
19  BNBM(Group)2863.
20         (T:7/8/15-7/11/15 Exhibit 43-2(X)
21     marked.)
22         MS. DUGGAN:  Exhibit 43-2(X), letter of
23  credit, Bates number WW387 to 390.
24         (T:7/8/15-7/11/15 Exhibit 43-2(Y)
25     marked.)

Page 433

1          MS. DUGGAN:  Exhibit 43-2(Y), letter of
2  credit, WW432 to 435.
3          (T:7/8/15-7/11/15 Exhibit 43-2(Z)
4      marked.)
5          MS. DUGGAN:  Exhibit 43-2(Z), offer
6  sheet dated July 7, 2014, from Western Wood to
7  BNBM, WW457.
8          (T:7/8/15-7/11/15 Exhibit 43-2(AA)
9      marked.)
10         MS. DUGGAN:  Exhibit 43-2(AA), invoice
11  dated July 7, 2014, to BNBM from Western Wood,
12  WW436 to 444.
13         (T:7/8/15-7/11/15 Exhibit 43-2(BB)
14     marked.)
15         MS. DUGGAN:  Exhibit 43-2(BB), invoice
16  dated July 23, 2014, to BNBM, WW445 to 456.
17         (T:7/8/15-7/11/15 Exhibit 43-2(CC)
18     marked.)
19         MS. DUGGAN:  Exhibit 43-2(CC), invoice
20  dated July 23, 2014, to BNBM, WW391 to 401.
21         (T:7/8/15-7/11/15 Exhibit 43-2(DD)
22     marked.)
23         MS. DUGGAN:  Exhibit 43-2(DD), letter of
24  credit, WW465 to 468.
25         (T:7/8/15-7/11/15 Exhibit 43-2(EE)

Page 434

1      marked.)
2          MS. DUGGAN:  Exhibit 43-2(EE), invoice
3  dated July 31, 2014, to BNBM, WW402 to 411.
4          (T:7/8/15-7/11/15 Exhibit 43-2(FF)
5      marked.)
6          MS. DUGGAN:  Exhibit 43-2(FF), offer
7  sheet from Western Wood to BNBM,
8  BNBM(Group)2864.
9          (T:7/8/15-7/11/15 Exhibit 43-2(GG)
10     marked.)
11         MS. DUGGAN:  Exhibit 43-2(GG), invoice
12  dated August 1, 2014, to BNBM, WW422 to 430.
13         (T:7/8/15-7/11/15 Exhibit 43-2(HH)
14     marked.)
15         MS. DUGGAN:  Exhibit 43-2(HH), invoice
16  dated August 2, 2014, to BNBM, WW412 to 421.
17         (T:7/8/15-7/11/15 Exhibit 43-2(II)
18     marked.)
19         MS. DUGGAN:  Exhibit 43-2(II), invoice
20  dated August 29, 2014, to BNBM, WW458 to 464.
21         (T:7/8/15-7/11/15 Exhibit 43-2(JJ)
22     marked.)
23         MS. DUGGAN:  Exhibit 43-2(JJ), invoice
24  dated September 4, 2014, to BNBM, WW476 to 486.
25         (T:7/8/15-7/11/15 Exhibit 43-2(KK)

Page 435

1    marked.)
2        MS. DUGGAN:  Exhibit 43-2(KK), invoice
3    dated September 8, 2014, to BNBM, WW487 to 495.
4        (T:7/8/15-7/11/15 Exhibit 43-2(LL)
5    marked.)
6        MS. DUGGAN:  Exhibit 43-2(LL), invoice
7    dated September 15, 2014, to BNBM, WW496 to 505.
8        (T:7/8/15-7/11/15 Exhibit 43-2(MM)
9    marked.)
10        MS. DUGGAN:  Exhibit 43-2(MM), invoice
11    dated September 19, 2014, to BNBM, WW469 to 475.
12        (T:7/8/15-7/11/15 Exhibit 43-2(NN)
13    marked.)
14        MS. DUGGAN:  Exhibit 43-2(NN), invoice
15    dated September 19, 2014, to BNBM, WW506 to 511.
16        (T:7/8/15-7/11/15 Exhibit 43-2(OO)
17    marked.)
18        MS. DUGGAN:  Exhibit 43-2(OO), offer
19    sheet dated January 16, 2015, from Western Wood
20    to BNBM, BNBM(Group)2857.
21        (T:7/8/15-7/11/15 Exhibit 43-2(PP)
22    marked.)
23        MS. DUGGAN:  Exhibit 43-2(PP), offer
24    sheet dated January 6, 2015, from Western Wood
25    to BNBM, WW352.

Page 436

1        (T:7/8/15-7/11/15 Exhibit 43-2(QQ)
2    marked.)
3        MS. DUGGAN:  Exhibit 43-2(QQ), invoice
4    dated January 29, 2015, to BNBM, WW362 to 373.
5        (T:7/8/15-7/11/15 Exhibit 43-2(RR)
6    marked.)
7        MS. DUGGAN:  Exhibit 43-2(RR), invoice
8    dated September 19, 2014, to BNBM, WW374 to 385.
9        (T:7/8/15-7/11/15 Exhibit 43-2(SS)
10    marked.)
11        MS. DUGGAN:  Exhibit 43-2(SS), Western
12    Wood profitability summary showing purchases of
13    lumber by BNBM totaling $1,880,224.24 during the
14    contempt period.
15        Exhibit 44-2(A) --
16        MR. NICKEL:  Excuse me one second.
17    43-2(SS) has another page here.
18        MS. DUGGAN:  Oh, that should be
19    Exhibits 80 and 81 to the contempt binder.
20        MR. NICKEL:  Also, in this pack, it has
21    Exhibit 60 and 61, the slip sheets, just so
22    we're clear when we look at this later.
23        MS. DUGGAN:  Okay.  This is now starting
24    exhibits that are from Volume 3 of the contempt
25    binder exhibits.

Page 437

1        (T:7/8/15-7/11/15 Exhibit 44-2(A)
2    marked.)
3        MS. DUGGAN:  This will be
4    Exhibit 44-2(A), invoice dated September 19,
5    2014, to BNBM, WW352.
6        (T:7/8/15-7/11/15 Exhibit 44-2(B)
7    marked.)
8        MS. DUGGAN:  Exhibit 44-2(B) --
9        MR. NICKEL:  That's not consistent with
10    what I have.  Hold on.  My Exhibit 44-2(A)
11    starts with WW353 --
12        MS. DUGGAN:  Okay.  353.
13        MR. NICKEL:  -- and goes through 361.
14        MS. DUGGAN:  Goes through 361.
15        Exhibit 44-2(B) has invoices to BNBM.
16    These were provided in the Baillie second
17    production, which was made available to the
18    defendants.
19        MR. NICKEL:  And these are just random
20    pages from the Baillie production?
21        MS. DUGGAN:  Exactly.
22        MR. NICKEL:  So we don't have a straight
23    Bates range.  Okay.
24        (T:7/8/15-7/11/15 Exhibit 44-2(C)
25    marked.)

Page 438

1        MS. DUGGAN:  Exhibit 44-2(C) contains an
2    invoice dated July 8, 2013, to BNBM.  I believe
3    that's a typo.
4        Rachel, is that a typo?  It says "2013."
5        MS. STERNLIEB:  What number?
6        MS. DUGGAN:  Exhibit 44-2(C) contains an
7    invoice.
8        MS. STERNLIEB:  Yes.
9        (T:7/8/15-7/11/15 Exhibit 44-2(D)
10    marked.)
11        MS. DUGGAN:  Exhibit 44-2(D) has an
12    invoice and a request for a wire transfer,
13    Baillie323 and BNBM(Group)2843.
14        (T:7/8/15-7/11/15 Exhibit 44-2(E)
15    marked.)
16        MS. DUGGAN:  Exhibit 44-2(E) contains
17    shipping records that were provided in the
18    Baillie second production.
19        (T:7/8/15-7/11/15 Exhibit 44-2(F)
20    marked.)
21        MS. DUGGAN:  Exhibit 44-2(F) is an
22    invoice dated July 3, 2014, regarding shipment
23    of logs to BNBM.
24        (T:7/8/15-7/11/15 Exhibit 44-2(G)
25    marked.)

Page 439

1     MS. DUGGAN:  Exhibit 44-2(G) contains
2  invoices to BNBM from Baillie Lumber.
3     The same with regard to Exhibit 44-2(F);
4  the -- those documents come from Baillie Lumber.
5     (T:7/8/15-7/11/15 Exhibit 44-2(H)
6     marked.)
7     MS. DUGGAN:  Exhibit 44-2(H) contains
8  invoices to BNBM from Baillie Lumber.
9     (T:7/8/15-7/11/15 Exhibit 44-2(I)
10    marked.)
11    MS. DUGGAN:  Exhibit 44-2(I) contains
12 invoices to BNBM from Baillie Lumber.
13    (T:7/8/15-7/11/15 Exhibit 44-2(J)
14    marked.)
15    MS. DUGGAN: Exhibit 44-2(J) contains
16 invoices to BNBM from Baillie Lumber.
17    (T:7/8/15-7/11/15 Exhibit 44-2(K)
18    marked.)
19    MS. DUGGAN:  Exhibit 44-2(K) contains
20 invoices to BNBM from Baillie Lumber.
21    (T:7/8/15-7/11/15 Exhibit 44-2(L)
22    marked.)
23    MS. DUGGAN:  Exhibit 44-2(L), an invoice
24 dated May 8, 2015, to BNBM from Baillie Lumber.
25    (T:7/8/15-7/11/15 Exhibit 44-2(M)

Page 440

1     marked.)
2     MS. DUGGAN:  Exhibit 44-2(M), invoices
3  dated March 25, March 27 and April 15, 2015, to
4  BNBM from Baillie Lumber.
5     (T:7/8/15-7/11/15 Exhibit 44-2(N)
6     marked.)
7     MS. DUGGAN: Exhibit 44-2(N), invoice
8  dated April 10, 2015, to BNBM from Baillie
9  Lumber.
10    (T:7/8/15-7/11/15 Exhibit 44-2(O)
11    marked.)
12    MS. DUGGAN:  Exhibit 44-2(O), invoice
13 dated July 30, 2014, to BNBM from Baillie
14 Lumber.
15    (T:7/8/15-7/11/15 Exhibit 44-2(P)
16    marked.)
17    MS. DUGGAN:  Exhibit 44-2(P), shipping
18 documents to BNBM from Baillie Lumber.
19    (T:7/8/15-7/11/15 Exhibit 44-2(Q)
20    marked.)
21    MS. DUGGAN:  Exhibit 44-2(Q), invoice
22 dated July 17, 2014, to BNBM from Baillie
23 Lumber.
24    (T:7/8/15-7/11/15 Exhibit 44-2(R)
25    marked.)

