UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO:<br><br>*Germano v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.*, Case No. 09-6687 (E.D. La.);<br><br>*Gross v. Knauf Gips, KG*, Case No. 09-6690 (E.D. La.);<br><br>*Wiltz v. Beijing New Building Materials Public Limited Co.,* Case No. 10-361 (E.D. La.);<br><br>*Amorin v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.*, Case No. 11-1672 (E.D. La.);<br><br>*Amorin v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.*, Case No. 11-1395 (E.D. La.); and<br><br>*Amorin v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.*, Case No. 11-1673 (E.D. La.). | |

**TAISHAN'S REPLY IN SUPPORT OF MOTION TO DECERTIFY CLASS**

I.       **INTRODUCTION**

Taishan's original decertification motion from May 2015 explained how governing Fifth Circuit and Supreme Court authorities barred certification in July 2014 when the PSC sought a lump-sum, tort-damages recovery class with no evidence to satisfy the Rule 23 requirements. (Rec. Doc. 18879-1). Taishan's recent joinder to CNBM's decertification motion reiterated those dispositive cases and also explained how subsequent developments have made this litigation even

less suitable for class treatment. (Rec. Doc. 20632). The CNBM and BNBM entities made additional decertification arguments. (Rec. Doc. 20624-3; Rec. Doc. 18883).

The PSC's response to all that is remarkable. They fail to address any of the governing authorities that plainly precluded certification back in 2014. Yet rather than meet their burden on a decertification motion to prove with evidence that their class satisfies the Rule 23 requirements, the PSC urges the Court to disregard the current certification challenges simply because the Court, in heavy reliance on the PSC's briefing, improperly granted certification two and half years ago. They base their argument on the false assertion that, as to the "central findings of the Court's 2014 class certification order, nothing has changed from 2014 to today." (PSC Opp. at 1). As the Court knows, *everything* has changed since the PSC last tried to satisfy Rule 23 in 2014.

Most significantly, the PSC has reduced the issues for proposed class treatment to a single issue (remediation damages) and introduced a host of new issues for individualized treatment. In addition, having failed to present expert testimony on damages before certification, the PSC later submitted designated-expert testimony proffering a damages formula that changed many times in response to criticism until finally being revealed as fatally flawed at the June 9, 2015 hearing.

The PSC did not come close to satisfying Rule 23 in July 2014. They are even farther from it today. There can be no predominance of common issues over individual issues where the PSC openly admits that every single issue requires individualized treatment. Predominance also fails where the PSC's formula for calculating damages for remediation damages applies to only two-thirds of the purported class, inaccurately calculates remediation damages, and still requires individual assessment of each claim to finalize the inaccurate number. There can be no class-action superiority where the PSC has not considered state-law differences and where each individual

named plaintiff can fairly adjudicate damages allegedly worth $100,000 or more by presenting case-specific evidence in a case-specific mini-trial.

Far from meeting their Rule 23 burden, the PSC fails to explain how this is even "class" litigation at all. It is not. The alleged "class" is just the last vestige of an illegal expediency that the PSC put in place to try to get a quick billion-dollar lump-sum judgment in the absence of an active adversary. But the Court has a duty to now close that invalid detour by decertifying the class and proceeding with individual litigation. *Gene & Gene, L.L.C. v. BioPay, L.L.C.*, 624 F.3d 698, 703 (5th Cir. 2010). Regardless of the initial class certification circumstances, Rule 23 and Fifth Circuit law require decertification now.

## II. THIS CLASS-DECERTIFICATION MOTION REQUIRES THE SAME LEGAL STANDARD AS THE ORIGINAL CLASS-CERTIFICATION MOTION.

"Rigorous" legal standards require the Court to take a fresh look at decertification to see whether the PSC has proven with evidence all of the Rule 23(a) and (b)(3) requirements:

- The Court has a continuing "duty of monitoring its class decisions in light of the evidentiary development of the case." *Richardson v. Byrd*, 709 F.2d 1016, 1019 (5th Cir. 1983).

