UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION<br><br>**THIS DOCUMENT RELATES TO:**<br>*Germano v. Taishan Gypsum, 09-cv-6687*<br>*Gross v. Knauf Gips KG, 09-cv-6690*<br>*Wiltz v. BNBM, 10-cv-361*<br>*Amorin v. Taishan Gypsum, 11-cv-1672*<br>*Amorin v. Taishan Gypsum, 11-cv-1395*<br>*Amorin v. Taishan Gypsum, 11-cv-1673* | MDL No. 2:09-md-2047<br><br>SECTION L<br><br>JUDGE ELDON E. FALLON<br><br>MAGISTRATE JUDGE<br>JOSEPH C. WILKINSON, JR. |

**REPLY BRIEF IN SUPPORT OF MOTION TO DECERTIFY THE CLASS PURSUANT TO RULE 23(c)(1)(C)**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................................... 1

II.    ARGUMENT ..................................................................................................... 4

    A.     Liability And Causation Remain At Issue And Must Be Considered As
    Part Of The Class Certification Determination. ...................................... 4

    B.     There Is No Commonality, Much Less Predominance, Concerning Issues
    Related To Damages. ................................................................................ 8

        1.     Even If Remediation Damages Could Be Applied On A Classwide
        Basis, The Numerous Issues Relating To Non-Remediation
        Damages Predominate. ............................................................... 8

        2.     Remediation Damages Cannot Be Calculated And Dispensed On A
        Classwide Basis. ...................................................................... 12

    C.     Class Treatment Would Not Be A Superior Vehicle For Resolution Of The
    Issues Here. ........................................................................................... 16

    D.     The PSC Is Incapable Of Fairly And Adequately Representing The
    Interests Of The Class. .......................................................................... 16

III.   CONCLUSION ................................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AE Mktg. L.L.C. v. Jenkins-Baldwin Corp., Meralex, L.P.*,
    No. 3:07-CV-0321-F, 2012 WL 12871604 (N.D. Tex. Aug. 24, 2012) ...................................7

*In re Am. Med. Sys., Inc.*,
    75 F.3d 1069 (6th Cir. 1996) ..............................................................................................12

*Ashe v. Swenson*,
    397 U.S. 436 (1970)..............................................................................................................5

*Castano v. Am. Tobacco Co.*,
    84 F.3d 734 (5th Cir. 1996) ........................................................................................ *passim*

*In re CertainTeed Fiber Cement Siding Litig.*,
    303 F.R.D. 199 (E.D. Pa. 2014)..........................................................................................14

*In re Chinese Manufactured Drywall Prods. Litig.*,
    894 F. Supp. 2d 819 (E.D. La. 2012).....................................................................................6

*Crutchfield v. Sewerage & Water Bd. of New Orleans*,
    829 F.3d 370 (5th Cir. 2016) ..........................................................................................9, 10

*In re Deepwater Horizon*,
    739 F.3d 790 (5th Cir. 2014) ..............................................................................................15

*Denizard v. Relic Inc.*,
    No. 6:14-CV-714-ORL-31, 2014 WL 3053233 (M.D. Fla. July 7, 2014)..............................7

*E. Maine Baptist Church v. Regions Bank*,
    No. 4:05-CV-962CAS, 2008 WL 697584 (E.D. Mo. Mar. 13, 2008). ....................................7

*In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 177 F.R.D. 360 (E.D. La.
    1997) ....................................................................................................................................12

*Frow v. De La Vega*,
    82 U.S. 552 (1872).......................................................................................................5, 6, 7

*Georgine v. Amchem Prods.*,
    83 F.3d 610 (3d Cir. 1996)...................................................................................................12

*Gulbankian v. MW Mfrs., Inc.*,
    No. 10-10392-RWZ, 2014 WL 7384075 (D. Mass. Dec. 29, 2014) .....................................14

*Gulf Coast Fans, Inc. v. Midwest Elecs. Importers, Inc.*,
   740 F.2d 1499 (11th Cir. 1984) ........................................................6

*Helton v. Factor 5, Inc.*,
   No. 10-04927 SBA, 2013 WL 5111861 (N.D. Cal. Sept. 12, 2013) .........................7

*Munoz v. Orr*,
   200 F.3d 291 (5th Cir. 2000) ........................................................14

*N.Y. Life Ins. Co. v. Brown*,
   84 F.3d 137 (5th Cir. 1996) ........................................................4

*Orndorff v. Christiana Community Builders*,
   217 Cal. App. 3d 683 (Cal. App. 4 Dist. 1990) .....................................11

*Robinson v. Empire Equity Grp., Inc.*,
   No. 1:9-CV-01603-WDQ, 2014 WL 7359584 (D. Md. Dec. 22, 2014)...................7

*Robinson v. Texas Auto Dealers Ass'n*,
   387 F.3d 416 (5th Cir. 2004) .......................................................10

*Roman Catholic Church of Archdiocese of New Orleans v. Louisiana Gas Service
   Co.*, 618 So. 2d 874 (La. 1993)....................................................10

*Steering Committee v. Exxon Mobil Corp.*,
   461 F.3d 598 (5th Cir. 2006) .......................................................15

