

**EXHIBIT 3**

**VIA EMAIL TRANSMISSION**

December 1, 2016

Daniel J. Balhoff, Esq.
Perry, Balhoff, Mengis & Burns, LLC
2141 Quail Run Drive
Baton Rouge, LA 70808

Re:  In Re: Chinese-Manufactured Drywall Products Liability Litigation
    Homeowner:         Daniel Toth
    Claimant I.D.:        102251
    Affected Property:   11039 Muller Road, Fort Pierce, Florida 34945

Dear Mr. Balhoff,

We appreciate your time and service in this matter. As you know, the undersigned law firm represents Mr. Danny Toth regarding his family's home located at 11039 Muller Road, Fort Pierce, Florida 34945 ("Toth Family Residence"). This correspondence responds to Moss' November 28, 2016 correspondence regarding the CAP 2013-4 Order. Specifically, this correspondence addresses why Mr. Toth's demand for mediation regarding the needed repairs to the Toth Family Residence is not precluded by the CAP-2013-4 Order.

Moss argues Mr. Toth's right to demand a mediation regarding the outstanding issues with Moss' remediation are precluded by the CAP-2013-4 Order. Moss overlooks the language of the Order, and the facts that have transpired; therefore, we respectfully request you allow the mediation to proceed. First, the Order provides at Para. 3(a) that the deadline to request mediation will be 90 days after receipt of a Certificate of Occupancy "*absent good cause shown.*" (emphasis added) Mr. Toth engaged Moss continuously directly regarding the needed repairs to Moss' remediation, from prior to Mr. Toth's receipt of a Certificate of Occupancy, until the date he demanded mediation. Mr. Toth reasonably believed that Moss would follow through its continuing promise to rectify the construction issues at the Toth Family Residence.

Mr. Toth observed several problems with Moss' remediation of the Toth Family Residence well prior to the issuance of the Certificate of Occupancy. For example, on November 4, 2013, Mr. Toth directly emailed a picture to Moss employee Zach Tapley of a poorly installed light fixture (Exhibit "A" hereto). On November 21, 2013, prior to the issuance of a Certificate of Occupancy, the undersigned,

mrachek-law.com    Office 561.655.2250 | Fax 561.655.5537
505 South Flagler Drive, Suite 600 | West Palm Beach, Florida 33401

Daniel J. Balhoff, Esq.
December 1, 2016
Page 2

Mr. Toth and Moss had a telephonic meeting to discuss the significant problems with Moss' remediation of the Toth Family Residence. As Moss admits, on November 26, 2013, still prior to the issuance of a Certificate of Occupancy, Moss responded to Mr. Toth's complaints with a proposed list of repairs Moss was willing to make to attempt to fix the Toth Family Residence. On December 18, 2013, and January 3, 2014, both post-issuance of a Certificate of Occupancy, Moss provided additional proposed resolutions to the claims made November 21, 2013 (pre-issuance), in the form of additional repair lists Moss would perform at the Toth Family Residence.

On May 20, 2014, *more than 90 days* after the issuance of a Certificate of Occupancy, *Moss* again attempted to set a meeting to discuss a resolution to Mr. Toth's pre-issuance claims. At that time Mr. Toth was unwilling to accept Moss' proposed list of resolutions, but was having direct communications with Moss and Moss' subcontractors. For example, on November 26, 2014, and December 1, 2014, Mr. Toth corresponded directly with Moss employee Mike Bell regarding significant electrical problems (Exhibit "B" hereto). In fact, Moss' subcontractors continued to perform repair work at the Toth Family Residence during this time. In light of Moss' continuously unacceptable offers to settle and inability to completely repair issues though its subcontractors, Mr. Toth began putting together a library of photographs, a catalogue of issues, and acquire estimates for the cost of repairs. On January 28, 2015, weeks after Mr. Toth's last direct communication with Moss and months after Moss' last attempt to negotiate through counsel on May 20, 2014, the undersigned on behalf of Mr. Toth attempted to set a conference to discuss resolution, now having a complete list of repairs, a library of photographs and several estimates for repair. Thereafter, Moss rejected any further settlement attempts, and Mr. Toth demanded to mediate in the instant effort.

At minimum, there is good cause to allow a mediation of the Toth Family Residence repair issues now. Mr. Toth and Moss were in a continuing discussion regarding the scope of the repairs, but could not come to agreement regarding the same. Moss and its subcontractors continually worked directly with Mr. Toth, and Mr. Toth in good faith believed he would be able to resolve his issues with Moss, raised before the issuance of the Certificate of Occupancy, though this continuing discussion with Moss and Moss' subcontractors. Mr. Toth solely wants the Toth Family Residence to be habitable for his family, and returned to the fit and finish in which Moss found it before starting the CDW remediation. Therefore, Mr. Toth respectfully requests that you allow the mediation between Moss and Mr. Toth regarding the Toth Family Residence to proceed. Should you desire further information please do not hesitate to ask.

Very truly yours,

*Gregory S. Weiss*

GREGORY S. WEISS
Signed in attorney's absence to expedite delivery.

GSW/pms
cc:   Mr. Daniel Toth
      Stephanie C. Mazzola, Esq.

# EXHIBIT "A"

**From:** Danny Toth <danny_1stclassconstruction@yahoo.com>
**Date:** November 4, 2013 at 7:26:28 AM EST
**To:** Zach Tapley <ztapley@mossemail.com>
**Subject: Light shandaler**

Besides the lights being on look at this expensive chandelier propped up against the scaffolding
This is in the stairwell going up the stairs the chandelier hanging
Also the medallion above it is all scratched and was supposed to get repainted according to Botsford



Sent from my iPhone

# EXHIBIT "B"

**From:** Danny Toth <danny_1stclassconstruction@yahoo.com>
**Date:** November 26, 2014 at 8:33:06 PM EST
**To:** Mike Bell <mbell@mossemail.com>
**Subject: Generator/electric panel**

Mike
Power at the house went out tonight
A couple months back Apex electric sent a company here to fix the problem with the way the electric panel breakers were connected to the gas backup generator. My original complaint about the breakers was that all the reasons why we have a generator was for the kitchen
light,  refrigerator, water pump, upstairs bedrooms, upstairs bathrooms, upstairs closets and upstair a/c. The way they wired it was for nothing of above and when they came to fix this problem it's the same. The generator is on and running so we know this isn't the problem. All the landscape lights are on, hallway light work and exterior soffit lights works. Obviously this needs to be addressed again. Please call me when you can get this figured out. Thanks danny Toth
Happy thanksgiving


Sent from my iPhone

1

**From:** Danny Toth <danny_1stclassconstruction@yahoo.com>
**Date:** December 1, 2014 at 12:27:44 PM EST
**To:** Mike Bell <mbell@mossemail.com>
**Subject: Generator/electric panel**

Mike
Short time back I complied about the way the electric panel box was connected to generator. At this time you contracted electrician and asked them to reconfigure panel to generator to the rooms we needed to work when power went out and generator came on
This pass weekend power went out and when generator came on none of the areas we requested worked, the same areas came on as before when we complained,(soffit lights and landscape lighting)
Can you please have them come back and address this complaint once again?
Thanks
Danny

Sent from my iPhone

1