UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 |
| | SECTION: L |
| THIS DOCUMENT RELATES TO: 11-1395 *(Amorin)* | JUDGE FALLON |
| | MAG. JUDGE WILKINSON |

<u>**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**</u>

**May it Please the Court:**

Defendant, Orient International Holding Shanghai Foreign Trade Co., Ltd ("SFTC"), respectfully submits this memorandum and attached exhibits in support of its *Motion for Summary Judgment.*

<u>**INTRODUCTION**</u>

SFTC is a "State-Owned Enterprise" of the People's Republic of China (PRC) that, pursuant to former Chinese law, participates in the exporting of Chinese-made products abroad. Its role is limited, however, in that it conducts no packaging of the products, no loading, no inspecting, and has no active participation in physically shipping the product. In fact, and with respect to the allegedly defective drywall, SFTC never even took physical possession of the product.

Plaintiffs have brought suit against SFTC as a result of damages stemming from the allegedly defective drywall. While they have alleged a number of theories, all of which will be addressed, the seminal issues the Court must resolve are as follows:

1.  To prevail on a negligence action, the plaintiff must first show the defendant owed a
    duty under the law. Here, SFTC had no part in the manufacturing, packaging, or
    inspecting of the Taishan drywall and, in fact, never took physical possession of it at

1

any point. Does Louisiana law recognize a duty owed by SFTC to Plaintiffs under these facts?

2. Under the Louisiana Products Liability Act and under the law of most states, a non-manufacturing seller can only be held liable for a defective product if it either holds the product out as its own, or if the seller knew or should have known of the defect. SFTC, as a stated-owned enterprise who acted as a mere export agent of Chinese-made products, did not label or otherwise advertise the drywall as its own, and had no obligation or opportunity to package or inspect it before shipping. Can SFTC be held liable as an "apparent manufacturer" under the LPLA?

As demonstrated below, the undisputed facts reveal that under no theory of liability, regardless of how it is couched, can SFTC be held liable for the allegedly defective drywall. Each of Plaintiffs' theories will be addressed, revealing how the law provides no recognizable cause against SFTC under the facts of this case. As such, SFTC is entitled to dismissal as a matter of law.

## FACTUAL BACKGROUND

### I.  THE MULTI-DISTRICT LITIGATION

This action is part of the consolidated Multi-District Litigation ("MDL") currently pending before the Court concerning Chinese-manufactured drywall. "The present litigation arises from alleged property damage and personal injuries sustained as a result of the presence of Chinese-manufactured drywall in homes and other buildings in a number of states." Case No. 09-md-2047, Docket Entry 15755 at 5. As the Court noted in its September 4, 2012 Order, "[t]he Chinese drywall at issue was largely manufactured by two groups of defendants: (1) the Knauf Entities, and (2) the Taishan Entities. The litigation has focused upon these two entities

and their downstream associates, and has proceeded on separate tracks for the claims against each group..." *Id.* at 6.

## II.   PLAINTIFFS' SINGLE ALLEGATION AGAINST SFTC

Plaintiffs' factual allegation against SFTC is confined to a single paragraph in their Class Action Complaint:

> Defendant, Orient International Holding Shanghai Foreign Trade Co., Ltd., is a foreign corporation that works collaboratively with Taishan that purchases and/or sells Taishan wallboard products with product markings written in English designed for sale or resale in the United States.

Case No. 11-cv-1395, Docket Entry 1 at 23, ¶ 68.   Based on this allegation alone, Plaintiffs brought suit under ten causes of action: negligence; negligence per se; strict liability; breach of express and/or implied warranties; redhibition; the Louisiana Products Liability Act; private nuisance; unjust enrichment; violation of Consumer protection acts; and, equitable and injunctive relief and medical monitoring.   Notably, Plaintiffs do not allege any injury or damage caused by the act of exporting drywall.

## III.   SFTC PROVIDES NECESSARY FUNCTIONS FOR INTERNATIONAL TRADE TO THE PEOPLE'S REPUBLIC OF CHINA AND THE SHANGHAI

SFTC was founded as "a State-Owned Enterprise" on January 1, 1988, under the name "Shanghai Foreign Trade Co."   *See* Declaration of Lan Zhe at ¶ 5, Exhibit C (Certified Translation of Zheng Yi Affidavit One, dated December 16, 2014 (hereinafter, "Yi Affidavit One") at ¶ II).   In 1996, SFTC was merged into Orient International Holding Co., Inc. ("OIHC") as a wholly-owned subsidiary, and from that time, OIHC has been the sole parent company of SFTC.   Yi Affidavit One at ¶ II.   At the same time, the company name was changed to Orient International Holding Shanghai Foreign Trade Co., Ltd., under which it currently operates.   *Id.*

