## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

IN RE:  CHINESE-MANUFACTURED          MDL NO. 2047
DRYWALL PRODUCTS LIABILITY
LITIGATION                            SECTION: L

THIS DOCUMENT RELATES TO:             JUDGE FALLON

ALL *CASES*                           MAG. JUDGE WILKINSON

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### PRIMARY COUNSEL'S OBJECTION TO SPECIAL MASTER'S RULING DENYING NECESSARY DISCOVERY AND REQUEST FOR EXPEDITED CONSIDERATION

**COMES NOW** Primary Counsel[1] who object to those portions of the Special Master's Ruling on April 5, 2017 (the "Discovery Ruling") (Doc. 20721-1) denying necessary discovery in this fee allocation proceeding such that Due Process cannot be satisfied without it.

This case involves a request of common benefit fees which would result in the largest common benefit allocation ever awarded.  Specifically, the Fee Committee (the "FC") (which consists exclusively of attorneys who seek common benefit compensation) has recommended that Common Benefit Counsel receive over 60% of a severely limited "fee pot",[2] plus additional fees for cases the FC has excluded from the calculation.[3]  This request is unwarranted, unprecedented, biased (as it was filed by the FC who has assumed the role of a party litigant as opposed to a neutral

---

[1] Primary Counsel are those individually retained firms listed or otherwise represented in the signature block of this pleading.

[2] Importantly, Primary Counsel dispute the total amount of attorneys' fees available as well as the FC's inflation of the total benefit conferred by common benefit counsel.  *See, e.g.*, Baron & Budd, P.C., Allison Grant, P.A. and Alters Law Firm, P.A.'s Objections in Opposition to Fee Committee's Motion to Determine the Allocation of the Global Fee Award as between Common Benefit Fees and Individual Retained Counsel's Fees Pursuant to PTO 28(F).  Doc. 20380.

[3] The Fee Committee's Motion to Determine the Allocation of the Global Fee Award as Between Common Benefit Counsel and Individual Counsel's Fees Pursuant to PTO 28(F).  Doc. 20293.  This motion and its supporting memorandum are collectively referred to herein as the "Allocation Motion."

committee representing all stakeholders), and further disregards the contractual rights of Primary Counsel.

Consistent with the theme that has plagued this proceeding from its inception, the Discovery Ruling denies Primary Counsel access to information which is so fundamental to the protection of their property interests that ". . . a fair opportunity to present relevant facts and arguments to the court, and to counter the opponents' [i.e., the supposedly disinterested Fee Committee] submissions" cannot be had in its absence.[4]  That is, the Discovery Ruling deprives Primary Counsel of a fair and transparent process with equal access to the evidence necessary to independently evaluate and rebut the Allocation Motion and, thereafter, deprives Primary Counsel of an equal opportunity to be heard.  For this reason, as more fully explained below, the Discovery Ruling must be set aside and Primary Counsel given access to those vital documents. Further, should the Court affirm the Discovery Ruling, either in whole or in part, Primary Counsel request certification that "such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation. . . ."  28 U.S.C. § 1292(b).  Finally, because a hearing on the underlying fee dispute is scheduled to commence on May 31, 2017, Primary Counsel seek expedited consideration of this objection.

## I.      BACKGROUND LEADING TO THIS OBJECTION

Common benefit counsel, as such, do not have a contractual right to attorneys' fees. Rather, the value of their fees is derived from a fact intensive inquiry regarding the type, timing,

---

[4] *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litigation*, 59 F.3d 295, 302 (1st Cir. 1995) (quoting *Aoude v. Mobil Oil Corporation*, 862 F.2d 890, 894 (1st Cir. 1988)).

volume, necessity, and value of their common benefit work.  As such, Pretrial Order Nos. 9 (Doc. 147) and 9A (Doc. 12961) required them, unlike Primary Counsel, to track and submit, on a monthly basis, time and expense records.  These time records demonstrate who performed work, what specific work was performed and how much time was spent on said work, These time records were filed under seal and are available to the Plaintiffs' Steering Committee (the "PSC"), the Fee Committee (the "FC"),[5] the court-approved CPA, the Court, and the Special Master.  Without access to these time records, Primary Counsel are unable to determine the true value of the PSC's work, including whether submissions were duplicative and/or excessive, and whether all time was for the common benefit, as opposed to for the benefit of any individual clients.

In addition to the time records, the PSC, FC, and common benefit counsel created and maintained other documents as a record of certain activity governed by Court order for the very purpose of establishing a record to support a request for common benefit fees.  The documents include: transcripts of FC interviews with common benefit attorneys,[6] two affidavits from each firm submitting common benefit time,[7] memoranda and reports prepared by Sandra Duggan at the

---

[5] With the exception of Mike Ryan, all members of the FC are also members of the PSC.  *Compare* PTO 28 (Doc. 17379 at 14-15) and PTO 8D (Doc. 17600).  Further, the PSC and FC share leadership.  The dividing lines between the FC and the PSC are blurred at best and arguably nonexistent.  A good example is found in the FC's omnibus response to the objections to the Allocation Motion wherein the FC references certain responsibilities of the PSC as "*our* responsibilities" rather than the PSC's responsibilities.  Doc. 20384-1 at 14, n. 7 (emphasis added).

[6] *See* PTO 28 (Doc. 17379 at 13); *see also* Ex. 1, Levin dep. 128:15-129:4.12 [filed under seal] (verifying that relevant information is contained in the FC transcripts).

[7] *See* PTO 28 (Doc. 17379 at 5-7, 11-12); *see also* Ex. 2, Herman dep. 153:12-154:3 [filed under seal] (explaining that that the Second Affidavits may contain evidence that pre-authorization was granted).

request of Plaintiffs' Lead Counsel,[8] agenda and transcripts for PSC and/or FC meetings,[9] and other written communications or documents pertaining to the authorization or approval of common benefit work.[10]

Already at a disadvantage and without access to any of these documents at the outset, Primary Counsel were required to submit objections to the Allocation Motion by June 28, 2016.[11] Twenty-three firms lodged objections.[12]  Since that time, Primary Counsel have diligently and repeatedly requested, and the FC has vehemently opposed, information necessary for them to adequately respond.[13]

Acknowledging that Primary Counsel are entitled to analyze and challenge the FC's proposal, the Court ordered the Special Master to oversee "discovery regarding time and expense

---

[8] *See, e.g.,* Ex. 3, Duggan Dep. 82:1-15; 83:8-84:5; 99:17-100:16; 248:5-8; 256:1-13; 294:20-295:12; 298:18-299:22; 301:24-302:12; 338:5-14; 342:21-25 [filed under seal].  Upon information and belief, these memoranda detail time submissions that were excessive and/or not for the common benefit.   Pursuant to Ms. Duggan's testimony, she had no knowledge whether any of her recommendations were actually followed (i.e., whether the attorneys in question withdrew said time).

[9] *See* PTO 8 (Doc. 144-2); *see also, e.g.,* Ex. 2, Herman Dep. 122:6-7; 151:13-22; 153:14-21; 156:1-4; 176:25-177:19; 272:25-273:8 [filed under seal]; Ex. 1, Levin Dep. 128:15-129:4; 156:17-19 [filed under seal].

[10] *See* PTO 9 (Doc. 147); *see also* Ex. 2, Herman Dep. 366:5-371:9, Herman Proffer No. 1 [filed under seal].

[11] *See* PTO 28F (Doc. 20282 at 3).

