# FAIRCLOTH, MELTON & SOBEL, LLC

*ATTORNEYS*

JIMMY R. FAIRCLOTH, JR. [1]
BARBARA BELL MELTON
DAVID R. SOBEL [2]
CHRISTIE C. WOOD
BROOK LANDRY VILLA
MATTHEW L. NOWLIN
DREW HOFFMANN

ONE AMERICAN PLACE
301 MAIN STREET, SUITE 920
BATON ROUGE, LA 70801
PHONE (225) 343-9535
FAX (225) 343-9538
www.fairclothlaw.com
jfaircloth@fairclothlaw.com

OF COUNSEL
WILSON & WILSON
JENA, LA

[1] L.L.M. IN LITIGATION

[2] ALSO ADMITTED IN TEXAS

July 29, 2016

Mr. Daniel J. Balhoff
PERRY, BALHOFF, MENGIS & BURNS, LLC
2141 Quail Run Drive
Baton Rouge, LA 70808

    RE:   *In re: Chinese-Manufactured Drywall Products Liability Litigation*, MDL 2047 (E.D. La.) – Primary Counsel's Proposed Discovery Plan Pertaining to the Allocation of Attorneys' Fees Between Primary Counsel and Common Benefit Counsel

Dear Special Master Balhoff:

    In accordance with your request, Primary Counsel[1] propose the following plan of discovery to fairly defend their contractual interests and to assist you in making an informed recommendation regarding the allocation of common benefit fees appropriate in this instance:

    A. **Context**:

        1. Primary Counsel are participating in this MDL proceeding by virtue of private contracts executed in several different states. Judge Fallon has issued no orders impacting the terms or efficacy of those contracts. Common benefit counsel, on

---

[1] Primary Counsel consist of those firms represented or otherwise designated in the signature block of this correspondence.

the other hand, are participating by virtue of the Court's administrative authority over this MDL proceeding and have no contractual rights to, nor statutory authority for, attorney fees.  As described by Judge Fallon, in a proceeding such as this, "the common benefit fee comes out of the fee for the primary attorney – a slice out of that pie, so to speak."  Eldon E. Fallon, *Common Benefit Fees in Multi-District Litigation*, 74 La. L. Rev. 371, 379 (2014).

2. The FC seeks a total common benefit fee of at least $119,313,367.00, roughly 60-65% of the entire global fee depending upon the actual total sum available.[2]  To accomplish such an allocation under these circumstances, where the recovery of the claimants is not implicated, the Court would have to drastically reduce the contractual fees of Primary Counsel *for the benefit of common benefit counsel.*  The nature and extent of the FC's request is unprecedented in the federal jurisprudence and would turn the concept of "primary" attorney on its head.[3]

3. In addition to objecting to such an excessive common benefit percentage, Primary Counsel believe that the total fees available for distribution may be higher and that the FC's calculation of the benefit conferred is erroneous.

4. Judge Fallon has already established a formula for calculating the fees of individual primary counsel (i.e., a pro rata division of the fees per firm based on the total benefit conferred).  *See* PTO 28(F) (Doc. 20282).  The only unknown factor is the

---

[2] This amount is 10.65% (i.e., $114,581,308.82 out of the purportedly available fund of $192,981,363.35) of what the PSC considers to be the total benefit conferred, plus an additional $4,732,058.26 which the PSC has apparently reserved for itself even though said funds have not been allocated by the Court.

[3] Compare for instance the Vioxx MDL where the Court capped contingency fees at 32% based on its "inherent authority" to assure the adequacy of the recovery for the claimants, and then allocated 6.5% of those fees for the common benefit.  *In re Vioxx Products Liability Litigation,* 760 F. Supp.2d 640 (E.D. La. 2010).  In this instance, the Court is being asked to exercise its inherent authority to alter private fee agreements for the benefit of common benefit counsel, not claimants.  By doing so, the FC invites the Court to enter uncharted territory regarding its authority to award fees in an MDL proceeding. See Charles Silver, Geoffrey P. Miller, *The Quasi-Class Action Method of Managing Multi-District Litigation: Problems and a Proposal,* 63 Vand. L. Rev. 107 (2010).

    total sum of all such fees, which will depend on the size of the "slice" allotted to the common benefit. Simply put, the labor of Primary Counsel is not at issue.

5. Judge Fallon also has already determined that Primary Counsel are entitled to conduct discovery as a matter of basic Due Process. That issue was fully briefed by the parties and summarily disposed of without the need for even a Hearing, much less oral argument. See Doc. 20410.

