# FAIRCLOTH, MELTON & SOBEL, LLC

## ATTORNEYS

JIMMY R. FAIRCLOTH, JR. [1]

BARBARA BELL MELTON

DAVID R. SOBEL [2]

CHRISTIE C. WOOD

BROOK LANDRY VILLA

MATTHEW L. NOWLIN

DREW HOFFMANN

ONE AMERICAN PLACE

301 MAIN STREET, SUITE 920

BATON ROUGE, LA 70801

PHONE (225) 343-9535

FAX (225) 343-9538

www.faircothlaw.com

OF COUNSEL

WILSON & WILSON

JENA, LA

[1] L.L.M. IN LITIGATION

[2] ALSO ADMITTED IN TEXAS

October 7, 2016

Mr. Daniel J. Balhoff (*Via E-Mail*)
PERRY, BALHOFF, MENGIS & BURNS, LLC
2141 Quail Run Drive
Baton Rouge, LA 70808

> **RE:** ***In re: Chinese-Manufactured Drywall Products Liability Litigation*, MDL 2047 (E.D. La.) – Primary Counsel's Request for Additional Discovery**

Dear Special Master Balhoff:

Pursuant to Special Master Case Management Order No. 1 ("CMO No. 1") and the Order appointing a Special Master and allowing discovery, Primary Counsel[1] request an order providing for additional discovery relative to the "time and expense" submissions allegedly attributable to the common benefit, "procedures" utilized by the Fee Committee ("FC") for assigning value to the common benefit, and relevant work of Mr. Garrett. *See* Rec. Doc. 20410. Primary Counsel seek these additional materials for the purpose of challenging the size of the _total_ recommended common benefit fee, understanding that the allocation of common benefit fees is not yet ripe. Nevertheless, these issues are interrelated due to the PSC's alleged justification for its unprecedented request based on (1) the volume of work performed for the common benefit, and (2) the total value derived from this work. Primary Counsel cannot fairly challenge the legitimacy of the whole while being denied information about these foundational parts.

A. **Additional discovery is necessary to demonstrate that the FC's request is excessive, unprecedented, would create a chilling effect and would significantly deprive Primary Counsel of constitutionally protected property interests in contractual attorneys' fees.** [2]

"[T]he common benefit fee comes out of the fee for the primary attorney – a slice out of that pie, so to speak." Eldon E. Fallon, *Common Benefit Fees in Multi-District Litigation*, 74 La. L. Rev. 371, 379 (2014). Unlike Primary Counsel, common benefit counsel do not have a contractual right to attorneys' fees.[3] Rather, the value of their fees must be determined through a fact intensive inquiry into

---

[1] Primary Counsel consist of those firms represented or designated in the signature block of this correspondence.

[2] On October 5, 2016, the Mr. Garrett and the Fee Committee ("FC") purportedly produced those documents required by CMO No. 1. While those productions appear to be complete, Primary Counsel has not had the opportunity to review and analyze those productions to ensure that they contain all documents required to be produced by CMO No. 1.

[3] Many firms fall into both categories: common benefit counsel and Primary Counsel. Doc. 20384-2, p. 11. In fact, several

the type, timing, volume, necessity, and value of the common benefit work performed.   For that reason, common benefit counsel were required to submit monthly time and expense records.  Pretrial Order No. 9 [Rec. Doc. 147]; Pretrial Order No. 9A [Rec. Doc. 12961].

Throughout this MDL proceeding, the Plaintiffs' Steering Committee ("PSC"), the FC, the court-appointed CPA and the Court were allowed exclusive access to the information necessary to determine the value of the common benefit work performed, as those time and expense submissions and other documents related to common benefit work were filed under seal pursuant to Pretrial Order No. 9.  Rec. Doc. 147.  Based on that information, the FC, which shares leadership with the PSC,[4] recommended that common benefit counsel receive 60-65% of the entire attorneys' fee "pie."

As recognized by the Fifth Circuit, when an interested party recommends a fee allocation, the Court must be mindful of "How much deference is due the fox who recommends how to divvy up the chickens?  . . . [C]areful attention must be paid to the procedures by which the allocation is set. . . [and it is] necessary to scrutinize more closely those recommendations."  *In re High Sulfur Content Gasoline Products Liab. Litig.*, 517 F.3d 220, 235 (5th Cir. 2008) (internal quotations omitted) (quoting *In re Diet Drugs Products Liab. Litig.,* 401 F.3d 143, 173 (3d Cir. 2005)).

Primary Counsel will be deprived of attorneys' fees, a constitutionally protected property interest,[5] for the sake of common benefit counsel.  As such, Due Process requires Primary Counsel receive "a fair opportunity to present relevant facts and arguments to the court, and to counter the opponents' submissions."  *In re Thirteen Appeals Arising out of San Juan Dupont Plaza Hotel Fire Litigation*, 59 F.3d 295, 302 (1st Cir. 1995) (quoting *Aoude v. Mobil Oil Corporation*, 862 F.2d 890, 894 (1st Cir. 1988); see also *In re Nineteen Appeals*, 982 F.2d at 611 (citing *Gorman v. University of R.I.*, 837 F.2d 7, 14 (1st Cir. 1988).[6]  Accordingly, Primary Counsel are entitled to information *already available* to the FC and PSC, upon which they based their valuation of the common benefit work performed, for Primary Counsel to fully analyze the recommended allocation and prepare a fully-informed response thereto.

As set forth in detail below, the discovery allowed by CMO No. 1 fails to provide the procedural minimum, i.e., information necessary to evaluate and respond to the "fairness and reasonableness of [the common benefit] fee request."  *Yamada v. Nobel Biocare Holding AG*, No. 14-55263, 2016 WL 3207650, at *7 (9th Cir. Apr. 20, 2016, amended June 9, 2016).  That is, CMO No. 1 does not give Primary Counsel:

> . . . the raw material that they need[] to sift through the particulars of the PSC's fee application. . . . [They do not have] access to all the data reasonably necessary to formulate their objections, including all the PSC members' time-and-expense submissions, summaries thereof, detailed accounts of the procedures used by the PSC to gather review,

---

Primary Counsel Objectors are members of the PSC.  Rec. Doc. 20384-2, fn. 1.

[4] Arguably, the FC is an alter-ego of the PSC.  In the FC's Omnibus Response to Objections to the Fee Committee's Motion to Determine the Allocation of the Global Fee Award (the "Omnibus Response"), the FC discusses commitments made to the Knauf Defendants by the PSC but then refers to these commitments as "*our* responsibility to pursue these claims…" rather than the PSC's responsibility.  Rec. Doc. 20384-2, p. 14, fn. 7. (emphasis added).

[5] The right to payment of attorneys' fees is a constitutionally protected property interest.  *See Fontana v. Barham*, 707 F.2d 221 (5th Cir. 1983). *See also In re Nineteen Appeals*, 982 F.2d 603, 613 (1st Cir. 1992) ("the affected private interest is the monetary share of the funds due each [primary attorney]); *Rein v. Socialist People's Libyan Arab Jamahiriya,* 568 F.3d 345 354 (2nd Cir. 2009) (In reallocating contractually negotiated fees among counsel in a case of this nature, a court is disposing of a property interest.).

[6] *Primary Counsel's Motion for a Case Management Order Providing for Discovery, the Unsealing of Records Regarding Common Benefit Fees, and the Appointment of a Special Master* (Doc. 20394) contains an in-depth explanation of the mandates due process vis-à-vis attorneys' fees.

and audit time records and the working papers, correspondence, and documentation generated by the PSC's accountants during the compilation process.

