UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | CIVIL ACTION |
| | NO. 09-02047 |
| | SECTION "L" (5) |
| THIS DOCUMENT RELATES TO: ALL CASES | |

ORDER & REASONS

Before this Court is Defendant China New Building Materials Co. ("CNBM"), CNBMIT Co. Ltd. ("CNBMIT"), CNBM USA Corp. ("CNBM USA"), and United Suntech Craft, Inc. ("United Suntech") (collectively, the "CNBM Entities") Motion to Decertify Class Pursuant to Rule 23(c)(1)(C). (R. Doc. 20627). Defendants Beijing New Building Materials Public Limited Company ("BNBM"), Beijing New Building Material (Group) Co. ("BNBM Group"), and Taishan join the Motion. (R. Docs. 20631, 20632). The Court has previously held that Taishan is an agent of BNBM, such that Taishan's jurisdictional contacts can be imputed to BNBM under Louisiana, Virginia, and Florida law. Additionally, under Louisiana law, Taishan, BNBM, BNBM Group, and CNBM formed a single business enterprise, such that Taishan's jurisdictional contacts can be imputed to those other entities. Therefore, the Court will address the Defendants' Motions as one. Having read the parties' briefs, reviewed the applicable law, and heard the parties on oral argument, the Court now issues this Order and Reasons.

## I.      INTRODUCTION

The present MDL litigation arises from alleged property damage and personal injuries sustained as a result of the presence of Chinese-manufactured drywall in homes and other buildings in a number of states. This Court previously certified the property damage aspect of this litigation. Defendants now seek decertification. To put this matter in perspective, the Court will first discuss the procedural and factual background and then turn to the Motion to Decertify.

## II.     PROCEDURAL BACKGROUND

From 2004 through 2006, the housing boom in Florida and rebuilding efforts necessitated by Hurricanes Rita and Katrina led to a shortage of construction materials, including drywall.  As a result, drywall manufactured in China was brought into the United States and used in the construction and refurbishing of homes in coastal areas of the country, notably the Gulf Coast and East Coast.  Sometime after the installation of the Chinese drywall, homeowners began to complain of emissions of smelly gasses, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes.  *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 894 F. Supp. 2d 819, 829 (E.D. La. 2012), *aff'd*, 742 F. 3d 576 (5th Cir. 2014).  Many of these homeowners also began to complain of various physical afflictions believed to be caused by the Chinese drywall.  Accordingly, these homeowners began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall.  Because of the commonality of facts in the various cases, this litigation was designated as multidistrict litigation.  Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation on June 15,

2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 2047 in the U.S. District Court, Eastern District of Louisiana.

The Chinese drywall at issue was largely manufactured by two groups of defendants: (1) the Knauf Entities, and (2) the Taishan Entities.  The litigation has focused upon these two entities and their downstream associates, and has proceeded on strikingly different tracks for the claims against each group as described below.

The Knauf Entities are German-based, international manufacturers of building products, including drywall, whose Chinese subsidiary, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), advertised and sold its Chinese drywall in the United States.  The Knauf Entities are named defendants in numerous cases consolidated with the MDL litigation and litigation in state courts. The Knauf Entities first entered their appearance in the MDL litigation on July 2, 2009.  *See* (R. Doc. 18).  Thereafter, the Court presided over a bellwether trial in *Hernandez v. Knauf Gips KG*, Case No. 09-6050, involving a homeowner's claims against KPT for defective drywall.  *See* (R. Doc. 2713).  The Court found in favor of the plaintiff family in *Hernandez*, issued a detailed Findings of Fact and Conclusions of Law and entered a Judgment in the amount of $164,049.64, including remediation damages in the amount of $136,940.46, which represented a cost of $81.13 per square foot based on the footprint square footage of the house.  *See* (R. Doc. 3012).

Subsequently, the Knauf Entities entered into a pilot remediation program with the Plaintiffs' Steering Committee ("PSC") in the MDL.  This program was largely based upon the remediation protocol formulated by the Court in *Hernandez*.  The Knauf pilot remediation program is ongoing and has, at present, remediated over 2,200 homes containing KPT Chinese drywall using the same protocol.  At the Court's urging, the parties began working together to monetize this program and make it available to a broader class of plaintiffs.

