1                  UNITED STATES DISTRICT COURT

2                  EASTERN DISTRICT OF LOUISIANA

3

4

5    IN RE:  CHINESE MANUFACTURED      *   Docket No.: 09-MD-2047
             DRYWALL PRODUCTS          *   Section L
6            LIABILITY LITIGATION      *   April 6, 2017
                                       *   New Orleans, Louisiana
7    This Document Relates To All Cases *
     * * * * * * * * * * * * * * * * * *

8

9         TRANSCRIPT OF MONTHLY STATUS CONFERENCE AND MOTIONS
            HEARD BEFORE THE HONORABLE ELDON E. FALLON
10                 UNITED STATES DISTRICT JUDGE

11

12   APPEARANCES:

13   For the Plaintiffs:          Herman Herman & Katz, L.L.C.
                                  BY:  RUSS HERMAN, ESQ.
14                                BY:  LEONARD A. DAVIS, ESQ.
                                  820 O'Keefe Avenue
15                                New Orleans, Louisiana 70113

16

17   For Knauf Entities:          Baker Donelson Bearman Caldwell &
                                    Berkowtiz
18                                BY:  KERRY J. MILLER, ESQ.
                                  201 St. Charles Avenue
19                                Suite 3600
                                  New Orleans, Louisiana 70170

20

21

22

23

24

25

              JODI SIMCOX, RMR, FCRR – OFFICIAL COURT REPORTER
                     UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF LOUISIANA

1 | <u>APPEARANCES</u>:

2

3 | For Taishan Gypsum Co,          Phelps Dunbar, LLC
    Ltd.:                          BY:  HARRY ROSENBERG, ESQ.
                                   365 Canal Street
4 |                                Suite 200
                                   New Orleans, Louisiana  70130

5

6
                                   Alston & Bird, LLP
7 |                                BY:  CHRISTINA HULL EIKHOFF, ESQ.
                                   1201 West Peachtree Street
8 |                                Atlanta, Georgia 30309

9

10 | Special Master:                Perry, Balhoff, Mengis & Burns,
                                      LLC
11 |                               BY:  DANIEL J. BALHOFF, ESQ.
                                   2141 Quail Run Drive
12 |                               Baton Rouge, Louisiana 70808

13

14 | For Collins and
     Herrington Plaintiffs:        Luckey & Mullins, PLLC
15 |                               BY:  STEPHEN W. MULLINS, ESQ.
                                   2016 Bienville Boulevard
16 |                               Suite 102
                                   Ocean Springs, Mississippi 39566

17

18

19 | For Pate Stevedore and
     Pensacola Stevedore:          Helmsing, Leach, Herlong, Newman
                                     & Rouse, P.C.
20 |                               BY:  WILLIAM W. WATTS, ESQ.
                                   P.O. Box 2767
21 |                               Mobile, Alabama 36652

22

23 | For Ace Home Center:           Luther, Collier, Hodges & Cash,
                                      LLP
24 |                               BY:  DANNY J. COLLIER, JR., ESQ.
                                   P.O. Box 1002
25 |                               Mobile, Alabama 36633

JODI SIMCOX, RMR, FCRR – OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

1   APPEARANCES:

2

3   Official Court Reporter:        Jodi Simcox, RMR, FCRR
                                    500 Poydras Street
                                    Room B-406
4                                   New Orleans, Louisiana 70130
                                    (504) 589-7780
5

6

7   Proceedings recorded by mechanical stenography, transcript

8   produced by computer.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1　　　　　　　　　　**<u>PROCEEDINGS</u>**

2　　　　　　　　　**(April 6, 2017)**

3　　　　　　　　　　　**\*\*\*\*\*\***

4

5　　　　(COURT CALLED TO ORDER)

6　　　　**THE COURT:**  Be seated, please.  Good morning, ladies

7　and gentlemen.  Let's call the case.

