UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br><br>SECTION: L |
| THIS DOCUMENT RELATES TO: | JUDGE FALLON |
| *ALL CASES* | MAG. JUDGE WILKINSON |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**PRIMARY COUNSEL'S REPLY TO THE FEE COMMITTEE'S OPPOSITION TO PRIMARY COUNSEL'S OBJECTION TO SPECIAL MASTER RULING DENYING NECESSARY DISCOVERY AND REQUEST FOR EXPEDITED CONSIDERATION**

NOW COME Primary Counsel[1] who reply to *The Fee Committee's Memorandum of Law in Opposition to Primary Counsel's Objection to Special Master Ruling Denying Allegedly Necessary Discovery and Request For Expedited Consideration* (Doc. 20742-2) (the "Opposition") and file this reply as further support of *Primary Counsel's Objection to Special Master Ruling Denying Necessary Discovery and Request for Expedited Consideration* (Doc. 20728) (the "Objection") for the following reasons.

The Fee Committee (the "FC") is advocating for the largest common benefit percentage allocation in history,[2] an allocation that would award common benefit counsel over $120 million in fees alone, plus reimbursement of all expenses.[3]  Going well beyond its court-ordered role of submitting a Joint Fee Petition and recommending an allocation (Pretrial Order No. 28, Doc. 17379), the FC has transformed this fee proceeding into an adversarial contest between itself and

---

[1]  Primary Counsel are those individually-retained firms listed or otherwise designated in the signature block of this pleading.

[2] *See In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 312 (1st Cir. 1995) (finding no case awarding more than 50% of a fee fund to common benefit counsel).

[3] Memorandum in Support of the Fee Committee's Motion to Determine the Allocation of the Global Fee Award as Between Common Benefit Fees and Individual Counsel's Fees Pursuant to PTO 28(F).  Doc. 20293-1.

1

individually retained counsel. Thus far, the FC's strategy consists of overly zealous objections to all discovery requested by Primary Counsel, including that which is necessary to allow Primary Counsel to present meaningful oppositions to the FC's requested allocation.[4]   Incredibly, while serving as the "fox who recommends how to divvy up the chickens,"[5] and being allowed to block the discovery of fundamental and basic information in this dispute, the FC simultaneously argues that Primary Counsel's requests for such discovery demonstrate their "lack of knowledge and ignorance of the facts of this litigation" Opposition at 36.  This circular argument only lends support to Primary Counsel's requests and underscores why access to the requested information is necessary to allow an equal playing field.

## I.     The Requests Are Highly Relevant and Proportional to the Needs of the Case

The Supreme Court has long recognized that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).  Accordingly, Federal Rule of Civil Procedure 26(b)(1) sets forth the scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

---

[4] *See* Ex. 4 to Objection (listing objections lodged by the FC).  Doc. 20728-3.  *See also Mathews v. Elbridge*, 424 U.S. 319, 335 (1976) (Due process requires the opportunity to be heard at a meaningful time and in a meaningful manner).

[5] *In re High Sulfur Content Gasoline Products Liab. Litig.*, 517 F.3d 220, 235 (5th Cir. 2008), quoting *In re Diet Drugs Products Liab. Litig.,* 401 F.3d 143, 173 (3d Cir. 2005) (Ambro, J., concurring).

Primary Counsel have filed multiple briefs explaining the relevancy and importance of their discovery requests.[6] Not only are these requests relevant, they are directly proportional to the stakes in this fee dispute. Proportionality rests on the "importance of the issues . . . , the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden of expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1). All of these factors weigh heavily in favor of production.

