UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED<br>DRYWALL PRODUCTS LIABILITY<br>LITIGATION | MDL NO. 2047<br><br>SECTION: L<br><br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO:<br>*ALL CASES* | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFFS' LEAD AND LIAISON COUNSELS' MEMORANDUM IN SUPPORT
OF MOTION FOR SANCTIONS PURSUANT TO RULE 11 AGAINST JIMMY R.
FAIRCLOTH, JR., ESQ., VAL PATRICK EXNICIOS, ESQ., MARK
MILSTEIN, ESQ., AND C. DAVID DURKEE, ESQ.**

I.  **INTRODUCTION**

Attorneys Jimmy R. Faircloth, Jr., Val Patrick Exnicios, Mark Milstein, and C. David Durkee (together "Filing Counsel") filed a motion to Disqualify the Fee Committee, Strike its Allocation Recommendation, and Stay or Dismiss Proceedings Before the Special Master ("Disqualification Motion") under seal on April 18, 2017. [Rec. Doc. 20735]. In their Memorandum of Law in Support thereof, Filing Counsel made false and unsupportable allegations against Plaintiffs' Lead Counsel Arnold Levin and Plaintiffs' Liaison Counsel Russ M. Herman regarding their negotiations of the Knauf Settlement Agreement on behalf of 4,000 Chinese Drywall Plaintiffs and concerning their common benefit efforts in this MDL as leaders of the Plaintiffs' Steering Committee ("PSC"). Specifically, Filing Counsel contend that Messrs. Levin and Herman "steered [Knauf Settlement] negotiations away from a traditional cash settlement and toward a remediation settlement with the main defendant tied to separate cash settlements with secondary defendants" in order to "prolong and manipulate the process to

1

support an inflated common benefit allocation both generally and specifically for themselves." Disqualification Br. at 8-9. Their Brief further alleges that Arnold Levin and Russ M. Herman are inappropriately attempting to increase their own common benefit fees by "tangl[ing] common benefit time and costs in pursuit of the settling defendants with the time and costs incurred in pursuit of the non-settling defendants." *Id.* These statements are untrue and invented fictions on the part of Filing Counsel.

This Motion is filed pursuant to Rule 11 of the Federal Rules of Civil Procedure against Filing Counsel for signing and submitting a brief alleging facts without any evidentiary support and in contradiction to the evidence of record. A reasonable opportunity for further investigation or discovery on their part will not result in evidentiary support for their statements, because there is none. Filing Counsel's baseless allegations impugn the hard work and notable breakthroughs this Court and the Parties achieved for the victims of Chinese Drywall, and are nothing more than unfounded, absurd, and defamatory insinuations. Despite having had the benefit of class fee discovery and a mass of significant evidence proving the falsehood of the offending allegations, Filing Counsel have refused to withdraw those allegations from their Brief, turning an already unproductive class fee dispute offensive. For the reasons discussed in this Motion, it is respectfully requested that this Court issue an Order imposing sanctions on Filing Counsel, and requiring them to strike the false and offending allegations from the record.

## II. STATEMENT OF FACTS

Certain common benefit fee applicants have objected to the Motion of the Fee Committee ("FC") to Determine the Allocation of the Global Fee Award as between Common Benefit Fees and Individual Counsel's Fees Pursuant to PTO 28(F) ("Allocation Motion") [Rec. Doc. 20290].

These Objectors include Parker Waichman LLP,[1] Whitfield Bryson & Mason LLP, Pendley Baudin & Coffin, Rhine Law Firm, Luckey & Mullins,[2] Milstein, Adelman, Jackson, Fairchild & Wade, LLP, and Roberts and Durkee, LLP (together, "Fee Objectors").  On April 13, 2017, these Fee Objectors filed their Disqualification Motion and accompanying memorandum of law with exhibits.  Filing Counsel signed and submitted both the Motion and Brief that includes several false and defamatory allegations that have no evidentiary support.

