**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br><br>SECTION: L |
| THIS DOCUMENT RELATES TO: | JUDGE FALLON |
| *ALL CASES* | MAG. JUDGE WILKINSON |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF MOTION TO STAY**
**MAY 31 EVIDENTIARY HEARING BEFORE THE SPECIAL MASTER**
**AND REQUEST FOR EXPEDITED CONSIDERATION**

# EXHIBIT B

# LETTER FROM JIMMY FAIRCLOTH TO DANIEL BALHOFF (FEB. 8, 2017)

# FAIRCLOTH, MELTON & SOBEL, LLC

*ATTORNEYS*

| | | |
|---|---|---|
| JIMMY R. FAIRCLOTH, JR. [1] | | *OF COUNSEL* |
| BARBARA BELL MELTON | ONE AMERICAN PLACE | WILSON & WILSON |
| DAVID R. SOBEL [2] | 301 MAIN STREET, SUITE 920 | JENA, LA |
| LOTTIE L. BASH | BATON ROUGE, LA 70801 | |
| CHRISTIE C. WOOD | PHONE (225) 343-9535 | [1] L.L.M. IN LITIGATION |
| BROOK LANDRY VILLA | FAX (225) 343-9538 | [2] ALSO ADMITTED IN TEXAS |
| MATTHEW L. NOWLIN | www.fairclothlaw.com | |
| DREW HOFFMANN | | |
| LAURA BETH MATTHEWS | | |

February 8, 2017

Mr. Daniel J. Balhoff
PERRY, BALHOFF, MENGIS & BURNS, LLC
2141 Quail Run Drive
Baton Rouge, LA 70808

      RE:    *In re: Chinese-Manufactured Drywall Products Liability Litigation*, MDL 2047 (E.D. La.)

Dear Special Master Balhoff,

      The depositions of Russ Herman, Sandra Duggan and Arnold Levin have further confirmed that Primary Counsel's access to common benefit time submissions is imperative and that the selective lodestar reports and other summaries provided thus far are insufficient to allow Primary Counsel to formulate objections to the Fee Committee's (the "FC") allocation recommendation. It is patently unfair to deny Primary Counsel access to the most relevant evidence of the alleged value of the common benefit effort, while simultaneously allowing the FC to use that same evidence to support its request. If the FC is permitted to point to 232,000 hours of common benefit time to support its request for a historic award of common benefit fees, Due Process demands that Primary Counsel be provided the opportunity to review and, if appropriate, challenge those hours. Moreover, the relevancy of this evidence far outweighs the burden of production as the time submissions can be accomplished via the grant of access to Mr. Garrett's case cost management system. Primary Counsel now re-urge and supplement their previous requests for common benefit time submissions in this MDL, as follows.

**Brief History of Time Submission Requests**:

      Primary Counsel are clearly entitled to time submissions pursuant to Judge Fallon's Order mandating discovery pertaining to "time and expense submissions." Rec. Doc. 20410. Pursuant to this Order, Primary Counsel initially requested discovery encompassing time submissions on July 29, 2016 wherein they sought discovery related to "[t]he particulars of common benefit work" including documents related to such work. Thereafter, you met with co-liaison counsel for objectors, Val Exnicios and me, on August 24, 2016 and asked us to submit an initial list of

Special Master Balhoff
February 8, 2017
Page 2

documents Primary Counsel sought from the FC and/or Plaintiffs' Steering Committee (the "PSC"). Accordingly, that list was submitted to you on August 26, 2016. Again, Primary Counsel requested all common benefit time submissions.

On September 25, 2016, you entered Special Master Case Management Order No. 1 ("CMO No. 1") outlining the initial phase of discovery. Because that order did not allow Primary Counsel access to the time submissions (among other items), on October 7, 2016, Primary Counsel re-urged their request, specifically delineating why the production of timesheets is critical in this matter. On October 18, 2016, responding to opposition from the FC regarding discovery, Primary Counsel set forth additional reasons why access to the time submissions should be granted.

