**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br><br>SECTION: L |
| THIS DOCUMENT RELATES TO: | JUDGE FALLON |
| *ALL CASES* | MAG. JUDGE WILKINSON |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF MOTION TO STAY
MAY 31 EVIDENTIARY HEARING BEFORE THE SPECIAL MASTER
AND REQUEST FOR EXPEDITED CONSIDERATION**

# EXHIBIT C

# LETTER FROM JIMMY FAIRCLOTH TO DANIEL BALHOFF (FEB. 15, 2017)

# FAIRCLOTH, MELTON & SOBEL, LLC

*ATTORNEYS*

| | | |
|---|---|---|
| JIMMY R. FAIRCLOTH, JR. [1] | | *OF COUNSEL* |
| BARBARA BELL MELTON | ONE AMERICAN PLACE | WILSON & WILSON |
| DAVID R. SOBEL [2] | 301 MAIN STREET, SUITE 920 | JENA, LA |
| LOTTIE L. BASH | BATON ROUGE, LA 70801 | |
| CHRISTIE C. WOOD | PHONE (225) 343-9535 | [1] L.L.M. IN LITIGATION |
| BROOK LANDRY VILLA | FAX (225) 343-9538 | [2] ALSO ADMITTED IN TEXAS |
| MATTHEW L. NOWLIN | www.fairclothlaw.com | |
| DREW HOFFMANN | | |
| LAURA BETH MATTHEWS | | |

February 15, 2017

**VIA E-MAIL**
Mr. Daniel J. Balhoff
PERRY, BALHOFF, MENGIS & BURNS, LLC
2141 Quail Run Drive
Baton Rouge, LA 70808

      RE:    *In re: Chinese-Manufactured Drywall Products Liability Litigation*, MDL 2047
               (E.D. La.)

Dear Special Master Balhoff,

      The depositions of Russ Herman, Sandra Duggan and Arnold Levin established that the production of additional documents is necessary in this fee contest. Some of these documents have been previously requested while others, the importance of which were revealed during the depositions, have not.[1] All of the documents requested herein were discussed during the depositions and most were the subject of contemporaneous calls for production by Primary Counsel.

      Importantly, all of the documents requested below squarely fall within the Court's Order allowing for discovery (Rec. Doc. 20410) and the production of which is supported by the applicable case law regarding the allocation of attorneys' fees in the mass tort context. The Court specifically ordered discovery related to the "time and expense" submissions allegedly attributable to the common benefit and the FC's "procedures" to vet and assign value to common benefit time. *See* Rec. Doc. 20410. Production of the following documents, thus far available only to the Court, the PSC, the FC, and in some instances Mr. Garrett and you, is necessary to ensure that Primary

---

[1] This correspondence addresses the production of particular documents or categories of documents vis-à-vis the deposition testimony of Russ Herman, Sandra Duggan and Arnold Levin. In the interest of efficiency and brevity, Primary Counsel will not retread ground (legal or factual) already covered in prior briefs, correspondence or pleadings which Primary Counsel adopt and incorporate herein. As such, when re-urging a request previously made, this letter will include a cross-reference to previous request(s).

Counsel have "access to all the data reasonably necessary to formulate their objections" to the allocation recommendation and take "precise aim at the accuracy of the supporting materials":

> … time and expense submissions, summaries thereof, detailed accounts of the procedures used by the PSC [and FC] to gather, review and audit time records, and the working papers, correspondence and documentation generated by the PSC's accountants during the compilation process.

*In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 303 and n. 5 (1st Cir.1995). Further, as required by the Fifth Circuit, fee allocation procedures "must 'apply a universally fair standard of allocation to all [attorneys]. One cannot even compare apples to oranges without knowing what the oranges are." *In re High Sulfur Gasoline Products Liab. Litig.*, 517 F.3d 220, 232 (5th Cir. 2008) (quoting *In re Vitamins Antitrust Litig.*, 398 F. Supp. 2d 209, 234 (D.D.C. 2005)). Moreover, notice of these procedures is part and parcel of Primary Counsel's Due Process right to be heard. [2]

**Sandra Duggan Reports and Memoranda**

Primary Counsel continue to maintain that production of the following documents, initially requested in their September 23, 2016 proposed *Special Master Case Management Order No. 1* ("Proposed CMO No. 1"), is critical in this allocation proceeding:

