# BRUNO & BRUNO LLP

& YOU. SINCE 1950   TRIAL LAWYERS

JOSEPH M. BRUNO*
STEPHEN P. BRUNO
JOSEPH M. BRUNO. JR

STEPHANIE MAY BRUNO*
MELISSA A. DEBARBIERIS
DANIEL A. MEYER**
DON D. REICHERT
BRANDON M. BENNETT

OF COUNSEL
ROBERT J. BRUNO
ROBERT B. REES

* ALSO LICENSED TO PRACTICE IN TEXAS
** ALSO LICENSED TO PRACTICE IN MISSISSIPPI

REPLY TO (PLEASE CHECK)

NEW ORLEANS  X
COVINGTON  ____

February 10, 2017

**VIA EMAIL ONLY**
Mr. Dan Balhoff (balhoff@pbmbllc.com)

## MR. AND MRS. CARTER'S MEDIATION POSITION PAPER

This matter comes to mediation regarding Daniel and Amy Carter's (hereinafter "Mr. and Mrs. Carter") Already Remediated Property ("ARH") claim for 261 W. Robert E. Lee, New Orleans, Louisiana 70124 in the Chinese-Manufactured Drywall Products Liability Litigation. Mr. and Mrs. Carter's Chinese Drywall Claimant ID is 112736 and their Claim ID is 2320. Mediation is set for February 15, 2017, at 10:00 a.m. Central Time at Bruno & Bruno, LLP, 855 Baronne Street, New Orleans, Louisiana 70113. Mr. and Mrs. Carter's position paper and exhibits are due by the end of business on February 10, 2017. The Knauf Defendants'[1] ("Knauf") position paper and exhibits are also due by the end of business on February 10, 2017. In compliance with Mr. Balhoff's request, Mr. and Mrs. Carter submit the following Mediation Position Paper and exhibits by the end of business on February 10, 2017.

Mr. and Mrs. Carter were the owners of the residential building located at 261 W. Robert E. Lee, New Orleans, Louisiana 70124 and are represented by Joseph M. Bruno, Bruno & Bruno, L.L.P. Knauf is the Chinese Drywall manufacturer of all drywall found in the Affected Property located at 261 W. Robert E. Lee, New Orleans, Louisiana 70124 and is represented by Danny Dysart, Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, 201 St. Charles Avenue, Suite 3600, New Orleans, Louisiana 70170.

## I.    RELEVANT FACTS

In August of 2005, Hurricane Katrina flooded and damaged the property located at 261 W. Robert E. Lee, New Orleans, Louisiana 70124. On December 30, 2005, Mr. Carter purchased the residential building located at 261 W. Robert E. Lee, New Orleans, Louisiana 70124 ("Residential Building") (Please see December 30, 2005 Cash Sale of Property, attached hereto as Exhibit "A"). Mr. Carter purchased the residential building "AS IS, WHERE IS". As a result of the damage caused by Hurricane Katrina, in April of 2006, Mr. and Mrs. Carter started to

---

[1] The Knauf Defendants include Knauf Plasterboard (Tianjin) Co., Ltd., Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Material Products Co., Ltd., Knauf Gips KG, Gebr. Knauf Verwaltungsgesellschaft KG, Knauf International GmbH, Knauf Insulation GmbH, Knauf UK GmbH, Knauf AMF GmbH & Co. KG, Knauf do Brasil Ltda., and PT Knauf Gypsum Indonesia.

CARTER000001

renovate their home. In May of 2006, Mr. Carter purchased in bulk all sheetrock used to renovate the residential building from Interior Exterior Building Supply, 730 S. Scott Street, New Orleans, LA 70119. Specifically, Mr. Carter purchased fourteen (14) 4' X 12' X ½" HIGH STR CEILING BOARD 48SF; fifty (50) 4' X 12' X ½" REGULAR SHEETROCK 48SF/PC; and six (6) 4' X 8' X ½" XP GYPSUM BOARD 32SF/PC. This purchased sheetrock was manufactured by Knauf Plasterboard (Tianjin) Co. (Please see Interior Exterior Invoice, attached hereto as Exhibit "B"). Mr. Carter only purchased sheetrock from Interior Exterior Building Supply the one time in May of 2006, and the sheetrock purchased by him was only manufactured by Knauf Plasterboard (Tianjin) Co. Mr. Carter did not buy or receive sheetrock from anywhere or anyone else. Mr. Carter is the only person who purchased and received sheetrock that was used in the residential building. Between May of 2006 through June of 2006, Mr. and Mrs. Carter and Mr. Carter's workers hung the sheetrock Mr. Carter purchased from Interior Exterior Building Supply in the residential building. Specifically, Mr. and Mrs. Carter and Mr. Carter's workers hung sheetrock in the entire first floor and master bedroom ceiling. All sheetrock hung in the residential building was manufactured by Knauf Plasterboard (Tianjin) Co. (Please see Affidavit of Mr. Carter and Affidavit of Mrs. Carter, attached hereto as Exhibit "C").

In May of 2008, with two premature newborns, Mr. and Mrs. Carter moved into the residential building. On February 4, 2009, Mr. and Mrs. Carter, as sellers, entered into a Louisiana Residential Agreement to Buy or Sell 261 W. Robert E. Lee, New Orleans, Louisiana 70124. The sale price was for three hundred and nineteen thousand dollars ($319,000.00) (Please see Louisiana Residential Agreement to Buy or Sell, attached hereto as Exhibit "D"). The Agreement to Buy or Sell was amended on February 6, 2009 (Please see Amendment to Purchase Agreement dated February 4, 2009, attached hereto as Exhibit "E"). The Amendment stated that the purchase of 261 W. Robert E. Lee would be in accordance with the February 4, 2009 purchase agreement "and the closing shall take place within 30 days of the sale of either of the 2 properties" owned by the Purchaser. According to the Amendment to Purchase Agreement dated February 4, 2009, "Should Purchaser not sell either of the foregoing two homes by February 27, 2009, then Purchaser and Seller shall execute a lease agreement to occupy the property for a monthly rental of $1,800.00. The purchase deposit shall convert to a rental deposit. Purchaser shall retain the right to purchase the property, as per the purchase agreement, through May 30, 2009, by providing 15 days written notice to Seller."

On February 27, 2009, Mr. and Mrs. Carter, as sellers, and the Purchaser entered into a Residential Lease for 261 W. Robert E. Lee, New Orleans, Louisiana 70124. The term of the lease was from March 1, 2009 to the last calendar day of May, 2009 with the monthly rent being one thousand and eight hundred dollars ($1,800.00). The parties also executed an Amendment to Lease and an Amendment to Agreement to Buy or Sell. The Amendment to the February 27, 2009 lease stated, "In the event that the lessee has not sold either of her two properties by May 30[th] 2009 as referenced in the 'agreement to purchase' and 'amendment to the agreement to purchase' which are dated 02/04/09; then it is mutually agreed by both the lessors and lessee that the monthly rental amount for each month's rent beyond May 30[th] will be at a monthly net rental of $2,200.00 (Two thousand and two hundred dollars) due from the lessee to the lessors and all other terms as outlined in the lease shall remain the same." The Amendment to Agreement to Buy or Sell changed the Act of Sale date from February 27, 2009 to May 30, 2009. (Please see Amendment to Agreement to Buy or Sell, Amendment to lease dated February 27th 2009 and

CARTER000002

Residential Lease, attached hereto as Exhibit "F").

On April 10, 2009, as a result of the discovery of Chinese drywall, Mr. and Mrs. Carter, as sellers, and the Purchaser entered into a Cancellation of Agreement to Purchase. The reason for cancellation selected on the Cancellation of Agreement to Purchase was "12. Other Purchasers discovery of 'Chinese drywall'". (Please see attached Cancellation of Agreement to Purchase, attached hereto as Exhibit "G"). As a result of the Chinese drywall, Mr. and Mrs. Carter lost the sale for three hundred and nineteen thousand dollars ($319,000.00). They also lost rent which would have increased to $2,200.00 (Two thousand and two hundred dollars) "[i]n the event that the lessee ha[d] not sold either of her two properties by May 30th 2009…" From April 10, 2009 to October 14, 2010, nobody lived at 261 W. Robert E. Lee, New Orleans, Louisiana 70124.

From February 22, 2010 through April 26, 2010 remediation work was performed on 261 W. Robert E. Lee, New Orleans, Louisiana 70124. On June 30, 2010, Mr. and Mrs. Carter relisted 261 W. Robert E. Lee, New Orleans, Louisiana 70124 for sale for three hundred and twenty-five thousand dollars ($325,000.00) (Please see Listing Agreement, attached hereto as Exhibit "H"). On September 1, 2016, Mr. and Mrs. Carter, as sellers, entered into a Louisiana Residential Agreement to Buy or Sell 261 W. Robert E. Lee, New Orleans, Louisiana 70124. The sale price was for three hundred thousand dollars ($300,000.00). Page three of the Property Disclosure Document for Residential Real Estate stated, "House Had Chinese Drywall – Entire 1st Floor & Master Bedroom Ceiling Gutted. 'Air Quality Tests Comparable To Homes That Did Not Have Chinese Drywall.' Report Of Barclay Assessment Services Dated 6/30/10 Available" (Please see Louisiana Residential Agreement to Buy or Sell and Property Disclosure Document For Residential Real Estate, attached hereto as Exhibit "I"). On October 14, 2010, a Cash Sale for 261 W. Robert E. Lee, New Orleans, Louisiana 70124 was executed. The sale price was for three hundred thousand dollars ($300,000.00) (Please see October 14, 2010 Cash Sale, attached hereto as Exhibit "J"). This sale was for nineteen thousand dollars ($19,000.00) less than the original sale that would have been executed in 2009 had the residential building not had defective Chinese Drywall.

## II.    SETTLEMENT AGREEMENT AND PRE-TRIAL ORDER NO. 1 (B)

On December 11, 2012, a *Third Amended Settlement Agreement Regarding Claims Against The Knauf Defendants in MDL NO. 2047* (hereinafter "the Knauf Class Settlement") was filed in the case titled, *In Re: Chinese Manufactured Drywall Products Liability Litigation*. (R. Doc. 16407-3). On February 7, 2013, the Court approved the Knauf Class Settlement.

Under 1.4 of the Knauf Class Settlement,

"**Already Remediated Properties Protocol.** 'Already Remediated Properties Protocol' shall mean the protocol attached as Exhibit A for resolving Remediation Claims of Owners who have self-remediated Affected Properties or have entered into contracts to self-remediate Affected Properties prior to the Execution Date" (December 20, 2011).

Under section III. A. of the *Already Remediated Properties Protocol,*

3

"...the Owner shall submit to the Settlement Administrator the following documentation concerning remediation of the Affected Property, **to the extent that such documentation is in the possession, custody or control of the Owner or any person or entity hired or otherwise used by the Owner in connection with the remediation of the Affected Property, including, but not limited to, builders, contractors, and subcontractors**:

1.    Photographs and/or video images of all drywall removed from the Affected Property during remediation.  For those Owners with claims pending in *In re: Chinese Drywall Products Liability Litigation*, MDL No. 2047 (the "MDL"), **where available**, such submission shall be in the form required by MDL Pretrial Order 1B..."... (emphasis added).

Mr. and Mrs. Carter have complied with the terms of the Knauf Class Settlement.  The documentation submitted by the Carters supports the Carters ARH claim in the amount of $131,635.96.  (Please see documentation submitted to Knauf, attached hereto as Exhibit K *in globo*).

Knauf's position is that Mr. and Mrs. Carter's ARH claim should be denied for the alleged non-compliance with the preservation PTOs.  In support of Knauf's position, Knauf cites, section IV. D. 4. of the *Already Remediated Properties Protocol* which provides,

"The Special Master and the Court will take into consideration, in determining whether to allow a claim or the amount of the claim, whether the Owner has complied with MDL Pretrial Order 1B (if the claim is pending in the MDL)...Subject to review by the Special Master or the Court, the failure to preserve evidence as required by law will result in disallowance or reduction in the amount of the claim **if the failure has been prejudicial to a determination of the claim.**" (emphasis added).

In support of Knauf's position, Knauf also cites a portion of section A of Pre-Trial Order No. 1 (B), which states,

"In addition to taking these samples, the Parties shall photograph the backside of each Chinese drywall board immediately after it is removed on-site, and, document on a floor plan, building diagram, or other similar form of documentation, the location of each full or partial Chinese drywall board removed from the property and its photograph.  Photographs of the wall sections should be taken so that any markings on the backside of the drywall sections are more clearly visible in the photographs."

### III.    MR. AND MRS. CARTER'S ALLEGED FAILURE TO PRESERVE EVIDENCE IS NOT PREJUDICIAL TO A DETERMINATION OF THE CLAIM

In the event that Special Master Balhoff agrees with Knauf's position that Mr. and Mrs. Carter failed to preserve evidence, that failure is not prejudicial to a determination of the Carter's

CARTER000004

claim. Mr. and Mrs. Carter submitted Knauf with documentation in support of their ARH claim (Please see documentation submitted to Knauf, attached hereto as Exhibit K *in globo*). The following documentation, which is part of Exhibit K *in globo*, supports that Knauf is the Chinese Drywall manufacturer of all drywall found in the Affected Property located at 261 W. Robert E. Lee, New Orleans, Louisiana 70124: (1) Attachment 3 to the July 18, 2016 10:06 AM email has pictures of Knauf insulation and has pictures of Knauf drywall; (2) page two of Attachment 3 to the July 18, 2016 10:07 AM email shows that Knauf was the Drywall Manufacturer, the markings on the drywall were Knauf Tianjin and that the location was throughout the entire home; (3) page six of Attachment 3 to the July 18, 2016 10:07 AM email shows that the drywall was in all of downstairs and upstairs in the master bedroom only; (4) page thirty-nine of Attachment 3 to the July 18, 2016 10:07 AM has pictures of Knauf drywall; (5) page forty of Attachment 3 to the July 18, 2016 10:07 AM email has a picture of Knauf insulation and a picture of Knauf drywall; (6) page three of Attachment 4 to the July 18, 2016 10:07 AM states "Ms. Carter reported that she recently replaced her drywall, because it was reportedly manufactured in China by Knauf."; (7) Attachment 3 to the July 18, 2016 10:11 AM email states that Knauf was the manufacturer of all drywall found in the Affected Property; (8) Attachment 4 to the July 18, 2016 10:11 AM email has pictures of Knauf insulation and has pictures of Knauf drywall; (9) page eleven of Attachment 1 to the November 8, 2016 1:29 PM email states, "House Had Chinese Drywall – Entire 1st Floor & Master Bedroom Ceiling Gutted. 'Air Quality Tests Comparable To Homes That Did Not Have Chinese Drywall.' Report Of Barclay Assessment Services Dated 6/30/10 Available"; and (10) Attachment 1 to the November 23, 2016 1:37 PM email has pictures of Knauf insulation and has pictures of Knauf drywall.

Additionally, the new submission of Exhibits B and C clearly show the following which further supports Mr. and Mrs. Carter's ARH claim and further makes any alleged failure to preserve evidence not prejudicial to a determination of their claim: (1) that in May of 2006, Mr. Carter purchased in bulk all sheetrock used to renovate the Carter's home from Interior Exterior Building Supply, 730 S. Scott Street, New Orleans, LA 70119. Specifically, Mr. Carter purchased fourteen (14) 4' X 12' X ½" HIGH STR CEILING BOARD 48SF; fifty (50) 4' X 12' X ½" REGULAR SHEETROCK 48SF/PC; and six (6) 4' X 8' X ½" XP GYPSUM BOARD 32SF/PC; (2) that the above listed sheetrock that Mr. Carter purchased was manufactured by Knauf Plasterboard (Tianjin) Co.; (3) that Mr. Carter only purchased sheetrock from Interior Exterior Building Supply the one time in May of 2006, and the sheetrock purchased by him was only manufactured by Knauf Plasterboard (Tianjin) Co.; (4) that Mr. Carter did not buy or receive sheetrock from anywhere or anyone else; (5) that Mr. Carter is the only person who bought sheetrock that was used in the residential building; (6) that between May of 2006 through June of 2006, Mr. and Mrs. Carter and Mr. Carter's workers hung the sheetrock Mr. Carter purchased from Interior Exterior Building Supply in the residential building; (7) that Mr. and Mrs. Carter and Mr. Carter's workers hung sheetrock in the entire first floor and master bedroom ceiling; and (8) that all sheetrock hung in the residential building was manufactured by Knauf Plasterboard (Tianjin) Co.

Further, Mr. and Mrs. Carter hereby submit additional photographs, which they recently found, to this position paper which show that the drywall in the residential building was manufactured by Knauf (Please see photographs of Knauf drywall, attached hereto as Exhibit

CARTER000005

"L").[2]   Additionally, in an attempt to get further proof that Knauf is the Chinese Drywall manufacturer of all drywall found in the Affected Property located at 261 W. Robert E. Lee, New Orleans, Louisiana 70124, counsel for Mr. and Mrs. Carter requested INEX discovery responses including any INEX depositions from Plaintiffs Liaison Counsel, Herman, Herman & Katz, LLP. Counsel for Mr. and Mrs. Carter is scheduled to meet with Mr. Leonard Davis of Herman, Herman & Katz, LLP on Monday, February 13, 2017 and respectfully requests that the Carters be allowed to supplement this mediation paper with any further evidence found from the INEX discovery which further supports Mr. and Mrs. Carter's ARH claim.

## IV.   **DAMAGES**

Under 4.3.7.1 of the Knauf Class Settlement,

"Owners who have self-remediated Affected Properties or have entered into contracts to self-remediate Affected Properties prior to the Execution Date shall be entitled to benefits to resolve their Remediation Claims as provided in the Already Remediated Properties Protocol. Such benefits shall be paid from the Remediation Fund. In addition, such Owners are entitled to seek benefits from the Other Loss Fund."

The Owner Disclosure Affidavit for Mr. and Mrs. Carter's claim had a total claim in the amount of $131,635.96.  This included the following:  (1) Storage expenses paid: $3,895.00; (2) Moving expenses paid:  $2,000.00; (3) Insurance/Taxes/Utility expenses paid:  $8,936.37; (4) Lost Rent/Lost Sales/Alternative Living Expenses paid:  $51,400.00 (Lost Rent: $1,800 X 18 months) (Lost Sales $319,000 - $300,000); and (5) Total costs of construction paid: $65,404.59.  The total costs of construction paid included the sheetrock labor in the amount of $52,500.00.  To show the reasonableness of the sheetrock labor, Mr. and Mrs. Carter got a construction proposal done by Iconic Construction Inc. NOLA, for what it would cost for Iconic Construction, Inc. NOLA to mitigate the Chinese Drywall at the residential building.  This Construction Proposal had a grand total of $49,967.20 (Please see attached Iconic Construction, Inc., NOLA Construction Proposal, attached hereto as Exhibit "M").

Respectfully submitted:
/s/ Joseph M . Bruno
Joseph M. Bruno
Bruno & Bruno, LLP
855 Baronne Street
New Orleans, Louisiana  70113
Tel:  (504) 525-1335
Fax: (504) 561-6775
jbruno@brunobrunolaw.com
Attorney for Mr. and Mrs. Carter

cc:  Danny Dysart (ddysart@bakerdonelson.com)

---

[2] Exhibit "B" and Exhibit "L" were submitted to counsel for Knauf on February 7, 2017.

CARTER000006

STAMP COPY

Crescent Title, LLC
7820 Maple Street
New Orleans, LA 70118
FILE #52964

**CASH SALE**

Sale of Property

by:

Henry St. Paul Provosty

to:

Daniel T. Carter

*United States of America*
*State of Louisiana*
*Parish of Orleans*

*BE IT KNOWN* That on this 30th day of December, 2005

*BEFORE ME* the undersigned notary public, duly commissioned and qualified, in and for the Parish of Orleans and in the presence of the witnesses hereinafter named and undersigned,

*Personally Came and Appeared,*

Henry St. Paul Provosty (SS#xxx-xx-7622) a person of the full age of majority and resident of the Parish of Orleans, State of Louisiana who declared before me, Notary, that he has been married but once and then to Shelley Hammond from whom he was divorced and that he has not since remarried.

**MAILING ADDRESS: 650 Poydras Street, Suite 2700, New Orleans, Louisiana 70130**

Who declare that they do by these presents, grant, bargain, sell, convey, transfer, assign, setover, abandon and deliver, with all legal warranties as to title only, but with full substitution and subrogation in and to all the rights and actions of warranty which they have or may have against all preceding owners and vendors, unto,

Daniel T. Carter (SS#xxx-xx-2760) A person of the full age of majority and resident of the Parish of Jefferson, State of Louisiana, who declared before me, Notary, that he is not now, nor has he ever been married.

**MAILING ADDRESS: 4105 Catherine Avenue, Metairie, Louisiana 70001**

here present, accepting and purchasing for themselves, their heirs and assigns, and acknowledging due delivery and possession thereof, all and singular the following described property, to-wit:

*"Description of Property"*

ALL THAT CERTAIN LOT OF GROUND, together with all the buildings and improvements thereon, and all the rights, ways, privileges, servitudes, appurtenances and advantages thereunto belonging or in anywise appertaining, situated in the Seventh District of the City of New Orleans, State of Louisiana, within the area bounded by West Robert E. Lee Boulevard (formerly Lee Avenue), Regent Street (formerly Mercer Street), Lake Avenue, and the boundary line of Hazeur Tract, which lot is designated as L-1, on plan of resubdivision of Original Lots L and K, West End Park Gilbert, Kelly & Couturie, Inc., Surveying and Engineering, dated February 27, 1986, and approved by the City Planning Commission of the City of New Orleans on July 7, 1986, registered at COB 804, folio 536 and to said lot is located and measures as follows:

Lot L-1 commences 547 feet 8 inches from the intersection of Regent Street and West Robert E. Lee Boulevard, and measures thence 40 feet 6 inches front on West Robert E. Lee Blvd., same



EXHIBIT

"A"

CARTER000007

with in the rear, by a depth of 120 feet between equal and parallel lines. All as more fully shown on a survey by Gilbert, Kelly and Couturie, Inc., dated May 2, 1997.

Being the same property acquired by vendor herein by act dated June 25, 2001, registered in CIN 261359, Orleans Parish, State of Louisiana.

PURCHASER (s) herein declared that all future notices of ad valorem tax bills and special assessments for the above described property presently for the tax year of 2006 bearing Tax Assessment No. 7-16-5-252-10 are to be forward to:

Daniel T. Carter
4105 Catherine Avenue, Metairie, Louisiana 70001

THIS ACT IS MADE, EXECUTED AND ACCEPTED SUBJECT TO THE FOLLOWING:

1. This act is made and accepted subject to any and all restrictions, conditions and/or servitudes that may appear in the chain of title.

2. Any and all restrictions, overlaps, overhangs, servitudes and/or easements , rights of ways and outstanding rights of record which might be shown on a current survey of the property.

THE PARTIES HERETO TAKE COGNIZANCE THAT NO SURVEY ON THE HEREIN DESCRIBED PROPERTY IN CONNECTION WITH THE ACT OF SALE HAS BEEN MADE NOR HAS ONE BEEN PRODUCED OR ATTACHED AND THE PARTIES DO HEREBY RELIEVE AND RELEASE ME, NOTARY, FROM ANY AND ALL LIABILITY, RESPONSIBILITY OR DAMAGE INCLUDING COURT COSTS AND ATTORNEYS FEES IN CONNECTION THEREWITH.

*See WAIVER OF WARRANTY and REDHIBITION RIGHTS ADDENDUM attached hereto and made a part hereof.*

To have and to hold the above described property unto the said purchaser(s) themselves heirs and assigns forever.

This sale is made and accepted for and in consideration of the price and sum of One Hundred Thirty Thousand dollars and Zero cents, $130,000.00 which the said purchaser(s) have well and truly paid, in ready and current money to the said vendors who hereby acknowledge the receipt thereof and grant full acquittance and discharge therefore.

All State and City taxes up to and including the taxes due and eligible for the current tax year are paid as per a research of the tax rolls for the year 2005. 2005 taxes have been prorated to the date of this act of sale. Payment for all future taxes is assumed by purchaser herein.

By reference to the certificate of the Registrar of Conveyances and Recorder of Mortgages in and for the Parish of Orleans annexed hereto, it does not appear that said property has been heretofore alienated by the Vendor.

The parties to this act are aware of the fact that the mortgage, conveyance and Paving Ordinance certificates herein referred to are open, being not yet dated or signed, and relieve and release me, Notary, from all responsibility and liability in connection therewith.



## WAIVER of WARRANTY and REDHIBITION RIGHTS ADDENDUM

IN REFERENCE to the Agreement to Purchase and Sell the real property commonly referred to us: 261 W Robert E. Lee Blvd. L-1, New Orleans, LA 70124 dated 11/1/2005 between Henry St. Paul Provosty ("SELLER") and Daniel T. Carter ("PURCHASER"), the undersigned parties hereby agree as follows:

Providing that Purchaser's inspections, as per the Property Condition/Inspection section on the agreement to purchase and sell referenced above, are satisfactory to Purchaser, Purchaser hereby agrees that THE FOLLOWING STATEMENT WILL BE MADE A PART OF THE ACT OF SALE AND SHALL NOT GO INTO EFFECT UNTIL THE ACT OF SALE.

It is expressly agreed that the immovable property herein conveyed and all improvements and component parts, plumbing, electrical systems, mechanical equipment, heating and air conditioning systems, built-in appliances, and all other items located hereon are conveyed by Seller and accepted by Purchaser "AS IS, WHERE IS," without any warranties of any land whatsoever, even as to the metes and bounds, zoning, operation, or suitability of the property for the use intended by the Purchaser, without regard to the presence of apparent or hidden defects and with the Purchaser's full and complete waiver of any and all rights for the return of all or any part of the purchase price by reason of any such defects.

Purchaser acknowledges and declares that neither the Seller nor any party, whomsoever, acting or purporting to act in any capacity whatsoever on behalf of the Seller has made any direct, indirect, explicit or implicit statement, representation or declaration, whether by written or oral statement or otherwise, and upon which the Purchaser has relied, concerning the existence or non-existence of any quality, characteristic or condition of the property herein conveyed. Purchaser has had full, complete and unlimited access to the property herein conveyed for all tests and inspections which Purchaser, in Purchaser's sole discretion, deems sufficiently diligent for the protection of Purchaser's interests.

Purchaser expressly waives the warranty of fitness and the warranty against redhibitory vices and defects, whether apparent or latent, imposed by Louisiana Civil Code Articles 2520 through 2548, inclusive, and any other applicable state or federal law and the jurisprudence thereunder.

Purchaser also waives any rights Purchaser may have in redhibition to a return of the purchase price or to a reduction of the purchase price paid pursuant to Louisiana Civil Code Articles 2520 to 2548, inclusive, in connection with the property hereby conveyed to Purchaser by Seller. By Purchaser's signature, Purchaser expressly acknowledges all such waivers and Purchaser's exercise of Purchaser's right to waive warranty pursuant to Louisiana Civil Code Article 2520 and 2548, inclusive.

The herein agreement, upon its execution by both Purchaser and Seller, is herewith made an integral part of the aforementioned Agreement to Purchase and Sell.

PURCHASER                                          SELLER

_____                    _____

PURCHASER                                          SELLER

_____                    _____

PGR-415 (R6/04)

*Thus Done and Passed,* in my office in New Orleans, Louisiana in the presence of the competent witnesses, who hereunto sign their names with the said appearers, and me, Notary, after reading the whole.

WITNESSES:

Signature
PRINT     Tori Landry

Signature
PRINT     JOAN MELTON

SELLER:

Henry H Provosty

PURCHASER:

Daniel T. Carter

Cynthia J. Hebert

NOTARY ID # 12342

CARTER000010



**INTERIOR EXTERIOR**
BUILDING SUPPLY
LIMITED PARTNERSHIP
504-488-1998

| NEW ORLEANS | • | MANDEVILLE |
| BATON ROUGE | • | BIRMINGHAM |
| MOBILE • GULFPORT • HOUSTON |
| FOLEY • LAFAYETTE • LONGVIEW |
| TUSCALOOSA | • | SHREVEPORT |
| LAKE CHARLES • MONTGOMERY |
| NICEVILLE | • | HATTIESBURG |
| JACKSON | • | TALLAHASSEE |

# INVOICE

| TAKEN BY | INVOICE DATE | ORDER NO. |
|---|---|---|
| PTL | 05/25/06 | 486841-00 |
| PO DATE | P.O. NO. | PAGE # |
| 05/22/06 | DANIEL CARTER | 1 |

CUST.#:     3000

SHIP TO:  DANIEL CARTER
          261 WEST ROBERT E LEE
          .

REMIT TO:    P.O. BOX 4002
             NEW ORLEANS, LA 70178-4002

CORRESPONDENCE TO:    INTERIOR / EXTERIOR BUILDING SUPPLY
                      P. O. BOX 4002
                      NEW ORLEANS, LA 70178

BILL TO:  CASH SALES N.O. RESIDENTIAL
          730 S SCOTT STREET
          504-484-6613
          NEW ORLEANS, LA 70119

| INSTRUCTIONS | TERMS |
|---|---|
| PTL | NET 1 |
| SHIP POINT | SHIP VIA | SHIPPED |
| NEW ORLEANS BRANCH | CUSTOMER P/U | 05/24/06 |

| LINE NO. | PRODUCT AND DESCRIPTION | QUANTITY ORDERED | QUANTITY B.O. | QTY. SHIPPED | QTY U/M | UNIT PRICE | PRICE U/M | AMOUNT (NET) |
|---|---|---|---|---|---|---|---|---|
| | THERE WILL BE A 20% RESTOCKING CHARGE ON ALL RETURNS 9/07 | | | | | | | |
| | My signature certifies that all material has been checked, inspected and counted in regard to this sales order.  If there are any discrepancies, damages to the material or damage to the property (if material is delivered) it is noted below: | | | | | | | |
| | * | | | | | | | |
| | * | | | | | | | |
| 1 | 41212HSCB | 14 | 0 | 14 | PC | 345.00 | MSF | 231.84 |
| | 4' X 12' X 1/2" HIGH STR CEILING BOARD 48SF | | | | | | | |
| 2 | 41212R | 50 | 0 | 50 | PC | 300.00 | MSF | 720.00 |
| | 4' X 12' X 1/2" REGULAR SHEETROCK 48SF/PC | | | | | | | |
| 3 | 4812XP | 6 | 0 | 6 | PC | 445.00 | MSF | 85.44 |
| | 4' X 8' X 1/2" XP GYPSUM BOARD 32SF/PC | | | | | | | |
| 3 | Lines Total | Qty Shipped Total | | 70 | | | | |

|  |  |
|---|---|
| Total | 1037.28 |
| Taxes | 93.35 |
| Downpayment | 1130.63 |
| Invoice Total | 0.00 |

                                    Cash Discount        0.00  If Paid By 05/25/06

Last Page



ACCOUNTS PAST DUE SUBJECT TO 1 1/2% MONTHLY
SERVICE CHARGE (18% PER ANNUM)

CARTER000011

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 |
| | SECTION "L" |
| | JUDGE FALLON |
| | MAG. WILKINSON |

<u>**AFFIDAVIT**</u>

**STATE OF LOUISIANA**

**PARISH OF** Orleans

BEFORE ME, the undersigned authority personally came and appeared

### DANIEL CARTER

who, after being duly sworn, did depose and state as follows:

1. That my name is Daniel Carter.

2. That in August of 2005, Hurricane Katrina flooded and damaged the property located at 261 W. Robert E. Lee, New Orleans, Louisiana 70124.

3. That on December 30, 2005, I purchased the residential building located at 261 W. Robert E. Lee, New Orleans, Louisiana 70124 ("Residential Building") "AS IS, WHERE IS".

4. That as a result of the damage caused by Hurricane Katrina, in April of 2006, my wife and I started to renovate our home.

5. That in May of 2006, I purchased in bulk all sheetrock used to renovate our home from Interior Exterior Building Supply, 730 S. Scott Street, New Orleans, LA 70119. Specifically, I purchased fourteen (14) 4' X 12' X ½" HIGH STR CEILING BOARD 48SF; fifty (50) 4' X 12' X ½" REGULAR SHEETROCK 48SF/PC; and six (6) 4' X 8' X ½" XP GYPSUM BOARD 32SF/PC (Please see Exhibit "B").

6. That the above listed sheetrock I purchased was manufactured by Knauf Plasterboard (Tianjin) Co.

1



CARTER000012

7.      That I only purchased sheetrock from Interior Exterior Building Supply the one time in May of 2006, and the sheetrock purchased by me was only manufactured by Knauf Plasterboard (Tianjin) Co.

8.      That I did not buy or receive sheetrock from anywhere or anyone else.

9.      That I was the only person who purchased and received sheetrock that was used in the residential building.

10.      That between May of 2006 through June of 2006, my wife and I and my workers hung the sheetrock I purchased from Interior Exterior Building Supply in the residential building. Specifically, we hung sheetrock in the entire first floor and master bedroom ceiling.

11.      That all sheetrock hung in the residential building was manufactured by Knauf Plasterboard (Tianjin) Co.

12.      That in 2010, when my workers and I performed the remediation work on 261 W. Robert E. Lee, New Orleans, Louisiana 70124, we did not take a picture of the backside of each Chinese Drywall board removed from the residential building. However, pictures of the backside of some Chinese Drywall boards removed have been taken and have been provided to Knauf.

13.      That all information contained in the Mediation Position Paper is true and correct to the best of my knowledge, information and belief.

14.      That all supporting documentation is true and accurate to the best of my knowledge, information and belief.

THUS SWORN TO AND SUBSCRIBED in the presence of the undersigned and competent witnesses, the 7th day of February, 2017, at New Orleans, Louisiana.

_____
DANIEL CARTER

WITNESSES:

_____
Osmery Batser

_____
Amy Devillier

_____
NOTARY PUBLIC

Donald D. Reichert, Jr.
Notary Public # 136750
Lifetime Commission

2

CARTER000013

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 |
| | SECTION "L" |
| | JUDGE FALLON |
| | MAG. WILKINSON |

## AFFIDAVIT

STATE OF LOUISIANA

PARISH OF  _Orleans_

BEFORE ME, the undersigned authority personally came and appeared

### AMY CARTER

who, after being duly sworn, did depose and state as follows:

1.      That my name is Amy Carter.

2.      That in August of 2005, Hurricane Katrina flooded and damaged the property located at 261 W. Robert E. Lee, New Orleans, Louisiana 70124.

3.      That on December 30, 2005, my husband purchased the residential building located at 261 W. Robert E. Lee, New Orleans, Louisiana 70124 ("Residential Building") "AS IS, WHERE IS".

4.      That as a result of the damage caused by Hurricane Katrina, in April of 2006, my husband and I started to renovate our home.

5.      That in May of 2006, my husband purchased in bulk all sheetrock used to renovate our home from Interior Exterior Building Supply, 730 S. Scott Street, New Orleans, LA 70119. Specifically, he purchased fourteen (14) 4' X 12' X ½" HIGH STR CEILING BOARD 48SF; fifty (50) 4' X 12' X ½" REGULAR SHEETROCK 48SF/PC; and six (6) 4' X 8' X ½" XP GYPSUM BOARD 32SF/PC (Please see Exhibit "B").

6.      That the above listed sheetrock my husband purchased was manufactured by Knauf Plasterboard (Tianjin) Co.

1

7.    That my husband only purchased sheetrock from Interior Exterior Building Supply the one time in May of 2006, and the sheetrock purchased by my husband was only manufactured by Knauf Plasterboard (Tianjin) Co.

8.    That my husband did not buy or receive sheetrock from anywhere or anyone else.

9.    That my husband was the only person who purchased and received sheetrock that was used in the residential building.

10.    That between May of 2006 through June of 2006, my husband and I and his workers hung the sheetrock my husband purchased from Interior Exterior Building Supply in the residential building.  Specifically, we hung sheetrock in the entire first floor and master bedroom ceiling.

11.    That all sheetrock hung in the residential building was manufactured by Knauf Plasterboard (Tianjin) Co.

12.    That in 2010, when my husband and his workers performed the remediation work on 261 W. Robert E. Lee, New Orleans, Louisiana 70124, they did not take a picture of the backside of each Chinese Drywall board removed from the residential building.  However, pictures of the backside of some Chinese Drywall boards removed have been taken and have been provided to Knauf.

13.    That all information contained in the Mediation Position Paper is true and correct to the best of my knowledge, information and belief.

14.    That all supporting documentation is true and accurate to the best of my knowledge, information and belief.

THUS SWORN TO AND SUBSCRIBED in the presence of the undersigned and competent witnesses, the 7th day of February, 2017, at _New Orleans_, Louisiana.

_____
AMY CARTER

WITNESSES:

_____            _____
Osmery Baprez                                    Amy Devillier

_____
NOTARY PUBLIC

Donald D. Reichert, Jr.
Notary Public # 136750
Lifetime Commission

2



**Prudential**

**GARDNER, REALTORS®**

GBS Properties, L.L.C. dba Prudential Gardner, Realtors®
ADMINISTRATIVE OFFICES: 3332 N. Woodlawn Ave., Metairie, LA 70006

FOR EXCLUSIVE USE OF
PRUDENTIAL GARDNER, REALTORS
AND THEIR AFFILIATED LICENSEES.
PRUDENTIAL GARDNER, REALTORS
ASSUMES NO RESPONSIBILITY FOR ANY
UNAUTHORIZED USE OF THIS FORM

| Prudential Gardner Realtor's | | Prudential Gardner Realtor's |
|---|---|---|
| Listing Firm Chris Smith | | Selling Firm Chris Smith |
| Seller's Designated Agent: 231-2004    891-6400    207-0524 | ☑ Dual Agent | Buyer's Designated Agent 504-231-2004   504-891-6400   504-207-0524 |
| Phone Number    Office    Fax CMSmith@PrudentialGardner.com | | Phone Number    Office    Fax CMSmith@PrudentialGardner.com |
| Email Address | | Email Address |

Delivered by Designated Agent to _____ Day _____ Date _____ Time _____ AM/PM

Comments _Chris M. ____

Received by Designated Listing Agent _____ Day _____ Date _Wednesday 02/04/09_ Time _7:55_ AM/**PM**

1
2
3
## LOUISIANA RESIDENTIAL AGREEMENT TO BUY OR SELL

Date: February 4th. 2009

4
5  **PROPERTY DESCRIPTION:** I/We offer and agree to Buy/Sell the property at:
6  (Municipal Address)   261 W. Robert E. Lee Blvd.
7  City  New Orleans                    ; Zip 70124       ; Parish  Orleans              ; State La
8  (Legal Description) West End, Lot 1
9
10  on lands and grounds measuring approximately 40. 6' x 120'
11  or as per record title; including all buildings, structures, component parts, and all installed, built-in, permanently
12  attached improvements, together with all fences, security systems, all installed speakers or sound systems, all
13  landscaping, all outside TV antennas, all satellite dishes, all installed and/or built-in appliances, all ceiling fans, all
14  air conditioning or heating systems including window units, all bathroom mirrors, all window coverings, blinds and
15  associated hardware, all shutters, all flooring, all carpeting, all cabinet tops, all cabinet knobs or handles, all
16  doors, all door knobs or handles, all windows, all roofing, all electrical systems, and all installed lighting fixtures,
17  chandeliers and associated hardware, other constructions permanently attached to the ground. If owned by the
18  SELLER prior to date of this Agreement, standing timber, unharvested crops and ungathered fruits of trees on the
19  property shall be conveyed to the BUYER. The following movable items here remain with the property, but are not
20  to be considered as part of the Sale Price and have no value: Refrigerator, range/oven, dishwasher, wine cooler,
21  washer & dryer, microwave oven, ALL window coverings, ALL attached light fixtures, (3) wall mounted flat screen
22  televisions, exterior Bar B Q grill, exterior iron patio table and (6) chairs, home security system & all equipment.
23  All items listed herein are included in the property sold no matter how they are attached or installed, provided that
24  any or all of these items are in place at the time of signing of this Agreement to Buy or Sell (the
25  "Agreement),unless otherwise stated herein. (All of the above contained in lines 5 through 22 are collectively
26  referred to herein as the "Property.") The following items are excluded from the Property sold:
27  Excluding master bedroom curtains.
28
29
30
31  **MINERAL RIGHTS:** If SELLER transfers any mineral rights, they are to be transferred without warranty and the
32  SELLER shall waive any right to use the surface for any such reserved mineral activity or use.
33  ☐  zero  % mineral rights owned by SELLER are to be reserved by SELLER.
34
35  **PRICE:** The Property will be sold and purchased subject to title and zoning restrictions, servitudes of record, and
36  law or ordinances affecting the Property for the sum of _____
37  Three hundred and nineteen thousand dollars -------------- Dollars ($ 319,000. 00 ) (the "Sale Price").
38
39  **ACT OF SALE:** The Act of Sale is to be executed before a settlement agent or Notary Public to be chosen by
40  BUYER, on or before February 27th. , 20 09 . At closing, BUYER must provide "good funds" if
41  required by Louisiana statute LA R.S. 22:2092.2 et seq. Any change of the date for execution of the Act of Sale
42  must be mutually agreed upon in writing and signed by SELLER and BUYER. Security deposits and keys are to
43  be transferred to BUYER at Act of Sale.

BUYER'S Initials _CL_  _____                          Page 1 of 6              SELLER'S Initials _____ _____

ABS Rev. 01/01/09

EXHIBIT "D"

PGR-400-LA (R1/09)

261 W. Robert E. Lee Blvd
New Orleans              La      70124
Property address, street, city, state zip

44  **OCCUPANCY:** Occupancy/possession is to be granted at Act of Sale or on:
45  February 28th  2009
46                                                                    at 9:00 am            A.M. /P.M.

47  **CONTINGENCY FOR SALE OF BUYER'S OTHER PROPERTY:** ☐ This sale is contingent on the sale of other
48  property by the BUYER and the attached contingency clause addendum shall apply. ☑ This sale is not
49  contingent upon the sale of other property by the BUYER nor is the loan needed by the BUYER to obtain the Sale
50  Price contingent on the BUYER'S sale of any property.
51

52  ☐ **ALL CASH SALE:** BUYER warrants he has cash readily available to close the sale of this Property.
53

54  ☑ **FINANCED SALE:** This sale is conditioned upon the ability of BUYER to borrow with this Property as security
55  for the loan the sum of $_____ or 95 % of the Sale
56  Price by a mortgage loan or loans at an initial interest rate not to exceed 6.0 % per annum, interest and
57  principal, amortized over a period of not less than 30 years, payable in monthly installments on any other
58  terms as may be acceptable to BUYER provided that these terms do not increase the cost, fees or expenses to
59  SELLER. Fees paid by SELLER that are required by lender, if any, shall not exceed
60  $ zero _____. BUYER agrees to pay discount points not to exceed n/a % of the loan amount.
61  Other financing conditions: _____
62  _____
63  _____
64  _____

65  In the event BUYER is not able to secure financing, SELLER reserves the right to provide all or part of mortgage
66  loan(s) under the terms set forth above. The BUYER acknowledges and warrants that he has available the funds
67  which may be required to complete the sale of the Property including, but not limited to, the deposit, the down
68  payment, closing costs, pre-paid items, and other expenses. BUYER agrees to make good faith application, which
69  includes ordering and paying for an appraisal and credit report if required for loan approval, within 03 calendar
70  days of acceptance of this offer and any counteroffer and written proof from the lender that the application has been
71  made shall be supplied by BUYER to the SELLER. Written commitment by the lender to make loan(s), without
72  contingencies except subject to approval of title and other contingencies normally imposed by lender excluding
73  ordering appraisal and credit report, shall be obtained by BUYER and shall constitute final loan approval. Final
74  loan approval shall be obtained on or prior to * February 20th. 2009 . Any extension of this date shall be in
75  writing and shall be signed by all parties. BUYER authorizes and instructs lender to release to SELLER or
76  SELLER'S Broker or Designated Agent, written verification of the loan application and final loan approval.
77

78  **APPRAISAL:** ☐ This sale is NOT conditioned on appraisal. ☑ This sale IS conditioned on the appraisal of the
79  Property being not less than the Sale Price. If the appraised value of the Property is equal to or greater than the
80  Sale Price, the BUYER shall pay the Sale Price agreed upon prior to the appraisal. If the appraised value is less
81  than the Sale Price, BUYER shall immediately provide written notification to SELLER of appraised value and
82  BUYER'S request for SELLER to reduce the Sale Price. Within three _____ ( 03 ) calendar
83  days after SELLER'S receipt of such written notification of the appraised value, BUYER shall have the option to
84  pay the Sale Price agreed upon prior to the appraisal or to void this Agreement unless SELLER agrees in writing
85  to reduce the Sale Price to the appraised value or all parties agree to a new Sale Price.
86

87  **DEPOSIT:** Upon acceptance of this offer, SELLER and BUYER shall be bound by all terms and conditions of this
88  Agreement, and BUYER or BUYER'S agent will deliver immediately upon notice of acceptance of the offer a
89  deposit (the "Deposit") in the amount of $ 3,000. 00 _____ or _____% of the Sale Price to be
90  paid in the form of:
91  ☐ Cash  $_____
92  ☑ Check $ 3,000. 00 (Three thousand dollars)
93  ☐ Promissory Note $_____
94  The Deposit shall be held by seller's broker
95

96  Failure to deliver the Deposit shall be considered a breach of this Agreement. If the Deposit is held by a Broker, it
97  must be held in accordance with the rules of the Louisiana Real Estate Commission in a federally insured banking
98  or savings and loan institution without responsibility on the part of the Broker in the case of failure or suspension
99  of such institution. In the event the parties fail to execute an Act of Sale by date specified herein, and/or a dispute
100 arises as to ownership of, or entitlement to, the Deposit or funds held in escrow, the Broker shall abide by the
101 Rules and Regulations set forth by the Louisiana Real Estate Commission governing such matters.
102

103 **RETURN OF DEPOSIT:** The Deposit shall be returned to the BUYER and this Agreement declared null and void
104 without demand in consequence of the following events:

BUYER'S Initials _CC_ _____          Page 2 of 6          SELLER'S Initials _____

ABS Rev. 01/01/09
PGR-400-LA (R1/09)



CARTER000017

Property address, street, city, state zip                                    New Orleans        La        70124

105  1) If this Agreement is declared null and void by BUYER during the inspection period as set forth in lines 135
106  through 150 of this Agreement;
107  2) If this Agreement is subject to BUYER'S ability to obtain a loan and the loan is not obtained by the date set
108  forth in lines 68 through 74 of this Agreement but only if the BUYER has made timely application for the loan and
109  made good faith efforts to obtain the loan;
110  3) If the BUYER conditions the Sale Price on an appraisal and the appraisal is less than the Sale Price and the
111  SELLER will not reduce the Sale Price as set forth in lines 78 through 85 of this Agreement;
112  4) If the BUYER does not accept the leases or special assessments as set forth in lines 205 through 208 of this
113  Agreement;
114  5) If the SELLER is unable to timely deliver to the BUYER an approved sewerage and/or water inspection report
115  as set forth in lines 152 through 158.
116

117  **INSPECTION AND DUE DILIGENCE:** BUYER ACKNOWLEDGES THAT THE SALE PRICE OF THE
118  PROPERTY WAS NEGOTIATED BASED UPON THE PROPERTY'S APPARENT CURRENT CONDITION;
119  ACCORDINGLY, SELLER IS NOT OBLIGATED TO MAKE REPAIRS TO THE PROPERTY, INCLUDING
120  REPAIRS REQUIRED BY THE LENDER UNLESS OTHERWISE STATED HEREIN. THE SELLER IS
121  RESPONSIBLE FOR MAINTAINING THE PROPERTY IN SUBSTANTIALLY THE SAME OR BETTER
122  CONDITION AS IT WAS WHEN THE AGREEMENT WAS FULLY EXECUTED.
123

124  BUYER shall have an inspection period of ( 10 ) calendar days, commencing the first day after acceptance of
125  this Agreement wherein, BUYER may, at BUYER'S expense, have any inspections made by experts or others of
126  his choosing. Such inspections may include, but are not limited to, inspections for termites and other wood
127  destroying insects, and/or damage from same, molds, and fungi hazards, and analysis of synthetic stucco,
128  appliances, structures, foundations, roof, heating, cooling, electrical, plumbing systems, utility and sewer
129  availability and condition, out-buildings, square footage, school district, flood zone classifications, current zoning
130  and/or subdivision restrictive covenants and any items addressed in the SELLER's Property Disclosure
131  Document. All testing shall be nondestructive testing. SELLER agrees to provide the utilities for inspections and
132  immediate access. If BUYER is not satisfied with the condition of the Property the BUYER may choose one of the
133  following options within the inspection period:
134

135  **Option 1:** BUYER may elect, in writing, to terminate the Agreement and declare the Agreement null and void; or
136  **Option 2:** BUYER may indicate in writing the deficiencies and desired remedies and SELLER will within seventy
137  two (72) hours respond in writing as to SELLER's willingness to remedy those deficiencies ("SELLER's
138  Response").
139

140  Should SELLER in the SELLER'S Response refuse to remedy any or all of the deficiencies listed by the BUYER,
141  then BUYER shall have seventy-two (72) hours from the date of SELLER's Response or seventy-two (72) hours
142  from the date that SELLER's Response was due, whichever is earlier, to: (a) accept SELLER's Response to
143  BUYER'S written requests or (b) accept the Property in its current condition, or (c) to elect to terminate this
144  Agreement. BUYER's response shall be in writing. Upon BUYER'S failure to respond to the SELLER'S Response
145  by the time specified or BUYER'S electing, in writing, to terminate this Agreement, the Agreement shall be
146  automatically, with no further action required by either party, ipso facto null and void except for return of Deposit
147  to the BUYER. FAILURE TO MAKE INSPECTIONS OR TO GIVE WRITTEN NOTICE OF DEFICIENCIES AND
148  DESIRED REMEDIES TO SELLER (OR SELLER'S DESIGNATED AGENT) AS SET FORTH IN LINES 132
149  THROUGH 138 WITHIN THE INSPECTION PERIOD SHALL BE DEEMED AS ACCEPTANCE BY BUYER OF
150  THE PROPERTY'S CURRENT CONDITION.
151

152  **PRIVATE WATER/SEWERAGE: In the event there is a private water system or private sewerage system on
153  the Property, the SELLER shall provide, at SELLER's expense, approval by the appropriate governmental
154  entity of the private water or sewerage system. An approved sewerage and/or water inspection report will
155  be issued within thirty (30) days prior to the Act of Sale by the appropriate governmental agency. The
156  approved inspection and test on the water and/or sewerage system are to be furnished and paid for by
157  the SELLER. Any private water system or private sewerage system repairs necessary to obtain approved
158  inspection certificate will be paid by SELLER.**
159

160  **HOME SERVICE/WARRANTY:** A home service/warranty plan ☑ will   ☐ will not be purchased at the closing of
161  sale at a cost not to exceed $ 410.00 _____ to be paid by ☐ BUYER, ☑ SELLER, ☐
162  Neither, and ordered by purchaser's agent _____. It is understood that Agent/Broker may receive
163  compensation from the home warranty company. The home service warranty plan does not warrant pre-existing
164  defects and options, and does not supersede or replace any other inspection clause or responsibilities. If neither
165  BUYER nor SELLER accepts the home service warranty plan, they declare that they have been made aware of
166  the existence of such a plan, and further declare that they hold the Broker and Agents harmless from any
167  responsibility or liability due to their rejection of such a plan.

BUYER'S Initials _CC_ _____          Page 3 of 6          SELLER'S Initials _____ _____

ABS Rev. 01/01/09



PGR-400-LA (R1/09)

CARTER000018


·Property address, street, city, state zip        New Orleans      La    70124

168 **WARRANTY OR AS IS CLAUSE WITH WAIVER OF RIGHT OF REDHIBITION:** (CHECK ONE ONLY)

169 ☐ A. **SALE WITH WARRANTIES:** SELLER and BUYER acknowledge that this sale shall be with full SELLER
170 warranties as to any claims or causes of action including but not limited to redhibition pursuant to Louisiana Civil
171 Code Article 2520, *et seq.* and Article 2541, *et seq.*

172 ☑ B. **SALE "AS IS" WITHOUT WARRANTIES:** SELLER and BUYER hereby acknowledge and recognize that the
173 Property being sold and purchased is to be transferred in "as is" condition and further BUYER does hereby waive,
174 relieve and release SELLER from any claims or causes of action for redhibition pursuant to Louisiana Civil Code
175 Article 2520, *et seq.* and Article 2541, *et seq.* or for reduction of Sale Price pursuant to Louisiana Civil Code
176 Article 2541, *et seq.* Additionally, BUYER acknowledges that this sale is made without warranty of fitness for
177 ordinary or particular use pursuant to Louisiana Civil Code Article 2524. SELLER and BUYER agree that this
178 clause shall be made a part of the Act of Sale.

179 ☐ C. **NEW HOME WARRANTIES.** Notwithstanding lines 169 through 178 and irrespective of whether A or B
180 above is checked, if the Property is a new construction, the parties agree that neither A or B will apply but instead
181 the provisions of the New Home Warranty Act (LA R.S. 9:3141 *et seq.*) shall apply. The warranty of condition of
182 this Property is governed by the New Home Warranty Act if a home on the Property is a "home" as defined in the
183 New Home Warranty Act.
184

185 **PRORATIONS/OTHER COSTS:** Real estate taxes, rents, assessments, condominium dues, assessments and/or
186 dues owed to homeowners associations and the like for the current year are to be prorated through the date of
187 the Act of Sale. Act of Sale costs, title insurance and other costs required to obtain financing shall be paid by
188 BUYER, unless otherwise stated herein. All necessary tax, mortgage, conveyance and release certificates or
189 cancellations and SELLER closing fees, if any, shall be paid by SELLER. SELLER shall pay all previous years'
190 taxes, assessments, condominium dues, assessments and/or dues owed to homeowners associations and the
191 like. All special assessments bearing against the Property prior to Act of Sale, other than those to be assumed by
192 written agreement as of the date of the Act of Sale are to be paid by SELLER.
193

194 **MERCHANTABLE TITLE/CURATIVE WORK:** SELLER shall deliver to BUYER a merchantable title at SELLER's
195 costs (see lines 198 through 203). In the event curative work in connection with the title to the Property is required
196 or is a requirement for obtaining the loan(s) upon which this Agreement is conditioned, the parties agree to and do
197 extend the date for passing the Act of Sale to a date not more than _____fifteen_____ (15 )
198 calendar days from the date of the Act of Sale stated herein. SELLER's title shall be merchantable and free of all
199 liens and encumbrances except those that can be satisfied at Act of Sale. All costs and fees required to make title
200 merchantable shall be paid by SELLER. SELLER shall make good faith efforts to deliver merchantable title.
201 SELLER's inability to deliver merchantable title within the time stipulated herein shall render this Agreement null
202 and void, reserving unto BUYER the right to demand the return of the Deposit and to recover from SELLER actual
203 costs incurred in processing of sale as well as legal fees incurred by BUYER.
204

205 **LEASES/SPECIAL ASSESSMENTS:** The sale is conditioned upon BUYER'S receipt of a copy of all written
206 leases, excluding mineral leases, and unpaid special assessments from SELLER within five (5) calendar days of
207 acceptance of the Agreement. Special assessments shall mean an assessment levied on Property to pay the cost
208 of local improvements.
209

210 **FINAL WALK THROUGH:** BUYER shall have the right to re-inspect the Property within five (5) days prior to the
211 Act of Sale, or occupancy, whichever will occur first in order to determine if the Property is in the same or better
212 condition as it was at the initial inspection(s) and to insure all agreed upon repairs have been completed. SELLER
213 agrees to provide utilities for the final walk through and immediate access to the Property.
214

215 **DEFAULT OF AGREEMENT BY SELLER:** In the event of any other default of this Agreement by SELLER except
216 as set forth in lines 103 through 115 or lines 200 through 203, BUYER shall at BUYER'S option have the right to
217 declare this Agreement null and void with no further demand, or to demand and/or sue for any of the following:
218 1) Termination of this Agreement;
219 2) Specific performance;
220 3) Termination of this Agreement and an amount equal to 10% of the Sale Price as stipulated damages.
221

222 Further, BUYER shall be entitled to the return of the Deposit. The prevailing party to any litigation brought to
223 enforce any provision of this Agreement shall be awarded their attorney fees and costs. The SELLER may also be
224 liable for Broker fees.
225

226 **DEFAULT OF AGREEMENT BY BUYER:** In the event of any other default of this Agreement by BUYER except
227 as set forth in lines 103 through 115, SELLER shall have at SELLER's option the right to declare this Agreement
228 null and void with no further demand, or to demand and sue for any of the following:

BUYER'S Initials _Cl_ _____            Page 4 of 6           SELLER'S Initials

ABS Rev. 01/01/09

PGR-400-LA (R1/09)



CARTER000019

_Property address, street, city, state zip_ New Orleans      La    70124

229  1) Termination of this Agreement;
230  2) Specific performance;
231  3) Termination of this Agreement and an amount equal to 10% of the Sale Price as stipulated damages.
232  Further, SELLER shall be entitled to retain the Deposit. The prevailing party to any litigation brought to enforce
233  any provision of this Agreement shall be awarded their attorney fees and costs. The BUYER may also be liable
234  for Broker fees.
235
236  **MOLD RELATED HAZARDS NOTICE:** An informational pamphlet regarding common mold related hazards that
237  can affect real property is available at the EPA website **http://www.epa.gov/iaq/molds/index.html.** By initialing
238  this page of the Agreement, BUYER acknowledges that the real estate agent has provided BUYER with the EPA
239  website enabling BUYER to obtain information regarding common mold related hazards.
240
241  **OFFENDER NOTIFICATION:** The Louisiana State Police maintains the State Sex Offender and Child Predator
242  Registry through the Louisiana Bureau of Criminal Identification and Information. It is a public access database of
243  the locations of individuals who are required to register pursuant to LA R.S. 15:540 *et seq.* The website for this
244  database is **http://www.lasocpr.lsp.org/socpr/.** Sheriff and police departments serving jurisdictions of 450,000
245  also maintain such information. Inquiries can be made by phone at 1-800-858-0551 or 1-225-925-6100. Send
246  written inquiries to Post Office Box 66614; Box A-6, Baton Rouge, Louisiana 70896.
247
248  **CHOICE OF LAW:** This Agreement shall be governed by and shall be interpreted in accordance with the laws of
249  the State of Louisiana.
250
251  **DEADLINES: TIME IS OF THE ESSENCE,** and all deadlines are final, except where modifications, changes, or
252  extensions are made in writing and signed by all parties to this Agreement. All "calendar days" as used in this
253  Agreement shall end at 12:00 midnight in Louisiana.
254
255  **ADDITIONAL TERMS AND CONDITIONS:**
256  See attached  "Amendment to Purchase Agreement" dated February 4th.  2009
257  _____
258  _____
259  _____
260  _____
261  _____
262  **ROLES OF BROKERS AND DESIGNATED AGENTS:** Broker(s) and Designated Agent(s) have acted only as
263  real estate brokers to bring the parties together and make no warranty to either party for performance or non
264  performance of any part of this Agreement or for any warranty of any nature unless specifically set forth in writing.
265  Broker(s) and Designated Agent(s) make no warranty or other assurances whatsoever concerning Property
266  measurements, square footage, room dimensions, lot size, Property lines or boundaries. Broker(s) and
267  Designated Agent(s) make no representations as to suitability or to a particular use of the Property, and BUYER
268  has or will independently investigate all conditions and characteristics of the Property which are important to
269  BUYER. BUYER is not relying on the Broker(s) nor the Designated Agent(s) to choose a representative to inspect
270  or re-inspect the Property; BUYER understands any representative desired by BUYER may perform this function.
271  In the event Broker/Agent(s) provides names or sources for such advice or assistance, Broker/Agent(s) does not
272  warrant the services of such experts or their products and cannot warrant the condition of Property or interest to
273  be acquired, or guarantee that all defects are disclosed by SELLER(s). Broker/Agent(s) do not investigate the
274  status of permits, zoning, code compliance or restrictive covenants. The Broker(s) and Designated Agent(s)
275  specifically make no warranty whatsoever as to whether or not the Property is situated in or out of the
276  Government's hundred year flood plan or is or would be classified as wetlands by the U.S. Army Corp. of
277  Engineers, or as to the presence of wood destroying insects or damage therefrom. BUYER(s) are to satisfy
278  themselves concerning these issues. Designated Agent shall be an independent contractor for Broker if the
279  conditions as set forth in LA R.S. 37:1446(h) are met.
280
281  **LIST ADDENDA TO BE ATTACHED AND MADE A PART OF THIS AGREEMENT:**
282  ☐ Contingency for Sale of Buyer's Other Property Addendum
283  ☐ Condominium Addendum
284  ☐ FHA Amendatory Clause
285  ☐ _____
286  ☐ _____
287  If any of the pre-printed portions of this Agreement vary or are in conflict with any additional or modified terms on
288  blanks provided in this form or Addendum attached to this Agreement, the additional, modified or Addendum
289  provisions control.

BUYER'S Initials _CL_ _____          Page 5 of 6          SELLER'S Initials _____

ABS Rev. 01/01/09

PGR-400-LA (R1/09)




CARTER000020

261 W. Robert E. Lee Blvd.
Property address, street, city, state zip       New Orleans       La   70124

290 **SINGULAR – PLURAL USE:** Wherever the word BUYER or the word SELLER occurs in this Agreement or is
291 referred to, the same shall be construed as singular or plural, masculine or feminine or neuter, as the case may
292 be.

293

294 **ACCEPTANCE:** Acceptance of this Agreement must be in writing. Notice of this acceptance may be
295 communicated by facsimile transmission. The original of this document shall be delivered to the listing Broker's
296 firm. This Agreement and any supplement addendum or modification relating hereto, including any photocopy,
297 facsimile or electronic transmission thereof, may be executed in two or more counterparts, all of which shall
298 constitute one and the same Agreement.

299

300 **CONTRACT:** This is a legally binding contract when signed by both SELLER and BUYER. READ IT
301 CAREFULLY. If you do not understand the effect of any part of this Agreement seek legal advice before signing
302 this contract or attempting to enforce any obligation or remedy provided herein.

303

304 **ENTIRE AGREEMENT:** This Agreement constitutes the entire Agreement between the parties, and any other
305 agreements not incorporated herein in writing are void and of no force and effect.

306

307 **EXPIRATION OF OFFER:**
308 This offer is binding and irrevocable until Thursday ~ February 5th. 2009 ~ 8:00pm   AM/PM/MIDNIGHT/NOON.

309

310 X _Cathy Love_   2/4/09   X _____
      1940
311 ☒ Buyer's/ ☐ Seller's Signature   Date/Time      ☐ Buyer's/ ☐ Seller's Signature   Date/Time
312 CATHY LOVE
313 ──────────────────────────────      ──────────────────────────────
314 Print Buyer's/Seller's Full Name (First, Middle, Last)   Print Buyer's/Seller's Full Name (First, Middle, Last)
315 ──────────────────────────────      ──────────────────────────────
316 Street Address      Street Address
317 ──────────────────────────────      ──────────────────────────────
318 City, State, Zip      City, State, Zip
319 ──────────────────────────────      ──────────────────────────────
320 Last 4-digits of SSN      Telephone Number.Cell      Last 4-digits of SSN      Telephone Number.Cell
321 ──────────────────────────────      ──────────────────────────────
322 Telephone Number.Home      Telephone Number.Work      Telephone Number.Home      Telephone Number.Work
323 E-Mail Address      E-Mail Address
324 Chris M. Sut          Wednesday   02/04/09 @ 7:55
325 This offer was presented to the Seller/Buyer by      Day/ Date/ Time AM/PM/MIDNIGHT/NOON
326

327 This offer is: ☒ Accepted ☐ Rejected (without counter) ☐ Countered (See Attached/Counter) by:
328
329 X _____   2/5/09   X _Amy Freese Carter_ 2/5/09
                          7:00 pm                              7:00 pm
330 ☐ Buyer's/ ☒ Seller's Signature   Date/Time      ☐ Buyer's/ ☒ Seller's Signature   Date/Time
331 David   CARTER      Amy Jan Freese Carter
332 Print Buyer's/Seller's Full Name (First, Middle, Last)   Print Buyer's/Seller's Full Name (First, Middle, Last)
333 261 W. Robert E. Lee      261 W. Robert G. Lee
334 Street Address      Street Address
335 N.O. LA. 70124      New Orleans, LA 70124
336 City, State, Zip      City, State, Zip
337 ──────────────────────────────      ──────────────────────────────
338 Last 4-digits of SSN      Telephone Number.Cell      Last 4-digits of SSN      Telephone Number.Cell
339 ──────────────────────────────      ──────────────────────────────
340 Telephone Number.Home      Telephone Number.Work      Telephone Number.Home      Telephone Number.Work
341 ──────────────────────────────      ──────────────────────────────
342 E-Mail Address      E-Mail Address
343 ──────────────────────────────      ──────────────────────────────
344 This offer was presented to the Seller/Buyer by
345                          Day/ Date/ Time AM/PM MIDNIGHT/NOON

346 **PROPERTY AND FLOOD INSURANCE:** It is recommended that the BUYER make good faith application for
347 property and flood insurance, if applicable, on the Property as soon as possible after acceptance of this offer.
348 **PROPERTY DISCLOSURE DOCUMENT:**
349 ☑ The SELLER'S completed property disclosure document dated January 18th. 2009 _____ is
350 attached to this offer. The property disclosure agreement is issued pursuant to LA R.S. 9:3196 et seq. and was
351 completed in good faith to the best of the SELLER'S knowledge. This document sets forth the minimum
352 disclosure requirements for sellers of residential real estate as to the condition of the Property. THIS DOCUMENT
353 IS NOT TO BE CONSIDERED A WARRANTY BY THE SELLER, AND IT IS NOT TO BE USED AS A
354 SUBSTITUTE FOR ANY INSPECTIONS OR WARRANTIES THAT THE BUYER MAY OBTAIN. Nothing in the
355 document precludes the rights or duties of the BUYER to inspect the physical condition of the Property. The
356 property disclosure document is not a part of this Agreement.

357 ☐ The SELLER'S completed property disclosure document is **not** attached to this offer.

ABS Rev. 01/01/09                    Page 6 of 6

PGR-400-LA (11/09)



**WAIVER of WARRANTY and REDHIBITION RIGHTS ADDENDUM**

IN REFERENCE to the Agreement to Purchase and Sell the real property commonly

referred to as: _____261 W. Robert E. Lee Blvd., New Orleans, LA 70124_____,

dated _____ between _____ (SELLER") and

_____ ("PURCHASER"), the undersigned parties hereby

agree as follows:

Providing that Purchaser's inspections, as per the Property Condition/Inspection section on the agreement to purchase and sell referenced above, are satisfactory to Purchaser, Purchaser hereby agrees that THE FOLLOWING STATEMENT WILL BE MADE A PART OF THE ACT OF SALE AND SHALL NOT GO INTO EFFECT UNTIL THE ACT OF SALE.

It is expressly agreed that the immovable property herein conveyed and all improvements and component parts, plumbing, electrical systems, mechanical equipment, heating and air conditioning systems, built-in appliances, and all other items located hereon are conveyed by Seller and accepted by Purchaser "AS IS, WHERE IS," without any warranties of any kind whatsoever, even as to the metes and bounds, zoning, operation, or suitability of the property for the use intended by the Purchaser, without regard to the presence of apparent or hidden defects and with the Purchaser's full and complete waiver of any and all rights for the return of all or any part of the purchase price by reason of any such defects.

Purchaser acknowledges and declares that neither the Seller nor any party, whomsoever, acting or purporting to act in any capacity whatsoever on behalf of the Seller has made any direct, indirect, explicit or implicit statement, representation or declaration, whether by written or oral statement or otherwise, and upon which the Purchaser has relied, concerning the existence or non-existence of any quality, characteristic or condition of the property herein conveyed. Purchaser has had full, complete and unlimited access to the property herein conveyed for all tests and inspections which Purchaser, in Purchaser's sole discretion, deems sufficiently diligent for the protection of Purchaser's interests.

Purchaser expressly waives the warranty of fitness and the warranty against redhibitory vices and defects, whether apparent or latent, imposed by Louisiana Civil Code Articles 2520 through 2548, inclusive, and any other applicable state or federal law and the jurisprudence thereunder.

Purchaser also waives any rights Purchaser may have in redhibition to a return of the purchase price or to a reduction of the purchase price paid pursuant to Louisiana Civil Code Articles 2520 to 2548, inclusive, in connection with the property hereby conveyed to Purchaser by Seller. By Purchaser's signature, Purchaser expressly acknowledges all such waivers and Purchaser's exercise of Purchaser's right to waive warranty pursuant to Louisiana Civil Code Article 2520 and 2548, inclusive.

The herein agreement, upon its execution by both Purchaser and Seller, is herewith made an integral part of the aforementioned Agreement to Purchase and Sell.

_____   2/4/09 1945        _____   01-18-09
PURCHASER                DATE/TIME          SELLER                  DATE/TIME

_____                      _____   01-18-09
PURCHASER                DATE/TIME          SELLER                  DATE/TIME

PGR CARTER000022



## DISCLOSURE AND CONSENT TO DUAL AGENT DESIGNATED AGENCY



### This document serves three purposes:

ɔ It discloses that a real estate licensee may potentially act as a disclosed dual agent who represents more than one party to the transaction.
ɔ It explains the concept of disclosed dual agency.
ɔ It seeks your consent to allow the real estate agent to act as a disclosed dual agent.

**A LICENSEE MAY LEGALLY ACT AS A DUAL AGENT ONLY WITH YOUR CONSENT.  BY CHOOSING TO SIGN THIS DOCUMENT, YOUR CONSENT TO DUAL AGENCY REPRESENTATION IS PRESUMED.  BEFORE SIGNING THIS DOCUMENT, PLEASE READ THE FOLLOWING:**

The undersigned designated agent(s) __Chris M. Smith__

(Insert name(s) of licensee(s) undertaking dual representation)

and any subsequent designated agent(s) may undertake a dual representation represent both the buyer (or lessee) and the seller (or lessor) for the sale or lease of property described as _261 W. Robert E. Lee Blvd., New Orleans_

(List address of property, if known)

The undersigned buyer (or lessee) and seller (or lessor) acknowledge that they were informed of the possibility of this type of representation.  The licensee(s) will undertake this representation only with the written consent of ALL clients in the transaction.

Any agreement between the clients as to a final contract price and other terms is a result of negotiations between the clients acting in their own best interests and on their own behalf.  The undersigned buyer (or lessee) and seller (or lessor) acknowledge that the licensee(s) has explained the implications of dual representation, including the risks involved.   The undersigned buyer (or lessee) and seller (or lessor) acknowledge that they have been advised to seek independent advice from their advisors or attorneys before signing any documents in this transaction.

### WHAT A LICENSEE CAN DO FOR CLIENTS WHEN ACTING AS A DUAL AGENT

ɔ Treat all clients honestly.
ɔ Provide information about the property to the buyer (or lessee).
ɔ Disclose all latent material defects in the property that are known to the licensee(s).
ɔ Disclose financial qualifications of the buyer (or lessee) to the seller (or lessor).
ɔ Explain real estate terms.
ɔ Help the buyer (or lessee) to arrange for property inspections.
ɔ Explain closing costs and procedures.
ɔ Help the buyer compare financing alternatives.
ɔ Provide information about comparable properties that have sold so that both clients may make educated decisions on what price to accept or offer.

### WHAT A LICENSEE CANNOT DISCLOSE TO CLIENTS WHEN ACTING AS A DUAL AGENT

ɔ Confidential information that the licensee may know about the clients, without that client's permission.
ɔ The price the seller (or lessor) will take other than the listing price without permission of the seller (or lessor).
ɔ The price the buyer (or lessee) is willing to pay without permission of the buyer (or lessee).

You are not required to sign this document unless you want to allow the licensee(s) to proceed as a dual agent(s), representing BOTH the buyer (or lessee) and the seller (or lessor) in this transaction.  If you do not want the licensee(s) to proceed as a dual agent(s) and do not want to sign this document, please inform the licensee(s).

By signing below, you acknowledge that you have read and understand this form and voluntarily consent to the licensee(s) acting as a dual agent(s), representing BOTH the buyer (or lessee) and the seller (or lessor) should that become necessary.

_Cathy Lone_
Buyer or Lessee

_2/4/09_
Date

Buyer or Lessee

Date

_Chris M. Smith_
Licensee

_01/31/09_
Date

_[signature]_
Seller or Lessor

_1-18-09_
Date

_Chris Freese_
Seller or Lessor

_1-18-09_
Date

_Chris M. Smith_
Licensee

_01/18/09_
Date

DDA 1/08

CARTER000023

FOR EXCLUSIVE USE OF PRUDENTIAL GARDNER, REALTORS AND THEIR AFFILIATED LICENSEES.
PRUDENTIAL GARDNER, REALTORS ASSUMES NO RESPONSIBILITY FOR ANY UNAUTHORIZED USE OF THIS FORM.

Property Description (Address, City, State, Zip)  __261 W. Robert E. Lee Blvd., New Orleans, LA 70124__

## PROPERTY DISCLOSURE DOCUMENT FOR RESIDENTIAL REAL ESTATE

**Answer all questions to the best of your knowledge. Explain any "yes" answers fully at the end of each section.**
Y = yes    N= no    NK = no knowledge

## SECTION 1: LAND

(1) Are there any servitudes/encroachments regarding the property, other than typical/customary utility servitudes, that would affect the use of the property?  ☐ Y  ☑ N  ☐ NK

(2) Are there any rights vested in others? Check all that applies and explain at the end of this section.

| | | | | | | |
|---|---|---|---|---|---|---|
| Timber rights | ☐ Y ☑ N ☐ NK | | Common driveway | ☐ Y ☑ N ☐ NK |
| Right of ingress or egress | ☐ Y ☑ N ☐ NK | | Mineral rights | ☐ Y ☑ N ☐ NK |
| Right of way | ☐ Y ☑ N ☐ NK | | Surface rights | ☐ Y ☑ N ☐ NK |
| Right of access | ☐ Y ☑ N ☐ NK | | Air rights | ☐ Y ☑ N ☐ NK |
| Servitude of passage | ☐ Y ☑ N ☐ NK | | Usufruct | ☐ Y ☑ N ☐ NK |
| Servitude of drainage | ☐ Y ☑ N ☐ NK | | Other _____ | ☐ Y ☐ N ☐ NK |

(3) Has any part of the property been determined a wetland by the United States Army Corps of Engineers under §404 of the Clean Water Act?  ☐ Y  ☑ N  ☐ NK   (a) Is such a determination pending? ☐ Y  ☑ N  ☐ NK
(b) What date was determination made? _____

The Clean Water Act is a federal law that protects the wetlands of the United States. Section 404 of the Act contains permit requirements for altering or building on property that has been determined a wetland by the Army Corps of Engineers. The Corps may assess a fee to the **SELLER** or **PURCHASER** of a property for this determination. A property that has been determined a wetland may result in additional costs for a Section 404 permit. Documentation is attached and becomes a part of this property disclosure if the property described herein has been determined a wetland by the Corps.

(4) Has any flooding, water intrusion, accumulation, or drainage problem been experienced with respect to the land? If yes, indicate the nature and frequency of the defect at the end of this section.  ☑ Y  ☐ N  ☐ NK
(5) What is/are the flood zone classification(s) of the property? __A-3__  (a) What is the source and date of this information? (Check all that apply.) ☐ Survey/Date _____ ☑ Flood Elevation Certificate/Date _01/09/09_
☐ Flood Insurance Policy/Date _____ ☐ Other _____/Date _____  (b) Does SELLER have a flood elevation certificate in SELLER's possession that will be shared with BUYER?  ☑ Y  ☐ N  ☐ NK
(6) If the property is mortgaged, did the lender require you to buy flood insurance?  ☑ Y  ☐ N  ☐ NK
Question Number     Explanation of "Yes" answers ____     ☐ Additional sheet is attached

_(4) Property flooded approx. 5' during Hurricane Katrina in August 2005_
_Home was Gutted on entire first floor and treated._

## SECTION TWO: TERMITES, WOOD-DESTROYING INSECTS AND ORGANISMS

(7) Has the property ever had termites or other wood-destroying insects or organisms?  ☐ Y  ☑ N  ☐ NK
(8) Was there any damage to the property?  ☐ Y  ☑ N  ☐ NK
(9) Was the damage repaired?  ☐ Y  ☐ N  ☐ NK
(10) Is the property currently under a termite contract?  ☐ Y  ☑ N  ☐ NK
(a) Name of company _____ (b) Date contract expires _____
(c) List any structures not covered by contract _____
Question Number     Explanation of "Yes" answers   ☐ Additional sheet is attached

_____
_____
_____

## SECTION 3: STRUCTURE

(11) Are there any defects regarding the following? (Check all that apply and explain at the end of this section.)

| | | | | |
|---|---|---|---|---|
| Roof | ☐ Y ☑ N ☐ NK | | Ceilings | ☐ Y ☑ N ☐ NK |
| Interior walls | ☐ Y ☑ N ☐ NK | | Exterior walls | ☐ Y ☑ N ☐ NK |
| Floor | ☐ Y ☑ N ☐ NK | | Foundation | ☐ Y ☑ N ☐ NK |
| Attic spaces | ☐ Y ☑ N ☐ NK | | Basement | ☐ Y ☐ N ☐ NK |
| Porches | ☐ Y ☑ N ☐ NK | | Overhangs | ☐ Y ☑ N ☐ NK |
| Steps/Stairways | ☐ Y ☑ N ☐ NK | | Railings | ☐ Y ☑ N ☐ NK |
| Pool | ☐ Y ☐ N ☐ NK | | Spa | ☐ Y ☐ N ☐ NK |
| Decks | ☐ Y ☑ N ☐ NK | | Patios | ☐ Y ☑ N ☐ NK |
| Windows | ☐ Y ☑ N ☐ NK | | Other _____ | ☐ Y ☐ N ☐ NK |

LREC Rev. 03/01/08     Seller's Initials: _____     Purchaser's Initials: _CL_ _____     1 of 3

FOR EXCLUSIVE USE OF PRUDENTIAL GARDNER, REALTORS AND THEIR AFFILIATED LICENSEES.
PRUDENTIAL GARDNER, REALTORS ASSUMES NO RESPONSIBILITY FOR ANY UNAUTHORIZED USE OF THIS FORM.

Property Description (Address, City, State, Zip) __261 W. Robert E. Lee Blvd., New Orleans, LA 70124__

Y = YES   N= NO   NK = NO KNOWLEDGE

(12) Has any structure on the property ever taken water by flooding (rising water or otherwise)? If yes, give the nature and frequency of the defect at the end of this section.  ☑ Y  ☐ N  ☐ NK

(13) What is the approximate age of all structures on the property? Main structure _10 yrs._ Other structures _____

**SELLER** must complete and provide the "**Disclosure on Lead-Based Paint and Lead-Based Paint Hazard Addendum**" that is included with this property disclosure if any structure was built before 1978.

(14) What is the approximate age of the roof of each structure? Main structure _2½ yrs._ Other structures _____

(15) Does the property contain exterior insulation and finish system (EIFS) or other synthetic stucco?

(16) What is the approximate square footage of the living area of each structure on the property? Include the source of this information.  Square footage of _living area_ is _2180_ square feet. Source _Measured/appraisal_ Square footage of _____ is _____ square feet. Source _____

Question Number ___ Explanation of "Yes" answers ☐ Additional sheet is attached

_____
_____
_____

## SECTION 4: PLUMBING, WATER, GAS, AND SEWERAGE

(17) Are there any defects with the plumbing system?  ☐ Y  ☑ N  ☐ NK
(18) Are there any defects with the water piping?  ☐ Y  ☑ N  ☐ NK
   (a) Are there any defects with the water quality, quantity, or pressure?  ☐ Y  ☑ N  ☐ NK
   (b) The water is supplied by: ☑ Municipality  ☐ Private utility  ☐ On-site system  ☐ Shared well system  ☐ None
   (c) If there is a well, when was the last time the water was tested?  Date _____  Results _____
(19) Is gas service available to the property/structure?  ☑ Y  ☐ N  ☐ NK
   (a) If yes, what type? ☐ Butane  ☑ Natural  ☐ Propane.
   (b) If yes, are there any defects with it?  ☐ Y  ☑ N  ☐ NK
(20) Are there defects with any water heater?  ☐ Y  ☑ N  ☐ NK
   (a) Age of Unit 1 _10 yrs._  ☑ Gas ☐ Electric  (b) Age of Unit 2 _____  ☐ Gas ☐ Electric
(21) The sewerage service is supplied by: ☑ Municipality ☐ Other _____  ☐ NK

**SELLER** must provide the attached "**Disclosure of Information about Residential Sewage Treatment Systems Addendum**" if the property described herein is not served by a municipality waste treatment.

Question Number ___ Explanation of "Yes" answers ☐ Additional sheet is attached

_____
_____
_____

## SECTION 5: ELECTRICAL, HEATING AND COOLING, APPLIANCES

For major repairs or replacements relative to Section 5, list the date and nature of the repair or replaced component at the end of the section.

(22) Are there any defects with the electrical system?  ☐ Y  ☑ N  ☐ NK
(23) Are there any defects with the heating or cooling systems?  ☐ Y  ☑ N  ☐ NK
(24) What type of cooling system is installed? ☑ Central ☐ Window unit ☐ Other _____
   (a) Source: ☑ Electric  ☐ Gas  -  ☐ Heat pump  ☐ Other _____
(25) What type of heating system is installed? ☑ Central ☐ Window unit ☐ Other _____
   (a) Source: ☐ Electric  ☑ Gas  ☐ Heat pump  ☐ Other _____
(26) If a fireplace exists, is it working?  ☑ Y  ☐ N  ☐ NK
   (a) What type is it? ☑ Gas ☐ Wood  ☐ Vented  ☑ Ventless  ☐ Electric  ☐ Other _____
(27) Are there any defects in any permanently installed or built-in appliances?  ☐ Y  ☑ N  ☐ NK
Question Number ___ Explanation of "Yes" answers ☐ Additional sheet is attached

_____
_____

FOR EXCLUSIVE USE OF PRUDENTIAL GARDNER, REALTORS AND THEIR AFFILIATED LICENSEES.
PRUDENTIAL GARDNER, REALTORS ASSUMES NO RESPONSIBILITY FOR ANY UNAUTHORIZED USE OF THIS FORM.

Property Description (Address, City, State, Zip)   261 W. Robert E. Lee Blvd., New Orleans, LA 70124

Y = YES   N = NO   NK = NO KNOWLEDGE

## SECTION 6: MISCELLANEOUS

(28) Has there been property damage related to the land or the improvements thereon, including, but not limited to, fire, windstorm, flood, hail, lightning, or other property damage?   ☑ Y   ☐ N   ☐ NK

(a) If yes, were all related property damages, defects, and/or conditions repaired?   ☐ Y   ☐ N   ☐ NK

(29) What is the zoning of the property?   Residential   ☑ Y   ☐ N   ☐ NK

(a) Has it ever been zoned for commercial or industrial use or is it located in a historical district?   ☐ Y   ☑ N   ☐ NK

(30) Does the property and its present usage conflict with current zoning, building, and/or safety restrictions?   ☐ Y   ☑ N   ☐ NK

(31) Are there any current or pending assessments, dues, liens, taxes owing on the property?   ☐ Y   ☑ N   ☐ NK

(a) Is membership in a homeowners' association (HOA), condominium owners' association (COA), or property owners' association (POA) required as the result of owning this property?   ☐ Y   ☑ N   ☐ NK

(b) Are any HOA, COA, or POA dues required?   ☐ Y   ☑ N   ☐ NK

(c) If yes, what is the amount? $_____ per _____   ☐ Y   ☑ N   ☐ NK

(d) Are there any pending special assessments?   ☐ Y   ☑ N   ☐ NK

(e) If yes, what is the amount? $_____ per _____   ☐ Y   ☑ N   ☐ NK

> Any information contained in this property disclosure regarding homeowners' associations (HOA), condominium owners' associations (COA), or property owners' associations (POA) is summary in nature. The covenants and association governing documents are a matter of public record and can be obtained from the conveyance records on file at the Clerk of Court in the parish where the property is located.

(32) Were any additions or alterations made to the property?   ☐ Y   ☐ N   ☐ NK

(a) If yes, were the necessary permits and inspections obtained for all additions or alterations?   ☐ Y   ☐ N   ☐ NK

(33) Is there a homestead exemption in effect?   ☑ Y   ☐ N   ☐ NK

(34) Is there high speed Internet access available to the property?   ☐ Y   ☑ N   ☐ NK

(35) Is there any pending litigation regarding the property?   ☑ Y   ☐ N   ☐ NK

(36) Does the property or any of its structures contain any of the following? (Check all that apply and provide the nature and frequency at the end of this section.)

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Asbestos | ☐ Y | ☐ N | ☑ NK | Formaldehyde | ☐ Y | ☐ N | ☑ NK |
| Radon gas | ☐ Y | ☐ N | ☑ NK | Chemical storage tanks | ☐ Y | ☐ N | ☑ NK |
| Contaminated soil | ☐ Y | ☐ N | ☑ NK | Contaminated water | ☐ Y | ☐ N | ☑ NK |
| Hazardous waste | ☐ Y | ☐ N | ☑ NK | Toxic Mold | ☐ Y | ☐ N | ☑ NK |
| Mold/Mildew | ☐ Y | ☐ N | ☑ NK | Pets | ☐ Y | ☐ N | ☑ NK |
| Electromagnetic fields | ☐ Y | ☐ N | ☑ NK | Crystal meth exposure | ☐ Y | ☐ N | ☑ NK |

Other adverse materials or conditions   ☐ Y   ☐ N   ☐ NK

(37) Seller(s) elect to sell property "As Is" with full waiver of redhibition rights in act of sale as per L.A.C.C. Art. 2520 et seq. as per attached "As Is" Addendum?   ☐ Y   ☐ N

Question Number   Explanation of "Yes" answers   ☐ Additional sheet is attached

_____

_____

_____

## ACKNOWLEDGEMENTS

I/We attest that the above statements and explanations have been provided by me/us and are true and correct to the best of my/our knowledge. (If either party is represented by a real estate licensee, your signature below acknowledges that you have been informed of your duties and rights under LSA-R.S. 9:3195-3199 and have read and understand the informational statement.)

Seller (sign) _____ (print) Daniel Carter   Date 8-18-09   Time _____

Seller (sign) _____ (print) Amy Freese   Date 1-18-09   Time _____

Purchaser(s) signing below acknowledge(s) receipt of this property disclosure.

Purchaser (sign) _____ (print) Cathy Love   Date 2/4/09   Time 1945

Purchaser (sign) _____ (print) _____   Date _____   Time _____

Seller(s) acknowledge that the information contained herein is current as of this date.

Seller (sign) _____ (print) Daniel Carter   Date 2/5/09   Time 7:00 pm

Seller (sign) _____ (print) Amy Freese Carter   Date 2/05/09   Time 7:00

3 of 3

PGR-153-LA (R3/08)

CARTER000026

FEB. 6. 2009   8:09AM      CRESCENT TITLE MAPLE                    NO. 0618    P. 1

1st Purchase
~~~~ lost sale due
to the sheetrock

Amendment to Purchase Agreement dated February 4, 2009

Re: 261 W. Robert E. Lee Blvd., New Orleans, LA 70124

The Purchaser, Cathy Love, currently has her residence at 458 Jack Kramer Drive, Memphis, TN listed for sale with a local real estate broker. Additionally, Cathy Love has her second home (lake house) located at #69 Conner Circle, Iuka, MS listed for sale with a local real estate broker.

The Purchaser agrees to apply the proceeds, from whichever property sells first , towards the purchase of the real estate located at 261 W. Robert E. Lee Blvd., New Orleans, LA 70124 ("the property"). The purchase of the property shall be in accordance with the purchase agreement dated February 4, 2009, and the closing shall take place within 30 days of the sale of either of the 2 properties.

Should Purchaser not sell either of the foregoing two homes by February 27, 2009, then Purchaser and Seller shall execute a lease agreement to occupy the property for a monthly rental of $1,800.00. The purchase deposit shall convert to a rental deposit. Purchaser shall retain the right to purchase the property, as per the purchase agreement ~~through June 30~~, 2009, by providing 15 days written notice to Seller. (CL) (SC)  May 30th

May 30th

Should Seller receive an acceptable offer on the property after ~~February 27~~, 2009 , Seller shall provide notice to Purchaser and Purchaser shall have 48 hours to:

1. Schedule the closing and proceed to an act of sale within 15 days or
2. Not proceed with a closing, at which time Seller may provide at any time thereafter a 30 day notice to vacate, which Purchaser will comply with.

_Cathy Love_  2/6/09  (Purchaser signature and date)

_____  (Seller signature and date)  2-6-09

_Amy Freese Carter_

EXHIBIT
"E"

**Amy Freese**

| | |
|---|---|
| **From:** | Chris Smith [cmsmith@prudentialgardner.com] |
| **Sent:** | Saturday, February 28, 2009 4:05 PM |
| **To:** | Amy Freese |
| **Subject:** | Fwd: Copies of signed paperwork ~ 261 W. Robert E. Lee |

**Importance:**     High

**Attachments:**     20090228155807844.pdf



2009022815580784
4.pdf (679 KB)...
                    Dear Amy,

Hello~

Attached to this email are copies of the following:
1) The amendment extending the act of sale date
2) The signed and executed lease
3) The amendment pertaining to the lease

I also am in receipt of the $250 pet deposit check as well as the $1,800 first month's
rent.  If you need me to bring these over to your home in Metairie this weekend I will
gladly do so.  Otherwise, I may have Jerry hand deliver these to your office first thing
on Monday morning.  If you would rather me deliver these to you over the weekend, please
just let me know.

Thank you both for allowing this sale to proceed in the way that is has.  You both have
been very flexible and accomodating and I sincerely appreciate all that you have done.  If
all goes according to plan, we should have an actual closing & sale by the end of March!
:)

Please feel free to call me if either of you should have any questions and thank you both
again.

Warmest Regards,
Chris Smith, Realtor

Direct Cell Phone (504) 231-2004
Please check out my webiste @ www.ChrisSmithHomes.com




----- Forwarded message from faxout@prudentialgardner.com -----
     Date: Sat, 28 Feb 2009 15:58:08 -0500
     From: faxout@prudentialgardner.com
Reply-To: faxout@prudentialgardner.com
       To: Chris Smith <cmsmith@prudentialgardner.com>

This E-mail was sent from "RNPCF76B4" (Aficio MP 161).

Scan Date: 02.28.2009 15:58:07 (-0500)
Queries to: faxout@prudentialgardner.com

----- End forwarded message -----



EXHIBIT
"F"

1

CARTER000028



 **Prudential**

**GARDNER, REALTORS®**

GBS Properties, L.L.C. dba Prudential Gardner, Realtors®
ADMINISTRATIVE OFFICES: 3332 N. Woodlawn Ave., Metairie, LA 70006

FOR EXCLUSIVE USE OF
PRUDENTIAL GARDNER, REALTORS
AND THEIR AFFILIATED LICENSEES
PRUDENTIAL GARDNER, REALTORS
ASSUMES NO RESPONSIBILITY FOR ANY
UNAUTHORIZED USE OF THIS FORM.

# AMENDMENT TO
## ☑ AGREEMENT TO BUY OR SELL *or*
## ☐ MARKETING AGREEMENT

ADDRESS  261 W. Robert E. Lee

MLS # _____

New Orleans, La  70124

DATED  Febraury 27th  2009

It is hereby understood that the above referenced Agreement is amended as follows:

☐ Extend Listing from: _____   to _____

☐ Adjust Listing price from: _____   to _____

☐ Loan commitment date from: _____   to _____

☑ Act of Sale date from: Febraury 27th. 2009   to May 30th. 2009

☐ Other Changes: _____
_____
_____
_____
_____
_____

*All other terms and conditions of the contract to remain in full force and effect.*

| | | |
|---|---|---|
| _Seller_ — 2/27/09 — Date | Buyer — Cathy Love — 2/28/09 — Date |
| Seller — Amy Freeze-Carter — 2/27/09 — Date | Buyer — — Date |
| Listing Agent — — 12/27/09 — Date | Manager — — Date |
| Selling Agent — Chris M.Ct — 02/27/09 — Date | Manager — — Date |

**"The #1 Real Estate and Home Services Company in Southeast Louisiana and the Southern Mississippi Region"**

An independently owned and operated member of The Prudential Real Estate Affiliates, Inc. ® Prudential is a service mark of The Prudential Insurance Company of America.

PGR-126 (R12/07)

CARTER000029

*Amendment to lease dated February 27th 2009 regarding the property located at 261 W. Robert E. Lee ~ New Orleans, La 70124*

In the event that the lessee has not sold either of her two properties by May 30th 2009 as referenced in the "agreement to purchase" and "amendment to the agreement to purchase", which are dated 02/04/09; then it is mutually agreed by both the lessor's and lessee that the monthly rental amount for each month's rent beyond May 30th will be at a monthly net rental of $ 2,200. 00 (Two thousand and two hundred dollars) due from the lessee to the lessor's and all other terms as outlined in the lease shall remain the same.

_____ 2/27/09 (Lessor Signature and date)

_____ 02/27/09 (Lessor Signature and date)

_____ (Lessee Signature and date)
          2/28/09

CARTER000030



**Prudential**

**GARDNER, REALTORS®**

GBS Properties, L.L.C. dba Prudential Gardner, Realtors®
ADMINISTRATIVE OFFICES: 3332 N. Woodlawn Ave., Metairie, LA 70006

FOR EXCLUSIVE USE OF
PRUDENTIAL GARDNER, REALTORS
AND THEIR AFFILIATED LICENSEES.
PRUDENTIAL GARDNER, REALTORS
ASSUMES NO RESPONSIBILITY FOR ANY
UNAUTHORIZED USE OF THIS FORM.

# RESIDENTIAL LEASE

1 **PARTIES** Amy and Daniel Carter                                    Date: February 27th 2009
2 Cathy Love _____ ( hereinafter referred to as Lessor) hereby leases to
3 the following described property:                                        (hereinafter referred to as Lessee)

4 **PREMISES** 261 W. Robert E. Lee
5 in New Orleans                  Louisiana              70124        , for use by Lessee as a private residence only.
6          (City)                    (State)              (Zip)

7 **TERM** This lease is for a term of three_____ months commencing on the 1st___ day of March_____ , 20 09 .
8 and ending on the last calendar day of May_____ , 20 09 .

9 **MONTH TO MONTH RENEWAL** If Lessee, or Lessor, desires that this lease terminate at the expiration of its term, he must
10 give to the other party written notice at least 30____ days prior to that date. Failure of either party to give this required
11 notice automatically renews this lease and all of the terms thereof except that the lease will then be on a month to month basis.

12 **RENT** This lease is made for and in consideration of a monthly rental of $_1,900 00_____ dollars
13 payable in advance on or before the 1st day of each month at to be delivered to lessor/owner
14 Lessee agrees to pay Lessor the sum of $ n/a
15 n/a_____ through n/a_____ 20___ dollars which is prorated rental for the period
16 entitled to a deduction of $ 100. 00_____dollars per month, or a net rental of $ 1,800. 00_____dollars per month
17 provided, however, that any monthly rental payment not received by the 10th. day_____ of the month shall be considered
18 delinquent. If Lessee pays by check and said check is not honored on presentation for any reason whatsoever, Lessee agrees
19 to pay an additional sum of $ 50. 00_____as a penalty. This penalty provision is not to be considered a waiver
20 or relinquishment of any of the other rights or remedies of Lessor. At Lessor's discretion after receipt of NSF check, Lessor
21 may require all future payments in the form of money orders or certified funds. Lessor shall give written notice to Lessee
22 of this requirement.

23 **SECURITY DEPOSIT** Upon execution of this lease, Lessee agrees to deposit with Lessor, the sum of $ 3,000. 00_____.
24 This deposit shall be non-interest bearing and is to be held by Lessor as security for the full and faithful performance of the terms
25 and conditions of this lease. This security deposit is not an advance rental and Lessee may not deduct any portion of the deposit
26 from rent due to Lessor. This security deposit is not to be considered liquidated damages. In the event of forfeiture of the security
27 deposit due to Lessee's failure to fully and faithfully perform all of the terms and conditions of this lease, Lessor retains
28 all of his other rights and remedies. Lessee does not have the right to cancel this lease and avoid his obligations hereunder
29 by forfeiting said security deposit.

30 Deductions will be made from the security deposit to reimburse Lessor for the cost of repairing any damage to the premises
31 or equipment, or the cost of replacing any of the articles, or equipment that may be damaged beyond repair, lost or missing at
32 the termination of this lease. Deductions will also be made to cover any unpaid amounts owed to Lessor for any damage, loss,
33 or charges which occurred prior to termination of this lease and for which Lessee is responsible. In the event that damages or other
34 charges exceed the amount of the security deposit, Lessee agrees to pay all expenses and cost to Lessor. In the event there
35 has been a forfeiture of the security deposit, excess charges shall be paid in addition to the amount of the said security deposit.

36 Should there be any damage to the leased premises or equipment therein, reasonable wear and tear excepted, caused by,
37 Lessee his family, guests or agent, Lessee agrees to pay Lessor when billed, the full amount necessary to repair or
38 replace the damaged premises or equipment. This includes but is not limited to garbage disposal, plumbing problems due
39 to improper usage, also water problems due to improper bath/shower usage.

40 Notwithstanding any other provisions expressed or implied herein, it is specifically understood and agreed that the entire security
41 deposit aforesaid shall be automatically forfeited should Lessee vacate or abandon premises before the expiration of this lease,
42 except where such abandonment occurs during the last month of the term of this lease, and Lessee has paid all rent covering the
43 entire term and either party has given the other timely written notice that his lease will not be renewed under its automatic renewal
44 provisions. Forfeiture of the security deposit shall not limit Lessor's rights nor Lessee's obligations.

45 The leased premises must be returned to the Lessor in as good condition as they were at the time the Lessee first occupied same,
46 subject only to normal wear and tear. Lessor agrees to deliver the premises clean and free of trash at the beginning of this lease
47 and Lessee agrees to return the same in like condition at the termination of this lease. At the termination of this lease, the Lessee
48 shall be entitled to an accounting, and a return of the security deposit within 30 days thereafter, providing all of the obligations
49 of the Lessee have been fulfilled, including return of the keys to the Lessor. Lessee shall provide Lessor with a forwarding address,
50 in writing.

51 **OCCUPANTS** The leased premises shall be occupied only by the persons listed below. Other occupants, including temporary
52 visitors, are not allowed to remain at the premises for a period in excess of 10 days.
53 Cathy Love
54 _____
55 A temporary visitor is one who inhabits the premises for no more than ten (10) days.
56 **PETS** No pets shall be allowed on the premises at any time. However, this provision shall not preclude Lessor from modifying
57 any lease to allow pets by mutual written agreement between Lessor and Lessee.

**INITIALS** Lessee's _____ Lessee's _____ Lessor's _____ Lessor's _____

**"The #1 Real Estate and Home Services Company in Southeast Louisiana and the Southern Mississippi Region"**
An independently owned and operated member of The Prudential Real Estate Affiliates, Inc. ® Prudential is a service mark of The Prudential Insurance Company of America.
PGR-202 (R1/06)
(PAGE 1 OF 4)

CARTER000031

58 **SUB LEASE** Lessee is not permitted to sublet or grant use or possession of the leased premises without the written
59 consent of Lessor and then only in accordance with the terms of this lease. Any expense associated with sub-leasing
60 the premises shall be paid by Lessee.

61 **DEFAULT, ABANDONMENT OR EVICTION** Should the Lessee fail to pay the rent or any other charges arising under this lease
62 promptly as stipulated or should premises be abandoned by Lessee (it being agreed that an absence of Lessee from the leased
63 premises for five consecutive days after rentals have become delinquent shall create a conclusive presumption of abandonment)
64 or should Lessee begin to remove furniture or any substantial portion of Lessee's personal property to the detriment of Lessors lien,
65 or should voluntary or involuntary bankruptcy proceedings be commenced by or against Lessee, or should Lessee make an
66 assignment for the benefit of creditors, then in any of said events, Lessee shall be in default and the rental of the whole of the
67 unexpired term of this lease, together with any attorney's fees and all other expenses, shall immediately become due. Lessor may
68 proceed one or more times for past due installments without prejudging his rights to proceed later for the rent for the remaining
69 term of this lease. Similarly, in the event of any such default, Lessor retains the option to cancel this lease and obtain possession
70 of the premises in accordance with the provisions of Article 4701 et. seq. of the Louisiana Code of Civil Procedure. In the event
71 of such cancellation and eviction, Lessee is obligated to pay any and all rent and expenses due and owing through the day said
72 premises are re-rented or this lease expires, whichever is sooner. Lessee is obligated to pay any collection and eviction costs and
73 attorney's fees. In the event the premises are abandoned as defined above, Lessee grants to Lessor the right to dispose of belongings
74 remaining in the premises in any manner Lessor chooses without any responsibility to Lessee for any loss which Lessee may sustain
75 from said disposition. Lessee shall be responsible for any cost incurred for removal of these belongings.

76 **OTHER VIOLATIONS, NUISANCE** Should the Lessee at any time violate any of the conditions of this lease, other than the
77 conditions provided in the immediately preceding paragraphs under the heading "Default, Abandonment, or Eviction" or should
78 the Lessee discontinue the use of the premises for the purposes for which they are rented or fail to maintain a standard behavior
79 consistent with the consideration necessary to provide reasonable safety, peace and quiet to others, such as but not limited to, being
80 boisterous or disorderly, creating undue noise, disturbance or nuisance of any nature or knowingly engaging in any unlawful or
81 immoral activities, or failure to abide by any Rules and Regulations, and should such violation continue for a period of five days
82 after written notice has been given Lessee (such notice may be posted on Lessee's door) or should such violation again occur after
83 written notice to cease and desist from such activity or disturbance, then, Lessee shall be in default and Lessee shall have the right
84 to demand the rent for the whole unexpired term of this lease which at once becomes due and payable or to immediately cancel
85 this lease and obtain possession of the premises in accordance with the provisions of Article 4701 et. seq. of Louisiana Code of
86 Civil Procedure, or to exercise any further rights granted by this lease or available by law.

87 **RULES AND REGULATIONS** Lessee acknowledges receipt of a copy of and agrees to comply with the Rules and Regulations.
88 Lessee agrees to comply with any additions and/or modifications to these Rules & Regulations or with other Rules & Regulations
89 which may be established and adopted by the Lessor and which may be posted on the leased premises, and/or mailed, and/or
90 delivered to Lessee.

91 **CONDITION, REPAIRS, ADDITIONS AND ALTERATIONS OF PREMISES** Lessor warrants that the leased premises are in
92 good condition, unless otherwise noted. Lessor shall be responsible for the repair of electrical, plumbing, air conditioning and
93 heating system provided the repair is not caused by misuse or neglect by the Lessee. Lessee agrees to use the same with care, and
94 to perform the usual cleaning and household maintenance customarily required. Air conditioning and heating filters are the
95 responsibility of Lessee. The running of the unit with dirty filters is not permitted. Lessee acknowledges that he has been provided
96 the opportunity to inspect the premises and accepts it in its current condition and agrees to keep it in same condition during the
97 term of this lease at his expense and return it to Lessor in the same or better condition at termination of this lease, normal decay,
98 wear and tear excepted. The only exceptions to this area are repairs/improvements that Lessor specifically agrees to perform on
99 the premises as may be outlined in the "SPECIAL CONDITIONS" section of this lease.

100 Lessee shall not make any additions or alterations to the premises without written permission of the Lessor. Lessor or his employees
101 shall have the right to enter the premises for the purpose of inspection or making repairs necessary for preservation of the property.
102 Any additions or alterations made to the property by the Lessee shall become the property of the Lessor at the termination of this
103 lease unless otherwise stipulated herein. Lessee expressly waives all right to compensation for any additions or alterations made
104 to the premises. The Lessor, at his option, may require the premises to be returned to its original condition at Lessee's expense.

105 **OCCUPANCY** Should Lessor be unable to provide occupancy on the date of the beginning of this lease due to causes beyond control
106 of Lessor, this lease shall not be affected thereby, but Lessee shall owe rent beginning only with the day on which he can obtain
107 possession. Lessee shall not be entitled to any damages beyond the remission of rent for such term during which he is deprived
108 of possession. Should Lessor be unable to provide occupancy within 10 calendar days from the commencement of this lease as
109 stipulated herein, the Lessee shall have the option of terminating this lease by giving written notice to Lessor.

110 Should the property be destroyed or materially damaged so as to render it wholly unfit for occupancy by fire or other unforseen
111 event not due to any fault or neglect of Lessee, then Lessee shall be entitled to a refund of any prepaid rents for the unexpired term
112 of this lease. However, Lessee shall not be entitled to a reduction of the monthly rent or cancellation of this lease because of a
113 temporary failure of utilities, heat, air conditioning or temporary closing of swimming pool and/or a reasonable delay in completing
114 agreed to improvements to the premises as specified in the "SPECIAL CONDITIONS" section of this lease.

115 **SURRENDER OF PREMISES** At the expiration of this lease, or its termination for other causes, Lessee is obligated
116 to immediately surrender possession, and should Lessee fail to do so, he consents to pay any and all damages, but in no
117 case less than five times the rent per day, plus attorney's fees, and other related costs

118 **LIABILITY** If any employee or representative of Lessor renders any services (such as parking, washing or delivering
119 automobiles, handling of furniture of other articles, cleaning the rented premises, package delivery, or any other service) for
120 or at the request of Lessee, his family, employees or guests, then for the purpose of such service, such employees shall be
121 deemed the servant of Lessee, regardless of whether or not payment is arranged for such service, and Lessee agrees to release
122 Lessor and his agents and/or representatives and to hold them harmless of any and all liability arising therefrom.

123 Neither Lessor nor his agents and/or representatives shall be liable to Lessee, or to Lessee's employees, patrons and visitors,
124 or to any other person for any damage to person or property caused by any act, omission or neglect of Lessee or any other
125 tenant of said leased premises and Lessee agrees to defend, indemnify and hold Lessor, his agents and/or representatives

INITIALS Lessee's _____  Lessee's _____  Lessor's _____  Lessor's _____

An independently owned and operated member of The Prudential Real Estate Affiliates, Inc. ⓖ Prudential is a service mark of The Prudential Insurance Company of America.

PGR-202 (R1/06)
(PAGE 2 OF 4)

CARTER000032

126 harmless from all claims for any such damage, whether the injury occurs on or off leased premises.

127 Lessee hereby releases and holds Lessor, his agents and/or representatives harmless and agrees to defend and indemnify Lessor
128 from any damage or injury to persons or property caused as a result of the use of any swimming pool by Lessee or
129 any persons making use of said through the use, permission or consent of Lessee.

130 Lessee assumes responsibility for the condition of the premises. Lessor is not responsible for damage caused by leaks in the
131 roof, by bursting of pipes by freezing or otherwise, or any vices or defects of the leased property, or the consequences thereof,
132 except in case of positive neglect or failure to take action toward the remedying of such defects within a reasonable amount
133 of time after receiving written notice of such defects. Should Lessee fail to promptly so notify Lessor in writing, of any such
134 defects, Lessee will become responsible for any damage or claims resulting to Lessor or other parties.

135 Lessee understands that neither Lessor, his agents and/or representatives carries Hazard or Flood insurance on Lessee's
136 contents in leased premises.  Lessor is not responsible for damage or loss of Lessee's personal property.  Lessor
137 encourages Lessee to acquire adequate insurance to protect themselves and their personal property.

138 Lessor and Lessee acknowledge that the return or disposition of Lessee's deposit is a decision made exclusively by the Lessor
139 in accordance with the applicable rules of the Louisiana Real Estate Commission, the terms and conditions of this lease, and
140 the requirements of law.  Said parties acknowledge that the Lessor's Broker is likewise bound to the applicable rules of the
141 Louisiana Real Estate Commission and cannot return the deposit, if held by Broker, in the absence of mutual written agreement
142 except in accordance with the rules and regulations of the Louisiana Real Estate Commission.  Accordingly, both Lessor and
143 Lessee release and discharge Agent/Broker from any and all liability or responsibility of Agent/Broker relating to the return of such
144 deposit, except in the event Agent/Broker breaches the rules and regulations of the Louisiana Real Estate Commission. Lessee
145 acknowledges that the actions of the Agent/Broker regarding this entire lease is made solely and at the direction of the Lessor.

146 **SIGNS & ACCESS** Lessor reserves the right to post on the premises "For Sale" signs at any time and "For Rent" signs can
147 be placed on property ___sixty___ days prior to expiration of lease. Lessee will also permit Lessor, his agents and/or
148 representatives to have access to the premises for the purpose of inspection, sale or leasing at reasonable intervals between
149 the hours of 8:00 am and to 8:00 pm.  If Lessee refuses request for access, this shall constitute a violation of the lease.

150 **ATTORNEY FEES** Lessee further agrees that if an Attorney is employed to protect the rights of the Lessor hereunder, Lessee
151 will pay the fee of such attorney.  Such fee is hereby fixed at twenty-five (25%) percent of the amount claimed or a minimum
152 of $300.00 whichever is greater. Lessee further agrees to pay all court costs and sheriff's charges and all other expenses
153 involved.

154 **NOTICES** All notices required to be given under the terms of this lease shall be in writing, and if mailed, by certified mail
155 addressed to Lessee at the herein leased premises or to Lessor at the address appearing in this lease, and such mailing
156 constitutes full proof of and compliance with the requirement of notice, regardless of whether addressee received such notice
157 or not.  Notices may also be given  in writing by hand delivery, or by attaching to door of premises.

158 **COMMISSIONS** Lessor, his heirs, successors or assigns, agrees to pay to PRUDENTIAL GARDNER, REALTORS, its heirs,
159 successors or assigns a lump sum cash commission of _NO LEASING COMMISSION is being charged_
160 which commission is earned and payable upon execution of this lease, and a similar commission on any extension or renewal
161 of this lease and also a commission of _FIVE %____ of the negotiated price of any agreement to sell, exchange or
162 option made with or through Lessee during the  term of this lease or any renewal and/or extension thereof or within
163 180 days after the expiration of this lease or any renewal thereof.

164 In consideration of services rendered by Agent/Broker in negotiation this lease, Lessor hereby agrees that in the event the
165 herein leased property is sold or transferred during the term of this lease and there are any unpaid commissions still due
166 Agent/Broker, Lessor will pay same lump sum in cash at the time property is sold or transferred.

167 **OTHER CONDITIONS** The failure of Lessor to insist upon the strict performance of the terms, covenants, agreements and
168 conditions hereby contained, or any of them, shall not constitute or be construed as a waiver or relinquishment of the Lessor's
169 right thereafter to enforce any such terms, covenant, agreement and condition, but the same shall continue in full force
170 and effect.

171 It is understood that the terms "Lessor" and "Lessee" are used in this lease, and they shall include the plural and shall apply
172 to all persons, both male and female.  All obligations of Lessee are joint, several and in solido.

173 This lease, whether or not recorded, shall be junior and subordinate to any mortgage hereafter placed by Lessor on the entire
174 property of which the leased premises forms a part.

175 **UTILITIES** Lessee shall maintain all utility services, including water, gas, electricity, phone, garbage collection, and lawn
176 and garden care, in Lessee's name and shall promptly pay all charges due thereon, during the term of this lease unless
177 otherwise noted. Lessee to also maintain Security Monitoring System through
INTERFACE SECURITY

178 **WAIVER OF NOTICE** Upon termination of the right of occupancy for any reason, Lessee hereby expressly waives notice
179 to vacate premises prior to institution of eviction proceedings in accordance with La. CCP Article 4701 and La. CC Article
180 2713.

181 **MISCELLANEOUS PROVISIONS** No cars to be parked on lawn or walkways. Cars to be parked only in designated areas.
182 No holes shall be drilled in the walls, woodwork or floors and no antenna installations are permitted. No painting or papering
183 of walls is permitted without written consent of Lessor. Lessee shall not allow the cable/phone company to wire the premises
184 for cable without Lessor's written permission. No waterbeds are allowed. No foil in windows is allowed. Garbage to be placed
185 in designated receptacle. If no receptacle is provided, garbage is to be placed on curb as prescribed by law in a proper
186 receptacle provided by Lessee.

187 Lessee is to furnish Lessor with a list of deficiencies noted by Lessee at the time of occupancy. This is to be held by Lessor
188 in case of dispute as to move-in condition of property.

**INITIALS** Lessee's _____    Lessee's _____    Lessor's _____    Lessor's _____

An independently owned and operated member of The Prudential Real Estate Affiliates, Inc.  ⓖ Prudential is a service mark of The Prudential Insurance Company of America.

PGR-202 (R1/00)
(PAGE 3 OF 4)

CARTER000033

189 Under Louisiana Law, "notwithstanding the provisions of Civil Code Articles 2985 through 3034 or any other provisions of law,
190 a licensee engaged in any real estate transaction shall be considered to be representing the person(s) with whom he is working as a
191 Broker/Designated Agent(s) unless there is a written agreement between the Broker and the person, providing a
192 different relationship or the licensee is performing only ministerial acts on behalf of the person". As such, the listing agent acts as
193 the Broker/Designated Agent(s) for the Lessor and as such, the Lessor's Broker/Designated Agent(s) owes a fiduciary duty of utmost
194 care and loyalty to the Lessor, and may not disclose to the Lessee information about what price or terms the Lessor will accept
195 other than the price or terms listed. Lessee's and/or Lessor's Designated Agent(s) does owe a duty of fair dealing to a Lessee, and
196 a duty under Louisiana law to disclose the existence of any known material defects in the property.
197 Lessee and/or Lessor understands that Broker/Designated Agent(s) may be representing Lessee and the Lessor of a
198 real estate property who has employed Broker to lease property on behalf of the Lessor. Lessor understands that this creates
299 dual representation and that Broker/Designated Agent(s) cannot represent the interest of one party to the exclusion of the interests
200 of the other party. Should Broker/Designated Agent(s) represent a Lessor whose property Lessee wishes to lease, Lessee and
201 Lessor do hereby consent to this dual representation by Broker/Designated Agent(s).

202 **SPECIAL CONDITIONS**

203 Please see purchase agreement dated February 4th. 2009

204 Please see attached addendum to lease dated February 27th. 2009

205 Lessor's will allow lessee to have (2) male cats as pets inside
206 of the property with a $250.00 pet deposit due upon lease signing

208 Time is of the essence. This document and any indicated addendum contain this entire lease. If any part of this lease is or
209 becomes contrary to law, the remainder of this lease shall be unaffected. Any changes must be agreed upon in writing, and
210 signed by Lessor and Lessee.

211 **LEAD-BASED PAINT, ASBESTOS, RADON** Lessee is aware that the premises may contain lead-based paint, asbestos, or
212 other toxins which may cause serious injury or death if consumed or ingested into the human body, and Lessee acknowledges
213 that the "Protect Your Family From Lead in Your Home" pamphlet has been called to their attention with respect to notice
214 and information of lead-based paint. Having knowledge of these facts, Lessee agrees to maintain the premises in a reasonably
215 safe condition, to report to Lessor any condition which may lead to damage or injury because of lead, asbestos or other toxins,
216 and Lessee further agrees to assume the use and occupancy of the herein leased premises at his own risk and hereby releases
217 Lessor, his agents and/or representatives from any claims relating to or sustained as a consequence thereof, and further agrees
218 to hold harmless, defend and indemnify Lessor, his agents and/ or representatives from any claims made by Lessee, residents
219 of his household or others using the premises with the consent and permission of Lessee.

221 **LESSOR:**     Were there any structures built on this property prior to 1978?
222             ☐ Yes   ☐ No   ☐ Unknown
223 This Residential Lease is submitted with ~~NOT APPLICABLE~~ information on Lead-Based
224 Paint and Lead-Based Paint Hazards Form dated _____.

226 **INITIALS:**     Lessee's _CL_     Lessee's ____     Lessor's _AV_     Lessor's _SC_

227 **MOLD RELATED HAZARDS NOTICE:** An informational pamphlet regarding common mold related hazards that can
228 affect real property is available at the EPA website http:www.epa.gov/iaq/molds/index.html. By initialing this section,
229 Lessee acknowledges that the real estate agent has provided Lessee with the EPA website enabling Lessee to obtain
230 information regarding common mold related hazards.

232 **INITIALS:**     Lessee's ____     Lessee's ____

233 **SEX OFFENDER AND CHILD PREDATOR REGISTRY NOTICE:** The Louisiana Bureau of Criminal Identification and
234 Information maintains a State Sex Offender and Child Predator Registry, which is a public access data base
235 of the locations of individuals required to register pursuant to LSA-R.S. 15:540 et seq. Sheriff's Departments
236 and Police Departments servicing jurisdictions of 450,000 also maintain such information. The State Sex Offender and
237 Child Predator Registry database can be accessed at www.lasocpr.lsp. org/socpr/ and contains address, pictures
238 and conviction records for registered offenders. The database can be search by zip code, city, Parish or by offender name.
239 Information is also available by phone at 1-800-858-0051 or 1-225-239 925-6100 or mail at P.O. Box 66614, Mail Slip
240 #18, Baton Rouge, Louisiana, 70896. You can also e-mail State Services 240 at SOCPR@dps.state.la.us for more information.

241 **FOR REPAIRS/MAINTENANCE CALL:** Chris Smith Realtor/Agent
242 _____     504-231-2004
243                 Name                         Phone
244 Prudential Gardner, Realtors, does business in accordance with the Fair Housing Law and I/we agree not to
   discriminate with regards to the following: race, color, religion, sex, handicapped, familial status, national origin.

245         **FACSIMILE SIGNATURES ARE ACCEPTABLE AND BINDING AS ORIGINALS**

246         **THIS IS A BINDING LEGAL DOCUMENT, READ CAREFULLY BEFORE SIGNING.**

247 _____   2/28/09         _____   2-27-09
248 Lessee                     Date           Lessor                     Date

249 _____   _____        _Amy Freese-Carter_        2/27/09
250 Lessee                     Date           Lessor                     Date

251 _Chris Smith_   02/27/09   Prudential Gardner   504-231-2004         SMITHCHR
252 Designated Lessee's Agent   Date   Company       Phone #             Agent I.D. #

253 _Chris Smith_   02/27/09   Prudential Gardner   504-231-2004         SMITHCHR
254 Designated Lessor's Agent   Date   Company       Phone #             Agent I.D. #

An independently owned and operated member of The Prudential Real Estate Affiliates, Inc.  ⓟ Prudential is a service mark of The Prudential Insurance Company of America.

PGR-202 (R1/06)
(PAGE 4 OF 4)

CARTER000034



## Prudential

### GARDNER, REALTORS®

*Cancel*

GBS Properties, L.L.C. dba Prudential Gardner, Realtors®
ADMINISTRATIVE OFFICES: 3332 N. Woodlawn Ave., Metairie, LA 70006

FOR EXCLUSIVE USE OF
PRUDENTIAL GARDNER, REALTORS
AND THEIR AFFILIATED LICENSEES.
PRUDENTIAL GARDNER, REALTORS
ASSUMES NO RESPONSIBILITY FOR ANY
UNAUTHORIZED USE OF THIS FORM.

# CANCELLATION OF AGREEMENT TO PURCHASE

It is hereby agreed and understood that __Amy Freese~Carter and Daniel Carter__ as SELLERS(S), and __Cathy Love__, as PURCHASER(S) do mutually cancel and nullify the "Agreement to Purchase or Sell" dated __February 4th. 2009__ on the property located at __261 W. Robert E. Lee Blvd__ (City) __New Orleans__ (State) __Louisiana__

The undersigned parties do hereby authorize __Prudential Gardner Realtor's__ (listing broker) to return the PURCHASER'S deposit, in full, amounting to $ __3,000.00__ cash and/or $ __n/a__ demand note upon receipt of this instrument fully executed by all parties. Check to be made payable to: __Cathy Love__

Prudential Gardner, Realtors, and __Prudential Gardner Realtor's__ hereby waive any and all commissions due them under said "Agreement to Purchase and Sell" provided that, if said SELLER(S) and PURCHASER(S) negotiate a sale of said property between themselves at any price within a period of twelve (12) months after the date of this instrument, SELLER(S) shall pay to Prudential Gardner, Realtors, and __Prudential Gardner Realtor's__ a commission of __FIVE %__ (% of the sale price).

The undersigned parties, including real estate broker(s), hereby release each other from any and all obligations and liability in connection with said "Agreement to Purchase or Sell," except as qualified above.

**REASON FOR CANCELLATION** *(Place an "X" on the best answer)*

- ☐ 1. Insufficient Down Payment
- ☐ 2. Negative Seller Proceeds
- ☐ 3. Buyer/Seller Defaults
- ☐ 4. Low Appraisal
- ☐ 5. Required repairs not completed
- ☐ 6. Not Acceptable After Inspections

- ☐ 7. Bad Title/Encroachment
- ☐ 8. Lender Rejected Loan
- ☐ 9. Failure of Buyer to Sell Home
- ☐ 10. Credit/ Bankruptcy
- ☐ 11. Not qualified Due to Insufficient Income
- ☑ 12. Other __Purchasers discovery of__ __"Chinese drywall"__

*✱ Note*

__Cathy Love__   Date __4/5/09__      __Amy Freese Carter__   Date __4 -10-09__
Purchaser   Date              Seller   Date

__Chris M. Smith__   Date __04/05/09__      _____   Date _____
Selling Agent   Date            Listing Agent   Date

SEND CHECK TO (BRANCH): __St. Charles Ave branch__

For: Prudential Gardner, Realtors

By: _____
       Manager          Date

For: _____ (other broker)

By: _____
       Manager          Date

**"The #1 Real Estate and Home Services Company in Southeast Louisiana and the Souther...**

An independently owned and operated member of The Prudential Real Estate Affiliates, Inc. ⊕ Prudential is a service mark of The Prudential Insurance Company of America.

EXHIBIT
tabbies
" 6 "
CARTER060035

# LISTING AGREEMENT



The Standard Form (revised 09/08) of:
New Orleans Metropolitan Association of REALTORS ®, Inc
Northshore Area Board of REALTORS ®
Saints Board of REALTORS ®

For exclusive use of REALTORS ®
REALTOR® Boards provide this form as an aid,
and not as legal advice. REALTOR ® members
assume no responsibility for unauthorized use.

1. _____ NEW ORLEANS _____ La. 6/30/10
2. The undersigned Client (herein after referred to as Owner) hereby grants to _____
3. and their successors or assigns (herein after referred to as "Broker", the sole and exclusive right to sell the following described Property:  RE/MAX AFFILIATES
4. _____ 261 W. ROBERT E. LEE _____
5. Subdivision _____ WEST END _____ City _____ NEW ORLEANS _____
6. Parish _____ ORLEANS _____ Louisiana, Zip _____ 70124 _____
7. including: WASHER, DRYER, FRIDGE, WINE COOLER, WINDOW & DOOR COVERINGS
8. excluding: _____ N/A _____
9. On grounds measuring about ____ 40.6 X 120 _____ or as per title, for THREE HUNDRED
0. _____ TWENTY-FIVE THOUSAND & 00/100 _____
0. ($ 325,000.00 ) Dollars cash or the following terms.  "AS IS" W/ WAIVER
3. _____ OF RECISION AFTER INSPECTIONS _____ or any other price, or upon any other terms, as may hereafter be agreed upon.
4. Owner agrees to pay Broker's commission of ____ 6% OF 1ST $100,000; 4% OF BALANCE ____ on the gross amount of any agreement to sell, ex-
5. change, or option that may be negotiated during the existence of the agreement, or on the gross amount of any such agreement made within
6. _____ 180 _____ days after the expiration or termination of this agreement, with anyone to whom said property has been quoted during the term of this
7. agreement, part of which commission may be paid to a cooperating Broker at listing Broker's sole discretion. The Closing Notary is authorized
8. to deduct and disburse commission at Act of Sale. This protection period shall terminate when the property is listed with another Real Estate
9. Broker. The commission is earned when such an agreement is signed by all parties resulting in a valid and binding agreement to purchase.
10. Said commission is also earned upon obtaining an offer to purchase at the listed price and terms with reasonable time for act of sale and
11. occupancy. In the event the property is leased to anyone during the term of this agreement, Owner agrees to pay Broker a commission of
12. _____ 60% 1ST FULL MONTH'S RENT _____. Broker is authorized to accept from Purchaser, or his representative, a non-interest bearing deposit
13. represented by cash and/or a real estate deposit note, and to place the cash portion of this deposit in a federally insured banking or savings
14. institution selected by Broker pending settlement. Broker shall have no responsibility in case of failure or suspension of said banking or savings
15. institution. In the event of a dispute between Owner and the Purchaser, Owner understands and agrees that Broker cannot disburse
16. the deposit without the mutual written consent of the Purchaser and Owner, or judicial order, or order of the Louisiana Real Estate
17. Commission.
18. Owner agrees to refer all prospects to Broker, to cooperate fully and not to obstruct the sale of the property, during the term of this
19. contract. In case of employment of counsel to enforce this agreement, Owner will pay all costs and reasonable attorney's fees incurred by
20. Broker. In further consideration of the efforts and expenditures by Broker, Owner shall indemnify Broker, his Agents and Employees, against all
21. liability, loss and expense, including reasonable attorney's fees and court costs that may be incurred as a result of any claim or suit by any
22. person for personal injury or property damage sustained by such person while on or about the herein above described premises, due to the
23. condition of said premises or Owner's negligence. This authorization to sell shall remain in full force and effect for a period of
24. _____ SIX (6) MONTHS _____ from date of acceptance by Broker. Upon acceptance, Broker shall calculate expiration date and so notify
25. Owner. If an agreement to purchase and sell is executed during the term of this agreement, the parties agree to extend the effective
26. period of this listing agreement to include the closing date as provided for in the agreement to purchase, or any extension thereof.
27. Owner specifically requests and authorizes the use of the Multiple Listing Service, the public display of property address, photos, virtual tours,
28. and other depictions of the property and its contents through the MLS, the internet, and various web sites, including Internet Data Exchange
29. and Virtual Office Websites, to promote and enhance the sale of the property. Owner also authorizes all MLS brokers who participate in
30. Internet Data Exchange and Virtual Office Websites, to publicly display the property and its contents on the Brokers' web sites and agrees to
31. hold harmless and indemnify the Brokers, their Agents and Employees, the MLS and the Association of REALTORS® (NOMAR and GSREIN)
32. from any and all claims which may arise there from. The owner further authorizes Broker and the MLS to disseminate pertinent information
33. including, but not limited to the photo of property sale price, property condition and / or seller considerations affecting such property. Broker is
34. authorized to post signs and advertise the property for sale.
35. Notwithstanding the provisions of Civil Code Articles 2985 through 3034 or any other provisions of law, a licensee engaged in any real
36. estate transaction shall be considered to be representing the person with whom he is working as a Designated Agent unless there is a written
37. agreement between the Broker and the person providing that there is a different relationship or the licensee is performing only ministerial
38. acts on behalf of the person.
39. OWNERS SHALL COMPLETE THE PROPERTY DISCLOSURE (ADDENDUM) FORM.
50. OWNERS SHALL COMPLETE THE LEAD BASED PAINT DISCLOSURE FORM IF PROPERTY WAS BUILT PRIOR TO 1978.
51. OWNERS SHALL REVIEW AND SIGN REAL ESTATE AGENCY DISCLOSURE PAMPHLET.
52.
53. *WE DO BUSINESS IN ACCORDANCE WITH FEDERAL FAIR HOUSING LAWS*
54.
55. The commissions reflected in this agreement have been negotiated only by the parties to the agreement.

I understand and consent to dual agency?                    ☒Yes ☐No
Do you desire home protection warranty?                     ☐Yes ☒No
   Broker may receive a fee from insurer if a                              _____
   Home Warranty Plan is provided.                                        Owner's Signature
Would you like relocation assistance?                                          DANIEL CARTER
Do you authorize the use of a lockbox on the property                     Owner(s) Name (type or print)
in accordance with the lockbox procedures which have
been explained to you, and hold said company and
its associates harmless from any responsibility or                         _____
liability in connection herewith?                           ☒Yes ☐No            Owner's Signature
Do you authorize VOW Comments in conjunction with                                AMY CARTER
the listing?                                                ☒Yes ☐No        Owner(s) Name (type or print)
Do you authorize VOW Automated Valuation Model in
conjunction with the listing?                               ☐Yes ☒No
Seller authorizes the authentication of his signature,
or of the Purchaser's, by facsimile (fax)                   ☒Yes ☐No         6114 BELLAIRE DRIVE
                                                                                 Mailing Address
Accepted by _____                               NEW ORLEANS, LA 70124
                                                              City          State, Zip
Effective Date: _____ 6/30/10 _____                      504-382-9389—AMY;  669-9055–DANIEL
                                                             (Area Code) Telephone Number
Expiration Date: _____ 12/30/10 _____                    E-Mail Address
                                                             CCLANDSCAPING @ AOL.COM
Seller's Designated Agent: _____
                                        PHYLLIS STEVENS

This form produced by: **Formulator ®**  800-499-0612

EXHIBIT
"A"

CARTER000036

## WAIVER of WARRANTY and REDHIBITION RIGHTS ADDENDUM

IN REFERENCE to the Agreement to Purchase and Sell the real property commonly referred to as: _____ *261 W. ROBERT E. LEE*          *NEW ORLEANS, LA 7012* , dated _____ between _____ *DANIEL CARTER* _____ (SELLER") and _____ ("PURCHASER"), the undersigned parties hereby agree as follows:

Providing that Purchaser's inspections, as per the Property Condition/Inspection section on the agreement to purchase and sell referenced above, are satisfactory to Purchaser, Purchaser hereby agrees that THE FOLLOWING STATEMENT WILL BE MADE A PART OF THE ACT OF SALE AND SHALL NOT GO INTO EFFECT UNTIL THE ACT OF SALE.

It is expressly agreed that the immovable property herein conveyed and all improvements and component parts, plumbing, electrical systems, mechanical equipment, heating and air conditioning systems, built-in appliances, and all other items located hereon are conveyed by Seller and accepted by Purchaser "AS IS, WHERE IS," without any warranties of any kind whatsoever, even as to the metes and bounds, zoning, operation, or suitability of the property for the use intended by the Purchaser, without regard to the presence of apparent or hidden defects and with the Purchaser's full and complete waiver of any and all rights for the return of all or any part of the purchase price by reason of any such defects.

Purchaser acknowledges and declares that neither the Seller nor any party, whomsoever, acting or purporting to act in any capacity whatsoever on behalf of the Seller has made any direct, indirect, explicit or implicit statement, representation or declaration, whether by written or oral statement or otherwise, and upon which the Purchaser has relied, concerning the existence or non-existence of any quality, characteristic or condition of the property herein conveyed. Purchaser has had full, complete and unlimited access to the property herein conveyed for all tests and inspections which Purchaser, in Purchaser's sole discretion, deems sufficiently diligent for the protection of Purchaser's interests.

Purchaser expressly waives the warranty of fitness and the warranty against redhibitory vices and defects, whether apparent or latent, imposed by Louisiana Civil Code Articles 2520 through 2548, inclusive, and any other applicable state or federal law and the jurisprudence thereunder.

Purchaser also waives any rights Purchaser may have in redhibition to a return of the purchase price or to a reduction of the purchase price paid pursuant to Louisiana Civil Code Articles 2520 to 2548, inclusive, in connection with the property hereby conveyed to Purchaser by Seller. By Purchaser's signature, Purchaser expressly acknowledges all such waivers and Purchaser's exercise of Purchaser's right to waive warranty pursuant to Louisiana Civil Code Article 2520 and 2548, inclusive.

The herein agreement, upon its execution by both Purchaser and Seller, is herewith made an integral part of the aforementioned Agreement to Purchase and Sell.

_____    _____    _____ 6-30-10 6:00 pm
PURCHASER                DATE/TIME        SELLER  *DANIEL CARTER*   DATE/TIME

_____    _____    _____
PURCHASER                DATE/TIME        SELLER  *AMY CARTER*      DATE/TIME

This form produced by: **Formulator ®**  800-499-9012

CARTER000037



The Standard Form (revised 10/01) of:
New Orleans Metropolitan Association of REALTORS ®, Inc.
Northshore Area Board of REALTORS ®
Saints Board of REALTORS ®

For exclusive use of REALTORS®
REALTOR® Boards provide this form as an aid,
and not as legal advice. REALTOR ® members
assume no responsibility for unauthorized use.

## Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards

☐ Target Housing Sale          ☐ Target Housing Rental or Lease

PROPERTY ADDRESS: _____ **261 W. ROBERT E. LEE** _____ **NEW ORLEANS, LA 70124** _____

**Lead Warning Statement for Target Housing Sales**
Every PURCHASER of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The SELLER of any interest in residential real property is required to provide the PURCHASER with any information on lead-based paint hazards from risk assessments or inspections in the SELLER'S possession and notify the PURCHASER of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.

**Lead Warning Statement for Target Housing Rentals and Leases**
Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not taken care of properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre- 1978 housing, Land- lords must disclose the presence of known lead-based paint and lead-based paint hazards in the dwelling. Tenants must also receive a Federally approved pamphlet on lead poisoning prevention.

**SELLER'S/LESSOR'S Disclosure (answer a and b and initial both)**
_____  _____  (a) Presence of lead-based paint and/or lead-based paint hazards (check one below):
☐ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).
_____
_____
☒ SELLER has no knowledge of lead-based paint and/or lead-based paint hazards in building.
_____  _____  (b) Records and reports available to the SELLER (check one below):
☐ SELLER has provided the PURCHASER with all available records and reports pertaining to lead-based paint and/or lead based-paint hazards in the housing (list documents below).
_____
_____
☒ SELLER has no reports or records pertaining to lead-based paint and/or lead based-paint hazards in the housing.

**PURCHASER'S Acknowledgment (answer c, d and e and initial all)**
**LESSEE'S Acknowledgment (answer c and d and initial both)**
_____  _____  (c) PURCHASER/LESSEE has received copies of all information listed above.
_____  _____  (d) PURCHASER/LESSEE has received the pamphlet "Protect Your Family From Lead in Your Home".
_____  _____  (e) PURCHASER has (check one below): (not required for LESSEE)
☐ Received a 10-calendar day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards;
☐ Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

**AGENT'S Acknowledgment (answer f and initial)**
_____  _____  (f) Agent has informed the SELLER/LESSOR of the SELLER'S/LESSOR'S obligations under 42 U.S.C. 4852(d) and is aware of his/her responsibility to ensure compliance.

**Certification of Accuracy**
The following parties have reviewed the information above and certify, to the best of their knowledge, that the information provided by the signatory is true and accurate.

_____     _____
SELLER/LESSOR      *AMY CARTER*      Date          PURCHASER/LESSEE      Date

_____     _____
SELLER/LESSOR      *DANIEL CARTER*   6-30-10       PURCHASER/LESSEE      Date
                                     Date

_____     _____
AGENT      *PHYLLIS STEVENS 6/30/10*   Date        AGENT      Date

This form produced by: **Formulator ®** 800-490-9612

Property Description (Address, City, State, Zip) _____ **261 W. ROBERT E. LEE** _____ **NEW ORLEANS, LA 70124** _____

## PROPERTY DISCLOSURE DOCUMENT FOR RESIDENTIAL REAL ESTATE

**Answer all questions to the best of your knowledge. Explain any "yes" answers fully at the end of each section.**

Y = yes          N= no          NK = no knowledge

### SECTION 1: LAND

(1) Lot size or acres  _40.6 X 120_

(2) Are there any servitudes/encroachments regarding the property, other than typical/customary utility servitudes, that would affect the use of the property?  ☐Y  ☒N  ☐NK

(3) Are there any rights vested in others? Check all that apply and explain at the end of this section.

| | | |
|---|---|---|
| Timber rights ☐Y ☒N ☐NK | Common driveway ☐Y ☒N ☐NK |
| Right of ingress or egress ☐Y ☒N ☐NK | Mineral rights ☐Y ☒N ☐NK |
| Right of way ☐Y ☒N ☐NK | Surface rights ☐Y ☒N ☐NK |
| Right of access ☐Y ☒N ☐NK | Air rights ☐Y ☒N ☐NK |
| Servitude of passage ☐Y ☒N ☐NK | Usufruct ☐Y ☒N ☐NK |
| Servitude of drainage ☐Y ☒N ☐NK | Other _____ ☐Y ☒N ☐NK |

(4) Has any part of the property been determined a wetland by the United States Army Corps of Engineers under §404 of the Clean Water Act?  ☐Y  ☒N  ☐NK    (a) Is such a determination pending ☐Y  ☒N  ☐NK

(b) What date was determination made? _____

> The Clean Water Act is a federal law that protects the wetlands of the United States. Section 404 of the Act contains permit requirements for altering or building on property that has been determined a wetland by the Army Corps of Engineers. The Corps may assess a fee to the **SELLER** or **PURCHASER** of a property for this determination. A property that has been determined a wetland may result in additional costs for a Section 404 permit. Documentation is attached and becomes a part of this property disclosure if the property described herein has been determined a wetland by the Corps.

(5) Has any flooding, water intrusion, accumulation, or drainage problem been experienced with respect to the land? If yes, indicate the nature and frequency of the defect at the end of this section.  ☒Y  ☐N  ☐NK

(6) What is/are the flood zone classification(s) of the property?  _A3_ _____ (a) What is the source and date of this information? Check all those that apply ☐Survey/Date _____ ☐Flood Elevation Certificate/Date _1/9/09_

☐Flood Insurance Policy/Date _____ ☐Other _____ /Date _____   (b) Does SELLER have a flood elevation certificate in SELLER'S possession that will be shared with BUYER?  ☒Y  ☐N  ☐NK

(7) If the property is mortgaged, did the lender require you to buy flood insurance?  N/A  ☐Y  ☐N  ☐NK

Question Number          Explanation of "Yes" answers          ☐Additional sheet is attached

_4) PROPERTY FLOODED IN KATRINA 2005 (LEVEE BROKE)_
_5' WATER_
_____
_____

### SECTION TWO: TERMITES, WOOD-DESTROYING INSECTS AND ORGANISMS

(8) Has the property ever had termites or other wood-destroying insects or organisms?  ☐Y  ☒N  ☐NK

(9) Was there any damage to the property?  ☐Y  ☒N  ☐NK

(10) Was the damage repaired?  N/A  ☐Y  ☒N  ☐NK

(11) Is the property currently under a termite contract?  ☐Y  ☒N  ☐NK

(a) Name of company _____  (b) Date contract expires _____

(c) List any structures not covered by contract _____

Question Number          Explanation of "Yes" answers          ☐Additional sheet is attached

_____
_____
_____
_____

### SECTION 3: STRUCTURE

(12) Are there any defects regarding the following? Check all that apply and explain at the end of this section.

| | | |
|---|---|---|
| Roof ☐Y ☒N ☐NK | Ceilings ☐Y ☒N ☐NK |
| Interior walls ☐Y ☒N ☐NK | Exterior walls ☐Y ☒N ☐NK |
| Floor ☐Y ☒N ☐NK | Foundation ☐Y ☒N ☐NK |
| Attic spaces ☐Y ☒N ☐NK | Basement ☐Y ☐N ☐NK |
| Porches ☐Y ☒N ☐NK | Overhangs ☐Y ☒N ☐NK |
| Steps/Stairways ☐Y ☒N ☐NK | Railings ☐Y ☒N ☐NK |
| Pool ☐Y ☐N ☐NK | Spa ☐Y ☐N ☐NK |
| Decks ☐Y ☒N ☐NK | Patios ☐Y ☒N ☐NK |
| Windows ☐Y ☒N ☐NK | Other _____ ☐Y ☐N ☐NK |

LREC REV 01/01/10          Seller's Initials: _____          Purchaser's Initials: _____ _____          1 of 3

This form produced by: **Formulator** ©  800-499-0612

Property Description (Address, City, State, Zip) _____ **261 W. ROBERT E. LEE** _____ **NEW ORLEANS, LA 70124** _____

**Y = YES     N= NO     NK = NO KNOWLEDGE**

(13) Has any structure on the property ever taken water by flooding (rising water or otherwise)? If yes, give the nature and frequency of the defect at the end of this section.   ☒Y   ☐N   ☐NK

(14) What is the approximate age of all structures on the property? Main structure _11 YRS_ Other structures _1 YR_

---

| **SELLER** must complete and provide the **"Disclosure on Lead-Based Paint and Lead-Based Paint Hazard Addendum"** that is included with this property disclosure if any structure was built before 1978. |
| --- |

(15) What is the approximate age of the roof of each structure?  Main structure _4 YRS_ Other structures _1 YR_

(16) Does the property contain exterior insulation and finish system (EIFS) or other synthetic stucco?   ☐Y   ☒N   ☐NK

(17) What is the approximate square footage of the living area of each structure on the property? Include the source of this information. Square footage of _LIVING_ is _2180_ square feet. Source _APPRAISAL_
Square footage of _TOTAL_ is _2800_ square feet. Source _____

Question Number          Explanation of "Yes" answers      ☐ Additional sheet is attached
_____
_____
_____

---

## SECTION 4: PLUMBING, WATER, GAS, AND SEWERAGE

(18) Are there any defects with the plumbing system?   ☐Y   ☒N   ☐NK
(19) Are there any defects with the water piping?   ☐Y   ☒N   ☐NK
  (a) Are there any defects with the water quality, quantity, or pressure?   ☐Y   ☒N   ☐NK
  (b) The water is supplied by:  ☒ Municipality  ☐ Private utility  ☐ On-site system  ☐ Shared well system  ☐ None
  (c) If there is a well, when was the last time the water was tested?  Date _____  Results_____
(20) Is there gas service available to the property/structure?   ☒Y   ☐N   ☐NK
  (a) If yes, what type?  ☐ Butane  ☒ Natural  ☐ Propane
  (b) If yes, are there any defects with it?   ☐Y   ☒N   ☐NK
(21) Are there defects with any water heater?   ☐Y   ☒N   ☐NK
  (a) Age of Unit 1 _11 YRS_ ☒ Gas  ☐ Electric.   (b) Age of Unit 2 _____  ☐ Gas  ☐ Electric
(22) The sewerage service is supplied by:  ☒ Municipality  ☐ Other  ☐ NK

---

| **SELLER** must provide the attached **"Disclosure of Information about Residential Sewage Treatment Systems Addendum"** if the property described herein is not served by a municipality waste treatment. |
| --- |

Question Number          Explanation of "Yes" answers      ☐ Additional sheet is attached
_____
_____
_____

---

## SECTION 5: ELECTRICAL, HEATING AND COOLING, APPLIANCES

For major repairs or replacements relative to Section 5, list the date and nature of the repair or replaced component at the end of the section.
(23) Are there any defects with the electrical system?   ☐Y   ☒N   ☐NK
(24) Are there any defects with the heating or cooling systems?   ☐Y   ☒N   ☐NK
(25) What type of cooling system is installed?  ☒ Central  ☐ Window unit  ☐ Other
  (a) Source: ☒ Electric  ☐ Gas  ☐ Heat pump  ☐ Other
(26) What type of heating system is installed?  ☒ Central  ☐ Window unit  ☐ Other
  (a) Source: ☐ Electric  ☒ Gas  ☐ Heat pump  ☐ Other
(27) If a fireplace exists, is it working?   ☒Y   ☐N   ☐NK
  (a) What type is it?  ☒ Gas  ☐ Wood  ☐ Vented  ☒ Ventless  ☐ Electric  ☐ Other
(28) Are there any defects in any permanently installed or built-in appliances?   ☐Y   ☒N   ☐NK

Question Number          Explanation of "Yes" answers      ☐ Additional sheet is attached
_____
_____
_____

LREC Rev 01/01/10          Seller's Initials: _____          Purchaser's Initials: _____ _____          2 of 3

This form produced by: **Formulator ®**  800-499-9612

CARTER000040

Property Description (Address, City, State, Zip) _____ **261 W. ROBERT E. LEE** _____ **NEW ORLEANS, LA 70124** _____

Y = YES     N= NO     NK = NO KNOWLEDGE

**SECTION 6: MISCELLANEOUS**

(29) Has there been property damage related to the land or the improvements thereon, including, but not limited to, fire, windstorm, flood, hail, lightning, or other property damage? ☒Y ☐N ☐NK
   (a) If yes, were all related property damages, defects, and/or conditions repaired? ☒Y ☐N ☐NK
(30) What is the zoning of the property? _____ RESIDENTIAL _____
   (a) Has it ever been zoned for commercial or industrial? ☐Y ☒N ☐NK
   (b) Is the property located in an historic district? ☐Y ☒N ☐NK
(31) Does the property and its present usage conflict with current zoning, building, and/or safety restrictions? ☐Y ☒N ☐NK
(32) Are there any current or pending assessments, dues, liens, taxes owing on the property? ☐Y ☒N ☐NK
   (a) Is membership in a homeowners' association (HOA), condominium owners' association (COA), or property owners' association (POA) required as the result of owning this property? ☐Y ☒N ☐NK
   (b) Are any HOA, COA, or POA dues required? ☐Y ☒N ☐NK
   (c) If yes, what is the amount? $_____ per _____
   (d) Are there any pending special assessments? ☐Y ☒N ☐NK
   (e) If yes, what is the amount? $_____ per _____

> **Any information contained in this property disclosure regarding homeowners' associations (HOA), condominium owners' associations (COA), or property owners' associations (POA) is summary in nature. The covenants and association governing documents are a matter of public record and can be obtained from the conveyance records on file at the Clerk of Court in the parish where the property is located.**

(33) Were any additions or alterations made to the property? ☒Y ☐N ☐NK
   (a) If yes, were the necessary permits and inspections obtained for all additions or alterations? ☒Y ☐Y ☐NK
(35) Is there a homestead exemption in effect? ☐Y ☒Y ☐NK
(35) Is there high speed Internet access available to the property? ☒Y ☐N ☐NK
(36) Is there any pending litigation regarding the property? ☐Y ☒N ☐NK
(37) Does the property or any of its structures contain any of the following? Check all those that apply and provide the nature and frequency at the end of this section.

| | | | | | | |
|---|---|---|---|---|---|---|
| Asbestos | ☐Y ☒N ☐NK | | Formaldehyde | ☐Y ☒N ☐NK | |
| Radon gas | ☐Y ☒N ☐NK | | Chemical storage tanks | ☐Y ☒N ☐NK | |
| Contaminated soil | ☐Y ☒N ☐NK | | Contaminated water | ☐Y ☒N ☐NK | |
| Hazardous waste | ☐Y ☒N ☐NK | | Toxic Mold | ☐Y ☒N ☐NK | |
| Mold/Mildew | ☐Y ☒N ☐NK | | Pets | ☐Y ☒N ☐NK | |
| Electromagnetic fields | ☐Y ☒N ☐NK | | Crystal meth exposure | ☐Y ☒N ☐NK | |
| Other adverse materials or conditions | ☐Y ☐N ☐NK | | Contaminated drywall/sheetrock | ☐Y ☒N ☐NK | |

Question Number    Explanation of "Yes" answers   ☐ Additional sheet is attached

House HAD CHINESE DRYWALL - ENTIRE 1st FLOOR + MASTER - BED ROOM CEILING GUTTED. "AIR QUALITY TESTS COMPARABLE TO HOMES THAT DID NOT HAVE CHINESE DRYWALL." REPORT OF BARMAR ASSESSMENT SERVICES DATED 6/30/10 AVAILABLE.

**ACKNOWLEDGEMENTS**

I/We attest that the above statements and explanations have been provided by me/us and are true and correct to the best of my/our knowledge. (If either party is represented by a real estate licensee, your signature below acknowledges that you have been informed of your duties and rights under LSA-R.S. 9:3195-3199 and have read and understand the informational statement.)

Seller(s) acknowledge(s) that the information contained herein is current as of this date.

Seller (sign) _____ (print) **DANIEL CARTER**     Date ___**6/30/10**___ Time _6:20_

Seller (sign) _____ (print) **AMY CARTER**     Date ___**6/30/10**___ Time _6:30_

Purchaser(s) signing below acknowledge(s) receipt of this property disclosure.

Purchaser (sign) _____ (print) _____     Date _____ Time _____

Purchaser (sign) _____ (print) _____     Date _____ Time _____

This form produced by: **Formulator** ® 800-499-9612

CARTER000041



# AGENCY DISCLOSURE FORM

**This document describes the various types of agency relationships that can exist in real estate transactions.**

An **Agency** relationship exists when a real estate licensee represents a client in an immovable property transaction. A client is anyone who engages a licensee for professional advice and service as their agent. Agency relationships can be formed with Buyer/Lessees or Sellers/Lessors or both.

**Designated Agency** results from a contractual relationship between a broker and a client when a licensee affiliated with a broker is designated by the broker to represent the client. The licensee appointed by the broker to represent the client is called a Designated Agent. There is a presumption that the licensee with whom a client works is his or her Designated Agent, unless there is a written agreement to the contrary. Other licensees employed by the broker do not work for the client, so the client should confine his or her discussions to their Designated Agent. Designated Agents must (1) obey all lawful requests of the client, (2) promote the client's best interest, (3) exercise reasonable care and skill in representing the client, (4) maintain the confidentiality of all information that could materially harm the client's negotiation position, (5) present all offers in a timely manner, (6) seek a transaction at the price and on terms acceptable to the client, and (7) account for all money and property received from the client in a timely manner. A Designated Agent may show alternate properties to buyers, show properties the client is interested in to other buyer clients or receive compensation based on a percentage of the sale price without breaching the duty he or she owes to a client.

**Dual Agency** exists when a licensee is working with both the buyer and seller or both the landlord and tenant in the same transaction. For example, if your Designated Agent is also the listing agent, dual agency exists. Dual agency is allowed only with the informed consent of all clients. Informed consent is presumed if a client signs the separate Dual Agency Disclosure form prescribed by the Louisiana Real Estate Commission. Dual Agents owe the following duties to both the buyer/seller and the lessor/lessee: (1) treat all clients honestly, (2) provide information about the property to buyers/tenants, (3) disclose all latent material defects in the property known to the licensee, (4) disclose financial qualifications of buyers/tenants to sellers/landlords, (5) explain real estate terms, (6) help buyers/tenants arrange for property inspections, (7) explain closing costs and procedures, (8) help buyers compare financing options, and (9) provide information about comparable properties that have been sold so both clients can make educated buying/selling decisions. Dual Agents are not permitted to disclose (1) confidential information of one client to the other, (2) the price the seller/landlord will take other than the listing price without the permission of the seller/landlord, or (3) the price the buyer/tenant is willing to pay without the permission of the buyer/tenant.

**Confidential information** is information that could materially harm the position of a client if disclosed. Confidential information does not include material information about the physical condition of property. Thus, a licensee may disclose material information about the condition of property and in fact has a duty to disclose known material defects regarding the condition of property. It is permissible for confidential information to be disclosed by a Designated Agent to his or her broker for the purpose of seeking advice or assistance for the benefit of the client. Information that would otherwise be confidential will no longer be confidential if (1) the client permits disclosure of such information by word or conduct, (2) disclosure of such information is required by law or would reveal serious defect, or (3) the information becomes public from a source other than the licensee.

**By signing below you acknowledge that you have read and understand this form and that you are authorized to sign this form in the capacity in which you have signed.**

Seller/Lessor: _____          Buyer/Lessee: _____

*DANIEL CARTER*

By: _____          By: _____

*AMY CARTER*

Title: _____          Title: _____
Date: _____6/30/10_____          Date: _____
Licensee: _____          Licensee: _____
Date: _____6/30/10_____          Date: _____

*PHYLLIS STEVENS*

Agency Form 12.02

This form produced by **Formulator ®**   800-492-9512



**·L·R·E·C·**
Louisiana
Real Estate
Commission



EQUAL HOUSING
OPPORTUNITY

## DISCLOSURE AND CONSENT TO DUAL AGENT
### DESIGNATED AGENCY

This document serves three purposes:

- It discloses that a real estate licensee may potentially act as a disclosed dual agent who represents more than one party to the transaction.
- It explains the concept of disclosed dual agency.
- It seeks your consent to allow the real estate agent to act as a disclosed dual agent.

A LICENSEE MAY LEGALLY ACT AS A DUAL AGENT ONLY WITH YOUR CONSENT. BY CHOOSING TO SIGN THIS DOCUMENT, YOUR CONSENT TO DUAL AGENCY REPRESENTATION IS PRESUMED. BEFORE SIGNING THIS DOCUMENT, PLEASE READ THE FOLLOWING:

The undersigned designated agent(s) _____ *PHYLLIS STEVENS & RE/MAX AFFILIATES*
<div align="center">(insert name(s) of licensee(s) undertaking dual representation)</div>

and any subsequent designated agent(s) may undertake a dual representation (represent both the buyer (or lessee) and the seller (or lessor) for the sale or lease of property described as *261 W. ROERT E LEE,NEW ORLEANS, LA70124* .
<div align="center">(List address of property, if known)</div>

The undersigned buyer (or lessee) and seller (or lessor) acknowledge that they were informed of the possibility of this type of representation. The licensee(s) will undertake this representation only with the written consent of ALL clients in the transaction.

Any agreement between the clients as to a final contract price and other terms is a result of negotiations between the clients acting in their own best interests and on their own behalf. The undersigned buyer (or lessee) and seller (or lessor) acknowledge that the licensee(s) has explained the implications of dual representation, including the risks involved- The undersigned buyer (or lessee) and seller (or lessor) acknowledge that they have been advised to seek independent advice from their advisors or attorneys before signing any documents in this transaction.

### WHAT A LICENSEE CAN DO FOR CLIENTS WHEN ACTING AS A DUAL AGENT

- Treat all clients honestly.
- Provide information about the property to the buyer (or lessee).
- Disclose all latent material defects in the property that are known to the licensee(s).
- Disclose financial qualifications of the buyer (or lessee) to the seller (or lessor).
- Explain real estate terms.
- Help the buyer (or lessee) to arrange for property inspections.
- Explain closing costs and procedures.
- Help the buyer compare financing alternatives.
- Provide information about comparable properties that have sold so that both clients may make educated decisions on what price to accept or offer .

### WHAT A LICENSEE CANNOT DISCLOSE TO CLIENTS WHEN ACTING AS A DUAL AGENT

- Confidential information that the licensee may know about the clients, without that client's permission.
- The price the seller (or lessor) will take other than the listing price without permission of the seller (or lessor).
- The price the buyer (or lessee) is willing to pay without permission of the buyer (or lessee).

You are not required to sign this document unless you want to allow the licensee(s) to proceed as a dual agent(s), representing BOTH the buyer (or lessee) and the seller (or lessor) in this transaction. If you do not want the licensee(s) to proceed as a dual agent(s) and do not want to sign this document, please inform the licensee(s).

By signing below, you acknowledge that you have read and understand this form and voluntarily consent to the licensee(s)  acting as a dual agent(s ), representing BOTH the buyer (or lessee) and the seller (or lessor) should that become necessary.

_____
Buyer or Lessee

_____
Date

_____
Buyer or Lessee

_____
Date

_____
Licensee

_____
Date

_____
Seller or Lessor          *DANIEL CARTER*

_____ *6/30/10*
Date

_____
Seller or Lessor          *AMY CARTER*

_____ *6/30/10*
Date

_____
Licensee          *PHYLLIS STEVENS*

_____ *6/30/10*
Date

DDA 1/98

This form produced by: **Formulator** ®   800-499-9612

CARTER000043

YOUR
COPY

 

The Standard Form (revised 12/07) of:
New Orleans Metropolitan Association of REALTORS®, Inc
Northshore Area Board of REALTORS®
Saints Board of REALTORS®

For exclusive use of REALTORS®
REALTOR® Boards provide this form as an aid,
and not as legal advice. REALTOR® members
assume no responsibility for unauthorized use.

## EXTENSION
### OFFER TO PURCHASE
### PROPERTY INSPECTION
### LOAN APPROVAL/ACT OF SALE

1) RE: 261 W ROBERT E. LEE BLVD.
2)     NEW ORLEANS, LA. 70124
3)
4) AGREEMENT TO PURCHASE Dated: SEPT. 01, 2010
5)

| 6) | **OFFER TO PURCHASE** |
| 7) | This is to authorize you to extend my "OFFER TO PURCHASE" on |
| 8) | subject property from _____ to: date _____ time _____ |
| 9) | _____ (A.M.) (P.M.). The offer remains binding and irrevocable until the date and time set |
| 10) | forth above of this Addendum.  All other terms and conditions contained within the Agreement remain |
| 11) | unchanged. |
| 12) | Purchaser(s) Initials _____   _____ |
| 13) | Seller(s) Initials _____   _____ |

| 14) | **PROPERTY INSPECTION** |
| 15) | Purchaser's inspection period is hereby extended to 09/20/10  OR BEFORE. |
| 16) | Purchaser(s) Initials X YSC   x Avo |
| 17) | Seller(s) Initials _____   _____ |

| 18) | **LOAN APPROVAL/ACT OF SALE** |
| 19) | The above referenced Agreement to Purchase is hereby amended so that the time within which to |
| 20) | obtain a loan secured by a mortgage against said property is extended to |
| 21) | _____ |
| 22) | |
| 23) | Time for passing the Act of Sale is extended to be on _____ |
| 24) | Purchaser(s) Initials _____   _____ |
| 25) | Seller(s) Initials _____   _____ |

26)
27) We further agree that all other terms and conditions of said Agreement to Purchase are to remain in full
28) force and effect.
29)
30) X _____     x _____
31) Sign (Buyer)(Seller) Full Name      Date     Sign (Buyer)(Seller)  Full Name     Date
32)
33)
34) Print (Buyer)(Seller) Full Name      Print (Buyer)(Seller)  Full Name

NOMAR 12/13/07



EXHIBIT
I

CARTER000044

| RE/MAX AFFILIATES | | | | KELLER WILLIAMS REALTY 4550100 | | |
|---|---|---|---|---|---|---|
| Listing Firm | | | | Selling Firm | | |
| PHYLLIS STEVENS | | | LI | CHARO DIAZ | | |
| Seller's Designated Agent | | | Dual Agent | Buyer's Designated Agent | | |
| 812-9009 | 834-3221 | 834-8623 | | 220-9424 | 455-0100 | 455-0322 |
| Phone Number | Office | Fax | | Phone Number | Office | Fax |
| PHYLLISSTEVENS@REMAX.NET | | | | CHAROD@KW.COM | | |
| Email Address | | | | Email Address | | |
| PHYLLIS STEVENS | | | | THURSDAY | 09/01/10 | 4:00 | PM |
| Delivered by Designated Agent to | | | | Day | Date | Time | AM/PM |
| Comments | | | | | | |
| Received by Designated Listing Agent | | | | Day | Date | Time | AM/PM |

## LOUISIANA RESIDENTIAL AGREEMENT TO BUY OR SELL

Date: _____ SEPTEMBER 01, 2010

PROPERTY DESCRIPTION: I/We offer and agree to Buy/Sell the property at:
(Municipal Address) _____ 261 W. ROBERT E. LEE BLVD.
City _____ NEW ORLEANS _____ , Zip _____ 70124 _____ ; Parish _____ ORLEANS _____ , Louisiana.
(Legal Description) N/A

on lands and grounds measuring approximately _____ 40.5 X 120
or as per record title; including all buildings, structures, component parts, and all installed, built-in, permanently
attached improvements, together with all fences, security systems, all installed speakers or installed sound
systems, all landscaping, all outside TV antennas, all satellite dishes, all installed and/or built-in appliances, all
ceiling fans, all air conditioning or heating systems including window units, all bathroom mirrors, all window
coverings, blinds and associated hardware, all shutters, all flooring, all carpeting, all cabinet tops, all cabinet
knobs or handles, all doors, all door knobs or handles, all windows, all roofing, all electrical systems, and all
installed lighting fixtures, chandeliers and associated hardware, other constructions permanently attached to the
ground. If owned by the SELLER prior to date of this Agreement, standing timber, unharvested crops and
ungathered fruits of trees on the property shall be conveyed to the BUYER. The following movable items here
remain with the property, but are not to be considered as part of the Sale Price and have no value: ALL
KITCHEN APPLIANCES, WASHER AND DRYER, AND ALL IMPROVEMENTS MADE TO THE HOUSE AND
LAND.
All items listed herein are included in the property sold no matter how they are attached or installed, provided that
any or all of these items are in place at the time of signing of this Agreement to Buy or Sell (the
"Agreement"), unless otherwise stated herein. (All of the above contained in lines 5 through 22 are collectively
referred to herein as the "Property.") The following items are excluded from the Property sold:
NOTHING.

MINERAL RIGHTS: If SELLER transfers any mineral rights, they are to be transferred without warranty.
_____ 0 _____ % mineral rights owned by SELLER are to be reserved by SELLER and the SELLER shall waive any
right to use the surface for any such reserved mineral activity or use.

PRICE: The Property will be sold and purchased subject to title and zoning restrictions, servitudes of record, and
law or ordinances affecting the Property for the sum of THREE HUNDRED THOUSAND DOLLARS---------
_____ Dollars ($ _____ 300,000.00 _____ ) (the "Sale Price").

ACT OF SALE: The Act of Sale is to be executed before a settlement agent or Notary Public to be chosen by
BUYER, on _____ OCTOBER 08 _____ , 20 10 , or before if mutually agreed upon. At closing, BUYER
must provide "good funds" if required by Louisiana statute LA R.S. 22:2092.2 et seq. Any change of the date for
execution of the Act of Sale must be mutually agreed upon in writing and signed by SELLER and BUYER.
Security deposits and keys are to be transferred to BUYER at Act of Sale.

BUYER'S Initials _____ _____          Page 1 of 7          SELLER'S Initials _____ _____

ABS Rev. 01/01/10

this form produced by: **Formulator** ®   012-405-8912



2631 W. ROBERT E. LEE BLVD.                          NEW ORLEANS, LA. 70124
Property address, street, city, state, zip

44   OCCUPANCY: Occupancy/possession is to be granted at Act of Sale unless mutually agreed upon in writing.
45
46   CONTINGENCY FOR SALE OF BUYER'S OTHER PROPERTY: ☐ This sale is contingent on the sale of other
47   property by the BUYER and the attached contingency clause addendum shall apply.  ☒  This sale is not
48   contingent upon the sale of other property by the BUYER nor is the loan needed by the BUYER to obtain the Sale
49   Price contingent on the BUYER'S sale of any property.
50
51   ☐ ALL CASH SALE: BUYER warrants he has cash readily available to close the sale of this property.
52
53   ☒ FINANCED SALE: This sale is conditioned upon the ability of BUYER to borrow with this Property as security
54   for the loan the sum of $_____N/A_____ or ____90____ % of the Sale
55   Price by a mortgage loan or loans at an initial interest rate not to exceed ___4.6___ % per annum, interest and
56   principal, amortized over a period of not less than ___30___ years, payable in monthly installments or on any other
57   terms as may be acceptable to BUYER provided that these terms do not increase the cost, fees or expenses to
58   SELLER. Fees paid by SELLER that are required by lender, if any, shall not exceed
59   $_____N/A_____ BUYER agrees to pay discount points not to exceed ___N/A___ % of the loan amount.
60   Other financing conditions: N/A
61   _____
62   _____
63
64   In the event BUYER is not able to secure financing, SELLER reserves the right to provide all or part of mortgage
65   loan(s) under the terms set forth above. The BUYER acknowledges and warrants that he has available the funds
66   which may be required to complete the sale of this Property including, but not limited to, the deposit, the down
67   payment, closing costs, pre-paid items, and other expenses. BUYER agrees to make good faith application, which
68   includes ordering an appraisal and credit report if required for loan approval, within ___N/A___ calendar days after
69   acceptance of this offer or any counteroffer. Written proof from the lender that the application has been made
70   shall be supplied by BUYER to the SELLER. Written commitment by the lender to make loan(s), without
71   contingencies except subject to approval of title and other contingencies normally imposed by lender executing
72   ordering appraisal and credit report, shall be obtained by BUYER and shall constitute final loan approval. Final
73   loan approval shall be obtained on or prior to ___OCTOBER 04, 2010___. Any extension of this date shall be in
74   writing and shall be signed by all parties. BUYER authorizes and instructs lender to release to SELLER or
75   SELLER'S Broker or Designated Agent, written verification of the loan application and final loan approval.
76
77   APPRAISAL: ☐ This sale is NOT conditioned on appraisal ☒ This sale IS conditioned on the appraisal of the
78   Property being not less than the Sale Price. If the appraised value of the Property is equal to or greater than the
79   Sale Price, the BUYER shall pay the Sale Price agreed upon prior to the appraisal. If the appraised value is less
80   than the Sale Price, BUYER shall immediately provide written notification to SELLER of appraised value and
81   BUYER'S request for SELLER to reduce the Sale Price. Within _____THREE_____ (__3__) calendar
82   days after SELLER'S receipt of such written notification of the appraised value, BUYER shall have the option to
83   pay the Sale Price agreed upon prior to the appraisal or to void this Agreement unless SELLER agrees in writing
84   to reduce the Sale Price to the appraised value or all parties agree to a new Sale Price.
85
86   DEPOSIT: Upon acceptance of this offer, SELLER and BUYER shall be bound by all terms and conditions of this
87   Agreement, and BUYER or BUYER'S agent will deliver immediately upon notice of acceptance of the offer a
88   deposit (the "Deposit") in the amount of $ 1,000.00 ONE THOUSAND or ___N/A___ % of the Sale Price to be
89   paid in the forms of:
90   ☐ Cash $_____
91   ☒ Check $____1,000.00 BY PERSONAL CHECK____
92   ☐ Promissory Note $_____
93   The Deposit shall be held by _____RE/MAX AFFILIATES_____
94
95   Failure to deliver the Deposit shall be considered a default of this Agreement. If the Deposit is held by a Broker, it
96   must be held in accordance with the rules of the Louisiana Real Estate Commission in a federally insured banking
97   or savings and loan institution without responsibility on the part of the Broker in the case of failure or suspension
98   of such institution. In the event the parties fail to execute an Act of Sale by date specified herein, and/or a dispute
99   arises as to ownership of, or entitlement to, the Deposit or funds held in escrow, the Broker shall abide by the
100  Rules and Regulations set forth by the Louisiana Real Estate Commission governing such matters.
101
102  RETURN OF DEPOSIT: The Deposit shall be returned to the BUYER and this Agreement declared null and void
103  without demand in consequence of the following events:


BUYER'S Initials  _AJC_  _YL_          Page 2 of 7          SELLER'S Initials  _SS_  _ML_

ABS Rev. 01/01/10

This form prepared by: Formulator ® 800-499-9612




<u>261 W. ROBERT E. LEE BLVD.</u>                              <u>NEW ORLEANS, LA. 70124</u>
Property address, street, city, state, zip

104  1) If this Agreement is declared null and void by BUYER during the inspection period as set forth in lines 144
105  through 159 of this Agreement;
106

107  2) If this Agreement is subject to BUYER'S ability to obtain a loan and the loan is not obtained by the date set
108  forth in lines 67 through 73 of this Agreement but only if the BUYER has made timely application for the loan and
109  made good faith efforts to obtain the loan;
110

111  3) If the BUYER conditions the Sale Price on an appraisal and the appraisal is less than the Sale Price and the
112  SELLER will not reduce the Sale Price as set forth in lines 77 through 84 of this Agreement;
113

114  4) If the BUYER does not accept the leases or special assessments as set forth in lines 120 through 124 of this
115  Agreement;
116

117  5) If the SELLER is unable to timely deliver to the BUYER an approved sewerage and/or water inspection report
118  as set forth in lines 161 through 167.
119

120  **LEASES/SPECIAL ASSESSMENTS:** The sale is conditioned upon BUYER'S receipt of a copy of all written
121  leases, excluding mineral leases, and unpaid special assessments from SELLER within five (5) calendar days of
122  acceptance of the Agreement. Special assessments shall mean an assessment levied on Property to pay the cost
123  of local improvements. BUYER will have five (5) calendar days after receipt of the aforementioned documents to
124  notify SELLER whether they are acceptable to BUYER.
125

126  **INSPECTION AND DUE DILIGENCE:** BUYER ACKNOWLEDGES THAT THE SALE PRICE OF THE
127  PROPERTY WAS NEGOTIATED BASED UPON THE PROPERTY'S APPARENT CURRENT CONDITION;
128  ACCORDINGLY, SELLER IS NOT OBLIGATED TO MAKE REPAIRS TO THE PROPERTY, INCLUDING
129  REPAIRS REQUIRED BY THE LENDER UNLESS OTHERWISE STATED HEREIN. THE SELLER IS
130  RESPONSIBLE FOR MAINTAINING THE PROPERTY IN SUBSTANTIALLY THE SAME OR BETTER
131  CONDITION AS IT WAS WHEN THE AGREEMENT WAS FULLY EXECUTED.
132

133  BUYER shall have an inspection period of ( 10 ) calendar days, commencing the first day after acceptance of
134  this Agreement wherein, BUYER may, at BUYER's expense, have any inspections made by experts or others of
135  his choosing. Such inspections may include, but are not limited to, inspections for termites and other wood
136  destroying insects, and/or damage from same, molds, and fungi hazards, and analysis of synthetic stucco,
137  appliances, structures, foundations, roof, heating, cooling, electrical, plumbing systems, utility and sewer
138  availability and condition, out-buildings, square footage, school district, flood zone classifications, current zoning
139  and/or subdivision restrictive covenants and any items addressed in the SELLER's Property Disclosure
140  Document. All testing shall be nondestructive testing. SELLER agrees to provide the utilities for inspections and
141  immediate access. If BUYER is not satisfied with the condition of the Property the BUYER may choose one of the
142  following options within the inspection period:
143

144  **Option 1:** BUYER may elect, in writing, to terminate the Agreement and declare the Agreement null and void; or
145  **Option 2:** BUYER may indicate in writing the deficiencies and desired remedies and SELLER will within seventy
146  two (72) hours respond in writing as to SELLER's willingness to remedy those deficiencies ("SELLER's
147  Response").
148

149  Should SELLER in the SELLER'S Response refuse to remedy any or all of the deficiencies listed by the BUYER,
150  then BUYER shall have seventy-two (72) hours from the date of SELLER's Response or seventy two (72) hours
151  from the date that SELLER's Response was due, whichever is earlier, to: (a) accept SELLER'S Response to
152  BUYER's written requests or (b) accept the Property in its current condition, or (c) to elect to terminate this
153  Agreement. BUYER'S response shall be in writing. Should BUYER fail to respond to the SELLER's Response
154  by the time specified or BUYER'S electing, in writing, to terminate this Agreement, the Agreement shall be
155  automatically, with no further action required by either party, ipso facto null and void except for return of Deposit
156  to the BUYER. FAILURE TO MAKE INSPECTIONS OR TO GIVE WRITTEN NOTICE OF DEFICIENCIES AND
157  DESIRED REMEDIES TO SELLER (OR SELLER'S DESIGNATED AGENT) AS SET FORTH IN LINES 132
158  THROUGH 138 WITHIN THE INSPECTION PERIOD SHALL BE DEEMED AS ACCEPTANCE BY BUYER OF
159  THE PROPERTY'S CURRENT CONDITION.
160

161  PRIVATE WATER/SEWERAGE: In the event **there is a private water system or private sewerage system on**
162  **the Property, the SELLER shall provide, at SELLER's expense, approval by the appropriate governmental**
163  **entity of the private water or sewerage system. An approved sewerage and/or water inspection report will**
164  **be issued within thirty (30) days prior to the Act of Sale by the appropriate governmental agency. The**
165  **approved inspection and test on the water and/or sewerage system are to be furnished and paid for by**
166  **the SELLER. Any private water system or private sewerage system repairs necessary to obtain approved**
167  **inspection certificate will be paid by SELLER.**

BUYER'S Initials _AJC_  _IKP_          Page 3 of 7          SELLER'S Initials ___  ___

 

CARTER000047

251 W. ROBERT E. LEE BLVD.                    NEW ORLEANS, LA. 70124
Property address, street, city, state, zip

168  HOME SERVICE/WARRANTY: A home service/warranty plan ☒ will ☐ will not be purchased at the closing of
169  sale at a cost not to exceed $_____ 410.00 _____ to be paid by ☐ BUYER, ☒ SELLER,
170  ☐ Neither, and ordered by _____ BUYER'S AGENT _____. It is understood that Agent/Broker may receive
171  compensation from the home warranty company for actual services performed. The home service warranty plan
172  does not warrant pre-existing defects and options, and does not supersede or replace any other inspection
173  clause or responsibilities. If neither BUYER nor SELLER accepts the home service warranty plan, they declare
174  that they have been made aware of the existence of such a plan, and further declare that they hold the Broker
175  and Agents harmless from any responsibility or liability due to their rejection of such a plan.

176  WARRANTY OR AS IS CLAUSE WITH WAIVER OF RIGHT OF REDHIBITION: (CHECK ONE ONLY)
177  ☐ A. SALE WITH WARRANTIES: SELLER and BUYER acknowledge that this sale shall be with full SELLER
178  warranties as to any claims or causes of action including but not limited to redhibition pursuant to Louisiana Civil
179  Code Article 2520, et seq. and Article 2541, et seq.
180
181  ☒ B. SALE "AS IS" WITHOUT WARRANTIES: SELLER and BUYER hereby acknowledge and recognize that the
182  Property being sold and purchased is to be transferred in "as is" condition and further BUYER does hereby waive,
183  relieve and release SELLER from any claims or causes of action for redhibition pursuant to Louisiana Civil Code
184  Article 2520, et seq. and Article 2541, et seq. or for reduction of Sale Price pursuant to Louisiana Civil Code
185  Article 2541, et seq. Additionally, BUYER acknowledges that this sale is made without warranty of fitness for
186  ordinary or particular use pursuant to Louisiana Civil Code Article 2524. SELLER and BUYER agree that this
187  clause shall be made a part of the Act of Sale; however, if this clause is not made a part of the Act of Sale for any
188  reason, it will be binding upon the BUYER and SELLER after the Act of Sale.
189
190  ☐ C. NEW HOME WARRANTIES. Notwithstanding lines 177 through 188 and irrespective of whether A or B
191  above is checked, if the Property is a new construction, the parties agree that neither A or B will apply but instead
192  the provisions of the New Home Warranty Act (LA R.S. 9:3141 et seq.) shall apply. The warranty or condition of
193  this Property is governed by the New Home Warranty Act if a home on the Property is a "home" as defined in the
194  New Home Warranty Act.
195
196  PRORATIONS/OTHER COSTS: Real estate taxes, rents, assessments, condominium dues, assessments and/or
197  dues owed to homeowners associations and the like for the current year are to be prorated through the date of
198  the Act of Sale. Act of Sale costs, title insurance and other costs required to obtain financing shall be paid by
199  BUYER, unless otherwise stated herein. All necessary tax, mortgage, conveyance and release certificates or
200  cancellations and SELLER closing fees, if any, shall be paid by SELLER. SELLER shall pay all previous years'
201  taxes, assessments, condominium dues, assessments and/or dues owed to homeowners associations and the
202  like. All special assessments bearing against the Property prior to Act of Sale, other than those to be assumed by
203  written agreement as of the date of the Act of Sale are to be paid by SELLER.
204
205  MERCHANTABLE TITLE/CURATIVE WORK: SELLER shall deliver to BUYER a merchantable title at SELLER's
206  costs (see line 209 through 214). In the event curative work in connection with the title to the Property is required
207  or is a requirement for obtaining the loan(s) upon which this Agreement is conditioned, the parties agree to and do
208  extend the date for passing the Act of Sale to a date not more than _____ THIRTY _____ ( 30 )
209  calendar days from the date of the Act of Sale stated herein. SELLER's title shall be merchantable and free of all
210  liens and encumbrances except those that can be satisfied at Act of Sale. All costs and fees required to make title
211  merchantable shall be paid by SELLER. SELLER shall make good faith efforts to deliver merchantable title.
212  SELLER's inability to deliver merchantable title within the time stipulated herein shall render this Agreement null
213  and void, reserving unto BUYER the right to demand the return of the Deposit and to recover from SELLER actual
214  costs incurred in processing of sale as well as legal fees incurred by BUYER.
215
216  FINAL WALK THROUGH: BUYER shall have the right to re-inspect the Property within five (5) days prior to the
217  Act of Sale, or occupancy, whichever will occur first in order to determine if the Property is in the same or better
218  condition as it was at the initial inspection(s) and to insure all agreed upon repairs have been completed. SELLER
219  agrees to provide utilities for the final walk through and immediate access to the Property.
220
221  DEFAULT OF AGREEMENT BY SELLER: In the event of any other default of this Agreement by SELLER except
222  as set forth in lines 102 through 118 or lines 211 through 214, BUYER shall at BUYER'S option have the right to
223  declare this Agreement null and void with no further demand, or to demand and/or sue for any of the following:
224
225  1) Termination of this Agreement;
226  2) Specific performance;
227  3) Termination of this Agreement and an amount equal to 10% of the Sale Price as stipulated damages.

BUYER'S Initials _ATC_  _____        Page 4 of 7        SELLER'S Initials _____ _____

ABS Rev. 01/01/10

This form produced by Formulator ®  800-499-9612

CARTER000048

281 W. ROBERT E. LEE BLVD.         NEW ORLEANS, LA  70124
Property address, street, city, state, zip

228 Further, BUYER shall be entitled to the return of the Deposit. The prevailing party to any litigation brought to
229 enforce any provision of this Agreement shall be awarded their attorney fees and costs. The SELLER may also be
230 liable for Broker fees.

231 **DEFAULT OF AGREEMENT BY BUYER:** In the event of any other default of this Agreement by BUYER except
232 as set forth in lines 102 through 118, SELLER shall have at SELLER's option the right to declare this Agreement
233 null and void with no further demand, or to demand and sue for any of the following:

234 1) Termination of this Agreement;
235 2) Specific performance;
236 3) Termination of this Agreement and an amount equal to 10% of the Sale Price as stipulated damages.
237

238 Further, SELLER shall be entitled to retain the Deposit. The prevailing party to any litigation brought to enforce
239 any provision of this Agreement shall be awarded their attorney fees and costs. The BUYER may also be liable
240 for Broker fees.
241

242 **MOLD RELATED HAZARDS NOTICE:** An informational pamphlet regarding common mold related hazards that
243 can affect real property is available at the EPA website http://www.epa.gov/iaq/molds/index.html. By initialing
244 this page of the Agreement, BUYER acknowledges that the real estate agent has provided BUYER with the EPA
245 website enabling BUYER to obtain information regarding common mold related hazards.
246

247 **OFFENDER NOTIFICATION:** The Louisiana State Police maintains the State Sex Offender and Child Predator
248 Registry through the Louisiana Bureau of Criminal Identification and Information. It is a public access database of
249 the locations of individuals who are required to register pursuant to LA R.S. 15:540 et seq. The website for the
250 database is http://www.lasocpr.lsp.org/socpr/. Sheriff and police departments serving jurisdictions of 450,000
251 also maintain such information. Inquiries can be made by phone at 1-800-858-0551 or 1-225-925-6100. Send
252 written inquiries to Post Office Box 66614, Box A-6, Baton Rouge, Louisiana 70896.
253

254 **CHOICE OF LAW:** This Agreement shall be governed by and shall be interpreted in accordance with the laws of
255 the State of Louisiana.
256

257 **DEADLINES: TIME IS OF THE ESSENCE**, and all deadlines are final, except where modifications, changes, or
258 extensions are made in writing and signed by all parties to this Agreement. All "calendar days" as used in this
259 Agreement shall end at 12:00 midnight in Louisiana.
260

261 **ADDITIONAL TERMS AND CONDITIONS:**
262 SELLER AGREES TO PAY $3,000.00 (THREE THOUSAND DOLLARS) IN BUYER'S CLOSING COSTS AND
263 PREPAIDS.
264
265
266
267
268
269
270

271 **ROLES OF BROKERS AND DESIGNATED AGENTS:** Broker(s) and Designated Agent(s) have acted only as
272 real estate brokers to bring the parties together and make no warranty to either party for performance or non
273 performance of any part of this Agreement or for any warranty of any nature unless specifically set forth in writing
274 Broker(s) and Designated Agent(s) make no warranty or other assurances whatsoever concerning Property
275 measurements, square footage, room dimensions, lot size, Property lines or boundaries. Broker(s) and
276 Designated Agent(s) make no representations as to suitability or to a particular use of the Property, and BUYER
277 has or will independently investigate all conditions and characteristics of the Property which are important to
278 BUYER. BUYER is not relying on the Broker(s) nor the Designated Agent(s) to choose a representative to inspect
279 or re-inspect the Property; BUYER understands any representative desired by BUYER may perform this function.
280 In the event Broker/Agent(s) provides names or sources for such advice or assistance, Broker/Agent(s) does not
281 warrant the services of such experts or their products and cannot warrant the condition of Property or interest to
282 be acquired, or guarantee that all defects are disclosed by SELLER(s). Broker/Agent(s) do not investigate the
283 status of permits, zoning, code compliance or restrictive covenants. The Broker(s) and Designated Agent(s)
284 specifically make no warranty whatsoever as to whether or not the Property is situated in or out of the
285 Government's hundred year flood plan or is or would be classified as wetlands by the U.S. Army Corp of
286 Engineers, or as to the presence of wood destroying insects or damage therefrom. BUYER(s) are to satisfy
287 themselves concerning these issues. Designated Agent shall be an independent contractor for Broker if the
288 conditions as set forth in LA R.S. 37:1446(h) are met.

BUYER'S Initials _____ _____      Page 5 of 7       SELLER'S Initials _____ _____

ABS Rev. 01/01/10

This form produced by **Formulator** ♦ 602-483-8812



261 W. ROBERT E. LEE BLVD.                    NEW ORLEANS, LA. 70124
Property address, street, city, state, zip

289  **LIST ADDENDA TO BE ATTACHED AND MADE A PART OF THIS AGREEMENT:**
290  ☐ Contingency for Sale of Buyer's Other Property Addendum   ☐ _____
291  ☐ Condominium Addendum                                      ☐ _____
292  ☐ FHA Amendatory Clause                                     ☐ _____
293
294  If any of the pre-printed portions of this Agreement vary or are in conflict with any additional or modified terms on
295  blanks provided in this form or Addendum attached to this Agreement, the additional, modified or Addendum
296  provisions control.

297  **SINGULAR - PLURAL USE:** Wherever the word BUYER or the word SELLER occurs in this Agreement or is
298  referred to, the same shall be construed as singular or plural, masculine or feminine or neuter, as the case may
299  be.
300
301  **ACCEPTANCE:** Acceptance of this Agreement must be in writing. Notice of this acceptance may be
302  communicated by facsimile transmission. The original of this document shall be delivered to the listing Broker's
303  firm. This Agreement and any supplement addendum or modification relating hereto, including any photocopy,
304  facsimile or electronic transmission thereof, may be executed in two or more counterparts, all of which shall
305  constitute one and the same Agreement.
306
307  **CONTRACT:** This is a legally binding contract when signed by both SELLER and BUYER. READ IT
308  CAREFULLY. If you do not understand the effect of any part of this Agreement seek legal advice before signing
309  this contract or attempting to enforce any obligation or remedy provided herein.
310
311  **ENTIRE AGREEMENT:** This Agreement constitutes the entire Agreement between the parties, and any other
312  agreements not incorporated herein in writing are void and of no force and effect.
313
314  **EXPIRATION OF OFFER:**
315  This offer is binding and irrevocable until  SEPTEMBER 02, 2010   AT   5 PM   AM/PM/MIDNIGHT/NOON.
316
317  X _____  09/01/2010 3:30PM   X _____  09/01/2010 3:50PM
318  ☑ Buyer's/☐ Seller's Signature   Date/Time      X ☑ Buyer's/☐ Seller's Signature   Date/Time
319  ☑ Alfredo Jose Calix                            Noyma Calix
320  Print Buyer's/Seller's Full Name (First, Middle, Last)   Print Buyer's/Seller's Full Name (First, Middle, Last)
321  7011 Pritchard Place                            7011 Pritchard Place
322  Street Address                                  Street Address
323  New Orleans, La. 70125                          New Orleans, LA 70125
324  City, State, Zip                                City, State, Zip
325     9058      504-430-2082                      0512      504-812-3460
326  Last 4-digits of SSN   Telephone Number. Cell   Last 4-digits of SSN   Telephone Number. Cell
327             504-842-9151                                   504-842-1378
328  Telephone Number. Home   Telephone Number. Work   Telephone Number. Home   Telephone Number. Work
329  acalix@gMail.com                                noymascalix@gmail.com
330  E-Mail Address                                  E-Mail Address
331  Noyma Calix                                     09/01/10        3:50 pm
332  This offer was presented to the Seller/Buyer by   Day/Date/Time AM / PM MIDNIGHT/NOON
333
334  This offer is:  ☑ Accepted  ☐ Rejected (without counter)  ☐ Countered (See Attached Counter) by:   9-1-10
335  _____  9-1-10 8:30pm   X _____  8 4pm
336  X _____              X _____
337  ☐ Buyer's/☐ Seller's Signature   Date/Time   ☐ Buyer's/☐ Seller's Signature   Date/Time
338  Print Buyer's/Seller's Full Name (First, Middle, Last)   Print Buyer's/Seller's Full Name (First, Middle, Last)
339
340  Street Address                                  Street Address
341
342
343  City, State, Zip                                City, State, Zip
344
345  Last 4-digits of SSN   Telephone Number. Cell   Last 4-digits of SSN   Telephone Number. Cell
346
347  Telephone Number. Home   Telephone Number. Work   Telephone Number. Home   Telephone Number. Work
348
349  E-Mail Address                                  E-Mail Address
350
351  This offer was presented to the Seller/Buyer by   Day/Date/Time AM / PM MIDNIGHT/NOON

BUYER'S Initials  AJC              Page 6 of 7       SELLER'S Initials

ABS Rev. 01/01/10

This form produced by: Formulator ®  800-420-5212

261 W. ROBERT E LEE BLVD.                              NEW ORLEANS, LA. 70124
Property address, street, city, state, zip

352  **PROPERTY AND FLOOD INSURANCE:** it is recommended that the BUYER make good faith application for
353  property and flood insurance, if applicable, on the Property as soon as possible after acceptance of this offer.
354
355  **PROPERTY DISCLOSURE DOCUMENT:**
356
357  ☒ The SELLER'S completed property disclosure document dated                    06/30/10                    is
358  attached to this offer. The property disclosure agreement is issued pursuant to LA R.S. 9:3196 *et seq.* and was
359  completed in good faith to the best of the SELLER'S knowledge. This document sets forth the minimum
360  disclosure requirements for sellers of residential real estate as to the condition of the Property. THIS DOCUMENT
361  IS NOT TO BE CONSIDERED A WARRANTY BY THE SELLER, AND IT IS NOT TO BE USED AS A
362  SUBSTITUTE FOR ANY INSPECTIONS OR WARRANTIES THAT THE BUYER MAY OBTAIN. Nothing in the
363  document precludes the rights or duties of the BUYER to inspect the physical condition of the Property. The
364  property disclosure document is not a part of this Agreement.
365
366  ☐ The SELLER'S completed property disclosure document is not attached to this offer.

BUYER'S Initials _AJC_ _MSC_          Page 7 of 7          SELLER'S Initials _____ _____

ABS Rev. 01/01/10

This form produced by: Formulator ®  800-495-9612




Property Description (Address, City, State, Zip) _261 W. ROBERT E. LEE_____ _NEW ORLEANS, LA 70124____

## PROPERTY DISCLOSURE DOCUMENT FOR RESIDENTIAL REAL ESTATE

Answer all questions to the best of your knowledge. Explain any "yes" answers fully at the end of each section.

Y = yes          N = no          NK = no knowledge

### SECTION 1: LAND

(1) Lot size or acres __40.6 X 100__

(2) Are there any servitudes/encroachments regarding the property, other than typical/customary utility servitudes, that would affect the use of the property?  ☐Y  ☒N  ☐NK

(3) Are there any rights vested in others? Check all that apply and explain at the end of this section.

| | | | | | | |
|---|---|---|---|---|---|---|
| Timber rights | ☐Y ☒N ☐NK | | Common driveway | ☐Y | ☒N | ☐NK |
| Right of ingress or egress | ☐Y ☒N ☐NK | | Mineral rights | ☐Y | ☒N | ☐NK |
| Right of way | ☐Y ☒N ☐NK | | Surface rights | ☐Y | ☒N | ☐NK |
| Right of access | ☐Y ☒N ☐NK | | Air rights | ☐Y | ☒N | ☐NK |
| Servitude of passage | ☐Y ☒N ☐NK | | Usufruct | ☐Y | ☒N | ☐NK |
| Servitude of drainage | ☐Y ☒N ☐NK | | Other _____ | ☐Y | ☒N | ☐NK |

(4) Has any part of the property been determined a wetland by the United States Army Corps of Engineers under §404 of the Clean Water Act?  ☐Y  ☒N  ☐NK   (a) Is such a determination pending  ☐Y  ☒N  ☐NK
(b) What date was determination made? _____

The Clean Water Act is a federal law that protects the wetlands of the United States. Section 404 of the Act contains permit requirements for altering or building on property that has been determined a wetland by the Army Corps of Engineers. The Corps may assess a fee to the **SELLER** or **PURCHASER** of a property for this determination. A property that has been determined a wetland may result in additional costs for a Section 404 permit. Documentation is attached and becomes a part of this property disclosure if the property described herein has been determined a wetland by the Corps.

(5) Has any flooding, water intrusion, accumulation, or drainage problem been experienced with respect to the land? If yes, indicate the nature and frequency of the defect at the end of this section.  ☒Y  ☐N  ☐NK
(6) What is/are the flood zone classification(s) of the property? _A3_____ (a) What is the source and date of this information? Check all those that apply ☐Survey/Date _____  ☐Flood Elevation Certificate/Date _11/9/09_ ☐Flood Insurance Policy/Date _____  ☐Other _____/Date____  (b) Does SELLER have a flood elevation certificate in SELLER'S possession that will be shared with BUYER?  ☒Y  ☐N  ☐NK
(7) If the property is mortgaged, did the lender require you to buy flood insurance? _N/A_  ☐Y  ☐N  ☐NK
Question Number       Explanation of "Yes" answers       ☐Additional sheet is attached
_5) PROPERTY FLOODED IN KATRINA 2005 (LEVEE BROKE)_
_5' WATER_

### SECTION TWO: TERMITES, WOOD-DESTROYING INSECTS AND ORGANISMS

(8) Has the property ever had termites or other wood-destroying insects or organisms?  ☐Y  ☒N  ☐NK
(9) Was there any damage to the property?  ☐Y  ☒N  ☐NK
(10) Was the damage repaired?  _N/A_ ☐Y  ☐N  ☐NK
(11) Is the property currently under a termite contract?  ☐Y  ☒N  ☐NK
(a) Name of company _____  (b) Date contract expires _____
(c) List any structures not covered by contract _____
Question Number       Explanation of "Yes" answers       ☐Additional sheet is attached

### SECTION 3: STRUCTURE

(12) Are there any defects regarding the following? Check all that apply and explain at the end of this section.

| | | | | |
|---|---|---|---|---|
| Roof | ☐Y ☒N ☐NK | Ceilings | ☐Y ☒N ☐NK |
| Interior walls | ☐Y ☒N ☐NK | Exterior walls | ☐Y ☒N ☐NK |
| Floor | ☐Y ☒N ☐NK | Foundation | ☐Y ☐N ☐NK |
| Attic spaces | ☐Y ☒N ☐NK | Basement | ☐Y ☒N ☐NK |
| Porches | ☐Y ☒N ☐NK | Overhangs | ☐Y ☒N ☐NK |
| Steps/Stairways | ☐Y ☒N ☐NK | Railings | ☐Y ☒N ☐NK |
| Pool | ☐Y ☐N ☐NK | Spa | ☐Y ☐N ☐NK |
| Decks | ☐Y ☒N ☐NK | Patios | ☐Y ☒N ☐NK |
| Windows | ☐Y ☒N ☐NK | Other | ☐Y ☐N ☐NK |

LREC REV 01/01/10          Seller's Initials: _____          Purchaser's Initials: _AC_ _SC_          1 of 3

This form produced by: Formulator ®  843-884-5412

CARTER000052

Property Description (Address, City, State, Zip) _____ 261 W. ROBERT E. LEE _____ NEW ORLEANS, LA 70124 _____

Y = YES     N= NO     NK = NO KNOWLEDGE

(13) Has any structure on the property ever taken water by flooding (rising water or otherwise)? If yes, give the nature and frequency of the defect at the end of this section.     ☒Y   ☐N   ☐NK

(14) What is the approximate age of all structures on the property? Main structure _ 11 YRS _ Other structures _ 1 YR _

┌─────────────────────────────────────────────────────────────────────────────┐
│ SELLER must complete and provide the "Disclosure on Lead-Based Paint and Lead-Based Paint Hazard │
│ Addendum" that is included with this property disclosure if any structure was built before 1978. │
└─────────────────────────────────────────────────────────────────────────────┘

(15) What is the approximate age of the roof of each structure? Main structure _ 4 YRS _ Other structures _ 1 YR _

(16) Does the property contain exterior insulation and finish system (EIFS) or other synthetic stucco?     ☒Y   ☐N   ☐NK

(17) What is the approximate square footage or the living area of each structure on the property? Include the source of this information. Square footage of _ LIVING _ is _ 2180 _ square feet. Source _ APPRAISAL _
Square footage of _ TOTAL _ is _ 0810.0 _ square feet. Source _____

Question Number          Explanation of "Yes" answers          ☐ Additional sheet is attached

_____
_____
_____

┌─────────────────────────────────────────────────────────────────────────────┐
│ SECTION 4: PLUMBING, WATER, GAS, AND SEWERAGE │
└─────────────────────────────────────────────────────────────────────────────┘

(18) Are there any defects with the plumbing system?     ☐Y   ☒N   ☐NK

(19) Are there any defects with the water piping?     ☐Y   ☒N   ☐NK

(a) Are there any defects with the water quality, quantity, or pressure?     ☐Y   ☒N   ☐NK

(b) The water is supplied by: ☒ Municipality ☐ Private utility ☐ On-site system ☐ Shared well system ☐ None

(c) If there is a well, when was the last time the water was tested?  Date _____  Results _____

(20) Is there gas service available to the property/structure?     ☒Y   ☐N   ☐NK

(a) If yes, what type? ☐ Butane ☒ Natural ☐ Propane

(b) If yes, are there any defects with it?     ☐Y   ☒N   ☐NK

(21) Are there defects with any water heater?     ☐Y   ☒N   ☐NK

(a) Age of Unit 1 _ 11 YRS _☒ Gas ☐ Electric   (b) Age of Unit 2 _____ ☐ Gas ☐ Electric

(22) The sewerage service is supplied by: ☒ Municipality ☐ Other ☐ NK

┌─────────────────────────────────────────────────────────────────────────────┐
│ SELLER must provide the attached "Disclosure of Information about Residential Sewage Treatment Systems │
│ Addendum" if the property described herein is not served by a municipality waste treatment. │
└─────────────────────────────────────────────────────────────────────────────┘

Question Number          Explanation of "Yes" answers          ☐ Additional sheet is attached

_____
_____
_____

┌─────────────────────────────────────────────────────────────────────────────┐
│ SECTION 5: ELECTRICAL, HEATING AND COOLING, APPLIANCES │
└─────────────────────────────────────────────────────────────────────────────┘

For major repairs or replacements relative to Section 5, list the date and nature of the repair or replaced component at the end of the section.

(23) Are there any defects with the electrical system?     ☐Y   ☒N   ☐NK

(24) Are there any defects with the heating or cooling systems?     ☐Y   ☒N   ☐NK

(25) What type of cooling system is installed? ☒ Central ☐ Window unit ☐ Other

(a) Source: ☒ Electric ☐ Gas   ☐ Heat pump ☐ Other

(26) What type of heating system is installed? ☒ Central ☐ Window unit ☐ Other

(a) Source: ☐ Electric ☒ Gas   ☐ Heat pump ☐ Other

(27) If a fireplace exists, is it working?     ☒Y   ☐N   ☐NK

(a) What type is it? ☒ Gas ☐ Wood ☐ Vented ☒ Ventless ☐ Electric ☐ Other

(28) Are there any defects in any permanently installed or built-in appliances?     ☐Y   ☒N   ☐NK

Question Number          Explanation of "Yes" answers          ☐ Additional sheet is attached

_____
_____
_____

LREC Rev 01/01/10     Seller's Initials: _____     Purchaser's Initials: _____     2 of 3

This form produced by: Formulator ®   800-499-9612

Property Description (Address, City, State, Zip) _____ 261 W. ROBERT E. LEE _____ NEW ORLEANS, LA 70124 _____

Y = YES    N= NO    NK = NO KNOWLEDGE

### SECTION 6: MISCELLANEOUS

(29) Has there been property damage related to the land or the improvements thereon, including, but not limited to, fire, windstorm, flood, hail, lightning, or other property damage?   ☒Y  ☐N  ☐NK
  (a) If yes, were all related property damages, defects, and/or conditions repaired?   ☒Y  ☐N  ☐NK
(30) What is the zoning of the property?  X RESIDENTIAL   ☐Y  ☐N  ☐NK
  (a) Has it ever been zoned for commercial or industrial?   ☐Y  ☒N  ☐NK
  (b) Is the property located in an historic district?   ☐Y  ☒N  ☐NK
(31) Does the property and its present usage conflict with current zoning, building, and/or safety restrictions?   ☐Y  ☒N  ☐NK

(32) Are there any current or pending assessments, dues, liens, taxes owing on the property?   ☐Y  ☒N  ☐NK
  (a) Is membership in a homeowners' association (HOA), condominium owners' association (COA), or property owners' association (POA) required as the result of owning this property?   ☐Y  ☒N  ☐NK
  (b) Are any HOA, COA, or POA dues required?   ☐Y  ☒N  ☐NK
  (c) If yes, what is the amount? $_____ per _____
  (d) Are there any pending special assessments?   ☐Y  ☒N  ☐NK
  (e) If yes, what is the amount?$_____ per _____

> Any information contained in this property disclosure regarding homeowners' associations (HOA), condominium owners' associations (COA), or property owners' associations (POA) is summary in nature. The covenants and association governing documents are a matter of public record and can be obtained from the conveyance records on file at the Clerk of Court in the parish where the property is located.

(33) Were any additions or alterations made to the property?   ☒Y  ☐N  ☐NK
  (a) If yes, were the necessary permits and inspections obtained for all additions or alterations?   ☒Y  ☐Y  ☐NK
(35) Is there a homestead exemption in effect?   ☐Y  ☒N  ☐NK
(35) Is there high speed internet access available to the property?   ☒Y  ☐N  ☐NK
(36) Is there any pending litigation regarding the property?   ☐Y  ☒N  ☐NK
(37) Does the property or any of its structures contain any of the following? Check all those that apply and provide the nature and frequency at the end of this section.

| | | | | | | |
|---|---|---|---|---|---|---|
| Asbestos | ☐Y | ☒N | ☐NK | Formaldehyde | ☐Y ☒N ☐NK |
| Radon gas | ☐Y | ☒N | ☐NK | Chemical storage tanks | ☐Y ☒N ☐NK |
| Contaminated soil | ☐Y | ☒N | ☐NK | Contaminated water | ☐Y ☒N ☐NK |
| Hazardous waste | ☐Y | ☒N | ☐NK | Toxic Mold | ☐Y ☒N ☐NK |
| Mold/Mildew | ☐Y | ☒N | ☐NK | Pests | ☐Y ☒N ☐NK |
| Electromagnetic fields | ☐Y | ☒N | ☐NK | Crystal meth exposure | ☐Y ☒N ☐NK |
| Other adverse materials or conditions ☐Y ☐N ☐NK | | | | Contaminated drywall/sheetrock | ☐Y ☒N ☐NK |

Question Number _____ Explanation of "Yes" answers _____ ☐ Additional sheet is attached

HOUSE HAS CHINESE DRYWALL - ENTIRE 1ST FLOOR + MASTER BED ROOM SHOWS BUTTER, "AIR QUALITY TESTS REPORTABLE TO PHASE 3 THAT WOULD HAVE CHINESE DRYWALL." REPORT OF BARPLY ASSESSMENT SERVICES DATED 6/30/10 AVAILABLE.

### ACKNOWLEDGEMENTS

I/We attest that the above statements and explanations have been provided by me/us and are true and correct to the best of my/our knowledge. (If either party is represented by a real estate licensee, your signature below acknowledges that you have been informed of your duties and rights under LSA-R.S. 9:3195-3199 and have read and understand the informational statement.)

Seller(s) acknowledge(s) that the information contained herein is current as of this date.

Seller (sign) _____ (print) DANIEL CARTER _____ Date 6/30/10 Time 6:30

Seller (sign) _____ (print) AMY CARTER _____ Date 6/30/10 Time 6:30

Purchaser(s) signing below acknowledge(s) receipt of this property disclosure.

Purchaser (sign) _____ (print) Alfred Calix _____ Date 09/01/2010 Time 3:02 PM

Purchaser (sign) _____ (print) Nina Calix _____ Date 9/1/10 Time 3:02 PM

LREC Rev 01/01/10

3 of 3

This form produced by: Formulator ® 800-XXX-XXXX



## WAIVER of WARRANTY and REDHIBITION RIGHTS ADDENDUM

IN REFERENCE to the Agreement to Purchase and Sell the real property commonly referred to as: _____ *261 W. ROBERT E. LEE* _____ *NEW ORLEANS, LA 7012.*, dated _*09/01/2010*_ between _____ *DANIEL CARTER* _____ ("SELLER") and _*Alfredo & Young Cabx*_ ("PURCHASER"), the undersigned parties hereby agree as follows:

Providing that Purchaser's inspections, as per the *Property Condition/Inspection* section on the agreement to purchase and sell referenced above, are satisfactory to Purchaser, Purchaser hereby agrees that THE FOLLOWING STATEMENT WILL BE MADE A PART OF THE ACT OF SALE AND SHALL NOT GO INTO EFFECT UNTIL THE ACT OF SALE.

It is expressly agreed that the immovable property herein conveyed and all improvements and component parts, plumbing, electrical systems, mechanical equipment, heating and air conditioning systems, built-in appliances, and all other items located hereon are conveyed by Seller and accepted by Purchaser "AS IS, WHERE IS," without any warranties of any kind whatsoever, even as to the metes and bounds, zoning, operation, or suitability of the property for the use intended by the Purchaser, without regard to the presence of apparent or hidden defects and with the Purchaser's full and complete waiver of any and all rights for the return of all or any part of the purchase price by reason of any such defects.

Purchaser acknowledges and declares that neither the Seller nor any party, whomsoever, acting or purporting to act in any capacity whatsoever on behalf of the Seller has made any direct, indirect, explicit or implicit statement, representation or declaration, whether by written or oral statement or otherwise, and upon which the Purchaser has relied, concerning the existence or non-existence of any quality, characteristic or condition of the property herein conveyed. Purchaser has had full, complete and unlimited access to the property herein conveyed for all tests and inspections which Purchaser, in Purchaser's sole discretion, deems sufficiently diligent for the protection of Purchaser's interests.

Purchaser expressly waives the warranty of fitness and the warranty against redhibitory vices and defects, whether apparent or latent, imposed by Louisiana Civil Code Articles 2520 through 2548, inclusive, and any other applicable state or federal law and the jurisprudence thereunder.

Purchaser also waives any rights Purchaser may have in redhibition to a return of the purchase price or to a reduction of the purchase price paid pursuant to Louisiana Civil Code Articles 2520 to 2548, inclusive, in connection with the property hereby conveyed to Purchaser by Seller. By Purchaser's signature, Purchaser expressly acknowledges all such waivers and Purchaser's exercise of Purchaser's right to waive warranty pursuant to Louisiana Civil Code Article 2520 and 2548, inclusive.

The herein agreement, upon its execution by both Purchaser and Seller, is herewith made an integral part of the aforementioned Agreement to Purchase and Sell.

_____  _*09/01/2010*_  _____  _6-30-10 6:15pm_
PURCHASER              DATE/TIME       SELLER   *DANIEL CARTER*   DATE/TIME

_____  _9/1/2010_      _____  _____
PURCHASER              DATE/TIME       SELLER   *AMY CARTER*     DATE/TIME

This line produced by *Formulator ®*  (504)454-6672

CARTER000055

Prepared by:
Title Management Group, Inc.
3421 North Causeway Blvd., Suite 300
Metairie, LA 70001
Ph (504)834-2977  Fax (504)834-2978
File#: 9-76-10 Notarial: DJ

<u>CASH SALE</u>

STATE OF LOUISIANA
PARISH OF JEFFERSON

On the below stated date, before the below stated Notary Public, and in the presence of the subscribing witnesses personally appeared:

**Daniel T. Carter (SS# XXX-XX-2102)**, a person of the full age of majority and competency and resident of Orleans Parish, who swears unto me, Notary Public, that he has been married but once and then to Amy Freese Carter with whom he is presently living and residing and further declares that the property being conveyed herein is his separate and paraphernal property and that his present mailing address is 6114 Bellaire Drive, New Orleans , LA 70124, hereinafter referred to as SELLER

**AND NOW TO THESE PRESENTS CAME AND INTERVENED:**
**Amy Freese Carter**, wife of said Daniel T. Carter, who hereby concurs in the foregoing declaration of her said husband regarding the separate nature of the sale money funds and who hereby acknowledges that the herein described property is the separate property of her said husband/wife.

who declared that for the price of **Three Hundred Thousand and 00/100 ($300,000.00)\*** cash, receipt of which is hereby acknowledged, SELLER does hereby sell and deliver, with full warranty of title and subrogation to all rights and actions of warranty SELLER may have, unto:

**Alfredo Jose Calix (SS# XXX-XX-9058)** and **Yojna Singh Calix (SS# XXX-XX-0512)**, both persons of the full age of majority and competency and residents of Orleans Parish, who swear unto me, Notary Public, that they have been married but once and then to each other and are presently living and residing together and that their present mailing address is 261 West Robert E. Lee Blvd., New Orleans, LA 70124, hereinafter called BUYER

the following described property, the possession and delivery of which BUYER acknowledges:

ALL THAT CERTAIN LOT OF GROUND, together with all the buildings and improvements thereon, and all the rights, ways, privileges, servitudes, appurtenances and advantages thereunto belonging or in anywise appertaining, situated in the Seventh District of the City of New Orleans, State of Louisiana, within the area bounded by West Robert E. Lee Boulevard (formerly Lee Avenue), Regent Street (formerly Mercer Street), Lake Avenue, and the boundary line of Hazeur Tract, which lot is designated as L-1, on plan of resubdivision of Original Lots L and K, West End Park by Gilbert, Kelly & Couturie, Inc., Surveying and Engineering, dated February 27, 1986, and approved by the City Planning Commission of the City of New Orleans on July 7 1986, registered at COB 804, folio 536 and to said lot is located and measures as follows:

Lot L-1 commences 547 feet 8 inches from the intersection of Regent Street and West Robert E. Lee Boulevard, and measures thence 40 feet 6 inches front on West Robert E. Lee Blvd., same width in the rear by a depth of 120 feet between equal and parallel lines. All as more fully shown on a survey by Gilbert, Kelly & Couturie, Inc., dated May 2, 1997.

Being the same property acquired by Daniel T. Carter from Henry St. Paul Provosty in act dated 12/30/2005 and recorded in CIN 316869, Orleans Parish, Louisiana.

Made and Accepted Subject to:

Deleting any covenant, condition, or restriction if any, based upon race, color, religion, sex, handicap, familial status, or national origin, unless and only to the extent that such covenants, conditions or restrictions (a) are exempt under Chapter 42, Section 3607 of the United States Code or (b) relate to handicap but do not discriminate against handicapped persons.

Subject to all previously recorded building restrictions, servitudes, building set back lines; and oil, gas and mineral reservations, conveyances, servitudes and leases of record.

It is understood by the parties hereto that the SELLER herein makes no warranty as to soil conditions on the lot herein conveyed, the warranty referred to herein being restricted in its interpretation to warrant solely as to marketability of title.

WAIVER OF WARRANTY and REDHIBITION RIGHTS AGREEMENT

IT IS EXPRESSLY AGREED THAT THE IMMOVABLE PROPERTY HEREIN CONVEYED AND ALL IMPROVEMENTS AND COMPONENT PARTS, PLUMBING, ELECTRICAL SYSTEMS, MECHANICAL EQUIPMENT, HEATING AND AIR CONDITIONING SYSTEMS, BUILT-IN APPLIANCES, AND ALL OTHER ITEMS LOCATED HEREON ARE CONVEYED BY SELLER AND ACCEPTED BY BUYER **"AS IS, WHERE IS,"** WITHOUT ANY WARRANTIES OF ANY KIND WHATSOEVER, EVEN AS TO THE METES AND BOUNDS, ZONING, OPERATION, OR

EXHIBIT
"J"

CARTER000056

SUITABILITY OF THE PROPERTY FOR THE USE INTENDED BY THE BUYER, WITHOUT REGARD TO THE PRESENCE OF APPARENT OR HIDDEN DEFECTS AND WITH THE BUYER'S FULL AND COMPLETE WAIVER OF ANY AND ALL RIGHTS FOR THE RETURN OF ALL OR ANY PART OF THE PURCHASE PRICE BY REASON OF ANY SUCH DEFECTS.

BUYER ACKNOWLEDGES AND DECLARES THAT NEITHER THE SELLER NOR ANY PARTY, WHOMSOEVER, ACTING OR PURPORTING TO ACT TO ANY CAPACITY WHATSOEVER ON BEHALF OF THE SELLER HAS MADE ANY DIRECT, INDIRECT, EXPLICIT OR IMPLICIT STATEMENT, REPRESENTATION OR DECLARATION, WHETHER BY WRITTEN OR ORAL STATEMENT OR OTHERWISE, AND UPON WHICH THE BUYER HAS RELIED, CONCERNING THE EXISTENCE OR NON-EXISTENCE OF ANY QUALITY, CHARACTERISTIC OR CONDITION OF THE PROPERTY HEREIN CONVEYED.   BUYER HAS HAD FULL, COMPLETE AND UNLIMITED ACCESS TO THE PROPERTY HEREIN CONVEYED FOR ALL TEST AND INSPECTIONS WHICH BUYER, IN BUYER'S SOLE DISCRETION, DEEMS SUFFICIENTLY DILIGENT FOR THE PROTECTION OF BUYER'S INTERESTS.

BUYER EXPRESSLY WAIVES THE WARRANTY OF FITNESS AND THE WARRANTY AGAINST REDHIBITORY VICES AND DEFECTS, WHETHER APPARENT OR INTENT, IMPOSED BY LOUISIANA CIVIL CODE ARTICLES 2520 THROUGH 2548, INCLUSIVE, AND ANY OTHER APPLICABLE STATE OR FEDERAL LAW AND THE JURISPRUDENCE THEREUNDER.

BUYER ALSO WAIVES ANY RIGHTS BUYER MAY HAVE IN REDHIBITION TO A RETURN OF THE PURCHASE PRICE OR TO A REDUCTION OF THE PURCHASE PRICE PAID PURSUANT TO LOUISIANA CIVIL CODE ARTICLES 2520 THROUGH 2548, INCLUSIVE, IN CONNECTION WITH THE PROPERTY HEREBY CONVEYED TO BUYER BY SELLER.   BY BUYER'S SIGNATURE, BUYER EXPRESSLY ACKNOWLEDGES ALL SUCH WAIVERS AND BUYER'S EXERCISE OF BUYER'S RIGHT TO WAIVE WARRANTY PURSUANT TO LOUISIANA CIVIL COLE ARTICLE 2520 AND 2548, INCLUSIVE.

THE HEREIN AGREEMENT, UPON ITS EXECUTION BY BOTH BUYER AND SELLER, IS HEREWITH MADE AN INTEGRAL PART OF THE AFOREMENTIONED AGREEMENT TO PURCHASE AND SELL.

All parties signing the within instrument have declared themselves to be of full legal capacity.   The certificate of mortgages required by Article 3361 of the revised Civil Code of Louisiana is dispensed with by the parties. Taxes for the current year are prorated between the parties. All agreements and stipulations herein contained and all the obligations herein assumed shall inure to the benefit of and be binding upon the heirs, successors and assigns of the respective parties, and the BUYER, their heirs and assigns shall have and hold the described property in full ownership forever.

THUS DONE, READ AND PASSED at my office in *Metairie* Louisiana, on this *14* day of *October 2010* in the presence of the undersigned competent witnesses and me, Notary.

WITNESSES:

Printed Name - *CHARO DIAZ*

Printed Name - *PHYLLIS STEVENS*

Daniel T. Carter

Amy Freese Carter, Intervenor Spouse

Alfredo Jose Calix

Vinny Singh Calix

NOTARY PUBLIC
Qualified in the Parish of _____
State of _____
Bar Roll or Notary I.D. # _____

## Don Reichert

| | |
|---|---|
| **From:** | Don Reichert |
| **Sent:** | Monday, July 18, 2016 10:06 AM |
| **To:** | 'Dysart, Danny' |
| **Subject:** | Carter:  Already Remediated Property |
| **Attachments:** | 1st Purchase.pdf; 2nd Purchase.pdf; 101476_3010.pdf; Appraisal Invoice.pdf; Cancellation of Agreement.pdf |

Mr. Dysart,

I am going to send you multiple emails attaching documents regarding the above referenced matter.  In addition, pursuant to your request, the Carters are in case no. 09-6087 and 09-7628.  Please let me know if there is anything additional need.

Thanks,
Don

Don Reichert
Associate Attorney
**Bruno & Bruno, LLP**
855 Baronne Street
New Orleans, LA 70113
Main:  (504) 525-1335
Direct:  (504) 304-4216
don@brunobrunolaw.com

The information contained in this electronic message is attorney privileged and confidential information intended only for the use of the owner of the email address listed as the recipient of this message.  If you are not the intended recipient, or the employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any disclosure, dissemination, distribution, or copying of this communication is strictly prohibited.  If you have received this transmission in error, please immediately notify us by telephone at (504) 525-1335.



FEB. 6. 2009  8:09AM     CRESCENT TITLE MAPLE                    NO. 0618   P. 1

*1st Purchase*
*~~once~~ lost sale due to the sheetrock*

Amendment to Purchase Agreement dated February 4, 2009

Re:  261 W. Robert E. Lee Blvd., New Orleans, LA 70124

The Purchaser, Cathy Love, currently has her residence at 458 Jack Kramer Drive, Memphis, TN listed for sale with a local real estate broker.  Additionally, Cathy Love has her second home (lake house) located at #69 Conner Circle, Iuka, MS listed for sale with a local real estate broker.

The Purchaser agrees to apply the proceeds, from whichever property sells first , towards the purchase of the real estate located at 261 W. Robert E. Lee Blvd., New Orleans, LA 70124 ("the property").  The purchase of the property shall be in accordance with the purchase agreement dated February 4, 2009, and the closing shall take place within 30 days of the sale of either of the 2 properties.

Should Purchaser not sell either of the foregoing two homes by February 27, 2009, then Purchaser and Seller shall execute a lease agreement to occupy the property for a monthly rental of $1,800.00.  The purchase deposit shall convert to a rental deposit.  Purchaser shall retain the right to purchase the property, as per the purchase agreement, through ~~June 30~~, 2009, by providing 15 days written notice to Seller.  *(CL) (SC) May 30th* *May 30th . (SC) (CL)*

Should Seller receive an acceptable offer on the property after ~~February 27~~, 2009 , Seller shall provide notice to Purchaser and Purchaser shall have 48 hours to:

1. Schedule the closing and proceed to an act of sale within 15 days or
2. Not proceed with a closing, at which time Seller may provide at any time thereafter a 30 day notice to vacate, which Purchaser will comply with.

*Cathy Love*   2/6/09   (Purchaser signature and date)

_____  (Seller signature and date)   2-6-09

*Amy Freese Carter*

*Attachment 1*

CARTER000059



**Prudential**

**GARDNER, REALTORS®**

GBS Properties, L.L.C. dba Prudential Gardner, Realtors®
ADMINISTRATIVE OFFICES: 3332 N. Woodlawn Ave., Metairie, LA 70006

FOR EXCLUSIVE USE OF
PRUDENTIAL GARDNER, REALTORS
AND THEIR AFFILIATED LICENSEES.
PRUDENTIAL GARDNER, REALTORS
ASSUMES NO RESPONSIBILITY FOR ANY
UNAUTHORIZED USE OF THIS FORM

| Prudential Gardner Realtor's | | Prudential Gardner Realtor's |
|---|---|---|
| Listing Firm<br>Chris Smith | | Selling Firm<br>Chris Smith |
| Seller's Designated Agent<br>231-2004    891-6400    207-0524 | ☑ Dual Agent | Buyer's Designated Agent<br>504-231-2004   504-891-6400  504-207-0524 |
| Phone Number    Office    Fax<br>CMSmith@PrudentialGardner.com<br>Email Address | | Phone Number    Office    Fax<br>CMSmith@PrudentialGardner.com<br>Email Address |

| Delivered by Designated Agent to | | Day | Date | Time | AM/PM |
|---|---|---|---|---|---|
| Comments | | | | | |
| Received by Designated Listing Agent | | Wednesday | 02/04/09 | 7:55 | AM/PM |
| | | Day | Date | Time | AM/PM |

1    **LOUISIANA RESIDENTIAL AGREEMENT TO BUY OR SELL**
2
3    Date: February 4th. 2009
4
5    **PROPERTY DESCRIPTION:** I/We offer and agree to Buy/Sell the property at:
6    (Municipal Address)  261 W. Robert E. Lee Blvd.
7    City New Orleans            ; Zip 70124        ; Parish Orleans            ; State La
8    (Legal Description) West End, Lot 1
9
10   on lands and grounds measuring approximately 40.6' x 120'
11   or as per record title; including all buildings, structures, component parts, and all installed, built-in, permanently
12   attached improvements, together with all fences, security systems, all installed speakers or sound systems, all
13   landscaping, all outside TV antennas, all satellite dishes, all installed and/or built-in appliances, all ceiling fans, all
14   air conditioning or heating systems including window units, all bathroom mirrors, all window coverings, blinds and
15   associated hardware, all shutters, all flooring, all carpeting, all cabinet tops, all cabinet knobs or handles, all
16   doors, all door knobs or handles, all windows, all roofing, all electrical systems, and all installed lighting fixtures,
17   chandeliers and associated hardware, other constructions permanently attached to the ground. If owned by the
18   SELLER prior to date of this Agreement, standing timber, unharvested crops and ungathered fruits of trees on the
19   property shall be conveyed to the BUYER. The following movable items here remain with the property, but are not
20   to be considered as part of the Sale Price and have no value: Refrigerator, range/oven, dishwasher, wine cooler,
21   washer & dryer, microwave oven, ALL window coverings, ALL attached light fixtures, (3) wall mounted flat screen
22   televisions, exterior Bar B Q grill, exterior iron patio table and (6) chairs, home security system & all equipment.
23
24   All items listed herein are included in the property sold no matter how they are attached or installed, provided that
25   any or all of these items are in place at the time of signing of this Agreement to Buy or Sell (the
26   "Agreement),unless otherwise stated herein. (All of the above contained in lines 5 through 22 are collectively
27   referred to herein as the "Property.") The following items are excluded from the Property sold:
     Excluding master bedroom curtains.
28
29
30
31   **MINERAL RIGHTS:** If SELLER transfers any mineral rights, they are to be transferred without warranty and the
32   SELLER shall waive any right to use the surface for any such reserved mineral activity or use.
33   ☐ zero % mineral rights owned by SELLER are to be reserved by SELLER.
34
35   **PRICE:** The Property will be sold and purchased subject to title and zoning restrictions, servitudes of record, and
36   law or ordinances affecting the Property for the sum of
37   Three hundred and nineteen thousand dollars ------------- Dollars ($ 319,000. 00          ) (the "Sale Price").
38
39   **ACT OF SALE:** The Act of Sale is to be executed before a settlement agent or Notary Public to be chosen by
40   BUYER, on or before February 27th.          , 20 09    . At closing, BUYER must provide "good funds" if
41   required by Louisiana statute LA R.S. 22:2092.2 et seq. Any change of the date for execution of the Act of Sale
42   must be mutually agreed upon in writing and signed by SELLER and BUYER. Security deposits and keys are to
43   be transferred to BUYER at Act of Sale.

BUYER'S Initials CC  _____          Page 1 of 6          SELLER's Initials _____ _____

ABS Rev. 01/01/09

PGR-400-LA (R1/09)                                                      CARTER000060

Property address, street, city, state zip

**44   OCCUPANCY:** Occupancy/possession is to be granted at Act of Sale or on:
**45**   February 28th  2009
**46**                                                                      at 9:00 am                  A.M./P.M.

**47   CONTINGENCY FOR SALE OF BUYER'S OTHER PROPERTY:** ☐ This sale is contingent on the sale of other
**48**   property by the BUYER and the attached contingency clause addendum shall apply. ☑ This sale is not
**49**   contingent upon the sale of other property by the BUYER nor is the loan needed by the BUYER to obtain the Sale
**50**   Price contingent on the BUYER'S sale of any property.
**51**

**52**   ☐ **ALL CASH SALE:** BUYER warrants he has cash readily available to close the sale of this Property.
**53**

**54**   ☑ **FINANCED SALE:** This sale is conditioned upon the ability of BUYER to borrow with this Property as security
**55**   for the loan the sum of $_____ or 95 % of the Sale
**56**   Price by a mortgage loan or loans at an initial interest rate not to exceed 6.0 % per annum, interest and
**57**   principal, amortized over a period of not less than 30 years, payable in monthly installments or on any other
**58**   terms as may be acceptable to BUYER provided that these terms do not increase the cost, fees or expenses to
**59**   SELLER. Fees paid by SELLER that are required by lender, if any, shall not exceed
**60**   $ zero . BUYER agrees to pay discount points not to exceed n/a % of the loan amount.
**61**   Other financing conditions: _____
**62**   _____
**63**   _____
**64**

**65**   In the event BUYER is not able to secure financing, SELLER reserves the right to provide all or part of mortgage
**66**   loan(s) under the terms set forth above. The BUYER acknowledges and warrants that he has available the funds
**67**   which may be required to complete the sale of the Property including, but not limited to, the deposit, the down
**68**   payment, closing costs, pre-paid items, and expenses. BUYER agrees to make good faith application, which
**69**   includes ordering and paying for an appraisal and credit report if required for loan approval, within 03 calendar
**70**   days of acceptance of this offer or any counteroffer and written proof from the lender that the application has been
**71**   made shall be supplied by BUYER to the SELLER. Written commitment by the lender to make loan(s), without
**72**   contingencies except subject to approval of title and other contingencies normally imposed by lender excluding
**73**   ordering appraisal and credit report, shall be obtained by BUYER and shall constitute final loan approval. Final
**74**   loan approval shall be obtained on or prior to * February 20th. 2009 . Any extension of this date shall be in
**75**   writing and shall be signed by all parties. BUYER authorizes and instructs lender to release to SELLER or
**76**   SELLER'S Broker or Designated Agent, written verification of the loan application and final loan approval.
**77**

**78**   **APPRAISAL:** ☐ This sale is NOT conditioned on appraisal. ☑ This sale IS conditioned on the appraisal of the
**79**   Property being not less than the Sale Price. If the appraised value of the Property is equal to or greater than the
**80**   Sale Price, the BUYER shall pay the Sale Price agreed upon prior to the appraisal. If the appraised value is less
**81**   than the Sale Price, BUYER shall immediately provide written notification to SELLER of appraised value and
**82**   BUYER'S request for SELLER to reduce the Sale Price. Within three ( 03 ) calendar
**83**   days after SELLER'S receipt of such written notification of the appraised value, BUYER shall have the option to
**84**   pay the Sale Price agreed upon prior to the appraisal or to void this Agreement unless SELLER agrees in writing
**85**   to reduce the Sale Price to the appraised value or all parties agree to a new Sale Price.
**86**

**87**   **DEPOSIT:** Upon acceptance of this offer, SELLER and BUYER shall be bound by all terms and conditions of this
**88**   Agreement, and BUYER or BUYER'S agent will deliver immediately upon notice of acceptance of the offer a
**89**   deposit (the "Deposit") in the amount of $ 3,000. 00 or _____% of the Sale Price to be
**90**   paid in the form of:

**91**   ☐ Cash  $_____
**92**   ☑ Check $ 3,000. 00  (Three thousand dollars)
**93**   ☐ Promissory Note $_____
**94**   The Deposit shall be held by seller's broker _____.
**95**

**96**   Failure to deliver the Deposit shall be considered a breach of this Agreement. If the Deposit is held by a Broker, it
**97**   must be held in accordance with the rules of the Louisiana Real Estate Commission in a federally insured banking
**98**   or savings and loan institution without responsibility on the part of the Broker in the case of failure or suspension
**99**   of such institution. In the event the parties fail to execute an Act of Sale by date specified herein, and/or a dispute
**100**  arises as to ownership of, or entitlement to, the Deposit or funds held in escrow, the Broker shall abide by the
**101**  Rules and Regulations set forth by the Louisiana Real Estate Commission governing such matters.
**102**

**103**  **RETURN OF DEPOSIT:** The Deposit shall be returned to the BUYER and this Agreement declared null and void
**104**  without demand in consequence of the following events:

BUYER'S Initials _CC_ _____          Page 2 of 6          SELLER'S Initials

ABS Rev. 01/01/09
PGR-400-LA (R1/09)




New Orleans                    La        70124

Property address, street, city, state zip

105    1) If this Agreement is declared null and void by BUYER during the inspection period as set forth in lines 135
106    through 150 of this Agreement;
107    2) If this Agreement is subject to BUYER'S ability to obtain a loan and the loan is not obtained by the date set
108    forth in lines 68 through 74 of this Agreement but only if the BUYER has made timely application for the loan and
109    made good faith efforts to obtain the loan;
110    3) If the BUYER conditions the Sale Price on an appraisal and the appraisal is less than the Sale Price and the
111    SELLER will not reduce the Sale Price as set forth in lines 78 through 85 of this Agreement;
112    4) If the BUYER does not accept the leases or special assessments as set forth in lines 205 through 208 of this
113    Agreement;
114    5) If the SELLER is unable to timely deliver to the BUYER an approved sewerage and/or water inspection report
115    as set forth in lines 152 through 158.
116

117    **INSPECTION AND DUE DILIGENCE:** BUYER ACKNOWLEDGES THAT THE SALE PRICE OF THE
118    PROPERTY WAS NEGOTIATED BASED UPON THE PROPERTY'S APPARENT CURRENT CONDITION;
119    ACCORDINGLY, SELLER IS NOT OBLIGATED TO MAKE REPAIRS TO THE PROPERTY, INCLUDING
120    REPAIRS REQUIRED BY THE LENDER UNLESS OTHERWISE STATED HEREIN. THE SELLER IS
121    RESPONSIBLE FOR MAINTAINING THE PROPERTY IN SUBSTANTIALLY THE SAME OR BETTER
122    CONDITION AS IT WAS WHEN THE AGREEMENT WAS FULLY EXECUTED.
123

124    BUYER shall have an inspection period of ( 10 ) calendar days, commencing the first day after acceptance of
125    this Agreement wherein, BUYER may, at BUYER'S expense, have any inspections made by experts or others of
126    his choosing. Such inspections may include, but are not limited to, inspections for termites and other wood
127    destroying insects, and/or damage from same, molds, and fungi hazards, and analysis of synthetic stucco,
128    appliances, structures, foundations, roof, heating, cooling, electrical, plumbing systems, utility and sewer
129    availability and condition, out-buildings, square footage, school district, flood zone classifications, current zoning
130    and/or subdivision restrictive covenants and any items addressed in the SELLER'S Property Disclosure
131    Document. All testing shall be nondestructive testing. SELLER agrees to provide the utilities for inspections and
132    immediate access. If BUYER is not satisfied with the condition of the Property the BUYER may choose one of the
133    following options within the inspection period:
134

135    **Option 1:** BUYER may elect, in writing, to terminate the Agreement and declare the Agreement null and void; or
136    **Option 2:** BUYER may indicate in writing the deficiencies and desired remedies and SELLER will within seventy
137    two (72) hours respond in writing as to SELLER's willingness to remedy those deficiencies ("SELLER's
138    Response").
139

140    Should SELLER in the SELLER'S Response refuse to remedy any or all of the deficiencies listed by the BUYER,
141    then BUYER shall have seventy-two (72) hours from the date of SELLER's Response or seventy-two (72) hours
142    from the date that SELLER's Response was due, whichever is earlier, to: (a) accept SELLER's Response to
143    BUYER'S written requests or (b) accept the Property in its current condition, or (c) to elect to terminate this
144    Agreement. BUYER's response shall be in writing. Upon BUYER's failure to respond to the SELLER's Response
145    by the time specified or BUYER's electing, in writing, to terminate this Agreement, the Agreement shall be
146    automatically, with no further action required by either party, ipso facto null and void except for return of Deposit
147    to the BUYER. FAILURE TO MAKE INSPECTIONS OR TO GIVE WRITTEN NOTICE OF DEFICIENCIES AND
148    DESIRED REMEDIES TO SELLER (OR SELLER'S DESIGNATED AGENT) AS SET FORTH IN LINES 132
149    THROUGH 138 WITHIN THE INSPECTION PERIOD SHALL BE DEEMED AS ACCEPTANCE BY BUYER OF
150    THE PROPERTY'S CURRENT CONDITION.
151

152    **PRIVATE WATER/SEWERAGE: In the event there is a private water system or private sewerage system on**
153    **the Property, the SELLER shall provide, at SELLER's expense, approval by the appropriate governmental**
154    **entity of the private water or sewerage system. An approved sewerage and/or water inspection report will**
155    **be issued within thirty (30) days prior to the Act of Sale by the appropriate governmental agency. The**
156    **approved inspection and test on the water and/or sewerage system are to be furnished and paid for by**
157    **the SELLER. Any private water system or private sewerage system repairs necessary to obtain approved**
158    **inspection certificate will be paid by SELLER.**
159

160    **HOME SERVICE/WARRANTY:** A home service/warranty plan ☑ will   ☐ will not be purchased at the closing of
161    sale at a cost not to exceed $ 410.00 _____ to be paid by ☐ BUYER, ☑ SELLER, ☐
162    Neither, and ordered by purchaser's agent _____. It is understood that Agent/Broker may receive
163    compensation from the home warranty company. The home service warranty plan does not warrant pre-existing
164    defects and options, and does not supersede or replace any other inspection clause or responsibilities. If neither
165    BUYER nor SELLER accepts the home service warranty plan, they declare that they have been made aware of
166    the existence of such a plan, and further declare that they hold the Broker and Agents harmless from any
167    responsibility or liability due to their rejection of such a plan.

BUYER'S Initials _Cl_ _____          Page 3 of 6          SELLER'S Initials _____ _____

ABS Rev. 01/01/09

PGR-400-LA (R1/09)

CARTER000062

1821 Robert E. Lee Blvd.     New Orleans     La    70124

Property address, street, city, state zip

**WARRANTY OR AS IS CLAUSE WITH WAIVER OF RIGHT OF REDHIBITION:** (CHECK ONE ONLY)

☐ A. **SALE WITH WARRANTIES:** SELLER and BUYER acknowledge that this sale shall be with full SELLER warranties as to any claims or causes of action including but not limited to redhibition pursuant to Louisiana Civil Code Article 2520, *et seq.* and Article 2541, *et seq.*

☑ B. **SALE "AS IS" WITHOUT WARRANTIES:** SELLER and BUYER hereby acknowledge and recognize that the Property being sold and purchased is to be transferred in "as is" condition and further BUYER does hereby waive, relieve and release SELLER from any claims or causes of action for redhibition pursuant to Louisiana Civil Code Article 2520, *et seq.* and Article 2541, *et seq.* or for reduction of Sale Price pursuant to Louisiana Civil Code Article 2541, *et seq.* Additionally, BUYER acknowledges that this sale is made without warranty of fitness for ordinary or particular use pursuant to Louisiana Civil Code Article 2524. SELLER and BUYER agree that this clause shall be made a part of the Act of Sale.

☐ C. **NEW HOME WARRANTIES.** Notwithstanding lines 169 through 178 and irrespective of whether A or B above is checked, if the Property is a new construction, the parties agree that neither A or B will apply but instead the provisions of the New Home Warranty Act (LA R.S. 9:3141 *et seq.*) shall apply. The warranty of condition of this Property is governed by the New Home Warranty Act if a home on the Property is a "home" as defined in the New Home Warranty Act.

**PRORATIONS/OTHER COSTS:** Real estate taxes, rents, assessments, condominium dues, assessments and/or dues owed to homeowners associations and the like for the current year are to be prorated through the date of the Act of Sale. Act of Sale costs, title insurance and other costs required to obtain financing shall be paid by BUYER, unless otherwise stated herein. All necessary tax, mortgage, conveyance and release certificates or cancellations and SELLER closing fees, if any, shall be paid by SELLER. SELLER shall pay all previous years' taxes, assessments, condominium dues, assessments and/or dues owed to homeowners associations and the like. All special assessments bearing against the Property prior to Act of Sale, other than those to be assumed by written agreement as of the date of the Act of Sale are to be paid by SELLER.

**MERCHANTABLE TITLE/CURATIVE WORK:** SELLER shall deliver to BUYER a merchantable title at SELLER's costs (see lines 198 through 203). In the event curative work in connection with the title to the Property is required or is a requirement for obtaining the loan(s) upon which this Agreement is conditioned, the parties agree to and do extend the date for passing the Act of Sale to a date not more than fifteen _____ (15 ) calendar days from the date of the Act of Sale stated herein. SELLER's title shall be merchantable and free of all liens and encumbrances except those that can be satisfied at Act of Sale. All costs and fees required to make title merchantable shall be paid by SELLER. SELLER shall make good faith efforts to deliver merchantable title. SELLER's inability to deliver merchantable title within the time stipulated herein shall render this Agreement null and void, reserving unto BUYER the right to demand the return of the Deposit and to recover from SELLER actual costs incurred in processing of sale as well as legal fees incurred by BUYER.

**LEASES/SPECIAL ASSESSMENTS:** The sale is conditioned upon BUYER'S receipt of a copy of all written leases, excluding mineral leases, and unpaid special assessments from SELLER within five (5) calendar days of acceptance of the Agreement. Special assessments shall mean an assessment levied on Property to pay the cost of local improvements.

**FINAL WALK THROUGH:** BUYER shall have the right to re-inspect the Property within five (5) days prior to the Act of Sale, or occupancy, whichever will occur first in order to determine if the Property is in the same or better condition as it was at the initial inspection(s) and to insure all agreed upon repairs have been completed. SELLER agrees to provide utilities for the final walk through and immediate access to the Property.

**DEFAULT OF AGREEMENT BY SELLER:** In the event of any other default of this Agreement by SELLER except as set forth in lines 103 through 115 or lines 200 through 203, BUYER shall at BUYER'S option have the right to declare this Agreement null and void with no further demand, or to demand and/or sue for any of the following:
1) Termination of this Agreement;
2) Specific performance;
3) Termination of this Agreement and an amount equal to 10% of the Sale Price as stipulated damages.

Further, BUYER shall be entitled to the return of the Deposit. The prevailing party to any litigation brought to enforce any provision of this Agreement shall be awarded their attorney fees and costs. The SELLER may also be liable for Broker fees.

**DEFAULT OF AGREEMENT BY BUYER:** In the event of any other default of this Agreement by BUYER except as set forth in lines 103 through 115, SELLER shall have at SELLER's option the right to declare this Agreement null and void with no further demand, or to demand and sue for any of the following:

BUYER'S Initials _CC_ _____      Page 4 of 6      SELLER'S Initials

ABS Rev. 01/01/09

PGR-400-LA (R1/09)

CARTER000063

New Orleans                    La        70124
Property address, street, city, state zip

229   1) Termination of this Agreement;
230   2) Specific performance;
231   3) Termination of this Agreement and an amount equal to 10% of the Sale Price as stipulated damages.
232   Further, SELLER shall be entitled to retain the Deposit. The prevailing party to any litigation brought to enforce
233   any provision of this Agreement shall be awarded their attorney fees and costs. The BUYER may also be liable
234   for Broker fees.
235
236   **MOLD RELATED HAZARDS NOTICE:** An informational pamphlet regarding common mold related hazards that
237   can affect real property is available at the EPA website **http://www.epa.gov/iaq/molds/index.html.** By initialing
238   this page of the Agreement, BUYER acknowledges that the real estate agent has provided BUYER with the EPA
239   website enabling BUYER to obtain information regarding common mold related hazards.
240
241   **OFFENDER NOTIFICATION:** The Louisiana State Police maintains the State Sex Offender and Child Predator
242   Registry through the Louisiana Bureau of Criminal Identification and Information. It is a public access database of
243   the locations of individuals who are required to register pursuant to LA R.S. 15:540 *et seq.* The website for the
244   database is **http://www.lasocpr.lsp.org/socpr/.** Sheriff and police departments serving jurisdictions of 450,000
245   also maintain such information. Inquiries can be made by phone at 1-800-858-0551 or 1-225-925-6100. Send
246   written inquiries to Post Office Box 66614; Box A-6, Baton Rouge, Louisiana 70896.
247
248   **CHOICE OF LAW:** This Agreement shall be governed by and shall be interpreted in accordance with the laws of
249   the State of Louisiana.
250
251   **DEADLINES:** TIME IS OF THE ESSENCE, and all deadlines are final, except where modifications, changes, or
252   extensions are made in writing and signed by all parties to this Agreement. All "calendar days" as used in this
253   Agreement shall end at 12:00 midnight in Louisiana.
254
255   **ADDITIONAL TERMS AND CONDITIONS:**
256   See attached  "Amendment to Purchase Agreement" dated February 4th.  2009
257   _____
258   _____
259   _____
260   _____
261
262   **ROLES OF BROKERS AND DESIGNATED AGENTS:** Broker(s) and Designated Agent(s) have acted only as
263   real estate brokers to bring the parties together and make no warranty to either party for performance or non
264   performance of any part of this Agreement or for any warranty of any nature unless specifically set forth in writing.
265   Broker(s) and Designated Agent(s) make no warranty or other assurances whatsoever concerning Property
266   measurements, square footage, room dimensions, lot size, Property lines or boundaries. Broker(s) and
267   Designated Agent(s) make no representations as to suitability or to a particular use of the Property, and BUYER
268   has or will independently investigate all conditions and characteristics of the Property which are important to
269   BUYER. BUYER is not relying on the Broker(s) nor the Designated Agent(s) to choose a representative to inspect
270   or re-inspect the Property; BUYER understands any representative desired by BUYER may perform this function.
271   In the event Broker/Agent(s) provides names or sources for such advice or assistance, Broker/Agent(s) does not
272   warrant the services of such experts or their products and cannot warrant the condition of Property or interest to
273   be acquired, or guarantee that all defects are disclosed by SELLER(s). Broker/Agent(s) do not investigate the
274   status of permits, zoning, code compliance or restrictive covenants. The Broker(s) and Designated Agent(s)
275   specifically make no warranty whatsoever as to whether or not the Property is situated in or out of the
276   Government's hundred year flood plan or is or would be classified as wetlands by the U.S. Army Corp. of
277   Engineers, or as to the presence of wood destroying insects or damage therefrom. BUYER(s) are to satisfy
278   themselves concerning these issues. Designated Agent shall be an independent contractor for Broker if the
279   conditions as set forth in LA R.S. 37:1446(h) are met.
280
281   **LIST ADDENDA TO BE ATTACHED AND MADE A PART OF THIS AGREEMENT:**
282   ☐ Contingency for Sale of Buyer's Other Property Addendum
283   ☐ Condominium Addendum
284   ☐ FHA Amendatory Clause
285   ☐ _____
286   ☐ _____
287   If any of the pre-printed portions of this Agreement vary or are in conflict with any additional or modified terms on
288   blanks provided in this form or Addendum attached to this Agreement, the additional, modified or Addendum
289   provisions control.

BUYER'S Initials *CL* ___ ____          Page 5 of 6          SELLER'S Initials _____ _____

ABS Rev. 01/01/09

PGR-400-LA (R1/08)

FOR EXCLUSIVE USE OF PRUDENTIAL GARDNER, REALTORS AND THEIR AFFILIATED LICENSEES.
PRUDENTIAL GARDNER, REALTORS ASSUMES NO RESPONSIBILITY FOR ANY UNAUTHORIZED USE OF THIS FORM.

Property Description (Address, City, State, Zip)   261 W. Robert E. Lee Blvd., New Orleans, LA 70124

## PROPERTY DISCLOSURE DOCUMENT FOR RESIDENTIAL REAL ESTATE

Answer all questions to the best of your knowledge. Explain any "yes" answers fully at the end of each section.
Y = yes     N= no     NK = no knowledge

## SECTION 1: LAND

(1) Are there any servitudes/encroachments regarding the property, other than typical/customary utility servitudes, that would affect the use of the property?   ☐ Y   ☑ N   ☐ NK
(2) Are there any rights vested in others? Check all that applies and explain at the end of this section.

| | | | | | |
|---|---|---|---|---|---|
| Timber rights | ☐ Y ☑ N ☐ NK | | Common driveway | ☐ Y ☑ N ☐ NK |
| Right of ingress or egress | ☐ Y ☑ N ☐ NK | | Mineral rights | ☐ Y ☑ N ☐ NK |
| Right of way | ☐ Y ☑ N ☐ NK | | Surface rights | ☐ Y ☑ N ☐ NK |
| Right of access | ☐ Y ☑ N ☐ NK | | Air rights | ☐ Y ☑ N ☐ NK |
| Servitude of passage | ☐ Y ☑ N ☐ NK | | Usufruct | ☐ Y ☑ N ☐ NK |
| Servitude of drainage | ☐ Y ☑ N ☐ NK | | Other _____ | ☐ Y ☐ N ☐ NK |

(3) Has any part of the property been determined a wetland by the United States Army Corps of Engineers under §404 of the Clean Water Act?   ☐ Y   ☑ N   ☐ NK   (a) Is such a determination pending?   ☐ Y   ☑ N   ☐ NK
(b) What date was determination made? _____

> The Clean Water Act is a federal law that protects the wetlands of the United States. Section 404 of the Act contains permit requirements for altering or building on property that has been determined a wetland by the Army Corps of Engineers. The Corps may assess a fee to the **SELLER** or **PURCHASER** of a property for this determination. A property that has been determined a wetland may result in additional costs for a Section 404 permit. Documentation is attached and becomes a part of this property disclosure if the property described herein has been determined a wetland by the Corps.

(4) Has any flooding, water intrusion, accumulation, or drainage problem been experienced with respect to the land? If yes, indicate the nature and frequency of the defect at the end of this section.   ☑ Y   ☐ N   ☐ NK
(5) What is/are the flood zone classification(s) of the property?  A - 3  (a) What is the source and date of this information? (Check all that apply.) ☐ Survey/Date _____  ☑ Flood Elevation Certificate/Date 01/09/09
☐ Flood Insurance Policy/Date _____  ☐ Other _____/Date _____  (b) Does SELLER have a flood elevation certificate in SELLER'S possession that will be shared with BUYER?   ☑ Y   ☐ N   ☐ NK
(6) If the property is mortgaged, did the lender require you to buy flood insurance?   ☑ Y   ☐ N   ☐ NK
Question Number     Explanation of "Yes" answers     ☐ Additional sheet is attached

#4) Property flooded approx. 5' during Hurricane Katrina in August 2005
Home was Gutted on entire first floor and treated.

## SECTION TWO: TERMITES, WOOD-DESTROYING INSECTS AND ORGANISMS

(7) Has the property ever had termites or other wood-destroying insects or organisms?   ☐ Y   ☑ N   ☐ NK
(8) Was there any damage to the property?   ☐ Y   ☑ N   ☐ NK
(9) Was the damage repaired?   ☐ Y   ☐ N   ☐ NK
(10) Is the property currently under a termite contract?   ☐ Y   ☑ N   ☐ NK
(a) Name of company _____ (b) Date contract expires _____
(c) List any structures not covered by contract _____
Question Number     Explanation of "Yes" answers     ☐ Additional sheet is attached
_____
_____
_____
_____

## SECTION 3: STRUCTURE

(11) Are there any defects regarding the following? (Check all that apply and explain at the end of this section.)

| | | | | |
|---|---|---|---|---|
| Roof | ☐ Y ☑ N ☐ NK | | Ceilings | ☐ Y ☑ N ☐ NK |
| Interior walls | ☐ Y ☑ N ☐ NK | | Exterior walls | ☐ Y ☑ N ☐ NK |
| Floor | ☐ Y ☑ N ☐ NK | | Foundation | ☐ Y ☑ N ☐ NK |
| Attic spaces | ☐ Y ☑ N ☐ NK | | Basement | ☐ Y ☐ N ☐ NK |
| Porches | ☐ Y ☑ N ☐ NK | | Overhangs | ☐ Y ☑ N ☐ NK |
| Steps/Stairways | ☐ Y ☑ N ☐ NK | | Railings | ☐ Y ☑ N ☐ NK |
| Pool | ☐ Y ☐ N ☐ NK | | Spa | ☐ Y ☐ N ☐ NK |
| Decks | ☐ Y ☑ N ☐ NK | | Patios | ☐ Y ☑ N ☐ NK |
| Windows | ☐ Y ☑ N ☐ NK | | Other _____ | ☐ Y ☐ N ☐ NK |

LREC Rev. 03/01/08     Seller's Initials: _____     Purchaser's Initials: CL _____     1 of 3

FOR EXCLUSIVE USE OF PRUDENTIAL GARDNER, REALTORS AND THEIR AFFILIATED LICENSEES.
PRUDENTIAL GARDNER, REALTORS ASSUMES NO RESPONSIBILITY FOR ANY UNAUTHORIZED USE OF THIS FORM.

Property Description (Address, City, State, Zip)  **261 W. Robert E. Lee Blvd., New Orleans, LA 70124**

Y = YES   N = NO   NK = NO KNOWLEDGE

(12) Has any structure on the property ever taken water by flooding (rising water or otherwise)? If yes, give the nature and frequency of the defect at the end of this section.    ☑Y ☐ N ☐ NK

(13) What is the approximate age of all structures on the property? Main structure *10 yrs.* Other structures _____

> **SELLER must complete and provide the "Disclosure on Lead-Based Paint and Lead-Based Paint Hazard Addendum"** that is included with this property disclosure if any structure was built before 1978.

(14) What is the approximate age of the roof of each structure? Main structure *2½ yrs.* Other structures _____

(15) Does the property contain exterior insulation and finish system (EIFS) or other synthetic stucco? ☐Y ☐ N ☐ NK

(16) What is the approximate square footage of the living area of each structure on the property? Include the source of this information. Square footage of *living area* is *2180* square feet. Source *Measured /appraisa.* Square footage of _____ is _____ square feet. Source _____

Question Number    Explanation of "Yes" answers   ☐ Additional sheet is attached

_____
_____
_____
_____

## SECTION 4: PLUMBING, WATER, GAS, AND SEWERAGE

(17) Are there any defects with the plumbing system?    ☐ Y ☑ N ☐ NK

(18) Are there any defects with the water piping?    ☐ Y ☑ N ☐ NK

(a) Are there any defects with the water quality, quantity, or pressure?    ☐ Y ☑ N ☐ NK

(b) The water is supplied by: ☑ Municipality ☐ Private utility ☐ On-site system ☐ Shared well system ☐ None

(c) If there is a well, when was the last time the water was tested? Date _____ Results _____

(19) Is there gas service available to the property/structure?    ☑Y ☐ N ☐ NK

(a) If yes, what type? ☐ Butane ☑ Natural ☐ Propane

(b) If yes, are there any defects with it?    ☐ Y ☑ N ☐ NK

(20) Are there defects with any water heater?    ☐ Y ☑ N ☐ NK

(a) Age of Unit 1 *10 yrs.* ☑ Gas ☐ Electric    (b) Age of Unit 2 _____ ☐ Gas ☐ Electric

(21) The sewerage service is supplied by: ☑ Municipality ☐ Other _____ ☐ NK

> **SELLER must provide the attached "Disclosure of Information about Residential Sewage Treatment Systems Addendum"** if the property described herein is not served by a municipality waste treatment.

Question Number    Explanation of "Yes" answers   ☐ Additional sheet is attached

_____
_____
_____
_____

## SECTION 5: ELECTRICAL, HEATING AND COOLING, APPLIANCES

For major repairs or replacements relative to Section 5, list the date and nature of the repair or replaced component at the end of the section.

(22) Are there any defects with the electrical system?    ☐Y ☑ N ☐ NK

(23) Are there any defects with the heating or cooling systems?    ☐ Y ☑ N ☐ NK

(24) What type of cooling system is installed? ☑ Central ☐ Window unit ☐ Other

(a) Source: ☑ Electric ☐ Gas ☐ Heat pump ☐ Other

(25) What type of heating system is installed? ☑ Central ☐ Window unit ☐ Other

(a) Source: ☐ Electric ☑ Gas ☐ Heat pump ☐ Other

(26) If a fireplace exists, is it working?    ☑Y ☐ N ☐ NK

(a) What type is it? ☑ Gas ☐ Wood ☐ Vented ☑ Ventless ☐ Electric ☐ Other

(27) Are there any defects in any permanently installed or built-in appliances?    ☐ Y ☑ N ☐ NK

Question Number    Explanation of "Yes" answers   ☐ Additional sheet is attached

_____
_____
_____

LREC Rev. 03/01/08    Seller's Initials: _____    Purchaser's Initials: *CL* _____    2 of 3

FOR EXCLUSIVE USE OF PRUDENTIAL GARDNER, REALTORS AND THEIR AFFILIATED LICENSEES.
PRUDENTIAL GARDNER, REALTORS ASSUMES NO RESPONSIBILITY FOR ANY UNAUTHORIZED USE OF THIS FORM.

Property Description (Address, City, State, Zip)   261 W. Robert E. Lee Blvd., New Orleans, LA 70124

Y = YES    N= NO    NK = NO KNOWLEDGE

## SECTION 6: MISCELLANEOUS

(28) Has there been property damage related to the land or the improvements thereon, including, but not limited to, fire, windstorm, flood, hail, lightning, or other property damage?   ☑ Y   ☐ N   ☐ NK
  (a) If yes, were all related property damages, defects, and/or conditions repaired?   ☑ Y   ☐ N   ☐ NK
(29) What is the zoning of the property?   Residential
  (a) Has it ever been zoned for commercial or industrial use or is it located in a historical district? ☐ Y   ☑   ☐ NK
(30) Does the property and its present usage conflict with current zoning, building, and/or safety restrictions?   ☐ Y   ☑ N   ☐ NK

(31) Are there any current or pending assessments, dues, liens, taxes owing on the property?   ☐ Y   ☑ N   ☐ NK
  (a) Is membership in a homeowners' association (HOA), condominium owners' association (COA), or property owners' association (POA) required as the result of owning this property?   ☐ Y   ☑ N   ☐ NK
  (b) Are any HOA, COA, or POA dues required?   ☐ Y   ☑ N   ☐ NK
  (c) If yes, what is the amount? $_____ per _____   ☐ Y   ☑ N   ☐ NK
  (d) Are there any pending special assessments?   ☐ Y   ☑ N   ☐ NK
  (e) If yes, what is the amount? $_____ per _____   ☐ Y   ☑ N   ☐ NK

Any information contained in this property disclosure regarding homeowners' associations (HOA), condominium owners' associations (COA), or property owners' associations (POA) is summary in nature. The covenants and association governing documents are a matter of public record and can be obtained from the conveyance records on file at the Clerk of Court in the parish where the property is located.

(32) Were any additions or alterations made to the property?   ☑ Y   ☐ N   ☐ NK
  (a) If yes, were the necessary permits and inspections obtained for all additions or alterations?   ☑ Y   ☐ N   ☐ NK
(33) Is there a homestead exemption in effect?   ☑ Y   ☐ N   ☐ NK
(34) Is there high speed Internet access available to the property?   ☑ Y   ☐ N   ☐ NK
(35) Is there any pending litigation regarding the property?   ☑ Y   ☐ N   ☐ NK
(36) Does the property or any of its structures contain any of the following? (Check all that apply and provide the nature and frequency at the end of this section.)

| | Y | N | NK | | Y | N | NK |
|---|---|---|---|---|---|---|---|
| Asbestos | ☐ | ☐ | ☑ | Formaldehyde | ☐ | ☐ | ☑ |
| Radon gas | ☐ | ☐ | ☑ | Chemical storage tanks | ☐ | ☐ | ☑ |
| Contaminated soil | ☐ | ☐ | ☑ | Contaminated water | ☐ | ☐ | ☑ |
| Hazardous waste | ☐ | ☐ | ☑ | Toxic Mold | ☐ | ☐ | ☑ |
| Mold/Mildew | ☑ | ☐ | ☐ | Pets | ☐ | ☐ | ☑ |
| Electromagnetic fields | ☐ | ☐ | ☑ | Crystal meth exposure | ☐ | ☐ | ☑ |

Other adverse materials or conditions   ☐ Y   ☐ N   ☐ NK
(37) Seller(s) elect to sell property "As Is" with full waiver of redhibition rights in act of sale as per L.A.C.C. Art. 2520 et seq. as per attached "As Is" Addendum? ☑ Y   ☐ N
Question Number     Explanation of "Yes" answers   ☐ Additional sheet is attached

_____
_____
_____

## ACKNOWLEDGEMENTS

I/We attest that the above statements and explanations have been provided by me/us and are true and correct to the best of my/our knowledge. (If either party is represented by a real estate licensee, your signature below acknowledges that you have been informed of your duties and rights under LSA-R.S. 9:3195-3199 and have read and understand the informational statement.)

Seller (sign) _____ (print) DANIEL CARTER   Date 01-18-09 Time _____
Seller (sign) Amy Freese (print) AMY FREESE   Date 1-18-09 Time _____

Purchaser(s) signing below acknowledge(s) receipt of this property disclosure.

Purchaser (sign) Cathy Love (print) CATHY LOVE   Date 2/4/09 Time 1945
Purchaser (sign) _____ (print) _____   Date _____ Time _____

Seller(s) acknowledge(s) that the information contained herein is current as of this date.

Seller (sign) _____ (print) DANIEL CARTER Date 2/5/09 Time 7:00 pm
Seller (sign) Amy Freese Carter (print) Amy Freese Carter   Date 2/05/09 Time 7:00

Prepared by:
Title Management Group, Inc.
3421 North Causeway Blvd., Suite 300
Metairie, LA 70001
Ph (504)834-2977 Fax (504)834-2978
File#: 9-76-10 Notarial: DJ

<u>**CASH SALE**</u>

**STATE OF LOUISIANA**
**PARISH OF JEFFERSON**

On the below stated date, before the below stated Notary Public, and in the presence of the subscribing witnesses personally appeared:

**Daniel T. Carter (SS# XXX-XX-2102),** a person of the full age of majority and competency and resident of Orleans Parish, who swears unto me, Notary Public, that he has been married but once and then to Amy Freese Carter with whom he is presently living and residing and further declares that the property being conveyed herein is his separate and paraphernal property and that his present mailing address is 6114 Bellaire Drive, New Orleans , LA 70124, hereinafter referred to as SELLER

**AND NOW TO THESE PRESENTS CAME AND INTERVENED:**
**Amy Freese Carter,** wife of said Daniel T. Carter, who hereby concurs in the foregoing declaration of her said husband regarding the separate nature of the sale money funds and who hereby acknowledges that the herein described property is the separate property of her said husband/wife.

who declared that for the price of **Three Hundred Thousand and 00/100 ($300,000.00)\*** cash, receipt of which is hereby acknowledged, SELLER does hereby sell and deliver, with full warranty of title and subrogation to all rights and actions of warranty SELLER may have, unto:

**Alfredo Jose Calix (SS# XXX-XX-9058)** and **Yojna Singh Calix (SS# XXX-XX-0512),** both persons of the full age of majority and competency and residents of Orleans Parish, who swear unto me, Notary Public, that they have been married but once and then to each other and are presently living and residing together and that their present mailing address is 261 West Robert E. Lee Blvd., New Orleans, LA 70124, hereinafter called BUYER

the following described property, the possession and delivery of which BUYER acknowledges:

**ALL THAT CERTAIN LOT OF GROUND,** together with all the buildings and improvements thereon, and all the rights, ways, privileges, servitudes, appurtenances and advantages thereunto belonging or in anywise appertaining, situated in the Seventh District of the City of New Orleans, State of Louisiana, within the area bounded by West Robert E. Lee Boulevard (formerly Lee Avenue), Regent Street (formerly Mercer Street), Lake Avenue, and the boundary line of Hazeur Tract, which lot is designated as L-1, on plan of resubdivision of Original Lots L and K, West End Park by Gilbert, Kelly & Couturie, Inc., Surveying and Engineering, dated February 27, 1986, and approved by the City Planning Commission of the City of New Orleans on July 7 1986, registered as COB 804, folio 536 and to said lot is located and measures as follows:

Lot L-1 commences 547 feet 8 inches from the intersection of Regent Street and West Robert E. Lee Boulevard, and measures thence 40 feet 6 inches front on West Robert E. Lee Blvd., same width in the rear by a depth of 120 feet between equal and parallel lines. All as more fully shown on a survey by Gilbert, Kelly & Couturie, Inc., dated May 2, 1997.

Being the same property acquired by Daniel T. Carter from Henry St. Paul Provosty in act dated 12/30/2005 and recorded in CIN 316869, Orleans Parish, Louisiana.

Made and Accepted Subject to:

Deleting any covenant, condition, or restriction if any, based upon race, color, religion, sex, handicap, familial status, or national origin, unless and only to the extent that such covenants, conditions or restrictions (a) are exempt under Chapter 42, Section 3607 of the United States Code or (b) relate to handicap but do not discriminate against handicapped persons.

Subject to all previously recorded building restrictions, servitudes, building set back lines; and oil, gas and mineral reservations, conveyances, servitudes and leases of record.

It is understood by the parties hereto that the SELLER herein makes no warranty as to soil conditions on the lot herein conveyed, the warranty referred to herein being restricted in its interpretation to warrant solely as to marketability of title.

**WAIVER OF WARRANTY and REDHIBITION RIGHTS AGREEMENT**

IT IS EXPRESSLY AGREED THAT THE IMMOVABLE PROPERTY HEREIN CONVEYED AND ALL IMPROVEMENTS AND COMPONENT PARTS, PLUMBING, ELECTRICAL SYSTEMS, MECHANICAL EQUIPMENT, HEATING AND AIR CONDITIONING SYSTEMS, BUILT-IN APPLIANCES, AND ALL OTHER ITEMS LOCATED HEREON ARE CONVEYED BY SELLER AND ACCEPTED BY BUYER **"AS IS, WHERE IS,"** WITHOUT ANY WARRANTIES OF ANY KIND WHATSOEVER, EVEN AS TO THE METES AND BOUNDS, ZONING, OPERATION, OR

CARTER000068

SUITABILITY OF THE PROPERTY FOR THE USE INTENDED BY THE BUYER, WITHOUT REGARD TO THE PRESENCE OF APPARENT OR HIDDEN DEFECTS AND WITH THE BUYER'S FULL AND COMPLETE WAIVER OF ANY AND ALL RIGHTS FOR THE RETURN OF ALL OR ANY PART OF THE PURCHASE PRICE BY REASON OF ANY SUCH DEFECTS.

BUYER ACKNOWLEDGES AND DECLARES THAT NEITHER THE SELLER NOR ANY PARTY, WHOMSOEVER, ACTING OR PURPORTING TO ACT TO ANY CAPACITY WHATSOEVER ON BEHALF OF THE SELLER HAS MADE ANY DIRECT, INDIRECT, EXPLICIT OR IMPLICIT STATEMENT, REPRESENTATION OR DECLARATION, WHETHER BY WRITTEN OR ORAL STATEMENT OR OTHERWISE, AND UPON WHICH THE BUYER HAS RELIED, CONCERNING THE EXISTENCE OR NON-EXISTENCE OF ANY QUALITY, CHARACTERISTIC OR CONDITION OF THE PROPERTY HEREIN CONVEYED. BUYER HAS HAD FULL, COMPLETE AND UNLIMITED ACCESS TO THE PROPERTY HEREIN CONVEYED FOR ALL TEST AND INSPECTIONS WHICH BUYER, IN BUYER'S SOLE DISCRETION, DEEMS SUFFICIENTLY DILIGENT FOR THE PROTECTION OF BUYER'S INTERESTS.

BUYER EXPRESSLY WAIVES THE WARRANTY OF FITNESS AND THE WARRANTY AGAINST REDHIBITORY VICES AND DEFECTS, WHETHER APPARENT OR INTENT, IMPOSED BY LOUISIANA CIVIL CODE ARTICLES 2520 THROUGH 2548, INCLUSIVE, AND ANY OTHER APPLICABLE STATE OR FEDERAL LAW AND THE JURISPRUDENCE THEREUNDER.

BUYER ALSO WAIVES ANY RIGHTS BUYER MAY HAVE IN REDHIBITION TO A RETURN OF THE PURCHASE PRICE OR TO A REDUCTION OF THE PURCHASE PRICE PAID PURSUANT TO LOUISIANA CIVIL CODE ARTICLES 2520 THROUGH 2548, INCLUSIVE, IN CONNECTION WITH THE PROPERTY HEREBY CONVEYED TO BUYER BY SELLER. BY BUYER'S SIGNATURE, BUYER EXPRESSLY ACKNOWLEDGES ALL SUCH WAIVERS AND BUYER'S EXERCISE OF BUYER'S RIGHT TO WAIVE WARRANTY PURSUANT TO LOUISIANA CIVIL COLE ARTICLE 2520 AND 2548, INCLUSIVE.

THE HEREIN AGREEMENT, UPON ITS EXECUTION BY BOTH BUYER AND SELLER, IS HEREWITH MADE AN INTEGRAL PART OF THE AFOREMENTIONED AGREEMENT TO PURCHASE AND SELL.

All parties signing the within instrument have declared themselves to be of full legal capacity. The certificate of mortgages required by Article 3361 of the revised Civil Code of Louisiana is dispensed with by the parties. Taxes for the current year are prorated between the parties. All agreements and stipulations herein contained and all the obligations herein assumed shall inure to the benefit of and be binding upon the heirs, successors and assigns of the respective parties, and the BUYER, their heirs and assigns shall have and hold the described property in full ownership forever.

THUS DONE, READ AND PASSED at my office in *Metairie* Louisiana, on this *14* day of *October 2010* in the presence of the undersigned competent witnesses and me, Notary.

WITNESSES:

Printed Name - *CHARO DIAZ*

Printed Name - *PHYLIS STEWART*

_____
Daniel T. Carter

_____
Amy Freese Carter, Intervenor Spouse

_____
Alfredo Jose Calix

_____
Vijiny Singh Calix

_____
NOTARY PUBLIC
Qualified in the Parish of
State of _____
Bar Roll or Notary I.D. # _____

CDWINDO1-003944



Daniel Carter-261 W Robert E Lee-Law Office of Joseph M Bruno



Daniel Carter-261 W Robert E Lee-Law Office of Joseph M Bruno



Daniel Carter-261 W Robert E Lee-Law Office of Joseph M Bruno

Attachment 3

CARTER000070

# PAPPALARDO CONSULTANTS, INCORPORATED
### REALTORS • APPRAISERS • COUNSELORS

April 8, 2010

Daniel T. Carter
261 West Robert E. Lee
New Orleans, LA 70124

Invoice #100403

## INVOICE

**Real Estate Appraisal**
**261 West Robert E. Lee**
**New Orleans, LA 70124**

TOTAL DUE UPON RECEIPT.........................$400.00

PLEASE REMIT TO:

PAPPALARDO CONSULTANTS, INC.
145 ROBERT E. LEE BLVD., SUITE 202
NEW ORLEANS, LA 70124

FEDERAL TAX IDENTIFICATION #72-143423

145 Robert E. Lee Boulevard, Suite 202 • New Orleans, LA 70124

Attachment 4

CARTER000071





**Prudential**

**GARDNER**, REALTORS®

*Cancel Contract*
*Lost Sale*

GBS Properties, L.L.C. dba Prudential Gardner, Realtors®
ADMINISTRATIVE OFFICES: 3332 N. Woodlawn Ave., Metairie, LA 70006

FOR EXCLUSIVE USE OF
PRUDENTIAL GARDNER, REALTORS
AND THEIR AFFILIATED LICENSEES.
PRUDENTIAL GARDNER, REALTORS
ASSUMES NO RESPONSIBILITY FOR ANY
UNAUTHORIZED USE OF THIS FORM.

# CANCELLATION OF AGREEMENT TO PURCHASE #319,000

It is hereby agreed and understood that Amy Freese~Carter and Daniel Carter _____ as
SELLERS(S), and Cathy Love _____ , as PURCHASER(S) do mutually cancel and
nullify the "Agreement to Purchase or Sell" dated February 4th. 2009 _____ on the property located
at 261 W. Robert E. Lee Blvd _____ (City) New Orleans _____ (State) Louisiana _____

The undersigned parties do hereby authorize Prudential Gardner Realtor's _____ (listing broker) to return
the PURCHASER'S deposit, in full, amounting to $ 3,000.00 _____ cash and/or $ n/a _____ demand
note upon receipt of this instrument fully executed by all parties. Check to be made payable to:
Cathy Love _____.

Prudential Gardner, Realtors, and Prudential Gardner Realtor's _____ hereby waive any and all
commissions due them under said "Agreement to Purchase and Sell" provided that, if said SELLER(S)
and PURCHASER(S) negotiate a sale of said property between themselves at any price within a period of
twelve (12) months after the date of this instrument, SELLER(S) shall pay to Prudential Gardner, Realtors,
and Prudential Gardner Realtor's _____ a commission of FIVE % _____ (% of the sale price).

The undersigned parties, including real estate broker(s), hereby release each other from any and all
obligations and liability in connection with said "Agreement to Purchase or Sell," except as qualified above.

---

**REASON FOR CANCELLATION** *(Place an "X" on the best answer)*

☐ 1. Insufficient Down Payment
☐ 2. Negative Seller Proceeds
☐ 3. Buyer/Seller Defaults
☐ 4. Low Appraisal
☐ 5. Required repairs not completed
☐ 6. Not Acceptable After Inspection

☐ 7. Bad Title/Encroachment
☐ 8. Lender Rejected Loan
☐ 9. Failure of Buyer to Sell Home
☐ 10. Credit/ Bankruptcy
☐ 11. Not qualified Due to Insufficient Income
☐ 12. Other Purchasers discovery of
"Chinese drywall"

*Note

---

Cathy Love _____ 4/5/09 _____ Seller _____ 4-10-09
Purchaser _____ Date _____ Seller _____ Date

_____ Amy Freese Carter 4/10/09
Purchaser _____ Date _____ Seller _____ Date
Chris M. Smith _____ 04/05/09
Selling Agent _____ Date _____ Listing Agent _____ Date

SEND CHECK TO (BRANCH): St. Charles Ave branch _____

For: Prudential Gardner, Realtors        For: _____ (other broker)

By: _____ By: _____
Manager _____ Date _____ Manager _____ Date

---

**"The #1 Real Estate and Home Services Company in Southeast Louisiana and the Southern Mississippi Region"**

An independently owned and operated member of The Prudential Real Estate Affiliates, Inc. ® Prudential is a service mark of The Prudential Insurance Company of America.        PGR-419 (R10/05)

Attachment 5



**Prudential**

GARDNER
REALTORS®

GBS Properties, L.L.C. dba Prudential Gardner, Realtors®
ADMINISTRATIVE OFFICES
3332 N. Woodlawn Ave., Metairie, LA 70006



Exclusive Affiliate of
SOTHEBY'S
International Realty



FOR EXCLUSIVE USE OF PRUDENTIAL GARDNER, REALTORS
AND THEIR AFFILIATED LICENSEES
PRUDENTIAL GARDNER, REALTORS ASSUMES NO
RESPONSIBILITY FOR ANY UNAUTHORIZED USE OF THIS FORM

# CANCELLATION OF MARKETING AGREEMENT

ADDRESS  261 W. Robert E. Lee Blvd.

New Orleans, La  70124

MLS # _____

DATED: April 6th. 2009

It is hereby agreed that the expiration date of the above referenced Marketing Agreement be changed

from  07/19/2009  to  04/06/2009 . In consideration of the early

termination, the seller(s) agree to pay Prudential Gardner Realtors, Inc., a broker processing fee of

n/a  % or $ zero . The broker processing fee will be credited back to seller(s) at closing

in the event the property is re-listed by Prudential Gardner Realtors, Inc.

In addition, any sale of the property negotiated within 6 months after the amended termination date

to any party to whom said property was submitted during the term of the Marketing Agreement will

be subject to a commission of  5.0  % or $_____.

It is further agreed that if this property is offered for sale at any time within six (6) months after the

amended termination date, the property will be listed exclusively with  Prudential Gardner Realtors,

Inc., for a period of no less than the original Marketing Agreement, at the commission, terms,

and conditions agreed to in the Marketing Agreement dated  December 17th. , 20 08 .

Check to be made payable to: n/a

_____

_____

| | |
|---|---|
| _____  4-10-09 | _____  4/10/0 |
| Seller            Date | Seller            Date |
| | |
| | _____  04/06/09 |
| | Agent            Date |
| _____  _____ | |
| Manager           Date | |

Independently owned and operated. Prudential and 🏠 are registered service marks of Prudential Insurance Company of America.

PGR-132 (R2/01)

CARTER000073

**Don Reichert**

| | |
|---|---|
| **From:** | Don Reichert |
| **Sent:** | Monday, July 18, 2016 10:07 AM |
| **To:** | 'Dysart, Danny' |
| **Subject:** | Carter:  Already Remediated Property |
| **Attachments:** | Certificate of Analysis.pdf; Daniel Carter ledger.xlsx; dcarter inspection rpt_106884.pdf; Drywall Analysis Report.pdf; Insurance, Taxes.pdf |

Mr. Dysart,

I am going to send you multiple emails attaching documents regarding the above referenced matter.  Please let me know if there is anything additional need.

Thanks,
Don


Don Reichert
Associate Attorney
**Bruno & Bruno, LLP**
855 Baronne Street
New Orleans, LA 70113
Main:  (504) 525-1335
Direct:  (504) 304-4216
don@brunobrunolaw.com

The information contained in this electronic message is attorney privileged and confidential information intended only for the use of the owner of the email address listed as the recipient of this message.  If you are not the intended recipient, or the employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any disclosure, dissemination, distribution, or copying of this communication is strictly prohibited.  If you have received this transmission in error, please immediately notify us by telephone at (504) 525-1335.

CARTER000074



**PRO-LAB**

1675 North Commerce Parkway, Weston, FL 33326   (954) 384-4446

DISASTER PRO

916 PERRIN DR

ARABI, LA 70032

# Certificate of Analysis

| | |
|---|---|
| Prepared for: | DISASTER PRO |
| Phone Number: | (504) 982-0022 |
| Fax Number: | |
| Email Address: | disasterpro1@yahoo.com |
| Project Name: | HOUSE |
| Test Location: | 261 WEST ROBERT E LEE |
| | NEW ORLEANS, LA 70124 |
| Chain of Custody #: | 431301 |
| Received Date: | September 15, 2010 |
| Report Date: | September 16, 2010 |

John D. Shane Ph.D., Technical Manager

Currently there are no Federal regulations for evaluating potential health effects of fungal contamination and remediation. This information is subject to change as more information regarding fungal contaminants becomes available. For more information visit http://www.epa.gov/mold or www.nyc.gov/html/doh/html/epi/mold.shtml. This document was designed to follow currently known industry guidelines for the interpretation of microbial sampling, analysis, and remediation. Since interpretation of mold analysis reports is a scientific work in progress, it may as such be changed at any time without notice. The client is solely responsible for the use or interpretation. PRO-LAB/SSPTM Inc. makes no express or implied warranties as to health of a property from only the samples sent to their laboratory for analysis. The Client is hereby notified that due to the subjective nature of fungal analysis and the mold growth process, laboratory samples can and do change over time relative to the originally sampled material. PRO-LAB/SSPTM Inc. reserves the right to properly dispose of all samples after the testing of such samples are sufficiently completed or after a 7 day period, whichever is greater.



**AIHA LAP, LLC**
**ACCREDITED LABORATORY**
ENVIRONMENTAL MICROBIOLOGY
ISO/IEC 17025:2005

WWW.AIHAACCREDITEDLABS.ORG

LAB # 163230

**For more information please contact PRO-LAB at (954) 384-4446 or email info@prolabinc.com**



**PRO-LAB®**

1675 North Commerce Parkway, Weston, FL 33326   (954) 384-4446

Prepared for : DISASTER PRO

Test Address : HOUSE
261 WEST ROBERT E LEE
NEW ORLEANS, LA 70124

| ANALYSIS METHOD | Spore trap analysis | | | Spore trap analysis | | | Direct Microscopic Exam | INTENTIONALLY BLANK | | |
|---|---|---|---|---|---|---|---|---|---|---|
| LOCATION | Outside Of House | | | Inside Of House Kitchen | | | Under Stairs Inside Of House | | | |
| COC / LINE # | 431301-1 | | | 431301-2 | | | 431301-3 | | | |
| SAMPLE TYPE & VOLUME | Z5 - 25L | | | Z5 - 25L | | | SWAB | | | |
| SERIAL NUMBER | Z507786 | | | Z507784 | | | None supplied | | | |
| COLLECTION DATE | Sep 13, 2010 | | | Sep 13, 2010 | | | Sep 13, 2010 | | | |
| ANALYSIS DATE | Sep 16, 2010 | | | Sep 16, 2010 | | | Sep 16, 2010 | | | |
| CONCLUSION | CONTROL | | | NOT ELEVATED | | | NORMAL | | | |
| IDENTIFICATION | Raw Count | Spores per m³ | Percent of Total | Raw Count | Spores per m³ | Percent of Total | Mold Present | Raw Count | Spores per m³ | Percent of Total |
| Alternaria | 1 | 40 | <1 | | | | | | | |
| Cladosporium | 38 | 1,500 | 19 | 3 | 120 | 10 | X | | | |
| Curvularia | 3 | 120 | 2 | 1 | 40 | 3 | | | | |
| Other Ascospores | 54 | 2,200 | 28 | 9 | 360 | 30 | | | | |
| Other Basidiospores | 87 | 3,500 | 44 | 12 | 480 | 40 | | | | |
| Penicillium/Aspergillus | 5 | 200 | 3 | 5 | 200 | 17 | | | | |
| Pithomyces | 9 | 360 | 5 | | | | | | | |
| Smuts, myxomycetes | 2 | 80 | 1 | | | | | | | |
| TOTAL SPORES | 199 | 8,000 | 100 | 30 | 1,200 | 100 | NA | | | |
| MINIMUM DETECTION LIMIT* | 1 | 40 | | 1 | 40 | | NA | | | |
| BACKGROUND DEBRIS | Moderate | | | Moderate | | | Not Applicable | | | |
| Cellulose Fiber | 2 | 80 | | 5 | 200 | | | | | |
| Plant Fragments | 2 | 80 | | | | | | | | |
| Pollen | 1 | 40 | | | | | | | | |
| OBSERVATIONS & COMMENTS | | | | | | | No presence of current or former growth observed. Only normally settled spores observed. | | | |

Background debris qualitatively estimates the amount of particles that are not pollen or spores and directly affects the accuracy of the spore counts. The categories of Light, Moderate, Heavy and Too Heavy for Accurate Count, are used to indicate the amount of deposited debris. Increasing amounts of debris will obscure small spores and can prevent spores from impacting onto the slide. The actual number of spores present in the sample is likely higher than reported if the debris estimate is 'Heavy' or 'Too Heavy for Accurate Count'. All calculations are rounded to two significant figures and therefore, the total percentage of spore numbers may not equal 100%.
*Minimum Detection Limit. Based on the volume of air sampled, this is the lowest number of spores that can be detected and is an estimate of the lowest concentration of spores that can be read in the sample. NA = Not Applicable

CARTER000076



1675 North Commerce Parkway, Weston, FL  33326    (954) 384-4446

### Chain of Custody #  431301


Inside Of House Kitchen
Outside Of House



## Spores per cubic meter

CARTER000077



1675 North Commerce Parkway, Weston, FL  33326    (954) 384-4446

| Identification | Outdoor Habitat | Indoor Habitat | Allergic Potential | Toxins Produced | Comments |
|---|---|---|---|---|---|
| Alternaria | One of the most commonly reported airborne spores worldwide; Soil, dead or dying plants, foodstuffs, textiles | Wallboard paper backing, wood, other various cellulose-containing materials. Common in settled dust on carpets, drapes, textiles, etc. | Common allergen. Type I allergies (hay fever and asthma). Type III hypersensitivity pneumonitis. Common cause of extrinsic asthma. | Dextruxin B, alternariols, altenuenes, allertoxins, tenuazonic acid | Alternaria is commonly found in elevated numbers on wet-intruded building materials and in higher spore numbers in the air with respect to the outside when growth on wet building materials occurs. |
| Cladosporium | The most common spore type reported in the air worldwide. Found on dead and dying plant litter, and soil. | Commonly found on wood and wallboard. Commonly grows on window sills, textiles and foods. | Type I (hay fever and asthma), Type III (hypersensitivity pneumonitis) allergies. | Cladosporin, emodin. | A very common and important allergen source both outdoors and indoors. |
| Curvularia | Commonly found everywhere on soil and plant debris. | Capable of growing on many cellulytic substrates like wallboard and wood. | Type I (hay fever and asthma) and common cause of allergenic sinusitis. | None known. | |
| Ascospores | Common everywhere. Constitutes a large part of the airspora outside. Can reach very high numbers in the air outside during the spring and summer. Can increase in numbers during and after rainfalls. | Very few of this group grow inside. The notable exception is Chaetomium and Ascotricha. | Little known for most of this group of fungi. Dependent on the type (see Chaetomium and Ascotricha). | None known for most of the group (see Chaetomium) | |
| Basidiospores | Commonly found everywhere, especially in the late summer and fall. | Not normally found growing indoors. Can grow on wet lumber, especially in crawlspaces. | Some allergenicity reported. Type I (hay fever, asthma) and Type III (hypersensitivity pneumonitis). | None known. | Among this group are dry rot fungi Serpula and Poria that are particularly destructive to buildings. |
| Penicillium/Aspergillus | Common everywhere. Normally found in the air in small amounts in outdoor air. Grows on nearly everything. | Wetted wallboard, wood, food, leather, etc. Able to grow on many substrates indoors. | Type I (hay fever and asthma) and Type III (hypersensitivity pneumonitis) allergies. | Toxin potential is dependant upon which species of Penicillium or Aspergillus is present. | This is a combination group of Penicillium and Aspergillus and is used when only the spores are seen. The spores are so similar that they cannot be reliably separated into their respective genera. |
| Pithomyces | Commonly seen everywhere growing dead leaves, soil and grasses. | Not normally found growing indoors, sometimes on wallboard. | None known. | Sporidesmin. | |

CARTER000078



**PRO-LAB®** — 1675 North Commerce Parkway, Weston, FL 33326   (954) 384-4446

| Identification | Outdoor Habitat | Indoor Habitat | Allergic Potential | Toxins Produced | Comments |
|---|---|---|---|---|---|
| Smuts, myxomycetes | Commonly found everywhere, espcially on logs, grasses and weeds. | Smuts don't normally grow indoors, but can occasionally be found on things brought from outside and stored in the house. Myxomycetes can occasionally grow indoors, but need lots of water to be established. | Type I (hay fever and asthma) allergies. | None known. | Smuts and myxomycetes are a combined goup of organisms because their spores look so similar and cannot be reliably distinguished from each other. |

Page 5 of 10

CARTER000079



1675 North Commerce Parkway, Weston, FL 33326    (954) 384-4446

Prepared for :  DISASTER PRO

Test Address : HOUSE
261 WEST ROBERT E LEE
NEW ORLEANS, LA 70124

## Indoor Air Quality Testing

### Introduction
The fungi are a large group of organisms that include mold. In nature, the fungi and mold help breakdown and recycle nutrients in the environment. Mold are the most common type of fungi that grow indoors. Mold are microscopic organisms that live on plants, in the soil, and on animals, in fact almost anywhere food and moisture are available. Mold is everywhere present in the outdoor and normal indoor environments. It is in the air and on surfaces as settled dust. Exposure to mold is inevitable in everyday life. Thus, exposure to mold is considered part of a normal activity for most people. Only environments for which extraordinary preparations have been taken don't have mold present in the air or on surfaces.

### Understanding Mold
Under the right conditions (moisture, organic food, and time) mold will grow, multiply and produce spores. Mold grows throughout the natural as well as the built environment. Mold reproduce by microscopic cells called "spores" that are spread easily through the air. Mold spores are present through the indoor and outdoor air continually. There are mold that can grow on wood, paper, carpet, food, ceiling tiles, dried fish, carpet, or any surface where dust has accumulated. When excessive moisture or water accumulates indoors, mold growth will often occur, particularly if the moisture problem remains undiscovered or un-addressed. There is no practical way to eliminate all mold and their spores in the indoor environment. The way to control indoor mold growth is to control the amount of moisture available to the mold.

Mold growth can become a problem in your home or office where there is sufficient moisture and the right foodstuff is available. The key to preventing mold growth is to prevent all moisture problems. Of course, hidden mold can grow when there is water available behind walls, sinks, floors, etc. Indications of hidden moisture problems are discoloration of ceiling or walls, warped floors or condensation on the windows or walls.

### Controlling Moisture
The most critical step in solving a mold problem is to accurately identify and fix the source(s) of moisture that allowed the growth to occur. In order to prevent mold from growing, it is important that water damaged areas be dried within a 24-48 period. If mold is a problem in the home, the mold must be cleaned up with a mild detergent and the excess water or moisture removed. It is not necessary to try and kill the mold or its spores. There are many common sources of excess moisture that can contribute to indoor mold growth. Some of the primary means of moisture entry into homes and buildings are water leakage (such as roof or plumbing leaks), vapor migration, capillary movement, air infiltration, humidifier use, and inadequate venting of kitchen and bath humidity. The key to controlling moisture is to generally reduce indoor humidity within 35% - 60% (depending what climate you live in) and fix all leaks whatever their cause.

### Mold Growth Sources
If the source of moisture is not easily detected or you have a hidden water leak, mold testing can be helpful. Often a roof leak or a plumbing leak can be identified as the source. The difficulty arises when there is an odor present or when an occupant shows signs of mold exposure but no visible mold can be seen. Excess water intrusion can also lead to dry rot of lumber and cause a serious structural defect in buildings.

### Health Related Risks
Based on the Institute of Medicine and the National Academy of Sciences, dampness and mold in homes is associated with increases in several adverse health effects including cough, upper respiratory symptoms, wheeze, and exacerbation of asthma. Mold and fungi contain many known allergens and toxins that can adversely affect your health. Scientific evidence suggests that the disease of asthma may be more prevalent in damp affected buildings. Dampness and mold in homes, office buildings and schools represent a public health problem. The Institute of Medicine concluded, "When microbial contamination is found, it should be eliminated by means that not only limit the possibility of recurrence but also limit exposure of occupants and persons conducting the remediation".

CARTER000080



1675 North Commerce Parkway, Weston, FL 33326   (954) 384-4446

## Mold Sampling Methods

The goal of sampling is to learn about the levels of mold growth and amplification in buildings. There are no EPA or OSHA standards for levels of fungi and mold in indoor environments. There are also no standard collection methods. However, several generally accepted collection methods are available to inspectors to study mold (and bacteria) in indoor environments. Comparison with reference samples can be a useful approach. Reference samples are usually taken outdoors and sometimes samples can be taken from "non-complaint" areas. In general, indoor fungal concentrations should be similar to or lower than outdoor levels. High levels of mold only found inside buildings often suggest indoor amplification of the fungi. Furthermore, the detection of water-indicating fungi, even at low levels, may require further evaluation. There are several types of testing methods that can detect the presence of mold. They can be used to find mold spores that are suspended in air, in settled dust, or mold growing on surfaces of building materials and furnishings. There are different methods that can identify types of live mold and dead mold in a sampled environment. Mold spores can be allergenic and toxic even when dead.

All sampled material obtained in the laboratory is analyzed using modern microscopic methods, standard and innovative mycological techniques, analyzed at 630 – 1,000 times magnification.

Testing for mold with an accredited laboratory is the best way to determine if you have mold and what type of mold it is.

## Surface Sampling Methods

Surface sampling can be useful for differentiating between mold growth and stains of various kinds. This type of sampling is used to identify the type of mold growth that may be present and help investigate water intrusion. Surface sampling can help the interpretation of building inspections when used correctly. The following are the different types of surface samples that are commonly used to perform a direct examination of a specific location. Spore counts per area are not normally useful.

### Tape (or tape-lift)
These samples are collected using clear adhesive tape or adhesive slide for microscopic examination of suspect stains, settled dust and spores. Tape lifts are an excellent, non-destructive method of sampling. The laboratory is usually able to determine if the there is current of former mold growth or if only normally settled spores were sampled.

### Bulk
This is a destructive test of materials (e.g., settled dust, sections of wallboard, pieces of duct lining, carpet segments, return-air filters, etc.) to determine if they contain or show mold growth. Bulk sampling collects a portion of material small enough to be transported conveniently and handled easily in the laboratory while still representing the material being sampled. A representative sample is taken from the bulk sample and can be cultured for species identification or analyzed using direct microscopy for genus identification. The laboratory is usually able to determine if the there is current of former mold growth or if only normally settled spores were sampled.

### Swab
A sterile cotton or synthetic fiber-tipped swab is used to test an area of suspected mold growth. Samples obtained using this method can be cultured for species identification or analyzed using direct microscopy for genus identification. The laboratory is usually able to determine if the there is current of former mold growth or if only normally settled spores were sampled. Identified spores are generally reported as "present/absent".

### Carpet (filter-type) Cassette
A carpet cassette is used with a portable air pump (flow rate usually doesn't matter) to collect mold, pollen and other particulates. Samples obtained using this method can be cultured for species identification or analyzed using direct microscopy for genus identification. This method is usually used to determine a presence or absence of water-indicating mold in a carpet. The laboratory is usually able to determine if the there is current of former mold growth or if only normally settled spores were sampled.

CARTER000081



1675 North Commerce Parkway, Weston, FL  33326     (954) 384-4446

## Air Sampling Methods

Air samples are possibly the most common type of environmental sample that investigators collect to study bioaerosols (mold, pollen, particulates). The physics of removing particles from the air and the general principles of good sample collection apply to all airborne materials, whether biological or other origin. Therefore, many of the basic principles investigators use to identify and quantify other airborne particulate matter can be adapted to bioaerosol sampling. Common to all aerosol samplers is consideration of collection efficiency. The following are the two most common forms of air sampling methods.

**"Non-Viable Methods"**  *(The Laboratory results are reported in "spores per cubic meter (sp/m3)*

**Z5 Cassette**
The $Z^5$ spore trap is used with a portable air pump (5 liters/minute for 1 to 5 minutes) to rapidly collect airborne aerosols including mold, pollen and other airborne particulates. Air is drawn through a small slit at the top of the cassette and spores are trapped on a sticky surface on a small glass slide inside the cassette. They are efficient at collecting spores as small as 1µm.

**Micro5 Cassette**
The Micro5 Microcell spore trap cassette is used with a portable air pump (5 liters/minute for 1 to 5 minutes) to collect airborne aerosols including mold, pollen and other airborne particulates. Air is drawn through a small circular hole at the top of the cassette and spores are trapped on a sticky coated glass slide inside the cassette. They are efficient at collecting spores as small as 0.8µm.

**Air-O-Cell Cassette**
The Air-O-Cell spore trap cassette is used with a portable air pump (15 liters/minute for 1 to 10 minutes) to collect airborne aerosols including mold, pollen and other airborne particulates. Air is drawn through a small opening at the top of the cassette and spores are trapped on a sticky coated glass slide inside the cassette. These cassettes are efficient at collecting spores as small as 2.6µm.

**Allergenco-D Cassette**
The Allergenco-D spore trap cassette is used with a portable air pump (15 liters/minute for 1 to 10 minutes) to collect airborne aerosols including mold, pollen and other airborne particulates. Air is drawn through a small opening at the top of the cassette and spores are trapped on a sticky coated glass slide inside the cassette. These cassettes are efficient at collecting spores as small as 1.7µm.

**"Viable Methods"**  *(The Laboratory results are reported in "colony forming units per cubic meter (CFU/m3)*

**Agar Impaction Plates**
The agar impaction plates are used with a portable air pump (28.3 liters/minute for 1 to 3 minutes) to collect airborne mold. This is called "viable sampling" because it only grows what is alive at the time of testing. Air is drawn through a 200-400 holes at the top of the impactor and spores are trapped in the agar media. The agar plate should be shipped to the laboratory immediately or kept cool until it can be shipped. These cassettes are 90% efficient at collecting spores as small as 0.7µm. The laboratory results are reported in "colony forming units per cubic meter (CFU/m$^3$)".

CARTER000082



1675 North Commerce Parkway, Weston, FL  33326    (954) 384-4446

## Data Interpretation

Information (data) on mold in buildings can consist of the simple observation of fungal growth on a wall, analytical measurements from hundreds of environmental samples, or the results of a survey of building occupants with and without particular building-related conditions. Data interpretation is the process whereby investigators make decisions on (a) the relevance to human exposure of environmental observations and measurements, (b) the strength of associations between exposure and health status, and (c) the probability of current or future risks. These interpretation steps are followed by decisions on what measures can be taken to interrupt exposure and prevent future problems.

### Remediation of Mold

Prevention of mold growth indoors is only possible if the factors that allow it to grow are identified and controlled. When prevention has failed and visible growth has occurred in a home or building, remediation and/or restoration may be required. The extent of the mold growth will determine the scope of the remediation required. The goal of remediation is to remove or clean mold-damaged material using work practices that protect occupants by controlling the dispersion of mold from the work area and protect the workers from exposure to mold. You should consult a professional when contemplating fixing a large area of mold growth. Generally, remediation requires (a) removal of porous materials showing extensive microbial growth, (b) physical removal of surface microbial growth on non-porous materials to typical background levels, and (c) reduction of moisture to levels that do not support microbial growth. Identification of the conditions that contributed to microbial proliferation in a home or building is the most important step in remediation. No effective control strategy can be implemented without a clear understanding of the events or building dynamics responsible for microbial growth. Following the completion of the remediation process, mold testing should be performed to obtain clearance.

### Symptoms of Mold Exposure

The most common symptoms of mold exposure are runny nose, eye irritation, cough, congestion, and aggravation of asthma. Individuals with persistent health problems that appear to be related to mold or other types of air quality contaminant exposure should see their physicians for a referral to specialists who are trained in occupational/environmental medicine or related specialties and are knowledgeable about these types of exposures. Decisions about removing individuals from an affected area must be based on the results of such medical evaluation. Mold is naturally present in outdoor environments and we share the same air between the indoor and outdoor, it is impossible to eliminate all mold spores indoors.

### Ten Things You Should Know About Mold

1) Potential health effects and symptoms associated with mold exposures include allergic reactions, asthma, and other respiratory problems.

2) There is no practical way to completely eliminate mold and mold spores in the indoor environment. The way to control indoor mold growth is to control moisture.

3) If mold is a problem in your home or building, you must clean up the mold and eliminate sources of moisture.

4) To prevent mold growth any source of a water problem or leak must be repaired.

5) Indoor humidity must be reduced (generally below 60%) to reduce the chances of mold growth by: adequately venting bathrooms, dryers, and other moisture-generating sources to the outside; using air conditioners and de-humidifiers; increasing ventilation; and using exhaust fans whenever cooking, dishwashing and cleaning.

6) Clean and dry any damp or wet building materials and furnishings within 24-48 hours to prevent mold growth.

7) Clean mold off of hard surfaces with water and detergent and dry completely.

8) Prevent condensation: reduce the potential for condensation on cold surfaces (e.g., windows, piping, exterior walls, roof, or floors) by adding insulation.

9) In areas where there is a perpetual moisture problem on the floor, do not install carpeting

10) Mold can be found almost anywhere. Mold can grow on wood, paper, carpet, foods; almost anything can support some mold growth provided there is moisture, time to grow and food to eat.

CARTER000083



1675 North Commerce Parkway, Weston, FL  33326    (954) 384-4446

## References & Resources

Bioaerosols: Assessment and Control, Janet Macher, Sc.D., M.P.H., Editor. 1999. ACGIH, 1330 Kemper Meadow Drive, Cincinnati, OH 45240-1634.

Health Implications of Fungi in Indoor Environments, Edited by R.A. Samson. 1994. Elsevier Science, P.O. Box 945, Madison Square Station, New York, NY 10159-0945.

Damp Indoor Spaces and Health, Institute of Medicine of the National Academies, Washington, DC, 2004

Field Guide for the Determination of Biological Contaminants in Environmental Samples, 2nd Edition, Edited by L-L. Hung, et al. AIHA, Fairfax, VA, 2005.

Recognition, Evaluation, and Control of Indoor Mold, Edited by B. Prezant, et al. AIHA, Fairfax, VA, 2008.

## Useful Websites

www.acgih.org/resources/links.htm
American Conference of Governmental Industrial Hygienists - information on Indoor Air Quality and useful links

www.cal-iaq.org
California Indoor Air Quality Program - California Indoor Air Quality resources and useful links

www.health.state.ny.us/environmental/indoors/air/mold.htm
New York State Department of Health - New York state recommendations for IAQ, indoor mold inspections, remediation, and prevention

http://www.nyc.gov/html/doh/html/epi/moldrpt1.shtml
Guidelines for Assessment and Remediation of Fungi in Indoor Environments – a good reference for mold clean up and removal

orf.od.nih.gov/PoliciesAndGuidelines/ORFPolicies/MoldPrevPolicy.htm
National Institutes of Health - information mold prevention and remediation

http://www.niehs.nih.gov/health/topics/agents/mold/index.cfm
National Institute of Environmental Health Sciences - information on mold

www.epa.gov/mold/
United States Environmental Protection Agency website on mold and moisture

www.aaaai.org/nab/index.cfm?p=faq
American Academy of Allergy, Asthma, and Immunology – information on mold and allergies and outdoor allergens

http://www.aanma.org/?s=mold
Allergy & Asthma Network – information for homes about allergies and asthma

http://www.homeenergyresourcemn.org
Minnesota Department of Commerce Energy Information Center – good information on moisture control in homes

http://eetd.lbl.gov/ie/
Governmental Indoor Environment Department – good information on indoor health, comfort and energy efficiency in buildings

CARTER000084

| Ledger for Daniel Carter, 261 W. Robert E. Lee New Orleans, LA 70124, Claimant ID 112736, Claim ID 2320 | | |
|---|---|---|
| Company/Item | Amount Owed | Amount Paid |
| Safeguard Self Storage (storage expenses) | $3,895.00 | $3,895.00 |
| Cresent City (sheetrock labor) | $52,500.00 | $52,500.00 |
| Cresent City (moving expenses) | $2,000.00 | $2,000.00 |
| Warren May (electrician) | $5,500.00 | $5,500.00 |
| Southland Plumbing Supply, Inc. | $4,724.54 | $4,724.54 |
| Commercial Builders Group, LLC | $866.02 | $866.02 |
| Lakeview Paint & Dry | $14.16 | $14.16 |
| Ball's Plumbing, L.L.C. | $123.00 | $123.00 |
| RJ Marchand Contractror | $38.01 | $38.01 |
| Rockery Ace Hardware | $3.80 | $3.80 |
| Harry's Ace Hardware | $15.76 | $15.76 |
| Lowe's | $8.63 | $8.63 |
| Sherman Williams | $20.67 | $20.67 |
| Beacon Air Conditioning, Heat & Ref., Inc. | $1,190.00 | $1,190.00 |
| Pappalardo Consultants, Incorporated | $400.00 | $400.00 |
| Total | $71,299.59 | $71,299.59 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

Attachment 8

| Comments/Notes |
|---|
| Please see attached Customer History:  amount owed and paid |
| Please see attached Crescent City Invoice:  amount owed and paid |
| Please see attached Crescent City Invoice:  amount owed and paid |
| Please see attached Warren May Invoice:  amount owed and paid |
| Please see attached Southland Plumbing Supply, Inc. Invoice:  amount owed and paid |
| Please see attached Commercial Builders Group, LLC. Invoice:  amount owed and paid |
| Please see attached Lakeview Paint & Dry Invoice:  amount owed and paid |
| Please see attached Ball's Plumbing, L.L.C. Invoice:  amount owed and paid |
| Please see attached RJ Marchand Contractor Invoice:  amount owed and paid |
| Please see attached Rockery Ace Hardware Receipt:  amount owed and paid |
| Please see attached Harry's Ace Hardward Receipt:  amount owed and paid |
| Please see attached Lowe's Receipt:  amount owed and paid |
| Please see attached Sherman Williams' Receipt:  amount owed and paid |
| Please see attached Beacon Air Conditioning, Heat & Ref., Inc. Receipt:  amount owed and paid |
| Please see attached Pappalardo Consultants, Incorporated Invoice:  amount owed and paid |
|  |
|  |
|  |
|  |
|  |
|  |
|  |

SUPPLEMENTAL & AMENDED
Print Form

Plaintiff Profile Form - Residential Properties

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE MANUFACTURED DRYWALL
PRODUCTS LIABILITY LITIGATION
THIS DOCUMENT RELATES TO: ALL CASES

MDL NO. 2047
SECTION: L
JUDGE FALLON
MAG. JUDGE WILKINSON

| For Internal Use Only |
| --- |
| File Number |
| Date Received |

This Plaintiff Profile Form must be completed and signed by every person making a claim in this litigation using one form per affected address. In completing this Profile Form, you are under oath and must provide information that is true and correct to the best of your knowledge. If you cannot recall all of the details requested, please provide as much information as you can and expressly indicate "unknown" in the space provided when not known. You must supplement your responses if you learn they are incomplete or incorrect in any material respect. You may and should consult with your attorney if you have any questions regarding completion of this form. If you are completing the form for someone who has died or who cannot complete the Profile Form, please answer as completely as you can for that person.

The questions and requests for production contained within this Profile Form are non-objectionable and shall be answered without objection. By answering this Profile Form, you are not waiving the attorney work product and/or attorney client privileges. Similarly, by disclosing the identity of consultants, such consultants may remain non-testifying experts and are subject to all protections afforded by law.

To the extent that the form does not provide enough space to complete your responses, you may attach as many sheets of paper as necessary. All photographs produced in response to this form shall be in color and attached to or printed on 8 1/2" x 11" white paper.

**Section I. Property Information**

Name Property Owner: Daniel Carter
Address of Affected Property: 261 W. Robert E. Lee
New Orleans, Louisiana 70124

Is this Property:* [X] Residential  [ ] Commercial  [ ] Governmental

Name of Person Completing this Form: Amy Carter

Is above your primary residence? ( ) Yes  No (•)

Mailing Address (if different): 4105 Catherine Avenue
Metairie, Louisiana 70001

Phone: (504) 669 - 9055

* If your response is commercial or governmental you should not fill out the remaining questions, you will receive a follow up form at a later date.

Circle one: [ ] Owner-Occupant  [X] Owner Only  [ ] Renter-Occupant

Represented By: Joseph M. Bruno
Address: BRUNO & BRUNO, L.L.P.
855 Baronne Street
New Orleans, Louisiana 70113

Phone: (504) 525 . 1335
Case No. /Docket Info: 09-7628, 10-932

**Section II. Insurance Information**

Homeowner / Renter Insurer: Farm Bureau Insurance
Policy #: FW2006363024602
Agent: Delmond Walker
Address: 1801 Carol Sue Avenue
Gretna, Louisiana 70056

Phone: (504) 368 - 1614

+ Attach Copy of Insurance Declaration Page

**Section III. Claimant Information**

| Name of Claimant | Dates Occupied Move-in | Dates Occupied Leave | Gender | Date of Birth | Are you claiming personal injuries?* Circle One | Identify Claimant Status as an Owner-Occupant, an Owner Only, or an Occupant or Renter Only |
| --- | --- | --- | --- | --- | --- | --- |
| Daniel Carter | / / | 04 30/09 | [X] / F | 03 01/68 | ( )Yes No(•) | Owner Only |
| Amy Carter | / / | 04 30/09 | M / [X] | 05 1 /65 | ( )Yes No(•) | Owner Only |
| | / / | / / | M / F | / / | ( )Yes No( ) | |
| | / / | / / | M / F | / / | ( )Yes No( ) | |
| | / / | / / | M / F | / / | ( )Yes No( ) | |
| | / / | / / | M / F | / / | ( )Yes No( ) | |
| | / / | / / | M / F | / / | ( )Yes No( ) | |
| | / / | / / | M / F | / / | ( )Yes No( ) | |
| | / / | / / | M / F | / / | ( )Yes No( ) | |

* Personal injuries include claims for mental anguish and medical monitoring.

Page 1

Attachment 3

CARTER000087

Plaintiff Profile Form - Residential Properties

## Section IV. Inspection Information

1.0. Have you, or has anyone on your behalf, conducted an inspection into whether Chinese-manufactured drywall is present in your home?  ⦿ Yes   No ◯

　1.1. If "Yes" to Question 1.0 Section IV. Who conducted the inspection?   Michael T. Barclay, CIH, CSP; Bruno & Bruno, L.L.P.
　1.2. When did the inspection take place?   08 29 09

2.0. Has a determination been made that Chinese-manufactured drywall is present in your home?   ⦿ Yes   No ◯

　2.1. If "Yes" to Question 2.0. Section IV. Who made this determination?   Michael T. Barclay, CIH, CSP; Bruno & Bruno, L.L.P.
　2.2. When was this determination made?   08 29 09

## Section V. Drywall Information

| Drywall Manufacturer | Markings on Drywall | Location in Home |
|---|---|---|
| Knauf | Knauf Tianjin | Throughout entire home |
|  |  |  |
|  |  |  |

## Section VI. Home Information

| | | Yes | No |
|---|---|---|---|
| Approx. Sq. Ft. of House: | 2,500 | | |
| Estimated Sq. Ft. of Drywall | 10,250 | | |
| Height of Interior Walls | 9' - 10' | | |
| Number of Bedrooms: | 3 | | |
| Number of Bathrooms: | 2.5 | | |

| | Occupied | ☒ | |
|---|---|---|---|
| | Year-round | ☒ | |
| | Summer | ☒ | |
| | Winter | ☒ | |

### Plumbing System

| | Blackening or Corrosion? | | |
|---|---|---|---|
| | Yes | No | N/A |
| PVC/ CPVC/ Plastic Piping | | ☒ | |
| Copper Piping | ☒ | | |
| Copper Fixtures | | | ☒ |
| Other Fixtures | | ☒ | |
| Were repairs made to the plumbing system? | No | | |
| Dates: | | | |

### Electrical System

| | Blackening or Corrosion? | | |
|---|---|---|---|
| | Yes | No | N/A |
| Receptacles | ☒ | | |
| Switches | ☒ | | |
| Main Panel | ☒ | | |
| 2nd Panel | | | ☒ |
| Exposed Copper Wires | ☒ | | |
| Were repairs made to the electrical system? | | ☒ | |
| Dates: | | | |

✦ Attach Copy of Floor Plan on 8 1/2" X 11" paper

## Section VII. Construction/Renovation Information

Date Range for New Home Construction: (Month/Day/Year)

| Start Date: | / / | Completion Date | / / |
|---|---|---|---|
| Move In Date: | / / | Date Acquired Home | / / |

Date Range for Renovations: (Month/Day/Year)

| Start Date: | 05 15 06 | Completion Date | 05/30/06 |
|---|---|---|---|
| Move In Date: | 01 23 07 | | |

| Renovation(s) | Yes | No | N/A |
|---|---|---|---|
| First Floor: 1/2 Wall of drywall replaced | | ☒ | |
| First Floor: Full Wall of drywall replaced | ☒ | | |
| Second Floor: Any drywall replaced | ☒ | | |

## Section VIII. Homebuilder/ General Contractor/ Developer Information

Homebuilder/ General Contractor/ Developer's Name:
_____

Address: _____
_____

Phone: (___) ___-_____

✦ Attach Copy of Construction/Renovation Contract
✦ Attach Copy of New Home Warranty Declaration

## Section IX. Drywall Installer

Drywall Installer's Name:
_____

Address: _____
_____

Phone: (___) ___-_____

## Section X. Drywall Supplier

Drywall Supplier's Name:   Interior Exterior Building Supply
_____

Address: _____
_____

Phone: (___) ___-_____

Page 2

CARTER000088

Plaintiff Profile Form - Residential Properties

**Section XI. Verification of Plaintiff Profile Form**

I declare under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746 that all information provided in this Plaintiff Profile Form is true and correct to the best of my knowledge, and that I have supplied all of the documents requested in this declaration to the extent that such documents are in my possession, custody or control.

X _____    8/29        _____
Claimant's Signature      Date Signed         Claimant's Signature      Date Signed

_____    _____        _____    _____
Claimant's Signature      Date Signed         Claimant's Signature      Date Signed

_____    _____        _____    _____
Claimant's Signature      Date Signed         Claimant's Signature      Date Signed

CARTER000089

OCT-28-2009 WED 08:58 AM FARM BUREAU INS          FAX NO. 5042272377          P. 02

*Daniel Carter   261 W. Robert E. Lee*

**COVERAGE IS PROVIDED IN THE Louisiana Citizens Property Insurance Corporation**

Louisiana Citizens Property Insurance Corporation

FAIR PLAN
P.O. Box 60730
New Orleans, LA 70160

Billing Information: DANIEL CARTER - Quarterly

Transaction: Endorsement as of 03/05/2009: Changed mailing address

**Dwelling Wind & Hail Declaration**

| Policy Number | Policy Period From | To |
|---|---|---|
| FW 20063630246 02 | 01/09/2009 | 01/09/2010 |
| | 12:01 A.M. Standard Time at the described location | |

| Named Insured and Address | Producer's Name and Address | Producer Number |
|---|---|---|
| DANIEL CARTER<br>4105 Catherine Ave<br>mETAIRIE, LA 70001 | DELMAN L WALKER INSURANCE<br>1801 CAROL SUE AVE<br>GRETNA, LA 70056<br>Telephone: (504) 227-2345 | 800 2856 |

The residence premises covered by this policy is located at the above insured address unless otherwise stated below:

Legal Address: 261 WEST ROBERT E. LEE Orleans Parish, NEW ORLEANS, LA 70124

| Const. Type | Year Built | Terr. | Prot. Class | Graded Area #/Name | Distance to Fire Station | Distance to Hydrant | # of Families | Occupancy |
|---|---|---|---|---|---|---|---|---|
| Masonry | 1998 | 360 | N/A | Not Applicable | Less than 7 miles | 1,000 feet or less | 1 | Primary Owner |

Valuations for purposes of determining loss will be at ACTUAL CASH VALUE.
In case of a loss under Section I, we cover only that part of the loss over the deductible:   $2,500.00   applies to all perils except where otherwise stated. Coverage is provided where limit of liability and premium is shown. If the loss is caused by a hurricane, the deductible will be 2% of the Coverage A & C limit of liability.

| Section I Coverage | Limit of Liability | Perils Insured Against | Premiums |
|---|---|---|---|
| Coverage A - Dwelling | $256,000.00 | Wind & Hail Only | $1,772.00 |
| Coverage C - Personal Property | $128,000.00 | Wind & Hail Only | $1,446.00 |
| Additional Charges: | | | |

| | |
|---|---|
| Location Premium: | $3,218.00 |
| Location Tax Exempt Surcharge: | $97.00 |
| Location Coastal Market Equalization Charge: | $0.00 |
| Location FAIR Market Equalization Charge: | $0.00 |
| Location Emergency Assessment: | $161.00 |
| Location Total: | $3,476.00 |

Policy Interests

First Mortgagee
IBERIA BANK
P O BOX 12440
NEW IBERIA, LA 70562-0562

Forms and Endorsements
CTZ-U-0187 (01/05), DWG-1 (01/93), FP-CP 93-1 (Ed I-97), CTZ-U-0174 (01/05), DWG-E100 (07/04), DWG-E290 07 04, DWG-E276 (01/93), DWG-E60 (04/01)

Issued Date: 03/06/2009
CTZ-U-0156 (02/09)

Page   3   of   3

CARTER000090

OCT-28-2009 WED 08:58 AM FARM BUREAU INS       FAX NO. 5042272377       P. 01

*Daniel Carter 261 W. Robert E. Lee*

COVERAGE IS PROVIDED BY:

Louisiana Citizens Property Insurance Corporation
FAIR PLAN
P.O. Box 60730
New Orleans, LA 70160

Billing Information: DANIEL CARTER - Quarterly

**Dwelling Wind & Hail Declaration**

| Policy Number | Policy Period | |
|---|---|---|
| | From | To |
| FW 20063630246 02 | 01/09/2009 | 01/09/2010 |
| | 12:01 A.M. Standard Time at the described location | |

Service provider: MacNeill Group
P.O. Box 82630
Baton Rouge, LA 70884-2630
(877) 527-4222

Transaction: Endorsement as of 03/05/2009: Changed mailing address

| Named Insured and Address | Producer's Name and Address | Producer Number |
|---|---|---|
| DANIEL CARTER<br>4105 Catherine Ave<br>mETAIRIE, LA 70001 | DELMAN L WALKER INSURANCE<br>1801 CAROL SUE AVE<br>GRETNA, LA 70056<br>Telephone: (504) 227-2345 | 800 2856 |

**Coverage is provided as shown on the declaration page attached for each location covered.**

| Location Address | Location Premium |
|---|---|
| Location 1: 261 WEST ROBERT E. LEE NEW ORLEANS, LA 70124 | $3,218.00 |

| Transaction Charge | | Annual Charge | |
|---|---|---|---|
| Premium Charge: | $0.00 | Total Annual Premium~All Locations: | $3,218.00 |
| Tax Exempt Surcharge (3%): | $0.00 | Tax Exempt Surcharge (3%): | $97.00 |
| 2005 Market Equalization Charge Fair Plan (10%): | $0.00 | 2005 Market Equalization Charge Fair Plan (10%): | $0.00 |
| 2005 Market Equalization Charge Coastal Plan (5%): | $0.00 | 2005 Market Equalization Charge Coastal Plan (5%): | $0.00 |
| 2005 LA Fair Plan Emergency Assessment (5%): | $0.00 | 2005 LA Fair Plan Emergency Assessment (5%): | $161.00 |
| Application Fee: | | Application Fee: | $0.00 |
| Total: | $0.00 | Total: | $3,476.00 |

Issued Date: 03/06/2009
CTZ-U-0156 (02/05)

*Authorized Representative*       Page 1 of 3

CARTER000091



CARTER000092



**Full Scope Services, LLC**

801 Old Newnan Road, Suite B
Carrollton, GA 30116
Tel: (770) 214-1138
Fax: (770) 214-5844

| | | | |
|---|---|---|---|
| Insured: | Daniel & Amy Carter | | |
| Property: | 261 W. Robert E. Lee | | |
| | New Orleans, LA 70124 | | |

| | | | |
|---|---|---|---|
| Claim Rep.: | Jamie Ziglar | Business: | (504) 324-6588 |
| Estimator: | Jamie Ziglar | Business: | (504) 324-6588 |

| | | | | | |
|---|---|---|---|---|---|
| **Claim Number:** | | **Policy Number:** | | **Type of Loss:** | Other |
| Date of Loss: | 10/23/2009 | Date Received: | | | |
| Date Inspected: | 10/23/2009 | Date Entered: | 11/18/2009 12:07 PM | | |

| | |
|---|---|
| Price List: | LANO5B_OCT09 |
| | Restoration/Service/Remodel |
| Estimate: | CDW-000015 |

This estimate of damage includes a base estimate for remediation of toxic drywall. It is based on currently available information, which is continuously evolving. As additional methods of remediation are revealed, this report may be updated.

CARTER000093



**Full Scope Services, LLC**

801 Old Newnan Road, Suite B
Carrollton, GA 30116
Tel: (770) 214-1138
Fax: (770) 214-5844

### CDW-000015
### Main Level

**Main Level**

| DESCRIPTION | QNTY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|
| 1.  R&R Built-in theater speaker system | 1.00 EA | 74.47 | 3,387.07 | 3,461.54 |
| 2.  Rewire - average residence - copper wiring | 1,247.86 SF | 0.00 | 3.61 | 4,504.77 |

Total:  Main Level                                                                 7,966.31

---

**Living**                                                                 **Ceiling Height: 10'**

510.33 SF Walls                    321.42 SF Ceiling
831.75 SF Walls & Ceiling          321.42 SF Floor
35.71 SY Flooring                  50.33 LF Floor Perimeter
53.83 LF Ceil. Perimeter

| Missing Wall: | 1 - | 15'8" X 10'0" | Opens into Kitchen | Goes to Floor/Ceiling |
|---|---|---|---|---|
| Missing Wall: | 1 - | 3'6" X 10'0" | Opens into Stairs-Up | Goes to Floor/Ceiling |
| Missing Wall: | 1 - | 2'8" X 10'0" | Opens into Foyer | Goes to Floor/Ceiling |

| DESCRIPTION | QNTY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|
| 3.  Contents - move out then reset - Extra large room | 1.00 EA | 0.00 | 110.43 | 110.43 |
| 4.  Tear out drywall, cleanup, bag for disposal | 831.75 SF | 0.65 | 0.00 | 540.64 |
| 5.  HEPA Vacuuming - Detailed -  (PER SF) | 1,153.17 SF | 0.00 | 0.47 | 541.99 |
| 6.  Personal protective gloves - Disposable (per pair) | 2.00 EA | 0.00 | 0.60 | 1.20 |
| 7.  1/2" drywall - hung, taped, floated, ready for paint | 831.75 SF | 0.00 | 1.38 | 1,147.82 |
| 8.  Texture drywall - light hand texture | 831.75 SF | 0.00 | 0.40 | 332.70 |
| 9.  Seal & paint textured ceiling | 321.42 SF | 0.00 | 0.85 | 273.21 |
| 10.  R&R Outlet | 8.00 EA | 5.05 | 12.40 | 139.60 |
| 11.  R&R Outlet or switch cover | 8.00 EA | 0.63 | 2.24 | 22.96 |
| 12.  R&R Switch | 4.00 EA | 5.05 | 12.27 | 69.28 |
| 13.  R&R Outlet or switch cover - Double | 2.00 EA | 0.63 | 3.60 | 8.46 |

CDW-000015

1/20/2010                    Page: 2

CARTER000094



**Full Scope Services, LLC**

801 Old Newnan Road, Suite B
Carrollton, GA 30116
Tel: (770) 214-1138
Fax: (770) 214-5844

CONTINUED - Living

| DESCRIPTION | QNTY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|
| 14. R&R Heat/AC register - Mechanically attached | 2.00 EA | 2.49 | 18.99 | 42.96 |
| 15. R&R Batt insulation - 6" - R19 | 510.33 SF | 0.38 | 0.92 | 663.43 |
| 16. R&R Ceiling fan & light - High grade | 1.00 EA | 18.73 | 365.48 | 384.21 |
| 17. R&R Fireplace mantel - paint grade - prefab. | 1.00 EA | 53.18 | 382.64 | 435.82 |
| 18. Seal & paint fireplace mantel | 8.00 LF | 0.00 | 3.59 | 28.72 |
| 19. Mask and prep for paint - plastic, paper, tape (per LF) | 53.83 LF | 0.00 | 0.91 | 48.99 |
| 20. Seal then paint the walls (2 coats) | 510.33 SF | 0.00 | 0.67 | 341.92 |
| 21. Seal stud wall for odor control | 510.33 SF | 0.00 | 0.59 | 301.09 |
| 22. Apply anti-microbial agent | 1,153.17 SF | 0.00 | 0.20 | 230.63 |
| 23. R&R Laminate - simulated wood flooring - High Grade | 321.42 SF | 1.65 | 8.14 | 3,146.70 |
| 24. R&R Baseboard - 6" | 50.33 LF | 0.51 | 3.72 | 212.90 |
| 25. Paint baseboard - two coats | 50.33 LF | 0.00 | 1.00 | 50.33 |
| 26. French double door set - Detach & reset | 2.00 EA | 0.00 | 75.27 | 150.54 |
| 27. Paint door slab only - 2 coats (per side) | 4.00 EA | 0.00 | 20.83 | 83.32 |
| 28. Paint door trim & jamb - 2 coats (2 double french and single entry) | 4.00 EA | 0.00 | 21.41 | 85.64 |
| 29. R&R Window trim set (casing & stop) | 48.00 LF | 0.50 | 2.95 | 165.60 |
| 30. Paint window trim & jamb - 2 coats (per side) | 4.00 EA | 0.00 | 21.41 | 85.64 |
| 31. R&R Crown molding - oversized - 4 1/4" | 53.83 LF | 0.66 | 5.22 | 316.52 |
| 32. Seal & paint crown molding, oversized - two coats | 53.83 LF | 0.00 | 1.08 | 58.14 |
| 33. R&R Smoke detector | 1.00 EA | 11.02 | 45.39 | 56.41 |

| Totals: Living | | | | 10,077.80 |
|---|---|---|---|---|

CARTER000095



**Full Scope Services, LLC**

801 Old Newnan Road, Suite B
Carrollton, GA 30116
Tel: (770) 214-1138
Fax: (770) 214-5844



| Kitchen | | Ceiling Height: 10' |
|---|---|---|
| 380.00 SF Walls | | 220.56 SF Ceiling |
| 600.56 SF Walls & Ceiling | | 220.56 SF Floor |
| 24.51 SY Flooring | | 38.00 LF Floor Perimeter |
| 38.00 LF Ceil. Perimeter | | |

| Missing Wall: | 1 - | 15'8" X 10'0" | Opens into Living | Goes to Floor/Ceiling |
|---|---|---|---|---|
| Missing Wall: | 1 - | 5'10" X 10'0" | Opens into Foyer | Goes to Floor/Ceiling |

| DESCRIPTION | QNTY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|
| 34.  Contents - move out then reset | 1.00 EA | 0.00 | 36.82 | 36.82 |
| 35.  Tear out drywall, cleanup, bag for disposal | 600.56 SF | 0.65 | 0.00 | 390.36 |
| 36.  HEPA Vacuuming - Detailed -  (PER SF) | 821.11 SF | 0.00 | 0.47 | 385.92 |
| 37.  Personal protective gloves - Disposable (per pair) | 2.00 EA | 0.00 | 0.60 | 1.20 |
| 38.  1/2" drywall - hung, taped, floated, ready for paint | 600.56 SF | 0.00 | 1.38 | 828.77 |
| 39.  Texture drywall - light hand texture | 600.56 SF | 0.00 | 0.40 | 240.22 |
| 40.  Seal & paint textured ceiling | 220.56 SF | 0.00 | 0.85 | 187.48 |
| 41.  R&R Outlet | 6.00 EA | 5.05 | 12.40 | 104.70 |
| 42.  R&R Outlet or switch cover | 6.00 EA | 0.63 | 2.24 | 17.22 |
| 43.  R&R Switch | 2.00 EA | 5.05 | 12.27 | 34.64 |
| 44.  R&R Outlet or switch cover - Double | 1.00 EA | 0.63 | 3.60 | 4.23 |
| 45.  R&R Heat/AC register - Mechanically attached | 1.00 EA | 2.49 | 18.99 | 21.48 |
| 46.  R&R Batt insulation - 6" - R19 | 380.00 SF | 0.38 | 0.92 | 494.00 |
| 47.  R&R Hanging light fixture - Premium grade | 3.00 EA | 12.49 | 120.55 | 399.12 |
| 48.  Mask and prep for paint - plastic, paper, tape (per LF) | 38.00 LF | 0.00 | 0.91 | 34.58 |
| 49.  Seal then paint the walls (2 coats) | 380.00 SF | 0.00 | 0.67 | 254.60 |
| 50.  Seal stud wall for odor control | 380.00 SF | 0.00 | 0.59 | 224.20 |
| 51.  Apply anti-microbial agent | 821.11 SF | 0.00 | 0.20 | 164.22 |
| 52.  Clean ceramic tile - Heavy | 220.56 SF | 0.00 | 0.46 | 101.46 |
| 53.  R&R Baseboard - 6" | 38.00 LF | 0.51 | 3.72 | 160.74 |
| 54.  Paint baseboard - two coats | 38.00 LF | 0.00 | 1.00 | 38.00 |

CARTER000096



**Full Scope Services, LLC**

801 Old Newnan Road, Suite B
Carrollton, GA 30116
Tel: (770) 214-1138
Fax: (770) 214-5844

CONTINUED - Kitchen

| DESCRIPTION | QNTY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|
| 55.  R&R Cabinetry - upper (wall) units - Deluxe grade | 24.00 LF | 7.46 | 295.52 | 7,271.52 |
| 56.  R&R Range hood - oversized - High grade | 1.00 EA | 12.49 | 337.14 | 349.63 |
| 57.  R&R Cabinetry - lower (base) units | 9.00 LF | 7.46 | 157.19 | 1,481.85 |
| 58.  R&R Countertop - Granite or Marble - Premium grade | 24.00 SF | 5.36 | 101.44 | 2,563.20 |
| 59.  Range - freestanding - electric - Deluxe grade | 1.00 EA | 0.00 | 2,102.63 | 2,102.63 |
| 60.  Sink - double - Detach & reset | 1.00 EA | 0.00 | 106.59 | 106.59 |
| 61.  R&R Sink faucet - Kitchen - Premium grade | 1.00 EA | 18.61 | 233.63 | 252.24 |
| 62.  Refrigerator - top freezer - 24 to 26 cf - Deluxe grade | 1.00 EA | 0.00 | 3,709.20 | 3,709.20 |
| 63.  R&R Smoke detector | 1.00 EA | 11.02 | 45.39 | 56.41 |

| Totals:  Kitchen | | | | 22,017.23 |
|---|---|---|---|---|



**Dining**                                                    Ceiling Height: 10'

| 446.67 SF Walls | 167.03 SF Ceiling |
|---|---|
| 613.69 SF Walls & Ceiling | 167.03 SF Floor |
| 18.56 SY Flooring | 44.67 LF Floor Perimeter |
| 44.67 LF Ceil. Perimeter | |

**Missing Wall:**     1 -      6'2" X 10'0"         Opens into Foyer              Goes to Floor/Ceiling

| DESCRIPTION | QNTY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|
| 64.  Contents - move out then reset | 1.00 EA | 0.00 | 36.82 | 36.82 |
| 65.  Tear out drywall, cleanup, bag for disposal | 613.69 SF | 0.65 | 0.00 | 398.90 |
| 66.  HEPA Vacuuming - Detailed -  (PER SF) | 780.72 SF | 0.00 | 0.47 | 366.94 |

CDW-000015

CARTER000097



**Full Scope Services, LLC**

801 Old Newnan Road, Suite B
Carrollton, GA 30116
Tel: (770) 214-1138
Fax: (770) 214-5844

CONTINUED - Dining

| DESCRIPTION | QNTY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|
| 67. Personal protective gloves - Disposable (per pair) | 2.00 EA | 0.00 | 0.60 | 1.20 |
| 68. 1/2" drywall - hung, taped, floated, ready for paint | 613.69 SF | 0.00 | 1.38 | 846.89 |
| 69. Texture drywall - light hand texture | 613.69 SF | 0.00 | 0.40 | 245.48 |
| 70. Seal & paint textured ceiling | 167.03 SF | 0.00 | 0.85 | 141.98 |
| 71. R&R Outlet | 6.00 EA | 5.05 | 12.40 | 104.70 |
| 72. R&R Outlet or switch cover | 6.00 EA | 0.63 | 2.24 | 17.22 |
| 73. R&R Switch | 2.00 EA | 5.05 | 12.27 | 34.64 |
| 74. R&R Outlet or switch cover - Double | 1.00 EA | 0.63 | 3.60 | 4.23 |
| 75. R&R Heat/AC register - Mechanically attached | 2.00 EA | 2.49 | 18.99 | 42.96 |
| 76. R&R Batt insulation - 6" - R19 | 446.67 SF | 0.38 | 0.92 | 580.67 |
| 77. R&R Chandelier - Premium grade | 1.00 EA | 18.61 | 484.64 | 503.25 |
| 78. Mask and prep for paint - plastic, paper, tape (per LF) | 44.67 LF | 0.00 | 0.91 | 40.65 |
| 79. Seal then paint the walls (2 coats) | 446.67 SF | 0.00 | 0.67 | 299.27 |
| 80. Seal stud wall for odor control | 446.67 SF | 0.00 | 0.59 | 263.54 |
| 81. Apply anti-microbial agent | 780.72 SF | 0.00 | 0.20 | 156.14 |
| 82. Clean ceramic tile - Heavy | 167.03 SF | 0.00 | 0.46 | 76.83 |
| 83. R&R Baseboard - 6" | 44.67 LF | 0.51 | 3.72 | 188.95 |
| 84. Paint baseboard - two coats | 44.67 LF | 0.00 | 1.00 | 44.67 |

Totals: Dining                                                                    4,395.93

CARTER000098



**Full Scope Services, LLC**

801 Old Newnan Road, Suite B
Carrollton, GA 30116
Tel: (770) 214-1138
Fax: (770) 214-5844

**1/2 Bath**                                                                              Ceiling Height: 8'

| | |
|---|---|
| 152.00 SF Walls | 21.00 SF Ceiling |
| 173.00 SF Walls & Ceiling | 21.00 SF Floor |
| 2.33 SY Flooring | 19.00 LF Floor Perimeter |
| 19.00 LF Ceil. Perimeter | |

| DESCRIPTION | QNTY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|
| 85. Contents - move out then reset | 1.00 EA | 0.00 | 36.82 | 36.82 |
| 86. Tear out drywall, cleanup, bag for disposal | 173.00 SF | 0.65 | 0.00 | 112.45 |
| 87. HEPA Vacuuming - Detailed - (PER SF) | 194.00 SF | 0.00 | 0.47 | 91.18 |
| 88. Personal protective gloves - Disposable (per pair) | 1.00 EA | 0.00 | 0.60 | 0.60 |
| 89. 1/2" drywall - hung, taped, floated, ready for paint | 173.00 SF | 0.00 | 1.38 | 238.74 |
| 90. Texture drywall - light hand texture | 173.00 SF | 0.00 | 0.40 | 69.20 |
| 91. Seal & paint textured ceiling | 21.00 SF | 0.00 | 0.85 | 17.85 |
| 92. R&R Outlet | 2.00 EA | 5.05 | 12.40 | 34.90 |
| 93. R&R Outlet or switch cover | 2.00 EA | 0.63 | 2.24 | 5.74 |
| 94. R&R Switch | 2.00 EA | 5.05 | 12.27 | 34.64 |
| 95. R&R Outlet or switch cover - Double | 1.00 EA | 0.63 | 3.60 | 4.23 |
| 96. R&R Heat/AC register - Mechanically attached | 1.00 EA | 2.49 | 18.99 | 21.48 |
| 97. R&R Batt insulation - 6" - R19 | 152.00 SF | 0.38 | 0.92 | 197.60 |
| 98. R&R Light bar - 2 lights - High grade | 1.00 EA | 19.86 | 135.86 | 155.72 |
| 99. R&R Bathroom ventilation fan w/light | 1.00 EA | 17.49 | 103.85 | 121.34 |
| 100. Mask and prep for paint - plastic, paper, tape (per LF) | 19.00 LF | 0.00 | 0.91 | 17.29 |
| 101. Seal then paint the walls (2 coats) | 152.00 SF | 0.00 | 0.67 | 101.84 |
| 102. Seal stud wall for odor control | 152.00 SF | 0.00 | 0.59 | 89.68 |
| 103. Apply anti-microbial agent | 194.00 SF | 0.00 | 0.20 | 38.80 |
| 104. Clean ceramic tile - Heavy | 21.00 SF | 0.00 | 0.46 | 9.66 |
| 105. R&R Baseboard - 3 1/4" | 19.00 LF | 0.48 | 2.47 | 56.05 |
| 106. Paint baseboard - two coats | 19.00 LF | 0.00 | 1.00 | 19.00 |
| 107. Toilet - Detach & reset | 1.00 EA | 0.00 | 163.04 | 163.04 |
| 108. R&R Toilet paper holder | 1.00 EA | 4.97 | 21.52 | 26.49 |

CARTER000099



**Full Scope Services, LLC**

801 Old Newnan Road, Suite B
Carrollton, GA 30116
Tel: (770) 214-1138
Fax: (770) 214-5844

### CONTINUED - 1/2 Bath

| DESCRIPTION | QNTY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|
| 109.  R&R Vanity - Premium grade | 3.50 LF | 7.46 | 201.24 | 730.45 |
| 110.  Vanity top - Detach and reset | 1.00 LF | 0.00 | 12.18 | 12.18 |
| 111.  Sink - single - Detach & reset | 1.00 EA | 0.00 | 99.34 | 99.34 |
| 112.  R&R Sink faucet - Bathroom - Premium grade | 1.00 EA | 18.61 | 207.21 | 225.82 |
| 113.  Mirror - plate glass - Detach & reset | 14.00 SF | 0.00 | 4.86 | 68.04 |

Totals:  1/2 Bath                                                            2,800.17

---

| Foyer | | | Ceiling Height: 10' |
|---|---|---|---|
| 280.00 SF Walls | | 66.78 SF Ceiling | |
| 346.78 SF Walls & Ceiling | | 66.78 SF Floor | |
| 7.42 SY Flooring | | 28.00 LF Floor Perimeter | |
| 28.00 LF Ceil. Perimeter | | | |

| Missing Wall: | 1 - | 2'8" X 10'0" | Opens into Living | Goes to Floor/Ceiling |
|---|---|---|---|---|
| Missing Wall: | 1 - | 5'10" X 10'0" | Opens into Kitchen | Goes to Floor/Ceiling |
| Missing Wall: | 1 - | 6'2" X 10'0" | Opens into Dining | Goes to Floor/Ceiling |

| DESCRIPTION | QNTY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|
| 114.  Contents - move out then reset | 1.00 EA | 0.00 | 36.82 | 36.82 |
| 115.  Tear out drywall, cleanup, bag for disposal | 346.78 SF | 0.65 | 0.00 | 225.41 |
| 116.  HEPA Vacuuming - Detailed -  (PER SF) | 413.56 SF | 0.00 | 0.47 | 194.37 |
| 117.  Personal protective gloves - Disposable (per pair) | 2.00 EA | 0.00 | 0.60 | 1.20 |
| 118.  1/2" drywall - hung, taped, floated, ready for paint | 346.78 SF | 0.00 | 1.38 | 478.56 |
| 119.  Texture drywall - light hand texture | 346.78 SF | 0.00 | 0.40 | 138.71 |
| 120.  Seal & paint textured ceiling | 66.78 SF | 0.00 | 0.85 | 56.76 |

CDW-000015

CARTER000100



**Full Scope Services, LLC**

801 Old Newnan Road, Suite B
Carrollton, GA 30116
Tel: (770) 214-1138
Fax: (770) 214-5844

### CONTINUED - Foyer

| DESCRIPTION | QNTY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|
| 121.  R&R Outlet | 4.00 EA | 5.05 | 12.40 | 69.80 |
| 122.  R&R Outlet or switch cover | 4.00 EA | 0.63 | 2.24 | 11.48 |
| 123.  R&R Switch | 2.00 EA | 5.05 | 12.27 | 34.64 |
| 124.  R&R Outlet or switch cover - Double | 1.00 EA | 0.63 | 3.60 | 4.23 |
| 125.  R&R Heat/AC register - Mechanically attached | 2.00 EA | 2.49 | 18.99 | 42.96 |
| 126.  R&R Batt insulation - 6" - R19 | 280.00 SF | 0.38 | 0.92 | 364.00 |
| 127.  R&R Chandelier - Premium grade | 1.00 EA | 18.61 | 484.64 | 503.25 |
| 128.  R&R Recessed light fixture | 2.00 EA | 11.06 | 109.98 | 242.08 |
| 129.  R&R Door chime - Premium grade | 1.00 EA | 5.00 | 179.19 | 184.19 |
| 130.  Mask and prep for paint - plastic, paper, tape (per LF) | 28.00 LF | 0.00 | 0.91 | 25.48 |
| 131.  Seal then paint the walls (2 coats) | 280.00 SF | 0.00 | 0.67 | 187.60 |
| 132.  Seal stud wall for odor control | 280.00 SF | 0.00 | 0.59 | 165.20 |
| 133.  Apply anti-microbial agent | 413.56 SF | 0.00 | 0.20 | 82.71 |
| 134.  Clean ceramic tile - Heavy | 66.78 SF | 0.00 | 0.46 | 30.72 |
| 135.  R&R Baseboard - 6" | 28.00 LF | 0.51 | 3.72 | 118.44 |
| 136.  Paint baseboard - two coats | 28.00 LF | 0.00 | 1.00 | 28.00 |
| 137.  R&R Smoke detector | 1.00 EA | 11.02 | 45.39 | 56.41 |

Totals:  Foyer                                                                                                          3,283.02



**Garage**                                                                    **Ceiling Height: 10'**

823.33 SF Walls                      423.67 SF Ceiling
1,247.00 SF Walls & Ceiling          423.67 SF Floor
47.07 SY Flooring                    82.33 LF Floor Perimeter
82.33 LF Ceil. Perimeter

| DESCRIPTION | QNTY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|

CDW-000015

CARTER000101



**Full Scope Services, LLC**

801 Old Newnan Road, Suite B
Carrollton, GA 30116
Tel: (770) 214-1138
Fax: (770) 214-5844

## CONTINUED - Garage

| DESCRIPTION | QNTY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|
| 138. Contents - move out then reset - Extra large room | 1.00 EA | 0.00 | 110.43 | 110.43 |
| 139. Tear out drywall, cleanup, bag for disposal | 1,247.00 SF | 0.65 | 0.00 | 810.55 |
| 140. HEPA Vacuuming - Detailed - (PER SF) | 1,670.67 SF | 0.00 | 0.47 | 785.21 |
| 141. Personal protective gloves - Disposable (per pair) | 2.00 EA | 0.00 | 0.60 | 1.20 |
| 142. 1/2" drywall - hung, taped, floated, ready for paint | 1,247.00 SF | 0.00 | 1.38 | 1,720.86 |
| 143. Texture drywall - light hand texture | 1,247.00 SF | 0.00 | 0.40 | 498.80 |
| 144. Seal & paint textured ceiling | 423.67 SF | 0.00 | 0.85 | 360.12 |
| 145. R&R Outlet | 8.00 EA | 5.05 | 12.40 | 139.60 |
| 146. R&R Outlet or switch cover | 8.00 EA | 0.63 | 2.24 | 22.96 |
| 147. R&R Switch | 4.00 EA | 5.05 | 12.27 | 69.28 |
| 148. R&R Outlet or switch cover - Double | 2.00 EA | 0.63 | 3.60 | 8.46 |
| 149. R&R Heat/AC register - Mechanically attached | 2.00 EA | 2.49 | 18.99 | 42.96 |
| 150. R&R Batt insulation - 6" - R19 | 823.33 SF | 0.38 | 0.92 | 1,070.33 |
| 151. R&R Fluorescent light fixture - High grade | 2.00 EA | 13.83 | 134.98 | 297.62 |
| 152. R&R Overhead (garage) door opener | 1.00 EA | 22.06 | 371.32 | 393.38 |
| 153. Mask and prep for paint - plastic, paper, tape (per LF) | 82.33 LF | 0.00 | 0.91 | 74.92 |
| 154. Seal then paint the walls (2 coats) | 823.33 SF | 0.00 | 0.67 | 551.63 |
| 155. Seal stud wall for odor control | 823.33 SF | 0.00 | 0.59 | 485.76 |
| 156. Apply anti-microbial agent | 1,670.67 SF | 0.00 | 0.20 | 334.13 |
| 157. R&R Baseboard - 6" | 82.33 LF | 0.51 | 3.72 | 348.26 |
| 158. Paint baseboard - two coats | 82.33 LF | 0.00 | 1.00 | 82.33 |
| 159. R&R Window trim set (casing & stop) | 48.00 LF | 0.50 | 2.95 | 165.60 |
| 160. Paint window trim & jamb - 2 coats (per side) | 4.00 EA | 0.00 | 21.41 | 85.64 |

| Totals: Garage | | | | 8,460.03 |
|---|---|---|---|---|

CARTER000102



**Full Scope Services, LLC**

801 Old Newnan Road, Suite B
Carrollton, GA 30116
Tel: (770) 214-1138
Fax: (770) 214-5844

Total: Main Level                                                      59,000.49

### 2nd Level

**2nd Level**

| DESCRIPTION | QNTY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|
| 161. Rewire - average residence - copper wiring | 1,249.85 SF | 0.00 | 3.61 | 4,511.96 |

Total: 2nd Level                                                        4,511.96



**Bedroom1**                                                    Ceiling Height: Tray

| | |
|---|---|
| 711.00 SF Walls | 396.44 SF Ceiling |
| 1,107.44 SF Walls & Ceiling | 372.00 SF Floor |
| 41.33 SY Flooring | 79.00 LF Floor Perimeter |
| 79.00 LF Ceil. Perimeter | |



**Subroom 1: CL1**                                               Ceiling Height: 8'

| | |
|---|---|
| 328.00 SF Walls | 100.00 SF Ceiling |
| 428.00 SF Walls & Ceiling | 100.00 SF Floor |
| 11.11 SY Flooring | 41.00 LF Floor Perimeter |
| 41.00 LF Ceil. Perimeter | |

| DESCRIPTION | QNTY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|
| 162. Contents - move out then reset - Extra large room | 1.00 EA | 0.00 | 110.43 | 110.43 |
| 163. Tear out drywall, cleanup, bag for disposal | 1,535.44 SF | 0.65 | 0.00 | 998.04 |
| 164. HEPA Vacuuming - Detailed - (PER SF) | 2,007.44 SF | 0.00 | 0.47 | 943.50 |
| 165. Personal protective gloves - Disposable (per pair) | 2.00 EA | 0.00 | 0.60 | 1.20 |
| 166. 1/2" drywall - hung, taped, floated, ready for paint | 1,535.44 SF | 0.00 | 1.38 | 2,118.91 |
| 167. Texture drywall - light hand texture | 1,535.44 SF | 0.00 | 0.40 | 614.18 |

CDW-000015                                          1/20/2010        Page: 11

CARTER000103



**Full Scope Services, LLC**

801 Old Newnan Road, Suite B
Carrollton, GA 30116
Tel: (770) 214-1138
Fax: (770) 214-5844

### CONTINUED - Bedroom1

| DESCRIPTION | QNTY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|
| 168.  Seal & paint textured ceiling | 496.44 SF | 0.00 | 0.85 | 421.97 |
| 169.  R&R Outlet | 8.00 EA | 5.05 | 12.40 | 139.60 |
| 170.  R&R Outlet or switch cover | 8.00 EA | 0.63 | 2.24 | 22.96 |
| 171.  R&R Switch | 2.00 EA | 5.05 | 12.27 | 34.64 |
| 172.  R&R Outlet or switch cover - Double | 1.00 EA | 0.63 | 3.60 | 4.23 |
| 173.  R&R Heat/AC register - Mechanically attached | 2.00 EA | 2.49 | 18.99 | 42.96 |
| 174.  R&R Batt insulation - 6" - R19 | 1,039.00 SF | 0.38 | 0.92 | 1,350.70 |
| 175.  R&R Ceiling fan & light - High grade | 1.00 EA | 18.73 | 365.48 | 384.21 |
| 176.  R&R Recessed light fixture | 6.00 EA | 11.06 | 109.98 | 726.24 |
| 177.  R&R Fireplace mantel - paint grade - prefab. | 1.00 EA | 53.18 | 382.64 | 435.82 |
| 178.  Seal & paint fireplace mantel | 8.00 LF | 0.00 | 3.59 | 28.72 |
| 179.  Mask and prep for paint - plastic, paper, tape (per LF) | 120.00 LF | 0.00 | 0.91 | 109.20 |
| 180.  Seal then paint the walls (2 coats) | 1,039.00 SF | 0.00 | 0.67 | 696.13 |
| 181.  Seal stud wall for odor control | 1,039.00 SF | 0.00 | 0.59 | 613.01 |
| 182.  Apply anti-microbial agent | 2,007.44 SF | 0.00 | 0.20 | 401.49 |
| 183.  R&R Laminate - simulated wood flooring - High Grade | 472.00 SF | 1.65 | 8.14 | 4,620.88 |
| 184.  R&R Baseboard - 6" | 120.00 LF | 0.51 | 3.72 | 507.60 |
| 185.  Paint baseboard - two coats | 120.00 LF | 0.00 | 1.00 | 120.00 |
| 186.  R&R Interior door unit | 1.00 EA | 18.84 | 132.25 | 151.09 |
| 187.  R&R Door knob - interior | 1.00 EA | 12.41 | 34.69 | 47.10 |
| 188.  French double door set - Detach & reset | 2.00 EA | 0.00 | 75.27 | 150.54 |
| 189.  Paint door slab only - 2 coats (per side) | 5.00 EA | 0.00 | 20.83 | 104.15 |
| 190.  Paint door  trim & jamb - 2 coats (2 double french and single entry) | 5.00 EA | 0.00 | 21.41 | 107.05 |
| 191.  R&R Window trim set (casing & stop) | 32.00 LF | 0.50 | 2.95 | 110.40 |
| 192.  Paint window trim & jamb - 2 coats (per side) | 2.00 EA | 0.00 | 21.41 | 42.82 |

CARTER000104



**Full Scope Services, LLC**

801 Old Newnan Road, Suite B
Carrollton, GA 30116
Tel: (770) 214-1138
Fax: (770) 214-5844

**CONTINUED - Bedroom1**

| DESCRIPTION | QNTY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|
| 193.  R&R Crown molding - oversized - 4 1/4" | 240.00 LF | 0.66 | 5.22 | 1,411.20 |
| 194.  Seal & paint crown molding, oversized - two coats | 240.00 LF | 0.00 | 1.08 | 259.20 |
| 195.  R&R Fluorescent - acoustic grid fixture - two tube, 2'x 4' | 1.00 EA | 13.83 | 124.48 | 138.31 |
| 196.  R&R Closet Organizer - Melamine - Average grade | 34.00 LF | 7.45 | 68.90 | 2,595.90 |

Totals: Bedroom1                                                                                         20,564.38

**Bedroom2**                                                              Ceiling Height: 9'

450.00 SF Walls
606.25 SF Walls & Ceiling
17.36 SY Flooring
50.00 LF Ceil. Perimeter

156.25 SF Ceiling
156.25 SF Floor
50.00 LF Floor Perimeter

**Subroom 1:  CL2**                                                        Ceiling Height: 8'

234.67 SF Walls
261.75 SF Walls & Ceiling
3.01 SY Flooring
29.33 LF Ceil. Perimeter

27.08 SF Ceiling
27.08 SF Floor
29.33 LF Floor Perimeter

| DESCRIPTION | QNTY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|
| 197.  Contents - move out then reset | 1.00 EA | 0.00 | 36.82 | 36.82 |
| 198.  Tear out drywall, cleanup, bag for disposal | 868.00 SF | 0.65 | 0.00 | 564.20 |
| 199.  HEPA Vacuuming - Detailed -  (PER SF) | 1,051.33 SF | 0.00 | 0.47 | 494.13 |

CDW-000015

1/20/2010          Page: 13

CARTER000105



**Full Scope Services, LLC**

801 Old Newnan Road, Suite B
Carrollton, GA 30116
Tel: (770) 214-1138
Fax: (770) 214-5844

**CONTINUED - Bedroom2**

| DESCRIPTION | QNTY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|
| 200.  Personal protective gloves - Disposable (per pair) | 2.00 EA | 0.00 | 0.60 | 1.20 |
| 201.  1/2" drywall - hung, taped, floated, ready for paint | 868.00 SF | 0.00 | 1.38 | 1,197.84 |
| 202.  Texture drywall - light hand texture | 868.00 SF | 0.00 | 0.40 | 347.20 |
| 203.  Seal & paint textured ceiling | 183.33 SF | 0.00 | 0.85 | 155.83 |
| 204.  R&R Outlet | 6.00 EA | 5.05 | 12.40 | 104.70 |
| 205.  R&R Outlet or switch cover | 6.00 EA | 0.63 | 2.24 | 17.22 |
| 206.  R&R Switch | 2.00 EA | 5.05 | 12.27 | 34.64 |
| 207.  R&R Outlet or switch cover - Double | 1.00 EA | 0.63 | 3.60 | 4.23 |
| 208.  R&R Heat/AC register - Mechanically attached | 2.00 EA | 2.49 | 18.99 | 42.96 |
| 209.  R&R Batt insulation - 6" - R19 | 684.67 SF | 0.38 | 0.92 | 890.07 |
| 210.  R&R Ceiling fan & light - High grade | 1.00 EA | 18.73 | 365.48 | 384.21 |
| 211.  Mask and prep for paint - plastic, paper, tape (per LF) | 79.33 LF | 0.00 | 0.91 | 72.19 |
| 212.  Seal then paint the walls (2 coats) | 684.67 SF | 0.00 | 0.67 | 458.73 |
| 213.  Seal stud wall for odor control | 684.67 SF | 0.00 | 0.59 | 403.96 |
| 214.  Apply anti-microbial agent | 1,051.33 SF | 0.00 | 0.20 | 210.27 |
| 215.  Remove Carpet | 183.33 SF | 0.28 | 0.00 | 51.33 |
| 216.  Carpet | 210.83 SF | 0.00 | 2.82 | 594.54 |
| 15 % waste added for Carpet. | | | | |
| 217.  R&R Carpet pad | 183.33 SF | 0.12 | 0.59 | 130.16 |
| 218.  R&R Baseboard - 6" | 79.33 LF | 0.51 | 3.72 | 335.57 |
| 219.  Paint baseboard - two coats | 79.33 LF | 0.00 | 1.00 | 79.33 |
| 220.  R&R Interior door unit | 2.00 EA | 18.84 | 132.25 | 302.18 |
| 221.  R&R Door knob - interior | 2.00 EA | 12.41 | 34.69 | 94.20 |
| 222.  R&R Interior double door - Colonist - pre-hung unit | 2.00 EA | 21.88 | 219.27 | 482.30 |
| 223.  Paint door slab only - 2 coats (per side) | 4.00 EA | 0.00 | 20.83 | 83.32 |
| 224.  Paint door  trim & jamb - 2 coats (2 double closet and entry) | 5.00 EA | 0.00 | 21.41 | 107.05 |

CARTER000106



**Full Scope Services, LLC**

801 Old Newnan Road, Suite B
Carrollton, GA 30116
Tel: (770) 214-1138
Fax: (770) 214-5844

**CONTINUED - Bedroom2**

| DESCRIPTION | QNTY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|
| 225. R&R Window trim set (casing & stop) | 32.00 LF | 0.50 | 2.95 | 110.40 |
| 226. Paint window trim & jamb - 2 coats (per side) | 2.00 EA | 0.00 | 21.41 | 42.82 |

| Totals: Bedroom2 | | | | 7,833.60 |
|---|---|---|---|---|



**Bedroom3**                                  **Ceiling Height: 9'**

468.00 SF Walls                       166.75 SF Ceiling
634.75 SF Walls & Ceiling       166.75 SF Floor
18.53 SY Flooring               52.00 LF Floor Perimeter
52.00 LF Ceil. Perimeter



**Subroom 1: CL3**                              **Ceiling Height: 8'**

184.00 SF Walls                       33.00 SF Ceiling
217.00 SF Walls & Ceiling       33.00 SF Floor
3.67 SY Flooring               23.00 LF Floor Perimeter
23.00 LF Ceil. Perimeter

| DESCRIPTION | QNTY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|
| 227. Contents - move out then reset | 1.00 EA | 0.00 | 36.82 | 36.82 |
| 228. Tear out drywall, cleanup, bag for disposal | 851.75 SF | 0.65 | 0.00 | 553.64 |
| 229. HEPA Vacuuming - Detailed - (PER SF) | 1,051.50 SF | 0.00 | 0.47 | 494.21 |
| 230. Personal protective gloves - Disposable (per pair) | 2.00 EA | 0.00 | 0.60 | 1.20 |
| 231. 1/2" drywall - hung, taped, floated, ready for paint | 851.75 SF | 0.00 | 1.38 | 1,175.42 |
| 232. Texture drywall - light hand texture | 851.75 SF | 0.00 | 0.40 | 340.70 |

CDW-000015

1/20/2010       Page: 15



**Full Scope Services, LLC**

801 Old Newnan Road, Suite B
Carrollton, GA 30116
Tel: (770) 214-1138
Fax: (770) 214-5844

CONTINUED - Bedroom3

| DESCRIPTION | QNTY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|
| 233.  Seal & paint textured ceiling | 199.75 SF | 0.00 | 0.85 | 169.79 |
| 234.  R&R Outlet | 6.00 EA | 5.05 | 12.40 | 104.70 |
| 235.  R&R Outlet or switch cover | 6.00 EA | 0.63 | 2.24 | 17.22 |
| 236.  R&R Switch | 2.00 EA | 5.05 | 12.27 | 34.64 |
| 237.  R&R Outlet or switch cover - Double | 1.00 EA | 0.63 | 3.60 | 4.23 |
| 238.  R&R Heat/AC register - Mechanically attached | 2.00 EA | 2.49 | 18.99 | 42.96 |
| 239.  R&R Batt insulation - 6" - R19 | 652.00 SF | 0.38 | 0.92 | 847.60 |
| 240.  R&R Ceiling fan & light - High grade | 1.00 EA | 18.73 | 365.48 | 384.21 |
| 241.  Mask and prep for paint - plastic, paper, tape (per LF) | 75.00 LF | 0.00 | 0.91 | 68.25 |
| 242.  Seal then paint the walls (2 coats) | 652.00 SF | 0.00 | 0.67 | 436.84 |
| 243.  Seal stud wall for odor control | 652.00 SF | 0.00 | 0.59 | 384.68 |
| 244.  Apply anti-microbial agent | 1,051.50 SF | 0.00 | 0.20 | 210.30 |
| 245.  Remove Carpet | 199.75 SF | 0.28 | 0.00 | 55.93 |
| 246.  Carpet | 229.71 SF | 0.00 | 2.82 | 647.78 |
| 15 % waste added for Carpet. | | | | |
| 247.  R&R Carpet pad | 199.75 SF | 0.12 | 0.59 | 141.82 |
| 248.  R&R Baseboard - 6" | 75.00 LF | 0.51 | 3.72 | 317.25 |
| 249.  Paint baseboard - two coats | 75.00 LF | 0.00 | 1.00 | 75.00 |
| 250.  R&R Interior door unit | 2.00 EA | 18.84 | 132.25 | 302.18 |
| 251.  R&R Door knob - interior | 2.00 EA | 12.41 | 34.69 | 94.20 |
| 252.  French double door set - Detach & reset | 1.00 EA | 0.00 | 75.27 | 75.27 |
| 253.  Paint door slab only - 2 coats (per side) | 4.00 EA | 0.00 | 20.83 | 83.32 |
| 254.  Paint door  trim & jamb - 2 coats (1 double french, entry and closet) | 4.00 EA | 0.00 | 21.41 | 85.64 |
| 255.  R&R Window trim set (casing & stop) | 32.00 LF | 0.50 | 2.95 | 110.40 |
| 256.  Paint window trim & jamb - 2 coats (per side) | 2.00 EA | 0.00 | 21.41 | 42.82 |

Totals:  Bedroom3                                                                                      7,339.02

CDW-000015                                                          1/20/2010          Page: 16

CARTER000108
CARTER0: 00022



**Full Scope Services, LLC**

801 Old Newnan Road, Suite B
Carrollton, GA 30116
Tel: (770) 214-1138
Fax: (770) 214-5844



**Bath1**                                                                                                 Ceiling Height: 9'

| | |
|---|---|
| 391.50 SF Walls | 115.63 SF Ceiling |
| 507.13 SF Walls & Ceiling | 115.63 SF Floor |
| 12.85 SY Flooring | 115.63 SF Floor |
| 43.50 LF Ceil. Perimeter | 43.50 LF Floor Perimeter |

| DESCRIPTION | QNTY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|
| 257. Contents - move out then reset | 1.00 EA | 0.00 | 36.82 | 36.82 |
| 258. Tear out drywall, cleanup, bag for disposal | 507.13 SF | 0.65 | 0.00 | 329.63 |
| 259. HEPA Vacuuming - Detailed - (PER SF) | 622.75 SF | 0.00 | 0.47 | 292.69 |
| 260. Personal protective gloves - Disposable (per pair) | 1.00 EA | 0.00 | 0.60 | 0.60 |
| 261. 1/2" drywall - hung, taped, floated, ready for paint | 507.13 SF | 0.00 | 1.38 | 699.84 |
| 262. Texture drywall - light hand texture | 507.13 SF | 0.00 | 0.40 | 202.85 |
| 263. Seal & paint textured ceiling | 115.63 SF | 0.00 | 0.85 | 98.29 |
| 264. R&R Outlet | 4.00 EA | 5.05 | 12.40 | 69.80 |
| 265. R&R Outlet or switch cover | 4.00 EA | 0.63 | 2.24 | 11.48 |
| 266. R&R Switch | 2.00 EA | 5.05 | 12.27 | 34.64 |
| 267. R&R Outlet or switch cover - Double | 1.00 EA | 0.63 | 3.60 | 4.23 |
| 268. R&R Heat/AC register - Mechanically attached | 1.00 EA | 2.49 | 18.99 | 21.48 |
| 269. R&R Batt insulation - 6" - R19 | 391.50 SF | 0.38 | 0.92 | 508.95 |
| 270. R&R Light bar - 6 lights - High grade | 1.00 EA | 24.83 | 230.58 | 255.41 |
| 271. R&R Light fixture | 1.00 EA | 8.27 | 55.85 | 64.12 |
| 272. R&R Recessed light fixture | 2.00 EA | 11.06 | 109.98 | 242.08 |
| 273. R&R Bathroom fan, light, and heater | 1.00 EA | 17.49 | 304.13 | 321.62 |
| 274. Mask and prep for paint - plastic, paper, tape (per LF) | 43.50 LF | 0.00 | 0.91 | 39.59 |
| 275. Seal then paint the walls (2 coats) | 391.50 SF | 0.00 | 0.67 | 262.31 |
| 276. Seal stud wall for odor control | 391.50 SF | 0.00 | 0.59 | 230.99 |
| 277. Apply anti-microbial agent | 622.75 SF | 0.00 | 0.20 | 124.55 |
| 278. Clean ceramic tile - Heavy | 115.63 SF | 0.00 | 0.46 | 53.19 |
| 279. R&R Baseboard - 6" | 43.50 LF | 0.51 | 3.72 | 184.01 |
| 280. Paint baseboard - two coats | 43.50 LF | 0.00 | 1.00 | 43.50 |

CDW-000015

1/20/2010          Page: 17

CARTER000109
CARTFRD 02023



**Full Scope Services, LLC**

801 Old Newnan Road, Suite B
Carrollton, GA 30116
Tel: (770) 214-1138
Fax: (770) 214-5844

## CONTINUED - Bath1

| DESCRIPTION | QNTY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|
| 281.  Toilet - Detach & reset | 1.00 EA | 0.00 | 163.04 | 163.04 |
| 282.  R&R Toilet paper holder | 1.00 EA | 4.97 | 21.52 | 26.49 |
| 283.  R&R Vanity - Premium grade | 10.00 LF | 7.46 | 201.24 | 2,087.00 |
| 284.  Vanity top - Detach and reset | 10.00 LF | 0.00 | 12.18 | 121.80 |
| 285.  Sink - single - Detach & reset | 2.00 EA | 0.00 | 99.34 | 198.68 |
| 286.  R&R Sink faucet - Bathroom | 2.00 EA | 18.61 | 111.91 | 261.04 |
| 287.  Mirror - plate glass - Detach & reset | 30.00 SF | 0.00 | 4.86 | 145.80 |
| 288.  R&R Jetted tub - Acrylic - High grade | 1.00 EA | 106.37 | 2,686.81 | 2,793.18 |

Totals:  Bath1                                                                                    9,929.70



| **Bath2** | | | | **Ceiling Height: 9'** |
|---|---|---|---|---|

363.00 SF Walls                     83.67 SF Ceiling
446.67 SF Walls & Ceiling           83.67 SF Floor
  9.30 SY Flooring                  40.33 LF Floor Perimeter
 40.33 LF Ceil. Perimeter

| DESCRIPTION | QNTY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|
| 289.  Contents - move out then reset | 1.00 EA | 0.00 | 36.82 | 36.82 |
| 290.  Tear out drywall, cleanup, bag for disposal | 446.67 SF | 0.65 | 0.00 | 290.34 |
| 291.  HEPA Vacuuming - Detailed -  (PER SF) | 530.33 SF | 0.00 | 0.47 | 249.26 |
| 292.  Personal protective gloves - Disposable (per pair) | 1.00 EA | 0.00 | 0.60 | 0.60 |
| 293.  1/2" drywall - hung, taped, floated, ready for paint | 446.67 SF | 0.00 | 1.38 | 616.40 |
| 294.  Texture drywall - light hand texture | 446.67 SF | 0.00 | 0.40 | 178.67 |
| 295.  Seal & paint textured ceiling | 83.67 SF | 0.00 | 0.85 | 71.12 |

CARTER000110
CARTFRN: 00024



**Full Scope Services, LLC**

801 Old Newnan Road, Suite B
Carrollton, GA 30116
Tel: (770) 214-1138
Fax: (770) 214-5844

CONTINUED - Bath2

| DESCRIPTION | QNTY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|
| 296.  R&R Outlet | 4.00 EA | 5.05 | 12.40 | 69.80 |
| 297.  R&R Outlet or switch cover | 4.00 EA | 0.63 | 2.24 | 11.48 |
| 298.  R&R Switch | 2.00 EA | 5.05 | 12.27 | 34.64 |
| 299.  R&R Outlet or switch cover - Double | 1.00 EA | 0.63 | 3.60 | 4.23 |
| 300.  R&R Heat/AC register - Mechanically attached | 1.00 EA | 2.49 | 18.99 | 21.48 |
| 301.  R&R Batt insulation - 6" - R19 | 363.00 SF | 0.38 | 0.92 | 471.90 |
| 302.  R&R Light bar - 4 lights - High grade | 1.00 EA | 19.86 | 176.17 | 196.03 |
| 303.  R&R Light fixture | 1.00 EA | 8.27 | 55.85 | 64.12 |
| 304.  R&R Bathroom fan, light, and heater | 1.00 EA | 17.49 | 304.13 | 321.62 |
| 305.  Mask and prep for paint - plastic, paper, tape (per LF) | 40.33 LF | 0.00 | 0.91 | 36.70 |
| 306.  Seal then paint the walls (2 coats) | 363.00 SF | 0.00 | 0.67 | 243.21 |
| 307.  Seal stud wall for odor control | 363.00 SF | 0.00 | 0.59 | 214.17 |
| 308.  Apply anti-microbial agent | 530.33 SF | 0.00 | 0.20 | 106.07 |
| 309.  Clean ceramic tile - Heavy | 83.67 SF | 0.00 | 0.46 | 38.49 |
| 310.  R&R Baseboard - 6" | 40.33 LF | 0.51 | 3.72 | 170.60 |
| 311.  Paint baseboard - two coats | 40.33 LF | 0.00 | 1.00 | 40.33 |
| 312.  Toilet - Detach & reset | 1.00 EA | 0.00 | 163.04 | 163.04 |
| 313.  R&R Toilet paper holder | 1.00 EA | 4.97 | 21.52 | 26.49 |
| 314.  R&R Vanity - Premium grade | 10.00 LF | 7.46 | 201.24 | 2,087.00 |
| 315.  Vanity top - Detach and reset | 10.00 LF | 0.00 | 12.18 | 121.80 |
| 316.  Sink - single - Detach & reset | 2.00 EA | 0.00 | 99.34 | 198.68 |
| 317.  R&R Sink faucet - Bathroom | 2.00 EA | 18.61 | 111.91 | 261.04 |
| 318.  Fiberglass tub & shower combination - Detach & reset | 1.00 EA | 0.00 | 419.66 | 419.66 |
| 319.  Mirror - plate glass - Detach & reset | 24.00 SF | 0.00 | 4.86 | 116.64 |

Totals:  Bath2

6,882.43

CARTER000115



**Full Scope Services, LLC**

801 Old Newnan Road, Suite B
Carrollton, GA 30116
Tel: (770) 214-1138
Fax: (770) 214-5844



| Hall | | Ceiling Height: 9' |
|---|---|---|
| 556.50 SF Walls | | 128.39 SF Ceiling |
| 684.89 SF Walls & Ceiling | | 128.39 SF Floor |
| 14.27 SY Flooring | | 61.83 LF Floor Perimeter |
| 61.83 LF Ceil. Perimeter | | |



| Subroom 1:  CL | | Ceiling Height: 8' |
|---|---|---|
| 112.00 SF Walls | | 12.25 SF Ceiling |
| 124.25 SF Walls & Ceiling | | 12.25 SF Floor |
| 1.36 SY Flooring | | 14.00 LF Floor Perimeter |
| 14.00 LF Ceil. Perimeter | | |

| DESCRIPTION | QNTY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|
| 320.  Tear out drywall, cleanup, bag for disposal | 809.14 SF | 0.65 | 0.00 | 525.94 |
| 321.  HEPA Vacuuming - Detailed -  (PER SF) | 949.78 SF | 0.00 | 0.47 | 446.40 |
| 322.  Personal protective gloves - Disposable (per pair) | 2.00 EA | 0.00 | 0.60 | 1.20 |
| 323.  1/2" drywall - hung, taped, floated, ready for paint | 809.14 SF | 0.00 | 1.38 | 1,116.61 |
| 324.  Texture drywall - light hand texture | 809.14 SF | 0.00 | 0.40 | 323.66 |
| 325.  Seal & paint textured ceiling | 140.64 SF | 0.00 | 0.85 | 119.54 |
| 326.  R&R Outlet | 6.00 EA | 5.05 | 12.40 | 104.70 |
| 327.  R&R Outlet or switch cover | 6.00 EA | 0.63 | 2.24 | 17.22 |
| 328.  R&R Switch | 2.00 EA | 5.05 | 12.27 | 34.64 |
| 329.  R&R Outlet or switch cover - Double | 1.00 EA | 0.63 | 3.60 | 4.23 |
| 330.  R&R Heat/AC register - Mechanically attached | 2.00 EA | 2.49 | 18.99 | 42.96 |
| 331.  R&R Batt insulation - 6" - R19 | 668.50 SF | 0.38 | 0.92 | 869.05 |
| 332.  R&R Light fixture | 1.00 EA | 8.27 | 55.85 | 64.12 |
| 333.  R&R Smoke detector | 1.00 EA | 11.02 | 45.39 | 56.41 |
| 334.  R&R Thermostat | 1.00 EA | 5.51 | 86.40 | 91.91 |
| 335.  Mask and prep for paint - plastic, paper, tape (per LF) | 75.83 LF | 0.00 | 0.91 | 69.01 |
| 336.  Seal then paint the walls (2 coats) | 668.50 SF | 0.00 | 0.67 | 447.90 |

CARTER000112



**Full Scope Services, LLC**

801 Old Newnan Road, Suite B
Carrollton, GA 30116
Tel: (770) 214-1138
Fax: (770) 214-5844

CONTINUED - Hall

| DESCRIPTION | QNTY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|
| 337.  Seal stud wall for odor control | 668.50 SF | 0.00 | 0.59 | 394.42 |
| 338.  Apply anti-microbial agent | 949.78 SF | 0.00 | 0.20 | 189.96 |
| 339.  R&R Laminate - simulated wood flooring - High Grade | 140.64 SF | 1.65 | 8.14 | 1,376.87 |
| 340.  R&R Baseboard - 6" | 75.83 LF | 0.51 | 3.72 | 320.76 |
| 341.  Paint baseboard - two coats | 75.83 LF | 0.00 | 1.00 | 75.83 |
| 342.  R&R Interior door unit | 2.00 EA | 18.84 | 132.25 | 302.18 |
| 343.  R&R Door knob - interior | 2.00 EA | 12.41 | 34.69 | 94.20 |
| 344.  Paint door slab only - 2 coats (per side) | 2.00 EA | 0.00 | 20.83 | 41.66 |
| 345.  Paint door trim & jamb - 2 coats (double closet and single entry) | 2.00 EA | 0.00 | 21.41 | 42.82 |

Totals:  Hall                                                                                              7,174.20

**Laundry**                                                                  Ceiling Height: 8'

144.00  SF Walls          19.25  SF Ceiling
163.25  SF Walls & Ceiling     19.25  SF Floor
2.14  SY Flooring          18.00  LF Floor Perimeter
18.00  LF Ceil. Perimeter

| DESCRIPTION | QNTY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|
| 346.  Contents - move out then reset | 1.00 EA | 0.00 | 36.82 | 36.82 |
| 347.  Tear out drywall, cleanup, bag for disposal | 163.25 SF | 0.65 | 0.00 | 106.11 |
| 348.  HEPA Vacuuming - Detailed -  (PER SF) | 182.50 SF | 0.00 | 0.47 | 85.78 |
| 349.  Personal protective gloves - Disposable (per pair) | 1.00 EA | 0.00 | 0.60 | 0.60 |
| 350.  1/2" drywall - hung, taped, floated, ready for paint | 163.25 SF | 0.00 | 1.38 | 225.29 |

CDW-000015

1/20/2010          Page: 21

CARTER000137



**Full Scope Services, LLC**

801 Old Newnan Road, Suite B
Carrollton, GA 30116
Tel: (770) 214-1138
Fax: (770) 214-5844

**CONTINUED - Laundry**

| DESCRIPTION | QNTY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|
| 351.  Texture drywall - light hand texture | 163.25 SF | 0.00 | 0.40 | 65.30 |
| 352.  Seal & paint textured ceiling | 19.25 SF | 0.00 | 0.85 | 16.36 |
| 353.  R&R Outlet | 2.00 EA | 5.05 | 12.40 | 34.90 |
| 354.  R&R Outlet or switch cover | 2.00 EA | 0.63 | 2.24 | 5.74 |
| 355.  R&R Switch | 2.00 EA | 5.05 | 12.27 | 34.64 |
| 356.  R&R Outlet or switch cover - Double | 1.00 EA | 0.63 | 3.60 | 4.23 |
| 357.  R&R Heat/AC register - Mechanically attached | 1.00 EA | 2.49 | 18.99 | 21.48 |
| 358.  R&R Batt insulation - 6" - R19 | 144.00 SF | 0.38 | 0.92 | 187.20 |
| 359.  R&R Light fixture | 1.00 EA | 8.27 | 55.85 | 64.12 |
| 360.  Mask and prep for paint - plastic, paper, tape (per LF) | 18.00 LF | 0.00 | 0.91 | 16.38 |
| 361.  Seal then paint the walls (2 coats) | 144.00 SF | 0.00 | 0.67 | 96.48 |
| 362.  Seal stud wall for odor control | 144.00 SF | 0.00 | 0.59 | 84.96 |
| 363.  Apply anti-microbial agent | 182.50 SF | 0.00 | 0.20 | 36.50 |
| 364.  Clean ceramic tile - Heavy | 19.25 SF | 0.00 | 0.46 | 8.86 |
| 365.  R&R Baseboard - 3 1/4" | 18.00 LF | 0.48 | 2.47 | 53.10 |
| 366.  Paint baseboard - two coats | 18.00 LF | 0.00 | 1.00 | 18.00 |
| 367.  R&R Dryer - Electric | 1.00 EA | 19.99 | 632.62 | 652.61 |
| 368.  R&R Washer - Top-loading | 1.00 EA | 26.60 | 576.61 | 603.21 |

Totals:  Laundry                                                                 2,458.67



**Stairs-Dn**                                                    **Ceiling Height: 8'**

218.67 SF Walls                          35.58 SF Ceiling
254.25 SF Walls & Ceiling                35.58 SF Floor
3.95 SY Flooring                         27.33 LF Floor Perimeter
27.33 LF Ceil. Perimeter

CDW-000015                                        1/20/2010          Page: 22

CARTER000114



**Full Scope Services, LLC**

801 Old Newnan Road, Suite B
Carrollton, GA 30116
Tel: (770) 214-1138
Fax: (770) 214-5844

| DESCRIPTION | QNTY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|
| 369. R&R Balustrade | 10.00 LF | 4.97 | 108.49 | 1,134.60 |
| 370. Paint balustrade - two coats | 10.00 LF | 0.00 | 17.45 | 174.50 |
| 371. R&R Stair tread - hardwood - up to 4' | 14.00 EA | 9.31 | 58.08 | 943.46 |
| 372. Sand, stain, and finish steps | 35.58 LF | 0.00 | 13.50 | 480.33 |
| Totals: Stairs-Dn | | | | 2,732.89 |
| Total: 2nd Level | | | | 69,426.85 |

**Attic**



| **Attic** | | **Ceiling Height: Peaked** |
|---|---|---|
| 251.40 SF Walls | | 1,122.48 SF Ceiling |
| 1,373.88 SF Walls & Ceiling | | 943.64 SF Floor |
| 104.85 SY Flooring | | 142.50 LF Floor Perimeter |
| 150.33 LF Ceil. Perimeter | | |

| **Subroom 1: Room2** | | **Ceiling Height: Peaked** |
|---|---|---|
| 112.89 SF Walls | | 424.03 SF Ceiling |
| 536.92 SF Walls & Ceiling | | 342.29 SF Floor |
| 38.03 SY Flooring | | 75.17 LF Floor Perimeter |
| 82.57 LF Ceil. Perimeter | | |

| DESCRIPTION | QNTY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|
| 373. HEPA Vacuuming - Detailed - (PER SF) | 1,607.41 SF | 0.00 | 0.47 | 755.48 |
| 374. Respirator - Full face - multi-purpose resp. (per day) | 4.00 DA | 0.00 | 7.61 | 30.44 |
| 375. Respirator cartridge - HEPA & vapor & gas (per pair) | 1.00 EA | 0.00 | 21.35 | 21.35 |
| 376. Personal protective gloves - Disposable (per pair) | 6.00 EA | 0.00 | 0.60 | 3.60 |
| 377. R&R Batt insulation - 10" - R30 | 1,285.93 SF | 0.50 | 1.18 | 2,160.37 |
| 378. Dehumidifier (per 24 hr period) - Large-Desiccant-No monit. | 2.00 EA | 0.00 | 500.00 | 1,000.00 |

CARTER000115



**Full Scope Services, LLC**

801 Old Newnan Road, Suite B
Carrollton, GA 30116
Tel: (770) 214-1138
Fax: (770) 214-5844

CONTINUED - Attic

| DESCRIPTION | QNTY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|
| 379.  Seal attic framing for odor control - 6 to 8/12 | 1,491.68 SF | 0.00 | 0.86 | 1,282.84 |
| 380.  Seal floor or ceiling joist system | 1,285.93 SF | 0.00 | 0.71 | 913.01 |
| 381.  Seal attic framing (white pigmented shellac) - 6 to 8/12 | 1,285.93 SF | 0.00 | 1.03 | 1,324.51 |
| 382.  Clean floor or roof joist system | 1,285.93 SF | 0.00 | 0.60 | 771.56 |
| 383.  R&R Air handler - with heat element - 4 ton | 1.00 EA | 67.69 | 1,575.21 | 1,642.90 |
| 384.  R&R Ductwork system - hot or cold air - 2200 to 2500 SF home | 1.00 EA | 551.55 | 4,303.50 | 4,855.05 |

| Totals:  Attic | | | | 14,761.11 |
|---|---|---|---|---|
| Total: Attic | | | | 14,761.11 |

Exterior/General



| DESCRIPTION | QNTY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|
| 385.  Taxes, insurance, permits & fees (Bid item) | 1.00 EA | 0.00 | 500.00 | 500.00 |
| 386.  Dumpster load - Approx. 40 yards, 7-8 tons of debris | 1.00 EA | 774.00 | 0.00 | 774.00 |
| 387.  General clean - up | 16.00 HR | 0.00 | 29.83 | 477.28 |
| 388.  Temporary toilet (per month) | 3.00 MO | 0.00 | 146.68 | 440.04 |
| 389.  R&R Temporary power - hookup | 1.00 EA | 48.08 | 270.71 | 318.79 |
| 390.  Temporary power usage (per month) | 3.00 MO | 0.00 | 107.08 | 321.24 |

CARTER000116



**Full Scope Services, LLC**

801 Old Newnan Road, Suite B
Carrollton, GA 30116
Tel: (770) 214-1138
Fax: (770) 214-5844

**CONTINUED - Exterior/General**

| DESCRIPTION | QNTY | REMOVE | REPLACE | TOTAL |
|---|---|---|---|---|
| 391. Respirator - Full face - multi-purpose resp. (per day) | 4.00 DA | 0.00 | 7.61 | 30.44 |
| 392. Respirator cartridge - HEPA & vapor & gas (per pair) | 2.00 EA | 0.00 | 21.35 | 42.70 |
| 393. Plumbing repair - Minimum charge | 1.00 EA | 0.00 | 275.00 | 275.00 |
| 394. R&R Exterior light fixture | 2.00 EA | 12.45 | 79.93 | 184.76 |
| 395. Neg. air fan/Air scrub.-Large (per 24 hr period)-No monit. | 7.00 DA | 0.00 | 120.00 | 840.00 |
| 396. Add for HEPA filter (for neg. air machine/vacuum - Large) | 7.00 EA | 0.00 | 214.26 | 1,499.82 |

| | | |
|---|---|---|
| Totals: Exterior/General | | 5,704.07 |

| | | |
|---|---|---|
| **Line Item Subtotals: CDW-000015** | | **148,892.52** |

| Adjustments for Base Service Charges | Adjustment |
|---|---|
| Carpenter - Finish, Trim/Cabinet | 129.60 |
| Cleaning Technician | 59.64 |
| Cleaning Remediation Technician | 87.80 |
| Drywall Installer/Finisher | 237.20 |
| Electrician | 191.12 |
| Flooring Installer | 113.40 |
| Wood Flooring Installer | 126.24 |
| Hardware Installer | 107.76 |
| Heating / A.C. Mechanic | 174.26 |
| Insulation Installer | 126.18 |
| General Laborer | 29.21 |
| Overhead Door Installer | 135.06 |
| Plumber | 178.20 |
| Painter | 113.18 |
| Tile/Cultured Marble Installer | 129.98 |

| | |
|---|---|
| Total Adjustments for Base Service Charges: | 1,938.83 |

CARTER000174



**Full Scope Services, LLC**

801 Old Newnan Road, Suite B
Carrollton, GA 30116
Tel: (770) 214-1138
Fax: (770) 214-5844

| Adjustments for Base Service Charges | Adjustment |
|---|---|
| Line Item Totals:  CDW-000015 | 150,831.35 |

## Grand Total Areas:

| | | | | | |
|---|---|---|---|---|---|
| 7,272.62 | SF Walls | 4,068.66 | SF Ceiling | 11,341.28 | SF Walls and Ceiling |
| 3,783.64 | SF Floor | 420.40 | SY Flooring | 978.67 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 997.40 | LF Ceil. Perimeter |
| | | | | | |
| 3,783.64 | Floor Area | 4,036.47 | Total Area | 7,272.62 | Interior Wall Area |
| 3,455.32 | Exterior Wall Area | 528.00 | Exterior Perimeter of Walls | | |
| | | | | | |
| 0.00 | Surface Area | 0.00 | Number of Squares | 0.00 | Total Perimeter Length |
| 0.00 | Total Ridge Length | 0.00 | Total Hip Length | | |

CDW-000015

1/20/2010          Page: 26

CARTER000118



**Full Scope Services, LLC**

801 Old Newnan Road, Suite B
Carrollton, GA 30116
Tel: (770) 214-1138
Fax: (770) 214-5844

### Summary for Dwelling

| | | | | |
|---|---|---|---|---:|
| Line Item Total | | | | 148,892.52 |
| Total Adjustments for Base Service Charges | | | | 1,938.83 |
| Material Sales Tax | @ | 9.000% x | 61,296.93 | 5,516.72 |
| | | | | |
| Subtotal | | | | 156,348.07 |
| Overhead | @ | 10.0% x | 150,013.18 | 15,001.32 |
| Profit | @ | 10.0% x | 165,014.50 | 16,501.45 |
| | | | | |
| **Replacement Cost Value** | | | | **$187,850.84** |
| **Net Claim** | | | | **$187,850.84** |

Jamie Ziglar

CARTER000119



Main Level

CARTER000120

CDW-000015

1/20/2010

Page: 28



CARTER000121











CARTER000123






CARTER000124






CARTER000125






CARTER000126









CARTER000127






CARTER000128









CARTER000129






CARTER000130






CARTER000131






CARTER000132

DRYWALL ANALYSIS REPORT

FOR

# 261 W. Robert E. Lee

NEW ORLEANS, LA

June 30, 2010

PROJECT NO.  5552



Prepared For:
Ms. Amy Carter

Prepared By:

Michael T. Barclay, CIH, CSP
Barclay Assessment Services, L.L.C.

*This communication is intended only for the individual or entity to which it is directed. It may contain information that is privileged, confidential, or otherwise exempt from disclosure under applicable law. Dissemination, distribution, or copying this communication by anyone other than the intended recipient, or a duly designated employee or agent of such recipient, is prohibited. If you have received this communication in error, please destroy or delete this message and all attachments thereto.*

This is a privileged and confidential report prepared exclusively for our Client

© 2008 Barclay Assessment Services, L.L.C.

Attachment 4

CARTER000133

# Table of Contents

EXECUTIVE SUMMARY                                    3 - 4

RESULTS OF SAMPLING AND TESTING                         4

PICTURE SUMMARY TABLE                                4 - 5

SUMMARY INFORMATION AND CORROSIVITY DATA             5 - 6

OPINION                                                 6

REFERENCES                                              6

REPORT CONDITIONS                                    6 - 7

CONTACT                                                 7

**ATTACHMENT A: LABORATORY REPORTS - COLUMBIA ANALYTICAL SERVICES**

**ATTACHMENT B: PHOTOGRAPHS**

CARTER000134

# Drywall Assessment - 261 W. Robert E. Lee

**Executive summary**

On June 1, 2010, Michael Barclay, CIH, initiated air testing to measure air corrosivity at 261 W. Robert E. Lee.  In addition, on June 4, 2010 Michael Barclay obtained a bulk sample of drywall from the stairwell closet for analysis of elemental sulfur content, and took probe readings necessary to measure the air corrosivity.

The corrosivity testing and drywall sampling was done at the request of Ms. Amy Carter, homeowner.  Ms. Carter reported that she recently replaced her drywall, because it was reportedly manufactured in China by Knauf.

The purpose of the air corrosivity testing was to assess the corrosion rate of the indoor air.   Homes affected by corrosive Chinese drywall are subject to corrosive emissions from the drywall that can affect susceptible construction materials and contents.

The purpose of the drywall sampling was to determine the presence of elemental sulfur in the drywall that is an analytical marker, confirming the presence of corrosive Chinese drywall.

To complete the sample collection, a core sample of drywall was obtained from the stairwell closet with a clean, circular saw.  The collected sample was placed into a clean, zip-lock bag.  It was then packaged and shipped to Columbia Analytical Services in Simi Valley, California for elemental sulfur analysis by Gas Chromatography and Electron Capture Detection (GC/ECD).

The air corrosivity testing was done using a Checkmate corrosivity meter.  To complete the air corrosivity testing, a copper sensor circuit (probe) was suspended in the air return.  The probe was kept in the air return for several days, while the fan was operated, to obtain a uniform and representative measurement of the air corrosivity. At the end of the test period, the probe was read to determine the rate of corrosion of the air.  The air corrosivity measurement was then compared to a database of corrosion rate measurements obtained from affected and non-affected homes.

*Continued on next page*

CARTER000135

# Drywall Assessment - 261 W. Robert E. Lee, Continued

**Results of sampling and testing**

The laboratory results indicated that no detectable elemental sulfur was present in the drywall sample obtained from the stairwell closet (Attachment A).

In addition, the air corrosivity test results indicated that the air corrosion rate was comparable to homes that did not have any corrosive Chinese drywall.

**Sample summary**

The sample results are provided in Attachment A. The following information is for the drywall sample that was collected and analyzed:

| Sample Number | Sample Description/Location |
|---|---|
| 261-REL-1 | DRYWALL FROM STAIRWELL CLOSET |

**Probe summary**

The following information was obtained from the probe that was used to measure the air corrosivity:

| Date and Time | Divisions |
|---|---|
| 6/1/2010 11:46 | 56.1 |
| 6/1/2010 11:47 | 56.1 |
| 6/1/2010 11:48 | 56.3 |
| 6/4/2010 10:16 | 56.4 |
| 6/4/2010 10:17 | 56.8 |
| 6/4/2010 10:18 | 56.5 |

**Air corrosivity calculations**

The following calculation was used to determine the air corrosivity rate based upon the Probe summary information that was averaged for each day:

$$\text{Corrosion Rate} = \frac{0.0304 \times 2500 \times \text{change in reading (divisions)}}{\text{Change in Time (days)}}$$

**Air corrosivity results**

The following data was obtained from the Probe to calculate the air corrosivity rate:

*Continued on next page*

CARTER000136

# Drywall Assessment - 261 W. Robert E. Lee, Continued

**Air corrosivity results** (continued)

|  | Div | Date |
|---|---|---|
| Initial reading | 56.17 | 1-Jun |
| final reading | 56.57 | 4-Jun |
| Delta | 0.4 | Duration = 3 days |
|  | Corrosion Rate = | 103.44 Angstroms per month[1] |

[1]The corrosion rate was comparable with corrosion rate data obtained from homes with domestic, non-corrosive drywall.

**Picture summary table**

The following table is a summary of pictures that were taken during the sample collection:

| Picture Number | Picture Description |
|---|---|
| P6010205 | Subject property |
| P6010202 | Clean and apparently new evaporator coils to A/C |
| P6040049 | Air return used for probe corrosivity test |
| P6040050 | Stairwell closet where sample was obtained |

**Guidance information**

The Florida Department of Health Case Definition for "Confirmatory Evidence of Drywall Associated Corrosion" includes three items.   If any of the three is positive, that is considered confirmatory evidence.  The three types of confirmatory evidence are: (1) laboratory testing for elemental sulfur indicating that the gypsum source in the drywall contributes to the reduced sulfur gases emitted from the corrosive drywall; (2) laboratory analysis (i.e., headspace) for reduced sulfur gas emissions capable of causing copper corrosion in the house; and (3) qualitative analysis of suspect drywall for its ability to cause corrosion/blackening of copper under controlled conditions indicating drywall samples from the house emit gases capable of corroding copper.

*Continued on next page*

# Drywall Assessment - 261 W. Robert E. Lee, Continued

**Opinion**

Based upon the Florida Department of Health Case Definition for "Confirmatory Evidence of Drywall Associated Corrosion" and the sampling results, indicating no detectable levels of elemental sulfur present in the drywall sample from the stairwell closet, are opinion is that the drywall panel sampled was non-corrosive. In addition, and based upon the corrosivity testing results, our opinion is that the corrosion rate of the indoor air is comparable to that of homes that did not contain corrosive Chinese drywall.

**References**

The following are references related to this report:

1. United States District Court, Eastern District of Louisiana, Case 2:09-md-02047-EEF-JCW, Document 2380, Filed 04/08/10, page 12 of 108.
2. Singhvi, R, Lin, Y., Admassu, G., Syslo, J. Field Analysis of Elemental Sulfur in Drywall by GC/ECD. Poster Presentation at Technical Symposium on Corrosive Imported Drywall Nov 5-6, 2009.
3. United States District Court, Eastern District of Louisiana, Case 2:09-md-02047-EEF-JCW, Document 2380, Filed 04/08/10, pages 18 and 19 of 108.
4. Salazar, R., Krause, D., Eldredge, C. - Comparison of Methods Utilized by Commercial Laboratories for Analyses of Bulk Drywall Samples. Poster Presentation at Technical Symposium on Corrosive Imported Drywall Nov 5-6, 2009.

**Report conditions**

This report is based on information available to BAS at this time. We reserve the right to revise our opinions and conclusions, if necessary and warranted by the discovery of new or additional information. This report is specific in nature and shall not be relied upon for real estate transactions.

The findings, opinions, and conclusions contained within this report are not intended to reflect all problems relative to the subject matter that made the basis of this

*Continued on next page*

CARTER000138

# Drywall Assessment - 261 W. Robert E. Lee, Continued

**Report conditions (Cont.)**

assessment. The findings, opinions, and conclusions contained herein are solely limited to only the areas inspected and investigated by BAS as requested by the company and/or individual who requested the inspection and investigation. BAS did not undertake to expand the scope of the investigation and inspection beyond that requested and approved by the person and/ or entity requesting the investigation and inspection. Accordingly, other problems may exist that are not identified in this report in the event the same were outside of the scope of the investigation and inspection requested by the person and/or entity requesting the same. The findings, opinions, and conclusions contained within this report are intended solely for the benefit of the person and/or entity who requested that BAS conduct the inspection and investigation, and the same are not intended to benefit any third party.

**Contact**

If you have any questions or need additional support, please contact Michael Barclay at 985-626-7685.

## Attachment A

Laboratory Reports
Columbia Analytical Services

CARTER000140



2855 Park Center Drive, Suite A
Simi Valley, CA  93065

**Columbia Analytical Services**℠

# Confirmation of Sample Receipt

| To: | Michael Barclay, CIH, CSP | From: | Sue Anderson |
|---|---|---|---|
| Email: | fungi@charter.net | Email: | SAnderson@caslab.com |
| Fax: | | Fax: | 805-526-7270 |
| Phone: | 985-626-7685 | Phone: | 805-526-7161 x250 |

Samples for analysis have been received by Columbia Analytical Services on 6/ 9/10 and assigned our Service Request number P1001991.  Please verify the
following information and notify me of any corrections as soon as possible.

The estimated completion date for this work is:  6/23/10

Client:          Barclay Assessment Services, LLC
Project:        261 West Robert E. Lee/5552-10

EDD Required:    No                                                Tier:  II

Report To:      Michael Barclay, CIH, CSP
                Barclay Assessment Services, LLC
                1238 Park Drive
                Mandeville, LA  70471

PO Number:  Pay By Credit Card

Billing Address:     Michael Barclay, CIH, CSP
                     Barclay Assessment Services, LLC
                     1238 Park Drive
                     Mandeville, LA  70471

Comments:

Thank you for your business!

A - Test is Authorized          H - Test is On Hold          P - Test is Authorized for Prep Only          C - Test has been Cancelled          * - Test has assigned QC

| P1001991-001 | 261-REL-1 | Solid | 6/4/10 1200 | Sulfur Octa / Sulfur Octa |
|---|---|---|---|---|
| | | | | A |

**Test Comments:**

| Group | Test/Method | Samples | Comments |
|---|---|---|---|
| Semivoa GCMS | Sulfur Octa/Sulfur Octa | 1 | S-8 (GC/ECD) |

CARTER000142


**Columbia Analytical Services™**   2655 Park Center Drive, Suite A   Simi Valley, CA 93065   |   805.526.7161   |   805.526.7270 fax   |   www.caslab.com

## LABORATORY REPORT

June 23, 2010

Michael Barclay, CIH, CSP
Barclay Assessment Services, LLC
1238 Park Drive
Mandeville, LA 70471

**RE: 261 West Robert E. Lee / 5552-10**

Dear Michael:

Enclosed are the results of the sample submitted to our laboratory on June 9, 2010. For your reference, this analysis has been assigned our service request number P1001991.

All analyses were performed according to our laboratory's NELAP-approved quality assurance program. The test results meet requirements of the current NELAP standards, where applicable, and except as noted in the laboratory case narrative provided. For a specific list of NELAP-accredited analytes, refer to the certifications section at www.caslab.com. Results are intended to be considered in their entirety and apply only to the samples analyzed and reported herein. Your report contains ___6___ pages.

Columbia Analytical Services, Inc. is certified by the California Department of Health Services, NELAP Laboratory Certificate No. 02115CA; Arizona Department of Health Services, Certificate No. AZ0694; Florida Department of Health, NELAP Certification E871020; New Jersey Department of Environmental Protection, NELAP Laboratory Certification ID #CA009; New York State Department of Health, NELAP NY Lab ID No: 11221; Oregon Environmental Laboratory Accreditation Program, NELAP ID: CA20007; The American Industrial Hygiene Association, Laboratory #101661; United States Department of Defense Environmental Laboratory Accreditation Program (DoD-ELAP), Certificate No. L10-3; Pennsylvania Registration No. 68-03307; TX Commission of Environmental Quality, NELAP ID T104704413-09-TX; Minnesota Department of Health, Certificate No. 11495AA; Washington State Department of Ecology, ELAP Lab ID: C946. Each of the certifications listed above have an explicit Scope of Accreditation that applies to specific matrices/methods/analytes; therefore, please contact me for information corresponding to a particular certification.

If you have any questions, please call me at (805) 526-7161.

Respectfully submitted,

**Columbia Analytical Services, Inc.**

Sue Anderson
Project Manager

Page
1 of 6


Columbia
Analytical Services™                2655 Park Center Drive, Suite A        Simi Valley, CA 93065        805 526 7161        805.526.7270 fx        www.caslab.com

| Client: | Barclay Assessment Services, LLC | CAS Project No: | P1001991 |
| Project: | 261 West Robert E. Lee / 5552-10 | | |

## CASE NARRATIVE

The sample was received intact under chain of custody on June 9, 2010 and was stored in accordance with the analytical method requirements. Please refer to the sample acceptance check form for additional information. The results reported herein are applicable only to the condition of the sample at the time of sample receipt.

### Orthorhombic Cycloostasulfur Analysis

A portion of the wallboard sample was prepared and analyzed for orthorhombic cyclooctasulfur according to CAS AQL 103A using a gas chromatograph equipped with an electron capture detector (ECD).

The result for sample 261-REL-1 (P1001991-001) is indicative of non-suspect wallboard.

*The results of analyses are given in the attached laboratory report. All results are intended to be considered in their entirety, and Columbia Analytical Services, Inc. (CAS) is not responsible for utilization of less than the complete report.*

**2**

**Client:**      Barclay Assessment Services, LLC
**Project:**     261 West Robert E. Lee/5552-10

**Service Request:** P1001991

## SAMPLE CROSS-REFERENCE

| SAMPLE # | CLIENT SAMPLE ID | DATE | TIME |
|---|---|---|---|
| P1001991-001 | 261-REL-1 | 6/4/10 | 12:00 |

**3**

**Columbia Analytical Services™**

2655 Park Center Drive, Suite A
Simi Valley, California 93065
Phone (805) 526-7161
Fax (805) 526-7270

**Drywall - Chain of Custody Record & Analytical Service Request**

Page __1__ of __1__

*Sample Requirements: 2" x 2" piece of drywall required for S₈ GC/ECD test.*
*5" x 5" piece of drywall required if additional tests are desired.*

Standard Turnaround Time (TAT) for Drywall Testing is 2-3 weeks
Expedited TATs available for selected tests for a surcharge; please call to inquire

CAS Project No. ____Y39co1921____

CAS Contact: ____

| Company Name & Address (Reporting Information) | | | | | Analysis | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| BARCLAY ASSESSMENT SVCS LLC | | | | | Elemental Sulfur (S₈) Marker Test (GC/ECD) | Elemental Sulfur (S₈) Marker Test (GC/MS) | Hydrogen Sulfide Emission Test | Copper Corrosion Jar Test | | | Comments |
| 1138 PARK DRIVE, HARANVILLE, LC 70471 | | | | | | | | | | | |
| Project Manager MICHAEL BARCLAY | | | | | | | | | | | |
| Phone 985-626-7685 | Fax | | | | | | | | | | |
| Email Address for Result Reporting MIKE@IHLABS.COM | | | | | | | | | | | |
| Project Name 361 WEST ROBERT E. LEE | | | | | | | | | | | |
| Project Number 5552-10 | | | | | | | | | | | |
| P.O. # / Credit Card / Billing Information CALL FOR CREDIT CARD 985-626-7685 | | | | | | | | | | | |
| Client Sample ID | Laboratory ID Number | Date Collected | Time Collected | Drywall Description/Location/Other Information | | | | | | | |
| 361-REL-1 | (1) | 6/4/10 | 12 NOON | STAIRWELL CLOSET | X | | | | | | |

Report Tier Levels - please select one
Tier II - (Results + QC /Default if not specified) ____   Tier III (Data Validation Package) 10% Surcharge ____

| Relinquished by: (Signature) M.T. BARCLAY | Date: 6/7 | Time: 3 PM | Received by: (Signature) | Date: 6/4/10 | Time: 10 @ 930 |
|---|---|---|---|---|---|
| Relinquished by: (Signature) | Date: | Time: | Received By: (Signature) | Date: | Time: |
| Relinquished by: (Signature) | Date: | Time: | Received by: (Signature) | Date: | Time: |

4

CARTER000146

**Columbia Analytical Services, Inc.**
**Sample Acceptance Check Form**

Client: Barclay Assessment Services, LLC                    Work order: P1001991
Project: 261 WEST ROBERT E. LEE / 5552-10
Sample(s) received on: 6/9/2010          Date opened: 6/9/2010     by:     ADAVID

_Note:_ This form is used for _all_ samples received by CAS. The use of this form for custody seals is strictly meant to indicate presence/absence and not as an indication of compliance or nonconformity. Thermal preservation and pH will only be evaluated either at the request of the client and/or as required by the method/SOP.

|  |  | Yes | No | N/A |
|---|---|:---:|:---:|:---:|
| 1 | Were **sample containers** properly marked with client sample ID? | ☒ | ☐ | ☐ |
| 2 | Container(s) **supplied by CAS**? | ☐ | ☒ | ☐ |
| 3 | Did **sample containers** arrive in good condition? | ☒ | ☐ | ☐ |
| 4 | Was a **chain-of-custody** provided? | ☒ | ☐ | ☐ |
| 5 | Was the **chain-of-custody** properly completed? | ☒ | ☐ | ☐ |
| 6 | Did **sample container labels** and/or tags agree with custody papers? | ☒ | ☐ | ☐ |
| 7 | Was **sample volume** received adequate for analysis? | ☒ | ☐ | ☐ |
| 8 | Are samples within specified holding times? | ☒ | ☐ | ☐ |
| 9 | Was proper **temperature** (thermal preservation) of cooler at receipt adhered to? | ☐ | ☐ | ☒ |
|  | Cooler Temperature _____ °C   Blank Temperature _____ °C |  |  |  |
| 10 | Was a **trip blank** received? | ☐ | ☐ | ☒ |
|  | Trip blank supplied by CAS: _____ |  |  |  |
| 11 | Were **custody seals** on outside of cooler/Box? | ☐ | ☒ | ☐ |
|  | Location of seal(s)? _____ Sealing Lid? | ☐ | ☐ | ☒ |
|  | Were signature and date included? | ☐ | ☐ | ☒ |
|  | Were seals intact? | ☐ | ☐ | ☒ |
|  | Were custody seals on outside of sample container? | ☐ | ☒ | ☐ |
|  | Location of seal(s)? _____ Sealing Lid? | ☐ | ☐ | ☒ |
|  | Were signature and date included? | ☐ | ☐ | ☒ |
|  | Were seals intact? | ☐ | ☐ | ☒ |
| 12 | Do containers have appropriate **preservation**, according to method/SOP or Client specified information? | ☐ | ☐ | ☒ |
|  | Is there a client indication that the submitted samples are **pH** preserved? | ☐ | ☐ | ☒ |
|  | Were **VOA vials** checked for presence/absence of air bubbles? | ☐ | ☐ | ☒ |
|  | Does the client/method/SOP require that the analyst check the sample pH and _if necessary_ alter it? | ☐ | ☐ | ☒ |
| 13 | **Tubes:**    Are the tubes capped and intact? | ☐ | ☐ | ☒ |
|  | Do they contain moisture? | ☐ | ☐ | ☒ |
| 14 | **Badges:**   Are the badges properly capped and intact? | ☐ | ☐ | ☒ |
|  | Are dual bed badges separated and individually capped and intact? | ☐ | ☐ | ☒ |

| Lab Sample ID | Container Description | Required pH * | Received pH | Adjusted pH | VOA Headspace (Presence/Absence) | Receipt / Preservation Comments |
|---|---|---|---|---|---|---|
| P1001991-001.01 | 1 each Plastic Bag |  |  |  |  |  |
| P1001991-001.02 | 8oz Glass Jar |  |  |  |  | Added by Lab |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |

Explain any discrepancies: (include lab sample ID numbers): _____

*Required pH: Phenols/COD/NH3/TOC/TOX/NO3+NO2/TKN/T.PHOS, H2SO4 (pH<2); Metals, HNO3 (pH<2); CN (NaOH or NaOH/Asc Acid) (pH>12);
Diss. Sulfide, NaOH (pH>12); T. Sulfide, NaOH/ZnAc (pH>12)          RSK - MEEPP, HCL (pH<2); RSK - CO2, (pH 5-8); Sulfur (pH>4)

**5**

# COLUMBIA ANALYTICAL SERVICES, INC.

RESULTS OF ANALYSIS

Page 1 of 1

**Client:** Barclay Assessment Services, LLC
**Client Project ID:** 261 West Robert E. Lee / 5552-10

CAS Project ID: P1001991

## Orthorhombic Cyclooctasulfur

**Test Code:** CAS AQL 103A
**Instrument ID:** HP6890/GC6/ECD/ECD
**Analyst:** Hani Cherazaie
**Sampling Media:** Wallboard
**Test Notes:**

Date Received: 6/9/10
Date Extracted: 6/15/10
Date Analyzed: 6/15/10

| Client Sample ID | CAS Sample ID | Sample Amount Gram(s) | Extract Volume ml(s) | Dilution Factor | Result mg/Kg | LOQ mg/Kg | Data Qualifier |
|---|---|---|---|---|---|---|---|
| 261-REL-1 | P1001991-001 | 1.00 | 5.0 | 1.00 | ND | 5.0 | |
| Negative Control Sample | P100615-NCS | 1.00 | 5.0 | 1.00 | ND | 5.0 | |

ND = Compound was analyzed for, but not detected above the limit of quantitation.

LOQ = Limit of Quantitation.

According to the Florida Department of Health (http://www.doh.state.fl.us/environment/community/indoor-air/casedefinition.html, 1/5/2010), a positive result above 10 mg/kg is indicative of corrosive drywall.

A positive result between 5-10 mg/kg is inconclusive; further testing may be warranted.

## LABORATORY CONTROL SAMPLE / DUPLICATE LABORATORY CONTROL SAMPLE SUMMARY

| Client Sample ID | CAS Sample ID | Spike Amount LCS / DLCS mg/Kg | Result LCS mg/Kg | DLCS mg/Kg | % Recovery LCS | DLCS | CAS Acceptance Limits | RPD | RPD Limit | Data Qualifier |
|---|---|---|---|---|---|---|---|---|---|---|
| Dup Lab Control Sample | P100615-DLCS | 96.5 | 88.3 | 90.3 | 92 | 94 | 80-120 | 2 | 20 | |

Verified By: _____    Date: 6/8/16    **6**

## Columbia Analytical Services™

2655 Park Center Drive, Suite A
Simi Valley, California 93065
Phone (805) 526-7161
Fax (805) 526-7270

# Drywall - Chain of Custody Record & Analytical Service Request

Page ___ of ___

**Sample Requirements:** 2" x 2" piece of drywall required for S₈ GC/ECD test.
5" x 5" piece of drywall required if additional tests are desired.

Company Name & Address (Reporting Information)

Barclay Assessment Svcs LLC
1238 Park Drive Mandeville, La 70471

Project Manager: Michael Barclay

Phone: 985-626-7685     Fax:

Email Address for Result Reporting: MIKE@INLAB.COM

| Client Sample ID | Laboratory ID Number | Date Collected | Time Collected | Drywall Description/Location/Other Information | Elemental Sulfur (S₈) Marker Test (GC/ECD) | Elemental Sulfur (S₈) Marker Test (GC/MS) | Hydrogen Sulfide Emission Test | Copper Corrosion Jar Test | Comments |
|---|---|---|---|---|---|---|---|---|---|
| 261-REEL-1 | (1) | 4/6/10 | 12:00 | Stairwell Closet | X | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

Standard Turnaround Time (TAT) for Drywall Testing is 2-3 weeks
Expedited TATs available for selected tests for a surcharge; please call to inquire

Project Name: 261 West Robert E. Lee

Project Number: 5552-10

P.O. # / Credit Card / Billing Information

CALL FOR CREDIT CARD
985-626-7685

CAS Contact:

CAS Project No.: P1009A1

**Analysis**

Report Tier Levels - please select one
Tier I - (Results + QC /Default if not specified) _____
Tier II - (Results + QC /Default if not specified) _____
Tier III (Data Validation Package) 10% Surcharge _____

| | Signature | Date | Time | | Signature | Date | Time |
|---|---|---|---|---|---|---|---|
| Relinquished by: | M T. Barclay | 6/7 | 3 Pu | Received by: | | 6/9/10 | 950 |
| Relinquished by: | | Date: | Time: | Received by: | | Date: | Time: |
| Relinquished by: (Signature) | | Date: | Time: | Received by: (Signature) | | Date: | Time: |

# Attachment B

Photographs

CARTER000150

ATTACHMENT B

P60102O5.JPG

P6040050.JPG

JUNE, 21

BAS, L.L.C.

P60102O2.JPG

P6040049.JPG

261 W. ROBERT E. LEE

CARTER000151



**FARM BUREAU INSURANCE**

P.O. Box 95005
Baton Rouge, La. 70895-9005

261

3A940C289

| Account Number | |
|---|---|
| 0-DTXL-XSJ0K-01 | |

| | |
|---|---|
| Previous Balance | 0.00 |
| Payments | 0.00 |
| Credits | 0.00 |
| Charges | 1,851.15 |
| Service Fee | 0.00 |
| Account Balance | 1,851.15 |
| Minimum Due | 1,851.15 |

05270
DANIEL CARTER
4105 CATHERINE AVE
METAIRIE LA 70001-5741

| Policy Number | Tran. Date | Description of Transactions | Policy Activity | Policy Balance | Policy Minimum |
|---|---|---|---|---|---|
| H0456451 | 03/15/2009 | HOMEOWNER POLICY | | | |
| | 04/13/2009 | RENEWAL EFF 05/15/2009 TO 05/15/2010 | 1,763.00 | | |
| | 04/13/2009 | 2009 LA FAIR Plan Emergency Assessment | 88.15 | | |
| | 04/15/2009 | POLICY BALANCE | | 1,851.15 | |
| | 04/15/2009 | SCHEDULED PAYMENT | | | 1,851.15 |

PAY YOUR ACCOUNT ONLINE WITH E-CHECK. GO TO WWW.LAFARMBUREAU.COM FOR DETAILS.

FOR A DETAILED DESCRIPTION OF INSURED PROPERTY PLEASE REFER TO THE MOST RECENT
DECLARATIONS FOR THE POLICY(S) LISTED.

Detach here ...

Attachment 5
CARTER00152



P.O. Box 60730
NEW ORLEANS, LA 70160-0730
PHONE (504) 831-6930
www.lacitizens.com

433 METAIRIE ROAD
SUITE, 100
METAIRIE, LA 70005-4355
FAX (504) 831-6876

11/10/2009

DANIEL CARTER

4105 Catherine Ave

mETAIRIE, LA 70001

Re:     Louisiana Citizens Property Insurance Corporation
        Policy Number:              FW 20063630246 02
        Expiration Date:            01/09/2010
        Tentative Renewal Amount:   $3,453.00
        Service Provider:           First Premium Insurance Group - (888) 741-0088

The policy described above will expire on the date shown.  Insurance coverage will not continue or be renewed unless renewal premium is received prior to the expiration date.  Renewal of this policy is subject to final underwriter approval by LA Citizens.

The renewal policy will be effective on the expiration date above only if your funds are received in our office prior to the expiration date.  You will receive an invoice for the quarterly/annual balance due on the account, or you may make a payment based on the tentative quote by mailing payment to:

        Louisiana Citizens Property Insurance Corporation
        P.O. Box 60730
        New Orleans, LA 70160-0730

**Location Address:** 261 WEST ROBERT E. LEE   NEW ORLEANS, LA 70124

| Coverage Name | Limit of Liability | Premium |
|---|---|---|
| Cov A | $256,000.00 | $1,772.00 |
| Cov C | $128,000.00 | $1,446.00 |
| **Location Total:** | | **$3,218.00** |
| Market Equalization Charge: | | $0.00 |
| Emergency Assessment for All Locations: | | $138.00 |
| Tax Exempt Surcharge for All Locations: | | $97.00 |
| **Total for All Locations:** | | **$3,453.00** |

LOUISIANA CITIZENS PROPERTY INSURANCE CORPORATION
CC: DELMAN L WALKER INSURANCE
        1801 CAROL SUE AVE
        GRETNA, LA 70056

CTZ-U-0236 (01/05)

Page    1  of  2

# CITY OF NEW ORLEANS • 2009 Real Estate Tax Bill

Page 1 of 2



**BUREAU OF THE TREASURY**
1300 Perdido Street, Room 1W40
New Orleans, LA 70112

A COPY OF YOUR REAL ESTATE TAX BILL HAS
BEEN SENT TO NATIONAL CITY MORTGAGE
FOR PAYMENT.  IF THIS IS NOT CORRECT, PLEASE
CONTACT YOUR CURRENT MORTAGE HOLDER.

**2009 Ad Valorem Tax**
824.83
**Delinquent Date**
02/01/2009
**Property Location**
261 W ROBERT E LEE BL
**Legal Description**
WEST END LOT L-1
W ROBERT E LEE
40 6 X 120

**Tax Bill No.**
7 16 5 252 10



00002673 CNOB R8 08353
MR CARTER DANIEL T
4105 CATHERINE AVE
METAIRIE LA 70001

I certify that I am the owner of the property listed on this bill.
Please change my  mailing address to the following:

Address _____

City/St/Zip _____

Signature _____

---

If changing address RETURN above portion WITH the bottom payment stub and your payment.

Interest accrues at 1% per month on all delinquent taxes.  In addition, current
year penalties accrue at 10% on February 1 and an additional  9.5% on April 1.

Tax Bill No.   7 16 5 252 10

| Property Values | | |
|---|---|---|
| 2009 Land Assessment | 3,340 | |
| 2009 Improvement Assessment | 3,000 | |
| *2009 Homestead Exemption | 0 | |

| | |
|---|---|
| Real Estate Tax, if Paid Before Feb. 1, 2009 | 824.83 |
| Tax, Int, Plty, if Paid During the Month of February 2009 | 915.56 |
| Tax, Int, Plty, if Paid During the Month of March 2009 | 923.81 |
| Tax, Int, Plty, if Paid During the Month of April 2009 | 1,020.59 |
| Tax, Int, Plty, if Paid During the Month of May 2009 | 1,029.63 |

## DETAIL OF BILL

This bill reflects payments through 12/17/2008

| Period | Type | Ref. No. | Delinquency Date | Tax/Lien | Interest | City Penalty | Collection Penalty/Fee | Total |
|---|---|---|---|---|---|---|---|---|
| 2009 | REAL ESTATE | | 02/01/09 | 824.83 | | | | |
| | | | | | | | | 824.83 |

---

## *ATTENTION TAXPAYERS:

If you are entitled to a homestead exemption and no amount is indicated, contact your assessor immediately at 658-1370 and notify your mortgage company.
In the event of an error, your assessor will make the correction and a supplemental bill will be issued.  Your assessor can answer questions on assessments,
mailing name and address, or legal descriptions.  For all other questions, call the Bureau of the Treasury at 866-493-7407 hours 8:45 am - 4:40 pm, Monday
through Friday, Room 1W40, City Hall.

Tax Sales to individuals shown on our records for the Tax Years:   NONE

### Please make all checks payable to the City of New Orleans.
********** See reverse, for how your tax dollars are spent.  **********

CARTER000154

## Don Reichert

| | |
|---|---|
| **From:** | Don Reichert |
| **Sent:** | Monday, July 18, 2016 10:11 AM |
| **To:** | 'Dysart, Danny' |
| **Subject:** | Carter:  Already Remediated Property |
| **Attachments:** | Invoices.Receipts.pdf; Lease.pdf; Owner Disclosure Affidavit.pdf; Photographs.pdf; Utility Receipts.pdf |

Mr. Dysart,

I am going to send you multiple emails attaching documents regarding the above referenced matter.  Please let me know if there is anything additional need.

Thanks,
Don


Don Reichert
Associate Attorney
**Bruno & Bruno, LLP**
855 Baronne Street
New Orleans, LA 70113
Main:  (504) 525-1335
Direct:  (504) 304-4216
don@brunobrunolaw.com

The information contained in this electronic message is attorney privileged and confidential information intended only for the use of the owner of the email address listed as the recipient of this message.  If you are not the intended recipient, or the employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any disclosure, dissemination, distribution, or copying of this communication is strictly prohibited.  If you have received this transmission in error, please immediately notify us by telephone at (504) 525-1335.

CARTER000155

Date/Time: 07/05/16  3:30 pm
User: DOMICO

# CUSTOMER HISTORY
## Safeguard Self Storage Metairie, LA - #100117
### FREESE, AMY JEAN
### Unit: 2138

Page 4

| Date | Description | Amount | Rent | Fees | Tax | Merch. | Insurance | Other | Prepaid | Balance | Paid Thru |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 01/01/11 | Monthly Charges | $205.00 | $205.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| 12/22/10 | Payment - Check | ($205.00) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($205.00) | $205.00CR | 01/31/11 |
| | Rcpt. #: 50413 ; Check #: 5413 | | | | | | | | | | |
| 12/01/10 | Monthly Charges | $205.00 | $205.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| 11/23/10 | Payment - Check | ($205.00) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($205.00) | $205.00CR | 12/31/10 |
| | Rcpt. #: 49789 ; Check #: 5394 | | | | | | | | | | |
| 11/01/10 | Payment - Check | ($205.00) | ($205.00) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 11/30/10 |
| | Rcpt. #: 49476 ; Check #: 5378 | | | | | | | | | | |
| 11/01/10 | Monthly Charges | $205.00 | $205.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $205.00 | |
| 10/01/10 | Monthly Charges | $205.00 | $205.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| 09/27/10 | Payment - Check | ($205.00) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($205.00) | $205.00CR | 10/31/10 |
| | Rcpt. #: 48586 ; Check #: 5352 | | | | | | | | | | |
| 09/01/10 | Monthly Charges | $205.00 | $205.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| 08/24/10 | Payment - Check | ($205.00) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($205.00) | $205.00CR | 09/30/10 |
| | Rcpt. #: 47856 ; Check #: 5334 | | | | | | | | | | |
| 08/01/10 | Monthly Charges | $205.00 | $205.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| 07/27/10 | Payment - Check | ($205.00) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($205.00) | $205.00CR | 08/31/10 |
| | Rcpt. #: 47222 ; Check #: 5310 | | | | | | | | | | |
| 07/02/10 | Payment - Check | ($205.00) | ($205.00) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 07/31/10 |
| 07/01/10 | Monthly Charges | $205.00 | $205.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $205.00 | |
| 06/01/10 | Monthly Charges | $205.00 | $205.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| 05/25/10 | Payment - ACH | ($205.00) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($205.00) | $205.00CR | 06/30/10 |
| | Rcpt. #: 45880 ; ACH 810460717; Payer: AMY FREESE | | | | | | | | | | |
| 05/01/10 | Monthly Charges | $205.00 | $205.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| 04/28/10 | Payment - Check | ($205.00) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($205.00) | $205.00CR | 05/31/10 |
| | Rcpt. #: 45279 ; Check #: 5259 | | | | | | | | | | |
| 04/01/10 | Payment - Check | ($205.00) | ($205.00) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 04/30/10 |
| | Rcpt. #: 44882 ; Check #: 5245 | | | | | | | | | | |
| 04/01/10 | Monthly Charges | $205.00 | $205.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $205.00 | |
| 03/01/10 | Monthly Charges | $205.00 | $205.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| 02/27/10 | Payment - Check | ($205.00) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($205.00) | $205.00CR | 03/31/10 |
| | Rcpt. #: 44040 ; Check #: 5233 | | | | | | | | | | |
| 02/03/10 | Payment - Check | ($205.00) | ($205.00) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 02/28/10 |
| | Rcpt. #: 43726 ; Check #: 5216 | | | | | | | | | | |
| 02/01/10 | Monthly Charges | $205.00 | $205.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $205.00 | |
| 01/12/10 | Invoice | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| 01/04/10 | Payment - Check | ($205.00) | ($205.00) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 01/31/10 |
| | Rcpt. #: 43142 ; Check #: 5202 | | | | | | | | | | |
| 01/01/10 | Monthly Charges | $205.00 | $205.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $205.00 | |
| 12/12/09 | Invoice | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| 12/05/09 | Payment - Check | ($191.00) | ($191.00) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 12/31/09 |
| | Rcpt. #: 42558 ; Check #: 5179 | | | | | | | | | | |
| 12/01/09 | Monthly Charges | $205.00 | $205.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $205.00 | |
| 11/10/09 | Invoice | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $191.00 | |
| 11/03/09 | Payment - Check | ($191.00) | ($191.00) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($14.00) | $14.00CR | 11/30/09 |
| | Rcpt. #: 41685 ; Check #: 5158 | | | | | | | | | | |
| 11/03/09 | Monthly Charges | $191.00 | $191.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $191.00 | |
| 10/13/09 | Invoice | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| 10/03/09 | Payment - Check | ($205.00) | ($205.00) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 11/02/09 |
| | Rcpt. #: 41054 ; Check #: 5137 | | | | | | | | | | |
| 10/03/09 | Monthly Charges | $205.00 | $205.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $205.00 | |
| 09/12/09 | Invoice | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $205.00 | |
| 09/03/09 | Monthly Charges | $205.00 | $205.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| 08/25/09 | Payment - Check | ($205.00) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($205.00) | $205.00CR | 10/02/09 |
| | Rcpt. #: 40229 ; Check #: 5115 | | | | | | | | | | |
| 08/13/09 | Invoice | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| 08/03/09 | Monthly Charges | $205.00 | $205.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| 07/31/09 | Payment - Check | ($205.00) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($205.00) | $205.00CR | 09/02/09 |
| | Rcpt. #: 39733 ; Check #: 5098 | | | | | | | | | | |
| 07/13/09 | Invoice | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| 07/03/09 | Monthly Charges | $205.00 | $205.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| 06/20/09 | Payment - Check | ($205.00) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($205.00) | $205.00CR | 08/02/09 |
| | Rcpt. #: 38868 ; Check #: 1000 | | | | | | | | | | |
| 06/12/09 | Invoice | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| 06/03/09 | Monthly Charges | $205.00 | $205.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| 06/01/09 | Payment - Check | ($205.00) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($205.00) | $205.00CR | 07/02/09 |
| | Rcpt. #: 38469 ; Check #: 5062 | | | | | | | | | | |
| 05/13/09 | Invoice | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| 05/03/09 | Monthly Charges | $205.00 | $205.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| 04/18/09 | Payment - Check | ($205.00) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($205.00) | $205.00CR | 06/02/09 |
| | Rcpt. #: 37544 ; Check #: 5040 | | | | | | | | | | |
| 04/12/09 | Invoice | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| 04/03/09 | Monthly Charges | $205.00 | $205.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| 03/19/09 | Payment - Check | ($205.00) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($205.00) | $205.00CR | 05/02/09 |
| | Rcpt. #: 36954 ; Check #: 5021 | | | | | | | | | | |
| 03/13/09 | Invoice | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| 03/04/09 | Payment - Check | ($205.00) | ($205.00) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 04/02/09 |
| | Rcpt. #: 36666 ; Check #: 5000 | | | | | | | | | | |
| 03/03/09 | Monthly Charges | $205.00 | $205.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $205.00 | |
| 02/10/09 | Invoice | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| 02/03/09 | Monthly Charges | $205.00 | $205.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |



**Crescent City**
4105 Catherine Ave., Metairie, LA 70001
Daniel Carter, Owner
Office (504) 833 - 4188
Cell  (504) 669 - 9055

May 15, 2010                                                    Invoice  #        515201044

261 W. Robert E. Lee

New Orleans, IA 70124

Re:  Dry wall labor

| | |
|---|---:|
| **Week Feb 22, 2010** | $6,250.00 |
| Demolition of all sheetrock | |
| 4 Men @ 1250.00 per day  x 5 days | |
| **Week March 1, 2010** | $6,250.00 |
| Demolition of all sheetrock | |
| 4 Men @ 1250.00 per day  x 5 days | |
| **Week March 8, 2010** | $3,750.00 |
| Demolition of all sheetrock & Custom Kitchen cabinets | |
| 3 Men @ 1250.00 per day x 3 days | |
| **Week March 15, 2010** | $3,750.00 |
| Demolition of all Granite counter tops and Kitchen cabinets | |
| 3 Men @ 1250.00 per day x 3 days | |
| **Week March 22, 2010** | |
| Clean all studs and coat with chemical cleaner | $3,750.00 |
| 3 Men @ 1250.00 per day x 3 days | |
| **Week March 29, 2010** | $3,750.00 |
| General clean up of all floor of debris & insulation | |
| 3 Men @ 1250.00 per day x 3 days | |
| **Week April 5, 2010** | $6,250.00 |
| Reinstall sheetrock | |
| 4 Men @ 1250.00 per day  x 5 days | |
| **Week April 12, 2010** | $6,250.00 |
| Sheet rock & Mud | |
| 4 Men @ 1250.00 per day  x 5 days | |
| **Week April 19, 2010** | $6,250.00 |
| Reinstall Custom Cabinets & Trim | |
| 4 Men @ 1250.00 per day  x 5 days | |
| **Week April 26, 2010** | $6,250.00 |
| Paint and do trim work | |
| 4 Men @ 1250.00 per day  x 5 days | |

# Thank You!

| | |
|---|---:|
| Pay this Amount | $52,500.00 |
| Deposit/ Advance | $52,500.00 |
| Total Due | $0.00 |

CARTER000157

**Crescent City**
4105 Catherine Ave., Metairie, LA 70001
Daniel Carter, Owner
Office (504) 833 - 4188
Cell   (504) 669 - 9055

April 1, 2009                                    Invoice #        41009

261 W. Robert E. Lee

New Orleans, LA 70124

Moving and packing labor

| | | |
|---|---|---|
| | | |
| Pack and move all furnishings to storage facility | | $2,000.00 |
| 2 Days at $1000 per day | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

# Thank You!

| | | |
|---|---|---|
| Pay this Amount | | $2,000.00 |
| Deposit/ Advance | | $2,000.00 |
| PAID IN FULL | Total Due | $0.00 |

CARTER000158



**Warren May**
**Electrician**
**985-966-0089**

**Daniel Carter**
**261 W Robert E Lee**
**504-669-9055**

Bid for removal and re-wire of 1250 Square ft of home because of
damage. Owner will supply all material.

.1250 @ $3.00 sqr ft  3 x 1250 = $3750.00

Bid for re-wire of 1250 Square ft of home all audio , video , telephone ,
cable & cameras. Owner will supply all material.

1250 @ $1.00 Sqr ft  1 x 1250 = $1250.00

Total  = $5000.00   *+ 300 filing fee + cable*

Will need $3000.00 to start and $2000.00 when completed

*3300*
*mild*            *3300,—*

*$ 5500  Pd 5/16/2008*

*need to file for Building Permit*

*Call Sunday or Monday toncet Tues*



**Material List ele.**

1) 1 / 200 amp indoor panel 40 spaces and breakers const. kit
2)  2 / 60 amp A/C disconnects
3) 5 /  pancake boxes
4) 1 /  12 x 12 junction boxes
5) 40 / single plastic nail on box
6) 6 / double plastic nail on box
7) 4 / triple plastic nail on box
8) 2 / 5 space plastic nail on box
9) 4 / ceiling  plastic nail on box
10)      1000 ft 14/2
11)      500 ft 12/2
12)      250 ft 14/3
13)      25 ft 2/0
14)      25 ft bare ground wire for panel
15)      meter pan
16)      wire nuts , green wire nuts ,


**Material list audio, video**

1) 1000 ft cat 5
2) 1000 ft rg6
3) 500 ft 16/2 speaker
4) 500 ft 16/4 speaker

CARTER000160

Chiest #290

PICK TICKET PRINT
SOUTHLAND PLUMBING SUPPLY, INC
2321 N. ARNOULT RD.
METAIRIE, LA  70001
504-835-8411

Pain

REPRIN
NO. 63297

Page 1

08/18/0
13:47:5

Ship-to:  TEMP
BALLS
DAN CARTER
469-9055
METAIRIE, LA 70001

4724.51

Bill-to:      1994
CASH SALE

METAIRIE, LA, 70001

| REFERENCE # | ORDERED | REQUESTED | SLSP | TERMS | WH | FREIGHT | SHIP VIA |
|---|---|---|---|---|---|---|---|
| | 05/27/09 | ASAP | CWC | Cash | 01 | PREPAID | ON THE WAY |

| ITEM | DESCRIPTION | ORDERED | SHIP | BACK | UM | WEIGHT | |
|---|---|---|---|---|---|---|---|
| Ordered By DAN CARTER | | | | | | | |
| KT10583-4-BN | BANCROFT  SHOWER TRIM- LEV ANDLE | 1 | | | EA | 3.3 | NONST |
| | Price:    165.00 EA | | | | | | |
| K393-4-8 | DEVONSHIRE CENTERSET- LEVE L | 1 | | | EA | 4.7 | |
| | Price:    141.02 EA | | | | | | |
| KT395-4-0 | DEVONSHIRE- B&S TRM/LEVER | 1 | | | EA | 3.7 | |
| | Price:    107.94 EA | | | | | | |
| K393-4-0 | DEVONSHIRE CENTERSET- LEVE | 1 | | | EA | 4.7 | |
| | Price:    141.02 EA | | | | | | |
| KT396-4-0 | DEVONSHIRE- SHR TRM/LEVER | 1 | | | EA | 3.1 | |
| | Price:     69.42 EA | | | OW | EA | | |
| K691-VS | VINNATA PULLDOWN SECONDARY CET | 1 | | | EA | 9.0 | NONST |
| | Price:    520.00 EA | | | | | | |
| K690-VS | VINNATA PULLDOWN KITCHEN F T | 1 | | | EA | 9.0 | |
| | Price:    520.00 EA | | | | | | |
| K3185-NA | UNDERTONE0 SINK | 1 | | | EA | 25.0 | NONST |
| | Price:    675.00 EA | | | | | | |
| D6545BN | VESI CHANNEL W/S LAV FCT,B | 1 | | | EA | .0 | |
| | Price:    350.00 EA | | | | | | |
| D6572829PC | LOKI 1HOLE LAV FCT,CP | 1 | | | EA | .0 | |
| | Price:    325.00 EA | | | | | | |
| K3187-NA | TROUGH 33" UNDERTONE SINK | 1 | | | EA | 12.0 | NONST |
| | Price:    340.25 EA | | | | | | |
| K3136-ST | WIRE RACK- 15"- TROUGH UND NE | 1 | | OW | EA | .8 | NONST |
| | Price:    122.00 EA | | | | | | |
| K3127-ST | WIRE BASKET- TROUGH UNDERT | 1 | | | EA | .5 | NONST |
| | Price:    117.75 EA | | | | | | |
| DR4707 | 4HOLE ROMAN TUB ROUGH IN K | 1 | | | EA | .0 | |
| | Price:    125.00 EA | | | | | | |
| T67745BN | TRIM ROMAN | 1 | | | EA | .0 | NOR |
| | Price:    625.00 EA | | | | | | |

Paid

EXTENSION TOT:         4344.40 (LESS TAX + FRT)     TOTAL WEIGHT:
WEB SITE WWW.SOUTHLANDPLUMBINGSUPPLY.COM

CARTER000161

FAY ..   3517820   P. 002

# COMMERCIAL BUILDERS GROUP, LLC

235 Jaubert Lane
LaPlace, LA 70068

# INVOICE

| Date | Invoice # |
|------|-----------|
| 2/2/2010 | 2010-182 |

**Bill To**

Tom Carter

**Ship To**

261 W. Robert E. Lee Blvd.
New Orleans, La. 70124

| P.O. No. | Terms | Rep | Ship Date | Due Date | Account # | Delivery /Pickup# |
|----------|-------|-----|-----------|----------|-----------|-------------------|
| | Due on receipt | DL | 2/2/2010 | 2/2/2010 | | 201000163 |

| Item Code | MPN. | Qty. | Description | U/M | Price Each | Amount |
|-----------|------|------|-------------|-----|------------|--------|
| 910724 | 910724 | 4 | R19 Unface CP 16"x96" 96sf/bg. | sqft | 0.275 | 105.60T |
| 910245 | 910245 | 8 | R13 Kraft 15"x93" 125.94sf/bg. | sqft | 0.25 | 251.88T |
| 4812XP | GB8100 | 8 | 1/2" x 4' x 8' XP Mold & Mildew Resist. | sqft | 0.265 | 67.84T |
| 41212R | 41212R | 34 | 1/2" x 4' x 12' Regular Gyp. | sqft | 0.17 | 277.44T |
| CB10 | CB10 | 50 | 10' Metal Cornerbead/pcs. | ft | 0.17 | 85.00T |
| DN138-1 | DN138-1 | 5 | 1-3/8" Drywall Nails/1lb. | lb | 1.35 | 6.75T |

Please remit to above address.

*We Appreciate Your Business!*

| Phone # | Fax # | E-mail |
|---------|-------|--------|
| (985) 651-7818 | (985) 651-7820 | cbgllc@bellsouth.net |

| | |
|---|---|
| Subtotal | $794.51 |
| Sales Tax (9.0%) | $71.51 |
| Total | $866.02 |
| Payments/Credits | $0.00 |
| **Balance Due** | **$866.02** |

CARTER000162

```
LAKEVIEW PAINT & DRY
  241 W HARRISON AVE
NEW ORLEANS LA 70124
     504-424-0400

       BATCH: 843
   S-A-L-E-S  D-R-A-F-T
        72498059
    4301340A0144582

REF:      0303
CD TYPE: DISCOVER
TR TYPE: PURCHASE
DATE:    JAN 21, 10  09:52:24


TOTAL          $14.16

ACCT:      7089    EXP: **/**
API: 021438
NAME: DANIEL T CARTER


CARDMEMBER ACKNOWLEDGES RECEIPT OF GOODS
AND/OR SERVICES IN THE AMOUNT OF THE
TOTAL SHOWN HEREON AND AGREES TO PERFORM
THE OBLIGATIONS SET FORTH BY THE
CARDMEMBER'S AGREEMENT WITH THE ISSUER

        THANK YOU

     CUSTOMER COPY
```

**Invoice**

| Invoice No | Date | Page |
|---|---|---|
| 034283 | 01/21/2010 | 1 |

| | Clerk | Terms | PO Number | Required |
|---|---|---|---|---|
| | CK1 | Cash On Delivery | | |

| | Qty | U/M | Tax | Unit Price | Extension |
|---|---|---|---|---|---|
| xture | 1.00 | EA | | $12.99 | $12.99 |

*RECEIPT NEEDED FOR REFUND OR EXCHANGE.*
*RESTOCKING CHARGES ON CUSTOM ORDERS.*

| | |
|---|---|
| SubTotal | $12.99 |
| Sales Tax | $1.17 |
| **Total** | **$14.16** |
| Paid Discovercard | $14.16 |

Received By : _____

CARTER000163

# Ball's Plumbing, L.L.C.

946 Hickory Avenue
Harahan, LA 70123
Phone # (504) 831-3200  Fax #(504) 739-5606

# Invoice

| Date | Invoice # |
|------|-----------|
| 9/21/2010 | 4871 |

**BILL TO:**
Daniel Carter
4405 Catherine Ave.
Metairie, LA 70001

**JOB LOCATION/COPY SENT TO:**
261 W. Robert E. Lee
New Orleans, LA 70124

EIN# 47-0910026

LMP# 2078

| | | Claim No. | Tech | Terms | Due Date |
|---|---|---|---|---|---|
| | | | L&R | Due on receipt | |

| Item | Qty | Description / Materials | Rate | Amount |
|------|-----|-------------------------|------|--------|
| MATERIAL | 1 | Delta handle extention | 3.00 | 3.00 |
| LABOR | 1 | 1 hr. labor | 120.00 | 120.00 |

*DON'T DROP THE BALL, JUST GIVE US A CALL*

| Total | $123.00 |
|-------|---------|
| **Payments/Credits** | $0.00 |

Faxed / Mailed: 9/22, 10/13, 11/18, 12/22
+ 1/21/11

CARTER000164

RJ MARCHAND CONT
3515 DIVISION ST
METAIRIE, LA 70002
504-888-2922

**IAND** CONTRACTOR
SPECIALTIES INC.

• Metairie, LA 70011    FAX 888-2936
• Metairie, LA 70002 (504) 888-2922

PICK TICKET

**Customer Copy**

| Number | 483478 |
|---|---|
| Date | 01/04/2010 |
| Page | 1 |

TERMINAL ID:          038600
MERCHANT #:       8801401350B

DISCOVER
XXXXXXXXXX737 EXP..../..    WHITE
SALE
BATCH: 000021      INV: 000021
Jan 04, 10       15:54
RRN: 012002?     AUTH:004945
TRACE #: 120003591457001
VALIDATION CODE: 0200

Bill To: 2

AP

Reference

TOTAL            $38.01

DANIEL T CARTER

Item

POL-6CL12X100

| | |
|---|---|
| Ship To: | GOLIATH |
| TEMP | PER DANIEL CARTER |
| | , 00000 |

| Terms | Tax Code | Doc # | Wh | Freight | Ship Via |
|---|---|---|---|---|---|
| CASH SALE | 15 | 483478 | 01 | PREPAID | NONE |

| | Ordered | Shipped | Backordrd | UM | Price | UM | Extension |
|---|---|---|---|---|---|---|---|
| M | 1 | 1 | 0 | EA | 34.95 | EA | 34.9 |

I AGREE TO PAY ABOVE TOTAL AMOUNT
ACCORDING TO CARD ISSUER AGREEMENT
MERCHANT AGREEMENT IF CREDIT VOUCHER

THANK YOU!
PLEASE COME AGAIN!

CUSTOMER COPY

| Merchandise | Misc | Discount | Tax | Freight | Total Du |
|---|---|---|---|---|---|
| 34.95 | .00 | .00 | 3.06 | .00 | 38.0 |

...Last Pag

CARTER000165



```
THANK YOU FOR SHOPPING AT        ACE
       ROCKERY ACE HARDWARE
         7043 CANAL BLVD
        NEW ORLEANS, LA 70124
          (504) 266-9627

                      SALE SALE

OP           1  EA      3.49 EA
PRO        PROMMS / 6734         3.49

SALE       SUB   TAX:        .31
                 TOTAL:      3.80
                 BC AMT:     3.80
           XXXXXXXXXXXXXX5737


    ||||||||||||||||||||||||||||

====> JRNL# 006299
       CUST # *5

    THANK YOU DANIEL T CARTER
       FOR YOUR PATRONAGE
```



```
    THANK YOU FOR SHOPPING AT
   Harry's Ace Hardware Metairie
          (504) 896-1550

1/06/10  3:25PM AMC       502 SALE
---------------------------------------
3200532         1  EA     14.49 EA
BULB-PAR 100PARHFL/2PACE       14.49

SUB-TOTAL:      14.49  TAX:     1.27
DISCOUNT:             TOTAL:   15.76
                     BC AMT:  $15.76

BK CARD#:    XXXXXXXXXXXX5737
ID:   670120747199
AUTH:  006000         ANT:    15.76
Host reference #:679064   Bat#1206
SWIPED
CARD TYPE:DISCOVER    EXPR: XXXX


    ||||||||||||||||||||||||||||

==>> JRNL#G79064           <<==
      CUST # *5

    THANK YOU DANIEL T CARTER
        FOR YOUR PATRONAGE
```

_T Carter_

Name: X_____

Acct: CASH CUSTOMER

I agree to pay above total amount
according to card issuer agreement
(merchant agreement if credit voucher)
          Customer Copy
```

```
    LOWE'S HOME CENTERS, INC.
    3640 VETERANS MEMORIAL BOU
    METAIRIE, LA 70002  (504) 780-011

         - SALE -
   SALES #: S1054JC3 1410251   01-07-

99889 JH UTILITY KNIFE STANLEY
177814 BOSCH #2 SQUARE RECESS 2"
71891 MASTER PADLOCK KEY  9102-

            SUBTOTAL:
                 TAX:
   INVOICE 05127 TOTAL:
                DISC:
   DISC XXXXXXXXXXXX5737
              AMOUNT:       8.63
```



```
   STORE: 1054  TERMINAL: 05   01/07
   # OF ITEMS PURCHASE
   EXCLUDES FEES, SERVICES AND SPECIAL
```



```
   THANK YOU FOR SHOPPING LC
   SEE REVERSE SIDE FOR RETURN
     STORE MGR: BILL EASTER

   HAVE A COMMENT OR FEEDBACK? LET
     ...WES.COM/FEE
   STO:        10540-107

   WE HAVE THE LOWEST PRICES,
IF YOU FIND A LOWER PRICE, WE WI
     SEE STORE FOR DETA
```

CARTER000166

**BEACON AIR CONDITIONING,
HEATING & REF., INC.**
317 E. 3RD STREET
KENNER, LOUISIANA  70062

# Invoice

| DATE | INVOICE NO. |
|------|-------------|
| 3/2/2009 | 45668 |

PAID
03-17-2009

| BILL TO | SHIP TO |
|---------|---------|
| MR. DANIEL CARTER<br>4105 CATHERINE<br>METAIRIE, LA.  70001 | 261 W ROBERT E LEE<br>NEW ORLEANS |

| P.O. NO. | TERMS | DUE DATE | REP | SHIP DATE |
|----------|-------|----------|-----|-----------|
|  | Due on receipt | 3/2/2009 | DRM | 2/19/2009 |

| DESCRIPTION | SERVICED | AMOUNT |
|-------------|----------|--------|
| REPLACED LEAKING COIL IN AIR HANDLER UPSTAIRS. CHARGED AND<br>CHECKED COOLING OPERATION.<br>1 – 316224-757 NFAK EVAPORATOR COIL<br>1 – 3/8 COUPLING<br>1 – 3/4 COUPLING<br>1 – 3/4 PVC COUPLING<br>MISC. WELDING MATERIAL AND TAPE<br>8LBS R22<br>TOTAL |  | 1,190.00 |

| | **Total** | $1,190.00 |

| Phone # | Fax # |
|---------|-------|
| 504 467-8698 | 504 466-4996 |

CARTER000167