UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br><br>SECTION: L |
| THIS DOCUMENT RELATES TO: | JUDGE FALLON |
| ALL *CASES* | MAG. JUDGE WILKINSON |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**RESPONSE IN OPPOSITION TO PLAINTIFFS' LEAD AND LIAISON COUNSEL'S MOTION FOR SANCTIONS PURSUANT TO RULE 11 AGAINST JIMMY R. FAIRCLOTH, JR., ESQ., VAL PATRICK EXNICIOS, ESQ., MARK MILSTEIN, ESQ., AND C. DAVID DURKEE, ESQ.**

The Motion for Sanctions filed by Arnold Levin and Russ M. Herman, as Plaintiffs' Lead and Liaison Counsel (Doc. 20759, the "Motion"), is improper and should be dismissed on the following grounds:

**A.    Mr. Herman and Mr. Levin Misuse Their Appointed Authority to Defend Personal Conflicts**

The Motion to Disqualify the Fee Committee, Strike its Allocation Motion, and Stay or Dismiss Proceedings Before the Special Master (Doc. 20735, hereafter "Disqualification Motion") is directed to the Fee Committee ("FC") at large based on the existence of structural defects in the allocation process and personal conflicts by Mr. Levin and Mr. Herman that undermine the impartiality of the FC as a court advisor on the fee allocation issues.  It is not directed to the PSC and does not seek to disqualify any of its members, not even Mr. Levin and Mr. Herman.  The Disqualification Motion was filed on April 13, 2017 and noticed for

submission on May 16, 2017 (Doc. 20729-4).  No opposition was filed by the FC or its members to the Disqualification Motion.[1]  It stands <u>unopposed</u>.

Rather than oppose the Disqualification Motion, Mr. Levin and Mr. Herman have instead retaliated with a Motion for Sanctions in their capacity as leaders *of the PSC*, no doubt attempting to avoid the merits of the Disqualification Motion by shifting the conversation. Ironically, in doing so they have again misused their appointed authority and created another conflict, as they attempt to vindicate their personal conflicts while acting in a representative capacity for the same individuals threatened by their conflicts.[2]   Moreover, they improperly attempt to align themselves with the Court, going so far as to cast the Court as the architect of the negotiations on behalf of the claimants.[3]

The Motion for Sanctions is improper and highlights the depth of the conflicts before the Court.

---

[1] Local Rule 7.5 requires oppositions to be filed "no later than eight days before the noticed submission date." Accordingly, the deadline for filing an opposition to the Disqualification Motion was May 8, 2017.

[2] As Your Honor has explained: "The theoretical bases for the application of the common fund concept to MDLs are the same as for class actions. . .. However, there is a difference: In class actions the beneficiary of the common benefit work is the claimant; *in MDLs the beneficiary is the primary attorney* (the attorney who has the representation agreement with the claimant). For this reason, in MDLs, the common benefit fee is extracted from the fee of the primary attorney and not the claimant, as is the case with class actions. ***Thus in MDLs, the claimant does not pay the common benefit fee; the primary attorney who is the beneficiary of the common benefit work pays it***." Eldon E. Fallon, *Common Benefit Fees in Multidistrict Litigation*, 74 La. L. Rev. 371, 376 (2014) (emphasis added).

[3] *See* Doc. 20759-1 at 2 and 7.  The Disqualification Motion carefully avoided questioning the impartiality of the Court and was filed under seal, among other reasons, to avoid the risk that others may interpret the motion as such.
.

2

### B.    The Motion for Sanctions Fails To Comply With Rule 11(c)(1)(A)

Rule 11(c)(1)(A) requires that a motion for sanctions be served on the offending party 21 days before the motion is filed. *Elliott v. Tilton*, 64 F.3d 213, 216 (5th Cir. 1995).[4] Informal notice via letter is insufficient. *See In re Pratt*, 524 F.3d 580, 586 (5th Cir. 2008). Failure to comply with this mandatory "safe-harbor" provision is fatal. *Elliott*, 64 F.3d at 216 ("The plain language of the rule indicates that this notice and opportunity prior to filing is mandatory. Plaintiffs did not comply with this procedural prerequisite. Therefore, the sanction and payment of costs and attorneys' fees ordered by the district court cannot be upheld under Rule 11.").

