## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL NO. 2047** |
| | **SECTION: L** |
| | **JUDGE FALLON** |
| **THIS DOCUMENT RELATES TO:** | |
| **ALL ACTIONS** | |

## MEMORANDUM OF LAW IN SUPPORT OF
## TAISHAN'S MOTION FOR ACCESS TO CLAIMS SUPPORT
## AND FOR EVIDENTIARY HEARING ON REMEDIATION DAMAGES

The remediation damages process outlined in this Court's Findings of Fact & Conclusions of Law Related to the June 9, 2015 Damages Hearing (Rec. Doc. 20741) (the "Class Damages Order") raises fundamental due process and evidentiary issues.[1] Taishan has a constitutional right to defend itself against the Plaintiffs' damages claims. Accordingly, Taishan requests the Court to permit it to access and review the purported evidentiary support for the remediation-damages claims of current owners. Taishan also requests that the Court then hold a hearing to hear Taishan defenses and weigh the evidentiary basis for those claims.

Taishan must be permitted to access and analyze the information relied on by the PSC and BrownGreer for the damages claims, which presumably will consist of thousands of claims involving diverse properties in several states. Taishan currently is vulnerable to an ambush because it has no knowledge of the "claims process" that BrownGreer has established or will

---

[1] By filing this motion, Taishan does not waive its continuing objection to the class damages procedures outlined in the Class Damages Order, or any of the other rulings in the Class Damages Order. Taishan intends to pursue appeal of the Class Damages Order and related orders and files this motion without prejudice.

establish, and Taishan has no access to the information that BrownGreer will consider, whether obtained from the PSC or other sources. Nor does Taishan have any information or documentation of prior payments to Plaintiffs from which to determine the appropriateness and amounts of set-offs. To ensure a fair process and a sufficient evidentiary basis for the assessment of thousands of remediation-damages claims, the Court should shine light into the black box and allow Taishan to access any purported evidentiary basis for Plaintiffs' damages claims.

Fairness also dictates that the Court conduct an evidentiary hearing regarding the remediation-damages claims of current owners. The parties' exchange of information in the Court-ordered mediation process showed that many Plaintiffs cannot meet their burden of showing entitlement to damages by a preponderance of the evidence. BrownGreer, the privately contracted settlement administrator for the PSC and other defendants, is not qualified to make judicial decisions resulting in the assessment of potentially substantial damages awards for many of the Plaintiffs against Taishan, an active litigant. Even after Taishan's default, due process, basic fairness and the rules of evidence require the a fundamental procedure in which Plaintiffs present their cases, Taishan mounts its defenses, and the Court rules based on the preponderance of the evidence. The procedural mechanisms of Rule 23, no matter how novel, do not strip Taishan of its substantive right to defend against the damages claims. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011) (citing Rules Enabling Act and rejecting "novel project" for calculating "class recovery" that would bar defendant from litigating defenses to individual claims).

**RELEVANT BACKGROUND AND INFORMATION**

This Court held a hearing on June 9, 2015, "to determine how much the Defendants and their affiliates owe the class to remediate their homes due to the damages caused by toxic, corrosive Chinese drywall." (Class Damages Order ¶¶ 21.) The key evidence presented at the hearing

related to the *method* of assessing remediation damages for the class.[2] The PSC propounded expert testimony that remediation damages could be determined by formula, applying a variable construction estimate to the square footage of the individual properties within the class. (*See id.* ¶¶ 32-45.) Taishan challenged that flawed methodology, submitting its own experts who opined, respectively, that remediation damages can be assessed reliably only with individualized property inspections, and that the PSC's proposed formula had been improperly extrapolated from an invalid statistical sample of a few houses in Virginia. (*See id.* ¶¶ 46-54.) The Court nonetheless ruled in favor of the PSC's proposed formulaic approach.[3]

But even if the Court's adoption of the PSC's formula starts the remediation damages process, it does not finish it. The PSC's application of their formula to their list of remediation Plaintiffs varied wildly in the months leading up to, and following, the June 9, 2015 damages hearing. (*Compare* Rec. Doc. 18086 (original motion seeking $1.3 billion) *with* Rec. Doc. 18086 (September 8, 2015 letter reducing claim to "approximately $349,374,356" and describing ongoing verification of claims).)

