**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L JUDGE FALLON MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO: *Germano v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.*, Case No. 09-6687 (E.D. La.); *Gross v. Knauf Gips, KG*, Case No. 09-6690 (E.D. La.); *Wiltz v. Beijing New Building Materials Public Limited Co.,* Case No. 10-361 (E.D. La.); *Amorin v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.*, Case No. 11-1672 (E.D. La.); *Amorin v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.*, Case No. 11-1395 (E.D. La.); and *Amorin v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.*, Case No. 11-1673 (E.D. La.). | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**TAISHAN'S MOTION TO AMEND THE ORDER DENYING CLASS**
**DECERTIFICATION AND THE CLASS DAMAGES ORDER AND TO CERTIFY FOR**
**INTERLOCUTORY APPEAL UNDER SECTION 1292(b)**

## I.     INTRODUCTION

In the months leading up to the April 21, 2017 class-related Orders, the Court indicated a willingness to permit the Fifth Circuit to review those Orders immediately. Both Orders raise serious, fundamental Rule 23 issues that, at a minimum, tilt against a long line of Fifth Circuit precedent. In the past, when district courts in this circuit have created unconventional class

processes to address complex mass tort litigations in perceived exigent circumstances, they have permitted interlocutory appeal to test the legality of those processes before going forward. *See, e.g.*, *Castano v. Am. Tobacco Co.*, 152 F.R.D. 112, 117 (E.D. La. 1995) (Jones, J.); *Jenkins v. Raymark Ind. Inc.*, 109 F.R.D. 269, 288 (E.D. Tex. 1985) (Parker, J.). And the Fifth Circuit accepted those appeals. *See Castano v. Am. Tobacco Co.*, 84 F.3d 754 (5th Cir. 1996); *Jenkins v. Raymark Ind. Inc.*, 782 F.2d 468 (5th Cir. 1986).

This Court should do the same here, especially in light of the Court's own description of this case as "sui generis." In the wake of Orders denying class decertification and approving a single class-damages remediation formula for thousands of already-identified property owners in at least 11 states, the Court has set in motion a quasi-class-driven process of setting remediation damages for "current owners" of many different types of properties. Findings of Fact & Conclusions of Law Related to the June 9, 2015 Damages Hearing (Rec. Doc. 20741) ("Class Damages Order") at 30. Although the exact parameters of that process are not yet clear, it will undoubtedly be lengthy and expensive and, candidly, dubious. The parties will attempt to establish product identification from a specific list of property owners and then attempt to determine which owners can participate in a class formula and exactly how much remediation damages the Court may award based on accurate square footage and set-offs. *Id.* at 50. That individualized process will then be followed by "multiple hearings that the Court will hold in order to assess the full amount owed" to individual property owners. *Id.* at 30. At some point, those owners will pursue, on an individualized basis, all of their other types of damages claims. Then, at some other point, the Court will presumably aggregate the list of individual determinations and enter one or more final judgments, after which Taishan will appeal the class certification and the class-damages formula. The Fifth Circuit could very well reverse the Court's novel use of Rule 23 to determine

individual awards. *See Castano v. Am. Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996); *Robertson v. Monsanto Co.*, 287 F. App'x 354 (5th Cir. 2008); *see also In re Chevron U.S.A., Inc.*, 109 F.3d 1016 (5th Cir. 1997). If so, the time and expense of the class remediation-damages process will have been wasted, as the parties return to redo those determinations. The Court should not wait.

Both the Class Damages Order and the Order & Reasons denying class decertification (Rec. No. 20740) ("Class Order") are manifestly ripe for interlocutory appeal under 28 U.S.C. § 1292(b). Both present controlling questions of law as to which there is substantial ground for difference of opinion, and an immediate appeal from those Orders may materially advance the ultimate termination of this litigation. The Class Damages Order presents at least one controlling question:

1.   Whether a trial court may extrapolate results from an earlier trial to a larger group of other cases without a finding of representativeness based on competent, scientific, statistical evidence?

The Order denying class decertification presents at least two controlling questions:

2.   Whether a district court sitting in diversity may maintain a multi-state class without evidence and analysis on state-law differences?

3.   Whether a district court may maintain a class consisting of named plaintiffs for whom liability was previously determined, and the only remaining issue is individual tort damages?

