UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION<br><br>**THIS DOCUMENT RELATES TO:**<br>**ALL CASES**[1] | MDL No. 2:09-md-2047<br><br>SECTION L<br><br>JUDGE ELDON E. FALLON<br><br>MAGISTRATE JUDGE<br>JOSEPH C. WILKINSON, JR. |

## CNBM AND BNBM ENTITIES' MEMORANDUM IN SUPPORT OF THEIR MOTION TO CERTIFY AN IMMEDIATE APPEAL FROM THE COURT'S JURISDICTIONAL ORDER (§ 1292(b) MOTION #1)

---

[1] The CNBM and BNBM Entities moved to dismiss all cases in which they were named defendants at the time their motions to dismiss were filed.

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...............................................................................................ii

INTRODUCTION .......................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND................................................... 3

ARGUMENT .................................................................................................................. 4

I.     THE COURT'S JURISDICTIONAL RULINGS PRESENT CONTROLLING
      QUESTIONS OF LAW ........................................................................................ 4

II.    THERE ARE SUBSTANTIAL GROUNDS FOR DIFFERENCES OF OPINION
     CONCERNING THE COURT'S JURISDICTIONAL RULING ................................... 5

        A.     There Are, At A Minimum, Substantial Grounds For Difference Of
              Opinion About When To Apply Forum State Law Concerning Imputed
              Contacts.................................................................................................. 6

        B.     There Are, At A Minimum, Substantial Grounds For Difference Of
              Opinion About Whether The Court's Interpretation Of State-Law
              Imputation Theories Contravenes The Due Process Clause And Principles
              Of Corporate Separateness................................................................. 10

III.   AN IMMEDIATE APPEAL OF THE JURISDICTIONAL ORDER WOULD
      MATERIALLY ADVANCE THE LITIGATION ......................................................... 17

CONCLUSION............................................................................................................. 18

CERTIFICATE OF SERVICE ................................................................................... 20

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                  **Page(s)**

*Adami v. Cardo Windows, Inc.*,
No. 12-cv-2804, 2013 WL 3821466 (D.N.J. July 23, 2013) ...................................................7

*Adidas Am., Inc. v. Herbalife Int'l, Inc.*,
No. 09-cv-661, 2011 WL 3359987 (D. Or. Aug. 1, 2011) ......................................................7

*Adm'rs of Tulane Educ. Fund v. Ipsen, S.A.*,
450 F. App'x 326 (5th Cir. 2011) ........................................................................................14

*Al Rushaid v. Nat'l Oilwell Varco, Inc.*,
757 F.3d 416 (5th Cir. 2014) ...............................................................................................11

*Alpha/Omega Ins. Servs., Inc. v. Prudential Ins. Co. of Am.*,
272 F.3d 276 (5th Cir. 2001) .................................................................................................9

*Alpine View Co. v. Atlas Copco AB*,
205 F.3d 208 (5th Cir. 2000) .........................................................................................11, 13

*Bearry v. Beech Aircraft Corp.*,
818 F.2d 370 (5th Cir. 1987) .................................................................................................4

*Bona Fide Demolition & Recovery, LLC v. Crosby Const. Co. of La., Inc.*,
690 F. Supp. 2d 435 (E.D. La. 2010) ...............................................................................12, 13

*Brownsberger v. Gexa Energy, LP*,
No. 10-cv-81021, 2011 WL 197464 (S.D. Fla. Jan. 20, 2011)..............................................16

*Cannon Mfg. Co. v. Cudahy Packing Co.*,
267 U.S. 333 (1925).............................................................................................................11

*In re Cent. Louisiana Grain Co-op., Inc.*,
489 B.R. 403 (W.D. La. 2013)..............................................................................................14

*In re Chinese Manufactured Drywall Prods. Liab. Litig.*,
No. 09-md-2047, 2012 WL 4928869 (E.D. La. Oct. 16, 2012).....................................4, 7, 18

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
742 F.3d 576 (5th Cir. 2014) .............................................................................................2, 7

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
753 F.3d 521 (5th Cir. 2014) .......................................................................9, 13, 15, 16, 17

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
No. 09-md-2047, 2011 WL 2443693 (E.D. La. June 14, 2011) .........................................5, 14

*Clark-Dietz & Assocs.-Eng'rs, Inc. v. Basic Constr. Co.*,
  702 F.2d 67 (5th Cir. 1983) ...................................................................................5

*Couch v. Telescope Inc.*,
  611 F.3d 629 (9th Cir. 2010) .................................................................................3

*Daimler AG v. Bauman*,
  134 S. Ct. 746 (2014).................................................................................14, 15

*Devries v. Bulldog Well Testing LLC*,
  No. 16-cv-00338, 2017 WL 1134318 (S.D. Tex. Mar. 27, 2017) .........................12

*Dickson Marine Inc. v. Panalpina, Inc.*,
  179 F.3d 331 (5th Cir. 1999) ..........................................................10, 11, 13, 16

*Donatelli v. NHL*,
  893 F.2d 459 (1st Cir. 1990)................................................................................11

*Energy Coal S.p.A. v. CITGO Petroleum Corp.*,
  836 F.3d 457 (5th Cir. 2016) .............................................................2, 6, 12, 13

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*,
  462 U.S. 611 (1983).............................................................................................16

*Freudensprung v. Offshore Tech. Servs., Inc.*,
  379 F.3d 327 (5th Cir. 2004) .........................................................................10, 16

*Gardemal v. Westin Hotel Co.*,
  186 F.3d 588 (5th Cir. 1999) ...............................................................................13

*Garner v. Wolfinbarger*,
  430 F.2d 1093 (5th Cir. 1970) ..............................................................................4

*Green v. Champion Ins. Co.*,
  577 So. 2d 249 (La. Ct. App. 1991).................................................................8, 13

*Hargrave v. Fibreboard Corp.*,
  710 F.2d 1154 (5th Cir. 1983) ................................................................10, 11, 14

