UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL No. 2:09-md-2047 |
| | SECTION L |
| **THIS DOCUMENT RELATES TO:** | JUDGE ELDON E. FALLON |
| *Germano v. Taishan Gypsum, 09-cv-6687* | |
| *Gross v. Knauf Gips KG, 09-cv-6690* | MAGISTRATE JUDGE |
| *Wiltz v. BNBM, 10-cv-361* | JOSEPH C. WILKINSON, JR. |
| *Amorin v. Taishan Gypsum, 11-cv-1672* | |
| *Amorin v. Taishan Gypsum, 11-cv-1395* | |
| *Amorin v. Taishan Gypsum, 11-cv-1673*[1] | |

## CNBM AND BNBM ENTITIES' MEMORANDUM IN SUPPORT OF THEIR MOTION TO CERTIFY AN IMMEDIATE APPEAL FROM THE COURT'S ORDER DENYING THEIR MOTIONS TO DECERTIFY THE CLASS (§ 1292(b) MOTION #2)

---

[1] This Court's April 21 Order resolving the CNBM and BNBM Entities' motions to decertify states that it relates to "ALL CASES"; however, the PSC did not ask that a class be certified as to all cases and the Court's certification order did not extend to all cases.  Rec. Doc. 18028 at 34-35.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 3

I.    THE COURT'S DENIAL OF THE CNBM AND BNBM ENTITIES' MOTIONS
      TO DECERTIFY PRESENTS CONTROLLING QUESTIONS OF LAW ...................... 4

II.   THERE ARE SUBSTANTIAL GROUNDS FOR DIFFERENCE OF OPINION ........... 6

      A.    There Is Substantial Ground For A Difference Of Opinion About Whether
            A Class Action That Includes Only Named Plaintiffs Is Superior To Other
            Methods Of Adjudicating A Controversy............................................................. 7

      B.    There Is Substantial Ground For A Difference Of Opinion About Whether
            The Court Engaged In The "Rigorous Analysis" Required In Determining
            That Common Issues Predominate ....................................................................... 8

      C.    There Is Substantial Ground For A Difference Of Opinion About Whether
            Common Questions Can Predominate Over Individualized Questions
            Without Considering Differences Among The Governing Law Of Multiple
            States ................................................................................................................... 11

III.  AN IMMEDIATE APPEAL WOULD MATERIALLY ADVANCE THIS
      LITIGATION ....................................................................................................................... 14

CONCLUSION ................................................................................................................... 15

CERTIFICATE OF SERVICE ........................................................................................... 17

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*7-Eleven, Inc. v. Dep't of Envtl. Quality*,
  590 S.E.2d 84 (Va. Ct. App. 2003)..................................................................................12

*Ahrenholz v. Bd. of Trs. of Univ. of Ill.*,
  219 F.3d 674 (7th Cir. 2000) ............................................................................................5

*Alloway v. Gen. Marine Indus., L.P.*,
  695 A.2d 264 (N.J. 1997)................................................................................................14

*Am. Fire & Casualty Co. v. Ford Motor Co.*,
  588 N.W.2d 437 (Iowa 1999) .........................................................................................14

*Bates v. Bankers Life & Casualty Co.*,
  848 F.3d 1236 (9th Cir. 2017) ..........................................................................................3

*Belcher v. Kier*,
  558 So. 2d 1039 (Fla. Dist. Ct. App. 1990) ....................................................................10

*Castano v. Am. Tobacco Co.*,
  84 F.3d 734 (5th Cir. 1996) .........................................................................3, 5, 6, 11, 12

*Castellanos-Contreras v. Decatur Hotels, LLC*,
  622 F.3d 393 (5th Cir. 2010) ............................................................................................6

*In re Cent. Louisiana Grain Co-op., Inc.*,
  489 B.R. 403 (W.D. La. 2013)..........................................................................................4

*In re Chevron U.S.A., Inc.*,
  109 F.3d 1016 (5th Cir. 1997) ..........................................................................................4

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
  No. 09-md-2047, 2011 WL 2443693 (E.D. La. June 14, 2011) .......................................6

*Chriss v. Manchester Ins. & Indem. Co.*,
  308 So. 2d 803 (La. Ct. App. 1975)................................................................................10

*Clevenger and Wright, Co. v. A.O. Smith Harvestore Prods., Inc.*,
  625 S.W.2d 906 (Mo. Ct. App. 1981)..............................................................................14

*Cole v. Gen. Motors Corp.*,
  484 F.3d 717 (5th Cir. 2007) ......................................................................................5, 11

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Comcast Corp. v. Behrend*,
  133 S. Ct. 1426 (2013) ................................................................................................2, 9

*Couch v. Telescope Inc.*,
  611 F.3d 629 (9th Cir. 2010) ...........................................................................................3

*Crutchfield v. Sewerage and Water Bd. of New Orleans*,
  829 F.3d 370 (5th Cir. 2016) .......................................................................................2, 9

*De Atley v. Victoria's Secret Catalogue, LLC.*,
  876 So. 2d 112 (La. Ct. App. 2004) ..............................................................................14

