UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION<br><br>**THIS DOCUMENT RELATES TO:**<br>*Germano v. Taishan Gypsum, 09-cv-6687*<br>*Gross v. Knauf Gips KG, 09-cv-6690*<br>*Wiltz v. BNBM, 10-cv-361*<br>*Amorin v. Taishan Gypsum, 11-cv-1672*<br>*Amorin v. Taishan Gypsum, 11-cv-1395*<br>*Amorin v. Taishan Gypsum, 11-cv-1673*[1] | MDL No. 2:09-md-2047<br><br>SECTION L<br><br>JUDGE ELDON E. FALLON<br><br>MAGISTRATE JUDGE<br>JOSEPH C. WILKINSON, JR. |

**CNBM AND BNBM ENTITIES' MEMORANDUM IN SUPPORT OF THEIR MOTION TO CERTIFY AN IMMEDIATE APPEAL FROM THE COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW RELATED TO THE JUNE 9, 2015 DAMAGES HEARING (§ 1292(b) MOTION #3)**

---

[1] This Court's April 21 Order resolving the issue of class damages states that it relates to "ALL CASES"; however, class damages are relegated to the class, which was not defined to include all cases in this MDL.

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................ 3

I. THE COURT'S DAMAGES FOFCOL PRESENTS CONTROLLING QUESTIONS OF LAW. .................................................................................... 3

II. THERE ARE SUBSTANTIAL GROUNDS FOR A DIFFERENCE OF OPINION AS TO WHETHER A COURT MAY USE THE RESULTS OF STATISTICALLY UNREPRESENTATIVE TRIALS TO BIND PARTIES IN SUBSEQUENT PROCEEDINGS. ................................................................... 4

III. AN IMMEDIATE APPEAL OF THE COURT'S DAMAGES FOFCOL WOULD MATERIALLY ADVANCE THE LITIGATION. ...................................... 10

CONCLUSION ........................................................................................................................... 11

CERTIFICATE OF SERVICE ................................................................................................... 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Blair v. Equifax Check Servs., Inc.*,
    181 F.3d 832 (7th Cir. 1999) ...................................................................................................4

*In re Chevron U.S.A., Inc.*,
    109 F.3d 1016 (5th Cir. 1997) .......................................................................................2, 6, 7, 8

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
    No. 09-md-2047, 2011 WL 2443693 (E.D. La. June 14, 2011) .................................................5

*Cimino v. Raymark Indus., Inc.*,
    151 F.3d 297 (5th Cir. 1998) .........................................................................................1, 6, 7, 8

*Clark-Dietz & Assocs.-Eng'rs, Inc. v. Basic Constr. Co.*,
    702 F.2d 67 (5th Cir. 1983) .......................................................................................................4

*Couch v. Telescope Inc.*,
    611 F.3d 629 (9th Cir. 2010) .....................................................................................................3

*Crutchfield v. Sewerage & Water Bd.*,
    829 F.3d 370 (5th Cir. 2016) .................................................................................................2, 9

*Garner v. Wolfinbarger*,
    430 F.2d 1093 (5th Cir. 1970) ...................................................................................................3

*In re Katrina Canal Breaches Consol. Litig.*,
    258 F.R.D. 128 (E.D. La. 2009).................................................................................................9

*Parklane Hosiery Co. v. Shore*,
    439 U.S. 322 (1979)...................................................................................................................6

*Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*,
    100 F. App'x 296 (5th Cir. 2004) ..............................................................................................4

*Reese v. BP Expl. (Alaska) Inc.*,
    643 F.3d 681 (9th Cir. 2011) .....................................................................................................5

*Rico v. Flores*,
    481 F.3d 234 (5th Cir. 2007) .....................................................................................................3

*United States v. Louisiana Generating LLC*,
    No. 09-cv-100, 2012 WL 4588437 (M.D. La. Oct. 2, 2012)......................................................3

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

**Statutes**

28 U.S.C. § 1292(b) ............................................................................................1, 2, 3, 4, 10, 11

**Rules**

Fed. R. Civ. P. 23 ...................................................................................................................1

**Other Authorities**

Eldon E. Fallon et al., *Bellwether Trials in Multidistrict Litigation*,
    82 Tul. L. Rev. 2323 (2008) ............................................................................................6

16 Wright & Miller, Fed. Prac. & Proc. Juris. § 3930 (3d ed.) .......................................................4

Defendants CNBM Co., BNBM Group, and BNBM PLC jointly submit this memorandum in support of their motion for an order certifying the Court's April 21, 2017 Findings of Fact and Conclusions of Law Related to the June 9, 2015 Damages Hearing ("Damages FOFCOL") for appeal pursuant to 28 U.S.C. § 1292(b).

