UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|                                                    |   |                            |
|----------------------------------------------------|---|----------------------------|
| IN RE: CHINESE MANUFACTURED DRYWALL                | : | MDL NO. 2047               |
| PRODUCTS LIABILITY LITIGATION                      | : | SECTION L                  |
|                                                    | : |                            |
|                                                    | : | JUDGE FALLON               |
|                                                    | : | MAGISTRATE JUDGE           |
| .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. | : | WILKINSON                  |

**THIS DOCUMENT RELATES TO:** ALL CASES

## ORDER AND REASONS

Before the Court is Plaintiff Counsel's Motion to Disqualify the Fee Committee, Strike its Allocation Recommendation, and Stay or Dismiss Proceedings Before the Special Master. R. Doc. 20735. The Court has reviewed the Motion and now issues this Order and Reasons.

**I.     BACKGROUND**

From 2005 to 2008, a housing boom coincided with the destruction caused by Hurricanes Katrina and Rita to sharply increase the demand for construction materials in the Gulf South and East Coast. In response, Chinese companies manufactured and sold to homeowners throughout the United States considerable quantities of gypsum wallboard which came to be known as "Chinese drywall." Homeowners experienced problems with the drywall. Specifically, the drywall emits various sulfide gases, damages structural mechanical and plumbing systems of the home, and damages other appliances in the home. The affected parties sued the entities involved in the manufacturing, importing, and installing the Chinese drywall. The cases multiplied and the Judicial Panel on Multidistrict Litigation ("MDL") declared the matter an MDL and transferred the cases to this Court. After a period of discovery, it became clear that there were two principal manufacturers: the Knauf Entities and the Taishan Entities. The Knauf Entities, along with the

related downstream defendants, entered into various settlement agreements, including the Global, Banner, and InEx Settlements. *See generally* http://www.laed.uscourts.gov/Drywall/Drywall.htm. In connection with the Knauf remediation settlement, Knauf agreed to pay reasonable administrative costs and an additional amount of $192,981,363.35 in attorney fees. The present motion relates to the allocation of these funds between common benefit and contract attorneys.

In Pretrial Order 28, the Court established guidelines for the efficient presentation of evidence to allow the Court to make the determination of attorneys' fees and reimbursement of litigation expenses, and subsequently an allocation from such an award. This process required all attorneys seeking fees in this litigation to submit detailed time records to the Court-appointed accountant, Phil Garrett. Mr. Garrett and his staff, including a paralegal, reviewed these time entries to ensure they were sufficiently detailed, accurate, and appropriate. The Court met monthly with Mr. Garrett and a representative from the Fee Committee to review these records.

Pretrial Order 28 also established a Fee Committee ("FC") to make an initial recommendation to the Court regarding the allocation of fees in this matter. In selecting the membership of the Fee Committee, the Court chose "individuals [who] have been involved since the beginning of the Chinese Drywall litigation and have performed significant roles in either or both the MDL and State Court litigation and are familiar with the work performed by common benefit counsel in all Chinese Drywall matters." Additionally, because of their significant involvement in the Chinese Drywall litigation, the Court has had ample opportunity to observe the competency and professionalism of these individuals, before they were appointed to serve on the Fee Committee.

The Fee Committee was then tasked with making a recommendation to the Court regarding the allocation of the global fee award between contract counsel and common benefit counsel. On

June 7, 2016, the Fee Committee made its initial recommendation to the Court. R. Doc. 20293. Upon receiving the recommendation, the Court posted it on its website for this case and instructed that any oppositions to the allocation motion be filed by June 28, 2016. R. Doc. 20304. A number of objections were received. On July 19, 2016, the Court appointed Special master Dan Balhoff to collect evidence, oversee limited discovery, and review objections to the Fee Committee's allocation motion. R. Doc. 20410. In connection with this appointment, Mr. Balhoff has mediated discovery disputes between common benefit and contract attorneys, presided over extensive depositions of fee committee members, as well as the Court-appoint CPA, Phil Garrett. He has also arranged an evidentiary hearing to take place May 31 and June 1, 2017, to provide objectors an opportunity to enter evidence regarding their respective positions into the record.

