**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L JUDGE FALLON MAG. JUDGE WILKINSON |

**THIS DOCUMENT RELATES TO:**

*Germano v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.*, **Case No. 09-6687 (E.D. La.);**

*Gross v. Knauf Gips, KG*, **Case No. 09-6690 (E.D. La.);**

*Wiltz v. Beijing New Building Materials Public Limited Co.*, **Case No. 10-361 (E.D. La.);**

*Amorin v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.*, **Case No. 11-1672 (E.D. La.);**

*Amorin v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.*, **Case No. 11-1395 (E.D. La.); and**

*Amorin v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.*, **Case No. 11-1673 (E.D. La.).**

**PLAINTIFFS' STEERING COMMITTEE'S RESPONSE IN OPPOSITION TO TAISHAN'S MOTION TO AMEND THE ORDER DENYING CLASS DECERTIFICATION AND THE CLASS DAMAGES ORDER AND TO CERTIFY FOR INTERLOCUTORY APPEAL UNDER SECTION 1292(b)**

## I.    INTRODUCTION

Chinese drywall manufacturers Taishan Gypsum Co., Ltd. ("TG") and Tai'an Taishan

Plasterboard Co., Ltd. ("TTP") (collectively, "Taishan") are again attempting to further delay

these already chronically stalled proceedings.  These Defendants have filed a motion[1] to amend this Court's Findings of Fact & Conclusions of Law Related to the June 9, 2015 Damages Hearing[2] ("Class Damages Order"), as well as this Court's Order and Reasons denying Defendants' motions to decertify the Taishan class[3] ("Decertification Order"), in order to seek an immediate appeal of same to the Fifth Circuit pursuant to 28 U.S.C. § 1292(b).

At the same time, covering all bases, <u>Taishan also has filed a Notice of Appeal of the Class Damages Order pursuant to 28 U.S.C. § 1292(a)(1),[4] on the sole ground that the Court's ruling requiring that Taishan pay the costs associated with BrownGreer's assistance in verifying the square footage of properties on Class Plaintiffs' Spreadsheet constitutes an injunction.[5] Taishan's effort to get this Court's class rulings before the Appellate Court on that unrelated basis should not be sanctioned.  Class Plaintiffs never sought an injunction of any kind from the Court.  Moreover, Taishan never asked the Court to be relieved of its obligation to pay for BrownGreer's services (and never gave the Court an opportunity to do so), opting instead to proceed directly to the Appellate Court as an end-run around the rules.</u>

Class Plaintiffs have moved to dismiss the 1292(a)(1) appeal, arguing that no injunction exists in the Court's Class Damages Order.[6]  Taishan's depiction of the requirement that Taishan pay BrownGreer's costs associated with verification of square footage for properties listed on Class Plaintiffs' Spreadsheet as an injunction is erroneous.   If that requirement could be

---

[1] Rec. Doc. 20778.

[2] Rec. Doc. 20741.

[3] Rec. Doc. 20740.

[4] Rec. Doc. 20777; 5th Circuit Dkt. No. 17-30432.

[5] *See* Class Damages Order at 50.

[6] 5th Circuit Dkt. No. 17-30432, Rec. Doc. 8.

considered an injunction, then every order that requires anything at all of a party could be immediately appealed to an appellate court, which would violate the doctrine against piecemeal appeals. *See Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84 (1981) (Section 1292(a)(1) was intended as a limited exception to the final-judgment rule, and will be available only where appeal will permit litigants to challenge interlocutory orders of serious, perhaps irreparable, consequence); *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979) ("irreparable injury" is injury for which a monetary award cannot be adequate compensation); *Orange Cty. v. Hongkong & Shanghai Banking Corp.*, 52 F.3d 821, 826 (9th Cir. 1995), citing *Cohen v. Bd. of Trustees of the Univ. of Med. & Dentistry of New Jersey*, 867 F.2d 1455, 1464 (3d Cir. 1989) ("orders attaching security for a judgment ultimately to be rendered have been held not to fall under section 1292(a)(1), even though such orders have a significant impact on the parties whose property is affected"); *Rosenfeldt v. Comprehensive Accounting Serv. Corp.*, 514 F.2d 607, 609 (7th Cir. 1975) (an order granting a writ of attachment is not deemed to fall within § 1292(a)(1)).

The current 1292(b) motion filed by Taishan should not be adjudicated in a vacuum, but, rather, in light of the tortured history of these proceedings. Since the beginning of this litigation more than eight years ago, Taishan has sought to delay the prosecution of Chinese drywall claims first by ignoring the lawsuits against them, then by feigning ignorance of the American judicial system, deceiving the parties during jurisdictional discovery and briefing, and finally by engaging in contemptuous conduct before the Court. As has become their *modus operandi*, Taishan seeks assistance from the Court only when it will help their cause to delay the litigation and deny relief to thousands of homeowners suffering damages to their properties from Taishan's Chinese Drywall. Taishan filed the instant motion to certify for interlocutory appeal

the Class Damages Order and the Decertification Order, which, if granted, will further delay these proceedings.

Taishan's motive for filing the instant motion as another delay tactic is clear, particularly as the scheme of seeking an interlocutory appeal of the Class Damages Order and the Decertification Order using section 1292(b) is purely because Taishan failed to seek a timely appeal of the original class certification order[7] ("Class Certification Order") under Rule 23(f) – a failure which is all Taishan's own.  Moreover, statutory and case law is clear that what Taishan requests would have been more appropriately raised in a 23(f) appeal.

Finally, despite the procedural flaws in Taishan's motion, it also is lacking on its merits. The Court carefully assessed all of the issues and facts of this case pertaining to class certification and class damages and rendered an appropriate method for determining class damages.  Based on the Court's reasoning, there is no controlling question of law present in the Orders.

