# BRUNO & BRUNO

& YOU. SINCE 1950     TRIAL LAWYERS

JOSEPH M. BRUNO*
STEPHEN P. BRUNO
JOSEPH M. BRUNO, JR

STEPHANIE MAY BRUNO*
MELISSA A. DEBARBIERIS
DANIEL A. MEYER**
DON D. REICHERT
BRANDON M. BENNETT

OF COUNSEL
ROBERT J. BRUNO
ROBERT B. REES

* ALSO LICENSED TO PRACTICE IN TEXAS
** ALSO LICENSED TO PRACTICE IN MISSISSIPPI

REPLY TO (PLEASE CHECK)
NEW ORLEANS  X
COVINGTON ____

April 12, 2017

**VIA EMAIL AND PORTAL UPLOAD**
BrownGreer, PLC, Chinese Drywall Settlement Administrator
Attention: Jacob S. Woody (JSWOODY@BROWNGREER.COM)
P.O. Box 25401
Richmond, Virginia 23260

> Re:    Claimant Name: Patricia Harvey, Claim ID: 23767, Claim Type: Foreclosure Claim
>
> *In Re: Chinese Manufactured Drywall Products Liability Litigation,* United States District Court for the Eastern District of Louisiana, MDL No. 2047, Section L

Dear Chinese Drywall Settlement Administrator:

On January 11, 2017, as a result of the documentation submitted by Claimant[1], the Settlement Administrator for the Chinese Drywall Settlement Program issued an official Notice regarding the above referenced Other Loss Foreclosure Claim determining that the claim was eligible for the maximum eligibility amount (the "Resolution Offer") of $10,000.00.[2]

Section 4 of Pre-Trial Order No. 29 in MDL No. 2047 is titled *Procedure When a Claimant Rejects a Resolution Offer (for all claims except a Bodily Injury Claim)* and outlines the procedure when a claimant rejects a resolution offer for all claims except a bodily injury claim. The appeal deadline regarding this claim was stayed until April 12, 2017.

Although the above referenced Resolution Offer is for the maximum amount that the Settlement Administrator is authorized to make for an Other Loss Foreclosure Claim, Claimant respectfully submits this renewed claim for a Special Master Award because the Resolution Offer is not sufficient to fully compensate the Claimant for the reasons explained below.

---

[1] Please see attached Exhibit "A". (Documentation submitted to the Chinese Drywall Settlement Administrator by email). Please also see documentation uploaded to the Chinese Drywall Settlement Program Portal for this claim.
[2] Page two (2) of Pre-Trial Order No. 29 in MDL No. 2047, for Foreclosure Claims, states that "[t]he Settlement Administrator is authorized to make a Resolution Offer up to $10,000 for each eligible Foreclosure claim."



855 BARONNE ST., NEW ... 504-525-1335
70325 HIGHWAY 1077, SUITE ... • TEL 985-236-1335
TOLL FREE 1-800-966- ... OLAW.COM

**EXHIBIT**
"B"

In 1988, Patricia Harvey ("Ms. Harvey")[3] rented the property located at 3217 Upperline Street, New Orleans, Louisiana 70125. Subsequently, in 1994 Ms. Harvey became the owner of 3217 Upperline Street, New Orleans, Louisiana 70125. At this residence, Ms. Harvey raised her two children, including Lawrence Harvey ("Mr. Harvey").

On March 9, 2005, Mr. Harvey purchased 3217 Upperline Street, New Orleans, Louisiana 70125 from Ms. Harvey for $185,000.00. Mr. Harvey made a down payment of $37,000.00 and borrowed $148,000.00.[4] Between March 2005 and July 2005, Mr. Harvey did a complete renovation of his residence. Mr. Harvey moved back into his residence in July 2005 until August 2005, when the devastation of Hurricane Katrina completely destroyed Mr. Harvey's residence. Due to Hurricane Katrina, Ms. Harvey (who lived with Mr. Harvey) and Mr. Harvey lost everything.

In January 2006, after losing everything, Mr. Harvey and Ms. Harvey returned to New Orleans from Texas to begin renovation to Mr. Harvey's residence. Mr. Harvey found a contractor to start the renovation and paid the contractor $44,000.00 to gut out his residence and to elevate the residence's foundation. Mr. Harvey also spent at least another $110,000.00 to renovate his residence after Hurricane Katrina.[5] This process was completed in March 2007, when the residence appraised at $238,000.00. Mr. Harvey immediately moved in his residence and started his new beginning. Subsequent to Mr. Harvey moving in, Ms. Harvey moved in the residence and started her new beginning in New Orleans with her son.

Tragically, in 2010, Mr. Harvey and Ms. Harvey discovered the presence of defective Chinese Drywall at 3217 Upperline Street, New Orleans, Louisiana 70125. Due to the presence of the defective Chinese Drywall in the residence, Ms. Harvey's and Mr. Harvey's health began to decline. As a result of living in a contaminated residence, Ms. Harvey and Mr. Harvey were forced to move out of the residence located at 3217 Upperline Street, New Orleans, Louisiana 70125 and secured a new residence located at 3128 Upperline Street, New Orleans, Louisiana 70125. Mr. Harvey paid a monthly rent of $1,000.00 for the new residence.[6] This placed an undue financial burden on Ms. Harvey and Mr. Harvey and they could no longer afford to pay the mortgage on the home containing Chinese Drywall, located at 3217 Upperline Street, New Orleans, Louisiana 70125 as well as the rent for the new residence. In addition, due to health problems caused by Chinese Drywall, Ms. Harvey was unable to work, which placed a further financial burden on them. Mr. Harvey also had to miss work due to health problems caused by Chinese Drywall, which placed a further financial burden on the family.

As a result of this, Mr. Harvey lost his residence when it foreclosed in August of 2013. As explained above, this residence was the residence of the Harvey's since 1988. Pursuant to the

---

[3] Claimant Patricia Harvey is the Attorney-in-Fact ("Agent") for her son Lawrence Harvey. Lawrence Harvey was the owner of 3217 Upperline Street, New Orleans, Louisiana 70125 from March 9, 2005 until August 2013 when the property was foreclosed.

[4] Please see Settlement Statement, attached hereto as Exhibit "B". Please also see Mortgage, attached hereto as Exhibit "C".

[5] Please see check numbers 505, 534, 540, and 546 made payable to Mill Construction, attached hereto as Exhibit "D".

[6] Please see attached Residential Lease Agreement and Receipts, attached hereto as Exhibit "E". To date, Mr. Harvey still lives at 3128 Upperline Street, New Orleans, Louisiana 70125 and pays a monthly rent.

Special Master Other Loss Review Methodology, "[a] Claimant requesting an Award pursuant to this category [Foreclosure] must prove the amount of Lost Equity for the Affected Property." According to the Special Master Other Loss Review Methodology, Lost Equity equals purchase price minus initial mortgage plus capital improvements plus payments on principal. Using this formula, Claimant's Lost Equity would be as follows:

Lost Equity = $185,000 (purchase price) - $148,000 (initial mortgage) + $154,000 (capital improvements) + $13,983.12 (payments on principal)[7]. This would make Claimants' Lost Equity $204,983.12.

For the reasons explained above[8], the Resolution Offer is not sufficient to fully compensate the Claimant. Therefore, Claimant respectfully asks the Special Master to award Claimant $204,983.12 for this claim. Please do not hesitate to contact me with any questions and/or if any additional information is needed.

With kindest regards, I remain,

Very truly yours,

/s/ Joseph M. Bruno

Joseph M. Bruno
BRUNO & BRUNO, L.L.P.
Attorney for Claimant

---

[7] Please see approximate amortization prepared by Whitney Bank based on the terms of Mr. Harvey's note, attached hereto as Exhibit "F". Mr. Harvey made payments from March 2005 to August 2012.
[8] Please see additional documentation to support Claimant's claim, attached hereto as Exhibit "G".

## Don Reichert

| | |
|---|---|
| **From:** | Don Reichert |
| **Sent:** | Monday, September 19, 2016 5:15 PM |
| **To:** | 'Jake Woody' |
| **Cc:** | CDWQuestions |
| **Subject:** | RE: Activity in Case 2:09-md-02047-EEF-JCW In Re: Chinese-Manufactured Drywall Products Liability Litigation Order |
| **Attachments:** | 3.24.14 correspondence from Lawrence Harvey.pdf; 6.11.13 Ocwen Loan Servicing, LLC Reinstatement Quote.pdf; 6.17.13 Ocwen Loan Servicing, LLC Account Statement.pdf; 8.1.13 Property Tax Search.pdf; 9.28.15 Ocwen Loan Servicing, LLC Foreclosure details correspondence.pdf; Cash Sale.pdf; Chinese Drywall Foreclosure Affidavit.pdf; General Power of Attorney.pdf; HomeEq Servicing 2009 Account Statement.pdf; Whitney Statement 2008.pdf; Whitney Statement 2009.pdf |

Mr. Woody,

Please see attached the following documentation for Ms. Harvey's claim: (1) March 24, 2014 correspondence from Mr. Harvey; (2) June 11, 2013 Ocwen Loan Servicing, LLC Reinstatement Quote; (3) June 17, 2013 Ocwen Loan Servicing, LLC Account Statement; (4) August 1, 2013 Property Tax Search; (5) September 28, 2015 Ocwen Loan Servicing, LLC Foreclosure details correspondence; (6) Cash Sale; (7) Chinese Drywall Foreclosure Affidavit; (8) General Power of Attorney; (9) HomeEq Servicing 2009 Account Statement; (10) Whitney Statement 2008; and (11) Whitney Statement 2009. Please do not hesitate to contact me with any questions and/or concerns. Additionally, I never received a list of what is need for ▇▇▇▇▇▇▇. Can you please forward to me as soon as your able to?

Thanks,
Don

**From:** Jake Woody [mailto:jswoody@browngreer.com]
**Sent:** Friday, August 19, 2016 3:49 PM
**To:** Don Reichert <don@brunobrunolaw.com>
**Cc:** CDWQuestions <CDWQuestions@browngreer.com>
**Subject:** RE: Activity in Case 2:09-md-02047-EEF-JCW In Re: Chinese-Manufactured Drywall Products Liability Litigation Order

Let me check on ▇▇▇▇▇▇▇. I think Ms. Harvey had submitted some of the pre-requisite documents (proof of CDW, etc), but ▇▇▇▇▇▇▇ list may be longer. I'll send it on Monday.

It would be good to get these documents as soon as you can get your hands on it, but I don't have a deadline from the Court.

**From:** Don Reichert [mailto:don@brunobrunolaw.com]
**Sent:** Friday, August 19, 2016 4:46 PM
**To:** Jake Woody
**Cc:** CDWQuestions
**Subject:** RE: Activity in Case 2:09-md-02047-EEF-JCW In Re: Chinese-Manufactured Drywall Products Liability Litigation Order

Thank you Jake. Will this also be the same information you need for ▇▇▇▇▇▇▇who was Rec. Doc. 20432 (Motion for Authority to File Proper Claim Form)? Also, when do you need the below information by?

**EXHIBIT**

"A"

TO:     Whom It Concern

FROM:   Lawrence Harvey

        3128 Upperline Street

        New Orleans, LA 70125

        (504)975-0451


March 24, 2014

I, Lawarence Harvey, I lost  my home at 3217 Upperline Street, New Orleans, Louisiana 70125 because of Chinese Dry wall found on the property which had contaminated the entire home.

 The contamination was so bad it destroyed the walls, all the electrical wiring, plumbimg and my personal property  (e.g. brass headboards, computers, televisions, washer, dryer, referiferator, central air conditioning unit).

It created major health  problems for myself and mother which  became increasingly worse requiring us to find a safer place to live.

Because of the move we encountered financial hardship and could not meet our financial obligations.

Our income was insifficient to cover mortgage, rent and utitilies on both properties.

Along with trying to replace some personal items needed to meet basic needs when we moved income did not allow us to continue paying mortgage on the the property therefore the property was repossessed by the mortgage comany.


*Lawrepe Harvey*                                    *3-24-2014*

Homeowner                                              Date



*Ocwen Loan Servicing, LLC*
*1661 Worthington Road Suite 100*
*West Palm Beach, FL 33409*                                        WWW.OCWEN.COM

6/11/13

## REINSTATEMENT QUOTE

Patricia Harvey
3217 Upperline Street
New Orleans LA 70125

Requestor Fax Number:
Requestor Email Address:

Loan Number: 705453421
Customer Name(s): Lawrence Harvey
Property Address: 3217 Upperline Street, New Orleans, LA 70125

As Of : 07/11/13 Next Due: 08/01/13

> If your loan is past due or has recently been past due, additional fees and costs may have been incurred on your loan but not yet billed to your account. These fees and expenses, if any, will be billed to your account once they are verified and paid by Ocwen. Furthermore, if your account is past due, additional collection expenses and legal fees may be accruing.

| Description | Amount |
|---|---|
| Principal Payment | 5,616.99 |
| Interest Due | 5,810.13 |
| Escrow Payment | 15,953.12 |
| Total Amount Due to Reinstate | $27,380.24 |

If you are unable to pay the Total Amount Due to reinstate your loan, please contact our office at (877) 596-8580

| Description | Amount |
|---|---|
| Late Charge Due | 47.62 |
| Property Inspection Fee | 73.50 |
| Title Report Fee | 400.00 |
| Property Valuation Expense | 230.00 |
| Trustee Fee | 150.00 |
| FC Thru Sale Date Set | 1,050.00 |
| Civil Litigation | 150.00 |
| Statutory Mailings | 10.59 |
| Statutory Mailings | 11.78 |
| Clerk/Prothonotary | 1,169.20 |
| Sheriff Fees/Commissions | 181.70 |
| Sheriff/Commissioner Deposit | 2,700.00 |
| Certified Mail Cost | 6.53 |
| Total Other Amounts Outstanding and Due | $6,180.92 |

*Please make note of the other amounts due on your loan. Repayment of these amounts is not necessary to reinstate your loan at this time; however, it is required to fulfill your debt obligation under the note and the mortgage. We strongly encourage you to contact us to make payment arrangements to repay the Other Amounts Outstanding and Due by calling (800) 746-2936.*

Deven Matalia has been assigned as your relationship manager and will be your designated representative for resolution inquiries and submission of documents

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

*NMLS # 1852*

**OCWEN**

Ocwen Loan Servicing, LLC
www.ocwen.com

| **Account Statement** | |
|---|---|
| **Account Number:** | 0705453421 |
| **Account Statement Date:** | 06/17/2013 |
| **Property Address:** | |
| 3217 Upperline Street | |
| New Orleans LA 70125 | |

NMLS #: 1852
NC Permit No. 3946
**CUSTOMER CARE CENTER 1-800-746-2936**
*Your call may be recorded for the coaching and development of our associates.*

DELQ                                                                    Page 1

1AT      06294/106277/006886 0358   1 ACQDIX

LAWRENCE HARVEY
3217 UPPERLINE ST
NEW ORLEANS LA 70125-4809



### Special Notices

Reduce your financial burden when your home is impacted by a disaster or you involuntarily lose your job. Let First Protector pay your mortgage for you. Visit www.OcwenFirstProtector.com or call 1-877-479-3947, 8am-8pm E.T. for more information.

### Account Information

| | |
|---|---|
| * Current Principal Balance: | 147,925.66 |
| Interest Rate: | 2.00000% |
| Next Payment Due Date: | 08/01/2011 |
| Escrow Advance Balance: | 5,428.18- |
| Interest Paid Year-To-Date: | .00 |
| Taxes Paid Year-To-Date: | .00 |
| Beginning Principal Balance: | 147,925.66 |
| Beginning Escrow Balance: | 3,064.08- |
| Escrow Disbursements/Adjustments Year-To-Date: | 2,364.10- |

*This is the principal balance only, not the amount required to pay your account in full.

### Details of Amount Due

| | |
|---|---|
| Current Amount Due: | |
| Principal: | 238.55 |
| Interest: | 237.58 |
| Escrow: | 671.30 |
| Current Amount Due by 07/01/13: | 1,147.43 |
| Past Due Amount: | |
| Principal: | 5,378.44 |
| Interest: | 5,572.55 |
| Escrow: | 15,281.82 |
| Past Due Amounts DUE IMMEDIATELY: | 26,232.81 |
| Assessed Fees/Expense Outstanding: | |
| Late Charges: | 23.81 |
| Prev-Certified Mail Cost: | 6.53 |
| Prev-Civil Litigation: | 150.00 |
| Prev-Clerk/Prothonotary: | 1,169.20 |
| Prev-FC Thru Sale Date Set: | 1,050.00 |
| Prev-Property Inspection Fee: | 73.50 |
| Prev-Property Valuation Expense: | 230.00 |
| Prev-Sheriff Fees/Commissions: | 181.70 |
| Prev-Sheriff/Commissioner Deposit: | 2,700.00 |
| Prev-Statutory Mailings: | 22.37 |
| Prev-Title Report Fee: | 400.00 |
| Prev-Trustee Fee: | 150.00 |
| Total Fees/Expense Outstanding: | 6,157.11 |
| **Total Amount Due:** | **33,537.35** |

### Recent Account Activity

| Date | Description | Principal | Interest | Escrow | Optional | Late Charges | Fees/Other | Suspense | Total |
|---|---|---|---|---|---|---|---|---|---|
| 06/13/13 | Suspense Payment | | | | | | | 920.85 | 920.85 |

### Important Messages

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. To obtain information about your rights under the Fair Credit Reporting Act go to www.ftc.gov/credit.

If you are currently in bankruptcy or if you have filed for bankruptcy since obtaining this loan, please read the bankruptcy information provided on the back of this statement.

Our records indicate that your loan is in foreclosure. Accordingly, this statement may be for informational purposes only. Payments received are to be applied in accordance with your mortgage note. Payments will be first applied to bring your loan contractually current. Any additional funds received will be applied to outstanding fees and advances prior to being applied to principal.

FOLD AND
DETACH HERE

PLEASE DETACH AND RETURN BOTTOM PORTION WITH PAYMENT IN THE ENCLOSED ENVELOPE WITH ADDRESS VISIBLE.
PLEASE DO NOT SEND CORRESPONDENCE WITH YOUR PAYMENT - ALWAYS WRITE YOUR ACCOUNT NUMBER ON YOUR CHECK.

FOLD AND
DETACH HERE

106277/006886 ACQDIX S1-ET-AI1-C015

011289813755  0000000000000000000000023815  000000705453421  50  033537357

**OCWEN**

| **Payment Coupon** | |
|---|---|
| Account Number Lawrence Harvey | |
| 0705453421 | |

☐ Check for change of information
and see reverse side of coupon.

| | | |
|---|---|---|
| **AMOUNT DUE** | $ | 33,537.35 |
| If Received after 07/17/2013 add Late Charge of: | $ | 23.81 |
| **Total Amount Due with Late Charge:** | $ | 33,561.16 |
| Note: If your loan is current, any excess funds will first be applied to outstanding amounts due and then additional principal. | | |
| Additional Principal: | $ | |
| Additional Escrow: | $ | |
| Late Charges: | $ | |
| Other: (Please Specify) | $ | |
| Total Enclosed: | $ | |



OCWEN
PO BOX 6440
CAROL STREAM IL 60197-6440

# ORLEANS ABSTRACTS, INC.
### 2121 N. Causeway Blvd. Ste 231
### Metairie, Louisiana 70001
### Phone: (504) 834-4991  Fax: (504) 834-4939

Client:. Sheriff's Office                                               Our File No.
Your File No:  CDC#2011-11100
8/1/13          #36
Assessed under the name of:
Lawrence Harvey

Property Tax Search
State of Louisiana
**PARISH OF ORLEANS**

7/1/13

BY RESEARCH MADE ON THIS DAY ON REAL ESTATE SITUATED
IN THE PARISH OF ORLEANS AND DESIGNATED AS:

6th District of New Orleans
Square 717
Lot 12-15 (51' x 93'); (51' x 95', per title)
3217 Upperline Street
* * * * * * * * * * * * * * * * * * * *

THE FOLLOWING TAXES ARE FOR THE YEAR 2013
STATUS OF 2013 TAXES AS OF 12/31/2012 IS AS FOLLOWS:

Tax Bill #6-14-3-441-10

| | |
|---|---|
| Assessment: | $15,270.00 |
| Gross Tax: | $2,264.10 |
| Exemption: | $0.00 |
| Net Tax | $2,264.10 |

**\*Taxes for 2013 are  PAID**

**\*2013 Broadmoor Fee $100.00 (PAID)**

**Other Taxes or Assessments Due:**

Year              Amount Due          Type of Tax

IF ANY AMOUNTS ARE SHOWN TO BE DUE, YOU SHOULD CONTACT THE CITY OF NEW
ORLEANS, DEPT. OF FINANCE – BUREAU OF THE TREASURY, FOR AN EXACT PAYOFF
AMOUNT, INCLUDING INTEREST AND PENALTIES.

This property tax research is limited to the above-described property and to the years and party listed above.

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

I hereby certify the above to be a true and correct statement as taken from the tax rolls on file and of record with the Department
of Finance – Bureau of the Treasury.

David L. Shall, President



**O C W E N**

*Ocwen Loan Servicing, LLC*
WWW.OCWEN.COM
Helping Homeowners is What We do! ™

*1661 Worthington Road, Suite 100*
West Palm Beach, FL 33409
Toll Free: (800) 476 - 2936

September 28, 2015

Lawrence Harvey
3217 Upperline Street
New Orleans, LA 70125

Loan Number:        705453421
Property Address:   3217 Upperline Street
                    New Orleans, LA 70125

Dear Lawrence Harvey:

Ocwen would like to take this opportunity to thank you for your recent communication regarding the above referenced loan. We appreciate the time and effort on your part to bring your concern to our attention. Pursuant to your concern, we have reviewed the loan and below is the recap of our response to the concern raised:

Concern: You requested us to provide you with the foreclosure details for the aforementioned loan.

Response: Please be advised that the foreclosure proceedings are initiated on the property when the loan is past due. A review of our records indicates that the foreclosure proceedings were initiated on the loan on September 19, 2011. Further, August 1, 2013, foreclosure proceedings were completed on the property and the property was conveyed to Real Estate Owned (REO).

For any further details regarding the property, please contact the Real Estate Agent, Real Home Solutions at (888) 876-3372.

We trust the information provided has fully addressed your concern. Please visit our website (www.ocwen.com) which is available 24 hours a day, seven days a week, as many of the answers to your specific questions may be found there. However, should you have any further questions in regards to this issue, please contact our Research Department at (800) 241-9960. If after speaking with our Research Department you still have questions or concerns, please feel free to contact the Ocwen consumer advocate by email through Ocwen's website or by phone at (800) 390-4656. You may also send written correspondence to the following address:

Ocwen Loan Servicing, LLC
Attention: Research Department
P.O. Box 24736
West Palm Beach, FL 33416-4736

Sincerely,

Research Department
OCWEN

NMLS # 1852
*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*



VERIFIED
2-24-05
HC

Prepared by:
Title Management Group, Inc.
3421 North Causeway Blvd.,
Suite 707
Metairie, LA 70001
Phone (504) 834-2977
Fax (504) 834-2978

## CASH SALE

STATE OF LOUISIANA
PARISH OF JEFFERSON

On the below stated date, before the below stated Notary Public, and in the presence of the subscribing witnesses personally appeared:

Patricia Gabriel Harvey (SS# ▓▓▓▓▓▓▓), a person of the full age of majority and competency and resident of Orleans, who swears unto me, Notary Public, that she has been married but once, and then to Anthony J. Harvey, from whom she was divorced, and further declares that the property being mortgaged is her separate and paraphernal property and that her present mailing address is 3126 Upperline, New Orleans, 70126.

hereinafter referred to as SELLER, who declared that for the price of One Hundred Eighty-Five Thousand and 00/100 ($185,000.00)* cash, receipt of which is hereby acknowledged, SELLER does hereby sell and deliver, with full warranty of title and subrogation to all rights and actions of warranty SELLER may have, unto:

Lawrence Harvey (SS# ▓▓▓▓▓▓▓, a person of the full age of majority and competency and resident of Orleans, who swears unto me, Notary Public, that he has never been married and further declares that the property being mortgaged is his separate and paraphernal property and that his present mailing address is 3217 Upperline , New Orleans, Louisiana 70125.

hereinafter called BUYER, the following described property, the possession and delivery of which BUYER acknowledges:

A CERTAIN LOT OF GROUND, together with all the buildings and improvements thereon, and all the rights, ways, privileges, servitudes, advantages and appurtenances thereunto belonging or in anywise appertaining, situated in the Sixth District of the City of New Orleans, Parish of Orleans, State of Louisiana, in Square No. 717, bounded by Upperline, Cadiz Prieur, and Roman Streets, commencing, according to plan made by S.A. Calognes Sohnas, Civil Engineers and Surveyors, dated March 26, 1918, at a distance of one hundred two feet, six inches (102'6") from the corner of Upperline and Roman Streets, and measures fifty-one feet (51') front on Upperline Street, with a width in the rear of fifty-one feet, three inches (51'3") depth on the side line nearest to Roman Street of ninety-five feet, ten inches (95'10"), and a depth on the other side line nearest Prieur Street of ninety feet, three inches and four feet (93'3"4"), and is composed of all of Lot number 12, and portions of lots number thirteen, fourteen, and fifteen, on a plan of W.H. Reynolds, Deputy City Surveyor, dated May 1, 1897, annexed to act before E.J. Barnett, late Notary, on January 10, 1898.

