UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:   CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L JUDGE FALLON MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO: Hobbie, et al. v. RCR Holdings II, LLC, et al. (No. 10-113) | |

THE FEE COMMITTEE'S RESPONSE TO THE
VILLA LAGO PLAINTIFFS' BRIEF TO SPECIAL MASTER

I.   **INTRODUCTION**

The Coastal Settlement Class Counsel ("CSCC"),[1] seek to game these proceedings by filing, without leave of court, a supplemental brief in support of their motion to award them !00% of their attorneys' fees and reimbursement of costs (Rec. Doc. 20853).   Procedurally, the CSCC's effort to present this issue to the Special Master, when the motion was already taken under submission by this Court, is improper. Substantively, their demand to receive full compensation for their work on the Villa Lago settlement, while leaving the remaining Individually Retained counsel (even their co-counsel and referring counsel) to be satisfied with the diluted leftovers following the "Villa Lago haircut" is fundamentally unfair and improper.

Although the CSCC's motion (in one form or another) has been under submission with the Court for over two years,[2] the CSCC demand to litigate the matter before Special Master

---

[1] The CSCC consist of Gary E. Mason of Whitfield Bryson & Mason LLP, Joel R. Rhine of the Rhine Law Firm, Adam C. Linkhorst of Linkhorst & Hockin, P.A.   Counsel for RCR Holdings II, LLC, Gregory S. Weiss is also listed on the brief.   All but Mr. Linkhorst are objectors of record in the fee proceedings.

[2] *See* Order (Feb. 12, 2015) (Rec. Doc. 18354).

1

Balhoff even though it is beyond his responsibilities for determining the percentage allocation between common benefit and individually retained counsel.[3]   Certain members of the CSCC are objectors to the Fee Committee's allocation recommendation. Consistent with the cadre of fee objectors whose vexatious conduct continues to unreasonably multiply these proceedings, these CSCC fee objectors, at this late juncture in the fee proceedings, appear to be bent on maximizing their interest in their attorneys' fees from the Villa Lago settlement at the expense of other individually retained counsel who will share in the allocative share of the settlements funds for which Special Master Balhoff is to make a recommendation and, from which, this Court will independently be the ultimate arbiter.   They assert that their independent Coastal Settlement agreement gives them priority access to the share of funds to be allocated to the Individually Retained attorneys' share of the funds derived from the inter-related Knauf Settlements.   Apart from the obvious breaches of fiduciary duties between their co-counsel and even their referral counsel whose individual contract awards will be diluted because the CSCC demand full compensation for the Villa Lago claim, there is nothing new in the CSCC's papers to merit any further consideration.   As the CSCC concede in their papers, the proposed fees and reimbursement of costs they negotiated with Knauf and other counsel (not the PSC), was to be awarded "pursuant to the Knauf Settlement Agreement," CSCC Brf. at 4, and thus was at most a benchmark for their individual allocation award following the anticipated PTO 28 Step 5 determination by this Court.

---

[3] *See* Order and Reasons at 4 (May 25, 2017) (Rec. Doc. 20789).

## II.   **ARGUMENT**

The identical matters that the CSCC bring to the Court's attention are already matters of record.   On February 10, 2015, the CSCC filed their Motion for Payment of Costs Pursuant to Coastal Settlement Agreement and Alternative Response to Fee Committee's Inspection Costs and Hold Back Motion (Rec. Doc. 18314).   Even then, the CSCC were demanding full payment of their demand for costs.   Pursuant to the Court's Order of February 12, 2015 (Rec. Doc. 18354), the Fee Committee responded that the motion should be denied without prejudice to the process contemplated by PTO 28.   The FC argued that the CSCC's request for all their $380,946 in costs deserved no special treatment over that afforded all the other participants in the Knauf inter-related settlements who were only receiving the approved $1,000 per property stipend.[4] This was because all plaintiffs' counsel agreed at the time of the stipend award to accept that payment in view of the administrative nightmare that would ensue if Mr. Garrett was required to analyze the cost outlays of some 4,000 individual clients.   The CSCC filed a reply brief on March 12, 2015 (Rec. Doc. 18463), and the matter was submitted without oral argument pursuant to the February 12, 2105 Order.

