St Tammany Parish Clerk of Court 2009-14632 08/06/2009, page 1 of 13
Case 2:09-md-02047-EEF-MBN Document 20872-3 Filed 07/18/17 Page 1 of 13
Case 2:09-md-02047-EEF-MBN Document 20872-3 Filed 08/06/18 Page 2 of 58

**22nd JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY**

**STATE OF LOUISIANA**

NO. 2009-14632     DIVISION: J

**CANDACE HAKENJOS WIFE OF/AND TODD HAKENJOS**

**VERSUS**

**TALLOW CREEK, L.L.C., SOUTHERN HOMES, L.L.C., ABC INSURANCE COMPANY, XYZ INSURANCE COMPANY, MNO INSURANCE COMPANY, JOHN DOE SUPPLY AND JOHN DOE SUBCONTRACTORS**

FILED: August 6, 2009     DEPUTY CLERK: _____

## PETITION FOR BREACH OF CONTRACT, WARRANTY AND FOR DAMAGES

NOW INTO COURT, through undersigned counsel, respectfully come your Petitioners, Candace Hakenjos, the wife of, and, Todd Hakenjos (hereinafter collectively "Hakenjos" or "Petitioners"), who are both the age of majority and who are domiciled in this State and Parish, who based upon information and belief, respectfully assert as follows:

1.

Made Defendants in this action are the following:

- Tallow Creek, L.L.C., a Louisiana Limited Liability Company at all relevant times doing business in this State and Parish (hereinafter "Tallow Creek");

- Southern Homes, L.L.C., a foreign Limited Liability Company authorized to conduct business in this State, who at all relevant times conducted business in this State and Parish (hereinafter "Southern Homes");

- ABC Insurance Company, a foreign or domestic insurance carrier who provides general liability insurance to Tallow Creek, or otherwise insures Tallow Creek for the damages prayed for herein ("ABC");

- XYZ Insurance Company, a foreign or domestic insurance carrier who provides general liability insurance to Southern Homes, or otherwise insures Southern Homes for the damages prayed for herein ("XYZ");

ST. TAMMANY PARISH
STATE OF LOUISIANA
FILED FOR RECORD
2009 AUG -6 A 10:38
MALISE PRIETO
CLERK OF COURT

Petition for Breach of Warranty, Contract and for Damages • Page 1 of 13

St Tammany Parish Clerk of Court 25250E EA032 08/06/2009 8854 Page 2 of 13
Case 2:09-md-02047-EEF-MBN Document 20872-3 Filed 07/19/17 Page 2 of 58
Case 2:09-md-02047-EEF-MBN Document 20872-3 Filed 08/06/19 Page 3 of 58

- John Doe Supply, is a foreign or Louisiana company at all relevant times doing business in this Parish and State, who supplies drywall products to contractors, and supplied drywall to Southern Homes or to John Doe Subcontractors ("Supplier");
- John Doe Subcontractors is a foreign or Louisiana company at all relevant times doing business in this Parish and State, who was hired by Southern Homes to supply and install drywall at the property-in-controversy and below described ("Subcontractor").
- MNO Insurance Company, a foreign or domestic insurance carrier who provides general liability insurance to Subcontractor or Supplier, or otherwise insures Subcontractor and/or Supplier for the damages prayed for herein ("MNO");

Collectively the defendants are referred to herein as "Defendants." With respect to those Defendants who did not contract directly with your Petitioners, the Petitioners are an intended third party beneficiary of the contracts between them and the appropriate party because it was the clear and manifest intent of the Defendants that the contracts were to primarily and directly benefit your petitioners.

2.

Jurisdiction is proper in this Court because the Court maintains subject matter jurisdiction over the dispute based on the object of the demand and the amount in controversy.

3.

Venue is proper in this Court pursuant to Louisiana Code of Civil Procedure Article 76.1 because the contracts in controversy were executed and services were performed in this Parish. Further, the damages were sustained in this Parish.

