## AMENDED SETTLEMENT AGREEMENT REGARDING CLAIMS AGAINST INTERIOR-EXTERIOR IN MDL NO. 2047
### (Subject to Court Approval)

This Settlement Agreement is entered into by and between the Plaintiffs' Steering Committee in *In re: Chinese Manufactured Drywall Products Liability Litigation*, MDL No. 2047, and Interior/Exterior Building Supply, L.P., Arch Insurance Company, and Liberty Mutual Fire Insurance Company as of the latest date of a Party's signature below.

**WHEREAS**, the Plaintiffs' Steering Committee has made a demand on Interior/Exterior Building Supply, L.P. ("InEx") to settle class Chinese Drywall claims against InEx for an amount exceeding InEx's primary insurance coverage limits;

**WHEREAS**, InEx has been named as a defendant in MDL No. 2047 and is alleged to be liable for supplying defective Chinese Drywall that was installed in Affected Property;

**WHEREAS**, InEx has denied liability for the sale of such Chinese Drywall;

**WHEREAS**, InEx and its primary insurers, Arch Insurance Company and Liberty Mutual Fire Insurance Company, agree that there is a risk of a judgment against InEx that exceeds the limits of InEx's primary insurance coverage; and

**WHEREAS**, the Parties wish to avoid the effort, expense and risk of continued litigation,

**NOW, THEREFORE**, in consideration of the mutual covenants contained herein and intending to be legally bound, the Parties agree as follows:

## 1. Definitions

1.1. **Parties.** "Parties" shall mean InEx, the Insurers, and the Class:

1.1.1. **InEx.** "InEx" shall mean all InEx entities, including, but not limited to, Interior/Exterior Building Supply, L.P. and all of their past, present and future owners, partners, shareholders, officers, directors, agents, attorneys, employees, parents, associates, subsidiaries, divisions, affiliates, Insurers, and all predecessors and successors, assigns, or legal representatives.

1.1.2. **Insurers.** "Insurers" shall mean Arch and Liberty.

1

1.1.2.1. **Arch.** "Arch" shall mean Arch Insurance Company and all past, present and future officers, directors, agents, attorneys, consultants, claim administrators, employees, parent corporations, sister corporations, subsidiaries, affiliated entities, related entities, divisions, associates, shareholders, retail dealers, insurers, reinsurers, and all predecessors, successors, assigns, or legal representatives.

1.1.2.2. **Liberty.** "Liberty" shall mean Liberty Mutual Fire Insurance Company and all past, present and future officers, directors, agents, attorneys, consultants, claim administrators, employees, parent corporations, sister corporations, subsidiaries, affiliated entities, related entities, divisions, associates, stockholders, shareholders, retail dealers, insurers, reinsurers, and all predecessors, successors, assigns, or legal representatives.

1.1.3. **Class; Settlement Class; Class Members.** "Class," also referred to as "Settlement Class" or "Class Members," shall mean all persons or entities with claims, known and unknown, against the Settling Defendants arising from, or otherwise related in any way to Chinese Drywall sold, marketed, distributed, and/or supplied by InEx. The Class shall consist of two sub-classes:

1.1.3.1  All members of the Class with claims arising from, or otherwise related to Affected Properties that are located in Louisiana (the "**Louisiana Subclass**"); and

1.1.3.2  All members of the Class with claims arising from, or otherwise related to Affected Properties that are located in any state other than Louisiana (the "**Non-Louisiana Subclass**").

1.2. **Affected Property.** "Affected Property" shall mean any real or personal property, residential or commercial, containing Chinese Drywall sold, marketed, distributed, and/or supplied by InEx.

1.3. **Arch Policies.** "Arch Policies" shall mean the two general liability policies issued by Arch to InEx designated as follows: (i) Policy No. 31GPP2067202 with an effective date of December 31, 2005, and (ii) Policy No. 31GPP2115003 with an effective date of December 31, 2006. These are the only Arch policies that

2

potentially provide coverage for Chinese Drywall claims against InEx.   The aggregate limits of the Arch Policies are $4,000,000.

1.4.   **Assignment of Insurance.**   "Assignment of Insurance" shall mean the assignment to the Non-Louisiana Subclass by InEx of any and all rights of InEx against the Excess Carrier to (i) insurance coverage for Chinese Drywall claims of the Non-Louisiana Subclass against InEx but only to the extent that such claims of the Non-Louisiana Subclass exceed $8,000,000 but do not exceed the Available Policy Limits and (ii) damages for bad faith or extra-contractual conduct.

1.5.   **Available Policy Limits.**   "Available Policy Limits" shall mean the following limits of liability of the Excess Policies to be available to the Settlement Class to be accessed by assignment or otherwise:

| Policy Period | Policy No. | Aggregate Limits |
|---|---|---|
| 01/01/06-01/01/07 | 553-088195-1 | $14 million of the $15 million excess $2 million |
| 01/01/07-01/01/08 | 553-089469-5 | $14 million of the $15 million excess $2 million |
| 01/01/08-01/01/09 | 553-090750-2 | $22 million of the $25 million excess $2 million |
| 01/01/09-01/01/10 | 553-091952-6 | $22 million of the $25 million excess $2 million |

The Settlement Class will not seek to access, and will waive any right to access or make claim against any excess insurance of InEx other than the Available Policy Limits, and InEx reserves all coverage, and rights to seek coverage for both defense and indemnity, against any of its excess insurers except for those rights expressly assigned herein to the Settlement Class.

1.6.   **Builder.**   "Builder" shall mean any entity or person engaged principally in the business of construction of properties and to whom a Developer sells or has sold one or more lots on which the property construction will take place.   A Builder shall not include a Developer engaged solely in selling the lot on which such property is constructed, who does not have the authority to manage or control the

3

actual construction.  Other entities or  persons excluded from the term Builder include, but are not limited to, subcontractors, material suppliers, installers, and design professionals.

1.7.    **Chinese Drywall.**  "Chinese Drywall" shall mean any and all drywall products sold, marketed, distributed, and/or supplied by InEx and which are alleged to be defective, and which were manufactured, in whole or in part, in China, or that include components manufactured, in whole or in part, in China, including, but not limited to, any and all drywall manufactured by (i) Knauf Gips KG; Knauf Plasterboard (Tianjin) Co. Ltd.; Knauf Plasterboard (Wuhu), Co., Ltd.; Guangdong Knauf New Building Material Products Co., Ltd.; Knauf International GmbH; Knauf Insulation GmbH; Knauf AMF GmbH & Co. KG; Knauf do Brasil Ltda., Gebr.; Knauf Verwaltungsgesellschaft; P.T. Knauf Gypsum Indonesia (collectively, "Knauf"), and (ii) Taishan Gypsum Co., Ltd. f/k/a/ Shandong Taihe Dongxin Co., Ltd.; Taian Taishan Plasterboard Co., Ltd.; Pingyi Zhongxin Paper-Faced Plasterboard Co., Ltd. f/k/a Shandong Chenxiang Building Materials Co., Ltd.; Crescent City Gypsum, Inc.; Beijing New Building Materials Public Ltd. Co., and any other manufacturer of Chinese drywall, whether reactive or not.

1.8.    **Court.**  "Court" shall mean the Honorable Eldon E. Fallon who presides over *In re Chinese Manufactured Drywall Products Liability Litigation*, MDL No. 2047, in the Eastern District of Louisiana.

1.9.    **Developers.**  "Developers" shall mean the developer of any properties with Chinese Drywall that was sold, marketed, distributed and/or supplied by InEx.

1.10.   **Downstream InEx Releasees.**   "Downstream InEx Releasees" shall mean Subsuppliers, General Contractors, Subcontractors, Installers, Developers, and Realtors who purchased or received Chinese Drywall from InEx, used Chinese Drywall supplied by InEx in the construction of Affected Property, or sold or marketed Affected Property containing Chinese Drywall sold, marketed, distributed, and/or supplied by InEx, and shall include, but not be limited to, those persons and entities listed on Exhibit 1.10 except for any Builders that may be listed thereon.  For purposes of clarity, Builders shall not be Downstream InEx Releasees.

