# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  CHINESE-MANUFACTURED | * | MDL 2047 |
| DRYWALL PRODUCTS | * | |
| LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| | * | |
| | * | MAGISTRATE JUDGE WILKINSON |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN OPPOSITION TO CLAIMANTS' DANIEL AND AMY CARTER'S OBJECTION TO SPECIAL MASTER'S OPINION AND DECREE

**NOW COME** the Knauf Defendants,[1] who file this Memorandum in Opposition to Claimants Daniel and Amy Carter's Objection to Special Master's Opinion and Decree (Rec. Doc. 20764).  The Special Master's denial of Daniel and Amy Carters' ("Claimants")  claim was pursuant to and consistent with the Knauf Class Settlement Agreement.  Pursuant to the Knauf Class Settlement Agreement,[2] Claimants' failure to preserve and present evidence in accordance with PTO 1(B) is prejudicial to the determination of the claim by the Knauf Defendants, the Special Master, and the Court. As such, the Special Master's disallowance of the claim is explicitly provided for and appropriate.

---

[1] The Knauf Defendants include Knauf Plasterboard (Tianjin) Co., Ltd., Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Material Products Co., Ltd., Knauf Gips KG, Gebr. Knauf Verwaltungsgesellschaft KG, Knauf International GmbH, Knauf Insulation GmbH, Knauf UK GmbH, Knauf AMF GmbH & Co. KG, Knauf do Brasil Ltda., and PT Knauf Gypsum Indonesia.

[2] Rec. Doc. 16407-3 (Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047)

## I.      Background

Claimants owned Affected Property located at 261 W. Robert E. Lee Boulevard, New Orleans, LA 70124  (the "Property").[3]  While represented by current counsel, Claimants self-remediated the Property between February and April 2010.[4] Claimants later filed claims against the Knauf Defendants and subsequently became class members to the Knauf Class Settlement Agreement.  Claimants did not opt out of the Knauf Class Settlement Agreement and sought benefits, including benefits under the Already Remediated Properties Protocol.  The Knauf Defendants denied the claim for failure to comply with PTO 1(B) and the Knauf Class Settlement Agreement, which resulted in prejudice to the Knauf Defendants in a determination of the claim, namely the KPT percentage.[5] Following settlement discussions/proposals and an unsuccessful mediation before the Special Master, the Special Master disallowed the claim  and determined that the Claimants failed to comply with PTO 1(B) and that the Knauf Defendants were prejudiced in a determination of the claim.[6]  Claimants then filed the present objection to the Special Master's opinion and decree.[7]

## II.     Knauf Class Settlement Agreement and PTO (1)(B)

All settlement claimants are subject to the Knauf Class Settlement Agreement, which mandates that the review of Already Remediated Home (ARH) claims are done pursuant to PTO 1(B).  Specifically, Section IV(D)(4) of the Already Remediated Properties Protocol of the Knauf Class Settlement Agreement provides:

> The ***Special Master and the Court will take into consideration***, in determining whether to allow a claim or the amount of the claim,

---

[3] Claimants sold the Property in October 2010 for $319,000.00.  Rec. Doc. 20764-2 at p. 16 (2009 Purchase Agreement).
[4] Rec. Doc. 20764 at p. 2 (Claimants' Objection to Special Master Decree).
[5] Rec. Doc. 20764-3 at pp. 86-165 (Knauf Defendants Position Papers and Exhibits).
[6] Rec. Doc. 20764-1 (Special Master Opinion and Decree).
[7] Rec. Doc. 20764 at p. 2 (Claimants' Objection to Special Master Decree).

> **whether the Owner has complied with MDL Pretrial Order 1B** (if the claim is pending in the MDL) or with applicable state law requirements for preservation of evidence (if the claim is pending in state court). Subject to review by the Special Master or the Court, **the failure to preserve evidence as required by law will result in disallowance or reduction in the amount of the claim if the failure has been prejudicial to a determination of the claim**.[8]

Entered on October 9, 2009, PTO 1(B) established "the Court's expectations, from this date forward, with respect to the preservation of physical evidence from properties that may be repaired by the parties during the course of this litigation."[9] Specifically PTO 1(B) requires Claimants to preserve and present physical evidence by following a few basic procedures, including but not limited to  "photograph[ing] the backside of each Chinese drywall board immediately after it is removed on-site, and, document on a floor plan, building diagram, or other similar form of documentation, the location of each full or partial Chinese drywall board removed from the property and its photograph. Photographs of the wall sections should be taken so that any markings on the backside of the drywall sections are most clearly visible in the photographs."[10]

## III.    Claimants' Identification and Remediation of Affected Property

Claimants previously owned Affected Property[11] located at 261 W. Robert E. Lee Boulevard, New Orleans, LA 70124  (the "Property"). Claimants, while represented by current counsel, allege that they determined that the Property had symptoms consistent with reactive

