UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL No. 2:09-md-2047 <br><br> SECTION L <br><br> JUDGE ELDON E. FALLON |
| **THIS DOCUMENT RELATES TO:** <br> *All cases* | MAGISTRATE JUDGE <br> JOSEPH C. WILKINSON, JR. |

**PROPOSED MDL LITIGATION PLAN OF CNBM COMPANY, LTD., BNBM (GROUP) COMPANY, LTD., AND BNBM PLC**

      Counsel for CNBM Company, Ltd., ("CNBM Company"), BNBM (Group) Company, Ltd., ("BNBM Group"), and BNBM PLC (collectively, the "CNBM and BNBM Entities"), along with counsel for Taishan Gypsum Company, Ltd., met with representatives of the PSC on July 6, 2017.  Following the Court's instruction, the parties discussed their respective views on the substantive and procedural determinations necessary to move this litigation forward.  Despite several hours of discussion, the parties were unable to agree to a joint plan.  The CNBM and BNBM Entities hereby present the following litigation plan for discussion at the August 3, 2017 status conference.[1]

**I.    INTRODUCTION**

      Managing an MDL is no simple undertaking.  It demands striking a difficult but critical balance between efficiency on the one hand, and protection of parties' due process rights on the other.  But even allowing for a certain amount of flexibility, this MDL has been subject to

---

[1] This submission responds to the Court's requests for possible means to move this litigation toward a conclusion.  As such, it necessarily focuses on major items and does not attempt to anticipate every possible issue or action as this litigation progresses.  To the extent it is necessary, the CNBM and BNBM Entities hereby reserve their rights to revise these positions, and all other rights as regards proceedings in this MDL.

myriad substantive and procedural irregularities which must be acknowledged and addressed before the case safely can proceed.

This plan proposes a framework for allowing this litigation to move forward and reach resolution without running afoul of the CNBM and BNBM Entities' due process rights or causing unnecessary delay.  It necessarily flows from the Court's single business entity finding, which places the CNBM and BNBM Entities at risk for liability far exceeding anything properly attributed to them as shareholders and (regarding BNBM) an extremely minor alleged manufacturer of drywall at issue here.  While the parties await the Court's ruling on pending 1292(b) motions for certification, this plan permits the CNBM and BNBM Entities to take efficient discovery regarding the claims against them (as all litigants must be permitted to do), allows for limited motion practice to ensure that all claims asserted in this litigation are legally permissible and advanced only by those with standing to assert them, and establishes an orderly schedule for adjudicating the *Amorin* claims.  Finally, this plan also presents a path to adjudicating the *Brooke* action that avoids the potentially inconsistent outcomes that would result were the action remanded now, as the PSC has previously demanded.

## II.    LITIGATION PLAN

The CNBM and BNBM Entities propose that the Court adopt the following plan for this MDL.  This plan provides the following phases, some of which may proceed in parallel: (A) claimant discovery; (B) motion practice to eliminate improper claimants and remove improper claims; (C) resolution of the *Amorin* remediation damages claims; (D) trials for all remaining *Amorin* claimants and claims; (E) the timing of any *Amorin* remand determinations; and (F) disposition of *Brooke* claims to avoid inconsistent outcomes.  As the CNBM and BNBM Entities have not sought a stay, the aforementioned phases can proceed while the Court considers their 1292(b) motions.[2]

---

[2] The CNBM and BNBM entities continue to urge the Court to quickly certify these matters for immediate appellate review.

