UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL No. 2:09-md-2047 <br><br> SECTION L <br><br> JUDGE ELDON E. FALLON |
| **THIS DOCUMENT RELATES TO:** *ALL CASES* | MAGISTRATE JUDGE JOSEPH C. WILKINSON, JR. |

**MEMORANDUM IN SUPPORT OF SUPPLEMENTAL MOTION ON JURISDICTION AND CLASS CERTIFICATION FOLLOWING *BRISTOL-MYERS SQUIBB CO. V. SUPERIOR COURT OF CALIFORNIA, SAN FRANCISCO COUNTY***

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................1
II. FACTUAL AND PROCEDURAL BACKGROUND ............................................2
III. ARGUMENT ............................................................................................................7
   A. This Court Must Dismiss Claims Brought By Homeowners Outside Of Their States Of Residency. ...................................................................................7
   B. The Court Should Dismiss The Claims Of Florida And Virginia Residents Against BNBM Predicated On Agency Theories. ...................................9
   C. The Certified Class, Which Fails To Distinguish Among States Of Residency, Cannot Stand. ...................................................................................11
IV. CONCLUSION .......................................................................................................12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*,
　137 S. Ct. 1773 (2017) .................................................................................................. *passim*

*Ergon Oil Purchasing, Inc. v. Canal Barge Co., Inc.*, No. 16-cv-5884, 2017 WL
　2730853 (E.D. La. June 26, 2017) ............................................................................................9

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011) ......................................8

*Oliver v. Ethicon*, 12-cv-06950, 2017 WL 3193652 (S.D.W. Va. July 27, 2017) ..........................8

*Pfanenstiel Architects, Inc. v. Chouteau Petroleum Co.*,
　978 F.2d 430 (8th Cir. 1992) .....................................................................................................5

*Robertson v. Monsanto Co.*,
　287 F. App'x 354 (5th Cir. 2008) (per curiam) ........................................................................3

On June 19, 2017, the United States Supreme Court issued *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773 (2017).  The decision makes absolutely clear that the Court must dismiss out-of-state plaintiffs, dismiss BNBM from the Florida and Virginia actions, and decertify the class.  In so doing, it underscores several key arguments advanced by Defendants CNBM Company, BNBM (Group) Co. Ltd. and BNBM PLC ("Moving Defendants") in support of their motions to dismiss as well as the impropriety of the PSC's peculiarly-defined class.  And it makes all the more clear that the Court should certify its April 2017 rulings for immediate appeal.

Moving Defendants submit this brief in response to the Court's directive that the parties provide it with suggested routes to the conclusion of this proceeding.  *Bristol-Myers* brightly illuminates a path that not only must be taken, but that provides the Court with important tools to narrow the scope of its, and ultimately the transferor courts', remaining obligations.

**I.     INTRODUCTION**

Litigation of this magnitude unquestionably poses difficulties.  As the § 1292(b) motions explain, for instance, at a minimum the cases present thorny questions of law.  Rec. Docs. 20779-1, 20780-1, 20781-1.  But needlessly adding to the complexity is the manner in which the PSC has prosecuted these cases.  It has filed overlapping complaints in various jurisdictions on behalf of residents of a dozen and a half states.  It has claimed to be pursuing class actions despite the fact that there are no absent class members in any of them.  And it has sought—and obtained—class certification without differentiating among homeowner location.  The PSC's approach was peculiar enough at the time Moving Defendants filed their motions to dismiss and to decertify the class.  After *Bristol-Myers*, it can no longer be deemed just peculiar; it is now clearly unlawful.

- 2 -

In *Bristol-Myers*, the Supreme Court clarified that, absent general jurisdiction, there must be "a connection between the forum and the specific claims at issue." 137 S. Ct. at 1781 (emphasis added). In other words, a plaintiff must show that his injuries resulted from the defendant's contact with the state in which he filed suit. And here, each plaintiff's sole contact is to the jurisdiction in which his or her home is located. There is no basis for any plaintiff to bring suit in any other jurisdiction. Accordingly, *Bristol-Myers* demands that the PSC's overlapping complaints be dismissed and its state-undifferentiated class be decertified.

*Bristol-Myers* also confirms the impropriety of subjecting BNBM to jurisdiction in Florida and Virginia under a theory of general agency. What the PSC must show, which it has failed to do, is that each Plaintiff's injuries resulted directly from BNBM and Taishan's supposed agency relationship in selling drywall to Florida and Virginia, respectively.

