# EXHIBIT "A"

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

In re:   **CHINESE DRYWALL LITIGATION**                **MDL No. 2047**

## RULE 7.1(a) NOTICE OF POTENTIAL TAG-ALONG ACTIONS

Pursuant to Rule 7.1(a) of the Rules of Civil Procedure of the Judicial Panel on Multi-District Litigation (hereinafter "Panel"), the Plaintiffs' Steering Committee in MDL No. 2047 (hereinafter "plaintiffs") hereby give notice of the following related tag-along actions that plaintiffs have become aware of since the Transfer Order pursuant to 28 U.S.C. §1407:

| | |
|---|---|
| Randy Bayne, et al., v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al. USDC Northern District of Alabama 4:17-cv-01286-KOB | David and Melody Bright, et al., v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al. USDC Eastern District of North Carolina 2:17-cv-00035-FL |
| Jeremy Macon, et al., v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al. USDC Northern District of Alabama 1:17-cv-01287-VEH | Harry DeOliveira v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al. USDC District of South Carolina 4:17-cv-02019-MDL |
| Kelly Bentz, et al., v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al. USDC Northern District of Georgia 1:17-cv-02892-AT | James and Deloris Redden, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al. USDC Western District of Tennessee 1:17-cv-01146 |
| Debra Peoples, et al., v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al. USDC Northern District of Georgia 1:17-cv-02890-TWT | Andy Mertlitz v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al. USDC Eastern District of Texas 5:17-cv-00140 |
| Donna Polk, et al., v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al. USDC Southern District of Mississippi 1:17cv216H50-JCG | Kenneth D. Lochhead and Maria L. Webste, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al. USDC Southern District of Texas 7:17-cv-00294 |
| Lela and Melinda Allen v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al. USDC Southern District of Mississippi 1:17-cv-217LG-RHW | |

The applicable complaints and dockets for the actions in the United States District Court for the Northern District of Alabama; United States District Court for the Northern District of

Georgia; United States District Court for the Southern District of Mississippi; United States District Court for the Eastern District of North Carolina; United States District Court for the District of South Carolina; United States District Court for the Western District of Tennessee; United States District Court for the Eastern District of Texas and United States District Court for the Southern District of Texas are attached hereto as Exhibits "A," and "B," respectively.

Date:   August 2, 2017                                 Respectfully submitted,

| | |
|---|---|
| Russ M. Herman, Esquire | /s/ Arnold Levin |
| Leonard A. Davis, Esquire | Arnold Levin, Esquire |
| **HERMAN, HERMAN & KATZ, LLP** | Fred S. Longer, Esquire |
| 820 O'Keefe Avenue | Matthew C. Gaughan |
| New Orleans, LA 70113 | **LEVIN SEDRAN & BERMAN** |
| Telephone: (504) 581-4892 | 510 Walnut Street, Suite 500 |
| Telecopier: (504) 561-6024 | Philadelphia, PA 19106 |
| | Telephone:   15-592-1500 |
| | Telecopier:   215-592-4663 |
| *Liaison Counsel in MDL 2047* | *Lead Counsel in MDL 2047* |

| | |
|---|---|
| James R. Reeves, Jr., Esquire | Andrea S. Hirsch, Esquire |
| Reeves & Mestayer, PLLC | Herman Gerel, LLP |
| 160 Main Street | 60 Lenox Pointe |
| Biloxi, MS   39530 | Atlanta, GA   30324 |
| Telephone:   (228) 374-5151 | Telephone:   (404) 880-9500 |
| Telecopier:   (228) 374-6630 | Telecopier:   (770) 450-9236 |
| | |
| *Counsel in Case No. 4:17-cv-01286* | *Counsel in Case No. 1:17-cv-02890* |
| *Counsel in Case No. 1:17-cv-01287* | *Counsel in Case No. 1:17-cv-02892* |
| *Counsel in Case No. 1:17-cv-216H50* | |
| *Counsel in Case No. 1:17-cv-217LG* | |
| | Kenneth M. Suggs, Esquire |
| J. Michael Malone, Esquire | Gerald D. Jowers, Esquire |
| Hendren, Redwine & Malone, PLLC | Janet, Jenner & Suggs, LLC |
| 4600 Marriott Drive, Suite 150 | 500 Taylor Street, Suite 301 |
| Raleigh, NC   27612 | Columbia, SC 29201 |
| Telephone:   (919) 420-7867 | Telephone:   (803) 726-0050 |
| Telecopier:   (919) 420-0475 | Telecopier:   (803) 727-1059 |
| | |
| *Counsel in Case No. 2:17-cv-00035* | *Counsel in Case No. 4:17-cv-02019* |

2

William G. Colvin, Esquire
William Given Colvin, PLLC
801 Broad Street, Suite 428
Chattanooga, TN   37402
Telephone:   (423) 625-8804
Telecopier:   (423) 267-5915

*Counsel in Case No. 1:17-cv-01146*

Bruce William Steckler, Esquire
Steckler Gresham Cochran
12720 Hillcrest Road, Suite 1045
Dallas, TX   75230
Telephone:   (972) 387-4040
Telecopier:   (972) 387-4041

*Counsel in Case No. 5:17-cv-00140*
*Counsel in Case No. 7:17-cv-00294*

.

**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**
**MDL 2047 IN RE CHINESE DRYWALL LITIGATION**

**SCHEDULE OF ACTIONS**

| Tab | Case Caption | Court | Civil Action Number | Judge |
|-----|-------------|-------|---------------------|-------|
| **1.** | **Plaintiffs:**<br>Randy Bayne, et al. (the names of all plaintiffs are listed on Exhibit "A" to the Complaint)<br><br>**Movant:**<br>Russ Herman, Esquire (Plaintiffs' Liaison Counsel)<br>Arnold Levin, Esquire (Plaintiffs' Lead Counsel)<br><br>**Defendants:**<br>Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd.; Tai'an Taishan Plasterboard Co., Ltd.; Beijing New Building Materials Public Limited Co.; Beijing New Building Materials (Group) Co., Ltd.; China National Building Material Co., Ltd. | **ND of Alabama** | 4:17-cv-01286-KOB | **Chief Judge Karon O Bowdre** |

| Tab | Case Caption | Court | Civil Action Number | Judge |
|---|---|---|---|---|
| **2.** | **Plaintiffs:**<br>Jeremy Macon, et al. (the names of all plaintiffs are listed on Exhibit "A" to the Complaint)<br><br>**Movant:**<br>Russ Herman, Esquire (Plaintiffs' Liaison Counsel)<br>Arnold Levin, Esquire (Plaintiffs' Lead Counsel)<br><br>**Defendants:**<br>Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd.; Tai'an Taishan Plasterboard Co., Ltd.; Beijing New Building Materials Public Limited Co.; Beijing New Building Materials (Group) Co., Ltd.; China National Building Material Co., Ltd. | **ND of Alabama** | **1:17-cv-01287-VEH** | **Judge Virginia Emerson Hopkins** |

| Tab | Case Caption | Court | Civil Action Number | Judge |
|---|---|---|---|---|
| 3. | **Plaintiffs:**<br>Kelly Bentz, et al. (the names of all plaintiffs are listed on Exhibit "A" to the Complaint)<br><br>**Movant:**<br>Russ Herman, Esquire (Plaintiffs' Liaison Counsel)<br>Arnold Levin, Esquire (Plaintiffs' Lead Counsel)<br><br>**Defendants:**<br>Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd.; Tai'an Taishan Plasterboard Co., Ltd.; Beijing New Building Materials Public Limited Co.; Beijing New Building Materials (Group) Co., Ltd.; China National Building Material Co., Ltd. | **ND of Georgia** | **1:17-cv-02892-AT** | **Judge Amy Totenberg** |

3

| Tab | Case Caption | Court | Civil Action Number | Judge |
|-----|--------------|-------|---------------------|-------|
| 4. | **Plaintiffs:** Debra Peoples, et al. (the names of all plaintiffs are listed on Exhibit "A" to the Complaint) <br><br> **Movant:** Russ Herman, Esquire (Plaintiffs' Liaison Counsel) Arnold Levin, Esquire (Plaintiffs' Lead Counsel) <br><br> **Defendants:** Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd.; Tai'an Taishan Plasterboard Co., Ltd.; Beijing New Building Materials Public Limited Co.; Beijing New Building Materials (Group) Co., Ltd.; China National Building Material Co., Ltd. | **ND of Georgia** | **1:17-cv-02890** | **Judge Thomas W. Thrash, Jr.** |

| Tab | Case Caption | Court | Civil Action Number | Judge |
|---|---|---|---|---|
| 5. | **Plaintiffs:** <br> Donna Polk, et al. (the names of all plaintiffs are listed on Exhibit "A" to the Complaint) <br><br> **Movant:** <br> Russ Herman, Esquire (Plaintiffs' Liaison Counsel) <br> Arnold Levin, Esquire (Plaintiffs' Lead Counsel) <br><br> **Defendants:** <br> Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd.; Tai'an Taishan Plasterboard Co., Ltd.; Beijing New Building Materials Public Limited Co.; Beijing New Building Materials (Group) Co., Ltd.; China National Building Material Co., Ltd. | **SD of Mississippi** | **1:17-cv-216H50-JCG** | **District Judge Halil S. Ozerden** |

5

| Tab | Case Caption | Court | Civil Action Number | Judge |
|---|---|---|---|---|
| **6.** | **Plaintiffs:**<br><br>Lela and Melinda Allen, et al. (the names of all plaintiffs are listed on Exhibit "A" to the Complaint)<br><br>**Movant:**<br>Russ Herman, Esquire (Plaintiffs' Liaison Counsel)<br>Arnold Levin, Esquire (Plaintiffs' Lead Counsel)<br><br>**Defendants:**<br>Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd.; Tai'an Taishan Plasterboard Co., Ltd.; Beijing New Building Materials Public Limited Co.; Beijing New Building Materials (Group) Co., Ltd.; China National Building Material Co., Ltd. | **SD of Mississippi** | **1:17-cv-217LG-RHW** | **Chief District Judge Louis Guirola, Jr.** |

| Tab | Case Caption | Court | Civil Action Number | Judge |
|---|---|---|---|---|
| 7. | **Plaintiffs:**<br><br>David and Melody Bright<br>Larry Bazemore<br>Sidney and Susan Camden<br>John and Margaret Galanda<br>Sylvia and Curtis Hinkley, Jr.<br>Russell and Judi Renner<br>Carter and Barbara Savage<br><br>**Movant:**<br>Russ Herman, Esquire (Plaintiffs' Liaison Counsel)<br>Arnold Levin, Esquire (Plaintiffs' Lead Counsel)<br><br>**Defendants:**<br>Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd.; Tai'an Taishan Plasterboard Co., Ltd.; Beijing New Building Materials Public Limited Co.; Beijing New Building Materials (Group) Co., Ltd.; China National Building Material Co., Ltd. | **ED of North Carolina** | **2:17-cv-00035-FL** | **District Judge Louise Wood Flanagan** |

| Tab | Case Caption | Court | Civil Action Number | Judge |
|---|---|---|---|---|
| 8. | **Plaintiffs:**<br><br>Harry DeOliveira<br><br>**Movant:**<br>Russ Herman, Esquire (Plaintiffs' Liaison Counsel)<br>Arnold Levin, Esquire (Plaintiffs' Lead Counsel)<br><br>**Defendants:**<br>Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd.; Tai'an Taishan Plasterboard Co., Ltd.; Beijing New Building Materials Public Limited Co.; Beijing New Building Materials (Group) Co., Ltd.; China National Building Material Co., Ltd. | **D of South Carolina** | **4:17-cv-02019-MDL** | **"Assigned to: Unassigned – MDL"** |

| Tab | Case Caption | Court | Civil Action Number | Judge |
|---|---|---|---|---|
| 9. | **Plaintiffs:**<br><br>James and Deloris Redden<br>Brian and Beth Watkins<br>Bobby and Darlyne Mullins<br><br>**Movant:**<br>Russ Herman, Esquire (Plaintiffs' Liaison Counsel)<br>Arnold Levin, Esquire (Plaintiffs' Lead Counsel)<br><br>**Defendants:**<br>Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd.; Tai'an Taishan Plasterboard Co., Ltd.; Beijing New Building Materials Public Limited Co.; Beijing New Building Materials (Group) Co., Ltd.; China National Building Material Co., Ltd. | **WD of Tennessee** | **1:17-cv-01146** | **Not assigned as of 8-2-17** |

| Tab | Case Caption | Court | Civil Action Number | Judge |
|-----|-------------|-------|---------------------|-------|
| 10. | **Plaintiffs:**<br><br>Andy Mertlitz<br><br>**Movant:**<br>Russ Herman, Esquire (Plaintiffs' Liaison Counsel)<br>Arnold Levin, Esquire (Plaintiffs' Lead Counsel)<br><br>**Defendants:**<br>Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd.; Tai'an Taishan Plasterboard Co., Ltd.; Beijing New Building Materials Public Limited Co.; Beijing New Building Materials (Group) Co., Ltd.; China National Building Material Co., Ltd. | **ED of Texas** | **5:17-cv-00140** | **Judge Robert W. Schroeder, III.** |

10

| Tab | Case Caption | Court | Civil Action Number | Judge |
|---|---|---|---|---|
| 11. | **Plaintiffs:**<br><br>Kenneth D. Lochhead and Maria L. Webste<br>Marc Norman<br><br>**Movant:**<br>Russ Herman, Esquire (Plaintiffs' Liaison Counsel)<br>Arnold Levin, Esquire (Plaintiffs' Lead Counsel)<br><br>**Defendants:**<br>Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd.; Tai'an Taishan Plasterboard Co., Ltd.; Beijing New Building Materials Public Limited Co.; Beijing New Building Materials (Group) Co., Ltd.; China National Building Material Co., Ltd. | **SD of Texas** | **7:17-cv-00294** | **Not assigned as of 8-2-17** |

Russ M. Herman, Esquire
Leonard A. Davis, Esquire
**HERMAN, HERMAN & KATZ, LLP**
820 O'Keefe Avenue
New Orleans, LA 70113
Telephone: (504) 581-4892
Telecopier: (504) 561-6024


*Liaison Counsel in MDL 2047*

/s/ Arnold Levin
Arnold Levin, Esquire
Fred S. Longer, Esquire
Matthew C. Gaughan
**LEVIN SEDRAN & BERMAN**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone:  15-592-1500
Telecopier:  215-592-4663

*Lead Counsel in MDL 2047*

11

# Exhibit "A"

# Exhibit "1"

FILED
2017 Aug-01  PM 02:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

| | |
|---|---|
| **Randy Bayne, et al., individually, and on behalf of all others similarly situated, [ADDITIONAL PLAINTIFFS LISTED ON EXHIBIT "A" ATTACHED HERETO],** | **CASE NO.:** |
| **Plaintiffs,** | **CLASS ACTION COMPLAINT** |
| **v.** | |
| **Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd.; Tai'an Taishan Plasterboard Co., Ltd.; Beijing New Building Materials Public Limited Co.; Beijing New Building Materials (Group) Co., Ltd.; China National Building Material Co., Ltd.** | **JURY TRIAL DEMAND** |
| **Defendants.** | |

## PLAINTIFFS' OMNIBUS CLASS ACTION COMPLAINT (XXVIII) (ALABAMA BROOKE)

Pursuant to Fed. R. Civ. P. 23, the class representatives in this action bring suit on behalf of themselves and all other similarly situated owners and residents of real property containing defective Chinese manufactured drywall that was designed, manufactured, imported, distributed, delivered, supplied, marketed, inspected, or sold by the Defendants.

Each of the class representatives is pursuing a nationwide class action against the defendants with respect to the drywall located in plaintiffs' homes.   Each of the Defendants in this action, Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd. ("Taishan"); Taian Taishan Plasterboard Co., Ltd. ("TTP"); Beijing New Building Materials Public Limited

Co. ("BNBM"); Beijing New Building Materials (Group) Co., Ltd. ("BNBM Group"); China

National Building Material Co., Ltd. ("CNBM"), are liable for damages incurred by Plaintiffs

due to their role in the design, manufacture, importing, distributing, delivery, supply, marketing,

inspecting, installing, or sale of the defective drywall at issue in this litigation.

## JURISDICTION, PARTIES, AND VENUE

1.      Original jurisdiction of this Court exists by virtue of 28 U.S.C. §1332(d)(2) and

the Class Action Fairness Act ("CAFA").   *See* 28 U.S.C. § 1711, *et. seq.*   The Plaintiffs and

certain of the Defendants in these actions are citizens of different states and the amounts in

controversy in these actions exceed five million dollars ($5,000,000.00), exclusive of interest and

costs.

2.      Venue in this district satisfies the requirements of 28 U.S.C. §1391(b)(1)-(2) and

(c) because Plaintiffs and a significant number of the absent class members reside in this

jurisdiction and a substantial amount of the events and occurrences giving rise to these claims

occurred in this District, or a substantial part of the property that is the subject of this action is

situated in this district.

## PLAINTIFFS

3.      For purposes of clarity, the Plaintiffs are asserting claims on behalf of all owners

and residents of the subject properties, including but not limited to, minors and other residents of

the properties who do not appear herein as named plaintiffs.

4.      The Plaintiffs on this complaint have previously asserted claims against

Defendants in complaints now pending before the Honorable Eldon E. Fallon in consolidated

MDL proceedings in the United States District Court for the Eastern District of Louisiana.   The

instant complaint is being filed as a protective action with respect to the prior filings before the MDL Court.

5.      Unless specifically stated to the contrary on Exhibit "A," all Plaintiffs are citizens of the state where they reside and all entities are citizens of the state where they are organized. For those entities, where the state of organization is not listed, it is asserted upon information and belief that the entity is incorporated and/or organized in the state of its principal place of business.

6.      Each of the plaintiffs are identified on Exhibit "A," which is incorporated herein by reference.   All of the plaintiffs identified on Exhibit "A" own properties located in the state of Alabama.   Counsel for each plaintiff are also identified in Exhibits "A."

## DEFENDANTS

7.      Unless specifically stated to the contrary, all individual defendants are citizens of the state where they do business and all entities are citizens of the state where they are organized. For those entities, where the state of organization is not listed, it is asserted upon information and belief that the entity is incorporated and/or organized in the state of its principal place of business.

8.      Defendant Taishan is a foreign corporation doing business in several States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant, together with its affiliates and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within

3

various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.  Upon information and belief, Defendant has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Defendant manufactured and sold, directly and indirectly, to certain suppliers in the United States.

9.      Defendant TTP is a foreign corporation doing business in several States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant, together with its affiliates and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States.   Defendant manufactured and sold, directly and indirectly, to certain suppliers in the United States.

10.     Defendant TTP is a wholly owned subsidiary of Defendant Taishan.

11.     During the period when Taishan and its subsidiaries were distributing defective drywall to the United States, these entities consistently misrepresented the drywall they were exporting complied with ISO and ASTM quality standards. For instance, Taishan's website

4

boasted that it was exporting large quantities of drywall to the United States and that its drywall

complied with ISO quality standards. The employees of Taishan and its subsidiaries also sent

emails to potential customers boasting about their experience exporting large quantities of

drywall to the United States. These employees also provided false assurances that the drywall

they were exporting complied with ASTM quality standards.

12.  Defendant BNBM is a foreign corporation doing business in several States,

including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi,

North Carolina, South Carolina, Tennessee, Texas, and Virginia. Upon information and belief,

Defendant, together with its affiliates and/or actual or apparent agents, manufactured, sold,

distributed, marketed and placed within the stream of commerce gypsum drywall with the

expectation that the drywall would be purchased by thousands of consumers, if not more, within

various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana,

Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia. Upon information

and belief, Defendant has continuously and systematically distributed and sold drywall to

numerous purchasers in the United States and their drywall is installed in numerous structures in

the United States. Defendant manufactured and sold, directly and indirectly, to certain suppliers

in the United States.

13.  On April 21, 2017, Judge Fallon in MDL 2047 issued an Order and Reasons on

Defendants' motions to dismiss pursuant to Fed.R.Civ.P. 12(b) (hereafter "Rule 12(b) Order").

*See* Rec.Doc.No. 20739. The Rule 12(b) Order correctly determined that:

\*      BNBM is the controlling shareholder of Taishan and that Taishan is an agent and

        alter ego of BNBM.

5

\*      BNBM is controlled by China National Building Materials Group Co. ("CNBM Group").[1]

\*      BNBM has exercised a high degree of control over Taishan's operational management and its day to day operations.

\*      BNBM has had voting control over Taishan's board since 2005.

\*      BNBM controls Taishan's board and management team.

\*      BNBM audits Taishan and requires that Taishan submit weekly reports.

\*      BNBM must approve certain activities by Taishan including the building of factories and all matters concerning drywall production.

\*      BNBM controls Taishan's financial and strategic business decisions.

\*      Taishan must provide BNBM with a stake in all of its subsidiaries.

\*      BNBM and Taishan share officers, directors, and executives.

\*      Taishan and BNBM also share certain property.

\*      BNBM provides Taishan with loan guarantees.

14.      On October 13, 2015, CNBM publicly announced that BNBM will acquire 100% of Taishan's shares. BNBM subsequently acquired 100% of Taishan's shares on October 27, 2016.

15.      BMBM consistently exerted control over Taishan and its subsidiaries when these entities were exporting defective drywall to the United States. For instance, one of BNBM's

---

[1] CNBM Group is not being pursued as a defendant in the instant complaint as CNBM Group has been dismissed as a defendant by Judge Fallon. The order of dismissal is interlocutory and is subject to appeal at a later date.

board members, Tongchun Jia, is the chairman of the board of directors and general manager of

Taishan.   Mr. Tongchun Jia occupies similar positions with most of Taishan's subsidiaries.

Through Mr. Tongchun Jia's positon with Taishan and its subsidiaries, BNBM controls the

actions and operations of these entities.   Even where Tongchun Jia does not formally hold a

position with a Taishan subsidiary, BNBM is able to exert its control over the subsidiary through

Mr. Tongchun Jia's influence.   For instance, the chairman of the board of TTP, Peng Shi Liang,

was also an employee of Taishan.   BNBM was thus able to control TTP since the chairman of

its board reported directly to Tongchun Jia.   Accordingly, since BNBM had direct control over

Taishan and its subsidiaries, it should be held responsible for their sale of defective drywall.

16.     Defendant, BNBM Group is a foreign corporation doing business in several

States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana,

Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information

and belief, Defendant, together with its affiliates, subsidiaries and/or actual or apparent agents,

manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum

drywall with the expectation that the drywall would be purchased by thousands of consumers, if

not more, within various States, including but not limited to, Alabama, California, Florida,

Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and

Virginia.   Upon information and belief, Defendant, together with its affiliates, subsidiaries

and/or actual or apparent agents, have continuously and systematically distributed and sold

drywall to numerous purchasers in the United States and their drywall is installed in numerous

structures in the United States. Defendant, together with its affiliates, subsidiaries and/or actual

or apparent agents, manufactured and sold, directly and indirectly, to certain suppliers in the

7

United States.

17.     Defendant, CNBM is a foreign corporation doing business in several States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant, together with its affiliates, subsidiaries and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant together with its affiliates, subsidiaries and/or actual or apparent agents, has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Defendant, together with its affiliates, subsidiaries and/or actual or apparent agents, manufactured and sold, directly and indirectly, to certain suppliers in the United States.

18.     The Rule 12(b) Order correctly determined that CNBM is the controlling shareholder of BNBM.

19.     To the extent any of the foreign defendants are deemed to be foreign sovereign entities, including but not limited to Taishan, TTP, BNBM, BNBM Group, and CNBM, Plaintiffs bring their claims against these entities pursuant to 28 U.S.C. § 1605(a)(2), the commercial activity exception to the Foreign Sovereign Immunities Act, or alternatively under § 1605(a)(5), the tortious act exception.   Plaintiffs allege that the claims against the foreign defendants are based upon commercial activities carried on in the United States.   The claims

8

also seeks monetary damages against a foreign state for damage to property occurring in the

United States, caused by the tortious acts or omissions of that foreign state, or of any official or

employee of that foreign state while acting within the scope of his office or employment.

## FACTS REGARDING THE DEFENDANTS

20.     Upon information and belief, CNBM Group, together with its affiliates,

subsidiaries and/or actual or apparent agents, manufactured, sold, distributed, marketed and

placed within the stream of commerce gypsum drywall with the expectation that the drywall

would be purchased by thousands of consumers, if not more, within various States, including but

not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina,

South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, CNBM Group,

together with its affiliates, subsidiaries and/or actual or apparent agents, has continuously and

systematically distributed and sold drywall to numerous purchasers in the United States and their

drywall is installed in numerous structures in the United States. CNBM Group, together with its

affiliates, subsidiaries and/or actual or apparent agents, manufactured and sold, directly and

indirectly, to certain suppliers in the United States.

21.     The Rule 12(b) Order correctly determined that:

\*       CNBM Group is the controlling shareholder of CNBM and BNBM Group.

\*       CNBM Group is the controlling shareholder of BNBM and Taishan by virtue of

         its control over CNBM and BNBM Group.

\*       All the Defendants operate as a single-business enterprise that is led by CNBM

         Group.

22.     CNBM Group has exerted high levels of control over its subsidiary entities,

9

including but not limited to CNBM, BNBM, BNBM Group, Taishan, and TTP, by virtue of its

scheme of appointing overlapping officers and directors of subsidiary entities, its use of notices

and management reports sent to subsidiaries, its requirement that its direct subsidiaries manage

investments in subsidiaries pursuant to CNBM Group directives, the implementing of policies

for conducting audits, and its requirement that subsidiaries submit various reports.   Many

CNBM Group officers and directors hold positions with BNBM and Taishan.   The Company

culture of CNBM Group establishes a "Parent-subsidiary" company that is managed and directed

strictly from the top down.   For instance, one of CNBM Group's indirect subsidiary entities,

BNBM, owns the majority of Taishan's shares and has the ability to appoint the majority of

Taishan's board of directors.   CNBM Group controls BNBM by virtue of another CNBM Group

subsidiary, CNBM, which is the parent entity of BNBM.   CNBM Group has exerted day-to-day

control over each of its subsidiary entities and has used its influence to direct specific activities

and to appoint officers and directors that are beholden to CNBM Group.   Upon information and

belief, this influence was exerted with respect to permitting Taishan and BNBM to market,

export, and distribute drywall to the United States and the decision for Taishan to not appear at

Judgment Debtor proceedings before Judge Fallon in New Orleans.

23.     For instance, at the outset of the MDL 2047, CNBM Group in conjunction with its

controlled subsidiaries, Taishan and BNBM, discussed and then implemented a deliberate

strategy whereby Defendants would not respond to the litigation and would allow default

judgments to be entered against them.   Defendants have also shared lawyers and law firms.

When Taishan finally responded to this litigation, it did so for the limited purpose of contesting

personal jurisdiction.   When Taishan was unsuccessful in obtaining dismissal on these grounds

10

and lost its appeal to the Fifth Circuit Court of Appeals, it withdrew from the litigation with the approval of its parent entities and was subsequently held in civil and criminal contempt on July 17, 2014.   Following the issuance of this contempt order, CNBM Group directed its subsidiaries to cease depositing funds in New York banks.

## FACTS REGARDING DEFECTIVE DRYWALL

24.     Defendants' drywall is predominately composed of gypsum.

25.     In "defective drywall" (such as that designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed, and/or sold by Defendants herein), sulfur compounds exit the drywall.

26.     The sulfur compounds, including Hydrogen Sulfide, Carbonyl Sulfide, and Carbon Disulfide, exit Defendants' drywall and cause rapid sulfidation and damage to personal property (such as the blackening and break down of air conditioning and refrigerator coils, faucets, utensils, electrical wiring, copper, electronic appliances and other metal surfaces and property).   These compounds are not only harmful to personal property but they are also smelly and irritating to humans and pets.

27.     Although the drywall functions according to its intended purpose as a building component, it is unfit for this purpose due to the damaging side effects and/or because its use is so inconvenient that Plaintiffs would not have purchased their homes had the side effects been disclosed by Defendants.

28.     As a direct and proximate result of Defendants' actions and omissions, Plaintiffs' and the Class Members' structures and personal property have been exposed to Defendants' defective drywall and the harmful effects of the sulfur compounds that exit from Defendants'

11

defective drywall.

29.   Defendants tortiously manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed and/or sold the defective drywall, which was unfit for its intended purpose in that the drywall caused rapid sulfidation and damage to personal property in Plaintiffs' and Class Members' homes, residences or structures.

30.   Defendants recklessly, wantonly, and/or negligently manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed and/or sold the defective drywall at issue in this litigation.

31.   Defendants recklessly, wantonly and/or negligently implemented faulty procedures for purposes of formulating, preparing, testing, and otherwise ensuring the quality and/or character of the defective drywall at issue in this litigation.

32.   As a direct and proximate result of Defendants' defective and unfit drywall and the harmful effects of the sulfur compounds that exit these products, Plaintiffs and Class Members have suffered, and continue to suffer economic harm.

33.   As a direct and proximate result of Defendants' defective and unfit drywall and the harmful effects of the sulfur compounds that exit these products, the Plaintiffs and the Class Members have suffered, and continue to suffer damages.   These damages include, but are not limited to, costs of inspection; costs and expenses necessary to remedy, replace and remove the defective drywall and other property that has been impacted; lost value or devaluation of their homes, residences or structures and property as a direct result of damage caused to the property and indirect damage resulting from perceived defects to the property, including stigma damages and loss of use and enjoyment of their home and property.

12

34.   As a direct and proximate result of Defendants' defective drywall and the harmful effects of the sulfur compounds that exit these products, Plaintiffs and the Class Members have a need for injunctive relief in the form of repair and remediation of their home, rescission of contracts, and the ordering of emergency/corrective notice.

## CLASS ACTION ALLEGATIONS

35.   The representative Plaintiffs with claims against the Defendants assert a class pursuant to Rules 23(a), (b)(1), (b)(2), (b)(3) and/or 23(c)(4) of the Federal Rules of Civil Procedure, on behalf of themselves and those similarly situated, against the Defendants. Plaintiffs define their class as follows:

> All owners and residents (past or present) of real property located
> in the United States containing defective Chinese drywall
> manufactured, sold, distributed, and/or supplied by Defendants.

## General Class Allegations and Exclusions from the Class Definitions

36.   The following Persons shall be excluded from the Class: (1) Defendants and their subsidiaries, affiliates, officers and employees; (2) all Persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the judge(s) to whom this case is assigned and any immediate family members thereof.

37.   Upon information and belief, the defective and unreasonably dangerous drywall in Plaintiffs' homes or other structures was installed in at least hundreds of homes, residences, or other structures owned by Plaintiffs and Class Members.  Therefore, the Class is sufficiently numerous such that the joinder of all members of the Class in a single action is impracticable.

38.   There are numerous common questions of law and fact that predominate over any questions affecting only individual members of the Class.  Among these common questions of

law and fact are the following:

    a.    whether Defendants' drywall products are defective and/or unfit for their intended purpose;

    b.    whether Defendants tortuously manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed, and/or sold defective drywall products;

    c.    whether Plaintiffs are entitled to recover compensatory, exemplary, incidental, consequential, and/or other damages as a result of Defendants' unlawful and tortious conduct; and

    d.    whether Plaintiffs are entitled to recover injunctive and/or equitable relief as a result of Defendants' unlawful and tortious conduct.

39.   The legal claims of named Plaintiffs are typical of the legal claims of other Class Members.  Named Plaintiffs have the same legal interests and need for legal remedies as other Class Members.

40.   Named Plaintiffs are adequate representatives of the Class, together with their legal counsel, each will fairly and adequately protect the interests of Class Members.  Named Plaintiffs have no known conflict with the Class and are committed to the vigorous prosecution of this action.

41.   The undersigned counsel are competent counsel experienced in class action litigation, mass torts, and complex litigation involving harmful products.  Counsel will fairly and adequately protect the interests of the Class.

42.   The various claims asserted in this action are certifiable under the provisions of Federal Rules of Civil Procedure 23(b)(1) because prosecuting separate actions by or against individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for

14

the party opposing the Class; or adjudications with respect to individual Class members that, as a practical matter, would be dispositive of the interests of the other Class members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

43. The claims for injunctive relief in this case are certifiable under Fed. R. Civ. P. 23(b)(2). Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief is appropriate respecting the Class as a whole.

44. A class action is superior in this case to other methods of dispute resolution. The Class members have an interest in class adjudication rather than individual adjudication because of their overlapping rights. It is highly desirable to concentrate the resolution of these claims in this single forum because it would be difficult and highly unlikely that the affected Class Members would protect their rights on their own without this class action case. Management of the class will be efficient and far superior to the management of individual lawsuits. Accordingly, Plaintiffs' legal claims are properly certified pursuant to Rule 23(b)(3).

45. The issues particularly common to the Class members' claims, some of which are identified above, are alternatively certifiable pursuant to Fed. R. Civ. P. 23(c)(4), as resolution of these issues would materially advance the litigation, and class resolution of these issues is superior to repeated litigation of these issues in separate trials.

## COUNT I
### NEGLIGENCE
#### (Against All Defendants)

46. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

47. Defendants owed a duty to Plaintiffs and Class Members to exercise reasonable care

15

in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g)
supplying, h) inspecting, i) installing, j) marketing, and/or k) selling this drywall, including a
duty to adequately warn of their failure to do the same.

48.   Defendants knew or should have known that their wrongful acts and omissions
would result in harm and damages in the manner set forth herein.

49.   Defendants breached their duty to exercise reasonable care in the designing,
manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing,
and/or selling this drywall.

50.   Defendants likewise breached their duties to Plaintiffs and Class Members by failing
to warn about the defective nature of the drywall.   Defendants, through the exercise of
reasonable care, knew or should have known the nature of the defective drywall and the adverse
effects that it could have on the property and bodies of Plaintiffs and Class Members.

51.   Defendants breached their duty to exercise reasonable care to timely remove and/or
recall from the market and/or otherwise prevent the continued contact of Plaintiffs and Class
Members with the drywall, upon leaning it had been sold in an unreasonably dangerous
condition.

52.   Given the defect in the Defendants' drywall, Defendants knew or should have
known that their product could, and would, cause harm, and damages to Plaintiffs and Class
Members.

53.   As a direct and proximate result of Defendants' acts and omissions, Plaintiffs and
Class Members were harmed and have incurred damages as described herein.

16

**COUNT II**
**NEGLIGENCE PER SE**
**(Against All Defendants)**

54.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

55.   Defendants owed statutory duties to Plaintiffs and Class Members to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, I) marketing, and/or j) selling this drywall.

56.   Defendants breached their statutory duties to the Plaintiffs and Class Members by failing to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, i) marketing, and/or j) selling this drywall.

57.   Defendants likewise breached their statutory duties, including but not limited to those imposed under the International Building Code ("IBC") and other State and local Building Codes, to Plaintiffs and Class Members by failing to warn about the defective nature of the drywall.   For instance, it is specifically alleged that Defendants furnished the drywall in violation of ASTMC C 1396/C 1396M-069, and its predecessor(s).

58.   Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the property and bodies of Plaintiffs and Class Members.

59.   Given the defective nature of Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm, and damages to Plaintiffs and Class Members.

60.   As a direct and proximate result of Defendants' acts and omissions, Plaintiffs and

Class Members were harmed and have incurred damages as described herein.

### COUNT III
### STRICT LIABILITY
### (Against All Defendants)

61.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

62.    At all times relevant hereto, Defendants were in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public.

63.    The drywall, including that installed in the homes of Class Members was placed by Defendants in the stream of commerce.

64.    Defendants knew that the subject drywall would be used without inspection by consumers.

65.    Defendants intended that the drywall reach the ultimate consumers, such as Class Members, and it indeed reached Class Members when it was installed in their homes.

66.    When installed in Class Members' homes, the drywall was in substantially the same condition as it was in when Defendants manufactured, sold, and/or delivered it.

67.    At all times relevant hereto the subject drywall was used in a manner consistent with the uses intended by, or known to Defendants, and in accordance with the Defendants' directions and instructions.

68.    The subject drywall was not misused or altered by any third parties.

69.    The Defendants' drywall was improperly manufactured, designed, inspected, tested, marketed, distributed, and sold.

70.    The design impropriety was in designing drywall that allows high levels of sulfur compounds to exit the drywall.

18

71.     The manufacturing impropriety was in improperly selecting, testing, inspecting, mining, making, assembling, and using, gypsum for drywall with levels of sulfur compounds that were too high and allow high levels of sulfur compounds to exit the drywall.

72.     The drywall was also defective because it was improperly exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold in a unacceptable condition, as described above.

73.     The Defendants' negligence in manufacturing, designing, inspecting, testing, marketing, distributing, and selling of the drywall rendered it unsafe and unreasonably dangerous for its intended use and to Class Members.

74.     The drywall is also defective and unreasonably dangerous because Defendants failed to adequately warn and instruct Class Members of their negligent design, inspection, testing, manufacturing, marketing, and selling of the drywall.

75.     Class Members were unaware of the unreasonably dangerous propensities and defective condition of the drywall, nor could Class Members, acting as reasonably prudent people discover that Defendants' drywall was defective, as set forth herein, or perceive its danger.

76.     Defendants' defective drywall was much more dangerous and harmful than expected by the average consumer and by Class Members.

77.     Defendants' defective drywall benefit to Class Members, if any, was greatly outweighed by the risk of harm and danger to them.

78.     The harmful and dangerous propensities of the drywall, as well as Defendants' failure to adequately warn Class Members of these propensities rendered the drywall

19

unreasonably dangerous and was the direct and proximate cause of damages to Class Members.

<u>COUNT IV</u>
**BREACH OF EXPRESS AND/OR IMPLIED WARRANTIES**
**(Against All Defendants)**

79.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

80.     Defendants and/or their agents were in privity with Plaintiffs and Class Members and/or Plaintiffs and Class Members were foreseeable third party beneficiaries of any warranty.

81.     At the times Defendants utilized, supplied, inspected, and/or sold their drywall for use in structures owned by Plaintiffs and Class Members, Defendants knew, or it was reasonably foreseeable, that the drywall would be installed in structures owned by Plaintiffs and Class Members for use as a building material, and expressly or impliedly warranted the product to be fit for that use.

82.     Defendants placed their drywall products into the stream of commerce in a defective condition and these products were expected to, and did, reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

83.     Although the drywall functions according to its intended purpose as a building component, it is unfit, defective as alleged in Paragraph 27 and not merchantable for this purpose due to the damaging side effects and/or because its use is so inconvenient that Plaintiffs would not have purchased their homes had the side effects been disclosed by Defendants.

84.     The Defendants breached their warranty because the drywall was not fit and safe for the particular purposes for which the goods were required (to be installed in structures owned by Plaintiffs and Class Members as a building material) due to the problems set forth herein.

20

85.     Defendants had reasonable and adequate notice of the Plaintiffs' and the Class

Members' claims for breach of warranty and failed to cure.

86.     As a direct and proximate result of Defendants' breach of warranties, Plaintiffs

and Class Members have incurred harm and damages as described herein.

**COUNT V**
**REDHIBITION**
**(By Louisiana Class Members Against All Defendants)**

87.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

88.     The drywall manufactured, distributed and/or sold by Defendants was not

reasonably fit for its ordinary and intended purpose as alleged in Paragraph 27 above.

89.     Defendants are therefore liable to Louisiana Plaintiffs for all damages reasonable

in the premises, in accordance with La. Civ. Code art. 2524.

90.     In addition, or in the alternative, the drywall manufactured, distributed and/or sold

by Defendants contained redhibitory defects, in that, at the time of delivery, the propensity to

allow sulfur compounds to exit the drywall renders the drywall so useless and/or inconvenient

that it must be presumed that Plaintiffs would not have purchased the drywall had they known of

the redhibitory defect or defects.

91.     In the alternative, the defects are redhibitory defects in that, while not rendering

the drywall totally useless, diminish the drywall's use and/or value to such an extent that it must

be presumed that the buyer would have bought it, but for a lesser price.

92.     The Defendants are conclusively presumed to know of the defects in the drywall.

93.     In addition, it is believed and alleged that All Defendants knew of the defects in

the drywall at the time the drywall was delivered and/or sold.

94.     Defendants have had numerous opportunities to repair and/or replace the drywall and associated fixtures and/or building components and have failed to do so; in addition, and/or in the alternative, such requests have been, would have been and/or would be futile; Defendants, in addition, or alternatively, had actual knowledge of the problems in the drywall and the need for replacement, remediation and/or repair.

95.     Defendants are therefore liable to all Louisiana Plaintiffs for a return of the purchase price, (with interest from the time it was paid), reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the drywall and associated items, for damages, and for reasonable attorneys' fees, in accordance with La. Civ. Code art. 2545.

### COUNT VI
### LOUISIANA PRODUCTS LIABILITY ACT
#### (By Louisiana Class Members Against All Defendants)

96.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

97.     In addition to any and all damages, attorneys fees and other remedies made available to Louisiana Plaintiffs under the warranty of fitness and/or warranty against redhibitory defects, the Defendants are liable to Louisiana Plaintiffs under the Louisiana Products Liability Act, ("LPLA"), La. R.S. 9:2800.51, *et seq.*

98.     Defendants, upon information and belief, expressly warranted that "the gypsumboards manufactured and sold ... are guaranteed to be free from defects in materials and workmanship."

99.     The Defendants expressly warranted that "the gypsumboards were manufactured in accordance to ASTM C36."

22

100.   The drywall at issue is, in all cases, unreasonably dangerous by virtue of the unreasonable emission of sulfur compounds which do not in any way contribute to or enhance the utility of the drywall, yet pose a risk to the wiring, plumbing, appliances, personal property, overall economic value of the property and financial security of the owner, and/or the health of the residents of the property.

101.   At all times pertinent and material hereto, there existed alternative feasible manufacturing processes and/or designs of drywall which perform all of the functions and utility of traditional drywall, without allowing unreasonable levels of sulfur compounds to exit the drywall.

102.   At all times pertinent and material hereto, Defendants knew that their drywall was unreasonably dangerous and/or defective as set forth herein.

103.   In the alternative, Defendants should have, at all times pertinent and material hereto, known of the unreasonably dangerous and/or defective characteristics and/or conditions, had they reasonably employed then-existing scientific and/or technical knowledge, reasonable testing, and/or other reasonable and then-accepted methods of quality assurance and/or quality control.

104.   Defendants' drywall is unreasonably dangerous in composition or construction in that, at the time it left Defendant's control, it deviated in a material way from Defendant's own specifications or performance standards.

105.   In addition, and in the alternative, Defendants' drywall is unreasonably dangerous in design, in that, at the time the drywall left Defendant's control, there existed an alternative design for the product that was capable of preventing Plaintiffs' damage, and the likelihood of

23

causing the plaintiffs' damage and the gravity of that harm outweighed the burden (if any) on the Defendant in adopting such alternative design and the adverse effect (if any) on the utility of the drywall.

106.   In addition, and in the alternative, Defendants' drywall is unreasonably dangerous in that it fails to conform to an express warranty about the product which induced the use of the product and caused damage to Plaintiffs to the extent that the warranty was untrue.

107.   In addition, and in the alternative, Defendants' drywall is unreasonably dangerous due to an inadequate warning, in that, at the time the drywall left Defendant's control, the drywall possessed a characteristic that might cause damage and yet Defendant failed to use reasonable care to provide an adequate warning of such characteristics and/or dangers to users and/or handlers of the drywall.

108.   Defendants are therefore liable to Louisiana Plaintiffs for all damages reasonable in the premises.

## COUNT VII
### PRIVATE NUISANCE
#### (All Defendants)

109.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

110.   The Defendants' tortious or wrongful acts or omissions have caused sulfur compounds and/or other chemical leaching into structures owned by Plaintiffs and Class Members which has unreasonably interfered, and continues to interfere, with the Plaintiffs' and Class Members' use and enjoyment of their properties and caused them harm and damage as discussed herein.

24

111.   Defendants' interference has impaired the rights of Plaintiffs' and Class Members' health, comfort, safety, free use of their property, and/or peaceful enjoyment of their property.

112.   Defendants' invasions were intentional and unreasonable, and/or unintentional but otherwise negligent or reckless.

113.   The interference with Plaintiffs' and Class Members' use of their property caused by Defendants is substantial and is ongoing.

114.   Defendants' private nuisance was the direct, proximate, and foreseeable cause of Plaintiffs' and Class Members' damages, harm, and loss, which they suffered and will continue to suffer.

115.   As a direct and proximate result of Defendants' creation of a private nuisance, Plaintiffs and Class Members have incurred harm and damages as described herein.

### COUNT VIII
### UNJUST ENRICHMENT
### (Against All Defendants)

116.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

117.   Defendants received money as a result of Plaintiffs' and Class Members' purchases of Defendants' defective drywall, or purchases of structures containing this drywall, either directly or through an agent, and Defendants wrongfully accepted and retained these benefits to the detriment of Plaintiffs and Class Members.

118.   Defendants' acceptance and retention of these benefits under the circumstances make it inequitable and unjust for Defendants to retain the benefit without payment of the value to the Plaintiffs and the Class Members.

119.   Defendants, by the deliberate and tortious conduct complained of herein, have been unjustly enriched in a manner which warrants restitution.

## COUNT IX
## VIOLATION OF CONSUMER PROTECTION ACTS
### (Against All Defendants)

120.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

121.   This is an action for relief under the various Consumer Protection Acts of the jurisdictions in which affected properties are present, including but not limited to, L.SA-R.S. 51:1401, *et seq.* (Louisiana Unfair Trade Practices and Consumer Protection Law); Ala. Code 1975 § 8-19-1, *et seq.* (Alabama Deceptive Trade Practices Act); G.S. § 75-1.1, *et seq.* (North Carolina Consumer Protection Act); F.S. § 501.201, *et seq.* (Florida Deceptive and Unfair Trade Practices Act); Va. Code. Ann. § 59.1-196, *et seq.* (Virginia Consumer Protection Act); Tex. Bus. Com. Code Ann. § 17.41, *et seq.* (Texas Deceptive Trade Practices-Consumer Protection Act); Miss. Code Ann. § 75-24-1, *et seq.* (Mississippi Consumer Protection Act); GA ST § 10-1-393, *et seq.* (Georgia Consumer Protection Act);   SC ST § 39-5-20, *et seq.* (South Carolina Consumer Protection Act); Tenn. Code Ann. § 47-18-104, et seq. (Tennessee Consumer Protection Act).

122.   The Defendants' acts and omissions as well as their failure to use reasonable care in this matter as alleged in this complaint, including but not limited to, the knowing misrepresentation or failure to disclose the source, affiliation, origin, characteristics, ingredients, standards and quality of defective drywall constitute violation of the provisions of the Consumer Protection Acts of the Relevant States.

123.   Plaintiffs and Class Members have suffered actual damages as a result of Defendants' violation of these Consumer Protection Acts and are entitled to relief.

124.   As a direct and proximate result of Defendants' violations of the Consumer Protection Acts of the Relevant States, Plaintiffs and Class Members have incurred harm and damages as described herein.

## COUNT X
### EQUITABLE AND INJUNCTIVE RELIEF
### (Against All Defendants)

125.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

126.   Plaintiffs and the Class Members are without adequate remedy at law, rendering injunctive and other equitable relief appropriate.

127.   Plaintiffs and the Class Members will suffer irreparable harm if the Court does not render the injunctive relief set forth herein, and if defendants are not ordered to recall, buy back, rescind, and/or repair the structures owned by Plaintiffs and Class Members.

128.   Plaintiffs, on behalf of themselves and all others similarly situated, demand injunctive and equitable relief and further, that defendants be ordered to: (1) remediate, repair and/or replace the drywall in Class Members' homes or other structures upon proof by the defendants of the feasibility of such remedy or repair; (2) cease and desist from misrepresenting to the Class and the general public that the drywall is not defective and/or unreasonably dangerous as alleged herein; and (3) institute, at their own cost, a public awareness campaign to alert the Class and general public of the harm and dangers associated with the drywall.

27

### DEMAND FOR JURY TRIAL

Plaintiffs, individually and on behalf of the Class Members, hereby demand a trial by jury as to all issues so triable as a matter of right.

### PRAYER FOR RELIEF

WHEREFORE Plaintiffs, on behalf of themselves and all others similarly situated demand upon Defendants jointly and severally for:

    a.    an order certifying the case as a class action;

    b.    an order certifying the Class;

    c.    an order appointing Plaintiffs as the Class Representatives of the Class;

    d.    an order appointing undersigned counsel and their firms as counsel for the Class;

    e.    compensatory and statutory damages;

    f.    punitive damages as allowed by law;

    g.    pre and post-judgment interest as allowed by law;

    h.    injunctive relief;

    I.    an award of attorneys' fees as allowed by law;

    j.    an award of taxable costs; and

    k.    any and all such further relief as this Court deems just and proper.

Respectfully submitted,

Dated:

By: _____

James R. Reeves, Jr.
Alabama Bar ID#3467E49J
Reeves & Mestayer, PLLC
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@rmlawcall.com

*Attorneys for Plaintiffs*

## COURT APPOINTED PLAINTIFFS' LIASON AND LEAD COUNSEL IN MDL 2047

Russ M. Herman
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
rherman@hhklawfirm.com

*Plaintiffs' Liaison Counsel MDL 2047*

Arnold Levin
Levin Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
alevin@lfsblaw.com

*Plaintiffs' Lead Counsel MDL 2047*

## COURT APPOINTED PLAINTIFFS' STEERING
## COMMITTEE IN MDL 2047 - OF COUNSEL TO PLAINTIFFS

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Robert Becnel
Becnel Law Firm, LLC
425 W. Airline Highway, Suite B
Laplace, LA 70068
Phone: (985) 536-1186
Fax: (985) 536-6445
rbecnel@becnellaw.com

29

Peter Prieto
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
pprieto@podhurst.com

Patrick Montoya
Colson, Hicks, Eidson
255 Alhambra Circle, Penthouse
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
patrick@colson.com

Hugh P. Lambert
The Lambert Firm
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@thelambertfirm.com

James Robert Reeves
Reeves & Mestayer, PLLC
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@attorneys4people.com

Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5002
dan@wbmllp.com

Bruce William Steckler
Steckler Gresham Cochran
12720 Hillcrest Road, Ste 1045
Dallas, TX 75230
Phone: (972) 387-4040
Fax: (972) 387-4041
bruce@stecklerlaw.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Christopher Seeger
Seeger Weiss, LLP
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Richard J. Serpe
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com

30

Victor M. Diaz, Jr.
V.M. Diaz and Partners, LLC
119 Washington Ave, Suite 402
Miami Beach, FL 33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

## OF COUNSEL TO COURT APPOINTED PLAINTIFFS' STEERING COMMITTEE IN MDL 2047 - OF COUNSEL TO PLAINTIFFS

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W, Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax:   (202) 540-7201
rlewis@hausfeldllp.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Anthony D. Irpino
IRPINO AVIN HAWKINS LAW FIRM
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

## COUNSEL FOR INDIVIDUAL PLAINTIFFS ARE SET FORTH ON EXHIBIT "A"

31

FILED
2017 Aug-01 PM 02:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

*Randy Bayne, et al., individually and on behalf of all others similarly situated v. Taishan Gypsum co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*

**Exhibit "A" — Plaintiffs Named in Plaintiffs' Omnibus Class Action Complaint Omni XXVIII (Alabama Brooke)**

| Client | Drywall Property Street Address | City | State | Zip | Attorney | Firm | Street Address | City | State | Zip | Phone |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Walker, James B. | 11948 Arlington Boulevard | Spanish Fort | AL | 36527 | Jonathon R. Law | Daniell, Upton & Perry | 30421 Highway 181 | Daphne | AL | 36527 | (251) 625-0046 |
| Bayne, Randy | 507 Thomas Avenue | Boaz | AL | 35957 | Jimmy Doyle | Doyle Law Firm | 2100 Southbridge Parkway, Suite 50 | Birmingham | AL | 35209 | 205-533-9500 |
| Brown, Lukas and Nicole and Gra King | 174 Grandview Drive | Altoona | AL | 35952 | Jimmy Doyle | Doyle Law Firm | 2100 Southbridge Parkway, Suite 50 | Birmingham | AL | 35209 | 205-533-9500 |
| Curvin, Tyler and Tylor Shay | 2771 County Road 3 | Delta | AL | 36258 | Jimmy Doyle | Doyle Law Firm | 2100 Southbridge Parkway, Suite 50 | Birmingham | AL | 35209 | 205-533-9500 |
| Darnell, Bobby Lynn and Lori Suzanne | 127 Hidden Lakes Drive | Boaz | AL | 35957 | Jimmy Doyle | Doyle Law Firm | 2100 Southbridge Parkway, Suite 50 | Birmingham | AL | 35209 | 205-533-9500 |
| Depree, Angel | 3806 Holland Court | Phenix City | AL | 36867 | Jimmy Doyle | Doyle Law Firm | 2100 Southbridge Parkway, Suite 50 | Birmingham | AL | 35209 | 205-533-9500 |
| Dixon, Stanley and Wendy | 1715 Bristow Cove Road | Boaz | AL | 35956 | Jimmy Doyle | Doyle Law Firm | 2100 Southbridge Parkway, Suite 50 | Birmingham | AL | 35209 | 205-533-9500 |
| Dobbs, Kevin Lane and Ashley Erin Haynes | 102 Camerons Way | Lincoln | AL | 35096 | Jimmy Doyle | Doyle Law Firm | 2100 Southbridge Parkway, Suite 50 | Birmingham | AL | 35209 | 205-533-9500 |
| Gossett, Kathryn and Frank | 91 Cloverdale Road | Atmore | AL | 36502 | Jimmy Doyle | Doyle Law Firm | 2100 Southbridge Parkway, Suite 50 | Birmingham | AL | 35209 | 205-533-9500 |
| Hardin, Ashley | 688 Highway 331 | Columbiana | AL | 35051 | Jimmy Doyle | Doyle Law Firm | 2100 Southbridge Parkway, Suite 50 | Birmingham | AL | 35209 | 205-533-9500 |
| Hopkins, Nancy | 1004 Shelby Forest Trace | Chelsea | AL | 35043 | Jimmy Doyle | Doyle Law Firm | 2100 Southbridge Parkway, Suite 50 | Birmingham | AL | 35209 | 205-533-9500 |
| Kennedy, John o.b.o Abernant Masonic Lodge Number 464, F&AM | 13542 Lodge Road | Vance | AL | 35490 | Jimmy Doyle | Doyle Law Firm | 2100 Southbridge Parkway, Suite 50 | Birmingham | AL | 35209 | 205-533-9500 |
| King, Tracy and Tonya | 238 Billy King Drive | Boaz | AL | 35957 | Jimmy Doyle | Doyle Law Firm | 2100 Southbridge Parkway, Suite 50 | Birmingham | AL | 35209 | 205-533-9500 |
| Lanier, Barbara and Donny | 271 Jack Floyd Street | Boaz | AL | 35956 | Jimmy Doyle | Doyle Law Firm | 2100 Southbridge Parkway, Suite 50 | Birmingham | AL | 35209 | 205-533-9500 |
| Lightsey, Jeffrey P. and Cindy | 393 Deer Crossing Lane | Chelsea | AL | 35043 | Jimmy Doyle | Doyle Law Firm | 2100 Southbridge Parkway, Suite 50 | Birmingham | AL | 35209 | 205-533-9500 |
| Little, Donna | 24968 Steadfast Court | Daphne | AL | 36526 | Jimmy Doyle | Doyle Law Firm | 2100 Southbridge Parkway, Suite 50 | Birmingham | AL | 35209 | 205-533-9500 |
| Little, Gena, Zachariah and Nelson | 717 North Parnell Ave. | Hueytown | AL | 35023 | Jimmy Doyle | Doyle Law Firm | 2100 Southbridge Parkway, Suite 50 | Birmingham | AL | 35209 | 205-533-9500 |
| Little, Zacharia | 4100 Boston Road | Adger | AL | 35006 | Jimmy Doyle | Doyle Law Firm | 2100 Southbridge Parkway, Suite 50 | Birmingham | AL | 35209 | 205-533-9500 |

Randy Boyne, et al., individually and on behalf of all others similarly situated v. Taishan Gypsum co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.

Exhibit "A" — Plaintiffs Named in Plaintiffs' Omnibus Class Action Complaint Omni XXVIII (Alabama Brooke)

| Client | Drywall Property | | | | Attorney | Firm | Street Address | City | State | Zip | Phone |
| | Street Address | City | State | Zip | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| May, Linda | 905 Moonlite Drive | Odenville | AL | 35120 | Jimmy Doyle | Doyle Law Firm | 2100 Southbridge Parkway, Suite 50 | Birmingham | AL | 35209 | 205-533-9500 |
| McConnell, Joanna and Michael | 1239 Railroad Drive | Hayden | AL | 35079 | Jimmy Doyle | Doyle Law Firm | 2100 Southbridge Parkway, Suite 50 | Birmingham | AL | 35209 | 205-533-9500 |
| Meacham, Richard and Jessica | 10319 Route Road | Lillian | AL | 36549 | Jimmy Doyle | Doyle Law Firm | 2100 Southbridge Parkway, Suite 50 | Birmingham | AL | 35209 | 205-533-9500 |
| Midwell, Clarence Van | Lot 33 Green Acres Lane | Trafford | AL | 35172 | Jimmy Doyle | Doyle Law Firm | 2100 Southbridge Parkway, Suite 50 | Birmingham | AL | 35209 | 205-533-9500 |
| Oglesby, Velvarae | 93 Cloverdale Road | Atmore | AL | 36502 | Jimmy Doyle | Doyle Law Firm | 2100 Southbridge Parkway, Suite 50 | Birmingham | AL | 35209 | 205-533-9500 |
| Pannza, Shakuntla and Ramesh | 1543 Highland Gate Point | Hoover | AL | 35244 | Jimmy Doyle | Doyle Law Firm | 2100 Southbridge Parkway, Suite 50 | Birmingham | AL | 35209 | 205-533-9500 |
| Perkins, Monica and Jerry | 160 Turkey Trail Road | Odenville | AL | 35120 | Jimmy Doyle | Doyle Law Firm | 2100 Southbridge Parkway, Suite 50 | Birmingham | AL | 35209 | 205-533-9500 |
| Seeburg, David | 1773 Funderburg Bend Road | Pell City | AL | 35128 | Jimmy Doyle | Doyle Law Firm | 2100 Southbridge Parkway, Suite 50 | Birmingham | AL | 35209 | 205-533-9500 |
| Spain, Megan L. and Gregory C. | 5 Dogwood Circle | Pelham | AL | 35124 | Jimmy Doyle | Doyle Law Firm | 2100 Southbridge Parkway, Suite 50 | Birmingham | AL | 35209 | 205-533-9500 |
| Steele, Timothy and Patricia | 3 Martin Circle | Foley | AL | 36535 | Jimmy Doyle | Doyle Law Firm | 2100 Southbridge Parkway, Suite 50 | Birmingham | AL | 35209 | 205-533-9500 |
| Thomas Bearden, Thomas and Tammy | 951 Junkins Road | Guntersville | AL | 35976 | Jimmy Doyle | Doyle Law Firm | 2100 Southbridge Parkway, Suite 50 | Birmingham | AL | 35209 | 205-533-9500 |
| Tice, Jerri and Rodney | 1971 Buttahatchee Drive | Hamilton | AL | 35570 | Jimmy Doyle | Doyle Law Firm | 2100 Southbridge Parkway, Suite 50 | Birmingham | AL | 35209 | 205-533-9500 |
| Wiest, Teresa and Jerry C. Carroll, Jr. | 3445 Beardens Farm Road | Woodstock | AL | 35188 | Jimmy Doyle | Doyle Law Firm | 2100 Southbridge Parkway, Suite 50 | Birmingham | AL | 35209 | 205-533-9500 |
| Woodruff, David | 1745 East Main Street | Albertville | AL | 35952 | Jimmy Doyle | Doyle Law Firm | 2100 Southbridge Parkway, Ste. 50 | Birmingham | AL | 35209 | 205-533-9500 |
| Burb, Joseph and Paula | 4670 County Road 200 | Danville | AL | 35619 | Booth Samuels | Pittman, Dutton & Hellums, | 2001 Park Place North, Ste. 1100 | Birmingham | AL | 35203 | 205-322-8880 |
| Fincher, Nathan and Meg | 1700 County Road 3949 | Arley | AL | 35541 | Booth Samuels | Pittman, Dutton & Hellums, | 2001 Park Place North, Ste. 1100 | Birmingham | AL | 35203 | 205-322-8880 |
| Wolfe, Lisa and Barry | 62 County Road 3943 | Arley | AL | 35541 | Booth Samuels | Pittman, Dutton & Hellums, | 2001 Park Place North, Ste. 1100 | Birmingham | AL | 35203 | 205-322-8880 |
| Palmer, Ben & Kay | 320 Pine Point | Eclectic | AL | 36024 | Jim Reeves | Reeves & Mestayer | 160 Main Street | Biloxi | MS | 39530 | 228-374-5151 |
| Smith, Daniel & Nicole | 766 Tabernacle Road | Monroeville | AL | 36460 | Jim Reeves | Reeves & Mestayer | 160 Main Street | Biloxi | MS | 39530 | 228-374-5151 |
| Taylor, Travis | 11090 Douglas Road | Grand Bay | AL | 36541 | Jim Reeves | Reeves & Mestayer | 160 Main Street | Biloxi | MS | 39530 | 228-374-5151 |
| Archer, Kent & Lindsey | 10924 Gallant Road | Gallant | AL | 35972 | David Horsley / W. Brian Collins | Arthur Edge, PC / The Collins Law Firm | 2520 Highland Ave S, Ste. 175  1461 Shades Crest Rd | Birmingham / Hoover | AL | 35205 / 35226 | 205-529-4888 / 205-453-0322 |
| Bishop, Robert | 529 57th St. SE | Birmingham | AL | 35212 | David Horsley / W. Brian Collins | Arthur Edge, PC / The Collins Law Firm | 2520 Highland Ave S, Ste. 175  1461 Shades Crest Rd | Birmingham / Hoover | AL | 35205 / 35226 | 205-529-4888 / 205-453-0322 |

*Randy Bayne, et al., individually and on behalf of all others similarly situated v. Taishan Gypsum co., Ltd, f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*

Exhibit "A" – Plaintiffs Named in Plaintiffs' Omnibus Class Action Complaint Omni XXVIII (Alabama Brooke)

| Client | Drywall Property | | | | | | Street Address | City | State | Zip | Phone |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Street Address | City | State | Zip | Attorney | Firm | | | | | |
| Brasher, Robert and April | 48 Pleasant Circle | Colesville | AL | 35120 | David Horsley / W. Brian Collins | Arthur Edge, PC / Collins Law Firm | 2320 Highland Ave S, Ste. 175  1461 Shades Crest Rd | Birmingham / Hoover | AL / AL | 35205 / 35226 | 205-453-0322 / 205-529-4988 |
| Bruce, Patricia | 603 Darden Road | Brent | AL | 35034 | David Horsley / W. Brian Collins | Arthur Edge, PC / Collins Law Firm | 2320 Highland Ave S, Ste. 175  1461 Shades Crest Rd | Birmingham / Hoover | AL / AL | 35205 / 35226 | 205-453-0322 / 205-529-4988 |
| Convay, Patrick and Georgia | 1495 Milner Crescent | Birmingham | AL | 35205 | David Horsley / W. Brian Collins | Arthur Edge, PC / Collins Law Firm | 2320 Highland Ave S, Ste. 175  1461 Shades Crest Rd | Birmingham / Hoover | AL / AL | 35205 / 35226 | 205-453-0322 / 205-529-4988 |
| Cummins, Chris | 13623 Johns Road | Vance | AL | 35490 | David Horsley / W. Brian Collins | Arthur Edge, PC / Collins Law Firm | 2320 Highland Ave S, Ste. 175  1461 Shades Crest Rd | Birmingham / Hoover | AL / AL | 35205 / 35226 | 205-453-0322 / 205-529-4988 |
| Formby, Kenneth and Anita | 3500 McMaury Dr | Pinson | AL | 35126 | David Horsley / W. Brian Collins | Arthur Edge, PC / Collins Law Firm | 2320 Highland Ave S, Ste. 175  1461 Shades Crest Rd | Birmingham / Hoover | AL / AL | 35205 / 35226 | 205-453-0322 / 205-529-4988 |
| Gregeson, John and Charlotte | 201 Robert Lee Drive | Gadsden | AL | 35903 | David Horsley / W. Brian Collins | Arthur Edge, PC / Collins Law Firm | 2320 Highland Ave S, Ste. 175  1461 Shades Crest Rd | Birmingham / Hoover | AL / AL | 35205 / 35226 | 205-453-0322 / 205-529-4988 |
| Johnson, Michael | 351 Co. Road 6 | Heflin | AL | 36264 | David Horsley / W. Brian Collins | Arthur Edge, PC / Collins Law Firm | 2320 Highland Ave S, Ste. 175  1461 Shades Crest Rd | Birmingham / Hoover | AL / AL | 35205 / 35226 | 205-453-0322 / 205-529-4988 |
| Lewis, Felicia | 1635 Dunhill Drive | Birmingham | AL | 35215 | David Horsley / W. Brian Collins | Arthur Edge, PC / Collins Law Firm | 2320 Highland Ave S, Ste. 175  1461 Shades Crest Rd | Birmingham / Hoover | AL / AL | 35205 / 35226 | 205-453-0322 / 205-529-4988 |
| Harvey, Andre | 4020 Crossings Lane | Hoover | AL | 35242 | David Horsley / W. Brian Collins | Arthur Edge, PC / Collins Law Firm | 2320 Highland Ave S, Ste. 175  1461 Shades Crest Rd | Birmingham / Hoover | AL / AL | 35205 / 35226 | 205-453-0322 / 205-529-4988 |
| Reed, Nathaniel and Theresa | 701 60th Street | Fairfield | AL | 35064 | David Horsley / W. Brian Collins | Arthur Edge, PC / Collins Law Firm | 2320 Highland Ave S, Ste. 175  1461 Shades Crest Rd | Birmingham / Hoover | AL / AL | 35205 / 35226 | 205-453-0322 / 205-529-4988 |
| Ryeberg, Don and Kathleen | 467 Magnolia Circle | Warrior | AL | 35180 | David Horsley / W. Brian Collins | Arthur Edge, PC / Collins Law Firm | 2320 Highland Ave S, Ste. 175  1461 Shades Crest Rd | Birmingham / Hoover | AL / AL | 35205 / 35226 | 205-453-0322 / 205-529-4988 |
| Scalco, Robert and Teresa | 99 Hilton Drive | Sylacauga | AL | 35151 | David Horsley / W. Brian Collins | Arthur Edge, PC / Collins Law Firm | 2320 Highland Ave S, Ste. 175  1461 Shades Crest Rd | Birmingham / Hoover | AL / AL | 35205 / 35226 | 205-453-0322 / 205-529-4988 |
| Walker, Barry | 30 Liang Place | Ragland | AL | 35131 | David Horsley / W. Brian Collins | Arthur Edge, PC / Collins Law Firm | 2320 Highland Ave S, Ste. 175  1461 Shades Crest Rd | Birmingham / Hoover | AL / AL | 35205 / 35226 | 205-453-0322 / 205-529-4988 |

# Exhibit "2"

JS 44 (Rev. 06/17)

**CIVIL COVER SHEET**

FILED
2017 Aug-01 AM 11:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Jeremy Macon, et al., Individually and on behalf of all others similarly situated

**(b)** County of Residence of First Listed Plaintiff   Talladega County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

James R. Reeves, Jr., Esquire, Reeves & Mestayer, PLLC, 160 Main Street, Biloxi, MS 39530, Phone: (228) 374-5151

## DEFENDANTS

Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., et al.

County of Residence of First Listed Defendant   Foreign Corporation
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

See Attached

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff

☐ 2  U.S. Government Defendant

☐ 3  Federal Question
*(U.S. Government Not a Party)*

☒ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** — **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane   ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability   ☐ 367 Health Care/ Pharmaceutical Personal Injury | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander   Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability   ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights   ☐ 830 Patent | ☐ 430 Banks and Banking   ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability   **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle   ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability   ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff)   ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury   ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice   ☒ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI   ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 751 Family and Medical Leave Act | | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights   **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting   ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment   ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations   ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment   ☐ 535 Death Penalty   **Other:** | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other   ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education   ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from Another District *(specify)*   ☐ 6 Multidistrict Litigation - Transfer   ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
28 U.S.C. Section 1332(d)(2) and 28 U.S.C. Section 1711, et. seq.
Brief description of cause:
Product liability claims involving Chinese manufactured drywall

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE   Eldon E. Fallon

DOCKET NUMBER   09-MD-2047 (E.D. La.)

DATE
08/01/2017

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #     AMOUNT     APPLYING IFP     JUDGE     MAG. JUDGE

## Defendants' Attorneys

**Attorneys for China National Building Material Co., Ltd., Beijing New Building Materials Public Limited Co. and Beijing New Building Materials Group Co., Ltd.:**

L. Christopher Vejnoska
Orrick, Herrington & Sutcliffe LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105


**Attorneys for Taishan Gypsum Co., Ltd. and Taian Taishan Plasterboard Co., Ltd.:**

Bernard Taylor
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, GA 30309

FILED

2017 Aug-01  AM 11:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

|  |  |
|---|---|
| **Jeremy Macon, et al., individually, and on behalf of all others similarly situated, [ADDITIONAL PLAINTIFFS LISTED ON EXHIBIT "A" ATTACHED HERETO],**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd.; Tai'an Taishan Plasterboard Co., Ltd.; Beijing New Building Materials Public Limited Co.; Beijing New Building Materials (Group) Co., Ltd.; China National Building Material Co., Ltd.**<br><br>**Defendants.** | **CASE NO.:**<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMAND** |

## PLAINTIFFS' OMNIBUS CLASS ACTION COMPLAINT (XXI) (ALABAMA AMORIN DEFAULT)

Pursuant to Fed. R. Civ. P. 23, the class representatives in this action bring suit on behalf of themselves and all other similarly situated owners and residents of real property containing defective Chinese manufactured drywall that was designed, manufactured, imported, distributed, delivered, supplied, marketed, inspected, or sold by the Defendants.

Each of the class representatives is pursuing a nationwide class action against the defendants with respect to the drywall located in plaintiffs' homes.  Each of the Defendants in this action, Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd. ("Taishan"); Taian Taishan Plasterboard Co., Ltd. ("TTP"); Beijing New Building Materials Public Limited

Co. ("BNBM"); Beijing New Building Materials (Group) Co., Ltd. ("BNBM Group"); China

National Building Material Co., Ltd. ("CNBM"), are liable for damages incurred by Plaintiffs

due to their role in the design, manufacture, importing, distributing, delivery, supply, marketing,

inspecting, installing, or sale of the defective drywall at issue in this litigation.

## JURISDICTION, PARTIES, AND VENUE

1.      Original jurisdiction of this Court exists by virtue of 28 U.S.C. §1332(d)(2) and

the Class Action Fairness Act ("CAFA").   *See* 28 U.S.C. § 1711, *et. seq.*   The Plaintiffs and

certain of the Defendants in these actions are citizens of different states and the amounts in

controversy in these actions exceed five million dollars ($5,000,000.00), exclusive of interest and

costs.

2.      Venue in this district satisfies the requirements of 28 U.S.C. §1391(b)(1)-(2) and

(c) because Plaintiffs and a significant number of the absent class members reside in this

jurisdiction and a substantial amount of the events and occurrences giving rise to these claims

occurred in this District, or a substantial part of the property that is the subject of this action is

situated in this district.

## PLAINTIFFS

3.      For purposes of clarity, the Plaintiffs are asserting claims on behalf of all owners

and residents of the subject properties, including but not limited to, minors and other residents of

the properties who do not appear herein as named plaintiffs.

4.      Unless specifically stated to the contrary on Exhibit "A," all Plaintiffs are citizens

of the state where they reside and all entities are citizens of the state where they are organized.

For those entities, where the state of organization is not listed, it is asserted upon information and

2

belief that the entity is incorporated and/or organized in the state of its principal place of business.

5.     Each of the plaintiffs are identified on Exhibit "A," which is incorporated herein by reference.   All of the plaintiffs identified on Exhibit "A" own properties located in the state of Alabama.   Counsel for each plaintiff are also identified in Exhibits "A."

6.     The Plaintiffs on this complaint have previously asserted claims against Defendants in complaints now pending before the Honorable Eldon E. Fallon in consolidated MDL proceedings in the United States District Court for the Eastern District of Louisiana, in which Defendants have been adjudicated in default.   The instant complaint is being filed as a protective action with respect to the prior filings before the MDL Court.

## DEFENDANTS

7.     Unless specifically stated to the contrary, all individual defendants are citizens of the state where they do business and all entities are citizens of the state where they are organized. For those entities, where the state of organization is not listed, it is asserted upon information and belief that the entity is incorporated and/or organized in the state of its principal place of business.

8.     Defendant Taishan is a foreign corporation doing business in several States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant, together with its affiliates and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within

3

various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia. Upon information and belief, Defendant has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Defendant manufactured and sold, directly and indirectly, to certain suppliers in the United States.

9.     Defendant TTP is a foreign corporation doing business in several States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia. Upon information and belief, Defendant, together with its affiliates and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia. Upon information and belief, Defendant has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Defendant manufactured and sold, directly and indirectly, to certain suppliers in the United States.

10.     Defendant TTP is a wholly owned subsidiary of Defendant Taishan.

11.     During the period when Taishan and its subsidiaries were distributing defective drywall to the United States, these entities consistently misrepresented the drywall they were exporting complied with ISO and ASTM quality standards. For instance, Taishan's website

4

boasted that it was exporting large quantities of drywall to the United States and that its drywall

complied with ISO quality standards.  The employees of Taishan and its subsidiaries also sent

emails to potential customers boasting about their experience exporting large quantities of

drywall to the United States.  These employees also provided false assurances that the drywall

they were exporting complied with ASTM quality standards.

12.     Defendant BNBM is a foreign corporation doing business in several States,

including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi,

North Carolina, South Carolina, Tennessee, Texas, and Virginia.  Upon information and belief,

Defendant, together with its affiliates and/or actual or apparent agents, manufactured, sold,

distributed, marketed and placed within the stream of commerce gypsum drywall with the

expectation that the drywall would be purchased by thousands of consumers, if not more, within

various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana,

Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.  Upon information

and belief, Defendant has continuously and systematically distributed and sold drywall to

numerous purchasers in the United States and their drywall is installed in numerous structures in

the United States. Defendant manufactured and sold, directly and indirectly, to certain suppliers

in the United States.

13.     On April 21, 2017, Judge Fallon in MDL 2047 issued an Order and Reasons on

Defendants' motions to dismiss pursuant to Fed.R.Civ.P. 12(b) (hereafter "Rule 12(b) Order").

*See* Rec.Doc.No. 20739.  The Rule 12(b) Order correctly determined that:

*       BNBM is the controlling shareholder of Taishan and that Taishan is an agent and
        alter ego of BNBM.

\*      BNBM is controlled by China National Building Materials Group Co. ("CNBM
        Group").[1]

\*      BNBM has exercised a high degree of control over Taishan's operational
        management and its day to day operations.

\*      BNBM has had voting control over Taishan's board since 2005.

\*      BNBM controls Taishan's board and management team.

\*      BNBM audits Taishan and requires that Taishan submit weekly reports.

\*      BNBM must approve certain activities by Taishan including the building of
        factories and all matters concerning drywall production.

\*      BNBM controls Taishan's financial and strategic business decisions.

\*      Taishan must provide BNBM with a stake in all of its subsidiaries.

\*      BNBM and Taishan share officers, directors, and executives.

\*      Taishan and BNBM also share certain property.

\*      BNBM provides Taishan with loan guarantees.

14.      On October 13, 2015, CNBM publicly announced that BNBM will acquire 100%
of Taishan's shares.   BNBM subsequently acquired 100% of Taishan's shares on October 27,
2016.

15.      BMBM consistently exerted control over Taishan and its subsidiaries when these
entities were exporting defective drywall to the United States.   For instance, one of BNBM's

---

[1] CNBM Group is not being pursued as a defendant in the instant complaint as CNBM
Group has been dismissed as a defendant by Judge Fallon. The order of dismissal is interlocutory
and is subject to appeal at a later date.

6

board members, Tongchun Jia, is the chairman of the board of directors and general manager of

Taishan.   Mr. Tongchun Jia occupies similar positions with most of Taishan's subsidiaries.

Through Mr. Tongchun Jia's positon with Taishan and its subsidiaries, BNBM controls the

actions and operations of these entities.   Even where Tongchun Jia does not formally hold a

position with a Taishan subsidiary, BNBM is able to exert its control over the subsidiary through

Mr. Tongchun Jia's influence.   For instance, the chairman of the board of TTP, Peng Shi Liang,

was also an employee of Taishan.   BNBM was thus able to control TTP since the chairman of

its board reported directly to Tongchun Jia.   Accordingly, since BNBM had direct control over

Taishan and its subsidiaries, it should be held responsible for their sale of defective drywall.

    16.    Defendant, BNBM Group is a foreign corporation doing business in several

States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana,

Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information

and belief, Defendant, together with its affiliates, subsidiaries and/or actual or apparent agents,

manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum

drywall with the expectation that the drywall would be purchased by thousands of consumers, if

not more, within various States, including but not limited to, Alabama, California, Florida,

Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and

Virginia.   Upon information and belief, Defendant, together with its affiliates, subsidiaries

and/or actual or apparent agents, have continuously and systematically distributed and sold

drywall to numerous purchasers in the United States and their drywall is installed in numerous

structures in the United States. Defendant, together with its affiliates, subsidiaries and/or actual

or apparent agents, manufactured and sold, directly and indirectly, to certain suppliers in the

7

United States.

17.     Defendant, CNBM is a foreign corporation doing business in several States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant, together with its affiliates, subsidiaries and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant together with its affiliates, subsidiaries and/or actual or apparent agents, has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Defendant, together with its affiliates, subsidiaries and/or actual or apparent agents, manufactured and sold, directly and indirectly, to certain suppliers in the United States.

18.     The Rule 12(b) Order correctly determined that CNBM is the controlling shareholder of BNBM.

19.     To the extent any of the foreign defendants are deemed to be foreign sovereign entities, including but not limited to Taishan, TTP, BNBM, BNBM Group, and CNBM, Plaintiffs bring their claims against these entities pursuant to 28 U.S.C. § 1605(a)(2), the commercial activity exception to the Foreign Sovereign Immunities Act, or alternatively under § 1605(a)(5), the tortious act exception.   Plaintiffs allege that the claims against the foreign defendants are based upon commercial activities carried on in the United States.   The claims

8

also seeks monetary damages against a foreign state for damage to property occurring in the United States, caused by the tortious acts or omissions of that foreign state, or of any official or employee of that foreign state while acting within the scope of his office or employment.

## FACTS REGARDING THE DEFENDANTS

20.     Upon information and belief, CNBM Group, together with its affiliates, subsidiaries and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, CNBM Group, together with its affiliates, subsidiaries and/or actual or apparent agents, has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. CNBM Group, together with its affiliates, subsidiaries and/or actual or apparent agents, manufactured and sold, directly and indirectly, to certain suppliers in the United States.

21.     The Rule 12(b) Order correctly determined that:

*       CNBM Group is the controlling shareholder of CNBM and BNBM Group.

*       CNBM Group is the controlling shareholder of BNBM and Taishan by virtue of its control over CNBM and BNBM Group.

*       All the Defendants operate as a single-business enterprise that is led by CNBM Group.

22.     CNBM Group has exerted high levels of control over its subsidiary entities,

9

including but not limited to CNBM, BNBM, BNBM Group, Taishan, and TTP, by virtue of its

scheme of appointing overlapping officers and directors of subsidiary entities, its use of notices

and management reports sent to subsidiaries, its requirement that its direct subsidiaries manage

investments in subsidiaries pursuant to CNBM Group directives, the implementing of policies

for conducting audits, and its requirement that subsidiaries submit various reports.   Many

CNBM Group officers and directors hold positions with BNBM and Taishan.   The Company

culture of CNBM Group establishes a "Parent-subsidiary" company that is managed and directed

strictly from the top down.   For instance, one of CNBM Group's indirect subsidiary entities,

BNBM, owns the majority of Taishan's shares and has the ability to appoint the majority of

Taishan's board of directors.   CNBM Group controls BNBM by virtue of another CNBM Group

subsidiary, CNBM, which is the parent entity of BNBM.   CNBM Group has exerted day-to-day

control over each of its subsidiary entities and has used its influence to direct specific activities

and to appoint officers and directors that are beholden to CNBM Group.   Upon information and

belief, this influence was exerted with respect to permitting Taishan and BNBM to market,

export, and distribute drywall to the United States and the decision for Taishan to not appear at

Judgment Debtor proceedings before Judge Fallon in New Orleans.

23.     For instance, at the outset of the MDL 2047, CNBM Group in conjunction with its

controlled subsidiaries, Taishan and BNBM, discussed and then implemented a deliberate

strategy whereby Defendants would not respond to the litigation and would allow default

judgments to be entered against them.   Defendants have also shared lawyers and law firms.

When Taishan finally responded to this litigation, it did so for the limited purpose of contesting

personal jurisdiction.   When Taishan was unsuccessful in obtaining dismissal on these grounds

10

and lost its appeal to the Fifth Circuit Court of Appeals, it withdrew from the litigation with the approval of its parent entities and was subsequently held in civil and criminal contempt on July 17, 2014. Following the issuance of this contempt order, CNBM Group directed its subsidiaries to cease depositing funds in New York banks.

## FACTS REGARDING DEFECTIVE DRYWALL

24.    Defendants' drywall is predominately composed of gypsum.

25.    In "defective drywall" (such as that designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed, and/or sold by Defendants herein), sulfur compounds exit the drywall.

26.    The sulfur compounds, including Hydrogen Sulfide, Carbonyl Sulfide, and Carbon Disulfide, exit Defendants' drywall and cause rapid sulfidation and damage to personal property (such as the blackening and break down of air conditioning and refrigerator coils, faucets, utensils, electrical wiring, copper, electronic appliances and other metal surfaces and property). These compounds are not only harmful to personal property but they are also smelly and irritating to humans and pets.

27.    Although the drywall functions according to its intended purpose as a building component, it is unfit for this purpose due to the damaging side effects and/or because its use is so inconvenient that Plaintiffs would not have purchased their homes had the side effects been disclosed by Defendants.

28.    As a direct and proximate result of Defendants' actions and omissions, Plaintiffs' and the Class Members' structures and personal property have been exposed to Defendants' defective drywall and the harmful effects of the sulfur compounds that exit from Defendants'

11

defective drywall.

29.   Defendants tortiously manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed and/or sold the defective drywall, which was unfit for its intended purpose in that the drywall caused rapid sulfidation and damage to personal property in Plaintiffs' and Class Members' homes, residences or structures.

30.   Defendants recklessly, wantonly, and/or negligently manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed and/or sold the defective drywall at issue in this litigation.

31.   Defendants recklessly, wantonly and/or negligently implemented faulty procedures for purposes of formulating, preparing, testing, and otherwise ensuring the quality and/or character of the defective drywall at issue in this litigation.

32.   As a direct and proximate result of Defendants' defective and unfit drywall and the harmful effects of the sulfur compounds that exit these products, Plaintiffs and Class Members have suffered, and continue to suffer economic harm.

33.   As a direct and proximate result of Defendants' defective and unfit drywall and the harmful effects of the sulfur compounds that exit these products, the Plaintiffs and the Class Members have suffered, and continue to suffer damages.   These damages include, but are not limited to, costs of inspection; costs and expenses necessary to remedy, replace and remove the defective drywall and other property that has been impacted; lost value or devaluation of their homes, residences or structures and property as a direct result of damage caused to the property and indirect damage resulting from perceived defects to the property, including stigma damages and loss of use and enjoyment of their home and property.

34.   As a direct and proximate result of Defendants' defective drywall and the harmful

effects of the sulfur compounds that exit these products, Plaintiffs and the Class Members have a

need for injunctive relief in the form of repair and remediation of their home, rescission of

contracts, and the ordering of emergency/corrective notice.

## CLASS ACTION ALLEGATIONS

35.   The representative Plaintiffs with claims against the Defendants assert a class

pursuant to Rules 23(a), (b)(1), (b)(2), (b)(3) and/or 23(c)(4) of the Federal Rules of Civil

Procedure, on behalf of themselves and those similarly situated, against the Defendants.

Plaintiffs define their class as follows:

> All owners and residents (past or present) of real property located
> in the United States containing defective Chinese drywall
> manufactured, sold, distributed, and/or supplied by Defendants.

## General Class Allegations and Exclusions from the Class Definitions

36.   The following Persons shall be excluded from the Class: (1) Defendants and their

subsidiaries, affiliates, officers and employees; (2) all Persons who make a timely election to be

excluded from the proposed Class; (3) governmental entities; and (4) the judge(s) to whom this

case is assigned and any immediate family members thereof.

37.   Upon information and belief, the defective and unreasonably dangerous drywall in

Plaintiffs' homes or other structures was installed in at least hundreds of homes, residences, or

other structures owned by Plaintiffs and Class Members.   Therefore, the Class is sufficiently

numerous such that the joinder of all members of the Class in a single action is impracticable.

38.   There are numerous common questions of law and fact that predominate over any

questions affecting only individual members of the Class.   Among these common questions of

13

law and fact are the following:

      a.     whether Defendants' drywall products are defective and/or unfit for their intended purpose;

      b.     whether Defendants tortuously manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed, and/or sold defective drywall products;

      c.     whether Plaintiffs are entitled to recover compensatory, exemplary, incidental, consequential, and/or other damages as a result of Defendants' unlawful and tortious conduct; and

      d.     whether Plaintiffs are entitled to recover injunctive and/or equitable relief as a result of Defendants' unlawful and tortious conduct.

39.   The legal claims of named Plaintiffs are typical of the legal claims of other Class Members.  Named Plaintiffs have the same legal interests and need for legal remedies as other Class Members.

40.   Named Plaintiffs are adequate representatives of the Class, together with their legal counsel, each will fairly and adequately protect the interests of Class Members.  Named Plaintiffs have no known conflict with the Class and are committed to the vigorous prosecution of this action.

41.   The undersigned counsel are competent counsel experienced in class action litigation, mass torts, and complex litigation involving harmful products.  Counsel will fairly and adequately protect the interests of the Class.

42.   The various claims asserted in this action are certifiable under the provisions of Federal Rules of Civil Procedure 23(b)(1) because prosecuting separate actions by or against individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for

14

the party opposing the Class; or adjudications with respect to individual Class members that, as a practical matter, would be dispositive of the interests of the other Class members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

43.   The claims for injunctive relief in this case are certifiable under Fed. R. Civ. P. 23(b)(2).   Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief is appropriate respecting the Class as a whole.

44.   A class action is superior in this case to other methods of dispute resolution.   The Class members have an interest in class adjudication rather than individual adjudication because of their overlapping rights.   It is highly desirable to concentrate the resolution of these claims in this single forum because it would be difficult and highly unlikely that the affected Class Members would protect their rights on their own without this class action case.   Management of the class will be efficient and far superior to the management of individual lawsuits. Accordingly, Plaintiffs' legal claims are properly certified pursuant to Rule 23(b)(3).

45.   The issues particularly common to the Class members' claims, some of which are identified above, are alternatively certifiable pursuant to Fed. R. Civ. P. 23(c)(4), as resolution of these issues would materially advance the litigation, and class resolution of these issues is superior to repeated litigation of these issues in separate trials.

## COUNT I
### NEGLIGENCE
### (Against All Defendants)

46.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

47.   Defendants owed a duty to Plaintiffs and Class Members to exercise reasonable care

in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, i) installing, j) marketing, and/or k) selling this drywall, including a duty to adequately warn of their failure to do the same.

48.   Defendants knew or should have known that their wrongful acts and omissions would result in harm and damages in the manner set forth herein.

49.   Defendants breached their duty to exercise reasonable care in the designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, and/or selling this drywall.

50.   Defendants likewise breached their duties to Plaintiffs and Class Members by failing to warn about the defective nature of the drywall.   Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the property and bodies of Plaintiffs and Class Members.

51.   Defendants breached their duty to exercise reasonable care to timely remove and/or recall from the market and/or otherwise prevent the continued contact of Plaintiffs and Class Members with the drywall, upon leaning it had been sold in an unreasonably dangerous condition.

52.   Given the defect in the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm, and damages to Plaintiffs and Class Members.

53.   As a direct and proximate result of Defendants' acts and omissions, Plaintiffs and Class Members were harmed and have incurred damages as described herein.

**COUNT II**
**NEGLIGENCE PER SE**
**(Against All Defendants)**

54.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

55.   Defendants owed statutory duties to Plaintiffs and Class Members to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, I) marketing, and/or j) selling this drywall.

56.   Defendants breached their statutory duties to the Plaintiffs and Class Members by failing to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, i) marketing, and/or j) selling this drywall.

57.   Defendants likewise breached their statutory duties, including but not limited to those imposed under the International Building Code ("IBC") and other State and local Building Codes, to Plaintiffs and Class Members by failing to warn about the defective nature of the drywall.   For instance, it is specifically alleged that Defendants furnished the drywall in violation of ASTMC C 1396/C 1396M-069, and its predecessor(s).

58.   Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the property and bodies of Plaintiffs and Class Members.

59.   Given the defective nature of Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm, and damages to Plaintiffs and Class Members.

60.   As a direct and proximate result of Defendants' acts and omissions, Plaintiffs and

17

Class Members were harmed and have incurred damages as described herein.

### COUNT III
### STRICT LIABILITY
### (Against All Defendants)

61.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

62.     At all times relevant hereto, Defendants were in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public.

63.     The drywall, including that installed in the homes of Class Members was placed by Defendants in the stream of commerce.

64.     Defendants knew that the subject drywall would be used without inspection by consumers.

65.     Defendants intended that the drywall reach the ultimate consumers, such as Class Members, and it indeed reached Class Members when it was installed in their homes.

66.     When installed in Class Members' homes, the drywall was in substantially the same condition as it was in when Defendants manufactured, sold, and/or delivered it.

67.     At all times relevant hereto the subject drywall was used in a manner consistent with the uses intended by, or known to Defendants, and in accordance with the Defendants' directions and instructions.

68.     The subject drywall was not misused or altered by any third parties.

69.     The Defendants' drywall was improperly manufactured, designed, inspected, tested, marketed, distributed, and sold.

70.     The design impropriety was in designing drywall that allows high levels of sulfur compounds to exit the drywall.

18

71.    The manufacturing impropriety was in improperly selecting, testing, inspecting, mining, making, assembling, and using, gypsum for drywall with levels of sulfur compounds that were too high and allow high levels of sulfur compounds to exit the drywall.

72.    The drywall was also defective because it was improperly exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold in a unacceptable condition, as described above.

73.    The Defendants' negligence in manufacturing, designing, inspecting, testing, marketing, distributing, and selling of the drywall rendered it unsafe and unreasonably dangerous for its intended use and to Class Members.

74.    The drywall is also defective and unreasonably dangerous because Defendants failed to adequately warn and instruct Class Members of their negligent design, inspection, testing, manufacturing, marketing, and selling of the drywall.

75.    Class Members were unaware of the unreasonably dangerous propensities and defective condition of the drywall, nor could Class Members, acting as reasonably prudent people discover that Defendants' drywall was defective, as set forth herein, or perceive its danger.

76.    Defendants' defective drywall was much more dangerous and harmful than expected by the average consumer and by Class Members.

77.    Defendants' defective drywall benefit to Class Members, if any, was greatly outweighed by the risk of harm and danger to them.

78.    The harmful and dangerous propensities of the drywall, as well as Defendants' failure to adequately warn Class Members of these propensities rendered the drywall

19

unreasonably dangerous and was the direct and proximate cause of damages to Class Members.

## COUNT IV
## BREACH OF EXPRESS AND/OR IMPLIED WARRANTIES
### (Against All Defendants)

79.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

80.    Defendants and/or their agents were in privity with Plaintiffs and Class Members and/or Plaintiffs and Class Members were foreseeable third party beneficiaries of any warranty.

81.    At the times Defendants utilized, supplied, inspected, and/or sold their drywall for use in structures owned by Plaintiffs and Class Members, Defendants knew, or it was reasonably foreseeable, that the drywall would be installed in structures owned by Plaintiffs and Class Members for use as a building material, and expressly or impliedly warranted the product to be fit for that use.

82.    Defendants placed their drywall products into the stream of commerce in a defective condition and these products were expected to, and did, reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

83.    Although the drywall functions according to its intended purpose as a building component, it is unfit, defective as alleged in Paragraph 27 and not merchantable for this purpose due to the damaging side effects and/or because its use is so inconvenient that Plaintiffs would not have purchased their homes had the side effects been disclosed by Defendants.

84.    The Defendants breached their warranty because the drywall was not fit and safe for the particular purposes for which the goods were required (to be installed in structures owned by Plaintiffs and Class Members as a building material) due to the problems set forth herein.

85.     Defendants had reasonable and adequate notice of the Plaintiffs' and the Class

Members' claims for breach of warranty and failed to cure.

86.     As a direct and proximate result of Defendants' breach of warranties, Plaintiffs

and Class Members have incurred harm and damages as described herein.

## COUNT V
## REDHIBITION
### (By Louisiana Class Members Against All Defendants)

87.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

88.     The drywall manufactured, distributed and/or sold by Defendants was not

reasonably fit for its ordinary and intended purpose as alleged in Paragraph 27 above.

89.     Defendants are therefore liable to Louisiana Plaintiffs for all damages reasonable

in the premises, in accordance with La. Civ. Code art. 2524.

90.     In addition, or in the alternative, the drywall manufactured, distributed and/or sold

by Defendants contained redhibitory defects, in that, at the time of delivery, the propensity to

allow sulfur compounds to exit the drywall renders the drywall so useless and/or inconvenient

that it must be presumed that Plaintiffs would not have purchased the drywall had they known of

the redhibitory defect or defects.

91.     In the alternative, the defects are redhibitory defects in that, while not rendering

the drywall totally useless, diminish the drywall's use and/or value to such an extent that it must

be presumed that the buyer would have bought it, but for a lesser price.

92.     The Defendants are conclusively presumed to know of the defects in the drywall.

93.     In addition, it is believed and alleged that All Defendants knew of the defects in

the drywall at the time the drywall was delivered and/or sold.

94.     Defendants have had numerous opportunities to repair and/or replace the drywall and associated fixtures and/or building components and have failed to do so; in addition, and/or in the alternative, such requests have been, would have been and/or would be futile; Defendants, in addition, or alternatively, had actual knowledge of the problems in the drywall and the need for replacement, remediation and/or repair.

95.     Defendants are therefore liable to all Louisiana Plaintiffs for a return of the purchase price, (with interest from the time it was paid), reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the drywall and associated items, for damages, and for reasonable attorneys' fees, in accordance with La. Civ. Code art. 2545.

### COUNT VI
### LOUISIANA PRODUCTS LIABILITY ACT
#### (By Louisiana Class Members Against All Defendants)

96.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

97.     In addition to any and all damages, attorneys fees and other remedies made available to Louisiana Plaintiffs under the warranty of fitness and/or warranty against redhibitory defects, the Defendants are liable to Louisiana Plaintiffs under the Louisiana Products Liability Act, ("LPLA"), La. R.S. 9:2800.51, *et seq.*

98.     Defendants, upon information and belief, expressly warranted that "the gypsumboards manufactured and sold ... are guaranteed to be free from defects in materials and workmanship."

99.     The Defendants expressly warranted that "the gypsumboards were manufactured in accordance to ASTM C36."

22

100.    The drywall at issue is, in all cases, unreasonably dangerous by virtue of the unreasonable emission of sulfur compounds which do not in any way contribute to or enhance the utility of the drywall, yet pose a risk to the wiring, plumbing, appliances, personal property, overall economic value of the property and financial security of the owner, and/or the health of the residents of the property.

101.    At all times pertinent and material hereto, there existed alternative feasible manufacturing processes and/or designs of drywall which perform all of the functions and utility of traditional drywall, without allowing unreasonable levels of sulfur compounds to exit the drywall.

102.    At all times pertinent and material hereto, Defendants knew that their drywall was unreasonably dangerous and/or defective as set forth herein.

103.    In the alternative, Defendants should have, at all times pertinent and material hereto, known of the unreasonably dangerous and/or defective characteristics and/or conditions, had they reasonably employed then-existing scientific and/or technical knowledge, reasonable testing, and/or other reasonable and then-accepted methods of quality assurance and/or quality control.

104.    Defendants' drywall is unreasonably dangerous in composition or construction in that, at the time it left Defendant's control, it deviated in a material way from Defendant's own specifications or performance standards.

105.    In addition, and in the alternative, Defendants' drywall is unreasonably dangerous in design, in that, at the time the drywall left Defendant's control, there existed an alternative design for the product that was capable of preventing Plaintiffs' damage, and the likelihood of

23

causing the plaintiffs' damage and the gravity of that harm outweighed the burden (if any) on the

Defendant in adopting such alternative design and the adverse effect (if any) on the utility of the

drywall.

106.    In addition, and in the alternative, Defendants' drywall is unreasonably dangerous

in that it fails to conform to an express warranty about the product which induced the use of the

product and caused damage to Plaintiffs to the extent that the warranty was untrue.

107.    In addition, and in the alternative, Defendants' drywall is unreasonably dangerous

due to an inadequate warning, in that, at the time the drywall left Defendant's control, the

drywall possessed a characteristic that might cause damage and yet Defendant failed to use

reasonable care to provide an adequate warning of such characteristics and/or dangers to users

and/or handlers of the drywall.

108.    Defendants are therefore liable to Louisiana Plaintiffs for all damages reasonable

in the premises.

### COUNT VII
### PRIVATE NUISANCE
### (All Defendants)

109.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

110.    The Defendants' tortious or wrongful acts or omissions have caused sulfur

compounds and/or other chemical leaching into structures owned by Plaintiffs and Class

Members which has unreasonably interfered, and continues to interfere, with the Plaintiffs' and

Class Members' use and enjoyment of their properties and caused them harm and damage as

discussed herein.

24

111.   Defendants' interference has impaired the rights of Plaintiffs' and Class Members' health, comfort, safety, free use of their property, and/or peaceful enjoyment of their property.

112.   Defendants' invasions were intentional and unreasonable, and/or unintentional but otherwise negligent or reckless.

113.   The interference with Plaintiffs' and Class Members' use of their property caused by Defendants is substantial and is ongoing.

114.   Defendants' private nuisance was the direct, proximate, and foreseeable cause of Plaintiffs' and Class Members' damages, harm, and loss, which they suffered and will continue to suffer.

115.   As a direct and proximate result of Defendants' creation of a private nuisance, Plaintiffs and Class Members have incurred harm and damages as described herein.

**COUNT VIII**
**UNJUST ENRICHMENT**
**(Against All Defendants)**

116.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

117.   Defendants received money as a result of Plaintiffs' and Class Members' purchases of Defendants' defective drywall, or purchases of structures containing this drywall, either directly or through an agent, and Defendants wrongfully accepted and retained these benefits to the detriment of Plaintiffs and Class Members.

118.   Defendants' acceptance and retention of these benefits under the circumstances make it inequitable and unjust for Defendants to retain the benefit without payment of the value to the Plaintiffs and the Class Members.

25

119.   Defendants, by the deliberate and tortious conduct complained of herein, have been unjustly enriched in a manner which warrants restitution.

## COUNT IX
### VIOLATION OF CONSUMER PROTECTION ACTS
#### (Against All Defendants)

120.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

121.   This is an action for relief under the various Consumer Protection Acts of the jurisdictions in which affected properties are present, including but not limited to, L.SA-R.S. 51:1401, *et seq.* (Louisiana Unfair Trade Practices and Consumer Protection Law); Ala. Code 1975 § 8-19-1, *et seq.* (Alabama Deceptive Trade Practices Act); G.S. § 75-1.1, *et seq.* (North Carolina Consumer Protection Act); F.S. § 501.201, *et seq.* (Florida Deceptive and Unfair Trade Practices Act); Va. Code. Ann. § 59.1-196, *et seq.* (Virginia Consumer Protection Act); Tex. Bus. Com. Code Ann. § 17.41, *et seq.* (Texas Deceptive Trade Practices-Consumer Protection Act); Miss. Code Ann. § 75-24-1, *et seq.* (Mississippi Consumer Protection Act); GA ST § 10-1-393, *et seq.* (Georgia Consumer Protection Act);   SC ST § 39-5-20, *et seq.* (South Carolina Consumer Protection Act); Tenn. Code Ann. § 47-18-104, et seq. (Tennessee Consumer Protection Act).

122.   The Defendants' acts and omissions as well as their failure to use reasonable care in this matter as alleged in this complaint, including but not limited to, the knowing misrepresentation or failure to disclose the source, affiliation, origin, characteristics, ingredients, standards and quality of defective drywall constitute violation of the provisions of the Consumer Protection Acts of the Relevant States.

26

123.   Plaintiffs and Class Members have suffered actual damages as a result of
Defendants' violation of these Consumer Protection Acts and are entitled to relief.

124.   As a direct and proximate result of Defendants' violations of the Consumer
Protection Acts of the Relevant States, Plaintiffs and Class Members have incurred harm and
damages as described herein.

### COUNT X
### EQUITABLE AND INJUNCTIVE RELIEF
### (Against All Defendants)

125.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

126.   Plaintiffs and the Class Members are without adequate remedy at law, rendering
injunctive and other equitable relief appropriate.

127.   Plaintiffs and the Class Members will suffer irreparable harm if the Court does not
render the injunctive relief set forth herein, and if defendants are not ordered to recall, buy back,
rescind, and/or repair the structures owned by Plaintiffs and Class Members.

128.   Plaintiffs, on behalf of themselves and all others similarly situated, demand
injunctive and equitable relief and further, that defendants be ordered to: (1) remediate, repair
and/or replace the drywall in Class Members' homes or other structures upon proof by the
defendants of the feasibility of such remedy or repair; (2) cease and desist from misrepresenting
to the Class and the general public that the drywall is not defective and/or unreasonably
dangerous as alleged herein; and (3) institute, at their own cost, a public awareness campaign to
alert the Class and general public of the harm and dangers associated with the drywall.

27

Respectfully submitted,

Dated:

By: _____

James R. Reeves, Jr.
Alabama Bar ID#3467E49J
Reeves & Mestayer, PLLC
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@rmlawcall.com

*Attorneys for Plaintiffs*

## COURT APPOINTED PLAINTIFFS' LIASON AND LEAD COUNSEL IN MDL 2047

Russ M. Herman
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
rherman@hhklawfirm.com

Arnold Levin
Levin Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
alevin@lfsblaw.com

*Plaintiffs' Liaison Counsel MDL 2047*        *Plaintiffs' Lead Counsel MDL 2047*

## COURT APPOINTED PLAINTIFFS' STEERING
## COMMITTEE IN MDL 2047 - OF COUNSEL TO PLAINTIFFS

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Robert Becnel
Becnel Law Firm, LLC
425 W. Airline Highway, Suite B
Laplace, LA 70068
Phone: (985) 536-1186
Fax: (985) 536-6445
rbecnel@becnellaw.com

29

Peter Prieto
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
pprieto@podhurst.com

Patrick Montoya
Colson, Hicks, Eidson
255 Alhambra Circle, Penthouse
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
patrick@colson.com

Hugh P. Lambert
The Lambert Firm
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@thelambertfirm.com

James Robert Reeves
Reeves & Mestayer, PLLC
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@attorneys4people.com

Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5002
dan@wbmllp.com

Bruce William Steckler
Steckler Gresham Cochran
12720 Hillcrest Road, Ste 1045
Dallas, TX 75230
Phone: (972) 387-4040
Fax: (972) 387-4041
bruce@stecklerlaw.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
  Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
  & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Christopher Seeger
Seeger Weiss, LLP
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Richard J. Serpe
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com

30

Victor M. Diaz, Jr.
V.M. Diaz and Partners, LLC
119 Washington Ave, Suite 402
Miami Beach, FL 33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

**OF COUNSEL TO COURT APPOINTED PLAINTIFFS' STEERING COMMITTEE IN
MDL 2047 - OF COUNSEL TO PLAINTIFFS**

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W, Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax:   (202) 540-7201
rlewis@hausfeldllp.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Anthony D. Irpino
IRPINO AVIN HAWKINS LAW FIRM
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

**COUNSEL FOR INDIVIDUAL PLAINTIFFS ARE SET FORTH ON EXHIBIT "A"**

31

Jeremy Macon, et al., individually and on behalf of all others similarly situated v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.

Exhibit "A" – Plaintiffs Named in Plaintiffs' Omnibus Class Action Complaint Omni XXI (Alabama Amorin Default)

| Client | Drywall Property Street Address | City | State | Zip | Attorney | Firm | Street Address | City | State | Zip | Phone |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Rowser, Eugene | 1801 A Street | Demopolis | AL | 36732 | Holly Werkema Bramscomb | Barron & Budd, P.C. | 3100 Oak Lawn Ave., Ste. 1100 | Dallas | TX | 75219 | 214-521-3605 |
| Lake Crest Townhomes, LLC | 621 Trumpet Circle | Hoover | AL | 35226 | Kristie Braswell Beaver | Beavers Law Firm, Inc. | 4301 Dolly Ridge Road | Vestavia | AL | 35243 | 205-874-9510 |
| Klipsch, Ron | 10834 Sterling Ct | Daphne | AL | 36526 | Kristie Braswell | Braswell Murphy, LLC | 105 N. Conception St #100 | Mobile | AL | 36602 | (251) 438-7503 |
| Ard, Tryan C. | 22424 Ard Road | Robertsdale | AL | 36567 | Jonathan R. Law | Daniell, Upton & Perry | 30421 Highway 181 | Daphne | AL | 36527 | (251) 625-0046 |
| Dean, Brian | 21635 Glass and Spkey Road | Robertsdale | AL | 36567 | Jonathan R. Law | Daniell, Upton & Perry | 30421 Highway 181 | Daphne | AL | 36527 | (251) 625-0046 |
| First Baptist Church of Seminole, Alabama, Inc. a/k/a Seminole Baptist Church | 32519 Browns Landing Road | Seminole | AL | 36547 | Jonathan R. Law | Daniell, Upton & Perry | 30421 Highway 181 | Daphne | AL | 36527 | (251) 625-0046 |
| Harms, Timothy and Joan | 21630 County Road 38 | Summerdale | AL | 36580 | Jonathan R. Law | Daniell, Upton & Perry | 30421 Highway 181 | Daphne | AL | 36527 | (251) 625-0046 |
| Irby, Johnny F. | 37950 Magnolia Church Road | Bay Minette | AL | 36507 | Jonathan R. Law | Daniell, Upton & Perry | 30421 Highway 181 | Daphne | AL | 36527 | (251) 625-0046 |
| Langham, Chad and Laura | 18955 Pecan Lane | Robertsdale | AL | 36567 | Jonathan R. Law | Daniell, Upton & Perry | 30421 Highway 181 | Daphne | AL | 36527 | (251) 625-0046 |
| McCulley, Leland and Amy | 22424 Broad Street | Silverhill | AL | 36576 | Jonathan R. Law | Daniell, Upton & Perry | 30421 Highway 181 | Daphne | AL | 36527 | (251) 625-0046 |
| Reynolds, Kenneth M. | 1011 Dogwood Avenue | Daphne | AL | 36526 | Jonathan R. Law | Daniell, Upton & Perry | 30421 Highway 181 | Daphne | AL | 36527 | (251) 625-0046 |
| Shipp, Jason and Jennifer | 18955 Pecan Lane | Robertsdale | AL | 36567 | Jonathan R. Law | Daniell, Upton & Perry | 30421 Highway 181 | Daphne | AL | 36527 | (251) 625-0046 |
| Tedder, Julian and Betty Ramsey, Raymond and Tina | 25249 County Road 49 | Loxley | AL | 36551 | Jonathan R. Law | Daniell, Upton & Perry | 30421 Highway 181 | Daphne | AL | 36527 | (251) 625-0046 |
| Bramlett, Bobbi McCullough | 13628-A Rebel Road | Theodore | AL | 36582 | Katherine B. Riley | Don Barrett, PA | 404 Court Square North | Lexington | MS | 39095 | 662-834-2488 |
| Eggemeyer, Craig | 194 Holloway Hill Drive | Montevallo | AL | 35115 | F. Page Gamble II | F. Page Gamble, PC | 300 Vestavia Parkway, Suite 2300 | Birmingham | AL | 35216 | 205-795-2078 |
| Harwood, Kevin Curt | 23706 First Street | Silverhill | AL | 36576 | K. Edward Sexton, II | Gentle Turner Sexton & Harbison LLC | 501 Riverchase Parkway E. Suite 100 | Hoover | AL | 35244 | (205)716-3000 |
| Presnall, Donald & Sherron | 8442 Scott Drive | Trussville | AL | 35173 | K. Edward Sexton, II | Gentle Turner Sexton & Harbison LLC | 501 Riverchase Parkway E. Suite 100 | Hoover | AL | 35244 | (205)716-3000 |
| Thornley, Thomas Wayne and Eloise and Blase | 7151 Smithtown Road | Eight Mile | AL | 36613 | Holston, Rick | Holston Vaughan | 211 S. Cedar Street, P.O. Box 195 | Mobile | AL | 36602 | 251-432-8883 |
| | 31195 Oak Drive, Lot 164 | Orange Beach | AL | 36561 | Holston, Rick | Holston Vaughan | 211 S. Cedar Street, P.O. Box 195 | Mobile | AL | 36602 | 251-432-8883 |
| Ederly, Lyle & Leslie | 9618 Hildreth Road | Perdido Beach | AL | 36530 | Ben W. Gordon Jr. | Levin, Papantonio, et al | 315 S. Baylen Street, Ste. 600 | Pensacola | FL | 32507 | 850-435-7000 |

Case 2:09-md-02047-EEF-MBN   Document 20886   Filed 08/02/17   Page 85 of 478

Case 1:17-cv-01287-VEH   Document 1-1   Filed 08/01/17   Page 1 of 9

FILED
2017 Aug-01  AM 11:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

*Jeremy Mixon, et al., individually and on behalf of all others similarly situated v. Taishan Gypsum co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*

Exhibit "A" – Plaintiffs Named in Plaintiffs' Omnibus Class Action Complaint Omni XXI (Alabama Amorin Default)

| Client | Drywall Property | | | | Attorney | Firm | | | | | Phone |
| | Street Address | City | State | Zip | | | Street Address | City | State | Zip | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Guinn, John | 602 Willowbridge Drive | Fairhope | AL | 36532 | Ben W. Gordon, Jr. | Levin, Papantonio, et al. | 316 S. Baylen Street, Ste. 600 | Pensacola | FL | 32507 | (850)435-7000 |
| Miller, Sr., Ronald | 9660 Harbour Drive | Elberta | AL | 36530 | Ben W. Gordon, Jr. | Levin, Papantonio, et al. | 316 S. Baylen Street, Ste. 600 | Pensacola | FL | 32507 | (850)435-7000 |
| Wilson, Alton & Rhonda | 15770 Hwy. 104 | Silverhill | AL | 36576 | Ben W. Gordon, Jr. | Levin, Papantonio, et al. | 316 S. Baylen Street, Ste. 600 | Pensacola | FL | 32507 | (850)435-7000 |
| Abner, Rochelle & Jose | 1528 Mims Street | Birmingham | AL | 35211 | Eric D. Hoaglund | McCallum, Hoaglund, Cook & Irby, LLP | 905 Montgomery Highway, Suite 201 | Vestavia Hills | AL | 35216 | (205)824-7767 |
| Austin, Jason & Tara | 403 Dearmanville Dr. S. | Anniston | AL | 36207 | Eric D. Hoaglund | McCallum, Hoaglund, Cook & Irby, LLP | 905 Montgomery Highway, Suite 201 | Vestavia Hills | AL | 35216 | (205)824-7767 |
| Ayers, Carrie | 2379 Ridgemont Dr. | Birmingham | AL | 35244 | Eric D. Hoaglund | McCallum, Hoaglund, Cook & Irby, LLP | 905 Montgomery Highway, Suite 201 | Vestavia Hills | AL | 35216 | (205)824-7767 |
| Dawkins, Stephen | 78 Spring Lake Blvd. | Clanton | AL | 35045 | Eric D. Hoaglund | McCallum, Hoaglund, Cook & Irby, LLP | 905 Montgomery Highway, Suite 201 | Vestavia Hills | AL | 35216 | (205)824-7767 |
| Degray, David & Tiffany | 531 Patriciana Dr. | Homewood | AL | 35209 | Eric D. Hoaglund | McCallum, Hoaglund, Cook & Irby, LLP | 905 Montgomery Highway, Suite 201 | Vestavia Hills | AL | 35216 | (205)824-7767 |
| Diffley, Matthew & Crelsa | 7484 Dickey springs Rd. | Bessemer | AL | 35022 | Eric D. Hoaglund | McCallum, Hoaglund, Cook & Irby, LLP | 905 Montgomery Highway, Suite 201 | Vestavia Hills | AL | 35216 | (205)824-7767 |
| Everette, Charles & Dawn | 939 Rudkley Avenue | Fairhope | AL | 36532 | Eric D. Hoaglund | McCallum, Hoaglund, Cook & Irby, LLP | 905 Montgomery Highway, Suite 201 | Vestavia Hills | AL | 35216 | (205)824-7767 |
| Goldberg, Joan | 58 Sunny Meadows Dr. | Talladega | AL | 35160 | Eric D. Hoaglund | McCallum, Hoaglund, Cook & Irby, LLP | 905 Montgomery Highway, Suite 201 | Vestavia Hills | AL | 35216 | (205)824-7767 |
| Grasso, Bill | 3500 Griffitic Bend Rd. | Talladega | AL | 35160 | Eric D. Hoaglund | McCallum, Hoaglund, Cook & Irby, LLP | 905 Montgomery Highway, Suite 201 | Vestavia Hills | AL | 35216 | (205)824-7767 |
| Harris, Brandon & Jessica | 881 Thomason Rd. | Albertville | AL | 35951 | Eric D. Hoaglund | McCallum, Hoaglund, Cook & Irby, LLP | 905 Montgomery Highway, Suite 201 | Vestavia Hills | AL | 35216 | (205)824-7767 |
| Hazlewood, Frank & Sharon | 1825 Wolf Creek Rd N. | Pell City | AL | 35125 | Eric D. Hoaglund | McCallum, Hoaglund, Cook & Irby, LLP | 905 Montgomery Highway, Suite 201 | Vestavia Hills | AL | 35216 | (205)824-7767 |
| Keith Hall Properties | 1247 Katie Lane | Leeds | AL | | Eric D. Hoaglund | McCallum, Hoaglund, Cook & Irby, LLP | 905 Montgomery Highway, Suite 201 | Vestavia Hills | AL | 35216 | (205)824-7767 |
| Keith Hall Properties | 1249 Katie Lane | Leeds | AL | | Eric D. Hoaglund | McCallum, Hoaglund, Cook & Irby, LLP | 905 Montgomery Highway, Suite 201 | Vestavia Hills | AL | 35216 | (205)824-7767 |
| Keith Hall Properties | 1251 Katie Lane | Leeds | AL | | Eric D. Hoaglund | McCallum, Hoaglund, Cook & Irby, LLP | 905 Montgomery Highway, Suite 201 | Vestavia Hills | AL | 35216 | (205)824-7767 |
| Keith Hall Properties | 1253 Katie Lane | Leeds | AL | | Eric D. Hoaglund | McCallum, Hoaglund, Cook & Irby, LLP | 905 Montgomery Highway, Suite 201 | Vestavia Hills | AL | 35216 | (205)824-7767 |
| Myers, Matthew | 1305 2nd Ave. North | Birmingham | AL | 35203 | Eric D. Hoaglund | McCallum, Hoaglund, Cook & Irby, LLP | 905 Montgomery Highway, Suite 201 | Vestavia Hills | AL | 35216 | (205)824-7767 |

Jeremy Macon, et al., individually and on behalf of all others similarly situated v. Taishan Gypsum co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.

Exhibit "A" – Plaintiffs Named in Plaintiffs' Omnibus Class Action Complaint Omni XXI (Alabama Amorin Default)

| Client | Drywall Property Street Address | City | State | Zip | Street Address | Firm | Attorney | City | State | Zip | Phone |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Peppers, June | 178 Lee Ridge Dr. | Altoona | AL | 35952 | 905 Montgomery Highway, Suite 201 | McCallum, Hoaglund, Cook & Irby, LLP | Eric D. Hoaglund | Vestavia Hills | AL | 35216 | (205)824-7767 |
| Smith, Barry & Markita | 5573 Parkside Circle | Hoover | AL | 35216 | 905 Montgomery Highway, Suite 201 | McCallum, Hoaglund, Cook & Irby, LLP | Eric D. Hoaglund | Vestavia Hills | AL | 35216 | (205)824-7767 |
| Westover Library Chandelier, Thomas and Evelyn | 3312 Westover Road | Westover | AL | 35147 | 905 Montgomery Highway, Suite 201 | McCallum, Hoaglund, Cook & Irby, LLP | Eric D. Hoaglund | Vestavia Hills | AL | 35216 | (205)824-7767 |
| Collins, James and Laura | 2901 Avenue V Ensely | Birmingham | AL | 35218 | 12800 University Drive | Morgan & Morgan | Pete Albanis | Fort Myers | FL | 33907 | 239-433-6880 |
| Collins, James and Laura | 22866 Country Ridge Parkway | McCalla | AL | 35111 | 27300 Riverview Center Blvd, Suite 103 | Parker Waichman Alonso, LLP | Francisco Albites | Bonita Springs | FL | 34134 | (239) 390-1000 |
| Duckett, Larry and Lori | 332 Granite Circle | Albertville | AL | 35950 | 27300 Riverview Center Blvd, Suite 103 | Parker Waichman Alonso, LLP | Francisco Albites | Bonita Springs | FL | 34134 | (239) 390-1000 |
| Fulmer, Tiffany and Rory | 3804 Holland Court | Phenix City | AL | 36867 | 27300 Riverview Center Blvd, Suite 103 | Parker Waichman Alonso, LLP | Francisco Albites | Bonita Springs | FL | 34134 | (239) 390-1000 |
| Grizzard, Gerald | 1717 A & B Hillyer Robinson Parkway | South Oxford | AL | 36203 | 27300 Riverview Center Blvd, Suite 103 | Parker Waichman Alonso, LLP | Francisco Albites | Bonita Springs | FL | 34134 | (239) 390-1000 |
| Kostelecky, Charlotte and Joseph | 19139 Blueberry Lane | Silverhill | AL | 36576 | 27300 Riverview Center Blvd, Suite 103 | Parker Waichman Alonso, LLP | Francisco Albites | Bonita Springs | FL | 34134 | (239) 390-1000 |
| Lopez, German and Valerie | 309 Granite Circle | Albertville | AL | 35950 | 27300 Riverview Center Blvd, Suite 103 | Parker Waichman Alonso, LLP | Francisco Albites | Bonita Springs | FL | 34134 | (239) 390-1000 |
| Patterson, Lee and Brandi | 913 Highland Road | Birmingham | AL | 35209 | 2001 Park Place North, Ste. 1100 | Pittman, Dutton & Hellums, | Booth Samuels | Birmingham | AL | 35203 | 205-322-8880 |
| Whitten, Tim and Julie | 5229 Municipal Park Drive | Loxley | AL | 36551 | 2001 Park Place North, Ste. 1100 | Pittman, Dutton & Hellums, | Booth Samuels | Birmingham | AL | 35203 | 205-322-8880 |
| Haynes, Christine | 881 Jackson Street | Elmore | AL | 36025 | 1515 Market Street | Singer Weiss | George, Scott | Philadelphia | PA | 19102 | 215-564-2300 |
| Macon, Jeremy | 346 Korreckt Drive | Lincoln | AL | 35096 | 1515 Market Street | Singer Weiss | George, Scott | Philadelphia | PA | 19102 | 215-564-2300 |
| Herrington, Brandi & Willie | 116 Northgate Drive South | Satsuma | AL | 36572 | 51 St. Joseph Street | Taylor Martino, P.C. | Edward Rowan | Mobile | AL | 36602 | (251) 433-3131 |
| Hudson, Chad & Melissa | 5522 Travellers Court | Satsuma | AL | 36572 | 51 St. Joseph Street | Taylor Martino, P.C. | Edward Rowan | Mobile | AL | 36602 | (251) 433-3131 |
| Smith, Daniel & Nicole | 765 Tabernacle Road | Monroeville | AL | 36460 | 51 St. Joseph Street | Taylor Martino, P.C. | Richard Taylor | Mobile | AL | 36602 | (251) 433-3131 |
| Abner, Rosey, Jr. and Rochelle | 1528 Mims Street SW | Birmingham | AL | 35211 | 900 W Morgan Street | Whitfield Bryson Mason | Daniel Bryson | Raleigh | NC | 27603 | 919-600-5000 |
| Arnold, Mike and Nicole | 9413 Brighton Avenue | Elberta | AL | 36530 | 900 W Morgan Street | Whitfield Bryson Mason | Daniel Bryson | Raleigh | NC | 27603 | 919-600-5000 |
| Ayers, Randy and Carrie | 2379 Ridgemont Drive | Birmingham | AL | 35244 | 900 W Morgan Street | Whitfield Bryson Mason | Daniel Bryson | Raleigh | NC | 27603 | 919-600-5000 |
| Ball, Jeffery | 265 12th Street | Pleasant Grove | AL | 35127 | 900 W Morgan Street | Whitfield Bryson Mason | Daniel Bryson | Raleigh | NC | 27603 | 919-600-5000 |
| Bell / Dock; Thomas/Rebecca | 180 Teasa Circle | Albertville | AL | 35950 | 900 W Morgan Street | Whitfield Bryson Mason | Daniel Bryson | Raleigh | NC | 27603 | 919-600-5000 |
| Bell, Marvelleen | 4720 Terrace | Birmingham | AL | 35208 | 900 W Morgan Street | Whitfield Bryson Mason | Daniel Bryson | Raleigh | NC | 27603 | 919-600-5000 |
| Bennett, Andrew | 100 Jewel Circle | Bessemer | AL | 35022 | 900 W Morgan Street | Whitfield Bryson Mason | Daniel Bryson | Raleigh | NC | 27603 | 919-600-5000 |

*Jeremy Macon, et al., individually and on behalf of all others similarly situated v. Taishan Gypsum co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*

*Exhibit "A" – Plaintiffs Named in Plaintiffs' Omnibus Class Action Complaint Omni XXI (Alabama Amorin Default)*

| Client | Drywall Property Street Address | City | State | Zip | Attorney | Firm | Street Address | City | State | Zip | Phone |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Blackburn, Benton and Amy | 2076 Mohecan Drive | Waverly | AL | 36879 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Boglin, Richard and Regina | 2028 Pratt Highway | Birmingham | AL | 35214 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Borklund, Stephen | 917 Alford Avenue | Hoover | AL | 35226 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Boyce, Gary and Chris | 4049 Greenan Way | Gulf Shores | AL | 36542 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Cashion, William | 183 Cashion Avenue | Wetumpka | AL | 36092 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Chaney, Wesley and Sheila | 411 Sanflat Road | Thomasville | AL | 36784 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Coleman, Tim and Misty | 1309 Concord Drive W | Lilian | AL | 36549 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Crow, Joshua and Melinda | 875 Lovejoy Road | Ashville | AL | 35953 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Cummings, Ray and Betty | 1487 W. Beach Blvd | Gulf Shores | AL | 36542 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| DeGray, David | 531 Poinciana Drive | Homewood | AL | 35209 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Demarais, William | 205 41st Street S | Birmingham | AL | 35222 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Dickey, Jeremy | 60 Pinebark Court | Wetumpka | AL | 36093 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Dykes, Jacob and Aeny | 1690 Montague Street | Leeds | AL | 35094 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Falls, Jameson | 852 Barkley Drive | Alabaster | AL | 35007 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Foster, Van (1514) | 1514 11th Street North | Birmingham | AL | 35204 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Foster, Van (1610) | 1610 13th Street N | Birmingham | AL | 35204 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Gibson, Robert and Peggy | 494 County Road 800 | Odera | AL | 35040 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Glascow, Travis | 1441 Valley Grove Road | Remlar | AL | 35133 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Goldberg, Joan | 58 Sunny Meadows Drive | Talladega | AL | 35160 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Graham, Gerald and Terry | 434 Ruben Avenue | Saraland | AL | 36571 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Handia, Wayne | 2005 River Lake Drive | Birmingham | AL | 35244 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Harper, Matthew | 949 Golf Course Road | Pell City | AL | 35128 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Harris, James, Edward and Booker | 5401 7th Avenue North | Bessemer | AL | 35020 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Hatcher, Brian and Amanda | 3010 Washington Circle | Moody | AL | 35004 | Daniel Bryson | Whitfield Bryson Mason | 2205 4th Avenue North | Nashville | TN | 37208 | 615-921-6500 |
| Hatcher, Cecil and Lena | 7400 Arabia Avenue | Birmingham | AL | 35224 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Hayes, Joseph and Selena | 3930 Walter Moore Road | Chunchula | AL | 36521 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |

Jeremy Mason, et al., individually and on behalf of all others similarly situated v. Taishan Gypsum co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.
Exhibit "A" – Plaintiffs Named in Plaintiffs' Omnibus Class Action Complaint Omni XXI (Alabama Amorin Default)

| Client | Drywall Property Street Address | City | State | Zip | Attorney | Firm | Street Address | City | State | Zip | Phone |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Head, Clifton and Ashley | 992 Carrington Drive | Mt. Olive | AL | 35117 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Headley, Danny and Cathy | 5313 County Road 24 | Verbena | AL | 36091 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Hensley, Donna | 5387 Quail Ridge Road | Gardendale | AL | 35071 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Hill, Leonard and Luverdia | 2708 20th Avenue | Birmingham | AL | 35218 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Hody / Simpson, Mary/Jeanne and Melinda | 4941 Zoba Circle | Birmingham | AL | 35235 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Hunt, Curt and Catherine | 16095 Durhan Fork Road | Bay Minette | AL | 36507 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Johnson, Fred and Sylvia | 2320 Heathrow Downs | Birmingham | AL | 35228 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Jones, Christopher | 5527 13th Avenue S | Birmingham | AL | 35222 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| King, Robert | 294 Grand View Parkway | Maylene | AL | 35114 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Ledbetter, William and Wendy | 24969 Steadfast Court | Daphne | AL | 36526 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Ledford, Samuel | 10308 Renfroe Road | Alpine | AL | 35014 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Lewis, Gary and Rhonda | 22870 Country Ridge Parkway | McCalla | AL | 35111 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Lewis, Judith | 940-46th Street Easley | Birmingham | AL | 35208 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Lewis, Leonard | 6201 Eastern Valley Road | McCalla | AL | 35111 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Magnolia Holiness Church | 428 3112 John-Johnson Road | McIntosh | AL | 36553 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Milton / Jackson, Carolyn/Ivory | 3408 13th Avenue North | Birmingham | AL | 35234 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Moore, Jerry and Rhonda | 2021 US Hwy 411 | Springville | AL | | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Moore, John and Debra | 1568 Pleasant Grove. | Dolomite | AL | 36061 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Moore, Johnny and Brenda | 1464 Edward Street | Dolomite | AL | 35061 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Mt. Joy Baptist Church | 5640 Smith Lake Dam Road | Jasper | AL | 35504 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Owens, Brenda | 2105 Lane Avenue | Birmingham | AL | 35217 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Parker, Jason | 1459 Hwy 57 | Vincent | AL | 35178 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Patton, Kevin and Laura | 129 Omaha Trial | Childersburg | AL | 35044 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |

Jeremy Mason, et al., individually and on behalf of all others similarly situated v. Taishan Gypsum co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.
Exhibit "A" – Plaintiffs Named in Plaintiffs' Omnibus Class Action Complaint Omni XXI (Alabama Amovin Default)

| Client | Street Address | City | State | Zip | Attorney | Firm | Street Address | City | State | Zip | Phone |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Drywall Property | | | | | | | | | | |
| Prestridge, John | 12595 Maddox Road | Churchula | AL | 36521 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Reed, Cory Ike and Angelan | 32 Ike & Ang Road | McIntosh | AL | 36553 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Reed, Randy and Sheri | 494 Cedar Creek Road | Odenville | AL | 35120 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Reeves, Carrie | 4926 Paradise Lake Circle | Birmingham | AL | 35244 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Serati, Douglas and Beatrice | 213 Shore Front Lane | Wilsonville | AL | 35186 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Seymore, Melvin an dDanny | 861 Legends Lane | Arley | AL | 35541 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Sheppard, Austin | 1502 A. Davis Road | Summerdale | AL | 36580 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Smith, Barry and Marietta | 5573 Parkside Circle | Hoover | AL | 35244 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Somma, Joseph | 4739 Quarter Staff Road | Birmingham | AL | 35223 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Tarver, Theodora and Cynthia | 1016 Woodbrook Road | Birmingham | AL | 35215 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| The Myers Building | 1305 2nd Avenue N | Birmingham | AL | 35203 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Thornton, Stanley and Agnes | 335 County Road 703 | Jemison | AL | 35085 | Daniel Bryson | Whitfield Bryson Mason | 500 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Thrower, Christopher | 541 Ledbetter Road | Munford | AL | 36268 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Visionary Ministry | 1829 Dartmouth Avenue | Bessemer | AL | 35020 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Weaver, Mary | 1403 Lovelady Lane | Lawley | AL | 36793 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Weldbams, Kent Robert | 174 Blount Parkway | Trafford | AL | 35172 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Westay, Billy Ray and Beverly | 346 Talton Circle | Attalla | AL | 35954 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| White, Charles and JoAnn | 94 Hagdetts Road | Childersburg | AL | 35044 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Yokers, Stephanie DeAnn | 1322 Railroad Drive | Hayden | AL | 35079 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Arnold, Christopher and Lisa | 9413 Brighton Avenue | Elberta | AL | 36530 | David Horsley / W. Brian Collins | Arthur Edge, PC The / Collins Law Firm | 2320 Highland Ave S, Ste. 175 / 1461 Shades Crest Rd | Birmingham / Hoover | AL | 35205 / 35226 | 205-454-0322 / 205-529-4988 |
| Ball, Jeffrey and Marvalean | 205 12th Street | Pleasant Grove | AL | 35127 | David Horsley / W. Brian Collins | Arthur Edge, PC The / Collins Law Firm | 2320 Highland Ave S, Ste. 175 / 1461 Shades Crest Rd | Birmingham / Hoover | AL | 35205 / 35226 | 205-454-0322 / 205-529-4988 |
| Bell, Marvalean | 4720 Terrace St | Birmingham | AL | 35208 | David Horsley / W. Brian Collins | Arthur Edge, PC The / Collins Law Firm | 2320 Highland Ave S, Ste. 175 / 1461 Shades Crest Rd | Birmingham / Hoover | AL | 35205 / 35226 | 205-454-0322 / 205-529-4988 |
| Bennett, Andrew | 100 Jewel Circle | Bessemer | AL | 35020 | David Horsley / W. Brian Collins | Arthur Edge, PC The / Collins Law Firm | 2320 Highland Ave S, Ste. 175 / 1461 Shades Crest Rd | Birmingham / Hoover | AL | 35205 / 35226 | 205-454-0322 / 205-529-4988 |

Jeremy Macey, et al., individually and on behalf of all others similarly situated v. Taishan Gypsum co., Ltd, f/k/a Shandong Taihe Dongxin Co., Ltd., et al.

Exhibit "A" – Plaintiffs Named in Plaintiffs' Omnibus Class Action Complaint Omni XXI (Alabama Amoin Default)

| Client | Drywall Property | | | | Attorney | Firm | Street Address | City | State | Zip | Phone |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Street Address | City | State | Zip | | | | | | | |
| Blackburn, Benton and Amy | 2076 Mohican Drive | Waverly | AL | 36879 | David Horsley W. Brian Collins | Arthur Edge, PC Collins Law Firm | 2320 Highland Ave S, Ste. 175 1461 Shades Crest Rd | Birmingham Hoover | AL | 35205 35226 | 205-453-0322 205-529-4988 |
| Bogin, Richard and Regina | 2028 Pratt Highway | Birmingham | AL | 35214 | David Horsley W. Brian Collins | Arthur Edge, PC Collins Law Firm | 2320 Highland Ave S, Ste. 175 1461 Shades Crest Rd | Birmingham Hoover | AL | 35205 35226 | 205-453-0322 205-529-4988 |
| Borland, Stephen and Jessica | 917 Allard Avenue | Hoover | AL | 35226 | David Horsley W. Brian Collins | Arthur Edge, PC Collins Law Firm | 2320 Highland Ave S, Ste. 175 1461 Shades Crest Rd | Birmingham Hoover | AL | 35205 35226 | 205-453-0322 205-529-4988 |
| Cashion, William | 183 Cashion Avenue | Wetumpka | AL | 36092 | David Horsley W. Brian Collins | Arthur Edge, PC Collins Law Firm | 2320 Highland Ave S, Ste. 175 1461 Shades Crest Rd | Birmingham Hoover | AL | 35205 35226 | 205-453-0322 205-529-4988 |
| Corvin, Patrick and Georgia | 1495 Miller Crescent | Birmingham | AL | 35205 | David Horsley W. Brian Collins | Arthur Edge, PC Collins Law Firm | 2320 Highland Ave S, Ste. 175 1461 Shades Crest Rd | Birmingham Hoover | AL | 35205 35226 | 205-453-0322 205-529-4988 |
| Crow, Joshua and Melinda | 875 Lovejoy Road | Ashville | AL | 35953 | David Horsley W. Brian Collins | Arthur Edge, PC Collins Law Firm | 2320 Highland Ave S, Ste. 175 1461 Shades Crest Rd | Birmingham Hoover | AL | 35205 35226 | 205-453-0322 205-529-4988 |
| Demarcic, Shannon | 205 41st Street South | Birmingham | AL | 35220 | David Horsley W. Brian Collins | Arthur Edge, PC Collins Law Firm | 2320 Highland Ave S, Ste. 175 1461 Shades Crest Rd | Birmingham Hoover | AL | 35205 35226 | 205-453-0322 205-529-4988 |
| Elkins, Frank and LaRue | 8601 Bradford Road | Pinson | AL | 35216 | David Horsley W. Brian Collins | Arthur Edge, PC Collins Law Firm | 2320 Highland Ave S, Ste. 175 1461 Shades Crest Rd | Birmingham Hoover | AL | 35205 35226 | 205-453-0322 205-529-4988 |
| Foster, Van | 1610 13th Street North | Birmingham | AL | 35204 | David Horsley W. Brian Collins | Arthur Edge, PC Collins Law Firm | 2320 Highland Ave S, Ste. 175 1461 Shades Crest Rd | Birmingham Hoover | AL | 35205 35226 | 205-453-0322 205-529-4988 |
| Foster, Van | 1514 11th Street North | Birmingham | AL | 35204 | David Horsley W. Brian Collins | Arthur Edge, PC Collins Law Firm | 2320 Highland Ave S, Ste. 175 1461 Shades Crest Rd | Birmingham Hoover | AL | 35205 35226 | 205-453-0322 205-529-4988 |
| Gibson, Robert and Peggy | 494 County Road 800 | Calera | AL | 35040 | David Horsley W. Brian Collins | Arthur Edge, PC Collins Law Firm | 2320 Highland Ave S, Ste. 175 1461 Shades Crest Rd | Birmingham Hoover | AL | 35205 35226 | 205-453-0322 205-529-4988 |
| Glasscox, Travis and Cathey | 1441 Valley Grove Road | Remlap | AL | 35133 | David Horsley W. Brian Collins | Arthur Edge, PC Collins Law Firm | 2320 Highland Ave S, Ste. 175 1461 Shades Crest Rd | Birmingham Hoover | AL | 35205 35226 | 205-453-0322 205-529-4988 |
| Hamlin, Wayne and Carol | 2005 River Lake Drive | Birmingham | AL | 35244 | David Horsley W. Brian Collins | Arthur Edge, PC Collins Law Firm | 2320 Highland Ave S, Ste. 175 1461 Shades Crest Rd | Birmingham Hoover | AL | 35205 35226 | 205-453-0322 205-529-4988 |
| Harper, Matthew | 949 Golf Course Road | Pell City | AL | 35128 | David Horsley W. Brian Collins | Arthur Edge, PC Collins Law Firm | 2320 Highland Ave S, Ste. 175 1461 Shades Crest Rd | Birmingham Hoover | AL | 35205 35226 | 205-453-0322 205-529-4988 |
| Harris, James, Edward and Booker | 5401 7th Avenue | Lipscomb | AL | 35020 | David Horsley W. Brian Collins | Arthur Edge, PC Collins Law Firm | 2320 Highland Ave S, Ste. 175 1461 Shades Crest Rd | Birmingham Hoover | AL | 35205 35226 | 205-453-0322 205-529-4988 |
| Hatcher, Cecil | 7400 Arabia Avenue | Birmingham | AL | 35224 | David Horsley W. Brian Collins | Arthur Edge, PC Collins Law Firm | 2320 Highland Ave S, Ste. 175 1461 Shades Crest Rd | Birmingham Hoover | AL | 35205 35226 | 205-453-0322 205-529-4988 |
| Head, Clinton | 952 Carrington Drive | Mount Olive | AL | 35117 | David Horsley W. Brian Collins | Arthur Edge, PC Collins Law Firm | 2320 Highland Ave S, Ste. 175 1461 Shades Crest Rd | Birmingham Hoover | AL | 35205 35226 | 205-453-0322 205-529-4988 |
| Hensley, Donna Hensley | 5387 Quail Ridge Road | Gardendale | AL | 35071 | David Horsley W. Brian Collins | Arthur Edge, PC Collins Law Firm | 2320 Highland Ave S, Ste. 175 1461 Shades Crest Rd | Birmingham Hoover | AL | 35205 35226 | 205-453-0322 205-529-4988 |
| Hill, Leonard and Luvenia | 2708 20th Avenue North | Birmingham | AL | 35234 | David Horsley W. Brian Collins | Arthur Edge, PC Collins Law Firm | 2320 Highland Ave S, Ste. 175 1461 Shades Crest Rd | Birmingham Hoover | AL | 35205 35226 | 205-453-0322 205-529-4988 |

*Jeremy Moccas, et al., individually and on behalf of all others similarly situated v. Taishan Gypsum co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*
**Exhibit "A" – Plaintiffs Named in Plaintiffs' Omnibus Class Action Complaint Omni XXI (Alabama Amorin Default)**

| Client | Drywall Property | | | | Attorney | Firm | Street Address | City | State | Zip | Phone |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Street Address | City | State | Zip | | | | | | | |
| Hill, Stephania | 1322 Railroad Drive | Hayden | AL | 35079 | David Horsley / W. Brian Collins | Arthur Edge, PC / Collins Law Firm | The 2320 Highland Ave S, Ste. 175 / 1461 Shades Crest Rd | Birmingham / Hoover | AL / AL | 35205 / 35226 | 205-453-0322 / 205-529-4988 |
| Jackson, Ivory /Melton, Carolyn | 3408 13th Avenue North | Birmingham | AL | 35204 | David Horsley / W. Brian Collins | Arthur Edge, PC / Collins Law Firm | The 2320 Highland Ave S, Ste. 175 / 1461 Shades Crest Rd | Birmingham / Hoover | AL / AL | 35205 / 35226 | 205-453-0322 / 205-529-4988 |
| Johnson, Fred and Sylvia | 1562 Davis Acres Drive | Alpine | AL | 35014 | David Horsley / W. Brian Collins | Arthur Edge, PC / Collins Law Firm | The 2320 Highland Ave S, Ste. 175 / 1461 Shades Crest Rd | Birmingham / Hoover | AL / AL | 35205 / 35226 | 205-453-0322 / 205-529-4988 |
| Jones, Christopher | 5527 13th Avenue South | Birmingham | AL | 35222 | David Horsley / W. Brian Collins | Arthur Edge, PC / Collins Law Firm | The 2320 Highland Ave S, Ste. 175 / 1461 Shades Crest Rd | Birmingham / Hoover | AL / AL | 35205 / 35226 | 205-453-0322 / 205-529-4988 |
| Kidd, Elvira – Visionary Ministries | 1929 Dartmouth Avenue | Bessemer | AL | 35020 | David Horsley / W. Brian Collins | Arthur Edge, PC / Collins Law Firm | The 2320 Highland Ave S, Ste. 175 / 1461 Shades Crest Rd | Birmingham / Hoover | AL / AL | 35205 / 35226 | 205-453-0322 / 205-529-4988 |
| King, Robert and Alberta | 294 Grande View Parkway | Maylene | AL | 35114 | David Horsley / W. Brian Collins | Arthur Edge, PC / Collins Law Firm | The 2320 Highland Ave S, Ste. 175 / 1461 Shades Crest Rd | Birmingham / Hoover | AL / AL | 35205 / 35226 | 205-453-0322 / 205-529-4988 |
| Lewis, Leonard | 6201 Eastern Valley Road | McCalla | AL | 35111 | David Horsley / W. Brian Collins | Arthur Edge, PC / Collins Law Firm | The 2320 Highland Ave S, Ste. 175 / 1461 Shades Crest Rd | Birmingham / Hoover | AL / AL | 35205 / 35226 | 205-453-0322 / 205-529-4988 |
| Lewis, Felicia | 1635 Dunhill Drive | Birmingham | AL | 35215 | David Horsley / W. Brian Collins | Arthur Edge, PC / Collins Law Firm | The 2320 Highland Ave S, Ste. 175 / 1461 Shades Crest Rd | Birmingham / Hoover | AL / AL | 35205 / 35226 | 205-453-0322 / 205-529-4988 |
| Lewis, Judith | 940 46th St. Ensley 35208 | Ensley | AL | 35208 | David Horsley / W. Brian Collins | Arthur Edge, PC / Collins Law Firm | The 2320 Highland Ave S, Ste. 175 / 1461 Shades Crest Rd | Birmingham / Hoover | AL / AL | 35205 / 35226 | 205-453-0322 / 205-529-4988 |
| Magnolia Holiness Church | 3112 John Johnston Road | McIntosh | AL | 36553 | David Horsley / W. Brian Collins | Arthur Edge, PC / Collins Law Firm | The 2320 Highland Ave S, Ste. 175 / 1461 Shades Crest Rd | Birmingham / Hoover | AL / AL | 35205 / 35226 | 205-453-0322 / 205-529-4988 |
| Moore, Brenda and Johnny | 1464 Edward Street | Dolomite | AL | 35601 | David Horsley / W. Brian Collins | Arthur Edge, PC / Collins Law Firm | The 2320 Highland Ave S, Ste. 175 / 1461 Shades Crest Rd | Birmingham / Hoover | AL / AL | 35205 / 35226 | 205-453-0322 / 205-529-4988 |
| Moore, Jerry and Rhonda | 20001 Highway 411 | Springville | AL | 35146 | David Horsley / W. Brian Collins | Arthur Edge, PC / Collins Law Firm | The 2320 Highland Ave S, Ste. 175 / 1461 Shades Crest Rd | Birmingham / Hoover | AL / AL | 35205 / 35226 | 205-453-0322 / 205-529-4988 |
| Mount Joy Baptist Church | 5640 Smith Lake Dam Road | Jasper | AL | 35504 | David Horsley / W. Brian Collins | Arthur Edge, PC / Collins Law Firm | The 2320 Highland Ave S, Ste. 175 / 1461 Shades Crest Rd | Birmingham / Hoover | AL / AL | 35205 / 35226 | 205-453-0322 / 205-529-4988 |
| Parker, Jason | 1499 Highway 57 | Vincent | AL | 35178 | David Horsley / W. Brian Collins | Arthur Edge, PC / Collins Law Firm | The 2320 Highland Ave S, Ste. 175 / 1461 Shades Crest Rd | Birmingham / Hoover | AL / AL | 35205 / 35226 | 205-453-0322 / 205-529-4988 |
| Patton, Kevin and Laura | 129 Cheaha Trail | Childersburg | AL | 35044 | David Horsley / W. Brian Collins | Arthur Edge, PC / Collins Law Firm | The 2320 Highland Ave S, Ste. 175 / 1461 Shades Crest Rd | Birmingham / Hoover | AL / AL | 35205 / 35226 | 205-453-0322 / 205-529-4988 |
| Prestridge, John | 12535 Maddox Road | Chunchula | AL | 36521 | David Horsley / W. Brian Collins | Arthur Edge, PC / Collins Law Firm | The 2320 Highland Ave S, Ste. 175 / 1461 Shades Crest Rd | Birmingham / Hoover | AL / AL | 35205 / 35226 | 205-453-0322 / 205-529-4988 |
| Reed, Corey Isie | 32 Ike & Ang Road | McIntosh | AL | 36553 | David Horsley / W. Brian Collins | Arthur Edge, PC / Collins Law Firm | The 2320 Highland Ave S, Ste. 175 / 1461 Shades Crest Rd | Birmingham / Hoover | AL / AL | 35205 / 35226 | 205-453-0322 / 205-529-4988 |
| Reed, Nathaniel and Theresa | 701 60th Street | Fairfield | AL | 35064 | David Horsley / W. Brian Collins | Arthur Edge, PC / Collins Law Firm | The 2320 Highland Ave S, Ste. 175 / 1461 Shades Crest Rd | Birmingham / Hoover | AL / AL | 35205 / 35226 | 205-453-0322 / 205-529-4988 |
| Reed, Randy and Sherri | 494 Cedar Creek Road | Odenville | AL | 35120 | David Horsley / W. Brian Collins | Arthur Edge, PC / Collins Law Firm | The 2320 Highland Ave S, Ste. 175 / 1461 Shades Crest Rd | Birmingham / Hoover | AL / AL | 35205 / 35226 | 205-453-0322 / 205-529-4988 |

*Jeremy Macon, et al., individually and on behalf of all others similarly situated v. Taishan Gypsum co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*

*Exhibit "A" — Plaintiffs Named in Plaintiffs' Omnibus Class Action Complaint Omni XXI (Alabama Amonin Default)*

| Client | Drywall Property | | | | Attorney | Firm | | Street Address | | City | State | Zip | Phone |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Street Address | City | State | Zip | | | | | | | | | |
| Rowes, Carrie | 4926 Paradise Lake Circle | Birmingham | AL | 35244 | David Horsley W. Brian Collins | Arthur Edge, PC Collins Law Firm | The | 2320 Highland Ave S, Ste. 175 Shades Crest Rd | 1461 | Birmingham Hoover | AL AL | 35205 35226 | 205-453-0322 205-529-4988 |
| Rydberg, Don and Kathleen | 467 Magnolia Circle | Warrior | AL | 35180 | David Horsley W. Brian Collins | Arthur Edge, PC Collins Law Firm | The | 2320 Highland Ave S, Ste. 175 Shades Crest Rd | 1461 | Birmingham Hoover | AL AL | 35205 35226 | 205-453-0322 205-529-4988 |
| Senat, Douglas and Bonie | 213 Shore Front Lane | Wilsonville | AL | 35186 | David Horsley W. Brian Collins | Arthur Edge, PC Collins Law Firm | The | 2320 Highland Ave S, Ste. 175 Shades Crest Rd | 1461 | Birmingham Hoover | AL AL | 35205 35226 | 205-453-0322 205-529-4988 |
| Seymore, Melvin and Danay | 920 County Road 946 | Cullman | AL | 35057 | David Horsley W. Brian Collins | Arthur Edge, PC Collins Law Firm | The | 2320 Highland Ave S, Ste. 175 Shades Crest Rd | 1461 | Birmingham Hoover | AL AL | 35205 35226 | 205-453-0322 205-529-4988 |
| Simpson, Jesse and Melinda/Rodo, Mary | 4941 Zeba Circle | Birmingham | AL | 35235 | David Horsley W. Brian Collins | Arthur Edge, PC Collins Law Firm | The | 2320 Highland Ave S, Ste. 175 Shades Crest Rd | 1461 | Birmingham Hoover | AL AL | 35205 35226 | 205-453-0322 205-529-4988 |
| Somma, Joseph | 4739 Quarter Staff Road | Birmingham | AL | 35223 | David Horsley W. Brian Collins | Arthur Edge, PC Collins Law Firm | The | 2320 Highland Ave S, Ste. 175 Shades Crest Rd | 1461 | Birmingham Hoover | AL AL | 35205 35226 | 205-453-0322 205-529-4988 |
| Tarver, Theodore and Cynthia | 1016 Woodbrook Road | Birmingham | AL | 35215 | David Horsley W. Brian Collins | Arthur Edge, PC Collins Law Firm | The | 2320 Highland Ave S, Ste. 175 Shades Crest Rd | 1461 | Birmingham Hoover | AL AL | 35205 35226 | 205-453-0322 205-529-4988 |
| Thrower, Christopher | 541 Ledbetter Road | Munford | AL | 35268 | David Horsley W. Brian Collins | Arthur Edge, PC Collins Law Firm | The | 2320 Highland Ave S, Ste. 175 Shades Crest Rd | 1461 | Birmingham Hoover | AL AL | 35205 35226 | 205-453-0322 205-529-4988 |
| Walker, Barry | 301 Lang Place | Ragland | AL | 35131 | David Horsley W. Brian Collins | Arthur Edge, PC Collins Law Firm | The | 2320 Highland Ave S, Ste. 175 Shades Crest Rd | 1461 | Birmingham Hoover | AL AL | 35205 35226 | 205-453-0322 205-529-4988 |
| Weaver, Mary | 1403 Lovelady Lane | Lawley | AL | 36793 | David Horsley W. Brian Collins | Arthur Edge, PC Collins Law Firm | The | 2320 Highland Ave S, Ste. 175 Shades Crest Rd | 1461 | Birmingham Hoover | AL AL | 35205 35226 | 205-453-0322 205-529-4988 |
| White, Charles and John | 94 Hesseltis Road | Childersburg | AL | 35004 | David Horsley W. Brian Collins | Arthur Edge, PC Collins Law Firm | The | 2320 Highland Ave S, Ste. 175 Shades Crest Rd | 1461 | Birmingham Hoover | AL AL | 35205 35226 | 205-453-0322 205-529-4988 |

# Exhibit "3"

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **Kelly Bentz, et al., individually, and on behalf of all others similarly situated, [ADDITIONAL PLAINTIFFS LISTED ON EXHIBIT "A" ATTACHED HERETO],** | **CASE NO.:** |
| **Plaintiffs,** | **CLASS ACTION COMPLAINT** |
| **v.** | |
| **Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd.; Tai an Taishan Plasterboard Co., Ltd.; Beijing New Building Materials Public Limited Co.; Beijing New Building Materials (Group) Co., Ltd.; China National Building Material Co., Ltd.** | **JURY TRIAL DEMAND** |
| **Defendants.** | |

_____/

## PLAINTIFFS' OMNIBUS CLASS ACTION COMPLAINT (XXX) (GEORGIA BROOKE)

Pursuant to Fed. R. Civ. P. 23, the class representatives in this action bring

suit on behalf of themselves and all other similarly situated owners and residents of

real property containing defective Chinese manufactured drywall that was

1

designed, manufactured, imported, distributed, delivered, supplied, marketed, inspected, or sold by the Defendants.

Each of the class representatives is pursuing a nationwide class action against the defendants with respect to the drywall located in plaintiffs' homes. Each of the Defendants in this action, Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd. ("Taishan"); Taian Taishan Plasterboard Co., Ltd. ("TTP"); Beijing New Building Materials Public Limited Co. ("BNBM"); Beijing New Building Materials (Group) Co., Ltd. ("BNBM Group"); China National Building Material Co., Ltd. ("CNBM"), are liable for damages incurred by Plaintiffs due to their role in the design, manufacture, importing, distributing, delivery, supply, marketing, inspecting, installing, or sale of the defective drywall at issue in this litigation.

## JURISDICTION, PARTIES, AND VENUE

1.    Original jurisdiction of this Court exists by virtue of 28 U.S.C. 1332(d)(2) and the Class Action Fairness Act ("CAFA").  *See* 28 U.S.C. 1711, *et. seq.*  The Plaintiffs and certain of the Defendants in these actions are citizens of different states and the amounts in controversy in these actions exceed five million dollars ($5,000,000.00), exclusive of interest and costs.

2.     Venue in this district satisfies the requirements of 28 U.S.C.

1391(b)(1)-(2) and (c) because Plaintiffs and a significant number of the absent

class members reside in this jurisdiction and a substantial amount of the events and

occurrences giving rise to these claims occurred in this District, or a substantial

part of the property that is the subject of this action is situated in this district.

## PLAINTIFFS

3.     For purposes of clarity, the Plaintiffs are asserting claims on behalf of

all owners and residents of the subject properties, including but not limited to,

minors and other residents of the properties who do not appear herein as named

plaintiffs.

4.     The Plaintiffs on this complaint have previously asserted claims

against Defendants in complaints now pending before the Honorable Eldon E.

Fallon in consolidated MDL proceedings in the United States District Court for the

Eastern District of Louisiana.   The instant complaint is being filed as a protective

action with respect to the prior filings before the MDL Court.

5.     Unless specifically stated to the contrary on Exhibit "A," all Plaintiffs

are citizens of the state where they reside and all entities are citizens of the state

where they are organized.   For those entities, where the state of organization is not

3

listed, it is asserted upon information and belief that the entity is incorporated

and/or organized in the state of its principal place of business.

6.     Each of the plaintiffs are identified on Exhibit "A," which is

incorporated herein by reference.   All of the plaintiffs identified on Exhibit "A"

own properties located in the state of Georgia.   Counsel for each plaintiff are also

identified in Exhibits "A."

### DEFENDANTS

7.     Unless specifically stated to the contrary, all individual defendants are

citizens of the state where they do business and all entities are citizens of the state

where they are organized.   For those entities, where the state of organization is not

listed, it is asserted upon information and belief that the entity is incorporated

and/or organized in the state of its principal place of business.

8.     Defendant Taishan is a foreign corporation doing business in several

States, including but not limited to, Alabama, California, Florida, Georgia,

Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and

Virginia.   Upon information and belief, Defendant, together with its affiliates

and/or actual or apparent agents, manufactured, sold, distributed, marketed and

placed within the stream of commerce gypsum drywall with the expectation that

4

the drywall would be purchased by thousands of consumers, if not more, within

various States, including but not limited to, Alabama, California, Florida, Georgia,

Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and

Virginia.   Upon information and belief, Defendant has continuously and

systematically distributed and sold drywall to numerous purchasers in the United

States and their drywall is installed in numerous structures in the United States.

Defendant manufactured and sold, directly and indirectly, to certain suppliers in

the United States.

9.     Defendant TTP is a foreign corporation doing business in several

States, including but not limited to, Alabama, California, Florida, Georgia,

Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and

Virginia.   Upon information and belief, Defendant, together with its affiliates

and/or actual or apparent agents, manufactured, sold, distributed, marketed and

placed within the stream of commerce gypsum drywall with the expectation that

the drywall would be purchased by thousands of consumers, if not more, within

various States, including but not limited to, Alabama, California, Florida, Georgia,

Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and

Virginia.   Upon information and belief, Defendant has continuously and

5

systematically distributed and sold drywall to numerous purchasers in the United

States and their drywall is installed in numerous structures in the United States.

Defendant manufactured and sold, directly and indirectly, to certain suppliers in

the United States.

     10.     Defendant TTP is a wholly owned subsidiary of Defendant Taishan.

     11.     During the period when Taishan and its subsidiaries were distributing

defective drywall to the United States, these entities consistently misrepresented

the drywall they were exporting complied with ISO and ASTM quality standards.

For instance, Taishan's website boasted that it was exporting large quantities of

drywall to the United States and that its drywall complied with ISO quality

standards.   The employees of Taishan and its subsidiaries also sent emails to

potential customers boasting about their experience exporting large quantities of

drywall to the United States.   These employees also provided false assurances that

the drywall they were exporting complied with ASTM quality standards.

     12.     Defendant BNBM is a foreign corporation doing business in several

States, including but not limited to, Alabama, California, Florida, Georgia,

Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and

Virginia.   Upon information and belief, Defendant, together with its affiliates

and/or actual or apparent agents, manufactured, sold, distributed, marketed and

placed within the stream of commerce gypsum drywall with the expectation that

the drywall would be purchased by thousands of consumers, if not more, within

various States, including but not limited to, Alabama, California, Florida, Georgia,

Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and

Virginia.   Upon information and belief, Defendant has continuously and

systematically distributed and sold drywall to numerous purchasers in the United

States and their drywall is installed in numerous structures in the United States.

Defendant manufactured and sold, directly and indirectly, to certain suppliers in

the United States.

13.   On April 21, 2017, Judge Fallon in MDL 2047 issued an Order and

Reasons on Defendants' motions to dismiss pursuant to Fed.R.Civ.P. 12(b)

(hereafter "Rule 12(b) Order").   *See* Rec.Doc.No. 20739.   The Rule 12(b) Order

correctly determined that:

*     BNBM is the controlling shareholder of Taishan and that Taishan is
    an agent and alter ego of BNBM.

*     BNBM is controlled by China National Building Materials Group Co.

7

("CNBM Group").[1]

* BNBM has exercised a high degree of control over Taishan's operational management and its day to day operations.

* BNBM has had voting control over Taishan's board since 2005.

* BNBM controls Taishan's board and management team.

* BNBM audits Taishan and requires that Taishan submit weekly reports.

* BNBM must approve certain activities by Taishan including the building of factories and all matters concerning drywall production.

* BNBM controls Taishan's financial and strategic business decisions.

* Taishan must provide BNBM with a stake in all of its subsidiaries.

* BNBM and Taishan share officers, directors, and executives.

* Taishan and BNBM also share certain property.

* BNBM provides Taishan with loan guarantees.

14.   On October 13, 2015, CNBM publicly announced that BNBM will

---

[1] CNBM Group is not being pursued as a defendant in the instant complaint as CNBM Group has been dismissed as a defendant by Judge Fallon. The order of dismissal is interlocutory and is subject to appeal at a later date.

8

acquire 100% of Taishan's shares.   BNBM subsequently acquired 100% of Taishan's shares on October 27, 2016.

15.   BMBM consistently exerted control over Taishan and its subsidiaries when these entities were exporting defective drywall to the United States.   For instance, one of BNBM ꞮꞮꞮs board members, Tongchun Jia, is the chairman of the board of directors and general manager of Taishan.   Mr. Tongchun Jia occupies similar positions with most of Taishan's subsidiaries.   Through Mr. Tongchun Jia's positon with Taishan and its subsidiaries, BNBM controls the actions and operations of these entities.   Even where Tongchun Jia does not formally hold a position with a Taishan subsidiary, BNBM is able to exert its control over the subsidiary through Mr. Tongchun Jia's influence.   For instance, the chairman of the board of TTP, Peng Shi Liang, was also an employee of Taishan.   BNBM was thus able to control TTP since the chairman of its board reported directly to Tongchun Jia.   Accordingly, since BNBM had direct control over Taishan and its subsidiaries, it should be held responsible for their sale of defective drywall.

16.   Defendant, BNBM Group is a foreign corporation doing business in several States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and

Virginia.   Upon information and belief, Defendant, together with its affiliates,

subsidiaries and/or actual or apparent agents, manufactured, sold, distributed,

marketed and placed within the stream of commerce gypsum drywall with the

expectation that the drywall would be purchased by thousands of consumers, if not

more, within various States, including but not limited to, Alabama, California,

Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina,

Tennessee, Texas, and Virginia.   Upon information and belief, Defendant,

together with its affiliates, subsidiaries and/or actual or apparent agents, have

continuously and systematically distributed and sold drywall to numerous

purchasers in the United States and their drywall is installed in numerous structures

in the United States. Defendant, together with its affiliates, subsidiaries and/or

actual or apparent agents, manufactured and sold, directly and indirectly, to certain

suppliers in the United States.

17.   Defendant, CNBM is a foreign corporation doing business in several

States, including but not limited to, Alabama, California, Florida, Georgia,

Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and

Virginia.   Upon information and belief, Defendant, together with its affiliates,

subsidiaries and/or actual or apparent agents, manufactured, sold, distributed,

10

marketed and placed within the stream of commerce gypsum drywall with the

expectation that the drywall would be purchased by thousands of consumers, if not

more, within various States, including but not limited to, Alabama, California,

Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina,

Tennessee, Texas, and Virginia.   Upon information and belief, Defendant together

with its affiliates, subsidiaries and/or actual or apparent agents, has continuously

and systematically distributed and sold drywall to numerous purchasers in the

United States and their drywall is installed in numerous structures in the United

States. Defendant, together with its affiliates, subsidiaries and/or actual or apparent

agents, manufactured and sold, directly and indirectly, to certain suppliers in the

United States.

18.     The Rule 12(b) Order correctly determined that CNBM is the

controlling shareholder of BNBM.

19.     To the extent any of the foreign defendants are deemed to be foreign

sovereign entities, including but not limited to Taishan, TTP, BNBM, BNBM

Group, and CNBM, Plaintiffs bring their claims against these entities pursuant to

28 U.S.C. 1605(a)(2), the commercial activity exception to the Foreign Sovereign

Immunities Act, or alternatively under 1605(a)(5), the tortious act exception.

Plaintiffs allege that the claims against the foreign defendants are based upon commercial activities carried on in the United States.   The claims also seeks monetary damages against a foreign state for damage to property occurring in the United States, caused by the tortious acts or omissions of that foreign state, or of any official or employee of that foreign state while acting within the scope of his office or employment.

### FACTS REGARDING THE DEFENDANTS

20.    Upon information and belief, CNBM Group, together with its affiliates, subsidiaries and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, CNBM Group, together with its affiliates, subsidiaries and/or actual or apparent agents, has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. CNBM Group, together with its

12

affiliates, subsidiaries and/or actual or apparent agents, manufactured and sold,

directly and indirectly, to certain suppliers in the United States.

21.   The Rule 12(b) Order correctly determined that:

\*   CNBM Group is the controlling shareholder of CNBM and BNBM

Group.

\*   CNBM Group is the controlling shareholder of BNBM and Taishan

by virtue of its control over CNBM and BNBM Group.

\*   All the Defendants operate as a single-business enterprise that is led

by CNBM Group.

22.   CNBM Group has exerted high levels of control over its subsidiary

entities, including but not limited to CNBM, BNBM, BNBM Group, Taishan, and

TTP, by virtue of its scheme of appointing overlapping officers and directors of

subsidiary entities, its use of notices and management reports sent to subsidiaries,

its requirement that its direct subsidiaries manage investments in subsidiaries

pursuant to CNBM Group directives, the implementing of policies for conducting

audits, and its requirement that subsidiaries submit various reports.   Many CNBM

Group officers and directors hold positions with BNBM and Taishan.   The

Company culture of CNBM Group establishes a "Parent-subsidiary" company that

13

is managed and directed strictly from the top down. For instance, one of CNBM

Group's indirect subsidiary entities, BNBM, owns the majority of Taishan's shares

and has the ability to appoint the majority of Taishan's board of directors. CNBM

Group controls BNBM by virtue of another CNBM Group subsidiary, CNBM,

which is the parent entity of BNBM. CNBM Group has exerted day-to-day

control over each of its subsidiary entities and has used its influence to direct

specific activities and to appoint officers and directors that are beholden to CNBM

Group. Upon information and belief, this influence was exerted with respect to

permitting Taishan and BNBM to market, export, and distribute drywall to the

United States and the decision for Taishan to not appear at Judgment Debtor

proceedings before Judge Fallon in New Orleans.

23. For instance, at the outset of the MDL 2047, CNBM Group in

conjunction with its controlled subsidiaries, Taishan and BNBM, discussed and

then implemented a deliberate strategy whereby Defendants would not respond to

the litigation and would allow default judgments to be entered against them.

Defendants have also shared lawyers and law firms. When Taishan finally

responded to this litigation, it did so for the limited purpose of contesting personal

jurisdiction. When Taishan was unsuccessful in obtaining dismissal on these

14

grounds and lost its appeal to the Fifth Circuit Court of Appeals, it withdrew from

the litigation with the approval of its parent entities and was subsequently held in

civil and criminal contempt on July 17, 2014.   Following the issuance of this

contempt order, CNBM Group directed its subsidiaries to cease depositing funds in

New York banks.

## FACTS REGARDING DEFECTIVE DRYWALL

24.     Defendants' drywall is predominately composed of gypsum.

25.     In "defective drywall" (such as that designed, manufactured, exported,

imported, distributed, delivered, supplied, inspected, installed, marketed, and/or

sold by Defendants herein), sulfur compounds exit the drywall.

26.     The sulfur compounds, including Hydrogen Sulfide, Carbonyl Sulfide,

and Carbon Disulfide, exit Defendants' drywall and cause rapid sulfidation and

damage to personal property (such as the blackening and break down of air

conditioning and refrigerator coils, faucets, utensils, electrical wiring, copper,

electronic appliances and other metal surfaces and property).   These compounds

are not only harmful to personal property but they are also smelly and irritating to

humans and pets.

27.     Although the drywall functions according to its intended purpose as a

building component, it is unfit for this purpose due to the damaging side effects and/or because its use is so inconvenient that Plaintiffs would not have purchased their homes had the side effects been disclosed by Defendants.

28.    As a direct and proximate result of Defendants' actions and omissions, Plaintiffs' and the Class Members' structures and personal property have been exposed to Defendants' defective drywall and the harmful effects of the sulfur compounds that exit from Defendants' defective drywall.

29.    Defendants tortiously manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed and/or sold the defective drywall, which was unfit for its intended purpose in that the drywall caused rapid sulfidation and damage to personal property in Plaintiffs' and Class Members' homes, residences or structures.

30.    Defendants recklessly, wantonly, and/or negligently manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed and/or sold the defective drywall at issue in this litigation.

31.    Defendants recklessly, wantonly and/or negligently implemented faulty procedures for purposes of formulating, preparing, testing, and otherwise ensuring the quality and/or character of the defective drywall at issue in this litigation.

16

32.    As a direct and proximate result of Defendants' defective and unfit drywall and the harmful effects of the sulfur compounds that exit these products, Plaintiffs and Class Members have suffered, and continue to suffer economic harm.

33.    As a direct and proximate result of Defendants' defective and unfit drywall and the harmful effects of the sulfur compounds that exit these products, the Plaintiffs and the Class Members have suffered, and continue to suffer damages.   These damages include, but are not limited to, costs of inspection; costs and expenses necessary to remedy, replace and remove the defective drywall and other property that has been impacted; lost value or devaluation of their homes, residences or structures and property as a direct result of damage caused to the property and indirect damage resulting from perceived defects to the property, including stigma damages and loss of use and enjoyment of their home and property.

34.    As a direct and proximate result of Defendants' defective drywall and the harmful effects of the sulfur compounds that exit these products, Plaintiffs and the Class Members have a need for injunctive relief in the form of repair and remediation of their home, rescission of contracts, and the ordering of emergency/corrective notice.

17

## CLASS ACTION ALLEGATIONS

35.   The representative Plaintiffs with claims against the Defendants assert a

class pursuant to Rules 23(a), (b)(1), (b)(2), (b)(3) and/or 23(c)(4) of the Federal

Rules of Civil Procedure, on behalf of themselves and those similarly situated,

against the Defendants.   Plaintiffs define their class as follows:

> All owners and residents (past or present) of real property
> located in the United States containing defective Chinese
> drywall manufactured, sold, distributed, and/or supplied
> by Defendants.

### General Class Allegations and Exclusions from the Class Definitions

36.   The following Persons shall be excluded from the Class: (1)

Defendants and their subsidiaries, affiliates, officers and employees; (2) all Persons

who make a timely election to be excluded from the proposed Class; (3)

governmental entities; and (4) the judge(s) to whom this case is assigned and any

immediate family members thereof.

37.   Upon information and belief, the defective and unreasonably dangerous

drywall in Plaintiffs' homes or other structures was installed in at least hundreds of

homes, residences, or other structures owned by Plaintiffs and Class Members.

Therefore, the Class is sufficiently numerous such that the joinder of all members

of the Class in a single action is impracticable.

18

38.   There are numerous common questions of law and fact that

predominate over any questions affecting only individual members of the Class.

Among these common questions of law and fact are the following:

> a.   whether Defendants' drywall products are defective and/or unfit
> for their intended purpose;
>
> b.   whether Defendants tortuously manufactured, exported,
> imported, distributed, delivered, supplied, inspected, installed,
> marketed, and/or sold defective drywall products;
>
> c.   whether Plaintiffs are entitled to recover compensatory,
> exemplary, incidental, consequential, and/or other damages as a result
> of Defendants' unlawful and tortious conduct; and
>
> d.   whether Plaintiffs are entitled to recover injunctive and/or
> equitable relief as a result of Defendants' unlawful and tortious
> conduct.

39.   The legal claims of named Plaintiffs are typical of the legal claims of

other Class Members.   Named Plaintiffs have the same legal interests and need for

legal remedies as other Class Members.

40.   Named Plaintiffs are adequate representatives of the Class, together

with their legal counsel, each will fairly and adequately protect the interests of

Class Members.   Named Plaintiffs have no known conflict with the Class and are

committed to the vigorous prosecution of this action.

41.   The undersigned counsel are competent counsel experienced in class

action litigation, mass torts, and complex litigation involving harmful

products.   Counsel will fairly and adequately protect the interests of the Class.

42.   The various claims asserted in this action are certifiable under the

provisions of Federal Rules of Civil Procedure 23(b)(1) because prosecuting

separate actions by or against individual Class members would create a risk of

inconsistent or varying adjudications with respect to individual Class members that

would establish incompatible standards of conduct for the party opposing the

Class; or adjudications with respect to individual Class members that, as a practical

matter, would be dispositive of the interests of the other Class members not parties

to the individual adjudications or would substantially impair or impede their ability

to protect their interests.

43.   The claims for injunctive relief in this case are certifiable under Fed. R.

Civ. P. 23(b)(2).   Defendants have acted or refused to act on grounds that apply

generally to the Class, so that final injunctive relief is appropriate respecting the

Class as a whole.

44.   A class action is superior in this case to other methods of dispute

resolution.   The Class members have an interest in class adjudication rather than

individual adjudication because of their overlapping rights.   It is highly desirable

to concentrate the resolution of these claims in this single forum because it would

be difficult and highly unlikely that the affected Class Members would protect

their rights on their own without this class action case.   Management of the class

will be efficient and far superior to the management of individual lawsuits.

Accordingly, Plaintiffs' legal claims are properly certified pursuant to Rule

23(b)(3).

    45.   The issues particularly common to the Class members' claims, some of

which are identified above, are alternatively certifiable pursuant to Fed. R. Civ. P.

23(c)(4), as resolution of these issues would materially advance the litigation, and

class resolution of these issues is superior to repeated litigation of these issues in

separate trials.

**COUNT I**
**NEGLIGENCE**
**(Against All Defendants)**

    46.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth

herein.

    47.   Defendants owed a duty to Plaintiffs and Class Members to exercise

reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e)

21

distributing, f) delivering, g) supplying, h) inspecting, i) installing, j) marketing, and/or k) selling this drywall, including a duty to adequately warn of their failure to do the same.

48.   Defendants knew or should have known that their wrongful acts and omissions would result in harm and damages in the manner set forth herein.

49.   Defendants breached their duty to exercise reasonable care in the designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, and/or selling this drywall.

50.   Defendants likewise breached their duties to Plaintiffs and Class Members by failing to warn about the defective nature of the drywall. Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the property and bodies of Plaintiffs and Class Members.

51.   Defendants breached their duty to exercise reasonable care to timely remove and/or recall from the market and/or otherwise prevent the continued contact of Plaintiffs and Class Members with the drywall, upon leaning it had been sold in an unreasonably dangerous condition.

52.   Given the defect in the Defendants' drywall, Defendants knew or

should have known that their product could, and would, cause harm, and damages to Plaintiffs and Class Members.

53.    As a direct and proximate result of Defendants' acts and omissions, Plaintiffs and Class Members were harmed and have incurred damages as described herein.

## COUNT II
## NEGLIGENCE PER SE
### (Against All Defendants)

54.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

55.    Defendants owed statutory duties to Plaintiffs and Class Members to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, I) marketing, and/or j) selling this drywall.

56.    Defendants breached their statutory duties to the Plaintiffs and Class Members by failing to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, i) marketing, and/or j) selling this drywall.

57.    Defendants likewise breached their statutory duties, including but not

23

limited to those imposed under the International Building Code ("IBC") and other State and local Building Codes, to Plaintiffs and Class Members by failing to warn about the defective nature of the drywall.   For instance, it is specifically alleged that Defendants furnished the drywall in violation of ASTMC C 1396/C 1396M-069, and its predecessor(s).

58.   Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the property and bodies of Plaintiffs and Class Members.

59.   Given the defective nature of Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm, and damages to Plaintiffs and Class Members.

60.   As a direct and proximate result of Defendants' acts and omissions, Plaintiffs and Class Members were harmed and have incurred damages as described herein.

## COUNT III
## STRICT LIABILITY
### (Against All Defendants)

61.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

62.    At all times relevant hereto, Defendants were in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public.

63.    The drywall, including that installed in the homes of Class Members was placed by Defendants in the stream of commerce.

64.    Defendants knew that the subject drywall would be used without inspection by consumers.

65.    Defendants intended that the drywall reach the ultimate consumers, such as Class Members, and it indeed reached Class Members when it was installed in their homes.

66.    When installed in Class Members' homes, the drywall was in substantially the same condition as it was in when Defendants manufactured, sold, and/or delivered it.

67.    At all times relevant hereto the subject drywall was used in a manner consistent with the uses intended by, or known to Defendants, and in accordance with the Defendants' directions and instructions.

68.    The subject drywall was not misused or altered by any third parties.

69.    The Defendants' drywall was improperly manufactured, designed,

25

inspected, tested, marketed, distributed, and sold.

70.    The design impropriety was in designing drywall that allows high levels of sulfur compounds to exit the drywall.

71.    The manufacturing impropriety was in improperly selecting, testing, inspecting, mining, making, assembling, and using, gypsum for drywall with levels of sulfur compounds that were too high and allow high levels of sulfur compounds to exit the drywall.

72.    The drywall was also defective because it was improperly exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold in a unacceptable condition, as described above.

73.    The Defendants' negligence in manufacturing, designing, inspecting, testing, marketing, distributing, and selling of the drywall rendered it unsafe and unreasonably dangerous for its intended use and to Class Members.

74.    The drywall is also defective and unreasonably dangerous because Defendants failed to adequately warn and instruct Class Members of their negligent design, inspection, testing, manufacturing, marketing, and selling of the drywall.

75.    Class Members were unaware of the unreasonably dangerous

propensities and defective condition of the drywall, nor could Class Members,

acting as reasonably prudent people discover that Defendants' drywall was

defective, as set forth herein, or perceive its danger.

76. Defendants' defective drywall was much more dangerous and harmful

than expected by the average consumer and by Class Members.

77. Defendants' defective drywall benefit to Class Members, if any, was

greatly outweighed by the risk of harm and danger to them.

78. The harmful and dangerous propensities of the drywall, as well as

Defendants' failure to adequately warn Class Members of these propensities

rendered the drywall unreasonably dangerous and was the direct and proximate

cause of damages to Class Members.

## COUNT IV
### BREACH OF EXPRESS AND/OR IMPLIED WARRANTIES
#### (Against All Defendants)

79. Plaintiffs adopt and restate the preceding paragraphs as if fully set

forth herein.

80. Defendants and/or their agents were in privity with Plaintiffs and

Class Members and/or Plaintiffs and Class Members were foreseeable third party

beneficiaries of any warranty.

27

81.    At the times Defendants utilized, supplied, inspected, and/or sold their drywall for use in structures owned by Plaintiffs and Class Members, Defendants knew, or it was reasonably foreseeable, that the drywall would be installed in structures owned by Plaintiffs and Class Members for use as a building material, and expressly or impliedly warranted the product to be fit for that use.

82.    Defendants placed their drywall products into the stream of commerce in a defective condition and these products were expected to, and did, reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

83.    Although the drywall functions according to its intended purpose as a building component, it is unfit, defective as alleged in Paragraph 27 and not merchantable for this purpose due to the damaging side effects and/or because its use is so inconvenient that Plaintiffs would not have purchased their homes had the side effects been disclosed by Defendants.

84.    The Defendants breached their warranty because the drywall was not fit and safe for the particular purposes for which the goods were required (to be installed in structures owned by Plaintiffs and Class Members as a building material) due to the problems set forth herein.

28

85.   Defendants had reasonable and adequate notice of the Plaintiffs' and the Class Members' claims for breach of warranty and failed to cure.

86.   As a direct and proximate result of Defendants' breach of warranties, Plaintiffs and Class Members have incurred harm and damages as described herein.

**COUNT V**
**REDHIBITION**
**(By Louisiana Class Members Against All Defendants)**

87.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

88.   The drywall manufactured, distributed and/or sold by Defendants was not reasonably fit for its ordinary and intended purpose as alleged in Paragraph 27 above.

89.   Defendants are therefore liable to Louisiana Plaintiffs for all damages reasonable in the premises, in accordance with La. Civ. Code art. 2524.

90.   In addition, or in the alternative, the drywall manufactured, distributed and/or sold by Defendants contained redhibitory defects, in that, at the time of delivery, the propensity to allow sulfur compounds to exit the drywall renders the drywall so useless and/or inconvenient that it must be presumed that Plaintiffs

29

would not have purchased the drywall had they known of the redhibitory defect or defects.

91.    In the alternative, the defects are redhibitory defects in that, while not rendering the drywall totally useless, diminish the drywall's use and/or value to such an extent that it must be presumed that the buyer would have bought it, but for a lesser price.

92.    The Defendants are conclusively presumed to know of the defects in the drywall.

93.    In addition, it is believed and alleged that All Defendants knew of the defects in the drywall at the time the drywall was delivered and/or sold.

94.    Defendants have had numerous opportunities to repair and/or replace the drywall and associated fixtures and/or building components and have failed to do so; in addition, and/or in the alternative, such requests have been, would have been and/or would be futile; Defendants, in addition, or alternatively, had actual knowledge of the problems in the drywall and the need for replacement, remediation and/or repair.

95.    Defendants are therefore liable to all Louisiana Plaintiffs for a return of the purchase price, (with interest from the time it was paid), reimbursement of

30

the reasonable expenses occasioned by the sale and those incurred for the preservation of the drywall and associated items, for damages, and for reasonable attorneys' fees, in accordance with La. Civ. Code art. 2545.

## COUNT VI
## LOUISIANA PRODUCTS LIABILITY ACT
### (By Louisiana Class Members Against All Defendants)

96.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

97.     In addition to any and all damages, attorneys fees and other remedies made available to Louisiana Plaintiffs under the warranty of fitness and/or warranty against redhibitory defects, the Defendants are liable to Louisiana Plaintiffs under the Louisiana Products Liability Act, ("LPLA"), La. R.S. 9:2800.51, *et seq.*

98.     Defendants, upon information and belief, expressly warranted that "the gypsumboards manufactured and sold ... are guaranteed to be free from defects in materials and workmanship."

99.     The Defendants expressly warranted that "the gypsumboards were manufactured in accordance to ASTM C36."

100.    The drywall at issue is, in all cases, unreasonably dangerous by virtue

31

of the unreasonable emission of sulfur compounds which do not in any way

contribute to or enhance the utility of the drywall, yet pose a risk to the wiring,

plumbing, appliances, personal property, overall economic value of the property

and financial security of the owner, and/or the health of the residents of the

property.

101.   At all times pertinent and material hereto, there existed alternative

feasible manufacturing processes and/or designs of drywall which perform all of

the functions and utility of traditional drywall, without allowing unreasonable

levels of sulfur compounds to exit the drywall.

102.   At all times pertinent and material hereto, Defendants knew that their

drywall was unreasonably dangerous and/or defective as set forth herein.

103.   In the alternative, Defendants should have, at all times pertinent and

material hereto, known of the unreasonably dangerous and/or defective

characteristics and/or conditions, had they reasonably employed then-existing

scientific and/or technical knowledge, reasonable testing, and/or other reasonable

and then-accepted methods of quality assurance and/or quality control.

104.   Defendants' drywall is unreasonably dangerous in composition or

construction in that, at the time it left Defendant's control, it deviated in a material

32

way from Defendant's own specifications or performance standards.

105.   In addition, and in the alternative, Defendants' drywall is unreasonably dangerous in design, in that, at the time the drywall left Defendant's control, there existed an alternative design for the product that was capable of preventing Plaintiffs' damage, and the likelihood of causing the plaintiffs' damage and the gravity of that harm outweighed the burden (if any) on the Defendant in adopting such alternative design and the adverse effect (if any) on the utility of the drywall.

106.   In addition, and in the alternative, Defendants' drywall is unreasonably dangerous in that it fails to conform to an express warranty about the product which induced the use of the product and caused damage to Plaintiffs to the extent that the warranty was untrue.

107.   In addition, and in the alternative, Defendants' drywall is unreasonably dangerous due to an inadequate warning, in that, at the time the drywall left Defendant's control, the drywall possessed a characteristic that might cause damage and yet Defendant failed to use reasonable care to provide an adequate warning of such characteristics and/or dangers to users and/or handlers of the drywall.

108.   Defendants are therefore liable to Louisiana Plaintiffs for all damages reasonable in the premises.

## COUNT VII
### PRIVATE NUISANCE
### (All Defendants)

109.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

110.   The Defendants' tortious or wrongful acts or omissions have caused sulfur compounds and/or other chemical leaching into structures owned by Plaintiffs and Class Members which has unreasonably interfered, and continues to interfere, with the Plaintiffs' and Class Members' use and enjoyment of their properties and caused them harm and damage as discussed herein.

111.   Defendants' interference has impaired the rights of Plaintiffs' and Class Members' health, comfort, safety, free use of their property, and/or peaceful enjoyment of their property.

112.   Defendants' invasions were intentional and unreasonable, and/or unintentional but otherwise negligent or reckless.

113.   The interference with Plaintiffs' and Class Members' use of their property caused by Defendants is substantial and is ongoing.

34

114.   Defendants' private nuisance was the direct, proximate, and foreseeable cause of Plaintiffs' and Class Members' damages, harm, and loss, which they suffered and will continue to suffer.

115.   As a direct and proximate result of Defendants' creation of a private nuisance, Plaintiffs and Class Members have incurred harm and damages as described herein.

## COUNT VIII
## UNJUST ENRICHMENT
### (Against All Defendants)

116.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

117.   Defendants received money as a result of Plaintiffs' and Class Members' purchases of Defendants' defective drywall, or purchases of structures containing this drywall, either directly or through an agent, and Defendants wrongfully accepted and retained these benefits to the detriment of Plaintiffs and Class Members.

118.   Defendants' acceptance and retention of these benefits under the circumstances make it inequitable and unjust for Defendants to retain the benefit without payment of the value to the Plaintiffs and the Class Members.

119.    Defendants, by the deliberate and tortious conduct complained of

herein, have been unjustly enriched in a manner which warrants restitution.

## COUNT IX
## VIOLATION OF CONSUMER PROTECTION ACTS
### (Against All Defendants)

120.    Plaintiffs adopt and restate the preceding paragraphs as if fully set

forth herein.

121.    This is an action for relief under the various Consumer Protection

Acts of the jurisdictions in which affected properties are present, including but not

limited to, L.SA-R.S. 51:1401, *et seq.* (Louisiana Unfair Trade Practices and

Consumer Protection Law); Ala. Code 1975 8-19-1, *et seq.* (Alabama Deceptive

Trade Practices Act); G.S. 75-1.1, *et seq.* (North Carolina Consumer Protection

Act); F.S. 501.201, *et seq.* (Florida Deceptive and Unfair Trade Practices Act); Va.

Code. Ann. 59.1-196, *et seq.* (Virginia Consumer Protection Act); Tex. Bus. Com.

Code Ann. 17.41, *et seq.* (Texas Deceptive Trade Practices-Consumer Protection

Act); Miss. Code Ann. 75-24-1, *et seq.* (Mississippi Consumer Protection Act); GA

ST 10-1-393, *et seq.* (Georgia Consumer Protection Act); SC ST 39-5-20, *et seq.*

(South Carolina Consumer Protection Act); Tenn. Code Ann. 47-18-104, et seq.

(Tennessee Consumer Protection Act).

122.   The Defendants' acts and omissions as well as their failure to use reasonable care in this matter as alleged in this complaint, including but not limited to, the knowing misrepresentation or failure to disclose the source, affiliation, origin, characteristics, ingredients, standards and quality of defective drywall constitute violation of the provisions of the Consumer Protection Acts of the Relevant States.

123.   Plaintiffs and Class Members have suffered actual damages as a result of Defendants' violation of these Consumer Protection Acts and are entitled to relief.

124.   As a direct and proximate result of Defendants' violations of the Consumer Protection Acts of the Relevant States, Plaintiffs and Class Members have incurred harm and damages as described herein.

## COUNT X
### EQUITABLE AND INJUNCTIVE RELIEF
### (Against All Defendants)

125.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

126.   Plaintiffs and the Class Members are without adequate remedy at law, rendering injunctive and other equitable relief appropriate.

37

127. Plaintiffs and the Class Members will suffer irreparable harm if the Court does not render the injunctive relief set forth herein, and if defendants are not ordered to recall, buy back, rescind, and/or repair the structures owned by Plaintiffs and Class Members.

128. Plaintiffs, on behalf of themselves and all others similarly situated, demand injunctive and equitable relief and further, that defendants be ordered to: (1) remediate, repair and/or replace the drywall in Class Members' homes or other structures upon proof by the defendants of the feasibility of such remedy or repair; (2) cease and desist from misrepresenting to the Class and the general public that the drywall is not defective and/or unreasonably dangerous as alleged herein; and (3) institute, at their own cost, a public awareness campaign to alert the Class and general public of the harm and dangers associated with the drywall.

## DEMAND FOR JURY TRIAL

Plaintiffs, individually and on behalf of the Class Members, hereby demand a trial by jury as to all issues so triable as a matter of right.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs, on behalf of themselves and all others similarly situated demand upon Defendants jointly and severally for:

a.      an order certifying the case as a class action;

b.      an order certifying the Class;

c.      an order appointing Plaintiffs as the Class Representatives of the Class;

d.      an order appointing undersigned counsel and their firms as counsel for the Class;

e.      compensatory and statutory damages;

f.      punitive damages as allowed by law;

g.      pre and post-judgment interest as allowed by law;

h.      injunctive relief;

I.      an award of attorneys' fees as allowed by law;

j.      an award of taxable costs; and

k.      any and all such further relief as this Court deems just and proper.

Respectfully submitted,

Dated: August 1, 2017

By:   /s/ Andrea S. Hirsch
Andrea S. Hirsch, Esquire
Georgia Bar ID#666557
Herman Gerel, LLP

39

60 Lenox Pointe
Atlanta, GA 30324
Phone: (404) 880-9500
Fax: (770) 450-9236
ahirsch@hermangerel.com

*Attorneys for Plaintiffs*

## COURT APPOINTED PLAINTIFFS' LIASON AND LEAD COUNSEL IN MDL 2047

Russ M. Herman
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
rherman@hhklawfirm.com

Arnold Levin
Levin Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
alevin@lfsblaw.com

*Plaintiffs' Liaison Counsel MDL 2047*

*Plaintiffs' Lead Counsel MDL 2047*

## COURT APPOINTED PLAINTIFFS' STEERING COMMITTEE IN MDL 2047 - OF COUNSEL TO PLAINTIFFS

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Robert Becnel
Becnel Law Firm, LLC
425 W. Airline Highway, Suite B
Laplace, LA 70068
Phone: (985) 536-1186
Fax: (985) 536-6445
rbecnel@becnellaw.com

40

Peter Prieto
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
pprieto@podhurst.com

Patrick Montoya
Colson, Hicks, Eidson
255 Alhambra Circle, Penthouse
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
patrick@colson.com

Hugh P. Lambert
The Lambert Firm
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@thelambertfirm.com

James Robert Reeves
Reeves & Mestayer, PLLC
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@attorneys4people.com

Bruce William Steckler
Steckler Gresham Cochran
12720 Hillcrest Road, Ste 1045
Dallas, TX 75230
Phone: (972) 387-4040
Fax: (972) 387-4041
bruce@stecklerlaw.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
  Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
  & Warshauer, LLC
2800 Energy Centre, 1100 Poydras
Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Christopher Seeger
Seeger Weiss, LLP
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

41

Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5002
dan@wbmllp.com

Richard J. Serpe
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com

Victor M. Diaz, Jr.
V.M. Diaz and Partners, LLC
119 Washington Ave, Suite 402
Miami Beach, FL 33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

**OF COUNSEL TO COURT APPOINTED PLAINTIFFS' STEERING
COMMITTEE IN MDL 2047 - OF COUNSEL TO PLAINTIFFS**

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W, Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax:   (202) 540-7201
rlewis@hausfeldllp.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Anthony D. Irpino
IRPINO AVIN HAWKINS LAW
FIRM
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500

42

Fax: (504) 525-1501
airpino@irpinolaw.com

**COUNSEL FOR INDIVIDUAL PLAINTIFFS ARE SET FORTH ON
EXHIBIT "A"**

Case 1:17-cv-02892-AT   Document 1-1   Filed 08/01/17   Page 1 of 2

Kelly Bentz, et al., individually and on behalf of all others similarly situated v. Taishan Gypsum co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.

Exhibit "A" -- Plaintiffs Named in Plaintiffs Omnibus Class Action Complaint Omni XXX (Georgia Brooke)

| Client | Drywall Property Street Address | City | State | Zip | Attorney | Firm | Street Address | City | State | Zip | Phone |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Spires, Scott | 3106 Bethany Lane | Waycross | GA | 31503 | Holly Werkema; Allison Grant | Baron & Budd, P.C./ Allison Grant, P.A. | 3102 Oak Lawn Ave., Ste. 1100 | Dallas | TX | 75219 | 214-521-3605 |
| Spires, Scott | 3108 Bethany Lane | Waycross | GA | 31503 | Holly Werkema; Allison Grant | Baron & Budd, P.C./ Allison Grant, P.A. | 3102 Oak Lawn Ave., Ste. 1100 | Dallas | TX | 75219 | 214-521-3605 |
| Spires, Scott | 3110 Bethany Lane | Waycross | GA | 31503 | Holly Werkema; Allison Grant | Baron & Budd, P.C./ Allison Grant, P.A. | 3102 Oak Lawn Ave., Ste. 1100 | Dallas | TX | 75219 | 214-521-3605 |
| Spires, Scott | 3112 Bethany Lane | Waycross | GA | 31503 | Holly Werkema; Allison Grant | Baron & Budd, P.C./ Allison Grant, P.A. | 3102 Oak Lawn Ave., Ste. 1100 | Dallas | TX | 75219 | 214-521-3605 |
| Spires, Scott | 3113 Bethany Lane | Waycross | GA | 31503 | Holly Werkema; Allison Grant | Baron & Budd, P.C./ Allison Grant, P.A. | 3102 Oak Lawn Ave., Ste. 1100 | Dallas | TX | 75219 | 214-521-3605 |
| Spires, Scott | 3114 Bethany Lane | Waycross | GA | 31503 | Holly Werkema; Allison Grant | Baron & Budd, P.C./ Allison Grant, P.A. | 3102 Oak Lawn Ave., Ste. 1100 | Dallas | TX | 75219 | 214-521-3605 |
| Spires, Scott | 3115 Bethany Lane | Waycross | GA | 31503 | Holly Werkema; Allison Grant | Baron & Budd, P.C./ Allison Grant, P.A. | 3102 Oak Lawn Ave., Ste. 1100 | Dallas | TX | 75219 | 214-521-3605 |
| Spires, Scott | 3116 Bethany Lane | Waycross | GA | 31503 | Holly Werkema; Allison Grant | Baron & Budd, P.C./ Allison Grant, P.A. | 3102 Oak Lawn Ave., Ste. 1100 | Dallas | TX | 75219 | 214-521-3605 |
| Spires, Scott | 3117 Bethany Lane | Waycross | GA | 31503 | Holly Werkema; Allison Grant | Baron & Budd, P.C./ Allison Grant, P.A. | 3102 Oak Lawn Ave., Ste. 1100 | Dallas | TX | 75219 | 214-521-3605 |
| Spires, Scott | 3118 Bethany Lane | Waycross | GA | 31503 | Holly Werkema; Allison Grant | Baron & Budd, P.C./ Allison Grant, P.A. | 3102 Oak Lawn Ave., Ste. 1100 | Dallas | TX | 75219 | 214-521-3605 |
| Spires, Scott | 3119 Bethany Lane | Waycross | GA | 31503 | Holly Werkema; Allison Grant | Baron & Budd, P.C./ Allison Grant, P.A. | 3102 Oak Lawn Ave., Ste. 1100 | Dallas | TX | 75219 | 214-521-3605 |
| Spires, Scott | 3120 Bethany Lane | Waycross | GA | 31503 | Holly Werkema; Allison Grant | Baron & Budd, P.C./ Allison Grant, P.A. | 3102 Oak Lawn Ave., Ste. 1100 | Dallas | TX | 75219 | 214-521-3605 |
| Spires, Scott | 3121 Bethany Lane | Waycross | GA | 31503 | Holly Werkema; Allison Grant | Baron & Budd, P.C./ Allison Grant, P.A. | 3102 Oak Lawn Ave., Ste. 1100 | Dallas | TX | 75219 | 214-521-3605 |
| Spires, Scott | 3122 Bethany Lane | Waycross | GA | 31503 | Holly Werkema; Allison Grant | Baron & Budd, P.C./ Allison Grant, P.A. | 3102 Oak Lawn Ave., Ste. 1100 | Dallas | TX | 75219 | 214-521-3605 |
| Spires, Scott | 3123 Bethany Lane | Waycross | GA | 31503 | Holly Werkema; Allison Grant | Baron & Budd, P.C./ Allison Grant, P.A. | 3102 Oak Lawn Ave., Ste. 1100 | Dallas | TX | 75219 | 214-521-3605 |
| Spires, Scott | 3124 Bethany Lane | Waycross | GA | 31503 | Holly Werkema; Allison Grant | Baron & Budd, P.C./ Allison Grant, P.A. | 3102 Oak Lawn Ave., Ste. 1100 | Dallas | TX | 75219 | 214-521-3605 |
| Spires, Scott | 3125 Bethany Lane | Waycross | GA | 31503 | Holly Werkema; Allison Grant | Baron & Budd, P.C./ Allison Grant, P.A. | 3102 Oak Lawn Ave., Ste. 1100 | Dallas | TX | 75219 | 214-521-3605 |
| Spires, Scott | 3126 Bethany Lane | Waycross | GA | 31503 | Holly Werkema; Allison Grant | Baron & Budd, P.C./ Allison Grant, P.A. | 3102 Oak Lawn Ave., Ste. 1100 | Dallas | TX | 75219 | 214-521-3605 |
| Spires, Scott | 3127 Bethany Lane | Waycross | GA | 31503 | Holly Werkema; Allison Grant | Baron & Budd, P.C./ Allison Grant, P.A. | 3102 Oak Lawn Ave., Ste. 1100 | Dallas | TX | 75219 | 214-521-3605 |

Case 1:17-cv-02892-AT   Document 1-1   Filed 08/01/17   Page 2 of 2

**Kelly Bentz, et al., individually and on behalf of all others similarly situated v. Taishan Gypsum co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.**

**Exhibit "A" – Plaintiffs Named in Plaintiffs' Omnibus Class Action Complaint Omni XXX (Georgia Brooke)**

| Client | Drywall Property | | | | | Attorney | Firm | Street Address | City | State | Zip | Phone |
| | Street Address | City | State | Zip | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Spires, Scott | 3128 Bethany Lane | Waycross | GA | 31503 | | Holly Werkema; Allison Grant | Baron & Budd, P.C./ Allison Grant, P.A. | 3102 Oak Lawn Ave., Ste. 1100 | Dallas | TX | 75219 | 214-521-3605 |
| Bentz, Kelly | 308 Stallings Drive | McDonough | GA | 30252 | | Jimmy Doyle | Doyle Law Firm | 2100 Southbridge Parkway, Suite 50 | Birmingham | AL | 35209 | 205-533-9500 |
| Blankenship, James and Julie | 275 Sagamore Cove | Sugar Hill | GA | 30518 | | Jimmy Doyle | Doyle Law Firm | 2100 Southbridge Parkway, Suite 50 | Birmingham | AL | 35209 | 205-533-9500 |
| Cameron, Leslie Glenn and James Andrew | 280 Sagamore Cove | Sugar Hill | GA | 30518 | | Jimmy Doyle | Doyle Law Firm | 2100 Southbridge Parkway, Suite 50 | Birmingham | AL | 35209 | 205-533-9500 |
| Cecchi, Clifford B. and Carl D. Knight | 5818 Deer Crossing Drive | Sugar Hill | GA | 30518 | | Jimmy Doyle | Doyle Law Firm | 2100 Southbridge Parkway, Suite 50 | Birmingham | AL | 35209 | 205-533-9500 |
| McKoy, Tony | 2046 Reserve Parkway | McDonough | GA | 30253 | | Jimmy Doyle | Doyle Law Firm | 2100 Southbridge Parkway, Suite 50 | Birmingham | AL | 35209 | 205-533-9500 |
| Santiago, Ty and Lissette | 3065 Pale Moon Place | McDonough | GA | 30253 | | Jimmy Doyle | Doyle Law Firm | 2100 Southbridge Parkway, Suite 50 | Birmingham | AL | 35209 | 205-533-9500 |
| Shortt, Heather | 141 Andrew Court | Forsyth | GA | 31029 | | Jimmy Doyle | Doyle Law Firm | 2100 Southbridge Parkway, Suite 50 | Birmingham | AL | 35209 | 205-533-9500 |
| Silva, Sandra and Javier | 3408 Galloping Bend Way | Auburn | GA | 30011 | | Jimmy Doyle | Doyle Law Firm | 2100 Southbridge Parkway, Suite 50 | Birmingham | AL | 35209 | 205-533-9500 |
| Stuker, Richard and Kathryn | 5989 Grand Loop Road | Sugar Hill | GA | 30518 | | Jimmy Doyle | Doyle Law Firm | 2100 Southbridge Parkway, Suite 50 | Birmingham | AL | 35209 | 205-533-9500 |

JS44 (Rev. 6/2017 NDGA)                    **CIVIL COVER SHEET**

The JS44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form is required for the use of the Clerk of Court for the purpose of initiating the civil docket record. (SEE INSTRUCTIONS ATTACHED)

## I. (a) PLAINTIFF(S)

Kelly Bentz, et al., individually and on behalf of all others similarly situated

## DEFENDANT(S)

Taishan Gypsum Co., Ltd. f/k/a/ Shandong Taihe Dongxin Co., et al.

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF**  Henry County
(EXCEPT IN U.S. PLAINTIFF CASES)

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT**  Foreign Corporation
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS** (FIRM NAME, ADDRESS, TELEPHONE NUMBER, AND E-MAIL ADDRESS)

Andrea S. Hirsch, Esq.
Herman Gerel, LLP
60 Lenox Pointe
Atlanta, GA 30324
404-880-9500
ahirsch@hermangerel.com

**ATTORNEYS** (IF KNOWN)

see attached

## II. BASIS OF JURISDICTION
(PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. GOVERNMENT PLAINTIFF

☐ 2 U.S. GOVERNMENT DEFENDANT

☐ 3 FEDERAL QUESTION (U.S. GOVERNMENT NOT A PARTY)

☑ 4 DIVERSITY (INDICATE CITIZENSHIP OF PARTIES IN ITEM III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES
(PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(FOR DIVERSITY CASES ONLY)

| | PLF | DEF | | PLF | DEF | |
|---|---|---|---|---|---|---|
| | ☑ 1 | ☐ 1 | CITIZEN OF THIS STATE | ☐ 4 | ☐ 4 | INCORPORATED OR PRINCIPAL PLACE OF BUSINESS IN THIS STATE |
| | ☐ 2 | ☐ 2 | CITIZEN OF ANOTHER STATE | ☐ 5 | ☐ 5 | INCORPORATED AND PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE |
| | ☐ 3 | ☑ 3 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | ☐ 6 | ☐ 6 | FOREIGN NATION |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☑ 1 ORIGINAL PROCEEDING

☐ 2 REMOVED FROM STATE COURT

☐ 3 REMANDED FROM APPELLATE COURT

☐ 4 REINSTATED OR REOPENED

☐ 5 TRANSFERRED FROM ANOTHER DISTRICT (Specify District)

☐ 6 MULTIDISTRICT LITIGATION - TRANSFER

☐ 7 APPEAL TO DISTRICT JUDGE FROM MAGISTRATE JUDGE JUDGMENT

☐ 8 MULTIDISTRICT LITIGATION - DIRECT FILE

## V. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE - DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

28 U.S.C. § 1332(d)(2) and 28 U.S.C. § 1711, et.seq.
Product liability claims involving Chinese manufactured drywall

**(IF COMPLEX, CHECK REASON BELOW)**

☐ 1. Unusually large number of parties.

☐ 2. Unusually large number of claims or defenses.

☐ 3. Factual issues are exceptionally complex

☐ 4. Greater than normal volume of evidence.

☐ 5. Extended discovery period is needed.

☐ 6. Problems locating or preserving evidence

☐ 7. Pending parallel investigations or actions by government.

☐ 8. Multiple use of experts.

☐ 9. Need for discovery outside United States boundaries.

☐ 10. Existence of highly technical issues and proof.

**CONTINUED ON REVERSE**

FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT $ _____  APPLYING IFP _____  MAG. JUDGE (IFP) _____

JUDGE _____  MAG. JUDGE _____ (Referral)  NATURE OF SUIT _____  CAUSE OF ACTION _____

## VI. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

**CONTRACT - "0" MONTHS DISCOVERY TRACK**
- ☐ 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT
- ☐ 152 RECOVERY OF DEFAULTED STUDENT LOANS (Excl. Veterans)
- ☐ 153 RECOVERY OF OVERPAYMENT OF VETERAN'S BENEFITS

**CONTRACT - "4" MONTHS DISCOVERY TRACK**
- ☐ 110 INSURANCE
- ☐ 120 MARINE
- ☐ 130 MILLER ACT
- ☐ 140 NEGOTIABLE INSTRUMENT
- ☐ 151 MEDICARE ACT
- ☐ 160 STOCKHOLDERS' SUITS
- ☐ 190 OTHER CONTRACT
- ☐ 195 CONTRACT PRODUCT LIABILITY
- ☐ 196 FRANCHISE

**REAL PROPERTY - "4" MONTHS DISCOVERY TRACK**
- ☐ 210 LAND CONDEMNATION
- ☐ 220 FORECLOSURE
- ☐ 230 RENT LEASE & EJECTMENT
- ☐ 240 TORTS TO LAND
- ☐ 245 TORT PRODUCT LIABILITY
- ☐ 290 ALL OTHER REAL PROPERTY

**TORTS - PERSONAL INJURY - "4" MONTHS DISCOVERY TRACK**
- ☐ 310 AIRPLANE
- ☐ 315 AIRPLANE PRODUCT LIABILITY
- ☐ 320 ASSAULT, LIBEL & SLANDER
- ☐ 330 FEDERAL EMPLOYERS' LIABILITY
- ☐ 340 MARINE
- ☐ 345 MARINE PRODUCT LIABILITY
- ☐ 350 MOTOR VEHICLE
- ☐ 355 MOTOR VEHICLE PRODUCT LIABILITY
- ☐ 360 OTHER PERSONAL INJURY
- ☐ 362 PERSONAL INJURY - MEDICAL MALPRACTICE
- ☐ 365 PERSONAL INJURY - PRODUCT LIABILITY
- ☐ 367 PERSONAL INJURY - HEALTH CARE/ PHARMACEUTICAL PRODUCT LIABILITY
- ☐ 368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY

**TORTS - PERSONAL PROPERTY - "4" MONTHS DISCOVERY TRACK**
- ☐ 370 OTHER FRAUD
- ☐ 371 TRUTH IN LENDING
- ☐ 380 OTHER PERSONAL PROPERTY DAMAGE
- ☑ 385 PROPERTY DAMAGE PRODUCT LIABILITY

**BANKRUPTCY - "0" MONTHS DISCOVERY TRACK**
- ☐ 422 APPEAL 28 USC 158
- ☐ 423 WITHDRAWAL 28 USC 157

**CIVIL RIGHTS - "4" MONTHS DISCOVERY TRACK**
- ☐ 440 OTHER CIVIL RIGHTS
- ☐ 441 VOTING
- ☐ 442 EMPLOYMENT
- ☐ 443 HOUSING/ ACCOMMODATIONS
- ☐ 445 AMERICANS with DISABILITIES - Employment
- ☐ 446 AMERICANS with DISABILITIES - Other
- ☐ 448 EDUCATION

**IMMIGRATION - "0" MONTHS DISCOVERY TRACK**
- ☐ 462 NATURALIZATION APPLICATION
- ☐ 465 OTHER IMMIGRATION ACTIONS

**PRISONER PETITIONS - "0" MONTHS DISCOVERY TRACK**
- ☐ 463 HABEAS CORPUS - Alien Detainee
- ☐ 510 MOTIONS TO VACATE SENTENCE
- ☐ 530 HABEAS CORPUS
- ☐ 535 HABEAS CORPUS DEATH PENALTY
- ☐ 540 MANDAMUS & OTHER
- ☐ 550 CIVIL RIGHTS - Filed Pro se
- ☐ 555 PRISON CONDITION(S) - Filed Pro se
- ☐ 560 CIVIL DETAINEE: CONDITIONS OF CONFINEMENT

**PRISONER PETITIONS - "4" MONTHS DISCOVERY TRACK**
- ☐ 550 CIVIL RIGHTS - Filed by Counsel
- ☐ 555 PRISON CONDITION(S) - Filed by Counsel

**FORFEITURE/PENALTY - "4" MONTHS DISCOVERY TRACK**
- ☐ 625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881
- ☐ 690 OTHER

**LABOR - "4" MONTHS DISCOVERY TRACK**
- ☐ 710 FAIR LABOR STANDARDS ACT
- ☐ 720 LABOR/MGMT. RELATIONS
- ☐ 740 RAILWAY LABOR ACT
- ☐ 751 FAMILY and MEDICAL LEAVE ACT
- ☐ 790 OTHER LABOR LITIGATION
- ☐ 791 EMPL. RET. INC. SECURITY ACT

**PROPERTY RIGHTS - "4" MONTHS DISCOVERY TRACK**
- ☐ 820 COPYRIGHTS
- ☐ 840 TRADEMARK

**PROPERTY RIGHTS - "8" MONTHS DISCOVERY TRACK**
- ☐ 830 PATENT
- ☐ 835 PATENT-ABBREVIATED NEW DRUG APPLICATIONS (ANDA) - a/k/a Hatch-Waxman cases

**SOCIAL SECURITY - "0" MONTHS DISCOVERY TRACK**
- ☐ 861 HIA (1395ff)
- ☐ 862 BLACK LUNG (923)
- ☐ 863 DIWC (405(g))
- ☐ 863 DIWW (405(g))
- ☐ 864 SSID TITLE XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS - "4" MONTHS DISCOVERY TRACK**
- ☐ 870 TAXES (U.S. Plaintiff or Defendant)
- ☐ 871 IRS - THIRD PARTY 26 USC 7609

**OTHER STATUTES - "4" MONTHS DISCOVERY TRACK**
- ☐ 375 FALSE CLAIMS ACT
- ☐ 376 Qui Tam 31 USC 3729(a)
- ☐ 400 STATE REAPPORTIONMENT
- ☐ 430 BANKS AND BANKING
- ☐ 450 COMMERCE/ICC RATES/ETC.
- ☐ 460 DEPORTATION
- ☐ 470 RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS
- ☐ 480 CONSUMER CREDIT
- ☐ 490 CABLE/SATELLITE TV
- ☐ 890 OTHER STATUTORY ACTIONS
- ☐ 891 AGRICULTURAL ACTS
- ☐ 893 ENVIRONMENTAL MATTERS
- ☐ 895 FREEDOM OF INFORMATION ACT
- ☐ 899 ADMINISTRATIVE PROCEDURES ACT / REVIEW OR APPEAL OF AGENCY DECISION
- ☐ 950 CONSTITUTIONALITY OF STATE STATUTES

**OTHER STATUTES - "8" MONTHS DISCOVERY TRACK**
- ☐ 410 ANTITRUST
- ☐ 850 SECURITIES / COMMODITIES / EXCHANGE

**OTHER STATUTES - "0" MONTHS DISCOVERY TRACK**
- ☐ 896   ARBITRATION (Confirm / Vacate / Order / Modify)

***PLEASE NOTE DISCOVERY TRACK FOR EACH CASE TYPE. SEE LOCAL RULE 26.3**

---

## VII. REQUESTED IN COMPLAINT:

☑ CHECK IF CLASS ACTION UNDER F.R.Civ.P. 23   DEMAND $_____

JURY DEMAND ☑ YES  ☐ NO  (CHECK YES ONLY IF DEMANDED IN COMPLAINT)

## VIII. RELATED/REFILED CASE(S) IF ANY

JUDGE_____Eldon E. Fallon_____   DOCKET NO._09-MD-2047 (E.D. La.)_

CIVIL CASES ARE DEEMED RELATED IF THE PENDING CASE INVOLVES: (CHECK APPROPRIATE BOX)
- ☐ 1. PROPERTY INCLUDED IN AN EARLIER NUMBERED PENDING SUIT.
- ☑ 2. SAME ISSUE OF FACT OR ARISES OUT OF THE SAME EVENT OR TRANSACTION INCLUDED IN AN EARLIER NUMBERED PENDING SUIT.
- ☐ 3. VALIDITY OR INFRINGEMENT OF THE SAME PATENT, COPYRIGHT OR TRADEMARK INCLUDED IN AN EARLIER NUMBERED PENDING SUIT.
- ☐ 4. APPEALS ARISING OUT OF THE SAME BANKRUPTCY CASE AND ANY CASE RELATED THERETO WHICH HAVE BEEN DECIDED BY THE SAME BANKRUPTCY JUDGE.
- ☐ 5. REPETITIVE CASES FILED BY PRO SE LITIGANTS.
- ☐ 6. COMPANION OR RELATED CASE TO CASE(S) BEING SIMULTANEOUSLY FILED (INCLUDE ABBREVIATED STYLE OF OTHER CASE(S)):

- ☐ 7. EITHER SAME OR ALL OF THE PARTIES AND ISSUES IN THIS CASE WERE PREVIOUSLY INVOLVED IN CASE NO. _____, WHICH WAS DISMISSED. This case ☐ IS  ☐ IS NOT (check one box) SUBSTANTIALLY THE SAME CASE.

_____   _8/1/2017_
SIGNATURE OF ATTORNEY OF RECORD            DATE

<u>Defendants' Attorneys</u>

**Attorneys for China National Building Material Co., Ltd., Beijing New Building Materials Public Limited Co. and Beijing New Building Materials Group Co., Ltd.:**

L. Christopher Vejnoska
Orrick, Herrington & Sutcliffe LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105

**Attorneys for Taishan Gypsum Co., Ltd. and Taian Taishan Plasterboard Co., Ltd.:**

Bernard Taylor
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, GA 30309

# Exhibit "4"

JS44 (Rev. 6/2017 NDGA)                    CIVIL COVER SHEET

The JS44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form is required for the use of the Clerk of Court for the purpose of initiating the civil docket record. (SEE INSTRUCTIONS ATTACHED)

## I. (a) PLAINTIFF(S)

Debra Peoples, et al., individually and on behalf of all others similarly situated

## DEFENDANT(S)

Taishan Gypsum Co., Ltd. f/k/a/ Shandong Taihe Dongxin Co., et al.

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF**   Cobb County
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT   Foreign Corporation
(IN U.S. PLAINTIFF CASES)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS** (FIRM NAME, ADDRESS, TELEPHONE NUMBER, AND E-MAIL ADDRESS)

Andrea S. Hirsch, Esq.
Herman Gerel, LLP
60 Lenox Pointe
Atlanta, GA 30324
404-880-9500
ahirsch@hermangerel.com

**ATTORNEYS** (IF KNOWN)

see attached

## II. BASIS OF JURISDICTION
(PLACE AN "X" IN ONE BOX ONLY)

- [ ] 1. U.S. GOVERNMENT PLAINTIFF
- [ ] 2. U.S. GOVERNMENT DEFENDANT
- [ ] 3. FEDERAL QUESTION (U.S. GOVERNMENT NOT A PARTY)
- [x] 4. DIVERSITY (INDICATE CITIZENSHIP OF PARTIES IN ITEM III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES
(PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(FOR DIVERSITY CASES ONLY)

| PLF | DEF | | PLF | DEF | |
|-----|-----|---|-----|-----|---|
| [x] 1 | [ ] 1 | CITIZEN OF THIS STATE | [ ] 4 | [ ] 4 | INCORPORATED OR PRINCIPAL PLACE OF BUSINESS IN THIS STATE |
| [ ] 2 | [ ] 2 | CITIZEN OF ANOTHER STATE | [ ] 5 | [ ] 5 | INCORPORATED AND PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE |
| [ ] 3 | [x] 3 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | [ ] 6 | [ ] 6 | FOREIGN NATION |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- [x] 1 ORIGINAL PROCEEDING
- [ ] 2 REMOVED FROM STATE COURT
- [ ] 3 REMANDED FROM APPELLATE COURT
- [ ] 4 REINSTATED OR REOPENED
- [ ] 5 TRANSFERRED FROM ANOTHER DISTRICT (Specify District)
- [ ] 6 MULTIDISTRICT LITIGATION - TRANSFER
- [ ] 7 APPEAL TO DISTRICT JUDGE FROM MAGISTRATE JUDGE JUDGMENT
- [ ] 8 MULTIDISTRICT LITIGATION - DIRECT FILE

## V. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE - DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

28 U.S.C. § 1332(d)(2) and 28 U.S.C. § 1711, et.seq.
Product liability claims involving Chinese manufactured drywall

**(IF COMPLEX, CHECK REASON BELOW)**

- [ ] 1. Unusually large number of parties.
- [ ] 2. Unusually large number of claims or defenses.
- [ ] 3. Factual issues are exceptionally complex
- [ ] 4. Greater than normal volume of evidence.
- [ ] 5. Extended discovery period is needed.
- [ ] 6. Problems locating or preserving evidence
- [ ] 7. Pending parallel investigations or actions by government.
- [ ] 8. Multiple use of experts.
- [ ] 9. Need for discovery outside United States boundaries.
- [ ] 10. Existence of highly technical issues and proof.

## CONTINUED ON REVERSE

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT $ _____   APPLYING IFP _____   MAG. JUDGE (IFP) _____

JUDGE _____   MAG. JUDGE _____ (Referral)   NATURE OF SUIT _____   CAUSE OF ACTION _____

## VI. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

**CONTRACT - "0" MONTHS DISCOVERY TRACK**
- [ ] 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT
- [ ] 152 RECOVERY OF DEFAULTED STUDENT LOANS (Excl. Veterans)
- [ ] 153 RECOVERY OF OVERPAYMENT OF VETERAN'S BENEFITS

**CONTRACT - "4" MONTHS DISCOVERY TRACK**
- [ ] 110 INSURANCE
- [ ] 120 MARINE
- [ ] 130 MILLER ACT
- [ ] 140 NEGOTIABLE INSTRUMENT
- [ ] 151 MEDICARE ACT
- [ ] 160 STOCKHOLDERS' SUITS
- [ ] 190 OTHER CONTRACT
- [ ] 195 CONTRACT PRODUCT LIABILITY
- [ ] 196 FRANCHISE

**REAL PROPERTY - "4" MONTHS DISCOVERY TRACK**
- [ ] 210 LAND CONDEMNATION
- [ ] 220 FORECLOSURE
- [ ] 230 RENT LEASE & EJECTMENT
- [ ] 240 TORTS TO LAND
- [ ] 245 TORT PRODUCT LIABILITY
- [ ] 290 ALL OTHER REAL PROPERTY

**TORTS - PERSONAL INJURY - "4" MONTHS DISCOVERY TRACK**
- [ ] 310 AIRPLANE
- [ ] 315 AIRPLANE PRODUCT LIABILITY
- [ ] 320 ASSAULT, LIBEL & SLANDER
- [ ] 330 FEDERAL EMPLOYERS' LIABILITY
- [ ] 340 MARINE
- [ ] 345 MARINE PRODUCT LIABILITY
- [ ] 350 MOTOR VEHICLE
- [ ] 355 MOTOR VEHICLE PRODUCT LIABILITY
- [ ] 360 OTHER PERSONAL INJURY
- [ ] 362 PERSONAL INJURY - MEDICAL MALPRACTICE
- [ ] 365 PERSONAL INJURY - PRODUCT LIABILITY
- [ ] 367 PERSONAL INJURY - HEALTH CARE/ PHARMACEUTICAL PRODUCT LIABILITY
- [ ] 368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY

**TORTS - PERSONAL PROPERTY - "4" MONTHS DISCOVERY TRACK**
- [ ] 370 OTHER FRAUD
- [ ] 371 TRUTH IN LENDING
- [ ] 380 OTHER PERSONAL PROPERTY DAMAGE
- [x] 385 PROPERTY DAMAGE PRODUCT LIABILITY

**BANKRUPTCY - "0" MONTHS DISCOVERY TRACK**
- [ ] 422 APPEAL 28 USC 158
- [ ] 423 WITHDRAWAL 28 USC 157

**CIVIL RIGHTS - "4" MONTHS DISCOVERY TRACK**
- [ ] 440 OTHER CIVIL RIGHTS
- [ ] 441 VOTING
- [ ] 442 EMPLOYMENT
- [ ] 443 HOUSING/ ACCOMMODATIONS
- [ ] 445 AMERICANS with DISABILITIES - Employment
- [ ] 446 AMERICANS with DISABILITIES - Other
- [ ] 448 EDUCATION

**IMMIGRATION - "0" MONTHS DISCOVERY TRACK**
- [ ] 462 NATURALIZATION APPLICATION
- [ ] 465 OTHER IMMIGRATION ACTIONS

**PRISONER PETITIONS - "0" MONTHS DISCOVERY TRACK**
- [ ] 463 HABEAS CORPUS- Alien Detainee
- [ ] 510 MOTIONS TO VACATE SENTENCE
- [ ] 530 HABEAS CORPUS
- [ ] 535 HABEAS CORPUS DEATH PENALTY
- [ ] 540 MANDAMUS & OTHER
- [ ] 550 CIVIL RIGHTS - Filed Pro se
- [ ] 555 PRISON CONDITION(S) - Filed Pro se
- [ ] 560 CIVIL DETAINEE: CONDITIONS OF CONFINEMENT

**PRISONER PETITIONS - "4" MONTHS DISCOVERY TRACK**
- [ ] 550 CIVIL RIGHTS - Filed by Counsel
- [ ] 555 PRISON CONDITION(S) - Filed by Counsel

**FORFEITURE/PENALTY - "4" MONTHS DISCOVERY TRACK**
- [ ] 625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881
- [ ] 690 OTHER

**LABOR - "4" MONTHS DISCOVERY TRACK**
- [ ] 710 FAIR LABOR STANDARDS ACT
- [ ] 720 LABOR/MGMT. RELATIONS
- [ ] 740 RAILWAY LABOR ACT
- [ ] 751 FAMILY and MEDICAL LEAVE ACT
- [ ] 790 OTHER LABOR LITIGATION
- [ ] 791 EMPL. RET. INC. SECURITY ACT

**PROPERTY RIGHTS - "4" MONTHS DISCOVERY TRACK**
- [ ] 820 COPYRIGHTS
- [ ] 840 TRADEMARK

**PROPERTY RIGHTS - "8" MONTHS DISCOVERY TRACK**
- [ ] 830 PATENT
- [ ] 835 PATENT-ABBREVIATED NEW DRUG APPLICATIONS (ANDA) - a/k/a Hatch-Waxman cases

**SOCIAL SECURITY - "0" MONTHS DISCOVERY TRACK**
- [ ] 861 HIA (1395ff)
- [ ] 862 BLACK LUNG (923)
- [ ] 863 DIWC (405(g))
- [ ] 863 DIWW (405(g))
- [ ] 864 SSID TITLE XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS - "4" MONTHS DISCOVERY TRACK**
- [ ] 870 TAXES (U.S. Plaintiff or Defendant)
- [ ] 871 IRS - THIRD PARTY 26 USC 7609

**OTHER STATUTES - "4" MONTHS DISCOVERY TRACK**
- [ ] 375 FALSE CLAIMS ACT
- [ ] 376 Qui Tam 31 USC 3729(a)
- [ ] 400 STATE REAPPORTIONMENT
- [ ] 430 BANKS AND BANKING
- [ ] 450 COMMERCE/ICC RATES/ETC.
- [ ] 460 DEPORTATION
- [ ] 470 RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS
- [ ] 480 CONSUMER CREDIT
- [ ] 490 CABLE/SATELLITE TV
- [ ] 890 OTHER STATUTORY ACTIONS
- [ ] 891 AGRICULTURAL ACTS
- [ ] 893 ENVIRONMENTAL MATTERS
- [ ] 895 FREEDOM OF INFORMATION ACT
- [ ] 899 ADMINISTRATIVE PROCEDURES ACT / REVIEW OR APPEAL OF AGENCY DECISION
- [ ] 950 CONSTITUTIONALITY OF STATE STATUTES

**OTHER STATUTES - "8" MONTHS DISCOVERY TRACK**
- [ ] 410 ANTITRUST
- [ ] 850 SECURITIES / COMMODITIES / EXCHANGE

**OTHER STATUTES - "0" MONTHS DISCOVERY TRACK**
- [ ] 896 ARBITRATION (Confirm / Vacate / Order / Modify)

**\* PLEASE NOTE DISCOVERY TRACK FOR EACH CASE TYPE. SEE LOCAL RULE 26.3**

## VII. REQUESTED IN COMPLAINT:

- [x] CHECK IF CLASS ACTION UNDER F.R.Civ.P. 23    DEMAND $_____

JURY DEMAND [x] YES [ ] NO (CHECK YES ONLY IF DEMANDED IN COMPLAINT)

## VIII. RELATED/REFILED CASE(S) IF ANY

JUDGE _____ Eldon E. Fallon _____    DOCKET NO. _09-MD-2047 (E.D. La.)_

CIVIL CASES ARE DEEMED RELATED IF THE PENDING CASE INVOLVES: (CHECK APPROPRIATE BOX)
- [ ] 1. PROPERTY INCLUDED IN AN EARLIER NUMBERED PENDING SUIT.
- [x] 2. SAME ISSUE OF FACT OR ARISES OUT OF THE SAME EVENT OR TRANSACTION INCLUDED IN AN EARLIER NUMBERED PENDING SUIT.
- [ ] 3. VALIDITY OR INFRINGEMENT OF THE SAME PATENT, COPYRIGHT OR TRADEMARK INCLUDED IN AN EARLIER NUMBERED PENDING SUIT.
- [ ] 4. APPEALS ARISING OUT OF THE SAME BANKRUPTCY CASE AND ANY CASE RELATED THERETO WHICH HAVE BEEN DECIDED BY THE SAME BANKRUPTCY JUDGE.
- [ ] 5. REPETITIVE CASES FILED BY PRO SE LITIGANTS.
- [ ] 6. COMPANION OR RELATED CASE TO CASE(S) BEING SIMULTANEOUSLY FILED (INCLUDE ABBREVIATED STYLE OF OTHER CASE(S)):

- [ ] 7. EITHER SAME OR ALL OF THE PARTIES AND ISSUES IN THIS CASE WERE PREVIOUSLY INVOLVED IN CASE NO. _____ , WHICH WAS DISMISSED. This case [ ] IS [ ] IS NOT (check one box) SUBSTANTIALLY THE SAME CASE.

_Andrew S. Hirsch_
SIGNATURE OF ATTORNEY OF RECORD

_8/1/2017_
DATE

## Defendants' Attorneys

**Attorneys for China National Building Material Co., Ltd., Beijing New Building Materials Public Limited Co. and Beijing New Building Materials Group Co., Ltd.:**

L. Christopher Vejnoska
Orrick, Herrington & Sutcliffe LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105

**Attorneys for Taishan Gypsum Co., Ltd. and Taian Taishan Plasterboard Co., Ltd.:**

Bernard Taylor
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, GA 30309

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **Debra Peoples, et al., individually, and on behalf of all others similarly situated, [ADDITIONAL PLAINTIFFS LISTED ON EXHIBIT "A" ATTACHED HERETO],** | **CASE NO.:** |
| **Plaintiffs,** | **CLASS ACTION COMPLAINT** |
| **v.** | **JURY TRIAL DEMAND** |
| **Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd.; Tai'an Taishan Plasterboard Co., Ltd.; Beijing New Building Materials Public Limited Co.; Beijing New Building Materials (Group) Co., Ltd.; China National Building Material Co., Ltd.** | |
| **Defendants.** | |

## PLAINTIFFS' OMNIBUS CLASS ACTION COMPLAINT (XXII) (GEORGIA AMORIN DEFAULT)

Pursuant to Fed. R. Civ. P. 23, the class representatives in this action bring

suit on behalf of themselves and all other similarly situated owners and residents of

real property containing defective Chinese manufactured drywall that was

1

designed, manufactured, imported, distributed, delivered, supplied, marketed, inspected, or sold by the Defendants.

Each of the class representatives is pursuing a nationwide class action against the defendants with respect to the drywall located in plaintiffs' homes. Each of the Defendants in this action, Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd. ("Taishan"); Taian Taishan Plasterboard Co., Ltd. ("TTP"); Beijing New Building Materials Public Limited Co. ("BNBM"); Beijing New Building Materials (Group) Co., Ltd. ("BNBM Group"); China National Building Material Co., Ltd. ("CNBM"), are liable for damages incurred by Plaintiffs due to their role in the design, manufacture, importing, distributing, delivery, supply, marketing, inspecting, installing, or sale of the defective drywall at issue in this litigation.

## JURISDICTION, PARTIES, AND VENUE

1.     Original jurisdiction of this Court exists by virtue of 28 U.S.C. 1332(d)(2) and the Class Action Fairness Act ("CAFA").   *See* 28 U.S.C. 1711, *et. seq.*   The Plaintiffs and certain of the Defendants in these actions are citizens of different states and the amounts in controversy in these actions exceed five million dollars ($5,000,000.00), exclusive of interest and costs.

2

2.      Venue in this district satisfies the requirements of 28 U.S.C.

1391(b)(1)-(2) and (c) because Plaintiffs and a significant number of the absent

class members reside in this jurisdiction and a substantial amount of the events and

occurrences giving rise to these claims occurred in this District, or a substantial

part of the property that is the subject of this action is situated in this district.

## PLAINTIFFS

3.      For purposes of clarity, the Plaintiffs are asserting claims on behalf of

all owners and residents of the subject properties, including but not limited to,

minors and other residents of the properties who do not appear herein as named

plaintiffs.

4.      Unless specifically stated to the contrary on Exhibit "A," all Plaintiffs

are citizens of the state where they reside and all entities are citizens of the state

where they are organized.   For those entities, where the state of organization is not

listed, it is asserted upon information and belief that the entity is incorporated

and/or organized in the state of its principal place of business.

5.      Each of the plaintiffs are identified on Exhibit "A," which is

incorporated herein by reference.   All of the plaintiffs identified on Exhibit "A"

own properties located in the state of Georgia.   Counsel for each plaintiff are also

3

identified in Exhibits "A."

6.      The Plaintiffs on this complaint have previously asserted claims against Defendants in complaints now pending before the Honorable Eldon E. Fallon in consolidated MDL proceedings in the United States District Court for the Eastern District of Louisiana, in which Defendants have been adjudicated in default.   The instant complaint is being filed as a protective action with respect to the prior filings before the MDL Court.

## DEFENDANTS

7.      Unless specifically stated to the contrary, all individual defendants are citizens of the state where they do business and all entities are citizens of the state where they are organized.   For those entities, where the state of organization is not listed, it is asserted upon information and belief that the entity is incorporated and/or organized in the state of its principal place of business.

8.      Defendant Taishan is a foreign corporation doing business in several States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant, together with its affiliates and/or actual or apparent agents, manufactured, sold, distributed, marketed and

4

placed within the stream of commerce gypsum drywall with the expectation that

the drywall would be purchased by thousands of consumers, if not more, within

various States, including but not limited to, Alabama, California, Florida, Georgia,

Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and

Virginia.   Upon information and belief, Defendant has continuously and

systematically distributed and sold drywall to numerous purchasers in the United

States and their drywall is installed in numerous structures in the United States.

Defendant manufactured and sold, directly and indirectly, to certain suppliers in

the United States.

9.     Defendant TTP is a foreign corporation doing business in several

States, including but not limited to, Alabama, California, Florida, Georgia,

Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and

Virginia.   Upon information and belief, Defendant, together with its affiliates

and/or actual or apparent agents, manufactured, sold, distributed, marketed and

placed within the stream of commerce gypsum drywall with the expectation that

the drywall would be purchased by thousands of consumers, if not more, within

various States, including but not limited to, Alabama, California, Florida, Georgia,

Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and

5

Virginia.   Upon information and belief, Defendant has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Defendant manufactured and sold, directly and indirectly, to certain suppliers in the United States.

10.   Defendant TTP is a wholly owned subsidiary of Defendant Taishan.

11.   During the period when Taishan and its subsidiaries were distributing defective drywall to the United States, these entities consistently misrepresented the drywall they were exporting complied with ISO and ASTM quality standards. For instance, Taishan's website boasted that it was exporting large quantities of drywall to the United States and that its drywall complied with ISO quality standards.   The employees of Taishan and its subsidiaries also sent emails to potential customers boasting about their experience exporting large quantities of drywall to the United States.   These employees also provided false assurances that the drywall they were exporting complied with ASTM quality standards.

12.   Defendant BNBM is a foreign corporation doing business in several States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and

6

Virginia.   Upon information and belief, Defendant, together with its affiliates and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Defendant manufactured and sold, directly and indirectly, to certain suppliers in the United States.

13.     On April 21, 2017, Judge Fallon in MDL 2047 issued an Order and Reasons on Defendants' motions to dismiss pursuant to Fed.R.Civ.P. 12(b) (hereafter "Rule 12(b) Order").   *See* Rec.Doc.No. 20739.   The Rule 12(b) Order correctly determined that:

*        BNBM is the controlling shareholder of Taishan and that Taishan is an agent and alter ego of BNBM.

*        BNBM is controlled by China National Building Materials Group Co.

7

("CNBM Group").[1]

* BNBM has exercised a high degree of control over Taishan's operational management and its day to day operations.

* BNBM has had voting control over Taishan's board since 2005.

* BNBM controls Taishan's board and management team.

* BNBM audits Taishan and requires that Taishan submit weekly reports.

* BNBM must approve certain activities by Taishan including the building of factories and all matters concerning drywall production.

* BNBM controls Taishan's financial and strategic business decisions.

* Taishan must provide BNBM with a stake in all of its subsidiaries.

* BNBM and Taishan share officers, directors, and executives.

* Taishan and BNBM also share certain property.

* BNBM provides Taishan with loan guarantees.

14.    On October 13, 2015, CNBM publicly announced that BNBM will

---

[1] CNBM Group is not being pursued as a defendant in the instant complaint as CNBM Group has been dismissed as a defendant by Judge Fallon. The order of dismissal is interlocutory and is subject to appeal at a later date.

8

acquire 100% of Taishan's shares.   BNBM subsequently acquired 100% of Taishan's shares on October 27, 2016.

15.   BMBM consistently exerted control over Taishan and its subsidiaries when these entities were exporting defective drywall to the United States.   For instance, one of BNBM's board members, Tongchun Jia, is the chairman of the board of directors and general manager of Taishan.   Mr. Tongchun Jia occupies similar positions with most of Taishan's subsidiaries.   Through Mr. Tongchun Jia's positon with Taishan and its subsidiaries, BNBM controls the actions and operations of these entities.   Even where Tongchun Jia does not formally hold a position with a Taishan subsidiary, BNBM is able to exert its control over the subsidiary through Mr. Tongchun Jia's influence.   For instance, the chairman of the board of TTP, Peng Shi Liang, was also an employee of Taishan.   BNBM was thus able to control TTP since the chairman of its board reported directly to Tongchun Jia.   Accordingly, since BNBM had direct control over Taishan and its subsidiaries, it should be held responsible for their sale of defective drywall.

16.   Defendant, BNBM Group is a foreign corporation doing business in several States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and

Virginia.   Upon information and belief, Defendant, together with its affiliates,

subsidiaries and/or actual or apparent agents, manufactured, sold, distributed,

marketed and placed within the stream of commerce gypsum drywall with the

expectation that the drywall would be purchased by thousands of consumers, if not

more, within various States, including but not limited to, Alabama, California,

Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina,

Tennessee, Texas, and Virginia.   Upon information and belief, Defendant,

together with its affiliates, subsidiaries and/or actual or apparent agents, have

continuously and systematically distributed and sold drywall to numerous

purchasers in the United States and their drywall is installed in numerous structures

in the United States. Defendant, together with its affiliates, subsidiaries and/or

actual or apparent agents, manufactured and sold, directly and indirectly, to certain

suppliers in the United States.

17.   Defendant, CNBM is a foreign corporation doing business in several

States, including but not limited to, Alabama, California, Florida, Georgia,

Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and

Virginia.   Upon information and belief, Defendant, together with its affiliates,

subsidiaries and/or actual or apparent agents, manufactured, sold, distributed,

marketed and placed within the stream of commerce gypsum drywall with the

expectation that the drywall would be purchased by thousands of consumers, if not

more, within various States, including but not limited to, Alabama, California,

Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina,

Tennessee, Texas, and Virginia.   Upon information and belief, Defendant together

with its affiliates, subsidiaries and/or actual or apparent agents, has continuously

and systematically distributed and sold drywall to numerous purchasers in the

United States and their drywall is installed in numerous structures in the United

States. Defendant, together with its affiliates, subsidiaries and/or actual or apparent

agents, manufactured and sold, directly and indirectly, to certain suppliers in the

United States.

18.    The Rule 12(b) Order correctly determined that CNBM is the

controlling shareholder of BNBM.

19.    To the extent any of the foreign defendants are deemed to be foreign

sovereign entities, including but not limited to Taishan, TTP, BNBM, BNBM

Group, and CNBM, Plaintiffs bring their claims against these entities pursuant to

28 U.S.C. 1605(a)(2), the commercial activity exception to the Foreign Sovereign

Immunities Act, or alternatively under 1605(a)(5), the tortious act exception.

Plaintiffs allege that the claims against the foreign defendants are based upon commercial activities carried on in the United States.   The claims also seeks monetary damages against a foreign state for damage to property occurring in the United States, caused by the tortious acts or omissions of that foreign state, or of any official or employee of that foreign state while acting within the scope of his office or employment.

## FACTS REGARDING THE DEFENDANTS

20.   Upon information and belief, CNBM Group, together with its affiliates, subsidiaries and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, CNBM Group, together with its affiliates, subsidiaries and/or actual or apparent agents, has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. CNBM Group, together with its

12

affiliates, subsidiaries and/or actual or apparent agents, manufactured and sold,

directly and indirectly, to certain suppliers in the United States.

21.     The Rule 12(b) Order correctly determined that:

\*       CNBM Group is the controlling shareholder of CNBM and BNBM

Group.

\*       CNBM Group is the controlling shareholder of BNBM and Taishan

         by virtue of its control over CNBM and BNBM Group.

\*       All the Defendants operate as a single-business enterprise that is led

         by CNBM Group.

22.     CNBM Group has exerted high levels of control over its subsidiary

entities, including but not limited to CNBM, BNBM, BNBM Group, Taishan, and

TTP, by virtue of its scheme of appointing overlapping officers and directors of

subsidiary entities, its use of notices and management reports sent to subsidiaries,

its requirement that its direct subsidiaries manage investments in subsidiaries

pursuant to CNBM Group directives, the implementing of policies for conducting

audits, and its requirement that subsidiaries submit various reports.   Many CNBM

Group officers and directors hold positions with BNBM and Taishan.   The

Company culture of CNBM Group establishes a "Parent-subsidiary" company that

is managed and directed strictly from the top down.   For instance, one of CNBM

Group's indirect subsidiary entities, BNBM, owns the majority of Taishan's shares

and has the ability to appoint the majority of Taishan's board of directors.   CNBM

Group controls BNBM by virtue of another CNBM Group subsidiary, CNBM,

which is the parent entity of BNBM.   CNBM Group has exerted day-to-day

control over each of its subsidiary entities and has used its influence to direct

specific activities and to appoint officers and directors that are beholden to CNBM

Group.   Upon information and belief, this influence was exerted with respect to

permitting Taishan and BNBM to market, export, and distribute drywall to the

United States and the decision for Taishan to not appear at Judgment Debtor

proceedings before Judge Fallon in New Orleans.

23.   For instance, at the outset of the MDL 2047, CNBM Group in

conjunction with its controlled subsidiaries, Taishan and BNBM, discussed and

then implemented a deliberate strategy whereby Defendants would not respond to

the litigation and would allow default judgments to be entered against them.

Defendants have also shared lawyers and law firms.   When Taishan finally

responded to this litigation, it did so for the limited purpose of contesting personal

jurisdiction.   When Taishan was unsuccessful in obtaining dismissal on these

14

grounds and lost its appeal to the Fifth Circuit Court of Appeals, it withdrew from the litigation with the approval of its parent entities and was subsequently held in civil and criminal contempt on July 17, 2014.   Following the issuance of this contempt order, CNBM Group directed its subsidiaries to cease depositing funds in New York banks.

## FACTS REGARDING DEFECTIVE DRYWALL

24.     Defendants' drywall is predominately composed of gypsum.

25.     In "defective drywall" (such as that designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed, and/or sold by Defendants herein), sulfur compounds exit the drywall.

26.     The sulfur compounds, including Hydrogen Sulfide, Carbonyl Sulfide, and Carbon Disulfide, exit Defendants' drywall and cause rapid sulfidation and damage to personal property (such as the blackening and break down of air conditioning and refrigerator coils, faucets, utensils, electrical wiring, copper, electronic appliances and other metal surfaces and property).   These compounds are not only harmful to personal property but they are also smelly and irritating to humans and pets.

27.     Although the drywall functions according to its intended purpose as a

15

building component, it is unfit for this purpose due to the damaging side effects and/or because its use is so inconvenient that Plaintiffs would not have purchased their homes had the side effects been disclosed by Defendants.

28.     As a direct and proximate result of Defendants' actions and omissions, Plaintiffs' and the Class Members' structures and personal property have been exposed to Defendants' defective drywall and the harmful effects of the sulfur compounds that exit from Defendants' defective drywall.

29.   Defendants tortiously manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed and/or sold the defective drywall, which was unfit for its intended purpose in that the drywall caused rapid sulfidation and damage to personal property in Plaintiffs' and Class Members' homes, residences or structures.

30.   Defendants recklessly, wantonly, and/or negligently manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed and/or sold the defective drywall at issue in this litigation.

31.   Defendants recklessly, wantonly and/or negligently implemented faulty procedures for purposes of formulating, preparing, testing, and otherwise ensuring the quality and/or character of the defective drywall at issue in this litigation.

16

32.   As a direct and proximate result of Defendants' defective and unfit drywall and the harmful effects of the sulfur compounds that exit these products, Plaintiffs and Class Members have suffered, and continue to suffer economic harm.

33.   As a direct and proximate result of Defendants' defective and unfit drywall and the harmful effects of the sulfur compounds that exit these products, the Plaintiffs and the Class Members have suffered, and continue to suffer damages.   These damages include, but are not limited to, costs of inspection; costs and expenses necessary to remedy, replace and remove the defective drywall and other property that has been impacted; lost value or devaluation of their homes, residences or structures and property as a direct result of damage caused to the property and indirect damage resulting from perceived defects to the property, including stigma damages and loss of use and enjoyment of their home and property.

34.   As a direct and proximate result of Defendants' defective drywall and the harmful effects of the sulfur compounds that exit these products, Plaintiffs and the Class Members have a need for injunctive relief in the form of repair and remediation of their home, rescission of contracts, and the ordering of emergency/corrective notice.

17

## CLASS ACTION ALLEGATIONS

35.   The representative Plaintiffs with claims against the Defendants assert a

class pursuant to Rules 23(a), (b)(1), (b)(2), (b)(3) and/or 23(c)(4) of the Federal

Rules of Civil Procedure, on behalf of themselves and those similarly situated,

against the Defendants.   Plaintiffs define their class as follows:

> All owners and residents (past or present) of real property
> located in the United States containing defective Chinese
> drywall manufactured, sold, distributed, and/or supplied
> by Defendants.

### General Class Allegations and Exclusions from the Class Definitions

36.   The following Persons shall be excluded from the Class: (1)

Defendants and their subsidiaries, affiliates, officers and employees; (2) all Persons

who make a timely election to be excluded from the proposed Class; (3)

governmental entities; and (4) the judge(s) to whom this case is assigned and any

immediate family members thereof.

37.   Upon information and belief, the defective and unreasonably dangerous

drywall in Plaintiffs ''' homes or other structures was installed in at least hundreds

of homes, residences, or other structures owned by Plaintiffs and Class Members.

Therefore, the Class is sufficiently numerous such that the joinder of all members

of the Class in a single action is impracticable.

18

38.   There are numerous common questions of law and fact that predominate over any questions affecting only individual members of the Class. Among these common questions of law and fact are the following:

a.   whether Defendants' drywall products are defective and/or unfit for their intended purpose;

b.   whether Defendants tortuously manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed, and/or sold defective drywall products;

c.   whether Plaintiffs are entitled to recover compensatory, exemplary, incidental, consequential, and/or other damages as a result of Defendants' unlawful and tortious conduct; and

d.   whether Plaintiffs are entitled to recover injunctive and/or equitable relief as a result of Defendants' unlawful and tortious conduct.

39.   The legal claims of named Plaintiffs are typical of the legal claims of other Class Members.   Named Plaintiffs have the same legal interests and need for legal remedies as other Class Members.

40.   Named Plaintiffs are adequate representatives of the Class, together with their legal counsel, each will fairly and adequately protect the interests of Class Members.   Named Plaintiffs have no known conflict with the Class and are committed to the vigorous prosecution of this action.

41.   The undersigned counsel are competent counsel experienced in class action litigation, mass torts, and complex litigation involving harmful products.   Counsel will fairly and adequately protect the interests of the Class.

42.   The various claims asserted in this action are certifiable under the provisions of Federal Rules of Civil Procedure 23(b)(1) because prosecuting separate actions by or against individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party opposing the Class; or adjudications with respect to individual Class members that, as a practical matter, would be dispositive of the interests of the other Class members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

43.   The claims for injunctive relief in this case are certifiable under Fed. R. Civ. P. 23(b)(2).   Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief is appropriate respecting the Class as a whole.

44.   A class action is superior in this case to other methods of dispute resolution.   The Class members have an interest in class adjudication rather than

20

individual adjudication because of their overlapping rights.   It is highly desirable

to concentrate the resolution of these claims in this single forum because it would

be difficult and highly unlikely that the affected Class Members would protect

their rights on their own without this class action case.   Management of the class

will be efficient and far superior to the management of individual lawsuits.

Accordingly, Plaintiffs ▪ legal claims are properly certified pursuant to Rule

23(b)(3).

45.   The issues particularly common to the Class members' claims, some of

which are identified above, are alternatively certifiable pursuant to Fed. R. Civ. P.

23(c)(4), as resolution of these issues would materially advance the litigation, and

class resolution of these issues is superior to repeated litigation of these issues in

separate trials.

## COUNT I
## NEGLIGENCE
### (Against All Defendants)

46.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth

herein.

47.   Defendants owed a duty to Plaintiffs and Class Members to exercise

reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e)

21

distributing, f) delivering, g) supplying, h) inspecting, i) installing, j) marketing, and/or k) selling this drywall, including a duty to adequately warn of their failure to do the same.

48.   Defendants knew or should have known that their wrongful acts and omissions would result in harm and damages in the manner set forth herein.

49.   Defendants breached their duty to exercise reasonable care in the designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, and/or selling this drywall.

50.   Defendants likewise breached their duties to Plaintiffs and Class Members by failing to warn about the defective nature of the drywall. Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the property and bodies of Plaintiffs and Class Members.

51.   Defendants breached their duty to exercise reasonable care to timely remove and/or recall from the market and/or otherwise prevent the continued contact of Plaintiffs and Class Members with the drywall, upon leaning it had been sold in an unreasonably dangerous condition.

52.   Given the defect in the Defendants' drywall, Defendants knew or

22

should have known that their product could, and would, cause harm, and damages

to Plaintiffs and Class Members.

53.   As a direct and proximate result of Defendants' acts and omissions,

Plaintiffs and Class Members were harmed and have incurred damages as

described herein.

## COUNT II
## NEGLIGENCE PER SE
### (Against All Defendants)

54.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth

herein.

55.   Defendants owed statutory duties to Plaintiffs and Class Members to

exercise reasonable care in a) designing, b) manufacturing, c) exporting, d)

importing, e) distributing, f) delivering, g) supplying, h) inspecting, I) marketing,

and/or j) selling this drywall.

56.   Defendants breached their statutory duties to the Plaintiffs and Class

Members by failing to exercise reasonable care in a) designing, b) manufacturing,

c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h)

inspecting, i) marketing, and/or j) selling this drywall.

57.   Defendants likewise breached their statutory duties, including but not

limited to those imposed under the International Building Code ("IBC") and other State and local Building Codes, to Plaintiffs and Class Members by failing to warn about the defective nature of the drywall.   For instance, it is specifically alleged that Defendants furnished the drywall in violation of ASTMC C 1396/C 1396M-069, and its predecessor(s).

58.   Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the property and bodies of Plaintiffs and Class Members.

59.   Given the defective nature of Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm, and damages to Plaintiffs and Class Members.

60.   As a direct and proximate result of Defendants' acts and omissions, Plaintiffs and Class Members were harmed and have incurred damages as described herein.

## COUNT III
## STRICT LIABILITY
### (Against All Defendants)

61.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

24

62.    At all times relevant hereto, Defendants were in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public.

63.    The drywall, including that installed in the homes of Class Members was placed by Defendants in the stream of commerce.

64.    Defendants knew that the subject drywall would be used without inspection by consumers.

65.    Defendants intended that the drywall reach the ultimate consumers, such as Class Members, and it indeed reached Class Members when it was installed in their homes.

66.    When installed in Class Members' homes, the drywall was in substantially the same condition as it was in when Defendants manufactured, sold, and/or delivered it.

67.    At all times relevant hereto the subject drywall was used in a manner consistent with the uses intended by, or known to Defendants, and in accordance with the Defendants' directions and instructions.

68.    The subject drywall was not misused or altered by any third parties.

69.    The Defendants' drywall was improperly manufactured, designed,

25

inspected, tested, marketed, distributed, and sold.

70.    The design impropriety was in designing drywall that allows high levels of sulfur compounds to exit the drywall.

71.    The manufacturing impropriety was in improperly selecting, testing, inspecting, mining, making, assembling, and using, gypsum for drywall with levels of sulfur compounds that were too high and allow high levels of sulfur compounds to exit the drywall.

72.    The drywall was also defective because it was improperly exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold in a unacceptable condition, as described above.

73.    The Defendants' negligence in manufacturing, designing, inspecting, testing, marketing, distributing, and selling of the drywall rendered it unsafe and unreasonably dangerous for its intended use and to Class Members.

74.    The drywall is also defective and unreasonably dangerous because Defendants failed to adequately warn and instruct Class Members of their negligent design, inspection, testing, manufacturing, marketing, and selling of the drywall.

75.    Class Members were unaware of the unreasonably dangerous

propensities and defective condition of the drywall, nor could Class Members,

acting as reasonably prudent people discover that Defendants' drywall was

defective, as set forth herein, or perceive its danger.

76.     Defendants' defective drywall was much more dangerous and harmful

than expected by the average consumer and by Class Members.

77.     Defendants' defective drywall benefit to Class Members, if any, was

greatly outweighed by the risk of harm and danger to them.

78.     The harmful and dangerous propensities of the drywall, as well as

Defendants' failure to adequately warn Class Members of these propensities

rendered the drywall unreasonably dangerous and was the direct and proximate

cause of damages to Class Members.

## COUNT IV
## BREACH OF EXPRESS AND/OR IMPLIED WARRANTIES
### (Against All Defendants)

79.     Plaintiffs adopt and restate the preceding paragraphs as if fully set

forth herein.

80.     Defendants and/or their agents were in privity with Plaintiffs and

Class Members and/or Plaintiffs and Class Members were foreseeable third party

beneficiaries of any warranty.

27

81.    At the times Defendants utilized, supplied, inspected, and/or sold their drywall for use in structures owned by Plaintiffs and Class Members, Defendants knew, or it was reasonably foreseeable, that the drywall would be installed in structures owned by Plaintiffs and Class Members for use as a building material, and expressly or impliedly warranted the product to be fit for that use.

82.    Defendants placed their drywall products into the stream of commerce in a defective condition and these products were expected to, and did, reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

83.    Although the drywall functions according to its intended purpose as a building component, it is unfit, defective as alleged in Paragraph 27 and not merchantable for this purpose due to the damaging side effects and/or because its use is so inconvenient that Plaintiffs would not have purchased their homes had the side effects been disclosed by Defendants.

84.    The Defendants breached their warranty because the drywall was not fit and safe for the particular purposes for which the goods were required (to be installed in structures owned by Plaintiffs and Class Members as a building material) due to the problems set forth herein.

28

85.   Defendants had reasonable and adequate notice of the Plaintiffs' and the Class Members' claims for breach of warranty and failed to cure.

86.   As a direct and proximate result of Defendants' breach of warranties, Plaintiffs and Class Members have incurred harm and damages as described herein.

## COUNT V
### REDHIBITION
**(By Louisiana Class Members Against All Defendants)**

87.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

88.   The drywall manufactured, distributed and/or sold by Defendants was not reasonably fit for its ordinary and intended purpose as alleged in Paragraph 27 above.

89.   Defendants are therefore liable to Louisiana Plaintiffs for all damages reasonable in the premises, in accordance with La. Civ. Code art. 2524.

90.   In addition, or in the alternative, the drywall manufactured, distributed and/or sold by Defendants contained redhibitory defects, in that, at the time of delivery, the propensity to allow sulfur compounds to exit the drywall renders the drywall so useless and/or inconvenient that it must be presumed that Plaintiffs

29

would not have purchased the drywall had they known of the redhibitory defect or defects.

91.     In the alternative, the defects are redhibitory defects in that, while not rendering the drywall totally useless, diminish the drywall's use and/or value to such an extent that it must be presumed that the buyer would have bought it, but for a lesser price.

92.     The Defendants are conclusively presumed to know of the defects in the drywall.

93.     In addition, it is believed and alleged that All Defendants knew of the defects in the drywall at the time the drywall was delivered and/or sold.

94.     Defendants have had numerous opportunities to repair and/or replace the drywall and associated fixtures and/or building components and have failed to do so; in addition, and/or in the alternative, such requests have been, would have been and/or would be futile; Defendants, in addition, or alternatively, had actual knowledge of the problems in the drywall and the need for replacement, remediation and/or repair.

95.     Defendants are therefore liable to all Louisiana Plaintiffs for a return of the purchase price, (with interest from the time it was paid), reimbursement of

30

the reasonable expenses occasioned by the sale and those incurred for the preservation of the drywall and associated items, for damages, and for reasonable attorneys' fees, in accordance with La. Civ. Code art. 2545.

## COUNT VI
## LOUISIANA PRODUCTS LIABILITY ACT
### (By Louisiana Class Members Against All Defendants)

96. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

97. In addition to any and all damages, attorneys' fees and other remedies made available to Louisiana Plaintiffs under the warranty of fitness and/or warranty against redhibitory defects, the Defendants are liable to Louisiana Plaintiffs under the Louisiana Products Liability Act, ("LPLA"), La. R.S. 9:2800.51, *et seq.*

98. Defendants, upon information and belief, expressly warranted that "the gypsumboards manufactured and sold ... are guaranteed to be free from defects in materials and workmanship."

99. The Defendants expressly warranted that "the gypsumboards were manufactured in accordance to ASTM C36."

100. The drywall at issue is, in all cases, unreasonably dangerous by virtue

31

of the unreasonable emission of sulfur compounds which do not in any way contribute to or enhance the utility of the drywall, yet pose a risk to the wiring, plumbing, appliances, personal property, overall economic value of the property and financial security of the owner, and/or the health of the residents of the property.

101.   At all times pertinent and material hereto, there existed alternative feasible manufacturing processes and/or designs of drywall which perform all of the functions and utility of traditional drywall, without allowing unreasonable levels of sulfur compounds to exit the drywall.

102.   At all times pertinent and material hereto, Defendants knew that their drywall was unreasonably dangerous and/or defective as set forth herein.

103.   In the alternative, Defendants should have, at all times pertinent and material hereto, known of the unreasonably dangerous and/or defective characteristics and/or conditions, had they reasonably employed then-existing scientific and/or technical knowledge, reasonable testing, and/or other reasonable and then-accepted methods of quality assurance and/or quality control.

104.   Defendants' drywall is unreasonably dangerous in composition or construction in that, at the time it left Defendant's control, it deviated in a material

32

way from Defendant's own specifications or performance standards.

105.   In addition, and in the alternative, Defendants' drywall is unreasonably dangerous in design, in that, at the time the drywall left Defendant's control, there existed an alternative design for the product that was capable of preventing Plaintiffs' damage, and the likelihood of causing the plaintiffs' damage and the gravity of that harm outweighed the burden (if any) on the Defendant in adopting such alternative design and the adverse effect (if any) on the utility of the drywall.

106.   In addition, and in the alternative, Defendants' drywall is unreasonably dangerous in that it fails to conform to an express warranty about the product which induced the use of the product and caused damage to Plaintiffs to the extent that the warranty was untrue.

107.   In addition, and in the alternative, Defendants' drywall is unreasonably dangerous due to an inadequate warning, in that, at the time the drywall left Defendant's control, the drywall possessed a characteristic that might cause damage and yet Defendant failed to use reasonable care to provide an adequate warning of such characteristics and/or dangers to users and/or handlers of the drywall.

108.   Defendants are therefore liable to Louisiana Plaintiffs for all damages reasonable in the premises.

## COUNT VII
## PRIVATE NUISANCE
### (All Defendants)

109.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

110.   The Defendants' tortious or wrongful acts or omissions have caused sulfur compounds and/or other chemical leaching into structures owned by Plaintiffs and Class Members which has unreasonably interfered, and continues to interfere, with the Plaintiffs' and Class Members' use and enjoyment of their properties and caused them harm and damage as discussed herein.

111.   Defendants' interference has impaired the rights of Plaintiffs' and Class Members' health, comfort, safety, free use of their property, and/or peaceful enjoyment of their property.

112.   Defendants' invasions were intentional and unreasonable, and/or unintentional but otherwise negligent or reckless.

113.   The interference with Plaintiffs' and Class Members' use of their property caused by Defendants is substantial and is ongoing.

34

114.   Defendants' private nuisance was the direct, proximate, and foreseeable cause of Plaintiffs' and Class Members' damages, harm, and loss, which they suffered and will continue to suffer.

115.   As a direct and proximate result of Defendants' creation of a private nuisance, Plaintiffs and Class Members have incurred harm and damages as described herein.

### COUNT VIII
### UNJUST ENRICHMENT
### (Against All Defendants)

116.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

117.   Defendants received money as a result of Plaintiffs' and Class Members' purchases of Defendants' defective drywall, or purchases of structures containing this drywall, either directly or through an agent, and Defendants wrongfully accepted and retained these benefits to the detriment of Plaintiffs and Class Members.

118.   Defendants' acceptance and retention of these benefits under the circumstances make it inequitable and unjust for Defendants to retain the benefit without payment of the value to the Plaintiffs and the Class Members.

35

119.   Defendants, by the deliberate and tortious conduct complained of

herein, have been unjustly enriched in a manner which warrants restitution.

## COUNT IX
### VIOLATION OF CONSUMER PROTECTION ACTS
### (Against All Defendants)

120.   Plaintiffs adopt and restate the preceding paragraphs as if fully set

forth herein.

121.   This is an action for relief under the various Consumer Protection

Acts of the jurisdictions in which affected properties are present, including but not

limited to, L.SA-R.S. 51:1401, *et seq.* (Louisiana Unfair Trade Practices and

Consumer Protection Law); Ala. Code 1975 8-19-1, *et seq.* (Alabama Deceptive

Trade Practices Act); G.S. 75-1.1, *et seq.* (North Carolina Consumer Protection

Act); F.S.    501.201, *et seq.* (Florida Deceptive and Unfair Trade Practices Act);

Va. Code. Ann. 59.1-196, *et seq.* (Virginia Consumer Protection Act); Tex. Bus.

Com. Code Ann. 17.41, *et seq.* (Texas Deceptive Trade Practices-Consumer

Protection Act); Miss. Code Ann. 75-24-1, *et seq.* (Mississippi Consumer

Protection Act); GA ST 10-1-393, *et seq.* (Georgia Consumer Protection Act);   SC

ST 39-5-20, *et seq.* (South Carolina Consumer Protection Act); Tenn. Code Ann.

47-18-104, et seq. (Tennessee Consumer Protection Act).

122.   The Defendants' acts and omissions as well as their failure to use reasonable care in this matter as alleged in this complaint, including but not limited to, the knowing misrepresentation or failure to disclose the source, affiliation, origin, characteristics, ingredients, standards and quality of defective drywall constitute violation of the provisions of the Consumer Protection Acts of the Relevant States.

123.   Plaintiffs and Class Members have suffered actual damages as a result of Defendants' violation of these Consumer Protection Acts and are entitled to relief.

124.   As a direct and proximate result of Defendants' violations of the Consumer Protection Acts of the Relevant States, Plaintiffs and Class Members have incurred harm and damages as described herein.

## COUNT X
## EQUITABLE AND INJUNCTIVE RELIEF
### (Against All Defendants)

125.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

126.   Plaintiffs and the Class Members are without adequate remedy at law, rendering injunctive and other equitable relief appropriate.

127.   Plaintiffs and the Class Members will suffer irreparable harm if the Court does not render the injunctive relief set forth herein, and if defendants are not ordered to recall, buy back, rescind, and/or repair the structures owned by Plaintiffs and Class Members.

128.   Plaintiffs, on behalf of themselves and all others similarly situated, demand injunctive and equitable relief and further, that defendants be ordered to: (1) remediate, repair and/or replace the drywall in Class Members' homes or other structures upon proof by the defendants of the feasibility of such remedy or repair; (2) cease and desist from misrepresenting to the Class and the general public that the drywall is not defective and/or unreasonably dangerous as alleged herein; and (3) institute, at their own cost, a public awareness campaign to alert the Class and general public of the harm and dangers associated with the drywall.

## DEMAND FOR JURY TRIAL

Plaintiffs, individually and on behalf of the Class Members, hereby demand a trial by jury as to all issues so triable as a matter of right.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs, on behalf of themselves and all others similarly situated demand upon Defendants jointly and severally for:

a.      an order certifying the case as a class action;

b.      an order certifying the Class;

c.      an order appointing Plaintiffs as the Class Representatives of

the Class;

d.      an order appointing undersigned counsel and their firms as

counsel for the Class;

e.      compensatory and statutory damages;

f.      punitive damages as allowed by law;

g.      pre and post-judgment interest as allowed by law;

h.      injunctive relief;

I.      an award of attorneys' fees as allowed by law;

j.      an award of taxable costs; and

k.      any and all such further relief as this Court deems just and

proper.

Respectfully submitted,

Dated: August 1, 2017

By:     /s/ Andrea S. Hirsch
        Andrea S. Hirsch, Esquire
        Georgia Bar ID#666557
        Herman Gerel, LLP

39

60 Lenox Pointe
Atlanta, GA 30324
Phone: (404) 880-9500
Fax: (770) 450-9236
ahirsch@hermangerel.com

*Attorneys for Plaintiffs*

## COURT APPOINTED PLAINTIFFS' LIASON AND LEAD COUNSEL IN MDL 2047

Russ M. Herman
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
rherman@hhklawfirm.com

*Plaintiffs' Liaison Counsel MDL 2047*

Arnold Levin
Levin Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
alevin@lfsblaw.com

*Plaintiffs' Lead Counsel MDL 2047*

## COURT APPOINTED PLAINTIFFS' STEERING COMMITTEE IN MDL 2047 - OF COUNSEL TO PLAINTIFFS

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Robert Becnel
Becnel Law Firm, LLC
425 W. Airline Highway, Suite B
Laplace, LA 70068
Phone: (985) 536-1186
Fax: (985) 536-6445
rbecnel@becnellaw.com

40

Peter Prieto
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
pprieto@podhurst.com

Patrick Montoya
Colson, Hicks, Eidson
255 Alhambra Circle, Penthouse
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
patrick@colson.com

Hugh P. Lambert
The Lambert Firm
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@thelambertfirm.com

James Robert Reeves
Reeves & Mestayer, PLLC
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@attorneys4people.com

Bruce William Steckler
Steckler Gresham Cochran
12720 Hillcrest Road, Ste 1045
Dallas, TX 75230
Phone: (972) 387-4040
Fax: (972) 387-4041
bruce@stecklerlaw.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras
Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Christopher Seeger
Seeger Weiss, LLP
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

41

Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5002
dan@wbmllp.com

Richard J. Serpe
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com

Victor M. Diaz, Jr.
V.M. Diaz and Partners, LLC
119 Washington Ave, Suite 402
Miami Beach, FL 33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

**OF COUNSEL TO COURT APPOINTED PLAINTIFFS' STEERING
COMMITTEE IN MDL 2047 - OF COUNSEL TO PLAINTIFFS**

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W, Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax:   (202) 540-7201
rlewis@hausfeldllp.com

Anthony D. Irpino
IRPINO AVIN HAWKINS LAW
FIRM
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Fax: (504) 525-1501
airpino@irpinolaw.com

## COUNSEL FOR INDIVIDUAL PLAINTIFFS ARE SET FORTH ON EXHIBIT "A"

43

Case 1:17-cv-02890-TWT   Document 1-1   Filed 08/01/17   Page 1 of 1

Debra Peoples, et al., individually and on behalf of all others similarly situated v. Taishan Gypsum co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.

Exhibit "A" – Plaintiffs Named in Plaintiffs' Omnibus Class Action Complaint Omni XXII (Georgia Amorin Default)

| Client | Drywall Property | | | | Attorney | Firm | Street Address | City | State | Zip | Phone |
| | Street Address | City | State | Zip | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Spires, Scott | 35 Janie Circle | Nahunta | GA | 31553 | Holly Werkema; Allison Grant | Baron & Budd, P.C./ Allison Grant, P.A. | 3102 Oak Lawn Ave., Ste. 1100 | Dallas | TX | 75219 | 214-521-3605 |
| Peoples, Debra | 1350 Park Brooke Circle | Marietta | GA | 30008 | Russ Herman | Herman, Herman & Katz | 820 O'Keefe | New Orleans | LA | 70113 | 504-581-4892 |
| Bohler, Robert | 1360 Julian Drive | Watkinsville | GA | 30677 | Richard J. Serpe, Esq. | Law Offices of Richard J. Serpe, P.C. | 580 E. Main Street, Suite 310 | Norfolk | VA | 23510 | 757-233-0009 |
| Spencer, Thomas and Virginia | 2481 Lakewood Manor Drive | Athens | GA | 30606 | Richard J. Serpe, Esq. | Law Offices of Richard J. Serpe, P.C. | 580 E. Main Street, Suite 310 | Norfolk | VA | 23510 | 757-233-0009 |
| Davis, Anthony & Alicia | 467 Monroe Tyler Road | Monticello | GA | 31064 | Ben W. Gordon, Jr. | Levin, Papantonio, et al | 316 S. Baylen Street, Ste. 600 | Pensacola | FL | 32507 | 850-435-7000 |
| Brohm, Brian & Tara | 2976 Yellowwood Court | Buford | GA | 30519 | Francisco Albites | Parker Waichman Alonso, LLP | 27300 Riverview Center Blvd, Suite 103 | Bonita Springs | FL | 34134 | (239) 390-1000 |
| Cadet, Yolande | 2832 Springbluff Lane | Buford | GA | 30519 | Francisco Albites | Parker Waichman Alonso, LLP | 27300 Riverview Center Blvd, Suite 103 | Bonita Springs | FL | 34134 | (239) 390-1000 |
| Bray, Andy & Chandra | 141 Dorsey Springs Dr | Hampton | GA | 30228 | Reich, Dennis | Reich and Binstock, LLP | 4265 San Felipe Suite 1000 | Houston | TX | 77027 | 7136227271 |
| Boothe, Nell | 483 Tranquil Drive | Winder | GA | 30680 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Butler, Bernice | 299 Silver Hill Drive | Douglasville | GA | 30135 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Cardinal, Michael and Suyon | 4883 Registry Lane | Kenneth | GA | 30152 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Hersey, Benjamin and Kandice | 6762 Tanglewood Drive | Blackshear | GA | 31516 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Howell, Victor and Loumerdstene | 5275 Sandbar Cove | Winston | GA | 30187 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Walker, Demetra | 485 Tranquil Drive | Winder | GA | 30680 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Wallace, Alonza | 108 Old Folkston Road | Kingsland | GA | 31548 | Daniel Bryson | Whitfield Bryson Mason | 1205 4th Avenue North | Nashville | TN | 37208 | 615-921-6500 |

# Exhibit "5"

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

[handwritten] 2:17cv2161450-JCG

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Donna Polk, et al., individually and on behalf of all others similarly situated

## DEFENDANTS
Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., et al.

**(b)** County of Residence of First Listed Plaintiff   Harrison County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Foreign Corporation
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**

**AUG 01 2017**

ARTHUR JOHNSTON
BY_____DEPUTY

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
James R. Reeves, Jr., Esquire, Reeves & Mestayer, PLLC, 160 Main Street, Biloxi, MS 39530, Phone: (228) 374-5151

Attorneys *(If Known)*
See Attached

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☐ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☒ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☒ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Section 1332(d)(2) and 28 U.S.C. Section 1711, et. seq.
Brief description of cause:
Product liability claims involving Chinese manufactured drywall

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*   JUDGE   Eldon E. Fallon   DOCKET NUMBER   09-MD-2047 (E.D. La.)

DATE
08/01/2017

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

### Defendants' Attorneys

**Attorneys for China National Building Material Co., Ltd., Beijing New Building Materials Public Limited Co. and Beijing New Building Materials Group Co., Ltd.:**

L. Christopher Vejnoska
Orrick, Herrington & Sutcliffe LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105


**Attorneys for Taishan Gypsum Co., Ltd. and Taian Taishan Plasterboard Co., Ltd.:**

Bernard Taylor
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, GA 30309



SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**

AUG 01 2017

ARTHUR JOHNSTON
BY _____ DEPUTY

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

Donna Polk, et al., individually, and on behalf
of all others similarly situated, [ADDITIONAL
PLAINTIFFS LISTED ON EXHIBIT "A"
ATTACHED HERETO],

                Plaintiffs,

v.

Taishan Gypsum Co., Ltd. f/k/a Shandong
Taihe Dongxin Co., Ltd.; Tai'an Taishan
Plasterboard Co., Ltd.; Beijing New Building
Materials Public Limited Co.; Beijing New
Building Materials (Group) Co., Ltd.; China
National Building Material Co., Ltd.

                Defendants.

CASE NO.:

1.17cv 210HSO-JCG

**CLASS ACTION**
**COMPLAINT**

**JURY TRIAL DEMAND**

---

### PLAINTIFFS' OMNIBUS CLASS ACTION COMPLAINT (XXIII)
### (MISSISSIPPI AMORIN DEFAULT)

Pursuant to Fed. R. Civ. P. 23, the class representatives in this action bring suit on behalf

of themselves and all other similarly situated owners and residents of real property containing

defective Chinese manufactured drywall that was designed, manufactured, imported, distributed,

delivered, supplied, marketed, inspected, or sold by the Defendants.

Each of the class representatives is pursuing a nationwide class action against the

defendants with respect to the drywall located in plaintiffs' homes.   Each of the Defendants in

this action, Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd. ("Taishan");

Taian Taishan Plasterboard Co., Ltd. ("TTP"); Beijing New Building Materials Public Limited

1

Co. ("BNBM"); Beijing New Building Materials (Group) Co., Ltd. ("BNBM Group"); China National Building Material Co., Ltd. ("CNBM"), are liable for damages incurred by Plaintiffs due to their role in the design, manufacture, importing, distributing, delivery, supply, marketing, inspecting, installing, or sale of the defective drywall at issue in this litigation.

## JURISDICTION, PARTIES, AND VENUE

1. Original jurisdiction of this Court exists by virtue of 28 U.S.C. §1332(d)(2) and the Class Action Fairness Act ("CAFA"). *See* 28 U.S.C. § 1711, *et. seq.* The Plaintiffs and certain of the Defendants in these actions are citizens of different states and the amounts in controversy in these actions exceed five million dollars ($5,000,000.00), exclusive of interest and costs.

2. Venue in this district satisfies the requirements of 28 U.S.C. §1391(b)(1)-(2) and (c) because Plaintiffs and a significant number of the absent class members reside in this jurisdiction and a substantial amount of the events and occurrences giving rise to these claims occurred in this District, or a substantial part of the property that is the subject of this action is situated in this district.

## PLAINTIFFS

3. For purposes of clarity, the Plaintiffs are asserting claims on behalf of all owners and residents of the subject properties, including but not limited to, minors and other residents of the properties who do not appear herein as named plaintiffs.

4. Unless specifically stated to the contrary on Exhibit "A," all Plaintiffs are citizens of the state where they reside and all entities are citizens of the state where they are organized. For those entities, where the state of organization is not listed, it is asserted upon information and

belief that the entity is incorporated and/or organized in the state of its principal place of business.

5.     Each of the plaintiffs are identified on Exhibit "A," which is incorporated herein by reference.   All of the plaintiffs identified on Exhibit "A" own properties located in the state of Mississippi.   Counsel for each plaintiff are also identified in Exhibits "A."

6.     The Plaintiffs on this complaint have previously asserted claims against Defendants in complaints now pending before the Honorable Eldon E. Fallon in consolidated MDL proceedings in the United States District Court for the Eastern District of Louisiana, in which Defendants have been adjudicated in default.   The instant complaint is being filed as a protective action with respect to the prior filings before the MDL Court.

## DEFENDANTS

7.     Unless specifically stated to the contrary, all individual defendants are citizens of the state where they do business and all entities are citizens of the state where they are organized. For those entities, where the state of organization is not listed, it is asserted upon information and belief that the entity is incorporated and/or organized in the state of its principal place of business.

8.     Defendant Taishan is a foreign corporation doing business in several States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant, together with its affiliates and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within

3

various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Defendant manufactured and sold, directly and indirectly, to certain suppliers in the United States.

9.     Defendant TTP is a foreign corporation doing business in several States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant, together with its affiliates and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States.   Defendant manufactured and sold, directly and indirectly, to certain suppliers in the United States.

10.     Defendant TTP is a wholly owned subsidiary of Defendant Taishan.

11.     During the period when Taishan and its subsidiaries were distributing defective drywall to the United States, these entities consistently misrepresented the drywall they were exporting complied with ISO and ASTM quality standards. For instance, Taishan's website

4

boasted that it was exporting large quantities of drywall to the United States and that its drywall complied with ISO quality standards.   The employees of Taishan and its subsidiaries also sent emails to potential customers boasting about their experience exporting large quantities of drywall to the United States.   These employees also provided false assurances that the drywall they were exporting complied with ASTM quality standards.

12.     Defendant BNBM is a foreign corporation doing business in several States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant, together with its affiliates and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Defendant manufactured and sold, directly and indirectly, to certain suppliers in the United States.

13.     On April 21, 2017, Judge Fallon in MDL 2047 issued an Order and Reasons on Defendants' motions to dismiss pursuant to Fed.R.Civ.P. 12(b) (hereafter "Rule 12(b) Order"). *See* Rec.Doc.No. 20739.   The Rule 12(b) Order correctly determined that:

*     BNBM is the controlling shareholder of Taishan and that Taishan is an agent and alter ego of BNBM.

\*      BNBM is controlled by China National Building Materials Group Co. ("CNBM Group").[1]

\*      BNBM has exercised a high degree of control over Taishan's operational management and its day to day operations.

\*      BNBM has had voting control over Taishan's board since 2005.

\*      BNBM controls Taishan's board and management team.

\*      BNBM audits Taishan and requires that Taishan submit weekly reports.

\*      BNBM must approve certain activities by Taishan including the building of factories and all matters concerning drywall production.

\*      BNBM controls Taishan's financial and strategic business decisions.

\*      Taishan must provide BNBM with a stake in all of its subsidiaries.

\*      BNBM and Taishan share officers, directors, and executives.

\*      Taishan and BNBM also share certain property.

\*      BNBM provides Taishan with loan guarantees.

14.      On October 13, 2015, CNBM publicly announced that BNBM will acquire 100% of Taishan's shares.   BNBM subsequently acquired 100% of Taishan's shares on October 27, 2016.

15.      BMBM consistently exerted control over Taishan and its subsidiaries when these entities were exporting defective drywall to the United States.   For instance, one of BNBM's

---

[1] CNBM Group is not being pursued as a defendant in the instant complaint as CNBM Group has been dismissed as a defendant by Judge Fallon. The order of dismissal is interlocutory and is subject to appeal at a later date.

board members, Tongchun Jia, is the chairman of the board of directors and general manager of Taishan. Mr. Tongchun Jia occupies similar positions with most of Taishan's subsidiaries. Through Mr. Tongchun Jia's positon with Taishan and its subsidiaries, BNBM controls the actions and operations of these entities. Even where Tongchun Jia does not formally hold a position with a Taishan subsidiary, BNBM is able to exert its control over the subsidiary through Mr. Tongchun Jia's influence. For instance, the chairman of the board of TTP, Peng Shi Liang, was also an employee of Taishan. BNBM was thus able to control TTP since the chairman of its board reported directly to Tongchun Jia. Accordingly, since BNBM had direct control over Taishan and its subsidiaries, it should be held responsible for their sale of defective drywall.

16.     Defendant, BNBM Group is a foreign corporation doing business in several States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia. Upon information and belief, Defendant, together with its affiliates, subsidiaries and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia. Upon information and belief, Defendant, together with its affiliates, subsidiaries and/or actual or apparent agents, have continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Defendant, together with its affiliates, subsidiaries and/or actual or apparent agents, manufactured and sold, directly and indirectly, to certain suppliers in the

7

United States.

17.    Defendant, CNBM is a foreign corporation doing business in several States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant, together with its affiliates, subsidiaries and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant together with its affiliates, subsidiaries and/or actual or apparent agents, has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Defendant, together with its affiliates, subsidiaries and/or actual or apparent agents, manufactured and sold, directly and indirectly, to certain suppliers in the United States.

18.    The Rule 12(b) Order correctly determined that CNBM is the controlling shareholder of BNBM.

19.    To the extent any of the foreign defendants are deemed to be foreign sovereign entities, including but not limited to Taishan, TTP, BNBM, BNBM Group, and CNBM, Plaintiffs bring their claims against these entities pursuant to 28 U.S.C. § 1605(a)(2), the commercial activity exception to the Foreign Sovereign Immunities Act, or alternatively under § 1605(a)(5), the tortious act exception.   Plaintiffs allege that the claims against the foreign defendants are based upon commercial activities carried on in the United States.   The claims

8

also seeks monetary damages against a foreign state for damage to property occurring in the United States, caused by the tortious acts or omissions of that foreign state, or of any official or employee of that foreign state while acting within the scope of his office or employment.

### FACTS REGARDING THE DEFENDANTS

20.    Upon information and belief, CNBM Group, together with its affiliates, subsidiaries and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, CNBM Group, together with its affiliates, subsidiaries and/or actual or apparent agents, has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. CNBM Group, together with its affiliates, subsidiaries and/or actual or apparent agents, manufactured and sold, directly and indirectly, to certain suppliers in the United States.

21.    The Rule 12(b) Order correctly determined that:

*    CNBM Group is the controlling shareholder of CNBM and BNBM Group.

*    CNBM Group is the controlling shareholder of BNBM and Taishan by virtue of its control over CNBM and BNBM Group.

*    All the Defendants operate as a single-business enterprise that is led by CNBM Group.

22.    CNBM Group has exerted high levels of control over its subsidiary entities,

9

including but not limited to CNBM, BNBM, BNBM Group, Taishan, and TTP, by virtue of its scheme of appointing overlapping officers and directors of subsidiary entities, its use of notices and management reports sent to subsidiaries, its requirement that its direct subsidiaries manage investments in subsidiaries pursuant to CNBM Group directives, the implementing of policies for conducting audits, and its requirement that subsidiaries submit various reports.   Many CNBM Group officers and directors hold positions with BNBM and Taishan.   The Company culture of CNBM Group establishes a "Parent-subsidiary" company that is managed and directed strictly from the top down.   For instance, one of CNBM Group's indirect subsidiary entities, BNBM, owns the majority of Taishan's shares and has the ability to appoint the majority of Taishan's board of directors.   CNBM Group controls BNBM by virtue of another CNBM Group subsidiary, CNBM, which is the parent entity of BNBM.   CNBM Group has exerted day-to-day control over each of its subsidiary entities and has used its influence to direct specific activities and to appoint officers and directors that are beholden to CNBM Group.   Upon information and belief, this influence was exerted with respect to permitting Taishan and BNBM to market, export, and distribute drywall to the United States and the decision for Taishan to not appear at Judgment Debtor proceedings before Judge Fallon in New Orleans.

23.   For instance, at the outset of the MDL 2047, CNBM Group in conjunction with its controlled subsidiaries, Taishan and BNBM, discussed and then implemented a deliberate strategy whereby Defendants would not respond to the litigation and would allow default judgments to be entered against them.   Defendants have also shared lawyers and law firms. When Taishan finally responded to this litigation, it did so for the limited purpose of contesting personal jurisdiction.   When Taishan was unsuccessful in obtaining dismissal on these grounds

and lost its appeal to the Fifth Circuit Court of Appeals, it withdrew from the litigation with the approval of its parent entities and was subsequently held in civil and criminal contempt on July 17, 2014.   Following the issuance of this contempt order, CNBM Group directed its subsidiaries to cease depositing funds in New York banks.

## FACTS REGARDING DEFECTIVE DRYWALL

24.     Defendants' drywall is predominately composed of gypsum.

25.     In "defective drywall" (such as that designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed, and/or sold by Defendants herein), sulfur compounds exit the drywall.

26.     The sulfur compounds, including Hydrogen Sulfide, Carbonyl Sulfide, and Carbon Disulfide, exit Defendants' drywall and cause rapid sulfidation and damage to personal property (such as the blackening and break down of air conditioning and refrigerator coils, faucets, utensils, electrical wiring, copper, electronic appliances and other metal surfaces and property).   These compounds are not only harmful to personal property but they are also smelly and irritating to humans and pets.

27.     Although the drywall functions according to its intended purpose as a building component, it is unfit for this purpose due to the damaging side effects and/or because its use is so inconvenient that Plaintiffs would not have purchased their homes had the side effects been disclosed by Defendants.

28.     As a direct and proximate result of Defendants' actions and omissions, Plaintiffs' and the Class Members' structures and personal property have been exposed to Defendants' defective drywall and the harmful effects of the sulfur compounds that exit from Defendants'

11

defective drywall.

29. Defendants tortiously manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed and/or sold the defective drywall, which was unfit for its intended purpose in that the drywall caused rapid sulfidation and damage to personal property in Plaintiffs' and Class Members' homes, residences or structures.

30. Defendants recklessly, wantonly, and/or negligently manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed and/or sold the defective drywall at issue in this litigation.

31. Defendants recklessly, wantonly and/or negligently implemented faulty procedures for purposes of formulating, preparing, testing, and otherwise ensuring the quality and/or character of the defective drywall at issue in this litigation.

32. As a direct and proximate result of Defendants' defective and unfit drywall and the harmful effects of the sulfur compounds that exit these products, Plaintiffs and Class Members have suffered, and continue to suffer economic harm.

33. As a direct and proximate result of Defendants' defective and unfit drywall and the harmful effects of the sulfur compounds that exit these products, the Plaintiffs and the Class Members have suffered, and continue to suffer damages.   These damages include, but are not limited to, costs of inspection; costs and expenses necessary to remedy, replace and remove the defective drywall and other property that has been impacted; lost value or devaluation of their homes, residences or structures and property as a direct result of damage caused to the property and indirect damage resulting from perceived defects to the property, including stigma damages and loss of use and enjoyment of their home and property.

12

34.   As a direct and proximate result of Defendants' defective drywall and the harmful effects of the sulfur compounds that exit these products, Plaintiffs and the Class Members have a need for injunctive relief in the form of repair and remediation of their home, rescission of contracts, and the ordering of emergency/corrective notice.

## CLASS ACTION ALLEGATIONS

35.   The representative Plaintiffs with claims against the Defendants assert a class pursuant to Rules 23(a), (b)(1), (b)(2), (b)(3) and/or 23(c)(4) of the Federal Rules of Civil Procedure, on behalf of themselves and those similarly situated, against the Defendants. Plaintiffs define their class as follows:

> All owners and residents (past or present) of real property located in the United States containing defective Chinese drywall manufactured, sold, distributed, and/or supplied by Defendants.

## General Class Allegations and Exclusions from the Class Definitions

36.   The following Persons shall be excluded from the Class: (1) Defendants and their subsidiaries, affiliates, officers and employees; (2) all Persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the judge(s) to whom this case is assigned and any immediate family members thereof.

37.   Upon information and belief, the defective and unreasonably dangerous drywall in Plaintiffs' homes or other structures was installed in at least hundreds of homes, residences, or other structures owned by Plaintiffs and Class Members.   Therefore, the Class is sufficiently numerous such that the joinder of all members of the Class in a single action is impracticable.

38.   There are numerous common questions of law and fact that predominate over any questions affecting only individual members of the Class.   Among these common questions of

law and fact are the following:

> a.     whether Defendants' drywall products are defective and/or unfit for their intended purpose;
>
> b.     whether Defendants tortuously manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed, and/or sold defective drywall products;
>
> c.     whether Plaintiffs are entitled to recover compensatory, exemplary, incidental, consequential, and/or other damages as a result of Defendants' unlawful and tortious conduct; and
>
> d.     whether Plaintiffs are entitled to recover injunctive and/or equitable relief as a result of Defendants' unlawful and tortious conduct.

39.   The legal claims of named Plaintiffs are typical of the legal claims of other Class Members.   Named Plaintiffs have the same legal interests and need for legal remedies as other Class Members.

40.   Named Plaintiffs are adequate representatives of the Class, together with their legal counsel, each will fairly and adequately protect the interests of Class Members.   Named Plaintiffs have no known conflict with the Class and are committed to the vigorous prosecution of this action.

41.   The undersigned counsel are competent counsel experienced in class action litigation, mass torts, and complex litigation involving harmful products.   Counsel will fairly and adequately protect the interests of the Class.

42.   The various claims asserted in this action are certifiable under the provisions of Federal Rules of Civil Procedure 23(b)(1) because prosecuting separate actions by or against individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for

14

the party opposing the Class; or adjudications with respect to individual Class members that, as a practical matter, would be dispositive of the interests of the other Class members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

43.   The claims for injunctive relief in this case are certifiable under Fed. R. Civ. P. 23(b)(2).   Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief is appropriate respecting the Class as a whole.

44.   A class action is superior in this case to other methods of dispute resolution.   The Class members have an interest in class adjudication rather than individual adjudication because of their overlapping rights.   It is highly desirable to concentrate the resolution of these claims in this single forum because it would be difficult and highly unlikely that the affected Class Members would protect their rights on their own without this class action case.   Management of the class will be efficient and far superior to the management of individual lawsuits. Accordingly, Plaintiffs' legal claims are properly certified pursuant to Rule 23(b)(3).

45.   The issues particularly common to the Class members' claims, some of which are identified above, are alternatively certifiable pursuant to Fed. R. Civ. P. 23(c)(4), as resolution of these issues would materially advance the litigation, and class resolution of these issues is superior to repeated litigation of these issues in separate trials.

### COUNT I
### NEGLIGENCE
### (Against All Defendants)

46.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

47.   Defendants owed a duty to Plaintiffs and Class Members to exercise reasonable care

15

in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, i) installing, j) marketing, and/or k) selling this drywall, including a duty to adequately warn of their failure to do the same.

48.   Defendants knew or should have known that their wrongful acts and omissions would result in harm and damages in the manner set forth herein.

49.   Defendants breached their duty to exercise reasonable care in the designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, and/or selling this drywall.

50.   Defendants likewise breached their duties to Plaintiffs and Class Members by failing to warn about the defective nature of the drywall.   Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the property and bodies of Plaintiffs and Class Members.

51.   Defendants breached their duty to exercise reasonable care to timely remove and/or recall from the market and/or otherwise prevent the continued contact of Plaintiffs and Class Members with the drywall, upon leaning it had been sold in an unreasonably dangerous condition.

52.   Given the defect in the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm, and damages to Plaintiffs and Class Members.

53.   As a direct and proximate result of Defendants' acts and omissions, Plaintiffs and Class Members were harmed and have incurred damages as described herein.

16

**COUNT II**
**NEGLIGENCE PER SE**
**(Against All Defendants)**

54.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

55.   Defendants owed statutory duties to Plaintiffs and Class Members to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, I) marketing, and/or j) selling this drywall.

56.   Defendants breached their statutory duties to the Plaintiffs and Class Members by failing to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, i) marketing, and/or j) selling this drywall.

57.   Defendants likewise breached their statutory duties, including but not limited to those imposed under the International Building Code ("IBC") and other State and local Building Codes, to Plaintiffs and Class Members by failing to warn about the defective nature of the drywall.   For instance, it is specifically alleged that Defendants furnished the drywall in violation of ASTMC C 1396/C 1396M-069, and its predecessor(s).

58.   Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the property and bodies of Plaintiffs and Class Members.

59.   Given the defective nature of Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm, and damages to Plaintiffs and Class Members.

60.   As a direct and proximate result of Defendants' acts and omissions, Plaintiffs and

17

Class Members were harmed and have incurred damages as described herein.

**COUNT III**
**STRICT LIABILITY**
**(Against All Defendants)**

61.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

62.     At all times relevant hereto, Defendants were in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public.

63.     The drywall, including that installed in the homes of Class Members was placed by Defendants in the stream of commerce.

64.     Defendants knew that the subject drywall would be used without inspection by consumers.

65.     Defendants intended that the drywall reach the ultimate consumers, such as Class Members, and it indeed reached Class Members when it was installed in their homes.

66.     When installed in Class Members' homes, the drywall was in substantially the same condition as it was in when Defendants manufactured, sold, and/or delivered it.

67.     At all times relevant hereto the subject drywall was used in a manner consistent with the uses intended by, or known to Defendants, and in accordance with the Defendants' directions and instructions.

68.     The subject drywall was not misused or altered by any third parties.

69.     The Defendants' drywall was improperly manufactured, designed, inspected, tested, marketed, distributed, and sold.

70.     The design impropriety was in designing drywall that allows high levels of sulfur compounds to exit the drywall.

18

71.     The manufacturing impropriety was in improperly selecting, testing, inspecting, mining, making, assembling, and using, gypsum for drywall with levels of sulfur compounds that were too high and allow high levels of sulfur compounds to exit the drywall.

72.     The drywall was also defective because it was improperly exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold in a unacceptable condition, as described above.

73.     The Defendants' negligence in manufacturing, designing, inspecting, testing, marketing, distributing, and selling of the drywall rendered it unsafe and unreasonably dangerous for its intended use and to Class Members.

74.     The drywall is also defective and unreasonably dangerous because Defendants failed to adequately warn and instruct Class Members of their negligent design, inspection, testing, manufacturing, marketing, and selling of the drywall.

75.     Class Members were unaware of the unreasonably dangerous propensities and defective condition of the drywall, nor could Class Members, acting as reasonably prudent people discover that Defendants' drywall was defective, as set forth herein, or perceive its danger.

76.     Defendants' defective drywall was much more dangerous and harmful than expected by the average consumer and by Class Members.

77.     Defendants' defective drywall benefit to Class Members, if any, was greatly outweighed by the risk of harm and danger to them.

78.     The harmful and dangerous propensities of the drywall, as well as Defendants' failure to adequately warn Class Members of these propensities rendered the drywall

19

unreasonably dangerous and was the direct and proximate cause of damages to Class Members.

## COUNT IV
## BREACH OF EXPRESS AND/OR IMPLIED WARRANTIES
## (Against All Defendants)

79.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

80.     Defendants and/or their agents were in privity with Plaintiffs and Class Members and/or Plaintiffs and Class Members were foreseeable third party beneficiaries of any warranty.

81.     At the times Defendants utilized, supplied, inspected, and/or sold their drywall for use in structures owned by Plaintiffs and Class Members, Defendants knew, or it was reasonably foreseeable, that the drywall would be installed in structures owned by Plaintiffs and Class Members for use as a building material, and expressly or impliedly warranted the product to be fit for that use.

82.     Defendants placed their drywall products into the stream of commerce in a defective condition and these products were expected to, and did, reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

83.     Although the drywall functions according to its intended purpose as a building component, it is unfit, defective as alleged in Paragraph 27 and not merchantable for this purpose due to the damaging side effects and/or because its use is so inconvenient that Plaintiffs would not have purchased their homes had the side effects been disclosed by Defendants.

84.     The Defendants breached their warranty because the drywall was not fit and safe for the particular purposes for which the goods were required (to be installed in structures owned by Plaintiffs and Class Members as a building material) due to the problems set forth herein.

20

85.     Defendants had reasonable and adequate notice of the Plaintiffs' and the Class Members' claims for breach of warranty and failed to cure.

86.     As a direct and proximate result of Defendants' breach of warranties, Plaintiffs and Class Members have incurred harm and damages as described herein.

**COUNT V**
**REDHIBITION**
**(By Louisiana Class Members Against All Defendants)**

87.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

88.     The drywall manufactured, distributed and/or sold by Defendants was not reasonably fit for its ordinary and intended purpose as alleged in Paragraph 27 above.

89.     Defendants are therefore liable to Louisiana Plaintiffs for all damages reasonable in the premises, in accordance with La. Civ. Code art. 2524.

90.     In addition, or in the alternative, the drywall manufactured, distributed and/or sold by Defendants contained redhibitory defects, in that, at the time of delivery, the propensity to allow sulfur compounds to exit the drywall renders the drywall so useless and/or inconvenient that it must be presumed that Plaintiffs would not have purchased the drywall had they known of the redhibitory defect or defects.

91.     In the alternative, the defects are redhibitory defects in that, while not rendering the drywall totally useless, diminish the drywall's use and/or value to such an extent that it must be presumed that the buyer would have bought it, but for a lesser price.

92.     The Defendants are conclusively presumed to know of the defects in the drywall.

93.     In addition, it is believed and alleged that All Defendants knew of the defects in the drywall at the time the drywall was delivered and/or sold.

21

94.     Defendants have had numerous opportunities to repair and/or replace the drywall and associated fixtures and/or building components and have failed to do so; in addition, and/or in the alternative, such requests have been, would have been and/or would be futile; Defendants, in addition, or alternatively, had actual knowledge of the problems in the drywall and the need for replacement, remediation and/or repair.

95.     Defendants are therefore liable to all Louisiana Plaintiffs for a return of the purchase price, (with interest from the time it was paid), reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the drywall and associated items, for damages, and for reasonable attorneys' fees, in accordance with La. Civ. Code art. 2545.

## COUNT VI
### LOUISIANA PRODUCTS LIABILITY ACT
### (By Louisiana Class Members Against All Defendants)

96.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

97.     In addition to any and all damages, attorneys fees and other remedies made available to Louisiana Plaintiffs under the warranty of fitness and/or warranty against redhibitory defects, the Defendants are liable to Louisiana Plaintiffs under the Louisiana Products Liability Act, ("LPLA"), La. R.S. 9:2800.51, *et seq.*

98.     Defendants, upon information and belief, expressly warranted that "the gypsumboards manufactured and sold ... are guaranteed to be free from defects in materials and workmanship."

99.     The Defendants expressly warranted that "the gypsumboards were manufactured in accordance to ASTM C36."

22

100.    The drywall at issue is, in all cases, unreasonably dangerous by virtue of the unreasonable emission of sulfur compounds which do not in any way contribute to or enhance the utility of the drywall, yet pose a risk to the wiring, plumbing, appliances, personal property, overall economic value of the property and financial security of the owner, and/or the health of the residents of the property.

101.    At all times pertinent and material hereto, there existed alternative feasible manufacturing processes and/or designs of drywall which perform all of the functions and utility of traditional drywall, without allowing unreasonable levels of sulfur compounds to exit the drywall.

102.    At all times pertinent and material hereto, Defendants knew that their drywall was unreasonably dangerous and/or defective as set forth herein.

103.    In the alternative, Defendants should have, at all times pertinent and material hereto, known of the unreasonably dangerous and/or defective characteristics and/or conditions, had they reasonably employed then-existing scientific and/or technical knowledge, reasonable testing, and/or other reasonable and then-accepted methods of quality assurance and/or quality control.

104.    Defendants' drywall is unreasonably dangerous in composition or construction in that, at the time it left Defendant's control, it deviated in a material way from Defendant's own specifications or performance standards.

105.    In addition, and in the alternative, Defendants' drywall is unreasonably dangerous in design, in that, at the time the drywall left Defendant's control, there existed an alternative design for the product that was capable of preventing Plaintiffs' damage, and the likelihood of

23

causing the plaintiffs' damage and the gravity of that harm outweighed the burden (if any) on the Defendant in adopting such alternative design and the adverse effect (if any) on the utility of the drywall.

106.    In addition, and in the alternative, Defendants' drywall is unreasonably dangerous in that it fails to conform to an express warranty about the product which induced the use of the product and caused damage to Plaintiffs to the extent that the warranty was untrue.

107.    In addition, and in the alternative, Defendants' drywall is unreasonably dangerous due to an inadequate warning, in that, at the time the drywall left Defendant's control, the drywall possessed a characteristic that might cause damage and yet Defendant failed to use reasonable care to provide an adequate warning of such characteristics and/or dangers to users and/or handlers of the drywall.

108.    Defendants are therefore liable to Louisiana Plaintiffs for all damages reasonable in the premises.

**COUNT VII**
**PRIVATE NUISANCE**
**(All Defendants)**

109.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

110.    The Defendants' tortious or wrongful acts or omissions have caused sulfur compounds and/or other chemical leaching into structures owned by Plaintiffs and Class Members which has unreasonably interfered, and continues to interfere, with the Plaintiffs' and Class Members' use and enjoyment of their properties and caused them harm and damage as discussed herein.

24

111.   Defendants' interference has impaired the rights of Plaintiffs' and Class Members' health, comfort, safety, free use of their property, and/or peaceful enjoyment of their property.

112.   Defendants' invasions were intentional and unreasonable, and/or unintentional but otherwise negligent or reckless.

113.   The interference with Plaintiffs' and Class Members' use of their property caused by Defendants is substantial and is ongoing.

114.   Defendants' private nuisance was the direct, proximate, and foreseeable cause of Plaintiffs' and Class Members' damages, harm, and loss, which they suffered and will continue to suffer.

115.   As a direct and proximate result of Defendants' creation of a private nuisance, Plaintiffs and Class Members have incurred harm and damages as described herein.

### COUNT VIII
### UNJUST ENRICHMENT
### (Against All Defendants)

116.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

117.   Defendants received money as a result of Plaintiffs' and Class Members' purchases of Defendants' defective drywall, or purchases of structures containing this drywall, either directly or through an agent, and Defendants wrongfully accepted and retained these benefits to the detriment of Plaintiffs and Class Members.

118.   Defendants' acceptance and retention of these benefits under the circumstances make it inequitable and unjust for Defendants to retain the benefit without payment of the value to the Plaintiffs and the Class Members.

119.   Defendants, by the deliberate and tortious conduct complained of herein, have been unjustly enriched in a manner which warrants restitution.

## COUNT IX
### VIOLATION OF CONSUMER PROTECTION ACTS
#### (Against All Defendants)

120.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

121.   This is an action for relief under the various Consumer Protection Acts of the jurisdictions in which affected properties are present, including but not limited to, L.SA-R.S. 51:1401, *et seq.* (Louisiana Unfair Trade Practices and Consumer Protection Law); Ala. Code 1975 § 8-19-1, *et seq.* (Alabama Deceptive Trade Practices Act); G.S. § 75-1.1, *et seq.* (North Carolina Consumer Protection Act); F.S. § 501.201, *et seq.* (Florida Deceptive and Unfair Trade Practices Act); Va. Code. Ann. § 59.1-196, *et seq.* (Virginia Consumer Protection Act); Tex. Bus. Com. Code Ann. § 17.41, *et seq.* (Texas Deceptive Trade Practices-Consumer Protection Act); Miss. Code Ann. § 75-24-1, *et seq.* (Mississippi Consumer Protection Act); GA ST § 10-1-393, *et seq.* (Georgia Consumer Protection Act);   SC ST § 39-5-20, *et seq.* (South Carolina Consumer Protection Act); Tenn. Code Ann. § 47-18-104, et seq. (Tennessee Consumer Protection Act).

122.   The Defendants' acts and omissions as well as their failure to use reasonable care in this matter as alleged in this complaint, including but not limited to, the knowing misrepresentation or failure to disclose the source, affiliation, origin, characteristics, ingredients, standards and quality of defective drywall constitute violation of the provisions of the Consumer Protection Acts of the Relevant States.

26

123.   Plaintiffs and Class Members have suffered actual damages as a result of Defendants' violation of these Consumer Protection Acts and are entitled to relief.

124.   As a direct and proximate result of Defendants' violations of the Consumer Protection Acts of the Relevant States, Plaintiffs and Class Members have incurred harm and damages as described herein.

**COUNT X**
**EQUITABLE AND INJUNCTIVE RELIEF**
**(Against All Defendants)**

125.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

126.   Plaintiffs and the Class Members are without adequate remedy at law, rendering injunctive and other equitable relief appropriate.

127.   Plaintiffs and the Class Members will suffer irreparable harm if the Court does not render the injunctive relief set forth herein, and if defendants are not ordered to recall, buy back, rescind, and/or repair the structures owned by Plaintiffs and Class Members.

128.   Plaintiffs, on behalf of themselves and all others similarly situated, demand injunctive and equitable relief and further, that defendants be ordered to: (1) remediate, repair and/or replace the drywall in Class Members' homes or other structures upon proof by the defendants of the feasibility of such remedy or repair; (2) cease and desist from misrepresenting to the Class and the general public that the drywall is not defective and/or unreasonably dangerous as alleged herein; and (3) institute, at their own cost, a public awareness campaign to alert the Class and general public of the harm and dangers associated with the drywall.

## DEMAND FOR JURY TRIAL

Plaintiffs, individually and on behalf of the Class Members, hereby demand a trial by jury as to all issues so triable as a matter of right.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs, on behalf of themselves and all others similarly situated demand upon Defendants jointly and severally for:

    a.    an order certifying the case as a class action;

    b.    an order certifying the Class;

    c.    an order appointing Plaintiffs as the Class Representatives of the Class;

    d.    an order appointing undersigned counsel and their firms as counsel for the Class;

    e.    compensatory and statutory damages;

    f.    punitive damages as allowed by law;

    g.    pre and post-judgment interest as allowed by law;

    h.    injunctive relief;

    I.    an award of attorneys' fees as allowed by law;

    j.    an award of taxable costs; and

    k.    any and all such further relief as this Court deems just and proper.

Respectfully submitted,

Dated:

By:_____

James R. Reeves, Jr.
Mississippi Bar ID#9519
Reeves & Mestayer, PLLC
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@rmlawcall.com

*Attorneys for Plaintiffs*

**COURT APPOINTED PLAINTIFFS' LIASON AND LEAD COUNSEL IN MDL 2047**

Russ M. Herman
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
rherman@hhklawfirm.com

Arnold Levin
Levin Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
alevin@lfsblaw.com

*Plaintiffs' Liaison Counsel MDL 2047*   *Plaintiffs' Lead Counsel MDL 2047*

**COURT APPOINTED PLAINTIFFS' STEERING
COMMITTEE IN MDL 2047 - OF COUNSEL TO PLAINTIFFS**

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Robert Becnel
Becnel Law Firm, LLC
425 W. Airline Highway, Suite B
Laplace, LA 70068
Phone: (985) 536-1186
Fax: (985) 536-6445
rbecnel@becnellaw.com

29

Peter Prieto
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
pprieto@podhurst.com

Patrick Montoya
Colson, Hicks, Eidson
255 Alhambra Circle, Penthouse
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
patrick@colson.com

Hugh P. Lambert
The Lambert Firm
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@thelambertfirm.com

James Robert Reeves
Reeves & Mestayer, PLLC
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@attorneys4people.com

Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5002
dan@wbmllp.com

Bruce William Steckler
Steckler Gresham Cochran
12720 Hillcrest Road, Ste 1045
Dallas, TX 75230
Phone: (972) 387-4040
Fax: (972) 387-4041
bruce@stecklerlaw.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
  Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
  & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Christopher Seeger
Seeger Weiss, LLP
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Richard J. Serpe
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com

30

Victor M. Diaz, Jr.
V.M. Diaz and Partners, LLC
119 Washington Ave, Suite 402
Miami Beach, FL 33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

**OF COUNSEL TO COURT APPOINTED PLAINTIFFS' STEERING COMMITTEE IN MDL 2047 - OF COUNSEL TO PLAINTIFFS**

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W, Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax:   (202) 540-7201
rlewis@hausfeldllp.com

Anthony D. Irpino
IRPINO AVIN HAWKINS LAW FIRM
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

**COUNSEL FOR INDIVIDUAL PLAINTIFFS ARE SET FORTH ON EXHIBIT "A"**

31

**Donna Polly, et al., individually and on behalf of all others similarly situated v. Taishan Gypsum co., Ltd, f/k/a Shandong Taihe Dongxin Co., Ltd., et al.**

**Exhibit "A" – Plaintiffs' Omnibus Class Action Complaint Omni XXIII (Mississippi Amorin Default)**

| Client | Drywall Property | | | | Attorney | Firm | Street Address | City | State | Zip | Phone |
| | Street Address | City | State | Zip | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Bowden, Charles | 79 Thomas School Road | Lumberton | MS | 39455 | Salvadore Christina, Jr. | Becnel Law Firm, LLC | 425 W. Airline Hwy, Suite B | LaPlace | LA | 70064 | 985-536-1186 |
| Lampton, Alean | 1518 Martin Luther King Drive | Tylertown | MS | 39667 | Joseph Bruno | Bruno & Bruno, LLP | 855 Baronne Street | New Orleans | LA | 70113 | 504-525-1335 |
| Lopez, Joseph and Sherry | 190 Buddy Finch Road | Lucedale | MS | 39452 | Katherine B. Riley; K. Edward Sexton, II | Don Barrett, PA | 404 Court Square North | Lexington | MS | 39095 | 662-834-2488 |
| Strickland, Melody | 18 County Road 315 | Corinth | AL | 38834 | K. Edward Sexton, II | Gentle Turner Sexton & Harbison LLC | 501 Riverchase Parkway E, Suite 100 | Hoover | AL | 35244 | (205)716-3000 |
| Smith Enterprises, Inc. (Erick Smith) | 2507 A & B N. Melody Lane | Corinth | MS | 38834 | K. Edward Sexton, II | Gentle Turner Sexton & Harbison LLC [also submitted on Whitfield Bryson Mason chart] | 501 Riverchase Parkway E, Suite 100 | Hoover | AL | 35244 | (205)716-3000 |
| Polk, Donna | 339 Lang Avenue | Pass Christian | MS | 39571 | George Scott | Seeger Weiss | 1515 Market Street | Philadelphia | PA | 19102 | 215-564-2300 |
| St. Martin Lion's Club c/o | 15900 La Moyne Blvd. | Biloxi | MS | 39532 | Richard Taylor | Taylor Martino, P.C. | 51 St. Joseph Street | Mobile | AL | 36602 | (251) 433-3131 |
| Legere, Michelle | 905 Louis Piernas Drive | Bay St. Louis | MS | 39520 | Hugh P. Lambert; Cayce C. Peterson | The Lambert Firm | 701 Magazine Street | New Orleans | LA | 70130 | 504-581-1750 |
| Wassler, Robert and Barri Butley, Kenneth and Mary | 11643 Bluff Lane | Gulfport | MS | 39503 | Hugh P. Lambert; Cayce C. Peterson | The Lambert Firm | 701 Magazine Street | New Orleans | LA | 70130 | 504-581-1750 |
| Butley, Kenneth and Mary | 1207 Orchard Lane | Corinth | MS | 38834 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Butley, Kenneth and Mary | 1309 Wenasoga Road | Corinth | MS | 38834 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Butler, Kenneth and Mary | 1311 Wenasoga Road | Corinth | MS | 38834 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Dalton, Inc. | 502 A Shiloh Road | Corinth | MS | 38834 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Dalton, Inc. | 502 B Shiloh Road | Corinth | MS | 38834 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Davis, Walter and Melissa | 276 Jessie Smith Road Lucedale, MS 39452 | Lucedale | MS | 39452 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Everett, Michael | 202 Allison Circle | Gulfport | MS | 39503 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Heath, John and Vicky | 47 Greenbriar Drive | Gulfport | MS | 39507 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Johnson, Robert and Elizabeth | 2607 Nina Drive | Picayune | MS | 39466 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Madison, Daniel and Minnie | 15105-A Janus Road | D'Iberville | MS | 39540 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |

*Donna Folly, et al., individually and on behalf of all others similarly situated v. Taishan Gypsum co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*
*Exhibit "A" – Plaintiffs Named in Plaintiffs' Omnibus Class Action Complaint Omni XXIII (Mississippi Amorin Default)*

| Client | Drywall Property Street Address | City | State | Zip | Attorney | Firm | Street Address | City | State | Zip | Phone |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Madison, Daniel and Minnie | 15105-B Janus Road | D'Iberville | MS | 39540 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Maxwell, Richard and Gretchen | 13664 Hidden Oaks Drive | Gulfport | MS | 39503 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| McDonald, Gary and Tricia | 135 Merrill Road | Lucedale | MS | 39452 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| McGinley, Jacob | 23 Hammock Road | Carriere | MS | 39426 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| McMurray, Jason Scott | 47 Monarch Blvd. | Hattiesburg | MS | 39441 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Medley, Walter and Lee | 6316 Porteaux Road | Ocean Springs | MS | 39564 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Norris, Melissa | 721 Hundred Acre Road | Neely | MS | 39461 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Palmer, Sonja | 27 County Road | Corinth | MS | 38834 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Robinson, James and Stephanie | 15 Rebel Lane | Laurel | MS | 39443 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Shiyou, Norman | 6030 Wanda Circle | Kiln | MS | 39556 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Smith Enterprises, Inc. | N. Melody Lane Units 2303 A88 | Corinth | MS | 38834 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Smith Enterprises, Inc. | N. Melody Lane Units 2505 A88 | Corinth | MS | 38834 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Smith, Jerald and Mary Anne | 309 Lemoyne Road | Pass Christian | MS | 39571 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Van Vu, Thanh and Trinh, To Thi | 501 E. North Street | Pass Christian | MS | 39571 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |

# Exhibit "6"

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

1:17CV217LG-RHW

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Lela and Melinda Allen, Individually and on behalf of all others similarly situated

**(b)** County of Residence of First Listed Plaintiff   **Harrison County**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
James R. Reeves, Jr., Reeves & Mestayer, PLLC, 160 Main Street, Biloxi, MS 39530, Phone: (228) 374-5151

## DEFENDANTS
Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., et al.

County of Residence of First Listed Defendant   **Foreign Corporation**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

SOUTHERN DISTRICT OF MISSISSIPPI

**FILED**

**AUG 01 2017**

ARTHUR JOHNSTON

BY _____ DEPUTY

Attorneys *(If Known)*
See Attached

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☐ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☒ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Section 1332(d)(2) and 28 U.S.C. Section 1711, et. seq.
Brief description of cause:
Product liability claims involving Chinese manufactured drywall

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE   Eldon E. Fallon   DOCKET NUMBER   09-MD-2047 (E.D. La.)

DATE
08/01/2017

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## Defendants' Attorneys

**Attorneys for China National Building Material Co., Ltd., Beijing New Building Materials Public Limited Co. and Beijing New Building Materials Group Co., Ltd.:**

L. Christopher Vejnoska
Orrick, Herrington & Sutcliffe LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105


**Attorneys for Taishan Gypsum Co., Ltd. and Taian Taishan Plasterboard Co., Ltd.:**

Bernard Taylor
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, GA 30309



SOUTHERN DISTRICT OF MISSISSIPPI
FILED

AUG 01 2017

ARTHUR JOHNSTON
BY_____DEPUTY

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

Lela and Melina Allen, et al., individually, and
on behalf of all others similarly situated,
[ADDITIONAL PLAINTIFFS LISTED ON
EXHIBIT "A" ATTACHED HERETO],

Plaintiffs,

v.

Taishan Gypsum Co., Ltd. f/k/a Shandong
Taihe Dongxin Co., Ltd.; Tai'an Taishan
Plasterboard Co., Ltd.; Beijing New Building
Materials Public Limited Co.; Beijing New
Building Materials (Group) Co., Ltd.; China
National Building Material Co., Ltd.

Defendants.

CASE NO.:

1:17cv217LG-RHW

CLASS ACTION
COMPLAINT

JURY TRIAL DEMAND

## PLAINTIFFS' OMNIBUS CLASS ACTION COMPLAINT (XXXI)
## (MISSISSIPPI BROOKE)

Pursuant to Fed. R. Civ. P. 23, the class representatives in this action bring suit on behalf

of themselves and all other similarly situated owners and residents of real property containing

defective Chinese manufactured drywall that was designed, manufactured, imported, distributed,

delivered, supplied, marketed, inspected, or sold by the Defendants.

Each of the class representatives is pursuing a nationwide class action against the

defendants with respect to the drywall located in plaintiffs' homes.   Each of the Defendants in

this action, Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd. ("Taishan");

Taian Taishan Plasterboard Co., Ltd. ("TTP"); Beijing New Building Materials Public Limited

1

Co. ("BNBM"); Beijing New Building Materials (Group) Co., Ltd. ("BNBM Group"); China National Building Material Co., Ltd. ("CNBM"), are liable for damages incurred by Plaintiffs due to their role in the design, manufacture, importing, distributing, delivery, supply, marketing, inspecting, installing, or sale of the defective drywall at issue in this litigation.

## JURISDICTION, PARTIES, AND VENUE

1.      Original jurisdiction of this Court exists by virtue of 28 U.S.C. §1332(d)(2) and the Class Action Fairness Act ("CAFA"). *See* 28 U.S.C. § 1711, *et. seq.* The Plaintiffs and certain of the Defendants in these actions are citizens of different states and the amounts in controversy in these actions exceed five million dollars ($5,000,000.00), exclusive of interest and costs.

2.      Venue in this district satisfies the requirements of 28 U.S.C. §1391(b)(1)-(2) and (c) because Plaintiffs and a significant number of the absent class members reside in this jurisdiction and a substantial amount of the events and occurrences giving rise to these claims occurred in this District, or a substantial part of the property that is the subject of this action is situated in this district.

## PLAINTIFFS

3.      For purposes of clarity, the Plaintiffs are asserting claims on behalf of all owners and residents of the subject properties, including but not limited to, minors and other residents of the properties who do not appear herein as named plaintiffs.

4.      The Plaintiffs on this complaint have previously asserted claims against Defendants in complaints now pending before the Honorable Eldon E. Fallon in consolidated MDL proceedings in the United States District Court for the Eastern District of Louisiana. The

2

instant complaint is being filed as a protective action with respect to the prior filings before the MDL Court.

5.      Unless specifically stated to the contrary on Exhibit "A," all Plaintiffs are citizens of the state where they reside and all entities are citizens of the state where they are organized. For those entities, where the state of organization is not listed, it is asserted upon information and belief that the entity is incorporated and/or organized in the state of its principal place of business.

6.      Each of the plaintiffs are identified on Exhibit "A," which is incorporated herein by reference.   All of the plaintiffs identified on Exhibit "A" own properties located in the state of Mississippi.   Counsel for each plaintiff are also identified in Exhibits "A."

## DEFENDANTS

7.      Unless specifically stated to the contrary, all individual defendants are citizens of the state where they do business and all entities are citizens of the state where they are organized. For those entities, where the state of organization is not listed, it is asserted upon information and belief that the entity is incorporated and/or organized in the state of its principal place of business.

8.      Defendant Taishan is a foreign corporation doing business in several States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant, together with its affiliates and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within

3

various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Defendant manufactured and sold, directly and indirectly, to certain suppliers in the United States.

9.      Defendant TTP is a foreign corporation doing business in several States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant, together with its affiliates and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States.   Defendant manufactured and sold, directly and indirectly, to certain suppliers in the United States.

10.      Defendant TTP is a wholly owned subsidiary of Defendant Taishan.

11.      During the period when Taishan and its subsidiaries were distributing defective drywall to the United States, these entities consistently misrepresented the drywall they were exporting complied with ISO and ASTM quality standards. For instance, Taishan's website

4

boasted that it was exporting large quantities of drywall to the United States and that its drywall complied with ISO quality standards. The employees of Taishan and its subsidiaries also sent emails to potential customers boasting about their experience exporting large quantities of drywall to the United States. These employees also provided false assurances that the drywall they were exporting complied with ASTM quality standards.

12.     Defendant BNBM is a foreign corporation doing business in several States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia. Upon information and belief, Defendant, together with its affiliates and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia. Upon information and belief, Defendant has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Defendant manufactured and sold, directly and indirectly, to certain suppliers in the United States.

13.     On April 21, 2017, Judge Fallon in MDL 2047 issued an Order and Reasons on Defendants' motions to dismiss pursuant to Fed.R.Civ.P. 12(b) (hereafter "Rule 12(b) Order"). *See* Rec.Doc.No. 20739. The Rule 12(b) Order correctly determined that:

*      BNBM is the controlling shareholder of Taishan and that Taishan is an agent and alter ego of BNBM.

5

\*      BNBM is controlled by China National Building Materials Group Co. ("CNBM Group").[1]

\*      BNBM has exercised a high degree of control over Taishan's operational management and its day to day operations.

\*      BNBM has had voting control over Taishan's board since 2005.

\*      BNBM controls Taishan's board and management team.

\*      BNBM audits Taishan and requires that Taishan submit weekly reports.

\*      BNBM must approve certain activities by Taishan including the building of factories and all matters concerning drywall production.

\*      BNBM controls Taishan's financial and strategic business decisions.

\*      Taishan must provide BNBM with a stake in all of its subsidiaries.

\*      BNBM and Taishan share officers, directors, and executives.

\*      Taishan and BNBM also share certain property.

\*      BNBM provides Taishan with loan guarantees.

14.      On October 13, 2015, CNBM publicly announced that BNBM will acquire 100% of Taishan's shares.   BNBM subsequently acquired 100% of Taishan's shares on October 27, 2016.

15.      BMBM consistently exerted control over Taishan and its subsidiaries when these entities were exporting defective drywall to the United States.   For instance, one of BNBM's

---

[1] CNBM Group is not being pursued as a defendant in the instant complaint as CNBM Group has been dismissed as a defendant by Judge Fallon. The order of dismissal is interlocutory and is subject to appeal at a later date.

board members, Tongchun Jia, is the chairman of the board of directors and general manager of Taishan.   Mr. Tongchun Jia occupies similar positions with most of Taishan's subsidiaries. Through Mr. Tongchun Jia's positon with Taishan and its subsidiaries, BNBM controls the actions and operations of these entities.   Even where Tongchun Jia does not formally hold a position with a Taishan subsidiary, BNBM is able to exert its control over the subsidiary through Mr. Tongchun Jia's influence.   For instance, the chairman of the board of TTP, Peng Shi Liang, was also an employee of Taishan.   BNBM was thus able to control TTP since the chairman of its board reported directly to Tongchun Jia.   Accordingly, since BNBM had direct control over Taishan and its subsidiaries, it should be held responsible for their sale of defective drywall.

16.   Defendant, BNBM Group is a foreign corporation doing business in several States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant, together with its affiliates, subsidiaries and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant, together with its affiliates, subsidiaries and/or actual or apparent agents, have continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Defendant, together with its affiliates, subsidiaries and/or actual or apparent agents, manufactured and sold, directly and indirectly, to certain suppliers in the

7

United States.

17.     Defendant, CNBM is a foreign corporation doing business in several States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant, together with its affiliates, subsidiaries and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant together with its affiliates, subsidiaries and/or actual or apparent agents, has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Defendant, together with its affiliates, subsidiaries and/or actual or apparent agents, manufactured and sold, directly and indirectly, to certain suppliers in the United States.

18.     The Rule 12(b) Order correctly determined that CNBM is the controlling shareholder of BNBM.

19.     To the extent any of the foreign defendants are deemed to be foreign sovereign entities, including but not limited to Taishan, TTP, BNBM, BNBM Group, and CNBM, Plaintiffs bring their claims against these entities pursuant to 28 U.S.C. § 1605(a)(2), the commercial activity exception to the Foreign Sovereign Immunities Act, or alternatively under § 1605(a)(5), the tortious act exception.   Plaintiffs allege that the claims against the foreign defendants are based upon commercial activities carried on in the United States.   The claims

8

also seeks monetary damages against a foreign state for damage to property occurring in the United States, caused by the tortious acts or omissions of that foreign state, or of any official or employee of that foreign state while acting within the scope of his office or employment.

## FACTS REGARDING THE DEFENDANTS

20.     Upon information and belief, CNBM Group, together with its affiliates, subsidiaries and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, CNBM Group, together with its affiliates, subsidiaries and/or actual or apparent agents, has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. CNBM Group, together with its affiliates, subsidiaries and/or actual or apparent agents, manufactured and sold, directly and indirectly, to certain suppliers in the United States.

21.     The Rule 12(b) Order correctly determined that:

*       CNBM Group is the controlling shareholder of CNBM and BNBM Group.

*       CNBM Group is the controlling shareholder of BNBM and Taishan by virtue of its control over CNBM and BNBM Group.

*       All the Defendants operate as a single-business enterprise that is led by CNBM Group.

22.     CNBM Group has exerted high levels of control over its subsidiary entities,

9

including but not limited to CNBM, BNBM, BNBM Group, Taishan, and TTP, by virtue of its scheme of appointing overlapping officers and directors of subsidiary entities, its use of notices and management reports sent to subsidiaries, its requirement that its direct subsidiaries manage investments in subsidiaries pursuant to CNBM Group directives, the implementing of policies for conducting audits, and its requirement that subsidiaries submit various reports.   Many CNBM Group officers and directors hold positions with BNBM and Taishan.   The Company culture of CNBM Group establishes a "Parent-subsidiary" company that is managed and directed strictly from the top down.   For instance, one of CNBM Group's indirect subsidiary entities, BNBM, owns the majority of Taishan's shares and has the ability to appoint the majority of Taishan's board of directors.   CNBM Group controls BNBM by virtue of another CNBM Group subsidiary, CNBM, which is the parent entity of BNBM.   CNBM Group has exerted day-to-day control over each of its subsidiary entities and has used its influence to direct specific activities and to appoint officers and directors that are beholden to CNBM Group.   Upon information and belief, this influence was exerted with respect to permitting Taishan and BNBM to market, export, and distribute drywall to the United States and the decision for Taishan to not appear at Judgment Debtor proceedings before Judge Fallon in New Orleans.

23.     For instance, at the outset of the MDL 2047, CNBM Group in conjunction with its controlled subsidiaries, Taishan and BNBM, discussed and then implemented a deliberate strategy whereby Defendants would not respond to the litigation and would allow default judgments to be entered against them.   Defendants have also shared lawyers and law firms. When Taishan finally responded to this litigation, it did so for the limited purpose of contesting personal jurisdiction.   When Taishan was unsuccessful in obtaining dismissal on these grounds

10

and lost its appeal to the Fifth Circuit Court of Appeals, it withdrew from the litigation with the approval of its parent entities and was subsequently held in civil and criminal contempt on July 17, 2014.   Following the issuance of this contempt order, CNBM Group directed its subsidiaries to cease depositing funds in New York banks.

## FACTS REGARDING DEFECTIVE DRYWALL

24.     Defendants' drywall is predominately composed of gypsum.

25.     In "defective drywall" (such as that designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed, and/or sold by Defendants herein), sulfur compounds exit the drywall.

26.     The sulfur compounds, including Hydrogen Sulfide, Carbonyl Sulfide, and Carbon Disulfide, exit Defendants' drywall and cause rapid sulfidation and damage to personal property (such as the blackening and break down of air conditioning and refrigerator coils, faucets, utensils, electrical wiring, copper, electronic appliances and other metal surfaces and property).   These compounds are not only harmful to personal property but they are also smelly and irritating to humans and pets.

27.     Although the drywall functions according to its intended purpose as a building component, it is unfit for this purpose due to the damaging side effects and/or because its use is so inconvenient that Plaintiffs would not have purchased their homes had the side effects been disclosed by Defendants.

28.     As a direct and proximate result of Defendants' actions and omissions, Plaintiffs' and the Class Members' structures and personal property have been exposed to Defendants' defective drywall and the harmful effects of the sulfur compounds that exit from Defendants'

11

defective drywall.

29.   Defendants tortiously manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed and/or sold the defective drywall, which was unfit for its intended purpose in that the drywall caused rapid sulfidation and damage to personal property in Plaintiffs' and Class Members' homes, residences or structures.

30.   Defendants recklessly, wantonly, and/or negligently manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed and/or sold the defective drywall at issue in this litigation.

31.   Defendants recklessly, wantonly and/or negligently implemented faulty procedures for purposes of formulating, preparing, testing, and otherwise ensuring the quality and/or character of the defective drywall at issue in this litigation.

32.   As a direct and proximate result of Defendants' defective and unfit drywall and the harmful effects of the sulfur compounds that exit these products, Plaintiffs and Class Members have suffered, and continue to suffer economic harm.

33.   As a direct and proximate result of Defendants' defective and unfit drywall and the harmful effects of the sulfur compounds that exit these products, the Plaintiffs and the Class Members have suffered, and continue to suffer damages.   These damages include, but are not limited to, costs of inspection; costs and expenses necessary to remedy, replace and remove the defective drywall and other property that has been impacted; lost value or devaluation of their homes, residences or structures and property as a direct result of damage caused to the property and indirect damage resulting from perceived defects to the property, including stigma damages and loss of use and enjoyment of their home and property.

12

34.   As a direct and proximate result of Defendants' defective drywall and the harmful effects of the sulfur compounds that exit these products, Plaintiffs and the Class Members have a need for injunctive relief in the form of repair and remediation of their home, rescission of contracts, and the ordering of emergency/corrective notice.

## CLASS ACTION ALLEGATIONS

35.   The representative Plaintiffs with claims against the Defendants assert a class pursuant to Rules 23(a), (b)(1), (b)(2), (b)(3) and/or 23(c)(4) of the Federal Rules of Civil Procedure, on behalf of themselves and those similarly situated, against the Defendants. Plaintiffs define their class as follows:

> All owners and residents (past or present) of real property located in the United States containing defective Chinese drywall manufactured, sold, distributed, and/or supplied by Defendants.

## General Class Allegations and Exclusions from the Class Definitions

36.   The following Persons shall be excluded from the Class: (1) Defendants and their subsidiaries, affiliates, officers and employees; (2) all Persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the judge(s) to whom this case is assigned and any immediate family members thereof.

37.   Upon information and belief, the defective and unreasonably dangerous drywall in Plaintiffs' homes or other structures was installed in at least hundreds of homes, residences, or other structures owned by Plaintiffs and Class Members.   Therefore, the Class is sufficiently numerous such that the joinder of all members of the Class in a single action is impracticable.

38.   There are numerous common questions of law and fact that predominate over any questions affecting only individual members of the Class.   Among these common questions of

13

law and fact are the following:

    a.    whether Defendants' drywall products are defective and/or unfit for their intended purpose;

    b.    whether Defendants tortuously manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed, and/or sold defective drywall products;

    c.    whether Plaintiffs are entitled to recover compensatory, exemplary, incidental, consequential, and/or other damages as a result of Defendants' unlawful and tortious conduct; and

    d.    whether Plaintiffs are entitled to recover injunctive and/or equitable relief as a result of Defendants' unlawful and tortious conduct.

39.   The legal claims of named Plaintiffs are typical of the legal claims of other Class Members.  Named Plaintiffs have the same legal interests and need for legal remedies as other Class Members.

40.   Named Plaintiffs are adequate representatives of the Class, together with their legal counsel, each will fairly and adequately protect the interests of Class Members.  Named Plaintiffs have no known conflict with the Class and are committed to the vigorous prosecution of this action.

41.   The undersigned counsel are competent counsel experienced in class action litigation, mass torts, and complex litigation involving harmful products.  Counsel will fairly and adequately protect the interests of the Class.

42.   The various claims asserted in this action are certifiable under the provisions of Federal Rules of Civil Procedure 23(b)(1) because prosecuting separate actions by or against individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for

14

the party opposing the Class; or adjudications with respect to individual Class members that, as a practical matter, would be dispositive of the interests of the other Class members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

43.   The claims for injunctive relief in this case are certifiable under Fed. R. Civ. P. 23(b)(2).   Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief is appropriate respecting the Class as a whole.

44.   A class action is superior in this case to other methods of dispute resolution.   The Class members have an interest in class adjudication rather than individual adjudication because of their overlapping rights.   It is highly desirable to concentrate the resolution of these claims in this single forum because it would be difficult and highly unlikely that the affected Class Members would protect their rights on their own without this class action case.   Management of the class will be efficient and far superior to the management of individual lawsuits. Accordingly, Plaintiffs' legal claims are properly certified pursuant to Rule 23(b)(3).

45.   The issues particularly common to the Class members' claims, some of which are identified above, are alternatively certifiable pursuant to Fed. R. Civ. P. 23(c)(4), as resolution of these issues would materially advance the litigation, and class resolution of these issues is superior to repeated litigation of these issues in separate trials.

## COUNT I
## NEGLIGENCE
### (Against All Defendants)

46.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

47.   Defendants owed a duty to Plaintiffs and Class Members to exercise reasonable care

15

in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, i) installing, j) marketing, and/or k) selling this drywall, including a duty to adequately warn of their failure to do the same.

48.   Defendants knew or should have known that their wrongful acts and omissions would result in harm and damages in the manner set forth herein.

49.   Defendants breached their duty to exercise reasonable care in the designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, and/or selling this drywall.

50.   Defendants likewise breached their duties to Plaintiffs and Class Members by failing to warn about the defective nature of the drywall.   Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the property and bodies of Plaintiffs and Class Members.

51.   Defendants breached their duty to exercise reasonable care to timely remove and/or recall from the market and/or otherwise prevent the continued contact of Plaintiffs and Class Members with the drywall, upon leaning it had been sold in an unreasonably dangerous condition.

52.   Given the defect in the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm, and damages to Plaintiffs and Class Members.

53.   As a direct and proximate result of Defendants' acts and omissions, Plaintiffs and Class Members were harmed and have incurred damages as described herein.

16

## COUNT II
## NEGLIGENCE PER SE
### (Against All Defendants)

54.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

55.   Defendants owed statutory duties to Plaintiffs and Class Members to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, I) marketing, and/or j) selling this drywall.

56.   Defendants breached their statutory duties to the Plaintiffs and Class Members by failing to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, i) marketing, and/or j) selling this drywall.

57.   Defendants likewise breached their statutory duties, including but not limited to those imposed under the International Building Code ("IBC") and other State and local Building Codes, to Plaintiffs and Class Members by failing to warn about the defective nature of the drywall.   For instance, it is specifically alleged that Defendants furnished the drywall in violation of ASTMC C 1396/C 1396M-069, and its predecessor(s).

58.   Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the property and bodies of Plaintiffs and Class Members.

59.   Given the defective nature of Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm, and damages to Plaintiffs and Class Members.

60.   As a direct and proximate result of Defendants' acts and omissions, Plaintiffs and

17

Class Members were harmed and have incurred damages as described herein.

**COUNT III**
**STRICT LIABILITY**
**(Against All Defendants)**

61.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

62.     At all times relevant hereto, Defendants were in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public.

63.     The drywall, including that installed in the homes of Class Members was placed by Defendants in the stream of commerce.

64.     Defendants knew that the subject drywall would be used without inspection by consumers.

65.     Defendants intended that the drywall reach the ultimate consumers, such as Class Members, and it indeed reached Class Members when it was installed in their homes.

66.     When installed in Class Members' homes, the drywall was in substantially the same condition as it was in when Defendants manufactured, sold, and/or delivered it.

67.     At all times relevant hereto the subject drywall was used in a manner consistent with the uses intended by, or known to Defendants, and in accordance with the Defendants' directions and instructions.

68.     The subject drywall was not misused or altered by any third parties.

69.     The Defendants' drywall was improperly manufactured, designed, inspected, tested, marketed, distributed, and sold.

70.     The design impropriety was in designing drywall that allows high levels of sulfur compounds to exit the drywall.

18

71.   The manufacturing impropriety was in improperly selecting, testing, inspecting, mining, making, assembling, and using, gypsum for drywall with levels of sulfur compounds that were too high and allow high levels of sulfur compounds to exit the drywall.

72.   The drywall was also defective because it was improperly exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold in a unacceptable condition, as described above.

73.   The Defendants' negligence in manufacturing, designing, inspecting, testing, marketing, distributing, and selling of the drywall rendered it unsafe and unreasonably dangerous for its intended use and to Class Members.

74.   The drywall is also defective and unreasonably dangerous because Defendants failed to adequately warn and instruct Class Members of their negligent design, inspection, testing, manufacturing, marketing, and selling of the drywall.

75.   Class Members were unaware of the unreasonably dangerous propensities and defective condition of the drywall, nor could Class Members, acting as reasonably prudent people discover that Defendants' drywall was defective, as set forth herein, or perceive its danger.

76.   Defendants' defective drywall was much more dangerous and harmful than expected by the average consumer and by Class Members.

77.   Defendants' defective drywall benefit to Class Members, if any, was greatly outweighed by the risk of harm and danger to them.

78.   The harmful and dangerous propensities of the drywall, as well as Defendants' failure to adequately warn Class Members of these propensities rendered the drywall

19

unreasonably dangerous and was the direct and proximate cause of damages to Class Members.

## COUNT IV
### BREACH OF EXPRESS AND/OR IMPLIED WARRANTIES
### (Against All Defendants)

79.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

80.     Defendants and/or their agents were in privity with Plaintiffs and Class Members and/or Plaintiffs and Class Members were foreseeable third party beneficiaries of any warranty.

81.     At the times Defendants utilized, supplied, inspected, and/or sold their drywall for use in structures owned by Plaintiffs and Class Members, Defendants knew, or it was reasonably foreseeable, that the drywall would be installed in structures owned by Plaintiffs and Class Members for use as a building material, and expressly or impliedly warranted the product to be fit for that use.

82.     Defendants placed their drywall products into the stream of commerce in a defective condition and these products were expected to, and did, reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

83.     Although the drywall functions according to its intended purpose as a building component, it is unfit, defective as alleged in Paragraph 27 and not merchantable for this purpose due to the damaging side effects and/or because its use is so inconvenient that Plaintiffs would not have purchased their homes had the side effects been disclosed by Defendants.

84.     The Defendants breached their warranty because the drywall was not fit and safe for the particular purposes for which the goods were required (to be installed in structures owned by Plaintiffs and Class Members as a building material) due to the problems set forth herein.

20

85.     Defendants had reasonable and adequate notice of the Plaintiffs' and the Class Members' claims for breach of warranty and failed to cure.

86.     As a direct and proximate result of Defendants' breach of warranties, Plaintiffs and Class Members have incurred harm and damages as described herein.

### COUNT V
### REDHIBITION
### (By Louisiana Class Members Against All Defendants)

87.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

88.     The drywall manufactured, distributed and/or sold by Defendants was not reasonably fit for its ordinary and intended purpose as alleged in Paragraph 27 above.

89.     Defendants are therefore liable to Louisiana Plaintiffs for all damages reasonable in the premises, in accordance with La. Civ. Code art. 2524.

90.     In addition, or in the alternative, the drywall manufactured, distributed and/or sold by Defendants contained redhibitory defects, in that, at the time of delivery, the propensity to allow sulfur compounds to exit the drywall renders the drywall so useless and/or inconvenient that it must be presumed that Plaintiffs would not have purchased the drywall had they known of the redhibitory defect or defects.

91.     In the alternative, the defects are redhibitory defects in that, while not rendering the drywall totally useless, diminish the drywall's use and/or value to such an extent that it must be presumed that the buyer would have bought it, but for a lesser price.

92.     The Defendants are conclusively presumed to know of the defects in the drywall.

93.     In addition, it is believed and alleged that All Defendants knew of the defects in the drywall at the time the drywall was delivered and/or sold.

21

94.     Defendants have had numerous opportunities to repair and/or replace the drywall and associated fixtures and/or building components and have failed to do so; in addition, and/or in the alternative, such requests have been, would have been and/or would be futile; Defendants, in addition, or alternatively, had actual knowledge of the problems in the drywall and the need for replacement, remediation and/or repair.

95.     Defendants are therefore liable to all Louisiana Plaintiffs for a return of the purchase price, (with interest from the time it was paid), reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the drywall and associated items, for damages, and for reasonable attorneys' fees, in accordance with La. Civ. Code art. 2545.

## COUNT VI
### LOUISIANA PRODUCTS LIABILITY ACT
#### (By Louisiana Class Members Against All Defendants)

96.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

97.     In addition to any and all damages, attorneys fees and other remedies made available to Louisiana Plaintiffs under the warranty of fitness and/or warranty against redhibitory defects, the Defendants are liable to Louisiana Plaintiffs under the Louisiana Products Liability Act, ("LPLA"), La. R.S. 9:2800.51, *et seq.*

98.     Defendants, upon information and belief, expressly warranted that "the gypsumboards manufactured and sold ... are guaranteed to be free from defects in materials and workmanship."

99.     The Defendants expressly warranted that "the gypsumboards were manufactured in accordance to ASTM C36."

22

100. The drywall at issue is, in all cases, unreasonably dangerous by virtue of the unreasonable emission of sulfur compounds which do not in any way contribute to or enhance the utility of the drywall, yet pose a risk to the wiring, plumbing, appliances, personal property, overall economic value of the property and financial security of the owner, and/or the health of the residents of the property.

101. At all times pertinent and material hereto, there existed alternative feasible manufacturing processes and/or designs of drywall which perform all of the functions and utility of traditional drywall, without allowing unreasonable levels of sulfur compounds to exit the drywall.

102. At all times pertinent and material hereto, Defendants knew that their drywall was unreasonably dangerous and/or defective as set forth herein.

103. In the alternative, Defendants should have, at all times pertinent and material hereto, known of the unreasonably dangerous and/or defective characteristics and/or conditions, had they reasonably employed then-existing scientific and/or technical knowledge, reasonable testing, and/or other reasonable and then-accepted methods of quality assurance and/or quality control.

104. Defendants' drywall is unreasonably dangerous in composition or construction in that, at the time it left Defendant's control, it deviated in a material way from Defendant's own specifications or performance standards.

105. In addition, and in the alternative, Defendants' drywall is unreasonably dangerous in design, in that, at the time the drywall left Defendant's control, there existed an alternative design for the product that was capable of preventing Plaintiffs' damage, and the likelihood of

23

causing the plaintiffs' damage and the gravity of that harm outweighed the burden (if any) on the

Defendant in adopting such alternative design and the adverse effect (if any) on the utility of the

drywall.

106.    In addition, and in the alternative, Defendants' drywall is unreasonably dangerous

in that it fails to conform to an express warranty about the product which induced the use of the

product and caused damage to Plaintiffs to the extent that the warranty was untrue.

107.    In addition, and in the alternative, Defendants' drywall is unreasonably dangerous

due to an inadequate warning, in that, at the time the drywall left Defendant's control, the

drywall possessed a characteristic that might cause damage and yet Defendant failed to use

reasonable care to provide an adequate warning of such characteristics and/or dangers to users

and/or handlers of the drywall.

108.    Defendants are therefore liable to Louisiana Plaintiffs for all damages reasonable

in the premises.

### COUNT VII
### PRIVATE NUISANCE
### (All Defendants)

109.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

110.    The Defendants' tortious or wrongful acts or omissions have caused sulfur

compounds and/or other chemical leaching into structures owned by Plaintiffs and Class

Members which has unreasonably interfered, and continues to interfere, with the Plaintiffs' and

Class Members' use and enjoyment of their properties and caused them harm and damage as

discussed herein.

111.  Defendants' interference has impaired the rights of Plaintiffs' and Class Members' health, comfort, safety, free use of their property, and/or peaceful enjoyment of their property.

112.  Defendants' invasions were intentional and unreasonable, and/or unintentional but otherwise negligent or reckless.

113.  The interference with Plaintiffs' and Class Members' use of their property caused by Defendants is substantial and is ongoing.

114.  Defendants' private nuisance was the direct, proximate, and foreseeable cause of Plaintiffs' and Class Members' damages, harm, and loss, which they suffered and will continue to suffer.

115.  As a direct and proximate result of Defendants' creation of a private nuisance, Plaintiffs and Class Members have incurred harm and damages as described herein.

### COUNT VIII
### UNJUST ENRICHMENT
### (Against All Defendants)

116.  Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

117.  .Defendants received money as a result of Plaintiffs' and Class Members' purchases of Defendants' defective drywall, or purchases of structures containing this drywall, either directly or through an agent, and Defendants wrongfully accepted and retained these benefits to the detriment of Plaintiffs and Class Members.

118.  Defendants' acceptance and retention of these benefits under the circumstances make it inequitable and unjust for Defendants to retain the benefit without payment of the value to the Plaintiffs and the Class Members.

119.   Defendants, by the deliberate and tortious conduct complained of herein, have been unjustly enriched in a manner which warrants restitution.

## COUNT IX
### VIOLATION OF CONSUMER PROTECTION ACTS
### (Against All Defendants)

120.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

121.   This is an action for relief under the various Consumer Protection Acts of the jurisdictions in which affected properties are present, including but not limited to, L.SA-R.S. 51:1401, *et seq.* (Louisiana Unfair Trade Practices and Consumer Protection Law); Ala. Code 1975 § 8-19-1, *et seq.* (Alabama Deceptive Trade Practices Act); G.S. § 75-1.1, *et seq.* (North Carolina Consumer Protection Act); F.S. § 501.201, *et seq.* (Florida Deceptive and Unfair Trade Practices Act); Va. Code. Ann. § 59.1-196, *et seq.* (Virginia Consumer Protection Act); Tex. Bus. Com. Code Ann. § 17.41, *et seq.* (Texas Deceptive Trade Practices-Consumer Protection Act); Miss. Code Ann. § 75-24-1, *et seq.* (Mississippi Consumer Protection Act); GA ST § 10-1-393, *et seq.* (Georgia Consumer Protection Act);   SC ST § 39-5-20, *et seq.* (South Carolina Consumer Protection Act); Tenn. Code Ann. § 47-18-104, et seq. (Tennessee Consumer Protection Act).

122.   The Defendants' acts and omissions as well as their failure to use reasonable care in this matter as alleged in this complaint, including but not limited to, the knowing misrepresentation or failure to disclose the source, affiliation, origin, characteristics, ingredients, standards and quality of defective drywall constitute violation of the provisions of the Consumer Protection Acts of the Relevant States.

26

123.   Plaintiffs and Class Members have suffered actual damages as a result of Defendants' violation of these Consumer Protection Acts and are entitled to relief.

124.   As a direct and proximate result of Defendants' violations of the Consumer Protection Acts of the Relevant States, Plaintiffs and Class Members have incurred harm and damages as described herein.

## COUNT X
### EQUITABLE AND INJUNCTIVE RELIEF
### (Against All Defendants)

125.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

126.   Plaintiffs and the Class Members are without adequate remedy at law, rendering injunctive and other equitable relief appropriate.

127.   Plaintiffs and the Class Members will suffer irreparable harm if the Court does not render the injunctive relief set forth herein, and if defendants are not ordered to recall, buy back, rescind, and/or repair the structures owned by Plaintiffs and Class Members.

128.   Plaintiffs, on behalf of themselves and all others similarly situated, demand injunctive and equitable relief and further, that defendants be ordered to: (1) remediate, repair and/or replace the drywall in Class Members' homes or other structures upon proof by the defendants of the feasibility of such remedy or repair; (2) cease and desist from misrepresenting to the Class and the general public that the drywall is not defective and/or unreasonably dangerous as alleged herein; and (3) institute, at their own cost, a public awareness campaign to alert the Class and general public of the harm and dangers associated with the drywall.

27

## DEMAND FOR JURY TRIAL

Plaintiffs, individually and on behalf of the Class Members, hereby demand a trial by jury as to all issues so triable as a matter of right.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs, on behalf of themselves and all others similarly situated demand upon Defendants jointly and severally for:

a.   an order certifying the case as a class action;

b.   an order certifying the Class;

c.   an order appointing Plaintiffs as the Class Representatives of the Class;

d.   an order appointing undersigned counsel and their firms as counsel for the Class;

e.   compensatory and statutory damages;

f.   punitive damages as allowed by law;

g.   pre and post-judgment interest as allowed by law;

h.   injunctive relief;

I.   an award of attorneys' fees as allowed by law;

j.   an award of taxable costs; and

k.   any and all such further relief as this Court deems just and proper.

28

Respectfully submitted,

Dated:

By: _____

James R. Reeves, Jr..
Mississippi Bar ID#9519
Reeves & Mestayer, PLLC
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@rmlawcall.com

*Attorneys for Plaintiffs*

## COURT APPOINTED PLAINTIFFS' LIASON AND LEAD COUNSEL IN MDL 2047

Russ M. Herman
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
rherman@hhklawfirm.com

*Plaintiffs' Liaison Counsel MDL 2047*

Arnold Levin
Levin Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
alevin@lfsblaw.com

*Plaintiffs' Lead Counsel MDL 2047*

## COURT APPOINTED PLAINTIFFS' STEERING
## COMMITTEE IN MDL 2047 - OF COUNSEL TO PLAINTIFFS

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Robert Becnel
Becnel Law Firm, LLC
425 W. Airline Highway, Suite B
Laplace, LA 70068
Phone: (985) 536-1186
Fax: (985) 536-6445
rbecnel@becnellaw.com

Peter Prieto
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
pprieto@podhurst.com

Patrick Montoya
Colson, Hicks, Eidson
255 Alhambra Circle, Penthouse
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
patrick@colson.com

Hugh P. Lambert
The Lambert Firm
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@thelambertfirm.com

James Robert Reeves
Reeves & Mestayer, PLLC
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@attorneys4people.com

Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5002
dan@wbmllp.com

Bruce William Steckler
Steckler Gresham Cochran
12720 Hillcrest Road, Ste 1045
Dallas, TX 75230
Phone: (972) 387-4040
Fax: (972) 387-4041
bruce@stecklerlaw.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Christopher Seeger
Seeger Weiss, LLP
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Richard J. Serpe
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com

30

Victor M. Diaz, Jr.
V.M. Diaz and Partners, LLC
119 Washington Ave, Suite 402
Miami Beach, FL 33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

OF COUNSEL TO COURT APPOINTED PLAINTIFFS' STEERING COMMITTEE IN
MDL 2047 - OF COUNSEL TO PLAINTIFFS

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W, Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax:   (202) 540-7201
rlewis@hausfeldllp.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Anthony D. Irpino
IRPINO AVIN HAWKINS LAW FIRM
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

COUNSEL FOR INDIVIDUAL PLAINTIFFS ARE SET FORTH ON EXHIBIT "A"

31

Lula and Melinda Allen, individually and on behalf of all others similarly situated v. Taishan Gypsum co., Ltd. f/k/a Shandong Taihe Duangxin Co., Ltd., et al.
Exhibit "A" – Plaintiffs Named in Plaintiffs' Omnibus Class Action Complaint XXXI (Mississippi Brooke)

| Client | Drywall Property Street Address | City | State | Zip | Attorney | Firm | Street Address | City | State | Zip | Phone |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Lott, Dolly E. and Rodney C. | 2657 Nina Drive | Playayne | MS | 39466 | Jimmy Doyle | Doyle Law Firm | 2100 Southbridge Parkway, Suite 50 | Birmingham | AL | 35209 | 205-533-9500 |
| Merrell, Brandi | 19067 Feston-Dedaux Road | Kiln | MS | 39556 | Jimmy Doyle | Doyle Law Firm | 2100 Southbridge Parkway, Suite 50 | Birmingham | AL | 35209 | 205-533-9500 |
| Roettele, Hue | 103 Edward Avenue | Pass Christian | MS | 39571 | Jimmy Doyle | Doyle Law Firm | 2100 Southbridge Parkway, Suite 50 | Birmingham | AL | 35209 | 205-533-9500 |
| Roettele, Hue | 6147 Beastline Road | Long Beach | MS | 39560 | Jimmy Doyle | Doyle Law Firm | 1100 Poydras St, Suite 2800 | New Orleans | LA | 70163 | 504-522-2304 |
| Bolling, Jeremy and Lacey | 968 Highway 29 | Wiggins | MS | 39577 | Michael Escuyer | Gainsburgh Benjamin | 160 Main Street | Biloxi | MS | 39530 | 228-374-5151 |
| Adams, Francis & Susan | 110 Durbui Road | Waveland | MS | 39576 | Jim Reeves | Reeves & Mestayer | 160 Main Street | Biloxi | MS | 39530 | 228-374-5151 |
| Allen, Lela & Melinda | 5218 Lindsey Avenue | Pass Christian | MS | 39571 | Jim Reeves | Reeves & Mestayer | 160 Main Street | Biloxi | MS | 39530 | 228-374-5151 |
| Bilbo, Chester M. Jr. | 403 Seventh Street | Bay St. Louis | MS | 39520 | Jim Reeves | Reeves & Mestayer | 160 Main Street | Biloxi | MS | 39530 | 228-374-5151 |
| Coster, Mary L. | 97 Harrison Road | Bay St. Louis | MS | 39520 | Jim Reeves | Reeves & Mestayer | 160 Main Street | Biloxi | MS | 39530 | 228-374-5151 |
| Forve, Crystal & John | 5632 Sixth Street | Bay St. Louis | MS | 39520 | Jim Reeves | Reeves & Mestayer | 160 Main Street | Biloxi | MS | 39530 | 228-374-5151 |
| Foxworth, Margie & Billy F | 360 Church Avenue | Pass Christian | MS | 39571 | Jim Reeves | Reeves & Mestayer | 160 Main Street | Biloxi | MS | 39530 | 228-374-5151 |
| Palermo, Merle | 501 Clarence Avenue | Pass Christian | MS | 38863 | Jim Reeves | Reeves & Mestayer | 160 Main Street | Biloxi | MS | 39530 | 228-374-5151 |
| Patterson, Kaye | 93 Isaac Cove | Pontotoc | MS | 39571 | Jim Reeves | Reeves & Mestayer | 160 Main Street | Biloxi | MS | 39530 | 228-374-5151 |
| Smith, Mary Anne | 309 Lemoyne Road | Pass Christian | MS | 39571 | Thomas E. Vaughn | Vaughn & Bowden, PA | 1311 Spring Street, Suite A | Gulfport | MS | 39507 | 228-896-5652 |
| Herbert, Arthur and Gail | 124 Basswood Drive | Pass Christian | MS | 39571 | Daniel Bryson | Whitfield Bryson Mason | 900 W Morgan Street | Raleigh | NC | 27603 | 919-600-5000 |
| Hollifield, Kent and Tiffany | 87 Red Hollifield Road | Laurel | MS | 39443 | | | | | | | |

# Exhibit "7"

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
David and Melody Bright, et al., individually and on behalf of all others similarly situated

## DEFENDANTS
Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., et al.

**(b)** County of Residence of First Listed Plaintiff   Perquimans County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Foreign Corporation
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

J. Michael Malone, Esquire, Hendren, Redwine & Malone, PLLC, 4600 Marriott Drive, Ste. 150, Raleigh, NC  27612; (919) 420-7867

Attorneys *(If Known)*

See Attached

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
　　　Plaintiff

☐ 3   Federal Question
　　　*(U.S. Government Not a Party)*

☐ 2   U.S. Government
　　　Defendant

☒ 4   Diversity
　　　*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*　　　　　　　　　　　　*and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | 　　Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | ☐ 367 Health Care/ Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | 　　Slander | 　　Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | 　　Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☒ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | **IMMIGRATION** | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original Proceeding
☐ 2  Removed from State Court
☐ 3  Remanded from Appellate Court
☐ 4  Reinstated or Reopened
☐ 5  Transferred from Another District *(specify)*
☐ 6  Multidistrict Litigation - Transfer
☐ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Section 1332(d)(2) and 28 U.S.C. Section 1711, et. seq.

Brief description of cause:
Product liability claims invovling Chinese manufactured drywall

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE  Eldon E. Fallon
DOCKET NUMBER  09-MD-2047 (E.D. La.)

DATE

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT #　　　　AMOUNT　　　　APPLYING IFP　　　　JUDGE　　　　MAG. JUDGE

JS 44 Reverse (Rev. 06/17)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a)   **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  (b)   **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  (c)   **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

III.   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.   **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

V.   **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

VI.   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

VII.   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.   **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

## Defendants' Attorneys

**Attorneys for China National Building Material Co., Ltd., Beijing New Building Materials Public Limited Co. and Beijing New Building Materials Group Co., Ltd.:**

L. Christopher Vejnoska
Orrick, Herrington & Sutcliffe LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105


**Attorneys for Taishan Gypsum Co., Ltd. and Taian Taishan Plasterboard Co., Ltd.:**

Bernard Taylor
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, GA 30309

## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### NORTHERN DIVISION

| | |
|---|---|
| David and Melody Bright, et al., individually, and on behalf of all others similarly situated, | CASE NO.: |
| Plaintiffs, | |
| v. | CLASS ACTION COMPLAINT |
| Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd.; Tai'an Taishan Plasterboard Co., Ltd.; Beijing New Building Materials Public Limited Co.; Beijing New Building Materials (Group) Co., Ltd.; China National Building Material Co., Ltd. | JURY TRIAL DEMAND |
| Defendants. | |

_____/

## PLAINTIFFS' OMNIBUS CLASS ACTION COMPLAINT (XXIV) (NORTH CAROLINA AMORIN DEFAULT)

Pursuant to Fed. R. Civ. P. 23, the class representatives in this action bring suit on behalf of themselves and all other similarly situated owners and residents of real property containing defective Chinese manufactured drywall that was designed, manufactured, imported, distributed, delivered, supplied, marketed, inspected, or sold by the Defendants.

Each of the class representatives is pursuing a nationwide class action against the defendants with respect to the drywall located in plaintiffs' homes.  Each of the Defendants in this action, Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd. ("Taishan"); Taian Taishan Plasterboard Co., Ltd. ("TTP"); Beijing New Building Materials Public Limited Co. ("BNBM"); Beijing New Building Materials (Group) Co., Ltd. ("BNBM Group"); China

1

National Building Material Co., Ltd. ("CNBM"), are liable for damages incurred by Plaintiffs

due to their role in the design, manufacture, importing, distributing, delivery, supply, marketing,

inspecting, installing, or sale of the defective drywall at issue in this litigation.

## JURISDICTION, PARTIES, AND VENUE

1.      Original jurisdiction of this Court exists by virtue of 28 U.S.C. §1332(d)(2) and

the Class Action Fairness Act ("CAFA").   *See* 28 U.S.C. § 1711, *et. seq.*   The Plaintiffs and

certain of the Defendants in these actions are citizens of different states and the amounts in

controversy in these actions exceed five million dollars ($5,000,000.00), exclusive of interest and

costs.

2.      Venue in this district satisfies the requirements of 28 U.S.C. §1391(b)(1)-(2) and

(c) because Plaintiffs and a significant number of the absent class members reside in this

jurisdiction and a substantial amount of the events and occurrences giving rise to these claims

occurred in this District, or a substantial part of the property that is the subject of this action is

situated in this district.

## PLAINTIFFS

3.      For purposes of clarity, the Plaintiffs are asserting claims on behalf of all owners

and residents of the subject properties, including but not limited to, minors and other residents of

the properties who do not appear herein as named plaintiffs.

4.      The Plaintiffs on this complaint have previously asserted claims against

Defendants in complaints now pending before the Honorable Eldon E. Fallon in consolidated

MDL proceedings in the United States District Court for the Eastern District of Louisiana, in

which Defendants have been adjudicated in default.   The instant complaint is being filed as a

2

protective action with respect to the prior filings before the MDL Court.

5.     Plaintiffs, David and Melody Bright are citizens of North Carolina and together own real property located at 187 Mulberry Lane, Hertford, North Carolina 27944. Plaintiffs have incurred damages caused by the drywall distributed by Defendants and are participating as class representatives for similarly situated individuals.

6.     Plaintiff, Larry Bazemore is a citizen of North Carolina and owns real property located at 183 Mulberry Lane, Clemmons County, North Carolina 27012. Plaintiff has incurred damages caused by the drywall distributed by Defendants and is participating as class representative for similarly situated individuals.

7.     Plaintiffs, Sidney and Susan Camden are citizens of North Carolina and together own real property located at 109 Algonquin Trail, Shawboro, North Carolina 27973. Plaintiffs have incurred damages caused by the drywall distributed by Defendants and are participating as class representatives for similarly situated individuals.

8.     Plaintiffs, John and Margaret Galanda are citizens of North Carolina and together own real property located at 186 Cedarwood Boulevard, Hertford, North Carolina 27944. Plaintiffs have incurred damages caused by the drywall distributed by Defendants and are participating as class representatives for similarly situated individuals.

9.     Plaintiffs, Sylvia and Curtis Hinkley, Jr. and Stephanie Hinkley-Lopez are citizens of North Carolina and together own real property located at 156 Mulberry Lane, Hertford, North Carolina 27944. Plaintiffs have incurred damages caused by the drywall distributed by Defendants and are participating as class representatives for similarly situated individuals.

3

10.    Plaintiffs, Russell and Judi Renner are citizens of North Carolina and together own real property located at 188 Regency Circle, Moyock, North Carolina 27958.   Plaintiffs have incurred damages caused by the drywall distributed by Defendants and are participating as class representatives for similarly situated individuals.

11.    Plaintiffs, Carter and Barbara Savage are citizens of North Carolina and together own real property located at 106 Shenandoah River Court, Hertford, North Carolina 27944. Plaintiffs have incurred damages caused by the drywall distributed by Defendants and are participating as class representatives for similarly situated individuals.

## DEFENDANTS

12.    Unless specifically stated to the contrary, all individual defendants are citizens of the state where they do business and all entities are citizens of the state where they are organized. For those entities, where the state of organization is not listed, it is asserted upon information and belief that the entity is incorporated and/or organized in the state of its principal place of business.

13.    Defendant Taishan is a foreign corporation doing business in several States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant, together with its affiliates and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information

4

and belief, Defendant has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Defendant manufactured and sold, directly and indirectly, to certain suppliers in the United States.

14.    Defendant TTP is a foreign corporation doing business in several States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant, together with its affiliates and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States.   Defendant manufactured and sold, directly and indirectly, to certain suppliers in the United States.

15.    Defendant TTP is a wholly owned subsidiary of Defendant Taishan.

16.    During the period when Taishan and its subsidiaries were distributing defective drywall to the United States, these entities consistently misrepresented the drywall they were exporting complied with ISO and ASTM quality standards. For instance, Taishan's website boasted that it was exporting large quantities of drywall to the United States and that its drywall complied with ISO quality standards.   The employees of Taishan and its subsidiaries also sent

5

emails to potential customers boasting about their experience exporting large quantities of drywall to the United States. These employees also provided false assurances that the drywall they were exporting complied with ASTM quality standards.

17. Defendant BNBM is a foreign corporation doing business in several States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia. Upon information and belief, Defendant, together with its affiliates and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia. Upon information and belief, Defendant has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Defendant manufactured and sold, directly and indirectly, to certain suppliers in the United States.

18. On April 21, 2017, Judge Fallon in MDL 2047 issued an Order and Reasons on Defendants' motions to dismiss pursuant to Fed.R.Civ.P. 12(b) (hereafter "Rule 12(b) Order"). *See* Rec.Doc.No. 20739. The Rule 12(b) Order correctly determined that:

* BNBM is the controlling shareholder of Taishan and that Taishan is an agent and alter ego of BNBM.

* BNBM is controlled by China National Building Materials Group Co. ("CNBM

6

Group").[1]

* BNBM has exercised a high degree of control over Taishan's operational management and its day to day operations.

* BNBM has had voting control over Taishan's board since 2005.

* BNBM controls Taishan's board and management team.

* BNBM audits Taishan and requires that Taishan submit weekly reports.

* BNBM must approve certain activities by Taishan including the building of factories and all matters concerning drywall production.

* BNBM controls Taishan's financial and strategic business decisions.

* Taishan must provide BNBM with a stake in all of its subsidiaries.

* BNBM and Taishan share officers, directors, and executives.

* Taishan and BNBM also share certain property.

* BNBM provides Taishan with loan guarantees.

19.    On October 13, 2015, CNBM publicly announced that BNBM will acquire 100% of Taishan's shares.   BNBM subsequently acquired 100% of Taishan's shares on October 27, 2016.

20.    BMBM consistently exerted control over Taishan and its subsidiaries when these entities were exporting defective drywall to the United States.   For instance, one of BNBM's board members, Tongchun Jia, is the chairman of the board of directors and general manager of

---

[1] CNBM Group is not being pursued as a defendant in the instant complaint as CNBM Group has been dismissed as a defendant by Judge Fallon. The order of dismissal is interlocutory and is subject to appeal at a later date.

7

Taishan.   Mr. Tongchun Jia occupies similar positions with most of Taishan's subsidiaries. Through Mr. Tongchun Jia's positon with Taishan and its subsidiaries, BNBM controls the actions and operations of these entities.   Even where Tongchun Jia does not formally hold a position with a Taishan subsidiary, BNBM is able to exert its control over the subsidiary through Mr. Tongchun Jia's influence.   For instance, the chairman of the board of TTP, Peng Shi Liang, was also an employee of Taishan.   BNBM was thus able to control TTP since the chairman of its board reported directly to Tongchun Jia.   Accordingly, since BNBM had direct control over Taishan and its subsidiaries, it should be held responsible for their sale of defective drywall.

21.   Defendant, BNBM Group is a foreign corporation doing business in several States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant, together with its affiliates, subsidiaries and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant, together with its affiliates, subsidiaries and/or actual or apparent agents, have continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Defendant, together with its affiliates, subsidiaries and/or actual or apparent agents, manufactured and sold, directly and indirectly, to certain suppliers in the United States.

8

22.     Defendant, CNBM is a foreign corporation doing business in several States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant, together with its affiliates, subsidiaries and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant together with its affiliates, subsidiaries and/or actual or apparent agents, has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Defendant, together with its affiliates, subsidiaries and/or actual or apparent agents, manufactured and sold, directly and indirectly, to certain suppliers in the United States.

23.     The Rule 12(b) Order correctly determined that CNBM is the controlling shareholder of BNBM.

24.     To the extent any of the foreign defendants are deemed to be foreign sovereign entities, including but not limited to Taishan, TTP, BNBM, BNBM Group, and CNBM, Plaintiffs bring their claims against these entities pursuant to 28 U.S.C. § 1605(a)(2), the commercial activity exception to the Foreign Sovereign Immunities Act, or alternatively under § 1605(a)(5), the tortious act exception.   Plaintiffs allege that the claims against the foreign defendants are based upon commercial activities carried on in the United States.   The claims also seeks monetary damages against a foreign state for damage to property occurring in the

9

United States, caused by the tortious acts or omissions of that foreign state, or of any official or employee of that foreign state while acting within the scope of his office or employment.

## FACTS REGARDING THE DEFENDANTS

25.     Upon information and belief, CNBM Group, together with its affiliates, subsidiaries and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, CNBM Group, together with its affiliates, subsidiaries and/or actual or apparent agents, has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. CNBM Group, together with its affiliates, subsidiaries and/or actual or apparent agents, manufactured and sold, directly and indirectly, to certain suppliers in the United States.

26.     The Rule 12(b) Order correctly determined that:

*       CNBM Group is the controlling shareholder of CNBM and BNBM Group.

*       CNBM Group is the controlling shareholder of BNBM and Taishan by virtue of its control over CNBM and BNBM Group.

*       All the Defendants operate as a single-business enterprise that is led by CNBM Group.

27.     CNBM Group has exerted high levels of control over its subsidiary entities, including but not limited to CNBM, BNBM, BNBM Group, Taishan, and TTP, by virtue of its

10

scheme of appointing overlapping officers and directors of subsidiary entities, its use of notices and management reports sent to subsidiaries, its requirement that its direct subsidiaries manage investments in subsidiaries pursuant to CNBM Group directives, the implementing of policies for conducting audits, and its requirement that subsidiaries submit various reports.   Many CNBM Group officers and directors hold positions with BNBM and Taishan.   The Company culture of CNBM Group establishes a "Parent-subsidiary" company that is managed and directed strictly from the top down.   For instance, one of CNBM Group's indirect subsidiary entities, BNBM, owns the majority of Taishan's shares and has the ability to appoint the majority of Taishan's board of directors.   CNBM Group controls BNBM by virtue of another CNBM Group subsidiary, CNBM, which is the parent entity of BNBM.   CNBM Group has exerted day-to-day control over each of its subsidiary entities and has used its influence to direct specific activities and to appoint officers and directors that are beholden to CNBM Group.   Upon information and belief, this influence was exerted with respect to permitting Taishan and BNBM to market, export, and distribute drywall to the United States and the decision for Taishan to not appear at Judgment Debtor proceedings before Judge Fallon in New Orleans.

28.     For instance, at the outset of the MDL 2047, CNBM Group in conjunction with its controlled subsidiaries, Taishan and BNBM, discussed and then implemented a deliberate strategy whereby Defendants would not respond to the litigation and would allow default judgments to be entered against them.   Defendants have also shared lawyers and law firms. When Taishan finally responded to this litigation, it did so for the limited purpose of contesting personal jurisdiction.   When Taishan was unsuccessful in obtaining dismissal on these grounds and lost its appeal to the Fifth Circuit Court of Appeals, it withdrew from the litigation with the

11

approval of its parent entities and was subsequently held in civil and criminal contempt on July 17, 2014.   Following the issuance of this contempt order, CNBM Group directed its subsidiaries to cease depositing funds in New York banks.

## FACTS REGARDING DEFECTIVE DRYWALL

29.     Defendants' drywall is predominately composed of gypsum.

30.     In "defective drywall" (such as that designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed, and/or sold by Defendants herein), sulfur compounds exit the drywall.

31.     The sulfur compounds, including Hydrogen Sulfide, Carbonyl Sulfide, and Carbon Disulfide, exit Defendants' drywall and cause rapid sulfidation and damage to personal property (such as the blackening and break down of air conditioning and refrigerator coils, faucets, utensils, electrical wiring, copper, electronic appliances and other metal surfaces and property).   These compounds are not only harmful to personal property but they are also smelly and irritating to humans and pets.

32.     Although the drywall functions according to its intended purpose as a building component, it is unfit for this purpose due to the damaging side effects and/or because its use is so inconvenient that Plaintiffs would not have purchased their homes had the side effects been disclosed by Defendants.

33.     As a direct and proximate result of Defendants' actions and omissions, Plaintiffs' and the Class Members' structures and personal property have been exposed to Defendants' defective drywall and the harmful effects of the sulfur compounds that exit from Defendants' defective drywall.

12

34.   Defendants tortiously manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed and/or sold the defective drywall, which was unfit for its intended purpose in that the drywall caused rapid sulfidation and damage to personal property in Plaintiffs' and Class Members' homes, residences or structures.

35.   Defendants recklessly, wantonly, and/or negligently manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed and/or sold the defective drywall at issue in this litigation.

36.   Defendants recklessly, wantonly and/or negligently implemented faulty procedures for purposes of formulating, preparing, testing, and otherwise ensuring the quality and/or character of the defective drywall at issue in this litigation.

37.   As a direct and proximate result of Defendants' defective and unfit drywall and the harmful effects of the sulfur compounds that exit these products, Plaintiffs and Class Members have suffered, and continue to suffer economic harm.

38.   As a direct and proximate result of Defendants' defective and unfit drywall and the harmful effects of the sulfur compounds that exit these products, the Plaintiffs and the Class Members have suffered, and continue to suffer damages.   These damages include, but are not limited to, costs of inspection; costs and expenses necessary to remedy, replace and remove the defective drywall and other property that has been impacted; lost value or devaluation of their homes, residences or structures and property as a direct result of damage caused to the property and indirect damage resulting from perceived defects to the property, including stigma damages and loss of use and enjoyment of their home and property.

39.   As a direct and proximate result of Defendants' defective drywall and the harmful

13

effects of the sulfur compounds that exit these products, Plaintiffs and the Class Members have a need for injunctive relief in the form of repair and remediation of their home, rescission of contracts, and the ordering of emergency/corrective notice.

## CLASS ACTION ALLEGATIONS

40.   The representative Plaintiffs with claims against the Defendants assert a class pursuant to Rules 23(a), (b)(1), (b)(2), (b)(3) and/or 23(c)(4) of the Federal Rules of Civil Procedure, on behalf of themselves and those similarly situated, against the Defendants. Plaintiffs define their class as follows:

> All owners and residents (past or present) of real property located in the United States containing defective Chinese drywall manufactured, sold, distributed, and/or supplied by Defendants.

### General Class Allegations and Exclusions from the Class Definitions

41.   The following Persons shall be excluded from the Class: (1) Defendants and their subsidiaries, affiliates, officers and employees; (2) all Persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the judge(s) to whom this case is assigned and any immediate family members thereof.

42.   Upon information and belief, the defective and unreasonably dangerous drywall in Plaintiffs' homes or other structures was installed in at least hundreds of homes, residences, or other structures owned by Plaintiffs and Class Members.   Therefore, the Class is sufficiently numerous such that the joinder of all members of the Class in a single action is impracticable.

43.   There are numerous common questions of law and fact that predominate over any questions affecting only individual members of the Class.   Among these common questions of law and fact are the following:

14

a.       whether Defendants' drywall products are defective and/or unfit for their intended purpose;

b.       whether Defendants tortuously manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed, and/or sold defective drywall products;

c.       whether Plaintiffs are entitled to recover compensatory, exemplary, incidental, consequential, and/or other damages as a result of Defendants' unlawful and tortious conduct; and

d.       whether Plaintiffs are entitled to recover injunctive and/or equitable relief as a result of Defendants' unlawful and tortious conduct.

44.   The legal claims of named Plaintiffs are typical of the legal claims of other Class Members.   Named Plaintiffs have the same legal interests and need for legal remedies as other Class Members.

45.   Named Plaintiffs are adequate representatives of the Class, together with their legal counsel, each will fairly and adequately protect the interests of Class Members.   Named Plaintiffs have no known conflict with the Class and are committed to the vigorous prosecution of this action.

46.   The undersigned counsel are competent counsel experienced in class action litigation, mass torts, and complex litigation involving harmful products.   Counsel will fairly and adequately protect the interests of the Class.

47.   The various claims asserted in this action are certifiable under the provisions of Federal Rules of Civil Procedure 23(b)(1) because prosecuting separate actions by or against individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party opposing the Class; or adjudications with respect to individual Class members that, as a

15

practical matter, would be dispositive of the interests of the other Class members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

48. The claims for injunctive relief in this case are certifiable under Fed. R. Civ. P. 23(b)(2). Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief is appropriate respecting the Class as a whole.

49. A class action is superior in this case to other methods of dispute resolution. The Class members have an interest in class adjudication rather than individual adjudication because of their overlapping rights. It is highly desirable to concentrate the resolution of these claims in this single forum because it would be difficult and highly unlikely that the affected Class Members would protect their rights on their own without this class action case. Management of the class will be efficient and far superior to the management of individual lawsuits. Accordingly, Plaintiffs' legal claims are properly certified pursuant to Rule 23(b)(3).

50. The issues particularly common to the Class members' claims, some of which are identified above, are alternatively certifiable pursuant to Fed. R. Civ. P. 23(c)(4), as resolution of these issues would materially advance the litigation, and class resolution of these issues is superior to repeated litigation of these issues in separate trials.

**COUNT I**
**NEGLIGENCE**
**(Against All Defendants)**

51. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

52. Defendants owed a duty to Plaintiffs and Class Members to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g)

16

supplying, h) inspecting, i) installing, j) marketing, and/or k) selling this drywall, including a duty to adequately warn of their failure to do the same.

53.   Defendants knew or should have known that their wrongful acts and omissions would result in harm and damages in the manner set forth herein.

54.   Defendants breached their duty to exercise reasonable care in the designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, and/or selling this drywall.

55.   Defendants likewise breached their duties to Plaintiffs and Class Members by failing to warn about the defective nature of the drywall.   Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the property and bodies of Plaintiffs and Class Members.

56.   Defendants breached their duty to exercise reasonable care to timely remove and/or recall from the market and/or otherwise prevent the continued contact of Plaintiffs and Class Members with the drywall, upon leaning it had been sold in an unreasonably dangerous condition.

57.   Given the defect in the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm, and damages to Plaintiffs and Class Members.

58.   As a direct and proximate result of Defendants' acts and omissions, Plaintiffs and Class Members were harmed and have incurred damages as described herein.

17

**COUNT II**
**NEGLIGENCE PER SE**
**(Against All Defendants)**

59.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

60.    Defendants owed statutory duties to Plaintiffs and Class Members to exercise

reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f)

delivering, g) supplying, h) inspecting, I) marketing, and/or j) selling this drywall.

61.    Defendants breached their statutory duties to the Plaintiffs and Class Members by

failing to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing,

e) distributing, f) delivering, g) supplying, h) inspecting, i) marketing, and/or j) selling this

drywall.

62.    Defendants likewise breached their statutory duties, including but not limited to

those imposed under the International Building Code ("IBC") and other State and local Building

Codes, to Plaintiffs and Class Members by failing to warn about the defective nature of the

drywall.   For instance, it is specifically alleged that Defendants furnished the drywall in

violation of ASTMC C 1396/C 1396M-069, and its predecessor(s).

63.    Defendants, through the exercise of reasonable care, knew or should have known the

nature of the defective drywall and the adverse effects that it could have on the property and

bodies of Plaintiffs and Class Members.

64.    Given the defective nature of Defendants' drywall, Defendants knew or should have

known that their product could, and would, cause harm, and damages to Plaintiffs and Class

Members.

65.    As a direct and proximate result of Defendants' acts and omissions, Plaintiffs and

18

Class Members were harmed and have incurred damages as described herein.

## COUNT III
### STRICT LIABILITY
### (Against All Defendants)

66.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

67.     At all times relevant hereto, Defendants were in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public.

68.     The drywall, including that installed in the homes of Class Members was placed by Defendants in the stream of commerce.

69.     Defendants knew that the subject drywall would be used without inspection by consumers.

70.     Defendants intended that the drywall reach the ultimate consumers, such as Class Members, and it indeed reached Class Members when it was installed in their homes.

71.     When installed in Class Members' homes, the drywall was in substantially the same condition as it was in when Defendants manufactured, sold, and/or delivered it.

72.     At all times relevant hereto the subject drywall was used in a manner consistent with the uses intended by, or known to Defendants, and in accordance with the Defendants' directions and instructions.

73.     The subject drywall was not misused or altered by any third parties.

74.     The Defendants' drywall was improperly manufactured, designed, inspected, tested, marketed, distributed, and sold.

75.     The design impropriety was in designing drywall that allows high levels of sulfur compounds to exit the drywall.

19

76.     The manufacturing impropriety was in improperly selecting, testing, inspecting, mining, making, assembling, and using, gypsum for drywall with levels of sulfur compounds that were too high and allow high levels of sulfur compounds to exit the drywall.

77.     The drywall was also defective because it was improperly exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold in a unacceptable condition, as described above.

78.     The Defendants' negligence in manufacturing, designing, inspecting, testing, marketing, distributing, and selling of the drywall rendered it unsafe and unreasonably dangerous for its intended use and to Class Members.

79.     The drywall is also defective and unreasonably dangerous because Defendants failed to adequately warn and instruct Class Members of their negligent design, inspection, testing, manufacturing, marketing, and selling of the drywall.

80.     Class Members were unaware of the unreasonably dangerous propensities and defective condition of the drywall, nor could Class Members, acting as reasonably prudent people discover that Defendants' drywall was defective, as set forth herein, or perceive its danger.

81.     Defendants' defective drywall was much more dangerous and harmful than expected by the average consumer and by Class Members.

82.     Defendants' defective drywall benefit to Class Members, if any, was greatly outweighed by the risk of harm and danger to them.

83.     The harmful and dangerous propensities of the drywall, as well as Defendants' failure to adequately warn Class Members of these propensities rendered the drywall

20

unreasonably dangerous and was the direct and proximate cause of damages to Class Members.

## COUNT IV
## BREACH OF EXPRESS AND/OR IMPLIED WARRANTIES
### (Against All Defendants)

84.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

85.     Defendants and/or their agents were in privity with Plaintiffs and Class Members and/or Plaintiffs and Class Members were foreseeable third party beneficiaries of any warranty.

86.     At the times Defendants utilized, supplied, inspected, and/or sold their drywall for use in structures owned by Plaintiffs and Class Members, Defendants knew, or it was reasonably foreseeable, that the drywall would be installed in structures owned by Plaintiffs and Class Members for use as a building material, and expressly or impliedly warranted the product to be fit for that use.

87.     Defendants placed their drywall products into the stream of commerce in a defective condition and these products were expected to, and did, reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

88.     Although the drywall functions according to its intended purpose as a building component, it is unfit, defective as alleged in Paragraph 32 and not merchantable for this purpose due to the damaging side effects and/or because its use is so inconvenient that Plaintiffs would not have purchased their homes had the side effects been disclosed by Defendants.

89.     The Defendants breached their warranty because the drywall was not fit and safe for the particular purposes for which the goods were required (to be installed in structures owned by Plaintiffs and Class Members as a building material) due to the problems set forth herein.

21

90.     Defendants had reasonable and adequate notice of the Plaintiffs' and the Class Members' claims for breach of warranty and failed to cure.

91.     As a direct and proximate result of Defendants' breach of warranties, Plaintiffs and Class Members have incurred harm and damages as described herein.

## COUNT V
## REDHIBITION
### (By Louisiana Class Members Against All Defendants)

92.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

93.     The drywall manufactured, distributed and/or sold by Defendants was not reasonably fit for its ordinary and intended purpose as alleged in Paragraph 32 above.

94.     Defendants are therefore liable to Louisiana Plaintiffs for all damages reasonable in the premises, in accordance with La. Civ. Code art. 2524.

95.     In addition, or in the alternative, the drywall manufactured, distributed and/or sold by Defendants contained redhibitory defects, in that, at the time of delivery, the propensity to allow sulfur compounds to exit the drywall renders the drywall so useless and/or inconvenient that it must be presumed that Plaintiffs would not have purchased the drywall had they known of the redhibitory defect or defects.

96.     In the alternative, the defects are redhibitory defects in that, while not rendering the drywall totally useless, diminish the drywall's use and/or value to such an extent that it must be presumed that the buyer would have bought it, but for a lesser price.

97.     The Defendants are conclusively presumed to know of the defects in the drywall.

98.     In addition, it is believed and alleged that All Defendants knew of the defects in the drywall at the time the drywall was delivered and/or sold.

22

99.     Defendants have had numerous opportunities to repair and/or replace the drywall and associated fixtures and/or building components and have failed to do so; in addition, and/or in the alternative, such requests have been, would have been and/or would be futile; Defendants, in addition, or alternatively, had actual knowledge of the problems in the drywall and the need for replacement, remediation and/or repair.

100.    Defendants are therefore liable to all Louisiana Plaintiffs for a return of the purchase price, (with interest from the time it was paid), reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the drywall and associated items, for damages, and for reasonable attorneys' fees, in accordance with La. Civ. Code art. 2545.

### COUNT VI
### LOUISIANA PRODUCTS LIABILITY ACT
**(By Louisiana Class Members Against All Defendants)**

101.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

102.    In addition to any and all damages, attorneys fees and other remedies made available to Louisiana Plaintiffs under the warranty of fitness and/or warranty against redhibitory defects, the Defendants are liable to Louisiana Plaintiffs under the Louisiana Products Liability Act, ("LPLA"), La. R.S. 9:2800.51, *et seq.*

103.    Defendants, upon information and belief, expressly warranted that "the gypsumboards manufactured and sold ... are guaranteed to be free from defects in materials and workmanship."

104.    The Defendants expressly warranted that "the gypsumboards were manufactured in accordance to ASTM C36."

23

105.    The drywall at issue is, in all cases, unreasonably dangerous by virtue of the unreasonable emission of sulfur compounds which do not in any way contribute to or enhance the utility of the drywall, yet pose a risk to the wiring, plumbing, appliances, personal property, overall economic value of the property and financial security of the owner, and/or the health of the residents of the property.

106.    At all times pertinent and material hereto, there existed alternative feasible manufacturing processes and/or designs of drywall which perform all of the functions and utility of traditional drywall, without allowing unreasonable levels of sulfur compounds to exit the drywall.

107.    At all times pertinent and material hereto, Defendants knew that their drywall was unreasonably dangerous and/or defective as set forth herein.

108.    In the alternative, Defendants should have, at all times pertinent and material hereto, known of the unreasonably dangerous and/or defective characteristics and/or conditions, had they reasonably employed then-existing scientific and/or technical knowledge, reasonable testing, and/or other reasonable and then-accepted methods of quality assurance and/or quality control.

109.    Defendants' drywall is unreasonably dangerous in composition or construction in that, at the time it left Defendant's control, it deviated in a material way from Defendant's own specifications or performance standards.

110.    In addition, and in the alternative, Defendants' drywall is unreasonably dangerous in design, in that, at the time the drywall left Defendant's control, there existed an alternative design for the product that was capable of preventing Plaintiffs' damage, and the likelihood of

24

causing the plaintiffs' damage and the gravity of that harm outweighed the burden (if any) on the Defendant in adopting such alternative design and the adverse effect (if any) on the utility of the drywall.

111.    In addition, and in the alternative, Defendants' drywall is unreasonably dangerous in that it fails to conform to an express warranty about the product which induced the use of the product and caused damage to Plaintiffs to the extent that the warranty was untrue.

112.    In addition, and in the alternative, Defendants' drywall is unreasonably dangerous due to an inadequate warning, in that, at the time the drywall left Defendant's control, the drywall possessed a characteristic that might cause damage and yet Defendant failed to use reasonable care to provide an adequate warning of such characteristics and/or dangers to users and/or handlers of the drywall.

113.    Defendants are therefore liable to Louisiana Plaintiffs for all damages reasonable in the premises.

### COUNT VII
### PRIVATE NUISANCE
### (All Defendants)

114.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

115.    The Defendants' tortious or wrongful acts or omissions have caused sulfur compounds and/or other chemical leaching into structures owned by Plaintiffs and Class Members which has unreasonably interfered, and continues to interfere, with the Plaintiffs' and Class Members' use and enjoyment of their properties and caused them harm and damage as discussed herein.

25

116.   Defendants' interference has impaired the rights of Plaintiffs' and Class Members' health, comfort, safety, free use of their property, and/or peaceful enjoyment of their property.

117.   Defendants' invasions were intentional and unreasonable, and/or unintentional but otherwise negligent or reckless.

118.   The interference with Plaintiffs' and Class Members' use of their property caused by Defendants is substantial and is ongoing.

119.   Defendants' private nuisance was the direct, proximate, and foreseeable cause of Plaintiffs' and Class Members' damages, harm, and loss, which they suffered and will continue to suffer.

120.   As a direct and proximate result of Defendants' creation of a private nuisance, Plaintiffs and Class Members have incurred harm and damages as described herein.

## COUNT VIII
## UNJUST ENRICHMENT
### (Against All Defendants)

121.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

122.   Defendants received money as a result of Plaintiffs' and Class Members' purchases of Defendants' defective drywall, or purchases of structures containing this drywall, either directly or through an agent, and Defendants wrongfully accepted and retained these benefits to the detriment of Plaintiffs and Class Members.

123.   Defendants' acceptance and retention of these benefits under the circumstances make it inequitable and unjust for Defendants to retain the benefit without payment of the value to the Plaintiffs and the Class Members.

26

124.   Defendants, by the deliberate and tortious conduct complained of herein, have been unjustly enriched in a manner which warrants restitution.

## COUNT IX
## VIOLATION OF CONSUMER PROTECTION ACTS
### (Against All Defendants)

125.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

126.   This is an action for relief under the various Consumer Protection Acts of the jurisdictions in which affected properties are present, including but not limited to, L.SA-R.S. 51:1401, *et seq.* (Louisiana Unfair Trade Practices and Consumer Protection Law); Ala. Code 1975 § 8-19-1, *et seq.* (Alabama Deceptive Trade Practices Act); G.S. § 75-1.1, *et seq.* (North Carolina Consumer Protection Act); F.S. § 501.201, *et seq.* (Florida Deceptive and Unfair Trade Practices Act); Va. Code. Ann. § 59.1-196, *et seq.* (Virginia Consumer Protection Act); Tex. Bus. Com. Code Ann. § 17.41, *et seq.* (Texas Deceptive Trade Practices-Consumer Protection Act); Miss. Code Ann. § 75-24-1, *et seq.* (Mississippi Consumer Protection Act); GA ST § 10-1-393, *et seq.* (Georgia Consumer Protection Act);   SC ST § 39-5-20, *et seq.* (South Carolina Consumer Protection Act); Tenn. Code Ann. § 47-18-104, et seq. (Tennessee Consumer Protection Act).

127.   The Defendants' acts and omissions as well as their failure to use reasonable care in this matter as alleged in this complaint, including but not limited to, the knowing misrepresentation or failure to disclose the source, affiliation, origin, characteristics, ingredients, standards and quality of defective drywall constitute violation of the provisions of the Consumer Protection Acts of the Relevant States.

27

128.   Plaintiffs and Class Members have suffered actual damages as a result of Defendants' violation of these Consumer Protection Acts and are entitled to relief.

129.   As a direct and proximate result of Defendants' violations of the Consumer Protection Acts of the Relevant States, Plaintiffs and Class Members have incurred harm and damages as described herein.

**COUNT X**
**EQUITABLE AND INJUNCTIVE RELIEF**
**(Against All Defendants)**

130.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

131.   Plaintiffs and the Class Members are without adequate remedy at law, rendering injunctive and other equitable relief appropriate.

132.   Plaintiffs and the Class Members will suffer irreparable harm if the Court does not render the injunctive relief set forth herein, and if defendants are not ordered to recall, buy back, rescind, and/or repair the structures owned by Plaintiffs and Class Members.

133.   Plaintiffs, on behalf of themselves and all others similarly situated, demand injunctive and equitable relief and further, that defendants be ordered to: (1) remediate, repair and/or replace the drywall in Class Members' homes or other structures upon proof by the defendants of the feasibility of such remedy or repair; (2) cease and desist from misrepresenting to the Class and the general public that the drywall is not defective and/or unreasonably dangerous as alleged herein; and (3) institute, at their own cost, a public awareness campaign to alert the Class and general public of the harm and dangers associated with the drywall.

28

## DEMAND FOR JURY TRIAL

Plaintiffs, individually and on behalf of the Class Members, hereby demand a trial by jury as to all issues so triable as a matter of right.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs, on behalf of themselves and all others similarly situated demand upon Defendants jointly and severally for:

a.   an order certifying the case as a class action;

b.   an order certifying the Class;

c.   an order appointing Plaintiffs as the Class Representatives of the Class;

d.   an order appointing undersigned counsel and their firms as counsel for the Class;

e.   compensatory and statutory damages;

f.   punitive damages as allowed by law;

g.   pre and post-judgment interest as allowed by law;

h.   injunctive relief;

I.   an award of attorneys' fees as allowed by law;

j.   an award of taxable costs; and

k.   any and all such further relief as this Court deems just and proper.

29

Respectfully submitted,

Dated:   August 1, 2017

By:    J. Michael Malone /s/
        J. Michael Malone, Esquire
        North Carolina Bar ID#26512
        Hendren, Redwine & Malone, PLLC
        4600 Marriott Drive, Suite 150
        Raleigh, NC   27612
        Phone: (919) 420-7867
        Fax: (919) 420-0475
        bcolvin@williamgcolvinlaw.com

*Attorneys for Plaintiffs*

## COURT APPOINTED PLAINTIFFS' LIASON AND LEAD COUNSEL IN MDL 2047

| | |
|---|---|
| Russ M. Herman | Arnold Levin |
| HERMAN, HERMAN & KATZ, LLC | Levin Sedran & Berman |
| 820 O'Keefe Avenue | 510 Walnut Street, Suite 500 |
| New Orleans, Louisiana 70113 | Philadelphia, PA 19106 |
| Phone: (504) 581-4892 | Phone: (215) 592-1500 |
| Fax: (504) 561-6024 | Fax: (215) 592-4663 |
| rherman@hhklawfirm.com | alevin@lfsblaw.com |

*Plaintiffs' Liaison Counsel MDL 2047*    *Plaintiffs' Lead Counsel MDL 2047*

## COURT APPOINTED PLAINTIFFS' STEERING COMMITTEE IN MDL 2047 - OF COUNSEL TO PLAINTIFFS

| | |
|---|---|
| Dawn M. Barrios | Robert Becnel |
| Barrios, Kingsdorf & Casteix, LLP | Becnel Law Firm, LLC |
| 701 Poydras Street, Suite 3650 | 425 W. Airline Highway, Suite B |
| New Orleans, LA 70139 | Laplace, LA 70068 |
| Phone: (504) 524-3300 | Phone: (985) 536-1186 |
| Fax: (504) 524-3313 | Fax: (985) 536-6445 |
| Barrios@bkc-law.com | rbecnel@becnellaw.com |

Peter Prieto
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
pprieto@podhurst.com

Patrick Montoya
Colson, Hicks, Eidson
255 Alhambra Circle, Penthouse
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
patrick@colson.com

Hugh P. Lambert
The Lambert Firm
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@thelambertfirm.com

James Robert Reeves
Reeves & Mestayer, PLLC
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@attorneys4people.com

Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5002
dan@wbmllp.com

Bruce William Steckler
Steckler Gresham Cochran
12720 Hillcrest Road, Ste 1045
Dallas, TX 75230
Phone: (972) 387-4040
Fax: (972) 387-4041
bruce@stecklerlaw.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
  Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
  & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Christopher Seeger
Seeger Weiss, LLP
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Richard J. Serpe
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com

31

Victor M. Diaz, Jr.
V.M. Diaz and Partners, LLC
119 Washington Ave, Suite 402
Miami Beach, FL 33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

**OF COUNSEL TO COURT APPOINTED PLAINTIFFS' STEERING COMMITTEE IN
MDL 2047 - OF COUNSEL TO PLAINTIFFS**

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W, Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax:   (202) 540-7201
rlewis@hausfeldllp.com

Anthony D. Irpino
IRPINO AVIN HAWKINS LAW FIRM
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

**COUNSEL FOR INDIVIDUAL PLAINTIFFS**

Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe, P.C.
580 E. Main Street, Suite 310
Norfolk, VA  23510
(757) 233-0009 (telephone)

*Attorney for David and Melody
Bright;Larry Bazemore; Sidney and Susan
Camden; John and Margaret Galanda;
Sylvia and Curtis Hinkley, Jr. and
Stephanie Hinkley-Lopez; Russell and Judi
Renner and Carter and Barbara Savage*

32

# Exhibit "8"

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## FLORENCE DIVISION

| | |
|---|---|
| **Harry DeOliveira, individually, and on behalf of all others similarly situated,** | **CASE NO.:** |
| **Plaintiffs,** | |
| **v.** | **CLASS ACTION COMPLAINT** |
| **Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd.; Tai'an Taishan Plasterboard Co., Ltd.; Beijing New Building Materials Public Limited Co.; Beijing New Building Materials (Group) Co., Ltd.; China National Building Material Co., Ltd.;** | **JURY TRIAL DEMAND** |
| **Defendants.** | |

---

### PLAINTIFFS' OMNIBUS CLASS ACTION COMPLAINT (XXV) (SOUTH CAROLINA AMORIN DEFAULT)

Pursuant to Fed. R. Civ. P. 23, the class representative in this action bring suit on behalf of himself and all other similarly situated owners and residents of real property containing defective Chinese manufactured drywall that was designed, manufactured, imported, distributed, delivered, supplied, marketed, inspected, or sold by the Defendants.

The class representative is pursuing a nationwide class action against the defendants with respect to the drywall located in plaintiffs' homes. Each of the Defendants in this action, Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd. ("Taishan"); Taian Taishan Plasterboard Co., Ltd. ("TTP"); Beijing New Building Materials Public Limited Co. ("BNBM"); Beijing New Building Materials (Group) Co., Ltd. ("BNBM Group"); China National Building

1

Material Co., Ltd. ("CNBM"), are liable for damages incurred by Plaintiffs due to their role in the design, manufacture, importing, distributing, delivery, supply, marketing, inspecting, installing, or sale of the defective drywall at issue in this litigation.

## JURISDICTION, PARTIES, AND VENUE

1.      Original jurisdiction of this Court exists by virtue of 28 U.S.C. § 1332(d)(2) and the Class Action Fairness Act ("CAFA").   *See* 28 U.S.C. § 1711, *et. seq*.   The Plaintiffs and certain of the Defendants in these actions are citizens of different states and the amounts in controversy in these actions exceed five million dollars ($5,000,000.00), exclusive of interest and costs.

2.      Venue in this district satisfies the requirements of 28 U.S.C. § 1391(b)(1)-(2) and (c) because Plaintiffs and a significant number of the absent class members reside in this jurisdiction and a substantial amount of the events and occurrences giving rise to these claims occurred in this District, or a substantial part of the property that is the subject of this action is situated in this district.

## PLAINTIFFS

3.      For purposes of clarity, the Representative Plaintiff is asserting claims on behalf of all owners and residents of the subject properties, including but not limited to, minors and other residents of the properties who do not appear herein as named plaintiffs.

4.      The Representative Plaintiff on this complaint has previously asserted claims against Defendants in complaints now pending before the Honorable Eldon E. Fallon in consolidated MDL proceedings in the United States District Court for the Eastern District of Louisiana, in which Defendants have been adjudicated in default.   The instant complaint is

being filed as a protective action with respect to the prior filings before the MDL Court.

5.      Plaintiff, Harry DeOliveira is a citizen of South Carolina and owns real property located at 1819 Carriage Oak Court, Hartville, South Carolina 29550.   Plaintiff has incurred damages caused by the drywall distributed by Defendants and is participating as a class representative for similarly situated individuals.

## DEFENDANTS

6.      Unless specifically stated to the contrary, all individual defendants are citizens of the state where they do business and all entities are citizens of the state where they are organized. For those entities, where the state of organization is not listed, it is asserted upon information and belief that the entity is incorporated and/or organized in the state of its principal place of business.

7.      Defendant Taishan is a foreign corporation doing business in several States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant, together with its affiliates and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Defendant manufactured and sold, directly and indirectly, to certain suppliers

3

in the United States.

8.      Defendant TTP is a foreign corporation doing business in several States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant, together with its affiliates and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States.   Defendant manufactured and sold, directly and indirectly, to certain suppliers in the United States.

9.      Defendant TTP is a wholly owned subsidiary of Defendant Taishan.

10.      During the period when Taishan and its subsidiaries were distributing defective drywall to the United States, these entities consistently misrepresented the drywall they were exporting complied with ISO and ASTM quality standards. For instance, Taishan's website boasted that it was exporting large quantities of drywall to the United States and that its drywall complied with ISO quality standards.   The employees of Taishan and its subsidiaries also sent emails to potential customers boasting about their experience exporting large quantities of drywall to the United States.   These employees also provided false assurances that the drywall they were exporting complied with ASTM quality standards.

4

11.     Defendant BNBM is a foreign corporation doing business in several States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant, together with its affiliates and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Defendant manufactured and sold, directly and indirectly, to certain suppliers in the United States.

12.     On April 21, 2017, Judge Fallon in MDL 2047 issued an Order and Reasons on Defendants' motions to dismiss pursuant to Fed.R.Civ.P. 12(b) (hereafter "Rule 12(b) Order"). *See* Rec.Doc.No. 20739.   The Rule 12(b) Order correctly determined that:

*       BNBM is the controlling shareholder of Taishan and that Taishan is an agent and alter ego of BNBM.

*       BNBM is controlled by China National Building Materials Group Co. ("CNBM Group").[1]

---

[1] CNBM Group is not being pursued as a defendant in the instant complaint as CNBM Group has been dismissed as a defendant by Judge Fallon. The order of dismissal is interlocutory and is subject to appeal at a later date.

5

* BNBM has exercised a high degree of control over Taishan's operational management and its day to day operations.

* BNBM has had voting control over Taishan's board since 2005.

* BNBM controls Taishan' board and management team.

* BNBM audits Taishan and requires that Taishan submit weekly reports.

* BNBM must approve certain activities by Taishan including the building of factories and all matters concerning drywall production.

* BNBM controls Taishan's financial and strategic business decisions.

* Taishan must provide BNBM with a stake in all of its subsidiaries.

* BNBM and Taishan share officers, directors, and executives.

* Taishan and BNBM also share certain property.

* BNBM provides Taishan with loan guarantees.

13.    On October 13, 2015, CNBM publicly announced that BNBM will acquire 100% of Taishan's shares.   BNBM subsequently acquired 100% of Taishan's shares on October 27, 2016.

14.    BMBM consistently exerted control over Taishan and its subsidiaries when these entities were exporting defective drywall to the United States.   For instance, one of BNBM's board members, Tongchun Jia, is the chairman of the board of directors and general manager of Taishan.   Mr. Tongchun Jia occupies similar positions with most of Taishan's subsidiaries. Through Mr. Tongchun Jia's positon with Taishan and its subsidiaries, BNBM controls the actions and operations of these entities.   Even where Tongchun Jia does not formally hold a position with a Taishan subsidiary, BNBM is able to exert its control over the subsidiary through

6

Mr. Tongchun Jia's influence. For instance, the chairman of the board of TTP, Peng Shi Liang, was also an employee of Taishan. BNBM was thus able to control TTP since the chairman of its board reported directly to Tongchun Jia. Accordingly, since BNBM had direct control over Taishan and its subsidiaries, it should be held responsible for their sale of defective drywall.

15.    Defendant, BNBM Group is a foreign corporation doing business in several States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia. Upon information and belief, Defendant, together with its affiliates, subsidiaries and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia. Upon information and belief, Defendant, together with its affiliates, subsidiaries and/or actual or apparent agents, have continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Defendant, together with its affiliates, subsidiaries and/or actual or apparent agents, manufactured and sold, directly and indirectly, to certain suppliers in the United States.

16.    Defendant, CNBM is a foreign corporation doing business in several States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia. Upon information and belief, Defendant, together with its affiliates, subsidiaries and/or actual or apparent agents,

manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum

drywall with the expectation that the drywall would be purchased by thousands of consumers, if

not more, within various States, including but not limited to, Alabama, California, Florida,

Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and

Virginia. Upon information and belief, Defendant together with its affiliates, subsidiaries and/or

actual or apparent agents, has continuously and systematically distributed and sold drywall to

numerous purchasers in the United States and their drywall is installed in numerous structures in

the United States. Defendant, together with its affiliates, subsidiaries and/or actual or apparent

agents, manufactured and sold, directly and indirectly, to certain suppliers in the United States.

17.     The Rule 12(b) Order correctly determined that CNBM is the controlling

shareholder of BNBM.

18.     To the extent any of the foreign defendants are deemed to be foreign sovereign

entities, including but not limited to Taishan, TTP, BNBM, BNBM Group, and CNBM,

Plaintiffs bring their claims against these entities pursuant to 28 U.S.C. § 1605(a)(2), the

commercial activity exception to the Foreign Sovereign Immunities Act, or alternatively under §

1605(a)(5), the tortious act exception.   Plaintiffs allege that the claims against the foreign

defendants are based upon commercial activities carried on in the United States.   The claims

also seeks monetary damages against a foreign state for damage to property occurring in the

United States, caused by the tortious acts or omissions of that foreign state, or of any official or

employee of that foreign state while acting within the scope of his office or employment.

## FACTS REGARDING THE DEFENDANTS

19.     Upon information and belief, CNBM Group, together with its affiliates,

8

subsidiaries and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia. Upon information and belief, CNBM Group, together with its affiliates, subsidiaries and/or actual or apparent agents, has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. CNBM Group, together with its affiliates, subsidiaries and/or actual or apparent agents, manufactured and sold, directly and indirectly, to certain suppliers in the United States.

20. The Rule 12(b) Order correctly determined that:

* CNBM Group is the controlling shareholder of CNBM and BNBM Group.

* CNBM Group is the controlling shareholder of BNBM and Taishan by virtue of its control over CNBM and BNBM Group.

* All the Defendants operate as a single-business enterprise that is led by CNBM Group.

21. CNBM Group has exerted high levels of control over its subsidiary entities, including but not limited to CNBM, BNBM, BNBM Group, Taishan, and TTP, by virtue of its scheme of appointing overlapping officers and directors of subsidiary entities, its use of notices and management reports sent to subsidiaries, its requirement that its direct subsidiaries manage investments in subsidiaries pursuant to CNBM Group directives, the implementing of policies for conducting audits, and its requirement that subsidiaries submit various reports. Many

9

CNBM Group officers and directors hold positions with BNBM and Taishan. The Company culture of CNBM Group establishes a "Parent-subsidiary" company that is managed and directed strictly from the top down. For instance, one of CNBM Group's indirect subsidiary entities, BNBM, owns the majority of Taishan's shares and has the ability to appoint the majority of Taishan's board of directors. CNBM Group controls BNBM by virtue of another CNBM Group subsidiary, CNBM, which is the parent entity of BNBM. CNBM Group has exerted day-to-day control over each of its subsidiary entities and has used its influence to direct specific activities and to appoint officers and directors that are beholden to CNBM Group. Upon information and belief, this influence was exerted with respect to permitting Taishan and BNBM to market, export, and distribute drywall to the United States and the decision for Taishan to not appear at Judgment Debtor proceedings before Judge Fallon in New Orleans.

22. For instance, at the outset of the MDL 2047, CNBM Group in conjunction with its controlled subsidiaries, Taishan and BNBM, discussed and then implemented a deliberate strategy whereby Defendants would not respond to the litigation and would allow default judgments to be entered against them. Defendants have also shared lawyers and law firms. When Taishan finally responded to this litigation, it did so for the limited purpose of contesting personal jurisdiction. When Taishan was unsuccessful in obtaining dismissal on these grounds and lost its appeal to the Fifth Circuit Court of Appeals, it withdrew from the litigation with the approval of its parent entities and was subsequently held in civil and criminal contempt on July 17, 2014. Following the issuance of this contempt order, CNBM Group directed its subsidiaries to cease depositing funds in New York banks.

10

## FACTS REGARDING DEFECTIVE DRYWALL

23.     Defendants' drywall is predominately composed of gypsum.

24.     In "defective drywall" (such as that designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed, and/or sold by Defendants herein), sulfur compounds exit the drywall.

25.     The sulfur compounds, including Hydrogen Sulfide, Carbonyl Sulfide, and Carbon Disulfide, exit Defendants' drywall and cause rapid sulfidation and damage to personal property (such as the blackening and break down of air conditioning and refrigerator coils, faucets, utensils, electrical wiring, copper, electronic appliances and other metal surfaces and property).   These compounds are not only harmful to personal property but they are also smelly and irritating to humans and pets.

26.     Although the drywall functions according to its intended purpose as a building component, it is unfit for this purpose due to the damaging side effects and/or because its use is so inconvenient that Plaintiffs would not have purchased their homes had the side effects been disclosed by Defendants.

27.     As a direct and proximate result of Defendants' actions and omissions, Class Members' structures and personal property have been exposed to Defendants' defective drywall and the harmful effects of the sulfur compounds that exit from Defendants' defective drywall.

28.     Defendants tortuously manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed and/or sold the defective drywall, which was unfit for its intended purpose in that the drywall caused rapid sulfidation and damage to personal property in Class Members' homes, residences or structures.

11

29.     Defendants recklessly, wantonly, and/or negligently manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed and/or sold the defective drywall at issue in this litigation.

30.     Defendants recklessly, wantonly and/or negligently implemented faulty procedures for purposes of formulating, preparing, testing, and otherwise ensuring the quality and/or character of the defective drywall at issue in this litigation.

31.     As a direct and proximate result of Defendants' defective and unfit drywall and the harmful effects of the sulfur compounds that exit these products, Class Members have suffered, and continue to suffer economic harm.

32.     As a direct and proximate result of Defendants' defective and unfit drywall and the harmful effects of the sulfur compounds that exit these products, Class Members have suffered, and continue to suffer damages.   These damages include, but are not limited to, costs of inspection; costs and expenses necessary to remedy, replace and remove the defective drywall and other property that has been impacted; lost value or devaluation of their homes, residences or structures and property as a direct result of damage caused to the property and indirect damage resulting from perceived defects to the property, including stigma damages and loss of use and enjoyment of their home and property.

33.     As a direct and proximate result of Defendants' defective drywall and the harmful effects of the sulfur compounds that exit these products, Class Members have a need for injunctive relief in the form of repair and remediation of their home, rescission of contracts, and the ordering of emergency/corrective notice.

12

## CLASS ACTION ALLEGATIONS

34.     The representative Plaintiff with claims against the Defendants asserts a class

pursuant to Rules 23(a), (b)(1), (b)(2), (b)(3) and/or 23(c)(4) of the Federal Rules of Civil

Procedure, on behalf of himself and those similarly situated, against the Defendants.    The

Representative Plaintiff defines the class as follows:

> All owners and residents (past or present) of real property located
> in the United States containing defective Chinese drywall
> manufactured, sold, distributed, and/or supplied by Defendants.

### General Class Allegations and Exclusions from the Class Definitions

35.     The following Persons shall be excluded from the Class: (1) Defendants and their

subsidiaries, affiliates, officers and employees; (2) all Persons who make a timely election to be

excluded from the proposed Class; (3) governmental entities; and (4) the judge(s) to whom this

case is assigned and any immediate family members thereof.

36.     Upon information and belief, the defective and unreasonably dangerous drywall

in Plaintiffs' homes or other structures was installed in at least hundreds of homes, residences, or

other structures owned by Class Members.   Therefore, the Class is sufficiently numerous such

that the joinder of all members of the Class in a single action is impracticable.

37.     There are numerous common questions of law and fact that predominate over any

questions affecting only individual members of the Class.   Among these common questions of

law and fact are the following:

> a.      whether Defendants' drywall products are defective and/or unfit for their
> intended purpose;
>
> b.      whether Defendants tortuously manufactured, exported, imported,
> distributed, delivered, supplied, inspected, installed, marketed, and/or sold

13

defective drywall products;

c.      whether Plaintiffs are entitled to recover compensatory, exemplary, incidental, consequential, and/or other damages as a result of Defendants' unlawful and tortious conduct; and

d.      whether Plaintiffs are entitled to recover injunctive and/or equitable relief as a result of Defendants' unlawful and tortious conduct.

38.     The legal claims of the named Plaintiff are typical of the legal claims of other Class Members.   Named Plaintiff has the same legal interests and need for legal remedies as other Class Members.

39.     Named Plaintiff is an adequate representatives of the Class, together with his legal counsel, each will fairly and adequately protect the interests of Class Members. Named Plaintiff has no known conflict with the Class and is committed to the vigorous prosecution of this action.

40.     The undersigned counsel are competent counsel experienced in class action litigation, mass torts, and complex litigation involving harmful products.   Counsel will fairly and adequately protect the interests of the Class.

41.     The various claims asserted in this action are certifiable under the provisions of Federal Rules of Civil Procedure 23(b)(1) because prosecuting separate actions by or against individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party opposing the Class; or adjudications with respect to individual Class members that, as a practical matter, would be dispositive of the interests of the other Class members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

42.     The claims for injunctive relief in this case are certifiable under Fed. R. Civ. P.

14

23(b)(2).   Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief is appropriate respecting the Class as a whole.

43.    A class action is superior in this case to other methods of dispute resolution.   The Class members have an interest in class adjudication rather than individual adjudication because of their overlapping rights.   It is highly desirable to concentrate the resolution of these claims in this single forum because it would be difficult and highly unlikely that the affected Class Members would protect their rights on their own without this class action case.   Management of the class will be efficient and far superior to the management of individual lawsuits. Accordingly, Plaintiffs' legal claims are properly certified pursuant to Rule 23(b)(3).

44.    The issues particularly common to the Class members' claims, some of which are identified above, are alternatively certifiable pursuant to Fed. R. Civ. P. 23(c)(4), as resolution of these issues would materially advance the litigation, and class resolution of these issues is superior to repeated litigation of these issues in separate trials.

**COUNT I**
**NEGLIGENCE**
**(Against All Defendants)**

45.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

46.    Defendants owed a duty to Class Members to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, i) installing, j) marketing, and/or k) selling this drywall, including a duty to adequately warn of their failure to do the same.

47.    Defendants knew or should have known that their wrongful acts and omissions would result in harm and damages in the manner set forth herein.

15

48.     Defendants breached their duty to exercise reasonable care in the designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, and/or selling this drywall.

49.     Defendants likewise breached their duties to Class Members by failing to warn about the defective nature of the drywall.   Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the property and bodies of Class Members.

50.     Defendants breached their duty to exercise reasonable care to timely remove and/or recall from the market and/or otherwise prevent the continued contact of Class Members with the drywall, upon leaning it had been sold in an unreasonably dangerous condition.

51.     Given the defect in the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm, and damages to Class Members.

52.     As a direct and proximate result of Defendants' acts and omissions, Class Members were harmed and have incurred damages as described herein.

## COUNT II
## NEGLIGENCE PER SE
### (Against All Defendants)

53.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

54.     Defendants owed statutory duties to Class Members to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, I) marketing, and/or j) selling this drywall.

55.     Defendants breached their statutory duties to the Class Members by failing to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e)

16

distributing, f) delivering, g) supplying, h) inspecting, i) marketing, and/or j) selling this drywall.

56.     Defendants likewise breached their statutory duties, including but not limited to those imposed under the International Building Code ("IBC") and other State and local Building Codes, to Class Members by failing to warn about the defective nature of the drywall.   For instance, it is specifically alleged that Defendants furnished the drywall in violation of ASTMC C 1396/C 1396M-069, and its predecessor(s).

57.     Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the property and bodies of Class Members.

58.     Given the defective nature of Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm, and damages to Class Members.

59.     As a direct and proximate result of Defendants' acts and omissions, Class Members were harmed and have incurred damages as described herein.

**COUNT III**
**STRICT LIABILITY**
**(Against All Defendants)**

60.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

61.     At all times relevant hereto, Defendants were in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public.

62.     The drywall, including that installed in the homes of Class Members was placed by Defendants in the stream of commerce.

63.     Defendants knew that the subject drywall would be used without inspection by consumers.

17

64.     Defendants intended that the drywall reach the ultimate consumers, such as Class Members, and it indeed reached Class Members when it was installed in their homes.

65.     When installed in Class Members' homes, the drywall was in substantially the same condition as it was in when Defendants manufactured, sold, and/or delivered it.

66.     At all times relevant hereto the subject drywall was used in a manner consistent with the uses intended by, or known to Defendants, and in accordance with the Defendants' directions and instructions.

67.     The subject drywall was not misused or altered by any third parties.

68.     The Defendants' drywall was improperly manufactured, designed, inspected, tested, marketed, distributed, and sold.

69.     The design impropriety was in designing drywall that allows high levels of sulfur compounds to exit the drywall.

70.     The manufacturing impropriety was in improperly selecting, testing, inspecting, mining, making, assembling, and using, gypsum for drywall with levels of sulfur compounds that were too high and allow high levels of sulfur compounds to exit the drywall.

71.     The drywall was also defective because it was improperly exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold in an unacceptable condition, as described above.

72.     The Defendants' negligence in manufacturing, designing, inspecting, testing, marketing, distributing, and selling of the drywall rendered it unsafe and unreasonably dangerous for its intended use and to Class Members.

73.     The drywall is also defective and unreasonably dangerous because Defendants

18

failed to adequately warn and instruct Class Members of their negligent design, inspection, testing, manufacturing, marketing, and selling of the drywall.

74.     Class Members were unaware of the unreasonably dangerous propensities and defective condition of the drywall, nor could Class Members, acting as reasonably prudent people discover that Defendants' drywall was defective, as set forth herein, or perceive its danger.

75.     Defendants' defective drywall was much more dangerous and harmful than expected by the average consumer and by Class Members.

76.     Defendants' defective drywall benefit to Class Members, if any, was greatly outweighed by the risk of harm and danger to them.

77.     The harmful and dangerous propensities of the drywall, as well as Defendants' failure to adequately warn Class Members of these propensities rendered the drywall unreasonably dangerous and was the direct and proximate cause of damages to Class Members.

**COUNT IV**
**BREACH OF EXPRESS AND/OR IMPLIED WARRANTIES**
**(Against All Defendants)**

78.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

79.     Defendants and/or their agents were in privity with Class Members and/or Class Members were foreseeable third party beneficiaries of any warranty.

80.     At the times Defendants utilized, supplied, inspected, and/or sold their drywall for use in structures owned by Class Members, Defendants knew, or it was reasonably foreseeable, that the drywall would be installed in structures owned by Class Members for use as a building material, and expressly or impliedly warranted the product to be fit for that use.

19

81.     Defendants placed their drywall products into the stream of commerce in a defective condition and these products were expected to, and did, reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

82.     Although the drywall functions according to its intended purpose as a building component, it is unfit, defective as alleged in Paragraph 26 and not merchantable for this purpose due to the damaging side effects and/or because its use is so inconvenient that Plaintiffs would not have purchased their homes had the side effects been disclosed by Defendants.

83.     The Defendants breached their warranty because the drywall was not fit and safe for the particular purposes for which the goods were required (to be installed in structures owned by Class Members as a building material) due to the problems set forth herein.

84.     Defendants had reasonable and adequate notice of the Class Members' claims for breach of warranty and failed to cure.

85.     As a direct and proximate result of Defendants' breach of warranties, Class Members have incurred harm and damages as described herein.

## COUNT V
## REDHIBITION
### (By Louisiana Class Members Against All Defendants)

86.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

87.     The drywall manufactured, distributed and/or sold by Defendants was not reasonably fit for its ordinary and intended purpose as alleged in Paragraph 26 above.

88.     Defendants are therefore liable to Louisiana Plaintiffs for all damages reasonable in the premises, in accordance with La. Civ. Code art. 2524.

20

89.     In addition, or in the alternative, the drywall manufactured, distributed and/or sold by Defendants contained redhibitory defects, in that, at the time of delivery, the propensity to allow sulfur compounds to exit the drywall renders the drywall so useless and/or inconvenient that it must be presumed that Plaintiffs would not have purchased the drywall had they known of the redhibitory defect or defects.

90.     In the alternative, the defects are redhibitory defects in that, while not rendering the drywall totally useless, diminish the drywall's use and/or value to such an extent that it must be presumed that the buyer would have bought it, but for a lesser price.

91.     The Defendants are conclusively presumed to know of the defects in the drywall.

92.     In addition, it is believed and alleged that All Defendants knew of the defects in the drywall at the time the drywall was delivered and/or sold.

93.     Defendants have had numerous opportunities to repair and/or replace the drywall and associated fixtures and/or building components and have failed to do so; in addition, and/or in the alternative, such requests have been, would have been and/or would be futile; Defendants, in addition, or alternatively, had actual knowledge of the problems in the drywall and the need for replacement, remediation and/or repair.

94.     Defendants are therefore liable to all Louisiana Plaintiffs for a return of the purchase price, (with interest from the time it was paid), reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the drywall and associated items, for damages, and for reasonable attorneys' fees, in accordance with La. Civ. Code art. 2545.

21

## COUNT VI
## LOUISIANA PRODUCTS LIABILITY ACT
### (By Louisiana Class Members Against All Defendants)

95.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

96.     In addition to any and all damages, attorneys fees and other remedies made available to Louisiana Plaintiffs under the warranty of fitness and/or warranty against redhibitory defects, the Defendants are liable to Louisiana Plaintiffs under the Louisiana Products Liability Act, ("LPLA"), La. R.S. 9:2800.51, *et seq.*

97.     Defendants, upon information and belief, expressly warranted that "the gypsumboards manufactured and sold ... are guaranteed to be free from defects in materials and workmanship."

98.     The Defendants expressly warranted that "the gypsumboards were manufactured in accordance to ASTM C36."

99.     The drywall at issue is, in all cases, unreasonably dangerous by virtue of the unreasonable emission of sulfur compounds which do not in any way contribute to or enhance the utility of the drywall, yet pose a risk to the wiring, plumbing, appliances, personal property, overall economic value of the property and financial security of the owner, and/or the health of the residents of the property.

100.     At all times pertinent and material hereto, there existed alternative feasible manufacturing processes and/or designs of drywall which perform all of the functions and utility of traditional drywall, without allowing unreasonable levels of sulfur compounds to exit the drywall.

101.     At all times pertinent and material hereto, Defendants knew that their drywall was

22

unreasonably dangerous and/or defective as set forth herein.

102.   In the alternative, Defendants should have, at all times pertinent and material hereto, known of the unreasonably dangerous and/or defective characteristics and/or conditions, had they reasonably employed then-existing scientific and/or technical knowledge, reasonable testing, and/or other reasonable and then-accepted methods of quality assurance and/or quality control.

103.   Defendants' drywall is unreasonably dangerous in composition or construction in that, at the time it left Defendant's control, it deviated in a material way from Defendant's own specifications or performance standards.

104.   In addition, and in the alternative, Defendants' drywall is unreasonably dangerous in design, in that, at the time the drywall left Defendant's control, there existed an alternative design for the product that was capable of preventing Plaintiffs' damage, and the likelihood of causing the plaintiffs' damage and the gravity of that harm outweighed the burden (if any) on the Defendant in adopting such alternative design and the adverse effect (if any) on the utility of the drywall.

105.   In addition, and in the alternative, Defendants' drywall is unreasonably dangerous in that it fails to conform to an express warranty about the product which induced the use of the product and caused damage to Plaintiffs to the extent that the warranty was untrue.

106.   In addition, and in the alternative, Defendants' drywall is unreasonably dangerous due to an inadequate warning, in that, at the time the drywall left Defendant's control, the drywall possessed a characteristic that might cause damage and yet Defendant failed to use reasonable care to provide an adequate warning of such characteristics and/or dangers to users

23

and/or handlers of the drywall.

107.    Defendants are therefore liable to Louisiana Plaintiffs for all damages reasonable in the premises.

## COUNT VII
## PRIVATE NUISANCE
### (All Defendants)

108.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

109.    The Defendants' tortious or wrongful acts or omissions have caused sulfur compounds and/or other chemical leaching into structures owned by Class Members which has unreasonably interfered, and continues to interfere, with the Class Members' use and enjoyment of their properties and caused them harm and damage as discussed herein.

110.    Defendants' interference has impaired the rights of Class Members' health, comfort, safety, free use of their property, and/or peaceful enjoyment of their property.

111.    Defendants' invasions were intentional and unreasonable, and/or unintentional but otherwise negligent or reckless.

112.    The interference with Class Members' use of their property caused by Defendants is substantial and is ongoing.

113.    Defendants' private nuisance was the direct, proximate, and foreseeable cause of Class Members' damages, harm, and loss, which they suffered and will continue to suffer.

114.    As a direct and proximate result of Defendants' creation of a private nuisance, Class Members have incurred harm and damages as described herein.

## COUNT VIII
## UNJUST ENRICHMENT
### (Against All Defendants)

115.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

116.    Defendants received money as a result of Class Members' purchases of

Defendants' defective drywall, or purchases of structures containing this drywall, either directly

or through an agent, and Defendants wrongfully accepted and retained these benefits to the

detriment of Class Members.

117.    Defendants' acceptance and retention of these benefits under the circumstances

make it inequitable and unjust for Defendants to retain the benefit without payment of the value

to the Class Members.

118.    Defendants, by the deliberate and tortious conduct complained of herein, have

been unjustly enriched in a manner which warrants restitution.

## COUNT IX
## VIOLATION OF CONSUMER PROTECTION ACTS
### (Against All Defendants)

119.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

120.    This is an action for relief under the various Consumer Protection Acts of the

jurisdictions in which affected properties are present, including but not limited to, L.SA-R.S.

51:1401, *et seq.* (Louisiana Unfair Trade Practices and Consumer Protection Law); Ala. Code

1975 § 8-19-1, *et seq.* (Alabama Deceptive Trade Practices Act); G.S. § 75-1.1, *et seq.* (North

Carolina Consumer Protection Act); F.S. § 501.201, *et seq.* (Florida Deceptive and Unfair Trade

Practices Act); Va. Code. Ann. § 59.1-196, *et seq.* (Virginia Consumer Protection Act); Tex.

Bus. Com. Code Ann. § 17.41, *et seq.* (Texas Deceptive Trade Practices-Consumer Protection

Act); Miss. Code Ann. § 75-24-1, *et seq.* (Mississippi Consumer Protection Act); GA ST §

10-1-393, *et seq.* (Georgia Consumer Protection Act); SC ST § 39-5-20, *et seq.* (South Carolina

Consumer Protection Act); Tenn. Code Ann. § 47-18-104, et seq. (Tennessee Consumer

Protection Act).

121.    The Defendants' acts and omissions as well as their failure to use reasonable care

in this matter as alleged in this complaint, including but not limited to, the knowing

misrepresentation or failure to disclose the source, affiliation, origin, characteristics, ingredients,

standards and quality of defective drywall constitute violation of the provisions of the Consumer

Protection Acts of the Relevant States.

122.    Class Members have suffered actual damages as a result of Defendants' violation

of these Consumer Protection Acts and are entitled to relief.

123.    As a direct and proximate result of Defendants' violations of the Consumer

Protection Acts of the Relevant States, Class Members have incurred harm and damages as

described herein.

## COUNT X
### EQUITABLE AND INJUNCTIVE RELIEF
#### (Against All Defendants)

124.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

125.    Class Members are without adequate remedy at law, rendering injunctive and

other equitable relief appropriate.

126.    Class Members will suffer irreparable harm if the Court does not render the

injunctive relief set forth herein, and if defendants are not ordered to recall, buy back, rescind,

and/or repair the structures owned by Class Members.

127.    Plaintiffs, on behalf of themselves and all others similarly situated, demand

injunctive and equitable relief and further, that defendants be ordered to: (1) remediate, repair

and/or replace the drywall in Class Members' homes or other structures upon proof by the

defendants of the feasibility of such remedy or repair; (2) cease and desist from misrepresenting

to the Class and the general public that the drywall is not defective and/or unreasonably

dangerous as alleged herein; and (3) institute, at their own cost, a public awareness campaign to

alert the Class and general public of the harm and dangers associated with the drywall.

### DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of the Class Members, hereby demands a trial by jury

as to all issues so triable as a matter of right.

### PRAYER FOR RELIEF

WHEREFORE Representative Plaintiff, on behalf of himself and all others similarly

situated demand upon Defendants jointly and severally for:

      a.    an order certifying the case as a class action;

      b.    an order certifying the Class;

      c.    an order appointing Representative Plaintiff as a Class Representative of
          the Class;

      d.    an order appointing undersigned counsel and their firms as counsel for the
          Class;

      e.    compensatory and statutory damages;

      f.    punitive damages as allowed by law;

      g.    pre and post-judgment interest as allowed by law;

27

h. injunctive relief;

I. an award of attorneys' fees as allowed by law;

j. an award of taxable costs; and

k. any and all such further relief as this Court deems just and proper.

Respectfully submitted,

Dated: August 1, 2017

By: /s/ Gerald D. Jowers, Jr.
Kenneth M. Suggs, Esquire
Federal Bar ID #3422
South Carolina Bar ID#5424
Gerald D. Jowers, Jr. Esquire
Federal Bar ID #8025
South Carolina Bar ID#69347
Janet Jenner & Suggs LLC
500 Taylor Street, Suite 301
Columbia, SC 29201
Phone: (803) 726-0050
Fax: (803) 727-1059

Attorneys for Plaintiffs

## COURT APPOINTED PLAINTIFFS' LIASON AND LEAD COUNSEL IN MDL 2047

Russ M. Herman
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
rherman@hhklawfirm.com

*Plaintiffs' Liaison Counsel MDL 2047*

Arnold Levin
Levin Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
alevin@lfsblaw.com

*Plaintiffs' Lead Counsel MDL 2047*

28

## COURT APPOINTED PLAINTIFFS' STEERING
## COMMITTEE IN MDL 2047 - OF COUNSEL TO PLAINTIFFS

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Peter Prieto
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
pprieto@podhurst.com

Patrick Montoya
Colson, Hicks, Eidson
255 Alhambra Circle, Penthouse
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
patrick@colson.com

Hugh P. Lambert
The Lambert Firm
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@thelambertfirm.com

Robert Becnel
Becnel Law Firm, LLC
425 W. Airline Highway, Suite B
Laplace, LA 70068
Phone: (985) 536-1186
Fax: (985) 536-6445
rbecnel@becnellaw.com

Bruce William Steckler
Steckler Gresham Cochran
12720 Hillcrest Road, Ste 1045
Dallas, TX 75230
Phone: (972) 387-4040
Fax: (972) 387-4041
bruce@stecklerlaw.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

James Robert Reeves
Reeves & Mestayer, PLLC
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@attorneys4people.com

Christopher Seeger
Seeger Weiss, LLP
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5002
dan@wbmllp.com

Richard J. Serpe
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com

Victor M. Diaz, Jr.
V.M. Diaz and Partners, LLC
119 Washington Ave, Suite 402
Miami Beach, FL 33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

**OF COUNSEL TO COURT APPOINTED PLAINTIFFS' STEERING COMMITTEE IN MDL 2047 - OF COUNSEL TO PLAINTIFFS**

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W, Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax:   (202) 540-7201
rlewis@hausfeldllp.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Anthony D. Irpino
IRPINO AVIN HAWKINS LAW FIRM
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

30

## COUNSEL FOR INDIVIDUAL PLAINTIFF

Dennis Reich, Esquire
Reich and Binstock, LLP
4265 San Felipe, Suite 1000
Houston, TX   77027
(713) 622-7271 (telephone)

*Attorneys for Harry DeOliveira*

# Exhibit "9"

JS 44   (Rev. 06/17)

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS** James and Deloris Redden, et al., individually and on behalf of all others similarly situated

**DEFENDANTS** Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co. et al.

**(b)** County of Residence of First Listed Plaintiff   McNairy County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Foreign Corporation
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
William G. Colvin, Esq, William G.Colvin, PLLC, 801 Broad St., Ste 428, Chattanooga, TN 37402; (423) 265-8804

Attorneys *(If Known)*
See Attached

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☐ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*                    Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**  **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane  ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product   Product Liability |  | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument |    Liability  ☐ 367 Health Care/ |  | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &    Pharmaceutical | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
|    & Enforcement of Judgment |    Slander    Personal Injury | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'    Product Liability | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted |    Liability  ☐ 368 Asbestos Personal | |    New Drug Application | ☐ 470 Racketeer Influenced and |
|    Student Loans | ☐ 340 Marine    Injury Product | | ☐ 840 Trademark |    Corrupt Organizations |
|    (Excludes Veterans) | ☐ 345 Marine Product    Liability | | | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment |    Liability  **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
|    of Veteran's Benefits | ☐ 350 Motor Vehicle  ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle  ☐ 371 Truth in Lending |    Act | ☐ 862 Black Lung (923) |    Exchange |
| ☐ 190 Other Contract |    Product Liability  ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal    Property Damage |    Relations | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise |    Injury  ☒ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| | ☐ 362 Personal Injury -    Product Liability | ☐ 751 Family and Medical | | ☐ 895 Freedom of Information |
| |    Medical Malpractice | |    Leave Act | |    Act |
| **REAL PROPERTY** | **CIVIL RIGHTS**  **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights  **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 899 Administrative Procedure |
| ☐ 220 Foreclosure | ☐ 441 Voting  ☐ 463 Alien Detainee |    Income Security Act |    or Defendant) |    Act/Review or Appeal of |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment  ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party |    Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/    Sentence | |    26 USC 7609 | ☐ 950 Constitutionality of |
| ☐ 245 Tort Product Liability |    Accommodations  ☐ 530 General | | |    State Statutes |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -  ☐ 535 Death Penalty | **IMMIGRATION** | | |
| |    Employment  **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities -  ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| |    Other  ☐ 550 Civil Rights |    Actions | | |
| | ☐ 448 Education  ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - | | | |
| |    Conditions of | | | |
| |    Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation - Transfer
- ☐ 8  Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Section 1332(d)(2) and 28 U.S.C. Section 1711, et. seq.
Brief description of cause:
Product Liability claims involving Chinese manufactured drywall

**VII. REQUESTED IN COMPLAINT:**
☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

**VIII. RELATED CASE(S) IF ANY**   *(See instructions):*

JUDGE  Eldon E. Fallon

DOCKET NUMBER  09-MD-2047 (E.D. La.)

DATE  08/01/2017

SIGNATURE OF ATTORNEY OF RECORD  s/William G. Colvin, Esq.

**FOR OFFICE USE ONLY**

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____

## Defendants' Attorneys

**Attorneys for China National Building Material Co., Ltd., Beijing New Building Materials Public Limited Co. and Beijing New Building Materials Group Co., Ltd.:**

L. Christopher Vejnoska
Orrick, Herrington & Sutcliffe LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105

**Attorneys for Taishan Gypsum Co., Ltd. and Taian Taishan Plasterboard Co., Ltd.:**

Bernard Taylor
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, GA 30309

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| James and Deloris Redden, et al., individually, and on behalf of all others similarly situated, | CASE NO.: |
| **Plaintiffs,** | |
| v. | COMPLAINT - CLASS ACTION |
| Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd.; Taian Taishan Plasterboard Co., Ltd.; Beijing New Building Materials Public Limited Co.; Beijing New Building Materials (Group) Co., Ltd.; China National Building Material Co., Ltd. | JURY TRIAL DEMAND |
| **Defendants.** | |

_____/

## PLAINTIFFS OMNIBUS CLASS ACTION COMPLAINT (XXVI) (TENNESSEE AMORIN DEFAULT)

Pursuant to Fed. R. Civ. P. 23, the class representatives in this action bring suit on behalf of themselves and all other similarly situated owners and residents of real property containing defective Chinese manufactured drywall that was designed, manufactured, imported, distributed, delivered, supplied, marketed, inspected, or sold by the Defendants.

Each of the class representatives is pursuing a nationwide class action against the defendants with respect to the drywall located in plaintiffs homes.  Each of the Defendants in this action, Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd. ("Taishan"); Taian Taishan Plasterboard Co., Ltd. ("TTP"); Beijing New Building Materials Public Limited Co. ("BNBM"); Beijing New Building Materials (Group) Co., Ltd. ("BNBM Group"); China

1

National Building Material Co., Ltd. ("CNBM"), are liable for damages incurred by Plaintiffs

due to their role in the design, manufacture, importing, distributing, delivery, supply, marketing,

inspecting, installing, or sale of the defective drywall at issue in this litigation.

## JURISDICTION, PARTIES, AND VENUE

1.      Original jurisdiction of this Court exists by virtue of 28 U.S.C. §1332(d)(2) and

the Class Action Fairness Act ("CAFA").   *See* 28 U.S.C. § 1711, *et. seq.*   The Plaintiffs and

certain of the Defendants in these actions are citizens of different states and the amounts in

controversy in these actions exceed five million dollars ($5,000,000.00), exclusive of interest and

costs.

2.      Venue in this district satisfies the requirements of 28 U.S.C. §1391(b)(1)-(2) and

(c) because Plaintiffs and a significant number of the absent class members reside in this

jurisdiction and a substantial amount of the events and occurrences giving rise to these claims

occurred in this District, or a substantial part of the property that is the subject of this action is

situated in this district.

## PLAINTIFFS

3.      For purposes of clarity, the Plaintiffs are asserting claims on behalf of all owners

and residents of the subject properties, including but not limited to, minors and other residents of

the properties who do not appear herein as named plaintiffs.

4.      The Plaintiffs on this complaint have previously asserted claims against

Defendants in complaints now pending before the Honorable Eldon E. Fallon in consolidated

MDL proceedings in the United States District Court for the Eastern District of Louisiana, in

which Defendants have been adjudicated in default.   The instant complaint is being filed as a

2

protective action with respect to the prior filings before the MDL Court.

5.      Plaintiffs, James and Deloris Redden are citizens of Tennessee and together own real property located at 190 Ode Moore Road, Michie, Tennessee 38357.   Plaintiffs have incurred damages caused by the drywall distributed by Defendants and are participating as class representatives for similarly situated individuals.

6.      Plaintiffs, Brian and Beth Watkins are citizens of Tennessee and together own real property located at 240 Ode Moore Road, Michie, Tennessee 38357.   Plaintiffs have incurred damages caused by the drywall distributed by Defendants and are participating as class representatives for similarly situated individuals.

7.      Plaintiffs, Bobby and Darlyne Mullins are citizens of Tennessee and together own real property located at 195 Charley Circle, Ramer, Tennessee 38367.   Plaintiffs have incurred damages caused by the drywall distributed by Defendants and are participating as class representatives for similarly situated individuals.

## **DEFENDANTS**

8.      Unless specifically stated to the contrary, all individual defendants are citizens of the state where they do business and all entities are citizens of the state where they are organized. For those entities, where the state of organization is not listed, it is asserted upon information and belief that the entity is incorporated and/or organized in the state of its principal place of business.

9.      Defendant Taishan is a foreign corporation doing business in several States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief,

3

Defendant, together with its affiliates and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia. Upon information and belief, Defendant has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Defendant manufactured and sold, directly and indirectly, to certain suppliers in the United States.

10. Defendant TTP is a foreign corporation doing business in several States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia. Upon information and belief, Defendant, together with its affiliates and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia. Upon information and belief, Defendant has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Defendant manufactured and sold, directly and indirectly, to certain suppliers in the United States.

11. Defendant TTP is a wholly owned subsidiary of Defendant Taishan.

4

12.     During the period when Taishan and its subsidiaries were distributing defective drywall to the United States, these entities consistently misrepresented the drywall they were exporting complied with ISO and ASTM quality standards. For instance, Taishan's website boasted that it was exporting large quantities of drywall to the United States and that its drywall complied with ISO quality standards.   The employees of Taishan and its subsidiaries also sent emails to potential customers boasting about their experience exporting large quantities of drywall to the United States.   These employees also provided false assurances that the drywall they were exporting complied with ASTM quality standards.

13.     Defendant BNBM is a foreign corporation doing business in several States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant, together with its affiliates and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Defendant manufactured and sold, directly and indirectly, to certain suppliers in the United States.

14.     On April 21, 2017, Judge Fallon in MDL 2047 issued an Order and Reasons on Defendants' motions to dismiss pursuant to Fed.R.Civ.P. 12(b) (hereafter "Rule 12(b) Order").

5

*See* Rec.Doc.No. 20739.   The Rule 12(b) Order correctly determined that:

* BNBM is the controlling shareholder of Taishan and that Taishan is an agent and alter ego of BNBM.

* BNBM is controlled by China National Building Materials Group Co. ("CNBM Group").[1]

* BNBM has exercised a high degree of control over Taishan's operational management and its day to day operations.

* BNBM has had voting control over Taishan's board since 2005.

* BNBM controls Taishan's board and management team.

* BNBM audits Taishan and requires that Taishan submit weekly reports.

* BNBM must approve certain activities by Taishan including the building of factories and all matters concerning drywall production.

* BNBM controls Taishan's financial and strategic business decisions.

* Taishan must provide BNBM with a stake in all of its subsidiaries.

* BNBM and Taishan share officers, directors, and executives.

* Taishan and BNBM also share certain property.

* BNBM provides Taishan with loan guarantees.

15.   On October 13, 2015, CNBM publicly announced that BNBM will acquire 100% of Taishan's shares.   BNBM subsequently acquired 100% of Taishan's shares on October 27,

---

[1] CNBM Group is not being pursued as a defendant in the instant complaint as CNBM Group has been dismissed as a defendant by Judge Fallon. The order of dismissal is interlocutory and is subject to appeal at a later date.

2016.

16.     BMBM consistently exerted control over Taishan and its subsidiaries when these

entities were exporting defective drywall to the United States.   For instance, one of BNBM's

board members, Tongchun Jia, is the chairman of the board of directors and general manager of

Taishan.   Mr. Tongchun Jia occupies similar positions with most of Taishan's subsidiaries.

Through Mr. Tongchun Jia's position with Taishan and its subsidiaries, BNBM controls the

actions and operations of these entities.   Even where Tongchun Jia does not formally hold a

position with a Taishan subsidiary, BNBM is able to exert its control over the subsidiary through

Mr. Tongchun Jia's influence.   For instance, the chairman of the board of TTP, Peng Shi Liang,

was also an employee of Taishan.   BNBM was thus able to control TTP since the chairman of

its board reported directly to Tongchun Jia.   Accordingly, since BNBM had direct control over

Taishan and its subsidiaries, it should be held responsible for their sale of defective drywall.

17.     Defendant, BNBM Group is a foreign corporation doing business in several

States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana,

Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information

and belief, Defendant, together with its affiliates, subsidiaries and/or actual or apparent agents,

manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum

drywall with the expectation that the drywall would be purchased by thousands of consumers, if

not more, within various States, including but not limited to, Alabama, California, Florida,

Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and

Virginia.   Upon information and belief, Defendant, together with its affiliates, subsidiaries

and/or actual or apparent agents, have continuously and systematically distributed and sold

7

drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Defendant, together with its affiliates, subsidiaries and/or actual or apparent agents, manufactured and sold, directly and indirectly, to certain suppliers in the United States.

18.    Defendant, CNBM is a foreign corporation doing business in several States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant, together with its affiliates, subsidiaries and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant together with its affiliates, subsidiaries and/or actual or apparent agents, has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Defendant, together with its affiliates, subsidiaries and/or actual or apparent agents, manufactured and sold, directly and indirectly, to certain suppliers in the United States.

19.    The Rule 12(b) Order correctly determined that CNBM is the controlling shareholder of BNBM.

20.    To the extent any of the foreign defendants are deemed to be foreign sovereign entities, including but not limited to Taishan, TTP, BNBM, BNBM Group, and CNBM, Plaintiffs bring their claims against these entities pursuant to 28 U.S.C. § 1605(a)(2), the

8

commercial activity exception to the Foreign Sovereign Immunities Act, or alternatively under §

1605(a)(5), the tortious act exception.   Plaintiffs allege that the claims against the foreign

defendants are based upon commercial activities carried on in the United States.   The claims

also seek monetary damages against a foreign state for damage to property occurring in the

United States, caused by the tortious acts or omissions of that foreign state, or of any official or

employee of that foreign state while acting within the scope of his office or employment.

**FACTS REGARDING THE DEFENDANTS**

21.     Upon information and belief, CNBM Group, together with its affiliates,

subsidiaries and/or actual or apparent agents, manufactured, sold, distributed, marketed and

placed within the stream of commerce gypsum drywall with the expectation that the drywall

would be purchased by thousands of consumers, if not more, within various States, including but

not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina,

South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, CNBM Group,

together with its affiliates, subsidiaries and/or actual or apparent agents, has continuously and

systematically distributed and sold drywall to numerous purchasers in the United States and their

drywall is installed in numerous structures in the United States. CNBM Group, together with its

affiliates, subsidiaries and/or actual or apparent agents, manufactured and sold, directly and

indirectly, to certain suppliers in the United States.

22.     The Rule 12(b) Order correctly determined that:

*       CNBM Group is the controlling shareholder of CNBM and BNBM Group.

*       CNBM Group is the controlling shareholder of BNBM and Taishan by virtue of

its control over CNBM and BNBM Group.

9

\*      All the Defendants operate as a single-business enterprise that is led by CNBM

Group.

23.     CNBM Group has exerted high levels of control over its subsidiary entities,

including but not limited to CNBM, BNBM, BNBM Group, Taishan, and TTP, by virtue of its

scheme of appointing overlapping officers and directors of subsidiary entities, its use of notices

and management reports sent to subsidiaries, its requirement that its direct subsidiaries manage

investments in subsidiaries pursuant to CNBM Group directives, the implementing of policies

for conducting audits, and its requirement that subsidiaries submit various reports.   Many

CNBM Group officers and directors hold positions with BNBM and Taishan.   The Company

culture of CNBM Group establishes a "Parent-subsidiary" company that is managed and directed

strictly from the top down.   For instance, one of CNBM Group's indirect subsidiary entities,

BNBM, owns the majority of Taishan's shares and has the ability to appoint the majority of

Taishan's board of directors.   CNBM Group controls BNBM by virtue of another CNBM Group

subsidiary, CNBM, which is the parent entity of BNBM.   CNBM Group has exerted day-to-day

control over each of its subsidiary entities and has used its influence to direct specific activities

and to appoint officers and directors that are beholden to CNBM Group.   Upon information and

belief, this influence was exerted with respect to permitting Taishan and BNBM to market,

export, and distribute drywall to the United States and the decision for Taishan to not appear at

Judgment Debtor proceedings before Judge Fallon in New Orleans.

24.     For instance, at the outset of the MDL 2047, CNBM Group in conjunction with its

controlled subsidiaries, Taishan and BNBM, discussed and then implemented a deliberate

strategy whereby Defendants would not respond to the litigation and would allow default

10

judgments to be entered against them.   Defendants have also shared lawyers and law firms.

When Taishan finally responded to this litigation, it did so for the limited purpose of contesting

personal jurisdiction.   When Taishan was unsuccessful in obtaining dismissal on these grounds

and lost its appeal to the Fifth Circuit Court of Appeals, it withdrew from the litigation with the

approval of its parent entities and was subsequently held in civil and criminal contempt on July

17, 2014.   Following the issuance of this contempt order, CNBM Group directed its subsidiaries

to cease depositing funds in New York banks.

## FACTS REGARDING DEFECTIVE DRYWALL

25.   Defendants' drywall is predominately composed of gypsum.

26.   In "defective drywall" (such as that designed, manufactured, exported, imported,

distributed, delivered, supplied, inspected, installed, marketed, and/or sold by Defendants

herein), sulfur compounds exit the drywall.

27.   The sulfur compounds, including Hydrogen Sulfide, Carbonyl Sulfide, and

Carbon Disulfide, exit Defendants' drywall and cause rapid sulfidation and damage to personal

property (such as the blackening and break down of air conditioning and refrigerator coils,

faucets, utensils, electrical wiring, copper, electronic appliances and other metal surfaces and

property).   These compounds are not only harmful to personal property but they are also smelly

and irritating to humans and pets.

28.   Although the drywall functions according to its intended purpose as a building

component, it is unfit for this purpose due to the damaging side effects and/or because its use is

so inconvenient that Plaintiffs would not have purchased their homes had the side effects been

disclosed by Defendants.

11

29.     As a direct and proximate result of Defendants' actions and omissions, Plaintiffs'
and the Class Members' structures and personal property have been exposed to Defendants'
defective drywall and the harmful effects of the sulfur compounds that exit from Defendants'
defective drywall.

30.   Defendants tortiously manufactured, exported, imported, distributed, delivered,
supplied, inspected, installed, marketed and/or sold the defective drywall, which was unfit for its
intended purpose in that the drywall caused rapid sulfidation and damage to personal property in
Plaintiffs' and Class Members' homes, residences or structures.

31.   Defendants recklessly, wantonly, and/or negligently manufactured, exported,
imported, distributed, delivered, supplied, inspected, installed, marketed and/or sold the defective
drywall at issue in this litigation.

32.   Defendants recklessly, wantonly and/or negligently implemented faulty procedures
for purposes of formulating, preparing, testing, and otherwise ensuring the quality and/or
character of the defective drywall at issue in this litigation.

33.   As a direct and proximate result of Defendants' defective and unfit drywall and the
harmful effects of the sulfur compounds that exit these products, Plaintiffs and Class Members
have suffered, and continue to suffer economic harm.

34.   As a direct and proximate result of Defendants' defective and unfit drywall and the
harmful effects of the sulfur compounds that exit these products, the Plaintiffs and the Class
Members have suffered, and continue to suffer damages.   These damages include, but are not
limited to, costs of inspection; costs and expenses necessary to remedy, replace and remove the
defective drywall and other property that has been impacted; lost value or devaluation of their

12

homes, residences or structures and property as a direct result of damage caused to the property

and indirect damage resulting from perceived defects to the property, including stigma damages

and loss of use and enjoyment of their home and property.

35.   As a direct and proximate result of Defendants' defective drywall and the harmful

effects of the sulfur compounds that exit these products, Plaintiffs and the Class Members have a

need for injunctive relief in the form of repair and remediation of their home, rescission of

contracts, and the ordering of emergency/corrective notice.

## CLASS ACTION ALLEGATIONS

36.   The representative Plaintiffs with claims against the Defendants assert a class

pursuant to Rules 23(a), (b)(1), (b)(2), (b)(3) and/or 23(c)(4) of the Federal Rules of Civil

Procedure, on behalf of themselves and those similarly situated, against the Defendants.

Plaintiffs define their class as follows:

> All owners and residents (past or present) of real property located
> in the United States containing defective Chinese drywall
> manufactured, sold, distributed, and/or supplied by Defendants.

### General Class Allegations and Exclusions from the Class Definitions

37.   The following Persons shall be excluded from the Class: (1) Defendants and their

subsidiaries, affiliates, officers and employees; (2) all Persons who make a timely election to be

excluded from the proposed Class; (3) governmental entities; and (4) the judge(s) to whom this

case is assigned and any immediate family members thereof.

38.   Upon information and belief, the defective and unreasonably dangerous drywall in

Plaintiffs' homes or other structures was installed in at least hundreds of homes, residences, or

other structures owned by Plaintiffs and Class Members.   Therefore, the Class is sufficiently

13

numerous such that the joinder of all members of the Class in a single action is impracticable.

39.    There are numerous common questions of law and fact that predominate over any questions affecting only individual members of the Class.    Among these common questions of law and fact are the following:

   a.    whether Defendants' drywall products are defective and/or unfit for their intended purpose;

   b.    whether Defendants tortuously manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed, and/or sold defective drywall products;

   c.    whether Plaintiffs are entitled to recover compensatory, exemplary, incidental, consequential, and/or other damages as a result of Defendants' unlawful and tortious conduct; and

   d.    whether Plaintiffs are entitled to recover injunctive and/or equitable relief as a result of Defendants' unlawful and tortious conduct.

40.    The legal claims of named Plaintiffs are typical of the legal claims of other Class Members.    Named Plaintiffs have the same legal interests and need for legal remedies as other Class Members.

41.    Named Plaintiffs are adequate representatives of the Class, together with their legal counsel, each will fairly and adequately protect the interests of Class Members.    Named Plaintiffs have no known conflict with the Class and are committed to the vigorous prosecution of this action.

42.    The undersigned counsel are competent counsel experienced in class action litigation, mass torts, and complex litigation involving harmful products.    Counsel will fairly and adequately protect the interests of the Class.

43.    The various claims asserted in this action are certifiable under the provisions of

14

Federal Rules of Civil Procedure 23(b)(1) because prosecuting separate actions by or against individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party opposing the Class; or adjudications with respect to individual Class members that, as a practical matter, would be dispositive of the interests of the other Class members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

44.    The claims for injunctive relief in this case are certifiable under Fed. R. Civ. P. 23(b)(2).   Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief is appropriate respecting the Class as a whole.

45.    A class action is superior in this case to other methods of dispute resolution.   The Class members have an interest in class adjudication rather than individual adjudication because of their overlapping rights.   It is highly desirable to concentrate the resolution of these claims in this single forum because it would be difficult and highly unlikely that the affected Class Members would protect their rights on their own without this class action case.   Management of the class will be efficient and far superior to the management of individual lawsuits. Accordingly, Plaintiffs' legal claims are properly certified pursuant to Rule 23(b)(3).

46.    The issues particularly common to the Class members' claims, some of which are identified above, are alternatively certifiable pursuant to Fed. R. Civ. P. 23(c)(4), as resolution of these issues would materially advance the litigation, and class resolution of these issues is superior to repeated litigation of these issues in separate trials.

## COUNT I
## NEGLIGENCE
### (Against All Defendants)

47.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

48.   Defendants owed a duty to Plaintiffs and Class Members to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, i) installing, j) marketing, and/or k) selling this drywall, including a duty to adequately warn of their failure to do the same.

49.   Defendants knew or should have known that their wrongful acts and omissions would result in harm and damages in the manner set forth herein.

50.   Defendants breached their duty to exercise reasonable care in the designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, and/or selling this drywall.

51.   Defendants likewise breached their duties to Plaintiffs and Class Members by failing to warn about the defective nature of the drywall.   Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the property and bodies of Plaintiffs and Class Members.

52.   Defendants breached their duty to exercise reasonable care to timely remove and/or recall from the market and/or otherwise prevent the continued contact of Plaintiffs and Class Members with the drywall, upon leaning it had been sold in an unreasonably dangerous condition.

53.   Given the defect in the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm, and damages to Plaintiffs and Class

16

Members.

54.   As a direct and proximate result of Defendants' acts and omissions, Plaintiffs and

Class Members were harmed and have incurred damages as described herein.

### COUNT II
### NEGLIGENCE PER SE
### (Against All Defendants)

55.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

56.   Defendants owed statutory duties to Plaintiffs and Class Members to exercise

reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f)

delivering, g) supplying, h) inspecting, I) marketing, and/or j) selling this drywall.

57.   Defendants breached their statutory duties to the Plaintiffs and Class Members by

failing to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing,

e) distributing, f) delivering, g) supplying, h) inspecting, i) marketing, and/or j) selling this

drywall.

58.   Defendants likewise breached their statutory duties, including but not limited to

those imposed under the International Building Code ("IBC") and other State and local Building

Codes, to Plaintiffs and Class Members by failing to warn about the defective nature of the

drywall.   For instance, it is specifically alleged that Defendants furnished the drywall in

violation of ASTMC C 1396/C 1396M-069, and its predecessor(s).

59.   Defendants, through the exercise of reasonable care, knew or should have known the

nature of the defective drywall and the adverse effects that it could have on the property and

bodies of Plaintiffs and Class Members.

60.   Given the defective nature of Defendants' drywall, Defendants knew or should have

17

known that their product could, and would, cause harm, and damages to Plaintiffs and Class

Members.

61.    As a direct and proximate result of Defendants' acts and omissions, Plaintiffs and

Class Members were harmed and have incurred damages as described herein.

**COUNT III**
**STRICT LIABILITY**
**(Against All Defendants)**

62.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

63.    At all times relevant hereto, Defendants were in the business of distributing,

delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public.

64.    The drywall, including that installed in the homes of Class Members was placed

by Defendants in the stream of commerce.

65.    Defendants knew that the subject drywall would be used without inspection by

consumers.

66.    Defendants intended that the drywall reach the ultimate consumers, such as Class

Members, and it indeed reached Class Members when it was installed in their homes.

67.    When installed in Class Members' homes, the drywall was in substantially the

same condition as it was in when Defendants manufactured, sold, and/or delivered it.

68.    At all times relevant hereto the subject drywall was used in a manner consistent

with the uses intended by, or known to Defendants, and in accordance with the Defendants'

directions and instructions.

69.    The subject drywall was not misused or altered by any third parties.

70.    The Defendants' drywall was improperly manufactured, designed, inspected,

18

tested, marketed, distributed, and sold.

71.     The design impropriety was in designing drywall that allows high levels of sulfur compounds to exit the drywall.

72.     The manufacturing impropriety was in improperly selecting, testing, inspecting, mining, making, assembling, and using, gypsum for drywall with levels of sulfur compounds that were too high and allow high levels of sulfur compounds to exit the drywall.

73.     The drywall was also defective because it was improperly exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold in a unacceptable condition, as described above.

74.     The Defendants' negligence in manufacturing, designing, inspecting, testing, marketing, distributing, and selling of the drywall rendered it unsafe and unreasonably dangerous for its intended use and to Class Members.

75.     The drywall is also defective and unreasonably dangerous because Defendants failed to adequately warn and instruct Class Members of their negligent design, inspection, testing, manufacturing, marketing, and selling of the drywall.

76.     Class Members were unaware of the unreasonably dangerous propensities and defective condition of the drywall, nor could Class Members, acting as reasonably prudent people discover that Defendants' drywall was defective, as set forth herein, or perceive its danger.

77.     Defendants' defective drywall was much more dangerous and harmful than expected by the average consumer and by Class Members.

78.     Defendants' defective drywall benefit to Class Members, if any, was greatly

19

outweighed by the risk of harm and danger to them.

79.     The harmful and dangerous propensities of the drywall, as well as Defendants'
failure to adequately warn Class Members of these propensities rendered the drywall
unreasonably dangerous and was the direct and proximate cause of damages to Class Members.

**COUNT IV**
**BREACH OF EXPRESS AND/OR IMPLIED WARRANTIES**
**(Against All Defendants)**

80.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

81.     Defendants and/or their agents were in privity with Plaintiffs and Class Members
and/or Plaintiffs and Class Members were foreseeable third party beneficiaries of any warranty.

82.     At the times Defendants utilized, supplied, inspected, and/or sold their drywall for
use in structures owned by Plaintiffs and Class Members, Defendants knew, or it was reasonably
foreseeable, that the drywall would be installed in structures owned by Plaintiffs and Class
Members for use as a building material, and expressly or impliedly warranted the product to be
fit for that use.

83.     Defendants placed their drywall products into the stream of commerce in a
defective condition and these products were expected to, and did, reach users, handlers, and
persons coming into contact with said products without substantial change in the condition in
which they were sold.

84.     Although the drywall functions according to its intended purpose as a building
component, it is unfit, defective as alleged in Paragraph 28 and not merchantable for this purpose
due to the damaging side effects and/or because its use is so inconvenient that Plaintiffs would
not have purchased their homes had the side effects been disclosed by Defendants.

20

85.     The Defendants breached their warranty because the drywall was not fit and safe for the particular purposes for which the goods were required (to be installed in structures owned by Plaintiffs and Class Members as a building material) due to the problems set forth herein.

86.     Defendants had reasonable and adequate notice of the Plaintiffs' and the Class Members' claims for breach of warranty and failed to cure.

87.     As a direct and proximate result of Defendants' breach of warranties, Plaintiffs and Class Members have incurred harm and damages as described herein.

**COUNT V**
**REDHIBITION**
**(By Louisiana Class Members Against All Defendants)**

88.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

89.     The drywall manufactured, distributed and/or sold by Defendants was not reasonably fit for its ordinary and intended purpose as alleged in Paragraph 28 above.

90.     Defendants are therefore liable to Louisiana Plaintiffs for all damages reasonable in the premises, in accordance with La. Civ. Code art. 2524.

91.     In addition, or in the alternative, the drywall manufactured, distributed and/or sold by Defendants contained redhibitory defects, in that, at the time of delivery, the propensity to allow sulfur compounds to exit the drywall renders the drywall so useless and/or inconvenient that it must be presumed that Plaintiffs would not have purchased the drywall had they known of the redhibitory defect or defects.

92.     In the alternative, the defects are redhibitory defects in that, while not rendering the drywall totally useless, diminish the drywall's use and/or value to such an extent that it must be presumed that the buyer would have bought it, but for a lesser price.

21

93.     The Defendants are conclusively presumed to know of the defects in the drywall.

94.     In addition, it is believed and alleged that All Defendants knew of the defects in the drywall at the time the drywall was delivered and/or sold.

95.     Defendants have had numerous opportunities to repair and/or replace the drywall and associated fixtures and/or building components and have failed to do so; in addition, and/or in the alternative, such requests have been, would have been and/or would be futile; Defendants, in addition, or alternatively, had actual knowledge of the problems in the drywall and the need for replacement, remediation and/or repair.

96.     Defendants are therefore liable to all Louisiana Plaintiffs for a return of the purchase price, (with interest from the time it was paid), reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the drywall and associated items, for damages, and for reasonable attorneys' fees, in accordance with La. Civ. Code art. 2545.

## COUNT VI
## LOUISIANA PRODUCTS LIABILITY ACT
### (By Louisiana Class Members Against All Defendants)

97.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

98.     In addition to any and all damages, attorneys fees and other remedies made available to Louisiana Plaintiffs under the warranty of fitness and/or warranty against redhibitory defects, the Defendants are liable to Louisiana Plaintiffs under the Louisiana Products Liability Act, ("LPLA"), La. R.S. 9:2800.51, *et seq.*

99.     Defendants, upon information and belief, expressly warranted that "the gypsumboards manufactured and sold ... are guaranteed to be free from defects in materials and

22

workmanship."

100.    The Defendants expressly warranted that "the gypsumboards were manufactured in accordance to ASTM C36."

101.    The drywall at issue is, in all cases, unreasonably dangerous by virtue of the unreasonable emission of sulfur compounds which do not in any way contribute to or enhance the utility of the drywall, yet pose a risk to the wiring, plumbing, appliances, personal property, overall economic value of the property and financial security of the owner, and/or the health of the residents of the property.

102.    At all times pertinent and material hereto, there existed alternative feasible manufacturing processes and/or designs of drywall which perform all of the functions and utility of traditional drywall, without allowing unreasonable levels of sulfur compounds to exit the drywall.

103.    At all times pertinent and material hereto, Defendants knew that their drywall was unreasonably dangerous and/or defective as set forth herein.

104.    In the alternative, Defendants should have, at all times pertinent and material hereto, known of the unreasonably dangerous and/or defective characteristics and/or conditions, had they reasonably employed then-existing scientific and/or technical knowledge, reasonable testing, and/or other reasonable and then-accepted methods of quality assurance and/or quality control.

105.    Defendants' drywall is unreasonably dangerous in composition or construction in that, at the time it left Defendant's control, it deviated in a material way from Defendant's own specifications or performance standards.

23

106.    In addition, and in the alternative, Defendants' drywall is unreasonably dangerous in design, in that, at the time the drywall left Defendant's control, there existed an alternative design for the product that was capable of preventing Plaintiffs' damage, and the likelihood of causing the plaintiffs' damage and the gravity of that harm outweighed the burden (if any) on the Defendant in adopting such alternative design and the adverse effect (if any) on the utility of the drywall.

107.    In addition, and in the alternative, Defendants' drywall is unreasonably dangerous in that it fails to conform to an express warranty about the product which induced the use of the product and caused damage to Plaintiffs to the extent that the warranty was untrue.

108.    In addition, and in the alternative, Defendants' drywall is unreasonably dangerous due to an inadequate warning, in that, at the time the drywall left Defendant's control, the drywall possessed a characteristic that might cause damage and yet Defendant failed to use reasonable care to provide an adequate warning of such characteristics and/or dangers to users and/or handlers of the drywall.

109.    Defendants are therefore liable to Louisiana Plaintiffs for all damages reasonable in the premises.

## COUNT VII
### PRIVATE NUISANCE
### (All Defendants)

110.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

111.    The Defendants' tortious or wrongful acts or omissions have caused sulfur compounds and/or other chemical leaching into structures owned by Plaintiffs and Class Members which has unreasonably interfered, and continues to interfere, with the Plaintiffs' and

24

Class Members' use and enjoyment of their properties and caused them harm and damage as discussed herein.

112.   Defendants' interference has impaired the rights of Plaintiffs' and Class Members' health, comfort, safety, free use of their property, and/or peaceful enjoyment of their property.

113.   Defendants' invasions were intentional and unreasonable, and/or unintentional but otherwise negligent or reckless.

114.   The interference with Plaintiffs' and Class Members' use of their property caused by Defendants is substantial and is ongoing.

115.   Defendants' private nuisance was the direct, proximate, and foreseeable cause of Plaintiffs' and Class Members' damages, harm, and loss, which they suffered and will continue to suffer.

116.   As a direct and proximate result of Defendants' creation of a private nuisance, Plaintiffs and Class Members have incurred harm and damages as described herein.

## COUNT VIII
## UNJUST ENRICHMENT
### (Against All Defendants)

117.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

118.   Defendants received money as a result of Plaintiffs' and Class Members' purchases of Defendants' defective drywall, or purchases of structures containing this drywall, either directly or through an agent, and Defendants wrongfully accepted and retained these benefits to the detriment of Plaintiffs and Class Members.

119.   Defendants' acceptance and retention of these benefits under the circumstances make it inequitable and unjust for Defendants to retain the benefit without payment of the value to the Plaintiffs and the Class Members.

120.   Defendants, by the deliberate and tortious conduct complained of herein, have been unjustly enriched in a manner which warrants restitution.

**COUNT IX**
**VIOLATION OF CONSUMER PROTECTION ACTS**
**(Against All Defendants)**

121.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

122.   This is an action for relief under the various Consumer Protection Acts of the jurisdictions in which affected properties are present, including but not limited to, L.SA-R.S. 51:1401, *et seq.* (Louisiana Unfair Trade Practices and Consumer Protection Law); Ala. Code 1975 ' 8-19-1, *et seq.* (Alabama Deceptive Trade Practices Act); G.S. ' 75-1.1, *et seq.* (North Carolina Consumer Protection Act); F.S. ' 501.201, *et seq.* (Florida Deceptive and Unfair Trade Practices Act); Va. Code. Ann. ' 59.1-196, *et seq.* (Virginia Consumer Protection Act); Tex. Bus. Com. Code Ann. ' 17.41, *et seq.* (Texas Deceptive Trade Practices-Consumer Protection Act); Miss. Code Ann. ' 75-24-1, *et seq.* (Mississippi Consumer Protection Act); GA ST ' 10-1-393, *et seq.* (Georgia Consumer Protection Act);   SC ST ' 39-5-20, *et seq.* (South Carolina Consumer Protection Act); Tenn. Code Ann. ' 47-18-104, et seq. (Tennessee Consumer Protection Act).

123.   The Defendants' acts and omissions as well as their failure to use reasonable care in this matter as alleged in this complaint, including but not limited to, the knowing misrepresentation or failure to disclose the source, affiliation, origin, characteristics, ingredients,

26

standards and quality of defective drywall constitute violation of the provisions of the Consumer

Protection Acts of the Relevant States.

124.   Plaintiffs and Class Members have suffered actual damages as a result of

Defendants' violation of these Consumer Protection Acts and are entitled to relief.

125.   As a direct and proximate result of Defendants' violations of the Consumer

Protection Acts of the Relevant States, Plaintiffs and Class Members have incurred harm and

damages as described herein.

**COUNT X**
**EQUITABLE AND INJUNCTIVE RELIEF**
**(Against All Defendants)**

126.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

127.   Plaintiffs and the Class Members are without adequate remedy at law, rendering

injunctive and other equitable relief appropriate.

128.   Plaintiffs and the Class Members will suffer irreparable harm if the Court does not

render the injunctive relief set forth herein, and if defendants are not ordered to recall, buy back,

rescind, and/or repair the structures owned by Plaintiffs and Class Members.

129.   Plaintiffs, on behalf of themselves and all others similarly situated, demand

injunctive and equitable relief and further, that defendants be ordered to: (1) remediate, repair

and/or replace the drywall in Class Members' homes or other structures upon proof by the

defendants of the feasibility of such remedy or repair; (2) cease and desist from misrepresenting

to the Class and the general public that the drywall is not defective and/or unreasonably

dangerous as alleged herein; and (3) institute, at their own cost, a public awareness campaign to

alert the Class and general public of the harm and dangers associated with the drywall.

27

Respectfully submitted,

Dated: August 1, 2017

By: s/William G. Colvin
William Given Colvin, Esquire
Tennessee Bar ID#006733
William G. Colvin, PLLC
801 Broad Street Suite 428
Chattanooga, TN 37402
Phone: (423) 265-8804
Fax: (423) 267-5915
bcolvin"williamgcolvinlaw.com

*Attorneys for Plaintiffs*

## COURT APPOINTED PLAINTIFFS' LIASON AND LEAD COUNSEL IN MDL 2047

Russ M. Herman
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
rherman"hhklawfirm.com

Arnold Levin
Levin Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
alevin"lfsblaw.com

*Plaintiffs' Liaison Counsel MDL 2047*    *Plaintiffs' Lead Counsel MDL 2047*

## COURT APPOINTED PLAINTIFFS' STEERING COMMITTEE IN MDL 2047 - OF COUNSEL TO PLAINTIFFS

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios"bkc-law.com

Robert Becnel
Becnel Law Firm, LLC
425 W. Airline Highway, Suite B
Laplace, LA 70068
Phone: (985) 536-1186
Fax: (985) 536-6445
rbecnel"becnellaw.com

Peter Prieto
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
pprieto"podhurst.com

Patrick Montoya
Colson, Hicks, Eidson
255 Alhambra Circle, Penthouse
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
patrick"colson.com

Hugh P. Lambert
The Lambert Firm
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert"thelambertfirm.com

James Robert Reeves
Reeves & Mestayer, PLLC
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr"attorneys4people.com

Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5002
dan"wbmllp.com

Bruce William Steckler
Steckler Gresham Cochran
12720 Hillcrest Road, Ste 1045
Dallas, TX 75230
Phone: (972) 387-4040
Fax: (972) 387-4041
bruce"stecklerlaw.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
  Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon"levinlaw.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
  & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier"gainsben.com

Christopher Seeger
Seeger Weiss, LLP
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger"seegerweiss.com

Richard J. Serpe
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe"serpefirm.com

30

Victor M. Diaz, Jr.
V.M. Diaz and Partners, LLC
119 Washington Ave, Suite 402
Miami Beach, FL 33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor"diazpartners.com

## OF COUNSEL TO COURT APPOINTED PLAINTIFFS' STEERING COMMITTEE IN MDL 2047 - OF COUNSEL TO PLAINTIFFS

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W, Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax:   (202) 540-7201
rlewis"hausfeldllp.com

Anthony D. Irpino
IRPINO AVIN HAWKINS LAW FIRM
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino"irpinolaw.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew"lemmonlawfirm.com

## COUNSEL FOR INDIVIDUAL PLAINTIFFS

Pete Albanis, Esquire
Morgan & Morgan
12800 University Drive
Fort Myers, FL   33907
(239) 433-6880 (telephone)

*Attorney for James and Deloris Redden and Brian and Beth Watkins*

Daniel Bryson, Esquire
Whitfield Bryson Mason
900 W. Morgan Street
Raleigh, NC   27603
(919) 600-5000 (telephone)

*Attorneys for Bobby and Darlyne Mullins*

# Exhibit "10"

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Andy Mertlitz, individually and on behalf of all others similarly situated

**DEFENDANTS**

Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., et al.

**(b)** County of Residence of First Listed Plaintiff   Bowie County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Foreign Corporation
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Bruce William Steckler, Esquire; Steckler Gresham Cochran, 12720
Hillcrest Rd., Ste. 1045, Dallas, TX  75230; (972) 387-4040

Attorneys *(If Known)*

See Attached

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1  U.S. Government Plaintiff | ☐ 3  Federal Question *(U.S. Government Not a Party)* | |
| ☐ 2  U.S. Government Defendant | ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)* | |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☒ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original Proceeding   ☐ 2  Removed from State Court   ☐ 3  Remanded from Appellate Court   ☐ 4  Reinstated or Reopened   ☐ 5  Transferred from Another District *(specify)*   ☐ 6  Multidistrict Litigation - Transfer   ☐ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Section 1332(d)(2) and 28 U.S.C. Section 1711, et. seq.
Brief description of cause:
Product liability claims involving Chinese manufactured drywall

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*

JUDGE   Eldon E. Fallon

DOCKET NUMBER   09-MD-2047 (E.D. La.)

DATE   8/1/2017

SIGNATURE OF ATTORNEY OF RECORD
/s/ Bruce W. Steckler

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

### Defendants' Attorneys

**Attorneys for China National Building Material Co., Ltd., Beijing New Building Materials Public Limited Co. and Beijing New Building Materials Group Co., Ltd.:**

L. Christopher Vejnoska
Orrick, Herrington & Sutcliffe LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105

**Attorneys for Taishan Gypsum Co., Ltd. and Taian Taishan Plasterboard Co., Ltd.:**

Bernard Taylor
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, GA 30309

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TEXARKANA DIVISION

| | |
|---|---|
| **Andy Mertlitz, individually, and on behalf of all others similarly situated,** | **CASE NO.:** 5:17-cv-140 |
| **Plaintiffs,** | |
| | **CLASS ACTION** |
| **v.** | **COMPLAINT** |
| **Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd.; Tai'an Taishan Plasterboard Co., Ltd.; Beijing New Building Materials Public Limited Co.; Beijing New Building Materials (Group) Co., Ltd.; China National Building Material Co., Ltd.;** | **JURY TRIAL DEMAND** |
| **Defendants.** | |

_____/

## PLAINTIFFS' OMNIBUS CLASS ACTION COMPLAINT (XXVII) (TEXAS *AMORIN* DEFAULT)

Pursuant to Fed. R. Civ. P. 23, the class representative in this action bring suit on behalf of himself and all other similarly situated owners and residents of real property containing defective Chinese manufactured drywall that was designed, manufactured, imported, distributed, delivered, supplied, marketed, inspected, or sold by the Defendants.

The class representative is pursuing a nationwide class action against the defendants with respect to the drywall located in plaintiffs' homes. Each of the Defendants in this action, Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd. ("Taishan"); Taian Taishan Plasterboard Co., Ltd. ("TTP"); Beijing New Building Materials Public Limited Co. ("BNBM");

1

Beijing New Building Materials (Group) Co., Ltd. ("BNBM Group"); China National Building Material Co., Ltd. ("CNBM"), are liable for damages incurred by Plaintiffs due to their role in the design, manufacture, importing, distributing, delivery, supply, marketing, inspecting, installing, or sale of the defective drywall at issue in this litigation.

## JURISDICTION, PARTIES, AND VENUE

1.      Original jurisdiction of this Court exists by virtue of 28 U.S.C. §1332(d)(2) and the Class Action Fairness Act ("CAFA").   *See* 28 U.S.C. § 1711, *et. seq*.   The Plaintiffs and certain of the Defendants in these actions are citizens of different states and the amounts in controversy in these actions exceed five million dollars ($5,000,000.00), exclusive of interest and costs.

2.      Venue in this district satisfies the requirements of 28 U.S.C. §1391(b)(1)-(2) and (c) because Plaintiffs and a significant number of the absent class members reside in this jurisdiction and a substantial amount of the events and occurrences giving rise to these claims occurred in this District, or a substantial part of the property that is the subject of this action is situated in this district.

## PLAINTIFFS

3.      For purposes of clarity, the Representative Plaintiff is asserting claims on behalf of all owners and residents of the subject properties, including but not limited to, minors and other residents of the properties who do not appear herein as named plaintiffs.

4.      The Representative Plaintiff on this complaint has previously asserted claims against Defendants in complaints now pending before the Honorable Eldon E. Fallon in consolidated MDL proceedings in the United States District Court for the Eastern District of

2

Louisiana, in which Defendants have been adjudicated in default.   The instant complaint is being filed as a protective action with respect to the prior filings before the MDL Court.

5.      Plaintiff, Andy Mertlitz is a citizen of Texas and owns real property located at 100 Andy Drive, Dekalb, Texas 75559.   Plaintiff has incurred damages caused by the drywall distributed by Defendants and is participating as a class representative for similarly situated individuals.

## DEFENDANTS

6.      Unless specifically stated to the contrary, all individual defendants are citizens of the state where they do business and all entities are citizens of the state where they are organized. For those entities, where the state of organization is not listed, it is asserted upon information and belief that the entity is incorporated and/or organized in the state of its principal place of business.

7.      Defendant Taishan is a foreign corporation doing business in several States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant, together with its affiliates and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in

3

the United States. Defendant manufactured and sold, directly and indirectly, to certain suppliers in the United States.

8.      Defendant TTP is a foreign corporation doing business in several States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant, together with its affiliates and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States.   Defendant manufactured and sold, directly and indirectly, to certain suppliers in the United States.

9.      Defendant TTP is a wholly owned subsidiary of Defendant Taishan.

10.     During the period when Taishan and its subsidiaries were distributing defective drywall to the United States, these entities consistently misrepresented the drywall they were exporting complied with ISO and ASTM quality standards. For instance, Taishan's website boasted that it was exporting large quantities of drywall to the United States and that its drywall complied with ISO quality standards.   The employees of Taishan and its subsidiaries also sent emails to potential customers boasting about their experience exporting large quantities of drywall to the United States.   These employees also provided false assurances that the drywall

4

they were exporting complied with ASTM quality standards.

11.     Defendant BNBM is a foreign corporation doing business in several States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant, together with its affiliates and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Defendant manufactured and sold, directly and indirectly, to certain suppliers in the United States.

12.     On April 21, 2017, Judge Fallon in MDL 2047 issued an Order and Reasons on Defendants' motions to dismiss pursuant to Fed.R.Civ.P. 12(b) (hereafter "Rule 12(b) Order"). *See* Rec.Doc.No. 20739.   The Rule 12(b) Order correctly determined that:

*       BNBM is the controlling shareholder of Taishan and that Taishan is an agent and alter ego of BNBM.

*       BNBM is controlled by China National Building Materials Group Co. ("CNBM Group").[1]

---

[1] CNBM Group is not being pursued as a defendant in the instant complaint as CNBM Group has been dismissed as a defendant by Judge Fallon. The order of dismissal is interlocutory

5

\*      BNBM has exercised a high degree of control over Taishan's operational management and its day to day operations.

\*      BNBM has had voting control over Taishan's board since 2005.

\*      BNBM controls Taishan's board and management team.

\*      BNBM audits Taishan and requires that Taishan submit weekly reports.

\*      BNBM must approve certain activities by Taishan including the building of factories and all matters concerning drywall production.

\*      BNBM controls Taishan's financial and strategic business decisions.

\*      Taishan must provide BNBM with a stake in all of its subsidiaries.

\*      BNBM and Taishan share officers, directors, and executives.

\*      Taishan and BNBM also share certain property.

\*      BNBM provides Taishan with loan guarantees.

13.      On October 13, 2015, CNBM publicly announced that BNBM will acquire 100% of Taishan's shares.   BNBM subsequently acquired 100% of Taishan's shares on October 27, 2016.

14.      BMBM consistently exerted control over Taishan and its subsidiaries when these entities were exporting defective drywall to the United States.   For instance, one of BNBM's board members, Tongchun Jia, is the chairman of the board of directors and general manager of Taishan.   Mr. Tongchun Jia occupies similar positions with most of Taishan's subsidiaries. Through Mr. Tongchun Jia's positon with Taishan and its subsidiaries, BNBM controls the

---

and is subject to appeal at a later date.

6

actions and operations of these entities.   Even where Tongchun Jia does not formally hold a

position with a Taishan subsidiary, BNBM is able to exert its control over the subsidiary through

Mr. Tongchun Jia's influence.   For instance, the chairman of the board of TTP, Peng Shi Liang,

was also an employee of Taishan.   BNBM was thus able to control TTP since the chairman of

its board reported directly to Tongchun Jia.   Accordingly, since BNBM had direct control over

Taishan and its subsidiaries, it should be held responsible for their sale of defective drywall.

15.    Defendant, BNBM Group is a foreign corporation doing business in several

States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana,

Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information

and belief, Defendant, together with its affiliates, subsidiaries and/or actual or apparent agents,

manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum

drywall with the expectation that the drywall would be purchased by thousands of consumers, if

not more, within various States, including but not limited to, Alabama, California, Florida,

Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and

Virginia.   Upon information and belief, Defendant, together with its affiliates, subsidiaries

and/or actual or apparent agents, have continuously and systematically distributed and sold

drywall to numerous purchasers in the United States and their drywall is installed in numerous

structures in the United States. Defendant, together with its affiliates, subsidiaries and/or actual

or apparent agents, manufactured and sold, directly and indirectly, to certain suppliers in the

United States.

16.    Defendant, CNBM is a foreign corporation doing business in several States,

including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi,

7

North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief,

Defendant, together with its affiliates, subsidiaries and/or actual or apparent agents,

manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum

drywall with the expectation that the drywall would be purchased by thousands of consumers, if

not more, within various States, including but not limited to, Alabama, California, Florida,

Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and

Virginia.   Upon information and belief, Defendant together with its affiliates, subsidiaries and/or

actual or apparent agents, has continuously and systematically distributed and sold drywall to

numerous purchasers in the United States and their drywall is installed in numerous structures in

the United States. Defendant, together with its affiliates, subsidiaries and/or actual or apparent

agents, manufactured and sold, directly and indirectly, to certain suppliers in the United States.

17.     The Rule 12(b) Order correctly determined that CNBM is the controlling

shareholder of BNBM.

18.     To the extent any of the foreign defendants are deemed to be foreign sovereign

entities, including but not limited to Taishan, TTP, BNBM, BNBM Group, and CNBM,

Plaintiffs bring their claims against these entities pursuant to 28 U.S.C. § 1605(a)(2), the

commercial activity exception to the Foreign Sovereign Immunities Act, or alternatively under §

1605(a)(5), the tortious act exception.   Plaintiffs allege that the claims against the foreign

defendants are based upon commercial activities carried on in the United States.   The claims

also seeks monetary damages against a foreign state for damage to property occurring in the

United States, caused by the tortious acts or omissions of that foreign state, or of any official or

employee of that foreign state while acting within the scope of his office or employment.

8

## FACTS REGARDING THE DEFENDANTS

19.     Upon information and belief, CNBM Group, together with its affiliates, subsidiaries and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, CNBM Group, together with its affiliates, subsidiaries and/or actual or apparent agents, has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. CNBM Group, together with its affiliates, subsidiaries and/or actual or apparent agents, manufactured and sold, directly and indirectly, to certain suppliers in the United States.

20.     The Rule 12(b) Order correctly determined that:

*       CNBM Group is the controlling shareholder of CNBM and BNBM Group.

*       CNBM Group is the controlling shareholder of BNBM and Taishan by virtue of its control over CNBM and BNBM Group.

*       All the Defendants operate as a single-business enterprise that is led by CNBM Group.

21.     CNBM Group has exerted high levels of control over its subsidiary entities, including but not limited to CNBM, BNBM, BNBM Group, Taishan, and TTP, by virtue of its scheme of appointing overlapping officers and directors of subsidiary entities, its use of notices and management reports sent to subsidiaries, its requirement that its direct subsidiaries manage

9

investments in subsidiaries pursuant to CNBM Group directives, the implementing of policies for conducting audits, and its requirement that subsidiaries submit various reports.   Many CNBM Group officers and directors hold positions with BNBM and Taishan.   The Company culture of CNBM Group establishes a "Parent-subsidiary" company that is managed and directed strictly from the top down.   For instance, one of CNBM Group's indirect subsidiary entities, BNBM, owns the majority of Taishan's shares and has the ability to appoint the majority of Taishan's board of directors.   CNBM Group controls BNBM by virtue of another CNBM Group subsidiary, CNBM, which is the parent entity of BNBM.   CNBM Group has exerted day-to-day control over each of its subsidiary entities and has used its influence to direct specific activities and to appoint officers and directors that are beholden to CNBM Group.   Upon information and belief, this influence was exerted with respect to permitting Taishan and BNBM to market, export, and distribute drywall to the United States and the decision for Taishan to not appear at Judgment Debtor proceedings before Judge Fallon in New Orleans.

22.     For instance, at the outset of the MDL 2047, CNBM Group in conjunction with its controlled subsidiaries, Taishan and BNBM, discussed and then implemented a deliberate strategy whereby Defendants would not respond to the litigation and would allow default judgments to be entered against them.   Defendants have also shared lawyers and law firms. When Taishan finally responded to this litigation, it did so for the limited purpose of contesting personal jurisdiction.   When Taishan was unsuccessful in obtaining dismissal on these grounds and lost its appeal to the Fifth Circuit Court of Appeals, it withdrew from the litigation with the approval of its parent entities and was subsequently held in civil and criminal contempt on July 17, 2014.   Following the issuance of this contempt order, CNBM Group directed its subsidiaries

10

to cease depositing funds in New York banks.

## FACTS REGARDING DEFECTIVE DRYWALL

23.    Defendants' drywall is predominately composed of gypsum.

24.    In "defective drywall" (such as that designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed, and/or sold by Defendants herein), sulfur compounds exit the drywall.

25.    The sulfur compounds, including Hydrogen Sulfide, Carbonyl Sulfide, and Carbon Disulfide, exit Defendants' drywall and cause rapid sulfidation and damage to personal property (such as the blackening and break down of air conditioning and refrigerator coils, faucets, utensils, electrical wiring, copper, electronic appliances and other metal surfaces and property).   These compounds are not only harmful to personal property but they are also smelly and irritating to humans and pets.

26.    Although the drywall functions according to its intended purpose as a building component, it is unfit for this purpose due to the damaging side effects and/or because its use is so inconvenient that Plaintiffs would not have purchased their homes had the side effects been disclosed by Defendants.

27.    As a direct and proximate result of Defendants' actions and omissions, Class Members' structures and personal property have been exposed to Defendants' defective drywall and the harmful effects of the sulfur compounds that exit from Defendants' defective drywall.

28.    Defendants tortiuosly manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed and/or sold the defective drywall, which was unfit for its intended purpose in that the drywall caused rapid sulfidation and damage to personal property in

Class Members' homes, residences or structures.

29.     Defendants recklessly, wantonly, and/or negligently manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed and/or sold the defective drywall at issue in this litigation.

30.     Defendants recklessly, wantonly and/or negligently implemented faulty procedures for purposes of formulating, preparing, testing, and otherwise ensuring the quality and/or character of the defective drywall at issue in this litigation.

31.     As a direct and proximate result of Defendants' defective and unfit drywall and the harmful effects of the sulfur compounds that exit these products, Class Members have suffered, and continue to suffer economic harm.

32.     As a direct and proximate result of Defendants' defective and unfit drywall and the harmful effects of the sulfur compounds that exit these products, Class Members have suffered, and continue to suffer damages.   These damages include, but are not limited to, costs of inspection; costs and expenses necessary to remedy, replace and remove the defective drywall and other property that has been impacted; lost value or devaluation of their homes, residences or structures and property as a direct result of damage caused to the property and indirect damage resulting from perceived defects to the property, including stigma damages and loss of use and enjoyment of their home and property.

33.     As a direct and proximate result of Defendants' defective drywall and the harmful effects of the sulfur compounds that exit these products, Class Members have a need for injunctive relief in the form of repair and remediation of their home, rescission of contracts, and the ordering of emergency/corrective notice.

## CLASS ACTION ALLEGATIONS

34.     The representative Plaintiff with claims against the Defendants asserts a class

pursuant to Rules 23(a), (b)(1), (b)(2), (b)(3) and/or 23(c)(4) of the Federal Rules of Civil

Procedure, on behalf of himself and those similarly situated, against the Defendants.   The

Representative Plaintiff defines the class as follows:

> All owners and residents (past or present) of real property located
> in the United States containing defective Chinese drywall
> manufactured, sold, distributed, and/or supplied by Defendants.

### General Class Allegations and Exclusions from the Class Definitions

35.     The following Persons shall be excluded from the Class: (1) Defendants and their

subsidiaries, affiliates, officers and employees; (2) all Persons who make a timely election to be

excluded from the proposed Class; (3) governmental entities; and (4) the judge(s) to whom this

case is assigned and any immediate family members thereof.

36.     Upon information and belief, the defective and unreasonably dangerous drywall

in Plaintiffs' homes or other structures was installed in at least hundreds of homes, residences, or

other structures owned by Class Members.   Therefore, the Class is sufficiently numerous such

that the joinder of all members of the Class in a single action is impracticable.

37.     There are numerous common questions of law and fact that predominate over any

questions affecting only individual members of the Class.   Among these common questions of

law and fact are the following:

> a.      whether Defendants' drywall products are defective and/or unfit for their
> intended purpose;
>
> b.      whether Defendants tortuously manufactured, exported, imported,
> distributed, delivered, supplied, inspected, installed, marketed, and/or sold

13

defective drywall products;

c.      whether Plaintiffs are entitled to recover compensatory, exemplary, incidental, consequential, and/or other damages as a result of Defendants' unlawful and tortious conduct; and

d.      whether Plaintiffs are entitled to recover injunctive and/or equitable relief as a result of Defendants' unlawful and tortious conduct.

38.     The legal claims of the named Plaintiff are typical of the legal claims of other Class Members.   Named Plaintiff has the same legal interests and need for legal remedies as other Class Members.

39.     Named Plaintiff is an adequate representatives of the Class, together with his legal counsel, each will fairly and adequately protect the interests of Class Members.   Named Plaintiff has no known conflict with the Class and is committed to the vigorous prosecution of this action.

40.     The undersigned counsel are competent counsel experienced in class action litigation, mass torts, and complex litigation involving harmful products.   Counsel will fairly and adequately protect the interests of the Class.

41.     The various claims asserted in this action are certifiable under the provisions of Federal Rules of Civil Procedure 23(b)(1) because prosecuting separate actions by or against individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party opposing the Class; or adjudications with respect to individual Class members that, as a practical matter, would be dispositive of the interests of the other Class members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

42.     The claims for injunctive relief in this case are certifiable under Fed. R. Civ. P.

14

23(b)(2).  Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief is appropriate respecting the Class as a whole.

43.     A class action is superior in this case to other methods of dispute resolution.   The Class members have an interest in class adjudication rather than individual adjudication because of their overlapping rights.   It is highly desirable to concentrate the resolution of these claims in this single forum because it would be difficult and highly unlikely that the affected Class Members would protect their rights on their own without this class action case.   Management of the class will be efficient and far superior to the management of individual lawsuits. Accordingly, Plaintiffs' legal claims are properly certified pursuant to Rule 23(b)(3).

44.     The issues particularly common to the Class members' claims, some of which are identified above, are alternatively certifiable pursuant to Fed. R. Civ. P. 23(c)(4), as resolution of these issues would materially advance the litigation, and class resolution of these issues is superior to repeated litigation of these issues in separate trials.

## COUNT I
### NEGLIGENCE
**(Against All Defendants)**

45.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

46.     Defendants owed a duty to Class Members to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, i) installing, j) marketing, and/or k) selling this drywall, including a duty to adequately warn of their failure to do the same.

47.     Defendants knew or should have known that their wrongful acts and omissions would result in harm and damages in the manner set forth herein.

15

48.     Defendants breached their duty to exercise reasonable care in the designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, and/or selling this drywall.

49.     Defendants likewise breached their duties to Class Members by failing to warn about the defective nature of the drywall.   Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the property and bodies of Class Members.

50.     Defendants breached their duty to exercise reasonable care to timely remove and/or recall from the market and/or otherwise prevent the continued contact of Class Members with the drywall, upon leaning it had been sold in an unreasonably dangerous condition.

51.     Given the defect in the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm, and damages to Class Members.

52.     As a direct and proximate result of Defendants' acts and omissions, Class Members were harmed and have incurred damages as described herein.

## COUNT II
## NEGLIGENCE PER SE
### (Against All Defendants)

53.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

54.     Defendants owed statutory duties to Class Members to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, I) marketing, and/or j) selling this drywall.

55.     Defendants breached their statutory duties to the Class Members by failing to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e)

16

distributing, f) delivering, g) supplying, h) inspecting, i) marketing, and/or j) selling this drywall.

56.     Defendants likewise breached their statutory duties, including but not limited to those imposed under the International Building Code ("IBC") and other State and local Building Codes, to Class Members by failing to warn about the defective nature of the drywall.   For instance, it is specifically alleged that Defendants furnished the drywall in violation of ASTMC C 1396/C 1396M-069, and its predecessor(s).

57.     Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the property and bodies of Class Members.

58.     Given the defective nature of Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm, and damages to Class Members.

59.     As a direct and proximate result of Defendants' acts and omissions, Class Members were harmed and have incurred damages as described herein.

## COUNT III
## STRICT LIABILITY
## (Against All Defendants)

60.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

61.     At all times relevant hereto, Defendants were in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public.

62.     The drywall, including that installed in the homes of Class Members was placed by Defendants in the stream of commerce.

63.     Defendants knew that the subject drywall would be used without inspection by consumers.

17

64.     Defendants intended that the drywall reach the ultimate consumers, such as Class Members, and it indeed reached Class Members when it was installed in their homes.

65.     When installed in Class Members' homes, the drywall was in substantially the same condition as it was in when Defendants manufactured, sold, and/or delivered it.

66.     At all times relevant hereto the subject drywall was used in a manner consistent with the uses intended by, or known to Defendants, and in accordance with the Defendants' directions and instructions.

67.     The subject drywall was not misused or altered by any third parties.

68.     The Defendants' drywall was improperly manufactured, designed, inspected, tested, marketed, distributed, and sold.

69.     The design impropriety was in designing drywall that allows high levels of sulfur compounds to exit the drywall.

70.     The manufacturing impropriety was in improperly selecting, testing, inspecting, mining, making, assembling, and using, gypsum for drywall with levels of sulfur compounds that were too high and allow high levels of sulfur compounds to exit the drywall.

71.     The drywall was also defective because it was improperly exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold in a unacceptable condition, as described above.

72.     The Defendants' negligence in manufacturing, designing, inspecting, testing, marketing, distributing, and selling of the drywall rendered it unsafe and unreasonably dangerous for its intended use and to Class Members.

73.     The drywall is also defective and unreasonably dangerous because Defendants

18

failed to adequately warn and instruct Class Members of their negligent design, inspection, testing, manufacturing, marketing, and selling of the drywall.

74.     Class Members were unaware of the unreasonably dangerous propensities and defective condition of the drywall, nor could Class Members, acting as reasonably prudent people discover that Defendants' drywall was defective, as set forth herein, or perceive its danger.

75.     Defendants' defective drywall was much more dangerous and harmful than expected by the average consumer and by Class Members.

76.     Defendants' defective drywall benefit to Class Members, if any, was greatly outweighed by the risk of harm and danger to them.

77.     The harmful and dangerous propensities of the drywall, as well as Defendants' failure to adequately warn Class Members of these propensities rendered the drywall unreasonably dangerous and was the direct and proximate cause of damages to Class Members.

## COUNT IV
### BREACH OF EXPRESS AND/OR IMPLIED WARRANTIES
### (Against All Defendants)

78.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

79.     Defendants and/or their agents were in privity with Class Members and/or Class Members were foreseeable third party beneficiaries of any warranty.

80.     At the times Defendants utilized, supplied, inspected, and/or sold their drywall for use in structures owned by Class Members, Defendants knew, or it was reasonably foreseeable, that the drywall would be installed in structures owned by Class Members for use as a building material, and expressly or impliedly warranted the product to be fit for that use.

81.     Defendants placed their drywall products into the stream of commerce in a defective condition and these products were expected to, and did, reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

82.     Although the drywall functions according to its intended purpose as a building component, it is unfit, defective as alleged in Paragraph 26 and not merchantable for this purpose due to the damaging side effects and/or because its use is so inconvenient that Plaintiffs would not have purchased their homes had the side effects been disclosed by Defendants.

83.     The Defendants breached their warranty because the drywall was not fit and safe for the particular purposes for which the goods were required (to be installed in structures owned by Class Members as a building material) due to the problems set forth herein.

84.     Defendants had reasonable and adequate notice of the Class Members' claims for breach of warranty and failed to cure.

85.     As a direct and proximate result of Defendants' breach of warranties, Class

Members have incurred harm and damages as described herein.

**COUNT V**
**REDHIBITION**
**(By Louisiana Class Members Against All Defendants)**

86.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

87.     The drywall manufactured, distributed and/or sold by Defendants was not

reasonably fit for its ordinary and intended purpose as alleged in Paragraph 26 above.

88.     Defendants are therefore liable to Louisiana Plaintiffs for all damages reasonable

in the premises, in accordance with La. Civ. Code art. 2524.

89.     In addition, or in the alternative, the drywall manufactured, distributed and/or sold

by Defendants contained redhibitory defects, in that, at the time of delivery, the propensity to

allow sulfur compounds to exit the drywall renders the drywall so useless and/or inconvenient

that it must be presumed that Plaintiffs would not have purchased the drywall had they known of

the redhibitory defect or defects.

90.     In the alternative, the defects are redhibitory defects in that, while not rendering

the drywall totally useless, diminish the drywall's use and/or value to such an extent that it must

be presumed that the buyer would have bought it, but for a lesser price.

91.     The Defendants are conclusively presumed to know of the defects in the drywall.

92.     In addition, it is believed and alleged that All Defendants knew of the defects in

the drywall at the time the drywall was delivered and/or sold.

93.     Defendants have had numerous opportunities to repair and/or replace the drywall

and associated fixtures and/or building components and have failed to do so; in addition, and/or

21

in the alternative, such requests have been, would have been and/or would be futile; Defendants, in addition, or alternatively, had actual knowledge of the problems in the drywall and the need for replacement, remediation and/or repair.

94.     Defendants are therefore liable to all Louisiana Plaintiffs for a return of the purchase price, (with interest from the time it was paid), reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the drywall and associated items, for damages, and for reasonable attorneys' fees, in accordance with La. Civ. Code art. 2545.

## COUNT VI
## LOUISIANA PRODUCTS LIABILITY ACT
### (By Louisiana Class Members Against All Defendants)

95.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

96.     In addition to any and all damages, attorneys fees and other remedies made available to Louisiana Plaintiffs under the warranty of fitness and/or warranty against redhibitory defects, the Defendants are liable to Louisiana Plaintiffs under the Louisiana Products Liability Act, ("LPLA"), La. R.S. 9:2800.51, *et seq.*

97.     Defendants, upon information and belief, expressly warranted that "the gypsumboards manufactured and sold ... are guaranteed to be free from defects in materials and workmanship."

98.     The Defendants expressly warranted that "the gypsumboards were manufactured in accordance to ASTM C36."

99.     The drywall at issue is, in all cases, unreasonably dangerous by virtue of the unreasonable emission of sulfur compounds which do not in any way contribute to or enhance

22

the utility of the drywall, yet pose a risk to the wiring, plumbing, appliances, personal property, overall economic value of the property and financial security of the owner, and/or the health of the residents of the property.

100.    At all times pertinent and material hereto, there existed alternative feasible manufacturing processes and/or designs of drywall which perform all of the functions and utility of traditional drywall, without allowing unreasonable levels of sulfur compounds to exit the drywall.

101.    At all times pertinent and material hereto, Defendants knew that their drywall was unreasonably dangerous and/or defective as set forth herein.

102.    In the alternative, Defendants should have, at all times pertinent and material hereto, known of the unreasonably dangerous and/or defective characteristics and/or conditions, had they reasonably employed then-existing scientific and/or technical knowledge, reasonable testing, and/or other reasonable and then-accepted methods of quality assurance and/or quality control.

103.    Defendants' drywall is unreasonably dangerous in composition or construction in that, at the time it left Defendant's control, it deviated in a material way from Defendant's own specifications or performance standards.

104.    In addition, and in the alternative, Defendants' drywall is unreasonably dangerous in design, in that, at the time the drywall left Defendant's control, there existed an alternative design for the product that was capable of preventing Plaintiffs' damage, and the likelihood of causing the plaintiffs' damage and the gravity of that harm outweighed the burden (if any) on the Defendant in adopting such alternative design and the adverse effect (if any) on the utility of the

23

drywall.

105.    In addition, and in the alternative, Defendants' drywall is unreasonably dangerous in that it fails to conform to an express warranty about the product which induced the use of the product and caused damage to Plaintiffs to the extent that the warranty was untrue.

106.    In addition, and in the alternative, Defendants' drywall is unreasonably dangerous due to an inadequate warning, in that, at the time the drywall left Defendant's control, the drywall possessed a characteristic that might cause damage and yet Defendant failed to use reasonable care to provide an adequate warning of such characteristics and/or dangers to users and/or handlers of the drywall.

107.    Defendants are therefore liable to Louisiana Plaintiffs for all damages reasonable in the premises.

## COUNT VII
## PRIVATE NUISANCE
### (All Defendants)

108.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

109.    The Defendants' tortious or wrongful acts or omissions have caused sulfur compounds and/or other chemical leaching into structures owned by Class Members which has unreasonably interfered, and continues to interfere, with the Class Members' use and enjoyment of their properties and caused them harm and damage as discussed herein.

110.    Defendants' interference has impaired the rights of Class Members' health, comfort, safety, free use of their property, and/or peaceful enjoyment of their property.

111.    Defendants' invasions were intentional and unreasonable, and/or unintentional but otherwise negligent or reckless.

24

112.    The interference with Class Members' use of their property caused by Defendants is substantial and is ongoing.

113.    Defendants' private nuisance was the direct, proximate, and foreseeable cause of Class Members' damages, harm, and loss, which they suffered and will continue to suffer.

114.    As a direct and proximate result of Defendants' creation of a private nuisance, Class Members have incurred harm and damages as described herein.

### COUNT VIII
### UNJUST ENRICHMENT
### (Against All Defendants)

115.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

116.    Defendants received money as a result of Class Members' purchases of Defendants' defective drywall, or purchases of structures containing this drywall, either directly or through an agent, and Defendants wrongfully accepted and retained these benefits to the detriment of Class Members.

117.    Defendants' acceptance and retention of these benefits under the circumstances make it inequitable and unjust for Defendants to retain the benefit without payment of the value to the Class Members.

118.    Defendants, by the deliberate and tortious conduct complained of herein, have been unjustly enriched in a manner which warrants restitution.

### COUNT IX
### VIOLATION OF CONSUMER PROTECTION ACTS
### (Against All Defendants)

119.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

25

120.     This is an action for relief under the various Consumer Protection Acts of the

jurisdictions in which affected properties are present, including but not limited to, L.SA-R.S.

51:1401, *et seq.* (Louisiana Unfair Trade Practices and Consumer Protection Law); Ala. Code

1975 § 8-19-1, *et seq.* (Alabama Deceptive Trade Practices Act); G.S. § 75-1.1, *et seq.* (North

Carolina Consumer Protection Act); F.S. § 501.201, *et seq.* (Florida Deceptive and Unfair Trade

Practices Act); Va. Code. Ann. § 59.1-196, *et seq.* (Virginia Consumer Protection Act); Tex.

Bus. Com. Code Ann. § 17.41, *et seq.* (Texas Deceptive Trade Practices-Consumer Protection

Act); Miss. Code Ann. § 75-24-1, *et seq.* (Mississippi Consumer Protection Act); GA ST §

10-1-393, *et seq.* (Georgia Consumer Protection Act);   SC ST § 39-5-20, *et seq.* (South Carolina

Consumer Protection Act); Tenn. Code Ann. § 47-18-104, et seq. (Tennessee Consumer

Protection Act).

121.     The Defendants' acts and omissions as well as their failure to use reasonable care

in this matter as alleged in this complaint, including but not limited to, the knowing

misrepresentation or failure to disclose the source, affiliation, origin, characteristics, ingredients,

standards and quality of defective drywall constitute violation of the provisions of the Consumer

Protection Acts of the Relevant States.

122.     Class Members have suffered actual damages as a result of Defendants' violation

of these Consumer Protection Acts and are entitled to relief.

123.     As a direct and proximate result of Defendants' violations of the Consumer

Protection Acts of the Relevant States, Class Members have incurred harm and damages as

described herein.

## COUNT X
### EQUITABLE AND INJUNCTIVE RELIEF
### (Against All Defendants)

124.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

125.    Class Members are without adequate remedy at law, rendering injunctive and other equitable relief appropriate.

126.    Class Members will suffer irreparable harm if the Court does not render the injunctive relief set forth herein, and if defendants are not ordered to recall, buy back, rescind, and/or repair the structures owned by Class Members.

127.    Plaintiffs, on behalf of themselves and all others similarly situated, demand injunctive and equitable relief and further, that defendants be ordered to: (1) remediate, repair and/or replace the drywall in Class Members' homes or other structures upon proof by the defendants of the feasibility of such remedy or repair; (2) cease and desist from misrepresenting to the Class and the general public that the drywall is not defective and/or unreasonably dangerous as alleged herein; and (3) institute, at their own cost, a public awareness campaign to alert the Class and general public of the harm and dangers associated with the drywall.

### DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of the Class Members, hereby demands a trial by jury as to all issues so triable as a matter of right.

### PRAYER FOR RELIEF

WHEREFORE Representative Plaintiff, on behalf of himself and all others similarly situated demand upon Defendants jointly and severally for:

a.    an order certifying the case as a class action;

b.      an order certifying the Class;

c.      an order appointing Representative Plaintiff as a Class Representative of

the Class;

d.      an order appointing undersigned counsel and their firms as counsel for the

Class;

e.      compensatory and statutory damages;

f.      punitive damages as allowed by law;

g.      pre and post-judgment interest as allowed by law;

h.      injunctive relief;

I.      an award of attorneys' fees as allowed by law;

j.      an award of taxable costs; and

k.      any and all such further relief as this Court deems just and proper.

Respectfully submitted,

Dated:

By: _____ /s/ Bruce W. Steckler _____

Bruce William Steckler, Esquire
Texas Bar ID#00785039
Steckler Gresham Cochran
12720 Hillcrest Road, Ste 1045
Dallas, TX 75230
Phone: (972) 387-4040
Fax: (972) 387-4041

bruce@stecklerlaw.com

Attorneys for Plaintiffs

28

## COURT APPOINTED PLAINTIFFS' LIASON AND LEAD COUNSEL IN MDL 2047

Russ M. Herman
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
rherman@hhklawfirm.com

*Plaintiffs' Liaison Counsel MDL 2047*

Arnold Levin
Levin Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
alevin@lfsblaw.com

*Plaintiffs' Lead Counsel MDL 2047*

## COURT APPOINTED PLAINTIFFS' STEERING
## COMMITTEE IN MDL 2047 - OF COUNSEL TO PLAINTIFFS

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Robert Becnel
Becnel Law Firm, LLC
425 W. Airline Highway, Suite B
Laplace, LA 70068
Phone: (985) 536-1186
Fax: (985) 536-6445
rbecnel@becnellaw.com

Peter Prieto
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
pprieto@podhurst.com

Bruce William Steckler
Steckler Gresham Cochran
12720 Hillcrest Road, Ste 1045
Dallas, TX 75230
Phone: (972) 387-4040
Fax: (972) 387-4041
bruce@stecklerlaw.com

Patrick Montoya
Colson, Hicks, Eidson
255 Alhambra Circle, Penthouse
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
patrick@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

29

Hugh P. Lambert
The Lambert Firm
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@thelambertfirm.com


James Robert Reeves
Reeves & Mestayer, PLLC
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@attorneys4people.com


Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5002
dan@wbmllp.com


Victor M. Diaz, Jr.
V.M. Diaz and Partners, LLC
119 Washington Ave, Suite 402
Miami Beach, FL 33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com


Christopher Seeger
Seeger Weiss, LLP
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com


Richard J. Serpe
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com

## OF COUNSEL TO COURT APPOINTED PLAINTIFFS' STEERING COMMITTEE IN MDL 2047 - OF COUNSEL TO PLAINTIFFS

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W, Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax:   (202) 540-7201
rlewis@hausfeldllp.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Anthony D. Irpino
IRPINO AVIN HAWKINS LAW FIRM
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

## COUNSEL FOR INDIVIDUAL PLAINTIFF

Christopher Seeger, Esquire
Scott George, Esquire
Seeger Weiss
1515 Market Street
Philadelphia, PA   19102
(215) 564-2300 (telephone)

*Attorneys for Andy Mertlitz*

31

# Exhibit "11"

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Kenneth D. Lochhead and Maria L. Webste, et al., individually and on behalf of all others similarly situated

**(b)** County of Residence of First Listed Plaintiff   Hidalgo County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Bruce William Stecker, Esquire; Steckler Gresham Cochran, 12720 Hillcrest Rd., Ste. 1045, Dallas, TX 75230; (972) 387-4040

## DEFENDANTS

Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., et al.

County of Residence of First Listed Defendant   Foreign Corporation
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

See Attached

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government Plaintiff
- ☐ 2   U.S. Government Defendant
- ☐ 3   Federal Question *(U.S. Government Not a Party)*
- ☒ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** — **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / Product Liability |  |  | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & ☐ 367 Health Care/ |  | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander / Pharmaceutical Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability / ☐ 368 Asbestos Personal ☐ 340 Marine Injury Product | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability / Liability **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | Product Liability / ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | ☐ 360 Other Personal Property Damage | Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| | Injury / ☒ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| | ☐ 362 Personal Injury - Product Liability | ☐ 751 Family and Medical | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information |
| | Medical Malpractice | Leave Act | | Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** — **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Sentence | | | |
| ☐ 245 Tort Product Liability | Accommodations / ☐ 530 General | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - / ☐ 535 Death Penalty | ☐ 462 Naturalization Application | | |
| | Employment **Other:** | ☐ 465 Other Immigration | | |
| | ☐ 446 Amer. w/Disabilities - / ☐ 540 Mandamus & Other | Actions | | |
| | Other / ☐ 550 Civil Rights | | | |
| | ☐ 448 Education / ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
28 U.S.C. Section 1332(d)(2) and 28 U.S.C. Section 1711, et. seq.
Brief description of cause:
Product liability claims involving Chinese manufactured drywall

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE   Eldon E. Fallon

DOCKET NUMBER   09-MD-2047 (E.D. La.)

DATE   8/1/2017

SIGNATURE OF ATTORNEY OF RECORD   /s/ Bruce W. Steckler

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

### Defendants' Attorneys

**Attorneys for China National Building Material Co., Ltd., Beijing New Building Materials Public Limited Co. and Beijing New Building Materials Group Co., Ltd.:**

L. Christopher Vejnoska
Orrick, Herrington & Sutcliffe LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105


**Attorneys for Taishan Gypsum Co., Ltd. and Taian Taishan Plasterboard Co., Ltd.:**

Bernard Taylor
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, GA 30309

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### MCALLEN DIVISION

Kenneth D. Lochhead and Maria L. Webste, et al., individually, and on behalf of all others similarly situated,

**CASE NO.:**   7:17-cv-294

Plaintiffs,

**CLASS ACTION COMPLAINT**

v.

Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd.; Tai'an Taishan Plasterboard Co., Ltd.; Beijing New Building Materials Public Limited Co.; Beijing New Building Materials (Group) Co., Ltd.; China National Building Material Co., Ltd.

**JURY TRIAL DEMAND**

Defendants.

_____/

## PLAINTIFFS' OMNIBUS CLASS ACTION COMPLAINT (XXXII) (TEXAS *BROOKE*)

Pursuant to Fed. R. Civ. P. 23, the class representatives in this action bring suit on behalf of themselves and all other similarly situated owners and residents of real property containing defective Chinese manufactured drywall that was designed, manufactured, imported, distributed, delivered, supplied, marketed, inspected, or sold by the Defendants.

Each of the class representatives is pursuing a nationwide class action against the defendants with respect to the drywall located in plaintiffs' homes.   Each of the Defendants in this action, Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd. ("Taishan"); Taian Taishan Plasterboard Co., Ltd. ("TTP"); Beijing New Building Materials Public Limited

1

Co. ("BNBM"); Beijing New Building Materials (Group) Co., Ltd. ("BNBM Group"); China

National Building Material Co., Ltd. ("CNBM"), are liable for damages incurred by Plaintiffs

due to their role in the design, manufacture, importing, distributing, delivery, supply, marketing,

inspecting, installing, or sale of the defective drywall at issue in this litigation.

## JURISDICTION, PARTIES, AND VENUE

1.      Original jurisdiction of this Court exists by virtue of 28 U.S.C. §1332(d)(2) and

the Class Action Fairness Act ("CAFA").   *See* 28 U.S.C. § 1711, *et. seq.*   The Plaintiffs and

certain of the Defendants in these actions are citizens of different states and the amounts in

controversy in these actions exceed five million dollars ($5,000,000.00), exclusive of interest and

costs.

2.      Venue in this district satisfies the requirements of 28 U.S.C. §1391(b)(1)-(2) and

(c) because Plaintiffs and a significant number of the absent class members reside in this

jurisdiction and a substantial amount of the events and occurrences giving rise to these claims

occurred in this District, or a substantial part of the property that is the subject of this action is

situated in this district.

## PLAINTIFFS

3.      For purposes of clarity, the Plaintiffs are asserting claims on behalf of all owners

and residents of the subject properties, including but not limited to, minors and other residents of

the properties who do not appear herein as named plaintiffs.

4.      The Plaintiffs on this complaint have previously asserted claims against

Defendants in complaints now pending before the Honorable Eldon E. Fallon in consolidated

MDL proceedings in the United States District Court for the Eastern District of Louisiana.   The

2

instant complaint is being filed as a protective action with respect to the prior filings before the MDL Court.

5.      Plaintiffs, Kenneth D. Lochhead and Maria L. Webste are citizens of Texas and together own real property located at 1303 Lake View Drive, Mission, Texas 78572.   Plaintiffs have incurred damages caused by the drywall distributed by Defendants and are participating as class representatives for similarly situated individuals.

6.      Plaintiff, Marc Norman is a citizen of Texas and owns real property located at 29127 Hidden Lake Court, Magnolia, Texas 77354.   Plaintiff has incurred damages caused by the drywall distributed by Defendants and is participating as a class representative for similarly situated individuals.

## DEFENDANTS

7.      Unless specifically stated to the contrary, all individual defendants are citizens of the state where they do business and all entities are citizens of the state where they are organized. For those entities, where the state of organization is not listed, it is asserted upon information and belief that the entity is incorporated and/or organized in the state of its principal place of business.

8.      Defendant Taishan is a foreign corporation doing business in several States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant, together with its affiliates and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within

3

various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Defendant manufactured and sold, directly and indirectly, to certain suppliers in the United States.

9.      Defendant TTP is a foreign corporation doing business in several States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant, together with its affiliates and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States.   Defendant manufactured and sold, directly and indirectly, to certain suppliers in the United States.

10.     Defendant TTP is a wholly owned subsidiary of Defendant Taishan.

11.     During the period when Taishan and its subsidiaries were distributing defective drywall to the United States, these entities consistently misrepresented the drywall they were exporting complied with ISO and ASTM quality standards. For instance, Taishan's website

4

boasted that it was exporting large quantities of drywall to the United States and that its drywall complied with ISO quality standards.   The employees of Taishan and its subsidiaries also sent emails to potential customers boasting about their experience exporting large quantities of drywall to the United States.   These employees also provided false assurances that the drywall they were exporting complied with ASTM quality standards.

12.      Defendant BNBM is a foreign corporation doing business in several States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant, together with its affiliates and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Defendant manufactured and sold, directly and indirectly, to certain suppliers in the United States.

13.      On April 21, 2017, Judge Fallon in MDL 2047 issued an Order and Reasons on Defendants' motions to dismiss pursuant to Fed.R.Civ.P. 12(b) (hereafter "Rule 12(b) Order"). *See* Rec.Doc.No. 20739.   The Rule 12(b) Order correctly determined that:

*      BNBM is the controlling shareholder of Taishan and that Taishan is an agent and alter ego of BNBM.

5

* BNBM is controlled by China National Building Materials Group Co. ("CNBM Group").[1]

* BNBM has exercised a high degree of control over Taishan's operational management and its day to day operations.

* BNBM has had voting control over Taishan's board since 2005.

* BNBM controls Taishan's board and management team.

* BNBM audits Taishan and requires that Taishan submit weekly reports.

* BNBM must approve certain activities by Taishan including the building of factories and all matters concerning drywall production.

* BNBM controls Taishan's financial and strategic business decisions.

* Taishan must provide BNBM with a stake in all of its subsidiaries.

* BNBM and Taishan share officers, directors, and executives.

* Taishan and BNBM also share certain property.

* BNBM provides Taishan with loan guarantees.

14.     On October 13, 2015, CNBM publicly announced that BNBM will acquire 100% of Taishan's shares.   BNBM subsequently acquired 100% of Taishan's shares on October 27, 2016.

15.     BMBM consistently exerted control over Taishan and its subsidiaries when these entities were exporting defective drywall to the United States.   For instance, one of BNBM's

---

[1] CNBM Group is not being pursued as a defendant in the instant complaint as CNBM Group has been dismissed as a defendant by Judge Fallon. The order of dismissal is interlocutory and is subject to appeal at a later date.

6

board members, Tongchun Jia, is the chairman of the board of directors and general manager of

Taishan.   Mr. Tongchun Jia occupies similar positions with most of Taishan's subsidiaries.

Through Mr. Tongchun Jia's positon with Taishan and its subsidiaries, BNBM controls the

actions and operations of these entities.   Even where Tongchun Jia does not formally hold a

position with a Taishan subsidiary, BNBM is able to exert its control over the subsidiary through

Mr. Tongchun Jia's influence.   For instance, the chairman of the board of TTP, Peng Shi Liang,

was also an employee of Taishan.   BNBM was thus able to control TTP since the chairman of

its board reported directly to Tongchun Jia.   Accordingly, since BNBM had direct control over

Taishan and its subsidiaries, it should be held responsible for their sale of defective drywall.

16.     Defendant, BNBM Group is a foreign corporation doing business in several

States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana,

Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information

and belief, Defendant, together with its affiliates, subsidiaries and/or actual or apparent agents,

manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum

drywall with the expectation that the drywall would be purchased by thousands of consumers, if

not more, within various States, including but not limited to, Alabama, California, Florida,

Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and

Virginia.   Upon information and belief, Defendant, together with its affiliates, subsidiaries

and/or actual or apparent agents, have continuously and systematically distributed and sold

drywall to numerous purchasers in the United States and their drywall is installed in numerous

structures in the United States. Defendant, together with its affiliates, subsidiaries and/or actual

or apparent agents, manufactured and sold, directly and indirectly, to certain suppliers in the

7

United States.

17.     Defendant, CNBM is a foreign corporation doing business in several States,
including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi,
North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief,
Defendant, together with its affiliates, subsidiaries and/or actual or apparent agents,
manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum
drywall with the expectation that the drywall would be purchased by thousands of consumers, if
not more, within various States, including but not limited to, Alabama, California, Florida,
Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and
Virginia.   Upon information and belief, Defendant together with its affiliates, subsidiaries and/or
actual or apparent agents, has continuously and systematically distributed and sold drywall to
numerous purchasers in the United States and their drywall is installed in numerous structures in
the United States. Defendant, together with its affiliates, subsidiaries and/or actual or apparent
agents, manufactured and sold, directly and indirectly, to certain suppliers in the United States.

18.     The Rule 12(b) Order correctly determined that CNBM is the controlling
shareholder of BNBM.

19.     To the extent any of the foreign defendants are deemed to be foreign sovereign
entities, including but not limited to Taishan, TTP, BNBM, BNBM Group, and CNBM,
Plaintiffs bring their claims against these entities pursuant to 28 U.S.C. § 1605(a)(2), the
commercial activity exception to the Foreign Sovereign Immunities Act, or alternatively under §
1605(a)(5), the tortious act exception.   Plaintiffs allege that the claims against the foreign
defendants are based upon commercial activities carried on in the United States.   The claims

also seeks monetary damages against a foreign state for damage to property occurring in the United States, caused by the tortious acts or omissions of that foreign state, or of any official or employee of that foreign state while acting within the scope of his office or employment.

## FACTS REGARDING THE DEFENDANTS

20.     Upon information and belief, CNBM Group, together with its affiliates, subsidiaries and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, CNBM Group, together with its affiliates, subsidiaries and/or actual or apparent agents, has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. CNBM Group, together with its affiliates, subsidiaries and/or actual or apparent agents, manufactured and sold, directly and indirectly, to certain suppliers in the United States.

21.     The Rule 12(b) Order correctly determined that:

*       CNBM Group is the controlling shareholder of CNBM and BNBM Group.

*       CNBM Group is the controlling shareholder of BNBM and Taishan by virtue of its control over CNBM and BNBM Group.

*       All the Defendants operate as a single-business enterprise that is led by CNBM Group.

22.     CNBM Group has exerted high levels of control over its subsidiary entities,

9

including but not limited to CNBM, BNBM, BNBM Group, Taishan, and TTP, by virtue of its

scheme of appointing overlapping officers and directors of subsidiary entities, its use of notices

and management reports sent to subsidiaries, its requirement that its direct subsidiaries manage

investments in subsidiaries pursuant to CNBM Group directives, the implementing of policies

for conducting audits, and its requirement that subsidiaries submit various reports.   Many

CNBM Group officers and directors hold positions with BNBM and Taishan.   The Company

culture of CNBM Group establishes a "Parent-subsidiary" company that is managed and directed

strictly from the top down.   For instance, one of CNBM Group's indirect subsidiary entities,

BNBM, owns the majority of Taishan's shares and has the ability to appoint the majority of

Taishan's board of directors.   CNBM Group controls BNBM by virtue of another CNBM Group

subsidiary, CNBM, which is the parent entity of BNBM.   CNBM Group has exerted day-to-day

control over each of its subsidiary entities and has used its influence to direct specific activities

and to appoint officers and directors that are beholden to CNBM Group.   Upon information and

belief, this influence was exerted with respect to permitting Taishan and BNBM to market,

export, and distribute drywall to the United States and the decision for Taishan to not appear at

Judgment Debtor proceedings before Judge Fallon in New Orleans.

    23.      For instance, at the outset of the MDL 2047, CNBM Group in conjunction with its

controlled subsidiaries, Taishan and BNBM, discussed and then implemented a deliberate

strategy whereby Defendants would not respond to the litigation and would allow default

judgments to be entered against them.   Defendants have also shared lawyers and law firms.

When Taishan finally responded to this litigation, it did so for the limited purpose of contesting

personal jurisdiction.   When Taishan was unsuccessful in obtaining dismissal on these grounds

and lost its appeal to the Fifth Circuit Court of Appeals, it withdrew from the litigation with the approval of its parent entities and was subsequently held in civil and criminal contempt on July 17, 2014.   Following the issuance of this contempt order, CNBM Group directed its subsidiaries to cease depositing funds in New York banks.

### FACTS REGARDING DEFECTIVE DRYWALL

24.   Defendants' drywall is predominately composed of gypsum.

25.   In "defective drywall" (such as that designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed, and/or sold by Defendants herein), sulfur compounds exit the drywall.

26.   The sulfur compounds, including Hydrogen Sulfide, Carbonyl Sulfide, and Carbon Disulfide, exit Defendants' drywall and cause rapid sulfidation and damage to personal property (such as the blackening and break down of air conditioning and refrigerator coils, faucets, utensils, electrical wiring, copper, electronic appliances and other metal surfaces and property).   These compounds are not only harmful to personal property but they are also smelly and irritating to humans and pets.

27.   Although the drywall functions according to its intended purpose as a building component, it is unfit for this purpose due to the damaging side effects and/or because its use is so inconvenient that Plaintiffs would not have purchased their homes had the side effects been disclosed by Defendants.

28.   As a direct and proximate result of Defendants' actions and omissions, Plaintiffs' and the Class Members' structures and personal property have been exposed to Defendants' defective drywall and the harmful effects of the sulfur compounds that exit from Defendants'

11

defective drywall.

29.   Defendants tortiously manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed and/or sold the defective drywall, which was unfit for its intended purpose in that the drywall caused rapid sulfidation and damage to personal property in Plaintiffs' and Class Members' homes, residences or structures.

30.   Defendants recklessly, wantonly, and/or negligently manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed and/or sold the defective drywall at issue in this litigation.

31.   Defendants recklessly, wantonly and/or negligently implemented faulty procedures for purposes of formulating, preparing, testing, and otherwise ensuring the quality and/or character of the defective drywall at issue in this litigation.

32.   As a direct and proximate result of Defendants' defective and unfit drywall and the harmful effects of the sulfur compounds that exit these products, Plaintiffs and Class Members have suffered, and continue to suffer economic harm.

33.   As a direct and proximate result of Defendants' defective and unfit drywall and the harmful effects of the sulfur compounds that exit these products, the Plaintiffs and the Class Members have suffered, and continue to suffer damages.   These damages include, but are not limited to, costs of inspection; costs and expenses necessary to remedy, replace and remove the defective drywall and other property that has been impacted; lost value or devaluation of their homes, residences or structures and property as a direct result of damage caused to the property and indirect damage resulting from perceived defects to the property, including stigma damages and loss of use and enjoyment of their home and property.

34.  As a direct and proximate result of Defendants' defective drywall and the harmful effects of the sulfur compounds that exit these products, Plaintiffs and the Class Members have a need for injunctive relief in the form of repair and remediation of their home, rescission of contracts, and the ordering of emergency/corrective notice.

### CLASS ACTION ALLEGATIONS

35.  The representative Plaintiffs with claims against the Defendants assert a class pursuant to Rules 23(a), (b)(1), (b)(2), (b)(3) and/or 23(c)(4) of the Federal Rules of Civil Procedure, on behalf of themselves and those similarly situated, against the Defendants. Plaintiffs define their class as follows:

> All owners and residents (past or present) of real property located in the United States containing defective Chinese drywall manufactured, sold, distributed, and/or supplied by Defendants.

### General Class Allegations and Exclusions from the Class Definitions

36.  The following Persons shall be excluded from the Class: (1) Defendants and their subsidiaries, affiliates, officers and employees; (2) all Persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the judge(s) to whom this case is assigned and any immediate family members thereof.

37.  Upon information and belief, the defective and unreasonably dangerous drywall in Plaintiffs' homes or other structures was installed in at least hundreds of homes, residences, or other structures owned by Plaintiffs and Class Members.   Therefore, the Class is sufficiently numerous such that the joinder of all members of the Class in a single action is impracticable.

38.  There are numerous common questions of law and fact that predominate over any questions affecting only individual members of the Class.   Among these common questions of

13

law and fact are the following:

> a.      whether Defendants' drywall products are defective and/or unfit for their intended purpose;

> b.      whether Defendants tortuously manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed, and/or sold defective drywall products;

> c.      whether Plaintiffs are entitled to recover compensatory, exemplary, incidental, consequential, and/or other damages as a result of Defendants' unlawful and tortious conduct; and

> d.      whether Plaintiffs are entitled to recover injunctive and/or equitable relief as a result of Defendants' unlawful and tortious conduct.

39.   The legal claims of named Plaintiffs are typical of the legal claims of other Class Members.   Named Plaintiffs have the same legal interests and need for legal remedies as other Class Members.

40.   Named Plaintiffs are adequate representatives of the Class, together with their legal counsel, each will fairly and adequately protect the interests of Class Members.   Named Plaintiffs have no known conflict with the Class and are committed to the vigorous prosecution of this action.

41.   The undersigned counsel are competent counsel experienced in class action litigation, mass torts, and complex litigation involving harmful products.   Counsel will fairly and adequately protect the interests of the Class.

42.   The various claims asserted in this action are certifiable under the provisions of Federal Rules of Civil Procedure 23(b)(1) because prosecuting separate actions by or against individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for

the party opposing the Class; or adjudications with respect to individual Class members that, as a

practical matter, would be dispositive of the interests of the other Class members not parties to

the individual adjudications or would substantially impair or impede their ability to protect their

interests.

43.   The claims for injunctive relief in this case are certifiable under Fed. R. Civ. P.

23(b)(2).  Defendants have acted or refused to act on grounds that apply generally to the Class,

so that final injunctive relief is appropriate respecting the Class as a whole.

44.   A class action is superior in this case to other methods of dispute resolution.   The

Class members have an interest in class adjudication rather than individual adjudication because

of their overlapping rights.   It is highly desirable to concentrate the resolution of these claims in

this single forum because it would be difficult and highly unlikely that the affected Class

Members would protect their rights on their own without this class action case.   Management of

the class will be efficient and far superior to the management of individual lawsuits.

Accordingly, Plaintiffs' legal claims are properly certified pursuant to Rule 23(b)(3).

45.   The issues particularly common to the Class members' claims, some of which are

identified above, are alternatively certifiable pursuant to Fed. R. Civ. P. 23(c)(4), as resolution of

these issues would materially advance the litigation, and class resolution of these issues is

superior to repeated litigation of these issues in separate trials.

### COUNT I
### NEGLIGENCE
### (Against All Defendants)

46.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

47.   Defendants owed a duty to Plaintiffs and Class Members to exercise reasonable care

in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, i) installing, j) marketing, and/or k) selling this drywall, including a duty to adequately warn of their failure to do the same.

48.   Defendants knew or should have known that their wrongful acts and omissions would result in harm and damages in the manner set forth herein.

49.   Defendants breached their duty to exercise reasonable care in the designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, and/or selling this drywall.

50.   Defendants likewise breached their duties to Plaintiffs and Class Members by failing to warn about the defective nature of the drywall.   Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the property and bodies of Plaintiffs and Class Members.

51.   Defendants breached their duty to exercise reasonable care to timely remove and/or recall from the market and/or otherwise prevent the continued contact of Plaintiffs and Class Members with the drywall, upon leaning it had been sold in an unreasonably dangerous condition.

52.   Given the defect in the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm, and damages to Plaintiffs and Class Members.

53.   As a direct and proximate result of Defendants' acts and omissions, Plaintiffs and Class Members were harmed and have incurred damages as described herein.

## COUNT II
## NEGLIGENCE PER SE
### (Against All Defendants)

54.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

55.   Defendants owed statutory duties to Plaintiffs and Class Members to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, I) marketing, and/or j) selling this drywall.

56.   Defendants breached their statutory duties to the Plaintiffs and Class Members by failing to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, i) marketing, and/or j) selling this drywall.

57.   Defendants likewise breached their statutory duties, including but not limited to those imposed under the International Building Code ("IBC") and other State and local Building Codes, to Plaintiffs and Class Members by failing to warn about the defective nature of the drywall.   For instance, it is specifically alleged that Defendants furnished the drywall in violation of ASTMC C 1396/C 1396M-069, and its predecessor(s).

58.   Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the property and bodies of Plaintiffs and Class Members.

59.   Given the defective nature of Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm, and damages to Plaintiffs and Class Members.

60.   As a direct and proximate result of Defendants' acts and omissions, Plaintiffs and

Class Members were harmed and have incurred damages as described herein.

## COUNT III
## STRICT LIABILITY
### (Against All Defendants)

61.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

62.     At all times relevant hereto, Defendants were in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public.

63.     The drywall, including that installed in the homes of Class Members was placed by Defendants in the stream of commerce.

64.     Defendants knew that the subject drywall would be used without inspection by consumers.

65.     Defendants intended that the drywall reach the ultimate consumers, such as Class Members, and it indeed reached Class Members when it was installed in their homes.

66.     When installed in Class Members' homes, the drywall was in substantially the same condition as it was in when Defendants manufactured, sold, and/or delivered it.

67.     At all times relevant hereto the subject drywall was used in a manner consistent with the uses intended by, or known to Defendants, and in accordance with the Defendants' directions and instructions.

68.     The subject drywall was not misused or altered by any third parties.

69.     The Defendants' drywall was improperly manufactured, designed, inspected, tested, marketed, distributed, and sold.

70.     The design impropriety was in designing drywall that allows high levels of sulfur compounds to exit the drywall.

18

71.     The manufacturing impropriety was in improperly selecting, testing, inspecting, mining, making, assembling, and using, gypsum for drywall with levels of sulfur compounds that were too high and allow high levels of sulfur compounds to exit the drywall.

72.     The drywall was also defective because it was improperly exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold in a unacceptable condition, as described above.

73.     The Defendants' negligence in manufacturing, designing, inspecting, testing, marketing, distributing, and selling of the drywall rendered it unsafe and unreasonably dangerous for its intended use and to Class Members.

74.     The drywall is also defective and unreasonably dangerous because Defendants failed to adequately warn and instruct Class Members of their negligent design, inspection, testing, manufacturing, marketing, and selling of the drywall.

75.     Class Members were unaware of the unreasonably dangerous propensities and defective condition of the drywall, nor could Class Members, acting as reasonably prudent people discover that Defendants' drywall was defective, as set forth herein, or perceive its danger.

76.     Defendants' defective drywall was much more dangerous and harmful than expected by the average consumer and by Class Members.

77.     Defendants' defective drywall benefit to Class Members, if any, was greatly outweighed by the risk of harm and danger to them.

78.     The harmful and dangerous propensities of the drywall, as well as Defendants' failure to adequately warn Class Members of these propensities rendered the drywall

19

unreasonably dangerous and was the direct and proximate cause of damages to Class Members.

## COUNT IV
### BREACH OF EXPRESS AND/OR IMPLIED WARRANTIES
### (Against All Defendants)

79.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

80.     Defendants and/or their agents were in privity with Plaintiffs and Class Members and/or Plaintiffs and Class Members were foreseeable third party beneficiaries of any warranty.

81.     At the times Defendants utilized, supplied, inspected, and/or sold their drywall for use in structures owned by Plaintiffs and Class Members, Defendants knew, or it was reasonably foreseeable, that the drywall would be installed in structures owned by Plaintiffs and Class Members for use as a building material, and expressly or impliedly warranted the product to be fit for that use.

82.     Defendants placed their drywall products into the stream of commerce in a defective condition and these products were expected to, and did, reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

83.     Although the drywall functions according to its intended purpose as a building component, it is unfit, defective as alleged in Paragraph 27 and not merchantable for this purpose due to the damaging side effects and/or because its use is so inconvenient that Plaintiffs would not have purchased their homes had the side effects been disclosed by Defendants.

84.     The Defendants breached their warranty because the drywall was not fit and safe for the particular purposes for which the goods were required (to be installed in structures owned by Plaintiffs and Class Members as a building material) due to the problems set forth herein.

85.     Defendants had reasonable and adequate notice of the Plaintiffs' and the Class Members' claims for breach of warranty and failed to cure.

86.     As a direct and proximate result of Defendants' breach of warranties, Plaintiffs and Class Members have incurred harm and damages as described herein.

## COUNT V
## REDHIBITION
### (By Louisiana Class Members Against All Defendants)

87.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

88.     The drywall manufactured, distributed and/or sold by Defendants was not reasonably fit for its ordinary and intended purpose as alleged in Paragraph 27 above.

89.     Defendants are therefore liable to Louisiana Plaintiffs for all damages reasonable in the premises, in accordance with La. Civ. Code art. 2524.

90.     In addition, or in the alternative, the drywall manufactured, distributed and/or sold by Defendants contained redhibitory defects, in that, at the time of delivery, the propensity to allow sulfur compounds to exit the drywall renders the drywall so useless and/or inconvenient that it must be presumed that Plaintiffs would not have purchased the drywall had they known of the redhibitory defect or defects.

91.     In the alternative, the defects are redhibitory defects in that, while not rendering the drywall totally useless, diminish the drywall's use and/or value to such an extent that it must be presumed that the buyer would have bought it, but for a lesser price.

92.     The Defendants are conclusively presumed to know of the defects in the drywall.

93.     In addition, it is believed and alleged that All Defendants knew of the defects in the drywall at the time the drywall was delivered and/or sold.

21

94.     Defendants have had numerous opportunities to repair and/or replace the drywall and associated fixtures and/or building components and have failed to do so; in addition, and/or in the alternative, such requests have been, would have been and/or would be futile; Defendants, in addition, or alternatively, had actual knowledge of the problems in the drywall and the need for replacement, remediation and/or repair.

95.     Defendants are therefore liable to all Louisiana Plaintiffs for a return of the purchase price, (with interest from the time it was paid), reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the drywall and associated items, for damages, and for reasonable attorneys' fees, in accordance with La. Civ. Code art. 2545.

### COUNT VI
### LOUISIANA PRODUCTS LIABILITY ACT
### (By Louisiana Class Members Against All Defendants)

96.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

97.     In addition to any and all damages, attorneys fees and other remedies made available to Louisiana Plaintiffs under the warranty of fitness and/or warranty against redhibitory defects, the Defendants are liable to Louisiana Plaintiffs under the Louisiana Products Liability Act, ("LPLA"), La. R.S. 9:2800.51, *et seq.*

98.     Defendants, upon information and belief, expressly warranted that "the gypsumboards manufactured and sold ... are guaranteed to be free from defects in materials and workmanship."

99.     The Defendants expressly warranted that "the gypsumboards were manufactured in accordance to ASTM C36."

22

100.    The drywall at issue is, in all cases, unreasonably dangerous by virtue of the unreasonable emission of sulfur compounds which do not in any way contribute to or enhance the utility of the drywall, yet pose a risk to the wiring, plumbing, appliances, personal property, overall economic value of the property and financial security of the owner, and/or the health of the residents of the property.

101.    At all times pertinent and material hereto, there existed alternative feasible manufacturing processes and/or designs of drywall which perform all of the functions and utility of traditional drywall, without allowing unreasonable levels of sulfur compounds to exit the drywall.

102.    At all times pertinent and material hereto, Defendants knew that their drywall was unreasonably dangerous and/or defective as set forth herein.

103.    In the alternative, Defendants should have, at all times pertinent and material hereto, known of the unreasonably dangerous and/or defective characteristics and/or conditions, had they reasonably employed then-existing scientific and/or technical knowledge, reasonable testing, and/or other reasonable and then-accepted methods of quality assurance and/or quality control.

104.    Defendants' drywall is unreasonably dangerous in composition or construction in that, at the time it left Defendant's control, it deviated in a material way from Defendant's own specifications or performance standards.

105.    In addition, and in the alternative, Defendants' drywall is unreasonably dangerous in design, in that, at the time the drywall left Defendant's control, there existed an alternative design for the product that was capable of preventing Plaintiffs' damage, and the likelihood of

23

causing the plaintiffs' damage and the gravity of that harm outweighed the burden (if any) on the

Defendant in adopting such alternative design and the adverse effect (if any) on the utility of the

drywall.

106.   In addition, and in the alternative, Defendants' drywall is unreasonably dangerous

in that it fails to conform to an express warranty about the product which induced the use of the

product and caused damage to Plaintiffs to the extent that the warranty was untrue.

107.   In addition, and in the alternative, Defendants' drywall is unreasonably dangerous

due to an inadequate warning, in that, at the time the drywall left Defendant's control, the

drywall possessed a characteristic that might cause damage and yet Defendant failed to use

reasonable care to provide an adequate warning of such characteristics and/or dangers to users

and/or handlers of the drywall.

108.   Defendants are therefore liable to Louisiana Plaintiffs for all damages reasonable

in the premises.

**COUNT VII**
**PRIVATE NUISANCE**
**(All Defendants)**

109.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

110.   The Defendants' tortious or wrongful acts or omissions have caused sulfur

compounds and/or other chemical leaching into structures owned by Plaintiffs and Class

Members which has unreasonably interfered, and continues to interfere, with the Plaintiffs' and

Class Members' use and enjoyment of their properties and caused them harm and damage as

discussed herein.

24

111.   Defendants' interference has impaired the rights of Plaintiffs' and Class Members' health, comfort, safety, free use of their property, and/or peaceful enjoyment of their property.

112.   Defendants' invasions were intentional and unreasonable, and/or unintentional but otherwise negligent or reckless.

113.   The interference with Plaintiffs' and Class Members' use of their property caused by Defendants is substantial and is ongoing.

114.   Defendants' private nuisance was the direct, proximate, and foreseeable cause of Plaintiffs' and Class Members' damages, harm, and loss, which they suffered and will continue to suffer.

115.   As a direct and proximate result of Defendants' creation of a private nuisance, Plaintiffs and Class Members have incurred harm and damages as described herein.

**COUNT VIII**
**UNJUST ENRICHMENT**
**(Against All Defendants)**

116.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

117.   Defendants received money as a result of Plaintiffs' and Class Members' purchases of Defendants' defective drywall, or purchases of structures containing this drywall, either directly or through an agent, and Defendants wrongfully accepted and retained these benefits to the detriment of Plaintiffs and Class Members.

118.   Defendants' acceptance and retention of these benefits under the circumstances make it inequitable and unjust for Defendants to retain the benefit without payment of the value to the Plaintiffs and the Class Members.

25

119.   Defendants, by the deliberate and tortious conduct complained of herein, have been unjustly enriched in a manner which warrants restitution.

**COUNT IX**
**VIOLATION OF CONSUMER PROTECTION ACTS**
**(Against All Defendants)**

120.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

121.   This is an action for relief under the various Consumer Protection Acts of the jurisdictions in which affected properties are present, including but not limited to, L.SA-R.S. 51:1401, *et seq.* (Louisiana Unfair Trade Practices and Consumer Protection Law); Ala. Code 1975 § 8-19-1, *et seq.* (Alabama Deceptive Trade Practices Act); G.S. § 75-1.1, *et seq.* (North Carolina Consumer Protection Act); F.S. § 501.201, *et seq.* (Florida Deceptive and Unfair Trade Practices Act); Va. Code. Ann. § 59.1-196, *et seq.* (Virginia Consumer Protection Act); Tex. Bus. Com. Code Ann. § 17.41, *et seq.* (Texas Deceptive Trade Practices-Consumer Protection Act); Miss. Code Ann. § 75-24-1, *et seq.* (Mississippi Consumer Protection Act); GA ST § 10-1-393, *et seq.* (Georgia Consumer Protection Act);  SC ST § 39-5-20, *et seq.* (South Carolina Consumer Protection Act); Tenn. Code Ann. § 47-18-104, et seq. (Tennessee Consumer Protection Act).

122.   The Defendants' acts and omissions as well as their failure to use reasonable care in this matter as alleged in this complaint, including but not limited to, the knowing misrepresentation or failure to disclose the source, affiliation, origin, characteristics, ingredients, standards and quality of defective drywall constitute violation of the provisions of the Consumer Protection Acts of the Relevant States.

123.   Plaintiffs and Class Members have suffered actual damages as a result of Defendants' violation of these Consumer Protection Acts and are entitled to relief.

124.   As a direct and proximate result of Defendants' violations of the Consumer Protection Acts of the Relevant States, Plaintiffs and Class Members have incurred harm and damages as described herein.

**COUNT X**
**EQUITABLE AND INJUNCTIVE RELIEF**
**(Against All Defendants)**

125.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

126.   Plaintiffs and the Class Members are without adequate remedy at law, rendering injunctive and other equitable relief appropriate.

127.   Plaintiffs and the Class Members will suffer irreparable harm if the Court does not render the injunctive relief set forth herein, and if defendants are not ordered to recall, buy back, rescind, and/or repair the structures owned by Plaintiffs and Class Members.

128.   Plaintiffs, on behalf of themselves and all others similarly situated, demand injunctive and equitable relief and further, that defendants be ordered to: (1) remediate, repair and/or replace the drywall in Class Members' homes or other structures upon proof by the defendants of the feasibility of such remedy or repair; (2) cease and desist from misrepresenting to the Class and the general public that the drywall is not defective and/or unreasonably dangerous as alleged herein; and (3) institute, at their own cost, a public awareness campaign to alert the Class and general public of the harm and dangers associated with the drywall.

## DEMAND FOR JURY TRIAL

Plaintiffs, individually and on behalf of the Class Members, hereby demand a trial by jury as to all issues so triable as a matter of right.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs, on behalf of themselves and all others similarly situated demand upon Defendants jointly and severally for:

a. an order certifying the case as a class action;

b. an order certifying the Class;

c. an order appointing Plaintiffs as the Class Representatives of the Class;

d. an order appointing undersigned counsel and their firms as counsel for the Class;

e. compensatory and statutory damages;

f. punitive damages as allowed by law;

g. pre and post-judgment interest as allowed by law;

h. injunctive relief;

I. an award of attorneys' fees as allowed by law;

j. an award of taxable costs; and

k. any and all such further relief as this Court deems just and proper.

Respectfully submitted,

Dated: 8/1/2017

By:___/s/ Bruce W. Steckler___

        Bruce William Steckler, Esquire
        Texas Bar ID#00785039
        Steckler Gresham Cochran
        12720 Hillcrest Road, Ste 1045
        Dallas, TX 75230
        Phone: (972) 387-4040
        Fax: (972) 387-4041
        bruce@stecklerlaw.com

        Attorneys for Plaintiffs

**COURT APPOINTED PLAINTIFFS' LIASON AND LEAD COUNSEL IN MDL 2047**

Russ M. Herman                          Arnold Levin
HERMAN, HERMAN & KATZ, LLC              Levin Sedran & Berman
820 O'Keefe Avenue                      510 Walnut Street, Suite 500
New Orleans, Louisiana 70113            Philadelphia, PA 19106
Phone: (504) 581-4892                   Phone: (215) 592-1500
Fax: (504) 561-6024                     Fax: (215) 592-4663
rherman@hhklawfirm.com                  alevin@lfsblaw.com

*Plaintiffs' Liaison Counsel MDL 2047*    *Plaintiffs' Lead Counsel MDL 2047*


**COURT APPOINTED PLAINTIFFS' STEERING
COMMITTEE IN MDL 2047 - OF COUNSEL TO PLAINTIFFS**

Dawn M. Barrios                         Robert Becnel
Barrios, Kingsdorf & Casteix, LLP       Becnel Law Firm, LLC
701 Poydras Street, Suite 3650          425 W. Airline Highway, Suite B
New Orleans, LA 70139                   Laplace, LA 70068
Phone: (504) 524-3300                   Phone: (985) 536-1186
Fax: (504) 524-3313                     Fax: (985) 536-6445
Barrios@bkc-law.com                     rbecnel@becnellaw.com

Peter Prieto
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
pprieto@podhurst.com

Patrick Montoya
Colson, Hicks, Eidson
255 Alhambra Circle, Penthouse
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
patrick@colson.com

Hugh P. Lambert
The Lambert Firm
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@thelambertfirm.com

James Robert Reeves
Reeves & Mestayer, PLLC
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@attorneys4people.com

Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5002
dan@wbmllp.com

Bruce William Steckler
Steckler Gresham Cochran
12720 Hillcrest Road, Ste 1045
Dallas, TX 75230
Phone: (972) 387-4040
Fax: (972) 387-4041
bruce@stecklerlaw.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Christopher Seeger
Seeger Weiss, LLP
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Richard J. Serpe
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com

Victor M. Diaz, Jr.
V.M. Diaz and Partners, LLC
119 Washington Ave, Suite 402
Miami Beach, FL 33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com


**OF COUNSEL TO COURT APPOINTED PLAINTIFFS' STEERING COMMITTEE IN
MDL 2047 - OF COUNSEL TO PLAINTIFFS**


Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W, Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax:   (202) 540-7201
rlewis@hausfeldllp.com

Anthony D. Irpino
IRPINO AVIN HAWKINS LAW FIRM
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com


**COUNSEL FOR INDIVIDUAL PLAINTIFFS**

Jimmy Doyle, Esquire
Doyle Law Firm
2100 Southbridge Parkway, Ste. 50
Birmingham, AL   35209
(205) 533-9500 (telephone)

*Attorney for Kenneth D. Lochhead and
Maria L. Webste*

Holly Werkema, Esquire
Baron & Budd, P.C.
3102 Oak Lawn Avenue, Ste. 1100
Dallas, TX   75219
(214) 521-3605 (telephone)

*Attorneys for Marc Norman*

# Exhibit "B"

| Tab | Case Caption | Court | Civil Action Number | Judge |
|-----|-------------|-------|---------------------|-------|
| 1. | **Plaintiffs:**<br>Randy Bayne, et al. (the names of all plaintiffs are listed on Exhibit "A" to the Complaint)<br><br>**Movant:**<br>Russ Herman, Esquire (Plaintiffs' Liaison Counsel)<br>Arnold Levin, Esquire (Plaintiffs' Lead Counsel)<br><br>**Defendants:**<br>Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd.; Tai'an Taishan Plasterboard Co., Ltd.; Beijing New Building Materials Public Limited Co.; Beijing New Building Materials (Group) Co., Ltd.; China National Building Material Co., Ltd. | ND of Alabama | 4:17-cv-01286-KOB | **Chief Judge Karon O Bowdre** |

# U.S. District Court
## Northern District of Alabama (Middle)
### CIVIL DOCKET FOR CASE #: 4:17-cv-01286-KOB

Bayne v. Taishan Gypsum Co., Ltd. et al
Assigned to: Chief Judge Karon O Bowdre
Cause: 28:1332 Diversity-Product Liability

Date Filed: 08/01/2017
Jury Demand: Plaintiff
Nature of Suit: 385 Prop. Damage Prod. Liability
Jurisdiction: Diversity

**Plaintiff**

**Randy Bayne**
*individually and on behalf of all others similarly situated*

represented by **James R Reeves , Jr**
REEVES & MESTAYER PLLC
160 Main Street
Biloxi, MS 39530
228-374-5151
Fax: 228-374-6630
Email: jrr@rmlawcall.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Taishan Gypsum Co., Ltd.**
*formerly known as*
Shandong Taihe Dongxin Co Ltd

**Defendant**

**Taian Taishan Plasterboard Co Ltd**

**Defendant**

**Beijing New Building Materials Public Limited Co.,**

**Defendant**

**Beijing New Building Materials (Group) Co., Ltd.**

**Defendant**

**China National Building Material Co., Ltd.**

| Date Filed | # | Docket Text |
|---|---|---|
|  |  |  |

| 08/01/2017 | 1 | COMPLAINT against Beijing New Building Materials (Group) Co., Ltd., Beijing New Building Materials Public Limited Co.,, China National Building Material Co., Ltd., Taian Taishan Plasterboard Co Ltd, Taishan Gypsum Co., Ltd., filed by Randy Bayne. (Attachments: # 1 Exhibit A)(SAC ) (Entered: 08/01/2017) |
| 08/01/2017 | | Filing Fee: Filing fee $ 400, receipt_number 1126-2900904. related document 1 COMPLAINT against Beijing New Building Materials (Group) Co., Ltd., Beijing New Building Materials Public Limited Co.,, China National Building Material Co., Ltd., Taian Taishan Plasterboard Co Ltd, Taishan Gypsum Co., Ltd., filed by Randy Bayne. (Attachments: # 1 Exhibit A)(SAC ). (Reeves, James) (Entered: 08/01/2017) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 08/02/2017 08:13:05 | | | |
| **PACER Login:** | lfsblaw0044:2586701:4460865 | **Client Code:** | CDW Shared |
| **Description:** | Docket Report | **Search Criteria:** | 4:17-cv-01286-KOB |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

| Tab | Case Caption | Court | Civil Action Number | Judge |
|-----|-------------|-------|---------------------|-------|
| 2. | **Plaintiffs:**<br>Jeremy Macon, et al. (the names of all plaintiffs are listed on Exhibit "A" to the Complaint)<br><br>**Movant:**<br>Russ Herman, Esquire (Plaintiffs' Liaison Counsel)<br>Arnold Levin, Esquire (Plaintiffs' Lead Counsel)<br><br>**Defendants:**<br>Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd.; Tai'an Taishan Plasterboard Co., Ltd.; Beijing New Building Materials Public Limited Co.; Beijing New Building Materials (Group) Co., Ltd.; China National Building Material Co., Ltd. | **ND of Alabama** | **1:17-cv-01287-VEH** | **Judge Virginia Emerson Hopkins** |

2

# U.S. District Court
## Northern District of Alabama (Eastern)
## CIVIL DOCKET FOR CASE #: 1:17-cv-01287-VEH

Macon v. Taishan Gypsum Co., Ltd. et al
Assigned to: Judge Virginia Emerson Hopkins
Cause: 28:1332 Diversity-Product Liability

Date Filed: 08/01/2017
Jury Demand: Plaintiff
Nature of Suit: 385 Prop. Damage Prod.
Liability
Jurisdiction: Diversity

**Plaintiff**

**Jeremy Macon**
*Individually and on behalf of others
similarly situated*

represented by **James R Reeves , Jr**
REEVES & MESTAYER PLLC
160 Main Street
Biloxi, MS 39530
228-374-5151
Fax: 228-374-6630
Email: jrr@rmlawcall.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Beijing New Building Materials
Public Limited Co.,**

**Defendant**

**Beijing New Building Materials
(Group) Co., Ltd.**

**Defendant**

**China National Building Material
Co., Ltd.**

| Date Filed | # | Docket Text |
|---|---|---|
| 08/01/2017 | 1 | OMNIBUS CLASS ACTION COMPLAINT (XXI) (ALABAMA AMORIN DEFAULT) against Beijing New Building Materials (Group) Co., Ltd., Beijing New Building Materials Public Limited Co.,, China National Building Material Co., Ltd., Tai'an Taishan Plasterboard Co., Ltd., Taishan Gypsum Co., Ltd., filed by Jeremy Macon. (Attachments: # 1 Exhibit A, # 2 Civil Cover Sheet)(JLC) (Entered: 08/01/2017) |
| 08/01/2017 |  | Filing Fee received in the amount of $400.00, Credit Card receipt_number 1126-2900912, NDAL receipt #B4601082014. (Reeves, James) Modified on 8/1/2017 |

(JLC). (Entered: 08/01/2017)

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 08/02/2017 08:17:32 | | | |
| **PACER Login:** | lfsblaw0044:2586701:4460865 | **Client Code:** | CDW Shared |
| **Description:** | Docket Report | **Search Criteria:** | 1:17-cv-01287-VEH |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

| Tab | Case Caption | Court | Civil Action Number | Judge |
|---|---|---|---|---|
| 3. | **Plaintiffs:**<br>Kelly Bentz, et al. (the names of all plaintiffs are listed on Exhibit "A" to the Complaint)<br><br>**Movant:**<br>Russ Herman, Esquire (Plaintiffs' Liaison Counsel)<br>Arnold Levin, Esquire (Plaintiffs' Lead Counsel)<br><br>**Defendants:**<br>Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd.; Tai'an Taishan Plasterboard Co., Ltd.; Beijing New Building Materials Public Limited Co.; Beijing New Building Materials (Group) Co., Ltd.; China National Building Material Co., Ltd. | ND of Georgia | 1:17-cv-02892-AT | **Judge Amy Totenberg** |

3

4months

# U.S. District Court
## Northern District of Georgia (Atlanta)
### CIVIL DOCKET FOR CASE #: 1:17-cv-02892-AT

Bentz et al v. Taishan Gypsum Co., Ltd. et al
Assigned to: Judge Amy Totenberg
Cause: 28:1332 Diversity - Property Damage/Product
Liability

Date Filed: 08/01/2017
Jury Demand: Plaintiff
Nature of Suit: 385 Prop. Damage Prod.
Liability
Jurisdiction: Diversity

**Plaintiff**

**Kelly Bentz**
*individually, and on behalf of all others*
*similarly situated*

represented by **Andrea Solomon Hirsch**
Herman Gerel, LLP
60 Lenox Pointe
Atlanta, GA 30324
404-880-9500
Fax: 404-880-9605
Email: ahirsch@hermangerel.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Scott Spires**

represented by **Andrea Solomon Hirsch**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**James Blankenship**

represented by **Andrea Solomon Hirsch**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Julie Blankenship**

represented by **Andrea Solomon Hirsch**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Leslie Glenn Cameron**

represented by **Andrea Solomon Hirsch**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**James Andrew Cameron**                    represented by **Andrea Solomon Hirsch**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Clifford B. Cecchi**                    represented by **Andrea Solomon Hirsch**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Carl D. Knight**                    represented by **Andrea Solomon Hirsch**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Tony McKoy**                    represented by **Andrea Solomon Hirsch**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Ty Santiago**                    represented by **Andrea Solomon Hirsch**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Lissette Santiago**                    represented by **Andrea Solomon Hirsch**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Heather Shortt**                    represented by **Andrea Solomon Hirsch**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Sandra Silva**                    represented by **Andrea Solomon Hirsch**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Javier Silva**                    represented by    **Andrea Solomon Hirsch**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Richard Stuker**                  represented by    **Andrea Solomon Hirsch**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Kathryn Stuker**                  represented by    **Andrea Solomon Hirsch**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Taishan Gypsum Co., Ltd.**
*formerly known as*
Shandong Taihe Dongxin Co., Ltd.

**Defendant**

**Tai'an Taishan Plasterboard Co., Ltd**

**Defendant**

**Beijing New Building Materials
Public Limited Co.**

**Defendant**

**Beijing New Building Materials
(Group) Co., Ltd.**

**Defendant**

**China National Building Material
Co., Ltd.**

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 08/01/2017 | 1 | CLASS ACTION COMPLAINT with Jury Demand, filed by Leslie Glenn Cameron, Richard Stuker, Lissette Santiago, Kathryn Stuker, Kelly Bentz, Heather Shortt, Ty Santiago, Clifford B. Cecchi, James Blankenship, James Andrew Cameron, Carl D. Knight, Tony McKoy, Javier Silva, Scott Spires, Julie Blankenship and Sandra Silva. ( Filing fee $ 400.00 receipt number 113E- |

7298134.) (Attachments: # 1 Exhibit -A, # 2 Civil Cover Sheet)(eop) Please visit our website at http://www.gand.uscourts.gov/commonly-used-forms to obtain Pretrial Instructions which includes the Consent To Proceed Before U.S. Magistrate form. (Entered: 08/02/2017)

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 08/02/2017 09:44:18 | | |
| **PACER Login:** | lfsblaw0044 | **Client Code:** | cdw |
| **Description:** | Docket Report | **Search Criteria:** | 1:17-cv-02892-AT |
| **Billable Pages:** | 3 | **Cost:** | 0.30 |

| Tab | Case Caption | Court | Civil Action Number | Judge |
|---|---|---|---|---|
| 4. | **Plaintiffs:**<br>Debra Peoples, et al. (the names of all plaintiffs are listed on Exhibit "A" to the Complaint)<br><br>**Movant:**<br>Russ Herman, Esquire (Plaintiffs' Liaison Counsel)<br>Arnold Levin, Esquire (Plaintiffs' Lead Counsel)<br><br>**Defendants:**<br>Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd.; Tai'an Taishan Plasterboard Co., Ltd.; Beijing New Building Materials Public Limited Co.; Beijing New Building Materials (Group) Co., Ltd.; China National Building Material Co., Ltd. | ND of Georgia | 1:17-cv-02890 | **Judge Thomas W. Thrash, Jr.** |

4

4months,CLASS

# U.S. District Court
## Northern District of Georgia (Atlanta)
## CIVIL DOCKET FOR CASE #: 1:17-cv-02890-TWT

| | |
|---|---|
| Peoples et al v. Taishan Gypsum Co., Ltd. et al | Date Filed: 08/01/2017 |
| Assigned to: Judge Thomas W. Thrash, Jr | Jury Demand: Plaintiff |
| Cause: 28:1332 Diversity - Property Damage/Product Liability | Nature of Suit: 385 Prop. Damage Prod. Liability |
| | Jurisdiction: Diversity |

**Plaintiff**

**Debra Peoples**
*individually, and on behalf of all others similarly situated*

represented by **Andrea Solomon Hirsch**
Herman Gerel, LLP
60 Lenox Pointe
Atlanta, GA 30324
404-880-9500
Fax: 404-880-9605
Email: ahirsch@hermangerel.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Scott Spires**

represented by **Andrea Solomon Hirsch**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Robert Bohler**

represented by **Andrea Solomon Hirsch**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Thomas Spencer**

represented by **Andrea Solomon Hirsch**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Virginia Spencer**

represented by **Andrea Solomon Hirsch**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Anthony Davis**
　　　　　　　　　　　　　　　　represented by　**Andrea Solomon Hirsch**
　　　　　　　　　　　　　　　　　　　　　　　(See above for address)
　　　　　　　　　　　　　　　　　　　　　　　*LEAD ATTORNEY*
　　　　　　　　　　　　　　　　　　　　　　　*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Alicia Davis**
　　　　　　　　　　　　　　　　represented by　**Andrea Solomon Hirsch**
　　　　　　　　　　　　　　　　　　　　　　　(See above for address)
　　　　　　　　　　　　　　　　　　　　　　　*LEAD ATTORNEY*
　　　　　　　　　　　　　　　　　　　　　　　*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Brian Brohm**
　　　　　　　　　　　　　　　　represented by　**Andrea Solomon Hirsch**
　　　　　　　　　　　　　　　　　　　　　　　(See above for address)
　　　　　　　　　　　　　　　　　　　　　　　*LEAD ATTORNEY*
　　　　　　　　　　　　　　　　　　　　　　　*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Tara Brohm**
　　　　　　　　　　　　　　　　represented by　**Andrea Solomon Hirsch**
　　　　　　　　　　　　　　　　　　　　　　　(See above for address)
　　　　　　　　　　　　　　　　　　　　　　　*LEAD ATTORNEY*
　　　　　　　　　　　　　　　　　　　　　　　*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Yolande Cadet**
　　　　　　　　　　　　　　　　represented by　**Andrea Solomon Hirsch**
　　　　　　　　　　　　　　　　　　　　　　　(See above for address)
　　　　　　　　　　　　　　　　　　　　　　　*LEAD ATTORNEY*
　　　　　　　　　　　　　　　　　　　　　　　*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Andy Bray**
　　　　　　　　　　　　　　　　represented by　**Andrea Solomon Hirsch**
　　　　　　　　　　　　　　　　　　　　　　　(See above for address)
　　　　　　　　　　　　　　　　　　　　　　　*LEAD ATTORNEY*
　　　　　　　　　　　　　　　　　　　　　　　*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Chandra Bray**
　　　　　　　　　　　　　　　　represented by　**Andrea Solomon Hirsch**
　　　　　　　　　　　　　　　　　　　　　　　(See above for address)
　　　　　　　　　　　　　　　　　　　　　　　*LEAD ATTORNEY*
　　　　　　　　　　　　　　　　　　　　　　　*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Nell Boothe**
　　　　　　　　　　　　　　　　represented by　**Andrea Solomon Hirsch**
　　　　　　　　　　　　　　　　　　　　　　　(See above for address)
　　　　　　　　　　　　　　　　　　　　　　　*LEAD ATTORNEY*
　　　　　　　　　　　　　　　　　　　　　　　*ATTORNEY TO BE NOTICED*

**Plaintiff**
**Bernice Butler**                          represented by   **Andrea Solomon Hirsch**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Plaintiff**
**Michael Cardinal**                        represented by   **Andrea Solomon Hirsch**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Plaintiff**
**Suyon Cardinal**                          represented by   **Andrea Solomon Hirsch**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Plaintiff**
**Benjamin Hersey**                         represented by   **Andrea Solomon Hirsch**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Plaintiff**
**Kandice Hersey**                          represented by   **Andrea Solomon Hirsch**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Plaintiff**
**Victor Howell**                           represented by   **Andrea Solomon Hirsch**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Plaintiff**
**Loumertistene Howell**                    represented by   **Andrea Solomon Hirsch**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Plaintiff**
**Demetra Walker**                          represented by   **Andrea Solomon Hirsch**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Alonza Wallace**                                          represented by **Andrea Solomon Hirsch**
                                                                  (See above for address)
                                                                  *LEAD ATTORNEY*
                                                                  *ATTORNEY TO BE NOTICED*


V.

**Defendant**

**Taishan Gypsum Co., Ltd.**
*formerly known as*
Shandong Taihe Dongxin Co., Ltd.

**Defendant**

**Tai'an Taishan Plasterboard Co., Ltd**

**Defendant**

**Beijing New Building Materials
Public Limited Co.**

**Defendant**

**Beijing New Building Materials
(Group) Co., Ltd.**

**Defendant**

**China National Building Material
Co., Ltd.**

| Date Filed | # | Docket Text |
|---|---|---|
| 08/01/2017 | 1 | CLASS ACTION COMPLAINT with Jury Demand, filed by Thomas Spencer, Bernice Butler, Victor Howell, Yolande Cadet, Michael Cardinal, Debra Peoples, Andy Bray, Anthony Davis, Tara Brohm, Suyon Cardinal, Alonza Wallace, Kandice Hersey, Loumertistene Howell, Demetra Walker, Scott Spires, Virginia Spencer, Nell Boothe, Brian Brohm, Alicia Davis, Benjamin Hersey, Chandra Bray and Robert Bohler. ( Filing fee $ 400.00 receipt number 113E-7298052.) (Attachments: # 1 Exhibit -A, # 2 Civil Cover Sheet)(eop) Please visit our website at http://www.gand.uscourts.gov/commonly-used-forms to obtain Pretrial Instructions which includes the Consent To Proceed Before U.S. Magistrate form. Modified text on 8/2/2017 (eop). (Entered: 08/01/2017) |

| PACER Service Center |
|---|
| **Transaction Receipt** |
| 08/02/2017 09:22:47 |

| PACER Login: | lfsblaw0044:2586701:4460865 | Client Code: | CDW Shared |
|---|---|---|---|
| Description: | Docket Report | Search Criteria: | 1:17-cv-02890-TWT |
| Billable Pages: | 4 | Cost: | 0.40 |

| Tab | Case Caption | Court | Civil Action Number | Judge |
|-----|--------------|-------|---------------------|-------|
| 5. | **Plaintiffs:**<br>Donna Polk, et al. (the names of all plaintiffs are listed on Exhibit "A" to the Complaint)<br><br>**Movant:**<br>Russ Herman, Esquire (Plaintiffs' Liaison Counsel)<br>Arnold Levin, Esquire (Plaintiffs' Lead Counsel)<br><br>**Defendants:**<br>Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd.; Tai'an Taishan Plasterboard Co., Ltd.; Beijing New Building Materials Public Limited Co.; Beijing New Building Materials (Group) Co., Ltd.; China National Building Material Co., Ltd. | SD of Mississippi | 1:17-cv-216H50-JCG | District Judge Halil S. Ozerden |

5

# U.S. District Court
## Southern District of Mississippi (Southern)
## CIVIL DOCKET FOR CASE #: 1:17-cv-00216-HSO-JCG

Polk et al v. Taishan Gypsum Co., Ltd. et al
Assigned to: District Judge Halil S. Ozerden
Referred to: Magistrate Judge John C. Gargiulo
Cause: 28:1332 Diversity-Product Liability

Date Filed: 08/01/2017
Jury Demand: Plaintiff
Nature of Suit: 385 Prop. Damage Prod. Liability
Jurisdiction: Diversity

**Plaintiff**

**Donna Polk**
*individually, and on behalf of all others similarly situated*

represented by **James R. Reeves , Jr.**
REEVES & MESTAYER, PLLC
P.O. Drawer 1388
Biloxi, MS 39533
228/374-5151
Fax: 228/374-6630
Email: jrr@rmlawcall.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Charles Bowden**

represented by **James R. Reeves , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Alean Lampton**

represented by **James R. Reeves , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Joseph Loper**

represented by **James R. Reeves , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Sherry Loper**

represented by **James R. Reeves , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Melody Strickland**                    represented by    **James R. Reeves , Jr.**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Smith Enterprises, Inc.**              represented by    **James R. Reeves , Jr.**
*(Erick Smith)*                                             (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Plaintiff**

**St. Martin Lion's Club**               represented by    **James R. Reeves , Jr.**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Michelle Legere**                      represented by    **James R. Reeves , Jr.**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Robert Wessler**                       represented by    **James R. Reeves , Jr.**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Barri Wessler**                        represented by    **James R. Reeves , Jr.**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Kenneth Butler**                       represented by    **James R. Reeves , Jr.**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Mary Butler**                          represented by    **James R. Reeves , Jr.**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Dalton, Inc.**                                  represented by    **James R. Reeves , Jr.**
                                                                  (See above for address)
                                                                  *LEAD ATTORNEY*
                                                                  *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Walter Davis**                                  represented by    **James R. Reeves , Jr.**
                                                                  (See above for address)
                                                                  *LEAD ATTORNEY*
                                                                  *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Melissa Davis**                                 represented by    **James R. Reeves , Jr.**
                                                                  (See above for address)
                                                                  *LEAD ATTORNEY*
                                                                  *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Michael Everett**                               represented by    **James R. Reeves , Jr.**
                                                                  (See above for address)
                                                                  *LEAD ATTORNEY*
                                                                  *ATTORNEY TO BE NOTICED*

**Plaintiff**

**John Heath**                                    represented by    **James R. Reeves , Jr.**
                                                                  (See above for address)
                                                                  *LEAD ATTORNEY*
                                                                  *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Vicky Heath**                                   represented by    **James R. Reeves , Jr.**
                                                                  (See above for address)
                                                                  *LEAD ATTORNEY*
                                                                  *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Robert Johnson**                                represented by    **James R. Reeves , Jr.**
                                                                  (See above for address)
                                                                  *LEAD ATTORNEY*
                                                                  *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Elizabeth Johnson**                             represented by    **James R. Reeves , Jr.**
                                                                  (See above for address)
                                                                  *LEAD ATTORNEY*
                                                                  *ATTORNEY TO BE NOTICED*

**Plaintiff**
**Daniel Madison**                                      represented by   **James R. Reeves , Jr.**
                                                                        (See above for address)
                                                                        *LEAD ATTORNEY*
                                                                        *ATTORNEY TO BE NOTICED*


**Plaintiff**
**Minnie Madison**                                     represented by   **James R. Reeves , Jr.**
                                                                        (See above for address)
                                                                        *LEAD ATTORNEY*
                                                                        *ATTORNEY TO BE NOTICED*


**Plaintiff**
**Richard Maxwell**                                    represented by   **James R. Reeves , Jr.**
                                                                        (See above for address)
                                                                        *LEAD ATTORNEY*
                                                                        *ATTORNEY TO BE NOTICED*


**Plaintiff**
**Gretchen Maxwell**                                   represented by   **James R. Reeves , Jr.**
                                                                        (See above for address)
                                                                        *LEAD ATTORNEY*
                                                                        *ATTORNEY TO BE NOTICED*


**Plaintiff**
**Gary McDonald**                                      represented by   **James R. Reeves , Jr.**
                                                                        (See above for address)
                                                                        *LEAD ATTORNEY*
                                                                        *ATTORNEY TO BE NOTICED*


**Plaintiff**
**Tricia McDonald**                                    represented by   **James R. Reeves , Jr.**
                                                                        (See above for address)
                                                                        *LEAD ATTORNEY*
                                                                        *ATTORNEY TO BE NOTICED*


**Plaintiff**
**Jacob McKinley**                                     represented by   **James R. Reeves , Jr.**
                                                                        (See above for address)
                                                                        *LEAD ATTORNEY*
                                                                        *ATTORNEY TO BE NOTICED*


**Plaintiff**
**Jason Scott McMurray**                               represented by   **James R. Reeves , Jr.**
                                                                        (See above for address)
                                                                        *LEAD ATTORNEY*
                                                                        *ATTORNEY TO BE NOTICED*

**Plaintiff**
Walter Medley                    represented by    **James R. Reeves , Jr.**
                                                   (See above for address)
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*


**Plaintiff**
Lee Medley                       represented by    **James R. Reeves , Jr.**
                                                   (See above for address)
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*


**Plaintiff**
Melissa Norris                   represented by    **James R. Reeves , Jr.**
                                                   (See above for address)
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*


**Plaintiff**
Sonja Palmer                     represented by    **James R. Reeves , Jr.**
                                                   (See above for address)
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*


**Plaintiff**
James Robinson                   represented by    **James R. Reeves , Jr.**
                                                   (See above for address)
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*


**Plaintiff**
Stephanie Robinson               represented by    **James R. Reeves , Jr.**
                                                   (See above for address)
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*


**Plaintiff**
Norman Shiyou                    represented by    **James R. Reeves , Jr.**
                                                   (See above for address)
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*


**Plaintiff**
Jerald Smith                     represented by    **James R. Reeves , Jr.**
                                                   (See above for address)
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Mary Anne Smith**                          represented by    **James R. Reeves , Jr.**
                                                              (See above for address)
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Vu Van**                                   represented by    **James R. Reeves , Jr.**
                                                              (See above for address)
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Thanh and Trinh**                          represented by    **James R. Reeves , Jr.**
                                                              (See above for address)
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

**Plaintiff**

**To Thi**                                   represented by    **James R. Reeves , Jr.**
                                                              (See above for address)
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Taishan Gypsum Co., Ltd.**
*formerly known as*
Shandong Taihe Dongxin Co., Ltd.

**Defendant**

**Tai'an Taishan Plasterboard Co.,
Ltd.**

**Defendant**

**Beijing New Building Materials
Public Limited Co.**

**Defendant**

**Beijing New Building Materials
(Group) Co., Ltd.**

**Defendant**

**China National Building Material
Co., Ltd.**

| Date Filed | # | Docket Text |
|---|---|---|
| 08/01/2017 | 1 | COMPLAINT with jury demand against Beijing New Building Materials (Group) Co., Ltd., Beijing New Building Materials Public Limited Co., China National Building Material Co., Ltd., Tai'an Taishan Plasterboard Co., Ltd., Taishan Gypsum Co., Ltd. ( Filing fee $ 400.00 receipt number 14643009481), filed by James Robinson, Michael Everett, Barri Wessler, Melissa Norris, Norman Shiyou, Joseph Loper, Michelle Legere, Donna Polk, Jacob McKinley, Mary Butler, Dalton, Inc., Mary Anne Smith, Jason Scott McMurray, Lee Medley, Stephanie Robinson, Walter Medley, Gretchen Maxwell, Melissa Davis, John Heath, Melody Strickland, Tricia McDonald, Thanh and Trinh, Vu Van, Smith Enterprises, Inc., Kenneth Butler, Walter Davis, Sonja Palmer, Robert Johnson, Charles Bowden, Sherry Loper, Gary McDonald, Elizabeth Johnson, St. Martin Lion's Club, Richard Maxwell, To Thi, Vicky Heath, Minnie Madison, Jerald Smith, Robert Wessler, Daniel Madison, Alean Lampton. (Attachments: # 1 Exhibit A - Named Plaintiffs, # 2 Civil Cover Sheet)(PKS) (Entered: 08/01/2017) |
| 08/01/2017 | 2 | Letter sent to MDL Clerk with docket entries and complaint. (PKS) (Entered: 08/01/2017) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 08/02/2017 08:24:24 | | | |
| PACER Login: | lfsblaw0044:2586701:4460865 | Client Code: | CDW Shared |
| Description: | Docket Report | Search Criteria: | 1:17-cv-00216-HSO-JCG |
| Billable Pages: | 6 | Cost: | 0.60 |

| Tab | Case Caption | Court | Civil Action Number | Judge |
|---|---|---|---|---|
| 6. | **Plaintiffs:**<br><br>Lela and Melinda Allen, et al. (the names of all plaintiffs are listed on Exhibit "A" to the Complaint)<br><br>**Movant:**<br>Russ Herman, Esquire (Plaintiffs' Liaison Counsel)<br>Arnold Levin, Esquire (Plaintiffs' Lead Counsel)<br><br>**Defendants:**<br>Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd.; Tai'an Taishan Plasterboard Co., Ltd.; Beijing New Building Materials Public Limited Co.; Beijing New Building Materials (Group) Co., Ltd.; China National Building Material Co., Ltd. | SD of Mississippi | 1:17-cv-217LG-RHW | **Chief District Judge Louis Guirola, Jr.** |

6

# U.S. District Court
## Southern District of Mississippi (Southern)
## CIVIL DOCKET FOR CASE #: 1:17-cv-00217-LG-RHW

Allen et al v. Taishan Gypsum Co., Ltd. et al
Assigned to: Chief District Judge Louis Guirola, Jr
Referred to: Magistrate Judge Robert H. Walker
Cause: 28:1332 Diversity-Product Liability

Date Filed: 08/01/2017
Jury Demand: Plaintiff
Nature of Suit: 385 Prop. Damage Prod.
Liability
Jurisdiction: Diversity

**Plaintiff**

**Lela Allen**
*individually, and on behalf of all others
similarly situated*

represented by **James R. Reeves , Jr.**
REEVES & MESTAYER, PLLC
P.O. Drawer 1388
Biloxi, MS 39533
228/374-5151
Fax: 228/374-6630
Email: jrr@rmlawcall.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Melinda Allen**

represented by **James R. Reeves , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Dolly E. Lott**

represented by **Dolly E. Lott**
PRO SE

**Plaintiff**

**Rodney C. Lott**

represented by **Rodney C. Lott**
PRO SE

**Plaintiff**

**Brandi Merrell**

represented by **Brandi Merrell**
PRO SE

**Plaintiff**

**Hue Roettele**

represented by **Hue Roettele**
PRO SE

**Plaintiff**

**Jeremy Bolling**                              represented by **Jeremy Bolling**
                                                               PRO SE

**Plaintiff**
**Lacey Bolling**                               represented by **Lacey Bolling**
                                                               PRO SE

**Plaintiff**
**Francis Adams**                               represented by **James R. Reeves , Jr.**
                                                               (See above for address)
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

**Plaintiff**
**Susan Adams**                                 represented by **James R. Reeves , Jr.**
                                                               (See above for address)
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

**Plaintiff**
**Chester M. Bilbo, Jr.**                       represented by **James R. Reeves , Jr.**
                                                               (See above for address)
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

**Plaintiff**
**Mary I. Coster**                              represented by **James R. Reeves , Jr.**
                                                               (See above for address)
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

**Plaintiff**
**Crystal Farve**                               represented by **James R. Reeves , Jr.**
                                                               (See above for address)
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

**Plaintiff**
**John Farve**                                  represented by **James R. Reeves , Jr.**
                                                               (See above for address)
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

**Plaintiff**
**Margie Foxworth**                             represented by **James R. Reeves , Jr.**
                                                               (See above for address)
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

**Plaintiff**
**Billy F. Foxworth**                      represented by   **James R. Reeves , Jr.**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Plaintiff**
**Merie Palermo**                          represented by   **James R. Reeves , Jr.**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Plaintiff**
**Kaye Patterson**                         represented by   **James R. Reeves , Jr.**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Plaintiff**
**Mary Anne Smith**                        represented by   **James R. Reeves , Jr.**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Plaintiff**
**Arthur Herbert**                         represented by   **Arthur Herbert**
                                                            PRO SE

**Plaintiff**
**Gail Herbert**                           represented by   **Gail Herbert**
                                                            PRO SE

**Plaintiff**
**Kent Hollifield**                        represented by   **Kent Hollifield**
                                                            PRO SE

**Plaintiff**
**Tiffany Hollifield**                     represented by   **Tiffany Hollifield**
                                                            PRO SE

V.

**Defendant**
**Taishan Gypsum Co., Ltd.**
*formerly known as*
Shandong Taihe Dongxin Co., Ltd.

**Defendant**

**Tai'an Taishan Plasterboard Co.,
Ltd.**

**Defendant**

**Beijing New Building Materials
Public Limited Co.**

**Defendant**

**Beijing New Building Materials
(Group) Co., Ltd.**

**Defendant**

**China National Building Material
Co., Ltd.**

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 08/01/2017 | 1 | COMPLAINT with jury demand against Beijing New Building Materials (Group) Co., Ltd., Beijing New Building Materials Public Limited Co., China National Building Material Co., Ltd., Tai'an Taishan Plasterboard Co., Ltd., Taishan Gypsum Co., Ltd. ( Filing fee $ 400 receipt number 14643009481), filed by Tiffany Hollifield, Gail Herbert, Arthur Herbert, Francis Adams, John Farve, Brandi Merrell, Merie Palermo, Mary I. Coster, Margie Foxworth, Lela Allen, Mary Anne Smith, Susan Adams, Rodney C. Lott, Kaye Patterson, Melinda Allen, Jeremy Bolling, Chester M. Bilbo, Jr, Hue Roettele, Kent Hollifield, Billy F. Foxworth, Crystal Farve, Lacey Bolling, Dolly E. Lott. (Attachments: # 1 Exhibit A-Named Plaintiffs, # 2 Civil Cover Sheet)(wld) (Entered: 08/01/2017) |
| 08/01/2017 | 2 | Letter sent to MDL Clerk with docket entries and complaint. (wld) (Entered: 08/01/2017) |

|  | PACER Service Center | |
|---|---|---|
|  | **Transaction Receipt** | |
|  | 08/02/2017 08:33:25 | |
| **PACER Login:** | lfsblaw0044:2586701:4460865 | **Client Code:** | CDW Shared |
| **Description:** | Docket Report | **Search Criteria:** | 1:17-cv-00217-LG-RHW |
| **Billable Pages:** | 3 | **Cost:** | 0.30 |

| Tab | Case Caption | Court | Civil Action Number | Judge |
|---|---|---|---|---|
| 7. | **Plaintiffs:**<br><br>David and Melody Bright<br>Larry Bazemore<br>Sidney and Susan Camden<br>John and Margaret Galanda<br>Sylvia and Curtis Hinkley, Jr.<br>Russell and Judi Renner<br>Carter and Barbara Savage<br><br>**Movant:**<br>Russ Herman, Esquire (Plaintiffs' Liaison Counsel)<br>Arnold Levin, Esquire (Plaintiffs' Lead Counsel)<br><br>**Defendants:**<br>Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd.; Tai'an Taishan Plasterboard Co., Ltd.; Beijing New Building Materials Public Limited Co.; Beijing New Building Materials (Group) Co., Ltd.; China National Building Material Co., Ltd. | **ED of North Carolina** | **2:17-cv-00035-FL** | **District Judge Louise Wood Flanagan** |

# U.S. District Court
# EASTERN DISTRICT OF NORTH CAROLINA (Northern Division)
# CIVIL DOCKET FOR CASE #: 2:17-cv-00035-FL

Bright et al v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd. et al
Assigned to: District Judge Louise Wood Flanagan
Case in other court: US District Court for the E.D. LA, 09-MD-2047
Cause: 28:1332 Diversity-Property Damage

Date Filed: 08/01/2017
Jury Demand: Plaintiff
Nature of Suit: 385 Prop. Damage Prod. Liability
Jurisdiction: Diversity

**Plaintiff**

**David and Melody Bright**                    represented by  **J. Michael Malone**
                                                               Hendren, Redwine & Malone, PLLC
                                                               4600 Marriott Dr., Suite 150
                                                               Raleigh, NC 27612
                                                               919-573-1423
                                                               Fax: 919-420-0475
                                                               Email: mmalone@hendrenmalone.com
                                                               *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Larry Bazemore**                             represented by  **J. Michael Malone**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Sidney and Susan Camden**                    represented by  **J. Michael Malone**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

**Plaintiff**

**John and Margaret Galanda**                  represented by  **J. Michael Malone**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Sylvia and Curtis Hinkley, Jr.**             represented by  **J. Michael Malone**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Russell and Judi Renner**                    represented by  **J. Michael Malone**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Carter and Barbara Savage**                    represented by **J. Michael Malone**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Taishan Gypsum Co., Ltd. f/k/a
Shandong Taihe Dongxin Co., Ltd.**

**Defendant**

**Tai'an Taishan Plasterboard Co.,
Ltd.**

**Defendant**

**Beijing New Building Materials
Public Limited Co.**

**Defendant**

**Beijing New Building Materials
(Group) Co., Ltd.**

**Defendant**

**China National Building Material
Co., Ltd.**

| Date Filed | # | Docket Text |
|---|---|---|
| 08/01/2017 | 1 | COMPLAINT *OMNIBUS CLASS ACTION (NORTH CAROLINA AMORIN DEFAULT) (XXIV)* against All Defendants ( Filing fee $ 400 receipt number 0417-4178695.), filed by Russell and Judi Renner, Sidney and Susan Camden, Carter and Barbara Savage, Larry Bazemore, David and Melody Bright, John and Margaret Galanda, Sylvia and Curtis Hinkley, Jr.. (Attachments: # 1 Civil Cover Sheet, # 2 Civil Cover Sheet Attachment) (Malone, J.) (Entered: 08/01/2017) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 08/02/2017 09:27:41 | | |
| **PACER Login:** | lfsblaw0044:2586701:4460865 | **Client Code:** CDW Shared |
| **Description:** | Docket Report | **Search Criteria:** 2:17-cv-00035-FL |
| **Billable Pages:** | 2 | **Cost:** 0.20 |

| Tab | Case Caption | Court | Civil Action Number | Judge |
|---|---|---|---|---|
| 8. | **Plaintiffs:**<br><br>Harry DeOliveira<br><br>**Movant:**<br>Russ Herman, Esquire (Plaintiffs' Liaison Counsel)<br>Arnold Levin, Esquire (Plaintiffs' Lead Counsel)<br><br>**Defendants:**<br>Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd.; Tai'an Taishan Plasterboard Co., Ltd.; Beijing New Building Materials Public Limited Co.; Beijing New Building Materials (Group) Co., Ltd.; China National Building Material Co., Ltd. | **D of South Carolina** | **4:17-cv-02019-MDL** | **"Assigned to: Unassigned – MDL"** |

JURY

# U.S. District Court
## District of South Carolina (Florence)
## CIVIL DOCKET FOR CASE #: 4:17-cv-02019-MDL

DeOliveira v. Taishan Gypsum Co Ltd et al
Assigned to: Unassigned - MDL
Cause: 28:1332 Diversity-Property Damage

Date Filed: 08/01/2017
Jury Demand: Plaintiff
Nature of Suit: 385 Prop. Damage Prod. Liability
Jurisdiction: Diversity

### Plaintiff

**Harry DeOliveira**
*individually and on behalf of all others similarly situated*

represented by **Gerald D Jowers , Jr**
Janet Jenner and Suggs
500 Taylor Street
Suite 301
Columbia, SC 29201
803-726-0050
Fax: 803-727-1059
Email: gjowers@myadvocates.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth M Suggs**
Janet, Jenner & Suggs
500 Taylor Street
Columbia, SC 29201
803-726-0050
Fax: 803-727-1059
Email: ksuggs@myadvocates.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

### Defendant

**Taishan Gypsum Co Ltd**
*formerly known as*
Shandong Taihe Dongxin Co Ltd

### Defendant

**Tai'an Taishan Plasterboard Co Ltd**

### Defendant

**Beijing New Building Materials**

**Public Limited Co**

**Defendant**

**Beijing New Building Materials Group Co Ltd**

**Defendant**

**China National Building Material Co Ltd**

| Date Filed | # | Docket Text |
|---|---|---|
| 08/01/2017 | 1 | COMPLAINT against Beijing New Building Materials Group Co Ltd, Beijing New Building Materials Public Limited Co, China National Building Material Co Ltd, Tai'an Taishan Plasterboard Co Ltd, Taishan Gypsum Co Ltd ( Filing fee $ 400 receipt number 0420-7284968.), filed by Harry DeOliveira. Service due by 10/30/2017.(prou, ) (Entered: 08/01/2017) |
| 08/01/2017 | 3 | Local Rule 26.01 Answers to Interrogatories with jury demand by Harry DeOliveira.(prou, ) (Entered: 08/01/2017) |
| 08/01/2017 | 4 | ***DOCUMENTS E-MAILED: 1 Complaint and a certified copy of the docket sheet to Multidistrict Litigation Panel regarding possible MDL case. (prou, ) (Entered: 08/01/2017) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 08/02/2017 09:35:06 | | |
| **PACER Login:** | lfsblaw0044:2586701:4460865 | **Client Code:** | CDW Shared |
| **Description:** | Docket Report | **Search Criteria:** | 4:17-cv-02019-MDL |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

| Tab | Case Caption | Court | Civil Action Number | Judge |
|-----|--------------|-------|---------------------|-------|
| 9. | **Plaintiffs:**<br><br>James and Deloris Redden<br>Brian and Beth Watkins<br>Bobby and Darlyne Mullins<br><br>**Movant:**<br>Russ Herman, Esquire (Plaintiffs' Liaison Counsel)<br>Arnold Levin, Esquire (Plaintiffs' Lead Counsel)<br><br>**Defendants:**<br>Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd.; Tai'an Taishan Plasterboard Co., Ltd.; Beijing New Building Materials Public Limited Co.; Beijing New Building Materials (Group) Co., Ltd.; China National Building Material Co., Ltd. | **WD of Tennessee** | **1:17-cv-01146** | Not assigned as of 8-2-17 |

9

# U.S. District Court
## Western District of Tennessee (Jackson)
### CIVIL DOCKET FOR CASE #: 1:17-cv-01146

Redden et al v. Taishan Gypsum Co., Ltd. et al
Assigned to:
Cause: 28:1332 Diversity-Product Liability

Date Filed: 08/01/2017
Jury Demand: Plaintiff
Nature of Suit: 385 Prop. Damage Prod. Liability
Jurisdiction: Diversity

**Plaintiff**

**James Redden**

represented by **William G. Colvin**
WWILLIAM G. COLVIN, PLLC
801 Broad St.
Ste. 428
Chattanooga, TN 37402
423-265-8804
Fax: 423-267-5915
Email:
bcolvin@williamgcolvinlaw.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Deloris Redden**

represented by **William G. Colvin**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Taishan Gypsum Co., Ltd.**
*f/k/a Shandong Taihe Dongxin Co., Ltd.*

**Defendant**

**Taian Taishan Plasterboard Co., Ltd**

**Defendant**

**Beijing New Building Materials Public Limited Co.**

**Defendant**

**Beijing New Building Materials (Group)**

**Defendant**

**China National Building Material**

**Co., Ltd.**

| Date Filed | # | Docket Text |
|---|---|---|
| 08/01/2017 | 1 | COMPLAINT *Class Action* against All Defendants (Filing fee $ 400 receipt number 0651-2598669), filed by All Plaintiffs. (Attachments: # 1 Civil Cover Sheet)(Colvin, William) (Entered: 08/01/2017) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 08/02/2017 08:37:18 | | | |
| **PACER Login:** | lfsblaw0044:2586701:4460865 | **Client Code:** | CDW Shared |
| **Description:** | Docket Report | **Search Criteria:** | 1:17-cv-01146 |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

| Tab | Case Caption | Court | Civil Action Number | Judge |
|---|---|---|---|---|
| 10. | **Plaintiffs:**<br><br>Andy Mertlitz<br><br>**Movant:**<br>Russ Herman, Esquire (Plaintiffs' Liaison Counsel)<br>Arnold Levin, Esquire (Plaintiffs' Lead Counsel)<br><br>**Defendants:**<br>Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd.; Tai'an Taishan Plasterboard Co., Ltd.; Beijing New Building Materials Public Limited Co.; Beijing New Building Materials (Group) Co., Ltd.; China National Building Material Co., Ltd. | **ED of Texas** | **5:17-cv-00140** | **Judge Robert W. Schroeder, III.** |

JURY

# U.S. District Court [LIVE]
# Eastern District of TEXAS (Texarkana)
## CIVIL DOCKET FOR CASE #: 5:17-cv-00140-RWS

Mertlitz v. Taishan Gypsum Co. f/k/a Shandong Taihe Dongxin Co., Ltd. et al

Assigned to: Judge Robert W. Schroeder, III

Case in other court: E.D. La., 09-MD-2047

Cause: 28:1332 Diversity-(Citizenship)

Date Filed: 08/01/2017

Jury Demand: Plaintiff

Nature of Suit: 385 Prop. Damage Prod. Liability

Jurisdiction: Diversity

**Plaintiff**

**Andy Mertlitz**

represented by **Bruce William Steckler**
Steckler Gresham Cochran LLP
12720 Hillcrest Road, Suite 1045
Dallas, TX 75230
9723874040
Fax: 9723874041
Email: bruce@stecklerlaw.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Taishan Gypsum Co. f/k/a Shandong Taihe Dongxin Co., Ltd.**

**Defendant**

**Tai'an Taishan Plasterboard Co., Ltd.**

**Defendant**

**Beijing New Building Materials Public Limited Co.**

**Defendant**

**Beijing New Building Materials (Group) Co., Ltd.**

**Defendant**

**China National Building Material Co., Ltd.**

| Date Filed | # | Docket Text |
|---|---|---|

| 08/01/2017 | 1 | OMNIBUS CLASS ACTION COMPLAINT (TEXAS AMORIN DEFAULT) against All Defendants ( Filing fee $ 400 receipt number 0540-6405213.), filed by Andy Mertlitz. (Attachments: # 1 Civil Cover Sheet)(Steckler, Bruce) (Entered: 08/01/2017) |
| 08/01/2017 | | Case Assigned to Presiding Judge Robert W. Schroeder, III. (sm, ) (Entered: 08/01/2017) |
| 08/01/2017 | | In accordance with the provisions of 28 USC Section 636(c), you are hereby notified that a U.S. Magistrate Judge of this district court is available to conduct any or all proceedings in this case including a jury or non-jury trial and to order the entry of a final judgment. The form Consent to Proceed Before Magistrate Judge is available on our website. All signed consent forms, excluding pro se parties, should be filed electronically using the event Notice Regarding Consent to Proceed Before Magistrate Judge. (sm, ) (Entered: 08/01/2017) |

| PACER Service Center | | | | |
|---|---|---|---|---|
| **Transaction Receipt** | | | | |
| 08/02/2017 08:40:39 | | | | |
| **PACER Login:** | lfsblaw0044:2586701:4460865 | **Client Code:** | CDW Shared | |
| **Description:** | Docket Report | **Search Criteria:** | 5:17-cv-00140-RWS | |
| **Billable Pages:** | 1 | **Cost:** | 0.10 | |

| Tab | Case Caption | Court | Civil Action Number | Judge |
|-----|-------------|-------|--------------------|-------|
| 11. | **Plaintiffs:**<br><br>Kenneth D. Lochhead and Maria L. Webste<br>Marc Norman<br><br>**Movant:**<br>Russ Herman, Esquire (Plaintiffs' Liaison Counsel)<br>Arnold Levin, Esquire (Plaintiffs' Lead Counsel)<br><br>**Defendants:**<br>Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd.; Tai'an Taishan Plasterboard Co., Ltd.; Beijing New Building Materials Public Limited Co.; Beijing New Building Materials (Group) Co., Ltd.; China National Building Material Co., Ltd. | **SD of Texas** | **7:17-cv-00294** | **Not assigned as of 8-2-17** |

11

# U.S. District Court
## SOUTHERN DISTRICT OF TEXAS (McAllen)
## CIVIL DOCKET FOR CASE #: 7:17-cv-00294

Lochhead et al v. Taishan Gypsum Co., Ltd. et al
Assigned to:
Case in other court: E.D. La., 09-MD-2047
Cause: 28:1332 Diversity-(Citizenship)

Date Filed: 08/01/2017
Jury Demand: Plaintiff
Nature of Suit: 385 Prop. Damage Prod.
Liability
Jurisdiction: Diversity

**Plaintiff**

**Kenneth Lochhead**
*individually and on behalf of all others
similarly situated*

represented by **Bruce W Steckler**
Steckler Gresham Cochran
12720 Hillcrest Rd
Ste 1045
Dallas, TX 75230
9723874040
Fax: 9723874041
Email: bruce@stecklerlaw.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Maria Webste**
*individually and on behalf of all others
similarly situated*

represented by **Bruce W Steckler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Marc Norman**

represented by **Brett Stecker**
The Weiser Law Firm, P.C.
121 N. Wayne Ave.
Suite 100
Wayne, PA 19087
610-225-2677
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Taishan Gypsum Co., Ltd.**
*formerly known as*
Shandong Taihe

**Defendant**

**Tai'an Taishan Plasterboard Co.,
Ltd.**

**Defendant**

**Beijing New Building Materials
Public Limited Co.**

**Defendant**

**Beijing New Building Materials
(Group) Co., Ltd.**

**Defendant**

**China National Building Material
Co., Ltd.**

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 08/01/2017 | 1 | COMPLAINT against All Defendants (Filing fee $ 400 receipt number 0541-18728698) filed by Kenneth Lochhead, Maria Webste. (Attachments: # 1 Civil Cover Sheet)(Steckler, Bruce) (Entered: 08/01/2017) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 08/02/2017 08:42:01 | | | |
| **PACER Login:** | lfsblaw0044:2586701:4460865 | **Client Code:** | CDW Shared |
| **Description:** | Docket Report | **Search Criteria:** | 7:17-cv-00294 |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of Rule 7.1(a) Notice of Potential

Tag-Along Actions to be served this 2nd day of August, 2017 via the Court's electronic system

and by U.S. mail, postage prepaid, upon the following:

The Honorable Eldon E. Fallon
United States District Court
Eastern District of Louisiana
500 Poydras Street, Room C-456
New Orleans, LA 70130

Beijing New Building Materials (Group)
Co., Ltd.
c/o L. Christopher Vejnoska
Orrick, Herrington & Sutcliffe LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105

Beijing New Building Materials Public
Limited Co.
c/o L. Christopher Vejnoska
Orrick, Herrington & Sutcliffe LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105

China National Building Material Co., Ltd.
c/o L. Christopher Vejnoska
Orrick, Herrington & Sutcliffe LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105

Taishan Gypsum Co., Ltd.
Bernard Taylor
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, GA 30309

Taian Taishan Plasterboard Co., Ltd.
Bernard Taylor
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, GA 30309

/s/Arnold Levin
**ARNOLD LEVIN, ESQUIRE**
Levin Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
alevin@lfsblaw.com
Phone: (215) 592-1500
Fax:      (215) 592-4663

*Attorney for Plaintiffs*