**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: CHINESE –MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * * * * * | MDL NO.  2047 SECTION "L" |
| THIS DOCUMENT RELATES TO: | * * * | |
| ALL CASES | * | JUDGE FALLON MAG. WILKINSON |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF INTERIOR EXTERIOR BUILDING SUPPLY, L.P.'S MOTION FOR INJUNCTIVE RELIEF**

**MAY IT PLEASE THE COURT:**

Counsel for Interior Exterior Building Supply, L.P. ("InEx") submits this *Memorandum in Support of Its Motion for Injunctive Relief*.  In support, InEx would show the Court as follows:

**I. FACTUAL AND PROCEDURAL BACKGROUND**

**A. MULTI-DISTRICT LITIGATION 2047, *IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION*.**

Following Hurricane Katrina, InEx, a major supplier of construction materials in the Gulf Coast area, distributed Chinese Drywall ("CDW") manufactured both by various Knauf entities, and by certain Taishan entities.[1]  Beginning in 2009, federal and state courts were inundated with lawsuits filed by property owners and occupants damaged by CDW installed in their residences and businesses.  *Order and Judgment* (R. Doc. 16570 at p. 3) ("*Order and Judgment*").  Additional lawsuits were brought by the contractors who repaired these CDW-affected properties.  *Id* at p. 4. Defendants included various parties involved in the use of CDW in the affected properties, such as homebuilders, developers, installers, retailers, realtors, brokers, suppliers, importers, exporters,

---

[1] *See Order and Judgment* (R. Doc. 16570 at  p. 5, n.7–8) for definitions of Knauf and Taishan entities.

and distributors, as well as their insurers and the insurers of affected homeowners.  *Id*.  Because of the commonality of facts in the various lawsuits, the litigation was designated as Multi-District Litigation 2047 ("MDL 2047"), *In Re: Chinese-Manufactured Drywall Products Liability Litigation*, by the Judicial Panel on Multidistrict Litigation (the "Panel").  *Order and Judgment* at p. 4.  On June 15, 2009, the Panel transferred all federal actions alleging damages from CDW to this Court for coordinated and consolidated proceedings.  *Id*.  As a result of its distribution of CDW during the post-Katrina period, InEx became a defendant in MDL 2047.

In February 2013, this Honorable Court issued its *Order and Judgment* concerning the Knauf entities.  The *Order and Judgment* certified five settlement classes and granted final approval to five individual class settlements between the plaintiffs suffering property damages and personal injuries from CDW and the various Knauf entities responsible for the use of CDW in affected properties ("Settling Defendants").  The five class settlements included in the *Order and Judgment* are "all interrelated and interdependent" and "resolve all claims, counterclaims, and third-party claims among the settling parties."  *Order and Judgment* at p. 7.

InEx was one of the named Settling Defendants in the *Order and Judgment*.  *Id*. at p. 6.  InEx entered into a settlement agreement (the "*InEx Settlement*") that provided for the tendering of all of InEx's primary insurance proceeds—in the amount of $8,000,000—for the benefit of a national class with claims against InEx involving CDW (the "InEx Settlement Class").  *Id*.  The *InEx Settlement* is governed by the substantive laws of Louisiana.  *Id*. at 22.

The InEx Settlement Class consists of "[a]ll persons or entities with claims, known and unknown, against the Settling Defendants arising from, or otherwise related in any way to Chinese Drywall sold, marketed, distributed, and/or supplied by InEx."  *Order and Judgment* at pp. 22-23.  This Court found that proper notice was distributed to the InEx Settlement Class pursuant to a

court order issued on May 13, 2011. *Id*. at p. 23. This Court declared that "[a]ll InEx Class Members who did not opt out of the InEx Settlement, or who rescinded their opt-out from the InEx Settlement, in accordance with this Court's previous orders on or before the date of this Order shall be bound" by the terms of the *Order and Judgment*. *Id*. Finally, this Court issued an injunction, explicitly recognizing the preclusive effect of the *InEx Settlement* on all Members of the InEx Settlement Class:

> Any and all InEx Class Members, including, but not limited to, those who have not properly opted out of the InEx Class, are enjoined and forever barred from maintaining, continuing, prosecuting, and/or commencing the Litigation, Related Actions, Related Claims, or any action, pending or future, against the InEx Settling Defendants that arises from, concerns, or otherwise relates, directly or indirectly, to Chinese Drywall.

