UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | CIVIL ACTION |
| | NO. 09-02047 |
| | SECTION "L" (5) |
| THIS DOCUMENT RELATES TO: ALL CASES | |

**ORDER & REASONS**

Before the Court are two Motions Pursuant to 28 U.S.C. § 1292(b) to Certify Immediate Appeals from the Court's Order Denying [Defendant's] Motions to Decertify the Class, R. Doc. 20780, and from the Court's Findings of Fact and Conclusions of Law Related to the June 9, 2015 Damages Hearing, R. Doc. 20781. The Court has reviewed the parties' arguments, the relevant evidence, and the applicable law, and it is now ready to rule.

**I.    BACKGROUND**

The present MDL litigation arises from alleged property damage and personal injuries sustained as a result of the presence of Chinese-manufactured drywall in homes and other buildings in a number of states. From 2004 through 2006, the housing boom in Florida and rebuilding efforts necessitated by Hurricanes Rita and Katrina led to a shortage of construction materials, including drywall.  As a result, drywall manufactured in China was brought into the United States and used to construct and refurbish homes in coastal areas of the country, notably the Gulf Coast and East Coast.  Sometime after the installation of the Chinese drywall, homeowners began to complain of emissions of smelly gasses, the corrosion and blackening of

1

metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes. *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 894 F. Supp. 2d 819, 829 (E.D. La. 2012), *aff'd*, 742 F. 3d 576 (5th Cir. 2014). Many of these homeowners also began to complain of various physical afflictions believed to be caused by the Chinese drywall. Accordingly, these homeowners began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. Because of the commonality of facts in the various cases, this litigation was designated as multidistrict litigation. Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation on June 15, 2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 2047 in the U.S. District Court, Eastern District of Louisiana.

The Chinese drywall at issue was largely manufactured by two groups of defendants: (1) the Knauf Entities, and (2) the Taishan Entities. The litigation has focused upon these two entities and their downstream associates, and has proceeded on strikingly different tracks for the claims against each group as described below:

The Knauf Entities are German-based, international manufacturers of building products, including drywall, whose Chinese subsidiary, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), advertised and sold its Chinese drywall in the United States. The Knauf Entities are named defendants in numerous cases consolidated with the MDL litigation and litigation in state courts. The Knauf Entities first entered their appearance in the MDL litigation on July 2, 2009. *See* R. Doc. 18. Thereafter, the Court presided over a bellwether trial in *Hernandez v. Knauf Gips KG*, Case No. 09-6050, involving a homeowner's claims against KPT for defective drywall. *See* R. Doc. 2713. The Court found in favor of the plaintiff family in *Hernandez*, issued a detailed

Findings of Fact and Conclusions of Law and entered a Judgment in the amount of $164,049.64, including remediation damages in the amount of $136,940.46, which represented a cost of $81.13 per square foot based on the footprint square footage of the house.  *See* R. Doc. 3012.

Subsequently, the Knauf Entities entered into a pilot remediation program with the Plaintiffs' Steering Committee ("PSC") in the MDL.  This program was largely based upon the remediation protocol formulated by the Court from the evidence in *Hernandez*.  The Knauf pilot remediation program is ongoing and has, at present, remediated more than 2,200 homes containing KPT Chinese drywall using the same general protocol.  At the Court's urging, the parties began working together to monetize this program and make it available to a broader class of plaintiffs.

On December 20, 2011, the Knauf Entities and the PSC entered into a global, class Settlement Agreement ("Knauf Settlement Agreement"), which is designed to resolve all Knauf-related, Chinese drywall claims.  *See* R. Doc. 12061-5.  In addition to the Knauf Settlement Agreement, numerous defendants in the chain-of-commerce with the Knauf Entities have entered into class settlement agreements, the effect of which settles almost all of the Knauf Entities' chain-of-commerce litigation.  Although the Court occasionally must deal with settlement administration and enforcement issues, the Knauf portion of this litigation is largely resolved.

The litigation against the Chinese entities has taken a different course.  The Chinese Defendants in the litigation include the principal Chinese-based Defendant Taishan, namely, Taishan Gypsum Co. Ltd. ("TG") and its wholly-owned subsidiary, Taian Taishan Plasterboard Co., Ltd. ("TTP") (collectively "Taishan" or "Taishan Entities").  Other Chinese-based Defendants include the CNBM and BNBM Entities.

