**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L JUDGE FALLON MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO: ALL CASES | |

**END GAME PROPOSAL OF THE PLAINTIFFS' STEERING COMMITTEE**

**I.      INTRODUCTION**

In an effort to wrap up this litigation, which has dragged on for more than eight years, the Court ordered the Plaintiffs' Steering Committee ("PSC") and the Taishan Defendants to get together to develop an "end game" plan.  The Court's intention was clear:  "With the Taishan group [of Defendants], there has been no resolution, so I'm focusing on methods of dealing with that."  *See* Transcript of Status Conference dated 6/27/2017 (attached hereto as Exhibit "A"), at 3.  The Court suggested that "[o]ne way [to resolve the Taishan claims] is to try some or all of the cases," and "[a]nother way is perhaps some form of ADR."  *Id*.  In response to the Court's directive to come up with an "end game" proposal, the Taishan Defendants, consistent with their long-standing goal of avoiding all responsibility for Taishan's defective Chinese Drywall, have advocated that the parties and the Court go back to the very beginning and start over as if nothing ever transpired.

Unabashedly, the Taishan Defendants (who deliberately ignored the litigation for many years and allowed default judgments to be entered against them), contend that the Court should

"resolve threshold questions such as standing, jurisdiction, and the scope and effect of 'Preliminary Defaults' before proceeding with this litigation."  *See* CNBM/BNBM Proposed MDL Litigation Plan [Rec. Doc. 20876], at 5.  Specifically, Defendants want this Court to (i) revisit (and vacate) default judgments entered against them more than seven years ago, (ii) order individual discovery of each and every Taishan Plaintiff, even though a multitude of Plaintiffs' documents, Plaintiff Profile Forms, product indicia, ownership status, verified square footage, remediation damages calculations, and prior settlement payments have already been filed and served on the Defendants, with a commitment from the PSC that updated productions are being diligently processed, (iii) make determinations on Plaintiffs' standing to bring claims against Taishan, and (iv) oversee motion practice on a variety of additional matters to "clean up this disorder."  *Id.* at 6.  Defendants' plan admittedly is designed to avoid "running afoul of the CNBM and BNBM Entities' due process rights," *id.* at 2, which begs the question: <u>what about the Plaintiffs' due process rights to have their claims timely adjudicated?</u>[1]

The alleged "disorder" referred to by the Defendants is entirely of their creation.  This Court has effectively supervised this MDL since its formation in 2009.  During that time, the Knauf Defendants, along with hundreds of builders, suppliers, installers, and insurers in the Knauf supply chain, provided over $1.1 billion in remediation and cash settlement benefits to class members with KPT drywall in their homes.  As part of the Knauf Settlement more than 3,000 class members had their properties completely remediated, and they were relieved of all

---

[1] The Court also requested that the parties meet and confer to prepare of list of issues that are ripe for consideration by the Court.  In stark contrast to one another, the PSC presented Defendants with their draft chart of issues (attached hereto as Exhibit "B"), and the Defendants countered with their draft chart of issues (attached hereto as Exhibit "C").

obligations to pay attorneys' fees.  Meanwhile, 2,975 Taishan class members (in *Amorin*, *Gross*, *Wiltz*, *Germano*) are still awaiting a verdict on their claims for remediation damages and other losses,[2] and an additional 901 Taishan Plaintiffs who are not in the *Amorin* class but are named in *Brooke* - Omni XX and its intervention actions (and are asserting claims with respect to 871 unique properties) have had their claims held in limbo while the Taishan Defendants have refused to file a response to their complaints on the grounds that Plaintiffs have not complied with Pretrial Order Nos. 1G and 1H (invoking the need for a Master Complaint and the reconstitution of the Motions Committee, which seven years ago consisted of representatives from Knauf, the Homebuilders, and the insurers).

As the Plaintiffs and the Court learned through laborious and tortuous discovery proceedings, from the outset of this litigation the Taishan Defendants made a strategic decision to avoid this litigation entirely and allow default judgments to be entered against them.  Then, they devised a scheme for Taishan and TTP to enter their appearances solely to challenge the *Germano* verdict and the default judgments entered in *Germano* and *Mitchell*, feigning a lack of understanding of our judicial system, even though they were monitoring the proceedings from afar with American counsel engaged to advise them.[3]  After losing in the Fifth Circuit (twice),

---

[2] Approximately, 1,800 Taishan class members received a small portion of their damages (for other losses such as alternative living expenses, personal property damage, bodily injury, etc.) through the Global, Banner, InEx ("GBI") settlements.  As the Court and the PSC have acknowledged previously, the Taishan Defendants will be entitled to an offset of these payments against any verdicts awarded to the Plaintiffs.

[3] In fact, as early as August 2009, Taishan and BNBM exchanged emails with attorneys at Hogan Lovells regarding "case status, litigation assessment, and/or recommendations for possible retention of counsel for BNBM and/or CNBM."  *See* HL Privilege Log (attached hereto as Exhibit "D").  Further, attorneys with Orrick, including Mr. Christopher Vejnoska and James Stengel, have represented one or more of the Taishan Defendants since at least October 2010, as their names appear on the Hogan Lovells Privilege Log numerous times.  *Id.*

the Taishan Defendants refused to appear for a Court-ordered judgment debtor examination, ignored the Court's Contempt Order and Injunction, continued doing business in the United States during the Contempt Period, and engaged in discovery abuses with respect to PENG Wenlong's whereabouts and his computers.  And now, for the first time, these Defendants want to file motions to vacate default judgments entered in 2010, even though they have participated in these proceedings for 2½ years.  They also insist on detailed and time-consuming discovery of individual Plaintiffs, even though the PSC already provided the Court and the Defendants with Plaintiff Profile Forms, verified "under air" square footage for each property, and evidence of Taishan product identification, and even though BrownGreer has given them evidence of property ownership and prior payments received from the GBI and Virginia settlements.

