# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | CIVIL ACTION |
| | NO. 09-02047 |
| | SECTION "L" (5) |
| THIS DOCUMENT RELATES TO: ALL CASES | |

## ORDER AND REASONS

Before the Court is Howard and Cheri Rapp's ("The Rapps") Objection and Motion for Reconsideration of the Special Master's Opinion and Decree (R. Doc. 20300-1). Having read the parties' briefs and reviewed the applicable law, the Court now issues this Order and Reasons.

## I.     BACKGROUND

From 2004 through 2006, the housing boom in Florida and rebuilding efforts necessitated by Hurricanes Rita and Katrina led to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used in the construction and refurbishing of homes in coastal areas of the country, notably the Gulf Coast and East Coast. Sometime after the installation of the Chinese drywall, homeowners began to complain of emissions of smelly gasses, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes. *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 894 F. Supp. 2d 819, 829 (E.D.La. 2012), *aff'd*, 742 F. 3d 576 (5th Cir. 2014). Many of these homeowners also began to complain of various physical afflictions believed to be caused by the Chinese drywall. Accordingly, these homeowners began to file suit in various state and federal courts against homebuilders,

developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. Because of the commonality of facts in the various cases, this litigation was designated as multidistrict litigation. Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation on June 15, 2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 2047 in the U.S. District Court, Eastern District of Louisiana.

The Chinese drywall at issue was largely manufactured by two groups of defendants: (1) the Knauf Entities, and (2) the Taishan Entities. The litigation has focused upon these two entities and their downstream associates. The present motion relates to the proceedings against the Knauf Entities.

The Knauf Entities are German-based, international manufacturers of building products, including drywall, whose Chinese subsidiary, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), advertised and sold its Chinese drywall in the United States. The Knauf Entities are named defendants in numerous cases consolidated with the MDL litigation and litigation in state courts. The Knauf Entities first entered their appearance in the MDL litigation on July 2, 2009. *See* (R. Doc. 18). On November 2, 2009, in Pretrial Order No. 17, KPT agreed to a limited waiver of service. *See* (R. Doc. 401). On March 15-19, 2010, the Court presided over a bellwether trial in *Hernandez v. Knauf Gips KG*, Case No. 09-6050, involving a homeowner's claims against KPT for defective drywall. *See* (R. Doc. 2713). For purposes of the trial, KPT stipulated that its Chinese drywall "emits certain reduced sulfur gases and the drywall emits an odor." *Id*. The Court found in favor of the plaintiff family in *Hernandez*, issued a detailed Findings of Fact and Conclusions of Law ("*Hernandez* FOFCOL"), *see id.*, and entered a Judgment in the amount of $164,049.64, including remediation damages in the amount of $136,940.46, which represented a

cost of $81.13 per square foot based on the footprint square footage of the house. *See* (R. Doc. 3012).

Thereafter, on October 14, 2010, the Knauf Entities entered into a pilot remediation program with the Plaintiffs' Steering Committee ("PSC") in the MDL. This program was largely based upon the remediation protocol formulated by the Court in *Hernandez*. The Knauf pilot remediation program is ongoing and has, at present, remediated over 2,000 homes containing KPT Chinese drywall using the same protocol. The Rapps, owners of two rental properties in Waveland Mississippi that were damaged during Hurricane Katrina, seeks to recover from Knauf pursuant to the Knauf Settlement Agreement for remediation work they undertook in 2009.

On May 28th, 2016, Special Master Daniel J. Balhoff ("Special Master") issued an Opinion and Decree denying the Rapp's recovery under the Knauf Settlement Agreement. R. Doc. 20300-1 at 2. The Opinion notes that the Rapps removed the allegedly defective drywall from their home on September 21, 2009 without first photographing the drywall or contemporaneously documenting its presence in some other way. R. Doc. 20300-1 at 1. Further, the Special Master noted that the physical samples provided by the Rapps came from the already-removed drywall. R. Doc. 20300-1 at 1. Pretrial Order No. 1, issued at least three months before the remediation process began, requires claimants to preserve relevant physical evidence. R. Doc. 20300-1 at 1. The Opinion acknowledges that some evidence was preserved, but notes that it was preserved in a manner that made it impossible for him to determine how much Knauf-manufactured drywall was present in the home. R. Doc. 20300-1 at 2. Because the Rapp's failure to properly preserve evidence made it impossible for the Special Master to determine how much Knauf drywall was present, he found in favor of Knauf. R. Doc. 20300-1 at 2.

