**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

**IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION**

**MDL NO. 2047**

**SECTION: L**

**JUDGE FALLON**
**MAG. JUDGE WILKINSON**

**THIS DOCUMENT RELATES TO:**
***ALL CASES***

*** * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * ***

**THE PLAINTIFFS' STEERING COMMITTEE'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' SUPPLEMENTAL MOTION ON JURISDICTION AND CLASS CERTIFICATION FOLLOWING *BRISTOL-MYERS SQUIBB CO. V. SUPERIOR COURT OF CALIFORNIA, SAN FRANCISCO COUNTY***

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... iii

I. INTRODUCTION ..... 1

II. FACTUAL AND PROCEDURAL BACKGROUND ..... 5

III. *BMS* IS A NARROW OPINION APPLIED TO A NARROW SET OF FACTS ..... 12

A. Defendants' Sweeping Interpretation of *BMS* is Misguided ..... 12

B. The *BMS* Opinion ..... 14

1. Factual and Procedural Background of *BMS* ..... 14

2. Assessing an "adequate link" when concerns of interstate federalism are present. ..... 16

3. The Supreme Court notes other factors that may have made the link adequate. ..... 18

C. The Implications of *BMS* ..... 19

1. *BMS* is limited to state court actions. ..... 19

2. The federal court/state court distinction is meaningful ..... 19

3. *BMS* did not overrule CAFA and Rule 23 ..... 22

IV. *BMS* HAS NO APPLICATION TO THESE CHINESE DRYWALL PROCEEDINGS ..... 26

A. This Court's Ruling on Jurisdiction Was Properly Decided, and *BMS* Did Not Alter Governing Law. ..... 26

B. *BMS* Had No Impact on MDLs. ..... 29

C. Dismissal of Claims Brought by, or on behalf of, Homeowners Outside of Their States of Residency Is Not Required. ..... 31

D. The Court's Prior Agency Analysis Was Correct, and *BMS* Does Not Apply to that Ruling....33

E. The Class Was, and Remains, Appropriately Certified. ....34

V. CONCLUSION....38

# TABLE OF AUTHORITIES

## Cases

*Ainsworth v. Moffett Engineering, Ltd.*,
716 F.3d 174 (5th Cir.) .......... 26, 27, 28

*Bean Dredging Corp. v. Dredge Technology Corp.*,
744 F.2d 1081 (5th Cir. 1984) .......... 27

*Bearry v. Beech Aircraft Corp.*,
818 F.2d 370 (5th Cir. 1987) .......... 26

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*,
137 S. Ct. 1773 (2017) .......... passim

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*,
1 Cal.5th 783 (2016) .......... 16

*Califano v. Yamasaki*,
442 U.S. 682 (1979) .......... 24, 31

*Coulter v. Sears, Roebuck & Co.*,
426 F.2d 1315 (5th Cir. 1970) .......... 27

*Caouette v. Bristol-Myers Squibb Co.*,
2012 WL 32833858 (N.D. Cal. Aug. 10, 2012) .......... 14, 22

*Daimler AG v. Bauman*,
571 U.S. __, 134 S. Ct. 746 (2014) .......... 15, 33, 34

*Great Falls Transfer & Storage Co. v. Pan Am. Petroleum Corp.*,
353 F.2d 348 (10th Cir. 1965) .......... 22

*Hanson v. Denckla*,
357 U.S. 235 (1958) .......... 16

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 (1984) .......... 11

*Horton v. USAA Cas. Ins. Co.*,
266 F.R.D. 360 (D. Ariz. 2009) .......... 24, 31

*Illinois v. Gates*,
462 U.S. 213 (1983) .......... 3

*In re Agent Orange Prod. Liab. Litig.*,
818 F.2d 145 (2d Cir. 1987)........................................................................................ 29

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
753 F.3d 521 (5th Cir. 2014) ................................................................................... 6, 8

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
742 F.3d 576 (5th Cir. 2014) ........................................................................................ 6

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
2017 WL 1476595 (E.D. La. Apr. 21, 2017)................................................................. 6

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
2014 WL 4809520 (E.D. La. Sept. 26, 2014)............................................................... 11

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
894 F. Supp. 2d 819 (E.D. La. 2012)............................................................. 6, 9, 32

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
626 F. Supp. 2d 1346 (J.P.M.L. 2009).................................................................. 6, 29

*In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*,
460 F.3d 1217 (9th Cir. 2006) ...................................................................................... 29

*In re Polyurethane Foam Antitrust Litig.*,
2015 WL 1639269 (N.D. Ohio Feb. 26, 2015)...................................................... 24, 31

*In re Telectronics Pacing Systems, Inc.*,
137 F. Supp. 2d 985 (S.D. Ohio 2001) .................................................................. 24, 31

*In re WellNx Mktg. & Sales Practices Litig.*,
2010 WL 3652457 (D. Mass. Sept. 15, 2010) ............................................................. 29

*Irving v. Owens-Corning Fiberglass Corp.*,
864 F.2d 383 (5th Cir.) ................................................................................................ 27

*J. McIntyre Machinery, Ltd. v. Nicastro*,
564 U.S. 873 (2011).............................................................................................. 20, 21

*Kerrigan's Estate v. Joseph E. Seagram & Sons, Inc.*,
199 F.2d 694 (3d Cir. 1952)........................................................................................ 22

*Kulko v. Superior Court of Cal., City and County of San Francisco*,
436 U.S. 84 (1978)....................................................................................................... 16

*Lisak v. Mercantile Bancorp, Inc.*,
834 F.2d 668 (7th Cir. 1987) ........................................................................................ 23

*Luv n' care, Ltd. v. Insta-Mix, Inc.*,
438 F.3d 465 (5th Cir. 2006) ........................................................................................ 27

*McKoy v. North Carolina*,
494 U.S. 433 (1990)......................................................................................................... 36

*Mississippi Publishing Corp. v. Murphree*,
326 U.S. 438 (1946)......................................................................................................... 23

*Mudd v. Yarbrough*,
786 F. Supp. 2d 1236 (E.D. Ky. 2011) ........................................................................ 23

*Nuovo Pignone, SpA v. Storman Asia M/V*,
310 F.3d 374 (5th Cir. 2002) ........................................................................................ 27

*Oswalt v. Scripto, Inc.*,
616 F.2d 191 (5th Cir. 1980) ........................................................................................ 27

*Paz v. Brush Engineered Materials, Inc.*,
445 F.3d 809 (5th Cir. 2006) ........................................................................................ 27

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985)......................................................................................................... 24

*Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*,
119 F.3d 935 (11th Cir. 1997) ...................................................................................... 23

*Ruston Gas Turbines, Inc. v. Donaldson Company, Inc.*,
9 F.3d 415 (5th Cir. 1993) ............................................................................................ 27

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010)............................................................................................ 20, 24, 25

*State Farm Fire & Cas. Co. v. Tashire*,
386 U.S. 523 (1967)......................................................................................................... 23

*Tanoh v. Dow Chem. Co.*,
561 F.3d 945 (9th Cir. 2009) ........................................................................................ 31

*U.S. Term Limits, Inc. v. Thornton*,
514 U.S. 779 (1995) ........ 21

*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980) ........ 16, 17

**Statutes**

15 U.S.C. § 22 ........ 23

18 U.S.C. §§ 1961 to 1968 ........ 23

28 U.S.C. § 1292(b) ........ 2

28 U.S.C § 1332(d) ........ 14, 15, 25

28 U.S.C. § 1335 ........ 22, 23

28 U.S.C. § 1397 ........ 23

28 U.S.C. §1407 ........ 4, 7, 29, 30, 32

28 U.S.C. § 2072 ........ 24

28 U.S.C. § 2361 ........ 23

Pub. L. No. 109-2, 119 Stat. 4 (2005) ........ 1

**Rules**

Fed. R. Bankr. P. 7004(d) ........ 23

Federal Rule of Civil Procedure 23 ........ passim

**Other Authorities**

S. Rep. No. 109-14 ........ 25, 26

*Erie, the Class Action Fairness Act, and Some Federalism Implications of Diversity Jurisdiction*,
48 Wm. & Mary L. Rev. 1247 (2007) ........ passim

*Protecting Federalism Interests After the Class Action Fairness Act of 2005: A Response to Professor Vairo*,
51 Wayne L. Rev. 1417 (2005) ........................................................................ 20, 21, 25

*The Judicial Panel on Multidistrict Litigation, Transferor Courts and Transferee Courts*,
78 F.R.D. 575 (1978) ........................................................................................................ 29

# I. INTRODUCTION

Defendants[1] Supplemental Motion on Jurisdiction and Class Certification Following *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County* ("*BMS*")[2] ("Supplemental Jurisdictional Motion") should be denied for the very simple and straightforward reason that the Supreme Court's opinion in *BMS* has no bearing on the jurisdictional issues in this consolidated multidistrict litigation that is pending in federal court on the basis of CAFA and Rule 23.[3] The Supreme Court in *BMS* made clear that its decision was limited to actions in state court, where concerns of interstate federalism impacted on the jurisdictional analysis, and that the underlying cases in *BMS* did not involve class actions or other mass tort actions consolidated pursuant to any federal rules or statutes.[4] Moreover, the issues of agency and class certification raised by Defendants are not discussed in *BMS*, but yet they make up two-thirds of Defendants' argument in support of their Supplemental Jurisdictional Motion.

Defendants' motion appears to be nothing more than an attempt to use recent Supreme Court precedent to reargue points that the Court and the Fifth Circuit already have thoroughly considered and rejected (an impermissible motion to reconsider). Of course, as the Court is well aware, Defendants filed the Supplemental Jurisdictional Motion while simultaneously seeking

---

[1] Moving Defendants are CNBM Company ("CNBM"), BNBM (Group) Co. Ltd. ("BNBM Group"), and BNBM PLC ("BNBM") (collectively, "Defendants").

