**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | **MDL NO. 2047**<br>**SECTION: L**<br>**JUDGE FALLON**<br>**MAG. JUDGE WILKINSON** |
| **THIS DOCUMENT RELATES TO:**<br>**ALL CASES** | |

**REPLY IN SUPPORT OF TAISHAN'S JOINDER TO SUPPLEMENTAL MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION FOLLOWING *BRISTOL-MYERS SQUIBB v. SUPERIOR COURT***

**I.     INTRODUCTION**

In their opening papers, defendants Taishan, BNBM and CNBM showed that a powerful new U.S. Supreme Court decision requires the dismissal of all claims on properties not located in the state in which the PSC filed the respective complaint. *See Bristol-Myers Squibb v. Superior Court*, 137 S. Ct. 1773 (2017). *Bristol-Myers* is a game-changer not because it created new law, but because it reinvigorated the existing due-process mandate to assess specific personal jurisdiction on a plaintiff-specific basis. *See, e.g.*, *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006) (holding that "specific personal jurisdiction [is] a claim-specific inquiry"). And it applied that mandate to mass-tort litigation to end the notion that courts can assert jurisdiction over nonresidents' claims based on "[t]he mere fact that *other* plaintiffs" who are forum residents "allegedly sustained the same injuries as did the nonresidents." *Bristol-Myers*, 137 S. Ct. at 1781.

Faced with that Supreme Court death knell for their illegal multi-state Omni Complaints, the PSC has tacitly acknowledged that *Bristol-Myers* will not tolerate their practice of filing

duplicative, multi-state, consolidated Omni complaints. They have admitted that "[t[he recent *Bristol-Myers Squibb* decision has caused the PSC to cautiously file . . . eleven new actions." Rec. Doc. 20885-1 at 4.[1] Those 11 misnamed "protective actions" segregate the PSC's claimants into the respective states in which the related properties are located—just as *Bristol-Myers* requires. *See* 137 S. Ct. at 1783 (suggesting that "the plaintiffs who are residents of a particular State—for example, the 92 plaintiffs from Texas and the 71 from Ohio—could probably sue together in their home States"). The PSC's Opposition attempts to deny the plain effect of the new Supreme Court precedent, but their defensive actions speak louder than their blustery words.

Instead of relying on the new state-specific complaints or proving specific jurisdiction for nonresidents in the Omni complaints, the PSC Opposition goes all-in on a single last-ditch argument that *Bristol-Myers* "has no application to these Chinese Drywall proceedings." PSC Opposition (Rec. Doc. 20935-2) at 26; *see also id.* at 1 (claiming that *Bristol-Myers* "has no bearing"). Their nonresident plaintiffs have not tried in any way to meet their threshold "burden of establishing jurisdiction." *Seiferth*, 472 F.3d at 270. So whether or not *Bristol-Myers* applies—and it does—the Court must, on this record, dismiss from the Omni complaints all claims of nonresident plaintiffs. *See Jinright v. Johnson & Johnson, Inc.*, No. 4:17CV01849 ERW, 2017 WL 3731317 at *4 (E.D. Mo. Aug. 30, 2017) (dismissing nonresident claims under *Bristol-Myers* in absence of any jurisdictional allegations, including failure to allege "any facts which connect the claims of nonresident Plaintiffs with Defendants' [forum state] contacts").

The PSC cannot avoid that result by pointing to prior jurisdictional rulings by this Court and by the Fifth Circuit. *See, e.g.*, PSC Opp. at 19 (claiming that "*BMS* changes nothing that this

---

[1] The PSC filed seven new complaints for *Amorin* claims and four for *Brooke* claims.

2

Court decided in its previous jurisdictional order"). Those prior jurisdictional decisions were actually consistent with *Bristol-Myers* because they were explicitly forum- and plaintiff-specific. Five years before *Bristol-Myers*, this Court recognized that "plaintiffs [who] have no connection to" the transferor forum state should not remain part of the relevant complaint. *In re Chinese Manuf. Drywall Prod. Liab. Litig.*, 894 F. Supp. 2d 819, 889 (E.D. La. 2012).[2] On that point, Taishan agrees: *Bristol-Myers* is consistent and requires the dismissal of claimants who lack the required "connection between the forum and the specific claims at issue." *See* 137 S. Ct. at 1781.

