UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL No. 2:09-md-2047<br><br>SECTION L<br><br>JUDGE ELDON E. FALLON |
| **THIS DOCUMENT RELATES TO:**<br>*ALL CASES* | MAGISTRATE JUDGE JOSEPH C. WILKINSON, JR. |

**REPLY BRIEF IN SUPPORT OF SUPPLEMENTAL MOTION ON JURISDICTION AND CLASS CERTIFICATION FOLLOWING *BRISTOL-MYERS SQUIBB CO. V. SUPERIOR COURT OF CALIFORNIA, SAN FRANCISCO COUNTY***

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ......................................................................................................... 1

II.     ARGUMENT ............................................................................................................... 2

      A.      *BMS* Is Equally Applicable To Diversity Actions In Federal Court...................... 3

            1.      Like State Court Cases, Federal Diversity Cases Are Governed By
                   The Fourteenth Amendment's Due Process Clause.....................................3

            2.      CAFA Is Irrelevant To The Personal Jurisdiction Inquiry Because
                   It Concerns Subject Matter Jurisdiction.....................................................9

            3.      Rule 23 Did Not Intrude—And Could Not Have Intruded—Upon
                   Defendants' Fourteenth Amendment Due Process Rights.........................10

            4.      An MDL Court's Personal Jurisdiction Analysis In A Given Case
                   Mirrors That Of The Transferor Court.......................................................11

            5.      The Supreme Court Has Drawn No Relevant Distinction, For Due
                   Process Purposes, Between Foreign And Domestic Defendants. ...............13

      B.      *BMS* Elucidates Why Plaintiffs' Claims Should Be Dismissed And The Class
              Should Be Decertified. .......................................................................................... 14

III.    CONCLUSION ......................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Grefer*,
   636 F. App'x 906 (5th Cir. 2016) ..............................................................................9

*AdjustaCam, LLC v. Newegg, Inc.*,
   626 F. App'x 987 (Fed. Cir. 2015) ...........................................................................16

*Asahi Metal Indus. Co. v. Superior Court of California*,
   480 U.S. 102 (1987).............................................................................................. 13-14

*Bellaire General Hosp. v. Blue Cross Blue Shield of Mich.*,
   97 F.3d 822 (5th Cir. 1996) ......................................................................................5

*Bertolini-Mier v. Upper Valley Neurology Neurosurgery P.C.*,,
   No. 16-cv-00035, 2007 WL 4081901 (D. Vt. Sept. 13, 2017) ...............................19

*Bristol-Myers Squibb Co. v. Superior Court of California*,
   137 S. Ct. 1773 (2017).................................................................................... *passim*

*Bullion v. Gillespie*,
   895 F.2d 213 (5th Cir. 1990) ................................................................................ 3-4

*Busch v. Buchman, Buchman & O'Brien, Law Firm*,
   11 F.3d 1255 (5th Cir. 1994) .................................................................................5, 6

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
   894 F. Supp. 2d 819 (E.D. La. 2012)..................................................................15, 17

*In re Chinese-Manufactured Drywall Products Liab. Litig.*,
   742 F.3d 576 (5th Cir. 2014) ...........................................................................4, 13, 17

*In re Chinese-Manufactured Drywall Products Liab. Litig.*,
   753 F.3d 521 (5th Cir. 2014) ...................................................................................13

*In re Consol. Welfare Fund "ERISA" Litig.*,
   No. 92-cv-00424, 1992 WL 212348 (S.D.N.Y. Aug. 21, 1992)...............................12

*Covington v. Janssen Pharm., Inc.*,
   No. 17-cv-01588, 2017 WL 3433611 (E.D. Mo. Aug. 10, 2017)........................8, 16

*Danton v. Innovating Gaming Corp. of Am.*,
   246 F. Supp. 2d 64 (D. Me. 2003) ...........................................................................20

*DeMelo v. Toche Marine, Inc.*,
711 F.2d 1260 (5th Cir. 1983) ..................................................................3, 5

*In re Depuy Orthopaedics, Inc.*
No. 17-10812, 2017 WL 3768923 (5th Cir. Aug. 31, 2017) ...........................15, 16

*Devlin v. Scardelletti*,
536 U.S. 1 (2002).......................................................................................21

*Ergon Oil Purchasing, Inc. v. Canal Barge Co., Inc.*,
No. 16-cv-05884, 2017 WL 2730853 (E.D. La. June 26, 2017) .............................7

*Glencore Grain Rotterdam V.B. v. Shivnath Rai Harnarain Co.*,
284 F.3d 1114 (9th Cir. 2002) .....................................................................14

*Gundle Lining Const. Corp. v. Adams Cty. Asphalt, Inc.*,
85 F.3d 201 (5th Cir. 1996) .........................................................................3

*Hollinger v. Home State Mut. Ins. Co.*,
654 F.3d 564 (5th Cir. 2011) .......................................................................9

*Jinright v. Johnson & Johnson, Inc.*,
No. 17-cv-01849, 2017 WL 3731317 (E.D. Mo. Aug. 30, 2017)............................8

*Jordan v. Bayer Corp.*,
No. 17-cv-00865, 2017 WL 3006993 (E.D. Mo. July 14, 2017)............................8

*KMLLC Media, LLC v. Telemetry, Inc.*,
No. 15-cv-00432, 2015 WL 6506308 (E.D. Va. Oct. 27, 2015)...........................20

*Madison v. Res. for Human Dev., Inc.*,
233 F.3d 175 (3d Cir. 2000)........................................................................15

*Mark E. Mitchell, Inc. v. Charleston Library Soc.*,
114 F. Supp. 2d 259 (S.D.N.Y. 2000)..............................................................5

*Oliver v. Ethicon, Inc.*,
No. 12-cv-06950, 2017 WL 3193652 (S.D.W. Va. July 27, 2017) ..........................7

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985)...............................................................................10, 11

*Point Landing, Inc. v. Omni Capital Int'l, Ltd.*,
795 F.2d 415 (5th Cir. 1986) .....................................................................5, 6

*Seiferth v. Helicopteros Atuneros, Inc*,
472 F.3d 266 (5th Cir. 2006) .......................................................................3

*Spratley v. FCA US LLC*,
    No. 17-cv-0062, 2017 WL 4023348 (N.D.N.Y. Sept. 12, 2017)............................................8, 9

*Steel v. United States*,
    813 F.2d 1545 (9th Cir. 1987) .............................................................................................20

*Stein v. Horwitz*,
    191 F.3d 448 (Table), 1999 WL 710355 (4th Cir. Sept. 13, 1999) .......................................20

*Stuart v. Spademan*,
    772 F.2d 1185 (5th Cir. 1985) ...............................................................................................4

*Sutcliffe v. Honeywell Int'l, Inc.*,
    No. 13-cv-01029, 2015 WL 1442773 (D. Ariz. Mar. 30, 2015).............................................14

