UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL No. 2:09-md-2047 |
| | SECTION L |
| | JUDGE ELDON E. FALLON |
| **THIS DOCUMENT RELATES TO:** *ALL CASES* | MAGISTRATE JUDGE JOSEPH C. WILKINSON, JR. |

**SUPPLEMENTAL BRIEF ADDRESSING *IN RE DEPUY ORTHOPAEDICS, INC.***

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

I.      INTRODUCTION ........................................................................................................ 1

II.     BACKGROUND ON *DEPUY* ..................................................................................... 3

III.    ARGUMENT ................................................................................................................ 6

        A.      The Claims Of Nonresident Plaintiffs Must Be Dismissed From Each Case That
                Comprises This MDL. ....................................................................................... 6

                1.      *DePuy* Reinforces That Federal Courts Cannot Exercise Specific
                        Personal Jurisdiction Over Nonresident Plaintiffs. ............................... 6

                2.      MDL Status Does Not Alter the Traditional Personal Jurisdiction
                        Calculus. ................................................................................................ 8

        B.      *Lexecon* Precludes This Court From Engaging In Factfindings Properly Relegated
                To The Transferor Courts. ............................................................................... 11

IV.     CONCLUSION .......................................................................................................... 16

CERTIFICATE OF SERVICE .............................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Agent Orange Prod. Liab. Litig.*,
   818 F.2d 145 (2d Cir. 1987)......................................................................................10

*Armstrong v.Lasalle Bank Nat'l Ass'n*,
   552 F.3d 613 (7th Cir. 2009) ..................................................................................14

*Bradford v. Telerecovery*,
   No. 16-cv-02933, 2017 WL 2573947 (E.D. La. June 14, 2017) .............................13

*Bristol-Myers Squibb Co. v. Superior Court of California*,
   137 S. Ct. 1773 (2017)..............................................................2, 7, 8, 11, 12, 15, 16

*In re Chinese Manufactured Drywall Prods. Liab. Litig.*,
   767 F. Supp. 2d 649 (E.D. La. 2011).......................................................................10

*In re Chinese-Manufactured Drywall Products Liab. Litig.*¸
   742 F.3d 576 (5th Cir. 2014) ..................................................................................15

*Cooper v. Faith Shipping*,
   No. 6-cv-00892, 2009 WL 1789405 (E.D. La. June 22, 2009) ...............................13

*In re Dental Supplies Antitrust Litig.*,
   No. 16-cv-00696, 2017 WL 4217115 (E.D.N.Y Sept. 20, 2017) ...............................8

*In re DePuy Orthopaedics, Inc.*,
   No. 17-10812, 2017 WL 3768923 (5th Cir. Aug. 31, 2017) ........................ *passim*

*In re Enron Corp. Secs., Derivative & "ERISA" Litig.*,
   511 F. Supp. 2d 742 (S.D. Tex. 2005) ..................................................................9, 10

*In re FMC Corp. Patent Litig.*¸
   422 F. Supp. 1163 (J.P.M.L. 1976).......................................................................9, 10

*Gelboim v. Bank of Am. Corp.*,
   135 S. Ct. 897 (2015)............................................................................................2, 11

*Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*,
   456 U.S. 694 (1982)...................................................................................................8

*Jackson v. FIE Corp.*,
   302 F.3d 515 (5th Cir. 2002) ..................................................................................15

*James v. Frame*,
  6 F.3d 307 (5th Cir. 1993) ................................................................13

*In re Korean Air Lines Co., Ltd.*,
  642 F.3d 685 (9th Cir. 2011) ......................................................9, 10, 11

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
  523 U.S. 26 (1998).........................................................................4, 9, 12

*Mann v. Lincoln Elec. Co.*,
  No. 6-cv-17288, 2011 WL 3205549 (N.D. Ohio July 28, 2011) ...........12

*McFadin v. Gerber*,
  587 F.3d 753 (5th Cir. 2009) ..................................................................7

*In re Nuvaring Prods. Liab. Litig.*,
  No. 8-md-01964, 2009 WL 4825170 (E.D. Mo. Dec. 11, 2009)............12

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
  No. 10-md-01014, 1997 WL 109595 (E.D. Pa. March 7, 1997) .............12

*Point Landing, Inc. v. Omni Capital Int'l, Ltd.*,
  795 F.2d 415 (5th Cir. 1986) (en banc) ..............................................5, 8

*Pope v. United States*,
  323 U.S. 1 (1944)...................................................................................13

*Seiferth v. Helicopteros Atuneros, Inc.*,
  472 F.3d 266 (5th Cir. 2006) ..................................................................7

*In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig. II*,
  953 F.2d 162 (4th Cir. 1992) ................................................................10

*In re Testosterone Replacement Therapy Prods. Liab. Litig. Coordinated Pretrial
  Proceedings*,
  136 F. Supp. 3d 968 (N.D. Ill. 2015) ...................................................10

