# EXHIBIT "1"

```
1                    UNITED STATES DISTRICT COURT

2                    EASTERN DISTRICT OF LOUISIANA

3

4

5   IN RE:  CHINESE MANUFACTURED      *   Docket 09-MD-2047
            DRYWALL PRODUCTS          *
6           LIABILITY LITIGATION      *   February 11, 2010
                                      *
7   This Document Relates to All Cases *  9:00 a.m.
    * * * * * * * * * * * * * * * * * *

8

9

10                  STATUS CONFERENCE BEFORE THE
                     HONORABLE ELDON E. FALLON
11                  UNITED STATES DISTRICT JUDGE

12

13  APPEARANCES:

14
    For the Plaintiffs:          Herman Herman Katz & Cotlar
15                               BY:  RUSS M. HERMAN, ESQ.
                                 820 O'Keefe Avenue
16                               New Orleans, Louisiana 70113

17
    For the Defendant:           Frilot, LLC
18                               BY:  KERRY J. MILLER, ESQ.
                                 1100 Poydras Street, Suite 3700
19                               New Orleans, Louisiana 70163

20
    For the Homebuilders:        Stone Pigman Walther,
21                                 Wittmann & Hutchinson
                                 BY:  PHILLIP WITTMANN, ESQ.
22                               546 Carondelet Street
                                 New Orleans, Louisiana 70130
23

24

25
```

1    APPEARANCES CONTINUED:

2

3    Also Participating:          Dawn M. Barrios, Esq.
                                   Arnold Levin, Esq.
                                   Judy Barrasso, Esq.
4                                  Ralph Hubbard, Esq.
                                   Daniel Becnel, Esq.

5

6    Official Court Reporter:     Jodi Simcox, RMR, FCRR
                                   500 Poydras Street
7                                  Room B-406
                                   New Orleans, Louisiana 70130
8                                  (504) 589-7778

9

10

11   Proceedings recorded by mechanical stenography, transcript

12   produced by computer.

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        <u>PROCEEDINGS</u>

2                      **(February 11, 2010)**

3            **THE DEPUTY CLERK:**  Everyone rise.

4            **THE COURT:**  Be seated, please.  Good morning, ladies

5    and gentlemen.  Call the case, please.

6            **THE DEPUTY CLERK:**  MDL-2047, *In re:  Chinese drywall.*

7            **THE COURT:**  Counsel, make their appearance for the

8    record.

9            **MR. HERMAN:**  May it please the Court.  Good morning,

10   Judge Fallon, Russ Herman for the plaintiffs.

11           **MR. MILLER:**  Good morning, Your Honor.  Kerry Miller

12   on behalf of the defense steering committee.

13           **MR. WITTMANN:**  Phil Wittmann on behalf of the

14   Homebuilders.

15           **THE COURT:**  Okay.  Fine.  I know we have a number of

16   people here in the courtroom, and I also have over 130 people

17   on the line participating in this conference.  So when you

18   speak, please use the microphone so that they can hear you.

19               I have met with the liaison counsel and lead

20   counsel in this matter and discussed with them the proposed

21   agenda.  This is a monthly status conference.  I'll hear from

22   the parties at this time.

23               The first matter on the agenda is pretrial

24   orders.

25           **MR. HERMAN:**  May it please the Court.  Russ Herman

1    for plaintiffs.  Your Honor, first, I want to mention again the

2    Court's Web site at www.laed.uscourts.gov.

3                    Your Honor, with respect to roman numeral I in

4    the first three pages of Your Honor's joint report, I want to

5    point out for the record, and for those on the phone, that

6    there are 18 pretrial orders which Your Honor has executed,

7    which this case is being managed, and each attorney

8    representing any party -- or every attorney representing any

9    party is required to read those pretrial orders and comply.

10                    The plaintiffs, for those individual defendants

11   who are recently served, we have extended, by courtesy, 50 days

12   within which to file responsive pleadings on answers.  However,

13   there are some pretrial orders in effect that require parties

14   to fill out defendant fact sheets and also register with the

15   court.

16                    In addition to that, you can sign up for

17   LexisNexis which gives you running information.  The court's

18   transcripts of hearings are also available, and I'm going to

19   repeat the Web site again, www.laed.uscourts.gov, and have

20   defense counsel make any comments.

21            **MR. MILLER:**  Thank you, Mr. Herman.

22                    We agree with Mr. Herman's comments about

23   advising all counsel coming into the case to read, initially,

24   the slew of pretrial orders.  These are very important.  It

25   deals with the structure in the administration of the case and

1  they should be read.  I'm happy to answer phone calls and
2  e-mails, but really, please, try and read those pretrial orders
3  first.
4              Your Honor, with respect to proposed pretrial
5  order 1E, it's further down in the agenda, but there was a
6  joint motion filed by the PSC and DSC earlier this week, or
7  late last week, pertaining to a clarification of the lifting of
8  the stay.
9              I think in substance, Your Honor, what it says
10 is, the stay will be lifted as to all complaints.  So
11 responsive pleadings will need to be filed by defendants in all
12 complaints.  I know there were stays early on in the litigation
13 and they were lifted except as to the *Gross* complaint.  I think
14 they're all the same now.
15             So I think the process for defendants coming
16 into the case is to comply with the pretrial orders in place,
17 from Mr. Herman's comment earlier on, and go ahead and secure,
18 if you need an extension of time to respond, an extension from
19 plaintiff's lead and liaison counsel.
20             It's my understanding that once a number of
21 motions and responses are in, the Court's going to categorize
22 those and try to come up with a hearing schedule that's
23 efficient and makes the most sense.
24         **THE COURT:**  Let me comment on both of those matters.
25 In the first place, one problem that you have in a case like

1   this, or any MDL case, is putting a stay into effect so that

2   organizational structures can be set up.  I can't be dealing

3   with the multitude of motions and filings at the same time that

4   I'm trying to set up some structure so that the case can be

5   better organized.  So that's the reason I issue a stay.

