# EXHIBIT "2"

IN RE: MDL 2047                APRIL 26, 2011

1                    UNITED STATES DISTRICT COURT

2                    EASTERN DISTRICT OF LOUISIANA

3    IN RE: CHINESE-MANUFACTURED     )
     DRYWALL PRODUCTS LIABILITY      )
4    LITIGATION                      )
                                     ) CIVIL DOCKET NO.
5                                    ) 09-MD-2047-EEF-JCW
                                     ) SECTION "L"
6                                    ) NEW ORLEANS, LOUISIANA
                                     ) APRIL 26, 2011
7                                    ) 9:00 A.M.
     THIS DOCUMENT RELATES TO:       )
8                                    )
     ALL CASES                       )
9                                    )
     *****************************

10

11

12           TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS

13         HEARD BEFORE THE HONORABLE ELDON E. FALLON

                    UNITED STATES DISTRICT JUDGE
14

15

16

17

18

19

20   OFFICIAL COURT REPORTER:   SUSAN A. ZIELIE, RPR, FCRR
                                UNITED STATES DISTRICT COURT
21                              EASTERN DISTRICT OF LOUISIANA
                                500 POYDRAS STREET, ROOM B406
22                              NEW ORLEANS, LA 70130
                                susan_zielie@laed.uscourts.gov
23                              504.589.7781

24

25   PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.
     TRANSCRIPT PRODUCED BY COMPUTER AIDED TRANSCRIPTION.

```
┌─ IN RE: MDL 2047              APRIL 26, 2011 ─┐
```

 1   APPEARANCES:

 2

     PLAINTIFFS LIAISON  SEEGER WEISS
 3   COMMITTEE:          BY: CHRISTOPHER A. SEEGER, ESQUIRE
                         550 BROAD STREET
 4                       SUITE 920
                         NEWARK, NJ 07102

 5
     PLAINTIFFS'         HERMAN HERMAN KATZ & COTLAR
 6   STEERING            BY:  RUSS HERMAN, ESQUIRE
     COMMITTEE:          820 O'KEEFE AVENUE
 7                       NEW ORLEANS, LA 70113

 8   STATE/FEDERAL       BARRIOS, KINGSDORF & CASTEIX
     COORDINATION        BY:  DAWN BARRIOS, ESQUIRE
 9   COMMITTEE:          701 POYDRAS STREET
                         SUITE 3600
10                       NEW ORLEANS, LA 70139

11
     PLAINTIFFS:         LEVIN, FISHBEIN, SEDRAN
12                         & BERMAN
                         BY:  ARNOLD LEVIN, ESQUIRE
13                       510 WALNUT STREET, SUITE 500
                         PHILADELPHIA, PA 19106

14

15   DEFENDANT TAISHAN: HOGAN LOVELLES
                        FRANK T. SPANO, ESQUIRE
16                      875 THIRD AVENUE
                        NEW YORK, NEW YORK 10022

17
     DEFENDANT BANNER:   WEINBERG WHEELER HUDGINS GUNN
18                         & DIAL
                         BY:  NICHOLAS PANAYOTOPOULOS, ESQUIRE
19                       3344 PEACHTREE ROAD
                         SUITE 2400
20                       ATLANTA, GA 30326

21   DEFENDANT INEX:     DARVER DARDEN KORETZKY TRESSIER FINN
                           BLOSSMAN & AREAUX
22                       BY:  PHILIP D. NIZIALEK, ESQUIRE
                         ENERGY CENTER
23                       1100 POYDRAS STREET
                         SUITE 3100
24                       NEW ORLEANS, LA 70163

25

1          NEW ORLEANS, LOUISIANA; TUESDAY, APRIL 25, 2011

2                        9:00 A.M.

3                  (COURT CALLED TO ORDER)

4               THE COURT:  Good morning, ladies and

5    gentlemen.

6               CASE MANAGER:  MDL 3047, in re:  Chinese

7    Drywall.

8               THE COURT:  Counsel make their appearance

9    for the record.

10              MR. HERMAN:  Good morning, Judge Fallon,

11   Russ Herman for plaintiffs.

12              MR. GLICKSTEIN:  Your Honor, Mr. Miller had

13   to go, so I'm the poor substitute.  Steven Glickstein

14   from Kaye Scholer.

