# EXHIBIT "3"

```
 1                  UNITED STATES DISTRICT COURT

 2                 EASTERN DISTRICT OF LOUISIANA

 3

 4

 5   IN RE:  CHINESE MANUFACTURED      *   Docket 09-MD-2047
             DRYWALL PRODUCTS          *
 6           LIABILITY LITIGATION      *   June 14, 2011
                                       *
 7   This Document Relates to All Cases *   9:00 a.m.
     * * * * * * * * * * * * * * * * * *

 8

 9

10               STATUS CONFERENCE BEFORE THE
                   HONORABLE ELDON E. FALLON
11               UNITED STATES DISTRICT JUDGE

12

13   APPEARANCES:

14
     For the Plaintiffs:          Herman Herman Katz & Cotlar
15                                BY:  RUSS M. HERMAN, ESQ.
                                  820 O'Keefe Avenue
16                                New Orleans, Louisiana 70113

17

18                                Levin, Fishbein, Sedran & Berman
                                  BY:  ARNOLD LEVIN, ESQ.
19                                510 Walnut Street, Suite 500
                                  Philadelphia, Pennsylvania 19106
20

21

22   For Knauf Entities:          Frilot, LLC
                                  BY:  KERRY J. MILLER, ESQ.
23                                1100 Poydras Street, Suite 3700
                                  New Orleans, Louisiana 70163
24

25
```

1   APPEARANCES CONTINUED:

2   For Knauf Entities:              Kaye Scholer
                                     BY:  GREGORY J. WALLANCE, ESQ.
3                                    425 Park Avenue
                                     New York, New York 10022-3598
4

5

6
    For Taishan Gypsum              Hogan Lovells, LLP
7   and Taishan Plasterboard:       BY:  FRANK T. SPANO, ESQ.
                                     875 Third Avenue
8                                    New York, New York 10022

9

10

11  For the Insurers:               Barrasso, Usdin, Kupperman,
                                       Freeman & Sarver
12                                   BY:  JUDY BARRASSO, ESQ.
                                     909 Poydras Street
13                                   24th Floor
                                     New Orleans, Louisiana  70112
14

15

16

17  For the Homebuilders:           Greenberg Traurig PA
                                     BY:  HILARIE BASS, ESQ.
18                                   1221 Brickell Avenue
                                     Miami, Florida 33131
19

20

21  For Hobbie:                     Mason LLP
                                     BY:  GARY E. MASON, ESQ.
22                                   1625 Massachusetts Avenue, NW
                                     Suite 605
23                                   Washington, D.C.  20036

24

25

```
1    APPEARANCES CONTINUED:

2    For State/Federal          Barrios, Kingsdorf & Casteix, LLP
     Committee:                 BY:  DAWN M. BARRIOS, ESQ.
3                               701 Poydras Street
                                Suite 3650
4                               New Orleans, Louisiana 70139

5

6    Also Present:              Daniel E. Becnel, ESQ.

7

8
     Official Court Reporter:   Jodi Simcox, RMR, FCRR
9                               500 Poydras Street
                                Room B-406
10                              New Orleans, Louisiana 70130
                                (504) 589-7780
11

12

13

14   Proceedings recorded by mechanical stenography, transcript

15   produced by computer.

16

17

18

19

20

21

22

23

24

25
```

1                         <u>PROCEEDINGS</u>

2                       **(June 14, 2011)**

3          **THE DEPUTY CLERK:**  All rise.

4          **THE COURT:**  Be seated, please.  Good morning, ladies

5    and gentlemen.  Let's call the case, please.

6          **THE DEPUTY CLERK:**  MDL-2047, *In re:  Chinese Drywall*.

7          **THE COURT:**  Counsel, make their appearance for the

8    record.

9          **MR. HERMAN:**  Yes, Your Honor.

10         **MR. MILLER:**  Good morning, Your Honor.  Kerry Miller

11   on behalf of the Defense Steering Committee.

12         **MR. HERMAN:**  May it please the Court, good morning,

13   Judge Fallon.  Russ Herman on behalf of plaintiffs.

14         **THE COURT:**  We're here today for our monthly status

15   conference.  I have a full courtroom and several hundred people

16   on the phone, so please use the microphone when you speak.

