# EXHIBIT "6"

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

IN RE:  CHINESE MANUFACTURED      *   Docket 09-MD-2047
        DRYWALL PRODUCTS          *
        LIABILITY LITIGATION      *   April 26, 2012
                                  *
This Document Relates to All Cases  *   9:00 a.m.
* * * * * * * * * * * * * * * * * *

STATUS CONFERENCE BEFORE THE
HONORABLE ELDON E. FALLON
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiffs:          Herman Herman Katz & Cotlar
                             BY:  RUSS M.HERMAN, ESQ.
                             BY:  LEONARD A. DAVIS, ESQ.
                             820 O'Keefe Avenue
                             New Orleans, Louisiana 70113


                             Levin, Fishbein, Sedran & Berman
                             BY:  ARNOLD LEVIN, ESQ.
                             510 Walnut Street, Suite 500
                             Philadelphia, Pennsylvania 19106


For Knauf Entities:          Frilot, LLC
                             BY:  KERRY J. MILLER, ESQ.
                             1100 Poydras Street, Suite 3700
                             New Orleans, Louisiana 70163

APPEARANCES CONTINUED:

For Taishan Gypsum                 Stanley, Reuter, Ross, Thornton
and Taishan Plasterboard:            & Alford, LLC
                                   BY: THOMAS P. OWEN, JR., ESQ.
                                   909 Poydras Street
                                   Suite 2500
                                   New Orleans, Louisiana 70112


For the Homebuilders:              Stone Pigman Walther,
                                     Wittmann & Hutchinson
                                   BY:  DOROTHY WIMBERLY, ESQ.
                                   546 Carondelet Street
                                   New Orleans, Louisiana 70130


For State/Federal                  Barrios, Kingsdorf & Casteix, LLP
Committee:                         BY:  DAWN M. BARRIOS, ESQ.
                                   701 Poydras Street
                                   Suite 3650
                                   New Orleans, Louisiana 70139


For North River:                   Thompson Coe Cousins & Irons, LLP
                                   BY: KEVIN RISLEY, ESQ.
                                   One Riverway
                                   Suite 1600
                                   Houston, Texas 77056


For North River:                   Lobman Carnahan Batt Angelle
                                     & Nader, PLC
                                   BY:  SIDNEY J. ANGELLE, ESQ.
                                   400 Poydras Street
                                   Suite 2300
                                   New Orleans, Louisiana  70130

APPEARANCES CONTINUED:

Pro Se Curator:                Law Offices of Robert M. Johnston,
                                 LLC
                               BY:  ROBERT M. JOHNSTON, ESQ.
                               400 Poydras Street
                               Suite 2450
                               New Orleans, Louisiana 70130


Official Court Reporter:       Jodi Simcox, RMR, FCRR
                               500 Poydras Street
                               Room B-406
                               New Orleans, Louisiana 70130
                               (504) 589-7780


Proceedings recorded by mechanical stenography, transcript

produced by computer.

1

2                          <u>PROCEEDINGS</u>

3                        (April 26, 2012)

4                            ******

5                   (COURT CALLED TO ORDER)

6                            ******

7         **THE DEPUTY CLERK:**  All rise.

8         **THE COURT:**  Be seated, please.

9              Good morning, ladies and gentlemen.

10             Would you call the case, please.

11        **THE DEPUTY CLERK:**  MDL-2047, *In re:*

12  *Chinese-Manufactured Drywall Products Liability Litigation.*

13        **THE COURT:**  Counsel, make their appearance for the

14  record, please.

15        **MR. HERMAN:**  May it please the Court.  Good morning,

16  Your Honor.  Russ Herman for plaintiffs.

17        **MR. MILLER:**  Good morning, Your Honor.  Kerry Miller

18  for the Defense Steering Committee.

19        **THE COURT:**  Please use the microphone.  In addition

20  to the people we have in the courtroom, I have several hundred

21  on the phone.

22             This is our monthly status conference.  I have

23  met with liaison and lead counsel a moment ago to talk with

24  them about the proposed agenda.  I'll take it in the order in

25  which it's given.

