# EXHIBIT "20"

```
 1                  UNITED STATES DISTRICT COURT

 2                 EASTERN DISTRICT OF LOUISIANA

 3

 4

 5   IN RE:  CHINESE MANUFACTURED     *   Docket 09-MD-2047
             DRYWALL PRODUCTS         *
 6           LIABILITY LITIGATION     *   February 23, 2011
                                      *
 7   This Document Relates to All Cases  *
     * * * * * * * * * * * * * * * * * *

 8

 9

10                     MOTIONS BEFORE THE
                    HONORABLE ELDON E. FALLON
11                 UNITED STATES DISTRICT JUDGE

12

13   APPEARANCES:

14   For the Plaintiffs:        Levin, Fishbein, Sedran & Berman
                                BY:  ARNOLD LEVIN, ESQ.
15                              510 Walnut Street
                                Suite 500
16                              Philadelphia, Pennsylvania 19106

17

18
     For the Defendant:         Frilot, LLC
19                              BY:  KERRY J. MILLER, ESQ.
                                1100 Poydras Street, Suite 3700
20                              New Orleans, Louisiana 70163

21

22
     For the Homebuilders:      Greenberg Traurig PA
23                              BY:  HILARIE BASS, ESQ.
                                1221 Brickell Avenue
24                              Miami, Florida 33131

25
```

2

```
 1      APPEARANCES CONTINUED:
 2
        For the Insurers:          Barrasso, Usdin, Kupperman,
 3                                    Freeman & Sarver
                                   BY:  JUDY BARRASSO, ESQ.
 4                                 909 Poydras Street
                                   24th Floor
 5                                 New Orleans, Louisiana  70112
 6
 7
        Also Participating:        Rick Stanley, Esq.
 8                                 Nick Panayotopoulos, Esq.
                                   Steve Glickstein
 9
10
11      Official Court Reporter:   Jodi Simcox, RMR, FCRR
                                   500 Poydras Street
12                                 Room B-406
                                   New Orleans, Louisiana 70130
13                                 (504) 589-7778
14
15
16
17      Proceedings recorded by mechanical stenography, transcript
18      produced by computer.
19
20
21
22
23
24
25
```

JODI SIMCOX, RMR, FCRR – OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

1

2                        <u>**PROCEEDINGS**</u>

3                      **(February 23, 2011)**

4          **THE DEPUTY CLERK:**  All rise.

5          **THE COURT:**  Be seated, please.  I have a number of

6   motions before me.  The motion to lift the stay and default

7   judgment in *Wiltz*, docket No. 6974, and the motion for

8   preliminary default in *Gross*, docket Nos. 6970, 7115 and 6974.

9          **MR. LEVIN:**  Your Honor, there's been no entry of

10  appearance.

11         **THE COURT:**  Okay.  I grant the motions.

12         **MR. LEVIN:**  What we will do, Your Honor, if you're

13  inclined to, enter the preliminary defaults, as we've done

14  before, within a couple days.  We'll give you the addresses of

15  all the defaulting defendants and I'll have my office send them

16  to Ms. Butler.

17         **THE COURT:**  The defaulting defendants that I have are

18  Beijing New Building Material Group, Qingdao Yilie

19  International Trade Company, Shanghai East Best Arts & Crafts,

20  SIIC Shanghai International Trade Group, and Tianjin Tianbao

21  Century Development Corporation.

22         **MR. LEVIN:**  Yes, that's one set of them.  And the

23  complaints also have -- the papers also have other defendants.

24         **THE COURT:**  All right.  But on those record documents

25  there's no opposition, so I'm going to grant the motion.  Give

1  me the information and I'll send it out.

2          MR. LEVIN:  We've given Taishan's counsel, who we

3  believe represents in this litigation those related companies

4  to the defendants that have entered their appearance.  We've

5  given them the service, the notice of service, everything.

6  It's all been docketed and they've made their own decision to

7  allow those companies to be defaulted.

8          THE COURT:  All right.  I'll grant the motion for

9  preliminary default and I'll set a final default.  So just be

10  prepared to prove up the damages.

11          The next motion is a motion for an order

12  preserving the payment of transfer of certain monies or in the

13  alternative court-ordered mediation and temporary stay of all

14  outside settlements.  The record document in this one is 6947.

15          MR. LEVIN:  Your Honor, there are three motions that,

16  if I may, are so interrelated that I would like to briefly

17  argue all three together.

