**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

IN RE: CHINESE-MANUFACTURED
DRYWALL PRODUCTS LIABILITY
LITIGATION

THIS DOCUMENT RELATES TO:
*ALL CASES*
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

MDL NO. 2047

SECTION: L

JUDGE FALLON
MAG. JUDGE WILKINSON

**THE PLAINTIFFS' STEERING COMMITTEE'S SUPPLEMENTAL MEMORANDUM
ADDRESSING *IN RE: DEPUY ORTHOPAEDICS, INC.*, IN FURTHER OPPOSITION
TO DEFENDANTS' SUPPLEMENTAL MOTION ON JURISDICTION AND CLASS
CERTIFICATION FOLLOWING *BRISTOL-MYERS SQUIBB CO. V. SUPERIOR
COURT OF CALIFORNIA, SAN FRANCISCO COUNTY***

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................. 1

II.     *DEPUY* ENDORSES THIS COURT'S APPROACH TO MANAGING THIS MDL ...... 3

III.    THE FACTS OF THIS CASE DO NOT IMPLICATE *BMS* OR *DEPUY* ......................... 8

IV.     DEFENDANTS DISTORT AND OVERSTATE *DEPUY* ................................................. 9

        A.      Defendants' Continued Misrepresentations Should Give the
                Court Pause When Considering Their "Analysis" of *Depuy* ................................ 10

        B.      *Depuy* Does Not Answer Any of the Questions Raised by
                Defendants' Interpretation of *BMS* ...................................................................... 15

        C.      *Depuy* does not assist in assessing Due Process standards in state
                and federal court .................................................................................................... 18

V.      CONCLUSION ................................................................................................. 20

# **TABLE OF AUTHORITIES**

## <u>Cases</u>

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*,
137 S. Ct. 1773 (2017) .................................................................................................. *passim*

*Busch v. Buchman, Buchman & O'Brien, Law Firm*,
11 F.3d 1255 (5th Cir. 1994) ................................................................................... 19

*Cole v. General Motors Corp.*,
484 F.3d 717 (5th Cir. 2007) ..................................................................................... 6

*Cortina v. Bristol-Myers Squibb Co.*,
No. 17-cv-00247, 2017 WL 2793808 (N.D. Cal. Jun. 27, 2017) ........................... 14

*Covington v. Janssen Pharm., Inc.*,
No. 17-cv-1588, 2017 WL 3433611 (E.D. Mo. Aug. 10, 2017)............................ 14

*Dubose v. Bristol-Myers Squibb Co.*,
No. 17-cv-00244, 2017 WL 2775034 (N.D. Cal. Jun. 27, 2017) ........................... 14

*Ergon Oil Purchasing, Inc. v. Canal Barge Co., Inc.*,
No. 16-cv-5884, 2017 WL 2730853 (E.D. La. June 26, 2017) ............................... 14

*Gasperini v. Center for Humanities, Inc.*,
518 U.S. 415 (1996)................................................................................................. 19

*Illinois v. Gates*,
462 U.S. 213 (1983)................................................................................................. 15

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
MDL No. 2047, 2014 WL 4809520 (E.D. La. Sept. 26, 2014) ................................ 7

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
742 F.3d 576 (5th Cir. 2014) ..................................................................................... 2

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
753 F.3d 521 (5th Cir. 2014) ..................................................................................... 2

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
894 F. Supp. 2d 819 ((E.D. La. 2012)................................................................... 2, 6

ii

*In re Diet Drugs*,
    MDL No. 1203, 2000 WL 1222042 (E.D. Pa. Aug. 28, 2000)................................................ 6

*In re Telectronics Pacing Systems, Inc.*,
    137 F. Supp. 2d 985 (S.D. Ohio 2001) .............................................................................. 6

*In re: Depuy Orthopaedics, Inc., Pinnacle Hip Implant Prods. Liab. Litig.*,
    __ F.3d __, 2017 WL 3768923 (5th Cir. Aug. 31, 2017) ................................................ *passim*

*Insurance Corp. of Ireland v. Campagnie des Bauxites de Guinee*,
    456 U.S. 694 (1982)........................................................................................................ 19

*International Shoe Co. v. Washington*,
    326 U.S. 310 (1945)........................................................................................................ 18

*J. McIntyre Machinery, Ltd. v. Nicastro*,
    564 U.S. 873 (2011)............................................................................ 17, 18, 19, 20

*Jinright v. Johnson & Johnson, Inc.*,
    No. 17-cv-1849, 2017 WL 3731317 (E.D. Mo. Aug. 30, 2017)............................................ 14

*Jordan v. Bayer Corp.*,
    No. 17-cv-865, 2017 WL 3006993 (E.D. Mo. July 14, 2017)................................................ 14

*Legal Services Corp. v. Velazquez*,
    531 U.S. 533 (2001)........................................................................................................ 13

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
    523 U.S. 26 (1998).......................................................................................................... 4

*Lindsley v. American Honda Motor Co. Inc.*,
    No. 16-cv-941, 2017 WL 3217140 (E.D. Pa. July 28, 2017) ................................................ 14

*Lowe v. Raemisch*,
    864 F.3d 1205 (5th Cir. 2017) ........................................................................................ 13

*Mullane v. Central Hanover Trust Co.*,
    339 U.S. 306 (1950)........................................................................................................ 19

*Oliver v. Ethicon*,
    No. 12-cv-6950, 2017 WL 3193652 (S.D. W.Va. July 27, 2017) ........................................ 14

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)........................................................................................................ 8

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010) ................................................................................. 16, 17, 19

*Siegfried v. Boehringer Ingelheim Pharm., Inc.*,
    No. 16-cv-1942, 2017 WL 2778107 (E.D. Mo. June 27, 2017) ............................................. 14

*Spratley v. FCA US LLC*,
    No. 17-cv-0062, 2017 WL 4023348 (N.D.N.Y. Sept. 12, 2017) ............................................ 14

*Turner v. Boehringer Ingelheim Pharm., Inc.*,
    No. 17-cv-01525, 2017 WL 3310696 (E.D. Mo. Aug. 3, 2017) ............................................ 14

*United Brotherhood of Carpenters and Joiners Local Union 953 v. Mar-Len of Louisiana, Inc.*,
    906 F.2d 200, 203 n.2 (5th Cir. 1990) ................................................................................. 13

