# EXHIBIT

## "A"

No. _____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

_____

In re: DEPUY ORTHOPAEDICS, INC.; DEPUY PRODUCTS, INC.; DEPUY SYNTHES, INC.; JOHNSON & JOHNSON; JOHNSON & JOHNSON SERVICES, INC.; JOHNSON & JOHNSON INTERNATIONAL

_____

## PETITION FOR A WRIT OF MANDAMUS

_____

On Petition for Writ of Mandamus to the United States District Court
for the Northern District of Texas, MDL No. 2244
*Honorable Ed Kinkeade, District Judge*

_____

Michael V. Powell
LOCKE LORD LLP
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
(214) 740-8453

*/s/ John H. Beisner*
John H. Beisner
Stephen J. Harburg
Jessica Davidson Miller
Geoffrey M. Wyatt
SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
(202) 371-7000

Counsel for Petitioners

## CERTIFICATE OF INTERESTED PERSONS

*In re: DePuy Orthopaedics, Inc. et al.*, No. _____

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1.      Ramon Alicea and Carole Alicea, Uriel Barzel and Aviva Barzel, Denise Buonaiuto and Frank Buonaiuto, Claudia Heroth and Alan Heroth, Karen Kirschner, Hazel Miura, Eugene Stevens, Jr. and Yolanda Stevens, Michael A. Stevens and Audra L. Stevens, plaintiffs;

2.      DePuy Orthopaedics, Inc.; DePuy Products, Inc.; DePuy Synthes, Inc.; Johnson & Johnson International; Johnson & Johnson Services, Inc.; Johnson & Johnson, Defendants-Petitioners;

3.      Skadden, Arps, Slate, Meagher & Flom LLP (John H. Beisner, Stephen J. Harburg, Jessica D. Miller, Geoffrey M. Wyatt); Locke Lord LLP (Michael V. Powell); Quattlebaum, Grooms, Tull & Burrow PLLC (Steve Quattlebaum); King & Spalding (Tracie J. Renfroe), counsel for Defendants-Petitioners;

4.      The Lanier Law Firm, PC (W. Mark Lanier, Michael R. Akselrud, Paul R. Cordella); Fisher, Boyd, Johnson & Huguenard, LLP (Larry Boyd, Wayne

Fisher, Justin Presnal); Neblett, Beard & Arsenault (Richard J. Arsenault);

Simmons Hanly Conroy (Jayne Conroy, Laura L. Fitzpatrick); The Brown Law

Firm (Thomas K. Brown); Wagstaff & Cartmell (Thomas J. Preuss); Martin,

Harding & Mazzotti, L.L.P. (Rosemarie Riddel Bogdan); Anapol Weiss (Thomas

R. Anapol); Burg Simpson Eldredge Hersh & Jardine, P.C. (Seth Katz), Counsel

for Plaintiffs.

Respectfully submitted,

*/s/ John H. Beisner*
John H. Beisner
Stephen J. Harburg
Jessica Davidson Miller
Geoffrey M. Wyatt
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
(202) 371-7000

Counsel for Petitioners

## <u>REQUEST FOR ORAL ARGUMENT</u>

This petition arises from one of the largest multidistrict litigation ("MDL") proceedings pending in the federal court system and implicates a fundamental limitation on such proceedings that the court below has ignored.  Although the U.S. Supreme Court has made clear that MDL proceedings established pursuant to 28 U.S.C. § 1407 are for *pretrial* purposes only – and not for conducting trials – the MDL court has made trying cases its top priority, mistakenly concluding that it must do so in order to resolve the thousands of cases pending before it.

As part of this erroneous and misguided approach, the MDL court ruled that it can try the claims of eight New York plaintiffs who directly filed their claims in the MDL court in Texas, even though, under elementary personal-jurisdiction principles, these claims cannot be tried by a Texas court because they have zero connection to Texas.  The court did so by determining that petitioners waived any objection to personal jurisdiction based on their consent to two bellwether trials early in the proceeding.  That ruling was clearly erroneous because it expanded trial-specific consents into global and irrevocable waivers that are being applied to cases that were not even filed at the time the assents were given.  In short, the MDL court has concluded that defendants' consent to *two* bellwether trials enables it to try thousands of cases over which it lacks jurisdiction.

Petitioners submit that oral argument on these points is crucially important to resolving the petition.  Accordingly, pursuant to Fifth Circuit Rule 28.2.3, petitioners respectfully request that the Court hear oral argument.

# **TABLE OF CONTENTS**

**Page**

CERTIFICATE OF INTERESTED PERSONS ........................................................i

REQUEST FOR ORAL ARGUMENT ................................................. iii

JURISDICTIONAL STATEMENT ......................................................... 1

RELIEF SOUGHT ............................................................................... 1

ISSUE PRESENTED ........................................................................... 1

FACTS NECESSARY TO UNDERSTAND THE ISSUE PRESENTED ............... 2

      A.    The MDL Proceeding ............................................................. 2

      B.    The Evolving Bellwether Trial Process ................................. 4

           1.    The First Bellwether Trial ............................................ 5

           2.    The Second Trial ("*Aoki*") ........................................ 7

           3.    The Third Trial ("*Andrews*") .................................... 9

           4.    The Upcoming Trial ................................................... 11

      C.    The Ruling At Issue ........................................................... 13

REASONS WHY THE WRIT SHOULD ISSUE ................................. 15

I.     THE MDL COURT CLEARLY ERRED IN CONCLUDING THAT
      IT CAN EXERCISE JURISDICTION OVER THE NEW YORK
      CASES FOR PURPOSES OF TRIAL. ....................................... 17

      A.    The MDL Court Cannot Exercise Another Court's Personal
           Jurisdiction To Try Cases In The MDL Proceeding. ......................... 17

      B.    The MDL Court Clearly Erred In Holding That Petitioners
           Globally And Permanently Waived Venue And Personal
           Jurisdiction Objections. .......................................... 21

II.    THE MDL COURT'S DECISIONS ARE EFFECTIVELY
       "IRREMEDIABLE" THROUGH REGULAR APPEAL, AND
       MANDAMUS RELIEF IS ESPECIALLY APPROPRIATE IN
       LIGHT OF THE BROAD IMPORTANCE OF THE ISSUES
       PRESENTED.................................................................................................26

CONCLUSION ...........................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abelesz v. OTP Bank*,
   692 F.3d 638 (7th Cir. 2012) ........................................................27

*In re Allstate Insurance Co.*,
   8 F.3d 219 (5th Cir. 1993) ...........................................................16

*In re American Airlines, Inc.*,
   972 F.2d 605 (5th Cir. 1992) ........................................................16

*Armstrong v. LaSalle Bank National Association*,
   552 F.3d 613 (7th Cir. 2009) ..................................... 21, 22, 24, 26

*In re Avantel, S.A.*,
   343 F.3d 311 (5th Cir. 2003) ........................................................15

*In re Bausch & Lomb Inc. Contact Lens Solution Products Liability
   Litigation*,
   MDL No. 1785, 2007 WL 3046682 (D.S.C. Oct. 11, 2007).................. 19-20

*Bristol-Myers Squibb Co. v. Superior Court*,
   137 S. Ct. 1773 (2017).................................................................17

