# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE-MANUFACTURED
DRYWALL PRODUCTS LIABILITY
LITIGATION                                     MDL NO. 2047

                                               SECTION: L

                                               JUDGE FALLON
                                               MAG. JUDGE WILKINSON

THIS DOCUMENT RELATES TO:
*ALL CASES*
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**THE PLAINTIFFS' STEERING COMMITTEE'S SECOND
SUPPLEMENTAL MEMORANDUM IN FURTHER OPPOSITION
TO DEFENDANTS' SUPPLEMENTAL MOTION ON JURISDICTION
AND CLASS CERTIFICATION FOLLOWING *BRISTOL-MYERS SQUIBB CO. V.
SUPERIOR COURT OF CALIFORNIA, SAN FRANCISCO COUNTY*, FILED
<u>PURSUANT TO THE COURT'S SEPTEMBER 28, 2017 ORDER (REC. DOC. 20992)</u>**

## <u>TABLE OF CONTENTS</u>

Table of Authorities .............................................................................................. ii

I.      INTRODUCTION ........................................................................................1

II.     RELEVANT FACTUAL BACKGROUND...........................................5

III.    THE NONRESIDENT PLAINTIFFS' CLAIMS SATISFY
        THE "ARISE OUT OF OR RELATE TO" PRONG OF THE
        JURISDICTIONAL INQUIRY, AND *GSK* DEMONSTRATES
        THAT WAS UNDISTURBED BY *BMS* ............................................10

        A.      Denial of Certiorari in *GSK* Strongly Counsels Against
                Defendants' Interpretation of *BMS* ........................................10

        B.      Defendants' Targeting of Louisiana, Florida, and Virginia
                (and Other States) for Sales of Their Drywall Established an
                Adequate Link Between Those States and the Claims of
                Nonresident Plaintiffs ...............................................................14

IV.     CLASS ACTIONS AND MASS TORTS SERVE SIMILAR
        PURPOSES BUT ARE DIFFERENT REGARDLESS OF THE
        COMPOSITION OF THE CLASS .......................................................15

V.      NOTHING IN *BMS* BLURRED THE LINES BETWEEN
        MASS TORTS AND CLASS ACTIONS FILED IN FEDERAL
        COURT PURSUANT TO CAFA .......................................................19

VI.     CONCLUSION.............................................................................20

# TABLE OF AUTHORITIES

## Cases

*Atlantic Coast Line R.R. v. Brotherhood of Locomotive Eng'rs*,
   398 U.S. 281 (1970) ............................................................................................ 4

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County, et al.*,
   137 S. Ct. 1773 (2017) .................................................................................... *passim*

*Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*,
   768 F.3d 425 (5th Cir. 2014) .......................................................................... 20

*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*,
   514 F.3d 1063 (10th Cir. 2008) ............................................................ 9, 10, 14

*Evans v. Walter Indus.*,
   449 F.3d 1159 (11th Cir. 2006) ...................................................................... 20

*GlaxoSmithKline LLC v. M. M. ex rel. Meyers*,
   __ S. Ct. __, 2017 WL 1153625 (Oct. 2, 2017) .............................................. *passim*

*Hollinger v. Home State Mut. Ins. Co.*,
   654 F.3d 564 (5th Cir. 2011) .......................................................................... 20

*In re Baldwin-United Corp.*,
   770 F.2d 328 (2d Cir. 1985) ............................................................................ 5

*In re Chinese-Manufactured Drywall Products Liab. Litig.*,
   753 F.3d 521 (5th Cir. 2014) .................................................................. 1, 3, 15

*In re Chinese-Manufactured Drywall Products Liab. Litig.*,
   742 F.3d 576 (5th Cir. 2014) ............................................................................ 5

*In re Chinese-Manufactured Drywall Products Liab. Litig.*,
   706 F. Supp. 2d 655 (E.D. La. 2010) .............................................................. 5

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
   894 F. Supp. 2d 819 (E.D. La. 2012) ...................................................... 1, 3, 15

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
   2017 WL 1476595 (E.D. La. Apr. 21, 2017) ............................................ 1, 17

ii

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
  2017 WL 1421627 (E.D. La. Apr. 21, 2017) ........................................................................ 17

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
  2014 WL 4809520 (E.D. La. Sept. 26, 2014) ................................................................ *passim*

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
  2011 WL 2313866 (E.D. La. Jun. 9, 2011) ........................................................................... 5

*In re Corrugated Container Antitrust Litig.*,
  659 F.2d 1332 (5th Cir. 1981) ............................................................................................ 5

*In re Dental Supplies Antitrust Litig.*,
  2017 WL 4217115 (E.D.N.Y. Sept. 20, 2017) .................................................................... 19

*In re Diet Drugs*,
  282 F.3d 220 (3d Cir. 2002) ................................................................................................ 5

*In re Joint E. & S. Dist. Asbestos Litig.*,
  134 F.R.D. 32 (E.&S.D.N.Y. 1990) ...................................................................................... 5

*In re Monumental Life Ins. Co.*,
  365 F.3d 408 (5th Cir. 2004) ............................................................................................. 17

*Lawrence on Behalf of Lawrence v. Chater*,
  516 U.S. 163 (1996) ..................................................................................................... 12, 13

*M.M. a minor, by and through Audrey Meyers, her mother and Next Friend v.
  GlaxoSmithKline LLC*,
  61 N.E.3d 1026 (Ill. App. Ct. 2016) ............................................................................. 11, 12

*Oldfield v. Pueblo De Bahia Lora, S.A.*,
  558 F.3d 1210 (11th Cir. 2009) ......................................................................................... 10

*Robertson v. Monsanto Co.*,
  287 Fed. App'x 354 (5th Cir. 2008) .............................................................................. 18, 19

*TV Azteca v. Ruiz*,
  490 S.W.3d 29 (Tex. 2016) ................................................................................................ 13

## Statutes and Rules

Pub. L. No. 109-2, 119 Stat. 4 (2005) .................................................................................. 4

Fed. R. Civ. P. 23 ....................................................................................... 4, 15, 16, 18, 19

Federal Rule of Civil Procedure 42 ................................................................. 15

**<u>Other Authorities</u>**

Manual for Complex Litigation, Fourth § 21.222........................................ 16

Manual for Complex Litigation, Fourth § 22.1.......................................... 15

