**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL NO. 2047** |
| | **SECTION: L** |
| **THIS DOCUMENT RELATES TO:** | **JUDGE FALLON** |
| **ALL CASES** | **MAG. WILKINSON** |

**MEMORANDUM IN OPPOSITION TO INTERIOR
EXTERIOR BUILDING SUPPLY, L.P.'S MOTION FOR INJUNCTIVE RELIEF**

**MAY IT PLEASE THE COURT:**

NOW INTO COURT, come opponents, Winston Burns, Jr. and Wendy Burns (collectively, "Burns"), who oppose Interior Exterior Building Supply, L.P.'s (hereinafter "InEx") Motion for Injunctive Relief (R. Doc. 20891) (the "Motion") for the following reasons, to wit:

**FACTUAL AND PROCEDURAL BACKGROUND OF STATE COURT PROCEEDINGS**

This matter arises out of a series of unfortunate events following Hurricane Katrina.  After sustaining significant damages to their home located at 1726 Lakeshore Drive, in New Orleans, Louisiana (hereafter, the "Property"), the Burns hired Livers Construction, Inc. (hereinafter "Livers") to perform the renovation work at the Property.  *See Exhibit 1.*  After moving back into the Property around July 1, 2007, the Burns began experiencing a variety of problems with their home, and attempted to contact Livers numerous times to inquire whether Livers could assist them in resolving the issues, or at least assist them in determining what was the cause of the problems they were experiencing.  *See Exhibit 1.*  Livers not only refused to help the Burns solve the problems with the Property, but also failed to inform them that their house, which they lived in

with their minor daughter, was likely filled with contaminated Chinese Drywall (hereinafter "CDW").  *See Exhibit 1.*

In August of 2005, during Hurricane Katrina, the roof blew off of the Property allowing rain to soak the interior of the structure.  *See Exhibit 1.*  As a result of this damage, extensive repairs were required, including, but not limited to, removal and replacement of the drywall, floor coverings, and appliances.  *See Exhibit 1.*

The Burns retained Livers to perform all the repair work in response to the damages sustained by the property during Hurricane Katrina.  *See Exhibit 1.*  From August of 2005 until July of 2007, the Property was uninhabitable and the Burns were forced to reside elsewhere while renovations were underway.  *See Exhibit 1.*  To the best of their recollection, the Burns moved back into the Property on or about July 1, 2007.  *See Exhibit 1.*

As a result of the continued issues with the Property, Donovan Engineering Co., Inc. performed an inspection and study of the Property on October 23, 2015 at the request of the Fireman's Fund.  On October 30, 2015, Clifford E. Capps, P.E. of Donovan Engineering Co., Inc. issued a report wherein he concluded: (1) it is probable that the house has contaminated (high sulfur content) CDW; and (2) the problems experienced with the Property are consistent with failure due to the presence of contaminated CDW.  In or about August of 2015, the Burns were told by one of the technicians responding to a service call as well as an acquaintance that the Property could possibly contain CDW.  The report issued on October 30, 2015, however, was the first time the Burns had definite confirmation that the Property was contaminated with CDW.  *See Exhibit 1.*

During the time in which the Burns were experiencing problems with the Property, they attempted to reach out to Livers regarding same. *See Exhibit 1.* Livers either ignored the Burns' plea for help to resolve the issues, or refused to remediate the problems. *See Exhibit 1.* Most importantly, during this time, upon information and belief, Livers had specific knowledge about the possibility of the existence of CDW in the Property. *See Exhibit 1.* The Burns also contend that during this time, upon information and belief, Livers had specific knowledge regarding the existence of MDL 2047[1] and its applicability to the CDW installed in the Property. *See Exhibit 1.* Nevertheless, Livers concealed this information from the Burns until it was too late. As a result of the actions of Livers, the Burns have sustained significant damages, and to date, Livers has failed and/or refused to make or pay for any repairs to the Property.

On April 21, 2016, the Burns filed suit against Livers in the Civil District Court for the Parish of Orleans seeking to recover for the damages they suffered from Livers' installation of the toxic CDW and its failure to advise the Burns of the existence of the CDW and MDL 2047. In response, Livers asserted Louisiana state law exceptions of *Res Judicata* and Peremption (hereinafter "Exceptions"). The Burns opposed these Exceptions and the district court rendered its ruling in open court on October 28, 2016, denying same. On November 4, 2016, Livers filed its Notice of Intent to Seek Supervisory Writ from the Louisiana Fourth Circuit Court of Appeal. Subsequently, a Notice of Signing of Judgment and Judgment were perfected on November 7, 2016. On December 12, 2016, the Fourth Circuit denied Livers' Writ Application.[2]

---

[1] MDL 2047 is the class action in the United States Court for the Eastern District of Louisiana under case number 2:09-md-02047.
[2] See Exhibit 2.

