IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO:<br>ALL CASES | |

**TAISHAN'S SUPPLEMENTAL BRIEF ON MASS TORT AND CLASS ACTIONS IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION FOLLOWING *BRISTOL-MYERS SQUIBB V. SUPERIOR COURT***

**I.   INTRODUCTION**

In the context of briefing on personal jurisdiction and the application of *Bristol-Myers Squibb*, the Court has directed the parties to address "the difference—if any—between mass tort actions and class actions in which every member is a named plaintiff."[1] Legally, there is no difference between the two. A class action like the *Amorin* class in which every member is named and which has no absent class members is just a mass tort action. It is not a class action at all.

The *Amorin* class is not "representative" litigation. Every claimant is a plaintiff who can and is pursuing his or her own claim with individualized proof—it is a pure fiction to say that there are class representatives. Given that existential deficiency, a class with only named members does not meet the Rule 23 requirements. Because all class members were actually joined by name in a single complaint, the *Amorin* class is not "so numerous that joinder of all members is impracticable." And the leading appellate decision on classes with only members "who were already named as plaintiffs" leaves "no doubt that the superiority requirement . . . cannot be

---

[1] The Court ordered supplemental briefing on September 29, 2017 (Rec. Doc. 20992).

satisfied" in that setting. *Robertson v. Monsanto Co.*, 287 F. App'x, 354, 362-363 (5th Cir. 2008). As a matter of jurisprudential theory and textual law, a class action with only named members is, and should be treated as, the same as a regular mass tort action.

That means that, in this specific context, the U.S. Supreme Court's mass-tort *Bristol-Myers* decision applies in this mass tort to require each named plaintiff to establish the Court's claim-specific personal jurisdiction over Defendants. Class certification can provide no basis to circumvent the due process holdings in *Bristol-Myers*. As a general matter, "[t]he constitutional requirements of due process [do] not wax and wane when the complaint is individual or on behalf of a class." *In re Dental Supplies Antitrust Litig.*, No. 16-civ-696, 2017 WL 4217115, at *9 (E.D.N.Y. Sept. 20, 2017). Even if a so-called class could have any jurisdictional effect, it would affect only *unnamed* class members, of which there are none here. *See Fitzhenry-Russell v. Dr. Pepper Snapple Grp.*, No. 17-cv-00564 NC, 2017 WL 4224723, at *5 (N.D. Cal. Sept. 22, 2017). Under *Bristol-Myers*, where each plaintiff was a real party in interest, the Court should dismiss non-resident named plaintiffs.

## II. NO LEGAL DIFFERENCE EXISTS BETWEEN A MASS TORT ACTION AND A CLASS ACTION IN WHICH EVERY MEMBER IS A NAMED PLAINTIFF

A class action in which all the class members are named plaintiffs is the same as a mass tort action for personal-jurisdiction purposes.[2] A court recently recognized—in the precise context of applying *Bristol-Myers*—that the individual naming of plaintiffs is the salient characteristic of mass tort actions: "In a mass tort action like the one in *Bristol-Myers*, each plaintiff was a real

---

[2] The type of mass tort action here is "one arising out of the sale, on a national or international market to thousands of persons, of an alleged defective product, from the use of which has caused many persons to have suffered injury." *In re A.H. Robins Co.*, 880 F.2d 709, 725 (4th Cir. 1989).

party in interest to the complaints, meaning that they were named as plaintiffs in the complaint." *Fitzhenry-Russell*, 2017 WL 4224723, at *5.[3] The same is true here and makes *Bristol-Myers* directly applicable because each named plaintiff must individually establish personal jurisdiction or have his claims dismissed. *See Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006).

The class certification in the *Amorin* mass tort action plays no role in the personal jurisdiction analysis. First, as Taishan showed in its *DePuy* supplemental brief, the "constitutional requirements of due process [do] not wax and wane when the complaint is individual or on behalf of a class. Personal jurisdiction in class actions must comport with due process just the same as any other case." (Rec. Doc. 20996 at 11 (quoting *In re Dental Supplies Antitrust Litig.*, 2017 WL 4217115, at *9. The PSC does not meaningfully distinguish *In re Dental Supplies*. *See* PSC Mass/Class Br. at 19 n.45.[4] Nor do they distinguish the many cases in which courts have dismissed claims in putative class actions when named plaintiffs have failed their burden to establish personal jurisdiction. *See* Taishan *DePuy* Br. at 11-12.

