UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL No. 2:09-md-2047<br><br>SECTION L<br><br>JUDGE ELDON E. FALLON |
| **THIS DOCUMENT RELATES TO:**<br>*ALL CASES* | MAGISTRATE JUDGE<br>JOSEPH C. WILKINSON, JR. |

**DEFENDANTS' SUPPLEMENAL BRIEF ADDRESSING THE DIFFERENCE, IF ANY, BETWEEN A MASS ACTION AND A CLASS ACTION IN WHICH EVERY MEMBER IS A NAMED PLAINTIFF**

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ........................................................................................................................ 2

    A. This Mass Action, Inaccurately Styled As A Class Action, Is Subject To *BMS* ........................................................................................................................... 2

        1. There is no distinction between a mass action and a class action in which every member is a named plaintiff .................................................... 2

        2. *BMS* applies to representative actions .......................................................... 6

    B. The PSC's New "Relatedness" Arguments Fall Short Of Meeting Plaintiffs' Burden Of Establishing Jurisdiction ...................................................... 8

III. CONCLUSION .................................................................................................................. 12

CERTIFICATE OF SERVICE ................................................................................................ 14

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abraham v. St. Croix Renaissance Grp., L.L.L.P.*,
    719 F.3d 270 (3d Cir. 2013)..................................................................................................3

*Armstead v. Multi-Chem Grp., LLC.*,
    No. 6:11–cv-2136, 2012 WL 1866862 (W.D. La. May 21, 2012) ...........................................2

*Barber v. Tenn.*,
    513 U.S. 1184 (1995)..............................................................................................................9

*Boumediene v. Bush*,
    549 U.S. 1328 (2007)..............................................................................................................9

*Bristol-Myers Squibb Co. v. Superior Court of California*, *San Francisco County*,
    137 S. Ct. 1773 (2017)................................................................................................... passim

*Carrera v. Bayer Corp.*,
    727 F.3d 300 (3d Cir. 2013)....................................................................................................7

*In re Chinese Manufactured Drywall Prod. Liab. Litig.*,
    742 F.3d 576 (5th Cir. 2014) ..................................................................................................6

*In re Chinese-Manufactured Drywall Products Liability Litigation*,
    753 F.3d 521 (2014)..........................................................................................................6, 10

*Cimino v. Raymark Indus., Inc.*,
    151 F.3d 297 (5th Cir. 1998) ..................................................................................................6

*Cox v. TeleTech@Home, Inc.*,
    No. 1:14-CV-00993, 2015 WL 500593 (N.D. Ohio Feb. 5, 2015)..........................................3

*In re Dental Supplies Antitrust Litig.*,
    No. 16-cv-00696, 2017 WL 4217115 (E.D.N.Y Sept. 20, 2017) ............................................6

*In re Depakote*,
    No. 12-cv-52, 2017 WL 4348052 (S.D. Ill. Sept. 28, 2017)................................................3, 6

*In re DePuy Orthopaedics, Incorporated*,
    No. 17-10812, 2017 WL 3768923 (5th Cir. Aug. 31, 2017) ...................................................1

*In re DirecTV Early Cancellation Litig.*,
    738 F. Supp. 2d 1062 (C.D. Cal. 2010) ..................................................................................3

*GlaxoSmithKline LLC v. M. M. ex rel. Meyers*,
  __ S. Ct. __, 2017 WL 1153625 (Oct. 2, 2017) ...................................................................9

*Matson v. Steve's Truck & Trailer Repairs, Inc.*,
  No. 7:17-cv-01166-LSC, 2017 WL 4472717 (N.D. Ala. Oct. 6, 2017) ...........................10, 11

*McFadin v. Gerber*,
  587 F.3d 753 (5th Cir. 2009) ................................................................................................8

*Murr v. United States*,
  200 F.3d 895 (6th Cir. 2000) ................................................................................................8

*Robertson v. Monsanto Co.*,
  287 F. App'x 354 (5th Cir. 2008) ......................................................................................5, 6

*Spratley v. FCA US LLC*,
  No. 17-cv-0062, 2017 WL 4023348 (N.D.N.Y. Sept. 12, 2017) ...........................................7

