**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: **CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL NO. 2047**<br><br>**SECTION: L** |
| **THIS DOCUMENT RELATES TO:** | **JUDGE FALLON** |
| *ALL CASES* | **MAG. JUDGE WILKINSON** |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**PRIMARY COUNSEL'S OPPOSITION TO
SEVENTH MOTION FOR DISBURSEMENT**

**MAY IT PLEASE THE COURT:**

The Plaintiffs' Steering Committee ("PSC") requests a disbursement of $500,000.00 from the Chinese Drywall MDL 2047 Holdback Account (the "Holdback Account") to fund its ongoing pursuit of the non-settling Taishan entities.  *See* Seventh Motion for Disbursement of Funds (For Expenses), Doc. 20889  (hereinafter, the "Disbursement Motion").  This request should be denied as the Holdback Account, including those funds sought to be disbursed, was funded solely by Knauf-related settlements of Knauf-related claims.  Diversion of these settlement funds to finance ongoing and future litigation against the non-settling Taishan entities is wholly improper.  For these reasons, as further explained below, primary counsel[1] respectfully request that the Court deny the Disbursement Motion filed on August 3, 2017.

---

[1] For purposes of this pleading, primary counsel consist of those firms appearing or represented in the signature block of this Opposition.

1

I.      **THE HOLDBACK ACCOUNT CONTAINS CONTESTED FUNDS.**

Primary counsel take no position on the propriety of the Taishan-related expenses for which disbursement is sought.  Rather, Primary counsel object to the Disbursement Motion because the funds on deposit in the Holdback Account, from which the PSC seeks a disbursement, are contested.  For that reason, it is important to understand the origin of these funds.

On February 7, 2013, the Court approved five settlement agreements reached with Knauf, InEx, Banner, L&W and the Global settlement classes.  Doc. 16570.  In accordance with the terms of those agreements, the settling defendants paid attorneys' fees and costs which were deposited into appropriate Attorney Fee Qualified Settlement Funds or "QSFs."  Doc. 17938.  Importantly, **_no settlement_** was reached with the Taishan defendants and litigation against these defendants is ongoing.

On October 23, 2014, the Fee Committee filed its Inspection Costs and Hold Back Motion Pursuant to Pretrial Order No. 28(E) (the "Hold Back Motion") and accompanying memorandum, which requested a stipend to reimburse primary counsel for reasonable inspection costs expended in individual cases that received settlement benefits. Docs. 18081, 18081-1.  This Motion also contained a request for a hold back of $10 million for "use in connection with on-going remaining litigation and settlement administration work." Doc. 18081-1 at 4.  The Fee Committee did not explain why $10 million was an appropriate amount necessary for the purposes set forth in the Holdback Motion nor did it address whether any funds remained from the initial $6 million Knauf cost advance (Doc. 12110).  Docs. 18081, 18081-1.  On December 17, 2014, the Hold Back Motion was granted and _inter alia_ ". . . the Court accept[ed] the Fee Committee's recommendation of a $10 million hold back."  Doc. 18215.

Thereafter, the PSC filed its Fifth Motion for Disbursement of Funds From the MDL 2047 PSC Shared Costs Fund (for Expenses) seeking leave to disburse the $10 million hold back previously ordered by the Court.  Doc. 19427.  On September 1, 2015, the Court granted this motion and ". . . authorized [the PSC] to disburse $10 million from the Knauf-Attorney Fund QSF. . . ."  Doc. 19437.  This disbursement effectively removed $10 million from the funds available to pay the attorneys' fees of common benefit and primary counsel for work related to the Knauf, InEx, Banner, L&W and Global settlements. As explained in the PSC's memorandum in support of the Disbursement Motion, "These funds [$10 million] were deposited into an account entitled the 'Chinese Drywall MDL 2047 Holdback Account.'"  Doc. 20889-1 at 3.

