UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION<br><br>**THIS DOCUMENT RELATES TO:**<br>*Gross v. Knauf Gips KG*, 2:09-cv-6690<br>*Amorin v. Taishan Gypsum*, 2:11-cv-1395<br>*Amorin v. Taishan Gypsum*, 2:11-cv-1673<br>*Wiltz v. Beijing New Building Materials Public Limited Co.*, 10-cv-361 | MDL No. 2:09-md-2047<br><br>SECTION L<br><br>JUDGE ELDON E. FALLON<br><br>MAGISTRATE JUDGE<br>JOSEPH C. WILKINSON, JR. |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO VACATE PRELIMINARY DEFAULTS**

Defendants China National Building Materials Co., Ltd. ("CNBM Company"), Beijing New Building Material (Group) Company, Limited ("BNBM Group"), and Beijing New Building Materials Public Limited Company ("BNBM PLC") (collectively, the "Movants") respectfully submit this memorandum in support of their motion to vacate the entries of default against them in the above-captioned proceedings.

## I.   INTRODUCTION

Between 2011 and 2014, the PSC haphazardly moved this Court to enter preliminary defaults against some—but not all—defendants, and in some—but again, not all—cases.  This Court granted the requests as to Movants on the grounds that they had not responded to Plaintiffs' complaints.  Both good cause and recent Supreme Court jurisprudence demand that the Court set aside the preliminary defaults.

The Court's own orders provide all the good cause necessary to grant this motion.  First, the Court had expressly informed all defendants that no response to any complaint was due until the PSC both submitted a notice of completion and filed a Master Complaint.  Neither of those events had occurred at the time the Court entered its defaults.  Indeed, to this day, the PSC *still* has not filed a Master Complaint, and it did not submit a notice of completion until several months ago—and it almost immediately negated even that notice when it filed new, additional

complaints. Second, setting aside the defaults would not prejudice Plaintiffs because, pursuant to the Court's pre-trial orders, Plaintiffs long have been required to preserve evidence. This is therefore not a situation in which critical evidentiary concerns would arise if the defaults were set aside. Third, Movants have meritorious defenses, including those that have resulted in orders by this very Court dismissing several previously defaulted defendants. In addition to good cause and the Court's own pretrial orders, the recent Supreme Court opinion in *Bristol-Myers Squibb* (*BMS*) requires the preliminary defaults be vacated.

Importantly, no delay will result from granting this motion. As discussed in greater detail below, preliminary defaults have not been entered in every action, and so even if those defaults had been properly entered—and they were not—proceedings in other cases still would occur. Further, the PSC itself filed numerous new complaints in recent months. Those "protective complaints" are operative, the PSC filed them for a reason (presumably to attempt to circumvent the clear effect of the Supreme Court's decision in *BMS*), and those complaints are in their early stages and will proceed from there — with or without this motion. Accordingly, the Court should vacate the entries of default and follow the federal courts' oft-stated preference to resolve cases on their merits.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     The PSC Did Not Properly Serve Its Complaints, Then Created Further Confusion By Filing More of Them, Which It Also Failed to Serve Properly.

The filing and amendment of the complaints in the four actions in which preliminary defaults have been entered against Movants have involved a bewildering pattern of amendments and inadequate service of process by the PSC. These complaints, and the complaints-in-intervention that added thousands of claimants thereto, were often unserved, or served on the wrong company, and in several cases even were addressed to non-existent companies.[1]

Further complicating matters, the PSC has repeatedly filed what it refers to as "Omnibus Class Action Complaints" that purport to incorporate the parties and allegations of prior MDL

---

[1] A history of service of process, and the multiple defects therein, is provided in Appendix A.

