UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

William and Kelly Wayne, Plaintiff

IN RE:

CHINESE MANUFACTURED DRYWALL
PRODUCTS LIABILITY LITIGATION

MDL NO. 2047 SECTION: L

JUDGE FALLON
MAG. JUDGE WILKINSON

## Motion to Grant Lump Sum Payment to Wayne Family

Regarding the property located at 576 Huseman Ln, Covington, LA originally owned by Kelly and William Wayne, and as our lawyer chose to discontinue representation, I would like to file this document as a Pro-Se motion with the court regarding the Lump Sum payment from the remediation fund promised in the Foreclosure clause, not yet granted.

My wife and I, Kelly and William Wayne, are long identified as eligible members of the Residential Owner Subclass in the Knauf MDL, and as we were forced into Foreclosure due to the presence of Knauf Chinese drywall in our home which sold at auction September 2011, and as section 4.3.5.1 (b) of the Knauf Settlement Agreement grants owners of foreclosed affected properties the benefit of the lump sum payment as defined in section 4.3.1.1 with no stated restrictions or multipliers, and as Knauf has actively sought to deny this claim despite all evidence to the contrary, and as our home was measured to be 2,196 square feet under air with a prescriptive benefit of $8.50 per square foot, I hereby request the court to compel Knauf to release a payment to William and Kelly Wayne in the sum of $18,666.00 from the Remediation Fund.

1. **Mortgagee release**

It has been suggested to me by Brown Greer that, in order to collect from section 4.3.5.1, I must first obtain a release from Regions Mortgage, my former mortgagee. However, this suggestion is entirely incorrect. The origins of this opinion refer to 4.3.5.1 (a), where the Mortgagee is required to release the Builder, InEx et al from liability in exchange for the right of the Mortgagee to collect under this settlement agreement.

> *4.3.5.1. For Foreclosed Properties,*
>
> *(a) the Mortgagee shall be entitled to the benefits under Sections 4.3.1, 4.3.2 or 4.3.3, except for the Other Covered Expenses, but only if the Mortgagee became the Owner after foreclosure and remains the Owner of the Affected Property and the Mortgagee provides a release to the Knauf Defendants and Other Releasees;* **and**
>
> *(b) the Owner prior to the foreclosure shall be entitled to the Lump Sum Payment under Section 4.3.1.1, but not the Delay Period Payment under Section 4.3.1.2.*

As subsections (a) and (b) are mutually exclusive, I cannot be penalized for the action or inaction of a third party. Enforcing the language in this way would impart a certain randomness to which equally damaged parties are entitled to collect what the settlement agreement promises, and no reasonable person would interpret the language in this way.

Even if this opinion is upheld, because Regions Mortgage sold the home at auction they are no longer eligible to participate in the MDL, so no release would be required. "*but only if the Mortgagee [...] remains the Owner of the Affected Property*".

2. **Lump Sum Payment Entitlement**

Section 4.3.5.1 (b) above grants me the right to collect from the Remediation Fund under the lump sum payment, as it states that the Owner Subclass member prior to foreclosure of an affected

property shall be so entitled. Knauf previously argued that because section 4.3.1.1 specifically refers to KPT owners, section 4.3.5.1 is modified to also mean KPT owners only. This assertion fails when you consider that

- If this assertion were true, Mixed property owners would likewise have their benefits eliminated.
- 4.3.5.1 explicitly grants access to the benefits of 4.3.1.1 to the owner subclass, which is inclusive of both the Residential and Commercial Subclasses, KPT and Mixed property owners. Because of the nature of the relationship between the clauses, it is section 4.3.5.1 that modifies section 4.3.1.1.

### 3. Drywall Percentage

It has also been suggested that, in order to collect the Lump Sum Payment, I must have had my property inspected for the Knauf drywall percentage, as defined in section 4.4.1. There are two problems with this assertion:

1. To my knowledge, we were never contacted by an inspector despite having gathered photographic and physical evidence as required by 4.4.1.

    *"As soon as practicable, but not less than 15 days from the Settlement Administrator's determination that the Owner Subclass Member has submitted satisfactory physical proof, the inspector shall contact the Owner Subclass Member to schedule a date for the inspection. All inspections and inspectors shall be paid out of the Remediation Fund[.]"*

    As we were looking at Bankruptcy and Foreclosure, there was a narrow window in which

this could have even taken place, and unless inspectors were performing such services prior to the execution date of the Settlement Agreement in anticipation of being reimbursed from the Remediation Fund, there is no reasonable way to enforce this requirement for claimants that lacked the financial solvency to await such a procedure.

In fact, this very issue seems to have been anticipated – in all previous versions of the Settlement Agreement, the Foreclosed Properties section had two parts: 4.3.5.1 for properties foreclosed prior to the Execution Date, which includes all Owner Subclasses as above, and 4.3.5.2 for properties foreclosed upon on or after the Execution Date, which specifically refers only to KPT owners.

I am not privy to the reasons why 4.3.5.2 was dropped in favor of the more inclusive 4.3.5.1., but such an action does not change the meaning of 4.3.5.1. to mean KPT owners only.

2. There is no discriminatory language in the Foreclosure section regarding what type of owner is entitled to this benefit (i.e. KPT or Mixed, Residential or Commercial), nor does it state that the proceeds from the Lump Sum Payment are to be abridged in any way such as using the percentage of KPT drywall as a multiplier – unlike for Mixed Property Owners who have not foreclosed, in sections 4.3.4.1 and 4.3.4.2, respectively:

> "[T]he Remediation Fund will pay the Mixed Property Owner the Lump Sum Payment specified in Section 4.3.1.1 multiplied by the KPT Drywall Percentage."

