UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE-MANUFACTURED
DRYWALL PRODUCTS LIABILITY
LITIGATION                                                    MDL NO. 2047

                                                              SECTION: L

                                                              JUDGE FALLON
                                                              MAG. JUDGE WILKINSON

THIS DOCUMENT RELATES TO:
*ALL CASES*
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**THE PLAINTIFFS' STEERING COMMITTEE'S RESPONSE TO DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY REGARDING *BRISTOL-MYERS SQUIBB CO. V. SUPERIOR COURT OF CALIFORNIA, SAN FRANCISCO COUNTY*, FILED NOVEMBER 13, 2017 (REC. DOC. 21073)**

The key issue facing this Court with respect to Defendants' Supplemental Jurisdictional Motion[1] is whether the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773 (2017) ("*BMS*"), has any impact on this Court's and the Fifth Circuit's prior jurisdictional and class certification rulings in this litigation. Defendants' reliance on the "supplemental authority" of *McDonnell*[2] and *Wenokur*[3] does not advance their argument that *BMS* requires decertification of the *Amorin* class and dismissal of Plaintiffs' cases.

---

[1] Supplemental Motion on Jurisdiction and Class Certification Following *BMS* filed by Defendants CNBM Company, BNBM (Group) Co. Ltd., and BNBM PLC [Rec. Doc. 20822] ("Supplemental Jurisdictional Motion").

[2] *McDonnell v. Nature's Way Products, LLC*, 2017 WL 4864910 (N.D. Ill. Oct. 26, 2017).

[3] *Wenokur v. AXA Equitable Life Ins. Co.*, 2017 WL 4357916 (D. Ariz. Oct. 2, 2017).

1

The plain language of *BMS* makes clear, contrary to Defendants' assertions, that the Supreme Court did not adopt a new "relatedness" standard for specific jurisdiction, did not mandate direct tracing for every plaintiff's claim to the defendant's activities in the forum state, and did not limit jurisdiction over a plaintiff's claims to the place of injury.[4] In this case, Defendants specifically targeted Louisiana, Florida, Virginia, and other states to exploit the building markets in those and surrounding states that had been severely impacted by Hurricane Katrina and a housing boom. This specific contact with the forum – whether it be Louisiana, Florida, Virginia, or other targeted states – is enough to support a finding of personal jurisdiction as to all Plaintiffs, and nothing in *McDonnell* or *Wenokur* suggests otherwise.

Defendants continue to incorrectly focus the jurisdictional inquiry on the Plaintiffs' residency instead of on the Defendants' conduct and specifically, "the defendant's relationship to the forum State."[5] Ultimately, there must be an "'affiliation between the forum ***and the underlying controversy***,'" not a traceable link between each plaintiff and the forum.[6] The point of the specific jurisdiction inquiry is "to allow a defendant to anticipate his jurisdictional

---

[4] *See* Brief of Petitioner in *BMS*, attached hereto as Exhibit "A" ("BMS Pet. Br."), at *8 ("under the sliding scale, the defendant's forum contacts "need not be either the proximate cause or the 'but for' cause of the plaintiff's injuries"), at *38-46 (expressly arguing for adoption of proximate cause standard); *see also BMS*, 137 S. Ct. at 1788-89 & n.3 (Sotomayor stating, in dissent, that the majority did not adopt "a rigid requirement that a defendant's in-state conduct must actually cause a plaintiff's claim" and noting in a footnote that "Bristol–Myers urges such a rule upon us, … but its adoption would have consequences far beyond those that follow from today's factbound opinion."); *GlaxoSmithKline, LLC v. M. M. ex rel. Meyers*, __ S. Ct. __, 2017 WL 1153625 (Oct. 2, 2017) (declining to consider whether it should adopt the "proximate cause" standard for "relatedness" and leaving in place the Illinois court's application of a "but for" causation standard, 61 N.E.3d 1026, 1029-30 (Ill. App. Ct. 2016)) ("*GSK*").

[5] *BMS*, 137 S. Ct. at 1779.

[6] *Id*. at 1781 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (emphasis added)).

exposure based on his own actions."[7]  In this case, Defendants intentionally targeted distributors in specific states intending their defective drywall to be used in the building market in those states and contiguous states and, as such, Defendants were fully apprised of the possibility that they could be sued for claims arising from the distribution of that drywall in those states.

