# EXHIBIT

# "A"

2017 WL 908857 (U.S.) (Appellate Brief)
Supreme Court of the United States.

BRISTOL-MYERS SQUIBB COMPANY, Petitioner,
v.
SUPERIOR COURT OF CALIFORNIA FOR THE COUNTY OF SAN FRANCISCO, et al., Respondents.

No. 16-466.
March 1, 2017.

On Writ of Certiorari to the California Supreme Court

**Brief for Petitioner**

Anand Agneshwar, Arnold & Porter Kaye Scholer LLP, 250 West 55th Street, New York, NY 10019.

Daniel S. Pariser, Arnold & Porter Kaye Scholer LLP, 601 Massachusetts Avenue, NW, Washington, DC 20001.

Neal Kumar Katyal, Jessica L. Ellsworth, Frederick Liu, Sean Marotta, Mitchell P. Reich, Hogan Lovells US LLP, 555 Thirteenth Street, NW, Washington, DC 20004, (202) 637-5600, neal.katyal@hoganlovells.com.

Sara Solow, Hogan Lovells US LLP, 1835 Market Street, Philadelphia, PA 19103, for petitioner.

**\*i QUESTION PRESENTED**

The Due Process Clause permits a state court to exercise specific jurisdiction over a defendant only when the plaintiff's claims "arise out of or relate to" the defendant's forum activities. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985) (internal quotation marks omitted). The question presented is:

Whether a plaintiff's claims arise out of or relate to a defendant's forum activities when there is no causal link between the defendant's forum contacts and the plaintiff's claims - that is, where the plaintiff's claims would be exactly the same even if the defendant had no forum contacts.

**\*ii PARTIES TO THE PROCEEDING**

1. Bristol-Myers Squibb Company, petitioner on review, was a defendant in the trial court and the petitioner below.

2. The Superior Court of California for the County of San Francisco, respondent on review, was the respondent below.

3. The following individuals, respondents on review, were plaintiffs in the trial court and the real parties in interest below: Jean A. Bookout, Dana A. Crawford, Cedric A. Creeks, Lara A. Ellis, Dorothy A. Emerson-Evans, James A. Gogerty, William A. Greene, Kathleen A. Herman, Ruth A. Konopka, Patrick A. McClelland, Velva A. Neeley, Barbara A. Tabbs, James A. Thomas, Shirley A. Tincher, John A. Tomlinson, Rex A. Victory, Elizabeth A. White, Richard A. White, Lorraine Adams, Francis W. Adams, Beverley Adams, Theodore Adams, Gwendolan E. Ailes, Ricky L. Alexander, George Allen, Marie Alvin, Michael Alvin, Cheryl Anders, Judy Anderson, Bracy Anderson, David E. Andrews, Beverly R. Andrews, June M. Angel, Georgia Ann Burgin, Ronald A. Arcaroli, Eileen J. Armstrong, Stanley B. Kowaleski, Teresa B. McClelland, Thomas B. Morrison, Willie B. Thomas, James B. Watson, Thomas Badell, Beulah Baham, Charlie Baker, Faye Baker, Hinton Barnes, Brenda Beach, Michael R. Beaton, Pauline Beaton, Mary Beattie, Laura Beavers, James Beavers, Allen Bell, John Bell, Robert Bennet, Sandra Bennet, Mary Lou Bingham, Brenda Boatwright, Timothy A. Bolyard, Joyce Boone, David Booth, Paula Booth, Jacqueline Boston, Charles Botkin, Barbara Botkin, Charlie Bowie, Deborah Boyles, Donald Bradford, Constance R. Branch, **\*iii** Harry L. Branch, Ernest Brantley, Norma J. Brevelle, Colene Broderick, Charles Broderick, Clayton P. Brown, Ronnie Brown, Wilbur Brown, Emily Brown, Gail Brown, Inez Brown, Philip Bryan, Deborah Burke, Sarah M. Burks, Lawrence C. Ballard, Robert

C. Bratton, Grace C. Bratton, John C. Lisotta, Lesh C. Patrick, Kathleen Cade, Marvinette Callahan, Francis Campione, Betty Cantor, James Caouette, Bonnie Carpenter, Loney Carpenter, Donna Carrop, Linda Carter, Eugene Carter, Denise Casey, Carlton Cash, Tina Cash, Maria Celaya, Raphael Cerpa, Louise Cerpa, Jesus Cervantes, Emily Cervantes, Ben Chatter, Josephine F. Chavarria, Nellie Chenoweth, Patrick Clark, Patti Clark, Mildred Clark, Linda Cody, Sam Colamartino, Donald Cole, Betty Cole, Carl Collins, Estela Colunga, Senorina Colunga, Shirley Cook, Ella Cook, Robert Cook, Delores Cook, John Cook, James Corbett, Frank W. Cornwell, Clifford Cox, Chad Crank, Angela Crawford, Marvelene W. Crawford, Christine M. Crawford, John L. Crawley, Phoebe A. Crawley, David D. Applen, Ellarhee D. Dowler, Danny D. Dowler, Lily D. Hudson, Jeffrey D. Lang, Anthony D. Patton, Carol D. Renstrom, Jerrel D. Spencer, Robert D. Swanner, Patricia D. Watson, Rhonda D. Watson, James E. Dailey, Alexandra Dailey, Michele Dargento, Rosamaria Dargento, Debra Davies, Marion Davis, Dale A. Davis, Jolene Davis, Thomas Davis, Marcia Davis, Timothy Deegan, Patti G. Deegan, Das Deendial, Toolsaidai Deendial, Howard Diamond, Rebecca Diamond, Dennis W. Dodson, Leslie K. Dodson, Charles W. Drake, Linda Drake, Theresa J. Dunlap, Olivia Dunn, Michael J. Dunn Sr., Willie E. Anderson, Paul E. Bragg Jr., Maxine E. Brown,  ***iv** Charles E. Bryant, Glen E. Burgin, Sharon E. Burk, Harold E. Evans, James E. Farmer, Maria E. Gutierrez, Frances E. Jones, Douglas E. Mallett, Sherry E. Mcknight, Richard E. Sabin, Donald E. Witt, Patricia A. Eaton, Elisha Edge, Victoria Edge, Toni Edwards, David Egan, Gerald R. Ewing, Kandy A. Ewing, William F. Cook, Roberta F. Ehmer, Jose F. Gutierrez, James Faulcon, Gladys Faulcon, Robert F. Ferranti, Thomas R. Finson, Jeannette Fischer, Roy Fitch, Ruby Fitch, Catherine Fleenor, Eddievies Flenoury, Donald Fletcher, Rita Fletcher, Angela Flowers, Beth Foust, Jerry G. Foust, Nickiilynn Fowler, William R. Fox, Charles Franklin, Beverly A. Frazier, Bobby G. Bingham, Lester G. Boutwell, Walter G. Burk, Paul G. Ehmer, Lloyd G. Gregg, Donald G. Jones, Jane G. Ordway, Anthony G. Williams, Michael G. Zawicki, Carmen M. Garcia, Lindy Garcia, Jose L. Garriga, Bernard J. Garstecki, Helen Garstecki, Richard T. Gesiorski, Dolores Gesiorski, Albert L. Gilkerson, Loretta F. Gilkerson, Thomas C. Glassburner, Linda L. Glassburner, Jose Gonzales, Senaida Gonzales, Maurillia G. Gonzalez, Richard F. Gordon, Cindy Green, Mary Greene, Shelby Greene, Delores R. Griego, Marie F. Grimes, Jacqueline H. Groce, Phillip M. Grohs, Sylvia Grohs, Robert Groves, Virginia Groves, Dorothy H. Dulaney, Andrew H. Frye, Rhonda H. Grim, Paul H. Sheppard, Michael W. Hagood, Charlotte Hagood, Richard L. Haithcock, Vicki Haithcock, Sandra J. Hall, Gary W. Halliburton, Sandra Halliburton, William Hammond, Mary Ellen Hammond, Robert L. Harris, Anna Harris, Joanne Harris, Kennedy L. Harris, Jr., Shara L. Harrison, George M. Harrison, Diana L. Hayden, Donald E. Hayes, Teresa Hayes, Angela ***v** Haynes, Willie L. Heath, Ronald D. Heiskell, Nellie J. Heiskell, Curtis Hellman, Ricky Henry, Denise Henry, Alfred L. Hereford, Janice Hernandez, Raul Hernandez, William Hildago, Clara A. Hildalgo, Fred Hill, Deloris A. Hill, Richard L. Holdaway, Violet Hollis, Don Hollis, Dennis B. Holmes, Sherry Holmes, Tommie L. Holmes, Ida Holmes, Terry L. Holt, Curtis E. Honeycutt, Richard Hopkins, Gerrie Hopkins, Tibor Horvath, Helen Horvath, Brian Houston, Ollie Houston, Ronald G. Houston, Lynn Houston, Korliss Howard, Charles Howe, Majorie O. Hower, Earnest H. Hower, Willie Hudson, Sylvia Hudson, Owen L. Hudson, Horace Hughley, Judith Hughley, Nancy L. Hunt, Claudine Hurtt, Terry Hurtt, James Hutchens, Wilma Hutchens, Viola J. Bales, Betty J. Bragg, Linda J. Crank, Fiora J. Gilmore, William J. Maher, Johnny J. Martinez, Calvin J. Mauldin, Mary J. Miles, Audrey J. Riggle, Terri J. Roper, Roy J. Simmons, Harmon J. Tholen, Gary J. Van Dyke, Linda Jackson, Joann Jackson, Raphael M. Jakim, Debra Jakim, Sandra L. Jambor, Klaus Jambor, William Jensen, Gladaine Johnson, Gwendolyn Johnson, Demetrius Johnson, Darlene Johnson, Mary Johnson-Mitchell, Endonell Jones, Carolyn Jones, Alexander Jordan, Barbara Joseph, Linda K. Bennett, Loyd K. Boone, Karen K. Dunsmore, Sharon K. Fillinger, Scott A. Kann, Marilyn Keller, Robert L. Kemp, Elizabeth Kennedy, Gloria Keppard, Juanita Keyes, Johnnie Keyes-Barnes, Janet Kimberly, Billy G. Kinder, Jerome Kmecik, Cindy Kmecik, Hubert W. Knight, Carolyn R. Knight, Jackie R. Knight, Katheryn Knight, Robert C. Knupp, Ronald J. Kolbeck, Patricia G. Kolbeck, Ronald Kramer, Roseann Kramer, Bobby L. Boyles, ***vi** Eugene L. Brown, Dorothy L. Chunes, Augusta L. Cox, Richard L. Dalton, Virginia L. Dalton, Denise L. Delorenzo, Kevin L. Donaghey, Frieda L. Evans, Robert L. Gilmore, Melvin L. Griffin, Ann L. Hauger, David L. Haynes, Charles L. Horton, Joseph L. Keller, Vicki L. Lang, Andrew L. Lyles, John L. Mckenzie, Sally L. Mckittrick, Frederick L. Newton, Velma L. Pack, Denise L. Sabin, Mary L. Shephard, Terrie L. Smith, Donald L. Souza, James L. Titcher, Debra L. Whitaker, Mary L. Woods, Evelyn L. Zawicki, Eunice Laday, Carol Lame, Kenneth Lame, Brenda Lamp, Joann Lampkins, Mi Lee, Alvin Lefleur, Lorinda Lefleur, Willie Leggett, Debra Leggett, Carlos Leos, Barbara Lisotta, Randall Lister, Darlene Locke, Dueward Locke, Jr., William Longino, Jacalyn Longino, Stanely Looney, Thera Looney, Rosemary Lyles, Debbie M. Edge, Norma M. Farmer, Richard M. Herman, Irene M. Kowaleski, Larry M. Lamp, Wanda M. Miyashiro, James M. Owen, Daniel M. Ruecker, Kevin M. Shephard, Diane M. Tincher, Diann M. Warner, Ruth M. White, Sharon M. Woodmansee, Toby M. Zermeno, Geraldine Macleroy, Robert Macleroy, Tausha R. Mahaffey, Gerald Marince, James J. Martin, Rina Martin, Linda C. Martin, Ruby Martinez, James Matousek, Charlotte Matousek, Linda Mauldin, Donald L. Maynard, June Mcbride, Aubrey Mcbride, Becky Mcbride, Clifton H. Mccollum, Shirley B. Mccollum, Gaylon R. Mccoslin, Robert M. Mcdonald, Opal A. Mcginnis, Timothy S. Mcinturff, Charles R. Mcintyre, Philip Mckittrick, Samuel Mcknight, John Mcnees, John Mcnees Jr., Frank E. Meadows, John D. Mejia, Ethel Mejia, Michael Middleton, Danny Miller, Margaret Miller, Lucille A Miller, Donald E.  ***vii** Miller, Marvin K. Miller,

