# EXHIBIT

# "D"

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **ANGEL MCDONNELL** | ) | |
| | ) | |
| Plaintiff, | ) | 1:16-cv-05011 |
| | ) | |
| vs. | ) | Honorable Sara Ellis |
| | ) | |
| **NATURE'S WAY PRODUCTS, LLC** | ) | Honorable Sidney Schenkier (Magistrate) |
| | ) | |
| Defendants. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Defendant Nature's Way Products, LLC ("Nature's Way") submits this Reply in Support of its Motion to Dismiss Plaintiff Angel McDonnell's Second Amended Complaint pursuant to Rules 12(b)(6) and (b)(2) of the Federal Rules of Civil Procedure.

Throughout her Response (Dkt. 52), Plaintiff accuses Nature's Way of improperly attempting to relitigate issues "already decided against it," while claiming wide latitude for herself as she tries to resurrect claims the Court dismissed in its March 28, 2017 Order. But Plaintiff cannot have it both ways. In lieu of standing on the claims in her First Amended Complaint that the Court did not dismiss, Plaintiff elected to file an amended pleading. There are settled consequences for doing so. *Craft v. Health Care Serv. Corp.,* 2016 U.S. Dist. LEXIS 44810, *21 (N.D. Ill. Mar. 31, 2016). Because the Second Amended Complaint supersedes all previous complaints and controls the case from this point forward, *id.*, it also opens the door for Nature's Way to attack the new pleading with a successive motion to dismiss. *See Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012); *Chasensky v. Walker*, 740 F.3d 1088, 1094 (7th Cir. 2014) ("When a plaintiff files an amended complaint, the new complaint supersedes all previous complaints and controls the case from that point forward… [b]ecause a plaintiff's new complaint

wipes away prior pleadings, the amended complaint opens the door for defendants to raise new and previously unmentioned affirmative defenses.").

A.  **Plaintiff Has Not Alleged Actual Damages Because She Does Not Contend a Comparable Vitamin Supplement Marketed Without a Made in the USA Claim Could Have Been Purchased at a Lower Price**

Plaintiff argues that she incurred actual damages "because she paid more for [the Women's Alive supplements] than they were actually worth" and because she "would not have purchased the vitamins at the price she paid if she had known that they contained foreign sourced vitamins" (Dkt. 42, ¶21) These allegations are not sufficient to allege actual damages under ICFA, as this Court has held twice in the last six months. To allege actual damages under ICFA, a complaint must include plausible allegations that the plaintiff's purchase of the allegedly deceptively marketed product caused her to suffer pecuniary (*i.e.*, monetary) injury. In other words, for Plaintiff plausibly to allege that she had suffered damages cognizable under ICFA, Plaintiff must allege the existence of comparable vitamin supplements, marketed without a "Made in U.S.A." claim, that were available for purchase at a lower price. The Second Amended Complaint contains no such allegations.

Plaintiff did not incur actual damages by virtue of her alleged purchase and consumption of a multi-vitamin with "foreign sourced" ascorbic acid allegedly marketed as "Made in U.S.A." In her response Plaintiff admits that she has not alleged that "foreign sourced" ascorbic acid is adulterated or that it rendered Women's Alive unsafe for consumption; to the contrary, Plaintiff concedes that all ascorbic comes from outside the United States. Moreover, Plaintiff alleges nothing to plausibly establish that Women's Alive commands a higher purchase price because of its "Made in U.S.A." label. And Plaintiff also concedes that she has not alleged the existence of a comparable multi-vitamin sold at a lower price by virtue of being marketed without a "Made in

U.S.A." claim. In the absence of such allegations, there is no plausible basis for Plaintiff to argue or for the Court to infer Plaintiff paid more for Women's Alive "than [it was] actually worth."

In her Response Plaintiff ignores two cases decided in this very Court within the last six months that rejected, as legally insufficient, virtually identical claims—filed by the same lawyers, no less. In *Sabo v. Wellpet, LLC*, 2017 U.S. Dist. LEXIS 61114 (N.D. Ill. Apr. 21, 2017), the Court dismissed an ICFA claim based on the purchase of dog food marketed with a "Made in the USA" label where the plaintiff had not alleged that comparable dog food marketed without that claim was sold at lower prices: "Indeed, [the plaintiff] does not claim that defendant charged more for its pet food products because they were (supposedly) 'Made in the USA,' nor does he claim that comparable pet food products that lacked domestic-source designations were less expensive." *Id.* at *9. Similarly, in *deMedicis v. CVS Health Corp.,* 2017 U.S. Dist. LEXIS 19589 (N.D. Ill. Feb. 13, 2017), a case with even closer facts, the Court ruled that the purchase price paid by the plaintiff for a vitamin supplement marketed with an allegedly deceptive "Made in the USA" claim did not constitute actual damages under the ICFA absent allegations that comparable supplements marketed without the "Made in the U.S.A." claim were sold at lower prices. As the Court noted, the plaintiff in that case had not "allege[d] that he did not purchase another, less-expensive brand of Vitamin C drops because of the alleged [Made in U.S.A. claim] deception." *Id.* at *6-7.

