UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION<br><br>**THIS DOCUMENT RELATES TO:**<br>**ALL CASES**[1] | MDL No. 2:09-md-2047<br><br>SECTION L<br><br>JUDGE ELDON E. FALLON<br><br>MAGISTRATE JUDGE<br>JOSEPH C. WILKINSON, JR. |

## CNBM AND BNBM ENTITIES' MEMORANDUM IN SUPPORT OF THEIR RENEWED MOTION TO CERTIFY AN IMMEDIATE APPEAL FROM THE COURT'S JURISDICTIONAL ORDERS

---

[1] The CNBM and BNBM Entities moved to dismiss all cases in which they were named defendants at the time their motions to dismiss were filed.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................................. 2

ARGUMENT ....................................................................................................................... 4

I.     The Court Should Recertify Its April 21, 2017 Order For Immediate Appeal
Pursuant to § 1292(b)................................................................................................. 4

II.    The Court's Order Addressing *BMS* Also Merits Immediate Review............................. 9

     A.    This Court's *BMS* order concerns controlling questions of law, the
resolution of which would materially advance the litigation................................ 10

     B.    There are substantial grounds for a difference of opinion about the
application of *BMS* to the claims in this case ..................................................... 11

          1.    There are substantial grounds for difference of opinion concerning
application of a plaintiff-specific inquiry following *BMS* ...................... 11

          2.    There are substantial grounds for difference of opinion about
whether *BMS* applies to the cases in this MDL ...................................... 13

CONCLUSION.................................................................................................................. 16

CERTIFICATE OF SERVICE ............................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adm'rs of Tulane Educ. Fund v. Ipsen, S.A.*,
    450 F. App'x 326 (5th Cir. 2011) ............................................................................7

*In re Agent Orange Prod. Liab. Litig.*,
    818 F.2d 145 (2d Cir. 1987)..................................................................................15

*Aparicio v. Swan Lake*,
    643 F.2d 1109 (5th Cir. 1981) .................................................................................5

*Bristol-Myers Squibb Co. v. Superior Court*,
    137 S. Ct. 1773 (2017)..................................................................................1, 12

*Busch v. Buchman, Buchman & O'Brien*,
    11 F.3d 1255 (5th Cir. 1994) ................................................................................14

*In re Chinese Manufactured Drywall Prods. Liab. Litig.*,
    753 F.3d 521 (5th Cir. 2014) ..................................................................................8

*In re Chinese Manufactured Drywall Prods. Liab. Litig.*,
    767 F. Supp. 2d 649 (E.D. La. 2011)....................................................................15

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
    No. 09-md-02047, 2011 WL 2443693 (E.D. La. June 14, 2011) ...........................11

*In re Dental Supplies Antitrust Litig.*,
    No. 16-cv-00696, 2017 WL 4217115 (E.D.N.Y. Sept. 20, 2017) ..........................13

*In re DePuy Orthopaedics, Inc.*,
    870 F.3d 345 (5th Cir. 2017) ................................................................................15

*Dickson Marine Inc. v. Panalpina, Inc.*,
    179 F.3d 331 (5th Cir. 1999) ..................................................................................8

*Energy Coal S.p.A. v. CITGO Petroleum Corp.*,
    836 F.3d 457 (5th Cir. 2016) ..................................................................................7

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp.*,
    No. 17-cv-00564, 2017 WL 4224723 (N.D. Cal. Sept. 22, 2017)....................13, 14

*Hargrave v. Fibreboard Corp.*,
    710 F.2d 1154 (5th Cir. 1983) ................................................................................7

*Jackson v. Tanfoglio Giuseppe, S.R.L.*,
   615 F.3d 579 (5th Cir. 2010) ................................................9

*Jacobs v. Flight Extenders, Inc.*,
   90 F.R.D. 676 (E.D. Pa. 1981) ..............................................15

*Kenosha Unified Sch. Dist. v. Whitaker*,
   841 F.3d 730 (7th Cir. 2016) ...............................................5

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motnave Achille Lauro in
   Amministrazione Straordinaria*,
   921 F.2d 21 (2d Cir. 1990)..................................................9

*Los Angeles v. Santa Monica Baykeeper*,
   254 F.3d 882 (9th Cir. 2001) ...............................................5

*McDonnell v. Nature's Way Products LLC*,
   No. 16-cv-05011, 2017 WL 4864910 (N.D. Ill. Oct. 26, 2017) ...........2, 13

*McFadin v. Gerber*,
   587 F.3d 753 (5th Cir. 2009) ..............................................12

*McFarlin v. Conseco Servs.¸*
   381 F.3d 1251 (11th Cir. 2004) ............................................10

