UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

William and Kelly Wayne, Plaintiff          MDL NO. 2047 SECTION: L

IN RE:                                      JUDGE FALLON
                                            MAG. JUDGE WILKINSON
CHINESE MANUFACTURED
DRYWALL PRODUCTS LIABILITY
LITIGATION

### IN RESPONSE TO KNAUF'S OPPOSITION TO WILLIAM AND KELLY WAYNE'S MOTION TO GRANT LUMP SUM PAYMENT

As they have enumerated, Knauf's opposition to our recovery hinges on three things – only one of which must be true to succeed:

1. Section 4.4 was not complied with

2. I must prove that the percentage of reactive Chinese Drywall in my home was greater than 90% Knauf to collect from section 4.3.1.1.

3. I must obtain a release for Knauf and the Other Releasees from the Mortgagee Regions Mortgage to make a claim against section 4.3.5.1.

I.      **Knauf's understanding of the Foreclosure clause is based on obsolete language.**

Working backwards, Knauf's objections 2 and 3 above can easily be dismissed upon a simple examination of the language in the current Settlement Agreement. My argument is and has always been that the percentage of Knauf drywall in the home is irrelevant to my recovery

TENDERED FOR FILING

JAN 2 – 2018

U.S. DISTRICT COURT
Eastern District of Louisiana
Deputy Clerk

under the foreclosure clause, and that I am not responsible for obtaining a release from my Mortgagee on behalf of Knauf. I would not have participated otherwise.

To see how Knauf could make these arguments, it is useful to determine the source of Knauf's confusion on this matter. This was easy to find and is straight-forward. The original Settlement Agreement's Foreclosure clause was as follows:

> 4.3.5. **Foreclosed Properties:** In the case of Foreclosed Properties:
>
> 4.3.5.1. For those Foreclosed Properties foreclosed upon prior to the Execution Date, (a) the Mortgagee shall be entitled to the benefits under Sections 4.3.1, 4.3.2 or 4.3.3, except for the Other Covered Expenses, but only if the Mortgagee became the Owner after foreclosure and remains the Owner of the Affected Property and the Mortgagee is a Class Member which filed a lawsuit by December 9, 2011; and (b) the Owner prior to the foreclosure shall be entitled to the Lump Sum Payment under Section 4.3.1.1, but not the Delay Period Payment under Section 4.3.1.2.
>
> 4.3.5.2. For those Foreclosed Properties foreclosed upon on or after the Execution Date, *any benefits under the Remediation Fund are contingent on the KPT Property Owner prior to foreclosure providing a release by the Mortgagee(s) or Lienholder(s) to the Knauf Defendants and Other Releasees.*

Please refer to section 4.3.5.2. (emphasis mine). Originally, properties that were foreclosed upon *on or after the Execution Date of the Settlement Agreement* were required to be full KPT Owners and were required to obtain a release from the Mortgagee just as Knauf

asserts, but with the additional caveat that the property was foreclosed upon on or after the execution of the Settlement Agreement. Section 4.3.5.1. made neither requirement of Owners prior to foreclosure.

The revised foreclosure section drops 4.3.5.2. altogether, and modifies 4.3.5.1. to include all Owners regardless of when their foreclosure took place, and relocates the release by the Mortgagee to subsection (a), which describes the requirements *for the Mortgagee* to participate in the MDL.

> 4.3.5. **Foreclosed Properties:**  In the case of Foreclosed Properties:
>
> > 4.3.5.1. For Foreclosed Properties, **(a) the Mortgagee shall be entitled to the benefits under Sections 4.3.1, 4.3.2 or 4.3.3, except for the Other Covered Expenses, but only if the Mortgagee became the Owner after foreclosure and remains the Owner of the Affected Property and the Mortgagee provides a release to the Knauf Defendants and Other Releasees**; and (b) the Owner prior to the foreclosure shall be entitled to the Lump Sum Payment under Section 4.3.1.1, but not the Delay Period Payment under Section 4.3.1.2

If the Settlement Agreement intended to limit recovery for Foreclosures to KPT owners who obtained a release of Knauf from the Mortgagee, the revised language should have said this in subsection (b) instead of deceptively relying on other language. The template for such requirements already existed, but was not reused.

Yet Knauf still *believes* that only KPT Owners have access to this recovery, and they still *believe* that a release from the Mortgagee is required for the Owner to recover more than five

years after the language to support these requirements was removed. Knauf, having agreed to the change in the language in 2012, is still attempting to impose the meaning of that language on the current incarnation of the agreement.

## II. Knaufs' assertions cannot be implied in the absence of specific language

In their attempt to justify their beliefs in the absence of this specific language, Knauf's confirmation bias prevents them from reading the current agreement correctly. Knauf says that it is the language in 4.3.1.1. that imposes the KPT requirement on 4.3.5.1. It should be noted that in all recovery options, every reference to a Property or an Owner are to KPT Properties and KPT Owners. As stated in the motion, if the language in the award was the arbiter of who has access when that recovery is granted externally to the award itself, Mixed Property Owners would be denied all recovery from the Remediation Fund regardless of how well qualified they are or what is stated in their recovery section. We know this not to be the case, as there are examples codified into the agreement that show how these awards are to be granted to mixed properties. This is done by calculating the award *as if the property was KPT*, then modifying that award, per the granting section, by the KPT %.

Why should access to an award be treated differently for foreclosures? This would be inconsistent and is illogical. The Foreclosure clause makes no KPT % modification to the award – it simply grants the value of the lump sum payment as if the property is KPT. Therefore, Knauf's assertion #2 fails.

