**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

IN RE: CHINESE-MANUFACTURED
DRYWALL PRODUCTS LIABILITY
LITIGATION

MDL NO. 2047

SECTION: L

JUDGE FALLON
MAG. JUDGE WILKINSON

THIS DOCUMENT RELATES TO:
*ALL CASES*

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**THE PLAINTIFFS' STEERING COMMITTEE'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANTS' RENEWED MOTION TO CERTIFY AN
<u>IMMEDIATE APPEAL FROM THE COURT'S JURISDICTIONAL ORDERS</u>**

# **TABLE OF CONTENTS**

Table of Authorities ................................................................................................ii

I.      INTRODUCTION ..........................................................................................1

II.     PROCEDURAL BACKGROUND...................................................................5

III.    RELEVANT FACTUAL BACKGROUND.....................................................9

IV.     THE COURT SHOULD NOT PERMIT A SECOND APPEAL OF ITS
        ORIGINAL JURISDICTIONAL ORDER ..................................................15

        A.      The Fifth Circuit Denied Defendants' Petition for Leave to Appeal
                on the Merits ...................................................................................15

        B.      The Fifth Circuit's Decision Logically Flows from Defendants'
                Conduct in this Litigation ..............................................................17

V.      NEITHER THE COURT'S ORIGINAL JURISDICTION ORDER NOR
        ITS *BMS* ORDER WARRANT IMMEDIATE REVIEW.........................19

        A.      There Is No Controlling Question of Law .......................................22

        B.      There Is No Substantial Ground for Difference of Opinion ...........24

        C.      Immediate Appeal Will Delay, Not Materially Advance, the Ultimate
                Termination of the Litigation..........................................................26

VI.     CONCLUSION............................................................................................29

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Baltimore Contractors, Inc. v. Bodinger*,
    348 U.S. 176 (1955) ................................................................................................. 19

*Baranski v. Serhant*,
    602 F. Supp. 33 (N.D. Ill. 1985) .............................................................................. 5

*Brooks v. Farm Fresh, Inc.*,
    759 F. Supp. 1185 (E.D. Va. 1991) .......................................................................... 20

*Cardona v. General Motors Corp.*,
    939 F. Supp. 351 (D.N.J. 1996) ............................................................................... 20

*Consumer Fin. Prot. Bureau v. Frederick J. Hanna & Assoc., P.C*,
    165 F. Supp. 3d 1330 (N.D. Ga. 2015) .................................................................... 24

*Coopers & Lybrand v. Livesay*,
    437 U.S. 463 (1978) ................................................................................................. 20

*Couch v. Telescope, Inc.*,
    611 F.3d 629 (9th Cir. 2010) .................................................................................... 25

*David v. Signal Intern., LLC*,
    37 F. Supp. 3d 836 ........................................................................................... 21, 27

*Fannin v. CSX Transp., Inc.*,
    1989 WL 42583 (4th Cir. 1989) ............................................................................... 20

*General Electric Company v. Mitsubishi Heavy Industries, Ltd.*,
    2012 WL 12985134 (N.D. Tex. Feb. 7, 2012) ......................................................... 21

*Georgia State Conf. of the NAACP v. Fayette Cty. Bd. of Commissioners*,
    952 F.Supp.2d 1360 (N.D.Ga.2013) ........................................................................ 24

*Harch Hyperbarics, Inc. v. Martinucci*, No. Civ. A.,
    2010 WL 4665923 (E.D. La. Nov. 9, 2010) ............................................................ 21

*Henderson v. GATX Corp.*,
    2012 WL 1191141 (M.D. Fla. Apr. 10, 2012) ......................................................... 19

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
    742 F.3d 576 (5th Cir. 2014)................................................................. 1

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
    753 F.3d 521 (5th Cir. 2014)................................................................. 2

*In re Flor*,
    79 F.3d 281 (2d Cir.1996)..................................................................... 25

*In re Scientific–Atlanta, Inc. Securities Litigation*,
    2003 WL 25740734 (N.D. Ga. Apr. 15, 2003) ..................................... 24, 25

*Long Island Lighting Co. v. Transamerica Delaval, Inc.*,
    648 F. Supp. 988 (S.D.N.Y. 1986) ....................................................... 27

*Matthews v. Stolier*,
    2016 WL 9447195 (E.D. La. July 19, 2016)......................................... 27

*McFarlin v. Conseco Serv., LLC*,
    381 F.3d 1251 (11th Cir.2004).............................................................. 25

*Monroe v. Cessna Aircraft Co.*,
    2006 WL 1305116 (E.D. Tex. May 9, 2006) ........................................ 4

*Muller v. Temura Shipping Co.*,
    629 F. Supp. 1024 (E.D. Pa. 1986) ...................................................... 28

*Pelletier v. Fed. Home Loan Bank of San Francisco*,
    968 F.2d 865 (9th Cir. 1992)................................................................. 17

*Roussell v. Brinker Int'l, Inc.*,
    2009 WL 595978 (S.D. Tex. Mar. 6, 2009) .......................................... 27

*Ryan v. Flowserve Corp.*,
    444 F.Supp.2d 718 (N.D. Tex.2006)..................................................... 24

*Scuderi v. Cushion Cut, Inc.*,
    1992 WL 180129 (E.D. La. July 21, 1992)............................................ 28

*SEC v. Credit Bancorp, Ltd.*,
    103 F. Supp. 2d 223 (S.D.N.Y. 2000) .................................................. 21

*Seiferth v. Helicopteros Atuneros, Inc.*,
    472 F.3d 266 (5th Cir. 2006)................................................................. 26

*Speizman Knitting Mach. Co. v. Terrot Strickmaschinen GmBH*,
  505 F. Supp. 200 (D.N.C.1981) .......................................................... 20

*State of N.C. ex rel. Long v. Alexander & Alexander Servs., Inc.*,
  685 F. Supp. 114 (E.D.N.C. 1988) ...................................................... 28

*Switzerland Cheese Association, Inc. v. Horne's Market, Inc.*,
  385 U.S. 23 (1966) ............................................................................. 19

*Tidewater Oil Co. v. United States*,
  409 U.S. 151 (1972) ........................................................................... 20

*United States v. Hollywood Motor Car Co.*,
  458 U.S. 263 (1982) ........................................................................... 20

## **Statutes**

28 U.S.C. § 1291 ...................................................................................... 19

28 U.S.C. § 1292(a) ................................................................................. 19

28 U.S.C. § 1292(b) ........................................................................... passim

## **Other Authorities**

16 Wright & Miller, Federal Practice and Procedure, § 3930 ................................. 5, 21

## I.   __INTRODUCTION__

There can be little doubt that the newest request by Defendants[1] to certify the Court's

Jurisdictional Orders[2] for immediate appeal[3] would significantly delay the ultimate resolution of

this litigation that has been pending for almost nine years.   A piecemeal appeal at this juncture of

this Court's rulings on personal jurisdiction, single business enterprise, and agency relationships

would render meaningless the hard-fought efforts that have been made by the Court-appointed

Plaintiffs' Steering Committee ("PSC") to put thousands of Taishan Chinese drywall cases on a

direct track for adjudication.   It is well documented that Defendants have employed multiple

tactics throughout the history of these proceedings to delay and avoid any judgments for the

thousands of Plaintiffs with Taishan and BNBM Chinese drywall in their homes.[4]   As the Court

has witnessed through Defendants' multiple prior appeals of this Court's previous jurisdictional

rulings, an appeal to the Fifth Circuit will take well over a year to resolve.[5]   In the meantime,

---

[1] "Defendants" refers to:  China National Building Materials Company ("CNBM"), Beijing New Building Material (Group) Co., Ltd. ("BNBM Group"), Beijing New Building Materials Public Limited Company ("BNBM") (collectively, "CNBM-BNBM"); and Taishan Gypsum Co., Ltd. and its wholly-owned subsidiary Tai'an Taishan Plasterboard Co., Ltd. (collectively, "Taishan").

[2] The two Orders at issue here are the Court's April 21, 2017 Order and Reasons (the "Original Jurisdiction Order") [Rec. Doc. 20739] and the Court's November 30, 2017 Order and Reasons (the "*BMS* Order") [Rec. Doc. 21088].

