```
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF LOUISIANA
 2


 3      ***************************************************************

 4
        IN RE:  CHINESE-MANUFACTURED
 5      DRYWALL PRODUCTS
        LIABILITY LITIGATION
 6
                               CIVIL DOCKET NO. 09-MD-2047 "L"
 7                             NEW ORLEANS, LOUISIANA
                               TUESDAY, JANUARY 23, 2018, AT 10:00 A.M.
 8


 9      THIS DOCUMENT RELATES TO
        ALL CASES
10
        ***************************************************************
11

12                     TRANSCRIPT OF MOTION PROCEEDINGS
               HEARD BEFORE THE HONORABLE ELDON E. FALLON
13                    UNITED STATES DISTRICT JUDGE

14

15      APPEARANCES:

16

17      FOR INTERIOR/EXTERIOR
        BUILDING SUPPLY, L.P.:      CARVER, DARDEN, KORETZKY, TESSIER,
18                                  FINN, BLOSSMAN & AREAUX
                                    BY:  PHILIP D. NIZIALEK, ESQUIRE
19                                       ANDREW J. BRIEN, ESQUIRE
                                    1100 POYDRAS STREET, SUITE 3100
20                                  NEW ORLEANS, LA  70163

21

22      FOR LIVERS CONSTRUCTION,
        INC.:                       DUNCAN & SEVIN
23                                  BY:  ELTON F. DUNCAN, III, ESQUIRE
                                    400 POYDRAS STREET, SUITE 1200
24                                  NEW ORLEANS, LA 70130

25
```

*OFFICIAL TRANSCRIPT*

1    APPEARANCES CONTINUED:

2

3    FOR WINSTON BURNS, JR.
     AND WENDY BURNS:              CHEHARDY, SHERMAN, WILLIAMS, MURRAY,
4                                  RECILE, STAKELUM & HAYES
                                   BY:  MATTHEW A. SHERMAN, ESQUIRE
5                                       ZACHARY R. SMITH, ESQUIRE
                                   ONE GALLERIA BOULEVARD, SUITE 1100
6                                  METAIRIE, LA 70001

7

8    FOR ARCH INSURANCE
     COMPANY:                      GALLOWAY, JOHNSON, TOMPKINS,
9                                  BURR & SMITH
                                   BY:  RICHARD DUPLANTIER JR., ESQUIRE
10                                 701 POYDRAS STREET, 40TH FLOOR
                                   NEW ORLEANS, LA  70139

11

12

13   OFFICIAL COURT REPORTER:      CATHY PEPPER, CRR, RMR, CCR
                                   CERTIFIED REALTIME REPORTER
14                                 CERTIFIED MERIT REPORTER
                                   500 POYDRAS STREET, ROOM B406
15                                 NEW ORLEANS, LA  70130
                                   (504) 589-7779
16                                 Cathy_Pepper@laed.uscourts.gov

17

     PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
18   PRODUCED BY COMPUTER.

19

20

21

22

23

24

25

*OFFICIAL TRANSCRIPT*

1                              **I N D E X**

2

3                                                              <u>PAGE</u>

4

5    MOTION FOR INJUNCTIVE RELIEF.........................    4

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*OFFICIAL TRANSCRIPT*

1              **P-R-O-C-E-E-D-I-N-G-S**

2              TUESDAY, JANUARY 23, 2018

3              M O R N I N G   S E S S I O N

4              (COURT CALLED TO ORDER)

5

6

7         THE DEPUTY CLERK:  All rise.

8         THE COURT:  Be seated, please.

9              Okay.  We're back to talk about the motion here

10   today.  By way of background, this relates to the Knauf side of

11   the ledger, so to speak.  After a number of bellwether cases,

12   some of which were default judgments, in any event, the parties

13   had enough information that they felt that they could try to

14   monetize some of the material that they had learned from the

15   litigation.  Because of the quality and efforts of counsel,

16   they were able to reach an agreement.

17              The Knauf agreement was first reached, and then

18   downstream Knauf entities were reached.  Both the suppliers as

19   well as the installers of the downstream people reached some

20   agreement that was part and parcel of the Knauf agreement.

21              One of the downstream people involved was InEx

22   and their installer.  The InEx group put up some $8 million

23   into the fund, and that was part of the pot out of which the

24   claimants received compensation.

25              We're here today because one of the individuals

                        ***OFFICIAL TRANSCRIPT***

1    who had purchased drywall and found it was Chinese drywall,

2    defective product, was installed by one of the installers for

3    InEx and was sued by a property owner, who says that he just

4    found out in 2015 that he had a problem.

5              Although the facts seem to suggest that he had

6    difficulties prior to that period of time, but apparently he

7    was not certain until 2015.  In any event, at that point he

8    then filed suit against the installers of InEx.

9              The InEx installer takes the position that this

10   was settled, and that that's what the $8 million was

11   contributed for; that this person was in the class that was

12   settled, and that they have no claim.  Because they didn't opt

13   out of the class, therefore, they were part of the class.  By

14   being part of the class, they gave up their particular claim.

15             The case was filed in state court.  They brought

16   this up to the state trial judge.  The trial judge rejected it.

17   It went to appeal, and the appeal rejected it.  It went to the

18   Supreme Court of Louisiana, the Supreme Court rejected it.

19   Neither court wrote an opinion on why they rejected it, the

20   request for a dismissal of the case.

21             So we're here today to talk about whether or not

22   this Court ought to enjoin the state court from going forward

23   with it under my powers as a federal judge involved in this

24   case.

25             Now, all of us know that this is a power that is

**OFFICIAL TRANSCRIPT**

1    gingerly used.  It's not something that is just routinely used.

2    It has to be judiciously done because of various federal/state

3    relations, as well as the Anti-Injunction Act.

4            But there is solid jurisprudence for the fact

5    that once a judgment is entered by a federal court, and

6    particularly when there is a res, namely, a settlement amount,

7    that the Court can and should protect that res and protect that

8    judgment, and that if it's interfered with by anybody, then the

9    Court should exercise its injunction power.

10           I understand the gingerly nature of it.  I

11   understand that it's not done routinely.  But this is an

12   instance where I do think there is a res involved, and it

13   should be protected.

14           However, the thing that gives me some concern,

15   and I would like your input on it, is whether or not these

16   individuals fall into the class.  The issues are complicated

17   because of the nature of the settlement.  This settlement is a

18   very difficult settlement to get your hands around.

19           The Knauf settlement class is defined as the

20   Knauf settlement class consists of, quote, "all persons or

21   entities who, as of December 9, 2011, filed a lawsuit in the

22   litigation as a named plaintiff."

23           Now, the InEx settlement class describes it as,

24   "InEx settlement class consists of all persons or entities with

25   claims, known and unknown, against the settling defendants

*OFFICIAL TRANSCRIPT*

1     arising from or otherwise related in any way to Chinese drywall

2     sold, marketed, distributed or supplied by InEx."

3            As I mentioned, the Knauf entity settled first,

4     and then the other entities came into the case.  It says in the

5     settlement agreement, "in addition to the Knauf entities, a

6     number of defendants in the chain of commerce contributed funds

7     to the program.  The pilot program has since been implemented,

8     with homes being added."

9            With regard to the InEx settlement, it says,

10     "this agreement provides for the tendering of all InEx primary

11     insurance proceeds in the amount of $8 million for the benefit

12     of a national class with claims against InEx involving Chinese

13     drywall."

