UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION<br><br>**THIS DOCUMENT RELATES TO:**<br>**ALL CASES** | MDL No. 2:09-md-2047<br><br>SECTION L<br><br>JUDGE ELDON E. FALLON<br><br>MAGISTRATE JUDGE<br>JOSEPH C. WILKINSON, JR. |

## CNBM AND BNBM ENTITIES' REPLY MEMORANDUM IN SUPPORT OF THEIR RENEWED MOTION TO CERTIFY AN IMMEDIATE APPEAL FROM THE COURT'S JURISDICTIONAL ORDERS

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 2

I.    BOTH JURISDICTIONAL ORDERS PRESENT CONTROLLING QUESTIONS OF LAW ABOUT WHICH THERE ARE SUBSTANTIAL GROUNDS FOR A DIFFERENCE OF OPINION. ............................................................ 2

II.    AN IMMEDIATE APPEAL WILL MATERIALLY ADVANCE THE RESOLUTION OF THIS CASE. ..................................................................... 5

III.    THE FIFTH CIRCUIT'S ORDER DOES NOT FORECLOSE CERTIFYING THE ORIGINAL JURISDICTIONAL ORDER FOR APPEAL. .................................. 9

CONCLUSION ............................................................................................................. 10

CERTIFICATE OF SERVICE ...................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Air Crash off Long Island*,
  27 F. Supp. 2d 431 (S.D.N.Y. 1998) ........................................................................8

*Aparicio v. Swan Lake*,
  643 F.2d 1109 (5th Cir. Unit A Apr. 1981) ............................................................9

*Aucoin v. Matador Servs., Inc.*,
  749 F.2d 1180 (5th Cir. 1985) ..............................................................................10

*In re Baseball Bat Antitrust Litig.*,
  112 F. Supp. 2d 1175 (J.P.M.L. 2000) ....................................................................6

*In re Brand-Name Prescription Drugs Antitrust Litig.*,
  264 F. Supp. 2d 1372 (J.P.M.L. 2003) ....................................................................6

*Bristol-Myers Squibb Co. v. Superior Court*,
  137 S. Ct. 1773 (2017) ..................................................................................1, 4, 5

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
  No. 09-md-02047, 2011 WL 2443693 (E.D. La. June 14, 2011) ............................3

*City of Los Angeles v. Santa Monica Baykeeper*,
  254 F.3d 882 (9th Cir. 2001) ................................................................................10

*Couch v. Telescope, Inc.*,
  611 F.3d 629 (9th Cir. 2010) ..............................................................................3, 4

*DeBernardis v. NBTY, Inc.*,
  No. 17-cv-06125, 2018 WL 461228 (N.D. Ill. Jan. 18, 2018) ................................4

*In re Food Lion, Inc., Fair Labor Standards Act 'Effective Scheduling' Litig.*,
  73 F.3d 528 (4th Cir. 1996) ....................................................................................8

*In re Glaceau Vitaminwater Mktg. & Sales Practice Litig.*,
  No. 11-md-02215, 2013 WL 3490349 (E.D.N.Y July 10, 2013) ............................6

*Hall v. GE Plastic Pac. PTE Ltd.*,
  327 F.3d 391 (5th Cir. 2003) ..................................................................................7

*Greene v. Mizuho Bank, Ltd.*,
  No. 14-cv-01437, 2017 WL 7410565 (N.D. Ill. Dec. 11, 2017) ............................4

*Harch Hyperbarics, Inc. v. Martinucci*,
    No. 09-cv-07467, 2010 WL 4665923 (E.D. La. Nov. 9, 2010) .................................................9

*In re Joint E. & S. Dists. Asbestos Litig.*,
    152 F.R.D. 15 (E.D.N.Y. 1993) ....................................................................................................6

*Kenosha Unified Sch. Dist. v. Whitaker*,
    841 F.3d 730 (7th Cir. 2016) ......................................................................................................10

