UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  CHINESE-MANUFACTURED | * | MDL 2047 |
| DRYWALL PRODUCTS | * | |
| LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This filing relates to all pleadings | * | |
| | * | MAGISTRATE JUDGE WILKINSON |
| | * | |
| * * * * * * * * * * * * * * * * * * | | |

MEMORANDUM IN OPPOSITION TO CLAIMANT GUILFORT DIEUVIL'S
OBJECTION TO SPECIAL MASTER'S OPINION AND DECREE

**NOW COME** the Knauf Defendants,[1] who file this Memorandum in Opposition to Claimant Guilfort Dieuvil's Objection to Special Master's Opinion and Decree (Rec. Doc. 21104). The Special Master's denial of Claimant's claim was pursuant to and consistent with the Knauf Class Settlement Agreement. Pursuant to the Knauf Class Settlement Agreement,[2] Claimants' failure to preserve and present evidence in accordance with PTO 1(B) is prejudicial to the determination of the claim by the Knauf Defendants, the Special Master, and the Court. Furthermore, Claimant has not established any Reimbursable Costs were incurred. As such, the Special Master's[3] disallowance of the claim was appropriate.[4]

---

[1] The Knauf Defendants include Knauf Plasterboard (Tianjin) Co., Ltd., Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Material Products Co., Ltd., Knauf Gips KG, Gebr. Knauf Verwaltungsgesellschaft KG, Knauf International GmbH, Knauf Insulation GmbH, Knauf UK GmbH, Knauf AMF GmbH & Co. KG, Knauf do Brasil Ltda., and PT Knauf Gypsum Indonesia.

[2] Rec. Doc. 16407-3 (Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047).

[3] Exhibit 1 (Special Master Opinion and Decree).

[4] Claimant's citation and grounds for reversal under the Federal Rules of Civil Procedure, including but not limited to Rule 53, are irrelevant because Claimants' objection to the Special Master's decision and the Court's scope of

I.   **BACKGROUND**

Guilfort Dieuvil ("Claimant") owns property located at 8757 Baystone Cove, Boynton Beach, FL 33473 (the "Property").[5] The Property was built by GL Homes.[6] On or about January 1, 2010, Boynton Beach Associates XVI conducted an inspection of the Property and observed conditions consistent with the presence of reactive Chinese drywall.[7] In March 2010, a building permit was issued for the remediation of the Property by GL Homes.[8] In April 2010, a Scope of Work Agreement was issued by Boynton Beach Associates XVI, LLP that informed Claimant the Property would be repaired and returned to its original condition at no cost to the Claimant. Claimant executed the Scope of Work Agreement.[9] Between September and December 2010, the remediation of the Property commenced wherein drywall was removed and the plumbing, electrical, and insulation was replaced.[10] At this point in the remediation, Claimant refused to allow GL Homes to complete the remediation on the Property and took personal control over the remediation.[11]

Claimant states in his papers that GL Homes required $25,000.00 to remediate the property and GL Homes stopped communication with him when he refused to pay it. As set

---

review of Special Master decisions are controlled by the Knauf Class Settlement Agreement, and not the Federal Rules.

[5] Exhibit 2 (Knauf Defendants' Position Paper to Special Master) at Exhibit A (Plaintiff Profile Form).

[6] *Id*.

[7] *Id*.

[8] Exhibit 2 (Knauf Defendants' Position Paper to Special Master) at Exhibit B (October 14, 2013 Letter from Boynton Beach and Associates XVI, LLP to Claimant).

[9] *Id*.

[10] *Id*.

