**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **CIVIL ACTION** |
| | **NO. 09-02047** |
| | **SECTION "L" (5)** |
| **THIS DOCUMENT RELATES TO:** **WINSTON BURNS, JR. AND WENDY BURNS** | |

**ORDER AND REASONS**

The All Writs Act, 28 U.S.C. § 1651, empowers federal courts to enjoin state proceedings that interfere, derogate, or conflict with federal judgments, orders, or settlements. This authority, though great and broad, is limited by the Anti-Injunction Act, 28 U.S.C. § 2283, which demands respect for state courts. Arguing that exceptions to the Anti-Injunction Act warrant exercise of such extraordinary authority, Defendant Interior Exterior Building Supply ("InEx") invites this Court to halt an ongoing Louisiana judicial proceeding against it based on a settlement agreement reached in the *Chinese-Manufactured Drywall* multidistrict litigation.[1] *See* Rec. Doc. 20891.

The state court action in question is filed by Winston Burns, Jr. and Wendy Burns against Livers Construction, Inc., and relates to the installation of allegedly defective Chinese drywall in their residence. Subsequently, Livers filed a third-party demand against InEx, claiming that InEx sold Livers the allegedly defective drywall. The Burns oppose InEx's instant motion for injunctive relief. Rec. Doc. 21032. The Court heard oral argument in this matter on January 23, 2018.

---

[1] Livers Construction Inc. has adopted and joined InEx's motion for injunctive relief. *See* Rec. Docs. 21044 & 21067.

Having considered the parties' submissions, arguments, and applicable law, the Court now issues this Order and Reasons.

## I.    BACKGROUND

### A.    *Chinese-Manufactured Drywall* Multidistrict Litigation

From 2004 through 2006, the housing boom in Florida and rebuilding efforts necessitated by Hurricanes Rita and Katrina led to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used to construct and refurbish homes in coastal areas of the country, notably the Gulf Coast and East Coast. Sometime after the installation of the Chinese drywall, homeowners began to complain of emissions of foul-smelling gas, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829-30 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014). Many of these homeowners also began to complain of various physical afflictions believed to be caused by the Chinese drywall.

These homeowners then began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. Because of the commonality of facts in the various cases, this litigation was designated as a multidistrict litigation. Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation on June 15, 2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 09-2047 before this Court.

The Chinese drywall at issue was largely manufactured by two groups of defendants: (1) the Knauf Entities and (2) the Taishan Entities. The litigation has focused upon these two entities

and their downstream associates, and has proceeded on strikingly different tracks for the claims against each group. The instant motion and opinion relate to matters in the Knauf track.

## B.    The Knauf Defendant

The Knauf Entities are German-based, international manufacturers of building products, including drywall, whose Chinese subsidiary, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), advertised and sold its Chinese drywall in the United States. The Knauf Entities are named defendants in numerous cases consolidated with the MDL litigation and litigation in state courts.

The Knauf Entities first entered their appearance in the MDL litigation on July 2, 2009. Rec. Doc. 18. Thereafter, the Court presided over a bellwether trial in *Hernandez v. Knauf Gips KG*, Case No. 09-6050, involving a homeowner's claims against KPT for defective drywall. *See* Rec. Doc. 2713. The Court found in favor of the plaintiff family in *Hernandez*, issued a detailed Findings of Fact and Conclusions of Law, and entered a Judgment in the amount of $164,049.64, including remediation damages in the amount of $136,940.46—which represented a cost of $81.13 per square foot based on the footprint square footage of the house. *See* Rec. Doc. 3012.

Subsequently, the Knauf Entities entered into a pilot remediation program with the Plaintiffs' Steering Committee ("PSC") in the MDL. This program was largely based upon the remediation protocol formulated by the Court from the evidence in *Hernandez*. The Knauf pilot remediation program is ongoing and has, at present, remediated more than 2,200 homes containing KPT Chinese drywall using the same general protocol. At the Court's urging, the parties began working together to monetize this program and make it available to a broader class of plaintiffs.

