TENDERED FOR FILING

FEB 14 2018

U.S. DISTRICT COURT
Eastern District of Louisiana
Deputy Clerk

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

William and Kelly Wayne, Plaintiff

09- MDL NO. 2047

IN RE:

CHINESE MANUFACTURED DRYWALL
PRODUCTS LIABILITY LITIGATION

SECTION: L

JUDGE FALLON
MAG. JUDGE WILKINSON

U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
FILED FEB 14 2018
WILLIAM W. BLEVINS
CLERK

### WAYNE'S OBJECTION TO THE SPECIAL MASTER DECREE

I would like to thank everyone for their time in this effort, it has not been an easy process. Judge Fallon, Brown Greer, the PSC, Knauf's counsel and the Special Master have all taken on this huge undertaking, of which this is only one small part, and I would like to recognize this. Unfortunately, I must object to both the method and conclusion in the decree by the Special Master in the strongest terms possible, as it demonstrates the extreme bias in thought that has long pervaded the execution of the Settlement Agreement with respect to Foreclosed Homes, which has been an incredible barrier to our legitimate recovery. For this reason, I hereby request the court to dismiss the Special Master's decree and grant me the right to argue my case in person.

### Why the decree fails

The Special Master, in his decree, has opted to fabricate an entirely new standard by which Foreclosure claims are to be measured. The express purpose of this was to contrive a reason that section 4.3.4 (Mixed Properties) means what it says, while section 4.3.5 (Foreclosed Properties) does not mean what it says, but is somehow beholden to other clauses in the Remediation Fund definition to help define the nuance of its benefits. I object to this for the following reasons:

___ Fee_____
___ Process_____
X   Dktd_____
___ CtRmDep_____
___ Doc. No._____

1. It is not supported by the language of the Settlement Agreement and is inconsistent with every other part of it.
2. Sections 4.3.4 and 4.3.5 are sibling clauses, and are therefore mutually exclusive. Further, as neither clause mentions the other, any relationship between them is entirely imagined; thus, their executions must be made in a vacuum.
3. The decree is based on the premise that Mixed Property Owners are not granted the Lump Sum Payment in 4.3.1.1, which is patently and demonstrably false.
4. The Special Master's conclusion is likewise incorrect, as it is based on this incomplete reading of the Settlement Agreement. His conclusion is at odds with the very concept behind his rationale.

The core argument the Special Master makes, with which I strongly disagree, is that a hypothetical Mixed Property Owner only has access to the benefits granted by 4.3.4 both before *and after* Foreclosure. Although a transition to the Foreclosure clause would force said owner to forfeit all benefits in 4.3.4, the Special Master laments that 4.3.5.1 would grant access to 4.3.1.1, therefore conferring upon them new benefits, and that this behavior is somehow contraindicated by some unwritten part of the Settlement Agreement.

> "[I]f a property owner could not have recovered Option 1 benefits (**including a Lump Sum Payment**) but for the foreclosure, the fact that a foreclosure occurs does not create a right to Option 1 benefits out of thin air."

It appears the Special Master did not read section 4.3.4 beyond the opening paragraph he cited. Here are the unabridged details of the Mixed Property recovery options; pertinent language is bolded:

> 4.3.4.1.
> In the event a Mixed Property Owner selects the Self Remediation Option, in accordance with Section 4.3.4.1.1, the Remediation Fund will pay the Mixed Property Owner's chosen contractor amounts equal to the cash payments specified in Section 4.3.2 multiplied by the KPT Drywall Percentage and pursuant to the payment schedule set forth in Section 4.3.2.2. In accordance with Section 4.3.4.1.1, the Mixed Property Owner shall be responsible for

paying the chosen contractor the remaining amounts due under his or her contract with the chosen contractor (the "Mixed Property Owner Payment"). **In addition, the Remediation Fund will pay the Mixed Property Owner the Lump Sum Payment specified in Section 4.3.1.1** multiplied by the KPT Drywall Percentage.

4.3.4.2.

In the event a Mixed Property Owner selects the Cash-Out Option, the Remediation Fund will pay the Mixed Property Owner an amount equal to the payment specified in Section 4.3.2 multiplied by the KPT Drywall Percentage **and the Lump Sum Payment specified in Section 4.3.1.1** multiplied by the KPT Drywall Percentage. The Remediation Fund will not pay the Delay Period Payment to a Mixed Property Owner who selects the Cash-Out Option. A Mixed Property Owner who selects the Cash-Out Option must satisfy the conditions specified in the last sentence of Section 4.3.3, except for the condition that the Mixed Property Owner provide a release from the Mortgagee(s) or Lienholder(s) to the Knauf Defendants and Other Releasees set forth in subsection (i) of that sentence.

The Special Master's analysis of the Settlement Agreement was not thorough enough to find that, indeed, Mixed Property Owners *are* granted access to the Lump Sum Payment from Option 1 – but it does not stop there. Not only are Mixed Property Owners expressly granted the Lump Sum Payment in addition to either Option 2 or Option 3 – whichever they choose – but Options 2 and 3 themselves *also* grant access to the Lump Sum Payment to Residential Owners:

4.3.2. **Option 2. Self-Remediation Option:** For KPT Property Owners selecting this option, the Remediation Fund will pay the KPT Property Owner's chosen contractor an amount equal to the higher of the Final Cost Estimate prepared by the Lead Contactor or 65% of the Xactimate prepared by the Lead Contractor to remediate the KPT Property under the Remediation Protocol. The Lead Contractor shall provide the Final Cost Estimate and Xactimate to the Settlement Administrator who shall make it available to the KPT Property Owner. **In addition, for Residential Owners who select the Self-Remediation Option, the Remediation Fund will pay the Lump Sum Payment under Section 4.3.1.1,** but not the Delay Period Payment under Section 4.3.1.2.

