## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **CIVIL ACTION** |
| | **MDL NO. 09-2047** |
| | **SECTION "L" (5)** |
| **THIS DOCUMENT RELATES TO: ALL CASES** | |

## ORDER AND REASONS

Before the Court is Defendants CNBM and BNBM Entities' motion to certify an immediate appeal from this Court's jurisdictional orders.  Rec. Doc. 21095.  Defendant Taishan joins only the portion of the motion concerning the Court's November 28, 2017 opinion addressing *Bristol–Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017).  Rec. Doc. 21096.  Plaintiffs oppose the motion.  Rec. Doc. 21158.  After reviewing the parties' arguments and the applicable law, the Court now issues its Order and Reasons.

## I.      BACKGROUND

From 2004 through 2006, the housing boom in Florida and rebuilding efforts necessitated by Hurricanes Rita and Katrina led to a shortage of construction materials, including drywall.  As a result, drywall manufactured in China was brought into the United States and used to construct and refurbish homes in coastal areas of the country, notably the Gulf Coast and East Coast.  Sometime after the installation of the Chinese drywall, homeowners began to complain of emissions of foul-smelling gas, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes.  *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829-30 (E.D. La. 2012), *aff'd*,

1

742 F.3d 576 (5th Cir. 2014).  Many of these homeowners also began to complain of various physical afflictions believed to be caused by the Chinese drywall.

These homeowners then began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall.  Because of the commonality of facts in the various cases, this litigation was designated as a multidistrict litigation.  Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation on June 15, 2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 09-2047 before this Court.

The Chinese drywall at issue was largely manufactured by two groups of defendants:  (1) the Knauf Entities and (2) the Taishan Entities.  The litigation has focused upon these two entities and their downstream associates, and has proceeded on strikingly different tracks for the claims against each group.

###    A.    The Knauf Defendants

The Knauf Entities are German-based, international manufacturers of building products, including drywall, whose Chinese subsidiary, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), advertised and sold its Chinese drywall in the United States.  The Knauf Entities are named defendants in numerous cases consolidated with the MDL litigation and litigation in state courts.

The Knauf Entities first entered their appearance in the MDL litigation on July 2, 2009. Rec. Doc. 18.  Thereafter, the Court presided over a bellwether trial in *Hernandez v. Knauf Gips KG*, Case No. 09-6050, involving a homeowner's claims against KPT for defective drywall.  *See* Rec. Doc. 2713.  The Court found in favor of the plaintiff family in *Hernandez*, issued a detailed Findings of Fact and Conclusions of Law, and entered a Judgment in the amount of $164,049.64,

including remediation damages in the amount of $136,940.46—which represented a cost of $81.13 per square foot based on the footprint square footage of the house.  *See* Rec. Doc. 3012.

Subsequently, the Knauf Entities entered into a pilot remediation program with the Plaintiffs' Steering Committee ("PSC") in the MDL.  This program was largely based upon the remediation protocol formulated by the Court from the evidence in *Hernandez*.  The Knauf pilot remediation program is ongoing and has, at present, remediated more than 2,200 homes containing KPT Chinese drywall using the same general protocol.  At the Court's urging, the parties began working together to monetize this program and make it available to a broader class of plaintiffs.

On December 20, 2011, the Knauf Entities and the PSC entered into a global, class Settlement Agreement ("Knauf Settlement Agreement"), which is designed to resolve all Knauf-related, Chinese drywall claims.  *See* Rec. Doc. 12061-5.  In addition to the Knauf Settlement Agreement, numerous defendants in the chain-of-commerce with the Knauf Entities have entered into class settlement agreements, the effect of which settles almost all of the Knauf Entities' chain-of-commerce litigation.  Although the Court occasionally must deal with settlement administration and enforcement issues, the Knauf portion of this litigation is largely resolved.

### B.    The Chinese Defendants

The litigation against the Chinese entities has taken a different course.  The Chinese Defendants in the litigation include the principal Chinese-based Defendant, Taishan, namely, Taishan Gypsum Co. Ltd. ("TG") and its wholly-owned subsidiary, Taian Taishan Plasterboard Co., Ltd. ("TTP") (collectively "Taishan" or "Taishan Entities").  Other Chinese-based Defendants include the CNBM and BNBM Entities.

