UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * * * * | MDL NO. 2047 SECTION: L |
| | * | JUDGE FALLON |
| This document relates to all cases | * | |
| | * | MAG. JUDGE WILKINSON |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COLSON HICKS EIDSON'S RESPONSE TO MOTION TO EXTINGUISH THE KNAUF DEFENDANTS' SETTLEMENT OBLIGATIONS FOR CERTAIN REMEDIATION CLAIMS (DOC 21190)

Colson, Hicks Eidson ("CHE") hereby files its response to Knauf Defendants' Motion to Extinguish the Knauf Defendants' Settlement Obligations for Certain Remediation Claims (Doc No. 21190). Extinguishing the subject claims is unfair, unnecessary, and would lead to a miscarriage of justice. The Knauf Defendants' Motion should be denied. Claimants have encountered unexpected delays or issues in their attempts to have their homes and properties remediated. Claimants' delays are reasonable. Claimants have operated in good faith and should not be penalized. The CHE Claimants request that the Court deny the Knauf Defendants' Motion to Extinguish their claims so that they may complete the remediation of their homes and properties.

The CHE Claimants at issue in the Knauf Defendants' Motion are as follows:

| | |
|---|---|
| 1. | Coleman, Jacqueline and J |
| 2. | Santamaria, Rafael |
| 3. | Sar Shalom Yehiel |
| 4. | Visciglia, Gian Carlo |
| 5. | Prime Homes #201 |
| 6. | Prime Homes #2601 |
| 7. | Prime Homes #2602 |
| 8. | Prime Homes #2604 |
| 9. | Primes Homes #2606 |
| 10. | Primes Homes #2803 |

1

|   | |
|---|---|
| 11. | Prime Homes #2901 |
| 12. | Prime Homes #3001 |
| 13. | Primes Homes #3002 |
| 14. | Prime Homes #3003 |
| 15. | Prime Homes #3004 |
| 16. | Prime Homes #3102 |
| 17. | Prime Homes #3103 |
| 18. | Prime Homes #3201 |
| 19. | Prime Homes #3202 |
| 20. | Prime Homes #3203 |
| 21. | Prime Homes #3204 |
| 22. | Prime Homes #3206 |
| 23. | Prime Homes #3301 |
| 24. | Prime Homes #3302 |
| 25. | Prime Homes #3306 |
| 26. | Prime Homes #3307 |
| 27. | Prime Homes #3308 |
| 28. | Prime Homes Clubhouse |

The CHE Claimants are committed to remedy any and all perceived deficiencies in their claims in order to finalize the remediation of their homes and properties. Each of these will be discussed below on a per Claimant basis:

1) **<u>Claimant Jessidra Coleman (15121 S.W. 106th Ave, Miami FL 33176).</u>**

    Jessidra Coleman is undergoing Self-Remediation in accordance with the Knauf Settlement Agreement. Self-Remediation allows a Claimant to remediate their home using the contractor of their choosing. While the Claimant hires the contractor, the contractor is paid by the Settlement Administrator upon completion of certain Milestones (four in total). Per the terms of the Settlement Agreement, requisite documentation must be submitted by the *contractor* as proof of the completion of each Milestone. The process fundamentally puts additional burden on the Claimant who enters into a contractor for specific work, but cannot control the purse to ensure that the work is done properly. Jessidra Coleman has operated

in good faith to have her home remediated as efficiently and expeditiously as possible; however, Ms. Coleman encountered numerous delays, through no fault of her own, due to disputes with her contractor. Ms. Coleman's contractor was so insufficient that it necessitated her switching to another contractor. In addition, Ms. Coleman needed to obtain a Withdrawal on Contractor form and a return of Milestone 1 funds from her original contractor. In June of 2014, Ms. Coleman and Undersigned Counsel had to take steps to return the Milestone 1 funds to the Settlement Administrator. In April of 2016, because of the difficulties she had with her original contractor and securing another, Ms. Coleman inquired about switching from Self-Remediation to the Knauf Remediation Program. She was told that the estimates for her home would need to be repriced, and she would be required to cover any difference. Instead of honoring initial promises and accommodating the Claimant, Knauf instead added additional obstacles in Ms. Coleman's path to remediating the damages that Knauf caused. Understandably, Ms. Coleman did not want to risk having to bear additional costs for the remediation of her home. Instead, she began her search for a reliable contractor. In December of 2016, she was evaluating estimates from contractors and working to submit any requisite paperwork. Regrettably, at that time, she suffered the unexpected loss of a loved one that delayed her search for a contractor. Ms. Coleman submitted the requisite documentation in August of 2017; however, it was found to be deficient. Nonetheless, Ms. Coleman has completed the process through Milestone 3, with only one Milestone remaining. To extinguish Ms. Coleman's claim and to abandon her with her home unfinished would be a gross miscarriage of justice and also run counter to one the of the Settlement Program's goals, to remediate the defective home and not pass it along to another consumer down the line. Knauf's defective Chinese drywall

damaged her home, requiring the remediation. To extinguish Ms. Coleman's claim would only serve to add insult to injury.

