**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

IN RE: CHINESE-MANUFACTURED
DRYWALL PRODUCTS LIABILITY
LITIGATION                                    **MDL NO. 2047**

                                              **SECTION: L**

                                              **JUDGE FALLON**
                                              **MAG. JUDGE WILKINSON**

THIS DOCUMENT RELATES TO:
*ALL CASES*
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFFS' LEAD AND LIAISON COUNSELS' OPPOSITION**
**TO PRIMARY COUNSEL'S MOTION FOR DISBURSEMENT**
**OF CONTRACT COUNSEL FEES AWARDED BY THE COURT**

**I.      INTRODUCTION**

In its Common Benefit Fees Order,[1] the Court recognized that contract counsel "'over

played' their hand" during the fee objection process by "creating a second, unnecessary litigation"

that became inherently unreasonable.   These Objectors went beyond mere objections and

"commenced unnecessary proceedings, and prolonged the discovery process by filing

unnecessary written discovery and seeking pointless depositions."[2]   As the Court found, the only

thing this accomplished was causing "havoc and needless delay."[3]   Unfortunately for the Court

and all non-objecting counsel who will share in the final fee award, the Objectors' desire to

prolong the litigation of this fee dispute continues.  Their most recent Motion for Disbursement of

---

[1] Rec. Doc. 21168 ("Common Benefit Fees Order").

[2] *Id.*, at 23.

[3] *See id.*

1

Contract Counsel Fees Awarded by the Court[4] aptly demonstrates how outrageous their conduct has become.[5]  These Objectors now seek to turn their self-created satellite fee litigation into a fee generating endeavor for the handful of counsel who wish to continue dragging out the fee allocation process.  That useless and selfish effort should not be countenanced.

The Disbursement Motion should be denied for all of the reasons set forth in Plaintiffs' Lead and Liaison Counsels' Opposition to KCM's Interim Disbursement Motion.[6]  First, an interim disbursement of attorneys' fees is not appropriate at this time because the fee allocation process is nearing its completion and counsel can file an appeal of all fee-related issues once a final fee award has been made by the Court.[7]  Second, contrary to the Objectors' claim that "no one has denied that at least th[e] amount [of $94,607,042.17] is due to individually retained counsel," the amount of the global fee to be allocated to individually-retained counsel is currently very much in dispute.[8]  Therefore, any allocation of the disputed amount is likely to lead to

---

[4] Rec. Doc. 21240 ("Disbursement Motion").

[5] Movants are comprised of thirteen firms that are a subset of the original group of 23 Objectors.  They consist of common benefit counsel, contract attorneys, and two PSC members.  In addition to their Disbursement Motion, they filed a Response Opposing Krupnick Campbell Malone *et al.*'s Motion for Interim Disbursement of Undisputed Amount of Attorney's Fees [Rec. Doc. 21241] ("Opposition").  Both filings seek the same outcome and contain overlapping arguments.  The Opposition provides more insight into the result the Objectors seek in their Disbursement Motion and, therefore, the arguments from both filings are discussed herein.

[6] Rec. Doc. 21239.  Krupnick Campbell Malone *et al.*'s Motion for Interim Disbursement of Undisputed Amount of Attorney's Fees [Rec. Doc. 21212] is referred to herein as "KCM's Interim Disbursement Motion."

[7] *See id.*, at 1-5.

[8] In fact, these Objectors are actively seeking to certify the Common Benefit Fees Order for interlocutory appeal, and it goes without saying that there is uncertainty as to whether an appeal might result in a lower fee award for individually-retained counsel, which leaves the amount in dispute.  One cannot presume what an appellate court may do.  *See* Rec. Doc. 21239, at 5-7; *see also* Rec. Doc. 21212-1, at 2 (KCM offers three possible amounts that the Court could award as interim fees).

further chaos and confusion.[9]   Finally, the Objectors, much like KCM, fail to articulate any prejudice to counsel in delaying disbursement of attorneys' fees until after a final fee award has been issued.[10]   These reasons require no additional explanation and weigh heavily in favor of denying the Disbursement Motion.

