**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

IN RE: CHINESE-MANUFACTURED
DRYWALL PRODUCTS LIABILITY
LITIGATION                                          MDL NO. 2047

                                                    SECTION: L

                                                    JUDGE FALLON
                                                    MAG. JUDGE WILKINSON

THIS DOCUMENT RELATES TO:
*ALL CASES*
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFFS' LEAD AND LIAISON COUNSEL'S MEMORANDUM OF LAW IN**
**OPPOSITION TO PRIMARY COUNSEL'S MOTION FOR CERTIFICATION OF**
**ORDER FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b), OR IN**
**THE ALTERNATIVE ENTRY OF FINAL JUDGMENT UNDER RULE 54(b)**

## **TABLE OF CONTENTS**

Table of Authorities ...........................................................................................................ii

I.      INTRODUCTION .............................................................................................1

II.     RELEVANT FACTUAL AND PROCEURAL HISTORY ....................................12

III.    ARGUMENT ....................................................................................................16

      A.  There Are No Special Circumstances Warranting Certification of
          the Common Benefit Fees Order for Immediate Appeal Under 28
          U.S.C. § 1292(b) ...........................................................................................16

            1.  The Court's Authority to (1) Award Common Benefit Fees
               to Plaintiffs' Leadership Committee and (2) Reduce
               Contractual Contingency Fees Are Not Controlling
               Questions of Law as to Which There Is Substantial Ground
               for Difference of Opinion ...................................................................20

            2.  Immediate Appeal of the Common Benefit Fees Order Will
               Delay, Not Materially Advance, the Ultimate Termination
               of the Litigation...................................................................................28

      B.  Certification of the Common Benefit Fees Order as a Final Order
          Under Rule 54(b) Is Inappropriate ................................................................30

IV.     CONCLUSION.................................................................................................34

i

# TABLE OF AUTHORITIES

## Cases

*Baltimore Contractors, Inc. v. Bodinger,*
  348 U.S. 176 (1955) ........................................................................................ 16

*Baranski v. Serhant,*
  602 F. Supp. 33 (N.D. Ill. 1985) ................................................................... 30

*Boatright ex rel. Boatright v. R.J. Cormon R.R. Co./Material Sales,*
  244 Fed. App'x 312 (11th Cir. 2007) ............................................................ 28

*Boykin v. McCoy,*
  384 Fed. App'x 579 (9th Cir. 2010) ............................................................. 27

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County,*
  137 S. Ct. 1773 (2017) .................................................................................. 23

*Brooks v. Farm Fresh, Inc.,*
  759 F. Supp. 1185 (E.D. Va. 1991) .......................................................... 18, 22

*Calpetco 1981 v. Marshall Exploration, Inc.,*
  989 F.2d 1408 (5th Cir. 1993) ....................................................................... 32

*Cardona v. General Motors Corp.,*
  939 F. Supp. 351 (D.N.J. 1996) .................................................................... 16

*Castrillo v. Am. Home Mortgage Servicing, Inc.,*
  No. 09-cv-4369, 2010 WL 1424398 (E.D. La. Apr. 5, 2010) ....................... 31

*Cent. R.R. & Banking Co. of Ga. v. Pettus,*
  113 U.S. 116 (1885) ....................................................................................... 23

*Consumer Fin. Prot. Bureau v. Frederick J. Hanna & Assoc., P.C.,*
  165 F. Supp. 3d 1330 (N.D. Ga. 2015) .................................................... 18, 19

*Coopers & Lybrand v. Livesay,*
  437 U.S. 463 (1978) .................................................................................. 18, 33

*David v. Signal Intern., LLC,*
  37 F. Supp. 3d 836 (E.D. La. 2014) ......................................................... 16, 28

*Diet Drugs,*
  2001 WL 497313 (E.D. Pa. May 9, 2001) ............................................... 25, 26

*Eldredge v. Martin Marietta Corp.,*
  207 F.3d 737 (5th Cir. 2000) .................................................................... 31, 33

*Fannin v. CSX Transp., Inc.,*
  No. 88-8120, 1989 WL 42583 (4th Cir. 1989) ....................................... 18, 22

*Firestone Tire & Rubber Co. v. Risjord,*
  449 U.S. 368 (1981) ....................................................................................... 33

*General Electric Company v. Mitsubishi Heavy Industries, Ltd.,*
  No. 10-cv-0276, 2012 WL 12985134 (N.D. Tex. Feb. 7, 2012) .................... 17

*Georgia State Conf. of the NAACP v. Fayette Cty. Bd. of Commissioners*,
  952 F. Supp. 2d 1360 (N.D. Ga. 2013) ................................................................... 19
*Green v. Nevers*,
  111 F.3d 1295 (6th Cir. 1997) .............................................................................. 27
*Harch Hyperbarics, Inc. v. Martinucci*, No. Civ. A.,
  09-7467, 2010 WL 4665923 (E.D. La. Nov. 9, 2010) .......................................... 20
*Hastings v. Maine-Endwell Cent. Sch. Dist.*,
  676 F.2d 893 (2d Cir. 1982) ................................................................................. 32
*Henderson v. GATX Corp.*,
  2012 WL 1191141 (M.D. Fla. Apr. 10, 2012) ..................................................... 16
*Hoffert v. General Motors Corp.*,
  656 F.2d 161 (5th Cir. 1981) ................................................................................ 27
*In re A.H. Robins Co., Inc.*,
  86 F.3d 364 (4th Cir. 1996) .................................................................................. 27
*In re Air Crash Disaster at Fla. Everglades on Dec. 29,*
  *1972*, 549 F.2d 1006 (5th Cir. 1977) .............................................. 22, 24, 25, 26
*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
  2013 WL 499474 (E.D. La. Feb. 7, 2013) ................................................ 5, 6, 13
*In re Clearsky Shipping Corp.*,
  2003 WL 1563820 (E.D. La. Feb. 26, 2003) ....................................................... 25
*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenflurammine) Prod. Liab. Litig.*,
  401 F.3d 143 (3d Cir. 2005) ...................................................................... 7, 9, 33
*In re Diet Drugs Prods. Liab. Litig.*,
  582 F.3d 524 (3d Cir. 2009) ................................................................................. 22
*In re Diet Drugs Prods. Liab. Litig.*,
  MDL 1203, 2002 WL 32154197 (E.D. Pa. Oct. 3, 2002) ..................................... 24
*In re Ford Motor Co.*,
  110 F.3d 954 (3d Cir. 1997) ................................................................................. 31
*In re Goldstein*,
  430 F.3d 106 (2d Cir. 2005) ................................................................................. 27
*In re Genetically Modified Rice Litig.*, MDL 1811, 2010 WL 716190
  (E.D. Mo. Feb. 24, 2010), *aff'd*, 764 F.3d 864 (8th Cir. 2014), *cert. denied*,
  135 S. Ct. 1455 (2015) ........................................................................................ 24
*In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*,
  No. 05-md-1708, 2008 WL 682174 (D. Minn. Mar. 7, 2008) ............................... 26
*In re Linerboard Antitrust Litig.*,
  292 F. Supp. 2d 644 (E.D. Pa. 2003) ................................................................... 24
*In re MGM Grand Hotel Fire Litig.*,
  660 F. Supp. 522 (D. Nev. 1987) .................................................................. 25, 26
*In re Nineteen Appeals*,
  982 F.2d 603 (1st Cir. 1992) ......................................................................... 25, 33

*In re Oil Spill by the Oil Rig DEEPWATER HORIZON in the Gulf of Mexico,*
  *on Apr. 20, 2010*, Nos. 12-cv-968, 12-cv-970, 2012 WL 2236737
  (E.D. La. June 15, 2012) ................................................................................ 26
*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
  No. MDL 1014, 1998 WL 118060 (E.D. Pa. Jan. 12, 1998)............................. 25, 26
*In re Protegen Sling and Vesica Sys. Prods. Liab. Litig.*,
  MDL No. 1387, 2002 WL 31834446 (D. Md. Apr. 12, 2002)........................... 25, 26
*In re Scientific-Atlanta, Inc. Sec. Litig.*,
  No. 01–cv–1950, 2003 WL 25740734 (N.D. Ga. Apr. 15, 2003).......................... 19
*In re Vioxx Prod. Liab. Litig.*,
  650 F. Supp. 2d 549 (E.D. La. 2009) ................................................................ 26
*In re Vioxx Prod. Liab. Litig.*,
  802 F. Supp. 2d 740 (E.D. La. 2011) ................................................................ 6, 7
*In re Vioxx Prods. Liab. Litig.*,
  760 F. Supp. 2d 640 (E.D. La. 2010) ................................................................ 25
*In re Zyprexa Prods. Liab. Litig.*,
  424 F. Supp. 2d 488 (E.D.N.Y. 2006)............................................................... 26
*In re: High-Sulfur Content Gasoline Prods. Liab. Litig.*,
  517 F.3d 220 (5th Cir. 2008)................................................................... 6, 9, 25
*Internal Imp. Fund Trs. v. Greenough*,
  105 U.S. 527 (1881) ...................................................................................... 23
*Karim v. Finch Shipping Co., Ltd.*,
  233 F. Supp. 2d 807 (E.D. La. 2002), *aff'd*, 374 F.3d 302 (5th Cir. 2004)............................. 27
*Law v. Nat'l Collegiate Athletic Ass'n*,
  4 Fed. App'x 749 (10th Cir. 2001)................................................................... 28
*Law v. Nat'l Collegiate Athletic Ass'n*,
  134 F.3d 1025 (10th Cir. 1998)....................................................................... 32
*Little Rock Sch. Dist. v. Pulaski Cty. Special Sch. Dist. No. 1*,
  921 F.2d 1371 (8th Cir. 1990)........................................................................ 27
*Long Island Lighting Co. v. Transamerica Delaval, Inc.*,
  648 F. Supp. 988 (S.D.N.Y. 1986) .................................................................. 29
*Mares v. Credit Bureau of Raton*,
  801 F.2d 1197 (10th Cir. 1986)...................................................................... 28
*Matthews v. Stolier*,
  No. 13-cv-6638, 2016 WL 9447195 (E.D. La. July 19, 2016) .............................. 28
*McFarlin v. Conseco Serv., LLC*,
  381 F.3d 1251 (11th Cir. 2004)................................................................... 18, 19
*Mitzel v. Westinghouse Elec. Corp.*,
  72 F.3d 414 (3d Cir. 1995)............................................................................. 27
*Monroe v. Cessna Aircraft Co.*,
  No. 05-cv-0250, 2006 WL 1305116 (E.D. Tex. May 9, 2006)............................... 29

