# EXHIBIT "A"

```
 1                 UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF LOUISIANA
 2     ********************************************************

 3
       IN RE:  CHINESE-MANUFACTURED        Docket No. 09-MD-2047
 4     DRYWALL PRODUCTS LIABILITY          New Orleans, Louisiana
                                           Thursday, July 9, 2009
 5

 6     ********************************************************

 7             TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS
              HEARD BEFORE THE HONORABLE ELDON E. FALLON
 8                  UNITED STATES DISTRICT JUDGE

 9
       APPEARANCES:
10
       FOR THE PLAINTIFF:             HERMAN, HERMAN, KATZ & COTLAR
11                                    BY:  RUSS M. HERMAN, ESQ.
                                      820 O'Keefe Avenue
12                                    New Orleans, LA 70130

13     FOR THE DEFENDANT:             FRILOT L.L.C.
                                      BY:  KERRY J. MILER, ESQ.
14                                    Energy Centre - Suite 3700
                                      1100 Poydras Street
15                                    New Orleans, LA 70163-3700

16     FOR LENNAR AND U.S. HOMES:     GREENBERG TRAURIG
                                      BY:  HILARIE BASS, ESQ.
17                                    1221 Brickell Avenue
                                      Miami, FL 33131
18
       FOR BANNER SUPPLY:             ADORNO & YOSS
19                                    BY:  JAN D. ATLAS, ESQ.
                                      350 E. Las Olas Boulevard
20                                    Suite 1700
                                      Fort Lauderdale, FL 33301
21
       Official Court Reporter:       Karen A. Ibos, CCR, RPR, CRR
22                                    500 Poydras Street, Room HB-406
                                      New Orleans, Louisiana 70130
23                                    (504) 589-7776

24
         Proceedings recorded by mechanical stenography, transcript
25     produced by computer.
```

<u>P R O C E E D I N G S</u>

(THURSDAY, JULY 9, 2009)

(STATUS CONFERENCE PROCEEDINGS)

THE COURT:  Be seated, please.  Good afternoon, ladies and gentlemen.

My name is Eldon Fallon, and I am the transferee judge who has been assigned the case, which you know is <u>in re:  Chinese Drywall</u>, MDL-2047.

For those of you who are not from New Orleans, I take the opportunity to welcome you to our city.  Hope that your work here is productive, as well as enjoyable.

The transfer order was issued in this case on June 15th and on June 16th I issued Pre-Trial Order No. 1.  Among other things, the pretrial order established a web site.  The web site can be accessed by going to the court's web site, www.laed.uscourts.gov and clicking on the drywall MDL and you should get that information.

First, I'd ask at this time for liaison counsel to make their appearance for the record.

MR. MILLER:  Good afternoon, your Honor, Kerry Miller, defense liaison counsel.

MR. HERMAN:  Good afternoon, Judge Fallon, I'm Russ Herman for Herman, Herman, Katz and Cotlar, New Orleans, plaintiff liaison counsel.

02:10:01  1          THE COURT:  One of the first things that I did with the

02:10:03  2    Pre-Trial Order No. 1 is to create or try to create some mechanism,

02:10:11  3    some method, a structure for handling this matter.  I called for

02:10:19  4    liaison counsel applications or suggestions from each side.  I

02:10:25  5    received a suggestion from the plaintiffs of Mr. Russ Herman and

02:10:31  6    Kerry Miller applied as Defendant's liaison position.

02:10:41  7          There was some question from the defendants whether we

02:10:47  8    should have two liaison, I picked Kerry Miller to be liaison

02:10:52  9    counsel.  I just want one liaison counsel for each side.  The

02:10:58 10    reason for that is that I see liaison counsel as dealing with

02:11:03 11    administrative matters.  I need somebody that the court can serve

02:11:09 12    with orders and I only want to serve two people.  The liaison

02:11:14 13    counsel then has to serve or make sure that everybody else is

02:11:19 14    advised of the litigation.

02:11:23 15          I need two people, one for each side, to make sure that

02:11:26 16    they have a complete file so that anyone else on their side that

02:11:31 17    needs documents knows where to go and one place to go.  I need a

02:11:39 18    liaison counsel to be responsible for coordinating the document

02:11:47 19    depository, and I need liaison counsel to confer with their side

02:11:56 20    and develop or make some suggestions to me on agenda items.  It

02:12:01 21    doesn't mean that that's the only matters that I will discuss, but

02:12:07 22    at that point I just need two people to get together and work on an

02:12:16 23    agenda.

02:12:17 24          In addition to the liaison counsel, I intend to appoint

02:12:23 25    committees, a Plaintiff Steering Committee and a Defendant Steering

02:12:29  1   Committee.  From the Defendant Steering Committee, I would expect

02:12:34  2   that the parties would be represented who are involved in

02:12:41  3   litigation on that committee, and that would be the committee that

02:12:50  4   will deal with the nitty-gritty of the case; that is to say, to

02:12:55  5   work on the material.

02:12:58  6       So in that I'll look to the defendants to get together

02:13:04  7   and make recommendations to me, and if the recommendations are made

02:13:09  8   and everybody agrees to it, I will adopt those recommendations and

02:13:13  9   I will put that in an order.

02:13:14  10      With the Plaintiff Steering Committee, there are

02:13:19  11  different issues involved.  The Defendant Steering Committee, these

02:13:34  12  individuals are generally retained by their respective parties and

02:13:39  13  they are compensated by their respective parties and do the work

02:13:46  14  and represent their respective interests.

02:13:51  15      The plaintiffs committee is a little bit more involved,

02:14:03  16  and I say this at the outset that so that at least you'll know my

02:14:11  17  thinking.  One problem that I share with you from the Plaintiff

02:14:19  18  Steering Committees, that I haven't necessarily had, but I know my

02:14:22  19  colleagues throughout the country who do MDL work have had, and

02:14:27  20  it's something that you need to know about because it's creating a

02:14:34  21  potential problem.  People apply to be on the Plaintiff Steering

02:14:41  22  Committee, they submit the applications, and the court then

02:14:46  23  appoints a committee, looks at the applications and selects people

02:14:53  24  who add their interest and experience and, frankly, the resources

02:14:58  25  to carry out the job.

02:15:03  1        Now I know about no one here that does this, but I am

02:15:06  2   told once that committee is organized, occasionally individuals who

02:15:14  3   have been appointed because of their experience hire other people

02:15:18  4   to do their work and they go about getting on another committee so

02:15:25  5   that they can deal with that particular case, too.

02:15:32  6        And it's a difficult situation, I will be appointing a

02:15:37  7   plaintiffs committee but I am going to appoint the plaintiffs

02:15:40  8   committee for a term.  There will be no term limits, but I am going

02:15:52  9   to appoint a Plaintiff Steering Committee for one year.  At the end

02:15:52 10   of that year, I urge the people who are on the committee to

02:15:54 11   reapply.  And when you reapply, let me know on your application

02:16:00 12   what you've done, how many hours you've logged, how much expense

02:16:07 13   you've incurred, and that will help me in making the decision

02:16:15 14   whether or not to reappoint you for another year.  And hopefully

02:16:20 15   we'll move the case in an effective and efficient manner.

02:16:26 16        Also, in a case like this, there are many, many issues

02:16:31 17   that need to be addressed.  The Plaintiff Steering Committee is not

02:16:37 18   going to be able to address them all, and I am going to look to

02:16:45 19   them for recommendation for other committees and insist on the fact

02:16:47 20   that anyone who is interested in working from the plaintiffs'

02:16:54 21   standpoint be eligible and that they pick an area in which they

02:16:57 22   wish to work whether or not they're on a committee.  That doesn't

02:17:03 23   mean they won't even become chair of that committee.

02:17:11 24        Anybody who is interested in working, I urge you to join

02:17:15 25   a committee and work and you can become chair or be chair of that

02:17:19  1    committee, whether or not you're on the Plaintiffs Steering

02:17:24  2    Committee; and your work and effort will be recognized in common

02:17:28  3    benefit and your expenses, approved expenses, (I've appointed a CPA

02:17:34  4    to work on this matter) will be dealt with and he'll talk with us

02:17:41  5    later about that.

