# EXHIBIT "B"

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
****************************************************************


IN RE:  CHINESE-MANUFACTURED            Docket No. 09-MD-2047
DRYWALL PRODUCTS LIABILITY              New Orleans, Louisiana
                                        Thursday, March 22, 2012


****************************************************************


             TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS
           HEARD BEFORE THE HONORABLE ELDON E. FALLON
                    UNITED STATES DISTRICT JUDGE



APPEARANCES:

FOR THE PLAINTIFF:              HERMAN, HERMAN, KATZ & COTLAR
                                BY:  RUSS M. HERMAN, ESQ.
                                     LEONARD DAVIS, ESQ.
                                820 O'Keefe Avenue
                                New Orleans, LA 70130


                                LEVIN, FISHBEIN, SEDRAN & BERMAN
                                BY:  ARNOLD LEVIN, ESQ.
                                510 Walnut Street, Suite 500
                                Philadelphia, PA 19106


                                BARRIOS, KINGSDORF & CASTEIX
                                BY:  ZACHARY L. WOOL, ESQ.
                                701 Poydras Street, Suite 3650
                                One Shell Square
                                New Orleans, LA 70139


FOR THE DEFENDANT:              FRILOT L.L.C.
                                BY:  KERRY J. MILER, ESQ.
                                Energy Centre - Suite 3700
                                1100 Poydras Street
                                New Orleans, LA 70163-3700
```

```
 1
                                    KAYE, SCHOLER
 2                                  BY:   STEVEN J. GLICKSTEIN, ESQ.
                                    425 Park Ave.
 3                                  New York, NY 10022-3509

 4

 5   FOR HOME BUILDERS LIAISON:     STONE, PIGMAN, WALTHER, WITTMANN
                                    BY:   DOROTHY H. WIMBERLY, ESQ.
 6                                  546 Carondelet St.
                                    New Orleans, LA 70130-3588
 7

 8

 9   Official Court Reporter:       Karen A. Ibos, CCR, RPR, CRR
                                    500 Poydras Street, Room HB-406
10                                  New Orleans, Louisiana 70130
                                    (504) 589-7776
11

