# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### Case No. _____ Civ.

EDUARDO AND CARMEN AMORIN; KENNETH
ABEL; ARLEDYS GALLARDO; CHARMAINE FONG;
PERRY AND CASSANDRA FONTENOT; JULIANNE
AND JOSHUA FRANKZE; BRYON HAND; LAURA          **COMPLAINT--CLASS ACTION**
HAYA, DANIEL HAYA AND IRENE HAYA; ROBERT
POPOVITCH; JASON PURSE; JOSEPH
QUARTARARO; FRANK AND YVONNE TOPF;
CATHY PARKER VAPY; HUGH AND TRACY VEST;
AND KENNETH AND BARBARA WILTZ,
individually, and on behalf of all others
similarly situated,

        Plaintiffs,

v.

TAISHAN GYPSUM CO., LTD. F/K/A SHANDONG
TAIHE DONGXIN CO., LTD.; TAIAN TAISHAN
PLASTERBOARD CO., LTD.; QINHUANGDAO
TAISHAN BUILDING MATERIALS CO., LTD. A/K/A
QINHUANG DAO TAISHAN BUILDING; MATERIALS
CO., LTD.; BEIJING NEW BUILDING MATERIALS
PUBLIC LIMITED CO.; CHINA NATIONAL
BUILDING MATERIAL CO., LTD.; BEIJING NEW
BUILDING MATERIALS (GROUP) CO., LTD.;
CHINA NATIONAL BUILDING MATERIALS GROUP
CO.; CNBM USA CORP.; BNBM OF AMERICA,
INC.; BNBM USA; UNITED SUNTECH CRAFT,
INC.; CNBMI CO., LTD.; CHANGZHOU YINHE
WOOD INDUSTRY CO., LTD.; FUXIN TAISHAN
GYPSUM AND BUILDING MATERIAL CO., LTD.;
HUBEI TAISHAN BUILDING MATERIAL CO., LTD.;
JINAN RUN & FLY NEW MATERIALS CO., LTD.;
NANHAI SILK IMP. & EXP. CORPORATION;
PINGYI BAIER BUILDING MATERIALS CO., LTD.;
QINHUANGDAO TAISHAN BUILDING MATERIAL
CO., LTD.; SHANGHAI YU YUAN IMP & EXP CO.,
LTD.; SINKIANG TIANSHAN BUILDING MATERIAL

1

AND GYPSUM PRODUCT CO., LTD.; SUNRISE
BUILDING MATERIALS LTD.; TAI'AN JINDUN
BUILDING MATERIAL CO., LTD.; TAISHAN
GYPSUM CO., LTD. LUCHENG BRANCH; TAISHAN
GYPSUM (BAOTOU) CO., LTD.; TAISHAN GYPSUM
(CHONGQING) CO., LTD.; TAISHAN GYPSUM
(HENAN) CO., LTD.; TAISHAN GYPSUM
(PINGSHAN) CO., LTD.; TAISHAN GYPSUM
(PIZHOU) CO., LTD.; TAISHAN GYPSUM
(TONGLING) CO., LTD.; TAISHAN GYPSUM
(XIANGTAN) CO. LTD.; YUNAN TAISHAN GYPSUM
AND BUILDING MATERIAL CO., LTD.; SHAANXI
TAISHAN GYPSUM CO., LTD.; TAISHAN GYPSUM
(HENGSHUI) CO., LTD.; TAISHAN GYPSUM
(JIANGYIN) CO., LTD.; TAISHAN GYPSUM
(WENZHOU) CO., LTD.; BEIJING NEW MATERIAL
INCUBATOR CO., LTD.; QINGDAO YILIE
INTERNATIONAL TRADE CO., LTD.; SHANGHAI
EAST BEST ARTS & CRAFTS CO., LTD.;
SIIC SHANGHAI INTERNATIONAL TRADE (GROUP)
CO., LTD.; TIANJIN TIANBAO CENTURY
DEVELOPMENT CO., LTD.; SHANDONG ORIENTAL
INTERNATIONAL TRADING CORP.; LIANYUNGANG
YUNTAI INTERNATIONAL TRADE CO., LTD.;
SHANGHAI YUYUAN MARKET IMPORT & EXPORT
CO., LTD.; ORIENT INTERNATIONAL HOLDING
SHANGHAI FOREIGN TRADE CO., LTD.; QINGDAO
AONI DECORATION BOARD AND MATERIALS CO.,
LTD.; BEIJING BUILDING MATERIALS IMPORT &
EXPORT CO., LTD.; TAIAN TAIGAO TRADING
CO., LTD.; NANTONG ECONOMIC AND
TECHNOLOGICAL DEVELOPMENT ZONE
CORPORATION; QINGDAO KANGHONG IMPORT
AND EXPORT CO., LTD.; ZHEJIANG PROVINCIAL
SECOND LIGHT INDUSTRY ENTERPRISES GROUP
IMP. & EXP. CO., LTD.; SIIC SHANGHAI
INTERNATIONAL TRADE GROUP PUDONG CO.,
LTD.; JIANGSU SAINTY INTERNATIONAL
ECONOMIC & TECHNICAL COOPERATION CO.,
LTD.; ZIBO INTERNTIONAL ECONOMIC AND
TECHNICAL COOPERATION CORPORATION;
SHANGHAI KAIDUN DEVELOPMENT CO., LTD.;
SHANGHAI YUJIN INDUSTRY CO., LTD.;

2

**HANGZHOU GREAT IMPORT AND EXPORT CO.,
LTD.; XUZHOU HANBANG GLOBAL TRADE CO.,
LTD.; CHINA XUZHOU INTERNATIONAL
ECONOMIC & TECHNOLOGICAL COOPERATION
CO., LTD.; JIANGSU EASTHIGH GROUP IMPORT &
EXPORT CO., LTD.; AND QINGDAO JOY
INDUSTRIAL & DEVELOPMENT CO., LTD.,**

      **Defendants.**

_____/

## PLAINTIFFS' CLASS ACTION COMPLAINT

Pursuant to Fed. R. Civ. P. 23 and S.D Fla. L.R. 23.1, the class representatives in this

action bring suit on behalf of themselves and all other similarly situated owners and residents of

real property containing problematic Chinese manufactured drywall that was designed,

manufactured, imported, distributed, delivered, supplied, marketed, inspected, or sold by the

Defendants.  Each of the class representatives is pursuing a nationwide class action against

Beijing New Building Materials Public Limited Co. ("BNBM"); China National Building Material

Co., Ltd.; Beijing New Building Materials (Group) Co., Ltd. ("BNBM Group"); China National

Building Materials Group Co. ("CNBM Group"); CNBM USA Corp.; BNBM of America, Inc.;

BNBM USA; United Suntech Craft, Inc. ("United Suntech"); CNBMI Co., Ltd. ("CNBMI");

Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd.; Taian Taishan Plasterboard

Co., Ltd. ("TTP"); and Qinhuangdao Taishan Building Materials Co., Ltd. a/k/a Qinhuang Dao

Taishan Building Materials Co., Ltd. ("Qinhuangdao"); Changzhou Yinhe Wood Industry Co.,

Ltd.; Fuxin Taishan Gypsum And Building Material Co., Ltd.; Hubei Taishan Building Material

Co., Ltd.; Jinan Run & Fly New Materials Co., Ltd.; Nanhai Silk Imp. & Exp. Corporation; Pingyi

Baier Building Materials Co., Ltd.; Qinhuangdao Taishan Building Material Co., Ltd.; Shanghai

Yu Yuan Imp & Exp Co., Ltd.; Sinkiang Tianshan Building Material And Gypsum Product Co.,

Ltd.; Sunrise Building Materials Ltd.; Tai'an Jindun Building Material Co., Ltd.; Taishan Gypsum

Co., Ltd. Lucheng Branch; Taishan Gypsum (Baotou) Co., Ltd.; Taishan Gypsum (Chongqing)

Co., Ltd.; Taishan Gypsum (Henan) Co., Ltd.; Taishan Gypsum (Pingshan) Co., Ltd.; Taishan

Gypsum (Pizhou) Co., Ltd.; Taishan Gypsum (Tongling) Co., Ltd.; Taishan Gypsum (Xiangtan)

Co. Ltd.; Yunan Taishan Gypsum And Building Material Co., Ltd.; Shaanxi Taishan Gypsum Co.,

Ltd.; Taishan Gypsum (Hengshui) Co., Ltd.; Taishan Gypsum (Jiangyin) Co., Ltd.; Taishan

Gypsum (Wenzhou) Co., Ltd.; Beijing New Material Incubator Co., Ltd.; Qingdao Yilie

International Trade Co., Ltd.; Shanghai East Best Arts & Crafts Co., Ltd.; Siic Shanghai

International Trade (Group) Co., Ltd.; Tianjin Tianbao Century Development Co., Ltd.; Shandong

Oriental International Trading Corp.; Lianyungang Yuntai International Trade Co., Ltd.; Shanghai

Yuyuan Market Import & Export Co., Ltd.; Orient International Holding Shanghai Foreign Trade

Co., Ltd.; Qingdao Aoni Decoration Board and Materials Co., Ltd.; Beijing Building Materials

Import & Export Co., Ltd.; Taian Taigao Trading Co., Ltd.; Nantong Economic and

Technological Development Zone Corporation; Qingdao Kanghong Import and Export Co., Ltd.;

Zhejiang Provincial Second Light Industry Enterprises Group Imp. & Exp. Co., Ltd.; SIIC

Shanghai International Trade Group Pudong Co., Ltd.; Jiangsu Sainty International Economic &

Technical Cooperation Co., Ltd.; Zibo Interntional Economic and Technical Cooperation

Corporation; Shanghai Kaidun Development Co., Ltd.; Shanghai Yujin Industry Co., Ltd.;

Hangzhou Great Import and Export Co., Ltd.; Xuzhou Hanbang Global Trade Co., Ltd.; China

Xuzhou International Economic & Technological Cooperation Co., Ltd.; Jiangsu Easthigh Group

Import & Export Co., Ltd.; and Qingdao Joy Industrial & Development Co., Ltd. (collectively

4

"the Taishan Defendants"). Each of the Defendants in this action are liable for damages incurred by Plaintiffs due to their role in the design, manufacture, importing, distributing, delivery, supply, marketing, inspecting, or sale of the problematic drywall at issue in this litigation.

## JURISDICTION, PARTIES, AND VENUE

1. Original jurisdiction of this Court exists by virtue of 28 U.S.C. §1332(d)(2) and the Class Action Fairness Act ("CAFA"). *See* 28 U.S.C. § 1711, *et. seq.* The Plaintiffs and certain of the Defendants in these actions are citizens of different states and the amounts in controversy in these actions exceed five million dollars ($5,000,000.00), exclusive of interest and costs.

