# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ELIZABETH BENNETT, et al., individually and on behalf of all others similarly situated, [ADDITIONAL PLAINTIFFS LISTED ON SCHEDULE OF PLAINTIFFS ATTACHED HERETO AS EXHIBIT "A"], | ) ) ) ) ) ) | MDL-2047  IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION |
| Plaintiffs, | ) ) | This document relates to: |
| v. | ) ) | **Civil Action No.: 14-cv-2722-EEF-JCW** |
| GEBRUEDER KNAUF VERWALTUNGSGESELLSCHAFT, KG; KNAUF INTERNATIONAL GMBH; KNAUF INSULATION GMBH; KNAUF UK GMBH; KNAUF AMF GMBH & CO., KG; KNAUF DO BRASIL LTD.; PT KNAUF GYPSUM INDONESIA; KNAUF GIPS KG; KNAUF PLASTERBOARD TIANJIN CO., LTD.; KNAUF PLASTERBOARD WUHU, CO., LTD; GUANGDONG KNAUF NEW BUILDING MATERIAL PRODUCTS CO., LTD., | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | JURY TRIAL DEMAND |

## SECOND AMENDED CLASS ACTION COMPLAINT

Pursuant to Fed. R. Civ. P. 23, the class representatives in this action bring suit on behalf of themselves and all other similarly situated owners and residents of real property containing defective Chinese manufactured drywall that was designed, manufactured, imported, exported, distributed, delivered, supplied, inspected, marketed, sold and/or installed by the Defendants.  In order to accomplish an effective class structure, each of the class representatives is pursuing a

*Id. to Omni XVIII, with a few word variations.*

nationwide class action against the Knauf entities[1], who are the manufacturers of the drywall located in plaintiffs' homes. Each defendant in this action is liable for damages incurred by Plaintiffs due to their role in the design, manufacture, importing, distributing, delivery, supply, marketing inspecting, installing, or sale of the defective drywall at issue in the litigation.

## JURISDICTION, PARTIES, AND VENUE

1.      This action is within the original jurisdiction of this Court by virtue of 28 U.S.C. §1332(d)(2) and the Class Action Fairness Act ("CAFA"). *See* 28 U.S.C. §1711, *et seq.* Plaintiffs and certain Defendants are residents of different states and the amount in controversy of this class action exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

2.      Venue in this district satisfies the requirements of 28 U.S.C. § 1391(b)(1)-(2) and (c) because Plaintiffs and a significant number of the absent class members reside in this jurisdiction and a substantial amount of the events and occurrences giving rise to these claims occurred in this district, or a substantial part of the property that is the subject of this action is situated in this district.

## PLAINTIFFS

3.      For purposes of clarity, the Plaintiffs are asserting claims on behalf of all owners of the subject properties.

4.      Unless specifically stated to the contrary on Exhibit "A," all Plaintiffs are citizens of the state where they reside and all entities are citizens of the state where they are organized.

---

[1] Knauf consists of Gebrueder Knauf Verwaltungsgesellschaft, KG ("GKV"); Knauf International GmbH ("Knauf International"); Knauf Insulation GmbH ("Knauf Insulation"); Knauf UK GmbH ("Knauf UK"); Knauf AMF GmbH & Co., KG ("Knauf AMF"); Knauf do Brasil, Ltd. ("Knauf Brasil"); PT Knauf Gypsum Indonesia ("Knauf Indonesia"); Knauf GIPS KG ("Knauf GIPS"); Knauf Plasterboard Tianjin Co., Ltd. ("Knauf Tianjin"); Knauf Plasterboard Wuhu Co., Ltd. ("Knauf Wuhu"); and Guangdong Knauf New Building Material Products Co., Ltd ("Guangdong Knauf") (collectively hereinafter "Knauf" or "Defendants").

*[Margin notes:]*

Id. to Omni XVIII, with a few word variations and omission of last 2 sentences in No. 2.

Nos. 3 and 4 Id. to Omni XVIII with omission of a couple sentences.

Id. Fn as in Omni XVIII.

5.     All Plaintiffs are participating as class representatives in the class action.

6.     Each plaintiff is identified on Exhibit "A," which is incorporated herein by reference.  Each plaintiff identified on Exhibit "A" is bringing claims against Defendants.

Id. as in Omni XVIII, with the omission of Exhibit B.

## **DEFENDANTS**

7.     Unless specifically stated to the contrary, all individual defendants are citizens of the state where they do business and all entities are citizens of the state where they are organized. For those entities, where the state of organization is not listed, it is asserted upon information and belief that the entity is incorporated and/or organized in the state of its principal place of business.

Id.

8.     Defendant GKV is a foreign corporation doing business in several states including but not limited to Alabama, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Texas, and Virginia. GKV is an investment holding company owned by members of the Knauf family including Alfons Frederick Knauf, Karl Rudolf Thies, Alfons Jean Knauf, Christine Brigitte Knauf, Karl Heinrich Knauf, Angelika Werhan, Beatrix Knauf, Carlo Knauf, Christiane Knauf, Alexander Heinrich Knauf, Isabel Corinna Knauf, Mathias Knauf, Karl Konstantin Knauf, Phillippe Knauf, Rupert Knauf, Dr. Albrecht Knauf, Beteiligungs GmbH & Company KGI, Lothar Knauf, Nikolaus Knauf, and Baldwin Knauf.  GKV is the parent corporation of Defendant Knauf International.

Id. - only change is order states listed.

9.     Defendant Knauf International is a foreign corporation doing business in several states including but not limited to Alabama, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Texas, and Virginia.  Knauf International is a holding company for GKV and the Knauf Group.  Knauf International is closely related to Knauf GIPS.  Knauf

Id. - only change is order states listed.

International is the parent corporation of Defendants Knauf Tianjin, Knauf Wuhu, and Guangdong Knauf.

10.    Defendant Knauf Insulation (referred to in MDL 2047 as Knauf Insulation USA and/or Knauf USA) is a foreign corporation with a principal place of business in Shelbyville, Indiana.  Upon information and belief, Knauf Insulation is a subsidiary of GKV.  Knauf Insulation acted as an agent for Knauf GIPS KG and the Knauf Group lending assistance and participating in the promotion, distribution, marketing, and sale of the drywall at issue in this litigation to American suppliers.  Accordingly, Knauf Insulation was responsible for the drywall at issue in the case being imported, distributed, delivered, supplied, inspected, marketed and/or sold.  This conduct by Knauf Insulation has resulted in harm and damages to Plaintiffs.

