UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE-MANUFACTURED : MDL NO. 2047
DRYWALL PRODUCTS LIABILITY : SECTION: L
LITIGATION : JUDGE FALLON
: MAG. JUDGE WILKINSON
:
THIS DOCUMENT RELATES TO: :
*ALL CASES* :
:

### KRUPNICK CAMPBELL MALONE, ET AL.'S OPPOSITION TO PLAINTIFFS' LEAD AND LIAISON COUNSEL'S MOTION ADDRESSING SUGGESTION OF REMAND'S REFERENCE TO THE NEED TO ESTABLISH A PLAINTIFFS' ATTORNEYS' FEES FUND TO COMPENSATE AND REIMBURSE ATTORNEYS FOR SERVICES PERFORMED AND EXPENSES INCURRED FOR MDL ADMINISTRATION AND COMMON BENEFIT

I. **Summary**

The undersigned, Krupnick Campbell Malone, et al. ("KCM"), is counsel for 103 plaintiffs subject to the Court's "Suggestion of Remand" involving Florida homeowners with Taishan claims. [Doc. 21242]. Plaintiffs' Lead and Liaison Counsel have filed a motion seeking to have this Court establish a mandatory and inflexible framework for disgorgement of attorneys' fees from lawyers with individual contracts for representation involving all future settlements and/or resolutions related to Taishan homeowners in Florida.

In seeking this fee allocation, Lead and Liaison Counsel actually seek a proportional amount for common benefit counsel which was rejected by this Court in the Knauf allocation process – that is, Lead and Liaison Counsel now seek a 60% allocation of attorneys' fee for the benefit of themselves and a handful of common benefit counsel involved in Taishan litigation. This proportion of allocation is sought prior to an unpredictable level of pre-trial and trial work, and without regard to how much effort and cost is expected to be expended, by the individual

contract lawyers. Then, Lead and Liaison Counsel make clear their intent to seek permission in the future to periodically disburse those allocated funds to the common benefit counsel.

It is premature for a final determination of any appropriate allocation for common benefit, particularly given the unknown nature of what individual retained counsel will endure in regards to pre-trial, trial and appellate work on their individual cases. More disturbing, the fee disgorgement framework proposed by Lead and Liaison Counsel burdens individual retained counsel firms with an inverted and unfair fee structure and jeopardizes their ability to represent their clients at a fee level which is commensurate with the projected and/or potential work necessary.

## II.  **Brief History**

The Court has set forth the pertinent history of this Taishan litigation to date in the Court's "Suggestion of Remand". [Doc. 21242]. From this point forward, the amount of work necessary for individual contract lawyers representing Taishan homeowners, while not fully known, is expected to be significant.

To be sure, the Court has issued important rulings and even set a class damages model for homes to be remediated. However, given the long history to this point and the lack of hope on the part of most homeowners, the vast majority of cases remaining have likely been subject to foreclosure, short sale or sold otherwise and/or have already been remediated. Damage modeling under Florida law in this regard will be presented for the first time in the litigation. Additionally, product identification discovery is most certainly expected to continue, in large part because of the refusal of the Taishan defendants to be forthcoming with quality product identity admissions.

2

In what can only be described as another overreach involving attorneys' fees, the Lead and Liaison Counsel actually seek an order of this Court providing for an allocation between common benefit and individual retained counsel that <u>exceeds</u> what they sought as part of the Knauf allocation (59% / 41%) [Doc. 20293; 20293-1] and exceeds the percentage awarded by the Court in the Knauf allocation (52% / 48%). [Doc. 21168]

The Court found, after a lengthy evidentiary record, a 52% / 48% percent allocation between common benefit and individual retained counsel in favor of common benefit counsel, for the Knauf and global fee fund to be appropriate. *Id.* Here, with no prospect of settlement and significant work to be performed by individual contract lawyers going forward, the Lead and Liaison Counsel are actually seeking a higher allocation in favor of common benefit for any settlement prior to trial. Then, after trials and appeals, Lead and Liaison Counsel propose the Court order a 50% / 50% percent allocation without any regard to the time and expense incurred by individual retained counsel and only marginally different than what the Court ruled involving the global fee fund. Under any analysis, this is an overreach and will spawn needless objections and litigation.

To provide an example of how onerous the relief sought by Lead and Liaison Counsel is, if a firm has an existing contract for representation with a 25% contingency fee, Lead and Liaison Counsel are seeking that 60% of the attorneys' fee be diverted to common benefit counsel.[1] As a result, a firm representing an individual client through the entirety of the pretrial proceedings with a 25% contingency contract that settles on the courthouse steps, will earn, on

---

[1] Lead and Liaison counsel suggest this Court enter a 32% holdback for attorneys' fees. [Doc 21259-3, p. 25 et seq.]. For some counsel, they may have 40%, 33% or even 25% contingency contracts with individual clients. Pre-determining the maximum fee is premature without knowing the amount of work for pre-trial, trial and appeals.

