**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L |
| THIS DOCUMENT RELATES TO: | JUDGE FALLON |
| *ALL CASES* | MAG. JUDGE WILKINSON |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**PRIMARY COUNSEL'S RESPONSE IN OPPOSITION TO**
**PLAINTIFFS' LEAD AND LIAISON COUNSEL'S**
**MOTION ADDRESSING SUGGESTION OF REMAND (R. DOC. 21267)**

On the heels of the Court's suggestion of remand (R. Doc. 21242 and 21252), Plaintiffs' Lead and Liaison Counsel (hereinafter, the "PSC") ask the Court to enter an order (1) requiring the Taishan defendants to holdback, as the entire attorneys' fee award, 32% of any recovery due to plaintiffs and (2) awarding to the PSC, 60% of the holdback (19.2% of the total recovery) on those cases resolved prior to trial and 50% of the holdback (16% of the total recovery) on those cases that result in trial.  Plaintiffs' Lead and Liaison Counsel's Motion Addressing Suggestion of Remand's Reference to the Need to Establish a Plaintiffs' Attorneys' Fees Fund to Compensate and Reimburse Attorneys for Services Performed and Expenses Incurred for MDL Administration and Common Benefit (R. Doc. 21267) and supporting memorandum (R. Doc. 21267-1 at 25) (collectively, the "Taishan Holdback Motion").  Given the procedural history of this MDL and the potential for remand, the holdback and percentage of the fees requested by the PSC at the cost of Primary Counsel,[1] are premature, unreasonable, and highly prejudicial to Florida claimants and, therefore, should be denied.[2]

---

[1] Primary Counsel include the individually retained counsel appearing or represented through

1

**ARGUMENT**

**1.   The PSC's Request Attempts to Further Tangle the Knauf and Taishan Time**.

Despite the *Order and Reasons Setting Common Benefit Fees* (R. Doc. 21168) (the "Fee Order"),[3] the PSC now seeks to secure additional compensation for common benefit work that occurred prior to December 31, 2013.  In support of this request, it describes work performed by common benefit counsel prior to that date which was spent (1) jointly pursuing both the Knauf-related entities and Taishan entities (R. Doc. 21267-1 at 5-8)[4] and (2) exclusively spent pursuing

---

counsel in the signature block of this pleading.

[2] In addition to the arguments set forth herein, Primary Counsel adopt and incorporate Krupnick Campbell Malone, et al.'s Opposition to Plaintiff's Lead and Liaison Counsel's Motion Addressing Suggestion of Remand's Reference to the Need to Establish a Plaintiffs' Attorneys' Fees Fund to Compensate and Reimburse Attorneys for Services Performed and Expenses Incurred for MDL Administration and Common Benefit (R. Doc. 21278) (the "KCM Opposition").

[3] The Fee Order purports to award common benefit counsel 52% of the existing and available settlement funds for work performed through December 31, 2013.  However, the allocation will be more than 52% if the fees from the voluntary contributions, InEx/ North River Stipulation, and Virginia Settlements are allocated to common benefit counsel.  *See* Memorandum in Support of Primary Counsel's Motion for Certification of Order for Interlocutory Appeal Under 28 U.S.C. § 1292(b), or in the Alternative Entry of Final Judgment Under Rule 54(b) (R. Doc. 21216-1 at n. 2).

[4] While the PSC states that the focus of its motion is "time and expenses incurred from January 1, 2014, going forward" (R. Doc. 21267-1 at 24), it nevertheless boasts and details its work occurring prior to that time, which was already included, albeit improperly, in the Fee Order. Such work purportedly included managing the litigation; attendance at status conferences; preparing and serving Omni complaints and complaints in intervention; investigating the "sources, supply chains, and damaging effects of Chinese Drywall" (R. Doc. 21267-1 at 6); preparing and propounding discovery requests; participating in 200 depositions; exchanging (and translating) more than a million pages of documents and expert reports; issuing FOIA requests; participating in bellwether trials; implementing a remediation pilot program; and negotiating settlement agreements with multiple defendants.  R. Doc. 21267-1 at 5-8.  *See also*, Plaintiffs' Lead and Liaison Counsel's Reply to Krupnick Campbell Malone, et al.'s Opposition to

the Taishan entities (R. Doc. 21267-1 at 8-17).  Reliance on this work is improper.  First, the common benefit work associated with both sets of defendants that cannot be segregated (a fact which Primary Counsel dispute and is contrary to the record evidence) must be apportioned by the Court to prevent double recovery so that the time and fees are properly allocated and paid for by the respective defendants.  *See* R. Doc. 20993-2 at 68-69.  For purposes of awarding fees, this work must be untangled, if not by the parties at least by the Court in its allocation.  Granting the relief requested by the PSC would result in a premature and excessive assessment against any potential Taishan-related fees.

