UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE-MANUFACTURED
DRYWALL PRODUCTS LIABILITY
LITIGATION                                             MDL NO. 2047

                                                       SECTION: L

                                                       JUDGE FALLON
                                                       MAG. JUDGE WILKINSON

THIS DOCUMENT RELATES TO:
*ALL CASES*
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFFS' LEAD AND LIAISON COUNSEL'S SUPPLEMENTAL REPLY
ADDRESSING RESPONSE OF PRIMARY COUNSEL AND MORGAN & MORGAN
TO MOTION TO ESTABLISH A PLAINTIFFS' ATTORNEYS' FEES FUND TO
COMPENSATE AND REIMBURSE ATTORNEYS FOR SERVICES PERFORMED AND
EXPENSES INCURRED FOR MDL ADMINISTRATION AND COMMON BENEFIT**

**I.     INTRODUCTION**

Individually-retained counsel continue to appear confused by the holdback mechanism suggested by Plaintiffs' Lead and Liaison Counsel in their Holdback Motion.[1] This apparent confusion exists even though the *only* purpose of the Holdback Motion is to establish a Court-supervised fund from which an ultimate award of common benefit fees can be paid – the Holdback Motion *is not* a motion for an award of attorneys' fees.[2]

The Holdback Motion describes how the holdback fund should be established, which, by necessity, requires choosing a percentage of each recovery that must be held back to fund future

---

[1] Lead and Liaison Counsel's Memorandum in Support of Their Motion Addressing Suggestion of Remand's Reference to the Need to Establish a Plaintiffs' Attorneys' Fees Fund to Compensate and Reimburse Attorneys for Service Performed and Expenses Incurred for MDL Administration and Common Benefit [Rec. Doc. 21267-1] will be referred to herein as the "Holdback Motion."

[2] Rec. Doc. 21267-1, at 3 (Defendants will place "monies into a Court-supervised fund for later adjudication of distribution to common benefit counsel").

1

payment of fees. As recommended by the Holdback Motion, the process would proceed as follows:

(1) Defendants would directly pay 32 percent of all settlements and verdicts from the remanded cases into the Plaintiffs' Attorneys' Fees Account ("Fees Account") – the "Holdback Payments";[3]

(2) 40 percent of the Holdback Payments on cases that settle prior to trial (and 50 percent on cases that resolve after trial begins) would be paid directly to individually-retained counsel *within ten (10) days* after deposit of the money into the Fees Account thereby not forcing individually-retained counsel to wait for the bulk of their fee;[4]

(3) The remaining 60 percent of the Holdback Payments (or 50 percent in cases that resolve after trial begins) would remain in the Fees Account to ensure monies are available for a future payment of common benefit fees as determined by the Court;[5]

(4) Consistent with Fifth Circuit jurisprudence, Plaintiffs' Lead and Liaison Counsel and common benefit attorneys will file interim fee petitions as the case proceeds and at that time, all interested parties will be heard;[6]

(5) "Ultimately, the amount of the [common benefit] fee to be awarded [would] be determined either under the lodestar approach recognized by the Fifth Circuit in

---

[3] Rec. Doc. 21267-1, at 25.

[4] *Id*. at 25, 27.

[5] *Id*.

[6] *Id*. at 27.

> *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) or under the percentage of the fund approach based upon a judicial assessment of the amount and quality of work performed by the common benefit lawyers in relation to the size of the recoveries and the expenses incurred to produce the recoveries which have been generated."[7]

This procedure ensures that the Court will be able to fulfill its duty to award a common benefit fee as discussed in the Suggestion of Remand.[8]

Notwithstanding this rather limited purpose and scope, several individually-retained attorneys have opposed the Holdback Motion.[9] No one appears to dispute the well-established principle that common benefit counsel are entitled to some portion of the fees that are ultimately obtained from the remanded cases, nor has anyone contested the Court's ability to retain jurisdiction over that process.[10] For the most part, these counsel argue that the Holdback Motion is premature, but it is evident that the real concern for some is that the Court's decision to hold back any percentage of fees for payment of common benefit services would be tantamount to a common benefit fee award.[11] Otherwise, there is no reasonable justification for their objection that this motion is premature.

---

[7] *Id*. at 23.

[8] *See* Suggestion of Remand, Opinion and Order [Rec. Doc. 21242] ("Suggestion of Remand"), at 11-12.

[9] *See*, *e.g*., Rec. Doc. 21278 ("KCM's Opposition"); Rec. Doc. 21289 ("Primary Counsel's Opposition"). In addition, Morgan & Morgan filed a response that did not oppose the Holdback Motion but simply claimed it was premature. *See* Rec. Doc. 21291 ("M&M Response"), at 2.

[10] The justification for such fees is set forth at length in Lead and Liaison Counsel's papers filed in support of the Holdback Motion. *See* Rec. Doc. 21267-1, at 17-22, 26-27; *see also* Rec. Doc. 21285-1 ("Reply to KCM Opposition"), at 6-8.

