UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | CIVIL ACTION<br><br>MDL NO. 09-2047 |
| THIS DOCUMENT RELATES TO:<br>WINSTON BURNS, JR. AND WENDY BURNS | SECTION L (5) |

## ORDER AND REASONS

Pending before the Court is Defendant Livers Construction's motion for reconsideration (Rec. Doc. 21189), asking the Court to revisit its February 9, 2018 opinion (Rec. Doc. 21177) denying Livers' request to enjoin a state court proceeding. The state court action in question is filed by Winston Burns, Jr. and Wendy Burns against Livers Construction, Inc., and relates to the installation of allegedly defective Chinese drywall in their residence. The Burns oppose Livers' motion for reconsideration. Rec. Doc. 21235. Having considered the parties' submissions, arguments, and applicable law, the Court now issues this Order and Reasons.

### I. BACKGROUND

#### A. *Chinese-Manufactured Drywall* Multidistrict Litigation

From 2004 through 2006, the housing boom in Florida and rebuilding efforts necessitated by Hurricanes Rita and Katrina led to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used to construct and refurbish homes in coastal areas of the country, notably the Gulf Coast and East Coast. Sometime after the installation of the Chinese drywall, homeowners began to complain of emissions of smelly gasses, the corrosion and blackening of metal wiring, surfaces, and objects,

1

and the breaking down of appliances and electrical devices in their homes. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829-30 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014). Many of these homeowners also began to complain of various physical afflictions believed to be caused by the Chinese drywall.

These homeowners then began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. Because of the commonality of facts in the various cases, this litigation was designated as a multidistrict litigation. Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation on June 15, 2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 09-2047 before this Court.

The Chinese drywall at issue was largely manufactured by two groups of defendants: (1) the Knauf Entities and (2) the Taishan Entities. The litigation has focused upon these two entities and their downstream associates, and has proceeded on strikingly different tracks for the claims against each group. The instant motion and opinion relate to matters in the Knauf track.

**B.    The Knauf Defendant**

The Knauf Entities are German-based, international manufacturers of building products, including drywall, whose Chinese subsidiary, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), advertised and sold its Chinese drywall in the United States. The Knauf Entities are named defendants in numerous cases consolidated with the MDL litigation and litigation in state courts.

The Knauf Entities first entered their appearance in the MDL litigation on July 2, 2009. Rec. Doc. 18. Thereafter, the Court presided over a bellwether trial in *Hernandez v. Knauf Gips KG*, Case No. 09-6050, involving a homeowner's claims against KPT for defective drywall. *See*

Rec. Doc. 2713. The Court found in favor of the plaintiff family in *Hernandez*, issued a detailed Findings of Fact and Conclusions of Law, and entered a Judgment in the amount of $164,049.64, including remediation damages in the amount of $136,940.46—which represented a cost of $81.13 per square foot based on the footprint square footage of the house. *See* Rec. Doc. 3012.

Subsequently, the Knauf Entities entered into a pilot remediation program with the Plaintiffs' Steering Committee ("PSC") in the MDL. This program was largely based upon the remediation protocol formulated by the Court from the evidence in *Hernandez*. The Knauf pilot remediation program is ongoing and has, at present, remediated more than 2,200 homes containing KPT Chinese drywall using the same general protocol. At the Court's urging, the parties began working together to monetize this program and make it available to a broader class of plaintiffs.

On December 20, 2011, the Knauf Entities and the PSC entered into a global, class Settlement Agreement ("Knauf Settlement Agreement"), which is designed to resolve all Knauf-related, Chinese drywall claims. *See* Rec. Doc. 12061-5. In addition to the Knauf Settlement Agreement, numerous defendants in the chain-of-commerce with the Knauf Entities have entered into class settlement agreements, the effect of which settles almost all of the Knauf Entities' chain-of-commerce litigation.

