# EXHIBIT "D"

Michael K. Jeanes, Clerk of Court
*** Filed ***
04/04/2018 8:00 AM

## SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY

CV 2013-052753                                          04/03/2018


                                                       CLERK OF THE COURT
HONORABLE JOHN R. HANNAH JR                             W. Tenoever
                                                       Deputy



ESTATE OF LEROY HAEGER, et al.                 DAVID L KURTZ

v.

GOODYEAR TIRE AND RUBBER COMPANY,              KERRYN L HOLMAN
et al.



                                               LISA G LEWALLEN
                                               RICHARD P TRAULSEN
                                               SUSAN M FREEMAN
                                               D&C MATERIALS-CSC




## UNDER ADVISEMENT RULING


        Intervenor Center for Auto Safety's Motion to Unseal Court Records and Vacate
Protective Order has been under advisement.  The Court has read all of the filings in connection
with the motion, and considered the oral arguments of counsel, in the context of the record in this
case.  The Court has also had the opportunity to review the documents that are subject to the
protective order.

        The Court now enters findings of fact concerning relevant factors, and conclusions of law
including application of law to the facts.  Based on these findings and conclusions, the Center for
Auto Safety's motion to vacate the protective order is granted with minor exceptions.  The
motion to unseal the court records is granted in part and denied in part.

## FINDINGS OF FACT

### Background and Procedural History

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2013-052753                                    04/03/2018


1.      The complaint in this case (Docket No. 1) was filed on May 20, 2013.   An amended complaint (Docket No. 62) was filed on September 3, 2013.   The case centered on the plaintiffs' allegation that the defendants committed fraud in connection with the agreement to settle *Haeger v. The Goodyear Tire and Rubber Company*, D. Ariz. No. CV05-2046-PHX-ROS ("*Haeger I*")).

2.      Early in the case, Goodyear and co-defendant Deborah Okey filed motions to dismiss to which they attached affidavits that incorporated the *Haeger I* settlement agreement. Deborah Okey's Motion to Dismiss for Lack of Personal Jurisdiction (Docket No. 29); [Goodyear's] Motion to Dismiss and Alternative Motion to Stay (Docket No. 30).   Over the plaintiffs' objection, Judge Duncan made the findings required by Maricopa County Local Rule 2.19 and ordered the settlement agreement sealed pending the stay in effect at that time.   Order filed January 17, 2014 (Docket No. 79).   She added, however, that she would reconsider if the lawsuit went forward.   Reporter's Transcript of Proceedings, January 17, 2014 at 99.

3.      The protective order at issue (the "Protective Order") was entered on November 25, 2015, in the course of a ruling that granted Plaintiffs' Motion to Require Goodyear to Seek Relief from Protective Orders Entered in the G159 Cases (Docket No. 111).   Order (Docket No. 161) at 14.   The authority for the order was Arizona Rule of Civil Procedure 26(c)(1).   *Id.* at 9.

4.      The November 25, 2015 ruling incorporated the protective order that the United States District Court had entered in *Haeger I*.   The *Haeger I* order is attached to Defendant The Goodyear Tire and Rubber Company's Opposition to the Center for Auto Safety's Motion to Unseal Court Records and Vacate Protective Order (Docket No. 432) as Exhibit F.

5.      In the course of the ruling adopting the Protective Order, the Court found that "Goodyear has a legitimate interest in keeping its trade secrets and other confidential research, development and commercial information confidential from business competitors."   Order filed November 25, 2015 (Docket No. 161) at 9.

6.      The Court did *not* find that any of the information that Goodyear sought to protect was *in fact* a trade secret or commercially sensitive information.   The plaintiffs did not object to the proposed protective order, *id.* at 6, so specific findings on that point were unnecessary.

7.      The Protective Order permits Goodyear and its lawyers to decide unilaterally what information will be kept confidential, subject only to the opposing party's right to challenge a "confidential" designation by filing a motion "under seal within thirty (30) days of the receipt of the Confidential Document or Information."   *See* Order filed November 25, 2015 (Docket No. 161), Protective Order, ¶¶ A, 1, 7 and 18.   It prohibits the plaintiffs from sharing information

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2013-052753                                        04/03/2018

designated "confidential" with anyone who is not working directly on this litigation. *Id.*, ¶ 2.   It requires filing under seal of any pleading or document containing such information." *Id.*, ¶ 9.  It calls for the return or destruction of documents at the close of the litigation. *Id.*, ¶¶ 12-14.  And it continues in effect indefinitely. *Id.*, ¶ 16.

8.     The Protective Order differs from the *Haeger I* protective order in that it allows the plaintiffs to disclose otherwise-protected information in a submission to the National Highway Traffic Safety Administration ("NHTSA").  The plaintiffs requested that modification of *Haeger I* protective order, and the Court granted the request over Goodyear's objection.  Order filed November 25, 2015 (Docket No. 161) at 9.

9.     This Court found that "Goodyear's interest in confidentiality is not outweighed by any public safety risk to which the information may relate or reveal, <u>on the record as it exists at this time,</u> provided that the confidentiality order permits disclosure to [NHTSA] . . . ." *Id.* (emphasis added).

10.     The plaintiffs did not try to establish, at the time the Protective Order was entered, that the tire posed enough of a risk to warrant disclosure of information about the tire to the public.  Accordingly, the Court found that "[o]ther than [the possible NHTSA disclosure], there has been no showing that a non-party or intervener needs access to the information." *Id.*

11.     The Protective Order was modified on February 11, 2016 at Goodyear's request.  Minute Entry Order (Docket No. 200).  The modification's purpose was to enable Goodyear to ask NHTSA to maintain the confidentiality of information in the plaintiffs' planned NHTSA submission. *Id.*

12.     Under the authority of the Protective Order, Goodyear produced substantial quantities of information to the Haegers with the "confidential" designation.  *See* Defendant Goodyear Tire and Rubber Company's Opposition to the Center for Auto Safety's Motion to Unseal Court Records and Vacate Protective Order (Docket No. 432), Legge Declaration Exhibit A.

13.     Both the Haegers and Goodyear filed motions and legal memoranda that described or incorporated some of documents designated "confidential" by Goodyear.  *See* Defendant The Goodyear Tire and Rubber Company's Opposition to the Center for Auto Safety's Motion to Unseal Court Records and Vacate Protective Order (Docket No. 432), Legge Declaration Exhibits B and C.  Those filings were sealed, on motion of the filing party, without the findings required by Maricopa County Local Rule 2.19.  Orders Granting Motions to Seal (Docket Nos. 186, 187, 303, 322).

Docket Code 926                      Form V000A                                    Page 3

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2013-052753                                              04/03/2018

14.     After the filing of the notice of plaintiffs' settlement with Goodyear but before the entry of the dismissal order, Spartan Chassis, Inc. moved to intervene for the purpose of obtaining access to the documents and information designated "confidential" by Goodyear pursuant to the Protective Order. Applicant Spartan Chassis' Motion to Intervene and Modify Protective Order (Docket No. 337) filed February 7, 2017. Spartan's motion was granted over Goodyear's objection. Ruling (Docket No. 350) filed March 15, 2017.

