UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | CIVIL ACTION<br><br>MDL NO. 09-2047<br><br>SECTION "L" (5) |
| THIS DOCUMENT RELATES TO: ALL CASES | |

## ORDER AND REASONS

On January 31, 2018, the Court issued its opinion setting common benefit fees involving the Knauf portion of the *Chinese-Manufactured Drywall Products Liability* multidistrict litigation. Rec. Doc. 21168. After conducting an independent review of the hours logged by common benefit counsel and squaring it with the lodestar method and *Johnson* factors, *see Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974), the Court determined a 52–48 division of available funds for attorneys' fees between common benefit counsel and individually retained contract attorneys, respectively.

Following the common benefit fees order, certain plaintiffs' attorneys ("Movants," "contract counsel," or "objectors") have filed the following motions: (1) motion for certification of order for interlocutory appeal under 28 U.S.C. § 1292(b), or in the alternative, entry of final judgment under Federal Rule of Civil Procedure 54(b); and (2) motion for interim disbursement of attorneys' fees. Because the Court is well versed on this case and the common benefit doctrine, these motions were taken under submission without oral argument.

Having considered the parties' briefs and applicable law, the Court now issues this Order and Reasons.

1

I.      BACKGROUND

    A.      **Procedural History**

From 2004 through 2006, the housing boom in Florida and rebuilding efforts necessitated by Hurricanes Rita and Katrina led to a shortage of construction materials in the United States, including drywall. As a result, drywall manufactured in China was brought into the United States and used in the construction and refurbishing of homes in coastal areas of the country, notably the Gulf Coast and East Coast. Sometime after the installation of the Chinese drywall, homeowners began to complain of emissions of foul-smelling gasses, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829 (E.D. La. 2012), *aff'd*, 742 F. 3d 576 (5th Cir. 2014). Many of these homeowners also began to report various physical afflictions allegedly caused by the Chinese drywall.

These homeowners began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. Because of the commonality of facts in the various cases, this litigation was designated as multidistrict litigation. Pursuant to a June 15, 2009 transfer order from the United States Judicial Panel on Multidistrict Litigation, all federal cases involving Chinese-manufactured drywall were consolidated for pretrial proceedings in MDL 2047 in the United States District Court for the Eastern District of Louisiana.

The Chinese drywall at issue was largely manufactured by two groups of defendants: (1) the Knauf entities and (2) the Taishan entities. Because the Taishan entities contested jurisdiction at the outset and refused to accept service of process, it was necessary to conduct this litigation along two tracks. The first track involved the Knauf entities.

The Knauf entities ("Knauf") are German-based, international manufacturers of building products, including drywall, whose Chinese subsidiary, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), advertised and sold its Chinese drywall in the United States. The Knauf entities are named defendants in numerous cases consolidated with the MDL litigation as well as litigation in state courts. The Knauf entities did not contest jurisdiction and first entered their appearance in the MDL litigation on July 2, 2009. *See* Rec. Doc. 18. On November 2, 2009, in Pretrial Order No. 17, KPT agreed to a limited waiver of service. *See* Rec. Doc. 401. After a period of intense discovery, the court set various bellwether trials. From March 15–19, 2010, the Court presided over a bellwether trial in *Hernandez v. Knauf Gips KG*, Case No. 09-6050, involving a homeowner's claims against KPT for defective drywall. *See* Rec. Doc. 2713. For purposes of the trial, Knauf stipulated that KPT Chinese drywall "emits certain reduced sulfur gases and the drywall emits an odor." *Id*. The Court, based on the evidence presented, found the KPT Drywall was a defective product and issued a detailed Findings of Fact and Conclusions of Law in favor of Plaintiff Hernandez ("*Hernandez* FOF /COL"), *see id.*, and entered a Judgment in the amount of $164,049.64, including remediation damages in the amount of $136,940.46, which represented a cost of $81.13 per square foot based on the footprint square footage of the house. *See* Rec. Doc. 3012.

On October 14, 2010, Knauf agreed to participate in a pilot program to remediate a number of homes using the remediation protocol formulated by the Court in the *Hernandez* case. The Knauf pilot remediation program has, at present, remediated over 2,800 homes containing KPT Chinese drywall using essentially the same protocol. At the Court's urging, after a number of homes had been remediated, the parties began working together to monetize this program and make it available to a broader class of plaintiffs.

