UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


IN RE:  CHINESE-MANUFACTURED    *        09-MD-2047
        DRYWALL PRODUCTS        *
        LIABILITY LITIGATION    *        Section L
                                *
Relates to:  All Cases          *        June 12, 2018
                                *
* * * * * * * * * * * * * * * * *


TRANSCRIPT OF PROCEEDINGS BEFORE
THE HONORABLE ELDON E. FALLON
UNITED STATES DISTRICT JUDGE


Appearances:


For the Plaintiffs:            Herman Herman & Katz, LLC
                               BY:  RUSS M. HERMAN, ESQ.
                               820 O'Keefe Avenue
                               New Orleans, Louisiana 70113



For the Taishan, CNBM,         Phelps Dunbar, LLP
and BNBM Defendants:           BY:  HARRY ROSENBERG, ESQ.
                               365 Canal Street, Suite 2000
                               New Orleans, Louisiana 70130



Official Court Reporter:       Toni Doyle Tusa, CCR, FCRR
                               500 Poydras Street, HB-275
                               New Orleans, Louisiana 70130
                               (504) 589-7778



Proceedings recorded by mechanical stenography using
computer-aided transcription software.

<u>**PROCEEDINGS**</u>

**(June 12, 2018)**

      **THE COURT:**  Be seated, please.  Good morning, ladies and gentlemen.

           Call the case, please.

      **THE DEPUTY CLERK:**  MDL No. 2047, *In Re:  Chinese-Manufactured Drywall Products Liability Litigation.*

      **THE COURT:**  Liaison counsel make their appearance for the record, please.

      **MR. ROSENBERG:**  Good morning, Judge Fallon.
Harry Rosenberg, liaison counsel for CNBM, BNBM, and Taishan, Your Honor.

      **MR. HERMAN:**  May it please the Court.  Good morning, Judge Fallon.  Russ Herman for plaintiffs.

      **THE COURT:**  We have three matters today.  Our monthly meeting is first and then we have a motion to extinguish.  We have a number from Knauf, and we have a number of people on the line waiting for that.  Then, third, there's a motion for Esquire Bank.  I would like to meet with the attorneys involving that motion on both sides and talk to them about some briefing schedule that can accommodate all of them.

           Let's go to the meeting first.  I have received from the parties a proposed agenda.  I discussed with them in chambers a bit of it.  We will take it in the order presented.

           Anything, Harry or Russ?

09:04

1          **MR. ROSENBERG:**   Your Honor, we have no issues to

2    present to the Court this morning on behalf of CNBM, BNBM, and

3    Taishan.

4          **THE COURT:**   I talked to the parties a moment ago

5    about the status of the litigation.  The MDL court has approved

6    my suggested motion to remand the cases to Florida, so they

7    will be going to Florida.  There are also some cases that are

8    involved in Virginia.  We will be dealing with that at the

9    appropriate time.

10          Then we have some cases here, that were filed in

11   Louisiana, involving Louisiana properties that we have to deal

12   with.  The parties are discussing what, if any, discovery is

13   necessary.  The way I see those particular cases is that we

14   ought to focus on first the remediation damage cases.  Those

15   cases should involve limited discovery.  Then there are cases

16   that involve other damages other than the remediation damages.

17          As I mentioned in my opinion, it says that on

18   June 9, 2015, the Court considered only remediation damages for

19   current owners.  Other damages such as alternate living

20   expense, bodily injury, foreclosure, loss of rent, and so forth

21   may be considered at another time.  So that is going to have to

22   be considered.

23          The plaintiffs will have to indicate what claims

24   they have, what evidence they intend to support those claims,

25   and have the defendants have an opportunity to thoroughly

09:06

1    discover that type of claim, and then we will talk with them

2    about how we proceed.  If there are jury trials, maybe we can

3    have multiple cases go to the jury at the same time so we can

4    minimize it.

5            As I mentioned, I don't like multiple cases in

6    bellwethers because it's not helpful.  It's not indicative of

7    what a single case tried is going to cost or how it affects

8    things, but when you have to move the cases -- we have maybe

9    several thousand of them here -- we can't take one at a time.

10   We will be doing this into the next century, or at least some

11   other people will be doing it in the next century.

