UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:  CHINESE-MANUFACTURED
DRYWALL PRODUCTS LIABILITY
LITIGATION                                                        MDL NO. 2047

This Document Relates to:

Greg Descher, et ux. V. Knauf GIPS KG, et al.
Case No. 17-17500

---

## AMENDED COMPLAINT
## (JURY TRIAL REQUESTED)

---

Plaintiff, GREG & MEREDITH DESCHER and PENNY PARKER, bring this action on their own behalf and on behalf of a Class of persons defined below against Defendants, KNAUF GIPS KG, KNAUF PLASTERBOARD TIANJIN CO., LTD., and Fictitious Defendants A-Z (collectively "Defendants"), and for their Amended Complaint allege, upon information and belief and based on the investigation to date of their counsel, as follows:

### INTRODUCTION

1.     Plaintiffs bring this class action on behalf of themselves and all other similarly situated owners of homes in the State of Mississippi that were built or rebuilt using drywall manufactured, processed, distributed, delivered, supplied, inspected, marketed and/or sold by Defendants, Knauf Gips KG ("Knauf Gips"), Knauf Plasterboard Tianjin Co., Ltd. ("Knauf Tianjin"), and Fictitious Defendants A-Z.

2.     The drywall manufactured, processed, distributed, delivered, supplied, inspected, marketed, and/or sold by Defendants to build or rebuild the homes of Plaintiffs and the Plaintiff Class Members is defective and emits levels of sulfur, methane and/or other volatile organic

chemical compounds that cause corrosion of HVAC coils and refrigerator units, certain electrical wiring and plumbing components, and other household items, as well as create noxious, "rotten egg-like" odors. Defendants' defective gypsum drywall further causes allergic reactions, coughing, sinus and throat infection, eye irritation, respiratory problems and other health concerns. Defendants' drywall was inherently defective and not suitable for its intended use.

## THE PARTIES

3.      Plaintiffs, GREG & MEREDITH DESCHER, own a home located in Ocean Springs, Mississippi located at 5724 Via Toscana. Plaintiff's home was built by Fritz Development LLC using Defendants' defective drywall.

4.      Plaintiff, PENNY PARKER, owns a home located in Bay St. Louis, Mississippi, located at 54 Good Street.  Plaintiff's home was rebuilt after Hurricane Katrina by J & B Designs using Defendants' defective drywall which was obtained from Baiely Lumber & Supply Co.

5.      Upon information and belief, Defendant, Knauf Gips, is a German corporation doing business in the State of Mississippi. One of Knauf Gips' affiliates, Gebr. Knauf Verwaltungsgsellschaft KG, owns a substantial stake in Defendant, USG. Knauf Gips is a leading manufacturer of building materials and systems. Defendant, Knauf Gips, together with its affiliates, including Defendant, Knauf Tianjin, provides building materials and systems to customers in over 50 countries, including the United States. Upon information and belief, at all material times hereto, Defendant, Knauf Gips, supervised, operated, trained and otherwise exercised control and/or had the right to control the operations of Defendant, Knauf Tianjin, and its agents, apparent agents and employees.   Defendants, KNAUF GIPS and KNAUF TIANJIN, may be served with process through their registered agent, Robert H. Claxton, One Knauf Drive, Shelbyville, IN  46176.

6. Among other things, in 1995, Knauf Gips introduced its advanced production techniques and technology into China. From 1997 through 2001, Defendant, Knauf Gips, established three plasterboard plants in China located in Wuhu, Tianjin and Dongguan. The product quality of all Defendant, Knauf Gips', plants in China, including Defendant, Knauf Tianjin, are strictly controlled according to the requirements of Knauf Gips' headquarters in Germany. Defendant Knauf Gips' sales and technical support teams support Knauf Gips' businesses throughout the world, including Defendant, Knauf Tianjin, in China. Defendant, Knauf Tianjin, and its employees are the actual and/or apparent agents of Defendant, Knauf Gips.

7. Upon information and belief Knauf Gips, together with its affiliates and/or actual or apparent agents, including Knauf Tianjin, manufactured, sold, distributed, marketed and placed into the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within the State of Alabama. Knauf Tianjin and/or Knauf Gips have continuously and systematically distributed and sold drywall to numerous purchasers in the State of Mississippi and their drywall was installed in numerous homes in Mississippi. Knauf Tianjin and/or Knauf Gips manufactured and sold, directly and indirectly, to certain suppliers in the State of Mississippi, defective gypsum drywall that was installed in Plaintiff's home and the homes of the Plaintiff Class Members. Moreover, Knauf Gips and/or Knauf Tianjin purposefully availed themselves of the jurisdiction of this Court by selling and shipping substantial quantities of drywall into the State of Mississippi.

