**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE:  CHINESE-MANUFACTURED | : | MDL NO. 2047 |
| DRYWALL PRODUCTS LIABILITY | : | SECTION: L |
| LITIGATION | : | JUDGE FALLON |
|  | : | MAG. JUDGE WILKINSON |
|  | : |  |
| THIS DOCUMENT RELATES TO: | : |  |
| *ALL CASES* | : |  |
|  | : |  |

**KRUPNICK CAMPBELL MALONE ET AL.'S REPLY MEMORANDUM TO RESPONSE OF RUSS M. HERMAN TO YANCE LAW FIRM'S MOTION TO IMMEDIATELY TRANSFER ATTORNEY FEE QUALIFIED SETTLEMENT FUND TO A DIFFERENT DEPOSITORY OR BACK INTO THE COURT REGISTRY**

The undersigned law firm, Krupnick Campbell Malone, et al. (hereinafter "KCM Firm") respectfully, hereby files a brief Reply to Mr. Herman's Response (D.E. 21429 & 21432) to Yance Law Firm's Motion to Immediately Transfer Attorney Fee Qualified Settlement Fund To A Different Depository or Back Into the Court Registry (D.E. 21338 and 21338-1).

The undersigned filed a limited joinder to Mr. Yance's motion. The undersigned focused solely on the investment strategy and instructions involving the attorneys' fee fund managed by Esquire Bank, including whether or not Esquire Bank's complied with the Court's QSF Orders.[1]

However, the suggestion that this QSF fund of attorneys' fees needed to have "daily liquidity" (D.E. 21429-4, p. 4) is, respectfully, out of alignment with the predictable and actual course of events involving the fee dispute at issue.  Requiring daily liquidity would

---

[1] After reviewing statements from Esquire Bank provided by Mr. Woody, the undersigned did have an additional inquiry.  It appears that in 2016 there was $5,000,000 held in a money market account at Esquire Bank, earning .05% (Banner Fee).  Then, in 2017, there was between $5,000,000 and $12,000,000 held in a money market account at Esquire Bank earning .05% (Knauf QSF). The Undersigned requested an explanation as to those particular bank statements which seem to evidence a money market deposit account at Esquire Bank, as opposed to what was required by the Court's QSF Orders, in the event there was a misunderstanding. See Exhibit 1. To date, an explanation has not been forthcoming.

unnecessarily result in a very low yield.  Setting such a liquidity requirement is curious.

From the outset of the Fee Committee work, it was clear, even by the terms of PTO 28, fee allocation recommendations were going to follow a defined process.  The length of time to resolve the fee issues was predictably, given the limited fee fund and spirited positions of some counsel, well in excess of the expiration of a three-month or six-month Treasury Bill.  As the process continued and objections to the initial proposed allocation between common benefit and individual retained attorneys became apparent, under no reasonable analysis was daily liquidity, and resulting low yield, necessary.  It is now nearly five years since the QSF orders were entered.

Even today, six-month Treasury Bills rates are over 2%.  Sadly, the Fee Committee work is unlikely to catalyze an amicable resolution.  Recriminations and threats of appeals (or actual appeals) continue and will impair disbursement of funds in any conceivable definition of near-term.  While short term T-bill rates certainly have fluctuated over the years, even .5 percent, as in 2016, would have generated an additional $1,000,000.  This past month, the six-month short-term Federal T-bill rates were over 2.0%, which is approximately $4,000,000 in interest annualized.[2]

Dated:  July 5, 2018.

          Respectfully submitted,

          /s *Michael J. Ryan*_____
          Michael J. Ryan, Esquire
          Bar No. 975990

---

[2] According to Mr. Herman's Response to Mr. Yance's motion, it does appear Esquire Bank provided Mr. Herman a loan against future receivables.  (D.E. 21429-2, p. 20; 21429-4, p.3).  While the terms of this loan were not disclosed, it is represented that the terms were consistent with market rates and has been reviewed by regulators. To close the circle on this issue, it would be advisable that Mr. Herman provide those terms under seal to the Court, including whether or not the future receivable monetized was the attorneys' fee potentially to be received by Mr. Herman in this fee dispute, which has been on-going far longer than necessary.

Krupnick Campbell Malone Buser Slama
Hancock Liberman, P.A.
12 S.E. 7 Street, Suite 801
Fort Lauderdale, FL  33301
Phone (954) 763-8181; Fax (954) 763-8292
pleadings-MJR@krupnicklaw.com
mryan@krupnicklaw.com
*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing KRUPNICK CAMPBELL MALONE ET AL.'S REPLY TO RUSS M. HERMAN's RESPONSE TO YANCE LAW FIRM'S MOTION TO IMMEDIATELY TRANSFER ATTORNEY FEE QUALIFIED SETTLEMENT FUND TO A DIFFERENT DEPOSITORY OR BACK INTO THE COURT REGISTRY has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to File & ServeXpress f/k/a LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047. Dated:   July 5, 2018

/s *Michael J. Ryan*
Michael J. Ryan, Esquire
Bar No. 975990
Krupnick Campbell Malone Buser Slama
Hancock Liberman  P.A.
12 S.E. 7 Street, Suite 801
Fort Lauderdale, FL  33301
Phone (954) 763-8181;Fax (954) 763-8292
pleadings-MJR@krupnicklaw.com
mryan@krupnicklaw.com
*Attorneys for Plaintiffs*