**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L JUDGE FALLON MAG. JUDGE WILKINSON |
| **THIS DOCUMENT RELATES TO:** *Abel, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.,* **Case No. 11-cv-080 (E.D. La.)** *Almeroth, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.,* **Case No. 12-cv-498 (E.D. La.)** *Amato, et al. v. Liberty Mutual Insurance Company,* **Case No. 10-cv-932 (E.D. La.)** *Germano, et al. v. Taishan Gypsum Co., Ltd., et al.,* **Case No. 09-cv-6687 (E.D. La.)** *Gross, et al. v. Knauf Gips, KG, et al.,* **Case No. 09-cv-6690 (E.D. La.)** *Haya, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.,* **Case No. 11-cv-1077 (E.D. La.)** *Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al.,* **Case No. 10-cv-361 (E.D. La.)** | |

**CLASS COUNSEL'S MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION FOR AN ORDER GRANTING FINAL**
**APPROVAL OF THE SETTLEMENT OF ASSIGNED CLAIMS IN MDL NO. 2047 ON**
**BEHALF OF THE PORTER-BLAINE/VENTURE SUPPLY CLASS REGARDING**
**CLAIMS ASSIGNED TO THE CLASS BY THE PORTER-BLAINE/VENTURE SUPPLY**
**PARTICIPATING DEFENDANTS AND PARTICIPATING INSURERS AGAINST**
**TAISHAN GYPSUM CO., LTD. AND TAIAN TAISHAN PLASTERBOARD CO., LTD.**

## TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES .............................................................................................iii

I.     INTRODUCTION ................................................................................................ 2

II.    STATEMENT OF FACTS ................................................................................... 3

      A.     The Chinese Drywall Litigation.................................................................. 3

             1.     Background. .................................................................................... 3

             2.     Litigating the Chinese Drywall Cases Has Been Arduous. ........................ 5

             3.     The Virginia Settlements. ............................................................... 8

             4.     The Porter-Blaine/Venture Supply Settlement. ........................................ 9

             5.     Litigation and Settlement of the Assigned Claims. ................................. 10

             6.     Preliminary Approval of the Assigned Claims Settlement. ...................... 12

      B.     The Terms of the Assigned Claims Settlement...................................................... 13

             1.     Settlement Funds.................................................................................... 13

             2.     Limited Release (Class Members Claims Remaining). ........................... 13

             3.     Bar Order. .............................................................................................. 14

             4.     Allocation of the Settlement Funds.......................................................... 14

             5.     Attorneys' Fees. ..................................................................................... 15

             6.     Notice. ................................................................................................... 15

             7.     Objections. ............................................................................................. 16

             8.     Fairness Hearing. ................................................................................... 16

III.    ARGUMENT ..................................................................................................... 17

      A.     Settlements of Complex Class Actions Are Favored........................................... 17

B.   Standards for Approval of Class Settlements. ...................................................... 18

C.   The Reed Factors Support Granting Final Approval of the
     Assigned Claims Settlement. ................................................................................ 21

     1.   There is No Existence of Fraud or Collusion Behind the
          Assigned Claims Settlement. .................................................................. 21

     2.   The Complexity, Expense, and Likely Duration of the Litigation
          Weigh in Favor of Approval of the Assigned Claims Settlement. ........... 23

     3.   The Stage of the Proceedings and the Amount of Discovery
          Completed Support Approval of the Assigned Claims Settlement........... 24

     4.   The Probability of Plaintiffs' Success on the Merits. .............................. 25

     5.   The Range of Possible Recovery. ............................................................ 27

     6.   The Opinion of Class Counsel Supports Approval of Settlement. ........... 28

D.   Notice to the Class Complied with this Court's Order and Due Process.............. 29

E.   The Court Has Already Approved the Revised Proposed Plan of Allocation. ...... 29

IV.   CONCLUSION................................................................................................................ 30

## TABLE OF AUTHORITIES

<u>**Cases**</u>

*Airline Stewards & Stewardesses Ass'n Local 550 v. Trans World Airlines, Inc.,*
    630 F.2d 1164 (7th Cir. 1980) .......................................................................... 17

*Ayers v. Thompson,*
    358 F.3d 356 (5th Cir. 2004) ............................................................................ 24

*Beaulieu v. EQ Indus. Servs., Inc.,*
    2009 WL 2208131 (E.D.N.C. July 22, 2009) .................................................. 23

*Bennett v. Behring,*
    737 F.2d 982 (11th Cir. 1984) .......................................................................... 18

*Braud v. Transport Service Co. of Illinois,*
    2010 WL 3283398 (E.D. La. Aug. 17, 2010) ................................................... 17

*Camp v. The Progressive Group,*
    2004 WL 2149079 (E.D. La. Sept. 23, 2004) ............................................. 19, 21

*City of Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2nd Cir. 1974) ........................................................................... 20

*Cotton v. Hinton,*
    559 F.2d 1326 (5th Cir. 1977) ............................................................... 17, 18, 20

*DeHoyos v. Allstate Corp.,*
    240 F.R.D. 269 (W.D. Tex. 2007) ............................................................... 25, 26

*Eisen v. Carlisle & Jacqueline,*
    417 U.S. 156 (1974) .......................................................................................... 29

*Georgevich v. Strauss,*
    96 F.R.D. 192 (M.D. Pa. 1982) ........................................................................ 19

*Grunin v. Int'l House of Pancakes,*
    513 F.2d 114 (8th Cir.) ..................................................................................... 20

*In re Chevron U.S.A., Inc.,*
    109 F.3d 1016 (5th Cir. 1997) ............................................................................ 7

*In re Chicken Antitrust Litig. Am. Poultry,*
    669 F.2d 228 (5th Cir. 1982) ............................................................................ 18

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.,*
    626 F. Supp. 2d 1346 (J.P.M.L. 2009) ............................................................... 4

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
706 F. Supp. 2d 655 (E.D. La. 2010) ............................................................ 4

*In re Combustion, Inc.*,
968 F. Supp. 1116 (W.D. La. 1997) .......................................................... 19

*In re Corrugated Container Antitrust Litigation*,
643 F.2d 195 (5th Cir. 1981).......................................................... 18, 21

*In re Educ. Testing Serv. Praxis Principles of Learning and Teaching, Grades 7-12 Litig.*,
447 F. Supp. 2d 612 (E.D. La. 2006) ....................................................... 24, 25

*In re Heartland Payment Systems, Inc. Customer Data Sec. Breach Litigation*,
851 F. Supp. 2d 1040 (S.D. Tex. 2012) ....................................................... 27

*In re Nissan Motor Corp. Antitrust Litig.*,
552 F.2d 1088 (5th Cir. 1977)......................................................... 29

*In re Oil Spill by Oil Rig Deepwater Horizon*,
295 F.R.D. 112 (E.D. La. 2013) .................................................. 23, 24, 26

*In re Shell Oil Refinery*,
155 F.R.D. 552 (E.D. La. 1993)......................................................... 23, 28

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*,
396 F.3d 922 (8th Cir. 2005)......................................................... 19

*Maher v. Zapata Corp.*,
714 F.2d 436 (5th Cir. 1983).......................................... 17, 18, 20, 27

*Miller v. Republic Nat'l Life Ins. Co.*,
559 F.2d 426 (5th Cir. 1977)......................................................... 18

*Newby v. Enron Corp.*,
394 F.3d 296 (5th Cir. 2004) ....................................................... 16

*Oppenlander v. Standard Oil Co.*,
64 F.R.D. 597 (D. Colo. 1974).......................................................... 29

*Parker v. Anderson*,
667 F.2d 1204 (5th Cir. 1982)........................................... 16, 18, 21, 25

*Pearson v. Ecological Sci. Corp.*,
559 F.2d 171 (5th Cir. 1975).......................................................... 18

*Pettway v. American Cast Iron Pipe Co.*,
576 F.2d 1157 (5th Cir. 1978)................................................ 18, 21, 28

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ............................................................................ 29

*Reed v. General Motors Corp.*,
    703 F.2d 170 (5th Cir. 1983) ............................................ 18, 21, 26, 28

*Reynolds v. Beneficial Nat'l Bank*,
    288 F.3d 277 (7th Cir. 2002) ............................................................. 19

*Salinas v. Roadway Express, Inc.*,
    802 F.2d 787 (5th Cir. 1986) ............................................................. 24

*Slipchenko v. Brunel Energy, Inc.*,
    2015 WL 338358 (S.D. Tex. Jan. 23, 2015) ...................................... 26

*Turner v. Murphy Oil USA, Inc.*,
    472 F. Supp. 2d 830 (E.D. La. 2007) .......................................... *passim*

