1                    UNITED STATES DISTRICT COURT

2                    EASTERN DISTRICT OF LOUISIANA

3

4

5    IN RE:  CHINESE MANUFACTURED       *   Docket No.: 09-MD-2047
             DRYWALL PRODUCTS           *   Section L
6            LIABILITY LITIGATION       *   October 12, 2017
                                        *   New Orleans, Louisiana
7    This Document Relates To All Cases *
     * * * * * * * * * * * * * * * * * *

8

9                    TRANSCRIPT OF ORAL ARGUMENT
          HEARD BEFORE THE HONORABLE ELDON E. FALLON
10                  UNITED STATES DISTRICT JUDGE

11

12   APPEARANCES:

13   For the Plaintiffs:          Herman Herman & Katz, L.L.C.
                                  BY:  RUSS HERMAN, ESQ.
14                                820 O'Keefe Avenue
                                  New Orleans, Louisiana 70113

15

16                                Levin, Fishbein, Sedran & Berman
17                                BY: ARNOLD LEVIN, ESQ.
                                  510 Walnut Street
18                                Suite 500
                                  Philadelphia, Pennsylvania 19106

19

20
     For Taishan Gypsum Co,
21   Ltd.:                        Alston & Bird, LLP
                                  BY:  CHRISTINA H. EIKHOFF, ESQ.
22                                1201 West Peachtree Street
                                  Atlanta, Georgia 30309

23

24

25

            JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
                     UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF LOUISIANA

1    APPEARANCES:

2

     For CNBM Co. Ltd.,
3    BNBM Group and BNBM PLC:        Orrick, Herrington & Sutcliffe,
                                       LLP
4                                    BY:  JAMES. L. STENGEL, ESQ.
                                     51 West 52nd Street
5                                    New York, New York 10019

6

7    Official Court Reporter:        Jodi Simcox, RMR, FCRR
                                     500 Poydras Street
8                                    Room B-406
                                     New Orleans, Louisiana 70130
9                                    (504) 589-7780

10   Proceedings recorded by mechanical stenography, transcript

11   produced by computer.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**PROCEEDINGS**

**(October 12, 2017)**

**\*\*\*\*\*\***

(COURT CALLED TO ORDER)

**THE DEPUTY CLERK:**  All rise.

**THE COURT:**  Okay.  Be seated, please.

We have today a motion to revisit the question of jurisdiction in view of the *Bristol-Myers* case.  The defendants take the position that *Bristol-Myers* changes the situation and that that case dictates certain jurisdictional requirements.

I'll hear from the parties at this time, the movant first.

**MR. HERMAN:**  May it please the Court, lead counsel Arnold Levin will respond for the PSC, and then I'd like five minutes immediately following Mr. Levin.

**THE COURT:**  Okay.

**MR. STENGEL:**  Good morning, Your Honor.  Jim Stengel for CNBM Company Limited, BNBM Group, and BNBM PLC.

Just a note on logistics before I begin, Taishan joined in our application and Ms. Eikhoff will follow me briefly in opening.  We would like to reserve some time for rebuttal.

**THE COURT:**  Sure.

| | | |
|---|---|---|
| 9:20AM | 1 | **MR. STENGEL:**  I will try and handle it by myself. |
| 9:20AM | 2 | We're mindful of the Court's desire that we keep this |
| 9:20AM | 3 | relatively brief. |
| 9:20AM | 4 | We've tried to respond in writing obviously to |
| 9:20AM | 5 | both the initial question of the effect of *Bristol-Myers Squibb* |
| 9:20AM | 6 | and the questions put to us by the Court, which were helpful in |
| 9:20AM | 7 | focusing our comments.  I will try not to repeat things in the |
| 9:20AM | 8 | briefs.  By my count, we've now filed 11 briefs, some of them |
| 9:20AM | 9 | quite extensive.  I think we collectively owe Jason an apology |
| 9:20AM | 10 | for the volume of material that we've dropped on him, but I |
| 9:21AM | 11 | hope we've responded to the Court's questions. |
| 9:21AM | 12 | But let me proceed.  Your Honor may wonder why |
| 9:21AM | 13 | we can simultaneously, in an opinion where the court itself |
| 9:21AM | 14 | said, we're merely applying conventional law, describe in one |
| 9:21AM | 15 | brief *BMS* as a tectonic event in terms of personal |
| 9:21AM | 16 | jurisdiction.  And our view is what *Bristol-Myers Squibb* did |
| 9:21AM | 17 | was, in fact, clarify emerging existing law.  But you have to |
| 9:21AM | 18 | sort of go back a little in history to understand why it was a |
| 9:21AM | 19 | game changer.  And I think the reaction of federal district |
| 9:21AM | 20 | courts and, in fact, state courts since confirms the impact |
| 9:21AM | 21 | it's had on personal jurisdictional matters. |
| 9:21AM | 22 | And the root of this really probably goes back |
| 9:21AM | 23 | to *Asahi Metals* in 1987 wherein the court for a long period of |
| 9:21AM | 24 | time struggled to find a majority position.  They issued |
| 9:21AM | 25 | plurality opinions, Justice O'Connor, in *Asahi*.  And |

9:21AM  1   Justice Brennan wrote an opinion where he said, I think
9:21AM  2   foreseeability really should be enough.  Now, he would have
9:22AM  3   also ruled for *Asahi* on due process grounds.  But I think that
9:22AM  4   tiny kernel became a doctrine of law where some courts were
9:22AM  5   going down the path of foreseeability being enough of a
9:22AM  6   relatedness concept to succeed.
9:22AM  7           And over time you saw, first in *Nicastro*, an
9:22AM  8   effort to substantially narrow that, again a plurality.  But,
9:22AM  9   in our view, we can take the plurality opinion by Kennedy, and
9:22AM  10  then the Breyer and Alito decision concurring on the judgment,
9:22AM  11  our view is foreseeability without more became a dead letter at
9:22AM  12  that point.  And that --
9:22AM  13          **THE COURT:**  Yeah.  That's always a problem with
9:22AM  14  plurality because it goes both ways.  I see it one way; you see
9:22AM  15  it the other way; we don't know what it is.  It's a little
9:22AM  16  harder with plurality cases.
9:22AM  17          **MR. STENGEL:**  But I think it's what courts and
9:22AM  18  litigants have struggled with since then.  I think the court's
9:22AM  19  jurisprudence in this decade with cases like *Daimler*, with
9:22AM  20  cases like *Walden versus Fiore*, with *BMS* most recently, has
9:23AM  21  been an effort to build a consensus in the court.  Obviously,
9:23AM  22  there are strident dissents in most of those cases.
9:23AM  23          But I think what *Bristol-Myers Squibb* does is
9:23AM  24  finally get us to a point where there's a clear statement by
9:23AM  25  eight justices of what's required for personal jurisdiction to

|          |     |                                                              |
|----------|-----|--------------------------------------------------------------|
| 9:23AM   | 1   | be exercised as a matter of due process.                     |
| 9:23AM   | 2   | **THE COURT:**  The big issue that you have is whether or     |
| 9:23AM   | 3   | not the *Bristol-Myers* case applies in class actions in MDL  |
| 9:23AM   | 4   | cases.  That's really the big issue as I see it.              |
| 9:23AM   | 5   | **MR. STENGEL:**  Right.                                      |
| 9:23AM   | 6   | **THE COURT:**  Yeah.                                         |
| 9:23AM   | 7   | **MR. STENGEL:**  And we've -- I won't belabor the           |
| 9:23AM   | 8   | language of the text.  I mean, I think we agree that if       |

**THE COURT:**  The big issue that you have is whether or not the *Bristol-Myers* case applies in class actions in MDL cases.  That's really the big issue as I see it.

**MR. STENGEL:**  Right.

**THE COURT:**  Yeah.

**MR. STENGEL:**  And we've -- I won't belabor the language of the text.  I mean, I think we agree that if *Bristol-Myers* does, in fact, apply in these cases, it will have a profound impact on where cases can properly be heard because it will impose a geographical limitation on where cases should be.

In our view, the PSC, in responding to our motion, raised four issues, none of which are controlling of this matter.  And Your Honor is right, they've raised the inapplicable in federal court.  I think this one we can sort of deal with fairly quickly, and this is their notation that *BMS* doesn't apply to federal cases.

They refer to a footnote in the *BMS* opinion itself saying, we reserve as to what due process would be required under the Fifth Amendment.  That's really an artifact of a dispute during the argument of the case referring to a footnote in *Omni Capital*, which was a case under the Exchange -- the Securities Exchange Act.

