UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION  **THIS DOCUMENT RELATES TO:** *Amorin, et al. v. Taishan Gypsum Co., Ltd., et al.*, **Case No. 11-cv-1395** | MDL No. 2:09-md-2047  SECTION L  JUDGE ELDON E. FALLON  MAGISTRATE JUDGE JOSEPH C. WILKINSON, JR.  **ORAL ARGUMENT REQUESTED** |

## MEMORANDUM IN SUPPORT OF CNBM AND BNBM ENTITIES' MOTION TO ADOPT LOUISIANA *AMORIN* TRIAL PLAN

After engaging in multiple meet and confer sessions with the PSC,[1] CNBM and the BNBM Entities submit the below trial plan for the Louisiana *Amorin*[2] action.  This Court is well acquainted with the long and complex history of this matter.  Accordingly, CNBM and the BNBM Entities recount here only those portions of significance in formulating a trial plan.[3]

Chinese entities Taishan, BNBM PLC ("BNBM"), BNBM Group (collectively with BNBM PLC, the "BNBM Entities"), and CNBM Company ("CNBM") were named in several individual actions that were consolidated in this MDL, including *Gross v. Knauf Gips KG,* originally filed in Louisiana, *Wiltz v. Beijing New Building Materials Public Ltd., Co.,* originally filed in Louisiana, 894 F. Supp. 2d at 831, as well as three actions entitled *Amorin et al. v.*

---

[1] Regrettably, the parties were unable to agree to a joint trial plan.
[2] This trial plan also addresses the *Brooke* claimants in section 7.
[3] This trial plan is submitted as a unified and unitary proposal, with each part dependent upon and flowing from all other suggested phases, and so specifically intend and propose that it be adopted in toto.  In making this proposal, CNBM and the BNBM Entities do not waive any of their rights or defenses, including any objections they might have to efforts to take out of context and adopt only parts of this proffered plan.

1

*Taishan Gypsum Co., Ltd.*, filed separately in Louisiana, Virginia, and Florida. Rec. Doc. 18028 at 6. As the PSC requested, this Court subsequently entered "preliminary default judgments" against various defendants in these actions: defaults were entered against Taishan in all three *Amorin* cases, BNBM PLC in the *Gross* and *Wiltz* proceedings, BNBM Group in the *Gross* proceedings and the Virginia *Amorin* case, and CNBM Company in the *Gross* proceedings and the Virginia and Louisiana *Amorin* cases. Rec. Doc. 18028 at 5-6. Thereafter, CNBM and the BNBM entities contested jurisdiction over them, moved to decertify the class, and, in coordination with those motions, challenged the PSC's proposed formulaic approach to damages. On April 21, 2017, the Court issued three orders addressing these issues.

As to jurisdiction, the Court applied various state law imputation theories for subjecting CNBM and the BNBM Entities to jurisdiction in Louisiana, Virginia, and/or Florida. Rec. Doc. 20739.[4] However, the Court made clear that it was *not* addressing—much less resolving—whether Taishan's contacts could be imputed to CNBM and/or the BNBM Entities for purposes of liability. *Id.* at 40. As the Court explained, it would "address the parties' arguments regarding corporate veil piercing for the purposes of liability if and when such a determination becomes necessary." *Id.*; *see also id.* ("At present, the Court will discuss the applicable law for imputing contacts between companies for purposes of personal jurisdiction and apply this law to the facts of the present case.").

With respect to class certification, the Court denied CNBM and the BNBM Entities' motion to decertify. Though the Court recognized that "at least one Defendant has not defaulted in each of the relevant actions," it concluded that the "Taishan Defendants,"[5] in which the Court

---

[4] As the Court knows, the jurisdiction order (Rec. Doc. 20739) is now the subject of an interlocutory appeal. The Fifth Circuit's grant of leave to appeal reflects the difficult threshold issues in the case.
[5] CNBM and the BNBM Entities object to the continued use of this term by the PSC and this Court. They are separate companies, both from one another and from Taishan.

includes CNBM and the BNBM Entities, "have been held liable for damages caused by defective Chinese drywall" and thus "[t]he only variation is the *extent* of the damages suffered." Rec. Doc. 20740 at 14; *see also id.* at 19 ("Liability and causation have already been established by default. … There is only one narrow issue which remains—remediation damages."). The Court then approved a class-wide damages formula (discussed further below) and concluded that because those damages predominate over non-remediation damages, class certification is appropriate. *Id.* at 12-18.

