## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L JUDGE FALLON MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO: *Amorin, et al. v. Taishan Gypsum Co., Ltd., et al.*, Case No. 11-cv-1395 *Brooke et al. v. State-Owned Assets Supervision and Administration Commission of the State Council, et al.*, Case No. 15-cv-4127 | |

## DEFENDANT TAISHAN'S BRIEF IN SUPPORT OF MOTION FOR ADOPTION OF PROPOSED PLAN FOR ADJUDICATION AND RESOLUTION OF LOUISIANA CLAIMS IN *AMORIN* AND *BROOKE*

The Court should try the claims of all Louisiana *Amorin* plaintiffs on an individual basis for all damages categories, starting with an initial wave of select priority claimants to be followed by a mandatory settlement conference. That is the most efficient way to resolve these claims, especially given that both Taishan and the PSC actually agree that most damages categories must be tried on an individual basis for each claimant.

But the PSC proposes that, while the parties conduct normal individual discovery and individual adjudication on the other damages, the parties also engage in a separate, additional, parallel proceeding that attempts to get the remediation claims of some plaintiffs ready to apply the class damages estimation formula. That extra layer of procedure is wildly inefficient and actually creates a longer path to judgment for claimants than under Taishan's plan. It is also completely unnecessary given that the remediation issues could easily be folded into the individual proceedings on other damages. The PSC's extra layer is also improper for most claimants because

Louisiana property damages law requires proof of actual repair costs—not estimation—for the many *Amorin* properties already remediated. *See Volkswagen of Am., Inc. v. Robertson*, 713 F.2d 1151 (1983) ("If the damaged property has been restored to its former condition by repair, the proper basis for assessing the damage is the repair bill."). It also will result in unfair, inaccurate verdicts and will not comport with Constitutional due process for Defendants.

By contrast, Taishan's plan for *Amorin* achieves efficiency and fairness by focusing first on the claims of carefully selected "priority claimants," who will simultaneously participate in a limited stage of two-way discovery on contested issues related to all categories of damages. During that limited discovery period, the Court will also receive motions on threshold legal issues applicable to all Louisiana claims. After the close of discovery (within sixty days of priority claimant selection), and with the benefit of the Court's global legal determinations, the priority claims can each proceed to pretrial motions and individual trials. After those individual trials, the parties can participate in mandatory settlement talks to address the remainder of the claims guided by the priority claimant results. The Court should adopt that plan and reject the PSC's cumbersome and improper proposal.

The Court should also reject the PSC's plan for the newer *Brooke* claims. That plan ignores the procedural posture of *Brooke*, which was filed four years after *Amorin* and for which no responsive pleadings have been filed. In addition, no parties have defaulted in *Brooke*, and no class has been certified. Glossing over those critical differences, the PSC proposes application of prior discovery pretrial orders within thirty days and even seeks "appropriate sanctions based on Defendants' prior alleged misconduct (contemptuous acts, spoliation of evidence, disobedience of Court orders by refusing to participate in the litigation, etc.)"—for this different case. The PSC's proposal lays bare their desire to take procedural shortcuts and deprive Taishan of due process.

Taishan's *Brooke* plan recognizes that the strong majority of *Brooke* claims involve Florida properties, and therefore adjudication of *Brooke* claims should be driven by the Florida court. Taishan proposes that this Court remand the Florida *Brooke* complaint to the Southern District of Florida, and then follow the Florida court's initial scheduling order when it considers when to adjudicate the relatively few Louisiana *Brooke* claims.

A Proposed Pretrial Order is attached to this Motion.

## RELEVANT PROCEDURAL BACKGROUND

### A.   Amorin

In 2011, the PSC filed three substantively identical *Amorin* complaints in three different jurisdictions:

- Eastern District of Louisiana, filed on June 13, 2011 ("Louisiana *Amorin*");
- Southern District of Florida, filed on July 5, 2011 ("Florida *Amorin*");
- Eastern District of Virginia, filed on July 5, 2011 ("Virginia *Amorin*").

Each *Amorin* complaint sought a nationwide class comprised of "[a]ll owners and residents (past or present) of real property located in the United States containing problematic drywall manufactured, sold, distributed, and/or supplied by the Defendants." (Florida *Amorin* Complaint, 2:11-cv-1672 at ¶ 122; Virginia *Amorin* Complaint, 2:11-cv-1673 at ¶ 122; Louisiana *Amorin* Complaint, 2:11-cv-1395 at ¶ 119). Each Complaint named the same 15 individuals or couples from Florida, Louisiana and Virginia as "Plaintiffs." (*Id.* at ¶¶ 5-19). The Judicial Panel on Multidistrict Litigation transferred Florida *Amorin* to this MDL on July 21, 2011, and transferred Virginia *Amorin* on July 20, 2011.

