**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

IN RE: CHINESE-MANUFACTURED
DRYWALL PRODUCTS LIABILITY
LITIGATION                                        MDL NO. 2047
                                                  SECTION: L

                                                  JUDGE FALLON
                                                  MAG. JUDGE WILKINSON

THIS DOCUMENT RELATES TO:
*Amorin, et al. v. Taishan Gypsum Co., Ltd., et al.*,
      *Case No. 11-cv-1395*
*Brooke, et al. v. State-Owned Assets Supervision and*
*Administration Commission of the State Council, et al.*,
      *Case No. 15-cv-4127*
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFFS' STEERING COMMITTEE'S RESPONSE TO THE PROPOSED**
**TRIAL PLANS OF TAISHAN GYPSUM CO., LTD. AND THE CNBM/BNBM**
**ENTITIES FOR THE RESOLUTION OF LOUISIANA PLAINTIFFS' CLAIMS**
**FOR REMEDIATION AND OTHER DAMAGES IN *AMORIN* AND *BROOKE***

I.      **INTRODUCTION**

        After nine-plus years of litigation, Defendants' so-called "Trial Plans" for Louisiana

residents must be rejected.  The vast majority of the victims of Taishan's Chinese Drywall have

no ability to prosecute their claims individually.  They cannot afford to completely remediate

their homes to eradicate the corrosive environment created by Chinese Drywall.  Hundreds of

Plaintiffs are still living in a toxic environment because they have nowhere else to go.  Hundreds

of others have moved out of their properties.  Many have filed for bankruptcy or suffered

foreclosure or been forced into a short sale.  This Court and the Fifth Circuit have already

acknowledged in prior opinions and orders concerning Taishan, BNBM, BNBM Group, and

CNBM,[1] that "the public has an interest in seeing that persons harmed by defective, foreign

---

[1] Collectively, these entities are referred to as the "Taishan Defendants."

products be accorded relief for their damages." *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2018 WL 279629, *11 (E.D. La. Jan. 2, 2018) (denying CNBM/BNBM motion to vacate default judgments) (emphasis added); *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 894 F. Supp. 2d 819, 864 (E.D. La. 2014); *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 753 F.3d 521, 545 (5th Cir. 2014); *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 742 F.3d 576 (5th Cir. 2014).

If this were Day 1 of this MDL, the trial plans of the Taishan Defendants might make sense.  Unfortunately, this MDL has been pending for 3,318 days.  Since June 15, 2009, when the Judicial Panel for Multidistrict Litigation transferred all federal civil actions alleging damages from Chinese Drywall to this Court for coordinated and consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407, the Taishan Defendants have used every legal tactic available to try to escape responsibility for their defective products.  In fact, their "delay tactics have permeated every aspect of Defendants' litigation strategy: from their initial failure to appear to their now perpetual motions to re-litigate settled matters."[2]  As a result, now in its tenth year, "this case involving the Chinese Entities has only made glacial progress."  *Chinese Drywall*, 2018 WL 279629 at *10.

Defendants' proposed plans[3] to resolve the remediation and other damages claims of 919 Louisiana Plaintiffs in *Amorin* and *Brooke* are just more of the same.  If Defendants' plans were adopted today, this litigation would still be dragged out a minimum of another 292 days (3/4 of a year) before trials even begin for remediation and other damages of only a handful (between 2%

---

[2] *Chinese Drywall*, 2018 WL 279629, at *9.

[3] *See* Taishan Trial Plan [Rec. Doc. 21503]; CNBM/BNBM Entities Trial Plan [Rec. Doc. 21501].

and 3%)[4] of *Amorin* "Priority Claimants," to be followed by mandatory settlement conferences. According to Taishan, the settlement conferences are necessary to "give both sides a deeper appreciation of the remaining claims at issue in Louisiana *Amorin*."[5]  Not surprisingly, if the settlement conferences fail to resolve the entire litigation, Taishan "reserves the right to submit a new Proposed Trial Plan for the remainder [97%] of the Louisiana *Amorin* claims."[6]

Defendants' plans are inconsistent with the fact that liability has already been established with respect to the *Amorin* Plaintiffs, and, indeed, all of the essential elements of damages have been established in *Amorin*, on a classwide basis.  Even assuming, arguendo, some right to contest the specific square footage calculations with respect to the *Amorin* properties or product ID evidence, these contests should be very limited and involve only discrete factual disputes, which can be resolved very quickly and efficiently.  The Defendants' proposed Trial Plans seem to be modeled on what the Court might expect to find in an extremely complex and highly individualized group of cases, (*e.g.*, pharmaceutical litigation), involving voluminous testimony regarding, not only liability and general causation, but, for each case, specific causation and general damages.

