## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |

### PLAINTIFFS' STEERING COMMITTEE'S MEMORANDUM IN SUPPORT OF MOTION TO CERTIFY THE COURT'S ORDER AND REASONS OF MARCH 10, 2016 PURSUANT TO 28 U.S.C. §1292(b)

The Plaintiffs' Steering Committee ("PSC") respectfully moves the Court to certify its March 10, 2016 Order & Reasons ("O&R") for appeal pursuant to 28 U.S.C. § 1292(b).

## I.      INTRODUCTION

This Court's O&R granted CNBM Group's motion to dismiss on the grounds of immunity under the Foreign Sovereign Immunity Act ("FSIA"), 28 U.S.C.A. § 1602 et seq.  Like this Court's Jurisdiction Order of April 21, 2017 [Rec. Doc. 20739], which it recently certified for interlocutory review and is now on appeal in the Fifth Circuit (Rec. Doc. 21231), the O&R addresses disputed issues of law related to fundamental and dispositive issues of personal jurisdiction over the party ultimately responsible for and controlling Taishan's exports and sales of more than 87 million square feet of drywall to customers throughout the United States – CNBM Group.  Had the Court found jurisdiction over the Defendant, an immediate appeal would

1

have been available to CNBM Group.[1]  However, because the Court found jurisdiction wanting and granted the motion, Plaintiffs had to wait for an appropriate time to request interlocutory review, otherwise such a request would have been premature.  Considering this Court's and the Fifth Circuit's recent decisions to allow review of the parallel April 21, 2017 Jurisdiction Order involving personal jurisdiction over the other CNBM and BNBM defendants, to complete the purpose of this Court's certification of that ruling, the PSC submits that the O&R should now also be certified for review.  This will accelerate the time in which jurisdiction over the controlling parent of the Taishan Defendants (CNBM, BNBM Group, BNBM, Taishan, and TTP) is determined, save time, and prove to be the most efficient means of resolving the ultimate termination of this litigation by resolving personal jurisdiction over all the Taishan Defendants in the same time frame, as opposed to waiting until the end of the case for Plaintiffs to appeal the O&R from a final judgment.  As the time to review the O&R is now ripe, certification of the matter for appellate review should be granted.

It is especially the case here, since all the criteria for certification under § 1292(b) are present, *i.e*., there is 1) a controlling question of law over which there is 2) a substantial ground for difference of opinion and 3) the resolution of which would materially advance the ultimate termination of the litigation.  Accordingly, as discussed below, Plaintiffs' motion should be granted.

---

[1] A ruling denying a motion to dismiss that the defendant is not entitled to sovereign immunity is immediately appealable pursuant to the collateral order doctrine. *See, e.g., Compania Mexicana De Aviacion, S.A. v. United States*, 859 F.2d 1354, 1358 (9th Cir.1988); *Enahoro v. Abubakar*, 408 F.3d 877, 880 (7th Cir. 2005).

## II.     **FACTUAL AND PROCEDURAL BACKGROUND**

The long and arduous history of this litigation is well known to this Court and is also

explicated at length in the O&R.  After Taishan and its wholly-owned subsidiary TTP and alter

ego shipped over 87 million square feet of drywall to the United States, litigation over the

defects in its product ensued.[2]  CNBM Group, as the controlling shareholder of Taishan's parent

entities, took control and directed every aspect of its minion's participation in the litigation.  It

decided to use Taishan as a "stalking horse" to test this Court's authority over all CNBM

Group's vast corporate structure.[3]  It decided not to appear itself in the litigation.  It also decided

to have Taishan not appear initially and suffer a default judgment.[4]  It then directed Taishan to

enter an appearance solely to challenge this Court's assertion of jurisdiction all the way to the

Fifth Circuit,[5] and following remand from those appeals to again absent itself from the scheduled

Judgment Debtor Hearing.  Only after this Court asserted its authority by means of its contempt

order and injunction following Taishan's failure to attend the Judgment Debtor Hearing, did

CNBM Group and its subsidiaries and affiliates formally appear before this Court.

