# EXHIBIT 1

1              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF LOUISIANA
2

3     ****************************************************************

4     In re:  CHINESE-MANUFACTURED      MDL DOCKET NO. 09-MD-2047
      DRYWALL PRODUCTS LIABILITY        SECTION L
5     LITIGATION                        NEW ORLEANS, LOUISIANA
                                        Tuesday, December 8, 2015
6     THIS DOCUMENT RELATES TO:         8:00 A.M.

7     ALL CASES

8

      ****************************************************************
9

10              TRANSCRIPT OF MOTION HEARING PROCEEDINGS
             HEARD BEFORE THE HONORABLE ELDON E. FALLON
11                 UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19    OFFICIAL
      COURT REPORTER:    TERRI A. HOURIGAN, CRR, RPR
20                       CERTIFIED REALTIME REPORTER
                         REGISTERED PROFESSIONAL REPORTER
21                       500 POYDRAS STREET, ROOM B-275
                         NEW ORLEANS, LOUISIANA  70130
22                       (504) 589-7775
                         Terri Hourigan@laed.uscourts.gov
23

24    PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
      PRODUCED BY COMPUTER.
25

```
 1    APPEARANCES:

 2

 3    FOR THE PLAINTIFFS
      STEERING COMMITTEE:          HERMAN, HERMAN & KATZ, LLC
                                   BY:  RUSS M. HERMAN, ESQ.
 4                                      LEONARD A. DAVIS, ESQ.
                                   820 O'Keefe Avenue
 5                                 New Orleans, Louisiana 70112

 6                                 LEVIN, FISHBEIN, SEDRAN & BERMAN
                                   BY:  ARNOLD LEVIN, ESQ.
 7                                      FRED S. LONGER, ESQ.
                                        SANDRA L. DUGGAN, ESQ.
 8                                 510 Walnut Street, Suite 500
                                   Philadelphia, Pennsylvania 19106
 9

10    DEFENDANT:                   ALSTON & BIRD, LLP
      TAISHAN AND TTP              BY:  CHRISTINA EIKHOFF, ESQ.
11                                 1201 West Peachtree Street NW
                                   Suite 4200
12                                 Atlanta, Georgia  30309

13
      DEFENDANT CNBM:              ORRICK HERRINGTON SUTCLIFFE
14                                 BY:  CHRIS VEJNOSKA, ESQ.
                                        JAMES STENGEL, ESQ.
15                                      TIM EGAN, ESQ.
                                   405 Howard Street, Suite 11
16                                 San Francisco, California 94105

17                                 GORDON ARATA MCCOLLAM DUPLANTIS &
                                   EAGAN, LLC
18                                 BY:  DONNA P. CURRAULT, ESQ.
                                   201 St. Charles Avenue, 40th Floor
19                                 New Orleans, Louisiana 70170

20    DEFENDANT
      BNBM:                        DENTONS, US LLP
21                                 BY:  RICHARD FENTON, ESQ.
                                   1221 Avenue of the Americas
22                                 New York, New York  10020

23
      DEFENSE LIAISON              PHELPS DUNBAR, LLP
24    COUNSEL:                     BY:  HARRY ROSENBERG, ESQ.
                                   365 Canal Street, Suite 2000
25                                 New Orleans, Louisiana  70130
```

```
 1   APPEARANCES:

 2
     OFFICE OF ATTORNEY          OFFICE OF ATTORNEY GENERAL
 3   GENERAL:                    BY:  DAVID BLACK, ESQ.
                                 1885 N. Third Street
 4                               Baton Rouge, Louisiana 70802

 5
     DEFENDANT:                  PERKINS COIE
 6   STATE OF LOUISIANA          BY:  CRAIG M.J. ALLELY, ESQ.
                                 1900 Sixteenth Street, Suite 1400
 7                               Denver, Colorado  80202-5255

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

P R O C E E D I N G S

December 8, 2015

* * *

THE CASE MANAGER:  All rise.

THE COURT:  Be seated, please.  Good morning, ladies
and gentlemen.

Call the case.

08:03AM   CASE MANAGER:  *MDL No. 2047, In Re:*
08:04AM   *Chinese-Manufactured Drywall Products Liability Litigation.*

08:04AM   THE COURT:  Counsel, make your appearance for the
08:04AM   record, please.

08:04AM   MR. LEVIN:  Arnold Levin and Russ Herman for the
08:04AM   plaintiffs.

08:04AM   MR. STENGEL:  James Stengel for CNBM Group.

08:04AM   THE COURT:  All right.  By way of background, let me
08:04AM   mention the following things just to put us in position today.

08:04AM   As we all know from 2004, through 2006, a housing boom
08:04AM   in Florida and re-building efforts necessitated by Hurricanes
08:04AM   Rita and Katrina led to a shortage of construction materials,
08:04AM   particularly drywall.

08:04AM   The United States is one of the largest manufacturers
08:04AM   of drywall in the world, but frankly, the United States ran
08:04AM   out.

08:04AM   As a result, drywall manufacturing in China was brought
08:04AM   into the United States and used in the construction in

08:05AM 1   refurbishing of the homes in the coastal areas, particularly,

08:05AM 2   the gulf coast and the eastern seaboard.

08:05AM 3        Sometime after the insulation of the drywall, the

08:05AM 4   homeowners began noticing smelly gases, corrosion, blackening

08:05AM 5   of metal wiring, surfaces, objects, appliances were breaking,

08:05AM 6   heating and cooling systems were failing, and it was discovered

08:05AM 7   that this was due to Chinese-manufactured drywall.

08:05AM 8        The drywall that was brought into the United States was

08:05AM 9   manufactured basically by two entities.  One entity was Knauf

08:05AM 10  entity, which Knauf entity owned a wholly-owned subsidiary

08:05AM 11  Chinese manufacturing facility, and the Taishan entities.

08:06AM 12       Suits were filed throughout the country, primarily in

08:06AM 13  the gulf coast and eastern seaboard, and in the gulf coast as

08:06AM 14  far as Texas.

08:06AM 15       With regard to the Chinese entities, suits were brought

08:06AM 16  against Taishan, and a subsidiary, TTP, and also other entities

08:06AM 17  that the plaintiffs felt were associated, related, and had some

08:06AM 18  connection to Taishan.

08:06AM 19       The CNBM defendants comprised of CNBM Group, CNBM

08:06AM 20  Company, and various other entities.

08:06AM 21       We are here today because of CNBM Group moved to

08:06AM 22  dismiss the suit against them on the basis of FISA, Foreign

08:07AM 23  State and Immunities Act.  And under FISA, a foreign state,

08:07AM 24  which is defined in FISA, is immune from lawsuits.

08:07AM 25       The foreign state includes an agency or instrumentality

08:07AM 1    of a foreign state, and an instrumentality also includes any

08:07AM 2    entity that is a separate legal person, corporation, or

08:07AM 3    otherwise, a majority of whose shares or other ownership

08:07AM 4    interests is owned by a foreign state, a political subdivision

08:07AM 5    thereof.

08:07AM 6         And the issues here, as I read the cases cited by the

08:07AM 7    parties as well as their briefs, are first:  There is no

08:07AM 8    question that FISA grants a foreign state immunity.

08:08AM 9         The first issue that the plaintiffs raise is, is CNBM

08:08AM 10   Group either an organ or instrumentality of a foreign state, or

08:08AM 11   is a majority of its stock owned by a foreign state.  And in

08:08AM 12   this case, China, namely, does CNBM Group qualify under FISA.

08:08AM 13        Now CNBM Group has presented a *prima facie* case that it

08:08AM 14   is a foreign state as FISA defines it.

08:08AM 15        When they do that, the burden shifts then to the

08:08AM 16   plaintiffs to show that an exception to suit is present.

08:08AM 17        So that's the second issue, as I see it, are any

08:08AM 18   exceptions to FISA applicable.

08:08AM 19        The two exceptions that the plaintiffs raise are the

08:09AM 20   commercial activity in the United States exception, and the

08:09AM 21   tort in the United States exception.  Those are the two

08:09AM 22   exceptions.

08:09AM 23        Now, the question is, did CNBM -- does CNBM fall into

08:09AM 24   those exceptions, either of those exceptions.  That raises

08:09AM 25   another issue.  Did CNBM Group engage in any commercial

08:09AM 1    activity in the United States or did any action or inaction

08:09AM 2    result in a tort in the United States.

08:09AM 3         Subsection, did CNBM Group itself do the above, or can

08:09AM 4    actions of others be attributed to CNBM Group so that those

08:09AM 5    actions satisfy the exception, and those actions, can they be

08:10AM 6    attributable to the CNBM Company.

08:10AM 7         So we are here today to discuss these issues.

08:10AM 8         I will hear from the parties, the moving party.

08:10AM 9         MR. STENGEL:  Thank you, Your Honor.  Jim Stengel from

08:10AM 10   Orrick Herrington for CNBM Group.

08:10AM 11        If I may approach?

08:10AM 12        THE COURT:  Yes.

08:10AM 13        MR. STENGEL:  I'm providing the documents, and I'm

08:10AM 14   having copies of the slides I will use distributed to other

08:10AM 15   counsel in the courtroom.

08:10AM 16        The other document I provided the Court is a copy of

08:10AM 17   the Federal Judiciary Centers Guide for Judges to the Sovereign

08:10AM 18   Immunity Act.

08:10AM 19        I know that is available online.  I found that a very

08:10AM 20   useful document, generally, in this matter.  Frankly, I find

        21   the Judicial publications, generally, although as a recidivist

08:10AM 22   defense lawyer, they are sometimes a little bit more balanced

08:10AM 23   than I would like, but they are useful.

08:10AM 24        I think in this context, there is learning in there

08:10AM 25   that could be valuable.

08:11AM 1          I'm going to address the issues raised by the Court.

08:11AM 2   In framing these issues, by way of note, Your Honor, the Court

08:11AM 3   is likely aware that last week the Supreme Court delivered its

08:11AM 4   opinion in the *OBB Personenverkehr* case, which is the case

08:11AM 5   involving the Austrian National Railway.

08:11AM 6          They reversed an en banc panel to the Ninth Circuit

08:11AM 7   finding that OBB was in fact immune under this Sovereign

08:11AM 8   Immunity Act.

9          THE COURT:  Right.

08:11AM 10         MR. STENGEL:  I will touch upon some aspects of that.

08:11AM 11  I will say that OBB had raised the issue of attribution

08:11AM 12  explicitly in the case.  I believe it was one of the questions

08:11AM 13  that was presented.

08:11AM 14         For our purposes, perhaps, unfortunately, the Court

08:11AM 15  determined that essentially the nexus of the commercial

08:11AM 16  activity, the interpretation of the *Nelson* case by the Ninth

08:11AM 17  Circuit panel was erroneous, so they didn't need to reach the

08:11AM 18  attribution issue.

08:12AM 19         Obviously, we will talk about that here today.

08:12AM 20         By way of preface, thank you, Your Honor, it is time to

08:12AM 21  hear this motion.

08:12AM 22         As Your Honor mentioned, the Sovereign Immunity Act

08:12AM 23  provides not only immunity from liability, but immunity from

08:12AM 24  litigation.  And our peculiar entry point in the litigation has

08:12AM 25  created some issues as to how quickly we could get this motion

08:12AM 1    before the Court, but it is time.

08:12AM 2         We have spent substantial amounts of time and money

08:12AM 3    engaged in extensive discovery in the case, and we are, in my

08:12AM 4    view, at the ragged edge, if not past the ragged edge, of how

08:12AM 5    long decision can be deferred on this matter.

08:12AM 6         CNBM Group is entitled to a determination of its

08:12AM 7    sovereign status.

08:12AM 8         Let me go through what I want to talk about today.

08:12AM 9         First, that CNBM Group is presumptively immune from

08:12AM 10   suit.

08:12AM 11        We will talk about, as Your Honor noted, the two paths

08:12AM 12   to being a sovereign under the terms of the Sovereign Immunity

08:13AM 13   Act, that is to be an organ or ownership.

08:13AM 14        While there has been some apparent confusion on that

08:13AM 15   front, we cite exclusively the ownership leg as it relates to

08:13AM 16   Group.

08:13AM 17        In our view, the commercial activity exception does not

08:13AM 18   apply.  This is a well-developed doctrine under the Sovereign

08:13AM 19   Immunity Act.  It has specific requirements.  It does shift the

08:13AM 20   presumption, and the plaintiffs and the state, for that matter,

08:13AM 21   have failed to demonstrate an adequate recourse to commercial

08:13AM 22   activity exception.

08:13AM 23        The tort exception, I will spend relatively less time

08:13AM 24   with, because of the geographical requirements of that, which

08:13AM 25   is both the tort itself, and the injury occurring in the United

08:13AM 1   States, and CNBM, on this record, CNBM Group has never been in

08:13AM 2   the United States.

08:13AM 3        There is no basis for a finding that it engaged in

08:13AM 4   tortious activity.

08:13AM 5        Finally, we will get to what may be the real issue

08:13AM 6   before the Court on this motion is whether attribution provides

08:14AM 7   any basis for a way around immunity.  Because I think fairly

08:14AM 8   read, there is no real dispute, at least from our perspective,

08:14AM 9   as to the sovereign status of the CNBM Group, and there is no

08:14AM 10  real dispute as to whether CNBM Group engaged in any commercial

08:14AM 11  activity with the appropriate nexus with the conduct at issue.

08:14AM 12       Because sometimes, particularly for this first leg of

08:14AM 13  the case, it's been obscured that this case is about the sale

08:14AM 14  of allegedly defective drywall.

08:14AM 15       CNBM Group sold no drywall.  It exported no drywall.

08:14AM 16  So the only path to it, the only legal basis to overcoming

08:14AM 17  sovereign immunity would be through attribution.

08:14AM 18       In short, Your Honor, we do not believe they can make

08:14AM 19  that case.

08:14AM 20       Before I get into more detail, I think there are some

08:14AM 21  rules of the road, if you will.

08:15AM 22       This case may be less complex than Knauf was.  We don't

08:15AM 23  have a thousand defendants.  But we do have a multiple set of

08:15AM 24  defendants, albeit, interrelated by ownership, but we need to

08:15AM 25  be very precise, particularly in this motion, that we identify

08:15AM 1    the companies involved, the companies, and whose personnel are

08:15AM 2    sources of evidence with precision.

08:15AM 3         It's not accurate for these purposes to talk about

08:15AM 4    BNBM.  There are multiple BNBM entities.

08:15AM 5         It is not appropriate to talk about CNBM, and the

08:15AM 6    multiple CNBM entities.  Each of them have employees, and we

08:15AM 7    need to be precise as to their relationship.

08:15AM 8         Because recall, Your Honor, that CNBM Group is not here

08:15AM 9    as a manufacturer or seller of drywall.  It invested in other

08:15AM 10   companies that invested in other companies that allegedly

08:15AM 11   manufactured defective drywall.

08:16AM 12        In that chain of ownership, there are several

08:16AM 13   intervening layers of public registered share ownership.  And

08:16AM 14   in our view, that structure, by definition, breaks the chain

08:16AM 15   that would be necessary for attribution.

08:16AM 16        But again, we and the PSC need to be very precise in

08:16AM 17   what we present to the Court.  We need to be precise as to

08:16AM 18   where this came from, which defendant, what it relates to, and

08:16AM 19   most importantly, the two other nexus issues that will arise

08:16AM 20   throughout this case are geographic:  Did the conduct touch

08:16AM 21   United States.

08:16AM 22        All of these exceptions to the Sovereign Immunity Act

08:16AM 23   require a geographic nexus.

08:16AM 24        The one which this Court has already identified, which

08:16AM 25   is also important, and this is part of the required precision

08:17AM 1    in demonstrating whether there is an exception or whether

08:17AM 2    attribution is appropriate, relates to time.

08:17AM 3        The plaintiffs have alleged the allegedly defective

08:17AM 4    drywall was sold in a particular time frame.

08:17AM 5        The commercial activity exception only applies, and

08:17AM 6    again, we do not believe that it does, to the extent they can

08:17AM 7    show commercial activity directly or via attribution to CNBM

08:17AM 8    Group relating to those sales in drywall.

08:17AM 9        What may have happened subsequently, their reactions to

08:17AM 10    this litigation, their alleged role in the conduct of this

08:17AM 11    litigation has nothing to do with a determination that there is

08:17AM 12    a commercial exception to the Sovereign Immunity Act that would

08:17AM 13    make them subject to litigation in this Court.

08:17AM 14        THE COURT:  Don't they take the position, though, that

08:17AM 15    that is not the issue.  The fact that they are able or were

08:17AM 16    able to control the litigation is evidence of the fact that

08:18AM 17    they had the capacity to control the companies in litigation.

08:18AM 18        If they had the capacity, then they say, they also had

08:18AM 19    the capacity to do day-to-day activity.  Whether or not they

08:18AM 20    did day-to-day activity is a question of fact, which they have

08:18AM 21    tried to discover, or feel they still need to discover.

08:18AM 22        MR. STENGEL:  Well, Your Honor, the problem with that

08:18AM 23    it's a form of factual extrapolation that the Fifth Circuit

08:18AM 24    has rejected in the *Stena* case.

