UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE -MANUFACTURED          MDL NO. 2047
DRYWALL PRODUCTS LIABILITY
LITIGATION                            SECTION: L

                                      JUDGE ELDON FALLON
                                      MAGISTRATE WILKINSON

# Supplemental Opinion

William and Kelly Wayne owned the property located at 576 Huseman Lane, Covington, Louisiana, and Regions Bank held a mortgage on the property. Regions foreclosed and, in September 2011, sold the property at auction. Thus, the Waynes no longer own the property, and they admit that "it is impossible to determine the percentage of Knauf drywall in the home."[1]

On June 13, 2017, the Waynes moved for an award of a Lump Sum Payment pursuant to the Knauf Settlement Agreement.[2] On November 30, 2017, Knauf filed an opposition to the motion.[3] On January 3, 2017, the Waynes filed a response to Knauf's opposition.[4]

On January 2, 2017, the Court referred the matter to the Special Master.[5] That same day, the Special Master sent an email to the parties stating:

---

[1] R. Doc. 21109, p.5.

[2] R. Doc. 21060. Although the motion is dated June 13, 2017, it was not filed into the record until November 6, 2017.

[3] R. Doc. 21085.

[4] R. Doc. 21109.

[5] R. Doc. 21107.

Friends:

As you may know, I am serving as the Special Master in this matter. Judge Fallon has referred the attached motion to me so that I can make a recommendation concerning its disposition.

It appears that the parties have fully briefed the motion. Please let me know (by noon on Friday, January 5) if there is anything more that you wish to submit before I make my recommendation.

Thank you.

Dan Balhoff[6]

Later that same day, Mr. Wayne responded that he would like to formally submit a video of a walkthrough of his property as evidence.[7] The Special Master allowed the submission, and Mr. Wayne provided an internet link.[8] The video was not dated, but appeared to show the videographer's (presumably Mr. Wayne's) observations of the home while it was under construction, i.e., before the drywall was initially installed. The video shows glimpses of drywall stacks in passing (the video's purpose obviously is something other than recording the drywall[9]), but the fronts and backs of the drywall sheets are not visible (i.e., the markings are not readable). The next day, Mr. Wayne submitted a still shot from the video showing the stacks of drywall.[10] The edges of the stacked drywall are visible, and some of the drywall appears to have blue and gold edge tape which is used by some of the Knauf companies. But not all Knauf drywall is KPT drywall, and

---

[6]Exhibit 1.

[7]Exhibit 2.

[8]Exhibit 3.

[9]In all likelihood the video was recorded before Mr. Wayne knew that there may be a Chinese drywall concern.

[10]Exhibit 4.

claimants against the Knauf Settlement Agreement can only recover if they used KPT drywall. The settlement specifies that blue and gold edge tape is not sufficient proof of KPT.[11]

On January 25, 2018, the Special Master issued his Opinion and Decree in this matter.[12] That same day, Mr. Wayne sent an email to the Special Master requesting a telephone call to discuss the Opinion and Decree.[13] The Special Master called Mr. Wayne later that afternoon.[14] During the course of the conversation, the Special Master informed Mr. Wayne that he could ask the Court to review the Special Master's decision.

On February 14, 2018, the Waynes filed an objection to the Special Master's decree.[15] On March 13, 2018, Knauf filed an opposition to the Waynes' objection.[16] The Court has now asked the Special Master to address additional arguments that the Waynes have made in their objection.

The Knauf Defendants have entered into a settlement agreement[17] which provides benefits to members of three subclasses: the Residential Owner Subclass, the Commercial Owner Subclass, and the Tenant Subclass.[18] Collectively, the Residential Owner Subclass and the Commercial Owner Subclass are known as the Owner Subclasses.[19] The Waynes seek benefits as Owner Subclass

---

[11]R. Doc. 12061-10, p.5.

[12]Exhibit 5.

[13]Exhibit 6.

[14]Exhibit 7.

[15]R. Doc. 21185.

[16]R. Doc. 21243.

[17]R. Doc. 16407-3.

[18]R. Doc. 16407-3 §§ 1.1.2.1, 1.1.2.2, and 1.1.2.3.

[19]R. Doc. 16407-3 § 1.1.2.2.

members.

The settlement gives an Owner Subclass member three options for remediation benefits: Option 1 (Section 4.3.1), pursuant to which Knauf (through its Lead Contractor, Moss) will remediate the property, pay a Lump Sum Payment to the owner, and pay a Delay Period Payment to the owner; Option 2 (Section 4.3.2), pursuant to which Knauf will reimburse the owner part of the cost for remediating the property; and Option 3 (Section 4.3.3), pursuant to which Knauf will pay a cash sum to the owner, whether or not the property is remediated.

