UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | : : : : : | MDL NO. 2047<br><br>SECTION:  L<br><br>JUDGE FALLON |
| THIS DOCUMENT RELATES TO: ALL CASES | : : : | MAG. JUDGE WILKINSON |

<u>GARY, NAEGELE & THEADO, LLC'S OBJECTIONS TO
THE FINAL RECOMMENDATION OF THE
MAJORITY OF THE FEE COMMITTEE REGARDING
ALLOCATION OF THE COMMON BENEFIT FEES</u>

The undersigned law firm of Gary, Naegele & Theado, LLC (hereinafter "GNT") respectfully hereby submits its Objections to the Final Recommendation of the Majority of the Fee Committee (hereinafter "Majority FC") Regarding Allocation of the Common Benefit Fees [D.E. 21455] pursuant to Pre-Trial Order 28 (hereinafter "PTO 28").

As is evidenced by Exhibit C [D.E. 21455-3] to the Majority FC's Final Recommendation Regarding Allocation of the Common Benefit Fees, as of February 19, 2014, GNT's Total Lodestar was $243,127.50, and its' Held Costs were $13,979.54 (which sum includes $10,000.00 in common benefit assessments and $2,517.66 in Court Liaison Fees); copies of GNT's fee and expense statements are attached hereto as Exhibits 1, 2, and 3.

Pursuant to Exhibit A [D.E. 21455-1] to the Majority FC's Final Recommendation Regarding Allocation of the Common Benefit Fees, the Majority FC has recommended that GNT be awarded a total of $47,000.00 as common benefit fees.  The remainder of the work done by GNT – $204,406.30 – in investigating the case prior to the inception of the MDL, was excluded by the Majority FC as individual case work.

GNT is hereby requesting that all of its pre-MDL time be reinstated and considered in the determination of GNT's common benefit fee award. GNT is entitled to be paid for its pre-MDL work, both factually and legally, and the Court certainly has the discretion and authority to award pre-MDL time.

**Background**

To the undersigned's knowledge, I was the first attorney to discover the problem of defective drywall in Florida homes. In January of 2009 a home inspector advised the undersigned that he had discovered an unusual phenomenon in the homes he was inspecting, well before the term "Chinese Drywall" was coined. Soon after discovering this, the undersigned contacted Richard Lewis of Hausfeld, LLP, to ask if he was interested in co-counseling the case. Mr. Lewis subsequently suggested we invite Arnold Levin of Levin, Fishbein, Sedran & Berman to assist us. Not long after, Ervin Gonzalez of Colson Hicks Eidson was brought on board to join our team, as were Richard Serpe and Richard Stimson. A copy of that team's February 10, 2009, Draft Master Working Agreement is attached hereto as Exhibit 4.

Much of the work done by the initial team of attorneys listed above and GNT, prior to the appointment of Lead and Liaison Counsel, involved extensive preliminary investigations to determine if there was, in fact, a claim to be brought concerning the defective drywall. Our initial case was a class action captioned *Vickers, et al. vs. Knauf Gips KG, et al.*, Case No. 09-20510, filed on March 2, 2009, in the U.S. District Court, Southern District of Florida. This case, which was ultimately transferred to New Orleans and blended into MDL No. 2047 [D.E. 1], was not an individual case but rather the class action that laid the foundation for the MDL and what followed.

The initial team of attorneys listed above and GNT, held regular meetings as we continued to learn more about the defective drywall, while obtaining substantiation for possible claims.  The team and GNT's initial groundwork laid the foundation for much of the protocol accepted by the MDL.  The undersigned spent a significant number of hours traveling throughout Florida, meeting with environmental scientists/experts.  Those experts performed a variety of tests to determine the nature of the phenomenon that was impacting these homes, whether a claim existed, and, if so, the origin of said claim.  The undersigned inspected a number of homes to determine if protocols could be established to identify homes experiencing the drywall phenomenon.  What was determined is that blackened air conditioning coils and electrical wiring, failing appliances, a distinctive gray drywall color, and particular odors were present in the homes which contained corrosive drywall.  A significant amount of the undersigned's time was spent meeting and consulting with environmental experts to investigate which various types of in-house testing and lab tests could determine whether the drywall was reactive.  This included placing samples of drywall into test tubes and direct copper insertions into the drywall along with other efforts, both successful and unsuccessful, to measure corrosive drywall.  The undersigned arranged for and coordinated a number of homes to be inspected by Dr. Townsend of the University of Florida who was independently conducting a comprehensive study of the drywall problems in Florida.  Additionally, the undersigned had numerous meetings and communications with representatives from the Florida Department of Health, as well as with various experts in the medical field.  The purpose of these meetings was to establish a basis for potential medical monitoring of homeowners and occupants of various homes containing defective drywall, to track the adverse health effects being caused by prolonged exposure to the defective drywall, and to identify short term symptoms from exposure.