Page 441

1     MS. DUGGAN:  Exhibit 44-2(R), invoice
2  dated June 19, 2014, to BNBM from Baillie
3  Lumber.
4     (T:7/8/15-7/11/15 Exhibit 44-2(S)
5     marked.)
6     MS. DUGGAN:  Exhibit 44-2(S), sales
7  order and invoice from Hampton Affiliates to
8  BNBM, Bates BNBM(Group)2844 to 2845.
9     (T:7/8/15-7/11/15 Exhibit 44-2(T)
10    marked.)
11    MS. DUGGAN:  Exhibit 44-2(T),
12 acknowledgement by Baillie Lumber, Bates
13 BNBM(Group)2850.
14    MR. NICKEL:  We have no objection to
15 these being attached to the deposition as
16 exhibits to the deposition.  We would object to
17 any characterization of the documents themselves
18 being used for any purpose other than
19 identifying the documents that are actually in
20 the exhibits.
21    MS. DUGGAN:  That's fine.
22    MR. LEVIN:  I'll take that under
23 advisement.
24    MR. NICKEL:  So noted.
25    THE REPORTER:  Off?

Page 442

1     MS. DUGGAN:  Off the record.
2     (Discussion off the record.)
3     (B:7/8/15-7/11/15 Exhibit 151A marked.)
4     MS. DUGGAN:  Plaintiffs are going to
5  mark and offer into the record Exhibit 151A,
6  which are the BNBM articles of association in
7  Chinese dated November 8, 2003, at Bates range
8  BNBMPLC003429 to 3462.
9     MR. NICKEL:  Before you read through it,
10 can we get the copies, so that we can just make
11 sure that we're on the same page?
12    MS. STERNLIEB:  Yeah.
13    (Discussion off the record.)
14    (B:7/8/15-7/11/15 Exhibit 151R marked.)
15    MS. DUGGAN:  Exhibit 151R are the BNBM
16 articles of association in English, which have
17 been red-lined by the defendants and accepted by
18 the PSC, dated November 8, 2003.  Bates
19 BNBMPLC0003463, 3524.
20    (B:7/8/15-7/11/15 Exhibit 152A marked.)
21    MS. DUGGAN:  Exhibit 152A, BNBM articles
22 of association in Chinese, dated October 19,
23 2004, BNBMPLC0003525 to 3558.
24    (B:7/8/15-7/11/15 Exhibit 152R marked.)
25    MS. DUGGAN:  Exhibit 152R, BNBM articles

Page 443

1  of association in English that have been
2  red-lined by the parties, dated October 19,
3  2004, BNBMPLC0003559 to 3617.
4       (B:7/8/15-7/11/15 Exhibit 153A marked.)
5       MS. DUGGAN:  Exhibit 153A, BNBM articles
6  of association in Chinese, dated May 27, 2005,
7  BNBMPLC0003618 to 3657.
8       (B:7/8/15-7/11/15 Exhibit 153R marked.)
9       MS. DUGGAN:  Exhibit 153R are the
10  articles of association for BNBM in English that
11  have been red-lined by the parties, dated
12  May 27, 2005, BNBMPLC0003658 to 3715.
13       (B:7/8/15-7/11/15 Exhibit 154A marked.)
14       MS. DUGGAN:  Exhibit 154A, BNBM articles
15  of association in Chinese, dated May 16, 2005,
16  BNBMPLC0003716 to 3749.
17       MR. NICKEL:  It's May 16, 2006.
18       MS. DUGGAN:  Okay.
19       (B:7/8/15-7/11/15 Exhibit 154R marked.)
20       MS. DUGGAN:  Exhibit 154R are the BNBM
21  articles of association in English red-lined by
22  the parties, dated May 16, 2006, BNBMPLC003750
23  to 3832.
24       (B:7/8/15-7/11/15 Exhibit 155A marked.)
25       MS. DUGGAN:  Exhibit 155A, BNBM articles

Page 444

1  of association in Chinese dated July 24, 2006,
2  BNBMPLC0003833 to 3866.
3       (B:7/8/15-7/11/15 Exhibit 155R marked.)
4       MS. DUGGAN:  Exhibit 155R, BNBM articles
5  of association in English red-lined by the
6  parties, dated July 24, 2006, BNBMPLC0003867 to
7  3925.
8       (B:7/8/15-7/11/15 Exhibit 156A marked.)
9       MS. DUGGAN:  Exhibit 156A, BNBM articles
10  of association in Chinese dated April 9, 2009,
11  BNBMPLC0003926 to 3959.
12       (B:7/8/15-7/11/15 Exhibit 156R marked.)
13       MS. DUGGAN:  Exhibit 156R, BNBM articles
14  of association in English dated April 7 --
15  April 9, 2009, BNBMPLC0003960 to 4050.
16       (B:7/8/15-7/11/15 Exhibit 157A marked.)
17       MS. DUGGAN:  Exhibit 157A, BNBM articles
18  of association in Chinese dated September 18,
19  2009, BNBMPLC0004051 to 4084.
20       (B:7/8/15-7/11/15 Exhibit 157R marked.)
21       MS. DUGGAN:  Exhibit 157R, BNBM articles
22  of association in English that's been red-lined
23  by the parties, dated September 18, 2009,
24  BNBMPLC0004085 to 4135.
25       (B:7/8/15-7/11/15 Exhibit 158A marked.)

Page 445

1       MS. DUGGAN:  Exhibit 158A, BNBM articles
2  of association in Chinese dated September 17,
3  2012, BNBMPLC0004036 to 4467.
4       (B:7/8/15-7/11/15 Exhibit 158R marked.)
5       MS. DUGGAN:  Exhibit 158R --
6       MR. NICKEL:  4136, did you say?
7       MS. DUGGAN:  I said four-zero.  Is it
8  4136?  4136 to --
9       MR. NICKEL:  4167.
10       MS. DUGGAN:  Oh, 4167.  My apologies.
11       Exhibit 158R, BNBM articles of
12  association in English dated September 17, 2012,
13  BNBMPLC0004168 to 4204.
14       (B:7/8/15-7/11/15 Exhibit 159A marked.)
15       MS. DUGGAN:  Exhibit 159A, BNBM articles
16  of association in Chinese dated November 17,
17  2014, BNBMPLC0004205 to 4237.
18       (B:7/8/15-7/11/15 Exhibit 159R marked.)
19       MS. DUGGAN:  Exhibit 159R, BNBM articles
20  of association in English that have been
21  red-lined by the parties, dated November 17,
22  2014, BNBMPLC0004238 to 4274.
23       (B:7/8/15-7/11/15 Exhibit 160A marked.)
24       MS. DUGGAN:  Exhibit 160A, BNBM articles
25  of association in Chinese dated April 6, 2001,

Page 446

1  BNBMPLC0003337 to 3363.
2       (B:7/8/15-7/11/15 Exhibit 160R marked.)
3       MS. DUGGAN:  Exhibit 160R, BNBM articles
4  of association in English that have been
5  red-lined, dated April 6, 2001, BNBMPLC0003364
6  to 3248.
7       MR. NICKEL:  I think the date for 160A
8  and 160R is actually April 26th, 2001.
9       MS. DUGGAN:  Thank you.  Off the record.
10       (Recess taken, 12:59 p.m. to 1:06 p.m.)
11       (The following proceedings were
12       conducted on the videotaped record in
13       the presence of all counsel.)
14       THE VIDEOGRAPHER:  This is Disc 5.
15  We're now back on the record.  The time is 1:06.
16  BY MR. LEVIN:
17  Q    Please go back to Exhibit 140, just for some
18  brief questions.
19       You obviously have seen this -- you
20  obviously have seen this document before today?
21  A    Correct.
22  Q    Does the document truly reflect what it
23  says?
24       Was this document prepared by you in
25  your capacity in employment of BNBM?

1    A    Yes.

2    Q    And is the document maintained in the

3 ordinary course of business of BNBM?

4    A    This is my personal work report.

5    Q    That you did pursuant to your employment in

6 BNBM; is that correct?

7    A    Yes.

8    Q    And it was produced to us from BNBM's files,

9 was it not?

10   A    Yes, I believe this is in my computer.

11        MR. BARR:  We'll so stipulate.  Go

12   ahead.

13        (B:7/8/15-7/11/15 Exhibit 116 marked.)

14        MR. LEVIN:  Thank you.  Exhibit 116 and

15   119.

16        MR. BARR:  We don't have it?  Do we have

17   those?

18        MR. LEVIN:  Do you have them?

19        Exhibit 116 and 119 are the -- because

20   defendants have made changes to 119, which we

21   have accepted, and now it's 119R.

22        MR. BARR:  That's fine.

23 BY MR. LEVIN:

24   Q    Sir, I want to move fast.

25        MR. BARR:  It's okay.

1        MR. LEVIN:  Mike, tell him that I'm

2   moving fast purposely.

3        MR. BARR:  Sure.  Okay.  Todd, just tell

4   him that we're just trying to move through some

5   of this quickly and we will slow down where

6   appropriate.

7        (Translation.)

8        MR. BARR:  And I will make sure that we

9   pause, if there are issues where he needs to

10   focus.

11        (Translation.)

12        MR. BARR:  Okay.  Please proceed.

13 BY MR. LEVIN:

14   Q    Am I correct that these two documents, 116

15 and 119, are compilations of press coverage on the

16 drywall event?