- When "it becomes clear that the district court needs to alter, amend, or even decertify the class, the district court can and should do so under Rule 23(c)(1)(C)." *Gene & Gene, L.L.C. v. BioPay, L.L.C.*, 624 F.3d 698, 703 (5th Cir. 2010).

- "The party who seeks to maintain a lawsuit as a class action bears the burden of producing a record demonstrating the continued propriety of maintaining the class action." *Reyes v. Julia Place Condominium Homeowners Association, Inc.*, 2017 WL 430056 (E.D. La. Jan. 31, 2017) (Barbier, J.).[1]

---

[1] *Accord Mazzei v. Money Store*, 829 F.3d 260, 270 (2d Cir. 2016) (holding that plaintiff "retained the burden to demonstrate that these [Rule 23] requirements were satisfied"); *Marlo v. United Parcel Service, Inc.*, 639 F.3d 942, 947 (9th Cir. 2011) (holding that "as to the class-decertification issue, [the class] bears the burden of demonstrating that the requirements of Rules 23(a) and (b) are met"); Rubinstein, Newberg on Class Actions § 7:22 (5th ed. 2016 update) ("[N]o matter which party triggers the rigorous analysis, the analysis itself is the same. The burden of demonstrating compliance with the requirements of Rule 23 remains with the plaintiff.").

3

*See generally* Taishan's Mot. to Decertify Class, Rec. Doc. 18879-1 at 5-6; CNBMB's Mot. to Decertify Class, Rec. Doc. 20624-3 at 10-12. The PSC's own cited authority shows decertification of two classes after Judge Barbier's rigorous analysis of the evidence under Rule 23(c)(1)(C). *See Reyes*, 2017 WL 430056 at *2 (cited in PSC Opp. at 9).

The PSC cannot use default to extinguish the Court's duty to conduct its own rigorous analysis or to lower the PSC's own class-decertification burden of proof. (PSC Opp. at 2). Rule 55 has nothing to do with Rule 23—as the PSC itself admitted in its original certification motion and the Court ruled in its certification FOFCOL: "notwithstanding the entry of default judgment, courts must formally address whether class certification is appropriate under a rigorous Rule 23 analysis." (PSC certification motion, Rec. Doc. 17883-1 at 16 (citing *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006), and *Davis v. Hutchins*, 321 F.3d 641, 648-49 (7th Cir. 2003)); (FOFCOL, Rec. Doc. 18028 at 22 (same)). Nor is Taishan's non-participation in the original certification proceeding legally relevant because, regardless of opposition, a district court has an independent "duty" to ensure that the Rule 23 requirements are satisfied. (Rec. Doc. 18028 at 22 ("Thus, the Court will engage in rigouours [sic] analysis of Rule 23's preprequisites [sic].")).

## III. THE PSC DOES NOT DISPUTE THE DISPOSITIVE GOVERNING AUTHORITIES THAT BARRED CERTIFICATION IN 2014.

Taishan has repeatedly presented to the Court and the PSC the binding Fifth Circuit and Supreme Court precedents that precluded the PSC's class in 2014 and that require decertification in 2017. *See* Rec. Doc. 18879-1; Rec. Doc. 19546; Rec. Doc. 20632. But the PSC's decertification opposition responds to none of those dispositive authorities.

The PSC does not mention *Robertson v. Monsanto Co.*, which holds that the Rule 23(b)(3) superiority requirement "cannot be satisfied" when tort liability is already determined and the class consists of only parties already named in the suit. 287 F. App'x 354, 363 (5th Cir. 2008). Assuming

4

that preliminary defaults establish liability as the PSC claims, *Robertson* applies directly.[2] When individualized tort damages are the only issue and no proposed class members are absent, "there is little to be gained from invoking" class action features, and a class is not superior as a matter of law.[3] *Id*. *Robertson* is a pure Rule 23(b) superiority decision and cannot be distinguished because it involved personal-injury damages, as the PSC has suggested in the past. Here, the PSC proposes an individual mini-trial for each class member, so there is nothing to be gained from overlaying a more complicated—and thus inferior—class template.