*Turner v. Murphy Oil USA, Inc.*,
   234 F.R.D. 597 (E.D. La. 2006).....................................................12

*Turner v. Murphy Oil USA, Inc.*,
   No. CIV.A. 05-4206, 2006 WL 91364 (E.D. La. Jan. 12, 2006)........................14

*United States v. Borchardt*,
   470 F.2d 257 (7th Cir. 1972) ........................................................4

*United States v. Hansen*,
   795 F.2d 35 (7th Cir. 1986) .........................................................5

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)................................................................13

**Rules**

Fed. R. Civ. P. 23 ....................................................................13

Fed. R. Civ. P. 23(g)(1)(B) ...........................................................17

Fed. R. Civ. P. 23(b)(3)..............................................................3, 15

Fed. R. Civ. P. 23(c)(1)(C) ...................................................................................................1

Fed. R. Civ. P. 23(c)(4) ........................................................................................................3

Fed. R. Civ. P. 55(a) ....................................................................................................2, 4, 5

Fed. R. Civ. P. 55(b) ....................................................................................................2, 4, 6

Fed. R. Civ. P. 55(b)(2)(B) ...................................................................................................4

Fed. R. Civ. P. 55(c) ............................................................................................................6

China National Building Materials Company Limited, CNBMIT Company, Limited, CNBM USA Corporation, and United Suntech Craft, Incorporated, (together, the "CNBM Entities") respond to the Plaintiffs' Opposition to Taishan Defendants' Motion to Decertify the Class Pursuant to Rule 23(c)(1)(C) (Rec. Doc. 20652-2).[1]

## I.      INTRODUCTION

The PSC says that there is no basis to decertify the class, claiming that "there have been no intervening changes in the fundamental facts of this case" and that the decertification motions merely "attempt[] to re-litigate issues decided preclusively long ago."  *Id.* at 1.  But the PSC's opposition itself proves just how much things have changed—specifically, it shows that the PSC has abandoned numerous theories that it once relied upon to support a claim of predominance. The PSC is now forced to acknowledge that the only even arguably common issue is remediation damages.  Rec. Doc. 20652-2 at 13.  That wasn't always the case.  For the longest time, the PSC sought to support class treatment on a variety of other theories.  Most notably, it claimed that alternative living expenses ("ALE") could be calculated on a classwide basis by applying a per-square-foot calculation for each class member.  Rec. Doc. 17883-1 at 21.  Similarly, the PSC previously claimed that the loss of use and enjoyment ("LOUE") of property could be resolved on a classwide basis because each class member could receive a $100,000 payment.  Plaintiffs' Memorandum of Law in Support of Motion for Assessment of Class Damages ("Damages Motion") at 5-7 (Rec. Doc. 18086-1).  In addition, since the time the certification order was entered, the PSC has continually reduced the number of claimants, evidencing that the product identification it repeatedly claimed was sufficient to establish classwide liability (and identify

---

[1] The CNBM Entities continue to, and hereby do, preserve all defenses, including lack of jurisdiction, both subject matter and personal, and in no way intend to or do waive or otherwise limit their ability to raise those defenses, whether by filing this opposition or any other act, filing appearance, or contention, either before or after this opposition, in this or any other litigation. *See, e.g.*, Rec. Doc. 18453, 18655.

homeowners to whom damages should be paid) is not sufficient and thus individual attention is required.  These are the quintessential sort of changed circumstances that merit revisiting a court's certification decision.

In addition to these recently exposed individual issues are the many issues that the PSC has itself previously recognized require individual attention.  For instance, as far back as their class certification motion, Plaintiffs conceded that any claims for personal injury and medical monitoring could not be resolved on a classwide basis.  *See* Plaintiff's Omnibus Motion for Class Certification at 6 n.7 (Rec. Doc. 17883).  More recently, Plaintiffs have acknowledged that numerous other claims for damages must be tried individually—including, for instance, damages claims relating to property taxes, insurance, utilities and other property maintenance, past and future repair costs, and bankruptcy.  *See* Damages Motion at 8 (Rec. Doc. 18086-1); *see* PSC Supp. Proposed Trial Mot. at 9 (Rec. Doc. 20613-2).

In short, the question of certification looks a great deal different than what the PSC has led the Court to believe.  These numerous individual issues weigh heavily against predominance, and when they are stripped away, on the Plaintiffs' own account, there is only one thing that remains as purportedly common: damages for remediating each property.  Even so, the PSC asserts that the predominance test still is satisfied.  Rec. Doc. 20652-2 at 13-14.  It begins by erroneously claiming that all defendants are precluded from contesting liability, even though (1) only a single Rule 55(b) default judgment was entered, against a single defendant in a single case, and (2) in each case where a Rule 55(a) default was entered, there are non-defaulting defendants.  Having thereby erroneously contended that liability is irrelevant to certification, the PSC contends that the predominance test is satisfied as to damages-related issues because "[t]here is one major common question that takes precedence over all others:  whether owners of homes ruined by Taishan Chinese Drywall are entitled to property damages."  *Id.* at 13.