OIHC is a wholly state-funded limited-liability company administered by the State-owned Asset Supervision and Administration Commission of the Shanghai Municipal Government ("SH-SASAC").  *Id.*  Because OIHC is the only shareholder of SFTC, SFTC is actually managed by SH-SASAC.  *Id.*

SFTC is obligated to limit its business activities to export activities in accordance with the laws of the People's Republic of China.  *Id.* at ¶ V.  Specifically, the Interim Provisions on Foreign Trade Agency System ("Interim Provisions") was issued and put into effect on August 29, 1991.  *Id* at ¶ VIII.  Article 2 of Interim Provisions states that companies, enterprises, institutions or individuals with no foreign trade operation rights (an entrusting entity), when they need to import or export merchandise (including goods and technology), they have to entrust companies or enterprises which have the foreign trade operation rights for that specific type of merchandise (the entrusted entity) to handle affairs according to the related regulations of China.  SFTC was such an "entrusted entity" under those regulations in 2006 when the Taishan drywall was shipped.  *Id.*  These regulations were abolished in 2008.  *Id* at ¶ VIII.

According to Interim Provisions, when the transaction involved in this case was done in 2006, organizations such as SFTC were required to play a role in the export process.  *Id.* at ¶ IX.  Companies like Tain Taishan Plasterboard, Company, Ltd. and Metro of Southfield, Michigan, U.S.A. had to go through properly licensed export companies or organizations such as SFTC to import and export goods under Chinese law.  *Id* at ¶ IX.

SFTC does not have ownership or control power over Tain Taishan Plasterboard, Company, Ltd, nor does Tain Taishan Plasterboard, Company, Ltd own or control SFTC.  *Id.* at ¶ X.  SFTC does not have ownership or control power over Metro of Southfield, Michigan, U.S.A., nor does Metro own or control SFTC.  *Id.*

6304908.1

## IV.   THE EXPORTATION OF GYPSUM PLASTERBOARD TO THE UNITED STATES REQUIRED SFTC'S PARTICIPATION

On April 12, 2006, SFTC assisted in the export and sale to Metro of two sizes of gypsum plasterboard manufactured by Taishan: 1/2 in (12.7mm) x 4 ft (1220mm) x 12 ft (3660mm) and 1/2 in (12.7mm) x 4 ft (1220mm) x 8 ft (2440mm).  *See* Declaration of Lan Zhe at ¶ 6, Exhibit E (Certified Translation of Zheng Yi Affidavit Two, dated December 16, 2014 (hereinafter, "Yi Affidavit Two") at ¶ II)).  This request was proposed by Metro, and Metro introduced SFTC to Taishan. SFTC is solely an export company; it does not manufacture gypsum plasterboard.  Yi Affidavit Two at ¶ II.  The purchased gypsum plasterboard met the specification required by Metro, and it was packaged for transport.  *Id.* It was then delivered to Qingdao, China in order to be transported by Taishan.  *Id.*

SFTC made the arrangements representing Metro for the purchase of gypsum plasterboard from the manufacturer Taishan.  *Id.* at ¶ III.  These plasterboards were specifically ordered for export.  *Id.*  They had the following specifications:

A. The gypsum plasterboard was manufactured according to the Inspection Report No. 062019 issued by the Quality Supervision and Inspection Center of National Building Materials Industry for Decoration and Finishing Building Materials. It was required to meet the ASTM C1396 Standard. This report certified that the plaster wall met the ASTM C-473-03 Standard after being tested, and it could be exported to the U.S.A.

B. The manufactured goods did not contain asbestos, and there were no damp, moldy or damaged goods being packaged.

C. The goods were labeled "Made in China" and "Meets or exceeds the ASTM C1396-04 Standard" by Taishan, and also taped with "Taishan" tape.

D. The goods were packaged in containers on pallets by Taishan to be transported by sea.

6304908.1

E.  The goods were delivered to the Port of Qingdao, China by Taishan. The goods also contained inspection certificates and valid value-added tax receipts.

F.  The goods were manufactured according to two sizes: 1/2 in (12.7mm) x 4 ft (1220mm) x 12 ft (3660mm), and 1/2 in (12.7mm) x 4 ft (1220mm) x 8 ft (2440mm). *Id.*

Notably, SFTC never took physical possession of the gypsum plasterboard. *Id.* at ¶ IV. Instead, these plasterboards were packaged in the factory of Taishan and were directly placed into containers to be delivered to the Port of Qingdao, China for transport. *Id.*  SFTC never physically inspected the individual goods, nor was it required to. *Id.*  These goods were placed into containers to be transported by sea. *Id.*  Furthermore, SFTC never independently inspected or altered the gypsum plasterboard, nor repackaged or relabeled the gypsum plasterboard. *Id.* Since SFTC is an export company, according to Article 8 of the Interim Provisions on Foreign Trade Agency System ("Interim Provisions"), SFTC was solely required to purchase, export and resell the gypsum plasterboard. *Id.*  In 2006, in accordance with the export regulations, all contracts were signed in the name of the foreign trade company SFTC. *Id.*