[12] Parker Waichman LLP (Doc. 20348); Baron & Budd, P.C., Allison Grant, P.A., Alters Law Firm, P.A. (Doc. 20353-3); Whitfield Bryson & Mason LLP, Pendley Baudin & Coffin, Rhine Law Firm, Luckey & Mullins (Doc. 20346); Gentle, Turner, Sexton & Harbison, LLC, McCallum, Hoaglund, Cook & Irby, LLP (Doc. 20336); Willis & Buckley, APC (Doc. 20349);Collins & Horsley, P.C. (Doc. 20351); Alters Law Firm, P.A. (Doc. 20355); Hawkins/Gibson, PLLC (Doc. 20356); Milstein, Adelman, Jackson, Fairchild & Wade, LLP, Roberts and Durkee, LLP (Doc. 20337); Taylor Martino, P.C. (Doc. 20338); Cohen Milstein Sellers & Toll PLLC, Mrachek, Fitzgerald, Rose, Konopka, Thomas & Weiss, P.A. (Doc. 20343); Paul A. Lea, Jr. (Doc. 20344); Doyle Law Firm, PC (Doc. 20350); Morgan & Morgan, P.A. (Doc. 20354); Yance Law Firm, LLC (Doc. 20357); Morris Bart, LLC (Doc. 20392-2).

[13] Ex. 4 (containing a list of adversarial briefs and letters submitted in this fee dispute).

submissions, procedures, and the relevant work of Philip [Garrett], CPA."[14]  Once appointed, the Special Master asked the parties to submit proposed discovery plans.   Primary Counsel joined together to submit a single, proposed plan of discovery on July 29, 2016, outlining the requested discovery topics.[15]  Thereafter, again upon request of the Special Master, Primary Counsel submitted a proposed Case Management Order (the "Proposed CMO") on September 23, 2016.[16]  Unlike the proposed discovery plan, the Proposed CMO contained specific categories of documents Primary Counsel were requesting from the FC or the PSC.   Among others, those included:   documents referenced or relied upon by Mr. Garrett in preparing his declarations; common benefit time submissions; various reports from Mr. Garrett; transcripts, agendas and minutes of PSC or FC meetings; and other specific emails or documents to, from or by the PSC, FC or Sandra Duggan – all necessary to allow Primary Counsel an opportunity to fairly challenge the taking of their contractual fees.

On September 25, 2016, Special Master Case Management Order No. 1 ("CMO No. 1") (Exhibit 7) was issued.   It impermissibly narrowed the scope of written discovery to those documents specifically referenced by Mr. Garrett in his declaration submitted in support of the

---

[14] Doc. 20410.

[15] Ex. 5, Letter from Primary Counsel to Special Master Balhoff (July 29, 2016).

[16] Ex. 6, Primary Counsel's proposed Special Master Case Management Order No. 1.

Allocation Motion, certain reports prepared by Mr. Garrett and the Initial Affidavits.[17]  The severe limitations on discovery imposed by CMO No. 1 prevented Primary Counsel from fairly challenging the FC's proposed allocation.  Accordingly, Primary Counsel requested additional discovery based on facts available at that time and firmly established legal precedent.[18]

On October 28, the Special Master issued his *Ruling Concerning Objectors' October 7, 2016 Request to Modify Special Master Case Management Order No. 1* ("Ruling No. 1").[19] Therein, the Special Master denied all of Primary Counsel's requests for additional, written discovery, declining to allow Primary Counsel to discover additional documents held by the FC that directly relate to the fee dispute – including those created and maintained pursuant to orders of the Court for the very purpose of creating a common benefit records.  Some requests were denied altogether and others were denied pending the depositions of Philip Garrett, Sandra Duggan, Arnold Levin, and Russ Herman.  This denial violated Primary Counsel's Due Process rights and severely hampered their ability to prepare for the scheduled depositions.  Accordingly, on November 18, 2016, Primary Counsel filed an objection with the Court to Ruling No. 1,

---

[17] Specifically, Mr. Garrett produced the following:  Revised and Updated Affidavit of Philip A. Garrett, C.P.A. Pursuant to PTO 28(F) (Rec Doc. 20282); supporting documents for his affidavit; a report, numerical list and alphabetical list of vendor costs; a report titled "Settlement Amounts" reflecting six deposits and a balance of $18,115,939.53; "Total Time and Held Cost from January 2009 to September 2016" report; "Time Totals by Firm Report from January 2009 to July 2016" report; held cost back-up documentation; shared cost back-up documentation; "Time Totals by Employee – Sortable Report from January 2014 to April 2016"; and an attorney fee reconciliation with various supporting documents.

[18] Ex. 8, Letter from Primary Counsel to Special Master Balhoff (October 7, 2016).  *See also,* Ex. 9, Letter from Primary Counsel to Special Master Balhoff (October 18, 2016) (replying to the FC's October 13, 2016 letter opposing Primary Counsel's October 7, 2016 request for expanded discovery 7).

[19] Doc. 20533.

6

requesting the Court to revise those provisions of the Discovery Ruling which altogether denied additional, written discovery.[20]  This Objection is still pending.[21]

On December 14, 2016, Primary Counsel deposed Philip Garrett.[22]  Mr. Garrett confirmed that his work was limited to compiling information and enforcing the form requirements of the pretrial orders.  He did not determine whether the time was reasonable or benefitted all MDL claimants.[23]  In light of Mr. Garrett's deposition testimony, Primary Counsel re-urged their previous requests for common benefit time submissions.[24]  Additionally, Primary Counsel submitted *Requests for Production of Documents to Philip Garrett* seeking documents which were revealed by Mr. Garrett during his deposition that are directly relevant to the common benefit "time and expense" submissions.[25]  On January 10, 2017, the Special Master informed the parties of his intention to delay his decision on this request until all depositions were concluded.[26]

---

[20] Doc. 20552.

[21] In addition to the November 18, 2016 objection filed by Primary Counsel (Doc. 20552), Primary Counsel's Motion for Immediate Disbursement of Undisputed Fees is pending before the Court.  Doc. 20434 (filed on August 10, 2016).

[22] Pursuant to Special Master Case Management Order No. 2 (Exhibit 10), Primary Counsel were limited to 6 hours, including rebuttal time, for deposing Mr. Garrett.  The FC was present and represented by counsel, Lenny Davis, at Mr. Garrett's deposition.  While the FC lodged many objections, thereby deepening the FC's impermissible conflict in this fee proceeding, the FC opted against questioning Mr. Garrett; presumably because the FC, unlike Primary Counsel, had unfettered access to and *ex-parte* communications with Mr. Garrett, obviating any need for additional questioning at his deposition.

[23] Ex. 11, Garrett Dep. 60:8-67:10 [filed under seal].

[24] Ex. 12, Letter from Jimmy Faircloth, Jr. to Special Master Balhoff (January 6, 2017) and exhibits.

[25] *Id.* at Exhibit "B".

[26] Ex. 13, Email from Special Master Balhoff (January 10, 2017).

In January, Primary Counsel deposed Arnold Levin, Sandra Duggan, and Russ Herman.[27] Many contemporaneous calls for production were made during those depositions based on the testimony. During the course of the depositions[28] and by way of subsequent email,[29] the Special Master instructed Primary Counsel to quickly submit their requests for production of source timesheets by February 8, 2017 and all other documents on February 15, 2017. Primary Counsel complied.[30] In each instance, Primary Counsel set forth both factual and legal support underlying their requests. On April 5, 2015, the Special Master, without explanation, issued the Discovery Ruling which denies all outstanding discovery requests by Primary Counsel.[31] A hearing on the underlying fee dispute is scheduled to commence on May 31.