6. In accordance with the Court's directive, Primary Counsel seek discovery of information relevant to calculating the size of the fee award requested by the FC for the common benefit, in particular information that relates to the PSC's "time and expense submissions, procedures, and the relevant work of Philip [Garrett], CPA." Doc. 20410.

7. Considering the extent and the circumstances of the FC's request, the scope of discovery sought by Primary Counsel is hardly disproportionate to the expense and burden on the PSC, which has no contractual or statutory rights and was obligated to maintain evidence to support its entitlement to common benefit fees in any event.

B. **Scope of Discovery**: In accordance with Judge Fallon's Order (Doc. 20410), Primary Counsel seek the following information regarding the "time and expense" submissions allegedly attributable to the common benefit, the "procedures" utilized by the FC for assigning value to the common benefit in this instance, and the relevant work of Phillip Garrett relating thereto:[4]

1. An accounting of all fees subject to distribution for common benefit work and expenses claimed;

---

[4] This Discovery Plan addresses the proposed subjects of discovery, not the actual discovery devices. *See* the proposed Notice of 30(b)(6) Deposition & Requests for Production attached as Exhibit B to *Primary Counsel's Motion for a Case Management Order Providing for Discovery, the Unsealing of Records Regarding Common Benefit Fees, and the Appointment of a Special Master* (Doc. 20394-3).

2. The particulars of the common benefit work and expenses claimed, including whether said work and expenses were necessary, accurate and/or encompass the prosecution of Taishan (or other non-settling Defendants) claims;

3. Any agreements entered into with the FC and/or PSC and Primary Counsel regarding fees and costs;

4. Work performed by third parties (i.e., non PSC members and/or their associates and/or their staff) that is being claimed as common benefit work or a common benefit bestowed upon the class, the alleged basis for those assignments and entitlement to compensation for said work;

5. The PSC's alleged entitlement to and accounting of $10,000,000.00 (Ten million dollars) from the proceeds of the settlements with Knauf and other settling defendants (hereinafter, collectively referred to as "Knauf") to fund:

    a. prosecution of claims against Taishan and/or other non-settling defendants, including but not limited to "the commitment that the PSC made to the Knauf Defendants in connection with the Knauf Settlement to continue to prosecute the class claims against the Taishan Defendants. . . ." (*The Fee Committee's Omnibus Response to Objections to the Fee Committee's Motion to Determine the Allocation of the Global Fee Award as Between Common Benefit Fees and Individual Counsel's Fees Pursuant to PTO 28(F)*, Doc. 20384-2, p. 10, fn.7); and

    b. work unrelated to prosecution, settlement and/or administration of Knauf claims;

6. The PSC's expenses and the amount reimbursed to date, including the PSC's shared and held cost and expense reimbursements;

7. The PSC's knowledge of any and all work performed by privately retained counsel:

   a. at the time the PSC negotiated the Knauf attorneys' fee and cost settlement sum, which was signed on or about December 20, 2011 and at the time the second settlement was signed on or about August 12, 2013;

   b. in administering the claims necessitated by the settlements; and/or

   c. to date;

8. All time and expense submissions related to or resulting from the lawsuit styled, *Cataphora, Inc. v. Parker, et al.* in the Northern District of California (3:09-cv-05749), including the facts and circumstances surrounding and leading up to that lawsuit, the outcome of the lawsuit whether by settlement or otherwise, and the PSC's decisions affecting the common benefit relating thereto;

9. The PSC/FC's procedure for computing the proposed allocation of fees as set forth in the *Memorandum in Support of the Fee Committee's Motion to Determine the Allocation of the Global Fee Award as Between Common Benefit Fees and Individual Counsel's Fees Pursuant to PTO 28(F)* (Doc. 20293-1);

10. The PSC's calculation and various components of the total benefit conferred by the settlements entered in this MDL which it alleges to be $1,120,313,305.90;

11. The PSC's calculation and various components of the total benefit provided by individual counsel (i.e., $658,713,629.62);

12. Funds paid to pro se claimants and whether those funds are included in the total benefit provided by individual counsel (i.e., $658,713,629.62);

13. The basis(es) for the attorneys' fee negotiated by the PSC in each of the settlement agreements reached as a result of this MDL and the PSC's belief that the fee was fair and adequate to compensate all fees, costs, and expenses of common benefit counsel, and fees of primary counsel for the work performed;

14. The value placed by the PSC on the various settlements entered and approved in this MDL;

15. The approval of, negotiation of and authority to enter the *Memorandum of Understanding* (Doc. 20381-1) and resulting reimbursement of attorneys' fees to Various Homebuilders from those settlements identified in the *Memorandum of Understanding*;