*In re Thirteen Appeals*, 56 F. 3d at 303.  Specifically, CMO No. 1, *inter alia*, does not require the PSC or FC to produce documentation regarding the approval or disapproval of common benefit time, agenda, minutes and other existing records of meetings pertaining to common benefit work, the procedure for calculating the common benefit fee requested, or the FC's valuation of benefits conferred upon claimants by common benefit counsel to enable Primary Counsel to traverse the self-serving representations made by the FC and ascertain the true amount of common benefit work performed,  Further, it does not allow Primary Counsel to depose the FC's leadership, a representative of the PSC or other key individuals in this fee dispute who hold information critical to the designation of work as common benefit, the specific work that was designated as common benefit, and whether any non-common benefit work forms a part of the substance of the allocation proposal, information that is unobtainable from any other source.

**B.     Specific Nature and Grounds Necessitating Additional Discovery**

The following documents and depositions are necessary for Primary Counsel to evaluate the FC's valuation of the total benefit conferred upon claimants by common benefit counsel and the FC's recommendation to allocate $119,313,367.00 in fees to the common benefit and, thereafter, provide you with an informed response based on *all* relevant facts, not just those facts the FC and PSC wish to share:

> **1.   Documents: (a) relied upon by Philip A. Garrett in preparing his Declarations,[7] including but not limited to all submissions of common benefit time and expenses submitted to him pursuant to Pretrial Orders Nos. 9, 9A and 28 including all initial submissions and all revised submissions submitted by any attorney or firm; and (b) all ledgers, reconciliations, accountings or lists of common benefit expenses, including all records of whether or not each expense has been reimbursed to date.[8]**

CMO No. 1 (§ 5) requires Mr. Garrett to produce documents referenced in his Declaration, Total Time and Held Costs from Inception of the Case to Present, Held Costs Expense Reports, Shared Costs[9] Expense Reports and Lodestar reports. CMO No. 1 at p. 5.   Primary Counsel request that you expand CMO No. 1 to include documents *relied upon* by Mr. Garrett in preparing his Declaration including, but not limited to, all individual submissions of common benefit time and expenses, as well as all ledgers, reconciliations, accountings or lists of common benefit expense, including all records of whether or not each expense has been reimbursed to date.

Unlike Primary Counsel, who have a contractual right to attorneys' fees by virtue of their client contracts, common benefit counsel seek compensation based on a *quantum meruit* principle. Accordingly, Pretrial Orders Nos. 9 and 9A require common benefit counsel to document and submit to Philip Garrett all time and expenses for which common benefit reimbursement is sought.  The FC has

---

[7] According to CMO No. 1, "Declarations" are those Declarations provided by Mr. Garrett for the FC's Motion to Determine the Allocation of the Global Fee Award as Between Common Benefit Fees and Individual Counsel's Fees Pursuant to PTO 28(F) (the "Allocation Motion").  Primary Counsel is aware of only one such Declaration:  Doc. 20293-2, attached as Exhibit A to the Allocation Motion.  If Mr. Garrett provided the FC additional Declarations for the Allocation Motion, regardless of whether those Declarations were filed with the Court, Primary Counsel request that you order Mr. Garrett to produce them.
[8] See *Special Master Case Management Order No. 1*, p.4 (nos. 1-2), proposed by Primary Counsel and submitted to you on September 23, 2016 (hereinafter, "Proposed CMO No. 1"), an additional copy of which is enclosed for your convenience.
[9] On October 5, 2016, Mr. Garrett produced backup documentation for shared cost but did not produce any Shared Costs Expense Reports as required by CMO No. 1.

relied heavily on the amount and character of the common benefit time and expenses undertaken in this case to justify its request for the majority of all attorneys' fees available for distribution. Primary Counsel must be allowed to review those documents relied upon by the FC, including the sealed detailed time and expense submissions purportedly made for the common benefit, any backup documentation supporting those submissions and any other documents relied upon by Mr. Garrett in preparing his Declaration in order to fairly evaluate and respond to the claims made by common benefit counsel.

Further, while Mr. Garrett has reviewed the submissions, his review was not substantive. As he explained, "[M]y determination as to whether to disallow any item of time and expense from inclusion in allowed time or expenses was a matter of procedural convenience for the Court and not a determination on the merits. I made no subjective judgment regarding the value of any time allowed and attempted to judge solely upon objective criteria." Declaration of Philip A. Garrett, CPA. Rec. Doc. 20293-1, ¶ 10. Accordingly, the detailed time and expense entries and expense reports reflecting whether such submissions have been reimbursed[10] are necessary for Primary Counsel to conduct an independent, substantive evaluation of whether the entries are duplicative and/or excessive, whether the tasks were indeed undertaken and expenses incurred for the common benefit, and whether the tasks and expenses for which common benefit recovery is sought were related to work prosecuting the claims of non-settling defendants from which common benefit counsel have not obtained a recovery.

Additionally, pursuant to Pretrial Order No. 28, the FC is required to evaluate common benefit counsel's contributions toward generating the various Settlement Funds and to consider the relative contribution of each common benefit attorney to the outcome of the litigation. *See* Rec. Doc. 17379. In connection therewith, the FC sought to disallow certain common benefit work submitted to Mr. Garrett, which is not reflected in the documents he is asked to produce. Moreover, the foregoing obligation placed on FC necessarily implies that the outcome of the work undertaken should affect the compensation awarded for that work. Multiple settlements with highly varying settlement values are at issue. Without detailed time entries showing the time period in which the common benefit work was completed and the settlement to which the common benefit work relates, Primary Counsel are denied the opportunity to verify that these considerations were properly taken into account in the FC's allocation request. Due process demands that Primary Counsel have access to these sealed time records.

While CMO No. 1 provides Primary Counsel with a report of the total current common benefit hours submitted for reimbursement pursuant to Pretrial Orders 9, 9A, and 28, such summaries provide no insight into the specific nature and purpose of the work for which reimbursement is sought, nor does it allow Primary Counsel to confirm that the time and expense records upon which those summaries are based actually reflect what is included in the summary. Such a report is wholly inadequate for any meaningful evaluation of or opportunity to respond to the FC's claims set forth in the Allocation Motion. Moreover, Federal Rule of Evidence 1006 is clear that a party may seek to use a summary for presentation of information to the Court; nevertheless, the underlying raw data upon which the summary is based "must" be made available for examination or copying by other parties. Allowing the FC to use a summary of that data without allowing Primary Counsel access to the data upon which that summary is based directly conflicts with Rule 1006.

Finally, as Philip Garrett's Declaration notes (at ¶22) copies of all submissions provided to him by the law firms who completed common benefit work are accessible to the Court through the Case Cost

---

[10] Mr. Garrett has produced reports reflecting whether particular submissions for held costs were reimbursed; however, he has not produced the same documentation for shared costs.

Management System.  Retrieving and compiling the requested submissions from the central secure site where they are all stored would not be unduly burdensome to Mr. Garrett or the FC.

### 2.  All transcripts, agenda and minutes of PSC meetings and FC meetings[11]

As the FC recognizes in the Allocation Motion, the PSC has been appointed by the Court to essentially serve as counsel for all MDL plaintiffs.  Pretrial Order No. 3 [Rec. Doc. 21] appointed Russ Herman as Liaison Counsel.  Liaison Counsel's duties are set forth in Pretrial Order Nos. 1 [Rec. Doc. 2], 3 [Rec. Doc. 21], 5 [Rec. Doc. 24], 5A [Rec. Doc. 94], and include serving as the recipient of communications from the Court and the defendants for all plaintiffs and speaking to the Court and the defendants on behalf of all plaintiffs.  Pretrial Order No. 8 [Rec. Doc. 144-2] appointed the initial PSC and Arnold Levin as lead counsel.  Pursuant to Pretrial Order No. 8 [Rec. Doc. 144-2], lead counsel and Plaintiffs' Liaison Counsel are required to "coordinate the responsibilities of the PSC, schedule PSC meetings, keep minutes or transcripts of these meetings, appear at periodic court noticed status conferences, perform other necessary administrative or logistic functions of the PSC, and carry out any other duty as the Court may order."  Pretrial Order No. 8 further states that the PSC is to "[a]ct as spokesperson for all plaintiffs at pretrial proceedings and in response to any inquiries by the Court…."  Pretrial Order No. 9 [Rec. Doc. 147] allows submissions of common benefit time and expenses only for work that is pre-authorized by the PSC.