On December 20, 2011, the Knauf Entities and the PSC entered into a global, class Settlement Agreement ("Knauf Settlement Agreement"), which is designed to resolve all Knauf-related, Chinese drywall claims.  *See* (R. Doc. 12061-5). In addition to the Knauf Settlement Agreement, numerous defendants in the chain-of-commerce with the Knauf Entities have entered into class settlement agreements, the effect of which settles almost all of the Knauf Entities' chain-of-commerce litigation.  Although the Court occasionally must deal with settlement administration and enforcement issues, the Knauf portion of this litigation is largely resolved.

The litigation against the Chinese entities has taken a different course. The Chinese Defendants in the litigation include the principal Chinese-based Defendant Taishan, namely, Taishan Gypsum Co. Ltd. ("TG") and its wholly-owned subsidiary, Taian Taishan Plasterboard Co., Ltd. ("TTP") (collectively "Taishan" or "Taishan Entities").  Other Chinese-based Defendants include the CNBM and BNBM Entities.

The Court's initial inquiry regarding Taishan involved four cases in this MDL: (1) *Germano v. Taishan Gypsum Co., Ltd.*, Case No. 09-6687; (2) *The Mitchell Co., Inc. v. Knauf Gips KG*, Case No. 09-4115; (3) *Gross v. Knauf Gips KG*, Case No. 09-6690; and (4) *Wiltz v. Beijing New Building Materials Public Ltd., Co.*, Case No. 10-361.  The first issues involving Taishan arose when Taishan failed to timely answer or otherwise enter an appearance in *Mitchell* and *Germano*, despite the fact that it had been properly served in each case.  *See* (R. Doc. 52); (R. Doc. 1-7) (Case No. 09-6687).  Thus, after an extended period of time, the Court entered preliminary defaults against Taishan in both of these cases.  *See* (R. Docs. 277, 487).

Thereafter, the Court moved forward with an evidentiary hearing in furtherance of the Preliminary Default in *Germano* on the Plaintiffs' claimed damages.  *See* (R. Doc. 502, 1223, 1258, 2380).  At this hearing, the Plaintiffs presented evidence specific to seven individual

properties, which served as bellwether cases.  Following this hearing, which occurred on February 19 and 20, 2010, the Court issued detailed Findings of Fact & Conclusions of Law.  *See* (R. Doc. 2380).  On May 11, 2010, the Court issued a Default Judgment against Taishan in *Germano*, in favor of the Plaintiffs.  (R. Doc. 3031).  On the last day to timely do so, June 10, 2010, Taishan filed a Notice of Appeal of the Default Judgment in *Germano* and entered its appearance in *Germano* and *Mitchell*.  (R. Docs. 3668, 3670).

        After Taishan entered its appearance in the MDL, it quickly sought to have the Default Judgment in *Germano* and the Preliminary Default in *Mitchell* vacated for lack of personal jurisdiction.  *See* (R. Docs. 5436, 5583).  In the fall of 2010, the Court directed the parties to commence the personal jurisdiction discovery necessary to resolve Taishan's motions to vacate. Sometime after the initial discovery, the parties agreed to expand the discovery beyond the *Germano* and *Mitchell* cases to other cases in which Taishan had been served, including *Gross* and *Wiltz*.

        Formal personal jurisdiction discovery of Taishan began in October 2010. *See, e.g.*, (R. Docs. 5839, 5840).  Discovery has included the production of both written and electronic documents, as well as depositions of Taishan's corporate representatives, with each type of discovery proceeding in a parallel fashion.  This discovery has often been contentious, requiring close supervision by the Court.  The Court has presided over regularly-scheduled status conferences to keep the parties on track, and conducted hearings and issued rulings to resolve numerous discovery-related disputes.  *See, e.g.*, (R. Docs. 7136, 7511).