8　　　　**THE DEPUTY CLERK:**  MDL-2047, *In re:  Chinese*

9　*Manufactured Drywall Products Liability Litigation.*

10　　　　**THE COURT:**  Will liaison counsel make their

11　appearance for the record, please.

12　　　　**MR. HERMAN:**  May it please the Court, good morning,

13　Judge Fallon.  Russ Herman for the PSC.

14　　　　**MR. ROSENBERG:**  Good morning, Judge Fallon.  Harry

15　Rosenberg as liaison counsel for CNBM, BNBM and Taishan.

16　　　　**THE COURT:**  Okay.

17　　　　**MR. MILLER:**  Good morning, Your Honor.  Kerry Miller,

18　liaison counsel for Knauf and the defense steering committee.

19　　　　**THE COURT:**  Okay.  We have the agenda for the monthly

20　meeting in this particular case, and then we have two motions

21　following it.  We'll just go through the agenda first.

22　　　　　The remediation program, anything on that?

23　　　　**MR. HERMAN:**  Your Honor, BrownGreer reported earlier,

24　and Kerry Miller may have a comment, and Mr. Balhoff is also

25　here.

1          **MR. MILLER:**  Kerry Miller again for Knauf, Your

2     Honor.  On the remediation program, as reported at the last

3     several conferences, as in-chambers, it's really at the bitter

4     end.  There are only a couple of homes left dealing with a

5     couple of warranty issues with the ombudsman, but looking to be

6     done in the very near term.

7          **THE COURT:**  How many homes have been remediated so

8     far from Knauf?

9          **MR. MILLER:**  Well, the actual remediation program,

10    Your Honor, I think that number's been around 2800.  On top of

11    that, we have the already-remediated homes, that's been another

12    fair number, and then you have a big group of condos.  So all

13    told, between Knauf and the homeowner, over 4,000.

14         **THE COURT:**  Yeah, over 4,000 homes.  So we're getting

15    to the end of the road from that standpoint.  I really would

16    like to tie this up and get that over.

17         **MR. MILLER:**  Yeah.  When you look at that number of

18    over 4,000, so we'd be 99 percent done.

19         **THE COURT:**  Yes.

20         **MR. MILLER:**  So we've just got to -- it's like 10

21    left.  So it's a very small number.

22         **THE COURT:**  Okay.  Anything from you, Dan?

23         **MR. BALHOFF:**  Your Honor, Dan Balhoff, special

24    master.  I have, as I've been doing for the past couple of

25    years, been coordinating with both Knauf and claimants and,

1  where appropriate Moss, concerning any issues that may come up
2  in conducting binding mediations.  Currently, I have about ten
3  properties that are in various stages of binding mediation,
4  whether it's briefing or possibly the hearing's already been
5  done, but everything's proceeding forthwith.
6         **THE COURT:**  Yes.  Just for the record, what we did
7  with this particular case is that with at least the Knauf
8  drywall, we tried several cases, and from those cases, we were
9  able to come up with a protocol for remediating the homes, what
10 needed to be done.  It was really factually based and evidence
11 supported, and with that, Knauf agreed to resolve the cases
12 with that protocol.
13         It looked like there was about maybe $1 billion
14 or thereabouts that was consumed with that, but the homeowners
15 got their homes repaired or replaced or fixed up according to
16 that protocol.  As I say, about 4,000 or over 4,000 have been
17 resolved.  We're now in just a handful of the remaining ones.
18         Those particular matters, sometimes what happens
19 is the homeowner needs some help in getting the various
20 contractors doing the work, and they sometimes have problems
21 with it.  So we had a protocol if they did have problems to
22 make the necessary complaints, and the special master handled
23 those, and any appeals were to me, and they were resolved.
24         We also had an ombudsman, who was an expert
25 craftsman and contractor, who the individual homeowners could

1  go to and discuss with him what was necessary, and that

2  resolved a lot of problems too.  So it's been a big program,

3  but I think by and large it's been very successful.