First, the issues in this fee dispute are of tantamount importance – the taking of contractual fees owed to individually retained counsel, a constitutionally protected property interest, for the purpose of compensating court-appointed counsel who have no contractual or statutory fee authority.[7] Second, the amount in controversy alone supports close scrutiny. The FC seeks in excess of $120 million in common benefit fees, plus reimbursement of all expenses. Third, the FC has unfettered access to all of the requested information while Primary Counsel are relegated to piecing together vague lodestar reports and questionable expense documentation. This is a textbook case for what the Advisory Committee described as "information asymmetry":

> One party -- often an individual plaintiff -- may have very little discoverable information. The other party may have vast amounts of information, including information that can be readily retrieved and information that is more difficult to retrieve. In practice these circumstances often mean that the burden of responding to

---

[6] *See* Primary Counsel's Motion for a Case Management Order Providing for Discovery, the Unsealing of Records Regarding Common Benefit Fees, and the Appointment of a Special Master (Doc. 20394); Primary Counsel's Objection to Special Master ruling Concerning Objector's Request to Modify Special Master Case Management Order No. 1 (Doc. 20552); and Primary Counsel's Reply in Support of Objection to Special Master's Ruling Concerning Objector's Request to Modify Special Master CMO No. 1 and Request for Expedited Consideration (Doc. 20581-2).

[7] *See Fontana v. Barham*, 707 F.2d 221, 226 (5th Cir. 1983) (contractual right to payment of attorney's fees is "a species of property protected by the fourteenth amendment"). *See also In re Nineteen Appeals*, 982 F.2d at 612 ("the affected private interest is the monetary share of the funds due each [primary attorney]"); *Rein v. Socialist People's Libyan Arab Jamahiriya,* 568 F.3d 345, 354 (2d Cir. 2009) ("In reallocating contractually negotiated fees among counsel in a case of this nature, a court is disposing of a property interest.").

>discovery lies heavier on the party who has more information, and properly so.

FED. R. CIV. P. 26, 2015 revision Advisory Committee Notes.  Accordingly, that the burden of production falls more heavily on the FC is not a justification for denying the requested discovery, particularly considering that the FC's leadership has such a substantial interest in the outcome. Fourth, the requested discovery is necessary to resolving the issues.  As more fully discussed below and in previous briefs, denying Primary Counsel production of the time submissions and other requested documents effectively denies them the most relevant evidence on the legitimacy of the requested common benefit award.  Fifth, the likely benefit of the discovery far outweighs any burden or expense in producing the material.  The time submissions can be made available to Primary Counsel through login credentials for Philip Garrett's Case Cost Management System. The remaining information should have been created and maintained as a record of activity governed by the Court's pretrial orders, particularly Pretrial Order No. 9.  As Primary Counsel are constantly reminded, the FC and Plaintiffs' Steering Committee are well-versed in complex litigation.  Complex litigation includes complex discovery.  Yet what Primary Counsel is seeking is far from "complex".  Simple electronic searches can be performed to retrieve the requested documents with minimal burden on those involved.

## II.   The Time Records Are of Paramount Importance

Primary Counsel acknowledge, as argued by the FC,[8] that the Court has no duty to review each time entry with painstaking detail.  However, Primary Counsel seek the production of the time submissions to allow *Primary Counsel* to traverse the quantity and quality of the common benefit work and make an independent evaluation of such work and the benefit it bestowed upon

---

[8] Opposition at 17-20 (arguing that the Court is not required to scrutinize each time entry).

4

Primary Counsel.[9]  The FC attempts to diminish the importance of the common benefit time entries, arguing that the lodestar is used only as a cross check and the amount of hours is but a single factor in the *Johnson* analysis.  *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).  While true that the lodestar serves as a cross-check, the cross-check nevertheless serves a vital function, ensuring the reasonableness of the fee awarded,[10] especially in this case where the fees in dispute are approximately $200 million, the capped attorney fee fund is inadequate to compensate both groups of stakeholders in full, and the FC seeks the largest percentage common benefit allocation in history.  Additionally, while the time and labor required is but one of the twelve *Johnson* factors, it is an important one - so important that the FC provided a thirteen page narrative of common benefit counsel's efforts in this case while confining its analysis of all other *Johnson* factors to less than one page each.[11]  The sole exception was the "amount of funds/results obtained" factor where the FC spent ten pages attempting to justify the common benefit fee request by inflating the benefit conferred by the settlements to $1.1 billion.