In particular, the Brief alleges that Arnold Levin and Russ M. Herman, as leaders of the PSC, have attempted to increase their own common benefit fees in this case by negotiating a complex remediation settlement with the Knauf Defendants (which allowed class members to have their homes completely repaired without having to pay any money to their attorneys), as opposed to securing an all-cash deal from the Knauf Defendants (which would have enabled the Fee Objectors to seek fees directly from their clients' recoveries, but which would not have enabled class members to completely repair their homes).  Filing Counsel allege that Messrs. Levin and Herman "steered negotiations away from a traditional cash settlement and toward a remediation settlement with the main defendant tied to separate cash settlements with secondary defendants" to "prolong and manipulate the process to support an inflated common benefit allocation both generally and specifically for themselves." Disqualification Br. at 8-9.  They also allege that Lead and Liaison Counsel "are attempting to tangle common benefit time and costs in pursuit of the settling defendants with the time and costs incurred in pursuit of the non-settling defendants." *Id.*  Aside from the fact that these allegations go to collateral issues wholly

---

[1] Parker Waichman is represented by Jimmy Faircloth.

[2] Whitfield Bryson & Mason, Pendley Baudin & Coffin, Rhine, and Luckey & Mullins are represented by Val Exnicios.

3

unrelated to the Disqualification Motion – mainly, the adequacy of the fee provisions of the class settlements, the adequacy of the global fee pot awarded by the Court on May 17, 2016, and the adequacy of Lead and Liaison Counsel, the PSC, and Class Counsel to adequately protect the interests of the classes – these allegations have no evidentiary support, and any objectively reasonable investigation or discovery beyond what has already occurred would not change that fact.

Filing Counsel cite no support for these allegations, nor could they.  There was never a cash deal on the table, and with direction from the Court, Lead and Liaison Counsel negotiated the best settlement they could obtain to provide complete remediation benefits for KPT Property Owners and to provide additional benefits to all class members.

> A.   **This Court has overseen these MDL proceedings and closely monitored Common Benefit Counsel and their efforts for more than eight years.**

This Court's oversight and direct involvement in the management of these proceedings cannot be overstated.  The Court has closely monitored the efforts of the PSC and its leadership continually throughout the case.  At the outset of this MDL, the Court established widely accepted procedures and guidelines for judicial oversight of common benefit work.  Pretrial Order No. 9 (and PTO 9A) established detailed procedures and guidelines for the submission and review of common benefit time and expenses.  [Rec. Docs. 147 & 12961].  Further, the Court appointed Plaintiffs' Liaison Counsel, Defendants' Liaison Counsel, a Defendants' Steering Committee, a PSC, Homebuilders and Installers Liaison Counsel and a Special Master.  [Rec. Docs. 21, 22, 143, 144, 152, 180, 414 & 505].  Later the Court appointed Plaintiffs' and Defendants' State and Federal Coordination Committees, an Insurer Steering Committee, Co-Lead Counsel for the First-Party Insurer Subcommittee, and a curator for *pro se* litigants.  [Rec.

Docs. 1871, 2369 & 11327]. In addition, the Court has held 89 monthly status conferences and numerous hearings and conferences for the hundreds of motions filed by the parties in this MDL. In addition, the Court presided over several bellwether trials, *Germano* and *Hernandez*, and the *North River/InEx* trial, and multiple class settlement fairness hearings. Further, the Court has issued many dozens of opinions, pretrial orders and minute entries, facilitated several mediations, and when complicated discovery disputes arose, traveled to China to supervise depositions. *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2013 WL 499474, *2 (E.D. La. Feb. 7, 2013).

The nine interrelated class settlements, which produced the Global Fee Award and the attorneys' fees that are the subject of the underlying fee dispute, have provided significant remediation and cash benefits to owners of more than 10,750 Affected Properties. These settlements originated with the approval of the KPT Pilot Program in October, 2010. The initial Pilot Program agreement with the Knauf Defendants contemplated complete and comprehensive remediation of at least 300 homes containing KPT Chinese Drywall. Ultimately, as a result of the Pilot Program, a settlement evolved with the Knauf Defendants, which provided complete repair of almost 3,000 homes down to their studs. An integral component of the Knauf settlement was the approval and implementation of the Banner, InEx, L&W, and Global settlements with more than 700 Builder, Supplier, and Installer Defendants, and their Insurers. *See Id.* at *3. ("These settlements are all interrelated and interdependent. They resolve all claims, counterclaims, and third party claims among the settling parties."). Without the participation of these various disparate interests, these five class settlements would not have come to fruition. Similarly, the Virginia class settlements with Nationwide, Venture Supply, Builders Mutual, and Tobin Trading were necessary components of the overall relief provided to

class members since Virginia homeowners were not part of the Global settlement and most of them had Taishan's Chinese Drywall installed in their properties.