On October 28, 2016, you issued *Special Master's Ruling Concerning Objectors' October 7, 2016 Request to Modify Special Master Case Management Order No. 1* ("Ruling"). Primary Counsel's request for time submissions was "denied at the present time" but you reserved the right to reconsider the determination once depositions were conducted should Primary Counsel "demonstrate that source time and expense submissions are necessary to the disposition of this matter. . . ." Ruling, p. 14.

In accordance with CMO No. 1, Primary Counsel deposed Philip Garrett on December 14, 2016. Based on Mr. Garrett's testimony and the nature of his work in this MDL, Primary Counsel again requested all time submissions on January 6, 2017. On January 11, 2017, you informed Primary Counsel and the FC of your intention to delay your decision on Primary Counsel's request until the depositions of Russ Herman, Sandra Duggan and Arnold Levin concluded, January 24, 25 and 26 respectively. Those depositions were conducted on the scheduled dates and multiple contemporaneous calls for production were made, many pertaining to the source time sheets. You ruled that that all requests for production should be made in writing to you following the depositions. *See e.g.*, Herman Dep. 250:19-25.

Primary Counsel now respectfully re-urge their requests for source time sheets. They hereby incorporate all arguments previously presented in connection therewith, including but not limited to those set forth in the letters dated October 7, October 18 and January 6.

**The Fifth Circuit's Tenets of Transparency and Fairness Require Production of Time Submissions.**

To support the exorbitant request for fees in this MDL, the Plaintiffs' Steering Committee and the Fee Committee continuously boast of common benefit counsel's herculean efforts which they allege were immensely complex and encompassed numerous and nearly insurmountable hurdles. Despite such self-serving allegations, the record reveals that settlement was "imminent" (*The Plaintiffs' Steering Committee's Motion to Establish a Plaintiffs' Litigation Expense Fund to Compensate and Reimburse Attorneys for Services Performed and Expenses Incurred for MDL Administration and Common Benefit*, Rec. Doc. 4603) only thirteen months after creation of the MDL (*Transfer Order*, Rec. Doc. 1). Further, Primary Counsel continue to maintain that much of the work undertaken by common benefit counsel that has been included within the claimed

Special Master Balhoff
February 8, 2017
Page 3

232,309.35 hours of common benefit work[1] through December of 2013 was unnecessary, counter-productive, duplicative, for the benefit of individual clients and/or failed to contribute to the settlements at issue.

Thus far, to defend their position and constitutionally protected fee agreements, Primary Counsel have been allowed very limited discovery. With regard to the common benefit time submissions, Primary Counsel have been provided certain lodestar reports prepared by Philip Garrett providing a summary of total common benefit hours submitted by each firm with no indication of the nature of the common benefit work claimed by each firm or when the common benefit hours were expended and Initial Affidavits with supporting memoranda ("no greater than five pages") describing "the professional services performed and the common benefit contribution provided by the [common benefit fee] applicant. . . ." Pre-Trial Order No. 28 (Rec. Doc. 17379, at p. 6). Such meager records are woefully insufficient to allow Primary Counsel a meaningful opportunity to oppose the unprecedented allocation suggested by the FC in that they do not allow Primary Counsel to independently evaluate and challenge, if appropriate, the reasonableness of the time spent, whether the time spent was actually for the common benefit and not related to individual cases, whether the time spent related to the settlements at issue, and whether the time claimed was duplicative or unnecessary.

The Fifth Circuit's blended approach to determining a "reasonable" fee in common fund cases places the specific work conducted by common benefit counsel at issue. As the FC has recognized, the Fifth Circuit employs a blended method to ascertain the amount of a "reasonable" common benefit fee. *Memorandum in Support of the Fee Committee's Motion to Determine the Allocation of the Global Fee Award as Between Common Benefit Fees and Individual Counsel's Fees Pursuant to PTO 28(F)* (Rec. Doc. 20290-4 at p. 7) (the "Allocation Memo"). The starting benchmark percentage under this approach is then adjusted according to the criteria set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). The first *Johnson* factor is "the time and labor required for the legal services in question." *Id.* at 717-719. The FC's analysis of this factor in its Allocation Memo is premised on the assertion that 232,309.35 common benefit hours were properly authorized, submitted, and vetted in this MDL. This very premise is undermined by the testimony of Philip Garrett who denied substantive review, auditing or vetting of common benefit time submissions, though the affidavit he submitted in support of the Allocation Memo indicated otherwise. Garrett Dep. at 26:13-16 and 46:10- 48:24. For this reason alone, the individual time submissions should be provided to Primary Counsel.