> **Memoranda, reports, ledgers, spreadsheets, or other documents prepared by or with input from Sandra Duggan regarding, discussing or relating to:**
> **a. Common benefit time and/or expenses,**
> **b. Whether a particular activity or expense was for the common benefit;**
> **c. The allowance or disallowance of common benefit time or expenses; or**
> **d. The value of benefits conferred upon claimants by either common benefit counsel or individually retained counsel.[3]**

Despite the importance of Ms. Duggan's reports and memoranda, Special Master Case Management Order No. 1 ("CMO No. 1") issued on September 25, 2016 failed to require their production. Accordingly, Primary Counsel re-urged the request by correspondence to you on October 7, 2016, setting forth, in detail, the reasons why production is essential.[4] On October 28, 2016, *Special Master's Ruling Concerning Objectors' October 7, 2016 Request to Modify Special Master Case Management Order No. 1* ("Ruling") specifically denied this request.[5] Primary

---

[2] As explained in my February 8, 2017 letter to you, the Third and Eighth Circuits have focused on the adequacy of the process for reviewing time entries. *In re Genetically Modified Rice Litig.*, 764 F.3d 864, 872 (8th Cir. 2014); *In re Diet Drugs*, 582 F.3d 524, 540 (3d Cir. 2009).
[3] Proposed CMO No. 1, p. 6 (No. 5).
[4] Letter from Primary Counsel to Balhoff at p. 8 (No. 5) (October 7, 2016).
[5] Ruling, pp. 16-17 (No. 5).

Counsel then filed their *Objection to Special Master's Ruling Concerning Objectors' Request to Modify Special Master CMO No. 1 and Request for Expedited Consideration* ("Objection to Ruling") (Rec. Doc. 20552, pp. 11-13) on November 18, 2016, requesting the Court to order the production of, *inter alia*, these documents. This request is currently pending before the Court.

Ms. Duggan's deposition testimony, revealing the true extent of her work on behalf of the FC, confirmed and further established that her work, reports and memoranda, heavily relied upon by the FC, were critical in the FC's computations and resulting request for common benefit fees. In fact, Ms. Duggan's work was the starting point of the FC's process and formed the basis upon which the allocation motion was founded. Her work also served as evidence used by the FC in its *Omnibus Response to Objections to the Fee Committee's Motion to Determine the Allocation of the Global Fee Award as Between Common Benefit Fees and Individual Counsel's Fees Pursuant to PTO 28(F)*. Rec. Doc. 20384-2, Appendices A-G.

Specifically, as initially requested by Mr. Levin, she reviewed common benefit time and made recommendations to the FC. Herman dep. 273:15-20; 363:12-365:9. Her work began by accessing Mr. Garrett's system and reviewing the submissions previously accepted by Mr. Garrett. Duggan dep. 82:1-15. Her findings were recorded in memoranda submitted to Mr. Levin and/or the FC, "that outlined month by month . . . a summary of what was submitted for common benefit time and common benefit held costs." *Id.*; *see also*, *id.* at 99:17-100:16. Her memoranda also contained a description of the categories of time and expenses submitted by each firm (*Id.* at 83:8-84:5) as well as notes detailing entries that she felt were improper (*Id.* 298:18-299:22). Significantly, Ms. Duggan testified that she did not know whether her recommendations were followed and specifically whether the improper entries were actually withdrawn by the firms in question, which further demonstrates Primary Counsel's need for both Ms. Duggan's memoranda and access to the common benefit time records. *Id.* at 248:5-8. Loaded with evidence directly bearing upon the issues in this fee dispute (i.e., the volume and value of work performed for the common benefit), Ms. Duggan's memoranda are critical to Primary Counsel's understanding of the submissions and procedures.

In addition to her memoranda, Ms. Duggan testified to creating documents relating to or used in connection with her review of common benefit time and/or expenses. Those documents include:

1. Reports, memoranda or analyses requested by the FC related to certain categories of time and/or expenses (*Id.* at 301:24-302:12);
2. List of bellwether and potential bellwether plaintiffs (*Id.* at 256:1-13);[6]
3. Spreadsheet reflecting the number of hours voluntarily withdrawn by common benefit counsel broken out by attorney, paralegal, secretary and law clerk. (*Id.* at 338:5-14, 342:21-25); and
4. List of assignments reflecting which FC member was assigned to review time submissions of other FC member firms (*Id.* at 294:20-295:12).[7]

---

[6] As you will recall, Ms. Duggan testified that inspection costs for any potential bellwether plaintiff would also be considered a common benefit expense. *Id.* at 44:16-19 and 257: 6-12.