The motion before the Court was not served in accordance with Rule 11(c)(1)(A) and, therefore, must be dismissed.

### C.    Mr. Herman and Mr. Levin Lack Standing to Move For Rule 11 Sanctions

Rule 11 is designed to regulate proceedings among ***parties*** already before the court in a particular case. *Port Drum Co. v. Umphrey*, 852 F.2d 148, 150 (5th Cir.1988). Mr. Herman and Mr. Levin admit that they are not parties. Doc. 20759-1 at 15. The Motion for Sanctions is thus improper.

Non-parties have been afforded standing only in rare circumstances, not present here. That is, "non- parties who are brought in or are attempted to be brought into litigation involuntarily by one process or another have standing." *Hochen v. Bobst Grp., Inc.*, 198 F.R.D.

---

[4] Rule 11(c)(10(A) provides: "By Motion. A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees."

3

11, 15 (D. Mass.2000), *aff'd sub nom. Nyer v. Winterthur Int'l*, 290 F.3d 456 (1st Cir. 2002). For example, a non-party has standing to prosecute a Rule 11 motion when he or she is forced to defend a civil contempt motion. *Westmoreland v. CBS, Inc.*, 770 F.2d 1168 (D.C. Cir. 1985). Likewise, a non-party has standing when he or she is named as a defendant in a frivolous action but never formally served because he or she is forced to incur costs and attorney fees. *Greenberg v. Sala*, 622 F.2d 882 (9th Cir. 1987).

Mr. Levin and Mr. Herman are not involuntary participants in the litigation. Rather, they are attorneys who represent claimants and hold leadership positions in the MDL for the benefit of other (captive) attorneys and *their* clients, for which they seek to be paid handsomely. Their participation is fully voluntary and in a representative rather than personal capacity. As recognized by the Ninth Circuit, an attorney who represents a party in the litigation lacks standing to pursue a Rule 11 motion on his or her own behalf. *Westlake N. Prop. Owners Ass'n v. City of Thousand Oaks*, 915 F.2d 1301, 1307 (9th Cir.1990). As such, their motion should be denied.

Alternatively, if Mr. Levin and Mr. Herman are considered parties, it proves the premise of the Disqualification Motion.

**D.    The Objectionable Arguments in the Disqualification Motion Have Evidentiary Support**

The Memorandum in Support of the Disqualification Motion (Doc. 20729-3) is 40 pages long and filed with detailed arguments and citations to an abundance of evidence establishing the conflicts by Mr. Levin and Mr. Herman that warrant disqualification of the FC and removal of the allocation recommendation from the record. Three primary grounds support the motion, as summarized at pages 3 and 4, to wit:

4

> First, the FC has exceeded the authority of PTO 28 (Doc. 17379) and PTO 28(F) by assuming the role of a party in the proceeding before the Special Master and litigating against the efforts of attorneys retained by claimants … to conduct discovery, effectively taking a side in the litigation and obstructing transparency regarding the FC's 'recommendation' to the Court and the conflicts and self-dealing of the FC's leaders, Russ Herman and Arnold Levin. . . .

> \* \* \*

> Second, the FC's recommendation is tainted by conflicts of interest that deprive Primary Counsel of adequate representation to protect their contractual rights, resulting foremost from a lack of structural assurances of impartiality on 'essential allocation decisions designed to confine compensation. . . .

> \* \* \*

> Third, Mr. Herman and Mr. Levin's ex parte communications with the Court, directly and through Phillip Garrett and/or Leonard David, [create an unfair advantage for the FC] . . . .