Indeed, the Court has "ORDERED that the PSC, under the supervision of BrownGreer, submit an updated Class Plaintiffs' Spreadsheet endeavoring to include only Taishan properties with verified under air living square footage." (Class Damages Order ¶ 93.) That spreadsheet is due on June 21, 2017 (two months from the entry of the order). (Class Damages Order ¶ 93.) The Court has also ordered that:

> [T]here will have to be a claims process, similar to that utilized in the Knauf settlement, to ensure that properties contained Taishan-manufactured Chinese drywall and to verify the under-air square

---

[2] The PSC announced that their requested ruling from the Court be limited to (1) a finding that the formulaic method used to calculate remediation damages is fair and reasonable, and (2) that the aggregate formulaic remediation damages for claimants proceed to claims processing for claims verification and set-offs. (Rec. Doc. 19490-2.)

[3] Taishan maintains that the formula violates plain Fifth Circuit law in several ways. *See, e.g.*, *Cimino v. Raymark Indus., Inc.*, 151 F.3d 297, 311 (5th Cir. 1998); *In re Chevron U.S.A., Inc.*, 109 F.3d 1016 (5th Cir. 1997).

3

> footage. BrownGreer[4] with be tasked with establishing and implementing this process. Such a process will ensure that damages are accurately allocated to each individual class member.

(*Id.* ¶ 56.)

The Order states that "Taishan will be permitted to review and contest or seek set-offs," but does not explain how that will occur. (*Id.* ¶ 93.)

## LAW AND ARGUMENT

What follows is a citation of authorities underscoring the countervailing due process principles of (1) the PSC's obligation to prove damages by a preponderance of the evidence, and (2) Taishan's right to defend itself in the so-called claims adjudication process, even in a Rule 55 setting. Next, Taishan identifies specific concerns about the current "claims process," highlighting the need for access to the PSC's evidentiary support and information about BrownGreer's mysterious process. Finally, Taishan proposes next steps for the fair adjudication of the Plaintiffs' remediation claims.

### A. Due Process Requires Reasonable Evidentiary Basis and Fair Process.

Two fundamental aspects of due process are at play in the next phase of this civil lawsuit: (1) the Plaintiffs' burden to prove their damages, and (2) Taishan's right to mount a defense. First, as the parties making damages claims, the Plaintiffs have the burden to show the fact and extent of an injury and to show the amount and value of the claimed damages. *Servicios-Expoarma, C.A. v Indus. Mar. Carriers, Inc.*, 135 F.3d 984, 995 (5th Cir. 1998) ("It is a basic concept of damages that they must be proved by the party seeking them.") And the Plaintiffs must prove damages by a preponderance of the evidence. *See Mobil Expl. & Producing U.S., Inc. v. Cajun Const. Servs.,*

---

[4] BrownGreer "has served, and continues to serve, as a settlement administrator for various settlements that have been entered into in these consolidated proceedings, including the Knauf remediation class settlement and the Global, Banner, and INEX ("GBI") Class Settlements." (*Id.* at ¶ 22.)

4

*Inc.*, 45 F.3d 96, 101–02 (5th Cir. 1995). This elemental burden is specifically required under the applicable law of each state governing the claims of the class claimants in this MDL. *Cimino v. Raymark Indus., Inc.*, 151 F.3d 297, 311 (5th Cir. 1998) (holding that "state substantive law includes the burdens of going forward with evidence and of persuasion thereon").

Just as constitutionally fundamental is Taishan's due process right to be given notice and an opportunity to be heard. *See Mathews v. Eldridge*, 424 U.S. 319 (1976).

> Wherever one is assailed in his person or his property, there he may defend . . . . A sentence of a court pronounced against a party without hearing him, or giving him an opportunity to be heard, is not a judicial determination of his rights, and is not entitled to respect in any other tribunal.

*Hovey v. Elliott*, 167 U.S. 409, 414 (1897) (holding that even a party in contempt has a right to defend itself against money judgment). The *Hovey* Court asked rhetorically, "Can it be doubted that due process of law signifies a right to be heard in one's defense?" and then spent pages exhaustively eliminating all doubt as to the soundness of that constitutional principle. *Id.* at 417, passim. This long-standing principle still governs. (*See N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 143 (5th Cir. 1996) ("Under our system of justice, the opportunity to be heard is the most fundamental requirement."); *see also U2 Home Entm't, Inc. v. Fu Shun Wang*, 482 F.Supp.2d 314, 318 (E.D.N.Y.2007) ("Claims for damages must generally be established in an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed.").) Taishan's due process rights are not extinguished because it defaulted on liability. Discretion granted to judges for damages adjudication under Rule 55 is "bounded at its outer limits . . . by constitutional due process concerns." *Frame v. S-H, Inc.*, 967 F.2d 194, 204 (5th Cir. 1992) (*citing Hovey*, 167 U.S. at 417-18).