All three questions are controlling and are subject to a substantial difference of opinion based on clear Fifth Circuit law. Neither the PSC nor the Court has cited a decision in the last 20 years— from the Fifth Circuit (or any other circuit)—permitting a litigation class to recover formulaic tort-damages (personal or property injury). Addressing those contestable questions now could lead to earlier termination of the litigation by preventing a do over of remediation damages if the questions are decided after a lengthy and expensive class-type process.

Taishan respectfully urges the Court to modify both Orders to include the necessary language from § 1292(b) to permit an immediate appeal. *See* 28 U.S.C. § 1292(b) (listing required findings and directing that district court "shall so state in writing in [the] order").

## II.   LEGAL STANDARD

The Court may amend its Order denying class certification and its Class Damages Order to certify for interlocutory appeal. *See Halliburton Co. Benefits Comm. v. Graves*, 191 F. App'x 248, 251 (5th Cir. 2006) (noting that party may "move the district court to amend its order to include the 28 U.S.C. § 1292(b) certification language"). In each amended document, the Court should state that, each Order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The Court should also explicitly identify those controlling questions of law.

The Fifth Circuit imposes no strict meaning on those criteria. *Hadjipateras v. Pacifica, S.A.*, 290 F.2d 697, 703 (1961) (adopting "general approach rather than the use of handy modifiers . . . in determining whether the procedure specified [in § 1292(b)] has been substantially satisfied"). Instead, "each application is to be looked at . . . in the light of the underlying purpose reflected in the statute." *Id.*; *accord Katz v. Carte Blanche Corp.*, 496 F.2d 747, 756 (3d Cir. 1974) ("The determination of what orders are properly reviewable under § 1292(b) must be made by a practical application of [its] policies, not by a mechanical application of labels . . ."). "There are four statutory criteria . . . to guide the district court:  there must be a question of law, it must be controlling, it must be contestable, and its resolution must promise to speed up the litigation." *Ahrenholz v. Bd. of Trustees of Univ. of Ill.*, 219 F.3d 674, 677 (7th Cir. 2000).

Orders relating to class certification and class adjudication qualify for interlocutory appeal under Section 1292(b). *See Katz*, 496 F.2d at 756 (agreeing that "appeals certified pursuant to

§ 1292(b) are appropriate for testing whether suitability of class action treatment has been correctly

determined"). The Fifth Circuit has often reviewed class certification orders under § 1292(b). *See,*

*e.g.*, *Castano*, 84 F.3d at 737 ("This matter comes before us on interlocutory appeal, under 28

U.S.C §1292(b), of the class certification order."); *Mullen v. Treasure Chest Casino, LLC*, 186

F.3d 620, 623 (5th Cir. 1999) (affirming class certification after "the district court certified the

issue for interlocutory appeal under 28 U.S.C. § 1292(b)"); *see also Bates v. Bankers Life & Cas.*

*Co.*, 848 F.3d 1236, 1238 (9th Cir. 2017) (noting that § 1292(b) continues to be one of "two

procedural avenues" available for interlocutory appellate review of orders related to class

certification). In *Castano*, the district court certified for interlocutory appeal and the Fifth Circuit

reversed the class certification on one of the precise issues presented now in this motion. *See* 84

F.3d at 740.

## III.   THE CLASS DAMAGES ORDER PRESENTS A CONTROLLING QUESTION OF LAW AS TO WHICH THERE IS SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION

### 1.   Whether the PSC May Extrapolate from Earlier Trial Results to a Much Larger Set of Cases Without Competent, Scientific, Statistical Proof of Representativeness is a Pure Question of Law

Courts have broadly defined a § 1292(b) question of law as "an abstract legal issue" such

as "the meaning of a statutory or constitutional provision, regulation, or common law doctrine"

that dictates the outcome as a matter of law. *Ahrenholz*, 219 F.3d at 676-77. In this context, the

Fifth Circuit can decide as a pure question of law whether competent, scientific, statistical evidence

is always necessary to support an extrapolation of earlier trial results to a much larger set of cases.

In *In re Chevron*, the Fifth Circuit granted mandamus to stop a district court from the

"utilization of the results obtained from the trial of thirty (30) selected cases for any purpose

affecting issues or claims of, or defenses to, the remaining untried cases." 109 F.3d at 1021. The

court did that as pure matter of law, and not based on the facts of the particular claims. The

appellate court found explicitly that "[i]t was impossible to discern from the district court's order what variables may exist that will impact both the property and personal injury claims in this litigation." *Id.* at 1019. The court explicitly refused to "speculate on the homogeneity of the mix of claims." *Id.*

As this Court recited in the Class Damages Order, *In re Chevron* held as a matter of law:

> [B]efore a trial court may utilize results from a bellwether trial for a purpose that extends beyond the individual cases tried, it must, prior to any extrapolation, find that the cases tried are representative of the larger group of cases or claims from which they are selected. Typically, such a finding must be based on competent, scientific, statistical evidence that identifies the variables involved and that provides a sample of sufficient size so as to permit a finding that there is a sufficient level of confidence that the results obtained reflect results that would be obtained from trials of the whole.