*Int'l Bancorp, L.L.C. v. Societe Des Bains De Mer Et Du Cercle Des Etrangers A
  Monaco*,
  192 F. Supp. 2d 467 (E.D. Va. 2002) ...................................................................8

*Jackson v. Tanfoglio Giuseppe, S.r.l.*,
  615 F.3d 579 (5th Cir. 2010) .........................................................................6, 9, 13

*Johnston v. Multidata Sys. Int'l Corp.*,
  523 F.3d 602 (5th Cir. 2008) ................................................................................4

*Johnston v. Multidata Sys. Int'l Corp.*,
No. 06-cv-0313, 2007 WL 3998804 (S.D. Tex. Nov. 14, 2007) ............................................18

*Keeton v. Hustler Magazine, Inc.*,
465 U.S. 770 (1984)...............................................................................................................10, 11

*In re Mastercard Int'l, Inc. Internet Gambling Litig.*,
No. 00-cv-0661, 2004 WL 287344 (E.D. La. Feb. 12, 2004)...................................................6

*Nuovo Pignone, SpA v. STORMAN ASIA M/V*,
310 F.3d 374 (5th Cir. 2002) ...................................................................................................4

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985).................................................................................................................7

*Prototype Prods., Inc. v. Reset, Inc.*,
844 F. Supp. 2d 691 (E.D. Va. 2012) .....................................................................................15

*Reese v. BP Expl. (Alaska) Inc.*,
643 F.3d 681 (9th Cir. 2011) ...................................................................................................5

*Rico v. Flores*,
481 F.3d 234 (5th Cir. 2007) ...................................................................................................4

*Riggins v. Dixie Shoring Co.*,
590 So. 2d 1164 (La. 1991) ..................................................................................................8, 14

*S.E.C. v. Credit Bancorp, Ltd.*,
103 F. Supp. 2d 223 (S.D.N.Y. 2000).....................................................................................17

*State v. Am. Tobacco Co.*,
707 So. 2d 851 (Fla. Dist. Ct. App. 1998) .............................................................................16

*Thomas v. Tex. Dep't of Criminal Justice*,
297 F.3d 361 (5th Cir. 2002) ...................................................................................................9

*Ex parte Tokio Marine & Fire Ins. Co.*,
322 F.2d 113 (5th Cir. 1963) ................................................................................................2, 18

*United States v. Bestfoods*,
524 U.S. 51 (1998)...............................................................................................................11, 12

*United States v. Louisiana Generating LLC*,
No. 09-cv-100, 2012 WL 4588437 (M.D. La. Oct. 2, 2012)...................................................4

*In re Vioxx Prods. Liab. Litig.*,
478 F. Supp. 2d 897 (E.D. La. 2007) ......................................................................................6

*Walden v. Fiore*,
    134 S. Ct. 1115 (2014) ................................................................................................10

*WH Smith, PLC v. Benages & Assocs., Inc.*,
    51 So. 3d 577 (Fla. Dist. Ct. App. 2010) .....................................................................8

*Williams v. Yamaha Motor Co.*,
    851 F.3d 1015 (9th Cir. 2017) ...............................................................................15, 16

**Statutes**

28 U.S.C. § 1292(b) ...........................................................................1, 3, 4, 5, 14, 18

Fla. Stat. Ann. § 48.193(1)(a) ...........................................................................15

Va. Code Ann. § 8.01-328.1 ...............................................................................15

**Other Authorities**

2A C.J.S. Agency § 43 ........................................................................................15

15A C.J.S. Conflict of Laws § 31 .......................................................................7

16 Wright & Miller, Fed. Prac. & Proc. Juris. § 3930 (3d ed.)....................5, 6

Defendants CNBM Company, BNBM Group, and BNBM PLC respectfully move the Court to certify its April 21, 2017 Rule 12 Order & Reasons for appeal pursuant to 28 U.S.C. § 1292(b).

## INTRODUCTION

This Court's ruling on the motions to dismiss is just the sort of order that calls out for an immediate appeal under § 1292(b). It involves hotly contested issues of jurisdiction that were sufficiently difficult to require numerous months' deliberation by the Court, ultimately resulting in a 100-page ruling. These threshold issues are potentially dispositive for multiple defendants. Accordingly, these questions should be resolved immediately by the court of appeals—preferably under the orderly process of § 1292(b) rather than through some other appellate mechanism—so that the parties and the Court do not undertake a lengthy and costly process of individual trials that will only be undone by an appeal on these issues at the end of the case.

In particular, this Order satisfies each of the key requirements for certification under § 1292(b).

*First*, the Order presents controlling questions of law. A determination that the Court lacks personal jurisdiction would terminate the litigation as to those defendants. And the questions raised here are purely legal. For instance, whether the law of the forum states may take precedence over the law of the state of incorporation—even though they yield different results—is a question of law. So too is the question of whether an unusually broad formulation of state-law imputation doctrines—such as single business enterprise (SBE) and agency theory—contravene the Due Process Clause and fundamental principles of corporate separateness.

1

*Second*, there is more than an ample basis for a difference of opinion concerning these questions.  Under the Court's ruling, it is Chinese law that governs, but state-law principles were applied to arrive at contradictory outcomes.  It is, at a minimum, arguable that the Fifth Circuit would disagree, and instead would conclude—as it has held previously—that a court cannot disregard the governing substantive law unless the outcome would be the *same* under the law of the alternate jurisdiction.  *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576, 586 (5th Cir. 2014).

Similarly, there is plenty of basis for disagreement about the underlying imputation doctrines that the Court applied to assert jurisdiction.  Take, for instance, the most extreme of these doctrines, Louisiana's "single business enterprise" doctrine.  The Fifth Circuit already has held that there is substantial basis for disagreement about this doctrine.  Just a few months ago, that court recognized that "a hodgepodge of views about the [SBE] doctrine" have developed "in lower Louisiana courts."  *Energy Coal S.p.A. v. CITGO Petroleum Corp.*, 836 F.3d 457, 461 (5th Cir. 2016).