*Fisher Island Holdings, LLC v. Cohen*,
  983 So. 2d 1203 (Fla. App. 3 Dist. 2008) ......................................................................10

*Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*,
  678 N.E.2d 519 (Ohio 1997) .........................................................................................14

*Garner v. Wolfinbarger*,
  430 F.2d 1093 (5th Cir. 1970) .........................................................................................4

*Gerodetti v. Broadacres, Inc.*,
  363 So. 2d 265 (Miss. 1978) ..........................................................................................12

*Grossman Holdings Ltd. v. Hourihan*,
  414 So. 2d 1037 (Fla. 1982)...........................................................................................12

*Ibe v. Jones*,
  836 F.3d 516 (5th Cir. 2016) .......................................................................................2, 9

*JCW Elecs., Inc. v. Garza*,
  257 S.W.3d 701 (Tex. 2008)..........................................................................................14

*Jenkins v. Raymark Indus., Inc.*,
  109 F.R.D. 269 (E.D. Tex. 1985).....................................................................................15

*Jenkins v. Raymark Indus., Inc.*,
  782 F.2d 468 (5th Cir. 1986) ...........................................................................................7

*Jimenez v. Superior Court*,
  58 P.3d 450 (Cal. 2002) .................................................................................................14

*Kaltman v. All Am. Pest Control, Inc.*,
  706 S.E.2d 864 (Va. 2011)..............................................................................................14

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Kennedy v. Columbia Lumber and Mfg. Co.*,
  384 S.E.2d 730 (S.C. 1989) ...................................................................................14

*Lambert v. Allstate Ins. Co.*,
  195 So. 2d 698 (La. Ct. App. 1967)........................................................................13

*Lloyd Wood Coal Co. v. Clark Equip. Co.*,
  543 So. 2d 671 (Ala. 1989).....................................................................................14

*Madison v. Chalmette Ref., L.L.C.*,
  637 F.3d 551 (5th Cir. 2011) ....................................................................................9

*McFarlin v. Conseco Servs., LLC*,
  381 F.3d 1251 (11th Cir. 2004) ................................................................................5

*Meakin v. Dreier*,
  209 So. 2d 252 (Fla. Dist. Ct. App. 1968) .............................................................10

*MFC P'ship v. Foster*,
  1986 WL 740398 (Va. Circ. Ct. July 16, 1986).....................................................13

*Moore v. Coachmen Indus., Inc.*,
  499 S.E.2d 772 (N.C. Ct. App. 1998) .....................................................................14

*Mullen v. Treasure Chest Casino, LLC*,
  186 F.3d 620 (5th Cir. 1999) ....................................................................................3

*Niebarger v. Universal Coops., Inc.*,
  486 N.W.2d 612 (Mich. 1992).................................................................................14

*O'Sullivan v. Countrywide Home Loans, Inc.*,
  319 F.3d 732 (5th Cir. 2003) ..............................................................................9, 11

*Orndorff v. Christiana Cmty. Builders*,
  217 Cal. App. 3d 683 (Cal. Ct. App. 1990) ...........................................................13

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999)...................................................................................................8

*Richardson v. Byrd*,
  709 F.2d 1016 (5th Cir. 1983) ..................................................................................5

*Ritter v. Custom Chemicides, Inc.*,
  912 S.W.2d 128 (Tenn. 1995)..................................................................................14

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Robertson v. Monsanto Co.*,
    287 F. App'x 354 (5th Cir. 2008) ....................................................................1, 7, 8

*Roman Catholic Church of Archdiocese of New Orleans v. Louisiana Gas Serv.*
    *Co.*,
    618 So. 2d 874 (La. 1993) ....................................................................................13

*Salt River Project Agric. Improvement & Power Dist. v. Westinghouse Elec.*
    *Corp.*,
    694 P.2d 198 (Ariz. 1984).....................................................................................14

*Spence v. Glock, GmbH*,
    227 F.3d 308 (5th Cir. 2000) ...............................................................................11

*State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.*,
    736 So. 2d 384 (Miss. Ct. App. 1999) .................................................................14

*Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*,
    110 So. 3d 399 (Fla. 2013)...................................................................................14

*United States v. Louisiana Generating LLC*,
    No. 09-cv-100, 2012 WL 4588437 (M.D. La. Oct. 2, 2012)..................................4

*Volkswagen of Am., Inc. v. Robertson*,
    713 F.2d 1151 (5th Cir. 1983) .............................................................................13

*Vulcan Materials Co. v. Drilltech, Inc.*,
    306 S.E.2d 253 (Ga. 1983)...................................................................................14

*Younger v. Appalachian Power Co.*,
    202 S.E.2d 866 (Va. 1974)...................................................................................13

**Statutes**

28 U.S.C. § 1292(b) ........................................................................................3, 4, 5, 15

La. Rev. Stat. Ann. § 9:2800.53(5) ....................................................................14

M.C.L. § 600.2945(c) ........................................................................................14

Miss. Code Ann. § 11-1-63..................................................................................14

N.J.S.A. § 2A:58C-1 ...........................................................................................14

O.C.G.A. § 51-1-11..............................................................................................14

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

**Rules**

Fed. R. Civ. P. 23 .................................................................................................1, 4, 8