## INTRODUCTION

The Court has made clear that future proceedings in this MDL turn on a single damages formula: $105.91 per square foot. That now-critical formula will be applied to every single dwelling at issue in the class. So central is this one number that it also served to justify the decision to reaffirm class certification. Remediation is said to be the key to the case, and predominance under Rule 23 was said to have been established because that same formula will be applied everywhere.

That formula, however, rests upon critical legal defects—which are, at a minimum, subject to substantial dispute, and which must be resolved immediately before proceeding to damages assessments and trials that could be overturned on appeal at the cost of great delay and expense.

As the Court knows, the formula derives from the damages findings in *Germano*. By accepting the use of the PSC's formula in this litigation, the results of those trials will be extrapolated to conclusively determine damages relating to other homes, offices, and buildings across the country. The Fifth Circuit has questioned whether such extrapolation is ever permissible. *See Cimino v. Raymark Indus., Inc.*, 151 F.3d 297, 318 (5th Cir. 1998) (denying that Fifth Circuit cases "suggest that representative bellwether verdicts could properly be used to determine individual causation and damages for other plaintiffs"). This uncertainty makes the Court's preclusive use of the results in *Germano*, as embodied in the PSC's formula, appropriate for immediate review and resolution.

Furthermore, even if the Fifth Circuit were to agree that the results of past trials can be used to resolve untried, related claims in this way, it has suggested that courts may do so only when the individually tried claims are representative of the broader class of claims: "[B]efore a trial court may utilize results from a bellwether trial for a purpose that extends beyond the individual cases tried, it must, prior to any extrapolation, find that the cases tried are representative of the larger group of cases or claims from which they are selected." *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1020 (5th Cir. 1997). Although the *Germano* trials have been referred to as representative bellwethers, they were anything but representative, given that they involve seven single-family properties from the same suburban area of Virginia.

Moreover, beyond asserting that they were representative, the Court performed no analysis confirming that fact, let alone the statistical analysis mandated by the Fifth Circuit. *See id.* at 1019-20 (inferring damages for untried cases requires rigorous analysis based on the science of inferential statistics and requires taking account of sample size and other relevant variables). In the context of mass claims of property damage, the Fifth Circuit has explained that representative variables include age, size, structure, and location, as they bear upon causation and damages. *Compare Crutchfield v. Sewerage & Water Bd.*, 829 F.3d 370, 376 (5th Cir. 2016), *with* Rec. Doc. 20741 at 27 (asserting that variations among homes "will ultimately make no significant difference in the cost of repair").

Each of these issues merits immediate review. As the Court itself acknowledged, the arguments are "compelling," in part because they address underlying issues that are "sui generis." Rec. Doc. 20741 at 45. They thus present precisely the sort of open questions § 1292(b) was designed to resolve. This Court should certify these questions so that the Fifth

2

Circuit may weigh in on these novel issues. And there would be no harm to Plaintiffs by doing so given that Moving Defendants are not requesting a stay in the interim.

Accordingly, the CNBM and BNBM Entities respectfully request that this Court amend the Damages FOFCOL to certify it for immediate appeal pursuant to 28 U.S.C. § 1292(b) by expressly stating that all three requirements of § 1292(b) are satisfied. *See, e.g.*, *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010).

## ARGUMENT

### I. The Court's Damages FOFCOL Presents Controlling Questions of Law.

An order is subject to immediate appeal under § 1292(b) when it involves a controlling question of law; there exists a substantial ground for difference of opinion; and an immediate appeal would materially advance the litigation. *See Rico v. Flores*, 481 F.3d 234, 238 (5th Cir. 2007). A question is controlling when "reversal of the order would terminate the action" or has the "potential to have some impact on the course of the litigation." *United States v. Louisiana Generating LLC*, No. 09-cv-100, 2012 WL 4588437, at *1 (M.D. La. Oct. 2, 2012); *see Garner v. Wolfinbarger*, 430 F.2d 1093, 1097 (5th Cir. 1970) ("Review under § 1292(b) is available where decision on an issue would affect the scope of the evidence in a complex case, even short of requiring complete dismissal.").