Primary Counsel, or the contract attorneys, have filed a motion to disqualify the Fee Committee in advance of the Special Master's evidentiary hearing. R. Doc. 20735. Essentially the contract attorneys argue that the Fee Committee is biased, and its recommendation is influenced by the fact that a majority of the Fee Committee members served as common benefit counsel. R. Doc. 20735. The contract attorneys argue the Fee Committee has taken an active role as a party in the fee dispute, which has undermined the transparency and impartiality of the process used to determine the fee allocation issue. R. Doc. 20735 at 2-3. Further, they aver that members of the Plaintiff's Steering Committee manipulated settlement discussions to prolong the settlement process and maximize the common benefit fee award. R. Doc. 20735 at 8-10. Contract counsel then take issue with specific expenses the Fee Committee has submitted to the Court-appointed CPA, and argue the Fee Committee has improperly used MDL funds for personal expenses. R. Doc. 20735 at 15-20. Finally, contract counsel argue that disqualification is warranted because of

what they perceive to be ex parte communications between the Court and members of the Fee Committee regarding the fee allocation. R. Doc. 20735 at 33-38.

## II. ANALYSIS

While the Court appreciates the objections of contract counsel, it finds contract counsel misunderstands the role of the Fee Committee's recommendation in the overall process which will ultimately lead to a decision on the fee allocation issue. At the core of this misunderstanding seems to be contract counsel's belief that the Court will view the Fee Committee's recommendation as more significant, or accord it more weight, than the position of contract counsel during the final determination of the fee award. This position is contrary to the procedure established by this Court.

As described in PTO 28, the Fee Committee was tasked with making a **recommendation** to the Court regarding the allocation of the fee award between common benefit and contract attorneys. This recommendation is but one of many positions the Court will consider in allocating the global fee award. Having received this recommendation, the Court sought input from contract attorneys, and asked them to object to the Fee Committee's recommendation. These objections were entered into the record, so that the Court can consider them when making the ultimate determination on this issue. After hearing from each group of attorneys, the Court appointed a Special Master to independently review these positions, collect additional evidence, and make an autonomous recommendation to the Court. In making this recommendation, the Special Master will not give any particular weight to the Fee Committee's recommendation, but will review the record in its entirety before reaching a decision.

At this point, the issue will come before the Court. In formulating its ruling on the fee allocation issue, the Court will consider all the evidence anew, including the Fee Committee recommendation, the objections of the contract attorneys, the recommendation of the Special

4

Master, and the evidence of time submissions gathered and reviewed by Phil Garrett. Only after considering all this evidence will the Court be prepared to issue a ruling on the fee allocation issue.

As contract counsel emphasize in their motion, the Court must conform to "traditional judicial standards of transparency, impartiality, procedural fairness, and ultimate judicial oversight" in allocating attorney fees. *In re High Sulphur I*, 517 F.3d at 234. That requires creating a sufficient record, making sufficient factual findings, considering the time worked and the *Johnson* factors, providing an opportunity to be heard to all applicants, and exercising independent judgment in allocating those fees rather than simply rubber-stamping a committee recommendation. As in previous MDLs, the Court has relied on these principles when formulating the process for determining fees in this litigation. *See, e.g., In re Vioxx Prod. Liab. Litig.*, 802 F. Supp. 2d 740, 772 (E.D. La. 2011).

Contrary to the arguments contract counsel make in their motion, the Fee Committee's recommendation will not receive any heightened weight in the Court's decision. The Fee Committee's recommendation, the Special Master's impartial report and recommendation, and the objections from contract attorneys will all be equally evaluated when allocating the global fee award between common benefit and contract counsel. Because the Court maintains the "responsibility to closely scrutinize the attorney fee allocation, especially when the attorneys recommending the allocation have a financial interest in the resulting awards," the Court finds it appropriate to deny the Motion of contract counsel. *High Sulfur I,* 517 F.3d at 227. The evidentiary hearing shall continue as scheduled in order to provide both common benefit and contract counsel a complete opportunity to submit evidence regarding the fee allocation before the Special Master, which will ultimately be reviewed by this Court.

## III. CONCLUSION

Therefore, for the reasons stated above,

**IT IS ORDERED** that Primary Counsel's Motion to Disqualify the Fee Committee, Strike Its Allocation Recommendation, and Stay or Dismiss Proceedings Before the Special Master and Request for Expedited Consideration, R. Doc. 20735, is **DENIED**.

New Orleans, Louisiana, this 24th day of May, 2017.

_____
UNITED STATES DISTRICT JUDGE