## II.    STATEMENT OF FACTS

This MDL is now in its ninth year of existence.  Class Plaintiffs have been waiting for more than eight years for their day in Court while Taishan deliberately sat on the sidelines of the litigation during the *Germano* proceedings, entered their appearance solely to contest jurisdiction, fired their counsel and fled the jurisdiction after losing in the Fifth Circuit (twice), and then sat on the sidelines again while the Court certified the Taishan class.  Now that the Court has entered its Class Damages Order and denied motions to decertify the class, Taishan seeks to further delay the already profoundly delayed proceedings to permit an immediate appeal

---

[7] *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2014 WL 4809520 (E.D. La. Sept. 26, 2014).

of the April 21, 2017 Class Damages Order and Decertification Order.  From the very outset of this litigation and continuing through to the current motion before this Court, Taishan's conduct in this litigation has been obstructive, contemptuous and deceitful.

Rather than answer the claims filed against it, Taishan initially chose to ignore these proceedings for over a year and allowed multiple default judgments to be entered, not only in *Germano* [Rec. Doc. 487], but also in other purported class actions in this MDL, including *Mitchell*[8] and *Gross*.[9]  Like Taishan, the parent companies CNBM Group, CNBM, BNBM Group, and BNBM ignored complaints properly served through the Hague Convention and also allowed multiple default judgments to be entered against them.[10]

Taishan has used our judicial system to avoid paying money judgment to homeowners as compensation for Taishan's defective products sold in the United States, and then walking away from the Court – "tak[ing] their ball and go[ing] home, so to speak" – "because they didn't get their way."[11]  Moreover, Taishan has consistently employed a litigation strategy which has included: purposefully ignoring this suit and the orders (and even the authority) of this Court, feigning a lack of understanding of the U.S. legal process, engaging and/or complying in the litigation only as a matter of last resort, and deceiving the parties and the Court throughout the litigation.  By way of example, *just some* of Taishan's dilatory and obstructive actions have included the following:

---

[8] *The Mitchell Co., Inc. v. Knauf Gips KG, et al.*, Case No. 09-4115 (E.D. La.) [Rec. Doc. 277].

[9] *Gross v. Knauf Gips KG, et al.*, 2:09-cv-06690 (E.D. La.) [Rec. Doc. 7302].

[10] *See* Rec. Docs. 487, 3013, 17814, 17815 (Taishan defaults); *see also* Rec. Docs. 17814, 17815 (TTP defaults); *Chinese Drywall*, 2014 WL 4809520 at *2-*3 (discussing default judgments against Taishan and its Affiliates and including chart of cases where these entities have been held in default).

[11] Transcript of MDL Status Conference, 1/22/2015 [Rec. Doc. 18276] at 20.

- TG purposefully ignored this suit and sat on the sidelines for over a year, until a default judgment was entered against it.[12]

- On June 10, 2010, the last day to timely do so, TG filed a Notice of Appeal of the Default Judgment in *Germano*, arguing – for the first time – that this Court lacked personal jurisdiction over it.[13]

- Once in the litigation, Taishan consistently responded to discovery in an evasive and incomplete manner.[14]

- Taishan caused an entire round of Rule 30(b)(6) depositions (of TG and TTP) to degenerate into "chaos and old night" – rendering the discovery "ineffective" – due at least in part to lack of knowledge and/or responsiveness of the deponents.[15]

- Taishan threatened to withdraw from the litigation in November of 2011, and had to deliberate on whether to produce witnesses for Rule 30(b)(6) depositions – eventually producing some witnesses (under threat of Court sanctions) and eventually "decid[ing] to continue to participate in the litigation."[16]

- Taishan's obstructive conduct resulted in the Court having to personally attend a second round of Rule 30(b)(6) depositions (of TG and TTP) in Hong Kong.[17]

- Taishan's representatives were evasive and/or deceitful in depositions, to the point where the Court found it necessary to instruct and warn one of the Taishan deponents.[18]

---

[12] *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 706 F. Supp. 2d 655, 659-60 (E.D. La. 2010). *See also* Proof of Service on Taishan in *Germano* [Rec. Doc. 1-7, Case No. 09-6687], 5/11/2010 Default Judgment [Rec. Doc. 3013].

[13] Rec. Doc. 3670. *See also* 7/17/2014 Contempt Order at p. 2 [Rec. Doc. 17869].

[14] *See, e.g.*, 1/12/2011 PSC's motion to compel Taishan [Rec. Doc. 6964], 2/9/2011 PSC's motion to compel Taishan [Rec. Doc. 7364], 5/3/2011 PSC's motion to compel Taishan [Rec. Doc. 8685], various other parties' motions to compel Taishan [Rec. Docs. 8695, 8755, 8758, 8768, 8768, 8792, 8805]. *See also* 9/9/2011 Order and Reasons regarding motions to compel [Rec. Doc. 10269].

[15] *See* 9/9/2011 Order and Reasons [Rec. Doc. 10269] at p. 5. *See also* 5/26/2011 Order [Rec. Doc. 9107].

[16] *See* 11/23/2011 & 11/30/3011 letters from Joe Cyr – prior counsel for Taishan [Plaintiffs' Reply to Defendants' Oppositions to Plaintiffs' Motion to Enforce the Court's July 17, 2014 Contempt Order and Injunction, Rec. Doc. 20680, Ex. 196, attached hereto for the Court's convenience as Exhibit "A"].

[17] 1/8/2016 FOFCOL from the 11/17/2015 hearing [Rec. Doc. 19959] at p. 4, ¶¶ 8-9.

[18] The Court stated to the deponent: "I am the Judge who will decide the issues in this case. One thing I do when I make that decision, I listen to the testimony and I evaluate the credibility of the truthfulness of the witnesses. I listen closely to what people say, and it's important for you to listen to the question and to answer the question, if you can. . . . Because if I get the impression that you are not answering the question intentionally, I will discount your testimony and not believe it." *See* Deposition of Peng Shiliang dated 1/11/2012 at 44:8-45:8 [Rec. Doc. 20680, Ex. 197, attached hereto for the Court's convenience as Exhibit "B"].