The improvements thereon bear the municipal number 3217 Upperline Street

Being the same property acquired by Patricia Gabriel Harvey dated June 25, 1999 and filed of record in CIN 181282.

Made and Accepted Subject to:

Deleting any covenants, condition, or restrictions indicating a preference, limitation or discrimination based on race, color religion, sex, handicap, familial status, or national origin to the extent such covenants, conditions or restrictions violate 42 usc 3604 (c).

Any and all applicable restrictions, servitudes, rights-of-way and outstanding mineral interest

contained in the chain of title, without in any way renewing the same or acknowledgin the validity thereof.

Encroachments, overlaps, boundary line disputes, or other matters which would be disclosed by an accurate survey or inspection of the premises.

Subject to all previously recorded building restrictions, servitudes, building set back lines; and oil, gas and mineral reservations, conveyances, servitudes and leases of record.

It is understood by the parties hereto that the SELLER herein makes no warranty as to soil conditions on the lot herein conveyed, the warranty referred to herein being restricted in its interpretation to warrant solely as to marketability of title.

BUYER REPRESENTS TO SELLER THAT BUYER HAS MADE A THOROUGH INSPECTION OF AND IS FAMILIAR WITH THE PROPERTY AND THE IMPROVEMENTS THEREON SOLD HEREIN. BUYER AND SELLER AGREE AND STIPULATE THAT THE PROPERTY SOLD HEREIN, INCLUDING THE IMPROVEMENTS LOCATED THEREON, ARE SOLD IN AND "AS IS" CONDITION WITHOUT ANY WARRANTY AGAINST REDHIBITORY VICES AND DEFECTS (NOT FIT FOR THE USES INTENDED) NOT EVEN FOR A RETURN OF THE PURCHASE PRICE AND WITHOUT ANY REPRESENTATIONS OF WARRANTY (OTHER THAN WARRANTY OF TITLE), EXPRESS OR IMPLIED, WHATSOEVER OF ANY KIND AS TO ANY MATTER. BUYER HEREBY WAIVES ANY AND ALL RIGHTS BUYER MAY HAVE IN CONNECTION THEREWITH. BUYER AND SELLER ACKNOWLEDGE THAT THIS PROVISION HAS BEEN NEGOTIATED BETWEEN THEM. BUYER UNDERSTANDS THE MEANING AND SIGNIFICANCE OF THIS PROVISION AND BUYER AND SELLER ACKNOWLEDGE AND AGREE THAT THE SALES PRICE AND TERMS AND CONDITIONS OF THE SALE WERE ESTABLISHED BY THEM AFTER HAVING TAKEN INTO ACCOUNT THE PRESENT CONDITION OF THE PROPERTY SOLD HEREIN.

All parties signing the within instrument have declared themselves to be of full legal capacity. The certificates of mortgages required by Article 3361 of the revised Civil Code of Louisiana is dispensed with by the parties. Taxes for the current year are prorated between the parties. All agreements and stipulations herein contained and all the obligations herein assumed shall inure to the benefit of and be binding upon the heirs, successors and assigns of the respective parties, and the BUYER, his/her heirs and assigns shall have and hold the described property in full ownership forever.

THUS DONE, READ AND PASSED at my office in Metairie, Louisiana, on this 9th day of March, 2005, in the presence of the undersigned competent witnesses and me, Notary.

WITNESSES:



Printed Name: Leslie Moreira

Patricia Gabriel Harvey

Printed Name: Kimberly Hamlee

Lawrence Harvey

2005-1346  E 16

FILED-CUSTODIAN OF NOTARIAL RECORDS
PARISH OF ORLEANS

NOTARY PUBLIC
Qualified in the Parish of
State of
Bar Roll or Notary I.D. #

Joseph C. Coates, III
Notary Public
Qualified for Jefferson Parish
State of Louisiana
Commission Expires: At Death
Bar Roll # 22020   Notary ID # 50194



NA #: 05-13461  INST. #: 303649
TYPE: SALE

AMT: $30.00
DATE: 3/16/2005 3:05:17 PM
Hon. Gasper J. Schiro
Registrar of Conveyances

3-16-05

# CHINESE DRYWALL SETTLEMENT PROGRAM
## MDL 2047

### Chinese Drywall Settlement Program
### Foreclosure or Short Sale Affidavit

Pursuant to the Court Approved Settlement Agreement regarding Other Loss Fund Benefits, any previous Residential or Commercial Owner seeking compensation for Foreclosure or Short Sale allegedly attributable to Chinese Drywall must submit an affidavit (i) in support of the claim, and (ii) attesting that all supporting documentation has been produced pursuant to Section 4.7.1.3 to Section 4.7.1.4. The Settlement Administrator may consider this Affidavit in making a determination of eligibility, but the submission of this Affidavit does not constitute conclusive proof of the facts stated herein. This Affidavit will not be considered unless it is personally signed by the claimant. To submit this Affidavit, upload it directly to the Chinese Drywall Settlement Portal at https://www3.browngreer.com/drywall. If you cannot upload this Affidavit to the Chinese Drywall Settlement Portal, email it to CDWQuestions@browngreer.com, or send by U.S. Mail to:

**Chinese Drywall Settlement Administrator**
**P.O. Box 25401**
**Richmond, Virginia 23260**

### A. Claimant Information

| | | |
|---|---|---|
| **1. Name:** | Last Name *Harvey* | First Name *Patricia*   Middle Initial |
| **2. Chinese Drywall Settlement Program Claimant ID Number:** | | |
| **3. Social Security Number *or* Individual Taxpayer Identification Number:** | SSN or ITIN ███-██-████ | |
| **4. Affected Property Identification Number (if you know it):** | | |
| **5. Affected Property Address:** | Street *3217 Upperline Street* | |
| | City *New Orleans*   State *LA* | Zip Code *70125* |

### B. Foreclosure Information

Check all that apply. You must provide an explanation below for this affidavit to be considered (attach additional sheets as necessary):

☐ **6. I do not have documentary evidence of the Appraised Value of the Affected Property at the time of purchase. The Estimated Appraised Value is $ _____.**

☐ **7. I do not have loan documents for the Affected Property.**

☒ **8. I did not attempt to sell or rent the property.**

*Claimant has submitted all documentation to support her foreclosure claim that she has in her possession.*

# CHINESE DRYWALL SETTLEMENT PROGRAM
## MDL 2047

### C. Short Sale Information

Check all that apply.  You must provide an explanation below for this affidavit to be considered (attach additional sheets as necessary).

☐ 9. I did not make a down payment on the Affected Property at the time of purchase.

☐ 10. I did not have a mortgage on the Affected Property at the time of purchase.

☐ 11. I do not have documentary evidence of the Appraised Value of the Affected Property at the time of the Short Sale.  The Estimated Appraised Value is $_____.

☐ 12.  I do not have documentary evidence of the Tax Assessed Value for the Affected Property at the time of the Short Sale.  The Estimated Tax Assessed Value is $_____.

☐ 13. I do not have loan documents for the Affected Property.

☐ 14. I did not attempt to sell or rent the property.

### D. Certification

I certify and  declare under penalty of perjury pursuant to 28 U.S.C. Section 1746 that all information  contained herein is true, accurate, and complete to the best of my knowledge.  I understand that false statements or claims made in connection with this Affidavit and my claim may result in fines, imprisonment,  and/or any other remedy available by law and that suspicious claims will be forwarded to federal, state, and local law enforcement agencies for possible investigation and prosecution.  I certify that I have made a good faith effort to obtain documentary evidence in support of my claim, and that if I obtain documentary evidence after I submit this Affidavit I will provide this evidence to the Settlement Administrator as soon as practicable, but no later than any other relevant deadlines set by the Settlement Administrator.

### E. Signature

| Claimant/Attorney Signature: | *Patricia Harvey* | Date: | 9/1/16 (Month/Day/Year) |
|---|---|---|---|
| Claimant/Attorney Name: | Last Name *Harvey* | First Name *Patricia* | Middle Initial *G.* |

v.1 FCLR/SS
Affidavit



STATE OF LOUISIANA
PARISH OF ORLEANS

    I, Dale N. Atkins, Clerk Of Court And Ex-Officio Recorder,
Parish of Orleans, State of Louisiana, do hereby certify that the above and foregoing is a
true and correct copy of  GENERAL POWER OF ATTORNEY

FROM:   LAWRENCE HARVEY
BY:     PATRICIA HARVEY
NA #:   2011-36801

                    4
consisting of _____ pages
dated the         13TH     day of   SEPTEMBER, 2011         executed before
                LOUIS A. GERDES JR.
                              a Notary Public of the

Parish of Orleans, State of Louisiana, the original of which document is on file in my office.
  New Orleans, Louisiana, this 7TH      day of  NOVEMNER, 2011

No.  40653

                                    Dale N. Atkins
                                    CLERK OF COURT AND
                                    EX-OFFICIO RECORDER
                                    1340 Poydras Street,  Ste. 500
                                    New Orleans, LA 70112

## GENERAL POWER OF ATTORNEY

NOTICE: THE POWERS GRANTED BY THIS DOCUMENT ARE BROAD AND SWEEPING. IF YOU HAVE ANY QUESTIONS ABOUT THESE POWERS, OBTAIN COMPETENT LEGAL ADVICE. THIS DOCUMENT DOES NOT AUTHORIZE ANYONE TO MAKE MEDICAL AND OTHER HEALTH-CARE DECISIONS FOR YOU. YOU MAY REVOKE THIS POWER OF ATTORNEY IF YOU LATER WISH TO DO SO.

I,＿＿＿＿Lawrence＿＿＿Harvey, residing at＿＿3217 Upperline St. New Orleans, La.., hereby appoints my mother＿Patricia Harvey＿＿ as of＿September 13, 2011＿ as my Attorney-in-Fact ("Agent").

I hereby revoke any and all general powers of attorney that previously have been signed by me. However, the preceding sentence shall not have the effect of revoking any powers of attorney that are directly related to my health care that previously have been signed by me.

My Agent shall have full power and authority to act on my behalf. This power and authority shall authorize my Agent to manage and conduct all of my affairs and to exercise all of my legal rights and powers, including all rights and powers that I may acquire in the future. My Agent's powers shall include, but not be limited to, the power to:

1. Open, maintain or close bank accounts (including, but not limited to, checking accounts, savings accounts, and certificates of deposit), brokerage accounts, and other similar accounts with financial institutions.

a. Conduct any business with any banking or financial institution with respect to any of my accounts, including, but not limited to, making deposits and withdrawals, obtaining bank statements, passbooks, drafts, money orders, warrants, and certificates or vouchers payable to me by any person, firm, corporation or political entity.

b. Perform any act necessary to deposit, negotiate, sell or transfer any note, security, or draft of the United States of America, including U.S. Treasury Securities.

c. Have access to any safe deposit box that I might own, including its contents.

2. Sell, exchange, buy, invest, or reinvest any assets or property owned by me. Such assets or property may include income producing or non-income producing assets and property.

3. Purchase and/or maintain insurance, including life insurance upon my life or the life of any other appropriate person.

4. Take any and all legal steps necessary to collect any amount or debt owed to me, or to settle any claim, whether made against me or asserted on my behalf against any other person or entity.

5. Enter into binding contracts on my behalf.

6. Exercise all stock rights on my behalf as my proxy, including all rights with respect to stocks, bonds, debentures, or other investments.

7. Maintain and/or operate any business that I may own.

8. Employ professional and business assistance as may be appropriate, including attorneys, accountants, and real estate agents.

9. Sell, convey, lease, mortgage, manage, insure, improve, repair, or perform any other act with respect to any of my property (now owned or later acquired) including, but not limited to, real estate and real estate rights (including the right to remove tenants and to recover possession). This includes the right to sell or encumber any homestead that I now own or may own in the future.

10. Prepare, sign, and file documents with any governmental body or agency, including, but not limited to, authorization to:

a. Prepare, sign and file income and other tax returns with federal, state, local, and other governmental bodies.

b. Obtain information or documents from any government or its agencies, and negotiate, compromise, or settle any matter with such government or agency (including tax matters).

c. Prepare applications, provide information, and perform any other act reasonably requested by any government or its agencies in connection with governmental benefits (including military and social security benefits).

11. Make gifts from my assets to members of my family and to such other persons or charitable organizations with whom I have an established pattern of giving. However, my Agent may not make gifts of my property to the Agent.

12. Transfer any of my assets to the trustee of any revocable trust created by me, if such trust is in existence at the time of such transfer.

13. Disclaim any interest which might otherwise be transferred or distributed to me from any other person, estate, trust, or other entity, as may be appropriate.

This Power of Attorney shall be construed broadly as a General Power of Attorney. The listing of specific powers is not intended to limit or restrict the general powers granted in this Power of Attorney in any manner.

Any power or authority granted to my Agent under this document shall be limited to the extent necessary to prevent this Power of Attorney from causing: (i) my income to be taxable to my Agent, (ii) my assets to be subject to a general power of appointment by my Agent, and (iii) my Agent to have any incidents of ownership with respect to any life insurance policies that I may own on the life of my Agent.

My Agent shall not be liable for any loss that results from a judgment error that was made in good faith. However, my Agent shall be liable for willful misconduct or the failure to act in good faith while acting under the authority of this Power of Attorney.

I authorize my Agent to indemnify and hold harmless any third party who accepts and acts under this document.

My Agent shall be entitled to reasonable compensation for any services provided as my Agent. My Agent shall be entitled to reimbursement of all reasonable expenses incurred in connection with this Power of Attorney.

My Agent shall provide an accounting for all funds handled and all acts performed as my Agent, if I so request or if such a request is made by any authorized personal representative or fiduciary acting on my behalf.

This Power of Attorney shall become effective immediately and shall not be affected by my disability or lack of mental competence, except as may be provided otherwise by an applicable state statute. This is a Durable Power of Attorney. This Power of Attorney shall continue effective until my death. This Power of Attorney may be revoked by me at any time by providing written notice to my Agent.

Dated: _September 13._ , 20_11_ at _11:3 am_ ,

YOUR SIGNATURE:

_Lawrence Harvey_

YOUR PRINTED FULL LEGAL NAME:

_LAWRENCE HARVEY_

WITNESS' SIGNATURE:

WITNESS' PRINTED FULL LEGAL NAME:

GErArd Millet

WITNESS' SIGNATURE:

WITNESS' PRINTED FULL LEGAL NAME:

Layton Jefferson

Acknowledgement:

STATE OF _Louisiana_

COUNTY OF _Orleans_

The foregoing instrument was acknowledged before me this _2C_ day of _January_, 20 _11_ by _LAWRENCE HARDY_ [YOUR FULL LEGAL NAME], who is personally known to me or who has produced _____ as identification.

Signature of person taking acknowledgment

LOUIS A. GERDES

Name typed, printed, or stamped

Title or rank   LOUIS A. GERDES Jr.
                NOTARY # 23800

Serial number (if applicable)

This document was prepared by:

Name: _____
Address: _____
         _____

NA #: 11-36801
INST. #: 498979
TYPE: POWER OF ATTORNEY

AMT: $45.00
DATE: 10/14/2011 11:08:34 AM
DALE N. ATKINS
CLERK, CIVIL DISTRICT COURT



# HomEq Servicing

P.O. BOX 13716
SACRAMENTO, CA 95853-3716

# ACCOUNT STATEMENT

Statement Date: 10/30/09
Account Number: 323637637

## WE'RE HERE FOR YOU

Visit us on the web at www.homeq.com or call Customer Service at 1-877-867-7378 Monday through Friday, 5:00 A.M. - 5:30 P.M., Pacific Time. For your convenience, our automated attendant is available 24 hours a day, seven days a week.

## *ESTAMOS AQUI PARA SERVIRLO

Para asistencia con preguntas, favor de llamar a nuestro Departamento de Servicio al Cliente al 1-877-867-7378, Lunes a Viernes, 5:00 A.M. - 5:30 P.M., Tiempo Pacifico. Nuestro sistema automaticado esta disponible las 24 horas del dia, siete dias a la semana para su conveniencia.

00/09/09  13:15  000547B 20001005 SJ615021H4Q-N1  1 OZ 00A4 8J515100000* 141144  I45

LAWRENCE  HARVEY
3217  UPPERLINE  ST
NEW ORLEANS  LA  70125-4809

Property Address:   3217 UPPERLINE ST
NEW ORLEANS LA 70125

## AMOUNT DUE EXPLANATION

| | |
|---|---|
| Principal and Interest Due | $983.86 |
| Escrow | $612.46 |
| Escrow Over/Short | $186.69 |
| Minimum Monthly Amount-Due By 11/01/09 | $1,783.01 |
| | |
| Amount(s) Past Due-As of 10/30/09 | $0.00 |
| Late Charge Balance | $0.00 |
| Returned Payment Fees | $0.00 |
| Other Fees | $0.00 |
| Advances | $0.00 |
| Amount Due*-By 11/01/09 | $1,615.64 |

*Amount Due may not include all fees or advances.

### PLEASE NOTE:

If the Minimum Monthly Payment due on 11/01/09 is not received by 11/16/09, a late charge in the amount of $49.19 may be assessed to your account.

## ACCOUNT INFORMATION

| | |
|---|---|
| Principal Balance | $138,625.26 |
| Escrow Balance | $619.20- |

The Principal Balance does not represent the payoff amount of your account and is not to be used for payoff purposes.

| | |
|---|---|
| Taxes Paid Year-To-Date | $1,909.56 |
| Insurance Paid Year-To-Date | $5,859.00 |
| Interest Paid Year-To-Date | $10,964.07 |

Interest Paid Year-To-Date amount may include amounts not reportable to the Internal Revenue Service (IRS), including deferred interest, negative amortization and/or capitalized interest.

**PROTECT YOUR CREDIT**

You are hereby notified that we may report information about your account to credit reporting agencies. Late payments, missed payments, or other defaults on your account may be reflected on your credit report. To dispute information reported to a credit reporting agency, please send a written dispute and any related documentation to the credit reporting agency.

**Amount Due*-By 11/01/09  $3,398.65**

## *PAYMENT ACTIVITY

| | |
|---|---|
| Principal-Scheduled | $.00 |
| Interest | $.00 |
| Late Charge(s)/Fees/Advances | $.00 |
| Total | $.00 |

A54144

## IMPORTANT MESSAGES

### *Payment Activity Since Last Statement

A payment has not been applied to your account since your last Account Statement was mailed. As a result, activity is not reflected in the Payment Activity section. For payment updates, our automated attendant is available 24 hours a day, seven days a week at 877-867-7378. Or, visit us on the web at www.homeq.com and follow the instructions provided to access your Account History.

### Automatic Payment Program

Enjoy the convenience of having your monthly payment automatically withdrawn from your banking account each month, FREE of charge. To enroll in HomEq's Automatic Payment Program (APP), simply call our toll free number 1-877-867-7378. Please have your bank account number and billing statement available.

Detach here and send this COUPON with your payment. Retain top portion for your records. Please do not send correspondence with your payment.

# HomEq Servicing

## PAYMENT COUPON

LAWRENCE HARVEY

| Amount Due By | Account Number | Amount Due |
|---|---|---|
| 11/01/09 | 323637637 | $3,398.65 |

Total Amount Enclosed  $

[ ]  Check here if you are making Address & Phone number corrections on the reverse side.

Make Check Payable To:

HOMEQ SERVICING
P.O. BOX 70830
CHARLOTTE NC  28272-0830



5000004919  00000032363637637  0000178301

# HomEq Servicing

## PAYMENT METHODS

Please make your payments on or before your due date. If payments are not received by your due date, you may receive phone calls regarding a late payment prior to the end of the account grace period and a late charge may be assessed, if applicable. HomEq does not recognize post-dated checks. All paper payment instruments are processed immediately regardless of the date provided on the check. For your convenience, HomEq offers several payment methods to fit every lifestyle.

### By Mail:
a) *Regular Mail:*
HomEq Servicing /P.O. Box 70830/Charlotte NC 28272-0830
b) *Overnight/Express Mail:*
HomEq Servicing /Attn: Cash Processing CA3358/4837 Watt Ave, Ste., 200/ North Highlands, CA 95660

### Automatic Payment Program (APP):
APP allows your payment to be automatically deducted on the same date each month from your checking or savings account. It's easy to enroll and it's FREE of charge. Simply call our Customer Service department.

### On-Line Payments at HomEq.com:
Simply go to www.homeq.com to make a payment. This method is FREE of charge.

### Western Union Quick Collect:
You can make your HomEq payment at any Western Union location. HomEq's "Code City" and "State" are "HomEq" and "CA". For the nearest Western Union location, call 1-800-325-6000. Applicable Western Union fees may apply.

### Payment By Phone:
To make a phone payment call toll free 1-877-867-7378. By accessing these methods and completing the required information, you will be authorizing HomEq to debit the bank account you have designated for the defined payment amount. Phone Payment transactions cannot be cancelled by HomEq.
a) *Electronic Phone Payments* - Allows you to initiate an electronic payment without the assistance of a HomEq associate. As part of the authorization for these transactions you will be asked to provide the zip code for your billing address. A fee of $7.50 may be assessed for each transaction, unless prohibited by applicable law.
b) *Assisted Phone Payment* - Allows you to initiate an electronic payment with the assistance of a HomEq associate. A fee of $15.00 may be assessed for each transaction, unless prohibited by applicable law.

### MoneyGram:
You can make your HomEq payment at any MoneyGram location which can be sent from many Wal-Mart locations. The receive code for a HomEq Payment is 2392. For additional MoneyGram locations, call 1-800-926-9400, or visit their website at www.moneygram.com. Applicable MoneyGram fees may apply.

**NOTE:** Payments received by mail or made using Electronic Phone Payments, Assisted Phone Payment, Online Payments at HomEq.com, Western Union and MoneyGram before 3:00 P.M. Pacific Time, on a business day* will be credited to your account as of the same day. All other payments using these payment options will be credited as of the next business day*.

**RETURNED PAYMENT FEES:** If your payment is returned unpaid/dishonored by your financial institution for any reason, you may be assessed a fee in accordance with your finance agreement, unless prohibited by applicable law. Note: Nevada and Minnesota residents will be charged $25.00 and $30.00 respectively.

**OTHER FEES:** Processing fees, unless prohibited by applicable law, may apply to requests for various services, including, but not limited to, verification of mortgage, payoff statement, payment history, amortization schedule and copies of account documents. To obtain information concerning these services and applicable fees, please contact Customer Service.

**ADVANCES:** In accordance with your finance agreement, HomEq reserves the right to take any and all actions to protect its interest and assess corresponding charges to your account, unless prohibited by applicable law. This includes, but is not limited to, fees for property inspections, breach letters, attorney services, property appraisals, and court costs.

**ELECTRONIC CHECK CONVERSION:** When you provide a check as payment, you authorize us to use the information from your check to make a one-time electronic fund transfer ("EFT") from your account or to process the payment as a check transaction. When we use the information from your check to make an EFT, funds may be withdrawn from your account as soon as the same day you make your payment, and you will not receive your check back from your financial institution. If you do not wish to have your check processed as an EFT, please call 1-800-225-3957.

**WRITTEN CORRESPONDENCE:** Send correspondence to: HomEq Servicing\Account Research CA3345\P.O.Box 13716\Sacramento, CA 95853-3716. It must include your HomEq account number, name and a brief description of your concern(s). HomEq will provide written correspondence acknowledging receipt within 20 business days*, and/or a final resolution no later than 60 business days* from receipt of your correspondence. Please do not send payments to this address.