When PTO 28 as amended issued, the CSCC recast their papers and filed on June 28, 2016, a Motion for Final Award of Attorneys' Fees and Reimbursement of Costs (Rec. Doc. 20347).   Therein, the CSCC sought $6,421,516.36 in attorneys' fees from the Knauf class settlements (using the same methodology employed by the FC that they now criticize), and $232,996 in costs (which reflected a set-off from the stipends already received).   On July 11, 2016, the Fee Committee responded that the CSCC were not entitled to "special dispensation and

---

[4] *See* Order (Dec. 17, 2014) (Rec. Doc. 18215).

unique, even preferential treatment." *See* Rec. Doc. 20383 at 2 (July 11, 2016). Even then, the FC pointed out that the CSCC were "in a direct conflict of interest with counsel's other Chinese drywall clients, benefitting themselves from the limited fund for counsel fees now available, and also in conflict with their counsel's other individually retained clients that are not participating in the Villa Lago class." *Id*. The FC further disputed the CSCC's proclaimed entitlement to an award of attorneys' fees in excess of the formula provided by PTO 28(F). *Id*. at 10. As the FC pointed out, if the CSCC request was obtained they would usurp over 8% of the total fund recognized for payment of individual counsel fees under the FC's proposed allocation. *Id.* Surely, this grab at the limited funds would come at the expense of the CSCC objectors' co-counsel and referring counsel, including Collins & Horsley, McCallum Hoagland, Gentle Turner & Sexton, Matthews & Associates, and Don Barrett & Lovelace Law, who expect equal entitlement to the funds to be allocated to individually retained counsel. The FC contended that it would be wrong to place the CSCC objectors on a pedestal to the detriment of all contract attorneys, including their co-counsel and referring counsel, in the fashion demanded by the CSCC.

After waiting almost a year, on July 6, 2017, the CSCC filed what they purport to be a reply brief to the FC's response to their recast motion. No motion for leave of court to submit such a tardy brief was filed. The brief was first submitted to Special Master Balhoff, and then filed with the Court. This procedural sleight of hand is out of bounds. It was wrong for the CSCC to try to evade this Court's order which expressly took under submission their initial motion for reimbursement of costs by presenting the matter to Special Master Balhoff. This malfeasance is made worse as Special Master Balhoff is not responsible for making the determinations the CSCC requests. *See* July 19, 2016 Order appointing Special Master (Rec.

Doc. 20410).   By continually presenting filings that are procedurally inept and substantively baseless, the CSCC fee objectors needlessly protract the fee proceedings, which sadly have already taken on the dimension of a second satellite litigation that is disfavored by established authority.[5]  Indeed, the FC has had to spend approximately 11,000 hours fulfilling its responsibilities under PTO 28 and in support of the joint fee petition, but almost half of that time, 5,400 hours, were devoted to addressing the unreasonable, vexatious needlessly litigating issues with the CSCC fee objectors and others over the FC's mere allocation recommendation. This is especially galling when the CSCC disingenuously observe the same methodology as the FC to reach their proposed fee award, which they generously conclude affords themselves complete 100% relief, but no one else.

## III.   <u>CONCLUSION</u>

For the reasons set forth above, the CSCC's late-filed reply brief should not be considered or, in the alternative, stricken.

---

[5] *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("[a] request for attorney's fees should not result in a second major litigation."); *Mid-Continent Cas. Co. v. Chevron Pipe Line Co.*, 205 F.3d 222, 233 (5th Cir. 2000) ("No authority need be cited for the fact that such disputes should *not* be a separate, or second, litigation.").

Respectfully submitted,

Dated: July 13, 2017

/s/ Russ M. Herman
Russ M. Herman, Esquire (Bar No. 6819)
Leonard A. Davis, Esquire (Bar No. 14190)
Stephen J. Herman, Esquire (Bar No. 23129)
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com

*Plaintiffs' Liaison Counsel in MDL 2047*
*Fee Committee Co-Chair/Secretary*

Arnold Levin (on the brief)
Fred S. Longer (on the brief)
Sandra L. Duggan (on the brief)
Matthew C. Gaughan (on the brief)
LEVIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
Alevin@lfsblaw.com

*Plaintiffs' Lead Counsel in MDL 2047*
*Fee Committee Chair*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, which will serve a notice of the uploading in accordance with the procedures established in MDL 2047, on this 13th day of July, 2017.

/s/ Leonard A. Davis
Leonard A. Davis
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com
Plaintiffs' Liaison Counsel
MDL 2047

*Co-Counsel for Plaintiffs*