## BACKGROUND AND FACTS

4.

On October 8, 2005, Hakonjos signed a "Conventional Purchase Agreement" (the "Purchase Agreement") to buy property bearing the municipal address 820 Cole Court,

Petition for Breach of Warranty, Contract and for Damages • Page 2 of 13

Covington, Louisiana, 70433, and more particularly described therein as located at Lot 236, Phase 00, Tallow Creek Subdivision (the "Property").

5.

In the Purchase Agreement Tallow Creek is identified as the seller of the property. The Purchase Agreement makes mention of a "Builder," but the Builder is not identified therein.

6.

According to the Purchase Agreement, Tallow Creeks, as seller of property, expressly warranted the Property:

> SELLER warrants the premises in accordance with FHA/VA standards, the 2-10 Home Buyer's Warranty and Tallow Creek, L.L.C.'s limited warranty. BUYER acknowledges that said warranties exclude certain items and damages including, but not limited to, (1) any damage to the extend it has caused or made worse by dampness or condensation due to BUYER's failure to adequately maintain ventilation, caulking, flashing or gutters; (2) the cost of shelter, transportation, food, moving, storage, or other incidental expenses related to relocation during repair or any other costs due to loss of use, convenience or annoyance; (3) bodily injury or personal injury of any kind (including physical or mental pain and suffering and emotional distress), medial, hospital, rehabilitation or other incidental or consequential expenses,; damages to personal property, or damage to any property other; and (4) any loss or damage which BUYER has not taken appropriate action to minimize as soon as practical.

7.

A builder constructed the Property. Upon information and belief, that builder was Southern Homes.

8.

During the construction of the Property, the builder hired John Doe Subcontractor to install and supply the drywall to the Property. John Doe Subcontractor purchased the drywall from John Doe Supplier.

9.

Upon information and belief, Tallow Creek, Southern Homes, Subcontractors and Suppliers all maintained insurance policies at the times in controversy, and these insurance companies are made defendants to this action.

St Tammany Parish Clerk of Court 2520-E-1533, 06/06/2009, main page 4 of 13
Case 2:09-md-02047-EEF-MBN Document 20872-2 Filed 07/19/17 Page 4 of 13
Case 2:09-md-02047-EEF-MBN Document 20872-2 Filed 08/06/19 Page 5 of 58

10.

In or around May 2006, after construction on the Property was substantially complete, Hakenjos closed on the Property and moved into the home making it their permanent residence.

11.

Since moving into the property, several air conditioning unit coils have failed. Further, it has been discovered that copper pipes installed at the Property have turned the color black, and components of the Property's electrical wiring is covered with black file or soot.

12.

"Chinese Drywall" installed in the Property by Defendants is the cause for the aforementioned physical damages to the Property. Hakenjos discovered that Chinese Drywall was used in the construction of the Property on June 27, 2009.

13.

On June 29, 2009, Hakenjos sent a certified letter to its builder, Southern Homes. The certified letter was received by Southern Homes June 30, 2009.

14.

The June 29, 2009 notice advised Southern Homes of the defects with the Property's construction, and provided Southern Homes with a reasonable opportunity to remedy the noted defects. The June 29, 2009, notice satisfied the requirements of Louisiana R.S. 9:3145.

15.

On July 1, 2009, Southern Homes sent a representative from its home warranty department to inspect the Property. The representative, Todd Nowicki, walked through the Property with Hakenjos and took photographs of the Property and damages.

16.

On July 7, 2009, Tallow Creek responded to Hakenjos certified letter with written correspondence, also sent via certified mail. The letter confirmed that the Property was installed with Chinese Drywall, and advised that Tallow Creek would "monitor [the]

Petition for Breach of Warranty, Contract and for Damages • Page 4 of 13

situation" and loop Habeojos informed of any developments. There was no indication that Tallow Creek would make any efforts to remedy the defect. The letter also noted that Tallow Creek was "unaware that our supplier was using Chinese drywall and were further unaware of any problems associated with its use before installation in any of our projects."