1.11.   **Excess Carrier.**  "Excess Carrier" shall mean (i) The North River Insurance Company, (ii) its parents, direct and indirect subsidiaries, affiliates, divisions, holding companies, merge companies, acquired companies, reinsurers and (iii) all

4

of its present and former offices, directors, shareholders, members, agents, employees, representatives, attorneys, predecessors in interest, successors in interest, and assigns.

1.12. **Excess Policies.** "Excess Policies" shall mean the four excess liability policies issued by the Excess Carrier to InEx as follows:

| Policy Period | Policy No. | Aggregate Limits |
|---|---|---|
| 01/01/06-01/01/07 | 553-088195-1 | $15 million excess $2 million |
| 01/01/07-01/01/08 | 553-089469-5 | $15 million excess $2 million |
| 01/01/08-01/01/09 | 553-090750-2 | $25 million excess $2 million |
| 01/01/09-01/01/10 | 553-091952-6 | $25 million excess $2 million |

1.13. **Execution Date.** "Execution Date" shall mean the last date on which any of the Parties signs this Settlement Agreement, as shown by their signatures below.

1.14. **General Contractor.** "General Contractor" shall mean any general contractor which (i) took part in the building, remodeling or restoration of any property with Chinese Drywall that was sold, marketed, distributed and/or supplied by InEx, and (ii) did so working under contract with, and/or under the direction of a Builder.

1.15. **Installer.** "Installer" shall mean any person or entity involved in the installation, hanging, taping, and floating in any property of Chinese Drywall that was sold, marketed, distributed and/or supplied by InEx.

1.16. **Insurance Proceeds.** "Insurance Proceeds" shall mean (a) four million dollars ($4,000,000) for Arch (less the dollar amount paid by Arch of (i) the Prior Settlements and (ii) the Notice Costs), and (b) as to Liberty shall mean four million dollars ($4,000,000) (less the dollar amount paid by Liberty of (i) the Prior Settlements and (ii) the Notice Costs). Each insurer will only be responsible for its own payment of proceeds.

1.17. **Liberty Policies.** "Liberty Policies" shall mean the two general liability policies issued by Liberty to InEx designated as follows: (i) Policy No. TB2-191-448006-

5

017 with an effective date of December 31, 2007, and (ii) Policy No. TB2-191-448006-019 with an effective date of January 1, 2009.  These are the only Liberty policies that potentially provide coverage for Chinese Drywall claims against InEx.  The aggregate limits of the Liberty Policies are $4,000,000.

1.18. **Litigation.**  "Litigation" shall mean *Silva, et al. v. Interior Exterior Building Supply, LP et al.*, Civ. Action No. 09-08030 (E.D.La.), *Silva et al v. Arch Insurance Company, et al.*, Civ. Action No. 09-08034 (E.D.La.), all Class Action Omnibus Complaints ("Omni Complaints") filed in MDL No. 2047, and all Related Actions.

1.19. **Non-Settling Defendants.**  "Non-Settling Defendants" shall refer to the Excess Carrier and any other defendants who are not specifically designated as Settling Defendants.

1.20. **Order and Judgment.**  "Order and Judgment" shall mean an order and judgment entered by the Court that:

1.20.1. Certifies the Settlement Class pursuant to Fed. R. Civ. P. 23(b)(3);

1.20.2. Finds that the Settlement is fair, reasonable, and adequate, was entered into in good faith and without collusion, and should be approved; and approves the Settlement;

1.20.3. Approves the Class Release provided in Section 4.3 and orders that, as of the Effective Date, the Released Claims as defined in Section 4.1 will be released as to the Settling Defendants;

1.20.4. Enjoins and forever bars any and all Class Members, including, but not limited to, those who have not properly opted out of the Class, from maintaining, continuing, prosecuting, and/or commencing the Litigation, Related Actions, Related Claims, or any action, pending or future, against the Settling Defendants that arises from, concerns, or otherwise relates, directly or indirectly, to Chinese Drywall;

1.20.5. Finds that, upon transfer of the Insurance Proceeds to the Escrow Account by Arch and Liberty pursuant to Section 12, the aggregate limits of the Arch Policies and the Liberty Policies are exhausted;

1.20.6. Finds that the Assignment of Insurance by InEx to the Non-Louisiana Subclass is valid, binding, and enforceable;

1.20.7. Finds that the indemnity, defense and judgment reduction provisions in Section 4.3 are valid, binding, and enforceable; and

1.20.8. Finds that, pursuant to Fed. R. Civ. P. 54(b), there is no just reason for delay of entry of final judgment with respect to the foregoing.

1.21. **Pending Settlements.** "Pending Settlements" shall mean settlements of Chinese Drywall claims against InEx that have been (i) agreed to but not paid prior to the Execution Date of this Settlement Agreement and (ii) listed on Exhibit 1.21. No further settlements will be made between the Execution Date and the earlier of (i) the termination of this Settlement pursuant to Section 13 or (ii) the Effective Date, without approval of the Court. If the Court approves any further settlements, those settlements will be included as Pending Settlements, and Exhibit 1.21 will be deemed to be amended to include these settlements.

1.22. **Plaintiffs' Steering Committee; PSC.** "Plaintiffs' Steering Committee" or "PSC" shall mean the group of plaintiffs' counsel appointed by the Honorable Eldon E. Fallon to manage and administer the affairs of all plaintiffs in MDL No. 2047 and to assist the Court in administering its docket. The PSC, as currently constituted, is described by Pretrial Order No. 8A (Rec. Doc. No. 6960).

1.22.1. "Settlement Class Counsel" shall mean Russ Herman and Arnold Levin. Co-Class Counsel shall mean Dorothy Wimberly.

1.23. **Prior Settlements.** "Prior Settlements" shall mean the dollar amounts (i) paid by Arch and/or Liberty for the settlement of Chinese Drywall claims against InEx prior to the Execution Date and (ii) listed on Exhibit 1.23, which schedule shall show the amount paid by Arch and/or the amount paid by Liberty for each claim. No further payment of settlements will be made by Arch or Liberty between the Execution Date and the earlier of (i) the termination of this Settlement pursuant to Section 13 or (ii) the Effective Date, without approval of the Court. If the Court approves any further payments, those payments will be included as Prior Settlements, and Exhibit 1.23 will be deemed to be amended to include these payments.

1.24. **Realtors.** "Realtors" shall mean any realtors involved in any real estate transaction with respect to any property with Chinese Drywall that was sold, marketed, distributed and/or supplied by InEx.

1.25. **Related Actions.** "Related Actions" shall mean any and all state court, federal court, international tribunal or arbitration claims against Settling Defendants arising out of, or related to Chinese Drywall sold, marketed, distributed, and/or supplied by InEx, including, but not limited to, the matters identified in Exhibit 1.25 hereto.

1.26. **Related Claims.** "Related Claims" shall mean unlitigated claims against Settling Defendants arising out of, or related to Chinese Drywall sold, marketed, distributed, and/or supplied by InEx.

1.27. **Released Claims.** "Released Claims" shall have the meaning set forth in Section 4.1.

1.28. **Released Party.** "Released Party" or "Released Parties" shall mean InEx, Arch, Liberty, and Downstream InEx Releasees, and their respective parents, subsidiaries, affiliates, divisions, predecessors, successors, heirs, legal representatives, legatees and/or assigns, together with past, present and future officers, directors, board members, shareholders, members, presidents, managers, partners, employees, distributors, retail dealers, agents, servants, sureties, representatives, consultants, in-house or outside attorneys, insurers other than the Excess Carrier, and reinsurers of each of the foregoing.

    1.28.1. The Downstream InEx Releasees are being released from claims arising out of or related to Chinese Drywall in Affected Property only to the extent that the Affected Property contains Chinese Drywall sold, marketed, distributed, or supplied by InEx.

1.29. **Settlement.** "Settlement" shall mean this Settlement Agreement and the settlement for which it provides resolving all claims against InEx and the other Released Parties, as well as all exhibits attached hereto or incorporated herein by reference.

1.30. **Settling Defendants.** "Settling Defendants" shall mean InEx, Arch, Liberty, and the Downstream InEx Releasees.

1.30.1. Settling Defendants will not be entitled to any payment of funds from the Insurance Proceeds for any purpose or on account of any claim.