---

[8] Rec. Doc. 12061-6 (Already Remediated Properties Protocol) (emphases added).
[9] Rec. Doc. 337 (PTO 1(B)).
[10] *Id*.
[11] Claimants sought lost rents for this Property such that it is a Commercial Property under the Knauf Class Settlement Agreement, and therefore, Claimants are ineligible for the lump sum payment.  Rec. Doc. 20764-2 at p. 6 (Claimants' original position paper); *see also* Rec. Doc. 16407-3 (Knauf Class Settlement Agreement, Section 4.3.1.1.)  To the extent Claimants seek lost rents, they should have sought benefits from the Other Loss Fund. *see also* Rec. Doc. 16407-3 (Knauf Class Settlement Agreement, Section 4.7).  Claims to the Other Loss Fund are processed through the Settlement Administrator and are not compensated by the Knauf Defendants through the ARH process or the Remediation Fund.

Chinese-manufactured drywall ("CDW") in August 2009.[12]  It is undisputed that Claimants were represented by current counsel at the time they self-remediated the Property between February 2010 and April 2010,[13] which postdates the formation of MDL-2047 and this Court's issuance of PTO 1(B) on October 9, 2009.  Finally, it is undisputed that Claimants were given opportunity and did not opt-out of the Knauf Class Settlement Agreement, and therefore, did not opt out of the requirements imposed by PTO 1(B) and the Already Remediated Properties Protocol.

### IV.   Claimants' Failed to Comply with PTO 1(B) and the Failure to Preserve and Present Evidence is Prejudicial to the Determination of the Claim.

It is undisputed that evidence was not submitted in compliance with the Knauf Class Settlement Agreement, the Already Remediated Properties Protocol and/or PTO 1(B). Specifically, of the approximately 280 boards that would be contained in the Property, none were presented in accordance with PTO 1(B). Instead, Claimants have presented photographic evidence of only three detached/removed (not installed) drywall boards that purportedly were manufactured by KPT and installed in the property.[14]

In an effort to make their submissions look more robust, Claimants submitted the same photos multiple times, submitted photos that do not have any markings, and/or submitted evidence of Knauf Insulation, which has absolutely nothing to do with the manufacturer of the drywall boards that were installed in the Property.  Furthermore, Claimants submitted their INEX invoice and the corporate testimony of INEX in an effort to establish manufacturer identification in lieu of compliance with the preservation and presentation requirements set forth in the Knauf Class Settlement Agreement, the Already Remediated Properties Protocol and PTO 1(B).[15]

---

[12] Rec. Doc. 20764 at p. 2 (Claimants' Objection to Special Master Decree).
[13] *Id.*
[14] Rec. Doc. 20764-3 at pp. 120-138 (KPT evidence submitted by Claimants).
[15] Rec. Doc. 20764-2 at p. 11 (2006 INEX Drywall Invoice); Rec. Doc. 20764-3 at p. 84 (INEX Deposition Excerpts filed under seal).

Specifically, Claimants submitted excerpts from a February 2010 INEX corporate deposition regarding a shipment of Knauf drywall from the *M/V MYSTRAS* and its connection to INEX's internal product identification number for 4x12x1/2 inch drywall ("41212R").[16] The product ID from the *M/V MYSTRAS* shipment purportedly matched the product ID (41212R) for drywall listed on Claimant's INEX invoice.[17] However, Claimant mistakes the nature of the product ID and its difference from manufacturer ID. Further, Claimant ignores the remainder of the INEX corporate testimony, as well as the years of litigation in this case surrounding the issue of manufacturer ID (KPT v. Taishan/Other CDW).

The INEX corporate testimony and INEX invoice only prove that the product purchased by the Claimants was 4x12x1/2 inch drywall; they provide no proof whatsoever of the manufacturer of the drywall.   For example, when referencing the product ID # 41212R for all 4x12x1/2 drywall, the INEX corporate representative stated: "That's the only product that we got."[18] Further, when questioned about the meaning of the product ID, the INEX corporate representative stated that the number was "generated years ago, and that's how we [INEX] define 4x12x12 regular sheetrock."[19] Nowhere explicitly or implicitly in the corporate deposition does the INEX representative state that the product ID # 41212R, which matched the Claimant's invoice, is indicative to identify the manufacturer of the drywall as KPT. To the contrary, the testimony is clear, and consistent with the history of this MDL, that the product ID # 41212R is simply INEX's generic product ID # for all 4x12x1/2 inch drywall, regardless of manufacturer, such that it includes both domestic and Chinese manufactured drywall. This is further evidenced by INEX invoices for replacement of Chinese drywall with domestic drywall wherein the

---

[16] Rec. Doc. 20764-3 at p. 84 (INEX Deposition Excerpts filed under seal).
[17] Rec. Doc. 20764-2 at p. 11 (2006 INEX Drywall Invoice).
[18] Rec. Doc. 20764-3 at p. 84 (INEX Deposition Excerpts filed under seal).
[19] Rec. Doc. 20764-3 at p. 84 (INEX Deposition Excerpts filed under seal).

domestic drywall is listed as product ID # 41212R.[20]   Indeed, as the Special Master, the Court, and the parties are well aware, there were many manufacturers of 4x12x1/2 inch drywall, including multiple manufacturers of reactive Chinese drywall.