**A.      The CNBM and BNBM Entities Must Be Permitted To Take Thorough Discovery Regarding The Claims – And Claimants – In This Litigation.**

No formal discovery relating to plaintiffs' damages claims has been conducted by defendants.  Beginning almost immediately after their initial appearance in this litigation in March of 2015, the CNBM and BNBM Entities participated in exhaustive, one-way discovery (that is, discovery directed only at defendants, with no reciprocity) that was not completed until that December.  They produced hundreds of thousands of pages of materials and offered high level corporate witnesses for depositions on topics relating to the three "tracks" of litigation permitted by the Court, all of which were requested by the PSC: the PSC's motion to assess class damages,[3] personal jurisdiction over the CNBM and BNBM Entities, and whether any defendants violated the Court's 2014 contempt order.  Hearing Tr. 4/17/2015 at 6; Hearing Tr. 7/14/2015 at 24.  Then, just weeks into 2016, the Court stayed litigation for the duration of the year while the parties engaged in Court-ordered settlement discussions.  In April of 2017, the Court found that it had jurisdiction over the CNBM and BNBM Entities, and on the same day directed the PSC to prepare the *Amorin* class damages spreadsheets.  Consequently, the CNBM and BNBM Entities have not had the opportunity to obtain discovery into the facts necessary to contest the scope or amount of damages sought, to investigate appropriate set-offs against the recently (again) revised spreadsheet, or to obtain broader information to be used during individual trials for remaining claims and claimants.

From the very beginning of this litigation, the Court recognized the importance of this fundamental information regarding standing, issuing (among other measures) multiple pretrial orders requiring Plaintiffs to preserve physical evidence from certain properties alleged to contain or have contained defective drywall manufactured in China.  *See* Pretrial Order No. 1; Pre-Trial Order No. 1(B), Rec. Doc. No. 12257 ("Pre-Trial Order No. 1(I)"); Rec. Doc. No.

---

[3] The Court heard the PSC's motion just three months after the CNBM and BNBM Entities appeared in litigation, and before it entertained jurisdictional issues.  What little discovery was afforded was limited to examinations of experts.  No claimant discovery was provided to the CNBM and BNBM Entities.

18528 ("Pre-Trial Order No. 1(J)").  And as the Court stated, even under the spreadsheet process claims will be subject to challenge and set-offs – but the CNBM and BNBM Entities cannot make these showings absent discovery.  They have sought this information, through carefully-circumscribed discovery, but the PSC has refused to provide any of it.  Thus, the CNBM and BNBM Entities have had no access to this key evidence, which establishes whether Plaintiffs possess even *prima facie* evidence of causation and damages.  The CNBM and BNBM Entities' access to this discovery is paramount because, as the Court held in its FOFCOL, for 2,449 properties the "only proof that Taishan or Chinese drywall was used in the claimants' properties was the claimants' statements on the Plaintiff Profile Forms."  FOFCOL ¶¶ 28-29.  Furthermore, the CNBM and BNBM Entities are entitled to discover all other evidence that might support set-offs such as actual remediation costs and other compensation that Plaintiffs have already received for any alleged property damage.

With regard to the *Amorin* spreadsheet process, the PSC is only now beginning to acknowledge that defendants, including the CNBM and BNBM Entities, are entitled to discovery.  During meet and confer negotiations on and following July 6, 2017, the PSC appeared to agree to Taishan's requests set forth in its Motion for Access for Claims Support and for Evidentiary Hearing on Remediation Damages.  Rec. Doc. 20776.  And indeed, on July 28, 2017, BrownGreer made available for download a substantial volume of documents relating to home ownership which will take some time to review and analyze.  While the CNBM and BNBM Entities are appreciative of this production, the Court should grant Taishan's motion without delay, so that the PSC is under judicial obligation to provide this basic material in full. This information includes the following items, some categories of which we cannot yet represent have been produced in full and others which we cannot represent the PSC has provided to anyone (but should):

- All information the PSC provided to BrownGreer in support of its Class Plaintiffs' Spreadsheet;

- All information relied upon by BrownGreer in preparation of the Class Plaintiffs' Spreadsheet;

- Evidence of all prior payments made to each Class Plaintiff in connection with Chinese Drywall claims;

- Evidence of current ownership of each property at issue;

- Evidence of any remediation efforts at each property at issue; and

- An oral examination of the BrownGreer representative most knowledgeable of its participation in preparation of the Class Plaintiffs' Spreadsheet.