It is far better for the Court to resolve these issues now, as it embarks upon a final plan to resolve this litigation. If the Court allows the complaints and the class to stand as they are presently constituted, appellate review appears inevitable, and (we believe) reversal likely. Such a determination years after the fact would undermine the Court's efforts to resolve this litigation as expeditiously as possible. The Court should therefore dismiss the out-of-state plaintiffs from each of the respective complaints (allowing certain claimants to proceed, but in the proper jurisdiction: where the residence is located); dismiss BNBM from the Florida and Virginia actions (where the claims are predicated on an agency relationship); and decertify the class as currently constituted, in accordance with *Bristol-Myers*.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In June and July 2011, the PSC filed three virtually identical complaints, mounting the same allegations against the same defendants on behalf of the same plaintiffs. *See Amorin v.*

*Taishan Gypsum Col., Ltd.*, Case No. 11-cv-01395, Dkt. No. 1 (E.D. La.); *Amorin v. Taishan Gypsum Col., Ltd.*, Case No. 11-cv-00377, Dkt. No. 1 (E.D. Va.); *Amorin v. Taishan Gypsum Col., Ltd.*, Case No. 11-cv-22408, Dkt. No. 1 (S.D. Fl.). Specifically, in addition to the named plaintiffs in those three actions, the complaints asserted claims on behalf of all plaintiffs from prior complaints filed in Florida, Louisiana, and Virginia.[1] *Id.* In total, this consisted of thousands of homeowners from at least eighteen different states.

The PSC then moved for class certification on July 23, 2014, which the Court approved, defining the class as "[a]ll owners of real properties in the United States, who are named Plaintiffs on the complaints in *Amorin*, *Germano*, and/or *Wiltz* (*i.e.*, not an absent class member),[2] asserting claims for remediated damages arising from or otherwise related to Chinese Drywall manufactured, sold, distributed, supplied, marketed, inspected, imported or delivered by the Taishan Defendants." Rec. Doc. 18028 at 34-35.[3] The class does not distinguish among homeowners by state.

Following their entry into the litigation, Moving Defendants asked that the Court dismiss them from the MDL. Rec Docs. 19646, 19664. They explained that—as direct and indirect

---

[1] More recently, the PSC did likewise with respect to the *Brooke* complaints. *Brooke v.* SASAC, Case No. 15-cv-04127, Dkt. No. 1 (E.D. La.); *Brooke v. SASAC*, Case No. 15-cv-6631, Dkt. No. 1 (S.D. Fl.), *Brooke v. SASAC*, Case No. 15-cv-6632, Dkt. No. 1 (E.D. Va).

[2] Thereby maintaining the unique, and unlawful, status of this "class" as including only already-known and specifically-named plaintiffs. *See, e.g.*, *Robertson v. Monsanto Co.*, 287 F. App'x 354, 361-62 (5th Cir. 2008) (per curiam) (when "the class … is defined to include only individuals … who were already named as plaintiffs in the … action," there is "simply … no gain to be had from using the class action form").

[3] At the June 9, 2015 damages hearing, the Court *sua sponte* revised the class definition to include not just plaintiffs with remediation damages, but also those whose homes had not been remediated. June 9, 2015 Damages Hearing at 90-91. Notice of this revision was never provided to any purported class, nor were Moving Defendants allowed to address it. This too constitutes a denial of due process and provides an independent basis for decertification.

- 3 -

parent companies who have had no independent contacts with the states in which the transferor courts are located, maintain corporate formalities, and did nothing more than engage in typical shareholder behavior—there is no basis for subjecting them to jurisdiction in any action that comprises the MDL.  Rec Docs. 19646, 19664.  In addition, they moved to decertify the class.  Rec. Docs. 18883, 20624-3.  Defendants asserted, among other things, that the numerous and considerable variations in state law—variations the PSC ignored—preclude class treatment, at least as the class had been defined.  *See, e.g.*, Rec. Doc. 20624-3 at 18-24.

On April 21, 2017, this Court declined to dismiss Moving Defendants.  Rec. Doc. 20739.  With one exception,[4] the Court recognized there is no basis for asserting jurisdiction over any of the Moving Defendants based on their direct contacts.  *Id.*  Instead, despite agreeing that Chinese law governs, it purported to apply Louisiana single business enterprise and alter ego laws to impute contacts from Taishan to Moving Defendants in that state.  *Id.* at 40, 69-79.  Using the respective states' agency laws, it did the same to impute contacts from Taishan to BNBM in Florida and Virginia.  *Id.* at 54-69.  The Court drew this conclusion notwithstanding the absence of evidence that the drywall Plaintiffs claimed caused their injury arose out of BNBM's agency relationship with Taishan.  Nor did the Court engage in a plaintiff-specific inquiry by assessing, for example, the propriety of nonresident plaintiffs pursuing claims in states other than those in which the allegedly damaged homes are located.