*Id*. at p. 24.

Under the terms of the *InEx Settlement*, the "InEx Settling Defendants" include "Downstream InEx Releasees," the parties released from all claims arising out of or related to CDW in Affected Property, to the extent that such property contains CDW sold, marketed, distributed, or supplied by InEx. *InEx Settlement* (R. Doc. 8628-3 at p. 8). Downstream InEx Releasees comprise Sub-suppliers, General Contractors, Subcontractors, Installers, Developers and Realtors who purchased or received CDW from InEx, used CDW supplied by InEx in the construction of Affected Property, or sold or marketed Affected Property containing CDW sold, marketed, distributed, and/or supplied by InEx. *Id*. at p. 4. "Affected Property" refers to any real or personal property, residential or commercial, containing CDW sold, marketed, distributed, and/or supplied by InEx. *Id*. at p. 2.

## B. THE STATE COURT PROCEEDING

On April 21, 2016, Winston Burns, Jr. and Wendy Burns (collectively, "Burns") filed a lawsuit in the Civil District Court for the Parish of Orleans against Livers Construction, Inc.

("Livers") for property damage and personal injuries resulting from Livers' alleged installation of CDW in the Burns' home located at 1726 Lakeshore Drive, New Orleans, Louisiana.  *See gen. Burns' Petition for Damages* dated April 21, 2016 (hereinafter "*Petition for Damages*").[2]  In response, Livers filed peremptory exceptions of res judicata and peremption on July 26, 2016, based on the preclusive terms of the *InEx Settlement* approved by this Court in its *Order and Judgment*.

In its memorandum in support of the peremptory exceptions, Livers noted that InEx supplied it with the CDW used in the Burns property.  *Memorandum in Support of Peremptory Exception of Peremption and Res Judicata of Livers Construction Inc.,* dated July 26, 2016 at p. 5 (hereinafter "*Memorandum in Support of Peremptory Exception*").[3]  Because InEx supplied the CDW, Livers argued that it qualified as an "Installer" under the *InEx Settlement*, defined as "any person or entity involved in the installation, hanging, taping, and floating in any property of Chinese Drywall that was sold, marketed, distributed, and/or supplied by InEx."  *Id.*; *see also InEx Settlement,* at p. 5.  Under the *InEx Settlement*, Installers are "Downstream InEx Releasees" who are considered Settling Defendants released from all future claims pertaining to CDW in Affected Property, to the extent that such property contains CDW supplied by InEx.  *Id.* at p. 5; *InEx Settlement* at p. 8.  In fact, Livers is expressly named as a "Downstream InEx Releasee" in the Settlement Agreement and is also a "Released Party."  *See InEx Settlement* (R. Doc. 8628-4 at p. 7) and  *InEx Settlement* (R. Doc. 8628-3 at p. 8).  Livers further argued that because Burns failed to opt out of the *InEx Settlement*, they qualified as InEx Class Members.  *Memorandum in Support of Peremptory Exception* at p. 5.  Based on Burns' status as InEx Class Members, Livers reasoned,

---

[2] Attached hereto as **Exhibit A**.

[3] A copy of the Peremptory Exception of Peremption and Res Judicata of Livers Construction Inc. and the Memorandum in Support of Peremptory Exception is attached hereto as **Exhibit B**, in globo.

Burns' state court claims for damages had already been fully addressed and adjudicated in MDL 2047.  *Id*.  Because Livers was an InEx Settling Defendant and the Burns were InEx Class Members, Livers concluded that the *InEx Settlement* operated as *res judicata*, barring Burns from asserting their claims against Livers in state court.  *Id*. at p. 7.