The Court's initial inquiry regarding Taishan involved four cases in this MDL: (1) *Germano v. Taishan Gypsum Co., Ltd.*, Case No. 09-6687; (2) *The Mitchell Co., Inc. v. Knauf Gips KG*, Case No. 09-4115; (3) *Gross v. Knauf Gips KG*, Case No. 09-6690; and (4) *Wiltz v. Beijing New Building Materials Public Ltd., Co.*, Case No. 10-361.  The first issues involving Taishan arose when Taishan failed to timely answer or otherwise enter an appearance in *Mitchell* and *Germano*, despite the fact that it had been properly served in each case.  *See* R. Doc. 52; R. Doc. 1-7 (Case No. 09-6687).  Thus, after an extended period of time, the Court entered preliminary defaults against Taishan in both of these cases.  *See* R. Docs. 277, 487.

Thereafter, the Court moved forward with an evidentiary hearing in furtherance of the Preliminary Default in *Germano* on the Plaintiffs' claimed damages.  *See* R. Doc. 502, 1223, 1258, 2380.  At this hearing, the Plaintiffs presented evidence specific to seven individual properties, which served as bellwether cases.  Following this hearing, which occurred on February 19 and 20, 2010, the Court issued detailed Findings of Fact & Conclusions of Law.  *See* (R. Doc. 2380).  On May 11, 2010, the Court issued a Default Judgment against Taishan in *Germano*, in favor of the Plaintiffs.  R. Doc. 3031.  On the last day to timely do so, June 10, 2010, Taishan filed a Notice of Appeal of the Default Judgment in *Germano* and entered its appearance in *Germano* and *Mitchell*.  R. Docs. 3668, 3670.

After TG entered its appearance in the MDL, it quickly sought to have the Final Default Judgment in *Germano* and the Preliminary Default in *Mitchell* vacated for lack of personal jurisdiction, as well as on procedural grounds.  *See* R. Docs. 5436, 5583.  However, because of the pending appeal, this Court was without jurisdiction to address any motions filed by TG.  *See* R. Doc. 5504.  Accordingly, TG sought and was granted by the Fifth Circuit, a stay of its appeal to allow this Court to provide an indicative ruling on TG's motions to vacate the preliminary

default and default judgments.  *See* R. Doc. 5649.  In response, this Court issued an order pursuant to Federal Rule of Civil Procedure 62.1 to allow it to consider TG's motions.  *See* R. Doc. 6101.  In the fall of 2010, the Court directed the parties to commence the personal jurisdiction discovery necessary to resolve TG's motions to vacate.  Sometime after the initial discovery, the parties agreed to expand the discovery beyond the *Germano* and *Mitchell* cases to other cases in which Taishan been served, including *Gross* and *Wiltz*.

Formal personal jurisdiction discovery of the Chinese Defendants began in October 2010.  *See, e.g.*, R. Docs. 5839, 5840.  Discovery has included the production of both written and electronic documents, as well as depositions of Taishan, BNBM, and CNBM corporate representatives, with each type of discovery proceeding in a parallel fashion.  This discovery has often been contentious, requiring close supervision by the Court.  The Court has presided over regularly-scheduled status conferences to keep the parties on track, and conducted hearings and issued rulings to resolve numerous discovery-related disputes.  *See, e.g.*, R. Docs. 7136, 7511.

The first depositions of the Chinese defendants were held in Hong Kong on April 4-8, 2011.  *See* R. Docs. 8296, 8297.  Thirteen attorneys traveled to Hong Kong and deposed the following three Taishan witnesses: (1) Jia Tongchun, General Manager, Director of Board of Directors, and five-percent owner of TG; (2) Peng Wenglong (a.k.a. Frank Clem), Manager of Foreign Trade Department of TG in 2005, salesperson at TTP from 2006-07, and current Manager of Foreign Trade Department at TG; and (3) Zhang Jianchun, Secretary of TG and TTP.  *See id.*