Defendants' latest attempt at turning our judicial process on its head is their filing of a successful 1292(b) motion for immediate interlocutory appeal of the Court's jurisdiction order [Rec. Doc. 20739], *followed by* a "Supplemental Motion on Jurisdiction and Class Certification" in support of their *prior* jurisdictional motions based on the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County* ("*BMS*")[4] [Rec. Doc. 20882], *followed by* a Petition for interlocutory review of this Court's jurisdiction order in the Fifth Circuit.  Problematically, Defendants are seeking to overturn the rulings on class certification and on agency as between BNBM and Taishan under Virginia law and Florida law

---

[4] 137 S. Ct. 1773 (2017).

4

both in this Court and on appeal, <u>at the same time</u>.[5]  In addition, Defendants want to have all "out-of-state" Plaintiffs' claims dismissed, which implicates issues of tolling the statutes of limitations and the applicability of prior valid default judgments on any actions "newly filed" based on jurisdictional concerns.  In Taishan's previous jurisdictional motions in *Germano*, *Mitchell*, and *Gross*, which involved nationwide classes originating in Virginia, Florida, and Louisiana, respectively, Defendants raised the issue that out-of-state Plaintiffs' claims do not arise from the Defendants' contacts in the relevant jurisdiction.  In adjudicating those motions, the Court accepted the suggestion of the PSC that severing and transferring (not dismissing) non-Virginia, non-Florida, and non-Louisiana cases from each of those respective actions at the appropriate time would "resolve [Taishan's] dispute."  *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 894 F. Supp. 2d 819, 858, 889, 902 (E.D. La. 2012), *aff'd*, 742 F.3d 576 & 753 F.3d 521 (5th Cir. 2014).  Plainly, the record here on jurisdictional issues is incomplete; the parties are still briefing the issues related to *BMS*, and the Court has yet to consider that motion.  And, notably, <u>Defendants failed to inform the appellate court of these duplicative avenues being pursued on the same jurisdictional matters</u>.  This form of "legal gymnastics" is just another method Defendants have employed to toy with the American judicial system.  Their sleight-of-hand tactics should not be countenanced.

Despite the Court's observation that "attorneys are problem solvers" and "[a]t this level we have the best problem solvers in the country to focus on [a resolution of] this particular litigation," Tr., 6/27/2017, at 3, it appears that the Taishan Defendants are not interested in

---

[5] The Court has denied Defendants' 1292(b) motions on Class Damages and Decertification [Rec. Doc. 20910].

resolving anything.   They would rather reinvent the wheel.   After more than eight years of litigation, after deliberately absenting themselves from the case, and after orchestrating contemptuous conduct and engaging in discovery abuses, the Taishan Defendants' plan is unacceptable.   If they have their way, the Plaintiffs will never have their claims heard in any jurisdiction, and the parties will be litigating a panoply of issues for the next several years, if not longer.

## II.    **PSC'S END GAME PROPOSAL**

On September 26, 2014, this Court certified a litigation class consisting of "All owners of real properties in the United States, who are named Plaintiffs on the complaints in *Amorin, Germano, Gross,* and/or *Wiltz* (*i.e.*, not an absent class member), asserting claims for remediated damages arising from, or otherwise related to Chinese Drywall manufactured, sold, distributed, supplied, marketed, inspected, imported or delivered by the Taishan Defendants" (the "*Amorin* class").   *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2014 WL 4809520, *16 (E.D. La. Sept. 26, 2014).   At the time the *Amorin* class was certified, all of the Taishan Defendants were deliberately absent from the litigation.   With CNBM Group's blessing, Taishan and TTP had fled the jurisdiction in July, 2014 to avoid having to appear for a judgement debtor examination in connection with the *Germano* judgment.   Meanwhile, the CNBM and BNBM entities were monitoring the proceedings (as they had done from the beginning), but continuing to sit on the sidelines.   This was a strategic decision on their part.   They were relying on the

absence of a U.S.-China treaty supporting the enforcement of U.S. judgments in China, to avoid having to answer Plaintiffs' claims.[6]

Considering the length of time that Taishan property owners have had to endure living in homes with drywall that emits Sulphur gases, the period that has passed since the MDL was formed in 2009, and the diligent efforts and hard work of the Court and the PSC to move this case forward in a positive direction, Defendants' attempts to undo/redo all of the class proceedings, unbundle out-of-state Plaintiffs from all Omnibus complaints filed under CAFA, open default judgments, assess the standing of Plaintiffs to bring their claims in this MDL or elsewhere, reevaluate the propriety of Plaintiff Profile Forms, etc., represent an approach that looks nothing like an "end game."  Rather, Defendants' proposal creates more problems than it solves.  Essentially, it constitutes "one step forward and two steps back," and is a slap in the face to this MDL Court, the Plaintiffs and our judicial system.

The PSC respectfully urges this Court to set a deadline for Defendants to file their contests or challenges to the *Amorin* class Plaintiffs' verified square footage and remediation damages charts in accordance with its Class Damages Order, with the goal of achieving a class-wide remediation damages verdict for 3,000 Plaintiffs.  In order to accomplish this goal, the PSC suggests the Court appoint a Special Master to hear challenges to product identification brands ("Product ID Buckets"), proof of indicia of Taishan products, square footage, and the like.

---

[6] *See, e.g.*, Announcement of CNBM dated 8/20/2014 (attached hereto as Exhibit "E") ("[T]he Group's major assets and principal commercial activities are all located in China and since there is no convention or treaty on mutual recognition and enforcement of judgments between China and the US, the respective US and Chinese legal counsels of BNBM and Taishan Gypsum believe that the possibility of the US judgments being enforced in China is very low.").

Following *de novo* review by this Court, the proceedings will be in a posture for a verdict on remediation class damages.  The remaining non-class damages (for alternative living expenses, foreclosure, short sales, attorneys' fees, etc.) can be resolved administratively, *via* alternative dispute resolution, or through mini-trials.  But in no event should any of the claims of the certified *Amorin* class be remanded.

As for the *Brooke* action Plaintiffs (named in the "Omni XX" Complaint and Intervention Complaint), who are not part of the *Amorin* class, Defendants have requested that discovery and motion practice regarding their claims occur in the MDL.  The PSC agrees and proposes that its Motion to Remand Omni XX Claims [Rec. Doc. 20614], filed on December 23, 2016, be held in abeyance pending the resolution of (i) the *Amorin* class remediation damages, (ii) rulings by the Court on Taishan Product ID Buckets, (iii) determinations by the Court on tolling of the statutes of limitations, and (iv) adjudication of Defendants' *BMS* motion.  After those determinations have been made, this Court will be in a position to remand Omni XX actions to the jurisdictions from which they originated.