## II. PRESENT MOTION

The Rapps, residents of Bay St. Louis, Mississippi, own two rental properties in Waveland Mississippi, located at 249 Gulfside Street and 300 Gulfside Street. R. Doc. 20300 at 2. Both properties were damaged during Hurricane Katrina and subsequently remediated. The Rapps argue that they have provided evidence that KPT Drywall was used to remediate their property. Further, they aver they fully complied with the preservation protocol enacted by this Court, and that the Special Master thus erred in finding in Knauf's favor. R. Doc. 20300 at 2. In particular, the Rapps note that the evidence they submitted included multiple physical samples and photographs of Knauf drywall, electrical components, photographs of the homes post-remediation, expense receipts, floor plans, affidavits, and official reports, consistent with the explicit requirements of Pretrial Order No. 1, and attach as an exhibit electronic confirmations of these submissions dating back to February 4, 2011. R. Doc. 20300 at 3.

The Rapps contend that they were in full compliance with Pretrial Order Number 1, which was the only preservation protocol in place at the time their homes were undergoing remediation. R. Doc. 20300 at 4. They additionally argue that the more rigorous preservation standard of Pre-Trial Order 1(B) should not apply because it was enacted in October 2009 and thus was not operative at the time of their remediation. R. Doc. 20300 at 4. Stressing that they made a good faith effort to remediate their homes in order to minimize their losses, the Rapps argue that the Special Master erred in finding that they failed to preserve evidence of defective KPT drywall. R. Doc. 20300 at 4.

In opposition to the Rapp's Objection, Knauf Defendants argue that the Special Master correctly determined that the Plaintiffs prejudiced the Knauf Defendants by failing to appropriately preserve evidence and presenting evidence in an untrustworthy and unreliable

manner. R. Doc. 20446 at 1, 6. In particular, the Knauf Defendants stress that the lack of drywall evidence precluded a determination of how much KPT drywall was present in the properties, the same photographic materials was used to evidence KPT drywall in different properties, the newest photographs did not depict KPT drywall, and the cost documentation failed to demonstrate that remediation took place in either property. R. Doc. 20446 at 2. The Knauf Defendants allege that the Rapps provided virtually no evidence of KPT drywall until 2015, even though the homes were allegedly remediated in 2009. R. Doc. 20446 at 3.

Further, the Knauf Defendants argue that PTO 1(B), which requires plaintiffs to provide "photographs and/or video images of all drywall removed from the Affected Property during remediation," mandated compliance even though the Court had not yet issued the order when the remediation allegedly began. R. Doc. 20446 at 4. In support of this contention, Defendants point to the broad scope of PTO 1 and basic norms of evidence preservation, ultimately arguing that the Rapp's disposal of drywall, failure to take verifiable photographs of the product in the properties, and failure to label any of the boards in order to differentiate between samples in the two properties was a failure to follow even the most general evidence preservation procedure. R. Doc. 20446 at 5.

### III. LAW AND ANALYSIS

As the Special Master indicated in his Opinion, the Rapp's claim is governed by section IV.D.4 of the Settlement Agreement, which governs recovery for already remediated homes. That section provides:

> The Special Master and the Court will take into consideration, in determining whether to allow a claim or the amount of the claim, whether the owner has complied with MDL Pretrial Order 1B (if the claim is pending in the MDL) . . . Subject to review by the Special Master or the Court, the failure to preserve evidence as required by law will result in disallowance or reduction in the amount of the claim if the failure has been prejudicial to a determination of the claim.

5

The Court issued PTO 1 on June 16, 2009, before the Rapps began remediation on their properties. Thus, these requirements were in place before Plaintiffs removed the drywall from their properties.

The evidence demonstrates that Plaintiffs did not comply with the requirements of PTO 1. Plaintiffs disposed of the physical drywall, and do not have sufficient photographic evidence to demonstrate how much, if any, KPT drywall was in their home. Further, Plaintiffs have two separate properties, and are unable to prove how much drywall was replaced in either property. While the Court appreciates that Plaintiffs have submitted additional evidence, including testimony that KPT was the only drywall in their home, the Court finds such evidence is insufficient to establish product identification. Further, this evidence does not comply with the requirements of the Settlement Agreement, which set out prerequisites for Plaintiffs seeking to recover under the Agreement.

Thus, the Special Master's Order was based on a correct interpretation of PTO 1 and the requirements for recovering under the Settlement Agreement, and Plaintiffs' Objection and Motion for Reconsideration, R. Doc. 20300, should be denied.

## IV. CONCLUSION

**IT IS ORDERED** that Plaintiffs' Objection and Motion for Reconsideration, R. Doc. 20300, is hereby **DENIED**.

New Orleans, Louisiana this 24th day of August, 2017.

**ELDON E. FALLON**
United States District Judge