[2] 137 S. Ct. 1773 (2017).

[3] Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (2005) ("CAFA"); Federal Rule of Civil Procedure 23 ("Rule 23").

[4] *BMS*, 137 S. Ct. at 1780 (discussing coercive power of state and interstate federalism), 1778 (discussing filing of 8 separate complaints for over 600 plaintiffs), and 1789 n.4 (Justice Sotomayor noting in dissent that the opinion does not address class actions).

permission to appeal the Court's prior jurisdiction order[5] in the Fifth Circuit,[6] which created a situation where overlapping issues would potentially be adjudicated in the District Court and the Court of Appeals at the same time. As a result, the Court vacated its 1292(b) order,[7] and Defendants have indicated they are considering a motion to reconsider that order.[8]

Defendants' *modus operandi* throughout this litigation has been to delay and complicate these proceedings in the hopes of capitalizing on dispirited Plaintiff homeowners, who have had no relief for over eight years, by making it so difficult for them that Defendants could settle the case for a fraction of the actual damages they have caused. Here, *BMS* does not provide Defendants an out from this litigation.

A reading of Defendants' Memorandum in Support of their Supplemental Jurisdictional Motion ("Defs.' Mem.") would lead one to believe that the Supreme Court's opinion in *BMS* was a wide-ranging landmark decision that, among other things, rewrote the power of the federal courts to hear particular cases, removed Congress's authority to grant jurisdiction to federal courts over specific types of cases, called into question the constitutionality of numerous federal statutes, recast well-settled agency law, set a standard for the size and scope of permissible classes under Rule 23, and exempted foreign corporations that are not domiciled in the United States from being subjected to any collective action altogether. But, of course, the Supreme

---

[5] Rec. Doc. 20739.

[6] *See* Petition for Permission to Appeal Pursuant to 28 U.S.C. § 1292(b), Fifth Circuit Docket 17-90027 [Rec. Doc. 20898-2].

[7] Rec. Doc. 20927.

[8] *See* Letter from E. Shumsky to Fifth Circuit dated 8/25/2017 (attached hereto as Exhibit "A").

Court's ruling in *BMS* did no such thing. That decision is a relatively short and most certainly narrow opinion that applied well-settled jurisdictional principles to a narrow set of facts and as such, was able to garner support by an 8-1 majority of the Supreme Court.

As it relates to Defendants' Supplemental Jurisdictional Motion, a straightforward reading of *BMS* illustrates its inapplicability to this case. The Supreme Court stated that (1) "settled principles regarding specific jurisdiction control the case"; (2) the "straightforward application in th[e] *BMS* case of settled principles of personal jurisdiction will not result in the parade of horribles that respondents conjure up" – a parade which mirrors the arguments advanced by Defendants here; and (3) the "decision concerns the due process limits on the exercise of specific jurisdiction ***by a State***, [thereby leaving] open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a ***federal court***."[9] Notably, *BMS* did not involve allegations of agency, and it was not a class action. Therefore, the *BMS* opinion contains no language regarding agency (except for a suggestion that the case could have been decided differently had plaintiffs alleged that Bristol-Myers was derivatively liable for their California resident co-defendants' conduct) and contains a specific statement by the dissent that the opinion did not address the impact on class actions.[10]

---

[9] *BMS*, 137 S. Ct. 1783-84 (emphasis added).

[10] This Court need not rely solely on the dissent for the disclaimer about class actions. The Supreme Court has long followed a rule that it will not determine questions "not pressed or passed upon below," either as a jurisdictional restriction or a prudential matter, because the "framing of broad rules, seemingly sensible on one set of facts, which may prove ill-considered in other circumstances" and restricting its decisions to narrow, necessary rulings promotes "respect for the procedures by which our decisions are rendered, as well as confidence in the stability of prior decisions." *Illinois v. Gates*, 462 U.S. 213, 222, 224 (1983). Because class actions were not at issue in *BMS*, the Court did not address it, even in *dicta*, as it was "not pressed or passed upon below."

Plainly, nothing in *BMS* changed the governing Fifth Circuit law that led to the conclusion that the exercise of jurisdiction over the Defendants is proper and that this case meets the standard under Rule 23 for class certification. Therefore, there is no reason to revisit any of this Court's prior analyses. In addition, *BMS* says nothing about cases that are coordinated and consolidated as multidistrict litigation pursuant to 28 U.S.C. §1407 ("MDL"). In those circumstances, the transferee court has jurisdiction coextensive with each respective transferor court. Furthermore, transferee judges are given wide latitude in managing the proceedings to effectuate the purposes of the MDL statute.

Defendants' argument that the new rules governing agency and class certification are the "clear" statements that logically must flow from *BMS* lack any grounding in the language of *BMS* or any other Supreme Court jurisprudence regarding personal jurisdiction, and their failure to cite any such authority is telling. In contrast, the Supreme Court's reasoning in *BMS* – predicated not on individual liberty concerns but instead on interstate federalism – would explain why the opinion's applicability would be limited to state court cases where there is no link at all between the forum state and the claims by plaintiff against the defendant. This is consistent with numerous recent Supreme Court decisions that have made clear that as separate sovereigns in our federal system, there are cases that will properly be heard in federal court, which could not be heard in state court. Tellingly, Bristol-Myers itself understood this federal court/state court distinction when it originally removed the cases that formed the basis of the *BMS* decision to federal court under CAFA before ultimately moving to dismiss them on personal jurisdiction grounds after the cases had been remanded back to state court.

In addition, there is every reason to believe that if *BMS* were a harbinger of the more restrictive reading of jurisdiction that Defendants claim, it would still not apply to cases where jurisdiction is predicated on federal statutes or rules designed by Congress to move cases from state to federal court or to permit the consolidation of claims including those of residents of multiple states. This is particularly true when the defendant is a foreign corporation, such as is the case here, where there is no "home" state in which all plaintiffs could band together and sue in one forum. Furthermore, even if Defendants were correct in some respects, the Supreme Court in *BMS* indicated that an agent/principal relationship would be exactly the kind of connection that could create the adequate link necessary to support the exercise of jurisdiction over the principal.

As more fully explained below, Defendants' Supplemental Jurisdictional Motion should be denied.

## II. FACTUAL AND PROCEDURAL BACKGROUND

After the devastation of Hurricanes Katrina and Rita along the Gulf Coast, and as a result of a housing boom in this country, there was a severe shortage of drywall available domestically. This created an opportunity for foreign manufacturers to sell their drywall and related building materials to American customers. In response to the increased demand for drywall, beginning in the fall of 2005 and continuing through 2008, hundreds of millions of square feet of gypsum wallboard manufactured in China ("Chinese Drywall") were exported to the United States, with the intention and expectation that the drywall would be installed in homes, primarily along the East Coast and in the Gulf Coast States. Taishan Gypsum Co., Ltd. ("TG") and its wholly-owned subsidiary and alter ego Tai'an Taishan Plasterboard Co., Ltd. ("TTP") (collectively,

"Taishan") shipped over 87 million square feet of their Chinese Drywall to customers in the U.S. during this timeframe.[11]

This Chinese Drywall MDL has already been the subject of two opinions in which the Fifth Circuit found this Court appropriately exercised specific jurisdiction over Taishan.[12] In addition, on April 21, 2017, this Court issued a 100-page opinion in which it found that Taishan "was an agent of BNBM under Florida and Virginia law, such that Taishan's contacts in Florida and Virginia are imputed to BNBM."[13] This Court further found that CNBM, BNBM Group, and BNBM were "part of a single business enterprise with Taishan" under Louisiana law, such that Taishan's contacts in Louisiana may be imputed to Defendants and the Court has jurisdiction over Defendants "in relation to Plaintiffs' claims based on Louisiana law."[14]

This MDL was formed more than eight years ago on June 15, 2009.[15] The litigation arises out of allegations that defective Chinese Drywall manufactured by Taishan and BNBM caused extensive property damage and also bodily injuries to thousands of Plaintiffs residing

---

[11] *See, generally, In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 894 F. Supp. 2d 819 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014) & 753 F.3d 521 (5th Cir. 2014); *see also* Summary Chart of Taishan Sales in U.S. [Rec. Doc. 14843-3] (showing shipments to California, Florida, Louisiana, New York, North Carolina, Virginia, and states unknown according to Taishan's Manufacturer Profile Forms, invoices, and deposition testimony) (attached hereto as Exhibit "B").

[12] *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 742 F.3d 576 (5th Cir. 2014); *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 753 F.3d 521 (5th Cir. 2014). "Taishan" refers to Taishan Gypsum Company, Limited and its wholly-owned subsidiary and alter ego Tai'an Taishan Plasterboard Company, Limited.

[13] *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2017 WL 1476595, *46 (E.D. La. Apr. 21, 2017).

[14] *Id.*

[15] *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 626 F. Supp. 2d 1346 (J.P.M.L. 2009).

primarily in Gulf States such as Florida, Louisiana, Alabama, Mississippi, Texas, Georgia, North Carolina, South Carolina, and also in Virginia. In deciding where to transfer the multitude of Chinese Drywall actions pending in federal court pursuant to 28 U.S.C. § 1407, the Judicial Panel on Multidistrict Litigation recognized that "[n]o district is a clear focal point of this litigation. The common manufacturing defendant and its affiliates are foreign entities without a major presence in any of the suggested transferee districts. Most actions also name local entities, such as builders and suppliers, as defendants. All of the suggested districts, particularly those in the southeastern region, have a nexus to the litigation through allegedly affected houses built with the drywall at issue."[16] Ultimately, the Panel determined that "[c]entralization in this district permits the Panel to effect the Section 1407 assignment to a judge who has extensive experience in multidistrict litigation as well as the ability and temperament to steer this complex litigation on a steady and expeditious course."[17] Further, the Panel ruled, "[c]entralization under Section 1407 will eliminate duplicative discovery, including any discovery on international parties; prevent inconsistent pretrial rulings, *particularly those with respect to class certification issues*; and conserve the resources of the parties, their counsel and the judiciary."[18]

One of the original actions transferred to this MDL Court was *The Mitchell Co., Inc. v. Knauf Gips KG, et al.*, C.A. No. 3:09-89 (N.D. Fla.). As the Fifth Circuit previously recognized:

> The Mitchell Company ("Mitchell") is an Alabama construction company that has built homes and apartments in Alabama, Mississippi, Louisiana, Georgia, and Florida. On March 6, 2009, Mitchell sued TG, among others, in the United States District

[16] *Id.* at 1347.