Because plaintiff-specific jurisdictional principles already governed this litigation, *Bristol-Myers* mass-tort application of those "settled principles" obviously applies here. *Bristol-Myers*, 137 S. Ct. at 1781; *see also In re Depuy Orthopaedics, Inc.*, --- F.3d ---, 2017 WL 3768923 (2017).[3] The Court should reject all of the PSC's arguments to the contrary. *First*, the state-court Fourteenth Amendment due-process analysis from *Bristol-Myers* applies in this federal court because in a diversity suit, a federal court has jurisdiction over a nonresident defendant to the same extent that a state court in that forum has such jurisdiction. Federal district courts have had no trouble applying *Bristol-Myers* to dismiss nonresident mass-tort claims. *Second*, the Class Action Fairness Act (CAFA) has no relevance here because it relates to only subject-matter jurisdiction, not personal jurisdiction. *Third*, MDL consolidation has no effect on personal jurisdiction because the MDL transferee court's personal jurisdiction over any specific claim is entirely derivative of the specific transferor court from which that claim came. *Fourth*, class certification has no effect on these motions because all of the PSC's *Amorin* class members are named in complaints (no absent class

---

[2] Of course, to the extent the prior jurisdictional rulings are inconsistent with *Bristol-Myers*, they are overruled.

[3] Taishan will address the effect of *In re DePuy* in its supplemental brief to be filed on September 29, 2017.

members), and in any event, a rule of civil procedure cannot overrule constitutional due-process principles.

Applying *Bristol-Myers*, as well as this Court's prior jurisdictional order, the Court should dismiss from each complaint all nonresident plaintiffs.

## II. *BRISTOL-MYERS* IS A GAME-CHANGER THAT REQUIRES THE DISMISSAL OF NONRESIDENT CLAIMS.

The Court should reject the PSC's attempt to minimize and negate *Bristol-Myers*. That 8 – 1 majority decision is not "a unique case with a narrow set of unique facts in terms of the exercise of personal jurisdiction" (PSC Opp. at 14), and courts have not treated it that way. Instead, courts have recognized that *Bristol-Myers* "essentially 'changed the game' as it relates to [mass tort] actions." *Swann v. Johnson & Johnson*, No. 4:17-CV-1845 SNLJ, 2017 WL 3034711, at *1 (E.D. Mo. July 18, 2017). For example, when *Bristol-Myers* was handed down, a state court judge immediately declared a mistrial in a mass-torts case to allow the parties to work out personal jurisdiction questions. *See Gallardo v. Johnson & Johnson*, No. 4:17CV1601 SNLJ, 2017 WL 3128911, at *2 (E.D. Mo. July 24, 2017) (describing state-court mistrial). As described in Taishan's opening brief, numerous federal courts in the past few months have dismissed nonresident plaintiffs' claims for lack of personal jurisdiction. Rec. Doc. 20894 at 2-3. And as discussed below, *Bristol-Myers* dismissals have only accelerated since.

Justice Sotomayor certainly seemed to think that *Bristol-Myers* was a game-changer. Her dissent in that case described how the majority opinion had significantly altered the litigation landscape in a way that would bar the kind of consolidated, multi-plaintiff, multi-state complaints that the PSC has repeatedly filed in this litigation:

- "[T]he upshot of today's opinion is that plaintiffs cannot join their claims together and sue a defendant in a State in which only some of them have been injured."

- "[T]he Court's opinion in this case will make it profoundly difficult for plaintiffs who are injured in different States by a defendant's nationwide course of conduct to sue that defendant in a single, consolidated action."

- "The effect of the Court's opinion today is to eliminate nationwide mass actions in any State other than those in which a defendant is 'essentially at home.'"