*Turner v. Boehringer Ingelheim Pharm., Inc.*,
    No. 17-cv-01525, 2017 WL 3310696 (E.D. Mo. Aug. 3, 2017)..............................................8

*United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*,
    960 F.2d 1080 (1st Cir. 1992) ................................................................................................6

*United States v. Armstrong*,
    517 U.S. 456 (1996)..............................................................................................................10

*Virtuality L.L.C. v. Bata Ltd.*,
    138 F. Supp. 2d 677 (D. Md. 2001) ......................................................................................14

*In re WellNx Mktg. & Sales Practices Litig.*,
    No. 07-md-01861, 2010 WL 3652457 (D. Mass. Sept. 15, 2010)...................................11-12

*Wilson v. Belin*,
    20 F.3d 644 (5th Cir. 1994) ....................................................................................................4

**Constitutional Provisions**

Fifth Amendment ...................................................................................................................1, 3, 5

Fourteenth Amendment ...............................................................................1, 3, 4, 5, 9, 10, 12

**Statutes**

28 U.S.C. § 1332(d) .................................................................................................................1, 8, 9

28 U.S.C. § 2072......................................................................................................................10

**Rules**

Fed. R. Civ. P. 4(e) ....................................................................................................................5, 6

Fed. R. Civ. P. 4(k)(1)(A) ................................................................................5, 6

Fed. R. Civ. P. 23 ..........................................................................................9, 10

Fed. R. Civ. P. 42 .............................................................................................10

**Other Authorities**

Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 254
(2d ed. 1982) .................................................................................................9

*Class Actions Seven Years After the Class Action Fairness Act, Hearing Before
the Subcomm. on the Constitution of the H. Comm. on the Judiciary*, 112th
Cong. 2 (2012) ..............................................................................................9

David Marcus*, Erie, the Class Action Fairness Act, and Some Federalism
Implications of Diversity Jurisdiction*, 48 Wm. & Mary L. Rev. 1247 (2007) ..................9, 17

## I.       INTRODUCTION

Heeding the Supreme Court's mandate, court after court has now recognized the clear import of *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017) (hereinafter, "*BMS*"): the Due Process Clause requires dismissal of claims that do not arise from a defendant's contacts with the forum state.  This Court must similarly dismiss all claims concerning properties located outside the respective forum states that are alleged to have been damaged by Taishan drywall.

But the PSC resists, arguing that the Court should ignore *BMS* altogether because "the Supreme Court … made clear that its decision [in *BMS*] was limited to actions in state court."  Rec. Doc. 20935-2 at 1.  But the Court said no such thing.  What it said was that it was leaving "open the question whether the *Fifth Amendment* imposes the same restrictions on the exercise of personal jurisdiction by a federal court."  *BMS*, 137 S. Ct. at 1784 (emphasis added).  This is not, however, a federal question case governed by the Fifth Amendment.  Personal jurisdiction in diversity cases, including those filed under the Class Action Fairness Act (CAFA) (as is the case here), is governed by the *Fourteenth Amendment* because the federal court borrows the personal jurisdiction analysis that would govern in state court.  *BMS* therefore controls.

For everyone's sake—Plaintiffs and Defendants alike—this Court should decline to follow the PSC down its misguided path.  Defendants have repeatedly noted the critical role that state-related distinctions play in this litigation.  And the PSC has continually ignored them.  Given the unmistakable direction of post-*BMS* jurisprudence, continued refusal to ignore these critical state-related distinctions is dangerous.  Complaints the Court believed it resolved and classes the Court believed it properly defined may well have to be revisited or reversed, requiring the litigation to begin anew years down the road.  That serves no one.  The prudent course of

action is to hew to recent Supreme Court precedent and embrace *BMS* as a helpful tool to organize this litigation for ultimate resolution.

The Court should dismiss all out-of-state residents from the multistate complaints (including the *Amorin* and *Brooke* complaints), dismiss all claims against CNBM Co. and the BNBM Entities based on imputation theories because Plaintiffs' defective drywall claims cannot be shown to have arisen out of the companies' relationship with Taishan, and decertify the class (as presently constituted).

## II.   ARGUMENT

*BMS* makes clear a "plaintiff's claim must 'arise out of or relate to the defendant's forum conduct." 137 S. Ct. at 1786.  Plaintiffs in this MDL whose properties are located outside the state in which they brought suit have not demonstrated their injuries were a result of Defendants' contacts with the forum states.  *BMS* therefore requires dismissal of these Plaintiffs' claims for lack of jurisdiction, *ab initio*.

In an effort to avoid the clear import of *BMS*, the PSC advances several arguments for why it is inapplicable: (1) the decision applies only to state cases, (2) interstate federalism concerns present in state actions are inapplicable in federal cases, (3) even if *BMS* applies in federal court, it has no application where claims have been consolidated, and (4) MDL courts have been conferred special personal jurisdiction power that inoculates them from *BMS*.  But the PSC's reasoning in support of these alleged distinctions meshes together various jurisprudential principles—conflating, for instance, subject matter and personal jurisdiction—to create the appearance that federal courts, even those sitting in diversity and particularly those presiding over mass actions, have far greater personal jurisdiction reach than their state counterparts.  As we explain below, that is inaccurate and the PSC's arguments in avoidance are unavailing.

A.     *BMS* Is Equally Applicable To Diversity Actions In Federal Court.

    1.     Like State Court Cases, Federal Diversity Cases Are Governed By The Fourteenth Amendment's Due Process Clause.

*BMS* makes clear that the Fourteenth Amendment's Due Process Clause precludes exercising personal jurisdiction over claims that do not arise from the contacts a defendant has with the forum state.  Rec. Doc. 20882-1 at 5-7.  The PSC claims, however, that *BMS* is "a unique case" involving "a narrow set of unique facts" that has no application here.  Rec Doc. 20935-2 at 14; *id.* at 17 (arguing that "*BMS* is a case that fits into [a] narrow jurisdictional box").  In support of that contention, the PSC seizes upon the Supreme Court's suggestion that a different analysis might apply where the Fifth Amendment governs a federal court's jurisdictional analysis.  From that limited statement, the PSC asserts that the Supreme Court expressly left open the question whether *BMS* ever applies in federal court.  Rec. Doc. 20935-2 at 1 ("The Supreme Court in *BMS* made clear that its decision was limited to actions in state court").