*United Artists Corp. v. Freeman*,
  605 F.2d 854 (5th Cir. 1979) ................................................................13

**Statutes**

28 U.S.C. § 1407.........................................................................1, 4, 8, 9, 11, 14

Class Action Fairness Act............................................................................8

**Rules**

Fed. R. Civ. P.  23........................................................................................8

Fed. R. Civ. P. 55(b) ...................................................................................................13

**Other Authorities**

5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1351
(3d ed.) ....................................................................................................................7

15 Charles Alan Wright & Arthur R. Miller, 15 *Federal Practice & Procedure*
§ 3866 (4th ed.) ...............................................................................................10, 12

Andrew D. Bradt, *The Long Arm of Multidistrict Litigation*, 59 Wm. & Mary L.
Rev. __ (2017) ........................................................................................................10

H.R. Rep. 90-1130 .....................................................................................................12

Following the Fifth Circuit's decision in *In re DePuy Orthopaedics, Inc.*, No. 17-10812, 2017 WL 3768923 (5th Cir. Aug. 31, 2017), this Court ordered the parties to submit supplemental briefs addressing the case's relevance to this litigation and, in particular, the pending motion to dismiss, Rec. Doc. 20942.  Defendants CNBM Co., BNBM Group, and BNBM PLC submit this brief in compliance with the Court's order.

## I.      INTRODUCTION

Even under the best of circumstances, multidistrict litigation is a significant undertaking. A single judge is asked to conduct "coordinated or consolidated pretrial proceedings" for hundreds, often thousands, of cases in the hope that it will "promote the just and efficient conduct of such actions."  28 U.S.C. § 1407.  Among the challenges that inevitably arise are thorny questions of personal jurisdiction.

This MDL is no exception.  What makes it exceptional though—and what makes this Court's task even more challenging—is the way in which the PSC has elected to prosecute the cases.  Rather than file state-specific complaints that would facilitate a lawful and more efficient resolution of Plaintiffs' claims (by bucketing the cases according to geography and correspondingly applicable law), the PSC inexplicably filed the very same complaint—with the very same plaintiffs—in multiple states.  Adding to the confusion about which plaintiff was bringing suit where, the PSC inexplicably asserted putative class actions on behalf of all named plaintiffs.  At the same time, the PSC—apparently deliberately—waited until August 1 to file complaints in the many other states where claimants' properties were located.  The PSC then prosecuted each case as if it would be possible for the same plaintiff to bring—and actively pursue—the identical claim in multiple jurisdictions, and it did so without offering any principled choice of law analysis concerning which state's—or country's—law governs the

personal jurisdiction analysis of a given plaintiff's claim.  Defendants have repeatedly taken

issue with the PSC's scattershot approach, explaining that state-specific distinctions are required.

*Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017)

("*BMS*"), crystallizes the point Defendants have been making all along.  Were there any doubt

before, *BMS* now makes clear that the PSC's multistate complaints cannot stand.  Rec. Doc.

20882-1 (memorandum in support); Rec. Doc. 20956-2 (reply memorandum).  The PSC still has

not offered any explanation—not in its complaints, its Rule 12 briefing, or in response to

Defendants' *BMS* motion—for why any out-of-state plaintiff should be permitted to bring his

claim in a state other than the one in which he resides or his property is located.  And of course,

it cannot.  *See BMS*, 137 S. Ct. at 1781 (there must be "a connection between the forum and the

specific claims at issue").

To be clear, *BMS* was no watershed moment in personal jurisdiction jurisprudence.  An

eight-Justice-majority recognized that the Court's "settled principles regarding specific

jurisdiction control th[e] case."  *Id.*  It thus comes as no surprise that, without even mentioning

*BMS*, the Fifth Circuit in *DePuy* expressed concern with a federal district court exercising

personal jurisdiction over the claims of plaintiffs whose injuries did not result from the

defendant's conduct in the state where the court exercising jurisdiction is located.

A federal district court's lack of authority to exercise personal jurisdiction over such

claims, the Fifth Circuit recognized, is no different in the MDL context.  And that is the very

point of *DePuy*:  The Fifth Circuit made clear in absolutely unmistakable terms that MDL courts

must respect the cases as individual actions, rather than treat the MDL as creating what the

Supreme Court has termed a "monolithic multidistrict 'action.'"  *Gelboim v. Bank of Am. Corp.*,

135 S. Ct. 897, 904 (2015) (citation omitted).  When, as here, the defendants seek to dismiss

- 2 -

claims from a given case because the transferor court would not have had jurisdiction over them, that motion is properly before the MDL. But, as was of particular concern to the Fifth Circuit in *DePuy*, an MDL court should not encroach upon the domain of transferor courts by extending its jurisdictional reach beyond pretrial issues and engaging in factual determinations statutorily reserved to transferor courts. Thus, this Court should refrain from making the liability and damages findings the PSC seeks.