6              I don't issue a stay to stay everything forever.

7   I simply issue a stay so that I can then focus everybody's

8   attention on the organizational aspect of the case.  Because it

9   needs to be organized in order to go forward in some unified,

10  efficient fashion.

11             So I put a stay order in to stop the people from

12  either calling, or worrying about answering, or worrying about

13  responding to motions, or worrying about filing motions and

14  things of that sort.  I need their entire attention to deal

15  with the organizational structure of the case.  But we're past

16  that now.  We're organized, and we're moving forward.

17             So it's time for me at this point to lift the

18  stay.  So I've lifted the stay.  Therefore, everybody who has a

19  response due, or feels they must file a motion, they should do

20  it.  I'm getting a lot of motions.  I'm getting motions from

21  insurers and motions from defendants or potential defendants.

22             What I do in that situation is I wait a

23  reasonable time to give everybody an opportunity to file their

24  motions.  When they see a motion filed and I post it on the Web

25  site, it might inspire them to file a motion.

1              After a reasonable period of time, and this

2    doesn't go on indefinitely, but a reasonable period of time, I

3    look at the motions and I categorize the motions.  I don't want

4    to be writing the same opinion 50 times.  It doesn't make any

5    sense to me.

6              So the motions that have some commonality, some

7    common issues, may not be a total "me-to" motion, but it has

8    some commonality and many issues are similar, those types of

9    motions are put together and I speak on those, hopefully, one

10   time, as opposed to doing it 50, 100, 200, or whatever it is.

11             That seems to me to be the most efficient way.

12   Now, unfortunately, if you filed your motion the first day that

13   we started this proceeding a couple of months ago that you

14   feel, well, when is the judge going to get to my motion?  The

15   reason I haven't gotten to your motion yet is every day I get

16   more motions.  When I see the motions have sort of crystalized

17   and allow me to package the motions, then that's when I'll do

18   it.

19             The other thing that I want to mention is that

20   the case is going on now.  We've had a number of depositions

21   taken in the case.  Those depositions, I've invited everybody

22   to join in them, to get aboard, because the vessel was leaving.

23   If you're aboard, you can participate in those depositions.  We

24   have a method of asking questions, a method of getting

25   transcripts, a method of making your appearance heard and felt.

1    But those depositions that have been taken,

2  that's the only deposition that will be taken of that

3  particular witness.  I'm not going to have the witness

4  re-deposed over, and over, and over, and over again.  Now, you

5  know and I know there may be some issue that a defendant who

6  comes in later may feel that nobody covered, and for good

7  reason, they weren't in the lawsuit.

8    Now, in that type of situation, I'll entertain a

9  motion to ask to re-depose that individual on that specific

10 area, if it occurs.  But it's going to be their burden to show

11 that they need to re-depose somebody who's already been deposed

12 and why they need to re-depose that individual.  I'm not just

13 going to willy nilly let everybody who comes in later start

14 from scratch again and take every deposition.

15    So that's why, whether you're in it or out of

16 it, that's an aspect that you should get in.  The fact that

17 you're in, doesn't mean that you're in for the long haul.  You

18 may get in, participate, and convince the court that you

19 shouldn't be in; and if that's the case, you'll get out.  But

20 to wait, and wait, and wait, it can create problems for you.

21 So I suggest that you take a hard look at that.

22    One other thing while I've got your attention,

23 we start a hearing on Friday the 19th in the *Germano* case and

24 we go on February the 20th.  Now, I want to make clear that

25 that is an open proceeding.  It's in federal court.  Federal

 1    court's open.  So if you want to participate, meaning if you

 2    want to show up and listen, you're welcome to show up and

 3    listen.

 4            But I'm not going to put that proceeding on the

 5    telephone.  I'm not going to open that to anybody and everybody

 6    on the phone.  If you want to participate, come to court.  I'll

 7    have accommodations for you, either in this room or I'll have a

 8    remote location in the event this room overflows.

 9            But the point is:  You're welcome, but you have

10    to come to court.  I'm not just going to broadcast this over

11    the phone as I do my hearings.  The reason for that, frankly,

12    is that these hearings are primarily informational hearings.  I

13    want to keep everybody posted, and everybody who has some

14    interest in the lawsuit, and litigants also, can participate by

15    listening.

16            But with a formal proceeding, like a trial, or a

17    formal hearing, it seems to me that to just open that to the

18    phone lines is just extending matters.  I want to not only have

19    those for informational purposes, but I also want to have that

20    for participational purposes.  So if you want to participate by

21    being here, fine.  You don't have to sign in, necessarily, but

22    you have to come to court.

23            **MR. MILLER:**  Your Honor, on that point, just to

24    remind the Court, and those who are listening in, in *Germano*,

25    we start on Friday after Carnival and we're also going to go

1    all day on Saturday.  So that if you show up Saturday for the

2    first time -- I don't know what arrangements are going to be

3    made -- we had talked earlier on that a list would be confected

4    on Friday afternoon --

5            **THE DEPUTY CLERK:**  Friday morning.