15              THE COURT:  Okay.  Good substitute.  I

16   appreciate you being here.

17              All right, we're here for the monthly status

18   conference in this matter.  Let me begin the meeting by

19   announcing that a settlement has been reached between

20   the plaintiffs' committee and a major party to the

21   litigation, namely INEX.

22              There's a motion for preliminary approval

23   which spells out the nature of the settlement.

24   Basically, it encompasses an aggregate cash payment from

25   the primary insurers.  They're putting up their policy

IN RE: MDL 2047          APRIL 26, 2011

1    limits of some $8 million.

2          In addition, INEX is assigning to the

3    plaintiffs a claim against their excess insurance

4    company in the amount of the excess insurance which is

5    $72 million.

6          Basically, the structure proposed is to have

7    two subclasses; one, Louisiana homes; and, two, the

8    non-Louisiana homes.  And there, as I say, has been a

9    motion for preliminary approval.  I'm going to set that

10   motion for hearing on Friday, a week from now.

11         All of us know that preliminary approval is

12   just that, preliminary approval.  I'm not going to be

13   focused on the specifics of it.  That comes later at a

14   fairness hearing.  Gives everybody an opportunity to

15   focus on amounts and specifics of the settlement.  At

16   the preliminary stage, I review the documents, which I

17   just received last night.  They're voluminous.  I review

18   the documents and test whether or not it appears on its

19   face to be appropriate.  To me, they're putting up their

20   entire policy limits, so that may speak for itself.

21   But, in any event, I'll be hearing the motion for

22   preliminary approval at that time.

23         But, in addition, because of the settlement,

24   I'm going to stay the proceedings against INEX and ask

25   that the parties draft a stay order which would include

IN RE: MDL 2047          APRIL 26, 2011

1    the class actions as well as the trial.  I will have

2    some dates available for other trials if this matter is

3    resolved, as it looks like it is, and I'll fit in some

4    other disputes in those trial dates so that we can go

5    forward with the litigation.

6              There are other discussions and hopefully

7    we'll be able to announce some other resolutions.  My

8    preference, of course, is to have everybody in the room

9    and resolve everything at one time; but I recognize that

10   in a case of this sort, we have a thousand defendants,

11   and maybe 20,000 plaintiffs or thereabouts, and a number

12   of states, so it's a little difficult.  So we're

13   approaching it piecemeal:  If you want to eat an

14   elephant, you do it one bite at a time.  So that's what

15   we're doing.  And this is a significant bite.

16             I think we got momentum because of Knauf's

17   movement initially in the creation of a pilot program,

18   which quickly extended beyond the pilot stage, and that

19   gave us some momentum to proceed with other aspects of

20   the case.  So, I'm happy to announce the INEX

21   settlement, and now I'll hear from the parties if they

22   wish to flesh it out any further in any detail.

23             MR. HERMAN:  Your Honor, the agreement

24   reached has been filed of record and posted, and so

25   folks that are interested can refer directly to it.

IN RE: MDL 2047          APRIL 26, 2011

1          I just want to thank counsel from

2   Interior/Exterior and the insurers who have entered the

3   settlement who have -- we've had a very spirited

4   negotiation, and they at all times acted professionally,

5   although aggressively, protecting their client's rights.

6   So that's the only remark that I have to make.

7                Arnold?

8                MR. LEVIN:  Russ speaks for me, Your Honor.

9                THE COURT:  Anything from the defendants

10  INEX?

11               MR. NIZIALEK:  No.

12               THE COURT:  Let's look at the pleadings to

13  see whether or not you need to amend against the excess

14  to bring them directly before the Court so that we can

15  proceed with dispatch against the excess.

16               MR. LEVIN:  Your Honor, we will not have the

17  ability to do that until after the fairness hearing.

18               THE COURT:  Okay.

19               MR. LEVIN:  Because that's part of the

20  relief.

21               THE COURT:  Okay.

22               MR. HERMAN:  We will meet with insurer's

23  counsel immediately following the status conference in

24  Your Honor's conference room.

25               THE COURT:  Okay, great.

IN RE: MDL 2047                APRIL 26, 2011

1          Let's go back then to the proposed agenda.

2    Anything on the pretrial orders, first item?

3          MR. HERMAN:  Nothing new on item No. 1.

4          THE COURT:  Anything on property

5    inspections?