17              I met with lead and liaison counsel a moment ago

18   and got the proposed agenda a couple of days ago, added to it

19   and discussed this meeting with those individuals.  I'll take

20   it in the order that's given to me, except let's start with the

21   Banner agreement, please.

22         **MR. HERMAN:**  May it please the Court, Russ Herman.

23              With regard to the proposed Banner resolution,

24   which Your Honor, as I understand it, will set for a

25   preliminary hearing, I'm going to turn it over to lead counsel,

 1   Arnold Levin, to discuss the settlement.  And before I do, I
 2   want to congratulate all of the various attorneys that
 3   participated for the plaintiffs, Arnold Levin and Ervin
 4   Gonzalez and Leonard Davis and Fred Longer have been at this
 5   long and hard.
 6          All of the defense counsel involved have been
 7   very professional, negotiations were spirited, and particularly
 8   Jane Byrne for Chartis.  We've had 43 drafts of an agreement
 9   over a four- or five-week period and Jane has worked through
10   the night and weekends.
11          This is the third resolution under Your Honor's
12   superintendence in Chinese Drywall.  We have three other
13   potential resolutions that we're working on simultaneously.  We
14   want to thank the Court for its patience and for Your Honor's
15   willingness to entertain us on weekends.
16          And I would be remiss if we didn't also thank
17   your law clerk Lexy Butler who worked weekends and has been
18   very helpful.  With that, I'll turn it over to Arnold.
19          THE COURT:  All right.  So everybody knows, a
20   settlement will be announced today to the press with regard to
21   Banner.  A settlement has been reached with Banner.  As I've
22   mentioned several times, this case is a little different in
23   that we don't have just one defendant, or two defendants, or
24   three defendants, whatever it is; in this case, there are about
25   a thousand defendants.  So it's very difficult to get everybody

1   in the room and talk with them about an ultimate resolution of
2   the case.

3            So what I have been trying to do is to carve out
4   areas and then focus the individuals on those particular areas.
5   And this is the third area and, hopefully, there will be
6   several more in the near future.  But I think that that's the
7   way that this matter has to go about being resolved.  We've got
8   to get it each step of the way.  As I said before, the way you
9   eat an elephant is one bite at a time, and I think that's what
10  has to be done in this case, and so far we've gotten three
11  bites.

12           Let me hear from the plaintiffs committee on the
13  Banner settlement.

14       **MR. LEVIN:**  Your Honor, this is the second bite of
15  the elephant, and the elephant's rather large.  So it's a step
16  in the right direction.

17           INEX has -- we have a settlement with INEX.
18  Preliminary approval has been granted.  There will be a
19  fairness hearing in October.

20       **THE COURT:**  We've also had a pilot program with
21  Knauf --

22       **MR. LEVIN:**  Yes, that's right.

23       **THE COURT:**  -- which was critical in this thing.

24       **MR. LEVIN:**  Which we don't want to overlook, and I
25  have, and I apologize for that.

1              This is the second step of a supplier -- a major

2    supplier, Banner.  Their supply was geographically in the

3    Florida area.  They had Knauf and Taishan product.  The

4    settlement wraps its hands around the existing insurance that

5    we believe exists after credits have been given for some prior

6    settlements that had been consummated.  We recognize that.

7    It's in the amount of $55 million.

8              It envisions -- well, first of all, our goal was

9    to get the insurance money, not to distribute the insurance

10   money.  It calls for an allocation proceeding whereby there

11   will be an allocation between the various class members, which

12   also includes builders and the likes, as well as homeowners,

13   and also includes Taishan product, as well as Knauf product.

14   And Taishan is a horse of another color, and that's down the

15   road a bit.  We're just getting started with them, but there

16   will have to be money segregated for Taishan out of the Banner

17   settlement.

18             We recommend to the Court, and should the Court

19   grant preliminary approval, to appoint a special master to

20   assist us and to assist the Court in the allocation process.

21   If Your Honor grants preliminary approval, probably the

22   fairness hearing would be in December given that you have that

23   type of lag time and buying the various ads in papers and

24   magazines.  Individual notice can go out rather shortly.