1    Pretrial Orders, any report on the Pretrial

2    Orders?

3    **MR. HERMAN:**  May it please the Court.  There's a new

4    pretrial order, PTO 26, on pre-remediated homes.  Kerry Miller

5    and Leonard Davis will address it.

6    **THE COURT:**  Okay.  Just for the record tell us what

7    it is.

8    **MR. MILLER:**  Yes, Your Honor.  Pretrial order 26, is

9    a pretrial order the Court entered after the March status

10   conference and it pertains to what we've all referred to in

11   court as "already remediated homes."

12   These are homes that fall under the Knauf class

13   action settlement agreement with the PSC, but are not subject

14   to the remediation program or the cash option under the

15   settlement because the homeowner had already remediated the

16   home as of the effective date of the Knauf settlement, which is

17   December 9th, 2011.  So the claim is for one of reimbursement

18   of repair related expenses of the home.

19   What pretrial order 26 does, Your Honor, is it

20   establishes a neutral, BrownGreer, to receive the information

21   related to the already remediated home.

22   In summary, the information is information that

23   complies with pretrial order 1B, which was the Court's evidence

24   preservation protocol, that's the documentation of the drywall

25   in the home, in addition to showing the home in its

1    pre-repaired state and post-repaired state.

2              Then, finally, again, in summary, Your Honor,

3    the invoices and the proof of payment to the contractors who

4    performed the repairs, as well as a homeowner affidavit that

5    summarizes the claim and seeks the homeowner to fill in a total

6    amount claimed and then an itemization of the total amount

7    claimed and then the homeowner signs the affidavit.

8              So that information is going to BrownGreer.

9    BrownGreer reviews that information, notes what I would call

10   basic deficiencies.  If files meet that interim threshold,

11   Lenny and I get the message, we print them out, we meet, we

12   look at them and we determine whether or not any follow-up is

13   needed to do a further evaluation.

14             So we've done that process over the last couple

15   of weeks since the pretrial order came out on March 29, 2012.

16             Where we stand today, Your Honor, is we've

17   completed about 100 binders of information; 20, we think, are

18   in condition such that they can be evaluated for settlement

19   offers.  Of the 20 that are in that condition, we will have

20   made, as of this week, about a dozen settlement offers with

21   approximately another half dozen expected to come next week.

22             We think that we'll have ten more binders, that

23   is 21 through 30, in good enough shape next week after some

24   follow-up by Lenny's office to be able to have a substantive

25   review.  Some of the offers that are being made recognize the

1    full value of the claim.  Other offers are discounted based

2    upon Knauf's review of maybe upgrades or failure to mitigate

3    issues, so on and so forth.

4            So we think the process is working.  Certainly,

5    I think when the offers go out, and they may have gone out

6    yesterday or today, we think that there's going to be a good

7    understanding of the process.  We think we're going to pick up

8    pace.

9            Now, we're looking at a total inventory of 300.

10   So with 100 binders in place now, we're already almost a third

11   of the way there in terms of collecting initial information.

12   But we think the process is a good one, it's working.  Lenny

13   and I are picking up steam.  We're handling more.  It's an

14   organizational task; and as the organization becomes more

15   refined, it's going to work faster and better.

16           So that's a general report, but I think overall

17   good news.

18           Lenny?

19      **MR. DAVIS:**  Your Honor, as Kerry stated, we did go

20   through about 100 binders.  In addition to that, I've

21   encouraged folks on our side to get the information in.

22   Pretrial order 26 requires that folks register with the

23   BrownGreer site within 30 days of the order.  The order was

24   issued March 19th.  So I'm hopeful that all the folks have, in

25   fact, registered and that they look at that order if they have

1  already remediated homes.

2          Once we get that information, we sit down and we

3  review it.  We have put them into two different stacks:  Those

4  that really look like they're ready; and those that need some

5  additional work.

6          We've reached out to a number of plaintiff

7  lawyers and given them examples of what I call the binders,

8  which we've downloaded from the BrownGreer site, of the

9  categories and the type of information that they ought to have

10  to make our job easier.

11          But we're ready to go with these, quite frankly,

12  and we can move them along.

13          THE COURT:  All right.  This is an approach that

14  we've tried to use in other areas of this particular case.