18          THE COURT:  Okay.

19          MR. LEVIN:  They're the motion for an accounting and

20  other relief, the motion against the insurance companies to

21  prevent the transfer of money, and the motion to halt

22  dismissals with prejudice until the PSC and the defendants

23  group look at them to see what's happening.

24          Now, from the PSC's position, we have defendants

25  in this litigation that are attempting to settle with

1    plaintiffs.  Part of the motion is that at times they don't

2    even call the plaintiff's counsel.  We've asked for that

3    admonition in this pleading.  But we want to know whether money

4    is passing hands.  Because it's our position, both as to

5    plaintiffs and the defendants in this litigation, that if any

6    money passes hands from the -- and the builder then goes

7    against the manufacturer to recoup the monies that they pay,

8    we've brought the manufacturer to the table.

9              Now, we're not asking the court to quantify it,

10   but we're going to assert our lien -- our equitable lien

11   against those funds, because they're just sitting in wait.

12   We're the ones taking depositions.  We're the ones hiring

13   translators.  We're the ones making service.  And as I said

14   before, we're not an eleemosynary institution.

15             But right now what we need is an accounting.

16   Now, the papers are voluminous.  The relief that we request can

17   be explained in a very short period of time, and I'm not going

18   to argue the papers.

19             As to the insurance companies, they're

20   dissipating insurance policies.  They're all here in our Omni

21   V complaint.  They're protected; that if they have a

22   jurisdictional defense that Your Honor has repeatedly said that

23   you're going to deal with substance and you want to wrap your

24   hands around the entire project, the project being this

25   litigation with a thousand defendants and close to 10,000

1   plaintiffs, and that their jurisdictional defenses are

2   reserved.

3               In fact, we've negotiated with the counsel for

4   the insurance industries a method for determining that

5   jurisdiction, pursuant to Your Honor's advices to us of last

6   week.  But we want to stop the dissipation of insurance

7   proceeds because they're going for cost of defense and they're

8   not going where they belong, to help Knauf and, hopefully, at

9   some point Taishan, when they wake up, to remediate those homes

10  so that our plaintiffs can get back into the homes.

11              Now, what we are not asking for is we understand

12  federalism and we understand the court's limitations, absent

13  all writs, or that type of proceeding with regard to

14  effectuating orders in this court binding state court

15  litigants.

16              We recognize the Fourth Circuit opinion in *Showa*

17  *Denko* that says you can't.  But this is not the case with

18  regard to the plaintiffs or the builders.  They are in this

19  court.  We have plaintiffs' counsel, and I don't know whether

20  they're pursuing this or not, Mr. Millstein and Mr. Durkee, and

21  now Mr. Diaz, that are stating that they don't want to pay an

22  assessment.  Well, we haven't asked for an assessment.  We

23  haven't quantified an assessment.

24              But at this point -- but what we want is an

25  accounting.  We want the money segregated on cash settlements

1   so that in the future we can get it.  They are all before this
2   court because the defendant that has been sued in this court is
3   on the Omni complaint, in the case it's Knauf, and they're
4   getting their monies in whole or in part from Knauf.  Most of
5   the money is coming from Knauf, who has stepped up to the plate
6   to remediate these homes.  So they are before the court, and
7   it's not an L-Tryptophan situation.
8                   We just -- I know that Your Honor wants the
9   gravitas of this litigation to take place in this court, the
10  ultimate resolution of this litigation to take place in this
11  court.  This is what the plaintiffs want.  I think this is what
12  Knauf wants.  And these motions -- these three motions bring us
13  along.
14                  As an alternative to these motions, we've asked
15  for global mediation, at least with the insurance companies, so
16  that we can get them in the Omni V and the -- the Omni V *Amato*
17  case and in the *Payton/WCI* case.  Now, Your Honor had scheduled
18  them, but there was an imperfection.  The insurance companies
19  didn't have the information and we sort of jumped the gun and
20  we withdrew those requests for mediation.
21                  But it's very important that we get them in
22  place so that we can remediate them in one place.  Everybody
23  has their defenses.  But with 1,000 defendants and a close to
24  10,000 plaintiffs, we don't want the litigation splintered
25  throughout the United States.