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980) ................................................................................................................. 19

## **Statutes & Rules**

28 U.S.C. § 1332 ....................................................................................................................... 15

Fed. R. Civ. P. 23 .............................................................................................................. 16, 17

## **Other Authorities**

David Marcus, *Erie, the Class Action Fairness Act, and Some Federalism Implications of
    Diversity Jurisdiction*, 48 Wm. & Mary L. Rev. 1247 (2007) .................................................. 6

S. Rep. No. 109-14 ................................................................................................................... 15

## I.    **INTRODUCTION**

Currently before the Court are numerous briefs arguing the impact, if any, that *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County* ("*BMS*")[1] had on the Court's prior rulings on jurisdiction and class certification.[2]   The Court has requested supplemental briefing regarding the potential impact of the Fifth Circuit's recent opinion in *In re: Depuy Orthopaedics, Inc., Pinnacle Hip Implant Prods. Liab. Litig.* ("*Depuy*")[3] on Defendants' Supplemental Jurisdictional Motion.   The PSC submits this Supplemental Memorandum in response to the Court's request.

First and foremost, *Depuy* affirms that the procedures employed by this Court to manage this MDL are proper and do not implicate any problems with personal jurisdiction.   There is no dispute that the transferee court in an MDL can exercise jurisdiction over cases and parties to the extent that such jurisdiction can be exercised by the transferor courts.   *Depuy* affirms that cases directly filed in the MDL transferee court are treated as though they were transferred from a judicial district in the state where the case originated at least up until the time they need to be remanded for trial.   *See Depuy*, 2017 WL 3768923, at *2.   This is the process the Court has

---

[1] 137 S. Ct. 1773 (2017).

[2] Defendants CNBM Company ("CNBM"), BNBM (Group) Co. Ltd. ("BNBM Group"), and BNBM PLC ("BNBM") filed the original Supplemental Motion on Jurisdiction and Class Certification Following *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County* ("Supplemental Jurisdictional Motion").   *See* Rec. Doc. 20882.   Those Defendants as well as Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd. (collectively, "Taishan") filed separate Replies that purported to respond to the PSC's Memorandum of Law in Opposition to Defendants' Supplemental Jurisdictional Motion [Rec. Doc. 20935] ("PSC's Opposition").   *See* Rec. Doc. 20955-2 ("Taishan *BMS* Reply"); Rec. Doc. 20956-2 ("CNBM-BNBM *BMS* Reply").   The BNBM, CNBM and Taishan entities will be referred to herein collectively as "Defendants."

[3] __ F.3d __, 2017 WL 3768923 (5th Cir. Aug. 31, 2017) ("*Depuy*").

applied here, assessing jurisdiction based upon the Defendants' contacts with the state where the claims arose, and stating clearly that one option for ensuring that personal jurisdiction is satisfied, particularly if the Court does not certify a class in the *Brooke* action, is to remand the individual cases to a federal court sitting in the state where the case originated.[4]  *Depuy* affirms the correctness of the procedures this Court has employed here.

Any discussion of *Depuy* is inextricably intertwined with a discussion of *BMS* because Defendants have indicated that they intend to argue that Judge Jones's opinion in *Depuy* reaches conclusions similar to *BMS*.[5]  To understand why this fails, it is important to reiterate that *BMS* itself is a relatively short opinion that by its own terms applied well-settled jurisdictional principles.[6]  Taking away the confusion caused by Defendants' misstatements, the PSC's position can be summarized succinctly as follows, ***BMS does not impact this case because***: (1) this is an MDL where jurisdiction is premised upon the jurisdiction of the transferor court, and directly filed actions are treated as though they were transferred from the districts where the case originated; (2) the facts here show that the nonresidents' claims directly arose from the Defendants' contacts with the forum; and (3) even were the Court to consider *BMS* the watershed opinion that Defendants sometimes argue it is, this litigation involves class actions filed in federal court under CAFA and the jurisdictional principles that control those cases were not

---

[4] *See*, *generally*, *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 894 F. Supp. 2d 819, 858, 902 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014) & 753 F.3d 521 (5th Cir. 2014).

[5] CNBM-BNBM *BMS* Reply at 15.

[6] The 8-1 support garnered by the majority opinion speaks to its non-controversial nature.  *See BMS*, 137 S. Ct. at 1777.

altered by *BMS*.[7]  As to the last point, the PSC maintains, contrary to Defendants, that Supreme

Court precedent and sound logic counsel against an expansive reading of the *BMS*.  Nothing in

*Depuy* changes this analysis.

The Supplemental Jurisdictional Motion is nothing more than another opportunity for

Defendants to make the same arguments that have previously been rejected by this Court.

Indeed, Defendants' expansive reading of *BMS* will now be supplemented with an overly

expansive reading of *Depuy* while the Defendants simultaneously argue that each case applied

the well-settled principles that were before the Court when it previously ruled upon jurisdiction

and class certification.  There is no mystery to their current strategy – to do anything and

everything in their power to nullify every ruling that has been made in this case over the past

eight-plus years.  By attempting to hit the "reset" button and start this case over, Defendants

hope to wipe the slate clean and make up for their mistakes including the tactical decision for

Taishan to leave the jurisdiction and be absent from the case for a number of years denying

Taishan homeowners their day in court.

## II.     *DEPUY* ENDORSES THIS COURT'S APPROACH TO MANAGING THIS MDL

*Depuy* dealt with an MDL comprised of defective product claims for more than 9,300

plaintiffs against a medical device manufacturer, some of which had been transferred through the

---

[7] The PSC continues to believe that *BMS* had no impact on the agency law applied by the Court in its prior jurisdictional rulings.  Defendants appeared to agree with this concept in their Objection but have now reverted to arguing *BMS* dictated a different result.  *See* Rec. Doc. 20943 (Objection of Defendants CNBM, BNBM Group, and BNBM to the Court's Order Vacating its § 1292(b) Certification and Request for Expedited Resolution of *BMS* Motion) ("Objection") at 4 (arguing there was no overlap between the 1292(b) appeal and the Supplemental Jurisdictional Motion, pointing to agency as the one overlapping area identified by the PSC and then pointing to the PSC's position that *BMS* didn't address agency as proof that the "foci" of the two appeals differed).