*In re Burlington North, Inc.*,
   822 F.2d 518 (5th Cir. 1987) ........................................................28

*Cheney v. U.S. District Court for D.C.*,
   542 U.S. 367 (2004).............................................................. 16, 17

*In re Chesson*,
   897 F.2d 156 (5th Cir. 1990) ........................................................15

*In re Chevron USA, Inc.*,
   109 F.3d 1016 (5th Cir. 1997) ............................................. 4, 17, 29

*In re Chinese Manufactured Drywall Products Liability Litigation*,
   767 F. Supp. 2d 649 (E.D. La. 2011) ............................................19

*City of New Orleans v. Municipal Administrative Services, Inc.*,
   376 F.3d 501 (5th Cir. 2004) ..........................................................................23

*In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Products Liability*
   *Litigation*,
   787 F. Supp. 2d 1358 (J.P.M.L. 2011) ............................................................2

*In re E.E.O.C.*,
   709 F.2d 392 (5th Cir. 1983) ................................................................... 28-29

*In re FMC Corp. Patent Litigation*,
   422 F. Supp. 1163 (J.P.M.L. 1976) ....................................................... 18, 20

*In re Ford Motor Co.*,
   591 F.3d 406 (5th Cir. 2009) ................................................................. 28, 29

*In re Heartland Payment Systems, Inc. Customer Data Security Breach*
   *Litigation*,
   MDL No. 2046, 2011 WL 1232352 (S.D. Tex. Mar. 31, 2011) ............. 18-19

*Hebert v. Exxon Corp.*,
   953 F.2d 936 (5th Cir. 1992) ..........................................................................17

*In re Impact Absorbent Technologies, Inc.*,
   106 F.3d 400, 1996 WL 765327 (6th Cir. 1996).........................................27

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
   523 U.S. 26 (1998)....................................................................................4, 20

*Northside Iron & Metal Co. v. Dobson & Johnson, Inc.*,
   480 F.2d 798 (5th Cir. 1973) ................................................................. 22-23

*In re Occidental Petroleum Corp.*,
   217 F.3d 293 (5th Cir. 2000) ........................................................................16

*Point Landing, Inc. v. Omni Capital International, Ltd.*,
   795 F.2d 415 (5th Cir. 1986) ........................................................................18

*In re Reyes*,
   814 F.2d 168 (5th Cir. 1987) ........................................................................16

*In re Roman Catholic Diocese of Albany, N.Y., Inc.*,
   745 F.3d 30 (2d Cir. 2014) ...........................................................................27

*Southern Pacific Transportation Co. v. San Antonio*,
    748 F.2d 266 (5th Cir. 1984) .........................................................................16

*Schlagenhauf v. Holder*,
    379 U.S. 104 (1964)......................................................................................29

*Sunbelt Corp. v. Noble, Denton & Associates, Inc.*,
    5 F.3d 28 (3d Cir. 1993) ......................................................................... 27-28

*United States v. Denson*,
    603 F.2d 1143 (5th Cir. 1979) .....................................................................16

*In re Volkswagen of America, Inc.*,
    545 F.3d 304 (5th Cir. 2008) ................................................................. 17, 28

*Wilson v. Belin*,
    20 F.3d 644 (5th Cir. 1994) .........................................................................17

*In re Yasmin & Yaz (Drospirenone) Marketing, Sales Practices and*
    *Products Liability Litigation*,
    MDL No. 2100, 2011 WL 1375011 (S.D. Ill. Apr. 12, 2011) .............. 11, 19

## Statutes

28 U.S.C. § 1407 .....................................................................................................4

28 U.S.C. § 1651(a) .................................................................................................1

## Other Authority

*Manual for Complex Litigation (Fourth)* § 22.36 .......................................................4

## JURISDICTIONAL STATEMENT

Jurisdiction of this Court is invoked under the All Writs Act, which provides in relevant part that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).

## RELIEF SOUGHT

Petitioners seek a writ from this Court prohibiting the district court from trying cases in the MDL proceeding over which it lacks personal jurisdiction. *Petitioners seek expedited treatment of the petition and a ruling by September 5, 2017* because trial is scheduled to commence on that date.

## ISSUE PRESENTED

The issue presented is: whether the MDL court clearly erred in concluding that by waiving venue and personal jurisdiction objections for trials of two bellwether cases, defendants waived personal jurisdiction with respect to thousands of cases, for perpetual trials, notwithstanding the clear language of 28 U.S.C. § 1407(a) that MDL cases "*shall* be remanded" to transferor courts for trial.

It is undisputed that a Texas court would ordinarily lack personal jurisdiction to try these cases because none of the parties is based in Texas and no relevant conduct is alleged to have occurred there. The MDL court has previously suggested that it could act as a New York court because it entered a direct filing

order that enables plaintiffs to bypass the MDL transfer process.  Defendants have

submitted several rounds of briefing to the MDL court explaining that it does not

have this authority, and presumably for that reason, the court has now embraced a

different but equally erroneous approach:  holding that defendants' waiver of

venue objections for the first two bellwether trials was a perpetual waiver of

personal jurisdiction and venue for the entire litigation.  In short, the MDL court

has decided that it is no longer constrained by the MDL statute or personal

jurisdiction principles and can order trials of as many cases as it chooses instead of

remanding these cases to courts of proper jurisdiction, as required by the MDL

statute and basic jurisdictional principles.

## FACTS NECESSARY TO UNDERSTAND THE ISSUE PRESENTED

### A.    The MDL Proceeding

The proceeding below was established by the Judicial Panel on Multidistrict

Litigation in 2011 to "promote the just and efficient conduct of the litigation" of

cases involving allegations that the "Pinnacle Acetabular Cup System, a device

used in hip replacement surgery, was defectively designed," and that "defendants

failed to provide adequate warnings concerning the device."  *In re DePuy

Orthopaedics, Inc., Pinnacle Hip Implant Prods. Liab. Litig.*, 787 F. Supp. 2d

1358, 1360 (J.P.M.L. 2011).

The MDL proceeding began as three cases, *see id.* at 1359, but has now

grown to more than 9,300.  Some cases have been filed pursuant to the MDL

court's "direct-file order," a provision set forth in the MDL court's initial case

management order that was adopted in 2011 after consultation with the Plaintiffs'

Executive Committee ("PEC") and petitioners.  (*See* Case Mgmt. Order #1 ("CMO

1") ¶¶ 13-17, MDL Dkt. No. 20 (N.D. Tex. June 29, 2011).)[1]

The direct-file order provides that, "[i]n order to eliminate delays associated

with the transfer of cases in or removed to other federal district courts to this

Court, and to promote judicial efficiency, any plaintiff whose case would be

subject to transfer to MDL 2244 may file his or her case directly in the MDL

proceedings in the Northern District of Texas."  (*Id.* ¶ 13.)  The order plainly

contemplates that such filings are for *pretrial* purposes only, expressly providing

that, "[u]pon completion of all pretrial proceedings applicable to a case filed

directly in the [MDL court], this Court may transfer the case, pursuant to 28 U.S.C.