Manual for Complex Litigation, Fourth § 22.7.......................................... 15

S. Rep. No. 109-14............................................................................. 20

## I.     **INTRODUCTION**

The Plaintiffs' Steering Committee ("PSC") submits this Supplemental Memorandum in response to the Court's September 28, 2017 request for additional briefing, "in light of *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County, et al.*, 137 S. Ct. 1773 (2017) [("*BMS*")], on the difference – if any – between mass tort actions and class actions in which every member is a named plaintiff."[1]  The parties have submitted voluminous briefing[2] addressing the impact, if any, that the Supreme Court's *BMS* decision had on the jurisdictional and class certification rulings in this case.[3]  At this point, even Defendants[4] now concede, as they must, that *BMS* did not change the law on personal jurisdiction: "**To be clear, *BMS* was no**

---

[1] Rec. Doc. 20992.  The Court's request is in relation to the Supplemental Motion on Jurisdiction and Class Certification Following *BMS* filed by Defendants CNBM Company ("CNBM"), BNBM (Group) Co. Ltd. ("BNBM Group"), and BNBM PLC ("BNBM") ("Supplemental Jurisdictional Motion").  *See* Rec. Doc. 20882.  These Defendants are collectively referred to herein as the "CNBM-BNBM Defendants."

[2] *See* PSC's Memorandum of Law in Opposition to Defendants' Supplemental Jurisdictional Motion [Rec. Doc. 20935] ("PSC's *BMS* Opposition"); CNBM-BNBM Defendants' Objection to the Court's Order Vacating its § 1292(b) Certification and Request for Expedited Resolution of *BMS* Motion [Rec. Doc. 20943] ("CNBM-BNBM Objection"); PSC's Response to the CNBM-BNBM Objection [Rec. Doc. 20944]; CNBM-BNBM Defendants' Reply Brief in Further Support of their Supplemental Jurisdictional Motion [Rec. Doc. 20956-2] ("CNBM-BNBM *BMS* Reply"); Taishan's Reply Brief in Support of the Supplemental Jurisdictional Motion [Rec. Doc. 20955-2] ("Taishan *BMS* Reply"); CNBM-BNBM Defendants' Supplemental Brief Addressing *In re Depuy Orthopaedics, Inc.* [Rec. Doc. 20997] ("CNBM-BNBM *Depuy* Brief"); Defendants Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd.'s (collectively, "Taishan") Supplemental Brief in Support of the Supplemental Jurisdictional Motion [Rec. Doc. 20996] ("Taishan *Depuy* Brief"); PSC's Supplemental Memorandum Addressing *In re Depuy Orthopaedics, Inc.* [Rec. Doc. 21000] ("PSC *Depuy* Brief").

[3] *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 894 F. Supp. 2d 819 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014) & 753 F.3d 521 (5th Cir. 2014); *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2017 WL 1476595 (E.D. La. Apr. 21, 2017) (Class Damages Order & Reasons); Rec. Doc. 20910 (Order & Reasons denying 1292(b) motions to certify Class Damages and Decertification Orders for immediate appeal); Rec. Doc. 20739 (finding jurisdiction over CNBM-BNBM Defendants); Rec. Doc. 20740 (Decertification Order).

[4] The CNBM-BNBM Defendants and Taishan will be referred to herein collectively as "Defendants."

**watershed moment in personal jurisdiction jurisprudence.  An eight-Justice-majority recognized that the Court's 'settled principles regarding specific jurisdiction jurisprudence control th[e] case.'**[5]

Simply saying *BMS* did not change the law does little to illustrate what that means for this case because Defendants still argue that some aspect of *BMS* somehow requires this Court to revisit its prior jurisdictional and class certification rulings.  Defendants, whether they call it creating new law or clarifying the existing law, have repeatedly argued that the Supreme Court in *BMS* articulated ***the*** governing standard for the "arise out of or relate to" prong of the specific jurisdiction analysis and, in their view, the standard is strict and narrow.  In truth, the Supreme Court did not ***create, articulate, or clarify*** any governing standards for "relatedness" but instead ***rejected*** the most lenient of standards finding it did not comport with Due Process (*e.g.*, California's sliding-scale approach).  As the Supreme Court's actions this week (and since *BMS*) make clear, standards governing "relatedness" in other courts, including the Fifth Circuit, remain viable post-*BMS*.

Defendants nevertheless persist in their attempt to dismiss nonresident Plaintiffs' Chinese drywall claims on the grounds that the *Amorin* class definition "is limited to named plaintiffs only."[6]  The *Amorin* class has five named class representative couples who own properties containing Taishan's Chinese drywall in Florida, Louisiana, Virginia, and Georgia.  These Plaintiffs represent a class of homeowners who are named in one or more of the *Amorin* actions

---

[5] *See*, *e.g.*, CNBM-BNBM *Deputy* Brief at 2 (emphasis added) (alteration in CNBM-BNBM *Deputy* Brief); *see also* Taishan *BMS* Reply at 1 (acknowledging that *BMS* did not create new law while arguing somehow it was still a "game-changer").

[6] *See* CNBM-BNBM *BMS* Reply at 21.

2

filed in Louisiana, Virginia, and Florida, *Wiltz*, *Gross*, or *Germano*. More than 90% of the class resides in one of the three jurisdictions – *i.e.*, Louisiana, Virginia, and Florida – specifically and purposefully targeted by Taishan for sales of its drywall. Each of those jurisdictions sustained jurisdictional challenges and were found to have been targeted by Taishan.[7] The complaints at issue were multistate class actions with named Plaintiffs from multiple jurisdictions. The fact that all of the *Amorin* class members may be identified is not addressed by *BMS* and in no way alters the personal jurisdictional analysis.

Class actions and mass torts are different vehicles for aggregating claims that, among other things, are governed by different standards; impose different obligations on counsel, the court and the parties; have different jurisdictional elements and notice obligations; and have different methods of reaching resolution. Despite Defendants' recent assertions, there is nothing in *BMS* that changes the differing characteristics of these distinct actions simply because the class definition at the time the class is certified references only plaintiffs who have been named in the underlying pending actions.