Livers then applied to the Supreme Court of Louisiana, asking that Honorable Court to review the district court's denial of its Exceptions and the Fourth Circuit's refusal to review that decision. Ultimately, Livers requested that the Supreme Court dismiss the Burns' claims against Livers with prejudice, foreclosing any possibility that the Burns recover any compensation for their damages from Livers. Livers sought this relief even though Livers' own actions directly resulted in the Burns failure to discover the existence of CDW in their home until years after a peremptive period afforded to construction contracts has run, and years after a settlement has been reached in this multidistrict litigation. The Burns opposed Livers' relief sought from the Supreme Court. On February 17, 2017 the Louisiana Supreme Court denied Livers' writ.[3]

In opposing Livers' Exceptions of *Res Judicata* and Peremption, the Burns argued that specific Louisiana state law exemptions to these Exceptions applied, estopping Livers from asserting same. In regards to Livers' Exception of *Res Judicata*, the Burns' argued that under Louisiana state law exceptions to *res judicata* provided in La. R.S. 13:4232 – "Exceptions to the general rule of *res judicata*" –Livers was estopped from asserting this exception. La. R.S. 12:4232 provides in pertinent part:

> A.    A judgment does not bar another action by the plaintiff:
>
> (1)    When exceptional circumstances justify relief from the *res judicata* effect of the judgment;
> (2)    When the judgment dismissed the first action without prejudice; or,
> (3)    When the judgment reserved the right of the plaintiff to bring another action. [Emphasis added].

According to the official comment, [La. R.S. 13:4232] "gives a court the authority to exercise its equitable discretion to balance the principle of *res judicata* with interests of justice." *Cowan v. Kanuch*, 176 So.3d 553, 558 (La. App. 4th Cir. 2015) (citing *Fine v. Regional Transit Auth.*, 676

---

[3] See Exhibit 3.

So.2d 1134, 1136 (La. App. 4th Cir. 1996) (emphasis added).  Such discretion must be exercised on a case-by-case basis and relief granted in only truly exceptional cases. *Cepriano v. B Square Builders, LLC,* 170 So.3d 1043, 1047 (La. App. 1st Cir 2015).  Exceptional circumstances are usually found to exist where there are "complex procedural situations in which litigants are deprived of the opportunity to present their claims due to unanticipated quirks in the system, to factual situations that could not be anticipated by the parties, or to decisions that are totally beyond the control of the parties." *Id.* at 1047-48.  Under the jurisprudence of Louisiana, the concept of *res judicata* is to be applied strictly and any doubt as to its application must be resolved against its application. *Schneidau,* 17 So.3d at 64 (La. App. 5th Cir. 2009) ("If there is any doubt as to its applicability, the exception must be overruled").

The Burns asserted that their allegations made in the state court proceeding fell within the "exceptional circumstances" exception found in La. R.S. 13:4232. *See Fine v. Reg'l Transit Auth.,* 676 So. 2d 1134, 1137 (La. App. 4th Cir. 1996)*; Bd. Of Sup'rs of Louisiana State Univ. v. Dixie Brewing Co.*, 154 So. 3d 683 (La. App. 4th Cir. 2014).  This argument was based on the fact that, due to the actions of Livers, the Burns did not discover and were not aware of the existence of the CDW in the Property until years after the settlement was reached under MDL 2047.

Additionally, the Burns did not discover and were not aware of the existence of the CDW until years after the opt-out period permitted under MDL 2047 had lapsed.  As such, the Burns lost the rights afforded to potential class members in opting out of a suit in which he/she does not want to belong.  Livers stated in its original Exceptions that "plaintiffs have provided no proof or contention that they have opted out of MDL 2047."  This is exactly the point.  The Burns, because Livers failed to place them on notice of the likelihood of the existence of Chinese Drywall, did not

have an opportunity to opt-out of MDL 2047.[4]   Clearly, this fact alone renders this matter an "exceptional circumstance."   The Burns asserted that if they had the opportunity to opt-out of MDL 2047, the prerequisite of identical parties would not be met and Livers would not be afforded the right to argue *res judicata*.