Second, even if class could have any effect, it cannot here where all plaintiffs are named and, by definition, there are no unnamed or absent class members. In "consider[ing] the difference between a class action and a mass tort action," the court in *Fitzhenry-Russell* focused on the distinction between named plaintiffs and unnamed absent class members: "In a putative class action, like the one before the Court, one or more plaintiffs seek to represent the rest of the similarly situated plaintiffs, and the 'named plaintiffs' are the only plaintiffs actually named in the

---

[3] The PSC notably fails to cite *Fitzhenry-Russell* in their Second Supplemental Memorandum (Rec. Doc. 21031) ("PSC Mass/Class Br.").

[4] Indeed, it is hard to decipher what the PSC says about that case.

3

complaint." *Id.* (quoting Fed. R. Civ. P. 23). Although expressing doubt, the court declined to do a personal jurisdictional analysis of "unnamed class member[s]," holding that "*Bristol-Myers* is meaningfully distinguishable based on that case concerning a mass tort action in which each plaintiff was a named plaintiff." *Id.*[5] Here, however, *Bristol-Myers* is not distinguishable because this is not a true class action involving unnamed class members; it is a mass tort action, which is characterized by having every party "named as plaintiffs in the complaint," just as in *Bristol-Myers*. *Id.* Every *Amorin* class member is a named plaintiff, and thus just as in *Bristol-Myers*, every individual named plaintiff must establish personal jurisdiction over that individual plaintiff's claims or have those claims dismissed.

### III. THE PSC'S LATELY INSERTED ARGUMENTS ALL FAIL

The Court should reject the PSC's arguments presented in this third round of briefing on the Supplemental Motion to Dismiss based on *Bristol-Myers*.

#### A. *Bristol-Myers* Explicitly Defeats the PSC's Generalized Product-Distribution Argument

The PSC cannot rely on a generalized argument that all nonresidents can sue in Florida, Louisiana and Virginia because drywall allegedly "flowed through" into other states. PSC Mass/Class Br. at 9. That is a new, last-minute argument. The PSC first responded on *Bristol-Myers* by arguing that the new Supreme Court personal-jurisdiction decision did not apply at all here for various reasons (federal v. state, MDL, etc.). *See* PSC MTD Opp. (Rec. Doc. 20935-2) at 1. But thereafter, the PSC shifted gears to argue vaguely and without any plaintiff-specific facts

---

[5] Although *Fitzhenry-Russell* did not apply *Bristol-Myers* to unnamed class members, it did recognize that "this may be one of [the] contexts in which an unnamed class member should be considered as parties [sic] given the language the Supreme Court chose to use in *Bristol-Myers*. *Id.* This Court need not address that issue here where all *Amorin* class members are named plaintiffs.

that "the drywall flowed through the forum state to the plaintiff homeowners thereby providing a link between the forum, the Defendants, the Plaintiffs and the claims at issue." PSC *DePuy* Br. at 9 n.15.

*Bristol-Myers* considered and rejected an almost identical argument, which the Supreme Court characterized as a "last ditch contention." *Bristol-Myers Squibb Co. Super. Ct. of Cal.*, 137 S. Ct. at 1773, 1783 (2017). The nonresident plaintiffs claimed that they could sue in California because the manufacturer contracted with a California company to distribute the drug nationally. Focusing on the absence of necessary plaintiff-specific facts or analysis, the Supreme Court left those nonresident plaintiffs in their last ditch because "the nonresidents [had] adduced no evidence to show how or by whom the Plavix they took was distributed to the pharmacies that dispensed it to them." *Id.* The Court cited the plaintiffs' admission at oral argument that "[i]t is impossible to trace a particular pill to a particular person . . . . It is not possible for us to track particularly to McKesson." *Id.* And a district court applying *Bristol-Myers* recently rejected the PSC's kind of "geographical proximity" argument, holding that a plaintiff cannot leverage a defendant's activity in Kentucky into personal jurisdiction in Alabama simply because a product may have traveled between those nearby states. *Matson v. Steve's Truck & Trailer Repairs, Inc.*, No. 7:17-cv-01166-LSC, 2017 WL 4472717, at *4 (N.D. Ala. Oct. 6, 2017).

Here, it is not enough to assert generally, for example, that drywall may have traveled from Louisiana or Florida to Alabama. *See* PSC *DePuy* Br. at 8.[6] As in *Bristol-Myers*, the nonresident

---

[6] The PSC claims—without evidence—that "drywall flowed from Florida distributors" to "homeowners in . . . Alabama," and also that "sales of drywall to distributors in Louisiana ended up in homes in Alabama . . . ." PSC *DePuy* Br. at 8. It is unclear under the PSC's new theory which Alabama claimants are trying to assert personal jurisdiction over Taishan in Florida and which in Louisiana. The PSC has never presented any plaintiff-specific jurisdictional analysis.