*United States v. Valdez-Aguirre*,
  861 F.3d 1164 (10th Cir. 2017) .............................................................................................8

**Federal Statutes**

28 U.S.C. § 1332(d)(1)(B) ..............................................................................................................2

28 U.S.C. § 1332(d)(11)(B) ............................................................................................................2

28 U.S.C. § 1711(2) ........................................................................................................................2

Class Action Fairness Act ..........................................................................................................2, 7

**Rules**

Federal Rules of Civil Procedure Rule 23 ...........................................................................2, 6, 7

Federal Rules of Civil Procedure Rule 23(b)(3) ...........................................................................6

Federal Rules of Civil Procedure Rule 42 ....................................................................................1

**Constitutional Provisions**

Seventh Amendment .....................................................................................................................6

**Other Authorities**

151 Cong. Rec. S1076-01, 2005 WL 292034 ................................................................................2

I.     **INTRODUCTION**

Following briefing on the application and impact on this MDL of *Bristol-Myers Squibb Co. v. Superior Court of California*, *San Francisco County*, 137 S. Ct. 1773 (2017) ("*BMS*"), and *In re DePuy Orthopaedics, Incorporated*, No. 17-10812, 2017 WL 3768923 (5th Cir. Aug. 31, 2017), this Court requested supplemental briefing "on the difference—if any—between mass tort actions and class actions in which every member is a named plaintiff." Rec. Doc. 20992. The answer, quite simply, is that there is none.

By definition, a true "class action" has a representative quality to it. But when, as here, every individual has been identified, there is no representative component. That is why Defendants have explained that these proceedings are more properly defined as a Rule 42 consolidation (and that class certification is inappropriate). *E.g.,* Rec. Doc. 20956-2 at 11 n.11. Lest there be any doubt on this point, the Court need only turn to Plaintiffs' own filings for confirmation. Time and again, they have stated—through Primary Counsel—that there is "no room to question the nature of this case: it is a mass tort, … *not a class action*," Rec. Doc. 20346 at 8 (emphasis added); Rec. Doc. 20336 at 36 (same); Rec. Doc. 20344 at 2 ("this [is] *not* a class action, but rather a *mass joinder*") (emphasis in original).

The PSC says otherwise, but rather than explain the difference between a mass tort action and a class action involving only named plaintiffs (as the Court requested), the PSC simply asserts that "*Amorin* [is] a representative action." Rec. Doc. 21031 at 17. Yet, the PSC offers no meaningful explanation for how that can be when the class, as certified by the Court, has no absent class members. It never explains whom these individuals could possibly be "representing."

The PSC then uses this brief to advance a new argument: that *BMS* is immaterial because the case did nothing more than eliminate the most lenient version of the "relatedness" inquiry (under the "arising out of" prong) and Plaintiffs satisfy the stricter standard anyway. Even if this Court were to indulge the PSC's improperly raised argument, the same outcome—dismissal— follows. That is because the PSC asks this Court to subject Defendants to jurisdiction based

entirely on a theory that presumes the flow of goods from one "neighboring state" to another. Such an unprecedented, inferential theory of jurisdiction contravenes the plaintiff-specific and claim-specific showing required under *BMS* and falls woefully short of satisfying Plaintiffs' burden of demonstrating each court has personal jurisdiction over Defendants.

## II.  ARGUMENT

### A.  This Mass Action, Inaccurately Styled As A Class Action, Is Subject To *BMS*.

#### 1.  There is no distinction between a mass action and a class action in which every member is a named plaintiff.

The answer to this Court's question is easily resolved because the definitions of "mass action" and "class action" are provided for by statute. A "class action" is defined by the Class Action Fairness Act as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). A "mass action," on the other hand, is "any civil action (except a ["class action"] within the scope of [U.S.C.] section 1711(2)) in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact." 28 U.S.C. § 1332(d)(11)(B); *see also* 151 Cong. Rec. S1076-01, 2005 WL 292034, at *S1082 (referring to a "mass action" as a "specific type of lawsuit in which a large number of plaintiffs seek to have all their claims adjudicated in one combined trial"). Congress plainly sought to draw a distinction.[1]