On June 30, 2017, two and a half years after the Court granted the Fee Committee's recommendation of a $10 million hold back, the Holdback Account contained $7,547,124.01. Doc. 20889-1 at 2.  From the initial $10 million set-aside, $1 million was disbursed to the PSC pursuant to a September 1, 2015 Order.  Doc. 19488.  An additional $1 million was disbursed to the PSC pursuant to a December 3, 2015 Order.  Doc. 19877.   The purpose of this second disbursement was to "reimburse the PSC Account for funds that have previously been used to pay for the costs related to Taishan matters since January 1, 2015."  Doc. 19844 at 2.[2]  Finally, on May 5, 2016, the Court issued an Order authorizing an additional $500,000.00 disbursement from the Holdback Account to the MDL 2047 PSC Shared Cost account.  Doc. 20243.[3]

---

[2] The amount and nature of the costs paid from the PSC Account for Taishan matters is unknown.

[3] It appears that the initial $10 million disbursement to the Holdback Account and the $2.5 million in subsequent disbursements from the Holdback Account were all granted ex parte.  While notices of hearing were filed in connection with the Fifth Motion for Disbursement (Doc. 19427-3) and the Sixth Motion for Disbursement (Doc. 20218-3), the orders allowing such disbursements (Docs. 19437 and 20243, respectively) were issued prior to the noticed hearing date and prior to allowing

The PSC now seeks a disbursement from the Holdback Account to be used exclusively in connection with the litigation against Taishan and related entities.  Doc. 20889.[4]   The funds at issue originated from the Knauf-Attorney Fund QSF.  Doc. 19437.  That is, the funds in the Holdback Account were paid by Knauf and/or other settling defendants pursuant to the applicable settlement agreements.  These funds were intended to compensate counsel for their work in connection with the Knauf and related settlements and should not be used to finance the pursuit of the Taishan entities.

On September 29, 2017, primary counsel addressed similar matters in their Motion for Accounting.  Docs. 20995-3 and 20995-4.  The Motion for Accounting, *inter alia*, seeks an order from the Court that the funds improperly set aside to pursue the Taishan defendants as well as improper expenses and fees which were segregated from primary counsel either be added back or credited to the Knauf-Attorney Fund QSF for the purpose of allocating attorneys' fees between common benefit counsel and primary counsel.  If the Court grants the Motions for Accounting, the relief requested herein becomes moot.  However, if the Court denies the Motion for Accounting, in whole or part, primary counsel request denial of the Disbursement Motion.

---

any opposing party(ies) the requisite time to respond in advance of the hearing date.  *See* LR 7.5. The improper disbursement and use of funds in this litigation has been briefed in Primary Counsel's Motion for Accounting and Adjustment of Global Award of Attorneys' Fees and Reimbursement of Expenses and supporting memorandum (Doc. 20995-3 and 20995-4) [filed under seal] (collectively, the "Motion for Accounting") and Primary Counsel's Objections and Responses to Special Master's Recommendations Concerning Attorneys' Fees and Expenses (Doc. 20950) (Doc. 20993-2) [filed under seal].

[4] This opposition provides the first opportunity for primary counsel, after some discovery in the attorneys' fee allocation dispute, to directly contest a disbursement request based on the propriety of using attorneys' fees from the Knauf, InEx, Banner, L&W, and Global settlements for litigation costs related to the non-settling Taishan defendants.

## II.   KNAUF   SETTLEMENT   FUNDS   SHOULD   NOT   FINANCE   TAISHAN LITIGATION.

The PSC seeks to use Knauf settlement funds to pursue the non-settling Taishan defendants:

> The PSC has incurred substantial time, effort and expense in handling its responsibilities since the approval of the various Class Settlements. The PSC has reported to the Court at monthly status conferences the voluminous discovery efforts that have been undertaken in connection with Taishan, CNBM, BNBM and other third parties. Substantial additional time and expense expenditures are anticipated over the next months. It is necessary at this time for the PSC to transfer $500,000.00 from the "Chinese Drywall MDL 2047 Holdback Account" to the MDL 2047 PSC Shared Cost fund to cover future expenses incurred and reported in accordance with Pre-Trial Order No. 9.