proceedings.  As the PSC described this process as early as 2009, its plan was to "fil[e] several of them on a rolling basis" in which "all of the existing plaintiffs . . . will be suing everybody in the chain of commerce[.]"  Rec. Doc. 402, at 20:8-12.  The purpose of such complaints was to "only have to spend one amount to get service through the Hague[.]"  *Id.* at 21:23-24.  The Court endorsed this unorthodox approach despite acknowledging that the "omnibus" complaint is not found in the Federal Rules of Civil Procedure but was instead "invent[ed]" here. Rec. Docs. 612, at 20:23-34, 7203 at 18:2-10.  And in permitting the use of pleadings that not even experienced American corporate defendants would understand, the Court never addressed whether a desire to reduce service costs stands constitutes sufficient reason to ignore the clear mandates of a treaty signed by independent nations, and presumably relied upon by those nations' citizens.  Nonetheless, perhaps recognizing both the novelty and confusing nature of this strange process, the Court advised the PSC in December 2009 that it "expect[ed] that [a single, Master Complaint] would be forthcoming *as quickly as reasonable*."  Rec. Doc. 612, at 20:23-34 (emphasis added).

Nearly eight years later, this still has not happened.  Contrary to the Court's stated expectation, the PSC continued *for years* to file more Omnibus complaints.  In fact, the PSC repeatedly announced the continuation of this process, representing more than once that it was "still filing omnibus complaints."  Rec. Doc. 7203 at 17:24; *see also* Hearing Tr. 2/23/2011 at 18:11-13 (Court: "Anything on the Omnibus class?"; PSC: "They just continue to be filed, Your Honor.").  Indeed, the PSC still is ignoring the Court's 2009 admonition.  As recently as August 1, 2017, the PSC filed *twelve* new omnibus complaints, consisting of the Omnibus XX(a) complaint in intervention (Rec. Docs. 20811, 20845) and the eleven actions filed as part of the PSC's effort to sidestep the clear mandates of  *Bristol-Myers Squibb*.  Yet the PSC continues to blame the defendants for both the current procedural quagmire and the delay that inevitably has accompanied its ongoing, decade-long cavalcade of complaints, amendments, interventions, "omnibus" actions, and "protective" actions.

### B. The Court's Pre-Trial Order 1H Provided a Definitive Statement of the Parties' Deadlines.

This extraordinary morass—of service of process directed to the wrong entities, identical complaints identifying thousands of new claimants and overlapping defendants, and novel "omnibus" complaints—created obvious and significant uncertainty as to whether any parties were obligated to respond, and if so by what date and to which complaint. Recognizing this, and in an effort to introduce at least some clarity, the Court entered PTO 1G on May 27, 2010, which **suspended the deadline** for Movants to respond to the iterative complaints until 30 days after Plaintiffs filed a notice expressly informing the Movants that they had completed all amendments to the omnibus complaints. Rec. Doc. 3348 at 2 ("IT IS FURTHER ORDERED that, once all amendments to the Omnibus complaints are completed, the PSC will file a Notice of Completion . . . . Thereafter, counsel will be required to file responsive pleadings . . . within thirty (30) days after filing and service of the Notice.").

The Court strove for even greater clarity and precision shortly after issuing PTO 1G, decreeing in PTO 1H that "the [Plaintiffs are] directed to file a Master Complaint *within 60 days* of the filing of the [Plaintiffs'] Notice [of Completion]." Rec. Doc. 6083 (emphasis added). Then, "*[o]nly after* the Master Complaint is filed will counsel for any defendant identified therein be required to file responsive pleadings within thirty (30) days thereof." *Id.* at 2 (emphasis added). The ephemeral nature of the PSC's first notice of completion— issued in April, contradicted in June by a new complaint in intervention, and eviscerated in August by the filing of eleven new actions in federal courts in seven different states—underscored the Court's wisdom in establishing this process. And of course, to date, the PSC has not filed the Master Complaint that this Court expressly ordered in the plainest of terms.

### C. Plaintiffs' Motions for "Preliminary Default Judgments" and Movants' Entry into the Litigation.

Despite having failed to serve Movants properly or adhere to the requirements of PTO 1H, the PSC introduced still more procedural novelty, moving the Court to enter "preliminary default judgments" under Rule 55. But no such thing exists in the Federal Rules. Rule 55

contemplates "entry of default" and "default judgments," but nowhere does it mention a "preliminary default judgment."[2] Because there has been no assessment of damages, the "preliminary default judgments" cannot be default judgments; judgments are final. So, if they are anything, they are entries of default. *See, e.g., Duncan v. Tangipahoa Par. Council*, No. 08-cv-3840, 2009 WL 2514150, at *2 (E.D. La. Aug. 12, 2009) ("orders . . . for default judgment are not final" when "there has been no specific assessment of damages.").