> "In the event a Mixed Property Owner selects the Cash-Out Option, the Remediation Fund will pay the Mixed Property Owner [...] the Lump Sum Payment specified in Section 4.3.1.1 multiplied by the KPT Drywall Percentage."

Since the Foreclosure section of the Settlement Agreement does not modify the recovery by the percentage of Knauf in the home, then logically it should stand to reason that any amount of Knauf drywall in the home is sufficient to award the full Lump Sum recovery as prescribed by section 4.3.5.1 (b). As section 4.3.5.1 neither discriminates against owner types nor modifies the award prescribed therein, I would call into question the utility of the property inspections of 4.4.1 for the purposes of determining eligibility to participate in the MDL for foreclosed properties altogether.  If a property inspection could not be completed in a timely manner, and the property is no longer available, this should not disqualify an otherwise qualified claimant who has suffered damages, especially given sufficient proof that Knauf drywall was present in the residence – if KPT and Mixed owners are each entitled to the same Lump Sum benefit after determining the percentage, what then would the purpose of determining the KPT percentage for those properties be in the first place, providing of course that KPT is proven to be a liable party?

Even if a percentage modification is somehow deemed to be implicit in the document's language, we can determine with a high degree of certainty whether or not my home contained contaminated drywall from a different company by obtaining the inspection reports of my immediate neighbors.  Because Sunrise Homes builds houses in batches, the composition of the drywall in the homes built adjacent to and at the same time as mine will be comparable.  It should be reasonable to then conclude that if no non-KPT drywall exists in the neighboring homes, no non-KPT drywall should have been present in my former property. Although I previously suggested this course of action to Knauf to allay their fears of the composition of the drywall in my home, they declined to act – but the court should have the ability to examine these records for this purpose if this would be an adequate substitute.

Consider also that on 10/21/2010, I was notified by my attorney that my home was designated as an eligible home to participate in the pilot program for home remediation. Unfortunately, the home was already out of my hands and the pilot program did not apply to foreclosed homes. What standards were in place for selecting pilot homes? An answer to this may be telling.

If the evidence already submitted is deemed insufficient, I recently located a video tape[1] recorded while I walked through our house as it was being built. This video and relevant screen captures were made available to the Knauf council when I attempted to resolve this matter with them directly. In the walkthrough, two large stacks of drywall are staged in the house. The majority of this drywall matches that of the contaminated Knauf drywall, per the published identification guide. On top of the Knauf drywall sits US Gypsum drywall, again as identified by the published identification guide. This fits the narrative originally given by Sunrise Homes in their disclosure letter, already in evidence, that InEx was contracted to supply US Gypsum drywall, but delivered Knauf while there was a shortage until US Gypsum once again became available.

That said, as the language in this settlement agreement is otherwise so carefully constructed, I would argue that an implicit modification is not the intent or else it would be stated explicitly as in other recoveries. Arguing that this implicit modification exists is tantamount to an admission that my very participation in this MDL is based on a typo, rendering the entire agreement meaningless.

---

[1] Full Walkthrough:   https://www.youtube.com/watch?v=fVPnyq8Esdc
  Front Room:   https://www.youtube.com/watch?v=llC2a1QQcVM
  Back Room:   https://www.youtube.com/watch?v=jJ2oSszn9wA

The original camera that recorded this film was lost, and previous attempts to recover it using a Hi-8 camera failed because this was recorded using a less common Digital 8 format, which also used Hi-8 media. This contributed to the late discovery of this evidence.

4.    **Fairness**

When I spoke with Knauf's then council Rene Marino to settle this matter, he objected that making such a Lump Sum payment to an owner who may have potentially had mixed drywall would be "unfair" – and yet, this is precisely what Knauf has agreed to in the Settlement Agreement after years of fairness hearings where their objections to this language could have and should have been voiced.

Regarding fairness to homeowners, Knauf fails to acknowledge that without the Lump Sum Payment, owners like myself are entitled to nothing despite being positively identified as class members. All other awards that grant access to a modified Lump Sum Payment have other monetary benefits. If the home inspection is deemed to be necessary for foreclosed properties, but those foreclosed properties are not accessible for inspection due to the foreclosure, what then would be the purpose of including those such as ourselves in the MDL at all? This results in a circular dependency that cannot be satisfied. In participating in this MDL, I am no longer legally entitled to seek compensation from either InEx or Sunrise Homes – whose Insurance companies have ostensibly made contributions to this settlement. Therefore, in denying my right to collect on the Lump Sum, Knauf is denying by proxy my right to collect damages from the associated companies who have admitted fault and whose liability is drywall manufacturer agnostic.

Knauf also expressed concern that the new owners of the home could become certified claimants in the MDL. However, this is not possible as I contacted the realtor to ensure that whoever purchased the home would know with no uncertainty that the listed home contained 'Chinese Drywall'. Although my motivations were altruistic, my vigilance also had the side-effect of disqualifying the new owner from participation in the MDL as the definition for both the Residential and Commercial Owner excludes those who were aware of the presence of Chinese Drywall upon purchase.

**Closing**

In closing, I urge to court to make good on the promise outlined in this MDL and grant my family the closure it needs after such a long wait. If this document is insufficient to make this determination, I would be pleased to make oral arguments before the court. As I am not a lawyer, I do apologize if this document is not in the correct format.

Dated: 06/13/2017

William Wayne
1007 Chippewa
Round Rock, TX 78665
(985) 276 - 0002

Certificate of Service
I hereby certify that I have served a copy of this document on all counsel for record either in person or by mailing it postage prepaid on this

_____ day of _____, 20\_\_\_\_\_