The exercise of specific jurisdiction here is completely consistent with *BMS* and the "supplemental authority" submitted by Defendants.

### *McDonnell v. Nature's Way Products, LLC*

In *McDonnell*, an Illinois resident sued Nature's Way, a Wisconsin defendant, for claims arising from alleged mislabeling of over 70 different vitamin supplements.  *See McDonnell*, 2017 WL 4864910, at *1.  Even though the plaintiff in *McDonnell* only purchased one of the 70 supplements – Women's Alive – and there were no class representatives from other states, the plaintiff sought to represent a multistate class of people who had purchased any of the supplements at issue.  *See id*. at *1, 4.  The court found that (1) there was no jurisdiction over the claims related to products not purchased by the plaintiff, and (2) no jurisdiction over claims of nonresidents who purchased Women's Alive because there were no allegations that the defendant engaged in any supplement-related activities in the forum:  "The second amended complaint does not include allegations connecting Nature's Way activities in Illinois to any of these non-Women's Alive products or to purchasers of Women's Alive products outside of Illinois so as to provide the Court with specific jurisdiction over these claims."  *See id*. at *4.

---

[7] *Dudnikov v. Chalk & Vermilion Fine Arts, Inc*., 514 F.3d 1063, 1078-79 (10th Cir. 2008) (Gorsuch, J.) (discussing the rationale behind the "relatedness" requirement).

The PSC disagrees with the *McDonnell* court's finding regarding jurisdiction over the class claims related to the supplement purchased by the plaintiff, because it is contrary to established class action jurisprudence and the matter of multiple states' laws should have been appropriately addressed as a manageability issue. It is worth noting, however, that the issue was not fully briefed, as *BMS* was not decided until after initial brief on the motion to dismiss had been filed and, therefore, it was not raised by defendants in *McDonnell* until their reply brief to which there was no response.[8] In the plaintiffs' brief filed only four days after *BMS* was decided and before the issue was raised by the defendant, the *McDonnell* plaintiffs merely stated that the Supreme Court noted that the opinion did not apply to class cases.[9] Significantly, the defendant in *McDonnell* also furnished the court with supplemental authority in further support of its motion to dismiss, *Cowen v. Lenny & Larry's, Inc.*, 2017 WL 4572201 (N.D. Ill. Oct. 12, 2017), where the court, as the PSC has continually argued is appropriate, struck multistate class allegations ***as a matter of manageability instead of addressing defendant's jurisdictional argument***.[10]  *See Cowan*, 2017 WL 4572201, at *6 n.3 ("Because the court resolves this issue on

---

[8] The *BMS* decision was handed down on June 19, 2017. *See* Docket, 16-cv-5011 (N.D. Ill.) attached hereto as Exhibit "B," at 50 (motion to dismiss filed June 7, 2017), 52 (response to motion to dismiss filed June 23, 2017 attached hereto as Exhibit "C"), and 53 (reply in further support of motion to dismiss filed July 7, 2017 attached hereto as Exhibit "D").

[9] *See* Exh. "C" at 6-7. As the PSC has pointed out, the Court should not treat opinions as precedential where the issues have not been fully briefed and argued. *See Legal Services Corp. v. Velazquez*, 531 U.S. 533, 557 (2001) (Scalia, J., dissenting) ("Judicial decisions do not stand as binding 'precedent' for points that were not raised, not argued, and hence not analyzed."); *see also Lowe v. Raemisch*, 864 F.3d 1205, 1209-10 (5th Cir. 2017) (decisions not precedential if issue was not argued or was ignored by the court); *United Brotherhood of Carpenters and Joiners Local Union 953 v. Mar-Len of Louisiana, Inc.*, 906 F.2d 200, 203 n.2 (5th Cir.1990) (declining to address issue that had not been briefed and stating "[t]his analysis involves close, complex issues that we think should not be addressed in the absence of briefing and argument.").