Carolyn Mitchell, Carol L. Mitchell, Wesley Thomas Moon, Debbie Ann Moon, Stephen Moore, Linda Moore, Donald L. Moore, Erma Jean Moore Jackson, Shirley Morris, Claudia Morrison, Earnestine Mosley, Carl Mosley, Phillip Moss, Beverly A. Nelson, Anita Nerti, Anthony J. Nerti, Addie Newton, Julianne Nicks, Tommy W. Norton, Phyllis O. Schuler, Sylvia Oates, Phil Oates, William Oates, Donald L. Osborne, Joyce Osborne, Preston L. Oswalt, Janet Oswalt, Robert Owens, Brian P. Barton, Robert P. Butler, Allen P. Dulaney, Commodore P. Keyes, Michael P. Lawson, Adriana P. Soliz, Gloria A. Padron, Mary Parish, Christine Parosky, Katherlean Payne, Judy Pendley, William Pendley, Francisco Perez, Regina Perez, Linda C. Perkins, Joseph W. Picklo, Susan D. Picklo, Romana H. Pitts, Wa Postell, Arlene Proctor, Alva Purdy, Shirley Purswell, Pauline H. Pytak, Clinton R. Bookout, Ikie R. Brewster, Anna R. Flanary, Ricky R. Foust, Bobby R. Green, Annie R. Lofton, Dana R. Morgan, Paul R. Parosky, Dennis R. Warner, Angel Ramirez, Catherine Ramirez, Florence E. Rapp, Billy Ray Jones, Michael E. Recek, Mary B. Recek, Timothy L. Reeves, Shawna Reyna, Artis Rhodes, Carrie Rider, Eddie D. Riggs, Doris Rightmer, Lorna Rinehart, Joseph Rinehart, Roland Romero, Richard Rose, Patricia Ruddiman, Laquetta Ruff, Bonnie Rutherford, Virgil S. Anderson, Linda S. Frye, Jeffrey S. Lankford, Walter S. Miyashiro, Richard Salinas, Daena Salinas, Benjamin H. Salsedo, Stephen Salvaggio, Ilia Samaniego, Stephen W. Santos, Craig Schirmeister, Bruce E. Schramm, Marcus J. Seacrist, Armando Segura, Deborah A. Shafeek, Alden R. Shaffer, Chrystopher S. Shelton, Bruce M. **\*viii** Sheppard, Deborah Shipps, George E. Shockley, Ronald B. Siegel, Billy J. Simmonds, Alan Simzyk, Betty Sipos, Darien Smith, Edward G. Smith, Edith A. Smith, Harvey L. Smith, Darrel Smith, L.C. Smith, Charles Smothers, Mary Snow, Pablo Soliz, Pennelope A. Sommerville, Lavaughn Sonnier, Kristin K. Speck, Jack Speer, Daniel Spencer, William E. Sprinkle, Ronnie Stansell, James R. Starkey, Kenneth R. Steadman, Lawrence Stovall, Florence Streeter, Curtis Streeter, Debra Strickland, Beverlyn Stubbs, Nellie W. Stultz, Duane E. Sutton, Michele Swanner, Jerry Swearingen, William H. Swiney, Arnie D. Swinney, Brenda G. Swinney, James T. Mcbride, Allen T. Renstrom, Rolin T. Rutherford, Ethel Tholen, Helen Thompson, Jacqueline S. Tingler, Mary Tomlinson, Carmen Torres, Kenny D. Trent, Elizabeth Trent, Junius Trent, Dong Tunison, Sang Uh Kim, Carolyn V. Dunn, Walter J. Van Allen, Dorothy Vance, Edward Vance, Thomas Varner, Ronald K. Vaughan, Marilyn Victory, Donald W. Burke, Jacky W. Dunsmore, Frederick W. Ellis, Ossie W. Fillinger, Lee W. Fleenor, Russel W. Gugisberg, David W. Harris, Glenn W. Kohler, Floyd W. Ordway Sr., Franklin W. Pond, Thomas W. Riggle, Douglas W. Smith, Mabel W. Smith, Henry W. Whitaker, Lutresia Walker, Alice Walker, Michael E. Warrix, Pearl H. Weaver, John White, Precious Whitfield, Raymond W. Whittaker, Betty Jo Whittaker, Earl Williams, Judie A. Williams, Sam Wilson, Evelyn Wilson, Selina Wilson, Siamone Wilson, Ronald A. Winkels, Phyllis Witt, James Woodmansee, Gene Woods, Rose Young, Whitney Young, and Raul Zermano.

## \*IX RULE 29.6 DISCLOSURE STATEMENT

Bristol-Myers Squibb Company has no parent corporation, and no publicly held company owns 10 percent or more of Bristol-Myers Squibb Company's stock.

West Headnotes (1)

**Constitutional Law** Manufacture, distribution, and sale
**Courts** Defective, dangerous, or injurious products;  products liability

Do a plaintiff's claims arise out of or relate to a defendant's forum activities, so that the Due Process Clause permits a state court to exercise specific jurisdiction, where there is no causal link between the defendant's forum contacts and the plaintiff's claims, that is, the plaintiff's claims would be exactly the same even if the defendant had no forum contacts?

Cases that cite this headnote

## \*xi TABLE OF CONTENTS

QUESTION PRESENTED ................................................................................................... i

PARTIES TO THE PROCEEDING ................................................................................... ii

RULE 29.6 DISCLOSURE STATEMENT ...................................................................... ix

TABLE OF AUTHORITIES ............................................................................................. xiii

INTRODUCTION ............................................................................................................... 1

OPINIONS BELOW .......................................................................................................... 3

JURISDICTION ................................................................................................................. 3

CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED ...................................... 3

STATEMENT ..................................................................................................................... 4

SUMMARY OF ARGUMENT ............................................................................................. 11

ARGUMENT ..................................................................................................................... 14

I. SPECIFIC JURISDICTION REQUIRES A CAUSAL CONNECTION BETWEEN THE
DEFENDANT'S FORUM CONTACTS AND THE PLAINTIFF'S CLAIM ............................. 14

A. The Court Has Invariably Understood "Arise Out Of Or Relate To" As Requiring A Causal
Link ................................................................................................................................ 17

B. A Causal Requirement Makes Sense In Light Of The Specific Jurisdiction Inquiry As A Whole ... 22

C. The Purposes Of Specific Jurisdiction Compel A Causal Requirement ............................. 25

*xii D. The Sliding Scale Approach Impermissibly Dispenses With A Causal Link, Blurring The
Line Between General And Specific Jurisdiction ............................................................... 32

II. SPECIFIC JURISDICTION REQUIRES THAT A DEFENDANT'S FORUM CONTACTS BE
A PROXIMATE CAUSE OF THE PLAINTIFF'S CLAIM ..................................................... 37

III. THERE IS NO CAUSAL CONNECTION BETWEEN BRISTOL-MYERS'S CALIFORNIA
CONTACTS AND RESPONDENTS' CLAIMS IN THIS CASE ........................................... 46

CONCLUSION ................................................................................................................... 52

## *xiii TABLE OF AUTHORITIES

Cases:

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006) .............. 44

*Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102
(1987) ...................................................................... 16

*Associated Gen. Contractors ofCal., Inc. v. Cal. State Council of Carpenters,* 459 U.S. 519 (1983) ..................... 44

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 305 F.3d 120 (2d Cir. 2002) ..................... 38

*Beydoun v. Wataniya Rests. Holding, Q.S.C.,* 768 F.3d 499 (6th Cir. 2014) ..................... 38, 46

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1984) .............. *passim*

*Burnham v. Superior Court,* 495 U.S. 604 (1990) ..................... 30

*Calder v. Jones,* 465 U.S. 783 (1984) ..................... 19

*Caouette v. Bristol-Myers Squibb Co.,* No. C-12-1814 (N.D. Cal. Aug. 10, 2012) ..................... 6

*Daimler AG v. Bauman,* 134 ... S. Ct. 746 (2014) ..................... *passim*

*Day & Zimmerman, Inc. v. Challoner,* 423 U.S. 3 (1975) (per curiam) ..................... 29

*Direct Mktg. Ass'n v. Brohl,* 135 ... S. Ct. 1124 (2015) .............. 29

**\*xiv** *D'Jamoos v. Pilatus Aircraft Ltd.,* 566 F.3d 94 (3d Cir. 2009) ..................... 51

*Exxon Co., U.S. A. v. Sofec, Inc.,* 517 U.S. 830 (1996) .............. 44

*Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915 (2011) ..................... *passim*

*Gulf Oil Corp. v. Gilbert,* 330 U.S. 501 (1947) ..................... 31

*Hanson v. Denckla,* 357 U.S. 235 (1958) ..................... 19, 22, 26, 41, 43

*Harlow v. Children's Hosp.,* 432 F.3d 50 (1st Cir. 2005) .......... 46

*Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408 (1984) ..................... 16, 20, 21, 37

*Hertz Corp. v. Friend,* 559 U.S. 77 (2010) ..................... 28, 44

*Hinrichs v. Gen. Motors of Can., Ltd.,* No. 1140711, 2016 WL 3461177 (Ala. June 24, 2016) ..................... 51

*Holmes v. Sec. Inv'r Prot. Corp.,* 503 U.S. 258 (1992) .............. 43

*In re Plavix Mktg., Sales Practices & Prods. Liab. Litig.,* 923 F. Supp. 2d 1376 (J.P.M.L. 2013) ..................... 51

*International Shoe Co. v. Washington,* 326 U.S. 310 (1945) .... *passim*

*J. McIntyre Mach., Ltd. v. Nicastro,* 564 U.S. 873 (2011) ......... 14, 26, 27, 30, 43

**\*xv** *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770 (1984) .... 19, 22

*Kuenzle v. HTM Sport-Und Freizeitgeräte AG,* 102 F.3d 453 (10th Cir. 1996) ............... 51

*Kulko v. Superior Court,* 436 U.S. 84 (1978) ............... 19, 39, 43

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 134 S. Ct. 1377 (2014) ............... 43

*Madruga v. Superior Court,* 346 U.S. 556 (1954) ............... 3

*Maracich v. Spears,* 133 S. Ct. 2191 (2013) ............... 29

*McGee v. Int'l Life Ins. Co.,* 355 U.S. 220 (1957) ............... 19, 43

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning,* 136 S. Ct. 1562 (2016) ............... 29, 44

*Nevada v. Hicks,* 533 U.S. 353 (2001) ............... 22

*Nowak v. Tak How Invs., Ltd.,* 94 F.3d 708 (1st Cir. 1996) ....... 46

*O'Connor v. Sandy Lane Hotel Co.,* 496 F.3d 312 (3d Cir. 2007) ............... 34

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.,* 484 U.S. 97 (1987) ............... 17

*Paroline v. United States,* 134 S. Ct. 1710 (2014) ............... 38

*Rush v. Savchuk,* 444 U.S. 320 (1980) ............... 39, 40, 48, 49

**\*xvi** *Sun Oil Co. v. Wortman,* 486 U.S. 717 (1988) ............... 29

*TMW Enters., Inc. v. Fed. Ins. Co.,* 619 F.3d 574 (6th Cir. 2010) ............... 22

*uBID, Inc. v. GoDaddy Grp., Inc.,* 623 F.3d 421 (7th Cir. 2010) ............... 46

*Walden v. Fiore,* 134 S. Ct. 1115 (2014) ............... *passim*

*World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286 (1980) ............... *passim*

Constitutional Provisions:

U.S. Const. amend. V ............... 17

U.S. Const. amend. XIV ............... 3, 17

Statutes:

28 U.S.C. § 1257(a) ................................................................ 3

28 U.S.C. § 1332(d)(11)(B) ................................................... 5

28 U.S.C. § 1407(a) ................................................................ 51

Cal. Civ. Proc. Code § 410.10 .............................................. 3, 6

Cal. Civ. Proc. Code § 418.10(a)(1) ..................................... 6

Cal. Civ. Proc. Code § 418.10(c) .......................................... 7

Cal. Civ. Proc. Code § 1989 .................................................. 30

Other Authorities:

Administrative Order, First Judicial District, N.Y. Supreme
Court (Feb. 1, 2012) ............................................................. 50

Lea Brilmayer, *Related Contacts and Personal Jurisdiction,
101 Harv. L. Rev. 1444 (1988)* .......................................... 40, 45

*xvii Charles W. "Rocky" Rhodes & Cassandra Burke
Robertson, *Toward a New Equilibrium in Personal
Jurisdiction, 48 U.C. Davis L. Rev. 207 (2014)* .................. 29

Antonin Scalia & Bryan A. Garner, *Reading Law: The
Interpretation of Legal Texts* (2012) ................................... 22

Allan R. Stein, *Frontiers of Jurisdiction: From Isolation to
Connectedness, 2001 U. Chi. Legal F. 373* ......................... 29

*1 INTRODUCTION

Respondents are individuals from 33 States who sued Bristol-Myers Squibb Company in California for injuries they allegedly suffered after taking the prescription drug Plavix. It is undisputed that Bristol-Myers did not develop or manufacture Plavix in California; that the drug was not marketed, promoted, or distributed to respondents in California; and that respondents did not receive or fill their prescriptions, ingest the drug, or suffer any injuries in California. Indeed, respondents do not dispute that their claims would be exactly the same if Bristol-Myers had never conducted business in California at all.