*Sabo* and *deMedicis* were dismissed because the plaintiffs had not included allegations plausibly establishing that the "Made in U.S.A." claims on the products at issue had caused them to pay a higher price for the challenged products than they would have for comparable products marketed without that label. The instant case is no different. It was filed by, and its complaint was drafted by, the same attorneys, contains substantially the same allegations and should be

3

dismissed for the same reasons. Given their involvement in those cases, moreover, it is surprising that Plaintiff herein did not even try to address, much less distinguish, *Sabo* or *deMedicis*.

Plaintiff's reliance on *Se Yeun Kim v. Carter's Inc.,* 598 F.3d 362 (7th Cir. 2010), a decision Nature's Way cited and discussed in its motion to dismiss (Dkt. 51, pp. 9-10), is misplaced; indeed, that case actually highlights why the Second Amended Complaint fails to allege actual damages. Plaintiff cites *Se Yeun Kim* for the proposition that a consumer can establish actual damages to support an ICFA claim by merely alleging that the she would not have purchased the product absent the claimed deception. (Dkt. 52, p. 4.) But *Se Yeun Kim* says no such thing. The bare bones, conclusory allegation that a consumer would not have purchased the product is not enough plausibly to establish a pecuniary injury.

In *Se Yeun Kim,* the Seventh Circuit discussed what allegations are necessary to establish that a seller's deception causes a purchaser pecuniary injury because she paid more than the actual value of a product. The Seventh Circuit held that to establish such actual damages, the plaintiff consumer has to allege facts establishing that, "but for [the defendant's] deception, [plaintiff] could have shopped around and obtained a better price [for a comparable product] in the marketplace." *Id.* at 365. The Court cited two Illinois ICFA decisions in support of that conclusion: *Mulligan v. QVC, Inc.*, 888 N.E.2d 1190 (1st Dist. 2008) and *DOD Techs. v. Mesirow Ins. Servs., Inc.,* 381 887 N.E.2d 1 (1st Dist. 2008). [1] In both cases the Illinois Appellate Court rejected ICFA claims based on products purchased in reliance on deceptive marketing where the

---

[1] Plaintiff herself quotes *Mulligan* on page 4-5 of her Response, conceding that actual damages under the ICFA requires a showing that the deceptive conduct caused the plaintiff to pay more than the actual value of the product. Plaintiff's reliance on *Mulligan* is misplaced. The unsupported allegation that Plaintiff paid more for Women's Alive than it is worth does not plausibly establish actual damages where Plaintiff fails to allege the existence of a comparable, lower-priced supplement marketed without the "Made in U.S.A." claim.

4

plaintiffs had not alleged that they could have purchased comparable products at lower prices but for the alleged deceptive marketing. *Mulligan,* 888 N.E.2d at 1194, 1197; *DOD Techs.,* 887 N.E.2d at 10.[2]

The same defect present in those cases, and in *Sabo* and *deMedicis,* is present in this case. And even if this Court accepted as true Plaintiff's claim that her sense of patriotism is such that she would not have bought Women's Alive if she knew it contained foreign sourced ascorbic acid, that allegation would still not establish a pecuniary injury necessary to show actual damages under ICFA. Having failed to allege facts plausibly establishing that comparable vitamin supplements marketed without a "Made in the U.S.A." claim were available for purchase at prices lower than what she paid for Women's Alive, Plaintiff has not alleged the required actual damages. Her ICFA claim should be dismissed.