*Oloson v. Louviere*,
   245 F.3d 791 (5th Cir. 2000) ...............................................5

*Rico v. Flores*,
   481 F.3d 234 (5th Cir. 2007) ...............................................4

*Riggins v. Dixie Shoring Co.*,
   590 So. 2d 1164 (La. 1991) .................................................7

*Seiferth v. Helicopteros Atuneros, Inc.*,
   472 F.3d 266 (5th Cir. 2006) ..............................................12

*Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010).......................................................15

*United States v. Louisiana Generating LLC*,
   No. 09-cv-00100, 2012 WL 4588437 (M.D. La. Oct. 2, 2012)...................9

*In re WellNx Mktg. & Sales Practices Litig.*,
   No. 07-md-01861, 2010 WL 3652457 (D. Mass. Sept. 15, 2010)................15

*Wenokur v. AXA Equitable Life Ins. Co.*,
   No. 17-cv-00165, 2017 WL 4357916 (D. Ariz. Oct. 2, 2017)..................13

**Statutes**

28 U.S.C. § 1292(b) ...................................................................................1, 2, 3, 4, 5, 9, 10, 11, 16

28 U.S.C. § 1332(d)(2) .........................................................................................................14

Fed. R. Civ. P. 4......................................................................................................................15

Fed. R. Civ. P. 23.................................................................................................................14, 15

**Other Authorities**

16 C Charles Alan Wright & Arthur R. Miller, Federal Practice & Proc. Juris.
   § 3929 (3d ed.) ...................................................................................................................5

Pursuant to 28 U.S.C. § 1292(b), Defendants CNBM Company, BNBM Group, and BNBM PLC respectfully move the Court to certify two orders for immediate appeal:  The Court should recertify its April 21, 2017 order denying Defendants' motions to dismiss for lack of personal jurisdiction, and certify its November 30, 2017 order denying Defendants' supplemental motion to dismiss in light of *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017).  As before, Defendants do not seek to a stay.

## INTRODUCTION

This Court already has recognized that the issues addressed in its April 21, 2017 jurisdictional order are "particularly appropriate" for immediate review pursuant to 28 U.S.C. § 1292(b).  Rec. Doc. 20890 at 12.  After initially granting certification, it then delayed certification because of the intervening decision in *Bristol-Myers Squibb*.  The Court did so in order to avoid "piecemeal litigation" and because, the Court explained, it had "a duty to address [the *BMS*-related] jurisdictional issue before certifying the matter to the Fifth Circuit."  Rec. Doc. 20927 at 2-3.  This Court has now addressed that issue, and therefore should certify the order for appeal for the same reasons as before.

The Court should also certify its November 30, 2017 order regarding *BMS*.  As an initial matter, certification is warranted because this order is closely related to the April 21, 2017 order.  That is because, in the Court's view, the issues raised in supplemental briefing on *BMS* were resolved by its April 21, 2017 jurisdictional order (which determined that the Court could exercise personal jurisdiction over all claims brought in the forum states regardless of the absence of contact between the forum and a given plaintiff's claim).  In addition, certification of the *BMS* order is warranted because this conclusion is one about which reasonable minds can differ.  *BMS* clarified that a court cannot exercise personal jurisdiction over each plaintiff in a

case just because the defendant has substantial contacts with the forum or some other plaintiff. Rather, each plaintiff must separately demonstrate that his claims arise out of the defendant's contacts with the forum.  There is a substantial ground for a difference of opinion here, however, because the PSC has never shown such a connection.  The same is true of the Court's further conclusion that *BMS* does not apply to class actions, particularly here where all members of the class are also named plaintiffs; indeed, the Court itself acknowledged other courts have reached the opposite result.  Rec. Doc. 21088 at 24 (citing *McDonnell v. Nature's Way Prods. LLC*, No. 16-cv-05011, 2017 WL 4864910, at *4 (N.D. Ill. Oct. 26, 2017)).  Therefore, it is not just that reasonable jurists *could* differ; they *have* differed.

Resolving these questions would materially advance the litigation for many of the same reasons the Court itself identified when it previously certified appeal under § 1292(b): Dismissing the claims of non-resident plaintiffs would simplify the litigation and avoid unnecessary trials of jurisdictionally inappropriate claims.  In addition, dismissing non-resident plaintiffs would avoid the cost and confusion flowing from remand to different courts of cases involving the very same plaintiffs.  This Court should re-certify its April 21, 2017 jurisdictional order and certify its November 30, 2017 *BMS* order for immediate appeal.