Finally, in their attempt to apply the requirement that the Mortgagee sign a release before the owner can make a recovery, Knauf points to language in a separate subsection of the Foreclosure clause. The Foreclosure clause itself is constructed as follows:

*For Foreclosed Properties, (X); and (Y).*

The humble semi-colon makes it clear that, while statements X and Y are related, they are entirely independent clauses and should be evaluated separately from each other. The new requirement for a release resides entirely within statement X, and can only affect statement X and not Y due to their mutual exclusion. This section allows both X and Y to succeed, or either of them – neither is dependent on the other.

Knauf's attempt to apply the requirements for the release from the Mortgagee to the Owner fails, as its interpretation would also require the Mortgagee to participate in the MDL *and* satisfy all clauses in (a) before the Owner could recover from (b), but Knauf makes no such claims. A Mortgagee that does *not* retain the property, but *does* sign a release would therefore *still prevent recovery* by the owner given this interpretation. If it this was the intent, the foreclosure section would need to be re-written in such a manner:

*For Foreclosed Properties, (X), then (Y)*

but it is not so, therefore Knauf's assertion #3 fails.

    III.    **Section 4.4 and the presence of Knauf in my home**

Knauf does not challenge the fact that our home contained Knauf drywall because of the evidence on file – instead they correctly point out that it is impossible to determine the percentage of Knauf drywall in the home. Neither of these facts are in dispute. They also

correctly mention that we filed a claim against the Other Losses fund, but they fail to mention that this claim was granted because we met the burden of proof and a recovery was made – though I only accepted it after Brown Greer confirmed that said recovery did not affect my recovery from the Remediation Fund.

Regarding 4.4, as the physical proof *such as* photographic evidence and testing referenced by 4.4 have been submitted to the Settlement Administrator and was accepted, this condition of 4.4 was met. Although we were more than ready for an inspector to examine the property, as already stated, the property was unavailable if such a request was eventually made. Am I considered at fault for this untimeliness? Ultimately, as the purpose of the inspection was to determine the KPT % in the home, for the purposes of our recovery this specific discovery is irrelevant as I have just proven for the second time.

"Vague references" to a video I located of a walkthrough of my home that Knauf has long been aware of, and to the composition of the surrounding homes were not intended as a proof of KPT percentage, but as an additional assurance that Knauf products were installed in my former residence. Again, I would also like to reiterate that our home was also one of 300 selected for a pilot program in 2010. From our lawyer:

> *"There was a settlement agreement entered on October 14, 2010 in the multi-district litigation creating a pilot program "for the demonstration remediation of homes with KPT drywall." Your house was designated as one of 300 "eligible homes" to be remediated pursuant to the program. The problem is the agreement does not apply to any houses foreclosed upon or in foreclosure proceedings, which claims will be subject to additional negotiations. Thus it does not apply to you and Kelly."*

What were the requirements to be selected for this? What did Knauf know about our property then, that it was selected for such a program?

### IV. Conclusion

In conclusion, for Foreclosures, because of Knauf's deeply flawed interpretation of 4.3.5.1, the Settlement Agreement has decidedly *not* been followed correctly. Knauf has incorrectly imposed deprecated language onto the current agreement in an effort to stymie recovery for Foreclosed properties. As my Residential Owner status is not in question, and our satisfaction of section 4.4 was complete to the extent that was possible for a foreclosed property, not only should the motion be granted, but all individuals who were denied a claim on a Foreclosure because of this poor interpretation should be contacted immediately by the Settlement Administrator to have their cases re-evaluated for recovery. If further discussion on this matter is required, I am happy to make myself available at any time.

Dated: 12/29/2017

Respectfully Submitted,

William Wayne
Kelly Wayne
1007 Chippewa
Round Rock, TX 78665
(985) 276 - 0002

Certificate of Service
I hereby certify that I have served a copy of this document on all counsel for record either in person or by mailing it postage prepaid on this

29th day of December, 2017



Casino·Resort·Spa

Please note that this response may have been filed electrontally as early as 12-27-17 on my behalf. The contents should be identical, this hard copy was sent to ensure timeliness with the 12-29-17 deadline for submission.

– William Wayne
12-29-17

850 Bayview Avenue    Biloxi, MS 39530    888 WIN AT IP    www.ipbiloxi.com

Case 2:09-md-02047-EEF-MBN Document 21109 Filed 01/03/18 Page 9 of 9

**PRIORITY MAIL**

DATE OF DELIVERY SPECIFIED*
USPS TRACKING™ INCLUDED*
INSURANCE INCLUDED*
PICKUP AVAILABLE
* Domestic only

WHEN USED INTERNATIONALLY, A CUSTOMS DECLARATION LABEL MAY BE REQUIRED.

PS00001000060

Legal Flat Rate Envelope
EP14L February 2014
OD: 15 x 9.5



Overnight Priority

7017 0190 0000 5246 6428

CERTIFIED MAIL

U.S. POSTAGE PAID
SLIDELL, LA
70460
DEC 29, 17
AMOUNT
$13.05
R2304M115071-07

1006
70130

**PRIORITY MAIL**

FROM:
William & Kelly Wayne
1007 Chippewa
Round Rock, TX 78665

TO: Clerk's Office
US District Court
500 Poydras St
New Orleans, LA 70130

Label 228, July 2013

FOR DOMESTIC AND INTERNATIONAL USE

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE


UNITED STATES POSTAL SERVICE®