[3] *See* CNBM-BNBM Renewed Motion to Certify and Immediate Appeal from the Court's Jurisdictional Orders ("1292(b) Motion") [Rec. Doc. 21095] and Taishan's Notice of Joinder to CNBM-BNBM Motion to Certify Immediate Appeal of November 30, 2017 Order [Rec. Doc. 21096].  Taishan did not join in the portion of the CNBM-BNBM 1292(b) Motion as it related to the Court's Original Jurisdictional Order because they were not a movant in the CNBM-BNBM motions to dismiss for lack of personal jurisdiction [Rec. Doc. 19527, Rec. Doc. 19646, Rec. Doc. 19663, and Rec. Doc. 19664].

[4] *See, e.g.*, Rec. Doc. 21108 at 17 ("delay tactics have permeated every aspect of Defendants' litigation strategy").

[5] *Compare* Rec. Doc. 13490 (filed 4/2/12) with *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 742 F.3d 576 (5th Cir. 2014) (decided 1/28/14, nearly 22 months later); *compare also* Rec. Doc. 13590

2,975 *Amorin* class Plaintiffs will still be waiting for a judgment on their claims for remediation damages and another 1,000 *Brooke* actions will be interminably stalled.[6]  If Defendants' 1292(b) Motion is granted, the efforts to develop an End Game strategy to resolve this litigation anytime in the next several years will have been for naught.

The PSC has provided the Court and Defendants with evidence of product identification, verified "under air" square footage, ownership interests, and costs of remediation using 2017 RSMeans data, adjusted for local factors according to Plaintiffs' expert Ronald E. Wright, for each of the Affected Properties in *Amorin* and *Brooke*.[7]  Defendants have yet to file any contests to this evidence.  As their behavior has consistently exhibited, Defendants would be more than happy to allow this litigation to flounder, hoping to run out the clock on the thousands of homeowners who have been deprived of their day in court for the past nine years.  Defendants have played every game in the book – fleeing the jurisdiction, reentering the litigation, relitigating every previously-decided issue, etc. – not in the hopes of winning on the merits but merely to deprive homeowners of their day in court.  The present 1292(b) Jurisdiction Motion is yet another attempt to slow the resolution of this case as here we are, nine years after the start of

(filed 4/6/12) with *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 753 F.3d 521 (5th Cir. 2014) (decided 5/20/14, over 2 years later).

[6] In this litigation, there are two main class actions pending in the MDL – (1) *Amorin* (which is a certified class of (a) all Plaintiffs named on an Omni complaint as of the date *Amorin* was filed directly in the MDL, (b) all Plaintiffs named in identical *Amorin* complaints filed in Florida and Virginia federal district courts and transferred to the MDL, (c) all Plaintiffs in *Germano* (filed in E.D. Va. and transferred to the MDL), (d) all Plaintiffs in *Wiltz* (filed directly in the MDL), and (e) all Plaintiffs in *Gross* (filed directly in the MDL)); and (2) *Brooke* (which consists of identical putative class actions filed directly in the MDL, Florida, and Virginia, all of which include additional named Plaintiffs with claims against the Defendants, filed subsequent to the filing of *Amorin*).

[7] *See* Rec. Doc. 20912; Rec. Doc. 20952.

this litigation, still litigating the very threshold issue of jurisdiction.  Unfortunately for

Defendants, a path toward resolution of all of Plaintiffs' claims is now clear, and the time has

passed for piecemeal appeals.

Defendants are, of course, content to claim that the Court need not put any thought into

certifying its April 21, 2017 Jurisdiction Order for interlocutory appeal, since it had already

decided the jurisdictional issues presented therein warranted 1292(b) certification.  Putting aside

Defendants' inaccurate characterizations of the process that led to the Fifth Circuit's denial of

their prior 1292(b) Petition for appeal, Defendants ignore that much has changed in this litigation

over the past four months.  On August 23, 2017, the PSC submitted an End Game proposal that

would permit Plaintiffs' cases to be expeditiously resolved – *i.e.*, prioritizing the calculation of

remediation damages for the *Amorin* class members and remanding the *Brooke* cases to the

appropriate transferor courts where those actions can proceed to trial.[8]  In contrast, Defendants'

End Game proposal posits that, with respect to the *Amorin* class, the litigation cannot move

forward until a final determination on jurisdiction has been made; and they mistakenly suggest

that this Court should soon remand the *Brooke* actions, ignoring that the Court would be unable

to do so while a jurisdictional appeal was pending in the Fifth Circuit.[9]  Hence, certification of

---

[8] *See* End Game Proposal of the PSC [Rec. Doc. 20913] and Supplement thereto [Rec. Doc. 20937] (collectively, "PSC End Game"); Defendants' MDL Issues List ("Defendants' End Game") [Rec. Doc. 20923].

[9] *See* Defendants' End Game, Rec. Doc. 20923, at 2-3 (proceeding with *Amorin* action must await the Court's ruling on jurisdiction), at 4 (discussing *Brooke*).

the Jurisdictional Orders for interlocutory review would grind this litigation to a halt, notwithstanding Defendants' decision not to request a stay.[10]

As set forth below, neither the Court's Original Jurisdiction Order nor its *BMS* Order meets the standards of certification under Section 1292(b) for three discrete reasons – (1) there is no controlling question of law at issue, (2) there is no substantial grounds for difference of opinion as to any issues remaining in the Jurisdictional Orders, and (3) resolution of any interlocutory appeal will not materially advance the ultimate termination of the litigation.  In the case of Taishan, seeking only to appeal the Court's *BMS* Order, there is no reason to permit an appeal of this Order since, as both sides have agreed, the Supreme Court expressly stated, and this Court reaffirmed, <u>*BMS* did not change the law that was applied when this Court decided Defendants' jurisdictional motions and the Fifth Circuit previously decided Taishan's motions to dismiss for lack of jurisdiction</u>.[11]  There is simply no reason for Taishan to get an impermissible additional bite at the apple.  It is also why CNBM-BNMB should not be permitted an imprudent interlocutory appeal of the *BMS* Order.

Denying certification under Section 1292(b) is particularly appropriate when, as here, the case has been ongoing for a lengthy period of time and is nearing resolution.  *See Monroe v.*

---

[10] Defendants' suggestion that there will not be a delay because they will not seek a stay misses the point. *See* Rec. Doc. 20779-1 at 2 (Defendants' initial 1292(b) motion related to the Court's Original Jurisdiction Order stating that they are not seeking a stay to avoid delay); Rec. Doc. 21095-1 at 1 (stating that "as before," they do not seek a stay).  Remand of the *Brooke* cases while an appeal is pending in the Fifth Circuit, if possible at all, would create numerous practical difficulties and muddy the waters with respect to the applicability of the Fifth Circuit's rulings to cases that have been remanded back to transferor courts in other Circuits such as the Fourth Circuit and Eleventh Circuit.

[11] *See BMS* Order, Rec. Doc. 21088, at 22 (noting that the Supreme Court made clear in *BMS* that it was applying the settled law that was applied by this Court and the Fifth Circuit); *see also* Rec Doc. 20997 at 2; Rec. Doc. 20955 at 1; Rec. Doc. 21031 at 1-2.

*Cessna Aircraft Co.*, No. 05-cv-0250, 2006 WL 1305116, at *2-3 (E.D. Tex. May 9, 2006) (stating that with trial approaching, "a certification of appeal to the Fifth Circuit would not materially advance the ultimate termination of this litigation.  Instead, an interlocutory appeal would likely delay the time required to bring the suit to its ultimate termination while increasing the parties' expenses); *see also Baranski v. Serhant*, 602 F. Supp. 33, 36 (N.D. Ill. 1985) (citing 16 Wright & Miller, Federal Practice and Procedure, § 3930 (3d ed.)).  For these reasons, along with the additional reasons set forth herein, Defendants cannot sustain their burden of establishing that interlocutory appeal of the Court's Jurisdictional Orders is justified, and their request for certification of those orders under Section 1292(b) should be denied.