14            The settlement goes on to say, "These settlements

15     are all interrelated and interdependent.  They resolve all

16     claims, counterclaims, third-party claims, or claims among the

17     settling parties."

18            So, the thing I'm struggling with is whether the

19     InEx settlement being a part of the Knauf settlement, for the

20     benefit of this Knauf settlement, whether the definition of the

21     settlement, the InEx settlement, is tied into the definition of

22     the Knauf settlement.

23            That is to say, does the InEx settlement limit it

24     to people who have filed claims as of December 9th?  It says

25     all persons or entities with claims, known and unknown.  The

1    question is known and unknown.  There are claims that people

2    had for damaged property, but they didn't know the extent,

3    oftentimes, of the damaged property, and sometimes they didn't

4    know whether or not they had any personal injuries as a result

5    of it.

6              So, known and unknown is a fair statement, but is

7    it restricted to the December 9th, those individuals who have

8    filed by December 9th, who have claims known and unknown.

9    That's the area that I'm really struggling with, to see whether

10   or not the class is restricted by those entities.

11             I'll hear from the parties.  If you can focus me

12   on that, I'd appreciate it.

13        MR. NIZIALEK:  Your Honor, if I may.  Phil Nizialek for

14   InEx entities and the downstream releasees of InEx.  May it

15   please the Court.

16             I think Your Honor is a little bit conflating

17   that Knauf settlement too much with the InEx settlement.  I

18   think, if you look at the InEx release language, the definition

19   of the InEx class, it is not coextensive with the Knauf class.

20             In fact, InEx, in reaching the settlement with

21   the class, intended to settle not only the Knauf claims, but

22   also any of the Taishan claims against it, that could come from

23   the Taishan side.  That's why the definition of the InEx class

24   is so much broader than in the Knauf class.

25             So I think it's wrong to say that, you know, you

*OFFICIAL TRANSCRIPT*

1   could somehow restrict the InEx settlement to what the Knauf

2   entities did, and to restrict the InEx settlement to the dates

3   in the Knauf settlement.

4          In fact, the InEx settlement was much broader and

5   much more universal, and applied to any claim, as the

6   definition says, that could be brought against InEx and its

7   downstream releasees.  It was a separate settlement agreement,

8   part of the Knauf settlement, but broader than the Knauf

9   settlement.  InEx surely intended it to be that way, as did its

10  insurers, Arch and Liberty Mutual, at the time.

11          THE COURT:  Well, help me with this then.  From the

12  standpoint generally when you're dealing with future claims of

13  individuals who have future claims that they don't know about,

14  it's a lot of times with the class a certain amount is reserved

15  for those future claims, so that there is due process for those

16  future claims.

17          Then the argument, if nothing is reserved for

18  those future claims, the future claims say, well, it's a

19  promise without any teeth in it.  There is no due process.  We

20  couldn't get anything from them; even if we wanted it, we

21  couldn't, because there is nothing left.

22          MR. NIZIALEK:  I believe that's the reason for the

23  notice requirements in the class, Your Honor, is so that, you

24  know, there is no one who is out there who doesn't know about

25  this because we gave notice to everyone in the class.

*OFFICIAL TRANSCRIPT*

1          THE COURT:  But they say they didn't know they even had

2     Chinese drywall until after the matter is finished.

3          MR. NIZIALEK:  Well, but that's what the notice is for.

4     I mean, it went out to all the parties.  That's why we give the

5     broad notice.  That's why the class settlements all take into

6     account that the notice was adequate and covered all the class

7     members, is to prevent exactly these sort of claims from

8     happening, Your Honor.

9          The fact that there was no reservation in the

10    release for future claims means that we intended to release any

11    and all claims by any class members who had not opted out of

12    the settlement agreement at the time.  Your approval of the

13    settlement and your approval of the bar language and of the

14    notice language I think reflects that as well.

15         These are exactly the types of claims, I think,

16    Your Honor, that we had intended to prevent with the bar order,

17    with the general release, and with the very broad definition of

18    the InEx class.

19         THE COURT:  But the money, for the most part, the

20    $8 million, went to Knauf.

21         MR. NIZIALEK:  Well, keep in mind there was a

22    reservation also for certain --

23         THE COURT:  Personal injuries.

24         MR. NIZIALEK:  -- and Taishan claims as well.

25    Remember, there was a dispute with the InEx excess underwriters

*OFFICIAL TRANSCRIPT*

1    that was resolved as well, that reserved monies for certain

2    Taishan claims as well.

3              So I think, you know, all of your concerns were

4    taken into account with respect to the InEx settlement, which

5    was very broad, all encompassing, and, you know, we never

6    intended to be here eight years later or six years later facing

7    more state court claims.  That's why we did what we did.

8    That's why we worked so hard with Your Honor and with

9    plaintiffs' class counsel to make this broad language.

10             But, once again, just to emphasize, we were not

11   totally tied to the Knauf settlement.  So I think that December

12   date that you quote in the Knauf settlement really doesn't

13   apply to InEx at all, other than perhaps for Knauf claims.  I'm

14   not even sure we know which one this is, but I think this is a

15   Taishan claim.

16        THE COURT:  The wording, though, is that the

17   settlements are interrelated and interdependent.

18        MR. NIZIALEK:  Well, that's true, Your Honor, they are

19   interrelated and interdependent, but they are also -- the InEx

20   is not always interrelated with the Knauf settlement in that it

21   is broader, its class definition is broader.

22             So while it was certainly interrelated with the

23   Knauf settlement, and there was an indemnity from Knauf and

24   other issues that were interrelated, that doesn't necessarily

25   preclude the InEx settlement from being broader than the Knauf

*OFFICIAL TRANSCRIPT*

1    settlement.  I think the wording, particularly of the class

2    definition, makes that clear.

3         THE COURT:  Anybody else from the moving party?

4         MR. DUPLANTIER:  Richard Duplantier on behalf of Arch

5    Insurance Company.  I was previously counsel for Interior

6    Exterior, as well as Arch.  We made an appearance to join in

7    the motion for injunction in this case.

8              I want to echo what Mr. Nizialek said.  One of

9    the issues that InEx had at the time of the settlement had to

10   do with the third-party -- or the potential for third-party

11   claims against Interior Exterior, which is why it was

12   necessarily a broader document than the Knauf settlement, which

13   is why we needed a separate release document and settlement

14   agreement that was broader, to avoid exactly what we're doing

15   today.

16             We needed to avoid these claims.  We needed

17   certainty, which is why we had that broad language in the

18   release, as well as identified subcategories within the InEx

19   settlement agreement.

20             So Arch joins in this.  I want the Court to

21   understand that, while we understand that there was a

22   relationship with the Knauf settlement, they are -- they are

23   independent of each other.

24         THE COURT:  Okay.  Anybody further?

25         MR. DUNCAN:  Chip Duncan on behalf of Livers

                         *OFFICIAL TRANSCRIPT*

1     Construction, Inc.  I adopt everything that Phil and Richard

2     have said, and just point out that Livers is specifically

3     listed as a released downstream provider as an installer.

4          THE COURT:  Yes, I recognize that.

5          MR. SHERMAN:  Good morning, Judge.  Matthew Sherman on

6     behalf of Winston and Wendy Burns.

7               Judge, I think the ambiguity that you're talking

8     about right now between these settlements is the exact reason

9     why the Anti-Injunction Act is in place, and it's why

10    injunctions should only be used sparingly, for this exact

11    situation.