*In re Lloyd's Am. Tr. Fund Litig.*,
    No. 96-cv-01262, 1997 WL 458739 (S.D.N.Y. Aug. 12, 1997) ...............................................8

*In re Microsoft Corp. Antitrust Litig.*,
    274 F. Supp. 2d 741 (D. Md. 2003) ............................................................................................8

*Reese v. BP Expl. (Alaska) Inc.*,
    643 F.3d 681 (9th Cir. 2011) .......................................................................................................5

**Statutes**

28 U.S.C. § 1292(b) ............................................................................................................1, 2, 9, 10

**Other Authorities**

17 James Wm. Moore et al., Moore's Federal Practice § 112.06[3] .............................................8

16 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Juris. § 3929 (3d
    ed.) ..............................................................................................................................................10

## INTRODUCTION

We already know that the April 21, 2017 jurisdictional order satisfies the criteria set forth in § 1292(b). How? *Because this Court already said so*. The PSC barely acknowledges this, and with good reason: The Court has seen the PSC's arguments and rejected them. Five months ago, this Court certified its April 21 Order for appeal. An appeal didn't proceed because the PSC argued that it would be premature—that the Court first should address the applicability of *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017). Thus, the Court withdrew its certification. Immediately after the Court addressed *BMS*, Defendants renewed their § 1292(b) request, including the jurisdictional questions raised by the *BMS* Order. But, according to the PSC, what was too early before is too late now.

This is gamesmanship, and it is contrary to the best interests of the parties and the judicial system. The Court already agreed that the April 21 Order presents controlling questions of law about which there are substantial grounds for difference of opinion, and the PSC's opposition is principally a rehash of arguments the Court already rejected. *Infra* § I. Given the stakes, the jurisdictional issues identified in the § 1292(b) request must be resolved on appeal before this litigation can be brought to an end. The only question is when that appeal will occur. Unquestionably, the most efficient course is to do so now, in a single appeal to the Fifth Circuit, so that the MDL court or the remand courts can take that single appellate decision into account in shaping the litigation or in determining how trials should proceed. The alternative is multiple post-judgment appeals from multiple transferor courts to multiple appellate courts—at least the Fourth, Fifth, and Eleventh Circuits. Not only is that wasteful; because such appeals can come only after final judgment, it will be too late for any court to avoid engaging in meaningless trials for non-resident plaintiffs whose claims are in the wrong court and against defendants who

1

should never have been in these cases in the first place.  That approach would turn judicial efficiency on its head.  And it would be all the worse given the overlapping complaints in which various plaintiffs appear more than once—meaning that if the PSC has its way, individual plaintiffs could be subject to conflicting rulings of multiple appellate courts.  *Infra* § II.

The PSC is simply wrong that the Fifth Circuit's prior order forecloses certification.  That one-line order expressed no view on the merits of an appeal under § 1292(b).  Instead, the Fifth Circuit undoubtedly relied on the PSC's argument that "the basis for the Defendants' Petition has been revoked until the district court resolves the Defendants' supplemental motion on jurisdiction."  *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, No. 17-90027 (5th Cir. Aug. 25, 2017), Doc. No. 00514132741 at 6.  For that "reason alone," the PSC argued, "th[e] appeal should not proceed."  *Id.*  Indeed, an appeal *could not* proceed at that time because this Court had withdrawn its certification.  *Infra* § III.  Having told the Fifth Circuit that it could not proceed until the *BMS* motion was resolved, and having suggested to this Court that it was requesting only a postponement of a § 1292(b) appeal, *see* Rec. Doc. 20898-1 at 3, the PSC should not be heard to make different arguments now.

## ARGUMENT

### I.      Both Jurisdictional Orders Present Controlling Questions Of Law About Which There Are Substantial Grounds For A Difference of Opinion.

Both of this Court's jurisdictional orders—the April 21 Order and the *BMS* Order— present controlling questions of law as to which there are substantial grounds for a difference of opinion.  The Court already found this to be true of the April 21 Order, and the *BMS* issues are also essential to the resolution of the litigation.