[11] *Id*.

forth by Claimant's own exhibits in his mediation paper, Claimant was the reason the remediation stopped and the communication with GL Homes ceased. Claimant requested GL Homes to remove and replace all metal studs in the Property, which was work outside the scope of the drywall remediation. GL Homes informed Claimant that the electrical and plumbing had already been replaced at the time of Claimant's request and that removal of the studs was outside the scope of remediation and would require additional plumbing and electrical work in the amount of $25,000.00. Because this was not accepted by Claimant, Claimant hired an attorney to review the matter and GL Homes was forced to stop work on the remediation by Claimant. However, GL Homes reminded Claimant that they "would gladly proceed with our cdw repair program if you change your mind but in the meantime, we will suspend the cdw repair process for your home until we get further direction from you…."[12] Claimant did not allow GL Homes to complete the remediation and did not otherwise ensure that he complied with the requirements of the Knauf Class Settlement Agreement and PTO 1(B).

Nonetheless, on March 7, 2013, Claimant signed and submitted a Plaintiff Profile Form to the Knauf Class Settlement Agreement and the PPF indicated that Property was being self-remediated.[13] Claimants submission was a clear indication that he was seeking benefits and would be subject to the requirements of the Knauf Class Settlement Agreement. Claimant also made claims to the Global, Banner, and INEX Settlements and received payments. On September 16, 2013, Benchmark conducted an inspection of the Property and identified no

---

[12] Exhibit 3 (Dieuvil Mediation Exhibits K, L, and N).

[13] Exhibit 2 (Knauf Defendants' Position Paper to Special Master) at Exhibit A (Plaintiff Profile Form).

corrosion and no existence of KPT drywall in the Property.[14] Also, there were no drywall samples saved on site.[15] Therefore, Knauf denied the claim under the Knauf Class Settlement Agreement.

In 2015, Claimant confirmed his inclusion for settlement benefits and it was confirmed by the Knauf Defendants and Claimant (through former counsel) that Claimant would seek benefits under the Knauf Class Settlement Agreement and would be eligible only if, in addition to complying with all other aspects of the Knauf Class Settlement Agreement, the Claimant could demonstrate "*that evidence was preserved strictly in accordance with the requirements of MDL 2047 Pre-Trial Order 1(B)."*[16] Claimant's former counsel uploaded all documentation related to the claim, which was reviewed by Knauf. On August 27, 2015, Claimant was informed that his claim was not eligible to proceed under the Knauf Class Settlement Agreement because it did not comply with PTO 1(B).[17]

In 2017, Claimant, in *pro se*, requested status updates regarding his claim. He was informed that his claim was previously denied. Claimant submitted additional photos of samples. Despite being required to submit all documentation in 2013, Claimant submitted these new photos of samples for the first time in 2017.[18] Knauf again reviewed the documentation and

---

[14] Exhibit 2 (Knauf Defendants' Position Paper to Special Master) at Exhibit C  (Benchmark Inspection Report for the Property).

[15] *Id*.

[16] Exhibit 2  (Knauf Defendants' Position Paper to Special Master) at Exhibit D  (Redacted Term Sheet between Claimant's former counsel and Knauf Counsel).

[17] Exhibit 2  (Knauf Defendants' Position Paper to Special Master) at Exhibit E (Correspondence between Claimant's former counsel and Knauf Defendants' counsel).

[18] Because the photos of the demolition of the Property show no labeled drywall, there can be no confirmation whether these samples which are now labeled with a location come from the Property.

4

informed Claimant that his claim was not compensable under the Knauf Class Settlement Agreement because he failed to comply with PTO 1(B).

Claimant and the Knauf Defendants submitted their respective positions to the Special Master pursuant to the Knauf Class Settlement Agreement. On November 22, 2017, the Special Master disallowed the claim and determined that the Claimant failed to comply with PTO 1(B) and that the Knauf Defendants were prejudiced in a determination of the claim.[19] Claimant then filed the present objection to the Special Master's opinion and decree.