On December 20, 2011, the Knauf Entities and the PSC entered into a global, class Settlement Agreement ("Knauf Settlement Agreement"), which is designed to resolve all Knauf-related, Chinese drywall claims. *See* Rec. Doc. 12061-5. In addition to the Knauf Settlement

Agreement, numerous defendants in the chain-of-commerce with the Knauf Entities have entered into class settlement agreements, the effect of which settles almost all of the Knauf Entities' chain-of-commerce litigation.

### C.    Interior Exterior Building Supply

As a result of its role in purchasing and supplying allegedly defective Chinese drywall, InEx is among the defendants in the Knauf Entities' chain-of-commerce litigation. Following Hurricane Katrina, InEx, a major supplier of construction materials in the Gulf Coast area, distributed Chinese drywall manufactured both by various Knauf entities and by certain Taishan entities. InEx sold drywall to suppliers, developers, homebuilders, and installers in a number of states, predominantly Alabama, Louisiana, Mississippi, and Texas. The InEx-related Chinese drywall eventually ended up in the homes of numerous individuals who filed claims against InEx, seeking relief for the property damage and personal injuries they have sustained as a result of the presence of drywall in their homes. Additionally, homebuilders who repaired these homes at their own cost have filed claims against InEx.

Because of its role with Chinese drywall, InEx became the subject of a class certification hearing and a jury trial, both of which were initially scheduled for the summer of 2011. In preparation for these proceedings, extensive discovery was conducted. As a result, various mediations between the Plaintiffs' Steering Committee, InEx, and the Insurers were held in an effort to resolve the claims against InEx, which resulted in the InEx Settlement Agreement.

### D.    Knauf and InEx Settlement Agreements

In February 2013, the Court issued an Order and Judgment concerning the Knauf entities. Rec. Doc. 16570. The Order and Judgment certified five settlement classes—InEx, Banner, Knauf, L&W Supply Corporation, and Global Settlement—and granted final approval to five individual

class settlements between the plaintiffs suffering property damages and personal injuries from Chinese drywall and the various Knauf entities responsible for the use of Chinese drywall in affected properties ("Settling Defendants").  The five class settlements included in the Order and Judgment are "all interrelated and interdependent," and "resolve all claims, counterclaims, and third-party claims among the settling parties."  Rec. Doc. 16570 at 6.

In the Order and Judgment, the Court noted that the first notable breakthrough towards resolving the MDL litigation claims against Knauf came in October 2010, when the PSC and Knauf entities entered into a Court-approved pilot program for remediation of homes containing drywall manufactured by Knauf.  In addition to the Knauf entities, a number of defendants in the chain-of-commerce—including InEx—contributed funds to the program.

Later, in December 2011, the Knauf entities entered into a class action settlement with the plaintiffs.  This global, class settlement agreement is intended "to resolve claims made in filed actions which arose out of KPT Chinese drywall installed in the United States."  *Id.*  The Knauf Settlement Class thus consisted of "[a]ll persons or entities who, as of December 9, 2011, filed a lawsuit in the Litigation as a named plaintiff (i.e., not an absent class member) asserting claims arising from, or otherwise related to, KPT Chinese Drywall, whether or not the Knauf Defendants are named parties to the lawsuit."  *Id.* at 28.

InEx was one of the named Settling Defendants in the Order and Judgment, and Livers was named as one of the downstream releasees.  InEx entered into a settlement agreement that provided for the tendering of all of InEx's primary insurance proceeds—in the amount of $8,000,000—for the benefit of a national class with claims against InEx involving Chinese drywall ("InEx Settlement Class").  The InEx Settlement Class consists of "[a]ll persons or entities with claims,

known and unknown, against the Settling Defendants arising from, or otherwise related in any way to Chinese Drywall sold, marketed, distributed, and/or supplied by InEx." *Id.* at 22-23.

The Knauf and InEx Settlement Class and Subclasses were certified pursuant to Fed. R. Civ. P. 23(a), (b)(3) & (e).

The essential question currently before the Court is whether the February 2013 Judgment, arising from the settlement agreements, forecloses lawsuits filed after December 9, 2011—for example, Winston Burns, Jr. and Wendy Burns' state court action.