> **4.3.3. Option 3. Cash-Out Option:** For KPT Property Owners selecting this option, the Remediation Fund will pay the KPT Property Owner an amount of money equal to the amount specified in Section 4.3.2; however, because the KPT Property Owner is not remediating that KPT Property, and therefore to account for additional risk to the Knauf Defendants, such amount will be reduced by $7.50 per square foot. **In addition, for Residential Owners who select this option, the Remediation Fund will pay the KPT Property Owner a reduced Lump Sum Payment of $3.50 per square foot under Section 4.3.1.1 because the KPT Property Owner will not incur alternative living expenses.** The Remediation Fund will not pay a Delay Period Payment under Section 4.3.1.2 to a KPT Property Owner who selects this option.

An interesting argument, then, would be whether or not Mixed Residential Property Owners who were not forced into Foreclosure are given the benefit of the Lump Sum Payment twice – once as described in either 4.3.4.1 or 4.3.4.2, and again as described in Options 2 or 3 – as 4.3.4.1 and 4.3.4.2 were clear in granting the Lump Sum payment *in addition to* recovery from 4.3.2 and 4.3.3. Either way, the Special Master's assertion that Mixed Property Owners are not given access to any part of Option 1 (including a Lump Sum Payment) is easily disproved.

As every recovery option in the Remediation Fund for Residential Owners carries with it the benefit of the Lump Sum Payment in some form, it becomes clear that the Special Master's conclusion also fails; the Lump Sum Payment is the minimum recovery. For Foreclosures, the Lump Sum Payment is the sole recovery. Denying access to this is to deny all recovery for damaged parties who were forced to foreclose on their homes because of contaminated Knauf drywall despite the incredible push to include them in this settlement. As such, the Special Master argues that even a Mixed Property owner known to have 90% KPT should be denied all recovery, but a KPT owner with 91% should collect the Lump Sum Payment in its entirety – is this really what the Settlement Agreement intended?

I anticipate the next moving target against Foreclosures will be that Mixed Properties *are* allowed to collect the Lump Sum Payment after all, but that the recovery should be multiplied by the KPT percentage of the house. I will then argue *again* that the recovery of the Lump Sum Payment in the Foreclosure clause is *not* modified by the KPT Percentage, so such a requirement cannot exist. This recovery is modified in different clauses for expressly stated reasons (as seen above), but was deliberately not made in the Foreclosure clause, despite being given the opportunity to do so when the document was revised in 2011. Modification to the award cannot later be asserted due to a thought experiment. Ultimately, 4.3.5.1(b) says what it says, and *does not say what it does not say*.

The Special Master also divines an entirely new interpretation of the Foreclosure clause *out of thin air*, whereby the Lump Sum Payment granted in 4.3.5.1(b) is now somehow supposed to be shared with the Mortgagee from its sibling sub-clause, 4.3.5.1(a), despite a dearth of language instructing this behavior. Does this interpretation also mean that, had Regions Mortgage sought benefits under the Foreclosure clause, I would have been entitled to half of what they recovered from their choice between Options 1, 2 or 3? Surely not.

I spoke with the Special Master on the phone following the distribution of his decree to ensure I understood what he had written fully. His choice of words in the decree and on the phone strongly indicate that his conclusion preceded his arguments. When I read to him from the Settlement Agreement where Mixed Property Owners have access to the Lump Sum Payment, therefore nullifying the assumptions made in formulating his methodology and conclusion, the Special Master demanded to know where it said this, then doubled down on the incorrect statements he made in his decree (that Mixed Property Owners do not have access to any part of Option 1) and deflected by disagreeing with my "interpretation" that Mixed Property Owners are granted the Lump Sum Payment. Exactly what interpretation is to be made? Is it the common behavior of a neutral third party to dismiss vital information that should otherwise change his conclusions and recommendations?

He also shows bias in a footnote where he says that "Knauf has made additional arguments against the Wayne's right to recover benefits", though he is either unwilling or unable to elaborate – instead choosing to *imply* that their arguments have merit and giving no weight to, or recognition of, my counter-arguments. He states that there is no need to address them because his given methodology was so sound, and so has offered no guidance here.

In conclusion, the Special Master's Decree is an exemplary example of the kind of beliefs held by so many involved in the Settlement Agreement, resulting in logically unsound arguments from their confirmation biases to the detriment of the truth and fair handling of the Settlement Agreement and should be dismissed outright.

Dated:    /   /

Respectfully Submitted,

William Wayne
Kelly Wayne
1007 Chippewa
Round Rock, TX 78665
(985) 276 - 0002

Certificate of Service
I hereby certify that I have served a copy of this document on all counsel for record either in person or by mailing it postage prepaid on this 9th day of February, 2018