The Court's initial inquiry regarding Taishan involved four cases in this MDL:  (1) *Germano v. Taishan Gypsum Co.* (Case No. 09-6687); (2) *The Mitchell Co. v. Knauf Gips KG*

(Case No. 09-4115); (3) *Gross v. Knauf Gips KG* (Case No. 09-6690); and (4) *Wiltz v. Beijing New Building Materials Public Ltd.* (Case No. 10-361).

The first issues involving Taishan arose when Taishan failed to timely answer or otherwise enter an appearance in *Mitchell* and *Germano*, despite the fact that it had been properly served in each case. *See* Rec. Docs. 52 & 1-7 (Case No. 09-6687). Thus, after an extended period of time, the Court entered preliminary defaults against Taishan in both of these cases. *See* Rec. Docs. 277 & 487.

Thereafter, the Court moved forward with an evidentiary hearing in furtherance of the Preliminary Default in *Germano* on the Plaintiffs' claimed damages. *See* Rec. Docs. 502, 1223, 1258 & 2380. At this hearing, the Plaintiffs presented evidence specific to seven individual properties, which served as bellwether cases. Following this hearing on February 19 and 20, 2010, the Court issued detailed Findings of Fact and Conclusions of Law. *See* Rec. Doc. 2380. On May 11, 2010, the Court issued a Default Judgment against Taishan in *Germano* and in favor of the Plaintiffs. Rec. Doc. 3013. On June 10, 2010, the last day to timely appeal, Taishan filed a Notice of Appeal of the Default Judgment in *Germano* and entered its appearance in *Germano* and *Mitchell*. Rec. Docs. 3668 & 3670.

After Taishan entered its appearance in the MDL, it quickly sought to have the Default Judgment in *Germano* and the Preliminary Default in *Mitchell* vacated for lack of personal jurisdiction. *See* Rec. Docs. 5436 & 5583. In the fall of 2010, the Court directed the parties to commence the personal jurisdiction discovery necessary to resolve Taishan's motions to vacate. Sometime after the initial discovery, the parties agreed to expand the discovery beyond the *Germano* and *Mitchell* cases to other cases in which Taishan had been served, including *Gross* and *Wiltz*.

4

Formal personal jurisdiction discovery of Taishan began in October 2010. *See* Rec. Docs. 5839 & 5840. Discovery has included the production of both written and electronic documents, as well as depositions of Taishan's corporate representatives, with each type of discovery proceeding in a parallel fashion. This discovery has often been contentious, requiring close supervision by the Court. The Court has presided over regularly-scheduled status conferences to keep the parties on track, and conducted hearings and issued rulings to resolve numerous discovery-related disputes. *See* Rec. Docs. 7136 & 7511.

In April 2012, Taishan filed various motions, including its motions to dismiss for lack of personal jurisdiction. On June 29, 2012, over three years since the creation of this MDL, and after a year-and-a-half of personal jurisdiction discovery on Taishan, the Court presided over a hearing on Taishan's motions. The Court coordinated its hearing with the Honorable Joseph Farina of the 11th Judicial Circuit Court of Florida, who had a similar motion involving Taishan's challenge to personal jurisdiction.

On September 4, 2012, this Court issued a 142-page Order regarding Taishan's motions in *Germano*, *Mitchell*, *Gross*, and *Wiltz*, in which the Court denied the motions to dismiss, and held that it maintained personal jurisdiction over Taishan. *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819 (E.D. La. 2012). The Court also ruled that Taishan was operating as the alter ego of TG. The Court certified an interlocutory appeal, and the Fifth Circuit granted permission to appeal.

In January and May of 2014, two different panels of the Fifth Circuit affirmed this Court's ruling and held that this Court maintained personal jurisdiction over Taishan and TTP. *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 753 F.3d 521 (5th Cir. 2014); *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576 (5th Cir. 2014). The time for writ of

certiorari passed, and the issue of personal jurisdiction over Taishan became firmly and finally settled.  Nevertheless, Taishan refused to voluntarily participate in this suit.

On June 20, 2014, the Court ordered Taishan to appear in open court on July 17, 2014 to be examined as a judgment debtor.  Rec. Doc. 17774.  Taishan failed to appear for the July 17, 2014 Judgment Debtor Examination, and the Court held Taishan in contempt and ordered that Taishan pay $15,000.00 in attorney's fees to Plaintiffs' counsel; that Taishan pay $40,000.00 as a penalty for contempt; that Taishan and any of its affiliates or subsidiaries be enjoined from conducting any business in the United States until or unless it participates in this judicial process; and that if Taishan violates the injunction, it must pay a further penalty of 25-percent of the profits earned by the Company or its affiliate who violate the Order for the year of the violation.  *See* Rec. Doc. 17869.