2) **Claimant Rafael Santamaria (1974 SE 23 Court, Homestead, Florida 33035).** As with Ms. Coleman, Mr. Santamaria has always operated in good faith to have his home remediated efficiently and expeditiously. Mr. Santamaria encountered delays due to disputes with his contractor. For over one year, Mr. Santamaria's contractor consistently failed to work on the remediation of Mr. Santamaria's home. Further, his contractor failed to return Mr. Santamaria's calls and eventually disappeared altogether. Regrettably, these issues required Mr. Santamaria to switch contractors in the middle of his remediation. In April of 2016, Mr. Santamaria requested the requisite paperwork he would need in order to switch his contractor. In an effort to avoid the repetition of a bad situation, Mr. Santamaria did his due diligence when choosing his second contractor. Understandably, choosing a second contractor took time and caused additional delay of Mr. Santamaria's Self-Remediation. By November of 2016, Mr. Santamaria had secured a second contractor and provided the contractor with the requisite forms to proceed with the Self-Remediation under the Knauf Settlement. However, in order to proceed, Mr. Santamaria needed confirmation of the remaining monies available to pay the contractor. Mr. Santamaria requested the same, and provided the information to the new contractor to finalize their contract. In March of 2017, Mr. Santamaria was finally able to submit his paperwork in order to switch contractors and begin with Milestone 3. Unfortunately, the paperwork was deemed deficient because it required the original contractor's signature. Because the original contractor had gone missing, obtaining his signature was impossible. The Settlement Administrator then agreed to allow Mr. Sanatamaria to submit a letter in lieu of

the original contractor's signature, stating that he had attempted to contact the original contractor but was unable. Further, in October of 2017, the Settlement Administrator required the new contractor to submit proof of the Milestones that had been completed by the original contractor. The specific documentation required from the new contractor was a source of confusion that led to additional delays, particularly when the required documentation pertained to work that the new contractor had not done. The Claimant is working diligently to address any remaining deficiencies with his paperwork. Mr. Santamaria's Self-Remediation is complete through Milestone 2, with two Milestones remaining. To Extinguish Mr. Santamaria's claim and to leave his home unfinished would be fundamentally unjust.

3) **Gian Carlo Visciglia (11402 NW 84th Terrace, Doral, Florida 33178).** Like the other Claimants, Mr. and Mrs. Visciglia have always operated in good faith. Knauf's defective Chinese drywall damaged their home requiring remediation. During remediation Mr. and Mrs. Visciglia needed to make some changes to the plans for their home. As any change in plans required approval by the Building and Zoning Department, Mr.and Mrs. Visciglia's remediation was stalled until the new plans received approval. As early as January 2014, Mr. and Mrs. Visciglia were attempting obtaining the proper permitting to remediate their home and submit their Self-Remediation documentation. In June of 2015, the Visciglias were finally able to submit their Self-Remediation documentation. In November of 2015, Claimants submitted their Milestone 2 documentation. The Visciglias continued with their remediation in good faith, making every effort to complete the remediation expeditiously. By November of 2016, the Visciglias were experiencing delays obtaining the requisite inspections. Nonetheless, they worked diligently with their architect to address the issues

and obtain the proper inspections. At this point, with the consultation of their architect, the Visciglias had to submit revised plans to the City of Doral for their home. In March of 2017, the Visciglias were still waiting to have their revised plans approved. Despite their best efforts, the City rejected the plans and the Visciglias were required to resubmit them several times. To date, the Visciglias have completed the Self-Remediation process through Milestone 2 and have submitted their paperwork for Milestone 3. The Visciglias are working diligently to complete the remediation as promptly as possible. Mr. and Mrs. Visciglia must not be penalized for their good faith efforts to properly, legally, and expeditiously repair their home.

4) **Claimants Prime Homes and Yehiel Sar Shalom (Various Properties).** Prime Homes is a developer who built a community that was later damaged by Knauf's defective Chinese manufactured drywall. Prime Homes suffered catastrophic losses due to Knauf's defective board. In order to preserve the properties and avoid financial ruin, Prime has had to enter into complex agreements with its creditors to avoid financial ruin. These agreements were a result of Knauf's defective product and Prime Homes has tried to mitigate its damages with these complex agreements. Regrettably, this has caused delays for Prime Homes in terms of its finalizing its decisions regarding the Knauf Remediation Program due to issues with its creditors. Prime Homes has now requested paperwork to proceed with Self-Remediation from the Settlement Administrator. Prime Homes would suffer extreme losses were its claims to be extinguished. Its good faith efforts must not be penalized and Prime Homes requests that it be granted sufficient time for the Settlement Administrator to provide Prime Homes the Self-Remediation paperwork and for Prime Homes to execute it and move forward.

## CONCLUSION

For the reasons set forth above, the Court should not extinguish the Knauf Defendants' settlement obligations to CHE Claimants and the Knauf Defendants' Motion to Extinguish the claims should be denied. The delays in finalizing Claimants' Settlements have been reasonable and the CHE Claimants have operated in good faith. For reasons of judicial economy and fairness, the CHE Claimants request that the Court deny the Knauf Defendants' Motion and order the Knauf Defendants to see these claims through their final resolution.

Respectfully Submitted,

/s/  Patrick S. Montoya

PATRICK S. MONTOYA
Fla. Bar No. 524441
Patrick@colson.com
COLSON HICKS EIDSON COLSON
MATTHEWS MARTINEZ GONZALEZ
KALBAC & KANE
255 Alhambra Circle, PH
Coral Gables, FL   33134
Phone: (305) 476-7400
Fax:    (305) 476-7444
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this **7th** day of **March**, **2018**.

/s/  Patrick S. Montoya