As an added twist to these fee proceedings, by opposing KCM's Interim Disbursement Motion ("Objectors' Opposition") and filing their own, modified Disbursement Motion, the Objectors go well beyond a mere request for an interim disbursement of attorneys' fees and offer reasons that illustrate further why their Disbursement Motion should be denied.   Remarkably, the Objectors oppose KCM's Interim Disbursement Motion because it attempts to be flexible and preserve the "rights of *all* individually retained counsel to the disputed portions of the attorneys' fees."[11]   Their motives in doing so are now transparent.   These Objectors argue that their efforts in turning the fee allocation process into a full-blown second litigation – which the Court determined was useless and caused unnecessary delay – nevertheless should be viewed favorably as having created a larger fund of fees available to individually-retained counsel.   This suggestion attempts to compare what the Objectors did here to a situation where a common fund is created for the benefit of claimants in a class action or MDL.[12]   Objectors believe they are entitled to take more from the "increased fund" they allegedly "created" at the expense of individually-retained counsel who either (1) chose not to object, or (2) objected but are not part of the "Primary Counsel" group

---

[9] *Id.*, at 5-7.

[10] Rec. Doc. 21239, at 7-8.

[11] Rec. Doc. 21241, at 3 (emphasis in original).

[12] *See id.* (arguing that treating all individually-retained counsel the same is "directly contrary to the basic premise underlying the common benefit doctrine").

who have abusively blown up the fee proceedings.  Objectors' argument not only misunderstands the process that took place for setting the common benefit fee but also portends a battle over the allocation of fees among individually-retained counsel.  This new suggestion perverts the entire process by punishing the individually-retained counsel who chose not to create a second litigation over the award of attorneys' fees.

Based upon all of the foregoing, the Disbursement Motion should be denied.

## II.    DISCUSSION

### A.    The Objectors, Who Engaged in Overaggressive and Obstreperous Conduct, Should Not Be Credited for the Amount of Fees Allocated to Individually-Retained Counsel.

Objectors claim that the fees allocated to individually retained counsel were the result of "the extensive work of and expense borne by Objecting Counsel."[13]  This argument, however, flies in the face of what transpired in these proceedings.  The fee allocation was the result of the Court's independent judgment based upon a number of inputs including, but not limited to, the input of all counsel who sought to be heard.[14]  The Objectors' conduct designed to make the process more contentious and prolix was noted by the Court as unnecessary (*i.e.*, "contract counsel 'over played' their hand"), not as the impetus for the Court's fee determination.[15]  In fact, there is every reason to believe that the Court reached the allocation determination it did *in spite of* the Objectors' efforts, not because of them.

---

[13] *See id.*, at 3.

[14] *See* Rec. Doc. 21168, at 5-7.

[15] *See id.*, at 23.

In its Common Benefit Fess Order, the Court explained the process for determining the common benefit fee which included attorney input in the form of the Court-appointed Fee Committee's proposal and the opportunity to object to that proposal by all counsel.[16]   Those objecting counsel were given an opportunity to be heard by the Special Master, who afforded the parties due process, heard the objections and then made his own recommendation for an allocation between individually retained attorneys and common benefit counsel.[17]   The Court then made its own independent determination of an appropriate common benefit fee based upon the recommendations of the Fee Committee, the responses or objections from other interested counsel, the Special Master's recommendation, and the Court's review of the records kept by the Court-appointed CPA with respect to time and expenses.[18]   In doing so, the Court walked through an extensive analysis of the *Johnson*[19] factors to make its final common benefit fee determination.[20]

Nowhere in the Court's lengthy analysis is the suggestion that the allocation determination was swayed by any efforts put forth by any counsel to influence the process beyond merely submitting a recommendation (as was done by the Fee Committee) or filing objections or responses to that recommendation (as was done by 23 sets of objecting counsel).