*People Who Care v. Rockford Bd. of Educ., Dist. No.*,
    25, 921 F.2d 132 (7th Cir. 1991) ............................................................ 17

*Petties v. Dist. of Columbia*,
    227 F.3d 469 (D.C. Cir. 2000) ............................................................... 18

*Pigford v. Veneman*,
    369 F.3d 545 (D.C. Cir. 2004) ............................................................... 17

*PYCA Indus. v. Harrison County Waste Water Management Dist.*,
    81 F.3d 1412 (5th Cir. 1996) ................................................... 31, 32, 33

*Rezulin Prods. Liab. Litig.*, No. 00-cv-2843,
    2002 WL 441342 (S.D.N.Y. Mar. 20, 2002) ..................................... 25, 26

*Rosenfeld v. United States*,
    859 F.2d 717 (9th Cir. 1988) ................................................................ 32

*Rosquist v. Soo Line R.R.*,
    692 F.2d 1107 (7th Cir. 1982) ............................................................... 27

*Roussell v. Brinker Int'l, Inc.*,
    No. 05-cv-3733, 2009 WL 595978 (S.D. Tex. Mar. 6, 2009) ................. 28

*Ryan v. Flowserve Corp.*,
    444 F. Supp. 2d 718 (N.D. Tex. 2006) .................................................. 19

*S. Travel Club, Inc. v. Carnival Air Lines, Inc.*,
    986 F.2d 125 (5th Cir. 1993) ................................................................ 33

*Sahyers v. Prugh, Holliday & Karatinos, P.L.*,
    603 F.3d 888 (11th Cir. 2010) .............................................................. 28

*Saizon v. Delta Concrete Prod. Co.*,
    448 F.3d 795 (5th Cir. 2006) .................................................................. 9

*SEC v. Credit Bancorp, Ltd.*,
    103 F. Supp. 2d 223 (S.D.N.Y. 2000) ................................................... 20

*Shipes v. Trinity Indus., Inc.*,
    883 F.2d 339 (5th Cir. 1989) .......................................................... 32, 33

*Smiley v. Sincoff*,
    958 F.2d 498 (2d Cir. 1992) ................................................................. 24

*Speizman Knitting Mach. Co. v. Terrot Strickmaschinen GmBH*,
    505 F. Supp. 200 (D.N.C. 1981) ..................................................... 18, 22

*Switzerland Cheese Association, Inc. v. Horne's Market, Inc.*,
    385 U.S. 23 (1966) ............................................................................... 16

*Tidewater Oil Co. v. United States*,
    409 U.S. 151 (1972) ............................................................................. 17

*Turner v. Murphy Oil USA, Inc.*,
    472 F. Supp. 2d 830 (E.D. La. 2007) ............................................. 21, 23

*United States v. Antiques Ltd. P'ship*,
    760 F.3d 668 (7th Cir. 2014) ................................................................ 32

*United States v. Bertoli*,
  994 F.2d 1002 (3d Cir. 1993) ................................................................. 31
*United States v. Hollywood Motor Car Co.*,
  458 U.S. 263 (1982) ............................................................................. 16
*United States v. Overseas Shipholding Grp., Inc.*,
  625 F.3d 1 (1st Cir. 2010) ..................................................................... 27

## Statutes

28 U.S.C. §1407(a) ................................................................................. 24
28 U.S.C. § 1291 ......................................................................... 16, 32, 33
28 U.S.C. § 1292(a) ............................................................................... 16
28 U.S.C. § 1292(b) ....................................................................... passim

## Rules

Federal Rule of Civil Procedure 23(h) ................................................. 22, 24
Federal Rule of Civil Procedure 54(b) ...................................... 30, 31, 32, 33
Federal Rule of Civil Procedure 23 ...................................................... 23, 24

## Other Authorities

4 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS §13:76
  (4th ed. 2002) ................................................................................. 21, 23
10 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE &
  PROCEDURE, § 3909 (1976) ..................................................................... 33
16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE AND
  PROCEDURE § 3930 (2d ed. 1996) ................................................... 17, 20, 30
18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE &
  PROCEDURE, § 4478.1 (2d ed. 2002) ........................................................ 32
Eldon E. Fallon, *Common Benefit Fees in Multidistrict Litigation*,
  74 LA. L. REV. 371 (2014) ..................................................... 2, 21, 22, 23
*The Quasi-Class Action Method of Managing Multi-District Litigation*,
  63 VAND. L. REV. 107 (2010) ................................................................ 21

## I.    <u>INTRODUCTION</u>

From the inception of the MDL and the appointment of the Plaintiffs' Steering

Committee ("PSC") in 2009, this Court has overseen and closely supervised these proceedings

on behalf of thousands of homeowners, commercial property owners, and tenants who incurred

damages from defective Chinese Drywall.  The MDL is now in its ninth year and there are

21,245 entries on the docket.  During the lifespan of this case, the Court has held 98 monthly

status conferences,[1] numerous evidentiary hearings, several bellwether trials, hearings on a

myriad of dispositive motions, and multiple settlement fairness hearings.[2]  In addition, the Court

has entered more than 30 pretrial orders (many with multiple subparts) and scores of minute

entries and other decisions adjudicating disputes among the parties.  Further, as part of an

integrated approach to governance over this MDL, the Court has coordinated its efforts and

consulted with state court jurists handling Chinese Drywall cases in Florida, Virginia, and

elsewhere.  It is well-documented that from the outset, the Court has carefully and meticulously

managed this litigation and the common benefit efforts of the Court-appointed Plaintiffs'

leadership committee.

For example, since July, 2009, the Court has required all counsel seeking an award of

common benefit fees to submit detailed time and expense records on a monthly basis to the

---

[1] *See* Rec. Doc. 21245 (Joint Report No. 98).

[2] *See*, *generally*, Declaration of Plaintiffs' Liaison Counsel Russ M. Herman and Plaintiffs' Lead Counsel Arnold Levin, dated 5/14/2014 ("2014 Herman-Levin Decl.") & Exhibits 6-9, 11-13, 15-19 in Support of Joint Global Fee Petition [Rec. Docs. 17700-2, 17700-8, 17700-9, 17700-10, 17700-11, 17700-13, 17700-14, 17700-15, 17700-17, 17700-18, 17700-19, 17700-20, 17700-21]; Exhibits 1-6 in Support of Supplemental Declaration of Russ M. Herman and Arnold Levin dated 5/8/2017 ("2017 Herman-Levin Decl.") [Special Master Fee Record to be filed on MDL Docket]; MDL 2047 Docket.

Court-appointed CPA Philip A. Garrett.[3]  Then, every month for the past eight-plus years, the

Court has met with Mr. Garrett and Plaintiffs' Liaison Counsel and/or Lead Counsel to vet

detailed reports of the hours and expenses submitted by more than 500 timekeepers pursuant to

PTO 9.[4]  Throughout the litigation, the Court has had access to the underlying common benefit

time entries and documentation for the expenses at issue.[5]  All counsel participating in this MDL

were put on notice early on that the Court would employ this process for managing the

proceedings.[6]  No one objected.

---

[3] *See*, *generally*, Pretrial Order No. 9 ("PTO 9") [Rec. Doc. 147]; Pretrial Order No. 9A (applying to counsel handling common benefit work in State Court Chinese Drywall proceedings) [Rec. Doc. 12961]; Transcript of Status Conference Proceedings dated 7/9/2009 (attached hereto as Exhibit "A"), at 22:16-28:24 (advising counsel of time billing guidelines to be set by Court).

[4] Exhibit "A" (7/9/2009 Status Conf. Tr.) at 7:9-17 (the Court: "In this particular matter I will in addition to the meetings of open court, this type meeting at which I will hear reports and make some decisions on where we go for the next meeting, what we do for the next meeting, I'll be meeting with the committees, liaison counsel, and whoever else I need to meet with in-between that period of time."); Transcript of Status Conference Proceedings dated 3/22/2012 (attached hereto as Exhibit "B"), at 4:16-20 (in open court) (The Court: "I … meet with the CPA every month, he gives me a preliminary account of who has submitted their time records and their costs and things of that nature.  I review them to see whether or not anything stands out that is of concern, and then I file those under seal and we proceed accordingly."); Deposition of Philip A. Garrett dated 12/14/2016 ("Garrett Dep.") [Special Master Fee Record], at 15:20-25 ("I was to meet with the judge every month with reports, giving him a summary of what time has been put in, a summary of what held costs had been done, and a summary of what overall shared costs had been going on, and go over that with him with any questions he had.").  *See*, *generally*, Eldon E. Fallon, *Common Benefit Fees in Multidistrict Litigation*, 74 LA. L. REV. 371, 382 (2014) ("*Common Benefit Fees*") ("To create a record of the type of work performed as well as the costs expended by the attorneys performing common benefit work it is also helpful for the transferee court, at an early stage in the litigation, to appoint a CPA to receive and vet records periodically submitted by counsel. . . . These reports are reviewed by the CPA and the court on a regular basis during the course of the litigation for compliance with the court's guidelines for recoverable costs and fees and the reasonableness of the hours reported.").

[5] Garrett Dep. at 305:7-12.

[6] *See* footnote 4, *supra*.

2

Under the Court's direct supervision, the PSC successfully brought into the MDL the foreign Knauf and Taishan Chinese Drywall manufacturers as well as many hundreds of exporters, importers, distributors, suppliers, builders, installers, and insurers in the Knauf and Taishan Chinese Drywall supply chains.  In total, the PSC named 1,651 Defendants.[7]  The PSC created unique "Omnibus" actions that made it possible for thousands of individual Chinese Drywall Plaintiffs to be named as class representatives on a single complaint that the PSC then served on the foreign Defendants pursuant to the prolix process prescribed by the Hague Convention.[8]  This efficient and cost-effective vehicle saved individual property owners and their contract attorneys hundreds of thousands of dollars in service costs and countless hours required to translate complaints and otherwise meet the requirements of the Hague, especially in China.[9]

Following a lengthy and in-depth investigation by the PSC into the sources, supply chains, and damaging effects of Chinese Drywall, the preparation of detailed jurisdictional and substantive discovery requests, the completion of more than 200 common benefit depositions in the U.S. and abroad, the exchange of more than 1 million pages of documents and scores of expert reports, the issuance of dozens of FOIA requests, several successful bellwether trials establishing a comprehensive remediation protocol,[10] and the implementation of a remediation

---

[7] 2014 Herman-Levin Decl., Exhibit 2 [Rec. Doc. 17700-4].