02:17:46  6         Another thing that I tried to do in the first order was

02:17:52  7    to deal with filing.  In a case such as this, I try to give you

02:18:01  8    some suggested method of filing, headings.  If you look at my

02:18:08  9    Pre-Trial Order No. 1, we talk about the filing of the case and how

02:18:15 10    you file it and matters of that sort, it's paragraph nine.

02:18:23 11         Also I remind you that we have electronic filing here, so

02:18:26 12    after the first pleading, all pleadings need to be filed

02:18:32 13    electronically.

02:18:35 14         I believe in meetings.  I am going to have open meetings

02:18:44 15    in court at least once a month.  Those of you who may find it

02:18:50 16    difficult to come, I'll post a telephone number and we have

02:18:56 17    facilities for you to call in.  I am not going to be able to invite

02:19:00 18    you to speak because it's not unusual for me to have 100 people on

02:19:08 19    the phone in these meetings and I can't deal with that if everybody

02:19:12 20    speaks.  But you can monitor, if you can't make the meeting for

02:19:22 21    some reason or because of expense you would rather not come, then I

02:19:23 22    understand and you can tune in.

02:19:24 23         All of the meetings will be transcribed.  The transcript

02:19:30 24    will be posted on the web site.  Everything will be posted on the

02:19:34 25    web site.  All of the agenda items, all of my orders, all of my

02:19:39  1    opinions, and I will endeavor to post those.

02:19:44  2            I do try to do my discovery, so if you have any issues of

02:19:50  3    discovery, I'll be dealing with them.  Whenever possible I do it

02:19:55  4    without paper, so if you have an issue and you wish to present it

02:20:00  5    to the court, you can do so either with a letter and I'll invite

02:20:04  6    the response; or if not, we'll do it orally.  But in any event,

02:20:11  7    I'll get you on the phone with a court reporter, I'll hear your

02:20:14  8    argument, and I'll make the decision immediately so we can move on.

02:20:19  9            In this particular matter I will in addition to the

02:20:27 10    meetings of open court, this type meeting at which I will hear

02:20:34 11    reports and make some decisions on where we go for the next

02:20:41 12    meeting, what we do for the next meeting, I'll be meeting with the

02:20:45 13    committees, liaison counsel, and whoever else I need to meet with

02:20:51 14    in-between that period of time.  We will have more meetings

02:20:54 15    initially for the next month or so than probably after that, but

02:20:58 16    every month I will have an open meeting so that we can look at the

02:21:02 17    case again.

02:21:04 18            As I see this case, at the present time, I've only had it

02:21:10 19    for a couple of weeks, but at the present time I see that it's

02:21:16 20    probably going to be necessary to group cases.  But if we look at

02:21:21 21    it from the standpoint of the universe, the groupings, two

02:21:26 22    groupings come to mind:  One is property damage claims only; and,

02:21:34 23    two, personal injury claims, either only or with property damage.

02:21:39 24            The personal injury claims are probably going to take a

02:21:42 25    little longer to resolve because there may be diagnosis problems,

issues, there are Daubert issues, causation issues, preexisting issues, expert issues, and those matters may take a little longer to get to. I hope to begin trying those within a year, but I think we can do better than that with the property damage.

The property damage cases, it seems to me, ought to be able to be dealt with on a faster track. I think that for those cases we ought to be able to at least begin trials within six months, and that's what I'm going to be looking to you to do.

I'll talk a little bit more later about my thinking on conducting bellwether cases and how we go about selecting cases and beginning the trials.

In a matter of this sort, at present I have two liaison counsel that will have the responsibility presently of serving everything. I am only going to serve two people, they have to serve the hundreds or thousands of people who are involved in this case. Now that presents a problem, obviously logistically, so we need to know your names and your addresses and some basic information, and I've prepared a form for you, and we'll have it available, it gives your name and your address and how you can be served. And I'll have them up here and I would hope that you would fill it out and leave it with us before you leave, and that will ensure that you get proper service.

But in the long-term, I have encouraged liaison to think about an outside provider to supply the necessary service, and I've invited LexisNexis to come and to make their presentation. Liaison

02:24:18  1    counsel for both sides have met with them, and I'll ask liaison

02:24:25  2    counsel at this time to give me some read as to what decisions, if

02:24:29  3    any, have been made.  Kerry, do you want to start?

02:24:33  4          MR. MILLER:  Sure, your Honor.  We had a meeting of the

02:24:39  5    defense counsel who are here at my office prior to this hearing,

02:24:42  6    and in connection with that meeting we invited the LexisNexis

02:24:47  7    representatives to come over and they gave their presentation.

02:24:50  8    Based upon what I observed in the meeting and the feedback I got

02:24:54  9    from the other defense counsel, I think the defendants -- and when

02:24:58 10    I say that, I have siting with me the members of the Defense

02:25:02 11    Steering Committee who have submitted an unopposed application to

02:25:04 12    be appointed -- and the feedback I got from that group primarily is

02:25:07 13    that the defense will be fine with using LexisNexis and their file

02:25:12 14    and serve product to go ahead and serve and receive pleadings in

02:25:16 15    the case.

02:25:17 16          THE COURT:  How about the plaintiffs?

02:25:19 17          MR. HERMAN:  May it please the court, yesterday we met

02:25:23 18    with Defense Liaison Counsel, I want to give a particular thanks to

02:25:30 19    the clerk's office, to Lorreta Whyte and Gene Smith who were

02:25:36 20    present and offered invaluable advices.  We met with the

02:25:45 21    representatives of LexisNexis, we negotiated fees that are very

02:25:48 22    reasonable, and we have an agreement as of today with liaison

02:25:57 23    counsel and his group to have LexisNexis act as service.

02:26:04 24          I do need to make one explanation based on your Honor's

02:26:12 25    direction and experience in MDL 1657.  When lawyers file, they have

02:26:20  1    to use the electronic system with the clerk but they're also going

02:26:25  2    to have to get a specific number and register with LexisNexis.  You

02:26:31  3    can't file an official pleading with LexisNexis, it has to be filed

02:26:36  4    with the clerk's office.  But you also are going to need to

02:26:40  5    register with LexisNexis.

02:26:42  6         And we believe that this system will work very well, your

02:26:46  7    Honor.  It's also cost-effective.

02:26:49  8         THE COURT:  All right.  When something is filed with the

02:26:51  9    court, the clerk's office will notify the liaison counsel, but the

02:26:59 10    liaison counsel are the only ones that will be served by the

02:27:02 11    clerk's office.  LexisNexis, when they get the pleading, they will

02:27:08 12    hit the button and everybody will get it, whoever is registered

02:27:12 13    will get something from them so they can keep up to it that way.

02:27:20 14         I mentioned putting the property damage cases on the fast

02:27:24 15    track.  Part of that is going to require cooperation from both

02:27:30 16    sides with regard to compiling a plaintiff fact sheet, defendant

02:27:36 17    fact sheets, immediate inspection protocol, and developing a

02:27:46 18    protocol for preserving any evidence that has been gathered, and

02:27:56 19    also we have to deal with those instances that require immediate

02:28:01 20    remediation.

02:28:03 21         So I am going to look to the parties to work that out.

02:28:07 22    I've instructed them to begin, liaison counsel to begin drawing

02:28:12 23    together their fact sheets.  I would hope to have those finished by

02:28:18 24    tomorrow and inspection protocol by the next three or four days.

02:28:22 25    Let me hear from the parties on that.

02:28:24  1           MR. MILLER:  Your Honor, we appreciate your comments

02:28:33  2      about trying to get this litigation organized and we think it's a

02:28:37  3      good outline of a plan to bring some order to what is obviously

02:28:40  4      going be to a very large and complex matter.

02:28:43  5           The defendants have been working on the plaintiff fact

02:28:47  6      sheet, your Honor, and we're hopeful to be able to get something to

02:28:50  7      the plaintiffs and to the court in the next couple of days on that.

02:28:52  8      We have a draft and where we're at right now, we worked on it a

02:28:56  9      little bit this morning, the defendants in this case, there are

02:29:04  10     essentially four different layers of defendant:  Manufacturer,

02:29:04  11     supplier, building contractor and installer.  While no installers

02:29:09  12     are yet in the case, we think they may be.