12
          Proceedings recorded by mechanical stenography, transcript
13   produced by computer.

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                      P R O C E E D I N G S
 2                     (THURSDAY, MARCH 22, 2012)
 3               (STATUS CONFERENCE AND MOTION PROCEEDINGS)
 4
 5         (OPEN COURT.)
 6              THE COURT:  Good morning, ladies and gentlemen.  Call the
 7    case.
 8              THE DEPUTY CLERK:  MDL No. 2047, in re:  Chinese
 9    Manufactured Drywall Products Liability Litigation.
10              THE COURT:  Counsel make their appearance for the record,
11    please, liaisons.
12              MR. MILLER:  Good morning, your Honor, Kerry Miller on
13    behalf of the Defense Steering Committee and Knauf.
14              MR. HERMAN:  May it please the court, your Honor, Russ
15    Herman for plaintiffs.
16              THE COURT:  We actually have two meetings today, one is
17    our monthly status conference.  I have 250 people on the phone, so
18    please use the microphone if you're going to speak.  That's the
19    first meeting.  And then thereafter I am meeting with the insurers
20    and their insureds to discuss with them other aspects of the case.
21    So we'll take the first meeting first.
22              I've met with liaison counsel, lead counsel in this
23    matter a moment ago, talked with them about the proposed agenda.
24    I'll take it in the order that it's been set up on.
25              First the Pretrial Orders, anything on that?
```

1     MR. HERMAN:  Good morning, your Honor.  There have been
2 two new pretrial orders posted.  Pretrial Order 8B entered March
3 19th regarding appointment of the Plaintiff Steering Committee.
4 Secondly, Pretrial Order 9A entered March 16th, 2012, reporting on
5 common benefit time by state court counsel.
6     We've been notified and the court's been notified that
7 there are a number of state court counsel who feel that they would
8 be entitled to a common benefit fee, Pretrial Order 9A sets out how
9 they may comply.  And both have been posted, as I said, on your
10 Honor's web site.
11     THE COURT:  With regard to the common benefit, what I do,
12 as you know, is that I have appointed early on in this litigation a
13 CPA, court appointed CPA, and set certain guidelines regarding
14 common benefit fees that the parties have to meet and submit to the
15 CPA.
16     I then meet with the CPA every month, he gives me a
17 preliminary account of who has submitted their time records and
18 their costs and things of that nature.  I review them to see
19 whether or not anything stands out that is of concern, and then I
20 file those under seal and we proceed accordingly.
21     So the state court cases oftentimes I am not aware of
22 those, but if they are interested in common benefit fees, I ask
23 them to comply with the requirements that I set forth in the MDL;
24 and I made them specific in this pretrial order, that's what it's
25 all about.

1            Any State Court Settings?
2            MR. HERMAN:  Your Honor, with reference to the State
3  Court Settings, Judge Farina has set trials as indicated at page 4
4  and 5 of your Honor's status conference report, which is posted.
5            In addition to that, cases are set in Galveston and
6  Mobile County, Alabama as indicated in your status conference
7  report at page 5; and Bay Minette, Alabama, and in California at
8  page 6.  All of these cases are posted on your Honor's web site.
9            THE COURT:  Okay.  Anything further?
10           Any Insurance Issues?
11           MR. HERMAN:  No, your Honor.
12           THE COURT:  The Home Builders Fees and Costs.
13           MR. HERMAN:  I believe Ms. Wimberly will address that,
14  your Honor.
15           MS. WIMBERLY:  Yes.  Dorothy Wimberly for the Home
16  Builders Steering Committee.  There is a motion set for hearing
17  following the status conference relating to builders who have not
18  complied with the court's prior fee order.  We have a lot set for
19  after the conference, so I am asking immediately following the
20  conference anyone who is present pursuant to the court's show cause
21  order on that, please come see me and I'll talk to you about your
22  issues, and then we'll ultimately submit to the court a final
23  exhibit which indicates those who have not complied.
24           THE COURT:  Okay.  Fine.  We'll do that then, hopefully
25  we'll finish with that today.

1          State/Federal Coordination, anything on that?
2          MR. WOOL:  Good morning, your Honor, Zachary Wool from
3  Barrios, Kingsdorf & Casteix, with a short report from Ms. Barrios.
4          We have remands current through CTO 25.  Since the last
5  status conference, no CTO's or remands have been filed into the
6  MDL.  All of the state court trial listings as we know them are
7  listed in the joint report.
8          And finally, pursuant to your Honor's order, we
9  circulated Pretrial Orders 9 and 9A to all state court counsel on
10 our database.
11         THE COURT:  Okay.  Fine.  Thank you.
12         Any Omnibus Class Action Complaints, anything on that?
13         MR. HERMAN:  Nothing new, your Honor.
14         THE COURT:  And the Plaintiffs' Motion to Establish
15 Litigation Expense?
16         MR. HERMAN:  Nothing new, your Honor.
17         THE COURT:  Anything on the Pilot Programs, any reports?
18         MR. HERMAN:  Both Kerry is here.  Any report, Steve?
19         MR. GLICKSTEIN:  Only that we are -- oh, excuse me.
20 Steven Glickstein, Kaye Scholer, for the Knauf defendants.
21         Only that the program is continuing to expand.  We have a
22 large number of completed homes, we have a huge number in the
23 pipeline.  We are continuing to accept new applicants into the
24 program and encourage people to call my partner Greg Wallance if
25 they're interested in participating.  We're not waiting for things