2. Venue in this district satisfies the requirements of 28 U.S.C. §1391(b) because Plaintiffs and a significant number of the absent class members reside in this jurisdiction and a substantial amount of the events and occurrences giving rise to these claims occurred in this District, or a substantial part of the property that is the subject of this action is situated in this district.

## PLAINTIFFS

3. For purposes of clarity, the Plaintiffs are asserting claims on behalf of all owners and residents of the subject properties, including but not limited to, minors and other residents of the properties who do not appear herein as named plaintiffs.

4. The Plaintiffs in this action are also asserting claims on behalf of all plaintiffs from prior complaints that have been filed in this Court or in the United States District Court for the Eastern district of Louisiana involving the Taishan Defendants. These plaintiffs include but are not limited to those plaintiffs who asserted claims against the Taishan Defendants in *Kenneth and Barbara Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al.*, Civ. Action No.

10-361; *Gross, et al. v. Knauf Gips, KG, et al.*, Civ. Action No. 09-6690; *Kenneth Abel, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.,* Civ. Action No. 11-080; *Laura, Daniel and Irene Haya, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.,* Civ. Action No. 11-1077; and *Germano, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co. Ltd., et al.*, Civ. Action No. 9-6687.

5.  Plaintiffs, Eduardo and Carmen Amorin are citizens of Florida and together own real property located at 240 West End Drive, Bldg. 7, Unit 721, Punta Gorda, Florida 33950. Plaintiffs have incurred damages caused by the drywall distributed by defendants and are participating as class representatives for similarly situated individuals.

6.  Plaintiff, Kenneth Abel is a citizen of Florida and owns real property located at 10400 SW Stephanie Way #5210, Port St. Lucie, Florida 34987. Plaintiff has incurred damages caused by the drywall distributed by defendants and is participating as a class representative for similarly situated individuals.

7.     Plaintiff, Arledys Gallardo is a citizen of Florida and owns real property located at 4179 NE 16 Street, Homestead, Florida 33033. Plaintiff has incurred damages caused by the drywall distributed by defendants and is participating as a class representative for similarly situated individuals.

8.  Plaintiff, Charmaine Fong is a citizen of Florida and owns real property located at 9816 Cobblestone Lakes Court, Boynton Beach, Florida 33472. Plaintiff has incurred damages caused by the drywall distributed by defendants and is participating as a class representative for similarly situated individuals.

9.  Plaintiffs, Perry and Cassandra Fontenot are citizens of Virginia and together own real

property located at 1016 Hollymeade Circle, Newport News, Virginia 23602.  Plaintiffs have incurred damages caused by the drywall distributed by defendants and are participating as a class representatives for similarly situated individuals.

10.  Plaintiffs, Julianne and Joshua Frankze are citizens of Florida and together own real property located at 1201 NW 2 Street, Cape Coral, Florida 33993.  Plaintiffs have incurred damages caused by the drywall distributed by defendants and are participating as class representative for similarly situated individuals.

11.  Plaintiff, Bryon Hand is a citizen of Virginia and owns real property located at 3207 Arran Thistle, Williamsburg, Virginia 23188.  Plaintiff has incurred damages caused by the drywall distributed by defendants and is participating as a class representative for similarly situated individuals.

12.  Plaintiffs, Laura Haya, Daniel Haya, and Irene Haya are citizens of Florida and together own real property located at 7574 Tamarind Avenue, Tampa, Florida 33625.  Plaintiffs have incurred damages caused by the drywall distributed by defendants and are participating as class representatives for similarly situated individuals.

13.  Plaintiff, Robert Popovitch is a citizen of Virginia and owns real property located at 1217 Avondale Lane, Newport News, Virginia 23602.  Plaintiff has incurred damages caused by the drywall distributed by defendants and is participating as a class representative for similarly situated individuals.

14.  Plaintiff, Jason Purse is a citizen of Virginia and owns real property located at 4309 Creekside Loop, Williamsburg, Virginia 23188.  Plaintiff has incurred damages caused by the drywall distributed by defendants and is participating as a class representative for similarly

7

situated individuals.

15.  Plaintiff, Joseph Quartararo is a citizen of Louisiana and owns real property located at 5813 Ruth Street, Metairie, Louisiana 70003.  Plaintiff has incurred damages caused by the drywall distributed by defendants and is participating as a class representative for similarly situated individuals.

16.  Plaintiffs, Frank and Yvonne Topf are citizens of Virginia and together own real property located at 2417 Caitlan Loch Lane, Virginia Beach, Virginia 23602.  Plaintiffs have incurred damages caused by the drywall distributed by defendants and are participating as class representatives for similarly situated individuals.

17.  Plaintiff, Cathy Parker Vapy is a citizen of Louisiana and owns real property located at 9700 Andover Drive, New Orleans, Louisiana 70127.  Plaintiff has incurred damages caused by the drywall distributed by defendants and is participating as a class representative for similarly situated individuals.

18.  Plaintiffs, Hugh and Tracy Vest are citizens of Virginia and together own real property located at 111 Eston's Run, Yorktown, Virginia 23693.  Plaintiffs have incurred damages caused by the drywall distributed by defendants and are participating as class representatives for similarly situated individuals.

19.  Plaintiffs, Kenneth and Barbara Wiltz are citizens of Louisiana and together own real property located at 5337 Cameron Blvd., New Orleans, Louisiana 70112.  Plaintiffs have incurred damages caused by the drywall distributed by defendants and are participating as class representatives for similarly situated individuals.

**DEFENDANTS**

20. Defendant, Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd. is a

foreign corporation doing business in several States, including but not limited to, Louisiana,

Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Upon information and belief,

Defendant, together with its affiliates and/or actual or apparent agents, manufactured, sold,

distributed, marketed and placed within the stream of commerce gypsum drywall with the

expectation that the drywall would be purchased by thousands of consumers, if not more, within

various States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas,

North Carolina, and Virginia.  Upon information and belief, Defendant has continuously and

systematically distributed and sold drywall to numerous purchasers in the United States and their

drywall is installed in numerous structures in the United States. Defendant manufactured and sold,

directly and indirectly, to certain suppliers in the United States.

21.  Defendant, Taian Taishan Plasterboard Co., Ltd. ("TTP") is a foreign corporation

doing business in several States, including but not limited to, Louisiana, Alabama, Florida,

Mississippi, Texas, North Carolina, and Virginia.  Upon information and belief, Defendant,

together with its affiliates and/or actual or apparent agents, manufactured, sold, distributed,

marketed and placed within the stream of commerce gypsum drywall with the expectation that the

drywall would be purchased by thousands of consumers, if not more, within various States,

including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and

Virginia.  Upon information and belief, Defendant has continuously and systematically distributed

and sold drywall to numerous purchasers in the United States and their drywall is installed in

numerous structures in the United States.  Defendant manufactured and sold, directly and

indirectly, to certain suppliers in the United States.  Upon information and belief, certain of the

problematic drywall manufactured, imported, exported, distributed, supplied and/or brokered by

Defendant bear markings that state, "Crescent City Gypsum, Inc." or "Crescent City."

22.  Defendant, TTP is a wholly owned subsidiary of Defendant Taishan.  TTP works

collaboratively with Taishan and purchases and/or sells Taishan wallboard products with product

markings written in English designed for sale or resale in the United States.

23.  Defendant, Qinhuangdao Taishan Building Materials Co., Ltd. a/k/a Qinhuang Dao

Taishan Building Materials Co., Ltd. ("Qinhuangdao") is a foreign corporation doing business in

several States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas,

North Carolina, and Virginia.  Upon information and belief, Defendant, together with its affiliates

and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the

stream of commerce gypsum drywall with the expectation that the drywall would be purchased by

thousands of consumers, if not more, within various States, including but not limited to,

Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Upon information

and belief, Defendant has continuously and systematically distributed and sold drywall to

numerous purchasers in the United States and their drywall is installed in numerous structures in

the United States.   Defendant manufactured and sold, directly and indirectly, to certain suppliers

in the United States.  Upon information and belief, Defendant is the manufacturer, importer,

exporter, distributor, supplier and/or broker of drywall bearing markings that state, "Crescent City

Gypsum, Inc."

24.  Defendant, Qinhuangdao Taishan Building Materials Co., Ltd. a/k/a Qinhuang Dao

Taishan Building Materials Co., Ltd. is a wholly owned subsidiary of Defendant, Taishan Gypsum

Co., Ltd. F/k/a Shandong Taihe Dongxin Co., Ltd.

25. During the period when Taishan and its subsidiaries were distributing problematic drywall to the United States, these entities consistently misrepresented the drywall they were exporting complied with ISO and ASTM quality standards. For instance, Taishan's website boasted that it was exporting large quantities of drywall to the United States and that its drywall complied with ISO quality standards. The employees of Taishan and its subsidiaries also sent emails to potential customers boasting about their experience exporting large quantities of drywall to the United States. These employees also provided false assurances that the drywall they were exporting complied with ASTM quality standards.

26. Upon information and belief, Taishan is owned and/or controlled by defendant Beijing New Building Materials Public Limited Co. ("BNBM"), which is a state-owned entity and respectively controlled by the Chinese government. BNBM is traded on the Shenzhen Stock Exchange. Defendant, BNBM caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

27. BMBM consistently exerted control over Taishan and its subsidiaries when these entities were exporting problematic drywall to the United States. For instance, one of BNBM's board members, Tongchun Jia, is the chairman of the board of directors and general manager of Taishan. Mr. Tongchun Jia occupies similar positions with most of Taishan's subsidiaries. Through Mr. Tongchun Jia's positon with Taishan and its subsidiaries, BNBM controls the actions and operations of these entities. Even where Tongchun Jia does not formally hold a position with a Taishan subsidiary, BNBM is able to exert its control over the subsidiary through Mr. Tongchun Jia's influence. For instance, the chairman of the board of TTP, Peng Shi Liang,

11

was also an employee of Taishan. BNBM was thus able to control TTP since the chairman of its
board reported directly to Tongchun Jia. Accordingly, since BNBM had direct control over
Taishan and its subsidiaries, it should be held responsible for their sale of problematic drywall.

28. Defendant China National Building Material Co., Ltd. ("CNBM"), is a partially
owned subsidiary of BNBM Group. Defendant, China National Building Material Co., Ltd.
caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected,
marketed and/or sold.