*Id.*

11.    Defendant Knauf UK is a foreign corporation doing business in several states including but not limited to Alabama, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Texas, and Virginia.  Knauf UK is involved in the insulation and building material industry.  It is associated with GKV, Knauf GIPS and the Knauf Group.  Knauf UK has participated in the activities and sales of the Knauf Group's drywall manufactured in China and sold in the United States.

*Id.* - only change is order states is listed.

12.    Defendant Knauf AMF is a foreign corporation doing business in several states including but not limited to Alabama, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Texas, and Virginia.  Knauf AMF is involved in the insulation and building material industry.  It is associated with GKV, Knauf GIPS and the Knauf Group.  Knauf AMF has participated in the activities and sales of the Knauf Group's drywall manufactured in China and sold in the United States.

*Id.* - only change is order states is listed.

13.    Defendant Knauf Brasil is a foreign corporation doing business in several states including but not limited to Alabama, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Texas, and Virginia.  Knauf Brasil is involved in the insulation and building material industry.  It is associated with GKV, Knauf GIPS and the Knauf Group.  Knauf Brasil has participated in the activities and sales of the Knauf Group's drywall manufactured in China and sold in the United States.

14.    Defendant Knauf Indonesia is a foreign corporation doing business in several states including but not limited to Alabama, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Texas, and Virginia.  Knauf Indonesia is involved in the insulation and building material industry.  It is associated with GKV, Knauf GIPS and the Knauf Group.  Knauf Indonesia has participated in the activities and sales of the Knauf Group's drywall manufactured in China and sold in the United States.

15.    Defendant Knauf GIPS is a German corporation doing business in several states including but not limited to Alabama, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Texas, and Virginia.  Knauf GIPS is a leading manufacturer of building materials and systems.  Knauf GIPS, together with its Knauf Group affiliates, including Knauf Tianjin, Knauf Wuhu, and Guangdong Knauf, provides building materials and systems to customers in over 50 countries, including the United States.  Upon information and belief, at all times material hereto, Knauf GIPS supervised, operated, trained and otherwise exercised control and/or had the right ot control the operations of Knauf International, Knauf Insulation, Knauf UK, Knauf Tianjin, Knauf Wuhu, and Guangdong Knauf, and its agents, apparent agents, and employees.

Nos. 13, 14, 15, and  16 Id. - only change is order states are listed.

16. Upon information and belief, Knauf GIPS, together with its affiliates and/or actual or apparent agents, including Knauf International, GKV, Knauf Insulation, Knauf UK, Knauf Tianjin, Knauf Wuhu, and Guangdong Knauf, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various states, including but not limited to Alabama, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Texas, and Virginia.

17. Upon information and belief, Knauf GIPS and/or GKV, Knauf International, Knauf Insulation, Knauf UK, Knauf Tianjin, Knauf Wuhu, and Guangdong Knauf have continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Knauf GIPS and/or GKV, Knauf International, Knauf Insulation, Knauf UK, Knauf Tianjin, Knauf Wuhu, and Guangdong Knauf manufactured and sold, directly and indirectly, to certain suppliers in the United States. Knauf GIPS directly controlled through its global family of businesses the importation of problematic/defective drywall at all times and provided oversight of internal investigations of sales of problematic/defective drywall.

*Id. to No. 16 in Omni XVIII with the addition of "/defective" after "problemantic."*

18. Defendant Knauf Tianjin is a foreign corporation doing business in several states, including but not limited to Alabama, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Texas, and Virginia. Knauf Tianjin is involved in the manufacturing and sale of gypsum drywall. Knauf Tianjin is the actual agent and/or apparent agent of GKV, Knauf GIPS and Knauf International. Upon information and belief, Knauf Tianjin individually and/or together with and at the direction and control of its principal, Knauf GIPS, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the

*Id. to No. 17 in Omni XVIII. Note numbering is off by one Bennett Complaint broke one number from Omni XVIII into 2 separate numbers.*

6

expectation that the drywall would be purchased by thousands of consumers throughout the United States.  Knauf Tianjin and/or the Knauf Group have continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States.  Knauf Tianjin and/or the Knauf Group manufactured and sold, directly and indirectly, to certain suppliers in the United States.  Representatives of Knauf Tianjin have intentionally directed communications to distributors in the United States, employed American distributors as agents for the company, shipped product intending for it to be distributed in the United States and otherwise engaged in commerce and/or circumstances that the company reasonably expected that it could be hailed into the United States courts.

19.     Defendant Knauf Wuhu is a foreign corporation doing business in several states, including but not limited to Alabama, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Texas, and Virginia.  Knauf Wuhu is involved in the manufacturing and sale of gypsum drywall.  Knauf Wuhu is the actual agent and/or apparent agent of GKV, Knauf GIPS and Knauf International.  Upon information and belief, Knauf Wuhu manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers throughout the United States.  Upon information and belief, Knauf Wuhu and/or the Knauf Group have continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States.  Knauf Wuhu and/or the Knauf Group manufactured and sold, directly and indirectly, to certain suppliers in the United States.  Representatives of Knauf Wuhu have intentionally directed communications to distributors in the United States, employed American distributors as agents

Id. to 18

7

for the company, shipped product intending for it to be distributed in the United States and otherwise engaged in commerce and/or circumstances that the company reasonably expected that it could be hailed into the United States courts.

20.    Defendant Guangdong Knauf is a foreign corporation doing business in several states, including but not limited to Alabama, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Texas, and Virginia.  Guangdong Knauf is involved in the manufacturing and sale of gypsum drywall.  Guangdong Knauf is the actual agent and/or apparent agent of GKV, Knauf GIPS and Knauf International.  Upon information and belief, Guangdong Knauf manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers throughout the United States.  Guangdong Knauf and/or the Knauf Group have continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Guangdong Knauf and/or the Knauf Group manufactured and sold, directly and indirectly, to certain suppliers in the United States.  Representatives of Guangdong Knauf have intentionally directed communications to distributors in the United States, employed American distributors as agents for the company, shipped product intending for it to be distributed in the United States and otherwise engaged in commerce and/or circumstances that the company reasonably expected that it could be hailed into the United States courts.

Id. to 19

21.    In 1995, the Knauf Group introduced its advanced production techniques and technology into China through Knauf GIPS.  From 1997 through 2001, Knauf GIPS services the investments of Knauf International GmbH in China and established three plasterboards plants which are located in Wuhu, Tinajin, and Dongguan.  The product quality of all Knauf

Id. to 20

International's plants in China, including Knauf Tianjin, Knauf Wuhu, and Guangdong Knauf, are strictly controlled according to the requirements of Knauf GIPS' headquarters in Germany. Knauf GIPS's sales and technical support teams support Knauf International's businesses throughout the world, including Knauf Tianjin, Knauf Wuhu, and Guangdong Knauf in China. Knauf Tianjin, Knauf Wuhu, and Guangdong Knauf and their employees are controlled by and the actual and/or apparent agents of GKV, Knauf GIPS, Inauf UK and/or Knauf International, as the Knauf Group acts without regard to corporate formalities.