3

their best day, a 10% fee for all of their efforts. Then, for the significant effort of representing a client through trials and any appeals, the firm would earn an additional 2.5% fee. This is even less than the fees to be earned on the Knauf settlement, if those are disbursed in accordance with the Court's ruling.

Also of concern, Lead and Liaison Counsel actually plan to seek periodic disbursement of the common benefit funds. See Doc. 21259-3 at p. 27. As a result, they intend to petition this Court periodically to disburse the hold back even prior to the overall litigation being completed.

It is reasonable that at some later date this Court may set, after submissions by all those involved and perhaps even an evidentiary hearing to weigh all the factors, a mandated allocation for common benefit work and hold back such allocation from disbursement until all parties have an opportunity fully litigate and petition the Court.[2] However, for Lead and Liaison Counsel to invite this Court to impose such an inflexible attorneys' fee framework before the cases have even been remanded to the Florida is onerous on individual retained counsel.

Notably, it is fair to assume that all of the firms with Taishan cases have had their attorneys' fees from the Knauf and global settlement tied up in protracted litigation involving both the allocation of the fee fund to common benefit and individual retained attorneys as well as the second stage of allocation of common benefit.[3] Now more than ever, with the prospect of these firms having to fund significant litigation efforts in Florida, the undersigned hopes all

---

[2] The application of Lead and Liaison Counsel only involves the cases being remanded to Florida. Presumably, as a result, there may be other individual retained counsel who would otherwise object to the relief sought if it applied to other cases.

[3] Any suggestion that the undersigned firm or other individually retained counsel could participate or perform common benefit work with the opportunity to later receive a common benefit allocation, having watched the process involving the global fee fund allocation from the front row, offers little comfort or confidence.

4

counsel will bring an end to the dispute or that Court orders a fair interim disbursement to avoid these firms having to further finance human resources and case costs after nine (9) years without payment of earned fees.[4] To do otherwise is to provide Taishan an economic advantage over the law firms representing victim homeowners.[5] While this predicament is not of the Court's making and the Court has had the thankless job of addressing the over-litigation of the fee dispute, the undersigned and over 140 other firms are without the power to break this logjam.[6]

### III. Conclusion

For the reasons set forth herein, the undersigned respectfully requests the Court seeks deny Lead and Liaison Counsel's effort to establish at this time a mandated attorneys fee framework which deducts 60% of fees earned pre-trial or 50% of fees earned post-trial for a handful of common benefit counsel.

Dated: March 29, 2018.

                                                Respectfully submitted,

                                                /s *Michael J. Ryan*
                                                Michael J. Ryan, Esquire
                                                Bar No. 975990

---

[4] . Pending are motions seeking interim disbursement, which have been opposed by Lead and Liaison counsel. See, e.g., Doc 21212. See also Doc.20434; 20434-1; 20436.

[5] As the Court remembers, Lead and Liaison Counsel actually held back $10,000,000 from the global fee fund from the Knauf settlement to fund the Taishan litigation. In essence, Lead and Liaison Counsel were attempting to withhold fees earned by lawyers representing homeowners through the Knauf settlement to finance an unrelated litigation. Thankfully, the Court ruled that those funds should not be withheld from the global fee fund and should be subject to allocation. [Doc. 21168]

[6] After the Court's January 31, 2018, ruling on allocation between common benefit and individual contract lawyers, the Fee Allocation Committee initially attempted to schedule a meeting for February 20, 2018 to address the next steps of Common Benefit fee allocation amongst Common Benefit firms. That meeting was rescheduled for March 20, 2018. No resolution was forthcoming at that time. Efforts to reconvene have been unsuccessful. It may be helpful for the Court to schedule a meeting with the Fee Committee to address status, timing, issues of concern and efforts to resolve the fee dispute.

>Krupnick Campbell Malone Buser Slama
>Hancock Liberman P.A.
>12 S.E. 7 Street, Suite 801
>Fort Lauderdale, FL  33301
>Phone (954) 763-8181
>Fax (954) 763-8292
>pleadings-MJR@krupnicklaw.com
>mryan@krupnicklaw.com
>*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Memorandum In Opposition has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to File&ServeXpress (f/k/a LexisNexis File & Serve) in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047. Dated:  March 29, 2018.

>/s *Michael J. Ryan*
>Michael J. Ryan, Esquire
>Bar No. 975990
>Krupnick Campbell Malone Buser Slama
>Hancock Liberman P.A.
>12 S.E. 7 Street, Suite 801
>Fort Lauderdale, FL  33301
>Phone (954) 763-8181
>Fax (954) 763-8292
>pleadings-MJR@krupnicklaw.com
>mryan@krupnicklaw.com
>*Attorneys for Plaintiffs*