Second, consistent with the approach taken by the PSC thus far, its Taishan Holdback Motion further tangles the Knauf and Taishan components of the litigation despite the litigation "proceed[ing] on strikingly different tracks for the claims against each group."  R. Doc. 20741 at 2. Specifically, the PSC attempts to substantiate its request by relying upon work associated solely with the Taishan litigation prior to December 31, 2013.  R. Doc. 21267-1 at 8-9.  "[T]he beleaguered procedural history of the Taishan Defendants' recalcitrant participation in this litigation is well-known and well-documented in the MDL and the Fifth Circuit Court of Appeals." R. Doc. 21267-1 at 8 (cit. om.).  This includes work associated with the entry of default judgments and sanctions, bellwether trials, jurisdictional contests before this Court and the Fifth Circuit, and significant discovery "including depositions personally overseen by the

---

Plaintiffs' Lead and Liaison Counsel's Motion Addressing Suggestion of Remand's Reference to the Need to Establish a Plaintiffs' Attorneys' Fees Fund to Compensate and Reimburse Attorneys for Services Performed and Expenses Incurred for MDL Administration and Common Benefit (R. Doc. 21285-1 at 2-4) (listing work conducted by common benefit counsel in pursuit of defendants other than the Taishan entities).

Court in Hong Kong" (R. Doc. 21267-1).  *Id.*; *see also*, Suggestion of Remand (R. Doc. 21242 at 4-6).

It is improper to conflate the common benefit work attributable to the two sets of defendants.  *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 302 at note 11 (3d Cir. 2005), *as amended* (Feb. 25, 2005) (In awarding fees, Court would not conflate "separate settlements, involving distinct legal issues and risks. . . .").  An analogous situation was presented in *In re: Sears, Roebuck & Co. Front-loading Washer Products Liab. Litig.*, 2016 WL 4765679, at *9 (N.D. Ill. Sept. 13, 2016), *rev'd on other grounds,* 867 F.3d 791 (7th Cir. 2017).  The MDL involved claims against Sears resulting from two defects in front-load washing machines:  (1) a "Biofilm" defect and (2) a Central Control Unit ("CCU") malfunction.  After extensive litigation, the parties settled.  An identical MDL was pending against Whirlpool in the Northern District of Ohio.  The parties reached a settlement which was divided into a Biofilm settlement (with both defendants) to be approved in the Ohio MDL and a CCU settlement (with both defendants) to be approved in the Illinois MDL.  In approving the attorney fee award in the Illinois MDL where the CCU settlement was pending, the court held that the defendants should not be responsible for paying attorneys' fees for any work associated with the Biofilm claims even though the CCU and Biofilm claims were initially litigated together:

> Defendants argue that work "on the biofilm claims should [not] be compensated as part of this CCU settlement, especially because Class Counsel intend to request reimbursement of fees and costs in the separate biofilm class settlement." The Court agrees that work performed on the biofilm litigation should not be compensated here. Defendants' concern arises because prior to April 2014, the CCU claims were litigated together with the related biofilm claims. Documents were produced into a common database, legal issues were tried together in single briefs, and several depositions applied to all claims. . . . The Court agrees with defendant's position, but

> believe class counsel has generally been diligent in only seeking
> compensation for CCU related hours.

*In re: Sears, Roebuck & Co. Front-loading Washer Products Liab. Litig.*, 2016 WL 4765679, at

*9 (internal citations and quotations omitted).

Like the biofilm claims in *Sears, Roebuck & Co. Front-loading Washer Products*, the

claims against Taishan are separate and distinct from those claims already settled with other

defendants.  To charge individually retained counsel for work conducted which is unrelated to

the respective settling defendants who paid attorney's fees is improper.  Thus, the common

benefit work attributable solely to Taishan prior to December 31, 2013 must be segregated from

the Knauf-related work; however, whether and the extent to which common benefit counsel

should be compensated should be determined at a later date after the Taishan litigation is

completed.

Third, the Taishan Holdback Motion improperly prays for assessments against Taishan

recoveries for work attributable to the Knauf litigation.  According to the PSC, the total common

benefit time incurred since January of 2014 exceeds 54,835 hours.  R. Doc. 21267-1 at 24.  The

entirety of this work is not attributable to the Taishan litigation; rather, some of this work was

associated with the administration of the Knauf settlements and the litigation of the fee dispute.