[11] *See*, *e.g*., Rec. Doc. 21278, at 1, 3-4; Rec. Doc. 21289, at 1, 6-8; Rec. Doc. 21291, at 2 (the Holdback Motion is "premature"). Morgan & Morgan recognizes the significant work put in by common benefit counsel but argues the motion is premature because there is additional common benefit work to be done

3

Counsel's concerns, however, cannot substitute for legal argument and the simple truth is that the Holdback Motion is not a request for a common benefit fee award. Furthermore, it is exactly the time for the Court to put a mechanism in place to ensure there are funds available down the road when a common benefit fee petition is made, and it is essential that the holdback percentage be a generous estimate because if the Fees Account is underfunded, it will be impossible to retrieve the money that has already been disbursed. *See*, *e.g.*, *In re Diet Drugs*, 582 F.3d 524, 551-52 (3d Cir. 2009) (discussing funds that had been refunded to individual counsel and stating that "[m]onths later, those refunds are not likely to be sitting in the bank accounts of the law firms that received them. It seems likely that taxes have been paid, referral counsel has been compensated, and, generally speaking, the refunds have, in all or in part, worked their way through the channels of commerce and, accordingly, would be difficult for the Court to reclaim."). By playing it safe, the Court avoids not having the funds available to effectuate its ultimate award of common benefit fees. And, there is no prejudice to individually-retained counsel because they can have the funds remaining in the account refunded once the common benefit fee is awarded. *See id.* at 551 (discussing refunds from the MDL Fee and Cost Account to numerous law firms that were required by the reduction in the assessment).

On April 2, 2018, Lead and Liaison Counsel replied to the KCM Opposition not anticipating additional papers were going to be filed.[12] Then, on April 3, 2018, Primary Counsel filed their Opposition that begins with a demonstrably false premise – that the Holdback Motion

---

that will need to be considered in an award of fees. *See*, *e.g.*, Rec. Doc. 21291, at 2 (recognizing "the significant efforts of the PSC"), 3 (lawyers working on remand may benefit all claimants and "that lawyer should be compensated for their own common benefit time"), 4 ("Morgan & Morgan does not dispute that common benefit counsel should receive common benefit fees from the Florida *Amorin* cases"). As set forth in response to other timing arguments, the Holdback Motion seeks the establishment of a fund for the eventual payment of common benefit fees, it is not seeking any award of such fees at this time.

[12] Rec. Doc. 21285.

4

asks the Court to award fees "to the PSC" – and then makes arguments that fall into two main categories – (1) rehashed arguments regarding the PSC's alleged intermingling of time spent working on the litigation against the Knauf Defendants and the Taishan Defendants along with additional argument regarding need for the production of detailed time records; and (2) an argument that the 60 or 50 percent holdback is too large.[13]  Therefore, Lead and Liaison Counsel file this Supplemental Reply to respond to those arguments.

## II. PRIMARY COUNSEL'S REHASHED ARGUMENTS HAVE NO BEARING ON THE HOLDBACK MOTION

Primary Counsel spend five pages repeating their previously advanced and rejected argument that "the PSC" is trying to collect fees from the Knauf settlement for efforts spent on the Taishan litigation and now, conversely, trying to collect fees from future Taishan settlements or verdicts based upon time spent on the Knauf litigation.[14]  According to Primary Counsel, it is their task to "untangle" this time, and they need the production of detailed time records to do it.[15]  Even if this argument were not factually and legally wrong, which it is, this is not the time for Primary Counsel to raise it.  As Primary Counsel themselves state, consistent with the entire purpose of the Holdback Motion: "whether and the extent to which common benefit counsel should be compensated should be determined at a later date after the Taishan litigation is completed."[16]  Unfortunately, that time is not yet here and at present, Primary Counsel's entanglement argument is totally irrelevant.

---

[13] Rec. Doc. 21289-1.

[14] Rec. Doc. 21289-1, at 2-6.

[15] Rec. Doc. 21289-1, at 5-6.  Primary Counsel even note two previous attempts to argue that time sheets were needed, both of which were rejected.  *See id.* at 5 n.5.

[16] Rec. Doc. 21289-1, at 5.

Putting aside that there is no time presented in the Holdback Motion to support an award of attorneys' fees because there are no attorneys' fees currently being sought, there are numerous other flaws in Primary Counsel's argument. First, in the ongoing fee award process stemming from the nine interrelated settlements, the Court has used a blended approach to awarding attorneys' fees, meaning the Court awarded a percentage-of-the-fund and used lodestar merely as a crosscheck.[17] Therefore, common benefit fees are not being awarded on an hour-by-hour basis. In addition, when performing the lodestar crosscheck, the Court used only hours and lodestar through December 31, 2013, and therefore, going forward, will only use time from January 1, 2014 to the present.[18] This flies directly in the face of Primary Counsel's double recovery claim.[19]

In the Holdback Motion, Lead and Liaison Counsel referenced efforts spent prior to December 31, 2013, for the *sole* purpose of providing context to the sheer volume of work that has been performed by common benefit counsel in prosecuting the Chinese Drywall litigation.[20]

Simply put, none of Primary Counsel's rehashed arguments have any bearing on the issues set forth in the Holdback Motion.