### C. Interior Exterior Building Supply

As a result of its role in purchasing and supplying allegedly defective Chinese drywall, InEx is among the defendants in the Knauf Entities' chain-of-commerce litigation. Following Hurricane Katrina, InEx, a major supplier of construction materials in the Gulf Coast area, distributed Chinese drywall manufactured both by various Knauf entities and by certain Taishan entities. InEx sold drywall to suppliers, developers, homebuilders, and installers in a number of states, predominantly Alabama, Louisiana, Mississippi, and Texas. The InEx-related Chinese

drywall eventually ended up in the homes of numerous individuals who filed claims against InEx, seeking relief for the property damage and personal injuries they have sustained as a result of the presence of drywall in their homes. Additionally, homebuilders who repaired these homes at their own cost have filed claims against InEx.

Because of its role with Chinese drywall, InEx became the subject of a class certification hearing and a jury trial, both of which were initially scheduled for the summer of 2011. In preparation for these proceedings, extensive discovery was conducted. As a result, various mediations between the Plaintiffs' Steering Committee, InEx, and the Insurers were held in an effort to resolve the claims against InEx, which resulted in the InEx Settlement Agreement.

### D. Knauf and InEx Settlement Agreements

In February 2013, the Court issued an Order and Judgment concerning the Knauf entities. Rec. Doc. 16570. The Order and Judgment certified five settlement classes—InEx, Banner, Knauf, L&W Supply Corporation, and Global Settlement—and granted final approval to five individual class settlements between the plaintiffs suffering property damages and personal injuries from Chinese drywall and the various Knauf entities responsible for the use of Chinese drywall in affected properties ("Settling Defendants"). The five class settlements included in the Order and Judgment are "all interrelated and interdependent," and "resolve all claims, counterclaims, and third-party claims among the settling parties." Rec. Doc. 16570 at 6.

In the Order and Judgment, the Court noted that the first notable breakthrough towards resolving the MDL litigation claims against Knauf came in October 2010, when the PSC and Knauf entities entered into a Court-approved pilot program for remediation of homes containing drywall manufactured by Knauf. In addition to the Knauf entities, a number of defendants in the chain-of-commerce—including InEx—contributed funds to the program.

Later, in December 2011, the Knauf entities entered into a class action settlement with the plaintiffs. This global, class settlement agreement is intended "to resolve claims made in filed actions which arose out of KPT Chinese drywall installed in the United States." *Id.* The Knauf Settlement Class thus consisted of "[a]ll persons or entities who, as of December 9, 2011, filed a lawsuit in the Litigation as a named plaintiff (i.e., not an absent class member) asserting claims arising from, or otherwise related to, KPT Chinese Drywall, whether or not the Knauf Defendants are named parties to the lawsuit." *Id.* at 28.

InEx was one of the named Settling Defendants in the Order and Judgment, and Livers was named as one of the downstream releasees. InEx entered into a settlement agreement that provided for the tendering of all of InEx's primary insurance proceeds—in the amount of $8,000,000—for the benefit of a national class with claims against InEx involving Chinese drywall ("InEx Settlement Class"). The InEx Settlement Class consists of "[a]ll persons or entities with claims, known and unknown, against the Settling Defendants arising from, or otherwise related in any way to Chinese Drywall sold, marketed, distributed, and/or supplied by InEx." *Id.* at 22-23.

The Knauf and InEx Settlement Class and Subclasses were certified pursuant to Fed. R. Civ. P. 23(a), (b)(3) & (e).

### E. Winston Burns, Jr. and Wendy Burns

The instant motion pertains to a lawsuit filed by Winston Burns, Jr. and Wendy Burns ("Burns") in state court against Livers Construction, Inc. for property damage and personal injuries arising from Livers' alleged installation of Chinese drywall in the Burns' home.