15.     Spartan's motion to modify the Protective Order was granted, in an order that vacated the Protective Order entirely, but that order was immediately stayed. Minute Entry (Docket No. 387) dated July 7, 2013. In its place the Court issued an interim order modifying the Protective Order so that it allowed Spartan access to Goodyear's information on the same terms as the Haegers. *Id.*

16.     While Spartan's motion to modify the Protective Order was being litigated, the Center for Auto Safety ("CAS") filed a separate motion to intervene. Motion to Intervene by the Center for Auto Safety (Docket No. 384) filed July 7, 2017. CAS was also granted permission to intervene over Goodyear's opposition. Ruling (Docket No. 416) filed August 14, 2017. CAS then filed the motion that is now before the Court. Motion to Unseal Court Records and Vacate Protective Order by the Center for Auto Safety (Docket No. 420) filed August 16, 2017.

17.     In its response to CAS motion to unseal, Goodyear relinquished its claim of confidentiality for a large number of documents produced in discovery and/or filed under seal. *See* Defendant The Goodyear Tire and Rubber Company's Opposition to the Center for Auto Safety's Motion to Unseal Court Records and Vacate Protective Order (Docket No. 432) at 1-2; *id.,* Legge Declaration, Exhibits A, B and C (items highlighted in blue). This illustrates the indiscriminate manner in which the Protective Order has been applied at times during this litigation.

18.     The parties stipulated to an order modifying the July 7, 2017 interim order, as follows:

a.   the protective order entered in this case on November 25, 2015, as modified by minute entry order dated February 11, 2016, will continue in effect, binding Plaintiffs and Spartan, until final disposition of any appeal from this Court's final order concerning the protective order;

b.   the sealed filings in this case will remain sealed, and no such documents will be made public, until final disposition on appeal; and

c.   no party will attempt further to modify the protective order or unseal filings, so that all issues related to the protective order and sealing of documents in this case may be

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2013-052753                                          04/03/2018

> finally resolved by a ruling on CAS's motion to unseal the court records and vacate the protective order.

Order Regarding Sealing and Continuation of Protective Order Pending Appeal (Docket No. 423) issued August 22, 2017.

19.     The stipulated Order Regarding Sealing and Continuation of Protective Order Pending Appeal remains in effect.

20.     After the oral argument on CAS's motion, Goodyear delivered to the Court for *in camera* review five full bankers' boxes and two half-full boxes of documents.  These seven boxes contain all of the documents and information produced during discovery after having been designated "confidential" by Goodyear pursuant to the Protective Order, all of the court filings sealed by authority of the Protective Order (except those as to which Goodyear no longer asserts a need for confidentiality) and all of the sealed court filings relating to settlement or otherwise sealed under some authority other than the Protective Order.

21.     On July 10, 2017, the plaintiffs' counsel made the submission to NHTSA that had been provided for as an exception to the Protective Order.  The Haegers' Motion to File Exhibits Under Seal for *In Camera* Review (Docket No. 43), filed September 5, 2017.  Portions of that submission were made part of the record in this case, under seal.  Ruling (Docket No. 454) filed November 13, 2017; Order (Docket No. 459) filed November 9, 2017; The Haegers' Notice of Filing Documents Under Seal (Docket No. 460), filed November 14, 2017.

22.     On December 28, 2017, NHTSA opened a preliminary investigation into the Goodyear G159 tire to assess whether there is a safety related defect.  Notice of Action by National Highway Traffic Safety Administration (Docket No. 465).

23.     NHTSA has since denied Goodyear's request to keep the submittal by plaintiffs' counsel confidential.  Notice of NHTSA's February 26, 2018 Denial of Goodyear's Request for Confidential Treatment of July 10, 2017 Submission by Haegers' Counsel to NHTSA and Goodyear's Request for Confidentiality (Docket No. 469).

The Other Protective Orders

24.     Protective orders were entered at Goodyear's initiative in each case arising from the failure of a G159 tire in which Goodyear disclosed "confidential, proprietary technical and business information."  Defendant The Goodyear Tire and Rubber Company's Opposition to Plaintiff's Motion to Require Goodyear to Seek Relief from Protective Orders, Etc. (Docket No. 117), Exhibit B (Responses to Plaintiff's Requests for Production) at 5.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2013-052753                                                04/03/2018

25.     The protective orders in the G159 cases were based on a form of order developed by Goodyear.  Plaintiff's Reply to Goodyear's Response to Plaintiffs' Supplemental Submissions (Docket No. 141) at 1-2.  They are similar to the Protective Order in this case, and similar to each other.

26.     When the Haegers sought discovery concerning Goodyear's disclosures in other G159 cases, Goodyear objected on the ground that the protective orders in those cases prohibited the requested discovery.  The Haegers filed the Motion to Require Goodyear to Seek Relief from Protective Orders in response to that objection.  Goodyear opposed the motion, making "full faith and credit" and "comity" arguments similar to those it is making now.  The motion was granted, in a ruling that authorized the plaintiffs to apply in this case for relief from the protective orders in other G159 cases, instead of requiring the plaintiffs to apply to the courts that had originally issued the orders.  Order filed November 25, 2015 (Docket No. 161) at 3-5.

27.     The parties subsequently stipulated to thirteen orders that modified protective orders from other G159 cases.  The stipulated orders allowed discovery in this case, subject to the Protective Order, of information that Goodyear had designated "confidential" in the other cases.  *See* Orders issued April 11, 2016 (Docket Nos. 207–220).  Some of the documents that Goodyear has now submitted for *in camera* review were produced pursuant to the thirteen orders modifying the protective orders in other G159 cases.

28.     As part of its response to CAS's motion to vacate the Protective Order, Goodyear submitted copies of thirteen protective orders from other G159 cases.  Defendant The Goodyear Tire and Rubber Company's Opposition to the Center for Auto Safety's Motion to Unseal Court Records and Vacate Protective Order (Docket No. 432), Exhibits D-L and N-Q.  Those are the same thirteen orders that were modified by the April 11, 2016 orders in this case.

29.     The thirteen protective orders were entered upon stipulation, or without opposition on the issues germane to the present case, except for the order in *Bogaert v. The Goodyear Tire and Rubber Company*, Maricopa County, AZ Superior Court No. CV2005-051486 ("*Bogaert*").  In *Bogaert* the court denied the plaintiffs' request to "share" confidential information with other plaintiffs.  The *Bogaert* court found that "Goodyear has legitimate interests in ensuring the confidentiality of documents requested in this case."  Defendant The Goodyear Tire and Rubber Company's Opposition to the Center for Auto Safety's Motion to Unseal Court Records and Vacate Protective Order (Docket No. 432), Exhibit E ("Proposed [sic] Findings of Fact and Protective Order" at 2-3).  The ruling does not describe or refer to any specific information that Goodyear said it regards as confidential.  It does not discuss any countervailing concerns such as public safety.

Docket Code 926                        Form V000A                           Page 6

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2013-052753                                    04/03/2018

30.    Aside from *Bogaert*, the only G159 case in which the protective order contains a finding that Goodyear's information constitutes a trade secret or commercially sensitive information is *Schalmo v. The Goodyear Tire and Rubber Company*, Circuit Court of the Sixth Judicial District in and for Pasco County, Florida No. 51-2006-CA-2064-WS ("*Schalmo*"). In *Schalmo* the parties stipulated that all of the documents and things for which Goodyear sought protection were "in fact trade secrets, the disclosure of which will cause Goodyear economic harm and/or place Goodyear at a competitive disadvantage." The stipulation "substantially obviated the need for the court to address the proof of trade secret" when entering a protective order during the discovery phase of the litigation. *Id.*, Exhibit K ("Order on Plaintiffs' Motion to Compel and Associated Protective Order" entered August 27, 2008, at 1-2).