Thereafter, the PSC and Knauf entered into settlement discussions, and on December 20, 2011, some two years after the formation of this MDL. The PSC reached a global remediation settlement with Knauf, which is designed to resolve all Knauf-related Chinese drywall claims.

After a bellwether trial involving the downstream Knauf distributor, North River, numerous other settlement agreements were reached with other downstream entities in the chain of commerce with the Knauf. These entities included various distributers, builders, and installers (and their insurers) of the Knauf-manufactured Chinese drywall.

Under the terms of the settlements, the claimants with KPT Chinese drywall (drywall manufactured by Knauf's Chinese subsidiary) were offered several options. Under Option 1, the claimants were offered the opportunity to receive a complete, environmentally certified remediation of their properties. Under Option 2, the claimants were offered cash reimbursement in the event the home was already remediated. Finally, under Option 3, claimants were offered a cash payment instead of remediation as well as the opportunity to receive monetary benefits from the Knauf downstream chain of commerce entities to compensate them for other specifically designated losses.

**B.     Attorneys' Fees**

As part of the Knauf remediation settlement, Knauf also agreed to pay reasonable costs, including the cost of administering the program, and an additional amount for attorneys' fees, which includes both the fees for contract counsel and those for common benefit counsel. The total for both attorneys' fees and costs is $233,078,270.33, in which $197,803,738.17 is used for attorneys' fees and $35,274,532.16 has been used for costs. This payment of fees and costs relieves each and every claimant of all contingency fee and cost reimbursement obligations to both retained contract counsel and common benefit counsel (with exception of the Virginia litigants), and thus

represents an amount which otherwise would have been payable by the claimants out of their settlement recovery. The claimants have now all received their appropriate portion of the settlement funds. It is now time to focus on the attorneys' fees for this aspect of the litigation for the purpose of determining the appropriate distribution of these fees.

As the Court previously noted, the distribution of attorneys' fees demands a two-steps approach. *See* Rec. Doc. 21168; PTO 28. The first step requires a determination of the proper split between the contract counsel and the common benefit counsel; the second step involves an analysis of the appropriate distribution of the fees to each counsel. *Id.*

The Court completed the first part on January 31, 2018 when it issued its opinion splitting the total attorney's fees of $197,803,738.17 between common benefit counsel and contract counsel at 52–48 percent, respectively.

After the Court entered its ruling, several contract counsel have filed a motion for interlocutory appeal. At the same time, the Court has received motions for interim disbursements from certain contract counsel. This opinion addresses both request.

## II.   MOTION FOR INTERLOCUTORY APPEAL

Certain contract counsel has filed the instant motion for interlocutory appeal to the Fifth Circuit concerning this Court's common benefit fee order. These attorneys argue, *inter alia*, that (1) the common benefit fees order involves a controlling issue of law on whether the Court's split of 52–48 of available attorneys' fees abridges contract counsel's constitutionally protected contract rights; (2) the Court erred by using Knauf settlement funds to compensate common benefit counsel for time expended and costs incurred in pursuit of non-settling Taishan Defendants; (3) the Court erred by sealing time records, thereby preventing contract counsel the ability to effectively cross-examine the PSC; (4) the Court is without precedent to impose a "hefty tax" on contract counsel's

right to contingency fees; (5) the PSC acted in its self-interest in negotiation with Knauf regarding attorneys' fees on behalf of primary counsel; (6) the Fee Committee's evaluation of the benefits conferred on class members through the nine class settlements, which the Court accepted, include benefits that were not part of the classes' recovery and are less in actuality because the total settlement value is artificially raised; (7) the PSC improperly obtained voluntary contributions from individually retained counsel who obtained private settlements and then simultaneously attempted to take credit for Primary Counsel's work; and (8) the calculation of the benefit conferred on the class contains settlement payments for 79 properties of homeowners who did not file an Omnibus Complaint.

Movants believe that these questions and issues present controlling legal questions involving substantial ground for difference of opinion, and an immediate resolution of this debate by the Fifth Circuit would materially advance this litigation.