12           We have to figure out a way of expediting this.

13   We may have to put our heads together and come up with some

14   creative way of doing it, but that's further down the line.

15           Anything from the plaintiffs?

16           **MR. HERMAN:**  Yes, Your Honor.  There are two reports.

17   Jake Woody is here from BrownGreer.  He has a report for

18   Your Honor.

19           **THE COURT:**  Jake.

20           **MR. WOODY:**  Good morning, Your Honor.  Jake Woody

21   from BrownGreer, the settlement administrator for the Chinese

22   Drywall Settlement Program.  The only thing I have to report is

23   that we have approximately $2 million left in the Other Loss

24   Fund.

25           **THE COURT:**  That's in the Knauf cases.

09:07

1          MR. WOODY:  That's correct.  It's part of the
2    settlement program.  We will distribute that money pro rata
3    over the next few weeks and months.  It's to approximately,
4    3,500 people.  All these people have already received a payment
5    from the Other Loss Fund.  This is just distributing the
6    remainder to them.
7          THE COURT:  That's what we have to do with the
8    Other Loss Fund.  They are paid.  If there's anything left,
9    then we do it proportionately, and that's the method of doing
10   this kind of thing.
11         MR. WOODY:  That's correct.  We will send those
12   checks to the attorneys just like with the first payment, and I
13   did want people to be aware of what those checks are for.  We
14   will put some language on the check that explains it in further
15   detail as well.
16         THE COURT:  When can you get those out?
17         MR. WOODY:  I hope to have them out before the August
18   status conference, hopefully before July.  It's not a
19   completely onerous task, but it does take a little bit of time
20   to print and mail.
21         THE COURT:  Will that end the Knauf matter?
22         MR. WOODY:  That would be the end of it.  The only
23   thing that will be left after that is people who haven't cashed
24   their checks and things of that nature.  I think what we will
25   do is pay that money into the Court registry and give the Court

09:08

1    an accounting of what it's for.  When people want to get it,

2    they will have to file a motion with you to come and get it.  I

3    would like to close those accounts so that we can stop filing

4    tax returns and things like that.  Thank you, Your Honor.

5            THE COURT:  Thank you.

6            MR. HERMAN:  May it please the Court.  I'm going to

7    call on the Irpino firm, Pearl Robertson, who has handled it

8    for the PSC in the main, and Christy may want to speak.  They

9    will both speak briefly about where they are on translations.

10           THE COURT:  We are talking now about the translation.

11           MS. ROBERTSON:  Good morning, Your Honor.  Yes.

12   Briefly, on May 3, 2018, pursuant to Your Honor's order

13   regarding translations, the PSC has met and conferred with

14   Taishan on multiple occasions.  We feel like we have come a

15   long way.  We are not exactly where we want to be, but we are

16   going to continue to work together.  We hope that certainly by

17   the next status conference we will have a very substantive

18   report to report to Your Honor regarding the manual translation

19   from the Peng production.

20           THE COURT:  Christy, do you have anything to add?

21           MS. EIKHOFF:  I have nothing to add, Your Honor.

22           THE COURT:  Is that it?

23           MR. HERMAN:  I just, may it please the Court, have

24   two other comments.

25                   I appreciate Judge Becnel leaving her bench

09:10

1    today to be here, Judge Mary Becnel.  Also, I do want to pay a

2    remembrance to a terrific lawyer and colleague, Jack Benjamin,

3    who recently passed.

4    **THE COURT:**  I didn't see Judge Becnel in the

5    audience.  I would have mentioned her.  She is a great judge in

6    her area.  I have worked with her many times.

7    **MR. ROSENBERG:**  Judge Fallon, if you would just

8    permit me a moment a personal privilege.  I would just like to

9    echo Russ' comment about welcoming Judge Becnel into this Court

10    as well as recognizing the tremendous work and career that

11    Jack Benjamin has had as a practitioner in this community and

12    the contributions he has made.

13    **THE COURT:**  Well, thank you both for that.

14    The next meeting is July 18 and the following

15    one is August 14.  We will start at 8:30 with lead liaison and

16    then we will go into the general meeting.

17    Let's go to the next item of business, a motion

18    to extinguish.  Is anybody here from Knauf that wants to

19    mention that?  Knauf, anybody?  I thought there was somebody

20    here for Knauf.