8. Upon information and belief, Knauf Plasterboard Tianjin Co., Ltd., is a Chinese corporation with its principal place of business located at North Yinhe Bridge, East Jingjin Road, Beichen District, Tianjin, 300400 P.R.C., and at all times material, conducted business in the

State of Alabama.  Knauf Tianjin is involved in the manufacturing and sale of gypsum drywall. Defendant, Knauf Tianjin is the actual and/or apparent agent of Defendant, Knauf Gips. Upon information and belief, Knauf Tianjin individually and/or together with and at the direction and control of its principal, Knauf Gips, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within the State of Alabama. Defendants, Knauf Tianjin and/or Knauf Gips, have continuously and systematically distributed and sold drywall to numerous purchasers in the State of Alabama and their drywall was installed in numerous homes in Alabama. Defendants, Knauf Tianjin and/or Knauf Gips, manufactured and sold, directly and indirectly, to certain suppliers in the State of Alabama defective gypsum drywall that was installed in Plaintiff's home and the homes of the Plaintiff Class Members. Moreover, Knauf Gips and/or Knauf Tianjin purposefully availed themselves of the jurisdiction of this Court by selling and shipping substantial quantities of drywall into the State of Alabama.

9.      Fictitious Defendants A through Z, are various unidentified individuals and/or entities, presently unknown to the Plaintiffs, who may be responsible, in part for the conduct complained of herein for the manufacture and distribution of the dry wall in question which resulted in injuries to the Plaintiffs.  Plaintiffs are making diligent inquiries to determine the identity and whereabouts of Fictitious Defendants A through Z.  Plaintiffs will, with leave of Court, replace Fictitious Defendants A through Z as named Defendants in this action by amendment or supplemental pleadings in accordance with Rule 15 of the Mississippi Rules of Civil Procedure, as soon as practical as they are identified, with their service relating back to the original date of the filing of this action.

## JURISDICTION and VENUE

10.    Plaintiffs hereby incorporate by reference each of the preceding allegations as though fully set forth herein.

11.    This action is within the original jurisdiction of this Court by virtue of 28 U.S.C. §1332(d)(2) and the Class Action Fairness Act. Plaintiffs and Defendants are citizens of different States and the amount in controversy of this Class action exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

12.    Venue for this cause is proper in the Southern District of Mississippi, pursuant to and in accordance with 28 U.S.C. §1391.

13.    This Court has personal jurisdiction over Defendants because they are engaged in substantial and not isolated activity within this State.  Additionally, Plaintiffs' and the Plaintiff Class Members' causes of action arise from Defendants, Knauf Gips and Knauf Tianjin, personally or through their agents, causing injury to property within the State of Mississippi arising out of acts or omissions of Defendants, Knauf Gips, and Knauf Tianjin, outside the State of Mississippi, and at the time of the injury, products, materials, or things manufactured by Defendants, Knauf Gips, and Knauf Tianjin, were used and consumed within the State of Mississippi in the ordinary course of commerce, trade or use.

## FACTS

14.    By reference, each of the proceeding paragraphs are adopted and incorporated herein.

15.    On or about March 30, 2015, Plaintiffs, Greg and Meredith Descher, discovered that their home located at 5724 Via Tascano, Ocean Springs, MS, was constructed

using contaminated drywall manufactured by Defendants.  See attached Exhibit "A" Pro-Lab Report dated March 30, 2015.  See attached Exhibit "B" photographs.

16.     On or about April 28, 2017, Plaintiff, Penny Parker, realized that her home which was rebult after Hurricane Katrina, was renovated using contaminated drywall manufactured by Defendants.  See attached Exhibit "C" Home Inspection Building Specialist, Inc. Report dated April 28, 2017.

## GENERAL ALLEGATIONS

17.      In connection with the construction of homes in the State of Mississippi, consumers purchased gypsum drywall, either directly or indirectly, from various unidentified suppliers (collectively, the "Suppliers").

18.     Upon information and belief, the Suppliers purchased, directly and/or indirectly, gypsum drywall that was manufactured in China by Defendants Knauf Gips, Knauf Tianjin and Taishan, and possibly other unknown Chinese manufacturers (collectively, the "Manufacturers").