*United States Oil & Gas Litig.*,
    967 F.2d 489 (11th Cir. 1992) ........................................................... 18

*United States v. Allegheny-Ludlum Indus., Inc.*,
    517 F.2d 826 (5th Cir. 1975) ............................................................. 17

*United States v. Tex. Educ. Agency*,
    679 F.2d 1104 (5th Cir. 1982) ...................................................... 19, 20

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) ............................................................. 17

*Young v. Katz*,
    447 F.2d 431 (5th Cir. 1971) ............................................................. 18

## Statutes

28 U.S.C. § 1407 ........................................................................................ 4

## Rules

Fed. R. Civ. P. 23 ............................................................................ 8, 16, 21

Fed R. Civ. P. 16 ...................................................................................... 18

## Other Authorities

1 Newberg On Class Actions §§ 1:3, 11.47, 11.50 ............................. 19, 23, 26, 28

Manual For Complex Litigation (Fourth) § 21.61 .............................. 19

Hon. E. Fallon, J. Grabill, R. Wynne, *Bellwether Trials in Multidistrict Litigation*,
   82 TUL. L. REV. 2323 (2008) ................................................................................................ 7


Bruce L. Hay, *The Theory of Fee Regulation in Class Action Settlements*,
   46 AM. U. L. REV. 1429 (1997) ............................................................................................. 22

This Memorandum of Law is submitted by Class Counsel[1] in support of their Motion for Final Approval of the Settlement of Assigned Claims in MDL No. 2047 on Behalf of the Porter-Blaine/Venture Supply Class Regarding Claims Assigned to the Class by the Porter-Blaine/Venture Participating Defendants and Participating Insurers Against Taishan Gypsum Co., Ltd. and Taian Taishan Plasterboard Co., Ltd. (the "Assigned Claims Settlement" or the "Assigned Claims Settlement Agreement").[2]

Class Counsel seek the entry of a Final Approval Order[3]:

(1)     granting final approval of the Assigned Claims Settlement;

(2)     enjoining and barring any and all Class Members from prosecuting any and all Assigned Claims in connection with claims arising out of, or otherwise related to, Chinese Drywall at Affected Properties (this injunction and bar does not bar or enjoin prosecution of any of the Reserved Claims of Class Members);

(3)     finding that the class settlement notice complied with the Court's Order and Due Process; and

(4)     approving distribution of the settlement funds to Eligible Class Members pursuant to the Revised Proposed Plan of Allocation that was previously approved by the Court [Rec. Doc. 16823-8].[4]

---

[1] Plaintiffs' Class Counsel were appointed by the Court to represent the Porter-Blaine/Venture Supply Class [Rec. Doc. 16516].

[2] The Assigned Claims Settlement Agreement is attached hereto as Exhibit A (note: in Exh. B to the Agreement, the instructions for wiring the settlement funds have been inserted and incorporated therein by agreement of the parties). Capitalized terms used in this Memorandum of Law have the same meaning as the same terms used in the Assigned Claims Settlement Agreement and/or the Porter-Blaine/Venture Supply Settlement Agreement [Rec. Doc. 15969-1].

[3] The proposed Final Approval Order is attached hereto as Exhibit B.

[4] The Revised Proposed Plan of Allocation [Rec. Doc. 16823-8] was approved by the Court as part of the final approval of the Porter-Blaine/Venture Supply Settlement [Rec. Doc. 16934, at ¶¶ 41-43]. The

I.      **INTRODUCTION**

The Assigned Claims Settlement is the fulfillment of a component of the Porter-Blaine/Venture Supply Settlement that was finally approved on July 9, 2013.  At that time, the Court certified the Porter-Blaine/Venture Supply Class and granted final approval of a settlement that provided $3,000,000 in cash for the benefit of Class Members.[5]  In addition to the cash benefit, the defendants provided additional consideration through their assignment to the Class of certain Chinese Drywall indemnification claims they had against Taishan[6] in connection with the Affected Properties.[7]  The settlement now before the Court for final approval – the "Assigned Claims Settlement" – is simply a resolution of those assigned indemnification claims with Taishan, which is today providing $1,978,528.40 in a cash settlement for the benefit of Eligible Class Members of the previously approved class.

The $1,978,528.40 settlement is fair, adequate and reasonable particularly in light of the obstacles facing the Class in recovering on these claims.  This Court's prior approval of the

Assigned Claims Settlement provides that allocation of the Settlement Fund will be in accordance with the allocation undertaken in the Porter-Blaine/Venture Supply Settlement.  *See* Assigned Claims Settlement Agreement, ¶ 13.

[5] *See* Porter-Blaine/Venture Supply Settlement Agreement [Rec. Doc. 15969-6]; Final Approval Order [Rec. Doc. 16934] at 24.

[6] Taishan is defined as: Taishan Gypsum Company Ltd. f/k/a/ Shandong Taihe Dongxin Co., Ltd. and Taishan Gypsum Co., Ltd., and Taian Taishan Plasterboard Co., Ltd., and their respective past, present, and future officers, directors, board members, members, agents, attorneys, consultants, claim administrators, managers, employees, partners, parent corporations, sister corporations, subsidiaries, related entities, divisions, heirs, associates, stockholders, shareholders, retail dealers, distributors, insurers, reinsurers, and all of their predecessors, successors, assigns, legatees, legal representatives, and any other stakeholders of each of the foregoing, including Beijing New Building Materials Public Limited Company ("BNBM PLC"); Beijing New Building Materials (Group) Co., Ltd. ("BNBM Group"); and China National Building Materials Co., Ltd. ("CNBM"); and China National Building Materials Group ("CNBM Group").  Assigned Claims Settlement Agreement, § 1.1.2.

[7] *See* Section 6 of the Porter-Blaine/Venture Supply Settlement [Rec. Doc. 15969-6].

Porter-Blaine/Venture Supply Settlement, which incorporated many of the same issues that impact this Assigned Claims Settlement, lends further credence to the fairness of the settlement here.  This settlement was vigorously negotiated at arms' length by experienced counsel and the result is a settlement fund that provides additional relief to Eligible Class Members for the losses they have incurred.  Further, the Assigned Claims Settlement provides that relief without impairing Class Members' rights to continue pursuing their own claims (*i.e.*, the "Reserved Claims") against Taishan for remediation and other damages.

The Assigned Claims Settlement is more than fair, adequate and reasonable.  It is, in fact, a win for Class Members and should be finally approved by the Court.

## II.    STATEMENT OF FACTS

### A.    The Chinese Drywall Litigation.

A more thorough background of the *Chinese Drywall* Litigation is set forth in the Memorandum of Law in Support of Final Approval of the Porter-Blaine/Venture Supply Settlement.[8]  A succinct summary is included below for the Court's reference.

### 1.    *Background.*

The *Chinese Drywall* Litigation arose out of thousands of individual and class action lawsuits filed in state and federal courts throughout the country on behalf of Plaintiffs seeking compensation for property damage and personal injuries allegedly caused by Chinese Drywall.  Chinese Drywall was installed in tens of thousands of homes, commercial buildings and other structures in the United States following the devastation caused by Hurricanes Katrina and Rita at the end of the summer of 2005.  In the aftermath of these disasters and in conjunction with a

---

[8] *See* Rec. Doc. 16806-1, at 3-10.

housing boom, there was a critical shortage of drywall in this country, which led to the importation of millions of square feet of Chinese Drywall beginning in the fall of 2005 through 2008.[9]

Having entered the stream of commerce in the U.S., Chinese Drywall changed hands from its manufacturers to importers, distributors, suppliers, developers, builders, and/or installers, and was ultimately installed in thousands of properties, primarily in Florida, Louisiana, Virginia, Alabama, Mississippi, Texas, Tennessee, Georgia, North Carolina, Illinois, and California.  Once installed, residents and owners began to notice unpleasant odors and corrosion to anything made of metal.[10]  Plaintiffs filed claims in jurisdictions across the country alleging that Chinese Drywall emits sulfur gases that cause extensive damage to property and also, in some cases, physical ailments.[11]

On June 15, 2009, the Judicial Panel for Multidistrict Litigation transferred all federal actions alleging damages from Chinese Drywall to the Eastern District of Louisiana for coordinated discovery and consolidated pretrial proceedings in MDL 2047 pursuant to 28 U.S.C. § 1407.  *See In re Chinese-Manufactured Drywall Prod. Liab. Litig*., 626 F. Supp. 2d 1346 (J.P.M.L. 2009).[12]  More than 1,650 Defendants were brought into the litigation, including the foreign manufacturers of Chinese Drywall, their related entities, homebuilders, developers,

---

[9] The Gypsum Association reported that 320 million square feet of Chinese Drywall were imported to the United States between 2005-2007. See Gypsum Association Comments, archived at http://web.archive.org/web/20101216021748/http://gypsum.org/pdf/Gypsum_Association_Comments_on _Chinese_Wallboard_Issue.pdf.