And the parties there asked the court to find if

| | |
|---|---|
| 9:24AM 1 | there was sufficient aggregation of claims in the United |
| 9:24AM 2 | States, not a particular state, would that be sufficient to |
| 9:24AM 3 | show personal jurisdiction nationwide. |
| 9:24AM 4 | THE COURT:  Well, the big issue, though, is the |
| 9:24AM 5 | Fourteenth Amendment deals with the states and the Fifth |
| 9:24AM 6 | Amendment deals with the United States.  Unfortunately, the |
| 9:24AM 7 | jurisprudence on the Fourteenth and the Fifth Amendment |
| 9:24AM 8 | regarding jurisdiction is a little different.  It's a little |
| 9:24AM 9 | nuanced. |
| 9:24AM 10 | MR. STENGEL:  It's a little nuanced because if you |
| 9:25AM 11 | have a nationwide service of process in figuration with a |
| 9:25AM 12 | federal claim, it's clearly a Fifth Amendment rule.  But if you |
| 9:25AM 13 | look at cases involving courts sitting in diversity, there is |
| 9:25AM 14 | no ambiguity; there's no real dispute, the courts look to due |
| 9:25AM 15 | process as determined by the Fourteenth Amendment. |
| 9:25AM 16 | THE COURT:  But that's because the Congress, which |
| 9:25AM 17 | has some flexibility with jurisdiction, has created it that |
| 9:25AM 18 | way.  That's the problem that you're faced with with dealing |
| 9:25AM 19 | with jurisdiction.  There's no question that Congress can weigh |
| 9:25AM 20 | in on jurisdiction.  They've done so in expanding the |
| 9:25AM 21 | jurisdiction even in the areas that you've mentioned statewide. |
| 9:25AM 22 | Statewide jurisdiction is limited to the states, |
| 9:25AM 23 | but Congress has said, well, it's 100 miles.  They've made that |
| 9:25AM 24 | bubble.  There's no other bubble in the states.  The state law |
| 9:25AM 25 | is the state law.  But Congress has created a bubble of |

9:26AM  1    100 miles outside the state boundaries, which is different from

9:26AM  2    the states.

9:26AM  3              So it's a problem from a District Court judge to

9:26AM  4    figure out what the situation is because there's no question,

9:26AM  5    Congress can deal with jurisdiction.  They've done it in CAFA.

9:26AM  6    They've done it with the 100-mile area.

9:26AM  7              That's the big question:  Does that mean that

9:26AM  8    *Bristol-Myers* is limited to the state cases?  Because

9:26AM  9    *Bristol-Myers* is not an MDL.  *Bristol-Myers* is not a class

9:26AM  10   action.  *Bristol-Myers* is a group of cases that are filed in a

9:26AM  11   state.  That's the big issue that I'm grappling with trying to

9:26AM  12   figure out this issue.

9:27AM  13              MR. STENGEL:  Your Honor, let me try to be helpful on

9:27AM  14   that.

9:27AM  15              THE COURT:  Sure.

9:27AM  16              MR. STENGEL:  And you're right, *Bristol-Myers* came

9:27AM  17   out of a state court determination.  But I think what it

9:27AM  18   reflects is a common sense, indeed, and some little pragmatic

9:27AM  19   determination, that states are convenient existing political

9:27AM  20   units for judges to use.  And I don't think there's a serious

9:27AM  21   suggestion that in this case, the Louisiana *Amorin* case should

9:27AM  22   include Louisiana property owners, plus all property owners

9:27AM  23   within 100 miles of the state border.  I think that would be

9:27AM  24   misapplication of what Your Honor has termed the "bubble."

9:27AM  25              So I think you can use *BMS*.  I think you can use

9:27AM 1    consistent reliance on the Fourteenth Amendment as the measure

9:27AM 2    of due process in this context to say, we are going to use

9:27AM 3    state boundaries reflecting the sovereignty of those states.

9:27AM 4         Now, the PSC has said, well, this is different

9:27AM 5    because it really doesn't involve questions of intrastate

9:28AM 6    sovereignty, which *BMS* clearly did.  I would argue that's not

9:28AM 7    correct.  We have cases in many jurisdictions all asserting

9:28AM 8    common law state based actions.

9:28AM 9         And if you look at *Asahi* in the Supreme Court

9:28AM 10   jurisprudence on due process, the PSC really has flipped the

9:28AM 11   consideration of sovereignty here.  Because the court has

9:28AM 12   repeatedly -- and as Your Honor is aware, many of these Supreme

9:28AM 13   Court cases involving personal jurisdiction relate to foreign

9:28AM 14   entities.  Sometimes on both sides of the caption.  But there

9:28AM 15   the courts have said not only -- this is not a lesser concern

9:28AM 16   with sovereignty.  Because here you have a situation where you

9:28AM 17   have foreign nationals, international relations, different

9:28AM 18   legal regimes, so the courts have to be sensitive to that.

9:28AM 19        But all that leads me to, I think, a very

9:28AM 20   practical suggestion, that we look at the fact that the

9:28AM 21   Fourteenth Amendment controls, and the Court not, I won't say

9:28AM 22   burden yourself, but be pragmatic in looking at the boundaries

9:28AM 23   of the state of Louisiana are a preexisting political

9:28AM 24   limitation.  Let's use those and apply *BMS* in federal court

9:29AM 25   applying the Fourteenth Amendment.

9:29AM  1         And as we go through this, you'll see how we

9:29AM  2    suggest that we resolve what is, frankly, a very difficult

9:29AM  3    problem for the litigants and the Court, on we have overlapping

9:29AM  4    cases.  We have, in our view, a nonclass class action.  We've

9:29AM  5    got lots of moving parts here and lots of complication for the

9:29AM  6    Court to deal with.

9:29AM  7         Now, the inapplicability to class actions I

9:29AM  8    think is an interesting question.  We raised this in the first

9:29AM  9    instance because we looked at the case and said, this is a

9:29AM  10   strange animal.  As Your Honor is aware, the class definition

9:29AM  11   explicitly excludes absent class members, which are typically

9:29AM  12   designated out of no other class action, that there's got to be

9:29AM  13   a representative capacity going on.

9:29AM  14        And we think the post -- and let me just back

9:29AM  15   up.  We do have two different animals here.  But if you look at

9:29AM  16   the essence of what's a class versus a mass action, this, you

9:29AM  17   know, to use the analogy of, "It walks like a duck; it talks

9:30AM  18   like a duck," this litigation because the plaintiffs are all

9:30AM  19   known, they're all named, we don't have a limitation.

9:30AM  20        And to take a case cited by the PSC, the

9:30AM  21   *Dr. Pepper* case.  Their court post-*BMS* said, "I'm not going to

9:30AM  22   apply *BMS* to a class action," citing the fact that this is a

9:30AM  23   representative case.  "I, of course, will apply it to the class

9:30AM  24   representatives because they're the only known plaintiffs we

9:30AM  25   have.  I can't apply it to people who are unknown."

9:30AM  1          Now, he had a probabilistic understanding there
9:30AM  2   were lots of non-state actors.  But here there's no reason for
9:30AM  3   this Court, no legal justification, to apply the fiction of
9:30AM  4   "this has been labeled a class action," and the PSC has so
9:30AM  5   asserted to avoid the inquiry of, we know exactly where these
9:30AM  6   plaintiffs are.  They are named plaintiffs in litigation.
9:30AM  7          So we think the better course, the appropriate
9:30AM  8   course, is to ignore the fiction of the class action and treat
9:31AM  9   this as it actually is, a mass action.  We think that will help
9:31AM  10  clarify the decisions the Court has to make, the disposition of
9:31AM  11  these cases.  In some ways it actually may be to the advantage
9:31AM  12  of the plaintiffs, as we'll talk about in a moment.
9:31AM  13         There have been cases that I think make this
9:31AM  14  fairly clear.  I mentioned *Dental Supplies* and *Spratley*.  We
9:31AM  15  don't have a lot of jurisprudence yet because the *BMS* decision
9:31AM  16  itself is fairly young.  But these cases make it very clear
9:31AM  17  that personal jurisdiction concerns apply and due process
9:31AM  18  applies in the same context in the class action as it would in
9:31AM  19  individual actions.  We think that --
9:31AM  20         **THE COURT:**  But all of those cases that you cite,
9:31AM  21  none of them are class actions.
9:31AM  22         **MR. STENGEL:**  *Dental Supplies Antitrust Litigation* is
9:31AM  23  a class action, Your Honor.
9:31AM  24         Now, *Spratley* is confused, I'll confess, because
9:31AM  25  there were two cases, not consolidated, where one was a class

9:31AM 1    action, *Spratley* was not.  But they deferred final disposition

9:32AM 2    of the case observing that they wanted to see where class

9:32AM 3    certification went in *Spratley*.  So that's a chapter as of yet

9:32AM 4    not written.  But, in our view, the logic of this is powerful.