As to the damages formula, the Court similarly concluded—despite the fact that no entries of default had been entered as to CNBM or the BNBM Entities in multiple actions, including the Louisiana *Amorin* case—that it had "(1) already found the Taishan Defendants in default pursuant to Fed. R. Civ. P. 55(a) and (2) already determined in its *Class Certification FOFCOL* that the Defendants' liability has been conceded by their default. As a result of Defendants' default, the defectiveness and corrosive effect of Chinese drywall were resolved in favor of Class Members. … Thus, the only issue before the Court is the amount of damages which should be awarded to the Class for property remediation." Rec. Doc. 20741 at 30; *see also id.* at 18 ("[T]he Court already determined that the Defendants' liability was conceded by their default" and thus the "only issue currently pending before the Court is the amount of damages which should be awarded to the Plaintiffs in order to accomplish the necessary remediation"); *id.* at 46 ("Causation and liability have been conclusively established."). In turn, the Court concluded that the use of seven disparate Virginia properties from the *Germano* action supplied a permissible benchmark for the homes that comprised the MDL. (This despite the Court's own declaration at the time that the trial involving those properties would **not** be considered a bellwether.) From there, the Court approved adjusting the sum using RS Means to

3

account for current building and material and labor costs. *Id.* at 44. The Court then ordered the PSC to submit a spreadsheet regarding the properties at issue in *Amorin* and provide square footage. *Id.* at 49-50. Though Brown Greer was involved in assembling the spreadsheet, it was not instructed—nor did it—provide for any adjudication or verification of the data in the spreadsheet. *Id.* at 49. Once the spreadsheet was submitted to the Court, it held that Taishan[6] would be "permitted to review and contest or seek seek-offs." *Id.* at 50. "Ultimately," the Court explained, "all such claims will be based on verifications, not only of the under air living space square footage of the contaminated property, but also the presence of Taishan Drywall in those properties." *Id.* The Court further explained that non-remediation damages would require a distinct, individualized inquiry (as the PSC has long recognized) and the property owners would have "an opportunity at later phases to seek damages for alternative living expenses and loss of use and enjoyment of their properties." *Id.* at 51.

In light of this background, CNBM and the BNBM Entities propose the below trial plan for the Louisiana *Amorin* cases. This plan recognizes, as this Court previously held, that resolution of "the parties' arguments regarding corporate veil piercing for the purposes of liability" remains outstanding. And, particularly in the absence of imputed liability, where defaults have not been entered as to CNBM or the BNBM Entities, these defendants retain full rights—including jury trial rights—to contest all issues, including liability and causation. At a minimum, all Defendants, including defaulted Defendants, are entitled under Rule 55(b) to individualized adjudications on all damages-related issues subject to the Federal Rules of Evidence and all due process rights under the Constitution. Specifically, the Due Process Clause guarantees the CNBM and the BNBM Entities the right to contest whether a claimant is entitled

---

[6] CNBM and the BNBM Entities understand the Court's reference to "Taishan" to be shorthand for "Taishan Defendants," which the Court has used to include CNBM and the BNBM Entities.

to damages (because s/he in fact had defective drywall) and, if so, the proper damages amount. *Frame v. S-H, Inc.*, 967 F.2d 194, 204 (5th Cir. 1992) (district courts generally required to hold evidentiary hearings in the case of defaults and discretion afforded them "is bounded at its outer limits … by constitutional due process concerns").[7] The spreadsheet process that has occurred to date has afforded no opportunity to test the information provided, much less subject it to the Rules of Evidence.

* * *

CNBM and the BNBM Entities set forth their plan chronologically, including proposed dates with the goal of expeditiously resolving an initial set of cases (referred to as "Priority Claimants") while retaining all rights with respect to the other claimants. Of note, in an effort to streamline proceedings and move with expedition, we propose simultaneous and delimited tracks for discovery and dispositive motion practice, and joint identification of a small number of these priority claimants. Once the "Priority Claimant" cases are resolved, CNBM and the BNBM Entities propose re-initiating mediation and settlement discussions with the aspirational hope that by being then-equipped with an adjudicated sample set of information, the parties may be able to more meaningfully come to an agreement. CNBM and the BNBM Entities are prepared to discuss the details of their proposed trial plans on July 18, 2018.