In 2012, the PSC changed course and amended their three identical *Amorin* Complaints to name thousands of specific claimants as the putative class members. The PSC filed Omnibus Class Action Complaints in Intervention in the Louisiana, Florida, and Virginia *Amorin* cases. Rec Docs.

16225, 16227, 16228 (Omnibus Complaints XV, XVI, and XVII (the "Intervention Complaints"). Those Intervention Complaints each attached an identical list of 4072 alleged "class members" to the three *Amorin* class-action complaints.[1]

On July 21, 2014, the Court held Taishan in default in the Louisiana, Florida, and Virginia *Amorin* Complaints. (Rec. Docs. 17814 and 17815). Three months later, the Court certified a class consisting of only the identified *Amorin* plaintiffs, explicitly excluding "absent class member[s]." (Rec. Doc. 18028 at 34). Taishan moved to decertify the *Amorin* class on May 8, 2015 and renewed that motion on January 9, 2017. (Rec. Docs. 18879; 20632). The Court denied that motion on April 21, 2017. (Rec. Doc. 20740).

On the same day the Court denied Taishan's motion to decertify the class, the Court issued Findings of Fact and Conclusions of Law ("FOFCOL") regarding *Amorin* class damages. (Rec. Doc. 20741). The FOFCOL rejected Defendants' arguments that the class was not properly certified, that the damages in this case could not be applied in a formulaic manner, and that the particular formula proposed by Plaintiffs' experts was flawed and improper. The FOFCOL adopted the PSC's expert's damages methodology to be applied to the *Amorin* class, defined as "[a]ll owners of real properties in the United States, who are named Plaintiffs [in the various MDL complaints] asserting claims for remediated damages arising from, or otherwise related to [Taishan] drywall." (FOFCOL, Rec. Doc. 20741, at 9 (brackets in original)). The *Amorin* class thus consists of only *current* properties owners, who are *named* in the *Amorin* Intervention

---

[1] Nearly five years later, on August 1, 2017, the PSC filed seven alleged "*Amorin* Protective Actions" in federal district courts in seven different states: Alabama, Georgia, Mississippi, North Carolina, South Carolina, Tennessee, and Texas. Each protective action included only *Amorin* claims related to properties located in the same state as the respective state of filing. In a letter dated July 27, 2017, the PSC attributed their protective actions as being filed "in light of the Supreme Court's recent decision in *Bristol-Myers-Squibbs* [sic]." Rec. Doc. 20894-1.

Complaints, and who actually had *Taishan* drywall. And the class damages extend to *remediation* damages only—not the many other categories of damages asserted.[2] *See* Fed. R. Civ. Proc. 23(c)(1)(B) (directing that "[a]n order that certifies a class action must define the class and the class claims, issues, or defenses . . .").

The Louisiana Trial Plan Order purports to list the named plaintiffs in *Amorin* with properties in Louisiana.[3] (*See* La Trial Plan Order, Appendix.) Therefore, it appears that the Court intends to proceed with adjudication of Louisiana claimants under Louisiana *Amorin*.[4]

### B.   Brooke

The *Brooke* claims are in a different procedural posture from *Amorin*. Consistent with their duplicative "omni" scheme, the PSC also filed three versions of the *Brooke* omnibus complaint, again in the Eastern District of Louisiana, Eastern District of Virginia, and Southern District of Florida. Those were filed on September 4, 2015—more than four years after the first *Amorin*

---

[2] On April 21, 2017, the Court also issued an Order & Reasons denying the motions to dismiss filed by co-Defendants China New Building Materials Co. ("CNBM"), Beijing New Building Materials Public Limited Company ("BNBM"), and Beijing New Building Material Group ("BNBM Group") under Rule 12(b) for lack of personal jurisdiction. (Rec. Doc. No. 20739 (the "Jurisdictional Order").) CNBM, BNBM and BNBM Group pursued an appeal of the Jurisdictional Order under 28 U.S.C. 1292(b), and on June 20, 2018, the U.S. Court of Appeals for the Fifth Circuit accepted that appeal. (Fifth Circuit Order, Case No. 18-90013, June 20, 2018) The parties' briefing and the Fifth Circuit's determination of that appeal are proceeding concurrently with the litigation of the Louisiana claims addressed herein.

[3] There are discrepancies, however, between the plaintiffs and properties listed in the Louisiana Trial Plan Appendix and the plaintiffs and properties identified in the Intervention Complaints. Taishan reserves its right to seek dismissal of anyone listed on the Louisiana Trial Plan Appendix that is not properly named as an *Amorin* plaintiff.