Meanwhile, Defendants' plans do not even address the Louisiana *Brooke* cases.  They want to perpetuate the harm already inflicted by delay on the claims of 136 Louisiana *Brooke* Plaintiffs, suggesting the Court defer any further processing of those cases since "[t]he

---

[4] Out of 783 Louisiana *Amorin* Plaintiffs, CNBM/BNBM suggest that an initial set of 15 Priority Claimants (1.9%) be selected to go forward, but they do not object to Taishan's proposal that 24 Priority Claimants (3%) be selected for processing so the parties can get a better understanding of the value of these claims.

[5] Taishan Brief in Support of its Trial Plan, at 10.

[6] *Id.*

overwhelming majority (810) of the 1036 properties related to the *Brooke* complaints are located

in Florida and those claims will be governed by Florida law."[7]  In other words, this MDL Court

should ignore any responsibility for the development of the Louisiana *Brooke* Plaintiffs' cases

until: (i) the Florida *Brooke* cases are remanded (which requires action on the part of the

J.P.M.L. and involves further delay) and (ii) the Florida courts have adjudicated the Florida

*Brooke* claims (for which no timetable whatsoever has been set).  Given that Defendants

continue to rely on Pretrial Orders 1(G) and 1(H) as a basis for not even answering any of the

*Brooke* complaints,[8] it is apparent that Defendants have no interest in any plan under which the

*Brooke* cases move forward in a reasonably timely manner.  PTOs 1(G) and 1(H) were entered

many years ago as a means for the Court "to promote efficiency in dealing with mass

complaints."  *Chinese Drywall*, 2018 WL 279629 at *8.  However, the procedures set forth in

those orders "never relinquished any defendants' obligation to participate in this litigation."  *Id.*

Taishan suggests that the PSC's "procedure is wildly inefficient and actually creates a

longer path to judgment for claimants than under Taishan's plan."[9]  Nothing could be further

from the truth.  The PSC Trial Plan (filed herewith) in fact presents an efficient and appropriately

---

[7] *Id*. at 19; *see also* CNBM/BNBM Memo in Support of their Trial Plan, at 9 ("the Florida courts are more properly positioned to take the lead in *Brooke*").

[8] *See* Taishan Brief in Support of its Trial Plan, at 6 n.6 ("A stay on the requirement to filing responsive pleadings was entered in this MDL through PTO 1(G) and PTO 1(H), which require the PSC to file a notice of completion once all amendments to omnibus complaints have been filed and requiring the PSC to file a Master Complaint within 60 days of filing of their notice of completion…. Per those pre-trial orders, the filing of the Master Complaint triggers the requirement for defendants named in the Master Complaint to file responsive pleadings…. The PSC filed a notice of completion on April 6, 2017, but has never filed a Master Complaint and have continued to file new complaints since that notice of completion was filed…. To date, the Court has not issued any order lifting the stay on responsive pleadings or modifying the requirements of PTO 1(G) and PTO 1(H).") (emphasis added).

[9] Taishan Brief in Support of its Trial Plan, at 1.

expeditious way to resolve the claims of 783 Louisiana residents in *Amorin* and *Brooke*.  As reflected on the PSC's Chart of Deadlines for Resolution of Louisiana *Amorin* and *Brooke* Cases (attached hereto as Exhibit "A"):

- <u>Within 15 days</u>, Defendants shall answer or otherwise respond to the Louisiana *Brooke* complaint;

- <u>Within 30 days</u>, all Louisiana *Brooke* Plaintiffs shall complete a Supplemental Plaintiff Profile Form in accordance with PTO 11A;

- <u>Within 90 days</u>, the Special Master shall issue a Recommendation to the Court on the product ID categories contested by Taishan, <u>and</u> all non-duplicative discovery regarding ownership, square footage, and product ID of Louisiana *Amorin* Plaintiffs shall be complete;

- <u>Within 150 days</u>, the remediation claims of all Louisiana *Amorin* Plaintiffs will be in a posture for resolution by the Court, <u>and</u> the PSC shall designate for trial the claims for other damages (alternate living expense, bodily injury, foreclosure, short sale, bankruptcy, loss of rent, loss of use and enjoyment, and so forth) of a to-be-determined number of Louisiana *Amorin* Plaintiffs or groups of Plaintiffs;