The effectiveness of this Court's July 17, 2014 Contempt Order and orders (Rec.Doc.

Nos. 19526, 19608, 19635, 19700 and 19725) regarding Taishan's production of documents

from Peng Wenglong's computer cannot be understated.  In addition to forcing the upstream

entities to finally enter their appearances in this litigation, they also caused Taishan to produce

new, never-before-seen documents which became available after Peng Wenglong's so-called

---

[2] *See In re Chinese Manufactured Drywall Prod. Liab. Litig.*, 894 F.Supp. 819, 841 (E.D. La  2012), aff'd 742 F.3d
576 & 753 F.3d 521 (5th Cir. 2014) (adopting Herman Aff. Ex. 1 Amend., which confirms the import of  87,609,696
sq. ft. of drywall).
[3] *See* Transcript of Motion Hearing Proceedings at 44 (Dec. 8, 2015) (attached hereto as Exhibit 1).
[4] O&R at 19-20.
[5] *See In re: Chinese-Manufactured Drywall Prod. Liab. Litig.,* 742 F.3d 576 & 753 F.3d 521 (5th Cir. 2014).

"missing" computer was found.  Like those documents produced earlier by Taishan, whose

privileged nature was deemed waived by the crime-fraud exception, *see In re Hogan Lovells US*

*LLP,* No. 15-30114 (5th Cir. Feb. 20, 2015) (denying mandamus) [Rec. Doc. 18407], these new

documents have proven to be a treasure trove of information providing further insight to CNBM

Group's iron-fisted control over Taishan's commercial activity and tortious conduct.  These

newly translated documents confirm that early on, the board of directors of CNBM Group

orchestrated and carefully monitored the "███████████" of Taishan to this litigation.

███████████████████████████████████

█████████████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████.[6] ███████████████████████

██████████████████████████████████████████

█████████████████████████████[7] ████████

███████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████

██████████████

---

[6] *See* Declaration of PSC Translator Yan Gao, Exhibit A (assemblage of five (5) documents) (attached hereto as Exhibit "2") [FILED UNDER SEAL].
[7] *Id.* at TG-0208432-35.

---

[8] *Id.* at TG-0208437-442.
[9] *Id.* at TG-0208445-TG0208448.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████[10]

   ████████████████████████████████████████[11]  ████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████[12]

      ████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████[13]  ████████████

█████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████

---

[10] *Id*. at TG-0208447.
[11] *Id.* at TG-0208067 – TG 0208088.
[12] *Id.*, TG-0208449 – TG-0208452 at TG-0208452.
[13] *Id.*, TG-0210168 – TG-0210177.



[14] With this advice, CNBM Group chose to litigate

its defenses.

After challenging this Court's authority for many years behind the scenes, on June 22, 2015, CNBM Group moved to be dismissed from the action based on FSIA. In its motion CNBM Group asserted that it was immune from suit because it is an "agent or instrumentality of a foreign state."[15]  It supported this assertion with the Declaration of Jainglin Cao, who declared that "CNBM Group is directly and wholly owned by the State."[16]  This singular averment, however, was contradicted by numerous public filings of Beijing New Building Materials Public Limited Company, whose truthfulness, accuracy and completeness were similarly endorsed by Mr. Cao as its Chairman.  In these numerous Reports, Mr. Cao represented that the Chinese State-owned Assets Supervision and Administration Commission or "SASAC" owned 100% of the CNBM Group.  For example, BNBMPLC's publicly filed 2009 Annual Report stated:[17]

---

[14] *Id.*, TG-0210176.

[15] O&R at 2, citing 28 U.S.C. §1603(b).

[16] Declaration of Jainglin Cao at ¶4 ("CNBM Group is directly and wholly owned by the State, i.e., by the whole people, and the State Council exercises the ownership of State-owned assets on behalf of the State.  CNBM Group's ownership structure has not changed since this litigation was filed in 2009.") [Rec. Doc. 19527-6].