08:18AM 25        In that case, there was a dispute where the plaintiffs

08:18AM 1   attempted to find a basis for application of commercial

08:18AM 2   exception.  And, one of the pieces of evidence that they seized

08:18AM 3   upon was after the matters which gave rise, it involved a

08:18AM 4   drilling rig related vessel, and there were settlement

08:18AM 5   discussions in the state of Texas, I believe.

08:18AM 6           And, the Court said quite clearly -- and this gets back

08:18AM 7   to OBB and the general interpretation of how the sovereign

08:19AM 8   immunity statute works -- that you have to show specific nexus

08:19AM 9   with the conduct which gives rise to the cause of action.

08:19AM 10          You can't extrapolate forward and backward, and say

08:19AM 11  well, in 2014, we think we have evidence of control, because

08:19AM 12  2014 conduct may be quite different.

08:19AM 13          In this case, you will have different configurations of

08:19AM 14  ownership, different arrangements of shareholding.

08:19AM 15          But what they need to show, which they have not shown

08:19AM 16  is that in the period 2005, to 2007, where the alleged sales of

08:19AM 17  defective drywall by Taishan took place, there was the level of

08:19AM 18  control necessary.

08:19AM 19          And from our perspective, as Your Honor is well aware,

08:19AM 20  it is our position we think borne out by the case law, that

08:19AM 21  that level of control, even as to that time period, can't be

08:19AM 22  general.  It would have to specifically relate to activities

08:20AM 23  relating to the sale of drywall.

08:20AM 24          That's what would need to be shown in this Court, on

08:20AM 25  this record, on this motion, for them to prevail on the

08:20AM 1    application of a commercial activity exception via an

08:20AM 2    attribution theory.

08:20AM 3            That, I submit Your Honor, is nowhere part of this

08:20AM 4    current record.

08:20AM 5            THE COURT:  You feel there is a difference of control

08:20AM 6    and there was some change.  They didn't have any control in the

08:20AM 7    early times, but they do have control now?

08:20AM 8            MR. STENGEL:  Well, Your Honor --

08:20AM 9            THE COURT:  There is some change that occurred?

08:20AM 10           MR. STENGEL:  I'm not at this point going to concede

08:20AM 11   that CNBM Group controlled the litigation.

08:20AM 12           CNBM Group clearly received information about drywall

08:20AM 13   sales in 2010, clearly in reaction to the fact the cases have

08:20AM 14   been filed.

08:20AM 15           That fact does not show control.  That fact, and again

08:20AM 16   Your Honor, the context for much of this, and why I think there

08:21AM 17   is some confusion in the record, is CNBM Group was a

08:21AM 18   shareholder at some level, removed from Taishan.

08:21AM 19           So they did have an ownership interest, and we will go

08:21AM 20   through the exact percentages, 14 to 15 percent.  It was not

08:21AM 21   anywhere near majority interest, but it was an asset that they

08:21AM 22   had a financial interest in.

08:21AM 23           So it was not surprising that when the litigation

08:21AM 24   erupted, they, as shareholders, would want some information as

08:21AM 25   to exactly what was happening.

08:21AM  1          That does not suggest control, nor, since it's in

08:21AM  2    reaction to the litigation itself, does it provide a basis to

08:21AM  3    say, whatever you may feel their actions in 2010, upon receipt

08:21AM  4    of data or in asking for data, whatever that means about their

08:21AM  5    engagement with the drywall situation, has no relevance, no

08:21AM  6    probative value as it relates to where they engaged in

08:22AM  7    Taishan's sale of drywall.

08:22AM  8          Now the plaintiffs' allegations are imprecise as to

08:22AM  9    exactly when sales efforts took place by Taishan.

08:22AM 10          But if you recall, Your Honor, the acquisition of

08:22AM 11    Taishan by BNBM didn't take place until sometime, I think, in

08:22AM 12    April of 2005, with a subsequent larger acquisition.  But there

08:22AM 13    is every reason to suspect on this record that sales or the

08:22AM 14    process of sales may have started before there was any

08:22AM 15    involvement by BNBM, CNBM, or any other related entity.

08:22AM 16          But the other element of this, and we have debated this

08:22AM 17    in other contexts in the contempt situation, Your Honor, we,

08:22AM 18    again, dispute the idea that CNBM Group controlled the

08:22AM 19    litigation.

08:22AM 20          We don't think the record of respecting decisions made

08:22AM 21    by Taishan's Board, and that is the testimony of those that

08:22AM 22    were involved, indicates control.

08:22AM 23          But again, we're now a decade removed in time from when

08:23AM 24    the events would have begun relating to what is relevant for

08:23AM 25    these purposes, which is the sale of drywall.

08:23AM 1        It's not even a slender read from a causal chain

08:23AM 2   perspective.

08:23AM 3        I should say that this nexus notion in the context of

08:23AM 4   the Sovereign Immunity Act is viewed as being a more stringent

08:23AM 5   requirement than proximate cause in the ordinary tort context.

08:23AM 6   So these are real limitations, and I think one of the things we

08:23AM 7   need to guard against is as we go through this issue is we

08:23AM 8   exist in a world where, to a certain extent, legal reality is

08:23AM 9   suspended.

08:23AM 10        As Your Honor knows, veil piercing is extraordinarily

08:23AM 11   rare.  It requires stringent levels of proof in some states,

08:23AM 12   and I believe this is true in Louisiana, it requires proof of a

08:23AM 13   clear and convincing nature.

08:24AM 14        Obviously, here we have not even facts.  We have

08:24AM 15   assertions, and we will, through hopefully not in too much

08:24AM 16   detail, because I'm respectful of Your Honor's time, but the

08:24AM 17   record simply does not support what the PSC wants to do in this

08:24AM 18   context.

08:24AM 19        But let me hopefully take care fairly quickly of the

08:24AM 20   qualification of Group within the Foreign Sovereign Immunities

21   Act.

08:24AM 22        The Act is now, as Your Honor knows, the only means by

08:24AM 23   which a foreign entity can be subject to jurisdiction.  It's a

08:24AM 24   matter of subject matter as well as personal jurisdiction.

08:24AM 25        As I noted earlier, and I think Your Honor understands,

08:24AM 1      it's immunity not only from liability, but litigation itself.

08:24AM 2          The Courts have reflected the fact that it is the sole

08:24AM 3      basis, and there is no basis to proceed unless an exception can

08:24AM 4      be proven.  We will talk about where the burdens lie.

08:24AM 5          This has been taken so seriously, that even though the

08:25AM 6      collateral order of doctrine might suggest otherwise, a denial

08:25AM 7      of an application for dismissal on sovereign immunity grounds

08:25AM 8      is, in all Circuits, uniformly viewed as immediately

08:25AM 9      appealable.

08:25AM 10         It is given that level of importance by the Circuits.

08:25AM 11         The evidence is quite clear, and this -- just so there

08:25AM 12     is no confusion -- this is Mr. Cao's Declaration from

08:25AM 13     June 10th, which is submitted with the papers in the first

08:25AM 14     instance.  He was subsequently deposed.  No issue as to

08:25AM 15     surprise or prejudice as to this, but Mr. Cao says, quite

08:25AM 16     clearly, it is the state I entered in.

08:25AM 17         Now the confusion, and there is some substantial

08:25AM 18     discussion of this in the PSC's papers, they spent a lot of

08:25AM 19     time pursuing the discussion of the organ leg, and that really

08:25AM 20     is different.

08:25AM 21         We have an "or" here, sometimes as we have discussed

08:25AM 22     there is an issue of disjunctives here, but the majority shares

08:26AM 23     of ownership interests is clearly owned by the People's

08:26AM 24     Republic of China.

08:26AM 25         I think this issue is relatively simple for CNBM Group.

08:26AM 1          Now, I suspect, although, I don't know and they don't

08:26AM 2    say this, the extensive discussions of PSC about organ is

08:26AM 3    probably directed more at the diplomatic objections filed on

08:26AM 4    behalf of SASAC, which would implicate the organ discussion.

08:26AM 5          Now, I'm not counsel for SASAC.  I may have strong

08:26AM 6    personal views having spent a fair amount of time with this

08:26AM 7    legislation that SASAC doesn't deserve or doesn't belong in

08:26AM 8    this litigation, either, but that is not my fight to have.

08:26AM 9          But if I were cleaning house in this case, they would

08:26AM 10   both be gone.

08:26AM 11         Again, we pursue ownership.  We don't need to get into

08:26AM 12   the complexities of organ, and the fact of ownership means that

08:26AM 13   some of the characterizations about the purpose of CNBM Group,

08:26AM 14   the fact that it is, by itself, a commercial enterprise is not

08:27AM 15   relevant to the determination.

08:27AM 16         The important part, here, is the second part.  We have

08:27AM 17   established this.

08:27AM 18         Now it's up to the plaintiffs to demonstrate that there

08:27AM 19   is an exception to immunity.  And in our view, they fail in

08:27AM 20   that respect.

08:27AM 21         Now, does the commercial activity exception apply?  I

08:27AM 22   want to be, again, as I noted, Your Honor, we need to be

08:27AM 23   precise here.  So I'm going to take this in two pieces, really.

08:27AM 24   I'm going to talk about CNBM Group itself.  Is there any

08:27AM 25   evidence of record that CNBM Group, absent some theory of

08:27AM 1    attribution, engaged in commercial activity?  I think, there,

08:27AM 2    the answer is resoundingly, no.

08:27AM 3         Now, here we get to the nexus, and this is where last

08:27AM 4    week's determination in the OBB case was relevant.

08:27AM 5         Just by way of background, OBB was a tragic case.  A

08:27AM 6    woman fell off a train platform in Austria, injured her legs

08:28AM 7    very severely, and ended up with double amputation.

08:28AM 8         She sued the Austrian Railroad in the United States.

08:28AM 9    And her reported basis for suit in the United States was that

08:28AM 10   an agent for OBB, again, the Austrian State Railway System,

08:28AM 11   Eurail pass had sold her a Eurail pass in the United States.

08:28AM 12   The plaintiffs in OBB took the position that that commercial

08:28AM 13   act as an agent of OBB was sufficient to bring them in the

08:28AM 14   commercial exception, because in their view, again, the

08:28AM 15   geographic nexus requirement of the Sovereign Immunity Act that

08:28AM 16   there has to be commercial activity by the defendant in the

08:28AM 17   United States.

08:28AM 18        There, they pursued essentially an attribution theory.

08:28AM 19   They lost in the District Court, lost in the Ninth Circuit, an

08:28AM 20   en banc panel of the Ninth Circuit reversed finding and they

08:28AM 21   read *Nelson* as suggesting if you found an element of a cause of

08:28AM 22   action, that would be sufficient, and the sale of the Eurail

08:28AM 23   pass by the agent was sufficient.

08:29AM 24        It went to the Supreme Court on the theories of the

08:29AM 25   scope of the gravamen of the complaint, the nexus, and the

08:29AM  1    attribution theory.

08:29AM  2          The Court said explicitly, and Justice Roberts for a

08:29AM  3    unanimous Court, we're not going to get to attribution because

08:29AM  4    you can't parce the elements of the claim.  So the gravamen,

08:29AM  5    the whole claim has to take place in the United States.

08:29AM  6          And in this case, interestingly, a sale of the ticket

08:29AM  7    in the United States was deemed as not sufficiently tied to the

08:29AM  8    core compliment to be a basis for commercial activity in the

08:29AM  9    part of OBB.

08:29AM 10          THE COURT:  Yeah.  The case is different, as you say.

08:29AM 11    The ticket wasn't defective.

08:29AM 12          If the ticket was defective, and the reason that she

08:29AM 13    fell was because she had a defective ticket, for some reason,

08:29AM 14    that then is a different situation.

08:29AM 15          In the *OBB* case, the ticket wasn't defective.  The

08:29AM 16    issue really was whether or not the person selling the ticket

08:30AM 17    was the agent of OBB, and they didn't get to that, but they

08:30AM 18    said, as you say.

08:30AM 19          MR. STENGEL:  Well, as Your Honor knows there was a

08:30AM 20    fair amount of confusion about the period which there were

08:30AM 21    representation issues, or other claims which I don't think had

08:30AM 22    been adequately preserved.  It's not a model of clarity, and

08:30AM 23    it's hard to imagine a defective ticket.

08:30AM 24          I think clearly, if that would have been the case, they

08:30AM 25    would probably have dealt with the attribution theory.

08:30AM 1        THE COURT:  Yes.  I don't see any evidence at all that
08:30AM 2   CNBM Group was personally involved in it.
08:30AM 3        Really, we're dealing in this case with attribution,
08:30AM 4   whether or not any of the entities, Taishan, TTP's activity in
08:30AM 5   the United States is attributable to CNBM Group.  That is where
08:30AM 6   I think really the issue is.
08:30AM 7        It's really CNBM Group is not just a shareholder.  I
08:30AM 8   mean, it's not Warren Buffett who owns a bunch of shares and a
08:31AM 9   lot of stock in a lot of companies, but the issue is really
08:31AM 10  whether or not that's enough.
08:31AM 11       And it's a difficult hurdle for the plaintiffs.
08:31AM 12       CNBM Group owned a minority interest in CNBM Company.
08:31AM 13  CNBM Company owns a minority interest in BNBM PLC.  BNBM PLC
08:31AM 14  owns a majority interest in Taishan, so it's very, very
08:31AM 15  layered.
08:31AM 16       MR. STENGEL:  Well, Your Honor, it's that sort of
08:31AM 17  tinkers to ever as to chance sequence, which we don't think the
08:31AM 18  plaintiffs can surmount.
08:31AM 19       I would take some issue with the Court's suggestion
08:31AM 20  that there is a difference between Warren Buffett and CNBM
08:31AM 21  Group.
08:31AM 22       Obviously, there is a difference in terms of who they
08:31AM 23  are and what they do.
08:31AM 24       But in terms of legal significance, as Your Honor is no
08:31AM 25  doubt aware, the cases are replete with statements about

08:32AM 1   activities.  And this gets back to the exceptional nature of

08:32AM 2   alter ego findings, generally.  The fact of mere ownership is

08:32AM 3   not enough.  The fact of appointing, even the majority of a

08:32AM 4   board, is not enough.

5        THE COURT:  Yes, I agree.

08:32AM 6        MR. STENGEL:  Appointing executives, and I should say

08:32AM 7   to be mindful of my own admonition at the start of this, I'm

08:32AM 8   now getting imprecise in ways that aren't borne out by the

9   record.

08:32AM 10        Many of the things the PSC says that Group has done,

11   they are not in fact done.

08:32AM 12        But all of that makes it increasingly remote that you

08:32AM 13   could ever find a basis with them having the burden to impose

08:32AM 14   this on CNBM Group.

08:32AM 15        As we have already discussed the only facts that relate

08:32AM 16   directly to CNBM Group are related to litigation.

08:32AM 17        I invite you to look at their opposition papers.  Those

08:32AM 18   are the only explicit factual acts by CNBM Group recognized.

08:32AM 19        This Court has already recognized that fact.  So, and I

08:32AM 20   said earlier, we can handle this really quickly.

08:33AM 21        Obviously, no direct conduct by CNBM Group relating to

08:33AM 22   the tort exception -- they didn't do anything in the United

08:33AM 23   States at any point in time.  They didn't do anything that

08:33AM 24   relates to the injury allegedly done to the homeowners here.

08:33AM 25        So that gets us to what Your Honor has described as the

08:33AM 1    key issue, which is attribution.  And here, we need to be

08:33AM 2    mindful that we are operating, not only where there is a burden

08:33AM 3    on the part of the plaintiffs, but there is a Supreme Court

08:33AM 4    case which creates a presumption of separate status.

08:33AM 5         And while the PSC engaged in substantial efforts to try

08:33AM 6    and suggest -- I will just call it *Bancec* -- I won't try to do

08:33AM 7    the Spanish pronunciation, but this is a clear case.  It's been

08:33AM 8    honored repeatedly.  It has been honored by the Fifth Circuit

08:33AM 9    in the *Arriba* case.

08:33AM 10        The application of this doctrine, we believe, even if

08:33AM 11   there were greater factual issues than there are, that would be

08:34AM 12   fatal to the PSC's claims for attribution.

       13        And *Dole v Patrickson,* which is the U.S. Supreme Court

08:34AM 14   confirming the ownership leg, made it quite clear, and this is

08:34AM 15   worth pausing on:  Ignoring corporate separateness is the rare

08:34AM 16   exception, applied in the case of fraud -- not present here --

08:34AM 17   or certain other exceptional other circumstances.  Again, not

08:34AM 18   present here.

08:34AM 19        So we haven't gotten, frankly, close to what you would

08:34AM 20   need or what the PSC would need to show to be successful in

08:34AM 21   finding attribution.

08:34AM 22        Now, the pleadings here, admittedly, are fairly old,

08:34AM 23   and they are very summary as they relate to Group.

08:34AM 24        But the cases suggest that what you need to show -- and

08:34AM 25   here you would have under *Iqbal* and *Twombly*, I suppose, you

08:34AM  1    would need to do it every link of that chain.  You would have

08:34AM  2    to have a specific allegation of how you could get from Taishan

08:34AM  3    through the BNBM entities, to CNBM companies, to CNBM Group.

08:35AM  4         And that, just as a matter of pleading, is not present

08:35AM  5    in this record because all you have is summary assertions that

08:35AM  6    CNBM Group is responsible for the sales of defective drywall in

08:35AM  7    the United States.