By their own terms, all three options (set forth in Sections 4.3.1, 4.3.2, and 4.3.3, respectively) are available to KPT Property Owners, defined as owners of "Affected Property in which the KPT Drywall Percentage exceeds 90%." However, the next paragraph of the settlement agreement (Section 4.3.4) extends the right to claim benefits to Mixed Property Owners (defined as those who own "Affected Properties in which the KPT Drywall Percentage is less than or equal to 90%"), but only for Option 2 and Option 3 benefits – *not* Option 1 benefits: "Mixed Property Owners may select only the Self-Remediation Option (as set forth in Section 4.3.2) or the Cash-Out Option (as set forth in Section 4.3.3)."

Of course, the purpose of the settlement is to offer benefits to claimants to the extent that they have KPT drywall. To this end, the settlement adopts protocols which are designed to prove *whether* the property has KPT drywall and, if so, *what percentage* of the property's drywall is KPT drywall. In other words, these protocols represent part of a claimant's burden of proof.

If an Owner Subclass member chooses Option 1 or Option 3 (i.e., the property has not already been remediated), he must satisfy the Inspection Protocol.[20] Both Option 1 (whereby the

---

[20] R. Doc. 16407-3 § 4.4.1. The Inspection Protocol is attached as Exhibit C to the Knauf Settlement Agreement. R. Doc. 16407-3 § 1.22; R. Doc. 16407-6.

Owner Subclass member will turn the property over to Moss for remediation) and Option 3 (whereby the Owner Subclass member will accept a discounted Lump Sum Payment irrespective of remediation) presuppose that the Owner still has control over the property, and that the drywall is still in place. The settlement agreement and the Inspection Protocol ensure that Court-approved inspectors[21] determine the presence and percentage of KPT drywall before an Owner Subclass member can recover any Option 1 or Option 3 benefits.

Unlike Option 1 and Option 3 claimants, Option 2 claimants own properties where the drywall in question is no longer in place. In other words, the key evidence that supports the claim – the drywall itself – has been moved. Recognizing that a post-remediation inspection cannot provide the same level of confidence as a pre-remediation inspection, the settlement requires alternative proof. The Option 2 claimant must satisfy the Already Remediated Properties Protocol,[22] which incorporates, among other things, the rules for preservation of physical evidence outlined in PTO 1(B),[23] which the Court adopted on October 9, 2009. Among other things, PTO 1(B) imposes upon claimants a duty to maintain a photographic record:

> In addition to taking . . . samples, the Parties shall photograph the backside of each Chinese drywall board immediately after it is removed on-site, and, document on a floor plan, building diagram, or other similar form of documentation, the location of each full or partial Chinese drywall board removed from the property and its photograph. Photographs of the wall sections should be taken so that any markings on the backside of the drywall sections are most clearly

---

[21] R. Doc. 16407-8.

[22] R. Doc. 16407-3 § 4.3.7.1. The Already Remediated Properties Protocol is attached as Exhibit A to the Knauf Settlement Agreement. R. Doc. 16407-3 § 1.4; R. Doc. 15742-3.

[23] R. Doc. 15742-3 § IV.D.4; R. Doc. 337 (PTO 1(B)).

visible in the photographs.[24]

If a claimant does not comply with PTO 1(B), he cannot recover settlement benefits.

These requirements are not a matter of mere formality. As the Court has repeatedly noted, not all drywall is reactive, and not all reactive drywall was manufactured by Knauf. The Knauf Settlement Agreement benefits only those claimants whose property had KPT drywall. Furthermore, as is apparent from the Mixed Property provisions, the settlement agreement's benefits can depend on the percentage of KPT drywall. Because the agreement is a settlement of Knauf's (as opposed to other defendants') exposure, its provisions are more generous to a claimant with 100% KPT drywall than to a claimant with 10% KPT drywall.

To summarize, an Owner Subclass member who has not yet remediated can recover Option 1 or Option 3 benefits if he submits his property to the Inspection Protocol. An Owner Subclass member who has already remediated can recover Option 2 benefits if he satisfies the Already Remediated Properties Protocol.

But what about claimants, such as the Waynes, who once owned the property and lost it to foreclosure? Such claimants no longer control the property, and therefore can neither submit the property to the Inspection Protocol and nor gather proof to satisfy the Already Remediated Properties Protocol. The Knauf Settlement Agreement sets forth two possibilities for such claimants to recover benefits. One is the Other Loss Fund,[25] which is not at issue in the Waynes' motion.[26] The other is found at Section 4.3.5.1 of the Knauf Settlement Agreement:

---

[24]R. Doc. 337 (PTO 1(B)) ¶ A.1.

[25]R. Doc. 16407-3 § 4.7.1.3.

[26]The Waynes already recovered from the Other Loss Fund, but that recovery is not at issue here.