Further, the undersigned was involved with identifying and investigating the chain of distribution of the drywall from Knauf and other importers/manufacturers of Chinese drywall, along with investigating their U.S. importers, suppliers, and home builders. The foundation for some of the protocol adopted by the MDL, are undoubtedly the product of much of the time and efforts expended by not only the undersigned but by other members of the initial team of attorneys who were present in Florida at the inception of the litigation.

After the organization of Lead and Liaison counsel and the Steering Committee, GNT was given no assignments of any significance and, as a result, the work done by GNT thereafter reflects a much more peripheral involvement in the litigation, than was the fact initially. Subsequently, Mr. Lewis approached the undersigned and asked if GNT was amenable to stepping down from the MDL; the undersigned did so in consideration for a new fee-sharing agreement in compromise which GNT entered into with Mr. Lewis' firm, Hausfeld LLP, a copy of which is attached as Exhibit 5. Thereafter, GNT also entered into a separate fee-sharing agreement with Colson Hicks Eidson, a copy of which is attached hereto as Exhibit 6.

After stepping down from the MDL and entering into this second set of fee-sharing agreements, GNT's work was no longer at the center of the case. It is worth noting, however, that after organization of the MDL the undersigned continued to do extensive non-billable work to determine whether there was a link between defective drywall imported from China and the defective drywall subsequently found in homes throughout Florida which we later learned was manufactured in the U.S. The undersigned attended hearings (and subsequently submitted testimony) before the Senate Subcommittee on Consumer Protection, Product Safety, and Insurance. The undersigned was invited by a staff member of that Committee to submit comments and to ask questions related to the issue of whether the well-documented problems

associated with Chinese Drywall might also extend to American Drywall. The time expended to substantiate the difference between defective Chinese Drywall and American Drywall was an essential component of the Chinese Drywall litigation.

In addition, at the request of Richard Lewis, GNT's paralegal expended a great deal of time throughout the course of the litigation, assisting with the completion and compilation of Plaintiff Profile Forms for all claimants who were included in the various Omnibus Complaints that were filed in the Chinese Drywall Litigation. The undersigned has been informed by the Fee Committee that since the work performed by GNT's paralegal was for the Omnibus Complaints, it was considered individual work as opposed to common benefit work and, as such, all of that time was also disallowed by the Fee Committee. As the undersigned informed the Fee Committee, the request for this work came from Mr. Lewis who was active in the post-MDL work. GNT thus assumed this was a request for common benefit work, not work on Mr. Lewis's individual cases.

GNT reviewed its time and expenses in February of 2014. At that time, GNT's paralegal exchanged a number of emails with Philip Garrett and his assistant, Bridgett Rosa, to ascertain from them exactly which of GNT's fee and expense submissions were not in compliance with PTO 28. As a result, GNT revised its submissions, removing approximately 1,420 hours that were not in compliance, and GNT's paralegal then resubmitted all the other time and expenses which Mr. Garrett and/or Ms. Rosa had indicated were legitimate time and expenses for which reimbursement could be sought. After the undersigned's meeting with the Fee Committee, GNT's paralegal again communicated with Mr. Garrett by e-mail on October 22, 2014, for the purpose of further amending GNT's submitted common benefit time and expenses to conform to the Fee Committee's recommendations; a copy of that email is attached as Exhibit 7. A copy of

Philip Garrett's November 3, 2014 e-mail, informing GNT that it was PTO 28 Compliant is attached as Exhibit 8.

Also attached are Exhibits 9, 10, and 11 which are copies of the undersigned's 1st and 2nd Affidavits, submitted to the Fee Committee pursuant to PTO 9 and 9A, as well as a copy of the undersigned's follow-up letter to the Fee Committee, sent July 23, 2014.

**GNT's Position Regarding the Majority FC's Decision to Disallow GNT's Pre-MDL Time**

It is GNT's position that work done by the originating attorney is to be considered common benefit work even if it is done prior to the formation of the MDL. The originating attorney is in a unique position, and all initial work investigating and determining the underlying facts central to the case is a common benefit for all. GNT has litigated major class actions since the 1970's. We are not newcomers or interlopers. GNT has handled complex class actions as lead counsel, including cases of first impression.

**There is No Prohibition to Pre-MDL Time Being Recognized as Effort Performed for the Common Benefit of the Certified MDL Class**

The Majority FC's recommended common benefit fee award to GNT represents 16% of GNT's total lodestar. The 84% remainder of the work done by GNT, in investigating the case prior to the inception of the MDL, was excluded by the Majority FC as individual case work. There is no prohibition to pre-MDL time being recognized as effort performed for the common benefit of the certified MDL class. In fact, there are opinions that support pre-MDL work being considered in fee awards and distributions. *Saul v. Plaintiffs' Steering Comm.* (*In re Copley Pharm., Inc.*), 10th Cir. No. 99-8062, 2000 U.S. App. LEXIS 25245 (Oct. 10, 2000); *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, D.Minn. No. 05-1708, 2008 U.S. Dist. LEXIS 103736 (Dec. 23, 2008); *In re Actos (Pioglitazone) Prods. Liab. Litig.*, 274 F. Supp. 3d 485 (W.D. La. 2017); *In re Copley Pharm., Inc.*, 50 F. Supp. 2d 1141 (D. Wyo. 1999).