17   A    It is, according to the report.

18   Q    Do you know who compiled these documents?

19   A    I do not know.

20   Q    Are you aware that these documents were

21 compiled by BNBM in the ordinary course of their

22 business?

23        MR. BARR:  I'm going to object to form.

24        MS. EIKHOFF:  Object to form.

25   A    Some of the contents here were sent to me by

1 the attorneys, and I have read them.  But as of who

2 have compiled them together, I'm not sure because I

3 have not seen the compiled version of the document

4 before.

5 BY MR. LEVIN:

6    Q    Is it fair to say that they were compiled by

7 a BNBM employee?

8    A    I cannot be sure of that.

9    Q    Do you know how they came to be in BNBM's

10 files and were produced in this litigation?

11   A    I don't know.

12        MS. DUGGAN:  For the record, Exhibit 116

13   is a partial translation of BNBMPLC-E-0001226 to

14   1252.  Translation prepared by the PSC, followed

15   by a machine translation and a document in

16   Chinese at Bates range BNBMPLC-E-0001226 to

17   1227.

18 BY MR. LEVIN:

19   Q    Sir, if I wanted to find out who created

20 this document, who at BNBM would know the answer?

21   A    You're referring to the Exhibit 116?

22        MR. BARR:  And 119.

23        THE WITNESS:  Can you reinterpret his

24   question?

25        (Translation.)

1    A    If I wanted to know, first of all, I would

2 have asked the manager of the legal department.

3 BY MR. LEVIN:

4    Q    Okay.  And who was that, sir -- she?

5    A    Ms. Shi Keping.

6    Q    Is she an attorney?

7    A    No.

8        MR. LEVIN:  Exhibit 115.

9        (B:7/8/15-7/11/15 Exhibit 115 marked.)

10        (B:7/8/15-7/11/15 Exhibit 119 marked.)

11        (B:7/8/15-7/11/15 Exhibit 119R marked.)

12        MS. DUGGAN:  Just for the record,

13   Exhibit 119 is a partial translation of

14   BNBMPLC-E-0002110 to 2154.  The defendants have

15   agreed to the red-lines to the translation,

16   which is Exhibit 119R, followed by a machine

17   translation and a document in Chinese with Bates

18   range BNBMPLC-E-0002110, dash, 2111.

19        Exhibit 115 is a translation prepared by

20   the PSC of BNBMPLC-E-0001225, followed by a

21   machine translation provided by the defendants

22   and a Chinese document at Bates range -- at

23   Bates number BNBMPLC-E-0001225.

24        (Telephonic interruption.)

25        MS. DUGGAN:  The PSC's translation of

Page 451

1    this document reads as follows --
2        MR. BARR:  This is not one that has
3    been --
4        MR. LEVIN:  Red-lined.
5        MR. BARR:  -- red-lined.
6        MR. LEVIN:  No.
7        MR. BARR:  I thought we weren't going to
8    have the reading of paragraphs --
9        MR. LEVIN:  Just a few, just for
10   continuity.
11       MS. DUGGAN:  The defendants will have an
12   opportunity to red-line this translation during
13   the deposition or after the deposition.
14       MR. BARR:  No, I understand.  I thought
15   we were trying to avoid, because then we have
16   the translator translating what you're
17   reading --
18       MS. DUGGAN:  I'm not asking -- well, I'm
19   just --
20       MR. LEVIN:  Just for point of reference.
21       MR. BARR:  Seriously, we have to stop --
22   we had to stop doing that on the earlier
23   documents and Arnold was just asking questions.
24       MR. LEVIN:  Just bear with me for a
25   couple documents, okay, sir?

Page 452

1        MR. BARR:  All right.  Subject to our
2    objection.
3        MR. LEVIN:  I have a reason for doing
4    this.
5        MS. DUGGAN:  And we understand that the
6    defendants do not agree to this translation, but
7    this is what our translation says, and then
8    we'll ask a question.
9        MR. BARR:  Okay.  My only concern is,
10   then the translator is translating what you're
11   saying, which is not necessarily what he's
12   reading in Chinese.
13       MS. DUGGAN:  And we understand that.
14       MR. BARR:  Okay.
15       MS. DUGGAN:  "The explanation regarding
16   the product quality dispute litigation in the
17   United States."  Second paragraph, "Until
18   September 16, 2011, BNBM and Taishan Gypsum had
19   been served summons in 12 lawsuits.  Among them,
20   BNBM was involved three cases; Taishan Gypsum
21   was involved in nine.  BNBM and Taishan Gypsum
22   were not the only defendants in those cases
23   mentioned above, and the plaintiffs did not
24   clarify specific claim amounts in these cases."
25       MR. LEVIN:  And the bottom, "At this

Page 453

1    moment."
2        MS. DUGGAN:  Two paragraphs down, "At
3    this moment, the drywall case has drawn high
4    attention from the Chinese government.  The
5    relevant government departments have kept an eye
6    on the development of the case and have actively
7    pushed for resolution of the event."
8    BY MR. LEVIN:
9        Q    Sir, you have the Chinese version before
10   you?
11       A    Yes.
12       Q    Does Ms. Duggan's statements represent
13   substantially the content of the Chinese document?
14       MR. BARR:  Well, has the translator
15   translated as we've been going through all of
16   what she just read?  And, again, to me, this
17   raises the exact concern I had before.
18       THE INTERPRETER:  The interpreter
19   pointed the Chinese version on the document
20   along with Ms. Duggan's reading of the English
21   translation.  If counsel would like me to
22   translate Ms. Duggan's reading according to her
23   language, I could -- the interpreter can do that
24   as well.
25       MR. LEVIN:  Why don't we try --

Page 454

1        MR. BARR:  Well, no, then we have the
2    same problem as I said that we had before, and
3    not the procedure we're going to --
4        MR. LEVIN:  She's translating something
5    that you haven't agreed to.  I recognize it.
6    Let me try it this way, the way we were doing
7    it.
8    BY MR. LEVIN:
9        Q    The document indicates that you were served
10   12 lawsuits, among them, BNBM in three cases; Taishan
11   Gypsum was involved in nine; BNBM, Taishan Gypsum were
12   not the only defendants in these cases.
13       Do you see that in the Chinese version
14   of the document?
15       MR. BARR:  Please note that we --
16       (Translation.)
17       MR. BARR:  Please note that we have
18   specific objections to -- even to the language
19   that was just read.
20       But you can respond to the question, if
21   you can.
22       A    In front of me is a report.  On the second
23   paragraph of the report mentioned BNBM as well as
24   Taishan Gypsum.
25   BY MR. LEVIN:

1    Q    Does it mention that you were served summons
2  in 12 lawsuits, among them BNBM having three cases,
3  Taishan Gypsum and -- involved in nine, and BN and
4  Taishan Gypsum were not the only defendants?
5    A    Yes.
6         MR. BARR:  And I want to note for the
7  record that we have an objection to the
8  translation of the words --
9         MR. LEVIN:  No, don't --
10        MR. BARR:  I'm sorry, this is highly
11 misleading, Arnold.  To read a paragraph that
12 talks about something having been served when
13 that's not what the language reads, we can go
14 off the record and let the translator --
15        MR. LEVIN:  He accepted the language.
16        MR. BARR:  Excuse me.
17        MR. LEVIN:  Wait, let me just tell you,
18 that language is in your announcements --
19        MR. LIAO:  The translation is inaccurate
20 about --
21        MR. LEVIN:  In the announcements that
22 you stipulated to?
23        MR. BARR:  Whatever the announcements
24 that we stipulated to, we stand by.
25        MR. LEVIN:  You bet you stand by them.

1         MR. BARR:  Yes, we do.
2         MR. LIAO:  You can ask your lawyer about
3  the language.
4         MR. BARR:  One person speaks here.
5         MR. LEVIN:  The record will stand as it
6  is.
7         MR. BARR:  As will our objection to the
8  translation.
9  BY MR. LEVIN:
10   Q    Does it also indicate that the drywall case
11 has drawn high attention of the Chinese government?
12   A    That's what the Chinese language says in the
13 report.
14   Q    Now, have you ever seen the Chinese version
15 of that document before?
16   A    I have not seen it.
17   Q    Do you know whether that document was
18 prepared by a representative of BNBM?
19   A    I don't know.
20        MR. LEVIN:  Next.
21        (B:7/8/15-7/11/15 Exhibit 121R marked.)
22        MS. DUGGAN:  Plaintiffs are marking for
23 identification and offering into the record in
24 this deposition Exhibit 121R.  This is a partial
25 translation of BNBMPLC-E-0004781 to 4784.  This

1  translation has been red-lined by the defendants
2  and agreed to by the PSC.
3         Following the red-lined translation is
4  the original translation provided by the PSC, a
5  machine translation provided by the defendants
6  and a document in Chinese that's Bates number
7  BNBMPLC-E-0004781 to 4784.  The document in
8  Chinese has been highlighted in yellow to
9  reflect the portions of the document that are
10 contained in the translation.
11        MR. LEVIN:  Would you please,
12 Ms. Duggan, read the highlighted portions as
13 agreed to by the defendant.
14        MS. DUGGAN:  The top of the document
15 says, "Reply on the inquiry letter about 2006
16 annual report verification.  Listed companies
17 supervisory department of Beijing Securities
18 Regulatory Bureau:  After receiving your
19 bureau's inquiry letter about 2006 annual report
20 verification, our company carefully analyzed and
21 compiled relevant materials for the matters
22 mentioned in the inquiry letter, and we hereby
23 explain the specific matters below," and that is
24 from page BNBMPLC-E-0004782.
25        MR. LEVIN:  And read the portions that

1  we want read.
2         MS. DUGGAN:  Paragraph 10, "The
3  company's control over Shandong Taihe and BND,
4  the company respectively holds 65% shares of
5  Shandong Taihe and 80% shares of BND.
6         "The directors assigned by the company
7  are the majority among the above two
8  subsidiaries board of directors and can
9  influence their production and operation
10 decision-making.  Beijing New Building Materials
11 Public Limited Company, 2007/4/23."
12 BY MR. LEVIN:
13   Q    Sir, have you ever seen this document
14 before?
15   A    This document was dated in 2007, before I
16 came to work in BNBM.  I have not seen it.
17   Q    Does your company, from time to time, answer
18 inquiries of the Beijing Securities Regulatory Bureau?
19   A    We would need to answer whenever they have
20 inquired us.
21   Q    In fact, the law requires you to answer
22 them, does it not?
23   A    Correct.
24   Q    And the law requires for you to truthfully
25 answer them, does it not?