The PSC also does not mention *Castano v. Am. Tobacco Co.*, which bars class certification for several reasons. First, *Castano* held that "superiority is lacking" where (like here) the "most compelling rationale for finding superiority in a class action—the existence of a negative value suit—is missing." 84 F.3d 734, 748 (5th Cir. 1996). Here, almost every claimant has counsel and virtually all seek more than $100,000 (often much more), with strong financial incentives for pursuing an individual action. Second, *Castano* also held that a district court abuses its discretion by certifying a class without satisfying the duty to "consider how variations in state law affect predominance and superiority." *Id.* at 741.[4] Here, differences in state damages laws abound on topics such as permissible damage categories and remediation-proof methods. (*See* Rec. Doc. 18879-1 at 8-10; Rec. Doc. 20624-3 at 18-24). But in 2014, the PSC provided no state-law-

---

[2] Defendants have argued that liability may not be established where a court has made only entries of preliminary default. *See United States v. Borchardt*, 470 F.2d 257 (7th Cir. 1972).

[3] The Court explicitly excluded absent class members by defining the class as "[a]ll owners of real property in the United States, who are named Plaintiffs on the complaints in *Amorin*, *Germano*, *Gross*, and/or *Wiltz* (*i.e.*, not an absent class member) . . . ." (Rec. Doc. 18028 at 34).

[4] The Fifth Circuit held that "[n]othing in the record demonstrates that the court critically analyzed how variations in state law would affect predominance," and that [t]he court failed to perform its duty to determine whether the class action would be manageable in light of state law variations." *Castano*, 84 F.3d at 743.

5

variation analysis, and the certification FOFCOL provided no analysis of state-law variations. *See Castano*, 84 F.3d at 741 (holding that district court failed the "requirement that a court know which law will apply before making a predominance determination"). That complete neglect is even worse than the "inadequate" state-law treatment that required decertification in *Castano*. *Id.* at 743.[5]

The passing reference to state-law variations in the PSC's opposition brief does not satisfy *Castano*, but amounts to the same inadequate "cursory review of state law variations" that gives "short shrift to the defendants' arguments concerning variations." *Id.* at 742. The PSC fails to meet their state-law-variations burden with the unsupported assertion that "property damages are recoverable under each state's law" (Pl. Opp. at 21), just as the *Castano* plaintiffs failed with "the definitive proposition that state law does not vary enough in negligence, strict liability, or fraud to prevent certification." *Castano*, 84 F.3d at 743 n.16; *see also In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1300 (7th Cir.1995) (rejecting argument that laws "differ among the states only in nuance" and holding that "nuance can be important"). "Given the plaintiffs' burden [to satisfy Rule 23], a court cannot rely on assurances of counsel that any problems with predominance or superiority can be overcome." *Castano*, 84 F.3d at 742.

The very decision the PSC cites as "Fifth Circuit precedent" for "class-wide damages on a formulaic basis" squarely *rejected* a very similar property-tort estimation formula and affirmed the denial of class certification based on "the necessity of individualized damage calculations," which the Fifth Circuit identified as "the most important factor." *Corley v. Orangefield Indep. Sch. Dist.*,

---

[5] The PSC's citation to decisions from other circuits (PSC Opp. at 23) cannot reduce *Castano*'s binding authority barring certification (and requiring decertification) where the Court and the class fail to adequately address state-law variations in a multi-state class.

152 F. App'x 350, 355 (5th Cir. 2005) (citing *Bell Atlantic Corp. v. AT &T Corp.*, 339 F.3d 294, 306 (5th Cir. 2003)) (cited in PSC Opp. at 21).[6] Under *Corley*, there is a "failure in predominance" where (like here) "the injury to the landowners varies in substantial ways, depending on the value, character and location of the property." *Id.* Those property "variations . . . preclud[e] any mechanical calculation of damages," including a "per-foot" formula based on "an average" that "would necessarily yield a windfall to some landowners at the expense of others." *Id. Corley* controls this very similar property-tort situation, and forecloses the PSC from distinguishing personal-injury tort class cases and relying instead on inapplicable antitrust class decisions as they have tried in the past. *Cf. In re Katrina Canal Breaches Consol. Litig.*, 258 F.R.D. 128, 142 (E.D. La. 2009) (Duval, Jr., J.) (applying *Robertson* to property-damage case and holding that the "varying kinds and amounts of damages and the difficulty in determining the loss sustained by any property make a class action an inappropriate vehicle for this litigation").