2

That claim is wrong as a matter of law, for multiple reasons.  As an initial matter, it's cast at such a high level of generality that it would be satisfied in *every* case.  If this is how certification is to be assessed, why not just ask whether plaintiffs are entitled to damages?  Nothing in the law supports this form of inquiry.  Moreover, the PSC violates settled Fifth Circuit law in a second way.  It makes no effort to assess the cause of action as a whole, considering both common and non-common issues to assess which predominate.  Instead, the PSC claims that whatever issues require individual attention can be addressed and resolved through individual proceedings or claims processing and that a class can be certified to resolve the single issue of remediation damages.  But that approach is flatly contrary to the Fifth Circuit's direction.  "Reading rule 23(c)(4) as allowing a court to sever issues until the remaining common issue predominates over the remaining individual issues would eviscerate the predominance requirement of rule 23(b)(3); the result would be automatic certification in every case where there is a common issue, a result that could not have been intended."  *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 n.21 (5th Cir. 1996).  Moreover, even if such segmented treatment were permissible, the PSC's certification request should still fail because the single classwide issue it clings to—remediation damages—also requires individual resolution.

However understandable it was for the Court to adopt the PSC's Class FOFCOL at the time, based on the representations made to it then by the PSC, the order certifying the class simply cannot stand.  This Court should order the class decertified.

## II.      ARGUMENT

### A.      Liability And Causation Remain At Issue And Must Be Considered In Assessing Class Certification.

Critical to the PSC's argument is its theory that liability- and causation-related issues play no role whatsoever in assessing certification.  Its theory is that the CNBM Entities (and other defendants) are precluded from contesting these issues because this "Court entered default

judgments against *each of the defendants* over the time frame 2011 to 2014."[2]  Rec. Doc. 20652-2 at 8 (emphasis added); *see also* Rec. Doc. 20652-2 at 11.  So dependent is the PSC on this argument that nearly every other page of its brief includes a reference to Rule 55(b)(2)(B) or an assertion that a "default judgment" was entered against every CNBM, BNBM, and Taishan-related entity.  *E.g.*, Rec. Doc. 20652-2 at 1, 2, 8, 10, 11, 13, 14, 15, 18, 20, 21 n.14, 23, 25.  But nowhere does the PSC actually offer record citations for the "default judgments" supposedly entered against "each of the defendants."  And for good reason—this contention is simply false.  The only default *judgment* that has been entered against any defendant in any of the MDL actions was against Taishan in *Germano*.  Rec. Doc. 3013.

The PSC consistently ignores the critical distinction between a preliminary default under Rule 55(a) and a default judgment under Rule 55(b).  Except for *Germano*, all that's at issue here are preliminary defaults entered pursuant to Rule 55(a).  "[I]t is important to keep straight default language."  *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996).  A preliminary default under Rule 55(a) is a ministerial act; it merely permits a plaintiff to move for a default judgment. *Id.*  It "does not of itself determine rights."  *United States v. Borchardt*, 470 F.2d 257, 260 (7th Cir. 1972).  In *Borchardt*, for instance, property owners were allowed to contest the validity of the prior property owner's signature (which was relevant to the statute of limitations) despite the government's assertion that the entry of default precluded such a challenge.  *Id.* at 258, 260.  The government's argument, the Court explained, "misconceives the nature of a [Rule 55(a)] default," which does not create any rights but simply "serve[s] as the basis for a default judgment."  *Id.* at 260.  It is for this reason that a default has been characterized as "an intermediate, ministerial, nonjudicial, virtually meaningless docket entry."  *United States v.*

---

[2] The only citations the PSC offers are to *assertions* in other pleadings regarding defaults and default judgments, not orders entering default judgments.

*Hansen*, 795 F.2d 35, 37 (7th Cir. 1986).  As such, it lacks the force of a judgment to which

preclusive effect may be given.  *Ashe v. Swenson*, 397 U.S. 436, 443 (1970) (for an issue to be

precluded from further litigation, there must be a "valid and final judgment").

And, even if default judgments had been entered here, they still would have no preclusive

effect.  That is because, as the Supreme Court has explained, when one defendant in a multi-

defendant action is subject to a default judgment, the proper procedure is to enter the judgment

against that defendant alone, while permitting any other non-defaulting defendants to proceed on

the merits.  *Frow v. De La Vega*, 82 U.S. 552, 554 (1872).  As the CNBM Entities explained

previously, there is at least one non-defaulted defendant in each of the relevant actions.  Rec.

Doc. 20624-3.  Accordingly, under *Frow*, each such defendant is entitled to full resolution on the

merits of the claims against it, including a determination of choice of law in each transferor

forum, and developing and presenting each of the defenses available to it under the relevant law.

The inherently divergent nature of these proceedings destroys commonality among the actions

and renders class certification inappropriate.

The PSC tries to sidestep this conclusion in a number of ways.  First, it contends that the

fact that at least one defendant has not defaulted in each action is "a distinction without a

difference because all of these defendants have been defaulted in one or more of the Omnibus

Chinese Drywall class actions, each alleging the same causes of action."  Rec. Doc. 20652-2

at 10.  Presumably, the PSC means that once a default has been entered against a defendant in

one MDL action, it is then precluded from mounting a defense in subsequent litigation "alleging

the same causes of action."  If that is what the PSC means, it is wrong as a matter of law.  This

argument would treat preliminary defaults—which have no preclusive effect—as default

judgments.[3]  And if there were default judgments, then even under the PSC's theory, the non-defaulting defendants in the first-filed action still would have the right to a full resolution of their arguments on the merits.