The Quality Supervision and Inspection Center of National Building Materials Industry for Decoration and Finishing Building Materials provided SFTC with an inspection report of the gypsum plasterboard on February 16, 2006. *Id.* at ¶ V.  This inspection report showed that the gypsum plasterboard manufactured by Taishan was tested according to ASTM C473-3 and it met the standards of ASTM C1396-C and C1396-M-04 after being tested. *Id.*

The gypsum plasterboard was transported by land by Taishan to the Port of Qingdao, China to be transported to Port Everglades, Florida, U.S.A. to be delivered to Metro. *Id.* at ¶ VI. On April 27, 2006, a shipment of gypsum plasterboard weighing 208,000 kg (gross weight) shipped from Qingdao destined for Metro was to be delivered to Port Everglades, Florida, U.S.A.

*Id.*  On May 7, 2006, a shipment of gypsum plasterboard weighing 208,000 kg (gross weight) shipped from Qingdao, China destined for Metro was delivered to Port Everglades, Florida, U.S.A.  *Id.* at ¶ VII.  On May 28, 2006, a shipment of gypsum plasterboard weighing 260,000 kg (gross weight) shipped from Qingdao, China destined for Metro was delivered to Port Everglades, Florida, U.S.A.  *Id.* at ¶ VIII.  On June 4th, 2006, a shipment of gypsum plasterboard weighing 156,000 kg destined for Metro was delivered to Port Everglades, Florida, U.S.A.  *Id.* at ¶ IX.  The total export value and quantity of the shipped gypsum plasterboard was 26,880 pieces and 832,000 kg (gross weight).  *Id.* at ¶ X.  The records show that Metro paid SFTC with two payments; each payment was USD $38,571.20 for a total of USD $77,142.20.  *Id.* at ¶ XI.  This included the payment for the goods and the transport expenses.  *Id.*

SFTC did not learn of any complaint, dissatisfaction or dispute related to the transport or export of the gypsum plasterboard delivered in 2006.  *Id.* at ¶ XII.  There was no damage to the gypsum plasterboard in the process of transport and delivery, and SFTC never received any complaint, notice of damaged goods, notice of any refusal to accept the goods, nor any dissatisfaction with the condition of the goods.  *Id.*  Metro made timely payments to SFTC for the goods in accordance with the agreement between the two parties, and no unexpected events occurred.  *Id.* at ¶ XIII.  Metro did not express any dissatisfaction with the export process, the transaction or the condition of the goods at that time.  *Id.*

At no time prior to SFTC's involvement in the transaction of exporting and selling gypsum plasterboard to Metro did SFTC learn in any way of any dissatisfaction with the quality or safety of the gypsum plasterboard manufactured by Taishan.  *Id.* at ¶ XIV.  SFTC is an exporter, not a manufacturer or an inspection organization.  *Id.*  Therefore, according to Interim Provisions, SFTC's involvement with this transaction was limited only to the export of the

plasterboard. SFTC has not conducted any activities such as the design, production, labeling or inspection of gypsum plasterboard at any time. *Id.*

## LAW AND ARGUMENT

### I.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the record indicates that there is "no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R.Civ.P.56. A genuine issue of material fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its initial burden, however, "the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake,* 47 F.3d 1459, 1462 (5th Cir. 1995). Further, "when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts...Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Scott v. Harris,* 550 U.S. 372, 380, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007) (internal citations omitted). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* (internal citations omitted) (emphasis by the

6304908.1

Court).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment."  *Id.*

## II.    PLAINTIFFS' ALLEGATIONS

With regard to the *Amorin v. Taishan Gypsum Company* case, E.D.La. at No. 11-1395 the principal and most important allegations arise under the Products Liability Acts of the various home states of the plaintiffs. Each of the home state's laws must be considered when deciding a dispositive motion in a multi-district litigation. *In re Vioxx Products Liability Litigation,* 478 F.Supp.2d 897, 906 (E.D.La. 2007*)*. However, since Louisiana is the forum state of this Action and many plaintiffs, Defendant, SFTC will base its analysis on Louisiana law and note when the law of another home state is in conflict or in specific harmony with Louisiana.

Initially, Defendant notes that this is, at the core, a products liability case. Louisiana Products Liability Act ("LPLA") (La. R.S. 9:2800.51 - 9:2800.60). La. R.S. 9:2800.54 provides the <u>exclusive</u> remedy against manufacturers for claimants who allege they were harmed by unreasonably dangerous products. *Chevron U.S.A. v. Aker Maritime, Inc.*, 604 F.3d 888, 894, 900 (5th Cir. 2010). The LPLA defines manufacturers as those who actually manufacturer a product and those who label a product or otherwise hold themselves out to be the manufacturer of a product. La. R.S. 9:2800.53(1) and La. R.S. 9:2800.53 (1)(a). Generally, customs brokers, freight forwarders, importers, exporters and shippers are <u>never</u> considered manufacturers under the LPLA or the law of any other home state.