## II.   ANALYSIS

### A.  The Discovery Ruling disregards the mandates of Due Process.

The essence of Due Process is the sense of fair play.[32] It requires, "the opportunity to be heard at a meaningful time and in a meaningful manner" prior to depriving an individual of a constitutionally protected property interest.[33] As Your Honor has warned, "Disproportionate

---

[27] *See* Ex. 10, Special Master Case Management Order No. 2. Primary Counsel were limited to 6.5 hours for each of these depositions. Several Primary Counsel requested additional time to ask follow-up questions or cover areas not previously discussed. *See, e.g.*, Ex. 1, Levin Dep. 265:7-18, 280:18-282:6 [filed under seal]; Ex. 3, Duggan Dep. 364:4-23 [filed under seal]: Ex. 2, Herman Dep. 386:6-17 [filed under seal].

[28] *See, e.g.*, Ex. 2, Herman Dep. 250:19-25 [filed under seal].

[29] Ex. 14, Email from Special Master Balhoff (February 2, 2017).

[30] Ex. 15, Letter from Jimmy Faircloth, Jr. to Special Master Balhoff (February 8, 2017); Ex. 16, Letter from Jimmy Faircloth, Jr. to Special Master Balhoff (February 15, 2017).

[31] Doc. 20721-1.

[32] *See Galvan v. Press*, 347 U.S. 522, 530 (1954).

[33] *Mathews v. Elbridge*, 424 U.S. 319, 335 (1976).

results and inconsistent standards threaten to damage the public's faith in the judicial resolution of mass tort litigation by creating an impression of inherent unfairness."[34]   "[T]ruth – as well as fairness – is best discovered by powerful statements on both sides . . . ."[35]   The ultimate question is whether "given the nature and circumstances of the case . . . the parties [had] a fair opportunity to present relevant facts and arguments to the court, and to counter the opponents' submission."[36]

These principles apply with equal force in the context of attorney fee disputes where ". . . common benefit fees[s] come[] out of the fee for the primary attorney – a slice out of that pie, so to speak."[37]   Accordingly, when "a court chooses to hold a 'fee-determination hearing, the hearing format itself ha[s] to be fair.   In other words, when a judge constructs a process for setting fees, the process must contain at least the procedural minima' of due process: notice and an opportunity to be heard."[38]

The First Circuit's decision in *In re Nineteen Appeals* is instructive.[39]   In that case, the attorneys for individual plaintiffs appealed the district court's allocation of fees between individual

---

[34] Eldon E. Fallon, *Common Benefit Fees in Multidistrict Litigation*, 74 La. L. Rev. 371, 380 (2014).

[35] *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536 (9th Cir. 2016), quoting *Penson v. Ohio*, 488 U.S. 75, 84.

[36] *In re Thirteen Appeals*, 59 F.3d 295 at 302 (quoting *Aoude*, 862 F.2d at 894); *see also In re Nineteen Appeals*, 982 F.2d 603, 611 (1st Cir. 1992) (citing *Gorman v. University of R.I.*, 837 F.2d 7, 14 (1st Cir. 1988)).

[37] Fallon, *supra* at 371.

[38] *In re High Sulphur Content Gasoline Products Liability Litigation*, 517 F.3d 220, 231 (5th Cir. 2008) (quoting *In re Nineteen Appeals*, 982 F.2d at 614; citing *In re Fine Paper Antitrust Litigation*, 751 F.2d 562, 584 (3d Cir. 1984)). *See also Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 545 (9th Cir. 2016) ("the Due Process Clause requires that opposing counsel have access to timesheets relied on to support [a] fee order" and the opportunity to "present whatever objections they might have concerning the fairness and reasonableness of Plaintiffs' fee request").

[39] *In re Nineteen Appeals* was cited with approval by the Fifth Circuit in *In re High Sulphur*, 517 F.3d at 231.

counsel and common benefit counsel in an MDL proceeding.  The circuit court framed the contest as follows:

> One group of lawyers, appellants here, contend that the procedures followed by the district court in awarding attorneys' fees and directing cost reimbursement were fundamentally unfair, ignored the requirements of procedural due process, and constituted an abuse of discretion. Another group of lawyers, appellees here, vehemently deny these charges and seek to uphold the award.[40]

After applying the *Mathews* framework,[41] the court found that appellants were denied due process because the fee allocation proceeding was unfairly tilted in favor of the PSC – "as unbalanced as a two-legged stool."[42]  The court carefully articulated that its decision was primarily driven by the district court's use of a process that, itself, was not balanced between the litigants:  "In this instance, we cannot see how the court could fairly adjudicate this dispute unless it afforded [individual counsel] a viable means (comparable to the means afforded the PSC) of describing their contribution to the litigation, contrasting their contribution with the PSC's contribution, and questioning the PSC members regarding their work."[43]

---

[40] *In re Nineteen Appeals*, 982 F.2d at 605.

[41] The Supreme Court weighs the following factors when considering when determining what process is due:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probably value, if any, of additional or substitute procedural safeguards, and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that additional or substitute procedural requirement would entail.

*Mathews*, 425 U.S. at 335; *see also Harry v. Colvin*, 819 F.3d 112, 115 (5th Cir. 2016).

[42] *In re Nineteen Appeals,* 982 F.2d at 615.

[43] *Id*.

Following remand, the case returned to the First Circuit when the process utilized by the district court on remand was challenged on due process grounds.[44]  On this occasion, however, the appellate court found the process adequate where the district court permitted discovery regarding the PSC and the opportunity for objectors to make a fair rebuttal:

> The Due Process Clause does not require freewheeling adversarial discovery as standard equipment in fee contests. *See Nineteen Appeals,* 982 F.2d at 614. This case exemplifies the wisdom of the rule. The district court did not shut off all discovery, and the procedures that the court employed—especially the compelled exchange of documentation—minimized the need for additional discovery by giving [primary counsel] the raw material that they needed to sift through the particulars of the PSC's fee application. In other words, the court ensured that [primary counsel] had access to all the data reasonably necessary to formulate their objections, including all the PSC members' time-and-expense submissions, summaries thereof, detailed accounts of the procedures used by the PSC to gather, review, and audit time records, and the working papers, correspondence, and documentation generated by the PSC's accountants during the compilation process. With this banquet of information spread before them, appellants then partook of the court's liberality in allowing them to formulate extensive written submissions.[45]

In sum, the First Circuit reaffirmed that due process requires a level playing field in a mass tort fee dispute.

Application of these principles in the instant matter requires Primary Counsel to have the same access as the FC to evidence relating to the allocation of fees and an opportunity to fairly challenge the fee allocation requested by the FC.  Stated differently, Primary Counsel should have the same opportunity as the FC to make a case regarding the extent to which common benefit fees

---

[44] *In re Thirteen Appeals*, 56 F.3d 295.

[45] *Id.* at 303.

should be carved out of the fee pie.  As it stands, the FC is holding the evidence and urging the Court to follow its lead, while ridiculing Primary Counsel for being unaware of the true state of affairs and for drawing inferences based on bits and pieces of the evidence.

### B. Primary Counsel are entitled to direct evidence of the common benefit time submitted, allegedly vetted, and ultimately approved.

#### i. *Time Submissions*

The time submissions of common benefit counsel are direct evidence of both the quantity, purportedly 232,309.35 hours (Doc. 20293-1 at 18), and quality of work performed by common benefit counsel.  These time submissions, kept pursuant to Pretrial Order Nos. 9 and 9A, are the foundation upon which the Allocation Motion is based and are essential to evaluating and countering the recommendation contained therein.   Unlike Primary Counsel, who have a contractual right to attorneys' fees by virtue of their client contracts, common benefit counsel seek compensation based on a *quantum meruit* principle.

It is clear error to deny Primary Counsel access to the common benefit time submissions. First, fee allocation proceedings must observe "basic judicial standards of transparency and fairness."[46]   To defend their position and constitutionally protected fee agreements, Primary Counsel have been provided various lodestar reports prepared by Mr. Garrett which summarize the time submitted by common benefit counsel.[47]   Additionally, Primary Counsel were provided

---

[46] *In re High Sulfur*, 517 F.3d at 227.