16. The total square footage of all properties known to the PSC to contain Knauf drywall at the time the first Knauf settlement was signed on or about December 20, 2011 and at the time of the second Knauf settlement signed on or about August 12, 2013;

17. Information and documents submitted to, received from, prepared by and/or exchanged with Philip Garrett;

18. Voluntary assessments deposited into the registry of the court and disclosed to Philip Garrett pursuant to Court Order dated March 24, 2011 (Doc. 8389);

19. Accounting of the Knauf claims that were settled directly with builder or other contractors;

20. The Other Loss Fund, including but not limited to the administration of and the PSC's valuation and accounting of the Other Loss Fund and claims made against the Other Loss Fund at the time the first Knauf settlement was signed on or about December 20, 2011 and an accounting of the fund which comprises the Other Loss Fund; and

21. The prosecution of contempt proceedings against Taishan and/or other non-settling Defendants and the funds received pursuant thereto.

C. **Unsealing of Records**:  Many of the documents regarding common benefit time and expenses have been filed under seal. The PSC/FC and Primary Counsel shall, within seven (7) days of your issuance of a discovery plan, submit a joint motion to unseal all records relating to the subjects set forth in subpart B of this proposed discovery plan.

D. **Completion of Discovery**:  Discovery shall be completed within ninety (90) days of the PSC/FC providing documents requested by Primary Counsel.

E. **Additional Briefing**:  Within twenty-one (21) days of the completion of discovery, the PSC/FC and Primary Counsel shall submit to you any additional briefing they deem appropriate and/or that you request to make a recommendation.

F. **Official Record**:  Upon your final recommendation regarding the allocation of fees, the parties shall jointly file, *in globo*, with the District Court all correspondence, briefs, reports, recommendations, and submissions to and/or from you and/or transcripts in connection with the proceeding before you.  Such documents shall form a part of the official court record.

G. **Interrogatories**:  Primary Counsel shall be entitled to twenty-five (25) interrogatories, excluding subparts.

H. **Depositions**: Primary counsel shall be entitled to take the following depositions:
   1. 30(b)(6) deposition of the PSC;
   2. 30(b)(6) deposition of the FC;
   3. Depositions of all PSC/FC members, including but not limited to:
      a. Russ Herman (Plaintiffs' Liaison Counsel, Co-Chair/Secretary of FC and PSC member) and
      b. Arnold Levin (Lead Counsel, FC Chair and PSC member);

4. Sandra Dugan

5. Fred Longer

6. Phillip Garrett, the Court-appointed CPA; and

7. 30(b)(6) deposition of BrownGreer, PC, the Court-appointed settlement administrator.

I. **Request for Production of Documents**: Primary Counsel shall be allowed to request and/or subpoena any and all documents relevant to the subjects identified in subpart B, including those relevant documents filed under seal;

J. **Production of Electronically Stored Information ("ESI") and Other Information**:

1. <u>Relevant information</u>: While not aware of the full extent of relevant information that may be stored electronically, Primary Counsel contemplate that most of the relevant information is stored electronically.

2. <u>Form of production/preservation</u>: ESI shall be produced in the native format of the original document. To the extent the document must be produced as an image:

    a. The file produced should maintain the integrity of all source, application, embedded, related file system metadata, and extracted text.

    b. No alteration shall be made to file names or extensions for responsive native electronic files. Electronic mail should include attachments.

    c. ESI shall be produced in word searchable (OCR'd) TIFF files, Bates numbered with the metadata as set forth on Attachment A and in the format set forth on Attachment B

3. <u>Media Format</u>: ESI shall be produced on CD ROMs, DVD-Rs, external hard drives, flash drives or uploaded via secured FTP, as the volume of data requires.

We look forward to working with you in this matter.

Sincerely,

**FAIRCLOTH, MELTON & SOBEL, LLC**

By: ___/s/ *Jimmy R. Faircloth, Jr.*___
   Jimmy R. Faircloth, Jr.
   jfaircloth@fairclothlaw.com
   Brook L. Villa
   bvilla@fairclothlaw.com
   Franklin "Drew" Hoffmann
   dhoffmann@fairclothlaw.com
   301 Main Street, Suite 920
   Baton Rouge, LA 70801
   Phone: (225) 343-9535
   Fax: (225) 343-9538