The PSC was created to act as a spokesperson for all plaintiffs and their individually retained counsel and was expected to report to plaintiffs and their counsel.  As intended by the Court, the PSC kept records and transcribed all PSC meetings to keep individual plaintiffs' counsel, including Primary Counsel, apprised of the PSC's work.  See PTO 1 (Miscellaneous, Section 5 at p. 13) [Rec. Doc. 2].  Accordingly, PSC meeting agendas, minutes, and transcripts, for which Primary Counsel are being charged, should be readily accessible to Primary Counsel.  The written records of these meetings likely contain important and highly relevant information regarding the nature, extent, necessity, approval and/or disapproval of common benefit time and expenses expended in this litigation.  The Allocation Motion repeatedly asserts a "Herculean effort" of common benefit counsel as justification for their unprecedented request for 60% of the attorneys' fees.  Primary Counsel should not be forced to take the FC at their word regarding these efforts, particularly given that Knauf agreed to accept service of process and the first settlement with Knauf, who has contributed over $160 million of the attorneys' fees in this case was reached within 15 months of the creation of the MDL.  Access to this information, kept on order of the Court, is necessary to allow Primary Counsel to independently verify and respond to the FC's claims regarding the extraordinary efforts and skill required of the PSC in reaching the settlements at issue.

### 3.  All emails, written communications and other documents:
   **a.  To the PSC or any member of the PSC requesting authorization to conduct common benefit work pursuant to Pretrial Order No. 9 (Doc. 147); or**
   **b.  From the PSC or any member of the PSC authorizing, requesting or denying common benefit work pursuant to Pretrial Order No. 9 (Doc. No. 147).[12]**

Pretrial Order No. 9 [Rec. Doc. 147] sets forth the procedure for submission of common benefit time and expenses.  Paragraph (1) "[a]ll time and expenses submitted must be incurred only for work authorized in advance by the Plaintiffs' Steering Committee." Pretrial Order No. 28 [Rec. Doc. 17379] further states "[o]nly time and expenses that are accurate and solely related to approved and assigned

---

[11] Proposed CMO No. 1, p. 5 (No. 2).
[12] Proposed CMO No. 1, p. 5 (No. 3).

common benefit work shall be eligible for consideration of reimbursement for common benefit time and expenses. Counsel shall only include in its claim for consideration of reimbursement for common benefit time and expenses only time or expenses authorized by Pretrial Order Nos. 9, 9A or this Order." The Court imposed these formalities, in part, to assure the existence of a record to substantiate common benefit work and expenses. Thus, the PSC should have maintained records demonstrating compliance with these orders.[Rec. Doc. 147], 9A [Rec. Doc. 12961], or 28 [Rec. Doc. 17379]. Indeed, Pretrial Order No. 8 [Rec. Doc. 144-2] requires the PSC to "[m]aintain adequate files of all pretrial matters. . . ."

This request goes directly to the procedures governing reimbursable common benefit time as required by the Court and thus is highly relevant to the amount of fees earned by common benefit counsel.

### 4. All emails, written communications and other documents to, from or by FC member(s) or PSC member(s) discussing or relating to:

#### a. Allocation of fees between common benefit counsel and primary counsel;[13]

The focus of the instant proceeding is the FC's recommended fee allocation. Primary Counsel are entitled to review the communications of the FC and PSC and other documents relating to that recommendation. Without access to this information, Primary Counsel, whose property rights are inexplicably impaired by the FC's recommendation, cannot determine whether their interests were properly included in the FC's process that led up to its recommendation. The first 56 pages of the Allocation Motion attempts to justify an allocation that would award over 60% of the available fees to common benefit counsel. Only on page 57 of 63 does the FC begin to discuss how this request will affect Primary Counsel and in doing so, they paint a very misleading picture of the work performed by Primary Counsel. The FC's Motion leaves significant doubt that the interests of Primary Counsel were fairly considered, *let alone represented,* in the FC's process. Accordingly, Primary Counsel are entitled to see all communications and documents relating to the FC's recommended allocation to determine whether their interests were fairly considered and, thereafter, compose an informed response to such claims. Further, this request relates directly to the procedures set forth in Pretrial Order Nos. 28 [Rec. Doc. 17379] and 28(F) [Rec. Doc. 20282], on which the Court has allowed discovery to proceed. *See* Rec. Doc. 20410.

#### b. Claims against Taishan and/or other non-settling defendants;[14]

The FC's Allocation Motion refers to and describes at length "labor intensive" efforts undertaken in pursuit of the non-settling Chinese defendant "Taishan" and its affiliates, strongly indicating that time and expenses incurred in pursuing non-settling defendants have been included in the total hours and expenses for which common benefit counsel seeks reimbursement.[15] After several filed objections questioned the propriety of compensating common benefit counsel for work pursuing non-settling defendants from the settlements at issue, the FC filed its Omnibus Response to Objections to the Fee Committee's Motion to Determine the Allocation of the Global Fee Award [Rec. Doc. 20384-2] which states that because of the "interrelatedness of the settlements" including a secret deal the PSC reached with the Knauf defendants to pursue the Taishan defendants,[16] common benefit counsel is entitled to

---

[13] Proposed CMO No. 1, p. 6 (No. 4.a).

[14] Proposed CMO No. 1, p. 6 (No. 4.b).

[15] *See, e.g.,* Omnibus Response [Rec. Doc. 20384-2, p. 18, fn 22] ("As part of the PSC's global settlement with the Knauf Defendants, the PSC agreed to continue the labor intensive task of pursuing the Taishan Defendants. . . .").

[16] "These objectors are likely unaware of the commitment that the PSC made to the Knauf Defendants in connection with the Knauf Settlement to continue to prosecute the class' claims against the Taishan Defendants, which was in addition to our ongoing responsibility to pursue these claims for Taishan claimants." *Id.* at 10, fn 7.

compensation from the settlements at issue for time spent pursuing Taishan and other non-settling defendants. This faulty premise defies traditional *quantum meruit* principles (particularly in a limited fee fund), as common benefit counsel has not conferred any benefit upon plaintiffs' from time and effort spent pursuing entities from which a recovery has not been obtained. Further, undisclosed agreements secretly reached by the PSC with one defendant to pursue another raise additional questions of propriety.

Primary Counsel fiercely contend that any inclusion of time or expenses related to the pursuit of non-settling defendants in the FC's common benefit fee request is wholly inappropriate. The communications requested above are necessary for Primary Counsel to evaluate the extent of the FC's inclusion of time and expenses related to non-settling defendants in the FC's common benefit fee request. Further, the requested communications are critical to determining why the FC believes such inclusion is justified. The FC has suggested that an understanding was reached with the Knauf defendants during settlement negotiations wherein the PSC agreed to continue pursuit of the non-settling Taishan defendants and has referenced this secret deal as justification for including all common benefit time and expenses related to the non-settling Taishan defendants in its request for common benefit fees and costs from the settlements at issue. Primary Counsel are entitled to all available information regarding this unwritten agreement with the Knauf defendants to allow Primary Counsel the opportunity to fairly evaluate and respond to the FC's request for compensation it contends common benefit counsel are due pursuant to this agreement. Further, Primary Counsel are entitled to all other communications and documents relating to common benefit time and expenses spent pursuing Taishan and other non-settling defendants to determine the extent to which the FC has requested common benefit fees and expenses from the settlements at issue for work that has not yet borne fruit.