        In April, 2012, Taishan filed various motions, including its motions to dismiss for lack of personal jurisdiction. On June 29, 2012, over three years since the creation of this MDL, and after a year-and-a-half of personal jurisdiction discovery on Taishan, the Court presided over a

hearing on Taishan's motions. The Court coordinated its hearing with Judge Joseph Farina of the 11th Judicial Circuit Court of Florida, who had a similar motion involving Taishan's challenge to personal jurisdiction.

On September 4, 2012, this Court issued a 142-page order regarding Taishan's motions in *Germano*, *Mitchell*, *Gross*, and *Wiltz*, in which the Court denied the motions to dismiss, and held that it maintained personal jurisdiction over Taishan. *In re: Chinese-Manufactured Drywall Products Liability Litigation,* 894 F. Supp. 2d 819 (E.D. La. 2012). The Court also ruled that TTP was operating as the alter ego of TG. The Court certified an interlocutory appeal and the Fifth Circuit granted permission to appeal. In January and May of 2014, two different panels of the Fifth Circuit affirmed this Court's ruling and held that this Court maintained personal jurisdiction over the Taishan Entities (TG and TTP). *In re: Chinese-Manufactured Drywall Products Liability Litigation,* 753 F.3d 521 (5th Cir. 2014); *In re: Chinese-Manufactured Drywall Products Liability Litigation,* 742 F.3d 576 (5th Cir. 2014). The time for writs of certiorari passed and the issue of personal jurisdiction over Taishan became firmly settled.

On June 20, 2014, the Court ordered Taishan to appear in open court on July 17, 2014 to be examined as a judgment debtor. (R. Doc. 17774). Taishan failed to appear for the July 17, 2014 Judgment Debtor Examination and the Court held Taishan in contempt and ordered that Taishan pay $15,000.00 in attorney's fees to Plaintiffs' counsel; that Taishan pay $40,000.00 as a penalty for contempt; that Taishan, and any of its affiliates or subsidiaries be enjoined from conducting any business in the United States until or unless it participates in this judicial process. If Taishan violated the injunction, it must pay a further penalty of 25% of the profits earned by the Company or its affiliate who violated the Order for the year of the violation. (R. Doc. 17869).

On July 23, 2014, Plaintiffs filed their Omnibus Motion for Class Certification pursuant to Rule 23(b)(3).  (R. Doc. 17883).  Taishan did not appear or oppose the Motion and, on September 26, 2014, this Court certified a class of "[a]ll owners of real properties in the United States, who are named Plaintiffs [in the various MDL complaints] asserting claims for remediated damages arising from, or otherwise related, Taishan drywall.  *See* (R. Doc. 18028 at 34-35, herein after "Class Certification FOFCOL").

In analyzing whether certification was appropriate, the Court noted that even though the factual allegations and liability had been established by multiple default judgments, "Rule 23(c) imposes an independent duty on the district court to determine by order that the requirements of Rule 23(a) are met regardless of the defendant's admissions." (R. 18028 at 22) (quoting *Davis v. Hutchins*, 321 F.3d 641, 648-49 (7th Cir. 2003)). Thus, the Court performed a rigorous Rule 23 analysis and determined Plaintiffs established Rule 23(a)'s numerosity, commonality, typicality, and adequacy of representation requirements. (R. 18028 at 23-29). Additionally, the Court held that Plaintiffs had met Rule 23(b)(3) requirements for predominance and superiority. (R. 18028 at 30-35). Class certification was particularly appropriate where liability and causation had already been determined. The only remaining issue was the assessment of damages, which could be calculated on an aggregate basis. (R. 18028 at 31-33). Because Plaintiffs could "establish a formulaic method to determine class wide property damages," they met Rule 23(b)(3)'s predominance requirement. (R. 18028 at 33). Finally, the Court determined that class proceedings were a superior method to adjudicate the remaining damage assessments in the case, as any factual determinations that still had to be made were substantially narrower in scope than the factual issues the Court had already resolved in the course of this litigation. (R. 18028 at 34).

After the class was certified, Taishan entered an appearance with the Court in February 2015 and, to satisfy the contempt, Taishan paid both the sum of $15,000 in attorney's fees to Plaintiffs' counsel and the contempt penalty of $40,000 in March 2015. (R. Doc. 18764). Since that date, the Taishan Defendants have actively participated in the litigation.