4              I appreciate your work, Dan.

5          **MR. BALHOFF:**  Thank you.

6          **THE COURT:**  Okay.  How about Taishan, Harry,

7  anything?

8          **MR. ROSENBERG:**  Your Honor, there's nothing for

9  today's status conference.

10         **THE COURT:**  I have a number of motions before me.  I

11  was trying to get them done this time, but I had a couple of

12  matters that took some of my time.  But I'll get back on them

13  and hopefully resolve them by next time.

14         **MR. ROSENBERG:**  Yes, Your Honor.  I know the Court

15  was busy with a number of other matters particularly this week,

16  and there were two motions that are rescheduled for the May

17  16th conference.

18         **THE COURT:**  Okay.

19         **MR. HERMAN:**  May it please the Court, Judge Fallon,

20  in connection with those motions, Your Honor directed meet and

21  confers on the confidentiality issue.  On March 27th, there was

22  a face-to-face meet and confer with BNBM in New Orleans,

23  approximately six hours.  On March 28th, there was a meet and

24  confer with CNBM, face-to-face, in New Orleans, followed by a

25  face-to-face meet and confer with Taishan, and the two together

1    were approximately six hours.

2                    As Your Honor indicated, there are several

3    matters set.  One has to do with confidentiality.  Another has

4    to do with enforcement of the sanction.  You've already heard

5    the motion to decertify.  And there's another one set for

6    hearing on May 16th.

7                    With regard to the meet and confer, we greatly

8    appreciate Taishan's cooperation in that process.  We were able

9    to resolve matters of confidentiality, a large number of them.

10   Unfortunately, without -- BNBM and CNBM's counsel were well

11   prepared.  The meet and confers were conducted with cordiality.

12   There's a great deal of similarity among the positions of BNBM

13   and CNBM, and we could have read four times *Through the Looking*

14   *Glass* in the time it took to discuss that.

15                   We appreciate the opportunity we were afforded

16   to have these meet and confers.  That's the only issue that I

17   have with regard to those.

18           **THE COURT:**  Okay.

19           **MR. HERMAN:**  Venture Supply, there are no issues.

20                   With regard to the attorney fee issue,

21   Mr. Balhoff was here yesterday.  He set evidentiary hearings,

22   which he'll report on.

23           **THE COURT:**  Is Dan still here?

24           **MR. BALHOFF:**  Yes, Your Honor.

25           **THE COURT:**  Dan, do you want to give me just a brief

1    report on the attorneys' fees?  Where are we there?

2                    After the litigants are taken care of, then I

3    have to focus on the attorneys' fees.  Since the litigants, at

4    least from the Knauf standpoint, have 99 percent of them taken

5    care of, it's now appropriate to focus on any attorneys' fees

6    that may be due.

7                    We have some method for dealing with that.  I

8    have an attorney fee committee formed.  They took depositions

9    and made some recommendations to me.  I posted those on the

10   Internet.  There were some objections to that, so I appointed

11   Mr. Balhoff to deal with the objections, and he's been

12   vigorously working on that particular matter.

13          **MR. BALHOFF:**  Your Honor, just to restate the process

14   slightly.  What I believe the Court envisions through its

15   pretrial orders is, first, a step in which the attorneys' fee

16   fund is divided between individually retained counsel and

17   common benefit.  After that is complete, the common benefit is

18   allocated.  We are involved in the first step, and we have been

19   for some months now.