As recognized in *In re: Whirlpool Corp. Front–loading Washer Products Liab. Litig.*, 1:08-WP-65000, 2016 WL 5338012, at *18 (N.D. Ohio Sept. 23, 2016), cited approvingly by the FC (Opposition at 17), "outside review of [common benefit] time records can help a court assess an appropriate fee award."  In *Whirlpool*, the court did not require production of fee and expense

---

[9] Despite claims by the FC to the contrary, Mr. Garrett did not substantively review or vet common benefit time.  *See* Objection at note 61 and exhibit 11.  Moreover, the FC has acknowledged that certain hours related to specific cases should be removed from the total common benefit hours to prevent duplication of recovery.  Doc. 17687-2 at n. 11.  Nevertheless, Mr. Garrett stated that he did not back out any time for individual cases from the total common benefit hours reported.  Ex. A, Garrett. Dep. 83:10-84:21 [filed under seal].

[10] *See Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 867 ("For confirmation that the determined percentage in this case is appropriate, the Court believes it is important to conduct a lodestar cross-check.")

[11] *See* Memorandum in Support of the Fee Committee's Motion to Determine the Allocation of the Global Fee Award as Between Common Benefit Fees and Individual Counsel's Fees pursuant to PTO 28(F).  Doc. 20293-1.

5

records; however, the common benefit fees requested in that case only represented a fraction of the documented common benefit hours:

> As described more fully below, Class Counsel asserts [sic] their fee lodestar exceeds $33 million, their time logs account for $22 million, and they seek less than $7 million. In other words, Class Counsel seeks compensation for less than 1/3 of their documented hours. This Court's careful review of the records submitted shows that, even if some of the hours included in Class Counsel's lodestar should be disallowed, that percentage is small—nowhere remotely near 67%. Put simply, a review by objectors of Class Counsel's time logs could not possibly convince the Court that the lodestar is so inflated that counsel's request is too high.

*Id.* Further, the amount of fees at issue were $2.39 million, not several hundred million, as in this MDL.

The FC overlooks *Whirlpool's* sister case, *In re: Sears, Roebuck & Co. Front-loading Washer Products Liab. Litig.*, 06-C-7023, 2016 WL 4765679, at *9 (N.D. Ill. Sept. 13, 2016). In *Sears*, the Court required the production of time records, and as recognized in the *Whirlpool* opinion, the objectors' review and arguments that certain time should not be included persuaded the court to ". . . cut counsel's hours by about 11%." *In re: Whirlpool*, 2016 WL 5338012 at *18, citing *In re: Sears*, 2016 WL 4765679 at *18.

The FC also cites *Gascho v. Global Fitness Holdings, L.L.C.*, 822 F.3d 269, 281 (6th Cir. 2016, *cert. denied sub nom. Blackman v. Gascho*, 137 S.Ct. 1065, 197 L.Ed.2d 176 (2017), and *cert. denied sub nom. Zik v. Gascho*, 137 S.Ct. 1065, 197 L.Ed.2d 176 (2017), as support that the production of time sheets is not required. However, unlike the present fee dispute, the objector in *Gascho* did not argue that the number of hours submitted or that the rate charged by common benefit counsel was unreasonable. Rather the objection was based on the "amount the attorneys received in comparison to the amount the class members claimed and received." 822 F.3d at 279.

### III.     The Fee Committee's Conflict Defeats Its Claim to Confidentiality.

The FC contends that its work, like that of medical peer review committees or other court-appointed boards, is confidential and constitutes privileged attorney work product. Opposition at 23-24. This argument avoids one very important fact: The members of the FC, especially the leaders, have an economic interest in the outcome of the controversy. Unlike the FC here, medical peer review committees, labor boards, I.R.S. agents, or other court appointed committees or persons have no stake in the outcome of the litigation for which they are making recommendations. The same cannot be said for the FC, particularly the leadership, who stand to gain millions of dollars.