The time and effort required to achieve this comprehensive resolution for the thousands of claimants who ultimately benefitted from the class settlements was significant and unprecedented. The hard-fought, adversarial process began as a direct result of the positive results achieved in the *Germano* and *Hernandez* bellwether trials, and through the Pilot Program. However, it took more than three years to negotiate and secure final judicial approval of nine interrelated class settlements with hundreds of Defendants.

Throughout the lengthy period of settlement negotiations, settlement approval, and settlement administration, significant Due Process and fairness was provided to all parties. The Court held preliminary class certification and settlement approval hearings for each settlement, beginning with the InEx settlement in May, 2011. In conjunction with preliminary approval, the Court authorized extensive class notice programs that included a right to opt-out or object to the settlements. Class Counsel was required to fight objections from professional objectors, take discovery related thereto, engage in extensive briefing, and appear for hearings on the objections. Further, the Court held coordinated final fairness hearings on all class settlements, which included input from state jurists from Florida (Judge Farina) and Virginia (Judge Hall) overseeing *Chinese Drywall* matters. Despite being afforded every modicum of Due Process, including notice and the opportunity to be heard, Filing Counsel's client never objected at the Final Settlement hearing to contend that the Knauf Settlement should have been an all cash settlement and was collusively designed to inflate common benefit time. Because all of the inter-related settlements satisfied the criteria for final approval, the Court granted final approval. *See In re Chinese Manufactured Drywall, supra*. Contrary to Filing Counsel's sanctionable

assertion, the Court made a specific finding that the settlement was non-collusive. *Id*., 2013 WL 499474, at *16 ("The Court finds that the Knauf Settlement is fair, reasonable, and adequate, that the Knauf Settlement was entered into in good faith *and without collusion*, and that the Knauf Settlement should be approved pursuant to Fed.R.Civ.P. 23(e).") (emphasis added).

More importantly, the case preceded very quickly, in part, because of a devoted and hands-on judge who encouraged the Parties to negotiate with each other and had great empathy for the class members, especially for those who had been through Hurricane Katrina, ended up in contaminated trailers, and then a home that was so unlivable that it then had to be stripped down to the studs. *See* Deposition of Arnold Levin dated 1/26/2017 ("Levin Dep.") (attached hereto as Exhibit "A"), at 383:08—385:16. The Court expressed its concerns that class members were living in tents outside of their homes, some of them were living in homes in an unbearable fashion, and, as testified to by the experts, the homes needed to be stripped down to the studs and replaced, including the electrical wiring and air-conditioning. *Id*. The Court instructed the Parties to find a way to resolve the matter reasonably and fairly as quickly as possible for the benefit of the 3,000-8,000 claimants who should not have to give up a door or a window in order to pay for attorneys' fees. *See* Deposition of Russ M. Herman dated 1/24/2017 & 1/25/2017 ("Herman Dep.") (attached hereto as Exhibit "B"), at 126:25—127:18. When the principals of Knauf came to Louisiana, the Court spoke to them to get them on board and to push them in the direction of giving to the class members the relief that they were entitled to. Levin Dep. at 383:08—385:16. And though they were initially reluctant, they began to partake in the Pilot Program. *Id.* at 384:08-17. The notion that members of the PSC – and particularly, Messrs. Levin and Herman – somehow purposely manipulated and prolonged these proceedings and

7

caused delay out of self-interest during this period in order to increase their loadstar is baseless and without any factual support.

> **B.      Filing Counsel had access to, and knowledge of, relevant discovery prior to signing and submitting the Disqualification Motion and Brief.**

This Court appointed a Special Master to conduct limited discovery regarding the time and expense submissions, procedures, and the relevant work of Phillip Garrett, CPA. Order dated 7/18/2016 [Rec.Doc. 20410]. Since that appointment eight months ago, the Fee Objectors have engaged in extensive fee-related discovery and an investigation into the adequacy and fairness of the various interrelated class settlements, which included the opportunity to depose Arnold Levin and Russ M. Herman.

Mr. Levin testified, under oath, having dealt with the Knauf representatives more than anybody else and having established eventually a rapport with the Knauf representatives and their counsel, that the relief that the Classes received was the maximum relief that could be received, and that Knauf was not interested in a cash settlement for the array of clients in the case. Levin Dep. at 426:07-21. Mr. Herman similarly testified that "there never, ever" was an offer or an indication from any of Knauf's counsel or representatives that Knauf would be interested in a cash settlement. Herman Dep. at 123:20—124:14.