Further, the Fifth Circuit clearly requires fee allocation procedures to observe "basic judicial standards of transparency and fairness." *In re High Sulfur Gasoline Products Liab. Litig.*, 517 F.3d 220, 227 (5th Cir. 2008). In a case such as this, where it is unclear which procedures, if any, were consistently utilized to substantively scrutinize common benefit time, and where common benefit counsel claims the unprecedented complexity of this case justifies an unprecedented common benefit fee award, production of time submissions is absolutely critical to abide by the Fifth Circuit's mandate. Primary Counsel should be allowed equal access to the detailed billing records upon which common benefit counsel rely to support their fee request,

---

[1] Garrett Dep., Ex. 1 at Tab 2, p. 32.

Special Master Balhoff
February 8, 2017
Page 4

which purportedly tell the story of common benefit counsel's herculean and "uniquely intense" efforts that justify the inflated fee award sought in this case.

     Several appellate decisions support Primary Counsel's request for time submissions.  Most recently the issue was addressed by the Ninth Circuit in *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 545 (9th Cir. 2016), holding that "the Due Process Clause requires that opposing counsel have access to the timesheets relied on to support [a] fee order," and explaining that the lower court "abused its discretion by denying . . . such access."  Similarly the First Circuit, in *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig*., 56 F.3d 295, 303 (1st Cir.1995), approved the district court's process for allocating attorneys' fees because it ensured that individually retained counsel "had [among other documents] access to all the data reasonably necessary to formulate their objections, including all the PSC members' time and expense submissions [and] summaries thereof. . . ."[2]

     While the Third and Eighth Circuits have upheld refusals by lower courts to require the production of individual time submissions, those Circuits have focused on the adequacy of the process for reviewing time entries and held that the procedures used in those cases were sufficient. *In re Genetically Modified Rice Litig*., 764 F.3d 864, 872 (8th Cir. 2014); *In re Diet Drugs*, 582 F.3d 524, 540 (3d Cir. 2009).[3]  In *In re Diet Drugs*, the court appointed an auditor who was charged with evaluating whether time and expenses "met previously established criteria for payment. . . ." 582 F.3d at 533.  Additionally, "the Court required the auditor and Plaintiffs' Liaison Counsel to submit volumes of data reflecting the time and money that Class Counsel spent on the diet drugs litigation—data that the Court put on the public record and used to support the fee award that it ultimately granted." *Id.* at 539.

     Unlike the independent auditor appointed *In re Diet Drugs*, Mr. Garrett was retained by Plaintiffs' Liaison Counsel, Mr. Herman, not the Court. *See* Pre-trial Order No. 9 (Rec. Doc. 147 at p. 2).  Mr. Garrett testified that other than questioning time for what on its face appeared to be for individual clients or administrative tasks, he undertook no substantive review of time submissions nor did he decide whether time was for the common benefit. Garrett Dep. 51:4-52:13 and 315:24-25.  Despite, the FC's representation to the Court to the contrary,[4] Mr. Garrett was very careful to explain that he did not "audit" or vet the common benefit time submissions. *Id.* at 26:13-16 and 48:19-24.  Though the FC may assert that Sandra Duggan conducted a substantive review of the common benefit time submissions, per Sandra Duggan's deposition testimony, this

---

[2] *See also In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F.Supp.2d 732, 804 (S.D. Tex. 2008) (objectors received copies of billing records, had an opportunity to review them and to file additional objections).

[3] See *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 342 (3d Cir.1998) wherein the Third Circuit upheld district court's refusal to grant discovery of time records given that the lodestar calculation in the case was solely intended as a cross-check of the court's primary fee calculation using the percentage of recovery methodology.