[7] With respect to reviewing time submissions, Ms. Duggan testified that "the fee committee decided to conduct a review of other fee committee member firms." However, Ms. Duggan had no knowledge as to which FC member

Like the memoranda prepared by Ms. Duggan, these documents are directly relevant to the pre-authorization, review and approval of common benefit time (pursuant to PTO Nos.9, 9A and 28) and the FC's ultimate recommendation that common benefit counsel receive an astronomical slice of the available fee pie. Ms. Duggan was intimately involved in the FC's procedures and the FC heavily relied upon her recommendations. *See* Herman dep. 363:2-9 (referring to Sandra Duggan as an "expert" in auditing common benefit time). As such, Primary Counsel are entitled to the production of the same.

**Transcripts, Agenda and Minutes of PSC and/or FC Meetings and Interviews**[8]

The PSC and its leadership are the spokespersons for all plaintiffs and their individually retained counsel. They were charged with coordinating and overseeing the prosecution and common benefit work. In this role, they were expected to report to plaintiffs and their counsel. Accordingly, the PSC kept records and transcribed all PSC meetings. See PTO 1 (Miscellaneous, Section 5 at p. 13) (Rec. Doc. 2).

Primary Counsel have previously requested all transcripts, agenda and minutes of PSC meetings. These documents were kept pursuant to court order for the very purpose of establishing a record on common benefit activities. *See* Herman dep. 122:6-7 (confirming that PSC meetings were transcribed). Moreover, as an initial matter, the PSC was to serve as a gatekeeper – authorizing all common benefit work prior to such work being conducted. Rec. Doc. 147 at p.1, ¶ 1. *See also*, Objection to Ruling, pp. 6-7 (detailing the Court's requirement for pre-approval of common benefit work and the supporting documentation required to be maintained for such pre-approval). During his deposition, Mr. Herman was asked how and if the PSC "memorialize[d] that initial authorization for $119 million worth of work." Herman dep. 156:1-4. Despite finally revealing that the work was authorized because "I say so," (*Id.*)[9] he confirmed that PSC minutes may memorialize the pre-authorizations. Herman dep. 151:13-22, 153:14-21. Without such pre-approvals, the common benefit work was not properly authorized and should not be charged against the global attorneys' fee fund.

Additionally, Mr. Herman testified that he and Mr. Levin were directed by the Court to inform common benefit attorneys throughout the course of the litigation that it was unhappy with the hours being reported. Accordingly, Mr. Herman and Mr. Levin would convey this information during PSC meetings, but it is unclear what, if any action was taken in this regard. Herman dep. 176:25-177:19, 272:25-273:8.

Transcripts, agenda and minutes of the FC meetings, also previously requested, should likewise be produced as they will contain important information regarding time submissions and the FC's process, required to be fair and equitable,[10] leading to its allocation recommendation. The

---

reviewed time submissions of other FC members other than the fact that Ms. Duggan reviewed the time of fellow FC member, Michael Ryan. *Id*. at 95: 3-16. This inherent conflict of interest is compounded by the fact that some firms on the PSC and FC shared cases with each other.

[8] *See* Proposed CMO No. 1, p. 5 (No. 2), p. 6 (No. 4.c-d); Letter from Primary Counsel to Balhoff at p. 5 (No. 2), p.7 (No. 4.c-4.d) (October 7, 2016); Ruling, p. 15 (No. 2), p.16 (No. 4.c-d); Objection to Ruling, pp. 4-6, 9-10.

[9] *See also*, Levin dep. 156:17-19 ("I am the process . . . . Mr. Herman was the process.")

[10] Herman dep. 308:11-18.

FC,[11] along with the PSC, was tasked with submitting a Joint Fee Petition. PTO 28 (Miscellaneous, at p. 14) (Rec. Doc. 17379). The Court also ordered the FC to "make a recommendation for an allocation of awards from various funds that collectively comprise the Settlement Fee and Cost Account." *Id.* Mr. Levin explained that an important part of this process was the self-correction or self-reduction of time by common benefit attorneys. Levin dep. 128:15-129:4.[12] He verified that some information related to common benefit counsel's self-auditing of time should be contained in FC transcripts. *Id.* Primary Counsel are entitled to access records of this vetting process, as they fall squarely within the Court's Order allowing discovery "regarding time and expense submissions, procedures, and the relevant work of Philip Garrity [sic], CPA . . ." *See* Rec. Doc. 20410