The Motion for Sanctions targets two statements in a single paragraph within the section describing the history of the proceedings, titled "The Common Benefit Timeline – 13 Months Litigating to 'Imminent' Settlement followed by 3 ½ Years Orchestrating 'Interrelated' Settlements and Building the Common Benefit Request". The objectionable paragraph, in its entirety, states as follows:

> Mr. Herman and Mr. Levin **_appear to have used_** their appointed authority to prolong and manipulate the process to support an inflated common benefit allocation both generally and specifically for themselves. **_This appears to have been accomplished in two ways_**, one complete and the other a work in progress. First, they steered negotiations away from a traditional cash settlement and toward a remediation settlement with the main defendant tied to separate cash settlements with secondary defendants, described as "a series of complex and interrelated class settlements",[5] which created a web of administrative complexity providing a platform for increasing common benefit hours. Second, they are attempting to tangle common benefit time and costs in pursuit of the settling defendants with time and costs incurred in pursuit of the non-settling defendants, effectively

---

[5] *See* Memorandum in Support of Allocation Motion. Doc. 20293-1 at 2.

5

> seeking pre-payment of fees and reimbursement of expenses for on-going litigation that has yet to produce a recovery. This effort conflicts with the Court's statement that "[t]he entire focus now of this litigation will be on and shift to" pursuit of the non-settling defendants, when announcing the global settlement on December 19, 2011.[6] At most, there may be an overlap of common benefit time and costs leading to the announcement of the global settlement, not thereafter. There are 51,246.70 approved common benefit hours (equivalent to over 5.85 years) <u>after</u> December of 2011, nearly half of which belong to the firms of Mr. Herman (11,620.25) and Mr. Levin (13,988.50).

Memorandum in Support of Disqualification Motion. Doc. 20729-3 at 8 (emphasis added). This paragraph relates to the second ground for disqualification, "conflicts of interest … resulting foremost from a lack of structural assurances of impartiality on 'essential allocation decisions designed to confine compensation.'"

First, the argument that Mr. Levin and Mr. Herman "steered negotiations away from a traditional cash settlement and toward a remediation settlement" is based on information provided by a construction litigation expert serving on the PSC who, after learning of settlement discussions while assisting with a Florida state court trial on behalf of the PSC, recommended to Mr. Levin that the PSC pursue a cash settlement because of the complexity and burden of a remediation settlement on claimants and attorneys, and on information provided by primary attorneys regarding the PSC's heavy-handed efforts to prevent cash settlements outside of the PSC's control. Sources of this information were made apparent to Mr. Levin and Mr. Herman when questioned during their depositions, as admitted in Memorandum supporting the Motion for Sanctions (Doc. 20759-1 at 8-9). Primary Counsel would welcome the opportunity to conduct further discovery on this subject, but consider it largely unnecessary because the issues

---

[6] Doc. 1193 at 8.

of why, by whom and to what extent negotiations were "steered" toward a remediation settlement are not critical to the Disqualification Motion. The fact is, it appears negotiations indeed were "steered" toward a remediation settlement, which provided the opportunity to inflate common benefit hours. It matters not whether Mr. Levin and Mr. Herman were the engineers of that opportunity or merely opportunists.

Second, the argument that Mr. Levin and Mr. Herman "are attempting to tangle" time and costs pursing Taishan with the global settlement is based foremost on the Allocation Motion and its exhibits, which reveal that the PSC is seeking reimbursement of all costs and payment for all time pursuing Taishan through December of 2013. According to Mr. Garrett's reports, the FC seeks payment for 51,246 common benefit hours *after* the announcement of the global settlement, when the Court stated that "[t]he entire focus now of this litigation will be on and shift to" pursuit of the non-settling defendants. Doc. 1193 at 8. Based on the average hourly rate reported by the FC, this amounts to nearly $27,000,000 in post-announcement fees. The amount of time dedicated to the pursuit of Taishan, before or after announcement of the settlement, is not known by Primary Counsel, because the FC claims it is impossible to segregate such time and has doggedly opposed discovery on the subject.[7] Furthermore, the Allocation Motion and Mr. Levin acknowledged that $10,000,000 was disbursed from the settlement funds for the payment of costs to pursue Taishan.[8]

---

[7] The FC has successfully opposed production of timesheets, assignment logs, PSC minutes, and a request that Mr. Garrett produce reports based on categories, e.g. parties and assignments.