Although a district court may forego an evidentiary hearing in some default situations,

5

"[f]oregoing an evidentiary hearing may constitute abuse of discretion when the existing record is insufficient to make necessary findings in support of a default judgment." *Stephenson v. El-Batrawi*, 524 F.3d 907, n. 11 (8th Cir. 2008). The Fifth Circuit has held that "[a]s a general proposition, in the context of a default judgment, unliquidated damages normally are not awarded without an evidentiary hearing." *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993) (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)). "A court has an obligation to assure that there is a legitimate basis for any damages award it enters." *Anheuser-Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2008). Indeed, "the court is required to make an independent determination of the sum to be awarded." *Wing v. East River Chinese Rest.*, 884 F.Supp. 663, 669 (E.D.N.Y.1995). Thus, courts have held that "a defaulting party must be permitted to contest the actual compensatory amount claimed with respect to any particular item of damages, including through proof of mitigation of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir.1992).

Additional proceedings are needed to determine the amount of damages for the reasons persuasively set out in *Credit Lyonnais Securities (USA), Inc. v. Alcantara*, 183 F.3d 151 (2nd Cir. 1999). In that case, a defaulting foreign defendant appeared in the case to challenge the entry of default damages at $378,993. *Id.* at 152. The Court of Appeals vacated the judgment because the district court had erred by awarding damages "without conducting an inquest into the proper measure of damages." *Id.* at 154. The appellate court held that the "district court must . . . conduct an inquiry in order to **ascertain the amount of damages with reasonable certainty**." *Id.* at 155 (emphasis added).

The Second Circuit rejected the *Credit Lyonnais* plaintiffs' arguments (mirroring the PSC's here) which contended that "no further inquiry was required because the amount defendants owe

6

is '***readily ascertainable through simple arithmetic***.'" *Id.* (emphasis added).  The appellate court held that determining the appropriate amount of damages involves "***two tasks:*** [1] determining the proper rule for calculating damages on such a claim, and [2] assessing plaintiff's evidence supporting the damages to be determined under this rule." *Id.* (emphasis added).  The court noted that "[d]epending on the state of the record on remand, the latter task may require a hearing." *Id.*  Decisions from Louisiana federal district courts have followed *Credit Lyonnais*.  *See Jackson v. Vogt*, 2009 WL 3756563, at *2 (E.D. La. Nov. 5, 2009) (Vance, J.) (quoting *Credit Lyonnais*' to establish that the district court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty."); *Cooper v. Faith Shipping*, 2009 WL 1789405, at *4 (E.D. La. June 22, 2009) (Vance, J.) (same); *Plumbers & Steamfitters Local 106 Health & Welfare Fund v. Ace Plumbing & Heating, Inc.*, 2011 WL 1831750, at *3 (W.D. La. May 11, 2011) (same).

Here, the Court's obligation to "ascertain the amount of damages with reasonable certainty" likewise involves two tasks: (1) determining the proper rule for calculating remediation damages (on which the Court has heard evidence and endorsed the PSC's formula) ***and*** (2) assessing the PSC's evidence supporting the calculation of damages under that formula (the current BrownGreer process just beginning).  Accordingly, the Court must ensure not just that the formula is appropriate, but also that the ***application*** of that formula to claimants is appropriate and reasonable ***based on supporting evidence***.

**B. To Ensure a Fair Process That Comports With Due Process, This Court Must Allow Taishan To Access Evidence Supporting PSC's Claims and Understand BrownGreer's Basis for Claim Inclusion**

Even after defaulting on liability, a defendant is entitled to defend itself against the imposition of damages.  *See U.S. for Use of M-CO Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011 (5th Cir. 1987) (reversing award of damages with instruction to allow defendant to present

7

defenses at a hearing). "There would be little point in allowing a defendant to contest the amount of damages [under Rule 55(b)] if the defendant is not permitted adequately to prepare for the hearing on damages." *Clague v. Bednarski*, 105 F.R.D. 552, 552 (E.D.N.Y. 1985) (holding that Federal Rules 55, 26 and 8 collectively entitle a defaulted defendant to discovery of the evidentiary basis for contested damages claims). Therefore, in order to "review and contest" the PSC's class remediation damages spreadsheet, Taishan must have the meaningful right to access and review underling proof and information.