Class Damages Order at 45 (quoting *In re Chevron*, 109 F.3d at 1020). *In re Chevron* also held "[w]ithout a sufficient level of confidence in the sample results, ***no inferences may be drawn*** from such results that would form the basis for applying such results to cases or claims that have not been actually tried." 109 F.3d at 1020 (emphasis added).

On interlocutory appeal of the Class Damages Order, the Fifth Circuit can address the applicability of the *In re Chevron* rules as a matter of law because none of the relevant facts are disputed. The Class Damages Order itself recognizes the need to use "a representative statistical sample" in order "to make class-wide determinations." Class Damages Order at 33. The Class Damages Order establishes that the Court proposes to use "a formulaic statistical method for calculating damages," which the Court believes "is appropriate in this case, even though it may not be appropriate under other circumstances." *Id.* The Class Damages Order shows that the "formulaic statistical method" is an extrapolation from the *Germano* trial results because the calculation "begins with a benchmark figure of $86 per square foot [that] was developed in 2010 using data from the *Germano* properties," as presented at the *Germano* trial. Class Damages Order

6

at 24.[1] And the Class Damages Order recites accurately Dr. Marais's and Mr. Inglis's testimony that the alleged formulaic statistical method is not based on any "statistical science." *Id.* at 28-29.

This case presents the question of whether *In re Chevron* always requires "competent, scientific, statistical evidence" 109 F.3d at 1020, or whether what this Court has described as "the unique circumstances surrounding Chinese drywall and the absence of efficient and appropriate alternatives" permits a "formulaic method" based on sample extrapolation simply because it "spares the Taishan Property Owners from the costs and further delay of individual inspections." Class Damages Order at 29. The Fifth Circuit can decide that with undisputed facts as a pure question of law.

### 2. The Legal Question of Whether *In re Chevron* Precludes the Damages Formula Is Controlling

Whether *In re Chevron* requires competent, scientific, statistical evidence in all cases controls whether the Court may apply its formulaic statistical method not based on statistical science. A controlling question of law is "'one that would require reversal if decided incorrectly or that could materially affect the course of litigation with resulting savings of the court's or the parties' resources.'" *APCC Servs., Inc. v. Sprint Commc'ns Co.*, 297 F. Supp. 2d 90, 95-96 (D.D.C. 2003) (citation omitted); *accord Katz*, 496 F.2d at 755 (holding that a "controlling question of law must encompass at the very least every order which, if erroneous, would be reversible error on final appeal"). "Review under § 1292(b) is available where decision on an issue would affect the scope of the evidence in a complex case, even short of requiring complete dismissal." *Garner v. Wolfinbarger*, 430 F.2d 1093, 1097 (5th Cir. 1970).

---

[1] That benchmark figure and the underlying average remediation-cost data became the results of the *Germano* bench trial. *Germano* FOFCOL (Rec. No. 2380) at 57-60.

The Court's class-damages plan may require reversal. When the Fifth Circuit found an absence of statistical evidence and "no pretense that the thirty (30) cases selected are representative of the 3,000 member group of plaintiffs," it reversed on mandamus without considering any evidence of homogeneity or any other attribute of the mix of claims. *In re Chevron*, 109 F.3d at 1019.[2] And when the Fifth Circuit faced a plan to award individual damages based on the awards made in earlier trials, it reversed that plan as "fatally flawed." *Cimino v. Raymark Ind., Inc.*, 151 F.3d 297, 321 (5th Cir. 1998).

### 3. Whether *In re Chevron* Always Requires Competent Statistical Evidence Is Subject to a Substantial Difference of Opinion

A substantial ground for difference of opinion exists when "a court's challenged decision conflicts with decisions of several other courts." *APCC Servs., Inc.*, 297 F. Supp. 2d at 97-98. The Court must consider whether it is a "question about which reasonable jurists can . . . debate." *Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 399 (5th Cir. 2010).