*Third*, resolving the jurisdictional issues would materially advance the litigation.  It would do so in the most concrete way—by leading to the dismissal of some, if not all, of the Moving Defendants.  Thus, "to require [them] to go through a trial before a court lacking jurisdiction would be both expensive and senseless."  *Ex parte Tokio Marine & Fire Ins. Co.*, 322 F.2d 113, 115 (5th Cir. 1963).  However, to avoid any delay, the Moving Defendants are pursuing their request for certification without seeking a stay of the litigation.  This approach means that Plaintiffs will not have interim proceedings delayed, and the Moving Defendants need not wait until final judgment to determine whether they are subject to the Court's jurisdiction.

As a result, the CNBM and BNBM Entities respectfully request that this Court amend its April 21, 2017 Order & Reasons to certify it for immediate appeal pursuant to 28 U.S.C. § 1292(b) by expressly stating that all three requirements of § 1292(b) are satisfied.  *See, e.g.*, *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010).

## FACTUAL AND PROCEDURAL BACKGROUND

In its April 21, 2017 Order, the Court held that Moving Defendants CNBM Co. (CNBM), BNBM Group, and BNBM PLC (BNBM) are subject to personal jurisdiction in the cases that comprise this multi-district litigation.  Rec. Doc. 20739 at 98-100.  Plaintiffs' theory is that all three entities are vicariously subject to jurisdiction for Taishan's conduct.  In analyzing that theory, the Court recognized that the law of the state of incorporation governs and that here, all of the companies are incorporated in China.  *Id.* at 40-42.  However, the Court did not apply Chinese law, opting instead for the law of the forum states on the theory that their laws are not "materially different" from Chinese law.  *Id.* at 49.  From there, the Court concluded that, under Louisiana law, all three Moving Defendants constitute a single business enterprise and therefore are subject to personal jurisdiction.  *Id.* at 79, 98-100.

In addition, the Court found that personal jurisdiction exists as to BNBM under Louisiana law (because BNBM is an alter ego of Taishan), *id.* at 75, and under Florida and Virginia law (because BNBM has an agency relationship with Taishan), *id.* at 64, 69.  The Court also concluded that BNBM's direct contacts with Florida establish personal jurisdiction because its sale of drywall and related activities in Florida brought it within the state's long-arm statute, *id.* at 81-86, and that exercising personal jurisdiction over BNBM based on these contacts is consistent with the Due Process Clause, *id.* at 86-95.

**ARGUMENT**

An order is subject to immediate appeal under § 1292(b) when it involves a controlling question of law; there exists a substantial ground for difference of opinion; and an immediate appeal would materially advance the litigation.  *See Rico v. Flores*, 481 F.3d 234, 238 (5th Cir. 2007).  Those criteria are easily met here, and that should come as no surprise.  Orders concerning personal jurisdiction are particularly amenable to immediate appeal under § 1292(b).  *See, e.g.*, *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 608-09 (5th Cir. 2008); *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002); *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 373 (5th Cir. 1987); *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, No. 09-md-2047, 2012 WL 4928869 (E.D. La. Oct. 16, 2012).  After all, such orders often involve threshold, dispositive questions, and when they turn on debatable issues of law, an immediate appeal is particularly appropriate given the gross inefficiency that otherwise would result if the parties learned after years of further litigation that the district court did not have jurisdiction in the first place.  That is precisely the case here, and certification is well warranted.

**I.      The Court's Jurisdictional Rulings Present Controlling Questions of Law.**

This first criterion is easily met.  A question is controlling when "reversal of the order would terminate the action" or has the "potential to have some impact on the course of the litigation."  *United States v. Louisiana Generating LLC*, No. 09-cv-100, 2012 WL 4588437, at *1 (M.D. La. Oct. 2, 2012); *see Garner v. Wolfinbarger*, 430 F.2d 1093, 1097 (5th Cir. 1970) ("Review under § 1292(b) is available where decision on an issue would affect the scope of the evidence in a complex case, even short of requiring complete dismissal.").  Here, resolving the certified questions would have much more than "some impact" on the litigation—it would result in terminating the action as to multiple defendants.

The questions at issue here also are questions of law.  When the issues presented do not "appear to be merely fact-review questions," they are appropriate for resolution under § 1292(b). *Clark-Dietz & Assocs.-Eng'rs, Inc. v. Basic Constr. Co.*, 702 F.2d 67, 69 (5th Cir. 1983) (rejecting interlocutory review because the questions "appear to be merely fact-review questions inappropriate for § 1292(b) review").  Indeed, even "summary-judgment rulings [that] depend more on questions of law than investigation of the record for genuine issues," properly fall within the scope of § 1292(b) review.  16 Wright & Miller, Fed. Prac. & Proc. Juris. § 3930 (3d ed.).  The questions here are questions of law.  That plainly is true of the question of when it is permissible, under choice-of-law principles, to apply the law of some state other than the state of incorporation.  The same is true of the legal scope of the SBE doctrine, and whether applying it and other such doctrines in the broad way advocated by the PSC contravenes the Due Process Clause and principles of corporate separateness.

## II.     There Are Substantial Grounds For Differences Of Opinion Concerning The Court's Jurisdictional Ruling.

"Of the three statutory criteria, the one requiring substantial ground for difference of opinion has caused the least difficulty."  Wright & Miller, *supra*.

In part that is true because of the many ways in which this criterion can be satisfied.  A substantial ground for difference of opinion exists if "the circuits are in dispute on the question and the Court of Appeals of the circuit [encompassing the district court] has not spoken on the point ... or if novel and difficult questions of first impression are presented."  *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, No. 09-md-2047, 2011 WL 2443693, at *3 (E.D. La. June 14, 2011) (alterations in original).  "In addition, a party may argue that there is a substantial ground for difference of opinion based on the divergent application of a legal standard."  *Id*; *see also Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) ("A substantial ground

for difference of opinion exists where reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed.").

This criterion also is easily met, at least in a case like this one, because it is subject to a sliding scale that turns on the significance of the issue. "The level of uncertainty required to find a substantial ground for difference of opinion should be adjusted to meet the importance of the question in the context of the specific case. If proceedings that threaten to endure for several years depend on an initial question of jurisdiction, limitations, or the like, certification may be justified at a relatively low threshold of doubt." Wright & Miller, *supra*. That is exactly the situation here, and the multiple grounds for difference of opinion more than meet that standard.