Fed. R. Civ. P. Rule 23(b)(3) ........................................................................1, 2, 7, 8, 10

Fed. R. Civ. P. Rule 23(f) ..................................................................................................3

**Other Authorities**

16 Wright & Miller, Fed. Prac. & Proc. Juris. § 3931.1 (3d ed.)......................................3

Fed. R. Civ. P. 23 (Advisory Committee's 1966 note on subd. (b)(3)).............................7

William B. Rubenstein, Newberg on Class Actions (5th ed. 2013) ..................................1

Defendants CNBM Co, BNBM Group, and BNBM PLC jointly submit this memorandum in support of their motion for an order certifying immediate appellate review of the Court's Order & Reasons filed on April 21, 2017, denying their motions to decertify the class.

## INTRODUCTION

The extreme oddity of the class that has been certified here calls out for immediate review before the case proceeds to trials that will be undone on appeal.

Where class actions are concerned, there is no more basic principle than that "[c]lass actions are a form of representative litigation" in which "[o]ne or more class representatives litigate on behalf of many absent class members, and those class members are bound by the outcome of the representative's litigation."  William B. Rubenstein, Newberg on Class Actions § 1:1 (5th ed. 2013).  *This* class action, however, altogether lacks that representative character. The class is not defined—as classes normally are—to encompass all plaintiffs who are similarly situated with respect to the defendants' alleged conduct.  Instead, the class encompasses only the "named Plaintiffs [in the various MDL complaints] asserting claims for remediated damages arising from, or otherwise related [to], Taishan drywall."  Rec. Doc. 20740 at 7 (first alteration in original).  But the Fifth Circuit already has recognized that that this does not satisfy Rule 23's superiority requirement.  That is because, under these peculiar circumstances, "there is little to be gained from invoking [Rule 23(b)(3)'s] notice requirements" and there is no "advantage [in] using a class action to render a binding judgment against all class members."  *Robertson v. Monsanto Co*., 287 F. App'x 354, 363 (5th Cir. 2008) (per curiam).  At a minimum, therefore, reasonable jurists can differ as to whether the superiority requirement is satisfied.

The same holds true for predominance, and there is no better indication of this than Plaintiffs' recent concession that all damages other than remediation are individualized.

1

*Compare* Rec. Doc. 18086-1 at 5-7 (seeking aggregate damages for alternative living expenses and loss of use and enjoyment damages in addition to remediation damages), *with* Rec. Doc. 19490-2 at 2 (seeking only aggregate remediation damages and reserving other damages claims in subsequent hearings).  Notwithstanding this concession, the Court concluded that remediation alone satisfies the predominance requirement.  Rec. Doc. 20740 at 15-16.  But there is substantial ground for disagreement on this issue, and very good reason to think the Fifth Circuit will conclude otherwise.  First, in determining that remediation issues predominate over Plaintiffs' other damages claims, it is debatable whether the Court engaged in the sort of "rigorous analysis" required under Rule 23(b)(3), *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013) (citation omitted), which demands identifying the "common issues [that will] … constitute a significant part of the individual cases," *Ibe v. Jones*, 836 F.3d 516, 529 (5th Cir. 2016).  Here, rather than identify the issues that would feature prominently *at trial*, the Court's inquiry focused on what has been driving *this MDL*; i.e., the most significant source of discussion among the parties.  *Compare, e.g.*, *Crutchfield v. Sewerage and Water Bd. Of New Orleans*, 829 F.3d 370, 376 (5th Cir. 2016) (trial court must "weigh common issues against individual ones and determine which category is likely to be *the focus of a trial*") (emphasis added), *with* Rec. Doc. 20740 at 15 ("Claims for property damage are undoubtedly the *focus of this MDL*" (emphasis added)), *and id.* ("the central *focus of the class* [is] remediation damages" (emphasis added)).  Those inquiries are not the same and do not lead to the same results.

Second, any assessment of damages will require the analysis and application of numerous different (and differing) state laws.  And the Fifth Circuit has said that such state-law differences are a critical factor in determining whether an issue is common to class members, and ultimately

for finding predominance.  *See, e.g.*, *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 742 (5th Cir. 1996).

It is far preferable to resolve these issues now, especially given that Moving Defendants are pursuing this request for certification without seeking a stay of litigation to avoid any unnecessary delay.  For these reasons, Moving Defendants respectfully request that the Court amend its April 21, 2017 Order & Reasons to certify it for immediate appeal pursuant to 28 U.S.C. § 1292(b) by expressly stating that all three requirements of § 1292(b) are satisfied. *See, e.g.*, *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010).