The legal viability of the remediation formula is a controlling issue because it is the linchpin of future proceedings in the case. It both determines how the litigation will proceed, and provides the justification for class certification. When the Court adopted a formulaic approach to remediation, it reasoned that there is no meaningful variation among the properties. Rec. Doc. 20741 at 27-31. And that same reasoning supplies the basis for the Court's conclusion that remediation damages are common among class members, *id.*, which also is the sole common issue supporting certification, Rec. Doc. 20740 at 16-18. Accordingly, if the decision to adopt

3

this formula from unrepresentative trials and extrapolate it in preclusive fashion across the MDL was impermissible, there is no common issue and, *a fortiori*, no predominance. *Cf. Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*, 100 F. App'x 296, 297 (5th Cir. 2004) ("[t]he necessity of calculating damages on an individual basis, by itself, can be grounds for not certifying a class"). Decertifying the class will undoubtedly affect the course of the litigation due to the "dramatic effect … the grant or denial of class status [has] in undercutting the plaintiff's claim or inducing the defendant to capitulate." *Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 834-35 (7th Cir. 1999) (expressing concern that "[c]lass certifications … have induced judges to remake some substantive doctrine in order to render the litigation manageable" and that "some district judges may be tempted to use the class device to wring settlements from defendants whose legal positions are justified but unpopular").

The questions here are also questions of law. Issues that do not "appear to be merely fact-review questions" are appropriate for resolution under § 1292(b). *See Clark-Dietz & Assocs.-Eng'rs, Inc. v. Basic Constr. Co.*, 702 F.2d 67, 69 (5th Cir. 1983). Indeed, even "summary-judgment rulings [that] depend more on questions of law than investigation of the record for genuine issues," properly fall within the scope of § 1292(b). 16 Wright & Miller, Fed. Prac. & Proc. Juris. § 3930 (3d ed.). And that plainly is the case here. Whether it is appropriate to derive a formula from seven trials without determining that they are representative, and whether it is appropriate to extrapolate that formula to other cases in binding fashion, requires no serious inquiry into the facts.

## II. There Are Substantial Grounds For A Difference Of Opinion As To Whether A Court May Use The Results Of Statistically Unrepresentative Trials To Bind Parties In Subsequent Proceedings.

A substantial ground for difference of opinion exists if "the circuits are in dispute on the question and the Court of Appeals of the circuit [encompassing the district court] has not spoken

4

on the point ... or if novel and difficult questions of first impression are presented." *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, No. 09-md-2047, 2011 WL 2443693, at *3 (E.D. La. June 14, 2011) (alterations in original).  "In addition, a party may argue that there is a substantial ground for difference of opinion based on the divergent application of a legal standard." *Id.*; *see also Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) ("A substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed.").

The Court recognized that its remediation formula extrapolates based on the damages determinations pertaining to the seven properties at issue in *Germano*.  Rec. Doc. 20741 at 6, 44-47.  But reasonable minds can differ as to whether Fifth Circuit law *ever* permits such extrapolation and, even if so, whether such extrapolation requires the use of a statistically representative sample set.[2]

First, the Fifth Circuit could reject outright the Court's decision to resolve Plaintiffs' damages claims using a formula based on these earlier verdicts.  The propriety of binding litigants based on how related claims were resolved (i.e., based on bellwether trials) is highly dubious even in cases where the individually litigated claims are statistically representative of the remaining claimants.  As this Court itself has recognized, "[a]ppellate courts have been skeptical of" attempts to treat "the trial of representative claims," such as those in *Germano*, as

---

[2] Initially, the Court stated that the *Germano* trials would only have "a preclusive effect on those properties which are the subject of the hearing." Rec. Doc. 576. Thus, they were not intended to serve as bellwether trials. However, the Court later embraced the approach of the PSC's expert, George Inglis, who utilized the *Germano* damages determination as the starting portion for his remediation formula. Specifically, Inglis averaged together the two general contractor bids given to the seven *Germano* homeowners to remediate each of the seven *Germano* properties, which yielded a figure of $86 per square foot. Rec. Doc. 20741 at 24-25. He then tweaked that number to include, for instance, yearly cost adjustments. *Id.* Notwithstanding the Court's earlier recognition that the *Gemano* findings would apply only to those seven trials, it accepted Inglis' reliance on them as "a reliable benchmark estimate for the costs of remediation." Rec. Doc. 20741 at 43.