-   Taishan committed multiple discovery abuses relative to the whereabouts of Peng Wenlong and his documents/computers, necessitating an evidentiary hearing, and resulting in various findings, including that Taishan engaged in "discovery abuses warranting sanctions."[19]

-   Taishan's Chairman, Jia Tongchun, filed a false and/or misleading sworn declaration, to the point where it had to be "clarified" by a subsequent sworn declaration.[20]

Taishan has exhibited a pattern of obstructive, contemptuous and deceitful conduct.  In June of 2014, just after the Fifth Circuit Court of Appeals affirmed the Court's exercise of personal jurisdiction over TG and TTP, and just after the *Germano* judgment in favor of seven bellwether Plaintiffs became final, TG and TTP fired their counsel "immediately" and internally discussed "how to withdraw from the litigation."[21]  Moreover, true to their *modus operandi* in this litigation, when this Court ordered Taishan to appear in open court for a Judgment Debtor Examination on July 17, 2014,[22] Taishan <u>refused</u> to appear.[23]

Taishan's refusal to appear effectively declared its intention to no longer participate in these proceedings. This prompted the Court to enter the Contempt Order and Injunction "to protect the sanctity of its decrees and the legal process."[24]  Thereafter, Taishan ignored this

---

[19] 1/8/2016 FOFCOL from the 11/17/2015 hearing [Rec. Doc. 19959] at pp. 15-18, ¶¶46, 54, 60 & 66.

[20] *See* 8/31/2015 Sworn declaration of Jia Tongchun, stating in pertinent part at ¶ 3 that: "Mr. Peng voluntarily left the employment of TG in March 2014, to pursue another career at a company unrelated to TG, TTP, and to my knowledge … any BNBM or CNBM entity. Mr. Peng has never told me the name of the company where he currently works …" [Rec. Doc. 20680, Ex. 198 attached hereto for the Court's convenience as Exhibit "C"].  *See also* 9/16/2015 Sworn declaration of Jia Tongchun for Clarification and Supplementation [of August 31, 2015 declaration], stating in pertinent part that: "I know that Peng Wenlong ('Mr. Peng') is currently employed at Shenyang Taishi Rock Wool Co., Ltd. ('Shenyang') [which is owned by a company he has ownership in and which is a shareholder of TG] …" and Jia goes on to state that his prior 8/31/15 declaration gave a "misimpression" [Rec. Doc. 20680, Ex. 199, attached hereto for the Court's convenience as Exhibit "D"].

[21] Rec. Doc. 18196 at 7 (citing Privilege Log Item 143).

[22] Rec. Doc. 17774.

[23] *See* Contempt Order at p. 2 (emphasis in original); *see also* Rec. Doc. 17846.

[24] *Id*. at p. 3.

Court, ignored Plaintiffs' motion for certification of the Taishan class,[25] ignored Plaintiffs'
motion for a hearing to determine class damages,[26] ignored this Court's orders, and only
"returned" to this litigation in February of 2015.[27]

BNBM entered its appearance for the first time in this litigation and asked for a
continuance to prepare for the class damages hearing scheduled on February 12, 2015.[28]  After
requests from various parties, the Court continued the class damages hearing to April 28, 2015,
and then again to June 9, 2015.  The sole purpose of the hearing was to present testimony
regarding property damages.[29]  After the hearing and further briefing from the Plaintiffs and
Taishan,[30] this Court issued its Class Damages Order on April 21, 2017 and found that "Plaintiffs
have offered a reasonable and reliable measure (superior to any alternative) of the remediation
damages for the Taishan Properties with verified under air living square footage."  *Id.* at ¶ 92.
The Court further found:

> . . . relevant case law supports the appropriateness and reliability of
> the [Plaintiffs' expert's] remediation damages methodology . . .
> [and the Court found the] remediation methodology to be reliable,
> fair and reasonable estimate of aggregate remediation damages.
> The final determination of these damages shall be made pursuant
> to the subsequent set-offs and claims proceedings.

*Id.* at p. 50.  Finally, the Court warned that "[t]he alternative to estimating property damages on a
class-wide basis would be a series of costly (and wasteful), individualized mini-trials,

---

[25] Rec. Doc. 17999.

[26] Rec. Doc. 18086.

[27] Rec. Doc. 19959, at p. 5, ¶13.

[28] Rec. Doc. 18331.

[29] Rec. Doc. 20741.

[30] Rec. Docs. 18214, 18294, 18331, 18367, 18405, 18450, 18453, 18454, 18493, 18520, 18598, 19118, 20583, 20634.

inspections, and estimates that would not provide a meaningfully more reliable estimate for class remediation damages." *Id.*

Despite the thorough and well-reasoned findings by this Court on class damages, Taishan has filed the instant motion claiming that the issues surrounding class certification "are manifestly ripe for interlocutory appeal under 28 U.S.C. § 1292(b)" and the remediation process "will undoubtedly be lengthy and expensive and, candidly, dubious."[31]   Taishan consistently dragged its feet and engaged in obstreperous conduct for eight years, and then when there appeared some light at the end of the tunnel for Class Plaintiffs, Taishan fully invokes the privilege of being a litigant in the U.S. judicial system.   The purpose of Taishan's 1292(b) motion is clearly for the same effect – deferment (and denial) of justice to Class Plaintiffs. Taishan's motion should be denied.