**DEBT COLLECTION:** HomEq Servicing is a debt collector. HomEq is attempting to collect a debt and any information obtained will be used for that purpose.

*Business days are Monday through Friday excluding legal public holidays.

02-1x18-6800(3/07)

## ADDRESS & PHONE CORRECTIONS

Mailing Address _____

City _____ State _____ Zip _____

Email Address _____

Home Telephone _____ Work Telephone _____

Alternative Telephone (i.e., Pager, Cell) _____


# WHITNEY®

**STATEMENT PERIOD**

Sep 19, 2008 TO
Oct 20, 2008

```
     31      26            106 B 0 13
PATRICIA G HARVEY
3217 UPPERLINE ST
NEW ORLEANS LA  70125-4809
```

Page   1 of   4

GO GREEN, AND HELP THE ENVIRONMENT BY ELIMINATING THOSE PAPER
STATEMENTS!  GET YOUR ACCOUNT STATEMENTS AND COPIES OF YOUR CHECKS
ONLINE! WE'LL SEND YOU AN EMAIL EACH MONTH, TELLING YOU WHEN YOUR
E-STATEMENT  IS READY. PLUS, YOUR E-STATEMENTS WILL BE AVAILABLE
ONLINE FOR SEVEN YEARS, AND YOU CAN PRINT  OR DOWNLOAD STATEMENTS OR
CHECKS ANYTIME. SIGN UP TODAY, IT'S FREE!  CLICK ON  WHITNEYBANK.COM
OR SEE A WHITNEY BANKER.

## SMART ACCOUNT

PATRICIA G HARVEY

| BALANCE LAST STATEMENT | DEPOSITS & CREDITS NO. | TOTAL AMOUNT | CHECKS & DEBITS NO. | TOTAL AMOUNT | BALANCE THIS STATEMENT |
|---|---|---|---|---|---|
| 22,718.57 | 10 | 11,801.12 | 50 | 34,457.37 | 62.32 |
| MINIMUM BALANCE | | 698- | AVERAGE COLLECTED BALANCE | | 3,439 |

**Credits**

| Date | Amount | Description |
|---|---|---|
| Sep 24 | 584.27 | REGULAR DEPOSIT |
| Sep 26 | 6,000.00 | REGULAR DEPOSIT |
| Oct 03 | 100.00 | CASH DEPOSIT |
| Oct 06 | 100.00 | CREDIT LINE ADVANCE |
| Oct 08 | 755.46 | ACH NSF RETURN |
| Oct 09 | 200.00 | CREDIT LINE ADVANCE |
| Oct 14 | 755.46 | ACH NSF RETURN |
| Oct 17 | 3,000.00 | CASH DEPOSIT |
| Oct 17 | 5.93 | OVER PAYMENT CREDIT |
| Oct 20 | 300.00 | CREDIT LINE ADVANCE |

**Checks Paid**

| Date | Check No. | Amount | Date | Check No. | Amount |
|---|---|---|---|---|---|
| Sep 22 | 131 | 3,000.00 | Oct 01 | 149 ✳ | 200.00 |
| Oct 02 | 132 | 79.97 | Oct 06 | 150 | 120.00 |
| Sep 26 | 133 | 300.00 | Oct 09 | 152 ✳ | 150.00 |
| Sep 29 | 134 | 100.00 | Oct 17 | 154 ✳ | 800.00 |
| Sep 26 | 135 | 100.00 | Oct 17 | 155 | 800.00 |
| Sep 23 | 137 ✳ | 750.00 | Oct 17 | 156 | 308.00 |
| Sep 29 | 138 | 228.65 | Oct 17 | 157 | 300.00 |
| Sep 23 | 139 | 2,500.00 | Oct 20 | 158 | 125.00 |
| Sep 29 | 141 ✳ | 759.29 | Oct 20 | 160 ✳ | 180.00 |
| Sep 24 | 142 | 4,000.00 | Sep 23 | 209 ✳ | 50.00 |
| Sep 29 | 143 | 600.00 | Sep 19 | 213 ✳ | 1,000.00 |
| Sep 29 | 144 | 200.00 | Sep 23 | 214 | 200.00 |
| Sep 30 | 145 | 350.00 | Sep 22 | 216 ✳ | 3,000.00 |
| Sep 29 | 146 | 1,500.00 | Sep 22 | 219 ✳ | 300.00 |
| Oct 03 | 147 | 1,841.08 | Sep 22 | 220 | 2,500.00 |

✳ Indicates break in check sequence

# ABOUT YOUR WHITNEY STATEMENT

## In case of errors or questions about your Electronic Fund Transfers or Overdraft Protection.

Contact a Whitney Banker at 1-800-844-4450 or write us at Whitney Bank, Attn: Call Center, P.O. Box 61260, New Orleans, LA 70161-1260 as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

1. Tell us your name and account number.
2. Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
3. Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error (except for claims involving Overdraft Protection), so that you will have the use of the money during the time it takes us to complete our investigation.

If an error involves unauthorized electronic fund transfers made without an access device, and we receive a completed and signed Written Statement Under Penalty and Perjury form within 60 days after transmittal of your statement on which the error or problem appeared, we may immediately credit your account for the amount in question without additional notice to you.

## Billing Rights Summary
### In case of errors or questions about your statement or bill regarding your personal line of credit.

If you think your statement or bill is wrong, or if you need more information about a transaction on your statement or bill, write us at Whitney Bank, Attn: Call Center, P.O. Box 61260, New Orleans, LA 70161-1260 as soon as possible. We must hear from you no later than 60 days after we sent you the FIRST statement or bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, please give us the following information:
1. Your name and account number.
2. The dollar amount of the suspected error.
3. Describe the error and explain why you believe there is an error. If you need more information, describe the item you are unsure about.

You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your statement or bill that are not in question. While we investigate your question, we cannot report you as delinquent or take any action to collect the amount you question.

If you have authorized us to pay your personal line of credit automatically from your checking account, you can stop the payment on the amount you think is wrong. To stop payment, your letter must reach us three business days before the automatic payment is scheduled to occur.

## Additional information regarding your personal lines of credit.

Method used to determine the balance on which the FINANCE CHARGE will be computed and to which the Periodic Rate will be applied.

A daily FINANCE CHARGE will be imposed on all credit advances made under your personal line of credit imposed from the date of each credit advanced based on the "average daily balance" for any billing cycle during which your ANNUAL PERCENTAGE RATE and Daily Periodic Rate do not change. To get the average daily balance we take the beginning balance of your personal line of credit account each day, add any new advances and subtract any payments or credits and any unpaid FINANCE CHARGES. This gives us a daily balance. Then, we add up all the daily balances for the billing cycle and divide the total by the number of days in the billing cycle. This gives us the "average daily balance". (The remainder of this paragraph does not apply to Overdraft Protection or to former accounts of Whitney Bank of Alabama opened prior to 9/30/95.) If your personal line of credit is not an Overdraft Protection Account or a former account of Whitney Bank of Alabama opened prior to 9/30/95, your ANNUAL PERCENTAGE RATE and Daily Periodic Rate may vary. In any billing cycle during which there is an adjustment to your ANNUAL PERCENTAGE RATE and Daily Periodic Rate, more than one average daily balance will be calculated for your account. In such instances, we will compute the first average daily balance by adding together the daily balances of your personal line of credit, calculated as indicated above, for the days during which the first Daily Periodic Rate applied and dividing that total by the number of days that the first Daily Periodic Rate was in effect. The average daily balance(s) for any period(s) during which a different Daily Periodic Rate applied will be calculated in the same manner, based on the daily balances for, and the total number of days during which the different Daily Periodic Rate applied will be calculated in the same manner, based on the daily balances for, and the total number of days during which the different Daily Periodic Rate(s) were in effect.

FINANCE CHARGE   We determine the FINANCE CHARGE on your account by applying the Daily Periodic Rate to the "average daily balance" of your account, calculated as indicated above. To get the FINANCE CHARGE for a billing cycle in which the ANNUAL PERCENTAGE RATE and Daily Periodic Rate do not change, the average daily balance is multiplied by the number of days in the billing cycle, and that amount is multiplied by the Daily Periodic Rate. To get the FINANCE CHARGE for a billing cycle in which there is an adjustment to the ANNUAL PERCENTAGE RATE and Daily Periodic Rate, each of the average daily balances is multiplied by the number of days that the appropriate Periodic Rate was in effect, and each resulting amount is multiplied by the applicable Periodic Rate. The products are added together to calculate the FINANCE CHARGE for the billing cycle.

Receipt of Payments   All payments not paid by automatic payment must be mailed to us at the remittance address shown on your periodic billing statement. Payments received at that address prior to 2:00 P.M. on any business day will be credited to your personal line of credit as of the date received. If we receive payments at other locations, such payments will be credited promptly to your personal line of credit, but crediting may be delayed for up to 5 days after receipt.

To obtain front and back copies of items posted to your account
or for 24-hour account information,
visit whitneybank.com or contact a Whitney Banker at 1.800.844.4450
Thank you for banking with the Whitney.

*It takes a Whitney Banker.*

Member FDIC. Equal Housing Lender

REV. 7/08

# WHITNEY®
whitneybank.com



# WHITNEY°

```
    31      26        106 B 0 13
PATRICIA G HARVEY
3217 UPPERLINE ST
NEW ORLEANS LA  70125-4809
```

Page   2 of   4

**Other Debits**

| Date | Amount | Description | | |
|------|--------|-------------|--|--|
| Sep 22 | 501.38 | DEBIT MEMO | | |
| Sep 22 | 4,055.59 | ACH DEBIT | | |
| | | HOMEQ SERVICING | | MORTGAGE |
| Sep 26 | 219.64 | ACH DEBIT | | |
| | | USAGENCIES\LIFCO | | LIFCO |
| Sep 29 | 119.35 | ACH DEBIT | | |
| | | COX ENTERPRISES | | BROADBAND |
| Oct 02 | 300.00 | ACH DEBIT | | |
| | | VAN KAMPEN COMST | | SPP DRAFT |
| Oct 02 | 100.00 | ACH DEBIT | | |
| | | VAN KAMPEN COMST | | SPP DRAFT |
| Oct 02 | 100.00 | ACH DEBIT | | |
| | | VAN KAMPEN COMST | | SPP DRAFT |
| Oct 02 | 54.64 | ACH DEBIT | | |
| | | PRIMERICA LIFE | | INS. PREM |
| Oct 06 | 70.00 | ACH DEBIT | | |
| | | WS FINANCIAL GRP | | CSPHONEPAY |
| Oct 06 | 62.64 | ACH DEBIT | | |
| | | WS FINANCIAL GRP | | CSPHONEPAY |
| Oct 06 | 55.60 | ACH DEBIT | | |
| | | WS FINANCIAL GRP | | CSPHONEPAY |
| Oct 06 | 44.90 | ACH DEBIT | | |
| | | WS FINANCIAL GRP | | CSPHONEPAY |
| Oct 06 | 43.20 | ACH DEBIT | | |
| | | WS FINANCIAL GRP | | CSPHONEPAY |
| Oct 06 | 26.06 | ACH DEBIT | | |
| | | WS FINANCIAL GRP | | CSPHONEPAY |
| Oct 07 | 755.46 | ACH DEBIT | | |
| | | ENTERGY SERVICES | 15155 | NEW LAREDEPCHECK |
| Oct 08 | 32.00 | NSF SERVICE CHARGE | | |
| Oct 10 | 755.46 | ACH DEBIT | | |
| | | AMERICAN PAYMENT | 015155 | NEW LAWLK IN PAY |
| Oct 14 | 32.00 | NSF SERVICE CHARGE | | |
| Oct 16 | 755.46 | ACH DEBIT | | |
| | | AMERICAN PAYMENT | 015155 | NEW LAWLK IN PAY |
| Oct 17 | 32.00 | OD SERVICE CHARGE | | |

```
                                              STATEMENT PERIOD

                                              Sep 19, 2008 TO
                                              Oct 20, 2008


        31     26          106 B 0 13
     PATRICIA G HARVEY
     3217 UPPERLINE ST
     NEW ORLEANS LA  70125-4809




                                              Page    3 of    4
```

## Daily Balance Summary

| Date | Balance | Date | Balance |
|------|---------|------|---------|
| Sep 18 | 22,718.57 | Oct 03 | 393.25 |
| Sep 19 | 21,718.57 | Oct 06 | 70.85 |
| Sep 22 | 8,361.60 | Oct 07 | 684.61- |
| Sep 23 | 4,861.60 | Oct 08 | 38.85 |
| Sep 24 | 1,445.87 | Oct 09 | 88.85 |
| Sep 26 | 6,826.23 | Oct 10 | 666.61- |
| Sep 29 | 3,318.94 | Oct 14 | 56.85 |
| Sep 30 | 2,968.94 | Oct 16 | 698.61- |
| Oct 01 | 2,768.94 | Oct 17 | 67.32 |
| Oct 02 | 2,134.33 | Oct 20 | 62.32 |

## CREDIT LINE

PATRICIA G HARVEY

| BALANCE LAST STATEMENT | PAYMENTS & CREDITS NO. | TOTAL AMOUNT | ADVANCES & DEBITS NO. | TOTAL AMOUNT | BALANCE THIS STATEMENT |
|---|---|---|---|---|---|
| 501.38 | 2 | 809.38 | 5 | 608.15 | 300.15 |

### Advances & Debits

| Date | Amount | Description |
|------|--------|-------------|
| Oct 06 | 100.00 | CR ADV-CHECKING |
| Oct 09 | 200.00 | CR ADV-CHECKING |
| Oct 17 | 2.07 | PERIODIC RATE *FINANCE CHARGE* |
| Oct 17 | 5.93 | OVER PAYMENT |
| Oct 20 | .15 | PERIODIC RATE *FINANCE CHARGE* |
| Oct 20 | 300.00 | CR ADV-CHECKING |

### Payments & Credits

| Date | Amount | Description |
|------|--------|-------------|
| Sep 22 | 501.38 | OVER COUNTER LOAN PYMT |
| Oct 17 | 308.00 | OVER COUNTER LOAN PYMT |

### Line Summary

```
     Credit Limit             500.00  ANNUAL PERCENTAGE RATE  18.000000 %
     Available Credit         200.00  Daily Periodic Rate     .0004918032

     Auto Payment Date    Nov 04, 2008
```



```
      31      26          106 B 0 13
PATRICIA G HARVEY
3217 UPPERLINE ST
NEW ORLEANS LA  70125-4809
```

Page   4 of   4

---

```
Current Payment Due                    .00
Past Due Amount                        .00
Minimum Payment Due                    .00

Avg. Daily Balance                  140.62
Number of Days                          32
Unpaid Charges                         .15
```

If you would like to pay off your credit line, log on to Online
Banking at whitneybank.com or call 800-844-4450.  Your payoff
balance will differ from the balance on this statement.

```
        Statement Period Rates
        Days In    Annual        Daily        Average
        Billing    Percentage    Periodic     Daily
        Cycle      Rate          Rate         Balance
          32       17.951000 %   .0004918032     140.62
```


**WHITNEY**®

STATEMENT PERIOD

Oct 21, 2009 TO
Nov 19, 2009

6      26
PATRICIA G HARVEY          106 B 0 13 2
3217 UPPERLINE ST
NEW ORLEANS LA  70125-4809

Page  1 of  4

WHEN YOU GIVE AN AMERICAN EXPRESS(R) GIFT CARD, YOU GIVE ENDLESS
POSSIBILITIES TO MAKE SOMEONE HAPPY. UNLIKE STORE GIFT CARDS, THE
AMERICAN EXPRESS GIFT CARD CAN BE USED AT OVER A MILLION DIFFERENT
PLACES - FROM ELEGANT MEALS TO SHOPPING SPREES. SO GIVE AMERICAN
EXPRESS GIFT CARDS TO EVERYONE ON YOUR LIST THIS HOLIDAY SEASON.
AVAILABLE AT YOUR NEARBY WHITNEY BRANCH. CERTAIN FEES, TERMS AND
RESTRICTIONS APPLY.

## SMART ACCOUNT          PATRICIA G HARVEY

| BALANCE LAST STATEMENT | DEPOSITS & CREDITS NO. | TOTAL AMOUNT | CHECKS & DEBITS NO. | TOTAL AMOUNT | BALANCE THIS STATEMENT |
|---|---|---|---|---|---|
| 208.55 | 7 | 8,157.50 | 26 | 8,518.88 | 152.83- |

| MINIMUM BALANCE | 321- | AVERAGE COLLECTED BALANCE | 711 |
|---|---|---|---|

**Credits**

| Date | Amount | Description |
|---|---|---|
| Oct 26 | 150.00 | CASH DEPOSIT |
| Oct 27 | 6,000.00 | REGULAR DEPOSIT |
| Nov 02 | 1,000.00 | CASH DEPOSIT |
| Nov 05 | 500.00 | CASH DEPOSIT |
| Nov 13 | 350.00 | ACH NSF RETURN |
| Nov 16 | 103.75 | ACH NSF RETURN |
| Nov 18 | 53.75 | ACH NSF RETURN |

**Checks Paid**

| Date | Check No. | Amount | Date | Check No. | Amount |
|---|---|---|---|---|---|
| Nov 02 | 522 | 100.00 | Nov 02 | 531 ✱ | 400.00 |
| Oct 29 | 525 ✱ | 2,002.30 | Nov 12 | 533 ✱ | 100.00 |
| Nov 02 | 527 ✱ | 400.00 | Nov 09 | 534 | 100.00 |

✱ Indicates break in check sequence

**Other Debits**

| Date | Amount | Description | | |
|---|---|---|---|---|
| Oct 22 | 129.70 | ACH DEBIT | | |
| | | USAGENCIES\LIFCO | | LIFCO |
| Oct 22 | 16.00 | ACH DEBIT | | |
| | | CASUALTY INSUR. | | USCIC |
| Oct 26 | 53.75 | ACH DEBIT | | |
| | | FAIRGROUNDS RACE | 521 | NEWOLAPURCHASE |
| Oct 29 | 116.00 | ACH DEBIT | | |
| | | CASUALTY INSUR. | | USCIC |

# ABOUT YOUR WHITNEY STATEMENT

### In case of errors or questions about your Electronic Fund Transfers or Overdraft Protection.

Contact a Whitney Banker at 1-800-844-4450 or write us at Whitney Bank, Attn: Call Center, P.O. Box 61260, New Orleans, LA 70161-1260 as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

1. Tell us your name and account number.
2. Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
3. Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business dasy to do this, we will credit your account for the amount you think is in error (except for claims involving Overdraft Protection), so that you will have the use of the money during the time it takes us to complete our investigation.

If an error involves unauthorized electronic fund transfers made without an access device, and we receive a completed and signed Written Statement Under Penalty and Perjury form within 60 days after transmittal of your statement on which the error or problem appeared, we may immediately credit your account for the amount in question without additional notice to you.

### Billing Rights Summary
#### In case of errors or questions about your statement or bill regarding your personal line of credit.

If you think your statement or bill is wrong, or if you need more information about a transaction on your statement or bill, write us at Whitney Bank, Attn: Call Center, P.O. Box 61260, New Orleans, LA 70161-1260 as soon as possible. We must hear from you no later than 60 days after we sent you the FIRST statement or bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, please give us the following information:
1. Your name and account number.
2. The dollar amount of the suspected error.
3. Describe the error and explain why you believe there is an error. If you need more information, describe the item you are unsure about.

You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your statement or bill that are not in question. While we investigate your question, we cannot report you as delinquent or take any action to collect the amount you question.

If you have authorized us to pay your personal line of credit automatically from your checking account, you can stop the payment on the amount you think is wrong. To stop payment, your letter must reach us three business days before the automatic payment is scheduled to occur.

### Additional information regarding your personal lines of credit.

Method used to determine the balance on which the FINANCE CHARGE will be computed and to which the Periodic Rate will be applied.

A daily FINANCE CHARGE will be imposed on all credit advances made under your personal line of credit imposed from the date of each credit advanced based on the "average daily balance" for any billing cycle during which your ANNUAL PERCENTAGE RATE and Daily Periodic Rate do not change. To get the average daily balance we take the beginning balance of your personal line of credit account each day, add any new advances and subtract any payments or credits and any unpaid FINANCE CHARGES. This gives us a daily balance. Then, we add up all the daily balances for the billing cycle and divide the total by the number of days in the billing cycle. This gives us the "average daily balance". (The remainder of this paragraph does not apply to Overdraft Protection or to former accounts of Whitney Bank of Alabama opened prior to 9/30/95.) If your personal line of credit is not an Overdraft Protection Account or a former account of Whitney Bank of Alabama opened prior to 9/30/95, your ANNUAL PERCENTAGE RATE and Daily Periodic Rate may vary. In any billing cycle during which there is an adjustment to your ANNUAL PERCENTAGE RATE and Daily Periodic Rate, more than one average daily balance will be calculated for your account. In such instances, we will compute the first average daily balance by adding together the daily balances of your personal line of credit, calculated as indicated above, for the days during which the first Daily Periodic Rate applied and dividing that total by the number of days that the first Daily Periodic Rate was in effect. The average daily balance for any period(s) during which a different Daily Periodic Rate applied will be calculated in the same manner, based on the daily balances for, and the total number of days during which the different Daily Periodic Rate applied will be calculated in the same manner, based on the daily balances for, and the total number of days during which the different Daily Periodic Rate(s) were in effect.

FINANCE CHARGE We determine the FINANCE CHARGE on your account by applying the Daily Periodic Rate to the "average daily balance" of your account, calculated as indicated above. To get the FINANCE CHARGE for a billing cycle in which the ANNUAL PERCENTAGE RATE and Daily Periodic Rate do not change, the average daily balance is multiplied by the number of days in the billing cycle, and that amount is multiplied by the Daily Periodic Rate. To get the FINANCE CHARGE for a billing cycle in which there is an adjustment to the ANNUAL PERCENTAGE RATE and Daily Periodic Rate, each of the average daily balances is multiplied by the number of days that the appropriate Periodic Rate was in effect, and each resulting amount is multiplied by the applicable Periodic Rate. The products are added together to calculate the FINANCE CHARGE for the billing cycle.

Receipt of Payments All payments not paid by automatic payment must be mailed to us at the remittance address shown on your periodic billing statement. Payments received at that address prior to 2:00 P.M. on any business day will be credited to your personal line of credit as of the date received. If we receive payments at other locations, such payments will be credited promptly to your personal line of credit, but crediting may be delayed for up to 5 days after receipt.

To obtain front and back copies of items posted to your account
or for 24-hour account information,
visit whitneybank.com or contact a Whitney Banker at 1.800.844.4450
Thank you for banking with the Whitney.