17.

The drywall installed in Petitioner's home is commonly referred to as "Chinese Drywall" because it was imported for use into the United States from China. The Chinese Drywall installed into Petitioner's Property is defective. It emits levels of sulfur, methane and/or other volatile organic chemical compounds that cause corrosion of HVAC coils and refrigerator units, certain electrical wiring and plumbing components, and other household items. The drywall itself is defective, and thereby renders the walls to the Property defective. Further, the drywall causes damage to other building elements, such as what is commonly referred to as the "building studs." The defective drywall also creates a noxious "rotten egg-like" odor, causes allergic reactions, coughing, sinus and throat infections, nose bleeds, eye irritation, respiratory problems and other health concerns.

18.

The Chinese Drywall is not suitable for its intended use, is inherently defective, and causes actual physical damage to the walls and partitions of the Petitioner's Property, affecting the function of the walls and partitions to the extent that the home becomes unsafe, unsanitary or is otherwise unlivable.

19.

To remedy the defective drywall, the Petitioners must remove all defective drywall, perform extensive remedial repairs to the Property, and then repair the damaged property made visible during the performance of said repairs.

20.

The Chinese Drywall's presence in the Property has caused your Petitioners' damage, including, but not limited to: (i) Costs of inspection; (ii) Costs and expenses

Petition for Breach of Warranty, Contract and for Damages • Page 5 of 13

necessary to remove and replace the defective drywall and adjoining components; (iii) Cost and expenses to remove, replace and remedy the electrical wiring, internal finishes, HVAC coils, damaged building elements, plumbing fixtures and tubing, other affected appliances and fixtures, and other personal property; (iv) Cost of relocation during the remedial process; (v) Personal injuries and future health concerns; and (vi) Substantial diminution in the value of the Property.

## CAUSES OF ACTION

## NEW HOME WARRANTY ACT

21.

The New Home Warranty Act is codified in Louisiana Rev. Stat. 9:3141 *et seq*.

The Petitioners claim that the installed Chinese Drywall, and the effects of the defective materials, are a defect in the builder's workmanship or materials within the meaning of the Act.

22.

Notice has been provided to the builder as per La. R.S. 9:3145, and the builder has been provided a reasonable opportunity to inspect the alleged defect. The builder has also been provided a reasonable opportunity to undertake the repair of the defects itself. The builder did in fact inspect the property, but it refuses to remedy the defects, and is therefore in breach of the New Home Warranty Act.

23.

Since the builder has violated the New Home Warranty Act by failing to perform as required by the statutory warranties, the Petitioners are bringing this cause of action against it for its actual damages, including attorneys fees and court costs, that arise out of the violation. This cause of action is brought pursuant to La. R.S. 9:3149.

24.

For the purposes of this Section labeled "NEW HOME WARRANTY ACT," the term "builder" shall refer to Tallow Creek, L.L.C. and/or Southern Homes, L.L.C., as appropriate under the facts. Because of the relationship between Tallow Creek and

Petition for Breach of Warranty, Contract and for Damages • Page 6 of 13

Southern Homes, the terminology used in the Purchase Agreement, the relationship between the Petitioners and these two parties, and other facts, information and belief, it is uncertain as to which of these parties acted as the actual builder as contemplated by the New Home Warranty Act. The cause of action under the New Home Warranty Act is asserted against both Southern Homes and Tallow Creek, alternative to one another where appropriate, and together where appropriate.

## NEGLIGENT OR FRAUDULENT MISREPRESENTATION

25.

Article 2315 provides Petitioners a cause of action against the Tallow Creek and Southern Homes for negligent or fraudulent misrepresentations.

26.

On July 9, 2009, the Petitioners were informed via letter that Tallow Creek and/or Southern Homes were "unaware that our supplier was using Chinese drywall and were further unaware of any problems associated with its use before installation in any of our projects."