1.30.2. The Downstream InEx Releasees shall only be considered Settling Defendants with regard to claims that are directly related to Chinese Drywall sold, marketed, distributed, and/or supplied by InEx. All other claims against the Downstream InEx Releasees, if any, are reserved.

1.31. **Subcontractor.** "Subcontractor" shall mean any subcontractor which took part in the building, remodeling or restoration of any property with Chinese Drywall that was sold, marketed, distributed and/or supplied by InEx.

1.32. **Subsupplier.** "Subsupplier" shall mean any person or entity to which InEx sold, marketed, distributed, or supplied Chinese Drywall, directly or indirectly, to be provided to another for use or installation, in any property.

## 2. <u>Effective Date</u>

2.1. The "Effective Date" of this Settlement shall be the date when the Settlement becomes Final. "Final" means:

2.1.1. If no objections to the Settlement are filed, or if any objections are filed and voluntarily withdrawn prior to entry of the Order and Judgment, then the date 30 days following the approval by the Court of the Order and Judgment and its entry on the Court's docket; or

2.1.2. If any objections are filed and not voluntarily withdrawn prior to the entry of the Order and Judgment, then the later of: (a) the expiration of time to file or notice any appeal from the Court's Order and Judgment approving this Settlement; or (b) the date of final affirmance of any appeals therefrom.

## 3. <u>Settlement of All Claims Against InEx, Arch, and Liberty</u>

3.1. The Settlement will settle and resolve with finality the Litigation, the Released Claims, and the Related Claims against the Settling Defendants and any other claims that have been brought, could have been brought or could be brought now or at any time in the future in the Litigation or any other proceeding relating to Chinese Drywall, whether legal or otherwise.

9

3.2.    The Settlement will not settle or release any claims by way of subrogation, contribution or indemnification that the Settling Defendants may have against third parties arising out of, in any manner related to, or connected in any way with Chinese Drywall. The Parties will not interfere with the Settling Defendants' rights or efforts to assert claims by way of subrogation, contribution or indemnity against third parties arising out of, in any manner related to, or connected in any way with Chinese Drywall.

3.3.    In consideration of settlement of all claims against InEx, Arch, and Liberty, the Settling Defendants agree as follows:

    3.3.1.   That Arch and Liberty shall deposit Insurance Proceeds into an Escrow Account described in Section 12 to be made available for allocation as set forth below in Section 16 of this Agreement;

    3.3.2.   That InEx shall (i) make the Assignment of Insurance to the Non-Louisiana Subclass in order to permit the Non-Louisiana Subclass to pursue claims against the Excess Carrier (with all rights under existing jurisprudence) but only to the extent of the Available Policy Limits and (ii) assign to the Non-Louisiana Subclass the right of InEx to file a complaint against the Excess Carrier as set forth in Section 14 below;

    3.3.3   That the Louisiana Subclass reserves the right to pursue a claim against the Excess Carrier (with all rights under existing jurisprudence) but only to the extent of the Available Policy Limits;

    3.3.4   That the Settling Defendants acknowledge that nothing in this agreement shall be construed to restrict or otherwise limit the ability of the Louisiana Subclass and/or the Non-Louisiana Subclass to pursue claims against the Excess Carrier but only to the extent of the Available Policy Limits.

    3.3.5.   That the Settlement Class reserves the right to have any claims against Builders be subject to dismissal upon condition that the Builder agrees to assign its entitlement to insurance to allow the Class to pursue, either through direct action or by assignment, such Builder's claims against that Builder's insurers, excluding Arch and Liberty.

3.4.    Prior Settlements and Pending Settlements

3.4.1.  Arch and Liberty will be given credit for Prior Settlements to reduce the amount of the Insurance Proceeds to be paid to the Escrow Account, pursuant to Sections 1.16, 1.23, and 12.1.

3.4.2.  Pending Settlements will be paid, under supervision of the Court, out of the Insurance Proceeds to be paid to the Escrow account, pursuant to Sections 1.16, 1.21, and 12.1.  After the Insurance Proceeds are transferred to the Escrow Account, Arch and Liberty will have no further obligation or responsibility for payment of the Pending Settlements.

3.5     Subject to Court approval and on an individual basis, a Class Member with a home being remediated by Knauf may have an appropriate portion of the settlement funds provided to Knauf to defray the cost of remediation.

## 4. Releases

### 4.1. Released Claims

4.1.1.  "Released Claim" or "Released Claims" shall mean any and all claims against any Settling Defendants whatsoever (a) arising out of, in any manner related to, or connected in any way with Chinese Drywall, or the collective mitigation of, response to, and/or recovery from the damage caused by Chinese Drywall and/or any act and/or failure to act related in any way to any of the foregoing, and/or (b) for any and all losses, damages and/or injuries arising from, in any manner related to, or connected in any way with all and/or any of the foregoing, including but not limited to any and all claims that a Class Member has, may have, or may have had, regardless of whether such claim is known or unknown, filed or unfiled, asserted or as yet unasserted, or existing or contingent, and whether asserted by petition, complaint, cross-claim, third party demand, or otherwise (or any judgment or order entered on such claims), and which is based upon or alleges any act, conduct, status or obligation of any person or entity (including the Settling Defendants) and/or any source of liability whatsoever, and regardless of the legal theory or theories of damages involved.

4.1.2   The term "Released Claim" or "Released Claims" includes, but is not limited to, the following claims arising out of, in any manner related to, or

11

in any way connected with, Chinese Drywall, the Litigation, or other Related Actions as to the Settling Defendants:

4.1.2.1   For personal injury, bodily injury (including death), property damage, remediation and/or clean-up of property, diminution of property value, foreclosure, groundwater contamination, economic loss, fear, fear of illness or disease, fear of developing illness or disease, fright, mental or emotional distress, pain and suffering, loss of earnings, impairment of earning capacity, loss of consortium, loss of support, love and affection, equity and medical monitoring, bystander liability, wrongful death, survival actions, breach of contract, all statutory claims, punitive or exemplary damages, attorneys' fees, costs or expenses, moving expenses, additional rental or mortgage payments;

4.1.2.2.   For nuisance, trespass, inconvenience, loss of use or enjoyment, negligence, private nuisance, custody of a thing containing a vice or defect, strict liability, liability for ultrahazardous activities or conduct, absolute liability, wanton and reckless misconduct, malicious misconduct, servitude or obligation of vicinage, abuse of right, or any other liability legally asserted or assertable under any federal, state, or local statute, law, directive or regulation, redhibition, violation of Louisiana New Home Warranty Act, Louisiana Products Liability Act (or similar statutes of other states), negligent discharge of a corrosive substance, unjust enrichment, breach of implied warranty of fitness and merchantability, breach of implied warranty of habitability, violation of consumer protection laws and/or deceptive and unfair trade practices laws of any state, negligent misrepresentation, building code violations, or fraud;

4.1.2.3   For damages or alleged damages resulting in whole or in part from exposure of the Class or Class Members or property of the Class Members to hazardous or allegedly hazardous, toxic, dangerous or harmful substances;

4.1.2.4.   For bad faith or extra-contractual damages;

12

4.1.2.5.  For derivative or vicarious liability arising out of the conduct or fault of others for which the Released Parties and/or Settling Defendants may be responsible;

4.1.2.6.  For any right legally assertable by the Class or any Class Member now or in the future, whether the claim is personal to each individual, derivative of a claim now or in the future, or as assignee, successor, survivor, legatee, beneficiary, subrogee, or representative of a Class Member;

4.1.2.7.  For a past, present, future, known, unknown, foreseen, unforeseen, contingent, nascent, mature claim or a claim arising at law, in equity or otherwise, including but not limited to, claims for survival and wrongful death;

4.1.2.8.  For any claim, right, or action arising out of, based on, or relating to any body of law whatsoever; and for all injuries or damages of any type, nature, or character arising from, attributable to, or in any way resulting from Chinese Drywall;

4.1.2.9.  For any conduct of any of the Released Parties and/or Settling Defendants with respect to, arising out of or in any way resulting from Chinese Drywall, the Litigation, or the Related Claims; however, this provision is not intended to prevent or impede the enforcement of claims or entitlements to benefits under this Settlement;

4.1.2.10.  For any claim, known or unknown, for contribution, subrogation, or indemnity, contractual or otherwise, arising out of, attributable to, or in any way related to Chinese Drywall.