The issues of manufacturer ID and settling defendants (Knauf) v. non-settling defendants (Taishan) are the specific reasons why the Knauf Defendants and the plaintiffs utilized PTO 1(B) as the standard and requirement for presenting evidence for ARH claims under the Knauf Class Settlement Agreement. If manufacturer ID could be determined by the supplier invoice, PTO 1 and PTO 1(B) would not have been required in the formation of the Knauf Class Settlement Agreement. However, without the standards set forth in PTO 1(B), the Knauf Defendants, the plaintiffs, and the Court would be unable confirm manufacturer ID for a given claim under the Knauf Settlement. This would result in prejudice to the Knauf Defendants in determining whether and to what extent a particular claim is related to KPT Chinese drywall or Non-KPT Chinese Drywall. By Claimants failing to comply with the requirements in the Knauf Class Settlement Agreement, the Knauf Defendants have been prejudiced in a determination of the claim.

Finally, while Claimants submitted statements that they believed the Property contained only KPT drywall, these unsupported statements are inadequate, unreliable, and inconsistent with the evidence presentation requirements under the Knauf Class Settlement Agreement.   The requirements in PTO 1(B) and the adoption of it by the Knauf Class Settlement Agreement was to avoid this exact situation and put Claimants on notice of the need to preserve and present physical evidence of manufacturer ID. The Claimants were on notice of the requirements at the time they remediated the Property, were represented by counsel at all relevant times, and still

---

[20] Rec. Doc. 20764-3 at pp. 149-50 (INEX Invoice for replacement drywall for separate claimant); Rec. Doc. 20764-2 at p. 11 (2006 INEX Drywall Invoice).

failed to comply with the requirements.  Therefore, the Special Master was correct in disallowing the claim pursuant to the Knauf Class Settlement Agreement.[21]

## V.    CONCLUSION

The Special Master's decision followed the Knauf Class Settlement Agreement by properly applying PTO 1(B).  Claimants are class members and did not to opt-out of the Knauf Class Settlement Agreement, and are therefore bound by its terms and requirements.  At the time Claimants remediated the Property, they were represented by counsel and  had notice of the PTO 1(B) requirements, but still failed to comply with its terms.  As set forth above, the failure to comply with PTO 1(B) and the Knauf Class Settlement Agreement has directly prejudiced the Knauf Defendants in this matter.  Therefore, the Special Master appropriately and correctly disallowed the claim based on the failure to preserve and present evidence in accordance with the Knauf Class Settlement Agreement.  Therefore, the Special Master's decision should be affirmed.

---

[21] The Knauf Defendants also dispute the Reimbursable Costs asserted by the Carters based on poor cost documentation.  As set forth above the KPT percentage should be 0%.   However, should the claim be compensable at all, it should be limited to the amount of Reimbursable Costs ($64,983.92) multiplied by the percentage of KPT and then deducted for failing to comply with PTO 1 (B).  Rec. Doc. 12061-6 (Already Remediated Properties Protocol at Section IV(C)); Rec. Doc.  20764-3 at p. 145 (Claimants' Ledger annotated by Knauf).  In reviewing an ARH claim, the scope of the Court's review shall be limited to the Reimbursable Costs set forth in Section IV(D) of the Already Remediated Properties Protocol.  Rec. Doc. 12061-1 § IV(C).  In determining Reimbursable Costs, the Court shall employ certain criteria including: (1) whether the work was consistent with the Remediation Protocol; (2) whether the costs are attributable to contractor double billing, waste, or fraud; (3) whether the costs are attributable to upgrades; and (4) the KPT drywall percentage.  *Id*. at § IV(D).

Finally, because this is a Commercial Property under the Knauf Class Settlement Agreement, Claimants are not entitled to the lump sum payment.  Knauf Class Settlement Agreement, Section 4.3.1.1.  Instead, soft costs and other claimed costs outside the scope of Reimbursable Costs should be sought from the Other Loss Fund. Rec. Doc. 16407-3 (Knauf Class Settlement Agreement. Section 4.7).

Respectfully submitted,

**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC**

/s/ *Kerry J. Miller*
**KERRY J. MILLER (#24562), T.A.**
201 St. Charles Avenue, Suite 3600
New Orleans, LA  70170
Telephone:      (504) 566-8646
Facsimile:      (504) 585-6946
Email:          kjmiller@bakerdonelson.com
***Counsel for the Knauf Defendants***

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6 and that the foregoing was filed with the Clerk of Court of the United States Court for the Eastern District of Louisiana, on this 25th day of July 2017.

/s/ *Kerry J. Miller*
**KERRY J. MILLER**