The Court also will soon have before it CNBM Company's Motion to Compel Production of responses to requests for production, interrogatories, and requests for admission.  These requests seek information from the *Amorin* Plaintiffs including non-remediation damages and the eligibility of claimants to participate in the class proceedings.  The information sought apparently has not been provided by the PSC before, in any forum.   These requests are critical to the companies' ability to evaluate the current claims, represent the most fundamental evidence regarding claimants' damages allegations, and should pose minimal additional burden to produce.

**B.    The Court Must Resolve Threshold Questions Such As Standing, Jurisdiction, And The Scope And Effect Of "Preliminary Defaults" Before Proceeding With This Litigation.**

Notwithstanding the extensive litigation that has occurred already, there remains a profound lack of clarity about the basic parameters of this MDL—including such foundational questions as jurisdiction, which defendants the Court believes are subject to preliminary default, and even which complaint(s) govern.  One of the primary reasons for this uncertainty is the peculiar manner in which the PSC has elected to prosecute these cases.  It has filed overlapping complaints—identical both in terms of content and named plaintiffs—in various jurisdictions. That means each plaintiff has multiple complaints filed in his or her name, at least two of which are being pursued in jurisdictions other than that in which the property (and presumably the plaintiff) is located.  Adding to that complexity, the PSC has selectively sought and secured

preliminary defaults as to some but not all the CNBM and BNBM Entities in these overlapping actions.  Indeed, these purported "class actions" simply are not that:  the "class" consists of only the named Plaintiffs themselves, meaning there are neither absent class members nor any of the judicial or economic benefits that normally justify class treatment.  "Omnibus" or not, they are nothing more than consolidated individual actions, pure and simple.

There is no way to clean up this disorder other than through motion practice.  These issues govern the most basic rules of the road for this MDL—after all, there can be no judgment until it is clear who the plaintiffs and who the defendants are in various actions, where there is jurisdiction, which district courts ultimately own each claimant's case, and in which case (if any) a defendant will be deemed to have defaulted.  Unless the Court addresses these issues, in writing and on the record, the parties never will have the requisite clarity.

Specifically, the Court can resolve this confusion through motion practice that specifically addresses the questions regarding the scope and application of defaults; jurisdiction (if any) over purported nationwide class actions (especially after the Supreme Court's recent guidance); and the fate of new or otherwise improper claims.  To this end, the CNBM and the BNBM Entities will soon file at least the following motions:

- Supplemental motion on jurisdiction and class certification following the Supreme Court's recent decision in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County* (June 19, 2017);

- Motion to vacate defaults;

- Motion  to clarify the scope and application of defaults in the *Amorin* class actions; and

- Motion to dismiss claims barred for lack of standing, statutes of limitation/prescription, failure to preserve evidence pursuant to Pretrial Order 1, and state law limits on certain types of damages.

To be clear, these motions will address *at least* the following critical, threshold issues:

**First**, In the absence of general jurisdiction, *Bristol-Myers Squibb* prohibits courts from exercising jurisdiction over claims pursued by out-of-state claimants absent a proximate connection between their claim and the forum in which suit is brought.  In this case, that means each claim must be heard and tried in the state where the complained-of residence is located.[4]

**Second**, the Court has ordered some preliminary defaults, but no final ones as to the CNBM and BNBM Entities.  But PTO 1(H) held in abeyance any obligation to file a responsive pleading until the PSC filed its Notice of Completion – which it only recently did – and its final, Master Complaint – which it still has not done.[5]  Defaults also have been issued where the court now has found no jurisdiction existed.  And defaults have been entered on amended complaints that not even the PSC claims to have even tried to serve.  Then, after doing all this, one of the Court's April orders suggested that a default in any one case is preclusive, meaning the supposedly defaulted defendant has conceded liability in *all* cases.  With respect, that cannot be correct and, at a minimum, requires written clarification of the grounds for preclusion for the parties going forward, because any liability imposed on this basis will require appellate review.