The Court also denied Moving Defendants' request to decertify the class, focusing largely on the predominance requirement.  Rec. Doc. 20740.  Specifically, in addressing liability, the Court for the first time applied defaults to non-defaulted defendants in non-defaulted

---

[4] The Court concluded that BNBM is subject to jurisdiction in Florida for its own drywall sales. *Id.* at 80-98.

actions.[5]  *Id.* at 12.  Thus, the Court concluded there are no "open questions of liability and causation."  *Id.*  As to damages, the Court found a single formula could be applied to account for remediation costs.  *Id.* at 15.  And because "[c]laims for property damage are undoubtedly the focus of this MDL," it concluded, they predominate over issues concerning non-remediation damages.  *Id.*  Though the Court acknowledged that variations in state law must be accounted for, it nevertheless did not address the complex and individualized issues that arise from certifying a class of plaintiffs from a dozen and a half states.[6]

Following the Court's April 21, 2017 jurisdictional and class certification rulings, the United States Supreme Court issued its decision in *Bristol-Myers Squibb Company v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773 (2017).  The Court recognized that where specific jurisdiction is concerned, due process demands "a connection between the forum and the specific claims at issue."  *Id.* at 1781.  Absent that showing, "specific jurisdiction is lacking"—and that is true "regardless of the extent of a defendant's unconnected activities in the State."  *Id.*

At issue in *Bristol-Myers* were a series of actions filed in California state court.  *Id.* at

---

[5] Moving Defendants take issue with the Court's preclusive application of the defaults.  As the Court itself has acknowledged, not all defendants have defaulted in all actions, Rec. Doc. 18028 at 6, and the non-defaulting defendants are entitled to prove their claims, *The Mary*, 13 U.S. 126, 143 (1815) ("In the same cause, a fact, not controverted by one party, who does not appear, and therefore, as to him taken for confessed, ought not, on that implied admission, to be brought to bear upon another who does appear, does controvert, and does disprove it."); *Pfanenstiel Architects, Inc. v. Chouteau Petroleum Co.*, 978 F.2d 430, 432 (8th Cir. 1992) (recognizing it is a "venerable principle that a default judgment against one defendant does not preclude a co-defendant from contesting the plaintiff's claim").  Moving Defendants' challenge to this ruling will be set out in a separate motion.

[6] This approach is all the more strange given the PSC's own request that certain damages be tried individually.  *See, e.g.*, Rec. Docs. 19705-1, 19721-2.

1778.  The 600 plaintiffs consisted of 86 California residents and 592 residents from 33 other states.  *Id*.  They brought various personal injury claims under California law, alleging that the prescription drug, Plavix, damaged their health.  *Id*.  Bristol-Meyers moved to dismiss the claims of non-California residents.  *Id*.  Because the company's headquarters and base of operations are in New York and New Jersey, respectively, there was no basis for general personal jurisdiction.  *Id*.  However, the California Supreme Court found specific jurisdiction as to the nonresidents by applying a sliding scale in which "the more wide ranging the defendant's forum contacts, the more readily is shown a connection between the forum contacts and the claim."  *Id*.  Specifically, the California court found that this requirement was satisfied "because the claims of the nonresidents were similar in several ways to the claims of California residents (as to which specific jurisdiction was uncontested)," Bristol-Myers marketed and promoted the drug in California, and it engaged in non-Plavix-related research there.  *Id*. at 1779.

The Supreme Court reversed.  As the Court recognized, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction."  *Id*. at 1780 (citation omitted).  Even if a corporation engages in ongoing activity within a state, the corporation is not "amenable to suit[] [there] unrelated to that activity."  *Id*.  Were the rule otherwise, a defendant would be subject "to the coercive power of a State that may have little legitimate interest in the claims in question."  *Id*. at 1780.  For that reason, "a defendant's general connections with the forum are not enough."  *Id*. at 1781.  There must be "a connection between the forum and the specific claims at issue."  *Id* (emphasis added).