The exceptions were heard before the Honorable Judge Piper D. Griffin on October 28, 2016.  *Peremptory Exception Judgment*, attached hereto as **Exhibit C**.  Judge Griffin denied the exceptions on November 7, 2016, without issuing reasons for her decision.  *Id*.  Livers sought a supervisory writ regarding the denial of its exceptions in the Louisiana Fourth Circuit Court of Appeal, which denied the writ on December 12, 2016 without written reasons.  *Burns v. Livers Construction, Inc.*, 16-1221 (La. App. 4 Cir. Dec. 12, 2016).  Livers then sought relief from the Louisiana Supreme Court, which denied the writ on February 17, 2017, once again, without written reasons.  *Burns v. Livers Construction, Inc*., 17-0048 (La. 2/17/17); 216 So. 3d 54 (mem. op.).

On June 26, 2017, Livers filed a Third-Party Demand against InEx in the Burns' state court action, alleging that InEx sold Livers allegedly defective CDW responsible for the Burns' damages, and for failing to provide notice to Livers of any potential issues regarding the drywall.  *Livers' Answer and Third Party Demand* dated June 26, 2017 at p. 5 (hereinafter "*Third Party Demand*").[4]  Additionally, Livers alleged that InEx failed to provide Livers or its counsel with notice of the *InEx Settlement*.  *Id*.  Finally, Livers demanded that InEx produce a copy of certain InEx liability insurance policies.  *Id.*

## II. THE CLAIMS ASSERTED BY BURNS AND LIVERS IN THE STATE COURT PROCEEDING ARE PRECLUDED FROM LITIGATION UNDER THE TERMS OF THIS COURT'S ORDER AND JUDGMENT.

Under the MDL 2047 *Order and Judgment* issued by this Court, the *InEx Settlement* bars a plaintiff from litigation in the following scenario: (1) the plaintiff is a person or entity asserting

---

[4] A copy of Livers' Answer and Third Party Demand is attached hereto as **Exhibit D**.

claims "arising from, or otherwise related in any way to CDW sold, marketed, distributed, and/or supplied by InEx (*i.e.,* a Member of the InEx Settlement Class); (2) the plaintiff is asserting these claims against an InEx Settling Defendant; and (3) the plaintiff did not opt out of the *InEx Settlement*. *Order and Judgment,* at pp. 22–23. The Burns' claims against Livers in their *Petition for Damages*, and Livers' claims against InEx in its *Third-Party Demand*, meet these prerequisites and are thus barred from being pursued in State Court by the doctrine of *res judicata* and this Court's *Order and Judgment.*

InEx is clearly a Settling Defendant because it is one of the named defendants in MDL 2047. *Order and Judgment,* at p. 2. The Burns are Members of the InEx Settlement Class because their claims against Livers are based upon allegedly contaminated CDW that Livers purchased from InEx and installed throughout the Burns property. *Petition for Damages*, at p. 3; *Third Party Demand*, at p. 5. As an "Installer" of CDW supplied by InEx, Livers is a Settling Defendant released from all future claims pertaining to CDW. *InEx Settlement,* at pp. 5, 8. Finally, Burns did not opt out of the *InEx Settlement*. *See* (R. Doc. Nos. 161911, 16191-2 & 16191-5). Burns' claims against Livers are therefore barred by the Court's *Order and Judgement*, and Burns should be enjoined from proceeding against Livers in the Burns Litigation.

Livers is also a Member of the InEx Settlement Class because its claims against InEx, if any, arise exclusively out of InEx's alleged sale of defective CDW to Livers. *Third Party Demand*, at p. 5. Livers did not opt out of the *InEx Settlement* because Livers was protected in the settlement as a "Downstream InEx Releasee." *See InEx Settlement* (R. Doc. 8628-4 at p. 7); *see also (R.* Docs. 161911, 16191-2 & 16191-5). Because Livers and the Burns failed to opt out of the *InEx Settlement* and are bringing claims related to CDW against Settling Defendants, the *InEx Settlement* is *res judicata* as to these claims, and their proceedings in state court must be enjoined.