Upon return to the United States, several motions were filed seeking to schedule a second round of depositions as a result of problems during the depositions and seeking discovery sanctions against Taishan.  *See* R. Docs. 8685, 8695, 8755, 8758, 8768, 8792, 8805.  Taishan

opposed these motions.  *See* R. Docs. 8841, 8842.  The Court, after reviewing the transcripts from the depositions, concluded that the "depositions were ineffective because of disagreement between interpreters, counsel, and witnesses, translation difficulties, speaking objections, colloquy among counsel and interpreters, and in general ensuing chaos."  *See* R. Doc. 9107.  Accordingly, the Court ordered the parties to move forward with further written discovery and to schedule a second-round of Taishan depositions, but this time with knowledgeable and prepared witnesses, a single translator, and Court supervision.  *See id.*  The parties complied with the Court's orders and met regularly with the Court to resolve their further discovery disputes.  *See* R. Docs. 9524, 10092, 9649, 9944, 10007, 10216, 10269, 10799, 11175, 10804, 11138, 11192, 11326.

     The Court scheduled the second round of corporate depositions for the week of January 9, 2012, in Hong Kong.  *See* R. Docs. 10804, 11138, 11192.  The Court appointed a Federal Rule of Evidence 706 expert to operate as the sole interpreter at the depositions.  *See* R. Doc. 11533.  Counsel for the interested parties and Judge Fallon traveled to Hong Kong for these depositions.  The following witnesses were deposed or re-deposed: (1) Peng Wenglong (a.k.a. Frank Clem); (2) Jia Tongchun; (3) Che Gang (a.k.a. Bill Cher), Manager of International Trading for Taishan, salesperson at TG from 2001-06 and 2009-12, and salesperson at TTP from 2006-07; (4) Peng Shiliang, General Manager and Chairman of Board of Directors of TTP from 2006-09, employee of TTP, and Plant Manager of TG from 2009-12; and (5) Fu Tinghuan, Supervisor at TG, Deputy General Manager at TG, and Director of TTP.  Because the Court was present at the depositions, objections were ruled upon immediately and the majority of problems which plagued the first round of depositions were absent.  Also, the Court was able to observe the comments, intonation, and body language of the deponents.  Upon return from Hong Kong, the parties informed the

Court that minimal further discovery was necessary before briefing could be submitted on Taishan's personal jurisdiction challenges.

In April 2012, Taishan filed various motions, including its motions to dismiss for lack of personal jurisdiction. On June 29, 2012, over three years since the creation of this MDL, and after a year-and-a-half of personal jurisdiction discovery on Taishan, the Court presided over a hearing on Taishan's motions. The Court coordinated its hearing with Judge Joseph Farina of the 11th Judicial Circuit Court of Florida, who had a similar motion involving Taishan's challenge to personal jurisdiction.

On September 4, 2012, this Court issued a 142-page Order regarding Taishan's motions in *Germano*, *Mitchell*, *Gross*, and *Wiltz*, in which the Court denied the motions to dismiss, and held that it maintained personal jurisdiction over Taishan. *In re: Chinese-Manufactured Drywall Products Liability Litigation,* 894 F. Supp. 2d 819 (E.D. La. 2012). The Court also ruled that Taishan was operating as the alter ego of TG. The Court certified an interlocutory appeal and the Fifth Circuit granted permission to appeal. In January and May of 2014, two different panels of the Fifth Circuit affirmed this Court's ruling and held that this Court maintained personal jurisdiction over Taishan and TTP. *In re: Chinese-Manufactured Drywall Products Liability Litigation,* 753 F.3d 521 (5th Cir. 2014); *In re: Chinese-Manufactured Drywall Products Liability Litigation,* 742 F.3d 576 (5th Cir. 2014). The time for writs of certiorari passed and the issue of personal jurisdiction over Taishan became firmly settled.

On June 20, 2014, the Court ordered Taishan to appear in open court on July 17, 2014 to be examined as a judgment debtor. R. Doc. 17774. Taishan failed to appear for the July 17, 2014 Judgment Debtor Examination and the Court held Taishan in contempt and ordered that Taishan pay $15,000.00 in attorney's fees to Plaintiffs' counsel; that Taishan pay $40,000.00 as a penalty

for contempt; that Taishan, and any of its affiliates or subsidiaries be enjoined from conducting any business in the United States until or unless it participates in this judicial process, and if Taishan violates the injunction, it must pay a further penalty of 25% of the profits earned by the Company or its affiliate who violate the Order for the year of the violation.  R. Doc. 17869.