The PSC submits that its "end game" proposal comports with this Court's prior rulings and is designed to promptly bring relief to deserving homeowners with Taishan Chinese Drywall in their properties, who have waited an inordinate period of time, with little to show for it.  The Defendants' proposal, in contrast, is designed to torpedo these proceedings by revisiting already litigated issues, forcing the refiling of thousands of claims in numerous venues where Defendants surely will reassert additional jurisdictional challenges, and ultimately avoid not only a class-wide remediation damages verdict on behalf of *Amorin* class members, but any verdict for any

Chinese Drywall Plaintiff.  On balance, if the Court is seeking a true "end game" plan, the Defendants' scheme should be rejected and the PSC's suggestions should be adopted.

### A.   CLASS DAMAGES TRACK

#### 1.  Procedural Background

Over the past three years, significant motion practice and briefing has taken place with regard to the assessment of the *Amorin* class remediation damages and a multi-phase trial plan. After Taishan and TTP fired their American attorneys and refused to appear for a judgment debtor examination regarding the *Germano* judgment, on July 23, 2014, the PSC filed an Omnibus Motion for Class Certification Pursuant to Rules 23(a)(1)-(4) and 23(b)(3) [Rec. Doc. 17883], and on September 26, 2014, the Court entered detailed findings of fact and conclusions of law certifying the *Amorin* class and authorizing the dissemination of class notice [Rec. Doc. 18028].

On October 29, 2014, Plaintiffs filed a Motion for Assessment of Class Damages Pursuant to Rule 55(b)(2)(B) and Request for Approval of Supplemental Notice [Rec. Doc. 18086] ("PSC's Motion for Assessment of Class Damages").  On the day the class damages hearing was scheduled to take place, February 12, 2015, BNBM entered its appearance in the litigation in dramatic fashion, for the first time, to seek a continuance.  This event was followed by Taishan's and TTP's return to the litigation, and the appearance of BNBM Group and the CNBM entities in March, 2015.  On March 2, 2015, Plaintiffs filed Proposed Findings of Fact and Conclusions of Law [Rec. Doc. 18405] with respect to their Motion for Assessment of Class Damages.  On May 8, 2015, Taishan moved to decertify the class [Rec. Doc. 18879] and the

9

BNBM and CNBM entities joined in Taishan's motion [Rec. Docs. 18883 and 18885, respectively] (*see* May 28, 2015 Minute Entry [Rec. Doc. 19035] and Transcript).

After several adjournments, a contested evidentiary hearing, with oral argument, on the PSC's Motion for Assessment of Class Damages occurred on June 9, 2015.  The parties each filed proposed findings of fact and conclusions of law following the hearing.

On November 6, 2015, the PSC filed a Motion for Expedited Hearing on Setting Phased Individual Damage Trials Against Taishan [Rec. Doc. 19705], to which Taishan responded on November 10, 2015 [Rec. Doc. 19712].  On November 12, 2015, the PSC filed a Motion for Leave to File PSC reply and proposal for scheduling individual damages mini trials [Rec. Doc. 19721], which BNBM opposed on November 16, 2015 [Rec. Doc. 19738].

On December 23, 2016, the PSC filed a Supplemental Brief in Support of Motion for Class Damages, and a Reply to Taishan's Second Supplemental Response to Plaintiffs' Motion for Class Damages and Proposed Trial Plan [Rec. Doc. 20634].  On December 30, 2016, the Taishan Defendants filed a Motion to Exclude Portions of Plaintiffs' Supplemental Brief in Support of Motion for Class Damages [Rec. Doc. 20620], BNBM filed a Joinder [Rec. Doc. 20622], and on January 3, 2017, CNBM filed a Joinder [Rec. Doc. 20623].  On December 30, 2016, the Taishan Defendants filed a Motion to Strike the December 23, 2016 Declaration of Ronald E. Wright, P.E. [Rec. Doc. 20619], BNBM filed a Joinder [Rec. Doc. 20621], and on January 3, 2017, CNBM filed a Joinder [Rec. Doc. 20623].  Then, on January 5, 2017, the PSC filed a Response to Taishan's Motion to Strike [Rec. Doc. 20625].

Following a one-year unsuccessful hiatus intended to allow the parties to pursue settlement options, on April 21, 2017, the Court issued Findings of Fact and Conclusions of Law Related to the June 9, 2015 Damages Hearing [Rec. Doc. 20741]; an Order & Reasons regarding Jurisdiction over CNBM, BNBM, BNBMG, and various CNBM Entities [Rec. Doc. 20739]; and an Order & Reasons regarding Decertification of the Taishan Class [Rec. Doc. 20740].

This prompted Taishan to file a Motion for Access to Claims Support and for Evidentiary Hearing on Remediation Damages on May 19, 2017 [Rec. Doc. 20776].  On June 1, 2017, the Court entered an Order [Rec. Doc. 20799] setting a briefing schedule.  The Court held that the motion "will be set for submission, without oral argument, on July 7, 2017.  If the Court determines oral argument would be helpful, it will schedule a hearing on a later date."  On June 21, 2017, the PSC filed its Response in Opposition to Taishan's Motion for Access to Claims Support and for Evidentiary Hearing on Remediation Damages [Rec. Doc. 20828].  On July 5, 2017, Taishan filed a Reply Memorandum in Support of its Access Motion [Rec. Doc. 20848].  This motion is pending; however, in the interim, the parties have conferred and the PSC has granted Taishan access to numerous materials requested in the motion.  On August 22, 2017, additional document productions from the PSC were made [*see* Rec. Doc. 20912].