[17] *Id.*

[18] *Id*. (emphasis added).

> Court for the Northern District of Florida. Mitchell sued on behalf of itself and a class "composed of all persons and entities" in Alabama, Mississippi, Louisiana, Georgia, Texas, and Florida who "constructed an improvement to real estate using drywall manufactured or distributed by Defendants."[19]

In affirming this Court's denial of Taishan's motion to dismiss *Mitchell* for lack of jurisdiction, the Fifth Circuit rejected Defendants' argument that plaintiffs must "prove that the drywall it installed can be traced directly to Taishan's Florida related activities."[20] The Fifth Circuit noted that, in any event, it was more likely than not that Taishan's drywall "ended up in Mitchell's hands and form[ed] the basis of this action" through a series of transactions that began with a purchase of Taishan's drywall by a Pennsylvania company (Devon), through a Chinese trading company, for delivery to Pensacola, Florida, and subsequent sales to various wholesalers and distributors in Florida.[21]

Similar to the circuitous path of Taishan's drywall through the stream of commerce in *Mitchell*, in *Germano*,[22] Taishan's drywall ended up in Plaintiffs' homes in Virginia after a Virginia distributor (Venture Supply) purchased Taishan's drywall (which was shipped from China to Virginia and also from China to New Jersey) and then sold it to installers, "which in turn sold the drywall to subcontractors, who allegedly used it to build homes in Virginia."[23] The

---

[19] *Chinese Drywall*, 753 F.3d at 527.

[20] *Id*. at 543.

[21] *Id*. at 537, 543.

[22] *Germano* was originally filed in federal court in Virginia as a class action on behalf of Virginia plaintiffs only, but was later expanded to a nationwide class after being transferred to the MDL. *Id*. at 582 (referring to *Germano v. Taishan Gypsum Co., Ltd.*, Case No. 09-6687).

[23] *Id.*

Fifth Circuit, in affirming jurisdiction over Taishan in *Germano*, noted that Venture Supply also "shipped and sold [Taishan]'s drywall to customers in at least three states other than Virginia, including New York, Georgia, Florida, and possibly Alabama."[24] In addition, "Venture Supply learned that containers of TG drywall originally destined for it in Virginia were actually shipped and discharged to New Orleans, Louisiana."[25]

In finding jurisdiction over Taishan in Virginia, this Court rejected Taishan's strict interpretation of the "arise from" or "relate to" prong of the test for personal jurisdiction, which Taishan contended could "not be satisfied unless plaintiffs prove that the drywall they allege caused their damages is traceable to the drywall that TG sold to Venture, and that the mere presence of TG's drywall in plaintiffs' homes is insufficient."[26] The Court also considered Taishan's argument that "because the *Germano* class is a nationwide class, any non-Virginia plaintiffs' claims against TG would not 'arise from' or 'relate to' TG's minimum contacts in Virginia,"[27] and held that "the solution suggested by the PSC in response to this argument—severing and transferring non-Virginia cases [not dismissing them]—would resolve TG's dispute."[28]

---

[24] *Id.* at 581-82.

[25] *Chinese Drywall*, 894 F. Supp. 2d at 898.

[26] *Id.* at 857-58.

[27] *Id.* at 858.

[28] *Id.* While implementing the solution proposed by the PSC would moot Defendants' argument, such action is not necessary because, as discussed *infra*, the federal district court has jurisdiction over multi-state classes under Federal Rule 23 and CAFA. In addition, even under Defendants' broad interpretation of *BMS*, jurisdiction would still be proper over non-Virginia Plaintiffs because their drywall flowed through the Virginia supplier. *See BMS*, 137 S. Ct. at 1782 (in *BMS*, all of the conduct giving rise to the non-resident claims occurred outside of the forum state), 1783 (not alleged in *BMS* that defendant engaged in relevant acts in the forum with a resident of the forum).

Jurisdiction over Taishan in Louisiana has also been firmly established. In *Gross*, which was filed as a nationwide class against indeterminate manufacturers of Chinese Drywall, including Taishan and BNBM, based on an alternative liability theory, this Court rejected Taishan's narrow interpretation of the requirement that '"the litigation result[] from alleged injuries that arise out of or relate to' the foreign defendant's minimum contacts with the forum."[29] Taishan had argued that because Plaintiffs in *Gross* could not identify the specific manufacturer of the drywall that caused their injuries, Plaintiffs could not "show that their cause of action arose out of or related to Taishan's contacts with Louisiana."[30] Taishan further contended that "even if the Louisiana plaintiffs can demonstrate a sufficient nexus between Taishan's activities in Louisiana and their damages from drywall, the non-Louisiana plaintiffs cannot demonstrate the same since they do not reside in Louisiana or claim any injury from drywall in Louisiana."[31]

After carefully considering arguments on both sides and the evidence of record, this Court held that "Taishan manufactured, exported, marketed and/or sold its drywall to Louisiana customers or to customers doing business in Louisiana," and Taishan's drywall ended up "in the homes of Louisiana Plaintiffs."[32] The Court further held there is "no law which supports Taishan's narrow reading of the 'arise from' and 'relate to' requirement for specific personal

---

[29] *Id.* at 901.

[30] *Id.* at 901-02.

[31] *Id*. at 902.

[32] *Id*.

jurisdiction."[33] "Instead, the Court [found] the plain language 'arise from' and 'relate to' as suggesting a broader interpretation of the required nexus."[34] Finally, this Court held that "the PSC's suggestion to sever and transfer [not dismiss] any non-Louisiana plaintiffs from *Gross*" would resolve "Taishan's argument pertaining to non-Louisiana plaintiffs."[35]

Accordingly, Defendants' attempt to use *BMS* as a means to unbundle and *dismiss* all non-resident Plaintiffs in each of the Omni complaints – without a corresponding agreement that the statutes of limitations have been tolled, that the default judgments against Defendants continue to be valid, and that jurisdiction over these Defendants lies in each of the Plaintiffs' home states – should be rejected by the Court. First, the *Amorin* class was certified by the Court in a detailed and well-considered opinion analyzing each requirement of Rule 23(a)(1)-(4) and (b)(3),[36] while Defendants strategically sat on the sidelines of the litigation and refused to participate, having blessed Taishan's decision to flee the jurisdiction after losing twice in the Fifth Circuit on their jurisdictional motions. These Defendants have already tried to decertify the *Amorin* class, with no success, and most recently the Court reiterated that "in light of the complex nature of this case and extensive history of the litigation, a class action is the superior

[33] *Id*., citing, *e.g.*, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 n.10 (1984).

[34] *Id*.

[35] *Id*. Again, this solution would moot Defendants' argument and is one possible course of action, however, it is not necessary for jurisdictional purposes because, as discussed *infra*, the federal district court has jurisdiction over multi-state classes under Federal Rule 23 and CAFA. Furthermore, the facts pertaining to the purchase and multistate distribution of the drywall at issue here distinguishes this case greatly from the facts of *BMS*. *See BMS*, 137 S. Ct. at 1782 (in *BMS*, all of the conduct giving rise to the non-resident claims occurred outside of the forum state), 1783 (not alleged in *BMS* that defendant engaged in relevant acts in the forum with a resident of the forum).

[36] *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2014 WL 4809520 (E.D. La. Sept. 26, 2014).

mechanism for resolving the[] [Plaintiffs'] claims."[37] Therefore, there is nothing to "unbundle" or remand in *Amorin.* With regard to the *Brooke* Plaintiffs in Omni XX, *BMS* does not support Defendants' argument that non-resident Plaintiffs need to be dismissed. Again, without a stipulation that statutes of limitations have been tolled for these Plaintiffs based on the filing of class actions on their behalf in 2009, Defendants' motion to dismiss is nothing more than a misguided attempt on their part to rid themselves of this litigation. As suggested by the PSC in its End Game proposal,[38] after discovery takes place and common issues are adjudicated by the Court (*e.g.*, product identification, square footage, formula for determining remediation damages, etc.), the *Brooke* cases should be remanded based on sound MDL policy.

Finally, Defendants' effort to reverse this Court's findings that Taishan was an agent of BNBM under Florida and Virginia law based on *BMS* has no merit and should be rejected.

## III. ***BMS* IS A NARROW OPINION APPLIED TO A NARROW SET OF FACTS**

### A. **Defendants' Sweeping Interpretation of *BMS* is Misguided**

Defendants make a series of broad and extreme statements concerning the holding of the Supreme Court's opinion in *BMS*, all of which are inaccurate:

- the *BMS* "decision makes ***absolutely clear*** that the Court ***must*** dismiss out-of-state plaintiffs, dismiss BNBM from the Florida and Virginia Actions, and decertify the class;"[39]

---

[37] Order & Reasons denying Defendants' 1292(b) motions to certify the Court's Class Damages and Decertification Orders for interlocutory appeal, at 13 [Rec. Doc. 20910].

[38] Rec. Doc. 20913.