*Id.* at 1788-89 (Sotomayor, J., dissenting). And most pertinent to these cases involving defendants from China, after chiding the eight-justice majority for not specifically describing what would happen to "a nationwide mass action brought against a defendant not headquartered or incorporated in the United States," Justice Sotomayor set forth her view that, "[t]he answer is simple" as to whether such suits "will survive" after *Bristol-Myers*; "[t]hey will not." *Id.*

### III. *BRISTOL-MYERS* CONFIRMS TAISHAN'S PERSONAL-JURISDICTION ARGUMENTS FROM FIVE YEARS AGO.

*Bristol-Myers* changed the game as Justice Sotomayor envisioned simply by applying "settled principles" of personal jurisdiction, 137 S. Ct. at 1781, principles that Taishan raised in 2012 and that this Court and the Fifth Circuit recognized in prior jurisdictional rulings. In *Bristol-Myers*, the Supreme Court confronted aggregate mass-tort litigation (much like this one) in which hundreds of plaintiffs, "most of whom are not [forum state] residents," filed consolidated complaints. *Id.* at 1777. The California Supreme Court upheld personal jurisdiction "because the claims of the nonresidents were similar in several ways to the claims of the California residents (as to which specific jurisdiction was uncontested)." *Id.* at 1779. The U.S. Supreme Court rejected that similarity test:

> The mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims.

*Id.* at 1781. Instead, the Supreme Court applied the existing claim-specific test that "[i]n order for a ... court to exercise specific jurisdiction, 'the *suit*' must 'arise out of or relate to the defendant's

5

contacts with the *forum*.'" *Id.* at 1780 (quoting *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014)). Thus, "specific jurisdiction is confined to adjudication of issues arising from, or connected with, the very controversy that establishes jurisdiction." *Id.*, at 1780 (quoting *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)). The Court focused on the need for an "adequate link between the State and the nonresidents' claims." *Id.* at 1781. It rejected jurisdiction over those nonresidents' claims because "[w]hat it needed—and what is missing here—is a connection between the forum and the specific claims at issue." *Id.*

This is nothing new. In 2012, Taishan made the same *Bristol-Myers*-style arguments, urging dismissal of nonresident claims as to Virginia, Florida and Louisiana, as the Court recognized in its prior jurisdictional Order:

- "[T]he Court recognizes the argument raised by Taishan at the hearing that because the *Germano* class is a nationwide class, any non-Virginia plaintiffs' claims against TG would not 'arise from' or 'relate to' TG's minimum contacts in Virginia."

- "Taishan urges the Court to require every plaintiff in *Mitchell* to prove that the drywall it was involved with was drywall sold by Taishan to Florida customers or was shipped to and used in Florida."

- "Taishan also argues that even if the Louisiana plaintiffs can demonstrate a sufficient nexus between Taishan's activities in Louisiana and their damages from drywall, the non-Louisiana plaintiffs cannot demonstrate the same since they do not reside in Louisiana or claim any injury from drywall in Louisiana."

*In re Chinese Manuf. Drywall Prod. Liab. Litig.*, 894 F. Supp. 2d 819, 858, 888, 902 (E.D. La. 2012). The Court recognized that nonresident claims should not remain part of the forum-state complaint: "Taishan's argument pertaining to non-Louisiana plaintiffs is resolved by the PSC's suggestion to sever and transfer any non-Louisiana plaintiffs from *Gross*." *Id.* at 902; *accord id.* at 889 (discussing severance of "all non-Florida claims"); *id.* at 858 (discussing severance of "non-Virginia cases"). This Court's prior analysis was entirely consistent with *Bristol-Myers* because it recognized that "plaintiffs [who] have no connection to" the transferor forum should be dropped

6

from the relevant complaint. *Id.* at 889; *compare Bristol-Myers*, 137 S. Ct. at 1781 ("What is needed—and what is missing here—is a connection between the forum and the specific claims at issue."). Now, given the Supreme Court's definitive guidance in this mass-tort setting and the defendants' motions as to all cases, the time is ripe for the Court to dismiss the nonresident claims from the Florida, Louisiana and Virginia *Amorin* and *Brooke* Omni complaints and from every other operative complaint.