But the Supreme Court did not purport to leave open *all* questions concerning personal jurisdiction in federal courts.  Rather, it left unresolved whether "the *Fifth Amendment* imposes the same restrictions on the exercise of personal jurisdiction by a federal court."  *BMS*, 137 S. Ct. at 1784 (emphasis added).  However, "[i]n a diversity action," the question of "personal jurisdiction … [is governed by] the due process clause of *the [F]ourteenth [A]mendment.*"[1]

---

[1] *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006) ("A federal court sitting in diversity must satisfy two requirements to exercise personal jurisdiction over a nonresident defendant. First, the forum state's long-arm statute must confer personal jurisdiction. Second, the exercise of jurisdiction must not exceed the boundaries of the Due Process Clause of the Fourteenth Amendment."); *Gundle Lining Const. Corp. v. Adams Cty. Asphalt, Inc.*, 85 F.3d 201, 2014 (5th Cir. 1996) ("In a diversity suit a federal court has jurisdiction over a nonresident defendant to the same extent that a state court in that forum has such jurisdiction"): *Bullion v. Gillespie*, 895 F.2d 213, 215 (5th Cir. 1990) ("A nonresident defendant is amenable to personal jurisdiction in a federal diversity suit to the extent permitted by a state court in the state in which

*Stuart v. Spademan*, 772 F.2d 1185, 1189 (5th Cir. 1985); *Wilson v. Belin*, 20 F.3d 644, 646 (5th Cir. 1994) ("In a diversity suit, a federal court has personal jurisdiction over a nonresident defendant to the same extent that a state court in that forum has such jurisdiction.  The reach of this jurisdiction is delimited by … the Due Process Clause of the Fourteenth Amendment …."); *see also In re Chinese-Manufactured Drywall Products Liab. Litig.*, 742 F.3d 576, 587 (5th Cir. 2014) (jurisdictional analysis for Virginia cases requires application of the state's long arm statute and a determination whether it is "consistent with the due process clause of the Fourteenth Amendment").  Accordingly, contrary to the PSC's assertion, the Supreme Court *did not* leave open the question of *BMS*'s applicability to any case governed by the Fourteenth Amendment, even those in federal court.

And it is because the same due process analysis governs in federal diversity and state court actions that the PSC's heavy reliance on interstate federalism—as a point of distinction—falls flat.  The PSC claims *BMS* "was limited to state court actions[] where concerns of interstate federalism impact[] on the jurisdictional analysis."  Rec Doc. 20935-2 at 1; *see also id.* at 19-21.  By contrast, when cases arise in federal court, the PSC contends, the due process analysis may yield "a different result" because "there are situations where a federal court may have jurisdiction to hear cases that a state court does not."  *Id.* at 20.  That is true as far as it goes.  Certainly, unlike state courts, whose jurisdictional analyses are *always* subject to the Fourteenth Amendment, federal courts may sometimes not be, depending on the federal statute invoked to support personal jurisdiction.  *Point Landing, Inc. v. Omni Capital Int'l, Ltd.*, 795 F.2d 415, 423

---

the federal court resides");  *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1264-65 (5th Cir. 1983) ("It is well-settled that a defendant is amenable to personal jurisdiction of a federal court in a diversity case to the extent permitted a state court in the state where the federal court sits.  In other words, a state standard applies in diversity cases: the federal court may assert personal jurisdiction only if the cognate state court could have done so.").

(5th Cir. 1986) (federal courts "must ground their personal jurisdiction on a federal statute or rule").

If a plaintiff relies only on a federal basis for personal jurisdiction—for example, a federal statute providing for broad, nationwide service of process—the personal jurisdiction inquiry is governed by the Fifth Amendment.[2] *See, e.g.*, *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994) ("When a federal court is attempting to exercise personal jurisdiction over a defendant in a suit based upon a federal statute providing for nationwide service of process," it is exercising its jurisdiction as a unique sovereign and "the relevant inquiry is whether the defendant has had minimum contacts with the United States.").[3] Where, however, the plaintiff invokes the court's diversity jurisdiction, the personal jurisdiction analysis is ultimately governed by the Fourteenth Amendment because the federal rule that supports personal jurisdiction in those cases requires the court to look to state law. Fed. R. Civ. P. 4(e); 4(k)(1)(A). The personal jurisdiction analysis in such federal cases mirrors that of their state court counterparts. In other words, "sovereignty defines the scope of the due process test,"[4]

---

[2] Given the Supreme Court's avoidance of the Fifth Amendment question and the Fifth Circuit's skepticism regarding the propriety of assessing minimum contacts as between the individual and national sovereign in national service of process cases, the possibility remains that *BMS* may well apply even in the federal question context. *Bellaire General Hosp. v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822, 826 (5th Cir. 1996).

[3] *Mark E. Mitchell, Inc. v. Charleston Library Soc.*, 114 F. Supp. 2d 259, 263-64 (S.D.N.Y. 2000) (Kaplan, J.) ("The exercise of personal jurisdiction in a federal question case is subject only to the limitations imposed by the Due Process Clause of the Fifth Amendment, which are less restrictive because they do not reflect concern with limiting incursions on state sovereignty by the exercise of jurisdiction by other states and because there is an independent federal interest in providing for resolution of federal claims." (brackets omitted)).

[4] The PSC's discussion of *McIntyre* similarly ignores this distinction. *See, e.g.*, Rec. Doc. 20935-2 at 20 n.77. Although the Supreme Court in *McIntyre* recognized there may be circumstances where a party has requisite contacts with the federal government but not with any

*Busch*, 11 F.3d at 1258, and when a federal court sits in diversity, it does not analyze the question of personal jurisdiction as an independent sovereign.

Here, all of the cases that comprise the MDL invoked the forum courts' diversity jurisdiction[5] and therefore this Court's personal jurisdiction analysis is subject to the same jurisdictional rules that apply in the state courts of the forum states. *See, e.g.*, *DeMelo*, 711 F.2d at 1264-65. For that reason, the interstate federalism concerns that the PSC assails as unique to actions in state court do not evaporate in federal court. On the contrary, federal courts presiding over "diversity case[s]" are admonished to "make certain that the forum state does not unduly encroach on the interests of a sister state."[6] *Point Landing*, 795 F.2d at 422; *see also United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1085 (1st Cir. 1992) (noting that "federalism concerns ... hover over the jurisdictional equation in a diversity case").

The PSC accuses Defendants of "glibly assert[ing] … there is no principled basis for concluding a different due process analysis would apply in diversity actions," Rec. Doc. 20935-2 at 19, but the principle, as set forth above, is readily apparent: the personal jurisdiction analysis

---

individual state, it never suggested that could be the case where, as here, a federal court is exercising diversity jurisdiction.

[5] There is no statutory grant under which this Court could exercise jurisdiction without resort to state standards. Absent such a grant, this diversity action is governed by state law. *See* Fed. R. Civ. P. 4(e) ("Unless federal law provides otherwise, an individual may be served in a judicial district of the United States by … following state law."); Fed. R. Civ. P. 4(k)(1)(A) ("Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant … who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located").