The concerns identified in *DePuy* are present here in spades. As we explain below, *DePuy* confirms that the Court must dismiss the claims of all plaintiffs whose properties lay outside of the state in which they brought suit. Likewise, the Court cannot exceed the statutory and constitutional limitations on its jurisdiction by holding onto cases beyond the pre-trial phase. Simply put, *DePuy* makes clear that this Court cannot use its powers as an MDL court to avoid the multitude of problems created by the PSC's numerous, overlapping multistate complaints.

## II.   BACKGROUND ON *DEPUY*

After Defendants filed their *BMS* motion, the Fifth Circuit issued its decision in *In re DePuy Orthopaedics, Inc.*, No. 17-10812, 2017 WL 3768923 (5th Cir. Aug. 31, 2017). *DePuy* arose out of an MDL in the Northern District of Texas relating to product liability claims regarding an allegedly defective hip-implant device. *Id.* at *1-2. Following undisputed *Lexecon* waivers on venue and personal jurisdiction for two cases, the MDL court held two bellwether trials (of claims brought by a plaintiff from Montana and others from Texas). *Id.* at *2-3. When the MDL court proposed a third trial involving California plaintiffs, the defendants unsuccessfully objected on jurisdiction and venue grounds. *Id.* at *3. The defendants similarly objected when the court proposed a fourth bellwether trial involving New York plaintiffs; again, though, the court denied the request, claiming that defendants had categorically waived all

*Lexecon* objections.  *Id.*  Left with no other way to avoid a trial they thought erroneous, defendants sought mandamus relief from the Fifth Circuit.  *Id.*

The Fifth Circuit began by reiterating the limited jurisdiction of MDL courts:  "An MDL court can conduct pretrial proceedings *but cannot try a case that it would not be able to try without its MDL status*."  *Id.* at *2 (emphasis added).  This is because "[f]ederal law limits an MDL court's jurisdiction over a transferred case to pretrial proceedings and provides that once those are completed, the MDL court *must* remand the transferred case to the district from which it was transferred."  *Id.* (emphasis added) (citing 28 U.S.C. § 1407(a)); *see also Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 34-37, 41-43 (1998).  Bellwether trials of transferred cases are an exception to this normal rule—and this exception requires an express *Lexecon* waiver.  *DePuy*, 2017 WL 3768923, at *2.

The court in *DePuy* was tasked with resolving the scope of the claimed *Lexecon* waivers.  Defendants argued that any waiver was limited to the first two trials and that they had not agreed to waive venue and personal jurisdiction for the third and fourth bellwether trials involving California and New York plaintiffs.  *Id.* at *3-4.  Plaintiffs argued that the *Lexecon* waivers applied broadly to the entire MDL.  *Id.* at *4-5. The MDL court concluded defendants had "clearly and unequivocally represented to th[e] [MDL] Court on multiple occasions that they waived any objections based on venue to trying any of the cases in the MDL in the Northern District of Texas."  *Id.* at *3.

The Fifth Circuit disagreed, explaining that MDL courts cannot unilaterally override personal jurisdiction objections.  It reiterated that in the MDL context there is "a powerful presumption in favor of remand, one that cannot easily be overcome."  *Id.* at *4 (citing *Lexecon*, 523 U.S. at 35).  Accordingly, any *Lexecon* waiver "must be 'clear and unambiguous.'"  *Id.*  In

*DePuy*, however, the Fifth Circuit concluded that the defendants' waiver with respect to the first two bellwether trials included "at most … ambiguous language that did not indicate a clear intent to waive all *Lexecon* objections to trials before the MDL court." *Id.*  Accordingly, the Fifth Circuit explained in pointed terms that the MDL court's decision to proceed with a bellwether trial of New York plaintiffs "was grave error." *Id.*  So troubled was the Fifth Circuit, it addressed the merits of the mandamus petition—that there had been no *Lexecon* waiver—even though two judges concluded that the standard for issuing a writ had not been satisfied. *See id.* at *1-2 & n.4 (court of appeals does not exceed its "proper role" by holding "that a district court erred despite stopping short of issuing a writ of mandamus"); *see also id.* at *6-7 (Costa, J.) (concurring separately because he believed the majority should not have reached the question whether there had been a *Lexecon* waiver).