6            **THE COURT:**  On Friday, we have to have a list of

7    those who want to come on Saturday, a list of those

8    individuals, so that the marshals can check it out and make

9    sure that who's here is expected.  We've always got problems

10   with security in a building of this sort.  So if you intend to

11   come, you need to sign in on Friday morning, intending to

12   indicate that you want to be here on Saturday.

13           Even if you think you're going to be here on

14   Saturday, you should sign in.  If you don't show up, that's one

15   thing.  But if you don't put your name in, you're not going to

16   get in the building.

17           Okay.  The next item on the agenda is the

18   property inspections.

19           **MR. HERMAN:**  Your Honor, they've proceeded.  Your

20   Honor has indicated in connection with *Germano* that Your Honor

21   may visit certain properties of the seven intervenors in

22   connection with that.

23           **THE COURT:**  Right.  The parties in the *Germano* case

24   asked me to visit the properties.  I intend to do so.  The

25   properties are located in Virginia.  I'll be going up to

1   Virginia to inspect the properties.  I will have the proceeding

2   here first; and in between the time that the proceeding ends

3   and the parties are responsible for sending in findings of fact

4   and conclusions of law, I'll have an opportunity to visit the

5   properties.

6              I will visit the properties with representatives

7   of those who participated in *Germano*, the plaintiff, defendant,

8   and I think several intervenors.  So they'll be present while

9   the Court visits those properties.

10       **MR. HERMAN:**  Your Honor, at page 4 of the status

11   conference there are certain hearings set after you conclude

12   the conference in the main today.  They deal with plaintiff

13   profile forms, motions brought by defendants, and plaintiff's

14   motions -- two motions -- to amend class action complaints.

15             With regard to roman numeral IV, the

16   preservation order, for those folks who are listening in or

17   appearing, the preservation order issued by the Court in No. 1B

18   is very important.  It hasn't been amended by Judge Fallon.

19   And I point it out because it's important for you to be

20   familiar with it.

21             With regard to state/federal --

22       **THE COURT:**  Let me just mention on the preservation

23   order, this is not just an order that is a form of put-in.

24   It's very significant in this particular case.  In some cases,

25   the preservation is not significant.  In the taking-of-a-pill

1   case, it may not be significant.  But it is significant in this
2   case, and I have set forth certain requirements for preserving
3   evidence.

4         If you fail to preserve evidence, this can come
5   back to seriously haunt you and prejudice your claim or
6   defense.  So I've tailored it to this particular case.  I'm
7   serious about it.  So if you intend to come into the case, even
8   if you're not in the case, if you may come into the case, I
9   suggest you pay particular attention to the preservation order.

10        I'm not going to be receptive to somebody
11  saying, well, Judge, I just came into the case and I didn't
12  know about the preservation order.  I post these things.  I
13  make it available to the public.  They're open for everyone to
14  see.  So I expect that everyone who has a potential interest in
15  this case, whether or not they're in it now, knows about the
16  preservation order.

17              State/Federal Coordination?

18        **MR. HERMAN:**  Ms. Barrios --

19        **MR. WITTMANN:**  Judge, may I say one thing about
20  profile forms?

21        **THE COURT:**  Yes.

22        **MR. WITTMANN:**  As I mentioned to you in the back, as
23  more and more installers are being served, now they're being
24  confronted with responding to the profile forms for the
25  installers.  Bob Fitzsimmons, who is the liaison counsel in the

1   Florida state court cases for the installers, he's working with

2   us, and we're going to be talking with Russ about maybe making

3   some modifications to those.  We're aware of those problems,

4   and we wanted the installers' counselors who are on this line

5   to know that we are looking at that.

6          **THE COURT:**  Right.  Yes.  I recognize that.  The

7   profile forms are very essential to this case, and I'll be

8   speaking on the motions for the plaintiffs who have not filed

9   it to express my feeling about the significance of it.  It's a

10  way of short-cutting initial discovery, and it's tailored, and

11  the purpose of it being tailored is to make the information

12  meaningful.

13          So occasionally some defendant, we may have to

14  look more closely at the profile forms for that particular

15  defendant.  The purpose is not to make it burdensome.  The

16  purpose is to get meaningful information from that particular

17  defendant.  It also helps that defendant.  The defendant

18  doesn't have to respond to a thousand interrogatories.  They've

19  already done it one time.  That's enough.  So that it

20  short-cuts a lot of it.

21          Now, that doesn't mean that interrogatories are

22  not forthcoming.  But, hopefully, the interrogatories, if they

23  are forthcoming after the profile forms, are more tailored.

24  They know what to ask for because they have the initial

25  information that they have received.  But in connection with a

1  particular defendant, it may well be that that particular

2  defendant, some of the information in the profile form doesn't

3  make sense, so we have to take that out and put in things that

4  do make sense.

5           With regard to the liaison counsel,

6  Mr. Wittmann, I'm looking to as liaison counsel for those

7  defendants.  That doesn't mean that those defendants don't

8  have, or should not have, an opportunity to have a lead

9  counsel.  I think they ought to.  If they want they want a lead

10 counsel, fine; and the lead counsel participates in the

11 proceedings as lead counsel.

12          But I don't want to have 20 liaison counsel.

13 The liaison counsel are more for logistics and brings the

14 information to me that Mr. Wittmann did, and that's the purpose

15 of it.  So, Phil, keep in touch with those individuals and

16 suggest to them if they need some structure in their

17 organization that they consider having a lead counsel that you

18 can consult with.