6          MR. HERMAN:  Nothing new on property

7    inspections.  Although this may be a place to indicate

8    to Your Honor that between 1,200 and 2,000 of more

9    claimants have sought out the PSE and since the last

10   status conference, and Arnold will be either intervening

11   them in cases or filing new ones.

12         THE COURT:  Where are they coming from

13   basically from the standpoint of the states?

14         MR. HERMAN:  There's a large number now,

15   larger than we anticipated, from Texas.  But primarily

16   from Texas, Florida and Louisiana.  The manufacturing

17   defendants are Knauf and Taishan and Taishan's related

18   entities.

19         THE COURT:  Okay.  And the profile forms,

20   anything there?

21         MR. HERMAN:  We have a committee going

22   through both defendant fact sheets and plaintiff profile

23   forms.  They'll be meeting for three or four days in the

24   next two weeks.  There's nothing new, no amendments to

25   the profile forms.

IN RE: MDL 2047          APRIL 26, 2011

1    THE COURT:  There was some comment a time or

2 two about the delinquent receipt of profile forms from

3 the plaintiffs.  Has that been worked out?

4    MR. HERMAN:  Yes, I believe it has, Your

5 Honor.  We've worked very diligently with follow-up.

6    MR. PANAYOTOPOULOS:  Your Honor, Nick

7 Panayotopoulos on behalf of Banner.

8    CASE MANAGER:  He needs to use the mike,

9 Judge.

10    THE COURT:  You want to just grab a mike

11 here close to you?  You can use that one, just turn it

12 on.

13    MR. PANAYOTOPOULOS:  Your Honor, I just

14 wanted to inform the Court that I believe the PSE is

15 working diligently to get us the remaining profile

16 forms.  We may have some questions about the home

17 builders profile forms that I'll address with them first

18 and then bring to the Court's attention if necessary.

19 But we're hoping that it's not going to ultimately be an

20 issue.

21    MR. HERMAN:  Do you want to state your name

22 so the court reporter can get it?

23    MR. PANAYOTOPOULOS:  Nick Panayotopoulos for

24 certain Banner entities.

25    THE COURT:  Okay.  Anything on the

IN RE: MDL 2047          APRIL 26, 2011

1    preservation orders?

2                    MR. HERMAN:  No, Your Honor.

3                    THE COURT:  State/federal coordination.

4                    MR. HERMAN:  Ms. Barrios is here with that

5    report.

6                    MS. BARRIOS:  Thank you, Mr. Herman.

7                    Your Honor, just to touch base on the last

8    issue that you asked Mr. Herman about, the plaintiff

9    profile forms, we started out with well over 200, close

10   to 300 that were alleged to be deficient, and we're down

11   now to 19.  So we continue work on that pretty much

12   daily.

13                   The state court trial settings at VI really

14   spell out lots of details about the trials, but I'd like

15   to bring to the Court's attention some administrative

16   issues that have been occurring in Virginia.  As I think

17   I reported at the last or second to last status meeting,

18   that there was a building code violation held -- I'm

19   sorry -- the permit bureau held that there was a

20   building code violation against Taishan for the lack of

21   ASTM markings on it.  Just last week, a state-wide

22   appeal board ruled in favor of Virginia homeowners

23   against a large Virginia builder by the name of Atlantic

24   Homes regarding the scope of remediation.  That board

25   held that the Chinese drywall had caused the homes to

IN RE: MDL 2047          APRIL 26, 2011

1   develop a corrosive indoor environment, and that all

2   materials had to be able to withstand the corrosive

3   indoor environment, and essentially adopted the Germano

4   and Hernandez scope of remediation.

5          And I'd like to thank everyone for giving us

6   more state court cases.  We've substantially increased

7   them, and I have them on a CD for Your Honor.

8          THE COURT:  Where are they coming from,

9   which states?

10          MS. BARRIOS:  Just as Mr. Herman said,

11   they've come from all around the Gulf states.  That's

12   where we get most of them.

13          THE COURT:  I know I've touched base with

14   most of state court judges, if not all of them, to keep

15   them advised of what's happening.  I know that several

16   of them are on the phone here today, and I appreciate

17   working with them and the opportunity to work with them.

18          MS. BARRIOS:  And on the CD, Your Honor, I

19   have all the contact information for any new judges that

20   you may need to contact.