25             It's a lot of paper to say that much.  It's a

1    lot of work to get there, but there's a lot of complex issues

2    because of the multiple parties and the releases.  And now the

3    entire area of counsel representing various entities and

4    parties to this litigation can look at it.  Your Honor has

5    scheduled, I believe, a hearing for preliminary approval at the

6    next status conference on July 14th.

7              **THE COURT:**  Yes.  I'm going to set a hearing so that

8    we can take a look at it.  But as I understand it, it's of all

9    the insurance proceeds that Banner has.

10             **MR. LEVIN:**  Yes, net of what they spent.  And no

11   fresh money from Banner.  Banner is struggling.  And perhaps

12   one of the benefits of this is that they can get along with

13   their corporate business and continue to do what they do, and

14   not necessarily sell bad drywall.

15             **THE COURT:**  That's the area that everybody has to be

16   focused on.  Banner, they would be teetering on bankruptcy or

17   be put into involuntary bankruptcy if suits were pursued

18   against them.  So rather than that, they're tendering and all

19   of their insurance money is coming in and putting it in the pot

20   for distribution.

21             **MR. LEVIN:**  Your Honor, it is a (b)(3) settlement,

22   not a (b)(1) settlement.  It's not a limited fund that's --

23   it's in no way violative of our case.

24             **THE COURT:**  All right.  I'll notify everybody that

25   this preliminary approval will be set for discussion and for

1   any objection at the next meeting.

2          **MS. BASS:**  Your Honor, Hilarie Bass on behalf of the

3   Homebuilders Steering Committee.

4                  I feel compelled to put on the record that

5   despite the admonishment of this Court to include the

6   homebuilders in the negotiation process, and despite the fact

7   that this Court granted intervention to some of the builders so

8   they could participate in the settlement of this class, the

9   homebuilders have been totally excluded from this process.

10                 The Homebuilders Steering Committee was given a

11  term sheet ten days ago with significant material terms not

12  included.  We were assured that we would be included in the

13  settlement discussions before anything went final.  We actually

14  had offered to go to New York to do that, we offered to come in

15  yesterday to do that.  We negotiated for a week over the time

16  to get together to have the discussion, and we're shocked to

17  find out when we arrived in court today that the deal had

18  already been cut.

19                 I understand it's a complicated deal.  It may be

20  the best deal possible.  But I can assure you, it is much

21  easier to cut a deal when you're excluding one of the most

22  important classes or subclasses of relevant interested parties,

23  and that's what I believe has been done.

24                 We will meet with the PSC.  We will go through

25  this settlement agreement on behalf of the Homebuilders

10

1   Steering Committee.  But I must put on the record how offended
2   we are with this process, that the insurance companies and
3   Banner and the PSC have sliced and diced a deal and allocated
4   risks and allocated the release provisions and the dollars
5   without any input from the one set of parties at the table who
6   spent millions of dollars to repair these homes.

7           So we will go through this process, Your Honor,
8   but I have to express my sincere concern about the possibility
9   that all this work will be for naught.  Because if all the
10  homebuilders object to the settlement, I suspect that neither
11  Banner nor the insurance companies will be prepared to go
12  forward.

13          **THE COURT:**  Yes.  I'm disappointed that this has
14  occurred because that wasn't my understanding.  I understood
15  that everybody would be at the table this time and would
16  participate in this agreement.  And as I mentioned to counsel
17  in conference, I want them to meet following this matter and
18  see whether or not we're just dealing with a misunderstanding
19  as opposed to something more serious.

20          But I do agree that the significant people have
21  to be plugged in and participate in these matters in order for
22  them to be successful.  So I don't want this to happen again.