15  There are many variables in this case.  One of the variables

16  that we've confronted is the already remediated homes.  They

17  tend, generally, to be high-end homes because they tend to have

18  owners who had the wherewithal to fix them up.  So we're seeing

19  that.

20          But how do you deal with that?  We try to deal

21  with it by getting someone, like BrownGreer.  BrownGreer does a

22  terrific job.  I've worked with them before.  They're very

23  meticulous and they have certain forms that need to be

24  followed.  That's the devil in the details for this particular

25  aspect of this case; and there's a form to be filled out and a

1  binder to be constructed.  It's electronically, but it's a
2  binder, in effect, that needs to be filled out.
3              That's going to be difficult for some lawyers to
4  wrap their hands around.  But you can just fill in the blanks
5  and provide the information.  The information is what your
6  client has spent, and the invoices, and sometimes photographs,
7  and itemizing all of the expenses.
8              If you don't fill them in properly, it's going
9  to be delayed.  So we need help from the lawyers, and plaintiff
10 lawyers particularly, to get this material together.  And if
11 you do, most of the cases so far that have been resolved have
12 been resolved 100 percent of what has been spent, or a lot of
13 them have come in at 100 percent.
14             So it's really critical that you follow the
15 rules and provide the information.  If you do, it will be
16 worked out immediately.
17             All right.  Thank you very much.
18        MR. MILLER:  Your Honor, just one more comment.  This
19 is a feature of the Knauf class action settlement --
20        THE COURT:  Right.
21        MR. MILLER:  -- so it falls underneath that
22 settlement.  And, of course, there's a mediation provision
23 under that settlement.  But the attempt is to see if we can
24 resolve them without mediation; and if they can't be resolved
25 without mediation, then they'll go into the dispute resolution

1   process under the settlement agreement.

2          **THE COURT:**  Right.

3              Okay.  Any State Court Trial Settings?  Dawn?

4          **MR. HERMAN:**  Ms. Barrios is here and she'll speak to

5   that, Your Honor.

6          **MS. BARRIOS:**  Good morning, Your Honor.  Dawn Barrios

7   for the State Committee.

8              The state court trial settings are listed in the

9   joint report.  I'm pleased to say that this is the first time

10  we haven't had any Alabama cases on here.  So I want to thank

11  all the Alabama jurists and the attorneys who have worked hard

12  to settle the cases or have taken them off the docket.

13         **THE COURT:**  Yes.  I do appreciate that.  I've been

14  very fortunate in this particular case to have excellent

15  colleagues working together from the state level.  I've been

16  keeping them advised and they've been keeping me advised.

17  Hopefully, by working together, we can deal with this issue.

18         **MS. BARRIOS:**  Your Honor, my only other report is

19  with regard to the FOIA request to the CPSC.  As Your Honor

20  knows, we've been going back and forth with them.  They

21  originally wanted well over $10,000 for the documents.  We

22  appealed that.  I received a letter recently, they reduced it

23  to about $5,500 giving us the plaintiffs' attorneys discount.

24             So I've been in touch already with the agency

25  and we'll be paying that sum and receiving those documents.

1  But I thank Your Honor for your intervention, and I thank the
2  CPSC as well.
3          **THE COURT:**  All right.
4          **MR. HERMAN:**  Dawn, you also want to address No. V,
5  State/Federal Coordination?
6          **MS. BARRIOS:**  Mr. Herman has requested, and he's
7  right, that I should address the State Federal Coordination.
8              We continue to coordinate and update all judges
9  and lawyers throughout the country who have state court cases.
10 We have checked the remands, and I have the discs to give Your
11 Honor and to opposing counsel, of all those state cases.
12         **THE COURT:**  Thank you very much.
13         **MS. BARRIOS:**  Thank you, Your Honor.
14         **THE COURT:**  Anything on Insurance Issues?
15         **MR. HERMAN:**  Nothing new, Your Honor.
16         **THE COURT:**  Okay.  Anything on Homebuilders' Fees and
17 Costs?
18         **MR. HERMAN:**  Ms. Wimberly is here and will present
19 that.
20         **THE COURT:**  Dorothy, where are you with that?
21         **MS. WIMBERLY:**  Dorothy Wimberly for the Homebuilders.
22             Your Honor may recall that we had a show cause
23 order set for the prior status conference.  It kind of got lost
24 in the shuffle with all of the, certainly very important,
25 mediation/insurer meetings that were occurring.  So I'm going

1  to ask that the Court reset that order for the next status

2  conference on May 17th.