1          Now, just as an aside, with regard to insurance,
2   there's a verdict -- there's a judgment in Virginia in a
3   Taishan case for $4.5 million.  Suddenly, the pleadings have
4   become dark.  And we're concerned that money from limited
5   insurance is going to be passed in that judgment when there are
6   cases pending in Virginia and in the Omni II complaint in this
7   jurisdiction where those monies should be distributed in some
8   equitable fashion, especially since Taishan hasn't come in and
9   the only thing the litigants have to look for at this point in
10  time is the insurance.
11          I think if Your Honor has no questions at this
12  time, maybe I should sit down and respond to what others say.
13          **THE COURT:**  Let me hear from your opponents.
14          **MS. BASS:**  Thank you, Your Honor.  Hilarie Bass on
15  behalf of the Homebuilders.
16          Once again we find ourselves with -- sort of
17  chasing our tail.  We have scores of lawyers, hundreds of hours
18  expended, stacks of pleadings to address motions that the
19  plaintiffs filed, which I thought had sought the entry of an
20  order preventing any defendants from either settling or
21  transferring money, from restricting any payments from
22  manufacturers to builders, and asking for the entry of an order
23  giving the PSC an ability to get an accounting of every
24  settlement.
25          And now Mr. Levin is here saying that, "No,

 1      that's not really what we meant.  We really only want to
 2      restrict the use of insurance proceeds that might be dissipated
 3      improperly."  Well, I would suggest, Your Honor, that there's
 4      been a lot of money expended and a lot of energy directed at
 5      motions that it appears that even the PSC is now recognizing
 6      they're not entitled to.
 7                     Now, why is that?  Because I think the
 8      suggestion that -- they admit in their papers they're not
 9      seeking a common fund now.  They didn't create any kind of a
10      record establishing an entitlement to a common fund.  They
11      claim they're not trying to prevent the remediation of homes,
12      but the relief they've requested clearly will have that impact.
13                     Your Honor, I represent homebuilders.  And
14      whereas it was wonderful to hear today that in February, this
15      month, the pilot program was able to repair its first home.
16      This is February of 2011.  Some of my clients have been
17      repairing homes since the fall of 2008, before this MDL was
18      created, before this PSC existed.
19                     We've been coming out of our pockets, spending
20      millions of dollars to do that without any hope that we would
21      ever be reimbursed, because we wanted to protect our customers
22      and it was the right thing to do.
23                     It's now being suggested that if I have
24      homebuilders who want to make claims against their insurance
25      companies, having nothing to do with this litigation, somehow

1    this PSC is going to prevent that from occurring?  That this

2    PSC is going to tell my homebuilder clients that, despite the

3    fact you expended this money before we even existed, you now

4    have to seek approval from us to file an insurance claim?

5              The idea that they want to restrict a homeowner

6    from making a direct claim against their home insurance; or

7    that if we seek a recovery from Knauf or Taishan and are able

8    to successfully work something out to get some small

9    reimbursement for all this money we've expended, we can't do

10   this unless they sign off on it?

11             We understand the significant work the PSC has

12   done.  We understand there will come an appropriate time where

13   there will be a formal motion seeking the creation of a common

14   fund.  And we will also at that point ask that other parties

15   other than just the PSC be able to make a claim against that

16   fund, because the people who first identified the drywall

17   problem were homebuilders.

18             The entities that expended hundreds of thousands

19   of dollars to identify the problem, to hire the scientists to

20   figure out how to fix the problem, to develop the protocol that

21   everybody is now using to solve the problem were homebuilders.

22             So when it comes time to figure out who created

23   value here, we will expect to be heard from.  But apparently

24   everybody admits that that's not we're doing here today.  So it

25   appears that the sole purpose of all these motions is simply to

1    protect their future claim that they should be reimbursed for
2    what they've expended to create value to the extent they're
3    able to establish that value to Your Honor.
4                    We have no problem with Your Honor imposing a
5    requirement for any settlement that comes before you, and prior
6    to a dismissal of any party, for you to include within that
7    order of dismissal providing continuing jurisdiction of this
8    court to assess fees and costs.  That's a very reasonable
9    suggestion.  These parties will still be before you.  You will
10   retain jurisdiction to do that; and at an appropriate time, you
11   can make this determination.
12                   But to suggest on one hand that all you really
13   care about is remediating homes and then to impose barriers to
14   prevent that from happening, how can homebuilders continue to
15   dig in their pockets to repair homes if they're now being told,
16   "But you can't make an insurance claim and you can't negotiate
17   with the manufacturer to try to get reimbursed."  It's not
18   going to happen.
19                   This suggestion that they control the entire
20   process will be the worst possible thing for what I think we
21   all care about most, which is insuring that this drywall is
22   taken out of homes as soon as possible.
23                   Your Honor, I think the solution is very simple:
24   You retain jurisdiction.  We have no problems submitting
25   dismissals to Your Honor and ensure that to the extent these