MDL process and some of which had been directly filed in the transferee court in the Northern District of Texas. *See Deputy*, 2017 WL 3768923, at *1-2. In *Deputy*, the defendants had waived objections to venue and personal jurisdiction for certain bellwether trials, so-called *Lexecon*[8] waivers, and those trials took place. *See id*. at *2-3. After a couple bellwether trials had been conducted, it became evident that a disagreement existed between defendants and plaintiffs as to whether defendants had agreed to waive their personal jurisdiction and venue objections for all bellwether trials or simply the original bellwether trial. *See id*. Subsequently, when the transferor court sought to try ten cases with New York plaintiffs (that had been directly filed in the MDL in the Northern District of Texas) in a fourth bellwether trial, the disagreement came to a head, and the district court determined that defendants had waived their *Lexecon* objections as to all cases being tried in the MDL and set a trial date for the New York cases. *See id*. Defendants petitioned the Fifth Circuit for a writ of mandamus vacating the district court's finding of a global waiver.

The defendants in *Deputy* raised two main arguments in their petition: (1) that the transferee court erred in finding a global *Lexecon* waiver, and (2) that the transferee court lacked personal jurisdiction over the New York plaintiffs' claims **for purposes of trial**. *See* Deputy Petition at 17-25.[9] The Fifth Circuit found that a *Lexecon* waiver had to be clear and unambiguous and that the district court erred in determining that a waiver occurred but denied the writ of mandamus because the defendants had another adequate means of relief in the form of

---

[8] *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998) ("*Lexecon*").

[9] *See* Petition for a Writ of Mandamus, Fifth Circuit Docket 17-10812, Rec. Doc. 00514088377 (attached hereto as Exhibit "A"). Defendants/Petitioners in *Deputy* noted that although the personal jurisdiction "analysis is different for federal courts overseeing multidistrict litigation, that difference only applied to *pretrial* proceedings." *Id*. at 18 (emphasis in original).

4

an ordinary appeal.  *See Depuy*, 2017 WL 3768923, at *5-6.  Having found an adequate means of relief through an ordinary appeal on personal jurisdiction grounds, the Fifth Circuit never reached the personal jurisdiction arguments at issue.

However, the language in *Depuy* illustrates that this Court has taken the right approach in managing this MDL.  In *Depuy*, the Fifth Circuit affirmed that "[c]ases directly filed in an MDL court are treated 'as if they were transferred from a judicial district sitting in the state where the case originated.'"  *Id*. at *2 (quoting *In re Yasmin & Yaz (Drospirenone) Mktg. Sales Practices & Prods. Liab. Litig.*, No. 09-md-2100, 2011 WL 1375011, at *6 (S.D. Ill. Apr. 12, 2011)).  In assessing the personal jurisdiction of the Northern District of Texas over the New York claims, there was no question that jurisdiction existed for pretrial purposes because it is well-settled that the transferee court has the power of the transferor court (presumed to be New York) to preside over pretrial proceedings.  The issue in *Depuy* that was not ruled upon, because the Fifth Circuit decided that waiver had been wrongly decided, was whether the transferee court has the power of the transferor court to ***try individual cases***.  *See* Depuy Petition at 17-21.  While the Fifth Circuit did not decide the issue, had it decided that the transferee court did not have that power, the proper remedy would have been to remand the New York plaintiffs to the district court in New York, not to dismiss them for lack of personal jurisdiction.  *See Depuy*, 2017 WL 3768923, at *4 (discussing the "mandatory language" in Section 1407 that "creates a powerful presumption in favor of remand"); *see also* Depuy Petition at 20 (noting that the direct file order the parties consented to stated that "direct-filed cases would be 'transfer[red] . . . to a court of appropriate jurisdiction at trial' upon 'completion of all pretrial proceedings.'" (alteration in original)).

That is precisely the process this Court has been following in this MDL. The Court has assessed jurisdiction based upon the Defendants' contacts with the states where the direct filed cases originated and stated that one option for dealing with claims of nonresident Plaintiffs, which was upheld on appeal, is to sever and remand those cases to resolve any jurisdictional issues.[10] A significant difference between this case and *Depuy* is that many of the cases here are directly filed in Louisiana (or filed in other districts and transferred to the MDL) as class actions in federal court under CAFA, while the cases in *Depuy* were simply individual actions coordinated for pretrial proceedings through the MDL. The PSC does not claim, contrary to Defendants' assertions, that filing a case as a class action cures jurisdictional defects; however, where personal jurisdiction is proper over some named class representatives, a national or multistate class that encompasses residents outside the forum state can properly be certified as a Constitutional matter.[11]

---

[10] *See Chinese Drywall*, 894 F. Supp. 2d at 889, 902.

[11] There is no question that a court may exercise personal jurisdiction over absent class members who are nonresidents of the forum state. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 808, 811 (1985). Defendants balk at the notion that whether a multistate or national class is certified is an issue of manageability and not a jurisdictional issue. *See* CNBM-BNBM *BMS* Reply at 16-17. That position is not supported by the case law. *See, e.g.*, David Marcus, *Erie, the Class Action Fairness Act, and Some Federalism Implications of Diversity Jurisdiction*, 48 Wm. & Mary L. Rev. 1247, 1282-83 (2007) (discussing history of CAFA, issues related to multistate class actions, and stating, among other things, "federal courts began to accept the propriety of such multistate classes"). In addition, courts have often approved national classes in mass tort cases in the settlement context but sometimes denied such classes in a litigation context where manageability is an issue. *See, e.g.*, *In re Telectronics Pacing Systems, Inc*., 137 F. Supp. 2d 985, 1029 (S.D. Ohio 2001) (certifying nationwide products liability settlement class); *In re Diet Drugs*, MDL No. 1203, 2000 WL 1222042, at *1 (E.D. Pa. Aug. 28, 2000) (certifying nationwide products liability settlement class); *but see Cole v. General Motors Corp.*, 484 F.3d 717, 724-26 (5th Cir. 2007) (reversing certification of a nationwide class not because such classes were Constitutionally impermissible but because plaintiffs had not met their burden of establishing predominance because they did not adequately address how variations in state law would not threaten to swamp the litigation). If Due Process acted as a constraint on nationwide class actions, settlement classes would also be uncertifiable and, as noted previously, CAFA would have been a meaningless exercise.