§ 1404, to a court of *appropriate jurisdiction for trial*."  (*Id.* ¶ 17 (emphasis

added).)  The direct-file order also expressly provides that the inclusion of any

action in the MDL proceeding under the order's auspices "*shall not constitute a*

*determination by this Court that jurisdiction or venue is proper in this District*."

(*Id.* (emphasis added).)

---

[1]     Citations to "MDL Dkt." are to district court docket number 3:11-md-02244-K.

### B.  The Evolving Bellwether Trial Process

The MDL court also established a bellwether trial protocol after consulting petitioners and the PEC.  (*See generally* Case Mgmt. Order No. 8 ("CMO 8"), MDL Dkt. No. 190 (N.D. Tex. Aug. 14, 2012).)

As recognized by the *Manual for Complex Litigation (Fourth)* (2004), the purpose of bellwether trials is to "produce a sufficient number of representative verdicts and settlements to enable the parties and the court to determine the nature and strength of the claims, whether they can be fairly developed and litigated on a group basis, and what range of values the cases may have if resolution is attempted on a group basis." *Id.* § 22.315.  This Court, too, has acknowledged this purpose of bellwether trials.  *In re Chevron USA, Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997).

Nevertheless, the MDL statute limits an MDL court's authority to *pretrial* matters, expressly providing that cases transferred to MDL proceedings be remanded at the conclusion of pretrial matters.  28 U.S.C. § 1407(a).  As the Supreme Court has explained, an MDL court conducting "pretrial proceedings" has "no . . . authority" to "assign a transferred case to itself for trial." *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 28 (1998).  Thus, it is well settled that MDL courts may not try transferred cases absent consent from the parties. *Manual for Complex Litigation (Fourth)* § 22.36.

As detailed in the following sections, petitioners consented to two trials in the proceeding below to further the goal of trying bellwether cases – but not to subsequent trials, including the upcoming September trial at issue here.

### 1.     The First Bellwether Trial

The MDL court provided for the first trial by way of CMO 8, which directed the parties to "file their recommended selection of 4-6 cases to be included *in an initial bellwether trial process* with the Court by September 2, 2013"; set deadlines for other pretrial proceedings; and required that the "*first bellwether case* shall be ready for trial by September 1, 2014." (CMO 8 ¶¶ 7, 17.)  Notably, CMO 8 did not purport to govern anything other than the "initial" bellwether process.

Thereafter, expressly "[p]ursuant to Case Management Order No. 8," which concerned only the first bellwether selection, "the Special Master . . . conferred with" petitioners and the PEC and reported that they had "agreed to the following relating to selection of bellwether trials."  (Special Master's Report Relating to Bellwether Trial Selection Protocol at 1, MDL Dkt. No. 247 (N.D. Tex. Jan. 16, 2013).)  First, "[b]y April 1, 2013," the PEC was to identify "which of the plaintiffs" in the MDL "have waived venue to allow their case to be tried" by the MDL court, a deadline that applied to the PEC and not petitioners because petitioners had "already agreed that they will not raise a venue objection (*i.e.*, a *Lexecon* objection) to any cases in the MDL proceeding being tried in the" MDL.

(*Id.* ¶ 1.)  Second, by June 3, 2013, the parties were to each select four cases as "proposed bellwether trial candidates" to establish "an initial pool of eight cases." (*Id.* ¶ 2.)  The parties were then to agree on four cases to submit to the MDL court by September 2, 2013, after which the MDL court was to "establish the order in which *those* four cases w[ould] be tried."  (*Id.* ¶ 4 (emphasis added).)

During the course of selecting proposed bellwether candidates pursuant to CMO 8 and this Report, a disagreement emerged between petitioners and the PEC over whether multiple cases should be consolidated for trial.  After the PEC filed its proposal for selecting bellwether trials, which included a request for consolidation, petitioners responded that they did "not agree to waive their *Lexecon* objections for a prejudicial, multi-plaintiff trial."  (Defs.' Resp. to Pls.' Proposal for Bellwether Trial Selection Process at 1, MDL Dkt. No. 341 (N.D. Tex. Sept. 6, 2013).)

At a status conference several days later, petitioners' lead counsel reaffirmed the waiver noted in the Special Master's report – which, as described above, related only to the "initial bellwether" process – stating, "we have waived the [*Lexecon*] restriction on . . . *these* cases, consistent with the report that the [S]pecial [M]aster gave to the court earlier."  (Tr. of Status Conference 5:8-11, MDL Dkt. No. 344 (N.D. Tex. Sept. 10, 2013) (emphasis added).)  Counsel also noted petitioners' intention to object to any consolidation of claims in the first trial.

6

Counsel nowhere intimated a broader or perpetual waiver that would extend beyond the "initial bellwether" process as to which petitioners had waived *Lexecon* objections.

Ultimately, the court selected a single case nominated by plaintiffs' counsel and involving a Montana plaintiff for the first bellwether trial, *Paoli v. DePuy Orthopaedics, Inc.*, No. 3:12-cv-04975-K (N.D. Tex.).  The jury found for petitioners on each of plaintiffs' causes of action.

### 2.     The Second Trial ("*Aoki*")

After the defense prevailed in *Paoli*, the MDL court abandoned the original bellwether process, jettisoned the remaining candidates in the previously selected pool of potential bellwether trial cases sua sponte, and directed the parties to propose new candidates for a second bellwether trial.

On December 5, 2014, petitioners' counsel emailed the Special Master suggesting a number of additional bellwether candidates expressly for the purposes of "*the next bellwether trial*," consistent with the MDL court's request that the parties identify plaintiffs with a "revision due to an apparent metal reaction to metal wear debris," but without "any issue with the angle at which the cups were implanted" as was the case in the *Paoli* trial.  (Emails between Seth Roberts and Hon. James Stanton, Dec. 5-8, 2014 (App. 25-28) (emphasis added).)  The Special Master responded the same day and requested that petitioners "confirm DePuy is

willing to waive *Lexecon* [objections] for all MDL cases to be tried in Dallas."
(*Id.*)  Presuming that the Special Master's request pertained to the second trial that
was the subject of petitioners' email – but also clarifying this presumption –
petitioners responded:  "Confirmed.  In order to allow the Court to select the *next
round of bellwether cases* from a broader pool of cases that can be tried in Dallas,
defendants have agreed to waive *Lexecon* objections to cases in the MDL
proceeding being tried there."  (*Id.* (emphasis added).)  The Special Master later
issued a report, stating:  "In order to insure the broadest pool of cases for the
bellwether selection process, Defendants have agreed they will not raise a venue
objection (i.e., a *Lexecon* objection) to any cases in the MDL being tried in the
Northern District of Texas."  (Special Master's Report Relating to Bellwether Trial
Selection at 1, MDL Dkt. No. 490 (N.D. Tex. Feb. 17, 2015).)

The MDL court thereafter entered an order identifying ten candidates for the
second trial.  (Order on Bellwether Trials at 1, MDL Dkt. No. 491 (N.D. Tex. Feb.
18, 2015).)  The order did not specify whether the court intended to try more than
one plaintiff's claims, but less than a month before trial, the MDL court announced
by way of an email from the Special Master that it had decided sua sponte to
consolidate five cases involving Texas plaintiffs for trial.  Petitioners moved for an
order denying consolidation.  (*See* Defs.' Mot. for Order Den. Consolidated Trial

Of Bellwether Cases, *Aoki v. DePuy Orthopaedics, Inc.*, No. 3:13-cv-01071-K, Dkt. No. 79 (N.D. Tex. Dec. 30, 2015).) That motion was denied.