To fully understand why *BMS* does not affect this analysis and why the Court's and the Fifth Circuit's prior jurisdictional rulings must stand, there are a number of important issues that must be discussed:

- Just this week, events in the Supreme Court clarified the narrow scope of *BMS* when the Supreme Court let stand the finding of specific jurisdiction in a pharmaceutical products liability action like *BMS*, where nonresident plaintiffs made claims in Illinois state court against a defendant that resides in either New Jersey or Delaware. *See GlaxoSmithKline LLC v. M. M. ex rel. Meyers*, __ S. Ct. __, 2017 WL 1153625 (Oct. 2, 2017) (denying certiorari, 61 N.E.3d 1026, 1029-30 (Ill. App. Ct. 2016)) ("*GSK*");

---

[7] *See Chinese Drywall*, 894 F. Supp. 2d 819; *Chinese Drywall*, 742 F.3d 576; *Chinese Drywall*, 753 F.3d 521.

3

- *GSK* illustrates that (1) *BMS* was limited to a finding that the most lenient test used by some Circuits to address the "arise out of or relate to" prong of the specific jurisdiction analysis was unacceptable, and (2) the methods used by other courts, including the Fifth Circuit, to assess relatedness in the specific jurisdiction analysis remain intact after *BMS*;

- The nonresident Plaintiffs' claims satisfy the "arise out of or relate to" prong under any of the appropriate jurisdictional tests because Defendants' targeting of Louisiana, Florida, and Virginia (and other states) for sales of their drywall, where the drywall then flowed *via* distributors from those states to neighboring states, establishes an adequate link between the Defendants' forum contacts and the nonresident Plaintiffs' claims;

- The *Amorin* class actions, along with other Omni class actions, began as typical class actions filed in federal court under Rule 23 and CAFA[8] with absent class members and named class representatives (albeit many). These cases evolved, after Taishan deliberately fled this Court's jurisdiction and was in contempt of court, civilly and criminally, at the time of the certification of the *Amorin* class, to the point where all of the members of the *Amorin* class were identifiable as having sued Taishan in this litigation, for purposes of calculating class-wide damages;

- Even though the *Amorin* class definition refers specifically to Plaintiffs who have been named in the various complaints, *Amorin* is still a representative class action with only five named class representatives; and

- Defendants have still not explained why the Supreme Court would render years of Rule 23 jurisprudence meaningless and would render CAFA's main purpose useless without expressing such intent. In fact, under Defendants' overly broad reading of *BMS*, this Court would not have had jurisdiction to certify the settlement class in the Knauf action, and even though *BMS* was applying well-settled law, the Fifth Circuit apparently overlooked that law in its previous rulings here.[9]

---

[8] Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (2005) ("CAFA").

[9] Importantly, CAFA jurisdiction and Rule 23 not only allowed Knauf to settle claims with a nationwide class of litigants but also allowed, through the vehicle of the very same Omni complaints, the low-hanging fruit Defendants in the stream of commerce – namely, Banner, InEx, L&W, and hundreds of Builders, Installers, Suppliers, and their insurers – to reach class settlements with absent class members from multiple jurisdictions. Rule 23, CAFA, and cooperative Defendants led to more than $1.1 billion in relief for thousands of homeowners, while the recalcitrant Chinese Defendants for eight-plus years have attempted to game our legal system, creating a man-made disaster that has left thousands of Taishan Plaintiffs without proper repairs to their homes. The utility of multistate class actions has even led numerous federal courts overseeing settlement classes to employ All Writs Act jurisprudence against out-of-state Plaintiffs pursuing overlapping and/or competing class actions in state court. *E.g.*, *Atlantic Coast*

For those reasons, as more fully explained below, the PSC believes that the Court should affirm its prior jurisdictional and class certification rulings and deny Defendants' Supplemental Jurisdictional Motion.

## II.   RELEVANT FACTUAL BACKGROUND

Prior to the formation of this MDL, on May 1, 2009, the *Germano* Plaintiffs filed a class action suit in the United States District Court for the Eastern District of Virginia on behalf of themselves and all other similarly situated Virginia owners and tenants alleging damages from Taishan's Chinese drywall installed in their homes.[10]   This action was transferred to MDL 2047 in October 2009,[11] and the class was expanded from a Virginia state class to a national class.[12] Because Taishan refused to answer the *Germano* complaint, a default judgment was entered against Taishan on behalf of seven bellwether Plaintiffs.[13]

Early in the litigation, in October 2009, when the identity of Chinese drywall manufacturers was indeterminate, the PSC filed directly in the MDL the *Gross* class action,

---

*Line R.R. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 295 (1970); *In re Baldwin-United Corp.*, 770 F.2d 328, 337 (2d Cir. 1985); *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1332, 1334 (5th Cir. 1981), *cert. denied*, 456 U.S. 936 (1982); *In re Joint E. & S. Dist. Asbestos Litig.*, 134 F.R.D. 32, 37 (E.&S.D.N.Y. 1990); *In re Diet Drugs*, 282 F.3d 220, 235 (3d Cir. 2002); *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2011 WL 2313866 (E.D. La. Jun. 9, 2011) ("The All Writs Act confers MDL transferee courts the power to enjoin conflicting state court proceedings when the injunction comports with an exception under the Anti–Indemnity Act.").

[10] *See In re Chinese-Manufactured Drywall Products Liab. Litig.*, 706 F. Supp. 2d 655, 659 (E.D. La. 2010).

[11] *Germano, et al. v. Taishan Gypsum Co., Ltd., et al.*, No. 09-6687 (E.D. Va.).

[12] *See* Rec. Doc. 396.

[13] *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2010 WL 1445684 (E.D. La. Apr. 8, 2010).

which named class representatives David and Cheryl Gross and Louis Velez, suing individually and on behalf of absent class members similarly situated.[14]  This class action included all Plaintiffs who "owned, own, or acquired homes, residences, or other structures physically located in the United States containing defective drywall that was designed, manufactured, exported, imported, distributed, delivered, supplied, marketed, or sold by" any of the dozens of named manufacturer Defendants based on a market share alternative theory of liability.[15]  Numerous additional Plaintiffs later intervened in *Gross*.[16]  Defendants did not answer the *Gross* complaint, and default judgments were entered.[17]  This case remains in the MDL.