Finally, upon information and belief, Livers was well aware of the likelihood that the Property contained CDW and also the existence of MDL 2047, yet failed and/or refused to put the Burns on notice of such.   The Burns maintained in their oppositions that Livers should not be permitted to use MDL 2047 as a shield to have the Burns' claims against it dismissed, given the fact that Livers could have easily notified them years ago of the likelihood of the Property containing CDW so as to allow the Burns the opportunity to weigh the benefits of participating in MDL 2047.   Accordingly, Livers' attempt to avail itself of the exception of *res judicata* was properly denied by the district court as affirmed by both the Louisiana Fourth Circuit Court of Appeals and the Louisiana Supreme Court, as this matter involves "exceptional circumstances" warranting the application of the exception found in La. R.S. 13:4232

The Burns also opposed Livers' Exception of Peremption. The Louisiana Legislature, in La. R.S. 9:2772, established a five-year preemptive period within which an action arising out of a builder's work on an immovable can be instituted by the owner.   The period begins to run at the

---

[4] The Notice to Class Members provision of the InEx settlement agreement provides that Settlement Class Counsel will disseminate the Class Settlement Notice by first-class mail to the last known address of the following persons and entities (i) all plaintiffs in the Litigation, (ii) all plaintiffs in the Omni complaints in MDL No. 2047 which names InEx as a defendant, (iii) all plaintiffs in all Related Actions which name InEx as a defendant, (iv) the counsel of all the foregoing, (v) the claimants against InEx of whom said counsel have knowledge, and (vi) all persons who can be identified from InEx invoices as having received drywall. Mdl 2047 Rec. Doc. 8628-3, p. 21 (InEx Settlement Agreement, section 6.1). Exhibit 1.10 to the InEx Settlement Agreement contains a list of entities and individuals entitled "Contractor, Etc. and "Ship to" Recipient Downstream InEx Releases." Mdl 2047 Rec. Doc. 8628-4. On Page 7 of this document, Livers Construction Inc. is listed as both the customer name and the Ship-to-Name. The address provided is 1726 Lakeshore Dr. and a contact number for Louis Livers (723-5916) is also provided. Accordingly, based on the language of 6.1 and the fact that Livers Construction Inc. is identified, ostensibly from invoice records, the Burns contend that Livers received notice of both the fact that Livers installed the CDW in the Property and the existence of MDL 2047. Despite receiving this notice, Livers failed to advise the Burns of the CDW or MDL 2047.

earlier of the filing of a notice of acceptance of the work in the mortgage records by the owner (if done within 6 months of the owner taking possession and occupying the property); or when the owner takes possession and occupies the property if there is no such notice of acceptance filed.

However, La. R.S. 9:2772 also provides an exception to this preemptive period for causes of action that arise due to fraud perpetrated by the Builder/Contractor.  Specifically, La. R.S. 9:2772(H) provides in pertinent part:

> H. (1) The preemptive period provided in this Section shall not apply to an action to recover on a contract or to recover damages against any person enumerated in Subsection A of this Section, whose fraud has caused the breach of contract or damages sued upon. The provisions of this Subsection shall be retroactive.
>
> (2) In any action in which fraud is alleged, that issue shall be decided by trial separate from and prior to the trial of any or all other issues. However, if fraud is alleged in nonresidential contracts in an action commenced after the expiration of the five-year period provided by this Section, and the court determines that the allegation was brought in bad faith and no fraud is found, then the party who made the allegation shall be liable for court costs and attorney fees.  If fraud is proven, then the party that has committed the fraud shall be liable for court costs and attorney fees.
>
> (3) Fraud, as used in this Section, shall have the same meaning as provided in Civil Code Article 1953.

Louisiana Civil Code Article 1953 entitled "[f]raud may result from misrepresentation or from silence" provides in pertinent part, that:

> Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction.