5

plaintiffs here have adduced no evidence to trace any drywall in their properties to Florida, Virginia or Louisiana. All they say is that "[o]bviously, distributors in Louisiana, Florida, and Virginia sent Defendants' products to states other than their own locales." PSC Mass/Class Br. at 9 n.30. But the only thing that is obvious is that the PSC's vague and fact-free assertions are not enough to establish personal jurisdiction for any claimant, as *Bristol-Myers* shows.

### B. Denial Of Certiorari Of The Illinois Paxil Decision Is Meaningless.

Struggling beyond that last ditch, the PSC suddenly relies on a Supreme Court denial of certiorari in *GlaxoSmithKline LLC v. M. M. ex rel. Meyers* ("*GSK*"). That reliance fails badly and is certainly not "the key" to understanding personal jurisdiction. PSC Mass/Class Br. at 10. Unfortunately, the PSC has committed the common error of over-interpreting a denial of certiorari. The Supreme Court has stated repeatedly that a cert denial has no substantive legal significance, but "simply means that fewer than four members of the Court deemed it desirable to review a decision of the lower court as a matter 'of sound judicial discretion.'" *Maryland v. Baltimore Radio Show, Inc.*, 338 U.S. 912, 917-918 (1950); *accord United States v. Carver*, 260 U.S. 482, 490 (1923) (holding that "[t]he denial of a writ of certiorari imports no expression of opinion upon the merits of the case, as the bar has been told many times"). The PSC's discredited cert-denial argument has been so prevalent over the years that the Supreme Court has all but begged litigants to stop making it, as Justice Frankfurter did in *Agoston v. Com. of Pa.*:

> The Court has stated again and again what the denial of a petition for writ of certiorari means and more particularly what it does not mean. . . . But it is not merely the laity that fails to appreciate that by denying leave for review here of a lower court decision this Court lends no support to the decision of the lower court. Obviously it does not imply approval of anything that may have been said by the lower court in support of its decision.

340 U.S. 844, 844 (1950) (internal citations omitted).

6

But the PSC has not yet gotten that message. Had the Supreme Court desired to clarify or narrow its ruling in *Bristol-Myers*, it could have granted certiorari in *GSK*. Instead, the Court declined to hear further argument on *GSK* and left *Bristol-Myers* to speak for itself—which it does loudly here. This Court should disregard completely the PSC's attempt to read anything into the *GSK* denial.

And *GSK* actually does nothing to minimize *Bristol-Myers* because the jurisdictional facts are different. In *GSK*, the trial and appellate courts agreed that the non-resident plaintiffs' claims were related to the defendant's in-state clinical research on the drug in question. That precise link was absent in *Bristol-Myers* because "there [was] no claim that Plavix itself was designed and developed in BMS's California research facilities." 137 S. Ct. at 1779 (internal quotations and citation omitted). Despite that dispositive factual difference, *GSK* and *Bristol-Myers* are both consistent with the requirement that all claims are subject to a claim-specific personal jurisdiction analysis—a requirement that each of the PSC's nonresident claimants must, but has not met.

## IV. A CLASS ACTION WITH ONLY NAMED PLAINTIFFS IS NOT ACTUALLY A CLASS ACTION

### A. A Mass Tort Action Does Not Meet the Legal Tests for Class Action

#### 1. The Amorin Class Is Not Representative Litigation

The fact that every *Amorin* class member is a named plaintiff not only makes it a mass tort action to which *Bristol-Myers* applies, it also legally disqualifies *Amorin* from class treatment. Conceptually, *Amorin* does not fit the defining inherent characteristic of a class action as representative litigation. That "representative" nature of class actions is imbedded in the very first line of Rule 23, which provides that "[o]ne or more members of a class may sue . . . as representative parties on behalf of all members." Fed. R. Civ. P. 23(a). And the advisory committee

notes draw a binary distinction between "individuals . . . conducting separate lawsuits" and "prosecution of the action through representatives." *Id.* (advisory committee note).[7]

The Supreme Court also has long defined class actions as representative litigation. In the Court's early definitive statement on class actions in *Hansberry v. Lee*, Justice Stone equated the two concepts, describing "a 'class' or 'representative' suit" as one in which "some members of the class are parties" and which may bind "those represented who were not made parties to it." 311 U.S. 32, 41 (1940). *Hansberry* described this concept of "representation of absent parties in a class suit" as a "doctrine." *Id.* at 45. Throughout the decision, Justice Stone focused on "the relationship between the parties present and those who are absent." *Id.* at 43. The Court described these necessary absent plaintiffs in various ways:

- "absent parties";
- "members of the class who are not formal parties to the suit";
- "members of a class not present as parties to the litigation";
- "parties who are represented though absent."