That distinction is that, unlike a class action, "a mass action has no representative or absent class members because all plaintiffs in a mass action are named in the complaint and

---

[1] *See, e.g., Armstead v. Multi-Chem Grp., LLC*., No. 6:11–cv-2136, 2012 WL 1866862, at *3 n.17 (W.D. La. May 21, 2012) ("If an action removed under 1332(d)(2) as a 'class action' included cases which were not filed as representative actions authorized by a State statute or rule of procedure that authorizes a class action, there would have been no need for Congress to have provided separate removal provisions for 'mass actions' which do not meet these procedural requisites.").

propose a joint trial of their claims, which can result in hundreds of individual claims." *Abraham v. St. Croix Renaissance Grp., L.L.L.P.*, 719 F.3d 270, 272 n.1 (3d Cir. 2013); *see also In re DirecTV Early Cancellation Litig.*, 738 F. Supp. 2d 1062, 1072 (C.D. Cal. 2010) ("a class action is a representative action where a named plaintiff or plaintiffs represents a large number of similarly situated people who are not a part of the lawsuit, while a mass action is not representative because every plaintiff is named in the case"). Accordingly, whereas in a class action, "the class claims rise or fall with the claims of the class representative," *Cox v. TeleTech@Home, Inc.*, No. 1:14-CV-00993, 2015 WL 500593, at *7 (N.D. Ohio Feb. 5, 2015), in a mass action each and every plaintiff's claim rises and falls on its own, *see, e.g.*, *In re Depakote*, No. 12-cv-52, 2017 WL 4348052, at *8 (S.D. Ill. Sept. 28, 2017) ("The claims of any one Plaintiff in the mass action—even those Plaintiffs who brought their claims in one unified complaint—are not dependent upon one another to be resolved on the merits.").

This MDL is a mass action. Plaintiffs have filed numerous complaints—many overlapping—that initially purported to bring claims on behalf of similarly situated plaintiffs. *See, e.g.*, *Amorin v. Taishan*, Case No. 11-1395; *Amorin v. Taishan*, Case No. 11-1672; *Amorin v. Taishan*, Case No. 11-1673. However, the PSC elected to forgo the putatively representative aspect of their complaints by seeking a class, as to each complaint, that expressly omitted "absent class members." Rec. Doc. 17883-1 at 2. As the PSC requested, this Court then "certified" a class that comprises only named plaintiffs:

> All owners of real properties in the United States, who are named Plaintiffs on the complaints in *Amorin*, *Germano*, *Gross*, and/or *Wiltz* (*i.e.*, not an absent class member), asserting claims for remediated damages arising from, or otherwise related to Chinese Drywall manufactured, sold, distributed, supplied, marketed, inspected, imported or delivered by the Taishan Defendants.

Rec. Doc. 18028 at 34-35.[2] Plaintiffs reiterated the point, stating that "[t]he above-defined class

---

[2] As Defendants have previously noted, the class was subsequently and improperly redefined during the 2015 damages hearing. June 9, 2015 Hearing Transcript at 90-91 (expanding class definition from claimants who had already remediated their properties to all claimants who sought damages for remediation, whether or not any remediation had been carried out).

is comprised of *active litigants who are participants*" in the complaints in *Gross*, *Wiltz*, *Abel*, *Haya*, *Almeroth*, and the three *Amorin* actions filed in 2011.[3]  Rec. Doc. 17883-1 at 2-3 (emphasis added); Rec. Doc. 18028 at 35 (same).  By eschewing any representative aspect of the cases, Plaintiffs—for reasons known only to the PSC[4]—opted to proceed with a mass tort action rather than a class action.[5]