Doc. 20889-1 at 1-2.

Irrespective of whether these costs are reasonable and for the common benefit, primary counsel contest the removal of $10 million from the attorneys' fees obtained in the Knauf and related settlements to pursue the unrelated and non-settling Taishan defendants.

First, no legal authority permits the siphoning of fees earned by primary counsel in a settlement to fund litigation against unrelated and non-settling defendants, especially given the insufficiency of the available fees to compensate counsel for Knauf, InEx, Banner, L&W, and Global settlement related work.  *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 302 n. 11 (3d Cir. 2005) (district courts cautioned that they should "not conflate [ ] two distinct settlements ....").  Indeed, a party entrusted with the funds of another is required to disgorge funds spent "unrelated to the [parties'] expectations of the purposes, risks, and rewards of entrusting the [party] with their investment dollars."  *S.E.C. v. JT Wallenbrock & Associates*, 440 F.3d 1109,

15 (9th Cir. 2006).  Diversion of fees is particularly improper in this case as some primary counsel have little or no Taishan cases.

Knauf and the other settling defendants paid fees that were intended to compensate counsel for work in connection with the Knauf and related settlements.  *See, e.g.,* Third Amended Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047, § 14.3. (Doc. 16407-3).   However, the $10 million holdback is being used to finance unrelated litigation.  *See, e.g.,* Krupnick Campbell Malone, et al.'s Comments and Responses to the Special Master's Recommendation Concerning Attorneys' Fees and Expenses,  Doc. 20998-2 at 5 [filed under seal] (hereinafter, "KCM Response").  At the time primary counsel and their clients agreed to the Knauf settlement, the PSC did not disclose and primary counsel had no notice that any portion of the fees Knauf or other settling defendants agreed to pay would be diverted from their intended purpose of compensating the attorneys whose clients participated in the Knauf-related settlements and/or for the administration of the same.  Indeed, there was no notice that these funds would be diverted from the earned fees of primary counsel to finance the pursuit of claims by non-settling claimants against unrelated and non-settling defendants and effectively shift the risk of non-recovery upon primary counsel, despite that they may not participate in a subsequent recovery from such non-settling defendants.

Second, primary counsel were misled regarding the purpose of the $10 million set aside. ***They did not learn until the deposition of Arnold Levin, Plaintiffs' Lead Counsel and member of the PSC, in January of 2017 that the $10 million hold back was actually intended to be***

*used to pursue Taishan*. *See* Docs. 18081, 18081-1, 18215; 20922-3 [filed under seal].[5]

Specifically, the initial request for the $10 million hold back was made by the Fee Committee

on October 23, 2014 in the Hold Back Motion and accompanying memorandum.  That motion

requested a stipend to reimburse primary counsel for reasonable inspection costs expended in

individual cases that received settlement benefits. *See* Docs. 18081, 18081-1.  It did not mention

Taishan, much less provide any notice that its purpose was to fund litigation entirely unrelated

to the settlement and/or settling defendants.  *See* Docs. 18081, 18081-1.  Rather, as a  secondary

matter, the Fee Committee requested a hold back of $10 million for "use in connection with on-

going remaining litigation and settlement administration work." Doc. 18081-1 at 4.[6]  The Fee

Committee's purported use of the funds was as follows: "[t]his hold back will assist with  costs

exceeding the hold back contemplated in Section 14.8.1 of the Fourth Knauf Settlement

Agreement [Rec. Doc. 17165-1] for post-settlement and administrative matters." *Id*. at 4, fn. 5.

Third, that the $10 million holdback is being used as a substitute for further PSC

---

[5] Similarly, primary counsel were unaware until late 2016, during the course of the special master fee allocation proceeding, that litigation expenses solely related to the non-settling Taishan entities were being charged against the funds obtained from settling defendants.