Disregarding PTO 1(H), the PSC argued that Movants were in default because they had not "entered an appearance, filed an answer, or otherwise responded to the Complaint." Rec. Doc. 5621-1. At the PSC's request, the Court entered preliminary defaults against Movants in the following actions:[3]

| Case and Origin Forum | CNBM Company | BNBM Group | BNBM PLC |
|---|---|---|---|
| *Gross,* 09-6690 (LA) | X | X | X |
| *Wiltz*, 10-00351 (LA) | | | X |
| *Amorin*, 11-1672 (FL) | | | |
| *Amorin*, 11-1395 (LA) | X | | |
| *Amorin*, 11-1673 (VA) | X | | X |

Less than a year after the defaults were entered, Movants entered appearances, served profile forms, proceeded to actively participate in discovery and motion practice, and otherwise defended themselves against the various complaints' allegations. *E.g.*, Rec. Docs. 18247, 18248, 18444, 18582, 18655, 18675, 18677, 18678, 19115, and 20739.

---

[2] Movants believe that the Court may have intended these "preliminary default judgments" to be the same as the "preliminary default" referenced in Article 1701 of the Louisiana Code of Civil Procedure. A "preliminary default" most closely resembles the "entry of default" in Rule 55.

[3] To the extent the Court has purported to apply these preliminary defaults more broadly, Movants contend the bootstrapped application of defaults must be vacated once the underlying defaults are vacated.

### D. Plaintiffs' Newest Round of Complaints.

In the course of discussions with the PSC, Movants reminded the PSC that they had no obligation to respond to any complaints because the PSC still had not filed a notice of completion or a Master Complaint. In response, the PSC filed a notice of completion on April 16, 2017. But the PSC quickly put the lie to this notice, filing additional complaints soon after, including an omnibus complaint in intervention in the *Brooke* litigation, and a new round of eleven omnibus complaints on August 1, 2017.

These latter complaints—creatively dubbed "*Amorin* Defaults"— have been filed in Alabama, Georgia, Mississippi, North Carolina, South Carolina, Tennessee, and Texas (the "*BMS* Actions"). While the stated purpose of the *BMS* Actions is to comply with the Supreme Court's recent opinion in *Bristol-Myers Squibb Co. v. Superior Court of California* (Rec. Doc. 20885-1 at 3), the PSC simultaneously has argued that *BMS* has no effect here. The reality is precisely the opposite—as is shown below.

## III. GOOD CAUSE EXISTS TO SET ASIDE THE DEFAULTS

Federal Rule of Civil Procedure 55(c) provides that entries of default may be set aside for "good cause." A defaulted party can meet this standard by demonstrating any of a number of *nonexclusive* factors, including that the default was non-willful, that setting it aside would not prejudice the opposing party, and that a meritorious defense is available. *Effjohn Int'l Cruise Holdings, Inc. v. A&L Sales, Inc.*, 346 F.3d 552, 563 (5th Cir. 2003). Courts can also consider other factors, including that the party acted expeditiously to correct the default. *Id.* Because "entries of default are serious," "any doubt should . . . be resolved in favor of the movant to the end of securing a trial upon the merits." *Id.* (quoting *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000)).

### A. The Defaults Could Not Be "Willful" Because Movants Were Not Yet Required to Respond.

A defendant "willfully" defaults under Rule 55 when it "intentional[ly] fail[s] to respond to litigation." *Scott v. Carpanzano*, 556 F. App'x 288, 294 (5th Cir. 2014). Movants could not

have willfully defaulted because *under the Court's own orders* they were not yet required to respond.