[10] *See* Docket, 16-cv-5011 (N.D. Ill.), Exh. "B," at 55 (notice of supplemental authority attached hereto as Exhibit "E"). The PSC has consistently argued that the issue of multistate classes is not a jurisdictional

4

class certification grounds, it need not address plaintiffs' standing argument."). Prior to issuing the *McDonnell* opinion, relied upon by Defendants in this Drywall litigation as supplemental authority, the court in *McDonnell* noted that it had read and considered the *Cowan* opinion and, therefore, did not require a response from the plaintiff.[11]

That being said, the language of *McDonnell* highlights why this Drywall litigation differs substantially from *McDonnell* and why the exercise of specific personal jurisdiction would be proper in the instant litigation even applying the standards set forth in *McDonnell*. Again, like *BMS*, *McDonnell* acknowledged that the focus of the specific jurisdiction inquiry is on the defendant, not the plaintiffs, and in particular, "the 'defendant's suit-related conduct' and its connection to the forum state." *Id*. at *4. Again, like *BMS*, the problem in *McDonnell* was that there were no allegations that the defendant engaged in activities specific to Illinois related to its

---

issue but a manageability issue. *See*, *e.g*., David Marcus, *Erie, the Class Action Fairness Act, and Some Federalism Implications of Diversity Jurisdiction*, 48 Wm. & Mary L. Rev. 1247, 1282-83 (2007) (discussing history of CAFA, issues related to multistate class actions, and stating, among other things, "federal courts began to accept the propriety of such multistate classes"). In addition, courts have often approved national classes in mass tort cases in the settlement context but sometimes denied such classes in a litigation context where manageability is an issue. *See*, *e.g.*, *In re Telectronics Pacing Systems, Inc*., 137 F. Supp. 2d 985, 1029 (S.D. Ohio 2001) (certifying nationwide products liability settlement class); *In re Diet Drugs*, MDL No. 1203, 2000 WL 1222042, at *1 (E.D. Pa. Aug. 28, 2000) (certifying nationwide products liability settlement class); *but see Cole v. General Motors Corp.*, 484 F.3d 717, 724-26 (5th Cir. 2007) (reversing certification of a nationwide class not because such classes were Constitutionally impermissible but because plaintiffs had not met their burden of establishing predominance because they did not adequately address how variations in state law would not threaten to swamp the litigation). If Due Process acted as a constraint on nationwide class actions, settlement classes would also be uncertifiable and, as noted previously, CAFA would have been a meaningless exercise.

[11] *See* Docket, 16-cv-5011 (N.D. Ill.), Exh. "B," at 57 ("The Court was aware of and considered this opinion when the Cowen court issued it. The Court, therefore, does not require a response from Plaintiff."). Even though the court in *McDonnell* did not permit the multistate class to go forward, the court did not make any bold statements regarding the applicability of *BMS* to class actions and noted that at least one other court had determined that the Supreme Court's reasoning in *BMS* did not extend to class actions. *See id*. at *4 n.7 (citing *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc*., 2017 WL 4224723, at *4 (N.D. Cal. Sept. 22, 2017)). It is unclear to what effect issues of state law conflicts, such as those present in *Cowan*, impacted on the court's decision.

5

supplement products other than direct sales to Illinois residents. *See id.* Had the defendants in *McDonnell* engaged in any activity specific to Illinois, shown some "affiliation between the forum and the underlying controversy," – manufactured the mislabeled supplements in Illinois, made decisions with respect to the labeling of the supplements in Illinois, distributed the supplements nationwide through an Illinois distributor, etc. – then the court in *McDonnell* would have likely found personal jurisdiction was proper regardless of the residency of each individual plaintiff.[12]

Again, in this Drywall litigation, Defendants have specific claim-related contacts with the forum state. The specific claims at issue involve the targeting, sale and distribution of defective drywall to customers in Louisiana, Florida, Virginia, and other states. The PSC has produced substantial evidence into the record of Taishan's efforts to market, sell and distribute millions of square feet of their drywall to customers in the United States, predominately in the Gulf States and along the East Coast post-Katrina, by targeting distributors in Louisiana, Florida, Virginia, and other states who they knew would provide that drywall to the building markets in neighboring states impacted by the Hurricane.[13] In fact, Taishan entered into a sole agency

---

[12] The Supreme Court in *BMS* focused on Bristol-Myers' lack of Plavix-related contacts in California where the claims at issue were "products liability, negligent misrepresentation, and misleading advertising" related to Plavix, and the Supreme Court noted that Bristol-Myers "did not develop Plavix in California, did not create a marketing strategy for Plavix in California, and did not manufacture, label, package, or work on the regulatory approval of the product in California." *See, e.g., BMS,* 137 S. Ct. at 1778.