*2 Nonetheless, the California Supreme Court found that Bristol-Myers was subject to specific jurisdiction in California on respondents' claims. It did so by employing a "sliding scale approach" in which "wide[r] ranging" contacts could make up for the lack of any causal connection between respondents' claims and California. Pet. App. 32a (internal quotation marks omitted). The court concluded that Bristol-Myers could be haled into California on respondents' claims merely because Bristol-Myers sold Plavix to *other* persons and developed *other* products in the State.

That is not how specific jurisdiction works. Since *International Shoe Co. v. Washington,* 326 U.S. 310 (1945), this Court has made clear time and again that "specific or case-linked" jurisdiction requires a causal connection between the defendant's forum conduct and the litigation. *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919 (2011). That bedrock requirement ensures that a common connection links the defendant, the forum, and the litigation; that States do not assert jurisdiction over matters occurring and directed entirely outside their borders; and that any litigation to which a defendant is

subject is a direct and foreseeable consequence of its in-state activities. Courts cannot dispense with this causation requirement because a defendant has wide-ranging contacts with a State. Only *general* jurisdiction allows that, and then only where the defendant is at home.

Accordingly, the California court's assertion of specific jurisdiction in this case was improper. None of Bristol-Myers's activities in California played any part in bringing about respondents' alleged injuries, **\*3** and so Bristol-Myers cannot be haled into California court to answer respondents' claims.


## OPINIONS BELOW

The California Supreme Court's opinion is reported at 377 P.3d 874. Pet. App. 1a-90a. The California Court of Appeal's decision denying Bristol-Myers's petition for a writ of mandate is reported at 175 Cal. Rptr. 3d 412. Pet. App. 91a-146a. The California Superior Court's opinion denying Bristol-Myers's motion to quash service of the summons is unreported. *Id.* at 147a-150a.


## JURISDICTION

The California Supreme Court entered judgment on August 29, 2016. Bristol-Myers filed a petition for a writ of certiorari on October 7, 2016, and this Court granted the petition on January 19, 2017. The Court's jurisdiction rests on 28 U.S.C. § 1257(a). *See Madruga v. Superior Court,* 346 U.S. 556, 557 n.1 (1954) (the California Supreme Court's disposition of a writ petition is a final judgment under § 1257(a)).


## CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED

The Due Process Clause of the Fourteenth Amendment provides in pertinent part:

> [N]or shall any State deprive any person of life, liberty, or property, without due process of law.


California Code of Civil Procedure § 410.10 provides:

> A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States.


## \*4 STATEMENT

1. Plavix is a prescription drug that helps prevent strokes, heart attacks, and other cardiovascular problems by inhibiting blood clots. Pet. App. 2a. Plavix is manufactured by Bristol-Myers, a global biopharmaceutical company that is incorporated in Delaware, has its headquarters in New York, and conducts substantial operations in New Jersey. *Id.* at 4a; J.A. 82. Bristol-Myers "performed or directed" its work on the development, manufacture, labeling, marketing, and regulatory approval of Plavix from its "New York headquarters and New Jersey operating facilities." Pet. App. 5a; *see* J.A. 85. None of that work was "accomplished or directed by employees working in California." J.A. 85.

Respondents are 575 non-California residents who sued Bristol-Myers in California state court in 2012, alleging injuries from taking Plavix. Pet. App. 1a, 147a; Pet. 5 & n.1. Respondents reside in 33 other States, including Alabama, Alaska, Indiana, Kansas, Kentucky, Louisiana, New Jersey, Ohio, Oklahoma, Oregon, Texas, and West Virginia. Pet. App. 2a-3a; J.A. 25-41. They appear as individual co-plaintiffs on eight separate complaints, alongside *86* California residents. Pet. App. 2a.[1]

**\*5** Each complaint names as defendants Bristol-Myers and McKesson Corporation, a California-based pharmaceutical distributor. *Id.* at 2a-3a. Each respondent individually asserts various California state-law claims, alleging that Bristol-Myers "negligently designed and manufactured Plavix, failed to disclose material information in its advertising and promotion of Plavix [,] and fraudulently and falsely advertised and promoted the product." *Id.* at 27a; *see* J.A. 42. The circumstances pertaining to respondents' claims - such as when and why each respondent was prescribed Plavix, how many years he or she took the medication, when he or she started to experience side-effects, and what those side-effects were - differ from person to person. J.A. 25-42; *see also* J.A. 73 (requesting individualized damages for medical expenses, earnings losses, and future medical monitoring).

2. Bristol-Myers removed respondents' eight complaints to federal court, but the federal court remanded for lack of subject matter jurisdiction. See Pet. App. 95a.[2] The Judicial Council of California **\*6** then assigned respondents' complaints to a single state trial judge as a "coordinated matter." *Id.* at 4a; *see* J.A. 75-78. Bristol-Myers moved to quash service of respondents' summonses and to dismiss their claims for lack of personal jurisdiction. J.A. 79-81; *see* Cal. Civ. Proc. Code §§ 410.10, 418.10(a)(1).

Bristol-Myers argued that it was not subject to specific jurisdiction on respondents' claims because those claims did not arise out of or relate to any contact Bristol-Myers had with California. *See* Pet. App. 96a. Bristol-Myers did not research or develop Plavix in California. *Id.* at 5a, 133a; J.A. 85. It has never manufactured Plavix in California. Pet. App. 5a, 133a; J.A. 85. And "[n]one of the work related to the labeling, packaging, regulatory approval, or development and direction of the advertising or marketing strategy" for Plavix took place in California. J.A. 85; *see* Pet. App. 5a, 133a. Respondents, moreover, were not prescribed Plavix by doctors in California, did not have their prescriptions filled by pharmacies in California, and did not receive Plavix distributed by McKesson from California. *See* Pet. App. 134a (respondents' "injuries did not occur in the course of [Bristol-Myers's] direct delivery of Plavix to the California market"); *id.* at 46a-48a, 59a-60a (dissent noting that "at no point have real parties argued McKesson bore any responsibility in providing them with Plavix"). They also did not ingest Plavix in California, suffer injury in California, or receive treatment in California. *Id.* at 4a, 33a-34a.

**\*7** Bristol-Myers further argued that it was not subject to general jurisdiction in California because it was not "at home" there. *Id.* at 96a-97a. Its sales of Plavix in California constitute only 1.1 percent of its total national sales revenue. *Id.* at 5a; J.A. 85. Less than 11 percent of its sales force covers "any part" of the State. J.A. 84. And it employs just 3 percent of its U.S. workers there. *See* J.A. 82 (414 total California employees); J.A. 84 (12,598 total U.S. employees). Bristol-Myers's other connections to California involve a small government-affairs office in Sacramento and four research facilities that conduct research on *other* drugs. Pet. App. 5a, 29a; J.A. 82.

The California Superior Court denied Bristol-Myers's motion, holding that the company was subject to general jurisdiction in California because it engaged in "wide-ranging, continuous, and systematic activities" in the State. Pet. App. 150a. Bristol-Myers petitioned for a writ of mandate. *See* Cal. Civ. Proc. Code § 418.10(c). On the same day that this Court in *Daimler AG v. Bauman,* 134 S. Ct. 746 (2014), rejected an assertion of general jurisdiction over a corporation in California, the California Court of Appeal denied the writ. J.A. 9. Soon after, the California Supreme Court vacated that denial and directed the Court of Appeal to issue an order to show cause why the writ should not be granted. J.A. 9-10. On remand, the Court of Appeal concluded that, in light of *Daimler,* Bristol-Myers was *not* subject to general jurisdiction in California. Pet. App. 100a-114a. The court nevertheless denied the writ on a different ground: that Bristol-Myers was subject to specific jurisdiction because respondents' claims were sufficiently related to Bristol-Myers's California activities. *Id.* at 114a-146a.

**\*8** 3. The California Supreme Court affirmed in a 4-to-3 decision. *Id.* at 1a-90a.

a. The majority agreed with Bristol-Myers that it was not subject to general jurisdiction in California. *Id.* at 9a-19a. Applying *Goodyear* and *Daimler,* the majority held that Bristol-Myers was not "at home" in the State. *Id.* at 16a-19a. Bristol-Myers was not incorporated or headquartered in California - the two paradigm bases for general jurisdiction. *Id.* at 16a. And Bristol-Myers's California activities were not so significant in comparison to its activities elsewhere as to allow Bristol-Myers to be "sued in California on any cause of action, whether or not related to its activities [t]here." *Id.* at 17a.

The majority nonetheless held that Bristol-Myers was subject to specific jurisdiction on respondents' claims. *Id.* at 20a-44a. The court reached this conclusion by applying what it called "a sliding scale approach" to determining whether respondents' claims arose out of or related to Bristol-Myers's California contacts. *Id.* at 32a. As its name suggests, the sliding scale involves

a judicial balancing of "the intensity of [the defendant's] forum contacts and the connection of the [plaintiff's] claim to those contacts." *Id.* at 22a (internal quotation marks omitted). These factors, the majority explained, are "inversely related": "The more wide ranging the defendant's forum contacts, the more readily" a California court can find a "connection" sufficient to establish specific jurisdiction. *Id.* (internal quotation marks and brackets omitted). Critically, under the sliding scale, the defendant's forum contacts "need not be either the proximate cause or the 'but for' cause of the plaintiff's injuries." *Id.*

**\*9** Applying the sliding scale, the majority found that Bristol-Myers's general business activities in California were sufficient to subject the company to specific jurisdiction on respondents' claims. *Id.* at 27a-34a. Bristol-Myers, it observed, sold Plavix in California as part of a "nationwide course" of "marketing, promotion, and distribution." *Id.* at 28a. Although respondents themselves did not ingest Plavix that had been marketed, promoted, or distributed in California, the majority viewed respondents' claims as concerning "the same allegedly defective product" and the same "assertedly misleading marketing and promotion of that product." *Id.*

Moreover, the majority added, Bristol-Myers "maintains research and laboratory facilities in California." *Id.* at 29a. Although "there is no claim that Plavix *itself* was designed and developed in these facilities," or that respondents' claims "arise out of [Bristol-Myers's] research conduct in this state," the majority thought the company's "research and development activity" in the State provided "an additional connection" relevant to the jurisdictional inquiry. *Id.* (emphasis added).

Brushing aside Bristol-Myers's assertion that respondents' claims "would be exactly the same if [Bristol-Myers] had no contact whatsoever with California," *id.,* the majority emphasized instead that Bristol-Myers's "contacts with California are substantial and the company has enjoyed sizable revenues from the sales of its product here," *id.* at 32a. The majority therefore concluded that, under the "sliding scale approach," these "extensive contacts with California establish minimum contacts based on a less direct connection between [Bristol- **\*10** Myers]'s forum activities and plaintiffs' claims than might otherwise be required." *Id.*

b. Justice Werdegar, joined by Justices Chin and Corrigan, dissented. *Id.* at 46a-87a.