**B.    This Court Has No Personal Jurisdiction Over Claims Involving Purchases Outside Illinois.**

Plaintiff admits that the Second Amended Complaint purports to assert claims on two grounds: (1) her alleged purchase of Women's Alive at CVS and Walgreens in the State of Illinois; and (2) alleged purchases by other consumers of the 69 products referenced in paragraphs 22 and 24 of the Second Amended Complaint, within *and outside* the State of

---

[2] Citing *Muir v. Playtex Products, Inc.,* 888 N.E.2d 1190 (Ill. App. 2008) and *Dewan v. Ford Motor Co.,* 842 N.E.2d 756 (Ill. App. 2005), Plaintiff argues that she need not allege that Women's Alive was deficient in order to establish actual damages. (Dkt. 52, p. 5.) This argument misses the point. Because Plaintiff concedes that she wasn't harmed by some deficiency in the vitamin supplement, in order to establish she was damaged by purchasing it, she must allege the existence of a comparable, lower-priced supplement marketed without the "Made in U.S.A." claim. The complaint in *Muir* expressly referenced comparable products. The plaintiff in *Muir* alleged she was damaged because the defendant's product commanded a premium price over these alternatives as a result of a false claim about its superior functionality. *Muir,* 983 F.Supp.2d at 984, 986-87. *Dewan* is inapposite altogether. Unlike this case, where Plaintiff concedes that the source of the ascorbic acid had no impact on the performance of the vitamin supplement, the plaintiff in *Dewan* claimed actual damages based on a defect in the car - a non-performing sensor – that caused it to rattle and perform improperly. *Dewan,* 842 N.E.2d at 759, 762. There is no allegation that Women's Alive was defective or unfit for consumption by virtue of the alleged foreign sourced ascorbic acid.

5

Illinois. Nature's Way's personal jurisdiction argument is limited to the claims based on the sale of Women's Alive outside the State of Illinois and the sale of the 69 products referenced in paragraphs 22 and 24.

Plaintiff does not argue that Nature's Way is subject to general jurisdiction in Illinois. (Dkt. 52, pp. 5-8.) Accordingly the Court has personal jurisdiction over Nature's Way only if that jurisdiction is specific, that is, where Nature's Way has directed actions at an Illinois resident and where the claim seeks redress for injuries arising out of such contacts. The only claim that satisfies the personal jurisdiction test in this case is Plaintiff's own claim in Count I, which relates to her purchases of Women's Alive at retail stores in Illinois. Recognizing this problem, Plaintiff argues that she does not have to establish personal jurisdiction as to Counts II-V because she is a purported class representative of a multi-state class. This argument is erroneous. "[I]mposing personal jurisdiction for all of the claims because specific jurisdiction may lie as to this one plaintiff's claims would run afoul of the traditional notions of fair play and substantial justice that form the bedrock of any court's personal jurisdiction analysis." *Demaria v. Nissan N. Am., Inc.*, No. 15 C 3321, 2016 U.S. Dist. LEXIS 11295, *25-*26 (N.D. Ill. Feb. 1, 2016).

In its motion, Nature's Way cited three decisions issued by this Court where multi-state class action claims were dismissed for lack of personal jurisdiction. See *deMedicis,* 2017 U.S. Dist. LEXIS 19589 at *11; *In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proceedings*, 164 F. Supp. 3d 1040, 1048-49 (N.D. Ill. 2016); and *Demaria,* 2016 U.S. Dist. LEXIS 11295, at *25-*26. Plaintiff's skeletal, undeveloped attempt to distinguish these cases – arguing without explanation that these cases are "simply different" – fails. These cases are directly on point.

The allegations establishing specific jurisdiction over the claim arising out of Plaintiff's purchase of Women's Alive in 2013 and 2014 in Illinois do not give Plaintiff a free pass in establishing specific jurisdiction as to the remaining claims in this case. As this Court has held over and over again, "personal jurisdiction over the defendant must be established *as to each claim asserted*." *deMedicis,* 2017 U.S. Dist. LEXIS 19589, *11; *Testosterone Replacement Therapy Prod. Liab. Litig.,* 164 F. Supp. 3d 1040 at 1048-49.

Plaintiff's reliance on the Supreme court's recent ruling in *Bristol-Myers Squibb Co. v. Superior Court,* 2017 U.S. LEXIS 3873 (U.S. June 19, 2017) is also misplaced. This decision strongly weighs in favor of dismissing Plaintiff's non-Illinois claims in this case for lack of personal jurisdiction. In *Bristol-Myers* the complaint, filed in California state court, purported to assert class claims on behalf of a number of non-California residents who had alleged that the drug Plavix had injured them, giving rise to state law claims for products liability, negligent misrepresentation and false advertising. *Id.* at *6-7. Those non-California class members did not claim to have purchased or used Plavix in California. Bristol-Myers, incorporated in Delaware and headquartered in New York, moved to dismiss the claims of the non-California plaintiffs on personal jurisdiction grounds, arguing it was not subject either to general or specific jurisdiction in California. *Id.* at *8. The trial court denied the motion, holding that Bristol-Myers was subject to general jurisdiction. California's appellate court affirmed on different grounds, ruling that Bristol-Myers was not subject to general jurisdiction but that specific jurisdiction existed. *Id.*