### FACTUAL AND PROCEDURAL BACKGROUND

In the April 21, 2017 order, this Court held that Moving Defendants CNBM Co. (CNBM), BNBM Group, and BNBM PLC (BNBM) are subject to personal jurisdiction in various cases that comprise this multi-district litigation.  Rec. Doc. 20739 at 98-100.  Following that decision, Defendants moved on May 22, 2017 to certify an immediate appeal under 28 U.S.C. § 1292(b).  *See* Rec. Doc. 20779.

Shortly thereafter, the Supreme Court decided *BMS*, clarifying the standards for specific jurisdiction. Defendants filed a supplemental memorandum explaining that *BMS* supports their jurisdictional arguments and provides an additional basis for § 1292(b) certification. Rec. Doc. 20882. Three days later, this Court certified its April 21, 2017 order for immediate appeal. Rec. Doc. 20890. The Court explained that immediate review is "particularly appropriate regarding questions of jurisdiction," and that it would enable "Fifth Circuit review" before a "long and costly process of serial trials." *Id.* at 12. The Court further reasoned that "the propriety of the Court's exercise of personal jurisdiction" is subject to debate in part because the foreign law at issue here—Chinese law on corporate separateness—"is woefully underdeveloped" in federal courts. *Id.*

After this Court certified the order for review and Defendants filed a timely petition for permission to appeal in the Fifth Circuit, the PSC moved this Court to vacate its certification order. Rec. Doc. 20898-1. It argued that decertifying the appeal was appropriate, given the *BMS* filings, to avoid piecemeal appeals of jurisdictional issues. *See id.* at 3. And it assured the Court that Defendants would suffer no prejudice because, once the Court decided the *BMS* issue, "Defendants will be in a position … to seek immediate appeal of all of their jurisdictional issues at one time." *Id.* at 3; *see also id.* at 6 ("[T]he Court should vacate its 1292(b) Jurisdiction Order and allow the parties to finalize all jurisdiction issues prior to any interlocutory appeal.").

The Court agreed. It reasoned that it had an obligation to address the jurisdictional issues raised by *BMS* "before certifying the matter to the Fifth Circuit." Rec. Doc. 20927 at 3. The PSC then informed the Fifth Circuit that this Court had withdrawn its certification order, *see In re: Chinese-Manufactured Drywall Products Liability Litig.*, No. 17-90027 (5th Cir.), Doc. No. 00514132741 at 6, after which the Fifth Circuit denied the petition, Doc. No. 00514141003.

This Court then proceeded to address the supplemental *BMS* motion.  After several rounds of briefing, including court-ordered filings to address various thorny questions, the Court declined to revisit its April 21 order concerning jurisdiction.  Rec. Doc. 21088 at 43.  Revisiting that order is unnecessary, the Court explained, because "*BMS* did not change existing law, but rather applied settled Fourteenth Amendment jurisprudence."  *Id.* at 22.  In addition, the Court reasoned, whatever result *BMS* might compel where it applies, *BMS* does not apply when, as here, an MDL court presides over class action claims.  *Id.* at 23-40.

## ARGUMENT

### I.    The Court Should Recertify Its April 21, 2017 Order For Immediate Appeal Pursuant to § 1292(b).

An order is subject to immediate appeal under § 1292(b) when it involves a controlling question of law, there is a substantial ground for difference of opinion, and an immediate appeal would materially advance the litigation.  *Rico v. Flores*, 481 F.3d 234, 238 (5th Cir. 2007).  As this Court previously recognized, its April 21, 2017 order satisfies this standard.  The order "involves a controlling question of law" whose resolution "would materially advance the litigation by eliminating the possibility of a meaningless trial, particularly in light of the fact that the Defendants are not seeking to stay the litigation pending the outcome of the appeal."  Rec. Doc. 20890 at 11-12.  In addition, "a substantial ground exists for difference of opinion concerning the propriety of personal jurisdiction over the CNBM and BNBM Entities."  *Id.* at 12.

Indeed, the only reason a § 1292(b) appeal did not proceed is that *BMS* gave rise to an interrelated question of law:  The Court concluded that there could be "overlapping issues and arguments on Defendants' [*BMS*] motion before this Court as well as their appeal to the Fifth Circuit," and that accordingly, the Court had "a duty to address [the] jurisdictional issue before

certifying the matter to the Fifth Circuit."  Rec. Doc. 20927 at 2-3.  And when this Court withdrew its certification order, that ended the matter.[2]

Now that the outstanding questions regarding *BMS* have been resolved, there is no risk of piecemeal appeals on these issues.  Indeed, as the PSC previously agreed, now is the right time for appeal:  "Defendants will be in a position after the Court's ruling on *BMS* issues to seek immediate appeal of all of their jurisdictional issues at one time."  Rec. Doc. 20898-1 at 3.  And this Court now may recertify the April 21, 2017 order for review.  When a "district court, upon reconsideration of the Section 1292(b) criteria for certification of an interlocutory appeal, determines that the previous justification for a certification continues to exist, it may reenter the interlocutory order."  *Aparicio v. Swan Lake*, 643 F.2d 1109, 1112 (5th Cir. 1981); *see also Oloson v. Louviere*, 245 F.3d 791 (5th Cir. 2000) (table).