## II.   PROCEDURAL BACKGROUND

The procedural background relevant to the specific 1292(b) Motion before the Court dates back to the fall of 2015.[12]  In September and October of 2015, the CNBM-BNBM Defendants filed numerous motions to dismiss for lack of personal jurisdiction.[13]  On February 25, 2016, the Court held a hearing on those motions and on April 21, 2017, the Court issued the Original Jurisdiction Order finding that jurisdiction over BNBM was proper under Florida law; finding that Taishan was an agent of BNBM under Virginia law and Florida law, permitting Taishan's jurisdictional contacts to be imputed to BNBM; and finding that under Louisiana law, Taishan, BNBM, BNBM Group, and CNBM formed a single business enterprise, permitting

---

[12] The Court is well aware of the lengthy procedural history that preceded these motions including Taishan's decision to flee the jurisdiction through the extensive jurisdictional discovery.  This history is described in detail in the Court's Original Jurisdiction Order [Rec. Doc. 20739] at 4-11, and the *BMS* Order [Rec. Doc. 21088] at 4-11.

[13] Rec. Doc. 19527; Rec. Doc. 19646; Rec. Doc. 19663; Rec. Doc. 19664.

Taishan's jurisdictional contacts to be imputed to those entities.[14]  On May 22, 2017, the CNBM-BNBM Defendants filed a Motion Pursuant to 28 U.S.C. § 1292(b) to Certify Immediate Appeals from the Court's Jurisdictional Order.[15]

On August 1, 2017, the CNBM-CNBM Defendants filed a Supplemental Motion on Jurisdiction and Class Certification Following *BMS* ("Supplemental Jurisdictional Motion") and Taishan eventually joined in that motion.[16]  A few days later, on August 4, 2017, the Court granted the CNBM-BNBM Defendants' Initial 1292(b) Motion thereby certifying an interlocutory appeal to the Fifth Circuit on the Court's Original Jurisdiction Order.[17]  On August 14, 2017, having received the 1292(b) certification from this Court, the CNBM-BNBM Defendants filed a Petition for permission to appeal pursuant to Section 1292(b) in the Fifth Circuit.[18]  In that Petition, the CNBM-BNBM Defendants argued that *BMS* impacted on the questions raised in the appeal, but they failed to mention that they had filed their Supplemental Jurisdictional Motion in this Court two weeks earlier.[19]  Realizing the overlapping issues simultaneously being briefed in two courts, the PSC filed an Emergency Motion to Vacate the Court's August 4, 2017 Order Granting Defendants' Motion to Certify Immediate Appeal from

---

[14] Rec. Doc. 20739.

[15] Rec. Doc. 20779.

[16] Rec. Doc. 20882; Taishan's Reply Brief in Support of the Supplemental Jurisdictional Motion [Rec. Doc. 20955-2].

[17] Rec. Doc. 20890.

[18] Rec. Doc. 20898-2.

[19] *See id*. at 22, 24-25.

the Court's Jurisdictional Order ("Motion to Vacate") on August 17, 2017.[20]  The Motion to

Vacate was granted on August 24, 2017.[21]

The very next day, on August 25, 2017, the PSC was required to respond to the CNBM-

BNBM Defendants' Petition in the Fifth Circuit and in that response, notified the Fifth Circuit

that this Court had vacated its prior order certifying the Original Jurisdiction Order for

interlocutory appeal.[22]  On that same day, Defendants sent a letter informing the Fifth Circuit

that the Court's prior certification order had been vacated and noting that they would "soon be

filing an objection and motion for reconsideration with the district court."[23]  On September 1,

2017, the Fifth Circuit entered the following order on its docket:

> COURT ORDER denying opposed motion for leave to appeal
> from the interlocutory order of the United States District Court of
> the Eastern District of Louisiana, New Orleans, entered on August
> 4, 2017, filed by Petitioners China National Building Materials
> Company, Limited, Beijing New Building Materials Public
> Limited Company and Beijing New Building Material Group
> Company Limited [8568810-2]. Judge: JLD, Judge: LHS, Judge:
> SAH. [17-90027] (DLJ).[24]

Over the course of the next two months, the parties filed ten additional briefs on *BMS*-

related issues,[25] and Defendants filed additional papers with respect to purported "supplemental

---

[20] Rec. Doc. 20898.

[21] Rec. Doc. 20927.

[22] *See* No. 17-90027 (5th Cir.), Doc. No. 00514132741, at 6.

[23] *See* No. 17-90027 (5th Cir.), Doc. No. 00514132912, at 3.

[24] *See* No. 17-90027 (5th Cir.), Doc. No. 00514141003.

[25] *See* CNBM-BNBM Defendants' Objection to the Court's Order Vacating its § 1292(b) Certification and Request for Expedited Resolution of *BMS* Motion [Rec. Doc. 20943]; PSC's Response to the CNBM-BNBM Objection [Rec. Doc. 20944]; CNBM-BNBM Defendants' Reply Brief in Further Support of their Supplemental Jurisdictional Motion [Rec. Doc. 20956-2]; Taishan's Reply Brief in Support of the

authority" related to the *BMS* briefing.[26]   On November 30, 2017, the Court denied Defendants'

Supplemental Jurisdictional Motion[27] and on December 13, 2017, Defendants filed the 1292(b)

Motion at issue here.[28]

In the midst of the ongoing supplemental jurisdictional briefing, the Court continued its

efforts to push the litigation forward by ordering End Game proposals from the parties, noting

that "attorneys are problem solvers" and "[a]t this level we have the best problem solvers in the

country to focus on [a resolution of] this particular litigation."[29]   Defendants and the PSC

submitted their End Game proposals for the two tracks of litigation – one for dealing with the

"*Amorin* actions" and one for dealing with the "*Brooke* actions."[30]   As part of their End Game

proposal with respect to the *Amorin* actions, Defendants contend that the PSC cannot proceed to

the damages award phase until *BMS*-issues are resolved because they are predicated on there

being a certifiable class.[31]   With respect to the *Brooke* actions, the CNBM-BNBM Defendants

---

Supplemental Jurisdictional Motion [Rec. Doc. 20955-2]; CNBM-BNBM Defendants' Supplemental Brief Addressing *In re Depuy Orthopaedics, Inc*. [Rec. Doc. 20997]; Taishan's Supplemental Brief in Support of the Supplemental Jurisdictional Motion [Rec. Doc. 20996]; PSC's Supplemental Memorandum Addressing *In re Depuy Orthopaedics, Inc.* [Rec. Doc. 21000]; PSC's Second Supplemental Memorandum in Further Opposition to Defendants' Supplemental Jurisdictional Motion [Rec. Doc. 21031]; Defendant CNBM-BNBM's Supplemental Brief Addressing the Difference, if any, Between a Mass Action and a Class Action in Which Every Member Is a Named Plaintiff [Rec. Doc. 21038]; Taishan's Supplemental Brief on Mass Tort and Class Actions in Support of Defendants' Supplemental Jurisdictional Motion [Rec. Doc. 21036].

[26] Rec. Doc. 21070; Rec. Doc. 21076.

[27] *BMS* Order, Rec. Doc. 21088.

[28] Rec. Doc. 21095 and 21096.

[29] *See* Tr., 6/27/2017, at 3.

[30] Rec. Doc. 20923; Rec. Doc. 20913.

[31] *Id*. at 3-4.

urge the Court to remand the actions back to the transferor courts as soon as the PSC files "the required Notice of Completion and Master Complaint" (referring to PTOs 1G and 1H).[32]  In so doing, Defendants ignore that such a remand would be implausible while an appeal on jurisdictional issues was pending in the Fifth Circuit.

III.   **RELEVANT FACTUAL BACKGROUND**

      After extensive briefing and presentation of substantial factual evidence by the parties, this Court, in its Original Jurisdiction Order, found that there is jurisdiction over BNBM directly under Florida law based on BNBM's sales of its drywall to American customers.  Further, Taishan is an agent of BNBM under Florida law and Virginia law for jurisdictional purposes.[33] The Court also found that Taishan, BNBM, BNBM Group, and CNBM formed a single business enterprise under Louisiana law.[34]  "These entities were led and controlled by [CNBM Group], who ensured each of the entities under it were working to maximize the profits of CNBM Group."[35]  This logical and well-considered conclusion was reached by the Court not only after an exhaustive view of the record but also as a participant and overseer of extensive jurisdictional discovery.  The facts here lead to one conclusion and that is the conclusion reached by this Court.