12              Here we have our clients that didn't discover

13    that they had Chinese drywall until the end of 2015, well past

14    any of these agreements being reached.  At that point, they had

15    nothing to do but to turn to the contractor, who, in our

16    belief -- and we're trying to develop a case through discovery

17    in the state court level -- was aware of the Chinese drywall.

18              But we filed suit only against Livers.  We did

19    not bringing InEx in.  We did not bring any other manufacturers

20    in.  Livers had an opportunity in the state court level to

21    bring this same argument in front of Judge Griffin.  She denied

22    their exception of res judicata.  They took a writ to the

23    Fourth Circuit -- or appealed -- they appealed it, it was

24    denied there, and the Supreme Court denied it too.

25              So they have challenged this all the way up, and

*OFFICIAL TRANSCRIPT*

1    then, when they were left with nothing to do, they then

2    third-party in InEx, most likely to get in front of Your Honor

3    today.

4              We would just urge you to apply discretion, at

5    least as it relates to our claims against Livers.  This is a

6    breach of contract claim for a construction project for a

7    house.  If my clients aren't able to pursue Livers today, then

8    they've missed the opportunity to be in the settlement, and now

9    they have no claims, so they are stuck out with a bill for

10   hundreds of thousands of dollars and no recourse of it because

11   they didn't know about it.

12             It's, again, our position that Livers had

13   knowledge about this.  All they had to do was call the

14   different homes that they worked with and let them know what

15   was going on, and they didn't.  So we are stuck here today, if

16   we're not allowed to go forward with Livers, with no resource.

17             Just as our opposition makes clear, Your Honor,

18   we understand that there is a separate issue between Livers and

19   InEx.  The injunction there, we have not opposed.  We didn't

20   bring InEx in the case.  We didn't bring Knauf in the case.

21   We're strictly going against the contractor that our clients

22   hired, enter into a contract with, to remedy what was

23   defective.

24        THE COURT:  Well, they take the position, though, that

25   that downstream person is included in the settlement; that if

*OFFICIAL TRANSCRIPT*

1    InEx is out of it, they are out of it, too.

2         MR. DUNCAN:  Judge, that's where we would urge you to

3    use your discretion, because if Livers were aware that they

4    were downstream involved in that, then why didn't they let the

5    homeowners know that, hey, there is a class action going on, I

6    may have installed Chinese drywall in your house, and you

7    should look into this.

8              We had no idea until the end of 2015.  We had

9    nothing to do but to file this suit.  Again, it's been sitting

10   in state court for over a year, for two years almost.  It's

11   gone all the way up to the Supreme Court on this issue.  It was

12   finally rejected as a Parsons case discusses.  We just believe

13   that our claims against Livers should be able to go forward,

14   and we can resolve those in state court.

15             Again, InEx and Knauf is a separate issue that we

16   have not opposed.

17        THE COURT:  Let me hear from any response.

18        MR. DUNCAN:  Your Honor, Chip Duncan, again, on behalf

19   of Livers Construction.

20             First, without getting into the weeds of state

21   court, these allegations that's in the petition in the federal

22   court record from state court never alleged that Louis Livers

23   knew or didn't tell us.  The first time these are coming up is

24   here, that he should have known, he had a duty to tell us.

25   None of that was ever pled in state court.

*OFFICIAL TRANSCRIPT*

1          What was taken from the peremptory exception all

2     the way up to the Supreme Court was a writ, supervisory writ,

3     which was denied.  It's not a final judgment.  What is a final

4     judgment is what Your Honor issued from this Court from the

5     InEx settlement.  They are trying to challenge that now

6     because, if you open this up after the proper notice -- and

7     they have not challenged the notice here -- this is exactly

8     what would undermine the settlement that Richard and Phil have

9     talked about.

10         So they have not challenged the notice.  This

11    would just allow a backdoor way in to get around the class

12    action settlement, of which they are a member of the class.  I

13    don't think they argue that they're not a member.

14    THE COURT:  What's your view about the fact that he

15    says that there was some fraud involved?

16    MR. DUNCAN:  Fraud was never pled.  The word *fraud*

17    never appears in any pleading.  There is only one petition for

18    damages.

19         It was brought up at the suggestion of Piper

20    Griffin in the oral argument, but they never alleged fraud in

21    any pleading that was served on Livers.  It was discussed at

22    the oral argument in CDC several years ago now.  So there is no

23    allegation of fraud in the pleading.

24    MR. SHERMAN:  Judge, if I may, we have an affidavit

25    from Winston Burns that was submitted with our opposition.  In

*OFFICIAL TRANSCRIPT*

1    our opposition, this was all brought up.

2           Counsel wasn't enrolled in the case at the time,

3    wasn't at the hearing.  So to sit here today and say that it

4    hasn't been presented, it was presented in the opposition, and

5    then everything became a standstill.  We sent discovery to

6    Livers to explore this more, and they refused to answer

7    anything but the request for admissions until today was

8    resolved.

9           So, again, the reason we're asking to be able to

10   go forward with Livers is if we are able to develop fraud,

11   negligent misrepresentation, that's separate and apart from

12   this agreement.  Those causes of actions weren't involved.

13   This is a completely separate case between a homeowner and a

14   contractor.

15          If he's prevented from going forward today, then

16   he can't explore those.  But we do believe, and we have an

17   affidavit that's in the record that suggests that our client

18   was calling him, and he never told him.

19      THE COURT:  He takes the position that you've got to

20   plead it, and you haven't pled it.  You've got to plead fraud

21   specifically, as opposed to just generally.  That's his

22   position.  He concedes that it was argued, but that it's not

23   part of the pleading.

24          What's your position in a situation where -- and

25   I asked the movants this -- where it's -- I don't want to be

*OFFICIAL TRANSCRIPT*

1    confused, but uncertain or precariously perched, should the

2    state court decide that, or should I decide that, in that type

3    situation?

4           I guess the movants, I ask.  There is some strand

5    of jurisprudence that seems to say that when it's confused or

6    it's not clear, that it's better for the state court to clarify

7    that than it is for the federal court to enjoin them for doing

8    it.  You feel that it's not confused; it's clear, and it's

9    stated clearly?  Is that your position?

10          MR. DUPLANTIER:  Two responses to that, Your Honor.

11   First of all, we believe it's clear, and unequivocally clear,

12   which is why this Court issued orders year ago about the effect

13   of the release -- the notice requirement, the release, and the

14   like.

15          To the extent that there needs to be

16   clarification of that, that really needs to come from this

17   Court, because that was within the jurisdiction of this Court

18   at the time that it was signed and at the time that the orders

19   were issued, and that clarification, to the extent it's needed,

20   really needs to come from this Court.

21          MR. NIZIALEK:  Your Honor, Phil Nizialek.  Certainly,

22   with respect to InEx, it's clear, as even the opposition

23   concedes.

24          THE COURT:  Well, if it's clear for InEx, I mean --

25          MR. NIZIALEK:  It should be clear for Livers, as well,

*OFFICIAL TRANSCRIPT*

1  because they are a downstream releasee expressly named in the

2  InEx release, Your Honor.

3      MR. SHERMAN:  Judge, if I may, relating to Burns and

4  liver, we would have a different opinion, of course, than

5  counsel here, that the state court should look at that, which

6  is what happened.  The state court looked at all of these

7  arguments, and denied the exception of res judicata as it

8  relates to Livers.