**April 21 Order.**  This Court already recognized that its April 21 Order involved a "controlling question of law" and "that a substantial ground exists for difference of opinion

concerning the propriety of [its] exercise of personal jurisdiction over the CNBM and BNBM Entities."  Rec. Doc. 20890 at 12.  The PSC barely acknowledges the Court's prior ruling. Instead, it simply retreads arguments that the Court already rejected.[1]  Those arguments were wrong then, and they are wrong now.  Alternatively, the PSC argues that the Court failed to "analyze the strength of the arguments in opposition to the challenged ruling."  Opp. at 25 (citation omitted).  On the contrary, the Court "considered and addressed" Defendants' arguments, concluded that those arguments were "not insubstantial," and explained that "a substantial ground exists for difference of opinion concerning the propriety of the Court's exercise of personal jurisdiction."  Rec. Doc. 20890 at 12.

The PSC suggests that the Court may have applied the wrong standard.  Opp. at 24-25. That too is incorrect, and the standard for whether there is a substantial ground for a difference of opinion plainly is met.  A substantial ground for difference of opinion exists if there is "genuine doubt as to the correct legal standard," a circuit split, novel and difficult questions, or a "divergent application of a legal standard."  *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, No. 09-md-02047, 2011 WL 2443693, at *3 (E.D. La. June 14, 2011) (citations omitted). Certification is also appropriate for "complicated questions … under foreign law."  *Couch v. Telescope, Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) (citation omitted).  Courts are divided over applying the "single business enterprise" rule.  Rec. Doc. 21095-1 at 7 (renewed § 1292(b) motion).  And that question—as well as questions regarding the false conflicts doctrine, and

---

[1] For instance, with regard to the Court's application of the false conflicts doctrine, the PSC asserts (as before) that the question is not controlling because (it says) Defendants did not dispute that "the forum makes little difference to this litigation."  *Compare* Rec. Doc. 21138-2 ("Opp.") at 22-23, *with* Rec. Doc. 20827-2 at 15-16 & n.46.  This is still simply false.  There is and always has been considerable dispute about this question.  Defendants argued that they win under every forum's standard—but that doesn't mean that every standard is the same or that they *lose* under every standard.  In addition, the PSC again argues that whether Defendants exerted sufficient control over Taishan to impute contacts is a fact-specific question.  *Compare* Opp. at 23, 25, *with* Rec. Doc. 20827-2 at 16-18. But the question Defendants pose relates to the appropriate legal standard.  Plainly, that is a question of law, as this Court's prior certification recognized.

about the need for a full due process inquiry when jurisdictional contacts are imputed on an agency or SBE theory—are just the sort of novel or difficult issues appropriate for immediate review. *See id.* at 5-9. In addition, as the Court expressly recognized when explaining the difficulty it encountered with applying Chinese law in this MDL (Rec. Doc. 20890 at 12), the order also merits immediate review because it involved resolution of "complicated questions … under foreign law." *See Couch*, 611 F.3d at 633.

**BMS Order**. In asking this Court to vacate its certification, the PSC argued the issues in the April 21 Order "substantially overlap" with the *BMS* issues. Rec. Doc. 20898 at 2; *see also* Rec. Doc. 20898-1 at 5. That overlap supports simultaneous appellate review of both orders.

As our renewed motion explains (at 9-16), at issue here are pure questions of law regarding the applicability of *BMS* to class actions and whether the analysis here was faithful to *BMS*. Those legal questions are controlling: They will dictate whether and in which cases non-resident plaintiffs may remain. And there can be little doubt that substantial grounds for disagreement exist; numerous judges *have in fact* disagreed, *see* Rec. Doc. 21095-1 at 13-16, and that disagreement has only deepened since Defendants filed the recertification request. *See, e.g.*, *DeBernardis v. NBTY, Inc.*, No. 17-cv-06125, 2018 WL 461228, at *2 (N.D. Ill. Jan. 18, 2018) (disagreeing expressly with this Court's *BMS* decision and concluding that "it is more likely than not … that the courts will apply *Bristol-Myers Squibb* to outlaw nationwide class actions" filed outside a defendant's home state); *Greene v. Mizuho Bank, LTD*, __ F. Supp. 3d __, 2017 WL 7410565, at *4 (N.D. Ill. Dec. 11, 2017) (due process principles identified in *BMS* apply "with equal force" "to named plaintiffs in a putative class action"). The PSC says that this disagreement isn't enough without disagreement among courts of appeals, but that plainly is wrong; it is enough that "fair-minded jurists might reach contradictory conclusions" on "novel