## II.    KNAUF CLASS SETTLEMENT AGREEMENT AND PTO (1)(B)

All settlement claimants are subject to the Knauf Class Settlement Agreement, which mandates that the review of Already Remediated Home (ARH) claims are done pursuant to PTO 1(B). Specifically, Section IV(D)(4) of the Already Remediated Properties Protocol of the Knauf Class Settlement Agreement provides:

> The **Special Master and the Court will take into consideration**, in determining whether to allow a claim or the amount of the claim, **whether the Owner has complied with MDL Pretrial Order 1B** (if the claim is pending in the MDL) or with applicable state law requirements for preservation of evidence (if the claim is pending in state court). Subject to review by the Special Master or the Court, *the failure to preserve evidence as required by law will result in disallowance or reduction in the amount of the claim if the failure has been prejudicial to a determination of the claim*.[20]

Entered on October 9, 2009, over a year before remediation commenced on Claimant's Property, PTO 1(B) established "the Court's expectations, from this date forward, with respect to the preservation of physical evidence from properties that may be repaired by the parties during the course of this litigation."[21] Specifically PTO 1(B) requires Claimants to preserve and present

---

[19] Exhibit 1 (Special Master Opinion and Decree).
[20] Rec. Doc. 12061-6 (Already Remediated Properties Protocol) (emphases added).
[21] Rec. Doc. 337 (PTO 1(B)).

physical evidence by following a few basic procedures, including but not limited to "photograph[ing] the backside of each Chinese drywall board immediately after it is removed on-site, and, document on a floor plan, building diagram, or other similar form of documentation, the location of each full or partial Chinese drywall board removed from the property and its photograph. Photographs of the wall sections should be taken so that any markings on the backside of the drywall sections are most clearly visible in the photographs."[22]

### III. CLAIMANTS FAILED TO COMPLY WITH PTO 1(B) AND THE FAILURE TO PRESERVE AND PRESENT EVIDENCE IS PREJUDICIAL TO THE DETERMINATION OF THE CLAIM.

In his objection, Claimant makes statements regarding his ability to opt out of the Knauf Class Settlement Agreement. His argument based on his late filed claims sets forth a distinction without a difference. Claimant confirmed his desire to be included as a class member to the Knauf Class Settlement Agreement when he submitted his claim in March 2013 and never attempted to opt out of the Knauf Class Settlement Agreement afterwards. In fact, in 2015, Claimant confirmed again his desire to be included in the class and seek settlement benefits from the Knauf Class Settlement Agreement by being included in a separate agreement with the Knauf Defendants that stated that Claimant would be eligible for settlement benefits if he maintained strict compliance with PTO 1(B). To this day, Claimant is still seeking benefits from the Knauf Class Settlement Agreement as a class member with these current proceedings. Therefore, Claimant is a class member and is bound by the Knauf Class Settlement Agreement's requirements, including but not limited to the requirements for preserving and presenting physical evidence as set forth in Section IV(D)(4) of the Already Remediated Properties Protocol of the Knauf Class Settlement Agreement and the agreement entered into by his former counsel

---

[22] *Id.*

which require strict compliance with PTO 1(B) to be eligible for benefits under the Knauf Class Settlement Agreement.

Claimant has failed to comply with the preservation protocols of the Knauf Class Settlement Agreement and the Already Remediated Properties Protocol. This has prejudiced the Knauf Defendants. Therefore, Claimant is ineligible to receive settlement benefits under the Knauf Class Settlement Agreement because he has failed to comply with PTO 1(B) in presenting sufficient evidence of KPT Chinese drywall in the Property. It is undisputed that Claimant has failed to comply with the requirements of PTO 1(B). Claimant (or his contractor) disposed of the majority of the physical drywall, and does not have sufficient photographic evidence of samples collected to demonstrate how much KPT drywall was in his home. Of the approximately 560 boards that would be contained in the Property, only five (5) installed KPT boards and only six (6) detached KPT boards were presented in accordance with PTO 1(B).[23] The evidence submitted is insufficient to establish product identification or a KPT percentage in the Property and it does not comply with the requirements of the Knauf Class Settlement Agreement or the 2015 agreement with Claimant's former counsel requiring strict compliance with PTO 1(B).