### E.     Winston Burns, Jr. and Wendy Burns

The instant motion pertains to a lawsuit filed by Winston Burns, Jr. and Wendy Burns ("Burns") in state court against Livers Construction, Inc. for property damage and personal injuries arising from Livers' alleged installation of Chinese drywall in the Burns' home.

In August 2005, during Hurricane Katrina, the roof blew off of the Burns' property, allowing rain to soak the interior of the structure. *See* Rec. Doc. 21032 at 2. As a result of this damage, extensive repairs were required, including removal and replacement of the drywall, floor coverings, and appliances. The Burns retained Livers to perform all the repair work in response to the damages sustained by their property.

The Burns moved back to their house in July 2007 after Livers completed renovation. Soon after, however, the Burns claim to have experienced a variety of problems with their home, and attempted to contact Livers numerous times to inquire whether Livers could assist them or determine the cause of the problems. *See id.* However, according to the Burns, Livers not only refused to help the Burns, but also neglected to tell them that their house was likely filled with contaminated Chinese drywall. *See id.*

As a result of the continual issues, on October 23, 2015, the Burns retained Donovan Engineering Co. to perform an inspection of their house. On October 30, 2015, Donovan Engineering issued a report, stating (1) it is probable that the house has contaminated (high sulfur content) Chinese drywall, and (2) the problems experienced with the property are consistent with failure due to the presence of contaminated Chinese drywall. *See id.* The Burns state that this was "the first time [they] had definite confirmation that the Property was contaminated with [Chinese drywall]." *Id.*

On April 21, 2016, the Burns filed suit against Livers in the Civil District Court for the Parish of Orleans, seeking to recover for the damages they suffered from Livers' installation of the toxic drywall and its failure to advise the Burns of the existence of the Chinese drywall and the multidistrict litigation involving Chinese-manufactured drywall. In response, Livers filed peremptory exceptions of res judicata and peremption, relying on the terms of the InEx Settlement.

### 1. Livers' Res Judicata and Peremption Arguments

In its argument in state court, Livers noted that InEx supplied it with Chinese drywall used in the Burns property. Because InEx provided the drywall, Livers argued that it qualified as an "Installer" under the InEx Settlement – defined as "any person or entity involved in the installation, hanging, taping, and floating in any property of Chinese Drywall that was sold, marketed, distributed, and/or supplied by InEx." InEx Settlement at 5. Under the InEx Settlement, Installers are "Downstream InEx Releasees," who are considered Settling Defendants released from all future claims pertaining to Chinese drywall in affected properties, to the extent that such property contains Chinese drywall supplied by InEx. *Id.* at 5, 8. Thus, Livers is expressly named as a "Downstream InEx Releasee" in the Settlement Agreement and is also a "Released Party." InEx Settlement (Rec. Doc. 8628-4 at 7); InEx Settlement (Rec. Doc. 8628-3 at 8). Livers further argued

that because Burns failed to opt out of the InEx Settlement, they qualified as InEx Class Members, and thus their pending state court claims for damages had already been addressed and adjudicated in this Court in MDL 2047.

### 2.    State Court Decisions

On October 28, 2016, the Civil District Court for the Parish of Orleans heard Livers' res judicata arguments. Subsequently, on November 7, 2016, the state court denied Livers' motion to dismiss. Livers appealed the decision to the Louisiana Fourth Circuit Court of Appeal, which denied Livers' writ on December 12, 2016. Undeterred, Livers, once again, appealed to the Louisiana Supreme Court, which, to Livers' dismay, also denied the writ on February 17, 2017. The state courts did not issue written opinions detailing their reasons for denial.

### 3.    Third-Party Demand Against InEx

After exhausting its peremptory argument in state court, on June 26, 2017, Livers filed a third-party demand against InEx, claiming that InEx sold Livers allegedly defective Chinese drywall responsible for the Burns' damages, and for failing to provide notice to Livers of any potential issues regarding the drywall. Additionally, Livers alleged that InEx failed to provide Livers or its counsel with notice of the InEx Settlement.