On July 23, 2014, Plaintiffs filed their Omnibus Motion for Class Certification pursuant to Rule 23(b)(3).  Rec. Doc. 17883.  Taishan did not appear and, on September 26, 2014, this Court certified a class of

> [a]ll owners of real properties in the United States, who are named Plaintiffs on the complaints in *Amorin*, *Germano*, *Gross*, and/or *Wiltz* (i.e., not an absent class member), asserting claims for remediated damages arising from, or otherwise related to Chinese Drywall manufactured, sold, distributed, supplied, marketed, inspected, imported or delivered by the Taishan Defendants.

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 2014 WL 4809520, at *16 (E.D. La. Sept. 26, 2014).

Taishan finally entered an appearance with the Court in February 2015, and, to satisfy the contempt, Taishan paid both the sum of $15,000.00 in attorney's fees to Plaintiffs' counsel and the contempt penalty of $40,000.00 in March 2015.  Rec. Doc. 18764.  On March 17, 2015, the Court ordered Taishan and the BNBM and CNBM Entities to participate in expedited discovery related

to "the relationship between Taishan and BNBM/CNBM, including whether affiliate and/or alter ego status exists." Rec. Doc. 17869.

In March 2016, this Court granted CNBM Group's motion to dismiss, finding it was an "agent or instrumentality of a foreign state" within the meaning of the Foreign Sovereign Immunities Act ("FSIA"), and therefore outside the jurisdiction of this Court under 28 U.S.C. § 1603(b). The Court determined that the tortious activity exception did not apply because the alleged tortious conduct did not occur within the United States under 28 U.S.C. § 1605(a)(5). Further, the Court found that the commercial activity exception did not apply in this case, as CNBM Group did not directly manufacture, inspect, sell, or market drywall in the United States. Because Plaintiffs failed to present evidence sufficient to overcome the presumption that CNBM Group was entitled to independent status for purposes of the FSIA, the Court granted the motion and dismissed CNBM Group from the present litigation. *See* Rec. Doc. 20150.

On April 21, 2017, the Court issued a 100-page opinion related to jurisdictional challenges being raised in four separate motions filed by Defendants. Rec. Doc. 20739. The Court found that Taishan was an agent of BNBM under Florida and Virginia law, such that Taishan's contacts in Florida and Virginia are imputed to BNBM. This Court further found that CNBM, BNBM Group, and BNBM were part of a single business enterprise with Taishan under Louisiana law, such that Taishan's contacts in Louisiana may be imputed to Defendants, and the Court has jurisdiction over Defendants in relation to Plaintiffs' claims based on Louisiana law.

Also on April 21, 2017, the Court issued its Findings of Fact and Conclusions of Law related to the June 9, 2015 damages hearing, and adopted Plaintiffs' damage calculations methodology related to remediation of properties. Rec. Doc. 20741.

On May 22, 2017, Defendants filed a motion pursuant to 28 U.S.C. § 1292(b) to certify interlocutory appeal from this Court's jurisdiction order.  *See* Rec. Doc. 20779.  Because the Court found that its Order and Reasons involves a controlling question of law as to which there is substantial ground for difference of opinion, and because the Court further found that an interlocutory appeal from that Order and Reasons may materially advance the ultimate termination of this MDL, on August 4, 2017, the Court certified an interlocutory appeal to the Fifth Circuit pursuant to 28 U.S.C. § 1292(b).

On August 1, 2017, Defendants filed a motion to dismiss for lack of personal jurisdiction following the recent U.S. Supreme Court case of *Bristol–Myers Squibb v. Superior Court of California*.  Rec. Doc. 20882.  Based on *BMS*, Defendants contest this Court's findings of personal jurisdiction, class certification, and agency relationship.  On August 14, 2017, Defendants filed a petition for permission to appeal pursuant to 28 U.S.C. § 1292(b) in the Fifth Circuit, in which they argue that the *BMS* opinion impacts questions raised on appeal.  *See* Rec. Doc. 20898-2 (*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 5th Cir. Docket 17-90027 (Pet. for Permission to Appeal)).  On August 24, 2017, this Court vacated its 28 U.S.C. § 1292(b) certification order to avoid piecemeal litigations.  The Court noted its duty to address the effect of *Bristol–Myers Squibb* on the jurisdictional issue before certifying the matter to the Fifth Circuit.  Following the Order vacating this Court's 28 U.S.C. § 1292(b) certification, the Fifth Circuit denied Defendants' petition for permission to appeal.  Subsequently, on November 30, 2017, the Court denied Defendants' motion to dismiss, holding that *Bristol–Myers* does not change this Court's jurisdictional findings and class certification.