---

[16] *See id.*, at 5.

[17] *See id.*, at 6.

[18] *See id.*

[19] *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974).

[20] Rec. Doc. 21168, at 9-19.

In the final analysis, the efforts by the Objectors were seen for what they were – wasteful.[21] Now, they are attempting to use these abusive efforts as the basis for arguing they are entitled to a share of the individually-retained counsel fees that goes beyond their *pro rata* share.

**B.      Primary Counsel's Contention that They Should Be Awarded Fees Greater than Their *Pro Rata* Share of Individually-Retained Counsel's Fees Should Be Rejected.**

Claiming to have created a larger fee award for individually retained counsel, Primary Counsel ask the Court to allow those individually retained counsel who are content with the Court's Common Benefit Fees Order to accept their current *pro rata* share as "full and final payment" for the services they rendered for their clients.[22]  In the Objectors' view, by eliminating those who are content with the award, the Objectors can then get more than their *pro rata* share of the fee if they prevail on their appeal of the Court's ruling.   In other words, they should be incentivized to "roll the dice" and gamble on a frivolous appeal in the hopes that they can turn their *pro rata* share of the fees into a windfall.[23]

This gamble portends a more complicated issue as to the allocation of individually retained counsel's fees.  To this point, it was presumed that those fees would be allocated on a *pro rata* basis but Primary Counsel's position here suggests that they believe they are entitled to greater than a *pro rata* share.  It is unclear what, in Primary Counsel's view, should happen to individually retained counsel who do not elect to get a *pro rata* distribution as full and final

---

[21] *See id.*, at 23.

[22] *See* Rec. Doc. 21240-1, at 1, 3; *see also* Rec. Doc. 21241, at 4.

[23] Objectors' position makes no accommodation for the possibility that individually-retained counsel's share of the global fee award could be reduced on appeal (it is unclear if Primary Counsel will accept less that their *pro rata* share in such a circumstance or if they intend on requiring individual counsel who received their distribution to return funds if an appeal results in a reduction of fees).

payment but who also do not participate in the frivolous appeal. The natural corollary to the arguments put forth by Objectors – primarily that individually retained counsel who are not participating in the fee dispute should not be allowed to benefit from any increase in the fees that results from the dispute[24] – is that they will eventually seek a share of the individually retained counsel's fees that exceeds their *pro rata* share. This adds yet another layer to the fee dispute and further complicates matters (unfairly), which weighs in favor of refraining from an interim distribution until all issues can be heard on appeal.

### III.   <u>CONCLUSION</u>

For the foregoing reasons, Lead and Liaison Counsel respectfully request that Primary Counsel's Disbursement Motion be denied.

Respectfully submitted,

Dated: March 19, 2018          /s/ Russ M. Herman_____
                               Russ M. Herman, Esquire (Bar No. 6819) (on the brief)
                               Leonard A. Davis, Esquire (Bar No. 14190) (on the brief)
                               Stephen J. Herman, Esquire (Bar No. 23129)
                               HERMAN, HERMAN & KATZ, L.L.C.
                               820 O'Keefe Avenue
                               New Orleans, LA 70113
                               Phone: (504) 581-4892
                               Fax: (504) 561-6024
                               RHerman@hhklawfirm.com
                               *Plaintiffs' Liaison Counsel MDL 2047*

---

[24] Rec. Doc. 21241, at 3-4.

Arnold Levin (on the brief)
Fred S. Longer (on the brief)
Sandra L. Duggan (on the brief)
Keith J. Verrier (on the brief)
LEVIN SEDRAN & BERMAN LLP
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone:  (215) 592-1500
Fax:  (215) 592-4663
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel MDL 2047*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 19th day of March, 2018.

/s/ Leonard A. Davis
Leonard A. Davis, Esquire
Herman, Herman & Katz, L.L.C.
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com
Plaintiffs' Liaison Counsel MDL 2047
*Co-counsel for Plaintiffs*