[8] 2017 Herman-Levin Decl., ¶¶ 5-8 & Exhibits 7-9 thereto; Deposition of Arnold Levin dated 1/26/2017 ("Levin Dep.") [Special Master Fee Record], at 139:10-140:18; 380:12-381:23 & Exhibits 17, 18 thereto.

[9] *See* Affidavit of Ann Mickow dated 1/11/2016 (attached hereto as Exhibit "C"), at ¶ 3.

[10] *See* Consolidated Joint Petition of the Fee Committee and the Plaintiffs' Steering Committee for a Global Award of Attorneys' Fees and Reimbursement of Expenses (with Exhibits) ("Global Fee Petition") [Rec. Doc. 17700]; Fee Committee's Motion to Determine the Allocation of the Global Fee

3

pilot program with the Knauf Defendants, the PSC was able to negotiate and finalize nine

interrelated class action settlement agreements with the Knauf entities, Banner, InEx, L&W, and

hundreds of Builders, Installers, and Suppliers, and their Insurers.[11]  The Knauf settlement

provided complete remediation benefits to Plaintiffs with KPT Chinese Drywall installed in their

properties.  In addition, significant cash benefits were made available for other losses sustained

by Plaintiffs (*e.g.*, alternative living expenses, short sales and foreclosures, loss of use and

enjoyment, lost rent, personal property damage, and bodily injury).  Through these class

settlements, the PSC delivered over $1.1 billion in remediation and cash settlement benefits to

class members who chose to participate therein.[12]

A significant benefit of the PSC-negotiated settlements was the creation of a fund for

attorneys' fees intended to compensate <u>both</u> common benefit counsel and individually retained

contract attorneys representing Plaintiffs.  In the Knauf settlement, for example, the Knauf

entities paid in excess of $173 million for attorneys' fees, in addition to providing complete

remediation benefits for KPT owners and substantial cash benefits for other losses sustained by

Plaintiffs with KPT and other Chinese Drywall in their homes.  The Knauf settlement specified

that: "the Knauf Defendants shall pay a singular attorneys' fee (to be allocated among the PSC

and common benefit counsel authorized and working at the direction of the PSC, other common

---

Award As Between Common Benefit Fees and Individual Counsel's Fees Pursuant to PTO 28(F) (with Exhibits) ("Allocation Motion") [Rec. Doc. 20290].

[11] *See* Rec. Doc. 16570 (final approval and class certification order for Knauf, Global, Banner, InEx, and L&W settlements, dated 2/7/2013); Rec. Doc. 16934 (final approval and class certification order for four Virginia settlements, dated 7/9/2013).

[12] Allocation Motion, at 36-49 & Exhibit B thereto; Rec. Doc. 21168 at 17.

4

benefit counsel, Settlement Class Counsel and individual retained counsel)."[13]  The separate payment of attorneys' fees by the settling Defendants allowed KPT property owners to have their homes completely remediated without having to pay counsel fees out of their own pockets.[14]  This enabled homeowners to return to their properties free of all damage caused by Chinese Drywall.  No counsel ever complained about the limitations imposed on the magnitude of the attorneys' fees fund or the fact that common benefit counsel would be paid from that fund, despite being provided an opportunity to object to the fee provisions of the settlements during the fairness approval process.

For their tireless efforts on behalf of all Chinese Drywall Plaintiffs who benefitted from the class settlements, on January 31, 2018, this Court issued its Order and Reasons Setting Common Benefit Fees.[15]  This Order determined the appropriate division of available funds for attorneys' fees as between common benefit counsel (52%) and individual contract attorneys (48%).  The Court had before it a voluminous record:  "(1) the recommendations of the [Court-appointed Fee Committee]; (2) the responses or objections from objectors and other interested counsel; (3) the recommendations of the special master; and (4) the [Court-appointed] CPA's

---

[13] Knauf Settlement Agreement, § 14.1 [Rec. Doc. 16407-3].  Similarly, the Global Settlement Agreement (§ 16.6), Banner Settlement Agreement (§ 14.7), and InEx Settlement Agreement (§ 16.7) provided that "the PSC, Class Counsel (but not Co-Class Counsel), common benefit attorneys, and privately retained attorneys for all Class Members (the "Petitioning Attorneys") shall be entitled to petition the Court for attorneys' fees up to 32% of the Settlement Funds and reimbursement of reasonable expenses, including the cost of notice."  [Rec. Doc. 10033-3; Rec. Doc. 12258-3; Rec. Doc. 15695-2, respectively].

[14] *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2013 WL 499474, *4 (E.D. La. Feb. 7, 2013) ("The Knauf Settlement further provides for a separate fund for attorney fees, thus ensuring that any attorney fees approved by this Court will not diminish any plaintiff's recovery or cause a structure to receive only partial remediation.").

[15] Rec. Doc. 21168 ("Common Benefit Fees Order").

summary of the total time and work performed and costs expended by each attorney who followed the Court's directive and contemporaneously reported the common benefit work performed and cost incurred."[16]

In accordance with its responsibilities under governing class action and MDL fee jurisprudence, the Court conducted an independent and detailed examination of all evidence supporting the petition for common benefit fees, as well as all objections thereto, and then engaged in an analysis of each of the *Johnson* factors.  Previously, in its denial of certain Fee Objectors' motion to disqualify the Fee Committee, the Court acknowledged its duty to "consider all the evidence anew" "[i]n formulating its ruling on the fee allocation issue."[17]  The Court expressly recognized that "[o]nly after considering all this evidence w[ould] the Court be prepared to issue a ruling on the fee allocation issue."[18]  Importantly, the Court agreed with the Fee Objectors that:

> [T]he Court must conform to "traditional judicial standards of transparency, impartiality, procedural fairness, and ultimate judicial oversight" in allocating attorney fees.  [*In re: High-Sulfur Content Gasoline Prods. Liab. Litig.,* 517 F.3d 220, 234 (5th Cir. 2008)].  That requires creating a sufficient record, making sufficient factual findings, considering the time worked and the *Johnson* factors, providing an opportunity to be heard to all applicants, and exercising independent judgment in allocating those fees rather than simply rubber-stamping a committee recommendation.  As in previous MDLs, the Court has relied on these principles when formulating the process for determining fees in this litigation.  *See*, *e.g.*, *In re Vioxx Prod. Liab. Litig.*, 802 F. Supp. 2d 740, 772 (E.D. La. 2011).[19]

---

[16] Common Benefit Fees Order at 6.

[17] *See* Order and Reasons Denying Motion to Disqualify the Fee Committee [Rec. Doc. 20789] at 4-5.

[18] *Id.*

[19] *Id.*

This Court made clear that it would not "view the Fee Committee's recommendation as more significant, or accord it more weight, than the position of contract counsel during the final determination of the fee award."[20]  On the contrary, "[t]he Fee Committee's recommendation, the Special Master's impartial report and recommendation, and the objections from contract attorneys will all be equally evaluated when allocating the global fee award between common benefit and contract counsel."[21]

Under governing fee jurisprudence, the Court determined that the 52-48% split of funds is reasonable regardless of whether the lodestar method, the percentage method, or the blended method (combining the percentage method with a lodestar cross-check) is utilized.  The Common Benefit Fees Order is not a final order, as Objectors readily concede.[22]  The ruling on this fee split constitutes Step Five of a multi-step process established by the Court four years ago in Pretrial Order No. 28 ("PTO 28") for the award of common benefit fees and reimbursement of expenses related to the Knauf and other class settlements.[23]  At this point, the only step remaining in the lengthy fee award process is the determination of an allocation of common benefit fees among the common benefit fee applicants, including PSC members and those attorneys working under their direction (Step Six).  However, rather than await the outcome of

_____

[20] *Id.*

[21] *Id.*

[22] *See In re Diet Drugs (Phentermine/Fenfluramine/Dexfenflurammine) Prod. Liab. Litig.*, 401 F.3d 143, 158 (3d Cir. 2005).

[23] *See* PTO 28 [Rec. Doc. 17379]; PTO 28(A) [Rec. Doc. 17402]; PTO 28(B) [Rec. Doc. 17567]; PTO 28(C) [Rec. Doc. 17639]; PTO 28(D) [Rec. Doc. 17832]; PTO 28(E) [Rec. Doc. 18037]; PTO 28(F) [Rec. Doc. 20282].

Step Six and a final judgment of the Court regarding both common benefit and individual contract fees (which should occur this calendar year), a small group of Fee Objectors, consisting of both common benefit counsel and individual contract attorneys and one PSC member,[24] have filed a motion to certify the Common Benefit Fees Order for immediate appeal.[25]  In the alternative, these Fee Objectors have asked for the entry of a final order pursuant to Rule 54(b).

In seeking interlocutory appeal of the Common Benefit Fees Order, these Objectors have challenged everything fee-related, going as far back in time as when common benefit hours and expenses were first submitted to the Court-appointed CPA in 2009 and when the negotiations of the KPT Pilot Program and the class settlements occurred beginning in 2010.  Meanwhile, none of the Objectors previously contested the process set forth in PTO 9 for recording and monitoring the efforts of common benefit counsel.  Nor did they object to the Knauf settlement that provided complete remediation benefits for KPT owners in addition to a separate fund for attorneys' fees so that the Plaintiffs could move back into their homes free of Chinese Drywall without having to pay counsel fees.  Similarly, the Objectors did not protest the comprehensive procedures and guidelines set forth in PTO 28 for the award of common benefit fees.  But now, they raise a panoply of "important" fee-related issues they claim merit immediate review by an

---

[24] Originally, the group of Fee Objectors consisted of 23 firms, however, the only remaining objecting firms seeking 1292(b) certification of the Common Benefit Fees Order are:  Baron & Budd, PC; Allison Grant, PA; Alters Law Firm, PA; Parker Waichman, LLP; Gentle, Turner, Sexton & Harbison, LLC; McCallum, Hoaglund, Cook & Irby, LLP; Pendley Baudin & Coffin; Rhine Law Firm; and Luckey & Mullins.  All of these attorneys except for Messrs. Sexton and Hoaglund are common benefit fee applicants and Mr. Parker is a PSC member, who voted in favor of all class settlements approved by the Court, including the provisions in the settlement agreements addressing attorneys' fees.