02:29:11  13          But at any rate, the other three layers are working on

02:29:15  14     the sections on the plaintiff fact sheet.  We think the sheet can

02:29:19  15     be two pages or less, your Honor, be really summary and get down to

02:29:22  16     the business of trying to organize and categorize what we're

02:29:25  17     dealing with.

02:29:26  18          By the same token we will work with the court and with

02:29:30  19     liaison counsel and Plaintiff Steering Committee, when that is

02:29:34  20     confected, on the creation or submission of joint inspection

02:29:37  21     protocols identifying potential inspectors so that we can get that

02:29:42  22     process underway soon, your Honor.

02:29:44  23          THE COURT:  All right.  With regard to the fact sheets, I

02:29:48  24     reinforce this that this is not in lieu of discovery and it's not

02:29:52  25     going to cut you off of discovery, it's not going to nail you down

02:29:56 1   into a particular fact pattern or anything of that sort.  The fact

02:30:01 2   sheets, the purpose of the fact sheets, we need to know things that

02:30:07 3   are very basic so that inspections can begin.

02:30:11 4         I really want to get the inspections conducted.  I would

02:30:14 5   hope to get the inspections started and completed within the month.

02:30:18 6   We ought to be able to do that.  Now that's going to require teams

02:30:23 7   of inspectors, you're not going to have one inspector going around

02:30:26 8   the country working 24 hours a day inspecting property.  But you

02:30:32 9   should be able to get teams of inspectors and be able to accomplish

02:30:36 10  this.

02:30:38 11        I think it's important, first of all, from the standpoint

02:30:42 12  of I think from the defendant's standpoint, they ought to know

02:30:45 13  whether or not it's their drywall or whose drywall it is or what

02:30:49 14  the problem is.  From the plaintiffs' standpoint they need to know

02:30:54 15  also.

02:30:54 16        So we need to be able to do the inspections quickly and

02:30:58 17  find out how much potentially problematic drywall there is in the

02:31:05 18  house or in the building and who owned the drywall, if it is so

02:31:10 19  marked.  That's a key part of it.  Some of the other aspects of the

02:31:15 20  air monitoring and things of that sort, it's a little nuance but

02:31:21 21  that may have to go along with it but it may have to follow, maybe

02:31:26 22  it's the next day or following day or whatever it is, it's not

02:31:30 23  going to stop that moving but we have to do some identification and

02:31:35 24  inspections immediately.

02:31:36 25        MR. MILLER:  Yes, your Honor.  On that note, I guess the

02:31:39 1   Defense Steering Committee is a little bit at an advantage in that

02:31:47 2   we have a committee ready, willing and able to get to work, we are

02:31:47 3   going to mobilize and do that.

02:31:48 4        Later on in the agenda I am going to have one of the

02:31:50 5   committee members from Florida speak about a particular Florida

02:31:54 6   law, 5:58 is the statute number, that relates to inspections under

02:31:59 7   Florida law, and we are going to see if we can try and integrate

02:32:02 8   those concepts along with the inspections we are going to be doing

02:32:06 9   in this MDL proceeding.

02:32:07 10       THE COURT:  Let me hear from the plaintiff on those

02:32:09 11  issues.

02:32:12 12       MR. HERMAN:  Judge Fallon, we've had two meetings with

02:32:16 13  Defense Liaison Counsel on inspection protocols and fact sheets.

02:32:25 14  What we expect from plaintiff liaison's point of vantage is to

02:32:32 15  provide a defense fact sheet, an agreed plaintiff fact sheet, a

02:32:39 16  joint inspection protocol, a group of experts acceptable to

02:32:47 17  plaintiffs to make inspections along with their resumes, and if

02:32:53 18  necessary, very early Frye or Daubert hearings so that we will have

02:33:01 19  not only inspectors from the plaintiffs' side but we will know that

02:33:06 20  whatever these inspectors are able to determine will be

02:33:11 21  satisfactory for trial testimony and deposition testimony.

02:33:16 22       Being an attorney who is often in error but never in

02:33:20 23  doubt, I would expect to have these things accomplished within two

02:33:24 24  weeks.  And at the time a Plaintiff Steering Committee is chosen by

02:33:30 25  your Honor, hopefully we will have done our work well enough, we

02:33:34  1  will have gotten enough input from plaintiff firms that all of

02:33:39  2  those issues can be ratified by your Plaintiff Steering Committee

02:33:45  3  and we're prepared to move on.

02:33:49  4          We understand from plaintiff Florida counsel the problems

02:33:54  5  associated with 5:58.  There are some peculiar laws that apply in

02:34:01  6  each state.  We reserve that to provide your Honor with discrete

02:34:09  7  issues at some future time.

02:34:11  8          In sum, your Honor, we expect to have all of the matters

02:34:18  9  that you directed resolved in a short period of time.  I would

02:34:27  10 expect, your Honor, that the inspections, today is July 9, I would

02:34:34  11 expect that by August 30 we will be well on our way with

02:34:40  12 substantial inspections.  It is my hope that the plaintiff

02:34:48  13 attorneys, firms that have communicated with me that they have

02:34:51  14 already undergone inspections.  We will submit their properties,

02:34:55  15 and particularly those where there are hardship issues, to be put

02:35:01  16 on a line for immediate inspection.  Those with property damage

02:35:09  17 only and which constitute a hardship.

02:35:13  18          THE COURT:  Okay.  Just a couple of comments on that.

02:35:20  19 First, with regard to the experts, you need to let me know both

02:35:21  20 sides whether or not you wish me to do a 706 experts meeting, I can

02:35:28  21 adopt yours and make them the court's or I can appoint my own.  I

02:35:34  22 would rather not appoint my own, but that's a potential that at

02:35:39  23 least you have to think about.

02:35:41  24          With regard to the state courts -- anybody that has that

02:35:49  25 will they please turn it off.  Thank you.

02:35:53  1          I've been in touch with the state courts, I am going to

02:35:56  2   try the best I can to coordinate with the state litigation.  I

02:36:01  3   understand that Florida is a <u>Frye</u> jurisdiction.  When we begin our

02:36:06  4   <u>Daubert</u> hearings, I hope to have the state judges here with me who

02:36:13  5   can participate, we'll do the <u>Daubert</u> and <u>Frye</u> together.  We will

02:36:15  6   do those proceedings hopefully at one time and anybody, any judge

02:36:21  7   who has a different law will ask the questions that is appropriate

02:36:25  8   to their particular law and then issue whatever they need to issue

02:36:33  9   from their vantage point.  But hopefully we can do those

02:36:37 10   qualifications, basic qualifications, basic experts at one time

02:36:46 11   rather than just doing longer more than once.

02:36:53 12          I have already forwarded my orders to state judges so

02:37:03 13   that they can at least see what we've done, and I've offered

02:37:13 14   whatever modest amount that we can give to them, I've offered to do

02:37:18 15   so.

02:37:21 16          In cases of this sort, many cases need to be filed and

02:37:28 17   occasionally there is a logistic problem in filing cases.  You may

02:37:36 18   think it more advantageous -- and I am not suggesting you do or you

02:37:42 19   don't -- but it's possible that you may feel that cases are similar

02:37:47 20   and they should be joined.  If you do, proceed that way.  Please

02:37:54 21   give us an alphabetical list of cases so that we can find them and

02:38:01 22   they will be docketed in a joint fashion.  And I'll treat them

02:38:07 23   later if that becomes problematic, I'll deal with it.

02:38:11 24          The one issue, on No. 6 now, one issue is preservation of

02:38:23 25   evidence, spoliation issues, and we talked a little bit about

02:38:27 1   remediation.  With regard to some of the property issues, it's

02:38:34 2   early to put this in the mix, but when we're dealing with property

02:38:42 3   damage claims, it may be faster to flip it and deal with damage

02:38:54 4   rather than liability and let the jury determine damages and then

02:39:01 5   deal with liability later.  I don't know whether it is or it isn't,

02:39:09 6   but at least that's a potential in the mix.  I don't see any

02:39:16 7   problem with that, but that's something at least to think about.

02:39:22 8       The preservation of evidence issues, that's something

02:39:27 9   that you need to be conscience of.  I would like to make sure that

02:39:34 10  if the evidence is collected it is available both to state and

02:39:38 11  federal courts, so I will also invite the judges to have some input

02:39:46 12  on the evidence and where it is stored and how it is kept so that

02:39:51 13  any chain will be satisfied from their standpoint.