```
 1   to become final in order to get moving.
 2              THE COURT:  Okay.  By in large, that program has been
 3   successful.  It's also given the court information which has, I
 4   think, allowed a large picture to be looked at, and I think it's
 5   been very helpful.
 6              Do you want to speak on any other issues while you're up
 7   there?
 8              MR. GLICKSTEIN:  Yes.  Thank you for indulging me, your
 9   Honor.  Mr. Miller and I with your Honor's permission have to leave
10   early.
11              But I was speaking with Minor Pipes about the perspective
12   insurer agreement, and he asked that I clarify a few things about
13   the relationship between the Knauf settlement and the perspective
14   insurer agreement.
15              In particular there seems to be some confusion as to
16   whether builders and installers and their insurers could sit out
17   the perspective insurer agreement because the Knauf settlement is
18   already taking care of things.  And I wanted to bring to the
19   court's attention and all of the people in the courtroom's
20   attention to two provisions in the Knauf settlement that bear on
21   that issue.
22              The first is paragraph 2.1 of the Knauf settlement, which
23   I will read.  It says:  "It shall be a condition precedent to the
24   Knauf defendants and the PSC's obligations under this settlement
25   that the perspective insurer agreement be finalized in a form
```

1  satisfactory to the PSC and the Knauf defendants."  And so both the
2  Knauf defendants and the PSC have the right to not go forward with
3  the settlement if there is not satisfactory participation by the
4  builders and installers.
5           The insurer agreement, the builder installer agreement is
6  built into and is part and parcel of the Knauf settlement.  It
7  enhances the Knauf settlement, more money will be going into the
8  loss fund to cover economic loss claims and people who think that
9  they have personal injury claims.  And so that is an important
10 component, not only to Knauf but to plaintiffs when they're
11 considering whether or not to participate.
12          In addition, Mr. Pipes asked, you know, whether --
13 suggested that some builders and installers thought that in lieu of
14 participation that the money could come from Knauf.  And again,
15 going to Section 2.1, I am reading, it says:  "The satisfactory
16 perspective insurer agreement has to include a release by the
17 insurers and their insureds of the Knauf defendants."
18          And then finally, I'd like to bring to everyone's
19 attention Section 1.12 of the agreement, which is the defined term
20 for an excluded releasee.  And an excluded releasee is a person or
21 entity that was eligible to participate in the perspective insurer
22 agreement but who does not.  And the release of the supply chain
23 defendants in the Knauf settlement will not include excluded
24 releasees.  And so if you don't participate, first, the whole
25 infrastructure may come tumbling down, because both the PSC and the

1  Knauf defendants have the right then not to participate.
2              And if we elect to go forward, then excluded releasees
3  are going to be hanging out there on their own and those claims are
4  not released against them.
5              THE COURT:  All right.  PSC.
6              MR. LEVIN:  I might as well address this briefly.  Arnold
7  Levin.
8              Mr. Glicktstein has read the agreement correctly, and it
9  is what it says and they were conditions of the settlement.  We
10 view, as PSC, the insurance settlement as our offer for the
11 insurers to make an offer; and as soon as we determine what's on
12 the table, we will meet and speak with Mr. Pipes right away as to
13 our views on the settlement.  I can assure the court that from what
14 we know it's moving properly and Mr. Pipes is doing one good job.
15             I want to assure everybody, the builders, that if they
16 choose not to go in and we would have accepted their settlement, or
17 even if we wouldn't, we intend to pursue those builders outside of
18 the insurance settlement.  There will be no free rides here.
19             Thank you, your Honor.
20             THE COURT:  Okay.  Thank you.  The next item is --
21             MR. GLICKSTEIN:  May we be excused?
22             THE COURT:  Yes.  I understand you all have to leave with
23 your client.
24             Term Sheets.  Anything on Term Sheets?
25             MR. HERMAN:  Before we get there, with respect to item 10

1   at pages 9, 10, and 11, I just want to indicate that we continue to
2   receive phone calls and communications from lawyers whose clients
3   have not been listed in any Omni complaint, and therefore, are
4   outside of the settlement.  And what we've indicated to them is
5   that they're not in the settlement whatsoever, we take their names,
6   the properties involved, and so we're keeping that list.  But
7   they're definitely not in the settlement.
8           I also want to indicate again that the status conference
9   report, various orders of the court are posted on the court's web
10  site at www.laed.uscourts.gov/drywall/FAQ.htm.
11          Your Honor, you indicated that you wanted to move to the
12  next?
13          THE COURT:  Yes.  With regard to the web site, I do try
14  to, and this is not so much for the people who are in the MDL but
15  people who are in state courts, I do post everything on the web
16  site, including transcripts of these meetings.
17          And a shortcut to the web site is get the Eastern
18  District of Louisiana web site and pull that up, and on the
19  left-hand side of that page is the listing for Chinese Manufactured
20  Drywall.  And click on that and the web site will come up.
21          Taishan -- let's see, Knauf Defendants -- no, the Term
22  Sheets was where we were.
23          MR. HERMAN:  No issues, your Honor.
24          THE COURT:  All right.  What about the Taishan
25  Defendants?