29. Upon information and belief, defendant BNBM is owned and/or controlled by
defendant Beijing New Building Materials (Group) Co., Ltd. ("BNBM Group"), which is a state
owned entity and respectively controlled by the Chinese government. Defendant BNBM Group
caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected,
marketed and/or sold.

30. Upon information and belief, BNBM Group is owned and/or controlled by China
National Building Materials Group Co. ("CNBM Group"), which is a state owned entity and
respectively controlled by the Chinese government. CNBM Group is traded on the Hong Kong
stock exchange. Defendant CNBM Group caused the drywall at issue in the case to be imported,
distributed, delivered, supplied, inspected, marketed and/or sold.

31. Defendant CNBM USA Corp. is a California corporation with a principal place of
business in California. By information and belief, CNBM USA Corp. is a subsidiary of either
BNBM, China National Building Material Co., Ltd., BNBM Group or CNBM Group. By
information and belief, CNBM USA Corp. acted as an agent for BNBM, China National Building
Material Co., Ltd., BNBM Group and/or CNBM Group by promoting and marketing the drywall

at issue in this litigation to American suppliers.  Accordingly, CNBM USA Corp. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

32.  Defendant BNBM of American, Inc. ("BNBM America") is a Florida corporation with a principal place of business in Florida.  By information and belief, BNBM America is a subsidiary of either BNBM, China National Building Material Co., Ltd., BNBM Group or CNBM Group.  By information and belief, BNBM America acted as an agent for BNBM, China National Building Material Co., Ltd., BNBM Group and/or CNBM Group by promoting and marketing the drywall at issue in this litigation to American suppliers.  Accordingly, BNBM America caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

33.  Defendant BNBM USA is a indeterminate entity with an address that is unknown at this time.  By information and belief, BNBM USA is a subsidiary of either BNBM, China National Building Material Co., Ltd., BNBM Group or CNBM Group.  By information and belief, BNBM USA acted as an agent for BNBM, China National Building Material Co., Ltd., BNBM Group, CNBM Group and/or the Taishan entities by promoting and marketing the drywall at issue in this litigation to American suppliers.  Accordingly, BNBM USA caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

34.  Defendant United Suntech Craft, Inc. ("United Suntech") is a California corporation with a principal place of business in California.  By information and belief, United Suntech is a subsidiary of either BNBM, China National Building Material Co., Ltd., BNBM Group, CNBM Group, or CNBMI Co., Ltd.  By information and belief, United Suntech acted as an agent for

13

Case 2:09-md-02047-EEF-MBN Document 21252-1 Filed 03/30/18 Page 14 of 55

BNBM, China National Building Material Co., Ltd., BNBM Group, CNBM Group and/or CNBMI Co., Ltd. by promoting and marketing the drywall at issue in this litigation to American suppliers. Accordingly, United Suntech caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

35. Defendant CNBMI Co., Ltd. ("CNBMI") is a foreign corporation doing business in several States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, California, and Virginia. By information and belief, CNBMI is a subsidiary of either BNBM, China National Building Material Co., Ltd., BNBM Group or CNBM Group. By information and belief, CNBMI is the parent corporation of United Suntech. By information and belief, CNBMI acted as an agent for BNBM, China National Building Material Co., Ltd., BNBM Group and/or CNBM Group by promoting and marketing the drywall at issue in this litigation to American suppliers. Accordingly, CNBMI caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

36. Upon information and belief, Defendant Changzhou Yinhe Wood Industry Co., Ltd., is a foreign corporation doing business in several States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia. Changzhou Yinhe Wood Industry Co., Ltd. is involved in the manufacturing and/or sale of gypsum drywall. Upon information and belief, Changzhou Yinhe Wood Industry Co., Ltd. manufactured, sold, distributed, marketed and/or placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia. Changzhou Yinhe Wood Industry Co., Ltd. has continuously and

systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Upon information and belief, Changzhou Yinhe Wood Industry Co., Ltd. manufactured and/or sold to certain suppliers in the United States.

37. Defendant Fuxin Taishan Gypsum And Building Material Co., Ltd., is a foreign corporation and is a subsidiary of Taishan. Defendant Fuxin Taishan Gypsum And Building Material Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

38. Defendant Hubei Taishan Building Material Co., Ltd. is foreign corporation and is a manufacturer of gypsum. Defendant Hubei Taishan Building Material Co., Ltd. is a subsidiary of Defendant BNBM. Defendant Hubei Taishan Building Material Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

39. Upon information and belief, Defendant Jinan Run & Fly New Materials Co., Ltd., is a foreign corporation doing business in several States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia. Jinan Run & Fly New Materials Co., Ltd. is involved in the manufacturing and/or sale of gypsum drywall. Upon information and belief, Jinan Run & Fly New Materials Co., Ltd. manufactured, sold, distributed, marketed and/or placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia. Jinan Run & Fly New Materials Co., Ltd. has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is

15

installed in numerous structures in the United States.  Upon information and belief, Jinan Run &

Fly New Materials Co., Ltd. manufactured and/or sold to certain suppliers in the United States.

40.  Upon information and belief, Defendant Nanhai Silk Imp. & Exp. Corporation is a

foreign corporation doing business in several States, including but not limited to, Louisiana,

Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Nanhai Silk Imp. & Exp.

Corporation is involved in the manufacturing and/or sale of gypsum drywall.  Upon information

and belief, Nanhai Silk Imp. & Exp. Corporation manufactured, sold, distributed, marketed and/or

placed within the stream of commerce gypsum drywall with the expectation that the drywall

would be purchased by thousands of consumers, if not more, within various States, including but

not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.

Nanhai Silk Imp. & Exp. Corporation has continuously and systematically distributed and sold

drywall to numerous purchasers in the United States and their drywall is installed in numerous

structures in the United States.  Upon information and belief, Nanhai Silk Imp. & Exp.

Corporation manufactured and/or sold to certain suppliers in the United States.

41.  Upon information and belief, Defendant Pingyi Baier Building Materials Co., Ltd., is

a foreign corporation doing business in several States, including but not limited to, Louisiana,

Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Pingyi Baier Building

Materials Co., Ltd. is involved in the manufacturing and/or sale of gypsum drywall.  Upon

information and belief, Pingyi Baier Building Materials Co., Ltd. manufactured, sold, distributed,

marketed and/or placed within the stream of commerce gypsum drywall with the expectation that

the drywall would be purchased by thousands of consumers, if not more, within various States,

including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and

Virginia. Pingyi Baier Building Materials Co., Ltd. has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Upon information and belief, Pingyi Baier Building Materials Co., Ltd. manufactured and/or sold to certain suppliers in the United States.

42. Defendant Qinhuangdao Taishan Building Material Co., Ltd., is a foreign corporation and is a manufacturer of gypsum. Defendant Qinhuangdao Taishan Building Material Co., Ltd. is a subsidiary of Taishan. Defendant Qinhuangdao Taishan Building Material Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

43. Defendant Shanghai Yu Yuan Imp & Exp Co., Ltd. is a foreign corporation that is responsible for the import/export of the drywall at issue in this litigation to the United States. Defendant Shanghai Yu Yuan Imp & Exp Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

44. Defendant Sinkiang Tianshan Building Material And Gypsum Product Co., Ltd, is a foreign corporation and is a manufacturer of plasterboard. Defendant Sinkiang Tianshan Building Material And Gypsum Product Co., Ltd. is a subsidiary of Taishan. Defendant Sinkiang Tianshan Building Material And Gypsum Product Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

45. Defendant Sunrise Building Materials Ltd., is a Canadian Corporation with its principle place of business located at Unit 7, 55 Nugget Ave., Scarborough, Toronto, ON, Canada, M15 3L1. Sunrise Building Materials Ltd. is a supplier of drywall and related building products. By information and belief, Sunrise Building Materials Ltd., supplied the drywall at issue in this

17

litigation in certain of the affected states.

46.  Defendant Tai'an Jindun Building Material Co., Ltd., is a foreign corporation and is a manufacturer and wholesaler of gypsum products.  Defendant Tai'an Jindun Building Material Co., Ltd. has joint-stock agreement with Defendant BNBM.  Defendant Tai'an Jindun Building Material Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

47.  Defendant Taishan Gypsum Co., Ltd. Lucheng Branch is a foreign corporation that operates a manufacturing plant.  Defendant Taishan Gypsum Co., Ltd. Lucheng Branch is a subsidiary of Taishan.  Defendant Taishan Gypsum Co. Ltd. Lucheng Branch caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

48.  Defendant Taishan Gypsum (Baotou) Co., Ltd., is a foreign corporation and is a subsidiary of Taishan.  Defendant Taishan Gypsum (Baotou) Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

49.  Defendant Taishan Gypsum (Chongqing) Co., Ltd., is a foreign corporation and is a subsidiary of Taishan.  Defendant Taishan Gypsum (Chongqing) Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

50.  Defendant Taishan Gypsum (Henan) Co., Ltd., is a foreign corporation and is a subsidiary of Taishan.  Defendant Taishan Gypsum (Henan) Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

51.  Defendant Taishan Gypsum (Pingshan) Co., Ltd., is a foreign corporation and is a manufacturer of gypsum products.  Defendant Taishan Gypsum (Pingshan) Co., Ltd. is a

subsidiary of Taishan. Defendant Taishan Gypsum (Pingshan) Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

52. Defendant Taishan Gypsum (Pizhou) Co., Ltd. is a foreign corporation and is a manufacturer of gypsum. Defendant Taishan Gypsum (Pizhou) Co. is a subsidiary of Taishan. Defendant Taishan Gypsum (Pizhou) Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

53. Defendant Taishan Gypsum (Tongling) Co., Ltd., is a foreign corporation and is a subsidiary of Taishan. Defendant Taishan Gypsum (Tongling) Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

54. Defendant Taishan Gypsum (Xiangtan) Co. Ltd., is a foreign corporation. Defendant Taishan Gypsum (Xiangtan) Co. Ltd. is a subsidiary of Taishan. Defendant Taishan Gypsum (Xiangtan) Co. Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

55. Defendant Yunan Taishan Gypsum And Building Material Co., Ltd., is a foreign corporation and is a manufacturer and wholesaler of gypsum products. Defendant Yunan Taishan Gypsum And Building Material Co., Ltd. has a joint-stock agreement with Defendant BNBM. Defendant Yunan Taishan Gypsum And Building Material Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

56. Defendant Shaanxi Taishan Gypsum Co., Ltd., is a foreign corporation and subsidiary of Taishan. Defendant Shaanxi Taishan Gypsum Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

57. Defendant Taishan Gypsum (Hengshui) Co., Ltd., is a foreign corporation and is a

19

manufacturer of gypsum.  Defendant Taishan Gypsum (Hengshui) Co. Ltd., is a subsidiary of

Taishan.  Defendant Taishan Gypsum (Hengshui) Co,. Ltd. caused the drywall at issue in the case

to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

58.  Defendant Taishan Gypsum (Jiangyin) Co., Ltd., is a foreign corporation and is a

manufacturer of gypsum.  Defendant Taishan Gypsum (Jiangyin) Co., Ltd. is a subsidiary of

Taishan.  Defendant Taishan Gypsum (Jiangyin) Co., Ltd. caused the drywall at issue in the case

to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

59.  Defendant Taishan Gypsum (Wenzhou) Co., Ltd., is a foreign corporation and is a

subsidiary of Taishan.  Defendant Taishan Gypsum (Wenzhou) Co., Ltd. caused the drywall at

issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

60.  Defendant Beijing New Material Incubator Co., Ltd., is a foreign corporation and is a

subsidiary of Defendant BNBM.  Defendant Beijing New Material Incubator Co., Ltd. caused the

drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed

and/or sold.