## GENERAL ALLEGATIONS

Change in title only.

These will all be off by 1 number.

22.    Upon information and belief, Defendants' drywall contains gypsum.

No. 22 just added "Upon information and belief".

23.    In "problematic" or "defective" drywall (such as that designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, sold and/or installed by Defendants herein), the gypsum and other components of the product react, break down, and release sulfur compounds and other noxious gases from the drywall.

No. 23 added "defective," "installed" and noxious gases."

24.    The sulfur compounds, including Hydrogen Sulfide, Carbonyl Sulfide, and Carbon Disulfide, exit Defendants' drywall and cause rapid sulfidation and damage to personal property (such as air conditioning and refrigerator coils, faucets, utensils, electrical wiring, copper, electronic appliances and other metal surfaces and property).

No. 24 Id. to 23

25.    Exposure to sulfur compounds and the other noxious gases emitted from Defendants' drywall cause personal injury resulting in eye irritation, sore throat and cough, nausea, fatigue, shortness of breath, fluid in the lungs, and/or neurological harm.

Id to 24

26.    Although the drywall functions according to is intended purpose as a building component, it is unfit for this purpose due to the damaging side effects and/or because its use is

Id. to 25

so inconvenient that Plaintiffs would not have purchased their homes had the side effects been disclosed by Defendants.

27.     As a direct and proximate result of Defendants' actions and omissions, Plaintiffs and the Class Members' homes, structures, personal property, and bodies have been exposed to Defendants' defective and unfit drywall and the corrosive and harmful effects of the sulfur compounds and other noxious gases being released from Defendants' problematic drywall.

*Id. to 26 other than adding "noxious gases."*

28.     Defendants tortiously manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed, sold and/or installed defective drywall, which was unfit for its intended purpose and unreasonably dangerous in its normal use in that the drywall caused corrosion and damage to personal property in Plaintiffs' and Class Members' homes and/or caused personal injury resulting in eye irritation, a sore throat and cough, nausea, fatigue, shortness of breath, fluid in the lungs, and/or neurological harm.

*Id. to 27*

29.     Defendants recklessly, wantonly, and/or negligently manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed and/or sold the problematic drywall at issue in this litigation.

*Id. to 28 other than leaving out example.*

30.     Defendants recklessly, wantonly, and/or negligently implemented faulty procedures for purposes of formulating, preparing, testing, and otherwise ensuring the quality and/or character of the problematic drywall at issue in this litigation.

*Id.  to 29*

31.     As a direct and proximate result of Defendants' defective, problematic, and unfit drywall and the corrosive and harmful effects of the sulfur compounds and other noxious gases released from these products, Plaintiffs and the Class Members have suffered, and continue to suffer, economic harm and/or personal injury.

*Id. to 30 with some word variations.*

32. As a direct and proximate result of Defendants' defective, problematic, and unfit drywall and the harmful effects of the sulfur compounds and other noxious gases released from these products, the Plaintiffs and the Class Members have suffered, and continue to suffer damages. These damages include, but are not limited to, cost of inspection; cost and expenses necessary to remedy, replace and remove the defective, problematic, and unfit drywall and other property that has been impacted; lost value or devaluation of their homes and property; loss of use and enjoyment of their home and property, and/or damages associated with personal injuries.

*Id. to 31 with some word variations.*

33. As a direct and proximate result of Defendants' defective, problematic, unfit, and unreasonably dangerous drywall and the harmful effects of the sulfur compounds and other noxious gases released from these products, Plaintiffs have been exposed to harmful sulfur compounds, suffered personal injury, have been placed at an increased risk of disease, and have need for injunctive relief in the form of repair and remediation of their homes, rescission of contracts, the ordering of emergency/corrective notice, the ordering of testing and monitoring, and/or the ordering of medical monitoring.

*Id. to 32 with some word variations.*

## CLASS ACTION ALLEGATIONS

### The Knauf Class

34. The representative Plaintiffs with claims against the Knauf manufacturing defendants assert classes pursuant to Rules 23(a), (b)(1), (b)(2), (b)(3) and/or 23(c)(4) of the Federal Rules of Civil Procedure, on behalf of themselves and those similarly situated, against the manufacturing defendants for whom they have standing. The designated Plaintiffs in Exhibit "A" define their classes to be as follows:

*Id. to 33*

> All owners and residents (past and present) of real property located in the United States containing problematic/defective Chinese drywall manufactured, sold, distributed, and/or supplied by Knauf.

**General Class Allegations and Exclusions from the Class Definitions**

35.     The following Persons shall be excluded from the Class: (1) Defendants and their subsidiaries, affiliates, officers and employees; (2) all Persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the judge(s) to whom this case is assigned and any immediate family members thereof.

Id. to 34

36.     Upon information and belief, the Defendants' defective, problematic, and unfit drywall was installed in at least hundreds of homes, residences, or other structures owned by Plaintiffs and Class Members. Therefore, the Class is sufficiently numerous such that joinder of all members of the Class in a single action is impracticable.

Id. to 35 with some word variations.

37.     There are numerous common questions of law and fact that predominate over any questions affecting only individual members of the Class.  Among these common questions of law and fact are the following:

Id. to 36 with some word variations

    a.    whether Defendants' drywall products that release sulfur compounds and other noxious gases are defective and/or unfit for their intended purposes;

    b.    whether Defendants tortiously manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, sold, and/or installed defective drywall products;

    c.    whether Plaintiffs and Class Members are entitled to recover compensatory, exemplary, incidental, consequential, and/or other damages as a result of Defendants' unlawful and tortious conduct; and,

    d.    whether Plaintiffs and Class Members are entitled to recover injunctive and/or equitable relief as a result of Defendants' unlawful and tortious conduct.

38.     The legal claims of named Plaintiffs are typical of the legal claims of other Class Members.  Named Plaintiffs have the same legal interests and need for legal remedies as other Class Members.

Id. as 37

39.     Named Plaintiffs are adequate representatives of the Class, together with their legal counsel, each will fairly and adequately protect the interests of Class members.  Named Plaintiffs have no known conflict with the Class and are committed to the vigorous prosecution of this action.

Id. to 38

40.     The undersigned counsel is competent counsel experienced in class action litigation, mass torts, and litigation involving defective and harmful products.  Counsel will fairly and adequately protect the interests of the Class.