While Primary Counsel do not have access to the common benefit time records, despite its

numerous requests,[5] this assertion is evident based on the PSC's exhibits submitted in support of

---

[5] *See* R. Doc. 20728-2 at 5-8 (outlining the various requests made by Primary Counsel for common benefit time submissions); *see also,* R. Doc. 20993-2 at note 103 (explaining that the sealing and preventing Primary Counsel's review of time records is a per se denial of due process).

its motion. *See, e.g.*, Ex. A to Taishan Holdback Motion (reflecting Docket Entry on March 19, 2014 for Motion Hearing re 17507 Motion to Enforce Settlement Agreement and Immediately Release RCR Units at the Villa Lago Renaissance Commons for Remediation (R. Doc. 17545); Docket Entry on November 25, 2014 for Knauf related motions (R. Doc. 18161)) (R. Doc. 21267-2); *see also*, Ex. B to Taishan Holdback Motion (reflecting Docket Entry on January 10, 2014 for Notice by Plaintiff re Third Supplemental Final List of Exhibits in Support of Final Settlement Approval (R. Doc. 17377); Docket Entry on September 29, 2017 for Objections by Plaintiff re 20950 Order The Fee Committee's Objections to Special Master's Report and Recommendations Regarding Attorneys' Fees and Expenses (R. Doc. 20999)) (R. Doc. 21267-3).

Without access to the time entries submitted by common benefit counsel, Primary Counsel cannot determine which common benefit hours are attributable to Knauf and which are attributable to Taishan. Nevertheless, for the same reasons it is improper to compensate Taishan-related work from the Knauf settlements (as explained in the preceding paragraphs), it is improper to include any work associated with the Knauf settlement administration in the common benefit hours to be compensated by Taishan-related recoveries. The claims against Taishan are separate and distinct from those claims already settled with other defendants. To charge individually retained counsel for work conducted which is unrelated to the Taishan litigation is improper.

**2. An award of 50-60% is excessive and premature considering the result at present is valueless.**

At present, the Taishan-related common benefit work has no value because the Taishan litigation has not, and may not ever, produce any recovery on behalf of affected claimants. As a

6

result, individually retained counsel are now faced with trying hundreds of separate and individual cases against the Taishan defendants while disproportionately paying common benefit counsel up to 60% of the resulting attorneys' fees.  As explained in the KCM Opposition, the PSC's request for a holdback of Taishan recoveries is premature at this point as the Taishan litigation is ongoing and the entire case framework is subject to change.[6]

Further, the request is improper.  In allocating the Knauf-related attorneys' fees, one justification for the generous common benefit allocation was the unique nature of the settlement achieved by the PSC.  R. Doc. 21168 at 13.  As explained by the Court:

> The Knauf related settlements provide the plaintiffs with a "made whole" remediation in all Knauf (KPT Drywall) cases, combined with monetary relief for all (even some non-Knauf) class members.  Most significant perhaps . . . the PSC achieved these remediation benefits without obliging a single class member to deduct any legal fees or case costs from his or her settlement recovery. . . . [T]his is a significant accomplishment.  In addition, the PSC negotiated Knauf settlement made available to plaintiff property owners the dispute resolution service of a court-appointed Ombudsman to assist class members in the remediation process with the remediation contractor.  The PSC also supported the services of a *pro se* curator to assure that unrepresented class members might navigate the ligation and participate fully in the settlement process.

*Id.*

This justification is absent *vis-a-vis* the Taishan litigation given the absence of any recovery and resulting fee award.  That is, the Taishan claimants will not benefit from same

---

[6] The PSC has acknowledged this uncertainty:  "Because the instant action is ongoing, it is impossible to ascertain the total amount of time and expenses which will have been expended by [the PSC] and associated counsel for the common benefit or to ascertain the amounts which will be generated for the Plaintiffs as a whole."  R. Doc. 21267-1.

settlement package, assuming they benefit from a settlement at all.  As a result of the pending remand order (JPML Dkt. 482), many Taishan claimants will be forced to settle on an individual basis or, absent settlement, endure a trial on the merits.[7] To require a holdback of fees in advance and without consideration of the future costs which will be incurred by individually retained counsel will undoubtedly prejudice Florida claimants if it is not economically feasible for individually retained counsel to pursue individual trials. Now, nine years into the litigation, if the cases are remanded, individually retained counsel will be responsible for litigating each claim against Taishan, negotiating individual settlements and trying those cases which do not result in settlement.  To force them to share such a disproportionate percentage of their fees with common benefit counsel, who will be compensated for a significant amount of the work associated with the Taishan litigation through existing settlement funds, is both unreasonable and unjust, and will likely prejudice Florida claimants.