### III. <u>AN APPROPRIATE HOLDBACK IS NOT A FEE AWARD</u>

Primary Counsel again inappropriately treat the Holdback Motion as a motion for an award of common benefit fees. The 32 percent holdback request (from which individual contract

---

[17] Rec. Doc. 21168, at 21.

[18] Rec. Doc. 21168, at 9.

[19] Rec. Doc. 21289-1, at 3.

[20] *See* Rec. Doc. 21267-1, at 24 & n.30 (noting hours spent between January 1, 2014 and December 31, 2017, while explaining the focus was on that time frame because time and expenses prior to December 31, 2013 are part of the ongoing fee distribution process); *see also id*. at 4-17 (discussing the long and tortured history of the litigation).

attorneys will be paid 40 or 50 percent immediately) is reasonable because it is essential to err on the side of caution when sequestering the relevant funds, or the Court could be left with an insufficient fund from which common benefit fees could be paid.  In *Diet Drugs*, when appealing counsel sought a reallocation of funds that had already been refunded, the Third Circuit aptly noted that "[m]onths later, those refunds are not likely to be sitting in the bank accounts of the law firms that received them. It seems likely that taxes have been paid, referral counsel has been compensated, and, generally speaking, the refunds have, in all or in part, worked their way through the channels of commerce and, accordingly, would be difficult for the Court to reclaim." *See In re Diet Drugs*, 582 F.3d at 551-52.  Such would be the case here if the Court were to set the amount of the holdback too low.

In light of the previous allocation established by the Court in its Fee Opinion, the safekeeping of 60 and/or 50 percent of the 32 percent holdback is reasonable.  As argued by Lead and Liaison Counsel and confirmed by Morgan & Morgan in its Response, there is substantial additional common benefit work to be performed and it is highly likely that an award greater than that previously made would be warranted.[21]  Primary Counsel do not offer an alternative holdback percentage.

Instead, Primary Counsel simultaneously argue that considering common benefit fees at this time is premature while vaguely arguing there should be no common benefit fee because individually-retained counsel will need the fees generated by trying some of the remanded cases to litigate the remaining cases.[22]  Indeed, according to Primary Counsel, these costs could

---

[21] *See* Rec. Doc. 21267-1, at 25; *see also* M&M Response [Rec. Doc. 21291], at 2-3 (outlining the substantial effort that will be required to try the remanded cases and noting that additional common benefit time will be accrued even in the Florida cases that are remanded).

[22] Rec. Doc. 21289-1, at 8.

7

prejudice their clients because they would serve as a deterrent to settlement.[23]  This position ignores: (1) that Primary Counsel's costs have been substantially lessened because of the substantial time and expense already, and to be, expended by common benefit counsel in prosecuting the case – that is the very reason for the existence of common benefit fees; (2) that common benefit counsel have expended millions of dollars litigating against the Taishan Defendants with no promise of compensation; and (3) that Primary Counsel's fee should not be the driving force preventing a settlement that is otherwise in the best interest of their client.[24]  As the Court noted in its Suggestion of Remand, as a result of the work in the MDL, the "parties are now equipped with abundant resources – evidence produced in discovery, a trial package, trial binders, and judicial opinions on numerous issues – to steer these cases to a fair and just conclusion."[25]  Primary Counsel's arguments should be rejected.

### IV.    CONCLUSION

For the foregoing reasons, Lead and Liaison Counsel respectfully request that the Holdback Motion be granted.

---

[23] *Id.*

[24] *See* Rec. Doc. 21289-1, at 7-8 (holdback "will likely prejudice Florida claimants" and "may serve as an additional obstacle to and thereby prevent settlement, forcing individual trials of each case"); see also Rec. Doc. 21267-1, at 16-17.

[25] Rec. Doc. 21242, at 10; *see also* Rec. Doc. 21242, at 11-12 (discussing common benefit fees after remand).

Dated: April 9, 2018										Respectfully Submitted,

By: /s/ Russ M. Herman
Russ M. Herman (La Bar No. 6819) (on the brief)
Leonard A. Davis (La Bar No. 14190) (on the brief)
Stephen J. Herman (La Bar No. 23129)(on the brief)
Herman, Herman & Katz, LLC
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
RHerman@hhklawfim.com
*Plaintiffs' Liaison Counsel MDL 2047*

Arnold Levin (on the brief)
Fred S. Longer (on the brief)
Sandra L. Duggan (on the brief)
Keith Verrier (on the brief)
Levin Sedran & Berman LLP
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
alevin@lfsblaw.com
*Plaintiffs' Lead Counsel MDL 2047*

9

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, which will serve a notice of the uploading in accordance with the procedures established in MDL 2047, on this 9th day of April, 2018.

<u>/s/ Leonard A. Davis</u>
Leonard A. Davis
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com
*Co-Counsel for Plaintiffs MDL 2047*