In August 2005, during Hurricane Katrina, the roof blew off of the Burns' property, allowing rain to soak the interior of the structure. *See* Rec. Doc. 21032 at 2. As a result of this damage, extensive repairs were required, including removal and replacement of the drywall, floor

coverings, and appliances. The Burns retained Livers to perform all the repair work in response to the damages sustained by their property.

The Burns moved back to their house in July 2007 after Livers completed renovation. Soon after, however, the Burns claim to have experienced a variety of problems with their home, and attempted to contact Livers numerous times to inquire whether Livers could assist them or determine the cause of the problems. *See id.* However, according to the Burns, Livers not only refused to help the Burns, but also neglected to tell them that their house was likely filled with contaminated Chinese drywall. *See id.*

As a result of the continued issues, on October 23, 2015, the Burns retained Donovan Engineering Co. to perform an inspection of their house. On October 30, 2015, Donovan Engineering issued a report, stating (1) it is probable that the house has contaminated (high sulfur content) Chinese drywall, and (2) the problems experienced with the property are consistent with failure due to the presence of contaminated Chinese drywall. *See id.* The Burns state that this was "the first time [they] had definite confirmation that the Property was contaminated with [Chinese drywall]." *Id.*

On April 21, 2016, the Burns filed suit against Livers in the Civil District Court for the Parish of Orleans, seeking to recover for the damages they suffered from Livers' installation of the toxic drywall and its failure to advise the Burns of the existence of the Chinese drywall and the multidistrict litigation involving Chinese-manufactured drywall. In response, Livers filed peremptory exceptions of res judicata and peremption, relying on the terms of the InEx Settlement.

1. *Livers' Res Judicata and Peremption Arguments*

In its argument in state court, Livers noted that InEx supplied it with Chinese drywall used in the Burns property. Because InEx provided the drywall, Livers argued that it qualified as an

6

"Installer" under the InEx Settlement – defined as "any person or entity involved in the installation, hanging, taping, and floating in any property of Chinese Drywall that was sold, marketed, distributed, and/or supplied by InEx." InEx Settlement at 5. Under the InEx Settlement, Installers are "Downstream InEx Releasees," who are considered Settling Defendants released from all future claims pertaining to Chinese drywall in affected properties, to the extent that such property contains Chinese drywall supplied by InEx. *Id*. at 5, 8. Thus, Livers is expressly named as a "Downstream InEx Releasee" in the Settlement Agreement and is also a "Released Party." InEx Settlement (Rec. Doc. 8628-4 at 7); InEx Settlement (Rec. Doc. 8628-3 at 8). Livers further argued that because Burns failed to opt out of the InEx Settlement, they qualified as InEx Class Members, and thus their pending state court claims for damages had already been addressed and adjudicated in this Court in MDL 2047.

### 2. *State Court Decisions*

On October 28, 2016, the Civil District Court for the Parish of Orleans heard Livers' res judicata arguments. Subsequently, on November 7, 2016, the state court denied Livers' motion to dismiss. Livers appealed the decision to the Louisiana Fourth Circuit Court of Appeal, which denied Livers' writ on December 12, 2016. Undeterred, Livers, once again, appealed to the Louisiana Supreme Court, which, to Livers' dismay, also denied the writ on February 17, 2017. The state courts did not issue written opinions detailing their reasons for denial.

### 3. *Third-Party Demand Against InEx*

After exhausting its peremptory argument in state court, on June 26, 2017, Livers filed a third-party demand against InEx, claiming that InEx sold Livers allegedly defective Chinese drywall responsible for the Burns' damages, and for failing to provide notice to Livers of any

7

potential issues regarding the drywall. Additionally, Livers alleged that InEx failed to provide Livers or its counsel with notice of the InEx Settlement.