31.    No court that has entered a protective order in a G159 case has conducted an adversary proceeding on the question whether information disclosed by Goodyear constitutes a trade secret or commercially sensitive information. No court has had occasion to make a critical assessment of Goodyear's claim that the information must be kept from public disclosure.

32.    To the Court's knowledge, the question of risk to public safety has been directly addressed in only one G159 case, *Schalmo*.

33.    The *Schalmo* order adopting Goodyear's protective order refers to a separate order in which the court found pursuant to Fla. Stat. § 69.081 that "no public hazard that would be concealed" by the protective order. *Id.*, Exhibit K ("Order on Plaintiffs' Motion to Compel and Associated Protective Order" entered August 27, 2008, at 3). The order in which the finding was actually made is not part of the record in this case. This Court has no information about what the *Schalmo* court considered when making the finding.

34.    In *Schalmo* a jury entered a verdict for the plaintiffs. Based on the verdict, the court denied Goodyear's motion to seal post-trial filings and vacated the protective order effective 45 days after the verdict date. *Id.*, Exhibit K ("Order Vacating July 21, 2010 Order" at 3). Before entry of judgment, however, the parties settled the case.

35.    Following the settlement, the *Schalmo* court re-imposed the protective order, finding that "the verdict, whose validity is disputed, does not provide a basis for the Court to overturn its August 27, 2008 protective order and subsequent pretrial rulings on confidentiality." *Id.*, Exhibit K ("Order Vacating July 21, 2010 Order" at 3). Whether the *Schalmo* plaintiffs opposed the re-imposition of the protective order is unknown. Nothing in the record of the present case suggests that they did. They had no financial incentive to do so. They could have agreed not to do so in their settlement agreement (which is not part of this record).

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2013-052753                                        04/03/2018

36.    Because the circumstances of the *Schalmo* court's "no public hazard" finding make the finding's reliability questionable, and because the gaps in the record make it impossible to resolve the reliability issue, the finding has little persuasive value in relation to this Court's evaluation of the facts.

37.    Setting aside *Schalmo*, no court that has entered a protective order in a G159 case has had more than minimal information about other G159 cases at the time of entry of the order. Consequently, no court has been in a position to assess adequately the risk to public safety that the tire may pose or the degree to which Goodyear's assurances of safety can be trusted.

<u>The Interests at Stake: Goodyear's Confidential Information</u>

38.    The Protective Order covers information about the design of Goodyear tires generally and the design of the G159 tire specifically.  *E.g.* Defendant The Goodyear Tire and Rubber Company's Opposition to the Center for Auto Safety's Motion to Unseal Court Records and Vacate Protective Order (Docket No. 432), Legge Declaration Exhibit A at 5-6 (design "picture" revealing tire's construction).

39.    According to Goodyear's affiant, Mr. Legge, information concerning "formulae and processing conditions" is especially valuable because it is difficult to "reverse-engineer." Legge Declaration ¶ 10.  The materials covered by the Protective Order include very little if any of that kind of information, because the issue in this case was the suitability of the tire for a particular application, not the nature of the materials and processes used to make the tire, or any manufacturing defect.

40.    The Protective Order also covers information that relates to quality control procedures, protocols and testing.  *E.g. id.,* Legge Declaration Exhibit A at 3 (internal message describing "test design, test bogies, test protocols and test results"); *id.* at 36-37 (heat rise test results).  This kind of information is at the heart of this case, because the case arose from Goodyear's failure to disclose test results concerning the G159.

41.    Goodyear began manufacturing the G159 tire in 1996 and discontinued its manufacture in 2003.  Goodyear avers that its design, manufacture and quality control processes are "iterative," meaning that each design and each testing process builds on those that preceded it.  *Id.,* Legge Declaration ¶¶ 44-46.  As a result, Goodyear says, disclosure of information about the design and testing of the G159 would cause the company substantial competitive harm despite the fact that the tire was discontinued fifteen years ago.  *Id.*

42.    The Protective Order also covers adjustment data, which is information concerning consumer complaints about a tire and the company's response.  *E.g. id.,* Legge

Docket Code 926                    Form V000A                    Page 8

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2013-052753                                                04/03/2018

Declaration Exhibit A at 17-22, 26-28.  This information is valuable to competitors for marketing purposes.  *Id.,* Legge Declaration Exhibit A ¶¶ 31-32.

43.     Goodyear's catalogue of protected information lumps together with the adjustment data the information the company has disclosed concerning bodily injury and property damage claims arising from the G159 tire.  *E.g. id.,* Legge Declaration Exhibit A at 18, 23-25, 27-28.

44.     Goodyear's witness, Mr. Legge, asserts that adjustments "provide no indication whatsoever about the safety of a given tire."  *Id.,* Legge Declaration ¶ 31.  That statement is seriously misleading.  The adjustment data considered collectively can afford key insights into design issues with a particular tire such as the G159, especially because it allows the manufacturer to correlate tire failures with particular applications such as the use of the G159 on motor homes, or conditions such as excessive heat.  Goodyear implicitly acknowledges this by characterizing property damage and personal injury claims as adjustment data.

45.     The Protective Order also applies to Goodyear's company policies and internal procedures on various issues such as the adjustment process, warranties and recalls.  *E.g. id.,* Legge Declaration Exhibit A at 6-7 (recall procedures); *id.* at 18 (adjustment procedural manual); *id.* at 25-26 (adjustment "condition codes"); *id.* at 27 ("Goodyear Global Master Specification Tire Release policy").

46.     Goodyear has gone to great lengths to keep the above-described information confidential.

47.      The Protective Order also applies to a small number of documents containing general financial or commercial information.  *E.g. id.,* Legge Declaration Exhibit A at 2-3 (insurance policies).

48.     Some of the documents produced pursuant to the Protective Order are communications to or from Goodyear's attorneys, or documents that contain or refer to such communications.  Goodyear characterizes these communications as disclosures of its proprietary processes for "analyses of legal claims."  Defendant The Goodyear Tire and Rubber Company's Opposition to the Center for Auto Safety's Motion to Unseal Court Records and Vacate Protective Order (Docket No. 432) at 9.  Goodyear also claims attorney-client privilege and work product privilege with respect to these documents, and others including redacted attorney invoices and settlement-related communications and memoranda.  *See id.,* Legge Declaration Exhibit A at 3-4 (requests for authority to settle); *id.* at 36 (Haeger I settlement evaluation).

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2013-052753                                                04/03/2018

49.     The information covered by the Protective Order (including information from *Haeger I)* also appears in exhibits to the plaintiffs' statement of facts in opposition to Goodyear's summary judgment motions, and in the body of Goodyear's rebuttal as well as its attached exhibits.  Exhibits to the Haegers' Supplemental Statement of Facts in Opposition to Goodyear and Okey's Motion for Partial Summary Judgment (Docket No. 318);  Defendants The Goodyear Tire and Rubber Company's and Deborah Okey's Response to the Haegers' Supplemental Statement of Facts in Opposition to Goodyear and Okey's Motion for Partial Summary Judgment (Docket No. 336).   Much of that information is not in its original form, but rather is incorporated into filings from *Haeger I* or the appeal from the sanctions decision, or testimony from deposition transcripts or affidavits, or demonstrative compilations prepared by counsel.