### B. Legal Standard

Interlocutory appeals are allowed when a district court that issues a non-final order in a civil case "shall be of the opinion that such order [1] involves a controlling question of law as to which [2] there is substantial ground for difference of opinion and that an immediate appeal from the order [3] may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b) (brackets added); *In re Ichinose*, 946 F.2d 1169, 1177 (5th Cir. 1991). All three factors must be satisfied to warrant this exceptional "departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978).

The availability of such an appeal under § 1292(b) does not "jeopardiz[e] the usual rule of not permitting an appeal until all the proceedings on the trial court level are complete." 10 Charles

Alan Wright, et al., Fed. Prac. & Proc. Juris. § 2658.2 (3d ed. 1998 & 2009 supp.). An interlocutory appeal is "exceptional" and "does not lie simply to determine the correctness of a judgment." *Chauvin v. State Farm Mut. Auto. Ins. Co.*, Nos. 06-7145 & 06-8769, 2007 WL 4365387, at *2 (E.D. La. Dec. 11, 2007) (quoting *Clark-Dietz & Assocs.-Eng'rs, Inc. v. Basic Const. Co.*, 702 F.2d 67, 68, 69 (5th Cir. 1983)).

Therefore, the moving party bears the burden of demonstrating that interlocutory appeal is appropriate. *In re FEMA Formaldehyde Prods. Liab. Litig.*, No. MDL 07-1873, 2008 WL 4923035, at *2 (E.D. La. Nov. 13, 2009) (citing *In re Complaint of L.L.P. & D. Marine, Inc.*, Nos. 97-1668, 97-2992 & 97-3349, 1998 WL 66100, at *1 (E.D. La. Feb. 13, 1998)).

**C.     Discussion**

"A request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (Powell, J., majority opinion). Regrettably, the Court is now faced with just that: an unnecessary, multiyear litigation involving attorneys' fees.

As a threshold matter, the Court's January 31, 2018 common benefit order is not a final judgment. Courts often recognize fee decisions that are not final are particularly unripe for interlocutory appeal. For example, in *People Who Care v. Rockford Bd. of Educ., Dist. No. 25*, the Seventh Circuit denied a request to appeal the district court's interim fee order under § 1292(b) because "[d]isputes about the quantum of attorneys' fees do not satisfy [the] standard" requiring material advancement of the ultimate termination of the litigation. 921 F.2d 132, 134 (7th Cir. 1991) (Easterbrook, J., majority opinion); *see also Petties v. Dist. of Columbia*, 227 F.3d 469, 473 (D.C. Cir. 2000) ("interim [fee] awards . . . [not] appealable as a matter of course"). Similarly, as mentioned, the distribution of attorneys' fees in this case requires a two-steps approach. The first step—which movants now seek to undo—is to determine the proper split between contract counsel

7

and common benefit counsel. The second step implicates an analysis of the appropriate distribution of the fees to each counsel. *See* Rec. Doc. 21168; PTO 28.

Regarding the instant motion, Movants have not satisfied their burden for an interlocutory appeal of a non-final order on attorneys' fees under the § 1292(b) statutory rubric.

*First*, the common benefit doctrine is a well-settled principle applicable in complex litigations, such as this MDL. This Court, as the transferee court, has established authority to fix a common benefit fee. *See In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 549 F.2d 1006, 1008 (5th Cir. 1977); *In re Diet Drugs Prods. Liab. Litig.*, 582 F.3d 524, 546-47 (3d Cir. 2009).

Movants' parade of reasons for an interlocutory appeal chiefly arises from pecuniary motives and dissatisfaction with facts—not error in law. Despite Movants' objection regarding the hours logged by common benefit counsel, Movants ignore the Court's supervisory role at the outset of this litigation by appointing a neutral certified public accountant to vet common benefit counsels' hours for the past nine years. Each month, the Court would review, and flag, if necessary, questionable hours and costs with the CPA. In setting the 52–48 allocation, the Court spent countless hours reviewing the record and numerous briefs, then applied the lodestar method and *Johnson* factors to arrive at its decision. To adopt the Movants' plan of reevaluating common benefit counsels' hours—which this Court already did—puts this matter back to square one.