21    **MR. ROSENBERG:**  Judge, I'm sorry.  I know that the

22    motion was in the status report.

23    Right, Lenny?

24    I haven't seen any attorney for Knauf.

25    **MR. DAVIS:**  Your Honor, we have had communications

09:11

1    back and forth with Danny Dysart as well as Kerry Miller.  I

2    know that they are working on the matters.  There are some

3    loose ends that they are dealing with.  I thought they would be

4    here, but maybe it might be good to roll it over to the next

5    status conference.

6              **THE COURT:**  Anyone on the phone for the motion to

7    extinguish?

8              **MR. RYAN:**  Yes, Your Honor.  This is Mike Ryan from

9    South Florida.

10              **THE COURT:**  Mike, I'm sorry that nobody is here for

11    Knauf.  I hate to impose on you, but we are going to have to

12    move this over to the next meeting.

13                   What's your problem from the standpoint of

14    extinguishing, anything that the Court can help you with?

15              **MR. RYAN:**  Thank you, Your Honor.  Yes, we have had

16    discussions with Danny Dysart, as Lenny pointed out.  They

17    understand the predicament our homeowners are in.  We are

18    trying to work through it.  These are final stage issues,

19    contractor problems.  We provided as much information as

20    possible.  I think the discussions will continue with Knauf to

21    try to resolve this as quickly as possible.

22              **THE COURT:**  Well, continue to meet with them and see

23    if you can bring this to a head because I do want to tie up the

24    loose ends.  I don't want there to be any loose ends on that

25    aspect of the case.  We have been able to resolve that half of

09:13

1   the case to hopefully the satisfaction of the parties.  We are

2   now into the Taishan aspect of the case.

3            MR. DAVIS:  Your Honor, I don't want to speak for

4   Kerry, obviously, but I do know that, just as Mike Ryan just

5   spoke, there are a couple of cases where there are contractor

6   delays and things like that, but they are nearing the end.  I

7   think that they will be wrapped up shortly.

8            MS. RICO:  Your Honor, I'm sorry.  Natalie Rico.  I'm

9   on the phone as well for the motion to extinguish on behalf of

10  Patrick Montoya, who actually apologizes that he could not be

11  there himself.

12            Similar to what Mr. Ryan was saying, we have

13  contractor delays and permitting delays with two of our

14  clients.  I believe Knauf was going to suggest an August 1

15  deadline.  We have spoken with them, and we are going to push

16  to have everything completed for the final milestone by then.

17  What we did say to them is that a little more time may be

18  needed, and I guess this can be addressed at the next status

19  conference.

20            Then with respect to our other client,

21  Prime Homes, that is a larger client that has 28 properties.  I

22  don't know if Your Honor remembers, but there were delays in

23  starting construction on that property.  During all these

24  delays, construction prices went up, and there was a motion

25  pending before Your Honor for six months to a year, something

1    like that.

2              We have had discussions with Knauf.  They have

3    suggested that this client switch to the cash-out, which due to

4    the crushing prices of construction and whatnot the client is

5    going to probably have to do, but we just wanted to make

6    Your Honor aware of the situation.

7              THE COURT:  We will talk about it, then, at the next

8    meeting, July 18, if you can be on the phone and give me some

9    status report so we can try to end up this aspect of the case.

10             MS. RICO:  Yes, Your Honor.  Thank you.

11             THE COURT:  Anyone else?

12             With regard to the Esquire Bank matter, if the

13   attorneys would meet me in the back in the conference room, we

14   will talk about the matter.  Thank you very much.

15             MR. YANCE:  Your Honor, if I may be heard just a

16   moment on the record.

17             THE COURT:  Sure.

18             MR. YANCE:  Tucker Yance from Mobile.

19             THE COURT:  Sure.

20             MR. YANCE:  I do believe there are some law firms

21   that have joined into my motion regarding Esquire Bank that are

22   listening on the phone.  I also have a couple of things to say

23   with regard to -- I believe you referred to it as a briefing

24   schedule.  I would like to have discussions on the record for

25   the benefit of the attorneys that are on the telephone.