19.     Defendants negligently manufactured, processed, distributed, delivered, supplied, inspected, marketed and/or sold defective gypsum drywall, which was unreasonably dangerous in its normal use in that the drywall caused corrosion to HVAC coils and refrigerator units, certain electrical wiring and plumbing components, and caused allergic reactions, coughing, sinus and throat infection, eye irritation, respiratory problems and other health concerns.

20.     Defendants' drywall was made with waste material from scrubbers on coal-fired power plants, also called "fly ash."  These materials can leak into the air and emit one of several sulfur compounds including sulfur dioxide and hydrogen sulfide.

21.    When combined with moisture in the air, these sulfur compounds create sulfuric acid. Sulfuric acid has been known to dissolve solder joints, corrode coils and copper tubing – creating leaks, blackening coils and causing HVAC systems, appliances, and refrigerators to fail.  Sulfuric acid has also been shown to corrode copper electrical wiring and plumbing components. Not only does it blacken and corrode coils, it can harm metals such as chrome, brass and silver.

22.    Defendants' defective drywall can not only affect HVAC systems and refrigerators, but can affect and require replacement of all sorts of household items, including but not limited to microwaves, lighting fixtures, faucets and silverware. In addition, the defective drywall has a noxious odor, akin to the smell of rotten eggs.

23.    Upon information and belief, over 10 million square feet of Defendants' defective drywall was used in the construction of Alabama homes between 2004 and the present.

24.    Defendants' actions will require Plaintiffs and the Plaintiff Class Members to remedy all defective drywall, perform extensive remedial repairs to the homes, and then repair the damaged property made visible during the performance of these repairs.

25.    As a result, the Plaintiffs and the Plaintiff Class Members have suffered, and continue to suffer damages as a result of Defendants' defective drywall and the corrosive effects of the sulfur compounds. These damages include, but are not limited to, the costs of inspection, the costs and expenses necessary to replace and remove the defective drywall, adjoining components, electrical wiring, interior finishes and personal property.  See attached Exhibit "D" Remediation costs for the Descher Plaintiffs. Plaintiffs and the Plaintiff Class Members have also suffered and continue to suffer personal injuries as a result of Defendants' defective drywall,

including, but not limited to, allergic reactions, coughing, sinus and throat infection, eye irritation, respiratory problems and other health concerns.

26.     Defendants' actions also resulted in substantial diminution in the value of Plaintiffs' and the Plaintiff Class Members' homes.

## **CLASS ACTION ALLEGATIONS**

27.     Plaintiffs bring this Class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and a Class defined as follows:

> **All persons or entities who own a home in the State of Mississippi which were built or rebuilt using Defendants' drywall and have discovered this fact within three (3) years prior to the filing of this situation after the date of filing.**

Excluded from the Class are: (a) any Judge or Magistrate presiding over this action and Members of their families; (b) Defendants and any person, firm, trust, corporation, or other entity related to or affiliated with Defendants including, without limitation, persons who are officers, directors, employees, associates or partners of Defendants; (c) all persons who properly execute and file a timely request for exclusion from the Class.

28.     *Numerosity*:     The Class is composed of thousands of persons geographically dispersed throughout the State of Mississippi, the joinder of whom in one action is impractical.

29.     *Commonality*:     Questions of law and fact common to the Class exist as to all Members of the Class and predominate over any questions affecting only individual Members of the Class. These common legal and factual issues include the following:

a.     Whether Defendants manufactured and sold a defective product;

b.     Whether Defendants' conduct in manufacturing and/or distributing their drywall fell below the duty of care owed by Defendants to Plaintiff and Members of the Plaintiff Class;

8

c.      Whether Defendants concealed adverse information from Plaintiff and the Plaintiff Class Members about their drywall;

d.      Whether Plaintiff and the Plaintiff Class Members are entitled to recover compensatory, exemplary, punitive, and/or other damages as a result of Defendants' negligent and unlawful conduct;

e.      What is the proper mechanism for assessing and awarding damages and administering relief to Class Members, including the relief to reduce the threat of future harm to Class Members;

f.      Whether Defendants failed to give adequate and timely warning of the dangers of their drywall;

g.      Whether Defendants negligently, recklessly, or intentionally concealed information about the safety of their drywall from the Plaintiff and Plaintiff Class;

h.      Whether Defendants are strictly liable in tort for selling a defective product;

i.      Whether Defendants' conduct constitutes fraudulent concealment;

j.      Whether Defendants' conduct constitutes fraudulent misrepresentation;

k.      Whether Defendants' conduct constitutes negligent misrepresentation;