[10] *See In re Chinese-Manufactured Drywall Prods. Liab. Litig. (German*o), 706 F. Supp. 2d 655, 663 (E.D. La. 2010) (Findings of Fact and Conclusions of Law).

[11] *Id*. at 659, 664-66, 710.

[12] Rec. Doc. No. 1.

installers, retailers, realtors, brokers, suppliers, importers, exporters, and distributors of Chinese

Drywall, as well as their insurers and the insurers of homeowners.  Discovery has revealed that

many of the Affected Properties that are the subject of the litigation contain or contained drywall

manufactured by Taishan.

2.  *Litigating the Chinese Drywall Cases Has Been Arduous.*

Since the formation of this MDL, thousands of claimants have participated in one or

more of the PSC's Omnibus class action complaints.[13]  The Court has held regular monthly

status conferences attended by hundreds of counsel, and it has entered numerous pretrial orders,

orders, and minute entries.[14]  To date, more than 21,400 entries have been recorded on the docket

---

[13] *See, e.g., Payton v. Knauf Gips, KG*, No. 09-7628 (E.D. La.) (Omni I, I(A), I(B), I(C)); *Wiltz v. Beijing New Building Materials Public Limited Co.*, No. 10-361 (E.D. La.) (Omni II, II(A), II(B), II(C)); *Gross v. Knauf Gips, KG*, No. 09-6690 (E.D. La.) (original complaint, Omni III, III(A)); *Rogers v. Knauf Gips, KG*, No. 10-362 (E.D. La.) (Omni IV, IV(A), IV(B), IV(C)); *Amato v. Liberty Mutual Ins. Co.*, No. 10-932 (E.D. La.) (Omni V); *Hernandez v. AAA Ins.*, No. 10-3070 (E.D. La.) (Omni VI); *Abel v. Taishan Gypsum Co., Ltd.*, No. 11-080 (E.D. La.) (Omni VII); *Abreu v. Gebrueder Knauf Verwaltungsgesellschaft, KG*, No. 11-252 (E.D. La.) (Omni VIII); *Haya v. Taishan Gypsum Co., Ltd.*, No. 11-1077 (E.D. La.) (Omni IX); *Block v. Gebrueder Knauf Verwaltungsgesellschaft, KG*, No. 11-1363 (E.D. La.) (Omni X); *Benoit v. Lafarge S.A.*, No. 11-1893 (E.D. La.) (Omni XI); *Arndt v. Gebrueder Knauf Verwaltungsgesellschaft, KG*, No. 11-2349 (E.D. La.) (Omni XII); *Almeroth v. Taishan Gypsum Co., Ltd.*, No. 12-0498 (E.D. La.) (Omni XIII); *Cassidy v. Gebrueder Knauf Verwaltungsgesellschaft, KG*, No. 11-3023 (E.D. La.) (Omni XIV); *Amorin v. Taishan Gypsum Co., Ltd.*, No. 11-1672 (E.D. La.) (Omni XV); *Amorin v. Taishan Gypsum Co., Ltd.*, No. 11-1395 (E.D. La.) (Omni XVI); *Amorin v. Taishan Gypsum Co., Ltd.*, No. 11-1673 (E.D. La.) (Omni XVII); *Beane v. Gebrueder Knauf Verwaltungsgesellschaft, KG*, No. 13-609 (E.D. La.) (Omni XVIII); *Amorin v. State-Owned Assets Supervision and Administration Commission of the State Council*, No. 14-1727 (E.D. La.) (Omni XIX); *Brooke v. State-Owned Assets Supervision and Administration Commission of the State Council*, No. 15-4127 (E.D. La.) (Omni XX); *Macon v. Taishan Gypsum Co., Ltd.*, No. 17-1287 (N.D. Ala.) (Omni XXI); *Peoples v. Taishan Gypsum Co., Ltd.*, No. 17-2890 (N.D. Ga.) (Omni XXII); *Polk v. Taishan Gypsum Co., Ltd.*, No. 17-216H50 (S.D. Miss.) (Omni XXIII); *Bright v. Taishan Gypsum Co., Ltd.*, No. 17-0035 (E.D.N.C.) (Omni XXIV); *DeOliveira v. Taishan Gypsum Co., Ltd.*, No. 17-2019 (D.S.C.) (Omni XXV); *Redden v. Taishan Gypsum Co., Ltd.*, No. 17-1146 (W.D. Tenn.) (Omni XXVI); *Mertlitz v. Taishan Gypsum Co., Ltd.*, No. 17-140 (E.D. Tex.) (Omni XXVII); *Bayne v. Taishan Gypsum Co., Ltd.*, No. 17-1286 (N.D. Ala.) (Omni XXVIII); *Abner v. Taishan Gypsum Co., Ltd.*, No. 11-3094 (N.D. Cal.) (Omni XXIX); *Bentz v. Taishan Gypsum Co., Ltd.*, No. 17-2892 (N.D. Ga.) (Omni XXX); *Allen v. Taishan Gypsum Co., Ltd.*, No. 17-217LG (S.D. Miss.) (Omni XXXI); *Lochhead v. Taishan Gypsum Co.*, No. 17-294 (S.D. Tex.) (Omni XXXII); *Stutzman v. Taishan Gypsum Co., Ltd.*, No. 17-1209 (S.D. Ill.) (Omni XXXIII); *Allman v. Taishan Gypsum Co., Ltd.*, No. 17-051 (E.D.N.C.) (Omni XXXIV).

[14] *E.g.*, Minute Entry, Dec. 2, 2010 [Rec. Doc. No. 6525].

in this case.  In overseeing this MDL, the Court has appointed numerous steering committees and liaison counsel for Plaintiffs, homebuilders, insurers, installers, and manufacturers.[15]  The Court also appointed a curator for *pro se* litigants.[16]  Additionally, the Court has corresponded and coordinated with a number of state and federal court jurists who also preside over related Chinese Drywall cases.[17]

The prosecution and coordination of Chinese Drywall claims on behalf of thousands of Plaintiffs in the MDL has been voluminous, expensive and time-consuming including efforts such as: (i) translation and service of process of Omnibus Complaints under the Hague Convention on scores of foreign manufacturing Defendants and their related entities; (ii) pretrial discovery of hundreds of entities in the Chinese Drywall supply chain, including depositions in Frankfurt, London, and Hong Kong, as well as in cities throughout the United States, often requiring the use of multiple interpreters; (iii) establishing a document depository that has logged in more than a million pages of documents received pursuant to production requests, many of which required translation into English; (iv) testing and preserving the drywall in Plaintiffs' homes; (v) preparing and serving requests upon the government agencies under the Freedom of

---

[15] *See, e.g.,* Pretrial Order No. 3 (appointing Plaintiffs' Liaison Counsel, Russ Herman) [Rec. Doc. No. 21]; Pretrial Order No. 4 (appointing Defendants' Liaison Counsel) [Rec. Doc. No. 22]; Amended Pretrial Order No. 7 (appointing Defendants' Steering Committee) [Rec. Doc. No. 152]; Pretrial Order No. 8 (creating the PSC and appointing Lead Counsel for Plaintiffs, Arnold Levin) [Rec. Doc. No. 144-2]; Pretrial Order No. 18 (appointing Homebuilders and Installers Liaison Counsel) [Rec. Doc. No. 414]; Pretrial Order No. 19 (appointing a Plaintiffs' State/Federal Coordination Committee and a Defendants' State/Federal Committee) [Rec. Doc. No. 1871]; Pretrial Order No. 20 (appointing Insurer Steering Committee and Co-Lead Counsel for the First-Party Insurer Subcommittee) [Rec. Doc. No. 2369].

[16] Rec. Doc. No. 11327.

[17] *E.g.,* Transcript of Status Conference at 2:17-3:17, Oct. 14, 2010 (comments of J. Fallon praising "the help of state court judges:" "I've counted on their wisdom, on their suggestions in trying to gather all of the cases and move them forward."); Transcript of Status Conference at 7:5-17, Mar. 23, 2011.