9:32AM 5    You can't evade the evaluation of due process because it's a

9:32AM 6    class action.

9:32AM 7            Rule 23, there's fair brief discussion.

9:32AM 8    Obviously, the rule's enabling act, as we've learned in *Amchem*

9:32AM 9    and *Ortiz* and elsewhere, doesn't give courts the power to

9:32AM 10   expand substantive rights under Rule 23.  It's a procedural

9:32AM 11   device.  So due process and personal jurisdiction limitations

9:32AM 12   apply despite the device of a class action.

9:32AM 13           The PSC cites *Phillips*, which is an interesting

9:32AM 14   case, but *Phillips* deals exclusively with the due process

9:32AM 15   rights of absent class members.  Raised by *Phillips*, there was

9:32AM 16   some interesting standing discussion, obviously, but the court

9:32AM 17   found standing.  But there the court found no more than for

9:33AM 18   absent class members an opportunity of notice and an ability to

9:33AM 19   be heard and ability to opt out were sufficient.

9:33AM 20           It's beyond the strict boundaries of personal

9:33AM 21   jurisdiction at this point.  I would say that the *Shutts*

9:33AM 22   decision does raise some questions for this Court going

9:33AM 23   forward.  Because the one thing that is clear is it places

9:33AM 24   substantial limitations on the Court's ability to apply foreign

9:33AM 25   state legal regimes without consideration of choice of law.

9:33AM  1   There the court said that's a full faith and credit violation

9:33AM  2   as well as a due process violation.

9:33AM  3           MDLs, and there are many -- the Court asked two

9:33AM  4   specific questions of us in passing.  One was how did we think

9:33AM  5   the *DePuy* decision in the Fifth Circuit -- I should say

9:33AM  6   decisions to be more accurate -- impact this Court.  There are

9:33AM  7   interesting issues relating to Lexecon and its impact, but

9:33AM  8   that's for another day.

9:33AM  9           We think what -- and they did not, in fairness,

9:33AM  10  cite *BMS*, but we think the attitude of that court was quite

9:33AM  11  clear, and it's consistent with prior jurisdiction, is the MDL

9:34AM  12  process has an impact on venue and jurisdiction in a very

9:34AM  13  limited way.  The transferor court, even for direct-filed

9:34AM  14  actions where the transferor court is in some sense a fiction,

9:34AM  15  has to have personal jurisdiction, and the venue has to be

9:34AM  16  appropriate in that court.

9:34AM  17          What the MDL statute does is allow for, again,

9:34AM  18  pragmatic reasons, this court can have cases over it which it

9:34AM  19  would not itself have personal jurisdiction or which for itself

9:34AM  20  would not be appropriate in venue.  That's all fine under 1407.

9:34AM  21  But you have to look back and find existent personal

9:34AM  22  jurisdiction in the initial court, and that's what's missing in

9:34AM  23  this analysis.  We can't just say the MDL statute overrules the

9:34AM  24  requirement for personal jurisdiction.

9:34AM  25          THE COURT:  Didn't I find that, though, already in

9:34AM 1 the two cases that the Fifth Circuit has ruled on?

9:34AM 2         **MR. STENGEL:**  Well, that may be better left to

9:34AM 3 Ms. Eikhoff for Taishan.  But, Your Honor, our position for

9:35AM 4 CNBM and BNBM is those decisions didn't touch on jurisdiction

9:35AM 5 as to us.  They related only to the issue of Taishan and TTP.

9:35AM 6         **THE COURT:**  Yeah.  But --

9:35AM 7         **MR. STENGEL:**  They were also limited in jurisdiction.

9:35AM 8         **THE COURT:**  Yeah.  I found, and I held up, given an

9:35AM 9 appeal at this point, but I found that you're stuck with it

9:35AM 10 because of agency, not from the standpoint of your doing

9:35AM 11 business.  My view was that you were doing business in the name

9:35AM 12 of Taishan.

9:35AM 13         **MR. STENGEL:**  Well, Your Honor --

9:35AM 14         **THE COURT:**  That's on appeal, and will be on appeal,

9:35AM 15 I'm sure.

9:35AM 16         **MR. STENGEL:**  To be very brief on that, we think that

9:35AM 17 the *BMS* opinion fairly stated should lead the Court to

9:35AM 18 re-examine its findings on both SBE and agency, but I won't

9:35AM 19 belabor the point given the limitation of time.

9:35AM 20         This gets to your point earlier, I mean, the

9:35AM 21 prior decisions on jurisdiction are, frankly, interesting.

9:36AM 22 Because, for example, on *Germano* there was an issue about

9:36AM 23 Virginia residents being the only parties in the case.  So in

9:36AM 24 an unintentional preview of where we are, you had a class

9:36AM 25 action that was, in fact, limited.  And, you know, the earlier

9:36AM 1    cases before we got to *Amorin* and *Brooke* were more conventional

9:36AM 2    class actions with absent class members.

9:36AM 3              But there the issue, and I think it was an

9:36AM 4    exchange with you and perhaps Mr. Levin, about dismissing

9:36AM 5    non-Virginia residents if there were any in the case.  So we

9:36AM 6    don't think the existing cases impact how *BMS* should apply.

9:36AM 7    And, in any event, *BMS* is a subsequent Supreme Court authority

9:36AM 8    which has to be taken into account by this Court.

9:36AM 9         **THE COURT:**  Where do you end up?  You end up by

9:36AM 10   saying there's no court in the country that's able to handle

9:36AM 11   this case?

9:36AM 12        **MR. STENGEL:**  No, Your Honor.  We have to divide this

9:36AM 13   by party.  Because what *BMS* counsels is you have to look at

9:36AM 14   jurisdiction as to each claim, each jurisdiction, and each

9:36AM 15   defendant.

9:36AM 16             And our view, as I noted, would be there is

9:36AM 17   probably no court in the country that can hear the claims

9:37AM 18   against C- and BNBM, with the possible exception that with BNBM

9:37AM 19   as to the 40 or 50 properties in Florida, a Florida court could

9:37AM 20   hear just those cases.  Those 40 properties don't give them

9:37AM 21   general jurisdiction as to the Taishan claims.  Again, we think

9:37AM 22   the agency and SBE claims fail for reasons relating to how *BMS*

9:37AM 23   operates.

9:37AM 24             But as to the Taishan claims, what we think

9:37AM 25   needs to happen is, and this is where the, from our

9:37AM 1    perspective, the somewhat inexplainable duplication of *Amorin*

9:37AM 2    cases and *Brooke* cases may actually help the Court in that --

9:37AM 3    and let me break this into two parts because those obviously

9:37AM 4    deal with Virginia, Florida and Louisiana residents.

9:37AM 5              This Court or the transferor courts should

9:37AM 6    dismiss from Louisiana *Amorin*, which makes it easier because

9:37AM 7    it's here, all the non-Louisiana property owners.  But those

9:38AM 8    people have existing cases in Florida or Virginia.  So those

9:38AM 9    people will all have a place to go.

9:38AM 10             The PSC has, in effect, recognized, and they've

9:38AM 11   styled the protective actions, but I think there's an agreement

9:38AM 12   that there's a problem here when they filed on August 1 the 11

9:38AM 13   or so what they call the protective actions.  Those are class

9:38AM 14   actions limited to a particular state, addressing your concern

9:38AM 15   about the appropriate geographic boundaries.  They are

9:38AM 16   conventional class actions.

9:38AM 17             And I haven't read all of them, so I have to be

9:38AM 18   careful here.  But I believe they're conventional in terms of

9:38AM 19   each of them is styled with representatives and absent class

9:38AM 20   members.  But those take care of this problem.

9:38AM 21             So, at the end of the day, if Your Honor were to

9:38AM 22   dismis the non-Louisiana claimants from Louisiana *Amorin* and

9:38AM 23   *Brooke*, the non-Florida residents from Florida *Amorin*, and the

9:38AM 24   corresponding non-Virginia residents in Virginia *Amorin*, we'd

9:38AM 25   then be -- I mean, that would not resolve all the issues.