### *AMORIN* LOUISIANA TRIAL PLAN

1. **Selection of Priority Claimants**  [Within 30 days of court order]

---

[7] *See also U.S. For Use of M-CO Const., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1017 (5th Cir. 1987) (reversing damages determination following default judgment and requiring on remand, district court to evaluate defenses); *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir.1992) ("a defaulting party must be permitted to contest the actual compensatory amount claimed with respect to any particular item of damages, including through proof of mitigation of damages.")

While the parties dispute the extent of discovery as to remediation damages as well as liability and causation, there is no dispute that discovery must be conducted as to non-remediation damages.  Rather than engage in a haphazard discovery process involving the hundreds of claimants at issue in *Amorin* Louisiana, CNBM and the BNBM Entities propose random selection of an initial set of fifteen (15) Priority Claimants within thirty (30) days of this court's order adopting a trial plan.  In the alternative, CNBM and the BNBM Entities do not object to Taishan's proposal to select at least 24 claimants, by agreement or, failing that, at random, with two claimants being selected within each of the PSC's Product ID categories designated by letters A though K, and four in the category designated L.

2. **Pre-Discovery Motions** [Fully briefed and submitted to the Court for decision within 75 days of its order—approximately summer 2018]

As noted, certain issues that do not necessitate discovery remain outstanding.  Among the motions to be resolved by this Court are the following focused motions that these defendants believe will dispose of various key claims and defenses, and which they have filed or are prepared to file in short order:  Motion for Resolution of Imputation Liability; Motion to Preclude Transference of Defaults; Motion to Resolve Effect of LPLA on Redhibition Claims; Motion to Enforce Applicability of State Law to Damages Calculation; and Motion to Dismiss Claimants With No or Incomplete SPPFs..  Because resolution of these motions does not turn on discovery, they can and should be resolved as expeditiously as possible.  Accordingly, CNBM and the BNBM Entities propose the following briefing schedule for all pre-discovery motions: motions filed within 30 days of court trial plan order; PSC Response filed 30 days after pre-discovery motion; and CNBM and the BNBM Entities' Reply filed 15 days after PSC's Response.

3. **Rule 30 Discovery** [Completed within 60 days of identification of Priority Claimants and other witnesses]

As noted, CNBM and the BNBM Entities maintain their rights to adjudicate issues of liability and causation. And there is no dispute that depositions are forthcoming, as to non-remediation damages as well as other issues such as product identification. (Plaintiffs themselves identify other issues such as home ownership and square footage.) It is sensible to explore those issues during a single set of depositions. Assuming a set of 15 Priority Claimants, depositions, along with any accompanying requests, should be able to be completed within 60 days. CNBM and the BNBM Entities propose that this discovery necessarily should be available to both sides, and so, aside from the Priority Claimants, it is sensible to simultaneously proceed with all other depositions that will have to be taken, including Rule 30(b)(6) corporate witnesses (*e.g.*, to address company-specific product identification), experts, and any third parties. The parties shall identify these witnesses within 45 days of the court's trial plan order and depositions shall be conducted within 60 days of their identification.

4. **Post-Discovery Motions**

   a. **General Motions** [Fully briefed and submitted to the Court within 75 days of the close of discovery—approximately December 2018]

Certain motions remain outstanding whose resolution would be aided by discovery but do not turn on the particularities of any specific claimant. These motions include the following: Motion for Single Claimant Adjudications on all Damages Issues; Motion to Dismiss Ineligible Claimants; and Motion to Dismiss Claims With Unpreserved Evidence. These motions should be expeditiously resolved following the close of discovery. Accordingly, CNBM and the BNBM Entities propose the following schedule for all post-discovery, general motions: motions to be filed within 30 days of the close of discovery; PSC Response filed 30 days after motion; and CNBM and the BNBM Entities' Reply filed 15 days after the PSC's Response.

> b. **Claimant-Specific Summary Judgment Motions** [Fully briefed and submitted to the Court within 95 days of the close of discovery as to particular claimant—approximately late 2018/early 2019]

Other motions—most notably summary judgment motions—turn on the particulars of the individual claimants, their properties, and other individual factors. Subject matters for these motions include ownership, product identification, causation and defect, remediation performed, home value, alternative living expenses, loss of use and enjoyment, set-off amounts and other potential damages, including those associated with short sales/forecloses, personal property, taxes, insurance, utilities/property maintenance, and loss rent/business claims. These claimant-specific motions should be submitted as soon as practicable following close of discovery as to the 15 Priority Claimants. Accordingly, CNBM and the BNBM Entities propose the following schedule for all claimant-specific summary judgment motions: to be filed within 45 days following the close of discovery as to the particular claimant; PSC Response filed 30 days after the motions; and CNBM and BNBM Entities' Reply filed 20 days after PSC Response.