[4] Florida *Amorin¸* which includes all of the same plaintiffs and claims as Louisiana *Amorin* and Virginia *Amorin*, was remanded to the Southern District of Florida on June 6, 2018. When Taishan and other Defendants sought clarification on the disposition of the non-Florida *Amorin* claims remanded to Florida, the Court described the PSC's suggestion of seeking a stay of non-Florida claims in that court as showing "no meaningful difference between Defendants' concern regarding scope of remand to the Southern District of Florida..."

complaints. On October 10, 2015, the PSC filed an amended *Brooke* complaint in the Eastern District of Louisiana and, on November 23, 2015, filed the same amended complaint in the Eastern District of Virginia and Southern District of Florida.[5] In the last year, the PSC has filed multiple Motions for Intervention seeking to add to *Brooke* hundreds more named plaintiffs. (Rec Docs. 20811, 20845, 21056, 21105, 21163; 21342.) The Court has granted each of the motions. (Rec. Docs. 20900; 20901; 21106; 21192; 21193; 21373.)

The parties have filed no answers or responsive motions in *Brooke* because the time for filing responses has not been established.[6] Therefore, no party is in default, no discovery has been done, no class has been certified, and no defense rights have been limited for any party.[7]

### TAISHAN'S PROPOSED PLAN (*AMORIN*)

Taishan proposes the following plan for resolution of the Louisiana *Amorin* claims:

**A.** **Threshold Legal Issues [to be fully briefed and submitted to Court for decision within 75 days of the Court's Pretrial Order]**

---

[5] In 2017, the PSC also filed so-called "protective complaints" for Brooke claimants with properties outside of Louisiana, Virginia and Florida. Those complaints were filed in Mississippi, Alabama, Georgia, Texas, North Carolina, and Illinois. The PSC also moved to intervene certain Brooke claimants with California residency into the Abner Omnibus Complaint (Omni XXIX) in an apparent attempt to create a California protective complaint for Brooke properties in California. Rec. Doc. 20877; 20902.

[6] A stay on the requirement to filing responsive pleadings was entered in this MDL through PTO 1(G) and PTO 1(H), which require the PSC to file a notice of completion once all amendments to omnibus complaints have been filed and requiring the PSC to file a Master Complaint within 60 days of filing of their notice of completion. (Rec. Doc. 21108 at 10.) Per those pre-trial orders, the filing of the Master Complaint triggers the requirement for defendants named in the Master Complaint to file responsive pleadings. (*Id.*) The PSC filed a notice of completion on April 6, 2017, but has never filed a Master Complaint and have continued to file new complaints since that notice of completion was filed. (Rec. Doc. 20723). To date, the Court has not issued any order lifting the stay on responsive pleadings or modifying the requirements of PTO 1(G) and PTO 1(H).

[7] Therefore, to the extent that the Louisiana Trial Plan Order states that "all Louisiana actions" "will proceed to the trial phase," and includes "*Brooke* Cases" in its Appendix, the Order is premature and appears not to recognize the preliminary stages of the *Brooke* action.

Defendants are prepared to proceed to active adjudication of *Amorin* claims, commencing immediately, as set forth here and in the attached Proposed Order. The first step in that adjudication would be motion practice on threshold legal issues that need to be determined concurrently because they have a direct impact on the claims to be tried and the procedural rights of the parties. Therefore, Taishan proposes that **within thirty (30) days** of the entry of the Court's Pretrial Order, the parties shall file non-Plaintiff specific motions that relate globally to the adjudication of *Amorin* claims and assessment of damages. Defendants expect those motions to include, but not be limited to:

    a.   Defendants' Motion to Enforce Applicability of State Law to Damages Calculation

    b.   Defendants' Motion to Resolve Effect of LPLA on Redhibition Claims

    c.   Defendants' Motion to Determine Class Membership

    d.   Motion to Dismiss Claimants With No or Incomplete SPPF Forms

    e.   CNBM and BNBM's Motion to Address Imputation Liability

    f.   CNBM and BNBM's Motion to Preclude Transference of Defaults

**Within sixty (60) days** of the entry of the Court's Pretrial Order (*thirty (30) days following motion filing*), the parties shall respond to the non-Plaintiff specific motions that relate globally to the adjudication of *Amorin* claims and assessment of damages. **Within 75 days** of the Court's Pretrial Order (*fifteen (15) days following motion filing*), the parties shall file replies in support of their filed motions.