- <u>Within 180 days</u>, Plaintiffs will respond to Defendants' non-duplicative motions that relate to claims of specific *Amorin* Plaintiffs identified by the PSC for trial of claims for other damages, <u>and</u> Defendants shall complete a Supplemental Defendant Profile Form for each Louisiana *Brooke* Plaintiff;

- <u>Within 240 days</u>, the PSC shall designate for trial the claims for remediation and other damages of a to-be-determined number of Louisiana *Brooke* Plaintiffs or groups of Plaintiffs.[10]

Under the PSC's proposed scenario, all Louisiana Plaintiffs' claims in *Amorin* <u>and</u> *Brooke* will be resolved within a year.[11]  The timetable is ambitious but feasible; and, more to the point, it recognizes the history of strategic delay tactics by these Defendants, and precludes the need to revisit each and every issue in this litigation on a case-by-case basis.  After waiting for almost a decade to prove the damages inflicted by the Taishan Defendants' defective drywall, Plaintiff property owners are surely entitled to such a result.  As this Court already held, "[a]ny further delays would undeniably prejudice the plaintiffs."  *Chinese Drywall*, 2018 WL 279629, at *10.  To avoid further, undue delay, the PSC's Trial Plan should be adopted.

## II.   RELEVANT FACTUAL BACKGROUND

Consistent with their strategy to interminably delay this litigation, "wait out" property owners who lose patience and simply move on with their lives, and thereby deny recovery to deserving Taishan Plaintiffs, the Taishan Defendants suggest in their "Trial Plans" that this Court ignore more than nine years of judicial proceedings.

- Defendants conveniently omit any mention of their deliberate, willful refusal to

participate in the litigation in the first place, despite proper service of complaints against them

---

[10] This synopsis highlights some of the deadlines set forth in the PSC's proposed Pretrial Order Setting Deadlines for the Resolution of Louisiana Plaintiffs' Claims for Remediation and Other Damages in *Amorin* and *Brooke*, but in any event, the PSC's proposed schedule preceding trials goes out a maximum of 240 days for all claims of both *Amorin* and *Brooke* Plaintiffs.

[11] *See* Chart of PSC-Proposed Deadlines vs. Taishan/CNBM/BNBM-Proposed Deadlines (attached hereto as Exhibit "B").

under The Hague Convention beginning in the spring of 2009.  On more than one occasion, this Court has held that Defendants received adequate notice of the litigation, but chose not to respond timely.  *See Chinese Drywall*, 2018 WL 279629, at \*6-7 ("the Chinese entities received notice of this action and had sufficient time to present their defense—but they did not").  It cannot be disputed that Defendants' "early absence in this litigation was a calculated strategy—rather than a misunderstanding of this Court's pre-trial orders." *Id*. at \*8.  Indeed, Defendants documents confirm that CNBM Group's "Chairman Song [Zhiping] would organize the response to the litigation" and "CNBM Group's Board of Directors would decide the direction of the litigation." *See* Order and Reasons regarding the CNBM/BNBM Motions to Dismiss for Lack of Jurisdiction ("Jurisdiction Order") [Rec. Doc. 20739], at 34.

Early on, before the MDL was even established, "Taishan compiled for its leaders at CNBM Group an "Informational Report on the Class Actions Brought by the U.S. Parties Against Taishan Gypsum Company Limited." *Id.* at 32.  "Taishan prepared this report for CNBM Group 'so that the leaders [could] understand the facts of the case and give relevant instructions.'" *Id.*  "Despite acknowledging that more than 70 million square feet of its drywall were sent to the U.S. and were the subject of complaints from customers, Taishan reported that '[it] is not inclined to respond to the lawsuit' and asked Chiefs Song and Cao for instructions and approval as to whether such inaction was appropriate." *Id*. (emphasis added).  "Taishan further proposed that 'when necessary, it will provide documents that are beneficial to Taishan Company to the court that accepted the case.'" *Id*.

Newly translated documents confirm that early on, the board of directors of CNBM Group orchestrated and carefully monitored the "limited response" of Taishan to this litigation.

In fact, ███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████

      ███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████ This was not a case of foreign manufacturing defendants struggling to

grasp the legal implications of claims by U.S. consumers.  This was a case of sophisticated

8

foreign entities quickly grasping the advantages of not addressing these claims on the merits, and utilizing the U.S. judicial system to maximize those advantages through delay.