[17] *See* FSIA Exhibit 15 (emphasis added) (Rec. Doc. 19689-16) (attached hereto as Exhibit 3) [FILED UNDER SEAL].  *See also* FSIA Exhibits 3, 8, 10, 12, 15, 29, 21, 18, 20, and 23 (Rec. Doc. Nos. 19689-4; 19689-9; 19689-11; 19689-13; 19689-16; 19689- 39-41; 19689-25; 19689-22; 19689-24; 19689-27-30).  This is not the first witness of the Taishan Defendants to produce inconsistent declarations.  The Court will recall Mr. Jia Tongchun swore under oath immediately before his deposition in Hong Kong to be unaware of the whereabouts of Mr. Peng, his computer and computer files, only to recant that testimony and admit that at all times he was aware of Mr. Peng's whereabouts, and the location of his laptop and desktop computers.  *Compare* Declaration of Jia Tongchun (Aug. 31, 2015) (Rec. Doc. 19557-5) *with* Declaration of Jia Tongchun for Clarification and Supplementation (Sept. 16, 2015) (Rec. Doc. 19689-48).



**Beijing New Building Materials Public Limited Company (BNBMPLC)**

**Annual Report 2009**

Board of Directors
Beijing New Building Materials Public Limited Company

March 23, 2010

State-owned Assets Supervision and Administration Commission of the State Council

*100%*

China National Building Materials Group Corporation

*13.67%*

China National Building Material Company Limited

*52.40%*

Beijing New Building Materials Public Limited Company

*30.46%* — Beijing New Building Material (Group) Co., Ltd. — *65%*

*4.67%* — China National Building Materials & Equipment Import & Export Corporation — *100%*

*0.02%*

China Building Materials Academy — *100%*

**FSIA Exhibit 15**

Moreover, by the time CNBM Group had filed its motion to dismiss, this Court had already twice determined that "SASAC owns 100% of the CNBM Group."[18]  Since the People's Republic of China ("PRC") itself did not directly own CNBM Group, rather SASAC owned the company,[19] under the teachings of *Dole Food*, Plaintiffs were justified in challenging Defendants' initial premise that it was either an organ of or owned by the PRC.  In *Dole Food*, the Supreme Court held that "only *direct* ownership of a majority of shares by the foreign state

---

[18] *See In re: Chinese-Manufactured Drywall Prod. Liab. Litig.*, 706 F.Supp.2d 655, 663 (E.D. La. 2010) (Germano Findings of Fact); *In re: Chinese-Manufactured Drywall Prod. Liab. Litig.,* 2014 WL 4809520, *5 (E.D. La. Sept. 26, 2014) (Class Certification Findings of Fact).
[19] *See* SASAC-controlled Affiliates and Subsidiaries Chart (attached hereto as Exhibit 4).

satisfies the statutory requirement."[20]   In a plethora of briefing, Plaintiffs had also extensively

proven two of the exceptions to the FSIA were met by CNBM Group due to its commercial

activity and tortious conduct. These proofs were again demonstrated at oral argument which

occurred on December 8, 2015.[21]

Nevertheless, on March 10, 2016, this Court issued its O&R which granted CNBM

Group's motion.  Citing *Dole Food* the Court recognized that majority ownership by the state is

the "benchmark of instrumentality status."[22] At the same time, however, the Court overlooked

the teachings of *Dole Food* regarding the requirement of *direct* ownership, by holding that

CNBM Group was owned by the PRC even though SASAC is the separate administering

authority which is the direct owner of CNBM Group's stock.[23]  Without so much as mentioning

that SASAC was an intermediary owner, this Court ruled that "CNBM Group qualifies as an