08:35AM  8         Now, there is no preclusive finding of alter-ego agency

08:35AM  9    or attribution.  The PSC places substantial reliance on this

08:35AM 10    Court and the Fifth Circuit's determinations on the personal

08:35AM 11    jurisdiction challenges of Taishan.

08:35AM 12         CNBM Group and CNBM Group structure and practice was

08:35AM 13    before no Court at that point in time.  And it is obvious, I

08:35AM 14    think, upon a review of the record to date, that TTP and

08:35AM 15    Taishan, and their interrelationships bear no relevance to how

08:35AM 16    Group is -- CNBM Group is related to CNBM Company, and how

08:35AM 17    those entities might downstream be related to Taishan.

08:36AM 18         So we're not in a world where we have issue or claim

08:36AM 19    preclusion on agency or attribution.  We're riding on a clean

08:36AM 20    slate.

08:36AM 21         The PSC, I believe, has largely abandoned this early in

08:36AM 22    the case.  They took the position, the findings of fact and

08:36AM 23    conclusions of law that this Court entered and supported class

08:36AM 24    certification, determined this issue, which was a matter of

08:36AM 25    fairly complete circularity.  We hadn't been there; therefore,

08:36AM 1   the admissions had been put in place.  Therefore, we were

08:36AM 2   bound.

08:36AM 3        The Circuit is quite clear that deemed admissions can't

08:36AM 4   be applied as the PSC would urge against non parties only as

08:36AM 5   against Taishan.  And as I said, the only prior findings that

08:36AM 6   relate to TTP and Taishan, have no relevance to us.

08:36AM 7        Your Honor already pointed to these statistics.

08:36AM 8        As you noted, and this, as I said, changes slightly

08:36AM 9   over time with CNBM Groups' indirect interest diminishing.

08:37AM 10       We have an organizational chart that we can walk

08:37AM 11  through, but the fact that gets obscured is that these are

08:37AM 12  substantial corporate entities.

08:37AM 13       These aren't, as in one of the Louisiana common

08:37AM 14  enterprise cases, two guys running insurance companies out of a

08:37AM 15  shoebox in a garage.

08:37AM 16       I mean, these are companies with reported financials,

08:37AM 17  they have auditors, they comply with the law.  They are on the

08:37AM 18  Shenzhen and Hong Kong Exchange, and you would have to -- there

08:37AM 19  is no record of any illegality or abuse of corporate form at

08:37AM 20  any level.

08:37AM 21       That is what you would need.  That is what the PSC

08:37AM 22  would need to show here, substantial commercial enterprises.

08:37AM 23       We start getting to issues which arise in some of the

08:37AM 24  cases, but it's important to be accurate.  Beijing, where CNBM

08:38AM 25  Group is located, is not in Shandong, where Taishan is located.

08:38AM 1    Nothing that can be said about that is going to change that

08:38AM 2    fact.

08:38AM 3         They don't, in fact, share logos or names.  Taishan is

      4    distinctive.  I don't think there is any record or evidence nor

08:38AM 5    could there be that Taishan ever held itself out to a customer

08:38AM 6    as part of CNBM.  It simply wasn't relevant to people dealing

08:38AM 7    with them.

08:38AM 8         I talked about the organization chart, Your Honor.

08:38AM 9    This, again, I think is useful context.  This is from 2006.

08:38AM 10   The Parent here is CNBM Group.

08:38AM 11        You can see the complexity of the structure below it,

08:38AM 12   but obviously the company, and this is from a CNBM Company

08:38AM 13   annual report, is publically owned.

08:38AM 14        It's created on a register on a share exchange.  It

08:38AM 15   has, again, auditors, accountants, lawyers file annual reports,

08:38AM 16   which I commend to the Court's review.

08:38AM 17        For one thing, one of the other distortions here, is a

08:39AM 18   suggestion that CNBM Group in 2005, or 2006, would have been

08:39AM 19   preoccupied with the sales of drywall in the United States by

08:39AM 20   Taishan.

08:39AM 21        These are the various businesses that Company was

08:39AM 22   involved in, that Group was indirectly involved in as an

08:39AM 23   investor.  And cement, like with building materials,

08:39AM 24   fiberglass, composites, and services roles were all part of

08:39AM 25   this very large enterprise.

08:39AM 1          So one of the reasons it's unrealistic to expect that

08:39AM 2   Group would have involved itself in the issue of whether CNBM

08:39AM 3   was going to sell drywall -- I'm sorry, Taishan was going to

08:39AM 4   sell drywall in the United States, is the fact that that takes

08:39AM 5   you several levels down the organization and several levels

08:39AM 6   beyond what would be relevant.

08:39AM 7          THE COURT:  Is it your position that they have to be

08:39AM 8   involved in day-to-day activities?

08:39AM 9          MR. STENGEL:  Yes, Your Honor.  That is the case.  You

08:40AM 10  are absolutely clear that the sovereign entity needs to be

08:40AM 11  day-to-day, and day-to-day is the shorthand for domination, for

08:40AM 12  alter ego, the other eye, that they are indistinguishable.

08:40AM 13         We think these presentations help demonstrate why there

08:40AM 14  is no way the plaintiffs can overcome that hurdle.  And we can

08:40AM 15  go through the requirements.

08:40AM 16         And again, *Bancec* says it's the plaintiff's burden.

08:40AM 17         I didn't mention *Arriba* had said *Bancec* applies.

18         One of the issues the PSC raised was they said, well,

08:40AM 19  *Bancec* really doesn't apply here.  *Bancec* related to whether

08:40AM 20  you could attribute conduct of a Cuban entity to the government

08:40AM 21  of Cuba, and then back to another financial institution.

08:40AM 22         But in the Fifth Circuit, and frankly, every Circuit

08:40AM 23  that has considered this, the *Bancec* presumption has been

08:40AM 24  applied to state on enterprises as well as the state itself.

08:40AM 25         And the confusion, I think, this was more raised by the

08:41AM 1    AG than the PSC.  They said, well you tried to apply Chinese
08:41AM 2    law.  That's unfortunately a confusion which arose out of our
08:41AM 3    making one motion which attacked both personal jurisdiction and
08:41AM 4    sovereign immunity.
08:41AM 5         Yes, we think for purposes of personal jurisdiction
08:41AM 6    analysis that you would look at the forum state for its
08:41AM 7    corporate law to look at corporate separateness which would
08:41AM 8    implicate Chinese law.
08:41AM 9         We submitted an affidavit by Professor Clark on that
08:41AM 10   point, but we accept the idea that *Bancec* makes this
08:41AM 11   essentially a matter of federal common law, which is informed
08:41AM 12   by general trends towards corporate separateness.
08:41AM 13        As you said, Your Honor, in this circuit and elsewhere,
08:41AM 14   the plaintiff must prove defendant exercised extensive control
08:41AM 15   over the subsidiary's day-to-day management.  That means you
08:41AM 16   have got to follow the chain down to Taishan.
08:41AM 17        You have to start it through and get all the way down
08:41AM 18   to Taishan, and say that group and its executives were
08:41AM 19   dominating Taishan's activities.
08:42AM 20        That is what the plaintiffs need to show to overcome
08:42AM 21   the presumption, and there is nothing in the record that does
08:42AM 22   that.
08:42AM 23        THE COURT:  They take the position that there is
08:42AM 24   something with the advertising that the Group advertised
08:42AM 25   themselves as a group, as a conglomerate, as a wholly-organized

08:42AM  1    group.  Is that sufficient?

08:42AM  2         MR. STENGEL:  No, Your Honor, it isn't.  It arises in a

08:42AM  3    different context.

08:42AM  4         I believe they base most of their argument on the

08:42AM  5    initial public offering of Company in 2006.

08:42AM  6         And as a matter of accounting and legal requirements

08:42AM  7    over certain levels of shareholding financial statements, as

08:42AM  8    Your Honor knows are consolidated, so the entity that was

08:42AM  9    offering shares to the public in 2006, by financial reality,

08:42AM 10    and not by matter of control or dominance.

08:42AM 11         But if you were going to buy a share on the Hong Kong

08:43AM 12    Exchange of CNBM Company, remember we're talking about Company

08:43AM 13    here, and not Group.

        14         THE COURT:  Right.

08:43AM 15         MR. STENGEL:  It would be relevant to you that one of

08:43AM 16    the assets that was ultimately contained within the CNBM

08:43AM 17    Company balance sheets and income statements, would be Taishan.

08:43AM 18         But that does no more than suggest that they were doing

08:43AM 19    what you would expect them to do as essentially a holding

08:43AM 20    company with a variety of operating companies underneath them.

08:43AM 21         That has nothing to do -- there is no indication, no

08:43AM 22    evidence that any purchaser of Taishan drywall saw the

08:43AM 23    disclosure statement for the 2006 initial public offering, and

08:43AM 24    said, "Ah hah, I wasn't actually interested in dealing with

08:43AM 25    Taishan, but now that I understand that they are part of CNBM

08:43AM 1    Company or soon to be, I think I will make the purchase."

08:43AM 2           There is no such relationship there and nothing about,

08:43AM 3    again, as we raised in our papers, there is an effort on the

08:44AM 4    part of the plaintiffs to take accounting realities, labels

08:44AM 5    that apply as a matter of Chinese company law or accounting

08:44AM 6    standards imposed by the exchanges and suggest that terms like

08:44AM 7    "ultimate shareholder" and "controlling shareholder," which

08:44AM 8    reflect no more than the ownership interest as shareholders,

08:44AM 9    have some relevance for this issue of control.

08:44AM 10          I think the evidence you need to see, and *Hester* is a

08:44AM 11   good case out of the Fifth Circuit.  They cite the *Kalamazoo*

08:44AM 12   *Spices* case, and in those cases the dominance is absolutely

08:44AM 13   clear.

08:44AM 14          As a matter of fact, you know, all of the case law

08:44AM 15   everyone cited, I think the only case where sovereign immunity

08:44AM 16   was ignored on an attribution theory was cited, not by the PSC,

08:44AM 17   but by the AG, which is the *S & Davis International versus*

        18   *Yemen*.

08:44AM 19          And in that case, it's a breach of contract case, and

08:44AM 20   the order to breach the contract came straight from the

08:45AM 21   government of Yemen.  So there was no dispute as to the nexus

08:45AM 22   of the behavior of the sovereign in that case.

08:45AM 23          And again, I mean, going back to the recognition out of

08:45AM 24   the *Dole v Patrickson* case, that alter ego findings, veil

08:45AM 25   piercing, whatever theory of attribution you follow, are

08:45AM 1   extraordinarily rare, and there are reasons for that.

08:45AM 2           This is a very substantial hurdle for plaintiffs to get

08:45AM 3   over.  And again, the atmospherics that come from what the

08:45AM 4   accounting rules require, what was done by way of promoting the

08:45AM 5   initial public offering of, again, Company, not Group in 2006,

08:45AM 6   don't go to the question of day-to-day involvement and control,

08:45AM 7   which is really the issue this Court has to resolve for these

08:45AM 8   purposes.

08:45AM 9           Now, we have tried to summarize what comes from a

08:45AM 10  number of cases.  As Your Honor knows, there is a substantial

08:45AM 11  amount of case law relating to the Foreign Sovereign Immunity

08:46AM 12  Act.  We have catalogued the things that have been found not to

08:46AM 13  be adequate as a matter of demonstration of an alter ego

08:46AM 14  relationship or control.

08:46AM 15          And admittedly, these don't occur all in one case at

08:46AM 16  any point in time, and you could make the argument, and I'm

08:46AM 17  sure the PSC will, that maybe accumulated, they would, though,

08:46AM 18  they don't accumulate here because they are not present.  And I

08:46AM 19  think what these all show is the necessary incidents of being

08:46AM 20  an investor or shareholder.

08:46AM 21          This is, I don't believe any of the cases involve --

08:46AM 22  perhaps one, remote shareholders, and they are all the direct

08:46AM 23  owner of the entity.

08:46AM 24          But the things that have been rejected, 100 percent

08:46AM 25  ownership, that won't do it.

08:46AM 1        Appointment of control of board of directors, that

2    doesn't do it.

08:46AM 3        In fact you have overlapping directors or officers that

4    exercise a significant amount of supervisory control.

08:47AM 5        You monitor your subsidiary's performance.  That seems

6    like a prudent thing to do.

08:47AM 7        Articulation of policies and procedures, again, what

08:47AM 8    you would expect; supervising budgetary and capital finance

08:47AM 9    decisions.

08:47AM 10       Your Honor, these are exactly the things that General

08:47AM 11   Electric probably does with GE Jet Engines.

08:47AM 12       To my knowledge that veil has never been pierced.  No

08:47AM 13   one has suggested that is inappropriate.  These are the things

08:47AM 14   that parents do in a corporate environment.

08:47AM 15       The record here, in terms of direct evidence, is clear

08:47AM 16   and unchallenged that what the companies did was to exercise

08:47AM 17   their rights as shareholders.  There is no dispute that they

08:47AM 18   did that.

08:47AM 19       The Group was a shareholder, and in the companies where

08:47AM 20   it held shares, it operated appropriately, and it was out of

08:47AM 21   the same extent, only ordinary shareholder rights.

08:47AM 22       We also get into some of the interpretations of

08:47AM 23   documents.

08:47AM 24       This is what the PSC said this document showed, and it

08:48AM 25   was sort of a policy document suggesting they should do this as

08:48AM 1    part of an overall risk management plan.

08:48AM 2         It doesn't stand for the proposition of day-to-day

3    control or domination.

08:48AM 4         CNBM Group appoints high ranking officers and

08:48AM 5    executives, as its subsidiaries.

08:48AM 6         We can go through these.

08:48AM 7         In response to what the PSC has objected to, I have

08:48AM 8    gone out and actually looked at their exhibits.  What it shows

9    is what you would expect.

08:48AM 10        The board of directors are selected by the shareholders

08:48AM 11   in each case.  Shareholders may have a right to nominate, but

08:48AM 12   they don't get to appoint anybody.

08:48AM 13        Again, we have talked about this in the context of

08:48AM 14   initial public offering.  We take credit for the volume of

15   gypsum board.

08:48AM 16        And here, this is a 2014 report on corporate

08:48AM 17   responsibility, they do describe the various sectors they

08:48AM 18   operate in.  But in each case, as you will see, they clearly

08:48AM 19   identify the subsidiary that is involved.

08:49AM 20        There is no suggestion that this is CNBM Group engaged

08:49AM 21   in production of lightweight building materials.

08:49AM 22        To make it more clear, each of the subsidiaries is

08:49AM 23   disputed.

08:49AM 24        As I said, controlling shareholder or actual

08:49AM 25   controller, those are accounting terms from the Shenzhen Stock

08:49AM 1    Exchange, and again, a matter of corporate law and accounting

08:49AM 2    rules in China in Hong Kong.

08:49AM 3          There has been testimony about this:  Uncontroverted

08:49AM 4    controlling shareholder regarding the shares.

08:49AM 5          Interesting, it sounds good, I guess, as a sound bite,

08:49AM 6    but it is not relevant to the determination of day-to-day

08:49AM 7    dominance of the company.

08:49AM 8          Ultimate controller, same way.  Shareholders' rights,

08:49AM 9    we don't get to this.

08:49AM 10         And first investors, which came out of the Eastern

08:50AM 11   District of Louisiana, then went to the Fifth Circuit is

08:50AM 12   interesting in this regard, because one of the things that

08:50AM 13   *Bancec* requires is not only that you overcome the separateness

08:50AM 14   issue, but there has to be some abuse of the form or fraud, as

08:50AM 15   confirmed by *Patrickson*.

08:50AM 16         That, frankly, is completely absent here.  That is a

08:50AM 17   telling omission, because it sort of makes you sit back and

08:50AM 18   say, well, why are we even having this battle right now?  Why

08:50AM 19   is this relevant?

08:50AM 20         There is no allegation of prejudice or injury and there

08:50AM 21   is a good reason for that.  Each of the subsidiaries were

08:50AM 22   adequately capitalized.  There has been no proof of anyone

08:50AM 23   taking debts from Taishan.

08:50AM 24         As a matter of fact, the evidence here is to the

08:50AM 25   contrary.  What you would see in the ordinary veil-piercing

08:50AM 1    case is the target defendants' assets being looted by

08:50AM 2    affiliated corporations, assets being taken out of the reach of

08:51AM 3    plaintiffs.

08:51AM 4          Here, it's anything but true.  And I borrowed this from

08:51AM 5    BNBM's submission under Rule 12, but this is the net assets of

08:51AM 6    Taishan.

08:51AM 7          This, by itself, demonstrates that there is no

08:51AM 8    prejudice flowing from any of the interrelationships among the

08:51AM 9    companies.

08:51AM 10         The PSC makes a great deal about intercompany lending,

08:51AM 11   that the lending tends to go downstream.  It's documented.  It

08:51AM 12   appears in the annual reports and financial disclosures, which

08:51AM 13   is exactly what companies are supposed to do under that

08:51AM 14   circumstance.

08:51AM 15         So again, no prejudice, no fraud.  Taishan has

08:51AM 16   sufficient profits and assets, which leads you to the broader

08:51AM 17   question of why we are here.