> For Foreclosed Properties, (a) the Mortgagee shall be entitled to the benefits under Sections 4.3.1, 4.3.2 or 4.3.3, except for the Other Covered Expenses, but only if the Mortgagee became the Owner after foreclosure and remains the Owner of the Affected Property and the Mortgagee provides a release to the Knauf Defendants and Other Releasees; and (b) the Owner prior to the foreclosure shall be entitled to the Lump Sum Payment under Section 4.3.1.1, but not the Delay Period Payment under Section 4.3.1.2.

Interpreting this provision in his previous Opinion and Decree, the Special Master stated:

> An example helps explain how this provision works. Assume that a property owner can satisfy the requirements of Options 1, 2, or 3. Further assume that the property owner defaults on his loan, and the mortgagee forecloses. Section 4.3.5.1 divides the entitlement to the benefits between the former property owner and the mortgagee, and it sets forth the procedural hurdles to recovery.
>
> Conversely, Section 4.3.5.1 does not *create* new benefits that would not have existed but for the foreclosure. In other words, if a property owner could have recovered Option 1 benefits (such as a Lump Sum Payment) but for the foreclosure, Section 4.3.5.1 sets forth how he (or the mortgagee) can recover those benefits after the foreclosure. Conversely, if a property owner could not have recovered Option 1 benefits (including a Lump Sum Payment) but for the foreclosure, the fact that a foreclosure occurs does not *create* a right to Option 1 benefits out of thin air.[27]

The Waynes disagree. They contend that Section 4.3.5.1 does not simply divide benefits, but creates them. They argue that subprovisions (a) and (b) are completely independent of one another, such that a former Owner can recover a Lump Sum Payment whether or not the mortgagee has satisfied the requirements of subprovision (a). Utilizing this construction, a Mortgagee that "became the Owner after foreclosure and remains the Owner of the Affected Property and . . . provides a release to the Knauf Defendants" would be entitled to a Lump Sum Payment by virtue of subprovision (a), and "the Owner prior to the foreclosure" would be entitled to the same Lump

---

[27]Exhibit 5.

Sum Payment by virtue of subprovision (b). The mere fact of foreclosure would obligate Knauf to pay two duplicate Lump Sum Payments instead of one. The Special Master continues to believe that the better construction, one that does not result in duplicate benefits, flows from reading Section 4.3.5.1 as a whole.

Knauf's legitimate concern for avoiding the payment of duplicate benefits explains why the settlement agreement requires that "the Mortgagee provide[] a release to the Knauf Defendants and Other Releasees" as a prerequisite to the payment of benefits on a foreclosed property. If Knauf pays even part of a claim on a property without such a release, a subsequent owner might demand an identical payment at a later date. This is not the kind of "global peace" that defendants entering class settlements hope to achieve.

Even if the Waynes' interpretation is accepted – i.e., if the Court does not require a release from the Mortgagee – the Waynes still must prove that the Knauf Settlement Agreement affords them benefits. At the very least, they must prove that the property contained KPT drywall, and they must prove the percentage of such drywall. They admit that they cannot do so, stating "it is impossible to determine the percentage of Knauf drywall in the home."

Consider this. An Option 1 claimant can recover a full Lump Sum Payment, but he must prove the presence of 90% KPT drywall. An Option 2 claimant can recover a full Lump Sum Payment (or a percentage of a Lump Sum Payment if he owns a Mixed Property), but he must have already remediated the property and he must satisfy PTO 1(B). An Option 3 claimant can recover a lesser Lump Sum Payment (or a percentage of a lesser Lump Sum Payment if he owns a Mixed Property), but must (if the property has been mortgaged) obtain a release from the Mortgagee. The Waynes cannot prove the presence of 90% KPT drywall (thus precluding an Option 1 recovery),

they cannot satisfy PTO 1(B) (thus precluding an Option 2 recovery), and they have not produced a release from the Mortgagee (thus precluding an Option 3 recovery). Nevertheless, they contend that they are entitled to a full[28] Lump Sum Payment.

The principal goal of the settlement agreement is remediation. Options 1, 2, and 3 promote this goal. Section 4.3.5.1 explains what happens to the remediation benefits when the property changes hands due to foreclosure. That is all it does.[29]

The Waynes have not proved that they are entitled a Lump Sum Payment under the terms of the settlement agreement. Their claim should be denied.

Dated: July 17, 2018　　　　　　　　　　　　　　　　　　/s/ Daniel J. Balhoff
　　　　　　　　　　　　　　　　　　　　　　　　　　　　Daniel J. Balhoff, Special Master

---

[28]The Waynes assert that a partial payment, such as that envisioned for the owners of Mixed Properties, would not be enough. In any event, they have failed to prove entitlement to a Lump Sum Payment of any kind.

[29]Of course, other features of the settlement provide benefits beyond remediation. In fact, Section 4.7.1.3 of the settlement agreement allows owners who lose their property to foreclosure to recover benefits, representing lost equity, from the Other Loss Fund.