**<u>Opinions Supporting Pre-MDL Work Being Considered in Common Benefit Fee Awards</u>**

In *Saul v. Plaintiffs' Steering Comm.*, the plaintiff's attorney, Lewis Saul, appealed a fee award for a class action settlement. Mr. Saul argued that the trial court's review of his pre-MDL work was inaccurate and that there was no proposition that pre-MDL work central to the case should be discounted, and he provided supporting evidence. While the appellate court did not find in his favor, it noted that "Saul's arguments are far from frivolous." 2000 U.S. App. LEXIS 25245 at *16. However, the arguments were "insufficient to establish an abuse of discretion." *Id*. And, as the appellate court pointed out, the district court did actually acknowledge that Mr. Saul's "involvement in the early (particularly pre-MDL) phase of the case was substantial," *id*. at *7, it was just that his involvement in matters of a novel and complex nature were significantly diminished. Additionally, the appellate court did not feel that Mr. Saul was completely ill-treated as he was paid the sixth highest sum overall and second highest of all non-trial counsel. *Id*. at *17. That is not the case in the instant action as GNT, which investigated and originated the first lawsuit and brought in one of the Lead Counsel, is receiving one of the lowest awards of all Common Benefit Counsel (which is also 1,128 times less than the combined awards of one of the Lead and Liaison Counsel). That said, neither the trial court, nor the appellate court in *Saul v. Plaintiffs' Steering Comm*. drew any clear line between pre-MDL effort and the continuing litigation.

In *In re Guidant Corp.*, the district court explained its discounting of many law firms' hours. For example, one firm's pre-MDL hours were reduced not because they were pre-MDL but because they were "client- or marketing-related." 2008 U.S. Dist. LEXIS 103736 at *31. Another firm's pre-MDL hours were discounted as "activities related to normal individual casework such as ECF filings, reviewing PTOs, and completing plaintiff fact sheets." *Id*. at *35-

*36. For a third firm pre-MDL hours were discounted for "marketing-related activities, some client-specific work, and other vague entries that are not attributable to the common benefit." *Id*. at *66. But, notably, for no firm were hours discounted simply because they were pre-MDL hours. That suit's Common Benefit Attorney Fee and Cost Committee's (CBAFCC) Policies, as adopted by the court, provided a list of time or costs that would be disallowed or discounted -- pre-MDL work was not part of that list. *Id*. at *11-*13. "The CBAFCC Policies required attorneys … to provide a three-page submission describing their common benefit work 'with particular emphasis on bona fide efforts made to produce results for the common benefit and as a contribution toward the discovery, trial and/or resolution of the Guidant litigation.'" *Id*. at *4. Again, in the instant action, neither PTO 9 nor PTO 28 specifies that pre-MDL time was not allowed to be submitted and/or considered by the Fee Committee as common benefit time.

In *In re Actos* several firms are noted as having some of their allowable effort performed pre-MDL. Not only is there no discounting noted for that effort but the firms are even noted for involvement in every aspect of the litigation, both pre-MDL and continuing litigation efforts. 274 F. Supp. 3d at 543 & 548. Thus, pre-MDL efforts are not to be ignored as worthless preliminaries.

## Conclusion

For the foregoing reasons, GNT is requesting that all of its pre-MDL time be reinstated and considered in the determination of GNT's common benefit fee award. It is GNT's position that work done by the originating attorney is to be considered common benefit work even if it is done prior to the formation of the MDL. The originating attorney is in a unique position, and all work performed by the originating attorney in investigating and determining the underlying facts central to the case is a common benefit for all. GNT is entitled to be paid for its pre-MDL work,

both factually and legally, and the Court is certainly allowed to exercise its discretion in awarding pre-MDL time.

Dated:  July 20, 2018    Respectfully submitted,

/s/ Robert D. Gary
Robert D. Gary (0019610)
/s/ Jori Bloom Naegele
Jori Bloom Naegele (0019602)
Gary, Naegele & Theado, LLC
Common Benefit Attorneys
Duane Building
401 Broadway, Unit 104
Lorain, OH  44052
Phone:  (440) 244-4809
Fax:  (440) 244-3462
rdgary@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing – Gary, Naegele & Theado, LLC's Objections to the Majority of the Fee Committee's Recommendation Regarding Allocation of the Common Benefit Fees – has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by email and upon all other parties by electronically uploading the same to File & ServeXpress f/k/a LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047.

Dated:  July 20, 2018    /s/ Robert D. Gary
Robert D. Gary (0019610)
/s/ Jori Bloom Naegele
Jori Bloom Naegele (0019602)
Gary, Naegele & Theado, LLC
Common Benefit Attorneys