Page 459

1  A   Yes.

2  Q   And, sir, you have no reason, sitting here

3  today, having worked for this company from 2009, to

4  question what management of this company did in 2006

5  in responding to a regulatory governmental agency, do

6  you?

7  A   That was the company at the time responded

8  to the questions.  My understanding is the response

9  given at the time was based on the true facts at the

10 time.

11 Q   Do you have a different view since this

12 lawsuit was filed?

13     MR. BARR:  Objection, form, vague.

14 About what?

15     MR. LEVIN:  About the statement made in

16 2006.

17     MS. EIKHOFF:  Correction.  I think the

18 date of the document is 4/23/2007.

19     MR. LEVIN:  Thank you.

20     MR. BARR:  I repeat:  Objection, form

21 and vague.

22     MR. LEVIN:  I'll withdraw the question.

23     MR. BARR:  He withdrew the question.

24     MR. LEVIN:  Next document, please.

25     (B:7/8/15-7/11/15 Exhibit 124R marked.)

Page 460

1      MS. DUGGAN:  Plaintiffs are marking for

2  identification Exhibit 124R, providing a copy to

3  the witness, the interpreter and counsel for all

4  parties.  This document is a translation of

5  BNBMPLC-E-0006050 to 6051.  The translation has

6  been red-lined by the defendants and agreed to

7  by the PSC.

8      Following the red-lined translation, the

9  PSC's original translation is contained in the

10 document, the machine translation provided by

11 defendants, and a Chinese document, Bates

12 BNBMPLC-E-0006050 to 6051.

13     I'm going to read from the red-lined

14 translation a portion of the document, "Beijing

15 New Building Materials Public Limited Company's

16 report on the management and control of its

17 branches and subsidiaries."

18     At Roman numeral I, "The situation of

19 the branches and subsidiaries currently owned by

20 the company.  Currently, the company owns six

21 branches, such as Z-A-O-Z-H-U-A-N-G branch owns

22 eight wholly owned subsidiaries, such as

23 N-I-N-G-B-O.  BNBM Company, Limited owns seven

24 controlled subsidiaries, such as Taishan Gypsum

25 Company, Limited, and owns 12 joint stock

Page 461

1  subsidiaries, such as Beijing L-V-C-H-U-A-N-G

2  Environmental Protection Equipment Co., Ltd.

3      Roman numeral II, "The control and

4  management situation of the companies' branches

5  and subsidiaries.  The company mainly conducts

6  management and control of its branches and

7  subsidiaries in the following main aspects:

8  (1), establishing and improving relevant

9  internal control systems."

10     Following that paragraph, (2),

11 "periodically conducting dynamic supervision and

12 operation situation analysis."

13     Following that paragraph, (3),

14 "strengthening the control of controlled

15 subsidiaries' important activities.

16     Following that paragraph, (4),

17 "strengthening the management of the assigned

18 directors, supervisors and important high-level

19 management personnel."

20     The last paragraph, "Through the

21 implementation of the management measures above,

22 the company ensured effective control of its

23 branches and subsidiaries, protected the

24 company's interest to the maximum, and prevented

25 investment risks.  In the future, as the company

Page 462

1  further develops and expands, outside

2  investments will continue to increase.  The

3  company will continue to enhance the level of

4  management of shareholding equity based on the

5  current level, and standardize the management of

6  its branches and subsidiaries to obtain better

7  investment returns.  Beijing New Building

8  Materials Public Limited Company, October 16th,

9  2007."

10     MS. DALEY:  During this questioning,

11 Ms. Duggan indicated that defendants had

12 reviewed these red-lines.  In fact, BNBM has

13 reviewed these red-lines, but not all the

14 defendants.  So if we could just make that clear

15 across the board on the record that the

16 red-lines are on behalf of BNBM.

17     MS. DUGGAN:  That's correct.

18     MS. DALEY:  Thank you.

19 BY MR. LEVIN:

20 Q   Sir, in the second-from-the-last paragraph,

21 which is part of paragraph -- which is part of section

22 number 4 of the document, your counsel, in translating

23 the document, inserted the word "controlled" next to

24 "subsidiaries" in our document, so I'd like to ask

25 you:  Who were the controlled subsidiaries?  Is that

Page 463

1 Taishan?
2      MR. BARR:  You're asking at this point
3   in time, in 2007?
4      MR. LEVIN:  I'm asking in 2007.
5   A   I have not seen this document dated 2007.
6 BY MR. LEVIN:
7   Q   Well, does the document speak of a
8 controlled subsidiary, as your counsel has defined it,
9 in this document?
10      MR. BARR:  Arnie, to speed this up, can
11   you direct him to Roman numeral I, which Sandy
12   read into the record, which -- see if he agrees
13   that that addresses that.  So just direct him to
14   that paragraph.
15 BY MR. LEVIN:
16   Q   Could you take a look at --
17      MR. LEVIN:  Thank you, Michael.
18 BY MR. LEVIN:
19   Q   Could you take a look at Roman numeral I,
20 first paragraph, which starts, in English, with
21 "Currently"?
22   A   I'm done reading it.
23   Q   Do you see that the document refers to
24 Taishan being a controlled subsidiary?
25   A   The document states that BNBM owns seven

Page 464

1 control -- controlled subsidiaries, such as Taishan
2 Gypsum Company, Limited.  Yes, the document mentioned
3 that.
4   Q   And, sir, the drywall which was at issue --
5 which is at issue in this litigation was shipped to
6 the United States in 2005 and 2006; am I correct?
7      MR. BARR:  Objection to the form and
8   objection, vague and misleading.
9      I'm sorry, Sunny.
10      (Translation.)
11   A   I don't understand your question.
12 BY MR. LEVIN:
13   Q   The product at issue in the complaints that
14 you saw, that was manufactured by Taishan, came to the
15 United States in 2005 and 2006; am I correct in that
16 statement?
17      MS. EIKHOFF:  Object to form.
18      THE WITNESS:  Can you repeat the
19   interpretation?
20      THE INTERPRETER:  The interpreter will
21   repeat.
22      MR. BARR:  Can we go off the record just
23   for a second?
24      THE VIDEOGRAPHER:  We're now off the
25   record at 1:40.

Page 465

1      (Discussion off the record.)
2      THE VIDEOGRAPHER:  We're now back on the
3   record.  The time is 1:41.
4 BY MR. LEVIN:
5   Q   The drywall at this -- at issue in this
6 litigation was received in the United States in 2005
7 and 2006; am I correct, sir?
8      MR. BARR:  We'll stipulate that that's
9   what the complaints say.  I mean, maybe that can
10   move things along here, unless it's a predicate
11   for a question you want to ask him.
12      MR. LEVIN:  Well, help me.
13      MR. BARR:  I'm just saying we will
14   stipulate and tell the witness that the drywall
15   from Taishan, it's alleged in the complaints,
16   came to the U.S. in 2005 and 2006.  I know the
17   question you want to ask him next, so does that
18   work for you?
19      MR. LEVIN:  Let's have the stipulation.
20      MR. BARR:  We will stipulate that the
21   complaints allege that the drywall from Taishan
22   arrived in the United States in 2005 and 2006.
23 BY MR. LEVIN:
24   Q   Sir, your counsel has stipulated that that's
25 a true fact --

Page 466

1      MR. BARR:  No, I stipulate that's what
2   the complaints allege.
3      MR. LEVIN:  It is a true fact that is
4   what the complaint says, that's what you said.
5   I'm not going to -- the complaint states.
6      MR. BARR:  (Nods head.)
7      THE WITNESS:  Do I need to say anything?
8      MR. BARR:  Not yet.
9      MR. LEVIN:  Not yet.
10 BY MR. LEVIN:
11   Q   Do you have any -- do you have any
12 information to tell me today, as a director of Taishan
13 and a director of BNBM and the general manager of
14 BNBM, to dispute the fact that the drywall --
15 Taishan's drywall was received in the United States in
16 2005 and 2006?
17      (Translation.)
18      THE INTERPRETER:  Just one moment.
19      (Translation.)
20   A   The issue of Taishan's gypsum board is to be
21 handled by the management of Taishan Gypsum.
22 BY MR. LEVIN:
23   Q   So you don't know?
24   A   I'm not sure about Taishan's exporting.
25   Q   And you are a director of Taishan and are a

Page 467

1  director of Taishan during the pendency of this
2  litigation, are you not?
3         MS. EIKHOFF:  Object to form.  I think
4  you may have misspoken, if you want to look
5  at -- you asked if he was a director of Taishan
6  or a director of Taishan.
7         MR. LEVIN:  No, I didn't say "or."
8         MS. EIKHOFF:  "And."  Is he a director
9  of Taishan and a director of Taishan.
10        MR. LEVIN:  That's the way I speak.  I'm
11  not from Atlanta.
12        THE WITNESS:  What was your question?
13        THE INTERPRETER:  The interpreter will
14  reinterpret the question.
15        (Translation.)
16  A     Yes, I am a director of Taishan Gypsum.
17  BY MR. LEVIN:
18  Q    And as a director of Taishan Gypsum, I would
19  imagine you try to keep up to date on everything
20  that's relevant to Taishan Gypsum's business, do you
21  not?
22        MR. BARR:  Objection to the form, lack
23    of foundation.
24  A    No.
25







Page 475

17  Q    In July -- at or about July 7th, 2014, did
18  Mr. Chungang represent BNBM in connection with the
19  defective drywall litigation in the United States?
20  A    According to my recollection, Mr. Dong
21  Chungang did not represent BNBM in July of 2014.
22  Q    To your knowledge, did he represent CNBM or
23  CNBM Group in July of 2014 in connection with the
24  defective drywall litigation in the United States?
25  A    I don't know.