The PSC's opposition brief also does not address the Fifth Circuit's landmark decisions establishing the "general rule" against class treatment of mass tort damages. *Steering Committee v. Exxon Mobil Corp.*, 461 F.3d 598, 603 (5th Cir. 2006); s*ee also Cimino v. Raymark Indus., Inc.*, 151 F.3d 297, 316-20 (5th Cir. 1997); *In re Fibreboard Corp.*, 893 F.2d 706, 712 (5th Cir. 1990). Those governing decisions are congruent with *Castano*, which highlighted that "historically, certification of mass tort litigation classes has been disfavored." 84 F.3d at 746. The Court must decertify this class because these class members "have not demonstrated that this mass tort has

---

[6] The PSC relies on *Corley* and *Bell Atlantic* for general language about the use of damages formulas (PSC Opp. at 21 n.13), but fails to address that in both decisions, the Fifth Circuit held that the formulas used were not "suitable" (*Corley*) and "inadequate" (*Bell Atlantic*) for the same reasons that the PSC's remediation damages formula is inadequate here.

any exceptional features that warrant departing from the general rule and treating it as a class action." *In re Steering Committee*, 461 F.3d at 604.

Following the *Corley* pattern of citing to a case for a general proposition while ignoring the opinion and holding, the PSC gives short shrift to *Wal-Mart Stores v. Dukes*, in which the Supreme Court "disapprove[d]" a "novel project" that used "a sample set of class members" and multiplication of an "average" to conduct a "Trial by Formula." 584 U.S. at 367. But the PSC ignores completely *In re Chevron U.S.A., Inc.*, in which the Fifth Circuit barred extrapolation from mass tort bellwether trials without "competent, scientific, statistical evidence" that the bellwethers are representative of the larger group of cases. 109 F.3d 1016, 1020 (5th Cir. 1997). Both decisions preclude the PSC's resort to the earlier *Germano* and *Hernandez* trials as supporting class certification for these later cases.

Finally, the PSC's opposition brief also does not acknowledge (1) their burden to prove *with evidence* "that the proposed class satisfies the requirements of Rule 23," or (2) the Court's independent duty to "conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class." *See M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 837 (5th Cir. 2012) (citing *Wal-Mart Stores v. Dukes*, 564 U.S. 338 (2011), and *Castano*, 84 F.3d at 740). Neither occurred here. The PSC failed to meet their evidentiary burden *before* the class was certified—most obviously by not providing with their certification motion any expert testimony "to establish that damages could be measured on a classwide basis." *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1431, n.4 (2013).[7]

---

[7] As discussed below, when the PSC finally presented expert testimony *after* certification, the defendants revealed the many fatal problems with that rapidly evolving evidence. The PSC now tries to rely on new testimony from a different expert, which the Court should strike. (Rec. Doc. 20619 (Defs' Motion to Strike)).

And the class certification FOFCOL, which largely mirrors the PSC's proposed FOFCOL, does not display the necessary rigorous analysis.

Over the last two years, all of the defendants have repeatedly cited the foregoing cases. So the PSC's failure to address *any* of them head on is telling. Even if nothing had changed since July 2014 as the PSC falsely claims, those governing decisions still undisputedly require decertification.