Second, the PSC claims, Rec. Doc. 20652-2 at 10, that the CNBM Entities are mistaken in their reading of *Frow*, Rec. Doc. 20624-3 at 14-15, 41-42, which the PSC claims "is silent on class actions," and thus (they seem to imply) *Frow* is inapplicable here.  On the contrary, *Frow* controls the outcome here.  It demands consistent judgments among similarly situated defendants when one or more of those defendants is in default.  *Gulf Coast Fans, Inc. v. Midwest Elecs. Importers, Inc.*, 740 F.2d 1499, 1512 (11th Cir. 1984) ("even when defendants are similarly situated, but not jointly liable, judgment should not be entered against a defaulting defendant if the other defendant prevails on the merits").  And here, that rule applies with particular force. Notwithstanding certain other differences among the defendants (regarding foreign sovereign immunity, jurisdiction, and their very different roles in manufacturing drywall, for instance), they are similarly situated in the way that matters for this inquiry—they are all parties to the litigation who, as separate corporate entities, face the prospect of independent liability and damages determinations stemming from the same allegedly tortious behavior.  This is precisely the scenario that *Frow* meant to address.  For exactly this reason, *Frow* has been applied in class actions to bar a default judgment against a class defendant when other class defendants were entitled to a merits determination.  *See, e.g.*, *Robinson v. Empire Equity Grp., Inc.*, No. 1:9-CV-01603-WDQ, 2014 WL 7359584, at *2 (D. Md. Dec. 22, 2014); *Denizard v. Relic Inc.*, No. 6:14-

---

[3] It is unlikely, moreover, that the preliminary defaults could be converted into a Rule 55(b) default judgment given that the Court has not established its personal jurisdiction over the defendants.  *See In re Chinese Manufactured Drywall Prods. Litig.*, 894 F. Supp. 2d 819, 863 (E.D. La. 2012) (a judgment is "'void' when personal jurisdiction is lacking").  Indeed, the Court has subsequently held that the FSIA precludes the exercise of jurisdiction over one of the defaulted defendants (CNBM Group).  Rec. Doc. 20150.

CV-714-ORL-31, 2014 WL 3053233, at *1 (M.D. Fla. July 7, 2014); *Helton v. Factor 5, Inc.*,

No. 10-04927 SBA, 2013 WL 5111861, at *5 (N.D. Cal. Sept. 12, 2013); *E. Maine Baptist

Church v. Regions Bank*, No. 4:05-CV-962CAS, 2008 WL 697584, at *1 (E.D. Mo. Mar. 13,

2008).

Third, the PSC contends that *Frow* and its progeny "only 'contemplate whether to issue a

default judgment in the first instance,'" and do not apply when, as here, "defaults against the

defendants were entered from 2011 to 2014."  Rec. Doc. 20652-2 at 10-11 (quoting *AE Mktg.

L.L.C. v. Jenkins-Baldwin Corp., Meralex, L.P.*, No. 3:07-CV-0321-F, 2012 WL 12871604, at *6

(N.D. Tex. Aug. 24, 2012)).  This argument muddles both the law and the facts.  As discussed

above, there were no—and never have been any—default *judgments* against the CNBM Entities,

only preliminary defaults.  Neither *Frow*, nor its application in *AE Marketing*, has any bearing on

preliminary defaults.  Rather, *AE Marketing* was commenting on the role of the *Frow* doctrine in

deciding whether to vacate a default judgment under Rule 55(c).  It correctly held that *Frow*

addressed only "whether to issue a default judgment in the first instance."  2012 WL 12871604,

at *6.  Because the default judgment had already been entered in *AE Marketing*, *Frow* was not

determinative of a motion to set aside the judgment.   Here, by contrast, *Frow* applies directly—

it establishes that, as here, *non-defaulting* parties in a given action are entitled, regardless of the

presence of defaulting defendants, to disprove the claims against them.

Last, the PSC acknowledges that non-defaulting defendants are entitled to defend on the

merits, but asserts that all of the defendants have defaulted.  Rec. Doc. 20652-2 at 11.  Again, the

PSC confuses defaults and default judgments; the defendants have not had default judgments

entered against them.  The PSC then continues, claiming that in any event "the ability of non-

defaulting defendants to challenge liability does not preclude class treatment" and, here, issues of

liability and causation are common to the class, *id*.  That is not so.  This case turns on highly

individualized determinations of whether homeowners actually had Taishan drywall (as opposed to some other form of drywall) installed in their homes, the percentage of it (as compared to other drywall), and whether Taishan was responsible for the complained-of injuries, and those critical differences will be at issue in any future proceedings regardless of any commonality related to whether Taishan made defective drywall.  Issues of liability and causation, which have not been resolved at all, much less in a preclusive fashion, require individualized resolution.