With regard to Defendant SFTC, Plaintiffs specifically allege the following:

> 68. Defendant, Orient International Holding Shanghai Foreign Trade Co., Ltd., is a foreign corporation that works collaboratively with Taishan that purchases and/or sells Taishan wallboard products with

product markings written in English designed for sale or resale in the United States.

The *Amorin* Plaintiffs plead specifically for class action.[1] They propose a class comprised of:

All owners and residents (past or present) of real property located in the United States containing problematic Chinese drywall manufactured, sold, distributed, and/or supplied by the Defendants.

Plaintiffs allege negligence (all of the Defendants), negligence per se (all of the Defendants), Strict Liability (all of the Defendants), Breach of Express and/or Implied Warranties (all of the Defendants), Redhibition (all of the Defendants), Louisiana Products Liability Act (all of the Defendants), private nuisance (all of the Defendants), unjust enrichment (all of the Defendants), violation of Consumer Protection Acts (all of the Defendants), and seek equitable and injunctive relief and medical monitoring (from all of the Defendants).

### III.    LAW

### 1.   NEGLIGENCE

With regard to the negligence claim, Plaintiffs generally allege as follows:

"102. Defendants tortuously manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed and/or sold the problematic drywall, which was unfit for its intended purpose and unreasonably dangerous in its normal use in the drywall caused rapid sulfidation and damage to personal property in Plaintiffs' and Class Members' homes, residences or structures and/or caused personal injury resulting in eye problems, a sore throat and cough, nausea, fatigue, shortness of breath, fluid in the lungs, and/or neurological harm."

Plaintiffs further allege that all Defendants had a duty to exercise reasonable care in designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting,

---

[1] Claims under Fed. R. Civ. P. 23(a), (b)(1), (b)(2), (b)(3) and/or 23(c)(4)).

6304908.1

marketing and/or selling the drywall, including a duty to adequately warn of their failure to do the same.

Both general and specific negligence claims are evaluated under the duty/risk analysis scheme in Louisiana. La. C.C.P. art. 2315 *et seq*. Where there is no duty, there is no independent cause of action for negligence, thus establishing whether or not a duty is alleged is the threshold issue in any negligence action. *In Re: FEMA Trailer Formaldehyde Products Liability Litigation*, 838 F. Supp.2d 497, 505 (E.D. La 2012); *Trimyer v. Norfolk Tallow Co.*, 192 Va. 776, 780, 66 S.E.2d 441, 443 (1951); *Jenkins v. W.L. Roberts, Inc.*, 851 So.2d 781, 783 (Fla. 1st Dist.Ct.App. 2003); *Bird v. W.C.W.*, 868 S.W.2d 767, 769 (Tex. 1994); *Donald v. Amoco Production Co.*, 735 So.2d 161, 174 (Miss. 1999). Whether a duty is owed is a question of law.  *Lemann v. Essen Lane Daiquiris Inc.*, 2005-1095 (La. 3/10/06), 923 So.2d 627, 633  *New Texas Auto Auction Services, L.P. vs. Gomez de Hernandez*, 249 S.W.3d 400, 406 (Tex.2008)  It is the duty of the court, when plaintiff states a general rule or principle of law that protects his interests, to determine whether the rule is intended to protect him from the particular harm alleged, *Meany v. Meany*, 94-0251 (La. 7/5/94), 639 So.2d 229, 233; *Curd v. Mosaic Fertilizer, LLC*, 39 So.3d 1216 (Fla.2010) or, whether or not there is some sort of special relationship which gave rise to a duty, such as the relationship between a carrier and passenger, innkeeper and guest, shopkeeper and business visitor, jailor and prisoner. *In Re: FEMA Trailer Formaldehyde Products Liability Litigation*, 838 F.Supp.2d at 506 (E.D. La. 2012). In the absence of a special relationship, having attributes of trust or confidence, courts are disinclined to impose an affirmative duty to take any action or imply that some sort of special relationship exists. *Id.* at 507.