[47] These summaries include the total time spent for very generalized categories of legal work, including assessment, pre-trial, discovery, trial, appeal and settlement.  Ex. 11, Garrett Dep., Ex. 1, Tab 2, CDW_GarrettProd_000032 [filed under seal].

the Initial Affidavits with supporting memoranda[48] of common benefit counsel describing "the professional services performed and the common benefit contribution provided by the [common benefit fee] applicant . . . ."[49]  Such narrow discovery is woefully insufficient to satisfy the transparency or fairness concerns of Due Process by disallowing Primary Counsel "a fair opportunity to present relevant facts and arguments to the court, and to counter the opponents' submissions."[50]

For example, PTO 28 requires the FC to evaluate common benefit counsel's contributions toward generating the various settlements and relative contributions of each common benefit attorneys to the outcome of the litigation.[51]  Stated another way, the effectiveness or outcome of common benefit counsel's work is a measure of the value of that work.  Multiple settlements have been reached in this case; each with very different settlement values.[52]  Without the detailed time entries reflecting the time period in which the common benefit work was completed and the settlement to which the common benefit work relates, Primary Counsel are denied the opportunity to verify that these considerations were properly taken into account in the FC's allocation request.

---

[48] PTO 28 limits the supporting memoranda to five pages.  Doc. 17379 at 6.

[49] *Id*.

[50] *In re Thirteen Appeals*, 59 F.3d at 302.

[51] Doc. 17379.

[52] *See* Exhibit B to the Allocation Motion, which is a chart identifying the components of the various settlements and the benefit purportedly bestowed upon claimants by common benefit counsel.  Doc. 20293-3.  While Primary Counsel disagree with these inflated figures, it is clear that the different settlements reached in this case reaped very different results.  While the vast majority of the settlement funds were paid by the Knauf defendants, a large portion of the fees are being used to finance litigation against non-settling defendants, including compensation of common benefit counsel for time pursuing the non-settling defendants.

Additionally, the time records are needed because the record contradicts the FC's insistence that this litigation was "uniquely intense,"[53] abnormally high-risk, overly complex and spanned the better part of a decade.  In fact, the claims against the settling defendants progressed towards resolution at a rapid pace.  Specifically, the PSC revealed that settlement was "imminent" only thirteen months after the creation of the MDL in July 2009.[54]  Further, Primary Counsel suspect, that some of the work performed by common benefit counsel through December of 2013 was unnecessary, counter-productive, duplicative, for the benefit of individual clients, and/or failed to contribute to the settlement at issue.[55]  This fee dispute simply cannot be resolved when one side, the FC, has access to all information necessary to support its position while the other, Primary Counsel, must rely on summaries of that information, lacking sufficient detail to allow them to independently evaluate and rebut the scope, necessity, complexity, or duration of the work performed.  For this reason, the actual time submissions are necessary to verify that the work

---

[53] Doc. 20293-1 at 19 (boasting that ". . . a uniquely intense attorney effort was required on plaintiffs' behalf in these proceedings.").

[54] The Plaintiffs' Steering Committee's Motion to Establish a Plaintiffs' Litigation Expense Fund to Compensate and Reimburse Attorneys for Services Performed and Expenses Incurred for MDL Administration and Common Benefit, Doc. 4603-1 at 4.

[55] Specifically, with regard to the necessity and duplication of common benefit time, the expense records produced thus far reveal that in many instances multiple attorneys from the same firm were traveling or participating in the same activity.  *See, e.g.*, Ex. 11, Garrett Dep., Ex. 3, Tab 18 (4/2/2015 and 4/15/2015 entries discussions with multiple attorneys, including some within the same); Ex. 18, Held Costs Submissions of Levin, Fishbein, Sedran & Berman for February 2010 (reflecting multiple instances of travel on the same dates by multiple attorneys within the same firm to the same destinations) [filed under seal]  Primary Counsel should be allowed access to the time entries to traverse these submissions.

included in the lodestar reports was not excessive, benefitted all MDL claimants,[56] contributed to the settlements at issue, and was charged for "services . . . [that] were objectively reasonable," the standard the FC acknowledges is applicable.[57]

Second, as explained in the Allocation Motion, the Fifth Circuit applies a blended methodology to calculate "reasonable" fees in common fund cases.[58]   According to this approach, a starting benchmark percentage, one appropriate and reasonable given the facts of the case, is adjusted up or down in accordance with the *Johnson* factors.[59]   The very first *Johnson* factor is "the time and labor required for the legal services in question."[60]   Indeed, so important is this factor that the FC utilized thirteen pages (approximately 20%) of its Allocation Motion (Doc. 20293-1 at 18-31) touting the 232,309.35 hours purportedly "accepted . . . audited and verified by Mr. Garrett."[61]   Mr. Herman confirmed this position in his deposition when he acknowledged that the amount and quality of work that bestowed a benefit is important to determining the common

---

[56] Primary Counsel contend that time incurred prior to the creation of the MDL may not be reasonably related to the common benefit and, indeed, by its very nature, could not have been approved in advance.  Because Mr. Levin conceded that any pre-MDL time reported to Mr. Garrett would be included in the total amount of common benefit hours (Ex. 1, Levin Dep. 207:10-25 [filed under seal]), Primary Counsel should be allowed to review the time submissions to verify that the time benefitted all claimants.   Similarly, Mr. Levin testified that time incurred for litigation outside the MDL was included in the lodestar.  *See*, Ex. 1, Levin Dep. 31:10-15, 33:16-20, 34:15-24, 35:18-1, 42:4-19 [filed under seal].

[57] Fee Committee Response in Opposition to Special Master Ruling Concerning Objectors' Request to Modify Special Master CMO No. 1 and Request for Expedited Consideration.  Doc. 20575-2 at 30.

[58] Doc. 20293-1 at 8-9.

[59] *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).

[60] *Id.* at 717-719.

[61] Doc. 20293-1at 18.  Notably, Mr. Garrett testified that he did not "audit" or vet the common benefit time submissions.  Ex. 11, Garrett Dep. 48:19-24 [filed under seal].

benefit fee.[62]  Primary Counsel must be allowed direct evidence of the "time and labor"[63] claimed and heavily relied upon by common benefit counsel in making their fee request, and particularly since it does not appear that any third party "vetted" said time.

Third, the jurisprudence on this point clearly leans in favor transparency and, therefore, the production of time submissions, particularly in this instance when the process for authorizing, approving, and reviewing common benefit time was anything but transparent and fair.  The Ninth Circuit recently addressed this very issue in *Yamada v. Nobel Biocare Holding AG*, wherein it held that "the Due Process Clause requires that opposing counsel have access to the timesheets relied on to support [a] fee order."[64]  It further explained that the trial court "abused its discretion by denying . . . such access."[65]  The First Circuit adheres to this same approach.  In *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litigation*, the court endorsed the process utilized by the lower court for allocating attorneys' fees because it ensured that individually retained counsel "had [among other documents] access to all the data reasonably necessary to formulate their objections, including all the PSC members' time and expense

---

[62] Ex. 2, Herman Dep. 97:8-9 [filed under seal].

[63] The total time "accepted" in this MDL includes time submitted by firms for paralegals in addition to attorneys.  In some instances, firms submitted time for secretaries performing "paralegal work" at the rate of $450 per hour.  *See*, Ex. 3, Duggan Dep. 238:6-240:10.  Among the many other reasons expressed herein, Primary Counsel should be allowed to examine these time submissions to ensure this time was appropriately charged for paralegal as opposed to secretarial or administrative work.