*Attorneys for Parker Waichman LLP*

**LISKA, EXNICIOS & NUNGESSER**

By: ___/s/ *Val Patrick Exnicios*___
   Val Patrick Exnicios, Esq.
   vpexnicios@exnicioslaw.com
   1515 Poydras Street
   14th Floor, Ste. 1400
   New Orleans, LA. 70112
   Phone: (504) 410-9611
   Fax: (504) 410-9937
   Cell: (504) 495-9666

*Attorneys for Whitfield Bryson & Mason LLP, Pendley Baudin & Coffin, Rhine Law Firm, and Luckey & Mullins*

**BARON & BUDD, P.C.**

By: ___/s/ *Russell W. Budd*___
   Russell W. Budd
   rbudd@baronbudd.com
   S. Ann Saucer
   asaucer@baronbudd.com
   3102 Oak Lawn Avenue, Suite 1100
   Dallas, TX 75219
   Phone: 214-521-3605
   Fax: 214-520-1181

**ALLISON GRANT, P.A.**

By: ___/s/ *Allison Grant*___
   Allison Grant
   agrant@allisongrantpa.com
   14 SE 4th St
   Boca Raton, FL 33432-6111
   Phone: 561-994-9646
   Fax: 561-431-4627

**MCCALLUM, HOAGLUND, COOK & IRBY, LLP**

By: ___/s/ *Eric D. Hoaglund*___
   Eric D. Hoaglund
   ehoaglund@mhcilaw.com
   905 Montgomery Highway, Suite 201
   Vestavia Hills, Alabama 35216
   Phone: (205) 824-7767
   Fax: (205) 824-7768

**MILSTEIN, ADELMAN, JACKSON, FAIRCHILD & WADE, LLP**

By: ___/s/ *Mark Milstein*___
   Mark Milstein
   mmilstein@majfw.com
   10250 Constellation Blvd., 14th Floor
   Los Angeles, CA 90067
   Phone: (310) 396-9600
   Fax: (310) 396-9635

| | |
|---|---|
| **GIEGER, LABORDE & LAPEROUSE, LLC** | **ROBERTS AND DURKEE, LLP** |
| By: ___/s/ *Victoria E. Emmerling*___<br>Andrew A. Braun<br>abraun@glllaw.com<br>Victoria E. Emmerling MI<br>temmerling@glllaw.com<br>701 Poydras Street, Suite 4800<br>New Orleans, Louisiana 70139-4800<br>Phone: (504) 561-0400<br>Fax: (504) 561-1011<br><br>*Attorneys for Morris Bart, L.L.C.* | By: ___/s/ *C. David Durkee*___<br>C. David Durkee<br>durkee@rdlawnet.com<br>2665 South Bayshore Drive<br>Suite 300<br>Coconut Grove, FL  33133<br>Phone (305) 442-1700<br>Fax: (305)442-2559 |

## Attachment A: ESI Metadata and Coding Fields

| Field Name | Populated For (Email, Edoc, or Both) | Field Description |
|---|---|---|
| ProdBeg | Both | Control Numbers |
| ProdEnd | Both | Control Numbers |
| BegAttach | Both | Control Numbers (First production bates number of the first document of the family) |
| EndAttach | Both | Control Numbers (Last production bates number of the last document of the family) |
| PgCount | Both | Page Count |
| Custodian | Both | Custodian name (ex. John Doe) |
| Native File | Both | Native File Link |
| EmailSubject | Email | Subject line of email |
| DateSent | Email | Date email was sent |
| DateMod | Edoc | Date the document was modified |
| TimeSent | Email | Time email was sent |
| To | Email | All recipients that were included on the "To" line of the email |
| From | Email | The name and email address of the sender of the email |
| CC | Email | All recipients that were included on the "CC" line of the email |
| BCC | Email | All recipients that were included on the "BCC" line of the email |
| Attach | Email | The file name(s) of the attached documents |
| DateCreated | Edoc | Date the document was created |
| FileName | Both | File name of the edoc or email (for emails which are not attachments to another email this is the subject line of the email with its applicable extension) |
| Title | Edoc | Any value populated in the Title field of the document properties |
| Subject | Edoc | Any value populated in the Subject field of the document properties |
| Author | Edoc | Any value populated in the Author field of the document properties |
| DocExt | Both | File extension of the document |
| Text | Both | Text extracted from the email or edoc |