### c.  Whether a particular activity or expense was for the common benefit;[17]

As noted above, Pretrial Order Nos. 9, 9A, and 28 require pre-approval or assignment by the PSC. Further, Pretrial Order No. 28 charges the FC with reviewing time and expense records, determining their propriety, and evaluating the relevant contribution the activity made toward generation of the settlement funds. Communications and documents by and between the FC and submitting firms related to whether an activity or expense was for the common benefit provide necessary insight on the process the FC employed in determining what is and is not properly included as common benefit time pursuant to Pretrial Order Nos. 9, 9A, and 28, and are highly relevant to the FC's ultimate recommendation of the fee allocation. This request is squarely within the Court's Order allowing discovery on the "procedures" leading to the FC's fee allocation recommendation. *See* Rec. Doc. 20410. Without these communications, Primary Counsel is hampered in understanding the process and principles the FC used when vetting common benefit time, which common benefit time it included, and whether any work that it disputes as common benefit was included as support for its proposed fee allocation. Primary Counsel have the right to independently confirm that the FC appropriately carried out the Court's Orders during this process and to traverse the FC's representation that the work it includes as support for its proposed allocation was, in fact, considered by the FC to be common benefit through the use of such procedures.

### d.  Allowance or disallowance of common benefit time or expenses;[18]

This request is closely related to section (c), and is necessary for the reasons cited above.

---

[17] Proposed CMO No. 1, p. 6 (No. 4.c).
[18] *Id.* at No. 4.d.

**e.  Value of all benefits conferred upon claimants by either common benefit counsel or individually retained counsel.**[19]

Pretrial Order No. 28 requires the FC to consider the *Johnson* factors "and other matters considered by the courts to evaluate the fee allocations."  Rec. Doc. l7379, p. 10, ¶14; *see also* Allocation Motion, [Rec. Doc. 20293-1, pgs. 17-51] (discussing the *Johnson* factors).  With that mandate in place, the FC contends that common benefit counsel conferred approximately $1.1 billion of value upon the MDL plaintiffs as a result of the settlements and that common benefit counsel's compensation should be based upon this value.  Conversely, emails disseminated to individual plaintiffs' counsel pursuant to Pretrial Order 28(F) from Brown Greer, the Court appointed settlement administrator, value the total benefit conferred upon claimants by individual plaintiffs' counsel at $658,713,629.62. Primary Counsel intends to prove that the value alleged by the FC is inflated, includes several inappropriate items, and that the FC lacks a credible methodology for calculating its alleged value.   Each of these areas requires discovery.  The importance and relevance of this information is unquestionable.  Basic due process requires that Primary Counsel have access to documents and communications referring and relating to both of these calculations to allow Primary Counsel to formulate an educated and informed response to the FC's fee request.

**5.  Memoranda, reports, ledgers, spreadsheets, or other documents prepared by or with input from Sandra Duggan regarding, discussing or relating to:**
   **a.  Common benefit time and/or expenses;**
   **b.  Whether a particular activity or expense was for the common benefit;**
   **c.  The allowance or disallowance of common benefit time or expenses; or**
   **d.  The value of benefits conferred upon claimants by either common benefit counsel or individually retained counsel.**[20]

As noted above, Pretrial Order Nos. 9 and 9A provide guidelines for submission of common benefit time and Pretrial Order No. 28 charges the FC with reviewing time records and expense reports, evaluating their propriety, and evaluating the relevant contribution the activity made toward generation of the settlement funds.  As evidenced by the Appendices filed by the FC with its Omnibus Response to Objections to the Allocation Motion, Sandra Duggan of Levin, Fishbein, Sedran & Berman prepared an analysis for the FC of each firm's common benefit time and expense submissions.  This analysis included notes on general problems with the firm's time and expense submissions, along with a summary of the time and expenses submitted, which included highlighted entries that appeared problematic.

Communications and documents related to the FC's determination of what is or is not properly submitted and included as reimbursable common benefit time (pursuant to Pretrial Order Nos. 9, 9A, and 28) are highly relevant to determining the appropriate size of the slice to be awarded to common benefit counsel. Sandra Duggan was intimately involved in this vetting procedure, and as such, Primary Counsel are entitled to any documents prepared by or prepared with input from Sandra Duggan related to vetting common benefit time.  This request is clearly within the Court's Order allowing discovery on the "procedures" leading to the FC's recommended fee allocation.  *See* Rec. Doc. 20410.  Without access to these communications and documents, Primary Counsel is excluded from critical information needed to understand the process and principles the FC used when vetting common benefit time and to confirm that the representations made by the FC to support its proposed allocation are consistent with the outcomes

---

[19] *Id.* at No. 4.e.
[20] *Id.* at No. 5.a-d.

of this vetting procedure.  Primary Counsel have the right to independently confirm that the FC appropriately carried out the Court's Orders during this process.

### 6.  Depositions of Fee Committee Chair and Co-Chair[21]

CMO No. 1 provides for an eight-hour deposition of one FC designee.  Primary Counsel request an expansion of CMO No. 1 by specifically requiring the depositions of the FC Chair, Arnold Levin, and Co-Chair, Russ Herman, pertaining to those documents listed in CMO No. 1 as well as the additional documents requested above in sections B(1)-(5) of this correspondence in accordance with Proposed CMO No. 1.  This request is necessary and not disproportionate to the FC's proposal to allocate $119,316,376.00 to common benefit counsel.

As explained above, the Court charged the FC, led by the Chair and Co-Chair, with recommending an allocation of approximately $193 million in fees between common benefit counsel and individually retained counsel.  *See also* Pretrial Order No. 28 [Rec. Doc. 17379] and 28(F) [Rec. Doc. 20282].  Prior to their recommendation being filed, the FC was ordered to undertake a rigorous analysis of the common benefit time and expenses submitted.  Pretrial Order No. 28 (Step Six: ¶11) states:

> In order to assist the Court, the FC shall recommend an allocation of the amounts awarded by the Court to compensate counsel for common benefit fees and reimbursement of reasonable expenses.  In making the recommendation, the FC shall review the time records and expense reports submitted to Philip Garrett pursuant to Pre Trial Order Nos. 9 and 9A, as well as each of the Initial Affidavits and take into consideration the time and common benefit work of all counsel in the MDL and coordinated state actions. The FC may take testimony if necessary.

Further, Arnold Levin and Russ Herman also serve as lead and Liaison Counsel in the underlying litigation.  Pre-Trial Order No. 8 states "[i]t shall be the lead counsel's duty, together with Plaintiffs' Liaison Counsel, to coordinate the responsibilities of the PSC, schedule PSC meetings, keep minutes or transcripts of these meetings…."  *See also* Pretrial Order No. 9, p. 3 (requiring Plaintiffs' Liaison Counsel to approve all shared costs in advance of being incurred).

Arnold Levin and Russ Herman, as lead and Liaison Counsel, were responsible for coordinating and overseeing all common benefit work and the overall strategy of the Chinese drywall litigation.  They are the most knowledgeable persons regarding the consolidated efforts of all common benefit counsel.  Additionally, they are the leaders of the FC, who have proposed the fee allocation at the very heart of this dispute. Primary Counsel must be allowed to depose these individuals on the information they reviewed, the procedures they employed, their valuation of common benefit time and the settlements at issue, and any other relevant information considered or discussed in making their recommendations.

### 7.  Deposition of Sandra Duggan[22]

As explained above, Ms. Duggan was intimately involved with scrutinizing the common benefit time and expense submissions in this matter. She reviewed and analyzed the submissions, participated in meetings with counsel who performed common benefit work and prepared reports for the FC related to each firm's common benefit time and expenses submitted and its contribution made. Ms. Duggan played

---

[21] *Id.* at p. 8, No. 2.
[22] *Id.* at p. 9, No. 3.

an important role in valuing the common benefit time for which fees are sought, and has knowledge critical to understanding the value of the common benefit work.  Accordingly, Primary Counsel must be allowed to depose her in accordance with the guidelines set forth in in Proposed CMO No. 1.