## III.    FACTUAL BACKGROUND

As this Court has previously explained, defective Chinese Drywall led to extensive corrosion and damage to Plaintiffs' properties. *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 706 F. Supp. 2d 655 (E.D. La. 2010). When this litigation began—nearly eight years ago—Plaintiffs filed claims seeking damages for personal injuries, alternative living expenses, loss of use and enjoyment, foreclosure claims, personal property, lost rent or business, and remediation costs. Since that time, Plaintiffs have completed vast discovery to reveal the gravamen of this case—claims for remediation damages. To determine the correct amount of remediation damages, the Court conducted multiple evidentiary hearings and developed a remediation protocol based on its findings in *Hernandez* and *Germano.* This protocol has been used to successfully remediate more than 2,200 properties.

On June 9, 2015, the Court held a class damages hearing, in which Taishan, BNBM, and CNBM all participated. As a result of these hearings and the remediation program, the Court determined that the scope of the necessary remediation is consistent across the effected properties—buildings with the defective drywall require complete remediation and cleaning. This includes the removal of all drywall, all electrical wiring, the entire HVAC system, and many other items such as appliances, carpet, cabinetry, trim work, and flooring. *Germano* FOFCOL at 27-55; *Hernandez* FOFCOL at 20-34. Additionally, fire alarms and smoke detectors should be removed and replaced because of the low cost in relation to the high risk of injury or

8

death if these appliances are faulty. *Germano* FOFCOL at 27-40. After remediation is complete, the property needs to be cleaned and completely aired-out to ensure all traces of drywall dust are removed. A HEPA vacuum should be used to remove fine drywall dust. Finally, the property should be wet-wiped or power-washed to eliminate any remaining particles. *Germano* FOFCOL at 53. After remediation is complete, the property will need to be inspected by an independent and qualified engineering company. *Germano* FOFCOL at 53-54. The scope of remediation work is the same regardless of the type of building or the location of the property. The only difference is the square footage of the contaminated area of the building.

Now, after nearly eight years and six default trials, where the Court heard evidence from multiple witnesses including experts, Defendants seek to decertify the class of property owners.

## IV.   PRESENT MOTIONS

### a.   Defendants' Motion to Decertify Class Pursuant to Rule 23(c)(1)(C)

Defendants have filed a motion to decertify the class, and argue Plaintiffs cannot satisfy Rule 23's predominance, superiority or adequacy requirements. (R. 20627, 20631, 20632). First, Defendants argue Plaintiffs have not demonstrated predominance, as individual issues predominate over common questions. According to Defendants, the formulaic approach embraced by Plaintiffs' damage expert cannot save the faulty certification order. Second, Defendants argue the numerous individual issues in this case make it unsuitable for class-wide management. Finally, Defendants contend the PSC has demonstrated its interests are not aligned with those of the proposed class.

Defendants contend that in light of changes to the class since the Court issued the Certification FOFCOL, individual issues now predominate over the allegedly common claims, and the "remediation itself requires individual adjudication." (R. 20627 at 12). Because "at least

9

one defendant has not defaulted in each of the relevant actions," Defendants argue that each non-defaulting Defendant is entitled to address the individual questions of liability and causation. (R. 20627 at 14). Further, Defendants aver that even if liability and causation were resolved, there are numerous issues which require individual adjudication. (R. 20627 at 15). While the Plaintiffs initially claimed various damages, including personal injury, medical monitoring, property taxes, insurance, utilities, and property maintenance, could be addressed on a class wide basis, the PSC has since conceded that these issues will require individual adjudication. (R. 20627 at 16-17). Thus, Defendants aver that the sole remaining issue—remediation—does not predominate this class action. (R. 20627 at 18).

In the alternative, Defendants contend that even if remediation did predominate, these damages cannot be considered on a class-wide basis. First, they argue the PSC's methodology fails to consider variations in state law. (R. 20627 at 18-24). Second, Defendants aver even if the damage awards in *Germano* and *Hernandez* could be aggregated, they would not have a binding effect, as Defendants were not parties to these actions, and the properties in those cases were not representative of the overall class. (R. 20627 at 24-27). Finally, they contend Plaintiffs expert testimony is unreliable and does not alleviate the need for individual damage calculations. (R. 20627 at 32).