20                   The first thing I did toward the end of last

21   year was I set forth a procedure after taking input from the

22   various counsel for producing some written discovery.  The

23   Court, in its appointment of me, said that I was to conduct

24   limited discovery.  In conducting the limited discovery, and

25   looking at the jurisprudence, and receiving input from counsel,

1   I did allow some written discovery, written production of
2   documents.
3           After that, I've allowed a few depositions,
4   which were taken of both Mr. Garrett, who served as the CPA for
5   this matter, and also for three members of either the fee
6   committee or the firms that were on the fee committee.  Those
7   depositions took place in December and late January.  Since
8   then I allowed counsel to reurge requests for discovery.
9           I recently informed counsel that I intended to
10  deny any further discovery and instead go forward with an
11  evidentiary hearing on May 31st and June 1st.  I issued that
12  formal ruling yesterday concerning denying the written
13  discovery, and it is my understanding that there probably will
14  be an appeal or an objection to the Court to ask the Court to
15  revisit my ruling, and that's where we are now.
16          **THE COURT:**  Okay.  As we've mentioned, just for the
17  record, in this case, the good aspect, from the standpoint of
18  the litigants, is that not only did Knauf agree to remediate
19  their homes, but they also agreed to pay the claimants'
20  attorneys' fees.  Usually, as we know, attorneys' fees, at
21  least from the plaintiff's standpoint, are on a contingent
22  basis and, therefore, whatever the plaintiff recovers, then a
23  percentage of that goes to the attorneys.
24          In this particular case, that wasn't the case.
25  Knauf has put up a certain amount of money for the attorneys,

1  all of the attorneys.  The attorneys consist of two groups.
2  One is what I call contract attorneys; that is to say, the
3  attorneys that the individual claimant hired to handle their
4  case.  That's one aspect of it.  The other aspect is that the
5  Court has appointed a plaintiffs' committee.

6  In a matter of this sort, we had 1400 lawyers in
7  this case.  I can't have 1400 lawyers dealing with the case.
8  It just makes it impossible to do.  So I appoint committees to
9  handle the case.  The plaintiffs' committee has been handling
10  the case, has been trying the case, has been discovering the
11  case.  So now I have to decide how much of that fee goes to the
12  plaintiffs' committee and how much goes to the contract
13  lawyers.

14  After I'm finished with that, then I'll focus on
15  how much each individual in the plaintiffs' committee is
16  entitled to.  I do that by having the reports of the
17  plaintiffs' steering committee, by having the reports of the
18  special master, and also the reports of a CPA, who I appoint
19  immediately as the case begins.  The individuals who do common
20  benefit work have to report contemporaneously to that CPA how
21  much time they put on it and what work they did for that
22  particular time.  I'm not interested in just a blank figure but
23  what they did for that period of time.

24  Those hours are scrubbed, so to speak.  We have
25  a paralegal who looks at them to make sure that they're valid.

```
1   If they're not, then they're returned to the lawyer for another
2   review so that they can take another shot at it.  But the hours
3   are legitimately done and looked at, and I look at them every
4   month.
5            So I've had the benefit of watching this case
6   unfold throughout the period.  With all that information, I'm
7   able to make some rational decision on how much each side gets
8   and how to distribute it.
9            Okay.  Thank you, Dan.
10           MR. BALHOFF:  Thank you, Your Honor.
11           THE COURT:  All right.  We have two matters set for
12  hearing.  We're going to get into that at this point.
13           Anybody on the phone for those individuals?
14  Anybody?  Okay.
15           MR. ROSENBERG:  Judge, I think one of the attorneys
16  for one of the matters set for after this preliminary
17  conference is actually in the courtroom.
18           THE COURT:  Okay.  Let's go with that, then.
19           Anything else, Russ, on this?
20           MR. HERMAN:  Just one thing very quickly, Your Honor.
21           THE COURT:  Yes.
22           MR. HERMAN:  Your Honor has indicated that many cases
23  may be sent from Your Honor's court out to the particular
24  venues of other courts, and the PSC's work in the case will
25  continue because we've got to fashion a trial package.
```

1          The matters that are set for May 16th, I

2    certainly don't want to bring forward at this time, but I think

3    it would be helpful to Your Honor if before the next status

4    conference, all of the various parties that engaged in meet and

5    confers actually submit a report to the Court of where we are

6    on confidentiality so that the hearing on confidentiality won't

7    last an extraordinary long time.