The lone case cited by the FC involving a claim of confidentiality by a fee committee provides no refuge for the FC's conflict. *In re Adelphia Communications, Corp.*, 348 B.R. 99, 109-10 (S.D.N.Y. Bankr. 2006), cited in Opposition at p. 24. The *Adelphia* fee committee was disinterested. It was charged with making a recommendation regarding the reasonableness of vendor's fees in the bankruptcy proceeding, not recommending an allocation of fees from which it planned to take the lion's share. Further, the Court in *Adelphia* recognized that fee committees should participate in discovery in certain circumstances:

> I think that courts should direct discovery of fee committees only as a last resort, to ensure that such discovery is really necessary—both temporally (to await the filing of an objection that makes the desired discovery necessary or appropriate) and substantively (to see if the relevant information can be obtained from other sources).

*Id.* at 110. Temporally, the discovery sought by Primary Counsel is ripe. Objections to the Allocation Motion have been lodged. Substantively, Primary Counsel have gone to great lengths to explain why this discovery is necessary and no party has alleged that the discovery is available from another source.

**IV.   Hours Spent Pursuing Taishan are Relevant.**

7

The hours spent pursuing Taishan should not be charged to Primary Counsel. The cases cited in the Opposition are inapplicable as none involve individually-retained contract counsel footing the bill for work pursuing a defendant which did not contribute to the settlement and against which litigation was still pending. A similar situation was addressed in *In re: Sears*, 2016 WL 4765679, at *9, where claims against Sears were pending as an MDL. The claims arose out of defects in front-load washing machines. A virtually identical MDL was created in the Northern District of Ohio against Whirlpool.[12] Both MDLs involved claims arising out of: (1) a "Biofilm" defect and (2) a Central Control Unit ("CCU") malfunction.

The claims were eventually settled. Rather than a separate settlement for each defendant, the settlements were structured as a Biofilm settlement (with both defendants) to be approved in the N.D. Ohio MDL and a CCU settlement (with both defendants) to be approved in the N.D. of Illinois. During the course of approving the CCU settlement, the Court in *Sears* recognized that the Defendants should not be responsible for paying attorneys' fees for any work associated with the Biofilm claims even though the CCU and Biofilm claims were initially litigated together:

> Defendants argue that work "on the biofilm claims should [not] be compensated as part of this CCU settlement, especially because Class Counsel intend to request reimbursement of fees and costs in the separate biofilm class settlement." Dkt. 564 at 36. The Court agrees that work performed on the biofilm litigation should not be compensated here. Defendants' concern arises because prior to April 2014, the CCU claims were litigated together with the related biofilm claims. Dkt. 347 (severing CCU claims for trial purposes). "Documents were produced into a common database, legal issues were tried together in single briefs, and several depositions applied to all claims." Dkt. 531 at 25.

*In re: Sears*, 2016 WL 4765679, at *9. Class counsel, unlike the FC in this instant case, agreed and explained that only the CCU-related time was included. Further, co-lead counsel "personally

---

[12] *In re: Whirlpool*, 2016 WL 5338012.

8

reviewed 'both his firm's entries and the time entries of other firms' and compared them against 'the case file and docket to ensure that the time being submitted was, in fact, related to CCU in particular.'" *Id.* (internal citations omitted).  Importantly, class counsel assured the Court that it would not be "double-dipping" as it explained to "the Court [that] none of the fees submitted in [the CCU] case were submitted in the biofilm fees request." *Id.*

Just like the work pursuing the biofilm claims was not included in the CCU fee request, the work pursuing non-settling defendants, such as Taishan and its related entities, should not be included in the FC's common benefit fee request, regardless of whether the claims were initially litigated together.  Litigation is still ongoing against these defendants.  Work related to their pursuit should be charged against the recovery obtained from the Taishan defendants.  Accordingly, Primary Counsel should be allowed access to the requested documents to determine how much of the 232,309.35[13] purported common benefit hours are attributable to pursuing these defendants.