Fee Objectors pressed both Messrs. Levin and Herman about whether they were encouraged by members of the PSC to not pursue a remediation protocol. Mr. Levin testified that he recalled only a single member of the PSC objected to the remediation, and that he has no recollection of members of the PSC encouraging him to pursue a cash settlement rather than a remediation settlement. Levin Dep. at 50:01—51:02. Mr. Herman similarly testified that he recalls only one objection to the remediation. Herman Dep. at 114:14—115:03. Mr. Herman further testified that the PSC did not approach the litigation focused on a cash settlement or a

remediation settlement, but instead approached it as 8,000 or more potential claimants who had suffered damage, and how best over the shortest period of time they could be made, to the extent possible, whole without having to pay attorneys' fees. Herman Dep. at 111:18—112:02.

The Fee Objectors also pressed Messrs. Levin and Herman about whether they recall receiving information from Victor Diaz through two members of the PSC that Knauf was interested in pursuing a cash settlement of everything. Mr. Levin testified that he did not recall this information ever being transmitted, and clarified that such a representation from Knauf, if made at all, was solely in reference to resolving the state court case being litigated by Mr. Diaz in Florida. Levin Dep. at 425:22—426:05. Mr. Herman similarly testified that he did not know if members of the PSC committee ever communicated Mr. Diaz's information to the PSC, and further stated that if a fourth tertiary hearsay statement was brought to a PSC meeting, it would not have been anything the PSC paid attention to other than to make an inquiry of Knauf's counsel, and the response the PSC would have received would have been the same response the PSC always received, which was "no, [Knauf is] on a pilot program." Herman Dep. at 123:13—125:06. When pressed over what efforts the PSC took to determine whether or not it was possible to orchestrate an all-cash settlement, Mr. Herman testified that there were discussions virtually every day with Knauf and Knauf representatives to the extent that this Court called both sides in and demanded that Knauf principals be present. *Id.* at 128:01-16. Mr. Herman testified that the PSC was uniformly told that Knauf wanted a pilot program, and PSC had to negotiate that program. *Id.* at 125:15-19.

**C.     The extensive record shows that Arnold Levin and Russ M. Herman were not "attempting to tangle common benefit time and costs in pursuit of the settling defendants with time and costs incurred in pursuit of the non-settling defendants."**

As this Court recognized, the five class settlements that produced 97% of the fees in dispute (*i.e.*, Knauf, Global, Banner, InEx, and L&W) were interrelated and interdependent. Each Settlement Agreement acknowledged that "any opt-out may be detrimental." *E.g.*, Knauf Settlement, Section 8.3.1 (emphasis added); Amended InEx Settlement, Section 7.3.1; Banner Settlement, Section 6.3.2; L&W Settlement, Section 8.3.1; Amended Global Settlement, Section 8.3.2. Further, the Knauf Settlement Agreement allowed the Knauf Defendants to terminate their agreement with the PSC if either Banner or InEx "exercise[d] their rights to terminate their respective Class Settlements or file a bankruptcy petition." Knauf Settlement, Sections 4.8.5, 13.2.1. Thus, if Banner walked away from its Settlement based on the number of opt-outs, the Knauf Defendants would likely have done the same. Similarly, because finalization of the Global Settlement was a condition precedent of the Knauf Settlement, termination of the Global Settlement based on the number of opt-outs would have jeopardized the Knauf Settlement. At bottom, any walk-away from any of the class settlements by any Settling Defendant would have had a domino effect and would have eliminated the remediation, cash and other benefits for class members seeking to participate therein. Therefore, as part of the final judicial approval process for all of the settlements, the Court extended all opt-out and objection deadlines to September 28, 2012, and permitted withdrawals of previous requests to opt out so as to amalgamate all of the settlements. *See* Order dated 6/4/2012, at ¶ 3 [Rec. Doc. 14566]; Order dated 8/8/2012 [Rec. Doc. 15686].

10

**D.    Filing Counsel have refused to withdraw or appropriately correct the Disqualification Motion.**

On April 17, 2017, Arnold Levin sent Filing Counsel a letter in lieu of a formal motion notifying them that the offending allegations violate Fed. R. Civ. P. 11(b) and directly contradict sworn testimony accessible and known to Filing Counsel at the time they signed and submitted the Motion and Brief.  *See* Levin Letter, Dated April 17, 2017 (Attached Hereto as Exhibit "C"). Moreover, the allegations were directly contradicted by the Record.  Mr. Levin requested that Filing Counsel withdraw or appropriately correct the motion within the time provided by the safe harbor provision of Rule 11, or he would formally seek sanctions.