[4] *Allocation Memo* at p. 18.

Special Master Balhoff
February 8, 2017
Page 5

was done at the request of Arnold Levin, the chair of the FC,[5] and her review did not include a review of other FC member firms' time, which makes up 127,735.03 hours of the total 232,309.35 common benefit hours claimed. Duggan Dep. 94:8-15; Garrett Dep., Ex. 1 at Tab 2, p. 32. Further, as explained above, there is no public record or information made available to Primary Counsel evidencing the details of the work conducted by common benefit counsel in this case or even the year in which the work was completed which would allow Primary Counsel to evaluate whether this work was in fact for the common benefit, reasonable, necessary, or related to the settlements at issue. Additionally, the process for approving and reviewing common benefit work was highly suspect and lacked the transparency required by the Fifth Circuit. When questioned on the process for the authorization of common benefit work, Plaintiffs' Lead Counsel, Mr. Levin, explained: **I am the process**. Levin Dep. 156:17 (emphasis added).

### The Deposition Testimony of Herman, Duggan, and Levin Further Reveals that Production of Time Submissions is Necessary.

The testimony given by the FC deponents further highlights the deficiencies in the information produced to Primary Counsel and thereby bolsters their entitlement to the common benefit time submissions. Though the FC relies heavily on their alleged "herculean" efforts and the 232,309.35 common benefit hours expended through December of 2013 to justify taking the lion's share of the available attorneys' fees, the FC has vigorously opposed the production of common benefit counsel's time submissions, arguing that Primary Counsel should not be privy to such information and that Due Process is satisfied because summaries were provided to Primary Counsel. Most recently, the FC asserted that "[a]ny questions about the manner or method by which the FC recommends that such billable time should be attributed to common benefit work can be directed to the FC deponents. . . ." Letter from A. Levin and R. Herman to S.M. Balhoff, at p. 3 (January 9, 2017).

Taking to the task, Primary Counsel questioned Mr. Herman, Ms. Duggan and Mr. Levin regarding the FC's recommendation, including the procedures employed and factors considered when making its recommendation. Mr. Herman acknowledged that the amount and quality of work that bestowed a benefit is important to determining the common benefit fee. Herman Dep. 97:8-9. Currently, Primary Counsel have been provided the overall amount of common benefit time as well as the total time spent for very generalized categories of legal work, such as assessment, pre-trial, discovery, trial, appeal, and settlement. Garrett Dep., Ex. 1 at Tab 2, p. 32. These compilations are insufficient to adequately assess the amount or quality of work or whether these hours were in fact incurred for the common benefit, as it is impossible to glean from these broad categories when the work was performed, what specifically was done, whether the time spent was reasonable, whether it was duplicative of another common benefit counsel's work, or whether the task related to or contributed to the settlements at issue.

The time submissions will undoubtedly provide specific information necessary for Primary Counsel to independently evaluate the FC's alleged "herculean" efforts expended in this case and

---

[5] *See* Pre-trial Order No. 28 (Rec. Doc. 17379 at p. 14).

formulate their objection to the FC's unprecedented allocation proposal. As Mr. Herman recognized, the description given by common benefit time keepers when submitting their time likely specifies the particular case or task for which the time was incurred, e.g., Knauf, Taishan, etc. *Id.* at 345:17-346:2. Importantly, when queried as to how much time was spent on certain tasks and which firms conducted such tasks, Mr. Herman confirmed the he could not answer but that such information should be reflected in the time sheets:

> Q. All right. All the things that you just described in connection with the Hernandez -- excuse me, Germano trial and Hernandez trial, all of those things you just described would be referenced in time sheets, and we could look at those and glean how much time and by whom was spent on those activities if we had the time sheets, could we not?
> A. Yes.
> Q. Same thing for -- in connection with the Hernandez findings of fact and conclusion of law, all the lawyers that did work on that project or associated with that project should have time entries reflecting that activity?
> A. Yes.
> Q. If we had those time sheets, we'd know how much time, correct?
> A. Yes to the first part of the question, and yes to the second.
> Q. Same thing for the Campbell and the Clement case, that settled on the eve of trial, there should be time entries showing how much common benefit time and by whom that work was done, right?
> A. First clause, yes. Second clause, yes.
> Q. Same question for 6/18, the Seifert case, correct?
> A. Yes.