**Emails, Written Communications and Other Documents Regarding Authorization or Denial of Common Benefit Work and/or Expenses**[13]

PTO No. 9 explicitly requires pre-approval of common benefit time and expenses. Primary Counsel have repeatedly requested documents related to the procedure for and actual evidence of pre-approval of common benefit time and expenses.[14] Without the objective pre-approval of time and expenses, the subjective determination of the merits, quality or necessity of common benefit work and expenses is superfluous. As demonstrated during Mr. Herman's deposition during questioning by counsel for the FC, at least some evidence of this pre-approval exists in email communications. *See* Herman dep. 366:5-371:9, Herman Proffer No. 1. Accordingly, Primary Counsel maintain that production of all documents requesting approval to conduct, authorizing or denying common benefit work is necessary to formulate an objection to the FC's allocation recommendation.

**Reports, Memoranda and Emails Regarding Self-Correction of Common Benefit Time**[15]

As explained in a previous section of this correspondence, self-correction of time was an integral step in the process culminating in the FC's recommendation to the Court for a historical and unprecedented allocation. The FC and/or PSC's instruction to and oversight of common benefit counsel was an ongoing and arduous task. Herman dep. 100:24-101:3; Levin dep. 128:15-129:4. Ms. Duggan testified that as recent as 2016, she had to request accurate data from Mr. Garrett because firms were voluntarily reducing their time. Duggan dep. 154:1-7. Primary counsel are clearly entitled to production of such documentation.

---

[11] With the exception of one member, all members of the FC are also members of the PSC.
[12] Similarly, Mr. Herman verified that scrutinizing of time was an essential part of his leadership function in both the PSC and the FC. *Id.* at 361:13-20.
[13] *See* Proposed CMO No. 1, p. 5-6 (Nos. 3, 4c-d), p.6 (No. 4.c-d); Letter from Primary Counsel to Balhoff at pp. 5-8 (Nos. 3, 4.c-d) (October 7, 2016); Ruling, p. 15-16 (Nos. 3, 4.c-d); Objection to Ruling, pp. 6-7, 9-10.
[14] Id.
[15] *See* Proposed CMO No. 1, p. 6 (Nos. 4.c-d, 5); Letter from Primary Counsel to Balhoff, p.7 (No. 4.c-4.d), p.8 (No.5) (October 7, 2016); Ruling, pp.16-17 (Nos. 4.c-d, 5); Objection to Ruling, pp. 9-13.

**Philip Garrett's Reports**

Mr. Garrett's deposition testimony revealed that he prepared various reports throughout the course of the litigation. These reports,[16] provided to the PSC,[17] are direct evidence of the "time and expense" submissions allegedly attributable to the common benefit. *See* Rec. Doc. 20410. Accordingly, on January 6, 2017, Primary Counsel requested these reports in their *Requests for Production of Documents to Philip Garrett*. The depositions of Mr. Herman, Ms. Duggan and Mr. Levin confirm that Mr. Garrett's reports were heavily relied upon by the PSC, the FC and the Court and played an important role in the allocation recommendation. *See* Levin dep. 133:25-134-15. For example, one of the issues in this dispute is the amount of hours properly charged as common benefit. Early in the litigation, the PSC informed the Court that settlement was imminent.[18] Mr. Herman attested that Mr. Garrett's reports would likely reveal the volume of work done prior to the point when settlement was imminent. Herman dep. 99:20-100:25. Ms. Duggan testified that she requested and relied upon Mr. Garrett's reports prepared as recently as 2016. Duggan dep. 153:16-25. Further, Mr. Garrett's invoices disclose that, prior to the FC filing the Allocation Motion (Rec. Doc. 20294-1), he prepared reports calculating various allocation scenarios. *See* Herman dep. 198:19-23, 201:20-202:5.

**Miscellaneous Documents**

1. **Second Affidavits Submitted in Accordance with PTO 28**.

PTO 28 requires common benefit counsel to submit a Second Affidavit in Connection with Request for Allocation of Common Benefit Fee and Cost Award. Rec. Doc. 17379, pp. 11-12. The Second Affidavits target information necessary for Primary Counsel to identify whether a particular activity was for the common benefit and thereafter value the contributions of common benefit counsel. *See, e.g.,* Herman dep. 153:12-154:3 (explaining that that the Second Affidavits may contain evidence that pre-authorization was granted). They are critical to Primary Counsel's understanding of what the FC properly included as common benefit time pursuant to Pretrial Order Nos. 9, 9A, and 28, and are highly relevant to the FC's ultimate recommendation of the fee allocation and "procedures" leading to the FC's fee allocation recommendation. *See* Rec. Doc. 20410.