[8] Ex. A, Levin Dep. 246:18-247:14 [filed under seal].

Rule 11 requires evidentiary support for allegations based on a standard of reasonableness. *Thomas v. Capital Sec. Servs., Inc.,* 836 F.2d 866, 873 (5th Cir.1988). In this instance, the FC's admissions and the overwhelming weight of the evidence establishes that Mr. Levin and Mr. Herman "are attempting to tangle common benefit time and cost in pursuit of the settling defendants with time and costs incurred in pursuit of the non-settling defendants, effectively seeking pre-payment of fees and reimbursement of expenses for on-going litigation that has yes to produce a recovery," precisely as Primary Counsel argue in the Disqualification Motion.

The Motion of Sanctions was filed for an improper purpose, fails to comply with the statutory safe-harbor requirement, and is unsupported on the merits.

Respectfully submitted:

| | |
|---|---|
| **FAIRCLOTH, MELTON & SOBEL, LLC** | **LISKA, EXNICIOS & NUNGESSER** |
| By:   /s/ *Jimmy R. Faircloth, Jr.* <br> Jimmy R. Faircloth, Jr. (LA #20645) <br> jfaircloth@faircothlaw.com <br> Brook L. Villa (LA #31988) <br> bvilla@faircothlaw.com <br> Franklin "Drew" Hoffmann (LA #35824) <br> dhoffmann@faircothlaw.com <br> 301 Main Street, Suite 920 <br> Baton Rouge, LA 70801 <br> Phone: (225) 343-9535 <br> Fax: (225) 343-9538 <br><br> *Attorneys for Parker Waichman LLP* | By:   /s/ *Val Patrick Exnicios* <br> Val Patrick Exnicios, Esq. <br> vpexnicios@exnicioslaw.com <br> 1515 Poydras Street <br> 14th Floor, Ste. 1400 <br> New Orleans, LA. 70112 <br> Phone: (504) 410-9611 <br> Fax: (504) 410-9937 <br> Cell: (504) 495-9666 <br><br> *Attorneys for Whitfield Bryson & Mason LLP, Pendley Baudin & Coffin, Rhine Law Firm, and Luckey & Mullins* |
| **ROBERTS AND DURKEE, LLP** <br><br> By:   /s/ *C. David Durkee* <br> C. David Durkee | **MILSTEIN, JACKSON, FAIRCHILD & WADE, LLP** <br><br> By:   /s/ *Mark Milstein* |

durkee@rdlawnet.com
2665 South Bayshore Drive, Suite 300
Coconut Grove, FL 33133
Phone: (305) 442-1700
Fax: (305) 442-2559

Mark Milstein
mmilstein@mjfwlaw.com
10250 Constellation Blvd., 14th Floor
Los Angeles, CA 90067
Phone: (310) 396-9600
Fax: (310) 396-9635

**CERTIFICATE OF SERVICE**

    I hereby certify that the above and foregoing Response In Opposition to Plaintiffs' Lead and Liaison Counsel's Motion for Sanctions Pursuant to Rule 11 Against Jimmy R. Faircloth, Jr., Esq., Val Patrick Exnicios, Esq., Mark Milstein, Esq., and C. David Durkee, Esq. has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 15th day of May, 2017.

                                 /s/ *Jimmy R. Faircloth, Jr.*
                                   OF COUNSEL