### 1. *Evidentiary Basis for Damages Claims*

The mutually reinforcing due process considerations of the PSC's burden to prove its damages and Taishan's right to be heard in defense compel this Court to allow Taishan, at a minimum, to access the evidence reviewed and relied upon by BrownGreer, whether provided to it by the PSC or by other sources. Taishan has no knowledge of or visibility to the "database containing square footage and other information regarding properties that have been the subject of claims in this litigation, including many of the properties that the PSC sought to include in the class," as described by the Court in its Class Damages Order at ¶ 22. This Court held that Taishan may "review and contest" the "revised Class Plaintiffs' Spreadsheet, on which the Court will rely to determine the aggregate total of these remediation damages." (Class Damages Order at p. 50.) Taishan cannot meaningfully review or contest the spreadsheet, however, if it cannot see the underlying evidentiary support for the contents therein.

### 2. *Product ID Determination*

In its delegation to BrownGreer to "supervise" the PSC in preparing an updated Class Plaintiffs' Spreadsheet, the Court tasked BrownGreer with two specific functions: (1) ensuring that "only Taishan properties" are included, and (2) verifying "under air living square footage."

(*Id.* at pp. 49-50.) The assignment of these tasks to BrownGreer raises specific concerns triggering the need for Taishan to obtain further information about BrownGreer's performance of these tasks.

First, due process requires that the Plaintiffs prove by a preponderance of the evidence that those seeking remediation damages from Taishan actually had Taishan drywall in their properties. But the attribution of certain product markings to Taishan is a contested issue that has never been adjudicated by this Court. In assessing the evidence from the June 9, 2015 class damage hearing, the Court opined that BrownGreer is qualified to make product ID decisions:

> With regards to product identification, BrownGreer utilized both a Court-approved photograph catalog and a Court-approved "Drywall Indicia Guide" in order to identify the types of drywall and the manufacturers of drywall associated with the properties on the class list.
>
> * * *
>
> Mr. Woody confirmed that BrownGreer would be able to use its existing systems and protocols to verify Plaintiff Profile Form statements identifying the presence and amount of Taishan drywall for a given property.

(¶¶ 27, 30.) The problem with BrownGreer's potential reliance on the "Court-approved 'Drywall Indicia Guide,'" to make product ID decisions, however, is that that "guide" was a privately negotiated document that was approved by the Court only as to form, and not to substance. The "Drywall Indicia Guide" is an exhibit to the Settlement Agreement between the PSC and another manufacturer defendant, Knauf. (Rec. Doc. 16407-7.) The Drywall Indicia Guide was created by those private parties with no participation by or input from Taishan, who was not a party to the settlement discussions. Those parties had no incentive to protect Taishan's interests; on the contrary, the interests of the PSC and Knauf were adverse to Taishan inasmuch as they both had motivation to attribute to the absent Taishan any drywall markings that were not clearly Knauf markings. The resulting "Drywall Indicia Guide" was incorporated as Exhibit C-1 into the comprehensive private settlement agreement approved as a whole by the Court. (Rec. Doc. 16407).

9

Therefore, the degree to which BrownGreer relies on the PSC-Knauf "Drywall Indicia Guide" is process information that Taishan must understand to be able to defend itself.

Relatedly, the PSC has attributed to Taishan certain drywall markings that are not even attributed to Taishan in the unreliable Drywall Indicia Guide. The existence of the "Court approved photograph catalog" referenced by this Court in the Class Damages Order underscores the need for proper adjudication of this product ID dispute. Under PTO 10, the Court ordered all manufacturer defendants to make formal reports to the Court regarding certain drywall markings posted in the Court's catalog. (Rec. Doc. 171.) Taishan participated in this identification process, specifically admitting, denying or providing qualified responses that certain markings were or were not used by Taishan in its manufacturing process. (Rec. Doc. 8310.) Ignoring this record, the PSC nevertheless concludes that certain markings—*denied by Taishan*—are "Taishan properties." Therefore, the degree to which the PSC "under the supervision of BrownGreer" includes these disputed properties in its revised spreadsheet is information that Taishan must understand, and the appropriateness of which ultimately must be adjudicated by this Court.

3. *Square Footage*

This Court also tasked BrownGreer with "verify[ing] the under-air square footage" for each property. Due process requires that the PSC must prove a basis for the "under-air living square footage" calculation that they assert, and Taishan is entitled to access, review and potentially challenge that proof. To the extent that BrownGreer's verification process relies on square footage information gained from non-PSC sources, Taishan is likewise entitled to access that information.