The proposition that the PSC's formulaic method violates *In re Chevron* is presumptively correct. Indeed, this Court found that "[i]n the abstract, this is a compelling argument." Class Damages Order at 45. But the Court distinguished *In re Chevron* on non-legal grounds of "the *sui generis* nature of this Chinese Drywall litigation." *Id.* The Court noted that *In re Chevron* used representative cases to control liability issues, and the PSC's formula uses prior-trial results to control (some) individual damages issues. *Id.* at 46. It is debatable whether that is a legally justifiable distinction, especially because, when the Fifth Circuit later considered the use of extrapolation specifically for individual damages, it categorically rejected that project and

---

[2] The Court's finding that the *Germano* Intervenors' Cases "are representative of a cross-section of contaminated homes," FOFCOL at 6 (quoting *Germano* FOFCOL at 62), cannot be scientifically applied to the larger set of current property owners because that set was not determined in 2010 and still is not determined. In any event, no competent, scientific, statistical evidence supported that 2010 finding.

questioned *In re Chevron*'s suggestion (in *dicta*) that representative trials would ever be permissible, even if based on valid statistics. *See Cimino*, 151 F.3d at 318-19.

It is also debatable whether the Fifth Circuit would accept this Court's distinguishing *In re Chevron* based on the number of "variables" in the plaintiff set. Class Damages Order at 46. As discussed above, *In re Chevron* explicitly refused to "speculate on the homogeneity of the mix of claims," and it rejected the proposed trial plan purely as a matter of statistical science and evidentiary reliability. 109 F.3d at 1019.[3] The Court should permit the Fifth Circuit to address the critical *In re Chevron* statistical question sooner, rather than later because, as discussed below after the other controlling questions, it may advance the ultimate resolution of this litigation.

## IV.  THE ORDER DENYING CLASS DECERTIFICATION PRESENTS TWO CONTROLLING QUESTIONS OF LAW AS TO WHICH THERE IS SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION

### A.  The Court Should Certify The Legal Question Of Whether A District Court Sitting In Diversity May Maintain A Multi-State Class Without Evidence And Analysis On State-Law Differences

The Court should amend its Order denying class decertification to permit the Fifth Circuit to assess whether a district court may maintain a class without receiving evidence from class plaintiffs on state-law variations and without the district court critically analyzing those differences as they relate to predominance and superiority under Rule 23. *See Castano*, 84 F.3d at 740. That is a controlling question of law as to which there is substantial ground for difference of opinion.

#### 1.  Consideration of State-Law Variations Presents Pure Questions of Law

Whether a court may certify a class without receiving and analyzing actual evidence on state-law differences is a pure question of law. The Fifth Circuit has held as a matter of law that

---

[3] On the other side of the Court's attempted distinction, the Fifth Circuit might notice the FOFCOL's lack of record citations to support the claim of "[t]he limited diversity among properties in the instant matter." FOFCOL at 47.

putative class plaintiffs "must . . . 'provide an "extensive analysis" of state law variations to reveal whether these pose "insuperable obstacles."'" *Cole v. General Motors Corp.*, 484 F.3d 717, 724 (5th Cir. 2007) (quoting *Spence v. Glock, GmbH*, 227 F.3d 308, 313 (5th Cir. 2000)). The Fifth Circuit has also held that "the district court must then 'consider how those variations affect predominance." *Id.* (quoting *Castano*, 84 F.3d at 740 (holding that trial court "erred" when "it failed to consider how variations in state law affect predominance and superiority")).[4] Those strict requirements are particularly important in light of the Fifth Circuit rule that "use of Rule 23(b)(3) does not alter the required elements which must be found to . . . fix damages (or the burden of proof thereon) or the identity of the substantive [state] law . . . which determines such elements." *Cimino*, 151 F.3d at 312 (applying Texas tort law).

The Fifth Circuit will not need review any disputed facts to assess whether state law issues were properly proved and considered for class certification. First, the appellate court can determine from the face of the class-decertification pleadings that the PSC did not meet their evidentiary burden because they provided this Court with no analysis of state-law variations. *See Castano*, 84 F.3d at 743 (highlighting that materials "provided by the plaintiffs failed to discuss, in any meaningful way, how the court could deal with variations in state law"). The Fifth Circuit can also look to this Court's Order on decertification describing how the PSC actually tried to avoid or minimize choice-of-law problems altogether by arguing simply that all states allow remediation damages and that choice of law was merely a "manageability issue." Class Order at 11. Those arguments present only questions of law and, as discussed below, are wrong as a matter of plain Fifth Circuit law.