### A.     There Are, At A Minimum, Substantial Grounds For Difference Of Opinion About When To Apply Forum State Law Concerning Imputed Contacts.

Reasonable jurists could disagree about whether the Court applied the appropriate law when it imputed Taishan's contacts to Moving Defendants for purposes of personal jurisdiction.

As the Court recognized, a transferee court in an MDL is "bound to apply the law the transferor court would follow," Rec. Doc. 20739 at 40 (quoting *In re Mastercard Int'l, Inc. Internet Gambling Litig.*, No. 00-cv-0661, 2004 WL 287344, at *2 (E.D. La. Feb. 12, 2004)), which "includes the transferor forum's choice-of-law rules," *id.* (quoting *In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 2d 897, 903 (E.D. La. 2007)). Here, the choice-of-law rules of each of the transferring fora—Florida, Louisiana, and Virginia—"mandate applying Chinese law[;] i.e., the law of the state of incorporation, to determine alter ego status." *Id.*[2]

---

[2] *See also* Rec. Doc. 20739 at 41 ("under each of the forum state's choice of law rules, Chinese law applies"); *Jackson v. Tanfoglio Giuseppe, S.r.l.*, 615 F.3d 579, 587 & n.9 (5th Cir. 2010) ("[I]n considering whether [defendant] abused the corporate form, we must look to the law governing [defendant's] corporate form—that is, Italian law."); *Energy Coal*, 836 F.3d at 463 (holding that if the court were to apply Louisiana law rather than the law of the state of incorporation, it "would substantially undermine the high bar [the incorporation state] sets for disregarding corporate separateness" and "would also be at odds with the expectations of the parties").

But the Court did not do so.  It declined to apply Chinese law, and instead applied the
"substantive state law of Louisiana, Virginia, and Florida regarding alter ego status."  Rec. Doc.
20739 at 42; *see also id.* at 49.  The theory for doing so was that the laws of Louisiana, Virginia,
and Florida are all "similar to Chinese law."  *Id.* at 42.  There are serious grounds for
disagreement as to whether this result is justified by the "false conflicts" doctrine invoked by the
Court.  *Id.* at 49 (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 838 n. 20 (1985)
(Stevens, J., concurring in part, dissenting in part)).

"In any conflict-of-laws case, the court's first task is to determine if an actual conflict
exists, and if the laws and interests of the concerned states are not in conflict, the result is
deemed a 'false conflict' or no conflict at all."  15A C.J.S. Conflict of Laws § 31 (footnotes
omitted).  If the laws of the relevant jurisdictions are not in conflict, then the court "need not
reach the issue of which … law should apply because regardless of which … approach we use,
the outcome is the same."  *Chinese Manufactured Drywall*, 742 F.3d at 586.[3]

But here, there is no such congruence between the different laws at issue—and, at a
minimum, there is substantial basis for disagreement with the Court's conclusion on this point.
There has been no showing that *any* state—much less China—has a jurisdictional principle like
the aggressive version of SBE that the PSC has advocated here.  There has been no showing that
Chinese law applies the same jurisdictional test as any of the transferor states.  And the Court's
own ruling demonstrates that there is no congruence even among the transferor states.  How do

---

[3] *See also Shutts*, 472 U.S. 838 at n.20 (Stevens, J., concurring in part, dissenting in part) ("If the laws of both states
relevant to the set of facts are the same, or would produce the same decision in the lawsuit, there is no real conflict
between them."); *Adami v. Cardo Windows, Inc.*, No. 12-cv-2804, 2013 WL 3821466, at *11 n.11 (D.N.J. July 23,
2013) ("[T]here is a false conflict where the application of either state's law renders the same result."); *Adidas Am.,
Inc. v. Herbalife Int'l, Inc.*, No. 09-cv-661, 2011 WL 3359987, at *4-5 (D. Or. Aug. 1, 2011) ("There is no material
difference (relevant here at least) between the intentional interference law of Oregon and California, and I reach the
same result regardless of which version I apply.").

we know this?  Because the Court reached *different* jurisdictional results under the law of the different transferor states.  It concluded that CNBM, BNBM Group, and BNBM are *not* alter egos of Taishan under Florida or Virginia law; that BNBM *is* an alter ego of Taishan under Louisiana law (but CNBM and BNBM Group are not); and that Taishan's contacts in Louisiana can be attributed to CNBM, BNBM Group, and BNBM under an SBE theory.

These conflicting results are not at all surprising, given the considerable differences among these laws.  At one end of the spectrum is an aggressive version of the SBE theory, which, as the Court and PSC interpret it, is governed by a malleable 18-factor test that does not require fraud or misuse of the corporate form.  *Cf. Green v. Champion Ins. Co.*, 577 So. 2d 249, 257-58 (La. Ct. App. 1991).[4]  That standard is different from Louisiana alter ego law, which does require a showing of fraud or deceit or, at a minimum, imposes upon plaintiffs "a heavy burden of proving that the shareholders disregarded the corporate entity to such an extent that it ceased to become distinguishable from themselves."  *Riggins v. Dixie Shoring Co.*, 590 So. 2d 1164, 1168 (La. 1991).  Still more different from that broad SBE theory are the laws of Florida and Virginia, which are even less hospitable to veil-piercing.  They require, respectively, proof that the corporation was a "mere instrumentality" and "the defendant engaged in 'improper conduct' in the formation or use of the corporation," *WH Smith, PLC v. Benages & Assocs., Inc.*, 51 So. 3d 577, 581 (Fla. Dist. Ct. App. 2010); and that "the corporation was a device or sham used to disguise wrongs, obscure fraud, or conceal crime," *Int'l Bancorp, L.L.C. v. Societe Des Bains De Mer Et Du Cercle Des Etrangers A Monaco*, 192 F. Supp. 2d 467, 478 (E.D. Va. 2002).  Then, at the far end of spectrum from the SBE theory advocated by plaintiffs is Chinese law—which, as

---

[4] Even *Green* may not go as far as this Court's interpretation.  The *Green* court recognized that upon finding that "a group of corporations constitute a 'single business enterprise,'" it could extend liability only to "prevent fraud or to achieve equity."  577 So. 2d at 259.

the Court recognized, requires a showing that a "shareholder of the company [has] abuse[d]" the corporate status by "evad[ing] debts." Rec. Doc. 20739 at 41 & n.20. Because Taishan is adequately capitalized, *id.* at 78, there could be no basis for imputing contacts under Chinese law.