## ARGUMENT

This Court's April 21, 2017 Order & Reasons is appropriately certified for immediate appeal under 28 U.S.C. § 1292(b).  *See, e.g.*, *Bates v. Bankers Life & Casualty Co.*, 848 F.3d 1236, 1238 (9th Cir. 2017) (noting that § 1292(b) continues to be one of "two procedural avenues" available for interlocutory appellate review of orders related to class certification); *see also Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 623 (5th Cir. 1999) (affirming class certification after "the district court certified the issue for interlocutory appeal under 28 U.S.C. § 1292(b)"); *Castano*, 84 F.3d at 737 ("This matter comes before us on interlocutory appeal, under 28 U.S.C §1292(b), of the class certification order.").  That is particularly true in view of the efficiencies that will result from certifying this Order to the Fifth Circuit along with the jurisdictional issues that plainly merit immediate review.  *See* 16 Wright & Miller, Fed. Prac. & Proc. Juris. § 3931.1 (3d ed.) ("[I]f an issue falls—or may fall—outside the scope recognized for a Rule 23(f) appeal, a § 1292(b) appeal may be desirable not only to supplement Rule 23(f) *but also to create an efficient appeal package*." (emphasis added)).

3

Under Section 1292(b), this Court may certify an order for appeal where it "[1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and … [3] an immediate appeal from the order may materially advance the ultimate termination of the litigation."  These criteria are easily satisfied here.

## I.   The Court's Denial Of The CNBM And BNBM Entities' Motions to Decertify Presents Controlling Questions Of Law.

The questions raised by this motion are plainly controlling issues of law.  "Determining '[w]hether an issue of law is controlling generally hinges upon its potential to have some impact on the course of the litigation.'"  *In re Cent. Louisiana Grain Co-op., Inc*., 489 B.R. 403, 411 (W.D. La. 2013) (citation omitted); *United States v. Louisiana Generating LLC*, No. 09-cv-100-JJB, 2012 WL 4588437, at *1 (M.D. La. Oct. 2, 2012) (same); *see Garner v. Wolfinbarger*, 430 F.2d 1093, 1097 (5th Cir. 1970) ("Review under § 1292(b) is available where decision on an issue would affect the scope of the evidence in a complex case, even short of requiring complete dismissal.").

Far more than "some impact" is at issue here.  Class certification decisions are subject to heavy scrutiny precisely because of their far-reaching effect on the course and scope of litigation.  They affect everything about the shape, scope, and effect of the litigation.  And those considerations hold particularly true here, given the significant value of the claims.  The PSC seeks to recover hundreds of thousands of dollars in damages for each individual plaintiff.  Rec. Doc. 18086-1 at 7 (seeking, on average, $325,000, in damages for remediation, alternative living expenses, and loss of use and enjoyment).  Courts of appeals, including the Fifth Circuit, are particularly willing to scrutinize such class actions because, in general, they can have a "tendency to force defendants to settle even when they might have meritorious defenses." *In re Chevron U.S.A., Inc*., 109 F.3d 1016, 1022 (5th Cir. 1997) (Jones, J., concurring); *see also*

*Castano,* 84 F.3d at 746 ("Class certification magnifies and strengthens the number of unmeritorious claims.").  That unacceptable danger, among other reasons, is why appellate courts have emphasized that before certifying a class, a "district court must rigorously analyze Rule 23's prerequisites," and that "the commission of a legal error while doing so may be the basis of reversal."  *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 723 (5th Cir. 2007) (internal citations and quotation marks omitted).  Accordingly, "[t]he district judge must define, redefine, subclass, and decertify as appropriate in response to the progression of the case from assertion to facts."  *Richardson v. Byrd*, 709 F.2d 1016, 1019 (5th Cir. 1983).

Not only is this the type of Order that often affects the course of litigation; in addition, the questions identified in this motion both are "pure, controlling question[s] of law" that can be resolved "without having to delve beyond the surface of the record in order to determine the facts."  *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004); *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 677 (7th Cir. 2000) (section 1292(b) appeals are designed for "abstract issue[s] of law" that are "suitable for determination by an appellate court without a trial record").  Whether a class appropriately may be defined as encompassing only named plaintiffs is a discrete question that may be resolved without detailed inquiry into a factual record.  The same is true of whether Plaintiffs met their burden in showing that the common issues in their remediation damages claims would predominate at trial, and that a class may be maintained notwithstanding significant variations among the applicable laws of multiple states about what damages are available, and how to calculate them.  The appellate court need look no further than this Court's order to know that its predominance inquiry focused not on what would be the focus of trial (i.e., the evidence) but rather what has been the focus of the MDL (i.e., the highest-dollar value claims).   Likewise, an appellate court need look no further

than Plaintiffs' filings to conclude they failed to meet their burden of showing state-law variations do not preclude class certification. *See Castano*, 84 F.3d at 743 (plaintiffs did not satisfy their burden where they "failed to discuss, in any meaningful way, how the court could deal with variations in state law"). And the Fifth Circuit can assess from the face of the class certification orders whether this Court sufficiently analyzed state-law differences before certifying and maintaining a class. *See id.* ("Nothing in the record demonstrates that the court critically analyzed how variations in state law would affect predominance."). These arguments present questions of law that are controlling here and strongly support certifying the Order & Reasons for immediate appeal.