5

having "a binding effect on the consolidated cases of related claimants."  Eldon E. Fallon et al., *Bellwether Trials in Multidistrict Litigation*, 82 Tul. L. Rev. 2323, 2331 & n.27 (2008).  The Fifth Circuit has likewise rejected efforts to "suggest that representative bellwether verdicts could properly be used to determine *individual* causation and damages for other plaintiffs." *Cimino*, 151 F.3d at 318 (emphasis in original).  Thus, notwithstanding the Fifth Circuit's discussion of representative trials in *In re Chevron U.S.A., Inc.*, 109 F.3d 1016 (5th Cir. 1997), it has been unwilling to bless their use to determine other claimants' damages awards.  *See Cimino*, 151 F.3d at 318-19.

   This is because the use of such trials raises Seventh Amendment and Due Process Clause concerns.  To comply with the Seventh Amendment, a "trial plan [must] include a litigated determination … whether, *as to each individual plaintiff*, [the allegedly offending] product was a cause of his complained-of condition and, if so, the damages that plaintiff suffered as a result." *Id.* at 314 (emphasis added).  Extrapolating damages based on earlier cases is highly problematic because the only jury to have "spoke[n] to actual damages … [will have] received evidence only of the damages to the particular plaintiffs before them …and were not called on to determine, and did not determine or purport to determine, the damages of any other plaintiffs or group of plaintiffs."  *Cimino*, 151 F.3d at 320.  That is, the widespread use of a formula based on earlier determinations threatens to deprive Defendants of a litigated determination as to each plaintiff.

   Moreover, due process precludes "binding [a judgment] on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard."  *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n.7 (1979).  But that is precisely the effect of treating the damages formula derived from the *Germano* trials as preclusive:  It imposes upon CNBM, BNBM Group, and BNBM, none of which were parties to *Germano*, the damages determination from that case.

6

For these reasons, uncertainty surrounds the question whether the Fifth Circuit would uphold *any* individual damages calculation derived from extrapolating the earlier verdicts; because of that uncertainty, further review is warranted.

Second, the Fifth Circuit could determine that even if bellwether claims might be used in some circumstances, their use here is improper because the individually litigated claims are not sufficiently representative of those that remain unresolved. To the extent the Fifth Circuit has suggested it might be willing to entertain the use of bellwether trials to resolve claims other than those tried, the pre-*Cimino* Fifth Circuit dictum discussing that possibility is quite clear about the showing that would be required. For a trial to be used "for a purpose that extends beyond the individual cases tried," a court must "find that the cases tried are representative of the larger group of cases or claims from which they are selected." *Chevron*, 109 F.3d at 1020. A finding of representativeness is not based on mere professional experience, Rec. Doc. 20741 at 29, but "must be based on competent, scientific, statistical evidence," *Chevron*, 109 F.3d at 1020. Consistent with the statistical nature of this inquiry, it is necessary for the Court's planned use of bellwethers to account for all relevant variables and for there to be "a sample of sufficient size so as to permit a finding that there is a sufficient level of confidence that the results obtained reflect results that would be obtained from trials of the whole." *See id.*; *see also id.* at 1019 (representative members must be randomly selected, and of sufficient size to achieve the requisite statistical significance); *Cimino*, 151 F.3d at 309 (discussing statistical findings).

There is a substantial basis for a difference of opinion as to whether an adequate showing has been made that the *Germano* trials are sufficiently representative to justify their use as preclusive bellwethers (i.e., in determining the amount due to the remaining plaintiffs whose damages claims have not been individually litigated). The first problem with their use is sample

size. The PSC's expert devised their formula for remediation based exclusively on seven selected properties from the *Germano* trial, Rec. Doc. 2380 at 106-08. Thus, the sample size the PSC seeks to use here—7 trials out of 3,000 claims, i.e., about 0.2% of claims—is far smaller than what the Fifth Circuit has suggested might be appropriate. In *Cimino*, the plan the Fifth Circuit *rejected* involved a full trial on 160 out of 2,288 claims—7%. *See* 151 F.3d at 309. In *Chevron*, the plan called for 30 trials out of the 3,000 claimants—or 1%—and the Fifth Circuit rejected it. 109 F.3d at 1018-19. Reasonable jurists could disagree about whether a formula based on such a small portion of the claims could provide a statistically significant estimate of remediation costs.