## III.   <u>ARGUMENT</u>

Firmly established under federal jurisprudence is the policy against piecemeal appeals. *See Switzerland Cheese Association, Inc. v. Horne's Market, Inc.*, 385 U.S. 23, 24 (1966); *Baltimore Contractors, Inc. v. Bodinger*, 348 U.S. 176 (1955); 28 U.S.C. § 1291 (bestowing upon courts of appeals "jurisdiction of appeals from all <u>final</u> decisions of the district courts") (emphasis added).   Federal statute creates an exception to the final judgment rule and defines the jurisdiction of the Courts of Appeals to include specific types of interlocutory orders from which appeals may also be taken, *e.g.*, injunctions. *See* 28 U.S.C. § 1292(a). Under limited circumstances, "if a trial court enters an order from which an appeal is not permitted pursuant to 28 U.S.C. § 1292(a) . . . the court may grant 28 U.S.C. § 1292(b) certification, which would

---

[31] Defendant's Motion at p. 2-3.   Taishan has also appealed the Class Damages Order pursuant to 28 U.S.C. § 1292(a)(1).

allow the order to be appealed." *Henderson v. GATX Corp.*, 2012 WL 1191141, *1 (M.D. Fla. Apr. 10, 2012). The judiciary readily recognizes that "[a]ny appeal under this section is necessarily a deviation from the ordinary policy of avoiding 'piecemeal appellate review of trial court decisions which do not terminate the litigation.'" *Cardona v. General Motors Corp.*, 939 F. Supp. 351, 353 (3d Cir. 1996), quoting *United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 265 (*1982*).

The statute provides that:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b). Upon certification by the district court pursuant to § 1292(b), the Court of Appeals may, in its discretion, permit the appeal to be taken. *Id.* Application of 28 U.S.C. § 1292(b) is "subject to the judgment and discretion of [both] the district court and the court of appeals." *Tidewater Oil Co. v. United States*, 409 U.S. 151, 167 (1972). *See also McFarlin v. Conseco Servs.*, 381 F.3d 1251, 1259 (11th Cir. 2004) ("the court of appeals has discretion to turn down a § 1292(b) appeal. And we sometimes do so. The proper division of labor between the district courts and the court of appeals and the efficiency of judicial resolution are protected by the final judgment rule, and are threatened by too expansive use of the § 1292(b) exception to it.").

An immediate appeal of the Class Damages Order and the Decertification Order is not warranted in this case.

A.   **Taishan's Attempt to Seek an Untimely Appeal of the Class Certification Order under 28 U.S.C. § 1292(b), Is Inappropriate and Diminishes the Purpose of Federal Rule of Civil Procedure 23(f).**

Taishan was deliberately absent when this Court certified the Taishan class.  Taishan made a strategic decision to allow the class proceedings to go forward, by failing to timely appeal the Class Certification Order under Rule 23(f) of the Federal Rules of Civil Procedure.  Now, Taishan inappropriately attempts to appeal both the Class Damages Order and the Decertification Order through an interlocutory appeal under 28 U.S.C. § 1292(b).  Taishan should not be permitted to circumvent Rule 23(f)'s fourteen-day limitation through an appeal pursuant to 28 U.S.C. § 1292(b).

Rule 23(f) states "[a] court of appeals may permit an appeal from an order granting or denying class-action certification under this rule if a petition for permission to appeal filed with the circuit clerk within 14 days after the order is entered."  The Advisory Committee's Notes on the 1998 Amendment, when subdivision (f) became effective, distinguishes the appeals under Rule 23(f) and 28 U.S.C. § 1292(b) "in two significant ways."  First, Rule 23(f) does not require the district court to certify the certification ruling for appeal.  Second, unlike § 1292(b), Rule 23(f) does not require that the order involve "a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."  *See* 28 U.S.C. § 1292(b).

Moreover, the time period for seeking permission to appeal provides the courts with needed limitations by reducing "the risk that attempted appeals will disrupt continuing proceedings."  Fed. R. Civ. P. 23(f) advisory committee's notes (1998).  If Taishan is concerned,

as it now claims to be, about "fundamental Rule 23 issues,"[32] then it would have been sensible for them to be present in 2014, when this Court first considered class certification and then later when the Court certified the class, rather than waiting almost three additional years to contest class certification determinations.

Under much less egregious circumstances, in *Richardson Electronics, Ltd. v. Panache Broadcasting of Pennsylvania, Inc.*, 202 F.3d 957 (7th Cir. 2000), the Seventh Circuit Court of Appeals declined to permit the defendants to seek an interlocutory appeal of a class certification order under 28 U.S.C. § 1292(b), after they failed to timely seek permission to appeal same under Rule 23(f). The plaintiffs there brought suit against the manufacturers of electron power tubes (EPTs) "alleging that defendants were fixing prices and otherwise violating the federal antitrust laws." *Id.* at 958. The defendants requested, two months after certification, that the district court certify its order, and the district court granted the defendants' request. *Id.* The Seventh Circuit then denied the defendants' requested certification for interlocutory appeal under § 1292(b), finding the two month delay "inexcusably dilatory." *Id.*[33]

In so doing, the court considered the relationship between Rule 23(f) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1292(b). The plaintiffs and the defendants disagreed on "whether the legal and factual question common to the certified class of EPT users predominate over the individuals questions, so as to justify class treatment under Fed. R. Civ. P. 23(b)(2)."

---

[32] Defendant's Motion at p. 1.

[33] Rule 23(f) of the Federal Rules of Civil Procedure imposes a 14-day deadline from the date of the order sought to be appealed, while 28 U.S.C. § 1292(b) has no fixed deadline for seeking permission from the district court to appeal. *Id.* The appellate court noted in *Richardson*, "[t]here is not time limit in the statute or in any applicable rules for seeking the district judge's permission to appeal under 1292(b);" however, "a district judge should not grant an inexcusably dilatory request." *Id.*, citing *Weir v. Propst*, 915 F. 2d 283, 287 (7th 1990); *Ferraro v. Secretary of HHS*, 780 F. Supp. 978 (E.D.N.Y. 1992); *cf. Marisol v. Giuliani*, 104 F. 3d 524, 529 (2d Cir. 1996)). Here, Taishan filed its § 1292(b) motion <u>three years</u> after the class certification order, which is clearly and inexcusably late.