*It takes a Whitney Banker.*

Member FDIC. Equal Housing Lender

REV. 7/08

# WHITNEY°
whitneybank.com



# WHITNEY®

STATEMENT PERIOD

Oct 21, 2009 TO
Nov 19, 2009

```
      6      26            106 B 0 13 2
PATRICIA G HARVEY
3217 UPPERLINE ST
NEW ORLEANS LA  70125-4809
```

Page  2 of  4

| Date | Amount | Description | | |
|------|--------|-------------|---|---|
| Oct 30 | 3,267.80 | ACH DEBIT | | |
| | | HOMEQ SERVICING | | MORTGAGE |
| Nov 02 | 103.75 | ACH DEBIT | | |
| | | FAIRGROUNDS RACE | 526 | NEWOLAPURCHASE |
| Nov 02 | 77.46 | ACH DEBIT | | |
| | | PRIMERICA LIFE | | INS. PREM |
| Nov 02 | 56.00 | ACH DEBIT | | |
| | | PRIMERICA LIFE | | INS. PREM |
| Nov 03 | 185.46 | ACH DEBIT | | |
| | | COX COMM LOU | | BANK DRAFT |
| Nov 03 | 177.03 | ACH DEBIT | | |
| | | COX COMM LOU | | BANK DRAFT |
| Nov 05 | 350.00 | ACH DEBIT | | |
| | | DFG | | LOAN |
| Nov 10 | 194.38 | ACH DEBIT | | |
| | | USAGENCIES\LIFCO | | LIFCO |
| Nov 12 | 350.00 | ACH DEBIT | | |
| | | AMERICA'S CASH | | RETURNS |
| Nov 13 | 32.00 | NSF SERVICE CHARGE | | |
| Nov 13 | 103.75 | ACH DEBIT | | |
| | | FAIRGROUNDS RACE | 536 | NEWOLAPURCHASE |
| Nov 13 | 53.75 | ACH DEBIT | | |
| | | FAIRGROUNDS RACE | 537 | NEWOLAPURCHASE |
| Nov 16 | 32.00 | NSF SERVICE CHARGE | | |
| Nov 16 | 32.00 | OD SERVICE CHARGE | | |
| Nov 17 | 53.75 | ACH DEBIT | | |
| | | FAIRGROUNDS RACE | 540 | NEWOLAPURCHASE |
| Nov 18 | 32.00 | NSF SERVICE CHARGE | | |

Daily
Balance
Summary

| Date | Balance | Date | Balance |
|------|---------|------|---------|
| Oct 20 | 208.55 | Nov 05 | 423.30 |
| Oct 22 | 62.85 | Nov 09 | 323.30 |
| Oct 26 | 159.10 | Nov 10 | 128.92 |
| Oct 27 | 6,159.10 | Nov 12 | 321.08- |
| Oct 29 | 4,040.80 | Nov 13 | 160.58- |
| Oct 30 | 773.00 | Nov 16 | 120.83- |
| Nov 02 | 635.79 | Nov 17 | 174.58- |
| Nov 03 | 273.30 | Nov 18 | 152.83- |

STATEMENT PERIOD

Oct 21, 2009 TO
Nov 19, 2009

6      26          106 B 0 13 2
PATRICIA G HARVEY
3217 UPPERLINE ST
NEW ORLEANS LA  70125-4809

Page   3 of   4

## CREDIT LINE

PATRICIA G HARVEY

| BALANCE LAST STATEMENT | PAYMENTS & CREDITS | | ADVANCES & DEBITS | | BALANCE THIS STATEMENT |
|---|---|---|---|---|---|
| | NO. | TOTAL AMOUNT | NO. | TOTAL AMOUNT | |
| 503.11 | 0 | .00 | 1 | 7.40 | 510.51 |

**Advances & Debits**

| Date | Amount | Description |
|---|---|---|
| Nov 19 | 7.40 | PERIODIC RATE *FINANCE CHARGE* |

**Line Summary**

| | | |
|---|---|---|
| Credit Limit | 500.00 | ANNUAL PERCENTAGE RATE  18.000000 % |
| Available Credit | .00 | Daily Periodic Rate   .0004931506 |
| Auto Payment Date | Dec 14, 2009 | |
| Current Payment Due | 20.00 | |
| Past Due Amount | 20.00 | |
| Minimum Payment Due | 40.00 | |
| Avg. Daily Balance | 500.00 | |
| Number of Days | 30 | |
| Unpaid Charges | 10.51 | |

Due to a regulatory amendment, the payment due date on all Whitney
Bank consumer lines of credit is now at least 21 days after the
statement cycle date, which may in some cases result in the payment
due date falling later or the billing cycle date falling earlier in
the month than usual.  For payments made through automatic debit to
an account, the date of the auto-debit will change to coincide with
the new payment due date as applicable.  Customers with lines of
credit should refer to their periodic statement to determine if
there has been a change to the payment due date.  If you have any
questions, please contact your Whitney Banker.

If you would like to pay off your credit line, log on to Online
Banking at whitneybank.com or call 800-844-4450.  Your payoff
balance will differ from the balance on this statement.



**WHITNEY**®

STATEMENT PERIOD

Oct 21, 2009 TO
Nov 19, 2009

      6     26         106 B 0 13 2
PATRICIA G HARVEY
3217 UPPERLINE ST
NEW ORLEANS LA  70125-4809

Page   4 of   4

| Statement Period Rates | | | |
|---|---|---|---|
| Days In Billing Cycle | Annual Percentage Rate | Daily Periodic Rate | Average Daily Balance |
| 30 | 18.000000 % | .0004931506 | 500.00 |

**Don Reichert**

| | |
|---|---|
| **From:** | Don Reichert |
| **Sent:** | Monday, October 10, 2016 5:31 PM |
| **To:** | 'Trish Honaker' |
| **Cc:** | Jake Woody; CDWQuestions |
| **Subject:** | RE: Activity in Case 2:09-md-02047-EEF-JCW In Re: Chinese-Manufactured Drywall Products Liability Litigation Order |
| **Attachments:** | Chinese Drywall Foreclosure Affidavit (Updated).pdf |

Ms. Honaker,

Please see attached affidavit of Ms. Harvey.  Also, I hope to have you documentation from ▇▇▇▇▇ by this week.  Please let me know if anything additional is needed for Ms. Harvey.

Thanks,
Don

**From:** Trish Honaker [mailto:phonaker@browngreer.com]
**Sent:** Wednesday, September 21, 2016 12:48 PM
**To:** Don Reichert <don@brunobrunolaw.com>
**Cc:** Jake Woody <jswoody@browngreer.com>; CDWQuestions <CDWQuestions@browngreer.com>
**Subject:** RE: Activity in Case 2:09-md-02047-EEF-JCW In Re: Chinese-Manufactured Drywall Products Liability Litigation Order

Form affidavit is attached.  Thanks!

**From:** Trish Honaker
**Sent:** Wednesday, September 21, 2016 1:47 PM
**To:** 'don@brunobrunolaw.com'
**Cc:** Jake Woody; CDWQuestions
**Subject:** RE: Activity in Case 2:09-md-02047-EEF-JCW In Re: Chinese-Manufactured Drywall Products Liability Litigation Order

Good afternoon, Mr. Reichert:

We were unable to locate the documents below for Ms. Harvey and ▇▇▇▇▇.  If you believe any of this documentation was already submitted, please let us know.

Harvey:
1. Document identifying the appraised value of the property at the time of purchase, or an explanation on the attached affidavit
2. Expert Report from a third party supporting the claim that the Foreclosure was substantially caused by the presence of Chinese Drywall



# CHINESE DRYWALL SETTLEMENT PROGRAM
## MDL 2047

### Chinese Drywall Settlement Program
### Foreclosure or Short Sale Affidavit

Pursuant to the Court Approved Settlement Agreement regarding Other Loss Fund Benefits, any previous Residential or Commercial Owner seeking compensation for Foreclosure or Short Sale allegedly attributable to Chinese Drywall must submit an affidav it (i) in support of the claim, and (ii) attesting that all supporting documentation has been produced pursuant to Section 4.7.1.3 to Section 4.7.1.4. The Settlement Administrator may consider this Affidavit in making a determination of eligibility, but the submission of this Affidavit does not constitute conclusive proof of the facts stated herein. This Affidavit will not be considered unless it is personally signed by the claimant. To submit this Affidavit, upload it directly to the Chinese Drywall Settlement Portal at https://www3.browngreer.com/drywall. If you cannot  upload this Affidavit to the Chinese Drywall Settlement Portal, email it to CDWQuestions@browngreer.com, or send by U.S. Mail to:

**Chinese Drywall Settlement Administrator**
**P.O. Box 25401**
**Richmond, Virginia 23260**

### A. Claimant Information

| | | | |
|---|---|---|---|
| 1. **Name:** | Last Name *Harvey* | First Name *Patricia* | Middle Initial |
| 2. **Chinese Drywall Settlement Program Claimant ID Number:** | | | |
| 3. **Social Security Number** *or* **Individual Taxpayer Identification Number:** | | SSN or ITIN ███████-██-████ | |
| 4. **Affected Property Identification Number (if you know it):** | | | |
| 5. **Affected Property Address:** | Street *3217 Upperline Street* City *New Orleans* | State *LA* | Zip Code *70125* |

### B. Foreclosure Information

**Check all that apply. You must provide an explanation below for this affidavit to be considered (attach additional sheets as necessary):**

☑ 6. I do not have documentary evidence of the Appraised Value of the Affected Property at the time of purchase. The Estimated Appraised Value is $ *238,000.00* .

☐ 7. I do not have loan documents for the Affected Property.

☑ 8. I did not attempt to sell or rent the property.

*Claimant has submitted all documentation to support her foreclosure claim that she has in her possession.*

# CHINESE DRYWALL SETTLEMENT PROGRAM
## MDL 2047

### C. Short Sale Information

Check all that apply.  You must provide an explanation below for this affidavit to be considered (attach additional sheets as necessary).

☐ 9. I did not make a down payment on the Affected Property at the time of purchase.

☐ 10. I did not have a mortgage on the Affected Property at the time of purchase.

☐ 11. I do not have documentary evidence of the Appraised Value of the Affected Property at the time of the Short Sale.  The Estimated Appraised Value is $_____.

☐ 12.  I do not have documentary evidence of the Tax Assessed Value for the Affected Property at the time of the Short Sale.  The Estimated Tax Assessed Value is $_____.

☐ 13. I do not have loan documents for the Affected Property.

☐ 14. I did not attempt to sell or rent the property.

### D. Certification

I certify and  declare under penalty of perjury pursuant to 28 U.S.C. Section 1746 that all information  contained herein is true, accurate, and complete to the best of my knowledge.  I understand that false statements or claims made in connection with this Affidavit and  my claim may result in fines, imprisonment,  and/or any other remedy available by law and  that suspicious claims will be forwarded to federal, state, and local  law enforcement agencies for possible investigation and prosecution.  I certify that I have made a good faith effort to obtain documentary evidence in support of my claim, and that if I obtain documentary evidence after I submit this Affidavit I will provide this evidence to the Settlement Administrator as soon as practicable, but no later than any other relevant deadlines set by the Settlement Administrator.

### E. Signature

| Claimant/Attorney Signature: | *Patricia Harvey* | Date: | 9 / 1 / 16 (Month/Day/Year) |
|---|---|---|---|
| Claimant/Attorney Name: | Last Name *Harvey* | First Name *Patricia* | Middle Initial *G.* |

v.1 FCLR/SS
Affidavit

## Don Reichert

| | |
|---|---|
| **From:** | Don Reichert |
| **Sent:** | Thursday, November 10, 2016 5:10 PM |
| **To:** | 'Trish Honaker' |
| **Cc:** | Jake Woody; CDWQuestions |
| **Subject:** | RE: Activity in Case 2:09-md-02047-EEF-JCW In Re: Chinese-Manufactured Drywall Products Liability Litigation Order |
| **Attachments:** | Affidavit (Jamie Ziglar).pdf; Affidavit (Patricia Harvey).pdf; 1.11.11 letter from Ocwen Loan Servicing, LLC.pdf |

Ms. Honaker,

Please see attached additional documentation regarding Ms. Harvey's claim.  I hope to have you additional documentation regarding ▋▋▋▋▋▋ claim as soon as possible.

Thanks,
Don

**From:** Trish Honaker [mailto:phonaker@browngreer.com]
**Sent:** Wednesday, October 26, 2016 9:24 AM
**To:** Don Reichert <don@brunobrunolaw.com>
**Cc:** Jake Woody <jswoody@browngreer.com>; CDWQuestions <CDWQuestions@browngreer.com>
**Subject:** RE: Activity in Case 2:09-md-02047-EEF-JCW In Re: Chinese-Manufactured Drywall Products Liability Litigation Order

Hi, Don,

Thank you for the update.  Both potential claims are incomplete for the expert report only.

Thank you,
Trish

**From:** Don Reichert [mailto:don@brunobrunolaw.com]
**Sent:** Wednesday, October 26, 2016 10:23 AM
**To:** Trish Honaker
**Cc:** Jake Woody; CDWQuestions
**Subject:** RE: Activity in Case 2:09-md-02047-EEF-JCW In Re: Chinese-Manufactured Drywall Products Liability Litigation Order

Ms. Honaker,

I am checking on the status of the report and will get you and answer as soon as possible.   Is there anything additional needed for Ms. Harvey?  Also, is there any needed for ▋▋▋▋▋▋?  Thank you for your assistance with this matter.

Don

**From:** Trish Honaker [mailto:phonaker@browngreer.com]
**Sent:** Tuesday, October 11, 2016 8:58 AM

### UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 |
| | SECTION "L" |
| | JUDGE FALLON |
| | MAG. WILKINSON |

### AFFIDAVIT

STATE OF LOUISIANA

PARISH OF _Orleans_

BEFORE ME, the undersigned authority personally came and appeared

### JAMIE ZIGLAR

who, after being duly sworn, did depose and state as follows:

1.     That my name is Jamie Ziglar.

2.     That I was a Claim Rep/Estimator for Full Scope Services, LLC on March 8, 2010.

3.     That on March 8, 2010, I inspected the home located at 3217 Upperline Street, New Orleans, Louisiana 70125.

4.     That during that inspection, I determined that the home contained contaminated Chinese drywall.

5.     That as a result of the contaminated Chinese drywall, I believe that the home located at 3217 Upperline Street, New Orleans, Louisiana 70125 could not be sold and/or rented.

THUS SWORN TO AND SUBSCRIBED in the presence of the undersigned and competent witnesses, the 9th day of November, 2016, at _New Orleans_, Louisiana.

_____
JAMIE ZIGLAR

WITNESSES:

_____
Phillip A. Lee

_____
Mar'Kita Hawkins

_____
NOTARY PUBLIC

Donald D. Reichert, Jr.
Notary Public # 136750
Lifetime Commission

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF LOUISIANA

| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 |
|---|---|
| | SECTION "L" |
| | JUDGE FALLON |
| | MAG. WILKINSON |

### AFFIDAVIT

**STATE OF LOUISIANA**

**PARISH OF** Orleans

BEFORE ME, the undersigned authority personally came and appeared

### PATRICIA HARVEY

who, after being duly sworn, did depose and state as follows:

1.    That my name is Patricia Harvey.
2.    That I am the Attorney-in-Fact ("Agent") for my son, Lawrence Harvey, as of September 13, 2011, pursuant to his September 13, 2011 General Power of Attorney.
3.    My son and I's residence at 3217 Upperline Street, New Orleans, Louisiana 70125 contained Chinese Drywall.
4.    That due to the presence of Chinese Drywall in the home, and as my son and my health were declining as a result of living in a contaminated home, my son and I had to move out of the house located at 3217 Upperline Street, New Orleans, Louisiana 70125 and secure a new residence.
5.    This placed an undue financial burden on us and we could no longer afford to pay the mortgage on the home containing Chinese Drywall, located at 3217 Upperline Street, New Orleans, Louisiana 70125 as well as the rent for the new residence. In addition, due to health problems caused by Chinese Drywall, I was unable to work, which placed a further financial burden on us. Once our inability to pay became clear my mortgage lender foreclosed on this home.
6.    That all information contained in the Foreclosure claim form is true and correct to the best of my knowledge and ability.
7.    That all supporting documentation is true and accurate to the best of my knowledge.

THUS SWORN TO AND SUBSCRIBED in the presence of the undersigned and competent witnesses, the 8th day of November, 2016, at New Orleans, Louisiana.

_____
PATRICIA HARVEY

WITNESSES:

_____
CARL GABRIEL

_____
Rachel Scillitani

_____
NOTARY PUBLIC

Donald D. Reichert, Jr.
Notary Public # 136750
Lifetime Commission



O C W E N

### *Ocwen Loan Servicing, LLC*
### HELPING HOMEOWNERS IS WHAT WE DO!™
### WWW.OCWEN.COM

January 11, 2011

Lawrence Harvey

3217 ,Upperline Street

New Orleans LA 70125

Loan Number:   705453421
Property Address: 3217 Upperline Street
New Orleans, LA 70125

Dear Customer:

Thank you for your recent application for a modification under the Making Homes Affordable Program.  Based on our review of the documentation you provided, you are not eligible for a Home Affordable Modification.

- **We are unable to offer you a Home Affordable Modification because: We are unable to create an affordable payment equal to 31% of your reported monthly gross income without changing the terms of your loan beyond the requirements of the program. You have 30 calendar days from the date of this notice to contact Ocwen to discuss the reason for non-approval for a HAMP modification or to discuss alternative loss mitigation options that may be available to you. Your loan may be referred to foreclosure during this time, or any pending foreclosure action may continue. However, no foreclosure sale will be conducted and you will not lose your home during this 30-day period. Please note the foreclosure sale will not be suspended for this 30-day period if the court with jurisdiction over the foreclosure proceedings, or the bankruptcy court in a bankruptcy case, or the public official charged with carrying out the sale fails or refuses to halt the sale.**

The Home Affordable Modification option is designed specifically to allow existing homeowners to keep their homes by making mortgage payments affordable, however the plan will not help everyone.  For example, it will not help investor borrowers, borrowers who have no income and cannot make any mortgage payment or if a borrower's current monthly mortgage ratio is less than 31% of their gross monthly income. (Note: Monthly mortgage ratio is the current first mortgage monthly payment, including principal, interest, taxes, insurance and homeowner's association dues, if applicable, divided by the gross monthly income).

**If I'm not eligible for a Home Affordable Modification, then what do I do?**

Remember at Ocwen, HELPING HOMEOWNERS IS WHAT WE DO!™.  We understand that unanticipated changes in your financial situation can impact every area of your life, including your ability to pay your mortgage obligation.  Our Associates and Home Retention Consultants are trained to work with you to set up a plan of action specifically designed to address your current circumstances.  By completing the financial information attached, we can begin the process of presenting you with some alternative solutions to resolve your delinquent mortgage loan.  Below please find a brief description of possible solutions.



*Ocwen Loan Servicing, LLC*
HELPING HOMEOWNERS IS WHAT WE DO!™
WWW.OCWEN.COM

O C W E N

HDENY.12

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*



### *Ocwen Loan Servicing, LLC*
### HELPING HOMEOWNERS IS WHAT WE DO!™
### WWW.OCWEN.COM

## ALTERNATIVES TO FORECLOSURE

1.    **REPAYMENT PLAN** – A plan that enables you to bring the loan current at the end of the plan period by dividing the delinquent amount by the number of months in the plan and then adding this additional amount to your contractual payment.

2.    **MODIFICATION** – A change to one or more terms of the original mortgage agreement.  This may include a change in interest rate, loan balance or term, which may lower your payment and bring the account current.

3.    **LISTING YOUR PROPERTY FOR SALE** - By listing your property, you may receive a sale offer acceptable to both you and to Ocwen. The sale of your property could help you to avoid a foreclosure sale of your home.

4.    **DEED IN LIEU OF FORECLOSURE** - If you do not intend on keeping the property, then depending on your current financial situation Ocwen may accept the deed to the property and extinguish the debt, even if the property is worth less than the loan balance.  Title must be clear of any other liens.

## FINANCIAL COUNSELING SERVICES

When you are experiencing a financial hardship, counseling may be a way to help you manage your finances.  We urge you to contact HUD approved agencies to obtain assistance in keeping your home.  This assistance is available at no charge.  For specific guidance on this notice or information related to the Home Affordable Modification Program, ask the counselor for MHA HELP.

       **HUD Approved Housing Counseling:**         (800) 569-4287         www.HUD.gov
       **HOPE Hotline Number:**                  (888) 995-4673

There are three ways for you to begin the process of working with us to identifying a solution to resolving your delinquent mortgage loan.

**Option 1:**   Visit our website at www.ocwencustomers.com.  Under the Financial Difficulties section, select the Pursue Alternative Payments Option.  Here, you can enter your financial information at your convenience.  Once you have entered the information, a Home Retention Consultant will review it and then contact you to discuss potential resolution options.

**Option 2:**   Complete the attached form and fax to our Home Retention Processing Department at 407-737-5433.  Once you have sent the information, a Home Retention Consultant will review it and then contact you to discuss potential resolution options.

**Option 3:**  Call a Home Retention Consultant to discuss your options.  **Call (800) 746-2936**

We are available 24 hrs a day Monday - Thursday, Friday 12:00 am - 7:00pm ET and Saturday 9:00 am to 4:00pm ET.

Sincerely,

Ocwen Loan Servicing, LLC

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*


OCWEN

### *Ocwen Loan Servicing, LLC*
### HELPING HOMEOWNERS IS WHAT WE DO!™
### WWW.OCWEN.COM

**LAST NAME:** _____   **LOAN NUMBER:** _____

## OCWEN FINANCIAL FORM

| 1. CURRENT EMPLOYMENT INFORMATION | Borrower | Co-Borrower | Co-Borrower |
|---|---|---|---|
| Borrower Name | | | |
| Name of Employer / Self Employed or Unemployed | | | |
| Position / Title | | | |
| Hire Date | | | |
| Business Phone (With area code) | | | |
| How often are you paid?■ Weekly ■ Every other week ■ Monthly ■ Twice a month | | | |

| 2. INCOME RECEIVED PER MONTH | Borrower | Co-Borrower | Co-Borrower |
|---|---|---|---|
| GROSS Pay Stubs (Before payroll deductions) | $ | $ | $ |
| NET Pay Stubs (Gross minus payroll deductions) | $ | $ | $ |
| Overtime Pay (Average per month and not included in above) | $ | $ | $ |
| Commissions (Average per month and not included in above) | $ | $ | $ |
| Bonus (Average per month and not included in above) | $ | $ | $ |
| Tips (Average per month and not included in above) | $ | $ | $ |
| Self Employed Income | $ | $ | $ |
| Social Security | $ | $ | $ |
| Disability | $ | $ | $ |
| Retirement | $ | $ | $ |
| Death Benefit | $ | $ | $ |
| Pension | $ | $ | $ |
| Alimony | $ | $ | $ |
| Child Support | $ | $ | $ |
| Unemployment | $ | $ | $ |
| Public Assistance | $ | $ | $ |
| GROSS Rental Income (See Section 7 below) | $ | $ | $ |
| Other Income | $ | $ | $ |
| Description of Other Income: | | | |

| 3. COMBINED ASSETS | Borrower | Co-Borrower | Co-Borrower |
|---|---|---|---|
| Total Checking Account(s) | $ | $ | $ |
| Total Savings Account(s) / Money Market | $ | $ | $ |
| Stocks / Bonds / CD's | $ | $ | $ |
| 401k / Employee Stock Ownership Plan | $ | $ | $ |
| Car(s) (Estimated value less any loans outstanding) | $ | $ | $ |
| Life Insurance (Whole Life / Term) | $ | $ | $ |
| IRA / Keogh Accounts | $ | $ | $ |
| Other Assets (For Real Estate Complete Section 7 below) | $ | $ | $ |
| Description of Other Assets: | | | |

| 4. HOUSING EXPENSES PAID PER MONTH (For the property related to this application) | | 5. LIVING EXPENSES PAID PER MONTH | | 6. MISCELLANEOUS EXPENSES PAID PER MONTH | |
|---|---|---|---|---|---|
| 1st Mortgage Payment (P & I) | $ | Health Insurance | $ | Bank / Finance Loan Payments | $ |
| 2nd Mortgage Payment (P & I) | $ | Medical Bills | $ | Credit Card Payments | $ |
| Monthly Hazard / Homeowners Ins. | $ | Food | $ | Student Loan Payments | $ |
| Electric / Gas | $ | Auto Loan (1) | $ | Charitable Contributions | $ |
| Phone / Cell Phone | $ | Auto Loan (2) | $ | Personal / Life Insurance | $ |
| Water & Sewer | $ | Auto Insurance | $ | Club / Union Dues | $ |
| Home Repair | $ | Auto Gas | $ | Cable TV | $ |
| Home Maintenance | $ | Auto Maintenance | $ | Religious Contributions | $ |
| Homeowners Association Dues | $ | Child Care | $ | Dry Cleaning | $ |
| Monthly Property Tax Payment | $ | Child Support Paid | $ | Clothing | $ |
| Estimated Market Value | $ | Alimony Paid | $ | Entertainment | $ |
| Other Expenses | $ | Other Expenses | $ | School Tuition | $ |
| Description of Other Expenses: | | Description of Other Expenses: | | | |

## ACKNOWLEDGMENT AND AGREEMENT

Certification: I/We certify that the information provided in this Request for Financial Information is true and correct as of the date set forth opposite my/our signature(s) on this form and acknowledge my/our understanding that any intentional or negligent misrepresentation(s) of the information contained on this form may result in civil liability and/or criminal penalties. I (We) authorize OCWEN to verify this information, including verification of employment and account balances.

| Borrower's Signature | Date | Co-Borrower's Signature(s) | Date |
|---|---|---|---|
| | | | |



*Ocwen Loan Servicing, LLC*
HELPING HOMEOWNERS IS WHAT WE DO!™
WWW.OCWEN.COM

**LAST NAME:** _____   **LOAN NUMBER:** _____

OCWEN FINANCIAL FORM – Page 2

## SECTION 7. – RENTAL INCOME – MUST BE COMPLETED FOR RENTAL INCOME TO BE CONSIDERED
### (This section should include Investment Properties and Second Homes.)

| 7. RENTAL INCOME | Property 1 | Property 2 | Property 3 | Property 4 |
|---|---|---|---|---|
| 1st Mortgage Payment (Monthly P & I) | $ | $ | $ | $ |
| 2nd Mortgage Payment (Monthly P & I) | $ | $ | $ | $ |
| Total Mortgage Balance(s) + Any Liens + Judgments | $ | $ | $ | $ |
| Monthly Hazard/Homeowners Insurance & Tax Expense | $ | $ | $ | $ |
| Monthly Maintenance Expense | $ | $ | $ | $ |
| Estimated Market Value | $ | $ | $ | $ |
| GROSS Monthly Rental Income | $ | $ | $ | $ |

## GENERAL INSTRUCTIONS TO COMPLETE FINANCIAL FORM
The Financial Form should be completed for each borrower whose income is used to pay the Loan.