27.

Upon information and belief, this is an intentional or negligent misrepresentation to your Petitioners. Tallow Creek and Southern Homes did have reason to know it was using Chinese Drywall at the Petitioner's property, and its representation to the contrary is made with the intent of obtaining an unjust advantage over your Petitioners, causing your Petitioner's injury.

28.

Further, upon information and belief, from February 2009 through July 2009, Tallow Creek and Southern Homes intentionally or negligently misrepresented the presence of Chinese Drywall in the Petitioner's home and/or in the Petitioner's subdivision when it did in fact know that defective drywall was used in the community. These misrepresentations were made with the intent of obtaining an unjust advantage over your Petitioners, causing your Petitioner's injury.

Petition for Breach of Warranty, Contract and for Damages • Page 7 of 13

29.

After learning of the use of Chinese Drywall in the Petitioner's subdivision and home, Tallow Creek and/or Southern Homes fraudulently concealed and/or intentionally omitted the fact to Petitioners. These concealments were made with the intent of obtaining an unjust advantage over your Petitioners, causing your Petitioner's injury.

## FAILURE TO WARN

30.

All Defendants had a duty to warn the Petitioners about the presence of contaminated drywall in the Petitioner's home. The Defendants breached this duty by failing to warn the Petitioners of the defective product at the time of its installation, and thereafter, and specifically did not warn the Petitioners of the contaminated drywall and its negative effects after Defendants learned of supplying and/or installing the drywall into Petitioner's home or community.

31.

Petitioners suffered damages as a result of the Defendants' failure to warn, and Petitioners assert a cause of action for breach of this duty under La. C.C. art 2315, and any other applicable statute.

## BREACH OF EXPRESS WARRANTY BY TALLOW CREEK LLC

32.

Paragraph 6 of this Petition sets forth the express warranties made by Tallow Creek, L.L.C. to the Petitioner. The Petitioner avers that Tallow Creek breached these express warranties, that Petitioner has been damaged for the same, and asserts a cause of action for recovery of its damages related to this breach.

Petition for Breach of Warranty, Contract and for Damages • Page 8 of 13

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

33.

Defendants are all merchants of gypsum drywall, and an action is asserted against them for breach of implied warranty of merchantability under Louisiana law.

34.

Pursuant to Louisiana law, Defendants warranted that the gypsum drywall was merchantable and reasonably fit for the ordinary purpose for which gypsum drywall is used. Defendants breached the implied warranty of merchantability by selling certain gypsum drywall that was defective and not reasonably fit for the ordinary purpose for which gypsum drywall is used. As a result of the breach of this implied warranty of merchantability, the Petitioners have suffered damages.

## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

35.

Defendants are all merchants of gypsum drywall, and an action is asserted against them for breach of implied warranty of fitness for a particular purpose under Louisiana law.

36.

At the time Defendants entered into their applicable contracts, they had reason to know that the gypsum drywall was being purchased and/or supplied for the particular purpose of being installed in residential homes owned by your Petitioners, and that homebuilders and Petitioners were relying on Defendants' skill and judgment to select and furnish gypsum drywall that was suitable for this particular purpose.

37.

Pursuant to Louisiana Law, Defendants warranted that the gypsum drywall was fit for the particular purpose of being installed in residential homes owned by the Petitioner, and Defendants breached this warranty by selling certain gypsum drywall that was defective and not fit for the particular purpose of being installed in residential homes

owed by Petitioner. As a result of the breach of this implied warranty of fitness for a particular purpose, the Petitioners have suffered damages.

### ACTION IN REDHIBITION

38.

Defendants are all merchants of gypsum drywall, and an action is asserted against them in redhibition.

39.

Louisiana C.C. art 2520 provides that a seller warrants the buyer against redhibitory defects, or vices, in the thing sold.

40.

The thing sold and/or supplied and/or installed by the Defendants has a defect that renders the gypsum drywall useless, or so inconvenient that it must be presumed that a buyer would not have brought the thing had he known of the defect.