4.1.3.  The term "Released Claim" or "Released Claims" also includes, but is not limited to, the following causes of action arising out of, in any manner related to, or in any way connected with, Chinese Drywall, the Litigation, or other Related Actions as to the Settling Defendants:

4.1.3.1.  Strict liability;

4.1.3.2.  Violations of the Alabama Deceptive Trade Practices Act (Ala. Code 1975 § 8-19-1, *et seq.*), the Louisiana Unfair Trade Practices

13

and Consumer Protection Law (L.SA-R.S. 51:1401, *et seq.*), the Texas Deceptive Trade Practices-Consumer Protection Act (Tex. Bus. Com. Code Ann. § 17.41, *et seq.*), the Mississippi Consumer Protection Act (Miss. Code Ann. § 75-24-1, *et seq.*), or any other state or federal consumer protection laws and unfair trade practices laws;

4.1.3.3.  Negligence;

4.1.3.4.  Private and public nuisance;

4.1.3.5.  Tort;

4.1.3.6.  Equity and medical monitoring;

4.1.3.7.  Breach of contract;

4.1.3.8.  Loss of use;

4.1.3.9.  Loss of enjoyment;

4.1.3.10.  All statutory claims;

4.1.3.11.   Personal injury, including death therefrom, related statutory violations, and emotional distress and mental anguish;

4.1.3.12.  Bodily injury, including death therefrom, and emotional distress and mental anguish;

4.1.3.13.  Indemnity;

4.1.3.14.  Contribution;

4.1.3.15.  Breach of express or implied warranty;

4.1.3.16.  Redhibition;

4.1.3.17.  Negligence per se;

4.1.3.18.  Violation of the Louisiana New Home Warranty Act (La. R.S. 9:3141, *et seq.*);

14

4.1.3.19.  Violation of the Louisiana Products Liability Act (La. R.S. 9:28000.51 *et seq.*);

4.1.3.20.  Violation of the Louisiana Hazardous Substances Act (La. R.S. 30:2271, *et seq.*);

4.1.3.21.  Negligent discharge of a corrosive substance;

4.1.3.22.  Unjust enrichment;

4.1.3.23.  Breach of the implied warranty of fitness and merchantability;

4.1.3.24.  Breach of implied warranty of habitability;

4.1.3.25.  Negligent misrepresentation;

4.1.3.26.  Building code violations;

4.1.3.27.  Relief by way of subrogation, contractual indemnity, common law indemnity and/or contribution against the Settling Defendants;

4.1.3.28.  Attorneys' fees and any and all costs and expenses of litigation;

4.1.3.29.  Fraud; and

4.1.3.30.  Any further claims and/or liabilities arising out of, or otherwise relating to, the sale, supply, marketing, distribution, or use of Chinese Drywall at issue in this Settlement, including, but not limited to, punitive damages, exemplary damages, multiplication of damages, and fines.

4.1.4.  Notwithstanding the above, the Released Claims do not include Chinese Drywall claims of the Non-Louisiana Subclass against InEx but only to the extent that such claims of the Non-Louisiana Subclass are made against the Excess Carrier, and exceed $8,000,000 but do not exceed the Available Policy Limits.  Such claims of the Non-Louisiana Subclass shall be excluded from the terms "Released Claim" and "Released Claims" and shall be referred to as the "Non-Released Claims."

4.1.4.1.  The Non-Louisiana Subclass will (a) dismiss the Non-Released Claims without prejudice, (b) covenant not to sue InEx for any of the Non-Released Claims, and (c) covenant not to sue InEx to collect from InEx, or to seek to execute against InEx, any settlements of or judgments for Non-Released Claims.

4.1.5.  Notwithstanding the above, the only parties released are those persons or entities defined as Released Parties. This Settlement does not provide complete compensation to redress all Class Members' damages, and therefore Class Members' claims are reserved against the Non-Settling Defendants.

4.1.6.  Notwithstanding the foregoing, with respect to the Class Members who are Builders (the "Builder Class Members"), "Released Claim" or "Released Claims" (i) shall mean any and all claims against InEx, and any and all claims arising out of or related to the Arch Policies and/or the Liberty Policies as to all Settling Defendants and (ii) shall otherwise have the meaning stated in Sections 4.1.1 through 4.1.5.

## 4.2.  Reservations of the Settlement Class

4.2.1.  The Downstream InEx Releasees are only being released from those claims that are directly related to the Chinese Drywall that was sold, marketed, distributed, and/or supplied by InEx.

4.2.2.  The Settlement Class expressly reserves and preserves any and all claims, including without limitation Chinese Drywall claims, that it has against the Excess Carrier and Excess Policies, but only with respect to the Available Policy Limits.

4.2.3.  The Non-Louisiana Subclass expressly reserves (i) the Non-Released Claims against InEx and (ii) the right to pursue (under the Assignment of Insurance from InEx) claims against the Excess Carrier regarding the Non-Released Claims but only to the extent of the Available Policy Limits.

4.2.3.1.  InEx expressly (i) makes the Assignment of Insurance to the Non-Louisiana Subclass in order to permit the Non-Louisiana Subclass to pursue claims against the Excess Carrier (with all rights under existing jurisprudence) but only to the extent of the Available Policy Limits and (ii) assigns to the Non-Louisiana Subclass the

16

right of InEx to file a complaint against the Excess Carrier as set forth in Section 14 below

4.2.4.  The reservation of the Settlement Class to dismiss claims against Builders upon condition that any Builder may agree to assign its entitlement to insurance (Section 3.3.5) shall be recognized by that Builder who shall execute an appropriate Agreement of Assignment that assigns the Builder's entitlement to insurance to allow the Class to pursue, either through direct action or by assignment, such Builder's claims against that Builder's insurers, excluding Arch and Liberty.  Further, the Settlement Class, Settlement Class Counsel, and PSC reserve their rights and entitlements set forth in the Order of March 30, 2011 (Rec. Doc. No. 8439).

**4.3. Class Release**

4.3.1.  As of the Effective Date of the Settlement, and with the approval of the Court, all Class Members, and anyone claiming by, through and/or on behalf of any of them, hereby fully, finally, and forever release, waive, discharge, surrender, forego, give up, abandon, and cancel any and all Released Claims (as defined in Section 4.1) against the Settling Defendants and Released Parties, including (but not limited to) those asserted, or that could have been asserted, in the Litigation, the Related Actions, and/or the Related Claims. Nothing herein is intended to release, waive, discharge, surrender, forego, give up, abandon, and cancel any claims that a Builder Class Member has or may have against one or more of the Insurers under any insurance policy that is not one of the Arch Policies or the Liberty Policies (as defined in Sections 1.3 and 1.17).

4.3.2.  As of the Effective Date of the Settlement, all Class Members, and anyone claiming by, through and/or on behalf of any of them, will be forever barred and enjoined from prosecuting any action against the Settling Defendants asserting any and/or all Released Claims.

4.3.3.  The Non-Louisiana Subclass will exclude from its release of InEx Chinese Drywall claims against InEx to the extent that such claims exceed $8,000,000 but are less than the Available Insurance Limits (the "Non-Released Claims," as defined above).

17

4.3.3.1.   InEx will make the Assignment of Insurance to the Non-Louisiana Sub-class for all rights InEx has to excess insurance coverage for the Non-Released Claims.

4.3.3.2.   The Non-Louisiana Subclass will (a) dismiss the Non-Released Claims without prejudice, (b) covenant not to sue InEx for any of the Non-Released Claims, and (c) covenant not to sue InEx to collect from InEx, or to seek to execute against InEx, any settlements of or judgments for Non-Released Claims.

4.3.4.   The execution of the Settlement shall not be construed as a release of any claims the Class Members may have against any person and/or entity other than the Settling Defendants. All Class Members reserve all claims (including, but not limited to, any and all rights and causes of action, no matter how arising, under any ordinance, code, law, statute, federal or state, pending or dismissed, known or unknown) against any person and/or entity other than the Settling Defendants named, or who could have been named, in the Related Actions.

4.3.5.   Except for any obligations that one or more of the Insurers may have to a Builder Class Member under any insurance policy that is not one of the Arch Policies or Liberty Policies (as defined in Sections 1.3 and 1.17), the Settling Defendants shall have no further liability in connection with the Released Claims, the Litigation, the Related Actions, the Related Claims, and/or the Arch Policies and/or the Liberty Policies.