**Finally**, a claimant who cannot establish that a Taishan (or, in rare instances, a BNBM PLC) product was present in his or her home (and in what amount), was defective, and caused damage, lacks standing to proceed.  Claimants who violated the Court's clear orders and

---

[4] The PSC appears to agree.  *See* July 27, 2017 Letter from A. Levin & R. Herman, provided herewith as Attachment 1 (stating an intent to file further "protective actions" in multiple jurisdictions "in light of the Supreme Court's recent decision in *Bristol-Myers-Squibbs.*" (*sic*)).  And the PSC has begun filing these protective actions.  *See Bright, et al., v. Taishan Gypsum Co. Ltd., et al.*, Case No. 2:17-cv-00035-FL (E.D.N.C. Aug. 1, 2017).

[5] Nothing could better establish the continued vitality of PTO 1(H) than the PSC's July 27 letter to defendants requesting their agreement to vacate it **going forward.**

spoliated evidence have waived their right to proceed.  And all claims must pass muster under the appropriate states' laws, including those barring recovery by subsequent purchasers of real property, setting deadlines within which lawsuits must be filed, and precluding recovery under the economic loss doctrine.[6]

     **C.**    **The Court Should Defer The *Amorin* Remediation Spreadsheet Process Until All Threshold Questions Have Been Addressed And Full Damages-Related Discovery Has Been Provided.**

          **1.**    **The Spreadsheets Are Partial, Inaccurate, Unreliable, And Inadmissible.**

It is important that the Court understand exactly what these spreadsheets are – and what they are not.  These are advocacy pieces that aim high, not objective findings rendered by impartial, fully-informed consultants or experts.  That is because – and it is essential that the Court understand and have a full record on this topic – BrownGreer is responsible for only *one* of the columns on these spreadsheets:  the listing of homeowners.[7]  And even that information is problematic – given that those listings appear not to be limited to claimants who have owned the home from the time of alleged injury until the present – but that is the least of the problems with these spreadsheets.  Far more critical, the square footage and product identification "indicia" come, directly and unfiltered, from the PSC, sometimes from claimants' counsel, sometimes from counsel not representing the claimants, and sometimes from claimants themselves.  BrownGreer did not review these notations, because it lacked both the information and the expertise to do so.  The fact that the PSC keeps changing the spreadsheets, adding and deleting claims and changing square footage, would have rendered any such review moot in any event.

---

[6] The list above is not necessarily exhaustive.  Rather, it includes those motions that the CNBM and BNBM Entities intend to file in the immediate future; others, including motions seeking remand, individual trials, and preserving jury trial rights, may follow, depending on the course set after the upcoming discussions.

[7] The CNBM and BNBM Entities have not yet had the chance to review either BrownGreer's protocol or findings regarding claimant property ownership, since some of these materials only were produced late on July 28.

And the CNBM and BNBM Entities have received no assurances from the PSC that these changes, *erratas*, additions, deletions, dismissals, interventions, and alterations to the spreadsheet have any end in sight.  As formulated, therefore, the spreadsheets are based on inadmissible information, are themselves inadmissible, and simply cannot support any damages award.

>**2.  The Court Must Address The "Preliminary Defaults" Before Proceeding, As Vacatur Will Entitle The CNBM And BNBM Entities To Full Trials.**

The PSC wishes to push forward in assessing remediation damages in the *Amorin* actions, leaving until an undefined later date the discovery and process for challenging claims.  But, as the above discussion shows, the spreadsheet process must be deferred until the requisite, basic discovery has been provided, the CNBM and BNBM Entities are given the opportunity to ensure that only eligible claimants are bringing appropriate and accurate claims, and the current preliminary defaults are addressed and corrected.