The Supreme Court found such a connection lacking.  The nonresident plaintiffs, the Court explained, had not been prescribed Plavix in California, did not purchase it there, did not take it in the state, and were not injured in California.  *Id*. at 1781.  Though the California

- 6 -

plaintiffs had engaged in such in-state activities, the Court concluded that is not enough to permit "the State to assert specific jurisdiction over the nonresidents' claims," notwithstanding the similarity of the claims. *Id*. Because "all the conduct giving rise to the nonresidents' claims occurred" outside of California, the Court ultimately held that "the California courts [could not] claim specific jurisdiction" over the non-California residents. *Id*. at 1782.

### III.   ARGUMENT

*Bristol-Myers* is relevant here in several critical respects. First, it makes clear that this Court must dismiss claims brought by homeowners in states other than those in which their property is located. *Infra* § I.A. Second, it underscores why a general agency relationship between BNBM and Taishan—without any specific showing that the drywall sold to plaintiffs in Florida and Virginia resulted from that relationship—is an insufficient basis for asserting jurisdiction over BNBM. *Infra* § I.B. And third, *Bristol-Myers* makes clear that a class action cannot be brought by plaintiffs across multiple states when, as here, the court's personal jurisdiction is rooted in a theory of specific jurisdiction. *Infra* § I.C.

### A.   This Court Must Dismiss Claims Brought By Homeowners Outside Of Their States Of Residency.

The PSC has filed complaints in numerous jurisdictions without regard to residency. *See supra* at pp. 2-3. It has filed complaints in Louisiana on behalf of residents of Florida and Virginia, complaints in Florida on behalf of Louisiana and Virginia residents, and complaints in Virginia on behalf of residents of Florida and Louisiana. *Id*. And complaints of residents from various other jurisdictions in each of these states. *Id*. The PSC has done so despite recognizing there is no general jurisdiction over Moving Defendants. Rec. Doc. 19995-2 (asserting only specific jurisdiction theories as to Moving Defendants). But, in asserting its case for specific jurisdiction, the PSC has never articulated any basis by which nonresidents may be permitted to

- 7 -

bring suit against Moving Defendants in a state other than that in which each property is located. It is now abundantly clear that these multi-state complaints are impermissible.

*Bristol-Myers* is on all fours. There, as here, a contingent of plaintiffs from various states elected to file in jurisdictions other those in which they were residents. 137 S. Ct. at 1778. They had no basis for asserting general, personal jurisdiction. Relying on specific jurisdiction, the nonresident plaintiffs attempted to bootstrap onto the claims of in-state residents and capitalize on Bristol Myers' general business dealings within California. *Id*. at 1781. Those, the Supreme Court found, were inadequate grounds for finding specific jurisdiction over Bristol Myers as to the nonresidents' claims. *Id*. at 1782.

So too here. There is no general jurisdiction because neither Moving Defendants nor Taishan can "fairly [be] regarded as being at home" in Florida, Louisiana, or Virginia. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). Thus, jurisdiction here must be based on specific jurisdiction. Specific jurisdiction, of course, "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Bristol-Myers*, 137 S. Ct. at 1780 (*citing Goodyear*, 564 U.S. at 919). But, as noted, the PSC has never articulated a theory for invoking personal jurisdiction over Moving Defendants (or Taishan for that matter) on behalf of nonresident plaintiffs. And the only available arguments, it would seem, for why a state, such as Louisiana, has specific jurisdiction over claims brought by Florida and Virginia homeowners are those the Supreme Court rejected in *Bristol-Myers*. Thus, there is no "connection between the forum [states] and the [nonresidents'] specific claims at issue" and no jurisdiction over the nonresidents' claims.[7] *Id*. at 1781; *see also, e.g*., *Oliver v. Ethicon*, 12-

---

[7] Although *Bristol-Myers* left open the question of its application in federal court, *id*. at 1783-84, there is no principled basis for concluding a different due process analysis would apply in diversity actions (as opposed to cases invoking federal question jurisdiction).

- 8 -

cv-06950, 2017 WL 3193652, at *3 (S.D.W. Va. July 27, 2017) (relying on *Bristol-Myers* to dismiss defendant for lack of specific jurisdiction from product liability MDL filed in Minnesota because "the record indicate[d] no connection between the mesh product implanted in the plaintiff in Arkansas and Ethicon's mesh products sold in Minnesota"); *Ergon Oil Purchasing, Inc. v. Canal Barge Co., Inc*., No. 16-cv-5884, 2017 WL 2730853, at *5 (E.D. La. June 26, 2017) (post-*Bristol Myers* dismissal of nonresident defendant where plaintiff's "general assertions—without a specific evidentiary tie to [the Louisiana company co-defendant] and the barge cleaning services in question—[we]re insufficient evidence of specific jurisdiction").