In *Gross v. Barnett Banks, Inc.*, 934 F.Supp. 1340 (M.D. Fla. 1995), the United States District Court for the Middle District of Florida approved a class action settlement agreement that contained a bar order precluding settlement class members from initiating litigation based on the settling defendants' activities in overcharging them on their insurance plans. *Id*. at 1342–43. Despite the existence of this bar order, three members of settlement class subsequently filed complaints in state court premised on the precise claims that were barred from litigation by the federal court's order and judgment. *Id*. at 1343. Defendants filed motions in the federal court that issued the order and judgment requesting that the court enjoin these plaintiffs from maintaining their lawsuits in state court. *Id*. Defendants asserted that the plaintiffs were members of the settlement class who did not opt out of the settlement, and whose claims fell under the scope of the federal bar order and judgment. *Id*. at 1344. The federal court held that the plaintiffs were barred from pursuing claims that were substantially similar to the ones litigated in the federal class action proceeding. *Id*. at 1346.

## III. InEx is Entitled to Injunctive Relief Despite the Anti-Injunction Act.

The All Writs Act provides that the "[t]he Supreme Court and all courts established by act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. These "writs" include injunctions against conflicting state court proceedings. *See e.g. Newby v. Enron Corp.*, 338 F.3d 467 (5th Cir. 2003); *In re Corrugated Container Antitrust Litigation*, 659 F.2d 1332 (5th Cir. 1981). The All Writs Act does not grant a district court the unbridled authority to issue injunctions; rather, this law is restricted by the Anti Injunction Act, 28 U.S.C. § 2283.

The Anti-Injunction Act, 28 U.S.C. § 2283, generally prohibits federal courts from enjoining state proceedings, subject to three enumerated exceptions. It states:

> [a] court of the United States may not grant an injunction to stay proceedings in a state court except as expressly authorized by Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

Because multiple exceptions to the Anti-Injunction Act are applicable to the instant matter, however, InEx is entitled to injunctive relief from this Court.  This Court (in this multi-district litigation) has previously recognized three exceptions to the Anti-Injunction Act: "(1) as expressly authorized by Act of Congress, (2) where it is necessary in aid jurisdiction, and (3) to protect or effectuate judgments." *In re Chinese-Manufactured Drywall Products Liability Litigation,* 2011 WL 2313866, at *3 (E.D. La. June 9, 2011) (J. Fallon) (citing 28 U.S.C. § 2283).

The Anti-Injunction Act is "an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions." *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 286, 90 S.Ct. 1739, 1743, 26 L.Ed.2d 234 (1970).  Under two of the three exceptions to the Anti-Injunction Act, this Court is empowered to enjoin the Orleans Parish state court proceeding.  An injunction is necessary both to aid this Court's jurisdiction and to protect and effectuate this Court's judgment.

### A. The Issuance of an Injunction is Necessary to Aid This Court's Jurisdiction.

The "necessary in aid of its jurisdiction exception" is properly invoked "to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atlantic Coast Line*, 398 U.S. at 295.  This exception was addressed by the United States Fifth Circuit Court of Appeals in *In re Corrugated Container Antitrust Litigation*, 659 F.2d 1332 (5th Cir. 1981).  In that case, the Fifth Circuit upheld an MDL transferee court's injunction that prevented members of a MDL settlement class from pursuing a similar lawsuit in South Carolina state court and any other court on the basis that the state court proceedings would challenge the MDL court's jurisdiction.  *Id*. at

1332. The Fifth Circuit noted that cases involving multi-district or complex litigation "require[] a great deal of the district court's time and necessitates [the court's] ability to maintain a flexible approach in resolving the various claims of the many parties. *Id*. at 1333-35.

Moreover, this Honorable Court recognizes that courts are "most willing to uphold an injunction pursuant to the in aid of jurisdiction exception in the MDL or complex litigation context when settlement is complete or imminent in the federal court, and often after preliminary or final certification of a class." *In re Chinese-Manufactured Drywall*, 2011 WL 231866 at *5 (collecting cases, including *In re Corrugated Container Antitrust Litig*., 659 F.2d at 1333 (upholding injunction against pursuing suit in state court after class certified and two settlements approved by the court)). Here, the *InEx Settlement* is complete.