On July 23, 2014, Plaintiffs filed their Omnibus Motion for Class Certification pursuant to Rule 23(b)(3).  R. Doc. 17883.  Taishan did not appear and, on September 26, 2014, after a detailed inquiry this Court certified a class of "[a]ll owners of real properties in the United States, who are named Plaintiffs [in the various MDL complaints] asserting claims for remediated damages arising from, or otherwise related to, Taishan drywall."  *See* R. Doc. 18028 at 34-35.

In analyzing whether certification was appropriate, the Court noted that even though the factual allegations and liability had been established by multiple default judgments, "Rule 23(c) imposes an independent duty on the district court to determine by order that the requirements of Rule 23(a) are met regardless of the defendant's admissions." R. 18028 at 22 (quoting *Davis v. Hutchins*, 321 F.3d 641, 648-49 (7th Cir. 2003)). Thus, the Court performed a rigorous Rule 23 analysis and determined Plaintiffs established Rule 23(a)'s numerosity, commonality, typicality, and adequacy of representation requirements. R. 18028 at 23-29. Additionally, the Court held that Plaintiffs had met Rule 23(b)(3) requirements for predominance and superiority. R. 18028 at 30-35. Class certification was particularly appropriate where liability and causation had already been determined. The only remaining issue was the assessment of damages, which could be calculated on an aggregate basis. R. 18028 at 31-33. Because Plaintiffs could "establish a formulaic method to determine class wide property damages," they met Rule 23(b)(3)'s predominance requirement. R. 18028 at 33. Finally, the Court determined that class proceedings

were a superior method to adjudicate the remaining damage assessments in the case, as any factual determinations that still had to be made were substantially narrower in scope than the factual issues the Court had already resolved in the course of this litigation. R. 18028 at 34.

Taishan entered an appearance with the Court in February 2015 and, to satisfy the contempt, Taishan paid both the sum of $15,000 in attorney's fees to Plaintiffs' counsel and the contempt penalty of $40,000 in March 2015.  R. Doc. 18764.  On March 17, 2015, the Court ordered Taishan and the BNBM and CNBM Entities to participate in expedited discovery related to "the relationship between Taishan and BNBM/CNBM, including whether affiliate and/or alter ego status exists."  R. Doc. 17869.  The instant motions are directly concerned with this relationship.

On June 9, 2015, the Court held a class damages hearing, in which Taishan, BNBM, and CNBM all participated. As a result of these hearings and the remediation program, the Court determined that the scope of the necessary remediation is consistent across the effected properties—buildings with the defective drywall require complete remediation and cleaning. The scope of remediation work is the same regardless of the type of building or the location of the property. The only difference is the square footage of the contaminated area of the building. Thus, the Court issued its Findings of Fact and Conclusions of Law and ordered the parties to submit updated information regarding the square footage of each of the affected properties. R. Doc. 20741. Plaintiffs have since timely provided this information to the Court.

In September and October 2016, the remaining CNBM and BNBM entities filed the following motions: (1) Motion to Dismiss by China New Building Materials Group ("CNBM Group"), China New Building Materials Co. ("CNBM"), CNBMIT Co. Ltd. ("CNBMIT"), CNBM USA Corp. ("CNBM USA"), and United Suntech Craft, Inc. ("United Suntech")

9

(collectively, the "CNBM Entities") (R. Doc. 19527); (2) Motion to Dismiss by Beijing New Building Materials Public Limited Company ("BNBM") (R. Doc. 19646); (3) Motion to Dismiss by Beijing New Building Material Group ("BNBMG") (R. Doc. 19664); and (4) Motion to Dismiss the State of Louisiana's Second Amended and Restated Petition by BNBM and BNBM Group (collectively, the "BNBM Entities") (R. Doc. 19663). The parties submitted substantial briefing and evidence related to the jurisdiction issue. On February 25, 2016, over six years since the creation of MDL 2047, and years of personal jurisdiction discovery on Taishan and its parent entities, the Court presided over a hearing on these motions. On April 21, 2017, the Court issued its Order and Reasons holding that Taishan is an agent of BNBM, such that Taishan's jurisdictional contacts can be imputed to BNBM under Louisiana, Virginia, and Florida law. Further, the Court determined that under Louisiana law, Taishan, BNBM, BNBM Group, and CNBM formed a single business enterprise, such that Taishan's jurisdictional contacts can be imputed to those other entities. R. Doc. 20739.