On May 22, 2017, Taishan filed a Motion to Amend the Order Denying Class Decertification and the Class Damages Order and to Certify for Interlocutory Appeal Under Section 1292(b) [Rec. Doc. 20778].  On June 15, 2017, the PSC opposed this motion [Rec. Doc. 20809].  On May 22, 2017, CNBM and BNBM filed similar Motions to Certify an

Immediate Appeal from (1) the Findings of Fact and Conclusions of Law Related to the June 9, 2015 Damages Hearing (§ 1292(b) Motion #3) [Rec. Doc. 20781], (2) the Order denying Defendants' motion to decertify the Taishan class (§ 1292(b) Motion #2) [Rec. Doc. 20780]; and (3) the Order adjudicating the CNBM/BNBM jurisdictional motions (§ 1292(b) Motion #1) [Rec. Doc. 20739].  On May 23, 2017, the PSC filed a Motion for Extension of Time to Reset Hearing and for Expedited Consideration [Rec. Doc. 20785], Defendants filed a Joint Response to the PSC's motion [Rec. Doc. 20787], and on May 25, 2017, the PSC filed a Reply in further support of its motion [Rec. Doc. 20797].  On June 1, 2017, the Court entered an Order [Rec. Doc. 20799] granting the PSC's Motion for Extension and setting a briefing schedule.  The Court held that the motions "will be set for submission without oral argument, on July 7, 2017.  If the Court determines oral argument would be helpful, it will schedule a hearing at a later date."  On July 5, 2017, Taishan filed a Reply in Support of Its Motion to Amend the Order Denying Class Decertification and the Class Damages Order and to Certify for Interlocutory Appeal Under Section 1292(b) [Rec. Doc. 20849].  That same day, the CNBM/BNBM Entities filed Replies in Support of their 1292(b) motions [Rec. Docs. 20850-2, 20851-2, 20852-2].

On May 22, 2017, Taishan filed a Notice of Appeal [Rec. Doc. 20777] to the United States Court of Appeals, Fifth Circuit, regarding this Court's Class Damages Order [Rec. Doc. 20741] (USCA Case No. 17-30432).  On June 7, 2017, Plaintiffs filed a Motion to Dismiss the Appeal for lack of jurisdiction (Document 00514025461).  On June 19, 2017, Taishan filed an Opposition to Motion to Dismiss (Document 514038624), and on June 20, 2017, a Joint Designation of Record on Appeal was filed with the Court [Rec. Doc. 20823].  On June 22,

2017, Taishan filed a Motion for Leave to File a Supplement to its Opposition to Motion to Dismiss Appeal with the Fifth Circuit Court of Appeals [Document 514044662]. On June 30, 2017, the Court of Appeals granted the motion to dismiss the 1292(a)(1) appeal [Rec. Doc. 20847].

In accordance with the Court's directives set forth in the Class Damages Order, on June 20, 2017, the PSC filed an Updated Class Plaintiffs' Spreadsheet of Taishan Properties With Verified Under Air Living Square Footage Pursuant to the Court's Findings of Fact and Conclusions of Law Related to the June 9, 2015 Damages Hearing Dated April 21, 2017 [Rec. Doc. 20824]. This submission provided the names and addresses of Class Members who were listed on Exhibit 10/79 (which was admitted into evidence at the June 9, 2015 class damages hearing) and who, as of the date of the class damages hearing, owned a Taishan property for which square footage has been verified ("10/79 Properties"). *Id.* The Taishan properties identified on the Updated Spreadsheet do not constitute the universe of remediation claims by *Amorin* class members against Taishan in this litigation. For example, certain Taishan properties were not included on Exhibit 10/79 due to the fact the claimant(s) no longer owned the property at the time of the class damages hearing on June 9, 2015 or for other reasons, but these class members nevertheless have valid claims for damages against Taishan. These claims are referred to as "Reserved Properties" or "RP." As part of the Plaintiffs' submission on class damages, the PSC provided the Court and the Defendants with a Reserved Properties Spreadsheet containing verified square footage and indicia of Taishan product. *Id.* Finally, the PSC submitted an Additional Taishan Properties Spreadsheet of Class Members who were included on the *Amorin*

complaints and who owned their property either at or prior to the time of the class damages hearing on June 9, 2015, but were nevertheless omitted from the original Exhibit 10/79 spreadsheet, primarily because the PSC chose to defer the resolution of objections thereto from Taishan. *Id.*

On June 23, 2017, the PSC filed an Errata to the Updated Class Plaintiffs' Spreadsheet [Rec. Doc. 20837].  On June 27, 2017, Baron & Budd, P.C. filed a Supplemental Errata to the Updated Class Plaintiffs' Spreadsheet [Rec. Doc. 20841].  On July 10, 2017, the PSC filed the Second Errata to the Class Plaintiffs' Spreadsheet [Rec. Doc. 20859].  On July 25, 2017, the PSC filed a Supplemental Submission of an Updated Class Plaintiffs' Spreadsheet of Taishan Properties With RS Means Factors, Costs Per Square Foot, and Extended Costs in Connection With the Court's FOFCOL Related to the June 9, 2015 Damages Hearing Dated April 21, 2017 [Rec. Doc. 20875].  In this submission, the PSC provided class damages calculations based on RS Means factors as determined by Mr. Ronald E. Wright, P.E.  On August 2, 2017, the PSC filed an Addition and Errata to the Supplemental Submission of an Updated Class Plaintiffs' Spreadsheet of Taishan Properties With RS Means Factors, Costs Per Square Foot, and Extended Costs in Connection With the Court's FOFCOL Related to the June 9, 2015 Damages Hearing Dated April 21, 2017 [Rec. Doc. 20887].  On August 22, 2017, the PSC provided additional discovery to the Defendants including updated calculations of remediation damages for all *Amorin* class members as well as *Brooke* Omni XX Plaintiffs [Rec. Doc. 20912].

According to Mr. Wright, the current total remediation damages for the 2,975 buildings that are or were owned by *Amorin* class members, using 2017 dollars, is $530,402,103 [*see* Rec.

14

Doc. 20912-4].  The total remediation damages for the 871 unique buildings that are or were owned by *Brooke* Omni XX Plaintiffs, using 2017 dollars, is <u>$147,210,496</u> [*see* Rec. Doc. 20912-5].[7]

On June 30, 2017, the PSC filed an Analysis of All Taishan Claimants With Regard to Location of Their Properties [Rec. Doc. 20846].