[39] Defs.' Mem. at 1 (emphasis added).

- "a plaintiff ***must*** show that his ***injuries resulted from the defendant's contact*** with the state in which he filed suit;"[40]

- "It is now ***abundantly clear*** that these [CDW] multi-state complaints are impermissible;"[41]

- the *BMS* decision "clarified any lingering uncertainty regarding the scope of the agency inquiry;"[42]

- the *BMS* decision requires a "more detailed jurisdictional showing;"[43] and

- "[T]he upshot of [Bristol-Myers] is that plaintiffs cannot join their claims together and sue a defendant in a State in which only some of them have been injured."[44]

There is no support for such sweeping and categorical assertions.

By its own express statement, the Supreme Court in *BMS* asserted that it was doing nothing more than applying "settled principles regarding specific jurisdiction."[45] In a relatively short opinion that garnered a significant 8-1 majority, the Supreme Court did not claim to make sweeping changes to existing law or to clarify previously unresolved legal issues that were hotly

---

[40] Defs.' Mem. at 2 (emphasis added). The Supreme Court never made such a statement. Instead, the Supreme Court reiterated the rule that there needed to be an "adequate link adequate link between the State and the nonresidents' claims." *BMS* is a case where the adequacy of the link is being assessed in the context of interstate federalism concerns and it was found that, at least in *BMS*, no such link existed. 137 S. Ct. at 1781.

[41] Defs.' Mem. at 8 (emphasis added). *BMS* does not address class actions. *See BMS*, 137 S. Ct. at 1789 n.4.

[42] Defs.' Mem. at 10. *BMS* did not discuss agency other than to say "[n]or is it alleged that *BMS* is derivatively liable for McKesson's conduct in California" when suggesting such allegation could lead to a different result. *BMS*, 137 S. Ct. at 1783.

[43] Defs.' Mem. at 10. The Supreme Court in *BMS* consistently stated that it was applying well-settled jurisdictional principles.

[44] Defs.' Mem. at 11 (quoting dissent by Justice Sotomayor).

[45] *See BMS*, 137 S. Ct. at 1781 (language from Justice Sotomayor's dissent explains the parade of horribles that the majority said would not occur).

contested. Such near unanimity and explicit statements downplaying the significance of their findings suggests that the opinion was, in fact, based on a narrow and relatively uncontroversial proposition which should be applied as such.

## B. The *BMS* Opinion

### 1. Factual and Procedural Background of *BMS*

*BMS* was a unique case with a narrow set of unique facts in terms of the exercise of personal jurisdiction. *BMS* involved eight separate complaints filed in California state court asserting claims by more than 600 plaintiffs – 86 were residents of California and 592 were residents of 33 other States – against Bristol-Myers Squibb Co. ("Bristol-Myers") based on injuries allegedly caused by Plavix, a drug manufactured by Bristol-Myers.[46] In these eight separate complaints, plaintiffs asserted 13 claims under California law; no other state's law was implicated.[47] These claims were not filed as class actions.[48]

Initially, Bristol-Myers sought to remove the case to ***federal court in California*** arguing, among other things, that, because they are essentially the same case, the separate complaints should be aggregated and considered a "mass action" under CAFA because they contain claims of more than 100 plaintiffs.[49] In fact, Bristol-Myers argued that the plaintiffs had only split up the cases to avoid federal jurisdiction.[50] The Northern District of California remanded the case

---

[46] *Id*. at 1778.

[47] *Id*.

[48] *Id*.

[49] *See Caouette v. Bristol-Myers Squibb Co*., 2012 WL 32833858, at *7 (N.D. Cal. Aug. 10, 2012); *see also* 28 U.S.C. § 1332(d)(11)(A) (discussing "mass actions").

[50] *See id*.

back to state court predominantly because, under CAFA, "'the term 'mass action' shall not include any civil action in which . . . the claims are joined upon motion of a defendant.'"[51]

It was only after remand to California state court that Bristol-Myers moved to quash service of summons on the nonresident plaintiffs' claims asserting a lack of personal jurisdiction.[52] The California state court originally denied the motion to quash finding that Bristol-Myers was subject to general jurisdiction in California for the Plavix claims but was forced to reconsider that finding after the Supreme Court's decision on general jurisdiction in *Daimler AG v. Bauman*, 571 U.S. __, 134 S. Ct. 746 (2014).[53] When revisiting the matter, the California state court decided that general jurisdiction over Bristol-Myers was lacking but found that "the California courts had specific jurisdiction over the nonresidents' claims against [Bristol-Myers]."[54]

In a split decision, the California Supreme Court affirmed the exercise of personal jurisdiction applying a novel "sliding scale approach to specific jurisdiction" that "permitted the exercise of specific jurisdiction 'based on a less direct connection between [Bristol-Myer's] forum activities and plaintiffs' claims than might otherwise be required.'"[55] The dissent in the California Supreme Court opinion "accused the majority of 'expand[ing] specific jurisdiction to

---

[51] *See id*. at *8; *see also* 28 U.S.C. § 1332(d)(11)(B)(ii)(II).

[52] *See BMS*, 137 S. Ct. at 1778.

[53] *See id*.

[54] *See id*.

[55] *Id*. at 1778-79.

the point that, for a large category of defendants, it becomes indistinguishable from general jurisdiction.'"[56]

**2. Assessing an "adequate link" when concerns of interstate federalism are present.**

At the outset of the *BMS* opinion, the Supreme Court restated the principle that "a court must consider a variety of interests" in assessing whether personal jurisdiction exists including "'the interests of the forum State and of the plaintiff in proceeding with the cause in the plaintiff's forum of choice.'"[57] However, *BMS* continues, the "'primary concern' is 'the burden on the defendant' and "[a]ssessing this burden obviously requires a court to consider the practical problems resulting from litigating in the forum, but it also encompasses ***the more abstract matter of submitting to the coercive power of a State that may have little legitimate interest in the claims in question***."[58] This second, "more abstract matter" arises from the sovereign power of each state particularly in relation to its sister states – *i.e.*, the principle of interstate federalism.[59] There are a limited and narrow set of circumstances where this "federalism interest may be decisive."[60]

---

[56] *Id*. at 1779 (quoting *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty*., 1 Cal.5th 783, 806, 206 Cal.Rptr.3d 636, 377 P.3d 874 (2016) (alteration in original)).

[57] *Id*. at 1780 (quoting *Kulko v. Superior Court of Cal., City and County of San Francisco*, 436 U.S. 84, 92 (1978)).

[58] *Id*. (emphasis added).

[59] *See id*.; *see also Hanson v. Denckla*, 357 U.S. 235, 251 (1958) (personal jurisdiction restrictions "are a consequence of territorial limitations on the power of the respective States."); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293 (1980) ("[T]he States retain many essential attributes of sovereignty, including, in particular, the sovereign power to try causes in their courts. The sovereignty of each State . . . implie[s] a limitation on the sovereignty of all its sister States.").

[60] *Id*.

The Supreme Court makes clear that *BMS* is a case that fits into this narrow jurisdictional box. It is undisputable that fairness and geographical burden were not issues for Bristol-Myers as it is a large multinational corporation that was required to litigate the matter in California state court against the remaining California resident plaintiffs regardless of the outcome of the *BMS* jurisdiction issue.[61] But, as the Supreme Court makes clear, even when fairness and convenience are not implicated, "'the Due Process Clause, ***acting as an instrument of interstate federalism***, may sometimes act to divest the State of its power to render a valid judgment.'"[62]

With this backdrop, the Supreme Court moved to its criticism of the California approach, which it clearly found overreaching. There, "[t]he State Supreme Court found that specific jurisdiction was present without identifying any adequate link between the state and the nonresidents' claims."[63] The Supreme Court rejected the "sliding scale":

> [t]he California Supreme Court's 'sliding scale approach' is difficult to square with our precedents. Under the California approach, the strength of the requisite connection between the forum and the specific claims at issue is relaxed if the defendant has extensive forum contacts that are unrelated to those claims. Our cases provide no support for this approach, which ***resembles a loose and spurious form of general jurisdiction***. For specific jurisdiction, a defendant's general connections with the forum are not enough.[64]

---

[61] *Id*. at 1777-78 (discussing size of Bristol-Myers and that Bristol-Myers moved to dismiss only claims of the nonresident plaintiffs), 1784-85 (discussing size and scope of Bristol-Myers' operations), 1788 (dissent stating that "the majority appears to concede that this is not, at bottom, a case about fairness but instead a case about power").

[62] *Id*. at 1780-81 (quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 294 (emphasis added)).

[63] *Id*. at 1781.

[64] *Id*.

The Supreme Court found that no adequate link existed between the forum and the claims of the nonresident plaintiffs when "the nonresidents were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California."[65] It wasn't enough in that circumstance (when interstate federalism concerns were implicated), for the claims to simply be related to or identical to the claims of the California residents; there had to be something more.

**3. The Supreme Court notes other factors that may have made the link adequate.**

There were several comments in the *BMS* opinion that suggest an adequate link could have been established, even for those nonresidents' claims, if other facts were present. For example, situations where "all the conduct giving rise to the nonresidents' claims" did not occur elsewhere,[66] where the defendant is derivatively liable for another's conduct in the forum state,[67] or where the defendant engaged in relevant acts together with a resident of the forum state.[68] The key is whether there was a sufficient enough "link between the State and the nonresidents' claims" to permit the State to exercise its sovereign authority.[69]

---

[65] *Id*.

[66] *Id*. at 1782.

[67] *Id*. at 1783 ("Nor is it alleged that [Bristol-Myers] is derivatively liable for McKesson's conduct in California.").

[68] *Id*. ("[I]t is not alleged that [Bristol-Myers] engaged in relevant acts together with McKesson in California.").