Nothing in the Fifth Circuit's affirmances of this Court's jurisdictional order would prevent that result, as the PSC seems to imply. PSC Opp. at 4 (claiming that "nothing in *BMS* changed the governing Fifth Circuit law that led to the conclusion that the exercise of jurisdiction over the Defendants was proper"). Those were not be-all, end-all jurisdictional rulings, nor could they have been. Instead, those prior jurisdictional decisions were consistent with *Bristol-Myers* because they were explicitly forum- and plaintiff-specific.[4] For example, the Fifth Circuit in *Germano* held only that this Court "has personal jurisdiction over [Taishan] **with regard to Plaintiff-Intervenors**, and all Original Plaintiffs **who have met their burden in proving that their claims arise out of [Taishan's] contacts with Virginia**." *In re Chinese Manuf. Drywall Prod. Liab. Litig.*, 742 F.3d 576, 593 (5th Cir. 2014)) (emphasis added). Similarly, the Fifth Circuit's analysis in *Gross* looked at only "**Louisiana customers**" and "the presence of Taishan's drywall in the homes of **Louisiana plaintiffs**." *In re Chinese Manuf. Drywall Prod. Liab. Litig.*, 753 F.3d 521, 548-49 (5th Cir. 2014) (emphasis added).[5] Settled plaintiff-specific jurisdictional principles of Fourth, Fifth and Eleventh

---

[4] Of course, to the extent the prior jurisdictional rulings are inconsistent with *Bristol-Myers*, they are overruled.

[5] The Fifth Circuit's ruling regarding Florida is more ambiguous. To the extent that the decision permits jurisdiction over claims of nonresidents merely because "*Mitchell* includes Florida-based plaintiffs alleging causes of action arising in Florida," *Bristol-Myers* directly abrogates that holding.

7

Circuit law applied in those decisions—now confirmed in *Bristol-Myers*—require the dismissal of all nonresident claims.

### IV. THE PERSONAL-JURISDICTION PRINCIPLES CONFIRMED BY *BRISTOL-MYERS* APPLY TO THESE DRYWALL CASES.

The PSC's opposition gives four reasons why they think that *Bristol-Myers* does not apply here. All of them fail.

#### A. *Bristol-Myers* and the "settled principles" it applies govern federal court personal jurisdiction

First, *Bristol-Myers* is not "limited to state court actions" as the PSC argues. PSC Opp. at 19. Other federal district courts certainly think that *Bristol-Myers* applies in state-law tort cases like these. Indeed, they have described it as a "straightforward inquiry." *Siegfried v. Boehringer Ingelheim Pharm., Inc.*, No. 4:16-CV-1942-CDP, 2017 WL 2778107, at *3 (E.D. Mo. June 27, 2017). Defendants' opening papers listed just a few of the recent federal decisions applying *Bristol-Myers* to dismiss nonresident claims for lack of personal jurisdiction. The PSC's opposition brief failed even to acknowledge any of those explicit federal applications of *Bristol-Myers*, much less explain how those dismissals are consistent with their state-court-only argument. They are not.[6] And since defendants' opening briefs, federal courts have continued to use *Bristol-Myers* to dismiss large blocks of nonresident plaintiffs. *See, e.g.*, *Spratley v. FCA US LLC*, No. 3:17-CV-0062, 2017 WL 4023348, at *1, *7 (N.D.N.Y. Sept. 12, 2017) (dismissing consumer-fraud claims because all "out-of-state Plaintiffs have shown no connection between their claims and [defendant's] contacts with New York"); *Jinright v. Johnson & Johnson, Inc.*, No. 4:17CV01849

---

[6] The PSC later attempted unsuccessfully to distinguish those decisions by torturing their procedural history. *See* Rec. Doc. 20944 at 4-5. Defendants did not cite those district court cases as binding "precedent," but as persuasive examples of the immediate effect that *Bristol-Myers* has had in causing the dismissal of nonresident claimants in mass-tort litigation.

ERW, 2017 WL 3731317 at *4 (E.D. Mo. Aug. 30, 2017) (dismissing claims of 79 nonresident plaintiffs because "[t]his Court faces the same situation as the Supreme Court did in *Bristol-Myers*"); *Covington v. Janssen Pharm., Inc.*, No. 4:17-CV-1588, 2017 WL 3433611, at *4 (E.D. Mo. Aug. 10, 2017) (dismissing consolidated mass-tort claims under *Bristol-Myers* because "53 of the 54 total plaintiffs failed to allege that they ingested the drug in the state of Missouri or suffered from resulting injuries in Missouri"); *Turner v. Boehringer Ingelheim Pharm., Inc.*, No. 4:17-cv-01525-AGF, 2017 WL 3310696, at *3 (E.D. Mo. Aug. 3, 2017) (dismissing all nonresident plaintiffs under *Bristol-Myers* and noting that "both this Court and the Missouri state court from which this case was removed lack personal jurisdiction over Defendants with respect to the claims of the Non-Missouri Plaintiffs").