[6] *DeMelo*, 711 F.2d at 1272 (looking to "the interest of the state in providing a forum for the suit" and finding that "Mississippi has an exceptionally strong interest in providing a forum for the redress of injuries to its residents occurring within its borders and caused by an allegedly defective product shipped from outside the state").

is the same in federal diversity actions as it is in state actions.  Indeed, though ignored by the

PSC, numerous federal courts have arrived at this conclusion since *BMS*.[7]  Rec. Doc. 20882-1 at

8-9 (citing cases).  As here, *Oliver v. Ethicon, Inc.*, No. 12-cv-06950, 2017 WL 3193652

(S.D.W. Va. July 27, 2017), is an MDL predicated upon diversity involving state personal injury

claims based on a defective product.  With no basis for general jurisdiction in an Arkansas

resident's suit filed in Minnesota, the MDL court applied *Bristol-Myers*, found specific

jurisdiction lacking and dismissed the defendants because "the record indicates no connection

between the mesh product implanted in the plaintiff in Arkansas and Ethicon's mesh products

sold in Minnesota."  *Id.* at *3; *see also Ergon Oil Purchasing, Inc. v. Canal Barge Co., Inc.*, No.

16-cv-05884, 2017 WL 2730853, at *5 (E.D. La. June 26, 2017) (Engelhardt, J.) (applying *BMS*

to diversity case and dismissing Mississippi citizen from an action filed in Louisiana federal

court against Texas corporate defendant; holding that, although foreign corporate defendant had

contacts with Louisiana, "without a specific evidentiary tie" between plaintiff's claims and that

contact, the Louisiana contacts were insufficient to confer specific jurisdiction).  Both of these

courts recognized "there is no principled basis for concluding a different due process analysis …

appl[ies] in diversity actions."  Rec. Doc. 20935-2 at 19.

---

[7] Though the PSC says nothing in its opposition, it uses its response to Defendants' objection to the court's order vacating its § 1292(b) certification to address some of them.  Here, too, the PSC invokes the term "class action," as if it is a jurisdictional elixir unconstrained by the Constitution. Rec. Doc. 20944 at 4 ("none of the cases cited by Defendants … are class actions").  Left with nothing else in the face of numerous post-*BMS* decisions, the PSC proclaims the cases can—and should be ignored—because when a federal district court cites a Supreme Court opinion (and, in the case of *Oliver*, cites it as the *only* decision in its specific jurisdiction analysis), the court has not sufficiently demonstrated it considered and analyzed the decision.  *Id.* at 5.  As if that assertion weren't bold enough, when stripped of the argument because a court *did* meaningfully "rel[y] on *BMS*" (apparently, at least, to the PSC's satisfaction), it nonetheless claims the decision can still be ignored because, paradoxically, the court "*did not* discuss or analyze the scope of *BMS* in any way."  *Id.* at 6 (emphasis added).  To state the PSC's arguments is to refute them.

And the opinions keep coming. *See, e.g.*, *Spratley v. FCA US LLC*, No. 17-cv-0062, 2017 WL 4023348, at *4 (N.D.N.Y. Sept. 12, 2017) (relying on *BMS* to dismiss "out-of-state Plaintiffs" in a proposed class action because there was "no connection between their claims and [defendant's] contacts with New York"); *Jinright v. Johnson & Johnson, Inc.*, No. 17-cv-01849, 2017 WL 3731317, at *1 (E.D. Mo. Aug. 30, 2017) (faced with 79 claims from out-of-state plaintiffs, the court recognized it "face[d] the same situation as the Supreme Court did in *Bristol-Myers*" and dismissed those claims because plaintiffs could "not establish a connection between [their] injuries, the products which caused the harm in this matter, and Defendants' contacts in Missouri"); *Covington v. Janssen Pharm., Inc.*, No. 17-cv-01588, 2017 WL 3433611, at *5 (E.D. Mo. Aug. 10, 2017) (characterizing *BMS* as a similarly situated case and dismissing 53 nonresident plaintiffs because they did not allege "they ingested the drug in the state of Missouri or suffered from resulting injuries in Missouri," but simply that "defendants transacted business and committed torts in the State of Missouri"); *Turner v. Boehringer Ingelheim Pharm., Inc.*, No. 17-cv-01525, 2017 WL 3310696, at *3 (E.D. Mo. Aug. 3, 2017) (relying on *BMS* in "grant[ing] Defendants' motion to dismiss the claims of the Non-Missouri Plaintiffs"); *Jordan v. Bayer Corp.*, No. 17-cv-00865, 2017 WL 3006993, at *4 (E.D. Mo. July 14, 2017) (granting motion to dismiss 87 plaintiffs on personal jurisdiction grounds because court lacked jurisdiction over non-resident plaintiffs of the proposed class).

The PSC does not even acknowledge any of these post-*BMS* decisions, much less explain how any of the points of distinction it offers can be squared with these recent cases. What's more, it does not supply a single post-*BMS* citation to support its contention that *BMS* does not apply to this diversity action.

### 2. CAFA Is Irrelevant To The Personal Jurisdiction Inquiry Because It Concerns Subject Matter Jurisdiction.

In another attempt to beat back the clear import of *BMS*, the PSC notes that "*BMS* did not address the consolidation of claims using legislatively created procedural mechanisms such as a [sic] class action rules or CAFA."  Rec. Doc. 20935-2 at 22.  But the fact that the PSC invoked the transferor courts' CAFA jurisdiction is irrelevant because, as the PSC's own authority discusses,[8] CAFA concerns *subject matter* jurisdiction, not, as relevant here, ***personal*** jurisdiction.  *See Adams v. Grefer*, 636 F. App'x 906, 907 (5th Cir. 2016) ("CAFA, as codified by 28 U.S.C. § 1332(d), created a new basis for federal subject matter jurisdiction over qualifying civil actions"); *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 569 (5th Cir. 2011) ("CAFA accords subject matter jurisdiction for certain cases with at least minimal diversity of citizenship.").  In asserting otherwise, the PSC cites no authority to suggest that CAFA dispensed with the constitutional limitations on personal jurisdiction.[9]  *Cf. Spratley*, 2017 WL 4023348, at *1 (applying *BMS* to dismiss nonresident plaintiffs in a federally-filed proposed

---

[8] David Marcus, Erie, *The Class Action Fairness Act, and Some Federalism Implications of Diversity Jurisdiction*, 48 Wm. & Mary L. Rev. 1247, 1290 (2007) (discussing diversity jurisdiction as the underpinning for CAFA).

[9] Notably, at oral argument in *BMS*, counsel conceded that the case could have been brought as a class action.  *BMS* Oral Argument Transcript ("*BMS* Transcript"), Case No. 16-00466, 2017 WL 1482003, at *43 (April 25, 2017) ("yes, there could have been a class action").  That it was not should come as little surprise.  Since CAFA's passage, "plaintiffs' attorneys have been permitted to avoid CAFA's requirements by splitting mass actions into groups of 99 or fewer plaintiffs to avoid CAFA's requirement that mass actions with 100 or more plaintiffs be tried in Federal court."  *Class Actions Seven Years After the Class Action Fairness Act, Hearing Before the Subcomm. on the Constitution of the H. Comm. on the Judiciary*, 112th Cong. 2 (2012) (statement of Rep. Franks, Chairman, Subcomm. on the Constitution of the H. Comm. on the Judiciary).  There is no principled basis for providing more or less due process protection based on the ingenuity (or lack thereof) of plaintiffs' counsel.  The Fourteenth Amendment applies equally in both contexts.

class action).