Writing separately, Judge Jones explained she would have gone one step further.  Not only was the district court's ruling erroneous, she would have granted mandamus because that is "what the writ was intended to do—confine the district court to a lawful exercise of its prescribed jurisdiction." *Id.* at *8-11 (Jones, J., concurring in part and dissenting in part).  Of particular concern was the jurisdictional morass in the MDL.  As she explained, absent a global waiver of personal jurisdiction (which had not occurred), "the Northern District [of Texas] had no claim to personal jurisdiction over the cases brought by New York plaintiffs." *Id.* at *8.  By forging ahead without such a waiver, the MDL court had employed "'reach out and touch someone' power wholly at odds with its Constitutional and statutory limitations." *Id.* at *8 (citing *Point Landing, Inc. v. Omni Capital Int'l, Ltd.*, 795 F.2d 415, 423 (5th Cir. 1986) (en banc)).

- 5 -

### III.    ARGUMENT

*DePuy* is relevant here in several critical ways.  First, it highlights that federal courts cannot exercise personal jurisdiction over claims brought by nonresident plaintiffs.  *Infra* § III.A.1.  Second, it makes clear that these critical limitations on personal jurisdiction do not evaporate merely because a federal complaint is part of an MDL.  *Infra* § III.A.2.  Finally, *DePuy* leaves little doubt that this Court lacks authority to engage in any trial-like proceedings absent an explicit *Lexecon* waiver, which has not occurred here.  *Infra* § III.B.

### A.    The Claims Of Nonresident Plaintiffs Must Be Dismissed From Each Case That Comprises This MDL.

#### 1.    *DePuy* Reinforces That Federal Courts Cannot Exercise Specific Personal Jurisdiction Over Nonresident Plaintiffs.

Underlying the Fifth Circuit's decision is the recognition that an MDL court cannot exercise specific personal jurisdiction over claims of plaintiffs who have no connection with the forum state.  Indeed, before the Fifth Circuit even addressed the *Lexecon* issue, it made clear that the New York cases (slated to comprise the fourth bellwether trial) must be treated as the distinct actions they are—cases that originated outside of Texas.  *See DePuy*, 2017 WL 3768923, at *2 ("Cases that are directly filed in an MDL court are treated 'as if they were transferred from a judicial district sitting in the state where the case originated.'"); *see also id.* at *5 (MDL court retaining cases raised a "personal-jurisdiction issue").  By proposing to adjudicate those actions rather than remand to the transferor court, the bellwether trial contravened the MDL court's statutory mandate because it was exercising personal jurisdiction over claims it could not otherwise adjudicate.

Judge Jones explained why.  "But for the possibility of a 'global waiver' of personal jurisdiction, the Northern District [of Texas] had no claim to personal jurisdiction over the cases:

none of the plaintiffs' surgeries occurred in Texas; the plaintiffs aren't Texas residents; and

neither general nor specific jurisdiction exists over the petitioners for purposes of these

disputes." *Id.* at *8. The result, Judge Jones continued, was an MDL court impermissibly

"asserting 'reach out and touch someone' power," which is "wholly at odds with its

Constitutional and statutory limitations." *Id.* (citation omitted).

As Defendants have argued, that is the same rule required by *BMS*. *See* Rec. Doc.

20882-1 at 7-9. Specific jurisdiction, the Supreme Court explained, "is confined to adjudication

of issues deriving from, or connected with, the very controversy that established jurisdiction."

*BMS*, 137 S. Ct. at 1780. If the plaintiff fails to establish a direct "connection between the forum

and the specific claims," his claim must be dismissed. *Id.* In this way, as the Fifth Circuit has

explained, "specific personal jurisdiction" is a "claim-specific inquiry." *See Seiferth v.*

*Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006); *see also McFadin v. Gerber*, 587

F.3d 753, 759 (5th Cir. 2009) ("In this circuit, specific personal jurisdiction is a claim-specific

inquiry."). That means that, in diversity cases like this one, "[p]ermitting the legitimate exercise

of specific jurisdiction over one claim to justify the exercise of specific jurisdiction over a

different claim that does not arise out of or relate to the defendant's forum contacts would violate

the Due Process Clause." *Seiferth,* 472 F.3d. at 275. Put differently, "[t]here is no such thing as

supplemental specific personal jurisdiction." 5B Charles A. Wright & Arthur R. Miller, Federal

Practice & Procedure § 1351 n.30 (3d ed.).

The complaints at issue in this MDL give rise to the very same concerns that were present

in *DePuy*. Where each plaintiff's claim arises out of the location of his or her home, a federal

court has no basis to exercise jurisdiction over out-of-state plaintiffs. But that is exactly what the

PSC would have this Court do. Complaints filed in Virginia, Florida, and Louisiana all assert the

- 7 -

claims of plaintiffs who have no connection to the state in which their complaints were filed. These complaints are fundamentally flawed, and unless the Court acts to correct them, this basic jurisdictional defect is a ticking time bomb that will blow up the case—whether following judgment or in interim proceedings in the Fifth Circuit—long before there could be any recovery.