19          **MR. WITTMANN:**  I will, Judge.

20          **THE COURT:**  Okay.  Thank you.

21          **MR. HERMAN:**  Your Honor, I do have one comment.

22          **THE COURT:**  Let's remember to speak on the

23 microphone.  We're getting some information from the operator

24 that they don't hear the individuals who are not speaking in

25 the microphone.

1         **MR. HERMAN:**  Russ Herman, Your Honor.  Just one

2  comment about the installer profile forms.  The information as

3  to what properties were installed, when, what type of drywall,

4  insurance information, that information can be gathered and

5  submitted rapidly.  For any problems, we are not going to file

6  any motions for sanctions as long as the installers get

7  whatever information they have in within the time limits set in

8  your orders.  And I will work with Mr. Wittmann for any

9  particular problems.

10         And Ms. Barrios has a report for Your Honor on

11  State/Federal Coordination.

12         **MS. BARRIOS:**  Good morning, Your Honor.  Dawn Barrios

13  for the plaintiff's state liaison committee.  We have compiled

14  for Your Honor a CD, as we do monthly.  This is through

15  conditional transfer order 13.  We've added a new tab on this

16  because now we're starting to collect additional remands since

17  the lifting of the stay.

18         We have also expanded the list of state court

19  proceedings, thanks in part to Mr. Jeffrey Backman, defense

20  counsel who coordinates with me to provide me with this

21  information.

22         We are now tracking the various motions and

23  exceptions filed in state court and the activity in the state

24  court proceedings.  There have been several jurors in Louisiana

25  who are moving their cases forward, and I'm going to reach out

 1    to them to renew my request for continued coordination.

 2            **THE COURT:**  All right.  Fine.

 3            **MS. BARRIOS:**  Thank you, Your Honor.

 4            **THE COURT:**  I appreciate your work on that, Dawn.

 5                    My thinking on the State/Federal Coordination,

 6    in a case of this sort, not only do we have the MDL going on,

 7    but we have many cases that are in state court that are not

 8    removable.  So those state judges are pursuing similar issues

 9    that I'm pursuing from the MDL.

10                    When it's brought to my attention, I contact the

11    state judges.  I have a number of state judges on the phone

12    here today, and also the state judges that I coordinate with

13    periodically.  In fact, I speak with them almost every day to

14    talk about what's happening in this case, and also they tell me

15    what's happening in their cases.  I look to them for leadership

16    and they are of great assistance to me in the law applicable to

17    their particular states.

18                    So I'm interested in any cases that are filed in

19    state courts that have the same issues so that we can

20    coordinate so that it's easier for the litigants, and,

21    hopefully, it's easier for the judges too.  But I don't see any

22    reason for litigants to have to be in five, or six, or seven

23    venues on the same issue at the same time, or roughly the same

24    time, and take the same depositions.

25                    So the purpose of coordination is, hopefully, to

1  have those depositions taken only once and being used in every

2  state proceeding.  Now, with the states that are represented,

3  I've invited those states and those judges to appoint a

4  liaison, or a member of Dawn's committee, to participate in

5  these proceedings.

6           They can monitor these proceedings, either on

7  the phone or in person, and then bring to the Court's attention

8  any particular issues that they have in their state.  So,

9  hopefully, through this coordination, it will make the whole

10  thing more efficient and easier for the lawyers to handle.

11           The next item is motions in the MDL.

12      MR. MILLER:  Actually, Your Honor, before we skip to

13  the motions, under the Section 6, state court trial settings --

14  Kerry Miller on behalf of the defense steering committee -- and

15  we talked about this in the back with the Court at 8:30.

16           Your Honor, I just want to make clear, there are

17  some issues -- and I think we've got a resolution or a cure on

18  it -- where there are certain potential state court trial

19  plaintiffs in Florida that may be some of the earlier trial

20  plaintiffs in Florida in June who are also plaintiffs in one of

21  the federal court MDL actions.

22           They're plaintiffs in the federal court MDL case

23  pursuant to CAFA jurisdiction because some of the defendants in

24  the federal case are foreign companies.  They're plaintiffs in

25  state court because they've only sued domestic corporations in

1   state court.

2              Understanding that they may have claims in

3   federal court against defendants that aren't in state court,

4   that's one thing.  But I heard something second- or third-hand,

5   I'm not quite sure really what had happened, but concerned that

6   this court, Your Honor, would co-chair a case in state court

7   where you would mesh or meld together federal jurisdiction

8   under CAFA in a state court proceeding in Florida.

9              I just wanted to make sure that that issue is

10  not going any further as I think we have a cure and resolution

11  for that.

12       MR. LEVIN:  Yes.  We certainly don't want to trample

13  upon federalism.

14              But what we've decided, and it's workable, is

15  that the cases proceed in Florida against the domestic

16  defendants; that as to those defendants in the omnibus

17  complaints, the case be stayed; and as to foreign defendants in

18  the state court in Florida, those foreign defendants will be

19  dismissed without prejudice because their claims will be in the

20  omnibus complaint in a federal court; and, as a matter of fact,

21  they haven't been served on *Knauf* anyway.

22       THE COURT:  All right.  Well, I'll keep an eye on

23  that and see where we go.  The discovery issue -- no, motions

24  first.