21          THE COURT:  Thank you very much.  And I'll

22   do so.

23          Any motions in the MDL, No. VII?

24          MR. HERMAN:  Your Honor, there's nothing new

25   under item No. VII.

IN RE: MDL 2047          APRIL 26, 2011

1          Under discovery issues at page 9, Knauf

2     depositions, a number of them have been set in New York.

3     We're attempting to set depositions in Germany of Knauf

4     of 30(b)(6) deponents.

5          There is a deposition that's been set for

6     Guardian Builder Products Distributors, will take place

7     tomorrow in South Carolina.

8          The PSE's trial team and discovery team has

9     worked diligently with INEX to take class rep

10    depositions, et cetera, which are now to be stayed.

11          And Leonard just handed me a note saying

12    that the Guardian deposition in South Carolina has now

13    been postponed.  That was the deposition scheduled for

14    tomorrow.

15          THE COURT:  What about the depositions in

16    China?  The last time we talked about that, that they

17    were scheduled.

18          MR. HERMAN:  We had an excellent dep

19    preparation team, Chris Seeger and Pat Montoya and

20    others were in Hong Kong.  Chris led the depositions.

21    We encountered some difficulties, I'm not going to go

22    into them in depth, but to say that the Plaintiff's

23    Steering Committee is going to file motions before Your

24    Honor.  Documents were not produced as directed.  There

25    was interference, a lot of coaching during the

IN RE: MDL 2047          APRIL 26, 2011

1    depositions by Taishan attorneys.  The witness for the

2    30(b)(6)  deposition had no knowledge of fact sheets and

3    profile forms that were filed, and had very little

4    knowledge of anything.  And we're going to bring certain

5    motions that we may ask that Taishan be ordered to bring

6    their representatives here to this court in the future.

7    We may ask that costs be taxed.

8               We understand that there were other

9    participants, interrogators at those depositions, who

10   will either file separate motions or join the PSE in the

11   motions to be filed.

12              THE COURT:  Let me hear from Taishan

13   counsel, from your standpoint, your input.

14              MR. SPANO:  Thank you, Your Honor.  Frank

15   Spano for Taishan Gypsum and its subsidiary TTP.

16              We believe that our clients adequately

17   complied with their obligations under Rule 30(b)(6).

18   Specifically, three members of senior management

19   traveled from mainland China to Hong Kong, were

20   available for six days of depositions.  The examining

21   attorneys chose to depose them for only five days.

22              Over those five days, there was ample

23   opportunity to ask all matter of questions on the

24   designated topics and personal jurisdiction, and the

25   witnesses adequately answered those questions to the

IN RE: MDL 2047          APRIL 26, 2011

1    extent that they were asked.

2             As far as document discovery, there were a

3    few pages that were produced on the first day of the

4    deposition, and they were explained, and this did not

5    impede the depositions in any significant way.

6             We believe that, if there are particular

7    follow-up issues that the examining attorneys have

8    concerns about, we should have a meet and confer process

9    and have a reasonable time to resolve those through

10   interrogatories or some other means before there is

11   motion practice.

12            And, if there is to be motion practice,

13   because there is such a voluminous record of

14   jurisdictional discovery, I think we would need to have

15   those motions on a briefing schedule, perhaps have the

16   motions heard after the next conference in May.

17            THE COURT:  Okay.  First, I agree with your

18   concept about a meet and confer, I think that's the way

19   to go about it.  If the plaintiffs need any material, I

20   think they ought to meet with you and tell you what they

21   need, and hopefully it can be resolved at that level.

22            I'm a little concerned about the issues

23   raised during the depositions, and I'm going to have to

24   figure out a way of having the Court's presence at the

25   depositions if there continues to be a problem.  My last

IN RE: MDL 2047          APRIL 26, 2011

1    resort would be to go to the deposition site, but I'll

2    do that if that's necessary.  And then we'll take

3    depositions in front of the Court.

4              MR. SPANO:  If I could just make one comment

5    about that?

6              THE COURT:  Yeah.

7              MR. SPANO:  Your Honor was available

8    throughout that time, and made it clear you were

9    available.  And, apparently, no one at the depositions

10   at the time thought any of the problems were serious

11   enough for anyone to contact the Court.