23          Let's take the next item, State Court Trial
24  Settings.  Anything on that?

25          I talked with Judge Farina, and I'll be talking

1  to Chief Judge Weinstein following the meeting to discuss any
2  other matters that we can jointly deal with involving Banner
3  particularly.
4              Anything on Insurance Issues?
5          **MR. HERMAN:**  I recall seeing Ms. Barrasso earlier.
6  From the PSC's point of view, we've had continuous discussions
7  up until yesterday, I think we spent a couple of hours, but...
8          **MS. BARRASSO:**  Yes, Judge.  The insurers are meeting
9  and being involved in some of the settlement discussions.
10 We've also met with the PSC several times to try to work out a
11 scheduling order on the pending motions.  We hope to have that
12 back to you in the next few weeks.
13         **THE COURT:**  Okay.
14             State/Federal Coordination.  Anything on that,
15 Dawn?
16         **MS. BARRIOS:**  Thank you, Your Honor.  Dawn Barrios
17 for the state/federal committee.
18             Your Honor, last status conference I had brought
19 to the Court's attention a case that is set for trial in
20 January of 2012.  It didn't make the joint report.  I'd just
21 like to mention it again.  It's *Staggs versus Alvarez Homes*.
22 It's in the 13th Circuit, Hillsborough County.  Mediation is
23 scheduled for July 27th and trial scheduled for January 2012.
24             And I believe I had spoken with your law clerk
25 about the judge's contact information since the last status

1  conference.

2          THE COURT:  Yes.  You've given me all of those judges

3  and I've been dealing with them.

4          MS. BARRIOS:  Your Honor, we have a new case that I

5  wanted to bring to your attention because it's a new judge and

6  it is in Galveston County, Texas, 222nd Judicial District

7  Court, Judge Susan Criss.  It is a homeowner versus a

8  builder/seller and it involves Knauf.  I'd like to give a copy

9  of that to your law clerk.

10          THE COURT:  Is that the first one in Texas that has

11  been filed?

12          MS. BARRIOS:  No, Your Honor, I don't believe it is.

13  We had a lot of Texas people came in on the omni, but I'll do a

14  double-check to see if this is the first Texas state court

15  case.

16          THE COURT:  State court, yes.

17          MS. BARRIOS:  I'd also like to bring to the Court's

18  attention, and I apologize if you already are aware of it, is

19  the case *Auto-Owners Insurance Company versus American Building*

20  *Material*s.  It was a case out of the Middle District of Florida

21  where the pollution exclusion was not accepted as an exclusion

22  by the court.

23          Through CTO 21, we have put all remands on the

24  disk.  And I believe, Your Honor, that concludes the -- my

25  report.  Yes, Your Honor.  I thought had I had an extra case,

1   but that's it.

2                   Thank you, Judge.

3           **THE COURT:**  Good.  Thanks very much.

4                   This is a challenge in this particular case

5   because we have more state court involvement than is normal in

6   a case of this nature.

7                   Omnibus Class Action.  Anything on that?

8           **MR. LEVIN:**  Your Honor, we filed Omnibus 10 within

9   the last week, which is a Knauf complaint.  It's over a

10  thousand plaintiffs, but only 300-something are new Knauf

11  properties.  The others have joined the suit because they

12  brought in builders and suppliers, et cetera.

13                  We also filed recently what I haven't

14  characterized as an omnibus complaint, but it is a class action

15  complaint against multiple Chinese corporations that are either

16  above or below in the chain with the Taishan defendants, who

17  are the only ones that have entered their appearance in these

18  proceedings.

19                  We've done considerable research to bring them

20  into this case.  We haven't had the benefit of Taishan's

21  counsel.  With regard to the facts in those cases, we feel

22  pretty secure.  There is an allegation they are not defendants;

23  but there is strong statements as to the involvement of

24  American corporations with regard to these Chinese

25  corporations, in particular JP Morgan and Morgan Stanley.

1          We have subpoenas out for records from those

2    entities who either made investments or assisted the Chinese

3    corporations in getting a foot into the United States.

4    Unfortunately, we have to file through the Hague and we have to

5    wait forever to get our service, but that's the cards that

6    we've been dealt by the Chinese.

7          **THE COURT:**  All right.

8          Motion to Establish a Litigation Fund.  Anything

9    on that?

10         **MR. HERMAN:**  Please the Court, nothing new.

11         **THE COURT:**  What about the mediation?

12         **MR. HERMAN:**  There's one scheduled for June 24th,

13   Your Honor, with Prichard Housing Authority.

14         **THE COURT:**  All right.  And then the pilot program.

15   Anything on that, Greg?

16         **MR. HERMAN:**  Mr. Wallance is here.