3       **THE COURT:**  All right.  How many do we have; do you

4  know?

5       **MS. WIMBERLY:**  You know, there's a core group that

6  just simply doesn't respond.  They've been served.  I suspect

7  that they don't intend to respond because they've also been --

8  are up here on the preliminary default that was entered.  They

9  just simply aren't going to respond to anything.

10            But then there is another group that have made

11  appearances, they have counsel, and even are planning to

12  participate in the global settlement, but have not responded.

13  I'm really going to try to direct my efforts and attention to

14  that group.

15       **THE COURT:**  All right.  Get it to me and I'll set

16  them.

17            Omnibus Class Action, anything on that?

18       **MR. HERMAN:**  Nothing new, Your Honor.

19            Plaintiffs' Motions to Establish Litigation Fee

20  and Expense Fund, nothing new.

21       **THE COURT:**  All right.

22       **MR. HERMAN:**  No. VIII, Pilot Program.  I've conferred

23  with Mr. Glickstein.  We were additionally putting cases that

24  qualify through the pilot program in anticipation of a final

25  approval of the settlement.  We have had a few bumps in the

1   road, but we're dealing with it in meet and confers.

2                   Overall, the program seems to be progressing

3   well.

4                   **THE COURT:**  Okay.  Term Sheet, anything?

5                   **MR. HERMAN:**  Nothing new on term sheets.

6                   With regard to Knauf Defendants, lead counsel

7   for plaintiffs will address various issues.

8                   **MR. LEVIN:**  Arnold Levin.

9                   There's just one generic issue, Your Honor, and

10  perhaps we can do it right now and it will eliminate my

11  standing up three or four times through these proceedings.

12                  The L&W settlement is before you.  There are no

13  objections.  If Your Honor deems it fit, we would request again

14  through preliminary approval, and we'll give you certain dates,

15  but we're -- we would like to give you those dates maybe two

16  weeks from now --

17                  **THE COURT:**  All right.

18                  **MR. LEVIN:**  -- for the following reasons:

19                  There are dates existing right now for opt-outs

20  and various other proceedings, allocations, involving prior

21  settlements where preliminary approval was granted.  They are

22  the Banner settlement, the INEX settlement, the Knauf

23  settlement, and the L&W settlement, which is before you today.

24                  There is a strong potential, that within the

25  next couple of weeks, we may be in a position to notice the

1  class as to an insurance settlement.  That will require a
2  longer period of time than the INEX settlement or L&W, Banner,
3  or even Knauf, would require because the PSC will have to make
4  a media buy, because that will be a national class, in order to
5  comport with due process.  We have various publications and
6  there's a lag time of about two months before we can place
7  those orders.
8              At that point in time, when that occurs, and if
9  that occurs, and there's a strong probability beyond the
10 possibility that it will occur, we will submit an order.  We
11 caution everybody to watch for these orders and to check the
12 Court's Web site which will protract all of the settlements
13 with regard to Knauf.  Taishan is another story.
14             North River, we don't have to worry about.
15 We're pursuing them.  We have entitlement to go against them.
16 They're not going to interfere with this process, and we won't
17 let them interfere with this process.
18             But at that time, we think that the opt-outs,
19 allocations and everything will be set in place and, hopefully,
20 for a final fairness hearing in September with regard to all of
21 the settlements, sir.
22             **THE COURT:**  All right.  This is my thinking on it:
23 These settlements with Knauf and the downstream Knauf and the
24 insurers of the downstream are separate settlements, but
25 they're interrelated to a great extent.  It makes more sense,