1   plaintiffs or anybody else eventually proves an entitlement to
2   reimbursement for monies expended that helped to lead to these
3   settlements, they will have their opportunity in court to
4   establish that, and Your Honor will retain jurisdiction to make
5   such an award.
6              We think that solves the problem without
7   imposing burdens which will likely impact the ability of all
8   the parties in this room to settle cases.
9          THE COURT:  All right.  Any response?
10         MR. LEVIN:  Well, I've heard something I like.
11             At this point, if Ms. Bass and my group sit down
12  and work out an order and a procedure by which this court
13  retains jurisdiction, I think we could resolve at least that
14  aspect of the problem.  And that's something that we really
15  wanted when we asked that all dismissals -- because what we
16  were concerned about is cases being dismissed where money has
17  passed hands and we absolutely, and our papers are clear, do
18  not want to stop remediation.  It's in our clients' interest to
19  get back into their homes.
20         THE COURT:  Right.  I've heard both sides.  I will
21  allow all of you to get together on this.  Let me give you my
22  thinking on it.  I don't think that a court, this court
23  particularly, is in a position to stop any discussions or stop
24  any movement in the case.  I think that that's true.
25             As to what has gone on in the past, it's gone on

1   in the past.  Some of the material, as counsel says, has been

2   done long before the MDL started.

3                   But I do say this:  That for both sides, for all

4   sides, you've got to recognize that this is a different type of

5   case.  As I've said to counsel before, we're not in a situation

6   where we've got a couple of defendants and a couple of

7   plaintiffs and you can analyze the nature and scope of those

8   claims.

9                   With a thousand defendants, several dozen

10  insurance companies in the case, there are claims, there are

11  counterclaims, there are third-party claims, many of which have

12  already been filed, but some of them haven't been filed.  There

13  are potential punitive claims, or penalty claims.  And there

14  are a lot of claims that we haven't even thought of at this

15  point.  But I can guarantee you that with this many, primarily

16  defendants, you're going to have some cross-claims that you

17  hadn't focused on.

18                  It's a good situation for everybody to be in one

19  place, one forum, that has all of the parties before it so that

20  I can give you some finality.  So that I can issue necessary

21  bar orders.  So I can issue defaults.  So that I can issue

22  judgments.  So that I can give you some comfort that if you pay

23  something, you're finished, you're not going to be brought in

24  later on down the road.  On both sides.

25                  So I do think that whatever has happened in the

```
 1   past or whatever is going on, it's not a bad idea for each side
 2   to pull it back into the MDL so that at least I have some
 3   jurisdiction to enforce settlements, to dismiss cases, to
 4   provide the necessary finality that I don't think anybody else
 5   or any other court can give you.
 6            Strangely enough, it's to, I think, everybody's
 7   advantage that we work through the MDL proceeding, not to say
 8   that the other proceedings are not significant.  They are.  But
 9   notwithstanding that, there may be able to be joint papers
10   filed or joint dismissals or whatever it is.
11            But I'm not going to be able to enforce
12   judgments that I don't issue involving matters that haven't
13   been brought to my attention.  I'm going to be conscious of the
14   fact that the rulings that I make in the MDL are going to be
15   limited to the cases that I have before me and will not have
16   any precedential value, or any value at all, to cases that are
17   not before me.
18            So I think each side ought to keep that in mind.
19   But I'll dismiss the motion as moot at this point, reserving
20   the parties an opportunity to refile it, all or part of it, if
21   it becomes necessary, and ask that counsel get together and see
22   if they can work this matter out.
23        MS. BARRASSO:  Your Honor, may I comment on behalf of
24   the insurers?
25        THE COURT:  Yes.
```

1      **MS. BARRASSO:**  There's two parts to it, Judge.

2           The motion has kind of been a moving target for

3  us, but I'm hearing Mr. Levin now say they want to restrict

4  insurance proceeds.  Judge, as you're well aware, there are

5  insurers that are here that contest jurisdiction; and even

6  those that are here that don't still may have proceedings

7  outside the MDL which they didn't bring, but which they're

8  involved in.

9           So we don't think it's proper and the court

10  can't enjoin an insurer from proceeding with a claim that's

11  being brought against it outside the MDL.