In this litigation, there are two main class actions pending in the MDL – (1) *Amorin* (which is a certified class of (a) all Plaintiffs named on an Omni complaint as of the date *Amorin* was filed directly in the MDL, (b) all Plaintiffs named in identical *Amorin* complaints filed in Florida and Virginia federal district courts and transferred to the MDL, (c) all Plaintiffs in *Germano* (filed in E.D. Va. and transferred to the MDL, (d) all Plaintiffs in *Wiltz* (filed directly in the MDL), and (e) all Plaintiffs in *Gross* (filed directly in the MDL))[12] and (2) *Brooke* (which consists of identical putative class actions filed directly in the MDL, Florida, and Virginia, all of which include additional named Plaintiffs with claims against the Defendants, filed subsequent to the filing of *Amorin*).  As an MDL court overseeing the *Amorin* class action, this Court has personal jurisdiction over nonresident class members and has the power to do what many courts before it have done – certify a nationwide class and proceed with the action.  The Court also has personal jurisdiction over nonresident class members in *Brooke* and has the power to certify *Brooke* as a class action.  *Depuy* makes clear that in the event the Court decides not to certify *Brooke* as a nationwide class action because of manageability or other issues, it may remand the individual Plaintiffs' cases back to the districts where the cases originated once pretrial procedures are completed, thereby changing the venue but not at all impacting on personal jurisdiction.  Again, nothing in *BMS* changes this well-settled MDL procedure.

Defendants' real argument, and sole remaining argument with respect to *BMS*, is that *BMS* eliminated multistate and nationwide class actions entirely, which the PSC has shown is not the case.  Moreover, Defendants have been unsuccessful in their challenge to the Court's

---

[12] *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, MDL No. 2047, 2014 WL 4809520 (E.D. La. Sept. 26, 2014).

certification of the *Amorin* class, and the Court recently denied their motion to certify the Order

denying their motion to decertify the class for interlocutory appeal pursuant to § 1292(b), *after*

*BMS* was decided.  Neither *BMS* nor *Depuy* addresses class actions and specifically do not

address class actions brought in federal court under Rule 23.

## III.     THE FACTS OF THIS CASE DO NOT IMPLICATE *BMS* OR *DEPUY*

Unlike *BMS* and perhaps *Depuy* (the court there did not make jurisdictional findings),

there are links in this case between, on the one hand, Defendants' contacts with Louisiana,

Florida, and Virginia and their targeting of these jurisdictions for sales of drywall manufactured

by Taishan and BNBM; and on the other hand, the claims of Plaintiffs with properties in states

contiguous to or in close proximity with Louisiana, Florida, and Virginia.  For example, Taishan

and BNBM made numerous shipments, containing millions of square feet of their drywall, to

distributors in Florida, and then the drywall flowed from the Florida distributors to

homebuilders, installers, and eventually homeowners in Georgia, Alabama, etc.  Those

homeowners' claims directly arise from and relate to Defendants' contacts with and targeting of

Florida for sales of their products.  Similarly, Defendants' sales of drywall to distributors in

Louisiana ended up in homes in Alabama and Texas so that the claims of Plaintiffs with

properties in those states arise from and relate to Defendants' contacts with Louisiana.[13]

---

[13] Those connections are precisely the type that the Supreme Court discussed in *BMS*. There, the Court noted that the fact "BMS conducted research in California on matters unrelated to Plavix" was neither "sufficient" nor "relevant." 136 S. Ct. at 1781. Instead, "[w]hat is needed—and what is missing here—is a connection between the forum and the specific claims at issue." *Id*. Sales to distributors in Florida and Louisiana that ended up in the homes of Plaintiffs from other states provides exactly what the Court said "is needed."

These jurisdictional facts were all part of the record when the Court decided the prior jurisdictional motions. *See*, *e.g.*, PSC's Global Statement of Facts in Opposition to: (1) Taishan's Renewed Motions to Vacate the Default Judgments and Dismiss the Complaints in Germano and Mitchell and (2) Taishan's Motions to Dismiss the Complaints in Gross and Wiltz, at pp. 30 through 50, and Affidavit of Russ M. Herman dated 5/8/2012, attaching 202 Exhibits, filed manually.[14]   This Court and the Fifth Circuit understood these facts.   Therefore, this case meets the "arise out of" or "relate to" prong of the personal jurisdiction analysis in a way that is vastly different from the facts in *BMS*.[15]

## IV.   **DEFENDANTS DISTORT AND OVERSTATE *DEPUY***

Because this case is an MDL and does not have the jurisdictional problems that Defendants assert and because the facts of this case differ substantially from *BMS*, the Court does not need to take its analysis further.   However, should the Court believe it needs to more closely analyze the effects of *BMS* and *Depuy* on its prior jurisdictional rulings, the PSC asserts that a logical and reasoned review of *BMS* reveals that it is narrow and not the wide-ranging decision argued by Defendants.

---

[14] Rec. Doc. 14215.

[15] Defendants seem confused by the PSC's recitation of the stream-of-commerce jurisprudence in the PSC's Opposition because it is related to the purposeful availment prong of the specific jurisdiction analysis. *See* CNBM-BNBM *BMS* Reply at 13 n.14.   However, the "stream" here is relevant to the "arise out of" or "relate to" prong as well because, as illustrated above, the drywall flowed through the forum state to the plaintiff homeowners thereby providing a link between the forum, the Defendants, the Plaintiffs and the claims at issue.

Defendants appear primed to take considerable liberties with their interpretation of *Depuy*.[16]  This has been a consistent tactic throughout the *BMS* briefing – to distort and misstate the arguments and case holdings to further confuse the issues before the Court.  Defendants rely on confusion because it is their best chance of success as there is no question that if Defendants' wide-ranging interpretation of *BMS* were true, the decision would have watershed implications across a broad spectrum of well-settled legal doctrines, statutes and cases.  As much as Defendants' would like the implications of *BMS* to be "clear" in their favor, they are ultimately urging the Court to believe that the Supreme Court painted with such a broad brush while not only failing to affirmatively address the ramifications of their ruling but instead the High Court specifically stating that they did not believe the potential consequences warned of by plaintiffs, which Defendants now urge on this Court, would occur.  *See BMS*, 137 S. Ct. at 1783-84 (the "straightforward application in th[e] *BMS* case of settled principles of personal jurisdiction will not result in the parade of horribles that respondents conjure up").