A prejudicial and confusing five-plaintiff trial followed. The proceeding was rife with inflammatory and irrelevant evidence – including, for example, plaintiffs' counsel's gratuitous assertions that nonparty subsidiaries of Johnson & Johnson had made payments to "Saddam's henchmen"; hearsay assertions from a book about supposedly improper scientific articles planted in the literature by "Big Tobacco" and other "industr[ies]"; allegations that the Pinnacle Ultamet poses a risk of cancer, even though no plaintiff alleged such an injury and no science supports it; hearsay references to an employee's unproven allegations of racist treatment at DePuy; and a suggestion that the failure of a metal-on-metal implant in another, nonparty individual led him to commit suicide. Not surprisingly, the jury, awash in this flood of prejudicial evidence, returned a verdict in excess of $500 million – including $360 million in exemplary damages.[2]

### 3.    The Third Trial ("*Andrews*")

When the MDL court asked the parties to suggest a new batch of cases for a third bellwether trial, petitioners immediately moved to stay future trials pending

---

[2]    Appeals from that judgment and a subsequent order denying a new trial are pending. In both appeals, the five plaintiffs' cases are consolidated under the lead case caption, *Aoki v. DePuy Orthopaedics, Inc.*, No. 3:13-cv-01071-K (N.D. Tex.). (Appeal Nos. 16-11051 and 17-10030.)

this Court's resolution of their appeal of the *Aoki* verdict.  (*See* Defs.' Mot. to Stay

Additional Trials Pending Resolution of Appeal of Second Bellwether Trial Cases,

MDL Dkt. No. 657 (N.D. Tex. May 24, 2016).)[3]

In their stay brief, petitioners made clear that "[a]lthough [they] previously

waived *Lexecon* for purposes of selecting prior bellwether cases, *they have never*

*agreed to a blanket Lexecon waiver and do not waive their venue objections with*

*respect to forthcoming trials*."  (*Id.* at 1 n.1 (emphasis added).)  The MDL court

denied petitioners' motion, finding that petitioners had globally waived *Lexecon*

objections based on the Special Master's reports discussed above.  (Order Den.

Defs.' Mot. to Stay Additional Trials at 8-9, MDL Dkt. No. 665 (N.D. Tex. July 5,

2016).)

The MDL court again consolidated cases for trial, this time of six California

plaintiffs.  Petitioners moved to dismiss all of the plaintiffs' claims on personal-

jurisdiction grounds, arguing that their claims arose in California and had no

connection to Texas, where the plaintiffs had filed their claims pursuant to the

MDL court's direct-file order.  The court denied the motion, concluding that

"California is the relevant forum state" notwithstanding the fact that the claims

were filed in Texas because the direct-filing order "does not contemplate treating

---

[3]      Petitioners also sought mandamus relief from this Court, in which they set forth their
position that the "bellwether" process was no longer serving its purpose.  (*See* No. 16-10845,
*filed* June 23, 2016, *response requested* July 1, 2016, *denied* Sept. 29, 2016.)

the cases differently based solely on the mechanism by which they reached this

MDL." (Order Den. Defs.' Mot. to Dismiss for Lack of Personal Jurisdiction at 6,

*Andrews v. DePuy Orthopaedics, Inc.*, No. 3:15-cv-03484-K, Dkt. No. 81 (N.D.

Tex. Sept. 20, 2016).)[4] The MDL court thus concluded that it had the authority to

"conduct bellwether trials" of these plaintiffs' claims, relying on one case – *In re*

*Yasmin & Yaz (Drospirenone) Marketing, Sales Practices and Products Liability*

*Litigation*, MDL No. 2100, 2011 WL 1375011 (S.D. Ill. Apr. 12, 2011) – which

concerns choice of law and does not even mention personal jurisdiction. (*Id.* at 7.)

The ensuing trial was again rife with legal and evidentiary errors.

Bombarded with improper prejudicial evidence and obviously confused by the

large number of plaintiffs, the jury returned a verdict totaling more than $1 billion,

featuring nearly identical awards for the six plaintiffs despite widely divergent

underlying facts in each case.[5]

### 4.   The Upcoming Trial

Following the third trial, the MDL court stated that it would "consider

submissions of the parties regarding bellwether candidates on cases applying New

---

[4]      Citations to "*Andrews* Dkt." are to the district court docket number 3:15-cv-03484-K.
The parties filed generally applicable submissions in all of the California plaintiffs' dockets but
generally cited only to the *Andrews* docket in referring to such submissions.

[5]      Post-trial motions were recently resolved in the third trial, which is already pending on
appeal under the *Andrews* caption. (Appeal No. 17-10022.)

York law." (Order on Bellwether Trials at 1, MDL Dkt. No. 711 (N.D. Tex. Nov. 2, 2016).)

Petitioners immediately "object[ed] to trying cases in this MDL proceeding that involve plaintiffs who are not residents of Texas, since the Court does not have personal jurisdiction over the defendants with respect to such cases, and venue is not proper for such cases in this Court pursuant to" *Lexecon*. (Defs.' Resp. to Nov. 2, 2016 Order on Bellwether Trials at 1, MDL Dkt. No. 712 (N.D. Tex. Nov. 7, 2016).) Petitioners further stated that they "have not waived and do not agree to waive either personal jurisdiction or venue as to cases involving plaintiffs from New York for a fourth trial in this MDL proceeding, and to the extent that the Court concludes that defendants' prior limited waivers extend to future trials, defendants withdraw any such waivers." (*Id.*)

Nevertheless, the MDL court issued an order on November 8, 2016, selecting ten cases involving New York plaintiffs for trial beginning September 5, 2017. (Order on Bellwether Trials at 1-2, MDL Dkt. No. 713 (N.D. Tex. Nov. 8, 2016).)[6] The order did not acknowledge defendants' objection.

---

[6]     The cases being worked up for trial in September that are at issue in this petition are: *Alicea v. DePuy Orthopaedics, Inc.*, No. 3:15-cv-03489-K; *Barzel v. DePuy Orthopaedics, Inc.*, No. 3:16-cv-01245-K; *Buonaiuto v. DePuy Orthopaedics, Inc.*, No. 3:14-cv-02750-K; *Heroth v. DePuy Orthopaedics, Inc.*, No. 3:12-cv-04647-K; *Kirschner v. DePuy Orthopaedics, Inc.*, No. 3:16-cv-01526-K; *Miura v. DePuy Orthopaedics, Inc.*, No. 3:13-cv-04119-K; *Stevens v. DePuy Orthopaedics, Inc.*, No. 3:14-cv-01776-K; and *Stevens v. DePuy Orthopaedics, Inc.*, No. 3:14-02341-K. The Special Master informed the parties late last week that the ninth case –

*(cont'd)*

### C.    <u>The Ruling At Issue</u>

Petitioners then moved to vacate the MDL court's November 8 Order on the

ground that the MDL court lacks personal jurisdiction to try the New York

plaintiffs' cases and that petitioners did not globally waive venue.  (*See* Defs.'