Later, in February 2010, the PSC filed directly in the MDL the *Wiltz* Omnibus class action naming thousands of Plaintiffs on a single complaint in order to satisfy CAFA jurisdiction.[18]  Again, the Defendants refused to answer this complaint, opting instead to observe with their American lawyers representing them the proceedings from China while relying on the lack of a U.S.-China treaty to enforce judgments obtained in this country.  The named representatives in *Wiltz* sued BNBM and other distributor, supplier, importer, exporter, broker, builder, developer, contractor, and installer Defendants individually and on behalf of absent class

---

[14] *Gross, et al. v. Knauf Gips, KG, et al.*, No. 09-6690 (E.D. La.) (original complaint, Omnibus III, III(A)).

[15] *Gross* Amended Complaint [Rec. Doc. 366] at 1.

[16] Rec. Doc. 1712; Rec. Doc. 1776; Rec. Doc. 2187.

[17] *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2014 WL 4809520, *2 (E.D. La. Sept. 26, 2014).

[18] *Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al.*, No. 10-361 (E.D. La.) (Omnibus II, II(A), II(B), II(C)).

6

member Plaintiffs similarly situated.  Defendants refused to answer the *Wiltz* complaint and allowed default judgments to be entered against them.[19]

During the jurisdictional briefing that occurred from 2010-2012, after the *Germano* judgment was entered and Taishan entered an appearance in these proceedings solely to contest jurisdiction, the PSC filed the *Amorin* class action complaints in Louisiana, Florida, and Virginia, as protective actions designed to perfect claims against Taishan as well as other related entities such as BNBM and CNBM.[20]  *Amorin* included all Plaintiffs who previously had been named on an Omni complaint.  The Defendants continued to hide in China, and defaults were taken in *Amorin*.[21]

The PSC also filed the *Abner* class action in California federal court, for the same reasons.[22]

Following entry of the Contempt Order and Injunction against Taishan in July 2014,[23] for refusing to appear for a judgment debtor examination in connection with the affirmance of the *Germano* judgment by the Fifth Circuit Court of Appeals,[24] and certification of the *Amorin* class

---

[19] *Id.*

[20] *Amorin, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, No. 11-1672 (Omnibus XV) (*Amorin* (Fla.)); *Amorin, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, No. 11-1395 (Omnibus XVI) (*Amorin* (La.)); *Amorin, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, No. 11-1673 (Omnibus XVII) (*Amorin* (Va.)).

[21] *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2014 WL 4809520, *2 (E.D. La. Sept. 26, 2014).

[22] *Abner, et al. v. Taishan Gypsum Co., Ltd., et al.*, No. 11-3094.

[23] Rec. Doc. 17869.

[24] *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 742 F.3d 576 (5th Cir. 2014).

in September 2014,[25] the PSC filed the *Brooke* class actions in Louisiana, Florida, and Virginia naming additional Plaintiffs with claims against Taishan.[26]  Around the time that the *Brooke* actions were filed and the *Amorin* class-wide damages hearing was set to begin in February 2015, Taishan reentered the litigation, and the CNBM-BNBM Defendants entered their appearances for the first time.  As the PSC set forth in its End Game Proposal, although *Brooke* is a putative class action, the PSC is prepared to have the *Brooke* cases remanded following discovery.[27]

With regard to the Court's question "on the difference – if any – between mass tort actions and class actions in which every member is a named plaintiff," it is important to note that the *Amorin* class certified by the Court has five named representative plaintiff couples:  (1) Eduardo and Carmen Amorin, who are participants in *Wiltz, Gross, Abel,* and each of the *Amorin* complaints and who own a property in Florida; (2) Albert and Betsy Butzer, who are participants in *Haya* and each of the *Amorin* complaints and who own a property in Virginia; (3) Jack and Anna McGinn, who are participants in *Wiltz* and each of the *Amorin* complaints and who own a property in Virginia; (4) Thomas and Virginia Spencer, who are participants in *Wiltz, Almeroth,* and each of the *Amorin* complaints and who own a property in Georgia; and (5) Elliot and

---

[25] *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, MDL No. 2047, 2014 WL 4809520, at *16 (E.D. La. Sept. 26, 2014).

[26] *Brooke, et al. v. The State-Owned Assets Supervision and Administration Commission of the State Council, et al.*, No. 15-4127 (La.); *Brooke, et al. v. The State-Owned Assets Supervision and Administration Commission of the State Council, et al.*, No. 15-6631 (Fla.); *Brooke, et al. v. The State-Owned Assets Supervision and Administration Commission of the State Council, et al.*, No. 15-6632 (Va.).

[27] *See* Rec. Doc. 20913 at 25-26.

Angelina Everard, who are participants in *Gross, Abel,* and each of the *Amorin* complaints and who own a property in Louisiana.[28]  The *Amorin* class as defined includes:  "All owners of real properties in the United States, who are named Plaintiffs on the complaints in *Amorin, Germano, Gross*, and/or *Wiltz* (*i.e.,* not an absent class member), asserting claims for remediated damages arising from, or otherwise related to Chinese Drywall manufactured, sold, distributed, supplied, marketed, inspected, imported or delivered by the Taishan Defendants."[29]  The identity of each class member in *Amorin* is known, as was the case with the Knauf Settlement Class.

All of the *Amorin* class members and the Plaintiffs in the purported *Brooke* class satisfy the Fifth Circuit's relatedness inquiry as a result of the Defendants' targeting of distributors in Louisiana, Virginia, and Florida to distribute their products throughout the United States and in particular to the contiguous states in the southeast that were also severely impacted by Hurricanes Katrina and Rita.  The drywall in the nonresidents' homes flowed through these states.[30]  As then-Circuit Judge Gorsuch wrote in *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1078 (10th Cir. 2008) (internal citations omitted) (Gorsuch, J.), while addressing the relatedness aspect of the specific jurisdiction analysis, "[s]pecific jurisdiction . . . is premised on something of a *quid pro quo*: in exchange for 'benefitting' from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims

---

[28] *Id.*

[29] *Id.* at *16.

[30] Defendants' targeting of Louisiana, Florida, and Virginia also targeted contiguous states such as Alabama, Mississippi, North Carolina, etc.  Obviously, distributors in Louisiana, Florida, and Virginia sent Defendants' products to states other than their own locales.  We do not have walls between our states.