The aforementioned statute makes it clear that fraud can be found in situations both where a defendant affirmatively acts to defraud, and in cases where the defendant merely remains silent. However, in order "[t]o find fraud from silence there must be a duty to speak." *Lomont v. Bennett*,

172 So.3d 620, 629 (La. 2015).  The Louisiana Supreme Court in *Bunge Corp. v. GATX Corp.*, 557 So.2d 1376 (La. 1990) stated that "Louisiana law recognizes that the refusal to speak, in the face of an obligation to do so, is not merely unfair but is fraudulent."  *Id.*  "There are two elements necessary to prove legal fraud: an intent to defraud and a resulting damage."  *Id.*"  "Fraudulent intent, or the intent to deceive, is a necessary and inherent element of fraud." *Schilling v. Bernhard Bros. Mechanical Contractors LLC*, 186 So.3d 658, 665 (La. App. 1st Cir. 2013).  Louisiana Civil Code Article 1957 provides that fraud need only be proven by a preponderance of the evidence and may be established by circumstantial evidence.

In the state court proceedings, the Burns argued that, based upon information and belief, Livers' actions in this matter arguably rose to the level of fraud, and, for several reasons, warranted the application of the exception found in La. R.S. 9:2772(H).  Livers, upon information and belief, acquired specific knowledge of the existence of CDW in the Burns Property within the five-year period contemplated above.  Livers failed to notify the Burns' of this fact, despite numerous attempts by the Burns to have Livers assist them with discovering the cause of the issues they were experiencing with the Property.  Livers owed the Burns a duty to notify them of the existence of the hazardous and toxic CDW, not only because Livers occupied a position of trust and had expertise that the Burns did not, but also because the existence of the CDW was not something that lay individuals such as the Burns could have discovered on their own.

Livers' silence during the five-year period leads one to ask whether it was attempting to avoid being sued for installing contaminated CDW.  Immediately upon learning that it had likely installed CDW in the Burns' Property, Livers, at the very least, should have notified its clients of such possibility.  In this case, Livers should have informed the Burns that the Property could contain CDW as the Burns were reaching out to Livers regarding the problems with the Property.

8

Thus, Livers' intentional failure to warn the Burns of the possibility of CDW was arguably fraudulent as Livers' silence prevented the Burns from discovering the CDW within the five-year period.

Stated simply, the Burns repeatedly attempted to contacted Livers regarding problems with the Property during the months and years following the work performed by Livers, all of which occurred within the five-year period discussed in La. R.S. 9:2772. Livers continuously withheld the knowledge of the existence of CDW in the Property as well as the options afforded to the Burns by MDL 2047. As such, Livers' actions rise to a level that warranted the district court application of the exception to the peremptive period provided by La. R.S. 9:2772(H) as affirmed by both the Louisiana Fourth Circuit Court of Appeals and the Louisiana Supreme Court.

On June 26, 2017, having lost on its Exceptions all the way up to the Louisiana Supreme Court, Livers filed a Third-Party Demand against InEx in the Burns' state court action, alleging that InEx sold Livers allegedly defective CDW. Livers' Answer and Third-Party Demand dated June 26, 2017 at p. 5 (hereinafter "Third-Party Demand"). As has been clearly demonstrated, Livers filed this Third-Party Demand against InEx to complicate this litigation wherein the Burns have never made any allegations against InEx. This maneuvering by Livers is simply a last-ditch effort to prevent the Burns from pursuing their claims against Livers in a Louisiana state court after Livers has been rightfully denied such relief by the highest court of the state of Louisiana.

The Burns have never attacked the constitutionality of the notice provided by MDL 2047, or the preclusive effect of the settlement upon absent class members. Rather, the Burns have asserted that Livers had specific knowledge of the existence of the CDW which it installed in the Property and the existence of MDL 2047. And that despite such knowledge, Livers failed to advise the Burns of such facts to the Burns detriment. Accordingly, under very specific Louisiana

statutory exceptions to the general rules of *re judicata* and peremption, as it pertains to work done on immovables, Livers is estopped from availing itself of these defenses. These issues have been presented to the Supreme Court of Louisiana, and that Honorable Court has denied Livers the specific relief that is now sought by InEx.

Accordingly, this Court should deny the injunctive relief sought by InEx to the extent it prevents the Burns from pursuing its state court action against Livers. This Honorable Court's issuance of an injunction against Livers from pursuing a third-party demand against InEx is of no concern to the Burns.