*Id.* at 42-43. In a later important class action decision, the Supreme Court similarly focused on the characteristic "representation of the absent plaintiffs' interest" and the concern of "class-action rules for the absent plaintiffs." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809-10 (1985).

But there are no "absent plaintiffs" and nothing "representative" about the *Amorin* class. The class definition includes only "named" plaintiffs. Rec. Doc. 18028 at 34-35. It explicitly excludes the "absent class members" (*id.*) that are an inherent characteristic of class actions. *See Shutts*, 472 U.S. at 809-10 (repeatedly referencing "absent plaintiffs"). No plaintiffs are litigating

---

[7] The Rule 23 advisory committee note makes clear that class certification is objectionable when, as here, individuals are pursuing their own claims with large "amounts at stake for individuals" in "separate suits."

on behalf of other plaintiffs; each plaintiff is a named plaintiff, and each is pursuing her own individual damages amount by submitting her own individual proof.

At this late date, the PSC attempts to reintroduce the five forgotten couples who purport to be their named class representatives. PSC Mass/Class Brief at 8-9. But those couples have played no role in this litigation for the past three years, and the PSC still fails to claim any representative role for them. And they aren't representative at all for many reasons, including that they own property in only four of the sixteen states in the *Amorin* class. *See In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 152 (E.D. Pa. 2009) (dismissing putative class claims for states other than those in which named class representatives resided because "a plaintiff whose injuries have no causal relation to Pennsylvania . . . has no standing to assert a claim under Pennsylvania law"); *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1372 (S.D. Fla. 2001) (same).[8] And as Taishan has highlighted (Rec. Doc. 20632 at 5), the eponymous Amorins ***are no longer even claimants***. They sold their property more than eight years ago; their claim is being pursued by a corporate entity; and they are on a long PSC list of claimants to be dismissed. *See* Rec. Doc. 20952-3.

### 2. The *Amorin* Class Fails Rule 23

Trying to turn a mass tort action into a class action in which all plaintiffs are named also fails to satisfy specific Rule 23 requirements. A putative class in which all plaintiffs are joined as named plaintiffs fails the very first requirement that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Contrary to popular belief, numerosity does

---

[8] Under *Shutts*, Taishan has a constitutional right to have the Court accurately apply the proper state law to each plaintiff's claim. 472 U.S. at 821-22. Application of one state's law (or some non-state-specific law) "to every claim in this case [would be] sufficiently arbitrary and unfair as to exceed constitutional limits." *Id.* at 822.

9

not just count the number of potential class members. Consistent with the text of Rule 23(a)(1), courts in this circuit have recognized that, "[i]n determining whether a class is so numerous that joinder of all members is impracticable, the basic question is practicability of joinder, not a number of interested persons *per se*." *Leal v. Paramount Rest. Grp., Inc.*, No. 2:12–CY–038–J, 2013 WL 1363616, at *3 (N.D. Tex. Apr. 4, 2013) (citing *Garcia v. Gloor*, 618 F.2d 264 (5th Cir.1980)); *accord Hansberry*, 311 U.S. at 41 (explaining that "[t]he class suit was an invention of equity" for situations that "make difficult or impossible the joinder of all," such as "because their whereabouts is unknown"). Here, the named plaintiffs' identity and addresses are known, and joinder was not only practicable, it was actually accomplished.

A class with only named plaintiffs also fails the superiority requirement. Fed. R. Civ. P. 23(b)(3). That is the clear lesson of the lead federal case—which comes from the Fifth Circuit—involving classes "defined to include only individuals . . . who were already named" in the underlying complaint. *Robertson v. Monsanto Co.*, 287 F. App'x 354, 361 (5th Cir. 2008) (reversing class certification and remanding for entry of order denying certification). In that context, the Fifth Circuit held that "the superiority requirement has not been, and cannot be, satisfied." *Id.* at 363. One of the "specific facts" for that holding was that (like here) "the entire class consists of individuals who are already parties to the suit against [the defendant]." *Id.* Another was that "the issue of liability has already been resolved for every class member." *Id.* Thus, far from distinguishing *Robertson*, the PSC's discussion of the "conjunction" of these two facts (PSC Mass/Class Br. at 18) serves to confirm the dispositive application of that Fifth Circuit authority to show that "there is no need for a class action here." *Id.* Furthermore, the Fifth Circuit's "most compelling rationale for finding superiority in a class action"—"the existence of a negative value suit"—is also absent here. *Castano v. Am. Tobacco Co*, 84 F.3d 734, 748 (5th Cir. 1996). The PSC

10

estimates each claims at around $100,000 or greater, giving the named plaintiffs more than sufficient incentive to pursue their claims individually, as they are actually doing.