      We are not alone in our understanding of the practical significance of the PSC's litigation decisions.  Indeed, Plaintiffs and their counsel have repeatedly agreed that "this [i]s a mass tort, not a class action."  Rec. Doc. 20336 at 36.  In the context of the fee allocation dispute, for instance, Primary Counsel rejected the PSC's efforts to secure an outsized award by appealing to formulas employed in "class action cases," noting the impropriety of such formulas because this case involves "mass torts and common fee awards."  *Id.*; Rec. Doc. 20351 at 30 (same).  Thus, in filing after filing, Plaintiffs' counsel have explained that "this [i]s *not* a class action, but rather a mass joinder," Rec. Doc. 20344 at 2; that "this matter has all the earmarks of a mass tort," Rec. Doc. 20346 at 8; that there is "no room to question the nature of this case: it is a mass tort, … not a class action," *id.* at 8-9; and that this litigation was "formed by a large number of plaintiffs retaining individual counsel and filing individual cases."  Rec. Doc. 20348 at 8.  For that reason, Primary Counsel have rejected—as distinguishable and of "little use"— the PSC's efforts to rely on "class action cases."  Rec. Doc. 20336 at 32.

      The PSC does not dispute that, as a doctrinal matter, there is no distinction between a

---

[3] The Court explained that "for administrative reasons[,] the class definition is limited to the actions in *Amorin*, *Germano*, *Gross*, and *Wiltz*."  Rec. Doc. 18028 at 35.  It continued, "[a]ll class members are named plaintiffs in the *Amorin* actions." *Id.*

[4] The PSC purports to explain why it changed its approach, stating that "the resolution of claims against hundreds of builders and insurers and the Defendants' decision to abandon the litigation caused the class definition to change." Rec. Doc. 21031 at 16.  But none of this explains why a class action had to be abandoned in favor of a mass action.  And even if it did, it would not change the legal implications of the PSC's maneuvering.

[5] In addition, the PSC has clearly proposed many claims be resolved together, as is reflected by its formulaic approach to damages and accompanying spreadsheet process.

mass action and a class action limited to named plaintiffs.  Instead, it argues that "*Amorin* [is] a representative action."  Rec. Doc. 21031 at 17.  But it never explains how.  Sure, when the *Amorin* actions were filed, they were designated as class actions with representatives and absent class members.  *Id.* at 16.  However, the PSC later narrowed the class definition through its class certification request.  *Id.* at 17.  "Despite the narrowing…," the PSC contends, "the status of *Amorin* as a representative action remains as it involves five named class representatives."  *Id.*  Setting aside the oddity of having two plaintiffs—the Amorins—named as plaintiffs in six separate actions, Rec. Doc. 21031 at 8 ("Eduardo and Carmen Amorin, who are participants in *Wiltz*, *Gross*, *Abel*, and each of the *Amorin* compalints"), it remains to be seen who the Amorins—or any of the supposedly class representatives—actually represent.  After all, by definition, when a class consists of no absent class members and only active litigants, every individual represents him- or herself.  What the PSC seems to suggest is that simply by labeling a complaint a class action and identifying representatives, those designations remain *no matter what*—even after a class certification determination that does not embrace such an understanding.  The PSC cites no authority to support that proposition.

In response to Defendants' explanation that the "class" here cannot stand because it is really a mass action, the PSC takes issue with our reliance on *Robertson v. Monsanto Co.*, 287 F. App'x 354 (5th Cir. 2008).  *See, e.g.*, Rec. Doc. 20780-1 at 7-8.  The PSC claims *Robertson* did not reject such an approach and accuses Defendants of misrepresenting the opinion, which, as the PSC claims, "only found the fact that the class contained only named plaintiffs 'significant to the superiority analysis *when considered in conjunction with the fact* that the district court granted summary judgment in favor of the plaintiffs … on the issue of liability before the class was certified.'"  Rec. Doc. 21031 at 18.  But the PSC should have read further.  The opinion continues—in a passage we quoted—by explaining, "the fact that all of the class members are, by definition, already named plaintiffs in the Robertsons' consolidated action has further bearing on the superiority analysis *apart from its effect in conjunction with the district court's previous use of summary judgment*."  *Robertson*, 287 F. App'x at 363 (emphasis added).  It cuts against a

class action because "there is little to be gained from invoking the notice requirements" of Rule 23, "which are designed to identify and notify class members who are unaware of the suit." *Id.* Thus, *Robertson* underscores the propriety of treating this MDL as a mass action, not a class action.