[6] In addition to the $10 million holdback, which was improperly removed from the Knauf-Attorney Fund QSF, discovery has revealed that a portion of the $6 million cost advance paid by Knauf as part of the Knauf settlement has been spent pursuing the Taishan defendants.  In fact, from the $10 million hold back, the PSC has credited the Shared Cost Fund (the fund used to finance shared costs associated with the settling defendants) $1 million as reimbursement for costs spent on Taishan matters since January 1, 2015. See Doc. 19844. Nevertheless, discovery has revealed significant Taishan related shared costs incurred prior to January 1, 2015, for which the Shared Cost Fund has not been reimbursed.  Moreover, discovery has further revealed significant Taishan related held costs that also have been charged against the Knauf-Attorney Fund QSF.  In summary, the Taishan related expenditures have exceeded the $10 million holdback.

assessments[7] does not justify the holdback, any disbursements from the holdback, or the resulting reduction of attorneys' fees owed to counsel as a result of the Knauf, Global, Banner, InEx, and L&W settlements. *See* KCM Response, p. 5. The Fee Committee does not dispute the PSC's intention to use these funds in lieu of an assessment as they have argued that primary counsel "would rather 'cut off their nose to spite their face'. Indeed, the funds already approved by the Court for disbursement -- to which Primary Counsel now object -- would have to be replaced by assessments imposed on several of their clients, *e.g.,* Mr. Parker and Mr. Bryson, if their motion was ever granted." Doc. 20932. Assessments are part and parcel of PSC membership. The diversion of fees earned by primary counsel in one settlement to relieve the PSC of the burden of making future contributions for litigation associated with non-settling defendants is improper.

For these reasons, the Disbursement Motion must be denied, and no further disbursements from the Holdback Account should be allowed. Further, as explained in greater detail in Primary Counsel's Memorandum in Support of Motion for Accounting and Adjustment of Global Award of Attorneys' Fees and Reimbursement of Expenses, the $10 million improperly removed from the Knauf-Attorney Fund QSF must be reimbursed or credited to the attorneys' fee fund to be allocated among counsel in the Knauf and related settlements. Doc. 20995-4 [filed under seal].[8]

---

[7] Notably, 80% of prior PSC member assessments ($11,435,000.00) has already been reimbursed (Doc. 16829), and the remaining 20% ($2,187,000.00) has been set aside for reimbursement from the Knauf Attorney Fund QSF. *See* Original Chinese Drywall Attorney Fee Reconciliation, Doc. 20293-2 at 18 (reflecting "[u]nreimbursed cash assessments" of $2,187,000.00).

[8] *See also*, KCM Response at 5-6 (containing a similar request).

## III.    CONCLUSION

For the reasons set forth above, primary counsel respectfully request an order denying the Disbursement Motion or, as requested in the Motion for Accounting and accompanying memorandum (Docs. 20995-3, 20995-4 [filed under seal]), applying a credit to the Knauf-Attorney Fund QSF for the purpose of allocating attorneys' fees between common benefit counsel and primary counsel.

Respectfully submitted,

**FAIRCLOTH, MELTON & SOBEL, LLC**

By:    /s/ *Jimmy R. Faircloth, Jr.*
    Jimmy R. Faircloth, Jr. (Objectors' Co-
    Liaison Counsel) (LA #20645)
    jfaircloth@fairclothlaw.com
    Brook L. Villa (LA # 31988)
    bvilla@fairclothlaw.com
    Franklin "Drew" Hoffmann (LA #35824)
    dhoffmann@fairclothlaw.com
    412 N. 4th Street, Suite 230
    Baton Rouge, LA 70802
    Phone: (225) 343-9535
    Fax: (225) 343-9538

*Attorneys for Parker Waichman LLP*

**BARON & BUDD, P.C.**

By:    /s/ *Russell W. Budd*
    Russell W. Budd (TX #03312400)
    rbudd@baronbudd.com
    S. Ann Saucer (TX #00797885;
    LA #21368)
    asaucer@baronbudd.com
    Holly Werkema (TX # 24081202)
    hwerkema@baronbudd.com
    3102 Oak Lawn Avenue, Suite 1100
    Dallas, TX 75219
    Phone: 214-521-3605
    Fax: 214-520-1181