As explained above and in Appendix A, at the time PTO 1G and 1H were issued, Plaintiffs were engaged in a pattern of serving documents on non-existent corporations, failing to serve amended complaints, and failing to complete service under the Hague Convention. While Movants continue to believe they were not properly served, at a minimum, Plaintiffs' chaotic practice certainly creates reasonable doubt on the subject, making any lack of response justifiable and therefore not willful.[4]  *See, e.g., Diamond Servs. Corp. v. Oceanografia SA de CV*, No. 10-cv-0177, 2013 WL 312368 (W.D. La. Jan. 24, 2013) (finding that defendant's failure to answer was not willful where plaintiffs failed to effectuate proper service); *Ortega Dominguez v. Pyrgia Shipping Corp.*, No. 98-cv-529, 1998 WL 204798, at *2 (E.D. La. Apr. 24, 1998) (legal ambiguity on proper service supported vacating entry of default).

Moreover, the plain language of PTOs 1G and 1H establishes that Movants cannot have willfully defaulted because responsive pleadings *still* are not yet due. PTO 1G suspends the deadline for Movants to respond to the PSC's Omnibus complaints until 30 days after the PSC files a notice of completion of amendments to the Omnibus complaints. PTO 1H clarifies that after filing the notice, the PSC has 60 days to file a Master Complaint. Rec. Doc. 6083. "Only after the Master Complaint is filed," PTO 1H explicitly states, will "any defendant identified therein be required to file responsive pleadings within thirty (30) days thereof." *Id.* at 2. The PSC filed its notice of completion on April 16, 2017, years after it requested—and this Court entered—the preliminary defaults at issue.[5]  And it has yet to file a Master Complaint.

---

[4] As for the PSC's position that the two pretrial orders were entered long ago and should no longer be effective, their existence and authority at the time the defaults were entered cannot be disputed.

[5] Moreover, the PSC's conduct since filing the "notice of completion" shows that the PSC was a long way from having completed its complaint filings at that time. The very purpose of the notice of completion is to put defendants on notice that no further complaints will be filed and

Settled law holds that a party cannot be held in default until it has failed to timely respond to the operative complaint in the litigation.  *See, e.g., Henderson v. Compass Groups*, No. 10-cv-447, 2010 WL 3488137, at *1 (M.D. La. Aug. 30, 2010) (pre-answer default motion is premature); *Mattress Giant Corp. v. Motor Adver. & Design Inc.*, No. CIV A 307-CV-1728-D, 2008 WL 779919, at *3 (N.D. Tex. Mar. 25, 2008) (where default entered prior to answer deadline, defendant is "entitled to set aside the default entered against him").  Given that no Master Complaint has been filed and there has been no indication that the PSC has finished serving its "omnibus" complaints, the plain language of PTO 1H compels the conclusion that Movants did not fail to timely appear and defend themselves in this litigation, as required to merit an entry of default under Rule 55(a).[6]  Requiring the filing of a Master Complaint (and the notice of completion) was no mere technicality.  On the contrary, it was, and is, essential because—as courts presiding over large MDLs have recognized—a Master Complaint incorporating all parties and claims into a single document becomes the "operative complaint and supersedes individual complaints."  *In re Refrigerant Compressors Antitrust Litig.*, 731 F.3d 586, 590 (6th Cir. 2013); *see also In re Katrina Canal Breaches Litig.*, 309 F. App'x 836, 838 (5th Cir. 2009) ("[T]he Master Complaint, filed pursuant to the district court's Rule 16 pre-trial order, superseded [plaintiff's] individual complaint.").  Accordingly, where plaintiffs have been ordered to file a master complaint, that complaint has been "used to calculate deadlines for defendants to file their answers."  *In re Refrigerant Compressors Antitrust Litig.*, 731 F.3d at 590. Reliance on the assurance of court orders like PTO 1H that responsive pleadings were not due until after the filing of a Master Complaint, therefore, is entirely reasonable.

---

the litigation may proceed.  Since filing its notice of completion, the PSC has filed a dozen new complaints, but no reconstituted notice of completion.

[6] The Court's order that Movants "*appear* or be defaulted" (emphasis added) cannot abrogate the principle, codified in Rule 55(a), that a party is entitled to know the final allegations against it prior to appearing, much less responding.