[13] *See*, *e.g.*, PSC's Supplemental Memorandum Addressing *In re Depuy Orthopaedics, Inc.* [Rec. Doc. 21000] at 8-9; PSC's Global Statement of Facts in Opposition to: (1) Taishan's Renewed Motions to Vacate the Default Judgments and Dismiss the Complaints in *Germano* and *Mitchell* and (2) Taishan's Motions to Dismiss the Complaints in *Gross* and *Wiltz*, at pp. 30 through 50, and Affidavit of Russ M. Herman dated 5/8/2012, attaching 202 Exhibits, filed manually [Rec. Doc. 14215] ("Herman Affidavit"). An updated version of Exhibit 1 to the Herman Affidavit showing the targeting of California, Florida, Louisiana, New York, North Carolina and Virginia was also filed with the Court on June 20, 2012 [Rec. Doc. 14843-3].

6

agreement with OTC in Florida to sell Taishan's drywall nationwide and also discussed the idea with Venture Supply in Virginia that Venture would be the exclusive distributor of Taishan's drywall in the U.S.  *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 894 F. Supp. 2d 819, 852, 872 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014) & 753 F.3d 521 (5th Cir. 2014).  The Defendants' targeting of specific states for sales of Chinese Drywall establishes an adequate link between the Defendants' claim-related conduct in each of these states and nonresident Plaintiff's claims even if each and every Plaintiff cannot be directly tied a piece of drywall that flowed through a given state.  Based on their own conduct and the volume of drywall sales, Defendants could have anticipated being sued in Louisiana, Florida and Virginia (and other states) for claims by nonresidents related to defective drywall, and each of those states has a legitimate interest in exercising jurisdiction over these companies that have targeting distributors within their borders.

This analysis is precisely the analysis undertaken by the Missouri state court in *Dorman v. Bayer Corporation*, No. 1622-CC00690-01 (MO. 22nd Judicial Circuit Oct. 19, 2017), attached hereto as Exhibit "F."  *Dorman* has essentially the same fact pattern as a typical mass tort where thirty-two plaintiffs brought claims in Missouri state court arising from their use of the Essure birth-control device alleging "that [d]efendants developed, tested, manufactured, distributed, promoted, marketed and sold the Essure device."  *Id*. at *1-2.  Twenty-eight of the thirty-two plaintiffs were "not Missouri citizens and do not allege that they received the product in Missouri or were injured in Missouri."  *Id*. at *2.  The court in *Dorman* noted that the defendants "developed Essure, created a marketing strategy and label for it, and worked on its

7

regulatory approval in St. Louis, Missouri." Further, the claims in the lawsuit "stem[med] from the alleged negligent testing, marketing, and labeling of Essure," and, therefore, the plaintiffs' claims arose from these Missouri contacts despite the defendants' reliance upon *BMS*. *See id*. at *4. The *Dorman* court correctly noted that "[t]he reasoning in [*BMS*] supports this Court's ruling that when the suit arises out of and relates to Defendants' contacts with Missouri, the Court has specific jurisdiction over the lawsuit." *Id*.

### *Wenokur v. AXA Equitable Life Ins. Co.*

*Wenokur* is of no relevance to this Court's determination of the pending motions. Defendants cite *Wenokur* for the stated reason that *McDonnell* purportedly used it to support its "class-dismissal ruling."[14] However, this illustrates a flaw in the *McDonnell* court's analysis, as *Wenokur* never addressed the motion to dismiss for lack of personal jurisdiction because it granted the defendant's motion to transfer the action to the Southern District of New York where a previously filed action with substantially overlapping issues had been filed a year prior. *See Wenokur*, 2017 WL 4357916, at *2 ("Because the Court finds that transfer of venue to the Southern District of New York is appropriate, it need not address Rules 12(b)(2) and 12(b)(3) and will reserve judgment on the Rule 12(b)(6) questions.").

For some reason, the court in *Wenokur*, with limited briefing on the *BMS* issue and absolutely no legal analysis, decided to "note[]" in a footnote that "it lacks personal jurisdiction over the claims of putative class members with no connection to Arizona and therefore, would not be able to certify a nationwide class." *See id*. at *4 n.4. This statement was of no relevance to the outcome of the motion to transfer that the court was ruling on and was a footnote to a

---

[14] Rec. Doc. 21070-2 at 2.