The dissenters agreed that Bristol-Myers was not subject to general jurisdiction in California. *Id.* at 46a. But they strongly disagreed that respondents' claims could be said to arise out of or relate to Bristol-Myers's California activities. *Id.* at 51a. The majority's contrary conclusion, the dissenters explained, "is not supported by specific jurisdiction decisions from the United States Supreme Court *** or the lower federal and state courts." *Id.* at 49a. And the dissenters faulted the majority for "undermin[ing] [the] essential distinction between specific and general jurisdiction." *Id.* at 50a. If the requisite connection between the forum and the litigation is established merely because a defendant has engaged in nationwide conduct - such that the conduct at issue in the plaintiff's claims is similar to conduct that also allegedly occurred in the forum - specific jurisdiction is "expand[ed]" "to the point that, for a large category of defendants, it becomes indistinguishable from general jurisdiction." *Id.* And that result eviscerates the limits on general jurisdiction that this Court articulated in *Daimler.* As the dissenters explained, what this Court "wrought in *Daimler* - a shift in the general jurisdiction standard from the 'continuous and systematic' test *** to a much tighter 'at home' limit - [the majority] undoes today under the rubric of specific jurisdiction." *Id.* at 50a-51a.

This Court granted certiorari.

## **\*11** SUMMARY OF ARGUMENT

I. Seventy-two years ago in *International Shoe,* the Court held that a state court can exercise specific jurisdiction over a nonresident defendant only where the defendant has "certain minimum contacts *** such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Walden v. Fiore,* 134 S. Ct. 1115, 1121 (2014) (quoting *International Shoe,* 326 U.S. at 316). That inquiry "focuses on the relationship among the defendant, the forum, and the litigation," *id.* (internal quotation marks omitted), which requires determining two things: (1) whether the defendant "purposefully avail [ed]" itself of the forum, and (2) whether the plaintiff's claims "arise out of or relate to" the defendant's forum contacts. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472-476 (1984) (internal quotation marks omitted). Both of these requirements must be met for specific jurisdiction to be proper; neither can be dispensed with.

And for seven decades, the Court has made clear what it means for a claim to "arise out of or relate to" a defendant's forum contacts: The defendant's activities in the State must be a *cause* of the plaintiff's suit. In every specific jurisdiction case since

*International Shoe,* the Court has relied on the existence or absence of a causal link in assessing whether jurisdiction exists. No decision has suggested any other type of relationship would suffice.

That makes sense. Specific jurisdiction requires the defendant to engage in conduct that simultaneously connects the defendant, the forum, and the litigation. It is well-established that the defendant must "form" the first link of this relationship - **\*12** between the defendant and the forum - through its own conduct. *Walden,* 134 S. Ct. at 1122. It follows that the second link - between the forum and the litigation - must be a continuation of the same causal chain; otherwise, there would be no common connection between "the defendant, the forum, and the litigation." *Id.* at 1121 (internal quotation marks omitted).

The purposes behind the specific jurisdiction doctrine reinforce this conclusion. The limits inherent in our federal structure prohibit States from enforcing obligations that a defendant incurred exclusively through conduct undertaken in and directed at other States. Absent a causal requirement, defendants would lack fair notice as to where their conduct would subject them to suit. And dispensing with causation would force defendants to defend claims in a place where none of the conduct giving rise to the suit occurred - a situation unfair to litigants and States alike.

The California Supreme Court erred, then, in adopting a "sliding scale approach" that deems a causal link unnecessary so long as a defendant has other, "wide ranging" contacts with the State. Pet. App. 32a (internal quotation marks omitted). That shifting standard "confus[es]" specific jurisdiction with general, *Goodyear,* 564 U.S. at 919, and effectively subjects national companies to a form of the "unacceptably grasping" jurisdictional test this Court rejected in *Daimler,* 134 S. Ct. at 760.

II. Not only is a causal link required, but a defendant's forum conduct must be a *proximate* cause of the plaintiff's claim. That is what this Court said in *Burger King. See* 471 U.S. at 474. And the Court **\*13** has found specific jurisdiction lacking where some lesser causal relationship was present.

The logic and purposes of specific jurisdiction also compel this conclusion. Just as "random, fortuitous, or attenuated" contacts do not establish a constitutionally sufficient connection between a defendant and the forum to satisfy the purposeful availment requirement, *id.* at 475 (internal quotation marks omitted), those same sorts of loose affiliations should not establish a constitutionally sufficient link between the forum and the litigation to satisfy the "arise out of or relate to" requirement. And a proximate cause test preserves limits on state authority, ensures predictability and administrability, and prevents defendants from being haled into court for suits that have no reasonable, foreseeable connection to anything the defendant did in the State.

III. Under any standard of causation, respondents' claims should be dismissed. Respondents sought to establish jurisdiction by showing that Bristol-Myers marketed Plavix to *other* individuals from California and developed *other* products there. Respondents have identified nothing Bristol-Myers did in the State that gave rise to *their* claims. It is irrelevant that claims against another defendant and claims brought by other plaintiffs are subject to California's jurisdiction; for jurisdiction to be proper, a plaintiff must identify acts connecting each defendant to the plaintiff's own claims.

If respondents wished to sue Bristol-Myers in a single consolidated action, they had many ways to do so. For instance, they could have sued Bristol-Myers in New York or Delaware, where it is at home; they could have brought their product defect and false **\*14** advertising claims in New York or New Jersey, where Bristol-Myers performed or directed the relevant activities, *see* J.A. 85; or they could have filed in federal court and participated in the multidistrict litigation process, rather than structure their complaints to avoid federal subject matter jurisdiction. What respondents could not do was sue Bristol-Myers in California, a State in which none of the conduct that gave rise to their claims occurred. The California Supreme Court held to the contrary, and its decision should be reversed.

## ARGUMENT

## I. SPECIFIC JURISDICTION REQUIRES A CAUSAL CONNECTION BETWEEN THE DEFENDANT'S FORUM CONTACTS AND THE PLAINTIFF'S CLAIM

Every defendant has a "liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.' " *Burger King,* 471 U.S. at 471-472 (quoting *International Shoe,* 326 U.S. at 319).

The Due Process Clause protects that interest by "set[ting] the outer boundaries of a state tribunal's authority to proceed against a defendant." *Goodyear,* 564 U.S. at 923. Under the Clause, "[a] court may subject a defendant to judgment only when the defendant has sufficient contacts with the sovereign 'such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' " *J. McIntyre Mach., Ltd. v. Nicastro,* 564 U.S. 873, 880 (2011) (plurality opinion) (quoting *International Shoe,* 326 U.S. at 316). In giving content to that requirement, this Court has long differentiated between two types of personal jurisdiction: **15** (1) "general or all-purpose jurisdiction," and (2) "specific or case-linked jurisdiction." *Goodyear,* 564 U.S. at 919.

General jurisdiction depends on the *intensity* of a defendant's affiliations with a State relative to his activities as a whole. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home" - such as its place of incorporation or its principal place of business. *Daimler,* 134 S. Ct. at 760 (internal quotation marks omitted). Indeed, "general jurisdiction requires affiliations so continuous and systematic as to render [a] foreign corporation *** comparable to a domestic enterprise in that State." *Id.* at 758 n.11 (internal quotation marks and brackets omitted). And where a defendant is at home, it is subject to "all-purpose" jurisdiction: It "may be sued on any and all claims," *id.* at 760, including claims "arising from dealings entirely distinct from" its activities within the State, *id.* at 754 (internal quotation marks omitted).

Specific jurisdiction, by contrast, depends on there being a "*relationship* among the defendant, the forum, and the litigation." *Walden,* 134 S. Ct. at 1121 (emphasis added) (internal quotation marks omitted). That relationship requires two links. First, there must be a link between the defendant and the forum. For that link to be present, the defendant must "*purposefully* avail []" himself of "the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Goodyear,* 564 U.S. at 924 (emphasis added) (internal quotation marks omitted). The **16** "defendant *himself*" must be the one who "form[s] the necessary connection with the forum State." *Walden,* 134 S. Ct. at 1122 (internal quotation marks omitted). And the defendant's connection with the forum must be the "proximate [] result" of his conduct - not just a "random, fortuitous, or attenuated" consequence of what the defendant did. *Burger King,* 471 U.S. at 475 (internal quotation marks omitted); *see also Walden,* 134 S. Ct. at 1123 (similar).

Second, there must be a link between the forum and the litigation. As this Court has held, the litigation must "aris[e] out of or relate[] to the defendant's contacts with the forum." *Daimler,* 134 S. Ct. at 754 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n.8 (1984)). This requirement ensures that jurisdiction is "case-linked," *Walden,* 134 S. Ct. at 1121 n.6: If a defendant's activities in a State "*give rise to* the liabilities sued on," jurisdiction is proper regardless of the extent to which the defendant is otherwise "[p]resen[t]" in the State. *International Shoe,* 317 U.S. at 317 (emphasis added) (internal quotation marks omitted).[3]

This case is about the second link, between the forum and the litigation. Since *International Shoe,* the Court has been unwavering in its insistence that specific jurisdiction exists only where the defendant's **17** contacts with the forum *caused* the plaintiff's alleged injuries and the resulting suit. Requiring such a causal link makes sense in light of the specific jurisdiction inquiry as a whole. And it promotes the purposes - federalism, predictability, and fairness - that undergird the doctrine. The California Supreme Court's conclusion that causation could be dispensed with so long as the defendant's contacts are sufficiently "wide ranging" is wrong; that so-called "sliding scale approach" lacks any footing in this Court's precedent, and impermissibly blurs specific jurisdiction with general.[4]

### A. The Court Has Invariably Understood "Arise Out Of Or Relate To" As Requiring A Causal Link

This Court's cases have consistently found that a claim arises out of or relates to the defendant's forum contacts only if there is a causal connection between those contacts and the claim. No case has deviated from this understanding.

Start with *International Shoe,* where the Court first developed the modern personal jurisdiction doctrine. There, the Court considered whether an out-of-state sales company could be sued in Washington for unpaid unemployment contributions. Articulating the now-canonical test for specific jurisdiction, **18** the Court held that specific jurisdiction exists where "the activities of [a] corporation *** *give rise to* the liabilities sued on," but not, "[c]onversely," where the "causes of action [are] *unconnected* with [the corporation's] activities" in the State. 326 U.S. at 317 (emphases added). Applying that test, the Court held that jurisdiction was proper because the plaintiff's injuries (unpaid contributions) resulted from the defendant's forum

contacts: Because "[t]he obligation which is here sued upon *arose out of*" the defendant's sales and marketing activities "in the State," the company had "rendered itself amenable to suit" over the unpaid contributions in the State's courts. *Id.* at 320-321 (emphasis added).

*Burger King* took the same causal approach to assessing the link between the forum and the litigation. Much like in *International Shoe,* the Court said that specific jurisdiction is proper where "the litigation results from alleged injuries that 'arise out of or relate to' th[e] [defendant's] activities" in the forum State. *Burger King,* 471 U.S. at 472 (internal quotation marks omitted). And that connection exists, the Court explained, where the litigation seeks to hold a defendant "to account *** for *consequences that arise proximately* from such activities." *Id.* at 474 (emphasis added). Thus, a franchisee could be sued in Florida for a "franchise dispute [that] *grew directly out of*" a contract negotiated and performed there and that "*caused* foreseeable injuries" in the State. *Id.* at 479-480 (emphases added).

In each of its specific jurisdiction cases since then, the Court has invariably done the same - relying, in applying the "arise out of or relate to" requirement, on the presence (or absence) of a causal connection   *19 between the defendant's forum contacts and the plaintiff's claim. In *Goodyear,* the litigation lacked a sufficient link to any North Carolina contact by the defendant "[b]ecause the episode-in-suit, the bus accident, occurred in France, and *the tire alleged to have caused the accident was manufactured and sold abroad.*" 564 U.S. at 919 (emphasis added). And in *Walden,* the Court held that the plaintiff could not bring a tort suit in Nevada because it was "undisputed that *no part of [the defendant's] course of conduct occurred in Nevada*" and the plaintiffs had not been injured "*because* [of] anything" the defendant did there. 134 S. Ct. at 1124-1125 (emphases added).

One could easily go on. The Court has held that courts could exercise specific jurisdiction over claims because they "*ar[o]se[] out of* the very activity being conducted" in the State, *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 780 (1984) (emphasis added); were "*based on* a contract" delivered and performed in the forum, *McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 223 (1957) (emphasis added); or "would not have occurred *but for*" the defendants' forum contacts, *Walden,* 134 S. Ct. at 1124 (emphasis added) (describing *Colder v. Jones,* 465 U.S. 783 (1984)).