The United States Supreme Court reversed, holding that there was no basis for specific jurisdiction over Bristol-Myers as to the claims of the non-California plaintiffs. In doing so the Court reaffirmed the starting point for any specific jurisdiction analysis. "[T]he suit must arise out of or relate to the defendant's contact with the forum." *Bristol-Myers,* 2017 U.S. LEXIS

7

3873, at *11. When there is no such connection between the plaintiffs' claims and the defendant's contact with the forum, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.* at *13. Applying these principles, the court reasoned that the non-California plaintiffs' claims were not connected to Bristol-Myers contacts with the State of California and, as such, there was no basis for specific jurisdiction.

> As noted, the nonresidents were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California. The mere fact that other plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims.

*Id.* at *14-15.

*Bristol-Myers* is thus dispositive of Count V. That count is not based upon Nature's Way directing any activities at any Illinois residents, nor does this claim seek redress for injuries to Illinois consumers based on Nature's Way's supposed contacts with Illinois. As alleged, Count V is directed solely at alleged conduct in states other than Illinois in relation to non-Illinois consumers.[3] Similarly, there is no basis for specific jurisdiction over any of the claims in Counts II-IV arising out of the alleged purchase of the 69 products referenced in paragraphs 22 and 24. Plaintiff concedes she did not purchase any of these products. Moreover, the Second Amended Complaint does not allege any Illinois resident purchased any of these products. The absence of such allegations precludes Plaintiff from establishing personal jurisdiction over Nature's Way for the claims in Counts II, III and IV arising out of the purchase of these products. *See Goodyear*

---

[3] Plaintiff's attempt to distinguish *Bristol-Myers* on the grounds that it dealt with a suit filed in state court fails. As discussed above, there are numerous decisions where federal courts have declined to exercise personal jurisdiction over multi-state class action complaints filed in district courts where the claims did not relate to the defendant's contacts with the forum. See *deMedicis,* 2017 U.S. Dist. LEXIS 19589, at *11; *In re Testosterone Replacement Therapy Prod. Liab. Litig.,* 164 F. Supp. 3d at 1048-49; *Demaria* 2016 U.S. Dist. LEXIS 11295.

*Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 924 (2011)(specific jurisdiction requires that the suit arise out of and/or relate to the defendant's contacts with the forum); *Testosterone Replacement Therapy Prod. Liab. Litig.,* 164 F. Supp. 3d 1040 at 1048 (rejecting argument that "court may exercise personal jurisdiction over a claim against a [defendant] unrelated to [its] conduct within the forum state.")

C. **Plaintiff Has Not Satisfied Rules 9(b) With Regards to the Claims Based on the Products in Paragraphs 22 and 24**

Plaintiff's attempt to premise a fraud claim on the products included in a Nature's Way customer satisfaction plan directed at California consumers fails. The allegations plead regarding this claim come nowhere close to satisfying Rule 9(b). None of these allegations give rise to the inference that Nature's Way marketed these products with false claims about their ingredients. Similarly, absent from the Second Amended Complaint are any allegations that even a single consumer purchased any of the products referenced in paragraph 24 or incurred a pecuniary injury in reliance on an allegedly false statement used to market these products.

The claims based on the products referenced in paragraphs 22 suffer from largely the same defects. The Second Amended Complaint does not allege who purchased these products or that false statements in the marketing of these products caused anyone pecuniary injury.

D. **Having Abandoned Her UDTPA Claim, Plaintiff Cannot Seek Class Relief Under Other States' UDTPA Statutes**

The Court dismissed Plaintiff's UDTPA claim because Plaintiff could not state a claim under the statute. When she filed the Second Amended Complaint, Plaintiff abandoned her UPDTA claim and did not attempt to replead it. In her Response, Plaintiff argues that the Court's dismissal and her subsequent abandonment of her UDPTA claim should have no impact on "claims under other state's statutes." (Dkt. 52, p. 12.) This argument is erroneous for multiple,