* * *

The reasons for certifying the April 21, 2017 order previously are even more compelling today, after this Court's resolution of Defendants' *BMS* arguments.  There now remain substantial grounds for a difference of opinion about the questions addressed by that order.  Those reasons are set forth in greater detail in the prior motion (Rec. Doc. 20779-1 at 5-17 (memorandum in support of motion); Rec. Doc. 20850-2 at 3-9 (reply)), but for the Court's

---

[2] This Court's withdrawal deprived the Fifth Circuit of jurisdiction to consider the merits of the petition. *See Kenosha Unified Sch. Dist. v. Whitaker*, 841 F.3d 730, 732 (7th Cir. 2016) ("The district court's decision to withdraw certification destroys our jurisdiction to consider the petition under § 1292(b)."); *Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 889 & n.1 (9th Cir. 2001) (where district court rescinds its § 1292(b) certification order prior to court of appeals' grant of permission, the appellate court must "immediately dismiss[] [the request] for lack of jurisdiction"); *see also* 16C Charles Alan Wright & Arthur R. Miller, Federal Practice & Proc. Juris. § 3929 (3d ed.) (court of appeals' jurisdiction to hear an interlocutory appeal under § 1292(b) derives from district court's certification of an order).

convenience, we briefly summarize the three issues that previously formed the basis for the Court's certification order: application of the conflict of laws doctrine, application of state-law imputation doctrines, and analysis of due process.

**Conflict of Laws**.  Although the Court recognized that Chinese law—as the state of incorporation—governs the analysis of imputation, the Court applied Florida, Louisiana, and Virginia law after appealing to the "false conflicts" doctrine.  Rec. Doc. 20739 at 42; *see also id.* at 49.  However, there was no showing that Chinese law applies the same jurisdictional test as any of the transferor states.  Indeed, in certifying its order for immediate appeal, the Court recognized that it was unable to determine for certain whether Chinese law requires the same test as those in the transferor states because "Chinese law on veil-piercing and corporate alter-ego liability is woefully underdeveloped."  Rec. Doc. 20890 at 12.  There is room to debate whether any U.S. state—much less China—has a jurisdictional principle like the version of the single business enterprise doctrine that the court applied.

Moreover, the propriety of disregarding Chinese law on the theory that it mirrors Florida, Louisiana, and Virginia law is all the more debatable given that the governing laws in each of those states yield conflicting outcomes. *Id.* 98-100; *see also* Rec. Doc. 20779-1 at 7-8 (detailing each state's imputation law).  Given that each of the three transferor states employs significantly different imputation laws, they cannot each be consistent with Chinese law.  Because, therefore, there is an *actual* conflict among the imputation laws of the relevant jurisdictions, there is no false conflict.  And at a minimum, reasonable minds can differ about how to apply the false conflicts doctrine under these circumstances.

**Imputation Doctrines**

*Single-Business Enterprise (SBE).*  The Court imputed Taishan's contacts to CNBM, BNBM Group, and BNBM PLC under an SBE theory.  Rec. Doc. 20739 at 75-79.  The use of that doctrine alone provides a substantial basis for a difference of opinion.  As the Fifth Circuit recently explained, "[t]he Supreme Court of Louisiana has never adopted the single business enterprise theory."  *Energy Coal S.p.A. v. CITGO Petroleum Corp.*, 836 F.3d 457, 460 (5th Cir. 2016).  The Louisiana Supreme Court's lack of guidance "has contributed to a hodgepodge of views [concerning SBE's application] in lower Louisiana courts."  *Id.* at 461.  In short, reasonable minds already have differed concerning the scope of SBE.

*Alter Ego.*  There also are grounds for a substantial difference of opinion as to whether this Court properly applied Louisiana alter ego law.  That doctrine "involves situations where fraud or deceit has been practiced by the shareholder acting through the corporation."  *Riggins v. Dixie Shoring Co.*, 590 So. 2d 1164, 1168 (La. 1991).  Absent an allegation of fraud, the plaintiff "bear[s] a heavy burden of proving that the shareholders disregarded the corporate entity to such an extent that it ceased to become distinguishable from themselves."  *Id.*  Rather than applying *Riggins*, this Court instead applied *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154 (5th Cir. 1983).  Rec. Doc. 20739 at 69-75.  But *Hargrave* involved Texas rather than Louisiana law, and this Court's focus on the factors in *Hargrave* allowed it to ignore the showing of fraud or "heavy burden" to prove alter ego under Louisiana law.  710 F.2d at 1161-62. The Fifth Circuit could well conclude that this is one of the cases where "the general use of the *Hargrave* factors in Louisiana diversity cases should be discouraged." *Adm'rs of Tulane Educ. Fund v. Ipsen, S.A.*, 450 F. App'x 326, 330 n.5 (5th Cir. 2011).