---

[32] *Id*. at 4.

[33] Rec. Doc. 20739 at 64, 69.

[34] *Id*. at 79.

[35] *Id*. at 78.

Without wasting time on a voluminous recitation of every fact that supports the Court's conclusion, a few key facts may be helpful to set the scene for consideration of the 1292(b) Motion.  Beginning in 2009, the PSC filed a series of Chinese drywall class actions originating from the jurisdictions of Virginia, Louisiana, and Florida on behalf of the thousands of homeowners, commercial property owners and tenants from those jurisdictions and elsewhere having claims for damages against Defendants.[36]  Generally, the Defendants asserted in their motions to dismiss that personal jurisdiction is lacking because either they had nothing to do with the sales of the Chinese drywall or they did not target any particular forum state to sell the defective drywall that is the subject of Plaintiffs' claims.  Against these contentions, Plaintiffs presented substantial evidence that these foreign corporate entities acted as a single business enterprise, in unison with Taishan (which is unquestionably subject to this Court's jurisdiction)[37], to sell their Chinese drywall to U.S. customers.

By way of example, *just some* of the facts that support the Findings of Fact and Conclusions of Law that Defendants operate as a single business enterprise with Taishan under Louisiana law and that BNBM is Taishan's agent under Florida law and Virginia law include the following:

---

[36] *See, e.g.*, *Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al.*, No. 10-361 (E.D. La.) (Omni II, II(A), II(B), II(C)); *Gross, et al. v. Knauf Gips, KG, et al.*, No. 09-6690 (E.D. La.) (original complaint, Omni III, III(A)); *Abel, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, No. 11-080 (E.D. La.) (Omni VII); *Haya, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.*, No. 11-1077 (E.D. La.) (Omni IX); *Almeroth, et al., v. Taishan Gypsum Co., Ltd., et al.*, No. 12-0498 (Omni XIII); *Amorin, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, No. 11-1672 (Omni XV); *Amorin, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, No. 11-1395 (Omni XVI); *Amorin, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, No. 11-1673 (Omni XVII); *Amorin, et al. v. The State-Owned Assets Supervision and Administration Commission of the State Council, et al.*, No. 14-1727 (Omni XIX); *Brooke, et al. v. The State-Owned Assets Supervision and Administration Commission of the State Council, et al.*, No. 15-4127 (Omni XX, XX(a)).

[37] *Chinese Drywall*, 742 F.3d 576; *Chinese Drywall*, 753 F.3d 521.

- "Under Hong Kong Stock Exchange ("HKSE") Rules, CNBM Group is a "Close Associate" of CNBM, which in turn is a "Close Associate" of BNBM, which is a "Close Associate" of Taishan, meaning that each company is able to 'exercise or control the exercise of 30% . . . or more of the voting power at general meetings, or to control the composition of a majority of the board of directors and any subsidiary of those other company.'"[38]

- "Further, under HKSE Rules, CNBM Group is the "Controlling Shareholder" of CNBM; CNBM is a "Substantial Shareholder" of BNBM and BNBM is a "Substantial Shareholder" of Taishan. Controlling Shareholder is defined as "any shareholder…entitled to exercise, or control the exercise of 30%...or more of the voting power at general meetings of a new applicant or who is in a position to control the composition of a majority of the board of directors of the new applicant."[39] Substantial Shareholder is defined as "a person…who is entitled to exercise, or control the exercise of, 10% or more of the voting power at any general meeting of the company…"[40]

- In March and April 2005, BNBM entered an agreement to purchase 42% of the registered capital of Taishan; in 2006 BNBM acquired an additional 23% equity interest in Taishan through the purchase of one of Taishan's shareholders.[41]

- BNBM and Taishan shared the same external auditing firm between 2006 and 2010. Also, Taishan was required to submit monthly, quarterly, and yearly budget plans and financial reports to BNBM. Notably, however, Chinese accounting and exchange rules require BNBM to consolidate its financial reporting with Taishan, because it holds a majority of Taishan's stock.[42]

- BNBM guarantees loans that Taishan receives from third-party banks, BNBM approves all of Taishan's loan increases.[43]

---

[38] Rec. Doc. 20739 at 18 (citing Keyes Dep. at 39:2-21 [MTD Ex. 40]; HKSE Rules, Chapter 1 [MTD Ex. 42]). Exhibits to the PSC's Omnibus Response in Opposition to Defendants' Motions to Dismiss for Lack of Jurisdiction [see Rec. Doc. 20036] are herein referenced as "MTD Ex. [___]."

[39] *Id*. at 19 n.8 (citing Keyes Dep. at 48:16-19; 74:13-79:20; HKSE Rules, Sec. 19A.14).

[40] *Id*. at 19 n.9.

[41] *Id*. at 19-20 (citing March 19, 2005 Share Subscription Agreement [MTD Ex. 126]; Song Dep. at 51:20-52:2 [MTD Ex. 36]).

[42] *Id*. at 21-22 (citing Accounting Standards No. 33 at Art. 47 [BNBM Ex. 47]).

[43] *Id*. at 22 (citing Chen Dep. at 363:18-23 [MTD Ex. 77]).

- BNBM exercises a high degree of control over Taishan's operational management – Taishan must seek approval from BNBM regarding significant capital expenditures.[44]

- "With regard to Taishan's financial statements, BNBM's relevant departments will 'conduct analyses and researches (sic), so as to timely grasp the production and operation situation and financial situation and to raise relevant disposal opinions at proper timing, to ensure profit realization and risk control of the equity investments.'"[45]

- Taishan had to seek BNBM's approval regarding the design, quality, technology, and processes of drywall production.[46]

- BNBM Directors and Officers have maintained voting control over Taishan's Board of Directors since 2005.  Seven BNBM directors/officers have served in concurrent positions at Taishan.[47]

- "From 2005 to 2012, Jia Tongchun held concurrent positions at Taishan and BNBM while also owning 5% of Taishan. He was appointed Chairman of Taishan's Board of Directors and General Manager of Taishan in 2002; and, from 2005-2012, he served as Deputy General Manager of BNBM; and, from 2006 to 2012, he served as a Director on BNBM's Board of Directors. . .  Holding these dual roles while owning 5% stock in Taishan was flagged as an issue in a 2012 SASAC-sponsored audit of BNBM."[48]

- Taishan's parent company BNBM, which now owns 100% of Taishan,[49] with assistance from BNBM Group, targeted customers in Florida and other

---

[44] *Id.*

[45] *Id.* at 23 (quoting 10/16/2007 Special Inspection Report).

[46] *Id.* (citing 4/15/2006 Taishan Board of Directors Resolutions (requiring shareholder [BNBM] approval of gypsum board factory construction projects with specifications for production)).

[47] *Id.* at 24 (citing 4/23/07 BNBM Reply on Inquiry Letter about 2006 Annual Report Verification; Summary Chart of Overlapping Executives and Officers [MTD Ex. 1]).

[48] *Id.* at 26 (citing 2011 BNBM Annual Report at 12; 2012 BNBM Annual Report at 52; Jia Dep. at 745:18-746:9 [MTD Ex. 105]).

[49] Rec. Doc. 20585; Public Announcement Regarding Completion of Transfer of Underlying Assets of Asset Acquisition by Stock Issue and Related-party Transaction [BNBMPLC0010439-10444] [Rec. Doc. 20585-42].

Southeastern States for the sales and distribution of "Dragon" brand and BNBM gypsum board manufactured by BNBM.  In fact, in 2006, the BNBM Entities exported and sold over 68 million square feet of BNBM's Chinese drywall to the U.S.,[50] with the knowledge and expectation that the drywall would be installed in people's homes.