9      Now, InEx and Knauf is, again, different, but the

10  judge in state court has already looked at it and denied the

11  exception, and it went, again, to the Fourth Circuit and the

12  Supreme Court.

13      THE COURT:  I do understand the issue, folks.  I

14  appreciate your comments.  It has been very helpful to me.

15      So let me take it under advisement, and I'll come

16  out with an opinion.  Thank you so much.

17      Court will stand in recess.

18      THE DEPUTY CLERK:  All rise.

19      (WHEREUPON, at 10:41 a.m., the proceedings were

20  concluded.)

21                   *    *    *

22

23

24

25

*OFFICIAL TRANSCRIPT*

1                        REPORTER'S CERTIFICATE

2

3          I, Cathy Pepper, Certified Realtime Reporter, Registered

4    Merit Reporter, Certified Court Reporter in and for the State

5    of Louisiana, Official Court Reporter for the United States

6    District Court, Eastern District of Louisiana, do hereby

7    certify that the foregoing is a true and correct transcript to

8    the best of my ability and understanding from the record of the

9    proceedings in the above-entitled and numbered matter.

10

11                              *s/Cathy Pepper*_____

12                              Cathy Pepper, CRR, RMR, CCR
                                Certified Realtime Reporter
13                              Registered Merit Reporter
                                Official Court Reporter
14                              United States District Court
                                Cathy_Pepper@laed.uscourts.gov
15

16

17

18

19

20

21

22

23

24

25

                        ***OFFICIAL TRANSCRIPT***

**0**

**09-MD-2047** [1] - 1:6

**1**

**10:00** [1] - 1:7
**10:41** [1] - 19:19
**1100** [2] - 1:19, 2:5
**1200** [1] - 1:23

**2**

**2011** [1] - 6:21
**2015** [4] - 5:4, 5:7, 13:13, 15:8
**2018** [2] - 1:7, 4:2
**23** [2] - 1:7, 4:2

**3**

**3100** [1] - 1:19

**4**

**4** [1] - 3:5
**400** [1] - 1:23
**40TH** [1] - 2:10

**5**

**500** [1] - 2:14
**504** [1] - 2:15
**589-7779** [1] - 2:15

**7**

**70001** [1] - 2:6
**701** [1] - 2:10
**70130** [2] - 1:24, 2:15
**70139** [1] - 2:10
**70163** [1] - 1:20

**8**

**8** [4] - 4:22, 5:10, 7:11, 10:20

**9**

**9** [1] - 6:21
**9th** [3] - 7:24, 8:7, 8:8

**A**

**a.m** [1] - 19:19
**A.M** [1] - 1:7
**ability** [1] - 20:8
**able** [5] - 4:16, 14:7, 15:13, 17:9, 17:10
**above-entitled** [1] - 20:9
**account** [2] - 10:6, 11:4
**Act** [2] - 6:3, 13:9
**action** [2] - 15:5, 16:12
**actions** [1] - 17:12
**added** [1] - 7:8
**addition** [1] - 7:5
**adequate** [1] - 10:6
**admissions** [1] - 17:7
**adopt** [1] - 13:1
**advisement** [1] - 19:15
**affidavit** [2] - 16:24, 17:17
**ago** [2] - 16:22, 18:12
**agreement** [11] - 4:16, 4:17, 4:20, 7:5, 7:10, 9:7, 10:12, 12:14, 12:19, 17:12
**agreements** [1] - 13:14
**ALL** [1] - 1:9
**allegation** [1] - 16:23
**allegations** [1] - 15:21
**alleged** [2] - 15:22, 16:20
**allow** [1] - 16:11
**allowed** [1] - 14:16
**almost** [1] - 15:10
**ambiguity** [1] - 13:7
**amount** [3] - 6:6, 7:11, 9:14
**AND** [1] - 2:3
**ANDREW** [1] - 1:19
**answer** [1] - 17:6
**Anti** [2] - 6:3, 13:9
**Anti-Injunction** [2] - 6:3, 13:9
**apart** [1] - 17:11
**appeal** [2] - 5:17
**appealed** [2] - 13:23
**appearance** [1] - 12:6
**APPEARANCES** [2] - 1:15, 2:1
**applied** [1] - 9:5
**apply** [2] - 11:13, 14:4
**appreciate** [2] - 8:12, 19:14
**approval** [2] - 10:12, 10:13
**ARCH** [1] - 2:8
**Arch** [4] - 9:10, 12:4, 12:6, 12:20
**area** [1] - 8:9
**AREAUX** [1] - 1:18
**argue** [1] - 16:13
**argued** [1] - 17:22
**argument** [4] - 9:17, 13:21, 16:20, 16:22
**arguments** [1] - 19:7
**arising** [1] - 7:1
**AT** [1] - 1:7
**avoid** [2] - 12:14, 12:16
**aware** [2] - 13:17, 15:3

**B**

**B406** [1] - 2:14
**backdoor** [1] - 16:11
**background** [1] - 4:10
**bar** [2] - 10:13, 10:16
**became** [1] - 17:5
**BEFORE** [1] - 1:12
**behalf** [4] - 12:4, 12:25, 13:6, 15:18
**belief** [1] - 13:16
**bellwether** [1] - 4:11
**benefit** [2] - 7:11, 7:20
**best** [1] - 20:8
**better** [1] - 18:6
**between** [3] - 13:8, 14:18, 17:13
**bill** [1] - 14:9
**bit** [1] - 8:16
**BLOSSMAN** [1] - 1:18
**BOULEVARD** [1] - 2:5
**breach** [1] - 14:6
**BRIEN** [1] - 1:19
**bring** [4] - 13:19, 13:21, 14:20
**bringing** [1] - 13:19
**broad** [5] - 10:5, 10:17, 11:5, 11:9, 12:17
**broader** [8] - 8:24, 9:4, 9:8, 11:21, 11:25, 12:12, 12:14
**brought** [4] - 5:15, 9:6, 16:19, 17:1
**BUILDING** [1] - 1:17
**BURNS** [2] - 2:3, 2:3
**Burns** [3] - 13:6, 16:25, 19:3
**BURR** [1] - 2:9
**BY** [6] - 1:18, 1:23, 2:4, 2:9, 2:17, 2:18