4

legal issues" even if "contradictory precedent" has not yet developed.  *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011).[2]

The rest of the PSC's arguments simply rehash the merits.  The PSC says that *BMS* is inapplicable in MDLs and nationwide class actions.  Opp. at 23-24, 26.  But that's the very question at issue here, and it's one about which courts are divided, which is all that is required for certification.

## II.    An Immediate Appeal Will Materially Advance The Resolution Of This Case.

The jurisdictional orders resolve critical questions whose resolution will materially advance the litigation.  *See* Rec. Doc. 21095-1 at 4-16.  Simply put, this litigation cannot be resolved until the status of the CNBM and BNBM entities has been finally determined on appeal.  And again—*this Court already has agreed*.  Rec. Doc. 20890 at 11-12.  The Court recognized that an immediate appeal could "eliminat[e] the possibility of a meaningless trial, particularly in light of the fact that the Defendants are not seeking to stay the litigation pending the outcome of the appeal."  *Id*.  To delay resolving jurisdiction is to commit this Court and remand courts to conducting trials that may prove meaningless.  If, for instance, the PSC's impermissible nationwide class is overturned on appeal, then the litigation will be back at square one.  And if these issues are not resolved until after cases reach final judgment following remand from this MDL, not only will there be meaningless trials, but it will guarantee the need for multiple appeals to different appellate courts and at different times.  Such an approach will needlessly use judicial resources, and it gives rise to the extraordinary possibility of circuit splits *within a single litigation*.  There could be nothing more antithetical to the purpose of an MDL.

---

[2] The PSC argues (Opp. at 25) that the standard for certification is not whether "[r]easonable jurists could disagree" about these *BMS* issues.  The PSC is wrong.  "A substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution."  *Reese*, 643 F.3d at 688.

The PSC responds that this is all about delay.  *E.g.*, Opp. at 1, 4, 17, 18, 19.  Again, the accusation is untrue.  The Court itself agreed that resolving fundamental jurisdictional issues is important to the efficient resolution of this litigation.  There could be no clearer indication that the PSC is wrong about this than that—as before—Defendants have not requested a stay of proceedings while an appeal is pending.

And, as before, the PSC has not demonstrated that an appeal will delay proceedings.  It baldly asserts, citing no authority, that "the Court would be unable to [remand cases] while a jurisdictional appeal was pending in the Fifth Circuit."  Opp. at 3-4 & n.10.  As an initial matter, it is far from clear that remands would necessarily occur before the Fifth Circuit resolves an appeal.  The PSC's own "End Game proposal" contemplates many months of proceedings before this Court, *see* Rec. Doc. 20913 at 21-26, after which the JPML would have to approve remanding the cases.  Nor, contrary to the PSC's suggestion (at 3), did Defendants contend in their "End Game proposal" that a remand is impossible while jurisdictional issues are on appeal.  Rather, Defendants argued that *this Court* should address all personal jurisdiction issues before remanding, Rec. Doc. 20923 at 2-3; Rec. Doc. 20876 at 5-8, which it now has done.  Even if remands might occur before completion of an appeal, the PSC has offered no authority that an appeal would foreclose remand.  Under 28 U.S.C. § 1407, the JPML and the MDL court enjoy broad authority to determine when remand is appropriate,[3] and the JPML has transferred cases while an appeal is pending.[4]

---

[3] *See In re Brand-Name Prescription Drugs Antitrust Litig.*, 264 F. Supp. 2d 1372, 1375-76 (J.P.M.L. 2003); *In re Baseball Bat Antitrust Litig.*, 112 F. Supp. 2d 1175, 1177 (J.P.M.L. 2000).