PTO 1(B) and the adoption of the standard by the Knauf Class Settlement Agreement was to adopt objective standards to qualify under the Knauf Class Settlement Agreement for manufacturer identification. This was confirmed to be the standard with Claimant in 2015 when Knauf specifically stated that the claim would only be compensable under the Knauf Class Settlement Agreement if PTO 1(B) was strictly complied with. Claimant has failed to preserve

---

[23] Exhibit 2 (Knauf Defendants' Position Paper to Special Master) at Exhibit F (Drywall Evidence Submitted by Claimant). In addition, photos of samples being maintained were provided in 2017 and reviewed by the Knauf Defendants. However, these samples are small in size, contained in ziplock bags, and, nonetheless do not make the claim compliant with PTO 1(B).

and present evidence as required under the Knauf Class Settlement Agreement. Based on Claimant's failure to preserve and present evidence of KPT Chinese drywall in the Property in accordance with PTO 1(B) and the Knauf Class Settlement Agreement, the Knauf Defendants have been prejudiced in a determination of the claim. Therefore, Claimant's ARH claim is not compensable under the Knauf Class Settlement Agreement.[24]

## IV.  CONCLUSION

The Special Master's decision followed the Knauf Class Settlement Agreement by properly applying PTO 1(B). Claimant is a class member of the Knauf Class Settlement Agreement and is seeking settlement benefits, and is therefore bound by its terms and requirements. At the time of the demolition, Claimant had notice of the PTO 1(B) requirements, but still failed to comply with its terms. Then in 2013, and again in 2015, Claimant confirmed his inclusion in the Knauf Class Settlement Agreement and was specifically put on notice that his claim would only be compensable if there was compliance with PTO 1(B). As set forth above, Claimant has not and cannot meet the preservation and presentation of evidence requirements of the Knauf Class Settlement Agreement. The failure to comply with PTO 1(B) and the Knauf Class Settlement Agreement has directly prejudiced the Knauf Defendants in this matter. Furthermore, Claimant has not established any Reimbursable Costs under the Knauf Class Settlement Agreement. Therefore, the Special Master appropriately and correctly disallowed the

---

[24] The Knauf Defendants also note that should the claim be compensable at all, it must be limited to the amount of Reimbursable Costs multiplied by the percentage of KPT in the Property determined by the Special Master. Rec. Doc. 12061-6 (Already Remediated Properties Protocol) (emphases added). As set forth above the KPT percentage should be 0%. Claimant has not incurred or set forth any Reimbursable Costs associated with the remediation of this Property because the costs were borne by the builder, GL Homes. Claimant has submitted costs/damages for loss of use, mortgage payments, etc. These alleged costs and expenses are not compensable through the Remediation Fund as Reimbursable Costs. Instead, Claimant should have submitted a claim for these costs to the Settlement Administrator under the Other Loss Fund. Rec. Doc. 16407-3 at § 4.7 (Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047). Finally, even if any amounts are compensable to Claimant, they would be subject to deduction of $33,290.35 for amounts received by Claimant in connection with the Global, Banner, and INEX settlements, which would be assignable to the Knauf Defendants. *Id*. at § 4.8.

claim in accordance with the Knauf Class Settlement Agreement. Therefore, the Special Master's decision should be affirmed.

Respectfully submitted,

**BAKER, DONELSON, BEARMAN,**
**CALDWELL & BERKOWITZ, PC**

*/s/ Kerry J. Miller*
**KERRY J. MILLER (#24562), T.A.**
**DANIEL J. DYSART (#33812)**
201 St. Charles Avenue, Suite 3600
New Orleans, LA  70170
Telephone:   (504) 566-8646
Facsimile:   (504) 585-6946
Email:   kjmiller@bakerdonelson.com

*Counsel for the Knauf Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served upon Guilfort Dieuvil via email and upon Russ Herman, Plaintiffs' Liaison Counsel, by email, to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6 and that the foregoing was filed with the Clerk of Court of the United States Court for the Eastern District of Louisiana, on this 9th day of February 2018.

/s/ *Kerry J. Miller*
**KERRY J. MILLER**