## II.    PRESENT MOTION

In response to the state court action, InEx has filed the instant motion for injunctive relief pursuant to the All Writs Act, asking this Court to enjoin the state court action against it. Rec. Doc. 20981. InEx believes two exceptions to the Anti-Injunction Act apply: the injunction is (1) "necessary in aid of" this Court's jurisdiction, and (2) "necessary to protect and effectuate" this Court's judgment. InEx argues that the claims in state court are precluded from litigation as a result of this Court's Order and Judgment related to the InEx Settlement. InEx claims that it is a

Settling Defendant, and the Burns and Livers are members of the InEx Settlement Class. Thus, InEx concludes that the Burns are barred from pursuing claims against InEx in state court because the issue was previously presented to and decided by this Court; the settlement is a final judgment.

The Burns oppose this assertion. The Burns argue that they were not aware of the existence of Chinese drywall until after the Knauf Settlement was reached in MDL 2047; the Burns blame Livers for hiding this information. Therefore, the Burns aver that they were not members of the settlement class, nor could they have opted out of the settlement. Moreover, the Burns claim that Livers acted fraudulently by their failure to inform them of the possibility of Chinese drywall and MDL 2047.

The Burns previously raised these arguments in their state court proceedings, arguing that these circumstances justify relief from any res judicata effect of the Settlement Agreement and Judgment. The state courts, including the Louisiana Supreme Court, agreed and denied Livers' motion to dismiss, allowing the Burns' case to proceed.

## III.    LEGAL STANDARD

The All Writs Act authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. The Anti-Injunction Act, nevertheless, places some limits on the federal court's authority to enjoin state court proceedings: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. The Anti-Injunction Act "represents Congress' considered judgment as to how to balance the tensions inherent in . . . a dual system of federal and state courts." *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988). Because the Anti-Injunction Act's "core message is one of respect for state

courts," a federal-court injunction of state-court proceedings shall not be issued unless the injunction falls into one of three exceptions: (1) it is expressly authorized by an Act of Congress, (2) it is necessary in aid of jurisdiction, or (3) it is necessary to protect or effectuate judgments. *See Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2375 (2011). The "exceptions are designed to ensure the effectiveness and supremacy of federal law." *Chick Kam Choo*, 486 U.S. at 146.

The Supreme Court has held that "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 297 (1970). Likewise, the Fifth Circuit recognizes "the overarching principle that federal courts are to be cautious about infringing on the legitimate exercise of state judicial power." *Texas v. United States*, 837 F.2d 184, 186 (5th Cir. 1988). "[T]he fact that an injunction may issue under the Anti-Injunction Act does not mean that it must issue." *Chick Kam Choo*, 486 U.S. at 151 (emphasis in original). "Specifically, principles of comity, federalism, and equity always restrain federal courts' ability to enjoin state court proceedings." *In re Diet Drugs (Phentermine/Fenfluramine) Prods. Liab. Litig.*, 369 F.3d 293, 306 (3d Cir. 2004). The All Writs Act power "must be exercised in a manner that minimizes entanglement in the state judge's ability to supervise judicial proceedings in his own courtroom." *Id*. at 317.

## IV.    DISCUSSION

The Court's analysis proceeds in two parts. First, the Court must determine whether the Burns are members of the InEx Settlement Class. If so, they fall within the jurisdiction of this MDL Court, and the InEx Settlement Agreement and this Court's Judgment are binding on them. Second, if the Burns are members of the settlement class, then the Court must determine whether

the Anti-Injunction Act permits this Court to enjoin the state court proceeding against InEx and Livers.

###### A. Whether the Burns Are Members of the InEx Settlement Class

The threshold question is whether the Burns are members of the InEx Settlement Class. At first blush, the Burns have a solid claim against InEx, who allegedly supplied Livers with defective Chinese drywall. Upon further review, however, the Court recognizes that the claims against InEx have already been addressed in a settled class action by the parties.

A class action is a non-traditional litigation procedure that permits a representative with typical claims to sue on behalf of, and stand in judgment for a class, provided that the representative can establish the prerequisites to class certification. *See United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 402 (1980). "The purpose of a class action procedure is to adjudicate and obtain res judicata effect on all common issues applicable not only to the representatives who bring the action, but to all others who are similarly situated, provided they are given adequate notice of the pending class action and do not timely exercise the option of exclusion from the class." *Cepriano v. B Square Builders, L.L.C.*, 170 So. 3d 1043, 1048 (La. 1st Cir. 2015).