Defendants now ask the Court to certify an immediate appeal of the Court's opinions concerning Defendants' agency relationship (Rec. Doc. 20739) and personal jurisdiction after *Bristol–Myers* (Rec. Doc. 21088).

## III.   LEGAL STANDARD

Interlocutory appeals are allowed when a district court that issues a non-final order in a civil case "shall be of the opinion that such order [1] involves a controlling question of law as to which [2] there is substantial ground for difference of opinion and that an immediate appeal from the order [3] may materially advance the ultimate termination of the litigation."   28 U.S.C. § 1292(b) (brackets added); *see also In re Ichinose*, 946 F.2d 1169, 1177 (5th Cir. 1991).   The availability of such an appeal under § 1292(b) does not "jeopardiz[e] the usual rule of not permitting an appeal until all the proceedings on the trial court level are complete."   10 Charles Alan Wright, et al., FED. PRAC. & PROC. JURIS. § 2658.2 (3d ed. 1998 & 2009 supp.).   An interlocutory appeal is "exceptional" and "does not lie simply to determine the correctness of a judgment."   *Chauvin v. State Farm Mut. Auto. Ins. Co.*, Nos. 06-7145 & 06-8769, 2007 WL 4365387, at *2 (E.D. La. Dec. 11, 2007) (quoting *Clark-Dietz & Assocs.-Eng'rs, Inc. v. Basic Const. Co.*, 702 F.2d 67, 68, 69 (5th Cir. 1983)).   The moving party bears the burden of demonstrating that interlocutory appeal is appropriate.   *In re FEMA Formaldehyde Prods. Liab. Litig.*, No. MDL 07-1873, 2008 WL 4923035, at *2 (E.D. La. Nov. 13, 2009) (citing I*n re Complaint of L.L.P. & D. Marine, Inc.*, Nos. 97-1668, 97-2992 & 97-3349, 1998 WL 66100, at *1 (E.D. La. Feb. 13, 1998)).

## IV.   DISCUSSION

Defendants seek to certify two opinions from this Court for appeal to the Fifth Circuit:  one on jurisdiction over CNBM and BNBM Entities from their agency relationship with Taishan, and

the other on personal jurisdiction over Defendants after the Supreme Court's holding in *Bristol–Myers*.  The Court will address each in turn.

### A.      Order Concerning Jurisdiction Over CNBM and BNBM Entities

The Court had previously certified the question of jurisdiction over CNBM and BNBM Entities for appeal, Rec. Doc. 20890, but vacated that Order in light of Defendants' then-newly filed motion to dismiss based on the Supreme Court's ruling in *Bristol–Myers*.  In vacating the Order, the Court sought to avoid piecemeal litigation:  Defendants had presented overlapping issues concerning agency relationship with their motion to dismiss based on *Bristol–Myers*.  Rec. Doc. 20927.  Now that this Court has addressed the impact—or lack thereof—of *Bristol–Myers* on the instant MDL, the Court's original reason to vacate its Order certifying appeal is no longer of concern.  Accordingly, the Court concludes that it is now appropriate for the Fifth Circuit to review the Court's Order finding jurisdiction over CNBM and BNBM Entities, as that Order involves a controlling question of law that exists substantial ground for difference.  The Court hereby incorporates its August 4, 2017 Order and Reasons granting Defendants' motion to certify immediate appeals pursuant to 28 U.S.C. § 1292(b).