[25] Rec. Doc. 21216 ("1292(b) motion").

appellate court.  None of these issues, however, is a controlling question of law for which there is substantial ground for difference of opinion.  For example, Primary Counsel assert that:

- the Court's decision awarding 52% of the available funds for attorneys' fees to common benefit counsel abrogates Primary Counsel's constitutionally protected right to their contingency fees[26];

- the PSC acted in its own self-interest in negotiating the class settlements that produced a limited attorneys' fees fund and by transferring monies among the different funds, effectively terminating Primary Counsel's contract rights[27];

- the Court erred by using Knauf settlement funds to compensate common benefit counsel for time expended and costs incurred in the pursuit of the non-settling Taishan Defendants[28];

- the Court erroneously relied on summaries of common benefit time records, despite Primary Counsel's repeated requests for the time sheets submitted to Mr. Garrett pursuant to PTO 9[29];

- the Court's sealing of the time records violated *Saizon v. Delta Concrete Prod. Co.*, 448 F.3d 795 (5th Cir. 2006) and *High Sulfur*, 517 F.3d at 230, and deprived the Fee Objectors of their right to effective cross-examination of Plaintiffs' leadership counsel[30];

- the common benefit fee award represents a "hefty tax" on contract counsel's right to contingency fees[31];

---

[26] Rec. Doc. 21216-1, at 6, 8.

[27] *Id.* at 10.

[28] *Id.* at 11.

[29] *Id.*

[30] *Id.* at 12.

[31] *Id.* at 13.

- "the PSC was a spendthrift when treating itself and others to an array of luxuries," but it "deprive[d] contractually retained counsel of their contract rights to recoup hundreds of thousands of dollars in expenses"[32];

- the PSC violated a fiduciary duty to Primary Counsel when it "st[oo]d in Primary Counsel's shoes purporting to negotiate the fund from which [their] attorneys' fees would be compensated as a substitute for [their] extinguished contract rights" but instead "engaged in self-dealing"[33];

- Primary Counsel was deprived of an accounting of Shared Expenses[34];

- monies were removed from the attorneys' fee fund before the Fee Committee's 2016 Allocation Motion was filed and before the Common Benefit Fees Order was entered[35];

- voluntary common benefit payments are excluded from the attorneys' fees fund despite Primary Counsel being taxed a portion of the expenses associated with the cases that contributed to those funds[36];

- the Fee Committee's evaluation of the benefits conferred on class members through the nine class settlements, which the Court accepted, include benefits that were not part of the classes' recovery and are less in actuality because the total settlement value is artificially raised[37];

- administrative costs are improperly counted as part of the benefits allegedly conferred on class members by common benefit counsel[38];

---

[32] *Id*. at 14-15.

[33] *Id*. at 16.

[34] *Id*. at 17.

[35] *Id*.

[36] *Id*.

[37] *Id*. at 18.

[38] *Id*. at 18-19.

- the PSC improperly obtained voluntary contributions from individually retained counsel who obtained private settlements and then "simultaneously attempt[ed] to take credit for Primary Counsel's work[39];

- the calculation of the benefit conferred on the class contains settlement payments for 79 properties of homeowners who did not file an Omnibus Complaint, and there is no federal jurisdiction allowing the benefit conferred on the class to be based on payments to parties not before this Court[40];

- the Common Benefit Fees Order relies on contrary findings showing that most of the work was done by non-lawyers and was allegedly administrative[41]; and

- the Fee Committee admitted it needed to segregate the North River/InEx time and expenses from the fee request, but failed to do so.[42]

Although the Objectors have self-styled this laundry list of issues as "important" and

"serious" and therefore requiring immediate appellate review, this Court's characterization of the

Fee Objectors' efforts as intent on creating "havoc and needless delay" is more apt:

> Contract counsel made an objection [to the Fee Committee's proposed 59-41 split of attorneys' fees between common benefit counsel and contract counsel, respectively], as they had a right to do. But contract counsel "over played" their hand. They filed some 23 objections, commenced *unnecessary* proceedings, and *prolonged* the discovery process by filing *unnecessary* written discovery and seeking *pointless* depositions of the Court-appointed CPA and various members of the PSC and Fee Allocation Committee. Their accomplished results: havoc and needless delay. Their actions also caused additional expense by requiring the CPA and Special Master to conduct a special hearing and perform other services. Because the Objectors prolonged this process and triggered avoidable added costs—in effect, creating a second, unnecessary litigation—the Court finds it fair and appropriate for

---

[39] *Id.* at 19.

[40] *Id.* at 21.

[41] *Id.* at 23.

[42] *Id.*

contract counsel to bear 80-percent of the CPA and Special
Master's fees associated with this dispute.[43]

Despite the large number of issues raised by the Objectors in their 1292(b) motion, they
have failed to meet the stringent requirements for piecemeal appeal.  Not only is there no
controlling question of law as to which there is substantial ground for difference of opinion, but
an immediate appeal of the interlocutory Common Benefit Fees Order would only serve to
prolong these proceedings even further without eliminating the anticipated appeal from the
forthcoming final fee order.[44]  Further, no distribution of fees can be made until all fee issues are
resolved.  For these reasons, the 1292(b) motion should be denied.

## II.   RELEVANT FACTUAL AND PROCEDURAL HISTORY

The Court's decision on the division of attorneys' fees followed more than a year of
protracted fee dispute proceedings initiated by 23 Fee Objectors constituting a small minority of
the 185 law firms impacted by the Court's ruling.  As the Court appropriately noted, these

---

[43] Common Benefit Fees Order at 23 (emphasis added) (footnotes omitted).

[44] If we have learned anything from the Fee Objectors, those with an interest in an allocation of common benefit fees will likely appeal the anticipated final ruling on their individual awards.  From the outset, the Objectors attempted to impugn the detailed and systematic fee award and allocation process established by the Court, announcing at every turn their readiness to go to the Fifth Circuit (even before receiving an order addressing the allocation of the global fee award).  A subset of the Objectors challenged the process and integrity of the leadership of the PSC with a motion to disqualify the Fee Committee [Rec. Doc. 20735].  Then, they sought mandamus review in the Fifth Circuit on the grounds that Judge Fallon did not rule on their motion quickly enough.  *In re Parker*, Petition for a Writ of Mandamus, Fifth Circuit Docket 17-30430 (5/23/2017), *pet. denied*, Document 00514006676 (5/25/2017) [Rec. Doc. 20800].  In addition, at the Evidentiary Fee Hearing, one of the Objector's attorneys stated, with respect to whether individual counsel's cost reimbursement is limited to the $1,000 stipend, "that's an issue that ultimately will be decided by the Fifth Circuit," before hastily correcting himself to say "Judge Fallon and/or the Fifth." 6/01/17 Evidentiary Fee Hearing Tr. at 162:13-15 [Special Master Fee Record].  Most recently, the Objectors have sought to have individual contract fees disbursed, while at the same time preserving their right to appeal the allocation between common benefit counsel and contract attorneys.  *See* Motion for Disbursement of Contract Counsel Fees Awarded by the Court [Rec. Doc. 21240].

Objectors "commenced unnecessary proceedings, and prolonged the discovery process by filing unnecessary written discovery and seeking pointless depositions."[45]  They, "in effect, creat[ed] a second, unnecessary litigation" seeking to maximize their allocation of available attorneys' fees.[46]

Most troubling, the positions taken by these Objectors are in conflict with the interests of their clients.  For example, certain Objectors have insisted that the PSC should have negotiated an all-cash deal rather than the Knauf remediation settlement so that they could obtain their contractual fees from the clients directly instead of from the limited fund paid by Knauf.[47] Unfortunately, this approach would have resulted in far fewer benefits for their clients, who would not have had sufficient funds to completely remediate their homes.[48]  In any event, the Objectors did not previously protest the limited attorneys' fees available from the nine class settlements at issue.  In addition to being in conflict with their Knauf clients, the Objectors are also conducting themselves in a manner antagonistic to their Taishan clients in the sense that every minute spent on these never-ending fee proceedings (*see*, *e.g.*, their recent motion for disbursement[49]), takes away valuable resources from the PSC's efforts to pursue the non-settling Taishan Defendants.

---

[45] Common Benefit Fees Order at 23.

[46] *Id.*

[47] *E.g.*, Primary Counsel's Motion to Disqualify the Fee Committee, Strike its Allocation Recommendations, and Stay or Dismiss Proceedings Before the Special Master and Request for Expedited Consideration [Rec. Doc. 29735], at 9.

[48] *Chinese Drywall*, 2013 WL 499474 at *4 ("separate fund for attorney fees … ensur[es] that any attorney fees approved by this Court will not diminish any plaintiff's recovery or cause a structure to receive only partial remediation.").

[49] Rec. Doc. 21247.

Significant due process has been afforded to the Objectors.  The fee record in this matter is immense.  The protracted fee proceedings involved:  (i) the appointment of a Special Master[50]; (ii) extensive discovery, including production of all monthly time and expense reports, lodestar charts, and held cost charts prepared by Mr. Garrett, access to all backup materials supporting Mr. Garrett's affidavit filed with the Fee Committee's Allocation Motion, and access to the shared cost ledgers and receipts in Mr. Garrett's Case Cost Management System[51]; (iii) motion practice; (iv) depositions of Mr. Garrett, Plaintiffs' Lead and Liaison Counsel, and Sandra L. Duggan[52]; (v) a contested two-day evidentiary fee hearing eliciting testimony from members of the Fee Committee as well as several Fee Objectors and others; and (vi) the filing of multiple briefs and approximately 750 exhibits before the Special Master and this Court.