02:39:58 14      No. 7 is direct filing in the MDL.  For those of you who

02:40:04 15  have done MDL work, you know the method of filing in an MDL is to

02:40:09 16  file in your state federal court.  The MDL Panel says that they

02:40:18 17  think there will be about 17 states involved in this process, maybe

02:40:22 18  more, but at least.  And oftentimes the cases are filed in federal

02:40:28 19  court in that particular state and then it is forwarded to or

02:40:34 20  directed by the MDL to this court.  It takes about two months to do

02:40:42 21  that, occasionally longer if there is a problem, and that can hold

02:40:49 22  you up if you don't watch that aspect of the case.

02:40:56 23      What I have done in the past is to permit filing directly

02:40:59 24  into the MDL.  That shortens the process, you get here immediately

02:41:07 25  and you can get on the train or get on the wagon or whatever it is

02:41:12  1    immediately.

02:41:16  2          It can only be done, however, with some cooperation

02:41:20  3    between the parties.  The defendants in essence have to waive venue

02:41:27  4    because I don't have venue, I have jurisdiction but I don't have

02:41:29  5    venue in a case that happened in Arizona or in Texas or in Florida,

02:41:36  6    but I do have jurisdiction and I will get it eventually.  But the

02:41:44  7    way it's done in the past is for defendants to waive venue but

02:41:48  8    maintain all of their other defenses.  And the fact that it's filed

02:41:54  9    here if it's from Florida and I try it here, I would be trying

02:41:59 10    under Florida law or Mississippi law or Texas law or something of

02:42:02 11    that sort.  But it would give me -- it can be filed directly.

02:42:07 12          I can't do that by decree, it needs to be done by some

02:42:14 13    stipulation of the parties.  It's been done in the past by me, as

02:42:20 14    well as I think some other folks, and it works.  But that's the way

02:42:32 15    it has to be done.

02:42:32 16          Adding additional parties is something that the parties

02:42:32 17    wanted to take up.  Anything from liaison on that?

02:42:37 18          MR. MILLER:  Again, just briefly, your Honor, on the

02:42:42 19    issue of adding additional parties.  A couple of considerations:

02:42:47 20    No. 1, I understand from plaintiff liaison counsel and some other

02:42:54 21    plaintiff lawyers that there may be an attempt to add homeowner

02:42:59 22    insurers and insurers of various defendants to the case.  We are

02:43:03 23    going to make sure that the fact sheets have lines for that

02:43:07 24    information because the idea would be to go ahead and add them

02:43:11 25    sooner rather than later.  If they're subject to a separate track

02:43:14   1   then so be it, we can deal with it later down the road, but we

02:43:18   2   think they should be add sooner rather than later.

02:43:20   3        Secondly, your Honor, during the product identification

02:43:24   4   process, at least for the property claims, we know from the review

02:43:27   5   of the cases that have been filed -- and I think we've looked at

02:43:30   6   about 270 separate cases, that were either supplied by the

02:43:35   7   defendants or the plaintiffs that have been filed -- we know that

02:43:39   8   there are some defendants missing that will likely be implicated

02:43:45   9   either during the fact sheet process when plaintiffs look at their

02:43:48  10   records and figure out who built their homes or who supplied their

02:43:53  11   drywall or what label or tag is on the Sheetrock in their house,

02:43:57  12   certainly during the inspection process we anticipate additional

02:44:03  13   manufacturers, suppliers and builders will come to the floor.

02:44:05  14        What we need to be careful about is that what we do

02:44:08  15   between now and the time that these parties are added to the

02:44:12  16   litigation, we don't have to redo.  So I think we all need to be

02:44:16  17   mindful of being efficient and streamlined and smart on those

02:44:21  18   issues.

02:44:24  19        MR. HERMAN:  May it please the court, to date, as far as

02:44:31  20   I am aware, there are only four manufacturers that have yet been

02:44:37  21   identified.  Recently the Los Angeles Times indicated that there

02:44:46  22   are numerous manufacturers of "Chinese drywall".  A number of

02:44:52  23   inspections have indicated that there is only the appellation made

02:44:59  24   in China rather than a direct reference to a manufacturer,

02:45:07  25   particular manufacturer.

02:45:11   1          We have requested from U.S. Customs and from some

02:45:15   2   journalists who are investigating the matter, the names of the

02:45:20   3   other manufacturers such as they know and how they have learned

02:45:27   4   this information.  We would hope to share that with all attorneys

02:45:32   5   who register in the MDL or with LexisNexis so that they will have

02:45:40   6   an opportunity to take a look at inspections they've already made

02:45:43   7   and will be making in order to make sure all of the parties are

02:45:48   8   joined.

02:45:50   9          We also at a luncheon today learned that there are four

02:45:56  10   major suppliers that were not well-known or not known, and we're

02:46:07  11   going to be making efforts to have them properly joined in the

02:46:12  12   federal pleadings.

02:46:14  13          THE COURT:  I suspect that in a grouping such as this

02:46:20  14   where we have 100 or so people in the audience there may well be

02:46:24  15   someone who is associated with or represents someone who has not

02:46:29  16   been named and wishes to be anonymous, and I understand that.  But

02:46:37  17   you need to be aware of the fact that the train is leaving the

02:46:43  18   station, and if you want to participate in the discovery, you

02:46:45  19   better get on it because you're liable to live with the discovery

02:46:49  20   and find that you're stuck with it.

02:46:54  21          I am going to do my very best to give everybody an

02:46:57  22   opportunity, I told you about the web site, you will have an

02:47:00  23   opportunity to know what's going on.  If you take advantage of that

02:47:04  24   opportunity, you're welcome to.  If you don't, you shouldn't be

02:47:10  25   able to say we didn't know what was going on.  So you may be

02:47:13  1    waiving some rights.

02:47:15  2            Also, if the cases are tried in New Orleans and under

02:47:21  3    Louisiana law, we will be asking the jury to make decisions on

02:47:28  4    responsibility and liability.  Whether or not you're in the case

02:47:33  5    your name may be presented to the jury and the jury may find that

02:47:37  6    you're responsible.  It may not mean anything other than for your

02:47:43  7    good will and future sales possibilities, or for that matter it may

02:47:50  8    mean something.

02:47:52  9            And so the fact that you're in doesn't mean that you're

02:47:57 10    liable, the fact that you're in doesn't mean that you'll stay in

02:48:01 11    until the end if you have adequate defenses, if it's not your

02:48:07 12    product, if you had nothing to do with it, then you ought to get in

02:48:11 13    and out as quickly as you can, a revolving door may work for you.

02:48:15 14    But I suspect that it's not going to be helpful to you to try to

02:48:18 15    ignore the litigation.  We are not going to wait for you and you

02:48:23 16    need to know that if you are here.

02:48:26 17            Master complaint, I think it's efficient in MDLs to try

02:48:37 18    to pull together as quickly as possible a master complaint.  I

02:48:40 19    don't think it's able to done this week or next week because we

02:48:43 20    need more information, you need more claims, theories of liability,

02:48:56 21    defenses, and things of that sort so that you don't need to

02:48:56 22    constantly amend that master complaint.  But I think it's helpful

02:49:00 23    to have and I expect that one will be forth coming as quickly as is

02:49:08 24    reasonable.

02:49:11 25            Anything other than that from liaison counsel?

02:49:14  1                MR. HERMAN:  No, your Honor.

02:49:19  2                THE COURT:  Service on foreign defendants, anything from

02:49:23  3      plaintiff or defendants on that?

02:49:26  4                MR. HERMAN:  No, your Honor.

02:49:31  5                THE COURT:  Okay.  The issues in service in cases

02:49:37  6      involving a foreign defendant presents some challenges occasionally

02:49:45  7      because the service oftentimes, as we know, in maritime matters is

02:49:49  8      done by the Haig Convention.  Unfortunately, costs have increased

02:49:55  9      in that aspect of the case and it's rather hefty now.  It wasn't

02:50:03 10      that hefty in the "old days," but it is now.  I recognize that.

02:50:11 11                But also that presents a problem, not only from the

02:50:15 12      standpoint of plaintiffs, but it can also present a problem from

02:50:19 13      the standpoint of defendants.  If it's too expensive to have a

02:50:31 14      plaintiff serve a defendant, the plaintiff may simply sue someone

02:50:36 15      else and have that someone else sue and serve the defendant.