```
 1            MR. HERMAN:  Yes.  XI at page 12, your Honor, two issues.
 2   In connection with the recent Hong Kong depositions that your Honor
 3   attended and monitored, Taishan has filed errata sheets, we filed a
 4   motion and a brief challenging the errata issues cited by Taishan.
 5   We've also filed exhibits under seal.
 6            THE COURT:  I don't know, I haven't seen any errata
 7   sheets.  Generally errata sheets are used to correct spelling,
 8   they're used to correct times, things of that sort, and not used to
 9   change any testimony that has been delivered during the deposition.
10   Occasionally you'll see some errata that disputes that what the
11   transcript is, that their notes indicate the transcript is in
12   error, but that is very unusual.
13            With these particular depositions, as everyone knows, I
14   was there, I listened to the depositions, I saw the people
15   testifying.  I heard the people testifying.  The people in the room
16   representing both sides had individuals who spoke Chinese.  I had
17   the benefit of an interpreter that was supplied to me by the State
18   Department, and she did an excellent job.  There was no indication
19   during the course of the proceedings that anyone had any difficulty
20   with her translation of material.  So I will be interested in
21   reviewing the errata.  I've gotten the depositions, I've looked
22   them over already, and I've made my own notes on them.
23            Let's go to the next item is --
24            MR. HERMAN:  Your Honor, we have --
25            THE COURT:  -- Interior Exterior.
```

1    MR. HERMAN:  Excuse me, your Honor, we have the CNBM
2  (USA) motion.
3    THE COURT:  Yes, right, that's the second one.
4    MR. HERMAN:  To set for hearing, CNBM (USA) did not show
5  at its deposition.
6    THE COURT:  I'll also need for that the costs that was
7  incurred in connection with that deposition, anybody who was
8  attending that deposition, I understand it didn't go off because
9  the other side didn't show up.  So I do need all of the costs that
10 all of the people who showed up expended in that.
11   MR. HERMAN:  We will provide an affidavit to that extent
12 and the pro se verbal that was given at the deposition.
13   THE COURT:  All right.
14   MR. HERMAN:  Interior Exterior.  North River, excess
15 insurer of Interior Exterior, we've met with, your Honor has lifted
16 the stay, we are going to proceed to discovery.
17   Your Honor, the last sentence at page 14 that begins "the
18 deadline" and ends with "order of the court" was inserted by error
19 and should be deleted.
20   THE COURT:  Okay.  All right.  I spoke with North River
21 as well as the PSC, and I am lifting, as I mentioned, I lifted the
22 stay so that that case can proceed.  That needs to be done as
23 quickly as possible.  I would expect depositions to be set and any
24 discovery pursued so we can move this case.
25   Banner Defendants, anything on that?

1             MR. HERMAN:  Yes, your Honor.  The allocation plan was
2    filed on March 12th.
3             THE COURT:  All right.
4             MR. HERMAN:  With regard to the next item --
5             THE COURT:  Venture Supply.
6             MR. HERMAN:  We learned from liaison counsel for
7    installers, many of whom are installers for Venture Supply,
8    Porter-Blaine, and they will be providing us a list of the
9    installers and their insurers on which there is some ongoing
10   issues.
11            THE COURT:  Anything on Plaintiff Profile, Defendant
12   Profile Forms?
13            MR. HERMAN:  No, your Honor.
14            Frequently Asked Questions, XVI, again I'll repeat the
15   court's web site, www.laed.uscourts.gov/drywall/FAQ.htm
16            THE COURT:  Okay.  We talked about the other matters,
17   matters set for hearing.
18            Anything from the Pro Se Claimants?
19            MR. HERMAN:  I know Mr. Bob Johnston is here.
20            MR. JOHNSTON:  Your Honor, Bob Johnston, court appointed
21   curator.
22            The court will recall that I attended a conference in
23   chambers with counsel for Knauf and also attorneys for the
24   Plaintiff Steering Committee in which there was discussion relating
25   to pro ses.  Since my appointment, which is about three and a half

1  to four months ago, and as I've indicated in the curator status
2  report that I filed with the court, because of the interest, shall
3  we say, in whether or not the numbers of those pro ses who did not
4  file suit by December 7, 2011, would be large or small.  I can
5  report to the court that as of today the number of pro se claimants
6  who have contacted my office, and I have spoken to virtually every
7  one of them more than once, is less than 30.  So what was discussed
8  in chambers in the conference, I can tell the court clearly the
9  numbers are not very, very significant.
10           I will continue to provide the court with information on
11 additional claimants, they're still coming in and obviously we have
12 very concerned individuals.  But I have told them and I've had
13 discussions with Lenny Davis and also with Lou Colletta in the
14 Frilot firm that I provide the names and other relevant information
15 for each one of these individuals, and they have been sending me
16 many of them inspection reports and I am simply sending them to
17 both sides and will continue to do so.
18           THE COURT:  Okay.  Thank you very much.  In matters of
19 this sort because of the numbers, oftentimes individuals don't have
20 an opportunity or they don't express an interest in having an
21 attorney because sometimes their issues are more informational.  In
22 this case it looks like there are about maybe 30,000 potential
23 claimants, there's over 1,000 defendants in the case, and the
24 lawyers that are in the case are about 1,400.
25           But there are individuals, pro se, that do not have