61.  Upon information and belief, Defendant Qingdao Yilie International Trade Co., Ltd.,

is a foreign corporation doing business in several States, including but not limited to, Louisiana,

Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Qingdao Yilie International

Trade Co., Ltd. is involved in the manufacturing and/or sale of gypsum drywall.  Upon

information and belief, Qingdao Yilie International Trade Co., Ltd. manufactured, sold,

distributed, marketed and/or placed within the stream of commerce gypsum drywall with the

expectation that the drywall would be purchased by thousands of consumers, if not more, within

various States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas,

North Carolina, and Virginia. Qingdao Yilie International Trade Co., Ltd. has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Upon information and belief, Qingdao Yilie International Trade Co., Ltd. manufactured and/or sold to certain suppliers in the United States.

62. Upon information and belief, Defendant Shanghai East Best Arts & Crafts Co., Ltd., is a foreign corporation doing business in several States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia. Shanghai East Best Arts & Crafts Co., Ltd. is involved in the manufacturing and/or sale of gypsum drywall. Upon information and belief, Shanghai East Best Arts & Crafts Co., Ltd. manufactured, sold, distributed, marketed and/or placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia. Shanghai East Best Arts & Crafts Co., Ltd. has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Upon information and belief, Shanghai East Best Arts & Crafts Co., Ltd. manufactured and/or sold to certain suppliers in the United States.

63. Upon information and belief, Defendant Siic Shanghai International Trade (Group) Co., Ltd., is a foreign corporation doing business in several States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia. Siic Shanghai International Trade (Group) Co., Ltd. is involved in the manufacturing and/or sale of gypsum

21

drywall. Upon information and belief, Siic Shanghai International Trade (Group) Co., Ltd. manufactured, sold, distributed, marketed and/or placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia. Siic Shanghai International Trade (Group) Co., Ltd. has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Upon information and belief, Siic Shanghai International Trade (Group) Co., Ltd. manufactured and/or sold to certain suppliers in the United States.

64. Upon information and belief, Defendant Tianjin Tianbao Century Development Co., Ltd., is a foreign corporation doing business in several States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia. Tianjin Tianbao Century Development Co., Ltd. is involved in the manufacturing and/or sale of gypsum drywall. Upon information and belief, Tianjin Tianbao Century Development Co., Ltd. manufactured, sold, distributed, marketed and/or placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia. Tianjin Tianbao Century Development Co., Ltd. has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Upon information and belief, Tianjin Tianbao Century Development Co., Ltd. manufactured and/or sold to certain suppliers in the United States.

65.  Defendant, Shandong Oriental International Trading Corp., is a foreign corporation that works collaboratively with Taishan that purchases and/or sells Taishan wallboard products with product markings written in English designed for sale or resale in the United States.

66.  Defendant, Lianyungang Yuntai International Trade Co., Ltd., is a foreign corporation that works collaboratively with Taishan that purchases and/or sells Taishan wallboard products with product markings written in English designed for sale or resale in the United States.

67.  Defendant, Shanghai Yuyuan Market Import & Export Co., Ltd., is a foreign corporation that works collaboratively with Taishan that purchases and/or sells Taishan wallboard products with product markings written in English designed for sale or resale in the United States.

68.  Defendant, Orient International Holding Shanghai Foreign Trade Co., Ltd., is a foreign corporation that works collaboratively with Taishan that purchases and/or sells Taishan wallboard products with product markings written in English designed for sale or resale in the United States.

69.  Defendant, Qingdao Aoni Decoration Board and Materials Co., Ltd., is a foreign corporation that works collaboratively with Taishan that purchases and/or sells Taishan wallboard products with product markings written in English designed for sale or resale in the United States.

70.  Defendant, Beijing Building Materials Import & Export Co., Ltd., is a foreign corporation that works collaboratively with Taishan that purchases and/or sells Taishan wallboard products with product markings written in English designed for sale or resale in the United States.

71.  Defendant, Taian Taigao Trading Co., Ltd., is a foreign corporation that works collaboratively with Taishan that purchases and/or sells Taishan wallboard products with product markings written in English designed for sale or resale in the United States.

23

72.   Defendant, Nantong Economic and Technological Development Zone Corporation, is a foreign corporation that works collaboratively with Taishan that purchases and/or sells Taishan wallboard products with product markings written in English designed for sale or resale in the United States.

73.   Defendant, Qingdao Kanghong Import and Export Co., Ltd., is a foreign corporation that works collaboratively with Taishan that purchases and/or sells Taishan wallboard products with product markings written in English designed for sale or resale in the United States.

74.   Defendant, Zhejiang Provincial Second Light Industry Enterprises Group Imp. & Exp. Co., Ltd., is a foreign corporation that works collaboratively with Taishan that purchases and/or sells Taishan wallboard products with product markings written in English designed for sale or resale in the United States.

75.   Defendant, SIIC Shanghai International Trade Group Pudong Co., Ltd., is a foreign corporation that works collaboratively with Taishan that purchases and/or sells Taishan wallboard products with product markings written in English designed for sale or resale in the United States.

76.   Defendant, Jiangsu Sainty International Economic & Technical Cooperation Co., Ltd., is a foreign corporation that works collaboratively with Taishan that purchases and/or sells Taishan wallboard products with product markings written in English designed for sale or resale in the United States.

77.   Defendant, Zibo Interntional Economic and Technical Cooperation Corporation, is a foreign corporation that works collaboratively with Taishan that purchases and/or sells Taishan wallboard products with product markings written in English designed for sale or resale in the United States.

24

78.  Defendant, Shanghai Kaidun Development Co., Ltd., is a foreign corporation that works collaboratively with Taishan that purchases and/or sells Taishan wallboard products with product markings written in English designed for sale or resale in the United States.

79.  Defendant, Shanghai Yujin Industry Co., Ltd., is a foreign corporation that works collaboratively with Taishan that purchases and/or sells Taishan wallboard products with product markings written in English designed for sale or resale in the United States.

80.  Defendant, Hangzhou Great Import and Export Co., Ltd., is a foreign corporation that works collaboratively with Taishan that purchases and/or sells Taishan wallboard products with product markings written in English designed for sale or resale in the United States.

81.  Defendant, Xuzhou Hanbang Global Trade Co., Ltd., is a foreign corporation that works collaboratively with Taishan that purchases and/or sells Taishan wallboard products with product markings written in English designed for sale or resale in the United States.

82.  Defendant, China Xuzhou International Economic & Technological Cooperation Co., Ltd., is a foreign corporation that works collaboratively with Taishan that purchases and/or sells Taishan wallboard products with product markings written in English designed for sale or resale in the United States.

83.  Defendant, Jiangsu Easthigh Group Import & Export Co., Ltd., is a foreign corporation that works collaboratively with Taishan that purchases and/or sells Taishan wallboard products with product markings written in English designed for sale or resale in the United States.

84.  Defendant, Qingdao Joy Industrial & Development Co., Ltd., is a foreign corporation that works collaboratively with Taishan that purchases and/or sells Taishan wallboard products with product markings written in English designed for sale or resale in the United States.

85.  To the extent any of the foreign defendants are deemed to be foreign sovereign entities, including but not limited to Taishan, BNBM, China National Building Material Co., Ltd., BNBM Group and CNBM Group, Plaintiffs bring their claims against these entities pursuant to 28 U.S.C. § 1605(a)(2), the commercial activity exception to the Foreign Sovereign Immunities Act, or alternatively under § 1605(a)(5), the tortious act exception.  Plaintiffs allege that the claims against the foreign defendants are based upon commercial activities carried on in the United States along with entities such as CNBM USA Corp, BNBM American, and United Suntech.  The claims also seeks monetary damages against a foreign state for damage to property occurring in the United States, caused by the tortious acts or omissions of that foreign state, or of any official or employee of that foreign state while acting within the scope of his office or employment.

### FACTS REGARDING DEFENDANTS' CONDUCT

**A.    DEFENDANTS PURPOSEFULLY AVAILED THEMSELVES OF THE BENEFITS OF CONDUCTING BUSINESS IN THE UNITED STATES AND COLLABORATED FOR PURPOSES OF CULTIVATING THE AMERICAN MARKET AND SELLING THEIR DRYWALL TO AMERICAN CONSUMERS**

86.  Many of the Taishan defendants that sell and/or resell Taishan drywall with markings written in English for the explicit purpose of sale to the United States market, had counsel for Taishan state on their behalf but without entering an appearance on their behalf that they have no expectation whatsoever that they were going to purposely avail themselves of state markets of any particular state in the United States.

87.  Defendants were aware that their products were being sold in the United States notwithstanding this representation by their counsel.  For instance, during the time period when its drywall was being sold to American consumers, Taishan's website boasted that it was exporting

large quantities of drywall to the United States and that its drywall complied with ISO quality

standards.  In addition, Taishan's employees as well as the employees of its subsidiaries sent

emails to potential customers boasting about their experience exporting large quantities of drywall

to the United States and providing false assurances that their drywall complied with ASTM

quality standards.

88.  The Defendants in this litigation have not only purposefully availed themselves of the

benefits of conducting business in the United States by marketing their products in the United

States but also by establishing corporate entities with a physical presence in the United States.

These entities were set up by Defendants to further market and promote the sale of their products

to American consumers.  For instance, the foreign defendants have incorporated at least three

entities in the United States (CNBM USA Corp, BNBM America and United Suntech) that

operate within the United States and coordinate the sale of Defendants' products to American

customers.  These domestic entities are part of a larger effort to cultivate a market for Defendants'

products in the United States.