Id. to 39

41.     The various claims asserted in this action are certifiable under the provisions of Federal Rules of Civil Procedure 23(b)(1) because prosecuting separate actions by or against individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party opposing the class; or adjudications with respect to individual Class members that, as a practical matter, would be dispositive of the interests of the other Class members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Id. to 40

42.     The claims for injunctive relief in this case are certifiable under Fed. R. Civ. P. 23(b)(2).  Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief is appropriate respecting the Class as a whole.

Id. to 41

43.     A class action is superior to other methods of dispute resolution in this case.  The Class members have an interest in class adjudication rather than individual adjudication because of their overlapping rights.  It is highly desirable to concentrate the resolution of these claims in this single forum because it would be difficult and highly unlikely that the affected Class members would protect their rights on their own without this class action case.  Management of

Id. to 42 with a change minor edit in last sentence.

the class will be efficient and far superior to the management of individual lawsuits.
Accordingly, Plaintiffs' legal claims are appropriate for certification pursuant to Rule 23(b) of
the Federal Rules of Civil Procedure.

44. The issues particularly common to the Class members' claims, some of which are
identified above, are alternatively certifiable pursuant to Fed. R. Civ. P. 23(c)(4), as resolution of
these issues would materially advance the litigation, and class resolution of these issues is
superior to repeated litigation of these issues in separate trials.

*Id. to 43*

## COUNT I
## NEGLIGENCE

*Id. with omission of parenthesis*

45. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth fully
herein.

*Id. to 44*

46. Defendants owed a duty to Plaintiffs and Class Members to exercise reasonable
care in designing, manufacturing, exporting, importing, distributing, delivering, supplying,
inspecting, marketing, selling, and/or installing this drywall, including a duty to adequately warn
of their failure to do the same.

*Id. to 45*

47. Defendants knew or should have known that their wrongful acts or omissions
would result in harm and damages in the manner set forth herein.

*Id. to 46*

48. Defendants breached their duty to exercise reasonable care in the designing,
manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing,
selling, and/or installing this drywall.

*Id. to 47*

49. Defendants likewise breached their duties to Plaintiffs and Class Members by
failing to warn about the defective nature of the drywall. Defendants, through the exercise of
reasonable care, knew or should have known the nature of the defective drywall and the adverse
effects that it could have on the homes and bodies of Plaintiffs and Class Members.

*Id. to 48 with a change to "defective" instead of "problematic."*

50.   Defendants breached their duty to exercise reasonable care to timely remove and/or recall from the market and/or otherwise prevent the continued contact of Plaintiffs and Class Members with the drywall, upon learning it had been sold in an unreasonably dangerous condition.

*Id.* to 49

51.   Given the defect in the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm, damages and/or personal injuries to Plaintiffs and Class Members.

*Id.* to 50

52.   As a direct and proximate cause of Defendants' acts or omissions.  Plaintiffs and Class Members were harmed and have incurred damages and/or personal injuries as described herein.

*Id.* to 51

**COUNT II**
**NEGLIGENCE PER SE**

*Id.* with omission of parenthesis

53.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth fully herein.

*Id.* to 52

54.   Defendants owed statutory duties to Plaintiffs and Class Members to exercise reasonable care in designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, selling, and/or installing this drywall.

*Id.* to 53 (replaced alphabet lettering with commas.)

55.   Defendants breached their statutory duties to the Plaintiffs and Class Members by failing to exercise reasonable care in the designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, selling, and/or installing this drywall.

*Id.* to 54 (replaced alphabet lettering with commas.)

56.   Defendants likewise breached their statutory duties, including but not limited to those imposed under the International Building Code ("IBC") and other state and local building codes, to Plaintiffs and Class Members by failing to warn about the defective nature of the

*Id.* to 55

drywall.  For instance, it is specifically alleged that Defendants furnished the drywall in violation of ASTM C 1396/C 1396M-069, and its predecessor(s).

57.    Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the homes and bodies of Plaintiffs and Class Members.

*Id.* to 56 - replaced "problematic" with "defective"

58.    Given the defect in the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm, damages and/or personal injuries to Plaintiffs and Class Members.

*Id.* to 57 - replaced "problematic" with defective"

59.    As a direct and proximate cause of Defendants' acts or omissions, Plaintiffs and Class Members were harmed and have incurred damages and/or personal injuries as described herein.

*Id.* to 58

## COUNT III
## STRICT LIABILITY

*Id.* with omission of parenthesis

60.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth fully herein.

*Id.* to 59

61.    At all times relevant hereto, Defendants were in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public.

*Id.* to 60

62.    The drywall, including that installed in the homes of Class Members was placed by Defendants into the stream of commerce.

*Id.* to 61

63.    Defendants knew that the subject drywall would be used without inspection for defects by consumers.

*Id.* to 62

64.    Defendants intended that the drywall reach the ultimate consumers, such as Class members, and it indeed reached Class members when it was installed in their homes.

*Id.* to 63

16

65.     When installed in Class Members' homes, the drywall was in substantially the *Id. to 64*
same condition as it was in when Defendants manufactured, sold, and/or delivered it.

66.     At all times relevant hereto the subject drywall was used in a manner consistent *Id. to 65*
with the uses intended by, or known to Defendants, and in accordance with the Defendants'
directions and instructions.

67.     The subject drywall was not misused or altered by any third parties.        *Id. to 66*

68.     The Defendants' drywall was defectively manufactured, designed, inspected, *Id. to 67*
tested, marketed, distributed, and sold.

69.     The design defect was in designing drywall that allowed high levels of sulfur *Same as 68 with word variations.*
and/or other chemicals to emit through off-gassing.

70.     The manufacturing defect was in improperly selecting, testing, inspecting, *Same as 69 with word variations.*
mining, making, assembling, and using, gypsum for drywall with levels of sulfur that were too
high and emitted various sulfide gasses and/or other chemicals through off-gassing.

71.     The drywall was also defective because it was improperly exported, imported, *Id. to 70 - replaced "problematic" with "defective"*
distributed, delivered, supplied, inspected, marketed, and/or sold in a defective condition, as
described above.

72.     The Defendants' defective manufacturing, designing, inspecting, testing, *Id. to 71 with some word variations.*
marketing, distributing, and selling of the drywall rendered it unsafe and unreasonably dangerous
for its intended use and to Class Members.

73.     The drywall is also defective and unreasonably dangerous because Defendants *Id. to 72 with some word variations.*
failed to adequately warn and instruct Class members of the defective design, inspection, testing,
manufacturing, marketing, and selling of the drywall.