Finally, the Taishan Holdback Motion should be denied because premature adjudication of attorneys' fees related to the Taishan litigation may work to the detriment of the individual claimants.  If the cases are remanded to the transferor court(s), the imposition of a mandatory holdback at this point may serve as an additional obstacle to and thereby prevent settlement, forcing individual trials of each case.

---

[7] Currently, 1,734 claims are pending remand; however, during the March 2018 status conference, the Court explained that it intends to remand the remainder of the Taishan claims. Doc. 21256 at 9:20-10:6.

## CONCLUSION

For the reasons set forth above, Primary Counsel respectfully request the Court to deny the PSC's Taishan Holdback Motion.

Respectfully submitted:

**FAIRCLOTH, MELTON & SOBEL, LLC**

By: ___/s/ *Jimmy R. Faircloth, Jr.*___
    Jimmy R. Faircloth, Jr. (LA #20645)
    jfaircloth@fairclothlaw.com
    Brook L. Villa (LA #31988)
    bvilla@fairclothlaw.com
    Franklin "Drew" Hoffmann (LA #35824)
    dhoffmann@fairclothlaw.com
    412 N. 4th Street, Suite 230
    Baton Rouge, LA 70802
    Phone: (225) 343-9535
    Fax: (225) 343-9538

    *Attorneys for Parker Waichman LLP*

**BARON & BUDD, P.C.**

By: ___/s/ *Russell W. Budd*___
    Russell W. Budd (TX #03312400)
    rbudd@baronbudd.com
    S. Ann Saucer (TX #00797885;
    LA #21368)
    asaucer@baronbudd.com
    3102 Oak Lawn Avenue, Suite 1100
    Dallas, TX 75219
    Phone: 214-521-3605
    Fax: 214-520-1181

**LISKA, EXNICIOS & NUNGESSER**

By: ___/s/ *Val Patrick Exnicios*___
    Val Patrick Exnicios, Esq.
    vpexnicios@exnicioslaw.com
    1515 Poydras Street
    14th Floor, Ste. 1400
    New Orleans, LA. 70112
    Phone: (504) 410-9611
    Fax: (504) 410-9937
    Cell: (504) 495-9666

    *Attorneys for Pendley Baudin & Coffin,*
    *Rhine Law Firm, and Luckey & Mullins*

**GENTLE, TURNER, SEXTON & HARBISON, LLC**

By: ___/s/ *K. Edward Sexton, II*___
    K. Edward Sexton, II
    esexton@gtandslaw.com
    501 Riverchase Parkway East, Suite 100
    Hoover, Alabama 35244
    Phone: (205) 716-3000
    Fax: (205) 716-3010

**MCCALLUM, HOAGLUND, COOK & IRBY, LLP**

By: ____/s/ *Eric D. Hoaglund*____
    Eric D. Hoaglund
    ehoaglund@mhcilaw.com
    905 Montgomery Highway, Suite 201
    Vestavia Hills, Alabama 35216
    Phone: (205) 824-7767
    Fax: (205) 824-7768

**ROBERTS AND DURKEE, LLP**

By: ____/s/ *C. David Durkee*____
    C. David Durkee
    durkee@rdlawnet.com
    2665 South Bayshore Drive, Suite 300
    Coconut Grove, FL 33133
    Phone: (305) 442-1700
    Fax: (305) 442-2559

**ALLISON GRANT, P.A.**

By: ____/s/ *Allison Grant*____
    Allison Grant (FL #858330)
    agrant@allisongrantpa.com
    14 SE 4th St
    Boca Raton, FL 33432-6111
    Phone: 561-994-9646
    Fax: 561-431-4627

**MILSTEIN, JACKSON, FAIRCHILD & WADE, LLP**

By: ____/s/ *Mark Milstein*____
    Mark Milstein
    mmilstein@mjfwlaw.com
    10250 Constellation Blvd., 14th Floor
    Los Angeles, CA 90067
    Phone: (310) 396-9600
    Fax: (310) 396-9635

**ALTERS LAW FIRM, P.A.**

By: ____/s/ *Jeremy W. Alters*____
    Jeremy W. Alters (FL #111790)
    jeremy@alterslaw.com
    Justin D. Grosz (FL #984000)
    justin@alterslaw.com
    Matthew T. Moore, Of Counsel (FL #70034)
    matthew@alterslaw.com
    1855 Griffin Road, Suite C470
    Dania Beach, FL 33004
    Phone: (305) 571-8550
    Fax: (305) 571-8558

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the above and foregoing *Response in Opposition to Plaintiffs' Lead and Liaison Counsel's Motion Addressing Suggestion of Remand (R. Doc. 21267)* has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 3rd day of April, 2018.


        */s/ Jimmy R. Faircloth, Jr.*
       JIMMY R. FAIRCLOTH, JR.

11