### F. This Court's February 9, 2018 Order and Reasons

In response to the state court action, InEx filed a motion for injunctive relief pursuant to the All Writs Act, asking this Court to enjoin the state court action against it. Rec. Doc. 20981. InEx argued that exceptions to the Anti-Injunction Act applied: the injunction is (1) "necessary in aid of" this Court's jurisdiction, and (2) "necessary to protect and effectuate" this Court's Settlement Judgment. InEx asserted that the claims in state court are precluded from litigation as a result of this Court's Order and Judgment related to the InEx Settlement because Livers and the Burns are members of the settlement class. Specifically, in approving the settlement, the Court entered judgment binding "[a]ll persons or entities with claims, known and unknown, against the Settling Defendants arising from, or otherwise related in any way to Chinese Drywall sold, marketed, distributed, and/or supplied by InEx." Rec. Doc. 16570 at 22-23.

The Court agreed with InEx. *See* Rec. Doc. 21177. Because notices of the settlement were properly dispatched—meeting due process and Rule 23 requirements—the Court found that the Burns are members of the InEx Settlement Class. This finding was much to the chagrin of the Court, but necessary and "legally correct" under modern class action jurisprudence. *Accord Cepriano v. B Square Builders, L.L.C.*, 170 So. 3d 1043, 1051 (La. 1st Cir. 2015) (McClendon, J., concurring). Accordingly, pursuant to the All Writs Act, the Court enjoined the state court action against InEx. Doing so was necessary to protect and effectuate this Court's prior Settlement Judgment.

Nevertheless, the Court refused to intervene in the Burns' action against Livers, in which the Burns allege that Livers fraudulently prevented them to realize the benefits and take part in the

Knauf remediation program. The Court held that such a claim, if true, is beyond the scope of this Court's Settlement Judgment. Accordingly, this Court left the Burns' action against Livers opened for the state court.

## II. LEGAL STANDARD

Motions asking a court to reconsider an order are generally analyzed under the standards for a motion to alter or amend a judgment pursuant to Rule 59(e) or a motion for relief from a judgment or order pursuant to Rule 60(b). *See Hamilton Plaintiffs v. Williams Plaintiffs*, 147 F.3d 367, 371 n.10 (5th Cir. 1998). Rule 59(e) governs when the motion is filed within 28 days of the challenged order. *See* Fed. R. Civ. P. 59(e). Because Defendant's instant motion was filed within 28 days of entry of the Order and Reasons it challenges, the Court treats the motion as one pursuant to Rule 59(e).

When deciding whether to grant a Rule 59(e) motion, the district court has considerable discretion. *Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993); *see also Flynn v. Terrebonne Parish School Bd.*, 348 F. Supp. 2d 769, 771 (E.D. La. 2004). In order to prevail on a Rule 59(e) motion to alter or amend the judgment, courts in this district have held that the moving party must prove that either: "(1) the motion is necessary to correct a manifest error of fact or law; (2) the movant presents newly discovered or previously unavailable evidence, (3) the motion is necessary in order to prevent manifest injustice; or (4) the motion is necessary is justified by an intervening change in the controlling law." *Flynn*, 348 F. Supp. 2d at 771; *see also Fidelity & Deposit Co. of Md. v. Omni Bank*, No. CIV. A. 99-1167, 1999 WL 970526, at *3 (E.D. La. Oct. 21, 1999). "'Manifest error' is one that 'is plain and indisputable, and that amounts to a complete disregard of the controlling law.'" *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (quoting *Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183, 195 (1st Cir. 2004)).

Additionally, a "[c]ourt's reconsideration of a prior order is an extraordinary remedy which should be used sparingly." *Flynn*, 348 F. Supp. 2d at 771. The Fifth Circuit favors denial of Rule 59(e) motions to amend or alter. *See Southern Constructors Group, Inc. v. Dynalectric Co.*, 2. F.3d 606, 610-11 (5th Cir. 1993), *In re Self*, 172 F. Supp. 2d 813 (W.D. La. 2001). Accordingly, "[a] Rule 59(e) motion . . . cannot be used to relitigate issues with new arguments that could and should have been presented before the judgment was rendered." *Fidelity*, 1999 WL 970526 at *3. When a party seeks to challenge a summary judgment on the basis of evidence not introduced at trial, the district court must balance the need to bring litigation to an end and the need to render just decisions. *Lavespere v. Niagra Mach. & Tool Works*, 910 F.2d 167, 174 (5th Cir. 1990).