50.     The summary judgment filings also contain information originally produced in one of the other G159 cases pursuant to discovery requests that paralleled the requests of the plaintiffs in *Haeger I* and this case.   That information was originally produced under the protective orders in those cases.  It is now subject to the Protective Order in this case.

51.     Other filings in this case sealed because they include or refer to information subject to the Protective Order include: Exhibits 2 and 3 to Plaintiffs' Motion to Require Goodyear to Seek Relief from Protective Orders Entered in the G159 Cases (Docket No. 120); Exhibits to Plaintiffs' Reply in Support of Motion for Determination that Goodyear Has Waived Attorney-Client and Work Product Privileges (Docket No. 186, sealing order); Exhibit No. 5 to Plaintiffs' Combined Reply to All Defendants' Response Plaintiffs' Motion for Determination of Prima Facie Case for Punitive Damages and Motion to Compel Responses to Discovery (Docket No. 187, sealing order); Defendants The Goodyear Tire and Rubber Company and Deborah Okey's Opposition to Spartan Chassis, Inc.'s Motion to Intervene and Modify Protective Order, Exhibit C) (Docket No. 345); The Haegers' Notice of Filing Documents Under Seal (Docket No. 460).

52.     Goodyear's interest in maintaining the confidentiality of protected information in court filings is essentially the same as its interest in maintaining the confidentiality of protected information produced in discovery.

53.     The plaintiffs and defendants Fennemore Craig P.A., Graeme Hancock, Roetzel & Andress and Basil Musnuff petitioned for judicial approval of their respective settlement agreements pursuant to Civil Rule 16.2.  Filings relating to those petitions were sealed because the parties had agreed the settlements would be confidential. *See* Defendant The Goodyear Tire and Rubber Company's Opposition to the Center for Auto Safety's Motion to Unseal Court Records and Vacate Protective Order (Docket No. 432), Legge Declaration Exhibit C.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2013-052753                                          04/03/2018

54.     Following the notice of settlement as between the plaintiffs and Goodyear, a dispute arose concerning the terms of the settlement agreement.  The plaintiffs moved to enforce the agreement.  Because of the confidentiality provision in the agreement, some of the filings on the motion to enforce were sealed.  *Id.*

The Interests at Stake: Need of Intervenor/Public to Obtain the Information

55.     The Center for Auto Safety moved to intervene in this case in order to "represent the public's interest" in accessing discovery documents and sealed court records.  Motion to Intervene by the Center for Auto Safety (Docket No. 384) at 1.  Arizona law permits intervention for that purpose by a "public interest organization active in the relevant area of concern."  *Zenith Electronics Corp. v. Ballinger*, 220 Ariz. 257, 204 P.3d 1106, ¶ 21 and n.6 (App. 2009).  Implicit in the order granting the motion to intervene was a finding that CAS is an appropriate organization to represent the public's interest.

56.     Since CAS is representing the public's interest in this case, its "need for the information" is coterminous with the public's need for the information.  CAS effectively stands in for the public in this respect.

57.     The Court has considered the criticisms of CAS by the tire company consultant, Mr. Boehly, and Goodyear's arguments that CAS is not "neutral" because attorneys provide some of its funding.  Having considered those matters, the Court reaffirms its finding that CAS is an appropriate representative of the public's interest.

58.     The public has an interest in access to Goodyear's confidential information to the extent that such access will help the public "understand the risks to the public health and welfare" that may be posed by Goodyear's product. *Zenith Electronics Corp. v. Ballinger*, 220 Ariz. 257, 204 P.3d 1106, ¶ 21.

59.     The public also has an interest in overseeing the efforts of the government in general, and NHTSA in particular, to keep the motoring public safe.

The Interests at Stake: Possible Public Safety Risks the Information May Relate to or Reveal

60.     The Court finds that the information subject to the Protective Order relates to and reveals a possible risk of serious and widespread harm, arising from failure of G159 tires when used on recreational vehicles and motor homes.

61.     Mr. Kurtz's July 10, 2017 letter to NHTSA thoroughly summarizes the public safety issues created by the G159 tire and Goodyear's longstanding, ongoing effort to minimize

Docket Code 926                        Form V000A                        Page 11

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2013-052753                                                04/03/2018

that issue in its dealings with government regulators and in lawsuits arising from the tire's failure. *See* The Haegers' Notice of Filing Documents Under Seal (Docket No. 460). The Court adopts the contents of that letter as its findings relating to "possible" public safety risks.

62.     Goodyear's contention that "there is no safety risk," Opposition at 4, illustrates the public interest in disclosure. Goodyear emphasizes that the allegations of these and other plaintiffs "were never tested at trial," and that no lawsuit has "resulted in a finding of public safety risk." *Id.* The reason, of course, is that Goodyear has settled every G159 case confidentially. Only one case even got as far as a jury verdict. Thus Goodyear has avoided exposure to a finding of public safety risk and spun the outcome as "there is no risk."

63.     In his letter Mr. Kurtz expresses the opinion that the G159 tire is so dangerous that NHTSA should order it recalled immediately. It is not necessary for the Court to go that far, and these findings should not be read that way. It is the "possible risk" of harm that the Court must balance against the competing interests outlined in Rule 26. From that point of view, the number of G159 failures, their apparent frequency compared with the failure rates of similar products, the potentially deadly consequences of failure, and the fact that the information has never been analyzed by an outside agency, all weigh in favor of disclosure even if the failures turn out to be attributable to some actor other than Goodyear or nothing more than a statistical anomaly.

<u>The Interests at Stake: Other Relevant Factors</u>

64.     In *Haeger I*, Judge Silver found that Goodyear and its attorneys "made repeated, deliberate decisions . . . to delay the production of relevant information, make misleading and false in-court statements, and conceal relevant documents," for the purpose of avoiding liability to the Haegers based on the failure of a G159 tire. *Haeger v. Goodyear Tire and Rubber Co.*, 906 F.Supp.2d 938 (2012). The Ninth Circuit Court of Appeals upheld Judge Silver's findings, including her finding that Goodyear "participated directly in the discovery fraud." *Haeger v. Goodyear Tire and Rubber Company*, 813 F.3d 1233, 1243-1246 (9th Cir. 2016), *reversed on other grounds* 137 S.Ct. 1178 (2017).

65.     Judge Silver concluded, after hearing evidence, that Goodyear had tried to hide test results showing that the G159 tire becomes dangerously hot when driven for a long period of time at highway speeds. In other litigation Goodyear took the position that those same tests "were responsive to an almost identical discovery request," and that Goodyear had determined from those tests that the G159 was suitable for highway use. *Haeger v. Goodyear Tire and Rubber Co.*, 906 F.Supp.2d at 978. These facts supported Judge Silver's finding of bad faith. *Id.* That finding became the starting place for the fraud allegations in this case.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2013-052753                                    04/03/2018

66.     Goodyear was able to get away with this kind of conduct because its protective orders prevented plaintiffs from communicating or sharing information among themselves.  Thus Goodyear could control the information available to each plaintiff.  In some cases Goodyear disclosed the tests showing how much heat the G159 tire can tolerate before it loses its structural integrity.  In other cases Goodyear disclosed the tests showing that the tire does in fact generate that much heat at highway speeds.  But this case appears to be the first in which Goodyear disclosed both sets of tests.