In addition to the CPA review process, the Court also appointed a special master to review contract counsel's objections and meet with the objectors. This provided a method or procedure for objectors to state and advocate their respective positions. The special master was authorized to permit reasonable discovery by the interested parties, request and receive briefs and hear oral argument. Thereafter, the special master made a recommendation as to the appropriate division of

8

the fees between the contract counsel and common benefit counsel. The arguments Movants advance today have been previously raised on multiple occasions, before this Court and the special master.

"District courts must not certify issues which need significant factual development to flesh out, or which will require the circuit court to 'delve beyond the surface of the record in order to determine the facts.'" *See Consumer Fin. Prot. Bureau v. Frederick J. Hanna & Assoc., P.C.*, 165 F. Supp. 3d 1330, 1335 (N.D. Ga. 2015) (quoting *McFarlin v. Conseco Serv., LLC*, 381 F.3d 1251, 1256 (11th Cir. 2004)). Movants' objection to this Court's common benefit order is mainly grounded in disagreement of facts—*i.e.*, common benefit counsel's logged hours and overall value of settlement—and not questions of law. And in cases involving "[a] question which requires a factual as well as legal decision," interlocutory review "is not suitable." *Speizman Knitting Mach. Co. v. Terrot Strickmaschinen GmBH*, 505 F. Supp. 200, 202 (D.N.C. 1981); *see also Brooks v. Farm Fresh, Inc.*, 759 F. Supp. 1185, 1198 (E.D. Va. 1991). Thus, Movants have not satisfied their burden for an interlocutory appeal of a non-final order. Their opportunity to seek another court's opinion comes later.

*Second*, the Court sees little, if any, ground for difference of opinion on the applicability of the common benefit doctrine in multidistrict litigations.

"The threshold for establishing a 'substantial ground for difference of opinion' is higher than mere disagreement or even the existence of some contrary authority." *See Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718, 724 (N.D. Tex. 2006). "Parties must clear a high bar when attempting to show that a question involves a substantial ground for difference of opinion." *Consumer Fin. Prot. Bureau v. Frederick J. Hanna & Assoc., P.C.*, 165 F. Supp. 3d 1330, 1335 (N.D. Ga. 2015). Courts have held that "[s]ubstantial ground for difference of opinion exists when a legal issue is

(1) difficult and of first impression, (2) the district courts of the controlling circuit are split as to the issue, or (3) the circuits are split on the issue." *Id*. (citing *Georgia State Conf. of the NAACP v. Fayette Cty. Bd. of Commissioners*, 952 F. Supp. 2d 1360, 1362 (N.D. Ga. 2013)). The applicable standard requires that "[t]he 'substantial ground' for difference of opinion must be about a purely legal issue, not a factual one or '"the application of settled law to fact."'" *Id.* (quoting *McFarlin v. Conseco Serv., LLC.*, 381 F.3d 1251, 1258 (11th Cir. 2004).

Movants rely on some academic critique—rather than case law—to support their position that the common benefit doctrine does not apply to MDLs. For instance, Movants cite Professor William Rubenstein's comments that state the federal rules are procedural and do not provide "an independent source of law authorizing attorney fees." William B. Rubenstein, Newberg on Class Actions § 15.2 (5th ed.). Further, he notes that the rationale and legal basis for common benefit fees is contested and "neither substantive nor procedural norms exist to govern their administration." *Id.* at § 15.112. Movants seek the Fifth Circuit's input on Professor Rubenstein's position.

Nonetheless, courts, including the Fifth Circuit, have long permitted transferee courts to fix a common benefit fee. *See, e.g.*, *In re Air Crash Disaster at Fla. Everglades*, 549 F.2d 1006; *see also In re Diet Drugs.*, 582 F.3d 524. It is well-settled that "[a]n MDL court's authority to . . . order contributions to compensate leadership counsel derives from its 'managerial' power over the consolidated litigation, and, to some extent, from its inherent equitable power." *In re Genetically Modified Rice Litig.*, MDL 1811, 2010 WL 716190, at *4 (E.D. Mo. Feb. 24, 2010), *aff'd*, 764 F.3d 864 (8th Cir. 2014), *cert. denied*, 135 S. Ct. 1455 (2015). Additionally, not only does this Court have authority to fix common benefit fees in an MDL setting, but also pursuant to Federal Rule of Civil Procedure 23(h). Federal class action laws give courts responsibility to determine

10

reasonable attorneys' fees. *See* Fed. R. Civ. P. 23(h). Regarding this MDL, the Court previously determined that the claims met the Rule 23 demands of numerosity, commonality, and typicality, and certified the litigation for class settlement. Thus, the Court is obligated to determine a fair compensation for all counsel in this case.