09:16

1          THE COURT:  Sure.

2          MR. YANCE:  Forgive me.  I'm not a frequent filer in

3 this case, but it's my understanding that the submission date,

4 as recognized and calendared by the Court, is the hearing date

5 for the purpose of handling motions that do not have a specific

6 and independent request for oral argument, and also that there

7 will be no separate hearing on motions that do not contain a

8 separate request for oral argument.

9          So be that as it may and coupling that with

10 either of the local rules or Your Honor's Pretrial Order 1C,

11 the deadline for a response to the motion regarding

12 Esquire Bank has long since passed.  According to the Court's

13 local rules, there shall be no response.  Today is the date for

14 submission of the motion and it's unopposed.  It's been joined

15 in by several other law firms and so it's ripe for ruling.

16          Considering the disturbing -- and I understand

17 it is disturbing -- nature of the motion itself and the

18 immediacy that is clear on its face -- and the facts that are

19 set forth in that motion are publicly available to this Court

20 almost in their entirety -- I would say it would be

21 appropriate -- even if Your Honor doesn't want to rule on my

22 motion without giving an additional chance to respond, I

23 believe it would be appropriate for a *sua sponte* regaining

24 control of the $200 million sitting in Esquire Bank under the

25 circumstances.  I personally can find no downside and only

09:18

1   upside for doing so.  The only downside to doing so would be a

2   detriment to Esquire Bank, as set forth in my motion, which is

3   of no consequence in this case.

4           So even setting that aside, I want to point out

5   that nearly every motion that has been filed in the attorneys'

6   fee phase of this case has been met with a relatively rapid

7   response by the fee committee, and this is regardless of

8   whether such motion -- and often in absence of a setting of a

9   hearing by the Court.  A motion is filed and in due course it's

10  responded to.

11          This motion, as I said, is extraordinarily

12  troubling with regard to a lot of money belonging to a lot of

13  people, and it's remained unopposed for almost a month.  So I

14  would suggest that that is an indicator that there is no really

15  good response to this motion, and any attempt to ask for time

16  to respond to it is an attempt to delay the payout.

17          **THE COURT:**  Okay.

18          **MR. YANCE:**  So I would ask again the Court either

19  grant the motion or *sua sponte* regain control of the

20  $200 million sitting in the investments.

21          **THE COURT:**  Let me hear from the other side.

22          What do you need time for and why haven't you

23  responded in a month?

24          **MR. HERMAN:**  May it please the Court.  Russ Herman in

25  response.

09:20

1          There are a number of misstatements in

2    Mr. Yance's motion.  There are personal attacks in Mr. Yance's

3    motion.  There is ongoing requests for documents -- by folks

4    who have joined with Mr. Yance -- from BrownGreer, and

5    BrownGreer has responded with the assistance of Esquire Bank.

6          The issue is one in which we need a briefing

7    schedule and a hearing.  I am actually prepared today to make

8    an oral response, but I am awaiting some critical information.

9    My understanding --

10          **THE COURT:**  He says you could have responded within a

11    month.  You haven't responded in a month.

12          **MR. HERMAN:**  Well, Your Honor, we have received, over

13    the course of this month, repeated requests for information

14    from me, from Esquire Bank, and BrownGreer.  We could hardly do

15    that until the information stream was passed.

16          I also don't think, under the usual practice of

17    this Court, when a counsel before this Court with 52 years of

18    experience is attacked personally that that matter can be

19    responded to without some thought.

20          I am not accusing Mr. Yance of anything other

21    than, if he had these remarks, to release them publicly to a

22    large number of firms without attempting to seal the record,

23    that that's just not proper.  Perhaps these folks do not

24    understand that we have ongoing litigation against Taishan and

25    that given the fact that the documents were also distributed on

09:22

1  the record, accessible to the defense, it does not give us

2  sufficient time.  Now, all I'm asking for is a briefing

3  schedule and a hearing date, with the Court's permission.

4        **THE COURT:**  All right.  I will do this.  We will do

5  both of them.  I will get the $200 million -- this is

6  attorneys' fees.  If it were claimants' money, it would be a

7  different issue, but this is attorneys' fees.  I will get those

8  and put them in the registry of the Court.

9              I will issue an order *sua sponte*, but I will

10  give you an opportunity to respond in a brief form.  How much

11  time do you need?

12        **MR. HERMAN:**  A week.

13        **THE COURT:**  Do you need any response?