l.      Whether Defendants' conduct constitutes negligence;

m.      Whether Plaintiff Class Members have sustained irreparable harm and whether they are entitled to equitable relief including restitution and/or refund and, if so, the nature and extent of such damages;

n.      Whether the Plaintiff Class is entitled to compensatory damages and, if so, the nature and extent of such damages;

o.      Whether Defendants are liable for punitive damages and, if so, how much is necessary and appropriate to punish them for their conduct, deter others and fulfill the policies and purposes of punitive and/or exemplary damages;

p.      How any and all punitive and/or exemplary damages awarded to Plaintiff and the Plaintiff Class Members should be equitable allocated among the Plaintiff and the Plaintiff Class:

30.      *Typicality*:  Plaintiffs' claims are typical of the claims of the Plaintiff Class as all such claims arise out of Defendants uniform course of wrongful conduct complained of herein.

31.     *Adequacy of Representation*:  Plaintiffs will fairly and adequately protect the interests of the Members of the Class and have no interests antagonistic to those of the Class. Plaintiffs have retained counsel experienced in the prosecution of complex Class actions and construction cases.

32.     *Predominance and Superiority*:    This Class action is appropriate for certification because questions of law and fact common to the Members of the Class predominate over questions affecting only individual Members, and a Class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all Members of the Class is impracticable. Should individual Class members be required to bring separate actions, this Court and courts throughout the State of Mississippi would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single Court.

## EQUITABLE TOLLING OF THE APPLICABLE STATUTES OF LIMITATIONS

33.     The running of any statute of limitations has been tolled by reason of Defendants' fraudulent concealment. Defendants, through failing to disclose a known defect to Plaintiffs or the Plaintiff Class Members, and misrepresenting their product as safe for its intended use, actively concealed from Plaintiffs and the Plaintiff Class the true risks associated with their drywall.  Furthermore, even through the existing litigation, Defendants have made no attempts to notify impacted persons.

34.     As a result of Defendants' actions, Plaintiffs and the Plaintiff Class Members could not reasonably know or have learned through reasonable diligence of the manufacturing defect, and that Plaintiffs and the Plaintiff Class Members had been exposed to the risks alleged herein and that those risks were a direct and proximate result of Defendants' acts and omissions.

35.     Furthermore, Defendants are estopped from relying on any statute of limitations because of their fraudulent concealment of the defective nature of their drywall. Defendants were under a duty to disclose the true character, quality, and nature of their products because this was non-public information over which the Defendants had, and continue to have, exclusive control, and because Defendants knew that this information was not available to the Plaintiffs and the Plaintiff Class Members. In addition, the Defendants are estopped from relying on any statute of limitations because of their concealment of these facts.

36.     Plaintiffs and the Plaintiff Class Members had no knowledge that Defendants were engaged in the wrongdoing alleged herein. Because of the fraudulent acts of concealment of wrongdoing by the Defendants, Plaintiffs and the Plaintiff Class Members could not have reasonably discovered the wrongdoing at any time.

## COUNT I

### VICARIOUS LIABILITY
### (Against Defendant Knauf Gips)

37.     Plaintiffs, GREG & MEREDITH DESCHER and PENNY PARKER, individually and on behalf of all others similarly situated, repeat, reiterate and reallege the preceding paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

38.     This is an action for vicarious liability against Defendant, Knauf Gips, for the negligent and wrongful acts of its actual and/or apparent agent, Defendant, Knauf Tianjin.

39.     Defendant, Knauf Gips, established Defendant, Knauf Tianjin, in China and at all times material, exercised strict control over Defendant, Knauf Tianjin's, operations in accordance with the requirements of Defendant, Knauf Gips', headquarters in Germany. Defendant Knauf Gips is, and at all times material was, responsible for implementing and supervising the quality control measures to be used by Defendant Knauf Tianjin.

40.     By establishing Defendant, Knauf Tianjin in China, and by exercising strict control over Defendant, Knauf Tianjin's, conduct and operations, Defendant, Knauf Gips, acknowledged that Defendant, Knauf Tianjin, would act on its behalf as its actual and/or apparent agent.

41.     Defendant, Knauf Tianjin, accepted the undertaking to act of Defendant, Knauf Gips', behalf.

42.     Upon information and belief, Defendant, Knauf Gips, supervises, monitors, and controls Defendant, Knauf Tianjin's, daily conduct and operations, including the manufacturing, distribution, marketing and sale of Defendant, Knauf Tianjin's, drywall products. Furthermore, upon information and belief, Defendant, Knauf Gips, is responsible for establishing, implementing, supervising and maintaining the quality control mechanisms utilized by Defendant, Knauf Tianjin.