Information Act; (vi) retaining experts in metallurgy, electrical engineering, and failure analysis; (vii) filing motions for class certification in *Germano*, *Payton* (Knauf), *Payton/Vickers*, and *Amorin*; (viii) filing motions for Florida and Louisiana Homeowners classes for damages and/or declaratory relief;[18] (ix) filing numerous motions to intervene, motions to compel, motions for default judgment, motions for summary judgment, and a motion to establish a Plaintiffs' litigation expense fund; (x) filing and litigating motions for class certification in the *Amorin* cases and defeating subsequent efforts to decertify the class; (xi) responding to motions to dismiss for lack of personal jurisdiction; and (xi) attendance at every MDL 2047 status conference and hearing held before the Court.[19]

In the spring of 2010, the PSC prepared ten bellwether cases involving Virginia and Louisiana for trial.[20] After considering the testimony of experts in the fields of corrosion, metallurgy, electrical engineering, power electronics, electrical machinery, and failure analysis concerning the effects of having Chinese drywall installed in Plaintiffs' homes, this Court made numerous findings of fact regarding the appropriate scope of remediation.  The Court found that Chinese drywall "has to be remediated."[21]  These bellwether trials served as a useful tool for all litigants involved in the *Chinese Drywall* Litigation, as well as the Court.[22]  The discovery

---

[18] Rec. Doc. Nos. 3293 (*Germano*), 5567 (*Silva*), 5611 (*Vickers/Payton*), 5612 (*Payton*), 8125 (*Silva*), 8195 (*Vickers/Payton*), 8197 (*Payton*).

[19] *See* 12/2/2010 Minute Entry at 23-25.

[20] *See Germano, et al. v. Taishan Gypsum Co., Ltd., et al*., Case No. 2:09-cv-06687 (E.D. Va. May 11, 2010) (Rec. Doc. No. 3013) (seven cases); *Hernandez v. Knauf Gips, KG, et al*., Case No. 2:09-cv-06050 (E.D. La. May 11, 2010) (Rec. Doc. No. 3012) (one case). Two additional bellwether cases, *Campbell v. KPT, et al*., Case No. 2:09-cv-7628 (E.D. La.) and *Clement v. KPT, et al*., Case No. 2:09-cv-7628 (E.D. La.), were settled on the eve of trial on June 18, 2010.

[21] *Germano*, 706 F. Supp. 2d at 671.

[22] *See* Hon. E. Fallon, J. Grabill, R. Wynne, "Bellwether Trials in Multidistrict Litigation," 82 TUL. L. REV. 2323 (June 2008) (concluding that the use of a bellwether trial is "one of the most innovative and

efforts of the PSC, along with the bellwether trials and several mediations facilitated by the

Court, have proved fruitful.  The PSC succeeded in reaching nine class settlements with more

than 700 Chinese Drywall Defendants.

### 3.     *The Virginia Settlements.*

Among the nine settlements were four Virginia-based settlements,[23] which provided

compensation to persons and entities in the United States, but primarily in Virginia, who were

previously unable to recover against Defendants due to the interpretation of Total Pollution

Exclusions involving insurance policies under Virginia law.  The Chinese Drywall in those cases

is believed to have been primarily, if not exclusively, manufactured by Shandong Taihe Dongxin

Co., Ltd. which, on Sept. 10, 2007, changed its name to Taishan Gypsum Co., Ltd.[24]

All of the claims brought against the Defendants in the four Virginia-based Settlements

were believed to concern Chinese Drywall that was within the legal responsibility of the settling

Defendants who were in the distribution chain downstream from Taishan (or were an insurer of

such an entity).  On July 9, 2013, the Court granted final approval of the four Virginia-based

settlements and, pursuant to Fed. R. Civ. P. 23(a), 23(b)(3) & 23(e), certified the associated

classes.[25]

---

useful techniques for the resolution of complex cases"); *see also In re Chevron U.S.A., Inc*., 109 F.3d
1016, 1019 (5th Cir. 1997).

[23] The four Virginia-based settlements were with Defendants: (1) Nationwide-related insurance
companies and over thirty entities to whom they issued liability insurance policies, (2) Venture Supply,
Porter-Blaine Corporation, and their insurers, the Hanover-related insurance companies (the "Porter-
Blaine/Venture Supply Settlement"); (3) Tobin Trading, Inc., Builders Plaster & Drywall, LLC, JMM
Drywall Co., LLC, and State Farm related insurance companies; and (4) Builders Mutual Insurance
Company and nineteen entities to whom it issued liability insurance policies.  *See* Rec. Doc. 16934.

[24] Findings of Fact & Conclusions of Law, *In Re: Chinese Manufactured Drywall Products Liability
Litigation*, at 8, MDL No. 2047 (filed April 8, 2010) [Rec. Doc. 2380].

[25] *See* Porter-Blaine/Venture Supply Settlement Agreement [Rec. Doc. 15969-6]; Final Approval Order

4.      *The Porter-Blaine/Venture Supply Settlement.*

Among the Virginia-based settlements was the Porter-Blaine/Venture Supply Settlement. As part of that settlement, the settling Defendants agreed to pay $3,000,000 in cash for the benefit of the Porter-Blaine/Venture Supply Class (the "Class Members").[26]  The Porter-Blaine/Venture Supply Settlement resolved all Class Members' claims against the settling Defendants in connection with Affected Properties.  In addition, the Porter-Blaine/Venture Supply Settlement expressly reserved Class Members' claims against Non-Participating Defendants and Non-Participating Insurers (including Taishan).[27]

As part of the Porter-Blaine/Venture Supply Settlement, certain settling Defendants assigned indemnification claims they had against Taishan to the Class.  Specifically, the indemnification claims were those that arose from Chinese Drywall at the Affected Properties.[28] These are the "Assigned Claims" and they are separate and apart from the Class Members' own claims against Taishan for remediation and other damages – which are referred to as the "Reserved Claims."[29]

The $3,000,000 in settlement funds from the Porter-Blaine/Venture Supply Settlement have been distributed to Class Members who were found to be eligible for a claim payment

---

[Rec. Doc. 16934] at 24.  At the same time, the Court also certified the Nationwide Insureds Settlement Class, the Tobin Trading and Installers Settlement Class, and the Builders Mutual Insureds Settlement Class, and approved the corresponding Class Settlements [Rec. Doc. 16934 at 22, 26, 28].

[26] *See* Porter-Blaine/Venture Supply Settlement Agreement [Rec. Doc. 15969-6]; Final Approval Order [Rec. Doc. 16934] at 24.

[27] *See* Porter-Blaine/Venture Supply Settlement [Rec. Doc. 15969-6], § 5.5.

[28] *See id.*, § 6.

[29] *See id.*, §§ 5.5, 6.

pursuant to the Revised Proposed Plan of Allocation.[30]  That Revised Proposed Plan of

Allocation was approved by the Court as fair and equitable.[31]

### 5.   *Litigation and Settlement of the Assigned Claims.*

The Assigned Claims were litigated in Virginia state court in *Allen, et al. v. Venture*

*Supply, Inc., et al.*, Case No. 10-6976 (Va. Cir. Ct., Norfolk, Va.) ("*Allen* Consolidation"),

pending before the Honorable Mary Jane Hall.  That is where Defendants Porter-Blaine and

Venture Supply had brought third-party claims against Taishan.  On December 1, 2011, a default

judgment was entered against Taishan with respect to the third-party claims.  Following approval

of the Porter-Blaine/Venture Supply Settlement, Class counsel diligently pursued the Assigned

Claims against Taishan.   The parties vigorously litigated the default judgment – Taishan pursued

multiple motions to dismiss and sought evidence to assist in restricting the size of the award and

the parties to whom the award would apply.[32]

Given that the Assigned Claims involve the assignment of a state court, third-party

default judgment to a settlement class in federal court from a state that does not authorize state-

law class actions, the issue presented significant challenges to the Class.  Taishan argued that

there could be no assignment of a Virginia state court judgment to the Class.  In addition, to

further compound these challenges, not all of the Class Members were named Plaintiffs in the

*Allen* Consolidation which complicated the determination as to the appropriate size of the default

---

[30] Rec. Doc. 16823-8.

[31] *See* Final Approval Order [Rec. Doc. 16934], at ¶¶ 41-43.