9:38AM   1          There would be lots of remaining issues as to
9:38AM   2   what the consequence of that was, but that would give us a
9:39AM   3   geographically and arguably, at least as a first pass, sounder
9:39AM   4   personal jurisdiction configuration than we have right now.
9:39AM   5   Because right now we've got the hopeless problem of an obvious
9:39AM   6   *BMS* problem with having foreign, meaning foreign to Louisiana,
9:39AM   7   claimants and property owners here, and we don't think that can
9:39AM   8   follow *BMS*.  And --
9:39AM   9          THE COURT:  Yeah.  But what you're saying, though, is
9:39AM  10   that then you sacrifice Taishan, and before doing so, you
9:39AM  11   extract all of the resources from Taishan.  Then Taishan is a
9:39AM  12   target, but they don't have any resources to pay for it; and
9:39AM  13   you, doing business through Taishan, escape to China and say,
9:39AM  14   "You can't get me."
9:39AM  15          That's where we're going with this?
9:39AM  16          MR. STENGEL:  Well, Your Honor, in fairness, I don't
9:39AM  17   think that's consistent with any of the behavior you've seen
9:39AM  18   since we've re-appeared in the litigation.
9:40AM  19          THE COURT:  Well, I'm not sure.  Because we've been
9:40AM  20   here eight years now, and this time we're focusing on
9:40AM  21   jurisdiction after two courts in the circuit have held
9:40AM  22   jurisdiction, and you are even mentioned in those cases.
9:40AM  23          Now, whether or not those cases held you may be
9:40AM  24   an issue.  But to bring up jurisdiction after eight years just
9:40AM  25   seems to me that this is a delay.  In this particular case,

| | | |
|---|---|---|
| 9:40AM | 1 | people have been living outside of their homes for eight years |
| 9:40AM | 2 | while we're dealing with all of these things involving lack of |
| 9:40AM | 3 | service and involving contempt.  Everything that's happened in |
| 9:40AM | 4 | this case so far has just retarded the development of it. |
| 9:40AM | 5 | The other claimant has already resolved all of |
| 9:40AM | 6 | their cases.  We're at the point with Taishan and the alphabet |
| 9:41AM | 7 | that we're dealing with jurisdiction still.  It just is -- |
| 9:41AM | 8 | MR. STENGEL:  Your Honor, I understand the Court is |
| 9:41AM | 9 | frustrated -- |
| 9:41AM | 10 | THE COURT:  Yes. |
| 9:41AM | 11 | MR. STENGEL:  -- but there's not much I can do about |
| 9:41AM | 12 | that at this point in time.  I think since we've reentered the |
| 9:41AM | 13 | litigation, it would be hard to point to anything we've done to |
| 9:41AM | 14 | delay the litigation or interfere with its orderly progress. |
| 9:41AM | 15 | THE COURT:  Okay. |
| 9:41AM | 16 | MR. STENGEL:  We're, frankly, trying to help the |
| 9:41AM | 17 | Court by configuring this case in a way that will be legal. |
| 9:41AM | 18 | Because whether it's satisfactory because it adds further delay |
| 9:41AM | 19 | because of appeals or that things get undone because they're |
| 9:41AM | 20 | not legally sufficient, that's unfortunate.  But most of us |
| 9:41AM | 21 | want to live in a rule of law jurisdiction, and that's all |
| 9:41AM | 22 | we're asking the Court to do:  Apply the rules as they exist. |
| 9:41AM | 23 | BNBM and CNBM were not parties to the prior |
| 9:41AM | 24 | appeals.  There was a discussion of attribution between Taishan |
| 9:42AM | 25 | and one of its subsidiaries, but that really isn't relevant to |

| | |
|---|---|
| 9:42AM | 1 |
| 9:42AM | 2 |
| 9:42AM | 3 |
| 9:42AM | 4 |
| 9:42AM | 5 |
| 9:42AM | 6 |
| 9:42AM | 7 |
| 9:42AM | 8 |
| 9:42AM | 9 |
| 9:42AM | 10 |
| 9:42AM | 11 |
| 9:42AM | 12 |
| 9:42AM | 13 |
| 9:42AM | 14 |
| 9:42AM | 15 |
| 9:42AM | 16 |
| 9:42AM | 17 |
| 9:42AM | 18 |
| 9:43AM | 19 |
| 9:43AM | 20 |
| 9:43AM | 21 |
| 9:43AM | 22 |
| 9:43AM | 23 |
| 9:43AM | 24 |
| 9:43AM | 25 |

how you evaluate the relationship between CNBM, BNBM and
Taishan.

So what we're trying to do, Your Honor, frankly,
is help the Court come to a closer and more rapid resolution.
Because we can either fix this situation now, or we'll do it at
the end of the case, and that will lead to substantially more
delay.  And I don't say that by way of threat.  I just -- I
think it's a statement of accurate fact.

Finally, Your Honor, what we would -- and I've
given the Court, and I will pass on the relatedness argument.
In the last filing made yesterday by the PSC, having taken the
position until then that *BMS* didn't apply to this litigation
for a variety of the reasons we've discussed, they came up with
a new relatedness standard claiming that it survived *BMS*.

I think my introductory comments about how
*Nicastro* worked on the foreseeability standard puts that to
rest.  There is no new standard, and the relatedness standard
they propose is not legally sufficient.

But, finally, Your Honor, as we've talked about,
we think the non-resident claims need to be dismissed.  We
think the BNBM and CNBM claims are out with the possible
exception of the small number of BNBM claims in Florida which
can proceed only as to those properties.

And Your Honor certified this litigation before
the *BMS* issue was raised.  And we can debate the metes and

9:43AM 1  bounds of the impact of *BMS*; but I think the one thing that's
9:43AM 2  absolutely clear, it certainly doesn't weaken the position of
9:43AM 3  the defendants in this litigation, and it sharpens the issues
9:43AM 4  in dispute.
9:43AM 5          So if the Court is disinclined to give us the
9:43AM 6  relief we seek on personal jurisdiction grounds, we think it is
9:43AM 7  critical that the Court certify the entire personal
9:43AM 8  jurisdiction issue, and we think that certification should
9:43AM 9  include the prior jurisdictional decision as well as whatever
9:43AM 10 Your Honor crafts here in response to *BMS*.  Because we don't
9:43AM 11 think it's useful for any of us to have sort of a diffracted
9:44AM 12 issue or part of an issue taken to the circuit.
9:44AM 13       **THE COURT:**  All right.  Let me ask you, rather than
9:44AM 14 dismiss, why wouldn't I transfer the cases?
9:44AM 15       **MR. STENGEL:**  Well, Your Honor, the problem is in
9:44AM 16 part the jurisdictional or the procedural decisions the
9:44AM 17 plaintiffs have made here.  I don't know that you can transfer
9:44AM 18 a claim independent of a case.  I think there are also -- and
9:44AM 19 this is, again, outside of the scope of where I wanted to go
9:44AM 20 with talking about *DePuy*.  I think there are limitations on
9:44AM 21 your ability to do anything other than send cases back as a
9:44AM 22 transferee court.
9:44AM 23       So I think, you know, it's probably a closer
9:44AM 24 call in our mind than just the threshold jurisdictional issue.
9:44AM 25 But I don't think -- I think this is a dismissal given where we

1    are.

2            But, again, at least in terms of the *Amorin* and

3    *Brooke* plaintiffs, they would likely end up, and I can't -- I

4    have to be careful because there may be sort of orphan

5    claimants in there that aren't one of those three states and

6    not protected by the protective actions.

7            But we think, for the most part, that dismissal

8    would not leave stranded claimants.  It might have an impact on

9    their rights, but they'd be in a case someplace.

10           **THE COURT:**  Okay.

11           **MR. STENGEL:**  So I -- sorry to have run over time,

12   Your Honor.

13           **THE COURT:**  No, that's okay.  Fine.  Thank you very

14   much.  You've been very helpful.

15           **MR. STENGEL:**  Thank you.