5. **Trials/Hearings** [Targeted for late 2018/early 2019]

As noted, the Court has yet to address the issue of imputed liability as to the CNBM and the BNBM Entities. Likewise, CNBM and the BNBM Entities are entitled to adjudication of all issues by a jury or other fact-finder of its election in those cases where no default has been entered against them. Given the discovery schedule, CNBM and the BNBM Entities believe trials can be slated for late 2018/early 2019, or as soon as practicable following resolution of summary judgment motions.

Trials as to CNBM and the BNBM Entities with respect to the Priority Claimants will include resolution of imputed liability, liability, causation (including alleged product defect), mitigation, as well as remediation and non-remediation damages. These should be conducted as

individual adjudications subject to the Federal Rules of Evidence and Due Process Clause of the Constitution.  At a minimum, all entities—defaulted or not—are entitled to individualized adjudications subject to the Rules of Evidence and all due process rights.

### 6. Settlement Conference

Following resolution of all claims of the Priority Claimants, CNBM and the BNBM Entities propose mandatory participation by all counsel in a settlement conference to resolve the remaining cases.  Armed with these adjudications, both sides will have a deeper appreciation of the remaining claims at issue in Louisiana *Amorin* and will be capable of more meaningfully engaging in settlement discussions.

### 7. *Brooke* Louisiana

Because the overwhelming majority of *Brooke* claimants are located in Florida, CNBM and the BNBM Entities believe the Florida courts are more properly positioned to take the lead in *Brooke*.  When this Court does, however, endeavor to address the Louisiana claims at issue in *Brooke*, it should proceed by setting a case scheduling order pursuant to Local Rule 16.1 with all motions, discovery, and any trial dates flowing therefrom.

Respectfully submitted,

*/s/ L. Christopher Vejnoska*

| | |
|---|---|
| L. Christopher Vejnoska (CA Bar No. 96082) | Eric A. Shumsky (D.C. Bar No. 477926) |
| Eric Matthew Hairston (CA Bar No. 229892) | ORRICK, HERRINGTON & SUTCLIFFE LLP |
| ORRICK, HERRINGTON & SUTCLIFFE LLP | Columbia Center |
| The Orrick Building | 1152 15th Street NW |
| San Francisco, CA  94105 | Washington, D.C. 20005 |
| T:  415-773-5700 | T:  202-339-8400 |
| Email:  cvejnoska@orrick.com | Email:         eshumsky@orrick.com |
|          ehairston@orrick.com | |

James L. Stengel (NY Bar No. 1800556)
Xiang Wang (NY Bar No. 4311114)
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY, 10019
T:  212-506-5000
Email: jstengel@orrick.com
          xiangwang@orrick.com

*Attorneys for CNBM and the BNBM Entities*

Ewell E. Eagan, Jr. (LA Bar No. 5239)
Donna Phillips Currault (LA Bar No. 19533)
Alex B. Rothenberg (LA Bar No. 34740)
GORDON, ARATA, MONTGOMERY,
BARNETT, MCCOLLAM, DUPLANTIS &
EAGAN, LLC
201 St. Charles Avenue, 40th Floor
New Orleans, LA 70170-4000
T:  (504) 582-1111
Email: eeagan@gamb.law
          dcurrault@gamb.law
          arothenberg@gamb.law

*Attorneys for CNBM Company, Ltd.*

10

Harry Rosenberg (LA Bar No. 11465)
PHELPS DUNBAR LLP
365 Canal Street, Suite 2000
New Orleans, LA 70130-6534
T:  (504) 584-9219
Email:  harry.rosenberg@phelps.com

*Attorneys for BNBM (Group) Co. Ltd. and BNBM PLC*

Dated:   July 11, 2018

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing MEMORANDUM IN SUPPORT OF CNBM AND BNBM ENTITIES' MOTION TO ADOPT LOUISIANA AMORIN TRIAL PLAN has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail and upon all parties by electronically uploading the same to File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on July 11, 2018.

/s/ L. Christopher Vejnoska

L. Christopher Vejnoska (CA Bar No. 96082)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105
Tel:  415-773-5700
Fax: 415-773-5759
Email: cvejnoska@orrick.com

*Counsel for CNBM and the BNBM Entities*