    **B.**    ***Selection of Priority Claimants* [within 37 days of entry of Court's Pretrial Order]**

    Taishan proposes that **within thirty (30) days** of the entry of the Court's Pretrial Order, the parties shall meet and confer to identify not less than 24 *Amorin* claimants that shall be designated as Priority Claimants for purposes of additional limited discovery and case

adjudication. If the parties cannot agree on all Priority Claimants, the Priority Claimants shall be determined as follows:

- The PSC has identified Product ID categories that the PSC has designated by letters A through L, incorporated in the PSC's most recently filed claimant spreadsheet;

- From each category A through K (as designated in the PSC's most recently filed claimant spreadsheet), **two (2)** claims shall be chosen at random using a computerized random number generator;

- From the category L (as designated in the PSC's most recently filed claimant spreadsheet), **four (4) claims** shall be chosen at random using a computerized random number generator.

Whether selected by agreement or by the stratified random selection process, the parties shall jointly identify the Priority Claimants to the Court no later than **37 days** after the entry of the Court's Pretrial Order.

### C. *Discovery on Priority Claimants* [to be completed within 60 days of identification of Priority Claimants]

In order to exercise its right to test the Plaintiffs' proof and mount a defense, Taishan proposes that it seek damages discovery from the Priority Claimants, including taking depositions and additional non-duplicative written discovery requests as needed. Such discovery shall be completed **within sixty (60) days** of the identification of Priority Claimants to the Court.

### D. *Product ID Discovery on Taishan* [to be completed within 60 days of identification of Priority Claimants]

Like the SPPFs, Taishan has similarly complied with this Court's prior orders to provide written information related to the claims and defenses. On Product ID, Taishan has previously submitted detailed Manufacturer's Profile Forms (cite) and filed responses stating its positions as to certain Product ID exemplars that were uploaded by the Court onto a Court website (cite). In order to further explore Taishan's written positions on Product ID, Taishan proposes that it will make available a corporate representative to give a Rule 30(b)(6) deposition related to Product ID.

Such discovery shall be completed within **sixty (60) days** of the identification of Priority Claimants to the Court.

### E. *Expert Discovery* [possible addition of a maximum of 120 days, if the parties employ experts]

Taishan proposes that the parties shall identify expert witnesses, if any, relating to the Priority Claimants within **thirty (30) days** of the close of Priority Claimant and Product ID discovery. Expert reports shall be produced **within sixty (60) days** of the close of Priority Claimant and Product ID discovery. Rebuttal experts shall be identified **within 75 days** of the close of Priority Claimant and Product ID discovery, with rebuttal expert reports due **within 90 days** of the close of Priority Claimant and Product ID discovery. All expert discovery including depositions, shall be completed **within 120 days** of the close of Priority Claimant and Product ID discovery.

### F. *Post-Discovery Motions* [fully briefed and submitted to the Court within 75 days of the close of discovery (fact or expert)]

After completion of discovery of Priority Claims (which will depend on whether there is a period of expert discovery or not), the Court shall set a motions and briefing schedule for motions that would be aided by or dependent on completion of Priority Claimant discovery. Such motions include, but are not limited to:

- Plaintiff-specific motions, including motions for summary judgment and/or motions *in limine*.

- *Daubert* motions

- Other motions, including Defendanats' Motion for Single Claimant Adjudications on all Damages Issues, Motion to Dismiss Ineligible Claimants, and Motion to Dismiss claims with Unpreserved Evidence.

Taishan suggests that motions be filed **within thirty (30) days** following completion of discovery, with responses to those motions due **within sixty (60) days** following completion of discovery, and replies due **within 75 days** following completion of discovery.

G.      **Trials/Hearings for Priority Claimants**

As soon as practicable following the resolution of the Post-Discovery Motions above, the Court shall set each of the remaining Priority Claimants for trial of contested issues on all damages. This approach is consistent with the Due Process principles cited herein, and also will lead to a faster resolution of the Priority Claimants' claims. Instead of subjecting the Priority Claimants to two rounds of discovery and two separate trials, parsing out different categories of damages, it is a more efficient use of the Court's, the parties', and counsel's resources to adjudicate all categories of damages for a claimant in a single trial or hearing.

H.      **Settlement Conference**

Following resolution of all claims of the Priority Claimants, Taishan proposes mandatory participation by all counsel in a settlement conference to resolve the remaining cases. The results of the Priority Claimant discovery and adjudications will give both sides a deeper appreciation of the remaining claims at issue in Louisiana *Amorin* and will be capable of more meaningfully engaging in settlement discussions. Should the settlement process fail to lead to resolution, Taishan reserves the right to submit a new Proposed Trial Plan for the remainder of the Louisiana *Amorin* claims.