This Report likewise contradicts Taishan Gypsum's claim on finally entering its appearance in these proceedings on June 10, 2010 to vacate the *Germano* judgment and contest jurisdiction, that "it did not respond [to the *Germano* complaint] because it did not understand the significance of it and it was ignorant of the U.S. legal system." *Chinese Drywall*, 894 F. Supp. 2d at 863.  On the contrary, Taishan was expertly guided throughout these proceedings by American counsel, including Hogan Lovells, the attorneys from Orrick, Herrington & Sutcliffe LLP, and others, and fully appreciated that simply ignoring the thousands of consumer claims against it was the most advantageous legal strategy it could embrace.

In spite of these facts, the Taishan Defendants now urge this Court to try each case individually for the sake of Defendants' "due process" rights.  Their Trial Plan proposals are disingenuous, as the documents show that the Defendants have strategized to delay this litigation since June, 2009, with no intention to pay any United States judgment.  Even "due process" has its limits, when a party which has chosen to trample on the due process rights of thousands of claimants invokes this phrase to the detriment of those same claimants.

In Defendants' own words, all of the "major assets of the Company, BNBM and Taishan Gypsum are located in China" and there is "no convention or treaty on mutual recognition and enforcement of judgments between China and the U.S." *Id.*  Therefore, "the possibility of the U.S. judgments being enforced in China is very low." *Chinese Drywall*, 2018 WL 279629 at *8. How can any trial plan adopted by the Court overlook such admissions by a litigant, that no plan is likely to result in a meaningful remedy for its opponent.

- In their Trial Plans, Defendants blatantly disregard the certification of the *Amorin* class in 2014 for remediation damages. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 2014 WL 4809520, at *16 (E.D. La. Sept. 26, 2014). Notably, that certification took place after Taishan fled the jurisdiction, in civil and criminal contempt of Court [Rec. Doc. 17869]. The *Amorin* class certification order provided that "class-wide damages can be established in an efficient manner without the need for a trial." *Id.* at 15. "Indeed, damages are simply calculated by using a mathematical formula similar to what the Court utilized in *Germano* and *Hernandez* (*i.e.*, price per square foot to remediate X number of square feet in class members' homes = damages)." *Id.* The combined efficiencies of Rule 23 and Rule 55 are understandably anathema to the Taishan Defendants, since this jurisprudence avails claimants of a recovery which these Defendants have done all in their power to forestall.

In an effective abrogation of this Court's prior rulings, Taishan advocates in its Trial Plan that "[t]he Court should try the claims of all Louisiana *Amorin* plaintiffs <u>on an individual basis for all damages categories</u>, starting with an initial wave of select priority claimants to be followed by a mandatory settlement conference."[12] It should not be lost on anyone that Defendants' "initial wave of select priority claimants" accounts for only 2%-3% of the Louisiana *Amorin* Plaintiffs, which comports with Defendants' stated goal and practice of delaying the resolution of these claims.

Moreover, contrary to Defendants' proposed trial plan, this Court already held that "[a] class proceeding will facilitate an expeditious and streamlined resolution for all impacted

---

[12] Taishan Memo in Support of its Trial Plan, at 1 (emphasis added).

residents.  Given the extreme costs involved in litigating this matter, class members (as a whole) have no ability to individually prosecute these matters." *Id*.

- Defendants additionally ignore the evidentiary hearing on class remediation damages, which took place more than three years ago on June 9, 2015.  At that hearing, the Court heard "testimony regarding the property damages aspect of this MDL litigation," including from the PSC's expert George J. Inglis, Professional Engineer.  *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2017 WL 1421627 (E.D. La. Apr. 21, 2017).  Mr. Inglis "assess[ed] construction estimates for remediating Chinese drywall properties" in this litigation, "utilizing RS Means, which is a generally accepted method of calculating building costs." *Id.* at *11.  Significantly, Mr. Inglis and his firm "were instrumental in determining the appropriate scope and costs of remediating the Chinese drywall properties in *Germano*." *Id*.

For the *Amorin* Plaintiffs, "Mr. Inglis determined the remediation damages for each of the properties with verified under air square footage based on the following factors:

- o A uniform and well-defined scope of work necessary to eliminate the harm and remediate the damage that is caused by Chinese drywall to the interior of each property;

- o An established cost on a per-square-foot basis converted to present value;

- o A measure of the under air space to remediated;

- o Consideration of local factors related to building labor and materials." *Id*.