'agency or instrumentality of a foreign state' within the meaning of FSIA because a majority of

its shares are owned by a foreign state, namely the People's Republic of China. CNBM Group is

a state-owned company incorporated under the Chinese law; it enjoys the rights of a separate

corporate legal person; and it is—and was, at the time this suit was filed—directly and wholly

owned by the People's Republic of China ("PRC")."[24] Compounding this error of presumptive

immunity, the Court also disallowed Plaintiffs' argument that CNBM Group did not fit §1605's

---

[20] *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003) (emphasis added).
[21] *See* Exhibit 1, *supra. See also* Plaintiffs' Powerpoint Presentation of Dec. 8, 2015 (attached hereto as Exhibit 5).
[22] O&R at 22, citing *Dole Food,* 538 U.S. at 477.
[23] *See* fn. 7, *supra.  See also* Declaration of Professor Curtis J. Milhaupt ¶¶20, 27-28 (explaining that SASAC "acts as both an investor on behalf of the Chinese people and as a regulatory agency" which owns Chinese State-owned Enterprises ("SOEs"), like CNBM Group, based on the SOE Asset Law, which at times requires SASAC to "obtain government approval before exercising its rights as a shareholder.") (MTD Ex. 265) (Rec. Doc. 20036).  This example of indirect control of the PRC of an SOE like CNBM Group negates this Court's conclusion that "CNBM Group is—and was, at the time this suit was filed—directly and wholly owned by the People's Republic of China." O&R at 8, citing Cao Decl. ¶¶ 3-6.
[24] O&R at 22.

alternative ground for immunity given to an "organ" of the state due to its commercial provenance.[25]

Further this Court determined that neither of the two exceptions to foreign sovereign immunity applied. The Court found that the tort exception was inapposite based on finding that "Plaintiffs fail to specify what tortious conduct CNBM Group allegedly committed in the United States."[26]  Then the Court rejected Plaintiffs' assertions regarding the commercial activity exception by finding that CNBM Group did not engage in commercial activity of marketing and selling drywall or that attribution of CNBM Group's direction of its subsidiaries' commercial activities were sufficient to sustain personal jurisdiction.[27]

Because the O&R dismissed only one Defendant party amongst many, the ruling was not a final appealable order.  Now that the Fifth Circuit has chosen to accept interlocutory review of this Court's April 21, 2017 Order, logic dictates that the O&R should likewise be considered within the same timeframe. Therefore, the O&R should now be immediately certified for review by the Court of Appeals.

## III.   <u>LEGAL STANDARD</u>

By statute, an appeal of an interlocutory order is permitted when the district court "shall be of the opinion [1] that such order involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation," and when the court "so state[s] in writing in such order." 28 U.S.C. § 1292(b). If the district court certifies its order, the

---

[25] *Id.*
[26] *Id.*
[27] *Id.* at 24-32.

appropriate court of appeals "may thereupon, in its discretion, permit an appeal to be taken from such order." *Id. See also Rico v. Flores*, 481 F.3d 234, 238 (5th Cir. 2007).

## IV.   **ARGUMENT**

### A.  **THE COURT'S JURISDICTIONAL RULING WILL RESOLVE CONTROLLING QUESTIONS OF LAW.**

This Court's O&R resolved "controlling question[s] of law"—in particular, whether the State-Owned Enterprise, CNBM Group, was presumptively immune from prosecution and whether Plaintiffs had failed to establish either the commercial activity or tortious conduct exceptions to the FSIA applied to the company.

A question is "controlling" for purposes of § 1292(b) where "its incorrect disposition would require reversal of a final judgment." WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 3930. That is indisputably the case here—if Plaintiffs rebutted all of CNBM Group's defenses, assuming Plaintiffs later prevail on proving their damages at trial (which is likely given the default judgments entered against all the Taishan Defendants, including CNBM Group), and the Fifth Circuit later concludes that the FSIA defense was invalid, the Fifth Circuit would have no choice but to reverse this Court's O&R. Indeed, this Court has ruled that "questions of jurisdiction" are especially appropriate for 1292(b) certifications. *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, Order & Reasons at 12 (E.D. La. Aug. 4, 2017) (Rec. Doc. 20890).