08:51AM 18         I mean, I remember on June 9th, Mr. Kenny from Alston

08:51AM 19   stood in front of Your Honor, and said, this case is about what

08:51AM 20   Taishan owes and who it owes to, and that is what I thought the

08:51AM 21   case was about.

08:51AM 22         Here, we are months later and ten of millions dollars

08:51AM 23   spent on lawyers later.  Not only are we not any closer to an

08:52AM 24   answer to that question, but we spent substantial resources

08:52AM 25   litigating the issue of what CNBM Group did, and at what point

08:52AM 1    in time, and we still end up with the record which doesn't

08:52AM 2    advance the ball.

08:52AM 3         Plaintiffs say at the end of their opposition, they

08:52AM 4    need more discovery.  And Your Honor, we have had disputes

08:52AM 5    about discovery.  We will freely admit that.

08:52AM 6         But as the cases show, the aperture for discovery on

08:52AM 7    sovereign immunity is very narrow.  It is unusual and typically

08:52AM 8    what Courts have allowed is only discovery to verify specific

08:52AM 9    allegations.

08:52AM 10        We don't have specific allegations here, so we have

08:52AM 11   gone a fair degree, and it would seem self-evident that if the

08:52AM 12   plaintiffs can put together 115-page opposition with an 85-page

08:52AM 13   factual recital claiming what they have to date, obliterates

08:52AM 14   our claim of sovereign immunity, and it's hard to imagine what

08:53AM 15   else they need.

08:53AM 16        But further, the cases are clear, when a plaintiff

08:53AM 17   seeks discovery on the subject, they have to be very specific

08:53AM 18   as to what exactly they need.

08:53AM 19        We're not writing from a clean slate, here.  We have

08:53AM 20   had substantial discoveries, substantial depositions have been

08:53AM 21   taken.  We made available our senior executives, 30(b)(6)

08:53AM 22   witnesses for Group, all that has happened.

08:53AM 23        If you look at the opposition, they are looking for

08:53AM 24   blunder busts continuing broad discovery.  That simply is not

08:53AM 25   allowable at this point in time.

08:53AM 1          Now, I will go through this quickly because Your Honor

08:53AM 2    is probably painfully aware that we have had these disputes.

08:53AM 3          But again, as I started with, the Court should

08:53AM 4    determine this.

08:53AM 5          Now, what I can do, and I don't want to overstay my

08:53AM 6    welcome, which I may have done already, but the plaintiffs took

08:54AM 7    issue with our filing some supplemental materials.  And I

08:54AM 8    understand that, but I think it's fair to just bring to the

08:54AM 9    Court's attention the fact that what they object to -- first of

08:54AM 10   all, they objected to our submission of affidavit about the

08:54AM 11   lack of overlap in executives between Taishan and CNBM Group.

08:54AM 12         We did that with supplemental submission from Mr. Cao,

08:54AM 13   but we don't need to do that.  Exhibit 23.1, which is a PSC

08:54AM 14   exhibit, and has a chart of all of the executives and is

08:54AM 15   consistent with what Mr. Cao said.  It shows that the only

08:54AM 16   arguable overlap was Mr. Cao's service on the Supervisory

08:54AM 17   Committee of Taishan in 2005.

08:54AM 18         Again, as the annual reports will illuminate, the

08:54AM 19   Supervisory Committee -- I think Your Honor has probably heard

08:55AM 20   something about this -- is a creature of Chinese law and very

08:55AM 21   limited in its purpose.

08:55AM 22         There was also an issue about appointment of directors

08:55AM 23   and officers.  I have touched on that briefly.

08:55AM 24         To that extent, I would cite, Your Honor, to the PSC's

08:55AM 25   FISA Exhibit 2.  And I would commend that document, which is a

08:55AM 1    CNBM Company annual report, to your reading just because I

08:55AM 2    think it underscores much of what I have said so far about the

08:55AM 3    fact that these are real and substantial companies.

08:55AM 4          They have known auditors.

08:55AM 5          They have known law firms, and it belies the notion

08:55AM 6    that this is some kind of fly-by-night intermediary

08:55AM 7    organization.

08:55AM 8          Again, this is Company, and not Group.  But at page 29

08:55AM 9    of Exhibit 2, there is a clear statement about corporate

08:55AM 10   governance, their adherence to the corporate governance

08:55AM 11   regulations of China, and the fact that the board is elected by

08:56AM 12   the shareholders of the company.

08:56AM 13         Continuing on to page 30, there is a reference to the

08:56AM 14   compliance officer retained by the company.

08:56AM 15         On this one, I will rely on a sample rather that a

08:56AM 16   census, Your Honor, so I won't go on excessively.

08:56AM 17         But turning to FISA Exhibit 7 of the PSC, again, an

08:56AM 18   annual report.  This time in 2006, at page 37, there is the

08:56AM 19   operation of board which underscores how exactly the board is

08:56AM 20   elected.

08:56AM 21         At 39, there is a reference that nomination of

08:56AM 22   directors, which again, makes it clear, no appointment by

08:56AM 23   Group.  They are nominated by and elected by the shareholders.

08:56AM 24         Finally, FSIA Exhibit 9 of the PSC, and again, at pages

08:56AM 25   37, and 39, there is reference to the corporate governance

08:56AM 1   issues that we have discussed here.

08:57AM 2       Again, all of these go to underscore the fact that

08:57AM 3   these are real and substantial companies, and again, talking

08:57AM 4   about CNBM Company document, which is one level removed from my

08:57AM 5   client group.

08:57AM 6       If you look at many exhibits, it is tagged on this one,

08:57AM 7   but it seems to be FSIA Exhibit 32 of the PSC, for purposes of

08:57AM 8   this hearing, that is a Taishan exhibit.

08:57AM 9       There are actually articles of association, which

08:57AM 10   again, outlines how directors and officers of Taishan, which

08:57AM 11   are selected, which belies the idea that there is any

08:57AM 12   involvement of CNBM Group to that.

08:57AM 13       Similarly, FSIA Exhibit 121 of the PSC, and 122 are

08:57AM 14   reflective of that same fact.

08:57AM 15       So, Your Honor, I will reserve a brief -- what I hope

08:57AM 16   to be a very brief period of time to respond, when

08:57AM 17   Messrs. Levin and Herman are finished.

08:58AM 18       But I thank Your Honor for your time.

08:58AM 19       Again, we think the record is abundantly clear that

08:58AM 20   CNBM Group is a sovereign entity.  No exception to its immunity

08:58AM 21   applies.  It should exit the case now, rather than later, and

08:58AM 22   that there is no basis for attribution of any conduct with the

08:58AM 23   requisite nexus to the sale or export of allegedly defective

08:58AM 24   drywall that would allow an attribution theory to undercut its

08:58AM 25   sovereignty.

08:58AM 1          With that, Your Honor, thank you very much.

08:58AM 2          THE COURT:  Okay.  Thank you very much.  I appreciate

08:58AM 3    your argument.

08:58AM 4          Do you have a response?

08:58AM 5          MR. LEVIN:  Good morning, Your Honor.

6          THE COURT:  Good morning.  Wait until we distribute

7    these materials.

08:59AM 8          MR. LEVIN:  Of all that was said, there is absolutely

08:59AM 9    one thing I agree with:  CNBMG is no shoebox enterprise.

08:59AM 10          Let's see what we're dealing with here.

08:59AM 11          This Document 2014, Social Responsibility Report,

09:00AM 12    appears on CNBMG's website.  That report will show us who we're

09:00AM 13    dealing with, and what we're dealing with.

09:00AM 14          Next.  This is CNBMG's own words:  "As the leader in

09:00AM 15    China's building materials industry, CNBM is the largest

09:00AM 16    comprehensive building materials industry group in China."

09:00AM 17          That does not sound like Warren Buffett.  That does not

09:00AM 18    sound like an investor.  That sounds like a business

09:00AM 19    enterprise.

09:00AM 20          Next.  It has been ranked first among the top 500

09:00AM 21    enterprises in the building materials industry for many years,

09:00AM 22    41st among the top 500 enterprises in China, and 270 among the

09:01AM 23    Fortune Global 500.

09:01AM 24          Next.  Up to the end of 2014, the total assets of the

09:01AM 25    group amounted to RMB 406.9 billion.  And I'm told if you

09:01AM 1  divide by 16, you get American dollars.  And the total number

09:01AM 2  of employees reached 176,854.  So 176,000 employees involved in

09:01AM 3  building materials.  That does not sound like an investor.

09:01AM 4       In 2014, CNBM achieved revenue of RMB 250.4 with total

09:01AM 5  profit of RMB 13.0 billion, taxes paid amounted to RMB 14.6.

09:01AM 6       Next.  With the objective to maximize corporate value

09:02AM 7  and improve core competence, CNBM has -- when they say CNBM

09:02AM 8  here, they are talking about CNBM Group, not CNBM PLC.

09:02AM 9       CNBM has developed into a comprehensive building

09:02AM 10 materials industry group with integration of -- oh there it is,

09:02AM 11 manufacturing, scientific research and development, set of

09:02AM 12 equipment, logistics, and trading through asset restructuring,

09:02AM 13 business integration, and management improvement.

09:02AM 14      Next.  Headquartered in Beijing, CNBM has over 1100

09:02AM 15 member companies, dominates -- that is their word "dominates"

09:02AM 16 -- six listed companies, including two oversees listed

09:02AM 17 companies.

09:02AM 18      Member companies of CNBM are located in 30 Chinese

09:02AM 19 provinces, municipalities, and autonomous regions, whose

09:03AM 20 businesses cover over 120 countries.

09:03AM 21      We're not one of them, Your Honor, the United States,

09:03AM 22 and regions in the world.

09:03AM 23      And we found that out, and we found out a lot because

09:03AM 24 of the contempt proceedings in determining where their

09:03AM 25 affiliates worked and their subsidiaries worked in this

09:03AM 1    country.

09:03AM 2         We found out that this investment company is taking

09:03AM 3    timber out of the northwest, is suing our American corporations

09:03AM 4    in Texas, and is providing solar panels for Wal-Mart.

09:03AM 5         Next.  It's the largest gypsum board producer.

09:03AM 6         And, the next map.  This is not my map, this is their

09:03AM 7    map:  USA, that's us, and that's why we're here, because they

09:04AM 8    took advantage of a situation in the United States where we had

09:04AM 9    a hurricane, and we had a shortage of drywall to bring their

09:04AM 10   product to the United States.

09:04AM 11        What did CNBM Group do?  They promoted the distribution

09:04AM 12   of the property.  They facilitated the distribution of the

09:04AM 13   property.  They weren't the shoemaker that was nailing shoes.

09:04AM 14   They were back there selling the shoes and making sure that

09:04AM 15   they could sell shoes.

09:04AM 16        What did they call themselves?  The Big Group

09:04AM 17   Corporation.  That was true.

09:04AM 18        Now, we have a Foreign Sovereign Immunity Act to

09:04AM 19   protect foreign sovereigns, not to protect their underlings

09:04AM 20   that do commercial business in the United States.

09:04AM 21        We've always had sovereign immunity.  Prior to the Act,

09:05AM 22   the State Department was involved.  They had a Tate letter, a

09:05AM 23   State Department Official, Jack Tate would file and serve and

09:05AM 24   the litigation would stop because the United States had an

09:05AM 25   interest in not doing it.

09:05AM 1        Now, they have since codified that, and it's the role

09:05AM 2   of the Courts, more than the State Department, to protect the

09:05AM 3   delicate situation between foreign corporations that are said

09:05AM 4   to be owned by foreign states doing business in the United

09:05AM 5   States.

09:05AM 6        Well, this CNBM Group is owned by SASAC, an

09:05AM 7   intermediate group that we have served just recently in a

09:06AM 8   lawsuit.  It is not -- strike that.

09:06AM 9        It is not owned by the People's Republic of China.

09:06AM 10        The *Dole* case that was cited is very, very important,

09:06AM 11   Your Honor.

09:06AM 12        If the PRC does not own the Company, and SASAC owns the

09:06AM 13   Company, then under the *Dole* case there is no sovereign

09:06AM 14   immunity, and the defendant cannot escape that.  They can't

09:06AM 15   escape it by their own words, of their own subsidiaries.

09:06AM 16        That is about the most important thing that I could say

09:06AM 17   today:  We can never have to reach commercial activities.

09:06AM 18        We will, if we have to.

09:06AM 19        We don't have to reach alter ego.

09:07AM 20        We will, but we don't have to.

09:07AM 21        They are not entitled to sovereign immunity.

09:07AM 22        Next.  As you can see here on the recent service,

09:07AM 23   state-owned assets supervision and administration counsel of

09:07AM 24   the state determined that it's an agency, not an organ, but an

09:07AM 25   agency.

09:07AM 1          Next.  Now this is very interesting, because this is

09:07AM 2   decisions of this Court, the *Germano* findings.  SASAC owns

09:07AM 3   100 percent of the CNBM Group.  Class certification findings:

09:07AM 4   SASAC owns 100 percent of the CNBM Group.

09:07AM 5          Well, Mr. Stengel says, "We weren't here.  We were in

09:07AM 6   China at that time.  We couldn't defend ourselves and somehow

09:08AM 7   correct that, if it's wrong."

09:08AM 8          Shame on CNBMG.  They could have been here.  They chose

09:08AM 9   not to be here.  They chose to sit back behind the Great Wall

09:08AM 10  of China and hide from this Court.

09:08AM 11         They chose to stick Taishan up front as a stalking

09:08AM 12  horse to take the salvos that we would direct in their

09:08AM 13  direction, and we would be unable to get their documents, speak

09:08AM 14  to their officers, take the depositions, do anything -- and

09:08AM 15  they were content to be where they are.

09:08AM 16         Well, actions have consequences.  And if it wasn't for

09:09AM 17  the contempt citation, Your Honor, they would still be in

09:09AM 18  China.  But because of the contempt citation, and because of

09:09AM 19  the fact that Your Honor found that the subsidiaries and

09:09AM 20  affiliates had a relationship as a result of your contempt

09:09AM 21  citation, and we began to take discovery and find they came

09:09AM 22  here to protect themselves late.

09:09AM 23         Well, they have a default judgment.  They chose the

09:09AM 24  default judgment and they are stuck with what they caused them

09:09AM 25  themselves.

09:09AM 1          But we don't have to look just at the default judgment,

09:09AM 2     Your Honor.  We don't have to look at what Your Honor has said

09:09AM 3     and found in decisions.

09:09AM 4          Next.  Oh, Beijing New Building Materials Public

09:09AM 5     Limited Company, BNBM PLC, one of the alphabet soup of CNBM,

6     BNBM and Taishan.

09:10AM 7          It says 100 percent ownership -- just what I'm saying.

09:10AM 8     Not what Mr. Cao says, who we will depose hopefully because you

09:10AM 9     may have given us -- I will say "may," Your Honor -- 45 days to

09:10AM 10    work on that yesterday.

09:10AM 11         This is their own documents.  This document is filed in

09:10AM 12    a Chinese stock exchange, and it's filed each and every year.

09:10AM 13         Next.  On the annual reports, "each and every year."

09:10AM 14         Next.  The Board of Directors, the Supervisory

09:10AM 15    Committee, and all directors, supervisors, and senior

09:10AM 16    executives of the Company confirm that there are no

09:10AM 17    misrepresentations or misleading statements contained in or

09:10AM 18    material omissions from this report, and accept joint and

09:11AM 19    several responsibilities for the truthfulness, accuracy and

09:11AM 20    completeness of the contents of this report.

09:11AM 21         Mr. Cao, Chairman of the company, under oath.  Cao has

09:11AM 22    been director of CNBM Group since April 2014.  He is General

09:11AM 23    Manager of CNBM Group.

09:11AM 24         March 2005, to present, Cao has been President and

09:11AM 25    Executive Director of CNBM.

09:11AM  1          2005 to present, Cao held a range of positions at BNBM

09:11AM  2  Group.  Currently, Cao is Chairman of the Supervisory Committee

09:11AM  3  at BNBM Group.

09:11AM  4          Your Honor, this is a case that is very important to

09:11AM  5  our jurisprudence, because China is still a communist nation.

09:12AM  6          Since about 2006, at least, according to Hank Paulson,

09:12AM  7  they transitioned and they are trying to enter our world.  And

09:12AM  8  they are welcome in our world, and we welcome them in our

09:12AM  9  world.  But when they say it's no small thing that he was on

09:12AM 10  the Supervisory Committee, that's the Communist Party Committee

09:12AM 11  in the corporation.

09:12AM 12          When I asked the question at the deposition, the answer

09:12AM 13  was more like it was a social club.

09:12AM 14          Well, we could take judicial notice that that was not a

09:12AM 15  social club.

09:12AM 16          Next.  Now there is a big difference between what is

09:12AM 17  said in the courtroom, what is said in depositions, and what is

09:13AM 18  said in documents that are filed, and what the truth is.

09:13AM 19          We all sat in Hong Kong, Your Honor, in a dungeon, and

09:13AM 20  couldn't believe the deposition of Fu Tinghuan -- I have

09:13AM 21  difficulty with Chinese names.

09:13AM 22          When he said, "In China, we exaggerate a little bit."

09:13AM 23  Exaggerate a little bit.  That's allowed.