Page 476

1  Q    At that time, in July of 2014, was he BNBM's
2  legal outside consultant?
3  A    Not to my knowledge.

Page 477

Page 478

17  Q    Is this a substantial issue at BNBM, the
18  drywall litigation in the United States?
19      MR. BARR:  You may answer that yes or
20  no.
21  A    Yes.
22  BY MR. LEVIN:
23  Q    And is it an important item of business at
24  BNBM?  Strike that.
25      Is it an important issue at BNBM?

Page 479

1  A  What's your standard of "important" here?
2  Q  A claim for $1.6 billion in American money.
3  I consider that substantial.
4      MR. BARR:  I object to the form of the
5    question.
6      MS. EIKHOFF:  Objection, foundation.
7      MR. BARR:  That too.
8  A  From the perspective of the product's
9  quality, there is no problem because, as the
10 management of the company, I'm -- I have faith in our
11 product's quality.  From the amount of the claim, as
12 you said just now, 1.6 billion, that's a big amount,
13 perhaps.
14 BY MR. LEVIN:
15 Q  Were you and your colleagues concerned about
16 this litigation?
17      MR. BARR:  You may answer that yes or
18    no.
19 A  Did you mean concerned, as closely watching
20 over it, or concerned, as worry?
21 BY MR. LEVIN:
22 Q  Well, let's try "worried."
23 A  We are not worried, for we have faith in our
24 product's quality.  Our American customers had never
25 complained in regard to any quality problems of our

Page 480

1  products.  We have never received any of their
2  complaints regarding our products.
3  Q  When you say "our products," are you
4  speaking of BNBM's products or Taishan's products, or
5  both?
6      MR. LEVIN:  Compound.
7  A  Of course BNBM.
8  BY MR. LEVIN:
9  Q  Well, the litigation concerns Taishan's
10 products.  Were you concerned about that, having been
11 sued?
12      THE INTERPRETER:  The interpreter would
13    like the counsel to clarify the meaning here,
14    "concerned," whether it's worried or something
15    else.
16      MR. LEVIN:  Let's try worried first, for
17    a $1.6 billion claim.
18      THE INTERPRETER:  Okay.
19      (Translation.)
20      MS. EIKHOFF:  Objection, form and
21    foundation.
22      MR. BARR:  Join the objection.
23 A  I'm not worried because Mr. Jia once told me
24 that their product's quality is up to the standard.
25 BY MR. LEVIN:

Page 481

1  Q  Did you ever see a scientific report on
2  Mr. Jia's product?
3      MR. BARR:  Objection to the form.
4      MS. EIKHOFF:  Did you say Chairman Jia?
5      MR. LEVIN:  Chairman Jia's product,
6    which is Taishan's product.  I'm just --
7      MS. EIKHOFF:  Well, you called him
8    "Chairman Jao," so I was confused.
9      MR. LEVIN:  Oh, okay.  Well --
10      MS. ROBERTSON:  The record says "Jia."
11      MR. BARR:  Still object to the form of
12    the question, vague and colloquial.
13 A  I have not seen it.
14      MR. LEVIN:  Excuse me.  Did he answer
15    it?
16      MR. BARR:  He said, "I have not seen
17    it."
18 BY MR. LEVIN:
19 Q  Do you know that it -- whether or not it
20 exists?
21 A  I don't know.
22 Q  Do you know whether or not the product was
23 given to a scientific entity to examine its
24 propensities?
25      MR. BARR:  Objection to the form.

Page 482

1      (Translation.)
2      THE WITNESS:  Are you done with your
3    interpretation?
4      THE INTERPRETER:  Yes.
5  A  I've heard there was an examination report
6  on the gypsum board, but I have not seen that report.
7  BY MR. LEVIN:
8  Q  Do you know why that report hasn't been
9  produced in this litigation?
10      MR. BARR:  Objection to the form,
11    foundation.
12      MS. EIKHOFF:  Objection.
13      THE WITNESS:  Please repeat your
14    interpretation.
15      (Translation.)
16 A  I don't know.
17 BY MR. LEVIN:
18 Q  Has it been prevented from being made public
19 pursuant to the Chinese Secrecy Act?
20      MR. BARR:  Objection to the form, lacks
21    foundation.
22 A  I know nothing about this matter.
23 BY MR. LEVIN:
24 Q  Are you aware that there was a study by the
25 United States Government, the Consumer Protection

Page 483

1   Agency, that has been made public concerning the Knauf
2   product, the Taishan product and the BNBM product?
3       A    I know there is such a report.
4           MR. BARR:  Mr. Chen, you should put your
5       hand down, just...
6   BY MR. LEVIN:
7       Q    So you're aware of the Consumer Product
8   Safety Commission report, are you not?
9       A    I'm aware of that.







Page 491

Page 493

1  capacity at BNBM and/or Taishan, as to the manner in
2  which counsel were retained for each of those
3  entities?
4        MR. BARR:  Can you break it down,
5     please?
6  BY MR. LEVIN:
7     Q   Were you involved in any discussions with
8  regard to the retention of Taishan -- by Taishan?
9        MR. BARR:  Object to the form.
10       (Translation.)
11       MR. BARR:  You may answer that yes or
12    no.
13       (Translation.)
14       MR. BARR:  You may answer that question
15    yes or no.
16    A   No.
17  BY MR. LEVIN:
18    Q   Did you ever meet Mr. Barr -- strike that.
19       Were you involved, sir, in connection
20  with the retention of counsel by BNBM and the BNBM
21  entities in connection with the litigation in the
22  United States regarding defective drywall?
23       MR. BARR:  You may answer that yes or
24    no.
25       (Translation.)

Page 492

Page 494

1        MR. BARR:  You may answer that yes or
2     no.
3        THE WITNESS:  I want to hear the
4     interpretation more clearly.
5        (Translation.)
6     A   Yes.
7  BY MR. LEVIN:
8     Q   And what was your involvement, sir?
9        MR. BARR:  And I direct the witness not
10    to discuss any communications that you had
11    involving counsel.
12    A   According to my attorney's caution, I cannot
13  answer this question.
14  BY MR. LEVIN:
15    Q   Did you partake in an interview of counsel?
16       MR. BARR:  You may answer that yes or
17    no.
18    A   Yes.
19  BY MR. LEVIN:
20    Q   And was that counsel Mr. Barr?
21    A   Yes.
22    Q   And who was present when you interviewed
23  Mr. Barr?
24       MR. BARR:  You may answer.
25    A   Company's chairman of the board of

17       Now, as the general manager and a
18  director of BNBM and a director of Taishan, I would
19  like to ask you certain questions that I believe you
20  may have some information to give to us and to the
21  Court, and the information concerns the legal
22  representation of Taishan, the BNBM entities and the
23  CNBM entities.
24       Sir, having said that, were you privy
25  to any discussions, either in your capacities -- your

Page 495

1 directors.
2 BY MR. LEVIN:
3    Q    Who was that, sir?
4    A    Mr. Wang Bing.
5    Q    Anybody else present?
6    A    I don't have a clear recollection.
7    Q    Was there any other attorneys present from
8 your company?
9    A    I don't recall.
10   Q    Well -- so that what you do recall is that
11 the only people that you can recall being present when
12 you interviewed Mr. Barr was yourself and the
13 chairman?
14   A    There were only two of us, as far as I can
15 recall right now.
16   Q    Did you meet with Mr. Barr thereafter?
17 Don't tell me what you said.  I just want to know
18 whether you met with him.
19       MR. BARR:  You may answer that yes or
20   no.
21   A    We met.
22 BY MR. LEVIN:
23   Q    Did you meet Mr. Barr in China -- excuse me.
24       Did you meet Mr. Barr in China?  He
25 came to China to meet with you?

Page 496

1    A    Yes.
2    Q    When was the first time you came to the
3 United States?
4    A    A few days ago.
5    Q    For purposes of this deposition.
6    A    Correct.
7    Q    When you met with Mr. Barr, was there
8 anybody present from Taishan?
9    A    No.
10   Q    Were there any attorneys from Taishan
11 present?
12   A    No.
13   Q    Was there any attorneys present from CNBM or
14 CNBM Group?
15   A    Are you referring to the meeting this time
16 in America?
17   Q    No, I'm referring to the meetings that you
18 had in China.  We'll get to America.  We're coming to
19 America shortly.
20       THE WITNESS:  What was your question?
21       MR. LEVIN:  Michael?
22       (The following portion of the record was
23       read.)
24       "QUESTION:  Was there any attorneys
25       present from CNBM or CNBM Group?"

Page 497

1    A    Yes.
2 BY MR. LEVIN:
3    Q    And who was that, sir?
4    A    I don't know them.  I don't recall their
5 names.
6    Q    And when was that, sir?  Was that in America
7 or over in China?
8    A    In China.
9    Q    Was it Mr. Stengel?
10   A    I don't recall.
11   Q    Was it Mr. Vejnoska?
12   A    I don't recall.
13   Q    Did you ever meet Mr. Stengel before you met
14 Mr. Barr?
15   A    Mr. Stengel?  Well, I -- can you say his --
16 well, yes, I have met him.
17   Q    Before you met Mr. Barr?
18   A    Correct, because at the time, he was my
19 company's attorney.
20   Q    And did he represent you in connection with
21 the litigation involving drywall in the United States?
22       MR. BARR:  You may answer that yes or
23   no.
24       (Translation.)
25       MR. BARR:  You may answer that yes or

Page 498

1   no.
2    A    Yes.
3 BY MR. LEVIN:
4    Q    When did he cease representing you in
5 connection with this litigation in the United States?
6       THE INTERPRETER:  May the interpreter
7    ask counsel to clarify, "you," as your company,
8    or "you," plural --
9       MR. LEVIN:  "You" being the collective
10   you, or as we say in Philadelphia, "youse."
11      MR. BARR:  Now, that's not helpful.
12  Could you please rephrase.
13      MR. LEVIN:  I'm sorry, that was more for
14  you.
15      MR. BARR:  Forgetting about the "youse."
16  The rest of it was -- one was amusing.  The
17  other was unhelpful.
18 BY MR. LEVIN:
19   Q    I'm speaking -- when I say "you," sir, I'm
20 speaking of your company, BNBM.
21   A    Until we have signed an agreement with
22 Mr. Barr.
23   Q    When you signed the agreement with Mr. Barr,
24 did you have an understanding that Mr. Stengel and his
25 law firm, the Orrick firm, would represent CNBM and