## IV.    DEVELOPMENTS SINCE JULY 2014 HAVE MADE CLASS CERTIFICATION EVEN MORE IMPROPER.

But so much *has* changed since the PSC moved for class certification more than two years ago—which makes decertification even more required for many independent Rule 23 reasons. A class should be decertified when "subsequent developments" show that each class member's claim must "be assessed on an individual, case-by-case basis," which thus "calls into question the district court's original decision to certify the [plaintiffs'] class." *Culpepper v. Irwin Mortg. Corp.*, 491 F.3d 1260, 1275–76 (11th Cir. 2007). The PSC's post-certification changes and admissions now make it impossible for them to meet the requirement to "establish that 'their claims can productively be litigated at once.'" *M.D. ex rel. Stukenberg*, 675 F.3d at 840 (quoting *Wal-Mart Stores*, 564 U.S. at 350).

The most significant change is the PSC admission that they now seek "class" treatment for only remediation damages and that each class member must prove individually all the other damages categories. Even more, the PSC acknowledges that only two-thirds of the purported class is subject to class treatment for remediation damages *and* even those claims must undergo individualized inquiries related to ownership, product identification, and setoff after application of the PSC's inadequate and fatally flawed remediation damages formula. That tectonic shift makes

9

it impossible for the PSC to prove Rule 23(b) predominance because more than 15 individual issues now predominate over one allegedly partial common issue:

| ALLEGED PARTIAL COMMON ISSUE | UNDISPUTED INDIVIDUAL ISSUES |
|---|---|
| Remediation damages | Claim ownership<br>Product identification<br>Current property ownership<br>Property square footage<br>Alternative living expense<br>Loss of use and enjoyment<br>Personal property loss<br>Diminution in value<br>Short sale/foreclosure loss<br>Lost rent/business<br>Property tax reduction<br>Setoff from other recoveries<br>Attorneys' fees<br>Insurance<br>Utilities and other property maintenance<br>Past and future repair costs<br>Bankruptcy |

Beyond sheer weight of numbers, the PSC's move to toward individual issues and individual proof defeats predominance as a matter of Fifth Circuit law. A critical predominance factor is how the case will be tried, and thus a district court abuses its discretion when "its predominance inquiry did not include consideration of how a trial on the merits would be conducted." *Castano*, 84 F.3d at 740. Like the district court in *Castano*, the PSC Opposition's predominance section fails to consider how the claims will be adjudicated. (PSC Opp. at 13-14). The PSC's fatal omission is particularly glaring because they did set out a trial plan in their Supplemental Brief in support of Class Damages. (Rec. Doc. 20613-2). But that plan proves the predominance of *individual* issues because it involves "bellwether" damages hearings not involving class representatives, a "process" to establish "each Class Member's remediation claims," a "damages hearing on the full measure of non-remediation damages for a current owner

10

class member"; and a "damages hearing on the full measure of *former owner* damages for a class member." *Id.* at 12-13 (emphasis in original). The PSC proposes trial of those other damages categories, as well as those individual issues related to remediation damages that remain after application of their flawed remediation damages formula (*e.g.*, product ID, square footage, setoffs). All those issues predominate over the alleged partial common issue of remediation damages that affects only two-thirds of the class.

Instead of conducting a proper predominance analysis based on how the issues will be tried, the PSC argues that the single issue of the need for remediation damages can satisfy both commonality and predominance. But those are two different questions that require two different analyses. As the Fifth Circuit has explained, "The question of predominance is more demanding than the Rule 23(a) requirement of commonality." *In re Wilborn*, 609 F.3d 748, 755 (5th Cir. 2010) (citations omitted). When the district court in *Castano* took the approach that "any common issue would predominate if it were common to all the individual trials," the Fifth Circuit found an abuse of discretion because that "would write the predominance requirement out of the rule." 84 F.3d at 745.

But submerging predominance into commonality is exactly what the PSC is doing here. The PSC's Rule 23(a) commonality discussion cites to *Wal-Mart Stores* to claim that "class member entitlement to property damages . . . was a common issue." (PSC Opp. at 9). The PSC then recycles that statement later in the Opposition, claiming "entitlement of class members to . . . property damages is the predominant issue in this case," which merely replaces "common" with "predominant" (PSC Opp. at 13). The PSC practices that same sleight of hand throughout their brief. They claim that "[c]lass certification turns on whether there are ***predominant*** issues that are amenable to ***class-wide evidence***." (PSC Opp. at 1 (emphasis added); *see also id.* (claiming that "a

11

predominant issue" is one "that could be resolved on a class-wide basis")). But susceptibility to class-wide evidence and class-wide resolution is the definition of ***commonality***, not predominance. *See Wal-Mart Stores*, 546 U.S. at 350 (holding that "claims must depend upon a common contention" and that "common contention, moreover, must be of such a nature that it is capable of classwide resolution"). *Castano* teaches that an issue is not predominant simply because it is allegedly common. In any adjudications here, entitlement to property damages would not be a predominant issue because of all the other individual issues precluding class certification.