> **B.    There Is No Commonality, Much Less Predominance, Concerning Issues Related To Damages.**
>
> > **1.    Even If Remediation Damages Could Be Applied On A Classwide Basis, The Numerous Issues Relating To Non-Remediation Damages Predominate.**

The PSC does not dispute that the many cases in the MDL include numerous different theories of damages.  These include claims for alternative living expenses, loss of use and enjoyment of property, expenses associated with short sales and foreclosures, personal property claims, claims for lost rent or business, property taxes incurred and insurance payments made during periods when the property was not in use, utilities, property maintenance, setoffs, personal injury, and medical monitoring. Nor does the PSC dispute that all of these claims must be factored in when deciding whether individual issues predominate over class issues.  Rec. Doc. 20652-2 at 13.  And it readily acknowledges that each of these issues—with the sole exception of remediation damages—requires individual resolution.  But the PSC brushes this all aside on the theory that one single issue—remediation damages—"takes precedence over all others." *Id.*  It does not.

The inquiry into predominance requires "the trial court to weigh common issues against individual ones and determine which category is likely to be the focus of a trial." *Crutchfield v. Sewerage & Water Bd. of New Orleans*, 829 F.3d 370, 376 (5th Cir. 2016).  Here, a trial would be dominated by evidence concerning individual expenditures and unique harms.  Consider what

each individual plaintiff would have to show as part of the damages inquiry.  He would have to demonstrate the moving expenses he incurred to relocate prior to and during the remediation period; the rental costs that his family or business incurred while finding substitute housing or space during the remediation period; the taxes he paid during the time the property was uninhabitable; what insurance he paid during the period the house wasn't habitable; the utility costs incurred to maintain the property during the relocation period; the personal property damages suffered—such as to appliances or valuables—as a result of exposure to allegedly defective drywall; and any medical costs that are claimed as a result of alleged exposure to defective drywall.

Notwithstanding these numerous individual issues, the PSC says that the decision of a Florida state court to certify a class dictates a similar result here.  Rec. Doc. 20652-2 at 14.  But that case is utterly unlike this one in terms of the relative commonality of the issues.  There were far fewer plaintiffs (152), and all of them had purchased homes from the same construction company, located in the same living community, and the drywall was all provided by the same supplier.  Rec. Doc. 20652-3 at 3.  These critical similarities were listed by the court as features creating "common issues."  *Id.* at 5.  That is not at all surprising, as the damages claims were more likely to involve similar, if not identical, costs—for instance, relating to taxes, utilities, insurance, and rental.  And the court readily acknowledged that in many other "product-defect cases … individual issues [have been] held to predominate," but distinguished the one before it because there, unlike here, there was only one "builder against whom Plaintiffs [we]re seeking to certify a class."  *Id.* at 12.

That case also is distinguishable because there, unlike here, choice-of-law principles didn't require the application of different state laws to different plaintiffs; all the plaintiffs were from Florida.  Here, by contrast, there are numerous choice-of-law issues.  And the PSC's

certification motion ignored all of them.  *Castano*, 84 F.3d at 741 (in seeking class certification, plaintiffs are required to "identify the substantive law issues which will control the outcome of the litigation").  And even after being confronted by the numerous variations identified by the CNBM Entities, the PSC still has not identified particular, substantive issues that will control.

As we have explained, Rec. Doc. 20659 at 14-40, among the many dissimilarities are state-law differences with respect to statutes of limitations, alter ego and veil-piercing laws; application of the economic loss doctrine; and limits on recovery.  The PSC does not dispute that these variations exist.  Instead, it zooms all the way out to the most general point of commonality it can imagine, and thus asserts that "each state involved in the class … recognizes the availability of property damage remediation for the toxic contamination of home."  Rec. Doc. 20652-2 at 21.  Framing the issue at such a high level of abstraction is inviting this Court to commit a basic error of law.  The purpose of the commonality inquiry is to assess what issues will "be the focus of a trial."  *Crutchfield*, 829 F.3d at 376; *Castano*, 84 F.3d at 740 (predominance requires "consideration of how a trial on the merits would be conducted"); *Robinson v. Texas Auto Dealers Ass'n*, 387 F.3d 416, 426 (5th Cir. 2004) (predominance inquiry must "seriously consider[] the administration of the trial").  And here, "the focus" of trial won't be the fact that various states allow plaintiffs to recover remediation-related damages, which of course they do.  What will dominate the trial are the numerous issues on which the applicable state laws differ, including such issues as when each plaintiff knew or reasonably should have known of the allegedly defective drywall; based on that, whether each plaintiff brought suit within the applicable state statute of limitations; which state's choice of law rule applies to the properties in 18 different jurisdictions; which state law governs after applying the relevant state's choice of law rules; how the economic loss doctrine cuts off claims under varying state laws; what specific corporate behavior the CNBM, BNBM, and Taishan Entities engaged in that is

relevant under each applicable state veil-piercing law; and whether damages are capped in some way—for instance, based on fair market value, or diminution in property value.