With specific applicability to this case, a broker who aids in the sale of a product but never has physical custody or control over the product is not liable for the products defects under

any negligence theory. *Ankum v. White Consol. Industries*, Civ.A. 91-2990, 1992 WL 185705, at *3 (E.D. La July 30, 1992); *Home Ins. Co. v. A.J. Warehouse, Inc.*, 210 So.2d 544, 551 (La.Ct.App. 1968); *see also Ames v. Ford Motor Co.* 299 F.Supp.2d 678, 680  (S.D. Tex.2003). Brokers can only be held liable for negligence for misrepresentation or omission of information about a product at issue in the transaction. *Ankum* 91-2990, 1992 WL 185705, at *3. Similarly, the Louisiana Fourth Circuit Court of Appeal held, "[w]e know of no possible basis…for a determination of liability on [a broker-distributor's] part" when the broker is not a manufacturer or seller and "simply got the parties together." *A.J. Warehouse Inc.*, 210 So.2d at 551. Likewise, the Louisiana Supreme Court examined whether brokers may be held liable for negligence in *Oceaneering International, Inc. v. Black Towing Inc.*, 491 So.2d 1 (La. 1986).  In *Oceaneering*, Black Towing acted only as a broker which arranged a charter of a vessel by Oceaneering. Oceaneering was operating the vessel at the time of a collision. The vessel owner sought to hold Black Towing liable, but the Supreme Court found that a broker cannot be held liable for negligence or other tort when it had no control or ownership of the vessel causing the damage. The same is true with regard to exporters, customs brokers, factors and all freight forwarders who typically do not inspect cargo or the goods and rarely take physical custody of the goods. In this case, Taishan warranted that the plasterboard was made to ASTM standards and was free of defects in materials and workmanship. The drywall was packed and sealed in China and prepared for shipment by Taishan. Only Taishan can be expected to know of its characteristics and be aware of any defects. STFC, as the exporter, did not have actual or constructive knowledge of the characteristics of this product. SFTC owed no duty to Plaintiffs under law, nor did it possess or actual or constructive knowledge of any potential defect; by virtue of these facts SFTC cannot be held liable for negligence.

## 2.  NEGLIGENCE PER SE

Plaintiffs allege that Defendant SFTC, among others, breached its statutory duty to Plaintiffs imposed under the International Building Code ("IBC") and other state and local building codes, and specifically allege Defendants failed to furnish drywall in compliance with ASTM C1396/1396-M-069 and its predecessors. Louisiana does permit a finding of negligence where it is established that a statute protects against the risks of class of persons to which a Plaintiff belongs. *Nassif v. Sunrise Homes, Inc.,* 98-33 (La.App.5 Cir. 10/28/98), 720 So.2d 452, 456, *writ granted* 98-3193 (La. 3/19/99), 739 So.2d 214,  and *writ denied*, 99-0004 (La.3/19/99), 739 So.2d 782, and *affirmed in part, reversed in part* on other grounds; 739 So.2d 183, 98-3193 (La. 6/29/99). For a violation of a statute to be actionable under negligence per se, the conduct must be both the cause-in-fact and the legal cause of the injury.  *Jones v. Lawrence*, 41,486 (La.App. 2 Cir. 9/20/06), 940 So.2d 34, 39; *Snapp v. Harrison*, 699 So.2d 567 (Miss. 1997); *Chevron U.S.A., Inc. v. Forbes*, 783 So.2d 1215 (Fla. 4th Dist.Ct.App. 2001). Moreover, while statutes or regulations may be guidelines for the court in determining standards of negligence by which liability is determined, Louisiana law is clear that the violation of a statute or regulation is not ultimately definitive of liability. *Gatlin v. Entergy Corporation*, 2004-0034 (La.App. 4 Cir. 5/4/05), 904 So.2d 31, 35, *writ denied,* 2005-1509 (La. 12/16/05), 917 So.2d 1114; *Smolinski v. Taulli*, 276 So.2d 286, 289 (La. 1973); see also La. R.S. 9:2800.13 [relating to the transport of goods or material]. Further, ASTM standards and building codes do not generally fall into this class of regulation.  *Parker Bldg. Servs. Co. v. Lightsey ex rel. Lightsey,* 925 So.2d 927, 931 (Ala.2005). Ultimately, it is essential is that the plaintiff proves there was an unreasonable risk of harm notwithstanding any violation. *Burns v. CLK Investments V, L.L.C.,* 2010-0277 (La.App. 4 Cir. 9/1/10), 45 So.3d 1152, 1158, *writ denied*, 2010-2283 (La. 1/7/11), 52 So.3d 886. Under this law, plaintiffs will not be able to recover from SFTC under a negligence per se theory; there is

no actionable statutory violation pled or regulatory violation pled and thus no statutory duty which could even arguably be used as a guideline to make such a finding.