[64] 825 F.3d 536, 545 (9th Cir. 2016)

[65] *Id*.

submissions [and] summaries thereof. . . ."  Likewise, the Southern District of Texas views the production of time submissions as an essential part of fee disputes.[66]

While the Third and Eighth Circuits have upheld lower courts' refusals to require the production of time records, those Circuits have focused on the adequacy of the *process* for reviewing time entries, holding that the procedures used in those particular cases were sufficient.[67] In *In re Diet Drugs*, the court appointed an auditor who was charged with evaluating whether time and expenses "met previously established criteria for payment. . . ."[68]  Additionally, "the Court required the auditor and Plaintiffs' Liaison Counsel to submit volumes of data reflecting the time and money that Class Counsel spent on the diet drugs litigation—data that the Court put on the public record and used to support the fee award that it ultimately granted."[69]

Unlike *In re Diet Drugs*, the leadership in this MDL failed to abide by any objective, uniform procedure to substantively review and scrutinize common benefit time.  Rather, the process was highly suspect and lacked the transparency required by the Fifth Circuit.  When questioned on the process for the authorization of common benefit work, Plaintiffs' Lead Counsel, Mr. Levin, revealed:  "**I am the process**."[70]

---

[66] *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp.2d 732, 804 (S.D. Tex. 2008) (objectors received copies of billing records, had an opportunity to review them and to file additional objections).

[67] *In re Genetically Modified Rice Litig.*, 764 F.3d 864, 872 (8th Cir. 2014); *In re Diet Drugs*, 582 F.3d 524, 540 (3d Cir. 2009).  *See also In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 342 (3d Cir. 1998) wherein the Third Circuit upheld district court's refusal to grant discovery of time records given that the lodestar calculation in the case was solely intended as a cross-check of the court's primary fee calculation using the percentage of recovery methodology.

[68] *In re Diet Drugs*, 582 F.3d at 533.

[69] *Id.* at 539.

[70] Ex. 1, Levin Dep. 156:17 (emphasis added) [filed under seal].

Further, unlike the independent auditor appointed *In re Diet Drugs*, Mr. Garrett was retained by Plaintiffs' Liaison Counsel, Mr. Herman, not the Court.[71]   Mr. Garrett testified that other than questioning time for what on its face appeared to be for individual clients or administrative tasks, he did not substantively review or audit the common benefit time submissions.[72]   Rather, his review was purely objective and strictly "a matter of procedural convenience for the Court and not a determination on the merits.[73] Despite, the FC's representation to the Court to the contrary,[74] Mr. Garrett was very careful to explain that he did not "audit" or vet the common benefit time submissions.[75]

Additionally, Sandra Duggan played a significant role in the review of the common benefit time submissions for the FC.  Per her deposition testimony, this was done at the request of Arnold Levin, the chair of the FC.[76] Ms. Duggan explained that Mr. Garrett's time summary reports (the only time documentation provided to Primary Counsel) were insufficient to determine whether the time included within those reports constituted common benefit time; rather, a proper substantive review (i.e., one needed to traverse the FC's representations regarding the quality and quantity of

---

[71] *See* PTO 9, Doc. 147 at 2.

[72] Ex. 11, Garrett Dep. 26:13-16, 46:10-48:24, 51:4-52:13, 60:8-67:10, and 315:24-25 [filed under seal].  *See also* Revised and Updated Affidavit of Philip A. Garrett, CPA Pursuant to PTO 28(F) (hereinafter "Garrett Affidavit"). Doc. 20293-2 at ¶10.

[73] Garrett Affidavit, Doc. 20293-2 at ¶10.

[74] Allocation Memo at p. 18.

[75] Ex. 11, Garrett Dep. 26:13-16 and 48:19-24 [filed under seal].

[76] Ex. 3, Duggan Dep. 27:15-17 [filed under seal]; s*ee also*, Pretrial Order No. 28. Doc. 17379 at 14, ¶21.

common benefit time) required access to the underlying time submission.[77]  She further revealed that her review did not include a review of other FC member firms' time, which comprise 127,735.03 hours of the total 232,309.35 common benefit hours submitted for consideration.[78] Finally, she admitted that after conducting her substantive review, she did not verify whether the time included in the lodestar reports omitted time that the FC had flagged as problematic, nor could she say what percentage of the time reported in the Allocation Motion consisted of time which was flagged or potentially problematic.[79]

Further, unlike *In re Diet Drugs*, no public record or information was made available to Primary Counsel to evidence the details of the work conducted by common benefit counsel in this case or even the year when the work was completed.  Such information would allow Primary Counsel to evaluate whether this work was in fact for the common benefit, reasonable, necessary, or related to the settlements at issue.

Fourth, the detailed time submissions are necessary to determine the amount of time spent on particular aspects of this litigation and segregate those charges associated with tasks which either failed to generate fees altogether or failed to generate fees in which Primary Counsel are allowed to share.  This includes the time incurred in the pursuit of the non-settling Taishan entities, the North River trial and resulting InEx/North River Stipulation,[80] the Virginia Settlements,[81] and

---

[77] Ex. 3, Duggan Dep. 352:9-353:9 [filed under seal].

[78] *Id*. at 94:8-15 [filed under seal]; Ex. 11, Garrett Dep., Ex. 1 at Tab 2, CDW_GarrettProd_000032 [filed under seal].

[79] Ex. 3, Duggan Dep. 343:16-344:20 [filed under seal].

[80] Doc. 16968.

[81] The Virginia Settlements include the Nationwide Settlement, the Porter-Blaine Settlement, the Builders Mutual Settlement and the Tobin Trading Settlement as defined in the Court's May 27, 2016 Order at footnote 2.  Doc. 20257.

the voluntary common benefit contributions made or owed pursuant to order of the Court.[82]  Mr. Garrett,[83] Mr. Levin,[84] and Ms. Duggan[85] all acknowledged that time associated with these ventures was not segregated and that all time submitted (and approved) in the MDL was included in the 232,309.35 hours of common benefit time for which compensation is now sought.  Mr. Herman confirmed that the task descriptions used by the attorneys in their time submissions likely identifies the particular case or task for which the time was incurred.[86]  For example, he answered "Yes" when he was asked the following question about the *Germano* and *Hernandez* trials:  ". . . all of those things you just described would be referenced in the time sheets, and we could look at those and glean how much time and by whom was spent on those activities if we had the time sheets, could we not?"[87]  He gave the same response when the same question was posed regarding the *Campbell* and *Clement* cases.[88]  Further, Mr. Herman filed an affidavit in support of a fee request in the *Germano* matter which stated that "in excess of 6,000 attorneys hours have been expended in connection with [this action]."[89]

---

[82] Docs. 8989 and 8545.  *See also* Ex. 11, Garrett Dep., Ex. 1, Tab. 10 at CDW_GarrettProd_00140-143 (containing a list of voluntary contributions prepared by Mr. Garrett and produced to Primary Counsel pursuant to Special Master Case Management Order No. 1) [filed under seal].

[83] Ex. 11, Garrett Dep. 80:14-20 [filed under seal].

[84] Ex. 1, Levin Dep. 42:4-19, 73:6-75:8; 183:9-184:6 [filed under seal].

[85] Ex. 3, Duggan Dep. 356:6-357:24 [filed under seal]

[86] Ex. 2, Herman Dep. 345:17-346:32 [filed under seal].

[87] *Id.* at 93:13-94:16.

[88] *Id.*

[89] Affidavit of Plaintiffs' Liaison Counsel, Russ M. Herman, In Support of Intervening Plaintiff's' Counsel's Petition for Fees and Costs.  Doc. 3248-2 at ¶4.