| | | |
|---|---|---|
| Confidentiality | Both | Indicates if document has been designated as "Confidential" or "Highly Confidential" under the Protective Order |
| FileSize | Both | File size |
| Source | Both | Name of Party producing document |
| TextPath | Both | Filepath for OCR or extracted text files |
| MSGID | Email | Where applicable, Email system identifier assigned by the host email system. This value is extracted from parent message during processing |
| PST_OST_Filename | Email | Where applicable, Filename of PST or OST container from which email was collected |
| FilePath | Edoc | Original file/path of the location where the item resided at the time of preservation. This should include location, file name, and file source extension |
| Folder | Email | Where applicable, Folder location of the email within the PST or OST |
| AttachBates | Email | Bates numbers of the first pages of each attachment, separated by semi-colons |
| AttachCount | Email | Number of email attachments |
| AttachNames | Email | Names of the attachments as listed in the email, separated by semi-colons |
| DateReceived | Email | Date received |
| OutlookItemType | Email | Where applicable, Outlook item type, e.g., email, calendar item, contact, etc. |
| LastModBy | Edoc | Where applicable, Last person who modified a document |
| DocumentType | Both | Email, Edoc or Physical (for scanned documents) |
| HashValue | Both | MD5 or SHA1 hash value |
| Redacted | Both | "yes" if document was redacted |
| ProdVol | Both | Name of production media |
| Other Paths | Both | The full file paths, including file names, or in the case of emails, the folder names, of each copy of the document not being produced from this custodian, separate by semi-colons. |
| KrollControlNo | Both | Only for Clone Documents |

## **Attachment B: File Formats**

<u>Image Load Files</u>

- The name of the image load file should mirror the name of the delivery volume, and should have an .LFP extension (i.e., ABC001.LFP)

- The volume names should be consecutive (i.e., ABC001, ABC002, et. seq.)

- There should be one row in the load file per TIFF image.

- Every image in the delivery volume should be contained in the image load file.

- The image key should be named the same as bates number of the page.

- Load files should not span across media (e.g., CDs, DVDs, Hard Drives, Etc.), *i.e.*, a separate volume should be created for each piece of media delivered.

- Files that are the first page of a logical document should include a "D" where appropriate. Files that are the first page of an attachment to an e-mail should include a "C" where appropriate. Subsequent pages of all documents (regular document, e-mail, or attachment) should include a blank in the appropriate position.

    IM,VN00000001,D,0,@29502601;295026001\0000;VN00000001.TIF;2
    IM,VN00000002, ,0,@29502601;295026001\0000;VN00000002.TIF;2
    IM,VN00000003, ,0,@29502601;295026001\0000;VN00000003.TIF;2
    IM,VN00000004, ,0,@29502601;295026001\0000;VN00000004.TIF;2
    IM,VN00000005,D,0,@29502601;295026001\0000;VN00000005.TIF;2
    IM,VN00000006, ,0,@29502601;295026001\0000;VN00000006.TIF;2
    IM,VN00000007, ,0,@29502601;295026001\0000;VN00000007.TIF;2
    IM,VN00000008, ,0,@29502601;295026001\0000;VN00000008.TIF;2
    IM,VN00000009,D,0,@29502601;295026001\0000;VN00000009.TIF;2
    IM,VN00000010, ,0,@29502601;295026001\0000;VN00000010.TIF;2

    <u>Opticon Delimited File</u>:

    MSC000001,MSC001,D:\IMAGES\001\MSC000001.TIF,Y,,,3
    MSC000002,MSC001,D:\IMAGES\001\MSC000002.TIF,Y,,,
    MSC000003,MSC001,D:\IMAGES\001\MSC000003.TIF,Y,,,
    MSC000004,MSC001,D:\IMAGES\001\MSC000004.TIF,Y,,,2
    MSC000005,MSC001,D:\IMAGES\001\MSC000005.TIF,Y,,,

    <u>Summation DII File</u>:

    @C HASIMAGE YES
    @T EPRG036023 2
    @D D:\FILES\PRODUCTION\CD0004\VOL0011\Images

   EPRG036023.tif
   EPRG036024.tif

Concordance Delimited Files:

    þBegDocþþEndDocþþBegAttachþþEndAttachþþCustodianþ

- The data load file should use standard Concordance delimiters:

    o Comma – ¶ (ASCII 20)

    o Quote – þ (ASCII 254)

    o Newline – ® (ASCII174)

- The first record should contain the field names in the order of the data;

- All date fields should be produced in mm/dd/yyyy format;

- Use carriage-return line-feed to indicate the start of the next record;

- Load files should not span across media (e.g., CDs, DVDs, Hard Drives, Etc.); a separate volume should be created for each piece of media delivered;

- The name of the data load file should mirror the name of the delivery volume, and should have a .DAT extension (i.e., ABC001.DAT); and

- The volume names should be consecutive (i.e., ABC001, ABC002, et. seq.).