### 8.  Deposition of Plaintiffs' Steering Committee Designee[23]

The PSC was responsible for coordinating, overseeing and authorizing common benefit work in this MDL.  For purposes of recommending a fee allocation to the Court, the PSC and FC shared responsibility.  As required by the Court, "[T]he FC shall coordinate with the [PSC] and submit jointly to the Court a consolidated, joint petition ('Joint Fee Petition') for an award of common benefit attorneys' fees and reimbursement of expenses."  Pretrial Order No. 28 [Rec. Doc. 17379, Step Three, ¶ 6].  Because of the PSC's oversight of common benefit activity and submission of a fee petition to the Court, Primary Counsel must be allowed to depose one of its representatives in accordance with the guidelines set forth in Proposed CMO No. 1 to the extent the relevant information is not disclosed by the documents produced in this matter or during the depositions of the FC Chair and/or Co-Chair.

### C.   Primary Counsel Must be Allowed Access to the Relevant Sealed Documents

CMO No. 1 (§ IV) requires all sealed documents to remain confidential and allows Primary Counsel, Objectors to the proposed fee allocation, to "share with Co-Liaison Counsel for the Objectors those documents filed under seal pertaining to those respective Objectors."  Further, it requires the production of certain documents to Co-Liaison Counsel, all of which are to "remain confidential (except as provided herein) and be provided under seal."  CMO No. 1 contains no provision allowing for Co-Liaison Counsel to share the documents produced in this proceeding with Primary Counsel.

Primary Counsel agree that Co-Liaison Counsel should have access to all documents produced in this matter; however, Primary Counsel must have the same access.  Unlike lead counsel or a court-ordered steering committee, Co-Liaison Counsel are not representatives of all Primary Counsel.[24]  Rather, they have been appointed _solely_ "to facilitate communication among Primary Counsel and other interested parties involved in this matter."  CMO No. 1 at § II.  In order for Primary Counsel to ensure that their interests are adequately represented, they must be given access to the documents produced by Mr. Garrett, the FC, and/or the PSC as well as being allowed to participate in the requested depositions.

### D.   Documents Must be Produced in Native Format of the Original

CMO No. 1 does not provide a format for the production of documents.  The Court has explained that "time is of the essence so that distributions can be expedited."  Pretrial Order No. 28 [Rec. Doc. 17379, ¶ 24].  To expedite the review of the documents produced, Primary Counsel request that you order the documents to be produced in native format in accordance with the specifications set forth in Proposed CMO No. 1, p. 7 and Attachments A and B.  Production in this manner will allow Primary Counsel to streamline their review, cull duplicates, sort information, and more easily pinpoint the most relevant documents.

Sincerely,

---

[23] _Id._ at p. 10, No. 3
[24] Co-Liaison Counsel each represent individual firms in this dispute and have not been retained by all Primary Counsel.

**FAIRCLOTH, MELTON & SOBEL, LLC**

By:    /s/ *Jimmy R. Faircloth, Jr.*    
    Jimmy R. Faircloth, Jr., *Co-Liaison Counsel*
    jfaircloth@faircorthlaw.com
    Brook L. Villa
    bvilla@faircorthlaw.com
    Franklin "Drew" Hoffmann
    dhoffmann@faircorthlaw.com
    301 Main Street, Suite 920
    Baton Rouge, LA 70801
    Phone: (225) 343-9535
    Fax: (225) 343-9538

    *Attorneys for Parker Waichman LLP*

**BARON & BUDD, P.C.**

By:    /s/ *Russell W. Budd*    
    Russell W. Budd
    rbudd@baronbudd.com
    S. Ann Saucer
    asaucer@baronbudd.com
    3102 Oak Lawn Avenue, Suite 1100
    Dallas, TX 75219
    Phone: 214-521-3605
    Fax: 214-520-1181

**MCCALLUM, HOAGLUND, COOK & IRBY, LLP**

By:    /s/ *Eric D. Hoaglund*    
    Eric D. Hoaglund
    ehoaglund@mhcilaw.com
    905 Montgomery Highway, Suite 201
    Vestavia Hills, Alabama 35216
    Phone: (205) 824-7767
    Fax: (205) 824-7768

**LISKA, EXNICIOS & NUNGESSER**

By:    /s/ *Val Patrick Exnicios*    
    Val Patrick Exnicios, *Co-Liaison Counsel*
    vpexnicios@exnicioslaw.com
    1515 Poydras Street
    14th Floor, Ste. 1400
    New Orleans, LA. 70112
    Phone: (504) 410-9611
    Fax: (504) 410-9937
    Cell: (504) 495-9666

    *Attorneys for Whitfield Bryson & Mason LLP, Pendley Baudin & Coffin, Rhine Law Firm, and Luckey & Mullins*

**GENTLE, TURNER, SEXTON & HARBISON, LLC**

By:    /s/ *K. Edward Sexton, II*    
    K. Edward Sexton, II
    esexton@gentlelaw.com
    501 Riverchase Parkway East, Suite 100
    Hoover, Alabama 35244
    Phone: (205) 716-3000

**MILSTEIN, ADELMAN, JACKSON, FAIRCHILD & WADE, LLP**

By:    /s/ *Mark Milstein*    
    Mark Milstein
    mmilstein@majfw.com
    10250 Constellation Blvd., 14th Floor
    Los Angeles, CA 90067
    Phone: (310) 396-9600
    Fax: (310) 396-9635

**ROBERTS AND DURKEE, LLP**

By: ___/s/ *C. David Durkee*___
    C. David Durkee
    durkee@rdlawnet.com
    2665 South Bayshore Drive, Suite 300
    Coconut Grove, FL 33133
    Phone: (305) 442-1700
    Fax: (305) 442-2559

**ALTERS LAW FIRM, PA**

By: ___/s/ *Matthew T. Moore*___
    Jeremy W. Alters, Esq.
    Matthew T. Moore
    matthew@alterslaw.com
    DCOTA | Design Center of the Americas
    1855 Griffin Road
    Suite C470
    Dania Beach, Florida 33004

**COLLINS & HORSLEY, P.C.**

By: ___/s/ *David L Horsley*___
    David L Horsley (AL #6090-I47H)
    david@collinshorsley.com
    2021 Morris Avenue, Suite 200
    Birmingham, Alabama
    Phone: 205-324-1834
    Fax: 205-324-1846

**ALLISON GRANT, P.A.**

By: ___/s/ *Allison Grant*___
    Allison Grant
    agrant@allisongrantpa.com
    14 SE 4th St
    Boca Raton, FL 33432-6111
    Phone: 561-994-9646
    Fax: 561-431-4627

**GIEGER, LABORDE & LAPEROUSE, LLC**

By: ___/s/ *Victoria E. Emmerling*___
    Andrew A. Braun
    abraun@glllaw.com
    Victoria E. Emmerling
    temmerling@glllaw.com
    701 Poydras Street, Suite 4800
    New Orleans, Louisiana 70139-4800
    Phone: (504) 561-0400
    Fax: (504) 561-1011

    *Attorneys for Morris Bart, L.L.C.*

**YANCE LAW FIRM, LLC**

By: ___/s/ *R. Tucker Yance*___
    R. Tucker Yance
    rty@yancelaw.com
    169 Dauphin Street Suite
    318 Mobile, AL 36602
    Phone: (251) 432-8003
    Fax: (251) 432-8009

Enclosure:  Proposed CMO No. 1

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

IN RE: CHINESE-MANUFACTURED
DRYWALL PRODUCTS LIABILITY
LITIGATION                                         **MDL NO. 2047**

                                                   **SECTION: L**

                                                   **JUDGE FALLON**
                                                   **MAG. JUDGE WILKINSON**

**THIS DOCUMENT RELATES TO:**
*ALL CASES*
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

<u>**SPECIAL MASTER CASE MANAGEMENT ORDER NO. 1**</u>

By Order dated July 18, 2016 (entered July 19, 2016), Daniel J. Balhoff was appointed

Special Master [Rec. Doc. 20410].  Thereafter, the Court clarified and supplemented that Order on

August 30, 2016 [Rec. Doc. 20478].  The following Case Management Order is established to

govern these proceedings before the Special Master:

**I.      <u>SEALED DOCUMENTS</u>**

The Special Master has been given access to all sealed documents.  Except as provided

herein, or as otherwise ordered by the Court or Special Master at a later date, all sealed documents

shall remain confidential.  All documents referenced in Section IV below shall be provided to Co-

Liaison Counsel, Jimmy Faircloth, Jr. and Val Exnicios, who will distribute such documents to

Objectors and may use such documents to address the limited issues before the Special Master.