### b. Plaintiffs' Opposition

Plaintiffs oppose the motion, and argue class certification was, and is still, appropriate in this case. (R. 20652). First, the PSC argues the Court's Rule 23(a) findings of numerosity, commonality, typicality and adequacy are still supported by the current facts of this litigation. Second, the PSC argues the facts of this case meet Rule 23's predominance requirement, and the formulaic methodology for calculating damages is the correct method for resolving these claims.

(R. 20652). Plaintiffs contend that Defendants' Motion attempts to re-litigate issues the Court has resolved long ago, and nothing substantial has changed since the Court reached those findings. (R. 20652 at 1).

Addressing Defendants' arguments that this case fails to satisfy Rule 23's predominance requirement, Plaintiffs contend that all class members are entitled to property damages. To determine whether the predominance element is satisfied, Fifth Circuit law requires courts to "weigh common issues against individual ones and determine which category is likely to be the focus of the trial." (R. 20652 at 13) (citing *Crutchfield v. Sewerage & Water Bd. Of New Orleans*, 829 F.3d 370, 376 (5th Cir. 2016). This does not require every issue in the case be tried simultaneously. (R. 20652 at 13). The PSC argues that in this case, the property damage issue predominates, even though other important matters may have to be tried separately. Any individual issues all flow from the common question of property damages, and these individual adjustments do not preclude a finding of predominance. (R. 20652 at 24) (citing *Bertulli v. Ass'n of Cont'l Pilots*, 242 F.3d 290, 297-98 (5th Cir. 2001)).

Next, Plaintiffs argue that choice-of-law issues do not preclude certification in this case. They aver the predominant issue in this case is property damage and the law of each state involved in the class allows recovery for remediation damages for toxic contamination of the home. (R. 20652 at 21-22). Additionally, the PSC avers that even if state law differed in this regard, it would present a "manageability issue" and "courts should not refuse to certify a class because of manageability concerns." (R. 20652 at 23) (quoting *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017)).

Finally, Plaintiffs aver that class-certification is the superior method for resolving these claims. This Court, as well as Judge Farina in Florida, has already determined that class

certification was a superior way to resolve these claims. (R. 20652 at 25). This determination was based on the Court's eight-year involvement with this litigation, including its knowledge of the facts of this case, experience with the Defendants, and that liability had already been established. (R. 20652 at 25). Thus, Plaintiffs aver that class certification is still appropriate in this case, and Defendant's motion should be denied.

## V.   Class Certification Under Federal Rule of Civil Procedure 23

As an initial matter, Defendants argue liability has not been established against every Defendant, as at least one Defendant has not defaulted in each of the relevant actions. However, liability is not a requirement for maintaining a class under Rule 23. Fed. R. Civ. Proc. 23. Furthermore, each of the defendants have defaulted in at least one action. While Defendants argue these were not final judgments, the Court has already held that Findings of Fact and Conclusions of Law have a preclusive effect in this class proceeding. Thus, the findings of liability and causation were final judgments, and Defendants' argument that open questions of liability and causation preclude decertification is without merit.

### a.   Legal Standard Rule 23

Rule 23 provides in relevant part:

**(a) Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

**(b) Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: . . . (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. Proc. 23. Thus, read in combination, Rule 23(a) and 23(b)(3) provide six requirements for a group of claims to be certified as a class action—numerosity, commonality, typicality, adequacy, predominance, and superiority. Fed. R. Civ. P. 23. The proponents of the class bear the burden of demonstrating that the case is appropriate for class treatment. *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 n.4 (5th Cir. 2001). Class certification is soundly within the district court's discretion, and this decision is essentially a factual inquiry. *Vizena v. Union Pac. R.R. Co.,* 360 F.3d 496, 502–03 (5th Cir. 2004). In some cases it is necessary for a district court to go beyond the pleadings to understand the claims, defenses, substantive law, and relevant facts in order to make a meaningful certification decision. *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2556 (2011). However, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013). In the present motion, Defendants argue Plaintiffs cannot satisfy the predominance, superiority or adequacy requirements of Rule 23; thus the Court's analysis will focus on these factors.