8          **THE COURT:**  All right.  Chris, are you involved with

9    these confidentiality issues?

10         **MS. EIKHOFF:**  Yes.

11         **THE COURT:**  Okay.  Well, get with Russ and just tell

12    me what's still left.  You all are talking about it.

13         **MR. HERMAN:**  I don't think we're going to have a

14    problem with Taishan at all, but with BNBM and CNBM, there are

15    a large volume of documents.  They prepared well.  They sent

16    lawyers to New Orleans who were prepared well.  It's just a

17    question, I think, of alerting the Court.

18         **THE COURT:**  Yes.  If they're things that resolve,

19    fine; if they're not, then I'll know what it is.  So let's get

20    together, and then give me that, Harry.  If it's resolved, I

21    don't need to deal with it; if it isn't, then I'll deal with

22    it.

23                 * * * * *

24                 * * * * *

25         **THE COURT:**  All right.  Let's go into the motions set

1   for hearing.  Just by way of background, this involves the
2   drywall -- Chinese drywall, as we call it -- manufactured by
3   Taishan or the Taishan interests.  This drywall was purchased
4   from a salvage sale.  It was apparently damaged in a cargo
5   container or something of that sort.  It was purchased by
6   Pensacola Stevedores at some sort of salvage sale, or they came
7   into it in that way.

8           They then sold it to a Florida company, AHC, and
9   AHC distributed the material through Ace Hardware.
10  Ace Hardware and AHC are Alabama companies.  Two owners of
11  property in Mississippi purchased that drywall.  Apparently,
12  they went to Alabama, or it's not clear whether they went to
13  Alabama or went to Mississippi Ace Hardware.  But in any event,
14  they got it from Ace, and they put it in their homes, and then
15  it was defective, so they had to take remedial action.

16          They filed suit against their distributors and
17  Ace Hardware and AHC.  They also made a claim in this
18  proceeding, the MDL proceeding.  The question is whether they
19  should be permitted to proceed either in state court in
20  Mississippi or federal court in Mississippi against some of the
21  defendants and proceed against other defendants here in this
22  litigation in the MDL.

23          So I stayed the cases in Mississippi pending a
24  resolution of their claims here.  It seemed to me at that point
25  that they were in two forums, and it's not good for them to be

1  in two forums, but it's also not appropriate for the defendants

2  to have to defend themselves in two forums.  But they've made a

3  motion now to lift that stay and allow them to proceed.

4         Anybody who wants to argue from the standpoint

5  of those entities who wish to proceed?  Anybody in the

6  courtroom?

7         MR. MULLINS:  I'm here, Your Honor, on behalf of the

8  Collins and Herrington plaintiffs.

9         THE COURT:  Why don't you come forward and let me

10  hear from you all.

11         Anybody on the phone representing those

12  individuals?  Okay.

13         MR. MULLINS:  Good morning.

14         THE COURT:  Good morning.

15         MR. MULLINS:  May I proceed, Your Honor?

16         THE COURT:  Sure.

17         MR. MULLINS:  Essentially, the Collins and Herrington

18  case, as you recited, they were -- they were filed with another

19  case in Alabama.  The Alabama case was not removable because

20  there was no diversity.  These cases were, so they were removed

21  and they were sent back here from where they originally were.

22         What we're seeking to do is to have the cases

23  disentangled from the MDL because they've opted out of the

24  settlement agreement, even though there was some confusion

25  because of paperwork issues on that.

1              But what's happened is once the case got back to

2    here, Ace Hardware third-partied Taishan into that case and, of

3    course, we cross-claimed that because we thought they were

4    already dismissed from the other cases, and the PSC has pointed

5    out that they were not.

6              So what we'd like to do is is we needed to make

7    sure that all -- they're dismissed from all the cases in the

8    MDL against Taishan, or whatever we need to do, but just to get

9    these cases moving along.  These people have small children.