The inclusion of hours spent in *Local 68* pursuing class certification in common benefit counsel's fee request in *Vioxx* does not change this result.  Opposition at 34.  *Local 68* was a third-party payor case pending in state court.  Unlike the non-settling defendants in Chinese-Manufactured Drywall litigation, the settlement with third-party payors in *Vioxx* contributed to the fee pot in that litigation. Specifically, the Court explained:  ". . . Merck and counsel for the private [third-party payor litigants] executed a settlement agreement that provided for payment by Merck of an aggregate amount of $65 million to the identified settling [third-party payor] litigants in state and federal cases and $15 million as common benefit attorneys' fees and expenses to be distributed

---

[13] *See* Revised and Updated Affidavit of Philip A. Garrett, C.P.A. Pursuant to Pretrial Order No. 28(F).  Doc. 20293-2 at ¶ 16.

9

by this Court to the appropriate counsel." *In re Vioxx Products Liab. Litig.*, MDL 1657, 2014 WL 31645, at *2 (E.D. La. Jan. 3, 2014).

Further, the decision *In re Woerner*, 783 F.3d 266 (5th Cir. 2015) (cited in Opposition at 35) is inapposite. In that case, the Fifth Circuit held that ". . . a court may compensate an attorney for services that are ***'reasonably likely to benefit' the estate*** and adjudge that reasonableness 'at the time at which the service was rendered.'" *Id*. at 273 (emphasis added). The vast majority of time spent pursuing the non-settling defendants, such as Taishan, was never reasonably likely to benefit the Knauf claimants, especially given that settlement with the Knauf-related entities was imminent as early as July of 2010[14], and that Knauf agreed to the *Settlement Agreement for the Demonstration Remediation of Homes with KPT Drywall* in October of 2010.[15] At that point, the PSC was well aware of Knauf's intentions to settle all of the claims against it, and the pursuit of Taishan provided no benefit to the Knauf claimants.

**V.     Conclusion**

For these reasons and those set forth in the Objection, Primary Counsel respectfully request that the Court issue an Order overruling the requested portions of the Special Master's Ruling on April 5, 2017 and expanding discovery in this fee dispute. Alternatively, if the Court denies this request, Primary Counsel respectfully request certification in accordance with 28 U.S.C. § 1292(b).

---

[14] Memorandum in Support of Plaintiffs' Steering Committee's Motion to Establish a Plaintiffs' Litigation Expense Fund to Compensate and Reimburse Attorneys for Services Performed and Expenses Incurred for MDL Administration and Common Benefit. Doc. 4603-1.

[15] Available at http://www.laed.uscourts.gov/sites/default/files/Drywall/DemonstrationRemediationAgreement.pdf.

Respectfully submitted:

**FAIRCLOTH, MELTON & SOBEL, LLC**

By:   /s/ *Jimmy R. Faircloth, Jr.*
    Jimmy R. Faircloth, Jr. (LA #20645)
    jfaircloth@fairclothlaw.com
    Brook L. Villa (LA #31988)
    bvilla@fairclothlaw.com
    Franklin "Drew" Hoffmann (LA #35824)
    dhoffmann@fairclothlaw.com
    301 Main Street, Suite 920
    Baton Rouge, LA 70801
    Phone: (225) 343-9535
    Fax: (225) 343-9538

    *Attorneys for Parker Waichman LLP*

**BARON & BUDD, P.C.**

By:   /s/ *Russell W. Budd*
    Russell W. Budd (TX #03312400)
    rbudd@baronbudd.com
    S. Ann Saucer (TX #00797885;
    LA #21368)
    asaucer@baronbudd.com
    3102 Oak Lawn Avenue, Suite 1100
    Dallas, TX 75219
    Phone: 214-521-3605
    Fax: 214-520-1181