On April 18, 2017, Mr. Jimmy R. Faircloth, Jr. responded to Mr. Levin's letter, taking four positions: (1) Mr. Levin is not permitted to bring a Rule 11 Motion, (2) the allegation that Mr. Levin and Mr. Herman abused their role is qualified by the word "appear" and, thus, not a factual allegation, (3) the basis for the allegations regarding cash versus remediation settlements can be gleaned from the questions posed during the depositions of Mr. Levin and Mr. Herman, and (4) a Rule 11 motion filed for an improper purpose may itself be subject to Rule 11 sanctions.  *See* Faircloth Letter, Dated April 18, 2017 (Attached Hereto as Exhibit "D").  Mr. Faircloth did not specifically address or provide a basis for the second offensive allegation, that Arnold Levin and Russ M. Herman were attempting to tangle common benefit time and costs in pursuit of the settling defendants with the time and costs incurred in pursuit of non-settling defendants.  Because none of these positions excuses Filing Counsel from their obligations under Rule 11, or limit Lead Counsel's ability to bring this motion to further the purpose of Rule 11, and because Filing Counsel has not withdrawn or appropriately corrected the Motion in the time provided by the safe harbor provision of Rule 11, Filing Counsel should be held accountable under Rule 11 for making incontrovertibly false accusations.

**III.     ARGUMENT**

    **A.     Legal Standard**

Rule 11(b) provides in relevant part that when filing a pleading or motion, an attorney certifies to the best of his knowledge, information, and belief, formed after a reasonable inquiry under the circumstances,

    (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

    (2) the claims, defenses, and other legal contentions are warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]

    (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery

Fed. R. Civ.P. 11(b). At issue here is whether Filing Counsel violated subpart (b)(3). A violation of any subpart provides an independent basis for sanctions. *Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 802-804 (5th Cir. 2003)(en banc). In determining compliance with Rule 11, an attorney is measured under a standard of objective reasonableness under the circumstances. *Whitehead*, 332 F.3d at 802-803. Accordingly, an attorney's good faith will not, by itself, protect against the imposition of Rule 11 sanctions. *Childs v. State Farm Mutual Ins. Co.,* 29 F.3d 1018, 1024 (5th Cir. 1994). The reasonableness of conduct involved is to be viewed at the time counsel signed the document alleged to be the basis for the Rule 11 violation, commonly referred to as the snapshot rule. *Marceaux v. Lafayette City Par. Consol. Gov't.*, 14 F.Supp.3d 760, 766 (W.D. La. 2014). This rule ensures that Rule 11 liability is assessed only for

a violation existing at the moment of the filing. *Skidmore Energy Inc. v. KPMG*, 455 F.3d 564, 570 (5th Cir. 2006).

As to the type of sanction imposed, the court should use the least severe sanction that furthers the purpose of Rule 11. *Jenkins v. Methodist Hospital of Dallas, Inc.*, 478 F.3d 255, 264 (5th Cir. 2007).

> **B.  Filing Counsel Violated Rule 11(b) when they signed and submitted the Motion.**
>
> > **1.  *The Allegations Are Patently False*.**

The offending allegations are patently false. Filing Counsel, not being privy to the settlement negotiations, would have had no basis to allege that Arnold Levin and Russ M. Herman steered the Knauf negotiations away from a traditional cash settlement and toward a remediation settlement to prolong and manipulate the process to support an inflated common benefit allocation. Support for this allegation is non-existent. Moreover, the allegation directly contradicts the sworn testimony of Russ M. Herman and Arnold Levin. The evidence Filing Counsel had at the time the Disqualification Motion was filed demonstrates that the Court wanted the parties to resolve the matter fairly and reasonably without any claimant having to pay a legal fee and an all cash deal would have prevented the claimants from being able to completely remediate their homes.

Mr. Faircloth's half-hearted argument that the allegation relating to Mr. Levin's and Mr. Herman's motive in negotiating a remediation is not a factual allegation because it is qualified by the word "appears" is insulting, and relies on a misguided interpretation of his obligations under Rule 11. Whether it appears that Messrs. Levin and Herman steered negotiations away from an all cash settlement to prolong and manipulate the process is a factual allegation that has no

n/a
n/a

evidentiary support or the possibility of support, even if Filing Counsel was granted unlimited discovery.