Herman Dep. 93:13-94:16. *See also*, Herman Dep. 90:2-9 (responding that he did not know the amount of common benefit time expended in reaching an agreement with Knauf to accept service).

Ascertaining the amount of time spent on particular aspects of this litigation is critical to Primary Counsel's opposition to the FC's proposed allocation in that Primary Counsel object to being charged for common benefit time that did not generate fees in which Primary Counsel are allowed to share. Specifically, this includes the time associated with the so far fruitless pursuit of non-settling defendants such as the Taishan entities. It also includes time and expenses associated with the North River trial and resulting in the InEx/North River Stipulation [Rec. Doc. 16968], the Virginia Settlements,[6] and the voluntary common benefit contributions made or owed pursuant to court order [Rec. Docs. 8389 and 8545; see also list of voluntary contributions produced by Philip Garrett pursuant to CMO No. 1 introduced as Exhibit 1, Tab 10, at *CDW_GarrettProd_00140-*

---

[6] The Virginia Settlements include the Nationwide Settlement, the Porter-Blaine Settlement, the Builders Mutual Settlement and the Tobin Trading Settlement as defined in the Court's May 27, 2016 Order at footnote 2. Rec. Doc. 20257.

*143*.]. If the fees generated from these cases are to be excluded from the total funds available to compensate individually retained counsel, it is inappropriate to require individually retained counsel to reimburse common benefit counsel for the time associated with these matters. Stated differently, because those services related to Taishan have not yielded a return and because the InEx/North River Stipulation, the Virginia Settlements and the voluntary contributions have not been included in to the total amount of funds available to compensate individually retained counsel, they should not be charged as common benefit and thereby detract from the total amount of funds available to compensate individually retained counsel. Nevertheless, Mr. Garrett, Mr. Levin, and Ms. Duggan acknowledged this time was not segregated and that all time submitted in the MDL was included in the 232,309.35 hours of common benefit time for which the FC claims compensation is due from the global fee pot. Garrett Dep. 80:14-20; Levin Dep. 42:4-19; 73:6-75:8; 183:9-184:6; Duggan Dep. 356:6- 357:24  Accordingly, Primary Counsel must be allowed access to the time submissions to ascertain whether and to what extent time associated with these activities has been charged as common benefit.

Additionally, Ms. Duggan, who reviewed the time submitted by a majority of the common benefit firms, testified that certain reports produced to Primary Counsel did not accurately reflect the reductions to common benefit time made as a result of FC work.  Duggan Dep. 310:10 – 311:17.  Nevertheless, she conceded that the time entries on Mr. Garrett's system, inaccessible to Primary Counsel, would reflect such withdrawals or reductions of common benefit hours.  *Id.*  Similarly, Mr. Levin conceded that time incurred prior to the creation of the MDL, if reported to Mr. Garrett, would be included in the total amount of common hours reported by Mr. Garrett.  Levin Dep. 207:10-25.  Without access to Mr. Garrett's system and the actual time submissions, Primary Counsel have no way of ascertaining the amount of purported common benefit time incurred prior to the creation of the MDL or whether that time was reasonably related to the common benefit.

As set forth above, the case law, the facts and the deposition testimony all lead to the undeniable conclusion that Primary Counsel's access to the common benefit time submissions cannot be properly denied.  Accordingly, Primary Counsel respectfully request that you reconsider and revise your earlier Ruling to allow for such.

Sincerely,

**FAIRCLOTH, MELTON & SOBEL, LLC**

By: ___*/s/ Jimmy R. Faircloth, Jr.*___
     Jimmy R. Faircloth, Jr.
     jfaircloth@fairclothlaw.com

JRF/rb