---

[16] As discussed in earlier submissions, ascertaining the amount of time spent and costs incurred on particular aspects of this litigation is critical as Primary Counsel object to being charged for common benefit time and expenses that did not generate fees in which Primary Counsel are allowed to share. Specifically, this includes the time and costs associated with the so far fruitless pursuit of non-settling defendants such as the Taishan entities. It also includes time and expenses associated with the North River trial and resulting in the InEx/North River Stipulation [Rec. Doc. 16968], the Virginia Settlements, and the cases on the voluntary contribution list produced by Philip Garrett pursuant to CMO. 1. Primary Counsel requested these reports regarding case specific matters (notably some are referenced in his billing Statements) in their Requests for Production of Documents to Philip Garrett on January 6, 2017.

[17] Herman dep. 147:8-16.

[18] *See* The Plaintiffs' Steering Committee's Motion to Establish a Plaintiffs' Litigation Expense Fund to Compensate and Reimburse Attorneys for Services Performed and Expenses Incurred for MDL Administration and Common Benefit. Rec. Doc. 4603.

Of equal importance, the Second Affidavits contain PSC and/or FC disclosures of fee agreements with other counsel, thereby signaling potential conflicts of interest. *See* Levin dep. 151:17-152:8.

2. **Document Review Sign-in Forms at HHK**

Mr. Levin testified that often times "[t]here would be not formal work authorization. . . ." Levin dep. 155: 2-3. However, one way the PSC judged whether work was pre-authorized was that ". . . you know you did it, you saw who did it when the task was done, and it was done by the person that you wanted to be done, so that yes, it was authorized." *Id.* at 155:5-8. The particular example he provided related to document review work. He explained that particular individuals were assigned to review documents and proof of their actually reviewing the documents is documented in the sign-in sheets which were kept at HHK. *Id.* at 154:22-25. Because these sign-in sheets are directly relevant to the pre-authorization of common benefit time, these documents should be produced.

3. **Cotchett, Pitre & McCarthy Invoices**

Cotchett, Pitre & McCarthy defended the PSC in the *Cataphora* lawsuit. The PSC's decision to submit to expensive and ultimately unsuccessful litigation rather than paying the amount provided for in the PSC's contract with Cataphora is an issue in this fee dispute. Mr. Herman maintained that the PSC did not pay for the Cotchett firm's services; rather, he stated that its fee was an all-expense paid trip to the Superbowl. Herman dep. 245: 17-22. Nevertheless, Mr. Garrett's vendor list reflects a payment to this firm in the amount of $90,089.15 (Garrett Ex. 1, Tab 3), which Mr. Herman contends was reimbursement of costs in the litigation. Herman dep. 258:5-8.[19] As such, Primary Counsel are entitled to the Cotchett firm's invoices in the possession of Mr. Herman. *Id.* at 249:13-18.

4. **Documents and Communications Related to the Document Depository and Penny Grisamore**

One category of expenses highly contested in this dispute are those related to the document depository which was run by Mr. Herman daughter and for several years was located in a building owned by HHK, and for which he charged rent in the amount of $1920 per month. Close to a million dollars in shared costs were expended on the document depository. During Mr. Herman's deposition, counsel for the FC proffered a memorandum from Penny Herman Grisamore to the Taishan discovery team regarding her electronic document depository work. Herman dep. 372:17-373:15, Herman Proffer No. 2. This memorandum was intended to serve as evidence to support the request for common benefit fees. As such, Primary Counsel request the production of all documents and communications related to the document depository and Penny Grisamore substantiating the necessity and relevant work product used to support the FC's allocation recommendation.

---

[19] Notably, invoices contained within the shared costs documentation do reflect various payments to the Cotchett firm; however, they do not contain an itemization or details regarding the costs incurred, which are clearly discoverable.

Special Master Balhoff
February 15, 2017 | Page 8

Sincerely,

**FAIRCLOTH, MELTON & SOBEL, LLC**

By: ___/s/ Jimmy R. Faircloth, Jr.___
     Jimmy R. Faircloth, Jr.
     jfaircloth@fairclothlaw.com

JRF/rb