4. *Set-Offs*

The Class Damages Order states that Taishan will be able to "seek set-offs" to the damages claimed by the PSC in its revised claimant spreadsheet. Taishan currently has no information as

to the amounts already paid to each claimant under the Knauf, Global, Banner, or Inex settlements. It will be impossible for Taishan to "seek set-offs" without receiving proof of amounts already paid.

5. *Ownership*

The damages claims currently at issue belong only to ***current*** property owners. (*See* Class Damages Order ¶ 59; *see also* Rec. Doc. 19490-2.) Therefore, the PSC must present verifiable proof of ownership. Taishan currently has no information as to proof of ownership or any process by which the PSC and/or BrownGreer verify property ownership. This is a threshold proof burden issue that must be fulfilled.

6. *Remediation Documentation*

"Even in the context of a class action, . . . individual damages must still be proved individually." *Cimino*, 151 F.3d at 319 (citations omitted). And, as this Court has noted, each class claim will be governed by the law of the state in which the subject property sits. (*See* Rec. Doc. 2380 at 64.) Where a claimant seeking remediation damages on an estimated basis has evidence of the actual cost of remediating the property, such evidence is relevant under the state laws governing at least *some* of these claims. For example, Louisiana law does not permit the Plaintiffs' repair estimates as proof for those properties that have already been remediated. *See Volkswagen of Am., Inc. v. Robertson*, 713 F.2d. 1151, 1169-71 (5th Cir. 1983) (citing Louisiana law).

**C. Taishan Proposes Process to Complete Remediation Damages Phase**

In order to have a fair adjudication of the application of the approved class damages formula to specific claims submitted by the PSC, Taishan moves the Court to ORDER the following due process:

1. Simultaneous with its production of its updated Class Plaintiffs' Spreadsheet, the PSC shall produce to Taishan all evidence the PSC provided to BrownGreer in support of its Class Plaintiffs' Spreadsheet;

2. BrownGreer shall produce to Taishan all evidence BrownGreer reviewed, referenced or relied upon in the course of its "supervision" of or assistance to the PSC in preparation of the updated Class Plaintiffs' Spreadsheet;

3. The PSC shall produce to Taishan evidence sufficient to prove any and all prior actual payments made to each Class Plaintiff on the updated spreadsheet in connection with this MDL or any other claims or litigation arising from the presence of Chinese Drywall on the property;

4. The PSC shall produce to Taishan evidence sufficient to prove current ownership of the property at issue;

5. The PSC shall produce to Taishan all documentary evidence regarding, reflecting or referencing actual remediation actions taken by or on behalf of each Claimant, to the extent any remediation has been performed.

6. Taishan shall be permitted to conduct an examination, on the record, of BrownGreer's representative most knowledgeable with the "supervision" of or assistance to the PSC in preparation of the updated class Plaintiffs' Spreadsheet for an understanding of the process and basis of BrownGreer's conclusions and recommendations, including but not limited to Product ID determinations, verification of square footage, and evaluation of proof of ownership.

7. The parties shall confer in good faith as to the length of time needed to complete the foregoing review and examination.

Upon the parties' report to this Court of completion of the production, review and examination process, the Court shall set a deadline for Taishan to file its objections to the Plaintiffs' Updated Spreadsheet and assert set-offs to same, and shall set an evidentiary hearing to receive proof and resolve disputes.

## CONCLUSION

For the foregoing reasons, the Court should grant Taishan's Motion for Access to Claims Support and for Evidentiary Hearing for Remediation Damages, and enter the Proposed Order.

Dated: May 19, 2017

Respectfully submitted,

/s/ Michael P. Kenny
Michael P. Kenny, Esq.
Georgia Bar No. 415064
Bernard Taylor, Esq.
Georgia Bar No. 669625
Christina Hull Eikhoff, Esq.
Georgia Bar No. 242539
David Venderbush, Esq.
New York Bar No. 2920817
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
mike.kenny@alston.com
*Counsel for Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd.*

Alan Dean Weinberger
LA Bar No. 13331
HANGARTNER, RYDBERG & TERRELL, LLC
One Shell Square
701 Poydras St., Suite 310
New Orleans, Louisiana  70179
Phone:  (504) 434-6815
Fax: (504) 522-5689
aweinberger@hanrylaw.com

13

*Local Counsel for Taishan Gypsum Co., Ltd. and
Tai'an Taishan Plasterboard Co., Ltd.*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, by U.S. mail and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 19th day of May, 2017.

/s/ Michael P. Kenny
Michael P. Kenny, Esq.
Georgia Bar No. 415064
ALSTON & BIRD LLP
1201 West Peachtree Street NW
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
mike.kenny@alston.com
*Counsel for Taishan*