---

[4] Other circuits' law is similarly stringent. *See Webb v. Exxon Mobil Corporation*, --- F.3d ---, 2017 WL 1946958, at *4 (8th Cir. May 11, 2017) (holding that "[w]hen claims in a class action arise under state law—and the class comprises multiple states—the court must consider whether different state laws will apply to different members of the class" (quoting *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 140 (2d Cir. 2015))).

Second, the Fifth Circuit can assess from the face of the class-related orders whether this Court sufficiently analyzed state-law differences before certifying and maintaining a class. *See Castano*, 84 F.3d at 743 ("Nothing in the record demonstrates that the court critically analyzed how variations in state law would affect predominance."). For example, the Fifth Circuit will see that the Order denying decertification does not contain an analysis of the effect of state-law differences.[5] The appellate court will also see the Court's description of the 2014 class certification Findings of Fact and Conclusions of Law as finding predominance only "[b]ecause Plaintiffs could 'establish a formulaic method to determine class wide property damages.'" Class Order at 7 (quoting Class Cert. FOCOL (Rec. No. 18028) at 33). The Fifth Circuit will also see that this Court's initial superiority analysis did not examine legal differences, but only "factual" ones. *See* Class Order at 7 (describing 2014 class certification FOFCOL as having "determined that class proceedings were a superior method to adjudicate the remaining damage assessments in the case, as any factual determinations that still had to be made were substantially narrower in scope than the factual issues the Court had already resolved in the course of this litigation"). And if the Fifth Circuit looks at the face of the 2014 class certification FOFCOL, it will see that the term "state law" appears nowhere in that document.

## 2.     The State-Law-Variation Issue Is Controlling

The dual requirement for plaintiffs and district courts to address state-law variations controls the class-certification question because its violation is reversible error. *See Katz*, 496 F.2d

---

[5] Although the Order denying decertification did acknowledge the parties' dispute on the state-law issue in section IV describing the "Present Motions" (Class Order at 9-11), the Order did not critically analyze or otherwise resolve the parties' state-law dispute in the Order's substantive reasoning in Section V.

In the class damages FOFCOL, the Court mentioned state law in a footnote, attempting to distinguish *Cimino v. Raymark Ind., Inc.*, 151 F.3d 297 (5th Cir. 1998), based on the presence, *vel non*, of causation issues. FOFCOL at 37 n.5. But *Cimino* explicitly addressed "the matter of actual damages" as a state law issue separate from causation. *Id.* at 319-20. In any event, the Fifth Circuit can decide *Cimino*'s applicability here as a pure question of law.

at 755. The Fifth Circuit has repeatedly reversed class certification because of the failure to receive evidence on and then analyze the effect of state-law differences on Rule 23 predominance and superiority. *See Cole*, 484 F.3d at 730; *Spence*, 227 F.3d at 316; *Castano*, 84 F.3d at 742-43. For example, *Spence* held that putative class plaintiffs failed to meet their burden of proving predominance "[b]y not providing the district court with a sufficient basis for a proper choice of law analysis," and that "[t]herefore the district court abused its discretion in certifying the class." 227 F.3d at 316. And *Castano* held that "[t]he district court abused its discretion by ignoring variations in state law." 84 F.3d at 752. If the Fifth Circuit finds similar legal errors here, it will likely reverse the class certification based on that controlling question of law.

### 3. The State-Law-Variations Questions are Subject to Substantial Difference of Opinion

The Court's continued maintenance of the class despite the lack of evidence on and consideration of state-law differences is more than contestable under plain Fifth Circuit law. As cited above, *Cole* and *Spence* require class plaintiffs to provide evidence on state-law variations. And *Cole*, *Spence*, and *Castano* require district courts to critically analyze state-law variations before certifying a multi-state class. There is a substantial difference of opinion about reversing the denial of class decertification.

The requirement that the party seeking class certification extensively analyze state-law variations is explicitly part of that party's overarching Rule 23 "burden of demonstrating that common questions of law predominate." *Spence*, 227 F.3d at 316. And the requirement that the district court critically analyze state-law variations is explicitly part of a court's overarching "duty to determine whether the plaintiff has borne its burden on class certification." *Castano* 84 F.3d at 741. "Failure to engage in an analysis of state law variations is grounds for decertification" because the lack of evidence on state-law variations means that any "conclusion of predominance

[is] based on speculation." *Cole*, 484 F.3d at 724 (citing *Castano*, 84 F.3d at 741-44). Thus, as a matter of law, a district court is "require[d]" to "consider variations in state law when a class action involves multiple jurisdictions." *Castano*, 84 F.3d at 741.