Clearly the laws are not interchangeable. And, contrary to the Court's conclusion, *id.* at 48, Moving Defendants have never suggested that they are. The CNBM and BNBM Entities have argued that they *prevail* under every standard—but if the Court concludes otherwise, it can reject Moving Defendants' argument without figuring out which law applies only if the Court determines that they would *lose* under every standard, including the strictest one. *See Jackson*, 615 F.3d at 587 (declining to resolve "complicated choice of law question" because appellants would lose even under more favorable standard). Veil-piercing under a lenient standard doesn't establish veil-piercing under a more searching standard, just like winning a high school track meet doesn't mean that you'd win the Olympics. Nor, contrary to the Court's suggestion, *id.* at 49, has the Fifth Circuit held that the laws are the same. Taishan (and Taishan alone) made a strategic choice in the previous appeal not to argue that the laws are different, and instead to argue that it wins even under the (what we now know to be more lenient) Florida standard. *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 753 F.3d 521, 529 (5th Cir. 2014). The Fifth Circuit noted that concession, but did not hold that Chinese and Florida law are the same. *Id.*; *see also Thomas v. Tex. Dep't of Criminal Justice*, 297 F.3d 361, 370 n.11 (5th Cir. 2002) (prior decision binding only to the extent decision "address[ed] a question squarely"); *Alpha/Omega Ins. Servs., Inc. v. Prudential Ins. Co. of Am.*, 272 F.3d 276, 279 (5th Cir. 2001) (law of the case "applies only to issues that were actually decided, rather than all questions in the case that might

have been decided, but were not").[5]  Given the plain differences between the rigorous showing required under Chinese law to impute jurisdictional contacts, and the very lenient standard that some intermediate courts in Louisiana seem to have embraced, the conflict among the laws is very real, and far from "false"—and certainly something about which the Fifth Circuit very well may differ.

> **B.    There Are, At A Minimum, Substantial Grounds For Difference Of Opinion About Whether The Court's Interpretation Of State-Law Imputation Theories Contravenes The Due Process Clause And Principles Of Corporate Separateness.**

Reasonable jurists also could disagree about whether imputing contacts from Taishan to CNBM, BNBM Group, and BNBM contravenes the Due Process Clause and principles of corporate separateness.

The underlying principles are clear, and they cut strongly against imputing contacts. "Generally, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there; the mere existence of a parent-subsidiary relationship is not sufficient to warrant the assertion of jurisdiction over the foreign parent."  *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983).[6]  This is a natural corollary of the equally fundamental principle that specific jurisdiction must "arise out of contacts the defendant *himself* creates with the forum State."  *Walden v. Fiore*, 134 S. Ct. 1115,

---

[5] Unlike the movants in the Fifth Circuit case earlier in this MDL, the Moving Defendants here have never claimed that if contacts *could* be imputed under forum state law, they would necessarily be imputed under Chinese law.  On the contrary, they explained that any interpretation of forum state law that does not require showing at least "fraud or misconduct" or, more specifically "a showing of intent to evade debt and thereby cause damage," is "considerabl[y] differen[t] [from] Chinese law."  CNBM Reply ISO MTD at 12 n.11, Rec. Doc. 20043-2.

[6] *See also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984); *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 346 (5th Cir. 2004); *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999).

1122 (2014) (internal quotation marks omitted).[7]  Accordingly, "so long as a parent and subsidiary maintain separate and distinct corporate entities," the contacts of a subsidiary will not be imputed to a parent.  *Hargrave*, 710 F.2d at 1160.

These same principles apply to corporate shareholders.  Just as the kind of "control" exercised by shareholders doesn't give rise to vicarious liability,[8] it does not supply a basis for imputing jurisdictional contacts from one entity to another.  There must be "an additional or a 'plus' factor, 'something beyond the subsidiary's mere presence within the bosom of the corporate family.'"  *Dickson Marine Inc.*, 179 F.3d at 338 (quoting *Donatelli v. NHL*, 893 F.2d 459, 465 (1st Cir. 1990)); *Hargrave*, 710 F.2d at 1160.  Indeed, even "100% stock ownership and commonality of officers and directors are not alone sufficient" to impute the contacts of a subsidiary to a parent.  *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 219 (5th Cir. 2000) (quoting *Hargrave*, 710 F.2d at 1160).[9]  Rather, the party seeking to impute jurisdictional contacts typically must demonstrate that the parent dominates the subsidiary,[10] such that "the corporate form would otherwise be misused to accomplish certain wrongful purposes, most notably fraud, on the shareholder's behalf," *Bestfoods*, 524 U.S. at 62.

---

[7] *See also Keeton*, 465 U.S. at 781 n.13 ("Each defendant's contacts with the forum State must be assessed individually.").

[8] "That 'control' [by shareholders] includes the election of directors, the making of by-laws ... and the doing of all other acts incident to the legal status of stockholders.  Nor will a duplication of some or all of the directors or executive officers be fatal."  *United States v. Bestfoods*, 524 U.S. 51, 61-62 (1998) (second alteration in original).

[9] *See also Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 335 (1925) (even where parent "dominate[d] the [subsidiary] immediately and completely" "through the ownership of the entire capital stock" and "exert[ed] its control both commercially and financially in substantially the same way," Supreme Court has recognized that the "existence of the [subsidiary] as a distinct corporate entity is … in all respects observed"); *Al Rushaid v. Nat'l Oilwell Varco, Inc.*, 757 F.3d 416, 423 & n.24 (5th Cir. 2014) ("Imputing to a party the actions of its codefendants merely on the ground that the entities are jointly owned or controlled or share representation would contravene the fundamental principle of corporate separateness.").