## II.   There Are Substantial Grounds For Difference Of Opinion.

A substantial ground for difference of opinion exists if "the circuits are in dispute on the question and the Court of Appeals of the circuit [encompassing the district court] has not spoken on the point ... or if novel and difficult questions of first impression are presented." *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, No. 09-md-2047, 2011 WL 2443693, at *3 (E.D. La. June 14, 2011). "In addition, a party may argue that there is a substantial ground for difference of opinion based on the divergent application of a legal standard." *Id.* Or, as the Fifth Circuit has simply put it: A substantial ground for difference of opinion exists when a question is one "about which reasonable jurists can—and … do—debate." *Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 399 (5th Cir. 2010).

Here, the decision to maintain a class action defined to encompass only named plaintiffs, and the conclusion that common issues predominate over individual ones, both conflict with Fifth Circuit precedent. And at a minimum, they are questions about which there is a substantial ground for a difference of opinion.

**A.    There Is Substantial Ground For A Difference Of Opinion About Whether A Class Action That Includes Only Named Plaintiffs Is Superior To Other Methods Of Adjudicating A Controversy.**

Before a class may be certified under Rule 23(b)(3), the court must determine that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). But when "the class … is defined to include only individuals … who were already named as plaintiffs in the … action," there is "simply … no gain to be had from using the class action form." *Robertson v. Monsanto Co.*, 287 F. App'x 354, 361-62 (5th Cir. 2008) (per curiam). And that is exactly the situation here. The class is defined as "[a]ll owners of real properties in the United States, *who are named Plaintiffs*" in the various MDL complaints. Rec. Doc. 18028 at 34 (emphasis added).

As in *Robertson*, therefore, there is simply no gain to be had from certifying a class. And that failing runs headlong into the policies underlying Rule 23(b)(3). That rule covers situations in which "class-action treatment is not as clearly called for as" situations covered by subsections (b)(1) and (b)(2)—and, accordingly, Rule 23(b)(3) applies only to "those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Fed. R. Civ. P. 23 (Advisory Committee's 1966 note on subd. (b)(3)). A class defined like this one cannot achieve those results. The efficiency of class actions flows from the presence of issues "potentially affecting every [class member] to be litigated." *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 471 (5th Cir. 1986) (alteration in original). But where the class is defined by reference to the named plaintiffs, absent is the "usual advantage of using a class action to render a binding judgment against all class members (or at least those who do not opt out), and, therefore, to foreclose the possibility that scattered, repetitive litigation will

continue indefinitely (and, from the defendant's perspective, to win some sort of finality and relief against the prospect of potentially large liability)." *Robertson*, 287 F. App'x at 363.

Here, for instance, even after this case is resolved, a property owner might seek to assert a claim for remediated damages arising from Taishan drywall that is identical in every respect to the claims asserted here. And, indeed, just last week the PSC said that additional plaintiffs intend to come forward to file new, individual claims. Class treatment, therefore, will not save the "transaction costs of piecemeal litigation," which is the "[o]ne great advantage of class action treatment of mass tort cases." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 860 (1999).[2] Given the significant ways in which this proposed class fails to advance the purposes of class action litigation, reasonable jurists can (at a minimum) differ as to whether proceeding with a class of named plaintiffs satisfies Rule 23's superiority requirement.

**B.    There Is Substantial Ground For A Difference Of Opinion About Whether The Court Engaged In The "Rigorous Analysis" Required In Determining That Common Issues Predominate.**

At one time, Plaintiffs sought broad classwide treatment for numerous types of damages. Now, however, they have conceded that nearly all of those damages require individualized resolution—all but remediation. Rec. Doc. 19490-2 at 2; Rec. Doc. 19519-2. Notwithstanding this recognition, the Court concluded that Rule 23(b)(3) is still satisfied because the single issue of "remediation damages predominate[s] over issues affecting only individual class members." Rec. Doc. 20740 at 16. Reasonable minds can differ as to whether, in reaching this conclusion, the Court engaged in the requisite "rigorous analysis" and properly assessed all of the issues that

---

[2] Certifying this peculiar class also does not serve Rule 23's notification requirement. "[B]ecause each and every class member is already a named plaintiff, and therefore presumably aware of the suit, there is little to be gained from invoking the notice requirements associated with Rule 23(b)(3), which are designed to identify and notify class members who are unaware of the suit." *Robertson*, 287 F. App'x at 363.

will be presented *at trial*. *Comcast Corp.*, 133 S. Ct. at 1433  (citation omitted); *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 738, 744 (5th Cir. 2003).

When assessing predominance, courts are obligated to engage in a multistep process that "entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class." *Ibe*, 836 F.3d at 529; *see also Madison v. Chalmette Ref., L.L.C.*, 637 F.3d 551, 555 (5th Cir. 2011).  At its core, the inquiry demands that the court "weigh common issues against individual ones and determine which category is likely to be *the focus of a trial*." *Crutchfield*, 829 F.3d at 376 (emphasis added).  "Absent this analysis, 'it [is] impossible for the court to know whether the common issues would be a significant portion of the individual trials,' much less whether the common issues predominate." *Madison*, 637 F.3d at 557 (citation omitted).