Not only few in number, the cases on which the formula is based were not *selected* in a fashion that comports with the sense of statistically significant representation described by the Fifth Circuit.[3] No one has argued—much less did the Court conclude—that the *Germano* properties are representative of the remaining dwellings in the litigation. Nor could anyone reasonably have done so. The seven *Germano* properties were largely single-family residences from a single geographic area (Norfolk, VA). Rec. Doc. 20741 at 25. That does not constitute a statistically representative sample given that the MDL involves homes that are spread out across the country and range in terms of structure (from condos and mobile homes to multifamily dwellings, churches, and industrial complexes), class of construction (e.g., economy, average, custom, luxury), type of residence (e.g., one-story, two-story, three-story, bi-level), building configuration (e.g., detached, townhome, semi-detached), and number of living areas. Rec. Doc. 18877-3 at 4-5.

---

[3] In addition, the Fifth Circuit might be troubled that the PSC chose all seven trials that served as the basis for the formula. Even under the plan that the Fifth Circuit held to be defective in *Chevron*, the defendants had an opportunity to balance out plaintiffs' selections. 109 F.3d at 1017.

In related contexts, other judges have thought it necessary to take variables like these into account. As Judge Duval noted in the context of a proposed class action that similarly concerned property damage, differences among properties cannot be set aside; "residential structures … can vary significantly parcel to parcel, block to block." *In re Katrina Canal Breaches Consol. Litig.*, 258 F.R.D. 128, 135 (E.D. La. 2009). That is because, as suggested here, they "have differing values based upon construction materials, architectural style, neighborhood location, size, age, and condition of property. *Unique structures would also deserve their own individualized evaluation.*" *Id.* (emphasis added). Such an individual-property-based approach was necessary even though the plaintiffs argued—just as they have here—that individualized assessments would be "much too burdensome." *Id.* at 132-33. The court declined to certify a class, reasoning that "[t]he varying types of property damage that Plaintiffs seek in this class action create numerous individual issues." *Id.* at 133. Likewise, the Fifth Circuit recently explained that "individualized evidence related to the age, size, structure, location, and damage of each affected property" precluded class certification. *Crutchfield*, 829 F.3d at 376. Accordingly, at least some courts have considered such variations across plaintiffs to be a relevant consideration and have been unwilling to set them aside.

The Court thought otherwise here. It adopted a one-size-fits-all formula based on square footage. It did not attempt to adjust for the fact that the formula was ultimately derived from a small sample containing only limited variation across potentially relevant variables. And the Court did not otherwise try to adjust the formula to take into account these and other relevant variables such as ceiling height, fit, and finish. To avoid concerns about representative sampling and to justify adopting a square-footage formula as the sole variable for extrapolating costs, *see* Rec. Doc. 20741 at 43, the Court explained that "the bulk of the [remediation] costs is in nearly

9

uniform demolition of the drywall and replacement of standard building materials—differences in finish from home to home add little variability to the total damages estimate." Rec. Doc. 20741 at 27.  To the extent variations exist, the FOFCOL goes on to say, they "present minimal cost variation in the final total remediation damages estimate." *Id.*  Against this backdrop of courts considering as relevant such geography- and property-based variations, and the need for individualized damages determinations, reasonable jurists may disagree about whether the formula here, and the sample on which it is based, sufficiently accounts for nationwide variation so as to offer a statistically significant and meaningful way to estimate the damages of the remaining claims.

The question whether, and in what circumstances, statistically unrepresentative sample sets may be used to bind future litigants merits immediate review.  Indeed, the Court itself recognized that these arguments are, at least "[i]n the abstract," "compelling."  Rec. Doc. 20741 at 45.  And it went on to characterize the issues, as presented in this context, as "sui generis."  *Id.*  Accordingly, the decision to use a supposedly bellwether-based formula, and extrapolate it in binding fashion to apply to thousands of individual claims, presents just the sort of "novel and difficult questions of first impression" that are appropriate for § 1292(b) review.