*Id*.  The court noted that while the question satisfied the criteria for a 28 U.S.C. §1292(b) appeal, "it fits much more neatly into Rule 23(f)." *Id*.  The court determined "when a class-certification order is an arguable candidate for a Rule 23(f) appeal, <u>the appellants may not use section 1292(b)</u> <u>to circumvent the [time] limitation in Rule 23(f)</u>." *Id*. at 959 (emphasis added).  The Appellate Court warned that "district judges should not . . . authorize appeal under 28 U.S.C. § 1292(b) when appeal might lie under Rule 23(f)." *Id*.  The Seventh Circuit anticipated a case where "a class-certification order is appealable under 1292(b) but not under 23(f)" and suggested the petitioner/appellant protect his rights "by seeking the district judge's permission to take a 1292(b) appeal at the same time that the appellant asks us to entertain his appeal under 23(f)." *Id*.

Other circuits, including the Fifth Circuit, have maintained the importance of not allowing parties to circumvent the deadline of Rule 23(f).  *Jenkins v. Bellsouth Corp.*, 491 F.3d 1288, 1291 (11th 2007), citing 5 James Wm. Moore, *et al.*, *Moore's Federal Practice* ¶ 23.88[2][c], at 23-365 (3d ed. 2006) ("If appeal were allowed after later motions, any litigant could effectively defeat the function of the 10-day limit by filing a motion to decertify at any point in the litigation and then requesting an interlocutory appeal from that ruling.").  The Fifth Circuit "has ruled that the [time] period in Rule 23(f) cannot be tolled or revived through an untimely motion for reconsideration, regardless of how the motion is styled." *Id*., citing *McNamara v. Felderhof*, 410 F.3d 277, 281 (5th Cir. 2005)).[34]  "[I]n enforcing the deadline of

---

[34] In *McNamara*, "petitioners did not file their Rule 23(f) petition within the [time period] after the district court entered its order [] denying class certification."  410 F.3d at 279-80.  Petitioners then asked the district court to modify its ruling under Rule 23(c)(1)(C).  *Id*.

> [T]o hold that – no matter how styled – a motion under Rule 23(c) is always distinct from a motion to reconsider would allow a party to subvert the [] time limit prescribed in Rule 23(f).  This in turn would permit a party to file a Rule

Rule 23(f), what counts ordinarily is the original order denying or granting class certification, not a later order that maintains the status quo." *Id*. This Court's Decertification Order maintains the *status quo* of class certification.

The same reasoning articulated in the above-mentioned cases applies here. Taishan waited <u>years</u> after class certification and a class damages trial before seeking to appeal the class certification under 28 U.S.C. § 1292(b). The delay is wholly unreasonable. The class certification was ripe for review in 2014 when Taishan was intentionally absent from this litigation and not, as the Defendants claim, after the Order & Reasons denying class decertification. If the Court were to amend its order to allow interlocutory appeal, the purpose of Federal Rule of Civil Procedure 23(f) would be greatly diminished.

**B.**    **There is No Controlling Question of Law as to Which There Is Substantial Ground for Difference of Opinion Regarding the Class Damages Order and Decertification Order.**

In creating a method for determining damages in class litigation, Rule 23 provides that district courts are permitted "to devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004). "Even wide disparity among class members as to the amount of damages does not preclude class certification and courts, therefore, have certified classes even in light of the need for individualized calculations of damages." *In re Deepwater Horizon*, 739 F.3d 790, 815 (5th Cir. 2014), quoting *Bell Atlantic Corp. v. AT&T Corp.*, 339 F.3d 294, 306 (5th Cir. 2003). This property damage class action involves only simple mathematical

---

23(c) motion and thereafter appeal any grant or denial within [the time limit], no matter how long after the district court initially ruled on the issue of class certification.

*Id*. at 281.

calculations of remediation damages (*i.e.*, cost of remediation per square foot X number of square feet involved).  This Court recognized that any variation in those damages could "be uniformly recognized by a square footage analysis established using a representative statistical sample."  *See* Class Damages Order at 33.  The Supreme Court held that the use of statistical evidence depends on the purpose it is being introduced and "on the elements of the underlying cause of action."  *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1046 (2016), quoting *Erica P. John Fund, Inc. v. Halliburton Co.,* 563 U.S. 804, 809 (2011).

Taishan argues, however, that *In re Chevron U.S.A., Inc.*, 109 F.3d 1016 (5th Cir. 1997), sets the standard for granting its requested interlocutory appeal since this Court's Order on Class Damages allegedly lacks the sufficient level of confidence in sample results and no inferences may be drawn from such results to form a basis for applying to class cases or claims.[35]

Taishan's dependence on *Chevron* is misplaced.  The court in *Chevron* observed that the applicability of the science of inferential statistics has long been recognized by the courts.  109 F. 3d at 1019-20, citing *Castaneda v. Partida*, 430 U.S. 482 (1977) (using statistical data to prove discrimination in jury selection); *Capaci v. Katz & Besthoff, Inc.*, 711 F.2d 647, 653-57 (5th Cir. 1983) (using census data in gender discrimination case); *Exxon Corp. v. Texas Motor Exchange, Inc.*, 628 F.2d 500 (5th Cir. 1980) (using statistical sampling in trademark infringement suit); *Ageloff v. Delta Airlines, Inc.*, 860 F.2d 379 (11th Cir.1988) (using evidence of life-expectancy tables to determine damages); *G.M. Brod & Co., Inc. v. U.S. Home Corp.*, 759 F.2d 1526, 1538-40 (11th Cir.1985) (using expert testimony as to profit projections based on industry norms); *United States v. 449 Cases Containing Tomato Paste*, 212 F.2d 567 (2d Cir.1954) (approving

---

[35] Defendants' Motion at p. 6, citing *In re Chevron*, 109 F. 3d at 1020.

inspector's testing of samples, rather than requiring the opening of all cases). The essence of inferential statistics is that one may draw inferences about the whole from a representative sample, but in order to fairly and reliably draw such an inference, the sample must be randomly selected and of sufficient size so as to be representative of the whole, in order to achieve confidence in the result. *Id.* at 1019-20.