**1.    CURRENT EMPLOYMENT INFORMATION**
- Borrowers should only complete requested employer information if they are currently working for employer.
- Borrowers who are not currently employed should indicate they are "Unemployed" in the box provided.

**2.    INCOME RECEIVED PER MONTH**
- *All* figures should represent the total amount received in a month for that income category.
- *GROSS Pay Stubs* – This is the amount of compensation received by an employee each month before any deductions are made for taxes, health benefits, 401k contributions, etc.
- *NET Pay Stubs* – This is the amount of compensation received by the employee each month after all deductions are made for taxes, health benefits, 401k contributions, etc. This would be the actual dollar amount on the pay check or amount deposited into the employee's bank account, if direct deposit is used.
- *Overtime Pay, Commissions and Bonuses* – This should be based on a monthly average since the amount received can vary on a monthly basis. For example, if bonus income of $1,200 is received on an annual basis, the amount entered should be $100 ($1,200 divided by 12 months = $100).
- *Self Employed Borrowers* – The total amount of income received per month should be tied back to the Profit and Loss Statement to be provided under the Document Checklist. A Profit and Loss Statement is a financial statement that summarizes the revenues, costs and expenses incurred during a specific period of time - usually a fiscal quarter or year.
- *Alimony and Child Support* – Alimony and child support need not be revealed if the Borrower or Co-Borrower(s) do not choose to have it considered for repaying this loan.
- *GROSS Rental Income* – The total amount of rental income includes all rental income received from space rented within the subject property as well as any additional investment properties or second homes identified in Section 7.

**3.    COMBINED ASSETS**
- Total account balances for checking, savings or money market accounts should be entered under the specified account type.
- An Employee Stock Ownership Plan (ESOP) is an employee benefit plan which makes the employees of a company owners of stock in that company.
- Real Estate assets such as investment properties or if you own a second home should be entered in Section 7.

**4.    HOUSING EXPENSES PAID PER MONTH**
- Expenses input in this section should be for the property that is subject to the note and mortgage for which the borrower is seeking financial assistance from Ocwen.
- *Monthly Property Tax Payment* – The amount entered should be your annual property tax assessment divided by 12 months. For example, if your property taxes for 2009 on the subject property are $6,000, then the amount you should enter would be $500 ($6,000 divided by 12 months = $500). If your loan includes an escrow payment for property taxes, then the amount paid in escrow each month for property taxes should be input into the box provided.

# A. Settlement Statement

**U.S. Department of Housing and Urban Development**

OMB No. 2502-0265

| B. Type of Loan | | |
|---|---|---|
| 1.☐ FHA  2.☐ FmHA  3.☒ Conv. Unins. | 6. File Number<br>2-85-05 | 7. Loan Number<br>0074604554 |
| 4.☐ VA  5.☐ Conv. Ins. | | 8. Mortgage Insurance Case Number |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for information purposes and are not included in the totals.

| D. Name and Address of Borrower | E. Name and Address of Seller | F. Name and Address of Lender |
|---|---|---|
| Lawrence Harvey<br>3217 Upperline<br>New Orleans, Louisiana 70125 | Patricia Gabriel Harvey<br>3126 Upperline<br>New Orleans, Louisiana 70125 | Argent Mortgage Company, LLC<br>1701 Golf Road, Tower Two 12th Floor<br>Rolling Meadows, IL 60008 |

| G. Property Location | H. Settlement Agent |
|---|---|
| 3217 Upperline Street<br>New Orleans, Louisiana  70125<br>Lot 12 Portion 13, 14,15<br>Sixth District | Title Management Group, Inc. |
| | Place of Settlement<br>3421 North Causeway Blvd., Suite 707<br>Metairie, Louisiana 70002 |

I. Settlement Date
03/09/05
DD: 03/09/05

| J. SUMMARY OF BORROWER'S TRANSACTION: | | K. SUMMARY OF SELLER'S TRANSACTION: | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER** | | **400. GROSS AMOUNT DUE TO SELLER** | |
| 101. Contract sales price | 185,000.00 | 401. Contract sales price | 185,000.0 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 10,884.00 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes  to | | 406. City/town taxes  to | |
| 107. County taxes  03/09 to 12/31 | 105.98 | 407. County taxes  03/09 to 12/31 | 105.9 |
| 108. Assessments  to | | 408. Assessments  to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 195,989.98 | **420. GROSS AMOUNT DUE TO SELLER** | 185,105.98 |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER** | | **500. REDUCTIONS IN AMOUNT TO SELLER** | |
| 201. Deposit or earnest money | | 501. Excess Deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 148,000.00 | 502. Settlement charges to seller (line 1400) | 855.24 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | 67,408.73 |
| | | 1st Mtg Payoff to JP Morgan  Chase Bank, NA | |
| 205. | | 505. Payoff of second mortgage loan | 5,472.45 |
| | | 2nd Mtg PayoMOSC FBO Troy Fullwood IRA #22899 | |
| 206. Equity Gift | 37,000.00 | 506. Equity Gift | 37,000.00 |
| 207. Seller Contributions | 11,100.00 | 507. Seller Contributions | 11,100.00 |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes  to | | 510. City/town taxes  to | |
| 211. County taxes  to | | 511. County taxes  to | |
| 212. Assessments  to | | 512. Assessments  to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY / FOR BORROWER** | 196,100.00 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | 121,836.42 |
| **300. CASH AT SETTLEMENT FROM OR TO BORROWER** | | **600. CASH AT SETTLEMENT TO OR FROM SELLER** | |
| 301. Gross amount due from borrower (line 120) | 195,989.98 | 601. Gross amount due to seller (line 420) | 185,105.98 |
| 302. Less amounts paid by/for borrower (line 220) | 196,100.00 | 602. Less reduction amount due to seller (line 520) | 121,836.42 |
| **303. CASH      TO      BORROWER** | 110.02 | **603. CASH      TO      SELLER** | 63,269.56 |

SUBSTITUTE FORM 1099 SELLER STATEMENT: The information contained herein is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported. The Contract Sales Price described on Line 401 above constitutes the Gross Proceeds of this transaction.

You are required by law to provide the settlement agent with your correct taxpayer identification number. If you do not provide the settlement agent with your correct taxpayer identification number, you may be subject to civil or criminal penalties imposed by law. Under penalties of perjury, I certify that the number shown on this statement is my correct taxpayer identification number.

_____  Gabrielle Harvy
Patricia Gabriel Harvey



EXHIBIT
"B"

RESPA, HB 4305.2 - REV. HUD1/3/86.

| L. SETTLEMENT CHARGES: | File Number: 2-85-05 | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|
| 700. TOTAL SALES/BROKER'S COMMISSION based on price $ @ = | | | |
| Division of commission (line 700) as follows: | | | |
| 701. $ to | | | |
| 702. $ to | | | |
| 703. Commission paid at Settlement | | | |
| 704. | | | |
| 800. ITEMS PAYABLE IN CONNECTION WITH LOAN | P.O.C. | | |
| 801. Loan Origination Fee 5 % Broker's Home, LLC. | | | |
| 802. Loan Discount % | | 7,400.00 | |
| 803. Appraisal Fee to L & J Appraisal Company | | 350.00 | |
| 804. Credit Report to | | | |
| 805. Underwriting Fee to Argent Mortgage Company, LLC | | 375.00 | |
| 806. Processing Fee to | | | |
| 807. Administration Fee to Argent Mortgage Company, LLC | | 175.00 | |
| 808. Tax Related Service Fee to Argent Mortgage Company, LLC | | 70.00 | |
| 809. Tax Service Fee to Argent Mortgage Company, LLC | | 9.00 | |
| 810. | | | |
| 811. | | | |
| 812. | | | |
| 813. | | | |
| 814. Premium Yield Adjustment Broker's Home, LLC. | | 1480L | |
| 815. | | | |
| 900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | | |
| 901. Interest from 03/09/05 to 04/01/05 @$ 25.75 /day 23 day(s) | | 592.25 | |
| 902. Mortgage Insurance Premium to | | | |
| 903. Hazard Insurance Premium yrs. to | | | |
| 904. | | | |
| 905. | | | |
| 1000. RESERVES DEPOSITED WITH LENDER FOR | | | |
| 1001. Hazard Insurance mo. @$ / mo. | | | |
| 1002. Mortgage Insurance mo. @$ / mo. | | | |
| 1003. City property taxes mo. @$ / mo. | | | |
| 1004. County property taxes mo. @$ / mo. | | | |
| 1005. Annual Assessments mo. @$ / mo. | | | |
| 1006. Flood Insurance mo. @$ / mo. | | | |
| 1007. mo. @$ / mo. | | | |
| 1008. Aggregate Reserve for Hazard/Flood Ins, City/County Prop Taxes, Mortgage Ins & Annual Assessments | | | |
| 1100. TITLE CHARGES | | | |
| 1101. Settlement or closing fee to Title Management Group, Inc. | | | |
| 1102. Abstract or title search to Title Management Group, Inc. | | | 250.00 |
| 1103. Title examination to Title Management Group, Inc. | | 250.00 | |
| 1104. Title Insurance binder to Title Management Group, Inc. | | 425.00 | |
| 1105. Document preparation to | | | |
| 1106. Notary fees to Title Management Group, Inc. | | | |
| 1107. Attorney's fees to | | 125.00 | |
| (includes above Item No: ) | | | |
| 1108. Title insurance to First American Title Insurance Company | | 777.75 | |
| (includes above item No: ) | | | |
| 1109. Lender's coverage 148,000.00 --- 30.00 | | | |
| 1110. Owner's coverage 185,000.00 --- 747.75 | | | |
| 1111. Cancellation of Mortgage Title Management Group, Inc. | | | |
| 1112. Closing Protection Coverage First American Title Insurance Company | | | 150.00 |
| 1113. Recording Services Fee to Title Management Group, Inc. | | 25.00 | |
| 1200. GOVERNMENT RECORDING AND TRANSFER CHARGES | | 310.00 | |
| 1201. Recording fees Deed $ ; Mortgage $ ; Releases $ | | | |
| 1202. City/county/stamps Deed $ ; Mortgage $ 325.00 | | | |
| 1203. State tax/stamps Deed $ ; Mortgage $ | | | 325.00 |
| 1204. | | | |
| 1205. | | | |
| 1300. ADDITIONAL SETTLEMENT CHARGES | | | |
| 1301. Pay to | | | |
| 1302. Pay to | | | |
| 1303. Pay to City of New Orleans | | | |
| 1304. | | | 130.24 |
| 1305. | | | |
| 1306. | | | |
| 1307. | | | |
| 1308. | | | |
| 1400. TOTAL SETTLEMENT CHARGES (enter on lines 103 and 502, Sections J and K) | | 10,884.00 | 855.24 |

have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

_Lawrence Harvey_
Lawrence Harvey

_Patricia Gabriel Harvey_
Patricia Gabriel Harvey

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

Title Management Group, Inc.

Date 3-9-05



FILED
REGISTER OF MORTGAGES
PARISH OF ORLEANS

2005 MAR 16 P 3 15

Return To:

Argent Mortgage Company, LLC
P.O. Box 5047 Rolling Meadows, IL 60008

Prepared By:Argent Mortgage Company, LLC
Joanne Pimentel
2550 Golf Road, East Tower, 10th Floor
Rolling Meadows, IL 60008

TITLE MANAGEMENT GROUP, INC
3421 N. CAUSEWAY BLVD STE #707
METAIRIE, LA 70002
PHONE: (504) 834-2977

[Space Above This Line For Recording Data]

# MORTGAGE

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated March 9, 2005 together with all Riders to this document.

0074604554 - 9706

LOUISIANA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3019 1/01

-6(LA) (0005)
Page 1 of 15
VMP MORTGAGE FORMS - (800)521-7291

03/09/2005 7:12:45

FILED-CUSTODIAN OF
MORTGAGE RECORDS
2005 - 13 6 2 ≡ 16
PARISH OF ORLEANS

Recorded in Mortgage Office
Instrument No. 809005
NEW ORLEANS, LOUISIANA
DATE: 3-16-05
TIME: 3:13 pm

EXHIBIT
"C"

(B) "Borrower" is LAWRENCE HARVEY

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is Argent Mortgage Company, LLC

Lender is a Limited Liability Company
organized and existing under the laws of Delaware
Lender's address is One City Boulevard West  Orange, CA 92868

Lender's tax identification number is                        . Lender is the mortgagee under this
Security Instrument.
(D) "Note" means the promissory note signed by Borrower and dated March 8, 2005
The Note states that Borrower owes Lender one hundred forty-eight thousand and 00/100
                                                                                Dollars
(U.S. $148,000.00              ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than April 1, 2035
(E) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. All Riders to this
Security Instrument are deemed to be a part of this Security Instrument as if fully incorporated herein. The
following Riders are to be executed by Borrower (check box as applicable):

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [X] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |
| | | Exhibit "A" Legal & Marital  LH |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.

0074600654 - 9706
Initials  LH

-6(LA) (0008)           Page 2 of 16           03/09/2005 7:12:45           Form 3019  1/01

NOTARIAL RECORDS
2005 - 1 3 4 6 2  as 15
PARISH OF ORLEANS



(K) "Escrow Items" means those items that are described in Section 3.

(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the County [Type of Recording Jurisdiction]
of ORLEANS PARISH                                        [Name of Recording Jurisdiction]
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF:

Parcel ID Number: 614344110
3217 UPPERLINE STREET
NEW ORLEANS
("Property Address"):

which currently has the address of
                                    [Street]
[City], Louisiana 70125   [Zip Code]

0074604564 -9706

Page 3 of 15
03/09/2005 7:12:45    Form 3019  1/01

EXHIBIT "A"

**PROPERTY DESCRIPTION:**

A CERTAIN LOT OF GROUND, together with all the buildings and improvements thereon, and all the rights, ways, privileges, servitudes, advantages and appurtenances thereunto belonging or in anywise appertaining, situated in the Sixth District of the City of New Orleans, Parish of Orleans, State of Louisiana, in Square No. 717, bounded by Upperline, Cadiz Prieur, and Roman Streets, commencing, according to plan made by S.A. Calognes Sohnas, Civil Engineers and Surveyors, dated March 26, 1918, at a distance of one hundred two feet, six inches (102'6") from the corner of Upperline and Roman Streets, and measures fifty-one feet (51') front on Upperline Street, with a width in the rear of fifty-one feet, three inches (51'3") depth on the side line nearest to Roman Street of ninety-five feet , ten inches (95'10"), and a depth on the other side line nearest Prieur Street of ninety feet, three inches and four lines (95'3"4"), and is composed of all of Lot number 12, and portions of lots number thirteen, fourteen, and fifteen, on a plan of W.H. Reynolds, Deputy City Surveyor, dated May 1, 1897, annexed to act before E.J. Barnett, late Notary, on January 10, 1898.

The improvements thereon bear the municipal number 3217 Upperline Street

Made and Accepted subject to:

Deleting any covenants, condition, or restrictions indicating a preference, limitation or discrimination based on race, color religion, sex, handicap, familial status, or national origin to the extent such covenants, conditions or restrictions violate 42 use 3604 (c).

Any and all applicable restrictions, servitudes, rights-of-way and outstanding mineral interest contained in the chain of title, without in any way renewing the same or acknowledgin the validity thereof.

Encroachments, overlaps, boundary line disputes, or other matters which would be disclosed by an accurate survey or inspection of the premises.

**MARITAL STATUS:**

Lawrence Harvey (SS# ███████), a person of the full age of majority and competency and resident of Orleans, who swears unto me, Notary Public, that he/she has never been married and further declares that the property being mortgaged is his/her separate and paraphernal property and that his/her present mailing address is 3217 Upperline , New Orleans, Louisiana 70125.

LH

**ADJUSTABLE RATE RIDER**
(LIBOR Six-Month-Index (As Published in the Wall Street Journal)- Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 8th day of March , 2005   and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Argent Mortgage Company, LLC (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

3217 UPPERLINE STREET, NEW ORLEANS, LA  70125
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of  6.350 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES
   (A) Change Dates
The interest rate I will pay may change on the first day of  April, 2007 , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

   (B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in the Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

   If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information.  The Note Holder will give me notice of this choice.

Initials  LH

Loan Number:  0074604554 - 9706

610-1 (Rev 1-01)                    Page 1 of 3                    03/09/2005 7:12:45 AM

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding six percentage points ( 6.000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 8.350% or less than 8.350%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than 'One( 1.000 %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 12.350% or less than 8.350%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Initials

Loan Number:  0074604554 - 9706

610-2 (Rev 1/01)                    Page 2 of 3                         03/09/2005 7:12:45 AM

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing. If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_Lawrence Harvey_ _____ (Seal)   _____ (Seal)
Borrower LAWRENCE HARVEY                                      Borrower


_____ (Seal)   _____ (Seal)
Borrower                                                     Borrower

Loan Number:  0074604554 - 9706

810-3 (Rev 1/01)                 Page 3 of 3                      03/09/2005 7:12:45 AM

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and hypothecate the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

0074604654 - 9706

Page 4 of 18       03/09/2005 7:12:45       Form 3018   1/01

-8ILA1 (0005)



Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

0074604554 - 9706

-6(IL) (0005)

Page 6 of 15

03/09/2005 7:12:45

Form 3019

2005 - 13462 = 16
FILED-CUSTODIAN OF
STATE NOTARIAL RECORDS

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

0074606654 - 9706

Initials: _LH_

-6(IL) (0005)   Page 6 of 15   03/09/2005 7:12:45   Form 3019 1/01



FILED CUSTODIAN OF NOTARIAL RECORDS
2005 - 1 3 4 6 2  = 16
PARISH OF ORLEANS



In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's

0074604554 -9706

-6(LA) (0005)                    Page 7 of 16                    03/09/2005 7:12:45                    Form 3019



knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's

0074604554 - 9706

Page 8 of 15      03/09/2005 7:12:45      Form 3016



requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless

0074604854 - 9706
-6(LA) (0005)     Page 9 of 15     Initials: ___     03/09/2005 7:12:45     Form 3018   1/01



Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the

-6(LA) (0005)                    Page 10 of 16          03/09/2005 7:12:45                    Form 3019

0074604554 - 9706

reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited



0074604654 - 9706

-6(LA) (0008)                 Page 11 of 16    03/09/2005 7:12:45    Form 3019 1



to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

0074604564 - 9706
03/09/2005 7:12:45     Form 3015

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Notice of Default; Right to Cure.** Lender shall give Borrower prior to acceleration following Borrower's failure to pay principal, interest, and other fees and charges as provided in the Note, or following Borrower's breach of any covenant or agreement in this Security Instrument. The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and the sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure as available under Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option may accelerate and require immediate payment in full of all sums secured by this Security Instrument without further demand for payment.

**23. Foreclosure.** Following Lender's acceleration of payment, Lender may commence appropriate foreclosure proceedings under this Security Instrument under ordinary or executory process, under which Lender may cause the Property to be immediately seized and sold, with or without appraisal, in regular session of court or in vacation, in accordance with Applicable Law. For purposes of foreclosure under executory process procedures, Borrower confesses judgment and acknowledges to be indebted to Lender for all sums secured by this Security Instrument, in principal, interest, costs, expenses, attorneys' fees and other fees and charges. To the extent permitted by Applicable Law, Borrower waives: (a) the benefit of appraisal as provided in Articles 2332, 2336, 2723 and 2724 of the Louisiana Code of Civil Procedure, and all other laws with regard to appraisal upon judicial sales; (b) the demand and three (3) days' delay as provided in Articles 2639 and 2721 of the Louisiana Code of Civil Procedure; (c) the notice of seizure as provided under Articles 2293 and 2721 of the Louisiana Code of Civil Procedure; (d) the three (3) days' delay provided under Articles 2331 and 2722 of the Louisiana Code of Civil Procedure; and (e) all other benefits provided under Articles 2331, 2722 and 2723 of the Louisiana Code of Civil Procedure and all other articles not specifically mentioned above. Borrower agrees that any declaration of fact made by an authentic act before a notary public and two witnesses by a person declaring such facts to be within his or her knowledge, will constitute authentic evidence of such facts for purposes of foreclosure under Applicable Law and for purposes of La. R.S. Section 9:3504(D)(6).

**24. Cumulative Remedies.** Lender shall have such additional default remedies as may be available under then Applicable Law. All of Lender's remedies shall be cumulative, and nothing under this Security Instrument shall limit or restrict the remedies available to Lender following default.

**25. Keeper.** Should the Property be seized as an incident to an action for recognition or enforcement of this Security Instrument by executory process, sequestration, attachment, writ of *fieri facias*, or otherwise, Borrower agrees that the court issuing such an order shall, if requested by Lender, appoint Lender, or any person or entity designated by Lender, as keeper of the Property as provided in La. R.S. Section 9:5136, *et. seq.* Borrower agrees to pay the reasonable fees of such a keeper, which fees shall be secured by this Security Instrument as an additional expense.

0074604954 - 9706

Page 12 of 13    03/09/2005 7:12:45    Form 3019    1/01

-6(LA) (0008)



**26. Cancellation.** This Security Instrument shall remain in effect until canceled from the public records. Following the full payment and satisfaction of all sums secured by the Security Instrument, Borrower may request in writing that Lender provide Borrower with the original paraphed Note marked "paid in full", or with an appropriate mortgage cancellation certificate, for submission to the Clerk of Court or Recorder of Mortgages for the Parish of Orleans for the purpose of canceling this Security Instrument. Lender may delay providing Borrower with the canceled Note or with a mortgage cancellation certificate for up to 60 days following Lender's receipt of Borrower's request. Unless Lender agrees to cancel this Security Instrument from the public records, Borrower shall be responsible for doing so. Borrower shall pay all cancellation costs.

**27. Waiver of Homestead Rights.** Borrower (and Borrower's spouse to the extent applicable) waive any homestead rights and other exemptions from seizure with respect to the Property as may be provided under Applicable Law.

**28. Savings and Loan Association.** If Lender is a savings and loan association or thrift institution, the Note and all sums secured by this Security Instrument shall have the benefits of La. R.S. Section 6:830.

**29. Future Advances.** Lender may, but shall not be required to, make advances to protect the security of this Security Instrument pursuant to Section 9. At no time shall the principal amount of the indebtedness secured by this Security Instrument, including advances made pursuant to Section 9, exceed 150% of the original amount of the indebtedness set forth in the Note.

**30. Late Charges.** Should Borrower fail to pay any installment of principal and interest under the Note within fifteen days of when due, Borrower agrees to pay Lender a late charge in an amount equal to    5.000 .

**31. Marital Status.** Borrower's marital status is: Unmarried

**32. Additional Defined Terms.** As used in this Security Instrument, "Lender" additionally includes any successors and assigns of the Lender first named above, as well as any subsequent holder or holders of the Note, or of any indebtedness secured by this Security Instrument.

As used in this Security Instrument, "Note" additionally includes any substitute note or notes issued in replacement of Note first described above. It is Borrower's intent that this Security Instrument secure all renewals, extensions, refinancings, and modifications of the Note, to the extent provided by La. R.S. Section 9:5390.

As used in this Security Instrument, "Lien" also means a privilege, mortgage, security instrument, assignment or other encumbrance. "Real Property" means "immovable property" as that term is used in the Louisiana Civil Code. "Condemnation" includes "expropriation" as that term is used in Louisiana law.

**33. Property Includes Servitudes and Component Parts.** The Property subject to this Security Instrument additionally includes servitudes and component parts now or hereafter attached to or incorporated into the Property.