41.

The Petitioners assert that the gypsum drywall at controversy is defective, and it is entitled to bring a cause of action and recover for its damages related to the defect as per La. C.C. art 2520.

### BREACH OF STATUTORY WARRANTIES

42.

Petitioners assert a cause of action against the Defendants for breach of statutory warranties codified in La. C.C. art 2762, which provides for liability of a contractor for damages due to badness of its workmanship.

43.

Petitioners aver that its property has fallen to ruin in whole, or in part, on account of the badness of workmanship of the Defendant. Petitioner asserts a cause of action against Defendants under their statutory liability as codified in La. C.C. art 2762.

## BREACH OF CONTRACT

42.

Petitioners had a contract with Tallow Creek and/or Southern Homes, and Petitioners assert that these parties have breached its contract by supplying and installing Chinese Drywall.

43.

La. C.C. art 769 provide that "if an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract."

44.

The Petitioners aver that by supplying and installing Chinese Drywall, Tallow Creek and/or Southern Homes failed to execute its contract in the manner agreed. Accordingly, Petitioners assert that they are in breach of contract, and bring this cause of action for injuries sustained as a result of Tallow Creek's and Southern Home's breaches.

## NEGLIGENCE

45.

Petitioners assert that the Defendants owed them a duty of care, and by supplying, installing, selling or otherwise being responsible for the installation of Chinese Drywall into Petitioner's home, the Defendants breached this duty. The Petitioners aver that the breach of the duty was negligence, and assert a cause of action against Defendants under La. C.C. art 2315 *et seq.*

## INSURER'S LIABILITY

46.

All causes of action against the Defendants are asserted against each's insurer.

## JURY DEMAND

47.

Petitioners demand a trial by jury.

## PRAYER

WHEREFORE, Petitioners pray that the Defendants be served with process, and that after due proceedings are had, a judgment be entered in favor of the Petitioners and against the Defendants, jointly and severally, for (i) damages, (ii) attorneys fees, (iii) costs, (iv) post-judgment and pre-judgment interest at the maximum rate allowable at law, (v) treble and/or punitive damages in an amount to be determined at trial, (vi) all statutory damages, (vii) disgorgement of Defendants' profits from the sale of the drywall, (vii) reimbursement for all costs and expenses incurred in the repair of any purchase price paid, including, but not limited to, insurance co-payments, interest on these amounts from the date of purchase, attorneys' fees and costs, non-pecuniary damages, as well as any other legal and equitable relief to which Plaintiffs may be entitled; (ix) diminution in value of the home; (x) pain and suffering, inconvenience, additional living expenses, and emotional distress; (xi) any and all other just and equitable relief that this Court determines just and equitable under state and federal law.

Respectfully Submitted,

WOLFE LAW GROUP, LLC
Scott Wolfe Jr. (30122)
Douglas S. Reiser (32221)
4821 Prytania Street
New Orleans, LA 70115
504-894-9653 :: Fax: 866-761-8934
http://www.wolfelaw.com
Attorneys for Petitioners

PLEASE SERVE
TALLOW CREEK, L.L.C.
Through its registered agent for service of process,
Adrian Kornman
59101 Amber Street
Slidell, Louisiana, 70461

St Tammany Parish Clerk of Court C-2005-16632 03/08/2005 page 13
Case 2:09-cv-02573-EEF-MBN Document 20872-3 Filed 07/10/17 Page 13 of 13
Case 2:09-md-02047-EEF-MBN Document 20035 Filed 08/06/16 Page 14 of 58

**SOUTHERN HOMES, L.L.C.**
Through its registered agent for service of process,
Adrian Kornman
2053 E. Gause Blvd, Ste 200
Slidell, Louisiana, 70461

Withhold service on ABC Insurance Company, XYZ Insurance Company, MNO Insurance Company, John Doe Supply and John Doe Subcontractors