4.3.6.   As of the Effective Date of the Settlement, a Class Member receiving an allocated recovery under Section 16 for an Affected Property or for bodily injury shall:  (i) defend, indemnify, and hold harmless each of the Settling Defendants, but only up to the amount of the allocated recovery for that Affected Property, from and against (a) any and all claims involving that Affected Property brought or otherwise asserted by, on behalf of, through, or deriving from such Class Member's heirs, executors, representatives, attorneys or former attorneys, successors, employers, insurers, employers' insurers, health insurers, health care providers, assignees, subrogees, predecessors in interest, successors in interest, beneficiaries or survivors; and (b) any claims for contribution, common law indemnity, contractual indemnity, and/or subrogation, whether arising under tort, contract or otherwise, brought or otherwise asserted against the Settling Defendants as

18

a result of such Class Member's continued pursuit of claims related to that particular Affected Property; and (ii) reduce or satisfy any judgment involving that Affected Property against the Settling Defendants under applicable state law, whether it be *pro rata, pro tanto*, and/or by set off, but only up to the amount of the allocated recovery received by such Class Member for that particular Affected Property, to reduce or extinguish any claims for contribution, indemnity, common law or contractual, and/or subrogation, whether arising under tort, contract or otherwise, brought or otherwise asserted against the Settling Defendants as a result of such Class Member's continued pursuit of claims related to that particular Affected Property. Under no circumstances shall a Class Member's obligations under this Section 4.3.6 exceed the Class Member's allocated recovery under Section 16 for any particular Affected Property.

4.3.7. To the extent that any entity or person other than InEx may have, or may assert that it has (whether by way of being an additional insured, or an other insured, or otherwise) any rights (including but not limited to, rights to defense or for indemnification) under the Arch Policies or the Liberty Policies, the Parties agree that the Settlement Class and each of the Class Members will not seek to assert those rights against the Settling Defendants, whether by assignment, or subrogation, or otherwise.

4.3.8. It is expressly understood and agreed that the indemnity, defense, and judgment reduction obligations detailed above shall exist regardless of the legal basis for the claim, demand, cause of action, right of action, liability, lien, or judgment demand asserted by any person or entity to the extent related to the Released Claims against any Released Party and/or Settling Defendant and shall survive the execution of any Settlement Agreement. In particular, the Class Members expressly bind themselves to the foregoing indemnity, defense and judgment reduction obligations regardless of whether the claim, demand, suit, liability, lien, judgment, cause of action, or right of action is based on or related to (a) the negligence of any of the Settling Defendants, sole or concurrent; (b) the strict liability of any of the Settling Defendants under any theory whatsoever; (c) the absolute liability of any of the Settling Defendants; (d) the wanton, reckless, or willful misconduct of any of the Settling Defendants; (e) any actual, alleged or purported right, asserted by any

19

Settling Defendant or any Class Member under a policy of insurance issued by one or more insurers; or (f) any other basis whatsoever.

4.3.9. Class Members retain and do not release, waive or abandon the right to raise as a defense in any action that a Settling Defendant is wholly, partially, individually, jointly or severally liable, and/or otherwise liable and/or responsible for all or a portion of a verdict, judgment or award, and Class Members retain and do not release, waive or abandon the right to a set-off, credit, or reduction of the amount of any verdict, judgment or award by a percentage of fault allocated to any Settling Defendant.

## 4.4. InEx Release

4.4.1. As of the Effective Date of the Settlement, InEx and/or all persons or entities who or which derive any right or claim from, by and/or through InEx, hereby (i) releases and discharges any and all claims whatsoever against Arch and Liberty which claims arise out of, or are related in any way to, Chinese Drywall, the Released Claims, the Litigation, the Related Actions, the Related Claims, the Arch Policies, and/or the Liberty Policies, including, but not limited to, (a) all claims for insurance coverage, indemnity, "duty to defend," liability of any kind arising from insurance policies, bad faith claims, and/or extra-contractual liability of any kind, which claims arise under Louisiana law, the law of any other state, or any other law (including common law) and (b) any and all past, present, and/or future claims arising out of, or related to indemnity obligations, duty to defend, claims handling, claims adjustment, breach of contract, breach of duty or duties, negligent investigation, breach of warranty, failure to warn, breach of implied warranty, breach of good faith and fair dealing, bad faith, negligent or intentional interference with contractual relationships, deceptive trade practices, unfair trade practices, unfair settlement practices, conduct in violation of any insurance code, or any other alleged misconduct, omission, or wrongdoing of any kind and (ii) agrees and stipulates (a) that the Arch Policies are the only insurance policies issued by Arch to InEx that potentially provide coverage to InEx for Chinese Drywall claims, (b) that the Liberty Policies are the only insurance policies issued by Liberty to InEx that potentially provide coverage to InEx for Chinese Drywall claims, (c) that the aggregate policy limits under the Arch Policies and the Liberty Policies, individually and collectively,

have been exhausted, and (d) that Arch and Liberty have no further duty to defend and/or indemnify InEx, or any other person or persons, entity or entities under the Arch Policies or the Liberty Policies, individually and/or collectively, or otherwise.

4.4.2. InEx shall not assign any claims it may possess against any Insurer to any person or entity except as provided in the Assignment of Insurance.

**4.5 Arch and Liberty Releases**

4.5.1. As of the Effective Date of the Settlement, Arch and Liberty each for itself and all of its past, present and future employees, attorneys, officers, directors, agents, shareholders, stockholders, subsidiaries, consultants, insurers, parent corporations, sister corporations, divisions, affiliated entities, related entities, predecessors, successors and assigns hereby mutually release, remise, acquit and discharge each other from any and all manner of actions, claims, demands, causes of action, liabilities, subrogation, implied or express indemnification, or contribution of whatever nature or source, known or unknown, that they ever had, now have, could have had, may have in the future, or that it may acquire against the other, by reason of anything done or omitted or by reason of any matter, cause, thing or event whatsoever that exists between them related to, or arising from Chinese Drywall claims against InEx and any and all litigation relating to such claims.

**5. Certification of Federal Rule of Civil Procedure 23(b)(3) Settlement Class and Related Motions**

5.1. This Settlement shall be subject to approval of the Court.

5.2. Within ten (10) days of the execution of this Agreement by (i) InEx; (ii) Arch; (iii) Liberty; and (iv) the PSC, the parties will move jointly for an order:

5.2.1. Preliminarily certifying the Settlement Class and approving the Settlement (the "Preliminary Approval Order");

5.2.2. Staying all future payments from applicable insurance policies, other than payments in satisfaction of the Settling Defendants' obligations under the Pending Settlements, pending final approval of the Settlement, but for no longer than six months after the Preliminary Approval Order is entered;

21

5.2.3. Staying all claims in the Litigation as to all Settling Defendants; and

5.2.4. Staying all claims and cases in which any person or entity claims to be an insured, additional insured, or named insured under any insurance policy issued to any InEx entity.

5.3. Any one of the Settling Defendants shall have the right to withdraw from the Settlement if the Court does not issue any of the requested orders (including the Order and Judgment) or if the Settlement Class is not certified.

5.4. The Parties will stipulate to the Court in the request for entry of the Preliminary Approval Order and at the Certification Hearing that (i) the Class is being certified for settlement purposes only pursuant to the Settlement, (ii) the Settling Defendants reserve the right to object to class certification *de novo* in the event this Settlement is terminated for any reason, including termination pursuant to Section 13, and (iii) this Settlement shall have no precedential effect with regard to certification of a litigation class that may arise if this matter is not fully and completely resolved through this settlement effort, or otherwise.