This last point requires resolving questions regarding the scope and application of the preliminary defaults entered in the *Amorin* actions.  As will be discussed in much greater detail in the CNBM and BNBM Entities' Motion to Vacate Defaults, Plaintiffs sought differing combinations of preliminary defaults against CNBM Company, BNBM Group, and BNBM PLC in some, but not all, of the *Amorin* actions.  These entries of default should be vacated for numerous reasons, chief among them that the time to file a responsive pleading in the *Amorin* actions still has not yet arrived due to the PSC's failure to file a Master Complaint required by PTO 1H.[8]  And the Court ignored the incomplete status of even these preliminary defaults, holding every Defendant defaulted in every action.  If this erroneous preclusive application of

---

[8] The CNBM and BNBM Entities discussed the importance of PTO 1H with the PSC on July 6, 2017.  Some three weeks later, in response, the PSC argued that the MDL should "'return to regular order' by vacating Pretrial Order Nos. 1G and 1H."  July 27, 2017 Letter from A. Levin & R. Herman.  The CNBM and BNBM Entities do not agree that the Court's pretrial orders can be retroactively vacated to relieve the PSC of its obligations.  If anything, the PSC's request underscores that those orders remain viable and effective, and that the CNBM and BNBM Entities were entitled to rely upon them, then and now.

defaults is set aside, the CNBM and BNBM Entities will be entitled to conduct a full defense of the claims against them on the merits, including the remediation damage claims.

3. <strong>The Court Must Allow Discovery Before Further <em>Amorin</em> Remediation Damages Proceedings.</strong>

Whatever the Court does with the preliminary defaults, the CNBM and BNBM Entities must be afforded full and fair discovery before the spreadsheet process begins. This discovery is necessary so that the CNBM and BNBM Entities can, where appropriate, raise defenses such as lack of standing or failure to preserve evidence pursuant to Court order. Discovery is also necessary so that the CNBM and BNBM Entities can raise, in a comprehensive filing, all challenges to the PSC's spreadsheets and on a more fundamental basis, identify the operative document among the many amendments and errata filed since June. A preliminary review has already identified discrepancies between the spreadsheets and the underlying records, and also between the underlying data and publicly-available records. While the PSC goes to great lengths to amplify BrownGreer's participation and bestow a sense of reliability to the data, that firm was only engaged to determine, in conjunction with and in reliance upon materials provided by the PSC, a single issue: ownership of the properties.[9] Discovery is a necessary prerequisite to identifying infirmities in the spreadsheets, which must be addressed before the Court can enter any award.

D. <strong>After Threshold Questions Have Been Resolved And Discovery Is Complete, The Claims Must Be Heard and Resolved Individually.</strong>

The CNBM and BNBM Entities contend that individual determinations for <em>Amorin</em> claimants will be necessary regardless of the disposition of preliminary defaults. If the preliminary defaults are upheld, the CNBM and BNBM Entities will at least be entitled to present a full and fair defense including challenges to standing, the quantum of damages, and the existence of set-offs. And should the preliminary defaults be vacated, these claims will additionally require motion practice tailored to each claimant's allegations and applicable state

---

[9] And even that review is open to question.

law.   The CNBM and BNBM Entities are entitled to assert all available defenses, including product identification, product defect, home ownership status, actual damages, set-offs, and other damage claims.  And as discussed in section IIB, *supra*, the CNBM and BNBM Entities will challenge the ability of claimants to ask this Court to entertain claims brought in states with insufficient and insufficiently-related contacts between the CNBM and BNBM Entities and the state in which the claimant's property is situated.

     E.     **Remand Of The *Amorin* Cases Is Inappropriate Until The CNBM And BNBM Entities Have Been Afforded Due Process Of Law In This Court.**

The CNBM and BNBM Entities contend that remand is inappropriate in the *Amorin* cases at this time.  The Court must first resolve the issues created by the incomplete and inappropriate preliminary defaults, the duplicative and overlapping complaints filed in multiple jurisdictions, and the one-sided discovery, all preceding a rush to secure a nine-figure remediation damages award.  The Court must first afford the CNBM and BNBM Entities the due process described in the sections above.  At this stage, these entities will oppose any remand request made to the Judicial Panel on Multidistrict Litigation before these fundamental pre-trial requirements have been satisfied.