To hold otherwise would be to adopt just the sort of "loose and spurious form of general jurisdiction" that the Supreme Court rejected in *Bristol-Myers*. *Id*. Accordingly, this Court should dismiss all plaintiffs from those actions filed in states in which their properties do not reside.

**B.   The Court Should Dismiss The Claims Of Florida And Virginia Residents Against BNBM Predicated On Agency Theories.**

In its April 21, 2017, Order, this Court found no basis for exercising jurisdiction over CNBM and BNBM Group in Florida and Virginia. Rec. Doc. 20739 at 55. However, it concluded that it could impute Taishan's contacts with those states to BNBM due to the existence "of an agency relationship between Taishan and BNBM." *Id.* But, as the Supreme Court has recognized, "[a]gencies … come in many sizes and shapes" such that "[o]ne may be an agent for some business purposes and not others so that the fact that one may be an agent for one purpose does not make him or her an agent for every purpose." *Daimler AG v. Bauman*, 134 S. Ct. 746, 759 (2014). Accordingly, courts must assess the agency relationship to determine whether a principal "purposefully availed itself of a forum by directing" an agent to engage in the activity giving rise to the claim. *Id*. at 759 & n.13.

- 9 -

*Bristol-Myers* clarified any lingering uncertainty regarding the scope of the agency inquiry. It is not enough to simply show that a relationship exists between two companies. Or even that they have engaged in extensive interactions. Just as a plaintiff must demonstrate that his claim arises out of the defendant's contacts with the forum state, when his jurisdictional theory turns on an agency relationship, he must demonstrate that his claim arises out of an agency relationship connected with the forum state.

Here, there has been no finding that any defective drywall contained in the Florida and Virginia residents' homes specifically resulted from BNBM's supposed agency relationship with Taishan.[8] What this Court found is that Taishan and BNBM share corporate officers, BNBM "controls Taishan's long-term strategic decisions" such as loan requests, BNBM combined its drywall statistics with Taishan's, BNBM monitored and approved Taishan's daily activities, and the companies shared logos and office space. Rec. Doc. 20739 at 54-64 (Florida), 64-69 (Virginia). These general interactions, even if true (though Moving Defendants continue to contest them; as just one example, there is no question the companies use different logos), do not demonstrate that each Florida and Virginia defective drywall claim arose out of Taishan's agency relationship with BNBM. The closest the Court came to making the more detailed jurisdictional showing required under *Bristol-Myers* were its findings that BNBM can influence Taishan and had the power to control the capacity of Taishan drywall factories and manufacturing details. *Id*. at 58. But that is a far cry from showing that BNBM interacted with Taishan for the purpose of selling drywall to Florida and Virginia. And it is an even farther cry

---

[8] To be clear: BNBM here challenges, under *Bristol-Myers*, the Court's agency finding under Florida and Virginia law. It has separately challenged (and continues to challenge) the Court's finding of jurisdiction concerning its alleged direct drywall sales to Florida homeowners.

from showing that each named plaintiff's drywall resulted from those interactions.[9]

Because no showing has been made—nor can be made—to demonstrate that BNBM engaged Taishan in an agency relationship that purposefully resulted in drywall sales to the named homeowners in Florida and Virginia, those claims must be dismissed as to BNBM.

### C. The Certified Class, Which Fails To Distinguish Among States Of Residency, Cannot Stand.

"[T]he upshot of [*Bristol-Myers*] is that plaintiffs cannot join their claims together and sue a defendant in a State in which only some of them have been injured." 137 S. Ct. at 1788 (Sotomayor, J., dissenting) (emphasis added). Though this Court did not have the benefit of *Bristol-Myers* at the time it issued its certification decisions, this impermissible approach is precisely what the Court has approved by certifying the class here. Rec. Docs. 18028, 20740. The Court has permitted homeowners from eighteen different states to bring consolidated class actions in Florida, Louisiana, and Virginia. That means, for instance, that residents of California and Ohio will be prosecuting claims in Louisiana, homeowners from Michigan and South Carolina will be engaged in litigation in Florida, and residents of New Jersey and Wisconsin will be proceeding on claims in Virginia.