As this Court knows better than most anyone else, the extraordinarily complicated litigation process of MDL 2047 required a significant investment of the time and resources of this Court. *See Order and Judgment*, at pp. 4–5. Since the commencement of CDW litigation in 2009, numerous cases containing thousands of claims had to be consolidated into a single class action. *Id*. at p. 4. This Court was required to appoint steering committees and liaison counsel for plaintiffs, homebuilders, insurers, installers, and manufacturers. *Id*. It presided over monthly status conferences, hearings, and multiple bellwether trials. *Id*. It issued numerous opinions, pretrial orders, and minute entries, in addition to facilitating several mediations. *Id*. at pp. 4–5. Over the course of the proceedings, more than 16,000 record documents were filed. *Id*. at p. 5. When discovery disputes threatened to cause excessive delay, this Court traveled to China for the purpose of supervising depositions. *Id*. Additionally, this Court communicated and coordinated with the numerous state and federal court judges presiding over related CDW cases. *Id*. For MDL defendants such as InEx, all of this litigation culminated with the approval of five settlement

9

agreements requiring the payment of tens of millions of dollars to Class Members so they could repair their homes.

In light of the lengthy and onerous litigation leading up to this Court's final approval of the settlement agreements, the ongoing proceeding in Orleans Parish substantially interferes with this Court's authority over the *InEx Settlement*.  In its *Order and Judgment*, this Court approved an equitable settlement between InEx Class Members and InEx Settling Defendants, and continues to exercise authority and supervision over these parties in the context of CDW litigation.  The state court proceeding at issue herein involves Burns, InEx Class Members who have been deemed to have had notice of the InEx settlement, and were therefore afforded the opportunity to litigate their claims in this Court.[5]  The state court matter also involves InEx Settling Defendants—one of which was a named defendant in MDL 2047 that settled with InEx Class Members for $8,000,000.  In *Gross*, the court held that "[a]ny state court judgment, or even the active prosecution of such an action . . . would directly, and with irreparable injury, interfere with [a] court's ability to dispose of [the case before it] and would remove any flexibility [a] court might exercise in reaching a just solution or monitoring the actions of the parties."  *Gross*, 934 F.Supp. at 1346; *see also In re Chinese-Manufactured Drywall*, 2011 WL 231866 at *7.  This Court's continuing jurisdiction over the *InEx Settlement* would be significantly undermined if the state court proceeding were to continue, and any further prosecution of the state court action by the state court action by Burns or Livers should be enjoined.

---

[5] *See Order and Judgment*, at p. 23:

> 15. **The Court finds that Notice was disseminated to the InEx class pursuant** to this Court's Order dated May 13, 2011.  **All InEx Class Members who did not opt out of the InEx Settlement**, or who rescinded their opt-out from the InEx Settlement, in accordance with this Court's previous orders on or before the date of this Order **shall be bound by this Judgment**.  (internal citations omitted) (emphasis added).

**B. The Issuance of an Injunction is Necessary to Protect and Effectuate This Court's Judgment.**

A federal court may enjoin litigants from pursuing state court proceedings when an injunction is necessary to protect or effectuate its judgments.  28 U.S.C. § 2283; *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 524, 106 S.Ct. 768, 772, 88 L.Ed.2d 877 (1986).  This exception is known as the "relitigation exception."  *Parsons*, 474 U.S. at 521; *see also Regions Bank of Louisiana v. Rivet*, 224 F.3d 483, 488 (5th Cir. 2000).  For the relitigation exception to apply, the judgment to be protected or effectuated must be a final judgment.  *Regions Bank,* 224 F.3d at 2000.  This exception does not apply when a state court has "finally rejected a claim of res judicata" premised on a prior federal judgment.  *Parsons*, 474 U.S. at 524.

**1. The *InEx Settlement* is a Final Judgment.**

A class action proceeding that terminates in a settlement agreement "is entitled to the same respect and protection as a fully litigated class action because [such a] case [is] . . . disposed of by the Court's entering of a final judgment and injunction in accordance with a negotiated settlement agreement after notice to the class members, a fairness hearing, and approval by the Court."  *Gross*, 934 F.Supp. at 1346.  Even though the MDL 2047 litigation concerning the Knauf entities was resolved through five individual settlement agreements rather than a fully litigated trial, state courts must treat these agreements with the same finality and respect as they would a judgment following a fully litigated trial.