Additionally, in January 2017, the CNBM Entities filed a Motion to Decertify the Class Pursuant to Rule 23(c)(1)(C). R. Doc. 20627. BNBM, BNBM Group, and Taishan joined the Motion. R. Docs. 20631, 20632. After ruling on the jurisdictional issues, the Court denied the decertification motions on April 21, 2017. The instant motions followed on May 22, 2017.

## II.   PRESENT MOTIONS AND SUMMARY OF THE PARTIES' POSITIONS

CNBM Co., BNBM Group, and BNBM PLC ("CNBM and BNBM Entities" ) have filed three motions seeking orders from this Court certifying appeals pursuant to 28 U.S.C. §1292(b). First, the CNBM and BNBM Entities argue the Court should certify an appeal from its April 21, 2017 Order and Reasons regarding personal jurisdiction in this case. The Court previously granted this motion.

Second, Defendants seek appeal the Court's Order denying the Motion to Decertify. In their motion the CNBM and BNBM Entities argue that class certification is a controlling question of law pursuant to 28 U.S.C. § 1292(b). Defendants further argue that a substantial ground for difference of opinion exists as to whether class certification is warranted in this case, and that an interlocutory appeal would materially advance the MDL by ensuring that judicial and party resources are not wasted on a meaningless trial.

Plaintiffs oppose the motion, and argue that Defendants are yet again seeking to delay the proceedings. Further, Plaintiffs urge that Defendants are attempting to circumvent the deadline for filing an appeal of this Court's original class certification decision, which has long since expired. Plaintiffs argue that the extraordinary remedy of a § 1292(b) is limited to purely legal questions, and the Court's decision to deny the Defendant's motion involves questions of both law and fact. Thus, Plaintiffs contend the Defendant's request for appeal should be denied.

Finally, the CNBM and BNBM Entities seek an order certifying a §1292(b) appeal of this Court's Findings of Fact and Conclusions of Law as to the June 9, 2015 damages hearing. They contend that this appeal presents a controlling question of law, and an immediate appeal would materially advance the litigation. Defendants also argue that the Court's decision regarding damage calculations, namely, to use a formula to calculate the damages to individual properties, presents a legal question which is subject to substantial dispute.

In opposition, Plaintiffs argue that the Court's conclusions were correct and that no substantial ground for difference of opinion exists on the question of the standard of law in the Fifth Circuit. Thus, they contend the Defendants' motion should be denied.

**III.    LAW AND ANALYSIS**

    **A.    Standard of Review**

This Court has the discretion to certify its decisions for interlocutory appeal under 28 U.S.C. § 1292(b). *See Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 47 (1995) ("Congress thus chose to confer on district courts first line discretion to allow interlocutory appeals."). Pursuant to Section 1292(b), this Court may certify an order for appeal where: (1) the order involves a controlling question of law; (2) a substantial ground for difference of opinion concerning the ruling exists; and (3) an immediate appeal would materially advance the litigation. 28 U.S.C. § 1292(b).

        **i.    Motion to Decertify**

Interlocutory appeals under 1292(b) are appropriate only in "exceptional cases," *Garner,* 749 F.2d at 286; *accord Clark–Dietz & Assocs.-Eng'rs., Inc. v. Basic Constr. Co.,* 702 F.2d 67, 69 (5th Cir.1983), and "permission to appeal [under § 1292(b) ] is granted sparingly, not automatically," *Ala. Labor Council v. Alabama,* 453 F.2d 922, 924 (5th Cir.1972). The decision regarding whether to certify an order for interlocutory appeal under Section 1292(b) rests within the discretion of the district court. *Swint v. Chambers County Comm'n,* 514 U.S. 35, 47 (1995) ("Congress . . . chose to confer on district courts first line discretion to allow interlocutory appeals."); 16 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3929 (2d ed. 1987) ("The initial determination that appeal is desirable is confided to the discretion of the district judge").