On July 7, 2017, the Builder Plaintiffs filed their Renewed Motion for Class Certification Against Taishan [Rec. Doc. 20865].  This filing was applicable to *Mitchell Co. Inc. v. Knauf Gips KG, et al.*, 09-cv-4115.

On August 1, 2017, the following protective Omnibus Complaints were filed in anticipation of Defendants' supplemental *BMS* jurisdictional motion, in various District Courts throughout the country.  Each of these actions has been transferred to this MDL:

OMNI XXI:  *Jeremy Macon, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, 1:17-cv-01287-VEH (N.D. Ala.) (Alabama *Amorin* Default)

OMNI XXII:  *Debra Peoples, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, 1:17-cv-02890-TWT (N.D. Ga.) (Georgia *Amorin* Default)

OMNI XXIII:  *Donna Polk, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, 1:17cv216H50-JCG (S.D. Miss.) (Mississippi *Amorin* Default)

---

[7] The formula for the calculation of remediation damages (including CIH costs) is the multiplication of the 2017 national average cost of remediation per square foot ($109.85), as adjusted by the zip code-specific RS Means cost data location factor, by the total "under air" square footage for each building [remediation damages = square feet of buildings x cost per square foot (*i.e.*, $109.85 (national average cost) as adjusted by the applicable localized cost factor)].

OMNI XXIV:  *David and Melody Bright, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, 2:17-cv-00035-FL (E.D.N.C.) (North Carolina *Amorin* Default)

OMNI XXV:  *Harry DeOliveira v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, 4:17-cv-02019-MDL (D.S.C.) (South Carolina *Amorin* Default)

OMNI XXVI:  *James and Deloris Redden, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, 1:17-cv-01146 (W.D. Tenn.) (Tennessee *Amorin* Default)

OMNI XXVII:  *Andy Mertlitz v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, 5:17-cv-00140 (E.D. Tex.) (Texas *Amorin* Default)

OMNI XXVIII:  *Randy Bayne, et al., v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, 4:17-cv-01286-KOB (N.D. Ala.) (Alabama *Brooke*)

OMNI XXIX:  *Rochell and Jose Abner, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd.*, Civ. Action No. 11-3094 (intervention complaint into the *Abner* California Complaint)

OMNI XXX:  *Kelly Bentz, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, 1:17-cv-02892-AT (N.D. Ga.) (Georgia *Brooke*)

OMNI XXXI:  *Lela and Melinda Allen, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, 1:17-cv-217LG-RHW (S.D. Miss.) (Mississippi *Brooke*)

OMNI XXXII:  *Kenneth D. Lochhead and Maria L. Webste, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, 7:17-cv-00294 (S.D. Tex.) (Texas *Brooke*)

On August 1, 2017, CNBM filed a Motion to Compel Discovery from Plaintiffs [Rec. Doc. 20880].  The parties agreed to stay the briefing on this motion in light of the PSC's offer to produce numerous documents to the Defendants (*see* email exchange between S. Duggan and C. Vejnoska, attached hereto as Exhibit "M").  On August 22, 2017, the PSC produced numerous additional materials to the Defendants [Rec. Doc. 20912].  Further, the parties are continuing to

talk about additional discovery productions so that any disputes regarding discovery may be narrowed before they are brought to the Court's attention.

Also on August 1, 2017, CNBM and BNBM filed a Supplemental Motion on Jurisdiction and Class Certification Following *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County* [Rec. Doc. 20882]. On August 7, 2017, Taishan filed a Notice of Joinder [Rec. Doc. 20894]. On August 18, 2017, the Court issued an Order [Rec. Doc. 20909] setting the matter for submission on September 19, 2017, and providing a briefing schedule.

On August 2, 2017, the PSC filed a Rule 6(b) Motion for Extension of Time for Service of Process Under Rule 4(m) [Rec. Doc. 20885], which included Exhibit A – Notice of Tag-Along Actions [Rec. Doc. 20886].

On August 4, 2017, the Court entered Order & Reasons [Rec. Doc. 20890] granting Defendants' Motion Pursuant to 28 U.S.C. § 1292(b) to Certify Immediate Appeals from the Court's Jurisdiction Order ("1292(b) Order") [Rec. Doc. 20779]. Ten days later, on August 14, 2017, CNBM and BNBM filed with the Fifth Circuit Court of Appeals a Petition for Permission to Appeal the Jurisdiction Order Pursuant to 28 U.S.C. § 1292(b). Because of Defendants' duplicate filings in the district court and the Court of Appeals seeking relief from this Court's agency ruling with respect to Taishan and BNBM and from the class certification determination, on August 17, 2017, the PSC filed an Emergency Motion to Vacate the Court's 1292(b) Order [Rec. Doc. 20898].

On August 22, 2017, the Court denied Defendants' 1292(b) motions seeking to appeal the Class Damages Order and the Decertification Order [Rec. Doc. 20910], finding that "in light of

the complex nature of this case and extensive history of the litigation, a class action is the superior mechanism for resolving these claims."  Order & Reasons at 13.

## 2. *Amorin* Class Members' Remediation Damages

### a. *Square Footage, Product Identification, and Remediation Damages Calculations*

In compliance with the Court's directives in the Class Damages Order, the PSC produced verified square footage for each Taishan property owned by *Amorin* class members, evidence of Taishan drywall, and declarations from counsel regarding the square footage calculations [Rec. Docs. 20824, 20837, 20859, 20875, 20912].   The PSC also provided to the Court and the Defendants a Catalog of Taishan Product Identification Markings ("Taishan Product ID Catalog") [Rec. Doc. 20824-6, Exhibit F], identifying (through photographs) 44 known markings and/or stamps that the PSC considers to be identifiers of Taishan Chinese Drywall installed in class members' homes.   In addition, the PSC previously provided to the Taishan Defendants documentation supporting the 12 Categories of Taishan Product ID Buckets (A-L below), which contain one or more of the 44 Taishan Product Identification Markings (except for the blank boards)[8]:


    A.  BNBM / Dragon Brand
    B.  C&K Gypsum
    C.  Chinese Manufacturer #2 (purple stamp)
    D.  Crescent City Gypsum
    E.  DUN

---

[8] These Product ID buckets were discussed in great detail during the mediation sessions with the Taishan Defendants, supervised by Special Masters John Perry and Cal Mayo.