[69] *Id*. at 1781.

## C. The Implications of *BMS*

### 1. *BMS* is limited to state court actions.

By its own terms, *BMS* is limited to actions brought in state court.[70] After finding specific jurisdiction did not exist, the Supreme Court made clear that the "parade of horribles that respondents conjure[d] up" – the very things that Defendants here now claim the opinion stands for – "will not result."[71] Indeed, the Supreme Court then lists numerous State forums in which plaintiffs in the same factual circumstances as the *BMS* plaintiffs could bring their claims without running afoul of the reasoning of *BMS* before explicitly stating that the "parade of horribles" will not occur, in part, because the "decision concerns the due process limits on the exercise of specific jurisdiction by a ***State***," and as such the Supreme Court was "leav[ing] open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court."[72] That stance, therefore, establishes conclusively that *BMS* changes nothing that this Court decided in its previous jurisdictional order.

### 2. The federal court/state court distinction is meaningful.

Despite the Supreme Court's express admonition, Defendants glibly assert, with no reasoning or legal support, that "there is no principled basis for concluding a different due process analysis would apply in diversity actions (as opposed to cases invoking federal question jurisdiction)."[73] This, of course, ignores the possibility that there may be times where the same

---

[70] *Id*. at 1783-84.

[71] *Id*.

[72] *Id*.; *see also id*. at 1784 (Justice Sotomayor in dissent noting that the majority left open the possibility that the case may have been brought in federal court.).

[73] Defs.' Mem. at 8 n.7.

due process analysis could reach a different result depending upon the sovereign involved.[74] As the Supreme Court stated in *McIntyre*, "personal jurisdiction requires a forum-by-forum, or sovereign-by-sovereign, analysis."[75] Respect for the multiple sovereigns in our system have long been a concern and a reasoned analysis of *BMS* and recent Supreme Court caselaw shows that there is every reason to believe that the same due process analysis could mandate a different result in the narrow set of cases where concerns of interstate federalism are determinative.[76]

The Supreme Court has made very clear that personal jurisdiction between federal and state courts do not entirely overlap, and there are situations where a federal court may have jurisdiction to hear cases that a state court does not.[77] While Defendants here may wish to

---

[74] Contrary to Defendants' suggestion, *BMS* is not most reasonably read as a case creating a landmark new standard for due process under the 14th Amendment. The "touchstone of jurisdiction" has always been fairness, something that was not implicated in *BMS*. *See J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 884 (2011) ("*McIntyre*"). However, the individual liberty interest inherent in due process protects litigants from the unlawful exercise of power and the lawfulness of a judicial judgment "depends on whether the sovereign has authority to render it." *Id*. There are situations where, as a distinct sovereign, the federal courts may have authority to enter a judgment that a state court cannot. *See id*. It stands to reason when confronted with issues of the potential overreaching of a state court, the connection between the claims and the forum contacts may need to be more direct to be adequate to establish jurisdiction.

[75] *McIntyre*, 564 U.S. at 884.

[76] *See* David Marcus, *Erie, the Class Action Fairness Act, and Some Federalism Implications of Diversity Jurisdiction*, 48 Wm. & Mary L. Rev. 1247 (2007) (discussing the underpinnings of federal court diversity jurisdiction and federalism concerns) [hereafter "*Federalism Implications*"]; *see also* Heather Scribner, *Protecting Federalism Interests After the Class Action Fairness Act of 2005: A Response to Professor Vairo*, 51 Wayne L. Rev. 1417, 1418-38 (2005) (discussing historical backdrop of "horizontal" [*i.e.*, interstate] federalism concerns that led to CAFA) [hereafter "*Protecting Federalism*"].

[77] *See McIntyre*, 564 U.S. at 884 ("For jurisdiction, a litigant may have the requisite relationship with the United States Government but not with the government of any individual State."); *see also Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co*., 559 U.S. 393, 406-07 (2010) ("We must acknowledge the reality that keeping the federal-court door open to class actions that cannot proceed in state court will produce forum shopping.").

minimize the differences between federal and state courts, they are both separate forums (which may or may not distinguish them in most cases), but they are also distinct sovereigns (which is a significant distinction when faced with concerns of interstate federalism):

> Because the United States is a distinct sovereign, a defendant may in principle be subject to the jurisdiction of the courts of the United States but not of any particular State. This is consistent with the premises and unique genius of our Constitution. Ours is "a legal system unprecedented in form and design, establishing two orders of government, each with its own direct relationship, its own privity, its own set of mutual rights and obligations to the people who sustain it and are governed by it." *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 838, 115 S.Ct. 1842, 131 L.Ed.2d 881 (1995) (KENNEDY, J., concurring). For jurisdiction, a litigant may have the requisite relationship with the United States Government but not with the government of any individual State.[78]

When interstate federalism concerns are not present, the adequacy of the link between the forum and the conduct at issue may be measured less rigidly. This is consistent with federal statutes such as CAFA, which was passed by Congress with the express intent of moving class actions and mass actions filed in state courts with nationwide claims to the federal district court located within the territorial limits of the state.[79] The passage of CAFA was intended to deal, in part, with the very interstate federalism concerns that formed the basis of the Supreme Court's opinion in *BMS*.[80]

---

[78] *McIntyre*, 564 U.S. at 884.

[79] S. Rep. No. 109-14, at 24-27.

[80] *Id.*; *see also Federalism Implications*, 48 Wm. & Mary L. Rev. at 1290-1313 (discussing development of CAFA to address federalism concerns); *Protecting Federalism*, 51 Wayne L. Rev. at 1418-38 (discussing historical backdrop of "horizontal" [*i.e.*, interstate] federalism concerns that led to CAFA).

### 3. *BMS* did not overrule CAFA and Rule 23.

Even if *BMS* dictated the result in federal courts sitting in diversity in factual circumstances identical to those in *BMS*, although there is no sound reason why interstate federalism would be implicated in such a scenario, the *BMS* opinion did not address the consolidation of claims using legislatively created procedural mechanisms such as a class action rules or CAFA.[81] Indeed, there is no justification for applying such limits on specific personal jurisdiction to invalidate or limit claims that have been appropriately consolidated in federal court pursuant to federal statutes. It would appear as though Bristol-Myers itself understood the propriety of the exercise of such jurisdiction when that defendant attempted to remove the very cases that form the basis of the *BMS* opinion to the Northern District of California.[82] These are also the very statutes that form the basis for the Court's jurisdiction in this case.

There is no question that Congress has the power to expand federal court jurisdiction up to the limits imposed by Fifth Amendment due process. And Congress has done so repeatedly. For example, the Federal Interpleader Act[83] was enacted in 1936 to address the lack of personal jurisdiction in a single state court for state-based actions.[84] It has a low jurisdictional threshold

---

[81] *BMS*, 137 S. Ct. at 1789 n.4 (Justice Sotomayor notes in dissent that "[t]he Court today does not confront the question whether its opinion here would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there.").

[82] *See Caouette*, 2012 WL 32833858, at *7.

[83] 28 U.S.C. § 1335.

[84] *See, e.g.*, *Great Falls Transfer & Storage Co. v. Pan Am. Petroleum Corp.*, 353 F.2d 348, 350 (10th Cir. 1965) ("In determining those rights the federal court is, of course, bound by state law."); *Kerrigan's Estate v. Joseph E. Seagram & Sons, Inc.*, 199 F.2d 694, 697 (3d Cir. 1952) ("federal court applies state law").

of $500, 28 U.S.C. § 1335, requires only "minimal diversity," and broadly remedies the "problems posed by multiple claimants to a single fund." *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530 (1967). It further provides that an interpleader action "may be brought in the judicial district in which one or more of the claimants reside," 28 U.S.C. § 1397, thereby anticipating the exercise of personal jurisdiction over non-resident claimants even when the disputed corpus is not located there. A key feature provides for nationwide service of process.[85] When a federal statute provides for nationwide service of process, it becomes the statutory basis for the exercise of personal jurisdiction over a defendant,[86] *even if she lacks minimum contacts"* with the forum state.[87] A host of other federal statutes similarly establish broad personal jurisdiction regimes.[88] Even Defendants concede as much when they draw the distinction between a case where the federal court is sitting in diversity and a case involving a federal question.[89]

---

[85] 28 U.S.C. § 2361.

[86] *See, e.g.*, *Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438, 444-45 (1946) ("service of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served."); *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997); *Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d 668, 671 (7th Cir. 1987), *cert. denied*, 485 U.S. 1007 (1988).

[87] *Mudd v. Yarbrough*, 786 F. Supp. 2d 1236, 1242-43 (E.D. Ky. 2011) (emphasis added).

[88] *See, e.g.*, 18 U.S.C. §§ 1961 to 1968 (Racketeer Influenced and Corrupt Organizations Act); 15 U.S.C. § 22 (Clayton Act); Fed. R. Bankr. P. 7004(d) (Bankruptcy Code).

[89] Defs.' Mem. at 8 n.7.

Rule 23, passed pursuant to the Rules Enabling Act,[90] specifically contemplates claims being filed in federal court in which a plaintiff represents the interests of absent parties.[91] Rule 23 has been specifically found to be a valid exercise of Congressional authority[92] and jurisdiction over absent nonresident class members' claims has been found to be a valid exercise of a federal court's jurisdiction.[93]

Congressional mandates such as those contained in Rule 23 are not to be lightly dismissed. As Justice Scalia wrote in *Shady Grove*:

> We must acknowledge the reality that ***keeping the federal-court door open to class actions that cannot proceed in state court will produce forum shopping***. That is unacceptable when it comes as the consequence of judge-made rules created to fill supposed "gaps" in positive federal law. For where neither the Constitution, a treaty, nor a statute provides the rule of decision or authorizes a federal court to supply one, "state law must govern because there can be no other law." But divergence from state law, with the attendant consequence of forum shopping, is the inevitable (indeed, one might say the intended) result of a uniform system of federal procedure. ***Congress itself has created the possibility that the same case may follow a different course if filed in federal instead of state court***. The short of the matter is that a Federal Rule governing procedure is valid whether or not it alters the

---

[90] 28 U.S.C. § 2072; *see Shady Grove*, 559 U.S. at 408.