The technical applicability of the Fifth Amendment due process clause to federal courts provides no basis for avoiding *Bristol-Myers*. In these diversity suits, the specific personal jurisdiction analysis remains the same as the Fourteenth Amendment analysis in *Bristol-Myers*. As the Fifth Circuit has held, "in a diversity suit, a federal court has personal jurisdiction over a nonresident defendant to the same extent that state court in that forum has such jurisdiction." *Wilson v. Belin*, 20 F.3d 644, 646 (5th Cir. 1994). A federal district court is constrained by the same Fourteenth Amendment "boundaries":

> A federal district court sitting in diversity must satisfy two requirements to exercise personal jurisdiction over a nonresident defendant. First, the forum state's long-arm statute must confer personal jurisdiction. Second, the exercise of jurisdiction must not exceed the boundaries of the Due Process Clause of the Fourteenth Amendment.

*Seiferth*, 472 F.3d at 270 (citing *Mink v. AAAA Dev. LLC.*, 190 F.3d 333, 335 (5th Cir. 1999). And of course that must be "a claim-specific inquiry." *Id.* at 274.

9

Thus, *Bristol-Myers* leaving "open" any question about the Fifth Amendment's restrictions does not minimize the effect of that decision and of its Fourteenth Amendment restrictions in these diversity suits. Nor does that cautious statement of limited Supreme Court review "establish[] conclusively that *BMS* changes nothing that this Court decided in its previous jurisdiction order." PSC Opp. at 19. But one thing that *Bristol-Myers* should not change from the Court's prior jurisdictional order is the Court's recognition, as described above, that claimants with properties outside the filing forum cannot remain part of that complaint.

### B. CAFA Relates Solely To Subject-Matter Jurisdiction, Not Personal Jurisdiction

The PSC's invocation of CAFA is irrelevant to the personal-jurisdiction principles at issue here. The Class Action Fairness Act (CAFA) at 28 U.S.C. § 1332(d) extends *subject-matter* jurisdiction, not personal jurisdiction. "CAFA accords subject matter jurisdiction for certain cases with at least minimal diversity of citizenship." *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 569 (5th Cir. 2011); *accord Gene And Gene LLC v. BioPay LLC*, 541 F.3d 318, 324 (5th Cir. 2008) (holding that "[t]he district court had subject-matter jurisdiction over this case pursuant to provisions of CAFA"); *Adams v. Grefer*, 636 F. App'x 906, 907 n.1 (5th Cir. 2016) (observing that "CAFA, as codified by 28 U.S.C. § 1332(d), created a new basis for federal subject matter jurisdiction over qualifying civil actions"). Therefore, "[i]n diversity cases (via CAFA . . .), the court addresses the question of personal jurisdiction with reference to the laws of the forum state." *Avila v. Lease Fin. Grp., LLC*, No. 11 CIV. 8125 KBF, 2012 WL 1948777, at *2 (S.D.N.Y. May 30, 2012) (citing *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir.2006)).

The analysis of "subject-matter jurisdiction . . . under CAFA" is separate from the analysis of whether a defendant is "subject to personal jurisdiction." *See, e.g.*, *Greenwell v. Belkin Corp.*, No. C 06-02760 WHA, 2006 WL 2884393, at *2 (N.D. Cal. Oct. 10, 2006) (doing two separate

10

analyses). For example, in a recent consumer-fraud putative class action, the district court noted that "[s]ubject matter jurisdiction in this case is based on the Class Action Fairness Act," but then went on to dismiss all nonresident plaintiffs under *Bristol-Myers*. *Spratley*, 2017 WL 4023348, at *1, *7. CAFA has no effect on *Bristol-Myers.*