### 3. Rule 23 Did Not Intrude—And Could Not Have Intruded—Upon Defendants' Fourteenth Amendment Due Process Rights.

The PSC's argument—that Rule 23 provides a "Congressional mandate" supposedly applicable here that provides for the filing of "claims … in federal court in which a plaintiff represents the interests of absent parties"—is similarly unavailing. Rec. Doc. 20935-2 at 24. As with its CAFA arguments, the PSC speaks here in generalities, asserting that "jurisdiction over nonresident class members' claims has been found to be a valid exercise of a federal court's jurisdiction" and, thus, posits that *BMS* should not be read to foreclose such suits. Rec. Doc. 20935-2 at 24. But nothing in Rule 23 demands unqualified acceptance of nationwide class actions. After all, Rule 23 must bow to the Due Process Clause.[10] 28 U.S.C. § 2072 (the "rules shall neither abridge, enlarge, nor modify the substantive rights of any litigant"); *see also United States v. Armstrong*, 517 U.S. 456, 475 (1996) (Breyer, J., concurring) (quoting Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 254, 81 & n.60 (2d ed. 1982) ("Because *Brady* is based on the Constitution, it overrides court-made rules of procedure.")).

Nonetheless, the PSC appears to suggest that Rule 23 altered the parameters of personal jurisdiction by loosening the due process protections afforded defendants. Rec. Doc. 20935-2 at 24. But the PSC cites no authority to support that contention and there are two problems with the argument. First, the authority the PSC does cite, *id.* at 24 & n.91 (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985)), applies only in the case of absent class members. But, as per the class definition, there are no absent class members here. As we have repeatedly explained, the PSC's bizarre approach to this litigation has been to name every plaintiff and then

---

[10] And nothing in Rule 23 supplants Federal Rule of Civil Procedure 4.

seek certification of a non-representative class.[11]  Rec. Doc. 20780-1 at 7-8.  Second, *Shutts*

concerned the due process rights of *plaintiffs*, not as at issue here, *defendants*.

In any event, *BMS* itself doesn't foreclose nationwide class actions.  As the Supreme Court

explained, "[o]ur decision does not prevent the California and out-of-state plaintiffs from joining

together in a consolidated action in the States that have general jurisdiction over *BMS*."[12]  137 S.

Ct. at 1783.

### 4.      An MDL Court's Personal Jurisdiction Analysis In A Given Case Mirrors That Of The Transferor Court.

The PSC takes a similar tack in arguing that, as an MDL, this litigation is not subject to

*BMS*.  Rec. Doc. 20935-2 at 29-30.  In doing so, the PSC rips MDL principles from their

statutory mooring by claiming that *BMS* has no application to MDLs because Congress may

enact laws providing for nationwide personal jurisdiction and MDL courts "are simply not

encumbered by considerations of in personam jurisdiction."  *Id.* at 29.  But the conclusion does

not flow from the premises.  True, Congress has provided for nationwide personal jurisdiction

under certain federal statutes.  It is also true that a district court sitting as a MDL is not subject to

the normal rules governing personal jurisdiction.  But that does not imbue the MDL court with

the power to disregard the normal due process analysis in determining personal jurisdiction in the

cases before it.  As the PSC itself acknowledges and its cited authority demonstrates, "[a]

transferee court is vested with *the same jurisdiction* as the transferor court."  *Id.* (emphasis

added); *id.* at n.103 (citing *In re WellNx Mktg. & Sales Practices Litig.*, No. 07-md-1861, 2010

---

[11] For this reason, this litigation is more properly defined as a Rule 42 consolidation rather than a class action.

[12] In the case of foreign defendants, a plaintiff class may be able to do likewise in a foreign jurisdiction.

WL 3652457, at *1 (D. Mass. Sept. 15, 2010) ("In an MDL case, personal jurisdiction is derived from the transferor court.")); *see also, e.g., In re Consol. Welfare Fund "ERISA" Litig.*, No. 92-cv-00424, 1992 WL 212348, at *2 (S.D.N.Y. Aug. 21, 1992) ("*[T]he jurisdiction* and powers *of the transferee court are coextensive with that of the transferor court* [and] the transferee court may make any order to render any judgment that might have been rendered by the transferor court in the absence of transfer.") (emphasis added). That means this Court's jurisdiction, as a MDL-transferee court, is no greater than that of the courts' from which the cases came. And because the Fourteenth Amendment analysis would apply in the transferor court, so too does it apply in the transferee court.

That an MDL court may stand in the jurisdictional shoes of the transferor court is understandable.[13] Otherwise, it would be incapable of fulfilling its pretrial duties under the statute. However, no authority goes one step further and says a transferee court's jurisdiction over a particular case is *greater than* the transferor court's over that same case. Such a rule would be equal parts nonsensical and inefficient. It would mean an MDL court—with its purportedly broadened reach—could have jurisdiction over a case pretrial but, upon remand to the transferor court, the case could be dismissed for lack of jurisdiction. *Cf.* Henry Paul Monaghan, *Antisuit Injunctions and Preclusion Against Absent Nonresident Class Members*, 98 Colum. L. Rev. 1148, 1202 n.194 (1998) ("There is no suggestion that 28 U.S.C. § 1407 itself can be read, in effect, to authorize nationwide in personam jurisdiction in the MDL transferee court, even if the transferor court itself lacked personal jurisdiction.")

---

[13] Whether MDL courts should *ever* have more lax jurisdictional rules is itself subject to debate. Andrew D. Bradt, *The Long Arm of Multidistrict Litigation*, 59 Wm. & Mary L. Rev. ___ (2017); *available at* http://scholarship.law.berkeley.edu/facpubs/2792.

This Court, having presided over numerous MDLs, has never countenanced such a position.  On the contrary, its jurisdictional analyses throughout these MDL proceedings (as well as that employed by the PSC, at least up until now) has assessed whether *the transferor court* has personal jurisdiction over Taishan.  *In re Chinese-Manufactured Drywall Products Liab. Litig.*, 753 F.3d 521, 535-44, 547-50 (5th Cir. 2014) (utilizing personal jurisdiction analysis of Florida and Louisiana transferor courts); *In re Chinese-Manufactured Drywall Products Liab. Litig.*, 742 F.3d at 585-93 (same as to Virginia transferor court).  Accordingly, the PSC incorrectly asserts that MDL status inoculates this litigation from *BMS*.