The PSC responds with various arguments for why *BMS* does not apply to MDLs or to class actions (as a consequence of Rule 23 and CAFA). *DePuy*, however, shows just the opposite: It employs the same reasoning underlying *BMS* and does so in circumstances similar to those present here. Indeed, just last week another federal district court rejected the very argument advanced by the PSC: that *BMS* "has no effect on the law in class actions because the case before the Supreme Court was not a class action." *See In re Dental Supplies Antitrust Litig.*¸ No. 16-cv-00696, 2017 WL 4217115, at *9 (E.D.N.Y Sept. 20, 2017). Instead, the court explained, "[p]ersonal jurisdiction in class actions must comport with due process just the same as any other case." *Id*. The PSC cannot avoid the problem created by its overlapping, duplicative, multistate complaints. The only lawful solution to this problem is for the Court to dismiss from each action comprising the MDL the claims of out-of-state plaintiffs.

### 2.      MDL Status Does Not Alter the Traditional Personal Jurisdiction Calculus.

There can be no doubt, then, that the PSC's complaints would raise serious jurisdictional concerns under *BMS* and *DePuy* no matter in which federal court they were filed. MDL courts have no authority to circumvent these problems by "creat[ing] jurisdictional law of their own," because they "must ground their personal jurisdiction on a federal statute or rule." *Point Landing, Inc.*, 795 F.2d at 423 (quoting *Insurance Corporation of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 711 (1982) (Powell, J., concurring)). The only federal statute

the MDL court could rely on for jurisdiction here—28 U.S.C. § 1407—does nothing to alter the conclusion that federal courts lack jurisdiction over claims with no connection to the forum state in which they sit.  Because § 1407 requires the MDL court to treat each case comprising the MDL separately and analyze the personal jurisdiction problems in the same manner the transferor court would, an MDL Court is no less required to dismiss the claims of nonresident plaintiffs.

That § 1407 requires this result is made plain by the limits that statute places on MDL courts.  Section 1407 provides that actions "involving one or more common questions of fact" may be "transferred to any district for coordinated or consolidated pretrial proceedings."  The aim of this transfer is to "promote the just and efficient conduct of such actions."  28 U.S.C. § 1407(a).  But the statute also "limits an MDL court's jurisdiction over a transferred case to pretrial proceedings."  *DePuy*, 2017 WL 3768923, at *2.  In other words, an MDL court has broad authority to exercise jurisdiction over cases transferred to it, but that authority is limited to pretrial proceedings.  *See id.*; *In re FMC Corp. Patent Litig.*¸ 422 F. Supp. 1163, 1165 (J.P.M.L. 1976); *see also In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 511 F. Supp. 2d 742, 789 (S.D. Tex. 2005).

Once pretrial proceedings are complete, an MDL court "cannot try a case that it would not be able to try without its MDL status."  *DePuy*, 2017 WL 3768923, at *2; *see also In re Korean Air Lines Co., Ltd.*, 642 F.3d 685, 699-700 (9th Cir. 2011) ("[T]he district court's jurisdiction as an MDL transferee court is generally coextensive with pretrial proceedings.").  Rather, it "must remand the transferred case to the district from which it was transferred."  *DePuy*, 2017 WL 3768923, at *2; *see also Lexecon*, 523 U.S. at 40 (holding that "the straightforward language [of § 1407] imposing the Panel's responsibility to remand … [prohibits]

any self-assignment power in a transferee court").

Because the MDL court's jurisdiction is no broader than that of the transferor court, parties are entitled to seek dismissal of a claim on the basis that the transferor court would not have had personal jurisdiction over the claim transferred to the MDL court. *See, e.g.*, *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 767 F. Supp. 2d 649, 656 n.2 (E.D. La. 2011); *Korean Air Lines*, 642 F.3d at 699 ("[A] transferee judge can handle all types of pretrial matters that otherwise would have been handled by the transferor court.").[1]  The MDL can exercise personal jurisdiction over a claim only to the same extent the transferor court could, and it analyzes personal jurisdiction in the same way that the transferor court would. *See Chinese Manufactured Drywall*, 767 F. Supp. 2d at 656 n.2; *see also In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig.-II*, 953 F.2d 162, 165 (4th Cir. 1992) (MDL statute "is merely procedural and does not expand the jurisdiction of the district court to which the cases are transferred"); *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 163 (2d Cir. 1987) (citing *FMC Corp.*, 422 F. Supp. at 1165); *Enron Corp.*, 511 F. Supp. 2d at 789; *In re Testosterone Replacement Therapy Prods. Liab. Litig. Coordinated Pretrial Proceedings*, 136 F. Supp. 3d 968, 973 (N.D. Ill. 2015).