25       MR. HERMAN:  The plaintiff discovery is ongoing.  We

1  have really nothing to bring to Your Honor from plaintiffs.
2  There are 29 defense motions, not set, but have been brought by
3  insurers and certain insurers who have been served in the MDL,
4  and Your Honor has addressed how you wish to have those
5  proceed.
6          With regard to page 16, roman numeral VII on the
7  status report, the Court has under advisement pretrial order
8  No. 1E, to clarify filings or responsive pleadings in the *Gross*
9  matter.
10         Under discovery issues, Item No. VIII, nothing
11  is new.
12         Freedom of Information Act/public record
13  request, nothing new.
14         With trial settings, Your Honor has addressed
15  bellwether trials, and the *Hernandez* trial is the second trial.
16  It's to begin on March 15th.  We anticipate no postponement of
17  either trial date.
18         And if I might, may it please the Court, have
19  the personal privilege, on the plaintiff's side of your
20  PSC-appointed law firms and others have been working really
21  around the clock.  In fact, they'll be working Mardi Gras day
22  taking depositions.
23         I would just like, rather than going through the
24  whole list, I would like them to stand.  If everyone that's
25  participated in either *Germano* or *Hernandez* on the plaintiff's

1    side, would you please stand?

2             We have about 20 members who are working right

3    now as we sit.  I do want to mention three who are not

4    court-appointed to a PSC who have done yeoman's work, Dan

5    Bryson, Richard Serpe and Richard Lewis.

6             **THE COURT:**  All right.  Before you leave that, let me

7    make two comments on that briefly.

8             First, I appreciate the work on both sides on

9    these cases.  It only works in an MDL if the attorneys

10   participate.  One of the good things about the MDL is it's

11   doable because of the level and professionalism of the

12   attorneys who participate in these MDLs from both sides.

13            It's been my experience that they're the best of

14   the best from both sides.  Because of that, it's easy for a

15   court to handle it.  If we just keep them directed and sort of

16   stay out of the way and let them do their work, they're able to

17   do it.  That's certainly been true in this particular case.

18   I've been impressed with the attorneys on both sides of the

19   "V," and I look forward to working and continuing to work with

20   them.

21            Also, in an MDL, the thing that's troubled me,

22   and also a number of my colleagues throughout the country, is

23   that oftentimes people who do not make the cut from the

24   committees feel that they've been by-passed, that they don't

25   have any opportunity to contribute; and oftentimes they do have

 1   not only something to contribute, but something that's very

 2   significant to contribute.

 3            So I encourage at the outset, the people on the

 4   committee and liaison counsel to reach out to those

 5   individuals.  Anyone in this case, whether they're on the

 6   committee or not on the committee, is able to participate in

 7   the proceeding if they want to and have something to

 8   contribute.

 9            The only thing is is that they have to work

10   through the committee, work through the lead counsel, work

11   through liaison counsel.  The reason for that is I need to have

12   some direction.  We have it looks like about 1,500 lawyers in

13   this particular case.  I can't have everybody going in

14   different directions.

15            But the fact that you're not on the committee

16   does not mean that you can't participate in the proceedings,

17   and also participate in the remuneration, the fees, after the

18   proceeding if you've participated.  There are certain

19   requirements that you have to do, keep time and so forth.  But

20   you're able to participate.  So please feel free to do so.  If

21   you're interested, contact liaison or lead counsel and let them

22   know.

23            All right.  The next area is filings in the MDL.

24        MR. HERMAN:  Your Honor, there's nothing new to

25   report under filings in the MDL.

1        The next issue is notices of appearance and
2   default judgments.
3        Under notices of appearance, Your Honor's order
4   requires all counsel to file a notice of appearance, even
5   before pleadings are filed on behalf of their clients.  I just
6   want to point that out, and that's in pretrial order 1A, which
7   is one of the initial orders issued by the Court.
8        **MR. MILLER:**  Your Honor, the next agenda item is
9   XIII, insurance issues.
10       Your Honor, it appears that these issues are
11  coming to the floor.  We reference in the paragraph a joint
12  motion for the creation of an insurer steering committee was
13  filed by Liberty Mutual and State Farm, who I think have cases
14  in the MDL.  Last night, Travelers also filed a motion
15  concerning an insurer committee.  I don't think they have cases
16  yet, but are anticipating that they may have cases soon.
17       I know that counsel for both Liberty Mutual,
18  State Farm and Travelers are in the courtroom today.  Perhaps
19  they'd like to address the Court on how they see this issue
20  coming up.
21       **THE COURT:**  Yes.  I'd be interested in their input.
22  My initial thought is that we ought to have some structure in
23  that aspect of the case.  So if the attorneys for the insurance
24  companies can get together and have some lead counsel to be
25  able to sit at the table and talk about their particular

 1  issues, that seems to me to be workable and doable.

 2          **MS. BARRASSO:**  Judge, Judy Barrasso on behalf of

 3  Liberty Mutual.  And we have both third-party cases on the CGL

 4  side and also first-party cases.  And then State Farm I know

 5  has jointly filed a motion on the Homeowners side.

 6          We've tried to go about organizing a little bit

 7  already, get our arms around how many cases are in the MDL.  I

 8  think there's at least 40 that include insurance companies, and

 9  we may be off some -- about 40 insurers.  There may be more

10  cases than that, including the master complaint.

11          So we've tried to reach out to those counsel

12  that are involved to make sure that everybody is aware and on

13  board.

14          **THE COURT:**  Yes.  I think that would be helpful,

15  Judy, and I also think that you ought to see what cases are

16  around the country.  I've been in touch with the MDL committee

17  to discuss with them what to do with those particular cases.