12             THE COURT:  I did mention the last time that

13   I would give you a phone number so that I could be

14   reached if necessary.  But sometimes the Court's

15   presence is helpful.

16             MR. HERMAN:  May it please the Court, we

17   believe that this matter is serious enough, I'd like,

18   with Your Honor's permission, Chris Seeger to speak

19   about the deposition itself.

20             MR. SEEGER:  Judge, I can keep this really

21   brief, because I think you have a flavor for what

22   happened.

23             The problem was that we had an interpreter,

24   the defendants brought an interpreter, a Czech

25   interpreter, and the defendants had -- he was a very

IN RE: MDL 2047          APRIL 26, 2011

1   nice guy, but they had an attorney who fluently spoke

2   the language.  So, when you look at the record, there's

3   going to be the interpreter interpreting, the Czech

4   interpreter objecting, and the attorneys objecting.  It

5   felt like a free-for-all at times.  I'm not going to say

6   that there is -- it was by design.  Maybe people really

7   get hysterical in situations like that.  But I think

8   guidance the Court and the presence by the Court or an

9   appointee of the Court is a very good idea and will move

10  these deps to completion.

11          From the meet and confer, I'm going to tell

12  you, at a minimum, we're going to be requesting the

13  Court's presence, as well as the continuation of these

14  depositions.  They're not completed.

15          THE COURT:  Let's take it a step at a time.

16  Meet and confer, see what you can get from that

17  standpoint, and then I'll deal with any motions that

18  come along.

19          MR. PANAYOTOPOULOS:  Nick Panayotopoulos for

20  certain Banner entities.  We were at those depositions.

21  My client was not allowed a sixth day.  We never had a

22  chance to ask them a question, and the deposition was

23  cut off at an arbitrary time.  And, in light of a number

24  of defendants asking for just a few minutes of

25  questions, opposing counsel cut them off.  So we never

IN RE: MDL 2047          APRIL 26, 2011

1    had an opportunity to ask certain of the witnesses

2    questions.

3              In addition, the witnesses simply refused to

4    answer yes or no questions.  And it was one of the worst

5    depositions experiences I've ever had.  The witness

6    would simply just go on and state the exact same

7    recitation that they'd been saying all along and just

8    refuse to answer the question.  So even asking any

9    questions would have been futile because of the stance

10   that these witnesses took.  And so we've never had an

11   opportunity to question them.

12             We'll get into it with the briefs, I guess,

13   but we had attempts at meet-and-confer at the

14   depositions, and they all failed because the witnesses

15   just simply refused to deal what the rules required them

16   to do.

17             And, finally, to say that we had access to

18   the Court, that, because of the time difference, we just

19   did not want to bother.  We made a conscious choice not

20   to call the Court at 2 or 3 o'clock in the morning

21   because -- for obvious reasons.  But that's why I

22   believe the Court's involvement is going to be necessary

23   for the next time we need to continue those.

24             Thank you, Your Honor.

25             MR. HERMAN:  Your Honor, one more issue.

IN RE: MDL 2047          APRIL 26, 2011

1  Evidently, learned counsel opposite in China doesn't

2  understand that there are no speaking objections under

3  the federal rules.  And we believe -- Arnold and I both

4  reviewed every deposition.  I can truthfully say, in 45

5  years of practice, I've never been a party to a motion

6  for sanctions, but I believe this matter is so serious

7  that -- we will definitely meet and confer with opposing

8  counsel.  But something has to be done.

9            We spent -- and I say we, collectively --

10 spent a great deal of time and money bringing these

11 depositions to China, and we were not treated with the

12 courtesy that the federal judges require.

13            MR. SPANO:  Your Honor, if I may briefly

14 respond.  There were certainly rough spots during the

15 depositions, and the primary source of delay resulted

16 from the PSE's poor choice of an interpreter.  We had a

17 brief opportunity to interview this interpreter prior to

18 the depositions, and at least on paper she seemed

19 acceptable.  On the first day of the deposition, it

20 became very apparent that she was not up to the task.

21 She had difficulty translating the mainland Chinese

22 words and idioms.  And, she stated this repeatedly

23 herself, that she lacked confidence in her translations.