17         **MR. WALLANCE:**  Good morning, Your Honor.  Gregory

18   Wallance for the Knauf defendants.

19         We have 260 homes currently in the pipeline, and

20   by *pipeline* we mean the home is considered to be in the

21   pipeline if Moss has already started or is starting the process

22   of preparing the home for the remediation, which obviously

23   means the homeowner and the attorney very much want that to

24   happen.

25         There are currently 17 homes that have been

1    completed.  Another 60 are under remediation.  We expect --
2    well, as Your Honor recalls, the program agreement, the
3    demonstration and remediation agreement targeted 300 homes.  We
4    expect to pass the 300 number in the next two or three weeks,
5    and at this point we're just going to continue.  And there's --
6    no specific limit is set.
7                    We hope to continue increasing, ramping up the
8    program, bringing at least 50 a month or more into the program.
9    And so far we're getting a good response from attorneys and
10   their homeowners.
11              **THE COURT:**  Good.  Thanks very much.
12                    The last time we talked, there was some interest
13   in some homes that have already been fixed or rehabilitated and
14   there was an issue there.  How are we dealing with that?
15              **MR. WALLANCE:**  Well, I've spoken both with the PSC
16   and the individual attorneys for five or six homes that we'd
17   like to start with, including the Sean Payton home.
18                    Two things:  One is we're very much considering
19   this to be, if not part of the pilot program, an adjunct to the
20   pilot program, and we're going to proceed with the same kind of
21   good cooperation we've been getting from the PSC and individual
22   attorneys.
23                    Second, unlike the pilot program, these homes
24   are generally large, expensive to rehabilitate.  In some
25   instances -- well, in these instances, the homeowners have

1    self-remediated.  They had the resources.  And in one instance

2    a lot of additional upgrades were done.  So they're going to

3    require a negotiation on a case-by-case basis.  We hope to

4    commence those negotiations within the next several weeks, but

5    we only just recently got the data that we need to evaluate and

6    come to a position.

7              **THE COURT:**  All right.  Yes, that makes sense to me,

8    that I think it's going to have to be a case-by-case basis

9    because they have different issues than the others.  I

10   understand that.

11             **MR. HERMAN:**  Judge Fallon, since the last conference

12   and the remediation issue -- self-remediation issue came up,

13   the PSC has been collecting from all attorneys a request that

14   they provide their plaintiff profile forms, whether the

15   property was indicated in an omnibus complaint.  And the other

16   information, we should have a chart prepared by the end of the

17   week.  We've had so far responses from a dozen attorneys.

18             We're certain, given the numerous

19   self-remediation that there will be outstanding

20   self-remediations which have not been reported and may not be

21   reported.  But we intend to provide Knauf with a list of what

22   we have as well as sufficient information for them to follow

23   up.

24             **THE COURT:**  What about the class certification

25   hearings?

1            **MR. HERMAN:**  Your Honor, there's nothing new as to

2   class certification hearings.  The next issue --

3            **THE COURT:**  Depositions of Knauf.

4            **MR. HERMAN:**  Yes, Your Honor.  At page 8 of the

5   status conference report 22, which will be posted on Your

6   Honor's Web site, 11 depositions have been completed and six

7   are scheduled in July and August, two in Germany, three in Hong

8   Kong, and one at a site yet to be determined.

9            The scheduling of these depositions with Knauf

10  has proceeded in an orderly fashion.  We do not anticipate any

11  issue with the scheduling or taking of the Knauf depositions

12  that are remaining.

13           **THE COURT:**  All right.  What about Taishan

14  defendants?

15           **MR. HERMAN:**  Your Honor, Judge Fallon called a status

16  conference call on June 9th.  The parties are currently

17  reviewing Taishan production and will meet and confer

18  immediately following the status conference today.  And then on

19  June 23rd, we've scheduled a meeting and we hope to have

20  addressed the documents by then.

21           Page 9, the general discourse as regards Taishan

22  document production and ongoing discussions is outlined.  Your

23  Honor has reserved the issue of sanctions.  Your Honor has

24  indicated that in -- hopefully, in November or December of

25  2011, in accord with the Court's calendar, that the Court

1   intends to be present for Taishan depositions.