1    to me, to do the fairness hearing at one time because there are
2    some interrelations.
3              But I'm going to have to rely on you all to give
4    me some dates that's workable.  You've got a better feel for
5    the dates, with media buys and things of that sort, than I do.
6    So I'd like you to get together on that and propose some dates
7    to me.  The thinking is to get them all together.  So work out
8    the dates so that I can deal with them in that fashion.
9              With regard to the insurers, following the last
10   meeting I met with, I guess, about 200 insurers.  Two hundred
11   insurers came to the table and I met individually with a large
12   portion of them.  It took a day, but I felt it was productive.
13   The mediator, the special master was present and I was present
14   and we took them one at a time and discussed issues with them
15   or asked and answered questions for them.
16             So, hopefully, that process was helpful and
17   we'll be able to move on that phase of the case.
18        **MR. LEVIN:**  Excuse me, Your Honor.  As to the dates
19   and scheduling, I believe when we seek preliminary approval of
20   the insurance settlement, the order that we will ask Your Honor
21   to sign will include an omnibus order with regard to all of the
22   settlements, and at that point, hopefully, all the dates will
23   be set in stone.
24        **THE COURT:**  Yes.  Okay.  Well, get with everybody.  I
25   don't want to have somebody say, "I want it this day," and then

1  another person say, "This date's better," and so forth.  So
2  let's coordinate that so I get one set of dates.
3             **MR. LEVIN:**  It will July, but not July 4th.
4             **THE COURT:**  Okay.  Thank you.
5             The Taishan Defendants.  Also, with the Taishan
6  situation, I have before me, or at least in the process, the
7  motion for personal jurisdiction.  As you all know, depositions
8  were taken in Hong Kong.  When the transcripts were received,
9  Taishan sent in a lot of errata, and that was objected to by
10  the Plaintiffs' Committee.
11            So they filed a motion and I was going to deal
12  with the motion.  But I had everybody come in and meet and
13  confer.  They met in the Court's conference room and they were
14  able to work out any difficulty or disputes that they had.  So
15  Taishan has withdrawn the motion to deal with the errata.
16            **MR. LEVIN:**  Excuse me, Your Honor.  With regard to
17  Taishan jurisdiction, this may be an appropriate time to
18  discuss the staged briefing.
19            This morning at the liaison committee meeting,
20  we all agreed, for a change, on the following procedure:  The
21  PSC will submit its brief and accompanying materials on,
22  hopefully, and we believe so, on the date that is in the
23  existing order.
24            In order not to burden the Court with a lot of
25  paper and duplication, we thought it advisable that those that

1    also want to address from the plaintiffs' side, or the side

2    opposed to Taishan's position, will have two weeks to file

3    their positions and supplement.

4              They may even be able to -- I think they will be

5    able to utilize the exhibits that we give to the Court with

6    regard to the PSC position so that you're not burdened with

7    multiple exhibits and multiple briefs.  They'll be set forth in

8    our brief.  They will be available, as filed, to everybody.  We

9    will accommodate any of the other parties that wish to

10   approach; and if they do not have an exhibit that we have, that

11   we will give them that exhibit.

12             I guess it's -- I don't think electronically,

13   but I guess they could find it electronically.  But if they're

14   like me and need a hard copy, they'll get it.

15        **THE COURT:**  I set that motion for June 14th.  We may

16   have to tweak it a bit, but at least it's set for that time.

17   It's a critical motion.  So I want to keep it in June, but if

18   somebody needs a day or two, each side, let me know and I'll

19   deal with it.  But I do want to tee this up.  Okay.

20        **MR. OWEN:**  Tom Owen on behalf of the Taishan

21   defendants.

22             With respect to the briefing schedule, I just

23   wanted to make clear that what we discussed this morning about

24   maybe revising the briefing schedule, that I think we were

25   going to discuss particular timing to make sure that we could

1   get everything done within the time frame for early June and

2   have that June 14th hearing and make sure that everybody has

3   enough time for briefing, including Taishan doing their reply

4   brief as well.

5           **THE COURT:**  Yes.  Tom, meet with your colleagues

6   opposite and talk with them.  I don't have any problem if you

7   all need to massage it as long as we get it in June 14th.  So

8   let's deal with that.

9           **MR. OWEN:**  That sounds good.  Thank you, Your Honor.

10          **THE COURT:**  All right.  Thank you.

11          **MR. HERMAN:**  Your Honor, may it please the Court.

12  With Taishan, some other issues.  First of all, I want to thank

13  Tom Owen and his co-counsel, Mr. Spano, for meeting with us for

14  several hours at Your Honor's direction to resolve the errata,

15  and I believe the new errata sheet's been filed.