12      **THE COURT:**  No, I agree with that.  But what I'm

13  saying is that I also can't dismiss any claims against them

14  that's brought outside the MDL.  So from a finality standpoint,

15  they shouldn't take any comfort in the fact that they've

16  settled a case, therefore, they're not responsible and not

17  liable.

18           I don't know whether they're liable in a

19  situation where they know they've got a dwindling amount and

20  they're conscious that there are a lot of claims and they make

21  no effort to deal with that.  I don't know whether they do or

22  they don't; and I don't know whether that gives rise to any

23  particular penalties that their insured might have claims

24  against them.

25           I suspect that I'm going to be hearing those

1    claims eventually.  And I do have jurisdiction over the
2    insured.  So I suspect that that is at least a potential; that
3    if claims are not dealt with and they're intentionally not
4    dealt with in some way, shape or form, or not even approached,
5    not even thought about of dealing with those, I don't know
6    whether it gives rise to penalty claims or not.

7                    But I would not be surprised.  All of us have
8    been around long enough to recognize that those kinds of claims
9    are made.  That's just something that I'm --

10                   **MS. BARRASSO:**  Judge, to the extent that there are
11   insurers -- I mean, I'm representing one that has claims being
12   made against their insureds inside and outside the MDL.  There
13   are attempts at global talks on those and some of that involves
14   Interior Exterior.  So everybody is cognizant of that.

15                   But on the other hand, there are also people
16   that want to push their claim and an insurer has duties to do
17   that.  And we're just saying it would be improper to enjoin an
18   insurer from having to do what it may have to do in another
19   jurisdiction.

20                   **THE COURT:**  No, I hear you.  I don't necessarily
21   disagree with that.  What I'm saying, though, is that that's
22   something that needs to be considered by that insurer because
23   they may still be back here.

24                   **MS. BARRASSO:**  And with regard to the mediation order
25   that the judge withdrew last week -- or asked us to get

1   together, we are going to get together with the PSC and try to

2   come up with a plan for those insurers that want to participate

3   in that.

4            Then finally, Judge, and I think Mr. Levin

5   talked about this as part of his motion, there have been some

6   motions for voluntary dismissals that have been filed, and this

7   does affect particularly the homeowner insurers.  We, pursuant

8   to your plan and model, brought before you some representative

9   motions.  The rulings were in favor of the homeowner insurers.

10  Those are being dismissed with the cooperation of PSC.  I think

11  *Hernandez* is being dismissed, the class action.

12           But some plaintiffs have recently filed motions

13  for voluntary dismissal of claims, some of which were filed

14  here in the MDL directly, now want out, and we object to that,

15  and I think Mr. Levin is going to cover that also.

16           **THE COURT:**  Aren't we meeting afterwards on

17  something?

18           **MS. BARRASSO:**  Yes, Your Honor.

19           **THE COURT:**  Okay.

20           **MS. BARRASSO:**  And we'd like an opportunity before

21  those would be dismissed so we can brief and oppose that.

22           **THE COURT:**  Yes.

23           **MR. LEVIN:**  What's good for the goose is also good

24  for the gander.  Your Honor, we argued the homeowners insurance

25  issue and we lost.  And we recommended to the plaintiffs and

1   their counsel that they dismiss those claims because we read

2   your opinion and a decision was made not to appeal it and it's

3   final.

4           And just like with the defendants, the

5   plaintiffs -- we take the position that our plaintiffs cannot

6   withdraw these cases without prejudice to avoid your order.  So

7   it's for that reason, as well as all other reasons, that these

8   orders of dismissal have to be reviewed by all liaison counsel

9   before they're effectuated.

10          With regard to the insurance, it would be

11  helpful if we had a schedule from the insurance companies that

12  are before this court in the *Amato* and *Payton* case as to what

13  their policies are and how they're being diminished so that we

14  have an idea of what's out there.  That would be helpful, not

15  only to the PSC, but it should be helpful to everyone that

16  wants to try to resolve this litigation.

17          **MS. BARRASSO:**  Judge, with regard to this last

18  request, the insurer profile forms provide them the

19  information.  We've asked to let us know if there are some

20  profile forms that are considered deficient and didn't provide

21  the information requested, let us know.  But the profile forms

22  provide the names of the insured in *Amato* and the policy, and

23  that's where we are.