### A.  Defendants' Continued Misrepresentations Should Give the Court Pause When Considering Their "Analysis" of *Depuy*

The Defendants' main tactic throughout the *BMS* briefing has been misrepresentation and distortion intended to confuse the issues in the hopes of completing this "Hail Mary."  It is easy and understandable for the Court to dismiss the PSC's claim that Defendants have distorted their position, the scope of *BMS*, and the applicability of *Depuy* as pure adversarial rhetoric or something that is being done by "both sides."  However, Defendants' misrepresentations go

---

[16] *See* CNBM-BNBM *BMS* Reply at 15 (implying that Judge Jones was following *BMS* "[w]ithout citing BMS").

beyond the bounds of reasonable argument and work against the efforts of the Court to produce a just and equitable result by creating confusion.

First, Defendants' jurisdictional arguments have been consistently shifting over the past couple of months depending upon whatever result they are seeking to achieve in the moment. For example, when Defendants sought immediate appellate review of this Court's Jurisdiction Order before the Fifth Circuit, they cited *BMS*;[17] then, when they filed their "Objection" to the Court's Order vacating its 1292(b) Order, Defendants claimed that there was no overlap between the Supplemental Jurisdictional Motion and the Fifth Circuit appeal, which seemed to concede that *BMS* did not address agency and narrowed the *BMS* issues down to whether or not *BMS* eliminated nationwide class actions;[18] and now, they are claiming that *BMS* did not change the law but clarified existing law and this Court needs to revisit its prior determinations (the jurisdictional issues that were on appeal and did not involve *BMS*) in light of *BMS*'s import on jurisdiction, agency and class certification.[19]  The shifting sands make it difficult to respond to each of Defendants' contentions.

And if that type of confusion were not enough, Defendants' briefs are littered with intentional misstatements.  Footnote 7 of the CNBM-BNBM *BMS* Reply serves as a perfect

---

[17] *See* Petition for Permission to Appeal Pursuant to 28 U.S.C. § 1292(b), Fifth Circuit Docket 17-90027 [Rec. Doc. 20898-2].

[18] *See* Rec. Doc. 20943 at 4 (arguing there was no overlap between the 1292(b) appeal and the Supplemental Jurisdictional Motion, pointing to agency as the one overlapping area identified by the PSC and then pointing to the PSC's position that *BMS* didn't address agency as proof that the "foci" of the two appeals differed).

[19] *See* CNBM-BNBM *BMS* Reply at 15 (asserting that BMS and Judge Jones in Depuy shared an interpretation of existing law); *see also* Taishan Reply at 1 (BMS did not create new law but was still a "game-changer").

example.  Footnote 7 addresses the PSC's response to Defendants' continued misrepresentation of post-*BMS* cases; in particular, Defendants' reliance in their Objection[20] on three cases for the proposition that: "it is possible that this Court, like multiple other courts over the past several months, simply will follow *Bristol-Myers Squibb*, dismiss nonresident plaintiffs from nationwide class actions filed in federal court, and conclude that such dismissals are not debatable and so not certifiable under § 1292(b)."[21]  To Defendants' apparent chagrin, the PSC noted in its Response that these cases clearly did not support the proposition for which they were cited because, in none of the three cases did the court "dismiss nonresident plaintiffs from nationwide class actions filed in federal court, and conclude that such dismissals are not debatable and so not certifiable under § 1292(b)."[22]  Instead of letting their blatant misrepresentation of these cases go, Defendants double down in their *BMS* Replies.

Defendants claim that, in addressing "some" of the post-*BMS* cases, the PSC "invokes the term 'class action,' as if it is a jurisdictional elixir" and quotes the PSC's statement that "none of the cases cited by Defendants . . . are class actions."[23]  It is clear that the PSC did not "invoke" the phrase class actions nor was it a knee-jerk recitation of the phrase "class action" every time Defendants cite a case.  Instead, the quoted language is a direct response to the fundamental premise of Defendants' citation to certain post-*BMS* cases – that they had "dismiss[ed] nonresident plaintiffs from nationwide class actions filed in federal court" – which was

---

[20] *See* Rec. Doc. 20943.

[21] Rec. Doc. 20943 at 4.

[22] Rec. Doc. 20944 at 4-5 (PSC's Response to the Objection).

[23] *See* CNBM-BNBM *BMS* Reply at 7 n.7.

12

demonstrably false.[24]  Here, in the apparent hope that the Court will not take the time to sort through their deception, Defendants attempt to use the PSC's rebuttal to their prior mischaracterization of these cases to whitewash what they did in the first place.

Defendants are well aware that the PSC simply pointed the Court to the uncontroversial principle that judicial opinions are not persuasive authority on issues that were not argued, briefed and analyzed before the Court.  *See Legal Services Corp. v. Velazquez*, 531 U.S. 533, 557 (2001) (Scalia, J., dissenting) ("Judicial decisions do not stand as binding 'precedent' for points that were not raised, not argued, and hence not analyzed."); *see also Lowe v. Raemisch*, 864 F.3d 1205, 1209-10 (5th Cir. 2017) (decisions not precedential if issue was not argued or was ignored by the court); *United Brotherhood of Carpenters and Joiners Local Union 953 v. Mar-Len of Louisiana, Inc*., 906 F.2d 200, 203 n.2 (5th Cir. 1990) (declining to address issue that had not been briefed and stating "[t]his analysis involves close, complex issues that we think should not be addressed in the absence of briefing and argument.").  The procedural history of each of the post-*BMS* cases cited and relied upon by Defendants in their Objection demonstrates that the briefing was largely completed when the *BMS* opinion was handed down, many arguments were not made (*e.g.*, federal v. state court, Rule 23, etc.), and in at least one of those cases there would have been no reason the plaintiff would have vigorously argued *BMS's* applicability to only state court actions because the plaintiff wanted the case remanded to state court.[25]

---

[24] Defendants also note that the PSC failed to address these cases in the PSC's Opposition even though the cases had not been relied upon by Defendants prior to their filing of the Objection, which occurred after the PSC filed its Opposition.