Mem. in Supp. of Mot. to Vacate Nov. 8, 2016 Order on Bellwether Trials for

Lack of Personal Jurisdiction, *Alicea* Dkt. No. 8-1 (N.D. Tex. Dec. 7, 2016).)[7]  On

February 17, 2017, with the motion to vacate still pending, petitioners moved to

dismiss the New York plaintiffs' claims for lack of personal jurisdiction.  (*See*

Defs.' Mem. in Supp. of Mot. to Dismiss for Lack of Personal Jurisdiction, *Alicea*

Dkt. No. 15-1 (N.D. Tex. Feb. 17, 2017).)

The MDL court denied both motions on June 28, 2017.  (Order Den. Defs.'

Mot. to Vacate Nov. 8, 2016 Order on Bellwether Trials for Lack of Personal

Jurisdiction & Mot. to Dismiss for Lack of Personal Jurisdiction ("Order"), *Alicea*

Dkt. No. 23 (N.D. Tex. June 28, 2017) (App. 1-24).)  It first addressed personal

jurisdiction for pretrial purposes, to which petitioners had not objected.

Specifically, the MDL court held that it had "jurisdiction over nonresident

---

*(cont'd from previous page)*

*Riedhammer v. DePuy Orthopaedics, Inc.*, No. 3:11-cv-02460-K – will not be tried in the Fall.
The tenth case was voluntarily dismissed.

[7]      Citations to "*Alicea* Dkt." are to the district court docket number 3:15-cv-03489-K.  The
parties have been filing generally applicable submissions in all of the New York plaintiffs'
dockets but generally cite only to the *Alicea* docket in referring to such submissions.

defendants to the same extent that a court in the state in which the plaintiff was implanted with the Pinnacle Device would have jurisdiction," again relying exclusively on *Yaz.* (*Id.* at 12, 14 (App. 12, 14).)  The MDL court further emphasized that petitioners had consented to the entry of a direct-file order (*id.* at 14-15 (App. 14-15)), omitting mention of the fact that the direct-file order expressly acknowledges that it does not purport to resolve jurisdictional issues (*see generally id.*; CMO 1 ¶ 17).

Turning to its personal jurisdiction for trial purposes, the MDL court did not resolve which forum's contacts govern, concluding that "even if Texas were the relevant state to analyze this Court's personal jurisdiction," petitioners' objections would nevertheless falter because they "globally waived any and all objections based on venue to trying any of the cases in the MDL in this Court as part of any bellwether trial" and that this waiver extended to personal jurisdiction.  (*See* Order at 19-24 (App. 19-24).)  Pointing to select portions of the Special Master's reports and comments by petitioners' counsel at the September 10, 2013 status conference discussed above, the court concluded that petitioners "clearly and unequivocally represented to this Court on multiple occasions that they waived any objections based on venue to trying any of the cases in the MDL in the Northern District of Texas." (*Id.* at 5-8, 19-20 (App. 5-8, 19-20).)  The court rejected petitioners' repeated contentions that they had only agreed to waivers for the first two trials as

14

not "credibly asserted," accusing them of "[r]etroactively" attempting to limit their waiver.  (*See id.* at 5-9, 19-20 (App. 5-9, 19-20).)  The MDL court specifically found that petitioners "did not limit their waiver to the first two bellwether trials or in any manner when they asserted it" and "did not raise any venue objections relating to the *Aoki* bellwether trial," which "makes clear that they waived all objections based on venue" – apparently forever and for all cases – "regardless of whether cases were transferred under § 1407 or directly-filed."  (*Id.* at 20 (App. 20).)  As a result, the MDL court now intends to try some or all of the New York plaintiffs' claims starting on September 5, 2017.[8]

This petition follows.

## REASONS WHY THE WRIT SHOULD ISSUE

A writ of mandamus is warranted "when the trial court has exceeded its jurisdiction or has declined to exercise it, or when the trial court has so clearly and indisputably abused its discretion as to compel prompt intervention by the appellate court."  *In re Chesson*, 897 F.2d 156, 159 (5th Cir. 1990); *accord In re Avantel, S.A.*, 343 F.3d 311, 317 (5th Cir. 2003).  Mandamus review is an "extraordinary remedy" that is granted "'not as a matter of right, but in the exercise

---

[8]     The court has yet to enter an order selecting a case to be tried, or consolidating any of the cases for a multi-plaintiff trial, although it has made clear that the trial will again involve multiple cases.  In the last two trials, the MDL court made clear – as it has here – that it intended to try multiple cases, but issued its official consolidation order *sua sponte* and on the eve of trial.

of a sound judicial discretion.'"  *S. Pac. Transp. Co. v. San Antonio*, 748 F.2d 266,

270 (5th Cir. 1984) (citation omitted); *accord In re Occidental Petrol. Corp.*, 217

F.3d 293, 295 (5th Cir. 2000).

"[T]he standard governing the availability of mandamus is not 'never,' but

'hardly ever,'" *In re Am. Airlines, Inc.*, 972 F.2d 605, 608 (5th Cir. 1992) (citation

omitted); *accord Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380-81

(2004); *see also In re Reyes*, 814 F.2d 168, 170 (5th Cir. 1987) ("When [a] writ of

mandamus is sought from an appellate court to confine a trial court to a lawful

exercise of its prescribed authority, the court should issue the writ almost as a

matter of course.") (quoting *United States v. Denson*, 603 F.2d 1143, 1145 (5th

Cir. 1979)).

Parties requesting the issuance of a writ of mandamus must satisfy a two-

pronged test in order to be entitled to such relief.  *In re Am. Airlines*, 972 F.2d at

608.  First, petitioners "'carry the "burden of showing that [their] right to issuance

of the writ is" clear and indisputable.'"  *Id.* (alteration in original) (citation

omitted).  Notably, the fact that the issue presented is one "of first impression" to

the Court of Appeals is no bar to mandamus review, especially where the issue

would otherwise evade review and presents a purely legal question regarding the

scope of a district court's discretion.  *See In re Allstate Ins. Co.*, 8 F.3d 219, 220

(5th Cir. 1993).

16

Second, petitioners must show that the district court's error is "not *effectively* reviewable on appeal." *In re Chevron*, 109 F.3d at 1021 (Jones, J., specially concurring); *see also Hebert v. Exxon Corp.*, 953 F.2d 936, 938 (5th Cir. 1992) ("'[P]etitioners must show that they lack adequate alternative means to obtain the relief they seek.'") (citation omitted).  The Court also considers whether granting the writ is "'appropriate under the circumstances.'" *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (en banc) (quoting *Cheney*, 542 U.S. at 380-81).

As set forth below, all of these conditions are satisfied here.

## I.    THE MDL COURT CLEARLY ERRED IN CONCLUDING THAT IT CAN EXERCISE JURISDICTION OVER THE NEW YORK CASES FOR PURPOSES OF TRIAL.