9

related to those contacts.'"  *Id.*  Defendants' business of selling Chinese drywall clearly

benefitted from their sales of millions of square feet of drywall to customers in Louisiana,

Florida, and Virginia (as well as other states), and, accordingly, these Defendants may be

deemed to have consented to jurisdiction arising from claims related to the distribution of their

defective products, which were installed in Plaintiffs' homes.

### III.   THE NONRESIDENT PLAINTIFFS' CLAIMS SATISFY THE "ARISE OUT OF OR RELATE TO" PRONG OF THE JURISDICTIONAL INQUIRY, AND *GSK* DEMONSTRATES THAT WAS UNDISTURBED BY *BMS*

#### A.   Denial of Certiorari in *GSK* Strongly Counsels Against Defendants' Interpretation of *BMS*

Understanding the difference between *GSK* and *BMS* is the key to understanding why

Defendants' arguments on jurisdiction fail in this case.  There is no clearly articulated test for the

"relatedness" prong of the specific jurisdiction inquiry.  *See Oldfield v. Pueblo De Bahia Lora,*

*S.A.*, 558 F.3d 1210, 1222 (11th Cir. 2009).  Different courts have formulated different

approaches and the three main approaches that have generally been used are: (1) a "but-for" test

(where "any event in the causal chain leading to the plaintiff's injury is sufficiently related to the

claim to support the exercise of specific jurisdiction"); (2) a "proximate cause" test (requiring

courts to "examine whether any of the defendant's contacts with the forum are relevant to the

merits of the plaintiff's claim"); and (3) a "substantial connection" or "discernible relationship"

test ("[u]nder this theory, the relationship between the contacts and the suit can be weaker when

the contacts themselves are more extensive").  *See Dudnikov*, 514 F.3d at 1078 (internal citations

omitted) (Gorsuch, J.).  In *BMS*, the Supreme Court rejected the "sliding scale" approach applied

by the California state court, which appeared even more liberal than the "substantial connection"

test.  *See BMS*, 137 S. Ct. at 1778-79.  A few months later, the Supreme Court was asked in *GSK*

10

to review the state court finding of specific jurisdiction that applied what Petitioners in *GSK* argued was the "but-for" test.[31]   According to Petitioners, "*BMS* did not resolve the but-for vs. proximate causation split."[32]

*GSK* involved facts nearly identical to *BMS*.  The action involved state law claims brought on behalf of children who were born with birth defects that were allegedly caused by GlaxoSmithKline's ("Glaxo") drug Paxil when those children's mothers (also plaintiffs) ingested Paxil while pregnant.  *See M.M. a minor, by and through Audrey Meyers, her mother and Next Friend v. GlaxoSmithKline LLC*, 61 N.E.3d 1026, 1029-30 (Ill. App. Ct. 2016).  The forum state was Illinois; plaintiffs were from various jurisdictions including Illinois, Florida, Colorado, Virginia, Michigan and Wisconsin; and defendant's state of incorporation, principal place of business and/or headquarters were either in Delaware or New Jersey.  *See id.* at 1030.  The parties' arguments focused on the "arising out of or relates to" prong of the specific jurisdiction inquiry just as the arguments had in *BMS*.  *See id.* at 1040 (Glaxo conceded purposeful contacts).

As part of their claim, plaintiffs alleged that Glaxo mishandled the Paxil clinical trials because they failed to track patients to determine if they became pregnant.  *See id.* at 1032.  The contacts upon which the "arise out of or relate to" prong was evaluated were Glaxo's conduct of 18 to 21 clinical trials in Illinois and the fact that the data from those trials was aggregated with data from other trials.  *See id.* at 1037.  Defendant argued there was no meaningful link between the forum and the plaintiffs' claims because only 17 out of 361 Paxil trials took place in Illinois,

---

[31] *See* Petitioner's Supplemental Brief (attached hereto as Exhibit "A") at 5; *see also* Reply to Supplemental Brief (attached hereto as Exhibit "B").

[32] *Id.*

only 100 of the 4,272 clinical trial patients that took Paxil were in Illinois, the clinical trials took

place across 44 states and foreign countries, and the plaintiffs did not allege that any of the 18

known pregnancies that occurred during the Paxil clinical trials occurred in Illinois, and further,

the plaintiffs did not allege that Glaxo made important decisions regarding the clinical trials in

Illinois. *See id*. at 1033, 1041.  The Illinois Appellate Court found, nevertheless, that these

contacts were sufficient using what appeared to be a "but for" analysis of relatedness and

measuring it against the "'lenient and flexible' 'arising from' and 'related to' standard." *Id*. at

1038.  Glaxo appealed, and the Illinois Supreme Court declined to hear the appeal.  *See* 65

N.E.3d 842 (Table) (Ill. Nov. 23, 2016).

On March 23, 2017, Glaxo filed a petition for a writ of certiorari, and after briefing was

complete, *BMS* was decided.  Subsequently, the parties filed supplemental briefing regarding

*BMS*.[33]  On October 2, 2017, the Supreme Court denied certiorari in *GSK*.  In so doing, the fact

that the Court did not grant, vacate and remand ("GVR") is instructive.  As the Supreme Court

has explained: "In an appropriate case, a GVR order conserves the scarce resources of th[e]

Court that might otherwise be expended on plenary consideration, assists the court below by

flagging a particular issue that it does not appear to have fully considered, assists th[e] Court by

procuring the benefit of the lower court's insight before [the Court] rule[s] on the merits, and

alleviates the '[p]otential for unequal treatment' that is inherent in [the Court's] inability to grant

plenary review of all pending cases raising similar issues." *Lawrence on Behalf of Lawrence v.