## **LAW AND ARGUMENT**

The Anti-Injunction Act, 28 U.S.C. § 2283, is an absolute bar on the federal courts' ability to enjoin state proceedings, unless one of three enumerated exceptions apply. The exceptions to prohibition against federal court injunction of state proceedings under Anti-Injunction Act are narrow and are not to be enlarged by loose statutory construction. Specifically, 28 U.S.C. § 2283 provides:

> [a] court of the United States may not grant an injunction to stay proceedings in a state court except as expressly authorized by Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

InEx argues that two of the three exceptions to the Anti-Injunction Act are applicable to the Burns' state court suit against Livers, warranting the issuance of injunction to enjoin the Orleans Parish state court proceeding. Rec. Doc. 20891-1, p. 8. InEx argues that "an injunction is necessary both to aid this Court's jurisdiction and to protect and effectuate this Court's judgment." InEx's arguments, however, are unavailing and do not support the issuance of an injunction by this Honorable Court. For the reasons which follow, this Court should deny the relief sought by InEx insofar as it enjoins the Burns from pursuing its claims against Livers.

I.    **THE CLAIMS IN THE STATE COURT PETITION WERE NOT BEFORE THE FEDERAL COURT**

The Anti-Injunction Act, 28 U.S.C. § 2283, bars the injunction InEx seeks.  The facts of this matter exemplify precisely why the Anti-Injunction Act was created – to ensure that a federal court only usurps and undermines a state court's ability to function in extremely limited circumstances.  Those exceptional circumstances do not exist in the present matter. Notwithstanding express language excluding any claims actually decided by this Court, should a federal court enjoin a state court proceeding when the tools and exceptions enacted by the Louisiana legislature to challenge *res judicata* in a Louisiana state court proceeding are available to Defendants?  The answer is no.  A complainant must make a strong and unequivocal showing under this test to warrant a federal court intermeddling in state court proceedings.  *S. Cal. Petroleum Corp. v. Harper*, 273 F.2d 715, 719 (5th Cir. 1960) (noting "[a] state court is as well qualified as a federal court to protect a litigant by the doctrines of res judicata and collateral estoppel").  Accordingly, the exception should be applied narrowly and "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy."  *Chick Kam Choo*, 486 U.S. at 146; *Atl. Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 297 (1970).  The clear and unequivocal answer from the Fifth Circuit is that the Louisiana courts should hear this matter, and no injunctive relief should be granted.

## II.   THE ANTI-INJUNCTION ACT BARS THIS COURT FROM ENJOINING THE LOUISIANA STATE COURT PROCEEDING.

The Fifth Circuit has repeatedly held that no district court should enjoin a state court proceeding unless extraordinary circumstances exist.  No such circumstances exist in this case. The Burns are simply exercising their constitutional right to pursue claims that have never been presented to any tribunal.  InEx, and Livers through it, seeks to deny the Burns this right by misinterpreting the Anti-Injunction Act and/or the facts supporting its enforcement.  The Anti-Injunction Act bars federal courts from granting injunctions to stay state court proceedings, with three narrowly circumscribed exceptions:

> A court of the United States may not grant an injunction to stay proceedings in a state court except as expressly authorized by an Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283.  The Anti-Injunction Act's prohibition against enjoining state court proceedings is grounded in federalism and thus "on the fundamental constitutional independence of the States and their courts."  *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Eng'rs,* 398 U.S. 281, 287 (1970).  Section 2283 "is a necessary concomitant of the Framers' decision to authorize, and Congress' decision to implement, a dual system of federal and state courts" and its prohibitions are "[d]ue in no small part to the fundamental constitutional independence of the States."  *Chick Kam Choo v. Exxon Corp.,* 486 U.S. 140, 146 (1988).  The Fifth Circuit has recognized "the hands-off doctrine expressed in Section 2283 ... as a pillar of federalism."  *T. Smith & Son, Inc. v. Williams,* 275 F.2d 397, 407 (5th Cir. 1960).

InEx appears to rely on the inapplicable relitigation exception.  The last of the three exceptions listed in the statute, termed the "relitigation exception," permits an injunction where necessary to "prevent state litigation of an issue that previously was presented to and actually

12

decided by the federal court." *See Blanchard 1986 Ltd. V. Park Plantation, LLC*, 553 F.3d 405, 407 (5th Cir. 2008), *citing Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147, 108 S.Ct. 1684, 100 L.Ed.2d 127 (1988). The exception is "founded in the well-recognized concepts of res judicata and collateral estoppel," but is "strict and narrow," requiring that "the claims or issues which the federal injunction insulates from litigation in state proceedings actually have been decided by the federal court." *Id*. In this case, the claims identified in the Burns' Petition for damages in the state court have never been heard or presented to any court.