Like other mass-tort steering committees, the lawyers in this PSC "have not demonstrated that this mass tort has any exceptional features that warrant departing from the general rule and treating it as a class action." *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 604 (5th Cir. 2006) (citing Rule 23 advisory committee note). The fact that class actions with only named plaintiffs are not really class actions should just confirm that point.

### B. The Claimants' Own Private Attorneys Agree that *Amorin* Is a Mass Tort Action, Not a Class Action

In stark contrast to the PSC lawyers, these claimants' local, private attorneys agree that the Chinese Drywall litigation is "a mass tort, not a class action." (Rec. Doc. 20336 at 36; *accord* Rec. Doc. No. 20344 at 2 ("[T]his was *not* a class action, but rather a *mass joinder*."); Rec. Doc. 20346 at 8 ("This matter has all the earmarks of a mass tort."). The private attorneys made that distinction to highlight their own work and to justify a lower mass-tort common benefit recovery for the PSC compared to a class-action-fee award. The very presence of private attorneys and a common benefit fund are inherent characteristics of mass tort actions. *See* Rec. Doc. 20336 at 25-26 (describing "common benefit fund award in mass tort litigation" and noting that "in the mass tort case there are also local counsel who have contingent fee contracts with claimants") (citation omitted). The presence of only named plaintiffs is yet another critical aspect that makes this a mass tort action, not a class action.

### C. The PSC Now Seems to Acknowledge That the Class Certification Was Just a Legal Tactic

On top of all the evidence that an action comprised of only named plaintiffs is a mass tort action, the PSC itself has suggested that they employed class action procedure only as a litigation tactic. *See* PSC Mass/Class Br. at 17 n.39 ("This [class action] procedure for obtaining a judgment

11

seemed the only way to bring these wayward Defendants into the litigation, and indeed it worked."). The PSC admits that this "complex . . . case was handled in unique ways to maximize an expeditious and efficient resolution to the litigation while minimizing the burdens on our judicial system." *Id.* But as the Fifth Circuit has held, expedition and efficiency are not sufficient justifications for class treatment. *See In re Fibreboard Corp.*, 893 F.2d 706, 712 (5th Cir. 1990) (rejecting "difficulties faced by the courts as well as the rights of the class members to have their cases tried" as justifications for an improper class-damages proceeding). And they certainly cannot justify trampling established due-process principles and personal-jurisdiction rules, as the PSC now urges. The nonresident claimants have not met their burden to make a claim-specific showing on personal jurisdiction, and so their claims must be dismissed.

## V. CONCLUSION

Defendants' Motion to Dismiss should be GRANTED.

Dated: October 11, 2017

Respectfully submitted,

/s Michael P. Kenny
Bernard Taylor, Esq.
Georgia Bar No. 669625
Michael P. Kenny, Esq.
Georgia Bar No. 415064
Christina Hull Eikhoff, Esq.
Georgia Bar No. 242539
David Venderbush, Esq.
New York Bar No. 2920817
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia  30309
Phone: (404) 881-7000
Fax: (404) 881-7777
bernard.taylor@alston.com
mike.kenny@alston.com
christy.eikhoff@alston.com
david.venderbush@alston.com

*Counsel for Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd.*

Alan Dean Weinberger
Louisiana Bar No. 13331
HANGARTNER, RYDBERG & TERRELL, LLC
One Shell Square
701 Poydras Street, Suite 310
New Orleans, Louisiana  70179
Phone: (504) 434-6815
Fax: (504) 522-5689
aweinberger@hanrylaw.com

*Local Counsel for Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd.*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, by U.S. mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 11th day of October, 2017.

      <u>/s Michael P. Kenny</u>
      Michael P. Kenny, Esq.
      Georgia Bar No. 415064
      ALSTON & BIRD LLP
      1201 West Peachtree Street NW
      Atlanta, Georgia 30309
      Phone: (404) 881-7000
      Fax: (404) 881-7777
      mike.kenny@alston.com

*Counsel for Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd.*