And, as a mass action, each and every plaintiff's claim must be shown to have arisen out of defendant's contacts with the forum state. *See, e.g., In re Depakote*, 2017 WL 4348052, at *8. Plaintiffs bear that burden, and they have not met it here. *In re Chinese Manufactured Drywall Prod. Liab. Litig.*, 742 F.3d 576, 584 (5th Cir. 2014) ("The plaintiff bears the ultimate burden of establishing jurisdiction over a non-resident defendant."). The PSC has not even attempted to make the sort of evidentiary showing necessary to establish that a particular plaintiff's cause of action—*i.e.*, the presence of his faulty drywall—arises out of the Defendants' contacts with the state in which the plaintiff sued (*e.g.*, the particular drywall installed in an Alabama owner's home came from Louisiana, allowing the Alabamian to sue in Louisiana). Because the PSC has not made that showing as to each and every plaintiff, the claims must be dismissed.

### 2. *BMS* applies to representative actions.

Even if this were a representative action (as the PSC asserts), it would still be subject to *BMS*. As we have explained, there is no basis for concluding a Defendant's due process rights for purposes of personal jurisdiction are diminished in the context of a class action. *See, e.g.*, Rec. Doc. 20956-2 at 10 (explaining that Rule 23 is subject to the due process clause). Indeed, in the earlier appeal arising out of this MDL, the Fifth Circuit engaged in precisely the same due process analysis that would be undertaken in any other context.[6] *In re Chinese-Manufactured Drywall Products Liab. Litig.*, 753 F.3d 521 (2014). And since *BMS*, federal courts have found the decision applies with equal force to class actions.[7] *In re Dental Supplies Antitrust Litig.*, No.

---

[6] At the time of that appeal, the PSC had not yet obtained certification of a class of all named plaintiffs or subsumed the actions identified in the Fifth Circuit opinion in that definition.

[7] If anything, courts are on high alert to safeguard defendants' constitutional rights in the class action context. *See, e.g., Cimino v. Raymark Indus., Inc.*, 151 F.3d 297, 312 (5th Cir. 1998) ("the applicability of the Seventh Amendment is not altered simply because the case is [a] Rule

16-cv-00696, 2017 WL 4217115, at *9 (E.D.N.Y Sept. 20, 2017) ("[p]ersonal jurisdiction in class actions must comport with due process just the same as any other case"); *Spratley v. FCA US LLC*, No. 17-cv-0062, 2017 WL 4023348 (N.D.N.Y. Sept. 12, 2017) (applying *BMS* to proposed class action).

The PSC now concedes the point, characterizing as "unremarkable [the] proposition that personal jurisdiction in class actions must comport with Due Process."[8] Rec. Doc. 21031 at 19 n.45. Whereas the PSC previously asserted *BMS* is distinguishable and therefore Plaintiffs need not show any causal connection between plaintiffs' claims and defendants' contacts with the forum state, the PSC now disclaims any reliance on that test. It asserts instead that it can make the showing under the "relatedness" test that survives *BMS*. Rec. Doc. 21031 at 10-15. We address that contention below but note here that even most of the PSC's supposed "representatives" do not reside in Louisiana—the forum to which the PSC devotes its jurisdictional attention.[9] In any event, the PSC does not dispute that *BMS* applies with full force to class actions. Thus, no matter whether the Court characterizes this case as a mass action (as it should) or a class action (notwithstanding the absence of any representative quality), *BMS* applies equally.

---

23(b)(3) class action"); *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013) ("A defendant in a class action has a due process right to raise individual challenges and defenses to claims, and a class action cannot be certified in a way that eviscerates this right or masks individual issues.").

[8] Notwithstanding this concession, the PSC continues to claim that Rule 23 and CAFA somehow expanded the reach of personal jurisdiction. Rec. Doc. 21031 at 19-20. This argument falls outside the Court's supplemental briefing order and should therefore not be entertained. *See infra* at p. 9 n.10. In any event, these arguments fall for the same reason Defendants previously explained: CAFA pertains to subject matter—not personal—jurisdiction and Rule 23 did not— and could not—alter the constitutional due process analysis. *See* Rec. Doc. 20956-2 at 9-11.