**LISKA, EXNICIOS & NUNGESSER**

By:    /s/ *Val Patrick Exnicios*
    Val Patrick Exnicios, Esq. (Objectors' Co-
    Liaison Counsel)
    vpexnicios@exnicioslaw.com
    1515 Poydras Street,
    14th Floor, Ste. 1400
    New Orleans, LA. 70112
    Phone: (504) 410-9611
    Fax: (504) 410-9937

*Attorneys for Whitfield Bryson & Mason LLP,*
*Pendley Baudin & Coffin, Rhine Law Firm, and*
*Luckey & Mullins*

**ALLISON GRANT, P.A.**

By:    /s/ *Allison Grant*
    Allison Grant (FL #858330)
    agrant@allisongrantpa.com
    14 SE 4th St
    Boca Raton, FL 33432-6111
    Phone: 561-994-9646
    Fax: 561-431-4627

**GENTLE, TURNER, SEXTON & HARBISON, LLC**

By:    /s/ *K. Edward Sexton, II*
    K. Edward Sexton, II

**MCCALLUM, HOAGLUND, COOK & IRBY, LLP**

By: ___/s/ *Eric D. Hoaglund*_____
    Eric D. Hoaglund
    ehoaglund@mhcilaw.com
    905 Montgomery Highway, Suite 201
    Vestavia Hills, Alabama 35216
    Phone: (205) 824-7767
    Fax: (205) 824-7768

**GIEGER, LABORDE & LAPEROUSE, LLC**

By: ___/s/ *Victoria E. Emmerling*_____
    Andrew A. Braun (LA #3415)
    abraun@glllaw.com
    Victoria E. Emmerling (LA #33117)
    temmerling@glllaw.com
    701 Poydras Street, Suite 4800
    New Orleans, Louisiana 70139-4800
    Phone: (504) 561-0400
    Fax: (504) 561-1011

  *Attorneys for Morris Bart, L.L.C.*

**MILSTEIN, JACKSON, FAIRCHILD & WADE, LLP**

By: ___/s/ *Mark Milstein*_____
    Mark Milstein
    mmilstein@mjfwlaw.com
    10250 Constellation Blvd., 14th Floor
    Los Angeles, CA 90067
    Phone: (310) 396-9600

**YANCE LAW FIRM, LLC**

By: ___/s/ *R. Tucker Yance*_____
    R. Tucker Yance (AL #ASB-9775-H71Y)
    rty@yancelaw.com
    169 Dauphin Street Suite
    318 Mobile, AL 36602
    Phone: (251) 432-8003
    Fax: (251) 432-8009

esexton@gtandslaw.com
501 Riverchase Parkway East, Suite 100
Hoover, Alabama 35244
Phone: (205) 716-3000
Fax: (205) 716-3010

**ROBERTS AND DURKEE, LLP**

By: ___/s/ *C. David Durkee*_____
    C. David Durkee
    durkee@rdlawnet.com
    2665 South Bayshore Drive, Suite 300
    Coconut Grove, FL 33133
    Phone: (305) 442-1700
    Fax: (305) 442-2559

**ALTERS LAW FIRM, P.A.**

By: ___/s/ *Jeremy W. Alters*_____
    Jeremy W. Alters (FL #111790)
    jeremy@alterslaw.com
    Justin D. Grosz (FL #984000)
    justin@alterslaw.com
    Matthew T. Moore, Of Counsel (FL #70034)
    matthew@alterslaw.com
    1855 Griffin Road, Suite C470
    Dania Beach, FL 33004
    Phone: (305) 571-8550
    Fax: (305) 571-8558

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing *Opposition to Seventh Motion for Disbursement* has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 12th day of October, 2017.

_____ */s/ Jimmy R. Faircloth, Jr.* _____
OF COUNSEL

11