The record of inadequate service and the express statements in PTOs 1G and 1H make clear that at the time the preliminary defaults were entered Movants were not yet required to respond to this litigation. Any doubt that Movants' failure to appear, serve profile forms, or answer the complaint was not willful "should, as a general proposition, be resolved in favor . . . of securing a trial upon the merits." *Jenkens & Gilchrist v. Groia & Co.*, 542 F.3d 114, 123 (5th Cir. 2008) (evidence must conclusively show that a default is willful). Accordingly, the Court should decline to continue to impose upon Movants the disfavored and draconian measure of defaults.

### B. Plaintiffs Are Not Prejudiced Merely By Having To Prove Their Case.

No prejudice will result if the defaults are vacated. Doing so only will require Plaintiffs to prove their case. It is axiomatic that "[t]here is no prejudice to the plaintiff where the setting aside of the default has done no harm to plaintiff except to require [it] to prove [its] case." *In re Martinez,* 589 F.3d 772, 778 (5th Cir. 2009) (quoting *Lacy*, 227 F.3d at 293). Merely requiring the plaintiff "to litigate the action is insufficient prejudice" to support an entry of default. *One Parcel*, 763 F.2d at 183 (5th Cir. 1985).

Nor can "delay" be cited as reason not to vacate the defaults. Lifting the preliminary defaults that have been entered in some but not all cases will not cause delay. The numerous "protective complaints" that recently have been filed ensure that that is true (even apart from the significant corrections to the structure of the MDL necessitated by *BMS*). Further, the inconsistent pursuit and entry of defaults means that active cases still will need to be proven in any event. But even if some delay would result, the Fifth Circuit has explained that "the possibility of prejudice from delay is not sufficient in itself to require denial" of relief. *FSLIC v. Kroenke*, 858 F.2d 1067, 1070 (5th Cir. 1988). True prejudice requires proof that the delay underlying the defaults "will result in the loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion." *Lacy*, 227 F.3d at 293; *see also Robinson v. Texas Dep't of Human Servs.*, No. 93-9079, 1995 WL 29203, at *3 (5th Cir. Jan. 10, 1995) (prejudice only where "plaintiff's ability to litigate her claim is now impaired in some material way or if

relevant evidence has become lost or unavailable"). None of those factors apply here. Movants have appeared in the litigation and are fully participating in the discovery process. Indeed, since their appearance in early 2015, the primary reasons the litigation has not advanced beyond its current state are the PSC's own actions—its filing of new complaints and its obsession with contempt discovery chief among them—and the year devoted to Court-ordered mediation. When other defendants have cured their defaults, Plaintiffs have moved to amend the entry of default for those defendants. *See, e.g.*, Plaintiffs' Motion to Amend Order Granting Plaintiffs' Omnibus Motion for Preliminary Default Judgment (Rec. Doc. 15556). The Court should grant Movants the same opportunity.

Moreover, the PSC has taken dozens of depositions and received hundreds of thousands of pages of documents from Movants in response to their voluminous discovery requests. And the Court has entered multiple pretrial orders requiring Plaintiffs to maintain evidence of allegedly defective drywall and appliances, plumbing, or wiring that was allegedly damaged, or else have their claims barred.[7] Thus, Plaintiffs cannot establish any loss of evidence resulting in prejudice as a result of Movants appearing later in this litigation.

### C.  **Movants Have Meritorious Defenses to Plaintiffs' Claims.**

Finally, a court should find good cause to vacate a default when it is clear that a defaulted party has meritorious defenses. *Acree v. Republic of Iraq*, 658 F. Supp. 2d 124, 128-29 (D.D.C. 2009). A defendant need only demonstrate "some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." *In re OCA, Inc.*, 551 F.3d 959, 373 (5th Cir. 2008) (quoting *Jenkens & Gilchrist v. Groia & Co.*, 542 F.3d 114, 122 (5th

---

[7] *See* Pretrial Order 1, ¶14 ("All parties and their counsel are reminded of their duty to preserve evidence that may be relevant to this action."); Pretrial Order 1B ("all persons or entities who have or who intend to pursue a claim relating to allegedly defective Chinese-manufactured drywall . . . shall maintain at least two samples . . . of every different drywall brand or marking removed from an effected property . . . .  Evidence or material not preserved in compliance with this Pre-Trial Order may be subject to exclusion for use in either discovery or trial of the matter and further, the party responsible for failing to preserve evidence may be subject to the claim or defense of spoliation."); Pretrial Order 1I (same); Pretrial Order 1J (same).