8

discussion comparing the Arizona litigation to the New York litigation. *See id*. at *4. This off-the-cuff statement that is not legally relevant to the court's determination, was not fully briefed and argued, and contains no analysis of the complex implications of such a broad statement on class action or CAFA jurisprudence, carries no precedential weight in this Court. The skimpy analysis in *Wenokur* stands in sharp contrast to the well-developed record of important issues before this Court in connection with the instant Supplemental Jurisdictional Motion.

                Respectfully submitted,

Dated:  November 20, 2017	/s/ Russ M. Herman
　　　　　　　　　　　　　　Russ M. Herman (La. Bar No. 6819) (on the brief)
　　　　　　　　　　　　　　Leonard A. Davis (La. Bar No. 14190) (on the brief)
　　　　　　　　　　　　　　Stephen J. Herman (La. Bar No. 23129) (on the brief)
　　　　　　　　　　　　　　Robert S. Peck (on the brief)
　　　　　　　　　　　　　　HERMAN, HERMAN & KATZ, LLC
　　　　　　　　　　　　　　820 O'Keefe Avenue
　　　　　　　　　　　　　　New Orleans, LA  70113
　　　　　　　　　　　　　　Phone: (504) 581-4892
　　　　　　　　　　　　　　Fax: (504) 561-6024


　　　　　　　　　　　　　　*Plaintiffs' Liaison Counsel MDL 2047*

　　　　　　　　　　　　　　Arnold Levin (on the brief)
　　　　　　　　　　　　　　Fred S. Longer (on the brief)
　　　　　　　　　　　　　　Sandra L. Duggan (on the brief)
　　　　　　　　　　　　　　Keith J. Verrier (on the brief)
　　　　　　　　　　　　　　Levin Sedran & Berman
　　　　　　　　　　　　　　510 Walnut Street, Suite 500
　　　　　　　　　　　　　　Philadelphia, PA  19106
　　　　　　　　　　　　　　Phone: (215) 592-1500
　　　　　　　　　　　　　　Fax: (215) 592-4663
　　　　　　　　　　　　　　Alevin@lfsblaw.com

　　　　　　　　　　　　　　*Plaintiffs' Lead Counsel MDL 2047*

**PLAINTIFFS' STEERING COMMITTEE**

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Peter Prieto
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
pprieto@podhurst.com

Patrick Montoya
Colson, Hicks, Eidson
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
patrick@colson.com

Hugh P. Lambert
The Lambert Firm
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@thelambertfirm.com

James R. Reeves, Jr.
Reeves & Mestayer, PLLC
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@rmlawcall.com

Robert Becnel
Becnel Law Firm, LLC
425 W. Airline Highway, Suite B
Laplace, LA 70068
Phone: (985) 536-1186
Fax: (985) 536-6445
rbecnel@becnellaw.com

Bruce William Steckler
Steckler Gresham Cochran
12720 Hillcrest Road, Ste 1045
Dallas, TX 75230
Phone: (972) 387-4040
Fax: (972) 387-4041
bruce@stecklerlaw.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Christopher Seeger
Seeger Weiss, LLP
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC  27603
Phone: (919) 600-5000
Fax: (919) 600-5002
dan@wbmllp.com

Richard J. Serpe
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA  23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com

Victor M. Diaz, Jr.
V.M. Diaz and Partners, LLC
119 Washington Ave, Suite 402
Miami Beach, FL  33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W, Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Anthony D. Irpino
IRPINO AVIN HAWKINS LAW FIRM
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

**CERTIFICATE OF SERVICE**

  I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, which will serve a notice of the uploading in accordance with the procedures established in MDL 2047, on this 20th day of November, 2017.

            <u>/s/ Leonard A. Davis</u>
            Leonard A. Davis
            HERMAN, HERMAN & KATZ, LLC
            820 O'Keefe Avenue
            New Orleans, Louisiana 70113
            Phone: (504) 581-4892
            Fax: (504) 561-6024
            Ldavis@hhklawfirm.com
            Plaintiffs' Liaison Counsel
            MDL 2047

            *Co-Counsel for Plaintiffs*