By contrast, the Court has rejected assertions of jurisdiction because the claims at issue did not "arise[] out of an act done or transaction consummated in the forum State," *Hanson v. Denckla,* 357 U.S. 235, 251 (1958); "ar[o]s[e] from a separation that occurred" elsewhere, *Kulko v. Superior Court,* 436 U.S. 84, 97 (1978); or did not "*stem from* a constitutionally cognizable contact with" the forum, *WorldWide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 299 (1980) (emphasis added). Every one of the *20 Court's cases is to the same effect; in no instance has the Court found specific jurisdiction based on any relationship other than a causal one between the defendant's forum contacts and the plaintiff's suit.

Respondents nonetheless contend that the Court's cases do not require a causal link to satisfy the "arise out of or relate to" requirement. Br. in Opp. 14. They do not identify any holding or any reasoning in this Court's precedents to support that view. Rather, they claim that by using the formulation "arise out of *or* relate to," the Court necessarily meant to establish two different classes of sufficient connections between a defendant's forum contacts and a plaintiff's claim: arise out of (cause) and relate to (whatever that means).

Not so. The first time the Court used the phrase "arise out of or relate to" in *Helicopteros,* it expressly "decline[d] to reach the question [] *** whether the terms 'arising out of' and 'related to' describe different connections between a cause of action and a defendant's contacts with a forum." 466 U.S. at 415 n.10. The only member of the Court who suggested those words had different meanings was Justice Brennan, in dissent. *Id.* at 425 (Brennan, J., dissenting). And even he indicated that "related to" required *some* causal connection: In his view, the plaintiffs' wrongful-death suit "related to" the defendant's Texas contacts because "negotiations that took place in Texas *led to*" the helicopter flight that crashed, the helicopter "was purchased" by the defendant in Texas, and the allegedly negligent pilot, who was employed by the defendant, "was actually trained" in Texas. *Id.* at 426 (emphasis added).

*21 Moreover, *Helicopteros* appears to have drawn the words "related to" from *International Shoe,* and the *Shoe* Court made plain it regarded "arising from" and "related to" as two sides of the same coin. In describing what is now known as general jurisdiction, the Court held that although jurisdiction normally cannot be asserted over "suits *unrelated to* [instate] activity," a corporation's forum contacts may be sufficiently continuous and substantial to justify suits "*arising from* dealings entirely distinct from those activities." 326 U.S. at 318 (emphases added). In another doublet, the Court explained that although

jurisdiction "has never been doubted" where in-state activities "*give rise to* the liabilities sued on," isolated in-state activities do not, "[c]onversely," permit "causes of action *unconnected with* the activities there." *Id.* at 317 (emphases added). The Court thus treated these words as opposites or "[c]onverse[s]" - not distinct terms of art. *Id.* And at the end of the day, what mattered to the Court was that the company in question had been sued on "obligations *arising out of* the activities of its salesmen in Washington"; more nebulous notions of relatedness played no part in the analysis. *Id.* at 321 (emphasis added).

Since then, the Court has continued to treat "arise out of or relate to" as a single, causal requirement. As discussed, it has always examined simply whether a causal link is present. In no case has the Court suggested that "relate[s] to" embodies some separate way of establishing jurisdiction, nor has the Court applied that term on its own. Indeed, in several cases, the Court has omitted the words "relate to" from its formulation altogether. *See Walden,* 134 S. Ct. at 1122 (a suit "must arise out of [the defendant's] **\*22** contacts \*\*\* with the forum State"); *Keeton,* 465 U.S. at 780 (specific jurisdiction is warranted "when the cause of action arises out of the very activity being conducted, in part, in [the State]"); *Hanson,* 357 U.S. at 251 ("The cause of action in this case is not one that arises out of an act done or transaction consummated in the forum State.").

Ultimately, then, respondents' argument boils down to nothing more than the sense that because the Court has used two different words, each one must mean something different. But "this [wa]s an opinion, bear in mind, not a statute." *Nevada v. Hicks,* 533 U.S. 353, 372 (2001). Courts "frequently say two (or more) things when one will do or say two things as a way of emphasizing one point": "cease and desist," "arbitrary and capricious," "good faith and fair dealing." *TMW Enters., Inc. v. Fed. Ins. Co.,* 619 F.3d 574, 578 (6th Cir. 2010) (Sutton, J.); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 177 (2012) ("Doublets and triplets abound in legalese."). Absent a reason to think "arise out of" and "relate to" mean different things - and nothing in the Court's opinions suggests they do - that phrase is just another example.


### B. A Causal Requirement Makes Sense In Light Of The Specific Jurisdiction Inquiry As A Whole

Viewing the "arise out of or relate to" requirement within the context of the personal jurisdiction inquiry as a whole confirms that there must be a causal link between the defendant's forum contacts and the plaintiff's claim.

**\*23** As the Court has repeatedly explained, "[t]he inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden,* 134 S. Ct. at 1121 (internal quotation marks omitted). And as noted above, this relationship consists of two links: the connection between the defendant and the forum, and the connection between the forum and the litigation.

With respect to the first link - whether the defendant has purposefully availed himself of the forum - this Court has already imposed a causation requirement: The defendant must *cause* the contacts with the forum. As *Walden* explained, the defendant's relationship with the forum "must arise out of contacts that the 'defendant *himself creates* with the forum state.'" *Id.* at 1122 (second emphasis added) (quoting *Burger King,* 471 U.S. at 475). Those contacts cannot be the result of the " 'unilateral activity' of a plaintiff." *Id.* at 1123 (quoting *Burger King,* 471 U.S. at 475). Rather, "it is the *defendant's* conduct that must *form* the necessary connection." *Id.* at 1122 (emphases added).

The second link - between the forum and the litigation - should be viewed as simply a continuation of the same causal chain. This Court's decisions, after all, speak of "*the* relationship among the defendant, the forum, and the litigation." *Id.* at 1121 (emphasis added) (internal quotation marks omitted). And so just as the defendant's conduct must *cause* the contacts in the forum, those contacts must *cause* the plaintiff's claim - forming a single chain of causation running from the defendant through the forum to the **\*24** plaintiff. In *Walden's* words, the same conduct that "create[s] a substantial connection with the forum State" must also be "suit-related." *Id.* Put differently, the same conduct that "translate[s] into 'contacts' with a particular State" must also "give[] rise to th[e] litigation." *Id.* at 1125 n.9. For specific jurisdiction to exist, therefore, an unbroken chain of causation must unite the defendant, the forum, and the litigation.

There is also a more practical reason to think causation is required for both the first and the second links of the defendant-forum-litigation relationship. This Court has developed a robust body of law over a period of decades to clarify what sort of connection is necessary to establish the first link - between the defendant and the forum. It would make little sense to ignore that precedent and begin anew when defining the type of connection that must create the second link - between the forum and the litigation. The Court should simply apply the same well-developed standards that govern the purposeful availment inquiry

to the "arise out of or relate to" requirement, and insist on the same causal connection at each step.

Indeed, that is exactly the approach the Court has previously suggested. In *Burger King,* the Court described the link between the defendant and the forum by saying that "[j]urisdiction is proper *** where the [defendant's] contacts [with the forum] *proximately result* from actions by the defendant." 471 U.S. at 475 (emphasis added). A page apart, it described the link between the forum and the litigation using almost exactly the same words: A defendant cannot "escape having to account *** for consequences **25 that *arise proximately* from such activities." *Id.* at 474 (emphasis added). The Court thus viewed the two requirements as mirror images of one another, connected through a single causal chain: The defendant's conduct must be the proximate cause of his contacts with the State, which in turn must be a proximate cause of the litigation. The relationship among the defendant, the forum, and the litigation requires a causal connection from start to finish.

### C. The Purposes Of Specific Jurisdiction Compel A Causal Requirement

A causal standard also serves the purposes of specific jurisdiction. The Court has identified three such purposes: to limit States to their proper roles in our federal system; to enable defendants to predict where they may be haled into court; and, ultimately, to satisfy "traditional notions of fair play and substantial justice." *International Shoe,* 326 U.S. at 316 (internal quotation marks omitted). Each of these rationales supports requiring a causal connection between contacts and claim, and each would be thwarted by a non-causal standard.

1. *Federalism.* The due process limitation on personal jurisdiction "acts to ensure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *World-Wide Volkswagen,* 444 U.S. at 292. The Framers "intended that the States retain *** the sovereign power to try causes in their courts." *Id.* at 293. But "[t]he sovereignty of each State, in turn, implied a limitation on the sovereignty of all of its sister States." *Id.*

To keep each State within the "territorial limitations on [its] power," specific jurisdiction establishes **26 a principle of reciprocity. *Id.* at 294 (quoting *Hanson,* 357 U.S. at 251). When a defendant "purposefully avails itself of the privilege of conducting activities within the forum State," it "invok[es] the benefits and protections" of that State's laws. *Hanson,* 357 U.S. at 253. Those benefits in turn "give rise to obligations"; and a State may "enforce the obligations which" the defendant thereby "incurred." *International Shoe,* 326 U.S. at 319-320. As the *Nicastro* plurality summarized, a defendant "submits to the judicial power of an otherwise foreign sovereign to the extent" - and only to the extent - "that power is exercised in connection with the defendant's activities touching on the State." 564 U.S. at 881.

A causal test for the "arise out of or relate to" inquiry preserves this principle of reciprocity. It ensures that a State may hale a defendant into court to enforce those obligations that the defendant "incurred" by enjoying the privileges and benefits of the forum's laws. *International Shoe,* 326 U.S. at 320. Thus, International Shoe could be sued in Washington for obligations that it incurred by exercising the privilege of conducting sales and other business there. And Bristol-Myers, by the same token, may be sued in California for injuries that came about because it exercised the privilege of marketing, promoting, and selling Plavix in California.

A non-causal test, in contrast, would hopelessly confuse this reciprocity of privileges and obligations. It would allow a State to hale a defendant into court to enforce obligations that would have been "incurred" *regardless* of whether the defendant enjoyed the privileges and benefits of the forum's laws. In **27 this case, for instance, the California Supreme Court permitted respondents to sue Bristol-Myers in California on claims that arose because Bristol-Myers enjoyed the benefits of developing Plavix in New York or New Jersey, and of marketing and selling it in Ohio and Texas and elsewhere. At no point in that chain of events leading up to respondents' alleged injuries did Bristol-Myers exercise the privilege of doing business in California or enjoy the benefits of California's laws. Bristol-Myers thus did not "submit[] to the judicial power of" California with respect to those activities, *Nicastro,* 564 U.S. at 881 (plurality opinion), and California has no authority to "enforce the obligations" incurred by them, *International Shoe,* 326 U.S. at 320.

If it were otherwise, States could and regularly would "tread on the domain" of their "sister State[s]." *Nicastro,* 564 U.S. at 899 (Ginsburg, J., dissenting). National companies frequently engage in parallel conduct in multiple States - selling a product in one State, for example, that looks just the same as a product it sells in 5 or 10 or 49 others. If one State could exercise jurisdiction over conduct that takes place in another for no more reason than that, then the "territorial limitations on [state] power" would

be eroded, and interstate conflict would be frequent. *World-Wide Volkswagen, 444 U.S. at 294* (internal quotation marks omitted). A causal test prevents this outcome by cleanly allocating each State's authority, and ensuring that one sovereign does not reach out and adjudicate claims that properly belong to another.

2. *Predictability.* The Due Process Clause entitles potential defendants to "fair warning that a particular **\*28** activity may subject [them] to the jurisdiction of a foreign sovereign." *Burger King, 471 U.S. at 472* (internal quotation marks omitted). A second aim of the law of personal jurisdiction is thus to ensure "predictability." *World-Wide Volkswagen, 444 U.S. at 297*. This enables defendants to "structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit," and to take actions to "alleviate the risk of burdensome litigation" - including by "procuring insurance, passing the expected costs on to customers," and, if necessary, "severing [their] connection with [a] State" altogether. *Id.*

A causal test provides prospective defendants the notice to which due process entitles them and is administrable by courts. It informs businesses that, upon purposefully setting foot in a State, they will be subject to jurisdiction there for any consequences of their actions. *See infra* pp. 37-46 (further arguing that defendants should be subject to jurisdiction only for the *foreseeable* consequences of their actions). Defendants may thus procure insurance for their actions in the State, and expand or limit their activities there with full knowledge as to the jurisdictional consequences. And courts likewise have a clear jurisdictional standard that "ensur[es] the 'orderly administration of the laws.' " *World-Wide Volkswagen, 444 U.S. at 297*; *see also Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010)* (noting that the Court has a preference for "[s]imple jurisdictional rules" that "promote greater predictability").