9

independent reasons. First, Plaintiff has no claim under the UDTPA statutes of Florida, Michigan, Minnesota, Missouri, New Jersey, New York or Washington. She is not a resident of any of these states, did not purchase Women's Alive in any of these states and has no basis for redress under any of these statutes. "[P]rior to certification of a class, the Court views a case simply as a suit by the named plaintiff." *Morlan v. Universal Guar. Life Ins. Co..,* 298 F.3d 609, 616 (7th Cir. 2002). Here, the named plaintiff's UDTPA claim has been dismissed. In this regard, Plaintiff's reference to "claims under other state's statutes" is a non sequitur. There are no such claims. Second, it is axiomatic that if Plaintiff cannot state a UDTPA claim in her own right, she cannot state a claim as class representative on behalf of others. "[U]ntil certification there is no class action but merely the prospect of one; the only action is the suit by the named plaintiff." *Id.* Third, having had her own UDTPA claim dismissed, Plaintiff has no standing to assert a UDTPA claim on behalf of non-Illinois consumers, under the laws of other states. "It is well established that Plaintiffs cannot establish standing based solely on injuries sustained by members of the putative class they seek to represent." *Moyer v. Michaels Stores, Inc.,* 2014 U.S. Dist. LEXIS 96588 (N.D. Ill. July 14, 2014).

Separate and apart from these arguments, all of which mandate dismissal of any claims under the UDTPA statutes of Florida, Michigan, Minnesota, Missouri, New Jersey, New York or Washington, there is a massive Rule 8(a) problem with Plaintiff's approach to these claims. Like the original and First Amended Complaint, the Second Amended Complaint does not even make a bare-bones attempt at giving "fair notice of what the claim is" under these other states' statutes or "the ground upon which [these claims] rest." Fed. R. Civ. P. 8(a)(2). The Second Amended Complaint does not contain any references to the particular provisions of these statutes under which the claims are brought, thereby robbing Nature's Way of any meaningfully opportunity to

10

evaluate the purported claims against it under these seven statutes. Rule 8(a) doesn't allow a plaintiff to simply make a passing reference to eight separate statutory regimes and force the defendants to guess at the particular provisions of the statutes the claims are based upon.

Plaintiff attempts to cure her Rule 8(a) problem in her Response, where she, for the first time, makes reference to particular provisions in the Florida, Michigan, Missouri and New Jersey statutes. This is too little, too late, however. Plaintiff does not get to amend her complaint with her response brief. See *Martinez v. FSS,* 2013 U.S. Dist. LEXIS 70707, *3 (N.D. Ill. May 17, 2013)(Plaintiff "provides more information about her claims in her response to the motion to dismiss, but a plaintiff cannot amend her complaint through the response to a motion to dismiss."); *Audio Car Stereo v. Little Guys,* 2004 U.S. Dist. LEXIS 26257, *22-23 (N.D. Ill. Dec. 28, 2004)("As Defendants point out, a plaintiff cannot amend its complaint by inserting allegations in its briefing in response to a motion to dismiss . . .[i]f Plaintiff desires to amend its pleadings, it must do so in accordance with the Federal Rules.")

E.   **Plaintiff Has Not Cured the Standing Deficiency Outlined on Page 8-9 of the Court's March 28, 2017 Order**

As discussed in Nature's Way's motion to dismiss the Second Amended Complaint, Plaintiff's failure to allege that she purchased any of the products identified in paragraphs 22 and 24 is fatal to her attempt to assert claims on the alleged purchase of these products. (Dkt. 51, p. 16.) In its March 28, 2017 Order, the Court cited two decisions holding that a plaintiff consumer lacks standing to assert class claims based upon products he/she did not purchase. (Dkt. 38, pp. 8-9.) In her Response, Plaintiff cites no authorities establishing she has standing to assert class claims relating to 69 products she never purchased.

11

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests the Court enter an order granting its motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) and (b)(2). The Second Amended Complaint should be dismissed with prejudice and without leave to amend.

Respectfully submitted,

**NATURE'S WAY PRODUCTS, LLC**

/s/ Barry F. MacEntee

By: One of Its Attorneys

Donald L. Mrozek – dmrozek@hinshawlaw.com
Joel Bertocchi – jbertocchi@hinshawlaw.com
Barry F. MacEntee – bmacentee@hinshawlaw.com
HINSHAW & CULBERTSON LLP
222 North LaSalle St. | Suite 300
Chicago, Illinois | 60601-1081
(312) 704-3000

**CERTIFICATE OF SERVICE**

    I, the undersigned attorney, certify that on July 7, 2017 I filed **Defendant's Reply Brief in Support of its Motion to Dismiss the Second Amended Complaint** through the Court's ECM/CF system, which will cause electronic notification of this filing to be sent to all counsel of record.

    By: */s/ Barry F. Mac Entee* .
          One of Its Attorneys