*Agency.*  This Court determined that it could impute Taishan's contacts to BNBM PLC, as BNBM's agent, because BNBM exercised general corporate control over Taishan, Rec. Doc. 20739 at 39, 64, 69.  It confirmed in the *BMS* order that that was the basis for its ruling.  Rec. Doc. 21088 at 42 (agency determination was based on "a controlling chain from BNBM to Taishan" that involved shared offices, control of strategic decisions, and monitoring of daily activities).  But a finding of general corporate control does not justify imputing all of one corporation's contacts to another.  To the extent such imputation ever has been countenanced, it requires the same showing as for alter ego.  *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 753 F.3d 521, 531 & n.7 (5th Cir. 2014) ("This control-focused inquiry overlaps with the alter-ego test adopted by most circuits."); *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338-39 (5th Cir. 1999) ("agent or alter ego" governed by the same analysis).  There must be such extensive control that the agent's sole purpose is to serve the principal. *See Chinese-Manufactured Drywall*, 753 F.3d at 531 n.7.  But this Court did not find an alter-ego-level of control; on the contrary, it specifically recognized that the entities are *not* alter egos under Florida and Virginia law.  Rec. Doc. 20739 at 54, 64.  There is thus reasonable debate about the Court's use of an agency theory to impute all of Taishan's forum contacts to BNBM in those states.

**Due Process**.  This Court did not engage in a full due process analysis in the April 21, 2017 order, reasoning that it was not necessary to do so because the Court previously asserted jurisdiction over Taishan and Taishan's contacts could be imputed to Defendants.  Rec. Doc. 20739 at 36-37; *see also* Rec. Doc. 21088 at 3 n.1 (confirming basis for exercising jurisdiction over Defendants).  Even if that form of imputation would satisfy minimum contacts analysis, exercising jurisdiction over one defendant (Taishan) cannot justify skipping the rest of the due

-8-

process analysis for *every other* defendant (BNBM PLC, BNBM Group, and CNBM Co.). If such a shortcut ever were appropriate, it would only be when corporations are true alter egos. *See Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 586 (5th Cir. 2010). Reasonable jurists could disagree about whether the same jurisdictional shortcut may be used when (as here) the subsidiary is a mere agent of (or part of an alleged SBE with) the defendant.

This Court recognized "that a substantial ground exists for difference of opinion concerning the propriety of the Court's exercise of personal jurisdiction over the CNBM and BNBM entities," and further recognized that these questions were controlling and that their immediate appeal would materially advance the litigation. Rec. Doc. 20890 at 12. That is because "immediate appeals under Section 1292(b) are particularly appropriate regarding questions of jurisdiction," especially when "the case will involve a 'long and costly process of serial trials.'" *Id.* at 12 (quoting *Lester v. Exxon Mobil Corp.*, No. 14-cv-01824, 2014 WL 5393506, at * 6 (E.D. La. Oct. 23, 2014)); *see also Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motnave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990) ("resolution of an issue need not necessarily terminate an action in order to be 'controlling'"; certifying question where only one of several defendants might be dismissed for lack of jurisdiction); *United States v. Louisiana Generating LLC*, No. 09-cv-00100, 2012 WL 4588437, at *1 (M.D. La. Oct. 2, 2012) (same). Those conclusions are equally correct today. The Court can and should recertify its April 21, 2017 order for immediate appeal under § 1292(b).

## II.   The Court's Order Addressing *BMS* Also Merits Immediate Review.

At the same time, and in the interest of judicial efficiency, the Court also should certify its *BMS* order for immediate appeal under § 1292(b). In the underlying motion, Defendants

argued that even if there were personal jurisdiction over certain claims brought against them, *BMS* still would require the Court to dismiss the claims brought by plaintiffs with no connection to the states in which they brought suit.  These jurisdictional questions should properly be considered in tandem—as the PSC itself has recognized.  Indeed, that was the basis for the PSC securing a delayed appeal of this Court's April 21 order.  Rec. Doc. 20898-1 at 3.  As the PSC explained, delay was necessary to allow for an "immediate appeal of all of [Defendants'] jurisdictional issues at one time" and "avoid a waste of judicial resources in this Court and the Fifth Circuit."  *Id.* at 3.  To avoid that waste of judicial resources, and because this Court's *BMS* order meets § 1292(b)'s criteria, the Court should simultaneously certify this order for review.