- On May 8, 2009, Taishan was served with the first of hundreds of lawsuits complaining of defects with Taishan's Chinese-manufactured drywall.  Three days later, Taishan compiled for its leaders at CNBM Group an "Informational Report on the Class Actions Brought by the U.S. Parties Against Taishan Gypsum Company Limited" "so that the leaders can understand the facts of the case and give relevant instructions."[51]  "Taishan reported that '[it] is not inclined to respond to the lawsuit' and asked Chiefs Song and Cao for instructions and approval as to whether such inaction was appropriate.  Taishan further proposed that "when necessary, it will provide documents that are beneficial to Taishan Company to the court that accepted the case."[52]

- On June 3, 2010 Chairman Song agreed that CNBM Group should organize the responses to litigation in order to promote "the position that [their] products do not have any problems."[53]  On the same day Chiefs Cao and Zhang Jian of CNBM Group, Chang Zanghli of CNBM, Yu Chen of BNBM, Jia Tongchun of Taishan, and attorney Dong Chungang and determined that Chairman Song would organize the response to the litigation, CNBM Group's Board of Directors would decide the direction of the litigation and Taishan should retain Hogan Lovells.[54]

- At a July 11, 2014 CNBM Group signed a unanimous resolution (11-0) authorizing Taishan's decision not to attend the Court-ordered Judgment Debtor Examination on July 17, 2014.  "CNBM Group's Chairman Song stated that the Board of Directors unanimously resolved to 'respect' the decision for Taishan not to appear before [the] Court, but he disclaimed any 'support' for the decision."[55]

---

[50] *See* Rec. Doc. 20739 at 31 (citing BNBM "Statistical Spreadsheet of Gypsum Boards Exported to the U.S. in the Year 2006 by the International Business Department" [MTD Ex. 143]).

[51] *Id*. at 32 (citing Informational Report on the Class Actions Brought by the U.S. Parties Against Taishan Gypsum Company Limited [MTD Ex. 3]).

[52] *Id*.

[53] *Id*. at 33 (citing Course of Events on Hiring Foreign Law Firms [MTD Ex. 186]).

[54] *Id*. (citing Course of Events on Hiring Foreign Law Firms [MTD Ex. 186]).

[55] *Id*. at 35 (citing Notice of 17th Meeting; CNBM Group Resolution No. 17).

13

These documented facts support the Court's findings on the imputation doctrines contested by Defendants.

Similarly, there has never been any real dispute that the facts of this case render the Supreme Court's ruling in *BMS* of little importance to the jurisdictional issues present here. Unlike in *BMS*, there are links in this case between, on the one hand, Defendants' contacts with Louisiana, Florida, and Virginia and their targeting of these jurisdictions for sales of drywall manufactured by Taishan and BNBM; and on the other hand, the claims of Plaintiffs with properties in states contiguous to or in close proximity with Louisiana, Florida, and Virginia. For example, Taishan and BNBM made numerous shipments, containing millions of square feet of their drywall, to distributors in Florida, and then the drywall flowed from the Florida distributors to homebuilders, installers, and eventually homeowners in Georgia, Alabama, etc. Those homeowners' claims directly arise from and relate to Defendants' contacts with and targeting of Florida for sales of their products. Likewise, Defendants' sales of drywall to distributors in Louisiana ended up in homes in Alabama and Texas, so that the claims of Plaintiffs with properties in those states arise from and relate to Defendants' contacts with Louisiana.[56] Moreover, in addition to the documented sales of almost 19 million square feet of Taishan drywall in Virginia, Florida, and Louisiana, Plaintiffs have put into this record evidence

---

[56] Those connections are precisely the type that the Supreme Court discussed in *BMS*. There, the Court noted that the fact "BMS conducted research in California on matters unrelated to Plavix" was neither "sufficient" nor "relevant." 136 S. Ct. at 1781. Instead, "[w]hat is needed—and what is missing here—is a connection between the forum and the specific claims at issue." *Id.* Sales to distributors in Florida and Louisiana that ended up in the homes of Plaintiffs from other states provides exactly what the Court said "is needed."

of additional sales of more than 68 million square feet of Taishan drywall to customers in California, New York, North Carolina, and, according to Defendants' records, other States "unknown."[57]

These jurisdictional facts were all part of the record when the Court decided the prior jurisdictional motions and are discussed again by the Court in the *BMS* Order.[58]  This Court and the Fifth Circuit have consistently understood these facts and that is why both have consistently found that the claims of the nonresident plaintiffs satisfy the "arise out of" or "relate to" prong of the personal jurisdiction analysis in a way that is vastly different from the facts in *BMS*.[59]

## IV.   THE COURT SHOULD NOT PERMIT A SECOND APPEAL OF ITS ORIGINAL JURISDICTIONAL ORDER

### A.   The Fifth Circuit Denied Defendants' Petition for Leave to Appeal on the Merits

Defendants forcefully push two related and misguided ideas with respect to what they term a "renewed" 1292(b) motion: (1) there was an understanding by the PSC that Defendants would be permitted without question to file another interlocutory appeal after the *BMS* issues

---

[57] *See* Chart of Sales of Taishan Gypsum Board, Ex. 1, as revised, to Affidavit of Russ M. Herman dated 5/8/2012, filed in opposition to Taishan's jurisdictional motions in *Germano*, *Mitchell*, *Gross*, and *Wiltz* [Rec. Doc. 14843-3].

[58] *See, e.g.*, Rec. Doc. 21088 at 16-20; PSC's Global Statement of Facts in Opposition to: (1) Taishan's Renewed Motions to Vacate the Default Judgments and Dismiss the Complaints in *Germano* and *Mitchell* and (2) Taishan's Motions to Dismiss the Complaints in Gross and Wiltz, at pp. 30 through 50, and Affidavit of Russ M. Herman dated 5/8/2012, attaching 202 Exhibits, filed manually [Rec. Doc. 14215].

[59] Defendants seem confused by the PSC's recitation of the stream-of-commerce jurisprudence in the PSC's Opposition because it is related to the purposeful availment prong of the specific jurisdiction analysis.  *See* CNBM-BNBM *BMS* Reply at 13 n.14.  However, the "stream" here is relevant to the "arise out of" or "relate to" prong as well because, as illustrated above, the drywall flowed through the forum state to the Plaintiff homeowners thereby providing a link between the forum, the Defendants, the Plaintiffs, and the claims at issue.

were determined; and (2) the Fifth Circuit denied Defendants' Petition for leave to appeal on procedural grounds based upon this Court having vacated its prior certification order.[60] Defendants now claim that when this Court "withdrew its certification order, that ended the matter" and argue that the withdrawal of certification deprived the Fifth Circuit of jurisdiction to consider the merits of the Petition for leave.[61]  This, of course, is starkly different from the message sent in Defendants' August 25, 2017 letter to the Fifth Circuit where there was no mention of the deprivation of jurisdiction, and far from viewing the matter as "ended," Defendants informed the Fifth Circuit that they would "soon be filing an objection and motion for reconsideration [of the Court's order vacating the 1292(b) certification] with the district court."[62]  Defendants' shifting arguments and convenient spin are remarkable.

Unfortunately for them, the facts do not support Defendants' contention.  As noted previously, the parties informed the Fifth Circuit that this Court had vacated the 1292(b) certification on Friday, August 25, 2017, and even though Defendants claim that the Fifth Circuit was deprived of jurisdiction to rule on its Petition at that point, it was not until a week later, Friday, September 1, 2017, that the Fifth Circuit finally ruled on and <u>denied</u> Defendants' Petition for leave to appeal.[63]  The language of the Fifth Circuit's Order is revealing.  Instead of denying Defendants' Petition as moot or dismissing for lack of jurisdiction, the Fifth Circuit continued to

---

[60] Rec. Doc. at 4-5 ("the only reason the § 1292(b) appeal did not proceed is that *BMS* gave rise to an interrelated question of law . . .").

[61] *Id*. at 5.

[62] *See* No. 17-90027 (5th Cir.), Doc. No. 00514132912, at 3.