**C**

**CALLED** [1] - 4:4
**CARVER** [1] - 1:17
**case** [11] - 5:15, 5:20, 5:24, 7:4, 12:7, 13:16, 14:20, 15:12, 17:2, 17:13
**cases** [1] - 4:11
**CASES** [1] - 1:9
**Cathy** [2] - 20:3, 20:12
**CATHY** [1] - 2:13
**Cathy_Pepper@laed.uscourts.gov** [2] - 2:16, 20:14
**causes** [1] - 17:12
**CCR** [2] - 2:13, 20:12
**CDC** [1] - 16:22
**certain** [4] - 5:7, 9:14, 10:22, 11:1
**certainly** [2] - 11:22, 18:21
**certainty** [1] - 12:17
**CERTIFICATE** [1] - 20:1
**CERTIFIED** [2] - 2:13, 2:14
**Certified** [3] - 20:3, 20:4, 20:12
**certify** [1] - 20:7
**chain** [1] - 7:6
**challenge** [1] - 16:5
**challenged** [3] - 13:25, 16:7, 16:10
**CHEHARDY** [1] - 2:3
**Chinese** [7] - 5:1, 7:1, 7:12, 10:2, 13:13, 13:17, 15:6
**CHINESE** [1] - 1:4
**CHINESE-MANUFACTURED** [1] - 1:4
**chip** [1] - 12:25
**Chip** [1] - 15:18
**Circuit** [2] - 13:23, 19:11
**CIVIL** [1] - 1:6
**claim** [5] - 5:12, 5:14, 9:5, 11:15, 14:6
**claimants** [1] - 4:24
**claims** [30] - 6:25, 7:12, 7:16, 7:24, 7:25, 8:1, 8:8, 8:21, 8:22, 9:12, 9:13, 9:15, 9:16, 9:18, 10:7, 10:10, 10:11, 10:15, 10:24, 11:2, 11:7, 11:13, 12:11, 12:16, 14:5, 14:9, 15:13
**clarification** [2] - 18:16, 18:19
**clarify** [1] - 18:6
**class** [29] - 5:11, 5:13, 5:14, 6:16, 6:19, 6:20, 6:23, 6:24, 7:12, 8:10, 8:19, 8:21, 8:23, 8:24, 9:14, 9:23, 9:25, 10:5, 10:6, 10:11, 10:18, 11:9, 11:21, 12:1, 15:5, 16:11, 16:12
**clear** [9] - 12:2, 14:17, 18:6, 18:8, 18:11, 18:22, 18:24, 18:25
**clearly** [1] - 18:9
**CLERK** [2] - 4:7, 19:18
**client** [1] - 17:17
**clients** [3] - 13:12, 14:7, 14:21
**coextensive** [1] - 8:19
**coming** [1] - 15:23
**comments** [1] - 19:14
**commerce** [1] - 7:6
**Company** [1] - 12:5
**COMPANY** [1] - 2:8
**compensation** [1] - 4:24
**completely** [1] - 17:13
**complicated** [1] - 6:16
**COMPUTER** [1] - 2:18
**concedes** [2] - 17:22, 18:23
**concern** [1] - 6:14
**concerns** [1] - 11:3
**concluded** [1] - 19:20
**conflating** [1] - 8:16
**confused** [3] - 18:1, 18:5, 18:8
**consists** [2] - 6:20, 6:24
**construction** [1] - 14:6
**Construction** [2] - 13:1, 15:19
**CONSTRUCTION** [1] - 1:22
**CONTINUED** [1] - 2:1
**contract** [2] - 14:6, 14:22
**contractor** [3] - 13:15, 14:21, 17:14
**contributed** [2] - 5:11, 7:6
**correct** [1] - 20:7
**counsel** [5] - 4:15, 11:9, 12:5, 17:2, 19:5

**counterclaims** [1] - 7:16
**course** [1] - 19:4
**COURT** [18] - 1:1, 2:13, 4:4, 4:8, 9:11, 10:1, 10:19, 10:23, 11:16, 12:3, 12:24, 13:4, 14:24, 15:17, 16:14, 17:19, 18:24, 19:13
**court** [20] - 5:15, 5:19, 5:22, 6:5, 11:7, 13:17, 13:20, 15:10, 15:14, 15:21, 15:22, 15:25, 18:2, 18:6, 18:7, 19:5, 19:6, 19:10, 19:17
**Court** [21] - 5:18, 5:22, 6:7, 6:9, 8:15, 12:20, 13:24, 15:11, 16:2, 16:4, 18:12, 18:17, 18:20, 19:12, 20:4, 20:5, 20:6, 20:13, 20:14
**covered** [1] - 10:6
**CRR** [2] - 2:13, 20:12

**D**

**damaged** [2] - 8:2, 8:3
**damages** [1] - 16:18
**DARDEN** [1] - 1:17
**date** [1] - 11:12
**dates** [1] - 9:2
**dealing** [1] - 9:12
**December** [5] - 6:21, 7:24, 8:7, 8:8, 11:11
**decide** [2] - 18:2
**default** [1] - 4:12
**defective** [2] - 5:2, 14:23
**defendants** [2] - 6:25, 7:6
**defined** [1] - 6:19
**definition** [8] - 7:20, 7:21, 8:18, 8:23, 9:6, 10:17, 11:21, 12:2
**denied** [6] - 13:21, 13:24, 16:3, 19:7, 19:10
**DEPUTY** [2] - 4:7, 19:18
**describes** [1] - 6:23
**develop** [2] - 13:16, 17:10
**different** [3] - 14:14, 19:4, 19:9
**difficult** [1] - 6:18
**difficulties** [1] - 5:6

**discover** [1] - 13:12
**discovery** [2] - 13:16, 17:5
**discretion** [2] - 14:4, 15:3
**discussed** [1] - 16:21
**discusses** [1] - 15:12
**dismissal** [1] - 5:20
**dispute** [1] - 10:25
**distributed** [1] - 7:2
**DISTRICT** [3] - 1:1, 1:1, 1:13
**District** [3] - 20:6, 20:14
**DOCKET** [1] - 1:6
**document** [2] - 12:12, 12:13
**DOCUMENT** [1] - 1:9
**dollars** [1] - 14:10
**done** [2] - 6:2, 6:11
**downstream** [9] - 4:18, 4:19, 4:21, 8:14, 9:7, 13:3, 14:25, 15:4, 19:1
**DRYWALL** [1] - 1:5
**drywall** [8] - 5:1, 7:1, 7:13, 10:2, 13:13, 13:17, 15:6
**due** [2] - 9:15, 9:19
**Duncan** [2] - 12:25, 15:18
**DUNCAN** [6] - 1:22, 1:23, 12:25, 15:2, 15:18, 16:16
**Duplantier** [1] - 12:4
**DUPLANTIER** [3] - 2:9, 12:4, 18:10
**duty** [1] - 15:24

**E**

**Eastern** [1] - 20:6
**EASTERN** [1] - 1:1
**echo** [1] - 12:8
**effect** [1] - 18:12
**efforts** [1] - 4:15
**eight** [1] - 11:6
**ELDON** [1] - 1:12
**ELTON** [1] - 1:23
**emphasize** [1] - 11:10
**encompassing** [1] - 11:5
**end** [2] - 13:13, 15:8
**enjoin** [2] - 5:22, 18:7
**enrolled** [1] - 17:2
**enter** [1] - 14:22
**entered** [1] - 6:5
**entities** [9] - 4:18, 6:21, 6:24, 7:4, 7:5,

7:25, 8:10, 8:14, 9:2
**entitled** [1] - 20:9
**entity** [1] - 7:3
**ESQUIRE** [6] - 1:18, 1:19, 1:23, 2:4, 2:5, 2:9
**event** [2] - 4:12, 5:7
**exact** [2] - 13:8, 13:10
**exactly** [4] - 10:7, 10:15, 12:14, 16:7
**exception** [4] - 13:22, 16:1, 19:7, 19:11
**excess** [1] - 10:25
**exercise** [1] - 6:9
**explore** [2] - 17:6, 17:16
**expressly** [1] - 19:1
**extent** [3] - 8:2, 18:15, 18:19
**Exterior** [2] - 12:6, 12:11