[4] *See In re Joint E. & S. Dists. Asbestos Litig.*, 152 F.R.D. 15, 17 (E.D.N.Y. 1993); *cf. Baseball Bat Antitrust Litig.*, 112 F. Supp. 2d at 1177 (retransfer when dispositive motion pending in MDL court); *In re Glaceau Vitaminwater Mktg. & Sales Practice Litig.*, No. 11-md-02215, 2013 WL 3490349, at *10 & n.28 (E.D.N.Y July 10, 2013) (same).

Separately, the PSC suggests that any benefits of an immediate appeal have evaporated in the short time since the Court previously certified its order for appeal—on the theory that this litigation no longer is at "the beginning of a case" because there are "End Game proposals" before the Court.  Opp. at 3-4 & n.10, 26-29.  This argument is simply contrary to fact.  The posture of the litigation has changed little in the intervening period.  As the PSC elsewhere admits, the Court already had steered the litigation toward the end game in June 2017, well in advance of the Court's August 2017 certification.[5]  The Court didn't believe the "End Game proposals" stood in the way of certification; it had received the PSC's proposal by the time it vacated its certification order and signalled that certification would be more prudent following resolution of Defendants' *BMS* motion.  Rec. Doc. 20927 at 3.  And we know the PSC doesn't actually think that the "End Game proposals" stand in the way of certification.  Just one week before the PSC filed its end game proposal (on August 22, 2017), it told the Court (on August 17) that "Defendants will be in a position after the Court's ruling on *BMS* issues to seek immediate appeal of all of their jurisdictional issues at one time."  Rec. Doc. 20898-1 at 3.  It seems that an appeal was too early then, and it's too late now.  Apparently the Goldilocks moment passed us all by when no one was looking.  Whether or not this turnabout triggers formal judicial estoppel, the Court should not countenance an obvious attempt to play "fast and loose" with the court by "changing positions based upon the exigencies of the moment."  *Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 400 (5th Cir. 2003) (citation omitted).

Ultimately, the PSC's proposed approach would create major, unnecessary practical difficulties for the MDL.  The issues before the Court are ones that will have to be resolved on

---

[5] Opp. at 8 n.29; *see also* Rec. Doc. 20876 at 5-7 (Defendants' pre-certification litigation plan proposing actions for the Court to take before remanding the cases).

appeal, and the only question is whether that will happen now (in a single consolidated appeal) or later (in multiple appeals to multiple appellate courts from the various transferor courts) as each case that comprises this MDL reaches final judgment.  There can be little question which approach is more efficient:  An immediate appeal of an MDL court's order in "[a] consolidated appeal, heard by the appellate court having jurisdiction over the transferee court that entered the orders, is the best means of achieving the goals of efficient and uniform adjudication of numerous actions."  *In re Food Lion, Inc., Fair Labor Standards Act 'Effective Scheduling' Litig.*, 73 F.3d 528, 533 (4th Cir. 1996); *see also In re Microsoft Corp. Antitrust Litig.*, 274 F. Supp. 2d 741, 743 (D. Md. 2003); *In re Air Crash off Long Island*, 27 F. Supp. 2d 431, 435-36 (S.D.N.Y. 1998); 17 James Wm. Moore et al., Moore's Federal Practice § 112.06[3] (updated Dec. 2017).  The PSC's contrary approach would mean multiple, separate appeals to the Fourth, Fifth, and Eleventh Circuits at different times.  At best, therefore, the PSC's approach would require multiple courts of appeals to expend the resources to evaluate a single order.  At worst, it would invite chaos:  If the appellate courts reach different results, the various transferor courts (and this Court) would have to assess which appellate ruling applies to a given plaintiff's claim. *See Air Crash*, 27 F. Supp. at 436.  That would be wasteful enough in the best of circumstances; it would be far worse here given the PSC's filing of overlapping complaints in which a single plaintiff may have his claims remanded to multiple courts in different circuits.  In short, the PSC's contrary approach threatens to "burden … the judicial system itself," *id.* at 435, and "frustrate the aims of § 1407," *Food Lion*, 73 F.3d at 532.