In this case, the settlement class agreement involving InEx is effective and operative. The InEx Settlement Class consists of "[a]ll persons or entities with claims, known and unknown, against the Settling Defendants arising from, or otherwise related in any way to Chinese Drywall sold, marketed, distributed, and/or supplied by InEx." Rec. Doc. 16570 at 22-23. Members of the InEx Settlement Class are "enjoined and forever barred from maintaining, continuing, prosecuting, and/or commencing the Litigation, Related Actions, Related Claims, or any action, pending or future, against the InEx Settling Defendants that arises from, concerns, or otherwise relates, directly or indirectly, to Chinese Drywall." *Id.* at 24.

The Settlement Agreement also applies to absent class members if those members have had certain due process protections. *See In re Diet Drugs Prods. Liab. Litig.*, 431 F.3d 141, 145 (3d Cir. 2005). In a class action where opt out rights are afforded, these protections are adequate representation by the class representatives, notice of the class proceedings, and the opportunity to be heard and participate in the class proceedings. *Id.* The adequate representation requirement mandates that the representative parties will fairly and adequately protect the interests of the class, and there must be a process by which class members can challenge whether due process protections were afforded. *Id.* Once a court has decided that the due process protections occurred, the issue may not be re-litigated. *Id.* at 146; *see also Cepriano*, 170 So. 3d at 1049. "Due process does not require actual notice to every single class member." *Cepriano*, 170 So. 3d at 1050. Rather, the best notice practicable under the circumstances is sufficient. *Id.*

Against this backdrop, the Court must determine whether the Burns are members of the InEx Settlement Class. The Court's Judgment binds "[a]ll persons or entities with claims, *known and unknown*, against the Settling Defendants arising from, or otherwise related in any way to Chinese Drywall sold, marketed, distributed, and/or supplied by InEx." Rec. Doc. 16570 at 22-23 (emphasis added). As part of the Court's Judgment, InEx paid $8,000,000.00 to the settlement class. As a result, InEx argues that the Burns and Livers—who may have "known and unknown claims"—have "released [] all claims arising out of or related to [Chinese drywall] in Affected Property, to the extent that such property contains [Chinese drywall] sold, marketed, distributed, or supplied by InEx."

The Court agrees. Although the Burns allegedly did not discover the existence of Chinese drywall until October 2015—after the Settlement Agreement in February 2013—the Judgment nonetheless binds the Burns and Livers by virtue of them being members of the settlement class.

Notices of the settlement class were properly dispatched, meeting due process requirements. As the Ninth Circuit recently noted, "neither Rule 23 nor the Due Process Clause requires actual notice to each individual class member." *Briseno v. ConAgra Foods*, 844 F.3d 1121, 1128-29 (9th Cir. 2017). Therefore, the settlement class applies to persons or entities with known and unknown claims. Whether this is sound policy or not means that a class action can be certified even if most class members will not be identified or benefit from the lawsuit brought on their behalf. *See id.* Accordingly, under class action jurisprudence, the Court's Judgment applies to the Burns and Livers, who thus cannot bring suit against InEx.

An appellate court in Louisiana recently faced an identical issue before this Court. In *Cepriano v. B Square Builders, L.L.C.*, the First Circuit Court of Appeal of Louisiana held that the settlement of a Chinese drywall class action in Georgia, brought against a nationwide retailer, is binding on a homeowner in Louisiana, who learned of the presence of the drywall in his house only after a final judgment in the class action was entered. *See generally* 170 So. 3d at 1043. The court first found that plaintiff was a member of the settlement class because plaintiff owned his house in June 2009, and the class was defined as anyone who owned property containing the defective drywall from the beginning of time through July 27, 2010 (when the Preliminary Approval Order was signed by the Georgia court). The court concluded that it is irrelevant that plaintiff was unaware his house contained Chinese drywall until June 6, 2011, after the class period had ended, because the final order and judgment "forever discharged" the retailer from "any and all claims, 'whether known or unknown, asserted or unasserted.'" *Id.* at 1049. The *Cepriano* court recognized that the purpose of a class action settlement is "to achieve finality regarding [the settling defendant's] liability to class members." *Id.* at 1050-51. "To deny [the settling defendant]

of this benefit by allowing [plaintiff's] claim in this lawsuit would discourage class action settlements in the future." *Id.*