### B.      Order Addressing Personal Jurisdiction After *Bristol–Myers*

Defendants' motion to certify appeal of the Court's Order addressing *Bristol–Myers*, however, presents a new but familiar request.  As this Court previously noted, two separate panels on the Fifth Circuit have already affirmed jurisdiction over Taishan.  *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 753 F.3d 521 (5th Cir. 2014); *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576 (5th Cir. 2014).  Six judges on the Fifth Circuit agreed with this Court's opinion on jurisdiction.  *See In re Chinese-Manufactured Drywall*, 753 F.3d 521 (Higginson, Smith, and DeMoss, JJ.); *In re Chinese-Manufactured Drywall*, 742 F.3d 576 (Elrod,

Reavley, and Haynes, JJ.).  Both opinions were unanimous.  *See id.*  After Defendants took a second bite at the apple on the Fifth Circuit in 2014, and a third bite with its motion to dismiss based on *Bristol–Myers* in 2017, Defendants now crave for a fourth bite with the instant motion to certify appeal.  The Court, nevertheless, rejects that attempt.

First, Defendants argue that the questions at issue—whether a plaintiff-specific/claim-specific analysis is required by *Bristol-Myers* and whether *Bristol–Myers* applies to class actions— are controlling, and their resolution would materially advance the litigation.  The Court, however, finds that these questions are not imperative in this MDL.  This case is a multidistrict litigation; jurisdiction is therefore assessed on the basis of the transferor court.  "While the cases are in the MDL court . . . the MDL judge have all of the powers that the transferor court would have . . . ."  Andrew D. Bradt, *The Long Arm of Multidistrict Litigation*, 59 Wm. & Mary L. Rev. 1, 3 (2017).  Accordingly, this Court's authority, based on the various transferor courts, fundamentally alleviates the "plaintiff-specific/claim-specific" inquiry that Defendants advanced in its motion to dismiss based on *Bristol–Myers*.

The answer to Defendants' question on whether *Bristol–Myers* apply to class actions is straightforward:  it does not.  In the dissent, Justice Sotomayor recognized that the majority in *Bristol–Myers* did not address whether the Supreme Court's opinion "would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there."  *Bristol–Myers*, 137 S. Ct. at 1789 n.4 (Sotomayor, J., dissenting).  And several lower courts, including this one, have followed that interpretation. *See, e.g.*, *Fitzhenry–Russell, et al. v. Dr. Pepper Snapple Group, Inc.*, No. 17-CV-00564 NC, 2017 WL 4224723, at *5 (N.D. Cal. Sept. 22, 2017); *Day v. Air Methods. Corp.*, No. 5:17-183-DCR, 2017 WL 4781863, at *2 (E.D. Ky. Oct. 23, 2017) (holding that claims of non-resident unnamed

class members did not destroy personal jurisdiction because "the inquiry for personal jurisdiction lies with the named parties of the suit asserting their various claims against the defendant, not the unnamed proposed class members"); *Thomas v. Kellogg Co.*, No. C13-5136RBL, 2017 WL 5256634, at *1 (W.D. Wash. Oct. 17, 2017) (denying defendant's motion to dismiss opt-ins' claims, explaining that it is "not at all clear that *Bristol-Myers* even applies" to cases concerning federal class claims in federal court).

More recently, two sister courts have agreed with this Court's analysis on *Bristol–Myer*'s impact on class actions.  In *Sanchez v. Launch Tech. Workforce Sols., LLC*, the Northern District of Georgia held that "*Bristol–Myers* simply reaffirms controlling due-process law and does not apply to federal class actions. . . ."  No. 1:17-CV-01904-ELR, 2018 WL 942963, at *1 (N.D. Ga. Feb. 14, 2018).  In a putative nationwide class action against General Motors for defective car engines, the Northern District of California also recognized that a federal court "may well have jurisdiction over absent class members (including the named out-of-state plaintiffs) who are non-forum residents in any event."  *Sloan v. Gen. Motors LLC*, No. 16-CV-07244-EMC, 2018 WL 784049, at *9 (N.D. Cal. Feb. 7, 2018).  Furthermore, similar to this Court's opinion addressing *Bristol-Myers*, the federal court in California also identified that the Supreme Court's focus in that case is on federalism.  Judge Chen wrote:

> In contrast to *Bristol–Myers*, the due process right does not obtain here in the same manner because all federal courts, regardless of where they sit, represent the same federal sovereign, not the sovereignty of a foreign state government.  There is no risk of a state court exceeding the bounds of its state's sovereignty and subjecting residents of another state to the coercing power of its courts.  Therefore, where a federal court presides over litigation involving a federal question, the due process analysis does not incorporate the interstate sovereignty concerns that animated *Bristol–Myers* and which may be "decisive" in a state court's analysis.  *Id.*  Without those interstate federalism concerns, the due process analysis falls back on whether "the maintenance of the suit . . . offend[s]

> 'traditional notions of fair play and substantial justice,'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted), which itself focuses on the burden on the defendant (other than a concern about subjecting it to the power of a foreign sovereign.