Importantly, the Common Benefit Fees Order was also based on the Court's first-hand knowledge of the common benefit efforts of the PSC, notwithstanding the Objectors' claim to the contrary.  In order to administer the MDL, the Court entered PTO 9,[53] setting forth detailed guidelines and protocols for the submission of common benefit time and expenses by all potential fee applicants to the Court-appointed CPA on a monthly basis.  The Court vetted these records and carefully tracked the hours and expenses of the PSC.  Moreover, all counsel in the

---

[50] *See* Order dated 7/19/2016 Appointing Special Master [Rec. Doc. 20410]; *see also* Order dated 8/30/2016 Clarifying Order Appointing Special Master [Rec. Doc. 20478].

[51] *See* Fee Committee's Post-Hearing Memorandum dated 7/14/2017 [Special Master Fee Record], at 26-27.

[52] The transcripts from these fee depositions comprise more than 1,500 pages.

[53] Rec. Doc. 147; *see also* PTO 9A (applying to counsel handling common benefit work in State Court Chinese Drywall proceedings) [Rec. Doc. 12961]; Exhibit "A" (7/9/2009 Status Conf. Tr.) at 22:16-28:24 (advising counsel of time billing guidelines to be set by Court).

case were notified early on that the Court would meet with Mr. Garrett regularly to review common benefit submissions.

None of the moving Primary Counsel (or any of the Fee Objectors) objected to this process. On the contrary, all but two of the movants submitted time and expenses to Mr. Garrett pursuant to PTO 9.[54] Similarly, when the Court entered PTO 28 setting forth the guidelines and protocols for the application of attorneys' fees related to the class settlements approved by the Court, no one objected. In fact, all but two of the movants here submitted Initial Affidavits and Second Affidavits to the Fee Committee and appeared for interviews before the Fee Committee to answer questions about their applications for an allocation of common benefit fees.

At this point, the completion of the process for achieving an award of attorneys' fees to more than 185 fee applicants is imminent. The only remaining step is the allocation of common benefit fees. The Common Benefit Fees Order setting the aggregate amount of those fees is not final and does not qualify for certification under Section 1292(b) since it inextricably involves significant factual analysis. Moreover, there are no controlling questions of law as to which there is substantial ground for difference of opinion. Finally, an interlocutory appeal of that order would only serve to further delay the ultimate resolution of all fee issues. For these reasons, the 1292(b) motion should be denied.

---

[54] Only Messrs. Sexton and Hoaglund did not apply for an award of common benefit fees. All other movants seeking 1292(b) certification of the Common Benefit Fees Order have an interest in the allocation of common benefit fees, and Mr. Parker is a PSC member, who previously supported the approval of the Knauf settlement as well as the other class settlements producing the funds for attorneys' fees.

III.   **ARGUMENT**

    A.    **There Are No Special Circumstances Warranting Certification
of the Common Benefit Fees Order for Immediate Appeal
Under 28 U.S.C. § 1292(b).**

Firmly established under federal jurisprudence is the policy against piecemeal appeals.
*See Switzerland Cheese Association, Inc. v. Horne's Market, Inc.*, 385 U.S. 23, 24 (1966);
*Baltimore Contractors, Inc. v. Bodinger*, 348 U.S. 176 (1955); 28 U.S.C. § 1291 (bestowing
upon Courts of Appeals "jurisdiction of appeals from all <u>final</u> decisions of the district courts")
(emphasis added).  Federal statute creates certain exceptions to the final judgment rule to permit
appeals from specific types of interlocutory orders, *e.g.*, injunctions, receiverships, admiralty
decrees.  *See* 28 U.S.C. § 1292(a).  Under limited circumstances, "if a trial court enters an order
from which an appeal is not permitted pursuant to 28 U.S.C. § 1292(a) . . . the court may grant
28 U.S.C. § 1292(b) certification, which would allow the order to be appealed."  *Henderson v.
GATX Corp.*, 2012 WL 1191141, *1 (M.D. Fla. Apr. 10, 2012).  However, the judiciary readily
recognizes that "[a]ny appeal under this section is necessarily a deviation from the ordinary
policy of avoiding 'piecemeal appellate review of trial court decisions which do not terminate the
litigation.'"  *Cardona v. General Motors Corp.*, 939 F. Supp. 351, 353 (D.N.J. 1996), *quoting
United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 265 (1982).

Under Section 1292(b), this Court can certify the Common Benefit Fees Order for
interlocutory review only if (1) it involves "a controlling question of law," (2) there is
"substantial ground for difference of opinion" on the question presented, and (3) an immediate
appeal would "materially advance the ultimate termination of the litigation."  *David v. Signal
Intern., LLC*, 37 F. Supp. 3d 836, 839 (E.D. La. 2014), *quoting* 28 U.S.C. § 1292(b) (all three

16

prongs must be satisfied).[55]  Further, "'[t]he three factors should be viewed together as the statutory language equivalent of a direction to consider the probable gains and losses of immediate appeal.'"  *General Electric Company v. Mitsubishi Heavy Industries, Ltd*., No. 10-cv-0276, 2012 WL 12985134, at *1 (N.D. Tex. Feb. 7, 2012), *quoting* 16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE § 3930 (2d ed. 1996).

In this case, although the Fee Objectors have identified certain "important" and "serious" legal questions pertaining to the entitlement of common benefit counsel to an award of attorneys' fees, they have not presented a single "controlling question of law as to which there is substantial ground for difference of opinion."  Moreover, the Objectors have not shown – nor could they – that an immediate appeal from the Common Benefit Fees Order would "materially advance the ultimate termination of the litigation."  On the contrary, an appeal of the Common Benefit Fees Order, in advance of the Court's ruling on the allocation of common benefit fees, would cause additional delays in the distribution of attorneys' fees to all deserving counsel.

Fee decisions that are not final (*e.g.*, interim fee awards) are particularly unsuited for interlocutory appeal.  *See People Who Care*, 921 F.2d at 134 (denying petition for leave to appeal interim fee order under § 1292(b) because "[d]isputes about the quantum of attorneys' fees do not satisfy [the] standard" requiring material advancement of the ultimate termination of

---

[55] Upon certification by the district court pursuant to § 1292(b), the Court of Appeals may, in its discretion, permit the appeal to be taken.  *See* 28 U.S.C. § 1292(b).  Application of 1292(b) is "subject to the judgment and discretion of [both] the district court and the court of appeals."  *Tidewater Oil Co. v. United States*, 409 U.S. 151, 167 (1972); *People Who Care v. Rockford Bd. of Educ., Dist. No. 25*, 921 F.2d 132, 134 (7th Cir. 1991) ("§ 1292(b) does not give district judges power to authorize interlocutory appeals generally.").

the litigation); *cf. Pigford v. Veneman*, 369 F.3d 545, 547 (D.C. Cir. 2004) (fee order could not

be a final because it did not determine the total amount of fees due nor the absolute entitlement

to attorneys' fees); *Petties v. Dist. of Columbia*, 227 F.3d 469, 473 (D.C. Cir. 2000) ("interim

[fee] awards … [not] appealable as a matter of course").

Section 1292(b) is meant to be applied sparingly in that only "exceptional circumstances

[will] justify a departure from the basic policy of postponing appellate review until after the

entry of a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978).  In cases

involving "[a] question which requires a factual as well as legal decision," interlocutory review

"is not suitable." *Speizman Knitting Mach. Co. v. Terrot Strickmaschinen GmBH*, 505 F. Supp.

200, 202 (D.N.C. 1981); *see also Brooks v. Farm Fresh, Inc.*, 759 F. Supp. 1185, 1198 (E.D. Va.

1991) (where question of law is grounded in specific facts of the case, and cannot be divorced

from those facts, they fail to present a narrow question of pure law); *Fannin v. CSX Transp., Inc.*,

No. 88-8120, 1989 WL 42583 at *5 (4th Cir. 1989) (unpublished) ("a question of law that is

heavily freighted with the necessity for factual assessment" is not appropriate for interlocutory

review).  With respect to the fee allocation issues between common benefit counsel and contract

attorneys, Objectors do not illustrate how the questions they raise satisfy any of these standards.

It further cuts against their position that "district courts must not certify issues which need

significant factual development to flesh out, or which will require the circuit court to 'delve

beyond the surface of the record in order to determine the facts.'" *See Consumer Fin. Prot.*

*Bureau v. Frederick J. Hanna & Assoc., P.C.*, 165 F. Supp. 3d 1330, 1335 (N.D. Ga. 2015),

*quoting McFarlin v. Conseco Serv., LLC*, 381 F.3d 1251, 1256 (11th Cir. 2004).  On this basis

alone, the Common Benefit Fees Order does not qualify for immediate appeal since it represents

an in-depth analysis of an extensive factual record as applied to governing fee jurisprudence, and, in particular, the twelve *Johnson* factors.  Courts have held that such an intensive fact-based inquiry does not constitute a controlling question of law that merits interlocutory review.

Beyond the type of controlling questions that may qualify for interlocutory review, "[t]he threshold for establishing a 'substantial ground for difference of opinion' is higher than mere disagreement or even the existence of some contrary authority."  *See Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718, 724 (N.D. Tex. 2006) ("[S]imply because a court is the first to rule on a question or counsel disagrees on applicable precedent does not qualify the issue as one over which there is substantial disagreement." (citation omitted)).  In fact, "Parties must clear a high bar when attempting to show that a question involves a substantial ground for difference of opinion."  *Consumer Fin.*, 165 F. Supp. 3d at 1335.  Courts have held that "[s]ubstantial ground for difference of opinion exists when a legal issue is (1) difficult and of first impression, (2) the district courts of the controlling circuit are split as to the issue, or (3) the circuits are split on the issue."  *Id.*, *citing Georgia State Conf. of the NAACP v. Fayette Cty. Bd. of Commissioners*, 952 F. Supp. 2d 1360, 1362 (N.D. Ga. 2013); *see also In re Scientific-Atlanta, Inc. Sec. Litig.*, No. 01–cv–1950, 2003 WL 25740734, at *1 (N.D. Ga. Apr. 15, 2003) ("neither the mere lack of authority on the issue nor the claim that the district court's ruling is incorrect constitutes a substantial ground for difference of opinion.").  The applicable standard, therefore, requires that "[t]he 'substantial ground' for difference of opinion must be about a purely legal issue, not a factual one or "'the application of settled law to fact.'"  *See Consumer Fin.*, 165 F. Supp. 3d at 1335, *quoting McFarlin*, 381 F.3d at 1258.  Objectors cannot show that the common benefit fee issues they challenge here meet this burden.