02:50:41 16                The difficulty with that is that if it's a third-party

02:50:45 17      intervention or third-party complaint or something of that sort,

02:50:51 18      that conceivably can be delayed until after a judgment.  So that

02:50:58 19      can present problems from the standpoint of the defendant putting

02:51:02 20      off their issues for years and keeping it unresolved.

02:51:10 21                So the point that I make is that it may advantage us for

02:51:16 22      both sides to get over this service hurdle, if it is indeed a

02:51:21 23      hurdle.

02:51:21 24                I talked about the bellwether trials.  What my thinking

02:51:28 25      is from the standpoint of bellwether trials, and this is just early

02:51:33  1    on, and I want to be able to simply write this in pencil because as

02:51:39  2    times change it may have to be erased and refashioned.  But my

02:51:46  3    thought at this time is that I would like to give each side an

02:51:51  4    opportunity to pick ten cases and look at the cases closely and

02:52:00  5    then come up with five for each side.

02:52:05  6          And I say pick ten cases because you need to do some

02:52:09  7    initial discovery on those cases to see whether or not what you

02:52:14  8    thought they were they really are.  And oftentimes when you pick a

02:52:19  9    case for bellwether and you get into it, you say, my God, I

02:52:23  10   shouldn't have picked that case, I should have picked another case.

02:52:26  11   And that's just the way of the world.  So I suggest that each side

02:52:36  12   pick ten, then come down to five.  I'll give each side two strikes,

02:52:39  13   so we'll come up with six.  We'll try five cases, one will be a

02:52:44  14   swing in the event one of the five fall by the way side.  I would

02:52:51  15   hope we would be able to move those, as I say, rather quickly.

02:53:00  16         The federal/state coordination I've talked about.  One

02:53:08  17   issue that I do want to cover at this time is the plaintiff time

02:53:15  18   billing guidelines.  I've appointed Phil Garrett to be the CPA

02:53:23  19   expert in this particular case.  I am serious about saying that

02:53:26  20   anybody who wishes to work from the plaintiff's standpoint, they

02:53:33  21   have an opportunity to do so but you need to be conscious of what

02:53:37  22   you need to do to log your time or your billing or your costs,

02:53:43  23   which may entitle you to some common benefit work.

02:53:49  24         Phil, why don't you discuss that briefly with us.

02:53:51  25         MR. GARRETT:  Thank you, your Honor.  What we've done is

02:53:54  1    we've prepared some slides, your Honor, just to show the mechanics

02:53:57  2    of what goes on.  You will be issuing the actual rules of how of

02:54:03  3    what time and what expenses can be submitted.  But what we're going

02:54:07  4    to do is actually put some guidelines up today because we want

02:54:11  5    everybody to be aware that it is a big job to report the time and

02:54:15  6    expenses and a lot of people are used to only reporting the time

02:54:18  7    and expenses toward the end of the case, and we will talk about

02:54:20  8    that.

02:54:23  9            First thing we have to do is gather the time and cost

02:54:26 10    information.  One of the things your Honor would like to have done

02:54:29 11    is to have all of the time and costs submitted on a monthly basis

02:54:33 12    rather than accumulating for six months or a year or longer, we

02:54:36 13    want to have this done so we can submit it on a monthly basis.  If

02:54:39 14    the people who are doing common benefit time and common benefit

02:54:42 15    costs would have somebody in their office start organizing this

02:54:47 16    stuff on a monthly basis, after two or three months, a system will

02:54:51 17    be there, they can submit it on a monthly basis, it will be

02:54:55 18    electronic and it will flow very smoothly.

02:54:57 19            When we organize the time, you know, you're going to have

02:55:02 20    your own time system that's going to accumulate all of the hours

02:55:05 21    that were for common benefit on this particular MDL, but that time

02:55:10 22    has to be by quarter hours, it has to conform with the pretrial

02:55:14 23    orders -- which means it has to have a summary if you're dealing

02:55:22 24    with a particular timekeeper.  We only want to see that

02:55:23 25    timekeeper's totals, but we want to have behind that all of the

02:55:24   1   backup that shows it was kept contemporaneously.

02:55:27   2          If we're organizing expenses, we need the list of

02:55:30   3   expenses; but more than that, we also need the receipts for the

02:55:33   4   expenses.  If you're flying first class from here to Houston and

02:55:37   5   the pretrial order says that you can only be allowed coach airfare,

02:55:41   6   we need a document that shows us what is the coach airfare.  So the

02:55:47   7   pretrial order guidelines are going to be issued or have been

02:55:51   8   issued, and they must be adhered to and then you must take your

02:55:55   9   information and then fit it into those.

02:55:57  10          Once you've gotten your information together, we have a

02:56:00  11   web site now that you will be able to dial into and post into that

02:56:05  12   the case cost management.  You will be able to upload -- hopefully

02:56:10  13   you will be filing this stuff electronically so it will be Adobe

02:56:14  14   files, you'll be uploading with their indexes.  And then the web

02:56:17  15   site will allow you to go back in and see if any of those costs

02:56:21  16   have been rejected or what submissions you all have actually

02:56:23  17   submitted in the past.

02:56:25  18          So the first thing you really have to do is get somebody

02:56:28  19   in your office who is going to gather the cost and time

02:56:32  20   information.  The requirement is going to be 15 days after the end

02:56:34  21   of the month; and after six months, if you have not filed the

02:56:38  22   stuff, you're going to be barred from filing.  So if we're dealing

02:56:42  23   with the month of September, you can file September hopefully by

02:56:45  24   October 15th.  Then November, then December, then January, then

02:56:50  25   February, but after March on April 1st, you will not be allowed to

02:56:54  1    file for that September 2009 time any longer.

02:56:58  2            So we're asking everybody please get these guidelines to

02:57:01  3    your people, let them start submitting it on an electronic basis so

02:57:05  4    they can get used it and it will work well.  The whole thing is you

02:57:09  5    need to start in-house getting this information together.

02:57:13  6            The index becomes very important.  I am a CPA so by

02:57:18  7    nature I grew up doing tax returns from Schwegmann bags.  I don't

02:57:22  8    want your Schwegmann bags on litigation.  If you just pile up all

02:57:27  9    of the information and send it to us in a big PDF file, it's going

02:57:32 10    to take hours and hours for us to reconcile it; and liaison counsel

02:57:42 11    is probably going to tell me to send it back to you.  So please

02:57:42 12    have somebody make up an index, have them do the numbers so each

02:57:43 13    page refers to a particular number.

02:57:45 14            You can see on this sample index I've done here, No. 7 is

02:57:48 15    a private jet for $11,000; No. 8 is first class ticket for $3,600.

02:57:52 16    And it may be important for you to put those numbers into your

02:57:58 17    documentation, but what I really need is the comparable coach

02:58:02 18    airfare, which is 1,500, and you see that column is the column that

02:58:06 19    I will add down.

02:58:07 20            So it's a very simplistic index, but I think it's a real

02:58:11 21    key to saving us a lot of time and to save you all from having a

02:58:16 22    lot of rejections.

02:58:18 23            Once you've organized the stuff and you got the indexes

02:58:21 24    done, you can dial into the Garrett code there, ccms.com, and this

02:58:27 25    will be in the pretrial orders, that will give you a submit expense

02:58:31  1    report.  From there, it's very simple, you just take your index,

02:58:35  2    put in the dollar amounts there.  When you hit submit, it will come

02:58:39  3    up with a signature page where you will have a pin number to either

02:58:42  4    sign electronically or you can print it down and attach it to the

02:58:44  5    documentation.

02:58:45  6         And then you will submit your expenses and it will ask

02:58:47  7    you to upload your file documentation, so all of that will come to

02:58:51  8    us electronically.  You can see you will be able to select the

02:58:54  9    case, if it's a particular trial or one of the bellwether trials or

02:58:58 10    just the MDL in general, you will be able to pick the month and so

02:59:01 11    forth.

02:59:02 12         We think having forms filed electronically we won't be

02:59:04 13    dealing with anymore lost in the mail issues or we didn't get it or

02:59:08 14    whatever, it will all be captured in one web site.