```
 1   lawyers and they want information, they want to ask questions about
 2   what's going on, and it's very helpful to them to have someone
 3   knowledgeable who can speak with them and answer their questions,
 4   direct them to the court's web site, and service them in an
 5   appropriate and professional way.  And so that's why I appointed
 6   Mr. Johnston on this.  He's got a lot of experience in that, he's
 7   done it before, and I appreciate his efforts.
 8             MR. JOHNSTON:  Thank you.
 9             MR. DAVIS:  And, your Honor, Leonard Davis on behalf of
10   plaintiffs liaison counsel's office.  We have been in constant
11   contact with Mr. Johnston, and when we get word from a pro se or
12   from Mr. Johnston, what we are doing, as we mentioned before, we
13   are assembling a list of those individuals who are what I'll call
14   post December I believe it's 9, post settlement date, and we are
15   keeping track of those names and the property addresses.
16             THE COURT:  Okay.  All right.  Thank you very much.
17             Anything with Liaison Counsel Meeting with the Mediator?
18             MR. HERMAN:  I don't think so, unless Mr. Pipes has
19   something to say.
20             THE COURT:  What about Physical Evidence Preservation
21   Order, where are we?
22             MR. HERMAN:  At this time, your Honor, I just want to
23   indicate that with regard to previously remediated homes and what
24   indicia is needed to be considered, to qualify for payment, we've
25   met with Knauf, Knauf has compiled the materials, we will be
```

1  providing and posting same as an exemplum; and your Honor has under
2  consideration an order regarding prior remediated homes, which is
3  purely procedural, and we will get an amended order to you later
4  this week.
5          THE COURT:  I saw the order and it is procedural.  I need
6  a sentence or two to at least key it into the settlement agreement
7  so that if there are any disputes, the individuals understand that
8  that order doesn't deal with the disputes, prior orders do.
9          But we have to have some uniformity and some exemplar for
10 individuals who have repaired their homes, previously repaired
11 their homes themselves, their brother-in-law or somebody else, and
12 they have to submit certain material so that they can be
13 reimbursed.
14         MR. HERMAN:  Your Honor, I am reminded by Hillary to
15 indicate that the parties have agreed to move all opt out dates to
16 May 11th, with the court's consent we will be submitting something
17 to that effect, but we should announce it for those in the court
18 and for those listening.
19         THE COURT:  There are several opt outs, several
20 defendants are affected and looking at it, there were three or four
21 different opt out dates, depending upon the claims against a
22 particular defendant.  It makes more sense to me if we have them
23 all at one time, and so we're moving them all to the May 11th date.
24         MR. HERMAN:  Your Honor, there's nothing new at item 21,
25 Entry of Preliminary Default.

```
 1              The next status conference, your Honor, is April 26th,
 2   2012, but I believe that your Honor previously directed that
 3   liaison counsel meet with you at eight o'clock on April 26th.
 4              THE COURT:  Right.
 5              MR. HERMAN:  And at 8:30 your regular status conference
 6   will begin.
 7              THE COURT:  Right.  And then the next is the May 17th and
 8   the June date can be the 7th, 14th, or 28th.  What's good for most
 9   of the groups?  June 14th?  Okay.  All right.
10              That finishes our discussion, at least the monthly status
11   conference.  I'll take a break here so that we can get to the next
12   meeting.  I'll take a five minute break.  The court will stand in
13   recess.
14              (WHEREUPON, THE STATUS CONFERENCE WAS CONCLUDED.)
15
16                             *  *  *  *  *  *
17
18                          REPORTER'S CERTIFICATE
19
20       I, Karen A. Ibos, CCR, Official Court Reporter, United
     States District Court, Eastern District of Louisiana, do hereby
     certify that the foregoing is a true and correct transcript, to the
21   best of my ability and understanding, from the record of the
     proceedings in the above-entitled and numbered matter.
22
23
24                                  _____
                                    Karen A. Ibos, CCR, RPR, CRR
25                                  Official Court Reporter
```