89.  By way of example of Defendants' efforts to cultivate a market for their products in

the United States, discovery has revealed communications by an individual using an e-mail

address that includes the term "BNBM USA" as part of the address.  Although Plaintiffs have

been unable to locate an entity by the name of BNBM USA, it is presumed that the individual

using this e-mail address is employed by one of the BNBM entities.  The use of a "BNBM USA"

e-mail address by a BNBM employee demonstrates that Defendants intended to market their

products in the United States.

90.  Defendants also collaborated for purposes of cultivating the market in the United

States and selling products to American consumers. Although Plaintiffs have been unable to locate an entity by the name of BNBM USA, the BNBM employee using the BNBM USA e-mail address coordinated the sale of Taishan products to American consumers. For instance, the individual using this e-mail address arranged for American customers to visit Taishan's factories in China.

91. By way of further example, Taishan and its subsidiaries operated as one entity for purposes of distributing drywall to the United States. For instance, TTP's employees often held themself out as Taishan employees through business cards and information communicated to potential customers via email. TTP's employees also participated in the sale of Taishan's drywall. Additionally, the sales people for Taishan and its subsidiaries would hold meetings to discuss matters involving the sale of drywall. Both Taishan and TTP also sold drywall under the same brand name.

## B. THE DEFENDANTS HAVE DELIBERATELY INCREASED PLAINTIFFS' LITIGATION EXPENSES, DELAYED THESE PROCEEDINGS AND THWARTED PLAINTIFFS' DISCOVERY EFFORTS

92. Upon information and belief, the manufacturing defendants have deliberately delayed the progress of this litigation and taken measures to increase the litigation costs to plaintiffs. For instance, Defendants like Taishan have only entered their appearances in a case after being served with a complaint consistent with the requirements of Hague Convention. Taishan refuses to accept service of process even though it has entered its appearance in this litigation and is represented by counsel. Taishan's clear purpose in refusing to accept service of process is to delay the service of complaints and to force plaintiffs to incur hundreds of thousands of dollars in service costs.

93. Taishan also deliberately increased plaintiffs' litigation costs by offering inadequate

witnesses for the jurisdictional deposition conducted in Hong Kong and by obstructing plaintiffs'
efforts to obtain discovery from these witnesses.  Notwithstanding that plaintiffs incurred tens of
thousands of dollars to attend the depositions in Hong Kong, Taishan produced inadequate
witnesses, retained a check interpreter who repeatedly interupted the depositions, and did not
allow adequate questioning of the witnesses.

94.  Taishan also deliberately increased plaintiffs' litigation costs by refusing to participate
in *Germano* until after plaintiffs had concluded default proceedings.  Taishan was clearly aware of
the *Germano* default proceedings since it managed to file an appeal within the time period
contemplated by the Federal Rules of Civil Procedure.  Instead of defending the case, Taishan
allowed plaintiffs to incur additional litigation expenses while it observed the default proceedings.
Taishan's appeal to the Fifth Circuit has further increased these litigation expenses to plaintiffs.

95.  Upon information and belief, the manufacturing defendants have also taken deliberate
measures in concert with one another, designed to thwart discovery and to hide the interrelated
nature of the manufacturing defendants. For instance, defendants such as BNBM and their related
entities have been served with various complaints and have been held in default since they refuse
to enter an appearance or offer any defense in this litigation.  The clear purpose of this refusal is to
hide the company's ownership interests in defendants like Taishan and to avoid discovery on
these and other topics, and deprive plaintiffs of the knowledge of their ownership and relationship
with each other.  These defendants intransigence and failure to participate in federal judicial
proceedings highlights their fraudulent business practices in this jurisdiction.

Case 2:09-md-02047-EEF-MBN Document 21252-1 Filed 03/29/18 Page 30 of 59

 C. **PLAINTIFFS ARE ENTITLED TO THE EQUITABLE TOLLING OF THEIR CLAIMS SINCE DEFENDANTS FRAUDULENTLY CONCEALED THEIR ROLE IN THE DISTRIBUTION AND SALE OF THE DRYWALL AT ISSUE IN THIS LITIGATION**

96. The Defendants in this litigation distributed their drywall in a manner that was designed to conceal their role in the manufacture, distribution and sale of their drywall. For instance, Taishan and its subsidiaries often distributed and sold drywall that was customized according to their customers' specifications (*i.e.,* Taishan and its subsidiaries distributed and sold drywall that was marked "Crescent City Gypsum, Inc."). This customized drywall failed to identify Taishan or any of its related companies as the manufacturer of the drywall. By manufacturing, distributing and selling drywall in this manner, Defendants intentionally or fraudulently concealed from the injured parties the ability to identify those defendants responsible for the problematic drywall that was installed in their homes.

97. The Defendants also employed a complex distribution scheme that made it difficult for injured parties to identify the parties responsible for the manufacture, distribution and sale of the drywall installed in their homes. For instance, much of TTP's drywall was exported by Beijing Building Materials Import & Export Co., Ltd. Many parties attempting to identify the manufacturer of this drywall undoubtedly thought the manufacturer was BNBM, not TTP. By manufacturing, distributing and selling drywall in this manner, Defendants intentionally or fraudulently concealed from the injured parties the ability to identify those defendants responsible for the problematic drywall that was installed in their homes.

98. In light of this fraudulent concealment by Defendants, Plaintiffs are entitled to the equitable tolling of their claims.

## FACTS REGARDING DEFENDANTS' PROBLEMATIC DRYWALL

99.  Defendants' drywall is predominantly composed of gypsum.

100.  In "problematic drywall" (such as that designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold by Defendants herein), sulfur compounds exit the drywall.

101.  The sulfur compounds, including Hydrogen Sulfide, Carbonyl Sulfide, and Carbon Disulfide, exit Defendants' drywall and cause rapid sulfidation and damage to personal property (such as air conditioning and refrigerator coils, faucets, utensils, electrical wiring, copper, electronic appliances and other metal surfaces and property).

102.  Exposure to the sulfur compounds that exit Defendants' drywall, causes personal injury resulting in eye problems, sore throat and cough, nausea, fatigue, shortness of breath, fluid in the lungs, and/or neurological harm.

103.  Although the drywall functions according to its intended purpose as a building component, it is unfit for this purpose due to the damaging side effects and/or because its use is so inconvenient that Plaintiffs would not have purchased Taishan drywall and/or their homes had the side effects been disclosed by Defendants.

104.  As a direct and proximate result of Defendants' actions and omissions, Plaintiffs' and the Class Members' structures, personal property, and bodies have been exposed to Defendants' problematic drywall and the harmful effects of the sulfur compounds that exit from Defendants' problematic drywall.

105.  Defendants tortiously manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed and/or sold the problematic drywall, which was unfit for its

intended purpose and unreasonably dangerous in its normal use in that the drywall caused rapid

sulfidation and damage to personal property in Plaintiffs' and Class Members' homes, residences

or structures and/or caused personal injury resulting in eye problems, a sore throat and cough,

nausea, fatigue, shortness of breath, fluid in the lungs, and/or neurological harm.

106. Defendants recklessly, wantonly, and/or negligently manufactured, exported,

imported, distributed, delivered, supplied, inspected, marketed and/or sold the problematic

drywall at issue in this litigation.

107. Defendants recklessly, wantonly and/or negligently implemented faulty procedures

for purposes of formulating, preparing, testing, and otherwise ensuring the quality and/or

character of the problematic drywall at issue in this litigation.

108. As a direct and proximate result of Defendants' problematic and unfit drywall and

the harmful effects of the sulfur compounds exit these products, Plaintiffs and Class Members

have suffered, and continue to suffer economic harm and/or personal injury.

109. As a direct and proximate result of Defendants' problematic and unfit drywall and

the harmful effects of the sulfur compounds exit these products, the Plaintiffs and the Class

Members have suffered, and continue to suffer damages. These damages include, but are not

limited to, costs of inspection; costs and expenses necessary to remedy, replace and remove the

problematic drywall and other property that has been impacted; lost value or devaluation of their

homes, residences or structures and property as a direct result of damage caused to the property

and indirect damage resulting from perceived defects to the property, including stigma damages;

loss of use and enjoyment of their home and property; and/or damages associated with personal

injuries.

32

110. As a direct and proximate result of Defendants' problematic and unreasonably dangerous drywall and the harmful effects of the sulfur compounds that exit these products, Plaintiffs and the Class Members have been exposed to harmful sulfur compounds, suffered personal injury, have been placed at an increased risk of disease, and have need for injunctive relief in the form of repair and remediation of their home, recision of contracts, the ordering of emergency/corrective notice, the ordering of testing and monitoring, and/or the ordering of medical monitoring.

### FACTS REGARDING UNITED STATES AND CHINESE INVESTORS WHO AIDED AND ABETTED DEFENDANTS

111. J.P. Morgan Chase & Co. ("J.P. Morgan"), Morgan Stanley and certain other corporations and entities (collectively the "Investing Entities"), engaged in a deliberate and/or reckless course of conduct designed to aid and abet Defendants in the manufacture, exporting, importing, distribution, delivery, supply, marketing, and/or sale of the defective drywall at issue in this litigation.

112. By information and belief, but for these investments by the Investing Entities, Defendants would not have been able to manufacture, export, import, distribute, deliver, supply, market, and/or sell of the defective drywall at issue in this litigation.

113. The Investing Entities were aware or should have been aware that Defendants were manufacturing, exporting, importing, distributing, delivering, supplying, marketing, and/or selling the defective drywall at issue in this litigation with the intent to sell and distribute the drywall in the United States.

114. The Investing Entities were aware or should have been aware that Defendants were

33

manufacturing, exporting, importing, distributing, delivering, supplying, marketing, and/or selling the defective drywall at issue in this litigation in a manner that would make it difficult for injured consumers (located in the United States) to accomplish service on the foreign defendants.

115. Notwithstanding their apparent knowledge and/or negligent failure to discover the tortious scheme by the foreign defendants, the Investing Entities purposefully made investments with these foreign defendants in a manner that was designed to shield them from liability to American property owners.

116. For instance, J.P. Morgan acquired a 12.3% interest in CNBM's tradeable shares with the understanding that this entity would profit from its exploitation of homeowners seeking to rebuild their lives after the devastation of hurricanes Rita and Katrina. This type of investment was ideal to the Investing Entities since these investments could be very profitable while avoiding the risk of loss where the foreign defendants can avoid the service of process by American consumers and responsibility for their tortious conduct.