74.     Class Members were neither aware of the unreasonably dangerous propensities    Id. to 73

and defective condition of the drywall, nor could Class Members, acting as reasonably prudent

people discover that Defendants' drywall was defective, as set forth herein, or perceive its

danger.

75.     Defendants' defective drywall was much more dangerous and harmful than    Id. to 74 - changed
"problematic" to
expected by the average consumer and by Class Members.    "defective"

76.     The benefit, if any, of Class Members using Defendants' defective drywall was    Id. to 75 with
some word
greatly outweighed by the risk of harm and danger.    variations

77.     The defects in the drywall, as well as Defendants' failure to adequately warn    Id. to 76 with
some word
Class Members of the defects rendered the drywall unreasonably dangerous, was the direct and    variations

proximate cause of damages, and/or led to the personal injuries of Class members.

**COUNT IV**
**BREACH OF EXPRESS AND/OR IMPLIED WARRANTY**    Id. with word variation and
omission of parenthesis

78.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.    Id. as 77

79.     Defendants and/or their agents were in privity with Plaintiffs and Class Members    Id. as 78

and/or Plaintiffs and Class Members were foreseeable third-party beneficiaries of any warranty.

80.     At the times Defendants installed, utilized, supplied, inspected, sold, and/or    Id. to 79

installed this drywall for use in the Plaintiffs' and Class Members' homes, Defendants knew, or

it was reasonably foreseeable, that the drywall would be installed in the Plaintiffs' and Class

Members' homes for use as a building material, and expressly or impliedly warranted the

product to be fit for that use.

81.     Defendants placed their drywall products into the stream of commerce in a    Id. to 80

defective condition and these products were expected to, and did, reach users, handlers, and

persons coming into contact with said products without substantial change in the condition in which they were sold.

82.    The drywall was defective because it was not fit for the uses intended by Defendants; to wit, the installation of the drywall in Plaintiffs' and Class Members' homes was not suitable for use as a building material, because it contained the defects as set forth herein.

83.    The Defendants breached their warranty because the drywall was not fit and safe for the particular purposes for which the goods were required (to be installed in Plaintiffs and Class Members' homes as a building material) due to the defects set forth herein.    *Id. to 82*

84.    Defendants had reasonable and adequate notice of the Plaintiffs' and the Class Members' claims for breach of warranty and failed to cure.    *Id. to 83*

85.    As a direct and proximate cause of Defendants' breach of warranties, Plaintiffs and Class Members have incurred harm and damages and/or personal injuries as described herein.    *Id. to 84*

**COUNT V**    *Id. - change in wording in parenthesis only*
**REDHIBITION**
**(By Louisiana Plaintiffs Against Defendants)**

86.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.    *Id. to 85*

87.    The drywall manufactured, distributed and/or sold by Defendants was not reasonably fit for its ordinary and intended purpose.    *Id. to 86 with word variations*

88.    Defendants are therefore liable to Louisiana Plaintiffs for all reasonable damages in accordance with La. Civ. Code art. 2524.    *Id. to 87 other than to "Louisiana" only*

89.    In addition, or in the alternative, the drywall manufactured, distributed and/or sold by Defendants contained redhibitory defects, because, at the time of delivery, the propensity to emit or off-gas sulfur compounds and/or other potentially harmful, irritating and/or corrosive    *Id. to 88*

substances renders the drywall so useless and/or inconvenient that it must be presumed that Plaintiffs would not have purchased the drywall had they known of the defect or defects.

90.     In the alternative, the defects are redhibitory because, while not rendering the drywall totally useless, it did diminish the drywall's use and/or diminish the drywall's value to such an extent that it must be presumed that the buyer would have bought it, but for a lesser price.

*Id. to 89*

91.     The Manufacturing Defendants are presumed to possess knowledge of the defects in the drywall manufactured by them.

*Id. to 90 - added "Manufacturing"*

92.     In addition, it is believed and alleged that all defendants knew of the defects in the drywall at the time the drywall was delivered and/or sold.

*Id. to 91*

93.     Defendants have had numerous opportunities to repair and/or replace the drywall and associated fixtures and/or building components and have failed to do so; in addition and/or in the alternative, such requests have been, would have been and/or would be futile; moreover, Manufacturing Defendants and/or Distributor Defendants are deemed to be placed on notice when notice is provided to "Builder Defendants" (and/or Distributor Defendants); and, in addition or alternatively, all Defendants had actual knowledge of the problems in the drywall and the need for replacement, remediation and/or repair.

*Id. to 92 with word variations*

94.     All Defendants are therefore liable to all Louisiana Plaintiffs for a return of the purchase price (with interest from the time it was paid), reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the drywall and associated items, for damages, and for reasonable attorneys' fees, in accordance with La. Civ. Code art. 2545.

*Id. to 93 for just Louisiana Plaintiffs*

95.    In the alternative, to the extent that any Distributor Defendant and/or Builder Defendant did not know of the defects in the drywall at the time of delivery and/or sale, those defendants are liable to Louisiana Plaintiffs to repair, remediate or correct the defect; and/or if unable to do so, for a return of the purchase price (with interest from the time it was paid), reimbursement of the reasonable expenses occasioned by the sale, and those expenses incurred for the preservation of the drywall and associated items, in accordance with La. Civ. Code art. 2531.

## COUNT VI
Id with omission of parenthesis

## LOUISIANA PRODUCTS LIABILITY ACT

96.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein. Id. to 94

97.    In addition to any and all damages, attorneys' fees and other remedies made available to Louisiana Plaintiffs under the warranty of fitness and/or warranty against redhibitory defects, the Manufacturing Defendants are liable to Louisiana Plaintiffs under the Louisiana Products Liability Act, ("LPLA"), La. R.S. 9:2800.51 *et seq*. — Id. to 95 with word variations

98.    The LPLA is also pleaded in the alternative with respect to any Distributor Defendant who might be considered a "manufacturer" under La. R.S. 9:2800.53(1)(a) (labels or otherwise holds the drywall out as his own), 9:2800.53(1)(b) (exercises control over or influences a characteristic of the drywall causing damage), 9:2800.53(1)(c) (the manufacturer of a product which contains the drywall as a component part), and/or 9:2800.53(1)(d) (a seller of a product of an alien manufacturer where the seller is in the business of importing or distributing the drywall for resale and is the alter ego of the alien manufacturer).

99.    The Manufacturing Defendants, upon information and belief, expressly warranted that "the gypsum boards manufactured and sold… are guaranteed to be free from defects in materials and workmanship." — Id. to 96 with word variations

100.   The Manufacturing Defendants expressly warranted that "the gypsum boards were manufactured in accordance with ASTM C36."