## III. DISCUSSION

Livers proffers two reasons for the Court to reconsider its February 9, 2018 opinion. First, Livers argue that that this Court should not have considered the Burns' allegation of fraud because they never pleaded fraud in the state court action. Second, Livers assert that the InEx Settlement Agreement encompasses allegation of fraud—including uncleaned hands that purportedly stripped the Burns from reaping the benefits of settlement. Neither one of Livers' arguments, however, warrant reconsideration under Rule 59(e).

Regarding Livers' assertion that the Burns never pled fraud in their state court complaint, this Court has already opined that such determination is best left for the state judge, whom the Court believes is capable and willing to enforce the InEx Settlement and this Court's orders. *See* Rec. Doc. 21177 at 15. Furthermore, the Anti-Injunction Act, 28 U.S.C. § 2283, demands respect for state courts. *See Smith v. Bayer Corp.*, 564 U.S. 299, 306 (2011). No factors under Rule 59(e) favor reconsideration under Livers' first argument; there is simply no manifest error here.

Accordingly, the Court defers to the state judge's opinion on whether the Burns' complaint—filed in state court—is adequate or amendable.

Regarding Livers' second basis for reconsideration—that the InEx Settlement forecloses future lawsuits alleging fraudulent activities that prevented a plaintiff from enjoying the benefits of settlement—the Court finds this argument meritless. Section 4.1 of the InEx Settlement Agreement defines the "[r]eleased [c]laims" against the settling defendants involving "Chinese Drywall, the Litigation, or other Related Actions." Specifically, Section 4.1 enumerates some of these claims, including "negligence," *see* Section 4.1.3.3, "[f]raud," *see* Section 4.1.3.29, and "[a]ny further claims and/or liabilities arising out of, or otherwise relating to, the sale, supply, marketing, distribution, or use of Chinese Drywall at issue in this Settlement . . . ," *see* Section 4.1.3.30. Under Louisiana law, a contract is interpreted by determining the common intent of the parties. La. C.C. art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046. Conversely, when the words of a contract are ambiguous or lead to absurd consequences, a court attempting to interpret the contract must try to ascertain the common intent of the parties in other ways. Doubtful provisions must be interpreted in light of the nature of the contract, equity, usage and the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties. La. C.C. art. 2053.

In this case, based on the terms of the settlement agreement, the parties only intended to resolve claims related to the sale, supply, marketing, distribution, or use of Chinese Drywall. Indeed, such claims could and does include "fraud," *see* Section 4.1.3.29, but that only pertains to fraudulent sale, fraudulent supply, fraudulent marketing, fraudulent distribution, and fraudulent use, *inter alia.* At the time of defining the settlement, fraudulent activity in preventing a party to

11

realize the benefits of the InEx or Knauf settlements—*i.e.*, purposefully concealing the *Chinese-Manufactured Drywall* MDL—was not an existing claim; the settlement had not even been perfected. Therefore, even if the Court accepts Livers' forced, expansive interpretation of the settlement agreement, the Court cannot, in equity and good conscious, *see* La. C.C. art. 2053, bar the Burns from pursuing an action against Livers for allegedly preventing them from filing a claim in the settlement program. Accordingly, the Court concludes that Livers has not satisfied its burden under Rule 59(e) to grant reconsideration.

## IV. CONCLUSION

Based on the foregoing reasons, accordingly,

**IT IS ORDERED** that Livers' motion for reconsideration (Rec. Doc. 21189) is hereby **DENIED**.

New Orleans, Louisiana, this 12th day of April, 2018.

_____
**ELDON E. FALLON**
United States District Judge