67.     Protective orders are meant to allow litigants to maintain the confidentiality of trade secrets and confidential business information.  Goodyear appears to have been abusing that privilege in the G159 cases.  Goodyear arguably used protective orders dishonestly to gain an unwarranted advantage in litigation and to avoid tort liability.

68.     Even in the last stage of this case, after years of litigation over its practices concerning protective orders, Goodyear tried to use the Protective Order improperly for litigation advantage.

69.     As noted in paragraph 15 supra, Spartan Chassis was granted access to the protected information in this case on the same terms as the Haegers, subject to the Protective Order, pending further proceedings on whether the Protective Order should be vacated.  Minute Entry Order (Docket No. 387) filed July 13, 2017.  Goodyear then took the position that the Protective Order forbade the Haegers' attorney and Spartan's attorney from talking to each other about protected information to which both had access.  The Haegers Motion for Clarification (Docket No. 388) filed July 17, 2017.  Goodyear had to propose a tortured reading of the Protective Order to reach that result.  Response to Motion for Clarification (Docket No. 395) filed July 28, 2017.  Goodyear's argument did not even nod toward the Protective Order's legitimate purpose of keeping confidential information out of the hands of its business competitors.

70.     The motion for clarification was granted, in an order observing that Goodyear had "no legitimate interest" in prohibiting communication between its litigation opponents.  Minute Entry Order (Docket No. 412).  The truth is that Goodyear's position bordered on frivolous.

71.     That kind of conduct, like the conduct that resulted in the discovery sanctions in *Haeger I,* weighs in favor of dissolution of the Protective Order.

## **CONCLUSIONS OF LAW**

### Discovery Materials Covered by the Protective Order

Docket Code 926                    Form V000A                    Page 13

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2013-052753                                               04/03/2018

1.      Before the Court may deny the Center for Auto Safety's request for access to
discovery materials produced under the Protective Order, Goodyear must show why the
Protective Order should be continued.  CAS must show why the Protective Order should be
modified or vacated. The burden of showing good cause for the Protective Order remains with
Goodyear, the party seeking confidentiality.  Ariz. R. Civ. P. 26(c)(4)(A).

2.      When ruling on CAS's motion to vacate the Protective Order, the Court must
make findings of fact concerning any relevant factors, including but not limited to: (i)
Goodyear's need to maintain the confidentiality of the information or materials produced
pursuant to the protective order; (ii) the need of CAS or any nonparty to obtain access to such
information or materials; and (iii) any possible risk to the public health, safety, or financial
welfare to which such information or materials may relate or reveal.  Ariz. R. Civ. P.
26(c)(4)(B).

3.      "Trial judges should look to federal case law to determine what factors, including
the three listed in the rule, should be weighed in deciding whether to grant or modify a
confidentiality order where parties contest the need for such an order.  Trial judges also should
look to federal case law to determine whether to permit nonparties to intervene and obtain access
to information protected by such orders."  Ariz. R. Civ. P. 26(c) Comment to 2002 Amendment.

4.      As a general rule, non-party members of the public such as CAS can gain access
to litigation documents and information produced during discovery.  "[T]he fruits of pretrial
discovery are, in the absence of a court order to the contrary, presumptively public."  *Phillips ex
rel. Estate of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002).

5.      A party defending a protective order that denies public access to discovery
materials -- Goodyear, in this case -- must show "good cause" for the protective order.  *Id.*; *see*
Ariz. R. Civ. P. 26(c)(1) (court "may, for good cause, enter an order to protect a party from
annoyance, embarrassment oppression, or undue burden or expense . . .").  Any legitimate reason
for maintaining the confidentiality of the information or materials at issue can constitute "good
cause."  The courts have found good cause for non-disclosure of (among other things) trade
secrets;  confidential research, development, or commercial information;  privileged
communications; and settlement agreements.  *Phillips ex rel. Estate of Byrd*, 307 F.3d at 1211-
1212.   Rule 26 confers broad discretion on the trial court to decide when a protective order is
appropriate and what degree of protection is required.  *Id.*

6.      A party asserting good cause bears the burden, for each particular document it
seeks to protect, of showing that specific prejudice or harm will result if no protective order is
granted. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003), *citing
Phillips ex rel. Estate of Byrd,* 307 F.3d at 1210-1211. Broad allegations of harm,

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2013-052753                                    04/03/2018

unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test. *In re Roman Catholic Archbishop of Portland, Oregon*, 661 F.3d 417, 424 (9th Cir. 2011).

7.      If the court concludes that articulable and particularized harm will result from disclosure, then it must proceed to balance the public and private interests to decide whether maintaining a protective order is necessary.  *In re Roman Catholic Archbishop of Portland, Oregon*, 661 F.3d 417, 424 (9th Cir. 2011).   Again, Rule 26(c) gives the trial court much flexibility in balancing and protecting the interests of private parties. *See Kamakana v. City and County of Honolulu,* 447 F.3d 1172, 1180 (9th Cir. 2006).

8.      The protective order in this case, and all of the protective orders in the other G159 cases from which the parties collected information in discovery, are "blanket" protective orders. A blanket protective order is entered without requiring the proponent of confidentiality to show that specific discovery documents contain information that would satisfy the "good cause" standard of Rule 26(c).  *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003). Though the parties may stipulate to a "blanket" protective order without a particularized showing of good cause, they cannot rely on such an order to hold records in confidence indefinitely.  *Id.* at 1138; *see Phoenix Newspapers, Inc. v. Superior Court of Maricopa County*, 140 Ariz. 30, 34-35 680 P.2d 166, 170-171 (App. 1983) (no right to rely on order sealing court filings).  If the order is challenged, as it has been here, the proponent of confidentiality must make a particularized showing of "good cause" that outweighs the public interest in disclosure.

9.      When the factors in the two-part test weigh in favor of protecting the discovery material (i.e., the court determines that disclosure of information may result in "particularized harm," and the private interest in protecting the discovery material outweighs the public interest in disclosure), the court must consider redacting portions of the material so as to allow disclosure of the rest.  *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d at 425.

10.     This Court ruled, in the Order filed November 25, 2015, that "full faith and credit" does not apply to protective orders issued by courts in other jurisdictions.  Order (Docket No. 161) at 14.  That decision is the law of this case.  The Court declines to reconsider.

11.     The Court also decided in its previous ruling that the principle of mutual respect known as comity does not require the Court either to redirect the litigation concerning the protective orders to the courts that entered the orders, or to refrain from modifying the orders to permit release of protected information.  *Id.*  One of the factors bearing on that decision – that the parties to this case agreed to a protective order with terms similar to those of the other protective orders – no longer applies.  The law of the case doctrine does not apply when the facts have changed.  *Hall v. Smith*, 214 Ariz. 309, 152 P.3d 1192, ¶ 29 (App. 2007).  The Court therefore is not relying on the previous order concerning the application of the principle of comity.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2013-052753                                                04/03/2018

12.     Having considered the issue anew, the Court holds that deference to the courts that entered the protective orders still is not called for as a matter of comity, either with respect to the question of who should make the decision or with respect to the substance of the decision.