Furthermore, inherent in a court's power to determine a fair and equitable attorneys' fees award comes with the authority to reduce contractually created contingency fee provisions. As this Court has opined, "[a]mong the broad equitable powers of a federal court is its supervisory capacity over an attorney's contingent fee contracts. Federal appellate courts have consistently upheld the right of a district court to modify any contingency fee contract it deems unreasonable under the circumstances." *Karim v. Finch Shipping Co., Ltd.*, 233 F. Supp. 2d 807, 810 (E.D. La. 2002), *aff'd*, 374 F.3d 302 (5th Cir. 2004). And the Fifth Circuit has recognized this authority of a district court: to supervise collection of attorneys' fees under contingency fee arrangements. *See, e.g.*, *Hoffert v. General Motors Corp.*, 656 F.2d 161, 164-66 (5th Cir. 1981). Although Movants theorize that reduction of attorneys' fees amount to abridging Movants' constitutionally protected contract rights for property interest, their argument is simply contrary to court-sanctioned practice.

Professors Silver and Miller have also observed that it "cannot be right" for "a court exercising its inherent power [that] needs neither a sound methodology nor competent evidence when cutting fees. . . . The efficient price for legal services is an empirical matter, and judges cannot properly resolve empirical matters by means of armchair speculation." Charles Silver and Geoffrey P. Miller, *The Quasi-Class Action Method of Managing Multi-District Litigation*, 63 VAND. L. REV. 107, 121 (2010). Nonetheless, in managing this large, complex litigation, this Court employed a pragmatic plan, based on law and data. The common benefit fees order was not

11

derived from "armchair speculation;" rather, it was supported by nine years of data, collected timesheets, and case precedent. Movants seek to uproot grounded legal principles governing award of attorneys' fees, but they cannot do so simply by citing nonbinding law review articles. Accordingly, interlocutory appeal is unnecessary.

*Third and finally*, courts deny interlocutory appeal if it will not materially advance the ultimate termination of litigation. *See, e.g.*, *Matthews v. Stolier*, No. 13-cv-6638, 2016 WL 9447195, at *2 (E.D. La. July 19, 2016) (denying certification under § 1292(b) because it would hinder the progress of the litigation); *Roussell v. Brinker Int'l, Inc.*, No. 05-cv-3733, 2009 WL 595978, at *4 (S.D. Tex. Mar. 6, 2009).

In this case, immediate appeal of the common benefit fees order to the Fifth Circuit will cause unnecessary delay. The instant opinion is only the first step in the process; the next opinion will determine the amount of fee each attorney is to receive. This MDL has been ongoing for too long—over nine years. During this time, neither common benefit counsel nor individually retained counsel has been compensated for their significant effort and advocacy on behalf of their clients. Permitting an appeal on a non-final judgment now—and perhaps another appeal with the final judgment setting the amount of fee for each attorney—would create unnecessary piecemeal appeals, whereby certain attorneys could persistently seek the Fifth Circuit's intervention. By denying Movants' request for a § 1292(b) appeal, the Court is not forbidding their right to appeal; instead, the appropriate time to seek appellate review is when there is a final judgment. At this juncture, the Court will not permit any unnecessary delays.

### III. REQUEST FOR FINAL JUDGMENT

Alternative to an interlocutory appeal, Movants request for an entry of final judgment pursuant to Federal Rule of Civil Procedure 54(b) so they can instantly appeal. Movants suggest

that "because the Order finally sets the two allocation categories in the amounts of $99,762,099.56 and $94,607,042.17, the Order is final on this specific issue, and interlocutory appeal would not force the Fifth Circuit to rule twice on the same matter." Rec. Doc. 21216 at 31. The PSC opposes this attempt.

### A. Legal Standard

Rule 54(b) allows a district court "[to] direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." Fed. R. Civ. P. 54(b). This Rule "reflects a balancing of two policies: avoiding the 'danger of hardship or injustice through delay which would be alleviated by immediate appeal' and 'avoid[ing] piecemeal appeals.'" *Eldredge v. Martin Marietta Corp.*, 207 F.3d 737, 740 (5th Cir. 2000) (citing *PYCA Indus. v. Harrison County Waste Water Management Dist.*, 81 F.3d 1412, 1421 (5th Cir. 1996)).