14        **MR. YANCE:**  I don't anticipate needing a reply, so to

15  speak.  However, of course, I don't know what's going to be

16  said.  A week would be sufficient, if I can have an extra week

17  to reply.

18        **THE COURT:**  Well, let's do two weeks and one week.

19  That will give you an opportunity.  Then we will set it for

20  oral argument.  If we need any evidence, let me know and I will

21  arrange to have evidence.

22        **MR. HERMAN:**  Your Honor, we do not object to moving

23  the funds.  We have been attempting to find out a number of

24  issues with the clerk of court's funds as to whether the QSF in

25  this case is going to be separated from other QSFs -- because

09:25

1    as I understand it right now this is a national fund -- is the

2    clerk of court going to make the type of monthly reports or

3    bimonthly reports to BrownGreer and then to the Court-appointed

4    CPA through BrownGreer, and what are the fees going to be.  I

5    think there are a number of issues, and we do not object moving

6    it to the clerk of court in a safe place.

7                 Also, there's some issue as to what happens with

8    the interest on this fund.  It's our position that whoever the

9    depository is, the interest ought to be attributed to the fund

10   itself.  So we do ask that Your Honor, through Your Honor's

11   means, take a look at that.

12        **THE COURT:**  Okay.  Anything else?  Thank you very

13   much.  You have two weeks, and you have one week.

14        **MR. HERMAN:**  Thank you, Judge.

15        **THE COURT:**  Anything else from anybody?  Danny, do

16   you want to come up?

17                 We had some people on the line to discuss this.

18   They said they were working with you and they hoped to get the

19   matter resolved by the next status conference sometime in July.

20   The next one is July 18.

21        **MR. DYSART:**  That's right, Your Honor.  I apologize

22   for being late to the conference.  Apparently we had a mixup in

23   schedules.

24                 With respect to our motion, I have been in

25   contact with just about everybody that have remaining claims.

09:26

1  There are a few that are unopposed that we can submit for

2  extinguishment at this time.  Those would be Rodney Litus and

3  Ronni and Rodella Ervin.  Those can be submitted without

4  opposition as extinguished.

5            For the remaining claims --

6        THE COURT:  Anybody on the line for either of those?

7        MR. DYSART:  They are represented by David Durkee,

8  Judge.  I have spoken to David.

9            His other two claims, Mr. Dalsin and Mr. Russel

10 or Graham, he is unopposed to having those at least pushed back

11 to -- what I have discussed with all counsel is what we would

12 like to do is have a deadline.  These claims have been going on

13 for years.  Some of them have not had any activity for years.

14           What we talked about was potentially asking the

15 Court to submit an August 1 deadline, to try to have those

16 completed by August 1.  If individual issues come up, then they

17 can move to extend the time period as it may be.

18           With respect to Jake and the Knauf defendants --

19 Jake at BrownGreer -- we would just like a deadline put in

20 place for the remaining claims so that we are all working

21 towards wrapping these up my August 1.

22           The only other one that is a little different

23 would be Prime Homes.  I have spoken to Patrick Montoya and

24 Natalie Rico.  I'm not sure if they were on the line --

25        THE COURT:  They were.

09:28

1       **MR. DYSART:**  -- but it's my understanding that they

2  have agreed to switch to Option 3 for those claims, and that

3  they can submit that by August 1 as well.

4       **THE COURT:**  I will do that with August 1, but be here

5  on July 18 to give me a status report and find out whether or

6  not we need to move that date.

7       **MR. DYSART:**  I will, Your Honor.  Thank you.

8       **THE COURT:**  All right, folks.  Thank you very much.

9       **THE DEPUTY CLERK:**  All rise.

10       (Proceedings adjourned.)

11                              * * *

12                         <u>**CERTIFICATE**</u>

13       I, Toni Doyle Tusa, CCR, FCRR, Official Court

14  Reporter for the United States District Court, Eastern District

15  of Louisiana, certify that the foregoing is a true and correct

16  transcript, to the best of my ability and understanding, from

17  the record of proceedings in the above-entitled matter.

18

19

20                    <u>*/s/ Toni Doyle Tusa*</u>
                        Toni Doyle Tusa, CCR, FCRR
21                      Official Court Reporter

22

23

24

25