43.     As such, Defendant, Knauf Gips, is vicariously liable for all of the damages caused by the negligent and wrongful conduct of its actual and/or apparent agent, Defendant, Knauf Tianjin.

44.     As a result of Defendants, Knauf Gips', and/or Knauf Tianjin's wrongful conduct, Plaintiffs and the Plaintiff Class Members have suffered and will continue to suffer damages.  As a result of the foregoing acts and omissions, Plaintiffs and the Plaintiff Class Members require

and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs and the Plaintiff Class Members are informed and believe, and further allege, that Plaintiffs and the Plaintiff Class Members will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention, and services.

## COUNT II

### NEGLIGENCE AND NEGLIGENCE *PER SE*
### (Against Defendants Knauf Gips and Knauf Tianjin)

45.   Plaintiffs, GREG & MEREDITH DESCHER and PENNY PARKER, individually and on behalf of all others similarly situated, repeat, reiterate and reallege the preceding paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

46.   Defendants, Knauf Gips and Knauf Tianjin, had a duty to exercise reasonable care in manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling drywall the Defendants placed into the stream of commerce, including a duty to assure that the product would perform as intended and would not cause did not cause damage as described herein.

47.   Defendants, Knauf Gips and Knauf Tianjin, breached their duty by failing to exercise ordinary care in the manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling drywall Defendants placed into the stream of commerce in that Defendants knew or should have know that the product was defective, did not function as intended and/or created a high risk of unreasonable, dangerous side effects, including, but not limited to, corrosion to HVAC coils and refrigerator units, wires, tubes and pipes, and caused allergic reactions, coughing, sinus and throat infection, eye irritation, respiratory problems and other health concerns.

48. The negligence of the Defendants, their agents, servants, and/or employees, included, but was not limited to, the following acts and/or omissions:

a.      manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling drywall without adequately testing it;

b.      negligently failing to adequately and correctly warn the Plaintiff and Plaintiff Class Members and the public, of the dangers of Defendants' drywall;

c.      negligently failing to recall or otherwise notify users at the earliest date that it became known that said product was, in fact, dangerous and defective;

d.      negligently advertising and recommending the use of the aforesaid without sufficient knowledge as to its manufacturing defect and dangerous propensities;

e.      negligently representing that Defendants' drywall was safe for its intended purpose when, in fact, its safety is questionable;

f.      negligently manufacturing drywall in a manner which was dangerous to its users;

g.      improperly concealing and/or misrepresenting information from the Plaintiff and Plaintiff Class Members and/or the public, concerning the severity of risks and dangers of Defendants' drywall and/or the manufacturing defect.

49. Defendants were negligent in the manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling of Defendants' drywall in that they:

a.      failed to use due care in manufacturing their drywall so as to avoid the aforementioned risks when the drywall was used for its intended purpose;

b.      failing to conduct adequate testing to determine the safety of their drywall; and

c.      failing to warn Plaintiffs and Plaintiff Class Members, prior to actively encouraging the sale of their drywall either directly or indirectly, orally or in writing, about the defective nature of the product; and were otherwise negligent.

Upon information and belief, despite the fact that Defendants knew or should have known that their drywall caused unreasonably dangerous side effects due to its manufacturing defect, Defendants continued to manufacture, process, distribute, deliver, supply, market and/or sell drywall to the Plaintiffs, the Plaintiff Class Members and/or the consuming public.

50. Defendants knew or should have known that consumers such as Plaintiffs and the Plaintiff Class Members would foreseeably suffer damage and injury, both physical and economic, and/or be at an increased risk of suffering damage and injury as a result of Defendants' failure to exercise ordinary care, as well as Defendants' negligent manufacturing process, as set forth herein.

50. Defendants' actions and/or inactions, as set forth herein, by virtue of violating statutes, ordinances and/or rules and/or regulations, constitutes negligence per se.

51. Defendants knew or should have known that homeowners such as the Plaintiffs would foreseeably suffer injury, and/or be at increased risk of suffering injury, including personal injuries and financial harm, as a result of Defendants' failure to exercise ordinary care, as well as Defendants' negligent manufacturing process, as set forth above.

52. Defendants' negligence was the proximate cause of Plaintiffs' and Plaintiff Class Members' damages, injuries, harm and economic loss which they suffered and will continue to suffer.