[32] *See* Declaration of Richard J. Serpe in Support of Class Counsel's Motion for an Order Granting Final Approval of the Settlement of Assigned Claims in MDL No. 2047 on Behalf of the Porter-Blaine/Venture Supply Class Regarding Claims Assigned to the Class by the Porter-Blaine/Venture Supply Participating Defendants and Participating Insurers Against Taishan Gypsum Co., Ltd. and Taian Taishan Plasterboard Co., Ltd., filed herewith (the "Serpe Declaration"), ¶¶2-5.

judgment.  Intense motion practice, discovery and expert analysis took place for over a year in Virginia State Court.[33]

Settlement of the Assigned Claims only came after a year of settlement negotiations during which the action was litigated.  Class Counsel made their original demand on Taishan on August 30, 2016 in which they sought $3,000,000 – indemnification of the full amount paid in Porter-Blaine/Venture Supply Agreement.  Over the course of the next twelve months, the parties engaged in numerous conferences and exchanged multiple offers and counter-offers.  During that time, as described above, the parties were litigating the matter and significant challenges were posed.[34]   On September 7, 2017, an agreement in principle was reached after vigorous negotiations between Class Counsel and counsel for Taishan.[35]

After reaching the agreement in principle, the parties then negotiated the terms of the written Assigned Claims Settlement Agreement.[36]  Importantly, the Assigned Claims Settlement only applies to the claims pursued by Class Members on behalf of Defendants Porter-Blaine and Venture Supply.  On their own behalf, Class Members continue to pursue claims for remediation damages and other losses against Taishan (*i.e.*, "Reserved Claims") in the MDL and state courts related to the Affected Properties.[37]  Those Reserved Claims are expressly excluded from the Assigned Claims Settlement.[38]

---

[33] *See id.*

[34] *See id.*, ¶ 5.

[35] *See id.*, ¶ 6.

[36] *See id.*, ¶ 8.

[37] Assigned Claims Settlement Agreement, §§ 1.2, 5.4.

[38] *Id.*, § 5.4.

Class Counsel, who are vastly experienced in these matters, considered the potential outcomes of the litigation, the strength of the defenses and positions being asserted by Taishan, the risks and uncertainty regarding enforcement of any potential judgment against Taishan, and all of the material factual information when deciding whether to enter into the Assigned Claims Settlement on behalf of the Class.[39]

### 6.    *Preliminary Approval of the Assigned Claims Settlement.*

On March 13, 2018, Class Counsel filed a motion seeking preliminary approval of the Assigned Claims Settlement along with an order directing the dissemination of class notice and the scheduling of a fairness hearing.[40]  On April 17, 2018, the Court preliminarily approved the Assigned Claims Settlement, the proposed Class Notice, and the protocol for dissemination of Notice to the Class Members.[41]  In addition, the Court required that any objections to the proposed Settlement be postmarked no later than June 27, 2018 (sixty (60) days after the last date to provide Notice to the Class) and that any response to any objections or other papers in support of final approval be filed on or before July 5, 2018.[42]  A formal Joint Fairness Hearing before the Court, with the assistance of the Honorable Mary Jane Hall of the Norfolk Virginia Circuit Court, was scheduled for July 18, 2018.[43]

---

[39] *See* Serpe Decl., ¶ 6.

[40] *See* Class Counsel's Motion for an Order: (1) Preliminarily Approving the Settlement Agreement of Assigned Claims in MDL No. 2047 on Behalf of the Porter-Blaine/Venture Supply Class Regarding Claims Assigned to the Class by the Porter-Blaine/Venture Participating Defendants and Participating Insurers Against Taishan Gypsum Co., Ltd. and Taian Taishan Plasterboard Co., Ltd.; (2) Direction the Dissemination of Class Notice; and (3) Scheduling a Fairness Hearing [Rec. Doc. 21244].

[41] Rec. Doc. 21307 at 2-3.

[42] *Id*. at 3.

[43] *Id*. at 3.

### B.   The Terms of the Assigned Claims Settlement.

#### 1.   *Settlement Funds.*

The proposed Assigned Claims Settlement provides that Taishan[44] will pay a sum of $1,978,528.40[45] to the Porter-Blaine/Venture Supply Class in order to resolve all Chinese Drywall claims that Porter-Blaine/Venture Supply had against Taishan.  These claims were previously assigned to the Class by the Porter-Blaine/Venture Participating Defendants and Participating Insurers in connection with the Porter-Blaine/Venture Settlement (*i.e.*, "Assigned Claims").[46]

#### 2.   *Limited Release (Class Members Claims Remaining).*

The settlement of the Assigned Claims does not resolve any Reserved Claims the Class has against Taishan (or any other non-settling Defendant) in the MDL or state courts related to the Affected Properties.[47]  The litigation of Reserved Claims against Taishan and other Defendants, including claims for remediation damages and other

---

[44] Taishan is defined as: Taishan Gypsum Company Ltd. f/k/a/ Shandong Taihe Dongxin Co., Ltd. and Taishan Gypsum Co., Ltd., and Taian Taishan Plasterboard Co., Ltd., and their respective past, present, and future officers, directors, board members, members, agents, attorneys, consultants, claim administrators, managers, employees, partners, parent corporations, sister corporations, subsidiaries, related entities, divisions, heirs, associates, stockholders, shareholders, retail dealers, distributors, insurers, reinsurers, and all of their predecessors, successors, assigns, legatees, legal representatives, and any other stakeholders of each of the foregoing, including Beijing New Building Materials Public Limited Company ("BNBM PLC"); Beijing New Building Materials (Group) Co., Ltd. ("BNBM Group"); and China National Building Materials Co., Ltd. ("CNBM"); and China National Building Materials Group ("CNBM Group").  Assigned Claims Settlement Agreement, § 1.1.2.

[45] Assigned Claims Settlement Agreement, § 4.1.

[46] *See id.*, § 1.2.

[47] *See id.*, §§ 5.2, 5.4.

losses, is ongoing.  Therefore, the Assigned Claims Settlement releases only the Assigned

Claims (but not Reserved Claims) against Taishan.[48]

### 3.    *Bar Order.*

The settlement also contains a provision for a bar order in which the Court will

enter an order enjoining and barring any and all Class Members from prosecuting any and

all Assigned Claims in connection with claims arising out of, or otherwise related to,

Chinese Drywall at Affected Properties.[49]  The bar order specifically states that it "shall

not bar, enjoin, or stay any Reserved Claims of Class Members" and that it "is not

intended to prevent or impede the enforcement of claims or entitlements to benefits under

[the Assigned Claims Settlement]."[50]

### 4.    *Allocation of the Settlement Funds.*

The Assigned Claims Settlement contemplates that the Settlement Funds will be allocated

to Eligible Class Members[51] on a *pro rata* basis in accordance with the settlement payment

amounts previously made in the Porter-Blaine/Venture Supply Settlement.[52]  The Intervening

Plaintiffs in *Germano, et al. v. Taishan Gypsum Co., Ltd., et al.*, Case No. 09-cv-6687 (E.D. La.)

---

[48] *See id.*, § 5.2.

[49] *See id.*, § 10.1
.
[50] *See id.*, §§ 10.2, 10.3.

[51] Eligible Class Members include: Class Members who were determined to be eligible for a claim payment from the Porter-Blaine/Venture Supply Settlement pursuant to the Revised Proposed Plan of Allocation approved by the Court as fair and equitable [*see* Rec. Doc. 16934, at ¶¶ 41-43], as listed in Exhibit A to the Assigned Claims Settlement Agreement.  Intervening Plaintiffs in *Germano* are not Eligible Class Members for purposes of entitlement to an allocation of the Settlement Funds in the Assigned Claims Settlement.  Assigned Claims Settlement Agreement, § 1.5.

[52] *See id.*, § 13.1.

(namely, Deborah and William Morgan; Jerry and Inez Baldwin; Joe and Cathy Leach; Robert and Lisa Orlando; Fred and Vanessa Michaux; Preston and Rachel McKellar; and Steven and Elizabeth Heischober) are Class Members, but they are not eligible for a claim payment from the Assigned Claims Settlement because they already received payments for their claims from Taishan pursuant to the Judgment entered by the Court.[53]

### 5. *Attorneys' Fees.*

The Assigned Claims Settlement Agreement provides that after the Effective Date, Class Counsel, common benefit attorneys, and privately retained attorneys for all Class Members shall be entitled to petition the Court for attorneys' fees totaling in the aggregate up to 32% of the Settlement Funds, and reimbursement of reasonable expenses, excluding the cost of notice.[54] The Parties have agreed that Taishan will have no responsibility for payment of any fees or costs incurred by Plaintiffs, Class Members, their counsel, or common benefit counsel.[55]

### 6. *Notice.*

Pursuant to the Court's Preliminary Approval Order (and the Assigned Settlement Agreement),[56] Class Notice was made by Individual Notice and Publication Notice.

- **Individual Notice.** Notice was sent *via* first-class mail, postage prepaid to the last known address of all Class Members and their counsel of record, if any, and to each Affected Property owned by Class Members.[57] This alone should be

---

[53] *See* Rec. Doc. 3013; Rec. Doc. 18725.

[54] Assigned Claims Settlement Agreement, at § 13.6.