16           **MS. EIKHOFF:**  Good morning, Judge Fallon.  Christy

17   Eikhoff on behalf of Taishan.  I am certainly not going to

18   retread the ground that was just so ably covered by

19   Mr. Stengel, but I do want to address with the Court how

20   Taishan is in a different procedural position than CNBM and the

21   BNBM entities.

22           Now, as the Court has already noted this

23   morning, it is true, and Taishan certainly recognizes that this

24   Court did extensive jurisdictional discovery and analysis in

25   2010 through 2012 when Taishan was represented by prior

9:46AM 1   counsel.  And this Court's analysis culminated in its
9:46AM 2   September 4th, 2012 order in which this Court held that the
9:46AM 3   plaintiffs had met their burden to prove specific jurisdiction
9:46AM 4   for certain Florida plaintiffs in Florida, for certain
9:46AM 5   Louisiana plaintiffs in Louisiana, and certain Virginia
9:46AM 6   plaintiffs in Virginia.  And these were the *Wiltz*, *Gross*,
9:46AM 7   *Mitchell* and *Germano* cases.
9:46AM 8                 Of course, those were upheld by the Fifth
9:46AM 9   Circuit, and Taishan cannot, and will not, seek to revisit this
9:46AM 10  Court's decisions here.  But why we are standing here today,
9:47AM 11  Your Honor, is to take grave issue with the jurisdictional
9:47AM 12  failings that are present in the current class before this
9:47AM 13  Court and the subsequently filed complaints.
9:47AM 14                 If I may illustrate that, Your Honor, the only
9:47AM 15  class that's certified in this case is *Amorin*.  And as
9:47AM 16  Mr. Stengel just noted, and as the Court is well aware, all of
9:47AM 17  the plaintiffs in *Amorin* are identified.  We know who they are.
9:47AM 18  We know their names.  We know their addresses.  We know what
9:47AM 19  states they live in.
9:47AM 20                 And what the PSC did when they filed the first
9:47AM 21  *Amorin* class complaint is that they filed it for all plaintiffs
9:47AM 22  in all states in Florida first as Omni 15.  And then
9:47AM 23  immediately they filed the exact same complaint, same
9:47AM 24  plaintiffs, same states, in Louisiana as Omni 16.  And then
9:48AM 25  they triplicated their efforts by doing the exact same thing

9:48AM   1   for the same plaintiffs in all the same states in Virginia as
9:48AM   2   Omni 17.
9:48AM   3              Now, we have already recognized that this Court
9:48AM   4   found jurisdiction over Taishan in Louisiana, Florida and
9:48AM   5   Virginia for specific activities that it analyzed with respect
9:48AM   6   to specific claims.  But what the PSC has not done, and what
9:48AM   7   has not yet been analyzed in this case, is how all of the
9:48AM   8   claimants in all of the states that are blue on this map tie to
9:48AM   9   those specific findings of jurisdiction.  It's the PSC's burden
9:48AM   10  to show that under *BMS*, and they have not even attempted to
9:48AM   11  meet that burden.
9:48AM   12             And quickly I'll show you that the PSC did the
9:48AM   13  exact same thing in November of 2015 when they filed *Brooke*.
9:49AM   14  They filed it as Omni 20 in Florida, same thing.  They called
9:49AM   15  it Omni 20 again in Louisiana.  And the third Omni 20 was filed
9:49AM   16  for all of the same plaintiffs in all of these cases in
9:49AM   17  Virginia.
9:49AM   18             And, once again, we are in a situation where
9:49AM   19  there are more than 100 claimants that aren't in those three
9:49AM   20  states and for which no connection or tie has been shown to
9:49AM   21  establish jurisdiction in those three states.
9:49AM   22             Now, very recently, as Mr. Stengel just
9:49AM   23  referenced, the PSC has seemed to have stepped away a bit from
9:49AM   24  their argument that *BMS* doesn't apply at all and come up with a
9:49AM   25  new theory that they've satisfied *BMS* because they say -- and

9:49AM  1   this was in a footnote of a brief that they filed just late

9:49AM  2   last week.  They say, well, obviously there's jurisdiction in

9:49AM  3   all of the states because states are contiguous and we don't

9:50AM  4   have walls between states.  And, Your Honor, there are a lot of

9:50AM  5   problems with that argument.

9:50AM  6              First of all, this is nothing but speculation.

9:50AM  7   It's not evidence.  It doesn't meet their burden.  It's mere

9:50AM  8   geographic observations, and that does not meet the burden of

9:50AM  9   proof.

9:50AM  10             And, interestingly, the PSC's own observations

9:50AM  11  about geography have been internally inconsistent.  In the

9:50AM  12  *DePuy* brief that they filed late in September when they first

9:50AM  13  started unspooling this theory, they -- in one paragraph they

9:50AM  14  say, well, the products would have made their way to Alabama

9:50AM  15  coming in through Florida.  And in the very next sentence they

9:50AM  16  say, well, and the products would have made their way to

9:50AM  17  Alabama coming from Louisiana.  Well, which is it?  We need to

9:50AM  18  know.  It's not enough just to speculate of where it could have

9:50AM  19  come from.

9:51AM  20             And, in fact, if you look at the actual evidence

9:51AM  21  by the PSC's own analysis what they've submitted on their

9:51AM  22  spreadsheets to this Court, there are approximately one dozen

9:51AM  23  different types of product markings found for the claims in

9:51AM  24  Alabama.

9:51AM  25             THE COURT:  But aren't all of those arguments

9:51AM  1    finalized by the circuit's decision?  The circuit on two

9:51AM  2    occasions validated my ruling.  Doesn't that end the matter?

9:51AM  3    You didn't go to the Supreme Court at that point.

9:51AM  4             MS. EIKHOFF:  Your Honor, that did end the matter for

9:51AM  5    *Wiltz*, *Germano*, *Mitchell*, and *Gross*.  Yes, for those

9:51AM  6    plaintiffs, they showed a tie, and this Court found it, and it

9:51AM  7    was upheld by the Fifth Circuit.

9:51AM  8             But getting back to the demonstrative, we have

9:51AM  9    claimants in all of these other states.  And *BMS* -- the crux of

9:51AM  10   *BMS* is that you cannot assume jurisdiction in another state on

9:51AM  11   the basis of having previously found it in one state.  If it

9:52AM  12   exists in one state, it does not follow that it must exist

9:52AM  13   somewhere else based on assumptions.

9:52AM  14            So this Court -- so in stark contrast, the PSC's

9:52AM  15   observation that we don't have walls between our states, I

9:52AM  16   would offer to this Court that, in fact, *BMS* erects

9:52AM  17   constitutional walls -- or they didn't even erect it.  It

9:52AM  18   recognizes that there are jurisdictional territorial

9:52AM  19   limitations between the states.  And in that case, Your Honor,

9:52AM  20   they put a wall around California and said the other ones don't

9:52AM  21   get in whether they share a border or not.

9:52AM  22            And Your Honor had spoken previously about the

9:52AM  23   100-mile bubble and, you know, this idea that maybe the state

9:52AM  24   borders are porous, but *BMS* holds the opposite.  *BMS* talks

9:52AM  25   specifically that there are territorial limitations on power,

9:53AM  1   and that arises from this court sitting in diversity acting as

9:53AM  2   a sovereign to enforce that state's laws.

9:53AM  3           So the borders are not porous and, therefore, in

9:53AM  4   light of these territorial limitations, these jurisdictional

9:53AM  5   walls that were recognized and enforced in *BMS* --

9:53AM  6           THE COURT:  Yes.  But you're assuming *BMS* applies to

9:53AM  7   class actions, and that's really a seminal issue.  That's what

9:53AM  8   we have to deal with.  Because in your argument there would be

9:53AM  9   no such thing as a national class action.

9:53AM  10          MS. EIKHOFF:  Your Honor, and you have -- when you

9:53AM  11  can identify with this level of precision with names and

9:53AM  12  addresses where all of the claimants are whether they are in a

9:53AM  13  class or not, we think that they absolutely are subject to a

9:53AM  14  *BMS* analysis.

9:53AM  15          That's it.

9:54AM  16          THE COURT:  Is that it?

9:54AM  17          Okay.  From the plaintiffs' standpoint, the

9:54AM  18  defendants raise a point that this is really a mass action

9:54AM  19  styled as a class action, and it's really not a class action

9:54AM  20  and, therefore, *BMS* is applicable because it's the same animal.

9:54AM  21  You've just called a duck a chicken and it's still a duck.

9:54AM  22          MR. LEVIN:  Well, this duck, Your Honor, is a class

9:54AM  23  action.  Due process has been afforded to the class under

9:54AM  24  Rule 23.  There is nowhere any rule that says if you know the

9:54AM  25  names and you can identify the class and there's no absent

9:54AM   1   class member, that you cannot certify the class.  The
9:55AM   2   defendants are attempting to deconstruct nine years of
9:55AM   3   litigation here and go back to square one.  Charles Dickens
9:55AM   4   would have a field day with them in Bleak House for what
9:55AM   5   they've put the plaintiffs through here.
9:55AM   6                Your Honor, if you couldn't have named class
9:55AM   7   members in a class, our clients would not have gotten
9:55AM   8   $1.1 million from the Knauf settlement because the Knauf
9:55AM   9   settlement by definition only included the names of those on
9:55AM   10  the Omni complaints as to Knauf.  As to -- same complaint as to
9:55AM   11  L&W, Banner, InEx.  There were absent class members.  Even the
9:56AM   12  builders got it.
9:56AM   13               The only difference between Knauf and the
9:56AM   14  present *Amorin* class is whether Your Honor, in handling the
9:56AM   15  litigation, could see yourself handling the manageability
9:56AM   16  issues of Rule 23.  It's not a jurisdictional issue; it's a
9:56AM   17  manageability issue that a settlement class doesn't have.
9:56AM   18               But Your Honor certified the class.
9:56AM   19  Independently, you wrote an opinion with findings of fact and
9:56AM   20  conclusions of law, and you certified the class.  It's not my
9:56AM   21  problem that they were hiding out in China at that time by
9:56AM   22  design with instructions from American and Chinese lawyers
9:56AM   23  because they thought that was the way to get away from the
9:56AM   24  situation that they created here.
9:56AM   25               They came back in.  They always come back in.