## JUSTIFICATION FOR TAISHAN'S PLAN

Due process affords Taishan rights as a defendant facing imposition of damages. Two fundamental aspects of due process are at play in the trial phase of *Amorin* claims: (1) the Plaintiffs' burden to prove their damages, and (2) Taishan's right to mount a defense. First, as the parties making damages claims, the Plaintiffs have the burden to show the fact and extent of an injury and to show the amount and value of the claimed damages. *Servicios-Expoarma, C.A. v Indus. Mar. Carriers, Inc.*, 135 F.3d 984, 995 (5th Cir. 1998) ("It is a basic concept of damages that they must be proved by the party seeking them."). And the Plaintiffs must prove damages by

a preponderance of the evidence. *See Mobil Expl. & Producing U.S., Inc. v. Cajun Const. Servs., Inc.*, 45 F.3d 96, 101–02 (5th Cir. 1995). That elemental burden is specifically required under the applicable law of each state governing the claims of the class claimants in this MDL. *Cimino v. Raymark Indus., Inc.*, 151 F.3d 297, 311 (5th Cir. 1998) (holding that "state substantive law includes the burdens of going forward with evidence and of persuasion thereon").

Just as constitutionally fundamental is Taishan's due process right to be given notice and an opportunity to be heard. *See Mathews v. Eldridge*, 424 U.S. 319 (1976).

> Wherever one is assailed in his person or his property, there he may defend . . . . A sentence of a court pronounced against a party without hearing him, or giving him an opportunity to be heard, is not a judicial determination of his rights, and is not entitled to respect in any other tribunal.

*Hovey v. Elliott*, 167 U.S. 409, 414 (1897) (holding that even a party in contempt has a right to defend itself against money judgment). The *Hovey* Court asked rhetorically, "Can it be doubted that due process of law signifies a right to be heard in one's defense?" and then spent pages exhaustively eliminating all doubt as to the soundness of that constitutional principle. *Id.* at 417 *et seq.* That long-standing principle still governs. (*See N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 143 (5th Cir. 1996) ("Under our system of justice, the opportunity to be heard is the most fundamental requirement."); *see also U2 Home Entm't, Inc. v. Fu Shun Wang*, 482 F.Supp.2d 314, 318 (E.D.N.Y.2007) ("Claims for damages must generally be established in an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed.")). Taishan's due process rights are not extinguished because it defaulted on liability. Discretion granted to judges for damages adjudication under Rule 55 is "bounded at its outer limits . . . by constitutional due process concerns." *Frame v. S-H, Inc.*, 967 F.2d 194, 204 (5th Cir. 1992) (*citing Hovey*, 167 U.S. at 417-18).

11

Although a district court may forego an evidentiary hearing in some default situations, "[f]oregoing an evidentiary hearing may constitute abuse of discretion when the existing record is insufficient to make necessary findings in support of a default judgment." *Stephenson v. El-Batrawi*, 524 F.3d 907, n. 11 (8th Cir. 2008). The Fifth Circuit has held that "[a]s a general proposition, in the context of a default judgment, unliquidated damages normally are not awarded without an evidentiary hearing." *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993) (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)). "A court has an obligation to assure that there is a legitimate basis for any damages award it enters." *Anheuser-Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2008). Indeed, "the court is required to make an independent determination of the sum to be awarded." *Wing v. East River Chinese Rest.*, 884 F.Supp. 663, 669 (E.D.N.Y.1995). Thus, courts have held that "a defaulting party must be permitted to contest the actual compensatory amount claimed with respect to any particular item of damages, including through proof of mitigation of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir.1992).

Moreover, all parties and the Court agree that the adjudication of all categories of damages in *Amorin* other than remediation require individualized discovery and adjudication because those damages were not subject to class treatment. Therefore, Taishan is entitled to complete discovery for all *Amorin* claimants, to put the Plaintiffs to their burden of proof, and to try all contested issues before any judgments in *Amorin* are entered. *See Monument Mgmt. Ltd. P'ship I v. City of Pearl*, 952 F.2d 883, 885 (5th Cir. 1992) (holding that judgment that does not dispose of the entirety of a claim cannot be made appealable by recourse to Rule 54(b)); *Eldredge v. Martin Marietta Corp.*, 207 F.3d 737, 742 (5th Cir. 2000) (Rule 54(b) improper where appellate court would "have to relearn the same set of facts" if and when remaining issues were appealed).