Mr. Inglis concluded, as of June 9, 2015, that "[t]he final, national square foot unit price with CIH [certified industrial hygienist] costs included is $105.91.  However, this is reduced by the local building costs factors in nearly every state in which class properties exist." *Id*. at 12.

11

- Understandably, Defendants also set aside as if it did not exist, this Court's Class Damages Order entered April 21, 2017, which adopted Mr. Inglis' formula for calculating remediation damages.  Therein, the Court acknowledged that "there is a well-established and defined scope of work necessary to fully remediate a Chinese drywall property."  *Id.* at *11 (citing *Germano* FOFCOL at 27-55; *Hernandez* FOFCOL at 20-34; Class Damages Hearing Tr. at 157:8-158:5; 159:21-160:1).  Indeed, "[t]his well-established evidence-based and field-tested scope of work for remediating a Chinese drywall property requires that the interior of the home be stripped to the studs (with all wiring, plumbing, fixtures, cabinets, HVAC systems and insulation removed), cleaned by wet-wipe and HEPA vacuum, and examined and tested by an independent entity before the property is brought back to its originally intended condition."  *Id*. (citing *Germano* FOFCOL at 27-55; *Hernandez* FOFCOL at 20-34).  Following two bellwether trials and an evidentiary hearing on class damages, this Court held that "[t]his scope of work was established based on long-term observation of properties with Chinese drywall (including sampling and testing), scientific investigation of Chinese drywall and the science of corrosion, practical construction experience (particularly the experience of national builders, and electric and building codes)."  *Id*.  Importantly, "[t]he scope of work is the same regardless of the type of building or the location of the property.  The only difference is the square footage of the contaminated area of the building."  *Id.* (citing *Germano* FOFCOL at 27-55; *Hernandez* FOFCOL at 20-34; Class Damages Hearing Tr. at 106:8-110:3) (emphasis added).  In accordance with the Class Damages Order, the PSC has provided Defendants with updated ownership information provided by BrownGreer, verified square footage information, and

updated damages calculations performed by Mr. Inglis using 2017 RS Means data, adjusted by zip code for the location of the property [*see* Rec. Doc. 20952].

The proposal that all damages recoverable by the Louisiana *Amorin* Plaintiffs (including remediation damages) should be tried on "an individual basis" ignores all of this history in the litigation for the same reason Taishan, on the advice of counsel, chose to ignore the litigation in the first place. Defendants believe that by now emphasizing their litigation rights under the U.S. judicial system, they can achieve important delays in being accountable to American consumers for a defective product. But the litigation rights of the parties in this MDL now are defined by the history of this MDL, as well as by important efficiencies made available under the laws governing defaults and class actions.

- Defendants skip over the denial of their motion to decertify the *Amorin* class [Rec. Doc. 20780], and they overlook the denial of their motions to certify for immediate interlocutory appeal both the Court's Class Damages Order and the order denying their motion to decertify the *Amorin* class. Therein, the Court ruled, again, that the use of "statistical evidence … for determining class damages in this case … provides a far superior method for resolving these claims than individual adjudications." *See* Order and Reasons dated 8/22/2017, at 14 (citing *Tyson Foods, Inc. v. Bouaphekeo*, 136 S. Ct. 1036, 1046 (2016)).

## III.   CONCLUSION

In essence, Taishan, BNBM, BNBM Group, and CNBM "are asking this Court to go back to square one," which they have done repeatedly as part of their scheme to avoid judgments in this litigation. *Chinese Drywall*, 2018 WL 279629, at *10. Aside from ignoring the implications of default proceedings, bypassing the certified *Amorin* class for remediation

damages, and contravening the Court's prior approval of Mr. Inglis' formula for calculating class

damages, the CNBM/BNBM Entities even allude in their Trial Plan to a desire to revisit the

default judgments against them.[13]  It is a groundless effort to achieve relief which this Court

already denied multiple times.[14]  Defendants' continued approach in these proceedings should no

longer be countenanced.  Their Trial Plans are counter-productive, offer significant additional

delay, constitute a waste of judicial resources, are extremely prejudicial to Plaintiffs, ignore the

important history of this MDL, and seek to further prejudice Plaintiffs' access to a just resolution

of longstanding claims.  The Defendants' motions to adopt the Taishan and CNBM/BNBM Trial

Plans should, therefore, be denied.  The PSC's proposed Pretrial Order Setting Deadlines for the

Resolution of Louisiana Plaintiffs' Claims for Remediation and Other Damages in *Amorin* and

*Brooke* should be granted.