A question also is controlling if its resolution on interlocutory review "might save time for the district court, and time and expense for the litigants." WRIGHT &MILLER, FEDERAL PRACTICE & PROCEDURE § 3930. *See also In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, Order & Reasons at 12 (E.D. La. Aug. 4, 2017) (Rec. Doc. 20890) (certifying question to

avoid a "long and costly process of serial trials" (quotation marks omitted)). That too is the case here, since an appellate ruling on this Court's jurisdiction would apply across the many thousands of cases pending in this MDL. The Fifth Circuit's ruling thus will "have precedential value for a large number of cases"—indeed, an extraordinarily large number of cases, given the size of this MDL. *In re Delta Produce*, No. BR 12-50073-A998, 2013 WL 3305537, at *2 (W.D. Tex. June 28, 2013). And so, resolution of these critical preemption issues would obviate the need for repeated re-litigation of the same legal issue, easing the burden on the judicial system and the parties.

## B. THE COURT'S FSIA RULING WILL RESOLVE QUESTIONS ON WHICH THERE IS SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION.

There is "substantial ground for difference of opinion," 28 U.S.C. § 1292(b), on whether this Court should have retained jurisdiction over CNBM Group, a commercial SOE, under the FSIA based on the singular averment of Mr. Cao that CNBM Group "is directly and wholly owned by the State,"[28] when substantial controverting evidence was before the Court.

Just at the end of the Supreme Court's recent term in the unanimous decision of *Animal Science Prod., Inc. v. Hebei Welcome Pharm. Co. Ltd.*,[29] the Court demonstrated a distrust and unease with the Chinese government's pronouncements of its own laws in a similar context. In *Animal Science*, the plaintiff brought an antitrust suit against the defendant for fixing the price of Vitamin C products. In Hebei Welcome's defense, the Chinese government submitted an amicus brief, pursuant to Fed.R.Civ.P. 44.1, stating that "the conspiracy in restraint of trade alleged by the U.S. purchasers was in fact 'a regulatory pricing regime mandated by the government of

---

[28] O&R at 8.  *See also* Cao Decl. ¶¶ 3 (Rec. Doc. 19527-6).
[29] *Animal Science Prod., Inc. v. Hebei Welcome Pharm. Co. Ltd*, 138 S.Ct. 1865 (June 14, 2018).

China.'"[30]  Even with this categorical statement by the Chinese authority responsible for the Defendant's actions, the Court held that lower courts should give "respectful consideration," but not deference to a foreign government's say-so about the application of that country's law.[31] So too, Plaintiffs suggest that this Court's focus on the singular averment of Mr. Cao that CNBM Group was owned by the State was mistaken as it failed to consider substantial evidence which supported this Court's earlier findings that CNBM Group was 100% owned by SASAC.[32]  This evidence includes material publicly filed by BNBMPLC on the Shenzhen Stock Exchange which were endorsed by Mr. Cao and directly controvert the one averment relied on by the Court.

By way of further example, Professor Curtis Milhaupt has testified in this litigation that Chinese SOEs may bear many of the trapping of American corporations but they are far from being in parity.[33]  Notably, CNBM Group has allowed passive investors to participate in the company.  Indeed, one commentator recently highlighted the success of CNBM Group in separating itself from State control:

> Mixed ownership has worked to improve corporate governance in the past in some cases, as in the example of China National Building Material Corporation, which allowed private enterprises to purchase some of its shares, but it should be noted that SOEs are to some extent administrative arms of the government and interests are not entirely separate. In fact, the objective of the mixed ownership reform is not to

---

[30] *Id*. at 1870.

[31] *Id*. at 1869.

[32] *See* Footnote 10, *supra.. See also*, Affidavit of Russ M. Herman in Support of the Plaintiffs' Steering Committee's Evidentiary Presentation Regarding Taishan Gypsum Co., Ltd., ¶18 (dated 2/19/10)[Germano Trial Exhibit P3.0629.1000].