09:13AM 24          Everybody in that room, and Your Honor will speak for

09:13AM 25  yourself, I'm excluding you, because I don't know your opinion,

09:13AM 1    knew what he was saying.  In China, we can lie.

09:13AM 2          Next.  Finally, May 11th, 2009, report to Chiefs Song
09:14AM 3    and Cao.  In this conglomerate as we heard them depict this as,
      4    they are the two heads:  Cao and Song.

09:14AM 5          Song, I read once someplace that he is the sixth most
09:14AM 6    influential businessman in China.

09:14AM 7          What does it say?  After analysis, Taishan Company
09:14AM 8    believes that this lawsuit is relatively complicated and it
09:14AM 9    plans not to respond, but when necessary it will provide
09:14AM 10   documents that are beneficial to Taishan Company to the Court
09:14AM 11   that accepted this case.  Beneficial.

09:14AM 12         That means they will triage their documents and give us
09:14AM 13   what they want to give us and not give us, which is harmful,
09:14AM 14   and Taishan will come in here if they have to, but CNBM Group
09:14AM 15   will stay home in China and CNBM Group is directing them to do
09:15AM 16   that.

09:15AM 17         I'm not the only one that feels this way about those
09:15AM 18   companies.

09:15AM 19         Morgan Stanley offering memorandum.  This is their
09:15AM 20   investment advisor, the one that put this whole thing together,
      21   this global prospectus.

09:15AM 22         What did they say about their client?  We cannot
09:15AM 23   guarantee the accuracy of facts and statistics derived from
09:15AM 24   official sources and industry publications with respect to the
09:15AM 25   PRC, the People's Republic of China, the PRC economy, and the

PRC building materials industry contained in this prospectus and the investors should not place undue reliance on them.

I wouldn't buy something with that cautionary language in it. And I don't think Morgan Stanley is in business to hurt the clients that they are representing. But they felt that they had to do this to prevent plaintiffs from suing Morgan Stanley, because after all, the operatives of CNBM were all over the United States in road shows selling their stock.

Now, what did Mr. Cao produce on ownership? He produced a business license from 1981 -- long before 2006.

And unfortunately, we have BNBM's word, year in and year out, CNBM Group, CNBM, BNBM, Taishan. BNBM has told us who owns the company, and they are not entitled to it.

They have been playing hide the pea for a long time, Your Honor.

Next. We took depositions in this case, Russ and I, Mr. Herman and I, of their 30(b)(6) witnesses. And my God, they were producing documents -- machine documents that you couldn't read. We were having them produced from Chinese to English and working with them.

And they produced the bulk of the documents after the depositions. That is not fair. But that is what we were blessed with.

And they still continue to dump documents on us at 4:30 in the morning. This has been an organized effort to see

09:18AM 1    to it that not all of the facts would be revealed in this

09:18AM 2    courtroom.

09:18AM 3         Now, if I fail, and I shouldn't fail with this first

09:18AM 4    part of the argument, and I will be very brief because

09:18AM 5    Mr. Herman has a presentation on the facts.

09:18AM 6         They are certainly, certainly a recipient of the

09:18AM 7    commercial exception, which will bring them into this

09:18AM 8    courtroom.

09:18AM 9         The *Sachs* case, as Your Honor questioned them, is

09:18AM 10   really not significant as to the facts in this case.

09:18AM 11        We have 4,000 homes in the United States that are

09:18AM 12   destroyed, and *Sachs* had her injury abroad on one railroad

09:18AM 13   ticket.

09:18AM 14        I invite you, because time is short, to look at the

09:19AM 15   Footnote 1.  *Sachs* didn't reach all three prongs but,

09:19AM 16   specifically, the third prong, activity of a foreign state

09:19AM 17   elsewhere and the act causes a direct effect in the United

09:19AM 18   States.  That certainly is our case here.

09:19AM 19        Next.  What is the particular conduct that constitutes

09:19AM 20   the gravamen of the suit?  That is what *Sachs* says is

09:19AM 21   important.

09:19AM 22        Next.  This is our complaint in the *Gross* case.  As

09:19AM 23   Your Honor knows, we have 20 omni complaints outstanding now.

09:19AM 24   *Gross* was the first complaint that we filed.  It was an

09:20AM 25   indeterminate defending complaint, because we were faced with

09:20AM 1    the situation where we didn't even know at that time who

09:20AM 2    manufactured what.

09:20AM 3         Chinese companies had invaded the United States, the

09:20AM 4    market for drywall, and fortunately, we had a little help from

09:20AM 5    Knauf in determining, if Your Honor remembers, I think it was

09:20AM 6    Pretrial Order No. 10, in determining the different logos on

09:20AM 7    the documents, so that we could put together at least the

09:20AM 8    Taishan, CNBM, BNBM amendments.

09:20AM 9         But what did we say?  Defendant Taishan is a foreign

09:20AM 10   corporation involved in manufacturing and the sale of gypsum

09:20AM 11   drywall.  Taishan manufactured, sold, distributed, marketed,

12   and placed with the stream of commerce gypsum drywall with the

09:20AM 13   expectation that the drywall would be purchased by thousands of

09:20AM 14   consumers, if not more, within various states, including but

09:21AM 15   not limited to Louisiana, Alabama, Florida, Mississippi, Texas,

16   North Carolina, and Virginia.

09:21AM 17        Taishan has continuously and systematically distributed

09:21AM 18   and sold drywall to numerous purchasers in the United States,

09:21AM 19   and their drywall is installed in numerous structures in the

09:21AM 20   United States.

09:21AM 21        Taishan was their arm.  Under Florida law, Taishan was

09:21AM 22   their agent.

09:21AM 23        Under Louisiana law, Taishan was the alter ego.

09:21AM 24        Under Louisiana law, the whole conglomerate, as it was

09:21AM 25   described, was a single business entity.

09:21AM 1          And under Virginia law, the same occurred.  Virginia

09:21AM 2    law was not dealt with by the Fifth Circuit because *Germano*

09:21AM 3    didn't have that.

09:21AM 4          What do we say about CNBM Group?  Paragraph 45:

09:21AM 5    Defendant CNBM Group caused the drywall at issue in the case to

09:21AM 6    be imported, distributed, delivered, supplied, inspected,

09:21AM 7    marketed, and/or sold.

09:22AM 8          They weren't on the assembly line, if that's what

09:22AM 9    day-to-day operation is, but they were in the control of moving

09:22AM 10   that defective product into the United States and right here

09:22AM 11   into Louisiana.

09:22AM 12         Next.  Defendants, plural, CNBM Group is one of them,

09:22AM 13   tortiously manufactured, exported, imported, distributed,

09:22AM 14   delivered, supplied, inspected, marketed and/or sold the

09:22AM 15   defective drywall, which was unfit for its intended purpose and

09:22AM 16   unreasonably dangerous in its normal use in that the drywall

09:22AM 17   caused corrosion and damage to personal property in plaintiffs'

09:22AM 18   and class members' homes.

09:22AM 19         It sounds like a lawyer wrote that.  They did.

09:22AM 20         Now we have heard much about an alter ego.  I think if

09:23AM 21   you look at the *Hester* case, Your Honor, and the Cuba case,

09:23AM 22   that when they talked about day-to-day operations they are

09:23AM 23   talking about the People's Republic of China being held under

09:23AM 24   an alter ego theory.

09:23AM 25         But when we're talking about, as between CNBM Group and

09:23AM 1    Taishan, we have our own jurisprudence.  We have the *Green* case

09:23AM 2    in Louisiana.  We have the *Agency* cases in Florida.  In

09:23AM 3    Virginia, we have Fifth Circuit opinion two times.  We have

09:23AM 4    Your Honor's opinion.

09:23AM 5           It's not on a clean slate.  We don't have to have

09:23AM 6    day-to-day operations.  But we certainly have the ability when

09:24AM 7    looking at CNBM Group to know that they have controlled it.

09:24AM 8           Now, counsel said that CNBM Group is just like any

09:24AM 9    other Parent.  It's like GE, and probably Kodak, and they

09:24AM 10   listed about 60 for depositions as to BNBM did, and CNBM

09:24AM 11   incorporated the BNBM expert on this.

09:24AM 12          Those depositions will be taken in January.  I'm sure

09:24AM 13   that those companies weren't sued as these companies are on an

09:24AM 14   alter ego theory, and I think we will be able to make that

09:24AM 15   determination and prove that fact when we take their

09:24AM 16   deposition.

09:24AM 17          But that is a red herring, Your Honor.  What we're

09:24AM 18   dealing with here is not General Electric, but CNBM Group.

09:25AM 19          Now I invite Your Honor to read very carefully, and I

09:25AM 20   know you will, because you read everything, the *Day* case, and

09:25AM 21   especially the *Hester* case, which I believe negates another red

09:25AM 22   herring of day-to-day control.

09:25AM 23          Sure, when you are going against the People's Republic

09:25AM 24   of China, they hold them to day-to-day control.  But when you

09:25AM 25   are going behind one commercial entity and another commercial

09:25AM 1    entity, then traditional theories of alter ego, agency, single

09:25AM 2    business enterprise apply.

09:25AM 3         And if you read *Hester*, along with the Cuba case, *First*

09:25AM 4    *National City Bank*, you will find that the Court there said

09:26AM 5    that Chinese law doesn't apply.  I think it was Nigeria at the

09:26AM 6    time, that it is domestic law that applies.

09:26AM 7         Now, lastly, counsel for the defendant wants us to be

09:26AM 8    very myopic and just look at 2005 or 2006, or perhaps a week or

09:26AM 9    a month in each of those particular years.  That is not the

09:26AM 10   real world.

09:26AM 11        If you look at the totality of what CNBM Group has done

09:26AM 12   here, and what they have controlled here over a span of years

09:26AM 13   where in each year they had the ability to do the same thing,

09:26AM 14   and it's not the actual control, but it's the ability to

09:26AM 15   control, and also the actual control, and how they manage this

09:27AM 16   litigation to prevent my plaintiffs, 4,000 of them, from

09:27AM 17   getting redress in this Court, they were in control, Your

09:27AM 18   Honor.

09:27AM 19        They are the alter ego.  They are the agent.  This is a

09:27AM 20   single business enterprise with hundreds of companies spread

09:27AM 21   out all over the world.  We see what they characterize

09:27AM 22   themselves as.

09:27AM 23        Your Honor, it's been a long time since I read a kiddie

09:27AM 24   book, but I believe Kann said it best.  "If you make a mess,

09:27AM 25   clean it up."  And it's time for them to clean this mess up.

09:27AM 1          Thank you, Your Honor.

09:27AM 2          THE COURT:  Thank you.

09:27AM 3          MR. HERMAN:  May it please the Court, good morning,

09:28AM 4     Your Honor.  Russ Herman, of Herman, Herman & Katz, New

09:28AM 5     Orleans, for the PSC.  I'm pleased to address the Court.

09:28AM 6          Mark Twain said, "There is a world of difference in

09:28AM 7     words."  And he used the example between the lightening and a

09:28AM 8     lightening bug.  And domination -- I don't know whether

09:28AM 9     domination, means ultimate controller, actual controller, but

09:28AM 10    the words they used throughout the reports to the public,

09:28AM 11    published in English, used the words "actual controller,"

09:28AM 12    "ultimate controller" and "controller" to give notice to the

09:29AM 13    world.  And the deposition testimony that we cited to Your

09:29AM 14    Honor in brief, shows that none of those words, none of them,

09:29AM 15    were ever changed.

09:29AM 16         Would you put up that first slide, please.

09:29AM 17         Alter ego, learned counsel is right, 100 percent

09:29AM 18    ownership is not enough -- is not enough to show alter ego.

09:29AM 19         And those cases only point to a single item referenced

09:29AM 20    in facts; however, we have a pattern of conduct here by CNBMG

09:29AM 21    of 17 different indicia of alter ego:  Ownership -- substantial

09:29AM 22    identity, subsidiaries doing business, use/ownership of common

09:29AM 23    facilities, ability to control even though not exercised,

09:29AM 24    causing the incorporation of a subsidiary, using the property

09:30AM 25    of another corporation, transfers for no consideration,

09:30AM 1    control, common officers and directors, common employees,

09:30AM 2    uncompensated directors, financial control, intertwined

09:30AM 3    business, administrative control, centralized accounting,

09:30AM 4    excessive fragmentation, and patents and trade marks.

09:30AM 5         And having been served at 4:30 a.m. the night before

09:30AM 6    Thanksgiving, and receiving a call around 5:30 in the morning,

09:30AM 7    and then having to assign translators, who were out of town at

09:30AM 8    the time, we have learned and we will submit supplementary

09:30AM 9    information as to how CNBMG audited the various corporations

09:30AM 10   and the irregularities that they found.

09:30AM 11        Now, Your Honor, I am going, even though we do not

09:31AM 12   agree, and we do not accept counsel's -- learned counsel's

09:31AM 13   statement that we have to concentrate on 2005 to 2008, I am

09:31AM 14   going to deal with the evidence primarily of those years

09:31AM 15   because the false levy that the defendants CNBMG has tried to

09:31AM 16   erect is undermined by the falsity of their statements

09:31AM 17   regarding 2005 and 2008.

09:31AM 18        And I want to make clear that I'm not indicating that

09:31AM 19   counsel has misrepresented anything, the entire strategy

09:31AM 20   directed by CNBMG is a falsehood.

09:31AM 21        Could I have the first statement?

09:31AM 22        Well, Your Honor, Your Honor made a statement, well

09:31AM 23   they don't have majority.  Actually, they have majority, direct

09:32AM 24   and indirect control.

09:32AM 25        This is 2005.  We see that CNBMG controls CNBM; CNBM

09:32AM 1   controls BNBM; and BNBM controls Taihe, and not only that, the

09:32AM 2   two companies that were doing business in the United States

09:32AM 3   violating your order, Jushi and China Triumph.

09:32AM 4        I'm going to save that for another day.

09:32AM 5        Next line, please.  It shows that JP Morgan Chase had

09:32AM 6   about eight percent in total share capital in 2005 of these

09:32AM 7   various interlocking corporations.

09:32AM 8        This deals with CNBM and it talks about the Parent

09:33AM 9   Group, which is CNBMG, but how are they not doing business in

09:33AM 10  the United States if they controlled, through JP Morgan, eight

09:33AM 11  percent of the capital?  That is an extraordinary amount of

09:33AM 12  capital to be controlled.

09:33AM 13       Next.  Now in 2006, they embarked on making CNBM, after

09:33AM 14  passing a resolution in 2005, a public company.  And in the

09:33AM 15  prospectus of CNBM Company, published by Morgan Stanley at

09:33AM 16  their request, it shows that Taihe became a subsidiary,

09:33AM 17  consolidated with BNBM, long-term control of Taihe's board of

09:33AM 18  directors.  Of course, there were five directors.  They got to

09:33AM 19  elect three.  Then who elected BNBM?  Why CNBM?

09:33AM 20       Who elected CNBM?  CNBMG.

09:34AM 21       Still in 2006, you give me the next slide, please, who

09:34AM 22  is the Parent?  In all of these documents who is the Parent

09:34AM 23  CNBM Group Corporation.

09:34AM 24       Who are the controllers?  Collectively, Parent, BNBMG,

09:34AM 25  Building Materials Academy, which incidentally they owned

09:34AM 1    100 percent of, and CNBM Trading.

09:34AM 2            Next slide, please.  You know, this is a very

09:34AM 3    interesting case on the facts.

09:34AM 4            Just Brandeis once remarked that sunlight is the best

09:34AM 5    disinfectant.  And what we're faced with here is and

09:34AM 6    disinfecting a Chinese corporate enterprise that permeates our

09:34AM 7    culture in which they use our Courts, but deny our Courts the

09:35AM 8    opportunity to judge their torts, their commercial activity.

09:35AM 9            And they recognize that if their products fail to

09:35AM 10   perform as expected, they not only would get negative publicity

09:35AM 11   from defects and failures, but they would have claims from

09:35AM 12   purchasers.

09:35AM 13           Now that is a public representation, not a private

09:35AM 14   representation.

09:35AM 15           And it says:  A Parent at CNBMG, the company that

09:35AM 16   CNBM's controlling shareholder may differ from those of the

09:35AM 17   company's other shareholders, and the parent could make

09:35AM 18   decisions that were not in the best interests of shareholders.

09:35AM 19           That is an important statement.

09:35AM 20           Also, it says, look you may not be able to serve the

09:36AM 21   company or its directors.  Well, we know that is true.

09:36AM 22           It says, PRC judgments obtained from non-PRC Courts,

09:36AM 23   does that explain motive?

09:36AM 24           Where in any enterprise, in any individual, if you want

09:36AM 25   to be treated like a person in our Courts, and our law is that

09:36AM 1   you are a person, then you have to subject yourself to the same

09:36AM 2   laws that a person would.

09:36AM 3          You can't hide.  That is what piercing the corporate

09:36AM 4   veil means.  That is what Chairman Song of CNBMG, CNBM, and

09:36AM 5   BNBMG said, that you have got to watch out, the U.S. is passing

09:36AM 6   the corporate veil.