Page 499

1  CNBM Group?
2         THE INTERPRETER:  The interpreter needs
3    to clarify with deponent the tense.
4         (Translation.)
5  A   I didn't know.
6  BY MR. LEVIN:
7  Q   When did you sign your agreement with
8  Mr. Barr?
9  A   I don't remember the accurate time, but I
10 can check.
11 Q   Well, was it before or after Judge Fallon
12 entered his contempt order against Taishan and
13 assessed penalties against Taishan's affiliates and
14 subsidiaries?
15        MR. BARR:  Object to the form.
16        You may answer.
17 A   After.
18 BY MR. LEVIN:
19 Q   At the time that the contempt order was
20 entered, did Mr. Stengel represent BNBM?
21        MR. BARR:  You may answer that yes or
22   no.
23 A   Yes.
24 BY MR. LEVIN:
25 Q   You have an understanding why Mr. Stengel

Page 500

1  and the Orrick firm did not enter an appearance on
2  behalf of BNBM and/or BNBM Group in the United States
3  litigation prior to the entry of the contempt order?
4         THE INTERPRETER:  May the interpreter
5    ask for a clarification of "enter an
6    appearance"?
7         MR. LEVIN:  Told -- "entering the
8    appearance" means, to me, told the Court in the
9    United States that they were representing us.
10        THE INTERPRETER:  Thank you.
11        (Translation.)
12        THE INTERPRETER:  The interpreter will
13   reinterpret the --
14        MR. BARR:  Before that, if any
15   understanding that you may have is based upon
16   communications that you had with your counsel,
17   be it Orrick or any other counsel, I direct you
18   not to answer.
19 A   I can't answer this question.
20 BY MR. LEVIN:
21 Q   Is it because it's based on advice of
22 counsel?
23 A   Yes.  He reminded me.
24 Q   Who is "he"?  Mr. Barr?
25 A   Yes.

Page 501

1  Q   Was Mr. Chungang Dong present whenever you
2  met with Mr. Barr and/or Mr. Stengel in connection
3  with the representation of BNBM in the United States
4  litigation involving defective drywall?
5         MR. BARR:  Object to the form of the
6    question.
7         (Translation.)
8         MR. BARR:  Object to the form of the
9    question.  Objection, compound.
10        But you may answer yes or no.
11        THE WITNESS:  Can you repeat the
12   question?
13        MR. BARR:  Can you break it down?  It
14   also has -- you don't have any temporal
15   limitation on it.  It could be ever.
16        MR. LEVIN:  That's why I said "in
17   connection with" --
18        MR. BARR:  No, no, you said "in
19   connection with the litigation," but it could
20   have been was he ever present anytime any of the
21   lawyers ever met with him.
22        MR. LEVIN:  Yes, that's the question.
23        MR. BARR:  All right.
24        (Translation.)
25 A   Your question is very confusing.  Can you

Page 502

1  specify?
2  BY MR. LEVIN:
3  Q   Are you asking me to specify a time?
4  A   Yes.
5  Q   At the time -- was Mr. Chungang Dong present
6  at any time when you met with Mr. Stengel or any of
7  the members of his firm, the Orrick firm?
8  A   When I met with Orrick firm while Mr. Dong
9  Chungang was present, Mr. Dong Chungang was the
10 company attorney of BNBM.
11 Q   And when was that, sir?
12 A   That was a few years ago.
13 Q   And at the time that you -- was that in
14 2012, 2013, 2014, or some other year?
15 A   I don't remember the accurate year.
16 Q   And --
17 A   I will need to check the legal service
18 agreement between I and Dong Chungang.
19 Q   When you met with Mr. Stengel, had a default
20 judgment been entered against BNBM or -- and/or
21 BNBM Group by Judge Fallon in the United States
22 District Court for the Eastern District of Louisiana?
23        MR. BARR:  Objection to the form of the
24   question.
25        You may answer that yes or no.

1      THE WITNESS:  Please repeat the
2   question.
3          (Translation.)
4   A    I've met Mr. Stengel before and after that.
5 BY MR. LEVIN:
6   Q    When did you sign your agreement with
7 Mr. Barr and the Denton firm?
8          MR. BARR:  Objection, asked and
9      answered.
10         MR. LEVIN:  I have a recollection it was
11      after the contempt citation.
12         MR. BARR:  Correct.
13 BY MR. LEVIN:
14   Q    Was Mr. Barr and his law firm recommended to
15 you by anyone?
16         MR. BARR:  You may answer that yes or
17      no.
18   A    Yes.
19 BY MR. LEVIN:
20   Q    Did Mr. Stengel represent -- refer Mr. Barr
21 to you?
22   A    No.
23   Q    Who did recommend Mr. Barr, if anyone?
24   A    It was a Chinese attorney.
25   Q    And who was that Chinese attorney?

1   A    An Attorney Peng, P-E-N-G, who is also a
2 member of Denton law firm.
3   Q    And is he a member of the Denton law firm
4 that has their offices in China?
5   A    I believe so.
6   Q    Did somebody represent -- did somebody refer
7 you to that particular attorney?
8   A    Yes.
9   Q    And who was that, sir?
10   A    Mr. Wang Bing, the chairman of my company's
11 board of directors.
12   Q    Do you know how Mr. Wang Bing knew
13 Mr. Barr's Chinese colleague?
14         MR. BARR:  Can I just understand the
15      relevance --
16         (Translation.)
17         MR. BARR:  Excuse me.
18         MR. LEVIN:  You have.  One more
19      question.
20         MR. BARR:  I just want to note an
21      objection to the line of questioning.  The
22      timing of the retention may have been relevant,
23      but this issue in terms of the personal
24      relationships that may have existed for us to
25      get this retention are completely irrelevant to

1 this proceeding, and I will direct the witness
2 not to answer.
3          MR. LEVIN:  Let me say it's not about
4      you, and it's not about how you get the
5      representation.  It's how they got to you.  It
6      has nothing to do with you.
7          MR. BARR:  I've given you more than
8      enough leeway on that issue.
9          MR. LEVIN:  And I'm not being pejorative
10      to the Denton firm in connection with this.
11         MR. BARR:  He stated how he got
12      recommended to that lawyer, and that's as far as
13      I'm going to let you go.
14         (Translation.)
15         MR. BARR:  As I said, I've directed the
16      witness not to answer.
17         MR. LEVIN:  Okay.
18 BY MR. LEVIN:
19   Q    Was Mr. Stengel still representing you when
20 you first met Mr. Barr?
21   A    Yes.
22   Q    And did your company make a decision for
23 Mr. Stengel to move on to represent CNBM and no longer
24 represent you?
25         MR. BARR:  You may answer that question

1 yes or no.
2   A    No.
3 BY MR. LEVIN:
4   Q    Who did make that decision?
5   A    Can you break down?  What do you mean by
6 "decision"?
7   Q    Well, at the time you met Mr. Barr and
8 retained Mr. Barr, you were still represented by
9 Mr. Stengel; is that correct?
10   A    Yes.
11   Q    And how was the decision made to switch the
12 representation from Mr. Stengel to Mr. Barr with
13 regard to representation of BNBM?
14         MR. BARR:  To the extent your ability to
15      respond to that question depends upon
16      communications with counsel, I direct you not to
17      answer.
18         MR. LEVIN:  Can you answer my question?
19   A    I cannot answer your question.
20 BY MR. LEVIN:
21   Q    Because of the instructions given to you by
22 Mr. Barr?
23   A    Mr. Barr reminded me.
24   Q    Did Alston & Bird ever represent you?
25         MR. BARR:  When you say "you," you mean

1    BNBM?
2         MR. LEVIN:  BNBM, yeah.  I'm sorry.
3         MR. BARR:  That's okay.
4    A    I believe there once was a temporary
5    authorization.
6    BY MR. LEVIN:
7    Q    And did you authorize Alston & Bird to enter
8    an appearance for BNBM in the United States District
9    Court for the Eastern District of Pennsylvania --
10   Louisiana?
11        MR. BARR:  You may answer that yes or
12        no.
13   A    No.
14   BY MR. LEVIN:
15   Q    Do you know that, at some point in time,
16   they entered their appearance on your behalf in the
17   Eastern District of Louisiana?
18        MR. BARR:  Objection to form.
19        THE INTERPRETER:  This is the
20        interpreter speaking.  Again, when you said
21        "enter an appearance" --
22        MR. LEVIN:  Oh, I'm sorry.
23   BY MR. LEVIN:
24   Q    They informed the Court that they
25   represented you in the -- strike that.

1         Are you aware that, at one point in
2    time, Alston & Bird informed Judge Fallon in a
3    courtroom in the Eastern District of Louisiana in
4    New Orleans that they represented BNBM?
5         MR. BARR:  You may answer that yes or
6         no.
7    A    Yes.
8    BY MR. LEVIN:
9    Q    And what was the circumstances that they
10   represented you in connection with?
11        MR. BARR:  Objection -- well, you can
12        translate first.
13        (Translation.)
14        MR. BARR:  If your understanding -- I'm
15        sorry, Sunny, are you done?
16        THE INTERPRETER:  I'm translating your
17        objection now.  Go ahead.
18        MR. BARR:  If your understanding is
19        based upon communications with counsel, I direct
20        you not to answer.
21   A    I cannot answer this question.
22   BY MR. LEVIN:
23   Q    When did they cease representing you?
24        MS. HAQUE:  Object to form.
25   A    I don't recall the accurate time.