In fact, entitlement to property damages, which the PSC now apparently defines as "remediation damages" (PSC Opp. at 1, 2), is not even a common issue—in at least two ways.[8] First, formulaic remediation damages is not common to the whole class because it does not include former property owners, which the PSC admits is "a substantial part of the class." (Rec. Doc. 20613-2 at 15). The PSC has "limited" the invalid remediation-damages formula to "1,969 properties," which is presumably their current list of current property owners. (Rec Doc. 20613-2, Exhibit B at ¶ 2 ("PSC Counsel have limited that list of buildings to 1,969 properties").[9] But in a class with 2,847 members, that leaves 878 former owners to whom formulaic remediation damages

---

[8] When the PSC moved for class certification in July 2014, the PSC said, and the Court subsequently adopted, that determination of "property damages" depends on "the same factual predicate as to the manufacturer of the defective product, product identification, the mechanism of damage occurring within class members' homes, the need for remediation, the scope of remediation, the square footage costs of accomplishing remediation, and alternative living expenses during remediation." (Rec. Doc. 17877-3 at 20-21; Rec. Doc. 18028 at 27). The PSC has since acknowledged that product identification and alternative living expenses are individualized issues that claimants may adjudicate on an individual trial basis.

[9] As noted in Taishan's pending motion to strike, Ronald Wright's December 2016 Declaration is improper and should not be considered by the Court. (*See* Rec. Doc. 20619-1).

would not apply.[10] An issue that doesn't apply to 31% of the class is not a common issue. *See Wal-Mart Stores*, 564 U.S. at 356 (reversing class certification where evidence did not show company-wide policy affecting all putative class members).

Second, remediation damages is actually not susceptible to class-wide resolution even for current property owners. With Taishan's liability determined by default, entitlement to property damages from Taishan would turn on individualized evidence that a specific plaintiff's specific property actually contained Taishan drywall, requiring analysis and confirmation of product ID. And even accepting the PSC's inadequate formula and assuming confirmatory evidence of Taishan product ID, the amount of any property damages for current owners would involve individualized evidence of square footage of the specific plaintiff's specific property, as the PSC trial plan admits. Although the PSC generally avoids any discussion of adjudication of the former owner cases, those claimants must presumably present evidence of actual remediation costs incurred and/or specific property valuation losses issues—precluding even a whiff of commonality. In short, the class members have no common issues, much less predominant ones.

## V.     THE CLASS DAMAGES FORMULA IS INADEQUATE.

In addition to the Rule 23 predominance and superiority failures, the Court must decertify the class because the PSC's remediation damages formula is "clearly inadequate." *Bell Atlantic*, 339 F.3d at 307. Class treatment is not suitable "where the calculation of damages is not susceptible to a mathematical or formulaic calculation, or where the formula by which the parties propose to calculate individual damages is clearly inadequate." *Id.* As in *Bell Atlantic* and other Fifth Circuit cases, the PSC's remediation damages formula "makes no effort to adjust for the variegated

---

[10] The PSC wrongly claims that their class has 3,512 members. (Rec. Doc. 20613-2 at p. 13). That number is the PSC's current list of all claimants, including the 665 Omni XX claimants, who, the PSC admits, "are *not* part of the certified class." *Id.* at 22 (emphasis in original).