The PSC does not dispute most of these state-law variations.  It ignores them, writing them off as questions of liability and causation that, once again, it says are irrelevant because defaults have been entered.  That is wrong for the reasons discussed above.  *See supra* at § II.A. Instead, the PSC limits its response to whether various state laws cap damages differently.  In doing so, it does not contest that state laws differ in this regard; instead, it simply points to drywall cases in which courts granted recovery of remediation damages, and says that the existence of such cases proves that remediation is an acceptable measure of damages.  Rec. Doc. 20652-2 at 22.  But that's the wrong inquiry.  The question here is commonality, and the PSC hasn't even tried to show that remediation will be the appropriate measure of damages in each of the cases.  On the contrary (as demonstrated by the cases we've cited already), remediation sometimes will be an acceptable measure of damages, but under the law of certain states, it sometimes will not be—for instance, if the diminution in a property's market value is less than the cost of remediation. Rec. Doc. 20624-3.  And, even then, there are exceptions, such as when there are "personal reasons" to restore the home.  *Orndorff v. Christiana Community Builders*, 217 Cal. App. 3d 683, 687 (Cal. App. 4 Dist. 1990); *see also Roman Catholic Church of Archdiocese of New Orleans v. Louisiana Gas Service Co.*, 618 So. 2d 874, 879-80 (La. 1993). In assessing the thousands of properties at issue here, such issues inevitably will arise.

The PSC dismisses these state law variations as irrelevant, claiming that they are merely an issue of "manageability" which (they say) is no basis to deny class certification.  Rec. Doc. 20652-2 at 23.  But critical differences like these can't be cast aside so easily.  Indeed, the PSC's position is contrary to well-settled law, which obligates the district court—tasked with "determin[ing] whether the plaintiff has borne its burden on class certification"—to "consider

variations in state law when a class action involves multiple jurisdictions." *Castano*, 84 F.3d at 741.  That is because "variations in state law may swamp any common issues and defeat predominance"—a problem far more vexing that threatens to render the proceeding unmanageable.  *Id.*  (citing *Georgine v. Amchem Prods.*, 83 F.3d 610, 618 (3d Cir. 1996) and *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996)).  Speaking directly to this very issue, this Court has explained that when, as here, "the laws of multiple states are potentially applicable to the plaintiffs' claims," the claims are likely to prove "unmanageable and present too many issues requiring individual resolution."  *Turner v. Murphy Oil USA, Inc.*, 234 F.R.D. 597, 608 (E.D. La. 2006); *In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 177 F.R.D. 360, 376 (E.D. La. 1997) ("The manageability problems created by the choice of law issue in this case are not unlike those that gave the *Castano* court pause.").  The PSC's cases stand for the unremarkable proposition that manageability concerns alone do not supply a basis for refusing to certify a class.  Rec. Doc. 20652-2 at 23.  But none of them authorizes a court to disregard "variation[s] of state law" by branding them mere "'manageability' issues."  *Id.*

### 2.    Remediation Damages Cannot Be Calculated And Dispensed On A Classwide Basis.

Even if remediation damages would be at issue for every plaintiff—and for the reasons just set forth, they will not be—such damages still do not establish commonality because remediation damages cannot be applied uniformly across the class.  As the CNBM Entities have explained, the findings from *Germano* and *Hernandez* cannot be used to set a remediation formula.  Rec. Doc. 20624-3 at 24-32.  That is because bellwether trials are intended simply as a negotiation tool, not to bind non-parties.  *Id.*  And even if they could be used for this purpose, they must still meet the Fifth Circuit's sampling requirements.  *Id.*  The PSC disputes none of this.  Instead, it responds first by explaining (inaccurately) why the remediation figures were properly arrived at in *Germano* and *Hernandez*.  Rec. Doc. 20652-2 at 18-20.  That is, of course,

no response to whether those findings may be carried over to new proceedings.  The PSC's other response is to cite the Class FOFCOL as proof that the formula used in the FOFCOL was correct (as if repeating it will somehow purge its underlying infirmities).  *Id.*

The PSC further asserts that the damages formula is irrelevant because "the focus of class certification is whether claims are amenable to proof using class-wide evidence, not whether the plaintiffs will win or lose on the merits."  Rec. Doc. 20652-2 at 14.  But the analysis of class certification "will entail some overlap with the merits of the plaintiff's underlying claim."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011).  That is because "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action."  *Id.*  In fact, the very quote the PSC offers from the Rule 23 Advisory Committee Notes makes clear that this is so.  While the passage begins as the PSC says ("Although an evaluation of the probable outcome on the merits is not properly part of the certification decision…"), the PSC omits the rest of the sentence, which explains that "discovery in aid of the certification decision often includes information required to identify the nature of the issues that actually will be presented at trial."  Advisory Comm. 2003 Note on subd. (c)(1), Fed. R. Civ. P. 23.  The Advisory Note continues, "[I]t is appropriate to conduct controlled discovery into the 'merits,' limited to those aspects relevant to making the certification decision on an informed basis."  *Id.*  Accordingly, it is wholly proper—and, indeed, often unavoidable— for the Court to consider issues that overlap with the merits in determining class certification.