### 3.   STRICT LIABILITY

Plaintiffs allege that Defendants, including SFTC, are strictly liable because the drywall was unreasonably dangerous and installed in the Plaintiffs' homes, with the knowledge of the Defendants. In Louisiana strict liability is now limited to dog owners, blasting, pile drivers and other ultra-hazardous activities. La. C.C. art. 2317. See also *Mid Continent Aircraft Corp. v. Curry County Spraying Service, Inc*., 572 S.W.2d 308, 311 (Tex. 1978), Texas law applying strict liability for personal injury resulting from unreasonably dangerous products and physical injuries to a consumers other property caused by a defective product; and *Philip Morris, Inc. v. Emerson*, 235 Va. 380, 406, 368 S.E.2d 268, 282 (1988), discussing that strict liability can be applied in cases of intrinsically dangerous and ultra-hazardous activity, such as blasting.  La. Civ. Code art. 2317 and 2317.1 are sometimes described as creating a form of strict liability, but in reality these articles provide a predicate for negligence actions based on custody or "garde" which is a concept of control, management and responsibility flowing therefrom. Clearly, these allegations do not apply to SFTC. While SFTC was certainly aware that the drywall it sold to Metro might eventually be used in the construction of private homes, SFTC never had actual or constructive knowledge of alleged vices or defects of the drywall. Indeed, SFTC never inspected the drywall or analyzed it in any way. A plaintiff alleging strict liability must prove that a defendant had actual or constructive knowledge of a vice or defect. *Meaux v. Wendy's International Inc.*, 10-111 (La.App. 5 Cir. 10/26/10), 51 So.3d 778, 788, *writ granted*, 2010-2613 (La. 2/18/11), 57 So.3d 321. Because plaintiffs are unable to show SFTC had any control of

the product or any knowledge of an alleged vice, Plaintiffs will not be able to recover from SFTC under any strict liability theory.

### 4. BREACH OF EXPRESS AND/OR IMPLIED WARRANTIES AND REDHIBITION

Plaintiffs assert that the Defendants as sellers breached both express and implied warranties that the drywall was fit and safe for the particular purpose: to be installed in structures owned by Plaintiffs and class members as a building material. Defendants are unaware of any express warranty offered by SFTC; we are likewise unaware of any express warranty offered by Taishan or any installer. Louisiana, however, recognizes implied warranties under La. C.C. art. 2524 and La. C.C. art. 2475. The implied warranty in articles 2524 and 2475 does not require a buyer/seller contractual relationship. A consumer without direct privity to the seller can recover against the seller under articles 2524 and 2475 even though the plaintiff actually purchased the product through a "conduit" in the form of an installer or dealer. *Southwest Louisiana Hosp. Ass'n v. BASF Construction Chemicals Ltd.*, 947 F.Supp.2d 661, 693 (W.D. La.  2013, amended (September 6, 2013); *Media Production Consultants, Inc. v. Mercedes-Benz of North America, Inc.*, 262 So.2d 377, 381 (La. 1972); *See also, Massey-Ferguson, Inc. v. Evans*, 406 So.2d 15, 17 (Miss.1981), for the proposition that under common law a seller is only liable for breach of implied warranty when the seller reasonably knew at the time of the sale of the defects or that the product was not fit for the intended purpose.  The remedy, for breach of warranty in Louisiana, i.e. La. C.C. art. 2475, however, is limited to dissolution of the sale and damages, or just damages, under the general rules of conventional obligations. This warranty can apply even though there is no Redhibitory defect, as it is distinctly different than the Redhibitory remedy. *Crawford v. Abbott Automobile Co. Ltd.*, 157 La. 59, 62, 101 So. 871, 872 (1924). La. C.C. art. 2520 provides the remedy for a Redhibitory "defect" which renders the product unfit for use.

For the Louisiana plaintiffs, the surviving claim herein is a Redhibitory defect claim under Article 2520, for the reasons that follow. The Redhibition claim was separately pled in *Amorin*, and under the facts pled, which suggest that the drywall had a defect that rendered it unfit for its use, the Redhibition article is applicable. Notably, the prescriptive period (Statute of Limitation) for Redhibition is only one year from the day the defect was discovered by the buyer, unless the seller did not know of the existence of the defect of the thing sold, in which case the action prescribes in four years from the day of delivery of the thing was made to the buyer or one year from the day the defect was discovered by the buyer, whichever occurs first. La. C.C. art. 2534. Thus, any Redhibitory defect claims brought by the *Amorin* plaintiffs are time barred. On the other hand, the prescriptive period for a breach of warranty claim under 2524 and 2475 is ten years. Further, some courts have held that the warranty claim and Redhibition claim are mutually exclusive. See *Southwest Louisiana Hosp. Ass'n v. BASF Construction Chemicals Ltd.*, 947 F. Supp.2d at 690-693 for a discussion of Louisiana Courts' treatment of whether art. 2520 and 2524 are mutually exclusive. Therefore, the fact that plaintiffs have a Redhibitory claim under the facts, albeit prescribed, may bar their warranty claim. This remains an unresolved question under Louisiana law.