If the fees generated from these cases are excluded from the total funds available to individually retained counsel, it is inappropriate to require individually retained counsel to reimburse common benefit counsel for the time associated with these matters.  Stated differently, because those services related to Taishan have not provided a benefit to anyone to date and because the InEx/North River Stipulation, Virginia Settlements, and voluntary contribution have not yielded a return for Primary Counsel, the time spent pursuing these matters should not be charged against Primary Counsel's already inadequate fees.  Accordingly, Primary Counsel must be allowed access to the time submissions to ascertain whether and to what extent time associated with these activities has been charged as common benefit.

Fifth and finally, production of the time submissions does not run afoul of the Federal Rules of Civil Procedure or the Federal Rules of Evidence.  While Due Process requires fairness and transparency in fee allocation proceedings, these notions must be tempered by the costs and burden associated with the same.  As pointed out by the FC, "the scope of discovery to be afforded to Primary Counsel must take into account what is 'proportional to the needs of the case considering . . .  whether the burden or expense of the proposed discovery outweighs its likely benefit.'"[90]   Production of the time submissions is neither unduly burdensome nor restrictively expensive.  Copies of all submissions provided to Mr. Garrett by the law firms who completed common benefit work are accessible to the Court through Mr. Garrett's Case Cost Management System.[91]  Retrieving and compiling the requested submissions from the central secure site where

---

[90] Ex. 17, Letter from Arnold Levin and Russ Herman to Special Master Balhoff (October 13, 2016).

[91] Garrett Affidavit at ¶ 22; *see also* Ex. 11, Garrett Dep. 305:1-306:2 [filed under seal].

they are all stored would not be unduly burdensome to Mr. Garrett or the FC as their production would only require Mr. Garrett to provide Primary Counsel with a username and password, similar to what he has done for the expense records.

Production of the timesheets is necessary from a strictly evidentiary standpoint as well. Federal Rule of Evidence 1006 is clear that a party may seek to use a summary for presentation of information to the Court; nevertheless, the underlying raw data upon which the summary is based "must" be made available for examination or copying by other parties.  Allowing the FC to use a summary of that data without allowing Primary Counsel access to the data upon which the summary is based directly conflicts with Rule 1006.

For all of these reasons, the Court must order the production of the common benefit time submissions.

### ii. *Memoranda and related documents prepared by Sandra Duggan at the FC's request*

Primary Counsel have requested the following:

Memoranda, reports, ledgers, spreadsheets, or other documents prepared by or with input from Sandra Duggan regarding, discussing or relating to:
    a.  Common benefit time and/or expenses,
    b.  Whether a particular activity or expense was for the common benefit;
    c.  The allowance or disallowance of common benefit time or expenses; or
    d.  The value of benefits conferred upon claimants by either common benefit counsel or individually retained counsel.[92]

Pretrial Order Nos. 9 (Doc. 147) and 9A (Doc. 12961) establish guidelines for the submission of common benefit time.  PTO 28 (Doc. 17379) charges the FC with reviewing time

---

[92] This request is part of Primary Counsel's Objection to Special Master's Ruling Concerning Objectors' Request to Modify Special Master CMO No. 1 and Request for Expedited Consideration (Doc. 20552), currently pending before the Court.

records and expense reports, evaluating their propriety and analyzing the relevant contribution the activity made toward generation of the settlement funds.  The record establishes that the FC heavily relied upon Sandra Duggan to fulfill these duties on its behalf; she was intimately involved in scrutinizing the common benefit time and expense submissions, so much so that the FC filed, under seal, reports prepared by Ms. Duggan when it responded to Primary Counsel's objections to the Allocation Motion.[93]

Specifically, Mr. Levin asked Ms. Duggan to review the common benefit time submissions and prepare recommendations to the FC.[94]  To do so, she accessed Mr. Garrett's Case Cost Management System and reviewed those time submissions previously accepted by Mr. Garrett.[95]  Thereafter, she prepared and submitted a report to Mr. Levin and/or the FC "that outlined month by month … a summary of what was submitted for common benefit time and common benefit held costs."[96]  Her memoranda also noted general problems with the particular firm's time and expense submissions, summarized the time and expenses submitted by the firm and highlighted entries that appeared problematic.[97]  Clearly, these memoranda were the starting point of the FC's process and formed the basis upon which the Allocation Motion was founded.  They contain evidence directly

---

[93] Omnibus Response to Objections to the Fee Committee's Motion to Determine the Allocation of the Global Fee Award as Between Common Benefit Fees and Individual Counsel's Fees Pursuant to PTO 28(F). Allocation Motion, Appendices A-G [previously filed under seal]. Doc. 20384-2.

[94] *See* Ex. 2, Herman dep. 273:15-20; 363:12-365:9 [filed under seal].

[95] Ex. 3, Duggan Dep. 82:1-15 [filed under seal].

[96] *Id.*; *see also*, *id.* at 99:17-100:16.

[97] *Id*. at 83:8-84:5; 298:18-299:22.

bearing upon the issues in this fee dispute, and are critical to Primary Counsel's understanding of the time submissions and procedures employed by the FC.

Further, and in addition to her memoranda, Ms. Duggan testified to creating documents relating to or used in connection with her review of common benefit time and/or expenses. Those documents include (1) reports, memoranda or analyses requested by the FC related to certain categories of time and/or expenses;[98] (2) list(s) of bellwether and potential bellwether plaintiffs;[99] (3) spreadsheet(s) reflecting the number of hours voluntarily withdrawn by common benefit counsel broken out by attorney, paralegal, secretary and law clerk;[100] and (4) list(s) of assignments reflecting which FC member was assigned to review time submissions of other FC member firms.[101]   These documents are directly relevant to the preauthorization, review, and approval of common benefit time (pursuant to PTO Nos. 9, 9A, and 28) and the FC's ultimate recommendation that common benefit counsel receive an unprecedented slice of the available fee pie.  Ms. Duggan was intimately involved in the FC's procedures and the FC heavily relied upon her recommendations.[102]  As such, Primary Counsel are entitled to the production of the same.

    **iii.**    *Transcripts, agenda and minutes of PSC and/or FC meetings and interviews*

Plaintiffs' Lead Counsel and Liaison Counsel are required to "coordinate the responsibilities of the PSC, schedule PSC meetings, keep minutes or transcripts of these meetings,

---

[98] *Id*. at 301:24-302-12.

[99] *Id*. at 256:1-13.

[100] *Id*. at 338:5-14, 342:21-25

[101] *Id*. at 294:20-295:12.

[102] *See* Ex. 2, Herman Dep. 363:2-9 [filed under seal] (referring to Sandra Duggan as an "expert" in auditing common benefit time).

appear at periodic court noticed status conferences, perform other necessary administrative or logistic functions of the PSC, and carry out any other duty as the Court may order."[103]   In other words, transcripts, agenda, and minutes of PSC meetings and interviews were created for the very purpose of creating a common benefit record – for creating a paper trail of the work performed and authorized by the PSC.[104]   Further, during his deposition, Mr. Herman was asked how and if the PSC "memorialize[d] that initial authorization for $119 million worth of work."[105]   Despite finally revealing that the work was authorized because "I say so," (*Id.*) he confirmed that PSC minutes may memorialize the pre-authorizations.[106]

Additionally, Mr. Herman testified that he and Mr. Levin were directed by the Court to inform common benefit attorneys throughout the course of the litigation that it was unhappy with the hours being reported.  Accordingly, Mr. Herman and Mr. Levin would convey this information during PSC meetings, but it is unclear what, if any action was taken in this regard.[107]

The transcripts, agenda, and minutes of PSC meetings, kept pursuant to court order, will likely reveal *why* certain common benefit work was done and *how* that work benefits all claimants, including the nature, extent, necessity, approval and/or disapproval of common benefit time and expenses expended in this litigation.  These documents should theoretically reveal the foundation and justification for the unprecedented common benefit fee request of 60-65% of the attorneys'

---

[103] *See* PTO 8, Doc. 144-2.