Objectors may voluntarily share documents filed under seal pertaining to them with Co-Liaison

Counsel and other Objectors at their discretion.

## II.   **PENDING MOTIONS**[1]

The following motions are pending before the Special Master:

A.   Villa Lago Plaintiffs' Motion for a Final Award of Attorneys' Fees and Reimbursement of Costs [Rec. Doc. 20347].  The Fee Committee has filed a response [Rec. Doc. 20383].  The Villa Lago Plaintiffs intend to file a reply brief prior to this matter being set for adjudication.

B.   The Fee Committee's Motion to Determine the Allocation of the Global Fee Award as Between Common Benefit Fees and Individual Counsel's Fees Pursuant to PTO 28(F) [Rec. Doc. 20293].  Further, the Special Master has received Primary Counsel's Request to Allocate the Global Fee Award Between Common Benefit Counsel and Primary Counsel and Objections to the Fee Committee's Motion to Determine the Allocation of the Global Fee Award as Between Common Benefit Attorney and Individual Counsel Fees Pursuant to PTO 28(F) [Rec. Doc. 20336]. [List additional responses and objections]  This matter is not yet ready for adjudication.

C.   Motion for Immediate Disbursement of Undisputed Fees [Rec. Doc. 20434]. Krupnick Campbell Malone filed a Joinder of Primary Counsel's Motion for Immediate Disbursement of Undisputed Fees [Rec. Doc. 20436].  The Fee Committee filed a Response in Opposition to Objecting Counsel's Motion for Immediate Disbursement of Undisputed Fees [Rec. Doc. 20440].  A Response was filed by Taylor Martino, P.C. to the Motion for Immediate Disbursement of

---

[1]  The Special Master takes note that the Court has retained jurisdiction over certain motions [Rec. Docs. 20340 and 20341] that may impact on the sum of money to be set aside for Individually Retained Counsel.

Undisputed Fees [Rec. Doc. 20441] and the Fee Committee filed a Reply to the Response of Taylor Martino P.C. [Rec. Doc. 20455].  A request was made for oral argument on the Motion for Immediate Disbursement of Undisputed Fees.  The Special Master will hear oral argument on the matter on_____, 2016 at _____, Louisiana.

D.     The Fee Committee's Motion to Approve the Amended Memorandum of Understanding Regarding All Homebuilder Claims for Reimbursement of Counsel Fees [Rec. Doc. 20467].  The Special Master will also take into consideration the submission dated September 8, 2016 by Neal A. Sivyer of the Sivyer, Barlow & Watson, P.A. law firm, the submission dated September 8, 2016 by Arnold Levin of the Levin Fishbein Sedran & Berman law firm, and the submission dated September 12, 2016, by Hilarie Bass of the Greenberg Traurig law firm.   In addition, the Special Master will consider the anticipated motion of Mr. Sivyer to be considered an "Active Builder" pursuant to the schedule set forth in the September 9, 2016 letter of Arnold Levin and September 9, 2016 email of the Special Master adopting the schedule therein.

## IV.   <u>DISCOVERY</u>

The Special Master has reviewed Primary Counsel's Motion for a Case Management Order Providing for Discovery, the Unsealing of Records Regarding Common Benefit Fees, and the Appointment of a Special Master [Rec. Doc. 20394], a Motion for Joinder and Adoption of the Primary Counsel's Motion for a Case Management Order Providing for Discovery, the Unsealing of Records Regarding Common Benefit Fees, and the Appointment to a Special Master [Rec. Doc. 20420] and a Motion and Order for Leave to File Reply to the Fee Committee and Class Counsel's

Response in Opposition to the "Motion for Appointment of Val Exnicios & Jimmy Faircloth as Objectors' Co-Liaison Counsel, Without Other Objector Opposition, and Without PSC/FC Objection (Except as to Proposed Fee Compensation Provision)" [Rec. Doc. 20424].  The Special Master now makes the following determinations regarding discovery:

      A.    **<u>Initial Document Production</u>**

Objectors shall be entitled to the following initial written discovery without prejudice to their right to seek additional relevant documents once its review and analysis of the following documents are complete.

Within thirty (30) days of signing of this Case Management Order, Philip Garrett, CPA, shall produce to Co-Liaison Counsel for the Objectors (who shall distribute to Objectors), the Fee Committee and the Special Master the following, which shall remain confidential (except as provided herein):

      1.    Documents referenced or relied upon by Philip A. Garrett, CPA, in preparing his Declarations submitted in connection with  the Fee Committee's Motion to Determine the Allocation of the Global Fee Award as Between Common Benefit Fees and Individual Counsel's Fees Pursuant to PTO 28(F), including but not limited to all submissions of common benefit time and expenses submitted to Philip Garrett pursuant to Pre-Trial Orders Nos. 9, 9A and 28 including all initial submissions and all revised submissions submitted by any attorney or firm.

      2.    All ledgers, reconciliations, accountings or lists of common benefit expenses, including all records of whether or not each expense has been reimbursed to date, including but not limited to:

       a.      Total Time and Held Costs from Inception of the Case to Present, which will include a report identifying total time by employee, time totals by firm and time totals by firm summary.

       b.      Held Costs Expense Reports.

       c.      Shared Costs Expense Reports.

3. Lodestar reports (with current, inception and blended values) identifying the time totals for each billing employee or individual reporting common benefit time – sortable report from inception of the case to present, which identifies Lodestar information both from inception of the case to December 2013 and from January 2014 to present.

Within forty-five (45) days of signing of this Case Management Order, the Fee Committee and/or the Plaintiffs' Steering Committee shall produce to Co-Liaison Counsel for the Objectors (who shall distribute to Objectors), the Fee Committee and the Special Master the following, which shall remain confidential (except as provided herein):

1. A copy of the completed and signed Initial Affidavits for Compensation for Common Benefit Time and Reimbursement of Expenses received by the Fee Committee pursuant to Step 2 of PTO 28.

2. All transcripts, agenda and minutes of PSC meetings and FC meetings.

3. All emails, written communications and other documents:

       a.      To the PSC or any member of the PSC requesting authorization to conduct common benefit work pursuant to Pre-Trial Order No. 9 (Doc. 147); or

b.    From the PSC or any member of the PSC authorizing, requesting or denying common benefit work pursuant to Pre-Trial Order No. 9 (Doc. No. 147).

4.    All emails, written communications and other documents to, from or by FC member(s) or PSC member(s) discussing or relating to:

a.    The allocation of fees between common benefit counsel and primary counsel;

b.    The claims against Taishan and/or other non-settling defendants;

c.    Whether a particular activity or expense was for the common benefit;

d.    The allowance or disallowance of common benefit time or expenses; or

e.    The value of all benefits conferred upon claimants by either common benefit counsel or individually retained counsel.

5.    All memoranda, reports, ledgers, spreadsheets, or other documents prepared by or with input from Sandra Duggan regarding, discussing or relating to:

a.    Common benefit time and/or expenses,

b.    Whether a particular activity or expense was for the common benefit;

c.    The allowance or disallowance of common benefit time or expenses; or

d.    The value of benefits conferred upon claimants by either common benefit counsel or individually retained counsel.

All documents shall be produced in native format of the original document.  To the extent the document must be produced as an image:

1.  The file produced should maintain the integrity of all source, application, embedded, related file system metadata, and extracted text.

2.  No alteration shall be made to file names or extensions for responsive native electronic files. Electronic mail should include attachments.