### i. Predominance

Rule 23(b)(3) requires that common questions of law or fact "predominate over any questions affecting only individual [class] members." *Unger*, 401 F.3d at 320. To predominate, common issues must form a significant part of individual cases. *Mullen*, 186 F.3d at 626. The trial court should "weigh common issues against individual ones and determine which category is likely to be the focus of a trial." *Crutchfield v. Sewerage and Water Bd. Of New Orleans, 829 F.3d 370, 376 (2016).* The predominance requirement of Rule 23(b)(3) is "far more demanding" than the commonality requirement of Rule 23(a), because it "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Unger*, 401 F.3d at 320.

In the Fifth Circuit, district courts may divide damage hearings into phases, particularly in complex cases where, as here, such a division would serve judicial efficiency by separating common issues from individual ones.  *See, e.g., In re Deepwater Horizon*, 739 F.3d 790, 816 (5th Cir.), *cert. denied sub nom. BP Expl. & Prod. Inc. v. Lake Eugenie Land & Dev., Inc.*, 135 S. Ct. 754 (2014) ("[P]redominance may be ensured in a mass accident case when a district court performs a sufficiently 'rigorous analysis' of the means by which common and individual issues will be divided and tried. In many circuits, this has been accomplished by means of multi-phase trials under Rule 23(c)(4), which permits district courts to limit class treatment to 'particular issues' and reserve other issues for individual determination."); *Watson v. Shell Oil Co.*, 979 F.2d 1014, 1023 (5th Cir. 1992) *on reh'g*, 53 F.3d 663 (5th Cir. 1994) (affirming and "express[ing] [its] admiration" for the district court's trial plan, which included three damages phases and allowed the district court to adjudicate common class issues in the first phase and individualized issues in later phases, despite due process challenge). To predominate, "common issues must constitute a significant part of the individual cases." *Mullen,* 186 F.3d at 626. As another section within this Court has explained, "[t]his is a matter of weighing, not counting, issues." *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*, 910 F. Supp. 2d 891, 912 (E.D. La. 2012), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014).

Here, the Taishan Defendants have been held liable for damages caused by defective Chinese drywall. Any properties containing Chinese drywall require complete remediation and cleaning.  The only variation is the *extent* of the damages suffered based on the square footage of the involved property. This variation does not prevent class certification. *See In re Deepwater Horizon*, 739 F.3d 790, 815 (5th Cir. 2014) ("'Even wide disparity among class members as to

the amount of damages' does not preclude class certification 'and courts, therefore, have certified classes even in light of the need for individualized calculations of damages.'") (quoting *Bell Atlantic Corp. v. AT&T Corp.*, 339 F.3d 294, 306 (5th Cir. 2003)).

Defendants argue there are other issues which will require individual resolution, and thus claims for remediation damages do not predominate this litigation. In an attempt to demonstrate the "numerous" claims which will require independent resolution, Defendants parse each potential non-remediation claim into as many discrete issues as possible, then argue this "plethora" of discrete issues demonstrates remediation damages no longer predominate. The Court finds this argument unpersuasive. The vast majority of claimants seek to have their properties remediated. Claims for property damage are undoubtedly the focus of this MDL. *See Crutchfield*, 829 F.3d at 376 (explaining that an issues predominates when it "is likely to be the focus of a trial."). The fact that some plaintiffs have other claims that may require individual resolution does not undermine the central focus of the class—remediation damages. *See Mullen*, 186 F.3d at 626; *see also Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 911 (7th Cir. 2003) (Posner, J.) ("If there are genuinely common issues, issues identical across all the claimants, issues moreover the accuracy of the resolution of which is unlikely to be enhanced by repeated proceedings, then it makes good sense, especially when the class is large, to resolve those issues in one fell swoop while leaving the remaining, claimant-specific issues to individual follow-on proceedings.").