10    They've been in these houses for years.  They've been

11    self-remediated.  They've written the Court numerous times.

12         **THE COURT:**  Yes.  I don't have any problem in trying

13    to get the cases moving.  The problem I have is that, and from

14    your standpoint too, you want to be conscious of it, is that

15    sometimes if you dismiss a claim, you dismiss them with

16    prejudice, and that means that you can't go after them ever.

17             So you've got to think about whether or not you

18    want to dismiss a particular defendant.  Because if you dismiss

19    that defendant, you might jeopardize a third-party claim and,

20    therefore, create a problem with your initial claim.  I'm not

21    saying you are.

22             It's just that it gets a little problematic, and

23    you have to analyze it, as well as the defendants.  But from

24    the defendants' standpoint, they ought not be in two

25    proceedings at the same time, and you ought not to either.

1          **MR. MULLINS:**  And if we need to dismiss the cases in

2     the MDL and just have -- since they're already in the

3     individual cases because they've been third-partied and

4     cross-claimed, that's fine.

5               We, quite frankly, initially thought that was

6     already done, but looking back at the record, it doesn't look

7     like it.  They were dismissed from one of the actions, but were

8     not dismissed from all the other actions.  That's been

9     Taishan's complaint, is they're being sued twice.

10          **THE COURT:**  Anything from your standpoint?

11          **MR. COLLIER:**  Good morning, Your Honor.  Danny

12    Collier for Ace Home Center.  We would just repeat that Your

13    Honor's order from a year and a half ago was proper, and that

14    is, you recognized that Ace Home Center didn't have any

15    business having to fight the plaintiffs in Mississippi and

16    Taishan here in court.  Now they're asking for, basically,

17    three forums.  Today's the first I heard about the plaintiffs

18    wanting to dismiss their class action against Taishan.  That's

19    the first I've heard of that today.

20              Until today, I've heard the plaintiffs pursuing

21    Taishan in the class action, one; keeping -- severing my claim

22    against Taishan, but keeping me here, two; and then sending me

23    with the plaintiffs back to Mississippi, that's three.  Three

24    actions, and it's a waste.

25          **THE COURT:**  Yes.  Not only that, I guess

1  theoretically what I'm concerned about is that if he dismisses

2  Taishan, then does your third-party claim fall?  I don't know

3  whether it does or not, but that may jeopardize you in that

4  situation.

5           MR. COLLIER:  And that would certainly seem

6  inequitable for his unilateral action to prejudice my client to

7  that extent.  That can't be right.

8           THE COURT:  Yeah, that doesn't seem right to me

9  either, but I just don't know.  If he doesn't have a claim, and

10 he says, I don't have a claim against Taishan, the question is

11 whether you have a claim against Taishan.  You know, I don't

12 think he can jeopardize you, but at least that's going to be

13 another issue that's presented in the case.

14          MR. MULLINS:  Taishan has briefed the issue that

15 you're talking about.  Our claim is -- the basis for our claim

16 under Mississippi law, which is binding on this case, under

17 *Klaxon* is significantly different from their third-party claim.

18 So that actually gives them better standing for us to have a

19 claim.  If we don't have a claim against them, then that's the

20 best argument for Your Honor.  This wasn't ruled on whether

21 they had the ability to do that or not.

22          THE COURT:  What's your position if he dismisses the

23 claims here in the class action and only proceeds against you

24 in Mississippi?