**MCCALLUM, HOAGLUND, COOK & IRBY, LLP**

By:   /s/ *Eric D. Hoaglund*
    Eric D. Hoaglund
    ehoaglund@mhcilaw.com
    905 Montgomery Highway, Suite 201
    Vestavia Hills, Alabama 35216
    Phone: (205) 824-7767
    Fax: (205) 824-7768

**LISKA, EXNICIOS & NUNGESSER**

By:   /s/ *Val Patrick Exnicios*
    Val Patrick Exnicios, Esq.
    vpexnicios@exnicioslaw.com
    1515 Poydras Street
    14th Floor, Ste. 1400
    New Orleans, LA. 70112
    Phone: (504) 410-9611
    Fax: (504) 410-9937
    Cell: (504) 495-9666

    *Attorneys for Whitfield Bryson & Mason LLP, Pendley Baudin & Coffin, Rhine Law Firm, and Luckey & Mullins*

**GENTLE, TURNER, SEXTON & HARBISON, LLC**

By:   /s/ *K. Edward Sexton, II*
    K. Edward Sexton, II
    esexton@gtandslaw.com
    501 Riverchase Parkway East, Suite 100
    Hoover, Alabama 35244
    Phone: (205) 716-3000
    Fax: (205) 716-3010

**PAUL A. LEA, JR.**

By:   /s/ *Paul A. Lea, Jr.*
    Paul A. Lea, Jr. (LA #18637)
    paul@paullea.com
    724 E. Boston Street
    Covington, Louisiana 70433-2910
    Phone: (985) 292-2300
    Fax: (985) 249-6006

**DOYLE LAW FIRM, PC**

By:   /s/ *James V. Doyle, Jr.*
    James V. Doyle, Jr.
    jimmy@doylefirm.com
    2100 Southbridge Pkwy., Suite 650
    Birmingham, AL 35209
    Phone: 205-533-9500
    Fax: 205-414-7528

**H ARTHUR EDGE, P.C.**

By:   /s/ *David L Horsley*
    David L Horsley (AL #6090-I47H)
    david@edgelawyers.com
    2320 Highland Avenue
    Suite 175
    Birmingham, Alabama 35205
    Phone (205)453-0322
    Fax   (205)453-0326

    *Attorneys for Collins & Horsley*

**GIEGER, LABORDE & LAPEROUSE, LLC**

By:   /s/ *Victoria E. Emmerling*
    Andrew A. Braun (LA #3415)
    abraun@glllaw.com
    Victoria E. Emmerling (LA #33117)
    temmerling@glllaw.com
    701 Poydras Street, Suite 4800
    New Orleans, Louisiana 70139-4800
    Phone: (504) 561-0400
    Fax: (504) 561-1011

    *Attorneys for Morris Bart, L.L.C.*

**ALLISON GRANT, P.A.**

By:   /s/ *Allison Grant*
    Allison Grant (FL #858330)
    agrant@allisongrantpa.com
    14 SE 4th St
    Boca Raton, FL 33432-6111
    Phone: 561-994-9646
    Fax: 561-431-4627

**MILSTEIN, JACKSON, FAIRCHILD & WADE, LLP**

By:   /s/ *Mark Milstein*
    Mark Milstein
    mmilstein@mjfwlaw.com
    10250 Constellation Blvd., 14th Floor
    Los Angeles, CA 90067
    Phone: (310) 396-9600

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing *Primary Counsel's Reply to the Fee Committee's Memorandum of Law in Opposition to Primary Counsel's Objection to Special Master Ruling Denying Allegedly Necessary Discovery and Request For Expedited Consideration* has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>or</u> by hand delivery <u>and</u> e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 3rd day of May, 2017.

    /s/ *Jimmy R. Faircloth, Jr.*
    OF COUNSEL