The related assertion that Messrs. Levin and Herman were improperly attempting to tangle common benefit time and costs incurred in pursuit of the non-settling defendants is equally lacking evidentiary support. The allegation overlooks, among many things, that the Global Settlement resolved certain claims involving not just Knauf, but other so-called 'non-settling defendants'. Indeed, this patently false assertion contradicts this Court's final judgment that the settlement was entered into "in good faith and without collusion." *In re Chinese Manufactured Drywall,* 2013 WL 499474, at *16.[3]

More than 21 days have passed since Filing Counsel was served with the Rule 11 letter. Filing Counsel cannot simply ignore their responsibilities or counsel their clients to ignore the responsibilities imposed by Rule 11. Filing Counsel should be appropriately sanctioned and the offending allegations should be stricken from the record.

### C. **Arnold Levin and Russ M. Herman Have Standing to Pursue Sanctions Against Filing Counsel.**

Filing Counsel relies on the Second Circuit's decision in *New York News, Inc. v. Kheel*, 972 F.2d 482 (2d Cir. 1992), to insinuate that Messrs. Levin and Herman, as a non-parties, have no standing to bring the instant Motion. *Kheel*, which held that a non-party who was merely identified within the allegations of the complaint as a participant in the incriminating facts, but not named as a Defendant was not permitted to intervene and seek sanctions, does not stand for the general proposition that only a party has standing to bring a motion pursuant to Rule 11. *Kheel* recognizes that "the language of Rule 11 does not address the issue who may move for

---

[3] The time has long since expired to challenge this final order. *See generally* Fed.R.Civ.P. 60 (c)(1) (establishing a prescriptive period of "no more than one year after the entry of the judgment").

14

sanctions" and only goes as far as stating that "the Advisory Committee Notes indicates that it is the parties who should move for sanctions" and holding that "as a general rule only parties to an action and certain other participants have standing to move for sanctions." *Kheel,* 972 F.2d at 488 (emphasis Added) (citing *Port Drum Co. v. Umphrey*, 852 F.2d 148, 150-52 & nn. 2-3 (5th Cir. 1988) (Rule 11 is designed to regulate proceedings among parties already before the district court in a particular action but non-party witness may be permitted to make a Rule 11 motion under certain circumstances)). Based on that holding, the *Kheel* court found that the movant, "as a non-party and a non-participant in the action, could not move for sanctions."

Moreover, the *Kheel* court recognized that other courts have allowed non-parties to bring a motion pursuant to Rule 11. For example, in *Westmoreland v. CBS*, 770 F.2d 1168 (D.C.Cir. 1985), one of the cases cited by *Kheel*, the United States Court of Appeals for the District of Columbia Circuit permitted a non-party deposition witness to move under Rule 11 for costs and attorney's fees incurred in defending against a contempt order arising out of a deposition. And, in *Greenberg v. Sala*, 822 F.2d 882 (9th Cir. 1987), another case cited in *Kheel*, the Ninth Circuit held that defendants who were named in a frivolous complaint could seek Rule 11 sanctions, even though they had never actually become official parties due to lack of service. In finding that would-be defendants had standing, the court noted that "the filing of the complaint…caused the defendants to incur costs and attorney fees….Moreover, the filing of the complaint necessarily triggered the expenditure of court resources." *Greenberg,* 822 F.2d at 885. Even though Messrs. Levin and Herman are not formal parties to this litigation, Messrs. Levin and Herman are participants who, as Lead and Liaison Counsel, are now forced to litigate against the offending allegations. Even under the reasoning of *Kheel*, Messrs. Levin and Herman qualify as the type of non-parties that may bring a motion for Rule 11 sanctions. *See*, *Kheel*, 872 F.2d at

488-89 (distinguishing *Westmoreland* and *Greenberg*). Accordingly, Messrs. Levin and Herman have standing to file a motion for Rule 11 sanctions.

## IV. CONCLUSION

For all of the foregoing reasons, an Order imposing sanctions on Filing Counsel by striking the offending allegations and imposing such other sanctions as the Court deems appropriate should issue.

Respectfully submitted,

Dated: May 9, 2017

/s/ Russ M. Herman
Russ M. Herman (Bar No. 6819) (on the brief)
Leonard A. Davis (Bar No. 14190) (on the brief)
Stephen J. Herman, Esquire (Bar No. 23129)
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com
*Plaintiffs' Liaison Counsel MDL 2047*
*Co-Chair/Secretary Fee Committee*

Arnold Levin (on the brief)
Frederick S. Longer (on the brief)
Sandra L. Duggan (on the brief)
Levin Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel MDL 2047*
*Chair Fee Committee*