The class action in the drywall litigation involves multiple jurisdictions. Class Order at 2 (noting that drywall litigation involves "homes and other buildings in a number of states"). The Court has already held that the substantive law of the state containing each property controls the claims related to that property. (*Germano* FOFCOL (Rec. No. 2380) at 64 (ruling that "[t]he applicable law is the law of Virginia as the facts indicate that the real property of the Plaintiff-intervenors is situation in Virginia . . ."). Thus, there is a substantial basis for the opinion that the PSC failed in their burden to present evidence on state-law variations and the Court failed in its duty ensure that the PSC met their predominance and superiority burdens.

No basis exists for the PSC to negate or minimize the substantial for a difference of opinion on class certification here. The PSC's state-law-analysis burden and the Court's state-law-analysis duty do not depend on the existence of actual state-law differences but arise "when a class action involves multiple jurisdictions," as this one does. *Castano*, 84 F.3d at 741. In any event, the defendants demonstrated significant differences in damages law among the various states. *See* Taishan's Motion to Decertify Class [Rec. No. 18879-1] at 9-10; CNBM Motion to Decertify Class [Rec. No. 20624-3] at 22-23. Those demonstrated "differences in state law" make the "requirement that a court know which law will apply before making a predominance determination . . . especially important." *Castano*, 84 F.3d at 741. Nor do the state-law-analysis requirements depend at all on the specific product involved in the litigation—here, Chinese drywall. *Castano* (tobacco), *Spence* (guns) and *Cole* (automobiles) all involve very different products, yet all applied the same state-law-analysis requirements, which arise as a matter of law out of Rule 23.

The PSC's arguments recited by the Court do not affect the substantiality of the difference of opinion on this topic. The PSC cannot avoid material and consequential state-law differences by retreating to the highest level of generality that "the law of each state involved in the class allows recovery for remediation damages for toxic contamination of the home." Class Order at 11. The Fifth Circuit rejects unsupported attempts by class plaintiffs to claim that "the applicable laws" of multiple jurisdictions are "virtually the same." *Cole*, 484 F.3d at 725; *see also Castano*, 84 F.3d at 744 (rejecting attempt to substitute "a generalized reference" for "case-specific analysis"). Moreover, any such assertion of legal sameness is meaningless without actual evidence about the applicable state laws. In this precise context, the Fifth Circuit held that "[g]iven the plaintiffs' burden, a court cannot rely on assurances of counsel that any problems with predominance or superiority can be overcome." *Castano*, 84 F.3d at 742.

*Castano* also rejects the PSC's argument that choice-of-law considerations were not important to class certification because they were merely "a 'manageability issue.'" Class Order at 11 (quoting *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017). In the Fifth Circuit, "variations in state law affect [both] predominance and superiority." *Castano*, 84 F.3d at 740; *accord Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997) (holding that "[d]ifferences in state law . . . compound these disparities [under Rule 23(b)(3)]."). And state-law manageability issues do lead to decertification in this circuit; *Castano* reversed the class certification, in part, specifically because "[t]he court also failed to perform its duty to determine whether the class action would be manageable in light of state law variations." 84 F.3d at 743. Plain Fifth Circuit law shows that the failure to consider state-law variations related to a multi-state class is a controlling question of law as to which there is a substantial difference of opinion.

**B.      The Court Should Certify The Legal Question Of Whether A District Court May Maintain A Class That Consists Entirely Of Named Plaintiffs For Which Liability Was Determined Prior To Class Certification And The Only Remaining Issue Is Individual Tort Damages**

Another controlling question of law as to which there is substantial ground for difference of opinion is whether a district court may certify a tort-damages-only class consisting of only named class members. *See Robertson*, 287 F. App'x 354, 363 (5th Cir. 2008). The Court should grant interlocutory appeal to permit the Fifth Circuit to assess that additional question.