[10] *See Alpine View*, 205 F.3d at 219; *Hargrave*, 710 F.2d at 1159.

Here, after having set aside Chinese law under a false conflicts theory, the Order applied versions of forum law that, were they legally correct, would defy principles of due process and corporate separateness. There is good reason to think that the Fifth Circuit would disagree that imputing contacts in this fashion is permissible.

**Single Business Enterprise (SBE).** The Court imputed Taishan's contacts to CNBM, BNBM Group, and BNBM under an SBE theory. Rec. Doc. 20739 at 75-79. The continued viability and scope of that doctrine, and its use here, is an issue on which there are substantial grounds for difference of opinion. As the Fifth Circuit itself recently explained, only the Louisiana intermediate appellate courts have embraced SBE; "[t]he Supreme Court of Louisiana has never adopted the single business enterprise theory." *Energy Coal*, 836 F.3d at 460. The Louisiana Supreme Court's lack of guidance "has contributed to a hodgepodge of views [concerning SBE's application] in lower Louisiana courts." *Id.* at 461.[11]

There could be no better illustration than this Order of why questions remain about the scope and continued viability of this doctrine. Under a broad reading of SBE, many of the factors that (according to the Order, Rec. Doc. 20739 at 75-76) weigh in favor of imputing contacts simply reflect the normal incidents of corporate behavior—for instance, common ownership, common directors and officers, common offices, some shared property, financing relationships, and high-level policymaking.[12] And, under the broad and malleable reading of the

---

[11] This looks a lot like the state of affairs in Texas several years ago. The Texas intermediate appellate courts had embraced the SBE doctrine but the Texas Supreme Court had not. *See, e.g.*, *Devries v. Bulldog Well Testing LLC*, No. 16-cv-00338, 2017 WL 1134318, at *8 (S.D. Tex. Mar. 27, 2017). The Texas Supreme Court resolved the issue by doing away with the theory. *Id.*

[12] *See Bona Fide Demolition & Recovery, LLC v. Crosby Const. Co. of La., Inc.*, 690 F. Supp. 2d 435, 445 (E.D. La. 2010) ("some of the [SBE] factors are perfectly consistent with legitimate, efficient business operations, such as common control, common employees, officers, and directors, shared offices, and some form of centralized accounting"); *Bestfoods*, 524 U.S. at 72 ("[M]onitoring of the subsidiary's performance, supervision of the

SBE theory that this Court employed, it was impermissibly used to impute contacts vertically (and through multiple corporate layers, as should be left to veil-piercing law),[13] and to ignore the factors that are most critical in determining whether separate corporate entities can be treated as one: disregard for corporate formalities, *see Dickson Marine*, 179 F.3d at 338-39; *Jackson*, 615 F.3d at 587; extensive use of undocumented transfers of funds, *Jackson*, 615 F.3d at 587; *Chinese-Manufactured Drywall*, 753 F.3d at 547; and grossly undercapitalized subsidiaries, *Alpine View*, 205 F.3d at 219; *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 593 (5th Cir. 1999). This itself provides a substantial basis for difference of opinion given that the very case that established the doctrine "suggests … [its] [purpose] is the same as traditional veil piercing: to prevent fraud or achieve equity." *Bona Fide*, 690 F. Supp. 2d at 445 (citing *Green*, 577 So. 2d at 258).[14]

There is serious basis for debate whether SBE may be extended so broadly as it was here. If it were so extended—far beyond traditional notions of veil-piercing and alter ego—to reach entities with no expectation of being haled into Louisiana court, there is substantial basis for disagreement about whether such a rule would offend traditional notions of fair play and substantial justice. *See Energy Coal*, 836 F.3d at 463 (applying Louisiana single business

---

subsidiary's finance and capital budget decisions, and articulation of general policies and procedures" are "consistent with the parent's investor status." (citation omitted)).

[13] *Bona Fide*, 690 F. Supp. 2d at 443-44 ("SBE theory differs from traditional veil piercing" because "traditional veil piercing operates vertically to allow the Court to impute a corporation's contacts to its shareholder" while "SBE theory can be used to fuse either affiliated or unaffiliated corporations, *but not* to impute corporate jurisdictional contacts to shareholders." (emphasis added)); *see also Alpine View*, 205 F.3d at 218 (imputing jurisdictional contacts is made more difficult by the existence of multiple levels of subsidiaries).

[14] Nor is it true, as the Court suggested, that SBE varies only "slightly" from alter ego.  Rec. Doc. 20739 at 69. Consistent with respect for the traditional notions of corporate separateness, alter ego generally requires plaintiffs to prove that the distinct corporate entities are not in fact separate, and that the corporate arrangement is being used to perpetrate some form of wrongdoing, fraud, or injustice.  No similar notion appears in the Court's analysis. Moreover, for purposes of analyzing alter ego, the Fifth Circuit has made plain that it is more difficult to impute contacts through multiple levels of corporate structure.  *See Alpine View*, 205 F.3d at 218; *Dickson Marine*, 179 F.3d at 338-39.  Here, SBE theory was used to overcome that doctrinal barrier.

13

enterprise liability to an out-of-state corporation "would mean any corporation conducting business in Louisiana could be liable in the state's courts for the conduct of an affiliate occurring anywhere in the world").  This is just the sort of "novel and difficult question[] of first impression" that warrants review under § 1292(b).  *In re Cent. Louisiana Grain Co-op., Inc.*, 489 B.R. 403, 412 (W.D. La. 2013); *see also Chinese-Manufactured Drywall*, 2011 WL 2443693, at *3.

**Alter Ego**.  The proper test for alter ego under Louisiana law also is, at a minimum, subject to dispute.  The alter ego test in Louisiana "involves situations where fraud or deceit has been practiced by the shareholder acting through the corporation."  *Riggins*, 590 So. 2d at 1168. Absent an allegation of fraud, the plaintiff "bear[s] a heavy burden of proving that the shareholders disregarded the corporate entity to such an extent that it ceased to become distinguishable from themselves."  *Id*.