Here, the Court approached this task in reverse—first separating the common remediation issues from the individualized damages claims and then concluding that remediation damages predominate.  *See* Rec. Doc. 20740 at 15.  And, in doing so, the Court ignored the proper focus of the predominance inquiry.  It is not what has created the most discussion among the Plaintiffs or their lawyers, *see, e.g.*, *id.* at 15 ("the central *focus of the class* [is] remediation damages"),  or what stands to comprise the largest portion of recovery in an MDL or class action, *id.* at 15 ("Claims for property damage are undoubtedly the *focus of this MDL*") (emphasis added); *id.* ("the central *focus of the class* [is] remediation damages").  It is what would control at trial if all the claims were presented together.  *Crutchfield*, 829 F.3d at 376.

A rigorous analysis of all the remaining issues here reveals that Plaintiffs' other damages claims—not remediation—would predominate at individual trials.  On the Court's own

reasoning, the calculation of remediation involves only a formulaic analysis.[3]  Rec. Doc. 20740 at 50 (emphasis omitted).  To obtain damages for alternative living expenses or for loss of use and enjoyment of the properties, on the other hand, Plaintiffs will be required to present a wide range of witnesses and evidence.  For example, to recover damages for alternative living arrangements, Plaintiffs in some states will need to establish the fair market rental value of the affected properties, likely through expert testimony.  *See, e.g.*, *Fisher Island Holdings, LLC v. Cohen*, 983 So. 2d 1203, 1204 (Fla. App. 3 Dist. 2008) (establishing alternative living damages based on the fair market rental value of the plaintiff's property); *cf. Belcher v. Kier*, 558 So. 2d 1039, 1041 (Fla. Dist. Ct. App. 1990) (parties presented "expert testimony regarding fair market values and the rents charged" in the area).  Damages for loss of use of the property may require much more.  In Louisiana, for example, damages for loss of use in some cases are based on "the rental value of similar property and perhaps necessary incidental expenses."  *Chriss v. Manchester Ins. & Indem. Co.*, 308 So. 2d 803, 806 (La. Ct. App. 1975).  But that is only one measure of damages.  An owner of a rental unit may be able to recover "the amount of rental lost," and others may be awarded damages for the "value of the loss of use" even if there is no "set … monetary measure of their loss of use."  *Id.*; *see also Meakin v. Dreier*, 209 So. 2d 252, 254 (Fla. Dist. Ct. App. 1968) (permitting damages where property was used for pleasure purposes and plaintiff did not incur monetary costs associated with the loss).  Proving such claims will demand significantly more time and effort at trial than proving the home's square footage and address.

---

[3] The CNBM and BNBM Entities separately seek certification for an immediate appeal of the Court's Findings of Fact and Conclusions of Law Relating to the June 9, 2015 Damages Hearing, and specifically challenge the Court's remediation damages formula.  In the event they prevail on that front and remediation damages must be calculated on an individual basis, the Court's Rule 23(b)(3) predominance analysis cannot survive.  But, for the reasons discussed in this subsection, even if the Court's remediation damages formula is affirmed on appeal, the Court's analysis still does not comport with Rule 23(b)(3)'s predominance requirement.

At a minimum, there is a substantial ground for disagreement as to whether "[p]laintiffs' damage claims [will] focus almost entirely on facts and issues specific to individuals rather than the class as a whole." *O'Sullivan*, 319 F.3d at 738.  If the remediation claims will not predominate, "class certification is inappropriate."  *Id*. at 745.

### C.   There Is Substantial Ground For A Difference Of Opinion About Whether Common Questions Can Predominate Over Individualized Questions Without Considering Differences Among The Governing Law Of Multiple States.

Even if it were permissible to hive off one issue for classwide treatment and say that it predominates, the Court's predominance analysis still was infected by a critical error about which reasonable jurists could differ.  Specifically, in reaching its conclusion, the Court did not address substantial state-law variations among the damages claims—and for that reason, the Fifth Circuit likely would conclude that this class certification ruling cannot stand.

The Fifth Circuit has been absolutely clear:  "In a diversity class action, … *inherent in the predominance inquiry* is a determination of which states' substantive laws will apply to the claims.  This is because if multiple states' laws apply and those laws vary, the variations may impact whether common issues of law and fact predominate among the class members."  *Cole*, 484 F.3d at 724 (emphasis added).  Before maintaining a class action, therefore, plaintiffs "must … 'provide an "extensive analysis" of state-law variations to reveal whether these pose "insuperable obstacles."'"  *Id.* (quoting *Spence v. Glock, GmbH*, 227 F.3d 308, 313 (5th Cir. 2000)).  A district court abuses its discretion when it fails to "properly consider how variations in state law affect predominance," *Castano*, 84 F.3d at 742, 752, or certifies a class without having been provided "a sufficient basis for a proper choice of law analysis," *Spence*, 227 F.3d at 316.

There is substantial ground for difference of opinion about whether either requirement was or could be satisfied here.  The PSC presented no argument identifying—much less

analyzing—state-law differences.  Instead, it simply brushed the showing aside, branding it a mere "manageability issue" without offering any authority to justify its approach.  *See* Rec. Doc. 20652-2 at 23.  Nor did the Order & Reasons explain how invoking "manageability" forgives any inquiry into state-law variations.  The Order & Reasons notes Moving Defendants' manageability arguments, *see* Rec. Doc. 20740 at 11, but does not explain how the significant state-law variations can be overcome.  *Cf. Castano*, 84 F.3d at 742 (finding district court abused its discretion where it "conducted a cursory review of state law variations" and ignored "defendants' arguments concerning variations").  And, indeed, it is clear (as the brief supporting class decertification made clear, Rec. Doc. 20624-3 at 18-24) that this putative class incorporates numerous state-law variations that will result in different damages calculations.