**III.    An Immediate Appeal Of The Court's Damages FOFCOL Would Materially Advance The Litigation.**

The questions presented here, concerning the preclusive extrapolation of a damages formula, are at the heart of assessing damages in this case.  And this same formula will drive the class proceedings going forward.  The Court has laid out a process for assessing remediation damages—presumably to be followed by trials on damages issues other than remediation—that turns entirely on acceptance of the formula.  If the Fifth Circuit holds that the legal requirements for creating or extrapolating this formula have not been met, the proceedings will have been for

naught. Hundreds if not thousands of damages assessments will have to be unwound, as well as the subsequent trials on issues other than remediation. In the meantime, even if final judgments can be rendered—which turns on, *inter alia*, what happens to all the other individual non-remediation damages claims—no claimants likely will be paid with such a weighty appellate issue hanging over the litigation. It is far more efficient then to resolve the propriety of the formula now—before matters proceed any further—than wait years to find out that it all must be redone. Resolution of these issues would materially advance the litigation and would pose no threat to Plaintiffs given that Moving Defendants are not requesting a stay.

## CONCLUSION

For the foregoing reasons, this Court should grant the Motion under 28 U.S.C. § 1292(b), expressly find that all three requirements are met under § 1292(b), and amend the Court's April 21, 2017 findings of fact and conclusions of law related to the June 9, 2015 damages hearing to certify the order for appeal.

Dated: May 22, 2017

Respectfully submitted,

/s/ L. Christopher Vejnoska

| | |
|---|---|
| L. Christopher Vejnoska (CA Bar No. 96082)<br>Ian Johnson (CA Bar No. 208713)<br>Andrew Davidson (CA Bar No. 266506)<br>Jason Wu (CA Bar No. 279118)<br>ORRICK, HERRINGTON & SUTCLIFFE LLP<br>The Orrick Building<br>405 Howard Street<br>San Francisco, CA  94105<br>Tel:  415-773-5700<br>Email: cvejnoska@orrick.com<br>ijohnson@orrick.com<br>adavidson@orrick.com<br>jmwu@orrick.com | Ewell E. Eagan, Jr. (LA Bar No. 5239)<br>Donna Phillips Currault (LA Bar No. 19533)<br>Alex B. Rothenberg (LA Bar No. 34740)<br>GORDON, ARATA, MONTGOMERY, BARNETT, MCCOLLAM, DUPLANTIS & EAGAN, LLC<br>201 St. Charles Avenue, 40th Floor<br>New Orleans, LA 70170-4000<br>Tel: (504) 582-1111<br>Email: eeagan@gordonarata.com<br>dcurrault@gordonarata.com<br>arothenberg@gordonarata.com |
| James L. Stengel (NY Bar No. 1800556)<br>Xiang Wang (NY Bar No. 4311114)<br>ORRICK, HERRINGTON & SUTCLIFFE LLP<br>51 West 52nd Street<br>New York, NY, 10019<br>Tel:  212-506-5000<br>Email: jstengel@orrick.com<br>xiangwang@orrick.com | Eric A. Shumsky (D.C. Bar No. 477926)<br>ORRICK, HERRINGTON & SUTCLIFFE LLP<br>Columbia Center<br>1152 15th Street NW<br>Washington, D.C. 20005<br>Tel: 202-339-8400<br>Email: eshumsky@orrick.com |

*Counsel for Moving Defendants*

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing CNBM AND BNBM ENTITIES' MEMORANDUM IN SUPPORT OF THEIR MOTION TO CERTIFY AN IMMEDIATE APPEAL FROM THE COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW RELATED TO THE JUNE 9, 2015 DAMAGES HEARING (§ 1292(b) MOTION #3) and accompanying documents have been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail and upon all parties by electronically uploading the same to File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on May 22, 2017.

                                */s/ L. Christopher Vejnoska*

                                L. Christopher Vejnoska (CA Bar No. 96082)
                                ORRICK, HERRINGTON & SUTCLIFFE LLP
                                The Orrick Building
                                405 Howard Street
                                San Francisco, CA  94105
                                Tel:  415-773-5700
                                Fax: 415-773-5759
                                Email: cvejnoska@orrick.com

                                *Counsel for Moving Defendants*