In *Chevron*, the Fifth Circuit Court of Appeals recognized multiple hurdles in creating a basis for class damages where the pool of claimants was large and the type of claims were varied. First, the court recognized that, "[t]he mere fact that there are potentially some 3,000 claimants in and of itself complicates traditional dispute resolution." *Id.* at 1018. Secondly, "when large numbers of claimants assert both property damage claims and claims for personal injury as well as claims for injunctive relief, it removes any question that may linger regarding the complexity of the task visited upon the lawyers and the trial court." *Id.* (emphasis added). The court barred the district court from using the trial of 30 of the cases as bellwether cases or sample trials, because the bellwether cases were not a randomly selected or a large enough sample to ensure that the results of the sample trials would be representative of those that would be obtained from the trials of the whole 3000 cases. *Id.* at 1020-21.

While the instant matter has its own complications, this Court has assessed the issues and created an appropriate method for determining class damages based on simple mathematical calculations. In its Findings of Fact & Conclusions of Law Related to the June 9, 2015 Damages Hearing, the Court determined that the "appropriate scope of remediation includes: removal and disposal of all damaged and affected building components in the properties, replacement of all drywall" and replacement of a host of other items found within affected buildings. Rec. Doc. 20741 at ¶ 17. This Court carefully considered evidence from the *Germano* bellwether trial,

16

BrownGreer (the Court-appointed Settlement Administrator for the Knauf Settlement and Claims Administrator for the Global, Banner, and InEx Settlements), Plaintiffs' experts and Defendants' experts, in determining a benchmark for remediation damages of $89/square feet.  *See*, *generally*, *id*. at ¶¶ 18-56.

This Court cautioned that dealing with the homes on a case-by-case basis, "where liability has already been established would result in decades of delay and would vary with the passing of time."  *Id*. at ¶ 47.  This Court also concluded that any variation, "to the extent they exist in some outlier homes, present minimal cost variation in the final total remediation damages estimate."  *Id*. at ¶ 49.  Finally, this Court astutely concluded that because of "the unique circumstances surrounding Chinese drywall and the absence of efficient and appropriate alternatives, a formulaic method used to calculate remediation damages is fair and reasonable."  *Id*. at ¶ 55.

Moreover, calculating remediation damages on a class-wide basis is acceptable because the class is asserting property damage claims rather than personal injury claims.  The remedy for the defective drywall is uniform across the class: the Chinese drywall must be removed and replaced from all of the properties.  *Germano* FOFCOL, 29-31[36]; *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 706 F. Supp. 2d 655, 671 (E.D. La. 2010).  The only variation among the plaintiffs' property damage is the cost of remediation according to the under-air square footage of the property.  Therefore, a formulaic approach should be utilized.  *Id*.

In *Turner v. Murphy Oil USA, Inc.*, the plaintiffs filed actions against Murphy Oil alleging property damage from an oil tank spill post-Hurricane Katrina.  234 F.R.D. 597, 601-02.

---

[36] Rec. Doc. 2380.

The Eastern District Court of Louisiana granted the plaintiffs' Motion for Class Certification under Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.  *Id.*  The defendant argued the plaintiffs' claims did not meet Rule 23 commonality and predominance requirements because "Plaintiffs' homes and businesses received varying degrees of damage from the hurricane, and received different amounts of oil contamination."  *Id.* at 604-06.  Admittedly "[the p]laintiffs' claims will involve some individualized determinations regarding the amount of damage suffered," but "there are enough common issues regarding liability that class treatment would be appropriate under Rule 23."  *Id.* at 604.  The court established "the potential for bifurcation of the issues of liability and damages" to "address the [d]efendant's concern that individualized inquiries will be needed to determine damage amounts in these cases."  *Id.* at 606.

The court noted "[t]he central elements of the claim surround Murphy's conduct, and the only individualized inquiry would relate to the amount of [the p]laintiffs' damages."  *Id.* at 608. Further, "[t]he court also believes that the personal injury and mental anguish damages will not form a significant portion of the [p]laintiff's claims, which further supports a finding of predominance here."  *Id.* at 607 n.6.  The significant portion of the plaintiffs' claims is property damage and the plaintiffs "presented evidence that certain elements of their alleged damages may be assessed on a class-wide basis."  *Id.* at 607 n.5; *see also* Petition of Murphy Oil USA, Inc.'s Petition from an Order Certifying a Class Action, attached hereto as Exhibit "E."

In this case, only property damages are at issue.  There are no issues of liability or causation.  Class Damages Order at 32-33.  Distinct from many other class action cases, including Defendants' oft-cited *Chevron*, "each Taishan property owner suffered the same harm to their property and the same type of damages puts this case in contrast to cases where each plaintiff suffers a distinctly different *kind* of individualized wrong."  *Id*. (emphasis in original).