**34. Full Ownership.** Borrower is the full and lawful owner of the Property. If the Security Instrument is on a leasehold interest, and Borrower subsequently acquires ownership of the Property, Borrower's leasehold and ownership interests in the Property shall not merge unless Lender agrees to the merge in writing.

**35. Modification of Section 13 of this Security Instrument.** Section 13 of this Security Instrument is hereby modified to the following extent.

Each Borrower covenants and agrees that Borrower's obligations and liabilities under this Security Instrument and under the Note shall be joint, several and solidary with all other Borrowers and with each guarantor of the Note (if applicable). However, to the extent that the Property is community-owned immovable (real) property, and Borrower's spouse co-signs this Security Instrument, but does not co-sign the Note, Borrower's spouse is co-signing this Security Instrument for purpose of: (a) concurring with the granting of this Security Instrument on the community-owned Property (to the extent required under Civil Code Article 2347);

(RHP)-6(LA) (0005)    Page 14 of 16    03/09/2005 7:12:45    Form 3019  1/01

0074604354 - 9706



without obligation the separate property of Borrower's spouse; and (b) waiving any homestead rights to which Borrower's spouse may be entitled under Applicable Law. Notwithstanding the fact that Borrower's spouse did not co-sign the Note, and further notwithstanding the language of Section 13 of this Security Instrument, Borrower's spouse is obligated for payment of the Note and all other sums secured by this Security Instrument to the extent of the spouse's community property interest, and to the extent that the Note is a community obligation.

36. Additional Waivers.  Borrower hereby waives production of mortgage, conveyance and other certificates with respect to the Property, and relieves and releases the Notary Public before whom this Security Instrument was passed from all responsibility and liability in connection therewith.

THUS DONE, AND PASSED, on this ___9___ day of __March 2005__, in the presence
of the undersigned Notary Public, and in the presence of the undersigned competent witnesses, who hereinto sign their names, along with Borrower, after being duly sworn and after reading the whole.

WITNESS(ES) (as to all signatures):

_Lester Morin_                          _Lawrence Harvey_          (Seal)
Leslie Moreau                            LAWRENCE HARVEY            Borrower

_____               _____ (Seal)
                                                                    Borrower

Kimberly Taylor

_____               _____ (Seal)
                                                                    Borrower

_____               _____ (Seal)
                                                                    Borrower

Notary Qualified in
Parish, Louisiana

Joseph C. Coates, III
Notary Identification Number    Notary Public
                                 Qualified for Jefferson Parish
                                 State of Louisiana
                                 Commission Expires: At Death
                                 Bar Roll # 22020   Notary ID # 50676

0074604554 - 9705
Page 15 of 15
03/09/2005 11:12:55

400-15LA (0104)

Posting Date:     2006-03-27
Sequence #:       6330135591
Account #:        ▮▮▮▮▮▮
Routing Transit:  ▮▮▮▮▮▮
Amount #:         $10000.00
Check/Serial #:   000000000505
Bank #:           552
Tran Code:        000505
IRD:              0
ItemType:         P
BOFD:             000000000



LAWRENCE HARVEY
3217 UPPERLINE ST.
NEW ORLEANS, LA 70125

84-1368
654
642932719                             505

DATE 3-23-06

PAY TO THE
ORDER OF   Mill Constrution                    $ 10,000.00

Ten Thousand dollar                            DOLLARS

CHASE
JPMorgan Chase Bank, N.A.
Baton Rouge, Louisiana 70801

MEMO Rebuild                   Lawrence Harvey

⑆0 505 ⑆ ⑈000 1000000⑈

03/27/06
⑆111900057

⑆6330135591⑆

EXHIBIT
"D"

Posting Date: 2006-06-09
Sequence #: 6230202408
Account #: ███████
Routing Transit: ███████
Amount #: $30000.00
Check/Serial #: 000000000534
Bank #: 552
Tran Code: 000534
IRD: 0
ItemType: P
BOFD: 000000000



| | |
|---|---|
| Posting Date: | 2006-06-26 |
| Sequence #: | 6230389827 |
| Account #: | ████████ |
| Routing Transit: | ████████ |
| Amount #: | $30000.00 |
| Check/Serial #: | 000000000540 |
| Bank #: | 552 |
| Tran Code: | 000540 |
| IRD: | 0 |
| ItemType: | P |
| BOFD: | 000000000 |





Posting Date:       2006-08-14
Sequence #:         6230158329
Account #:          ▉▉▉▉▉
Routing Transit:    ▉▉▉▉▉
Amount #:           $40000.00
Check/Serial #:     000000000546
Bank #:             552
Tran Code:          000546
IRD:                0
ItemType:           P
BOFD:               000000000



## RESIDENTIAL LEASE AGREEMENT

1.  This agreement is made and entered into the _3rd_ day of _March_, 20 _11_, between the following named persons:

_Lawerence Harvey_ _____

_Patricia Harvey_ _____

(herein called "Tenants") and _Brenda Dillon_ (herein callled "Landlord). Subject to the terms and conditions set forth in this Agreement, Landlord rents to Tenants, and Tenants rent from Landlord, the premises located at _3128 Uppertine St. N.O. LA. 70125_ (herein called "the premises"). The premises shall be occupied only by the above mentioned Tenants. The tenants shall use the premises for residential purposes only and for no other purpose without Landlord's prior written consent. Occupancy by guests for more than ten days in any six-month period is prohibited without Landlord's written consent and shall be considered a breach of this Agreement.

2.  **INDIVIDUAL LIABILITY** Each tenant who signs this Agreement, whether or not said person is or remains in possesion, shall be jontly and severally liable for the full performance of each and every obligation of this Agreement, but not limited to, the payment of all rent due and the payment of cost to remedy damages to the premises regardless of whether such damages were caused by a Tenant or invitee of a Tenant.

3.  **TERMS OF THE TENANCY** The term of this Agreement shall commence on _March 3_, 20 _11_, and shall continue from that date

___ a. on a month-to-month basis. This Agreement will continue for successive terms of one month each until either Landlord or Tenant terminate the tenancy by giving the other thirty (30) days written notice of an intention to terminate the premises. In the event such notice is given, Tenants areee to pay all rent up to and including the motice period.

the

1



___ b. for a period of _4_ years expiring on _March_, 20 _14_.
Should Trenants vacate before the expiration of the term, Tenants shall be liable
for the balance of the rent for the remainder of the term, less any rent Landlord
collects or could have collected from a replacement tenant by reasonably
attempting to re-rent.  Tenants who vacate before expiration of the term are
also     responsible for the Landlord's costs of advertising for a replacement tenant.  In
the event Tenant fails to give written notice of an intention to vacate the
premises at the end of the term, the tenancy shall become one month-to-month
on all terms specified in section (a) of this clause.

4.     **PAYMENT OF RENT** Tenants shall pay Landlord rent of $ _1,000.00_ per
month in advance on the _3rd_ day of each month.  If that falls on a weekend or
legal holiday, the rent is due on the next business day.  Rent shall be paid by personal
check, money order or cashier's check only, to _Brenda Dillon_ at,
_3126 Chippewa St. N.O., LA. 70125_,
or at such other place as Landlord shall designate from time to time.

5.     **LATE CHARGES AND RETURN CHECKS** If rent is paid after the _3rd_ day of the
month, there will be a late charge of $ _50.00_ assessed.  If any check given by Tenant
to Landlord for the payment of rent or for any other sum due under this Agreement is
returned for insufficient funds, a "stop payment" or any other reason, Tenant shall pay
Landlord a return check charge of $ _25.00_.

6.     **FAILURE TO PAY** As required by law, Tenants are hereby notified that a negative
credit history may be submitted to a credit reporting agency if Tenants fail to fulfill the
terms of their credit obligation, such as their financial obligation under the terms of this
Agreement.

7.     **SECURITY DEPOSIT** Before the commencement of this Agreement, Tenants shall
pay Landlord $ _1,000.00_ as a security deposit.  Landlord may use therefrom
such amount as are reasonably necesssary to remedy Tenants' default in the payment
of rent, repair damages to the premises exclusive of ordinary wear and tear, and to
clean the premises if necessary.  Landlord shall refund Tenants the balance of the
security deposit after such dedeuctions within twenty-one (21) days after the expiration
of this Agreement. If deductions have been made.  Landlord shall provide Tenants with
an itemized account of each deduction including the reasins for and the dollar amount
of each deduction.

2

Interest payent on security deposits accrue as follows:

____ a. Local law does not require Landlord to pay interest on security deposits.

____ b. Local law requires Landlord to pay Tenants interet payments on security deposit as follow:

_____

_____

8.    **POSSESSION OF THE PREMISES** The failure of Tenants to take possession of the premises shall not relieve them of their obligation to pay rent.  If Landlord is unable to deliver possession of the premises for any reason nt within Landlord's control, Landlord shall not be liable for any damages caused thereby, nor will this Agreement be void or voidabe, but the Tenants shall not be liable for any rent until possession is delivered.  If Landlord is unable to deliver possession within ___30___ calender dfays after the agreed commencement date, Tenants may terminate this Agreement by giving written notice to Landlord, and shall receive a refund of all rent and security deposit.

9.    **CONDITION OF THE PREMISES** Tenant agree to

(i) proprty use, operate and safegurad the premises and all furniture and furnishing, appliances and fixtures within the premises.

(ii) maintain the premises in clean and sanitary conditions, and upon termination of the tenancy, to surrender the premises to Landlord in the same condition as when Tenants firt took occupancy, except for ordinary wear and tear.

(iii) if the surrounding ground are part of the premises and for exclusive use of Tenants, Tenants agree to irrigate and maintain the surrounding grounds in a clean and safe manner, keeping the grounds clear of rubbish and weeds and trimming all grass and shrubbery as neessary to effect a neat and orderly appearance to the property.

10.   **LEAD BASED PAINT DISCLOSURE** By initialing, Tenant acknowledges receipt of discloure of information on lead-based paint hazaards.  Landloard has no reports or knowledge of lead-based paint on the premises.

Tenants initial here: _RH, PH_.

11.   **ENTIRE AGREEMENT** This document constitutes the entire Agreement between the Tenants and Landlord.  This Agreement cannnot be modified except in writing and must be signed by all parties.  Neither Landlord nor Tenants have made any promises or representations,

3

other than those set forth in this Agreement and those implied by law.  The failure of Tenants or their guets or invitees to comply with any terms of this Agreement is grounds for termination of the tenancy, with appropriate notice to Tenants and procedures as required by law.

_Brenda Dillon_

Landlord

_3124 Upperline St._

Address

_Laurence Harvey_

Tenant

Tenant

Tenant

_3/3/2011_

Date

_3-3-11_

Date

_3-3-11_

Date

Date

4

## RECEIPT

DATE 3-3-2011   No. 941921

RECEIVED FROM LAWRENCE HARVEY   $ 1000.⁰⁰

One-Thousand ————— Dollar ᵒᵒ/₁₀ DOLLARS

FOR RENT 3128 Upperline St
FOR

| ACCOUNT | | ○ CASH | FROM 3-3-2011 TO 4-3-2011 |
| PAYMENT $ 1000.⁰⁰ | | ○ MONEY ORDER ○ CHECK | |
| BAL. DUE | | ○ CREDIT CARD | BY Brenda Dillan |

Bᴄ adams 1182

## RECEIPT

DATE 4-3-2011   No. 941922

RECEIVED FROM Lawrence Harvey   $ 1000.⁰⁰

One-Thousand ————— ⁰⁰/₁₀ DOLLARS

FOR RENT 3128 Upperline St
FOR

| ACCOUNT | | ○ CASH | FROM 4-3-2011 TO 5-3-2011 |
| PAYMENT $ 1000.⁰⁰ | | ● MONEY ORDER ○ CHECK | |
| BAL. DUE | | ○ CREDIT CARD | BY Brenda Dillan |

Bᴄ adams 1182

## RECEIPT

DATE 5-3-2011   No. 941923

RECEIVED FROM Lawrence Harvey   $ 1000.⁰⁰

One-Thousand ————— ᵒᵒ/₁₀ DOLLARS

FOR RENT 3128 Upperline St
FOR

| ACCOUNT | | ○ CASH | FROM 5-3-2011 TO 6-3-2011 |
| PAYMENT $ 1000.⁰⁰ | | ○ MONEY ORDER ○ CHECK | |
| BAL. DUE | | ○ CREDIT CARD | BY Brenda Dillan |

Bᴄ adams 1182

## RECEIPT

DATE 6-3-2011   No. 941924

RECEIVED FROM Lawrence Harvey   $ 1000.⁰⁰

One-Thousand ————— ᵒᵒ/₁₀ DOLLARS

FOR RENT 3128 Upperline
FOR

| ACCOUNT | | ● CASH | FROM 6-3-2011 TO 7-3-2011 |
| PAYMENT $ 1000.⁰⁰ | | ○ MONEY ORDER ○ CHECK | |
| BAL. DUE | | ○ CREDIT CARD | BY Brenda Dillan |

Bᴄ adams 1182

RECEIPT

DATE 7-3-2011
No. 941925
RECEIVED FROM Lawerence Harry
$1,000.00
One - Thousand
DOLLARS
☉ FOR RENT
○ FOR 3/28 Uppertine St
ACCOUNT
PAYMENT $1,000.00
BAL. DUE
○ CASH
☉ MONEY ORDER   FROM 7-3-2011   TO 8-3-2011
○ CHECK
○ CREDIT CARD   BY Brenda Diller
adams 1182

---

RECEIPT

DATE 8-3-2011
No. 941926
RECEIVED FROM Lawerence Harry
$1000.00
One - Thousand
DOLLARS
☉ FOR RENT
○ FOR 3/28 Uppertine St
ACCOUNT
PAYMENT $1000.00
BAL. DUE
○ CASH
☉ MONEY ORDER   FROM 8-3-2011   TO 9-3-2011
○ CHECK
○ CREDIT CARD   BY Brenda Diller
adams 1182

---

RECEIPT

DATE 9-3-2011
No. 941927
RECEIVED FROM Lawerence Harry
$1000.00
One - Thousand
DOLLARS
☉ FOR RENT
○ FOR 3/28 Uppertine St
ACCOUNT
PAYMENT $1000.00
BAL. DUE
☉ CASH
○ MONEY ORDER   FROM 9-3-2011   TO 10-3-2011
○ CHECK
○ CREDIT CARD   BY Brenda Diller
adams 1182

---

RECEIPT

DATE 10-3-2011
No. 941928
RECEIVED FROM Lawerence Harry
$1000.00
One - Thousand
DOLLARS
☉ FOR RENT
○ FOR 3/28 Uppertine St
ACCOUNT
PAYMENT $1000.00
BAL. DUE
☉ CASH
○ MONEY ORDER   FROM 10-3-2011   TO 11-3-2011
○ CHECK
○ CREDIT CARD   BY Brenda Diller
adams 1182

**RECEIPT**

DATE 11-3-2011   No. 941929
RECEIVED FROM Lawrence Harry   $1000.00
One Thousand   00/100   DOLLARS
○ FOR RENT
○ FOR   3128 Upperline St
ACCOUNT
PAYMENT $1000.00
BAL. DUE
○ CASH
○ MONEY ORDER
○ CHECK
○ CREDIT CARD
FROM 11-3-2011 TO 12-3-2011
BY Brenda Dallan
1182

**RECEIPT**

DATE 12-3-2011   No. 941930
RECEIVED FROM Lawrence Harry   $1000.00
One Thousand   00/100   DOLLARS
○ FOR RENT
○ FOR   3128 Upperline St
ACCOUNT
PAYMENT $1000.00
BAL. DUE
○ CASH
○ MONEY ORDER
○ CHECK
○ CREDIT CARD
FROM 12-3-2011 TO 1-3-2012
BY Brenda Dallan
1182

**RECEIPT**

DATE 1-3-2012   No. 941931
RECEIVED FROM Lawrence Harry   $1000.00
One Thousand   00/100   DOLLARS
○ FOR RENT
○ FOR   3128 Upperline St
ACCOUNT
PAYMENT $1000.00
BAL. DUE
○ CASH
○ MONEY ORDER
○ CHECK
○ CREDIT CARD
FROM 1-3-2012 TO 2-3-2012
BY Brenda Dallan
1182

**RECEIPT**

DATE 2-3-2012   No. 941932
RECEIVED FROM Lawrence Harry   $1000.00
One Thousand   00/100   DOLLARS
○ FOR RENT
○ FOR   3128 Upperline St
ACCOUNT
PAYMENT $1000.00
BAL. DUE
○ CASH
○ MONEY ORDER
○ CHECK
○ CREDIT CARD
FROM 3-3-2012 TO 4-3-2012
BY Brenda Dallan
1182

**RECEIPT**

DATE 3-3-2012        No. 941941

RECEIVED FROM Lawrence Harvey        $1000.⁰⁰

One - Thousand — ⁰⁰/₁₀₀ DOLLARS

○ FOR RENT
○ FOR   3128 Uppeline St

ACCOUNT
PAYMENT $1000. | 00
BAL. DUE

○ CASH
○ MONEY ORDER
○ CHECK
○ CREDIT CARD

FROM 5-3-2012 TO 6-3-2012
BY Brenda Dallan

Adams 1182

---

**RECEIPT**

DATE 4-3-2012        No. 941942

RECEIVED FROM Lawrence Harvey        $1000.⁰⁰

One - Thousand — ⁰⁰/₁₀₀ DOLLARS

○ FOR RENT
○ FOR   3128 Uppeline St

ACCOUNT
PAYMENT $1000. | 00
BAL. DUE

○ CASH
○ MONEY ORDER
○ CHECK
○ CREDIT CARD

FROM 7-3-2012 TO 8-3-2012
BY Brenda Dallan

Adams 1182

---

**RECEIPT**

DATE 5-3-2012        No. 941943

RECEIVED FROM Lawrence Harvey        $1000.⁰⁰

One - Thousand — ⁰⁰/₁₀₀ DOLLARS

○ FOR RENT
○ FOR   3128 Uppeline St

ACCOUNT
PAYMENT $1000. | 00
BAL. DUE

○ CASH
○ MONEY ORDER
○ CHECK
○ CREDIT CARD

FROM 8-3-2012 TO 9-3-2012
BY Brenda Dallan

Adams 1182

---

**RECEIPT**

DATE 6-3-2012        No. 941944

RECEIVED FROM Lawrence Harvey        $1000.⁰⁰

One - Thousand — ⁰⁰/₁₀₀ DOLLARS

○ FOR RENT
○ FOR   3128 Uppeline St

ACCOUNT
PAYMENT $1000. | 00
BAL. DUE

○ CASH
○ MONEY ORDER
○ CHECK
○ CREDIT CARD

FROM 9-3-2012 TO 10-3-2012
BY Brenda Dallan

Adams 1182

**RECEIPT**

DATE 7-3-2012   No. 941945

RECEIVED FROM Lawrence Harry   $1000.00

One — Thousand   DOLLARS

FOR RENT 3128 Upperline St
FOR

| ACCOUNT | | CASH | FROM 10-3-2012 TO 11-3-2012 |
| PAYMENT | 1000.00 | MONEY ORDER | |
| | | CHECK | BY Brenda Nalin |
| BAL. DUE | | CREDIT CARD | |

Adams 1182

---

**RECEIPT**

DATE 8-3-2012   No. 941946

RECEIVED FROM Lawrence Harry   $1000.00

One — Thousand —   DOLLARS

FOR RENT 3128 Upperline St
FOR

| ACCOUNT | | CASH | FROM 11-3-2012 TO 12-3-2012 |
| PAYMENT | 1000.00 | MONEY ORDER | |
| | | CHECK | BY Brenda Nalin |
| BAL. DUE | | CREDIT CARD | |

Adams 1182

---

**RECEIPT**

DATE 9-3-2012   No. 941947

RECEIVED FROM Lawrence Harry   $1000.00

One — Thousand —   DOLLARS

FOR RENT 3128 Upperline St
FOR

| ACCOUNT | | CASH | FROM 12-3-2012 TO 1-3-2013 |
| PAYMENT | 1000.00 | MONEY ORDER | |
| | | CHECK | BY Brenda Nalin |
| BAL. DUE | | CREDIT CARD | |

Adams 1182

---

**RECEIPT**

DATE 10-3-2012   No. 941948

RECEIVED FROM Lawrence Harry   $1000.00

One — Thousand —   DOLLARS

FOR RENT 3128 Upperline St
FOR

| ACCOUNT | | CASH | FROM 1-3-2013 TO 2-3-2013 |
| PAYMENT | 1000.00 | MONEY ORDER | |
| | | CHECK | BY Brenda Nalin |
| BAL. DUE | | CREDIT CARD | |

Adams 1182

**RECEIPT**

DATE 11·3·2012   No. 941949

RECEIVED FROM Lawrence Hang

One - Thosand — $\frac{00}{100}$   DOLLARS

○ FOR RENT 3128 Uppeline St
○ FOR

ACCOUNT
PAYMENT $1000  00   ○ CASH   FROM 2-3-2013   TO 3-3-2013
○ MONEY ORDER
○ CHECK   BY Brenda Nelson
BAL. DUE   ○ CREDIT CARD

adams 1182

---

**RECEIPT**

DATE 12·3·2012   No. 941950

RECEIVED FROM Lawrence Hang

One Thousand — $\frac{00}{100}$   DOLLARS

○ FOR RENT 3128 Uppeline St
○ FOR

ACCOUNT
PAYMENT $1000  00   ○ CASH   FROM 2-3-2013   TO 4-3-2013
○ MONEY ORDER
○ CHECK   BY Brenda Nelson
BAL. DUE   ○ CREDIT CARD

adams 1182

---

**RECEIPT**

DATE 1-3-2013   No. 941951

RECEIVED FROM Lawrence Hang

One - Thosand — $\frac{00}{100}$   DOLLARS

○ FOR RENT 3128 Uppeline St
○ FOR

ACCOUNT
PAYMENT $1000  00   ○ CASH   FROM 4-3-2013   TO 5-3-2013
○ MONEY ORDER
○ CHECK   BY Brenda Nelson
BAL. DUE   ○ CREDIT CARD

adams 1182

---

**RECEIPT**

DATE 2-3-2013   No. 941952

RECEIVED FROM Lawrence Hang

One Thousand $\frac{00}{100}$   DOLLARS

○ FOR RENT 3128 Uppeline St
○ FOR

ACCOUNT
PAYMENT $1000  00   ○ CASH   FROM 5-3-2013   TO 6-3-2013
○ MONEY ORDER
○ CHECK   BY Brenda Nelson
BAL. DUE   ○ CREDIT CARD

adams 1182

**RECEIPT**

DATE 3-3-2013   No. 941957   $1000.00

RECEIVED FROM Lawrence Haney

One - Thousand   DOLLARS

☑ FOR RENT 3128 Uppel rie St
○ FOR

ACCOUNT   ☑ CASH   FROM 7-3-2013 TO 8-3-2013
PAYMENT $1000.00   ○ MONEY ORDER
BAL. DUE   ○ CHECK   BY Brenda Dillon
○ CREDIT CARD

**RECEIPT**

DATE 4-3-2013   No. 941958   $1000.00

RECEIVED FROM Lawrence Haney

One-Thousand   DOLLARS

☑ FOR RENT 3128 Uppel rie St
○ FOR

ACCOUNT   ☑ CASH   FROM 8-3-2013 TO 9-3-2013
PAYMENT $1000.00   ○ MONEY ORDER
BAL. DUE   ○ CHECK   BY Brenda Dillon
○ CREDIT CARD

**RECEIPT**

DATE 5-3-2013   No. 941959   $1000.00

RECEIVED FROM Lawrence Haney

One-Thousand   DOLLARS

☑ FOR RENT 3128 Uppel rie St
○ FOR

ACCOUNT   ☑ CASH   FROM 9-3-2013 TO 10-3-2013
PAYMENT $1000.00   ○ MONEY ORDER
BAL. DUE   ○ CHECK   BY Brenda Dillon
○ CREDIT CARD

**RECEIPT**

DATE 6-3-2013   No. 941960   $1000.00

RECEIVED FROM Lawrence Haney

One Thousand   DOLLARS

☑ FOR RENT 3128 Uppel rie St
○ FOR

ACCOUNT   ☑ CASH   FROM 10-3-2013 TO 11-3-2013
PAYMENT $1000.00   ○ MONEY ORDER
BAL. DUE   ○ CHECK   BY Brenda Dillon
○ CREDIT CARD