## 6. **Notice to Class Members**

### 6.1. **Type of Notice Required**

6.1.1. Upon entry of the Preliminary Approval Order preliminarily certifying the Settlement Class as defined in Section 1.1.3, the Settlement Class Counsel will disseminate the Class Settlement Notice ("Notice") approved by the Court as follows:

6.1.1.1. By first-class mail to the last known address of the following persons and entities: (i) all plaintiffs in the Litigation, (ii) all plaintiffs in the Omni complaints in MDL No. 2047 which name InEx as a defendant, (iii) all plaintiffs in all Related Actions which name InEx as a defendant, (iv) the counsel of all the foregoing, (v) all claimants against InEx of whom said counsel have knowledge, and (vi) all persons and entities who can be identified from InEx invoices as having received drywall from InEx during 2006 and/or 2007;

6.1.1.2. By publication notice through the following media: (i) to be published once in the following print media: (a) newspapers:

22

*Baton Rouge Advocate - Daily, Birmingham News, Data News Weekly, Houston Chronicle, La Subasta Houston, Mississippi Link, Mobile Press-Register, Mobile Press-Register – Sunday, New Orleans Times-Picayune - Daily, Rolling Out Alabama, Semana* (Houston), and *USA Today* (Monday – Thursday); and (b) newspaper supplement: *Parade* – Regional (Zones 9 and 10, which include Alabama, Louisiana, Mississippi, and Texas); and (ii) to be posted by the following online media: *24/7 Network* (to appear nationally across a wide range of sites).

6.1.1.3. By providing a copy of the Notice and requesting that it be posted on the Court's Chinese Drywall MDL website, the CPSC website, and the Department of Health websites for Alabama, Louisiana, Mississippi and Texas;

6.1.1.4. By providing a copy of the Notice and requesting that it be posted at such other public places as may be ordered by the Court or by request of the Parties; and

6.1.1.5. As the Court may direct.

**6.2. Payment for Notice**

6.2.1. The costs of publication of the Notice up to a total of $100,000 shall be advanced equally by Arch and Liberty, each of which shall advance up to $50,000. Upon the Effective Date, Arch and Liberty shall be entitled to receive credit to reduce the Insurance Proceeds due from each of them by the dollar amount paid by each of them to advance the costs of publication of the Notice, pursuant to Section 1.16.

6.2.2. The costs of publication of the Notice exceeding $100,000 shall be advanced by Settlement Class Counsel or the PSC. Upon the Effective Date, Settlement Class Counsel or the PSC shall be entitled to reimbursement for the Notice costs advanced by either of them from the Insurance Proceeds that are transferred into the Escrow Account.

# 7. **Opt-Out**

## 7.1. **Opt-Out Period**

7.1.1. Class Members will have seventy (70) days following the entry of the Preliminary Approval Order by the Court (or such different period as the Court may direct) to opt out of the Settlement in accordance with Section 7.2. If the Settlement is finally approved by the Court, all Class Members who have not opted out by the end of the seventy (70) day period will be bound by the Settlement, and the relief provided by the Settlement will be their sole and exclusive remedy for the claims alleged by the Class.

**7.2. Opt-Out Process**

7.2.1. Individual Class Members must request to opt out and must sign any requisite pleading or form. A pleading or form or any other request made or signed by counsel shall not be sufficient. An original opt-out form signed by the Class Member must be mailed to Plaintiffs' Lead Counsel, Arnold Levin (Levin, Fishbein, Sedran & Berman, 510 Walnut Street, Suite 500, Philadelphia, PA 19106), and to InEx counsel, Richard Duplantier (Galloway, Johnson, Tompkins, Burr & Smith, One Shell Square, 701 Poydras Street, 40th Floor, New Orleans, LA 70139). The opt out request must be postmarked within the 70-day period described in Section 7.1.1. Plaintiffs' Lead Counsel shall be obliged to file all opt outs with the Court by a date prior to the Fairness Hearing to be determined by the Court.

7.2.2. Consistent with the Court's oversight of the process and its inherent jurisdiction, the Parties recognize that the Court may use its good offices to attempt to resolve, through mediation or otherwise, any opt-out.

**7.3. Rights With Respect to Opt Outs**

7.3.1. The Parties agree and acknowledge that any opt-out may be to the detriment of InEx, Arch, and/or Liberty, so that each of them will have a right to terminate the Settlement on account of the existence of any opt out.

7.3.2. If any Class Members remain as opt outs fourteen (14) days prior to the Fairness Hearing, then each of InEx, Arch, and Liberty individually has the right, acting at its sole and exclusive discretion and option, to terminate the Settlement. This right to terminate the Settlement must be exercised by written notice to the Court by seven (7) days before the Fairness Hearing.

24

    7.3.3.  By opting out, a Class Member is not releasing any claims, causes of action, obligations, liabilities, demands, suits, covenants, contracts, controversies, agreements, promises, damages, judgments and/or executions against any of the Settling Defendants.

## 8. **Objections**

8.1.    Any Class Member who has any objection to certification of the Class, or to approval of this Settlement or any terms hereof, or to the approval process must make that objection by the following procedure:

    8.1.1.  The objection must be in writing;

    8.1.2.  The objection must set forth all objections and the reasons therefore, and a statement whether the Class Member intends to appear at the Certification Hearing or Fairness Hearing either with or without the objector's counsel. The objection must identify any witnesses intended to be called, the subject area of the witnesses' testimony, and all documents to be used or offered into evidence, at the Certification Hearing or Fairness Hearing;

    8.1.3.  The objection must be signed by the individual Class Member and by his/her/its counsel; an objection signed by counsel alone shall not be sufficient;

    8.1.4.  The objection must contain the caption of the Litigation and include the name, mailing address, e-mail address, if any (an e-mail address is not required), and telephone number of the objecting Class Member;

    8.1.5.  The objection must be mailed to Plaintiffs' Lead Counsel, Arnold Levin (Levin, Fishbein, Sedran & Berman, 510 Walnut Street, Suite 500, Philadelphia, PA 19106), and to InEx counsel, Richard Duplantier (Galloway, Johnson, Tompkins, Burr & Smith, One Shell Square, 701 Poydras Street, 40th Floor, New Orleans, LA 70139). The objection must be postmarked by the date prescribed by the Court. Plaintiffs' Lead Counsel shall be obliged to file all objections with the Court by a date prior to the Certification Hearing and the Fairness Hearing to be determined by the Court.

8.2.   Failure to comply timely and fully with these procedures shall result in the invalidity and dismissal of any objection.  No Class Member shall be entitled to be heard at the Certification Hearing or Fairness Hearing (whether individually or through the objector's counsel), or to object to certification of the Class or to the Settlement, and no written objections or briefs submitted by any Class Member shall be received or considered by the Court at the Certification Hearing or Fairness Hearing, unless written notice of the Class Member's objection and any brief in support of the objection have been filed with the Court and served upon Plaintiffs' Lead Counsel and InEx counsel not later than twenty (20) days before the date of the Certification Hearing or the Fairness Hearing as appropriate, in accordance with Section 8.1.

8.3.   Class Members who fail to file and serve timely written objections in accordance with Section 8.1 shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the certification of the Settlement Class or to the Settlement.

## 9.  Fairness Hearing

9.1.   Within ten (10) days of the entry of the Preliminary Approval Order, the PSC shall request that the Court hold a Fairness Hearing.  The Fairness Hearing shall not be held until after the Opt Out Period has concluded.

9.2.   At the Fairness Hearing the Court shall, *inter alia*, (i) consider any properly filed objections to the Settlement, (ii) determine *de novo* whether the Settlement is fair, reasonable, and adequate, was entered into in good faith and without collusion, and should be approved, and shall provide findings in connection therewith, and (iii) enter the Order and Judgment, including final approval of the Settlement Class and the Settlement.

## 10.  Dismissals

10.1.   Within thirty (30) days of the occurrence of the Effective Date:

10.1.1. The Parties shall jointly submit to the Court a proposed order or orders dismissing with prejudice as to the Settling Defendants (i) *Silva, et al. v. Interior Exterior Building Supply, LP et al.*, Civ. Action No. 09-08030 (E.D.La.), *Silva et al v. Arch Insurance Company, et al.*, Civ. Action No. 09-08034 (E.D.La.), (ii) all Omni Complaints filed in MDL No. 2047 but

only to the extent that they assert claims against the Settling Defendants, and (iii) all Related Actions pending in the Eastern District of Louisiana and/or MDL No. 2047 but only to the extent that they assert claims against the Settling Defendants;

10.1.2. The members of the PSC shall file motions to dismiss with prejudice all Related Actions against Settling Defendants by Class Members whom they represent which are pending in any state court and/or in any federal court outside the Eastern District of Louisiana or MDL 2047 but only to the extent that they assert claims against the Settling Defendants;

10.1.3. The PSC shall use its best efforts to assist the Settling Defendants in obtaining dismissal with prejudice of any other Related Actions maintained by any Class Member whether in state court, federal court or any arbitral forum.