     F.     **The CNBM and BNBM Entities Will Move To Dismiss The *Brooke* Claims.**

The PSC filed the *Brooke* complaints in 2015, nearly a decade after the drywall at issue was imported into the United States.  To date, there has been little activity in *Brooke*.  No Movant has been defaulted, and the time to file responsive pleadings has not yet arrived pursuant to PTO 1H.  The CNBM and BNBM Entities, in conjunction with Taishan, have proposed to the PSC that the *Brooke* cases be remanded once the PSC completes its motions to intervene and amendments to Omnibus XX and files a notice of completion certifying that it has finished adding and amending claims in the MDL and has served all named defendants.  The cases would then proceed in the transferor courts.  The CNBM and BNBM Entities anticipate that the PSC will not agree to this proposal, as the PSC has stated that it plans to seek (at least) discovery and summary judgment on liability issues in the MDL.

And however the Court proceeds, summary judgment clearly cannot even be considered before the pleadings are settled, or before any discovery necessary to oppose such a motion has been completed.  Should the Court entertain any pre-remand motions in *Brooke,* however, it first should address the timeliness of those claims.  The bulk of claimants, including the recently-added complaints-in-intervention filed within the last month via Omnibus XX(a), are located in Florida.  The fact that these claims were filed in 2015 (and in some cases, in 2017), long after this MDL commenced with considerable attendant publicity and even the distribution of class notices, also surely is relevant:  these claims are vulnerable to dismissal on grounds that they are barred by the applicable statutes of limitation/prescription.  In many instances, these claimants participated in earlier recovery in the MDL and significant judicially-noticeable records exist showing that the *Brooke* claimants have waited too long to prosecute their claims against the remaining defendants here.  The CNBM and BNBM Entities anticipate filing a motion to dismiss that raises, among other issues, the defense that the claims are barred by the applicable statutes of limitation/prescription.

Respectfully submitted,

*/s/ L. Christopher Vejnoska*

L. Christopher Vejnoska (CA Bar No. 96082)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105
Tel:  415-773-5700
Email:  cvejnoska@orrick.com

James L. Stengel (NY Bar No. 1800556)
Xiang Wang (NY Bar No. 4311114)
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY, 10019
Tel:   212-506-5000
Email:  jstengel@orrick.com
        xiangwang@orrick.com

Eric A. Shumsky (D.C. Bar No. 477926)
ORRICK, HERRINGTON & SUTCLIFFE
LLP
Columbia Center
1152 15th Street NW
Washington, D.C. 20005
Tel: 202-339-8400
Email: eshumsky@orrick.com

*Counsel for CNBM Co. Ltd., BNBM (Group) Co. Ltd., and BNBM PLC*

Ewell E. Eagan, Jr. (LA Bar No. 5239)
Donna Phillips Currault (LA Bar No. 19533)
GORDON, ARATA, MONTGOMERY, BARNETT,
MCCOLLAM, DUPLANTIS & EAGAN, LLC
201 St. Charles Avenue, 40th Floor
New Orleans, LA 70170-4000
Tel: (504) 582-1111
Email: eeagan@gamb.law
       dcurrault@gamb.law

*Counsel for CNBM Co. Ltd.*

Harry Rosenberg
LA Bar No. 11465
Phelps Dunbar LLP
365 Canal St., Suite 2000
New Orleans, LA  70130
Phone:  (504) 566-1311
Fax:  (504) 568-9130
Harry.Rosenberg@Phelps.com

*Counsel for CNBM Co. Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing **PROPOSED MDL LITIGATION PLAN OF CNBM COMPANY, LTD., BNBM (GROUP) COMPANY, LTD., AND BNBM PLC** has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail and upon all parties by electronically uploading the same to File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 1st day of August, 2017.

/s/ L. Christopher Vejnoska
L. Christopher Vejnoska (CA Bar No. 96082)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Tel: 415-773-5700
Fax: 415-773-5759
Email: cvejnoska@orrick.com

*Counsel for CNBM Co. Ltd., BNBM (Group) Co. Ltd., and BNBM PLC*