For whatever reason, state-specific nuances—whether they be variations in state law or differing states of residency—simply have not been addressed and honored in this litigation. The Court's initial class certification determination did not address them—understandable perhaps given that the PSC neglected to bring them to the Court's attention, and omitted them from its proposed certification order. Rec. Doc. 18028. But the Court also did not address and analyze

---

[9] That the Court failed to undertake the sort of state-specific and plaintiff-specific inquiry required by *Bristol-Myers* is evidenced by the near duplicative agency analysis undertaken as to both Florida and Virginia. *Compare* 20739 at 54-64 (Florida) *with id.* at 64-69 (Virginia).

those variations en route to denying Moving Defendants' motion to decertify the class, notwithstanding it having been urged to do so. *See, e.g.*, Rec. Doc. 20624-3 at 18-24. The Court noted the issue, but declined to address it. Rec. Doc. 20740 at 10. Whatever desire the Court may have to move this MDL along expeditiously, the state-specific differences that govern the claims of different plaintiffs must be accounted for. The MDL already has more than enough procedural complexities. And this case will become even messier if the Court's class certification determination is invalidated, which *Bristol-Myers* makes clear it will have to be. No one—not Moving Defendants, Taishan, the Court, or the Plaintiffs—stands to benefit from being sent back to square one several years from now. Critical to avoiding that outcome is engaging in a class certification determination that adheres to settled Supreme Court precedent.

*Bristol-Myers* dictates that, absent general jurisdiction, "plaintiffs who are injured in different States by a defendant's nationwide course of conduct [cannot] sue that defendant in a single, consolidated action." 137 S. Ct. at 1784. While Moving Defendants continue to believe the class suffers from numerous other infirmities, the Supreme Court's recent opinion in *Bristol-Myers*, makes clear that this state-undifferentiated class certification determination cannot stand. Before proceeding any further, this Court should decertify the class as presently defined.

## IV.    CONCLUSION

For the foregoing reasons, the Court should dismiss the out-of-state plaintiffs from each of the respective complaints, dismiss BNBM from the Florida and Virginia actions (where the claims are predicated on an agency relationship), and decertify the class as currently constituted.

Respectfully submitted,

*/s/ L. Christopher Vejnoska*

| | |
|---|---|
| L. Christopher Vejnoska (CA Bar No. 96082)<br>ORRICK, HERRINGTON & SUTCLIFFE LLP<br>The Orrick Building<br>405 Howard Street<br>San Francisco, CA  94105<br>Tel:  415-773-5700<br>Email:   cvejnoska@orrick.com | Ewell E. Eagan, Jr. (LA Bar No. 5239)<br>Donna Phillips Currault (LA Bar No. 19533)<br>GORDON, ARATA, MONTGOMERY, BARNETT, MCCOLLAM, DUPLANTIS & EAGAN, LLC<br>201 St. Charles Avenue, 40th Floor<br>New Orleans, LA 70170-4000<br>Tel: (504) 582-1111<br>Email: eeagan@ @gamb.law<br>           dcurrault@ @gamb.law |
| James L. Stengel (NY Bar No. 1800556)<br>Xiang Wang (NY Bar No. 4311114)<br>ORRICK, HERRINGTON & SUTCLIFFE LLP<br>51 West 52nd Street<br>New York, NY, 10019<br>Tel:   212-506-5000<br>Email:  jstengel@orrick.com<br>            xiangwang@orrick.com | Eric A. Shumsky (D.C. Bar No. 477926)<br>ORRICK, HERRINGTON & SUTCLIFFE LLP<br>Columbia Center<br>1152 15th Street NW<br>Washington, D.C. 20005<br>Tel: 202-339-8400<br>Email: eshumsky@orrick.com |

*Counsel for CNBM Co. Ltd., BNBM (Group) Co. Ltd., and BNBM PLC*

Harry Rosenberg
LA Bar No. 11465
Phelps Dunbar LLP
365 Canal St., Suite 2000
New Orleans, LA  70130
Phone:  (504) 566-1311
Fax:  (504) 568-9130
Harry.Rosenberg@Phelps.com

*Counsel for BNBM (Group) Co. Ltd. and BNBM PLC*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Defendants' Motion for Leave to File Sur-Reply has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail and upon all parties by electronically uploading the same to File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on August 1, 2017.

*/s/ L. Christopher Vejnoska*
L. Christopher Vejnoska (CA Bar No. 96082)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105
Tel:  415-773-5700
Fax: 415-773-5759
Email:  cvejnoska@orrick.com

*Counsel for CNBM Co. Ltd., BNBM (Group) Co. Ltd., and BNBM PLC*