Louisiana law supports the notion that settlement agreements should be treated the same as fully litigated trials in terms of the finality of judgments.  In Louisiana, a settlement agreement is considered a type of compromise.  *New Orleans City v. BellSouth Telecommunications, Inc.*, 728 F.Supp.2d 834, 845 (E.D. La. 2010) (J. Fallon).  As such, "settlement" must be equated with "compromise" for purposes of the law governing compromise agreements.  *See Townsend v.*

*Square*, 94-0758 (La. App. 4 Cir. 9/29/94); 643 So.2d 787.  A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship.  LA. CIV. CODE art. 3071.  A compromise precludes the parties from bringing a subsequent action based upon the matter that was compromised.  LA. CIV. CODE art. 3080.  As such, a valid compromise may form the basis for an objection of *res judicata*.  *Rivett v. State Farm Fire and Casualty Company*, 508 So. 2d 1356, 1359.  The CDW-related claims alleged by Livers and Burns in the Burns Litigation have already been litigated in MDL 2047, and the settlement or "compromise" of these claims is reflected in this Court's final approval of the *InEx Settlement* in the *Order and Judgment*.  Therefore, the *InEx Settlement* must be treated as a final judgment that precludes litigation of the claims alleged by Livers and the Burns in the state court proceeding.

> **2. The Louisiana Supreme Court's Rejection of Livers' Peremptory Exceptions of Peremption and Res Judicata Is Not a Final Judgment Entitled to Full Faith and Credit by This Court.**

The United States Supreme Court recognizes one caveat to the relitigation exception.  The Anti-Injunction Act grants a federal court the power to enjoin state court proceedings when necessary to protect or effectuate its judgments unless the state court has "finally rejected a claim of *res judicata*" based on a previous federal decision.  *Parsons*, 474 U.S. at 524.  Under the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts must give state court judgments—particularly state court resolutions of *res judicata* issues—the same preclusive effect these judgments would be given by another court of that same state.  *Id*. at 525.  Louisiana law thus governs the determination whether a Louisiana court's rejection of a *res judicata* claim is entitled to preclusive effect by this Court.  *See id*.  With respect to *res judicata*, LA. R.S. 13:4231 provides, in pertinent part:

Except as otherwise provided by law, a valid and ***final judgment*** is conclusive between the same parties.  The four prerequisites for the application of res judicata are: (1) the parties must be identical in both suits, or in privity; (2) the prior judgment must have been rendered by a court of competent jurisdiction; (3) there must be a final judgment on the merits; and (4) the same claim or cause of action must be involved in both cases. (emphasis added).

Although the Louisiana Supreme Court denied Livers' writ, thereby refusing to reverse the trial court's denial of Livers' peremptory exceptions of peremption and *res judicata*, this denial does not represent a final judgment.  Louisiana law defines a judgment as "the determination of the rights of the parties in an action and may award any relief to which the parties are entitled." LA. CODE. CIV. PROC. art. 1841.  A judgment may be interlocutory or final.  *Id*.  A judgment that determines the merits of a case in whole or in part is a final judgment.  *Id*.  A judgment that does not determine the merits but rather only preliminary matters in the course of the action is an interlocutory judgment.  *Id*.  A denial of a peremptory exception—even one issued by the Louisiana Supreme Court—only disposes of a preliminary matter in the course of a proceeding; it is not a final judgment that determines the merits of the case.  *Lomont v. Myer-Bennett*, 16-436, p. 8 (La. App. 5 Cir. 12/14/16); 210 So.3d 435, 443, *writ denied*, 2017-0088 (La. 2/24/17). Consequently, the Louisiana Supreme Court's denial of Livers' writ is an interlocutory judgment to which *res judicata* does not apply.  *See id*.  Because the state court judgment is not a final judgment entitled to *res judicata*, this Court may grant an injunction staying the state court proceedings to protect or effectuate its judgment without running afoul of the Full Faith and Credit Act.

## IV. INEX MEETS THE PREREQUISITES NECESSARY TO ENTITLE IT TO AN INJUNCTION.

Finally, InEx satisfies the four prerequisites for entitlement to an injunction: "(1) a substantial likelihood that it will prevail on the merits, (2) a substantial threat that it will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to it outweighs the

13

threatened harm the injunction cause opposing parties, and (4) that granting the of the injunction will not disserve the public interest." *In re Chinese-Manufactured Drywall*, 2011 WL 231866 at *8 (citing *Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974)).