The Court finds that Defendants have not demonstrated that the Court's ruling on class certification raises a question for which there is a substantial grounds for a difference of opinion, such that the extraordinary relief of an appeal under 1292 is justified. The mere fact that "settled

law might be applied differently" is insufficient to show that there is a substantial ground for difference of opinion. *Couch*, 611 F.3d at 633. In this case, the Court is confident in its careful and detailed consideration of the predominance and superiority elements of this particular class. As it indicated in its original order, the class claimants seek to recover for property damages caused by Chinese Drywall. "This is a matter of weighing, not counting, issues." *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico*, on Apr. 20, 2010, 910 F. Supp. 2d 891, 912 (E.D. La. 2012), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014).

Further, in light of the complex nature of this case and extensive history of the litigation, a class action is the superior mechanism for resolving these claims. An appeal would not materially advance the ultimate termination of the litigation. Thus, the Court denies Defendants' request to appeal pursuant to 28 U.S.C. §1292(b).

### ii. Findings of Fact and Conclusions of Law

Likewise, the Court finds that Defendants have failed to demonstrate they are entitled to an interlocutory appeal of the Court's Findings of Fact and Conclusions of Law as to the June 9, 2015 damages hearing. While Defendants argue there is a substantial ground for a difference of opinion on a controlling question of law, the Court disagrees. "The threshold for establishing the 'substantial ground for difference of opinion' with respect to a 'controlling question of law' required for certification pursuant to § 1292(b) is a high one." *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group,* 233 F.Supp.2d 16, 19 (D.D.C.2002). "An interlocutory appeal assuredly does not lie simply to determine the correctness of a judgment." *Clark–Dietz,* 702 F.2d at 68. Thus, the mere fact that a party disagrees with the district court's ruling is insufficient to establish that there is a substantial ground for a difference of opinion. *E.g., United States ex rel. Branch Consultants, LLC v. Allstate Ins. Co.,* 668 F.Supp.2d 780, 813–14 (E.D.La.2009); *Bush*

*v. Adams,* 629 F.Supp.2d 468, 475 (E.D. Pa. 2009); *First Am. Corp. v. Al–Nahyan,* 948 F.Supp. 1107, 1116 (D.D.C. 1996).

Instead, a substantial ground for difference of opinion exists if there is a "genuine doubt as to the correct legal standard" to be applied. *Kapossy v. McGraw–Hill, Inc.,* 942 F.Supp. 996, 1001 (D.N.J.1996); *accord Sims v. Sunnyside Land, LLC,* 425 B.R. 284, 295 (W.D.La.2010); *Consub Del. LLc v. Schahin Engenharai Limitada,* 476 F.Supp.2d 305, 309 (S.D.N.Y.2007). Such a circumstance can arise if "the circuits are in dispute on the question and the Court of Appeals of the circuit [encompassing the district court] has not spoken on the point ... or if novel and difficult questions of first impression are presented." *Ryan v. Flowserve* Corp., 444 F.Supp.2d 718, 723–24 (N.D. Tex. 2006). In Tyson Foods, the United States Supreme Court held that statistical evidence may be used to make class-wide determinations depending on the purpose for which the evidence is being introduced and on the elements of the underlying cause of action. *Tyson Foods, Inc. v. Bouaphekeo*, 136 S. Ct. 1036, 1046 (2016) (*citing Erica P. John Fund, Inc. v. Haliburton Co.*, 563 U.S. 804, 809 (2011). Thus, not only does Tyson Foods prove the correct legal standard for determining class damages in this case, it also provides a far superior method for resolving these claims than individual adjudications. As such, the Court finds that Defendants have not demonstrated this issue meets the requirements for an appeal under §1292(b).

## IV.    CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the following motions are **DENIED**: (1) Motion Pursuant to 28 U.S.C. § 1292(b) to Certify Immediate Appeals from the Court's Order Denying [Defendant's] Motions to Decertify the Class, R. Doc. 20780 and (2) Motion Pursuant to 28 U.S.C. § 1292(b)

to Certify Interlocutory Appeal from the Court's Findings of Fact and Conclusions of Law Related to the June 9, 2015 Damages Hearing, R. Doc. 20781.

New Orleans, Louisiana, this 18th day of August, 2017.

*[signature]*

**ELDON E. FALLON**
United States District Judge