F.  IMT
G.  ProWall
H.  Taian Taishan or Taihe Edge Tape
I.  Made in China[,] Meets or Exceeds ASTM 1396
J.  Drywall 4feet[x/*]12feet[x/*]1/2inch
K.  Venture Supply Marking or Invoice
L.  No Markings (White Edge Tape and/or Blank Boards)

Plaintiffs contend that the Taishan Defendants are responsible for all of these 12 Product ID Buckets.  Not surprisingly, the Defendants disagree.  Taishan has conceded that it is responsible for DUN drywall, Venture Supply drywall, Taian Taishan/Taihe Edge Tape, and perhaps *some* drywall with other markings.  However, the Defendant Profile Forms of Taishan and TTP as well as other Taishan reports reveal that Taishan manufactured between 71.6 and 78.4 million square feet of drywall that was exported to the United States with the following markings and identifiers:

(1)  "Made in China Cr" with "[w]hite edge sealing tape (without words printed thereon)";

(2)  "MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD" with "[w]hite edge sealing tape (without words printed thereon)";

(3)  "MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD" with "Taishan edge sealing tape";

(4)  "DRYWALL 4feetX12feetX1/2inch" with "[w]hite edge sealing tape (without words printed thereon)";

(5)  "DRYWALL 4feetX12feetX1/2inch" with "[b]lue and white edge sealing tape: IMTGYPSUM";

(6)  blank boards with "[w]hite edge sealing tape (without words printed thereon)";

(7)  "TAIAN TAISHAN PLASTERBOARD CO., GYPSUM DRYWALL PER ASTM C 1396 04 CONTACT: 813-994-6499" with "[e]dge sealing tape: TTPC";

19

(8)     "Made in China, ceiling" with "[e]dge sealing tape: CRESCENT CITY"; and

(9)     blank boards with "[e]dge sealing tape: DUN Drywall."

*See* TTP Profile Form, pp. 15-54 (attached hereto as Exhibit "F").

Moreover, the Defendant Profile Form of Taishan Gypsum admits that Taishan manufactured drywall that was exported to the United States with the following markings: "VENTURE SUPPLY INC. MFG. SHANDONG TAIHE, CHINA" with "Venture Supply" edge sealing tape. *See* Taishan Gypsum Profile Form, p. 2 (attached hereto as Exhibit "G"). *See also* Statement on the Data and Statistics of Exports to the U.S. from 2005 to 2007 (TG-0129675-0129676) [PENG Exhibit 801-1] ("Taishan Statistics on U.S. Exports") (attached hereto as Exhibit "H") & Spreadsheet: Statistics on U.S. Gypsum Boards during 2005-2007 (TG-0129677) [PENG Exhibit 801-2] (attached hereto as Exhibit "I"); Taishan Informational Report to Chief SONG Zhiping (CNBM's Chairman) and Chief CAO Jianglin (CNBM's President) (TG-0208428-0208430) [PENG Exhibit 825] (attached hereto as Exhibit "J").

Given the facts that (i) Taishan produced drywall on a made-to-order basis for certain American customers, (ii) the company manufactured blank boards to which others may have added markings or stamps, and (iii) Taishan placed key markings on the drywall's edge tape, which is <u>removed during installation</u>,[9] it is difficult for Defendants to disavow the Plaintiffs' proofs. In fact, Taishan's Statistics on U.S. Exports report that the company manufactured

---

[9] *See* Deposition of Taishan's Manager of Foreign Trade CHE Gang dated 1/12/2012 at 361:24-362:4 (the normal practice is to remove the edge sealing tape from the drywall before installation) (attached as Exhibit "K" hereto); *see also* Letter from Hogan Lovells on behalf of Taishan and TTP to Judge Fallon dated 3/22/2011 ("In some cases, such trademarks were applied to edge sealing tape, but we understand that was usually removed prior to installation, so it may have limited utility as a means of product verification.") (attached as Exhibit "L" hereto).

"[10,750,856.19 ft$^2$] of gypsum boards [that] had white <u>unlettered edge band</u>, <u>no coding</u>, and <u>neutral packaging</u>."  *See* Taishan Statistics of U.S. Exports at TG-0129676.   Further, "[t]he labeling for … [another 10,987,347.10 ft$^2$] of gypsum boards is unknown" according to Taishan. *Id.*

The Court's FOFCOL on class remediation damages contemplates the filing of challenges by Defendants to Plaintiffs' damages calculations [Rec. Doc. 20739 at p. 50].   The PSC proposes that the Court set a deadline for contests to be filed, followed by a 3-step process to resolve any Product Identification and/or square foot identification disputes.

**Step 1** – With the assistance of a Special Master and ultimately by way of a Court ruling, disputes as to Defendants' responsibility for each of the 12 Categories of Taishan Product ID Buckets listed above will be resolved (*e.g.*, is "BNBN/Dragon Board" a BNBM product?[10];  is "C&K Gypsum" a Taishan Product?; is Taishan responsible for blank boards with no markings?).

**Step 2** - After the Product ID Bucket category rulings are made, the Special Master and ultimately the Court will resolve disputes as to whether any particular individual property marking or proof of indicia qualifies as a Taishan or BNBM Product.   Specific disputes regarding square footage calculations can also be resolved at this point.

**Step 3** – the Court will make a determination as to whether former owners are entitled to remediation damages.

---

[10] BNBM has conceded it manufactured Dragon Board but denies this product is defective.