[91] *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 806-07 (1985).

[92] *See Shady Grove*, 559 U.S. at 408.

[93] *Federalism Implications*, 48 Wm. & Mary L. Rev. at 1283-84 (discussing acceptance of multistate class actions and mass tort actions); *see, e.g.*, *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) (holding no abuse of discretion to certify nationwide class in class action challenging procedure for hearings prior to recoupment of social security overpayments); *Horton v. USAA Cas. Ins. Co*., 266 F.R.D. 360, 364 (D. Ariz. 2009) ("The argument that a district court lacks jurisdiction to certify a nationwide class is frivolous, as a federal court applying Rule 23 of the Federal Rules of Civil Procedure may certify a nationwide class if the requirements for certification are satisfied."); *In re Polyurethane Foam Antitrust Litig.*, 2015 WL 1639269, at *1 (N.D. Ohio Feb. 26, 2015) (certifying nationwide class of direct purchasers); *In re Telectronics Pacing Systems, Inc*., 137 F. Supp. 2d 985, 1029 (S.D. Ohio 2001) (certifying nationwide products liability class).

> outcome of the case in a way that induces forum shopping. To hold otherwise would be to "disembowel either the Constitution's grant of power over federal procedure" or Congress's exercise of it.[94]

To presume that the Supreme Court severely limited the application of Rule 23 in *BMS*, in the face of the express statement that they did not, has no basis in law or reason.

The same is true for CAFA. CAFA specifically contemplates both "class actions" and "mass actions," which are consolidated actions containing claims by plaintiffs who are residents of the forum state, as well as claims by nonresidents.[95] In fact, the legislative history of CAFA shows that Congress was specifically attempting to address situations where state courts were certifying nationwide classes that intruded on the sovereignty of other states as co-equal sovereigns – *i.e.*, concerns of interstate federalism.[96] Congress sought to address these concerns of interstate federalism by moving the cases from state court to the local federal courts.[97] Congress "believe[d] that the federal courts are the appropriate forum to decide most interstate

---

[94] *Shady Grove*, 559 U.S. at 473-74 (internal citations omitted) (emphasis added).

[95] 28 U.S.C. §§ 1332(d)(4)(A)-(B) (class action "local controversy" exception applies when, among other things, greater than 2/3 of proposed class members are citizens of the forum state and "principal injuries" resulting from the alleged conduct of each defendant were incurred in the forum state); 28 U.S.C § 1332(d)(11)(B)(ii)(I) (mass action local controversy exception); *see also* S. Rep. No. 109-14, at 38 ("principal injuries" requirement would not be met "if the defendants engaged in conduct that could be alleged to have injured consumers throughout the country or broadly throughout several states").

[96] *See* S. Rep. No. 109-14, at 24-27 (Senate Report on "The Class Action Fairness Act of 2005" discussing federalism concerns); *Protecting Federalism*, 51 Wayne L. Rev. at 1418-38 (discussing "horizontal" [*i.e.*, interstate] federalism concerns that led to CAFA).

[97] *See* S. Rep. No. 109-14, at 25-27 (giving multiple examples of nationwide class actions certified in state court labelled by the Senate report as class action "abuse" and asserting that the federal forum was more appropriate for such actions); *see also Protecting Federalism*, 51 Wayne L. Rev. at 1418 ("CAFA was necessary, they say, because a 'technical glitch' in the diversity jurisdiction rules prevented these multi-state lawsuits from being removed to federal court. Now that the glitch is fixed, the federal courts can evenhandedly adjudicate nationwide class actions.").

class actions because these cases usually involve large amounts of money and many plaintiffs, and have significant implications for interstate commerce and national policy."[98]

## IV. *BMS* HAS NO APPLICATION TO THESE CHINESE DRYWALL PROCEEDINGS

### A. This Court's Ruling on Jurisdiction Was Properly Decided, and *BMS* Did Not Alter Governing Law.

Both this Court (with respect to all Defendants) and the Fifth Circuit (with respect to Taishan) have done a thorough specific jurisdiction analysis and determined that the exercise of such jurisdiction over these Defendants is proper. Nothing in *BMS* changed governing law. In cases involving a product sold or manufactured by a foreign defendant, the Fifth Circuit has consistently followed a "stream-of-commerce" approach to personal jurisdiction, under which the Constitutional requirements are met so long as the court "finds that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state." *Ainsworth v. Moffett Engineering, Ltd.*, 716 F.3d 174, 177 (5th Cir.), *cert. denied*, 134 S. Ct. 644 (2013), citing *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987). Pursuant to this test, "mere foreseeability or awareness [is] a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce," but "[t]he defendant's contacts must be more than 'random, fortuitous, or attenuated, or of the unilateral activity of another party or third person.'" *Id*. (citations omitted).

---

[98] S. Rep. No. 109-14, at 27; *see also Federalism Implications*, 48 Wm. & Mary L. Rev. at 1296-1313 (discussing interstate federalism and CAFA at length).

A long line of Fifth Circuit precedent dating back more than 40 years supports the exercise of jurisdiction over Taishan, whose contacts with Louisiana may be imputed to Defendants due to the existence of their single business enterprise.[99] And, most recently in *Ainsworth*, the Fifth Circuit affirmed the exercise of jurisdiction in Mississippi over Moffett Engineering, an Irish company that designed and manufactured forklifts for poultry-related uses,

---

[99] *See Bean Dredging Corp. v. Dredge Technology Corp.*, 744 F.2d 1081, 1082, 1085 (5th Cir. 1984) (sufficient contacts with Louisiana where Washington component manufacturer put steel castings into stream of commerce and two castings were incorporated into defective dredge in Louisiana, even though manufacturer did not know where castings would be used and "had no knowledge of the end-product into which the castings would be incorporated"; moreover, Washington company "never sold directly to a company in Louisiana" and "did not solicit business in Louisiana."); *Oswalt v. Scripto, Inc.*, 616 F.2d 191, 199-200 (5th Cir. 1980) (jurisdiction found where defendant delivered millions of lighters to U.S. distributer and "[t]here [wa]s nothing in th[e] record to indicate that [the manufacturer] attempted in any way to limit the states in which the lighters could be sold. To the contrary, the record show[ed] that [the manufacturer] had every reason to believe its product would be sold to a nation-wide market."); *Coulter v. Sears, Roebuck & Co.*, 426 F.2d 1315, 1318 (5th Cir. 1970) ("When a manufacturer voluntarily chooses to sell his product in a way in which it will be resold from dealer to dealer, transferred from hand to hand and transported from state to state, he cannot reasonably claim that he is surprised at being held to answer in *any* state for the damage the product causes. Nor can he deny the substantial interest of the injured person's state in providing a convenient forum for its citizens."); *Irving v. Owens-Corning Fiberglass Corp.*, 864 F.2d 383, 384 (5th Cir.), *cert. denied*, 493 U.S. 823 (1989) (reversing dismissal of action brought against Yugoslavian seller of asbestos who hired American broker to distribute its products in U.S., where there was no evidence to "indicate[] that [the Yugoslavian seller], which...solicited no asbestos sales directly in Texas, knew [the Texas plant] was the ultimate purchaser."); *Ruston Gas Turbines, Inc. v. Donaldson Company, Inc.*, 9 F.3d 415, 419, 421 (5th Cir. 1993) (Minnesota component manufacturer could be subject to jurisdiction in Texas where company had knowledge its parts would be shipped to Texas and that a Texas company would purchase the systems into which they were placed); *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 813 (5th Cir. 2006) (finding jurisdiction in Mississippi over non-resident defendant even though all relevant transactions "took place entirely in California and [defendant] conduct[ed] no activity whatsoever in Mississippi," since defendant was aware its product would be used in the forum); *Luv n' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470-71 (5th Cir. 2006) (finding jurisdiction in Louisiana over Colorado manufacturer that sold bottles to retailer, even though retailer purchased and picked up bottles in Colorado for delivery to distribution centers and their agreement never mentioned any distribution to Louisiana; fact that employees had no actual knowledge that product was destined for Louisiana did not shield manufacturer from jurisdiction where electronic purchase orders mentioned the forum state); *Nuovo Pignone, SpA v. Storman Asia M/V*, 310 F.3d 374, 379, 381 (5th Cir. 2002) (agreement to provide product that manufacturer knew was destined for forum state sufficient to confer jurisdiction even though defendant's obligations under contract were performed in Italy and defendant never contracted with any entity in the forum).

where Moffett entered into an exclusive sales and distribution agreement with an American company to sell its products "throughout the United States."[100] When 203 of those forklifts, amounting to only 1.55% of Moffett's U.S. sales, were sold to customers in Mississippi, the Fifth Circuit held that "even though Moffett did not have specific knowledge of sales by [its distributor] in Mississippi, it reasonably could have expected that such sales would be made, given the fact that Mississippi is the fourth largest poultry-producing state in the United States." *Id*. at 179.

Defendants' argument that non-resident Plaintiffs are not able to sue Taishan (or Defendants) in the jurisdictions where these Defendants targeted sales of their drywall if those jurisdictions are not the Plaintiffs' home state is the same argument Taishan made previously (which was rejected by this Court and the Fifth Circuit). Their contention lacks merit, and, moreover, would produce an unfair result. Under Defendants' view, an Alabama Plaintiff, for example, who was unfortunate enough to have Taishan's Chinese Drywall installed in his or her home after Taishan sold that drywall to a distributor in Louisiana, as opposed to a company in the Plaintiff's home state, may not recover in Louisiana (even though that Alabama Plaintiff's claim arose out of Taishan's contacts with Louisiana),[101] and would not be able to recover in Alabama either because Defendants would dispute jurisdiction there (even though they knew that Taishan's drywall would end up in Alabama). In addition, unlike the non-California plaintiffs in

[100] *Ainsworth*, 716 F.3d at 177.