### C. MDL Transfer Plays No Part In The Personal-Jurisdictional Analysis

The PSC also wrongly argues that "*BMS* has no applicability to an MDL." (Opp. at 30). It is actually just the opposite. The claim-specific personal jurisdiction principles applied by *Bristol-Myers* apply in this MDL as they would in any transferor court. The transfer of these cases to this MDL under 28 U.S.C. § 1407 has no effect on the personal-jurisdiction analysis. *See In re FMC Corp. Patent Litig.*, 422 F. Supp. 1163, 1165 (J.P.M.L. 1976) (holding that "transfers under Section 1407 are simply not encumbered by considerations of in personam jurisdiction or venue").[7]

As the PSC admits, an MDL "transferee court is vested with the same jurisdiction as the transferor court." (Opp. at 29); *accord In re FMC Corp.*, 422 F. Supp. at 1165 ("Following a transfer, the transferee judge has all the jurisdiction and powers over pretrial proceedings in the actions transferred to him that the transferor judge would have had in the absence of transfer").[8]

---

[7] The MDL statute did not purport to change the rules of personal jurisdiction for any individual case. *See In re Library Editions of Children's Books*, 299 F. Supp. 1139, 1142 (J.P.M.L. 1969) ("Congress . . . has given no indication that, in creating § 1407, it intended to expand the territorial limits of effective service. Therefore, proper service must still be made on each defendant pursuant to the rules of the transferor court even after a transfer under § 1407.").

[8] The PSC cites *In re WellNx Mktg. & Sales Practices Litig.*, but that decision recognized that, "[i]n an MDL case, personal jurisdiction is derived from the transferor court," and that "'the transferee court must apply the law of the transferor forum to determine personal jurisdiction.'" No. 07-MD-1861, 2010 WL 3652457, at *1 (D. Mass. Sept. 15, 2010) (quoting *In re Papst Licensing GMBH & Co. KG Litig.*, 602 F.Supp.2d 10, 14 (D.D.C.2009)). The statement quoted by the PSC that the MDL statute "authoriz[es] the federal courts to exercise nationwide personal

Because the jurisdictional power of the transferee court is derivative of the power of the transferor court, what matters is whether there is jurisdiction in the transferor court. Under *Bristol-Myers*, a transferor court lacks personal jurisdiction over every cause of action for which the plaintiff cannot establish an adequate link between the cause of action and the defendant's forum-specific conduct. MDL transfer does not alter that analysis.

### D. Nonresident Class Members, All of Whom Are Named in Complaints, Must Meet Their Burden to Establish Personal Jurisdiction Over Taishan

Because of the unique (and arguably improper) structure of the PSC's *Amorin* class in this case, this Court need not address the question raised by Justice Sotomayor of whether a court that has personal jurisdiction over named class representatives may exercise jurisdiction and adjudicate the claims of absent class members. *Bristol-Myers*, 137 S. Ct. at 1789 n.4.[9] Justice Sotomayor cited *Devlin v. Scardeletti* for the proposition that "[n]onnamed class members may be parties for some purposes and not for others." *Id.* (citing 536 U.S. 1, 9-10 (2002)). In *Devlin*, the Supreme Court noted that "[n]onnamed class members" are "not parties" with respect to determining diversity for purposes of subject-matter jurisdiction. 536 U.S. at 10.

But here, the PSC's *Amorin* class has no "nonnamed" members because the Court defined that class to explicitly *exclude* absent class members. Rec. Doc. 18028 at 34-35. Each class member is a named plaintiff in the three *Amorin* Omni complaints, and thus for each complaint each claimant must meet the burden of establishing that Taishan is subject to jurisdiction on each

---

jurisdiction" (Opp. at 29 n.103), is simply another way of saying that the transferee court has whatever personal jurisdiction possessed by the transferor court and that on that basis the MDL court is authorized to exercise personal jurisdiction from transferor courts around the country ("nationwide").