> ### 5.   The Supreme Court Has Drawn No Relevant Distinction, For Due Process Purposes, Between Foreign And Domestic Defendants.

After offering up any and every possible distinction from *BMS*, the PSC finally comes right out and says what is really driving its position:[14]  if *BMS* controls, there may be no jurisdiction over Defendants in any single U.S. court.  Rec. Doc. 20935-2 at 28-29; *see also id.* at 36.  As a practical matter then, the PSC asserts the jurisdictional test should be more lax when the defendant is a foreign corporation.  Here too the PSC cites no legal authority.  And, yet, a review of the case law suggests precisely the opposite: foreign defendants are afforded at least as much, if not more, protection than domestic corporations.[15]  *See, e.g.*, *Asahi Metal Indus. Co. v.*

---

[14] Oddly, the PSC begins this discussion with a detailed recitation of issues involving foreseeability and stream of commerce.  Rec. Doc. 20935-2 at 26-28.  Yet, those factors relate to the purposeful availment prong, not the "arise out of or relate to" inquiry addressed in *BMS*.  *Compare In re Chinese-Manufactured Drywall Products Liability Litig.*, 753 F.3d at 541-42 *with id.* at 543-44.

[15] Moreover, the foreign/domestic corporation distinction was not lost on the Court in *BMS*.  During oral argument, the very topic of foreign defendants was addressed and all acknowledged, absent specific jurisdiction, plaintiffs may have to bring suit outside the United States.  *BMS* Transcript, 2017 WL 1482003 at *23 (discussion between Justice Sotomayor and Solicitor

*Superior Court of California*, 480 U.S. 102, 114 (1987) ("The unique burdens placed upon one

who must defend oneself in a foreign legal system should have significant weight in assessing

the reasonableness of stretching the long arm of personal jurisdiction over national borders.");

*see also Sutcliffe v. Honeywell Int'l, Inc*., No. 13-cv-01029, 2015 WL 1442773, at *9 (D. Ariz.

Mar. 30, 2015) ("[W]here the nonresident defendant 'is from a foreign nation rather than another

state, the sovereignty barrier is high and undermines the reasonableness of personal

jurisdiction.'" (quoting *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co*., 284 F.3d

1114, 1126 (9th Cir. 2002)); *Virtuality L.L.C. v. Bata Ltd*., 138 F. Supp. 2d 677, 682 (D. Md.

2001) ("A plaintiff's burden [of demonstrating personal jursidction] is even higher when the

defendant hails from a foreign nation rather than from another state.").

    In any event, the question whether jurisdiction exists outside of Florida, Louisiana, and

Virginia is not before this Court and there is no doctrinal basis for that inquiry to inform the

analysis.  To do so would subvert the very principles underlying the Due Process Clause, by

subjugating the Defendants' notice rights to the PSC's preferred fora.

    **B.**    **_BMS_ Elucidates Why Plaintiffs' Claims Should Be Dismissed And The Class
Should Be Decertified.**

    Defendants have repeatedly argued—and *BMS* now confirms—that Plaintiffs' claims do

not arise out of Defendants' contacts with the forum states.  Rec. Doc. 19527-2 at 32-34.

Accordingly, Defendants have explained that *BMS* "underscores several key arguments advanced

… in support of their motions to dismiss as well as the impropriety of the PSC's peculiarly-

defined class."  Rec. Doc. 20882-2 at 1; *see also id*. at 7 (*BMS* "underscores why a general

---

General's office concerning the absence of general jurisdiction over foreign defendants).  Yet,
the Court still recognized that due process mandated its decision.

agency relationship between BNBM and Taishan …is an insufficient basis for asserting

jurisdiction over BNBM").   The PSC repeatedly claims that because "nothing in *BMS* changed

governing law," this Court should decline to deviate from its prior jurisdictional order.  Rec.

Doc. 20935-2 at 26; *see also id.* at 5-11 (recounting earlier jurisdictional rulings as to Taishan).

Defendants do not dispute that *BMS* was dictated by prior decisions.  Indeed, Judge

Jones' recent opinion in *In re Depuy Orthopaedics, Inc*. makes that clear.  No. 17-10812, 2017

WL 3768923, at *8 (5th Cir. Aug. 31, 2017) (Jones, J., concurring in part and dissenting in part).

Without citing *BMS*, she concluded the district court in that case was improperly asserting

"'reach out and touch someone' power wholly at odds with its Constitutional and statutory

limitations" by subjecting a nonresident defendant to jurisdiction in a case involving nonresident

plaintiffs.  *Id.*  This Court arrived at the very same conclusion earlier in these proceedings.  It

acknowledged the concern "raised by Taishan … that because the *Germano* class is a nationwide

class, any non-Virginia plaintiffs' claims against TG would not 'arise from' or 'relate to' TG's

minimum contacts in Virginia," but it found no problem because "at [that] time, all of the

Plaintiff-Intervenors [were] Virginia homeowners."  *In re Chinese Manufactured Drywall Prod.

Liab. Litig*., 894 F. Supp. 2d 819, 858 (E.D. La. 2012).  However, that problem now exists: the

*Amorin* and *Brooke* complaints are littered with non-resident Plaintiffs from across the country

asserting claims with no relation to the forum state.

The Supreme Court's decision in *BMS* confirmed this Court and Judge Jones'

understandings.  Even if there were any uncertainty before *BMS,* this Court should welcome, not

resist, an opportunity to fine-tune its reasoning.  That is precisely what courts do in such

situations.  *See, e.g.*, *Madison v. Res. for Human Dev., Inc*., 233 F.3d 175, 186 (3d Cir. 2000)

("The Supreme Court's clarification in *Christensen* requires us to revisit our previously applied

- 15 -

parameters of deference.… [and it] confirms that informal agency interpretations are entitled to respect based only on their persuasiveness;" remanding for district court to apply that standard); *see also AdjustaCam, LLC v. Newegg, Inc.*, 626 F. App'x 987, 988 (Fed. Cir. 2015) ("remand[ing] for reconsideration in light of the Supreme Court's recent clarification of the 'exceptional case' standard"); *Covington*, 2017 WL 3433611, at *2 (minimizing use of plaintiffs' cited authority because "th[o]se cases were decided before [*BMS*]").

To accept the PSC's invitation to turn a blind eye to this intervening authority is ill-advised, particularly given that the Fifth Circuit will no doubt account for *BMS* upon review.  *In re Depuy Orthopaedics, Inc.* 2017 WL 3768923, at *10 (Jones, J., concurring in part and dissenting in part) (expressing concern with an MDL "court's abuse of its limited jurisdiction, waste of trial resources, huge expenditure of legal resources on utterly unnecessary jurisdictional wrangling, and ultimately, the forfeiture of public confidence in a system that can achieve neither efficiency nor economy in handling mass tort cases").