Consistent with these limits on an MDL court's jurisdiction, *DePuy* confirms the need to focus at all times on the jurisdiction of the court from which the case originated.  2017 WL 3768923, at *2.  By doing so, the MDL avoids becoming a "monolithic multidistrict 'action,'"

---

[1] *See also* 15 Charles Alan Wright & Arthur R. Miller, 15 *Federal Practice & Procedure* § 3866 (4th ed.) ("[T]he transferee court may enter dispositive orders … including motions to dismiss for … the transferor court's lack of personal jurisdiction."); Andrew D. Bradt, *The Long Arm of Multidistrict Litigation*, 59 Wm. & Mary L. Rev. __ (2017) ("The MDL statute does not expand the jurisdiction of the federal district courts because any challenge to the jurisdiction of the transferor court is available in the MDL court."), *available at* http://scholarship.law.berkeley.edu/cgi/viewcontent.cgi?article=3797&context=facpubs

*Gelboim*, 135 S. Ct. at 904, and the MDL court can ensure that the individual cases "remain fundamentally separate actions, intended to resume their independent status once the pretrial stage of litigation is over," *Korean Air Lines*, 642 F.3d at 700 & n.13; *see also Gelboim*, 135 S. Ct. at 904 (individual cases must "retain their separate identities").

The PSC has failed entirely to respect these basic rules. By filing multistate, duplicative complaints in multiple jurisdictions, the PSC has ignored that it matters for jurisdictional purposes both where Plaintiffs' claims arose and where their cases were filed. By urging the Court to ignore the significance of these details and to move forward with a focus on the claims raised in the MDL as a whole, the PSC has undermined the principle that an MDL court's jurisdiction is over the individual, separate cases that make up the MDL. In short, the PSC has mashed together various complaints in the hope that something will stick. In doing so, the PSC has multiplied the inherent complexity of the MDL and caused a "huge expenditure of legal resources on utterly unnecessary jurisdictional wrangling." *DePuy*, 2017 WL 3768923, at *10 (Jones, J., concurring in part and dissenting in part). The PSC's unwillingness to remedy these jurisdictional problems continues to plague this MDL. To provide a way forward—and clean up the fundamentally flawed complaints filed by the PSC in this case—this Court should analyze each separate action that comprises the MDL and dismiss any nonresident plaintiffs, *see supra* § III.A.1.

**B.**   ***Lexecon* Precludes This Court From Engaging In Factfindings Properly Relegated To The Transferor Courts.**

Not only does *DePuy* confirm Defendants' *BMS* arguments, it also addresses whether and in what circumstances MDL courts may retain jurisdiction over claims following pretrial proceedings. Section 1407 allows for the transfer of actions pending in different districts "to any district for coordinated or consolidated *pretrial* proceedings." (emphasis added). However, the

statute "obligates the Panel to remand any pending case to its originating court when, at the latest, those pretrial proceedings have run their course." *Lexecon*, 523 U.S. at 34.[2]  That remand obligation is mandatory.  *See id.* at 35.  MDL courts have no discretion to retain cases for factual resolution of claims they would otherwise "not be able to try without [their] MDL status." *DePuy*, 2017 WL 3768923, at *2.

The PSC has already impermissibly pressed this Court to expand its jurisdiction beyond pretrial proceedings.  On the heels of filing its overlapping, duplicative, multistate complaints, the PSC sought and obtained certification of its peculiarly-defined, non-representative class consisting solely of named plaintiffs, Rec. Doc. 18028.  From there, the PSC pivoted to class damages.  At that point, the PSC should have proposed that the Court remand the cases to the transferor courts.  But it did not.  Instead, the PSC moved the Court to issue a damages determination applicable to *all* claimants in *all* states irrespective of the forum in which their claims originated—and in utter disregard of the limitations on the power of an MDL court.[3]  Rec.

---

[2] The statute does not define what constitutes pretrial proceedings, but they "generally involve deposition and discovery" and other matters governed by rules like Rule 16 and Rules 26-37. H.R. Rep. 90-1130, 1968 WL 4929, at *1900 (Mar 4, 1968); *see also In re Nuvaring Prods. Liab. Litig.*, No. 8-md-01964, 2009 WL 4825170, at *1 (E.D. Mo. Dec. 11, 2009) ("The primary purpose behind assigning multidistrict litigation to a transferee court is to promote efficiency through the coordination of discovery."); 15 Charles Alan Wright & Arthur R. Miller, *supra*, § 3866 (interpreted "broadly" to "give the transferee judge control over any and all proceedings before trial").  As one court put it, "the statute charges MDL courts with getting cases trial-ready, and then remanding them to the originating, transferor courts for trial."  *Mann v. Lincoln Elec. Co.*, No. 6-cv-17288, 2011 WL 3205549, at *2 (N.D. Ohio July 28, 2011) (citation omitted). And a court may find it prudent to suggest remand when resolving pretrial matters would not avoid the need to resolve an issue of fact at trial.  *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 10-md-01014, 1997 WL 109595, at *3 (E.D. Pa. March 7, 1997).