18          Oftentimes, at first blush, it looks like that

19  the cases are simply involving some structure of an insurance

20  policy.  But the more I look into it, it seems to me that some

21  of the issues will bear upon the issues that we're dealing with

22  in this particular litigation.

23          So rather than have that matter go through 50

24  judges, or 94 judges, it might be easier to have it done in a

25  more unified way.

1             **MS. BARRASSO:**  Right.  There's obviously some

2    threshold issues and some facts that overlap.

3             **THE COURT:**  Right.

4             **MS. BARRASSO:**  And we're seeing the motions that are

5    being filed.  We're going to track that and then maybe we can

6    help the Court by suggesting -- help you get together some

7    categories too.

8             **THE COURT:**  Right.  I'd be looking to you for some

9    guidance on the motions, how we deal with them, what's a

10   reasonable structure to put them in so that we can deal with

11   those particular issues once as opposed to each specific time.

12            **MS. BARRASSO:**  Right.  Okay.  We'll try and do that.

13            **THE COURT:**  Okay.  Just try to get your hands around

14   it.  Then either before the next meeting or at the next

15   meeting, I'd be interested in some comments.

16            Counsel, do you have something?

17            **MS. BARRASSO:**  Just Mr. Herman reminded me, I should

18   say, I'm Judy Barrasso and I represent Liberty Mutual.

19            **THE COURT:**  Right.  Okay.

20            **MR. HUBBARD:**  May it please the Court.  I'm Ralph

21   Hubbard.  I represent Travelers Indemnity Company and Standard

22   Fire Insurance Company.  We're in the top ten list in Louisiana

23   for homeowners insurance and the like.  Travelers has not been

24   brought into this litigation.  It's been told repeatedly that

25   it's going to be.  And Travelers is very concerned about and

 1   desires of participating if there is going to be an

 2   organization of the insurers in this case.

 3                    I mean, I have noticed that the last two

 4   cases -- I think they were up -- rulings on January 20th, and

 5   February 5th, the multi-district litigation panel elected not

 6   to send general liability cases to this MDL.  So we don't know

 7   exactly where that's heading.  But certainly there's going to

 8   be a bunch of Louisiana cases that are going to be in this

 9   court.

10            **THE COURT:**  Right.

11            **MR. HUBBARD:**  So we filed a motion to either --

12   asking the Court to let us participate on the steering

13   committee and as coordinating counsel, if you will; or,

14   alternatively, considering having a nomination process which

15   would include insurers, not just Travelers, but all of the

16   other insurers who may be here one day in the process so they

17   can participate.

18            **THE COURT:**  Right.  We need some structure in that.

19   I think what should happen is that the insurers ought to get

20   together and talk about it and talk through it.  My thinking is

21   that we ought to have a lead counsel for the insurers to look

22   after your interests so that they can participate in the

23   proceedings in that fashion.

24                    From liaison, I'm not sure about that.  Liaison

25   is more for me to set up trial dates or to set up hearings and

 1   things of that sort and get input.  It's not really focused on
 2   the substantive issues.  I do that, or I try to do that, with
 3   lead counsel.  So somebody ought to be at the table for the
 4   insurers.
 5          **MR. HUBBARD:**  Well, in the Katrina litigation, we had
 6   like a steering committee of maybe ten people, which we found
 7   to be helpful, with one person -- or two or three people in the
 8   State Attorney General Road Home case participating as lead
 9   counsel.
10          **THE COURT:**  Well, I don't know about that.  Because
11   in this particular case, as I say, I don't want to have a lead
12   counsel meeting in open court.  That does nothing at that
13   point.  I have to have a smaller group to be able to do it.  If
14   everybody has five or six lead counsel, then that defeats the
15   whole purpose, because it becomes a speaking opportunity as
16   opposed to working together.
17              But I would be interested in your structure, but
18   I would be looking for one lead counsel to represent you all.
19          **MR. HUBBARD:**  All right.  Thank you.
20          **THE COURT:**  Okay.
21          **MS. BARRASSO:**  Judge, we have filed a motion that's
22   pending to appoint a committee.  I don't know if you want to
23   hear in that in the near future or...
24          **THE COURT:**  Yes, I will.  But I'd like it to be a
25   little bit more informal than a formal hearing.  I'd like to

1    suggest that the insurers get together, talk about it, and then
2    I'll meet with them and talk about some structure.  We ought to
3    have some structure in it.  I agree with that.

4              **MS. BARRASSO:**  Okay.  We'll try to round everybody up
5    and get back with you.

6              **THE COURT:**  Okay.  Thank you, Judy.

7              **MR. HERMAN:**  Your Honor, may it please the Court.
8    Russ Herman again.  I just want to make two quick comments.

9              We have been in touch with Ms. Barrasso on
10   behalf of the insurers.  And until their structure is in place
11   and Your Honor's approved their structure, if some insurance
12   issues come up, we'll relay it to Judy and then she can notify
13   the group.

14             In addition, to answer counsel's question, I can
15   assure you that Travelers will be made a party.  There will be
16   a number of direct actions filed in this case, including --
17   well, in the MDL, including actions against Travelers.  And
18   there are other policies involved other than first-party
19   policies, CGL policies, policies, for example, of installers.
20   Some of those policies have significant differences from CGL
21   policies that may be in place for builders or developers.

22             Your Honor, in terms of service of pleadings
23   electronically, because of the number of new folks who are
24   being served daily, I want to emphasize that under pretrial
25   order No. 6 -- pretrial order No. 6 -- all pleadings are to be

1    served through LexisNexis and the electronic filing system, the
2    ECF of the Eastern District of Louisiana.