24 And we suggested to the PSE that they replace her and

25 use the other interpreter we had available.  They chose

IN RE: MDL 2047          APRIL 26, 2011

1   not to do that, which is their prerogative.  But there

2   were delays with the depositions because of the

3   interpreter's problem.  She would have to engage in

4   dialog with the witness and with the Czech interpreter

5   to try to get it straight.  And those discussions took

6   time, but they were necessary to make the record as

7   accurate as possible.

8            As far as speaking objections, they were few

9   and far between.  I've reviewed all the transcripts;

10  and, over five days, there were three instructions not

11  to answer for questions that were wholly beyond the

12  designated topics and didn't have anything to do with

13  personal jurisdiction.

14           As far as the time element, these were

15  jurisdictional depositions in which everyone there had

16  the same or similar interests to get out these

17  jurisdictional facts.  Just because there were 20

18  attorneys in the room is not a basis to unduly lengthen

19  the depositions.  And the cases and the rules are clear

20  that, where there are multiple attorneys with similar

21  interests questioning on a topic, they need to manage

22  their time among themselves.  And they spent a lot of

23  time on complex, argumentative and nonfactual questions

24  that, A, confounded the interpreter even further, and

25  did not lend themselves to yes or no answers, and the

IN RE: MDL 2047          APRIL 26, 2011

1  witnesses chose to explain themselves and they chose to

2  explain the facts.

3          So I think the right way to go here is for

4  the examining attorneys to identify the legitimate

5  factual issues they want to follow-up on, be they

6  documentary or testimonial, and let's address those in

7  an intelligent way.

8          The notion that anything by Taishan's

9  witnesses or attorneys was anything remotely

10 sanctionable is completely unfounded.

11         THE COURT:  Okay.  All right.  It takes

12 cooperation on both sides, so I hope I receive

13 cooperation from both sides on the requests for material

14 and the delivery of material.  If not, then I'm going to

15 have to look over whether or not we go back to China and

16 do it again.

17         Freedom of Information, anything on that?

18         MR. HERMAN:  May it please the Court,

19 nothing at this time.

20         THE COURT:  How about the trial settings in

21 federal court?  The INEX trial that is on July the 20th,

22 I've stayed that.

23         MR. HERMAN:  Your Honor, that trial I

24 believe Your Honor indicated would be stayed, as well as

25 discovery.

IN RE: MDL 2047          APRIL 26, 2011

1    THE COURT:  Right, that's what I said.  I've

2  stayed that and all discovery arising therefrom.  So

3  we've got some dates available, we ought to be thinking

4  about what we can fill in on those dates.

5    Filings in the MDL.

6    MR. HERMAN:  Your Honor, there's nothing

7  about filings.

8    THE COURT:  Anything on notices of

9  appearance or default judgments, next item?

10    MR. HERMAN:  I do have, on the next issue,

11  XIII, a report to read into the record regarding

12  insurance.

13    THE COURT:  All right, No. XIII, insurance

14  issues.

15    MR. HERMAN:  Liaison counsel have met on

16  numerous occasions regarding pending CGL motions as

17  provided in the Court's March 3, 2011 order.  There were

18  originally 63 CGL motions filed.  The parties have

19  agreed that 17 of these motions will not be heard as

20  they are the type of motions approved for hearing in the

21  order.  Of the remaining motions, 22 relate to a legal

22  issue, whether insurers can be sued in an MDL for

23  certain out-of-state claims that will be bucketed for

24  hearing into a single argument.

25    The remaining 24 motions consist of the

IN RE: MDL 2047          APRIL 26, 2011

1   following.  Ten motions related to personal

2   jurisdiction.  Nine motions alleging no policy was

3   issued or the policy is no longer in effect.  Three

4   motions related to the first filed issue.  One motion

5   related to the no case of controversy issue.  One motion

6   related to lack of subject matter jurisdictions.

7           The parties are reviewing these motions

8   together and believe that as many as half of these

9   motions may be resolved by stipulation or agreement.

10          The parties will continue to meet on the

11  remaining motions to determine what discovery if any is

12  needed and to provide the Court with a proposed schedule

13  for moving forward to resolve these motions.

14          Ms. Barrasso is liaison counsel.

15          MS. BARRASSO:  And we concur, Judge, that's

16  the status of the present discussions.  And we,

17  hopefully in the next week or two, will come to you with

18  a better schedule.