2               Thus far, Taishan has required that those

3   depositions be in Hong Kong and we'll be proceeding with an

4   attempt to resolve any issues regarding those depositions and

5   the document production, which should be mostly complete before

6   those depositions commence.

7          THE COURT:  Yes.  I met with the parties via

8   telephone conference and indicated that I felt that it was

9   necessary for this -- that the Court be present at the

10  depositions.

11              I read the transcript and I didn't feel that

12  they were very helpful to me in resolving the jurisdictional

13  issues.  I learned a lot about interpreters.  I learned a lot

14  about their problems with dialects and things of that sort, and

15  I thought the attorneys made interesting speeches during the

16  depositions.  But the witnesses didn't supply any information

17  or didn't have the opportunity to supply information or

18  couldn't supply information that would assist me in the

19  jurisdictional issues that I'm dealing with.

20              So it looks to me like we have to take the

21  depositions again and this time the Court will be present

22  during the depositions.  I gave the dates of November and

23  December that I can set aside at least a week to deal with

24  these issues.  But before we go over to wherever we're going, I

25  want the parties to decide what documents they want, what

1   documents the other side's willing to give, and then the Court

2   will make the decision as to which documents are actually

3   presented or given, and which witnesses will be taken, what

4   areas the witnesses will be interrogated on, and we'll have all

5   of these details worked out.

6              And I also focused the parties on interpreters.

7   If they can't agree on an interpreter, then I'll ask the State

8   Department to give us an interpreter.

9              I also discussed with them the place of the

10  depositions, if they need to be at the American Embassy in Hong

11  Kong or the American Consulate or some other mutually

12  acceptable place.  But we've got to work out the details so

13  that when we go over it's a little more organized than it was

14  the last time.

15       MR. HERMAN:  May it please the Court, Mr. Spano is

16  here, the attorney for Taishan.  He may wish to address the

17  Court.

18       THE COURT:  Mr. Spano was on the conference call and

19  participated in it and I heard his areas of concern, and I

20  agree with many of them and I've discussed it with the parties.

21       MR. SPANO:  Thank you, Your Honor.  Frank Spano,

22  Hogan Lovells for Taishan Gypsum.

23              I just want to point out briefly that we're

24  communicating with our client regarding the proposed dates for

25  further deposition in November and December, as well as the

1    other issues we discussed on the June 9th status conference and
2    will report back on those next week.
3              Also, prior to our call next week, we will be
4    submitting to the Court and the PSC charts listing the
5    substance of the deposition testimony on each of the previously
6    designated topics which we believe will assist the Court and
7    the parties in identifying the remaining topics that are
8    necessary to be covered.
9              And finally, I just want to comment briefly on
10   Mr. Levin's discussion of the efforts to obtain discovery from
11   American -- the investment banks.  And for the record, I just
12   want to point out that Taishan Gypsum answered interrogatories
13   regarding that in substance stating under oath that Taishan
14   Gypsum did not have any interaction or relationships with
15   American banks.  And our clients were asked no questions
16   regarding those issues at their depositions.
17             **THE COURT:**  All right.  Frank, you need to know that
18   the Court is aware of the difficulty that exists in these types
19   of situations, and I appreciate your work on it.  I know it's
20   very hard to deal with all of the issues that you particularly
21   have been dealing with.  And you've been sticking with it and I
22   appreciate your efforts on this.
23             And I think with your efforts and the efforts of
24   the other side, I think we'll get through this rather
25   complicated issue.  But you need to know I appreciate your

1   work.

2              **MR. SPANO:**  Thank you, Your Honor.

3              **MR. HERMAN:**  May it please the Court, I'm certain

4   that Mr. Spano, a fine lawyer and officer of the court,

5   submitted an affidavit that he felt was accurate.  We have

6   documents which indicate JP Morgan owns 22 to 26 percent of

7   CNBM and BNBM which, in turn, owns 65 percent of Taishan.  So

8   it may be that Taishan did not -- that their affidavit is

9   correct; but sometimes it's not what's in an affidavit or

10  representation, it's what's not there.