16          With regard to CNBM, an affidavit has been

17  submitted to the Court.  The Court has that issue under

18  advisement.

19          With respect to Yahoo! and the subpoena to

20  Yahoo!, they've advised that they have no documents, and that

21  matter is moot.

22          **THE COURT:**  All right.  Interior Exterior Defendants,

23  anything on that?

24          **MR. HERMAN:**  Your Honor, the North River counsel

25  provided us with dates in May for depositions.  We've selected

1    May 15th and 16th in New Jersey.  We will communicate that to

2    North River today and ask them to -- and then we shall refile a

3    formal notice and make sure that it's posted so that those that

4    wish to participate will be able to participate.

5            THE COURT:  Okay.  I'd like the PSC to meet with

6    North River and get some dates.  I think I'd like to do a

7    two-track situation.  You all can do the discovery track and

8    pursue that, but I'd also like to be able to meet with you all

9    on a settlement or resolution track at the same time.

10            But I'll need some dates from you.  At this

11   point, I'd like to have somebody from North River who's in a

12   decision making position, either their CEO or somebody in that

13   area, present at that time, too, so I can at least get their

14   view and discuss it.

15            MR. HERMAN:  Your Honor, depositions are set

16   May 15th and 16th.  We have a status conference on May 17th.

17            THE COURT:  All right.

18            MR. HERMAN:  Would you like those dates --

19            THE COURT:  Yes, that will be fine.

20            MR. HERMAN:  -- between now and the 15th?

21            THE COURT:  Whatever's good for you all.  Because

22   I'll work it out, but I do need somebody from North River in

23   addition to attorneys, somebody in a decision making position.

24   So I'd like them to be there.

25            MR. HERMAN:  Does Your Honor's schedule permit

20

```
 1    perhaps the North River folks perhaps coming in after the
 2    status conference on the 17th --
 3              THE COURT:  Yes, that would be fine.  That will be
 4    fine.
 5              MR. HERMAN:  -- if we meet that afternoon?
 6              THE COURT:  Our next meeting is May 17th.
 7                   Yes, I can do that.  Everybody will be here.
 8                   Let me hear from North River.
 9              MR. RISLEY:  Good morning, Your Honor.  Kevin Risley
10    for North River.
11              THE COURT:  Yes, Kevin.
12              MR. RISLEY:  We understand the Court's directive.
13    We'll have to confirm the 17th will work, but I don't
14    anticipate there being a problem.
15              THE COURT:  Yes, confirm it.  If it's a problem for
16    your people, let me know and I'll do the schedule, but let's
17    shoot for that.
18              MR. RISLEY:  We'll find out in the next few days
19    whether that should be an issue or not.
20              THE COURT:  Okay.  Let me know.
21              MR. RISLEY:  Thank you.
22              THE COURT:  Sid?
23              MR. ANGELLE:  Yes.  Good morning, Your Honor.  Sidney
24    Angelle on behalf of North River.
25                   In compliance with the Court's directives, we
```

1    have met and conferred with Lenny Davis again.  They've

2    provided us with a revised 30(b)(6) deposition notice.  We've

3    sent them seven comments yesterday.  I'll meet and confer with

4    Lenny today to try to iron that out.  I'm happy to do that now

5    so we can revisit with you before you adjourn today.

6              **THE COURT:**  Great.  Why don't you do that, Sid.

7              **MR. ANGELLE:**  All right.  Thank you.

8              **THE COURT:**  Let's see.  What's our next one, Banner

9    Defendants or Venture Supply?

10             **MR. HERMAN:**  Nothing new on either of those items.

11             **THE COURT:**  L&W?

12             **MR. HERMAN:**  Lead counsel, Arnold Levin, has already

13   addressed that issue.

14                  There's nothing new on Profile Forms.

15                  Nothing new on Frequently Asked Questions.

16                  Item XVIII regarding Preliminary Approval of L&W

17   and L&w Issues, Mr. Levin's addressed.