24          So we're waiting to hear from the PSC.  If some

25  of them -- if somebody didn't give them what they were supposed

```
 1    to give them -- and I think we're working with Mr. Lemmon on
 2    that.
 3              THE COURT:  I thought we had this in the profile
 4    form.  I thought we visited that before.
 5              MR. DAVIS:  If I may, Your Honor.  Leonard Davis.
 6    And I have been involved in the discussions with Ms. Barrasso
 7    and her firm, and Andrew Lemmon from the PSC has been involved.
 8    We had discussions regarding that specific information and we
 9    are attempting to get a master list.  We are working towards
10    that.
11              THE COURT:  I think we ought to know.
12              But, again, from the insurers' standpoint, just
13    keep an eye on this.  Because it's something that before an
14    issue arises, if you can see the potential problem, we ought to
15    talk about the potential problem.  I see some potential problem
16    with that.
17              If there's a dwindling amount of coverage, does
18    the insurer, and the insurer recognizes they're going to pay it
19    all, do they owe their insured some duty to place that amount
20    in the registry of the court and let the court or some method
21    distribute it so that they can get some finality and not be
22    sued for penalties for letting their insured exposed to the
23    most significant claims or the best claims.
24              I don't know the answer to that.  But it just
25    seems to me that that is a potential problem that the insureds
```

1  in those cases ought to at least consider.

2        **MS. BARRASSO:**  And, Judge, we will.  And I think the

3  laws of the various states that are involved differ on those

4  duties also.

5        **THE COURT:**  I agree with that.  And sometimes we have

6  to come up with methods so that they give comfort that they're

7  not giving up their rights to object to the jurisdiction of the

8  court or whatever it is.  But I don't think that that's going

9  to be sufficient to withstand any potential penalty claims, and

10  that's something at least they ought to think about before we

11  have a problem.  But just a word to the wise.

12        **MS. BARRASSO:**  Thank you, Judge.

13        **THE COURT:**  Yes.

14        **MR. GLICKSTEIN:**  Good morning, Your Honor.  Steve

15  Glickstein for the Knauf defendants.

16        They say sometimes you can't tell the players

17  without a score card and I just want to make sure I have the

18  score card right on the various motions and there were various

19  forms of alternative relief.

20        I think I heard Your Honor say that he was

21  dismissing as moot the requests to prohibit settlement

22  discussions and sequester funds.  There was an alternative --

23  and that was without prejudice to renew.  There was an

24  alternative relief sought by the PSC which Knauf supported,

25  which was to schedule global mediation.

```
 1                    I think I saw an amended order dated
 2   February 17th, 2011, which ordered the parties, at least in
 3   Payton and Amato, to get together and discuss a schedule for
 4   that -- for a global mediation.  It wasn't clear to me whether
 5   that was a resolution of the plaintiffs' alternative relief,
 6   but I did --
 7             MR. LEVIN:  It is now.
 8             MR. GLICKSTEIN:  It is now.  Okay.
 9             THE COURT:  I don't see any down side to that.
10             MR. GLICKSTEIN:  No, I agree with that.
11             THE COURT:  Am I missing something from the
12   standpoint of globally --
13             MR. GLICKSTEIN:  No, I just wanted to make sure that
14   there weren't any loose ends.
15             THE COURT:  No, I don't see any down side to the
16   global mediation, assuming people are ready to listen.  What's
17   the down side to coming to a mediation and looking at it?  I
18   don't get it.
19             MR. GLICKSTEIN:  From the Knauf defendants'
20   standpoint, you know, I think that it's important that every
21   party needs to make a contribution in order to make -- to solve
22   this problem and that defendants and insurers ought to know
23   that you can't stay in the back of the classroom and hope that
24   the teacher doesn't call on you.
25                    But we would like to at least be able to
```

 1    participate in that if the court and the PSC deem it --
 2          **THE COURT:**  Yes.  I don't see any down side.  The
 3    fact that somebody comes and listens, that doesn't mean that
 4    they have to contribute, that doesn't mean that they want to
 5    contribute or will contribute.  I don't see any down side.
 6          They know who you are.  It's not a question of
 7    sitting in the back.  They've got the roll.  So everybody's in
 8    the room.  They know who you are.  So it's a question of just
 9    getting together and listening and talking about it.
10          **MR. GLICKSTEIN:**  The other form of alternative relief
11    that the PSC sought was for an order requiring notice of
12    voluntary dismissals, and we support that.
13          **THE COURT:**  Well, I think everybody, as I understand,
14    supports that, including the defendants and the plaintiffs.  I
15    think everybody ought to know it, at least know what's the
16    situation.  Whether or not you can stop it is another issue,
17    but at least know it.
18          We've talked a little bit about various powers
19    that the court has.  One of the ones that is very, very
20    uncomfortable to use, and used very sparingly, is the All Writs
21    Act.  We all know that before that can be done, generally the
22    cases have come down to suggesting that a *res* be achieved.
23          More often than not, it's achieved by a
24    settlement and then subsequent cases jeopardize the settlement
25    and courts have enjoined the parties to stop that from being