[25] *See* Rec. Doc. 20944 at 4-6.  In addition, as much as Defendants would like to refer to the case background as "torturing" the procedural history of the case, the PSC provided the dockets to each of the cases as Exhibits A, B and C to the PSC's Response to the Objection.  A review of these dockets reveals the PSC's characterization of these cases is accurate.

The truth is that there has been no court that has ruled upon the scope of *BMS* as it relates to the issues before this Court and no court that the PSC has seen that has been presented with the significant briefing and broad range of issues that are present here.  That is not a criticism or minimization of other opinions cited by Defendants.  Defendants are asking this Court to treat as binding, or strongly persuasive authority, cases that have no such weight because of the lack of briefing, argument and/or analysis.[26]  The PSC can cite cases that have found the other way and analogize them to *BMS*, but those cases, much like Defendants', provide little guidance on how to answer the issues raised by the Supplemental Jurisdictional Motion.[27]

---

[26] *See* CNBM-BNBM *BMS* Reply at 7-8; Taishan *BMS* Reply at 8-10. In addition to issues with finding these cases persuasive from a legal standpoint, Defendants fail to account for the factual differences between each of the cases, *BMS* and this case where Defendants' contacts with the forum led directly to the injury.  The cases cited by Defendants are simply not persuasive authority or instructive.  *See, e.g.*, *Oliver v. Ethicon*, No. 12-cv-6950, 2017 WL 3193652 (S.D. W.Va. July 27, 2017) (discussed in PSC's Response to the Objection, Rec. Doc. 20944 at 4-5); *Jordan v. Bayer Corp.*, No. 17-cv-865, 2017 WL 3006993 (E.D. Mo. July 14, 2017) (same); *Ergon Oil Purchasing, Inc. v. Canal Barge Co., Inc.*, No. 16-cv-5884, 2017 WL 2730853 (E.D. La. June 26, 2017) (same); *Siegfried v. Boehringer Ingelheim Pharm., Inc.*, No. 16-cv-1942, 2017 WL 2778107 (E.D. Mo. June 27, 2017) (briefing on the motion to dismiss was completed long before *BMS* and therefore, they did not address *BMS*); *Jinright v. Johnson & Johnson, Inc.*, No. 17-cv-1849, 2017 WL 3731317 (E.D. Mo. Aug. 30, 2017) (state court case removed to federal court where plaintiff did not make legal arguments regarding scope or applicability of *BMS* but instead sought remand to state court or jurisdictional discovery); *Covington v. Janssen Pharm., Inc.*, No. 17-cv-1588, 2017 WL 3433611, at *1 (E.D. Mo. Aug. 10, 2017) (state court case removed to federal court where plaintiff elected not to respond to defendants' motion to dismiss but instead to move to stay the motion to dismiss and seek remand or jurisdictional discovery); *Turner v. Boehringer Ingelheim Pharm., Inc.*, No. 17-cv-01525, 2017 WL 3310696 (E.D. Mo. Aug. 3, 2017) (state court case removed to federal court where only defendants' reply brief mentioned BMS and plaintiffs sought remand); *Spratley v. FCA US LLC*, No. 17-cv-0062, 2017 WL 4023348 (N.D.N.Y. Sept. 12, 2017) (parties briefing did not address *BMS* but parties filed 2 page supplemental papers regarding the case; the court did not address the argument facing the court here but instead found plaintiffs arguing for a sliding scale approach that was rejected in *BMS* and rejected pendant jurisdiction argument).

[27] *See, e.g.*, *Cortina v. Bristol-Myers Squibb Co.*, No. 17-cv-00247, 2017 WL 2793808, at *4 (N.D. Cal. Jun. 27, 2017) (denying motion to dismiss and citing minimal contacts beyond the facts of *BMS*); *Dubose v. Bristol-Myers Squibb Co.*, No. 17-cv-00244, 2017 WL 2775034, at *4 (N.D. Cal. Jun. 27, 2017); *Lindsley v. American Honda Motor Co. Inc.*, No. 16-cv-941, 2017 WL 3217140, at *2 (E.D. Pa. July 28, 2017) (denial of reconsideration based on *BMS* and noting "that the Court's decision in *Bristol-Myers*

14

Untangling each misrepresentation offered by Defendants would be more time-consuming than it is perhaps worth, but it is important that the Court understand that each statement made by Defendants or proffered interpretation of a case should be looked at with a jaundiced eye.

**B.**   ***Depuy* Does Not Answer Any of the Questions Raised by Defendants' Interpretation of *BMS***

For the Supreme Court to change the law significantly, it would not do so casually or without discussing the key issues.[28]  Defendants appear content to leave unaddressed this basic concept, and *Depuy* offers no insights into the ramification of *BMS* that flow from the sweeping interpretation proffered by Defendants.  It is not plausible that the Supreme Court intended to:

- **Render CAFA meaningless**.  Defendants' statement that CAFA is irrelevant because it involves subject matter jurisdiction and not personal jurisdiction is a red herring.[29]  The PSC has not argued that CAFA addresses personal jurisdiction but, instead, that finding that personal jurisdiction did not exist over nonresident plaintiffs or class members whose claims arose from conduct outside of the forum state would render CAFA meaningless because those are the very claims over which CAFA grants subject matter jurisdiction.  *See* 28 U.S.C. §§ 1332(d)(4)(A)-(B) (class action "local controversy" exception applies when, among other things, greater than 2/3 of proposed class members are citizens of the forum state and "principal injuries" resulting from the alleged conduct of each defendant were incurred in the forum state); 28 U.S.C § 1332(d)(11)(B)(ii)(I) (mass action local controversy exception); *see also* S. Rep. No. 109-14, at 38 ("principal injuries" requirement would not be met "if the defendants engaged in conduct that could be

---

*Squibb* 'concern[ed] the due process limits on the exercise of personal jurisdiction by a State,' and 'le[ft] open the question of whether the Fifth Amendment imposes the same restrictions on ... a federal court.'").

[28] The Supreme Court has long followed a rule that it will not determine questions "not pressed or passed upon below," either as a jurisdictional restriction or a prudential matter, because the "framing of broad rules, seemingly sensible on one set of facts, which may prove ill-considered in other circumstances" and restricting its decisions to narrow, necessary rulings promotes "respect for the procedures by which our decisions are rendered, as well as confidence in the stability of prior decisions."  *Illinois v. Gates*, 462 U.S. 213, 222, 224 (1983).  Because class actions and CAFA were not at issue in *BMS*, the Court did not address it, even in dicta, as it was "not pressed or passed upon below."