### A.    The MDL Court Cannot Exercise Another Court's Personal Jurisdiction To Try Cases In The MDL Proceeding.

"The primary focus of [the] personal jurisdiction inquiry is the defendant's relationship to the forum State." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1779 (2017).  "In a diversity suit, a federal court has personal jurisdiction over a nonresident defendant to the same extent that a state court in that forum has such jurisdiction." *Wilson v. Belin*, 20 F.3d 644, 646 (5th Cir. 1994).  Thus, a federal court in Texas presiding over a case premised on diversity jurisdiction must look to the nonresident defendant's relevant contacts with Texas (if any) in deciding personal jurisdiction.

While the analysis is different for federal courts overseeing multidistrict litigation, that difference only applies to *pretrial* proceedings:

> Transfers under Section 1407 are simply not encumbered by considerations of in personam jurisdiction and venue. . . . A transfer under Section 1407 is, in essence, a change of venue *for pretrial purposes*. Following a transfer, the transferee judge has all the jurisdiction and powers *over pretrial proceedings* in the actions transferred to him that the transferor judge would have had in the absence of transfer.

*In re FMC Corp. Patent Litig.*, 422 F. Supp. 1163, 1165 (J.P.M.L. 1976) (emphases added).

Nor can the existence of a direct-file order change this result. "As courts of limited jurisdiction, the federal courts possess no warrant to create jurisdictional law of their own"; indeed, the notion that "federal courts should determine their own personal jurisdiction is a proposition fundamentally at odds with our government of separated powers." Point L*anding, Inc. v. Omni Capital Int'l, Ltd., 795 F.2d 415, 423*, 427 (5th Cir. 1986) (en banc) (per curiam) (citation omitted) (holding that a federal court's personal jurisdiction must be established pursuant to "specific congressional authority"), *aff'd sub nom. Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97 (1987), *recognized as abrogated on other grounds*, *Chew v. Dietrich*, 143 F.3d 24, 27 n.3 (2d Cir. 1998).

Presumably for these reasons, although few MDL courts have considered the personal-jurisdiction implications of a direct-file order, *see In re Heartland*

*Payment Sys., Inc. Customer Data Sec. Breach Litig.*, MDL No. 2046, 2011 WL 1232352, at \*4 (S.D. Tex. Mar. 31, 2011) (noting the "unusual" circumstances of having to address these implications), the courts that have considered this question have applied the default rule that the relevant contacts are those with the *forum* in which the case was filed – not the plaintiff's home state. *See id.* at \*3-4; *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 767 F. Supp. 2d 649, 656 n.2 (E.D. La. 2011) ("Here," certain cases involving out-of-state plaintiffs "were filed directly into the Eastern District of Louisiana; thus, the Court is obliged to apply the *law of the Fifth Circuit, which in turn looks to the law of the forum state*, Louisiana, to determine whether the present [personal jurisdiction] motions should be granted.").

The MDL court has previously cited *Yaz* for the contrary proposition, but *Yaz* addresses a different issue:  what *choice-of-law* principles should apply to direct-file cases.  2011 WL 1375011, at \*5.  The *Yaz* court concluded that direct-file cases should be treated "as if they were transferred from a judicial district sitting in the state where the case originated" for choice-of-law purposes.  *Id.* at \*6. It appears that the *Yaz* court's intent was to avoid the "'odd result'" of subjecting plaintiffs to the forum's choice-of-law rules "'simply because they took advantage of the direct filing procedure,'" which was intended to benefit "'all parties and preserve[] judicial resources.'"  *Id.* at \*5 (quoting *In re Bausch & Lomb Inc.*

*Contact Lens Solution Prods. Liab. Litig.*, MDL No. 1785, 2007 WL 3046682, at

*3 (D.S.C. Oct. 11, 2007)).

   *Yaz* did not consider personal jurisdiction, however, and in that context, the

MDL court's approach here produces the "odd result."  As set forth above, it is

clear that the MDL court would lack personal jurisdiction to *try* transferred cases

because an MDL court inherits a transferor court's personal jurisdiction only for

"pretrial proceedings," *FMC Corp.*, 422 F. Supp. at 1165, at the conclusion of

which the cases must be remanded, not tried, *Lexecon*, 523 U.S. at 28.  Allowing a

different result just because a case was direct-filed in the MDL court would

produce the very type of anomaly that the *Yaz* court was trying to avoid and would

also run contrary to Congress's intent that MDL proceedings would encompass

only pretrial matters.  *Lexecon*, 523 U.S. at 28.

   Although the MDL court suggested that petitioners' consent to its direct-file

order should somehow affect the analysis (Order at 14 (App. 14) (purporting to

distinguish *Heartland* on this basis)), the order to which the parties agreed

expressly contemplates that direct-filed cases would be "transfer[red] . . . to a court

of appropriate jurisdiction for trial" upon "completion of all pretrial proceedings."

(CMO 1 ¶ 17.)  In other words, the parties agreed to achieve the exact outcome of

1407 transfer – *and nothing more.*

20

For all of these reasons, the MDL court cannot exercise personal jurisdiction over defendants for purposes of trial.

### B. The MDL Court Clearly Erred In Holding That Petitioners Globally And Permanently Waived Venue And Personal Jurisdiction Objections.

Although the MDL court has sought to circumvent this jurisdictional roadblock by concluding that petitioners "[u]nequivocally" waived their personal jurisdiction and venue objections in perpetuity, that conclusion was erroneous. (*See* Order at 5-9, 19-20 (App. 5-9, 19-20).)  The communications and filings discussed above show that defendants agreed to *Lexecon* waivers for the first and second bellwether trials only; that they have affirmatively asserted that they were not making any such waiver for the current cases; that they timely moved to dismiss plaintiffs' claims for lack of personal jurisdiction in the district court; and that they have never expressed any consent to the trial scheduled for September.

Although this Court has not addressed the showing needed to effect a waiver of personal jurisdiction and venue in the MDL context, other courts have.  The leading case is *Armstrong v. LaSalle Bank National Ass'n*, 552 F.3d 613, 615 (7th Cir. 2009), which affirmed a district court's conclusion that *Lexecon* waiver may be found only where a party "deliberately relinquished a known right," and the waiver is "clear and unambiguous."  *Id.* at 616, 617-19.  In *Armstrong*, the Seventh Circuit emphasized an MDL court's statutory mandate under § 1407 to preside

over pretrial proceedings rather than trial, suggesting that this statutory directive "if anything[,] cautions for a stronger showing of waiver" than in other contexts. *Id.* at 616. And the Seventh Circuit further made clear that because "the presumption is that the case will be remanded at the close of pretrial proceedings," there is "no need for [the parties] to assert their intention to seek such remand in order for the right to exist." *Id.* Turning to the facts, the Seventh Circuit affirmed the district court's rejection of an argument that the plaintiffs had waived their right to remand under § 1407, even though the plaintiffs had participated in extensive pretrial proceedings and even agreed to "specific trial dates." *Id.* at 618. As the court explained, a party's "acquiescence in the establishment of such dates" may serve purposes unrelated to a commitment to try the case in the MDL venue, such as "facilitat[ing] the conclusion of the pretrial stage." *Id.*

This Court has applied similarly strict requirements to allegations that venue rights have been waived in other contexts. In *Northside Iron & Metal Co. v. Dobson & Johnson, Inc.*, for example, the Court held that a national bank waives its rights under the bank venue statute (12 U.S.C. § 94) only by "express declaration," failure "to assert the privilege" when sued in the wrong venue, or by "conduct inconsistent with the assertion of the privilege," and that in any case waiver can be found only where there is "a voluntary and intentional relinquishment or abandonment of the privilege." 480 F.2d 798, 800 (5th Cir.