Chater*, 516 U.S. 163, 167 (1996).  GVR orders are considered appropriate when "intervening

developments, or recent developments that [the Supreme Court] ha[s] reason to believe the court

---

[33] *See* Exhibits A & B hereto.

below did not fully consider, reveal a reasonable probability that the decision below rests upon a premise that the lower court would reject if given the opportunity for further consideration, and where it appears that such a redetermination may determine the ultimate outcome of the litigation." *Id*. at 167.  *GSK* would have been ripe for a GVR order considering its factual similarities to *BMS* and the fact that the *BMS* decision came down right after the original Supreme Court briefing on the certiorari petition in *GSK* had been completed.[34]

Had *BMS* created, articulated, or clarified a standard for "relatedness," *GSK* would have been perfect for a GVR order because a remand to the Illinois Appellate Court would have given them the opportunity to consider intervening precedent, *BMS*, before the Supreme Court heard review.  *See Lawrence on Behalf of Lawrence*, 516 U.S. at 167.  Instead, *GSK* illustrates that *BMS* merely rejected the "sliding scale" approach and that other methods of assessing "relatedness," including the "but for" test used in *GSK*, survive *BMS*.[35]  As the Fifth Circuit

---

[34] Indeed, this makes it crystal clear that the *BMS* Court did not change the law or create the horribles some might think it created.  *BMS*, 137 S. Ct. at 1783 ("Our straightforward application in this case of settled principles of personal jurisdiction will not result in the parade of horribles that respondents conjure up.").

[35] Further support for what the Supreme Court believed it did in *BMS* can be found in the denial of certiorari in *TV Azteca v. Ruiz*, 490 S.W.3d 29, 34 (Tex. 2016), *cert. denied*, 137 S. Ct. 2290 (2017).  There, TV Azteca, whose petition for certiorari was pending when the Supreme Court heard *BMS*, specifically asked the Supreme Court to issue a GVR in light of what it was expected to do in *BMS* and filed an amicus brief in *BMS* that explained the two cases' similarities.  *TV Azteca* involved a Mexican national living in Texas who sued the Mexican broadcaster and producer in Texas on claims of defamation from a Spanish-language program that aired in Mexico.  While the Texas Supreme Court held that the availability of the broadcasts over the air in Texas by themselves were not enough to impart personal jurisdiction over the foreign Mexican defendants in Texas, that in combination with the television station's substantial and successful solicitation of advertising in the state of Texas and the benefits derived from the fact that the television signals travel into Texas, as well as additional efforts to promote their broadcasts and expand their Texas audience, satisfied the Due Process requirements for personal jurisdiction.  *Id*. at 51-52 ("whether Petitioners intentionally directed the signals into Texas or not, we must look for evidence that each of the Petitioners took specific and substantial actions to take advantage of the fact that the signals reach into Texas and to financially benefit from that fact. We conclude such evidence exists.").  The Supreme Court denied certiorari in *TV Azteca* on June 26, 2017,

never adopted a test similar to the "sliding scale" approach rejected in *BMS*, the methods applied by the Fifth Circuit in its prior jurisdictional analysis in this very case were left untouched by *BMS*.

> **B. Defendants' Targeting of Louisiana, Florida, and Virginia (and Other States) for Sales of Their Drywall Established an Adequate Link Between Those States and the Claims of Nonresident Plaintiffs**

The PSC has discussed at length how the Defendants targeted Louisiana, Florida, and Virginia to market their drywall to customers in the United States, predominately in the Gulf States and along the East Coast of the United States post-Katrina.[36]  There is no need to repeat those facts here.  Having been the conduit for the Defendants' sales of drywall to the southeastern United States, Louisiana (where *Amorin* (La.) was filed) falls directly into the pure essence of the *quid pro quo* discussed by then-Circuit Judge Gorsuch where he said "in exchange for 'benefitting' from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts."  *Dudnikov*, 514 F.3d at 1078.  Not only does the connection between the forum and the claims in this case far exceed the facts of *BMS*, the contacts have already satisfied Due Process and governing Fifth Circuit standards, and would satisfy the more clearly delineated "but for" test (but for Defendants' aggressive targeting of the forum state, none of the Plaintiffs would have received the Chinese

---

including the request for a GVR, which was one week after it handed down its decision in *BMS*.  Like the *GSK* case, *TV Azteca* demonstrates that the Supreme Court has not adopted the extreme relatedness requirements that Defendants urge upon this Court.  Moreover, the connection between Taishan's conduct and the claims before this Court are even more substantial than those which were sufficient in *TV Azteca*.

[36] *See*, *e.g.*, PSC's *Deputy* Brief at 8-9; PSC's Global Statement of Facts in Opposition to: (1) Taishan's Renewed Motions to Vacate the Default Judgments and Dismiss the Complaints in *Germano* and *Mitchell* and (2) Taishan's Motions to Dismiss the Complaints in *Gross* and *Wiltz*, at pp. 30 through 50, and Affidavit of Russ M. Herman dated 5/8/2012, attaching 202 Exhibits, filed manually [Rec. Doc. 14215].

drywall that ended up in their homes) as well as the "proximate cause" test (the merits of all Plaintiffs' claims are inextricably intertwined with the Defendants' targeting of the forum for its distribution of drywall).[37]

## IV.   CLASS ACTIONS AND MASS TORTS SERVE SIMILAR PURPOSES BUT ARE DIFFERENT REGARDLESS OF THE COMPOSITION OF THE CLASS

When faced with massive numbers of claims with overlapping issues where efficiencies can be gained by resolving common issues together, attorneys and courts are faced with choices regarding how to aggregate those claims.  There are various mechanisms for aggregating these claims including filing a class action, intradistrict consolidation under Federal Rule of Civil Procedure 42, MDL transfers, and the assembling of tort claims that automatically accompanies a bankruptcy filing.  *See, e.g.*, Manual for Complex Litigation, Fourth § 22.1, *et seq.* (2015).  For a case to qualify for class action treatment, it needs to meet the well-established Due Process standards for class certification under Rule 23 – numerosity, commonality, typicality, adequacy of representation, predominance and superiority.  *See* Fed. R. Civ. P. 23(a)&(b).  Often, mass torts cannot qualify for class action treatment because they are unable to satisfy these standards and at other times, actions can begin as a mass tort but ultimately be resolved as a class action in the settlement context because in that context, manageability concerns are alleviated.  *See, e.g.*, Manual for Complex Litigation, Fourth § 22.7 (discussing turning mass torts into class actions in the settlement context).

---

[37] While the discussion here refers to Louisiana as the current forum state, the analysis applies with equal force to Virginia and Florida where Defendants significantly targeted distributors in those states for sales of their drywall.  *See Chinese Drywall*, 894 F. Supp. 2d 819; *Chinese Drywall*, 742 F.3d 576; *Chinese Drywall*, 753 F.3d 521.

The result of meeting the criteria of Rule 23 is that key issues can be addressed globally without individualized treatment, while in a pure mass tort case the cases retain their individual stature and are resolved ultimately with an individual trial.