The Fifth Circuit has set forth a four-part test to determine whether the relitigation exception applies to preclude litigation of a claim in state court: (1) the parties in the later state action must be identical to, or at least in privity with, the parties in a prior federal action; (2) the judgment in the prior action must have been rendered by a court of competent jurisdiction; (3) the prior action must have concluded with a final judgment on the merits; and (4) the same claim or cause of action must be involved in both suits. *Regions Bank*, 224 F.3d at 488.

Notwithstanding the factual prohibition against the relitigation exception, the exception does not mandate that federal courts enjoin duplicative state court proceedings. It is a permissive right that should be used sparingly, if at all. The Fifth Circuit and the Supreme Court expressly state that this is a discretionary court power that should not be used except under exceptional circumstances. Any doubts are to be resolved in favor of allowing the state court action to proceed:

> Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy. The explicit wording of § 2283 itself implies as much, and the fundamental principle of a dual system of courts leads inevitably to that conclusion.

*Atlantic Coast Line,* 398 U.S. at 297. *Accord Royal Ins. Co. of Am. v. Quinn-L Capital Corp.,* 960 F.2d 1286, 1294 (5th Cir. 1992), *cert. denied,* 511 U.S. 1032 (1994); *Texas Employers Ins. Ass'n v. Jackson,* 862 F.2d 491, 499 (5th Cir. 1988), *cert. denied,* 490 U.S. 1035 (1989).

In this case, the Burns' Petition for Damages clearly and unambiguously asserts claims against Livers based on its installation of CDW within the Property and subsequent failure to inform the Burns of the existence of the CDW or of MDL 2047. This unique set of facts present issues of first impression to the state court which have never been litigated or resolved by MDL 2047. Additionally, Livers has attempted to raise state law exceptions of *Res Judicata* and Peremption in the state court proceedings. The state law exception of *Res Judicata* raised by Livers addresses the same concerns as are raised by InEx. The Louisiana state courts, all the way up to the Louisiana Supreme Court have found this argument unavailing. Accordingly, there exists no circumstances under which this Court should now grant the injunctive relief sought by InEx and enjoin the Burns from pursuing its claims against Livers.

## III.   THE RELITIGATION EXCEPTION IS INAPPLICABLE BECAUSE THE LOUISIANA STATE COURT CLAIMS WERE NEVER ACTUALLY DECIDED.

The relitigation exception to the Anti-Injunction Act cannot be applied because it allows a court to enjoin only issues actually decided in a prior federal court litigation. The Burns' Petition for Damages makes clear that none of the state court claims were decided in the litigation before this Court.  Presented with similar circumstances, the Fifth Circuit has clearly stated that this Court should err on the side of permitting the state court action to proceed.  *See Blanchard 1986 Ltd.*, 553 F.3d at 408 (whenever the relitigation exception was before a court, the court should err on the side of permitting a state court action to proceed).  District courts should exercise "in the light of the historical reluctance of federal courts to interfere with state judicial proceedings." *Id.*, at

407-408, citing *Southern Cal. Petroleum Corp. v. Harper,* 273 F.2d 715, 718 (5th Cir.1960). The

court explained:

> As Justice Black remarked in *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970), the Anti–Injunction Act's "prohibition" of injunctions against state court proceedings is grounded in federalism and "rests on the fundamental constitutional independence of the States and their courts." This Circuit, recognizing that these issues of federal and state comity remain equally at play in the relitigation exception as in the rule itself, has stated:
>
> We take the view that a complainant must make a strong and unequivocal showing of relitigation of the same issue in order to overcome the federal courts' proper disinclination to intermeddle in state court proceedings. If we err, all is not lost. A state court is as well qualified as a federal court to protect a litigant by the doctrines of res judicata and collateral estoppel.
>
> The power to curtail duplicative litigation in this case exists directly in the Louisiana state courts through the well-developed doctrines of res judicata and collateral estoppel. In light of the state's power, we should not wield the extraordinary equitable remedy of a federal injunction without a "strong and unequivocal" showing of relitigation. That inquiry, however, is complicated by the fact that there is disagreement over the precise reach of the relitigation exception's protections; whether it resembles issue preclusion, claim preclusion, or a hybrid of the two.

*Blanchard 1986 Ltd.*, 553 F.3d at 408. Of note, Livers has made use of the Louisiana exception

rules and has filed an exception of *res judicata*. As a result, there exists no reason for this Court

to presume that the Louisiana state courts have not judiciously handled that matter. Also of note,

the Burns have not asserted any claims against InEx, the party actually seeking the injunction.