[9] *See* Rec. No. 5669-1, at 2 (Amorin); Rec. No. 20824-5, Ex. E, at p. 237 (Butzer); Rec. No. 20824-5, Ex. E, at 179 (Everard); Rec. No. 20824-5, Ex. E, at 242 (McGinn); Rec. No. 20824-5, Ex. E, at 164 (Spencer).

B. **The PSC's New "Relatedness" Arguments Fall Short Of Meeting Plaintiffs' Burden Of Establishing Jurisdiction.**

This Court asked for briefing on a single issue: "the difference—if any—between mass tort actions and class actions in which every member is a named plaintiff." Rec. Doc. 20992. The PSC took the opportunity to advance an entirely new argument unsolicited by the Court's order, asserting that *BMS* is of no moment because Plaintiffs satisfy the "relatedness" standard that survives *BMS*. Plaintiffs meet no such standard, and the PSC's arguments are devoid of any evidence that could even conceivably meet its burden. In lieu of evidence, the PSC urges upon this Court a novel "neighboring state" theory that presumes products sold to one state will make their way to other neighboring states—and so, the PSC asserts, a defendant's contacts as to the former should carry over to the latter. The Court should reject this unprecedented theory.

Until now, the PSC has argued repeatedly that *BMS* has no application to this MDL, offering up a bevy of supposed distinctions—from the proceedings being in federal court and a class action to the litigation's status as a MDL. *See, e.g.*, Rec. Doc. 20935-2 at 26-38; Rec. Doc. 21000 at 2-3, 15-17. The PSC plainly recognized that it had not made—and could not make— the plaintiff-specific and claim-specific showing necessary to establish personal jurisdiction under a due process analysis. *BMS*, 137 S. Ct. 1773 (due process analysis for jurisdictional purposes requires a showing that each plaintiff's claim arises out of defendant's contacts with the forum state); *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) ("In this circuit, specific personal jurisdiction is a claim-specific inquiry"). The PSC now fundamentally shifts its argument, advancing an entirely new contention that it satisfies the "relatedness" standard post-*BMS*. Rec. Doc. 21031 at 10-15. This Court should decline to entertain the PSC's belated arguments, which fall outside the scope of the Court's order on supplemental briefing.[10] But

---

[10] *United States v. Valdez-Aguirre*, 861 F.3d 1164, 1167 (10th Cir. 2017) ("we do not consider this argument, for it went beyond the scope of the order for supplemental briefing"); *Murr v. United States*, 200 F.3d 895, 904 (6th Cir. 2000) ("Petitioner's supplemental brief and addendum was not submitted in compliance with this Court's order" by raising arguments outside of those solicited by the Court and therefore "we will not consider the arguments raised by Petitioner in his Supplemental Brief").

- 9 -

even if this Court were to indulge the PSC, it would lead to the same result: dismissal for lack of jurisdiction.

The first flaw in the PSC's newly-crafted "relatedness" argument is its faulty foundation. The starting point for the PSC's contention is the Supreme Court's denial of certiorari in *GlaxoSmithKline LLC v. M. M. ex rel. Meyers*, __ S. Ct. __, 2017 WL 1153625 (Oct. 2, 2017). The PSC celebrates its significance, alternatively characterizing the denial as "instructive," "illustrat[ing] that … *BMS* was limited to finding that the most lenient ["arising out of"] test … was unacceptable," "illustrating … the methods used by other courts by other courts, including the Fifth Circuit, to assess relatedness in the specific jurisdiction analysis remain intact after *BMS*," "strongly counsel[ing] against Defendants' interpretation of *BMS*," "illustrat[ing] that *BMS* merely rejected the sliding scale approach," and "mak[ing] it crystal clear that the *BMS* did not change the law or create the horribles some might think it created."[11]  Rec. Doc. 21031 at 4, 12, 13 & 13 n.34.  But the denial of certiorari did none of these things.  Why?  Because it is settled that the "denial of certiorari does not constitute an expression of any opinion on the merits."  *Boumediene v. Bush*, 549 U.S. 1328, 1329 (2007) (Stevens and Kennedy, JJ., statement respecting denial of certiorari); *see also Barber v. Tenn.*, 513 U.S. 1184 (1995) (Stevens, J., respecting the denial of the petition for writ of certiorari) (same).