Cir. 2008)).  Even a *potentially* meritorious defense, made in good faith, constitutes good cause to set aside a default. *See*, *e.g.*, *Bona Fide Demolition & Recovery, LLC v. Crosby Const. Co. of La., Inc.*, No. 07-cv-3115, 2009 WL 4060192, at *3 (E.D. La. Nov. 20, 2009) ("the defendants dispute both the factual and legal predicates of plaintiffs' claims, and the defendants have asserted a potentially meritorious defenses to those claims—the personal jurisdiction of this Court").

Movants have presented numerous such defenses.  For instance, Plaintiffs have failed to establish the requisite causation between Plaintiffs' injuries and the Movants' conduct because (1) Plaintiffs have not demonstrated that the vast majority of Plaintiffs' homes contained Taishan drywall; (2) most, if not all, of Plaintiffs' properties contained generic drywall that could have been manufactured by any company; (3) any alleged BNBM PLC drywall products were not defective; and (4) Movants have provided evidence that neither CNBM nor BNBM Group ever manufactured drywall for sale into the United States, and they had no role in Taishan's sales of drywall.  Movants have shown that their only direct involvement with drywall sales was with drywall manufactured by BNBM PLC, whose drywall was completely distinct from Taishan's: it was sold under a different brand and produced in different factories in different provinces.  Cai Decl. (Rec. Doc. 18851-4) ¶¶ 7, 10(a)-(f), Chen Decl. (Rec. Doc. 18851-12) ¶¶ 7, 16, 17.  Taishan and BNBM PLC do not "share any plants, factories or production lines."  Jia Tr. 196:10-19 (Apr. 4, 2011).  BNBM PLC's drywall sales were made to only five American companies.  Cai Decl. ¶ 5.  BNBM Group was the export agent for the first few sales to the first three companies.  *Id.* ¶¶ 7, 11(a)-(c).  The PSC has presented no evidence that any of these limited quantities of drywall wound up in the homes of any Plaintiffs outside of a handful of properties in Florida.  Further, testing done on BNBM PLC's drywall shows that it is not defective.[8]  These critical defenses go to the very heart of Plaintiffs' claims and assure that a trial on the merits of

---

[8] Draft Emission Factor Results (µg/m²/h) from Lawrence Berkeley National Laboratories Chamber Testing (May 27, 2010), http://www.cpsc.gov//PageFiles/114656/LBNLsulfur.pdf.

these claims would be vigorously defended towards the goal of finding truth. *See Owens–Illinois, Inc. v. T & N Ltd.,* 191 F.R.D. 522, 526-27 (E.D. Tex. 2000) ("The requirement of a meritorious defense is only intended to ensure that the Court's order vacating the judgment is not an exercise in futility.").

Movants' jurisdictional defenses likewise satisfy the meritorious defense standard. In addition to dismissals already obtained on behalf of CNBM Group, CNBM Company (with the exception of Louisiana claimants), and several other defendants,[9] Movants previously had their jurisdictional arguments certified for interlocutory appeal. Further, a recent federal court decision has found that the Supreme Court's opinion in *Bristol-Myers Squibb v. Superior Court of California* (137 S. Ct. 1773 (2017)) "sheds additional light on the law on personal jurisdiction such that it would be a sufficient basis to allow [the defendant] to move to reconsider" the court's order denying a motion to dismiss. *Artec Group, Inc., v. Klimov, et al.*, Case No. 15-cv-03449-EMC, 2017 WL 4098801, at *3 (N.D. Cal. Sept. 15, 2017). This alone is sufficient to satisfy the meritorious defense standard. *Id.*

### IV. JURISDICTIONAL DEFECTS REQUIRE SETTING ASIDE THE DEFAULTS

The Supreme Court's recent decision in *Bristol-Myers Squibb v. Superior Court of California*, 137 S. Ct. 1773 (June 2017) ("*BMS*"), also requires the Court to set aside the prior defaults against Movants at least as to all non-resident claimants, if not in their entirety. *BMS*, in conjunction with settled Fifth Circuit precedent, requires that a default entered in a case where jurisdiction is lacking must be vacated as void.