A non-causal test offers no similar clarity to defendants or courts. It does not limit a State's jurisdiction to the consequences of activities conducted in **\*29** the State. Nor does it provide any straightforward way of determining what out-of-state activity may serve as a predicate for jurisdiction. No company could predict what conduct will be deemed sufficiently "related" to its in-state conduct to give rise to jurisdiction. *See Maracich v. Spears, 133 S. Ct. 2191, 2200 (2013)* (explaining that gleaning meaningful guidance from the words "related to" is "a project doomed to failure, since, as many a curbstone philosopher has observed, everything is related to everything else"). And defendants might as well throw up their hands in trying to guess how a court will apply a "sliding scale" that balances the "intensity" of a defendant's contacts against their "connection" with the litigation. Pet. App. 22a, 32a; *see also* Charles W. "Rocky" Rhodes & Cassandra Burke Robertson, *Toward a New Equilibrium in Personal Jurisdiction, 48 U.C. Davis L. Rev. 207, 235 (2014)* (concluding that the "sliding scale" test fails to offer "predictive guidance").

Unpredictable, all-things-considered tests of this kind are undesirable in any jurisdictional context. *See, e.g., Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning, 136 S. Ct. 1562, 1574-1575 (2016)*; *Direct Mktg. Ass'n v. Brohl, 135 S. Ct. 1124, 1133 (2015)*. But they are particularly harmful in the context of personal jurisdiction, where predictability is paramount. Knowing where one may be subject to suit matters a great deal. It determines what choice-of-law framework governs, *Day & Zimmerman, Inc. v. Challoner, 423 U.S. 3 (1975)* (per curiam), and which statute of limitations will apply, *Sun Oil Co. v. Wortman, 486 U.S. 717 (1988)*. It affects matters as varied as the composition of the jury, the rules of discovery, and the law of fee-shifting. Allan R. Stein, **\*30** *Frontiers of Jurisdiction: From Isolation to Connectedness, 2001 U. Chi. Legal F. 373, 385*. Businesses - like all defendants - need to be able to anticipate such fundamental determinants of liability in order to make intelligent investment, insurance, and business decisions. A non-causal test robs prospective litigants of this predictability, and impairs the aims of specific jurisdiction doctrine as a result.

3. *Fairness.* Finally, the Court has often stressed that jurisdictional rules must accord with "traditional notions of fair play and substantial justice." *World-Wide Volkswagen, 444 U.S. at 292* (quoting *International Shoe, 320 U.S. at 316*). Because the rules governing personal jurisdiction "give specific content" to these traditional notions, *Goodyear, 564 U.S. at 923*, the Court has often considered what is fair in delineating how far jurisdictional rules extend, *see, e.g., Daimler, 134 S. Ct. at 763*; *Nicastro, 564 U.S. at 880* (plurality opinion); *Burnham v. Superior Court, 495 U.S. 604, 619, 621-622 (1990)* (plurality opinion). And in every respect - for defendants, States, and plaintiffs - a causal test is fairer than the alternative.

First, compelling businesses and individuals to defend suits in a forum where *none* of the activities underlying the claims occurred would subject them to considerable, and unwarranted, litigation burdens. Defendants cannot easily procure critical evidence or interview relevant witnesses located in other States. If out-of-state witnesses refuse to testify at trial, courts typically lack the power to compel them to do so. *See, e.g., Cal. Civ. Proc. Code §1989*. And although defense attorneys can seek to depose out-of-state witnesses and present their deposition testimony **\*31** at trial, relying on depositions in this manner is

notoriously ineffective. *See Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 511 (1947) (noting that "fix[ing] the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition[] *** create[s] a condition not satisfactory to court, jury or most litigants"); GlaxoSmithKline Cert. *Amicus* Br. 11-12 (GSK Br.); Pharmaceutical Research and Manufacturers of America Cert. *Amicus* Br. 11-12.

Second, a State has little legitimate interest in adjudicating a dispute that has no causal connection with conduct that took place in or was directed at its territory. As noted above, the defendant in such a suit has not, by definition, incurred any obligations the State may reasonably seek to enforce. It is unlikely that the State's own residents are involved in such a suit. Surely other States - where the defendant conducted the relevant business, say, or the plaintiffs were injured - have a far greater interest in seeing the suit adjudicated.

Third, plaintiffs, too, lack any legitimate interest in bringing suit in a forum where none of the conduct underlying the claim occurred. If the plaintiff did not receive, use, or suffer injuries from a product in the forum, it is quite unlikely that State is the most convenient place for him to sue. Rather, the rationale for suing in a forum with no causal link to the plaintiff's claim is more likely tactical: an attempt, usually at the insistence of a plaintiff's attorney, to pick a forum perceived to be particularly plaintiff-friendly. *See* U.S. Chamber of Commerce Cert. *Amicus* Br. 18 (describing how "plaintiffs' counsel [in pharmaceutical cases] often seek to aggregate claims **\*32** from plaintiffs across the country in particular 'magnet jurisdictions' "); GSK Br. 3-4 (describing how plaintiffs' attorneys try to bring mass tort actions in States like Illinois and Missouri, where the jurisdictional and discovery rules are deemed to be plaintiff-friendly and juries tend to award larger verdicts); Pet. 32 (citing a survey of products liability suits filed in San Francisco County and Los Angeles, which found that 67 percent of the complaints did not have a California resident in the caption). Due process has no interest in encouraging forum shopping of this kind.

It makes no difference that a State may be adjudicating claims of a similar subject matter brought by its own residents. Litigation of such claims does not change the fact that for the non-resident plaintiffs - whose claims did not arise within the State, *see supra* note 1 - the court will need to oversee the collection and presentation of trial evidence gathered from far-away forums, undertake a choice-of-law analysis with respect to each forum's laws, and potentially apply the laws of those other forums to all or parts of each non-resident plaintiff's claims. There are multiple ways to promote efficiency and judicial economy in mass tort litigation without sidelining specific jurisdiction principles, and without imposing these sorts of demands on trial courts. *See infra* pp. 50-52.

### D. The Sliding Scale Approach Impermissibly Dispenses With A Causal Link, Blurring The Line Between General And Specific Jurisdiction

Notwithstanding the critical importance this Court's precedents assign to identifying a causal link **\*33** between the defendant's forum contacts and the plaintiff's claim, the California Supreme Court has adopted a test that deems the existence of such a link optional. But the court adduced no valid reason for dispensing with this fundamental requirement for establishing specific jurisdiction. And its decision to do so blurs specific jurisdiction with general - an approach flatly foreclosed by this Court's precedent.

The California court calls its test a "sliding scale." Pet. App. 32a. As the court has explained, it approaches the question whether the requisite link between the forum and the litigation exists by treating "the intensity of [a defendant's] forum contacts" and "the connection of the [plaintiff's] claim to those contacts" as "inversely related." *Id.* at 22a (internal quotation marks omitted). If a defendant's forum contacts are sufficiently "wide ranging," then the plaintiff's claim "need not arise directly from" those contacts at all; indeed, "the defendant's activities in the forum state need not be either the proximate cause or the 'but for' cause of the plaintiff's injuries." *Id.* (internal quotation marks omitted). Here, that meant that because Bristol-Myers's contacts with California were "extensive" - *i.e.,* it marketed and sold Plavix to other people and researched other drugs there - Bristol-Myers could, in the California Supreme Court's view, be subjected to specific jurisdiction "based on a less direct connection between [its] forum activities and plaintiffs' claims than might otherwise be required." *Id.* at 32a.

That cannot be. Courts cannot compensate for the lack of a causal link between the forum and the litigation by pointing to a stronger link between the defendant and the forum. *Each* component of "the **\*34** relationship among the defendant, the forum, and the litigation" is essential in establishing "case-linked" jurisdiction. *Walden,* 134 S. Ct. at 1121 & n.6 (internal quotation marks omitted). That is what distinguishes specific jurisdiction from general: The very definition of general jurisdiction is that

it enables courts to assert all-purpose jurisdiction over claims with no cognizable relationship to the defendant's in-state conduct, based on the defendant's conduct in the State being sufficiently "intens[e]." Pet. App. 22a (internal quotation marks omitted). By borrowing that same approach to determining whether *specific* jurisdiction is present, California has collapsed the two categories into "a sort of jurisdictional stew." *O'Connor v. Sandy Lane Hotel Co.,* 496 F.3d 312, 321 (3d Cir. 2007) (internal quotation marks omitted).

*Goodyear* makes clear that such a move is impermissible. In that case, several individuals sued a foreign company in North Carolina after allegedly defective tires caused a bus accident in France. 564 U.S. at 918. Although the tires were manufactured and sold abroad, and the accident occurred abroad, the North Carolina Court of Appeals purported to exercise general jurisdiction over the defendant because the defendant also sold tires into North Carolina through "the stream of commerce." *Id.* at 919-920. This Court unanimously reversed. "The North Carolina court's stream-of-commerce analysis," it explained, "elided the essential difference between case-specific and all-purpose (general) jurisdiction." *Id.* at 927. "Flow of a manufacturer's products into the forum *** may bolster an affiliation germane to *specific* jurisdiction." *Id.* But unless the defendant's forum activity is so continuous and **\*35** systematic as to render the company "at home," *id.* at 929, it is "not enough to support the demand that the corporation be amenable to suits *unrelated* to that activity," *id.* at 927 (emphasis added) (internal quotation marks omitted). By "[c]onfusing or blending general and specific jurisdictional inquiries," the Court held, North Carolina had offered an " inadequate basis for the exercise" of jurisdiction. *Id.* at 919-920.

California's highest court, like North Carolina's, has "[c]onfus[ed]" and "blend[ed]" the jurisdictional inquiries. Its sliding scale test decides whether a defendant is subject to specific jurisdiction on a plaintiff's claim by weighing "the *intensity* of [the defendant's] forum contacts" (a consideration relevant to general jurisdiction) against "the *connection* of the claim to those contacts" (a consideration relevant to specific jurisdiction). Pet. App. 22a. By borrowing an "affiliation germane to" one form of jurisdiction and using it to "bolster" the other, California has "elided the essential difference" between these two tests. *Goodyear,* 564 U.S. at 927.

Indeed, the sliding scale goes further than that: It contravenes this Court's express, recent guidance as to when specific jurisdiction is inappropriate. In *Daimler,* the Court explained that "if a [car] accident took place in Poland and injured Polish plaintiffs sued [the car manufacturer] in California court, the question would be one of general jurisdiction." 134 S. Ct. at 754 n.5. But under the sliding scale, California courts could exercise *specific* jurisdiction from that circumstance if the defendant's contacts with California were "substantial" and it "enjoyed sizable revenues [there] from the sales of *** the very **\*36** product" that caused the injury. Pet. App. 32a. Likewise, in *Goodyear,* the Court crisply held that "[b]ecause the episode-in-suit, the bus accident, occurred in France, and the tire alleged to have caused the accident was manufactured and sold abroad, North Carolina courts lacked specific jurisdiction to adjudicate the controversy." 564 U.S. at 919. Not so under the sliding scale: If the defendant sold similar tires in North Carolina, and otherwise had "wide ranging" contacts there, then North Carolina *would* have specific jurisdiction. Pet. App. 22a (internal quotation marks omitted).[5]

Denying that the sliding scale blurs specific and general jurisdiction, the California Supreme Court insisted that it was not subjecting Bristol-Myers to *all* possible claims in California. *Id.* at 34a-35a. But the sliding scale results in Bristol-Myers being subject to specific jurisdiction in California on all defect claims for any of its products sold nationally. It also means that Bristol-Myers would be subject to specific jurisdiction in California on a disgruntled Maine employee's wrongful termination claim, if the employee alleged that Bristol-Myers also employed workers in California and had a uniform human-resources policy. *See id.* at 77a (dissent proposing a similar hypothetical). So too a Bristol-Myers landlord **\*37** in Nebraska could sue in California for back rent by alleging that Bristol-Myers also leased facilities in California and used a centralized Bristol-Myers accounts-payable system. *See id.* The sliding scale is thus so close to general jurisdiction as to be functionally indistinguishable for national consumer companies like Bristol-Myers. *See id.*

The California Supreme Court cannot flout the Court's precedents in this manner. Like all courts, it is obliged to follow the straightforward inquiry this Court has prescribed since *International Shoe:* Specific jurisdiction is proper if the plaintiff's claim "aris[es] out of or relate [s] to the defendant's contacts with the forum." *Daimler,* 134 S. Ct. at 754 (quoting *Helicopteros,* 466 U.S. at 414 n.8). Contrary to the decision below, that requirement does not expand and contract from case to case. Rather, as this Court has made clear for decades, it means that for specific jurisdiction to exist, there must be *some* causal connection between the defendant's forum contacts and the plaintiff's suit.