> **A.**     **This Court's *BMS* order concerns controlling questions of law, the resolution of which would materially advance the litigation.**

The first and third criteria of § 1292(b) are easily satisfied here:  The questions at issue in the *BMS* order plainly are controlling, and their resolution would materially advance the litigation.  As an initial matter, these are questions of law: whether a plaintiff-specific/claim-specific analysis is required by *BMS* and whether *BMS* applies to class actions.  The answer to these questions requires only consideration of the Due Process Clause and federal statutes. *McFarlin v. Conseco Servs.*¸ 381 F.3d 1251, 1258 (11th Cir. 2004) ("the meaning of a statutory or constitutional provision" is a question of law).  The Fifth Circuit would not need to delve into the factual record to answer these questions.

These questions of law also are "controlling":  They will have a profound effect on the future course of the MDL.  Resolving the issues raised by *BMS* would mean determining which claims arise out of Defendants' contacts with each forum state—and that, in turn, would dictate which claims may remain in the MDL.  Reversing the *BMS* order would require dismissing non-resident plaintiffs from many of the duplicative cases in which they appear, relegating each

-10-

plaintiff to one action.  It is far better to determine which plaintiffs belong in which cases now, rather than maintaining the status quo of duplicative claims in multiple fora, which will create confusion among the remand courts and could lead to further appeals in multiple circuits of claims tried in inappropriate fora.

> **B.     There are substantial grounds for a difference of opinion about the application of *BMS* to the claims in this case.**

The Fifth Circuit has not yet addressed how *BMS* affects the jurisdictional showing required of non-resident plaintiffs who bring claims in federal courts, and courts around the country are reaching different conclusions about what *BMS* requires.  This is just the sort of "novel and difficult question[]" that is well-suited for immediate appeal under § 1292(b).  *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, No. 09-md-2047, 2011 WL 2443693, at *3 (E.D. La. June 14, 2011).  Reasonable jurists could disagree as to whether this Court correctly interpreted *BMS* when it declined to dismiss the claims of plaintiffs with no connection to the states in which they brought suit.  This Court did so for two reasons, each of which is at a minimum debatable.

> **1.     There are substantial grounds for difference of opinion concerning application of a plaintiff-specific inquiry following *BMS*.**

Regarding *BMS*, the Court first held that it was unnecessary to consider whether there was personal jurisdiction over the claims of non-resident plaintiffs because "this Court and the Fifth Circuit found that Taishan made substantial contacts with each forum state."  Rec. Doc. 21088 at 22. There are substantial grounds for debate over whether this wholly *defendant*-focused, as opposed to *claim*-focused, approach to assessing specific personal jurisdiction is consistent with *BMS* and Fifth Circuit precedent.

The Fifth Circuit has long held that "specific personal jurisdiction" is a "claim-specific inquiry." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006); *see also McFadin v. Gerber*, 587 F.3d 753, 579 (5th Cir. 2009) ("In this circuit, specific personal jurisdiction is a claim-specific inquiry."). What that means, including in diversity cases like this one, is that "[p]ermitting the legitimate exercise of specific jurisdiction over one claim to justify the exercise of specific jurisdiction over a different claim that does not arise out of or relate to the defendant's forum contacts would violate the Due Process Clause." *Seiferth*, 472 F.3d at 275. Accordingly, where specific jurisdiction is concerned, it isn't enough that a defendant has "substantial contacts" in a forum state; in addition, each *plaintiff's* claims must arise out of those contacts.

*BMS* confirmed this. Even though Bristol-Myers had substantial contacts with California, *BMS*, 137 S. Ct. at 1778, a California court could not exercise personal jurisdiction over claims brought by non-California residents who could not trace their harms to Bristol-Myers's California contacts. *See id.* at 1781-82. Even if a *California* plaintiff could maintain suit in California, non-residents whose claims against the same defendant lacked any connection to California could not.[3] And it did not matter that California plaintiffs were willing to bring suit alongside the non-resident plaintiffs: The fact that "other plaintiffs" were harmed by Bristol-Myers' activity in California was no reason to "allow the State to assert specific jurisdiction *over the nonresidents' claims*." *Id.* at 1776 (emphasis added).