[63] *See* No. 17-90027 (5th Cir.), Doc. No. 00514141003.

refer to Defendants' Petition as an "opposed motion for leave to appeal."[64]  Such language indicates that the Fifth Circuit ruled on the "opposed motion" in favor of the PSC and did not, in fact, deny the motion on procedural grounds.[65]

### B. The Fifth Circuit's Decision Logically Flows from Defendants' Conduct in this Litigation

It is most likely that the Fifth Circuit saw what we all see – a pattern of abuse by Defendants of the judicial process – and simply chose to put an end to it.  When interlocutory appeals are being used as a tool to delay, the appellate courts will not countenance it.  *See*, *generally*, *Pelletier v. Fed. Home Loan Bank of San Francisco,* 968 F.2d 865, 870 (9th Cir. 1992) (allowing multiple interlocutory appeals from denials of motions to dismiss "will encourage … defendants … to use such appeals as delaying tactics is not an idle one.").  As this Court is aware, the record is replete with examples of Defendants' dilatory conduct.[66]

By way of example:

- Defendants initially decided not to respond to any Chinese Drywall lawsuits but instead to observe and monitor the litigation from afar;[67]

- As part of that strategy, Defendants deliberately avoided service of process and allowed multiple default judgments to be entered against them;[68]

---

[64] *See id.*

[65] This Court may take judicial notice that the Fifth Circuit is cognizant of its own jurisdiction.  Certainly, Defendants did not raise this issue with the Court of Appeals.  In any event, it is largely irrelevant because the granting of permission to appeal by the appellate court is discretionary and therefore, the Fifth Circuit's decision to deny Defendants' "opposed motion" for leave to appeal is illustrative of the Court's view as to whether the issues stated therein rise to the level of warranting interlocutory review.

[66] *See*, *e.g.*, Rec. Doc. 21108; Rec. Doc. 21075-2.

[67] Rec. Doc. 21075-2 at 4-5.

[68] *Id*. at 5.

- After default judgments were entered, Defendants decided to have Taishan enter the jurisdiction in a "limited" fashion for the sole purpose of contesting jurisdiction, and they continued a strategy of rejecting service of process;[69]

- After Taishan lost all of its jurisdictional motions and appeals, Defendants determined that Taishan should fire their American counsel and flee the jurisdiction;[70]

- To avoid paying judgments, CNBM Group instructed its CNBM-BNBM subsidiaries to avoid depositing funds into certain U.S. banks, presumably to avoid the seizure of company assets, and to avoid using company emails when doing business overseas and instead to use personal emails only;[71] and

- Defendants remained absent from the jurisdiction until the day of the class damages hearing for members of the *Amorin* class.[72]

These are just a small fraction of the examples of the legal gymnastics Defendants have used to delay and derail these proceedings.

Defendants now boast that since they have entered the litigation in 2015 (almost six years after it began), they have behaved themselves.[73]  This view can only be accurate when assessed against the egregiousness of Defendants' prior misconduct described, in part, above.[74]  Since reentry into the litigation, Defendants have had one singular purpose – to undo everything that had been done in their absence and go back to the beginning, reopening and rearguing every previously-decided issue, to delay the ultimate resolution of this case.

---

[69] *Id*. at 6.

[70] *Id*. at 7-8.

[71] *Id*. at 8-9.

[72] *Id*. at 10-11.

[73] *See* Rec. Doc. 21050-1 at 10.

[74] *See* Rec. Doc. 20913 at 1-7 (discussion Defendants' continuing dilatory views on a potential end game).

## V.   NEITHER THE COURT'S ORIGINAL JURISDICTION ORDER NOR ITS *BMS* ORDER WARRANT IMMEDIATE REVIEW

The pending 1292(b) Motion is a shining example of why the final judgment rule exists. As this Court has recognized, Defendants' "jurisdictional challenge is not a meritorious defense,"[75] yet Defendants seek to repeat and relitigate the same tired arguments including their overstated and exaggerated interpretation of *BMS* that is directly at odds with their eventual concession that *BMS* did not change the law that had previously been applied by this Court and the Fifth Circuit.[76]  Not only is this attempted interlocutory appeal nothing but a continuation of the delay tactics that the Court has found disheartening,[77] it is also the very type of delay tactic that is one of the underpinnings of the rules limiting interlocutory appeals.

Firmly established under federal jurisprudence is the policy against piecemeal appeals. *See Switzerland Cheese Association, Inc. v. Horne's Market, Inc.*, 385 U.S. 23, 24 (1966); *Baltimore Contractors, Inc. v. Bodinger*, 348 U.S. 176 (1955); 28 U.S.C. § 1291 (bestowing upon courts of appeals "jurisdiction of appeals from all <u>final</u> decisions of the district courts") (emphasis added).  Federal statute creates an exception to the final judgment rule and defines the jurisdiction of the courts of appeals to include specific types of interlocutory orders from which appeals may also be taken, *e.g.*, injunctions.  *See* 28 U.S.C. § 1292(a).  Under limited circumstances, "if a trial court enters an order from which an appeal is not permitted pursuant to 28 U.S.C. § 1292(a) . . . the court may grant 28 U.S.C. § 1292(b) certification, which would allow the order to be appealed."  *Henderson v. GATX Corp.*, 2012 WL 1191141, *1 (M.D. Fla.

---

[75] Order and Reasons [Rec. Doc. 21108] at 20.

[76] *See* Rec. Doc. 20997 at 2; Rec. Doc. 20955 at 1; Rec. Doc. 21031 at 1-2.

[77] *See* Rec. Doc. 21108 at 17.

Apr. 10, 2012). The judiciary readily recognizes that "[a]ny appeal under this section is

necessarily a deviation from the ordinary policy of avoiding 'piecemeal appellate review of trial

court decisions which do not terminate the litigation.'" *Cardona v. General Motors Corp.*, 939

F. Supp. 351, 353 (D.N.J. 1996) (quoting *United States v. Hollywood Motor Car Co.*, 458 U.S.

263, 265 (1982)).

> The statute provides that:
>
> > When a district judge, in making in a civil action an order not
> > otherwise appealable under this section, shall be of the opinion that
> > such order involves *a controlling question of law as to which there
> > is substantial ground for difference of opinion and that an
> > immediate appeal from the order may materially advance the
> > ultimate termination of the litigation, he shall so state in writing in
> > such order.*

28 U.S.C. § 1292(b) (emphasis added).[78]

Section 1292(b) is meant to be applied sparingly in that only "exceptional circumstances

[will] justify a departure from the basic policy of postponing appellate review until after the

entry of a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978). "A

question which requires a factual as well as legal decision is not suitable for interlocutory

review." *Speizman Knitting Mach. Co. v. Terrot Strickmaschinen GmBH*, 505 F. Supp. 200, 202

(D.N.C.1981); *see also Brooks v. Farm Fresh, Inc.*, 759 F. Supp. 1185, 1198 (E.D. Va. 1991)

(where question of law is grounded in specific facts of the case, and cannot be divorced from

those facts, they fail to present a narrow question of pure law); *Fannin v. CSX Transp., Inc.*, No.

---

[78] Upon certification by the district court pursuant to § 1292(b), the Court of Appeals may, in its
discretion, permit the appeal to be taken. *See* 28 U.S.C. § 1292(b). Application of 28 U.S.C. § 1292(b) is
"subject to the judgment and discretion of [both] the district court and the court of appeals." *Tidewater
Oil Co. v. United States*, 409 U.S. 151, 167 (1972).

88-8120, 1989 WL 42583 at *5 (4th Cir. 1989) (unpublished) ("a question of law that is heavily

freighted with the necessity for factual assessment" is not suitable for interlocutory review).[79]

The standards set under § 1292(b) reflect the fact that "the institutional efficiency of the

federal court system is among the chief concerns underlying Section 1292(b).  Thus, certification

for interlocutory appeal is appropriate if reversal of the district court's opinion in that respect

could result in dismissal of the action or limit the action's complexity or scope."  *Harch*

*Hyperbarics, Inc. v. Martinucci*, No. Civ. A. 09-7467, 2010 WL 4665923, at *5 (E.D. La. Nov.

9, 2010) (quotations omitted) (citing *SEC v. Credit Bancorp, Ltd.*, 103 F. Supp. 2d 223, 226, 227

(S.D.N.Y. 2000)); Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE

§ 3930 (2d ed. 1987).

The Court can certify the Jurisdictional Orders for interlocutory review if (1) they involve

"a controlling question of law," (2) there is "substantial ground for difference of opinion" on the

questions presented, and (3) an immediate appeal would "materially advance the ultimate

termination of the litigation."  *David v. Signal Intern., LLC*, 37 F. Supp. 3d 836, 839 (E.D. La.