**F**

**facing** [1] - 11:6
**fact** [5] - 6:4, 8:20, 9:4, 10:9, 16:14
**facts** [1] - 5:5
**fair** [1] - 8:6
**fall** [1] - 6:16
**FALLON** [1] - 1:12
**federal** [4] - 5:23, 6:5, 15:21, 18:7
**federal/state** [1] - 6:2
**felt** [1] - 4:13
**file** [1] - 15:9
**filed** [6] - 5:8, 5:15, 6:21, 7:24, 8:8, 13:18
**final** [2] - 16:3
**finally** [1] - 15:12
**finished** [1] - 10:2
**FINN** [1] - 1:18
**first** [5] - 4:17, 7:3, 15:20, 15:23, 18:11
**FLOOR** [1] - 2:10
**focus** [1] - 8:11
**folks** [1] - 19:13
**FOR** [5] - 1:17, 1:22, 2:3, 2:8, 3:5
**foregoing** [1] - 20:7
**forward** [5] - 5:22, 14:16, 15:13, 17:10, 17:15
**Fourth** [2] - 13:23, 19:11
**fraud** [7] - 16:15, 16:16, 16:20, 16:23, 17:10, 17:20

**front** [2] - 13:21, 14:2
**fund** [1] - 4:23
**funds** [1] - 7:6
**future** [7] - 9:12, 9:13, 9:15, 9:16, 9:18, 10:10

**G**

**GALLERIA** [1] - 2:5
**GALLOWAY** [1] - 2:8
**general** [1] - 10:17
**generally** [2] - 9:12, 17:21
**gingerly** [2] - 6:1, 6:10
**Griffin** [2] - 13:21, 16:20
**group** [1] - 4:22
**guess** [1] - 18:4

**H**

**hands** [1] - 6:18
**hard** [1] - 11:8
**HAYES** [1] - 2:4
**hear** [2] - 8:11, 15:17
**HEARD** [1] - 1:12
**hearing** [1] - 17:3
**help** [1] - 9:11
**helpful** [1] - 19:14
**hereby** [1] - 20:6
**hired** [1] - 14:22
**homeowner** [1] - 17:13
**homeowners** [1] - 15:5
**homes** [2] - 7:8, 14:14
**Honor** [14] - 8:13, 8:16, 9:23, 10:8, 10:16, 11:8, 11:18, 14:2, 14:17, 15:18, 16:4, 18:10, 18:21, 19:2
**HONORABLE** [1] - 1:12
**house** [2] - 14:7, 15:6
**hundreds** [1] - 14:10

**I**

**idea** [1] - 15:8
**identified** [1] - 12:18
**III** [1] - 1:23
**implemented** [1] - 7:7
**IN** [1] - 1:4
**INC** [1] - 1:22
**Inc** [1] - 13:1
**included** [1] - 14:25

**indemnity** [1] - 11:23
**independent** [1] - 12:23
**individuals** [4] - 4:25, 6:16, 8:7, 9:13
**InEx** [45] - 4:21, 4:22, 5:3, 5:8, 5:9, 6:23, 6:24, 7:2, 7:9, 7:10, 7:12, 7:19, 7:21, 7:23, 8:14, 8:17, 8:18, 8:19, 8:20, 8:23, 9:1, 9:2, 9:4, 9:6, 9:9, 10:18, 10:25, 11:4, 11:13, 11:19, 11:25, 12:9, 12:18, 13:19, 14:2, 14:19, 14:20, 15:1, 15:15, 16:5, 18:22, 18:24, 19:2, 19:9
**information** [1] - 4:13
**Injunction** [2] - 6:3, 13:9
**injunction** [3] - 6:9, 12:7, 14:19
**injunctions** [1] - 13:10
**INJUNCTIVE** [1] - 3:5
**injuries** [2] - 8:4, 10:23
**input** [1] - 6:15
**installed** [2] - 5:2, 15:6
**installer** [3] - 4:22, 5:9, 13:3
**installers** [3] - 4:19, 5:2, 5:8
**instance** [1] - 6:12
**Insurance** [1] - 12:5
**insurance** [1] - 7:11
**INSURANCE** [1] - 2:8
**insurers** [1] - 9:10
**intended** [5] - 8:21, 9:9, 10:10, 10:16, 11:6
**interdependent** [3] - 7:15, 11:17, 11:19
**interfered** [1] - 6:8
**Interior** [2] - 12:5, 12:11
**INTERIOR/ EXTERIOR** [1] - 1:17
**interrelated** [6] - 7:15, 11:17, 11:19, 11:20, 11:22, 11:24
**involved** [6] - 4:21, 5:23, 6:12, 15:4, 16:15, 17:12
**involving** [1] - 7:12
**issue** [4] - 14:18, 15:11, 15:15, 19:13
**issued** [3] - 16:4,

18:12, 18:19
**issues** [3] - 6:16,
11:24, 12:9

## J

**JANUARY** [2] - 1:7,
4:2
**JOHNSON** [1] - 2:8
**join** [1] - 12:6
**joins** [1] - 12:20
**JR** [2] - 2:3, 2:9
**Judge** [3] - 13:5, 13:7,
13:21, 16:24, 19:3
**judge** [3] - 5:16, 5:23,
15:2, 19:10
**JUDGE** [1] - 1:13
**judgment** [4] - 6:5,
6:8, 16:3, 16:4
**judgments** [1] - 4:12
**judicata** [2] - 13:22,
19:7
**judiciously** [1] - 6:2
**jurisdiction** [1] - 18:17
**jurisprudence** [2] -
6:4, 18:5

## K

**keep** [1] - 10:21
**Knauf** [32] - 4:10,
4:17, 4:18, 4:20,
6:19, 6:20, 7:3, 7:5,
7:19, 7:20, 7:22,
8:17, 8:19, 8:21,
8:24, 9:1, 9:3, 9:8,
10:20, 11:11, 11:12,
11:13, 11:20, 11:23,
11:25, 12:12, 12:22,
14:20, 15:15, 19:9
**knowledge** [1] - 14:13
**known** [6] - 6:25, 7:25,
8:1, 8:6, 8:8, 15:24
**KORETZKY** [1] - 1:17

## L

**L.P** [1] - 1:17
**LA** [5] - 1:20, 1:24,
2:6, 2:10, 2:15
**language** [5] - 8:18,
10:13, 10:14, 11:9,
12:17
**lawsuit** [1] - 6:21
**learned** [1] - 4:14
**least** [1] - 14:5
**ledger** [1] - 4:11
**left** [2] - 9:21, 14:1

**level** [2] - 13:17, 13:20
**LIABILITY** [1] - 1:5
**Liberty** [1] - 9:10
**likely** [1] - 14:2
**limit** [1] - 7:23
**listed** [1] - 13:3
**litigation** [2] - 4:15,
6:22
**LITIGATION** [1] - 1:5
**liver** [1] - 19:4
**LIVERS** [1] - 1:22
**Livers** [18] - 12:25,
13:2, 13:18, 13:20,
14:5, 14:7, 14:12,
14:16, 14:18, 15:3,
15:13, 15:19, 15:22,
16:21, 17:6, 17:10,
18:25, 19:8
**look** [3] - 8:18, 15:7,
19:5
**looked** [2] - 19:6,
19:10
**Louis** [1] - 15:22
**LOUISIANA** [2] - 1:1,
1:7
**Louisiana** [3] - 5:18,
20:5, 20:6