Courts long have recognized that because "efficiency concerns are greatest in large, complex cases, [§ 1292(b)] certification may be more freely granted in so-called 'big' cases." *In re Lloyd's Am. Tr. Fund Litig.*, No. 96-cv-01262, 1997 WL 458739, at *4 (S.D.N.Y. Aug. 12,

1997).  After all, even when there is not the added complexity of an MDL, certification "for interlocutory appeal is appropriate" when it will result in the dismissal of some claims or limit the complexity of the resulting litigation.  *Harch Hyperbarics, Inc. v. Martinucci*, No. 09-cv-07467, 2010 WL 4665923, at *5 (E.D. La. Nov. 9, 2010).  The PSC speculates that efficiency gains may not materialize, given that claims against Taishan will remain.  Opp. at 27-28.  But an immediate appeal would avoid having the claims of various non-resident plaintiffs remanded for trial in multiple jurisdictions and would simplify the parties in resulting trials.  Given the many ways in which an immediate appeal would further the goals of "institutional efficiency of the federal court system," *see Harch*, 2010 WL 4665923, at *5, an immediate appeal is appropriate now.

### III.    The Fifth Circuit's Order Does Not Foreclose Certifying The Original Jurisdictional Order For Appeal.

Finally, the PSC argues that the Fifth Circuit's previous order regarding certification forecloses an appeal here.  Opp. at 15-18.  (Even so, the PSC limits this argument to the original order and does not identify any impediment to an appeal of the *BMS* Order.  *Id.* at 22.)  The PSC's supposition seems to be that the Fifth Circuit denied the certification request on the merits.  But even if that were true—and it is not, for the reasons we discuss next—the PSC is wrong that a court cannot recertify a question for appeal.  This Court can recertify if the "criteria of the statute are satisfied" and it determines that an interlocutory appeal is "appropriate."  *See Aparicio v. Swan Lake*, 643 F.2d 1109, 1112 (5th Cir. Unit A Apr. 1981); *see also id.* at 1113 (district court may recertify, even following the denial of a § 1292(b) petition as untimely, if "[t]he reasons for the earlier certification order continue[] to exist").

In any event, there is no serious likelihood that the Fifth Circuit denied the Petition on the merits.  It surely did so because this Court's withdrawal of its certification deprived the Fifth

Circuit of the ability to hear any appeal.  28 U.S.C. § 1292(b) (only after district court certification may a court of appeals exercise its "discretion" to "permit an appeal to be taken from such order").  Defendants themselves brought this Court's decertification decision to the attention of the Fifth Circuit,[6] and the PSC then argued that the Fifth Circuit had lost jurisdiction.[7]  A decision to decertify "destroys" the court of appeals' "jurisdiction to consider the petition under § 1292(b)."  *Kenosha Unified Sch. Dist. v. Whitaker*, 841 F.3d 730, 732 (7th Cir. 2016); *see City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 889 & n.1 (9th Cir. 2001); 16 Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Juris. § 3929 (3d ed.); Rec. Doc. 21095 at 5 n.2.[8]  As the PSC elsewhere must admit, the Fifth Circuit is "cognizant of its own jurisdiction."  Opp. at 17 n.65.  Indeed, the Fifth Circuit strictly construes its own jurisdiction, *see, e.g.*, *Aucoin v. Matador Servs., Inc.*, 749 F.2d 1180, 1181 (5th Cir. 1985), and that is all that it did here.