Similar to the *Cepriano* court, this Court finds that the Burns and Livers are members of the settlement class against InEx. The Court is sympathetic to the Burns: They cannot have their day in court against InEx even though they have allegedly never received actual notice of the existence of drywall (until 2015), the instant MDL, or the settlement. But this is "legally correct" under modern class action jurisprudence. *See id.* at 1051 (McClendon, J., concurring). Therefore, the Burns and Livers cannot pursue claims arising from Chinese drywall against InEx.

**B.** **The State Court Action Against InEx Is, Therefore, Enjoined.**

The Anti-Injunction Act permits injunctions where necessary to "protect and effectuate judgments" of a federal court.[2] This exception, commonly called the "relitigation" exception, "authorizes an injunction to prevent state litigation of a claim or issue 'that previously was presented to and decided by the federal court.'" *Smith*, 131 S. Ct. at 2375 (quoting *Chick Kam Choo*, 486 U.S. at 147). The exception "is founded in the well-recognized concepts of res judicata and collateral estoppel." *Chick Kam Choo*, 486 U.S. at 147. In a recent case addressing the breadth of the relitigation exception, the Supreme Court emphasized that the relitigation exception is "heavy artillery," and that "close cases have easy answers: [In close cases,] [t]he federal court should not issue an injunction, and the state court should decide the preclusion question." *Smith*, 131 S. Ct. at 2375, 2382. However, the present situation is not a close case in regard to InEx.

---

[2] InEx argues that the "in aid of jurisdiction" exception to the Anti-Injunction Act also applies. Because the Court finds that the "to protect and effectuate judgments" of a federal court exception is more apposite and sufficiently deals with the requested injunction, the Court need not decide whether another exception might too apply in this case.

MDL transferee courts have applied the relitigation exception to effectuate judgments issued in connection with a global settlement, like the one here. *See, e.g.*, *In re Linerboard Antitrust Litig.*, 361 F. App'x 392 (3d Cir. 2010); *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 261 F.3d 355 (3d Cir. 2001). Because the Burns are members of the InEx Settlement Class, and this Court has certified the class and entered Judgment, thereby giving force to the settlement terms, the Burns and Livers are barred from pursuing claims against InEx. Accordingly, the issuance of an injunction—enjoining Chinese drywall-related claims against InEx—is necessary to protect this Court's Judgment.

### C.     The Court Refuses to Enjoin Action Against Livers.

The Court is aware of its obligation to exercise the All Writs Act power "in a manner that minimizes entanglement in the state judge's ability to supervise judicial proceedings in his own courtroom." *In re Diet Drugs II*, 369 F.3d at 317. Likewise, the Court is certain that "the state judge is capable and willing to enforce [the InEx Settlement] without close and intrusive supervision" by this Court. *See id.* During oral argument and in their briefs, the Burns have argued separately that their inability to participate in the benefits of the Knauf/InEx Settlement resulted from fraudulent activities by Livers to conceal the *Chinese-Manufactured Drywall* MDL and the settlement program. This allegation, if true, is beyond the scope of the Court's Settlement Judgment. Accordingly, the Court refuses to enjoin the state court action against Livers, and defers to the state court for further proceedings consistent with the Court's InEx Settlement Judgment and this opinion.

V.    **CONCLUSION**

Based on the foregoing reasons, accordingly,

**IT IS ORDERED** that Interior Exterior Building Supply's motion for injunctive relief (Rec. Doc. 20891) is hereby **GRANTED**.  The Burns and Livers are hereby **ENJOINED** from pursuing claims against third-party defendant, Interior Exterior Building Supply, L.P., in *Burns v. Livers Construction and Fireman's Fund Insurance Company*, Case No. 16-4002, in the Civil District Court of the Parish of Orleans, State of Louisiana.

**IT IS FURTHER ORDERED** that Livers' request for injunctive relief is hereby **DENIED**.

New Orleans, Louisiana, this 8th day of February, 2018.

**ELDON E. FALLON**
United States District Judge