*Id.* at *7.

Indeed, the governing jurisprudence on personal jurisdiction for foreign defendants remains *International Shoe*, 326 U.S. 310, *Asahi Metal Industry Co. v. Superior Court*, 408 U.S. 102 (1987), and *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011). The Fifth Circuit and this Court have already applied that analysis, and found that Taishan made substantial contacts in Louisiana, Virginia, and Florida. Therefore, personal jurisdiction over Defendants in those jurisdictions is fair and comports with due process.

The Supreme Court in *Bristol–Myers* found little, if any, contacts between non-resident plaintiffs and the pharmaceutical company in California; therefore, the state courts in California cannot exercise personal jurisdiction over the company for claims arising from non-resident plaintiffs. But again, that analysis pertains to mass torts—not class actions. Class actions are uniquely different from mass torts: a class action is a non-traditional litigation procedure that permits a representative with typical claims to sue on behalf of, and stand in judgment for a class, provided that the representative can establish the prerequisites to class certification. *See United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 402 (1980). The demand of class certification requires numerosity, commonality, typicality, adequacy of representation, predominance and superiority. Fed. R. Civ. P. 23(a)&(b). In this case, because of the default judgments, liability of the Taishan Defendants is conclusively established. Therefore, the Court has certified the *Amorin* class under Rule 23 to determine class-wide property damages after the Court determined that the instant class satisfied class action requirements. Accordingly, because this litigation is a class

action, *Bristol–Myers*—a mass torts case—does not disrupt this Court's jurisdiction over Defendants.

Second, Defendants argue that there exists substantial grounds for difference of opinion about whether *BMS* applies to class actions. Indeed, some courts have taken a different position from this Court, the Northern District of California, and the Northern District of Georgia. *See, e.g.*, *McDonnell v. Nature's Way Products LLC*, 2017 WL 4864910, at *4 & n.7 (N.D. Ill. Oct. 26, 2017) ("Because the only connection to [the forum state] is provided by [the named plaintiff's] purchase of Women's Alive . . . the Court dismisses all claims . . . brought on behalf of non-[forum state] residents. . . ."); *DeBernardis v. NBTY, Inc.*, No. 17 C 6125, 2018 WL 461228, at *2 (N.D. Ill. Jan. 18, 2018); *Wenokur v. AXA Equitable Life Ins. Co.*, No. 17-cv-00165, 2017 WL 4357916, at *4 n.4 (D. Ariz. Oct. 2, 2017). However, "[t]he threshold for establishing a 'substantial ground for difference of opinion' is higher than mere disagreement or even the existence of some contrary authority." *See Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718, 724 (N.D. Tex. 2006). "[S]imply because a court is the first to rule on a question or counsel disagrees on applicable precedent does not qualify the issue as one over which there is substantial disagreement." *Id.* (citation omitted). With respect, this Court is unpersuaded that the Supreme Court intended a blanket extension of *Bristol–Myer*s, which concerned mass torts, to class actions.

Finally, certifying the Court's *BMS* Order will not materially advance this litigation. This Court has repeatedly raised concern about the glacial progress of this MDL, in part due to Defendants' delay tactics. This MDL was consolidated in 2009, but Defendants did not make an appearance until default judgments were entered. Now, nine years later, thousands of plaintiffs still have outstanding claims, without remedy after installing defective Chinese drywalls and suffering from them. Any further delay, as a result of an unnecessary interlocutory appeal, is unfair

for plaintiffs.  Accordingly, this Court refuses to certify appeal of its opinion addressing *Bristol–Myers*.

## V.     CONCLUSION

Based on the foregoing reasons, accordingly,

**IT IS ORDERED** that Defendants' motion to certify immediate appeals under 28 U.S.C. § 1292(b), Rec. Doc. 21095, is hereby **GRANTED IN PART** and **DENIED IN PART**.  At this juncture, Defendants may only appeal the Court's opinion concerning personal jurisdiction from their agency relationship (Rec. Doc. 20739).

New Orleans, Louisiana, this 5th day of March, 2018.

**ELDON E. FALLON**
United States District Judge