19

Courts have recognized that "the institutional efficiency of the federal court system is among the chief concerns underlying Section 1292(b). Thus, certification for interlocutory appeal is appropriate if reversal of the district court's opinion in that respect could result in dismissal of the action or limit the action's complexity or scope." *Harch Hyperbarics, Inc. v. Martinucci*, No. Civ. A. 09-7467, 2010 WL 4665923, at *5 (E.D. La. Nov. 9, 2010) (quotations omitted), *citing SEC v. Credit Bancorp, Ltd.*, 103 F. Supp. 2d 223, 226, 227 (S.D.N.Y. 2000); FEDERAL PRACTICE AND PROCEDURE, § 3930. Under no circumstance would a reversal of the Common Benefit Fees Order in this case limit the scope or complexity of this litigation or the fee issues presented in these proceedings or result in a dismissal of any action. As it is, the Court has yet to decide the interrelated issue regarding the allocation of common benefit fees. Thus, it is much more prudent to await the final fee order prior to engaging in interlocutory appeals from this Court's fee rulings. Accordingly, certification of the Common Benefit Fees Order under Section 1292(b) is inappropriate.

1.  **The Court's Authority to (1) Award Common Benefit Fees to Plaintiffs' Leadership Committee and (2) Reduce Contractual Contingency Fees Are Not Controlling Questions of Law as to Which There Is Substantial Ground for Difference of Opinion.**

The Fee Objectors are attempting to elevate their contractual attorneys' fees to a sacrosanct Constitutional right that is untouchable by any court, regardless of the circumstances.[56] However, they do not cite any authority that challenges a court's ability to award common benefit fees in either a class action or MDL context. Nor do they cite a case limiting a court's ability to pay those common benefit fees by reducing contractually-created

---

[56] Rec. Doc. 21216-1, at 6-10.

rights to a contingency fee for attorneys representing clients benefiting from the efforts of common benefit counsel.  Instead, the Objectors argue the wisdom of the common benefit doctrine, or at least its application here, and they assert that this raises "important legal issues that the Fifth Circuit should address" right away.[57]  That argument, however, does not meet the standard for certification of an interlocutory appeal under Section 1292(b).

Moreover, governing jurisprudence on attorneys' fees is consistent, clear and overwhelming that the Court does, in fact, have the authority to (1) award common benefit fees in both class actions (which this is) and non-class action MDLs and (2) modify or reduce contractually-created contingency fees irrespective of the law on common benefit fees.  As this Court has written, common benefit fee awards derive from "equity and her blood brother, *quantum merit*," for they avoid the unjust enrichment of successful litigants which otherwise would occur if the attorneys who created a common fund for the litigants' benefit were not fairly compensated (from the fund) for their services.  *See Common Benefit Fees*, 74 LA. L. REV. at 376; *see also Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 857 (E.D. La. 2007), *quoting* from 4 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS §13:76 (4th ed. 2002).

In the face of overwhelming case law and years of practice supporting the Common Benefit Fees Order, the Objectors cite a law review article that suggests that the common benefit doctrine doesn't apply in MDLs.[58]  It is clear, though, from the Objectors' brief that they do not really believe that the Court lacks authority to reduce their contractually-created contingency

---

[57] Rec. Doc. 21216-1, at 8.

[58] Rec. Doc. 21216-1, at 8, *citing* Charles Silver and Geoffrey P. Miller, *The Quasi-Class Action Method of Managing Multi-District Litigation*, 63 VAND. L. REV. 107, 121 (2010).

fees, but, rather, they are simply unhappy with the amount of the fee reduction.  As such, they

argue that a "serious legal question" arises with respect to the Court's authority to "re-allocate

fees and expenses ***to this degree***."[59]  It goes without saying that their displeasure with the Court's

ruling does not create substantial ground for difference of opinion as to a controlling legal

question at issue in this case.[60]

The Court properly found here that "[p]ursuant to Rule 23(h), the Court has the authority

and responsibility for setting attorneys' fees . . . [b]ut even if this litigation were treated as a

traditional MDL, without any class action status, this Court, as transferee court, would have the

authority to fix a common benefit fee."[61]  Objectors appear to concede that the Court has the

authority to award common benefit fees in a class action but, citing a law review article, they

---

[59] Rec. Doc. 21216-1, at 10 (emphasis added).  In addition, the Objectors claim the Court's order is "unprecedented in that it allocates ***more favorable compensation***" to common benefit counsel than to individually-retained counsel and that "common benefit remuneration ***has been elevated*** over constitutionally protected contract rights."  *Id*. at 6 (emphasis added).  They go so far as to argue that the Court has not stated "why Primary Counsel's contract rights are ***so*** subordinate to common benefit counsel's rights." *Id*., at 6 (emphasis added).

[60] Moreover, as noted above, the "legal" questions posed by the Objectors are also inappropriate because they are laden with factual assumptions.  The questions are not premised upon the Court's authority to reduce their contractually-created contingency fees in general, but only the Court's authority to do so when the PSC is getting a "greater share" of the fee pot and when the PSC negotiated a limited fee pot that was allegedly "inadequate."  Rec. Doc. 21216-1, at 6.  The factual underpinnings render the issues addressed in the Common Benefit Fees Order inadequate for 1292(b) review.  *See Speizman Knitting*, 505 F. Supp. at 202 ("A question which requires a factual as well as legal decision is not suitable for interlocutory review."); *see also Brooks*, 759 F. Supp. at 1198 (where question of law is grounded in specific facts of the case, and cannot be divorced from those facts, they fail to present a narrow question of pure law); *Fannin*, 1989 WL 42583 at *5 ("a question of law that is heavily freighted with the necessity for factual assessment" is not suitable for interlocutory review).

[61] Common Benefit Fees Order at 7, *citing* Fed. R. Civ. P. 23(h); *In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 549 F.2d 1006, 1008 (5th Cir. 1977); *In re Diet Drugs Prods. Liab. Litig*., 582 F.3d 524, 546-47 (3d Cir. 2009); *Common Benefit Fees*, 74 LA. L. REV. at 374.

argue that the Court's authority in a non-class action MDL "is a fiercely debated issue."[62]

Putting aside that the fees at issue here were generated from class settlements approved by the

Court pursuant to Rule 23,[63] entirely mooting Objectors' argument, Objectors do not point to any

court that has taken their position with respect to MDLs.  This is likely because "the policy

rationale for the exercise of judicial authority to award common benefit fees is the same

regardless of whether it occurs in a Rule 23 or MDL context."[64]

There is no question that, in presiding over a non-class MDL and/or a class action

certified under Fed. R. Civ. P. 23, judges are vested with authority not only to assure that the

overall legal fees sought by plaintiffs' counsel are reasonable, but also to award that portion of

the total fees which will fairly compensate Court-appointed and/or class counsel who labored for

the benefit of all plaintiffs.  This doctrine of "common benefit fees" is a time-honored one in our

---

[62] Rec. Doc. 21216-1, at 9; at 7-8 ("common benefit fund doctrine, as created by the Supreme Court as an exception to the American Rule, is not a carte blanche power to re-shuffle contractually imbued contract rights, but rather a power that must be premised upon sound equitable principles, such as unjust enrichment."); at 8 ("Some scholars have explained that 'it is clear that the common fund doctrine does not apply to MDLs.'" (internal citation omitted)).

[63] Rec. Doc. 16570 (final approval of Knauf, Global, Banner, InEx, and L&W class settlements); Rec. Doc. 16934 (final approval of Virginia settlements).  Moreover, the Objectors, in pursuit of a bigger fee, align themselves with the likes of Defendants BNBM, CNBM and Taishan by suggesting that this litigation is not a class action but instead more akin to a non-class action MDL, an argument that was rejected squarely by the Court.  *See* Rec. Doc. 21088, at 23-31 (rejecting Defendants' position that this case was not really a class case because each class member was also a named plaintiff while assessing defendants argument that *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773 (2017) required dismissal of the action).

[64] Rec. Doc. 21168, at 7-8 (noting the policy rationale, that Objectors concede is the basis for common benefit fund doctrine, that "[i]t avoids the unjust enrichment of those who profit from a common fund at the expense of those whose labors produced the fund, and it serves to encourage attorneys to accept the considerable risks associated with prosecuting complex, multi-plaintiff matters for the benefit and protection of all plaintiff rights.").  *See also Common Benefit Fees*, 74 LA. L. REV. at 376; *Turner v. Murphy Oil USA, Inc*., 472 F. Supp. 2d 830, 857 (E.D. La. 2007), *quoting* from 4 NEWBERG ON CLASS ACTIONS §13:76.

system, rooted in case law dating from the nineteenth century.  *See Common Benefit Fees*, 74 La. L. Rev. at 371, *citing Internal Imp. Fund Trs. v. Greenough*, 105 U.S. 527, 537-38 (1881); *Cent. R.R. & Banking Co. of Ga. v. Pettus*, 113 U.S. 116, 127-28 (1885).  In fact, the common benefit fee doctrine is so established in class action litigation that it was codified in Rule 23 in 2003 when a provision was added expressly authorizing district judges to award "reasonable attorney's fees" to class counsel.  *See* Fed. R. Civ. P. 23(h).

Outside the confines of Rule 23, there is little question that the presiding judge in an MDL, being authorized by the MDL statute to "promote the just and efficient conduct of such actions," is also vested with the authority to award common benefit fees to counsel appointed by the Court to prosecute common issues on plaintiffs' behalf.  *See* 28 U.S.C. §1407(a); *see also In re Diet Drugs Prods. Liab. Litig.*, MDL 1203, 2002 WL 32154197, at *17 (E.D. Pa. Oct. 3, 2002) (recognizing that assisting with the management of the complex docket, in addition to creating a fund, serves as a benefit for which a "court must be permitted to compensate fairly the attorneys who serve on...a [court-appointed] committee."); *In re Genetically Modified Rice Litig.*, MDL 1811, 2010 WL 716190, at *4 (E.D. Mo. Feb. 24, 2010) ("An MDL court's authority to...order contributions to compensate leadership counsel derives from its 'managerial' power over the consolidated litigation, and, to some extent, from its inherent equitable power."), *aff'd*, 764 F.3d 864 (8th Cir. 2014), *cert. denied*, 135 S. Ct. 1455 (2015).