02:59:12 15         The same thing with the time, once you have the

02:59:14 16    information gathered, you can see here we have two attorneys that

02:59:18 17    we are going to ask their hours and we're going to ask for it by

02:59:21 18    certain tabs, case assessment, pretrial pleadings, discovery and so

02:59:25 19    forth.  Along with that you will have to put the documentation that

02:59:30 20    shows the records were kept contemporaneously.

02:59:33 21         By doing this we have everybody, we will comparing apples

02:59:35 22    to apples with everybody in the firm and your Honor can do it.  And

02:59:39 23    so when you submit the time, you will also be uploading your

02:59:42 24    documentation to back that up, too.

02:59:44 25         The good news is, one of the things that will happen in

1   the report, once you've issued your submissions, you will be able

2   to tell what's going on.  This report will be available for each

3   individual firm to see where theirs stands.  You can see on the

4   first one, the first two are MDL generals and we have "to be

5   reviewed" is the status in the far right column.  So we haven't

6   posted those.

7         The one we did post had $5,500 was submitted, $5,500 was

8   approved.  There was one for $9,902 in the fourth column that was

9   submitted that we only approved $8,250 of and $1,652 rejected.

10         The web site will let you go view the summary and go view

11   the documentation so you will be able to see our notes as to what

12   happened.  If you have a problem with what's happened, you're more

13   than welcome to contact us and we can go over it with you.  If

14   there's more information to be submitted, you can submit an

15   additional submission.

16         So you will be able to tell and each one of those columns

17   is sortable by you.  So if you want to know just show me the

18   rejected you can do it.  If you're out of town, you can do this

19   from anywhere that you can get to a web site, 24/7, so there is no

20   reason everybody shouldn't know exactly where they stand.

21         And then you will have the month.  So you can see here

22   they filed time for two months but they filed expenses for four

23   months, so they have some catch up to do get their work up-to-date.

24         So get started, contact the information, I need the

25   contact information sent from the Plaintiff Steering Committee or

03:01:14  1   plaintiff liaison counsel so I will know who to be able to send

03:01:18  2   user names and passwords to and put the group together.

03:01:22  3         Gather the information, organize the time with index,

03:01:25  4   organize the costs with an index, and make sure it complies with

03:01:29  5   the pretrial order.  If it doesn't comply, don't make me reject it,

03:01:32  6   go ahead and just adjust the numbers yourself, send it to us and we

03:01:36  7   will be able to deal with it.

03:01:37  8         Once we get your contact information, we will be sending

03:01:40  9   you a user ID and a password and then you can start entering your

03:01:44 10   information.  You don't have to wait for a particular time.  Once a

03:01:48 11   month is over and you've had time and costs involved, you can go

03:01:52 12   ahead and enter that information then.

03:02:05 13         Thank you, Mr. Herman.  One of the points he was making

03:02:06 14   is that once you have your password and your user name, nobody else

03:02:10 15   will be able to see your information.  So it's not where we're

03:02:13 16   going to have one firm looking at another firm and comparing what

03:02:15 17   they're doing to somebody else.  It will be a totally secure web

03:02:28 18   site, you will have your password.  And if Firm A dials in, they

03:02:28 19   can only look at their stuff and only get reports on their stuff;

03:02:28 20   if Firm B dials in, they can only look at their stuff, they can

03:02:30 21   only look at whatever their information is.

03:02:32 22         Only one that can circumvent that would be your Honor and

03:02:36 23   if he wants, he can go look at anybody's stuff.  But other than

03:02:39 24   that, every firm will be totally independent.

03:02:42 25         MR. HERMAN:  And the defense counsel can't see it either,

03:02:45  1    can they?

03:02:45  2                MR. GARRETT:  Not unless they convince Judge Fallon.

03:02:48  3                THE COURT:  Thank you very much.  And I am going to try

03:02:50  4    to work with the states on this so it will be adopted throughout

03:02:54  5    the country with the states who are handling this also because

03:02:57  6    oftentimes the work is being done in the states and I don't know

03:03:01  7    about it and all of a sudden at the end there's some disagreement

03:03:05  8    as to what was common benefit and what was not common benefit.  So

03:03:09  9    hopefully this will alleviate some of those problems.

03:03:15  10                Other matters, Kerry, you wanted to have other people

03:03:20  11   address the court?

03:03:23  12                MR. MILLER:  May it please the court, your Honor, this is

03:03:27  13   a big case with a lot of issues, there is no doubt about that, I

03:03:31  14   only know some of the issues.  I think it would be a benefit of the

03:03:35  15   court and for the other side, the plaintiffs to hear from a couple

03:03:39  16   of the members of the Defense Steering Committee.  They will

03:03:42  17   provide a little bit more detail on some of the points that we

03:03:44  18   touched upon that I think will be helpful for the court and the

03:03:48  19   plaintiffs to be able to understand it, because it will be part, I

03:03:52  20   think, of the next several steps in the litigation, preservation of

03:03:54  21   evidence, joint inspections, and things that are very important for

03:03:58  22   us to get this thing moving forward and in the right collection

03:04:01  23   direction.

03:04:01  24                So I am going to let them introduce themselves.  They're

03:04:04  25   in the unopposed motion for appointment to the Defense Steering

1    Committee.  They will identify who they represent and discuss some

2    issues.  What we talked about is it will be a five minute

3    presentation by a builder rep and a five minute representation by a

4    supply rep.

5             THE COURT:  Okay.

6             MS. BASS:  Thank you.  May it please the court, my name

7    is Hilarie Bass from Greenberg Traurig in Miami, Florida, and I

8    represent Lennar and U.S. Homes in this case.

9             I appreciate the court giving us just a few moments this

10   afternoon to describe some of the unique things about the home

11   builder position in this case, because in many ways the home

12   builders are actually more aligned with the plaintiffs group than

13   with many of the manufacturer defendants certainly in the defense

14   group.  And the reason why that is is because the home builders

15   perceived they are also victims was of this defective product.

16   Most of the home builders simply hired installers who came in and

17   put up drywall which was unidentified to them and which, of course,

18   they were unaware of any defect.

19             But most importantly, many of the home builders involved

20   in this case are currently spending millions of dollars out of

21   pocket to go in and repair their defective homes, basically taking

22   the drywall down, taking the homeowners out, paying to put them

23   some place else, putting their furniture in storage, taking the

24   home down to the studs, replacing with clean, fresh appropriately

25   non-defective drywall and then putting the homeowner in.  And

03:05:35  1    that's something that we have, for the most part, been doing

03:05:40  2    voluntarily in an effort to stand behind our warranty and to

03:05:43  3    protect our brand.

03:05:44  4          What that also reflects, however, is that there are

03:05:47  5    significant differences in the positions we are likely to take in

03:05:51  6    this litigation with that many of the defendants and certainly the

03:05:54  7    manufacturers.

03:05:55  8          Your Honor noted previously that the home builders had

03:05:58  9    filed a secondary request for additional liaison counsel, just to

03:06:01 10    reflect the fact that there are basic fundamental differences

03:06:04 11    between the position of the home builders in this case and the

03:06:08 12    manufacturers.

03:06:09 13          Certainly as it comes to service, for example, we've

03:06:12 14    already been told by the representative of the manufacturers that

03:06:15 15    it is not their intention to accept service, so that means that

03:06:19 16    each of the other defendants who are involved in cross-claims and

03:06:23 17    of course the plaintiffs as well, are going to be forced to spend

03:06:26 18    15 to $25,000 for each one of these cases to be served to the Haig.

03:06:30 19    Hopefully your Honor's admonition this afternoon may have some

03:06:34 20    impact on that.

03:06:34 21          But even beyond that, we're also aware they're going to

03:06:37 22    be objecting to such things as whether or not this court has the

03:06:40 23    ability to assert personal jurisdiction over them, whether or not

03:06:43 24    there is a basis to bring in German parents of the manufacturers.

03:06:48 25          There are also significant differences regarding our

03:06:51  1    repair protocol.  We've already been told by the manufacturers that

03:06:54  2    they object to the fact that the home builders are out there

03:06:57  3    repairing these homes and that they would like us to try any one of

03:07:01  4    a number of unproven and untested schemes, whether it's air

03:07:05  5    filtration or sealants or various other methodologies, none of

03:07:09  6    which have proved effective to us to protect our homeowners from

03:07:14  7    the problems emanating from this drywall.  So we have chosen to go

03:07:22  8    in and repair, and the only way that we know how replacement of the

03:07:22  9    drywall.  But again, another fundamental difference in the

03:07:25 10    positions that will be taken by the manufacturers and the home

03:07:27 11    builders.