117. Other entities that are known to own an interest in CNBM are Atlantis Investment Management Ltd., Schroder Investment Management Limited, Baillie Gifford & Co., Callander Alex, Menzies Robin, Plowden Charles, Telfer Andrew, Warden Alison, Whitley Sarah, and Government of Singapore Investment Corporation Pte Ltd.

118. Entities that are known to own an interest in BNBM are China Construction Bank, Cha Genlou, Industrial and Commercial Bank of China, Aerospace Science & Technology Finance Co., Ltd., China Social Insurance Fund Portfolia 108, Bank of China, Agricultural Bank of China, Zhongrong International Trust Co., Ltd.

119. By investing in entities such as CNBM and BNBM, the Investing Entities put

34

themselves in a position to profit from the exploitation of American consumers who were injured by Defendants.

120. Accordingly, the Investing Entities engaged in a course of conduct, individually and/or collectively, that caused the Plaintiffs' and Class Members' exposure to the defective drywall at issue in this litigation by virtue of their interdependent conscious parallel conduct in investing in foreign entities responsible for the manufacture, exporting, importing, distribution, delivery, supply, inspection, marketing, and/or sale of the defective drywall.

121. Additional discovery will reveal the full role and responsibility of the Investing Entities for the damages incurred by Plaintiffs and Class Members and their potential as party defendants.

## CLASS ACTION ALLEGATIONS

122. All Plaintiffs bring this suit as a class action pursuant to Rules 23(a), (b)(1), (b)(2), (b)(3) and/or 23(c)(4) of the Federal Rules of Civil Procedure, on behalf of themselves and the following Class comprised of:

> All owners and residents (past or present) of real property located in the United States containing problematic Chinese drywall manufactured, sold, distributed, and/or supplied by the Defendants.

123. The following Persons shall be excluded from the class: (1) Defendants and their subsidiaries, affiliates, officers and employees; (2) all persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the judge(s) to whom this case is assigned and any immediate family members thereof.

124. Upon information and belief, Defendants' problematic and unreasonably dangerous drywall was installed in at least hundreds of homes, residences, or other structures owned by

plaintiffs and class members.  Therefore, the class is sufficiently numerous such that the joinder of

all members of the class in a single action is impracticable.

125.  There are numerous common questions of law and fact that predominate over any

questions affecting only individual members of the class.  Among these common questions of law

and fact are the following:

a.     whether Defendants' drywall products are problematic and/or unfit for their

       intended purpose;

b.      whether Defendants tortiously manufactured, exported, imported, distributed,

       delivered, supplied, inspected, marketed, and/or sold problematic drywall products;

c.     whether plaintiffs are entitled to recover compensatory, exemplary, incidental,

       consequential, and/or other damages as a result of Defendants' unlawful and

       tortious conduct; and

d.     whether plaintiffs are entitled to recover injunctive and/or equitable relief as a

       result of Defendants' unlawful and tortious conduct.

126.  The legal claims of named Plaintiffs are typical of the legal claims of other class

members.  Named plaintiffs have the same legal interests and need for legal remedies as other

class members.

127.  Named plaintiffs are adequate representatives of the class.  Together with their legal

counsel, each will fairly and adequately protect the interests of class members.  Named plaintiffs

have no known conflict with the class and are committed to the vigorous prosecution of this

action.

128.  The undersigned counsel are competent counsel experienced in class action

36

litigation, mass torts, and complex litigation involving harmful products.  Counsel will fairly and adequately protect the interests of the class.

129.  The various claims asserted in this action are certifiable under the provisions of Federal Rules of Civil Procedure 23(b)(1) because prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other class members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

130.  The claims for injunctive relief in this case are certifiable under Fed. R. Civ. P. 23(b)(2).  Defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole.

131.  A class action is superior in this case to other methods of dispute resolution.  The class members have an interest in class adjudication rather than individual adjudication because of their overlapping rights.  It is highly desirable to concentrate the resolution of these claims in this single forum because it would be difficult and highly unlikely that the affected Class Members would protect their rights on their own without this class action case.  Management of the class will be efficient and far superior to the management of individual lawsuits.  Accordingly, plaintiffs' legal claims are properly certified pursuant to Rule 23(b)(3).

132.  The issues particularly common to the class members' claims, some of which are identified above, are alternatively certifiable pursuant to Fed. R. Civ. P. 23(c)(4), as resolution of

37

these issues would materially advance the litigation, and class resolution of these issues is superior to repeated litigation of these issues in separate trials.

**COUNT I**
**NEGLIGENCE**
**(All Defendants)**

133.  Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

134.  Defendants owed a duty to plaintiffs and class members to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, I) marketing, and/or j) selling this drywall, including a duty to adequately warn of their failure to do the same.

135.  Defendants knew or should have known that their wrongful acts and omissions would result in harm and damages in the manner set forth herein.

136.  Defendants breached their duty to exercise reasonable care in the designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, and/or selling the problematic drywall.

137.  Defendants likewise breached their duties to plaintiffs and class members by failing to warn about the problematic nature of the drywall.  Defendants, through the exercise of reasonable care, knew or should have known the nature of the problematic drywall and the adverse effects that it could have on the property and bodies of plaintiffs and class members.

138.  Defendants breached their duty to exercise reasonable care to timely remove and/or recall from the market and/or otherwise prevent the continued contact of plaintiffs and class members with the drywall, upon leaning it had been sold in an unreasonably dangerous condition.

139.  Given the problematic nature of Defendants' drywall, Defendants knew or should have

38

known that their product could, and would, cause harm, damages and/or personal injuries to plaintiffs and class members.

140. As a direct and proximate cause of Defendants' acts and omissions, plaintiffs and class members were harmed and have incurred damages and/or personal injuries as described herein.

## COUNT II
## NEGLIGENCE PER SE
### (All Defendants)

141. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

142. Defendants owed statutory duties to plaintiffs and class members to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, I) marketing, and/or j) selling this drywall.

143. Defendants breached their statutory duties to the plaintiffs and class members by failing to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, I) marketing, and/or j) selling this drywall.

144. Defendants likewise breached their statutory duties, including but not limited to those imposed under the International Building Code ("IBC") and other State and local Building Codes, to Plaintiffs and Class Members by failing to warn about the problematic nature of the drywall. For instance, it is specifically alleged that Defendants furnished the drywall in violation of ASTMC C 1396/C 1396M-069, and its predecessor(s).

145. Defendants, through the exercise of reasonable care, knew or should have known the nature of the problematic drywall and the adverse effects that it could have on the property and bodies of Plaintiffs and Class Members.

146. Given the problematic nature of Defendants' drywall, Defendants knew or should have

39

known that their product could, and would, cause harm, damages and/or personal injuries to plaintiffs and class members.

147. As a direct and proximate cause of Defendants' acts and omissions, plaintiffs and class members were harmed and have incurred damages and/or personal injuries as described herein.

**COUNT III**
**STRICT LIABILITY**
**(All Defendants)**

148. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

149. At all times relevant hereto, Defendants were in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public.

150. The drywall, including that installed in the homes of class members was placed by Defendants in the stream of commerce.

151. Defendants knew that the subject drywall would be used without inspection by consumers.

152. Defendants intended that the drywall reach the ultimate consumers, such as class members, and it indeed reached class members when it was installed in their homes.

153. When installed in class members' homes, the drywall was in substantially the same condition as it was in when Defendants manufactured, sold, and/or delivered it.

154. At all times relevant hereto the subject drywall was used in a manner consistent with the uses intended by, or known to Defendants, and in accordance with the Defendants' directions and instructions.

155. The subject drywall was not misused or altered by any third parties.

156. The Defendants' drywall was improperly manufactured, designed, inspected, tested,

40

marketed, distributed, and sold.

157. The design impropriety was in designing drywall that allows high levels of sulfur compounds to exit the drywall.

158. The manufacturing impropriety was in improperly selecting, testing, inspecting, mining, making, assembling, and using, gypsum for drywall with levels of sulfur compounds that were too high and allow high levels of sulfur compounds to exit the drywall.

159. The drywall was also problematic because it was improperly exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold in a unacceptable condition, as described above.

160. The Defendants' negligence in manufacturing, designing, inspecting, testing, marketing, distributing, and selling of the drywall rendered it unsafe and unreasonably dangerous for its intended use and to class members.

161. The drywall is also problematic and unreasonably dangerous because Defendants failed to adequately warn and instruct class members of their negligent design, inspection, testing, manufacturing, marketing, and selling of the drywall.

162. Class Members were unaware of the unreasonably dangerous propensities and condition of the drywall, nor could class members, acting as reasonably prudent people discover that Defendants' drywall was problematic, as set forth herein, or perceive its danger.

163. Defendants' problematic drywall was much more dangerous and harmful than expected by the average consumer and by class members.

164. Defendants' problematic drywall benefit to class members, if any, was greatly outweighed by the risk of harm and danger to them.

41

165. The harmful and dangerous propensities of the drywall, as well as Defendants' failure to adequately warn class members of these propensities rendered the drywall unreasonably dangerous and was the direct and proximate cause of damages and/or personal injuries to class members.

## COUNT IV
## BREACH OF EXPRESS AND/OR IMPLIED WARRANTIES
### (All Defendants)

166. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

167. Defendants and/or their agents were in privity with plaintiffs and class members and/or plaintiffs and class members were foreseeable third party beneficiaries of any warranty.

168. At the times Defendants utilized, supplied, inspected, and/or sold this drywall for use in structures owned by plaintiffs and class members, Defendants knew, or it was reasonably foreseeable, that the drywall would be installed in structures owned by plaintiffs and class members for use as a building material, and expressly or impliedly warranted the product to be fit for that use.

169. Defendants placed their drywall products into the stream of commerce in a problematic condition and these products were expected to, and did, reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

170. Although the drywall functions according to its intended purpose as a building component, it is unfit, problematic as alleged in Paragraph 100 and not merchantable for this purpose due to the damaging side effects and/or because its use is so inconvenient that Plaintiffs would not have purchased their homes had the side effects been disclosed by Defendants.

171. The Defendants breached their warranty because the drywall was not fit and safe for the particular purposes for which the goods were required (to be installed in structures owned by plaintiffs and class members as a building material) due to the problems set forth herein.

42

172.  Defendants had reasonable and adequate notice of the plaintiffs' and the class members' claims for breach of warranty and failed to cure.

173.  As a direct and proximate cause of Defendants' breach of warranties, plaintiffs and class members have incurred harm and damages and/or personal injuries as described herein.