Same as 97 with word variations

101.   The drywall at issue is, in all cases, unreasonably dangerous by virtue of the unreasonable off-gassing and/or emission of sulfur compounds and/or other corrosives, toxins and/or irritants, which do not in any way contribute to or enhance the utility of the drywall, yet pose a risk to the wiring, plumbing, appliances, personal property, overall economic value of the property and financial security of the owner, and/or the health of the residents of the property.

Id. to 98 with word variations

102.   At all times pertinent and material hereto, Manufacturing Defendants (and/or Distributor Defendants who may be considered "manufacturers" under the LPLA) knew that their drywall was unreasonably dangerous and/or defective as set forth herein.

Id. to 100 with word variations

103.   In the alternative, Manufacturing Defendants and/or Distributor Defendants who may be considered "manufacturers" under the LPL) should have, at all times pertinent and material hereto, known of the unreasonably dangerous and/or defective characteristics and/or conditions, had the reasonably employed then-existing scientific and/or technical knowledge, reasonable testing, and/or other reasonable and then-accepted methods of quality assurance and/or quality control.

Id. to 101 with word variations

104.   Defendants' drywall is unreasonably dangerous in composition or construction in that, at the time it left Defendants' control, it deviated in a material way from Defendant's own specification or performance standards.

Id. to 102

105.   In addition, and in the alternative, defendants' drywall is unreasonably dangerous in design, in that, at the time the drywall left Defendant's control, there existed an alternative design for the product that was capable of preventing Plaintiffs' damage, and the likelihood of causing the plaintiffs' damage and the gravity of that harm outweighed the burden (if any) on the

Id. to 103

Defendant in adopting such alternative design and the adverse effect (if any) on the utility of the drywall.

106.    In addition, or in the alternative, Defendants' drywall is unreasonably dangerous Id. to 104 in that it fails to conform to an express warranty about the product which induced the use of the product and caused damage to Plaintiffs to the extent that the warranty was untrue.

107.    In addition, or in the alternative, Defendants' drywall is unreasonably dangerous Id. to 105 due to an inadequate warning, in that, at the time the drywall left Defendant's control, the drywall possessed a characteristic that might cause damage and yet Defendant failed to use reasonable care to provide an adequate warning of such characteristics and/or dangers to users and/or handlers of the drywall.

108.    Defendants are therefore liable to Louisiana Plaintiffs for all damages reasonable Id. to 106 in the premises.

### COUNT VII
### PRIVATE NUISANCE

Id. with omission of parenthesis

109.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein. Id. to 107

110.    The Defendants' tortious or wrongful acts or omissions have caused sulfide gas Id. to 108 with word variations and/or other chemical leaching into Plaintiffs' and Class Members' homes which has unreasonably interfered, and continues to interfere, with the Plaintiffs' and Class Members' use and enjoyment of their properties and caused them harm and damage as discussed herein.

111.    Defendants' interference has impaired the rights of Plaintiffs' and Class Id. to 109 Members' health, comfort, safety, free use of their property, and/or peaceful enjoyment of their property.

112.    Defendants' invasions were intentional and unreasonable, and/or unintentional but Id. to 110 otherwise negligent or reckless.

23

113.   The interference with Plaintiffs' and Class Members' use of their property caused by Defendants is substantial and is ongoing.   Id. to 111

114.   Defendants' private nuisance was the direct, proximate, and foreseeable cause of Plaintiffs and Class Members' damages, injuries, harm, loss, and increased risk of harm, which they suffered and will continue to suffer.   Id. to 112

115.   As a direct and proximate cause of Defendants' creation of a private nuisance, Plaintiffs and Class Members have incurred harm and damages and/or personal injuries as described herein.   Id. to 113

### COUNT VIII   New Section Added (not in Omni XVIII)
### NEGLIGENT DISCHARGE OF A CORROSIVE SUBSTANCE

116.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

117.   Defendants had actual or constructive knowledge of the extremely corrosive and dangerous propensities of the drywall at issue in this litigation.

118.   Notwithstanding their actual or constructive knowledge of the corrosive and dangerous propensities of the drywall, defendants nevertheless designed, manufactured, imported, distributed, delivered, supplied, marketed, inspected, installed, or sold the drywall for use in the homes or other structures owned by Plaintiffs and Class Members.

119.   By causing the sale, distribution, delivery, and/or supply of the drywall under these circumstances, Defendants breached their duty to exercise reasonable care and created a foreseeable zone of risk of injury to Plaintiffs and Class Members.

120.   Defendants likewise breached their duties to Plaintiffs and Class Members by failing to warn about the corrosive and dangerous propensities of the drywall.  Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective

24

drywall and the adverse effects that it could have on the property and bodies of Plaintiffs and Class Members.

121.    Plaintiffs and Class Members have suffered injuries by virtue of their exposure to the defective drywall at issue in this litigation.  Given the defect in the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm, damages and/or personal injuries to Plaintiffs and Class Members.

122.    As a direct and proximate result of Defendants' acts and omissions, Plaintiffs and Class Members were harmed and have incurred damages and/or personal injuries as described herein.  The injuries sustained by Plaintiffs and Class Members are within the foreseeable zone of risk created by Defendants.

**COUNT IX**  Count number changed  and parenthesis  omitted

**UNJUST ENRICHMENT**

123.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein. Id. to 114

124.    Defendants received money as a result of Plaintiffs' and Class Members' Id. to 115 purchase of Defendants' defective drywall, or purchase of homes containing this drywall, either directly or through an agent, and Defendants wrongfully accepted and retained these benefits to the detriment of Plaintiffs and Class Members.

125.    Defendants' acceptance and retention of these benefits under the circumstances Id. to 116 make it inequitable and unjust for Defendants to retain the benefit without payment of the value to the Plaintiffs and the Class Members.

126.    Defendants, by the deliberate and tortious conduct complained of herein, have Id. to 117 been unjustly enriched in a manner which warrants restitution.

### COUNT X  New Count number and parenthesis omitted
## VIOLATION OF CONSUMER PROTECTIONAL ACTS

127.  Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein. Id. to 118

128.   This is an action for relief under the various Consumer Protection Acts of the jurisdictions in which affected properties are present, including but not limited to La R.S. 51:1401, *et seq*. (Louisiana Unfair Trade Practices and Consumer Protection Law); Ala. Code 1975 § 8-19-1, *et seq*. (Alabama Deceptive Trade Practices Act); G.S. § 75-1-1, *et seq*. (North Carolina Consumer Protection Act); F.S. § 501.201, *et seq*. (Florida Deceptive and Unfair Trade Practices Act); O.C.G.A. § 10-1-370, *et seq*. (Georgia Uniform Deceptive Trade Practices Act); Virginia Code § 59.1-196, *et seq*. (Virginia Consumer Protection Act); Tex. Bus. Com. Code Ann. §17.41, *et seq*. (Texas Deceptive Trade Practices - Consumer Protection Act); Miss. Code Ann. § 75-24-1, et seq. (Mississippi Consumer Protection Act).