13.     The interests of comity do not call for this Court to defer to the other courts on issues concerning the merits of the protective orders.  The orders were virtually all entered by agreement or without opposition, as opposed to being entered after an adversarial proceeding.  *See Tucker v. Ohtsu Tire & Rubber Co., Ltd.*, 191 F.R.D. 495, 500-501 (D. Md. 2000).  Most are silent as to good cause for non-disclosure or any consideration of countervailing public interests; and the one or two that do speak to those issues essentially took Goodyear's word for it.  None was entered with full knowledge of the facts of other G159 cases.  None indicates any other policy considerations that might make the interest of the issuing court in enforcing its order stronger than the Arizona policy favoring disclosure.  *See* Restatement (Second) of Conflict of Laws § 139(2); *Johnson v. O'Connor,* 235 Ariz. 85, 327 P.2d 218, ¶ 33 (App. 2014).  All are modifiable by their express terms.

14.     The interests of comity do not require this Court to send the litigants back to the issuing courts to seek modification, either.  Goodyear is the only party to any of the cases that has a real stake in the outcome.  All of the orders were entered at Goodyear's request, on Goodyear's template, to protect information disclosed by Goodyear.[1]  Requiring CAS to seek modification of each protective order in the jurisdiction in which it was entered would create an unreasonable burden.  All of the underlying cases except *Haeger I* are closed, so sending this litigation to the courts that entered the orders would burden them, too, by requiring them to reopen their cases.

15.     Referring this case back to the *Haeger I* court, the United States District Court for the District of Arizona, would be technically possible because that case is still open.  But that result nevertheless would unduly burden the District Court, given that only the narrow issue of Goodyear's liability for the other parties' attorneys' fees remains to be decided there.  Even then, this Court would have to decide what to do with the discovery materials not subject to the *Haeger I* protective order and the sealed Superior Court filings.

<u>Sealed Court Records and Proceedings</u>

---

[1]     Goodyear does not claim that any of the discovery documents at issue originated anywhere other than Goodyear.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2013-052753                                         04/03/2018

16.     The courts have historically recognized a general common-law right to inspect and copy public records and documents, including judicial records and documents. *Nixon v. Warner Communications*, 435 U.S. 589, 597 & n. 7, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978).  This right is justified by the interest of citizens in "keep[ing] a watchful eye on the workings of public agencies." *Id.* at 598, 98 S.Ct. 1306.

17.     Arizona has codified the common law by court rule.  All case records in the courts of the State of Arizona are open to the public except as may be closed by law or provided by rule.  Ariz. Supreme Ct. R. 123(d).  Upon closing any record the court shall state the reason for the action, including a reference to any statute, case, rule or administrative order relied upon.  *Id.*

18.     As the party seeking to keep judicial records under seal in this case, Goodyear must overcome a strong presumption in favor of public access.  Goodyear must articulate "compelling reasons," supported by specific facts as opposed to hypothesis or conjecture, that outweigh the public policies favoring disclosure.  *See Kamakana v. City and County of Honolulu,* 447 F.3d 1172, 1178-79 (9th Cir. 2006).

19.     In general, "compelling reasons" sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such court files might have become a vehicle for improper purposes, such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets. *Id.* at 1179.  The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records.  *Id.*

20.     Again, these principles have been codified in Arizona by rule.   An order to seal or redact a court record must be justified by "identified compelling interests that outweigh the public interest in access to the court record."  Maricopa County Superior Court Local Rule 2.19(c).  The court must make written findings in the order, including the following: (1) there exists a compelling interest that overcomes the right of public access to the record; (2) the compelling interest supports sealing or redacting the record; (3) a substantial probability exists that the compelling interest will be prejudiced if the record is not sealed or redacted; (4) the proposed sealing or redaction is narrowly tailored; and (5) no less restrictive means exist to achieve the compelling interest.  *Id.*

21.     The "compelling reasons" test is not satisfied by a showing of "good cause" sufficient to support a protective order covering discovery documents.  *Kamakana v. City and County of Honolulu,* 447 F.3d at 1180.  Different interests are at stake with the right of access than with Rule 26(c).  *Id.*  Where the right of access is concerned, the private interests of the litigants are not the only weights on the scale.  Judicial records are public documents almost by definition, and the public is entitled to access by default. This fact sharply tips the balance in

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2013-052753                                     04/03/2018

favor of production when a document, formerly sealed for good cause under Rule 26(c), becomes part of a judicial record. *Id.*

22.    The "compelling reasons" standard for denial of public access to court records does not apply to motions or other filings that are only "tangentially related to the merits" of the case.  *Center for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1101 (9th Cir. 2016). Some non-dispositive motions are subject to the "compelling reasons" test because they are more than "tangentially related" to the merits. *Id.*[2]

23.    Summary judgment motions and responses bear directly on the merits regardless of whether the court resolves the case by deciding the motions.  The sealed summary judgment filings (Docket Nos. 318 and 336) therefore can be kept under seal only for "compelling reasons."

24.    The merits of the case were also directly at issue on Plaintiffs' Motion for Determination of Prima Facie Case for Punitive Damages.  The sealed filing in connection with that motion (*see* Docket No. 187) therefore can be kept under seal only for "compelling reasons."

<u>Balancing of Interests: Trade Secrets and Confidential Business Information</u>

25.    Whether the discovery materials produced under the Protective Order and the court records filed under seal should be kept confidential depends on the balance between Goodyear's need to maintain the confidentiality of the information, the public's need for access, and any possible risks to public health or safety to which the information may relate.  This Court will also weigh in the balance the evidence that the protective orders at issue in this case and others may have been used for improper purposes.

26.    As discussed above, the public's right of access to information that qualifies as a trade secret is somewhat more circumscribed than the right of access to commercial information that is held in confidence but does not qualify for trade secret protection.  For that reason, Goodyear's need for confidentiality with respect to trade secrets weighs somewhat more strongly

---

[2]    This Court respectfully disagrees with the majority opinion in *Bennett v. Smith Bundy Berman Britton*, PS, 291 P.3d 886 (Wa. 2013) and the dissent in *Center of Auto Safety v. Chrysler*, both of which would deny public access to motions that are not literally "dispositive." That approach shortchanges the public interest in transparency of judicial proceedings by adopting an unduly narrow view of how courts function and what matters in the litigation process.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2013-052753                                          04/03/2018

than its right to confidentiality of private commercial information.  Both, however, must be taken seriously, for all of the reasons suggested in Mr. Legge's affidavit.

27.    Arizona has adopted the Uniform Trade Secrets Act ("UTSA"), which codifies the basic principles of common law trade secret protection.  *Calisi v. Unified Financial Services*, 232 Ariz. 103, 302 P.3d 628, ¶ 14 (App. 2013).

28.    Under the UTSA, a "trade secret" is information, including a formula, pattern, compilation, program, device, method, technique or process, that both: (a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. *Id.* (quoting A.R.S. § 44–401(4)).

29.    Information may be protectable as a trade secret when it represents a selective accumulation of detailed, valuable facts that naturally "would not occur to persons in the trade or business." *Calisi v. Unified Financial Services*, 232 Ariz. 103, 302 P.3d 628, ¶ 16 (App. 2013) (citation omitted).    Another hallmark of a trade secret is that it was created by expending substantial efforts such that it would be difficult for a competitor to acquire or duplicate the same information. *Id.*, ¶ 17.  A related factor is whether the information derives independent economic value from its secrecy, and gives the holder a demonstrable competitive advantage over others in the industry. *Id.*, ¶ 18.  In addition, courts have considered the extent to which the claimant divulged the information externally and internally, i.e., to people outside of its business as well as to its own employees. *Id.*, ¶ 19.