The Fifth Circuit has noted that "[o]ne of the primary policies behind requiring a justification for Rule 54(b) certification is to avoid piecemeal appeals." *PYCA Indus.*, 81 F.3d at 1421. Generally, Rule 54(b) judgments are not favored and should be awarded only when necessary to avoid injustice: "A district court should grant certification [under Rule 54(b)] only when there exists some danger of hardship or injustice through delay which would be alleviated by immediate appeal; it should not be entered routinely as a courtesy to counsel." *Id.* (citing *Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 445 (2d Cir. 1985)).

### B. Discussion

At issue is whether "there is no just reason for delay" in appeal, a determination that is within the sound discretion of the district court. *See Ackerman v. FDIC*, 973 F.2d 1221, 1224 (5th Cir. 1992). In answering this question, the district court has a duty to weigh "the inconvenience

13

and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other." *Road Sprinkler Fitters Local Union v. Continental Sprinkler Co.*, 967 F.2d 145, 148 (5th Cir. 1992) (quoting *Dickinson v. Petroleum Conversion Corp.*, 338 U.S. 507, 511 (1950)). A major factor the district court should consider is whether the appellate court "'would have to decide the same issues more than once even if there were subsequent appeals." *H & W Indus., Inc. v. Formosa Plastics Corp., USA*, 860 F.2d 172, 175 (5th Cir. 1988) (quoting *Curtiss–Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 8 (1980)).

As mentioned above, the Court's January 31, 2018 common benefit fees order is not ripe for appeal: it only represents one step in a two-part process to determine attorneys' fees. Movants have not shown any hardship or injustice that may arise without immediate appeal. Although they argue that the Court's common benefit fees order has created two categories of funds, any available money, nonetheless, are interrelated and come from the same pot. Therefore, any adjustments to the amounts would require this Court to recalculate the individual awards, again and again. For the sake of judicial economy, the Court says no.

Finally, the Fifth Circuit advises against piecemeal appeals. If the Fifth Circuit reviews the common benefit fees order, they may again have to revisit attorneys' fees issues once this Court determines specific amounts to allocate to each firm in this complex MDL. The potential for multiple appeals would further delay a final resolution of the Knauf portion of this case. That is unfair to numerous attorneys who have been waiting for their rightly earned fees. Accordingly, this Court finds that Movants have failed to show that the supposed "danger of denying justice by delay" outweighs "the inconvenience and costs of piecemeal review." *See Road Sprinkler Fitters*, 967 F.2d at 148.

**IV. MOTION FOR INTERIM DISBURSEMENT**

Certain contract counsel has requested the Court to award an interim disbursement of an amount it believes will be below any ultimate award. The Court rejects that invitation.

First, as indicated by the above request for interlocutory appeal, some attorneys may appeal this Court's ultimate order awarding attorneys' fees. Under Fifth Circuit jurisprudence, the award of attorneys' fees will be examined for an abuse of discretion. *See In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 227-28 (5th Cir. 2008). Although the Court believes its common benefit fees order is grounded on Fifth Circuit precedent, the Court cannot speculate as to what the appellate court will ultimately do. Yet out of abundant caution and in the interest of judicial economy, the Court declines to disburse funds now, then possibly—albeit unlikely—ask for a return of funds and redistribute it should the Fifth Circuit reverse the common benefit fees order, in whole or in part.

Second, the Court sees little prejudice to deferring disbursement of attorneys' fees funds until a final judgment is entered. The Court expects completion of the attorneys' fees disbursement process, as prescribed in Pre-Trial Order 28, by the end of this year. The focus now should be arriving at a final resolution—not taking pointless detours.

**V. CONCLUSION**

Based on the aforementioned reasons, accordingly,

**IT IS ORDERED** that the motions for interlocutory appeal, final judgment, and interim disbursement (Rec. Docs. 21212, 21216 & 21240) are hereby **DENIED**.

New Orleans, Louisiana, this 7th day of May, 2018.

*/s/ Eldon E. Fallon*
**ELDON E. FALLON**
United States District Judge