53. By reason of the foregoing, Plaintiffs and the Plaintiff Class Members experienced and/or are at risk of experiencing serious and dangerous side effects, as well as have incurred financial damage and injury.

54. As a result of the foregoing acts and omissions, Plaintiffs and the Plaintiff Class Members require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs and the Plaintiff Class Members are informed and believe, and further allege,

that Plaintiff and the Plaintiff Class Members will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention, and services.

**COUNT III**

**STRICT PRODUCTS LIABILITY**
**(Against Defendant Knauf Gips and Knauf Tianjin)**

55.  Plaintiffs, GREG & MEREDITH DESCHER, individually and on behalf of all others similarly situated, repeat, reiterate and reallege the preceding paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

56. At all times herein mentioned, Defendants manufactured, processed, distributed, delivered, supplied, inspected, marketed and/or sold drywall used in the construction of Plaintiffs' and the Plaintiff Class Members' homes.

57. Defendants' drywall was expected to, and did, reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition which it was manufactured, processed, distributed, delivered, supplied, inspected and/or sold by the Defendants.

58. At those times, the Defendants' drywall was in an unsafe, defective, and inherently dangerous condition which was unreasonably dangerous to homes and, in particular, Plaintiffs' home and the homes of the Plaintiff Class Members.

59. Defendants' drywall were so defective in design or formulation or manufacture that when it left Defendants' hands, the foreseeable risks exceeded the benefits associated with the design, formulation or manufacture of Defendants' drywall.

60. At all times herein mentioned, Defendants' drywall was in a defective condition and unsafe, and Defendants knew, had reason to know, or should have known that said product was defective and unsafe, especially when used in the form and manner as provided by Defendants.

16

61. Defendants knew, or should have known, that at all times herein mentioned Defendants' drywall was/is inherently dangerous and unsafe.

62. At the time of use of Defendants' drywall by Plaintiffs, Plaintiffs and Members of the Plaintiff Class utilized the drywall for the purposes and manner normally intended.

63. Defendants had a duty to create a product that was not unreasonably dangerous for its normal, intended use.

64. Defendants' drywall was manufactured, processed, distributed, delivered, supplied, inspected, marketed and/or sold in a defective condition by Defendants and was unreasonably dangerous to its intended users, including Plaintiffs and members of the Plaintiff Class.

65. Defendants manufactured, processed, distributed, delivered, supplied, inspected, marketed and/or sold a defective product which created an unreasonable risk to the Plaintiffs' home and the homes of the Plaintiff Class Members as well as to the health of Plaintiffs and Members of the Plaintiff Class. Defendants are, therefore, strictly liable for the damages and injuries sustained by Plaintiffs and the Plaintiff Class Members.

66. Neither the Plaintiffs nor the Mmbers of the Plaintiff Class, acting as a reasonably prudent person, could discover that Defendants' drywall was defective as herein mentioned or perceive its danger.

67. By reason of the foregoing, the Defendants are strictly liable in tort to the Plaintiffs and Members of the Plaintiff Class for the manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling of a defective product, Defendants' drywall.

68. Defendants' defective design, manufacturing defect, and inadequate warnings of the dangers associated with Defendants' drywall were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

69. Said defects in Defendants' drywall were a substantial factor in causing Plaintiffs' and Plaintiff Class Members' injuries and/or placing Plaintiffs and Members of the Plaintiff Class at increased risk of damage and/or harm.

70. As a direct and proximate result of the defective condition of Defendants' drywall as manufactured and sold by Defendants, Plaintiffs and Members of the Plaintiff Class suffered, and will continue to suffer, damages.

71. By reason of the foregoing, Plaintiffs and the Plaintiff Class Members experienced, and/or are at risk of experiencing, serious and dangerous side effects, as well as have incurred financial damage and injury.

72. As a result of the foregoing acts and omissions, Plaintiffs and the Plaintiff Class Members require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs and the Plaintiff Class Members are informed and believe, and further allege, that Plaintiffs and the Plaintiff Class Members will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention, and services.

## COUNT IV

### FRAUDULENT MISREPRESENTATION
### (Against Defendants Knauf Gips and Knauf Tianjin)

73.    Plaintiffs, GREG & MEREDITH DESCHER and PENNY PARKER, individually and on behalf of all others similarly situated, repeat, reiterate and reallege the preceding paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

74.     Defendants falsely and fraudulently represented to Plaintiffs, the Plaintiff Class Members and/or the consuming public in general that Defendants' drywall had been tested and was found to be safe and/or effective for use.