[55] *Id.* at § 13.5.

[56] Preliminary Approval Order [Rec. Doc. 21307] at ¶¶ 5-7; Assigned Claims Settlement Agreement, at § 7.1.

[57] *See* Serpe Decl., ¶ 9.

sufficient as all of the Class Members are identifiable.

- **Publication Notice.**  A copy of the Notice was posted at the United States District Court, Eastern District of Louisiana.  In addition, the Notice was posted on http://www.laed.uscourts.gov/drywall/Settlements.htm (the Court's Chinese Drywall website).  Further, Class Counsel requested that the notices be published on additional court and government websites as ordered.[58]

### 7.    *Objections.*

Objections to the Assigned Claims Settlement were to be postmarked no later than June 27, 2018.[59]  As of the time of this filing, Class Counsel have received no objections to the Assigned Claims Settlement and are not aware of any objections.

### 8.    *Fairness Hearing.*

When presented with a motion for final approval of a class settlement, "the Court must conduct a fairness hearing at which the parties proposing the settlement must present evidence that the settlement is 'fair, reasonable, and adequate.'" *Turner v. Murphy Oil USA, Inc*., 472 F. Supp. 2d 830, 842 (E.D. La. 2007) (Fallon, J.), *citing* Fed. R. Civ. P. 23(e)(1)(C); *see also Newby v. Enron Corp*., 394 F.3d 296, 300-01 (5th Cir. 2004); *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982).  The Court has scheduled a Fairness Hearing for July 18, 2018 to adjudicate final approval of the Assigned Claims Settlement.

---

[58] *See id*., ¶ 9.

[59] *See* Rec. Doc. 21307 at 2-3.

III.   <u>ARGUMENT</u>

    A.    **Settlements of Complex Class Actions Are Favored.**

In determining whether to approve the Assigned Claims Settlement, the Court should be guided by the strong judicial policy favoring pretrial settlement of claims in complex class action lawsuits.  *See*, *e.g.*, *Maher v. Zapata Corp*., 714 F.2d 436, 455 (5th Cir. 1983); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); *Turner v. Murphy Oil USA, Inc*., 472 F. Supp. 2d 830, 843 (E.D. La. 2007) (Fallon, J.); *Braud v. Transport Service Co. of Illinois*, 2010 WL 3283398, at *3 (E.D. La. Aug. 17, 2010) (Knowles, Mag. J.).[60]   The policy favoring settlement exists, in part, because of the complexity and size of class actions

> Particularly in class action suits, there is an overriding public interest in favor of settlement [. . .] it is common knowledge that class action suits have a well-deserved reputation as being most complex. The requirement that counsel for the class be experienced attests to the complexity of the class action [....] In these days of increasing congestion within the federal court system, settlements contribute greatly to the efficient utilization of our scarce judicial resources.

*Cotton*, 559 F.2d at 1331, *citing United States v. Allegheny-Ludlum Indus., Inc*., 517 F.2d 826 (5th Cir. 1975); *Van Bronkhorst v. Safeco Corp*., 529 F.2d 943, 950 (9th Cir. 1976); *see also Turner*, 472 F. Supp. 2d at 843 ("The public interest favoring settlement is especially apparent in the class action context where claims are complex [... and] could lead to years of protracted litigation and sky-rocketing expenses.").

That preference also exists, in part, because of the amount of time and resources these complex cases take to resolve – as evidence by this very *Chinese Drywall* litigation

---

[60] "Federal Courts look with great favor upon the voluntary resolution of litigation through settlement . . . This rule  has particular force regarding class action lawsuits." *Airline Stewards & Stewardesses Ass'n Local 550 v. Trans  World Airlines, Inc.*, 630 F.2d 1164, 1166-67 (7th Cir. 1980).

that has now been ongoing for close to nine years:

> Complex litigation – like the instant case – can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly evasive. Accordingly, the Federal Rules of Civil Procedure authorize district courts to facilitate settlements in all types of litigation, not just class actions [...] Although class action settlements require court approval, such approval is committed to the sound discretion of the trial court.

*In re United States Oil & Gas Litig.*, 967 F.2d 489, 493-94 (11th Cir. 1992), *citing* Fed R. Civ. P. 16(a), 16(c), 23(e); *Bennett v. Behring*, 737 F.2d 982, 987 (11th Cir. 1984); *Cotton*, 559 F.2d at 1331.

### B.   Standards for Approval of Class Settlements.

Determining the fairness of class settlements is left to the sound discretion of the district court. *See In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982), *citing Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 429 (5th Cir. 1977); *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983); *Parker*, 667 F.2d at 1209; *In re Corrugated Container Antitrust Litigation*, 643 F.2d 195, 218 (5th Cir. 1981); *Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 (5th Cir. 1978), *cert. denied*, 439 U.S. 1115 (1979); *Cotton*, 559 F.2d at 1331; *Young v. Katz*, 447 F.2d 431, 432 (5th Cir. 1971); *see also U.S. Oil*, 967 F.2d at 493-94. The Fifth Circuit has consistently held that, as a result of their highly-favored status, settlements "'will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits.'" *Miller*, 559 F.2d at 428, *quoting Pearson v. Ecological Sci. Corp.*, 559 F.2d 171, 176 (5th Cir. 1975). Moreover, because settlements of class actions are "particularly favored," they are not to be lightly rejected. *Maher*, 714 F.2d at 455; *see also Cotton*, 559 F.2d at 1331; *Murphy Oil*, 472 F. Supp. 2d at 843.

"[T]he proponents of the [class] settlement bear the burden of demonstrating that the

settlement is fair, reasonable, and adequate." *Murphy Oil*, 472 F. Supp. 2d at 844.  However, in the absence of contrary evidence, there is a presumption "in favor of the settlement's fairness." *Id*. at 843; *see also Camp v. The Progressive Group*, 2004 WL 2149079, at *7 (E.D. La. Sept. 23, 2004) ("court may presume that a proposed settlement is fair and reasonable when it is the result of arm's length negotiations."), *citing* Alba Conte and Herbert B. Newberg, 4 NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002); *United States v. Tex. Educ. Agency*, 679 F.2d 1104, 1108 (5th Cir. 1982).

In its role as a "fiduciary for absent class members," the district court has a responsibility to "critically examine[] the settlement's terms and implementation." *Murphy Oil*, 472 F. Supp. 2d at 843; *see also Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279-80 (7th Cir. 2002); *Georgevich v. Strauss*, 96 F.R.D. 192, 196 (M.D. Pa. 1982) ("[T]he Court must vigorously act as guardian of the rights of absentee class members."); 1 NEWBERG ON CLASS ACTIONS § 1:3 (4th ed.); MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.61.  In so doing, the district court must "'exercise the highest degree of vigilance....'" *Murphy Oil*, 472 F. Supp. 2d at 843, *quoting Reynolds*, 288 F.3d at 279-80.[61]

That being said, it is widely recognized that courts should exercise restraint in examining a proposed settlement and should not "make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest

---

[61] In adjudicating the motion for final approval, "[t]he Court must be exacting and thorough in analyzing whether the settlement is in the best interests of class members, and should provide the basis for its conclusions in a reasoned opinion." *Murphy Oil*, 472 F. Supp. 2d at 842, *citing* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.61 (2004); *see also In re Combustion, Inc.*, 968 F. Supp. 1116, 1125 (W.D. La. 1997) (stating that a court may not give boilerplate approval to settlement, but must instead analyze the facts and law supporting its conclusion in a memorandum); *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 933 (8th Cir.), *cert. denied*, 546 U.S. 822 (2005).

hopes." *Cotton*, 559 F.2d at 1330 (citation and quotation marks omitted).  In other words, in

weighing the benefits obtained by settlement against the hypothetical benefits that are reliant

upon a recovery on the merits, courts are not expected to balance the scales.  *See id*.  The very

object of a compromise "is to avoid the determination of sharply contested and dubious issues."

*Young*, 447 F.2d at 433.

Thus, a court should not engage in a trial on the merits when considering the propriety of

a settlement:

> It cannot be overstated that neither the trial court in approving the
> settlement nor [the appellate court] in reviewing that approval have
> the right or the duty to reach any ultimate conclusions on the issues
> of fact and law which underlie the merits of the dispute.

*Cotton*, 559 F.2d at 1330, *quoting Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir.),

*cert. denied*, 423 U.S. 864 (1975); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 456 (2nd Cir.