9:57AM 1    Like you do with a bully, you have to make a threat, and there

9:57AM 2    has to be a contempt.  It has to be something that hurts.  They

9:57AM 3    come back in, and they argued for decertification, sir.  And

9:57AM 4    when they argued for decertification, they went through

9:57AM 5    everything in Rule 23.  They never raised those issues.

9:57AM 6    They're raising them now, but they never raised those issues,

9:57AM 7    sir.

9:57AM 8            And Your Honor asked them in open Court, "What

9:57AM 9    are you doing?  You want to try 4,000 cases?  Rule 23 solves

9:57AM 10   that problem logistically."  And they said, "Oh, yeah.  We want

9:57AM 11   to try 4,000 cases all over."  Your Honor ruled.  They then

9:57AM 12   went to certify for appeal under 1292(b).  That was rejected.

9:57AM 13   Now here they are again, another bite at the apple.

9:58AM 14           Your Honor, there are two types of cases here

9:58AM 15   that we see.  We see the *Amorin* class that has been certified,

9:58AM 16   and we see the *Brooke* claims that have been brought as class

9:58AM 17   claims.  We have agreed in our end game that *Brooke* should be

9:58AM 18   treated differently than *Amorin*, and there should be a remand

9:58AM 19   of those *Brooke* plaintiffs.

9:58AM 20           And that could easily be done, Your Honor,

9:58AM 21   because on August 31st, 1917, (verbatim) because we had been

9:58AM 22   discussing this, we've given you charts to show how *Brooke*

9:58AM 23   could be remanded through various states.

9:58AM 24           May I hand them up, sir?

9:58AM 25       **THE COURT:**  Yes.

| | | |
|---|---|---|
| 9:58AM | 1 | **MR. LEVIN:**  May I approach? |
| 9:58AM | 2 | **THE COURT:**  Yes. |
| 9:59AM | 3 | **MR. LEVIN:**  Now, why are there three -- Your Honor, |
| 9:59AM | 4 | I'm going to pass over the Fifth Circuit opinions and Your |
| 9:59AM | 5 | Honor's opinion that is trying to be undone now.  But why did |
| 9:59AM | 6 | we bring three different cases with everybody in them in |
| 9:59AM | 7 | Florida, Virginia and Louisiana?  That's 90 percent of the |
| 9:59AM | 8 | plaintiffs here.  We did it in *Brooke* too, although *Brooke* is |
| 9:59AM | 9 | not defaulted and has not been certified.  The reason being is |
| 9:59AM | 10 | the law said that in order to establish personal jurisdiction, |
| 9:59AM | 11 | you have to target the state. |
| 9:59AM | 12 | Well, those states were targeted, and I said I |
| 9:59AM | 13 | wouldn't say it, but the Fifth Circuit and Your Honor certainly |
| 9:59AM | 14 | agreed with that, and that's to protect everybody.  We brought |
| 9:59AM | 15 | all those claims in those states.  Now, they could be unbundled |
| 10:00AM | 16 | as to *Brooke.*  *Amorin* is a class; it's cohesive. |
| 10:00AM | 17 | What the defendants want to do is dismiss cases |
| 10:00AM | 18 | to run away from statute of limitations -- to defeat statute of |
| 10:00AM | 19 | limitations and the default judgment that Your Honor ordered. |
| 10:00AM | 20 | That shouldn't be done.  There are 11 other states that make up |
| 10:00AM | 21 | the ten percent.  Your Honor mentioned the fact that there were |
| 10:00AM | 22 | other states in your opinion. |
| 10:00AM | 23 | When *Bristol-Myers* came out, we didn't agree |
| 10:00AM | 24 | with it, but we tried to cover the proverbial part of the |
| 10:00AM | 25 | anatomy by bringing cases in those jurisdictions and bringing |

10:00AM  1   them over to the MDL where they could be remanded back.

10:00AM  2   They're Alabama.  They're Mississippi.  We know that InEx

10:00AM  3   submits its product to contiguous states.

10:00AM  4           In Virginia, Venture Supply products ended up in

10:00AM  5   Georgia and North Carolina.  We don't -- they showed it -- that

10:01AM  6   was a good line that I put in there -- there's no walls between

10:01AM  7   the states, and the court does recognize that.

10:01AM  8           The *Bristol-Myers* opinion does not change the

10:01AM  9   terrain.  It does not change established law.  In fact, when

10:01AM  10  argued, the party that did not support the *Bristol-Myers*

10:01AM  11  opinion's dictates said, "There's going to be a parade of

10:01AM  12  horribles here."  And Justice Alito said, there's no parade.  I

10:01AM  13  mean, this is the law as we've always had it.  This is

10:01AM  14  different.

10:01AM  15          Well, the parade of horribles that Justice Alito

10:02AM  16  said shouldn't occur, and wouldn't occur, are attempting to

10:02AM  17  occur in this courtroom today.

10:02AM  18          THE COURT:  If this were a mass tort, if your claim

10:02AM  19  was a mass tort instead of a class action, would *Bristol-Myers*

10:02AM  20  be applicable?

10:02AM  21          MR. LEVIN:  Not the way this was captioned, Your

10:02AM  22  Honor.  Because in the end game, we've likened it to sort of a

10:02AM  23  mass tort because we've given up tactically the fact that all

10:02AM  24  these claims were brought pursuant to CAFA, and CAFA expanded

10:02AM  25  the jurisdiction and diversity of CAFA class actions.  And

10:02AM  1    there's no question that if on the federal side, not the

10:03AM  2    Fourteenth Amendment, on the Fifth Amendment, under *Shady*

10:03AM  3    *Grove*, Justice Scalia said, yeah, I know this is going to

10:03AM  4    expand class actions, but a federal -- but in the federal side

10:03AM  5    of the bar, you can do that.  And that's exactly what CAFA --

10:03AM  6             So we don't have a mass tort here.  We have two

10:03AM  7    CAFA complaints.  Everybody is -- we did that purposely,

10:03AM  8    alleged everything under CAFA.  We had a reason for doing it

10:03AM  9    because we wanted to bring in 2,000 defendants rather than run

10:03AM 10    around to the states after those particular defendants as they

10:03AM 11    would like us to do with regard to Taishan, CNBM and BNBM.

10:03AM 12             So these are class actions.  But the *Brooke* case

10:03AM 13    is not certified.  Under the circumstances, we voluntarily said

10:03AM 14    and stated on the record in our end game that we would agree --

10:04AM 15    we would agree -- if Your Honor were to transfer them, they

10:04AM 16    could be transferred to the home jurisdictions where the

10:04AM 17    properties exist.  But it still was styled as a CAFA case to

10:04AM 18    establish that jurisdiction.

10:04AM 19         THE COURT:  Well, of course, CAFA includes both mass

10:04AM 20    tort and class actions.