Because due process requires sufficient proof and defense rights for adjudication of the contested issues for remediation damages, bifurcated discovery and adjudication of remediation damages from the remainder of the damages is improper and inefficient. Individualized questions regarding contested remediation issues should be explored and resolved concurrently with individualized questions regarding all other damages claimed by a claimant. Moreover, because no judgment can issue when less than all damages have been resolved, nothing is gained by addressing remediation damages first and separately. On the contrary, the process is unnecessarily extended, forcing claimants and the Court to address in two phases what can be completed in one. Taishan's proposal below incorporates the selection of Priority Claimants for whom all damages will be examined and adjudicated, leading to enforceable/appealable judgment sooner than the exponentially longer time period to individually discovery and adjudicate all categories of damages for hundreds of claimants in two phases.

## PROBLEMS WITH THE PSC'S FLAWED PLAN (*AMORIN*)

The PSC's proposed plan makes no sense in light of the fact that each *Amorin* claimant seeks multiple categories of damages, including but not limited to remediation damages, alternative living expenses, foreclosure, short sale, bankruptcy, loss of rent, and loss of use and enjoyment. For remediation damages alone, the PSC has submitted multiple "spreadsheets" to the Court, the most recent one seeking $530,376,279.80 for all *Amorin* claimants in every state. (Rec. Doc. 20952-1). The PSC also seeks the additional non-remediation damages, which it has not yet quantified. The stakes are thus extremely high; the Court cannot countenance the kind of constitutional or procedural shortcuts for adjudication that the PSC's plan proposes. Ironically, the PSC's shortcut plan still ends up being more cumbersome and inefficient than Taishan's plan.

The PSC's plan is convoluted and difficult to summarize. It seeks to put the parties through two parallel phases of discovery and adjudication instead of one unified phase that could bring

claims to complete judgment in significantly less time. The PSC's plan first bifurcates the *Amorin* claims between remediation damages and all other damages categories. Within the initial remediation phase, it separates the claims again between what they call "current owners" (a gross misnomer considering that the PSC considers any owner a "current" owner if the claimant owned the property "as of June 9, 2015"—more than three years ago[8]) and "former owners" (any claimant who sold their property prior to June 9, 2015). The PSC proposes a period of limited written discovery on "current" and "former" owners on remediation issues only. A perfunctory and formulaic process would then bring the remediation damages to "judgment."

In this initial remediation phase, the PSC seeks the following improper shortcuts:

- **Categorical Product ID By a Special Master**

Without regard to any specific claimant's proof of having had Taishan drywall in the subject property, a Special Master will make categorical determinations of whether certain exemplar drywall markings are attributable to Taishan, contrary to the PSC's burden of proof on each individual claim to show by a preponderance of the evidence that the property contained Taishan drywall. Indeed, the PSC seeks to *reverse* the burden of proof by requiring Taishan to "set forth with specificity the basis for the denial [of attribution to Taishan] and both describe and attach all documents and identify all witnesses whose testimony, in whole or in part, form the basis for Defendants' denial that the product ID category was manufactured by Taishan . . . ." (cite to PSC plan.)

- **Limitation of Discovery on Certain Damages (While Damages Discovery Otherwise Proceeds)**

---

[8] The PSC's bizarre view that time stopped for purposes of ownership status is directly inconsistent with their insistence that their expert's formula must be continually "adjusted" for the passage of time through 2018.

14

Severely curtailing Taishan's ability to test the claimants' proof, the PSC seeks to limit Taishan's ability to depose claimants by imposing a requirement that Taishan "show good cause why such depositions are necessary."

- **Unlawful Application of Estimate Formula Where Actual Costs Available**

  Without regard to whether a claimant has actually incurred remediation costs, the PSC seeks determination of remediation damages for "current owners" based on a dollar-per-square foot estimation formula, contrary to Louisiana law (and contrary to the reality that many "current" owners sold the subject property years ago). *See Volkswagen of Am., Inc. v. Robertson*, 713 F.2d 1151, 1169 (1983) ("Damages may be predicated on estimation only when the loss has not been repaired. If the damages property has been restored to its former condition by repair, the proper basis for assessing the damage is the repair bill." (quoting *Lambert v. Allstate Ins. Co.*, 195 So. 2d 698, 701-02)). The PSC seeks the same determination on remediation damages for "former owners" based on the same dollar-per-square foot estimation formula, contrary to Louisiana law and the express rulings of this Court. *See id.*; Rec. Doc. 20741 at ¶ 59 ("On June 9, 2015, the Court considered only remediation damages for current owners.")