---

[13] *See* CNBM/BNBM Memo in Support of their Trial Plan, at 4 ("in the absence of imputed liability, where defaults have not been entered as to CNBM or the BNBM Entities, these defendants retain full rights—including jury trial rights—to contest all issues, including liability and causation.").

[14] The denial of Defendants' motion to vacate default judgments is justified.  The CNBM/BNBM Entities were fully aware of these proceedings since the very beginning. *See Chinese Drywall*, 2018 WL 279629, at *6-7.  In fact, as evidenced in Exhibit "C" hereto, ███████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████

Dated: July 16, 2018                          Respectfully Submitted,


                                               By: /s/ Russ M. Herman
                                               Russ M. Herman (La Bar No. 6819) (on the brief)
                                               Leonard A. Davis (La Bar No. 14190) (on the brief)
                                               Stephen J. Herman (La Bar No. 23129)(on the brief)
                                               Herman, Herman & Katz, LLC
                                               820 O'Keefe Avenue
                                               New Orleans, LA 70113
                                               Phone: (504) 581-4892
                                               Fax: (504) 561-6024
                                               RHerman@hhklawfim.com
                                               *Plaintiffs' Liaison Counsel MDL 2047*

                                               Arnold Levin (on the brief)
                                               Fred S. Longer (on the brief)
                                               Sandra L. Duggan (on the brief)
                                               Nicola F. Serianni (on the brief)
                                               Levin Sedran & Berman LLP
                                               510 Walnut Street, Suite 500
                                               Philadelphia, PA 19106
                                               Phone: (215) 592-1500
                                               Fax: (215) 592-4663
                                               alevin@lfsblaw.com
                                               *Plaintiffs' Lead Counsel MDL 2047*


## PLAINTIFFS' STEERING COMMITTEE


Dawn M. Barrios                                Robert M. Becnel
Emma Kingsdorf Schwab (on the brief)           Law Office of Robert M. Becnel
Barrios, Kingsdorf & Casteix, LLP              425 W. Airline Highway, Suite B
701 Poydras Street, Suite 3650                 Laplace, LA 70068
New Orleans, LA 70139                           Phone: (985) 359-6101
Phone: (504) 524-3300                          Fax: (985) 651-6101
Fax: (504) 524-3313                            robbecnel@aol.com
Barrios@bkc-law.com

Salvadore Christina, Jr.
Becnel Law Firm, LLC
425 W. Airline Highway, Suite B
Laplace, LA 70068
Phone: (985) 536-1186
Fax: (985) 536-6445
schristina@becnellaw.com

Peter Prieto
Podhurst Orseck, PA
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
pprieto@podhurst.com

Bruce William Steckler
Steckler Gresham Cochran
12720 Hillcrest Road, Suite 1045
Dallas, TX 75230
Phone: (972) 387-4040
Fax: (972) 387-4041
bruce@stecklerlaw.com

Patrick Montoya
Colson, Hicks, Eidson
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
patrick@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
Echsner & Proctor, PA
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
The Lambert Firm
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@thelambertfirm.com

Pete Albanis
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Myers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
palbanis@forthepeople.com

James R. Reeves, Jr.
Reeves & Mestayer, PLLC
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@rmlawcall.com

Christopher A. Seeger
Seeger Weiss, LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5002
dan@wbmllp.com

18

Richard J. Serpe
Law Offices of Richard J. Serpe
Crown Center, Suite 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com

Victor M. Diaz, Jr.
V.M. Diaz and Partners, LLC
119 Washington Ave., Suite 402
Miami Beach, FL 33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

Anthony D. Irpino
Pearl A. Robertson (on the brief)
IRPINO AVIN HAWKINS LAW FIRM
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

Gerald E. Meunier (on the brief)
Rachel M. Naquin (on the brief)
Gainsburgh, Benjamin, David,
Meunier & Warshauer, LLC
2800 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2800
Phone:  (504) 522-2304
Fax:  (504) 528-9973
gmeunier@gainsben.com

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W., Suite  650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, which will serve a notice of the uploading in accordance with the procedures established in MDL 2047, on this 16th day of July, 2018.

<u>/s/ Leonard A. Davis</u>
Leonard A. Davis
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com
*Plaintiffs' Liaison Counsel MDL 2047*
*Co-Counsel for Plaintiffs*