[33] Milhaupt Decl. ¶17-20, *supra*, quoting Adam Hersh, *Assessing China's Economic Reform Agenda*, May 1, 2014, available at https://www.americanprogress.org/issues/economy/report/2014/05/01/88864/assessing-chinas-economic-reform-agenda/ (Chinese SOEs "assume many of the trappings of modern global business, including publicly traded shares and corporate boards with ostensibly independent external directors…[,]function does not necessarily follow form. In practice, these firms operate under quite different decision making mechanisms, through official capacities or otherwise, than do comparable firms in the United States or other advanced economies.");

reduce effective government control but to increase private funding for SOEs.[34]

Of course, CNBM's so-called success must be tempered by the political realities existing in the PRC which prove that corporate conduct engaged in by these entities is far from transparent.[35]  As this Court is aware based on its experience in the second round of depositions of Taishan's witnesses in Hong Kong, that witnesses for the CNBM Group entities are prone to deception and exaggerating the truth.[36]

Given the recent guidance by the Supreme Court on matters of Chinese law and this Court's finding "concerning the propriety of the Court's exercise of personal jurisdiction" over CNBM presented substantial grounds for difference of opinion,[37] the second element of § 1292(b) has been satisfied.

### C.  AN IMMEDIATE APPEAL WILL MATERIALLY ADVANCE THE TERMINATION OF THIS LITIGATION.

Finally, certifying the Court's preemption ruling will "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). This requirement "is closely tied to the requirement that the order involve a controlling question of law." WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 3930. "In determining whether certification will materially advance the ultimate termination of the litigation, the district court considers whether it will eliminate the

---

[34] *See* Sara Hsu, *China Goes In Circles: Another Attempt To Reform State-Owned Enterprises Doesn't Do Enough* (June 13, 2017), available at https://www.forbes.com/sites/sarahsu/2017/06/13/china-goes-in-circles-another-attempt-to-reform-state-owned-enterprises-doesnt-do-enough/#216a54e49124
[35] Milhaupt Decl. ¶20.
[36] *See* Deposition of Fu Tinghuan (PENG Wenlong's supervisor) dated 1/10/2012 at 86:14-15 (Herman Aff. Ex. 2 filed 5/8/2012 (Rec.Doc. 14224)) and Deposition of Peng Wenlong dated 1/13/2012 at 479 (Herman Aff. Ex. 10 filed 5/8/2012 (Rec.Doc. 14224).  The Court had to admonish these witnesses not to give false testimony.
[37] *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, Order & Reasons at 12 (E.D. La. Aug. 4, 2017) (Rec. Doc. 20890).

need for trial, eliminate complex issues, or streamline issues to simplify discovery." *In re Stewart*, Civ. No. 09-3232, 2009 WL 2461675, at *2 (E.D. La. Aug. 7, 2009) (citation and quotation marks omitted). Here, the question of this Court's jurisdiction over the Defendant pervades every single Plaintiffs' claim in this MDL.  Just as this Court has found that certification of its jurisdictional ruling over CNBM the BNBM entities will materially advance the termination of the litigation, that ruling equally applies to the O&R addressing CNBM Group.  *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, Order & Reasons at 12 (E.D. La. Aug. 4, 2017) (Rec. Doc. 20890).  *See also Han Kim v. Democratic People's Republic of Korea,* 950 F.Supp.2d 29, 43 (D.D.C. 2013) ("A district court ruling on whether facts in a complaint adequately allege a basis for invoking . . . [an] exception under the FSIA should be immediately appealable."), *rev'd on other grounds*, 774 F.3d 1044 (D.C. Cir. 2014).