09:37AM 7          Next.  The directors of Mr. Song -- we're in 2006 now,

09:37AM 8   one of those critical years.  And by the way, learned counsel

09:37AM 9   opposite tried the limit, as he can, he's an advocate.  The

09:37AM 10  shipments from 2005 to 2007, we're going to show you the

09:37AM 11  evidence, Your Honor, that we're really dealing with 2005,

09:37AM 12  2006, 2007, and 2008, but Mr. Song Zhiping and Mr. Cao Jianglin

09:37AM 13  continue to be directors of the Parent.

09:37AM 14         The directors of the Parent, and why is this key?

09:37AM 15  Because this is commercial enterprise.  The directors of the

09:37AM 16  Parent are only involved in the high level decision-making of

09:37AM 17  strategic and policy matters, formulation of business plans,

09:37AM 18  investment strategies, changes in business focus, market, and

09:37AM 19  customer groups.

09:38AM 20         What about our 4,000 people here?  What about all of

09:38AM 21  the companies in these various states that they either ran or

09:38AM 22  sold this material to, which was inherently defective?

09:38AM 23         I remember from Planiol and Pothier -- maybe this only

09:38AM 24  applies in a code state -- that, you know, if you buy a vase,

09:38AM 25  and you think it's porcelain, you can't tell that it's not

09:38AM 1    porcelain, but it's clay.  That is a commercial venture that is

09:38AM 2    fraudulent.  That is a commercial venture, even if it's not

09:38AM 3    fraudulent, that gives rise to obligation, to duty, and to

4    reparation.

09:38AM 5            Next line, please.

09:38AM 6            Now 2006, again, supply of minerals by the Parent, that

09:39AM 7    is CNBMG, the Parent Group, to the Group meaning CNBM and all

09:39AM 8    of its lower owners and subsidiaries, including Taishan,

09:39AM 9    provision of production supplies and support services by the

09:39AM 10   Parent Group to the Group.  The Group, again, is CNBM, BNBM,

09:39AM 11   Taishan, provision -- supply of equipment under No. 3, by the

09:39AM 12   Parent, CNBMG to the Group, CNBM, BNBM, Taishan.

09:39AM 13           A licensing of patents by BNBMG -- Song is Chairman of

09:39AM 14   BNBMG.  BNBMG is controlled by CNBMG.

09:39AM 15           Licensing of trademarks by CNBMG, the Parent to the

09:40AM 16   Company, which is CNBM.

09:40AM 17           Next line, please.  Again, in 2006, Parent has -- that

09:40AM 18   is Parent, at CNBMG has a direct equity interest of

09:40AM 19   26.54 percent, and an indirect equity interest of

09:40AM 20   68.22 percent, prior to the global offering.

09:40AM 21           Now, that is 2006.  That's not a minority interest.

09:40AM 22   That is a controlling interest.

09:40AM 23           Now let's see what happens after.

09:40AM 24           Next slide.  Parent, CNBMG, has issued share capital of

09:41AM 25   63.49 percent.  But its subsidiary, BNBMG, has 39.60 percent.

09:41AM 1    Now, that is, if our option is not exercised; however,

09:41AM 2    if the option is exercised after this global offering, which

09:41AM 3    incidentally, was published in English -- they sent people to

09:41AM 4    the United States to sell it.  It was sold in New York, Boston,

09:41AM 5    and San Francisco -- all over the United States, 97 percent is

09:41AM 6    their effective control of the share capital.

09:41AM 7    Now let's look at what happened to gypsum.  Here is

09:41AM 8    2006.  Gypsum board increased 150, from 150 in RMB millions to

09:42AM 9    247 millions.  Wasn't some of that increase due to the sale of

09:42AM 10   products in the United States?

09:42AM 11   Look at Taihe or Taishan at the bottom dealing with

09:42AM 12   their sales volume, 3.94 -- I'm sorry, the first was volumes of

09:42AM 13   merchandise.  This is the average sales, 3.94 increases to

14   4.05.

09:42AM 15   So what we have here is you will see the growth.

09:42AM 16   Next slide.  In 2006, the largest gypsum board producer

09:42AM 17   in the PRC, in terms of production in 2006.  We get to 2007,

09:42AM 18   and 2008, we will see how that changed.

09:42AM 19   Now let's look at the 2006 CNBM report.

09:43AM 20   Again, still CNBMG owns CNBM.  CNBM owns BNBM.  BNBM

09:43AM 21   owns Taihe.  And CNBM has controlling interest in Jushi and

09:43AM 22   also controlling interest in China Triumph.

09:43AM 23   Next, please.  I don't know.  I mean, you got a

09:43AM 24   professor from China, and I don't know how much work he does

09:43AM 25   over there.  I can't wait to depose him about his use of the

09:43AM  1    word "control" because the public statement, the company's

09:43AM  2    ultimate holding company is China National Building Material

09:43AM  3    Group Corporation.

09:43AM  4         So how is CNBMG not controlled, not the dominator of

09:43AM  5    these other companies?

09:43AM  6         Let's look at 2007.  Again, this is their critical

09:43AM  7    period, so-called, by our worthy opponents.

09:44AM  8         Again, here is CNBMG's owning BNBM and controlling BNBM

09:44AM  9    and Shandong Taihe, and Jushi, and China Triumph.

09:44AM 10         I might add for each of these years, Song Zhiping is

09:44AM 11    Chairman and Cao Jianglin is President of CNBM.  They are also

09:44AM 12    the officers, directors, and prime movers of CNBMG, and it

09:44AM 13    doesn't change for four years.

09:44AM 14         I will get to that in a minute.

09:44AM 15         Let's go to the next slide.  At 2006, compared to 2007:

09:44AM 16    Sales volume, 247 RMB in millions.

09:44AM 17         In 2007, increases to 303 millions in RMB in 2007.

09:45AM 18         How did that increase get there?

09:45AM 19         One of the ways it got there is they targeted the

09:45AM 20    United States of America, taking advantage of people who had

09:45AM 21    lost their homes in Katrina, and there is no question we were

09:45AM 22    targeted.  We only have to look at Your Honor's findings of

09:45AM 23    fact, conclusions and the two jurisdictional determinations by

09:45AM 24    the Fifth Circuit, echoing the targeted states that we're

09:45AM 25    dealing with here.

09:45AM 1    In Taihe, it's selling price increased from 2006, to

09:45AM 2 2007.  It wasn't bad enough to ship defective drywall to United

09:45AM 3 States, they had to turn the screws by increasing the price --

09:45AM 4 the cost.

09:45AM 5    Next line.  In 2007, they are still the largest gypsum

09:46AM 6 producer in the PRC.

09:46AM 7    Next slide.  What happens in 2008?  Again, in terms of

09:46AM 8 sales volume, they have increased from 303 RMB in millions to

09:46AM 9 323 in millions.

09:46AM 10    Did they increase the price again?  Oh, yes.  Why not?

09:46AM 11 We got people in the United States.  They are suffering; they

09:46AM 12 are out of their homes.  We don't care, we are just here doing

09:46AM 13 the bidding of CNBMG.  And we're CNBM making this annual report

09:46AM 14 about Taishan and BNBM.

09:46AM 15    Now what about the next slide?  My goodness, from 2005

09:46AM 16 to 2008, when they are shipping defective drywall to the United

09:46AM 17 States of America, they become no longer the largest gypsum

09:47AM 18 producer in Asia, I mean, in the PRC, they are now the largest

09:47AM 19 in Asia.  Well thank you for shipping your product and working

09:47AM 20 your magic on the people in Louisiana, Texas, Alabama, Georgia,

09:47AM 21 Florida, and Virginia by shipping your drywall during those

09:47AM 22 years, increasing the price and increasing the production.

09:47AM 23    Now, you can talk about, well, USA is a small amount.

09:47AM 24 Well, it may be small to you, but it's not small to me.

09:47AM 25 Because you see, we represent Catholic charities; we represent

09:47AM 1   Habitat for the Humanity, and other folks, 4,000 of them that

09:47AM 2   used that defective drywall.

09:47AM 3       Let's look now at the 2008 annual report again.

09:48AM 4       CNBMG, controls CNBM, controls BNBM, controls Taishan

09:48AM 5   Gypsum now, which has changed its name, at least in their

09:48AM 6   reports, Jushi and China Triumph.  Who are the executive

09:48AM 7   directors?  The same executive directors, Song Zhiping, Cao

8   Jiangling, Li Yimin and Peng Shou.

09:48AM 9       Now let's look at what JP Morgan Chase did.  Now we saw

09:48AM 10  early on, here, they own, again, in 2008, almost 14 percent in

09:48AM 11  total share capital -- total share capital.

09:48AM 12      I always thought JP Morgan's office was in New York,

09:48AM 13  New York.  I don't know, this is a public document.  We didn't

09:49AM 14  invent this document.

09:49AM 15      Let's look at FSIA Exhibit 42.  Well, let's look at a

09:49AM 16  clear picture.  Song is Chairman of CNBM Company, LTD., from

09:49AM 17  March 2005 to present.

09:49AM 18      He is Chairman of BNBM Group January '96 to present.

09:49AM 19      He is Chairman of CNBM Group, 2005 to present.

09:49AM 20      He is Executive Director of CNBM, 2005 to present.

09:49AM 21      He was Deputy Director of BNBM until 2002.

09:49AM 22      He is, from 2002 to 2005, the general manager of CNBM

09:50AM 23  Group.

09:50AM 24      So Song, by the time we get to these critical years

09:50AM 25  learned counsel was talking about, 2005 to 2008, Chairman Song,

09:50AM 1  reputed to be the sixth most important person in China, has an

09:50AM 2  iron fist around the building trades.  That is commercial

09:50AM 3  enterprise.

09:50AM 4      But what about Cao?  First of all, Cao has been

09:50AM 5  impeached, actually, by his own testimony, and by his own

09:50AM 6  reports.  And what is he?  Well let's see, he was actually at

09:50AM 7  Taishan as a Supervisor and Chairman of the Supervisory Group

09:50AM 8  during this critical period counsel points to, 2005 to 2008.

09:51AM 9      Today, he is Chairman of the Supervisory Committee of

09:51AM 10 BNBM PLC and has been chairman -- Chairman of BNBM during the

09:51AM 11 critical period from 2004 to 2008.

09:51AM 12     He is president of CNBM Company from March 2005 to

09:51AM 13 date, and its Executive Director.

09:51AM 14     Chairman of BNBM Group Supervisory Committee 2005 to

09:51AM 15 date.  He is of CNBM Group, General Manager beginning

09:51AM 16 April 2014.

09:51AM 17     But that is not the critical part.  The critical part

09:51AM 18 is a Director, and actually an Executive Director of CNBM Group

09:51AM 19 from October 2005, to date.

09:51AM 20     So this business about linkage with 2005 to 2008 is

09:52AM 21 really -- doesn't hold water and even if it did, it's sort of

09:52AM 22 an absurd argument based upon their own facts.

09:52AM 23     Next, please.  Now I'm a great believer in facts.  FSIA

09:52AM 24 Exhibit 151 goes to Chief Song and Chief Cao.  It reports about

09:52AM 25 individuals in Florida, Mississippi, Louisiana, Alabama,

09:52AM 1   Georgia, and Texas, a written report on the facts of the case

09:52AM 2   and relevant information are hereby submitted to each leader so

09:52AM 3   that the leaders can understand the facts of the case and give

09:52AM 4   relevant instructions.

09:52AM 5          And who does it go to?  The leaders of CNBMG, Chief

09:53AM 6   Song and Chief Cao.

09:53AM 7          Now, on May 11th of 2009.  Can I see the next slide?

09:53AM 8          You know that learned counsel and the argument they

09:53AM 9   have given us is factually incorrect, because this shows in

09:53AM 10  their own documents that defective drywall was exported to the

09:53AM 11  U.S. in 2005, 2006, 2007, and 2008.  And 2008 is important

09:53AM 12  because in 2008, they began, even before there were reports of

09:53AM 13  lawsuits being filed, investigating what was happening in the

09:54AM 14  U.S. in terms of their drywall.

09:54AM 15         I will get to that exhibit in a minute.

09:54AM 16         Now on May 11th, 2009 -- now remember, Your Honor, this

09:54AM 17  is only six months after 2008, the humidity, the heat has not

09:54AM 18  yet really been exposed in terms of this defective drywall.

09:54AM 19         And if you would give me the next slide.  Now what is

09:54AM 20  the motive?  Why did they do that?  Because of Katrina.

09:54AM 21         And then they have witnesses at 30(b)(6) depositions

09:54AM 22  that lie, and I use the word "lie."

09:54AM 23         To have to -- in this courtroom -- to depose a witness

09:55AM 24  in two or three days who says he doesn't know how much drywall

09:55AM 25  was shipped to the U.S. or landed in the U.S. when they were

09:55AM 1  writing reports in 2008, and 2009, about how much drywall was

09:55AM 2  shipped here.

09:55AM 3       This isn't a question of exaggeration, it's a question

09:55AM 4  of outright prevarication.

09:55AM 5       We go to, again, May 11th, 2009.  Would you go to the

09:55AM 6  next slide?

09:55AM 7       Why won't Taishan respond to the lawsuit?  What is the

09:55AM 8  motive?

09:55AM 9       Well, we will just mail evidence to the U.S., that is

09:55AM 10 good for us.  And we're going to have our court and

09:55AM 11 governmental departments interfere to eliminate and reduce

09:56AM 12 negative impact.

09:56AM 13      Let's go to the next slide.  Again, according to export

09:56AM 14 records from 2005, to 2007, and this just reports 2005, to

09:56AM 15 2007.  Your Honor will have to look at where this report went.

09:56AM 16 It went up the line to CNBMG.

09:56AM 17      Oh yeah, I guess so.  I would like to have the U.S.

09:56AM 18 government interfere with all citizens' rights.  The difference

09:56AM 19 is, we have a constitution, we have due process, we have equal

09:56AM 20 protection.  But if you can ride those out, then, of course,

09:56AM 21 you know, you can have interference with government by

09:56AM 22 government departments and courts.

09:56AM 23      Let's go to the next slide.  Now this slide

09:57AM 24 conveniently, and I like to look at the date of this slide.

09:57AM 25 It's Exhibit 157.

09:57AM  1          This is a report, I believe, in 2009, that shows that

09:57AM  2    the U.S. customers, Venture Supply, Wood Nation, Young Fen

09:57AM  3    Investment, Tov Trading, and Stone Pride were all receiving

09:57AM  4    defective drywall, and they give the dates.  Everything is

09:57AM  5    fairly well set out at an early point before any 30(b)(6)

09:57AM  6    depositions.  But they continue:  While we don't know it was

09:57AM  7    FOB, I haven't seen it, I don't understand why you are asking

09:58AM  8    those questions.

09:58AM  9          Well, Exhibit 157 is produced or complete.  Let's go to

09:58AM 10    the next slide.

09:58AM 11          Well, November 3rd, 2008.  This is at the same time

09:58AM 12    that they have just shipped drywall to the U.S.  We have got

09:58AM 13    BNBM to Taishan Gypsum, CNBMG and BNBM, and if you could go to

09:58AM 14    the next slide, all in the same document in 2008, this critical

09:58AM 15    period.

09:58AM 16          Please give us the information on import and export

09:58AM 17    business operation, and count the measures of the enterprises

09:58AM 18    during the financial crisis.

09:58AM 19          Well, they sure did report on November 6, exactly what

09:59AM 20    was asked them to investigate, including what drywall went to

09:59AM 21    the U.S.

09:59AM 22          Let's look at the next slide.  Again, November 5th,

09:59AM 23    2008.  See the attached report of export information, ask the

09:59AM 24    supply department about it.

09:59AM 25          Again, a string of e-mails dealing with the imports and

09:59AM 1    exports, which include the U.S.

09:59AM 2          Let's go to the next one.  Interesting document,

09:59AM 3    Exhibit FSIA 150.

09:59AM 4          The main products involved in the export business of

09:59AM 5    Taishan Gypsum are plaster boards, decorative gypsum boards,

10:00AM 6    from 2006, 2007, and 2008, on the main countries and regions

10:00AM 7    for export, which are the U.S.

10:00AM 8          Denied in the 30(b)(6) depositions.

10:00AM 9          Now let's go to another alter ego issue.  To facilitate

10:00AM 10   CNBM subsidiary -- subsidiary of who?  CNBMG.  Transfer by CNBM

10:00AM 11   Group for no consideration.

10:00AM 12         BNBM Group transfers equity to CNBM Equipment for nil

10:00AM 13   consideration.

10:00AM 14         CNBM Group approves the transfer of equity interests to

10:00AM 15   the Parent Group.

10:00AM 16         Let's go to the next line.  BNBM Group transfers more

10:00AM 17   than 60 percent of its equity to CNBM Group without

10:01AM 18   compensation.

10:01AM 19         CNBM Group transfers 91 percent interest in China

10:01AM 20   Triumph to CNBM Equipment for no consideration.

10:01AM 21         CNBM Equipment transfers all its assets and liabilities

10:01AM 22   to CNBM import and export, commonly referred to as CNBM Trading

10:01AM 23   for no compensation, and that is the established trading arm of

10:01AM 24   CNBM Group.

10:01AM 25         It's no wonder, Your Honor, that we are still very,

10:01AM 1    very concerned about something that we had to discover

10:01AM 2    ourselves.