1    BY MR. LEVIN:
2    Q    Do you remember the year?
3    A    2015.
4    Q    Did you, sir, ever meet with any lawyers at
5    Hogan Lovells?
6         MR. BARR:  You can answer that yes or
7         no.
8    A    Yes.
9    BY MR. LEVIN:
10   Q    And when was that, sir?
11   A    In 2009.
12   Q    And under what circumstances did you meet
13   with them?
14   A    To discuss whether to hire them as the
15   attorney of BNBM.
16   Q    Were they representing Taishan at that time?
17   A    No.
18   Q    How did you arrive -- strike that.
19        Did you hire Hogan Lovells in 2009?
20   A    Yes.
21   Q    So that Hogan Lovells represented BNBM in
22   2009?
23   A    Yes.
24   Q    Did they also represent CNBM in 2009?
25   A    I don't know.

1    Q    Did they also represent Taishan in 2009?
2    A    I don't know.
3    Q    Is that the -- "I don't know" caused by the
4    fact that Mr. Barr has told you about the
5    attorney-client privilege?
6         MR. BARR:  Let the record reflect I have
7         not given any instructions with respect to
8         privilege in respect of any of the last series
9         of questions.
10        MR. LEVIN:  I understand.  I agree.  I
11        meant the fact of attorney-client privilege.
12        Let me clear it up.
13        THE WITNESS:  Reinterpret the question.
14        MR. LEVIN:  Let me -- let me rephrase
15        the question and withdraw that question.
16   BY MR. LEVIN:
17   Q    Did Joe Cyr tell you that he was
18   representing Taishan at the time that you spoke with
19   him?
20        MR. BARR:  Objection to the form of the
21        question and lacks foundation.
22        You may answer, though.
23   A    No, he didn't tell me that.
24   BY MR. LEVIN:
25   Q    Did you know whether or not he represented

1  CNBM at that time?

2      A    I don't know.

3      Q    How did Joe Cyr come to you?  Did he -- was

4  he recommended by someone?

5      A    The legal department of the company

6  voluntarily approached them.

7      Q    How long did Joe Cyr represent BNBM?

8          MR. BARR:  Objection to the form of the

9      question, lack of foundation.

10     A    I don't remember the accurate time.

11  BY MR. LEVIN:

12     Q    Don't tell me what he said, but did he give

13  you advice with regard to the litigation in the United

14  States involving defective drywall?

15         MR. BARR:  You may answer that yes or

16      no.

17     A    Yes.

18  BY MR. LEVIN:

19     Q    And did you act pursuant to the advice that

20  he gave you?

21         MR. BARR:  I'm going to direct the

22      witness not to answer.

23         (Translation.)

24         MR. BARR:  I'm directing the witness not

25      to answer.

1  BY MR. LEVIN:

2      Q    During the period that Joe Cyr represented

3  you, was a default judgment taken against your company

4  in the United States District Court for the Eastern

5  District of Louisiana?

6          MR. BARR:  Objection to the form.

7          MR. LEVIN:  Let me just consult with

8      my -- oh, go ahead.

9          MR. BARR:  You may answer.

10         THE WITNESS:  Can you repeat the

11      interpretation?

12         (Translation.)

13     A    Against our company?

14  BY MR. LEVIN:

15     Q    Is that a question, sir?

16     A    I don't recall.  I'm not sure.

17         MR. BARR:  Okay.  You wanted to consult

18      with your team?

19         MR. LEVIN:  What's that?

20         MR. BARR:  You wanted to consult with

21      your team?

22         MR. LEVIN:  Yeah, I -- if you just give

23      me five minutes, I'll know where we're going for

24      the rest of the day.

25         MR. BARR:  Okay.

1          THE VIDEOGRAPHER:  We're now off the

2      record at 4:09.

3          (Recess taken, 4:09 p.m. to 4:27 p.m.)

4          THE VIDEOGRAPHER:  We're now back on the

5      record.  The time is 4:27.

6          (B:7/8/15-7/11/15 Exhibit 96 marked.)

7          MS. DUGGAN:  Plaintiffs are offering

8      into the record Exhibit 96.  And we have copies

9      for the witness and copies for counsel, as well

10      as a copy for the interpreter.

11         This is a binder that contains a summary

12      chart of Beijing New Building Material Public

13      Limited Company sales contracts and shipments of

14      gypsum drywall to the United States of America.

15         We are presenting the chart pursuant to

16      Federal Rule of Evidence 1006.  The chart

17      references Bates numbers of documents produced

18      in this litigation, and the supporting

19      documentation is attached to the chart.

20         (Comments off the stenographic record.)

21  BY MR. LEVIN:

22     Q    Sir, have you seen these documents before

23  today?

24         MR. BARR:  Just note for the record that

25      there are obviously a large number of documents,

1      and they all pertain to sales, but --

2  BY MR. LEVIN:

3      Q    Have you seen any of these documents before

4  today?

5      A    I've seen part of the documents.

6          (Pause.)

7          MR. LEVIN:  Has he answered the

8      question?

9          MR. BARR:  He said, "I've seen part of

10      the documents."

11         MR. LEVIN:  That's fine.

12  BY MR. LEVIN:

13     Q    And are you aware, sitting here today, of

14  the companies that you sold your product to in the

15  United States?

16         MR. BARR:  Object to the form of the

17      question, mischaracterizes the documents.

18     A    I know that in the year 2005 and 2006 --

19         THE INTERPRETER:  The interpreter needs

20      to clarify with deponent as whether "customer"

21      he was referring to in his answer is plural or

22      singular in form.

23         (Translation.)

24         THE INTERPRETER:  Here is deponent's

25      answer, upon clarification.

1    A    I know that in the year 2005 and 2006, there
2    were customers from the United States voluntarily
3    approached our company and purchased gypsum board from
4    our company.
5    BY MR. LEVIN:
6    Q    Sir, whether the company approaches you
7    voluntarily or involuntarily, you're in business to
8    sell your product and make a profit, are you not?
9    A    Correct.
10    Q    And what companies did you sell your product
11    to?
12    A    We have sold our products to a few
13    companies.  To my recollection, there was a company
14    called EAC, another called Davis, and another called
15    Great Western, et cetera.  If you would like to know
16    the accurate information, please show me the list --
17        MR. LEVIN:  Well, let's mark for --
18    A    -- of the companies.
19        MR. LEVIN:  -- identification
20    Exhibit 110.
21        (B:7/8/15-7/11/15 Exhibit 110 marked.)
22        MS. DUGGAN:  Exhibit 110 will be handed
23    to the witness, to counsel for BNBM and CNBM and
24    Taishan, as well as the interpreter.  It is a
25    translation of BNBMPLC-E-000819 to 820.  The

1    translation was prepared by the PSC.  The
2    defendants have not had an opportunity to review
3    it.
4        Following the PSC's translation is a
5    machine translation provided by BNBM and a
6    document in Chinese from Bates number
7    BNBMPLC-E-0000819 to 820.
8    BY MR. LEVIN:
9    Q    Have you seen this document before today?
10    A    No.
11    Q    Well, this document was produced by
12    BNBM Plc.  It's in Chinese.  And do you recognize it
13    as the type of document that would come from BNBM's
14    files?
15    A    I believe so.
16    Q    And is this document prepared in the regular
17    course of business of BNBM?
18        MR. BARR:  Objection to the form.
19    A    I do not have requirements to my staff that
20    are under me for matters such as this.
21    BY MR. LEVIN:
22    Q    Well, who prepared this document, to your
23    knowledge?
24    A    I don't know.
25        MR. LEVIN:  Okay.  Let's go to

1    Exhibit 138.
2        (B:7/8/15-7/11/15 Exhibit 138 marked.)
3        MS. DUGGAN:  Plaintiffs offer into the
4    record Exhibit 138, which is a translation of
5    BNBMPLC-E-0029161.  This is a chart that was
6    translated by the PSC, titled "Statistical
7    Spreadsheet of Gypsum Boards Exported to the
8    U.S. in the Year 2006 by the International
9    Business Department."
10        Following the PSC's translation is a
11    machine translation and a document produced in
12    native format by BNBM with Bates numbers
13    BNBMPLC-E-0029161.
14    BY MR. LEVIN:
15    Q    Sir, have you seen this document before?
16    A    I have seen it.
17    Q    And does the document reflect accurately the
18    information contained on it?
19    A    It's basically accurate.
20    Q    Well, does the accurate -- does the document
21    contain the information of all of the sales documents
22    contained in Exhibit 96?
23        MR. BARR:  I'm going to object and
24    direct the witness not to answer that.  How
25    could he possibly respond whether it's all the

1    documents?  Please, I'll ask you to rephrase the
2    question.  I'm going to direct him not to answer
3    that.
4    BY MR. LEVIN:
5    Q    Do you agree, sir, that the shipments
6    reflected on Exhibit 138 and the information contained
7    in Exhibit 110 reflect your product shipped to the
8    United States?
9    A    Where is Exhibit 110?
10        (Document review.)
11    A    Yes.
12    BY MR. LEVIN:
13    Q    And, sir, is it true that BNBM sold and
14    shipped this product to Triorient Trading Inc.?
15        MR. BARR:  Objection to the form, lacks
16    foundation, assumes facts not in evidence.
17        (Translation.)
18        MR. LEVIN:  Exhibit 110 may help you,
19    sir.
20        MR. BARR:  He's already testified that
21    he had never seen Exhibit 110 before.
22        MR. LEVIN:  But he -- come on.
23        MR. BARR:  No, come on.
24        MR. LEVIN:  Come on.  I'm not -- I'm
25    saying it may help him.  He can say it doesn't

Page 519

1    help him.  Listen -- let's go off the record.
2         THE VIDEOGRAPHER:  This is the end of
3    Tape 7.  We're now off the record at 4:43.
4         (Discussion off the record.)
5         THE VIDEOGRAPHER:  This is the beginning
6    of Disc 8.  We're now back on the record.  The
7    time is 4:46.
8         MR. BARR:  As I stated to Mr. Levin when
9    we were off the record, we are prepared to
10   stipulate that the contracts that are part of
11   Exhibit 96 were entered into with the entities
12   reflected there, and that this chart that is
13   part of Exhibit 138 accurately reflects the
14   client name, the amounts of the shipment and the
15   fact that the drywall ultimately ended up, you
16   know, in the United States.
17        MR. LEVIN:  And that you will take the
18   sales receipts this evening and let us know
19   tomorrow morning whether you will stipulate that
20   they are authentic, they're business records,
21   they haven't been changed in the process, and
22   that they're admissible as such.
23        MR. BARR:  Well, in accordance with what
24   we have been agreeing to, we will endeavor to
25   look at them and we will come back and be