nature" of the class members' properties. *Id.*; *accord Corley*, 152 F. App'x. at 355. The PSC's formula makes no effort to adjust for (i) property type; (ii) interior layout; (iii) amount of drywall; and (iv) fit and finish. The undisputed evidence establishes that those differences directly affect remediation cost. (June 9, 2015 Hearing Transcript at 125:3-126:1; 160:23-161:8; 161:17-162:11; 177:18-178:14; 179:5-8; 184:17-185:12; 188:12-25; 189:8-18; 190:5-23; 192:8-21; 193:25-194:8; 195:9-199:11; 202:5-205:8).[11] The PSC instead bases their formula on the false assumption that remediation costs depend solely on living-space square footage. (*See* December 2014 Supplemental Class Notice (Rec. Doc. 18086-18) ("Larger homes would be entitled to a higher recovery while smaller homes would be entitled to a lower recovery")). The Court's *Germano* ruling disproves that assumption.[12]

In *Germano*, house size bore no consistent correlation to remediation-damages recovery. The Court awarded the Orlandos less to remediate their larger 3,245 square foot house than the Baldwins got for their 2,957 square foot house and the Heischobers got for their 3,055 square foot house. (Rec. Doc. 2380 at 75-78; 85-88; 101-104). The Court also awarded very different remediation costs to the Morgans and the Heischobers even though their houses had nearly identical square footages. (*Id.* at 69-73; 101-104). The Court awarded the Morgans' slightly *larger* home $232,491 while the Heischobers' slightly *smaller* home $312,755. (*Id.*)

---

[11] In *Germano*, the Intervenors' designated expert Ronald Wright acknowledged at the hearing that "individual characteristics . . . create some of the variations that we see in the square-foot price" among the houses. (Rec. Doc. 2191 (Trial Transcript at February 22, 2010, Vol. II) at 119:6-120:9 (explaining why the Heischober house, with an elevator, more custom cabinetry, and better flooring, had a higher per-square-foot remediation estimate)).

[12] Taishan's Proposed Class Damages FOFCOL (Rec. Doc. 19194) provides a detailed analysis of why the PSC's remediation damages formula is inadequate. Rather than repeat all of those arguments, Taishan incorporates its Class Damages FOFCOL.

Because its fundamental size-to-cost premise is fatally flawed, the PSC's remediation damages formula fails when tested against the estimated remediation damages for the seven *Germano* properties. Using the inadequate remediation formula would underestimate the Heischober property by more than 30% and overestimates the Morgan property by 15%. (*See* Rec. Doc. 19194 at ¶¶ 132-33). The Court cannot continue a class that depends solely on a clearly inadequate one-size-fits-all formula "model for damages" that fails to consider that "the injury to landowners varies in substantial ways, depending on the value, character and location of the property," and thus "would *necessarily* yield a windfall to some landowners at the expense of others." *Corley*, 152 F. App'x. at 355 (emphasis added); *accord Bell Atlantic*, 339 F.3d at 307.

## VI. CONCLUSION

The PSC has failed to meet its burden to establish with evidence that the class satisfies Rule 23 (and it never did). The Court should decertify the class under Rule 23(c)(1)(C).

Dated:  February 22, 2017

Respectfully submitted,

/s/ Michael P. Kenny
Michael P. Kenny, Esq.
Georgia Bar No. 415064
Bernard Taylor, Esq.
Georgia Bar No. 669625
Christina Hull Eikhoff, Esq.
Georgia Bar No. 242539
David Venderbush, Esq.
New York Bar No. 2920817
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
mike.kenny@alston.com
*Counsel for Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd.*

Alan Dean Weinberger  
LA Bar No. 13331  
HANGARTNER, RYDBERG & TERRELL, LLC  
One Shell Square  
701 Poydras St., Suite 310  
New Orleans, Louisiana 70179  
Phone: (504) 434-6815  
Fax: (504) 522-5689  
aweinberger@hanrylaw.com  
*Local Counsel for Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd.*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, by U.S. mail and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 22nd day of February, 2017.

<u>Michael P. Kenny, Esq.</u>
Georgia Bar No. 415064
ALSTON & BIRD LLP
1201 West Peachtree Street NW
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
mike.kenny@alston.com
*Counsel for Taishan*