Moreover (and the PSC does not dispute this), "a limited *Daubert* review is appropriate" at the class certification stage. *Turner v. Murphy Oil USA, Inc.,* No. CIV.A. 05-4206, 2006 WL 91364, at *3 (E.D. La. Jan. 12, 2006).  And here, that review fatally undermines Plaintiffs' argument.  As we have explained, the methodology used by Plaintiffs' expert is unreliable because it lacks a sample of representative properties, and it improperly relied on data provided

by the Plaintiffs themselves.  As to the former, the PSC's expert (Inglis) asserted that property damages are uniform.  June 9, 2015 Hearing Tr. 157:12-18.  But that assertion was grossly uninformed:  Contrary to industry practice, *see* Pogorilich Decl. at 3 (Rec. Doc. 18877-3), Inglis failed to review floor plans of the class properties or familiarize himself with fits and finishes. Class Damages Transcript at 160:13-22.   Accordingly, there was no basis for him to conclude that the seven properties in *Germano* were representative of the entire class.  The unreliability of Inglis's approach is laid bare by the fact that his firm calculated significantly different damages for four units in the very same building where the fit and finish were the same.  Inglis Dep. 139:2-23, 141:20-22.  The unreliability of Plaintiffs' analysis is made all the worse by Inglis' reliance upon data provided by the PSC—data that the PSC itself has continually revised.  Rec. Doc. 20624-3 at 37-28; *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000) (an expert's "reli[ance] on the plaintiffs' compilations of data . . . gives rise to a 'common-sense skepticism' regarding the expert's evaluation.").

The PSC responds by asserting that the use of RS Means—a database used for contractors in the construction industry to provide project cost estimates—is well accepted.  Rec. Doc. 20652-2 at 17.  But its argument depends on cases that did not involve challenges to the use of the RS Means databases.  Rather, *Gulbankian v. MW Mfrs., Inc.*, No. 10-10392-RWZ, 2014 WL 7384075, at *5 (D. Mass. Dec. 29, 2014), and *In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 205 (E.D. Pa. 2014), involved settlements where the defendant did not dispute the use of RS Means as a tool for certifying a class, which was a prerequisite to the court approving the parties' agreed-upon settlement terms.  Accordingly, the courts did not engage in the sort of rigorous analysis concerning the validity of the methodology—in particular, its nationwide use as in this case—that follows adversarial testing.

Moreover, Inglis's formula and methodology are all the more unreliable because they fail to account for the wide array of differences in properties—they do not account for different geography, fit and finish, or even type of dwelling.  The cost of remediation is highly property-dependent, and it therefore requires individualized attention.[4]  Thus, even the lone issue the PSC holds out as trumping all others in the predominance calculus itself cannot be resolved on a classwide basis.  This cripples the PSC's contention.

The PSC responds by citing *In re Deepwater Horizon*, 739 F.3d 790, 815-16 (5th Cir. 2014), for the proposition that class certification may be appropriate "based not on common issues of damages but on the numerous common issues of liability."  Rec. Doc. 20652-2 at 24; *see also id.* at 12 n.4.  As an initial matter, however, issues of liability here themselves require individualized resolution.  *See supra* at § II.A.  Moreover, the very case that *In re Deepwater Horizon* relies upon for the proposition asserted by the PSC undermines rather than supports the PSC's position.  Citing *Steering Committee v. Exxon Mobil Corp.*, 461 F.3d 598, 603 (5th Cir. 2006), *Deepwater Horizon* asserted that it is "'possible to satisfy the predominance ... requirements of Rule 23(b)(3) in a mass tort or mass accident class action.'"  739 F.3d at 816.  But, the court explained, that is particularly challenging "where individual damages cannot be determined by reference to a mathematical or formulaic calculation."  *Exxon Mobil Corp.*, 461 F.3d at 602.  In such instances, courts will certify a class for purposes of liability (if there are numerous common issues), but not damages.  Here, the PSC seeks certification *as to both phases*

---

[4] Responding to the wide difference between estimated remediation costs identified by the PSC and actual remediation costs, the PSC claims that the comparison is wrong because it relies on do-it-yourself remediation repairs, which are unsafe.  Rec. Doc. 20652-2 at 16 n.10.  But the difference is so great ($15,000 actual remediation cost versus the PSC's estimated $207,000), the PSC cannot plausibly assert that hired labor accounts for the gap.  Moreover, the PSC ignores the glaring disparity between remediation costs tabulated by BrownGreer (e.g., $82,232.80) and PSC-estimated remediation costs (e.g., conservatively estimated, $223,858).  Rec. Doc. 20624-3 at 40.  Likewise, the PSC says nothing about the nonsensical prospect we raised in our decertification motion of making remediation payments that exceed the value of the property.  *Id.*

notwithstanding the numerous individualized issues of liability and the erroneousness of its proposed formula.  Instead, therefore, certification is appropriate as to neither.

    **C.**    **Class Treatment Would Not Be A Superior Vehicle For Resolution Of The Issues Here.**

Because individual issues predominate for the reasons set out above and in the CNBM Entities' motion to decertify, class treatment is not a superior mechanism.  The PSC does not dispute that cases such as this—involving mass injuries—ordinarily are not appropriate for class resolution.  But without citing any legal authority, it simply asserts that because certification previously was granted, this Court must stay the course, notwithstanding the numerous problems identified by the CNBM Entities.  Rec. Dec. 20652-2 at 25.  And the PSC does not address "[t]he most compelling rationale for finding superiority in a class action"—"the existence of a negative value suit," i.e., a lawsuit whose litigation expenses are more than the potential recovery.  *Castano*, 84 F.3d at 748.  It does not deny that there is ample incentive to litigate individual claims here if class certification is not granted.  Nor can it.  The per-property damages the PSC seeks are more than sufficient to incentivize plaintiffs and their attorneys to pursue each case.  There is therefore no basis for jeopardizing the defendants' rights to pursue individualized defenses as to each property owner's claim.