In all of the other home states, the implied warranty under common law is dependent on a finding that the seller knew that the product was not fit for ordinary use. See *Holz v. Coates Motor Co.*, 206 Va. 894, 897, 147 S.E.2d 152 (1966); *Massey-Ferguson, Inc. v. Evans,* 406 So.2d 15 (Miss.1981); *Paul Mueller Co. v. Alcon Labs., Inc.*, 993 S.W.2d 851 (Tex. App.1999); *Storchwerke, GMBH v. Mr. Thiessen's Wallpapering Supplies, Inc.*, 538 So.2d 1382 (Fla. Dist. Ct. App.1989); and *Barrington Corp. v. Patrick Lumber Co., Inc.,* 447 So.2d 785, 786 (Ala. Civ. App.1984). For this reason, under the undisputed facts and the law of Florida, Mississippi,

Virginia, Alabama and Texas, no implied warranty claim or common law claim is sustainable in this case as to SFTC and must be dismissed.

**5.   PRODUCTS LIABILITY**

As noted herein, the Louisiana Products Liability Act ("LPLA"), La. R.S. 9:2800.51 - 9:2800.60, governs the liability of products manufacturers only. A seller who is not a manufacturer is not liable, and a seller who is not a manufacturer is not required to inspect a product prior to determine the possibility of inherent vices or defects. *Haley v. Wellington Specialty Insurance Company*, 44,014 (La.App. 2 Cir. 2/25/09), 4 So.3d 307, 313; writ denied, 2009-0532 (La 4/17/09), 6 So.3d 800. *Landry v. Universal Furniture House, Inc*., Civ.A.97-580, 1997 WL 162014, at *1 (E.D.La. April 3, 1997). There is an "apparent manufacturer" doctrine in Louisiana which will hold an "apparent manufacturer" liable as a manufacturer where the seller/marketer has in fact labeled or held out the product as his own. *Chevron U.S.A. v. Aker Maritime Inc.*, 604 F.3d 888, 897 (5th Cir. 2010). Although Plaintiffs raise a LPLA count against all of the Defendants, there is no allegation that SFTC was the "alter ego" of Taishan. Plaintiffs instead assert (and cannot prove) that SFTC had knowledge of the defect in the drywall before it was sold to Plaintiffs. While a seller who vouches for the product by holding it out as its own may be liable under the LPLA and may be responsible for damages if he knew or should have known the product was defective and failed to disclose it, *Jenkins v. International Paper Co.*, 41,566 (La.App. 2 Cir. 11/15/06), 945 So.2d 144, 147, this doctrine does not apply here. SFTC never labeled the drywall as its own, and indeed ensured that the drywall was labeled by "Taishan" as its own when the product was shipped. For the above reasons, SFTC will not be liable to these Plaintiffs under the LPLA.

Similarly, the Products Liability laws of the home states have comparable provisions and will not hold a seller, which is not "engaged in the business of selling such a product", strictly liable for defects in the product sold following t*he Restatement  (Third) of Torts: Products Liability, Sec. 402(A).*  An innocent seller or broker is not, therefore, responsible for damages. While Louisiana takes a slightly different approach, as described above, all of the home states follow the lead of the Restatement with regard to the liability of sellers, such as SFTC, herein.

### 6.   PRIVATE NUISANCE

Plaintiffs assert that all Defendants are liable for creating a private nuisance. The nuisance articles in the Louisiana Civil Code, namely articles 667-669, are focused on the rights of landowners against their neighbors. *Inabnet v. Exxon Corporation*, 93-0681 (La. 9/6/94); 642 So.2d 1243, 1250-53; La. C.C. arts. 667, 668, 669  Specifically, "private nuisance" is described as the non-trespasser invasion of another's interest in the private use and enjoyment of land. *See* REST 2d; 821D (1979); *Whittemore v. Backstrom Laundry Co.*, *181 Mich. 564, 565*; *148 NW 437, 437* (1914); *See also* Dobbs', The Law of Torts 346 at 950, 1st ed. 2000.   In Louisiana private nuisance has historically been limited to protected interest in the use and enjoyment of land, including particularly the use and enjoyment of easements and profits. *See* La. C.C. arts. 667-669. Plaintiffs here allege that Defendants sold drywall which caused sulfur compounds and/or chemical leaching into the structures owned by Plaintiffs and their class members. Plaintiffs allege that this unreasonably interfered, and continues to interfere, with the Plaintiffs' use and enjoyment of their properties and caused them harm and damage. Plaintiffs' allege that the sulfur compounds have impaired the rights of Plaintiffs to comfort, safety, and the free use of their property. They also claim that as a direct and proximate cause of the private nuisance, the Plaintiffs suffered damages, harm, injuries, increased risk of harm and other losses. However, Plaintiffs do not allege any damage to property adjoining property owned by SFTC, which is the

6304908.1

usual application of the nuisance articles. Despite plaintiffs' best efforts to extend the law of private nuisance beyond that of a relationship between neighbors, private nuisance simply does not apply in this case.