[104] *See* Ex. 2, Herman Dep. 122:6-7 [filed under seal] (confirming that PSC meetings were transcribed).

[105] *Id.* at 156:1-4 [filed under seal].

[106] *Id.* at 151:13-22, 153:14-21 [filed under seal]; *see also*, Ex. 1, Levin Dep. 156:17-19 [filed under seal] ("I am the process . . . . Mr. Herman was the process.").

[107] Ex. 2, Herman Dep. 176:25-177:19, 272:25-273:8 [filed under seal].

fees in the FC's Allocation Motion, for what it described as a "Herculean effort."[108]   More specifically, these documents will contain dialogue or records regarding various common benefit tasks, *why* and *how* such tasks were necessary to the common benefit, and whether such tasks were approved by the PSC.  This information is not contained in the documents produced thus far in this dispute.

Transcripts, agenda, and minutes of the FC meetings should likewise be produced as they will contain important information regarding time submissions and the FC's process, required to be fair and equitable, leading to its allocation recommendation.[109]   The FC, along with the PSC, was tasked with submitting a Joint Fee Petition.[110]   The Court also ordered the FC to "make a recommendation for an allocation of awards from various funds that collectively comprise the Settlement Fee and Cost Account."[111]   Mr. Levin explained that an important part of this process was the self-correction or self-reduction of time by common benefit attorneys.[112]   He verified that some information related to common benefit counsel's self-auditing of time should be contained in FC transcripts.[113]   Primary Counsel are entitled to access records of this vetting process, as they

---

[108] Doc. 20293-1 at 19.

[109] Ex. 2, Herman Dep. 308:11-18 [filed under seal].

[110] *See* PTO 28 (Miscellaneous at p. 14) (Doc. 17379).

[111] *Id.*

[112] Ex. 1, Levin Dep. 128:15-129:4 [filed under seal].

[113] *Id.*

fall squarely within the Court's Order allowing discovery "regarding time and expense submissions, procedures, and the relevant work of Philip Garrity [sic], CPA . . ."[114]

Pursuant to PTO 8, the PSC was appointed, in part, to oversee and manage common benefit work. Pursuant to PTO 28, the FC was appointed to fairly make an allocation recommendation to the Court based on the common benefit work performed by the PSC and common benefit attorneys. The PSC's and the FC's efforts in these regards are recorded and memorialized in various documents, transcripts, agendas, and minutes. Members of both the PSC and FC have verified these documents do exist.[115] These records are the heart of the present dispute. The FC and/or PSC should be required to undergo the minimal burden necessary to gather and produce them.

### C. Primary Counsel are Entitled to Additional Documents Relied Upon by the FC to Support is Fee Request.

#### i. *Emails, Written Communications and Other Documents Regarding Authorization or Denial of Common Benefit Work and/or Expenses*

PTO No. 9 sets forth the Court's directives regarding common benefit time and expense submissions. The very first requirement set forth in this Order states that all common benefit time and expense submissions must be authorized in advance by the Plaintiffs' Steering Committee. Primary Counsel have challenged the size and legitimacy of the FC's common benefit fee request, and are thus entitled to documents evidencing whether or not the Court's directives were followed regarding the pre-approval of common benefit time and expenses, which goes directly to the legitimacy of the submitted time and expenses for which reimbursement is sought. Mr. Herman's deposition established that at least some evidence of this pre-approval exists in email

---

[114] *See* Doc. 20410.

[115] Ex. 2, Herman Dep. 122:6-16 [filed under seal]; Ex. 3, Duggan Dep. 283:10-13 [filed under seal].

communications.[116]  Primary Counsel maintain that they are entitled to all email communications and documents requesting approval to conduct, authorizing, or denying common benefit work or expenses, and that these documents are necessary to afford Primary Counsel a fair opportunity to respond to the FC's allocation recommendation.

### ii.    *Philip Garrett's Reports*

Mr. Garrett's deposition testimony revealed that he prepared various reports regarding the common benefit time and expense submissions throughout the course of the litigation for the Court and the PSC.  Accordingly, on January 6, 2017, Primary Counsel requested these reports in their Requests for Production of Documents[117] to Philip Garrett, which was denied.  The depositions of Mr. Levin, Mr. Herman, and Ms. Duggan confirmed that Mr. Garrett's reports were heavily relied upon by the PSC, the FC, and the Court, and played an important role in the allocation recommendation.[118]   Further, Mr. Garrett's deposition testimony and billing invoices disclosed that, prior to the FC filing the Allocation Motion, he prepared reports calculating various fee allocation scenarios that were provided to the Court and the FC.[119]   Any reports provided by Mr. Garrett to the PSC, an agent thereof (i.e. Lenny Davis), or the FC regarding common benefit time and expense submissions or a proposed fee allocation between common benefit counsel and individually retained counsel go directly to the merits of this dispute.  To allow the FC access to

---

[116] *See* Ex. 2, Herman Dep. 366:5-371:9, Herman Proffer No. 1 [filed under seal].

[117] *See* Exhibit "B" of Ex. 12, Letter from Jimmy Faircloth, Jr. to Special Master Balhoff (January 6, 2017).

[118] *See* Ex. 1, Levin Dep. 133:25-134-15 [filed under seal]; Ex. 2, Herman Dep. 99:20-100:25, 198:19-23, 201:20-202:5 [filed under seal]; Ex. 3, Duggan Dep. 153:16-25 [filed under seal].

[119] *See* Ex. 11, Garrett Dep. 167:19-168:15; 169:17-170:14 [filed under seal].

this information and deny access to Primary Counsel puts Primary Counsel at a tremendous disadvantage and violates the most fundamental principles of fairness in litigation.  Primary Counsel are entitled to any such reports prepared by Philip Garrett and provided to the PSC or the FC.

### iii.    Second Affidavits Submitted in Accordance with PTO 28

PTO 28 required common benefit counsel to submit a Second Affidavit in Connection with Request for Allocation of Common Benefit Fee and Cost Award.[120]  The Second Affidavits were to explain in detail the specific activities each firm engaged in that contributed to the relief achieved for the claimants.[121]  The Second Affidavits have been filed under seal, and despite repeated requests, have not been provided to Primary Counsel.  The Second Affidavits were presumably intended to assist the FC in evaluating each firm's overall common benefit contribution, and they are critical to Primary Counsel's understanding and evaluation of the total scope and value of common benefit time for which the FC has requested compensation.  They are highly relevant to the FC's ultimate recommendation of the fee allocation and the "procedures" leading up to the FC's fee allocation recommendation, and as such, fall squarely within the Court's Order authorizing discovery.[122]  Denying Primary Counsel access to the Second Affidavits furthers Primary Counsel's disadvantage in this dispute by withholding from Primary Counsel highly relevant information not otherwise available through any other means upon which the FC has no doubt substantially relied upon in formulating its allocation request.

---

[120] Doc. 17379 at 11-12.

[121] *Id*.

[122] *See* Doc. 20410.