3.  Electronically Stored Information ("ESI") shall be produced in word searchable (OCR'd) TIFF files, Bates numbered with the metadata as set forth on **Attachment A** and in the format set forth on **Attachment B**.

ESI shall be produced on CD ROMs, DVD-Rs, external hard drives, flash drives or uploaded via secured FTP, as the volume of data requires.

B.  **Depositions**

Following the completion of the production of the written discovery as outlined above, the following Round 1 depositions may proceed subject to the guidelines contained below.

**1.    Deposition of Philip Garrett**

Upon Objectors' review of the documents produced in accordance with this Case Management Order, Objectors may depose Philip Garrett within one (1) month of the completion of the production of the written discovery, subject to the availability and schedule of Mr. Garrett. The deposition shall be limited to the following topics:

a.  The Declarations of Philip Garrett, CPA.

b.  Reports prepared by Philip Garrett, CPA.

c.  Documents produced by Philip Garrett, CPA.

The deposition of Mr. Garrett shall be scheduled at a mutually convenient time and location to Philip Garrett and shall last no more than twelve (12) hours.  There shall be no more

than one (1) primary and one (1) secondary examining attorney for Objectors. Co-Liaison Counsel for the Objectors shall coordinate with all Objectors who shall have an aggregate allotted time of ten (10) hours to question Mr. Garrett, and the failure to allocate time among themselves or to enforce that allocation of time amongst themselves during the deposition shall not result in an extension of the deposition. Counsel who have individual or divergent positions which cannot be resolved by good faith negotiations with Co-Liaison Counsel for Objectors may examine Mr. Garrett limited to matters not previously covered, provided said counsel does not impede upon the ten (10) hour limitation set forth above. The Fee Committee shall be allocated time of two (2) hours to question Mr. Garrett. The Fee Committee will designate one (1) primary examiner.

### 2. Deposition of Fee Committee Chair and Co-Chair

The deposition of Arnold Levin (the Fee Committee Chair) and Russ Herman (the Fee Committee Co-Chair and Secretary) shall take place within one (1) month of the completion of the production of the written discovery regarding the following areas of inquiry:

a. The documents produced in response to Section IV.A. above and information contained within the those documents.

b. Paragraphs 1 through 10 of PTO 28 and PTO 28(F).

c. The Consolidated Joint Petition of the Fee Committee and the Plaintiffs' Steering Committee for A Global Award of Attorneys' Fees and Reimbursement of Expenses, Filed Pursuant to Pre-Trial Order No. 28 [Rec. Doc. 17700].

d. First Amendment to the Consolidated Joint Petition of the Fee Committee and the Plaintiffs' Steering Committee for A Global Award of Attorneys' Fees and Reimbursement of Expenses, Filed Pursuant to Pre-Trial Order No. 28 [Rec. Doc. 20205].

e.     The Fee Committee's Motion to Determine the Allocation of the Global Fee Award as Between Common Benefit Fees and Individual Counsel's Fees Pursuant to PTO 28(F) [Rec. Doc. 20293].

f.     The Fee Committee's Omnibus Response to Objections to the Fee Committee's Motion to Determine the Allocation of the Global Fee Award as Between Common Benefit Fees and Individual Counsel's Fees Pursuant to PTO 28(F) [Rec. Doc. 20384].

The deposition of the Fee Committee Chair and Co-Chair/Secretary shall be scheduled at a mutually convenient time and location and shall last no more than fourteen (14) hours each.  There shall be no more than one (1) primary and one (1) secondary examining attorney for Objectors. Questioning attorneys may only ask non-duplicative questions. Co-Liaison Counsel for the Objectors shall coordinate with all Objectors who shall have an aggregate allotted time of twelve (12) hours to question each deponent, and the failure to allocate time among themselves or to enforce that allocation of time amongst themselves during the deposition shall not result in an extension of the deposition.  Counsel who have individual or divergent positions which cannot be resolved by good faith negotiations with Co-Liaison Counsel for Objectors may examine the deponent limited to matters not previously covered, provided said counsel does not impede upon the twelve (12) hour limitation set forth above.  The Fee Committee shall be allocated time of two (2) hours to question each of the deponents listed in this section.  The Fee Committee will designate one (1) primary examiner.

### 3.     Deposition of Sandra Duggan

The deposition of Sandra Duggan shall take place within two (2) weeks of Arnold Levin or Russ Herman's deposition, whichever is later.  Ms. Duggan will be subject to the following areas of inquiry:

a.  Interviews and/or meetings conducted with Common Benefit Counsel regarding time and expense submissions in this matter and any documents or memoranda prepared in connection therewith.

b.  The documents produced in response to Section IV.A. above and information contained within the those documents.

The deposition of the Sandra Duggan shall be scheduled at a mutually convenient time and location and shall last no more than fourteen (14) hours.  There shall be no more than one (1) primary and one (1) secondary examining attorney for Objectors.  Questioning attorneys may only ask non-duplicative questions. Co-Liaison Counsel for the Objectors shall coordinate with all Objectors who shall have an aggregate allotted time of twelve (12) hours to question Ms. Duggan, and the failure to allocate time among themselves or to enforce that allocation of time amongst themselves during the deposition shall not result in an extension of the deposition.  Counsel who have individual or divergent positions which cannot be resolved by good faith negotiations with Co-Liaison Counsel for Objectors may examine the deponent limited to matters not previously covered, provided said counsel does not impede upon the twelve (12) hour limitation set forth above.  The Fee Committee shall be allocated time of two (2) hours to question the deponent listed in this section.  The Fee Committee will designate one (1) primary examiner.

### 3.  Deposition of Plaintiffs' Steering Committee Designee

Objectors may take the deposition of a designee of the Plaintiffs' Steering Committee following the depositions of the Mr. Levin, Mr. Herman and Ms. Duggan, provided that the deposition is not duplicative of the previous depositions. The Plaintiffs' Steering Committee shall designate at least one designee to testify as to the following areas of inquiry:

a.    The documents produced in response to Section IV.A. above and information contained within the those documents.

b.    Paragraphs 1 through 10 of PTO 28 and PTO 28(F).

c.    The Consolidated Joint Petition of the Fee Committee and the Plaintiffs' Steering Committee for A Global Award of Attorneys' Fees and Reimbursement of Expenses, Filed Pursuant to Pre-Trial Order No. 28 [Rec. Doc. 17700].

d.    First Amendment to the Consolidated Joint Petition of the Fee Committee and the Plaintiffs' Steering Committee for A Global Award of Attorneys' Fees and Reimbursement of Expenses, Filed Pursuant to Pre-Trial Order No. 28 [Rec. Doc. 20205].

The deposition of the Plaintiffs' Steering Committee shall be scheduled at a mutually convenient time and location and shall last no more than fourteen (14) hours which may be conducted over a period of two (2) days.  There shall be no more than one (1) primary and one (1) secondary examining attorney for Objectors.  Co-Liaison Counsel for the Objectors shall coordinate with all Objectors who shall have an aggregate allotted time of twelve (12) hours to question the deponent, and the failure to allocate time among themselves or to enforce that allocation of time amongst themselves during the deposition shall not result in an extension of the deposition.  Counsel who have individual or divergent positions which cannot be resolved by good faith negotiations with Co-Liaison Counsel for Objectors may examine the deponent limited to matters not previously covered, provided said counsel does not impede upon the twelve (12) hour limitation set forth above.  The Fee Committee shall be allocated time of two (2) hours to question the deponent.  The Fee Committee will designate one (1) primary examiner.