Calculating remediation damages was an extensive process, requiring the Court to hear evidence and make determinations on countless issues. *See Germano* FOFCOL at 27-55; *Hernandez* FOFCOL at 20-34. Defendants' attempt to cast remediation damages as only a minor part of this litigation is incompatible with the facts of this case. Thus, the Court finds Plaintiffs

15

have established remediation damages predominate over issues affecting only individual class

members. *See Unger*, 401 F.3d at 320; *see also Turner v. Murphy Oil USA, Inc.*, 234 F.R.D. 597,

607 n.6 (E.D. La. 2006) (finding presence of claims for personal injury and mental anguish

damages did not undermine a finding of predominance when they did not form a significant

portion of the plaintiffs' claims).

### ii.   Remediation Damage Formula

Defendants also argue that Plaintiffs' damage calculations are flawed. While "Rule 23

grants courts no license to engage in free-ranging merits inquiries at the certification stage," the

Court finds it necessary to briefly address Defendants' arguments. *Amgen Inc. v. Connecticut*

*Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013). The Supreme Court recently held

that in some circumstances, statistical evidence may be used to make class-wide determinations

depending on what purpose the evidence is being introduced and the elements of the underlying

cause of action. *Tyson Foods, Inc. v. Bouaphekeo*, 136 S. Ct. 1036, 1046 (2016) (citing *Erica P.*

*John Fund, Inc. v. Haliburton Co.*, 563 U.S. 804, 809 (2011).

In *Tyson Foods*, Plaintiffs filed suit against their employer, alleging the employer's

failure to compensate employees for time spent "donning and doffing" protective gear violated

the Fair Labor Standards Act. *Tyson*, 136 S. Ct. at 1041. Because the employer did not keep

records of how long it took each individual employee to put on and take off their gear, the

district court relied on an average to determine each employee's damages. *Id*. To calculate the

average, an expert reviewed video footage of various employees in multiple jobs putting on their

protective gear, and then calculated an average "donning and doffing time" for two different

departments. *Id*. The employer argued using an average for calculating damages was improper,

16

as some employees would be compensated for more time than they actually spent "donning and doffing." *Id.*

However, the Court disagreed and held the representative sample was a permissible means of showing individual damages. *Id.* at 1046. While declining to establish a general rule that representative evidence is always admissible in class action cases, the Court explained the use of such evidence can be admissible, but should "depend on the purpose for which the evidence is being introduced and on 'the elements of the underlying cause of action.' " *Id.* at 1046 (quoting *Erica P. John Fund, Inc. v. Halliburton Co.,* 563 U.S. 804, 809 (2011)). Specifically, the Court noted that using the statistical sample filled an evidentiary gap, and even if each Plaintiff had proceeded with an individual suit, the statistical evidence still would have been necessary to prove damages. *Id.*

Here, the Plaintiff class owns (or previously owned) properties which require remediation as a result of defective drywall. There is no variation with regard to the severity and type of injury or the nature and type of the damages. All Plaintiffs with defective Chinese drywall in their homes are entitled to total remediation of their properties. The duration of exposure or quantity of drywall installed does not change the nature of damages, and the solution to their problems—remediation—is identical in every instance. Unlike asbestos cases, including *In re Fibreboard*, (and unlike other similar circumstances, such as exposure to second-hand smoke), Plaintiffs' property damages in the Chinese drywall class do not vary according to duration or intensity of exposure that would require individual mini-trials to ascertain the origins of the damages. The vast majority of the Taishan properties are typical single-family homes where variations in trim and standard appliances will ultimately make no significant difference in the cost of repair. The damage estimate was based on competitive bids, and then cross-checked

through R.S. Means, which is a standard statistical reference tool in building construction estimation. The damage calculation is statistically adequate and based on plausible assumptions. *Tyson*, 136 S. Ct. at 1049. Thus, Defendants' challenges to the damage calculation formula are an insufficient basis for decertifying the class. Moreover, those claimants who feel that their property does not fit into the vast majority of properties can opt out of the class, and have their properties individually evaluated.