25          MR. COLLIER:  What is our position if the plaintiff

1  dismisses their class action claims against Taishan and you
2  send everybody back to Mississippi?
3          THE COURT:  Yes.
4          MR. COLLIER:  I can't hardly complain about that,
5  Your Honor.  As long as we're all together in one place, I'm
6  not complaining.
7          THE COURT:  Yes.  How's your co-counsel see it?  He's
8  looking at you strangely.
9          MR. WATTS:  Your Honor, I'm here for Pate Stevedore
10  and Pensacola Stevedore.  We have a pending motion to dismiss
11  for lack of personal jurisdiction.
12          THE COURT:  Yes.
13          MR. WATTS:  But in the event that it is found that
14  there is personal jurisdiction over my clients, then we would
15  be asserting third-party claims as well against Taishan.  So
16  we're in the same position potentially as Ace Home Center.
17          THE COURT:  You see the problem is that once they
18  assert third-party claims against Taishan, then Taishan is in
19  Mississippi and Taishan is here.
20          MR. MULLINS:  Taishan is in Alabama right now.
21          THE COURT:  Yes.
22          MR. MULLINS:  They did the same thing in the Alabama
23  case and never came here.  They still have claims against
24  Taishan; we do too.  They're sitting there in Alabama.  So, I
25  mean, I can't help the fact that they brought in Taishan to

1   this action here and in Alabama.

2          **MR. WATTS:**  The other thing, Your Honor, that hasn't

3   been -- well, it's not before Your Honor this morning, but Ace

4   Home Center has filed a motion to dismiss all these claims on

5   the basis that the plaintiffs are proceeding in the Global

6   settlement.  They've been eligible -- they've been found

7   eligible on their claims.  They've made claims there.  They

8   cannot pursue claims there and against us.

9          So we're saying that these claims need to be

10  dismissed actually.  Ace Home Center has filed a motion.  The

11  PSC has also joined in an opposition to this motion.  So that's

12  where we are.

13         **MR. COLLIER:**  I appreciate co-counsel reminding me of

14  that.  It's not pending today.  I have filed a motion to

15  dismiss or alternately for summary judgment based upon

16  preclusion.  Because over the last few weeks, I've discovered

17  that our plaintiffs, while we thought they had opted out of the

18  class action involving Ace Home Center and others, it looks

19  like they were in.  They had their hands in that cookie jar as

20  well.

21         **THE COURT:**  Yes.

22         **MR. COLLIER:**  So that's new information to us and we

23  move to dismiss.

24         **THE COURT:**  Okay.  All right.  What about the

25  plaintiffs' committee?  Lenny, do you have any comments?

1      **MR. DAVIS:**  Your Honor, Leonard Davis.  We filed a

2  response to the plaintiffs' motion for severance and suggestion

3  of remand.  It's at Rec Doc 20711.  Quite frankly, we did that

4  to give facts to the Court more than anything.  We laid out the

5  various steps that have been taken in the matters, including

6  filings in the Global settlement that were attempted to be

7  made, albeit the plaintiff never did complete their W-9

8  submission in those.

9           But we've gone for years and years through this

10  process, and there have been steps taken by the plaintiff

11  towards resolution in settlement.  There are also class reps,

12  and there are a number of issues there.  So we have opposed the

13  plaintiffs, and that's where we are.  I really stand on the

14  facts that we laid out in our brief.

15      **THE COURT:**  All right.  How about Taishan?  Christy,

16  do you have any comments?

17      **MS. EIKHOFF:**  Christy Eikhoff on behalf of Taishan.

18           Your Honor, in July -- it was July of 2015 when

19  Taishan was third-partied into this case.  In our first filing,

20  we filed a motion to dismiss or in the alternative to stay

21  because we recognized immediately that this was a problem of

22  these parallel tracks and the plaintiffs really trying to

23  travel in multiple lanes at the same time.  And here we are

24  going on two years later and they're still doing it.