**1.      The Propriety of Certifying A Damages-Only Class With Only Named Class Members Presents A Pure Question of Law**

In this context, the Fifth Circuit can decide as a pure question of law whether a court may certify a tort-damages-only class consisting of only named class members. In *Robertson*, the Fifth Circuit reversed a class certification because it had "no doubt that the superiority requirement has not been, and cannot be, satisfied" when liability had already been established before class certification and "each and every class member is already a named plaintiff." 287 F. App'x at 363. Although the appellate court made that ruling based on "the specific facts and unique procedural history" of that case, the same relevant specific facts and procedural history exist here. This Court ruled that Taishan's liability has "already been established by default." Class Order at 19. And the definition of the certified class states that the class consists of "[a]ll owners of real properties in the United States, who are named Plaintiffs" in the various MDL class complaints. *Id.* at 7.

**2.      The Impropriety of Certifying A Damages-Only Class With Only Named Class Members Is Controlling**

Whether *Robertson* requires decertification here by definition controls the class certification issue. When the Fifth Circuit held that superiority had not been "and cannot be, satisfied," it reversed and remanded "for entry of an order denying certification" of the damages-

only class. *Robertson*, 287 F. App'x at 363. The failure to establish superiority as a matter of law was also a basis for reversing certification in *Castano*. *See* 84 F.3d at

### 3.    The Propriety of Certifying A Damages-Only Class With Only Named Class Members Is Subject to a Substantial Difference of Opinion

Whether this damages-only class with only named class members satisfies Rule 23's superiority requirement is a debatable issue on which jurists could have different opinions. *Robertson* suggests that the "superiority requirement . . . cannot be satisfied" in this setting. 287 F. App'x at 363. The Order denying class certification did not address *Robertson*. The Court did address *Robertson* in the Class Damages Order, attempting to distinguish it based on the presence of causation issues. Class Damages Order at 38-39. But the Court did not address that *Robertson* considered—completely "apart" from other issues—"the fact that all of the class members are, by definition, already named plaintiffs in the Robertson consolidated action." 287 F. App'x at 363.

Whether the Rule 23(b)(3) class mechanism for remediation damages is superior to individual adjudication is subject to a substantial difference of opinion, especially because the Court's plan does not appear have any attributes of "adjudication by representation." *Crutchfield v. Sewerage and Water Bd. of New Orleans*, 829 F.3d 370, 376 (5th Cir. 2016) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). No named class representative's case controls any other class member's case; each named current owner's remediation-damages claim gets resolved individually using a novel formula. And no new class notice will be sent, Class Damages Order at 31-32—one of the superiority considerations identified in *Robertson*, 287 F. App'x at 363.

The Fifth Circuit can also consider the substantial difference of opinion on this Court's sole reason for finding class-action superiority: avoiding the time and expense of individual-damages adjudication. *See, e.g., Eubank v. Pella Corp.*, 753 F.3d 718, 727 (7th Cir. 2014) (rejecting argument that "the alternative of litigating the class action to judgment would be

infeasible because the court would go crazy trying to determine the damages of each of several, maybe many, thousand class members"); *see also In re Asbestos Litig.*, 90 F.3d 963, 999 (5th Cir. 1996) (Smith, J., dissenting) ("The majority eviscerates well-established due process protections because of the 'unique facts' of the case . . .") (majority opinion vacated by *Ortiz v. Fibreboard Corp.*, 521 U.S. 1114 (1997).

## V.   IMMEDIATE APPEAL FROM THE CLASS-RELATED ORDERS MAY MATERIALLY ADVANCE THE ULTIMATE TERMINATION OF THE LITIGATION

Certifying the Order denying decertification may materially advance the ultimate termination of this litigation because it could prevent the Court and the parties from engaging in a lengthy class-claims adjudication process that is on shaky ground, seeing that class and the formula overturned on appeal, and then having to go back and redo the remediation damages. Courts in this circuit have permitted § 1292(b) appeal of tort-class certification orders precisely to avoid the potentially wasted time and expense of class adjudication procedures. *See, e.g.*, *Jenkins*, 109 F.R.D. at 288 (granting § 1292(b) appeal of class certification order to conserve "the expense and time that will be required to ultimately resolve the trial of the class action and the subsequent mini-trials"); *Castano*, 162 F.R.D. at 117 (citing "thousands . . . of claimants in this matter and a substantial number of issues, which . . . cannot be resolved without significant time, energy and expense on the part of the Court and the parties").[6] Fifth Circuit review "may materially advance the termination of the litigation by approving or disapproving of this Court's certification of the class and the proposed scheme of a class action . . . phase on state of the art and punitive damages issues and mini-trial phase on individual exposure and actual damages." *Jenkins*, 109 F.R.D.