This Court, however, ignored *Riggins*, and instead applied the Fifth Circuit's decision in *Hargrave*, 710 F.2d 1154.  Rec. Doc. 20739 at 69-75.  But *Hargrave* applied Texas rather than Louisiana law, and it therefore did not require a showing of fraud (or, in lieu of it, the "heavy burden" to prove alter ego).  *See* 710 F.2d at 1161-62; *Adm'rs of Tulane Educ. Fund v. Ipsen, S.A.*, 450 F. App'x 326, 330 n.5 (5th Cir. 2011) ("The *Hargrave* factors construe Texas state law.").  Whether the Court could apply Texas law while purporting to apply forum state law is highly debatable.  *See Adm'rs of Tulane Educ.*, 450 F. App'x at 330 n.5 ("Although *Hargrave* … certainly is informative regarding imputed jurisdictional contacts among corporations, the general use of the *Hargrave* factors in Louisiana diversity cases should be discouraged.").

**Agency.**  The Order asserts personal jurisdiction over BNBM through the use of Florida and Virginia agency law.  Rec. Doc. 20739 at 54-64, 66-69.  After *Daimler AG v. Bauman*, 134

S. Ct. 746 (2014), however, there remain disputed questions about the kinds of agency

relationships that permit jurisdictional contacts to be imputed, consistent with constitutional

constraints.  In particular, it is unclear whether an agency relationship is sufficient to impute

contacts in the absence of evidence that the entities were alter egos, or that the supposed agent

was directed to engage in the conduct giving rise to the suit.  *See Chinese-Manufactured*

*Drywall*, 753 F.3d at 531-32 & n.7 ("an agency relationship alone may not be dispositive");

*Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024-25 (9th Cir. 2017) (discussing viability of

the circuit's agency law for imputing contacts post-*Daimler*).

For an agency relationship to be sufficient to impute contacts, a plaintiff must make a

particular showing, which Plaintiffs failed to do here.  As the Supreme Court recognized in

*Daimler,* "[a]gencies … come in many sizes and shapes" such that "[o]ne may be an agent for

some business purposes and not others so that the fact that one may be an agent for one purpose

does not make him or her an agent for every purpose."  134 S. Ct. at 759 (quoting 2A C.J.S.

Agency § 43); *see also Chinese-Manufactured Drywall*, 753 F.3d at 531.  Thus, in the context of

specific jurisdiction, the Supreme Court recognized that courts must evaluate the scope of the

agency with a focus on whether a principal "purposefully availed itself of a forum by directing"

an agent to engage in the activity giving rise to the claim.  *See Daimler*, 134 S. Ct. at 759 & n.13

(citing prior decisions discussing purposeful availment where parent authorized or directed

corporate agent to engage in activity giving rise to claim).[15]

---

[15] *See also* Va. Code Ann. § 8.01-328.1 (long-arm jurisdiction over defendant who uses an agent to engage in specific activities from which the cause of action arises); Fla. Stat. Ann. § 48.193(1)(a) (same); *Prototype Prods., Inc. v. Reset, Inc.*, 844 F. Supp. 2d 691, 695 (E.D. Va. 2012) (Virginia agency law focuses on control "with regard to the work to be done and the manner of performing it" and "work has to be done on the business of the principal or for his benefit." (citation omitted)).

Here, however, there is no such showing, and the Order does not say that there is. There was no finding that BNBM directed Taishan to ship or market drywall to the forum states. *See generally* Rec. Doc. 20739 at 54-69. Nor was there any determination that BNBM purposefully availed itself of the forum states by directing its supposed agent—Taishan—to do the business giving rise to the claims. All the Court found was that BNBM had some ability to control Taishan and, in some instances, withhold approval of decisions Taishan had independently made. *Id.* at 58-59, 63-64, 67-69.

The Court imputed Taishan's contacts to BNBM on this basis, adopting a theory of *general* agency, i.e., that Taishan and BNBM shared officers and property and BNBM generally controls Taishan's business decisions and day-to-day operations. *Id.* at 39, 55-64. To the extent the Fifth Circuit has countenanced such a theory, it has explained that the requisite showing is the same one required to prove alter ego.[16] Indeed, the Fifth Circuit has explained that the degree of control necessary to categorically impute contacts must be so extensive that the principal dominated the agent and the agent had no other purpose than to serve the parent corporation. *Chinese-Manufactured Drywall*, 753 F.3d at 531-34 & n.7 (agent had no "independent purpose outside servicing [parent's] needs"); *Williams*, 851 F.3d at 1024-25 (rejecting imputation based on agency when "subsidiary's contacts *could* be attributed" but failing to show that "parent company must have the right to substantially control its subsidiary's activities").[17] Far from requiring a showing that Taishan and BNBM are alter egos, the Court

---

[16] *See Chinese-Manufactured Drywall*, 753 F.3d at 531 & n.7 ("This control-focused inquiry overlaps with the alter-ego test adopted by most circuits."); *see also Dickson Marine*, 179 F.3d at 338-39 ("agent or alter ego" governed by the same analysis); *Freudensprung*, 379 F.3d at 346 (same); *Brownsberger v. Gexa Energy, LP*, No. 10-cv-81021, 2011 WL 197464, at *3 (S.D. Fla. Jan. 20, 2011) (relying on alter ego case law), *accord First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 629 (1983).

[17] *See also State v. Am. Tobacco Co.*, 707 So. 2d 851, 855 (Fla. Dist. Ct. App. 1998) (to be liable under agency theory, the parent corporation "must exercise control to the extent the subsidiary 'manifests no separate corporate interests of its own and functions solely to achieve the purposes of the dominant corporation.'" (citation omitted)).

16

specifically recognized that they are *not* alter egos under Florida and Virginia law.  Rec. Doc. 20739 at 54, 64.