The Court concluded, however, that "[t]he only variation is the *extent* of the damages suffered based on the square footage of the involved property," and that "[t]his variation does not prevent class certification."  Rec. Doc. 20740 at 14.  But the differences among the various applicable state laws either have nothing to do with square footage, or place different limits on recovery notwithstanding square footage.

For instance, the different governing state laws place different limits on Plaintiffs' potential recovery for property damage.  In some states—including Florida and Virginia— Plaintiffs may not recover damages for repair costs that exceed the diminution in the property's fair market value.[4]  Other states apply significant exceptions to that approach.  In Louisiana and California, for instance, plaintiffs are generally barred from recovering repair costs in excess of the diminution in fair market value, unless they can show "personal reasons" to restore the home.

---

[4] *See 7-Eleven, Inc. v. Dep't of Envtl. Quality*, 590 S.E.2d 84, 101 (Va. Ct. App. 2003); *Grossman Holdings Ltd. v. Hourihan*, 414 So. 2d 1037, 1039-40 (Fla. 1982); *see also Gerodetti v. Broadacres, Inc.*, 363 So. 2d 265, 267-68 (Miss. 1978).

*Roman Catholic Church of Archdiocese of New Orleans v. Louisiana Gas Serv. Co.*, 618 So. 2d 874, 879 (La. 1993); *Orndorff v. Christiana Cmty. Builders*, 217 Cal. App. 3d 683, 687 (Cal. Ct. App. 1990).

State laws also impose different requirements for proving damages.  The Order & Reasons says that damages for all Plaintiffs will be determined according to a formula based on square footage.  But that is not the uniform rule among the various applicable state laws, and certainly there is a basis for difference of opinion on this critical point.  Louisiana law, for instance, imposes different proof requirements depending on whether the repair already has occurred.  *See, e.g.*, *Volkswagen of Am., Inc. v. Robertson*, 713 F.2d 1151, 1169 (5th Cir. 1983) ("Damages may be predicated on estimation only when the loss has not been repaired.  If the damaged property has been restored to its former condition by repair, the proper basis for assessing the damage is the repair bill." (quoting *Lambert v. Allstate Ins. Co.*, 195 So. 2d 698, 700-01 (La. Ct. App. 1967))).  But other state laws applicable to the proposed class reject the use of repair costs as a measure of damages altogether.  Instead, they look to "[d]iminution in market value [as] the proper measure of damages for real property."  *MFC P'ship v. Foster*, 1986 WL 740398, at *6 (Va. Circ. Ct. July 16, 1986) (*citing Younger v. Appalachian Power Co.*, 202 S.E.2d 866, 868 (Va. 1974) ("When diminution in market value can be reasonably ascertained, that is the appropriate measure of damages.")).

Finally, there is not even uniformity about whether Plaintiffs can recover remediation damages at all.  Whether they can will depend on whether the governing state has rejected the economic loss doctrine.  In the majority of states Plaintiffs are barred from recovering in

products-liability tort cases for purely economic damages.[5]  Certain other states embrace a
modified form of the economic loss doctrine, under which plaintiffs may recover pure economic
loss only if they can show that they were endangered by the defendant's tortious conduct.[6]
Finally, a minority of states permit recovery for pure economic loss.[7]

These critical variations among the different state laws that apply to different class
members are essential to the analysis.  And there is no authority to suggest—and neither
Plaintiffs nor the Order & Reasons cited any—that these variations in calculating damages may
be ignored as irrelevant to predominance.  *In re Deepwater Horizon*, *cited in* Rec. Doc. 20740 at
14, is not to the contrary; there, the Fifth Circuit specifically observed that "the class members'
claims arise under federal law rather than state law," so variations in state law could not
undermine the predominance of common questions.  739 F.3d 790, 814 (5th Cir. 2014).

At a minimum, reasonable minds can differ over whether state-law variations had to be
considered here in assessing predominance.

## III.     An Immediate Appeal Would Materially Advance This Litigation.

The Order & Reasons contemplates that the parties will move forward with a process of
calculating damages under a square-footage-based formula, with bellwether trials presumably to

---

[5] *See, e.g.*, *Lloyd Wood Coal Co. v. Clark Equip. C*o., 543 So. 2d 671 (Ala. 1989); *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*, 110 So. 3d 399, 407 (Fla. 2013); Miss. Code Ann. § 11-1-63; *State Farm Mut. Auto. Ins. Co. v. Ford Motor Co*., 736 So. 2d 384 (Miss. Ct. App. 1999); *Clevenger and Wright, Co. v. A.O. Smith Harvestore Prods., Inc*., 625 S.W.2d 906 (Mo. Ct. App. 1981); N.J.S.A. § 2A:58C-1; *Alloway v. Gen. Marine Indus., L.P.*, 695 A.2d 264 (N.J. 1997); *Moore v. Coachmen Indus., Inc*., 499 S.E.2d 772 (N.C. Ct. App. 1998); *Foster Wheeler Envíresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 678 N.E.2d 519 (Ohio 1997); *Kennedy v. Columbia Lumber and Mfg. Co.*, 384 S.E.2d 730 (S.C. 1989); *Ritter v. Custom Chemicides, Inc*., 912 S.W.2d 128 (Tenn. 1995); *JCW Elecs., Inc. v. Garza*, 257 S.W.3d 701 (Tex. 2008).