18

Taishan also argues that the Court's failure to consider state law variations in its Decertification Order raises a controlling question of law. First, class certification, as clearly laid out in case law, is not in and of itself a pure question of law. Class certification is soundly within the district court's discretion, and this decision is essentially a factual inquiry. *Vizena v. Union Pac. R.R. Co.*, 360 F.3d 496, 502-03 (5th Cir. 2004). "A party seeking class certification must affirmatively demonstrate his compliance with [Rule 23] – that is, he must be prepared to prove that there are <u>in fact</u> sufficiently numerous parties, common questions of law or fact, etc. [S]ometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original). "Implicit in this deferential standard is a recognition of the essentially factual basis of the certification inquiry and of the district court's inherent power to manage and control pending litigation." *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 836 (5th Cir. 2012), citing *Maldonado v. Ochsner Clinic Found.,* 493 F.3d 521, 523 (5th Cir. 2007); *In re Monumental Life Ins. Co.,* 365 F.3d 408, 414 (5th Cir. 2004). Therefore, if an immediate appeal were allowed, the Fifth Circuit would indeed have to review facts to assess whether class consideration was appropriate, and therefore this fails to meet this prong.

Further, this issue is a red herring as the state law variations are absent. The cases that Defendants cite to[37] raise the issue of predominance, which is a not present here as there has been a conclusive determination regarding causation and, as discussed above, the damages are

---

[37] *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 725-26 (5th Cir. 2007) (predominance requirement not satisfied in suit alleging that auto manufacturer breached express and implied warranties, considering significant variations in state law and multiple individualized legal and factual questions they presented); *Spence v. Glock, Ges.m.b.H.*, 227 F.3d 308 (5th Cir. 2000) (in not presenting a sufficient choice of law analysis plaintiffs failed to meet their burden of showing that common questions of law predominate); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 739 (5th Cir. 1996) (district court erroneously certified the class and deferred consideration of how state law fraud claims would affect predominance).

comparable to warrant class treatment.  The Court holds that "[t]he only remaining issue was the assessment of damages, which could be calculated on an aggregate basis."  Decertification Order at 7, citing Rec. Doc. 18028 at 22.[38]  Nonetheless, the Court also explains state-law variation is not relevant to the class certification because Plaintiffs met Rule 23(b)(3) requirements for numerosity, commonality, typicality, adequacy of representation, predominance and superiority. *Id*. citing Rec. Doc. 18028 at 23-29.

> Chinese drywall causes offending odors in homes and is corrosive to metals, requiring total property remediation.  The Article III and due process concerns present in [*In re Fibreboard Corp.*, 893 F.2d 706 (5th Cir. 1990) and *Cimino v. Raymark Indus., Inc.*, 15 F.3d 297 (5th Cir. 1998)][39] are not present in MDL 2047. Accordingly, this Court rejects Defendants' suggestion that it is ignoring its *Erie* obligation under Article III to "remain faithful" to the applicable law of each state in these diversity cases by accepting Plaintiffs' proposed formulaic damages plan.  *See* [*In re Fibreboard Corp.*, 893 F.2d 706, 711 (5th Cir. 1990)].  <u>Given that liability and the scope of remediation have been conclusively determined, awarding solely remediation damages to claimants whose homes require remediation due to the presence of Taishan drywall does not present a conflict with the *Erie* doctrine.</u>"

---

[38] "[T]he Court's analysis of [Plaintiffs' Omnibus Motion for Class Certification] is greatly simplified by the status of the Taishan Defendants as default judgment defendants.  Because of the default judgment, liability is conclusively established, and <u>the Court need only determine whether it is appropriate to certify a class under Rule 23 to determine class-wide damages</u> pursuant to Rule 55(b)(2)(B)."  Rec. Doc. 18028 at 22 (emphasis added).

[39] Taishan attempts to connect *Cimino*, arguing that the case holds that damages are a state law issue, separate from causation; however, the procedural history that led the *Cimino* court to that conclusion is significantly different from that which is present in this case.  In *Cimino*, "there was neither any sort of trial determination, let alone a jury determination, nor even any evidence, of [asbestos-related] damages. The district court considered that these deficiencies were adequately compensated for by awarding each . . . plaintiff who alleged an asbestos-related disease an amount of actual damages equal to the average of the awards made in . . . the same category of disease." *Cimino*, 151 F.3d at 319.  The district court ignored Texas substantive law which holds recoverable damages are "wage losses, pain and suffering, and other elements of compensation suffered by each of the several particular plaintiffs as individuals." *Id*. at 319-20.  *See also Robertson v. Monsanto Co.*, 287 Fed. Appx. 354 (5th Cir. 2008) (issues of causation and damages were highly individualized where plaintiffs had various property damage, economic injuries, medical expenses, etc. as result of release of ammonia from chemical manufacturing plant). This is purely a property damage class, and unlike *Cimino* and *Roberston*, the damages suffered from Chinese drywall will not vary by duration or intensity nor are there variable personal injury damages.

Class Damages Order at 37-38, n.5 (emphasis added).  Therefore, the Court has put to rest any issues regarding state law variation, and Taishan has failed to present any controlling question that would give rise to certifying the Class Damages Order for interlocutory appeal.

**C.    An Immediate Appeal from the Class Damages Order and the Decertification Order will not Materially Advance the Ultimate Termination of the Litigation.**

Taishan's last argument is that certifying the Decertification Order for immediate appeal will materially advance the ultimate termination of this litigation.  It is possible that an immediate appeal of the Decertification Order may materially advance the termination of the class litigation in the event of disapproval of this Court's certification of the class; however, it will not end the litigation of each individual Plaintiff's damages claims against Taishan (liability and jurisdiction over Taishan have already been established conclusively), and moreover, such a determination cannot be considered in a bubble.  In fact, courts find that this issue goes hand-in-hand with the issue of whether there is a controlling issue of law.  "Although technically the question of whether there is a controlling issue of law is distinct from the question of whether certification would materially advance the ultimate termination of the litigation, in practice the two questions are closely connected."  *SEC v. Credit Bancorp, Ltd.*, 103 F. Supp. 2d 223, 227 (S.D.N.Y. 2000), citing *Duplan Corp. v. Slaner,* 591 F.2d 139, 148 n.11 (2d Cir. 1978); *Public Interest Research Group of New Jersey, Inc. v. Hercules, Inc.,* 830 F. Supp. 1549, 1557 (D.N.J. 1993); Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3930 (1996).