RECEIPT

DATE 7-3-2013     No. 941961     $ 1000 00

RECEIVED FROM Lawrence Hang
3128 uppuline St     DOLLARS
○ FOR RENT   One t Thousand    Too
○ FOR

ACCOUNT     ○ CASH
PAYMENT $1,000 00   ○ MONEY ORDER   FROM 11-3-2013 TO 12-3-2013
BAL. DUE     ○ CHECK   BY Brenda Nolan
     ○ CREDIT CARD

Adams 1182

---

RECEIPT

DATE 8-3-2013     No. 941962     $ 1000 00

RECEIVED FROM Lawrence Hang
3128 uppuline St     DOLLARS
○ FOR RENT   One - Thousand -   00
○ FOR

ACCOUNT     ○ CASH
PAYMENT $1,000 00   ○ MONEY ORDER   FROM 12-3-2013 TO 1-3-2014
BAL. DUE     ○ CHECK   BY Brenda Nolan
     ○ CREDIT CARD

Adams 1182

---

RECEIPT

DATE 9-3-2013     No. 941963     $ 100 00

RECEIVED FROM Lawrence Hang
3128 uppuline St     DOLLARS
○ FOR RENT   One - Thousand   00
○ FOR

ACCOUNT     ● CASH
PAYMENT $1,000 00   ○ MONEY ORDER   FROM 1-3-2014 TO 2-3-2014
BAL. DUE     ○ CHECK   BY Brenda Nolan
     ○ CREDIT CARD

Adams 1182

---

RECEIPT

DATE 10-3-2013     No. 941964     $ 100 00

RECEIVED FROM Lawrence Hang
3128 uppuline St     DOLLARS
○ FOR RENT   One - Thousand   00
○ FOR

ACCOUNT     ● CASH
PAYMENT $100 00   ○ MONEY ORDER   FROM 2-3-2014 TO 3-3-2014
BAL. DUE     ○ CHECK   BY Brenda Nolan
     ○ CREDIT CARD

Adams 1182

**RECEIPT**

DATE 11-3-2013  No. 941965
RECEIVED FROM Lawrence Hong  $1000 00
One-Thousand  00/00 DOLLARS
FOR RENT  3/28 uppeline St
FOR
ACCOUNT  CASH  MONEY ORDER  FROM ___ TO ___
PAYMENT 1000 00  CHECK
BAL. DUE  CREDIT CARD  BY
adams 1182

---

**RECEIPT**

DATE 12-3-2013  No. 941966
RECEIVED FROM Lawrence Hong  $1000 00
One-Thousand  00/00 DOLLARS
FOR RENT  3/28 uppeline St
FOR
ACCOUNT  CASH  MONEY ORDER  FROM ___ TO ___
PAYMENT 1000 00  CHECK
BAL. DUE  CREDIT CARD  BY Brenda Wilm
adams 1182

---

**RECEIPT**

DATE 1-3-2014  No. 941967
RECEIVED FROM Lawrence Hong  $1000 00
One-Thousand  00/00 DOLLARS
FOR RENT  3/28 uppeline St
FOR
ACCOUNT  CASH  MONEY ORDER  FROM ___ TO ___
PAYMENT 1000 00  CHECK
BAL. DUE  CREDIT CARD  BY Brenda Wilm
adams 1182

---

**RECEIPT**

DATE 2-3-2014  No. 941968
RECEIVED FROM Lawrence Hong  $1000 00
One-Thousand  00/00 DOLLARS
FOR RENT  3/28 uppeline St
FOR
ACCOUNT  CASH  MONEY ORDER  FROM ___ TO ___
PAYMENT 1000 00  CHECK
BAL. DUE  CREDIT CARD  BY Brenda Wilm
adams 1182

---

**RECEIPT**

DATE 3-3-2014  No. 941973
RECEIVED FROM Lawrence Hong
One-Thousand  00
$1000 00 DOLLARS
FOR RENT  3/28 uppeline St
FOR
ACCOUNT  CASH  MONEY ORDER  CHECK  FROM ___ TO ___
PAYMENT $1000 00

EXHIBIT
"F"

## Don Reichert

| | |
|---|---|
| **From:** | Wands, Lindsey <Lindsey.Wands@hancockwhitney.com> |
| **Sent:** | Thursday, April 06, 2017 3:39 PM |
| **To:** | Don Reichert |
| **Subject:** | RE: Assistance with Mortgage |
| **Attachments:** | Amortization - Rate.xlsx |

Don,

Attached is an approximate amortization based on what was provided below. Also included are the index (LIBOR) rates from those change dates and highlighted in yellow are what I think would have been the rates charged at each change date based on the parameters set below. Let me know if you have any questions.

Lindsey

**Lindsey B. Wands**
Vice President, Middle Market Banking
lindsey.wands@hancockwhitney.com
228 St. Charles Ave. New Orleans, LA 70130
Office 504-586-7303
Mobile 504-914-0472
Internal Extension 410-7303

---

**From:** Don Reichert [mailto:don@brunobrunolaw.com]
**Sent:** Thursday, March 30, 2017 11:54 AM
**To:** Wands, Lindsey
**Subject:** Assistance with Mortgage

Ms. Wands,

Thank you for speaking with me yesterday regarding the above referenced matter.  We are trying to determine the payments on principal that would have been made by the borrower from March 9, 2005 to August 12, 2012.  Due to the terms as outlined below, to do this we need to know the Current Index for each Change Date and the new interest rate for each Change Date.

As we discussed, the note for the March 8, 2005 mortgage was $148,000 plus interest which was to be paid in full no later than April 1, 2035 (30 year mortgage).  The note had an adjustable rate rider.  The Note provides for an initial interest rate of 6.350%.  The Note provides for changes in the Interest rate and the monthly payments, as follows:  The Interest rate may change on the first day of April, 2007, and on that day every sixth month thereafter.  Each date on which the interest rate could change is called a "Change Date."  Beginning with the first Change Date, the interest rate will be based on an Index.  The "Index" is the average of Interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in the Wall Street Journal.  The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."  If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information.  Before each Change Date, the Note Holder will calculate the new interest rate by adding six percentage points (6.000 %) to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to

the limits stated below, this rounded amount will be the new interest rate until the next Change Date. The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that the borrower is expected to owe at the Change Date in full on the maturity date at the new interest rate in substantially equal payments. The result of this calculation will be the new amount of the monthly payment. The interest rate borrower is required to pay at the first Change Date will not be greater than 8.350% or less than 6.350%. Thereafter, the interest rate will never be increased or decreased on any single Change Date by more than One (1.000 %) from the rate of interest borrower has been paying for the preceding six months. Borrower's interest rate will never be greater than 12.350% or less than 6.350%. The borrower's interest rate will become effective on each Change Date. Borrower will pay the amount of borrower's new monthly payment beginning on the first monthly payment date after the Change Date until the amount of borrower's monthly payment changes again.

Please let me know if you have any questions and/or if you need any additional information. Thank you for your assistance with this matter. It is greatly appreciated.

Thanks,
Don

Don Reichert
Associate Attorney
**Bruno & Bruno, LLP**
855 Baronne Street
New Orleans, LA 70113
Main: (504) 525-1335
Direct: (504) 304-4216
don@brunobrunolaw.com

The information contained in this electronic message is attorney privileged and confidential information intended only for the use of the owner of the email address listed as the recipient of this message. If you are not the intended recipient, or the employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any disclosure, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this transmission in error, please immediately notify us by telephone at (504) 525-1335.

Learn about our Commitment to Service: hancockwhitney.com/commitment-to-service

*************************************************

This E-Mail transmission (and/or the documents accompanying it) may contain information belonging to the sender which is confidential, privileged and/or exempt from disclosure under applicable law. The information is intended only for the use of the individual(s) or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this E-Mail transmission in error, please immediately notify us by return E-Mail or telephone to arrange for return of its contents including any documents.

|  | Number | Payment | Interest | Principal | Balance |
|---|---|---|---|---|---|
| 3/31/2005 | 1 | 920.91 | 783.17 | 137.74 | 147,862.26 |
| 4/30/2005 | 2 | 920.91 | 782.44 | 138.47 | 147,723.79 |
| 5/31/2005 | 3 | 920.91 | 781.71 | 139.20 | 147,584.58 |
| 6/30/2005 | 4 | 920.91 | 780.97 | 139.94 | 147,444.64 |
| 7/31/2005 | 5 | 920.91 | 780.23 | 140.68 | 147,303.96 |
| 8/31/2005 | 6 | 920.91 | 779.48 | 141.43 | 147,162.54 |
| 9/30/2005 | 7 | 920.91 | 778.74 | 142.17 | 147,020.36 |
| 10/31/2005 | 8 | 920.91 | 777.98 | 142.93 | 146,877.44 |
| 11/30/2005 | 9 | 920.91 | 777.23 | 143.68 | 146,733.75 |
| 12/31/2005 | 10 | 920.91 | 776.47 | 144.44 | 146,589.31 |
| 1/31/2006 | 11 | 920.91 | 775.70 | 145.21 | 146,444.10 |
| 2/28/2006 | 12 | 920.91 | 774.93 | 145.98 | 146,298.13 |
| 3/31/2006 | 13 | 920.91 | 774.16 | 146.75 | 146,151.38 |
| 4/30/2006 | 14 | 920.91 | 773.38 | 147.52 | 146,003.86 |
| 5/31/2006 | 15 | 920.91 | 772.60 | 148.31 | 145,855.55 |
| 6/30/2006 | 16 | 920.91 | 771.82 | 149.09 | 145,706.46 |
| 7/31/2006 | 17 | 920.91 | 771.03 | 149.88 | 145,556.58 |
| 8/31/2006 | 18 | 920.91 | 770.24 | 150.67 | 145,405.91 |
| 9/30/2006 | 19 | 920.91 | 769.44 | 151.47 | 145,254.44 |
| 10/31/2006 | 20 | 920.91 | 768.64 | 152.27 | 145,102.17 |
| 11/30/2006 | 21 | 920.91 | 767.83 | 153.08 | 144,949.09 |
| 12/31/2006 | 22 | 920.91 | 767.02 | 153.89 | 144,795.21 |
| 1/31/2007 | 23 | 920.91 | 766.21 | 154.70 | 144,640.51 |
| 2/28/2007 | 24 | 920.91 | 765.39 | 155.52 | 144,484.99 |
| 3/31/2007 | 25 | 920.91 | 764.57 | 156.34 | 144,328.64 |
| 4/30/2007 | 1 | 1,113.34 | 1,004.29 | 109.06 | 144,219.58 |
| 5/31/2007 | 2 | 1,113.34 | 1,003.53 | 109.82 | 144,109.77 |
| 6/30/2007 | 3 | 1,113.34 | 1,002.76 | 110.58 | 143,999.18 |
| 7/31/2007 | 4 | 1,113.34 | 1,001.99 | 111.35 | 143,887.83 |
| 8/31/2007 | 5 | 1,113.34 | 1,001.22 | 112.13 | 143,775.71 |
| 9/30/2007 | 6 | 1,113.34 | 1,000.44 | 112.91 | 143,662.80 |
| 10/31/2007 | 1 | 1,213.02 | 1,119.37 | 93.65 | 143,569.15 |
| 11/30/2007 | 2 | 1,213.02 | 1,118.64 | 94.38 | 143,474.77 |
| 12/31/2007 | 3 | 1,213.02 | 1,117.91 | 95.12 | 143,379.65 |
| 1/31/2008 | 4 | 1,213.02 | 1,117.17 | 95.86 | 143,283.79 |
| 2/29/2008 | 5 | 1,213.02 | 1,116.42 | 96.61 | 143,187.18 |
| 3/31/2008 | 6 | 1,213.02 | 1,115.67 | 97.36 | 143,089.83 |
| 4/30/2008 | 1 | 1,140.49 | 1,028.46 | 112.03 | 142,977.80 |
| 5/31/2008 | 2 | 1,140.49 | 1,027.65 | 112.84 | 142,864.96 |
| 6/30/2008 | 3 | 1,140.49 | 1,026.84 | 113.65 | 142,751.31 |
| 7/31/2008 | 4 | 1,140.49 | 1,026.03 | 114.47 | 142,636.84 |
| 8/31/2008 | 5 | 1,140.49 | 1,025.20 | 115.29 | 142,521.55 |
| 9/30/2008 | 6 | 1,140.49 | 1,024.37 | 116.12 | 142,405.44 |
| 10/31/2008 | 1 | 1,239.96 | 1,142.21 | 97.75 | 142,307.69 |
| 11/30/2008 | 2 | 1,239.96 | 1,141.43 | 98.53 | 142,209.16 |
| 12/31/2008 | 3 | 1,239.96 | 1,140.64 | 99.32 | 142,109.84 |

| 1/31/2009 | 4 | 1,239.96 | 1,139.84 | 100.12 | 142,009.72 |
| 2/28/2009 | 5 | 1,239.96 | 1,139.04 | 100.92 | 141,908.80 |
| 3/31/2009 | 6 | 1,239.96 | 1,138.23 | 101.73 | 141,807.07 |
| 4/30/2009 | 1 | 1,141.43 | 1,019.24 | 122.19 | 141,684.88 |
| 5/31/2009 | 2 | 1,141.43 | 1,018.36 | 123.07 | 141,561.82 |
| 6/30/2009 | 3 | 1,141.43 | 1,017.48 | 123.95 | 141,437.87 |
| 7/31/2009 | 4 | 1,141.43 | 1,016.58 | 124.84 | 141,313.03 |
| 8/31/2009 | 5 | 1,141.43 | 1,015.69 | 125.74 | 141,187.29 |
| 9/30/2009 | 6 | 1,141.43 | 1,014.78 | 126.64 | 141,060.65 |
| 10/31/2009 | 1 | 956.13 | 778.77 | 177.36 | 140,883.29 |
| 11/30/2009 | 2 | 956.13 | 777.79 | 178.34 | 140,704.96 |
| 12/31/2009 | 3 | 956.13 | 776.81 | 179.32 | 140,525.64 |
| 1/31/2010 | 4 | 956.13 | 775.82 | 180.31 | 140,345.33 |
| 2/28/2010 | 5 | 956.13 | 774.82 | 181.31 | 140,164.02 |
| 3/31/2010 | 6 | 956.13 | 773.82 | 182.31 | 139,981.71 |
| 4/30/2010 | 1 | 956.13 | 772.82 | 183.31 | 139,798.40 |
| 5/31/2010 | 2 | 956.13 | 771.80 | 184.33 | 139,614.07 |
| 6/30/2010 | 3 | 956.13 | 770.79 | 185.34 | 139,428.73 |
| 7/31/2010 | 4 | 956.13 | 769.76 | 186.37 | 139,242.36 |
| 8/31/2010 | 5 | 956.13 | 768.73 | 187.40 | 139,054.97 |
| 9/30/2010 | 6 | 956.13 | 767.70 | 188.43 | 138,866.54 |
| 10/31/2010 | 1 | 945.31 | 752.19 | 193.12 | 138,673.42 |
| 11/30/2010 | 2 | 945.31 | 751.15 | 194.17 | 138,479.25 |
| 12/31/2010 | 3 | 945.31 | 750.10 | 195.22 | 138,284.03 |
| 1/31/2011 | 4 | 945.31 | 749.04 | 196.28 | 138,087.76 |
| 2/28/2011 | 5 | 945.31 | 747.98 | 197.34 | 137,890.42 |
| 3/31/2011 | 6 | 945.31 | 746.91 | 198.41 | 137,692.01 |
| 4/30/2011 | 7 | 945.31 | 745.83 | 199.48 | 137,492.53 |
| 5/31/2011 | 8 | 945.31 | 744.75 | 200.56 | 137,291.97 |
| 6/30/2011 | 9 | 945.31 | 743.66 | 201.65 | 137,090.32 |
| 7/31/2011 | 10 | 945.31 | 742.57 | 202.74 | 136,887.57 |
| 8/31/2011 | 11 | 945.31 | 741.47 | 203.84 | 136,683.73 |
| 9/30/2011 | 12 | 945.31 | 740.37 | 204.94 | 136,478.79 |
| 10/31/2011 | 1 | 955.82 | 753.48 | 202.35 | 136,276.44 |
| 11/30/2011 | 2 | 955.82 | 752.36 | 203.46 | 136,072.98 |
| 12/31/2011 | 3 | 955.82 | 751.24 | 204.59 | 135,868.39 |
| 1/31/2012 | 4 | 955.82 | 750.11 | 205.72 | 135,662.68 |
| 2/29/2012 | 5 | 955.82 | 748.97 | 206.85 | 135,455.83 |
| 3/31/2012 | 6 | 955.82 | 747.83 | 207.99 | 135,247.83 |
| 4/30/2012 | 1 | 955.82 | 753.48 | 202.35 | 136,276.44 |
| 5/31/2012 | 2 | 955.82 | 752.36 | 203.46 | 136,072.98 |
| 6/30/2012 | 3 | 955.82 | 751.24 | 204.59 | 135,868.39 |
| 7/31/2012 | 4 | 955.82 | 750.11 | 205.72 | 135,662.68 |
| 8/31/2012 | 5 | 955.82 | 748.97 | 206.85 | 135,455.83 |
| 9/30/2012 | 6 | 955.82 | 747.83 | 207.99 | 135,247.83 |

| Date | 6 Month LIBOR US0006M Index | +6% | Rate | Balance |
|---|---|---|---|---|
| 4/1/2007 | 5.32969 | 11.32969 | 8.350 | 144,328.64 |
| 10/1/2007 | 5.14625 | 11.14625 | 9.350 | 143,662.80 |
| 4/1/2008 | 2.61625 | 8.61625 | 8.625 | 143,089.83 |
| 10/1/2008 | 4.0375 | 10.0375 | 9.625 | 142,405.44 |
| 4/1/2009 | 1.71625 | 7.71625 | 8.625 | 141,807.07 |
| 10/1/2009 | 0.62 | 6.62 | 7.625 | 141,060.65 |
| 4/1/2010 | 0.44156 | 6.44156 | 6.625 | 139,981.71 |
| 10/1/2010 | 0.46313 | 6.46313 | 6.500 | 138,866.54 |
| 4/1/2011 | 0.4595 | 6.4595 | 6.500 | 137,692.01 |
| 10/1/2011 | 0.55783 | 6.55783 | 6.625 | 136,478.79 |
| 4/1/2012 | 0.7334 | 6.7334 | 6.750 | 135,247.83 |



EXHIBIT
"6"



Print Preview

**THIS COPY IS FOR YOUR RECORDS ONLY**

Close

**HARVEY LAWRENCE**
**3217 UPPERLINE ST**
**NEW ORLEANS , LA 70125**

**Property Values**
**Land Assessment:** $4740
**Improvement Assessment:** $3950
**\* Homestead Exemption:** $0

**Tax Bill No.**
614344110
View Property Information
**Property Location**
3217 UPPERLINE ST
**Legal Description**
SQ 717 PT LOTS 12 15 UPPERLI

> **Interest accrues at 1% per month on all delinquent taxes. In addition,**
> **current year penalties accrue at 10% on February 1st and an**
> **additional 9.5% on April 1st.**

| Period | Type | Code | Delinquency Date | Tax or Lien | Interest | City Penalty | Collection Fee | Total |
|--------|------|------|------------------|-------------|----------|--------------|----------------|-------|
| 2012 | Real Estate Tax | | 02/01/12 | $1,277.96 | $0.00 | $0.00 | $0.00 | $1,277.96 |
| 2012 | Broadmoor NID | | 02/01/12 | $100.00 | $0.00 | $0.00 | $0.00 | $100.00 |

**Total Taxes Due As Of 1/5/2012   $1377.96**
Pay Total Taxes Due Now   Cancel

**\*Attention Taxpayers:** If you are entitled to a homestead exemption and no amount is indicated,
contact your assessor immediately at (504) 658-1300 . You should also notify your mortgage company.
In the event of an error, your assessor will make the correction and a supplemental bill will be issued.
Your assessor can answer questions on assessments, mailing name and address, or legal descriptions.
For all other questions, call the Bureau of the Treasury at 1-888-387-8027, hours 8:00 am – 5:00 pm
Monday through Friday, Room 1W40, City Hall.

CUSTOMER COPY/COPIA DEL CLIENTE

WAL*MART 1353

5110 JEFFERSON HWY
HARAHAN, LA  70123
5110 JEFFERSON HWY
DATE/FECHA:03/01/12 TIME/HORA:18:54

ExpressPayment (TM)

SEND/ENVIO

Sender Information
Información de la persona envía
LAWERENCE  HARVEY
3217 UPPERLINE
N O, LA  70125

Third Party Information
Información de terceros

Receiver Information
Información de la persona que recibe
OCWEN LOAN SERVICING
Account/Cuenta: ****3421

Reference/Referencia#          68806900

Amount Transferred/
Cantidad del Envío          1,127.67
Fee/Cargos                      9.55
Total                       1,137.22
Collect/Cobrado             1,137.22

THIS TRANSACTION IS SUBJECT TO THE
TERMS AND CONDITIONS ON THE MONEYGRAM
RECEIPT HOLDER. / ESTA TRANSACCION
ESTA SUJETA A LOS TERMINOS Y
CONDICIONES QUE VIENEN EN LA FORMA DE
RECIBO.

MoneyGram

# MoneyGram® ExpressPayment® Service

Bills Paid Today, Cards Loaded Now.   Facturas pagadas hoy, tarjetas cargadas ahora

## CUSTOMER COPY

### TO BE COMPLETED BY THE CUSTOMER — DATOS QUE DEBE COMPLETAR EL CLIENTE

**Sender's Full Name** — Nombre completo del remitente — [First Name/Middle Name/Last Name Primer](Nombre/Segundo Nombre/Apellido)
LAWRENCE HAILEY

**Sender's Address** — Domicilio del remitente
3217 Uppervine Street

**City** — Ciudad
No Lg

**State** — Estado
LA

**Zip Code** — C.P.
70125

**Sender's Signature** — Firma del remitente
Lawrence Hailey

**Date** — Fecha
3/1/2012

**Sender's Main Telephone Number** — Número telefónico principal del remitente
(504) 994-6029

---

### PAY A BILL — (same-day notification) — PAGAR UNA FACTURA (Notificación el mismo día)

**Company Name** — Nombre de la compañía
Ocwen Loan Servicing LLC

**City & State (optional)** — Ciudad y estado (opcional)

**Receive Code (required)** — Código de recibo (requerido)
2 3 6 5 5

**Account Number of the Bill to Pay** — Número de cuenta de la factura a pagar
7 0 5 7 1 5 1 3 1 4 2 1 7

**Amount to Pay** — Monto a pagar
$ 1127 67

**Message to Biller or Beneficiary Name** — Mensaje para el emisor de factura o el nombre del beneficiario
(Minimum of 40 characters. Not all companies have the ability to transmit this message.)
(Mensaje de un mínimo de 40 caracteres. No todas las compañías tienen la capacidad de transmitir este mensaje.)

---

### LOAD A PREPAID CARD   CARGAR UNA TARJETA PREPAGADA

**Company Name** — Nombre de la compañía

**City & State (optional)** — Ciudad y estado (opcional)

**Receive Code (required)** — Código de recibo (requerido)

**Prepaid Card Number to Load** — Número de la tarjeta prepagada a cargar

**Amount to Load** — Monto a cargar
$

**Popular Prepaid Card Receive Codes** — Código de control de tarjetas prepagadas comunes

| Account/Nro. | Code |
|---|---|
| NetSpend | 7000 |
| BabyPhat Prepaid Visa RushCard | 2495 |
| Visa RushCard | 2495 |
| H&R Block Emerald Prepaid Mastercard | 4941 |
| Univision Prepaid Mastercard | 7308 |
| Money Network | 7774 |
| Visa ReadyLink | 7034 |

---

You can pay thousands of bills and load hundreds of cards with MoneyGram.   Puede pagar miles de facturas y cargar cientos de tarjetas con MoneyGram.

MG50015 EXP (Rev 11/01)

7598G

75986

Form **1040**

Department of the Treasury - Internal Revenue Service

**U.S. Individual Income Tax Return** **2009** (99) IRS Use Only - Do not write or staple in this space.

For the year Jan. 1- Dec. 31, 2009, or other tax year beginning , 2009, ending , 20

OMB No. 1545-0074

**Label**
(See inst on pg 14.)
Use the IRS label.
Otherwise, please print or type.

LAWRENCE HARVEY SR
2401 DIVISION ST APT. C30
METAIRIE, LA 70001

Your social security number

Spouse's social security number

▲ You must enter your SSN(s) above. ▲

Checking a box below will not change your tax or refund.