10.2. The dismissal orders, motions or stipulation to implement Section 10.1. shall seek or provide for a dismissal with prejudice, with each Class Member and Settling Defendant bearing its own attorneys' fees and costs, and waiving any rights of appeal.

## 11. Bar Order

11.1. As part of the Order and Judgment, the Court shall issue a bar order and permanent injunction against any and all pending or future claims against the Settling Defendants arising from, or otherwise relating to Chinese Drywall.

11.2. The bar order and permanent injunction shall enjoin and forever bar any and all Class Members, including, but not limited to, those who have not properly opted out of the Class, from maintaining, continuing, prosecuting, and/or commencing the Litigation, Related Actions, Related Claims, or any action, pending or future, against the Settling Defendants that arises from, concerns, or otherwise relates, directly or indirectly, to Chinese Drywall.

11.3. This provision is not intended to prevent or impede the enforcement of claims or entitlement to benefits under this Settlement.

## 12. Deposits

12.1. Within twenty (20) business days after the Effective Date, the Insurers shall transfer the Insurance Proceeds to the Escrow Account to be established at United States Bank pursuant to order of the Court in accordance with Fed. R. Civ. P. 67 and 28 U.S.C. § 2041.

12.2. Within ten (10) business days after the Effective Date, the PSC shall furnish the Insurers with specific payment instructions and a tax identification number.

## 13. Termination of This Settlement

13.1. This Settlement shall be terminated and cancelled upon any of the following events:

13.1.1. The Court declines to enter the Preliminary Approval Order;

13.1.2. The Fairness Hearing is not held by the Court;

13.1.3. The Order and Judgment approving the Settlement and certifying the Class is not entered by the Court, or is reversed by a higher court, or is inconsistent with the terms of the Settlement; or

13.1.4. The Court declines to dismiss the Settling Defendants with prejudice.

13.2. In addition to any other right to terminate under this Settlement, the Settling Defendants may, at their sole and exclusive discretion and option, withdraw from, terminate, and cancel their obligations under this Settlement upon any of the following events:

13.2.1. The Class Settlement Notice does not comply with Section 6.1 or with the order of the Court concerning Notice;

13.2.2. Any party exercises its rights regarding opt outs pursuant to Section 7.3;

13.2.3. The dismissals as provided in Sections 10.1.1, 10.1.2, and 10.2 do not occur as provided in Section 10;

13.2.4. The bar order and permanent injunction as provided in Section 11.2 are not entered by the Court as provided in Section 11;

13.2.5. The PSC, acting on behalf of the Class, materially breaches the Settlement and such breach materially frustrates the purposes of this Agreement; or

28

13.2.6. This Settlement is changed in any material respect, except by written consent of the Parties.

## 14. **Claims Against The Excess Carrier**

14.1. The PSC will amend the *Silva* actions, the *Amato* action, and/or file a new complaint against the Excess Carrier, pursuant to the Assignment of Insurance and as authorized by the Court.

## 15. **Court to Retain Jurisdiction to Implement and Enforce Settlement Agreement**

15.1. Notwithstanding any other provision of this Settlement, the Court shall retain (a) continuing jurisdiction over the Litigation, the Class, the Class Members, and the Settlement for the purposes of administering, supervising, construing and enforcing the Settlement; and (b) continuing and exclusive jurisdiction over (i) the Insurance Proceeds in the Escrow Account and any other settlement funds that may be added to the Escrow Account (collectively, the "Settlement Fund") and (ii) the distribution of same to Class Members.

## 16. **Allocation of Payments**

16.1. The Court shall establish a procedure for allocation of the Settlement Funds between the various interests who have claimed entitlement to the same.  An Allocation Committee will be appointed to make recommendations to the Court as to:  (i) a fair and equitable plan of allocation of the Settlement Funds; and (ii) the evidence that Class Members will need to provide as part of their Proof of Claim to submit a valid claim.  The allocation will apportion funds (including any funds to resolve claims for bodily injury), without regard to fees or costs, by each Affected Property.  Such allocation will reduce, on a dollar for dollar basis, the liabilities and/or rights of recovery between Class Members downstream from InEx.  Any such allocation will preserve, and will not reduce, the Settling Defendants' rights of recovery as set forth in Section 3.2.  The PSC will recommend that the Court appoint a Special Master to assist the Court in the allocation process.  The Court shall entertain interventions for the purpose of determining the allocation and shall establish procedures by order setting forth the manner in which this allocation shall proceed.  The allocation by the Special Master may be appealed solely to Judge Fallon, whose decision shall be final.

16.2. InEx agrees to cooperate with reasonable requests for documents and other information related to continuing litigation against the Excess Carrier and the manufacturers of Chinese Drywall.

16.3. Any disputes as to the allocation of payments among Class Members will not defeat the Settlement and shall not involve the Settling Defendants.

16.4. All costs of administering the allocation of the Settlement Fund and the cost of Notice to Class Members will be paid out of the Settlement Fund or a separate administrative fund, subject to the provisions of Section 6 regarding advance of the costs of publication of Notice.

16.5. Notwithstanding any other provision of this Settlement or of any other document, the Settling Defendants shall not be liable for, and shall have no responsibility whatsoever for any payment of, any Class Counsel's attorneys' fees, costs, and expenses; Class Member's attorneys' fees, costs, and expenses; fees and costs of any Mediator or Special Master the Court may appoint; court costs; Notice costs (except as provided in Section 6.1 regarding advance of the costs of publication of Notice); the fees and costs of any person or entity retained by the Mediator or the Special Master; and/or other costs and fees associated with this Litigation, the Related Actions, the approval and/or implementation of this Settlement, the administration of claims, and/or the disposition of the Settlement Fund. Notwithstanding the provisions of this Settlement or of any other document, the Settling Defendants shall have no obligation to pay any amount beyond the Insurance Proceeds.

16.6 Payment of Pending Settlements will be made from the Settlement Fund under the supervision of the Court. After the Effective Date, neither InEx, Arch or Liberty will be liable or responsible for payment of the Pending Settlements.

16.7 The PSC, Class Counsel ( but not Co-Class Counsel), common benefit attorneys, and privately retained attorneys for all Class Members (the "Petitioning Attorneys") shall be entitled to petition the Court for attorneys' fees up to 32 % of the Settlement Fund and reimbursement of reasonable expenses. The allocation of attorneys' fees and reimbursement of reasonable costs between and amongst the Petitioning Attorneys shall be determined by the Court. Co-Class Counsel may petition the Court for an award of fees equal to her normal hourly rate for duties performed as Co-Class Counsel in connection with this Settlement. Provided that such petitions do not seek fees exceeding 32 % of the Settlement Fund, the

Settling Defendants agree not to participate in the determination of either the appropriate fees or reimbursement of reasonable expenses.

## 17. Miscellaneous

17.1.  The Parties and their attorneys and agents shall not attempt to use the payments made pursuant to this Settlement or the terms hereof to argue in any other proceeding that there is insurance coverage for Chinese Drywall claims.

17.2.  The Settling Defendants do not admit or concede that they have any liability for, or owe any damages whatsoever relating to, Chinese Drywall.

17.3.  Arch and Liberty do not admit or concede any liability or insurance coverage obligation (for either defense costs or indemnity payments) for any claims relating to Chinese Drywall.

17.4   All persons should be on notice of their continuing duty to monitor the Court's docket for the most current filings and information. The Court, in its discretion, may alter, postpone or amend any of the deadlines scheduled by the Court in connection with the certification of the class and the approval of this Agreement without additional formal notice. Orders of any such changes are expected to be presented on the Court's website: http://www.laed.uscourts.gov/Drywall/Drywall.htm.

## 18. Federal Rule of Evidence 408

18.1.  The Parties specifically acknowledge, agree and admit that this Settlement and its exhibits, along with all related drafts, motions, pleadings, conversations, negotiations and correspondence, shall be considered a compromise within the meaning of Federal Rules of Evidence Rule 408, and any equivalent rule of evidence of any state, and shall not (i) constitute, be construed, be offered, or received into evidence as an admission of the validity of any claim or defense, or the truth of any fact alleged or other allegation in the Litigation, the Related Actions, or in any other pending or subsequently filed action, or of any wrongdoing, fault, violation of law, or liability of any kind on the part of any Party, or (ii) be used to establish a waiver of any defense or right, or to establish or contest jurisdiction or venue.