With respect to likelihood of success on the merits, Livers and Burns clearly fall within the InEx Settlement Class certified by this Court.  Furthermore, this Court found in its *Order and Judgement* approving the *InEx Settlement* that these parties were provided with adequate notice and failed to opt out of the InEx Settlement Class.  Lastly, Livers and InEx are InEx Settling Defendants.  Based on these facts, Livers and the Burns are bound by the bar order contained in the *Order and Judgment* issued by this Court.  As InEx Class Members, Livers and the Burns are explicitly precluded from litigation of the CDW-related claims alleged in the state court proceeding.  InEx's success on the merits is therefore guaranteed.

With respect to the harm InEx will suffer if this Court does not enjoin the state court proceeding, InEx will be forced to relitigate claims which it believed were settled when this Court issued its final approval of the *InEx Settlement*.  The harm is irreparable because InEx has already paid out significant sums in defense of CDW claims, exhausted its liability insurance covering these claims, and believed it bought its peace by doing so.  Allowing InEx Class Members who failed to opt out of the class to pursue such claims will result in additional costs and potential uninsured liability for InEx.  Such claims will render the *InEx Settlement* ineffective.  InEx will thus suffer irreparable injury in being prevented from enjoying the benefit of the time, money, and effort it exerted to reach a final settlement in MDL 2047.

The harm InEx will suffer outweighs the harm Livers and the Burns will suffer because Livers and the Burns have already received, or have waived, the benefit they were due under the *InEx Settlement*.  An injunction issued by this Court would only require these parties to refrain

from litigating the claims they are already precluded from litigating under the terms of this Court's *Order and Judgment*. As a result, Livers and Burns would suffer no harm other than that which they have agreed to as a consequence of their failure to opt out of the *InEx Settlement*.

Finally, the public interest will undoubtedly be served by the issuance of an injunction; public policy strongly favors the pretrial settlement of class action lawsuits. *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on April 20, 2010*, 910 F.Supp.2d 891, 931 (E.D. La. 2012), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014). Thus, it is clear that the public interest would be served by enforcing the *InEx Settlement* reached in MDL 2047.

## V. CONCLUSION

Based on the foregoing, InEx submits that its *Motion for Injunctive Relief* should be granted. This Court has the authority to enjoin Livers from pursuing its claims against InEx in the Burns Litigation. Likewise, this Court has the power to enjoin the Burns from asserting their claims against Livers, a Settling Defendant under the *InEx Settlement*. This Court's power to provide this remedy is specifically allowed by two of the three exceptions to the Anti-Injunction Act. InEx therefore requests that this Court grant such injunctive relief.

Respectfully Submitted,

/s/ Philip D. Nizialek
PHILIP D. NIZIALEK (La. Bar No. 24180)
ANDREW J. BRIEN (La. Bar No. 37051)
Carver, Darden, Koretzky, Tessier, Finn,
Blossman & Areaux, LLC
1100 Poydras Street, 3100
New Orleans, LA  70163
Phone: (504) 858-3820
Fax: (504) 585-3801
Nizialek@carverdarden.com
Brien@carverdarden.com
*Counsel for Interior/Exterior Building
Supply, L.P.*

15

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the above and foregoing has been served on all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 7th day of August, 2017.

**I ALSO CERTIFY** that this document is being served this day on Matthew A. Sherman, One Galleria Boulevard, Suite 1100, Metairie, Louisiana 70001, attorney for Winston J. Burns, Jr. and Wendy B. Burns; and Ron A. Austin, Esq., Jevan Felming, Esq., and Lillian Williams, Esq., Ron Austin & Associates, L.L.C., 400 Manhattan Boulevard, Harvey, Louisiana 70059, and Elton F. Duncan, III, Esq., and P. Sinnott Martin, Esq., Duncan & Sevin, L.L.C., 400 Poydras Street, 12th Floor, New Orleans, Louisiana 70130, attorneys for Livers Construction, Inc. via U.S. mail on this 7th day of August, 2017.

/s/ Philip D. Nizialek
PHILIP D. NIZIALEK

4812-9857-4156, v. 1

16