The PSC proposes the following schedule to ultimately resolve disputed Product Identification and square footage issues:

a. Within ten (10) days, the PSC shall produce general Product Identification Documentation (Photo Catalog and 12 Product ID Buckets) and Taishan's responsibility for same.  This will also include the support to show how the individual markings fit into the twelve bucket categories.

b. Within ten (10) days after receipt of (a) above, the Taishan Defendants shall meet and confer with the PSC, and within seven (7) days thereafter serve their response to the general Product Identification Documentation.

c. Within seven (7) days after receipt of (b) above, the Parties shall submit briefs to the Special Master regarding disputes as to general Product Identification Documentation.

d. Within seven (7) days after receipt of (c) above, the Special Master shall issue a written recommendation as to all Product Identification Documentation (Photo Catalog and 12 Product ID Buckets).

e. Court shall conduct a *de novo* review and issue an Order resolving any general Product Identification Documentation disputes.

f. Within seven (7) days after receipt of (e) above, the Parties shall submit briefs to the Special Master regarding disputes as to any individual Product Identification Documentation and/or square footage calculations.

g. Within seven (7) days after receipt of (f) above, the Special Master shall issue a written recommendation as to all individual Product Identification Documentation and/or square footage disputes, based upon the Court's prior rulings regarding Product Identification Documentation (Photo Catalog and 12 Product ID Buckets).

h. Any interested party shall have an opportunity to object to or appeal to the Court the determinations in (g) above.

i. At the same time as Product Identification Documentation issues are being resolved, the parties shall file briefs with the Court as to whether former owners are entitled to remediation damages.

### b. *State-Specific Analyses for Remediation Class Damages*

In the filing made with the Court on July 25, 2017 [Rec. Doc. 20875], the PSC provided a spreadsheet that identified Taishan properties with RS Means Factors and cost per square foot, in accordance with the formula approved by the Court in its Class Damages Order, using 2017 dollars. This spreadsheet included properties located in the following states: Louisiana; Virginia; Florida; Georgia; California; Texas; Tennessee; South Carolina; Ohio; North Carolina; Mississippi; and Alabama.

The PSC has provided the Court and the Taishan Defendants with remediation damages calculations for all *Amorin* class members, including the 10/79 Claimants, the Reserved Properties and the Additional Taishan Properties, based on the location of their properties, as set forth above. *See* Declaration of Ronald E. Wright, P.E. dated 8/22/2017 [Rec. Doc. 20912-4]. Using the Updated Class Spreadsheet, which includes all *Amorin* class members who were listed on Exhibit 10/79,[11] the Reserved Properties ("RP") spreadsheet,[12] the "Additional Taishan Properties"[13] spreadsheet, and any amendments thereto, to calculate damages, taking into consideration any offsets Defendants are entitled to, the Court will be in a position to issue an Order awarding remediation damages for all *Amorin* class members.

---

[11] Exhibit 10/79 was admitted into evidence at the June 9, 2015 class damages hearing and contains claimants who, as of the date of the class damages hearing, owned the Taishan property.

[12] These claimants were not included on Exhibit 10/79 due to the fact the Class Members no longer owned the property at the time of the class damages hearing on June 9, 2015, or for other reasons.

[13] These claimants were named on the *Amorin* complaints, but were nevertheless omitted from the original Exhibit 10/79 or the RP spreadsheet, primarily because the PSC chose to defer the resolution of objections thereto from the Taishan Defendants.

Thereafter, a Rule 54(b) motion to obtain a final judgment on remediation damages can be entered. Following this, the Court may conduct a hearing or authorize the Special Master to allocate the class award among eligible class members.

### 3. *Amorin* Class Members' Other Damages

#### a. *Attorneys' Fee Track*

The Court shall conduct a hearing to consider award of attorney's fees to class members under applicable law, including but not limited to Louisiana's Redhibition jurisprudence, and introduction of documents, testimony, and deposition abstracts relative to same.

#### b. *Other Individual Damages Track*

The PSC, at an appropriate time, will file a motion for a consolidated trial pursuant to Fed.R.Civ.P. 42(a) to address the common issues and damages of Plaintiffs that present individualized damages, *i.e.*, move-in/move-out expenses,[14] former property owners subject to foreclosures, bankruptcies, short-sales, etc.

### 4. Entry of Final Judgment

After class remediation and other damages are determined, the PSC contemplates the entry of a final judgment on the totality of damages, and any subsequent appellate proceedings.

### 5. Motions for 1292(b) Appeals

The Court granted Defendants' 1292(b) motion on jurisdiction; however, the PSC has moved (on an emergency basis) to vacate that order pending a resolution of Defendants' Supplemental Jurisdictional Motion based on *BMS*, which overlaps with the issues raised on

---

[14] It will need to be determined if this is to be pursued on a class wide basis or on an individualized basis.

appeal.   The Court denied Defendants' 1292(b) motions for immediate appeal of the Court's Class Damages and Decertification Orders.

**B.**      **OMNI XX TRACK –** *Brooke*

Given that both sides agree that discovery in *Brooke* should occur in the MDL, the Court should oversee this discovery and resolve any disputes arising therefrom.   The PSC has provided Defendants with a comprehensive spreadsheet and Cloud Share File that sets forth for each Plaintiff asserting claims against Taishan/BNBM/CNBM the following information and documentation:

(1)      Name of Plaintiff, Property Address;

(2)      Attorney;

(3)      Omni Complaint(s) filed by Plaintiff and date of first Omni (for statutes of limitations);

(4)      Plaintiff Profile Form;

(5)      Square footage for property, proof of same, and declaration from counsel;

(6)      Taishan Product Brand(s) and Product ID Bucket category(ies) (including a description of product indicia, type of indicia, product markings, and Taishan photo catalog number(s));

(7)      Ownership information from BrownGreer ("BG") (including dates of ownership, type of ownership evidence, name of current owner);

(8)      Updated 2017 RS Means calculations for each property (Ronald E. Wright, P.E.); and

(9)     Prior payments received from the GBI and/or Virginia settlements (the GBI payments for Omni XX Plaintiffs are still being produced by BG).

The Taishan Defendants have requested numerous additional materials, including evidence of remediations, preservation of drywall samples, collateral payments or relief received by Plaintiffs from government sources (*e.g.*, through tax abatements) or from settlements outside the MDL.  However, given the extensive productions by the PSC [*see* Rec. Doc. 20912], and the parties' agreement to continue to meet and confer regarding the additional documents sought by the Taishan Defendants, the parties have agreed to stay the briefing on CNBM's motion to compel.  *See* Exhibit "M" hereto.

The PSC proposes that the Defendants answer the *Brooke* Complaints.   Defendants oppose this request, relying on the requirements in PTOs 1(G) and 1(H) that a Master Complaint be filed (nine years into the litigation, which makes no sense) and that the long-ago constituted Motions Committee set the timetable for responses to the complaints.