[101] This factual distinction – where the Plaintiff's claim arises directly from the Defendants' forum contacts – renders *BMS* inapposite. *See BMS*, 137 S. Ct. at 1782 (in *BMS*, all of the conduct giving rise to the non-resident claims occurred outside of the forum state), 1783 (not alleged in *BMS* that defendant engaged in relevant acts in the forum with a resident of the forum).

*BMS*, this Chinese Drywall Alabama Plaintiff would have no ability to recover from these foreign Defendants, because they have no home state in this country for jurisdictional purposes. Meanwhile, Defendants knew that the drywall they sold to distributors in Virginia, Florida, and Louisiana would be installed throughout the United States where it was needed to rebuild homes.

**B. *BMS* Had No Impact on MDLs.**

This case is before this Court as an action properly consolidated and coordinated under 28 U.S.C. § 1407.[102] A transferee court is vested with the same jurisdiction as the transferor court and as the case moves forward, "[a] transferee judge exercises all the powers of a district judge in the transferee district under the Federal Rules of Civil Procedure and 'may make any pretrial order that the transferor court might have made in the absence of a transfer.'"[103] Noting that Congress may "enact legislation authorizing the federal courts to exercise nationwide personal jurisdiction," the Second Circuit stated that the MDL statute was just such a statute and that "'[t]ransfers under Section 1407 are simply not encumbered by considerations of in personam jurisdiction and venue."[104] Furthermore, once the case is transferred, it "is a special breed of complex litigation where the whole is bigger than the sum of its parts" and the transferee court "needs to have broad discretion to administer the proceeding as a whole."[105]

---

[102] *See Chinese Drywall*, 626 F. Supp. 2d 1346.

[103] *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d 1217, 1230-31 (9th Cir. 2006), quoting Stanley A. Weigel, *The Judicial Panel on Multidistrict Litigation, Transferor Courts and Transferee Courts*, 78 F.R.D. 575, 578-79 (1978); *see also In re WellNx Mktg. & Sales Practices Litig.*, 2010 WL 3652457, at *1-2 (D. Mass. Sept. 15, 2010) ("In an MDL case, personal jurisdiction is derived from the transferor court. . . . The MDL statute, 28 U.S.C. § 1407, 'authoriz[es] the federal courts to exercise nationwide personal jurisdiction.'") (internal citations omitted).

[104] *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 162 (2d Cir. 1987).

[105] *See PPA*, 460 F.3d at 1232.

This case is precisely the type of case that justifies the liberal grant of power to the transferee judge. As the Ninth Circuit noted:

> A district judge charged with the responsibility of "just and efficient conduct" of the multiplicity of actions in an MDL proceeding must have discretion to manage them that is commensurate with the task. The task is enormous, for the court must figure out a way to move thousands of cases toward resolution on the merits while at the same time respecting their individuality. The court is also confronted with substantial legal questions, such as, in MDL 1407, FDA issues, *Daubert* motions, questions of joinder and federal jurisdiction, class certification, timeliness of claims, and causation. For it all to work, multidistrict litigation assumes cooperation by counsel and macro-, rather than micro-, judicial management because otherwise, it would be an impossible task for a single district judge to accomplish. Coordination of so many parties and claims requires that a district court be given broad discretion to structure a procedural framework for moving the cases as a whole as well as individually, more so than in an action involving only a few parties and a handful of claims. As the Court of Appeals for the First Circuit put it, a district court must be able to "uncomplicate matters" and counsel must, for their part, "collaborate with the trial judge from the outset in fashioning workable programmatic procedures, and thereafter alert the court in a timely manner as operating experience points up infirmities warranting further judicial attention."[106]

*BMS* simply has no applicability to an MDL where jurisdiction is based upon the jurisdiction of the transferor court and the transferee judge is given wide latitude to implement procedures for moving the voluminous cases towards resolution.

---

[106] *Id*. at 1231-32.

### C. Dismissal of Claims Brought by, or on behalf of, Homeowners Outside of Their States of Residency Is Not Required.

Defendants' first argument – that the "Court must dismiss claims brought by homeowners outside of their states of residency" – ignores that the Omnibus Complaints at issue were filed in federal court based on CAFA jurisdiction and Rule 23, and most were filed directly in this MDL Court. As discussed at length above, CAFA was passed for the express purpose of placing class actions involving classes that comprise residents from multiple states out of state courts to the federal district court sitting in the same forum state.[107] In addition, these class actions (as opposed to mass actions brought under CAFA) were brought pursuant to Rule 23. Classes that include members from multiple states have long been approved, and *BMS* does nothing to alter the analysis in those cases.[108] When issues related to multiple states have arisen, it is a manageability issue, not a jurisdictional issue, and the Court here properly determined the issues were manageable.[109]

---

[107] *See, e.g., Tanoh v. Dow Chem. Co.*, 561 F.3d 945, 952 (9th Cir. 2009) ("Congress enacted CAFA in 2005 to 'assure fair and prompt recoveries for class members with legitimate claims; [to] restore the intent of the framers... by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction'").

[108] *See Federalism Implications*, 48 Wm. & Mary L. Rev. at 1283-84 (discussing acceptance of multistate class actions and mass tort actions); *see, e.g., Califano*, 442 U.S. at 702 (holding no abuse of discretion to certify nationwide class in class action challenging procedure for hearings prior to recoupment of social security overpayments); *Horton*, 266 F.R.D. at 364 ("The argument that a district court lacks jurisdiction to certify a nationwide class is frivolous, as a federal court applying Rule 23 of the Federal Rules of Civil Procedure may certify a nationwide class if the requirements for certification are satisfied."); *Polyurethane Foam*, 2015 WL 1639269, at *1 (certifying nationwide class of direct purchasers); *Telectronics*, 137 F. Supp. 2d at 1029 (certifying nationwide products liability class).

[109] *See Federalism Implications*, 48 Wm. & Mary L. Rev. at 1284 (discussing manageability issues related to classes involving the application of multiple state laws).

Defendants argue that "[*BMS*] is on all fours" without once mentioning that *BMS* was itself limited to state court actions, did not apply to class actions and did not involve CAFA or any other statute that permitted the consolidation of claims. As noted, Bristol-Myers itself saw this distinction and originally sought to remove the cases that led to the *BMS* opinion to the Northern District of California. It was only after the court found that CAFA jurisdiction did not exist and the cases were remanded back to state court that Bristol-Myers challenged personal jurisdiction.

Furthermore, Taishan raised this issue previously with the Court when challenging personal jurisdiction in the *Gross* complaint.[110] While finding that the claims at issue "related to" Taishan's contacts with the forum state, the Court went on to add that "Taishan's argument pertaining to non-Louisiana plaintiffs is resolved by the PSC's suggestion to sever and transfer any non-Louisiana plaintiffs from *Gross*."[111] This notion of severing cases and remanding back to local districts was no doubt premised upon this action's status as an MDL where these jurisdictional concerns are not implicated because the cases are only consolidated for pretrial purposes and then sent back to the district courts where they originated for trial.[112] This reasoning still holds – if the cases are uncoupled and sent back to the districts where they originated, Defendants' concerns are moot.

---

[110] *See Chinese Drywall*, 894 F. Supp. 2d at 902.

[111] *See id*. This Court made similar rulings with respect to the non-Virginia claimants in *Germano* (*id.* at 858) and the non-Florida claimants in *Mitchell* (*id*. at 889). Again, severing and remanding moots Defendants' argument, but is by no means required under jurisdictional jurisprudence.

[112] 28 U.S.C. § 1407.

Defendants' argument also raises another concern because these foreign corporations have no state of domicile, or "home state," in which all plaintiffs could join together to sue. Therefore, adopting Defendants' interpretation of *BMS* would require separate consolidated or class actions in each of over a dozen states where the defective drywall was sold and installed, if such states existed. If permitted at all, these numerous actions premised upon largely identical facts and law would occupy the judicial resources of over a dozen district court judges in the face of express Congressional intent to the contrary. Defendants' argument produces the inefficiency and potential for contradictory rulings that have long been abhorred and the MDL procedure was developed to avoid.

### D. The Court's Prior Agency Analysis Was Correct, and *BMS* Does Not Apply to that Ruling.

Defendants claim that "[*BMS*] clarified any lingering uncertainty regarding the scope of the agency inquiry."[113] However, there is no question that agency was *not* at issue in *BMS*, so Defendants' contention that it was game-changer is farfetched, and extrapolating *BMS* to create the narrowing of jurisdiction premised on an agency finding requires a series of significant analytical leaps that have no support in the language of the *BMS* opinion, a fact underscored by the lack of citation to the *BMS* opinion in this section of Defendants' Memorandum.

Defendants' leaps of logic make no sense for a number of reasons. First, Defendants claim the uncertainty that was "lingering" derived from the Supreme Court's decision in *Daimler*, which discussed agency in the context of ***general*** jurisdiction, not specific jurisdiction, which is at issue here and in *BMS*.[114] Second, Defendants cite language from a footnote in

[113] Defs.' Mem. at 10.

[114] Defs.' Mem. at 9-10 (citing *Daimler*, 134 S. Ct. at 759 & n.13).