[9] *See, e.g.*, *Broomfield v. Craft Brew Alliance, Inc.*, No. 17-cv-01027-BLF, 2017 WL 3838453, at *15 (N.D. Cal. Sept. 1, 2017) (deferring consideration of effect of *Bristol-Myers* on nationwide consumer class action with absentee class members until class certification).

specific claim asserted in each complaint. *See Seiferth*, 472 F.3d at 274-75 ("If a defendant does not have enough contacts to justify the exercise of general jurisdiction, the Due Process Clause prohibits the exercise of jurisdiction over any claim that does not arise out of or result from the defendant's forum contacts."). For example, in *Spratley*, the district court applied *Bristol-Myers* to dismiss the nonresident named plaintiffs from a putative class action. 2017 WL 4023348, at *7. Moreover, this Court has already "recognize[d]" the argument that non-forum class members cannot be part of a nationwide class because their claims do not arise from or relate to Taishan's forum contacts. *In re Chinese Manuf. Drywall*, 894 F. Supp. 2d at 858. The Court ruled that the proper "solution" is dropping the non-forum class members. *Id.* The PSC cites that solution and does not argue otherwise. *See* PSC Opp. at 9.

But even if the *Amorin* class did have nonnamed members and the Court did address the class-jurisdictional issue, it would have to rule that no single case gives this Court jurisdiction over a nationwide class. Just as Taishan has a constitutional right not to have nationwide-class claims arbitrarily adjudicated under a single state's law, *see Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-22 (1985), so Taishan has a constitutional right not to be haled into court for class claims that have no connection to the forum. In both instances, the court must analyze the contact between the state and the claims. *Id.* (holding that, "[g]iven Kansas' lack of 'interest' in claims unrelated to that State . . . application of Kansas law to every claim in this case is sufficiently arbitrary and unfair as to exceed constitutional limits). Here, nonresident *Amorin* class members have an insufficient contact with each forum to permit a court in that forum to adjudicate the claims against Taishan (or to have the court apply the laws of that forum).[10] Moreover, under the Rules

---

[10] This Court has not yet conducted the necessary *Shutts* choice-of-law analysis for the certified class.

13

Enabling Act, the procedural mechanisms of Rule 23 cannot limit or overcome Taishan's constitutional due process rights relating to personal jurisdiction. *See* 28 U.S.C. 2072 (directing that the "rules shall neither abridge, enlarge, nor modify the substantive rights of any litigant").

And even if the PSC convinced the Court to ignore those settled constitutional and statutory principles, any resulting class-related exercise of personal jurisdiction would be limited to the claims of the actual members of the *Amorin* class, which under the class definitions is limited to "owners" of allegedly affected properties. Rec. Doc. 18028 at 34-35. According to the PSC's latest representation of ownership, only half of claimants named in the three *Amorin* Omni complaints are currently owners of the allegedly affected properties. So even under the PSC's conception of Rule 23, the rest of the *Amorin* claimants and all of the *Brooke* claimants would have to be dismissed if they are nonresidents of each complaint's original forum.

## V.     CONCLUSION

*Bristol-Myers* controls. Nonresident claimants have not met their burden to establish personal jurisdiction over any defendant in any complaint.

Dated:  September 19, 2017

Respectfully submitted,

/s Michael P. Kenny
Bernard Taylor, Esq.
Georgia Bar No. 669625
Michael P. Kenny, Esq.
Georgia Bar No. 415064
Christina Hull Eikhoff, Esq.
Georgia Bar No. 242539
David Venderbush, Esq.
New York Bar No. 2920817
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia  30309
Phone: (404) 881-7000
Fax: (404) 881-7777
bernard.taylor@alston.com
mike.kenny@alston.com
christy.eikhoff@alston.com

david.venderbush@alston.com

*Counsel for Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd.*

Alan Dean Weinberger
Louisiana Bar No. 13331
HANGARTNER, RYDBERG & TERRELL, LLC
One Shell Square
701 Poydras Street, Suite 310
New Orleans, Louisiana  70179
Phone: (504) 434-6815
Fax: (504) 522-5689
aweinberger@hanrylaw.com

*Local Counsel for Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd.*

**CERTIFICATE OF SERVICE**

    I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, by U.S. mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 19th day of September, 2017.

    <u>/s Michael P. Kenny</u>
Michael P. Kenny, Esq.
Georgia Bar No. 415064
ALSTON & BIRD LLP
1201 West Peachtree Street NW
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
mike.kenny@alston.com

*Counsel for Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd.*