There is another independent reason why this Court's prior jurisdictional rulings should not control here:  They did not involve CNBM Co., BNBM Group, and BNBM.  And CNBM Co. and the BNBM Entities have explained that Taishan's contacts should not be imputed to them and why *BMS* confirms that outcome.  It is wrong to suggest, as the PSC has, that a court may decline to entertain a party's arguments (concerning erroneous imputation) based on intervening Supreme Court precedent by retroactively subjecting that defendant to an earlier order to which it was not a party.[16]  When the PSC's meritless attempts to avoid *BMS* are set

---

[16] Moreover, under *BMS*, those earlier jurisdictional rulings could only apply to the plaintiffs at issue in those cases.  To apply those opinions to new plaintiffs would contravene the very holding of *BMS*, which demands a plaintiff-by-plaintiff analysis.

aside,[17] it is clear that Defendants' requested relief must be granted.

   ***This Court Must Dismiss The Claims Of Nonresident Plaintiffs.*** *BMS* recognizes a "plaintiff's claim must 'arise out of or relate to the defendant's forum conduct." 137 S. Ct. at 1786. And it is the plaintiffs' burden to make that showing. *In re Chinese-Manufactured Products Liab. Litig.*, 742 F.3d at 584 ("The plaintiff bears the ultimate burden of establishing jurisdiction over a non-resident defendant."). The PSC has not attempted—not in its complaints, nor even now in its opposition—to explain how the defective drywall claims of those whose properties are outside the state in which they filed arise out of CNBM Co., BNBM Group, and BNBM's contacts with those states.

   This Court responded to this precise concern earlier in the litigation by concluding that it could "sever[] and transfer[]" the cases of residents from outside the forum state. *In re Chinese Manufactured Drywall Prod. Liab. Litig.*, 894 F. Supp. 2d at 858 (as to non-Virginia claims); *id.* at 889 (as to non-Florida claims); *id.* at 902 (as to non-Louisiana claims). The PSC now claims that would be a purely cosmetic endeavor that is satisfied if this Court remands—as it must— "the cases … back to the districts where they originated." Rec. Doc. 20935-2 at 32. But following the PSC's advice would defy *BMS* by leaving the litigation in exactly the same state of affairs. If all cases are remanded back to the districts from which they came, that means out-of-

---

[17] The PSC asserts that "[w]hen issues related to multiple states have arisen, it is a manageability issue, not a jurisdictional issue." Rec. Doc. 20935-2 at 31 n.109 (citing David Marcus, *Erie, the Class Action Fairness Act, and Some Federalism Implications of Diversity Jurisdiction*, 48 Wm. & Mary L. Rev. 1247, 1283 (2007)). This is not, however, what the PSC's cited authority says. In fact, it barely mentions personal jurisdiction (and not at all in the cited portion) and certainly does not make the sort of sweeping (under the rug) statement the PSC attributes it.

state homeowners will still remain in out-of-state fora.[18]  In fact, due to the PSC's inexplicably overlapping complaints, many out-of-state property owners will remain in *more than one* out-of-state forum (e.g., a Virginia homeowner may still appear in the Florida and Louisiana *Amorin* and *Brooke* complaints).  After *BMS*, that is clearly impermissible and they must be dismissed from the out-of-state actions.  Nor does the PSC explain how, for example, a North Carolina property owner's case can be remanded to North Carolina given its assertion that the North Carolina complaints are not operative, but simply "protective."  Rather than follow the PSC's lead in adopting a still undefined but clearly ill-conceived *BMS* workaround that leaves the MDL framework vulnerable to reversal on appeal, the Court should adopt the only solution surely permitted by *BMS*: dismissal of out-of-state property owners.

> ***The Court Should Dismiss The Claims Of Nonresidents Predicated Upon Imputation Theories.***  *BMS* also underscores why Taishan's contacts with the forum states may not be

imputed to Defendants.  In concluding otherwise, this Court found BNBM is subject to jurisdiction in Florida and Virginia because Taishan was BNBM's agent and thus Taishan's contacts can be imputed to BNBM.  Rec. Doc. 20739 at 54-79.  But even if an agency relationship existed between the companies (and Defendants dispute that one did), by its nature, such a relationship has limits and therefore a court must analyze the scope of the agency.[19]  *See, e.g.*, Rec. Doc. 20882-1 at 9-10.  Neither this Court nor the PSC engaged in that inquiry.  Had the

---

[18] The "protective" complaints purport to adhere to *BMS*.  However, the claims in those actions must be adjudicated as of the day of filing and there is no basis for applying earlier rulings in this MDL to those proceedings.

[19] If, for example, a drywall manufacturer authorized a subsidiary to exclusively sell, on its behalf, drywall to a condominium developer, but the subsidiary sold some of the manufacturer's drywall to a commercial real estate contractor, the subsidiary would be acting outside the scope of the agency.

Court done so, it would have found that Taishan's drywall sales to the forum states fall outside its agency relationship with BNBM and Plaintiffs' claims do not arise out of Defendants' contacts with the forum states, as *BMS* requires.

The PSC claims, however, that *BMS* is irrelevant to the discussion because "agency was *not* at issue in *BMS*." Rec. Doc. 20935-2 at 33. But when a court says each plaintiff must show his claim "arise[s] out of or relate[s] to the defendant's forum conduct," *BMS*, 137 S. Ct. at 1786, and the sole theory for the defendant's contact is through an intermediary, it naturally follows that the plaintiff must demonstrate his claim falls within the scope of that intermediary relationship. The PSC's literal reading of *BMS*—that the case has no relevance because the word "agency" does not appear throughout—is another instance of dogma substituting for logic, akin to its insistence that a federal judge's citation to *BMS* is insufficient evidence to show the court considered, analyzed, and relied upon the opinion, *see supra* at 7 n.7.

Properly read, *BMS* confirms that for purposes of an agency finding it is not enough for a plaintiff's claim to arise out of Taishan's forum-state conduct. The PSC must show that each Plaintiff's claim arises out of *BNBM*'s contacts with Florida and Virginia. And because, in the Court's view, BNBM's only relevant contacts occurred through Taishan, the PSC must establish that the drywall sale to each Florida and Virginia Plaintiff was a product of BMBM and Taishan's agency relationship. *See, e.g.*, *Bertolini-Mier v. Upper Valley Neurology Neurosurgery P.C.*, No. 16-cv-00035, 2007 WL 4081901, at *5 (D. Vt. Sept. 13, 2017) (when assessing agency for jurisdictional purposes, "the important question … is whether [the alleged principal] directed [the alleged agent] to take action [in the forum state] with respect to [plaintiff's cause of action]").