[3] By filing overlapping complaints on behalf of the same plaintiffs in several courts, the PSC made this Court's job of determining which forum was the proper home to each claim particularly challenging.  As we have explained, *BMS* is not only constitutionally required, but offers the very "end-game" path that the Court has asked the parties to provide.

Doc. 18086-1.  That required numerous factual determinations, including, for instance, assessing the credibility of Plaintiffs' experts and the propriety of their models.  *Id.* at 5, 8.[4]  Indeed, the PSC could not have been much clearer that it had moved beyond pretrial issues to resolution of damages calculation, including assessment of experts: "The key to a[] [damages] estimate is the judgment and the experience of the estimator.  In some respects, it's more art than science." June 9, 2015 Hearing Transcript at 7.  Such fact-intensive inquiries are quintessential trial-type undertakings that should have been resolved by the transferor courts, not the MDL court.

Adding a second level of error to the first, the PSC has since proposed that this Court hold bellwether trials in which it would preside over adjudications involving nonresident plaintiffs.  *See, e.g.*, Rec. Doc. 20613-2 at 15 ("Plaintiffs propose that the bellwether Plaintiff be a former owner in Virginia, *e.g.* Ms. Germano, since many of the Virginia class members have suffered these damages and the PSC has collected relevant data for these class members to prove up their damages."); *id.* at 28-32; *see also* Rec. Doc. 20913 at 8 (asking this Court not to remand the *Amorin* cases, to enter verdicts on remediation damages, and to resolve remaining damages claims by conducting "mini-trials").  That these too extend beyond permissible pretrial

_____

[4] Plaintiffs did not ask for a sum certain, and so judgment in these cases can come only after damages are determined through a trial-like proceeding.  *See* Fed. R. Civ. P. 55(b); *Bradford v. Telerecovery*, No. 16-cv-02933, 2017 WL 2573947, at *4 (E.D. La. June 14, 2017) ("[T]he Fifth Circuit instructs that 'damages should not be awarded without a hearing or a demonstration by detailed affidavits *establishing* the necessary facts.'" (emphasis added) (quoting *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)); *James v. Frame*, 6 F.3d 307, 311 (5th Cir. 1993) (upholding default judgment where court had made "findings on the basis of an ample record"); *see also Pope v. United States*, 323 U.S. 1, 22 (1944) ("It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly."); *Cooper v. Faith Shipping*, No. 6-cv-00892, 2009 WL 1789405, *4-6 (E.D. La. June 22, 2009) (setting damages only after evidentiary hearing). And certainly, such a process could not be described as a mere "pretrial proceeding."

proceedings is evidenced by the PSC's express reference to them as "bench trials."  Rec. Doc. 20613-2 at 22.  Thus, any effort to proceed as the PSC proposes would contravene § 1407 and *Lexecon*.

There is one exception to the *Lexecon* rule prohibiting an MDL court retaining cases beyond pretrial proceedings: waiver.  However, given the "presumption in favor of remand," any waiver must be "clear and unambiguous."  *In re DePuy Orthopaedics, Inc.*, 2017 WL 3678923, at *4.  And here, there has been no waiver, much less the sort of "clear and unambiguous" waiver required by *DePuy*.  CNBM Co, BNBM Group, or BNBM PLC have not agreed to engage in bellwether (or any other) trials in this Court.  In fact, from the moment Defendants appeared in this litigation, they have sought dismissal of claims against them for numerous reasons, including lack of personal jurisdiction.  In *DePuy*, the district court committed "grave error" by extending an ambiguous *Lexecon* waiver (that could be understood to apply to some bellwether trials) into a blanket waiver of all *Lexecon*-based objections.  *See id.*  Here, the error would be all the more apparent given Defendants' repeated insistence that they do not belong in this case, wrapped in an order from this Court that their participation in the meantime waived no defenses available to them.  Rec. Doc. 18583.[5]

This Court's entry of defaults against the Defendants does not give rise to a waiver of objections to this Court retaining jurisdiction.  In the case of a default outside of the MDL context, a party can always mount a *de novo* challenge to the default by arguing the Court was

---

[5] Even without that order, Defendants' participation in the MDL proceedings would not waive *Lexecon* objections.  In light of the remand presumption and Defendants' repeated insistence they do not belong in any federal court, any participation in proceedings before the MDL court does not "evidence[] an intent contrary to [the MDL Statute's] mandate, relinquishing the right to remand the case and consenting to retention of the case by the transferee court."  *See Armstrong v. Lasalle Bank Nat'l Ass'n*, 552 F.3d 613, 617 (7th Cir. 2009).