3                    It's particularly important to file ECF.  Some
4    of us early on in the case thought that if they just filed with
5    LexisNexis that would be sufficient, and it's not.  You've got
6    to file also with the ECF system of the Eastern District.

7            **THE COURT:**  Yes.  The point is that in filing, you
8    have to file with the court.  Now, service, because of the
9    numbers that we're dealing with and the scope of the litigation
10   from the standpoint of the geographic scope of the litigation,
11   the mail doesn't work.  It's just too long.  It takes too long.
12   So we've had an outside provider come in and assume the service
13   function for the court.

14                   So that you need to file in the court, but
15   service is made immediately by LexisNexis, who uploads the
16   material.  But you can't file your pleadings with LexisNexis
17   because they're not a court.  So file it with the court.  But
18   understand that LexisNexis is a vehicle by which you get
19   instant service so that the case is filed and you get it
20   immediately served on you and you'll know what's happening.

21                   Also, while I'm on that subject, I try to put
22   everything on the Web site.  I put all of the notices on the
23   Web site, all of the recent developments on the Web site.  I
24   even put these transcripts on the Web site so that you can
25   review them and see what's happened in the past.  All of my

1   opinions are on the Web site.  My calendar's on the Web site so

2   that you can see what's coming up and participate in it if you

3   wish.  So keep an eye on the Web site.

4               Master complaint, anything on that?

5          MR. HERMAN:  Your Honor, lead counsel for plaintiffs,

6   Arnold Levin, is going to address item XV, the master

7   complaint; item XVI, the class action complaint against

8   indeterminate defendants; and the omnibus class action

9   complaint, which is item No. XVII.

10         THE COURT:  Okay.

11         MR. LEVIN:  Arnold Levin, Your Honor.

12              I'm going to do it, not necessarily in the order

13  that it appears on the joint report No. VIII.

14              Yesterday, we filed, and Your Honor has courtesy

15  copies this morning, three pleadings.  One is omnibus complaint

16  No. 2, which is against non-*Knauf* defendants and their

17  suppliers, builders, et cetera.  It tracks omnibus complaint 1,

18  which was the complaint that was filed against Knauf a couple

19  of months ago.

20              Secondly, we filed a motion for intervention of

21  individual plaintiffs against builders, installers, et cetera,

22  in connection with the indeterminate defendant complaint, which

23  is the *Gross* complaint.

24              And we filed an omnibus 4 complaint, which was

25  against Knauf defendants for plaintiffs who hadn't registered

 1   with us with regard to the omnibus 1 complaint.  Service is

 2   taking place; and serving 500 defendants is not an easy task,

 3   and we have APS doing that.  The complaints have all been

 4   translated into German and Chinese, where applicable, and

 5   they're in the process.

 6             Which brings me to the master complaint.  Your

 7   Honor has lifted the stay with regard to motions.  So that

 8   we're not asking for motions, but we have some indication that

 9   they're coming, and they have come, and that's where Your Honor

10   addressed that in the beginning of this conference where we

11   will take like motions and put them in certain buckets and deal

12   with them on a consolidated basis.

13             In order to structure the process for those

14   motions, I think at this time it becomes necessary to have an

15   administrative master complaint which has no other purpose

16   other than administering and clearing the docket so that like

17   issues can be resolved in a like fashion.

18             That master complaint, as soon as service has

19   been made, and even in the process of service being made, will

20   deal with both omnibus 1, omnibus 2, omnibus 4 and the *Gross*

21   complaint, the indeterminate defendant complaint, and we've

22   asked your Honor to allow us to file an intervention complaint,

23   which will be omnibus 3.

24             When that is addressed, and if Your Honor allows

25   us to file the same, at that time that will be added to the

1   master complaint.  I think then we will have a workable method

2   of handling the Rule 12 motions, which will be forthcoming,

3   sir.

4            **THE COURT:**  All right.  One issue in this particular

5   case that justifies the reason for the grouping is that one

6   thing that I have to deal with is to find out who's in the

7   litigation and what the theory of their particular complaint is

8   in the litigation.

9            The omnibus complaints is a vehicle by which

10  that can be done.  So that the scope of it is mainly to get the

11  plaintiffs into the litigation who are interested in

12  participating in the litigation, and get them to focus on which

13  defendant they feel is responsible for their particular issues,

14  and what's the theory of the liability against those issues.

15           So it's their ticket to get into the litigation,

16  and it's a vehicle by which that ticket can be grouped into

17  various sections so that we're dealing with those.  But having

18  gotten into the litigation, then the next step is to figure out

19  a vehicle by which those specific issues can be addressed one

20  time, and also to allow for one place that can coordinate or

21  collect the briefing and material from.

22           So that if you've got 200 motions, you ought not

23  to have to file briefs in 200 cases.  The same brief,

24  basically, with just some name changes.  So that's the purpose

25  of a master complaint, to allow you to file one brief dealing

1   with 200 cases or 2,000 cases or 200,000 cases.  Only one

2   brief.  It also allows the Court to receive only one brief as

3   opposed to 2,000 briefs.

4            So that's the purpose of the master complaint.

5   I've written on the origins of the master complaint, the

6   purposes of the master complaint.  It's my view that a master

7   complaint is an administrative function and an administrative

8   vehicle.  It's not a substantive vehicle.