19          MR. HERMAN:  This is a joint presentation,

20  I'll give what I've just read to Your Honor's law clerk.

21          THE COURT:  And let's get to me in two weeks

22  so we know what the status is.

23          MS. BARRIOS:  We will, Judge.  Thank you.

24          THE COURT:  Thank you.

25          Anything on the next item, service of

IN RE: MDL 2047          APRIL 26, 2011

```
 1    pleadings electronically?
 2                MR. HERMAN:  Nothing new, Your Honor.
 3                THE COURT:  Master complaint, anything on
 4    master class action complaints?
 5                MR. LEVIN:  No sir.
 6                THE COURT:  Omnibus class action, same
 7    thing?
 8                MR. LEVIN:  Yes, sir.  Yes, sir, no, sir.
 9                THE COURT:  Anything about the special
10    master?
11                MR. HERMAN:  Nothing on that, Your Honor.
12                THE COURT:  Anything on jurisdictional
13    with --
14                MR. HERMAN:  We're moving forward with Knauf
15    depositions that have been set.  A number of them have
16    dates in New York.  We believe that tentative dates for
17    some depositions in Germany, and we expect to have
18    concurrence on those dates, and those depositions will
19    move forward over the next eight to ten weeks.
20                THE COURT:  Anything on mediation?
21                MR. HERMAN:  The mediations, Your Honor, go
22    forward.  There is not currently a mediation set,
23    although we have been noticed by some defendants that
24    they would like to go to mediation on some insurance
25    issues.
```

IN RE: MDL 2047          APRIL 26, 2011

1          THE COURT:  All right.  Hopefully, we'll

2    have some break-throughs now that the Knauf pilot

3    program is in full swing and the INEX matter has been

4    resolved.  Hopefully, we can move forward on the other

5    aspects of the case.

6          What is the Pretrial Order, 1H?  Anything on

7    that?

8          (No Response.)

9          THE COURT:  Class certification, anything on

10   that Class Certification?

11         MR. LEVIN:  Your Honor, the INEX class

12   certification is going to be stayed in the event that

13   preliminary approval is given.  And it's been stayed

14   pending Your Honor's dealing with preliminary approval,

15   next Friday, I believe, at 9 a.m. in this courtroom.

16         August 27th and 28th are the dates.  There

17   will basically be a paper record.  And we're moving now

18   into Virginia and we will be moving to certify class

19   against the supplier there, Venture.  And that should be

20   filed within a week.  And, hopefully, when the INEX

21   dates open up, we'll be able to target Venture and bring

22   Taishan in that way.

23         THE COURT:  Okay, good.

24         Pilot Program, anything, Greg?

25         MR. HERMAN:  Greg Wallace for Knauf has a

IN RE: MDL 2047          APRIL 26, 2011

```
 1   report to make.
 2              MR. WALLACE:  Thank you, Your Honor.  We now
 3   have 49 homes that have either completed remediation or
 4   are in actual remediation.  Behind those are another
 5   100.  And we anticipate in the next few weeks turning
 6   over 60 to 70 homes to the program contractor Moss.
 7              I'd summarize where we are, is that we've
 8   set up an assembly line that I think, while it's not
 9   been without some hiccups, it seems to be functioning.
10   The product seems to be well received by the consumer,
11   the homeowner.  And I think it's the challenge for us
12   and the task ahead of us is to increase the output of
13   this assembly line.
14              THE COURT:  I've been monitoring it, and I
15   think matters are going well on that.  And I appreciate
16   the work that you and your group have done on it.  I
17   like that type of approach, frankly, with cases of this
18   sort.  And I'd like, when it gets in a little different
19   format, maybe we can take a look at it and see what we
20   can learn from it for future litigation.  I like the
21   idea of being able to expose the parties to some pilot
22   program so that they can get their feet wet, so to
23   speak, both sides, and look at it to see whether or not
24   it works.  And then, if it does work, to expand the
25   pilot program to other areas.  And then, hopefully,
```

IN RE: MDL 2047          APRIL 26, 2011

1    after you get some experience with on-the-ground work to

2    see whether or not the parties can come together and

3    monetize that matter and ultimately resolve it.  And I

4    think that that, in a litigation of this sort, is the

5    way to go.  It's hard sometimes to get the parties to

6    focus on the whole thing without them having some

7    experience, and this gives them the experience to make

8    some recommendations to their respective parties.  And

9    so hopefully this will pan out well.