11             And we fully understand that we have to go

12  through rather than around.  And we look forward to JP Morgan

13  and Morgan Stanley at some point appearing before the Court.

14             **THE COURT:**  But we're not there yet, and I don't know

15  whether we'll ever get there, but I'll listen to both of you

16  all and give you all an opportunity to discuss that with me.

17             **MR. HERMAN:**  Thank you, Your Honor.

18             **THE COURT:**  Interior Exterior.  Anything on that?

19             **MR. HERMAN:**  Yes, Your Honor.  A notice will go out

20  this week re:  Class settlement in *Parade Magazine*, newspapers

21  and *USA Today*.

22             **THE COURT:**  Okay.

23             **MR. HERMAN:**  We're advised, as we continuously are

24  advised, that *Parade Magazine* is the most well read print media

25  in the nation and has been for a substantial period of time.

1    So we expect notice to be more than sufficient in connection
2    with that resolution.  As regards notice, the PSC has
3    undertaken to pay for notice.
4            **THE COURT:**  Okay.  And we talked about the next item,
5    the Banner matters.
6            **MR. HERMAN:**  Correct, Your Honor.  And as regards 14,
7    Frequently Asked Questions, once there is a hearing on
8    preliminary approval, depending upon whatever Your Honor's
9    ruling is, we will submit additional Frequently Asked Questions
10   and Answers.
11           **THE COURT:**  Okay.  And the next status conference
12   will be on July 14th.  And I'm told that the August 25th date
13   is problematic with my calendar.  I'm starting a trial that
14   day.  The 24th would be better for me if that's possible.
15           Anything further?  I've got a motion that I want
16   to talk with you all about when I come back.  It's the class
17   action plaintiffs and Hobbie motion for entry of a scheduling
18   order.  I wondered, in view of the Banner settlement, whether
19   that should be put off for a week or so to give counsel an
20   opportunity -- I don't want to put it off longer than that, but
21   I don't want anybody to be surprised with that.
22           What's your input on it?
23           **MR. MASON:**  Your Honor, we're prepared to discuss
24   that this morning.
25           **THE COURT:**  Okay.  That's fine.  I just wanted to

1    give you that opportunity.  All right.  We'll end here then and
2    I'll come back in five minutes.
3         **MR. BECNEL:**  I wanted just for Ms. Hilarie to know
4    that Mr. Wallance and I have talked about homebuilders
5    participating in the Sean Payton negotiation.  I don't know
6    whether she wants to participate, but Crosby Homes, I've given
7    him all of the documentation and the offers from them to
8    include that.  Mr. Parker has five high-end homes that have
9    been set and packages to them.
10        **THE COURT:**  Yes.  Let's get in on this so that you
11   all recognize that these are all independent matters, and I
12   think have to be dealt with, because it's a different type of
13   home that we're dealing with.  We're dealing with people who
14   have had the resources to repair their home and that tells us
15   something about the quality of the home and the nature of the
16   home.
17             And there's some issues that come up that one
18   might not help you on the other one, so you need to focus on
19   each individual home to get the best deal that you can get from
20   this.  All right.
21        **MR. HERMAN:**  Your Honor, if I might, just one other
22   issue, Mr. Spano in his communications, in addition to
23   Mr. Levin and my office, I'd appreciate it if he copied
24   Mr. Seeger and Mr. Meunier, particularly regarding any
25   depositions of Taishan in November or December.

1          **THE COURT:**  All right.  We'll take a five-minute

2     break at this time and I'll come back.  Court will stand in

3     recess.

4          **THE DEPUTY CLERK:**  All rise.

5          (WHEREUPON, the proceedings were concluded.)

6                              *****

7                           <u>**CERTIFICATE**</u>

8          I, Jodi Simcox, RMR, FCRR, Official Court Reporter

9     for the United States District Court, Eastern District of

10    Louisiana, do hereby certify that the foregoing is a true and

11    correct transcript, to the best of my ability and

12    understanding, from the record of the proceedings in the

13    above-entitled and numbered matter.

14

15

16                          S/ Jodi Simcox, RMR, FCRR
                            Jodi Simcox, RMR, FCRR
17                          Official Court Reporter

18

19

20

21

22

23

24

25