18                  The next issue would be Pro Se Claimants, and

19   Bob Johnston is here.

20             **MR. JOHNSTON:**  Good morning, Your Honor.  Bob

21   Johnston, the curator for the pro se claimants.

22                  I've provided the Court with a monthly status

23   report, which is in the court record.  I participated in the

24   meeting in chambers this morning and provided information.

25                  But the status is that I have, personally,

22

1    communicated with and also sent letters to every pro se
2    claimant who has notified my office or whose names the Court
3    provided to me as being in that status.  I have told those
4    individuals that -- of the circumstances regarding their
5    current non-participation in the Knauf settlement.  I have met
6    with Lenny Davis.  I have met with Russ Herman.
7                    As a result of that, I have written to all the
8    pro se's that I know about, encouraging them to have inspection
9    reports done, including digital photos showing the markings of
10   the manufacturers of the drywall in their properties.  I have
11   sent each one of those individuals the plaintiff profile form
12   and have assisted them in dealing with it.
13                   As I told the Court in chambers, I think that
14   the level of communication I've had with these individuals is
15   working well.  And as I receive the documentary evidence, I
16   send the same to Lenny Davis.  I send it, also, to Lou Colletta
17   in the Frilot firm.
18                   And the current numbers of individuals that I
19   have on my list are less than 35, but I continue to have new
20   individuals contacting me.  If there are any pro se claimants
21   who are listening today, my encouragement would be that they
22   contact my office.  They can get information regarding locating
23   me and what have you from the Court's Web site.
24                   So I think the end of the status report is that
25   I think the current situation is working well.

1        **THE COURT:**  Good.  Thank you very much for all of

2  your labors.

3              This case is exceptionally challenging because

4  of the numbers that we're dealing with.  Unlike many cases,

5  where there's one defendant and a number of plaintiffs, in this

6  case there are a thousand defendants.  We have upwards of

7  20,000 litigants, several of whom, or many of whom, are pro se

8  and they need information, and this is a vital source.

9              You've been very good about giving them

10  information and helping them work through some of the forms

11  that need to be filled out and I appreciate it.

12        **MR. JOHNSTON:**  Thank you, Your Honor.

13        **THE COURT:**  As I mentioned, and another unusual

14  aspect in this case, too, we have about 1,400 lawyers in the

15  case.  To keep all of these things working at the same time and

16  going in the same direction, we've had to parcel out some

17  portions of it and deal with those portions and move those

18  portions sometimes with a different procedure than the rest of

19  it just to make it work.

20              It's been working, but it's been working because

21  of the cooperation and the skill and the interest of the

22  lawyers.  They're an exceptional group in this particular case

23  and it's because of their efforts and their ability that

24  something like this can be moved in a direction for the benefit

25  of the litigants on both sides.  So I do mention that and

1    appreciate it.

2              All right.  Liaison, anything else on Liaison

3    Counsel Meeting with the Mediator or Physical Evidence?

4              We had a problem with the physical evidence

5    preservation order.  Is that taken care of?

6              **MR. HERMAN:**  Nothing new on it yet, Your Honor.

7              With regard to liaison counsel, the mediator did

8    a fine job.  It moves us towards resolution of the matters that

9    were being mediated.

10             On Preliminary Default, Your Honor, nothing new.

11             **THE COURT:**  Okay.  The next status conference dates,

12   May 17th, June 14th, and we're shooting for July 26th, the

13   meeting in July.

14             **MR. HERMAN:**  Your Honor, post-hearing, there are a

15   couple of matters to be addressed.  L&W and the Cataphora

16   issue.

17             **THE COURT:**  Yes.  We'll take a five-minute break here

18   and come back and deal with the L&W and the Cataphora.

19             **THE DEPUTY CLERK:**  All rise.

20             (WHEREUPON, the proceedings were concluded.)

21

22

23

24

25

1                                *****

2                             __CERTIFICATE__

3          I, Jodi Simcox, RMR, FCRR, Official Court Reporter

4    for the United States District Court, Eastern District of

5    Louisiana, do hereby certify that the foregoing is a true and

6    correct transcript, to the best of my ability and

7    understanding, from the record of the proceedings in the

8    above-entitled and numbered matter.

9

10

11                        ___S/ Jodi Simcox, RMR, FCRR___
                              Jodi Simcox, RMR, FCRR
12                            Official Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25