1    done.  In this case we're moving and we're not to the final
2    deal yet, but I do recognize that the court has been around now
3    with this MDL for 19 months.
4              In addition to the steering committees and the
5    pretrial orders, we've had ten bellwether trials.  I've
6    monitored discovery in the U.S., Germany and China.  I've
7    managed a docket that has over 7,000 entries and is growing at
8    the rate of 500 every couple of weeks.  I've monitored a pilot
9    program, which is now a little broader, dealing with
10   remediation.
11             The cases, it's still in its embryonic form and
12   probably less than a full term *res*, but it's really getting
13   there.  It's more than just an embryonic *res* at this time.  We
14   may not be, as I say, at full term, but it's very close.  So I
15   take these motions seriously when I get them.
16             Sometimes so early on in the proceeding, I
17   really don't give much attention to it because I don't have the
18   capacity or interest or comfort level to even think about any
19   atomic-bomb kind of approach.  But we're moving in that
20   direction at this point.  So I'm not there yet, but we've got
21   to be conscious of the significance of filing things and
22   handling things through the MDL.
23             But I do think that aside from that, there are
24   just some practical reasons for the parties that we at least
25   keep the MDL in mind.

1           The next motion, motions to voluntary dismiss
2  without -- we've talked about many of those.
3           MR. LEVIN:  We've spoken to that, Your Honor.
4           THE COURT:  All right.
5           MR. LEVIN:  The next motion is our motion to
6  intervene in the *Silva* class action.  Basically, we have a
7  headless class.
8           THE COURT:  Yes, it's a substitution more than a
9  motion to intervene.  It's an issue that's presented itself.
10  The other side says, "Look, this is too much of a moving
11  target.  You keep shifting representatives on me."
12          Now, in this particular case it's a little hard
13  because the representatives at one time are representatives and
14  then they get their house fixed and they're no longer
15  representatives anymore, so you need other people.
16          MR. LEVIN:  Although, when you read Mr. Miller's
17  response, we look like Keystone cops.  We want to assure the
18  Court we only look like Keystone cops, not that we are.  And we
19  want to hold the class certification hearing.  There's only a
20  few plaintiffs and we'll work with Mr. Miller and anybody else
21  to get the discovery, the inspections of the homes and
22  everything else done.
23          THE COURT:  But they have to know.  You can't keep
24  swapping the ball on them.
25          MR. MILLER:  Your Honor, I think that's right.  It's

1  certainly aimed at perception and not reality.  I think all
2  we're looking for from the PSC and the Court, and I don't think
3  this should involve a lot of court intervention or time, is
4  really whenever their class reps solidify, March 15th or
5  March 31st, whenever it is, just let us know.

6                    Your Honor, had pretty much already entered a
7  scheduling order.  So when we reach the point of
8  solidification, by way of some amendment, we won't oppose the
9  amendment.  Just let us know who they are and then we can get
10 back to the order we had in place.  I think that's really what
11 the issues are.

12                   The only other issue being, I think, that there
13 may be some dispute as to in addition to the class reps, do we
14 get to take two additional depositions or six additional
15 depositions.  If we can't agree to it, I'm sure Your Honor can
16 agree to it.

17            **THE COURT:**  Yes.  Bring it to me and I'll do it.

18            **MR. LEVIN:**  Your Honor, with regard to the *Silva*,
19 though, procedurally I think it's an intervention motion.
20 Mr. Longer whispered in my ear, with regard to *Vickers*, it's a
21 substitution motion.

22            **THE COURT:**  Yeah.  Okay.

23            **MR. MILLER:**  I think there are three separate motions
24 from our perspective, *Silva*, *Vickers* and *Payton*.

25            **MR. LEVIN:**  Right.