[29] CNBM-BNBM *BMS* Reply at 9.

alleged to have injured consumers throughout the country or broadly throughout several states"). Therefore, if Defendants' spin on *BMS* were true, the Supreme Court would have eliminated the utility of CAFA without addressing it.

- **Alter Jurisprudence Governing Rule 23**. Defendants claim that the PSC is arguing that Rule 23 altered the parameters of personal jurisdiction is also a red herring. The PSC has made no such argument but, instead, has noted that if Defendants' spin on *BMS* were correct and *BMS* eliminated nationwide or multistate class actions, then the Supreme Court declared that the many courts that certified national or multistate class actions lacked jurisdiction over the defendants in those cases. Under that theory, the Supreme Court also went against well-settled Rule 23 jurisprudence that found that variances in state law in multistate classes was a manageability issue, not a jurisdictional issue. Defendants note that "Rule 23 must bow to the Due Process Clause" which is a statement that puts the wagon before the horse because the very question is what does the Due Process Clause require and did Congress have the ability to dictate which cases can be heard in federal court, which it clearly does.[30] Defendants' citation ignores the finding in *Shady Grove* that: "A class action, no less than traditional joinder (of which it is a species), merely enables a federal court to adjudicate claims of multiple parties at once, instead of in separate suits. And like traditional joinder, it leaves the parties' legal rights and duties intact and the rules of decision unchanged." *See Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 407-08 (2010). Under Defendants' formulation, *BMS* requires plaintiffs to file fifty separate class actions in fifty separate district courts across the United States in clear violation of Congressional efforts at efficiency in the federal courts, which anticipated and assumed there would be cases heard in federal court that might not otherwise be heard in state court. *See id*. at 415-16. According to Defendants, this clear change in the law was the result of a non-class case in state court where the High Court did not even address this outcome.

- **Recast well-settled agency law**. It is actually unclear what Defendants' argument is regarding how *BMS* changed or clarified agency law, as they have characterized it differently multiple times and the argument has now devolved into simply mocking Plaintiffs for suggesting that *BMS* is not an agency opinion and does not mention the word agency at all.[31] It is axiomatic that a court cannot have a holding that goes beyond the facts of the case, and it is uncertain how *BMS* could have altered agency law when the case did not involve agency or agency concepts. Indeed, the only mention of agency in the opinion is the suggestion that there could have been personal jurisdiction if Bristol-Myers had been derivatively liable for the wrongdoing of the California defendant. *See BMS*, 137 S. Ct. at

---

[30] CNBM-BNBM *BMS* Reply at 10.

[31] CNBM-BNBM *BMS* Reply at 18-19.

1783 ("[n]or is it alleged that [Bristol-Myers] is derivatively liable for McKesson's conduct in California").  Defendants' argument that the statement in *BMS* that the plaintiff must show his claim "'arise[s] out of or relate[s] to the defendant's forum conduct'" implicates agency ignores that this has been the statement of the law for years and was the law when the agency issue was previously decided by the Court and became part of Defendants' appeal (which they said did not implicate *BMS*).

- **Gave foreign corporations a free pass to violate Plaintiffs' rights and be immune from suit in the United States**.  One implication of Defendants' spin on *BMS* is that foreign corporations with no domicile in the United States may not be able to be sued here at all.  According to Defendants, "plaintiffs may have to bring suit outside of the United States."[32]  More than any argument, this may get at Defendants' true motivation – if they can sell the Court on their spin on *BMS*, they can then argue that many homeowners will have to sue Defendants in China to hold them accountable for their defective products.  Defendants note that this possible consequence of *BMS* was raised at oral argument, but they fail to acknowledge that it is one of the "horribles" that the Supreme Court said would not flow from their opinion.  *See BMS*, 137 S. Ct. at 1783-84 (the "straightforward application in th[e] *BMS* case of settled principles of personal jurisdiction will not result in the parade of horribles that respondents conjure up").

- **Removed Congress's Authority to Control Federal Court Jurisdiction**.  Defendants' mischaracterization of the PSC's position with respect to CAFA and Rule 23 obscures the fact that these are Congressional mandates with respect to the treatment of certain cases with due consideration given to the efficiency of the judicial system.  *See Shady Grove*, 559 U.S. at 407-08.  The PSC does not argue that they involve grants of jurisdiction where there is none as Defendants suggest.  As explained below, the law does not require the type of Fourteenth Amendment / Fifth Amendment label that Defendants seek to apply here.  Congress can authorize the federal courts to preside over certain cases even if those cases could not be brought in state court in the same forum.  *See Shady Grove*, 559 U.S. at 415-16; *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 885-86 (2011) ("*McIntyre*").

Defendants' failure to address these significant issues illustrates why their position is untenable.

---

[32] CNBM-BNBM *BMS* Reply at 13 n.15.

## C.   *Depuy* does not assist in assessing Due Process standards in state and federal court

Defendants' Replies focus on the applicability of *BMS* to cases in federal court, and they have shown that they intend to argue that Judge Jones's comments in *Depuy* support their position.[33]  In response to Defendants' initial assertion that there is no reason to believe a different standard would apply in federal courts sitting in diversity, Plaintiffs noted that the Supreme Court limited its holding to state court actions and argued that position was logical because there was every reason to believe that a Due Process analysis could lead to a different result depending upon the forum and sovereign at issue.[34]  Defendants point to the Supreme Court's statement that it was "leav[ing] open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court"[35] as evidence that the limitation does not apply to diversity cases in federal court because those cases are governed by a Fourteenth Amendment Due Process analysis.[36]

Regardless of whatever label the Court wishes to put on the Due Process inquiry, the outcome can differ based upon the forum and the sovereign.[37]  Both federal and state Due Process inquiries incorporate *International Shoe*'s "traditional notions of fair play and substantial justice" standard.  *See International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  These

---

[33] CNBM-BNBM *BMS* Reply at 3-8, 15; Taishan *BMS* Reply at 8-10.

[34] Rec. Doc. 20935 at 19 and n.73; *see also McIntyre*, 564 U.S. at 884 ("personal jurisdiction requires a forum-by-forum, or sovereign-by-sovereign, analysis").