1973) (citation omitted).  Similarly, in considering whether ambiguous contractual language concerning venue selection constituted waiver of a party's right to remove an action to federal court, the Court has conducted a searching inquiry of the purported agreement to waive, explaining that, where the alleged waiver is "susceptible to more than one reasonable interpretation," the ambiguity "must be construed against the . . . drafter" because ambiguity by definition precludes a finding of a "'clear and unambiguous' waiver." *City of New Orleans v. Municipal Admin. Servs., Inc.*, 376 F.3d 501, 505-06 (5th Cir. 2004).

Under these guiding principles, the MDL court's finding of global waiver as to all 9,300 cases now pending and any cases filed in the future is plainly unsustainable.  As summarized above, petitioners' initial waiver was made in the context of identifying four candidates for an "initial bellwether" process, with no suggestion that any waiver would extend to other cases or otherwise be construed as permanent, universal, or irrevocable.

After the first trial, the "initial bellwether" process was discarded and the MDL court called for a fresh slate of candidates.  The Special Master again sought the parties' waiver – *a superfluous exercise if the initial waiver had truly been global*, as contended by the MDL court – and petitioners expressly consented only to waive venue for the "next round of bellwether cases."  (Email between Seth Roberts and Hon. James Stanton, Dec. 5-8, 2014 (App. 25-28).)  Petitioners agreed

to no further waivers.  This silence as to future waiver was sufficient to preserve their objections to venue and personal jurisdiction since "the presumption is" that MDL courts do not try cases.  *Armstrong*, 552 F.3d at 616.  But petitioners did not rest on silence, instead expressly objecting to both the third trial and the upcoming September trial.

The MDL court's contrary conclusion misreads the record and erroneously construes manufactured ambiguities against petitioners.  As a threshold matter, the MDL court concluded that petitioners had agreed to an extremely broad waiver, one that permits the MDL court to try the claims of non-Texas plaintiffs who had not even filed their cases at the time petitioners agreed to limited *Lexecon* waivers. In fact, *seven of the eight* plaintiffs at issue in this petition commenced their actions *after* the Special Master's report of petitioners' waiver as to the initial bellwether process in January 2013.[9]  Given petitioners' fundamental right to defend trials in courts of proper jurisdiction and venue, a finding of such broad waiver should rest only on the clearest evidence.

Instead, it rests on the thinnest of grounds:  (1) two reports by the Special Master noting that petitioners had agreed to a *Lexecon* waiver, which the MDL

---

[9]     As the cases' docket numbers make clear, six of the eight cases were filed in 2014 or later: *Alicea* (2015); *Barzel* (2016); *Buonaiuto* (2014); *Kirschner* (2016); *Stevens* (2014); and *Stevens* (2014).  *Miura*, the seventh case filed after the Special Master's report, was filed in October 2013.  *See* Compl., *Miura v. DePuy Orthopaedics, Inc.*, No. 3:13-cv-04119-K, Dkt. No. 1 (N.D. Tex. filed Oct. 11, 2013.)

court asserts petitioners "did not limit . . . in any manner"; (2) statements by petitioners' counsel at the September 2013 status conference clarifying that petitioners were not raising a *Lexecon* objection as to the candidates then under consideration for the first bellwether trial; and (3) the fact that petitioners did not raise a *Lexecon* objection prior to the second bellwether trial. (Order at 4-6, 20 (App. 4-6, 20).) None of these things establishes global waiver.

First, the record bars any conclusion that the Special Master's reports demonstrate an intent to waive venue for all future trials. As just discussed, the first report arose in connection with the "initial bellwether" cases called for under CMO 8. And while the Special Master's second report was not expressly limited to a selection of cases for a second trial, the context – including petitioners' express statement to the Special Master that waiver was for the "next round of bellwether cases" – makes clear that no global waiver was intended by petitioners.

Second, as already discussed, petitioners' counsel's statement at the September 2013 status conference merely reaffirmed the waiver that the Special Master had previously reported in connection with selections for the "initial bellwether" process – a process that the MDL court *discarded* after the first trial. Nothing in the statement indicates that any broader waiver was intended – much less a perpetual waiver that would come to embrace *thousands* of cases filed after it was made.

25

Third, the fact that petitioners did not raise an affirmative *Lexecon* objection before the second bellwether trial is irrelevant.  The waiver for the second trial was expressly limited to the "next round of bellwether cases"; there was no need for petitioners to expressly reaffirm their venue rights in future trials because the continuing "presumption" is that cases will not be tried in an MDL proceeding. *Armstrong*, 552 F.3d at 616.  And in light of petitioners' waiver for the second trial, it is nonsensical to fault them for not reversing course and interposing a *Lexecon* objection before that trial – especially since the second trial involved the claims of Texas plaintiffs whose claims were subject to personal jurisdiction in the MDL court.

For all of these reasons, the MDL court clearly erred in concluding that petitioners had clearly and unambiguously manifested an intent to waive venue (and, by extension, personal jurisdiction) in more than 9,300 cases for any future trials.

## II.     THE MDL COURT'S DECISIONS ARE EFFECTIVELY "IRREMEDIABLE" THROUGH REGULAR APPEAL, AND MANDAMUS RELIEF IS ESPECIALLY APPROPRIATE IN LIGHT OF THE BROAD IMPORTANCE OF THE ISSUES PRESENTED.

Mandamus should also issue because the MDL court's conclusion that it may try the New York plaintiffs' cases notwithstanding petitioners' personal-jurisdiction objection will cause petitioners irremediable injury and implicates issues of broad importance – not only to all 9,300-plus cases in this MDL

proceeding, but to *all* MDL proceedings in this Circuit involving the proposed trial of bellwether cases.

First, end-of-case appeal is not an adequate remedy because the cost of having to defend these trials for the opportunity to vindicate personal-jurisdiction rights that are clear at the outset is unjustifiable.[10]  Where these or other substantial harms are presented by a clearly improper exercise of personal jurisdiction, other courts of appeals have granted writs of mandamus.  *See Abelesz v. OTP Bank*, 692 F.3d 638, 653 (7th Cir. 2012) (granting mandamus and noting, among other things, that allowing the case to go forward might put "intense pressure to settle" on the defendants, given their possible damages exposure); *cf. also, e.g.*, *In re Roman Catholic Diocese of Albany, N.Y., Inc.*, 745 F.3d 30, 33 (2d Cir. 2014) (granting mandamus where the "district court's jurisdictional analysis is clearly erroneous" and allowing the suit to go forward would force the defendant to produce "sensitive documents"); *In re Impact Absorbent Techs., Inc.*, 106 F.3d 400, 1996 WL 765327, at *3 (6th Cir. 1996) (unpublished opinion) (granting writ even though "uncorrectable damage may not result if petitioners are forced to wait for a remedy on direct appeal" because "the clearly erroneous nature of the district court's order calls for a more immediate remedy"); *Sunbelt Corp. v. Noble, Denton*

---

[10]    Trials in the MDL proceeding require significant investments by the parties, the MDL court, and jurors; each of the prior three trials lasted between eight and nine weeks.