When a class is certified, all class members are brought into a single "action" with real consequences.  Class members can still choose to go it alone in a separate action or in a separate forum by opting out of the class but absent taking that affirmative step, they are part of the single action and that remains true whether they had pre-existing lawsuits or other actions pending before any court.  While various factors such as class definition, previous lawsuits, lawsuits pending in other forums, etc. may be relevant to a determination of whether a class can be certified, once a class is certified, all class members who do not opt out are subject to the jurisdiction of the certifying court for *res judicata* purposes.  Therefore, class definition "is of critical importance because it identifies the persons (1) entitled to relief, (2) bound by a final judgment, and (3) entitled under Rule 23(c)(2) to the 'best notice practicable' in a Rule 23(b)(3) action."  *See*, *e.g*., Manual for Complex Litigation, Fourth § 21.222.  None of these characteristics of a class change based upon whether or not the class definition includes absent class members.

As discussed above, when the *Amorin* actions were filed, they were class actions with named representatives and absent class members intended to preserve claims for numerous homeowners and assert claims against more than 1,650 Defendants.[38] As the case progressed, developments such as the resolution of claims against hundreds of builders and insurers and the Defendants' decision to abandon the litigation caused the class definition to change.  It is well-

---

[38] *See* Relevant Factual Background, Section II, *supra*.

settled that a class definition can be amended and tailored as the facts of the case dictate. *See*, *e.g.*, *In re Monumental Life Ins. Co.*, 365 F.3d 408, 414 (5th Cir. 2004) ("[H]olding plaintiffs to the plain language of their definition would ignore the ongoing refinement and give-and-take inherent in class action litigation, particularly in the formation of a workable class definition. District courts are permitted to limit or modify class definitions to provide the necessary precision."). Despite the narrowing of the class definition, the status of *Amorin* as a representative action remains as it involves five named class representatives. Defendants confuse the notion of class representatives and class definition.

Here, when Taishan fled the jurisdiction of this Court after jurisdiction over Taishan was firmly established, the most procedurally sound manner to recover judgments on behalf of the injured homeowners impacted by Defendants' tortious conduct was to meet the standards of class certification and prove damages on their behalf.[39] The alternative was to have thousands of individualized trials, which would have been overwhelming for the judicial system and was unnecessary because the PSC's expert was able to establish an effective class-wide damages formula.[40] In fact, this Court recently reiterated that "in light of the complex nature of this case

---

[39] This procedure for obtaining a judgment seemed the only way to bring these wayward Defendants into the litigation, and indeed it worked. Defendants have focused much of the theme of their briefing on the jurisdictional "confusion" being caused by the procedures used by the PSC to aggregate the Plaintiffs' claims. *See*, *e.g.*, Supplemental Jurisdictional Motion at 1; CNBM-BNBM *Depuy* Brief at 1-2, 11; Taishan *BMS* Brief at 1. However, Defendants ignore that much of the procedural choices made by the PSC were necessitated by Defendants' conscious decision to flout the United State judicial system and abandon the litigation in order to avoid paying the *Germano* judgment. Attempting to vindicate the rights of thousands of injured homeowners and obtain contribution from thousands of builder and insurer Defendants was a monumental task and one that was handled ably by the PSC. None of those conditions alters the rules of personal jurisdiction but they certainly explain why a complex and unique case was handled in unique ways to maximize an expeditious and efficient resolution to the litigation while minimizing the burdens on our judicial system.

[40] *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, MDL No. 2047, 2017 WL 1421627, at *15-16 (E.D. La. Apr. 21, 2017) (approving class-wide damages formula).

and extensive history of the litigation, a class action is the superior mechanism for resolving the[]
[Plaintiffs'] claims."[41]

Without support, Defendants have argued that as the *Amorin* class is now defined, the
class is "unique, and unlawful" because it "include[es] only already-known and specifically-
named plaintiffs."[42]  Defendants cite *Robertson v. Monsanto Co*., 287 Fed. App'x 354 (5th Cir.
2008) and in typical fashion liberally utilize altered quotations to misstate the case.[43]  *Robertson*
does not say that a class with no absent class members is unlawful or not allowed.  *See id.* at 361-
62.  In truth, the Fifth Circuit in *Robertson* only found the fact that the class contained only
named plaintiffs "significant to the superiority analysis ***when considered in conjunction with the
fact*** that the district court granted summary judgment in favor of the plaintiffs within the odor
plume on the issue of liability before the class was certified."  *Id.* at 361-62 (emphasis added).  If
classes without absent class members were impermissible, this fact would not have needed to be
considered in conjunction with any other fact.

Indeed, it was not the determinative factor in the court's finding that the proposed class
did not meet the superiority requirement.  *Id.*  Superiority "asks whether 'a class action is
superior to other available methods for fairly and efficiently adjudicating the controversy.'"  *Id.*
at 361 (quoting Fed. R. Civ. P. 23(b)(3)).  The court found that because the class contained only
named plaintiffs and liability had been established by summary judgment as to each plaintiff
prior to class certification, there were no gains that could be made by proceeding on a class-wide

---

[41] Order & Reasons denying Defendants' 1292(b) motions to certify the Court's Class Damages and
Decertification Orders for interlocutory appeal, at 13 [Rec. Doc. 20910].

[42] Rec. Doc. 20882-1 at 3 n.2.

[43] *Id.*

basis with respect to liability.  *Id*. at 362.  More importantly, the Fifth Circuit found "the remaining issues of causation and damages [we]re highly individualized, and thus would not be well-served by a class action."  *Id*.  Here, in contrast, there are enormous gains achieved by proceeding with damages on a class-wide basis regardless of the constitution of the class, and, therefore, the Court properly found that a class action would be the superior method of adjudication.[44]

## V.  NOTHING IN *BMS* BLURRED THE LINES BETWEEN MASS TORTS AND CLASS ACTIONS FILED IN FEDERAL COURT PURSUANT TO CAFA

A significant difference between mass torts and this class action is that the complaints at issue here were filed as class action in federal court pursuant to Rule 23 and CAFA.[45]  In the prior *BMS* briefing, the PSC discussed at length how the Defendants' position would render CAFA meaningless and change the manner in which Rule 23 has been interpreted and those arguments will not all be repeated here.[46]

However, it bears emphasizing that CAFA created subject matter jurisdiction over the very set of state law claims that Defendants now argue must be dismissed for lack of personal

---

[44] *Chinese Drywall*, 2014 WL 4809520, at *16.