To the extent that InEx contends the claims in the Burns' Petition for Damages have already

been litigated in MDL 2047, InEx is incorrect. As is established above, the Burns have not asserted

any claims against InEx. Rather, the Burns have alleged that Livers installed CDW within the

property, knew about the CDW and MDL 2047, yet remained silent to the detriment of the Burns.

The claims in the Burns Petition for Damages are therefore new claims or causes of action. The law is clear that this Court should not grant injunctive relief to stay the Burns' state court case. The Fifth Circuit has held - many times - that *Chick Kam Choo's* "actually decided" language makes clear that the relitigation exception protects from relitigation only matters actually decided, not matters that could have been, but were not, decided in a previous federal litigation. *Id.* In addition, the exceptions to prohibition against federal court injunction of state proceedings under Anti-Injunction Act are narrow and are not to be enlarged by loose statutory construction. The Fifth Circuit acknowledged that other circuits may have a more liberal interpretation of the actually decided language, but courts in this Circuit must follow the stricter interpretation.

> Currently, there is disagreement amongst the circuits regarding the scope of the relitigation exception; and this circuit has given conflicting signals as to its position on the issue.  Most circuits that have considered the issue strictly interpret *Chick Kam Choo*'s "actually decided" language as "mak[ing] clear that the part of the relitigation exception to the Anti–Injunction Act that is based on concerns of res judicata is more narrowly tailored than the doctrine of res judicata."  *Staffer v. Bouchard Transp. Co.,* 878 F.2d 638, 643–44 (2d Cir.1989); *see, e.g., Jones v. St. Paul Cos.,* 495 F.3d 888, 892–93 (8th Cir.2007); *Am. Town Ctr. v. Hall 83 Assocs.,* 912 F.2d 104, 112 n. 2 (6th Cir.1990); *Delta Air Lines, Inc. v. McCoy Rests., Inc.,* 708 F.2d 582, 585–87 (11th Cir.1983).   Under this interpretation, the exception only protects from relitigation matters actually decided, not matters that *could have been* brought and decided in previous federal litigation.  *See Staffer,* 878 F.2d at 643–44.  The Fifth Circuit has endorsed this position, stating that an injunction that rests on true res judicata, a doctrine broadly barring any claims that are part of the same transaction or series of transactions raised in a previous action, "appears to be inconsistent with *Chick Kam Choo*'s admonishment that the relitigation exception 'is strict and narrow' so that only 'claims or issues which ... actually have been decided' in the prior proceeding ... are protectable thereunder."  *Tex. Employers' Ins. Assoc. v. Jackson,* 862 F.2d 491, 501 (5th Cir.1988) (en banc).

*Blanchard 1986 Ltd*., FN 12.[5]  Since the claims asserted in the Burns' Petition for Damages were never before the court, the relitigation exclusion does not apply.

## IV.   AN INJUNCTION IS NOT NECESSARY TO PROTECT AND EFFECTUATE THIS COURT'S JUDGMENT

The Anti-Injunction Act's second exception provides that a federal court may not enjoin proceedings in a state court except "where necessary in aid of its jurisdiction." 28 U.S.C. § 2283 (2001). This exception is known as the "in aid of jurisdiction" exception. This exception is designed to "prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atlantic Coast Line*, 398 U.S. at 295, 90 S.Ct. 1739. The Fifth Circuit has construed this exception extremely narrowly, holding that a threat to the federal court's jurisdiction exists only where a state proceeding threatens to dispose of property that forms the basis for federal in rem jurisdiction, or where the state proceeding threatens the continuing superintendence by a federal court, such as in a school desegregation case. *Royal Ins. Co. of Am. v. Quinn-L Capital Corp.*, 960 F.2d 1286, 1298-99 (5th Cir. 1992); see *Phillips v. Chas. Schreiner Bank*, 894 F.2d