The second flaw in the PSC's argument is that it contravenes settled personal jurisdiction jurisprudence by substituting conjecture for evidence.  The PSC now claims that *BMS* is irrelevant because it did not alter the Fifth Circuit's "relatedness" standard, which the PSC asserts it satisfies. Rec. Doc. 21031 at 13-14.  It does not.  Whatever else the PSC tries to contest, it does not dispute—as *BMS* makes clear—that the due process analysis is plaintiff-specific and claim-specific.  *BMS*, 137 S. Ct. at 1781 (due process analysis requires assessment of whether "a court … exercise[s] specific jurisdiction *over a claim*"); *id.* at 1781 ("[w]hat is

---

[11] The PSC similarly touts the significance of the denial of certiorari in *TV Azteca v. Ruiz*. Rec. Doc. 21031 at 13 n.35.

needed [for personal jurisdiction purposes] … is a connection between the forum and *the specific claims at issue*") (emphasis added); *id.* at 1782 (analyzing where the relevant conduct occurred for each plaintiff). That means to meet their burden, Plaintiffs must demonstrate that "the defendant's contacts with the forum … relate to the plaintiff's cause of action or have given rise to it." *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 753 F.3d at 521, 543 (5th Cir. 2014). In other words, the PSC must show each defendant's contacts with the state in which each plaintiff sued gave rise to each plaintiff's claim (*i.e.*, resulted in that plaintiff's acquisition of the allegedly defective drywall).

The PSC does not even attempt to make this showing. Instead, it simply asserts that "[h]aving been the conduit for the Defendants' sales of drywall to the southeastern United States" Defendants are subject to jurisdiction in Louisiana. Rec. Doc. 21031 at 14. Likewise, it claims that "as a result of Defendants' targeting of distributors in Louisiana, Virginia, and Florida to distribute their products throughout the United States and in particular to the contiguous states in the southeast," it satisfies the Fifth Circuit's relatedness inquiry. *Id.* at 9. After all, it asserts, "[t]he drywall in the nonresidents' homes flowed through these states." *Id.* But the PSC's bald assertions cannot substitute for *evidence*, which is what is indisputably required.

In lieu of proof, the PSC offers the bare—and unsupported—assertion that "[o]bviously, distributors in Louisiana, Florida, and Virginia sent Defendants' products to states other than their own locales." Rec. Doc. 21031 at 9 n.30. This is precisely the sort of bootstrapping prohibited by *BMS*. There, the nonresident plaintiffs asserted that Bristol-Myers' contractual arrangement with a distributor in California allowed the nonresident plaintiffs to sue in the state. *BMS*, 137 S. Ct. at 1783. The Supreme Court rejected this approach, explaining that absent "evidence to show how or by whom the Plavix they took was distributed to the pharmacies that dispensed them," such an inferential approach is prohibited. *Id*; *see also Matson v. Steve's Truck & Trailer Repairs, Inc.*, No. 7:17-cv-01166-LSC, 2017 WL 4472717, at *4 (N.D. Ala. Oct. 6, 2017) (where defendant had no direct contact with Alabama, court rejected jurisdiction-based

argument that "it was foreseeable … that the tractor [defendant] repaired would eventually leave Kentucky to return to Mississippi and other states in the Southeast" and thus given "the geographical proximity between Mississippi and Alabama," defendant could "reasonably anticipate being haled into court there").

Here, it would be generous to even concede that the PSC is proceeding by inference. Inferences, at least, have a foundation that they build off of. The PSC does not even offer that. It asks this Court to eschew Plaintiffs' obligation to produce evidence in favor of a baseless presumption that their drywall originated not just in one state (similar to what plaintiffs argued in *BMS*), but apparently in all three states (Florida, Louisiana, and Virginia).[12] State differently, the PSC has not just the *BMS* problem but a compounded version of it due to its overlapping complaints.