Under *BMS*, in order for a court to exercise jurisdiction over a claim, a plaintiff's claim must arise from the defendant's activity in the forum state. *Id.* Here, Plaintiffs have filed identical complaints in federal court on behalf of the same group of claimants located in over a

---

[9] The Court dismissed CNBM Group for lack of jurisdiction under the Foreign Sovereign Immunities Act (Rec. Doc. 20150), found CNBM Company is not subject to jurisdiction outside of Louisiana and only then under the questionable single business enterprise theory, and dismissed all claims against CNBMIT Co. Ltd., CNBM USA Corp., and United Suntech Craft, Inc., for lack of jurisdiction. (Rec. Doc. 20739).

dozen states, claiming that a single federal district court—this one—would have jurisdiction to resolve all claims. After *BMS*, that clearly is not so. Plaintiffs' claims arise from damage to the properties at issue. This means that, under *BMS*, there can only be jurisdiction in the federal district court in which the properties are located. As the Supreme Court made clear in *BMS*, Plaintiffs who are not residents of a particular district cannot bootstrap on the claims of district residents. Thus, pursuant to this circuit's precedent, the Court lacks jurisdiction over these non-Louisiana property claimants, including the authority to grant defaults in their favor, and the preliminary defaults therefore must be dismissed. *Magness v. Russian Fed'n,* 247 F.3d 609, 619 n.19 (5th Cir. 2001)); *see also Jackson v. Tanfoglio Giuseppe, S.R.L.,* 615 F.3d 579 (5th Cir. 2010); *Fowler Rodriguez Valdes–Fauli, LLP v. Medford,* No. 11-618, 2011 WL 6258493, at *1 (E.D. La. Dec. 15, 2011).

## V.     CONCLUSION

For the reasons set forth herein, the standard for vacating defaults is more than satisfied here. Movants therefore respectfully request that the Court vacate the "preliminary default judgments" against them in *Gross*, *Wiltz*, *Amorin* (Louisiana), and *Amorin* (Virginia), and allow Movants to defend on the merits.

Dated: October 20, 2017

>Respectfully submitted,
>
>*/s/ L. Christopher Vejnoska*

L. Christopher Vejnoska (CA Bar No. 96082)  
Eric Matthew Hairston (CA Bar No. 229892)  
ORRICK, HERRINGTON & SUTCLIFFE LLP  
The Orrick Building  
405 Howard Street  
San Francisco, CA  94105  
Tel:  415-773-5700  
Email:  cvejnoska@orrick.com  
            ehairston@orrick.com  

Eric A. Shumsky (D.C. Bar No. 477926)  
ORRICK, HERRINGTON & SUTCLIFFE LLP  
Columbia Center  
1152 15th Street NW  
Washington, D.C. 20005  
Tel:  202-339-8400  
Email:  eshumsky@orrick.com

James L. Stengel (NY Bar No. 1800556)
Xiang Wang (NY Bar No. 4311114)
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY, 10019
Tel:   212-506-5000
Email: jstengel@orrick.com
          xiangwang@orrick.com

        *Counsel for CNBM Co., Ltd., BNBM (Group) Co., Ltd., and BNBM PLC*

Ewell E. Eagan, Jr. (LA Bar No. 5239)
Donna Phillips Currault (LA Bar No. 19533)
GORDON, ARATA, MONTGOMERY,
BARNETT, MCCOLLAM, DUPLANTIS & EAGAN, LLC
201 St. Charles Avenue, 40th Floor
New Orleans, LA 70170-4000
Tel: (504) 582-1111
Email: eeagan@gordonarata.com
          dcurrault@gordonarata.com