**II. SPECIFIC JURISDICTION REQUIRES THAT A DEFENDANT'S FORUM CONTACTS BE A PROXIMATE CAUSE OF THE PLAINTIFF'S CLAIM**

Given that the relationship between the forum and the litigation requires some causal connection, the question is whether it requires causation of a particular kind. As the petition for certiorari pointed out, lower courts are divided over whether but-for causation or proximate causation should be the standard. *See* Pet. 11-14. To resolve that split, this Court should hold that the defendant's forum contacts must be a *proximate* cause of the litigation. That is, the **\*38** defendant's forum contacts must bear a direct relation to the litigation and be of such a nature that the defendant could reasonably foresee being sued in the forum on the plaintiff's claims. *See Paroline v. United States,* 134 S. Ct. 1710, 1719 (2014) (describing proximate cause in terms of "direct[ness]" and "foreseeability"). Indeed, the same authorities and considerations that establish that there must be *some* causal connection also establish that the standard should be *proximate* causation.

1. A proximate causation requirement comes straight from this Court's decision in *Burger King.* There, the Court addressed the necessary relationship among the defendant, the forum, and the litigation for purposes of specific jurisdiction. 471 U.S. at 473-474. And it stated that "where individuals purposefully derive benefit from their interstate activities, it may well be unfair to allow them to escape having to account in other States for consequences that arise *proximately* from such activities." *Id.* (emphasis added) (internal quotation marks and citation omitted). *Burger King* thus described the requisite link between a defendant's forum contacts and the litigation in terms of proximate cause. *See Beydoun v. Wataniya Rests. Holding, Q.S.C.,* 768 F.3d 499, 507-508 (6th Cir. 2014) (locating a proximate cause requirement in *Burger King*); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 305 F.3d 120, 128 (2d Cir. 2002) (same). The Court then proceeded to invoke the concept of "foreseeability," *Burger King,* 471 U.S. at 474 - a concept closely associated with proximate cause. *See Paroline,* 134 S. Ct. at 1719 ("Proximate cause is often explicated in terms of foreseeability or the scope of the risk created by the predicate conduct."). As the Court **\*39** explained, "the defendant's conduct and connection with the forum State" must be such that the defendant "should *reasonably anticipate* being haled into court" on the plaintiff's claims. *Burger King,* 471 U.S. at 474 (emphasis added) (quoting *World-Wide Volkswagen,* 444 U.S. at 297).

Consistent with a proximate causation requirement, specific jurisdiction did *not* exist in *Kulko,* where the defendant's forum contacts were merely a but-for cause of the litigation. The plaintiff in that case brought an action in California against the defendant (a New York resident), seeking to modify their marital separation agreement and increase the defendant's child-support obligations. 436 U.S. at 86-88. The couple had married years earlier during a three-day stopover in California, but they had never resided there together, and their separation agreement was drawn up in New York. *Id.* at 86-87. The Court held that the California court lacked specific jurisdiction over the defendant. *Id.* at 90. The defendant's prior contact with the forum State - getting married there - was a but-for cause of the plaintiff's suit: Had there been no marriage, there would have been no separation agreement to seek to modify. But whatever but-for causal connection it may have had, the fact of the parties' California marriage, "by itself," could not support the California court's exercise of specific jurisdiction. *Id.* at 93.

*Rush v. Savchuk,* 444 U.S. 320 (1980), arguably involved a but-for causal link as well, and the Court likewise held that specific jurisdiction over the defendant was lacking. The question there was whether a Minnesota court could exercise specific jurisdiction over an Indiana resident in a negligence **\*40** action for damages following a car accident in Indiana. *Id.* at 322-324. The defendant's insurance company did business in Minnesota, and his policy obligated the insurer to indemnify the defendant for liability claims nationwide. In a legal sense, the indemnification "debt" his insurer owed him was "present" in Minnesota, *id.* at 328, and but for having purchased the insurance policy, the defendant might not have been driving and in the accident. *See World-Wide Volkswagen,* 444 U.S. at 304 (Brennan, J., dissenting) (noting that insurance is frequently a prerequisite to driving on public roads); Lea Brilmayer, *Related Contacts and Personal Jurisdiction,* 101 Harv. L. Rev. 1444, 1463 (1988) (similar). But the Court did not deem this a "significant" enough connection between the forum and the litigation to support the assertion of specific jurisdiction. *Rush,* 444 U.S. at 329. The insurance policy was "not the subject matter of the case, \*\*\* nor [was] it related to the operative facts of the negligence action." *Id.* It may have been part of the causal chain leading up to the accident and then the plaintiff's suit, but its "presence" in Minnesota had no "jurisdictional significance" for the Court - a conclusion in keeping with the notion that a but-for causal connection is not enough. *Id.* at 329-330.

2. Requiring that the defendant's forum contacts be a proximate cause of the litigation also harmonizes the two links in the specific jurisdiction relationship.

In a number of cases, this Court has analyzed what is required to establish the *first* link in the specific jurisdiction relationship - the link between the defendant and the forum. In discussing what satisfies **\*41** the purposeful availment requirement, the

Court has long held that the only forum contacts that count are those that "proximately result" from the defendant's actions. *Burger King,* 471 U.S. at 475. A defendant's actions might be the source of many contacts in the forum. But those contacts that are merely a "random, fortuitous, or attenuated" consequence of the defendant's actions cannot satisfy the purposeful availment requirement. *Id.* (internal quotation marks omitted); *see also Walden,* 134 S. Ct. at 1123 (same). The relationship between the defendant and the forum must be one of proximate causation: The defendant himself must proximately cause the contacts in question.

*World-Wide Volkswagen* illustrates the point. There, two New York residents purchased an Audi from a car dealer in New York. While on their way to Arizona, they got into a car accident in Oklahoma, and sued the dealer and its wholesaler in Oklahoma state court. 444 U.S. at 288. This Court held that the defendants could not be sued there. *Id.* at 295. The defendants' only connection with Oklahoma was "the fortuitous circumstance that a single Audi automobile, sold in New York to New York residents, happened to suffer an accident while passing through Oklahoma." *Id.* And such a circumstance - attributable to the "unilateral activity" of the purchasers, rather than to the defendants' conduct - could not justify the exercise of specific jurisdiction. *Id.* at 298 (quoting *Hanson,* 357 U.S. at 253); *see also id.* at 298-299 (holding that even if "the purchase of automobiles in New York *** would not occur *but for* the fact that the automobiles are capable of use in distant States like Oklahoma," that was "far too **\*42** attenuated a contact to justify" Oklahoma's exercise of personal jurisdiction over the defendants).

The same standard used to assess whether there is a constitutionally sufficient link between the defendant and the forum should also govern whether there is a constitutionally sufficient link between the forum and the litigation. Just as the former turns on proximate cause, so too should the latter: Specific jurisdiction should require that the litigation proximately result from the defendant's forum contacts. After all, a defendant should be able to "reasonably anticipate being haled into court" to defend against the plaintiff's claims in an out-of-state jurisdiction. *Burger King,* 471 U.S. at 474 (quoting *World-Wide Volkswagen,* 444 U.S. at 297). And unless *both* links are bounded by principles of proximate cause, a defendant could find himself litigating claims in an out-of-state forum that are merely the "random, fortuitous, or attenuated" consequence of his contacts with the forum. *Id.* at 475 (internal quotation marks omitted). Imposing a proximate cause requirement on both links of the specific jurisdiction relationship would ensure that there is nothing "random" about being sued in a particular jurisdiction: Just as defendants would know that the only forum contacts that count are those that proximately result from their actions, they would know that the only suits that could be brought are those that proximately result from their contacts.

3. Defining "arise out of or relate to" in terms of proximate cause also promotes the principles that underlie specific jurisdiction - federalism, predictability, and fairness.

**\*43** As to federalism, a proximate cause standard ensures that States do not "assert jurisdiction in an inappropriate case" by foreclosing jurisdiction when the defendant's forum contacts bear only an attenuated connection to the litigation. *Nicastro,* 564 U.S. at 884 (plurality opinion). "In a philosophical sense, *** the causes of an event go back to the dawn of human events, and beyond." *Holmes v. Sec. Inv'r Prot. Corp.,* 503 U.S. 258, 266 n.10 (1992) (internal quotation marks omitted). Proximate causation cuts off the causal chain at a point where a cause is "too remote." *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 134 S. Ct. 1377, 1390 (2014). In the personal jurisdiction context, that would be where a defendant's forum contacts lack a "direct relation" to the plaintiff's suit. *Holmes,* 503 U.S. at 268. This aligns with personal jurisdiction's federalism rationale: If the "obligations" incurred in a State bear only an attenuated connection to the suit, the State's sovereign interest in exercising adjudicatory authority is diminished. *Compare McGee,* 355 U.S. at 223 ("suit was based on a contract" that was solicited in California, "delivered in California," and entered into with "a resident of that State," and so "California has a manifest interest" in holding the insurer "legally accountable" for refusing to pay claims), *and International Shoe,* 326 U.S. at 319-320 (States have an interest in enforcing "obligations" that "ar[i]se out of those very activities" conducted in the forum), *with Hanson,* 357 U.S. at 252 (State lacked a meaningful interest because "this suit cannot be said to be one to enforce an obligation that arose from a privilege the defendant exercised in Florida"), *and Kulko,* 436 U.S. at 97, 99-101 (California was not the "proper forum for adjudication" when suit "involve[d] an agreement **\*44** that was entered into with virtually no connection with the forum State").

As to predictability, a proximate cause standard would foreclose specific jurisdiction when the plaintiff's suit was not a foreseeable consequence of the defendant's in-forum contacts. A defendant would be "answerable" for "the natural, ordinary and reasonable consequences" of his in-state conduct, *Anza v. Ideal Steel Supply Corp.,* 547 U.S. 451, 470 (2006) (internal quotation marks omitted), but not for "every conceivable harm that can be traced" to those forum contacts, *Associated Gen.*

*Contractors of Cal., Inc. v. Cal. State Council of Carpenters,* 459 U.S. 519, 536 (1983). This would enable defendants to "reasonably anticipate," from their own "conduct and connection with the forum State," when they might be "haled into court there." *World-Wide Volkswagen,* 444 U.S. at 297. And it would allow them to "structure their primary conduct with some minimum assurance" as to the jurisdictional consequences. *Id.*

Proximate cause further promotes predictability because it is an administrable rule that draws on an "extensive body" of existing law. *Exxon Co., U.S.A. v. Sofec, Inc.,* 517 U.S. 830, 839 (1996); *accord Hertz,* 559 U.S. at 94. "Both judges and litigants are familiar with" the concept of proximate cause, and they can consult the large "existing body of precedent" "whenever borderline cases crop up." *Merrill Lynch,* 136 S. Ct. at 1574-1575. Adopting a proximate cause standard would provide defendants an established guide for their conduct together with a body of case law applying that standard.

Finally, and for similar reasons, proximate cause promotes fairness. By requiring that the plaintiff's **\*45** suit be a direct and foreseeable result of the defendant's forum contacts, proximate cause ensures that jurisdiction is consistent with "fair play and substantial justice." *International Shoe,* 326 U.S. at 320. The burden on the defendant would not be "undue," given his in-state contacts; the plaintiff's need for an "effective" forum would be met, given the close relationship between the forum and the litigation; and the "interest[s] of the several States" would be respected, because the State hearing the suit would have a prevailing interest in it. *World-Wide Volkswagen,* 444 U.S. at 292.

By contrast, a but-for-only approach would allow specific jurisdiction to be asserted based on contacts that, although somewhere in the causal chain, have only the loosest connection to the cause of action. Take a couple of examples. Suppose a motorist traveling from New York to Massachusetts hits a pedestrian in Massachusetts, and the pedestrian sues in Connecticut on the theory that but for the motorist's use of Connecticut's roads, he never would have arrived in Massachusetts. Or suppose a lawyer commits malpractice in Virginia, and the client sues in Massachusetts, arguing that if the lawyer had not gone to law school in Cambridge, he never would have become an attorney. Under a but-for-only approach, the "arise out of or relate to" requirement would be satisfied in each of these cases, even though the defendant's contacts with the forum have only the most attenuated connection with the plaintiff's claims. *See* Brilmayer, *supra,* at 1445.