---

[3] This Court suggested that the basis for the Supreme Court's ruling was that the "*BMS* Court saw little contacts between Bristol-Myers and California." Rec. Doc. 21088 at 21. On the contrary, there were ample contacts with California; what was missing was California contacts that gave rise to the harms faced by plaintiffs *outside of California.*

Reasonable jurists could find the same problem here.  This Court has never found, nor has the Fifth Circuit determined, that plaintiffs from outside the forum states were harmed by Taishan's contacts in each forum state.  Without such a connection, the only basis for permitting the claims of non-resident plaintiffs to proceed would be the claims of forum state plaintiffs— and, under *BMS*, that is not enough.

> **2.     There are substantial grounds for difference of opinion about whether *BMS* applies to the cases in this MDL.**

The Court additionally reasoned that *BMS* is altogether inapplicable to the cases making up this MDL because *BMS* dealt with a mass tort action, not a class action.  Reasonable jurists could dispute whether these cases are properly considered class actions, given the absence of any representative character.  Rec. Doc. 21038 at 3-5.  More importantly, the question of whether *BMS* applies to class actions is just the sort of question that should be resolved by the Fifth Circuit.

Courts already disagree about whether *BMS* applies to class actions.  On the one hand, numerous courts have understood *BMS* to apply with equal force in federal cases including class actions.  *See McDonnell*, 2017 WL 4864910, at *4 & n.7 ("Because the only connection to [the forum state] is provided by [the named plaintiff's] purchase of Women's Alive … the Court dismisses all claims … brought on behalf of non-[forum state] residents …."); *Wenokur v. AXA Equitable Life Ins. Co.*, No. 17-cv-00165, 2017 WL 4357916, at *4 n.4 (D. Ariz. Oct. 2, 2017); *In re Dental Supplies Antitrust Litig.*, No. 16-cv-00696, 2017 WL 4217115, at *9 (E.D.N.Y. Sept. 20, 2017).  On the other side of the ledger, and as this Court has noted, one court has relied on class-action principles to find that *BMS* does not require dismissal of absent non-resident class members (but did not address whether *BMS* requires dismissal of named non-resident class members).  *Fitzhenry-Russell v. Dr. Pepper Snapple Grp.*, No. 17-cv-00564, 2017 WL 4224723,

at *5 (N.D. Cal. Sept. 22, 2017); Rec. Doc. 21088 at 23-24.  Given these divergent opinions, reasonable jurists plainly can—and do—disagree about whether *BMS* applies to class actions.

The PSC's other arguments for disregarding *BMS* were its novel jurisdictional theories based on CAFA, Rule 23, and the MDL statute.  The Court's acceptance of these theories is subject to substantial debate because these provisions do not alter the bases for a plaintiff to assert personal jurisdiction over a defendant.  To be sure, and as Defendants previously made clear, Congress may have authority to expand personal jurisdiction beyond the Fourteenth Amendment constraints placed on the exercise of personal jurisdiction in diversity cases.  Rec. Doc. 20956-2 at 3-6; *see also Busch v. Buchman, Buchman & O'Brien*, 11 F.3d 1255, 1258 (5th Cir. 1994).  But there is, at a minimum, room to debate whether CAFA, Rule 23, or the MDL statute does so.

Neither CAFA nor Rule 23 authorizes nationwide service of process or otherwise expands personal jurisdiction beyond what is permitted by the Due Process Clause and the long-arm statute of the state in which a plaintiff brings suit.  Rather, each of these provisions is designed to address other procedural and statutory difficulties posed by class actions.[4]  CAFA expanded subject-matter jurisdiction so that federal courts could consider claims as to which complete diversity is lacking.  *See* 28 U.S.C. § 1332(d)(2).  Nothing about that provision expands personal jurisdiction.  Likewise, Rule 23 does not purport to offer an alternative basis for asserting personal jurisdiction.  Rule 23 is no doubt a "valid exercise of congressional authority."

---

[4] That does not mean, however, that CAFA and Rule 23 are meaningless in light of *BMS*.  Rec. Doc. 21088 at 36.  Unlike here, the non-resident plaintiffs may have brought suit in the state of general jurisdiction or could have attempted to establish how their harms arise from a defendant's contacts in the forum state.  Moreover, many suits may be able to proceed as a class action—including through a class action settlement, *id.* at 36—if the defendant declines to challenge the relevant court's personal jurisdiction over certain claims.