2014) (quoting 28 U.S.C. § 1292(b)).  Defendants must satisfy each prong.  *See id*.  "'The three

factors should be viewed together as the statutory language equivalent of a direction to consider

the probable gains and losses of immediate appeal.'"  *General Electric Company v. Mitsubishi*

*Heavy Industries, Ltd*., No. 10-cv-0276, 2012 WL 12985134, at *1 (N.D. Tex. Feb. 7, 2012)

(quoting 16 Wright, Miller & Cooper, Federal Practice and Procedure § 3930 (2d ed. 1996)).

Here, while Defendants fail to satisfy any of the criteria for interlocutory review, it is dispositive

that they so clearly cannot satisfy the third prong – immediate appeal would not "materially

---

[79] *See, e.g.*, Rec. Doc. 20831 at 11-13.

advance the ultimate termination of the litigation." As discussed, the appeal would delay the litigation to the prejudice of Plaintiffs.

While Defendants' 1292(b) Motion with respect to the Court's Original Jurisdiction Order should be denied as duplicative because it was already considered and rejected by the Fifth Circuit, the PSC sets forth below why the motion should be denied on the merits should the Court decide to consider it along with the reasons the motion should be denied with respect to the Court's *BMS* Order.

### A.    There Is No Controlling Question of Law

With respect to the Original Jurisdiction Order, Defendants assert that there are three controlling questions of law: (1) whether the Court correctly analyzed the veil piercing laws of the three jurisdictions at issue as well as Chinese veil-piercing law; (2) whether the Court properly applied imputation doctrines such as single-business enterprise, alter ego, and agency; and (3) whether the Court performed a proper due process analysis.[80]

These issues have been addressed in prior briefing but importantly, in previous proceedings, Defendants have conceded that the forum makes little difference to this litigation. In the Original Jurisdiction Order, the Court noted that "each of the Defendants acknowledges that, whether the Court applies Chinese or forum-state law, there is no meaningful difference in outcome. Additionally, when Art. 20 of the Chinese Company law has been interpreted, legal scholars have concluded that it effectively states the U.S. common law doctrine of piercing the corporate veil."[81] Most importantly, the Court, in the Original Jurisdiction Order, made

---

[80] *See* CNBM-BNBM 1292(b) Mem. [Rec. Doc. 21095-1] at 6-9.

[81] Original Jurisdiction Order [Rec. Doc. 20739] (citing BNBM Group's Brief at 23 ("The result is the same if the law of Florida, Louisiana, or Virginia is applied."); BNBM's Brief at 60 ("Even if this Court

extensive factual findings and provided a thorough analysis of each forum state's law on imputation to reach its conclusion.[82]  In addition, the Court explained that because the law of the case states that the Court has jurisdiction over Taishan, any entity that is found to exert substantial control and dominance over Taishan will be subject to the jurisdiction of this Court.[83]  This type of intensive factual inquiry is not the type of controlling question of law that merits interlocutory review.

Defendants' claims with respect to *BMS* – questions regarding whether a "plaintiff-specific/claim-specific analysis is required by *BMS* and whether *BMS* applies to class actions" – are even more questionable.[84]  It is undisputed that *BMS* did not change the law existing at the time of the Court's and the Fifth Circuit's prior jurisdictional decisions.[85]  As this Court noted, "the Fifth Circuit applied the same due process principles as the *BMS* Court."  The *BMS* issues cannot possibly be controlling questions of law here because the first issue does not impact this litigation.  This is an MDL, so jurisdiction is assessed on the basis of the transferor court which largely alleviates the "plaintiff-specific/claim-specific" inquiry that Defendants are positing.  As it relates to the class action question, it is a red herring because the issue raised by Defendants is

---

were to apply the law of the forum states, there is still no basis to impute Taishan's forum contacts to BNBM PLC as an alter ego."); CNBM Entities Brief at 43 n. 37 & n. 44 ("Nor, based on the factual record, would an alter ego relationship exist under the forum states' laws" & "Under both Chinese and U.S. law, exercising controlling shareholder rights fall far short of demonstrating that a subsidiary is so totally subsumed by a shareholder that they should be treated as a single entity.")).

[82] Rec. Doc. 20739 at 12-69.

[83] *See id*. at 36-37.

[84] Rec. Doc. at 10.

[85] *BMS* Order [Rec. Doc. 21088] at 22 (citing the *BMS* Court's statements that they were simply applying "settled principles").

23

whether *BMS* altered years of practice and found that a nationwide class is unsustainable as a jurisdictional matter.  This Court has properly found that the Supreme Court did no such thing. Defendants are grasping at straws with their *BMS* arguments.

### B.    There Is No Substantial Ground for Difference of Opinion

Defendants gloss over the Court's prior ruling with respect to whether there are substantial grounds for difference of opinion with respect to the imputation doctrines at issue. "The threshold for establishing a 'substantial ground for difference of opinion' is higher than mere disagreement or even the existence of some contrary authority."  *See Ryan v. Flowserve Corp.*, 444 F.Supp.2d 718, 724 (N.D. Tex.2006) ("[S]imply because a court is the first to rule on a question or counsel disagrees on applicable precedent does not qualify the issue as one over which there is substantial disagreement." (citation omitted)).

In its Original Jurisdiction Order, the Court noted that Defendants' argument was "not insubstantial" and that "Chinese law on veil-piercing and corporate alter-ego liability was woefully underdeveloped."[86]  However, "[p]arties must clear a high bar when attempting to show that a question involves a substantial ground for difference of opinion."  *Consumer Fin. Prot. Bureau v. Frederick J. Hanna & Assoc., P.C*, 165 F. Supp. 3d 1330, 1335 (N.D. Ga. 2015). "Substantial ground for difference of opinion exists when a legal issue is (1) difficult and of first impression, (2) the district courts of the controlling circuit are split as to the issue, or (3) the circuits are split on the issue."  *Id*. (citing *Georgia State Conf. of the NAACP v. Fayette Cty. Bd. of Commissioners*, 952 F.Supp.2d 1360, 1362 (N.D.Ga.2013)); *see also In re Scientific–Atlanta, Inc. Securities Litigation*, No. 01–cv–1950, 2003 WL 25740734, at *1 (N.D. Ga. Apr. 15, 2003)

---

[86] Rec. Doc. at 12.

(Story, J.) ("neither the mere lack of authority on the issue nor the claim that the district court's ruling is incorrect constitutes a substantial ground for difference of opinion.").

With respect to the imputation issues, Defendants do not illustrate how the questions they raise satisfy any of these standards.  At best, it appears there may be limited case law but that is not enough to establish that a substantial ground for difference of opinion exists.  The fact that an issue "'is one of first impression, standing alone, is insufficient,' because the district judge has the obligation to 'analyze the strength of the arguments in opposition to the challenged ruling' when deciding whether to certify."  *Id.* (quoting *In re Flor*, 79 F.3d 281, 284 (2d Cir.1996)); *see also Couch v. Telescope, Inc*., 611 F.3d 629, 634 (9th Cir. 2010).

It further cuts against Defendants' position that "district courts must not certify issues which need significant factual development to flesh out, or which will require the circuit court to 'delve beyond the surface of the record in order to determine the facts.'"  *See id.* (quoting *McFarlin v. Conseco Serv., LLC*, 381 F.3d 1251, 1256 (11th Cir.2004)).  "The 'substantial ground' for difference of opinion must be about a purely legal issue, not a factual one or "'the application of settled law to fact.'"  *See id.* (quoting *McFarlin v. Conseco Serv., LLC*, 381 F.3d at 1258).  Defendants cannot show that the imputation issues meet this burden.

With respect to their *BMS* arguments, Defendants suggest that the standard is whether "[r]easonable jurists could disagree as to whether this Court correctly interpreted *BMS* when it declined to dismiss the claims of plaintiffs with no connection to the states in which they brought suit."[87]  Clearly, that is not the standard applied to this prong of the 1292(b) inquiry.  In addition, Defendants assume too much in their statement – simply because a Plaintiff is a nonresident does

---

[87] Rec. Doc. at 11.

not mean that they have "no connection to the states in which they brought suit," as evidenced by the Court's finding with respect to Defendants' targeting of Louisiana, Florida and Virginia for sales of their Chinese drywall.  Furthermore, there are no circuits split on any *BMS* issues at this juncture, and while the case is new, it did nothing to change existing Fifth Circuit law and, therefore, the issues ruled upon by the Court in the *BMS* Order were not novel.