## M

**MANUFACTURED** [1]
- 1:4
**manufacturers** [1] -
13:19
**marketed** [1] - 7:2
**material** [1] - 4:14
**matter** [1] - 10:2, 20:9
**MATTHEW** [1] - 2:4
**Matthew** [1] - 13:5
**mean** [1] - 10:4, 18:24
**means** [1] - 10:10
**MECHANICAL** [1] -
2:17
**member** [2] - 16:12,
16:13
**members** [2] - 10:7,
10:11
**mentioned** [1] - 7:3
**Merit** [2] - 20:4, 20:13
**MERIT** [1] - 2:14
**METAIRIE** [1] - 2:6
**million** [4] - 4:22,
5:10, 7:11, 10:20
**mind** [1] - 10:21
**misrepresentation** [1]
- 17:11
**missed** [1] - 14:8
**monetize** [1] - 4:14
**money** [1] - 10:19

**monies** [1] - 11:1
**morning** [1] - 13:5
**most** [2] - 10:19, 14:2
**MOTION** [2] - 1:12, 3:5
**motion** [2] - 4:9, 12:7
**movants** [2] - 17:25,
18:4
**moving** [1] - 12:3
**MR** [17] - 8:13, 9:22,
10:3, 10:21, 10:24,
11:18, 12:4, 12:25,
13:5, 15:2, 15:18,
16:16, 16:24, 18:10,
18:21, 18:25, 19:3
**MURRAY** [1] - 2:3
**Mutual** [1] - 9:10

## N

**named** [2] - 6:22, 19:1
**namely** [1] - 6:6
**national** [1] - 7:12
**nature** [2] - 6:10, 6:17
**necessarily** [2] -
11:24, 12:12
**needed** [4] - 12:13,
12:16, 18:19
**needs** [3] - 18:15,
18:16, 18:20
**negligent** [1] - 17:11
**never** [6] - 11:5,
15:22, 16:16, 16:17,
16:20, 17:18
**NEW** [5] - 1:7, 1:20,
1:24, 2:10, 2:15
**Nizialek** [3] - 8:13,
12:8, 18:21
**NIZIALEK** [9] - 1:18,
8:13, 9:22, 10:3,
10:21, 10:24, 11:18,
18:21, 18:25
**NO** [1] - 1:6
**none** [1] - 15:25
**nothing** [5] - 9:17,
9:21, 13:15, 14:1,
15:9
**notice** [10] - 9:23,
9:25, 10:3, 10:5,
10:6, 10:14, 16:6,
16:7, 16:10, 18:13
**number** [2] - 4:11, 7:6
**numbered** [1] - 20:9

## O

**OF** [2] - 1:1, 1:12
**OFFICIAL** [1] - 2:13
**Official** [2] - 20:5,

20:13
**oftentimes** [1] - 8:3
**once** [2] - 6:5, 11:10
**one** [7] - 4:21, 4:25,
5:2, 9:24, 11:14,
12:8, 16:17
**ONE** [1] - 2:5
**open** [1] - 16:6
**opinion** [3] - 5:19,
19:4, 19:16
**opportunity** [2] -
13:20, 14:8
**opposed** [2] - 14:19,
15:16, 17:21
**opposition** [5] - 14:17,
16:25, 17:1, 17:4,
18:22
**opt** [1] - 5:12
**opted** [1] - 10:11
**oral** [2] - 16:20, 16:22
**ORDER** [1] - 4:4
**order** [1] - 10:16
**orders** [2] - 18:12,
18:18
**ORLEANS** [5] - 1:7,
1:20, 1:24, 2:10,
2:15
**otherwise** [1] - 7:1
**ought** [1] - 5:22
**owner** [1] - 5:3

## P

**PAGE** [1] - 3:3
**parcel** [1] - 4:20
**Parsons** [1] - 15:12
**part** [8] - 4:20, 4:23,
5:13, 5:14, 7:19, 9:8,
10:19, 17:23
**particular** [1] - 5:14
**particularly** [2] - 6:6,
12:1
**parties** [4] - 4:12,
7:17, 8:11, 10:4
**party** [5] - 7:16, 12:3,
12:10, 14:2
**past** [1] - 13:13
**people** [4] - 4:19,
4:21, 7:24, 8:1
**Pepper** [3] - 20:3,
20:11, 20:12
**PEPPER** [1] - 2:13
**perched** [1] - 18:1
**peremptory** [1] - 16:1
**perhaps** [1] - 11:13
**period** [1] - 5:6
**person** [2] - 5:11,
14:25
**personal** [2] - 8:4,

10:23
**persons** [3] - 6:20,
6:24, 7:25
**petition** [2] - 15:21,
16:17
**Phil** [4] - 8:13, 13:1,
16:8, 18:21
**PHILIP** [1] - 1:18
**pilot** [1] - 7:7
**Piper** [1] - 16:19
**place** [1] - 13:9
**plaintiff** [1] - 6:22
**plaintiffs'** [1] - 11:9
**plead** [1] - 17:20
**pleading** [4] - 16:17,
16:21, 16:23, 17:23
**pled** [3] - 15:25, 16:16,
17:20
**point** [3] - 5:7, 13:2,
13:14
**position** [7] - 5:9,
14:12, 14:24, 17:19,
17:22, 17:24, 18:9
**pot** [1] - 4:23
**potential** [1] - 12:10
**power** [2] - 5:25, 6:9
**powers** [1] - 5:23
**POYDRAS** [4] - 1:19,
1:23, 2:10, 2:14
**precariously** [1] - 18:1
**preclude** [1] - 11:25
**presented** [2] - 17:4
**prevent** [2] - 10:7,
10:16
**prevented** [1] - 17:15
**previously** [1] - 12:5
**primary** [1] - 7:10
**problem** [1] - 5:4
**PROCEEDINGS** [3] -
1:12, 2:17, 4:1
**proceedings** [2] -
19:19, 20:9
**proceeds** [1] - 7:11
**process** [2] - 9:15,
9:19
**PRODUCED** [1] - 2:18
**product** [1] - 5:2
**PRODUCTS** [1] - 1:5
**program** [2] - 7:7
**project** [1] - 14:6
**promise** [1] - 9:19
**proper** [1] - 16:6
**property** [3] - 5:3, 8:2,
8:3
**protect** [2] - 6:7
**protected** [1] - 6:13
**provider** [1] - 13:3
**provides** [1] - 7:10
**purchased** [1] - 5:1

**pursue** [1] - 14:7
**put** [1] - 4:22

## Q

**quality** [1] - 4:15
**quote** [2] - 6:20, 11:12

## R

**RE** [1] - 1:4
**reach** [1] - 4:16
**reached** [4] - 4:17, 4:18, 4:19, 13:14
**reaching** [1] - 8:20
**really** [4] - 8:9, 11:12, 18:16, 18:20
**Realtime** [2] - 20:3, 20:12
**REALTIME** [1] - 2:13
**reason** [3] - 9:22, 13:8, 17:9
**received** [1] - 4:24
**recess** [1] - 19:17
**RECILE** [1] - 2:4
**recognize** [1] - 13:4
**record** [3] - 15:22, 17:17, 20:8
**RECORDED** [1] - 2:17
**recourse** [1] - 14:10
**reflects** [1] - 10:14
**refused** [1] - 17:6
**regard** [1] - 7:9
**Registered** [1] - 20:3
**registered** [1] - 20:13
**rejected** [5] - 5:16, 5:17, 5:18, 5:19, 15:12
**related** [1] - 7:1
**relates** [4] - 4:10, 14:5, 19:8
**RELATES** [1] - 1:9
**relating** [1] - 19:3
**relations** [1] - 6:3
**relationship** [1] - 12:22
**release** [9] - 8:18, 10:10, 10:17, 12:13, 12:18, 18:13, 19:2
**released** [1] - 13:3
**releasee** [1] - 19:1
**releasees** [2] - 8:14, 9:7
**RELIEF**......................
.. [1] - 3:5
**remedy** [1] - 14:22
**remember** [1] - 10:25
**REPORTER** [3] - 2:13,