## CONCLUSION

For the foregoing reasons, as well as those stated in the memorandum supporting the Defendants' motion, the Court should grant the Motion, expressly find that the requirements of § 1292(b) are met with respect to the Court's jurisdictional orders (Rec. Docs. 20739, 21088), and amend those orders to certify them for immediate appeal.

---

[6] The PSC (at 16) seeks to make hay of the fact that Defendants informed the Fifth Circuit that they would "soon be filing an objection and motion for reconsideration with the district court."  *Chinese-Manufactured Drywall*, No. 17-90027 (5th Cir. Aug. 25, 2017), Doc. No. 00514132912 at 3.  The PSC's suggestion is that this statement implicitly acknowledged the Fifth Circuit's jurisdiction, but just the opposite is true.  Reconsideration—i.e., reinstating the certification—was necessary in order to re-confer jurisdiction that Defendants recognized the Fifth Circuit had lost.

[7] *See Chinese-Manufactured Drywall*, No. 17-90027 (5th Cir. Aug. 25, 2017), Doc. No. 00514132741 at 6 (arguing that appeal is foreclosed because "the basis for Defendants' Petition has been revoked until the district court resolves the Defendants' supplemental motion on jurisdiction"; the Petition may be "denied for this reason alone").

[8] Contrary to the PSC's assertion (at 16-17), appellate courts will sometimes deny, rather than dismiss for lack of jurisdiction, a § 1292(b) petition even when the basis for that denial is a jurisdictional defect.  *See, e.g.*, *Kenosha*, 841 F.3d at 732 ("Because we lack appellate jurisdiction, the petition for permission to appeal under 28 U.S.C. §1292(b) is DENIED.").

Dated:  February 8, 2018

Respectfully submitted,


*/s/ L. Christopher Vejnoska*

L. Christopher Vejnoska (CA Bar No. 96082)
ORRICK, HERRINGTON & SUTCLIFFE
LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105
Tel:  415-773-5700
Email:   cvejnoska@orrick.com

Eric A. Shumsky (D.C. Bar No. 477926)
ORRICK, HERRINGTON & SUTCLIFFE
LLP
Columbia Center
1152 15th Street NW
Washington, D.C. 20005
Tel: 202-339-8400
Email: eshumsky@orrick.com

James L. Stengel (NY Bar No. 1800556)
Xiang Wang (NY Bar No. 4311114)
ORRICK, HERRINGTON & SUTCLIFFE
LLP
51 West 52nd Street
New York, NY, 10019
Tel:   212-506-5000
Email:  jstengel@orrick.com
                xiangwang@orrick.com

*Counsel for CNBM Co. Ltd., BNBM (Group) Co. Ltd., and BNBM PLC*

Ewell E. Eagan, Jr. (LA Bar No. 5239)
Donna Phillips Currault (LA Bar No. 19533)
GORDON, ARATA, MONTGOMERY,
BARNETT, MCCOLLAM, DUPLANTIS
& EAGAN, LLC
201 St. Charles Avenue, 40th Floor
New Orleans, LA 70170-4000
Tel: (504) 582-1111
Email: eeagan@gordonarata.com
        dcurrault@gordonarata.com

*Counsel for CNBM Co. Ltd.,*

Harry Rosenberg
LA Bar No. 11465
Phelps Dunbar LLP
365 Canal St., Suite 2000
New Orleans, LA  70130
Tel:  (504) 566-1311
Harry.Rosenberg@Phelps.com

*Counsel for BNBM (Group) Co. Ltd. and BNBM PLC*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing CNBM AND BNBM ENTITIES' REPLY MEMORANDUM IN SUPPORT OF THEIR RENEWED MOTION TO CERTIFY AN IMMEDIATE APPEAL FROM THE COURT'S JURISDICTIONAL ORDERS has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail and upon all parties by electronically uploading the same to File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on February 8, 2018.

/s/ *L. Christopher Vejnoska*

L. Christopher Vejnoska (CA Bar No. 96082)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105
Tel:  415-773-5700
Fax: 415-773-5759
Email: cvejnoska@orrick.com

*Counsel for Moving Defendants*

13