This fee award authority is a necessary corollary of the authority to appoint such counsel, serving to "assure that these attorneys receive reasonable compensation for their work."  *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 644, 653 (E.D. Pa. 2003), *citing In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006, 1016 (5th Cir. 1977); *see also Smiley v. Sincoff*,

24

958 F.2d 498, 501 (2d Cir. 1992) (noting the authority of district judges to establish fees to compensate committee members for work performed on behalf of all plaintiffs involved in a consolidated litigation).

Over the years, the common benefit fee doctrine has been applied repeatedly in an MDL context, both in the Fifth Circuit and elsewhere.  *See Fla. Everglades*, 549 F.2d at 1021; *see also In re Vioxx Prods. Liab. Litig*., 760 F. Supp. 2d 640, 647-48 (E.D. La. 2010); *In re Protegen Sling and Vesica Sys. Prods. Liab. Litig.*, MDL No. 1387, 2002 WL 31834446, at *1 (D. Md. Apr. 12, 2002); *In re Rezulin Prods. Liab. Litig.*, No. 00-cv-2843, 2002 WL 441342, at *2 (S.D.N.Y. Mar. 20, 2002); *Diet Drugs*, 2001 WL 497313, at *6-8 (E.D. Pa. May 9, 2001); *In re Orthopedic Bone Screw Prods. Liab. Litig.,* No. MDL 1014, 1998 WL 118060, at *2 (E.D. Pa. Jan. 12, 1998); *In re MGM Grand Hotel Fire Litig.*, 660 F. Supp. 522, 529 (D. Nev. 1987).[65] Thus, the Court's authority to award common benefit fees in either the class action context or the non-class action MDL context is not a legal issue for which there are substantial grounds for difference of opinion.[66]

---

[65] The essential interdependence of the judicial authority to appoint "lead," *i.e.*, common benefit, counsel and the authority to compensate such counsel, has been expressly articulated in the case law of this Court:

> In matters of complex litigation, the district court must be instilled with the power necessary to order appropriate compensation to lead counsel [for] the services lead counsel provide to all parties involved.  'The court's power is illusory if it is dependent on lead counsel's performing the duties desired of them for no additional compensation.'

*In re Clearsky Shipping Corp.*, 2003 WL 1563820 at *4 (E.D. La. Feb. 26, 2003), *citing Fla. Everglades*, 549 F.2d at 1016-17.

[66] The Objectors cite cases that do not challenge the Court's authority to award such fees but instead stand for the unremarkable position that such an award should only come after all counsel are provided with sufficient due process.  *See* Rec. Doc. 21216-1, at 6, *citing High Sulfur*, 517 F.3d at 231 and *In re Nineteen Appeals*, 982 F.2d 603, 613 (1st Cir. 1992).  Due process is not an issue here where the Court

The flipside to the Court's ability to award common benefit fees in an MDL is that the fees themselves will stand to reduce the fees available to individually-retained counsel who typically have contracts with their clients that entitle them to a contingency fee that is a percentage of the clients' recovery.  When a court awards a common benefit fee in an MDL, and/or includes an assessment on cases where common benefit work is used to prosecute the individual litigation that proceeds outside of the MDL context, the fees awarded common benefit counsel necessarily reduce individually-retained counsel's contractually-created contingent fee.[67] *See*, *e.g.*, *In re Oil Spill by the Oil Rig DEEPWATER HORIZON in the Gulf of Mexico, on Apr. 20, 2010*, Nos. 12-cv-968, 12-cv-970, 2012 WL 2236737, at *1-2 (E.D. La. June 15, 2012) (finding a strong argument for court's authority to cap attorneys' fees because Settlements provided Court continuing and exclusive jurisdiction over Parties and their Counsel for purpose of enforcing, implementing and interpreting Agreement); *In re Vioxx Prod. Liab. Litig.*, 650 F. Supp. 2d 549, 553 (E.D. La. 2009) (court found that global settlement may properly be analyzed as occurring in quasi-class action, giving it equitable authority to review contingent fee contracts for reasonableness); *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, No. 05-md-1708, 2008 WL 682174, at *18 (D. Minn. Mar. 7, 2008) (relying on quasi-class action nature of MDL proceeding and court's equitable authority to implement reasonable cap on contingent fees); *In re Zyprexa Prods. Liab. Litig.*, 424 F. Supp. 2d 488, 491 (E.D.N.Y. 2006) (exercising

---

provided voluminous due process, openness and checks and balances to all counsel.  *See*, *e.g.*, Common Benefit Fees Order at 4-7 (discussing process in establishing common benefit fee).

[67] *See also Fla. Everglades*, 549 F.2d at 1016 ("We hold that the district court had the power to direct that the Committee and its counsel be compensated and that requiring the payment come from other attorneys was permissible."); *Protegen Sling*, 2002 WL 31834446, at *1; *Rezulin*, 2002 WL 441342, at *2; *Diet Drugs*, 2001 WL 497313, at *6-8; *Orthopedic Bone Screw*, 1998 WL 118060, at *2); *In re MGM Grand Hotel Fire Litig.*, 660 F. Supp. at 529.

the court's inherent power to "impos[e]. . . fiduciary standards to ensure fair treatment to all parties and counsel regarding fees and expenses").

But, this authority to reduce contractually-created contingency fee provisions is not limited to the MDL or class action context.  It is a basic and recognized principle that courts have an inherent authority to perform such a review, and even to do so *sua sponte*.  *See*, *e.g*., *Karim v. Finch Shipping Co., Ltd*., 233 F. Supp. 2d 807, 810 (E.D. La. 2002) ("Among the broad equitable powers of a federal court is its supervisory capacity over an attorney's contingent fee contracts. Federal appellate courts have consistently upheld the right of a district court to modify any contingency fee contract it deems unreasonable under the circumstances."), *aff'd*, 374 F.3d 302 (5th Cir. 2004); *United States v. Overseas Shipholding Grp., Inc*., 625 F.3d 1, 8 (1st Cir. 2010) (court raised fee issue *sua sponte* and First Circuit found that the district court's supervisory authority encompasses power to assess fairness of attorney fee agreements, including contingent fee arrangements); *In re Goldstein*, 430 F.3d 106, 110 (2d Cir. 2005) (district court has ample authority to reduce attorneys' fees); *Mitzel v. Westinghouse Elec. Corp.*, 72 F.3d 414, 417 (3d Cir. 1995) (contingency fee agreements fall within court's supervisory power over members of bar); *In re A.H. Robins Co., Inc*., 86 F.3d 364, 373 (4th Cir. 1996) ("district courts' supervisory jurisdiction over contingent fee contracts for services rendered in cases before them is well-established"); *Hoffert v. General Motors Corp*., 656 F.2d 161, 164-66 (5th Cir. 1981) (district judge has broad equity power to supervise collection of attorneys' fees under contingency fee arrangements); *Green v. Nevers*, 111 F.3d 1295, 1302 (6th Cir. 1997) (an attorney's right to contract for contingent fee is not completely beyond judicial control); *Rosquist v. Soo Line R.R.*, 692 F.2d 1107, 1111 (7th Cir. 1982) (district court's appraisal of amount of fee is justified by

court's inherent right to supervise members of its bar); *Little Rock Sch. Dist. v. Pulaski Cty. Special Sch. Dist. No. 1*, 921 F.2d 1371, 1391 (8th Cir. 1990) (courts have broad inherent supervisory powers over fees charged by lawyers and regulate or curtail them if necessary); *Boykin v. McCoy*, 384 Fed. App'x 579, 581 (9th Cir. 2010) (courts have long recognized that fee disputes arising from litigation fall within that court's ancillary jurisdiction); *Law v. Nat'l Collegiate Athletic Ass'n*, 4 Fed. App'x 749, 751 (10th Cir. 2001) (district court has broad authority over awards of attorneys' fees); *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1201 (10th Cir. 1986) (district court has discretion in determining amount of a fee award);  *Sahyers v. Prugh, Holliday & Karatinos, P.L.*, 603 F.3d 888, 890 (11th Cir. 2010) (federal courts have inherent powers to assess attorneys' fees against counsel); *Boatright ex rel. Boatright v. R.J. Cormon R.R. Co./Material Sales*, 244 Fed. App'x 312 (11th Cir. 2007) (district Court has discretion to modify attorneys' fees award provided for in settlement agreement).

In the face of this mountain of authority supporting the Court's authority to reduce contractually-created contingency fees, the Objectors point to no case law elevating contingent fee agreements to untouchable status.  The issue simply presents no area of substantial disagreement.

   **2.**  **Immediate Appeal of the Common Benefit Fees Order Will Delay, Not Materially Advance, the Ultimate Termination of the Litigation.**

It is commonly accepted that a court should refrain from certifying an order for immediate review under Section 1292(b) when, instead of materially advancing the ultimate termination of the litigation, it would result in a delay of the proceedings.  *See*, *e.g.*, *David*, 37 F. Supp. 3d at 839 (finding granting of interlocutory appeal would result in delay of the ultimate

resolution of the case); *Matthews v. Stolier*, No. 13-cv-6638, 2016 WL 9447195, at *2 (E.D. La.

July 19, 2016) (denying certification under 1292(b) because it would hinder the progress of the

litigation); *Roussell v. Brinker Int'l, Inc.*, No. 05-cv-3733, 2009 WL 595978, at *4 (S.D. Tex.

Mar. 6, 2009) ("Under the third 'materially advance' prong, courts look to whether it is

burdensome to decide the case now and whether the ultimate disposition of the case is delayed

rather than advanced if the interlocutory appeal application is granted."); *Long Island Lighting

Co. v. Transamerica Delaval, Inc*., 648 F. Supp. 988, 991 (S.D.N.Y. 1986) ("an interlocutory

appeal is more likely to delay its conclusion.  The roots of this case date back more than ten

years.  Thousands of pages of documents and testimony were reviewed by the PSC.  Hundreds of

pages of papers have been submitted to this Court; hundreds more will inevitably be submitted

before final judgment is entered and that judgment appealed.").