03:07:28 12           And of course lastly, we would hope that whatever

03:07:33 13    resolution comes out of this MDL case, whether it's by your honor

03:07:39 14    or by a jury, whatever defendants are in the room are going to

03:07:41 15    stand behind any judgment tendered.  Unfortunately, we do not have

03:07:44 16    any level of confidence that the Chinese manufacturers are prepared

03:07:47 17    to so that.  And, in fact, we've been affirmatively informed that

03:07:49 18    there has never been a U.S. judgment that has ever been paid by any

03:07:53 19    Chinese manufacturer.  Another reason why we are extremely

03:07:56 20    concerned about the Chinese manufacturers in any way representing

03:08:01 21    the rest of the defendant group.

03:08:02 22           It may well be, your Honor, that it when it comes time

03:08:07 23    for you to consider master complaints that it might be appropriate

03:08:10 24    to have a separate master complaint on behalf of the home builders.

03:08:13 25    In fact, Lennar was one of the first drywall complaints filed

anywhere in this country.  We, as a plaintiffs, were the first to
assert claims against the Chinese manufacturers and others in the
supply chain to attempt to recover the damages that we've incurred
by virtue of the millions of dollars we're spending, as we speak,
to repair the defective homes.

There's also a significant issue I wanted to bring to
your Honor's attention today about the preservation of evidence,
that portion of your MDL order that covers that issue.  And I've
had very preliminary conversations with some of the plaintiff
representatives in an effort to reach some agreement on that issue,
and hopefully in the next days we can have those conversations.
But for many of the home builders who have been actively repairing
those homes, we, of course, have been maintaining samples of the
defective drywall as part of what we would expect to be our burden
to use to establish as evidence in any future trial.

The scope of your Honor's, the language in your paragraph
would seem to suggest that we would need to be filling up
warehouses with every piece of drywall, defective appliance, and
the like, that are taken out of remediated homes.  I would hope
that the plaintiffs and the defense group will be able to reach
some resolution in the next week about appropriate contours of what
that order should look like going forward.

THE COURT:  I do urge you to do that and give to me some
suggestions within the week, and then we'll deal with it.  I put
that out initially, but sometimes it has to be tweaked because of

special circumstances.  You know what they are and the plaintiffs
know what they are.  If you can agree on it, I'll deal with it in
that way and that fashion.

MS. BASS:  I would hope we could reach resolution since I
assume the plaintiffs also recognize their burden to maintain this
evidence to prove their portion of the case.

And lastly, I did just want to touch upon, as Mr. Miller
reflected, chapter 5:58, which is relevant for the Florida cases.
And what that statutory scheme provides is that any home builder is
allowed an opportunity to inspect and repair any home which has the
kind of inherent defect reflected by this drywall.  And this is a
very detailed statutory scheme that provides that a court shall
abate any action which is filed by a homeowner where the prior 60
day notice to the home builder has not been previously given.  Once
that notice is given, the home builder does have an absolute right
to go in and make the repairs.

Many of the plaintiffs in the pending cases have not
filed that notice, it's an issue that's being resolved in the state
courts currently with motions to abate saying the statutory scheme
says you may not file until you give us this notice and to the
extent you're currently giving us this notice, we now have an
opportunity to go in, inspect and repair.

That's something that I would hope that we could
incorporate into the inspection protocol to ensure that the home
builders are given the appropriate statutory right to go in and

03:11:09  1    make any repairs and reflected by the inspection.

03:11:12  2         THE COURT:  Yes.  That's again something that you ought

03:11:14  3    to bring to my attention.  If I can issue an order to deal with

03:11:18  4    that, we ought to do it because I think it's to the advantage of

03:11:22  5    the homeowners to get this done.

03:11:25  6         MS. BASS:  And clearly, your Honor, once we brought that

03:11:26  7    to their attention, we had many homeowners who previously filed

03:11:31  8    lawsuits who have come to us and said we would much rather have our

03:11:33  9    home repaired tomorrow and get the statutory protection as well

03:11:36 10    with the release that goes along with it.

03:11:39 11         THE COURT:  Bring that to my attention, and first meet

03:11:42 12    with your counter parts and the plaintiffs or whoever else you need

03:11:47 13    to deal with and bring it to my attention.

03:11:50 14         MS. BASS:  Thank you, your Honor.  Those are the three

03:11:52 15    points that I wanted to bring to your attention this afternoon just

03:11:55 16    to reflect the unique position of home builders in this case.

03:11:58 17         THE COURT:  And before you leave, I can see some

03:12:06 18    uniqueness, for lack of a better term, in your group.  So you have

03:12:13 19    to determine whether you're comfortable with being on the Defendant

03:12:23 20    Steering Committee or whether you need another steering committee

03:12:28 21    or whether you have a subgroup of that steering committee or

03:12:33 22    something.  Maybe it's too early but that's something that you need

03:12:35 23    to focus on.

03:12:36 24         MS. BASS:  I appreciate you giving us that opportunity,

03:12:39 25    your Honor.  We've had a lot of discussion among the home builder

03:12:43  1    group, and I would suspect that there would unanimity that at a
03:12:45  2    minimum we would want to have a separate subgroup of any steering
03:12:48  3    committee.  Thank you, your Honor.
03:12:50  4              THE COURT:  Sure.
03:12:52  5              Anyone else?
03:13:01  6              MR. ATLAS:  Good afternoon, your Honor.  My name is Jan
03:13:04  7    Atlas, I am with Adorno & Yoss, and we represent Banner Supply, one
03:13:06  8    of the principle suppliers.  And we find ourselves, as your Honor
03:13:10  9    is well aware, sort of caught in the middle between the homeowners
03:13:14  10   and the builder/developers and the manufacturers.
03:13:17  11             Your Honor has already addressed many of the issues that
03:13:19  12   we're concerned about and Ms. Bass has also addressed a couple of
03:13:23  13   them.  But most pertinently, for the supplier group that we're
03:13:27  14   involved in, we have certain rights and defenses under Florida law,
03:13:31  15   as your Honor understands, that in the process of dealing with the
03:13:37  16   MDL proceeding we want to just ensure that we have an opportunity
03:13:40  17   to address those issues, whether it be in response to the master
03:13:44  18   complaint or discovery issues.
03:13:46  19             But I think many of the issues that we were concerned
03:13:50  20   about, you've already encompassed in your agenda and your
03:13:54  21   treatment.
03:13:54  22             THE COURT:  Let me make it plain that in an MDL we're
03:14:02  23   dealing with the laws of the states, there's not going to be a
03:14:05  24   federal law.  And so if the Florida cases are tried, I will be
03:14:10  25   applying Florida law.  In the Vioxx case, which I had something to

03:14:15   1   do with, we tried a number of those cases, and not one of them was

03:14:21   2   tried under Louisiana law.  And so juries understood the law.  And

03:14:29   3   I will be applying the substantive law of the state in either

03:14:33   4   motions or in trials.  So there's no question about that.

03:14:38   5           MR. ATLAS:  And the only remaining point that I would

03:14:40   6   like to bring to the court's attention, and your Honor has already

03:14:43   7   addressed it with respect to your communications with the state

03:14:46   8   court judges.  As your Honor is probably aware, we are involved in

03:14:50   9   many, many state court actions in Dade County, Miami-Dade County,

03:14:55  10   Broward County, Palm Beach County, and we are in a position where

03:14:59  11   we're going to be subjected to fighting the issue on many, many

03:15:10  12   different fronts.

03:15:11  13           THE COURT:  Right.

03:15:11  14           MR. ATLAS:  To the extent that your Honor is able to

03:15:11  15   involve the state court judges in South Florida, we would be most

03:15:13  16   appreciative.

03:15:14  17           THE COURT:  I think that just makes a lot more sense

03:15:17  18   frankly.  I think that litigation, you ought not to have to do the

03:15:22  19   same thing 50 times, it really ought to be done in a consistent

03:15:28  20   fashion.