### COUNT V
### REDHIBITION
### (By Louisiana Plaintiffs Against All Defendants)

174.  Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

175.  The drywall manufactured, distributed and/or sold by Defendants was not reasonably fit for its ordinary and intended purpose as alleged in Paragraph 100 above.

176.  Defendants are therefore liable to Louisiana Plaintiffs for all damages reasonable in the premises, in accordance with La. Civ. Code art. 2524.

177.  In addition, or in the alternative, the drywall manufactured, distributed and/or sold by Defendants contained redhibitory defects, in that, at the time of delivery, the propensity to allow sulfur compounds to exit the drywall renders the drywall so useless and/or inconvenient that it must be presumed that Plaintiffs would not have purchased the drywall had they known of the redhibitory defect or defects.

178.  In the alternative, the defects are redhibitory defects in that, while not rendering the drywall totally useless, diminish the drywall's use and/or value to such an extent that it must be presumed that the buyer would have bought it, but for a lesser price.

179.  The Defendants are conclusively presumed to know of the redhibitory defects in the drywall manufactured by them.

180.  In addition, it is believed and alleged that Defendants knew of the redhibitory defects in

43

the drywall at the time the drywall was delivered and/or sold.

181.  Defendants have had numerous opportunities to repair and/or replace the drywall and associated fixtures and/or building components and have failed to do so; in addition, and/or in the alternative, such requests have been, would have been and/or would be futile.  All Defendants, in addition, or alternatively, had actual knowledge of the problems in the drywall and the need for replacement, remediation and/or repair.

182.  All Defendants are therefore liable to all Louisiana Plaintiffs for a return of the purchase price, (with interest from the time it was paid), reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the drywall and associated items, for damages, and for reasonable attorneys' fees, in accordance with La. Civ. Code art. 2545.

### COUNT VI
### LOUISIANA PRODUCTS LIABILITY ACT
### (All Defendants)

183.  Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

184.   In addition to any and all damages, attorneys fees and other remedies made available to Louisiana Plaintiffs under the warranty of fitness and/or warranty against redhibitory defects, the Manufacturing Defendants are liable to Louisiana Plaintiffs under the Louisiana Products Liability Act, ("LPLA"), La. R.S. 9:2800.51, *et seq.*

185.  The Manufacturing Defendants, upon information and belief, expressly warranted that the gypsumboards manufactured and sold are guaranteed to be free from defects in materials and workmanship.

186.  The drywall at issue is, in all cases, unreasonably dangerous by virtue of the unreasonable emission of sulfur compounds which do not in any way contribute to or enhance the utility of the

Case 2:09-md-02047-EEF-MBN Document 21252-1 Filed 03/29/18 Page 45 of 55

drywall, yet pose a risk to the wiring, plumbing, appliances, personal property, overall economic value of the property and financial security of the owner, and/or the health of the residents of the property.

187. At all times pertinent and material hereto, there existed alternative feasible manufacturing processes and/or designs of drywall which perform all of the functions and utility of traditional drywall, without allowing unreasonable levels of sulfur compounds to exit the drywall.

188. At all times pertinent and material hereto, Manufacturing Defendants knew that their drywall was unreasonably dangerous and/or problematic as set forth herein.

189. In the alternative, Manufacturing Defendants should have, at all times pertinent and material hereto, known of the unreasonably dangerous and/or problematic characteristics and/or conditions, had they reasonably employed then-existing scientific and/or technical knowledge, reasonable testing, and/or other reasonable and then-accepted methods of quality assurance and/or quality control.

190. Defendants' drywall is unreasonably dangerous in composition or construction in that, at the time it left Defendant's control, it deviated in a material way from Defendant's own specifications or performance standards.

191. In addition, and in the alternative, Defendants' drywall is unreasonably dangerous in design, in that, at the time the drywall left Defendant's control, there existed an alternative design for the product that was capable of preventing Plaintiffs' damage, and the likelihood of causing the plaintiffs' damage and the gravity of that harm outweighed the burden (if any) on the Defendants in adopting such alternative design and the adverse effect (if any) on the utility of the drywall.

192. In addition, and in the alternative, Defendants' drywall is unreasonably dangerous in that it fails to conform to an express warranty about the product which induced the use of the product and

45

caused damage to Plaintiffs to the extent that the warranty was untrue.

193. In addition, and in the alternative, Defendants' drywall is unreasonably dangerous due to an inadequate warning, in that, at the time the drywall left Defendant's control, the drywall possessed a characteristic that might cause damage and yet Defendant failed to use reasonable care to provide an adequate warning of such characteristics and/or dangers to users and/or handlers of the drywall.

194. Defendants are therefore liable to Louisiana Plaintiffs for all damages reasonable in the premises.

## COUNT VII
## PRIVATE NUISANCE
### (All Defendants)

195. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

196. The Defendants' tortious or wrongful acts or omissions have caused sulfur compounds and/or other chemical leaching into structures owned by Plaintiffs and Class Members which has unreasonably interfered, and continues to interfere, with the Plaintiffs' and Class Members' use and enjoyment of their properties and caused them harm and damage as discussed herein.

197. Defendants' interference has impaired the rights of Plaintiffs' and Class Members' health, comfort, safety, free use of their property, and/or peaceful enjoyment of their property.

198. Defendants' invasions were intentional and unreasonable, and/or unintentional but otherwise negligent or reckless.

199. The interference with Plaintiffs' and Class Members' use of their property caused by Defendants is substantial and is ongoing.

Case 2:09-md-02047-EEF-JCW Document 11-1 Filed 06/21/09 Page 47 of 55

200.  Defendants' private nuisance was the direct, proximate, and foreseeable cause of Plaintiffs' and Class Members' damages, injuries, harm, loss, and increased risk of harm, which they suffered and will continue to suffer.

201.  As a direct and proximate cause of Defendants' creation of a private nuisance, Plaintiffs and Class Members have incurred harm and damages and/or personal injuries as described herein.

## COUNT VIII
### UNJUST ENRICHMENT
### (All Defendants)

202.  Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

203.  Defendants received money as a result of plaintiffs' and class members' purchases of Defendants' problematic drywall, or purchases of structures containing this drywall, either directly or through an agent, and Defendants wrongfully accepted and retained these benefits to the detriment of Plaintiffs and Class Members.

204.  Defendants' acceptance and retention of these benefits under the circumstances make it inequitable and unjust for Defendants to retain the benefit without payment of the value to the plaintiffs and the class members.

205.  Defendants, by the deliberate and tortious conduct complained of herein, have been unjustly enriched in a manner which warrants restitution.

## COUNT IX
### VIOLATION OF CONSUMER PROTECTION ACTS
### (All Defendants)

206.  Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

207.  This is an action for relief under the various Consumer Protection Acts of the jurisdictions in which affected properties are present, including but not limited to, L.SA-R.S. 51:1401,

*et seq.* (Louisiana Unfair Trade Practices and Consumer Protection Law); Ala. Code 1975 § 8-19-1, *et seq.* (Alabama Deceptive Trade Practices Act); G.S. § 75-1.1, *et seq.* (North Carolina Consumer Protection Act); F.S. § 501.201, *et seq.* (Florida Deceptive and Unfair Trade Practices Act); Va. Code. Ann. § 59.1-196, *et seq.* (Virginia Consumer Protection Act); Tex. Bus. Com. Code Ann. § 17.41, *et seq.* (Texas Deceptive Trade Practices-Consumer Protection Act); Miss. Code Ann. § 75-24-1, *et seq.* (Mississippi Consumer Protection Act).

208. The Defendants' acts and omissions as well as their failure to use reasonable care in this matter as alleged in this complaint, including but not limited to, the knowing misrepresentation or failure to disclose the source, affiliation, origin, characteristics, ingredients, standards and quality of problematic drywall constitute violation of the provisions of the Consumer Protection Acts of the Relevant States.

209. Plaintiffs and class members have suffered actual damages as a result of Defendants' violation of these Consumer Protection Acts and are entitled to relief.

210. As a direct and proximate cause of Defendants' violations of the Consumer Protection Acts of the Relevant States, plaintiffs and class members have incurred harm and damages as described herein.

## COUNT X
## EQUITABLE AND INJUNCTIVE RELIEF AND MEDICAL MONITORING
### (All Defendants)

211. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

212. Plaintiffs and the class members are without adequate remedy at law, rendering injunctive and other equitable relief appropriate.

48

213.  Plaintiffs and the class members will suffer irreparable harm if the Court does not render the injunctive relief and medical monitoring relief set forth herein, and if defendants are not ordered to recall, buy back, rescind, and/or repair the structures owned by plaintiffs and class members.

214.  Plaintiffs, on behalf of themselves and all others similarly situated, demand injunctive and equitable relief and further, that defendants be ordered to: (1)  to buy back or rescind the contracts for sale of the drywall installed in plaintiffs' and class members' homes or other structures, or  in the alternative, remediate, repair and/or replace the drywall in such structures upon proof by the defendants of the feasibility of such remedy or repair; (2) cease and desist from misrepresenting to the Class and the general public that the drywall is not problematic and/or unreasonably dangerous as alleged herein; (3) institute, at their own cost, a public awareness campaign to alert the class and general public of the harm and dangers associated with the drywall; and (4) create, fund, and support a medical monitoring program.

215.  Until Defendants' problematic drywall has been removed and remediated, Defendants must provide continued air monitoring in the structures owned by plaintiffs and class members.

216.  Plaintiffs and class members have been exposed to greater than normal levels of sulfur compounds as a result of exposures to Defendants' problematic and unfit drywall and have suffered personal injuries as a result.

217.  The sulfur compounds which exit from the Defendants' drywall and to which plaintiffs and class members have been exposed are proven unreasonably dangerous.

218.  Plaintiffs' and class members' exposures were caused by the Defendant's negligent or otherwise tortious conduct.

49

219.  Plaintiffs' and class members' exposure may lead to serious health problems, diseases, and medical conditions that may be prevented by timely medical diagnosis and treatment.

220.  The method and means for diagnosing the plaintiffs' and class members' potential medical problems are well accepted in the medical and scientific community and will be of great benefit to the plaintiffs and class members by preventing or minimizing health problems that they may encounter as a result of the problematic and unfit drywall.

221.  As a proximate result of their exposure to sulfide and other noxious compounds from Defendants' problematic and unfit drywall, plaintiffs and class members have developed a significantly increased risk of contracting a serious latent disease.

222.  Monitoring procedures exist that make the early detection of any latent disease possible that are different from those normally recommended in the absence of the exposure.