129.  The Defendants' acts and omissions as well as their failure to use reasonable care in this matter as alleged in this complaint, including but  not limited to, the knowing misrepresentation or failure to disclose the source, affiliation, origin, characteristics, ingredients, standards and quality of defective drywall constitute violation of the provisions of the Consumer Protection Acts of the relevant states. Id. to 120 with word variations

130.  Plaintiffs and Class members have suffered actual damages as a result of Defendants' violation of these Consumer Protection Acts and are entitled to relief. Id. to 121 with word variations

131.  As a direct and proximate cause of Defendants' violations of the Consumer Protection Acts of the relevant states, Plaintiffs and Class Members have incurred harm and damages as described herein. Id. to 122 with word variations

**COUNT XI** New Count number with parenthesis omitted

**EQUITABLE AND INJUNCTIVE RELIEF AND MEDICAL MONITORING**

132.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein. Id. to 123

133.   Plaintiffs and Class Members are without adequate remedy at law, rendering Id. to 124 injunctive and other equitable relief appropriate.

134.   Plaintiffs and Class Members will suffer irreparable harm if the Court does not Id. to 125 render the injunctive relief and medical monitoring relief as set forth herein, and if Defendants are not ordered to recall, buy back, rescind, and/or repair the homes and structures owned by Plaintiffs and Class Members.

135.   Plaintiffs, on behalf of themselves and all others similarly situated, demand Id. to 126 with word injunctive and equitable relief and further, that Defendants be ordered to: (1) to buy back or variations and some modification rescind the contracts for Plaintiffs' and Class Members' homes and other structures, or in the alternative, remediate, repair and/or replace the drywall in the homes and structures upon proof by the Defendants of the feasibility of such remedy or repair; (2) cease and desist from misrepresenting to the Class and the general public that there is no defect in, or danger associated with the drywall; (3) institute, at their own cost, a public awareness campaign to alert the Class and general public of the defect and dangers associated with the drywall; and (4) create, fund, and support a medical monitoring program consistent with the requirements of various state laws.

136.   Until Defendants' defective drywall has been removed and Plaintiffs' and Class Id. to 127 with word Members' homes are properly remediated, Defendants should provide continued environmental variations and air monitoring in the homes and structures.

137.   Plaintiffs and Class Members have been exposed to greater than normal background levels of sulfides and other hazardous chemicals as a result of exposures to Defendants' defective and unfit drywall and have suffered personal injuries as a result.

Id. to 128 with word variations

138.   As a result of the release of sulfides and other noxious gases by Defendants' drywall, Plaintiffs and Class Members have been exposed to hazardous, dangerous, or toxic substances and have suffered injuries and damages.

Same as 129 with modifications

139.   Plaintiffs' and Class Members' exposures were caused by the Defendant's negligent or otherwise tortious conduct.

Id. to 130

140.   Plaintiffs' and Class Members' exposure may lead to serious health problems, diseases, and medical conditions that may be prevented by timely medical diagnosis and treatment.

Id. to 131

141.   The method and means for diagnosing the Plaintiffs' and Class Members' potential medical problems are well accepted in the medical and scientific community and will be of great benefit to the Plaintiffs' and Class members by preventing or minimizing health problems that they may encounter as a result of the defective and unfit drywall.

Id. to 132

142.   As a proximate result of their exposure to sulfide and other noxious gases from Defendants' defective and unfit drywall, Plaintiffs and Class Members have developed a significantly increased risk of contracting a serious latent disease.

Id. to 133 with word variations

143.   Monitoring procedures exist that make the early detection of any latent disease possible that are different from those normally recommended in the absence of the exposure.

Id. to 134

144.   The prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

Id. to 135

### DEMAND FOR JURY TRIAL          Id.

Plaintiffs individually and on behalf of the Class Members, hereby demand a trial by jury as to all issues so triable as a matter of right.

### PRAYER FOR RELIEF          Id. with some word variations

WHEREFORE Plaintiffs, on behalf of themselves and all others similarly situated demand upon Defendants jointly and severally for:

a.  An order certifying the case as a class action;

b.  An order certifying the Class;

c.  An order appointing Plaintiffs as the Class Representatives;

d.  An order appointing the undersigned as counsel for the Class;

e.  Compensatory, statutory, and/or punitive damages;

f.  Pre and post-judgment interest as allowed by law;

g.  Injunctive relief;

h.  An award of attorney's fees as allowed by law;

i.  An award of taxable costs; and

j.  Any and all such further relief as this Court deems just and proper.

/s/ *James V. Doyle, Jr.*

James V. Doyle, Jr.
DOYLE LAW FIRM, PC
2100 Southbridge Pkwy., Suite 650
Birmingham, AL 35209
Tele: 205-533-9500
Fax: 205-414-7528
jimmy@doylefirm.com
*Attorney for Plaintiffs*