30.    By the definition set out in section 44–401(4) as interpreted in *Calisi*, Goodyear's documents and information concerning design, quality control and testing, and adjustment experience of the G159 tire constitute trade secrets under Arizona law.

31.    Goodyear's documents concerning policies and procedures not specific to the G159 tire also qualify as trade secrets.  The "Goodyear Global Master Specification Tire Release policy" is clearly a trade secret.  Goodyear's recall procedures, its adjustment procedural manual, its adjustment codes and the templates for corporate presentations concerning adjustment data, probably are too. Accordingly, the Court has discretion to keep those materials under protective order, and to maintain them in the court docket under seal.

32.    Goodyear's need for continued confidentiality of information relating specifically to the G159 is reduced somewhat by the age of the information and the fact that the G159 tire has long since been discontinued, as well as the fact that no competitor is likely to want to copy this tire.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2013-052753                                             04/03/2018

33.     Goodyear's legitimate need for confidentiality of the adjustment information
relating to the G159 tire is reduced substantially, if not entirely eliminated, by the circumstances
surrounding the tire.  As noted in the Findings of Fact at paragraph 42 *supra,* the value of
adjustment data for Goodyear's competitors lies in its use as a marketing tool.  Normally
Goodyear would have the right to keep the data away from the competitors for that reason.  But
when the data could be interpreted to suggest that a product is dangerous, as it can here, non-
disclosure becomes damage control, and the interest being protected is not competitive
advantage but rather avoiding bad publicity and potential liability.  That observation applies
especially to the lists of personal injury and property damage claims and the reports concerning
those claims.  Goodyear characterizes that information as "customer use data" or "warranty data"
or "marketplace performance data."  The plaintiffs would describe it as evidence of the number
of people killed or injured by a defective tire.

34.     Goodyear's need for confidentiality of information, whether or not directly related
to the G159 tire, weighs less heavily than it otherwise might because of the breadth and lack of
specificity of Goodyear's confidentiality claim.  As discussed generally in the Findings of Fact at
paragraphs 38 through 54 *supra,* Goodyear has demonstrated how the disclosure of various *kinds
of information* can be competitively harmful.  It has also shown which documents contain those
kinds of information, though in some instances (particularly transcripts and court filings) it has
not specified what kind of information appears where in the document.  But what Goodyear has
not done, anywhere, is to explain exactly how it stands to be harmed by the release of *any
specific identifiable document or piece of information*.  For example, Goodyear has not identified
anything about its tire testing procedure that is proprietary or unique.  In that sense Goodyear has
failed to particularize its showing concerning its need for confidentiality.[3]

35.     Goodyear's need for confidentiality was recently diminished further by the
decision of NHTSA to deny Goodyear's request for confidential treatment of Mr. Kurtz's
submission.  *See* Findings of Fact ¶ 23 supra.  Mr. Kurtz's submission includes much of the

---

[3]     Goodyear has successfully used a version of the Legge affidavit at least once to support a
sweeping non-disclosure argument similar to the argument it is making here.  *In re Goodyear
Tire & Rubber Co.*, 392 S.W.3d 687 (Tx. App. 2010).   That case is distinguishable from this
one, however, because the issue was whether the plaintiff had established the right to obtain the
information in discovery, as opposed to whether information already disclosed in discovery
should also be disclosed to others.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2013-052753                                        04/03/2018

information, and many of the documents, for which Goodyear is claiming a right of
confidentiality. As to that information and those documents, the proverbial cat is out of the bag.[4]

36.     Goodyear's need to maintain the confidentiality of the information or materials
produced pursuant to the protective order does not come close to outweighing the public's need
for access (through CAS) with respect to information that relates specifically to the G159 tire.
That information -- primarily concerning the tire's design, its testing, the decision to market it for
use on motor homes, and the adjustment data generated by consumer experience with it -- should
be made public because it relates to and reveals a substantial potential risk to public health or
safety. Moreover, by comparing the information that was disclosed in different cases, the public
will be able to judge for itself whether the misuse of protective orders enabled the misconduct
described by Judge Silver.

37.     Goodyear's need to maintain the confidentiality of the information or materials
produced pursuant to the protective order does not outweigh the public's need for access
(through CAS) with respect to information concerning Goodyear's internal policies and
procedures, and its interactions with NHTSA. Disclosure of that information is necessary to
enable the public to understand G159-specific information, such as the adjustment data. The
information will also help the public understand how and why this happened at Goodyear, and
what measures (if any) should be taken to ensure it does not happen again.

38.     Goodyear's need for confidentiality *does* outweigh the public interest in
disclosure with respect to documents produced in discovery that contain general financial or
commercial information. The only items in that category that the Court has identified, however,
are the two insurance policies referred to in the Findings of Fact at paragraph 47 *supra*. The
disclosure order will not apply to those items.

39.     The public does not have an interest in disclosure of the briefs from the Ninth
Circuit appeal in *Haeger I* that the parties filed in Superior Court as a courtesy to enable the
Court to track the progress of the appeal. *See* Defendant Goodyear Tire and Rubber Company's
Opposition to the Center for Auto Safety's Motion to Unseal Court Records and Vacate

---

[4]     The NHTSA decision also moots Goodyear's claim of confidentiality for a handful of
documents based on a "peer review" privilege. *E.g* Defendant The Goodyear Tire and Rubber
Company's Opposition to the Center for Auto Safety's Motion to Unseal Court Records and
Vacate Protective Order (Docket No. 432), Legge Declaration Exhibit B at 41. The "peer
review" documents appear to be Exhibits 31 and 32 to Mr. Kurtz's NHTSA submission.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2013-052753                                        04/03/2018

Protective Order (Docket No. 432), Exhibit C at 4-5.  The disclosure order will not apply to those items.[5]

40.     With respect to the "non-tangential" motions in the court record that were sealed because they include or refer to information subject to the protective order, *see* Conclusions of Law at ¶¶ 23 and 24 *supra*, Goodyear's interest in confidentiality does not overcome the right of public access to the record or support sealing or redaction of the record.  The Court does not find Goodyear's interest in confidentiality to be compelling.  But even if Goodyear's interest is labelled "compelling" because it involves trade secrets, that interest does not come close to outweighing the public interest in access to the court record.

### Balancing of Interests: Settlement-Related Documents

41.     The public interest in fostering settlement of disputes is "good cause" for allowing the parties to a lawsuit to keep the terms of their settlement confidential.  *See Phillips ex rel. Estate of Byrd*, 307 F.3d at 1211-1212.

42.     When a confidential settlement agreement becomes the subject of litigation, and as such is attached to a dispositive or otherwise non-tangential motion, the parties' confidentiality interest must be weighed against the public interest in access to the courts.

43.     The motions to dismiss filed by Goodyear and Okey early in the case were directed to the merits.  They argued that the *Haeger I* settlement agreement had released them from further liability.  The affidavits attached to those motions incorporated the settlement agreement.  *See* Findings of Fact ¶ 2 *supra*.  Judge Duncan's order sealing the agreement "pending the stay" has not been revisited until now.