75.     That representation made by Defendants was, in fact, false.

76.     When said representations were made by Defendants, upon information and belief, they knew those representations to be false and they willfully, wantonly, and recklessly disregarded whether the representations were true.

77.     These representations were made by Defendants with the intent of defrauding and deceiving the Plaintiffs, the Plaintiff Class Members and/or the consuming public, all of which evinced reckless, willful, indifference to the health, safety and welfare of the Plaintiffs' and Plaintiff Class Members herein.

78.     At the time the aforesaid representations were made by the Defendants and, at the time the Plaintiffs and Plaintiff Class Members, Defendants' drywall, the Plaintiffs and Plaintiff Class Members were unaware of the falsity of said representations and reasonably believed them to be true.

79.     In reliance upon said representations, the Plaintiffs' and Plaintiff Class Members' homes were built using Defendants' drywall thereby sustaining damage and injury and/or being at an increased risk of sustaining damage and injury in the future.

80.     Said Defendants knew, and were aware, or should have been aware, that Defendants' drywall had not been sufficiently tested, was defectively manufactured and/or lacked adequate and/or sufficient warnings.

81.     Defendants knew, or should have known, that Defendants' drywall had a potential to, could, and would cause severe damage and injury to homeowners.

82.     Defendants brought Defendants' drywall to the market and acted fraudulently, wantonly, and maliciously to the detriment of the Plaintiffs and the Plaintiff Class Members.

83.     By reason of the foregoing, Plaintiffs and the Plaintiff Class Members experienced, and/or are at risk of experiencing, financial damage and injury.

84.     As a result of the foregoing acts and omissions, Plaintiffs and the Plaintiff Class Members require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs and the Plaintiff Class Members are informed and believe, and further allege, that Plaintiffs and the Plaintiff Class Members will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention, and services.

## COUNT V

## FRAUDULENT CONCEALMENT

### (Against Defendants Knauf Gips and Knauf Tianjin)

85.   Plaintiffs, GREG & MEREDITH DESCHER and PENNY PARKER, individually and on behalf of all others similarly situated, repeat, reiterate and reallege the preceding paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

86.   At all times material hereto, Defendants misrepresented the safety of Defendants' drywall.

87.   Defendants knew, or were reckless in not knowing, that its representations were false.

88.   Defendants fraudulently concealed, and/or intentionally omitted, the fact that Defendants' drywall caused corrosion to air-conditioning and refrigerator units, electrical wires

and copper tubes, and caused allergic reactions, coughing, sinus and throat infection, eye irritation, breathing hazards, and other health concerns.

89. Defendants fraudulently concealed, and/or intentionally omitted, the fact that Defendants were aware of complaints regarding defects in Defendants' drywall and did nothing.

90. Defendants fraudulently concealed and/or intentionally omitted the fact that Defendants' drywall was negligently manufactured.

91. Defendants were under a duty to disclose to Plaintiffs and the Plaintiff Class Members, the aforementioned as it pertains to Defendants' drywall.

92. Defendants' concealment and omissions of material facts concerning, *inter alia*, the negligent manufacture of Defendants' drywall was made purposefully, willfully, wantonly, and/or recklessly to mislead Plaintiffs, the Plaintiff Class Members and/or the consuming public into reliance and continued use of Defendants' drywall.

93. Defendants' concealment and omissions of material facts concerning, *inter alia*, the negligent manufacture of Defendants' drywall was made purposefully, willfully, wantonly, and/or recklessly to mislead Plaintiffs, the Plaintiff Class Members and/or the consuming public into reliance and continued use of Defendants' drywall.

94. Defendants knew that Plaintiffs and the Plaintiff Class Members and/or the consuming public, had no way to determine the truth behind Defendants' concealment and omissions and that these included material omissions of facts surrounding Defendants' drywall as alleged herein.

95. Plaintiffs, the Plaintiff Class Members and/or the consuming public, reasonably relied on facts revealed which negligently, fraudulently and/or purposefully did not include facts that were concealed and/or omitted by Defendants.

96.   As a result of the foregoing acts and omissions, Plaintiffs and the Plaintiff Class Members require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs and the Plaintiff Class Members are informed and believe, and further allege, that Plaintiffs and the Plaintiff Class Members will in the future be required to pay for additional repairs and/or replacement costs, and/or medical, care, attention, and services.