1974); *see also Murphy Oil*, 472 F. Supp. 2d at 843 ("The Court may not resolve contested issues

of fact or law, but instead is concerned with the overall fairness, reasonableness, and adequacy of

the proposed settlement as compared to the alternative of litigation."). The trial court is not

required to decide the merits of the action or substitute a different view of the merits for that of the

parties or counsel. *Maher*, 714 F.2d at 455 n.31 ("In other words, in determining the fairness,

reasonableness, and adequacy of a proposed settlement, neither the district court nor the appellate

court on review, should reach ultimate conclusions on the issues of fact and law underlying the

dispute."); *Tex. Educ. Agency*, 679 F.2d at 1108 (in approving a class settlement "we do not thereby

reach any ultimate conclusions on the issues of fact and law which underlie the merits of the

dispute, as we recognize that normally a settlement is a process of compromise in which, in

exchange for the saving of cost and elimination of risk, the parties each give up something they

might have won had they proceeded with the litigation, ... rather than an attempt to precisely

delineate legal rights.") (internal quotations and citations omitted).

   **C.    The *Reed* Factors Support Granting Final Approval of the Assigned Claims Settlement.**

Federal Rule of Civil Procedure 23(e) requires that the district court determine a proposed class settlement is fair, reasonable and adequate prior to granting its approval.  To that end, the United States Court of Appeals for the Fifth Circuit has articulated six factors or "focal facets" that a court should consider when making that determination: (1) the existence of fraud or collusion behind the settlements; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and the absent class members (the "*Reed* Factors").  *See Reed*, 703 F.2d at 172 (adopting six-factor test cited in prior Fifth Circuit decisions including *Parker*, 667 F.2d at 1209; *Corrugated Container*, 643 F.2d at 217; and *Pettway*, 576 F.2d at 1214).

An analysis of these factors overwhelmingly favors approval of the Assigned Claims Settlement before the Court.

   **1.    *There is No Existence of Fraud or Collusion Behind the Assigned Claims Settlement.***

The law recognizes "a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary."  *Camp*, 2004 WL 2149079 at *7; *see also Murphy Oil*, 472 F. Supp. 2d at 846 ("a presumption exists that settlement negotiations were conducted properly in the absence of collusion if the terms of the proposed settlement are demonstrably fair.").  Certainly, there is no evidence of fraud or collusion in this matter.

The Assigned Claims Settlement is the product of vigorous arm's-length negotiations

between Class Counsel and counsel for Taishan.  Those negotiations took place over the course of twelve months and settlement was reached only after the parties had engaged in significant motions practice and litigation that made them fully aware of the merits of each side's respective arguments.[62]

Class Counsel made their original demand on Taishan on August 30, 2016 in which they sought $3,000,000 – indemnification of the full amount paid in Porter-Blaine/Venture Supply Agreement.  Over the course of the next twelve months, the parties engaged in numerous conferences and exchanged multiple offers and counter-offers.  During that time, the parties were litigating the matter.  On September 7, 2017, an agreement in principle was reached after vigorous negotiations between Class Counsel and counsel for Taishan.[63]

In addition, the appropriate amount of attorneys' fees has been left to the Court's discretion.[64]  Courts have held that where "the amount of the fee is left entirely to the Court's discretion," "the possibility of collusion among counsel" is "exponentially decrease[d]."  *Murphy Oil*, 472 F. Supp. 2d at 845.  As this Court explained in *Murphy Oil*, "[b]ecause the parties have not agreed to an amount or even a range of attorneys' fees, and have placed the matter entirely into the Court's hands for determination, there is no threat of the issue explicitly tainting the fairness of settlement bargaining." *Id.*, *citing* Bruce L. Hay, *The Theory of Fee Regulation in Class Action Settlements*, 46 AM. U. L. REV. 1429, 1432 (1997) ("[P]roper regulation of the counsel's fee is both necessary, and within limits, sufficient to mediate the tension between the goals of facilitating settlement and protecting the class against collusion.").

---

[62] *See* Serpe Decl., ¶¶ 5-6.

[63] *See id.*

[64] *See* Assigned Claims Settlement Agreement, ¶ 13.6.

As the settlement resulted from arm's-length negotiations and there is no evidence of fraud or collusion, this factor strongly favors granting final approval.

### 2. *The Complexity, Expense, and Likely Duration of the Litigation Weigh in Favor of Approval of the Assigned Claims Settlement.*

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *See* 4 NEWBERG ON CLASS ACTIONS § 11.50 (4th ed.). "In assessing this factor, courts consider the uncertainties of litigation and compare the settlement to potential future relief." *In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. 112, 147 (E.D. La. 2013), *citing In re Shell Oil Refinery*, 155 F.R.D. 552, 563 (E.D. La. 1993).

With respect to this factor, the Assigned Claims litigation is similar to the Porter-Blaine/Venture Supply Settlement that was already approved in that it is a smaller portion of the larger *Chinese Drywall* litigation that will continue. Here, the Assigned Claims had a maximum value and at the same time faced hurdles with respect to the validity of the assignment and identification of precisely who was entitled to relief under the assignment. The decision to settle at this time for this amount reflects experienced counsel's reasoned judgment that factored in the delay and potential loss if the case proceeded against the certain and prompt payment that the settlement provides. *See*, *e.g.*, *Beaulieu v. EQ Indus. Servs., Inc.*, No. 06-cv-0400, 2009 WL 2208131, at *26 (E.D.N.C. July 22, 2009).

Timing and delay are significant here because there are no questions as to the complexity and expense of this *Chinese Drywall* litigation. For more than nine years, the PSC has conducted expensive discovery and trials, worked with experts on significantly complex scientific issues, fought numerous issues internationally and in general, waged a long and costly battle to bring Plaintiffs' Assigned Claims and other claims to a resolution. Yet, the cases continue with

remand occurring and related litigation to follow in the transferor courts. Not only has the PSC expended significant resources vigorously prosecuting the claims of thousands of *Chinese Drywall* Plaintiffs, that work and expense will continue in the remand courts and will be joined by the efforts by individual counsel. In addition, the PSC also continues to litigate issues such as jurisdiction that have been raised by Taishan and its parent companies once again complicating the case, driving up expenses and causing uncertainty about the outcome and remaining duration of the litigation.

With this backdrop, getting the Class Members significant recovery now is crucial. Many key issues remain to be fought globally in the litigation are yet to be decided, but also key issues with respect to the Assigned Claims were yet to be decided. *See In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. at 147, *citing Salinas v. Roadway Express, Inc*., 802 F.2d 787, 790 (5th Cir. 1986). The settlement avoids the costs and risks of continued litigation with respect to the Assigned Claims and provides some relief to the Porter-Blaine/Venture Supply Settlement Class faster. *See id*., *citing Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004).

For these reasons, this factor weighs heavily in favor of granting final approval.

**3.** ***The Stage of the Proceedings and the Amount of Discovery Completed Support Approval of the Assigned Claims Settlement.***

"This factor 'asks whether the parties have obtained sufficient information to evaluate the merits of the competing positions.'" *See In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. at 148, *quoting In re Educ. Testing Serv. Praxis Principles of Learning and Teaching, Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 620 (E.D. La. 2006) (quotations omitted). "'Thus, the question is not whether the parties have completed a particular amount of discovery, but whether the parties have obtained sufficient information about the strengths and weaknesses of their respective cases to make a reasoned judgment about the desirability of settling the case on

the terms proposed . . . .'" *Id.*, *quoting Educ. Testing*, 447 F. Supp. 2d at 620-21; *see also DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 292 (W.D. Tex. 2007).

The litigation of Porter-Blaine's and Venture Supply's third-party indemnification claims against the Defendants had been ongoing since 2011, and Class Counsel were pursuing those claims since the Porter-Blaine/Venture Supply Settlement was finally approved in 2013.  The parties vigorously litigated the default judgment.  The parties were well aware of each other's positions and, in particular, Taishan's arguments with respect to the assignment, the appropriate size of the default and Virginia law regarding class actions.  The parties engaged in intense motion practice, discovery and expert analysis for over a year.  The parties also engaged in arm's-length settlement negotiations for over a year.

In addition, the settlement takes place in the context of the overall *Chinese Drywall* Litigation as a whole, which has proceeded for more than nine years with substantial discovery, expert analysis, bellwether trials, and other settlements that have provided insight into the strengths and potentially vulnerabilities that Plaintiffs face as the litigation continues against Taishan.  Considering all of this information that was in the hands of Class Counsel, it is clear that the "settlement was achieved in the full context of the adversarial process." *Murphy Oil*, 472 F. Supp. 2d at 846.

This factor supports final approval.