10:04AM 21         MR. LEVIN:  Absolutely.  Absolutely, it includes

10:04AM 22    both.  We included it as a class action.  But even as a mass

10:04AM 23    tort, CAFA was designed to have national classes, multistate

10:04AM 24    national classes.  They're walking away from CAFA at this

10:04AM 25    point.

|       |    |                                                                              |
|-------|----|------------------------------------------------------------------------------|
| 10:04AM | 1 | **THE COURT:**  So you see the *Brooke* case as not being |
| 10:04AM | 2 | affected by CAFA mass actions? |
| 10:04AM | 3 | **MR. LEVIN:**  Yes, I do.  Yes, I do, Your Honor. |
| 10:05AM | 4 | Although, from a practical standpoint, we've agreed to remands |
| 10:05AM | 5 | of the *Brooke* cases and just leave the Louisiana binary |
| 10:05AM | 6 | litigation in front of Your Honor and the *Amorin* class in front |
| 10:05AM | 7 | of Your Honor and let that go. |
| 10:05AM | 8 | Your Honor recognized the many different |
| 10:05AM | 9 | plaintiffs' jurisdictions in your initial jurisdictional order |
| 10:05AM | 10 | when you said -- when you stated that at some point in time -- |
| 10:05AM | 11 | and that's before certification -- cases could be transferred, |
| 10:05AM | 12 | I believe at that time we said pursuant to 1404(a) to its home |
| 10:05AM | 13 | jurisdiction, and that posed no problem. |
| 10:05AM | 14 | And we do have the targeting in the three states |
| 10:05AM | 15 | that make up 90 percent of the class because both the Fifth |
| 10:05AM | 16 | Circuit and Your Honor evaluated those cases under Fourth |
| 10:06AM | 17 | Circuit, Fifth Circuit and the Eleventh Circuit law.  So there |
| 10:06AM | 18 | certainly was jurisdiction in Florida, Virginia and Louisiana. |
| 10:06AM | 19 | **THE COURT:**  How about the other states? |
| 10:06AM | 20 | **MR. LEVIN:**  Well, the other states are contiguous or |
| 10:06AM | 21 | a spillover from the distributors, Banner and InEx and L&W. |
| 10:06AM | 22 | Because to target the United States -- and the courts do say |
| 10:06AM | 23 | that the Chinese defendants here targeted the United States. |
| 10:06AM | 24 | They didn't have to have a distributor in |
| 10:06AM | 25 | Alabama for the Alabama plaintiffs to obtain relief if they got |

10:06AM 1   it from InEx that was right next door.  The situation becomes

10:06AM 2   bizarre if you don't do that.  And those issues on remand can

10:07AM 3   be dealt with by the judge -- we'll call him the transferor

10:07AM 4   judge -- at that time.

10:07AM 5            Now, there are some 80 cases or more that have

10:07AM 6   applied *Bristol-Myers* as this -- in connection with dismissals.

10:07AM 7   There's maybe 15 that have not.  For the most part, those

10:07AM 8   cases, if you look at them, they're plaintiffs that didn't want

10:07AM 9   to be in federal court in the first place, so they said

10:07AM 10  nothing.  They stayed away from MDLs because they called MDLs a

10:07AM 11  black hole, which we found in the Eastern District of Louisiana

10:07AM 12  it's not unless the defendants contribute to the black hole as

10:07AM 13  they've done here.

10:07AM 14           In many of the cases there was other reasons and

10:08AM 15  the *Bristol-Myers* issue was a throw-away.  In the last brief,

10:08AM 16  *Dr. Pepper*, or Sergeant Pepper's band, came in and they -- the

10:08AM 17  whole brief was just one sentence in it that said *Bristol-Myers*

10:08AM 18  doesn't apply to a class action.

10:08AM 19           There's something fundamentally wrong about the

10:08AM 20  defendants harping on this *Bristol-Myers* decision as the end

10:08AM 21  all in their quest to pay nothing to the plaintiffs in this

10:08AM 22  litigation, to keep this litigation going so that at the end

10:08AM 23  either our clients will have sold their homes, lost their

10:08AM 24  homes, or be dead.  It's nine and a half years.  They've

10:08AM 25  accomplished that much in nine and a half years.  If you give

| | |
|---|---|
| 10:08AM | 1 |
| 10:08AM | 2 |
| 10:09AM | 3 |
| 10:09AM | 4 |
| 10:09AM | 5 |
| 10:09AM | 6 |
| 10:09AM | 7 |
| 10:09AM | 8 |
| 10:09AM | 9 |
| 10:09AM | 10 |
| 10:09AM | 11 |
| 10:09AM | 12 |
| 10:09AM | 13 |
| 10:09AM | 14 |
| 10:10AM | 15 |
| 10:10AM | 16 |
| 10:10AM | 17 |
| 10:10AM | 18 |
| 10:10AM | 19 |
| 10:10AM | 20 |
| 10:10AM | 21 |
| 10:10AM | 22 |
| 10:10AM | 23 |
| 10:10AM | 24 |
| 10:10AM | 25 |

1  them nine and a half years, Your Honor, I hope you, myself and
2  Russ Herman are still here.  I know they will be.
3          But there's two cases that mean a lot to me.
4  The case in *Illinois* and the *Azteca* case in Texas.
5  *Bristol-Myers* was argued in the Supreme Court petitions for
6  certiorari in those cases, and it was denied; denied by a court
7  that just entered an opinion that's the end all to everything
8  called *Bristol-Myers*, and they denied it.  Now, we know that
9  that's not controlling law, but it basically says something
10  about whether *Bristol-Myers* applied.
11          Your Honor may remember when *Mascuilli versus*
12  *United States* went to the Supreme Court.  We were both young
13  lawyers at that time.  And the District Court in the Eastern
14  District, Judge Body, found there was -- the operational
15  negligence of the stevedore did not render the vessel
16  unseaworthy.  The Third Circuit said, in an abbreviated opinion
17  of one page, that's right.
18          A petition for certiorari was taken to the
19  Supreme Court.  The Supreme Court knew exactly what to do, as
20  the Supreme Court would have done with *Bristol-Myers* here, they
21  reversed, vacated and remanded, and said, "See *Mahnich*; see
22  *Crumady*."  They were two maritime cases that supported that
23  position.  The Supreme Court didn't do that here.
24          It didn't do that in spite of the fact that
25  Justice Gorsuch, who was a Court of Appeals judge in the Tenth

10:10AM  1    Circuit, analyzed personal jurisdiction in a *Palsgraf*-ian
10:10AM  2    analysis that didn't include -- include three things, but
10:10AM  3    didn't include the sliding scale of the state court in
10:11AM  4    California in *Bristol-Myers*.
10:11AM  5              The defendants have not addressed that case in
10:11AM  6    their recent papers.  And we've all seen and heard the hearings
10:11AM  7    involving Justice Gorsuch's appointment to the Supreme Court.
10:11AM  8    Like most Supreme Court judges -- or all Supreme Court judges,
10:11AM  9    he wasn't bashful.  He was no potted plant.  He was no
10:11AM  10   shrinking violet.  He would have said something when those
10:11AM  11   petitions were up if that was applicable, but it's not
10:11AM  12   applicable.
10:11AM  13             And, quite frankly, if you look at the law, we
10:11AM  14   haven't come a long way from *Worldwide*.  We haven't come a long
10:11AM  15   way from *Worldwide* at all.  It's really the same thing.  It's a
10:11AM  16   question of foreseeability.  And it certainly was
10:12AM  17   foreseeability that their product would end up everyplace.
10:12AM  18        THE COURT:  Okay.  I understand your argument.
10:12AM  19        MR. LEVIN:  I think I've said enough because
10:12AM  20   Mr. Herman has to say what he has to say, and it should be
10:12AM  21   enlightening because I know what he's going to say.
10:12AM  22        THE COURT:  All right.  Let's take five minutes,
10:12AM  23   Mr. Herman.
10:12AM  24        MR. HERMAN:  I'll try to take five minutes, and if I
10:12AM  25   take more than that, Your Honor, stop me, and I'll sit down,

10:12AM  1    and I'll do it very quickly.

10:12AM  2              THE COURT:  Okay.

10:12AM  3              MR. HERMAN:  Most of us live under the rule of law

10:12AM  4    says learned counsel.  That's true except for the Chinese.

10:12AM  5    They can target defective products in the United States and

10:12AM  6    then escape liability through a series of nine years of delay,

10:12AM  7    contempt, retreat from the Court, and misstatement.

10:12AM  8              Your Honor asked a question, well, what about

10:13AM  9    the other cases?  If Your Honor please, in the record, Record

10:13AM  10   No. 2012, very important, Exhibit 1 to the Herman affidavit

10:13AM  11   shows that California, Florida, Louisiana, New York, North

10:13AM  12   Carolina, and Virginia were targeted, that invoices and product

10:13AM  13   were delivered in those states.  That takes care of that

10:13AM  14   question.

10:13AM  15             Now, for 3,000 -- we've said all along, we've

10:13AM  16   got 3,000 folks that we represent who haven't been paid a dime

10:13AM  17   while this case has gone on despite the fact that there have

10:13AM  18   been depositions three times in China, once in New York, once

10:13AM  19   in Norfolk, and for a week of depositions here, which clearly

10:13AM  20   show targeting, stream of commerce, and intention, and

10:13AM  21   foreseeability on the part of these defendants.