- Unilateral Alteration of Class Definition

  The PSC may not redefine the class to set an arbitrary prior date for "owners of real property" that is not contained in the Court's class definition. The Court's Class Certification FOFCOL defined the *Amorin* class as "[a]ll owners of real properties in the United States" without stating a time period. *See* Rec. Doc. 18028 at 34-35; *see also* Manual for Complex Litig., Fourth, § 21.222 (instructing that class definitions

15

should define class memberships in "a specified period" or "a fixed period"); *Earnest v. General Motors Corp.*, 923 F.Supp. 1469, 1473 (N.D. Ala. 1996) (holding that "the class must meet a minimum standard of definiteness which will allow the trial court to determine membership in the proposed class"). Both the Court and the PSC have acknowledged that the class formula does not currently apply to former owners. In the Fifth Circuit, the time for determining the members of the class is when the district court "determines the damages and other remedies to which the class, and the members thereof, are entitled." *Harrell v. Northern Elec. Co., Div. of Sunbeam Corp.*, 679 F.2d 31, 32 (5th Cir. 1982). Thus, the defining moment for determining whether a claimant is current property owner (and thus a member of the *Amorin* class as defined) is when the Court determines each claimant's damages, and not some other date unilaterally chosen by the PSC.[9]

- **Pursuit of "Judgment" on Partial Damages Contrary to Binding Law**

  Without regard to binding Fifth Circuit law, the PSC seeks "judgment" for remediation damages while all other categories of damages arising from the same alleged harm remain undetermined. *See Monument Mgmt. Ltd. P'ship I v. City of Pearl*, 952 F.2d 883, 885 (5th Cir. 1992) (holding that judgment which does not dispose of the entirety of a claim cannot be made appealable by recourse to Rule 54(b)); *Eldredge v. Martin Marietta Corp.*, 207 F.3d 737, 742 (5th Cir. 2000) (Rule

---

[9] The need for individualized determination of class membership is a ground for denying class certification. *See, e.g., McGee v. East Ohio Gas Co.*, 200 F.R.D. 382, 389 (S.D. Ohio 2001) (declining to certify class "in part because determining membership in the class would involve extensive individual fact-finding"); *Johnson v. Time Warner Entertainment-Advance/Newhouse Partnership,* 2017 WL 3765551, at *7 (D.S.C., 2017) (collecting cases).

54(b) improper where appellate court would "have to relearn the same set of facts" if and when remaining issues were appealed).

To be clear, summary imposition of damages in *any category*—including remediation—violates Taishan's due process rights to hold the Plaintiffs to their burden of proof and be heard in defense. *Servicios-Expoarma, C.A. v Indus. Mar. Carriers, Inc.*, 135 F.3d 984, 995 (5th Cir. 1998) ("It is a basic concept of damages that they must be proved by the party seeking them."); *see also Mobil Expl. & Producing U.S., Inc. v. Cajun Const. Servs., Inc.*, 45 F.3d 96, 101–02 (5th Cir. 1995) (holding that plaintiffs must prove damages by preponderance of the evidence); *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 143 (5th Cir. 1996) ("Under our system of justice, the opportunity to be heard is the most fundamental requirement."). The PSC's plan avoids them having to meet *any* burden of proof regarding the fact and extent of an injury and to show the amount and value of the claimed damages. On remediation damages alone (which are far from the only damages claimed by Plaintiffs), contested issues remain that prevent summary imposition of formulaic damages:

- Product ID (whether Taishan's product is or was ever in the property)

- Remediation status (whether the claimant needs remediation or already remediated at their own cost or by another party)

- Remediation scope and cost (if already remediated)

- Preservation issues (whether the claimant complied with PTO1 drywall preservation requirements)

- Ownership (whether claimant still owns property or has transferred it)

- Square footage (source and veracity of PSC's claimed square footage numbers)

The weirdly structured and improperly limited remediation phase of discovery and adjudication is all the more difficult to justify considering that the PSC advocates for a *simultaneous* open discovery period for Defendants to test the claimants non-remediation damages proof and claims. This is so because the PSC concedes, as they must, that non-remediation damages require individualized discovery adjudication.

It begs the question, then, as to why the Court would adopt a process by which depositions of claimants will occur for all categories of damages except for one category of damage for which the Defendants must show "good cause" before asking a single question on contested issues related to the claimants' proof of entitlement to more than $500 million in damages. If claimants' depositions are being taken anyway, why not ask them about *all* categories of damages in the same setting at the same time?