### D. <u>THIS REQUEST FOR CERTIFICATION IS TIMELY.</u>

Plaintiffs anticipate that the Defendants may contend that the instant motion is untimely.  Not so.  Section 1292(b) requires a petition for interlocutory review to be filed in the Court of appeals within 10 days of the district court's 1292(b) order, but there is no statutory deadline for the filing of the petition in the district court.  *See Ahrenholz v. Bd. of Trustees of Univ. of Illinois*, 219 F.3d 674, 675–76 (7th Cir. 2000).  Besides, it was not until the combination of the Fifth Circuit's order accepting the interlocutory appeal of this Court's April 21, 2017 Order on June 20, 2018 and the June 14, 2018 opinion of *Animal Science*, that crystalized the justification for interlocutory review.  Not until the confluence of these events did this matter become ripe for consideration.  Now, however, given that appeals are pending before the Fifth Circuit involving personal jurisdiction over CNBM and the BNBM entities, this request is timely as the

certification of the CNBM Group jurisdictional question before the Fifth Circuit would present

all of the jurisdictional questions before the Circuit Court at the same time, albeit subject to

separate panels.

## V.    **CONCLUSION**

For the reasons set forth above, this Court should certify its March 10, 2016 O&R for

immediate review.

Respectfully submitted,

Dated:  July 17, 2018

By: */s/ Russ M. Herman*
Russ M. Herman (La Bar No. 6819) (on the brief)
Leonard A. Davis (La Bar No. 14190) (on the brief)
Stephen J. Herman (La Bar No. 23129)(on the brief)
Herman, Herman & Katz, LLC
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
RHerman@hhklawfim.com
*Plaintiffs' Liaison Counsel MDL 2047*

Arnold Levin (on the brief)
Fred S. Longer (on the brief)
Sandra L. Duggan (on the brief)
Keith Verrier (on the brief)
Nicola F. Serianni (on the brief)
Levin Sedran & Berman LLP
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
alevin@lfsblaw.com
*Plaintiffs' Lead Counsel MDL 2047*

16

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Robert M. Becnel,
Law Office of Robert M. Becnel
425 W. Airline Highway, Suite B
Laplace, LA 70068
Phone: (985) 359-6101
Fax: (985) 651-6101
robbecnel@aol.com

Salvadore Christina, Jr.
Becnel Law Firm, LLC
425 W. Airline Highway, Suite B
Laplace, LA 70068
Phone: (985) 536-1186
Fax: (985) 536-6445
schristina@becnellaw.com

Peter Prieto
Podhurst Orseck, PA
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
pprieto@podhurst.com

Bruce William Steckler
Steckler Gresham Cochran
12720 Hillcrest Road, Suite 1045
Dallas, TX 75230
Phone: (972) 387-4040
Fax: (972) 387-4041
bruce@stecklerlaw.com

Patrick Montoya
Colson, Hicks, Eidson
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
patrick@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
Echsner & Proctor, PA
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
The Lambert Firm
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@thelambertfirm.com

Pete Albanis
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Myers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
palbanis@forthepeople.com

James R. Reeves, Jr.
Reeves & Mestayer, PLLC
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@rmlawcall.com

Christopher A. Seeger
Seeger Weiss, LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5002
dan@wbmllp.com

Richard J. Serpe
Law Offices of Richard J. Serpe
Crown Center, Suite 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com

Victor M. Diaz, Jr.
V.M. Diaz and Partners, LLC
119 Washington Ave., Suite 402
Miami Beach, FL 33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

Anthony D. Irpino
IRPINO AVIN HAWKINS LAW FIRM
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

Gerald E. Meunier
Gainsburgh, Benjamin, David,
Meunier & Warshauer, LLC
2800 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2800
Phone:  (504) 522-2304
Fax:  (504) 528-9973
gmeunier@gainsben.com

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W., Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, which will serve a notice of the uploading in accordance with the procedures established in MDL 2047, on this 17th day of July, 2018.

 

*/s/ Leonard A. Davis*
Leonard A. Davis
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
<u>Ldavis@hhklawfirm.com</u>
Plaintiffs' Liaison Counsel
MDL 2047

*Co-Counsel for Plaintiffs*