10:01AM 3            It was never divulged to the Court, never divulged to

10:01AM 4    us, that BNBM is going to buy all of Taishan.  It can't do it

10:01AM 5    without CNBMG's approval.

10:01AM 6            I wonder how that is going to happen before or after

10:02AM 7    BNBM presents its lack of jurisdiction motion.

10:02AM 8            You see, because since Taishan has no assets here, and

10:02AM 9    BNBM has no jurisdiction, and CNBM -- BNBM has all of the

10:02AM 10   assets of Taishan, then even if Your Honor were to render a

10:02AM 11   decision in favor of 4,000 homeowners, how indeed would we

10:02AM 12   proceed to recover for them in China, when the defendants, all

10:02AM 13   of them, acknowledge in their documents that China and its

10:02AM 14   courts are not going to enforce a judgment.

10:02AM 15           At the same time CNBMG and its subsidiaries and

10:02AM 16   controlled entities are suing in our Courts for relief.

10:02AM 17           Let's go to the next.  What about guarantees?  I will

10:03AM 18   just go to 2008.

10:03AM 19           BNBM guarantees Taishan's debt twice.  CNBMG guarantees

10:03AM 20   BNBMG's debt.  CNBMG guarantees BNBMG's debt twice.

10:03AM 21           2007, BNBM guarantees Taishan; CNBM guarantees BNBM.

10:03AM 22           BNBM guarantees CNBM, and BNBM guarantees Taihe in

10:03AM 23   2006.

10:03AM 24           In 2005 BNBMG has an equity interest -- it gives an

10:03AM 25   equity interest to CNBMG and CNBM/BNBM guarantees Taihe's debt.

10:03AM  1          Under Texas law, it's called a Ring Dang Do.  It's a

10:03AM  2     Texas hoop snake that swallows its tail and just goes

10:03AM  3     circularly through a chronological movement.  That is all this

10:04AM  4     is.  It is definitely an alter ego issue.

10:04AM  5          I'm going to wind up, Your Honor.  My time is about up,

10:04AM  6     but I would like you to look at the deposition of Song Zhiping,

10:04AM  7     and I'm going to turn to $1 million that Song Zhiping

10:04AM  8     authorized to be paid Morgan Stanley.

10:04AM  9          And finally, at page 93, he says, well, we heard from

10:04AM 10     Taishan, and CNBM Group approved -- I don't think they used

10:04AM 11     "approved," I think they used the word "respected" and when

10:04AM 12     they were asked, why they respected the decision after they

10:05AM 13     reported, they said because we believe that Taishan's absence

10:05AM 14     of the Court is a substantial matter.  That is why Taishan had

10:05AM 15     to report to CNBMG.  That's why CNBMG's folks gave a unanimous

10:05AM 16     approval.

10:05AM 17          Now I'm going to end with this:  This is the puzzle

10:05AM 18     that you can't see, Your Honor.  And I think that our Courts

10:05AM 19     and our clients who are burdened and wondering every day what

10:05AM 20     is going on in the case, and we can't say, because everything

10:05AM 21     is highly confidential and sealed, want to know what we're

10:06AM 22     doing.

10:06AM 23          I think they deserve the truth.  This is what happened

10:06AM 24     with this Chinese puzzle.

10:06AM 25          This is Taishan's production before 30(b)(6).

10:06AM  1          This is BNBMG's production.

10:06AM  2          This is CNBM's production before -- I'm sorry, after

10:06AM  3  30(b)(6) depositions.  All of this is after 30(b)(6)

10:06AM  4  depositions.

10:06AM  5          This is CNBMG's production after 30(b)(6) depositions.

10:06AM  6          This is 830,000 documents coming out of Peng's

10:06AM  7  computer, many of them, CNBMG- and CNBM- and BNBM-related

10:06AM  8  documents.

10:06AM  9          Now they can talk all they want about producing a

10:07AM 10  fellow who had a heart problem in Hong Kong, I understand that.

10:07AM 11  And they couldn't find Mr. Peng, who knew more about this than

10:07AM 12  anybody else, and how cooperative they have been.

10:07AM 13          Remember all of this has happened since March, 2015.

10:07AM 14          We're entitled to the rest of this discovery.  And to

10:07AM 15  quote Planiol and Pothier, and Sam Gainsburg and Harry Herman,

10:07AM 16  when all you produce, this dog won't hunt.  You can't tell what

10:07AM 17  they are doing in China.

10:07AM 18          We have done the best we can with the facts and with

10:07AM 19  the law.  And Your Honor, there is no question that their

10:07AM 20  expert in China needs to go through Daubert, who wants to cut

10:07AM 21  hairs about what is controlling and ultimate controlling.  And

10:08AM 22  we appreciate that opportunity.

10:08AM 23          Your Honor, last week we got more production out of

10:08AM 24  CNBM and CNBMG.  We have nine translators, students that can

10:08AM 25  only work 16 hours a week, going through hundreds of thousands

10:08AM 1    of documents even now that were machined, corrupted, and trying

10:08AM 2    to make sense out of them.

10:08AM 3          Your Honor, thank you for the opportunity to appear

10:08AM 4    before you.

10:08AM 5          THE COURT:  All right.  Let's take a ten-minute break

10:08AM 6    at this time, and then we will come back.  I think the state

10:08AM 7    has something, and then rebuttal.

8          MR. ALLELY:  Your Honor, I just have a two-minute

9    presentation.

10:09AM 10         THE COURT:  That's fine.  I will be back in 10 minutes.

10:09AM 11         CASE MANAGER:  All rise.

12                           (Recess.)

13         CASE MANAGER:  All rise.

10:17AM 14         THE COURT:  Be seated, please.  We will hear from the

10:17AM 15   state, and then rebuttal.

10:18AM 16         MR. ALLELY:  Good morning, Your Honor.  I'm Craig

10:18AM 17   Allely of the firm, Perkins Coie, appearing here on behalf of

10:18AM 18   the state of Louisiana.

10:18AM 19         Thank you for hearing us this morning.

10:18AM 20         I have just a few brief remarks to add to the very fine

10:18AM 21   arguments of learned counsel, and in response to some of the

22   arguments of CNBM Group lawyers.

10:18AM 23         We heard this morning from Mr. Stengel, that what

10:18AM 24   plaintiffs need to show in this case was control in the

10:18AM 25   relevant time period, 2005, '06, '07.  And I think Mr. Herman

10:18AM 1    has very clearly shown that.

10:18AM 2          But what I want to call your attention to is maybe

10:18AM 3    another presentation here of the time line.  What was happening

10:18AM 4    in these years.

10:18AM 5          So CNBM Group retains Morgan Stanley in or about

10:18AM 6    sometime in 2004, for the express purpose of taking CNBM

10:18AM 7    Company to the public.  And so they work on that.  They

10:18AM 8    continue to work on that, and in March of 2005, and I think

10:18AM 9    these dates are important, CNBM Group -- well, CNBM Companies,

10:19AM 10   Incorporated, in March of 2005, and they prepare -- they are

10:19AM 11   working on their IPO.  As we all know in late August of 2005,

10:19AM 12   and then in September of 2005, we have hurricanes here in

10:19AM 13   Louisiana, devastating thousands of people.

10:19AM 14         That is when CNBM Group saw the opportunity here.

10:19AM 15   Chairman Song -- Chairman Song testified, and it's at the

10:19AM 16   PSC's FSIA Exhibit 25, is his deposition, he testified that

10:19AM 17   what CNBM Group wanted to do was to build up a good image in

10:19AM 18   the capital markets by increasing the market share and branding

10:19AM 19   influence of the gypsum board of BNBM and Taihe.  And we cite

10:19AM 20   that testimony on page 24 of our response brief.

10:20AM 21         To my mind, in terms, like, capital markets, building

10:20AM 22   market share, branding influence -- these are all terms

10:20AM 23   relating to commercial activities.

10:20AM 24         Clearly, it seems to me CNBM Group is targeting the

10:20AM 25   commercial opportunity to target sales, increase sales.

10:20AM 1    Increase sales means a better share price, a better offering

10:20AM 2    memorandum, better numbers that they can report to their

10:20AM 3    potential investigators.  That is the "why."

10:20AM 4        The "how" is increasing sales.  They increase sales by

10:20AM 5    pushing their subsidiaries, their controlled subsidiaries, BNBM

10:20AM 6    and Taihe, Taishan to increase sales in the United States.

10:20AM 7        Mr. Herman referenced their exhibit, PSC Exhibit 157.

10:20AM 8    I urge Your Honor to take a look at that.

10:20AM 9        It's a collection of direct and indirect sales made of

10:20AM 10   drywall to the United States.  It's quite a formidable

10:21AM 11   document.  It shows very clearly what was going on in this time

10:21AM 12   period.

10:21AM 13       Now CNBM lawyers say that plaintiffs haven't alleged

10:21AM 14   any conduct and actually harmed plaintiffs.

10:21AM 15       I think, to the contrary, as Mr. Levin pointed out,

10:21AM 16   there is an allegation that CNBM Group caused the export of the

10:21AM 17   drywall to the United States, the state of Louisiana, and in

10:21AM 18   its second amended complaint at paragraph 33, makes the same

10:21AM 19   allegation.  That CNBM Group's own activities, as I mentioned

10:21AM 20   for the purpose of increasing sales, improving their IPO and

10:21AM 21   their share price, caused the drywall that we're complaining

10:21AM 22   about, to be imported, distributed, delivered, supplied, and

10:21AM 23   inspected, marketed, and sold in the state of Louisiana.

10:21AM 24       That -- when the drywall comes into the state, that is

10:21AM 25   a completed violation, we allege, of the Louisiana Unfair Trade

10:22AM 1    Practices Act of importing defective drywall into Louisiana.

10:22AM 2          The last point, and I promised I would be brief, the

10:22AM 3    last point I wanted to make, Your Honor, and I just want to

10:22AM 4    before I leave this, I want to draw on here.  Here, March 23,

10:22AM 5    2006, is the time that the IPO becomes effective.

10:22AM 6          Prior to that time, CNBM Group can hardly be said to

10:22AM 7    be a mere investor.  And there is a lot of shipment going on

10:22AM 8    prior to that time.

10:22AM 9          Even after that time, they retain more than 60-some

10:22AM 10   percent of the shares, and certainly they are more than a mere

10:22AM 11   investor, even more than JP Morgan, who happened to buy some

10:22AM 12   shares.

10:22AM 13         The last point I wanted to make, and then I will move

10:22AM 14   and sit down, is the new case, the *Sachs* case, the *OBB* case and

10:22AM 15   Your Honor has clearly already read it, but here, we're not

10:23AM 16   talking about the sale of a Eurail pass, there was certainly

10:23AM 17   nothing defective about the Eurail pass.  Here, we're talking

10:23AM 18   about drywall.

10:23AM 19         It was installed in people's homes.  As the Court has

10:23AM 20   already found, the drywall, itself, was defective.

10:23AM 21         That is a completely different case than Supreme and

10:23AM 22   Chief Justice Roberts recently had in the last week in the case

10:23AM 23   from Austria.

10:23AM 24         Here, in that case, Chief Justice Roberts cited a

10:23AM 25   letter that Justice Holmes had written to Justice Frankfurter,

10:23AM 1      and you have probably already read that passage.

10:23AM 2              Justice Holmes said that to really learn the gravamen

10:23AM 3      -- I can't get that word right -- gravamen of the complaint,

10:23AM 4      you look to see where the boy's fingers were pinched.

10:23AM 5              In this case, the pinching happened here in the United

10:23AM 6      States.  It happened to the Louisiana citizens.  And of course,

10:23AM 7      Florida citizens, Texas citizens, Virginia citizens, and so on,

10:23AM 8      but the boy's fingers were pinched here in the United States,

10:24AM 9      and as a result of the commercial activity of CNBM Group,

10:24AM 10     pushing -- causing the sale of that drywall here.

10:24AM 11             The state also joins in the PSC's arguments about alter

10:24AM 12     ego, and their other arguments.

10:24AM 13             If you have no questions, Your Honor, that is -- I'm

10:24AM 14     finished.

10:24AM 15             Thank you very much.

10:25AM 16             THE COURT:  No.  All right.  Thank you very much.

10:25AM 17             Rebuttal?

        18             THE COURT REPORTER:  Could you just wait a moment?

10:25AM 19             MR. STENGEL:  Your Honor, I'm always differential to

10:25AM 20     the court reporters because I speak very quickly.  So if I

10:25AM 21     can't trust them, I'm in trouble.

10:25AM 22             A couple observations, and I will try and be brief.

10:25AM 23             The arguments here were -- to a certain extent, we are

10:25AM 24     like ships passing in the night.

10:25AM 25             I'm not sure we really joined issue on what the law is

10:25AM  1    or what the facts are that are relevant to the law.

10:25AM  2         I could be less favorable, and refer to sound and fury.

10:25AM  3         You heard lots of assertions, but the core issues that

10:25AM  4    we discussed when I was up here for the first time about the

10:25AM  5    need to close the link to every step of the chain, and to link

10:25AM  6    that, have the nexus with the sale of drywall, defective

10:25AM  7    drywall, in the United States, and I think that remains

10:25AM  8    unchallenged on what you saw.

10:25AM  9         A lot of information about the corporate structure.  A

10:25AM 10    lot of information about, well JP Morgan may have had shares --

10:26AM 11    all of that is interesting.  All of that is irrelevant.

10:26AM 12         It's commercial activity relating to the gravamen of

10:26AM 13    the case.  That is, the importation of allegedly defective

10:26AM 14    drywall.

10:26AM 15         That issue was not addressed.

10:26AM 16         Mr. Levin helpfully put up the allegations in the case.

10:26AM 17    I did not them with me, and I apologize for that, but they

10:26AM 18    confirmed, I believe, what I told Your Honor.  They were very

10:26AM 19    general in nature, and we have never said there are no

10:26AM 20    allegations of injury as to these claimants.

10:26AM 21         We're saying, you can't link those allegations of

10:26AM 22    injury to Group in a way that overcomes foreign sovereign

10:26AM 23    immunity.  That is the essence of what we argued.

10:26AM 24         It's largely unrebutted.  It didn't meet.

10:26AM 25         Less happily, Your Honor, and I will say, you know, I

10:26AM 1   think we made it pretty clear what the presumption of *Bancec*

10:26AM 2   required.  I think that stands.  We proved the ownership of

10:27AM 3   Group by the People's Republic of China.  Yes, SASAC has a

4   role.

10:27AM 5       People's Republic can't administrate its assets without

10:27AM 6   help.  That is what SASAC does.  It exercises the rates of the

10:27AM 7   shareholders for the People's Republic of China.

10:27AM 8       THE COURT:  Tell me a little bit more about SASAC.  Do

10:27AM 9   they say that SASAC owns 100 percent CNBM Group?

10:27AM 10      MR. STENGEL:  There is one document that I think in

10:27AM 11  translation here is an issue, although admittedly, it was a

10:27AM 12  document published by BNBM Group, I believe, in English.

10:27AM 13      But I think what that really refers to is the fact that

10:27AM 14  they operate as they were the shareholder of CNBM Group.

10:27AM 15      The People's Republic obviously doesn't have

10:27AM 16  independently a means to manage its investments.  But I don't

10:27AM 17  think under the corporate statement of Mr. Cao's testimony,

10:27AM 18  there is any legitimate dispute.  I think even if you looked at

10:27AM 19  the SASAC filing before this Court objecting to its

10:27AM 20  jurisdiction, you would see that as a matter of fact and law,

10:27AM 21  domestic law of China, that CNBM Group is owned 100 percent by

10:28AM 22  the People's Republic of China.

10:28AM 23      Now interestingly, we don't need to have this debate

10:28AM 24  because it's not actually a viable argument.  But *Patrickson v*

10:28AM 25  *Dole* did say you couldn't have subsidiaries protected by the

10:28AM  1    Foreign Sovereign Immunities Act.

10:28AM  2        What they didn't address, but is in *OBB*, OBB was in

10:28AM  3    fact owned by something called OBB Holdings.  It was an

      4    intermediate entity.

10:28AM  5        And in the first investment corporation of *Marshall*

10:28AM  6    *versus Fugian*, there was an intermediate entity.  If that

10:28AM  7    intermediate entity qualifies an organ of the state, or

10:28AM  8    sub-unit of the state, it's viewed as the state for ownership

10:28AM  9    purposes.

10:28AM 10        So while it's factually not relevant because SASAC

10:28AM 11    doesn't own CNBM Group, given that I think indisputably SASAC

10:28AM 12    would be treated as an instrumentality or organ of the People's

10:28AM 13    Republic of China, it's a difference without a distinction.

10:28AM 14        Although, I think the record is actually fairly clear

10:29AM 15    and unchallenged as to actual ownership.

10:29AM 16        I would also note that the plaintiffs didn't deal with

10:29AM 17    the prevailing law of this circuit in teams of what *Bancec*

10:29AM 18    requires, in terms of *Kelly versus Syria Oil*, or the other

10:29AM 19    cases, even *Hester,* which Mr. Levin cited repeatedly.

10:29AM 20        I was much taken aback by Mr. Levin's suggestion that

10:29AM 21    it may not have day-to-day control.  If they don't have

10:29AM 22    day-to-day control, Your Honor, we have just unfortunately

10:29AM 23    wasted a couple of hours of your life, because that's what they

10:29AM 24    need to show to overcome sovereign immunity.