Page 520

1    prepared to make the stipulation I feel like I
2    can make at the time.
3         MR. LEVIN:  Okay.  Let me show you
4    Exhibit 144.
5         (B:7/8/15-7/11/15 Exhibit 144 marked.)
6         MS. DUGGAN:  Exhibit 144 is a deposition
7    transcript, videotaped deposition of BNBM of
8    America Inc., registered agent, Donald H.
9    Wilson Jr.  The date of the deposition is
10   December 12, 2011.
11        Attached to the deposition transcript is
12   Exhibit 2 to the BNBM America deposition, which
13   is a letter dated December 5, 2011, from
14   Donald H. Wilson to Ervin Gonzalez from Colson
15   Hicks Eidson, with documents attached to that
16   letter.
17   BY MR. LEVIN:
18   Q    Sir, have you seen this deposition
19   transcript before I handed it to you today?
20   A    I have not.
21   Q    If you look at the exhibits to the
22   deposition, are you familiar with them?
23   A    Exhibits?  Which one should I look at?
24        MR. BARR:  Can you translate, please?
25        From here (indicating) to the end of the

Page 521

1    exhibit.
2         (Translation.)
3    BY MR. LEVIN:
4    Q    Have you seen those materials before today?
5         MR. BARR:  Just give him a moment to
6    look through it.
7         MR. LEVIN:  I'm sorry.  It may be a good
8    idea to let him look at it over the recess.
9         MR. BARR:  (Shakes head.)
10        Next week.
11        MR. LEVIN:  Oh, that's your position.
12   A    I have not seen the document.
13   BY MR. LEVIN:
14   Q    Are you familiar with BNBM America?
15   A    I'm not familiar.
16   Q    I want you to look at the document attached
17   thereto that is the 2004 For-Profit Corporation Annual
18   Report of the Secretary of State of Florida.
19        MR. BARR:  Can you show me what it looks
20   like, Arnie, so I know which one I'm looking for
21   here?
22        MR. LEVIN:  Mike (indicating).
23        MR. BARR:  In light of the copies here
24   seem to be a little cut off -- you said 2004?
25        MR. LEVIN:  Yes.  I gave it to you,

Page 522

1    2004.
2         MR. BARR:  Okay.  I've got it.  The
3    witness has it in front of him now.
4    BY MR. LEVIN:
5    Q    You recognize what this is?
6    A    I don't know.
7    Q    It indicates the entity is BNBM of
8    America Inc.  Have you ever heard of that corporation?
9    A    No.
10   Q    Do you know whether that corporation is
11   still in existence?
12   A    I don't know.
13   Q    Do you recognize the officers and directors
14   that are listed in that corporation?
15        MR. BARR:  And I'm just pointing out to
16   him, since it's in English, there's officers and
17   directors.
18        MR. LEVIN:  That's fine.
19   A    Not all of them that I can recognize.
20   BY MR. LEVIN:
21   Q    Well, let's start with the first one.
22        Song, do you recognize him?
23   A    Yes.
24   Q    Who is he?
25   A    The chairman of the board of directors of

Page 523

1  CNBM Group.
2     Q    Does he hold any other titles?
3     A    I don't know.
4     Q    What's his -- what's his address on this
5  particular document?
6          MR. BARR:  Objection, the document
7      speaks for itself.
8     A    I'd like to restate, that even though the
9  spelling and pronunciation of the name is as same as
10 the chairman of the board, Mr. Song Zhiping, but I'm
11 not sure what states here is referring to him.
12 BY MR. LEVIN:
13    Q    Is the address in the United States?
14         MR. BARR:  Objection, the document
15     speaks for itself.
16 BY MR. LEVIN:
17    Q    Who is listed --
18    A    I don't understand it.
19    Q    You don't understand that the document has a
20 Tampa, Florida address?  Is that what you're telling
21 us?
22         MR. BARR:  Hold on.  I'm going to object
23     to the form of the question.  Further, it's a
24     document in English, not a document in Chinese.
25         The document obviously has whatever

Page 524

1      information that it has on it, and I don't think
2      there's any dispute that it says what it says.
3  BY MR. LEVIN:
4     Q    Underneath Chairman Song is another
5  individual.  Do you recognize his name?
6     A    Yes.
7     Q    And who is that, sir?
8     A    Cao Jianglin.
9     Q    And does he have a position in the -- with
10 CNBM, CNBM Group, BNBM and/or BNBM Group?
11    A    He's a president of CNBM Company, Limited.
12    Q    Does he have any position with BNBM?
13    A    He's a chairman of supervisors committee of
14 BNBM.
15    Q    And Mr. Song, does he have positions with
16 both CNBM and BNBM?
17    A    Chairman Song does not have a position in
18 BNBM.
19    Q    Now, going down, do you recognize the next
20 name?
21    A    No.
22    Q    Going down further, do you recognize the
23 next name?
24    A    No.
25    Q    And going down third -- going down further

Page 525

1  and lastly, do you recognize that name?
2     A    No.
3     Q    Isn't it a fact that all the officers and
4  directors of BNBM of America Inc. are Chinese
5  nationals?
6          MR. BARR:  Objection to the form and
7      lack of foundation.
8          MR. LEVIN:  Go ahead.
9     A    I can't make that decision because I only
10 know two of these people.
11 BY MR. LEVIN:
12    Q    Okay.  Well, you don't know what you don't
13 know, right?
14         MR. BARR:  It's 5:00.  Let's keep going.
15         THE INTERPRETER:  This is the
16     interpreter speaking.  When counsel said --
17         MR. BARR:  Ask a question, please.
18         THE INTERPRETER:  -- "Chinese
19     nationals," the interpreter interpreted into
20     "Chinese with Chinese citizenship."
21         MR. LEVIN:  Yes.
22         THE INTERPRETER:  Is that a correct
23     translation?
24         MR. LEVIN:  Yes, that's the correct
25     interpretation.

Page 526

1          THE INTERPRETER:  Thank you.
2          MR. LEVIN:  It's not their ethnicity.
3  It's their nationality that I'm interested in.
4          MR. BARR:  Is there a question for the
5      witness that you can pose, please?
6          MR. LEVIN:  Yeah, I guess so.
7  BY MR. LEVIN:
8     Q    At least as to the two that you do know,
9  they are Chinese nationals, aren't they?
10    A    Yes.
11    Q    And they are both connected either with
12 CNBM, BNBM, or both BNBM and CNBM?
13         MS. DALEY:  Objection, form.
14         MR. BARR:  Objection to the form and
15     misstates the witness' prior testimony.
16         MR. LEVIN:  This may be a good time to
17     stop for this evening and I'll pick it up
18     tomorrow, pick this document, and then we'll
19     roll on to a few more things.  And off the
20     record.
21         THE VIDEOGRAPHER:  This deposition
22     consists of eight discs.  We're now off the
23     record at 5:02.
24         (Proceedings recessed at 5:02 p.m.)
25

Page 527

REPORTER'S CERTIFICATE

1
2
3      This transcript is valid only for a transcript
4  accompanied by my original signature and original
5  required seal on this page.
6      I, Michael E. Miller, Certified Court Reporter
7  (LA Certificate #27009) in and for the State of
8  Louisiana, as the officer before whom this testimony
9  was taken, do hereby certify that YU CHEN, after
10  having been duly sworn by me upon authority of
11  R.S. 37:2554, did testify as herein before set forth
12  in the foregoing 221 pages; that this testimony was
13  reported by me in the stenotype reporting method, was
14  prepared and transcribed by me or under my personal
15  direction and supervision, and is a true and correct
16  transcript to the best of my ability and
17  understanding; that the transcript has been prepared
18  in compliance with transcript format guidelines
19  required by statute or by rules of the board, and that
20  I am informed about the complete arrangement,
21  financial or otherwise, with the person or entity
22  making arrangements for deposition services; that I
23  have acted in compliance with the prohibition on
24  contractual relationships, as defined by Louisiana
25  Code of Civil Procedure Article 1434

Page 528

1  and in rules and advisory opinions of the board;
2  that I have no actual knowledge of any prohibited
3  employment or contractual relationship, direct or
4  indirect, between a court reporting firm and any party
5  litigant in this matter nor is there any such
6  relationship between myself and a party litigant in
7  this matter.  I am not related to counsel or to the
8  parties herein, nor am I otherwise interested in the
9  outcome of this matter.
10
11      Signed this ___ day of _____, 2015.
12
13
14      _____
15      MICHAEL E. MILLER, FAPR, RDR, CRR
16      Certified Court Reporter
17      LA Certified Court Reporter #27009
18
19
20
21
22
23
24
25

Page 529

ACKNOWLEDGMENT OF DEPONENT

1
2
3      I,_____, do hereby
4  certify that I have read the foregoing pages and
5  that the same is a correct transcription of the
6  answers given by me to the questions therein
7  propounded, except for the corrections or changes in
8  form or substance, if any, noted in the attached
9  Errata Sheet.
10
11      _____
12      YU CHEN            DATE
13
14  Subscribed and sworn to before me this
15  _____ day of _____, 20 _____.
16  My commission expires: _____
17
18  Notary Public
19
20
21
22
23
24
25

Page 530

1       _ _ _ _ _ _ _
2          ERRATA
3       _ _ _ _ _ _ _
4  PAGE  LINE   CHANGE
5  ____  ____  _____
6  ____  ____  _____
7  ____  ____  _____
8  ____  ____  _____
9  ____  ____  _____
10  ____  ____  _____
11  ____  ____  _____
12  ____  ____  _____
13  ____  ____  _____
14  ____  ____  _____
15  ____  ____  _____
16  ____  ____  _____
17  ____  ____  _____
18  ____  ____  _____
19  ____  ____  _____
20  ____  ____  _____
21  ____  ____  _____
22  ____  ____  _____
23  ____  ____  _____
24  ____  ____  _____
25  ____  ____  _____