    **D.**    **The PSC Is Incapable Of Fairly And Adequately Representing The Interests Of The Class.**

The conflict-of-interest concerns identified in our decertification motion have now come to a head.  Rec. Doc. 20624-3 at 47-50.  At the same time that this Court is scheduled to hear argument on the decertification issue, it is slated to hear argument on the PSC's effort to recover contempt penalties.  But, as the contempt opposition explains, neither Plaintiffs nor the PSC can recover those penalties because they are criminal in nature.  Rec. Doc. 20659 at 5-7.  Rather, any recovery is properly directed to the public.  *Id.*  Nonetheless, the PSC continues to pursue these penalties, all the while spending Plaintiffs' money—compensation from the common

16

benefit fund.  In this regard, the PSC wins even if Plaintiffs lose, because it rakes in attorney's fees in the process.  This is an irreconcilable conflict that precludes the PSC from "fairly and adequately represent[ing] the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).

Although the PSC characterizes the contention as speculative, it does not contest that it seeks these recoveries, nor does it dispute that it intends to pursue fees from the common benefit fund.  Rec. Doc. 20652-2 at 12 n.7.  Accordingly, there is nothing speculative about it.  Nor is it premature.  The PSC is in the process of billing many, many hours for work that is of no benefit to Plaintiffs.  Indeed, it has done so since early 2015.  Harm by class counsel to their clients does not get more ripe than that.

Nor does the PSC offer any response regarding the stated concern that it will be competing with the class for recovered funds.  Rec. Doc. 20624-3 at 48.  Specifically, the PSC's pursuit of a contempt award that, at most, must be paid to the Court, as well as its own fees related to that quest, necessarily—and ironically and impermissibly—makes the PSC a claimant competing for funds with the very class it purports to represent.  That is an irreconcilable conflict that renders the PSC an inadequate advocate.

## III.   CONCLUSION

We are now a long way from where we began when the PSC brought its certification motion.  Back then, the PSC represented that a wide array of issues could be resolved on a classwide basis.  Today, even the PSC only contends that one outstanding issue is susceptible to classwide resolution.  And even that single issue will be dominated by the need to resolve a wide array of individual issues concerning other forms of alleged damages, as well as outstanding liability and causation issues, and other emerging issues lurk behind.  All of these issues are subject to widely diverging state laws and, in addition, remediation damages themselves are not susceptible to classwide resolution.  As common sense alone makes clear, the cost of repairs at

different properties in different areas with different quality materials is highly individualized.

For these reasons, this Court should decertify the class and proceed to individual trials.

Respectfully submitted,

*/s/ L. Christopher Vejnoska*

L. Christopher Vejnoska (CA Bar No. 96082)
Ian Johnson (CA Bar No. 208713)
Andrew Davidson (CA Bar No. 266506)
Jason Wu (CA Bar No. 279118)

ORRICK, HERRINGTON & SUTCLIFFE
LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Tel.: 415-773-5700
Email: cvejnoska@orrick.com
ijohnson@orrick.com
adavidson@orrick.com
jmwu@orrick.com

Ewell E. Eagan, Jr. (LA Bar No. 5239)
Donna Phillips Currault (LA Bar No. 19533)
Alex B. Rothenberg (LA Bar No. 34740)
GORDON, ARATA, MCCOLLAM,
DUPLANTIS & EAGAN, LLC
201 St. Charles Avenue, 40th Floor
New Orleans, LA 70170-4000
Tel: (504) 582-1111
Email: eeagan@gordonarata.com
dcurrault@gordonarata.com
arothenberg@gordonarata.com

James L. Stengel (NY Bar No. 1800556)
Xiang Wang (NY Bar No. 4311114)
Kelly Daley (NY Bar No. 4970117)
Marc R. Shapiro (NY Bar No. 4403606)
ORRICK, HERRINGTON & SUTCLIFFE
LLP
51 West 52nd Street
New York, NY, 10019
Tel: 212-506-5000
Email: jstengel@orrick.com
xiangwang@orrick.com
kdaley@orrick.com
mrshapiro@orrick.com

Eric A. Shumsky (D.C. Bar No. 477926)
ORRICK, HERRINGTON & SUTCLIFFE
LLP
Columbia Center
1152 15th Street NW
Washington, D.C. 20005
Tel: 202-339-8400
Email: eshumsky@orrick.com

*Counsel for the CNBM Entities*

Dated: February 22, 2017

18

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the above and foregoing **REPLY BRIEF IN SUPPORT OF MOTION TO DECERTIFY THE CLASS PURSUANT TO RULE 23(c)(1)(C)** has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and email and upon all parties by electronically uploading the same to File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 22nd day of February, 2017.

/s/ L. Christopher Vejnoska

L. Christopher Vejnoska (CA Bar No. 96082)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105
Tel:  415-773-5700
Fax: 415-773-5759
Email: cvejnoska@orrick.com
*Counsel for the CNBM Entities*