### 7. VIOLATION OF CONSUMER PROTECTION ACTS

Plaintiffs allege that the Defendants violated the Consumer Protection Acts of the jurisdictions in which the affected properties are present, including but not limited to Louisiana by La. R.S. 51:1401, *et seq.* (Louisiana Unfair Trade Practices and Consumer Protection Law); Alabama, - Ala. Code 1975 §8-19-1, *et seq.* (Alabama Deceptive Trade Practices Act); North Carolina, - N.C. Gen.Stat.Ann. §75-1, *et seq.* (North Carolina Consumer Protection Act); Florida, - Fla.Stat.Ann. §501.201, *et seq.* (Florida Deceptive and Unfair Trade Practices Act); Virginia - Va. Code Ann. §59.1-196, *et seq.* (Virginia Consumer Protection of 1977 Act); Texas, - Tx.BUS&COM. §17.41, *et seq.* (Texas Deceptive Trade Practices-Consumer Protection Act); Mississippi, - Miss. Code Ann. §75-24-1, *et seq.* (Mississippi Consumer Protection Act). Plaintiffs do not allege, however, that SFTC engaged in activities which all such laws prohibit: misrepresenting, deceiving, causing confusion or misunderstanding, falsely advertising the actual characteristics of a good, product or service. Further, each of these state's acts have exceptions for those who unintentionally disseminate false information, such as media outlets or distributors relaying the representations and warranties of others. In this case, SFTC made no representations at all regarding the plasterboard. Therefore, the consumer protection laws will not be applicable to SFTC or provide a remedy to Plaintiffs.

### 8. UNJUST ENRICHMENT

Plaintiffs allege that SFTC was unjustly enriched by its actions. In all of the states in which the Plaintiffs' reside, as in Louisiana, a person who has been enriched at the expense of

19

another person is bound to compensate that person. See La. C.C. art. 2298 and the cases cited hereinafter. However, this remedy will almost never be applied if there is any other remedy available and the acquisition of enrichment by the Defendant was not entirely fraudulent. That is, a person must be enriched entirely without cause. *Marseilles Homeowners Condominium Association v. Broadmoor, L.L.C.*, 2012-1233 (La.App. 4 Cir. 2/27/13), 111 So.3d 1099, 1105. There are no facts pled that would support an unjust enrichment claim under Louisiana law. Additionally, in order to apply the laws of Alabama, Florida, and Texas regarding unjust enrichment, it must be proven that the party receiving the benefit of the act of fraud, coercion or engaged in affirmative misrepresentation or deception had a bad faith motive for the action to recover to succeed. *Wyeth, Inc. v. Blue Cross Blue Shield of Ala.*, 42 So.3d 1216, fn.7,010 WL 152123 at *7-8 (Ala. Jan. 15, 2010); *Golden v. Woodward*, 15 So. 3d 664, 670 (Fla. 1st Dist. Ct. App. 2009); *Maloney v. Therm Alum Indus. Corp.*, 636 So.2d 767, 771 (Fla. Dist. Ct. App. 1994); *overruled* on other grounds by *Commerce P-Ship*, 695 So.2d 388; *Heldenfels Brothers, Inc. v. City Corpus Christi*, 832 S.W. 2d 39, 43 (Tex 1992). There are no facts which would suggest that unjust enrichment could provide a recovery for the Plaintiffs in this case, as there is no reason to believe SFTC had any knowledge of the allegedly defective drywall or that it acted in anything but good faith in its exportation of the drywall at issue.

## CONCLUSION

SFTC is a State-Owned Enterprise of the PRC whose role in this transaction was essentially limited to that of an export agent and broker of someone else's product.  It had no part in the design, manufacture, packaging, or inspecting of the Taishan drywall and, in fact, never took physical possession of it at any point. Nor did SFTC ever label or otherwise represent the drywall to be its own.  SFTC did what it was supposed to do in the transaction, namely, it

facilitated the lawful sale, export and delivery of the product in accordance with the contract and with Chinese law.   Under these circumstances, Defendant SFTC is entitled to summary judgment, for all of the reasons set forth above,

Respectfully submitted:

*/S/ Bruce A. Cranner*
BRUCE A. CRANNER (#1796)
RYAN G. DAVIS (#29138)
**TALLEY, ANTHONY, HUGHES & KNIGHT, L.L.C.**
2250 7TH Street
Mandeville, LA 70471
Telephone:  985-624-5010
Facsimile:  985-624-5306
bcranner@talleyanthony.com
ryan.davis@talleyanthony.com

-and-

DAVID S. OSERTMAN
DANIEL MEE
902 Carnegie Center, Ste. 100
Princeton, NJ 08540
Telephone: (609) 986-1310
Facsimile: (609) 986-1301
dosterman@goldbergsegalla.com
dmee@goldbergsegalla.com

ATTORNEYS   FOR   ORIENTAL   INTERNATIONAL HOLDING SHANGHAI FOREIGN TRADE CO.

### CERTIFICATE OF SERVICE

I hereby certify that I have on this 31st day of March, 2017, electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all counsel of record who are non-CM/ECF participants.

*/S/ Bruce A. Cranner*

6304908.1