### iv.     List of Bellwether and Potential Bellwether Plaintiffs

Sandra Duggan testified that inspection costs and other individual case costs may have been treated as common benefit costs if incurred in a "potential" bellwether case.[123]   Presumably, this included time submitted for individual clients that common benefit attorneys deemed "potential" bellwether cases.   Ms. Duggan testified that lists of all potential bellwether cases are in existence.[124]  Following her deposition, Primary Counsel requested a list of all cases considered as potential bellwethers in their February 15, 2017 letter to Special Master Balhoff, which request was denied.   Primary Counsel contend that certain individual case costs have been improperly charged as common benefit costs.   However, without access to information held by the PSC or the FC revealing which cases were considered potential bellwethers, Primary Counsel are unable to fairly challenge the FC's assertions that costs appearing to be for individual cases were likely incurred in potential bellwether cases.   The production of this list will place little to no burden on the FC and will likely resolve Primary Counsel's questions concerning many common benefit expenses.   There is essentially only an upside to granting this minimal, yet important request.

### v.     List of FC Member Assignments to Review Fellow FC Firms' Time and Expenses

The deposition of Sandra Duggan revealed that while she vetted the common benefit time and expense submissions of non-FC firms, she did not review FC member firms' time and expenses.[125]  Instead, FC members reviewed fellow FC members' firms' common benefit time and

---

[123] Ex. 3, Duggan Dep. 43:13-19; 44:16-19 [filed under seal].

[124] *Id*. at 255:12-15, 256:1-7 [filed under seal].

[125] *Id.* at 95:7-13 [filed under seal].

expenses.[126]   Following Ms. Duggan's deposition, Primary Counsel requested a list of the FC member time and expense review assignments, which Ms. Duggan testified she created, in their February 15, 2017 letter to Special Master Balhoff.  The request for this list was denied.  The vetting of common benefit time and expenses and related procedures fall within the scope of the Court's Order allowing for discovery and are material to the dispute at hand.  Primary Counsel's initial objections to the FC's allocation motion and final briefing on the allocation dispute challenge both the sufficiency with which common benefit time and expenses have been vetted and the bias and lack of impartiality of the FC. The requested evidence is critical to these arguments, the denial of which will prejudice Primary Counsel.

### D.  Certification is Proper Pursuant to 28 U.S.C. § 1292(b).

Ordinarily, the denial of a request for additional discovery is not a final appealable judgment under 28 U.S.C. § 1291.  However, 28 U.S.C. § 1292(b) authorizes this Court to certify its ruling affirming the Special Master's Discovery Ruling when "such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation ... "  At the heart of Primary Counsel's additional discovery requests is the legal issue: does due process require disclosure and production of this information?  And in that regard, whether the denial of the disclosure and production of the requested information taint the entire proceeding as to require the matter be remanded to start the entire process over.  In other words, Primary Counsel's additional discovery requests present a controlling, and critical question of law as to

---

[126] *Id.*

which there is a substantial ground for difference of opinion, and an immediate appeal to the Fifth Circuit will resolve this central dispute and advance the conclusion of this fee dispute.   For these reasons, if the Court affirms the Discovery Ruling, either in whole or in part, Primary Counsel request certification of that ruling under 28 U.S.C. § 1292(b).

## III.    CONCLUSION

For the foregoing reasons, based on the applicable laws, policies, and purposes of MDL actions, Primary Counsel respectfully request the Court to expeditiously consider this Objection and thereafter issue an Order overruling the Discovery Ruling and expanding discovery in this fee dispute.  Alternatively, should the Court deny this request, Primary counsel respectfully request certification in accordance with 28 U.S.C. § 1292(b).

 Respectfully submitted:

| | |
|---|---|
| **FAIRCLOTH, MELTON & SOBEL, LLC** | **LISKA, EXNICIOS & NUNGESSER** |
| By:    /s/ *Jimmy R. Faircloth, Jr.* | By:    /s/ *Val Patrick Exnicios* |
| Jimmy R. Faircloth, Jr. (LA #20645) | Val Patrick Exnicios, Esq. |
| jfaircloth@faircothlaw.com | vpexnicios@exnicioslaw.com |
| Brook L. Villa (LA #31988) | 1515 Poydras Street |
| bvilla@faircothlaw.com | 14th Floor, Ste. 1400 |
| Franklin "Drew" Hoffmann (LA #35824) | New Orleans, LA. 70112 |
| dhoffmann@faircothlaw.com | Phone: (504) 410-9611 |
| 301 Main Street, Suite 920 | Fax: (504) 410-9937 |
| Baton Rouge, LA 70801 | Cell: (504) 495-9666 |
| Phone: (225) 343-9535 | |
| Fax: (225) 343-9538 | *Attorneys for Whitfield Bryson & Mason LLP, Pendley Baudin & Coffin, Rhine Law Firm, and Luckey & Mullins* |
| *Attorneys for Parker Waichman LLP* | |
| | |
| **BARON & BUDD, P.C.** | **GENTLE, TURNER, SEXTON & HARBISON, LLC** |
| By:    /s/ *Russell W. Budd* | |
| Russell W. Budd (TX #03312400) | By:    /s/ *K. Edward Sexton, II* |

rbudd@baronbudd.com
S. Ann Saucer (TX #00797885;
LA #21368)
asaucer@baronbudd.com
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219
Phone: 214-521-3605
Fax: 214-520-1181

**MCCALLUM, HOAGLUND, COOK & IRBY, LLP**

By:  /s/ *Eric D. Hoaglund*
Eric D. Hoaglund
ehoaglund@mhcilaw.com
905 Montgomery Highway, Suite 201
Vestavia Hills, Alabama 35216
Phone: (205) 824-7767
Fax: (205) 824-7768

**DOYLE LAW FIRM, PC**

By:  /s/ *James V. Doyle, Jr.*
James V. Doyle, Jr.
jimmy@doylefirm.com
2100 Southbridge Pkwy., Suite 650
Birmingham, AL 35209
Phone: 205-533-9500
Fax: 205-414-7528

**GIEGER, LABORDE & LAPEROUSE, LLC**

By:  /s/ *Victoria E. Emmerling*
Andrew A. Braun (LA #3415)
abraun@glllaw.com
Victoria E. Emmerling (LA #33117)
temmerling@glllaw.com
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139-4800
Phone: (504) 561-0400
Fax: (504) 561-1011

K. Edward Sexton, II
esexton@gtandslaw.com
501 Riverchase Parkway East, Suite 100
Hoover, Alabama 35244
Phone: (205) 716-3000
Fax: (205) 716-3010

**PAUL A. LEA, JR.**

By:  /s/ *Paul A. Lea, Jr.*
Paul A. Lea, Jr. (LA #18637)
paul@paullea.com
724 E. Boston Street
Covington, Louisiana 70433-2910
Phone: (985) 292-2300
Fax: (985) 249-6006

**H ARTHUR EDGE, P.C.**

By:  /s/ *David L Horsley*
David L Horsley (AL #6090-I47H)
david@edgelawyers.com
2320 Highland Avenue
Suite 175
Birmingham, Alabama 35205
Phone (205)453-0322
Fax    (205)453-0326

*Attorneys for Collins & Horsley*

**ALLISON GRANT, P.A.**

By:  /s/ *Allison Grant*
Allison Grant (FL #858330)
agrant@allisongrantpa.com
14 SE 4th St
Boca Raton, FL 33432-6111
Phone: 561-994-9646
Fax: 561-431-4627

*Attorneys for Morris Bart, L.L.C.*

**MILSTEIN, ADELMAN, JACKSON,
FAIRCHILD & WADE, LLP**

By: _____ /s/ *Mark Milstein* _____
      Mark Milstein
      mmilstein@majfw.com
      10250 Constellation Blvd., 14th Floor
      Los Angeles, CA 90067
      Phone: (310) 396-9600

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the above and foregoing *Primary Counsel's Objection to Special Master's Ruling Denying Necessary Discovery And Request For Expedited Consideration* has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 12th day of April, 2017.

         _____ /s/ *Jimmy R. Faircloth, Jr.* _____
                   OF COUNSEL