### 4.      General Deposition Guidelines

Except as otherwise provided herein, all depositions pursuant to this Case Management Order shall be confidential to avoid disclosure to adverse parties in this ongoing litigation. While the deponent is being examined about any under seal document or the confidential information contained therein, persons other than Objectors (and their attorneys) and Co-Liaison Counsel for Objectors, or any other individual(s) to whom disclosure is not authorized as set forth above shall be excluded from the deposition, and the Court Reporter shall designate such testimony as confidential.[2]  Further, portions of the transcript designated as confidential shall only be made available to those parties who originally had access or who have access pursuant to this Case Management Order to the under seal documents or the confidential information contained therein. The deposition shall be stenographically recorded by a court reporter that shall administer the oath or the affirmation to the deponent and a written transcript by the court reporter shall constitute the official record of the deposition for purposes of Fed.R.Civ.P. 30(e).  All parties shall bear their own costs in securing copies of the deposition transcript.   Objectors (including their counsel) and Co-Liaison Counsel shall have the right to monitor the deposition, but not question the deponent, by telephone.

Additional discovery (written discovery or depositions) will be permitted only upon order of the Special Master for good cause.  A party requesting additional discovery shall send a letter to the Special Master of no more than four (4) pages describing the nature and grounds of such additional discovery.

---

[2]  *See In re Xarelto Prod. Liab. Litig.,* MDL 2592, Pretrial Order No. 23 (Deposition Guidelines) at 2 (E.D.La. Feb. 17, 2016).  Available at: http://www.laed.uscourts.gov/sites/default/files/xarelto/Pretrial%20Order_23_0.pdf.

## V.  <u>**MERITS ADJUDICATION**</u>

At the conclusion of discovery, Counsel for the Objectors may submit a supplemental memorandum. Thereafter, the Fee Committee shall have fifteen (15) days to submit a response memorandum.  The Special Master will hold an evidentiary hearing on all outstanding issues regarding allocation of the global fee award no later than thirty (30) days from the Fee Committee's response memorandum.

New Orleans, Louisiana, this _____ day of _____, 2016.


_____

Special Master Dan Balhoff

**Attachment A: ESI Metadata and Coding Fields**

| Field Name | Populated For (Email, Edoc, or Both) | Field Description |
|---|---|---|
| ProdBeg | Both | Control Numbers |
| ProdEnd | Both | Control Numbers |
| BegAttach | Both | Control Numbers (First production bates number of the first document of the family) |
| EndAttach | Both | Control Numbers (Last production bates number of the last document of the family) |
| PgCount | Both | Page Count |
| Custodian | Both | Custodian name (ex. John Doe) |
| Native File | Both | Native File Link |
| EmailSubject | Email | Subject line of email |
| DateSent | Email | Date email was sent |
| DateMod | Edoc | Date the document was modified |
| TimeSent | Email | Time email was sent |
| To | Email | All recipients that were included on the "To" line of the email |
| From | Email | The name and email address of the sender of the email |
| CC | Email | All recipients that were included on the "CC" line of the email |
| BCC | Email | All recipients that were included on the "BCC" line of the email |
| Attach | Email | The file name(s) of the attached documents |
| DateCreated | Edoc | Date the document was created |
| FileName | Both | File name of the edoc or email (for emails which are not attachments to another email this is the subject line of the email with its applicable extension) |
| Title | Edoc | Any value populated in the Title field of the document properties |
| Subject | Edoc | Any value populated in the Subject field of the document properties |
| Author | Edoc | Any value populated in the Author field of the document properties |
| DocExt | Both | File extension of the document |
| Text | Both | Text extracted from the email or edoc |

| Confidentiality | Both | Indicates if document has been designated as "Confidential" or "Highly Confidential" under the Protective Order |
|---|---|---|
| FileSize | Both | File size |
| Source | Both | Name of Party producing document |
| TextPath | Both | Filepath for OCR or extracted text files |
| MSGID | Email | Where applicable, Email system identifier assigned by the host email system. This value is extracted from parent message during processing |
| PST_OST_Filename | Email | Where applicable, Filename of PST or OST container from which email was collected |
| FilePath | Edoc | Original file/path of the location where the item resided at the time of preservation. This should include location, file name, and  file  source extension |
| Folder | Email | Where applicable, Folder location of the email within the PST or OST |
| AttachBates | Email | Bates numbers of the first pages of each attachment, separated by semi-colons |
| AttachCount | Email | Number of email attachments |
| AttachNames | Email | Names of the attachments as listed in the email, separated by semi-colons |
| DateReceived | Email | Date received |
| OutlookItemType | Email | Where applicable, Outlook item type, e.g., email, calendar item, contact, etc. |
| LastModBy | Edoc | Where applicable, Last person who modified a document |
| DocumentType | Both | Email, Edoc or Physical (for scanned documents) |
| HashValue | Both | MD5 or SHA1 hash value |
| Redacted | Both | "yes" if document was redacted |
| ProdVol | Both | Name of production media |
| Other Paths | Both | The full file paths, including file names, or in the case of emails, the folder names, of each copy of the document not being produced from this custodian, separate by semi-colons. |
| KrollControlNo | Both | Only for Clone Documents |

# Attachment B: File Formats

<u>Image Load Files</u>

- The name of the image load file should mirror the name of the delivery volume, and should have an .LFP extension (i.e., ABC001.LFP)

- The volume names should be consecutive (i.e., ABC001, ABC002, et. seq.)

- There should be one row in the load file per TIFF image.

- Every image in the delivery volume should be contained in the image load file.

- The image key should be named the same as bates number of the page.

- Load files should not span across media (e.g., CDs, DVDs, Hard Drives, Etc.), *i.e.*, a separate volume should be created for each piece of media delivered.

- Files that are the first page of a logical document should include a "D" where appropriate. Files that are the first page of an attachment to an e-mail should include a "C" where appropriate.  Subsequent pages of all documents (regular document, e-mail, or attachment) should include a blank in the appropriate position.

```
IM,VN00000001,D,0,@29502601;295026001\0000;VN00000001.TIF;2
IM,VN00000002, ,0,@29502601;295026001\0000;VN00000002.TIF;2
IM,VN00000003, ,0,@29502601;295026001\0000;VN00000003.TIF;2
IM,VN00000004, ,0,@29502601;295026001\0000;VN00000004.TIF;2
IM,VN00000005,D,0,@29502601;295026001\0000;VN00000005.TIF;2
IM,VN00000006, ,0,@29502601;295026001\0000;VN00000006.TIF;2
IM,VN00000007, ,0,@29502601;295026001\0000;VN00000007.TIF;2
IM,VN00000008, ,0,@29502601;295026001\0000;VN00000008.TIF;2
IM,VN00000009,D,0,@29502601;295026001\0000;VN00000009.TIF;2
IM,VN00000010, ,0,@29502601;295026001\0000;VN00000010.TIF;2
```

Opticon Delimited File:

```
MSC000001,MSC001,D:\IMAGES\001\MSC000001.TIF,Y,,,3
MSC000002,MSC001,D:\IMAGES\001\MSC000002.TIF,Y,,,,
MSC000003,MSC001,D:\IMAGES\001\MSC000003.TIF,Y,,,,
MSC000004,MSC001,D:\IMAGES\001\MSC000004.TIF,Y,,,2
MSC000005,MSC001,D:\IMAGES\001\MSC000005.TIF,Y,,,,
```

Summation DII File:

```
@C HASIMAGE YES
@T EPRG036023 2
@D D:\FILES\PRODUCTION\CD0004\VOL0011\Images
```

EPRG036023.tif
EPRG036024.tif

Concordance Delimited Files:

þBegDocþþEndDocþþBegAttachþþEndAttachþþCustodianþ

- The data load file should use standard Concordance delimiters:

    o   Comma – ¶ (ASCII 20)

    o   Quote – þ (ASCII 254)

    o   Newline – ® (ASCII174)

- The first record should contain the field names in the order of the data;

- All date fields should be produced in mm/dd/yyyy format;

- Use carriage-return line-feed to indicate the start of the next record;

- Load files should not span across media (e.g., CDs, DVDs, Hard Drives, Etc.); a separate volume should be created for each piece of media delivered;

- The name of the data load file should mirror the name of the delivery volume, and should have a .DAT extension (i.e., ABC001.DAT); and

- The volume names should be consecutive (i.e., ABC001, ABC002, et. seq.).