### iii.  Superority

Under Rule 23(b)(3), a district court must evaluate four factors to determine whether the class action format is superior to other methods of adjudication: the class members' interest in individually controlling their separate actions, the extent and nature of existing litigation by class members concerning the same claims, the desirability of concentrating the litigation in the particular forum, and the likely difficulties in class management. Fed. R. Civ. Proc. 23.

One need only review the factual and procedural history of this litigation to reveal the superiority of the class action proceeding in this case. Since the inception of this MDL Defendants have challenged jurisdiction, discovery, service of process, liability, and damage calculations, among other issues. Each one of these battles has resulted in extensive costs—costs which most individual Plaintiffs cannot, and should not, bear. Under Defendants' approach, every Plaintiff would need to find an expert to inspect their property, that expert would need to create an estimate, and Defendants would then have an opportunity to challenge that estimate, or submit their own. This approach would create infinite opportunities for conflict, as parties would need to re-litigate the scope and extent of remediation. Each Plaintiff would be forced to re-litigate issues this Court has already addressed, including what components of the home need complete replacement as opposed to removal, cleaning, storage, and reinstallation or the

appropriate method of cleaning a home after non-defective drywall was reinstalled. Such a case-by-case approach to this tragedy is not only unreasonable and inefficient, it is also unjust in light of the continued suffering of the Plaintiffs.

Liability and causation have already been established by default. The Court has already conducted extensive hearings—where Defendants' interests were capably represented—and made detailed findings which apply to all class members. There is only one narrow issue which remains—remediation damages. In light of this history, and the extensive progress that has already been made, a class proceeding is the superior method to adjudicate Plaintiffs' remaining claims.

### iv.  Adequacy

Rule 23(a)(4) demands that the named class representatives fairly and adequately represent the claims of the other class members. There can be differences between the position of class representatives and other class members so long as these differences do not "create conflicts between the named plaintiffs' interests and the class members' interests." *Mullen,* 186 F.3d at 626. A district court should evaluate whether the class representatives have a sufficient stake in the outcome of the litigation, and whether the class representatives have interests antagonistic to the unnamed class members. *Id.* (citing *Jenkins v. Raymark Indus., Inc.,* 782 F.2d 468, 472 (5th Cir.1986)). In addition, the district court should inquire into the zeal and competence of the class representatives' counsel and into the class representatives' willingness to take an active role in the litigation and to protect the interests of absentees. *Berger v. Compaq Computer Corp.,* 257 F.3d 475, 479 (5th Cir. 2001).

As this Court has previously noted, the class representatives have the same interests as class members. *See* Class Certification FOFCOL (R. Doc. 18028). Both the representatives and

class members seek damages in order to remedy the harm caused by the defective drywall. The class representatives have endured inspections of their homes in order to identify the drywall in their properties, and have waited for years as Taishan ignored, then abandoned, and finally re-entered this litigation. While Defendants allege the class counsel have conflicts of interest that prevent them from adequately representing Plaintiffs, the Court finds these arguments without merit. Class Counsel have spent years working to resolve this case. The have completed vast discovery, pursued multiple, international Defendants, and worked with the Court and the Knauf Defendants to ensure effective and efficient administration of the Knauf Settlement Agreement. Throughout this process, Class Counsel have demonstrated their professionalism and competence. Thus, the Court finds that both the class representatives and Class Counsel adequately represent the interests of the class.

## VI.    CONCLUSION

First, Plaintiffs have demonstrated that claims for remediation damages constitute the predominant issue in this MDL. Second, in light of the complex nature of this case and extensive history of the litigation, a class action is the superior mechanism for resolving these claims. Finally, both the class representatives and Class Counsel adequately represent the interests of class members. This Court therefore finds that class certification is appropriate pursuant to Fed. R. Civ. P. 23. Accordingly,

**IT IS ORDERED** that CNBM Group's Motion to Decertify the Class Pursuant to Rule 23(c)(1)(C), R. Doc. 20627, is **DENIED**.

**IT IS FURTHER ORDERED** that Taishan's Motion to Decertify the Class, R. Doc. 18879, is **DENIED**.

New Orleans, Louisiana this 21st day of April, 2017.

UNITED STATES DISTRICT JUDGE