25           Now, I appreciate that Mr. Mullins is saying,

```
 1   "Well, we'll just drop the class claims."  But in the last
 2   filing that we got, he said, "Well, I've already dropped the
 3   class claims," but the class claims hadn't been dropped.  So we
 4   need certainty and clarity on their position because it's been,
 5   you know, pretty nebulous.
 6              In terms of what Taishan would want to see
 7   happen to these cases, we'd like our motion to dismiss to be
 8   decided upon.  And then we think in the alternative that this
 9   second action should be stayed pending resolution of the class
10   action that they're participating in.
11              If they formally and properly withdraw from the
12   class action, then we are in a different situation.  We know
13   that we, Taishan, are going to get pulled into the case no
14   matter where it is.  So we'll still be in a position of being a
15   defendant in multiple cases.  But if they properly opt out of
16   the class action, then, you know, I think we'll have to cross
17   that bridge.
18          THE COURT:  All right.  Well, it's all theoretical at
19   this point.  You're still in it, so you're going to have to
20   decide whether or not you want to opt out of it or dismiss --
21          MR. MULLINS:  I'll submit the proper paperwork to the
22   PSC -- they can tell me whatever they want me to do -- to get
23   us out of the class action.  My clients have been very specific
24   with me, and I've got it in writing before this hearing, they
25   want out of the class action.
```

 1          THE COURT:  All right.  Well, let's do this then, if
 2   that's your situation, let's do that within a week.  Then call
 3   my attention to the fact that you've done it, and then I'll
 4   look at it from that standpoint, that you're no longer in it.
 5          MR. DAVIS:  We will look at whatever's sent.  I'm
 6   just concerned about how far down the road we are, especially
 7   if plaintiffs have submitted into the Global settlement and
 8   things like that.  But we'll look at whatever it is and we will
 9   reply.
10          THE COURT:  Okay.
11          MR. MULLINS:  I've already provided an affidavit that
12   explains the situation.
13          THE COURT:  Okay.  Let me take a look at it at that
14   point.
15             Anything else?  Harry, you got anything?
16          MR. ROSENBERG:  Your Honor, just as a matter of
17   public disclosure, the next status conference beyond
18   May 16th would be June 27th, as I understand it.
19          THE COURT:  Yes, June 27th.
20             Val, do you have something?
21          MR. EXNICIOS:  Yes, just one second, if Your Honor
22   please.
23          THE COURT:  Yes.
24          MR. EXNICIOS:  Good morning, Your Honor.  Val
25   Exnicios, co-liaison counsel on behalf of the objectors.  I

1  just wanted to note to Your Honor, you made a reference earlier

2  in your comments relative to the value of the settlement.  I

3  think you said somewhere right around $1 billion.  I just

4  wanted to point out to Your Honor --

5          **THE COURT:**  $1 billion.

6          **MR. EXNICIOS:**  $1 billion, right.

7              In your prior orders, Your Honor, the value of

8  the settlement is a critical factor both in the determination

9  of common benefit fees and also it's the denominator in the

10  formula that you promulgated relative to primary counsels'

11  fees.

12             We have a serious contention, if you will,

13  considering the fact that the BrownGreer actual number is

14  somewhere in the $650 million-dollar range.  So I simply wanted

15  to point that out to Your Honor --

16         **THE COURT:**  Sure.

17         **MR. EXNICIOS:**  -- that that's an item in dispute, and

18  just for the record wanted to do that.

19         **THE COURT:**  Okay.  No, I appreciate you doing that.

20         **MR. EXNICIOS:**  Thank you, Your Honor.

21         **THE COURT:**  Thank you very much.

22             Okay.  Anything further?

23         **MR. ROSENBERG:**  Nothing, Your Honor.

24         **THE COURT:**  Okay.  See you all next time then.  Court

25  will stand in recess.

1          (WHEREUPON, the proceedings were concluded.)

2                              *****

3                           **CERTIFICATE**

4          I, Jodi Simcox, RMR, FCRR, Official Court Reporter

5  for the United States District Court, Eastern District of

6  Louisiana, do hereby certify that the foregoing is a true and

7  correct transcript, to the best of my ability and

8  understanding, from the record of the proceedings in the

9  above-entitled and numbered matter.

10

11

12                              *s/Jodi Simcox, RMR, FCRR*
                                Jodi Simcox, RMR, FCRR
13                              Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25