---

[6] Judge Jones highlighted the substantial effort to resolve the "conflicts of law issue" as a reason for interlocutory appeal. *Castano*, 162 F.R.D. at 117 n.5. The Fifth Circuit later reversed class certification on that precise issue.

at 288. The parties and the Court will expend serious time and resources making the class determinations. *See Mayo v. Hartford Life Ins. Co.*, 214 F.R.D. 458, 462 (S.D. Tex. 2002). Thus, interlocutory appeal will serve "the purpose of Section 1292(b) to speed litigation and conserve judicial resources." *In re HealthCare Compare Corp. Sec. Litig.*, 75 F.3d 276, 280 (7th Cir. 1996). The proposed interlocutory appeal will materially advance this litigation because it will "conserve judicial resources and spare the parties from possibly needless expense if it should turn out that this Court's rulings are reversed." *APCC Servs., Inc.*, 297 F. Supp. 2d at 100.

Immediate appeal of the disputed class will conserve judicial and party resources and is consistent with the Court's desire to expedite claims adjudication. The damages claims in this litigation must undergo some form of claims adjudication process. The critical issue is whether that can be a formulaic class process. The class-related issues will also be appealed at some point. The critical question is whether that happens sooner (and potentially saves resources) or later (and potentially wastes resources). As other courts have done in mass-tort cases with novel adjudication plans, this Court should permit interlocutory appeal.

## VI.   CONCLUSION

The Court has cited a Seventh Circuit decision for the admonition that "district courts are encouraged to 'devise imaginative solutions to problems created by the presence in a class action of individual damages issues.'" Class Damages Order at 47 (quoting *Pella Corp. v. Saltzman*, 606 F.3d 391, 396 (7th Cir. 2010)).[7] But even in that case, "[t]he district court explicitly declined to

---

[7] The *Pella* certification actually "split" the claimants into two subclasses: those who had remediated the alleged defect and those who had not. 606 F.3d at 395 ("Those who have replaced their windows are properly members of the (b)(3) class because they require the award of damages to make them whole.").

certify issues related to . . . damages," and "[u]nder the district court's plan, class members still [had to] prove individual issues of . . . damages." *Pella Corp.*, 606 F.3d at 393, 394.[8]

Imaginative class solutions have not fared well in the Fifth Circuit. *See, e.g., In re Fibreboard Corp.*, 893 F.2d 706, 712 (5th Cir. 1990) (vacating district court's "imaginative and innovative efforts to confront these cases"); *Cimino*, 151 F.3d at 335 (Garza, J., concurring) (discussing reversal of district court's "ingenious but, unfortunately, legally deficient trial plan"). In maintaining the class and accepting the class-remediation damages formula, the Court has taken pains to distinguish those and many other Fifth Circuit precedents based on what the Court believes are the unique and exigent circumstances of this case. Perhaps the Court is right. But the Fifth Circuit can decide that now as a matter of law before we head too far down an arguably wrong road.

Taishan respectfully requests that the Court amend its Order denying class decertification and its Class Damages Order to certify for interlocutory appeal under 28 U.S.C. § 1292(b).

---

[8] That certification eventually led to certification of an undifferentiated settlement class that the same panel reversed as "inequitable—even scandalous." *Eubank v. Pella Corp.*, 753 F.3d 718, 721 (7th Cir. 2014) (Posner, J.) (noting that class action procedure "is frequently abused").

Dated:  May 22, 2017

Respectfully submitted,


/s/ Michael P. Kenny
Michael P. Kenny, Esq.
Georgia Bar No. 415064
Bernard Taylor, Esq.
Georgia Bar No. 669625
Christina Hull Eikhoff, Esq.
Georgia Bar No. 242539
David Venderbush, Esq.
New York Bar No. 2920817
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
mike.kenny@alston.com
*Counsel for Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd.*

Alan Dean Weinberger
LA Bar No. 13331
HANGARTNER, RYDBERG & TERRELL, LLC
One Shell Square
701 Poydras St., Suite 310
New Orleans, Louisiana  70179
Phone:  (504) 434-6815
Fax: (504) 522-5689
aweinberger@hanrylaw.com
*Local Counsel for Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd.*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, by U.S. mail and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 22nd day of May, 2017.

/s/ Michael P. Kenny
Michael P. Kenny, Esq.
Georgia Bar No. 415064
ALSTON & BIRD LLP
1201 West Peachtree Street NW
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
mike.kenny@alston.com
*Counsel for Taishan*