In short, there are serious questions whether an agency theory based on general "control" is available in the absence of an alter ego relationship.  And even if such a theory were viable, questions remain whether this Court was obligated to analyze whether imputing contacts pursuant to that theory—as opposed to an alter ego theory—satisfied due process.[18]  Even if (as the Order may have concluded, *see id.* at 36-37) imputing Taishan's contacts to CNBM and BNBM could satisfy the "minimum contacts" prong of the due process analysis, there remains the question whether the harm that occurred in the state resulted from those contacts and, more critically, if subjecting BNBM to jurisdiction in Florida and Virginia based on its agency-based contacts would be "fair and reasonable."  *See Chinese-Manufactured Drywall*, 753 F.3d at 539-40, 544 (jurisdiction comports with "fair play and substantial justice").

## III.   An Immediate Appeal Of The Jurisdictional Order Would Materially Advance The Litigation.

"Although technically the question of whether there is a controlling issue of law is distinct from the question of whether certification would materially advance the ultimate termination of the litigation, in practice the two questions are closely connected."  *S.E.C. v. Credit Bancorp, Ltd.*, 103 F. Supp. 2d 223, 227 (S.D.N.Y. 2000).  And an immediate appeal of a jurisdictional question "would materially advance the litigation by eliminating the possibility of a meaningless trial" for those defendants who should never been subjected to one.  *Chinese*

---

[18] Although the Fifth Circuit found that exercising jurisdiction over Taishan in Virginia and Florida was consistent with due process, *see Chinese-Manufactured Drywall*, 753 F.3d at 544; *Chinese-Manufactured Drywall*, 742 F.3d at 592-93, and arguably would be for any alter ego of Taishan, this Court recognized that BNBM is not an alter ego of Taishan in Florida and Virginia and thus not the same entity.  *Compare* Rec. Doc. 20739 at 54, 64, *with* Rec. Doc. 20739 at 36-37.  Accordingly, a distinct due process analysis is required.

*Manufactured Drywall*, 2012 WL 4928869, at *7.  After all, "to require the parties to go through a trial before a court lacking jurisdiction would be both expensive and senseless for no matter what facts were developed on the trial, the Constitution would forbid the adjudication there." *Tokio Marine*, 322 F.2d at 115.[19]

The questions presented here all speak directly to jurisdiction, and therefore are squarely subject to these considerations.  Whether the Court used the appropriate law under a choice-of-law analysis, and construed that law properly, has the most serious implications for this case.  A jurist who views these questions differently would dismiss the Moving Defendants from the litigation.  In short, it is hard to conceive of a set of questions that could do more to materially advance the litigation.  And, there is no threat to Plaintiffs in allowing Moving Defendants to pursue their request given that Moving Defendants have not sought a stay in the interim.

## CONCLUSION

For the foregoing reasons, this Court should grant the Motion under 28 U.S.C. § 1292(b), expressly find that all three requirements are met under § 1292(b), and amend the Court's April 21, 2017 jurisdictional order to certify the order for appeal.


Dated: May 22, 2017

---

[19] *See also Johnston v. Multidata Sys. Int'l Corp.*, No. 06-cv-313, 2007 WL 3998804, at *1 (S.D. Tex. Nov. 14, 2007) ("Based on the magnitude of this case, the complexity of the fact-intensive issues that cross international borders, the vastly expensive discovery and litigation phases that may follow, and in the interest of fairness to the parties and to avoid unnecessary delay and expense if it is later determined that the Court does not have jurisdiction, the Court believes that reconsideration of the Defendants' motions to certify for interlocutory appeal is warranted.").

Respectfully submitted,


*/s/ L. Christopher Vejnoska*

| | |
|---|---|
| L. Christopher Vejnoska (CA Bar No. 96082) | Ewell E. Eagan, Jr. (LA Bar No. 5239) |
| Ian Johnson (CA Bar No. 208713) | Donna Phillips Currault (LA Bar No. 19533) |
| Andrew Davidson (CA Bar No. 266506) | Alex B. Rothenberg (LA Bar No. 34740) |
| Jason Wu (CA Bar No. 279118) | GORDON, ARATA, MONTGOMERY, |
| ORRICK, HERRINGTON & SUTCLIFFE | BARNETT, MCCOLLAM, DUPLANTIS & |
| LLP | EAGAN, LLC |
| The Orrick Building | 201 St. Charles Avenue, 40th Floor |
| 405 Howard Street | New Orleans, LA 70170-4000 |
| San Francisco, CA  94105 | Tel: (504) 582-1111 |
| Tel:  415-773-5700 | Email: eeagan@gordonarata.com |
| Email:   cvejnoska@orrick.com | dcurrault@gordonarata.com |
| ijohnson@orrick.com | arothenberg@gordonarata.com |
| adavidson@orrick.com | |
| jmwu@orrick.com | |
| | |
| James L. Stengel (NY Bar No. 1800556) | Eric A. Shumsky (D.C. Bar No. 477926) |
| Xiang Wang (NY Bar No. 4311114) | ORRICK, HERRINGTON & SUTCLIFFE |
| ORRICK, HERRINGTON & SUTCLIFFE | LLP |
| LLP | Columbia Center |
| 51 West 52nd Street | 1152 15th Street NW |
| New York, NY, 10019 | Washington, D.C. 20005 |
| Tel:   212-506-5000 | Tel: 202-339-8400 |
| Email:  jstengel@orrick.com | Email: eshumsky@orrick.com |
| xiangwang@orrick.com | |

*Counsel for Moving Defendants*

19

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing CNBM AND BNBM ENTITIES' MEMORANDUM IN SUPPORT OF THEIR MOTION TO CERTIFY AN IMMEDIATE APPEAL FROM THE COURT'S JURISDICTIONAL ORDER (§ 1292(b) Motion #1) and accompanying documents have been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail and upon all parties by electronically uploading the same to File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on May 22, 2017.

/s/ *L. Christopher Vejnoska*

L. Christopher Vejnoska (CA Bar No. 96082)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105
Tel:  415-773-5700
Fax: 415-773-5759
Email: cvejnoska@orrick.com

*Counsel for Moving Defendants*