[6] *See, e.g.*, *Salt River Project Agric. Improvement & Power Dist. v. Westinghouse Elec. Corp*., 694 P.2d 198 (Ariz. 1984), *abrogated on other grounds by Phelps v. Firebird Raceway, Inc.*, 111 P.3d 1003 (Ariz. 2005); *Jimenez v. Superior Court*, 58 P.3d 450 (Cal. 2002); O.C.G.A. § 51-1-11; *Vulcan Materials Co. v. Drilltech, Inc*., 306 S.E.2d 253 (Ga. 1983); *Am. Fire & Casualty Co. v. Ford Motor Co*., 588 N.W.2d 437 (Iowa 1999); M.C.L. § 600.2945(c); *Niebarger v. Universal Coops., Inc*., 486 N.W.2d 612 (Mich. 1992).

[7] La. Rev. Stat. Ann. § 9:2800.53(5); *De Atley v. Victoria's Secret Catalogue, LLC*., 876 So. 2d 112 (La. Ct. App. 2004); *Kaltman v. All Am. Pest Control, Inc*., 706 S.E.2d 864 (Va. 2011).

follow.  But given serious questions about whether the Fifth Circuit will agree that the class was properly maintained, the substantial resources that will be expended during that process may be for naught.  *See, e.g.*, *Jenkins v. Raymark Indus., Inc.*, 109 F.R.D. 269, 288 (E.D. Tex. 1985) (immediate appeal "may materially advance the termination of the litigation by approving or disapproving of this Court's certification of the class and the proposed scheme of a class action … phase on state of the art and punitive damages issues and mini-trial phase on individual exposure and actual damages").  Allowing the Fifth Circuit to review the Order now would materially advance the litigation and avoid the significant waste of time and money that otherwise will likely result.  At the same time, it would not prejudice Plaintiffs because Moving Defendants are not seeking a stay in the interim.

## CONCLUSION

For the foregoing reasons, this Court should grant the Motion under 28 U.S.C. § 1292(b), expressly find that all three requirements are met under § 1292(b), and amend the Court's April 21, 2017 class certification order to certify the order for appeal.

Dated: May 22, 2017

15

Respectfully submitted,

*/s/ L. Christopher Vejnoska*

L. Christopher Vejnoska (CA Bar No. 96082)
Ian Johnson (CA Bar No. 208713)
Andrew Davidson (CA Bar No. 266506)
Jason Wu (CA Bar No. 279118)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105
Tel:  415-773-5700
Email: cvejnoska@orrick.com
         ijohnson@orrick.com
         adavidson@orrick.com
         jmwu@orrick.com

Ewell E. Eagan, Jr. (LA Bar No. 5239)
Donna Phillips Currault (LA Bar No. 19533)
Alex B. Rothenberg (LA Bar No. 34740)
GORDON, ARATA, MONTGOMERY, BARNETT, MCCOLLAM, DUPLANTIS & EAGAN, LLC
201 St. Charles Avenue, 40th Floor
New Orleans, LA 70170-4000
Tel: (504) 582-1111
Email: eeagan@gordonarata.com
         dcurrault@gordonarata.com
         arothenberg@gordonarata.com

James L. Stengel (NY Bar No. 1800556)
Xiang Wang (NY Bar No. 4311114)
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY, 10019
Tel:  212-506-5000
Email: jstengel@orrick.com
         xiangwang@orrick.com

Eric A. Shumsky (D.C. Bar No. 477926)
ORRICK, HERRINGTON & SUTCLIFFE LLP
Columbia Center
1152 15th Street NW
Washington, D.C. 20005
Tel: 202-339-8400
Email: eshumsky@orrick.com

*Counsel for Moving Defendants*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the above and foregoing CNBM AND BNBM ENTITIES'

MEMORANDUM IN SUPPORT OF THEIR MOTION TO CERTIFY AN IMMEDIATE

APPEAL FROM THE COURT'S ORDER DENYING THEIR MOTIONS TO DECERTIFY

THE CLASS (§ 1292(b) MOTION #2) and accompanying documents have been served on

Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by

U.S. mail and e-mail and upon all parties by electronically uploading the same to File & Serve in

accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the

Clerk of Court of the United States District Court for the Eastern District of Louisiana by using

the CM/ECF System, which will send a notice of electronic filing in accordance with the

procedures established in MDL 2047, on May 22, 2017.

Respectfully submitted,

*/s/ L. Christopher Vejnoska*
L. Christopher Vejnoska