As discussed, *supra*, there is no controlling question of law; therefore, the merits of certifying either Order for immediate appeal are lacking.  Section 1292(b) appeals "are permitted only when there is a substantial difference of opinion about a controlling question of law <u>and</u> the

resolution of that question will materially advance, not retard, ultimate termination of the litigation. Those requirements have not been demonstrated." *Clark-Dietz & Assocs.-Engineers, Inc. v. Basic Const. Co.*, 702 F.2d 67, 69 (5th Cir. 1983) (emphasis added). *See City of Almaty, Kazakhstan v. Ablyazov*, No. 15-CV-5345, 2017 WL 1424326, at *3 (S.D.N.Y. Apr. 20, 2017) (having determined no controlling question of law to warrant certification, Court did not address whether certification would materially advance the ultimate termination of the litigation).

Second, Taishan's main argument regarding materially advancing the ultimate issue is that an immediate appeal will curtail serious time and resources of needless expenses if it should turn out that the Court's rulings are reversed.  "[The] requirements reflect the fact that the institutional efficiency of the federal court system is among the chief concerns underlying Section 1292(b)." *Harch Hyperbarics, Inc. v. Martinucci*, No. Civ. A. 09-7467, 2010 WL 4665923, at *5 (E.D. La. Nov. 9, 2010), citing *Credit Bancorp.,* 103 F. Supp. 2d at 227. Incongruously, Taishan's present concern for conserving time and resources is disingenuous to its previous dealings in this litigation.  Taishan has consistently dragged its feet and then when these Defendants deem it suitable, fully invoked the privilege of being a litigant in the U.S. judicial system.  This purpose of this motion is clearly for the same effect - deferment. Defendants argue that the Court should certify for interlocutory appeal its Class Damages and Decertification Orders, so Defendants may appeal – which will, in fact, further delay proceedings just as Defendants have been doing for the past 9 years.

IV.    **CONCLUSION**

For the reasons set forth above, Taishan's Motion to Amend the Order Denying Class Decertification and the Class Damages Order in order to seek an immediate appeal of those rulings pursuant to 28 U.S.C. 1292(b) should be denied.

Dated: June 15, 2017                    Respectfully Submitted,

                                        By:  /s/ Leonard A. Davis
                                             Russ M. Herman (La Bar No. 6819) (on the brief)
                                             Leonard A. Davis (La Bar No. 14190) (on the brief)
                                             Stephen J. Herman (La Bar No. 23129)(on the brief)
                                             Herman, Herman & Katz, LLC
                                             820 O'Keefe Avenue
                                             New Orleans, LA 70113
                                             Phone: (504) 581-4892
                                             Fax: (504) 561-6024
                                             ldavis@hhklawfirm.com
                                             *Plaintiffs' Liaison Counsel MDL 2047*

                                             Arnold Levin (on the brief)
                                             Sandra L. Duggan (on the brief)
                                             Nicola F. Serianni (on the brief)
                                             Levin Sedran & Berman
                                             510 Walnut Street, Suite 500
                                             Philadelphia, PA 19106
                                             Phone: (215) 592-1500
                                             Fax: (215) 592-4663
                                             alevin@lfsblaw.com
                                             *Plaintiffs' Lead Counsel MDL 2047*

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Robert Becnel, Jr.
Becnel Law Firm, LLC
425 W. Airline Highway, Suite B
Laplace, LA 70068
Phone: (985) 536-1186
Fax: (985) 536-6445
rbecnel@becnellaw.com

Peter Prieto
Podhurst Orseck, PA
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
pprieto@podhurst.com

Bruce William Steckler
Steckler LLP
12720 Hillcrest Road, Suite 1045
Dallas, TX 75230
Phone: (972) 387-4040
Fax: (972) 387-4041
bruce@stecklerlaw.com

Ervin A. Gonzalez (deceased)[*]
Patrick Montoya
Colson, Hicks, Eidson
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
patrick@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
  Echsner & Proctor, PA
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
The Lambert Firm
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@thelambertfirm.com

Jerrold Seth Parker
Parker Waichman, LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

---

[*] Sadly, on June 8, 2017, Mr. Gonzalez passed away. Plaintiffs' Lead and Liaison Counsel will be filing a motion to substitute in his place as a PSC member Mr. Gonzalez's partner Patrick Montoya.  Mr. Montoya has been involved with this litigation for many years.

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Myers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

James Robert Reeves
Reeves & Mestayer, PLLC
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@attorneys4people.com

Christopher Seeger
Seeger Weiss, LLP
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5002
dan@wbmllp.com

Richard J. Serpe
Law Offices of Richard J. Serpe
Crown Center, Suite 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com

Victor M. Diaz, Jr.
V.M. Diaz and Partners, LLC
119 Washington Ave., Suite 402
Miami Beach, FL 33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

Gerald E. Meunier
Gainsburgh, Benjamin, David,
  Meunier & Warshauer, LLC
2800 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2800
Phone:  (504) 522-2304
Fax:  (504) 528-9973
gmeunier@gainsben.com

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W., Suite  650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Anthony D. Irpino
IRPINO LAW FIRM
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 15th day of June, 2017.

Respectfully Submitted,

BY: /s/ Leonard A. Davis
       Leonard A. Davis
       Herman, Herman & Katz, LLC
       820 O'Keefe Avenue
       New Orleans, LA 70113
       Phone: (504) 581-4892
       Fax: (504) 561-6024
       ldavis@hhklawfirm.com

       Plaintiffs' Liaison Counsel MDL 2047