**Presidential Election Campaign** ▶ Check here if you, or your spouse if filing jointly, want $3 to go to this fund (see page 14) ▶ ☐ You ☐ Spouse

**Filing Status**

Check only one box.

1 ☐ Single
2 ☐ Married filing jointly (even if only one had income)
3 ☐ Married filing separately. Enter spouse's SSN above & full name below.
4 ☒ Head of household (with qualifying person). (See page 15.) If the qualifying person is a child but not your dependent, enter this child's name here. ▶
5 ☐ Qualifying widow(er) with dependent child (see page 16)

**Exemptions**

If more than four dependents, see page 17 and check here ▶ ☐

6a ☒ Yourself. If someone can claim you as a dependent, **do not** check box 6a
b ☐ Spouse

c Dependents:

| (1) First name  Last name | (2) Dependent's social security number | (3) Dependent's relationship to you | (4) ✓ if qual. child for child tax cr. |
|---|---|---|---|
| KIRK MOSS | | NEPHEW | ☒ |
| KIA MOSS | | NIECE | ☒ |

Boxes checked on 6a and 6b **1**
No. of children on 6c who:
• lived with you **2**
• did not live with you due to divorce or separation (see page 18)
Dependents on 6c not entered above

Add numbers on lines above ▶ **3**

d Total number of exemptions claimed

**Income**

Attach Form(s) W-2 here. Also attach Forms W-2G and 1099-R if tax was withheld.

If you did not get a W-2, see page 22.

Enclose, but do not attach, any payment. Also, please use Form 1040-V.

| | | | |
|---|---|---|---|
| 7 | Wages, salaries, tips, etc. Attach Form(s) W-2 | 7 | 29,499. |
| 8a | Taxable interest. Attach Schedule B if required | 8a | |
| b | Tax-exempt interest. Do not include on line 8a | 8b | |
| 9a | Ordinary dividends. Attach Schedule B if required | 9a | |
| b | Qualified dividends (see page 22) | 9b | |
| 10 | Taxable refunds, credits, or offsets of state and local income taxes (see page 23) | 10 | |
| 11 | Alimony received | 11 | |
| 12 | Business income or (loss). Attach Schedule C or C-EZ | 12 | |
| 13 | Capital gain or (loss). Attach Schedule D if required. If not required, check here ▶ ☐ | 13 | |
| 14 | Other gains or (losses). Attach Form 4797 | 14 | |
| 15a | IRA distributions 15a | b Taxable amt | 15b | 3,199. |
| 16a | Pensions and annuities 16a | b Taxable amt | 16b | |
| 17 | Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E | 17 | (24,187.) |
| 18 | Farm income or (loss). Attach Schedule F | 18 | |
| 19 | Unemployment compensation in excess of $2,400 per recipient | 19 | |
| 20a | Social security benefits 20a | b Taxable amt (see page 27) | 20b | |
| 21 | Other income. List type and amount (see page 29) | 21 | |
| 22 | Add the amounts in the far right column for lines 7 through 21. This is your **total income** ▶ | 22 | 8,511. |

**Adjusted Gross Income**

| | | | |
|---|---|---|---|
| 23 | Educator expenses (see page 29) | 23 | |
| 24 | Certain business expenses of reservists, performing artists, and fee-basis government officials. Attach Form 2106 or 2106-EZ | 24 | |
| 25 | Health savings account deduction. Attach Form 8889 | 25 | |
| 26 | Moving expenses. Attach Form 3903 | 26 | |
| 27 | One-half of self-employment tax. Attach Schedule SE | 27 | |
| 28 | Self-employed SEP, SIMPLE, and qualified plans | 28 | |
| 29 | Self-employed health insurance deduction (see page 30) | 29 | |
| 30 | Penalty on early withdrawal of savings | 30 | |
| 31a | Alimony paid  b Recipient's SSN ▶ | 31a | |
| 32 | IRA deduction (see page 31) | 32 | |
| 33 | Student loan interest deduction (see page 34) | 33 | |
| 34 | Tuition and fees deduction. Attach Form 8917 | 34 | |
| 35 | Domestic production activities deduction. Attach Form 8903 | 35 | |
| 36 | Add lines 23 through 31a and 32 through 35 | 36 | |
| 37 | Subtract line 36 from line 22. This is your **adjusted gross income** ▶ | 37 | 8,511. |

**KBA** For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see page 97.

Form 1040 (2009)

Form 1040 (2009)   **LAWRENCE HARVEY SR**                                                                Page **2**

| | | | | | |
|---|---|---|---|---|---|
| **Tax and Credits** | 38 | Amount from line 37 (adjusted gross income) | | 38 | 8,511. |

**39a** Check | ☐ **You** were born before January 2, 1945, ☐ **Blind.** | **Total boxes**
if: | ☐ **Spouse** was born before January 2, 1945, ☐ **Blind.** | checked ▶ **39a**

**b** If your spouse itemizes on a separate return or you were a dual-status alien, see pg 35 & check here ▶ **39b** ☐

**Standard Deduction for—**
- **People who check any box on line 39a, 39b, or 40b or who can be claimed as a dependent, see page 35.**
- **All others:**

Single or Married filing separately, **$5,700**

Married filing jointly or Qualifying widow(er), **$11,400**

Head of household, **$8,350**

| | | | |
|---|---|---|---|
| **40a** | **Itemized deductions** (from Schedule A) **or your standard deduction** (see left margin) | 40a | 8,850. |
| **b** | If you are increasing your standard deduction by certain real estate taxes, new motor vehicle taxes, or a net disaster loss, attach Schedule L and check here (see page 35) ▶ **40b** ☒ | | |
| 41 | Subtract line 40a from line 38 | 41 | (339.) |
| 42 | **Exemptions.** If line 38 is $125,100 or less and you did not provide housing to a Midwestern displaced individual, multiply $3,650 by the number on line 6d. Otherwise, see page 37 | 42 | 10,950. |
| 43 | **Taxable income.** Subtract line 42 from line 41. If line 42 is more than line 41, enter -0- | 43 | 0. |
| 44 | **Tax** (see page 37). Check if any tax is from: **a** ☐ Form(s) 8814  **b** ☐ Form 4972 | 44 | 0. |
| 45 | **Alternative minimum tax** (see page 40). Attach Form 6251 | 45 | |
| 46 | Add lines 44 and 45 ▶ | 46 | 0. |
| 47 | Foreign tax credit. Attach Form 1116 if required | 47 | |
| 48 | Credit for child and dependent care expenses. Attach Form 2441 | 48 | |
| 49 | Education credits from Form 8863, line 29 | 49 | |
| 50 | Retirement savings contributions credit. Attach Form 8880 | 50 | |
| 51 | Child tax credit (see page 42) | 51 | |
| 52 | Credits from Form: **a** ☐ 8396  **b** ☐ 8839  **c** ☐ 5695 | 52 | |
| 53 | Other credits from Form: **a** ☐ 3800  **b** ☐ 8801  **c** ☐ | 53 | |
| 54 | Add ln 47 through 53. These are your **total credits** | 54 | |
| 55 | Subtract line 54 from line 46. If line 54 is more than line 46, enter -0- ▶ | 55 | 0. |

| | | | |
|---|---|---|---|
| **Other Taxes** | 56 | Self-employment tax. Attach Schedule SE | 56 |
| | 57 | Unreported social security and Medicare tax from Form: **a** ☐ 4137  **b** ☐ 8919 | 57 |
| | 58 | Additional tax on IRAs, other qualified retirement plans, etc. Attach Form 5329 if required  **NO** | 58 | 320. |
| | 59 | Additional taxes: **a** ☐ AEIC payments  **b** ☐ Household employment taxes. Attach Schedule H | 59 |
| | 60 | Add lines 55 through 59. This is your **total tax** ▶ | 60 | 320. |

| | | | |
|---|---|---|---|
| **Payments** | 61 | Federal income tax withheld from Forms W-2 and 1099 | 61 | 772. |
| | 62 | 2009 estimated tax payments and amount applied from 2008 return | 62 | |
| | 63 | Making work pay and government retiree credits. Attach Sch M | 63 | 400. |

**If you have a qualifying child, attach Schedule EIC.**

| | | |
|---|---|---|
| **64a** | **Earned income credit (EIC)** | 64a | 2,279. |
| **b** | Nontaxable combat pay election | 64b | |
| 65 | Additional child tax credit. Attach Form 8812 | 65 | 2,000. |
| 66 | Refundable education credit from Form 8863, line 16 | 66 | |
| 67 | First-time homebuyer credit. Attach Form 5405 | 67 | |
| 68 | Amount paid with request for extension to file (see page 72) | 68 | |
| 69 | Excess social security and tier 1 RRTA tax withheld (see page 72) | 69 | |
| 70 | Credits from Form: **a** ☐ 2439  **b** ☐ 4136  **c** ☐ 8801  **d** ☐ 8885 | 70 | |
| 71 | Add lines 61, 62, 63, 64a, and 65 through 70. These are your **total payments** ▶ | 71 | 5,451. |

| | | | |
|---|---|---|---|
| **Refund** | 72 | If line 71 is more than line 60, subtract line 60 from line 71. This is the amount you **overpaid** | 72 | 5,131. |
| **Direct deposit?** See page 73 and fill in 73b, 73c, and 73d, or Form 8888. | **73a** | Amount of line 72 you want **refunded to you.** If Form 8888 is attached, check here ▶ ☐ | 73a | 5,131. |
| | ▶ **b** | Routing number ▬▬▬▬▬▬ ▶ **c** Type: ☒ Checking ☐ Savings | | |
| | ▶ **d** | Account number ▬▬▬▬▬▬ | | |
| | 74 | Amount of line 72 you want applied to your 2010 estimated tax ▶ | 74 | |

| | | | |
|---|---|---|---|
| **Amount You Owe** | 75 | **Amount you owe.** Subtract line 71 from line 60. For details on how to pay, see page 74 ▶ | 75 |
| | 76 | Estimated tax penalty (see page 74) | 76 | |

| | | |
|---|---|---|
| **Third Party Designee** | Do you want to allow another person to discuss this return with the IRS (see page 75)?  ☒ **Yes.** Complete the following.  ☐ No | |

Designee's name ▶ **HR BLOCK**    Phone no. ▶ **(504) 455-3095**    Personal ID number (PIN) ▶ **18466**

| | |
|---|---|
| **Sign Here** Joint return? See page 15. Keep a copy for your records. | Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge. |

Your signature    **For Info Only-Do not file**    Date    Your occupation **DRIVER**    Daytime phone number

Spouse's signature. If a joint return, **both** must sign.    **For Info Only-Do not file**    Date    Spouse's occupation

| | |
|---|---|
| **Paid Preparer's Use Only** | Preparer's signature ▶ [signature]    Date **2/2/2010**    Check if self-employed ☐    Preparer's SSN or PTIN |
| | Firm's name (or yours if self-employed), address, and ZIP code ▶ **HRB TAX GROUP INC**  **NEW ORLEANS, LA 70115**    EIN **43-1871840**    Phone no. **(504) 269-2041** |

1040 (2009)                                                           FD1040-2V 1.25                                                   Form **1040** (2009)
Form Software Copyright 1996 - 2010 HRB Tax Group, Inc.

Form **1040**

Department of the Treasury - Internal Revenue Service

**U.S. Individual Income Tax Return** 2010    (99)  IRS Use Only - Do not write or staple in this space.

For the year Jan. 1- Dec. 31, 2010, or other tax year beginning _____, 2010, ending _____, 20____    OMB No. 1545- 0074

**Name, Address, and SSN**

PRINT CLEARLY

LAWRENCE HARVEY SR
3217 UPPERLINE STREET
NEW ORLEANS, LA 70125

Your social security number

Spouse's social security number

▲ Make sure the SSN(s) above and on line 6c are correct.

Presidential Election Campaign ▶ Check here if you, or your spouse if filing jointly, want $3 to go to this fund    □ You  □ Spouse

Checking a box below will not change your tax or refund.

**Filing Status**

Check only one box.

1 □ Single
2 □ Married filing jointly (even if only one had income)
3 □ Married filing separately. Enter spouse's SSN above & full name here. ▶
4 ☒ Head of household (with qualifying person). (See instructions.) If the qualifying person is a child but not your dependent, enter this child's name here. ▶
5 □ Qualifying widow(er) with dependent child

**Exemptions**

6a ☒ Yourself. If someone can claim you as a dependent, **do not** check box 6a
 b □ Spouse

Boxes checked on 6a and 6b ... 1

c Dependents:

| (1) First name    Last name | (2) Dependent's social security number | (3) Dependent's relationship to you | (4) ✓ if qual. child for child tax cr (see pg 15). |
|---|---|---|---|
| KIRK MOSS | | NEPHEW | ☒ |
| KIA MOSS | | NIECE | ☒ |

If more than four dependents, see inst and check here ▶

No. of children on 6c who:
- lived with you ... 2
- did not live with you due to divorce or separation (see inst)
- Dependents on 6c not entered above

d Total number of exemptions claimed.    Add numbers on lines above ▶ 3

**Income**

Attach Form(s) W-2 here. Also attach Forms W-2G and 1099- R if tax was withheld.

If you did not get a W- 2, see page 20.

Enclose, but do not attach, any payment. Also, please use Form 1040-V.

7 Wages, salaries, tips, etc. Attach Form(s) W-2 ............ 7    8,873.
8a Taxable interest. Attach Schedule B if required ............ 8a
 b Tax- exempt interest. Do not include on line 8a ... | 8b |
9a Ordinary dividends. Attach Schedule B if required ......... 9a
 b Qualified dividends ..................... | 9b |
10 Taxable refunds, credits, or offsets of state and local income taxes ... 10
11 Alimony received ...................... 11
12 Business income or (loss). Attach Schedule C or C- EZ ...... 12
13 Capital gain or (loss). Attach Schedule D if required. If not required, check here ▶ □ ... 13
14 Other gains or (losses). Attach Form 4797 ............ 14
15a IRA distributions | 15a |    b Taxable amt. ... 15b
16a Pensions and annuities | 16a |    b Taxable amt. ... 16b
17 Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E ... 17
18 Farm income or (loss). Attach Schedule F ............ 18
19 Unemployment compensation ................. 19    4,069.
20a Social security benefits | 20a |    b Taxable amount ... 20b
21 Other income. List type and amount ............... 21
22 Combine the amounts in the far right column for lines 7 through 21. This is your **total income** ▶ 22    12,942.

**Adjusted Gross Income**

23 Educator expenses ............... | 23 |
24 Certain business expenses of reservists, performing artists, and fee- basis government officials. Attach Form 2106 or 2106- EZ | 24 |
25 Health savings account deduction. Attach Form 8889 ... | 25 |
26 Moving expenses. Attach Form 3903 ......... | 26 |
27 One- half of self- employment tax. Attach Schedule SE | 27 |
28 Self- employed SEP, SIMPLE, and qualified plans .. | 28 |
29 Self- employed health insurance deduction ..... | 29 |
30 Penalty on early withdrawal of savings ....... | 30 |
31a Alimony paid  b Recipient's SSN ▶ | 31a |
32 IRA deduction ............... | 32 |
33 Student loan interest deduction ......... | 33 |
34 Tuition and fees. Attach Form 8917 ........ | 34 |
35 Domestic production activities deduction. Attach Form 8903 | 35 |
36 Add lines 23 through 31a and 32 through 35 ............ 36
37 Subtract line 36 from line 22. This is your **adjusted gross income** ▶ 37    12,942.

For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see separate instructions.

Form **1040** (2010)

Software Copyright 1996 - 2011 HRB Tax Group, Inc.

Form 1040 (2010)                                                                                     Page **2**

LAWRENCE HARVEY SR

| | | | | |
|---|---|---|---|---|
| **Tax and Credits** | 38 | Amount from line 37 (adjusted gross income) | 38 | 12,942. |

**39a** Check if: □ **You** were born before January 2, 1946, □ Blind. **Total boxes**
□ **Spouse** was born before January 2, 1946, □ Blind. checked ► **39a**

**b** If your spouse itemizes on a separate return or you were a dual- status alien, check here ► **39b** □

| | | |
|---|---|---|
| 40 | **Itemized deductions** (from Schedule A) **or** your **standard deduction** (see instructions) | 8,400. |
| 41 | Subtract line 40 from line 38 | 4,542. |
| 42 | **Exemptions.** Multiply $3,650 by the number on line 6d | |
| 43 | **Taxable income.** Subtract line 42 from line 41.  If line 42 is more than line 41, enter -0- | 10,950. |
| 44 | **Tax** (see instructions). Check if any tax is from: **a** □ Form(s) 8814  **b** □ Form 4972 | 0. |
| 45 | **Alternative minimum tax** (see instructions). Attach Form 6251 | 0. |
| 46 | Add lines 44 and 45 | |
| 47 | Foreign tax credit. Attach Form 1116 if required | 0. |

| | | 47 | |
|---|---|---|---|
| 48 | Credit for child and dependent care expenses. Attach Form 2441 | 48 | |
| 49 | Education credits from Form 8863, line 23 | 49 | |
| 50 | Retirement savings contributions credit. Attach Form 8880 | 50 | |
| 51 | Child tax credit (see instructions) | 51 | |
| 52 | Residential energy credits. Attach Form 5695 | 52 | |
| 53 | Other credits from Form: **a** □ 3800 **b** □ 8801 **c** □ | 53 | |

| | | |
|---|---|---|
| 54 | Add in 47 through 53. These are your **total credits** | 54 | |
| 55 | Subtract line 54 from line 46. If line 54 is more than line 46, enter -0- ► | 55 | |

| | | | |
|---|---|---|---|
| **Other Taxes** | 56 | Self- employment tax. Attach Schedule SE | 56 | |
| | 57 | Unreported social security and Medicare tax from: **a** □ 4137 **b** □ 8919 | 57 | |
| | 58 | Additional tax on IRAs, other qualified retirement plans, etc. Attach Form 5329 if required | 58 | |
| | 59 **a** □ Form(s) W-2, box 9 **b** □ Schedule H **c** □ Form 5405, line 16 | 59 | |
| | 60 | Add lines 55 through 59. This is your **total tax** ► | 60 | 0. |

| | | | |
|---|---|---|---|
| **Payments** | 61 | Federal income tax withheld from Forms W-2 and 1099 | 61 | 193. |
| | 62 | 2010 estimated tax payments and amount applied from 2009 return | 62 | |
| | 63 | Making work pay credit.  Attach Schedule M | 63 | 400. |
| | 64a | **Earned income credit (EIC)** | 64a | 3,550. |
| | **b** | Nontaxable combat pay election ► 64b | | |
| | 65 | Additional child tax credit. Attach Form 8812 | 65 | 881. |
| | 66 | American opportunity credit from Form 8863, line 14 | 66 | |
| | 67 | First-time homebuyer credit from Form 5405, line 10 | 67 | |
| | 68 | Amount paid with request for extension to file | 68 | |
| | 69 | Excess social security and tier 1 RRTA tax withheld | 69 | |
| | 70 | Credit for federal tax on fuels. Attach Form 4136 | 70 | |
| | 71 | Credits from Form: **a** □ 2439 **b** □ 8839 **c** □ 8801 **d** □ 8885 | 71 | |

If you have a qualifying child, attach Schedule EIC.

| | | | |
|---|---|---|---|
| | 72 | Add lines 61, 62, 63, 64a, and 65 through 71. These are your **total payments** ► | 72 | 5,024. |
| **Refund** | 73 | If line 72 is more than line 60, subtract line 60 from line 72. This is the amount you **overpaid** | 73 | 5,024. |
| | 74a | Amount of line 73 you want **refunded to you.** If Form 8888 is attached, check here ► □ | 74a | 5,024. |

Direct deposit?
See instructions. ► **b** Routing number ▆▆▆▆▆  ► **c** Type: **X** Checking □ Savings
► **d** Account number ▆▆▆▆▆

| | | |
|---|---|---|
| | 75 | Amount of line 73 you want **applied to your 2011 estimated tax** ► | 75 | |
| **Amount You Owe** | 76 | **Amount you owe.** Subtract line 72 from line 60. For details on how to pay, see instructions ► | 76 | |
| | 77 | Estimated tax penalty (see instructions) | 77 | |

**Third Party Designee**
Do you want to allow another person to discuss this return with the IRS (see instructions)? **X** Yes. Complete below. □ No

Designee's name ► **HR BLOCK**   Phone no. ► **(504) 455-3095**   Personal ID number (PIN) **18466**

**Sign Here**
Joint return? See page 12. Keep a copy for your records.

Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Your signature **For Info Only-Do not file**   Date   Your occupation **DRIVER**   Daytime phone number

Spouse's signature. If a joint return, **both** must sign. **For Info Only-Do not file**   Date   Spouse's occupation

**Paid Preparer Use Only**

| Print/Type preparer's name | Preparer's signature | Date | Check □ if self- employed | PTIN |
|---|---|---|---|---|
| **LYGIA ALVARADO** | | **02/05/2011** | | **P00782335** |

Firm's name ► **HRB TAX GROUP INC**   Firm's EIN ► **43-1871840**
Firm's address ► **NEW ORLEANS, LA 70115**   Phone no. **(504) 269-2041**

1040 (2010)                                                                          Form **1040** (2010)

Harvey, Lawrence (MR # 8298082)                                    Encounter Date: 06/20/2013

Discharge Summary Notes

Discharge Summaries by Melina A. Roman Gerardino, MD at 6/30/2013  8:15 AM

Version 1 of 1

Author: Melina A. Roman          Service: Hospital Medicine          Author Type: Physician
Gerardino, MD
Filed: 6/30/2013  8:22 AM        Status: Signed                     Editor: Melina A. Roman Gerardino,
                                                                    MD (Resident)

**Discharge Summary
Hospital Medicine**


**Admit Date**: 6/20/2013

**Discharge Date and Time:** 6/23/2013  7:00 PM

**Discharge Attending Physician:** No att. providers found

**Diagnoses:**
Principal Problem:
 *Cellulitis and abscess of upper arm and forearm
Active Problems:
 Abscess of hand
 Sepsis


**Discharged Condition:** good

**Hospital Course:**

   Lawrence Harvey presented with extensive cellulitis of left arm/hand, with abscess of left
hand on 4 th digit.  Dr Walsh was consulted and no need for I&D was recommended.  He
responded well to IV Zoxyn/Vancomycin IV.  His blood cultures where no growth.  A venous
doppler ultrasound was done to left upper extremity and no DVT seen.

1. Cellulitis left arm/hand

-complete outpatient Bactrim X 14 days
-hibiclens wash q week
-follow up with surgery in 2 weeks

**Consults:** general surgery

**Significant Diagnostic Studies:** radiology: Ultrasound:No evidence of deep venous thrombosis
in the left upper extremity.


**Special Treatments/Procedures:** none

**Disposition:** Home or Self Care

**Patient Instructions:**

Harvey, Lawrence (MR # 8298082)                                        Encounter Date: 06/20/2013

**Medication List**                                          As of 6/30/2013  8:15 AM
    START taking these medications

---

**ibuprofen 600 MG tablet**
Commonly known as: ADVIL,MOTRIN
Take 1 tablet (600 mg total) by mouth every 8 (eight) hours as needed for Pain.

**sulfamethoxazole-trimethoprim 800-160mg 800-160 mg Tab**
Commonly known as: BACTRIM DS
Take 1 tablet by mouth 2 (two) times daily.

**Where to get your medications**
   These are the prescriptions that you need to pick up.

You may get these medications from any pharmacy.

---

ibuprofen 600 MG tablet
sulfamethoxazole-trimethoprim 800-160mg 800-160 mg Tab

**Discharge Procedure Orders**

**_Ambulatory Referral to General Surgery_**
*Standing Status:* Future                          *Standing Exp. Date:* 06/23/14
*Referral Priority:* Routine                        *Referral Type:* Surgical
*Referral Reason:* Specialty Services Required
*Referred to Provider:* WALSH, JOHN J. JR      *Requested Specialty:* General Surgery
*Number of Visits Requested:* 1

**_Diet general_**

**_Activity as tolerated_**

**_Call MD for:  temperature >100.4_**

**_Call MD for:  redness, tenderness, or signs of infection (pain, swelling, redness, odor or green/yellow discharge around incision site)_**