31

18.2.   The Parties also agree that this Settlement, any orders, pleadings or other documents entered in furtherance of this Settlement, and any acts in the performance of this Settlement are not intended to be, nor shall they in fact be, admissible, discoverable, or relevant in any case or other proceeding against the Settling Defendants (i) to establish grounds for certification of any class involving any Class Member, (ii) to prove either the acceptance by any Party hereto of any particular theory of coverage, or (iii) as evidence of any obligation that any Party hereto has or may have to anyone.

18.3.   The provisions of this Settlement, and any orders, pleadings or other documents entered in furtherance of this Settlement, may be offered or received in evidence solely (i) to enforce the terms and provisions hereof or thereof, (ii) as may be specifically authorized by a court of competent jurisdiction after an adversary hearing upon application of a Party hereto, (iii) in order to establish payment, or an affirmative defense of exhaustion of insurance coverage or *res judicata* in a Related Action or a subsequent case, (iv) in connection with any motion to enjoin or stay any of the Related Actions, or (v) to obtain Court approval of the Settlement.

[Remainder of this page intentionally left blank.]

**IN WITNESS HEREOF**, the Parties have executed this Settlement Agreement by their duly authorized representatives on the dates stated below.

Witnesses:

_Beverly Jackson_

Print Name: BEVERLY JACKSON

_Amy Catalanotto_

Print Name: Amy Catalanotto

Plaintiffs' Steering Committee

By: _Russ Herman_

Print Name: Russ Herman

Title: Plaintiffs' Liaison Counsel

Date: 1/24/2012

Witnesses:

_____

Print Name: _____

_____

Print Name: _____

Interior/Exterior Building Supply L.P.

By: _____

Print Name: _____

Title: _____

Date: _____

Witnesses:

_____

Print Name: _____

_____

Print Name: _____

Arch Insurance Company

By: _____

Print Name: _____

Title: _____

Date: _____

33

**IN WITNESS HEREOF**, the Parties have executed this Settlement Agreement by their duly authorized representatives on the dates stated below.

| Witnesses: | Plaintiffs' Steering Committee |
|---|---|
| _____ | By: _____ |
| Print Name: _____ | Print Name: _____ |
| | Title: _____ |
| _____ | Date: _____ |
| Print Name: _____ | |

| Witnesses: | Interior/Exterior Building Supply L.P. |
|---|---|
| _____ | By: _____ |
| Print Name: _____ | Print Name: _____ |
| | Title: _____ |
| _____ | Date: _____ |
| Print Name: _____ | |

| Witnesses: | Arch Insurance Company |
|---|---|
| _____ | By: _____ |
| Print Name: _____ | Print Name: _D. Russell Holwade_ |
| | Title: _Counsel of Record_ |
| _____ | Date: _1-23-12_ |
| Print Name: _____ | |

33

**IN WITNESS HEREOF**, the Parties have executed this Settlement Agreement by their duly authorized representatives on the dates stated below.

| Witnesses: | **Plaintiffs' Steering Committee** |
|---|---|
| _____ | By: _____ |
| Print Name: _____ | Print Name: _____ |
| | Title: _____ |
| _____ | Date: _____ |
| Print Name: _____ | |

| Witnesses: | **Interior/Exterior Building Supply L.P.** |
|---|---|
| *Teresa DeLamonte* | By: Interior Exterior Enterprises, L.L.C., G.P. |
| Print Name: TERESA LAMONTE | By: _Clayton C Geary, Member_ |
| *[signature]* | Print Name: _Clayton C Geary_ |
| Print Name: *Andrea M. Albers* | Title: _Member_ |
| | Date: _1/23/12_ |

| Witnesses: | **Arch Insurance Company** |
|---|---|
| _____ | By: _____ |
| Print Name: _____ | Print Name: _____ |
| | Title: _____ |
| _____ | Date: _____ |
| Print Name: _____ | |

33

**Witnesses:**                              **Liberty Mutual Fire Insurance Company**

By: _____

Print Name: _Margaret Cronin Wilson_   Print Name: _MICHAEL P. McAFEE_

Title: _MANAGER SPECIALTY CLAIMS_

Date: _JANUARY 18 2012_

Print Name: _Gregory M. Rovnak_

34

STATE OF LOUISIANA

PARISH OF ORLEANS

BEFORE ME, the undersigned authority, personally came and appeared

*Russ Herman*

who, being duly sworn, stated on his/her oath and in the presence of the undersigned witnesses that s/he is a Member of Plaintiffs' Steering Committee and s/he was authorized to and did execute the foregoing instrument in such capacity for the said Committee, as its free act and deed.

IN WITNESS WHEREOF, the said Appearer has executed this acknowledgement in my presence and in the presence of the undersigned competent witnesses on this *24th* day of *January*, 20*12*.

WITNESSES:

Print Name: *BEVERLY JACKSON*

Print Name: *Amy Catalanotto*

_____
NOTARY PUBLIC

35

STATE OF LOUISIANA

PARISH OF ORLEANS

BEFORE ME, the undersigned authority, personally came and appeared

_Clayton C. Geary_

who, being duly sworn, stated on his/her oath and in the presence of the undersigned witnesses

that s/he is a Member of Interior/Exterior Building Supply L.P. and s/he was authorized to and

did execute the foregoing instrument in such capacity for the said entity, as its free act and deed.

IN WITNESS WHEREOF, the said Appearer has executed this acknowledgement in my

presence and in the presence of the undersigned competent witnesses on this _23rd_ day of

_January_, ~~2012~~ 2012.

WITNESSES:

_Teresa Lamonte_

Print Name: _TERESA LAMONTE_

_Andrea M Albers_

Print Name: _Andrea M Albers_

_Philip L. Kitchen_

NOTARY PUBLIC

PHILIP L. KITCHEN
Attorney at Law & Notary Public
LA Bar No. 07427
LA Notary ID No. 27896
Commission Expires at Death

36

STATE OF LOUISIANA

PARISH OF ORLEANS

**BEFORE ME,** the undersigned authority, personally came and appeared

**D. RUSSELL HOLWADEL**

who, being duly sworn, stated on his oath and in the presence of the undersigned witnesses that he is the counsel of record for Arch Insurance Company and he was authorized to and did execute the foregoing instrument in such capacity for the said corporation, as its free act and deed.

**IN WITNESS WHEREOF,** the said Appearer has executed this acknowledgment in my presence and in the presence of the undersigned competent witnesses on this 23rd day of January, 2012.

WITNESSES:

_Darlene L Kost_

Darlene L Kost
Print Name

_Gale W. Hebert_

Gale W. Hebert
Print Name

_____
D. Russell Holwadel

_____
NOTARY PUBLIC

Heather A. England
#29175
commission expires upon death

37

STATE OF _New Hampshire_

PARISH/COUNTY OF _Strafford_

BEFORE ME, the undersigned authority, personally came and appeared

_Michael P. McAfee_

who, being duly sworn, stated on his/her oath and in the presence of the undersigned witnesses

that s/he is the _Manager_ of Liberty Mutual Fire Insurance Company and s/he was

authorized to and did execute the foregoing instrument in such capacity for the said corporation,

as its free act and deed.

IN WITNESS WHEREOF, the said Appearer has executed this acknowledgement in my

presence and in the presence of the undersigned competent witnesses on this ___18th___ day of

_January_, 2011.


WITNESSES:

Print Name: _Margaret Cronin Wilson_

Print Name: _Gregory M. Kovnak_


NOTARY PUBLIC

DARCY ADAMS
MY COMMISSION EXPIRES
JAN. 24, 2012
NOTARY PUBLIC
NEW HAMPSHIRE

38

## LIST OF EXHIBITS

Exhibit 1.10 – List of Downstream InEx Releases

Exhibit 1.21 – List of Pending Settlements

Exhibit 1.23 – List of Prior Settlements

Exhibit 1.25 – List of Related Actions

*  *  *

4924471