Following the responses to *Brooke*, a discovery and trial plan should be developed, which will include the following:

    i.  <u>Discovery</u>
        a.  Requests for Admissions
        b.  Motion to Compel – discovery of documents on the merits
        c.  Depositions of Taishan merit witnesses
        d.  Property-specific evaluations of square footage, current ownership status, and product identification

   ii.  <u>Expert Disclosure by both sides</u>
        PLAINTIFFS:
        a.  Lori Streit
        b.  Dean Rutila
        c.  Ron Wright

      d.  Expert on square footage and RS Means application
      e.  Others
    DEFENDANTS:

iii.  <u>Motions</u>
      a.  Motion for partial summary judgment based on prior Class Damages and
         Product ID ruling(s)
      b.  Other motions

iv.  <u>Remand Virginia, Florida and other state cases for trials</u>
      a.  28 USC § 1407 – through JPML
      b.  29 USC § 1404
      c.  Trials to address full panoply of liability and damages
      d.  In Florida, suggestion that Florida Judge initiate trial with resident of Carlton
         Arms, and include punitive damages.  May also include resident of Peninsula
         II.

v.  <u>Louisiana trials</u>
      a.  Multiple trials with multiple judges in the Eastern District of Louisiana
      b.  Trials to address full panoply of liability and damages
      c.  Mediations
      d.  ADR
      e.  Bellwether Trials

## C.   ADDITIONAL MATTERS

1. Motion to Remove Confidentiality Designations With Respect to Documents Produced    By and Testimony of the Taishan Defendants and Third Parties [Rec. Doc. 20598].  The Court entered an Order on June 14, 2017 [Rec. Doc. 20805] continuing the hearing on this matter until the Court discusses the status of the litigation with Liaison Counsel.

2. Motion for Plan to Satisfy Translation Order [Rec. Doc. 20643].  The Court entered an Order on June 14, 2017 [Rec. Doc. 20805] continuing the hearing on this matter until the Court discusses the status of the litigation with Liaison Counsel.

3. Motion to Compel Complete Responses to Supplemental Discovery Directed to Taishan, TTP, BNBM, BNBM Group, CNBM and CNBM Group [Rec. Doc. 20661].  The Court entered an Order on June 14, 2017 [Rec. Doc. 20805] continuing the hearing on this matter until the Court discusses the status of the litigation with Liaison Counsel.

4.  Motion to Substitute Plaintiff-Intervenors and the PSC's Motion to Enforce the Court's July 17, 2014 Contempt Order and Injunction filed UNDER SEAL on February 10, 2016, under Motion for Leave [Rec. Doc. 20032], GRANTED [Rec. Doc. 20636].

## III. <u>CONCLUSION</u>

Like pulling at a loose thread in a sweater and unraveling the entire garment, Defendants' "end game" proposal is designed to dismantle the MDL, decertify the *Amorin* class, prevent the fair prosecution of the *Brooke* Plaintiffs' claims, and dash all hopes of delivering adequate relief to thousands of deserving homeowners unfortunate enough to have defective Taishan Chinese Drywall installed in their properties.  Through gamesmanship and sleight-of-hand tactics, the Taishan Defendants have avoided a day of reckoning for over eight years.  Their latest efforts to prioritize the resolution of issues that have already been determined or are intended to further delay and/or detract from these proceedings should be rejected by the Court.  Instead, the resolution of contests to the *Amorin* class damages should be the first priority, followed by determinations of other damages of *Amorin* class members.  The claims of *Brooke* Plaintiffs may easily proceed on a parallel track so as to avoid prolonging their relief.

Dated: August 22, 2017                    Respectfully Submitted,

By: /s/ Leonard A. Davis
Russ M. Herman (La Bar No. 6819) (on the brief)
Leonard A. Davis (La Bar No. 14190) (on the brief)
Stephen J. Herman (La Bar No. 23129)(on the brief)
Herman, Herman & Katz, LLC
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
rherman@hhklawfirm.com

28

*Plaintiffs' Liaison Counsel MDL 2047*

Arnold Levin (on the brief)
Fred S. Longer (on the brief)
Sandra L. Duggan (on the brief)
Keith Verrier (on the brief)
Nicola F. Serianni (on the brief)
Levin Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
alevin@lfsblaw.com
*Plaintiffs' Lead Counsel MDL 2047*

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Robert Becnel, Jr.
Becnel Law Firm, LLC
425 W. Airline Highway, Suite B
Laplace, LA 70068
Phone: (985) 536-1186
Fax: (985) 536-6445
rbecnel@becnellaw.com

Peter Prieto
Podhurst Orseck, PA
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
pprieto@podhurst.com

Bruce William Steckler
Steckler Gresham Cochran
12720 Hillcrest Road, Suite 1045
Dallas, TX 75230
Phone: (972) 387-4040
Fax: (972) 387-4041
bruce@stecklerlaw.com

Patrick Montoya
Colson, Hicks, Eidson
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
patrick@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
Echsner & Proctor, PA
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
The Lambert Firm
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@thelambertfirm.com

Jerrold Seth Parker
Parker Waichman, LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Myers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

James R. Reeves, Jr.
Reeves & Mestayer, PLLC
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@rmlawcall.com

Christopher Seeger
Seeger Weiss, LLP
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5002
dan@wbmllp.com

Richard J. Serpe
Law Offices of Richard J. Serpe
Crown Center, Suite 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com

Victor M. Diaz, Jr.
V.M. Diaz and Partners, LLC
119 Washington Ave., Suite 402
Miami Beach, FL 33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

Gerald E. Meunier
Gainsburgh, Benjamin, David,
Meunier & Warshauer, LLC
2800 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2800
Phone:  (504) 522-2304
Fax:  (504) 528-9973
gmeunier@gainsben.com

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W., Suite  650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Anthony D. Irpino
IRPINO AVIN HAWKINS LAW FIRM
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 22nd day of August, 2017.

Respectfully Submitted,

By: */s/ Leonard A. Davis*
Leonard A. Davis
Herman, Herman & Katz, LLC
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
ldavis@hhklawfirm.com

*Plaintiffs' Liaison Counsel MDL 2047*