*Daimler* that discusses "purposeful availment" in relation to the imputation of liability based upon an agency relationship, whereas *BMS* did not discuss the "purposeful availment" prong of the specific jurisdiction analysis but instead the second prong – whether the claims "arise from or relate to" the defendants' contacts with the forum.[115] Most importantly, Defendants completely ignore the fact that because there were no agency questions or arguments at issue in *BMS*, the *BMS* opinion contains absolutely no language discussing agency relationships, with the possible exception of the Supreme Court's observation that plaintiffs had not "alleged that [Bristol-Myers] is derivatively liable for McKesson's conduct in California" while suggesting that such an allegation may have changed the outcome.[116]

This Court has already ruled upon Defendants' agency arguments and did so when it had full consideration of the issues raised by *Daimler* and other precedent related to agency relationships in the context of personal jurisdiction.[117] Defendants cite no post-*Daimler* language, nor do they cite any language in *BMS* for a new rule on agency. There is no reason for the Court to reconsider its prior agency ruling concerning BNBM and Taishan.

**E. <u>The Class Was, and Remains, Appropriately Certified.</u>**

Defendants continue to travel down every available avenue in the hopes that they can reargue and have this Court reconsider their motion to decertify the class. Even though *BMS* was

---

[115] *See* Defs.' Mem. at 9-10 (citing *Daimler*, 134 S. Ct. at 759 n.13); *see also BMS*, 137 S. Ct. at 1787 ("Bristol-Myers contends that respondents' claims do not 'arise out of or relate to' its California conduct").

[116] *BMS*, 137 S. Ct. at 1783.

[117] Rec. Doc. 20739.

not a class case and did not discuss the implications of its ruling on class actions brought under Rule 23 or those with subject matter jurisdiction in federal court pursuant to CAFA or in an MDL, Defendants claim that a nationwide class cannot stand after *BMS*.[118] Defendants make this claim even though the Supreme Court made clear that its *BMS* ruling applied only to actions in state court and even though, as Justice Sotomayor notes in her dissent, "[t]he Court today d[id] not confront the question whether its opinion . . . would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there."[119] Contrary to the Defendants' assertions, *BMS* has no applicability to this Court's prior class certification determination.

In arguing that *BMS* applies, Defendants misquote and twist the language of Justice Sotomayor's dissent in *BMS*. According to Defendants, "[*BMS*] dictates that, absent general jurisdiction, 'plaintiffs who are injured in different States by a defendant's nationwide course of conduct [***cannot***] sue that defendant in a single, consolidated action.'"[120] In fact, Justice Sotomayor actually stated: "First, and most prominently, the Court's opinion in this case will ***make it profoundly difficult*** for plaintiffs who are injured in different States by a defendant's nationwide course of conduct to sue that defendant in a single, consolidated action."[121] Furthermore, Justice Sotomayor was not stating a new legal principle but instead was lamenting

---

[118] Defs.' Mem. at 11-12.

[119] *BMS*, 138 S. Ct. at 1789 n.4.

[120] Defs.' Mem. at 12 (quoting *BMS*, 137 S. Ct. at 1784 (alteration in Defs.' Mem.) (emphasis added)).

[121] 137 S. Ct. at 1784 (emphasis added).

the potential ramifications of the majority's opinion if the Defendants' interpretation of that opinion – and the spin that they attempt to put on it – were adopted.[122]

Perhaps Justice Sotomayor's other concern – that if *BMS* were given a sweeping interpretation it would be impossible to bring a "nationwide *mass* action . . . against a defendant not headquartered or incorporated in the United States" because "[s]uch a defendant is not 'at home' in any State" – is a more appropriate quote to discuss here.[123] Defendants, the very foreign corporations mentioned by Justice Sotomayor, are seeking to establish a rule where there is no jurisdiction to hear claims against them anywhere and, in particular, no place where plaintiffs could aggregate their claims in a single forum. By its own admonition, the Supreme Court was not looking to make such a sweeping rewrite of class action jurisprudence. In any event, "the meaning of a majority opinion is to be found within the opinion itself; the gloss that an individual Justice chooses to place upon it is not authoritative."[124]

On September 26, 2014, the Court granted class certification which included certification of a nationwide class.[125] On January 5, 2017, Defendants moved to decertify the class which was denied on April 21, 2017.[126] As for the class certified by the Court here, nothing has changed. Defendants' main argument in their Supplemental Jurisdictional Motion was advanced

---

[122] Justice Sotomayor also noted that whether the plaintiffs "might have been able to bring a single suit in federal court [remained] (an 'open ... question')." *Id.* (quoting majority opinion at 1783-84).

[123] *Id.*, at 1789 (emphasis added).

[124] *McKoy v. North Carolina*, 494 U.S. 433, 448 (1990) (Blackmun, J., concurring).

[125] Rec. Doc. 20910.

[126] Rec. Doc. 20627 (Defendants' Motion); Rec. Doc. 20739 (Court's Order & Reasons).

in their motion to decertify the class – state-specific nuances destroy the class.[127] Plaintiffs acknowledged that the Court must consider whether state-law variations caused individual issues to predominate, but that ultimately, the law of each state in the class permitted recovery for remediation damages for toxic contamination of the home.[128] As such, the state-law variations amounted to nothing more than a manageability issue that could be handled.[129] This Court considered these positions and denied Defendants' motion to decertify the class.[130]

On May 22, 2017, Defendants sought permission to appeal the denial of the motion for decertification pursuant to 28 U.S.C. § 1292(b) raising the same issue that common issues did not predominate because of differences in applicable state law.[131] Again, Plaintiffs opposed Defendants' position on the same grounds.[132] On August 22, 2017, having considered these very same arguments again, the Court denied the motion, finding that "in light of the complex nature of this case and extensive history of the litigation, a class action is the superior mechanism for resolving these claims." Order & Reasons at 13 [Rec. Doc. 20910].[133]

---

[127] Defs.' Mem. at 11-12. *See also* Rec. Doc. 20627 at 18-24.

[128] Rec. Doc. 20652 at 21-23.

[129] *Id*. at 23.

[130] Rec. Doc. 20739.

[131] Rec. Doc. 20780 at 10-14.

[132] Rec. Doc. 20825.

[133] Rec. Doc. 20780.

The Court has heard Defendants' arguments multiple times, and each time they have been rejected. Since nothing in *BMS* changes the governing law or casts doubt on the class that has been certified, the same result should apply.

## V. CONCLUSION

In its ninth year, this MDL continues to drone on, reminiscent of *Jarndyce and Jarndyce* in the Court of Chancery in Bleak House by Charles Dickens. With legal assistance from counsel at Orrick (including Messrs. Vejnoska and Stengel) dating back to the early stages of this litigation, these foreign Defendants have monitored these proceedings closely since the beginning, but they chose to allow default judgments to be entered despite proper service under the Hague Convention. Defendants have admitted that they strategically declined to participate in this MDL, relying on the absence of a treaty with China for the enforcement of civil judgments since all of their assets are in China. Then, after challenging personal jurisdiction over Taishan and losing twice in the Fifth Circuit, CNBM Group orchestrated Taishan's civil and criminal contempt of court and its refusal to appear for a judgment debtor examination. As a further affront to this Court's authority, Defendants and other affiliates of Taishan violated the Court's injunction by continuing to do business in the United States during the contempt period. Having finally entered the litigation in 2015 after the *Amorin* class was certified, Defendants now want out-of-state Plaintiffs' claims dismissed so they can walk away from these suits based on an unwarranted, overly broad interpretation of the Supreme Court's *BMS* decision.

For the foregoing reasons, the PSC requests that this Court deny Defendants' Supplemental Jurisdictional Motion.

Respectfully submitted,

Dated: August 30, 2017

/s/ Russ M. Herman
Russ M. Herman (La. Bar No. 6819) (on the brief)
Leonard A. Davis (La. Bar No. 14190) (on the brief)
Stephen J. Herman (La. Bar No. 23129) (on the brief)
Robert S. Peck (on the brief)
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
RHerman@hhklawfirm.com

*Plaintiffs' Liaison Counsel MDL 2047*

Arnold Levin (on the Brief)
Fred S. Longer (on the Brief)
Sandra L. Duggan (on the Brief)
Keith J. Verrier (on the Brief)
Nicola Serianni (on the Brief)
Levin Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
Alevin@lfsblaw.com

*Plaintiffs' Lead Counsel MDL 2047*

**PLAINTIFFS' STEERING COMMITTEE**

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Robert Becnel
Becnel Law Firm, LLC
425 W. Airline Highway, Suite B
Laplace, LA 70068
Phone: (985) 536-1186
Fax: (985) 536-6445
rbecnel@becnellaw.com

Peter Prieto
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
pprieto@podhurst.com

Bruce William Steckler
Steckler Gresham Cochran
12720 Hillcrest Road, Ste 1045
Dallas, TX 75230
Phone: (972) 387-4040
Fax: (972) 387-4041
bruce@stecklerlaw.com

Patrick Montoya
Colson, Hicks, Eidson
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
patrick@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
The Lambert Firm
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@thelambertfirm.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
& Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

James R. Reeves, Jr.
Reeves & Mestayer, PLLC
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@rmlawcall.com

Christopher Seeger
Seeger Weiss, LLP
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5002
dan@wbmllp.com

Richard J. Serpe
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com

Victor M. Diaz, Jr.
V.M. Diaz and Partners, LLC
119 Washington Ave, Suite 402
Miami Beach, FL 33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W, Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax: (202) 540-7201
rlewis@hausfeldllp.com

Anthony D. Irpino
IRPINO AVIN HAWKINS LAW FIRM
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, which will serve a notice of the uploading in accordance with the procedures established in MDL 2047, on this 30th day of August, 2017.

/s/ Leonard A. Davis
Leonard A. Davis
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com
Plaintiffs' Liaison Counsel
MDL 2047

*Co-Counsel for Plaintiffs*