That showing requires focused consideration of the companies' interactions during the

time of the relevant drywall sales.  The reason being, "[w]hen a court is exercising specific jurisdiction over a defendant, 'arising out of or related to the defendant's contacts with the forum,' the fair warning that due process requires arises not at the time of the suit, but when the events that gave rise to the suit occurred."[20]  *Steel v. United States*, 813 F.2d 1545, 1549 (9th Cir. 1987).  Here, the court's agency determination was not state-specific (as *BMS* requires),[21] focused on drywall sales, nor relegated to contemporaneous events at the time of those sales.  Instead, the Court strung together a host of facts without regard to any of the limiting principles mandated by the Due Process Clause.  Rec. Doc. 20739 at 54-69.

The same reasoning applies to the Court's SBE determination, which never assessed when a supposed SBE relationship between the companies began or its scope (i.e., whether it extended to drywall sales in Louisiana).  *Id.* at 69-79.  Because the evidence does not support either of these showings, the claims against Defendants predicated upon imputation theories must be dismissed.

**The Court Should Decertify The Nationwide Class.**  The consequence of *BMS* is apparent: in the absence of general jurisdiction, plaintiffs are precluded from bringing multi-state

---

[20] *See also Stein v. Horwitz*, 191 F.3d 448 (Table), 1999 WL 710355, at *2 (4th Cir. Sept. 13, 1999) ("As to due process considerations, we assess Horwitz's contacts with Maryland at the time of the accident."); *KMLLC Media, LLC v. Telemetry, Inc*., No. 15-cv-00432, 2015 WL 6506308, at *12 (E.D. Va. Oct. 27, 2015)  ("As Defendants['] representations of March 26, 2015[] occurred well after Plaintiff's alleged losses, Plaintiff's claims cannot plausibly arise from this contact with the forum state."); *Danton v. Innovating Gaming Corp. of Am*., 246 F. Supp. 2d 64, 70 (D. Me. 2003) ("As a general rule, 'personal jurisdiction depends on the defendant's contacts with the forum state at the time the lawsuit was filed,' but due process requires that 'courts must examine the defendant's contacts with the forum at the time of the events underlying the dispute when determining whether they have jurisdiction.'" (citations omitted)).

[21] In other words, the court did not assess the agency relationship as to Florida and Virginia independently.

actions.  Ignoring the logical import of the eight-Justice majority, the PSC zeroes in on Justice

Sotomayor's dissent, proclaiming that her statements characterizing the implications of the

majority opinion were not intended to announce "a new legal principle but instead … lament[]

the potential ramifications of the majority's opinion if the Defendants' interpretation of that

opinion … were adopted."  Rec. Doc. 20935-2 at 36.  But the PSC ignores Justice Sotomayor's

unequivocal recognition:  "[T]he upshot of [*Bristol-Myers*] is that plaintiffs cannot join their

claims together and sue a defendant in a State in which only some of them have been injured."

137 S. Ct. at 1788.  And, notwithstanding the PSC's attempt to treat *BMS* as the *Bush v. Gore* of

jurisdictional opinions, Justice Sotomayor recognized the decision "is likely to have

consequences far beyond this case."  *Id.*

Again, the PSC reverts back to its "class action" standby, claiming *BMS* leaves them

untouched.  To be sure, Justice Sotomayor stated, "The Court today does not confront the

question whether its opinion here would also apply to a class action in which a plaintiff injured

in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were

injured there."  *Id.* at n.4.  However, as the case citations that follow this statement make clear,

this was a nod to the fact that "[n]onnamed class members … may be parties for some purposes

and not for others."  *Id.* (quoting *Devlin v. Scardelletti*, 536 U.S. 1, 9–10 (2002)).  But whatever

personal jurisdiction rules may or may not apply in the context of "nonnamed class members"

are irrelevant here because there are none.  The class definition as sought by the PSC—and

certified by this Court—is limited to named plaintiffs only.  Accordingly, this nationwide class

cannot stand.

## III.   CONCLUSION

For the foregoing reasons and those set out in Defendants' memorandum in support of

their supplemental motion, this Court should respect the ruling in *BMS*, dismiss property owners from the cases filed outside the states in which the properties are located, dismiss claims against Defendants based upon imputation theories, and decertify the nationwide class.

Respectfully submitted,

*/s/ L. Christopher Vejnoska*

L. Christopher Vejnoska (CA Bar No. 96082)
ORRICK, HERRINGTON & SUTCLIFFE
LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Tel: 415-773-5700
Email: cvejnoska@orrick.com

Eric A. Shumsky (D.C. Bar No. 477926)
ORRICK, HERRINGTON & SUTCLIFFE
LLP
Columbia Center
1152 15th Street NW
Washington, D.C. 20005
Tel: 202-339-8400
Email: eshumsky@orrick.com

James L. Stengel (NY Bar No. 1800556)
Xiang Wang (NY Bar No. 4311114)
ORRICK, HERRINGTON & SUTCLIFFE
LLP
51 West 52nd Street
New York, NY, 10019
Tel: 212-506-5000
Email: jstengel@orrick.com
          xiangwang@orrick.com

*Counsel for CNBM Co. Ltd., BNBM (Group) Co. Ltd., and BNBM PLC*

Ewell E. Eagan, Jr. (LA Bar No. 5239)
Donna Phillips Currault (LA Bar No. 19533)
GORDON, ARATA, MONTGOMERY,
BARNETT, MCCOLLAM, DUPLANTIS
& EAGAN, LLC
201 St. Charles Avenue, 40th Floor
New Orleans, LA 70170-4000
Tel: (504) 582-1111
Email: eeagan@gordonarata.com
          dcurrault@gordonarata.com

*Counsel for CNBM Co. Ltd.,*

Harry Rosenberg
LA Bar No. 11465
Phelps Dunbar LLP
365 Canal St., Suite 2000
New Orleans, LA 70130
Tel: (504) 566-1311
Harry.Rosenberg@Phelps.com

*Counsel for BNBM (Group) Co. Ltd. and BNBM PLC*

- 23 -

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing REPLY BRIEF IN SUPPORT OF
SUPPLEMENTAL MOTION ON JURISDICTION AND CLASS CERTIFICATION
FOLLOWING *BRISTOL-MYERS SQUIBB CO. V. SUPERIOR COURT OF CALIFORNIA, SAN
FRANCISCO COUNTY* has been served on Plaintiffs' Liaison Counsel, Russ Herman, and
Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail and upon all parties by
electronically uploading the same to File & Serve in accordance with Pre-Trial Order No. 6, and
that the foregoing was electronically filed with the Clerk of Court of the United States District
Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a
notice of electronic filing in accordance with the procedures established in MDL 2047 on
September 19, 2017.

*/s/ L. Christopher Vejnoska*
L. Christopher Vejnoska (CA Bar No. 96082)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105
Tel:  415-773-5700
Fax: 415-773-5759
Email: cvejnoska@orrick.com

*Counsel for CNBM Co. Ltd., BNBM (Group) Co. Ltd., and
BNBM PLC*

- 24 -