- 14 -

without personal jurisdiction to enter the default. *See Jackson v. FIE Corp.*, 302 F.3d 515, 523 (5th Cir. 2002); *accord In re Chinese-Manufactured Drywall Products Liab. Litig.,* 742 F.3d 576, 584 (5th Cir. 2014) (reviewing motion to vacate a default judgment *de novo* because the motion was premised on the absence of personal jurisdiction).  Indeed, even if the party is totally absent from the litigation until judgment is entered, "a party's right to contest personal jurisdiction is not waived by his failure to appear at all." *Jackson*, 302 F.3d at 523.  And of course, to repeat, the Court's preservation order, entered after all extant—and preliminary— defaults were awarded eviscerates any default-based waiver assertion.

In short, given the presumption in favor of remand to the transferor court, the same must be true here.  If anything, the need for an affirmative waiver of the right of remand means that it is *more* difficult to waive an objection to the MDL court retaining jurisdiction.  *Cf. Jackson,* 302 F.3d at 523 (a party may waive an objection to personal jurisdiction by failing "to assert the objection in his first pleading or general appearance").

\* \* \*

Phrased directly, *DePuy*, in concert with *BMS*, leaves this Court only one option:  it must follow these controlling precedents.  As an MDL court, it must treat separate cases separately (a command the PSC has repeatedly ignored) and make clear which nonresident claims require dismissal from which actions.

It is best to resolve these issues now.  To do otherwise, in contravention of the basic rules limiting an MDL to pretrial proceedings, would constitute a "grave error."  *Id.* at \*4.  It makes no sense to ignore these problems and to trudge forward so long as out-of-state plaintiffs remain in each of these cases.  That jurisdictional defect threatens to undermine this Court's work and raises the specter that the Fifth Circuit will undo any proceedings involving claims over which

this Court never had jurisdiction in the first place.

## IV.   CONCLUSION

For the foregoing reasons, and those set out in Defendants' *BMS* briefing, this Court should respect the rulings of *BMS* and *DePuy*, dismiss property owners from those cases filed outside the states in which the properties are located and recognize the impropriety of extending its jurisdiction beyond pretrial proceedings.

Dated: September 29, 2017

Respectfully submitted,

*/s/ L. Christopher Vejnoska*

| | |
|---|---|
| L. Christopher Vejnoska (CA Bar No. 96082) | James L. Stengel (NY Bar No. 1800556) |
| ORRICK, HERRINGTON & SUTCLIFFE LLP | Xiang Wang (NY Bar No. 4311114) |
| The Orrick Building | ORRICK, HERRINGTON & SUTCLIFFE LLP |
| 405 Howard Street | 51 West 52nd Street |
| San Francisco, CA  94105 | New York, NY, 10019 |
| Tel:  415-773-5700 | Tel:  212-506-5000 |
| Email:  cvejnoska@orrick.com | Email:  jstengel@orrick.com |
| | xiangwang@orrick.com |

Eric A. Shumsky (D.C. Bar No. 477926)
ORRICK, HERRINGTON & SUTCLIFFE
LLP
Columbia Center
1152 15th Street NW
Washington, D.C. 20005
Tel: 202-339-8400
Email: eshumsky@orrick.com

*Counsel for CNBM Co. Ltd., BNBM (Group) Co. Ltd., and BNBM PLC*

Ewell E. Eagan, Jr. (LA Bar No. 5239)
Donna Phillips Currault (LA Bar No. 19533)
GORDON, ARATA, MONTGOMERY,
BARNETT, MCCOLLAM, DUPLANTIS
& EAGAN, LLC
201 St. Charles Avenue, 40th Floor
New Orleans, LA 70170-4000
Tel: (504) 582-1111
Email: eeagan@gordonarata.com
        dcurrault@gordonarata.com

*Counsel for CNBM Co. Ltd.,*

Harry Rosenberg
LA Bar No. 11465
Phelps Dunbar LLP
365 Canal St., Suite 2000
New Orleans, LA  70130
Tel:  (504) 566-1311
Harry.Rosenberg@Phelps.com

*Counsel for BNBM (Group) Co. Ltd. and BNBM PLC*

- 17 -

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the above and foregoing SUPPLEMENTAL BRIEF ADDRESSING

*IN RE DEPUY ORTHOPAEDICS, INC.* has been served on Plaintiffs' Liaison Counsel, Russ

Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail and upon all

parties by electronically uploading the same to File & Serve in accordance with Pre-Trial Order

No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States

District Court for the Eastern District of Louisiana by using the CM/ECF System, which will

send a notice of electronic filing in accordance with the procedures established in MDL 2047 on

September 29, 2017.

> */s/ L. Christopher Vejnoska*
> L. Christopher Vejnoska (CA Bar No. 96082)
> ORRICK, HERRINGTON & SUTCLIFFE LLP
> The Orrick Building
> 405 Howard Street
> San Francisco, CA  94105
> Tel:  415-773-5700
> Fax: 415-773-5759
> Email: cvejnoska@orrick.com
>
> *Counsel for CNBM Co. Ltd., BNBM (Group) Co. Ltd., and BNBM PLC*