9            So the fact that a master complaint's filed, I

10  don't look upon that as being substantive and affecting your

11  substantive rights.  It's only a vehicle which allows me to

12  focus on those issues.  So that's what's being done.  I'm aware

13  of it and have encouraged it over the period.

14           The next item.

15           MR. HERMAN:  No. XIX at page 27, Your Honor, *Knauf*

16  *Gips KG* personal jurisdiction.

17           *Knauf Gips* continues to produce documents,

18  deposition discovery on jurisdiction and alter ego will

19  commence sometime after the *Germano* and *Hernandez* trials have

20  been completed and Your Honor has ruled.

21           The default proceedings in *Germano* and

22  remediation hearing, I believe that I can say that everything

23  is moving towards the trial date.  There have been some

24  internal agreements presented to Your Honor by both sides to

25  internally remove some dates regarding the listing of exhibits,

1    et cetera.  There does not seem to be any problem with that.

2           **THE COURT:**  I've had *Daubert* motions in the case.

3    I've received extensive briefing from the parties.  I've had

4    argument by both sides.  I, hopefully, will be able to get my

5    opinion out to you in the next day or two.

6           **MR. HERMAN:**  Your Honor, with regard to *Germano* and

7    *Hernandez*, from the plaintiff's side, I want to thank Chris

8    Seeger, who is our trial team captain, who has coordinated with

9    Richard Serpe and his group in *Germano* and Steve Herman in

10   *Hernandez*.

11          Again, if I went through the whole list, I might

12   leave somebody out.  But I think it's important, as I look

13   around, Your Honor, and I see Dawn Barrios, Jerry Meunier, and

14   I know there are others -- most of them are working right

15   now -- who've done double duty in both cases.  It's been very

16   gratifying to be part of a PSC where you've got fine lawyers

17   doing fine work.

18          I also want to compliment the *Germano* defense

19   team.  They not only have been very professional, and they're

20   very, very strong advocates for their position, but problems

21   that have come up have been relatively easy to resolve.  So I

22   just wanted to point that out.

23          **THE COURT:**  Good.  Okay.

24          As I mentioned, the case works well because of

25   the ability and integrity and professionalism of both sides.

1  As I say, I've been impressed with the work on both sides.  It
2  doesn't mean that they don't fight for their clients.  They do
3  so very well.

4          Each client should recognize that they are being
5  well represented in this proceeding.  But at the same time, the
6  lawyers know what issues to fight on and what issues that are
7  not worth fighting on and to cooperate on.  So they've been
8  doing that.

9          I have some motions that I'll be dealing with in
10  a moment, but we'll take a break and then I'll come back in
11  about five minutes to deal with the motions to show cause why
12  the plaintiff's claim should not be dismissed for those
13  claimants that have failed to file a profile form.

14          The next meeting will be on March 11th, 2010.
15  I'll meet with lead counsel in the conference room and then
16  everyone will have an open meeting.  Anyone wishing to
17  participate by phone is invited at 9:00.  So I'll meet with
18  liaison and lead at 8:30 and then the open meeting at 9:00.

19          We'll take a ten-minute break at this time and
20  I'll come back.

21          **MR. BECNEL:**  Your Honor?

22          **THE COURT:**  Yes, Danny.  Do you want to get to a mic
23  so that people can hear?

24          **MR. BECNEL:**  Your Honor, Daniel Becnel.

25          I had a defendant call up yesterday that was

1  served with one of my clients, has no insurance, is not a new

2  home, but it's a renovation.  He wants to resolve the matter,

3  but I said I could not talk about resolution without bringing

4  it to the Court.  It's a *Knauf* case.  I just told him that I

5  would bring it up today since he called yesterday when I was in

6  trial about some procedure to get that resolved.

7            Because he does not want to put the man in

8  bankruptcy, as has happened in half of the FEMA cases.  So I

9  didn't know if the Court has a procedure to deal with that --

10           **THE COURT:**  All right.

11           **MR. BECNEL:**  -- and I told him I would bring it up

12  today with Your Honor.

13           **THE COURT:**  Okay.  Well, thanks for bringing it up,

14  Danny.

15           **MR. LEVIN:**  Mr. Becnel can speak to Russ about that.

16           **THE COURT:**  Yes.  That's what I was going to say:

17  Talk with liaison counsel, and we'll get Kerry involved in

18  that, too, from liaison counsel for *Knauf*, and we'll be able to

19  do something with it.  I appreciate you bringing that up.

20           **MR. MILLER:**  I agree.  But let's also be mindful of

21  the preservation order that's in place.  Certainly, people are

22  doing things; but they need to be reminded if things are

23  happening with respect to repairs in the home, that there is a

24  preservation protocol in place.

25           **THE COURT:**  Right.  Okay.  I'll be back in ten

1  minutes.  Court will stand in recess.

2          **THE DEPUTY CLERK:**  Everyone rise.

3          (WHEREUPON, the proceedings were concluded.)

4                          *****

5                      <u>CERTIFICATE</u>

6          I, Jodi Simcox, RMR, FCRR, Official Court Reporter

7  for the United States District Court, Eastern District of

8  Louisiana, do hereby certify that the foregoing is a true and

9  correct transcript, to the best of my ability and

10 understanding, from the record of the proceedings in the

11 above-entitled and numbered matter.

12

13

14                      ___S/ Jodi Simcox, RMR, FCRR___
                          Jodi Simcox, RMR, FCRR
15                        Official Court Reporter

16

17

18

19

20

21

22

23

24

25