10                   Stipulation concerning service of process.

11                   MR. HERMAN:  Nothing new, Your Honor.

12                   THE COURT:  What about the home builders

13    fees and costs?  I think I had issued an order on that.

14                   MS. WIMBERLY:  Your Honor, we've had one

15    motion.  Dorothy Wimberly for the Home Builders.  We

16    have had one motion which asks the Court to amend that,

17    and we're going to be discussing that motion with the

18    filer, and we'll report back to the Court at the next

19    hearing.

20                   But I can report that the great majority of

21    the builders and their insurers have made payments.  We

22    made payment arrangements with some of the builders,

23    some have asked for extensions.  And I can report that I

24    would say about 75 percent of the builders have very

25    timely complied, and we appreciate that.

IN RE: MDL 2047          APRIL 26, 2011

1    And we would remind any other builders who

2  have not yet complied that they need to do so.  We will

3  be providing the Court with a report as to those

4  builders who have completely ignored the order.

5    THE COURT:  Okay.  Get me that report and

6  I'll deal with it.  I think this is an opportunity for

7  the builders to take advantage of this method of dealing

8  with this issue.

9    And, if you have any questions at all, talk

10  to Ms. Wimberly, she can answer them for you.

11    Pretrial Order No. 10.

12    MR. HERMAN:  Yes, Your Honor, nothing new on

13  that.

14    Item 30 at page 31, plaintiff's motion,

15  nothing new on that.

16    31, I'd note that Mr. Miller is not here,

17  but Knauf has filed a motion for leave to file under

18  seal to enforce the settlement agreement.  The Court has

19  scheduled it for May 11, 2011 as the hearing date.  And

20  the PSE intends to join in and support Knauf's motion.

21    THE COURT:  Okay.  While we're talking about

22  motions, Knauf's motion is a question of destroying some

23  material that Knauf has in its warehouse.

24    I think the motion is reasonable.  It's a

25  question of whether or not the plaintiffs need any

IN RE: MDL 2047            APRIL 26, 2011

1  additional information.  I think the parties ought to be

2  meeting and conferring.

3         One way of doing it is to have an agreement

4  reached as to what's there; and then, if what's there is

5  not necessary, then it ought to be destroyed.  There's

6  no sense in paying money to store things that nobody

7  needs because someone's concerned that they might need

8  it somewhere in the future but they can't put their

9  finger on it and they don't know whether or not they're

10  going to do it.  I'm not going to be doing that.

11         So the parties, whether it's Knauf or

12  anybody else, if you've got a warehouse problem, let's

13  look at it.  And I'll give the plaintiffs an

14  opportunity, a small window, to look at the material.

15  If they can't do it within that window, then if they

16  want to continue to store the material, they're going to

17  have to pay for it.  So we'll shift it to the

18  plaintiffs' warehouses and let them deal with it if that

19  becomes an issue.

20         But, before I get into it, I'd like the

21  parties to meet and view this matter.

22         Anything else that we need to talk about?

23         MR. HERMAN:  Yes, Your Honor.  I just want

24  to indicate that David Connor, attorney for L&W, is

25  present, and I'll be speaking with him immediately

IN RE: MDL 2047          APRIL 26, 2011

1  following the status conference.

2          And a representative of Interior/Exterior

3  Insureds will meet with Mr. Levin in your conference

4  room.

5          THE COURT:  All right.  And the next meeting

6  is on May 26th.  And, thereafter, we have a June and

7  July meeting.

8          CASE MANAGER:  June 14th and July 14th.

9          THE COURT:  June 14th and July 14th.  And,

10  as usual, I'll meet with the lead and liaison counsel at

11  8:30 on those dates.  And, the other, I'll start the

12  meeting at 9 o'clock.

13          Anything from anybody that wishes to speak?

14          All right.  Thank you very much.  Court

15  stands at recess.

16          (9:55 a.m., Proceedings in Recess.)

17

18                  CERTIFICATE

19

20

21

22      I, Susan A. Zielie, Official Court Reporter, do
    hereby certify that the foregoing transcript is correct.

23

24

25              /S/ SUSAN A. ZIELIE, RPR, FCRR
        _____
                Susan A. Zielie, RPR, FCRR