1              MR. MILLER:  *Silva* is an intervention, and *Vickers*
2  and *Payton* are substitutions.
3              THE COURT:  Right.
4              MR. MILLER:  But in substance we kind of see it the
5  same way.
6              THE COURT:  It's the same way.
7              MR. MILLER:  It's swapping folks in and out.
8              THE COURT:  Yes, it's the same issue.
9              Rick, do you have something?
10             MR. STANLEY:  No, Your Honor.  The issue for us is
11  the original order that was entered allowed us -- there was one
12  class rep and we were going to be allowed to take fact witness
13  depositions as they related to the putative class members.
14             Well, now that they've added a number of class
15  reps, they're trying to prevent us from taking what we think is
16  a representative sample of putative class members.  I think
17  they're being a little stingy with the number of witnesses that
18  we're entitled to.
19             THE COURT:  That could well be.
20             MR. LEVIN:  We're going to be very generous and not
21  be stingy, Your Honor.
22             MR. STANLEY:  That's the first I've heard that.  So
23  that's great.
24             THE COURT:  You're going to have a right to do that.
25  That's the way it's done.

1    **MR. PANAYOTOPOULOS:**  Nick Panayotopoulos -- and I
2    have a card today, so we can shorten the name spelling -- on
3    behalf of Banner.
4                We join in the motion from Knauf and IMEX.  The
5    one additional concern that we have relates to the lack of
6    profile forms from the plaintiffs, which the Court addressed
7    earlier today when it came up with a different matter, and lack
8    of discovery responses to the DSC's initial discovery.
9                We just want to raise that concern with the
10   Court again.  And we're going to try to focus and talk to the
11   PSC about it, because it's a problem for us to pick witnesses
12   when we don't have the discovery.
13               **THE COURT:**  No, talk with them first, but if not,
14   then file a motion.  You need that information.
15               **MR. PANAYOTOPOULOS:**  And that's our plan, Your Honor.
16   And I don't want to take up the Court's time now, but it's a
17   concern because, you know, the PSC has that information and the
18   plaintiffs have it; but if we don't have it, it's just
19   impossible for us to do anything.
20               **THE COURT:**  That's all right.  I agree with that.
21               **MR. LEVIN:**  If he wants all the profile forms to make
22   the argument that a house is not a house, for commonality,
23   we'll give it to him.
24               **THE COURT:**  Just give him whatever he needs on that.
25   I don't know whether it will be helpful or not, but you're

1  entitled to as I see it.

2          **MR. PANAYOTOPOULOS:**  Thank you, Your Honor.

3          **THE COURT:**  Any other motions that we haven't touched

4  on yet?

5          **MR. LEVIN:**  "G" is Chartis' motion to compel global

6  mediation of all claims against Banner Supply Entities.  It's

7  my understanding that Chartis is not going to press that motion

8  at this time pending trying to wrap our hands around a Banner

9  class settlement.

10          **MR. PANAYOTOPOULOS:**  Your Honor, it's a joint motion,

11  and on behalf of Banner, we'd just stand on the pleadings.

12  We'll let the Court decide what the best course of action is.

13          **THE COURT:**  Okay.  I'll take care of that.

14              Hilarie?

15          **MS. BASS:**  Your Honor, one minor thing with reference

16  to the Banner class action.  We've been requested by a few

17  homebuilders get a couple of additional days on the

18  intervention deadline, which was Friday.  Most of us are ready

19  to move, but apparently there are some that have asked if you

20  could give them to the middle of next week that would be

21  helpful.

22          **MR. LEVIN:**  That's no problem, Your Honor.

23          **THE COURT:**  Yes, that's fine.  Okay.

24              Anything else that we need to talk about?

25              Okay.  Judy, I'm meeting with you-all after.

1        **MS. BARRASSO:**  Yes, Your Honor.

2        **MR. PANAYOTOPOULOS:**  Your Honor, one additional

3  matter.  There have been some depositions scheduled for Knauf

4  witnesses.  We cross-noticed and IMEX cross-noticed both

5  depositions.  We wish for those to go forward.  And I just want

6  to let the Court know that we plan to proceed with those, but

7  we'll talk with Knauf about timing and when that takes place.

8        **THE COURT:**  All right.  Okay.  All right.

9            Court will stand in recess.  Thank you.

10           (WHEREUPON, the proceedings were concluded.)

11                              *****

12                          <u>**CERTIFICATE**</u>

13       I, Jodi Simcox, RMR, FCRR, Official Court Reporter

14  for the United States District Court, Eastern District of

15  Louisiana, do hereby certify that the foregoing is a true and

16  correct transcript, to the best of my ability and

17  understanding, from the record of the proceedings in the

18  above-entitled and numbered matter.

19

20

21                    _S/ Jodi Simcox, RMR, FCRR_
                      Jodi Simcox, RMR, FCRR
22                    Official Court Reporter

23

24

25