[35] *BMS*, 137 S. Ct. at 1783-84 (majority opinion), 1789 (Justice Sotomayor in dissent noting that the majority left open the possibility that the case may have been brought in federal court).

[36] *See* CNBM-BNBM *BMS* Reply at 3; *see also* Taishan *BMS* Reply at 9.

[37] Rec. Doc. 20935 at 19-21.

18

standards require that a defendant be given adequate notice of the suit and that the exercise of jurisdiction not be so inconvenient to the parties so as to be unfair or unreasonable. *See Mullane v. Central Hanover Trust Co*., 339 U.S. 306, 313-14 (1950) (notice); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980) (fairness and reasonableness). The Due Process inquiry does not change based upon whether the action is in state or federal court because it is rooted in "individual liberty interests" and not sovereignty. *See Insurance Corp. of Ireland v. Campagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) (discussing individual liberty interests); *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1257-58 (5th Cir. 1994) ("From *Bauxites*, we know that this jurisdictional limitation flows not from notions of sovereignty, but from the Due Process Clause.").

However, just because the analysis remains the same, it does not mean the result of the analysis must be the same when different sovereigns are involved. *See Busch*, 11 F.3d at 1258 ("Sovereignty, however, may remain germane because it defines the scope of the due process analysis."). In fact, the Supreme Court has consistently made it clear that cases may proceed differently in federal court and state court even when the cases are in federal court based upon diversity jurisdiction. *See*, *e.g.*, *Gasperini v. Center for Humanities, Inc*., 518 U.S. 415, 432 (1996) (finding the Seventh Amendment governed review of damages award in proceedings under state law in federal court even when such standards would not govern action in state court); *Shady Grove*, 559 U.S. at 415-16 ("Congress itself has created the possibility that the same case may follow a different course if filed in federal instead of state court."). As the Supreme Court said in *McIntyre*, "personal jurisdiction requires a forum-by-forum, or sovereign-by-sovereign, analysis." *See McIntyre*, 564 U.S. at 884.

19

Defendants attempt to minimize statements in *McIntyre* that illustrate the extent to which state and federal court jurisdiction may differ by arguing that the Supreme Court was not suggesting these distinctions applied to diversity cases.[38]  *McIntyre*, however, places no such limitation on its analysis, and the discussion arose in the context of a state law case brought in state court, not a federal question case.  In addition, Defendants ignore the Supreme Court's statement that it was not "necessary to determine what substantive law might apply were Congress to authorize jurisdiction in a federal court in New Jersey" thereby suggesting, at a minimum, that Congress had the power to allow a federal court in New Jersey to hear the very claim over which the Supreme Court was finding the state lacked personal jurisdiction.[39]  *See McIntyre*, 564 U.S. at 885-86.  This does not make for a different Due Process analysis but it does mean that the analysis may differ based upon the sovereign involved.  Here, where the entire basis of *BMS* is "'the Due Process Clause, acting as an instrument of interstate federalism," the analysis may come out differently in federal court.  *See BMS*, 137 S. Ct. at 1780-81.

## V.   <u>CONCLUSION</u>

For all of the foregoing reasons as well as those set forth in the PSC's Opposition, Defendants' Supplemental Jurisdictional Motion should be denied in its entirety.

---

[38] CNBM-BNBM *BMS* Reply at 5 n.4.

[39] This also supports the PSC's contention that even if *BMS* were read broadly, it would not mean that the opinion was intended to eliminate the ability to consolidate cases in a federal forum in the face of Congress's express intent to grant authority to hear such cases there whether they be through CAFA or Rule 23.

Respectfully submitted,

Dated:   September 29, 2017

/s/ Russ M. Herman
Russ M. Herman (La. Bar No. 6819) (on the brief)
Leonard A. Davis (La. Bar No. 14190) (on the brief)
Stephen J. Herman (La. Bar No. 23129) (on the brief)
Robert S. Peck (on the brief)
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, LA  70113
Phone: (504) 581-4892
Fax: (504) 561-6024
RHerman@hhklawfirm.com

*Plaintiffs' Liaison Counsel MDL 2047*

Arnold Levin (on the Brief)
Fred S. Longer (on the Brief)
Sandra L. Duggan (on the Brief)
Keith J. Verrier (on the Brief)
Nicola Serianni (on the Brief)
Levin Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA  19106
Phone: (215) 592-1500
Fax: (215) 592-4663
Alevin@lfsblaw.com

*Plaintiffs' Lead Counsel MDL 2047*

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA  70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Peter Prieto
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL  33130
Phone: (305) 358-2800
Fax: (305) 358-2382
pprieto@podhurst.com

Patrick Montoya
Colson, Hicks, Eidson
255 Alhambra Circle, Penthouse
Coral Gables, FL  33134
Phone: (305) 476-7400
Fax: (305) 476-7444
patrick@colson.com

Hugh P. Lambert
The Lambert Firm
701 Magazine Street
New Orleans, LA  70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@thelambertfirm.com

James R. Reeves, Jr.
Reeves & Mestayer, PLLC
160 Main Street
Biloxi, MS  39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@rmlawcall.com

Robert Becnel
Becnel Law Firm, LLC
425 W. Airline Highway, Suite B
Laplace, LA  70068
Phone: (985) 536-1186
Fax: (985) 536-6445
rbecnel@becnellaw.com

Bruce William Steckler
Steckler Gresham Cochran
12720 Hillcrest Road, Ste 1045
Dallas, TX  75230
Phone: (972) 387-4040
Fax: (972) 387-4041
bruce@stecklerlaw.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL  32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA  70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Christopher Seeger
Seeger Weiss, LLP
77 Water Street
New York, NY  10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC  27603
Phone: (919) 600-5000
Fax: (919) 600-5002
dan@wbmllp.com

Victor M. Diaz, Jr.
V.M. Diaz and Partners, LLC
119 Washington Ave, Suite 402
Miami Beach, FL  33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

Richard J. Serpe
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA  23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W, Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Anthony D. Irpino
IRPINO AVIN HAWKINS LAW FIRM
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

23

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, which will serve a notice of the uploading in accordance with the procedures established in MDL 2047, on this 29th day of September, 2017.

/s/ Leonard A. Davis
Leonard A. Davis
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com
Plaintiffs' Liaison Counsel
MDL 2047

*Co-Counsel for Plaintiffs*

24