& *Assocs., Inc.*, 5 F.3d 28, 33 (3d Cir. 1993) (granting mandamus where district court lacked authority to transfer case under 28 U.S.C. § 1404(a) because it did not have personal jurisdiction over defendant).

Second, immediate review of the MDL court's erroneous rulings is "appropriate in this circumstance" because petitioners' right to relief is clear and the petition presents new and important issues that "'have an importance beyond the immediate case.'" *In re Ford Motor Co.*, 591 F.3d 406, 416 (5th Cir. 2009) (quoting *Volkswagen*, 545 F.3d at 319).

As this Court has recognized, review is appropriate where an order "turns on legal questions appropriate for appellate review," *see, e.g.*, *In re Burlington N., Inc.*, 822 F.2d 518, 522-23 (5th Cir. 1987), and the district court "reached a patently erroneous result," *Volkswagen*, 545 F.3d at 319. The MDL court's conclusion that it has personal jurisdiction based on petitioners' alleged global waiver of venue objections fits the bill because it is both "patently erroneous" and presents a legal question going to the heart of an MDL court's authority.

Moreover, the immediate implications of the MDL court's conclusions are unusually broad. This Court has held that mandamus is appropriate when the petition presents an opportunity "to 'settle new and important problems,'" resolution of which "will forestall future error in trial courts, eliminate uncertainty and add importantly to the efficient administration of justice.'" *In re E.E.O.C.*, 709

F.2d 392, 394 (5th Cir. 1983) (citing *Schlagenhauf v. Holder*, 379 U.S. 104, 111

(1964)). Indeed, the "very purpose" of exercising the Court's "'expository and

supervisory functions' . . . is to meet 'the compelling need to settle a new issue so

that it can become only an ordinary issue.'" *Id.* at 395 (citation omitted).

That is the case here. The MDL court's conclusions apply not just to these

eight cases but, presumably, in the vast majority of the *more than 9,300* cases

pending in the MDL proceeding – as well as any others filed in the future. Its

reasoning also has implications for countless others cases in current and future

MDL proceedings in this Circuit. Left unchecked, these rulings would encourage

other MDL courts to stretch their authority to try claims, regardless of the relevant

contacts with the forum or petitioners' consent. The sheer impact of the MDL

court's rulings thus warrants immediate review. And the issues presented, though

clear, are also novel, and afford an important opportunity for this Court to clarify

the law of the Circuit on matters that will recur frequently in MDL litigation. *See,*

*e.g.*, *Ford*, 591 F.3d at 416-17 (granting mandamus where there were "at least two

other similar cases pending in the MDL court that were initially filed in Texas" and

"other suits may be filed in our district courts" raising the same questions);

*Chevron*, 109 F.3d at 1020 (granting mandamus where decision below could affect

3,000 cases).

For all of these reasons, immediate review of the MDL court's personal-jurisdiction and waiver rulings is particularly appropriate.

## **CONCLUSION**

For the foregoing reasons, petitioners respectfully request that this Court issue a writ of mandamus prohibiting the Honorable Ed Kinkeade, Judge of the United States District Court for the Northern District of Texas, from trying plaintiffs' cases because he lacks personal jurisdiction over defendants for trial. Petitioners further request a ruling on the petition in advance of September 5, 2017, the date trial is scheduled to commence.

Respectfully submitted,

*/s/ John H. Beisner*
John H. Beisner
Stephen J. Harburg
Jessica Davidson Miller
Geoffrey M. Wyatt
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
(202) 371-7000

Michael V. Powell
LOCKE LORD LLP
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
(214) 740-8453

*Attorneys for Petitioners*

# **CERTIFICATE OF COMPLIANCE**

1.      This brief complies with the type-volume limitations of Federal Rule

of Appellate Procedure 21(d)(1) because this brief contains 7,142 words.

2.      This brief complies with the typeface requirements of Federal Rule of

Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of

Appellate Procedure 32(a)(6) because this brief has been prepared in a

proportionally spaced typeface using Microsoft Office Word 2010 in 14-point

Times New Roman font.

Date:  July 21, 2017                                    s/John H. Beisner
                                                        JOHN H. BEISNER

## <u>CERTIFICATE OF SERVICE</u>

I certify that the Petition for a Writ of Mandamus was filed with the Court electronically on July 21, 2017, and an electronic copy of the brief were served on the individuals below via electronic mail on the same date.

The Honorable James Edward Kinkeade
United States District Judge
Northern District of Texas
1100 Commerce St # 1625, Dallas, TX 75242

W. Mark Lanier
Michael R. Akselrud
Paul R. Cordella
The Lanier Law Firm, PC
6810 FM 1960 Rd W
Houston, TX 77069-3804
Telephone: (713) 659-5200
Fax: (713) 659-2204
E-mail: wml@lanierlawfirm.com
E-mail: michael.akselrud@lanierlawfirm.com
E-mail: prc@lanierlawfirm.com

Larry Boyd
Wayne Fisher
Justin Presnal
Fisher, Boyd, Brown & Huguenard, LLP
2777 Allen Parkway, Suite 1400
Houston, Texas 77019
Telephone: (713) 400-4000
Fax: (713) 400-4050
E-mail: lboyd@fisherboyd.com
E-mail: wfisher@fisherboyd.com
E-mail: justinp@fisherboyd.com

Richard J. Arsenault
Neblett, Beard & Arsenault
2220 Bonaventure Court
P.O. Box 1190
Alexandria, Louisiana 71301
Telephone: (800) 256-1050
Fax: (318) 561-2591
E-mail: rarsenault@nbalawfirm.com

Jayne Conroy
Laura L. Fitzpatrick
Simmons Hanly Conroy
112 Madison Avenue
New York, NY 10016
Telephone: (212) 784-6402
Fax: (212) 213-5949
E-mail: jconroy@simmonsfirm.com
E-mail: lsingletary@simmonsfirm.com

Thomas J. Preuss
Wagstaff & Cartmell, LLP
4740 Grand Avenue
Suite 300
Kansas City, MO 64112
Telephone: (816) 701-1100
Fax: (816) 531-2372
E-mail: tjpreuss@wcllp.com

Rosemarie Riddel Bogdan
Martin, Harding & Mazzotti, L.L.P.
P.O. Box 15141
Albany, NY 12212-5141
Telephone: (518) 529-1010
E-mail: Rosemarie.Bogdan@1800LAW1010.com

Thomas K. Brown
The Brown Law Firm
Three Riverway
Suite 1775
Houston, TX 77056
Telephone: (713) 400-4020
Fax: (713) 400-4025
E-mail: tom@brownfirm.net

Thomas R. Anapol
Anapol Weiss
One Logan Square
130 N. 18th St. Ste. 1600
Philadelphia, PA 19103
Telephone: (215) 735-1130
E-mail: tanapol@anapolweiss.com

Seth Katz
Burg Simpson Eldredge Hersh & Jardine, P.C.
40 Inverness Drive East
Englewood, CO 80112
Telephone: (303) 792-5595
Email: skatz@burgsimpson.com