[45] Defendants cite *In re Dental Supplies Antitrust Litig.*, No. 16-cv-0696, 2017 WL 4217115, at *9 (E.D.N.Y. Sept. 20, 2017), for the unremarkable proposition that personal jurisdiction in class actions must comport with Due Process.  *See* CNBM-BNBM *Depuy* Brief at 8.  The PSC does not dispute this point but it assumes too much.  The question is not whether Due Process is required but whether the analysis can reach a different result when claims are aggregated in federal court under an express Congressional provision intended to aggregate claims.  Again, this returns Defendants to their original argument that *BMS* eliminated multistate class actions.  In *Dental Supplies*, the defendants at issue had no contacts with the forum and the court had rejected every application of the state long-arm statute prior to assessing the final "arise out of or relate to" element of the jurisdictional analysis.  No one here is arguing there can be no relationship to the forum, but, instead, the question is how much "relatedness" is enough assuming the minimum contacts prong has been satisfied, which it clearly has been in this case.

[46] *See*, *e.g.*, PSC's *BMS* Opposition at 19-26; PSC's *Depuy* Brief at 15-17.

jurisdiction.  While the legislative history clearly shows that these nationwide and multistate

class actions are precisely the cases Congress intended to place in federal court, it is also clearly

contained in the home state exception and local controversy exceptions to CAFA jurisdiction.

There is no doubt that "CAFA greatly expand[ed] federal jurisdiction over *interstate*

class action lawsuits." *Hollinger v. Home State Mut. Ins. Co*., 654 F.3d 564, 569 (5th Cir. 2011)

(emphasis added).  "[T]he language, structure, and history of CAFA all 'demonstrate that

Congress contemplated broad federal court jurisdiction with only narrow exceptions.'" *Cedar*

*Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*, 768 F.3d 425, 429 (5th Cir. 2014)

(quoting *Evans v. Walter Indus*., 449 F.3d 1159, 1164 (11th Cir. 2006)).  The two narrow

exceptions, the home state exception and the local controversy exception, require that 2/3 of the

plaintiffs (or proposed class) be from the forum state (*i.e.*, CAFA jurisdiction would be

warranted for claims *where the plaintiffs were from multiple states*) and the "principal injuries"

resulting from the alleged wrongdoing were incurred in the forum state (*i.e.*, CAFA jurisdiction

would be warranted when the alleged wrongdoing *took place to some degree outside of the*

*forum state*).  *See Hollinger*, 654 F.3d at 569-70 (addressing home state and local controversy

exceptions).  The legislative history shows that the "principal injuries" requirement would not be

met "if the defendants engaged in conduct that could be alleged to have injured consumers

throughout the country or broadly throughout several states."  *See* S. Rep. No. 109-14, at 38.

## VI.    CONCLUSION

For all of the foregoing reasons as well as those set forth in the PSC's Opposition,

Defendants' Supplemental Jurisdictional Motion should be denied in its entirety.

Respectfully submitted,


Dated:   October 6, 2017                    /s/ Russ M. Herman
                                            Russ M. Herman (La. Bar No. 6819) (on the brief)
                                            Leonard A. Davis (La. Bar No. 14190) (on the brief)
                                            Stephen J. Herman (La. Bar No. 23129) (on the brief)
                                            Robert S. Peck (on the brief)
                                            HERMAN, HERMAN & KATZ, LLC
                                            820 O'Keefe Avenue
                                            New Orleans, LA  70113
                                            Phone: (504) 581-4892
                                            Fax: (504) 561-6024
                                            RHerman@hhklawfirm.com

                                            *Plaintiffs' Liaison Counsel MDL 2047*

                                            Arnold Levin (on the Brief)
                                            Fred S. Longer (on the Brief)
                                            Sandra L. Duggan (on the Brief)
                                            Keith J. Verrier (on the Brief)
                                            Nicola Serianni (on the Brief)
                                            Levin Sedran & Berman
                                            510 Walnut Street, Suite 500
                                            Philadelphia, PA  19106
                                            Phone: (215) 592-1500
                                            Fax: (215) 592-4663
                                            Alevin@lfsblaw.com

                                            *Plaintiffs' Lead Counsel MDL 2047*

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA  70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Peter Prieto
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL  33130
Phone: (305) 358-2800
Fax: (305) 358-2382
pprieto@podhurst.com

Patrick Montoya
Colson, Hicks, Eidson
255 Alhambra Circle, Penthouse
Coral Gables, FL  33134
Phone: (305) 476-7400
Fax: (305) 476-7444
patrick@colson.com

Hugh P. Lambert
The Lambert Firm
701 Magazine Street
New Orleans, LA  70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@thelambertfirm.com

James R. Reeves, Jr.
Reeves & Mestayer, PLLC
160 Main Street
Biloxi, MS  39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@rmlawcall.com

Robert Becnel
Becnel Law Firm, LLC
425 W. Airline Highway, Suite B
Laplace, LA  70068
Phone: (985) 536-1186
Fax: (985) 536-6445
rbecnel@becnellaw.com

Bruce William Steckler
Steckler Gresham Cochran
12720 Hillcrest Road, Ste 1045
Dallas, TX  75230
Phone: (972) 387-4040
Fax: (972) 387-4041
bruce@stecklerlaw.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL  32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA  70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Christopher Seeger
Seeger Weiss, LLP
77 Water Street
New York, NY  10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC  27603
Phone: (919) 600-5000
Fax: (919) 600-5002
dan@wbmllp.com

Richard J. Serpe
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA  23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com

Victor M. Diaz, Jr.
V.M. Diaz and Partners, LLC
119 Washington Ave, Suite 402
Miami Beach, FL  33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

## OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W, Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Anthony D. Irpino
IRPINO AVIN HAWKINS LAW FIRM
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, which will serve a notice of the uploading in accordance with the procedures established in MDL 2047, on this 6th day of October, 2017.

<u>/s/ Leonard A. Davis</u>
Leonard A. Davis
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com
Plaintiffs' Liaison Counsel
MDL 2047

*Co-Counsel for Plaintiffs*

24