---

[5]    *See also Vasquez v. Bridgestone/Firestone, Inc.,* 325 F.3d 665, 667 (5th Cir. 2003) (vacating injunction because dismissal of prior federal suit based on forum non conveniens, "a 'doctrine of procedure, rather than substance,' does not resolve the substantive merits and therefore falls outside the relitigation exception"); *Assurance Co. of America v. Kirkland,* 312 F.3d 186, 189 (5th Cir. 2002) (district court should not enjoin state court action because "an essential prerequisite for applying the relitigation exception is that the claims and issues which the federal injunction insulates from litigation in state proceedings actually have been decided by the federal court"); *St. Paul Mercury Ins. Co. v. Williamson,* 224 F.3d 425, 448 (5th Cir. 2000) (vacating injunction that exceeded the scope of claims actually litigated because "[t]o apply the exception, the parties to the original action must have actually disputed the issue and the trier of fact must have actually resolved it"); *Next Level Comm'ns LP v. DSC Comm'ns Corp.,* 179 F.3d 244, 249-50 (5th Cir. 1999) ("essential prerequisite for applying relitigation exception" is that "claims or issues which federal injunction insulates from relitigation in state proceedings actually have been decided by federal court"); *Texas Commerce Bank Nat'l Ass'n v. Florida,* 138 F.3d 179, 182 (5th Cir. 1998) (relitigation exception does not apply to claims that could have been raised but were in fact not actually litigated); *Royal Ins. Co. of Am. v. Quinn-L Capital Corp.,* 960 F.2d 1286, 1299 (5th Cir. 1992) (district court could not enjoin litigation of all related claims and issues without exceeding Anti-Injunction Act's limits), *cert. denied,* 511 U.S. 1039 (1994); *Texas Employers Ins. Assoc., v. Jackson,* 862 F.2d 491, 501 (5th Cir. 1988) (*en banc*) (injunction that rests on res judicata, a doctrine broadly barring any claims that are part of the same transaction or series of transactions raised in a previous action, "appears to be inconsistent with *Chick Kam Choo's* admonishment that the relitigation exception is 'strict and narrow' so that only 'claims or issues which ... actually have been decided' in the prior proceeding ... are protectible thereunder."), *cert. denied,* 490 U.S. 1035 (1989).

127, 132 (5th Cir. 1990) (holding that exception only applies to in rem actions). This exception cannot be invoked merely because of the prospect that a concurrent state proceeding might result in a judgment inconsistent with the federal court's previous rulings. *Texas v. United States*, 837 F.2d 184, 186 (5th Cir. 1988).

In the instant matter, the Burns have asserted various state law causes of action against Livers. These causes of action have never been presented to this Court. The Burns have never made any claims against InEx. Additionally, these causes of action in no way effect the continued enforceability of MDL 2047. Livers has attempted, and failed, to enjoin these proceedings at the state court level. This relief has been presented to, and denied by, the Louisiana Supreme Courts. Now, through its guileful maneuvering, Livers is attempting a second bite at the apple in order to have this Court foreclose the possibility of the Burns recovering the damages perpetrated against them by Livers. The Burns do not oppose this Court's issuance of an injunction insofar as it restricts the ability of Livers to pursue its third-party demand against InEx.

## **CONCLUSION**

Simply put, InEx's Motion should be denied because Livers should not be permitted to seek relief denied to it by the Courts of the state of Louisiana, including the Louisiana Supreme Court.  This Court should not enjoin the state court suit because the relitigation exception to the Anti-Injunction Act does not apply to the Louisiana state court claims asserted against Livers by the Burns.  Even if the Court could enter a limited injunction, comity and equitable factors weigh heavily against injunctive relief preventing the Burns from pursuing their claims against Livers. Thus, proof that res judicata would preclude the state court action is not enough; instead, the applicant must demonstrate extraordinary circumstances which warrant federal intervention, as opposed to allowing the state court and state court appellate process to alleviate the harm, if any,

done by allowing state court proceedings to proceed.  Just as Livers failed to do so, InEx also cannot satisfy this heightened burden of proof. Accordingly, the Burns respectfully request that this Honorable Court deny InEx's Motion for Injunctive Relief.

Respectfully Submitted:

*/s/ Matthew A. Sherman*

_____
JAMES M. WILLIAMS (#26141)
MATTHEW A. SHERMAN (#32687)
ZACHARY R. SMITH (#37316)
*Chehardy, Sherman, Williams, Murray,*
*Recile, Stakelum & Hayes, L.L.P.*
One Galleria Boulevard, Suite 1100
Metairie, Louisiana 70001
Telephone: (504) 833-5600
Facsimile: (504) 613-4528
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2017, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel. I further certify that I have sent the foregoing by U.S. Mail, postage pre-paid, to parties and/or their counsel who would not receive notice through the CM/ECF system.

*/s/ Matthew A. Sherman*
Matthew A. Sherman