\* \* \*

Through multiple rounds of briefing on the jurisdictional issues before this Court, it has become apparent that—try as it might—the PSC cannot bob and weave its way around the procedural mess that it has created. The PSC has long responded to Defendants' repeated identification of these problems by casting aspersions, distracting from the issues through inflammatory rhetoric. What it has not done is offer the Court a doctrinally-sound way to resolve this litigation. That is because there is none—at least not the way this MDL is currently structured. The sensible course of action is to pause, correct the problems now, and proceed with remands as expeditiously as possible. Were the Court to proceed otherwise and continue down the PSC's ill-fated path, the result may well be a reset of the entire litigation years down the road. That benefits no one.

---

[12] What makes the PSC's assertion all the more baffling—even as unsupported as it is—is that the PSC has named the exact same plaintiffs in multiple complaints—sometimes as many as six—in multiple fora. *Id.* at 8. But the PSC never explains how it is conceivably possible for one plaintiff's cause of action concerning imported defective drywall to arise out of defendants' contacts with multiple states.

- 12 -

**III.     CONCLUSION**

For the foregoing reasons and those set forth in Defendants' *BMS*-related filings, this Court should dismiss claims against Defendants based upon the SBE/agency imputation theories, dismiss property owners from the cases filed outside the states in which the properties are located, and decertify the nationwide class.

Respectfully submitted,

*/s/ L. Christopher Vejnoska*

| | |
|---|---|
| L. Christopher Vejnoska (CA Bar No. 96082)<br>ORRICK, HERRINGTON & SUTCLIFFE LLP<br>The Orrick Building<br>405 Howard Street<br>San Francisco, CA  94105<br>Tel:  415-773-5700<br>Email:   cvejnoska@orrick.com | James L. Stengel (NY Bar No. 1800556)<br>Xiang Wang (NY Bar No. 4311114)<br>ORRICK, HERRINGTON & SUTCLIFFE LLP<br>51 West 52nd Street<br>New York, NY, 10019<br>Tel:   212-506-5000<br>Email:  jstengel@orrick.com<br>            xiangwang@orrick.com |

Eric A. Shumsky (D.C. Bar No. 477926)
ORRICK, HERRINGTON & SUTCLIFFE LLP
Columbia Center
1152 15th Street NW
Washington, D.C. 20005
Tel: 202-339-8400
Email: eshumsky@orrick.com

*Counsel for CNBM Co. Ltd., BNBM (Group) Co. Ltd., and BNBM PLC*

Ewell E. Eagan, Jr. (LA Bar No. 5239)
Donna Phillips Currault (LA Bar No. 19533)
GORDON, ARATA, MONTGOMERY,
BARNETT, MCCOLLAM, DUPLANTIS
& EAGAN, LLC
201 St. Charles Avenue, 40th Floor
New Orleans, LA 70170-4000
Tel: (504) 582-1111
Email: eeagan@gordonarata.com
            dcurrault@gordonarata.com

*Counsel for CNBM Co. Ltd.,*

Harry Rosenberg
LA Bar No. 11465
Phelps Dunbar LLP
365 Canal St., Suite 2000
New Orleans, LA  70130
Tel:  (504) 566-1311
Harry.Rosenberg@Phelps.com

*Counsel for BNBM (Group) Co. Ltd. and BNBM PLC*

- 14 -

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing DEFENDANTS' SUPPLEMENAL BRIEF ADDRESSING THE DIFFERENCE, IF ANY, BETWEEN A MASS ACTION AND A CLASS ACTION IN WHICH EVERY MEMBER IS A NAMED PLAINTIFF has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail and upon all parties by electronically uploading the same to File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on October 11, 2017.

      /s/ L. Christopher Vejnoska
      L. Christopher Vejnoska (CA Bar No. 96082)
      ORRICK, HERRINGTON & SUTCLIFFE LLP
      The Orrick Building
      405 Howard Street
      San Francisco, CA  94105
      Tel:  415-773-5700
      Fax: 415-773-5759
      Email:  cvejnoska@orrick.com

      *Counsel for CNBM Co. Ltd., BNBM (Group) Co. Ltd., and BNBM PLC*