        *Counsel for CNBM Co., Ltd.*

Harry Rosenberg (LA Bar No. 11465)
Phelps Dunbar LLP
365 Canal St., Suite 2000
New Orleans, LA  70130
Tel:  (504) 566-1311
Email:  Harry.Rosenberg@Phelps.com

        *Counsel for BNBM (Group) Co., Ltd., and BNBM PLC*

**Appendix A – Service of Process**

*Gross*, **No. 2:09-cv-6690 (E.D. La.).** The *Gross* complaint was filed on October 2, 2009 in the Eastern District of Louisiana, naming CNBM Company, BNBM PLC, and BNBM Group as defendants. An amended complaint was filed soon thereafter naming a number of additional defendants. Rec. Doc. 366. Then, on March 23, 2010, intervening Plaintiffs filed a Substituted and Amended Class Action Complaint in Intervention. Rec. Doc. 2187, at 1.

While the PSC served CNBM Company (Rec. Docs. 3256 and 3257), it offers no proof that service was ever effectuated on BNBM Group or BNBM PLC. Rather, it asserts that service was attempted on BNBM PLC on February 25, 2010 and BNBM Group on August 25, 2010. But the proof of service states the recipient of this attempt was "Beijing New Building Material (Group) Co., Ltd. (CNBM Group)" and "Beijing New Building Material (Group) Co., Ltd (BNBM)." Rec. Doc. 5621-3 at 88-93; Rec. Doc. 7446-6. Having served the wrong companies at the wrong addresses, the PSC's attempt was refused. Movants are aware of no evidence showing that the PSC attempted to serve the "Substituted and Amended Complaint."

*Wiltz*, **No. 10-cv-00361 (E.D. La.).** The *Wiltz* complaint, filed on March 15, 2010, named only one Movant: BNBM PLC. According to the PSC, it attempted to serve BNBM PLC on August 25, 2010 with a summons addressed to "Beijing New Building Material (Group) Co., Ltd. (BNBM)." Having delivered the summons to a completely different and independent company, service was refused.[10]

*Amorin* **Cases, Nos. 11-cv-1395 (E.D. La.) and 11-cv-1673 (originally filed in E.D. Va.).** The first of the *Amorin* complaints was filed in the Eastern District of Louisiana on June 13, 2011, naming, among others, CNBM Company, BNBM Group, and BNBM PLC. *Amorin, et al. v. Taishan Gypsum Co. Ltd., et al.,* Case No. 11-1395 (E.D. La. June 13, 2011). Another

---

[10] Exhibit A to *Wiltz* Plaintiffs' Omnibus Motion for Preliminary Default Judgment, *Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et. al.,* No. 2:10-cv-00361 (E.D. La.) (Rec. Doc. 6974-3); Exhibit A to *Wiltz* Plaintiffs' Supplemental Declaration (Rec. Doc. 7410-3).

*Amorin* complaint was filed in the Eastern District of Virginia on July 5, 2011, also naming Movants.  A Class Action Complaint in Intervention was subsequently filed on November 14, 2012.  Rec. Doc. 16227, at 1.

The PSC claims to have attempted service of the initial complaints on CNBM Company (in both *Amorin* actions) and BNBM PLC (in the Virginia action), but states that both companies refused service. Rec. Docs. 17267, 17268, 17916, 17917, 17923.  Movants find no evidence that the PSC attempted to serve BNBM Group.  Rec. Doc. 17378-4.  Likewise, Movants are aware of no evidence showing that the Intervention Complaint was served.

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing **Memorandum in Support of Motion to Vacate Preliminary Defaults** has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail and upon all parties by electronically uploading the same to File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 20th day of October 2017.

*/s/ L. Christopher Vejnoska*
L. Christopher Vejnoska (CA Bar No. 96082)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105
Tel:  415-773-5700
Fax: 415-773-5759
Email:  cvejnoska@orrick.com

*Counsel for CNBM Co., Ltd., BNBM (Group) Co., Ltd., and BNBM PLC*