Many courts have accordingly recognized that such a capacious view of what establishes the necessary link between the forum and the litigation has "no **\*46** limiting principle; it literally embraces every event that hindsight can logically identify in the causative chain." *Nowak v. Tak How Invs., Ltd.,* 94 F.3d 708, 715 (1st Cir. 1996); *see also uBID, Inc. v. GoDaddy Grp., Inc.,* 623 F.3d 421, 430 (7th Cir. 2010) (but-for causation by itself is "vastly overinclusive"). When faced with cases presenting such attenuated connections, courts have rightly found that but-for causation would cast too wide a net. *See, e.g., Beydoun,* 768 F.3d at 507-508 (rejecting plaintiff's argument for specific jurisdiction in Michigan over his former employer, a Qatari company, when he said that "but for" the company's solicitation of him in Michigan, he never would have been employed there and experienced grievances in Qatar); *Harlow v. Children's Hosp.,* 432 F.3d 50, 53-63 (1st Cir. 2005) (rejecting plaintiff's argument for specific jurisdiction in Maine over Boston Children's Hospital on the theory that but for the hospital's sending of informational packets to pediatricians in Maine, she never would have been referred for treatment there and experienced injuries). As these cases demonstrate, a standard requiring something less than proximate cause stretches personal jurisdiction too far, untethering it from its underlying principles.

### III. THERE IS NO CAUSAL CONNECTION BETWEEN BRISTOL-MYERS'S CALIFORNIA CONTACTS AND RESPONDENTS' CLAIMS IN THIS CASE

Under any causation standard - but-for or proximate - the California Supreme Court's decision should be reversed. A California court may not assert specific jurisdiction over Bristol-Myers on respondents' claims.

**\*47** 1. Respondents do not dispute that their claims would be exactly the same if Bristol-Myers had no contacts with California at all. *See* Pet. App. 29a. That fact alone is dispositive. It means that there is no causal link between Bristol-Myers's California contacts and respondents' claims. Accordingly, those claims did not arise out of or relate to Bristol-Myers's California contacts.

To appreciate the absence of any causal link, just trace the alleged chain of causation from BristolMyers to any of respondents' asserted injuries. The chain starts in New York or New Jersey, where Bristol-Myers performed or directed the development, manufacture, labeling, and marketing of Plavix. J.A. 85. Those were also the States where Bristol-Myers worked on obtaining

regulatory approval for the drug. *Id.* The chain of causation leads from New York or New Jersey to where Plavix was prescribed, dispensed, or ingested by a respondent - say, Ohio or Texas (or one of the dozens of other States where respondents reside). Pet. App. 2a-3a; J.A. 25-41. And the chain ends where the respondent allegedly suffered injury - again, Ohio or Texas (or the other States where they live). Pet. App. 4a, 33a-34a. Thus, the chain of causation running from Bristol-Myers to respondents' alleged injuries never passes through California. And given the lack of any causal link between anything that happened in California and respondents' claims, the Due Process Clause prohibits a California court from asserting specific jurisdiction.

2. In reaching a contrary conclusion, the California Supreme Court pointed to two sets of activities conducted by Bristol-Myers in California - its marketing **\*48** and selling of Plavix to *other* individuals (*i.e.,* not respondents), and its research and development of *other* products (*i.e.,* not Plavix). *Id.* at 28a-29a. Not even the California Supreme Court, however, was able to identify any causal link between those activities and respondents' claims. That is because none exists.

Bristol-Myers may have marketed, promoted, and sold Plavix as part of a "nationwide course of conduct directed out of [its] New York headquarters and New Jersey operations center." *Id.* at 29a-30a. And Bristol-Myers may have "implemented" that "nationwide" strategy in various States across the country - including California, Ohio, and Texas. *Id.* But the fact remains that nothing that Bristol-Myers did *in California* bears any causal relationship to respondents' claims; indeed, if Bristol-Myers had never marketed, promoted, or sold a single tablet of Plavix in California, respondents' alleged injuries would be 100 percent the same. Respondents' claims arise instead out of what Bristol-Myers allegedly did *in other States.* An allegation that Bristol-Myers's actions in other States were part of a "nationwide course of conduct" might suggest that they were *similar* or *parallel* to its actions in California. *Id.* But it does not establish that Bristol-Myers's contacts with California *caused* respondents' injuries. *Cf. Rush,* 444 U.S. at 330 (finding no "contact" of "jurisdictional significance" in Minnesota, despite the fact that the defendant did business in "all 50 States and the District of Columbia").

Bristol-Myers's research and development of *other* drugs in California also bears no causal link to respondents' claims. Indeed, even the California **\*49** Supreme Court accepted that respondents' "claims do not arise out of [Bristol-Myers's] research conduct in this state." Pet. App. 29a. It is undisputed, after all, that the research and development of Plavix took place in New York and New Jersey. *Id.* at 5a; J.A. 85.

3. Respondents suggest that none of this matters because the California court can exercise specific jurisdiction over (1) respondents' claims against a *different* defendant and (2) claims against Bristol-Myers brought by *different* plaintiffs. Br. in Opp. 910, 13-14. Thus, according to respondents, it would be "efficient[]" and not "unduly burden[some]" to force Bristol-Myers to defend against respondents' claims in the same litigation. *Id.* at 10, 14.

But the fact that the court has personal jurisdiction over a different defendant - McKesson - is simply irrelevant. This Court has held that it is "plainly unconstitutional" for a court to "assert[] jurisdiction over [one defendant] based solely on the activities of [another defendant]." *Rush,* 444 U.S. at 332. Specific jurisdiction must rest on contacts with the forum created by the "defendant *himself.*" *Walden,* 134 S. Ct. at 1122 (quoting *Burger King,* 471 U.S. at 475). "The requirements of *International Shoe* \*\*\* must be met as to *each* defendant over whom a state court exercises jurisdiction." *Rush,* 444 U.S. at 332 (emphasis added).

Nor does the presence of other plaintiffs, asserting their own individual claims, make any difference. This Court has held that specific jurisdiction cannot be based on a plaintiff's "unilateral" decisions, such as a decision to travel or move to a State. *Walden,* 134 S. Ct. at 1122 (internal quotation marks omitted). **\*50** A plaintiff's "unilateral" decision to file suit in a State alongside other plaintiffs is no exception. If it were otherwise, a defendant could be haled into state court to defend against thousands of claims brought by thousands of plaintiffs, so long as just one of those claims arose out of the defendant's forum contacts. That can hardly be described as due process.

In any event, if respondents were truly interested in efficiency and judicial economy, it was well within their power to achieve those objectives without undermining principles of personal jurisdiction. For instance, respondents could have filed their exact same complaints against Bristol-Myers in New York or Delaware, where Bristol-Myers is subject to general jurisdiction. Numerous plaintiffs have done just that. *See, e.g.,* Administrative Order, First Judicial District, N.Y. Supreme Court (Feb. 1, 2012) (coordinating more than 40 Plavix lawsuits filed in New York state courts during the prior year before one New York state court judge).[6] Alternatively, respondents could have filed their claims in New York or New Jersey, where Bristol-Myers performed or directed the development of the drug and its marketing strategy. J.A. 85. Or the 92 respondents from Texas could

have filed a complaint against Bristol-Myers in Texas state court; the 71 respondents from Ohio could have done the same in Ohio; and so on. Pet. App. 3a.[7]

**\*51** Respondents also could have sued Bristol-Myers in federal court in the States just mentioned, and participated in the process that Congress designed to handle disputes of this kind: federal multi-district litigation (MDL). In a federal MDL, "civil actions involving one or more common questions of fact" in different districts "may be transferred to any district for coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(a). Common questions are addressed together at the pretrial stage, while individualized factual questions - like who prescribed each plaintiff Plavix and how the drug was marketed to that physician - are "remanded" for trial to the districts from which the actions were transferred. *Id.* This procedure has been used successfully countless times before. In fact, a federal MDL involving materially identical Plavix claims has been proceeding in the District of New Jersey since 2013. *See In re Plavix Mktg., Sales Practices & Prods. Liab. Litig.,* 923 F. Supp. 2d 1376 (J.P.M.L. 2013).

**\*52** For reasons of their own, respondents decided not to do any of these things. Instead, they filed their complaints in California, seeking to leverage Bristol-Myers's in-state contacts involving *other* plaintiffs and *other* products into a heretofore unheard-of form of specific jurisdiction. This Court held decades ago that the Due Process Clause prohibits assertions of specific jurisdiction "unconnected with [a defendant's] activities" in the forum State. *International Shoe,* 326 U.S. at 317. Applying that principle here, the Court should hold that Bristol-Myers cannot be subjected to specific jurisdiction in California on respondents' claims.

## CONCLUSION

The judgment of the California Supreme Court should be reversed.

## Footnotes

[1]   Respondents' complaints are materially identical, and one is included in the joint appendix as a representative example. J.A. 20-74. As in the complaints, the briefs and opinions below at times refer to "resident" and "non-resident" plaintiffs. Bristol-Myers has never argued, however, that a plaintiff's California residence by itself has any significance. *See* Bristol-Myers Cal. S. Ct. Reply Br. 11; *Walden v. Fiore,* 134 S. Ct. 1115, 1125 (2014) ("[M]ere injury to a forum resident is not a sufficient connection to the forum."). Rather, in the context of this case, "non-resident plaintiffs" is shorthand for those who were not prescribed or dispensed Plavix in California, and "resident plaintiffs" is shorthand for those who were. As described below on p. 6, respondents have never alleged that they were prescribed or dispensed Plavix in California.

[2]   Bristol-Myers argued that the actions were removable because respondents had structured their complaints to avoid federal subject matter jurisdiction - not only by fraudulently joining McKesson so as to eliminate complete diversity, but also by dividing the plaintiffs across eight complaints so as to avoid qualifying as a "mass action" under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(11)(B). *See* Order Granting Pls.' Mot. To Remand, *Caouette v. Bristol-Myers Squibb Co.,* No. C-12-1814 (N.D. Cal. Aug. 10, 2012), ECF No. 35.

[3]   Even if both links are established, a defendant may argue that a state court lacks specific jurisdiction over it if the exercise of jurisdiction would "offend 'traditional notions of fair play and substantial justice.' " *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 113 (1987) (quoting *International Shoe,* 326 U.S. at 316).

[4]   This case presents a question under the Due Process Clause of the Fourteenth Amendment, not the Fifth Amendment. It thus provides "no occasion" for this Court to address the application of the Fifth Amendment to the exercise of personal jurisdiction by a federal court. *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.,* 484 U.S. 97, 102 n.5 (1987) (internal quotation marks omitted).

[5]   Respondents' argument that *Goodyear* and *Daimler*'s statements were "passing dictum," Br. in Opp. 14-16, is simply wrong. *Goodyear* squarely held that the "North Carolina courts lacked specific jurisdiction to adjudicate" the plaintiffs' product-liability claims. 564 U.S. at 919. And *Daimler* identified the Polish product-liability hypothetical as "illustrat[ing] the respective provinces of general and specific jurisdiction." 134 S. Ct. at 754 n.5.

[6]   *Available at* http://www.nycourts.gov/courts/1jd/supctmanh/AO%20Plavix%202-12.pdf.

© 2017 Thomson Reuters. No claim to original U.S. Government Works.

7     None of this is to say that a plaintiff's residence or injury in the forum State is, by itself, sufficient to establish specific jurisdiction. *See supra* note 1. With respect to the purposeful availment requirement, this Court has held that "mere injury to a forum resident is not a sufficient connection to the forum," and that "an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." *Walden,* 134 S. Ct. at 1125. And courts have held that even where a product injures a plaintiff in the forum, there is no specific jurisdiction over the product's manufacturer if the product entered the State through channels outside the manufacturer's control. *See, e.g., D'Jamoos v. Pilatus Aircraft Ltd.,* 566 F.3d 94, 106 (3d Cir. 2009); *Kuenzle v. HTM Sport-Und Freizeitgeräte AG,* 102 F.3d 453, 457 (10th Cir. 1996); *Hinrichs v. Gen. Motors of Can., Ltd.,* No. 1140711, 2016 WL 3461177, at *27 (Ala. June 24, 2016) (per curiam), *petition for cert. filed,* No. 16-789 (Dec. 19, 2016).

---

**End of Document**     © 2017 Thomson Reuters. No claim to original U.S. Government Works.