Rec. Doc. 21088 at 35. But all it provides is a procedural device by which plaintiffs can join together claims. *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). That allows it to supplant state laws that otherwise regulate how a class action may proceed. *See id.* at 398-99, 406. But it does not supplant the federal rule—Rule 4—that tells courts where to look when determining personal jurisdiction, which, in the case of diversity, is a state's long-arm statute. Fed. R. Civ. P. 4(e); 4(k)(1)(A).[5]

Nor does the MDL statute authorize this Court to ignore limitations on personal jurisdiction. To the extent § 1407 alters the jurisdictional calculus at all, it is only to permit an MDL court to exercise personal jurisdiction over pre-trial matters it could not otherwise oversee. *In re DePuy Orthopaedics, Inc.*, 870 F.3d 345, 348 (5th Cir. 2017). Even then, the MDL court's "personal jurisdiction is derived from the transferor court." *In re WellNx Mktg. & Sales Practices Litig.*, No. 07-md-01861, 2010 WL 3652457, at *1 (D. Mass. Sept. 15, 2010); *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 767 F. Supp. 2d 649, 656 n.2 (E.D. La. 2011). And under § 1407, an MDL court's jurisdiction is subject to the same constraints the transferor court would face when addressing a diversity complaint filed in the transferor state. *In re Chinese Manufactured Drywall*, 767 F. Supp. 2d at 656 n.2; *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 163 (2d Cir. 1987). Following *BMS*, a reasonable jurist could conclude that

---

[5] The Court correctly notes that Congress has permitted federal courts to step outside of the strict confines of the state in which they sit given the presence of bulge jurisdiction. Rec. Doc. 21088 at 33-34. But even in *Jacobs v. Flight Extenders, Inc.*, 90 F.R.D. 676, 679 (E.D. Pa. 1981), the court recognized that when a federal court proceeds by using a state's long-arm jurisdiction, "it is … necessary to construe the territorial reach of that statute consistent with the due process limitations upon a state court's exercise of jurisdiction." And, even when using bulge jurisdiction, "the party served must … have minimum contacts with the forum state … or *the bulge area*." *See id.* There is no reason to believe that Rule 4 relaxes the relatedness inquiry.

a transferor court, and thus this Court as an MDL court, must dismiss the claims of non-resident plaintiffs.

## CONCLUSION

For the foregoing reasons, this Court should grant the Motion under 28 U.S.C. § 1292(b), expressly find that all three requirements are met under § 1292(b), and amend the Court's April 21, 2017 jurisdictional order to recertify the order for appeal.  This Court should do the same for its November 30, 2017 *BMS* order.

Dated: December 13, 2017

Respectfully submitted,

*/s/ L. Christopher Vejnoska*

L. Christopher Vejnoska (CA Bar No. 96082)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105
Tel: 415-773-5700
Email:   cvejnoska@orrick.com

Eric A. Shumsky (D.C. Bar No. 477926)
ORRICK, HERRINGTON & SUTCLIFFE LLP
Columbia Center
1152 15th Street NW
Washington, D.C. 20005
Tel: 202-339-8400
Email: eshumsky@orrick.com

James L. Stengel (NY Bar No. 1800556)
Xiang Wang (NY Bar No. 4311114)
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY, 10019
Tel:   212-506-5000
Email:  jstengel@orrick.com
            xiangwang@orrick.com

*Counsel for CNBM Co. Ltd., BNBM (Group) Co. Ltd., and BNBM PLC*

Ewell E. Eagan, Jr. (LA Bar No. 5239)
Donna Phillips Currault (LA Bar No. 19533)
GORDON, ARATA, MONTGOMERY,
BARNETT, MCCOLLAM, DUPLANTIS
& EAGAN, LLC
201 St. Charles Avenue, 40th Floor
New Orleans, LA 70170-4000
Tel: (504) 582-1111
Email: eeagan@gordonarata.com
        dcurrault@gordonarata.com

*Counsel for CNBM Co. Ltd.,*

Harry Rosenberg
LA Bar No. 11465
Phelps Dunbar LLP
365 Canal St., Suite 2000
New Orleans, LA  70130
Tel:  (504) 566-1311
Harry.Rosenberg@Phelps.com

*Counsel for BNBM (Group) Co. Ltd. and BNBM PLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing CNBM AND BNBM ENTITIES'
MEMORANDUM IN SUPPORT OF THEIR REWNED MOTION TO CERTIFY AN
IMMEDIATE APPEAL FROM THE COURT'S JURISDICTIONAL ORDERS and
accompanying documents have been served on Plaintiffs' Liaison Counsel, Russ Herman, and
Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail and upon all parties by
electronically uploading the same to File & Serve in accordance with Pre-Trial Order No. 6, and
that the foregoing was electronically filed with the Clerk of Court of the United States District
Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a
notice of electronic filing in accordance with the procedures established in MDL 2047, on
December 13, 2017.

/s/ *L. Christopher Vejnoska*

L. Christopher Vejnoska (CA Bar No. 96082)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105
Tel:  415-773-5700
Fax: 415-773-5759
Email: **cvejnoska@orrick.com**

*Counsel for Moving Defendants*

-18-