Defendants' discussion regarding "claim-specific" inquiries is incoherent and inapplicable.  Plaintiffs in this case are not seeking to exercise specific jurisdiction over one claim by referencing the exercise of jurisdiction over a different claim so the focus of the discussion is misguided, at least as it relates to this case.[88]  Defendants then leap to the conclusion that the Fifth Circuit has adopted a proximate causation standard for relatedness.[89]  While this is clearly not true, the argument is irrelevant here.  *BMS* had no impact on the type of causation test proffered by Defendants here as the Fifth Circuit standard.  *Sieferth*[90] was decided in 2006, and if Defendants are correct that it established a heightened causation requirement within the Fifth Circuit, then the Fifth Circuit has been aware of it throughout each of Defendants' prior jurisdictional appeals in this case.

C.    **Immediate Appeal Will Delay, Not Materially Advance, the Ultimate Termination of the Litigation**

It is commonly accepted that a court should refrain from certifying an order for immediate review under Section 1292(b) when, instead of materially advancing the ultimate

---

[88] Rec. Doc. 12.

[89] *Id.*

[90] *Sieferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006).

termination of the litigation, it would result in a delay of the proceedings.  *See*, *e.g.*, *David*, 37 F. Supp. 3d at 839 (finding granting of interlocutory appeal would result in delay of the ultimate resolution of the case); *Matthews v. Stolier*, No: 13-cv-6638, 2016 WL 9447195, at *2 (E.D. La. July 19, 2016) (denying certification under 1292(b) because it would hinder the progress of the litigation); *Roussell v. Brinker Int'l, Inc*., No. 05-cv-3733, 2009 WL 595978, at *4 (S.D. Tex. Mar. 6, 2009) ("Under the third 'materially advance' prong, courts look to whether it is burdensome to decide the case now and whether the ultimate disposition of the case is delayed rather than advanced if the interlocutory appeal application is granted."); *Long Island Lighting Co. v. Transamerica Delaval, Inc*., 648 F. Supp. 988, 991 (S.D.N.Y. 1986) ("an interlocutory appeal is more likely to delay its conclusion.  The roots of this case date back more than ten years.  Thousands of pages of documents and testimony were reviewed by the PSC.  Hundreds of pages of papers have been submitted to this Court; hundreds more will inevitably be submitted before final judgment is entered and that judgment appealed.").  For all the reasons discussed above, certifying an interlocutory appeal at this point would derail all of the efforts being made to bring justice to the homeowners who, by happenstance, had drywall in their homes manufactured by these Defendants instead of Knauf.  After arduous work, this nine-year old litigation has finally reached a point where resolution, at least as it relates to this MDL proceeding, can be reasonably achieved in the near future.  To grant Defendants' 1292(b) Motion would be to delay the action for over a year and that alone warrants denial of Defendants' 1292(b) Motion.

And there is little harm to Defendants in denying certification at this point because they will get their opportunity to appeal when final judgment has been obtained, which hopefully will

27

be in the near future, at least for the class members in *Amorin*.  In addition, if this Court were to

certify the Original Jurisdiction Order for immediate appeal and the Fifth Circuit subsequently

found no personal jurisdiction over the Defendants on the imputed liability theories, Taishan

would remain in this case, and the case will proceed whether or not the parent entities are

dismissed.  *See Muller v. Temura Shipping Co.*, 629 F. Supp. 1024, 1028 (E.D. Pa. 1986)

(finding immediate appeal does not materially advance ultimate termination of litigation where

issue of personal jurisdiction would dismiss one party, but others would remain).  *See also*

*Scuderi v. Cushion Cut, Inc.*, Civ. A. No. 89–4803, 1992 WL 180129, at *1 (E.D. La. July 21,

1992) (jurisdiction of one defendant will be an issue in case whether or not they are dismissed as

other defendants will point fingers at them; and "[i]n a case with multiple parties, the

inconvenience faced by the foreign defendant is minimal compared to the potential

inconvenience faced by all remaining parties if certification is granted."); *State of N.C. ex rel.*

*Long v. Alexander & Alexander Servs., Inc.*, 685 F. Supp. 114, 117 (E.D.N.C. 1988) (where

jurisdiction is proper over remaining defendants, an order certifying appeal for two defendants

would not materially advance the ultimate termination of litigation).

The Court's prior certification order does not conflict with this conclusion.  Previously,

the Court stated that "immediate appeals under Section 1292(b) are particularly appropriate

regarding questions of jurisdiction, in order to allow Fifth Circuit review ***at the beginning of a***

***case*** – especially when the case will involve a 'long and costly process of serial trials.'"[91]

Defendants quote this language in their papers but conveniently omit the phrase, "in order to

---

[91] Rec. Doc. 20890 at 12 (emphasis added).

allow Fifth Circuit review at the beginning of a case."[92]  It cannot seriously be argued at this

point, and with the current End Game proposals before the Court, that we remain somehow, nine

years later, at the "beginning of the case."

We are approaching the end of the long and winding road and it is time for the piecemeal

appeals, repeated distractions and other avoidance tactics to stop.  Denying certification of the

Jurisdictional Orders for immediate appeal is appropriate.

## VI. __CONCLUSION__

For the foregoing reasons, the PSC requests that this Court deny Defendants' Motion to

Certify an Immediate Appeal from the Court's Jurisdictional Orders.

Respectfully submitted,


Dated:   January 15, 2018                    /s/ Russ M. Herman
Russ M. Herman (La. Bar No. 6819) (on the brief)
Leonard A. Davis (La. Bar No. 14190) (on the brief)
Stephen J. Herman (La. Bar No. 23129) (on the brief)
Robert S. Peck (on the brief)
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, LA  70113
Phone: (504) 581-4892
Fax: (504) 561-6024
RHerman@hhklawfirm.com

*Plaintiffs' Liaison Counsel MDL 2047*

Arnold Levin (on the Brief)
Fred S. Longer (on the Brief)
Sandra L. Duggan (on the Brief)
Keith J. Verrier (on the Brief)
Levin Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA  19106

---

[92] CNBM-BNBM Mem. at 9.

Phone: (215) 592-1500
Fax: (215) 592-4663
Alevin@lfsblaw.com

*Plaintiffs' Lead Counsel MDL 2047*

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA  70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Peter Prieto
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL  33130
Phone: (305) 358-2800
Fax: (305) 358-2382
pprieto@podhurst.com

Patrick Montoya
Colson, Hicks, Eidson
255 Alhambra Circle, Penthouse
Coral Gables, FL  33134
Phone: (305) 476-7400
Fax: (305) 476-7444
patrick@colson.com

Hugh P. Lambert
The Lambert Firm
701 Magazine Street
New Orleans, LA  70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@thelambertfirm.com

James R. Reeves, Jr.
Reeves & Mestayer, PLLC
160 Main Street
Biloxi, MS  39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@rmlawcall.com

Robert Becnel
Becnel Law Firm, LLC
425 W. Airline Highway, Suite B
Laplace, LA  70068
Phone: (985) 536-1186
Fax: (985) 536-6445
rbecnel@becnellaw.com

Bruce William Steckler
Steckler Gresham Cochran
12720 Hillcrest Road, Ste 1045
Dallas, TX  75230
Phone: (972) 387-4040
Fax: (972) 387-4041
bruce@stecklerlaw.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL  32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA  70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Christopher Seeger
Seeger Weiss, LLP
77 Water Street
New York, NY  10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC  27603
Phone: (919) 600-5000
Fax: (919) 600-5002
dan@wbmllp.com

Victor M. Diaz, Jr.
V.M. Diaz and Partners, LLC
119 Washington Ave, Suite 402
Miami Beach, FL  33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

Richard J. Serpe
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA  23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com

## OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W, Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Anthony D. Irpino
IRPINO AVIN HAWKINS LAW FIRM
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, which will serve a notice of the uploading in accordance with the procedures established in MDL 2047, on this 15th day of January, 2018.

<div style="margin-left: 40%;">

<u>/s/ Leonard A. Davis</u>
Leonard A. Davis
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
<u>Ldavis@hhklawfirm.com</u>
Plaintiffs' Liaison Counsel
MDL 2047

*Co-Counsel for Plaintiffs*

</div>