2:13, 2:14
**Reporter** [7] - 20:3, 20:4, 20:5, 20:12, 20:13, 20:13
**REPORTER'S** [1] - 20:1
**request** [2] - 5:20, 17:7
**requirement** [1] - 18:13
**requirements** [1] - 9:23
**res** [5] - 6:6, 6:7, 6:12, 13:22, 19:7
**reservation** [2] - 10:9, 10:22
**reserved** [3] - 9:14, 9:17, 11:1
**resolve** [2] - 7:15, 15:14
**resolved** [2] - 11:1, 17:8
**resource** [1] - 14:16
**respect** [2] - 11:4, 18:22
**response** [1] - 15:17
**responses** [1] - 18:10
**restrict** [2] - 9:1, 9:2
**restricted** [2] - 8:7, 8:10
**result** [1] - 8:4
**Richard** [3] - 12:4, 13:1, 16:8
**RICHARD** [1] - 2:9
**rise** [2] - 4:7, 19:18
**RMR** [2] - 2:13, 20:12
**ROOM** [1] - 2:14
**routinely** [2] - 6:1, 6:11

## S

**s/Cathy** [1] - 20:11
**seated** [1] - 4:8
**see** [1] - 8:9
**seem** [1] - 5:5
**sent** [1] - 17:5
**separate** [6] - 9:7, 12:13, 14:18, 15:15, 17:11, 17:13
**served** [1] - 16:21
**settle** [1] - 8:21
**settled** [3] - 5:10, 5:12, 7:3
**settlement** [47] - 6:6, 6:17, 6:18, 6:19, 6:20, 6:23, 6:24, 7:5, 7:9, 7:14, 7:19, 7:20, 7:21, 7:22, 7:23,

8:17, 8:20, 9:1, 9:2, 9:3, 9:4, 9:7, 9:8, 9:9, 10:12, 10:13, 11:4, 11:11, 11:12, 11:20, 11:23, 11:25, 12:1, 12:9, 12:12, 12:13, 12:19, 12:22, 14:8, 14:25, 16:5, 16:8, 16:12
**settlements** [4] - 7:14, 10:5, 11:17, 13:8
**settling** [2] - 6:25, 7:17
**several** [1] - 16:22
**SEVIN** [1] - 1:22
**Sherman** [1] - 13:5
**SHERMAN** [5] - 2:3, 2:4, 13:5, 16:24, 19:3
**side** [2] - 4:10, 8:23
**signed** [1] - 18:18
**sit** [1] - 17:3
**sitting** [1] - 15:9
**situation** [3] - 13:11, 17:24, 18:3
**six** [1] - 11:6
**SMITH** [2] - 2:5, 2:9
**sold** [1] - 7:2
**solid** [1] - 6:4
**sometimes** [1] - 8:3
**sort** [1] - 10:7
**sparingly** [1] - 13:10
**specifically** [2] - 13:2, 17:21
**STAKELUM** [1] - 2:4
**stand** [1] - 19:17
**standpoint** [1] - 9:12
**standstill** [1] - 17:5
**state** [16] - 5:15, 5:16, 5:22, 11:7, 13:17, 13:20, 15:10, 15:14, 15:20, 15:22, 15:25, 18:2, 18:6, 19:5, 19:6, 19:10
**State** [1] - 20:4
**statement** [1] - 8:6
**STATES** [2] - 1:1, 1:13
**States** [2] - 20:5, 20:14
**STENOGRAPHY** [1] - 2:17
**strand** [1] - 18:4
**STREET** [4] - 1:19, 1:23, 2:10, 2:14
**strictly** [1] - 14:21
**struggling** [2] - 7:18, 8:9
**stuck** [2] - 14:9, 14:15
**subcategories** [1] - 12:18

**submitted** [1] - 16:25
**sued** [1] - 5:3
**suggest** [1] - 5:5
**suggestion** [1] - 16:19
**suggests** [1] - 17:17
**suit** [3] - 5:8, 13:18, 15:9
**SUITE** [3] - 1:19, 1:23, 2:5
**supervisory** [1] - 16:2
**supplied** [1] - 7:2
**suppliers** [1] - 4:18
**SUPPLY** [1] - 1:17
**Supreme** [6] - 5:18, 13:24, 15:11, 16:2, 19:12
**surely** [1] - 9:9

## T

**Taishan** [5] - 8:22, 8:23, 10:24, 11:2, 11:15
**teeth** [1] - 9:19
**tendering** [1] - 7:10
**TESSIER** [1] - 1:17
**THE** [18] - 1:12, 4:7, 4:8, 9:11, 10:1, 10:19, 10:23, 11:16, 12:3, 12:24, 13:4, 14:24, 15:17, 16:14, 17:19, 18:24, 19:13, 19:18
**therefore** [1] - 5:13
**they've** [1] - 14:8
**third** [4] - 7:16, 12:10, 14:2
**third-party** [4] - 7:16, 12:10, 14:2
**THIS** [1] - 1:9
**thousands** [1] - 14:10
**tied** [2] - 7:21, 11:11
**TO** [2] - 1:9, 4:4
**today** [10] - 4:10, 4:25, 5:21, 12:15, 14:3, 14:7, 14:15, 17:3, 17:7, 17:15
**TOMPKINS** [1] - 2:8
**took** [1] - 13:22
**totally** [1] - 11:11
**TRANSCRIPT** [2] - 1:12, 2:17
**transcript** [1] - 20:7
**trial** [2] - 5:16
**true** [2] - 11:18, 20:7
**try** [1] - 4:13
**trying** [2] - 13:16, 16:5
**TUESDAY** [2] - 1:7, 4:2

**turn** [1] - 13:15
**two** [2] - 15:10, 18:10
**type** [1] - 18:2
**types** [1] - 10:15

## U

**uncertain** [1] - 18:1
**under** [2] - 5:23, 19:15
**undermine** [1] - 16:8
**underwriters** [1] - 10:25
**unequivocally** [1] - 18:11
**UNITED** [2] - 1:1, 1:13
**United** [2] - 20:5, 20:14
**universal** [1] - 9:5
**unknown** [5] - 6:25, 7:25, 8:1, 8:6, 8:8
**up** [10] - 4:22, 5:14, 5:16, 13:25, 15:11, 15:23, 16:2, 16:6, 16:19, 17:1
**urge** [2] - 14:4, 15:2

## V

**various** [1] - 6:2
**view** [1] - 16:14

## W

**weeds** [1] - 15:20
**Wendy** [1] - 13:6
**WENDY** [1] - 2:3
**WHEREUPON** [1] - 19:19
**WILLIAMS** [1] - 2:3
**Winston** [2] - 13:6, 16:25
**WINSTON** [1] - 2:3
**word** [1] - 16:16
**wording** [2] - 11:16, 12:1
**writ** [3] - 13:22, 16:2
**wrote** [1] - 5:19

## Y

**year** [2] - 15:10, 18:12
**years** [4] - 11:6, 15:10, 16:22

| **Z** |
| --- |
| **ZACHARY**[1] - 2:5 |