For all the reasons discussed above, certifying an interlocutory appeal of the Common

Benefits Fees Order would serve only to delay the resolution of this fee dispute.  After arduous

work, the fee proceedings are close to being finalized, and after a final fee order is entered,

appeals therefrom of all relevant issues may proceed.  To grant the Objectors' 1292(b) motion

would be to delay the resolution of the fee issues for over a year and that alone warrants denial of

their 1292(b) motion.  Further, there is little harm to the Objectors in denying certification at this

point because they will get their opportunity to appeal when the final fee order has been entered,

which should occur this calendar year.

Denying certification under Section 1292(b) is particularly appropriate when, as here, the

case has been ongoing for a lengthy period of time and is nearing resolution.  *See Monroe v.

Cessna Aircraft Co*., No. 05-cv-0250, 2006 WL 1305116, at *2-3 (E.D. Tex. May 9, 2006)

(stating that with trial approaching, "a certification of appeal to the Fifth Circuit would not materially advance the ultimate termination of this litigation.  Instead, an interlocutory appeal would likely delay the time required to bring the suit to its ultimate termination while increasing the parties' expenses); *see also Baranski v. Serhant*, 602 F. Supp. 33, 36 (N.D. Ill. 1985), *citing* 16 FEDERAL PRACTICE AND PROCEDURE, § 3930 (3d ed.).

### B.    Certification of the Common Benefit Fees Order as a Final Order Under Rule 54(b) Is Inappropriate.

The Court's various fee determinations in this case are inherently intertwined and interdependent.  Four years ago, after final approval of the nine class settlements at issue, the Court established in PTO 28 a detailed multi-step process for awarding fees to almost 500 timekeepers in the litigation.  Almost three years ago, the Court ruled on the joint petition for a global fee award intended to compensate both common benefit counsel and individual contract attorneys (many of whom overlap and fall into both camps).  No objections were filed to the Global Fee Petition, and no fee applicant ever attempted to file an appeal from the global fee award.  Most recently, in the Common Benefit Fees Order the Court ruled on the split of available attorneys' fees as between the two groups.  The remaining and final step in the fee award process is for the Court to make individual fee allocation awards to all deserving fee applicants.  Thus, the Common Benefit Fees Order is but one step in a lengthy process to compensate counsel and it is by no means a final order, nor can it be.  Even though a final order on fees is expected relatively soon, the Objectors continue to make every attempt to get to the Fifth Circuit prematurely by asking this Court to certify its Common Benefit Fees Order as a final judgment pursuant to Federal Rule of Civil Procedure 54(b).[68]

---

[68] Rec. Doc. 21216-1, at 23-24.

Rule 54(b) allows a district court "[to] direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." Fed. R. Civ. P. 54(b). This Rule "reflects a balancing of two policies: avoiding the 'danger of hardship or injustice through delay which would be alleviated by immediate appeal' and 'avoid[ing] piecemeal appeals.'" *Eldredge v. Martin Marietta Corp.*, 207 F.3d 737, 740 (5th Cir. 2000), *citing PYCA Indus. v. Harrison County Waste Water Management Dist.*, 81 F.3d 1412, 1421 (5th Cir. 1996). The balancing here indisputably favors denial of the Objectors' request because there will most certainly be piecemeal appeals in any event (*i.e.*, certain Objectors have made clear their intent to file an appeal from the Court's final fee award[69]) and there is no hardship caused by denying an immediate appeal now because the final fee award will be forthcoming in the near future. After the final fee award is entered, Objectors will be able to raise, in one appeal, all of the issues they are arguing in this motion along with the issues these same Objectors will certainly create with respect to whatever common benefit fees allocation the Court awards.[70] Under these circumstances, Rule 54(b) certification should not occur.

Certification of an order as final under Rule 54(b) is only appropriate if: (1) the order from which the appellant appeals conclusively determines the disputed question; (2) the order resolves an important issue that is completely separate from the merits of the dispute; and (3) the order is effectively unreviewable on appeal from a final judgment. *See In re Ford Motor Co.*,

---

[69] *See* footnote 44, *supra*.

[70] *See* Plaintiffs' Lead and Liaison Counsels' Opposition to Krupnick Campbell Malone *et al.*'s Motion for Interim Disbursement of Attorney's Fees [Rec. Doc. 21239], at 1-6 (explaining how the multi-step process put in place by the Court for the award of attorneys' fees is nearing its completion).

110 F.3d 954, 958 (3d Cir. 1997), *see also United States v. Bertoli*, 994 F.2d 1002, 1010 (3d Cir.

1993).  While district courts do have discretion to certify an interlocutory order as final, this

power "is exercised sparingly in order to forestall the perpetual reexamination of orders and the

resulting burdens and delays."  *Castrillo v. Am. Home Mortgage Servicing, Inc.*, No. 09-cv-4369,

2010 WL 1424398, at *3 (E.D. La. Apr. 5, 2010) (Vance, J.), *citing Calpetco 1981 v. Marshall

Exploration, Inc.*, 989 F.2d 1408, 1414-15 (5th Cir. 1993); *see also* 18B FEDERAL PRACTICE &

PROCEDURE, § 4478.1 (2d ed. 2002).  In fact, Rule 54(b) judgments are not favored and should

be awarded only when necessary to avoid "hardship or injustice through delay," and "should not

be entered routinely as a courtesy to counsel."  *PYCA Indus.*, 81 F.3d at 1421.

Courts are largely in agreement that interim fee awards, or in this case a finding that is a

predicate for a final fee award that is forthcoming, do not warrant certification under Rule 54(b)

unless they can be considered final under 28 U.S.C. § 1291.  Moreover, "treating a claim for

attorney's fees as a distinct claim for relief under Rule 54(b), an order awarding attorney's fees

may be considered final within the meaning of sec. 1291 *only if it disposes finally* of the

attorney's fee question."  *Shipes v. Trinity Indus., Inc.*, 883 F.2d 339, 341 (5th Cir. 1989)

(emphasis added); *United States v. Antiques Ltd. P'ship*, 760 F.3d 668, 673 (7th Cir. 2014)

(order of interim compensation is an unappealable interlocutory order); *Law v. Nat'l Collegiate

Athletic Ass'n*, 134 F.3d 1025, 1027 (10th Cir. 1998) (award of interim attorneys' fees is not a

final order and thus generally is not appealable); *Rosenfeld v. United States*, 859 F.2d 717, 720

(9th Cir. 1988) (grant or denial of interim attorneys' fees is not an appealable final order under

28 U.S.C. § 1291); *Hastings v. Maine-Endwell Cent. Sch. Dist.*, 676 F.2d 893, 895-96 (2d Cir.

1982) (award of interim attorneys' fees is not a final order and thus generally is not appealable).

Needless to say, the Common Benefit Fees Order merely allocates a portion of the global fee award to common benefit counsel (which Objectors vigorously oppose) and does not fully adjudicate individual allocations with respect to the global fee award, and, therefore, it is not "final."

Under Section 1291, a decision can be considered "final" if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *S. Travel Club, Inc. v. Carnival Air Lines, Inc*., 986 F.2d 125, 129-30 (5th Cir. 1993), *citing Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 373 (1981), *quoting Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467 (1978).[71]  With respect to an award of attorneys' fees from a common benefit fund, an interim fee award could be considered sufficiently final to be separately appealable under Section 1291 only if it resolves *all* claims for attorneys' fees and expenses payable out of the common fund.  *See*, *e.g.*, *In re Nineteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 982 F.2d 603, 610 (1st Cir. 1992).  Again, the final fee award in this matter awaits allocation of the common benefit fees among those counsel, including most of the Objectors here, who performed common benefit work.  Once that process is complete, an appeal can be taken.  Prior to that time, certification under Rule 54(b) is inappropriate and the Objectors' motion should be denied.

---

[71] One of the primary policies behind the "finality" justification for Rule 54(b) certification is to avoid piecemeal appeals.  *Eldredge*, 207 F.3d at 740, *citing PYCA Indus.*, 81 F.3d at 1421.  Rule 54(b) was espoused to remove distinct portions of a larger litigation by "alleviat[ing] the burden to parties of waiting until resolution of the entire case to appeal a decision that may have been entered years before."  *Shipes*, 883 F.2d at 342, *citing* 10 FEDERAL PRACTICE & PROCEDURE, § 3909, at 448-49 (1976).  *See also Diet Drugs*, 401 F.3d at 166 n.36.

IV.     **<u>CONCLUSION</u>**

For the foregoing reasons, this Court should deny certain Primary Counsel's Motion to

Certify an Immediate Appeal from the Court's Common Benefit Fees Order.

Respectfully submitted,

Dated:   March 19, 2018              /s/ Russ M. Herman
                                     Russ M. Herman (La. Bar No. 6819) (on the brief)
                                     Leonard A. Davis (La. Bar No. 14190) (on the brief)
                                     Stephen J. Herman (La. Bar No. 23129) (on the brief)
                                     HERMAN, HERMAN & KATZ, LLC
                                     820 O'Keefe Avenue
                                     New Orleans, LA  70113
                                     Phone: (504) 581-4892
                                     Fax: (504) 561-6024
                                     RHerman@hhklawfirm.com
                                     *Plaintiffs' Liaison Counsel MDL 2047*

                                     Arnold Levin (on the Brief)
                                     Fred S. Longer (on the Brief)
                                     Sandra L. Duggan (on the Brief)
                                     Keith J. Verrier (on the Brief)
                                     Nicola F. Serianni (on the Brief)
                                     LEVIN SEDRAN & BERMAN, LLP
                                     510 Walnut Street, Suite 500
                                     Philadelphia, PA  19106
                                     Phone: (215) 592-1500
                                     Fax: (215) 592-4663
                                     Alevin@lfsblaw.com
                                     *Plaintiffs' Lead Counsel MDL 2047*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, which will serve a notice of the uploading in accordance with the procedures established in MDL 2047, on this 19th day of March, 2018.

<u>/s/ Leonard A. Davis</u>
Leonard A. Davis
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
<u>Ldavis@hhklawfirm.com</u>
Plaintiffs' Liaison Counsel
MDL 2047

*Co-Counsel for Plaintiffs*