03:15:31  21           And my input, at least the response that I had received

03:15:35  22   from the state courts seem to be along those lines.  And I will be

03:15:40  23   looking to them for guidance.  It's not, you know, a one-way

03:15:46  24   street.  I am going to be relying on them, as perhaps they might on

03:15:52  25   me in some minor instances; but hopefully we will be able to work

03:15:56  1   together and work through this.

03:15:59  2          MR. ATLAS:  For that we would be very appreciative.

03:16:01  3   Thank you, your Honor.

03:16:02  4          THE COURT:  And I frankly think it's better for

03:16:04  5   everybody, not only the defendants but the plaintiffs, too.

03:16:06  6          MR. ATLAS:  Thank you.

03:16:08  7          MR. HERMAN:  Your Honor, I think it would be

03:16:10  8   inappropriate for me to reply on behalf of plaintiffs as to special

03:16:15  9   issues at this point.  I want to thank Ms. Bass who represents U.S.

03:16:20  10  Homes and Lennar who had 12 issues organized under three points,

03:16:27  11  we're aware of those issues, we make no response now; and

03:16:30  12  Mr. Altas, who represents Banner Supply, who made three points and

03:16:35  13  we're aware of those.

03:16:37  14         I will state that liaison counsel is available and has

03:16:42  15  resources and has reached out to counsel in the various states to

03:16:47  16  attempt to reach some preliminary agreements or stipulations on

03:16:52  17  these issues.

03:16:54  18         I would like in response to your Honor's directive of

03:17:02  19  rapid inspections and rapid trials suggest to the plaintiff counsel

03:17:11  20  that we would hope to have on the plaintiff side inspections done

03:17:14  21  by August 30th, case selection in September with discovery complete

03:17:21  22  by October, pretrial orders as your Honor has directed in November,

03:17:26  23  and trials in December and January.

03:17:28  24         I know it's ambitious, but I know that this is, the

03:17:34  25  rapidity with which your Honor has considered this matter and on

03:17:41  1   behalf of plaintiffs assembled here, we appreciate the fast

03:17:46  2   tracking.  We know that it's an imposition on the clerk's office,

03:17:52  3   we know it's an imposition on your staff, that you have other

03:17:55  4   matters.  And from the plaintiffs' point of vantage, we intend to

03:17:59  5   do everything possible to accelerate these issues.

03:18:03  6          Lastly, your Honor, after your Honor concludes, I have

03:18:09  7   the forms that defense and plaintiff liaison counsel need filled

03:18:15  8   out, so if the attorneys would stay we will pass these outs.

03:18:22  9          Does your Honor have other business in this courtroom?

03:18:24  10         THE COURT:  No, I don't, not today.

03:18:28  11         Let me just make a couple of comments and then I will

03:18:31  12   hear from anyone else, any other additional issues.

03:18:34  13         This is a matter that I really look to the attorneys to

03:18:39  14   stand tall on.  Looking around the room I have every reason to

03:18:43  15   believe and I certainly know you're capable of it and that you will

03:18:47  16   do it.  The people, whether you're on the plaintiffs or the

03:18:52  17   defendants' side, you have to recognize that the individuals that

03:18:58  18   you're dealing with in these particular cases, whether it's

03:19:02  19   defendant or plaintiff, deserves some fast treatment in this case.

03:19:06  20         From the standpoint of the claimants, many of these

03:19:10  21   individuals have lost everything with the storms, whether it's in

03:19:13  22   Florida, Louisiana, or any other state.  That's the reason they had

03:19:18  23   the material.  They need some closure in their lives.  They get up

03:19:28  24   from one storm and another one knocks them down.  They get up from

03:19:34  25   that and now they're afraid that they're knocked down again.  All

03:19:37  1    of us recognize that.

03:19:38  2          From the standpoint of the defendants, these folks have

03:19:41  3    to get on with their business.  And if they shouldn't be in the

03:19:48  4    litigation because it's not their drywall in certain instances,

03:19:52  5    they ought to know that and get out of that litigation and not have

03:19:57  6    it hanging over their heads for years.  It's not fair to them.  So

03:20:03  7    this is where lawyers come in the picture.  And I really urge you

03:20:09  8    to cooperate, to the extent you can cooperate, and let's get this

03:20:13  9    case resolved as quickly as I know you're capable of and work as

03:20:22 10    much as you can together on it.

03:20:23 11          Anything else that we haven't covered that anyone else in

03:20:27 12    the room feels they ought to bring to my attention?  Danny.

03:20:37 13          MR. BECNEL:  May it please the court, on the inspections,

03:20:41 14    a lot of the lawyers have been doing inspections for the last four

03:20:44 15    or five, six months.  And I am just wondering -- and many instances

03:20:49 16    we're two and three experts at each inspections, toxicology and

03:20:54 17    industrial hygiene and chemistry, et cetera.

03:21:01 18          Does the court want us to redo each one of the houses

03:21:05 19    or --

03:21:06 20          THE COURT:  Well, whatever is appropriate for both sides.

03:21:12 21    I mean, if you've done it and the other side is satisfied with it,

03:21:18 22    then that may be one thing.  If they're not satisfied with it, then

03:21:22 23    they have an opportunity to look at it and deal with it.  I don't

03:21:26 24    know if you necessarily have to do your portion over again, but

03:21:31 25    they have an opportunity to at least look at it.

03:21:32  1        I would hope that the plaintiffs could get together and

03:21:36  2   get the CVs and the reports from all of those experts and then swap

03:21:40  3   them some way along the line, same way with the defendants, so that

03:21:45  4   everybody is on the same page.  I really again need you all to

03:21:49  5   cooperate in this matter.

03:21:51  6        MR. BECNEL:  Judge, one of the things that I think maybe

03:21:55  7   the court might want to do in this, because there are hundreds and

03:21:58  8   hundreds of people that call us up, and they say if I have to pay a

03:22:02  9   big attorneys fee and I have to fix my house and it's going to cost

03:22:06 10   me 100,000 to fix my house, I can't afford to have you represent me

03:22:10 11   and they're just sitting there, they just don't know what to do and

03:22:13 12   lawyers on the plaintiff side don't know what to say or how to try

03:22:17 13   to advise them in that situation.

03:22:21 14        And I would just like to make the court aware of that.

03:22:24 15   And maybe what the court can do, especially when we're dealing with

03:22:28 16   electrical problems and air conditioning problems that are already

03:22:30 17   damaged but are still functioning but are going to fail, when you

03:22:36 18   do the inspection, it might not fail at that time but you give it

03:22:40 19   another two or three months and it will fail.

03:22:42 20        So I think maybe the court might ought to think about

03:22:45 21   some experts it appoints to deal with electrical and air

03:22:49 22   conditioning problems.  Because if the electrical fails and we have

03:22:53 23   a fire, then maybe some of us might feel partially responsible for

03:22:58 24   not requiring the electrical to be repaired.

03:23:02 25        THE COURT:  Well, that's why I said I think I need some

03:23:04  1    input from the lawyers who hopefully can talk about those things.

03:23:09  2    And if you need me to appoint 706 experts, I will do so.

03:23:13  3            The next meeting in this matter, open court meeting will

03:23:18  4    be August the 11th, August the 11th at nine o'clock in this

03:23:24  5    courtroom.  I will meet with liaison counsel and perhaps the

03:23:27  6    steering committees at 8:30 that morning in advance.

03:23:34  7            Well, thank you very much for coming, folks, and thank

03:23:37  8    you for your input, I appreciate it.  The court will stand in

03:23:40  9    recess.

03:23:40 10            THE DEPUTY CLERK:  Everyone rise.

03:23:42 11         (WHEREUPON, THE PROCEEDINGS WERE CONCLUDED.)

03:23:42 12

03:23:42 13                         *  *  *  *  *  *

         14

         15                      REPORTER'S CERTIFICATE

         16

         17      I, Karen A. Ibos, CCR, Official Court Reporter, United States
              District Court, Eastern District of Louisiana, do hereby certify
         18   that the foregoing is a true and correct transcript, to the best of
              my ability and understanding, from the record of the proceedings in
         19   the above-entitled and numbered matter.

         20

         21

         22                    _____
                               Karen A. Ibos, CCR, RPR, CRR
         23                    Official Court Reporter

         24

         25