223.  The prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

## DEMAND FOR JURY TRIAL

Plaintiffs, individually and on behalf of the class members, hereby demand a trial by jury as to all issues so triable as a matter of right.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs, on behalf of themselves and all others similarly situated demand upon Defendants jointly and severally for:

        a.        an order certifying the case as a class action;

        b.        an order certifying the class;

        c.        an order appointing plaintiffs as the class representatives of the class;

d.      an order appointing undersigned counsel and their firms as counsel for the

        class;

e.      compensatory and statutory damages;

f.      punitive damages as allowed by law;

g.      pre and post-judgment interest as allowed by law;

h.      injunctive relief;

I.      an award of attorneys' fees as allowed by law;

j.      an award of taxable costs; and

k.      any and all such further relief as this Court deems just and proper.

Respectfully submitted,


Dated: July 5, 2011

/s/ Ervin A. Gonzalez
Ervin A. Gonzalez (Fla. Bar No. 500720)
Ervin@colson.com
COLSON, HICKS, EIDSON, COLSON
 MATTHEWS, MARTINEZ, GONZALES,
 KALBAC & KANE
255 Alhambra Circle, Penthouse
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444

Arnold Levin
Fred S. Longer
Alevin@lfsblaw.com
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
*Plaintiffs' Lead Counsel MDL 2047*

## COURT APPOINTED PLAINTIFFS' STEERING COMMITTEE IN MDL 2047

Russ M. Herman
Leonard A. Davis
Stephen J. Herman
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhkc.com
*Plaintiffs' Liaison Counsel MDL 2047*

Arnold Levin
Fred S. Longer
Matthew C. Gaughan
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel MDL 2047*

Dawn M. Barrios
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
BECNEL LAW FIRM. LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Robert C. Josefsberg
PODHURST ORSECK, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
rjosefsberg@podhurst.com

Bruce William Steckler
BARON & BUDD, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Ervin A. Gonzalez
COLSON, HICKS, EIDSON, COLSON
  MATTHEWS, MARTINEZ, GONZALES,
  KALBAC & KANE
255 Alhambra Circle, Penthouse
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444

Ben W. Gordon, Jr.
LEVIN, PAPANTONIO, THOMAS, MITCHELL
  ECHSNER & PROCTOR, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
LAMBERT AND NELSON
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Gerald E. Meunier
GAINSBURGH, BENJAMIN, DAVID, MEUNIER
 & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seth Parker
PARKER, WAICHMAN, ALONSO LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Scott Wm. Weinstein
MORGAN & MORGAN
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

James Robert Reeves
LUMPKIN & REEVES
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Christopher Seeger
SEEGER WEISS, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
LEWIS & ROBERTS
3700 Glenwood Avenue, Suite 410
Raleigh, NC 27612
Phone: (919) 981-0191
Fax: (919) 981-0431
dkb@lewis-roberts.com

Richard J. Serpe, Esquire
LAW OFFICES OF RICHARD J. SERPE
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com

**OF COUNSEL TO COURT APPOINTED
PLAINTIFFS' STEERING COMMITTEE IN MDL 2047**

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W
Suite  650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Jeremy W. Alters
ALTERS LAW FIRM, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
Phone: (305) 571-8550
Fax: (305) 571-8559
jeremy@alterslaw.com

Andrew A. Lemmon
LEMMON LAW FIRM, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com


### COUNSEL FOR INDIVIDUAL PLAINTIFFS[1]

**Allison Grant, P.A.**,
*Counsel on Behalf of the Following Individual Plaintiffs*:

Haya, Laura and Haya, Daniel and Irene


**Berniard Law Firm, Gregory DiLeo and Kanner & Whiteley,**
*Counsel on Behalf of the Following Individual Plaintiffs*:

Wiltz, Kenneth & Barbara

**Baron & Budd and Alters, Boldt, Brown, Rash & Culmo**
*Counsel on Behalf of the Following Individual Plaintiffs*:

Amorin, Eduardo and Carmen

**Herman, Herman, Katz & Colar, LLP,**
*Counsel on Behalf of the Following Individual Plaintiffs*:

Quartararo, Joseph
Vapy, Cathy Parker

---

[1]Attached hereto as Exhibit "A" is the contact information for each plaintiff's counsel and pro se plaintiff.

**Levin, Fishbein, Sedran & Berman**
**Colson, Hicks, Eidson, Colson, Matthews, Martinez, Gonzales,**
**Kalbac & Kane; and Hausfeld, LLP**,
*Counsel on Behalf of the Following Individual Plaintiffs*:

Fong, Charmaine                    Gallardo, Arledys
Frankze, Julianne & Joshua

**Levin, Fishbein, Sedran & Berman**
**Colson, Hicks, Eidson, Colson, Matthews, Martinez, Gonzales, Kalbac & Kane;**
**Hausfeld, LLP and Law Offices of Richard J. Serpe**,
*Counsel on Behalf of the Following Individual Plaintiffs*:

Fontenot, Perry &          Popovitch, Robert          Vest\, Hugh & Tracy
Cassandra                  Purse, Jason
Hand, Bryon                Topf, Frank & Yvonne

**Parker Waichman Alonso, LLP**,
*Counsel on Behalf of the Following Individual Plaintiffs*:

Abel, Kenneth

§JS 44 (Rev. 2/08) CIVIL COVER SHEET
Case 2:09-md-02047-EEF-MBN Document 22476-1 Filed 02/01/20 Page 56 of 59
Case 2:09-md-02047-EEF-MBN Document 3 Filed 03/30/11 Page 1 of 1

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

**I. (a) PLAINTIFFS**
Eduardo and Carmen Amorin, et al

**DEFENDANTS**
Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Ervin A. Gonzalez & Patrick Montoya
Colson Hicks Eidson
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134

Attorneys (If Known)
Frank T. Spano
Hogan Lovells US, LLP
875 3rd. Avenue
New York, NY 10022

**(d)** Check County Where Action Arose: ☒ MIAMI-DADE ☐ MONROE ☐ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☒ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. Security | ☐ 871 IRS—Third Party | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Act | 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination |
| ☒ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 462 Naturalization | | Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | Application | | |
| | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 950 Constitutionality of State |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | Statutes |

**V. ORIGIN** (Place an "X" in One Box Only)
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. RELATED/RE-FILED CASE(S).**
(See instructions second page): 
a) Re-filed Case ☐ YES ☒ NO
b) Related Cases ☐ YES ☒ NO
JUDGE _____ DOCKET NUMBER _____

**VII. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):
Diversity Product Liability / Problematic Chinese Manufactured Drywall
LENGTH OF TRIAL via _____ days estimated (for both sides to try entire case)

**VIII. REQUESTED IN COMPLAINT:**
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE
SIGNATURE OF ATTORNEY OF RECORD
DATE 7/5/11

FOR OFFICE USE ONLY
AMOUNT _____ RECEIPT # _____ IFP _____

*Eduardo and Carment Amori, et al. v. Taishan Gypsum Co., Ltd.*
*f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*

**Exhibit "A"–Plaintiffs' Counsel and Plaintiffs' Contact**
**Information in Plaintiffs' Class Action Complaint**

| PLAINTIFFS' COUNSEL |
|---|
| Allison Grant, Esquire<br>Allison Grant, P.A.<br>950 Peninsula Corporate Circle<br>Suite 1022<br>Boca Raton, FL  33487<br>Phone:  (561) 994-9646<br>agrant@allisongrantpa.com |
| Jeremy W. Alters<br>Alters Law Firm, P.A.<br>4141 N.E. 2nd Avenue<br>Suite 201<br>Miami, FL 33137<br>Phone: (305) 571-8550<br>Fax: (305) 571-8559<br>jeremy@abbrclaw.com |
| Bruce Steckler<br>Baron & Budd<br>3102 Oak Lawn Avenue<br>Suite 1100<br>Dallas, TX  75219-4281<br>Phone: (214) 521-3605<br>Fax: (214) 520-1181<br>hflowers@baronbudd.com |
| Jeffrey P. Berniard<br>Berniard Law Firm<br>643 Magazine Street, Suite 402<br>New Orleans, LA 70130<br>Phone: (504) 527-6225<br>Fax: (504) 617-6300<br>Jeffberniard@laclaim.com |

| PLAINTIFFS' COUNSEL |
|---|
| Ervin A. Gonzalez<br>Colson, Hicks, Eidson, Colson<br>  Matthews, Martinez, Gonzales,<br>  Kalbac & Kane<br>255 Alhambra Circle, Penthouse<br>Cora Gables, FL 33134<br>Phone: (305) 476-7400<br>Fax: (305) 476-7444<br>Ervin@colson.com |
| Gregory Dileo<br>300 Lafayette Street, Suite 101<br>New Orleans, LA 70130<br>Phone: (504) 522-3456<br>Fax: (504) 522-3888<br>jjochumnola@gmail.com |
| Michael D. Hausfeld<br>Richard S. Lewis<br>Hausfeld LLP<br>1700 K Street, N.W.<br>Suite  650<br>Washington, DC 20006<br>Phone: (202) 540-7200<br>Fax: (202) 540-7201<br>rlewis@hausfeldllp.com |
| Russ M. Herman<br>Leonard A. Davis<br>Stephen J. Herman<br>Herman, Herman, Katz & Cotlar, LLP<br>820 O'Keefe Ave., Suite 100<br>New Orleans, LA 70113<br>Phone: (504) 581-4892<br>Fax. (504) 561-6024<br>rherman@hhkc.com |

| **PLAINTIFFS' COUNSEL** |
|---|
| Alan Kanner<br>Kanner & Whiteley, L.L.C.<br>701 Camp Street<br>New Orleans, LA 70130<br>Phone: (504) 524-5777<br>Fax: (504) 524-5763<br>M.Fuselier@kanner-law.com |
| Arnold Levin<br>Fred S. Longer<br>Matthew Gaughan<br>Levin, Fishbein, Sedran & Berman<br>510 Walnut Street, Suite 500<br>Philadelphia, PA 19106<br>Phone: (215) 592-1500<br>Fax: (215) 592-4663<br>alevin@lfsblaw.com |
| Jerrold Parker<br>Jordan L. Chaikin<br>April S. Goodwin<br>Parker, Waichman, Alonso LLP<br>3301 Bonita Beach Road<br>Bonita Springs, FL 34134<br>Phone: (239) 390-1000<br>Fax: (239) 390-0055<br>Jchaikin@yourlawyer.com |
| Richard Serpe<br>Law Offices of Richard J. Serpe<br>Crown Center, Suite 310<br>580 East Main Street<br>Norfolk, VA 23510-2322<br>rserpe@serpefirm.com<br>Phone: (757) 233-0009<br>Fax: (757) 233-0455<br>rserpe@serpefirm.com |