*Elizabeth Bennett, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*

*Exhibit "A" - Plaintiffs Named in Class Action*

| | Plaintiff(s) | | Address of Affected Property | | | |
|---|---|---|---|---|---|---|
| 1. | Toshonia Jackson Armstrong & Martin Armstrong | 418 | Sandstone Creek Lane | Dickinson | TX | 77539 |
| 2. | Luciana Bado | 26057 | Coronation Drive | Denham Springs | LA | 70726 |
| 3. | Elizabeth Bennett | 102 | Morningwalk Lane | Huntsville | AL | 35824 |
| 4. | Dan Blonsky | 8220 | SW 60 Court | South Miami | FL | 33143 |
| 5. | Jennifer Brady | 2089 | Knollwood Place | Birmingham | AL | 35242 |
| 6. | Mary Sue Caranna | 224 | Pinewood Drive | Pass Christian | MS | 39531 |
| 7. | Damian Cason | 124 | Arbor Hill Lane | Huntsville | AL | 35824 |
| 8. | CDO Investments, LLC | 25409 | Durango Court | Punta Gorda | FL | 33955 |
| 9. | Michael Chamberlin | 275 | West Robert E. Lee Blvd. | New Orleans | LA | 70124 |
| 10. | Mardechria Charles | 116 | Dufresne Drive | Vacherie | LA | 70090 |
| 11. | Bonnie Cordier | 11429 | Maxine Drive | New Orleans | LA | 70128 |
| 12. | George Ferry | 101 | Lakeside Drive | Waveland | MS | 39576 |
| 13. | Stephanie Fussell | 229 | Felicity Street | Bay St. Louis | MS | 39520 |
| 14. | Michael Ginart | 2104 | Olivia Street | Meraux | LA | 70075 |
| 15. | Jack Green | 1709 | Seacrest Drive | Gautier | MS | 39553 |
| 16. | Katie Hallmark | 775 | Ridgefield Way | Odenville | AL | 35120 |
| 17. | Tim Hoffman | 624 | NE 2nd Place | Cape Coral | FL | 33909 |
| 18. | Ike Ijemere | 7012 | Eagle Point Trail | Birmingham | AL | 35242 |
| 19. | Mike Issman | 669 | Timberwood Loope | Madisonville | LA | 70447 |
| 21. | Jeremy Jordan | 11592 | Azalea Trace | Gulfport | MS | 39503 |
| 22. | Paul J. Kleinmann | 1042 | NE 40th Terrace | Cape Coral | FL | 33909 |
| 23. | Toni Macksey | 4321 | Lucerne Street | Metairie | LA | 70006 |
| 24. | Karen McCann | 73244 | Penn Mill Road | Covington | LA | 70435 |
| 25. | MCF Enterprises, Inc. | 8554 | Pegasus Drive | Lehigh Acres | FL | 33971 |
| 26. | Mindy Milam | 4625 | Palmyra Street | New Orleans | LA | 70119 |
| 27. | Mindy Milam | 4627 | Palmyra Street | New Orleans | LA | 70119 |
| 28. | Joseph Niemiec | 6881 | Brompton Drive | Lakeland | FL | 33809 |
| 29. | Ronald Pendelton | 5224 | Pasteur Blvd. | New Orleans | LA | 70122 |
| 30. | Chien Van Pham | 9549 | Homestead Drive | Baton Rouge | LA | 70817 |
| 31. | Peter Robinson | 131 | Sea Oaks Drive | Long Beach | MS | 39560 |
| 32. | Veronica Rosenaur | 13891 | Calle Savario Drive | Prairieville | LA | 70769 |
| 33. | Jason Scott | 149 | Silo Hill Road | Madison | AL | 35758 |
| 34. | Dan Tavanese | 208 | NE 23rd Place | Cape Coral | FL | 33909 |
| 35. | Laura Veira | 14763 | SW 35 Lane | Miami | FL | 33185 |

| 36. | Jinxi Zhu | 16002 | Innerarity Point Road | Pensacola | FL | 32507 |
|---|---|---|---|---|---|---|
| | | | | | | |

## ADDITIONAL CLAIMS

| | | | | | | |
|---|---|---|---|---|---|---|
| 37. | Ruben Dapena o.b.o. Annetta, LLC | 363 | NE 30th Avenue | Homestead | FL | 33033 |
| 38. | Scott Armstrong & Kim Armstrong | 42296 | Forest Lane | Hammond | LA | 70403 |
| 39. | Jason Arnold | 26057 | Coronation Avenue | Denham Springs | LA | 70726 |
| 40. | Bank of Louisiana | 35211 | Beverly Hills Drive | Prairieville | LA | 70769 |
| 41. | Hoan Bao | 1008 | Washington Court | Moody | AL | 35004 |
| 42. | Carole Bonney | 35471 | Reese Lane | Slidell | LA | 70460 |
| 43. | Isidro Calderon | 3441 | SW Haines Street | Port St. Lucie | FL | 34953 |
| 44. | Braulio Castillo & Maximo Sanchez | 357 | SW Log Drive | Port St. Lucie | FL | 34953 |
| 45. | Becky Chedester & Michael Chedester | 10955 | Brighton Drive | Chunchula | AL | 36521 |
| 46. | Abigail Cohen | 20305 | Chestnut Grove Drive | Tampa | FL | 33647 |
| 47. | John Fagan | 11126 | Tahiti Street | Bay St. Louis | MS | 39520 |
| 48. | Bill Foreman | 7514 | Pinehurst Court | Diamondhead | MS | 39525 |
| 49. | Jawad Gharib & Fatme Gharib | 4 | Beresford Drive | Metairie | LA | 70001 |
| 50. | Jawad Gharib | 8807 | South Claiborne Avenue, Apt. A | New Orleans | LA | 70118 |
| 51. | Jawad Gharib | 8807 | South Claiborne Avenue, Apt. B | New Orleans | LA | 70118 |
| 52. | Jawad Gharib | 8807 | South Claiborne Avenue, Apt. C | New Orleans | LA | 70118 |
| 53. | Cathey Gueydan & Tommy Gueydan | 42055 | Jefferson Drive | Hammond | LA | 70403 |
| 54. | Cesar Jaramillo & Ines Jaramillo | 5301 | Nicklaus Drive | Winter Haven | FL | 33884 |
| 55. | John Judge & Rebecca Judge | 2618 | 50th Street West | Lehigh Acres | FL | 33971 |
| 56. | Kevin Karpel | 17770 | 64th Place North | Loxahatchee | FL | 33470 |
| 57. | Joshua Kelley | 160 | Blairs Circle | Pell City | AL | 35215 |
| 58. | Christopher Kopach & Julianne Kopach | 20318 | Chestnut Grove Drive | Tampa | FL | 33647 |
| 59. | Nancy Lafontaine & Larry Lafontaine | 478 | St. Charles Street | Bay St. Louis | MS | 39520 |
| 60. | Adelaide Levin | 2201-03 | Neyrey Street | Metairie | LA | 70001 |
| 61. | V. Alethia Locke-Esberry | 962 | SW Haas Avenue | Port St. Lucie | FL | 34953 |
| 62. | Marie Lorquet | 284 | James Circle | Lake Alfred | FL | 33850 |
| 63. | Nancy Mansour & William Mansour | 8678 | Tally Ho Lane | Royal Palm Beach | FL | 33411 |
| 64. | Ron Martinez | 6507 | Memphis Street | New Orleans | LA | 70124 |
| 65. | David Reynolds & Dahnelle Reynolds | 101 | Spotted Fawn Road | Madison | AL | 35758 |
| 66. | Carl Russell & Lynn Russell | 5427 | Creekside Lane | Hoover | AL | 35244 |

| 67. | Pasquale Russo | 9809 | Boraso Way, Unit #105 | Fort Myers | FL | 33908 |
| 68. | Tony Turnbow | 22806 | SW 89 Place | Miami | FL | 33190 |
| 69. | Jay Wang | 4220 | Vincennes Place | New Orleans | LA | 70125 |
|  |  |  |  |  |  |  |