44.     The Court finds that the confidentiality provision in the *Haeger I* settlement agreement does not create a "compelling interest" that overcomes the strong presumption in favor of public access.

45.     The plaintiffs' motion to enforce their settlement agreement with Goodyear in this case was likewise directed to the merits of the agreement.  *See* Findings of Fact ¶ 54 *supra*. A redacted version of the settlement agreement, omitting provisions that were not germane to the dispute and (presumably) that the parties considered especially sensitive, was attached to that motion.

---

[5]     The disclosure order will apply to Ninth Circuit briefs placed in the court record as attachments to motions.  If a motion or response is ordered unsealed, the order applies to the entire filing including all attachments.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2013-052753                                              04/03/2018

46.     The Court finds that the confidentiality provision in the *Haeger II* settlement agreement between the Haegers and Goodyear does not create a "compelling interest" that overcomes the strong presumption in favor of public access with respect to the redacted version of the agreement.

47.     The settlement agreements between the plaintiffs and defendants Fennemore Craig P.A., Graeme Hancock, Roetzel & Andress and Basil Musnuff stand on a different footing. Those parties did not voluntarily avail themselves of the judicial process to settle disputes over their respective settlement agreements. Rather, Civil Rule 16.2 required them to petition for judicial approval of the agreements.  *See* Findings of Fact ¶ 53 *supra*.

48.     Because the plaintiffs and the attorney defendants did not voluntarily submit their settlement agreements to judicial scrutiny, the Court finds that the public's interest in access to that information is not sufficiently compelling to overcome the parties' interest in confidentiality.

Balancing of Interests: Allegedly Privileged Documents

49.     In an extensive minute entry order entered April 19, 2016 (Docket No. 222), the Court ruled that Goodyear had waived the attorney-client privileges "with respect to all communications between and among Goodyear personnel (including in-house legal staff) and lawyers retained to defend Goodyear in tort cases arising from the failure of a G159 tire, concerning testing of the tire and disclosure of information about testing to other parties and to the court in those cases."  *Id.* at 2-3.  The Court found that the scope of the waiver in this case was the same as in the District Court.  *Id.* at 3.  The work product privilege was also found to have been waived.  *Id.* at 4.

50.     Goodyear had the right to seek a protective order in the District Court under Federal Rule of Evidence 502, and in this court pursuant to the parallel Arizona rule, to prevent the compelled disclosure of privileged information from being treated as a waiver.  *See id.* at 3. It never did so.

51.     The privilege waiver applies to all of the items produced in discovery, in the *Haeger I* sanctions proceeding and in this case, as to which Goodyear now raises a disclosure objection based on attorney-client or work product privilege.  That includes materials that originated in other G159 cases.

**ORDERS**

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2013-052753                                              04/03/2018

**IT IS ORDERED** vacating in its entirety the Protective Order set out in the Order filed November 25, 2015 (Docket No. 161) at page 14, modified by the Order filed February 12, 2015 (Docket No. 200), and applied to Spartan Chassis by the Order filed July 13, 2017 (Docket No. 387), except as to Bates Nos. 006530-006594 (Management Liability Insurance Policy) and 006598-006614 (Chartis Excess Coverage Insurance Policy).

**IT IS FURTHER ORDERED** the street addresses of the persons listed in the Bodily Injury and Property Damage Claim Records (Bates NO. 011267-011281) shall be redacted before that record is released to anyone other than those currently subject to the Protective Order.

**IT IS FURTHER ORDERED** unsealing certain docket items that were sealed because they include documents or information subject to the Protective Order.  The Clerk is directed to implement this order by unsealing the following docket items:

- Docket No. 120 (Exhibits 2 and 3 to Plaintiffs' Motion to Require Goodyear to Seek Relief from Protective Orders Entered in the G159 Cases);
- Docket No. 186 (Exhibits to Plaintiffs' Reply in Support of Motion for Determination that Goodyear Has Waived Attorney-Client and Work Product Privileges);[6]
- Docket No. 187 (Exhibit No. 5 to Plaintiffs' Combined Reply to All Defendants' Response Plaintiffs' Motion for Determination of Prima Facie Case for Punitive Damages and Motion to Compel Responses to Discovery);[7]
- Docket No. 318 (Exhibits to the Haegers' Supplemental Statement of Facts in Opposition to Goodyear and Okey's Motion for Partial Summary Judgment)
- Docket No. 336 (Defendants The Goodyear Tire and Rubber Company's and Deborah Okey's Response to the Haegers' Supplemental Statement of Facts in Opposition to Goodyear and Okey's Motion for Partial Summary Judgment);
- Docket No. 345 (Defendants The Goodyear Tire and Rubber Company and Deborah Okey's Opposition to Spartan Chassis, Inc.'s Motion to Intervene and Modify Protective Order, Exhibit C); and
- Docket No. 460 (The Haegers' Notice of Filing Documents Under Seal).

**IT IS FURTHER ORDERED** that the plaintiffs shall furnish the Clerk with a replacement copy of the Exhibits to Plaintiffs' Supplemental Statement of Facts in Opposition to Goodyear and Okey's Motion for Partial Summary Judgment (Docket No. 318) with the street

---

[6]    Docket items 80, 186 and 187 are orders directing the filing of the specified documents under seal.  The documents described in the orders are not docketed.

[7]    *See* Fn. 6.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2013-052753                                            04/03/2018

addresses of the persons listed in the Bodily Injury and Property Damage Claim Records (Exhibit 10) redacted.  The Clerk shall replace Docket No. 318 with the version that includes the redacted Exhibit 10.  The Clerk shall not unseal that docket item until the replacement copy of the document has been substituted.

**IT IS FURTHER ORDERED** unsealing the docket items that were sealed because they disclose terms of the settlements between the Haegers and Goodyear in *Haeger I* and this case. The Clerk is directed to implement this order by unsealing the following docket items:

- Docket No. 80 (Exhibit A to Defendants the Goodyear Tire & Rubber Company, Fennemore Craig, P.C., Graeme Hancock, Roetzel & Andress and Basil Musnuff's Motion to Dismiss and Alternative Motion to Stay These Proceedings or Strike the Complaint);[8]
- Docket No. 352 (Motion to Enforce Settlement Agreement); and
- Docket No. 358 (Defendants Goodyear Tire & Rubber Company and Deborah Okey Opposition to Plaintiffs' Motion to Enforce Settlement Agreement).

**IT IS FURTHER ORDERED** all other sealed items in the record shall remain under seal pursuant to the previous orders of the Court.

**IT IS FURTHER ORDERED,** in light of the stipulated Order Regarding Sealing and Continuation of Protective Order Pending Appeal issued August 22, 2017, staying the orders vacating the Protective Order and partially unsealing the record until further order of the Court. This order is intended only to maintain the *status quo* pending further proceedings.  It will not be treated as controlling or persuasive in the event that one of the parties moves to put the foregoing orders into effect immediately.  In other words, if such a motion is filed it will be treated as having placed the issue before the Court for the first time, as opposed to being considered a motion for reconsideration.

No matters relating to Applicant Spartan Chassis' Motion to Intervene and Modify the Protective Order or the Motion to Intervene by the Center for Auto Safety remain pending.  This is a final order as to those motions.  Ariz. R. Civ. P. 54(c).

/s/ John R. Hannah

_____

John R. Hannah
Judge of the Superior Court

---

[8]        *See* Fn. 6.