## COUNT VI

## VIOLATION OF THE MISSISSIPPI CONSUMER
## PROTECTION LAWS
## (Against Defendants Knauf Gips and Knauf Tianjin)

97.   Plaintiffs, GREG & MEREDITH DESCHER and PENNY PARKER, individually and on behalf of all others similarly situated, repeat, reiterate and reallege the preceding paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

98. This action is brought to secure redress for the unlawful, deceptive and unfair trade practices, perpetrated by Defendants, Knauf Gips, and Knauf Tianjin.

99. Defendants, Knauf Gip's and Knauf Tianjin's, actions and/or omissions as described herein violate Mississippi law, which was enacted to protect the consuming public from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

100.   Specifically, Defendants, Knauf Gips and Knauf Tianjin, misrepresented and omitted material information regarding their drywall by failing to disclose known risks.

101.   Defendants, Knauf Gip's, and Knauf Tianjin's, misrepresentations and concealment of material facts constitute unconscionable commercial practices, deception, fraud, false pretenses, misrepresentation, and/or the knowing concealment, suppression, or omission of

materials facts with the intent that others rely on such concealment, suppression, or omission in connection with the sale and use of Defendants' drywall in violation of Mississippi law.

102.   Defendants, Knauf Gips and Knauf Tianjin, violated Mississippi law by knowingly and falsely representing that Defendants' drywall was fit to be used for the purpose for which they were intended, when Defendants knew it was deceptive, dangerous, ineffective, unsafe and by other acts alleged herein.

103.   Defendants, Knauf Gips and Knauf Tianjin, engaged in the deceptive acts and practices alleged herein in order to sell Defendants' drywall to the public, including Plaintiffs and the Plaintiff Class Members.

104.   Said acts and practices on the part of Defendants, Knauf Gips and Knauf Tianjin, were and are illegal and unlawful pursuant to Mississippi law.

105.   As a direct and proximate result of Defendants, Knauf Gip's, and Knauf Tianjin's, violations of Mississippi law, Plaintiffs and the Plaintiff Class Members have suffered damages. Plaintiffs and the Plaintiff Class Members are entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorney's fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, GREG & MEREDITH DESCHER and PENNY PARKER, and Plaintiff Class Members demand judgment against the Defendants, jointly and severally, as follows:

a.   An Order certifying the Class, appointing Plaintiffs, GREG & MEREDITH DESCHER and PENNY PARKER, as Class Representatives and appointing LUCKEY & MULLINS, PLLC,  and PENDLEY, BAUDIN & COFFIN, LLP, as counsel to the Class;

b.   Equitable, injunctive, and declaratory relief;

c.   Damages in an amount to be determined at trial;

d.      Pre-judgment and post-judgment interest at the maximum rate allowable at law;

e.      Treble, exemplary, and/or punitive damages in an amount to be determined at trial;

f.      The costs and disbursements incurred by Plaintiffs and Plaintiff Class Members in connection with this action, including reasonable attorneys' fees;

g.      All statutory damages;

h.      Disgorgement of Defendants' profits from the sale of drywall;

i.      Reimbursement for all costs and expenses incurred in the repair of any purchase price paid, including, but not limited to, insurance co-payments, interest on these amounts from the date of purchase, attorneys' fees and costs, non-pecuniary damages, as well as any other legal or equitable relief to which Plaintiffs may be entitled;

j.      Such other and further relief under all applicable state and federal law and any other relief the Court deems just and appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiffs, GREG & MEREDITH DESCHER and PENNY PARKER, individually and on behalf of the Plaintiff Class Members, hereby demands a trial by jury as to all issues so triable.


RESPECTFULLY SUBMITTED this, the 20th day of June, 2018.


GREG & MEREDITH DESCHER and
PENNY PARKER, Individually and
on Behalf of Others Similarly Situated, Plaintiffs


By: _____ /s/ Stephen W. Mullins _____
         STEPHEN W. MULLINS

24

*Attorneys for Plaintiffs*

STEPHEN W. MULLINS (MS Bar No. 9772)
**Luckey & Mullins, PLLC**
1629 Government Street  (39564)
Post Office Box 990
Ocean Springs, MS  39566
Telephone: 228-875-3175
Facsimile: 228-872-4719
Email:  smullins@luckeyandmullins.com

OF COUNSEL:

NICHOLAS ROCKFORTE (LA Bar No. 31305)
**Pendley, Baudin & Coffin, L.L.P.**
P.O. Drawer 71
Plaquemine, Louisiana 70765-0071
Tele: 225-687-6396
Fax:  225-687-6398
Email:  nrockforte@pbclawfirm.com