### 4.   *The Probability of Plaintiffs' Success on the Merits.*

In the absence of fraud or collusion behind the class settlements, "the probability of the plaintiffs' success on the merits has been held by the Fifth Circuit as the most important *Reed* factor."  *Murphy Oil*, 472 F. Supp. 2d at 848, *citing Parker*, 667 F.2d at 1209; *DeHoyos*, 240 F.R.D. at 287.  In evaluating Plaintiffs' "likelihood of success, the Court must compare the

terms of the settlement with the rewards the class would have been likely to receive following a successful trial." *DeHoyos*, 240 F.R.D. at 287, *citing Reed*, 703 F.2d at 172. "At the same time, a district court 'must not try the case in the settlement hearings because the very purpose of the compromise is to avoid the delay and expense of such a trial.'" *See Slipchenko v. Brunel Energy, Inc.*, No. 11-cv-1465, 2015 WL 338358, at *15 (S.D. Tex. Jan. 23, 2015), *quoting Reed*, 703 F.2d at 172 (quotations and alterations omitted); *see also Murphy Oil*, 472 F. Supp. 2d at 848, *citing Reed*, 703 F.2d at 172.

While Class Counsel believe strongly in the Class Members' claims, the outcome of the litigation of the Assigned Claims was less than certain with respect to the validity of the assignment itself as well as the amount of any default judgment. As noted above, Taishan was challenging the ability of Porter-Blaine/Venture Supply to assign a Virginia state court default judgment to the Class. The appropriate size of the default judgment was also in dispute. For these reasons, there were questions as to the enforceability of the award, the size of the award and the parties to whom the award would apply. And, beyond actual defenses to Plaintiffs' claims and ability to recover, there is reason to believe that Taishan will throw up as many obstacles to collecting any judgment as possible. This weighs in favor of settlement approval because "[c]ollectibility of a judgment is also a factor bearing on the reasonableness of a settlement in relation to the defendants' ability to withstand a greater one." 4 NEWBERG ON CLASS ACTIONS § 11.50 (4th ed.).

To the extent the Class were to ultimately prevail on all of these issues at trial, the recovery, if collected, would be years from now and "diminished by the costs of litigation." *See In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. at 149.

This factor weighs in favor of approving the settlement.

### 5. *The Range of Possible Recovery.*

"This factor requires the district court to 'establish the range of possible damages that could be recovered at trial and, then, by evaluating the likelihood of prevailing at trial and other relevant factors, determine whether the settlement is pegged at a point in the range that is fair to the plaintiff settlors.'" *In re Heartland Payment Systems, Inc. Customer Data Sec. Breach Litigation*, 851 F. Supp. 2d 1040, 1067 (S.D. Tex. 2012), *quoting Maher v. Zapata Corp.*, 714 F.2d 436, 460 (5th Cir. 1983) (internal quotation marks and citations omitted). The court should consider the challenges to recovery that are presented. *See id.* The question is not whether the plaintiff has achieved the maximum result but whether the settlement "'fall[s] within a reasonable range of recovery, given the likelihood of the plaintiffs' success on the merits.'" *Id.* (internal quotation marks omitted).

The potential recovery in this litigation of the Assigned Claims ranged from nothing, should the assignment be held invalid, to anywhere up to $3,000,000 plus expenses and fees (the indemnification amount) should they succeed. The $1,978,528.40 settlement amount represents nearly two-thirds of the maximum potential recovery, an excellent result when considering the potential risks. And, this result was achieved without the delay attendant to taking the case to trial.

In addition, settling these claims means that Eligible Class Members will get an additional payment, on top of what they received directly in the Porter-Blaine/Venture Supply Settlement, based on the square footage of their homes. They achieve this result while retaining their own claims against Taishan for remediation and other damages – the Reserved Claims.

This factor weighs in favor of approving the settlement.

6.      ***The Opinion of Class Counsel Supports Approval of Settlement.***

The Fifth Circuit has recognized that courts must rely to a large degree on the judgment of competent counsel, terming such counsel the "linchpin" of an adequate settlement.  *Reed*, 703 F.2d at 175.  Thus, if experienced counsel determine that a settlement is in the best interests of the class, "the attorney's views must be accorded great weight."  *Pettway*, 576 F.2d at 1216; 4 NEWBERG ON CLASS ACTIONS § 11.47 (4th ed.) ("the recommendation of counsel is entitled to great weight following arm's-length settlement negotiations").

In this case, Class Counsel were appointed by the Court to represent the interests of the Plaintiffs based on their high level of competency and many years of experience litigating complex class action and multidistrict cases.  These attorneys possessed adequate information concerning the strengths and weaknesses of the case after extensive discovery, bellwether trials and significant briefing on relevant motions, and decided to support the Assigned Claims Settlement.

The fact that Class Counsel supports the settlement weighs in favor of approving the Assigned Claims Settlement.

\* \* \*

Settlement Class Counsel respectfully submit that all of the above-cited circumstances support final approval of the Assigned Claims Settlement.  As the court in *In re Shell Oil Refinery*, 155 F.R.D. 552, 560 (E.D. La. 1993) aptly pointed out:

> The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.  In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush.

*Id.*, *citing* and *quoting Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974)

(internal quotations omitted).

**D.     Notice to the Class Complied with this Court's Order and Due Process.**

In conjunction with preliminary approval of the class settlements, this Court ordered that notice be disseminated to the Class.[65]  The parties complied with the Court's order.[66]  Notice was provided via first-class mail, postage prepaid to the last known address of all Class Members and their counsel of record, if any, and to each Affected Property owned by Class Members.  In addition, a copy of the Notice was posted at the United States District Court, Eastern District of Louisiana and at http://www.laed.uscourts.gov/drywall/Settlements.htm, the Court's Chinese Drywall website.  In addition, Class Counsel requested that the notices be published on additional court and government websites as ordered.

The Notices that have been disseminated and published comply with Due Process and support approval of the Assigned Claims Settlement.  *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173 (1974); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *see also In re Nissan Motor Corp. Antitrust Litig*., 552 F.2d 1088, 1097 (5th Cir. 1977).

**E.     The Court Has Already Approved the Revised Proposed Plan of Allocation.**

The Assigned Claims Settlement contemplates that the Settlement Funds will be allocated to Eligible Class Members (identified on Exhibit A to the Assigned Claims Settlement Agreement) on a *pro rata* basis in accordance with the Revised Proposed Plan of Allocation.[67]  The Court has already approved that Revised Proposed Plan of Allocation when it granted final

---

[65] Preliminary Approval Order [Rec. Doc. 21307] at ¶¶ 5-7.

[66] *See* Serpe Decl., ¶ 9.

[67] Assigned Claims Settlement Agreement, ¶ 13.1.

approval of the Porter-Blaine/Venture Supply Settlement.[68]

## IV. <u>CONCLUSION</u>

Class Counsel respectfully request that this Court find that the Assigned Claims Settlement is fair, reasonable and adequate and in the best interests of Class Members and that the Notice program satisfied this Court's orders and Due Process.  In addition, Class Counsel request that this Court approve the Revised Proposed Allocation Plan as the proper method for allocating the Settlement Funds to Eligible Class Members.   A proposed Order and Judgement is attached to this memorandum of law as Exhibit B.

Respectfully submitted,

Dated: July 5, 2018

/s/ Russ M. Herman
Russ M. Herman, Esq. (Bar No. 6819)
Leonard A. Davis, Esq. (Bar No. 14190)
Stephen J. Herman, Esq. (Bar No. 23129)
HERMAN, HERMAN &KATZ, LLC
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
rherman@hhklawfirm.com
*Plaintiffs' Liaison Counsel in MDL 2047
and Class Counsel*

Arnold Levin (on the Brief)
Sandra L. Duggan (on the Brief)
Keith J. Verrier (on the Brief)
LEVIN SEDRAN & BERMAN LLP
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel in MDL 2047 and
Class Counsel*

---

[68] Rec. Doc. 16934 at ¶¶ 41-43; *see also* Assigned Claims Settlement Agreement, ¶ 13.1.

Richard Serpe (on the Brief)
Law Offices of Richard J. Serpe
Crown Center, Suite 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com
*Class Counsel*

Richard S. Lewis
Kristen Ward Broz
HAUSFELD LLP
1700 K St. NW, Suite 650
Washington, D.C. 20006
Phone: (202) 540-7200
Fax: (202) 540-7201
rlewis@hausfeldllp.com

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, which will serve a notice of the uploading in accordance with the procedures established in MDL 2047, on this 5th day of July, 2018.

<u>/s/ Leonard A. Davis</u>
Leonard A. Davis
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
<u>Ldavis@hhklawfirm.com</u>
Plaintiffs' Liaison Counsel
MDL 2047

*Co-Counsel for Plaintiffs*