10:14AM  22             Now, I guess I'm just simple, and I know I am

10:14AM  23   because I look at this as client representation.  And I look at

10:14AM  24   it within the construct that you couldn't deprive 3,000 people

10:14AM  25   of due process but give 100 percent of due process to the

10:14AM  1    opponents.

10:14AM  2              Lastly, I want to say this, Your Honor, Taishan

10:14AM  3    withdrew twice.  There are two Fifth Circuit decisions Your

10:14AM  4    Honor is very familiar with.  There are contempt order

10:14AM  5    violations by CNBM and Taishan's other affiliates which show

10:14AM  6    that in this court there's jurisdiction because that contempt

10:14AM  7    order was issued here and those violations occurred even though

10:14AM  8    in other states there were violations of Your Honor's orders

10:14AM  9    here.  And where are they?  In New York, Illinois, Washington,

10:15AM  10   Oregon and Texas.

10:15AM  11             Now, we know just as in *Through the Looking*

10:15AM  12   *Glass* -- and I mean no disparagement of lawyers or their

10:15AM  13   clients.  These are top-notch lawyers and professionals --

10:15AM  14   Tweedledum and Tweedledee, they're supposed to be different,

10:15AM  15   but Alice can tell they're not.  They attempt to look like

10:15AM  16   they're different by staging a fight where nobody hits anybody

10:15AM  17   and they roll off arm in arm.

10:15AM  18             Taishan, CNBM, BNBM are arm in arm.  The

10:15AM  19   evidence shows that.  They've been arm in arm from the

10:15AM  20   beginning.  It's not just agency.  In many cases, it's alter

10:15AM  21   ego or single business purpose.  They have reaped the benefits

10:15AM  22   because money flows up and loans flow down.

10:15AM  23             Lastly, Your Honor, in addition to the chain of

10:16AM  24   commerce, in addition to all the other rulings that have been

10:16AM  25   made in this court, with briefing and briefing and briefing --

| | |
|---|---|
| 10:16AM | 1 |
| 10:16AM | 2 |
| 10:16AM | 3 |
| 10:16AM | 4 |
| 10:16AM | 5 |
| 10:16AM | 6 |
| 10:16AM | 7 |
| 10:16AM | 8 |
| 10:16AM | 9 |
| 10:16AM | 10 |
| 10:17AM | 11 |
| 10:17AM | 12 |
| 10:17AM | 13 |
| 10:17AM | 14 |
| 10:17AM | 15 |
| 10:17AM | 16 |
| 10:17AM | 17 |
| 10:17AM | 18 |
| 10:17AM | 19 |
| 10:17AM | 20 |
| 10:17AM | 21 |
| 10:17AM | 22 |
| 10:17AM | 23 |
| 10:17AM | 24 |
| 10:17AM | 25 |

and I want to thank the excellent briefs that Arnold Levin's firm worked so hard on in this case.  Even though some of us are listed as contributing in the brief, it's really their work.

There's one more thing in *Through the Looking Glass*:  "Twas brillig with slithy toves and gyre."  Now, I never knew what that meant.  I had to go back and read it. What it is is a circular argument, and this syllogism:  "If it was so, it might be so; and if it was so, it should be; but as it isn't, it ain't.  That's just logic."  Chapter 4, *Through the Looking Glass*.

Because what's happened here is an attempt to link *Bristol-Myers'* case to disarm, defuse, and tear down all the work that's been done in this court in nine years, and not just in this court, but also in the Fifth Circuit.  Their arguments are not logical and they're circular.

Thank you, Your Honor.

THE COURT:  All right.  Thank you.

Let me hear your response.  Not a response to Alice.

MR. STENGEL:  Your Honor, I was going to apologize up front because my knowledge of *Alice in Wonderland* probably doesn't really equip me to deal fully with Mr. Herman's argument.

But I will deal with the arguments made here.

10:17AM  1    Part of this, the structure that we find ourselves in, the

10:17AM  2    class definition and the class certification, is a set of

10:17AM  3    decisions made by the PSC itself.  We had nothing to do with

10:17AM  4    their decision to omit absent class members.  We had nothing to

10:17AM  5    do with their decision to make only named class members members

10:18AM  6    of the *Amorin* and *Brooke* classes.  But those decisions have

10:18AM  7    consequences, and you can't make *Bristol-Myers Squibb* and the

10:18AM  8    body of personal jurisdiction law go away by declaration or by

10:18AM  9    statements of will or intent.

10:18AM  10            The passage of time is unfortunate; no one

10:18AM  11   disputes that, but the law must be applied.  Our clients have

10:18AM  12   due process rights that must be respected by this Court.  And

10:18AM  13   what we have tried to do through the briefing here and prior

10:18AM  14   briefing is provide the Court with guidance on how we can get

10:18AM  15   to a final resolution of this litigation consistent with the

10:18AM  16   law.

10:18AM  17            I heard nothing in this presentation that

10:18AM  18   contradicted our notion that the MDL statute doesn't give this

10:18AM  19   Court an elevated or a different set of jurisdictional rights.

10:18AM  20   I heard nothing that said, gee, if you start remanding the

10:18AM  21   *Amorin* cases as they are now, you're going to create an unholy

10:19AM  22   mess because you're going to have overlapping classes with the

10:19AM  23   Amorins in six different cases.  How do you remand that?

10:19AM  24            We're suggesting there's a way to conduct some

10:19AM  25   surgery on this where the clients may survive.  Now, we're not

10:19AM 1  conceding any rights.  If *Amorin* is sent or stays in Louisiana,
10:19AM 2  there are issues as to the validity of claims we intend to
10:19AM 3  raise.  So no one should be under any misapprehension that my
10:19AM 4  suggestion on how we can re-configure this class geographically
10:19AM 5  means we'll walk away from our rights.  We won't.  We then
10:19AM 6  think we'll be on a platform where we can do a meaningful job
10:19AM 7  of ascertaining what each parties' rights are and move from
10:19AM 8  there.
10:19AM 9           We keep getting into a repetition of arguments.
10:19AM 10 We hear about time.  We hear about the bad Chinese, which I
10:19AM 11 find offensive, frankly, but I'm used to it at this point.  But
10:19AM 12 we don't get towards a useful position.  It doesn't help to
10:19AM 13 talk about contempt.  It doesn't help to talk about when people
10:19AM 14 decided, whether they did in fact, not to show up here.
10:19AM 15          What *Bristol-Myers Squibb* and all of the other
10:19AM 16 specific jurisdiction decisions require is that this Court look
10:20AM 17 at what the contacts were of each defendant at the time the
10:20AM 18 transactions occurred which gave rise to cause of action and
10:20AM 19 where the plaintiff was injured.  That's a fairly
10:20AM 20 straightforward inquiry.  And *Bristol-Myers* dictates that that
10:20AM 21 inquiry take place here and that there's no evasion of that
10:20AM 22 obligation.
10:20AM 23          And we've heard nothing here that suggests that
10:20AM 24 our explanations for why this isn't a class action, Rule 23
10:20AM 25 doesn't control, CAFA, which creates subject matter not

10:20AM 1  personal jurisdiction, is, frankly, irrelevant here.  And I'm

10:20AM 2  actually confused because the suggestions of what could be done

10:20AM 3  with *Brooke* seem to suggest, along with the filing the

10:20AM 4  protective actions, that there's some recognition of merit in

10:20AM 5  the position we're taking with *Bristol-Myers Squibb*.

10:20AM 6          Thank you, Your Honor.

10:20AM 7        **THE COURT:**  Okay.  Thank you very much both of you.

10:20AM 8  I've enjoyed your briefs.  They're very thorough.  I appreciate

10:21AM 9  the arguments.  They've been very helpful.

10:21AM 10         Court will stand in recess.

10:21AM 11       **THE DEPUTY CLERK:**  All rise.

10:21AM 12       (WHEREUPON, the proceedings were concluded.)

10:21AM 13              \*\*\*\*\*

10:21AM 14             <u>CERTIFICATE</u>

10:21AM 15     I, Jodi Simcox, RMR, FCRR, Official Court Reporter

10:21AM 16  for the United States District Court, Eastern District of

10:21AM 17  Louisiana, do hereby certify that the foregoing is a true and

10:21AM 18  correct transcript, to the best of my ability and

10:21AM 19  understanding, from the record of the proceedings in the

10:21AM 20  above-entitled and numbered matter.

10:21AM 21

10:21AM
10:21AM 22

10:21AM
10:21AM 23            <u>*s/Jodi Simcox, RMR, FCRR*</u>
              Jodi Simcox, RMR, FCRR
              Official Court Reporter

24

25