The Supplemental Plaintiff Profile Forms ("SPPFs") ordered by this Court in PTO 11A and 11B are not sufficient to satisfy Plaintiffs' burden nor to allow Taishan to challenge the evidence. For example, while the SPPF requests that Plaintiffs provide any documentary proof of Product ID, they make no other inquiry. To test the Plaintiffs' proof and prepare its defense, Taishan should be able to elicit testimony about the documents, the sourcing of the drywall, and other non-documentary contentions of the claimant as to Product ID.[10]

---

[10] It is critical to note that claimant discovery as to remediation damages was never intended to begin and end with SPPFs. On the contrary, this Court expressly anticipated depositions of Claimants, holding expressly that "nothing in the SPPF . . . shall be deemed to limit the scope of inquiry at depositions and admissibility of evidence at trial. The scope of inquiry at depositions shall remain governed by the Federal Rules of Civil Procedure . . . ." (PTO 11, Rec. Doc. No. 21162 at ¶ 7.) Moreover, the Court rejected any notion that the SPPF precluded additional written discovery: "**Right to Additional Discovery.** Use of the SPPF shall be without prejudice to any party's right to serve additional discovery" so long as the additional discovery was non-duplicative and subject to challenge by the receiving party under the Federal Rules of Civil Procedure. (*Id.* at ¶ 10.)

Moreover, because the claimants cannot get actual judgment on just remediation damages (*see Monument Mgmt. Ltd. P'ship I*, 952 F.2d at 885), no judgment can be entered in the PSC's plan until *all* of the hundreds of Louisiana claimants' depositions have been taken and claims been adjudicated. Despite the attempted procedural shortcuts, the entire plan presents a longer path to resolution than Taishan's.

## LOUISIANA PLAN (*BROOKE*)

The overwhelming majority (810) of the 1036 properties related to the *Brooke* complaints are located in Florida and those claims will be governed by Florida law. Consistent with this Court's prior rulings and statements regarding remand, Taishan anticipates that the Court will remand Florida *Brooke* to Florida. Therefore, Taishan proposes that this Court's initiation of the litigation process for the 142 Louisiana properties related to *Brooke* should follow the remand of Florida *Brooke*.

For the economy of resources and efficient resolution, Taishan proposes the trifurcation of *Brooke* into three adjudication phases:

1.  Rule 12 motions, including jurisdiction and statute of limitations (and discovery limited to those issues, if ordered)

2.  Class certification motion (and discovery limited to that issue, if ordered)

3.  Merits and discovery in the regular course

## PROBLEMS WITH THE PSC'S FLAWED PLAN (*AMORIN*)

The PSC's plan ignores the procedural posture of *Brooke*, which was filed four years after *Amorin* and for which no responsive pleadings have been filed. In addition, no parties have defaulted in *Brooke*, and no class has been certified. Glossing over those critical differences (allowing for only a 15 day window in which Defendants shall answer the complaint or file Rule 12 motions), the PSC proposes application of prior discovery pretrial orders within 30 days, and

just 15 days later (concurrent with the PSC's response to Defendants' dispositive motions to dismiss, seeks to pursue "appropriate sanctions based on Defendants' prior alleged misconduct (contemptuous acts, spoliation of evidence, disobedience of Court orders by refusing to participate in the litigation, etc.)"—for this different case.

Moreover, the PSC's *Brooke* plan *presumes* liability on the merits (allowing for Defendants to seek discovery "as to the merits of the *Brooke* Louisiana Plaintiffs' claims for remediation damages and Other Damages" and appears to ignore that *Brooke* is a putative class action, which requires a class certification stage that is nowhere to be found in the PSC's plan. In fact, the PSC has not justified (nor can it) the peculiar aggregate "contests and set-offs" exchange plan for a mass tort case for which no class has been certified. The PSC's proposal for *Brooke* thus lays bare their desire to take procedural shortcuts and deprive Taishan of due process.

Dated: July 11, 2018

Respectfully submitted,

/s Christina Hull Eikhoff
Michael P. Kenny, Esq.
Georgia Bar No. 415064
Bernard Taylor, Esq.
Georgia Bar No. 669625
Christina Hull Eikhoff, Esq.
Georgia Bar No. 242539
David Venderbush, Esq.
New York Bar No. 2920817
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
christy.eikhoff@alston.com
*Counsel for Taishan Gypsum Co., Ltd. And Tai'an Taishan Plasterboard Co., Ltd.*

Alan Dean Weinberger
LA Bar No. 13331
HANGARTNER, RYDBERG & TERRELL, LLC
One Shell Square
701 Poydras St., Suite 310
New Orleans, Louisiana 70179
Phone: (504) 434-6815
Fax: (504) 522-5689
aweinberger@hanrylaw.com
*Local Counsel for Taishan Gypsum Co., Ltd. And Tai'an Taishan Plasterboard Co., Ltd.*