10:29AM 25        Now, in closing, and there is much more I can say, but

10:29AM  1    I don't think it is necessary or useful for the Court, but

10:29AM  2    there is one thing I say, and I say this with some hesitation,

10:29AM  3    but the level of rhetoric in this courtroom has begun to

10:29AM  4    trouble me as someone who happily serves clients who are

10:29AM  5    located in China.

10:29AM  6         It's become all too easy in this Court to suggest that

10:29AM  7    an unidentified "they" lie -- manipulate the system.  I don't

10:30AM  8    think we would stand by attack on any group.  If we said those

10:30AM  9    things about Warren Buffett, you would probably admonish us

        10    about the rules of civility in this Court.

10:30AM 11         I would ask, Your Honor, merely to remind counsel that

10:30AM 12    we shouldn't be free and easy about accusations about parties,

10:30AM 13    by implication, counsel, or nations and peoples.  We have gone

10:30AM 14    too far down that road.

10:30AM 15         As a good example of that, there were many references

10:30AM 16    to things that were said by Taishan witnesses.  I don't

10:30AM 17    represent Taishan.  I wasn't there.  I don't know what

10:30AM 18    happened.  But the "they" goes directly against the admonition

10:30AM 19    I made to start, which I think Your Honor accepts, that this is

10:30AM 20    a game of precision.  We need to close the loop in each

10:30AM 21    juncture in the chain of causation, if one exists.

10:30AM 22         We submit that it does not.

10:30AM 23         But to say "they did this," or "they did that," without

10:30AM 24    saying who the "they" is and when "they" did it, makes that

10:30AM 25    meaningless for these purposes.

10:31AM  1          Finally, Your Honor, in terms of timing and schedule,

10:31AM  2   having heard the record now, having read it, obviously, we

10:31AM  3   tried to be helpful to the Court with the supplemental Cao

10:31AM  4   Declaration and of that of Professor Fong.

10:31AM  5          We don't think there is any reason for further delay

10:31AM  6   here.  And if that is the price of getting an immediate

10:31AM  7   decision, we would invite Your Honor to strike them.  We think

10:31AM  8   they were helpful.  We think they were relevant.  We think the

10:31AM  9   PSC suffered no prejudice by their submission.  And we think as

10:31AM 10   I detailed and cited in the record, we have other sources for

10:31AM 11   all of the information contained therein.  None of it should be

10:31AM 12   a surprise.

10:31AM 13          But my clients deserve a decision now.  We need to know

10:31AM 14   their status as sovereign entities and there is no need for

10:31AM 15   30 days or 45 days.  There is no need for additional discovery,

10:31AM 16   because as I mentioned in the opening, the PSC has failed to

10:31AM 17   demonstrate the basis for further discovery as to this matter.

10:31AM 18          We have a record.  They were able to talk to Your Honor

10:32AM 19   for over an hour with multiple exhibits, to take their

10:32AM 20   position.  And they claim, based on what the record they have

10:32AM 21   in front of them, they have an adequate basis to rebut

10:32AM 22   sovereign immunity.

10:32AM 23          I think clearly, they do not.  But nothing that they

10:32AM 24   have identified as additional information will change that

10:32AM 25   fact, Your Honor.  So I would invite, request on behalf of my

10:32AM  1      clients that the motion be granted today.

10:32AM  2              Thank you.

10:32AM  3              MR. HERMAN:  May it please the Court?

10:32AM  4              THE COURT:  Wait, wait, wait.  Just a moment.  You are

10:32AM  5      the one that attached the documents to your brief.

10:32AM  6              MR. STENGEL:  That's correct, Your Honor.

10:32AM  7              THE COURT:  You are the one that suggested that those

10:32AM  8      two documents be attached.

10:32AM  9              One is from a professor, and the other one is from a

10:32AM 10      witness.

10:32AM 11              The witness has already been deposed.  I don't know

10:32AM 12      whether that is necessarily helpful to re-depose him.

10:32AM 13              But the professor is a totally new person.

10:33AM 14              In reading it, as I told you yesterday, I found it

10:33AM 15      helpful, and it was relevant.  But I also found that by

10:33AM 16      admitting it, I would be depriving the plaintiffs of an

10:33AM 17      opportunity to rebut.

10:33AM 18              I thought we had an agreement that by and between

10:33AM 19      counsel of all parties, that they would have an opportunity to

10:33AM 20      either depose or rebut that new witness.  That is what I came

10:33AM 21      away with in our conversation.

10:33AM 22              MR. STENGEL:  That was our conversation yesterday, Your

10:33AM 23      Honor.  In fairness, I will take full responsibility, and I

10:33AM 24      have reconsidered where we were.

10:33AM 25              I don't think holding the record open is worth it.  I

10:33AM 1    think that is a disadvantage to my client that ought not be

10:33AM 2    borne.

10:33AM 3           I don't think we need that affidavit, by the way.  It

10:33AM 4    was offered in good faith.  I think it was helpful and

10:33AM 5    relevant, but if the cost of keeping that affidavit is further

10:33AM 6    delay, we would ask you to disregard it.

10:33AM 7           THE COURT:  Okay.

10:34AM 8           MR. LEVIN:  Your Honor, we would like to reconsider

10:34AM 9    that, and get back to you very shortly on it.

10:34AM 10          We just don't think you can drop into this courtroom

10:34AM 11   like Mary Poppins and then just remove yourself having tainted

10:34AM 12   the record.

10:34AM 13          THE COURT:  All right.  We have another -- I will let

10:34AM 14   you all think about it, and give me the benefit of your view.

10:34AM 15   I will rule on it one way or the other.

10:34AM 16          MR. HERMAN:  The problem is, you have read it, and you

10:34AM 17   thought it was helpful.

18          THE COURT:  Yeah.

10:34AM 19          MR. HERMAN:  Now if it's taken out, we have got a

10:34AM 20   problem.

10:34AM 21          I do want to thank counsel opposite, and particularly

10:34AM 22   the Court, for agreeing to begin at eight o'clock this morning.

10:34AM 23          Whoever the "they" is I referred to, I'm sure I was

10:34AM 24   accurate, and I did not include opposing counsel.

10:34AM 25          I have a great deal of disdain for Taishan and BNBM.

10:34AM 1        THE COURT:  All right.  With regard -- counsel makes a

10:34AM 2  point.  I wouldn't allow you to cast aspersions on opposing

10:35AM 3  counsel because both of you all are officers of the Court.

10:35AM 4        But henceforth, let's talk about the issues rather than

10:35AM 5  whether or not somebody lied or didn't lie.  That is not

10:35AM 6  helpful to me one way or the other.

10:35AM 7        Harry, you have something?

10:35AM 8        MR. ROSENBERG:  Yes, Your Honor.  If it please the

10:35AM 9  Court, good morning, Your Honor.

10:35AM 10       We would like to just raise with the Court a separate

10:35AM 11  issue, Your Honor, which relates to a pleading filed by the PSC

10:35AM 12  yesterday evening.

10:35AM 13       And if the Court please, Ms. Eikhoff, who represents

10:35AM 14  Taishan, would like to address the Court initially on that

10:35AM 15  matter.

16        THE COURT:  Okay.

17        MR. ROSENBERG:  Thank you, Judge.

18        MS. EIKHOFF:  Thank you, Your Honor.  I'm Christy

10:35AM 19  Eikhoff here on behalf of Taishan.

10:35AM 20       Your Honor, yesterday in a conference that we had in

10:35AM 21  chambers prior to the Court's regularly scheduled status

10:35AM 22  conference, we talked about the parties filing motions and the

10:35AM 23  timing of responses to those motions.

10:36AM 24       In that conference, the Court directed counsel that if

10:36AM 25  they are going to file a motion, they should call the other

10:36AM 1    side and let them know so the parties can work out a time table

10:36AM 2    for both a response and a hearing.

10:36AM 3         Just a few hours later, we received by e-mail a filing

10:36AM 4    notice that the PSC had filed a motion for sanctions, that we

10:36AM 5    had no idea it was coming.

10:36AM 6         It came in the context of filings related to the Peng

10:36AM 7    discovery hearing, which this Court is well familiar with.

10:36AM 8    It's background is on September 17th in a conference we had

10:36AM 9    with the Court, and this Court had questions about Mr. Peng and

10:36AM 10   his documents and his whereabouts, and set an evidentiary

10:36AM 11   hearing on that issue.

10:36AM 12        Importantly, that hearing was not set on the PSC's

10:36AM 13   motions, but rather at the Court's directive.

10:36AM 14        Also, importantly, since September 17th, the PSC has

10:36AM 15   made several attempts to expand the scope of those proceedings

10:36AM 16   well beyond what the Court directed.  They have wanted it to be

10:37AM 17   about other discovery issues, about alter ego, about the other

10:37AM 18   defendants in this case, and this Court has rejected that

10:37AM 19   numerous times, both from the bench, and in written orders.

10:37AM 20        The hearing is about Mr. Peng and his discovery in 2015

10:37AM 21   in the contempt tract of these proceedings.

10:37AM 22        We had opening statements on November 17th.  After that

10:37AM 23   we had another conference with the Court to talk about whether

10:37AM 24   more briefing on the issue would be necessary.  And the

10:37AM 25   agreement that was made with the Court's endorsement was that

10:37AM 1    the parties would merely exchange -- sorry, merely submit to

10:37AM 2    this Court competing findings of facts and conclusions of law.

10:37AM 3        That was included in the order that set the pretrial

10:37AM 4    schedule.

10:37AM 5        Now, last night the motion for sanctions that we

10:37AM 6    received a week prior to the closing arguments that we have set

10:38AM 7    for next Tuesday, the PSC filed a motion for sanctions that

10:38AM 8    amounts to seeking a virtual death penalty in this case.

10:38AM 9        They have asked for the striking of all of the defenses

10:38AM 10   that Taishan presented on damages at the June 9th hearing.

10:38AM 11       They have requested an adverse finding of alter ego

10:38AM 12   that affects all of the other defendants in this case, and all

10:38AM 13   of the issues, including all those that were addressed today in

10:38AM 14   Court.

10:38AM 15       And in addition to that, a virtual waiver of all

10:38AM 16   privilege, and a claim for a year's worth of attorneys fees and

10:38AM 17   costs.

10:38AM 18       Now speaking for Taishan only, Your Honor, we can

10:38AM 19   respond to this.  We were sandbagged by it.  We were surprised

10:38AM 20   by it, but we can plan on responding to it orally next week on

10:38AM 21   Tuesday at the hearing that's already been set for closing

10:38AM 22   argument.

10:38AM 23       We can file a written response to the motion for

10:38AM 24   sanctions on Monday or in about a week as the Court directs.

10:39AM 25       But, by doing this, and particularly by seeking

10:39AM  1    sanctions that have an effect on the other defendants, it has

10:39AM  2    thrown a monkey wrench into the proceedings that we thought

10:39AM  3    were very clear and defined.

10:39AM  4            And I defer to the co-defendants as to how they propose

10:39AM  5    to respond to it to the extent that this motion now affects

10:39AM  6    them as well.

10:39AM  7            THE COURT:  Let me hear from plaintiffs.  What is the

10:39AM  8    answer to that?

10:39AM  9            MR. LEVIN:  Your Honor, we didn't mean to upset her

10:39AM 10    that much.

10:39AM 11            There was findings of fact and conclusions of law

10:39AM 12    pursuant to it, and towards what end?

10:39AM 13            So we requested relief from the Court.  And the way you

10:39AM 14    get relief from the Court is you file a motion.  You have an

10:39AM 15    order attached to it.  They respond.

10:39AM 16            I would be happy to work out any schedule for

10:39AM 17    opposition to the motion.  But we looked at the findings of

10:39AM 18    fact and conclusions of law, and we said to ourselves, "What do

10:40AM 19    we want and what do they give us?"  And that was the nature of

10:40AM 20    the motion.

10:40AM 21            We're asking the Court now --

        22            THE COURT:  Okay.  When I --

10:40AM 23            MR. LEVIN:  Most of the times when I do things like

10:40AM 24    that, and the defendant doesn't agree, they deny it.

10:40AM 25            THE COURT:  I understand.  I'm going to strike the

10:40AM 1    motion.

10:40AM 2         If you want to file something, talk first before you

10:40AM 3    file it.

10:40AM 4         I want you all to meet and confer before any motion is

10:40AM 5    filed.

10:40AM 6         I'm going to strike the motion.

10:40AM 7         MR. FENTON:  Your Honor, may I just be heard on a

8    related issue?

9         THE COURT:  Yeah.

10:40AM 10        MR. FENTON:  On behalf of BNBM?

11        Rick Fenton on behalf of BNBM, Your Honor.

10:40AM 12        In addition to the motion, and Your Honor has already

10:40AM 13   ruled on that, in the findings of fact and conclusions of law

10:40AM 14   that were submitted by the PSC in connection with the

10:40AM 15   spoliation motion, they asked for a finding of a -- I will

10:40AM 16   quote the motion, or I will quote the findings:  "A rebuttable

10:40AM 17   presumption that Taishan is the alter ego of the BNBM and CNBM

10:41AM 18   entities, and the rebuttable presumption is now established,

10:41AM 19   which shall want to hold for the enforcement of any final

10:41AM 20   judgement entered in relation to the June damages hearing, and

10:41AM 21   otherwise on behalf of the Taishan homeowners; and two, apply

10:41AM 22   to the upscreen BNBM and CNBM in their pending motions for

23   dismissal.

10:41AM 24        Now nowhere in this spoliation hearing until late last

10:41AM 25   night when we got these proposed findings of fact or

10:41AM 1    conclusions of law, were we on notice that any relief was being

10:41AM 2    sought against BNBM or CNBM.

10:41AM 3          And to slide this in after an evidentiary hearing in

10:41AM 4    which we did not participate, and after the 11th hour, raises,

10:41AM 5    I think, concerns about propriety, but more importantly, about

10:41AM 6    due process.

10:42AM 7          We can respond to this on paper, Your Honor, but I know

10:42AM 8    that this is set for final argument next week.

10:42AM 9          If this is part of the relief that is being requested,

10:42AM 10   certainly BNBM and CNBM have a right to be heard.

10:42AM 11         I know that Mr. Barr and I both have commitments next

10:42AM 12   week, both in this and other matters.  We cannot be at that

10:42AM 13   hearing.

10:42AM 14         But I think it's improper, and I think that the

10:42AM 15   requested findings should be stricken, just as Your Honor

10:42AM 16   struck the motion.

10:42AM 17         THE COURT:  Yeah.  I looked at the spoliation issue as

10:42AM 18   being between the Taishan Group.  I really didn't look upon it

10:42AM 19   as being broad.

10:42AM 20         I'm not saying that that is not a possibility, but from

10:42AM 21   the standpoint of findings, I'm really looking for findings,

10:42AM 22   vis a vis Taishan, as opposed to anybody else.

10:42AM 23         Now, it may -- it depends upon whether or not Taishan

10:43AM 24   is a subsidiary or an alter ego or something of that sort, but

10:43AM 25   that is not really the issue before me from the standpoint of

10:43AM 1    spoliation.  I really looked upon spoliation as here is a

10:43AM 2    person who is employed, either a paid employer or employee or a

10:43AM 3    non-paid employee, but it looked to me like, at least some of

10:43AM 4    the facts indicated, that he had some economic or job-related

10:43AM 5    responsibility during the time that Taishan said:  "He's not

10:43AM 6    working for us.  He has nothing to do with us.  We don't know

10:43AM 7    where he is."  That was the issue that I was focusing on,

10:43AM 8    really.

10:43AM 9         MR. FENTON:  I just want to confirm, Your Honor, that

10:43AM 10   no relief will be sought against BNBM, or CNBM on that motion.

10:43AM 11   The alter ego issues will be dealt with in February.

10:44AM 12        THE COURT:  Yeah.  I'm looking upon the issue of

10:44AM 13   whether or not spoliation vis a vis Taishan.  The significance

10:44AM 14   of that, you know, I haven't focused on that yet.  I may or may

10:44AM 15   not have, but if they seek a significance of that, then you

10:44AM 16   will have an opportunity to respond.

10:44AM 17        MR. FENTON:  Thank you very much, Your Honor.

10:44AM 18        THE COURT:  Okay.

10:44AM 19        I think I have a meeting with somebody after this.  Do

10:44AM 20   you have a meeting with Taishan or somebody?

21        Thank you very much.

10:44AM 22        Court is in recess.

10:44AM 23        CASE MANAGER:  All rise.

24

25                              *    *    *

REPORTER'S CERTIFICATE

I, Terri A. Hourigan, Certified Realtime Reporter,
Official Court Reporter for the United States District Court,
Eastern District of Louisiana, do hereby certify that the
foregoing is a true and correct transcript to the best of my
ability and understanding from the record of the proceedings in
the above-entitled and numbered matter.


                              *s/Terri A. Hourigan*
                              _____

                              Terri A. Hourigan, CRR, RPR
                              Certified Realtime Reporter
                              Registered Professional Reporter
                              Official Court Reporter
                              United States District Court
                              Terri_Hourigan@laed.uscourts.gov