UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE MANUFACTURED         MDL NO. 2047
DRYWALL PRODUCTS LIABILITY
LITIGATION                          SECTION L

THIS DOCUMENT RELATES TO:           JUDGE FALLON
*ALL CASES*                         MAGISTRATE JUDGE WILKINSON

******************************************************************************

## BRUNO & BRUNO'S OBJECTION TO STEP SIX FINAL RECOMMENDATION OF THE MAJORITY OF THE FEE COMMITTEE REGARDING ALLOCATION OF THE COMMON BENEFIT

Bruno & Bruno, LLP ("B&B"), pursuant to this Honorable Court's July 6, 2016 Order (R. Doc. 21482), respectfully objects to the July 3, 2018 Step Six Final Recommendation of the Majority of the Fee Committee ("FC") Regarding Allocation of the Common Benefit (R. Doc. 21455) in which the FC recommended a Final Common Benefit Fee Allocation of $18,000.00 to B&B for the following reasons:

### INTRODUCTION

B&B objects to the recommendation of the FC because (1) the FC has failed to conform to the Court's Orders in reaching its recommendation; (2) the FC has failed to provide transparency in its process; (3) the failure of the Plaintiff Steering Committee's ("PSC") leadership to equitably distribute common benefit work should not be imputed to others; (4) the appearance of improprieties by certain members of the FC are evident of bias and unfair dealing absent explanation; (5) B&B's common benefit contribution to this case supports an award much higher than the FC's recommendation of $18,000.00 which is $208,900.00 or (92%) less than B&B's Total Lodestar ($226,900.00) recognized by the FC; and (6) the FC should have adopted a more equitable allocation by using a baseline allocation of two times paid assessments plus the pro rata lodestar percentage of the amount remaining.

**(1) The FC Has Failed to Conform to the Court's Orders in Reaching Its Recommendation.**

The FC's proposed allocation does not comply with PTO 28 (Rec. Doc. 17379) and the Court's Order and Reasons Setting Common Benefit Fees (Rec. Doc. 21168). The FC has not provided its explanation of B&B's contribution to the case, how it applied *Johnson* factors to that contribution, or how it weighed any of the factors relevant to a fee allocation determination. Of particular concern is the stark difference between the respective lodestars of each firm used by the Court in its Order setting Common Benefit Fees and the FC allocations to each respective firm. The FC's recommendation of $18,000.00 is $208,900.00 or (92%) less than B&B's Total Lodestar ($226,900.00) recognized by the FC.  Further, it seems apparent from the FC's communication to B&B regarding its allocation that the FC considered time, expenses, and assessments post-2013 in its process which should appropriately be excluded because they were not considered by the Court in its common benefit fee determination.  Facially, the FC's recommendation for fee allocations to each firm is deficient, biased and obviously weighted towards members of the FC. Without additional information or explanation, the allocations can only be viewed as self-dealing and inappropriate.

**(2) The FC Has Failed to Provide Transparency in its Process.**

The FC has not provided transparency regarding its process for review of time and expenses and it has not explained how it arrived at its recommendation. The lodestar used by the Court to determine the split between common benefit and individual fees is far out of range of several firms' respective lodestars.  This indicates a departure from traditional methods used to determine each firm's allocation, albeit a departure that remains unexplained and baseless.

Of particular concern for B&B is the fact that it cut over 20% of its lodestar based on the assumption that ALL common benefit applicants would do likewise, especially members of the

PSC. B&B devoted six hundred and ninety five (695) common benefit hours to this MDL (Please see Exhibit A – Initial Affidavit of Bruno & Bruno for Compensation for Common Benefit Time and Reimbursement of Expenses)[1]. Out of an abundance of caution B&B removed over one hundred (100) hours of time, despite the fact that the time was actually spent on common benefit work. After B&B's interview with the FC, and again based on the FC's suggestion, B&B had an additional one hundred and fifty three (153) hours of time reviewing pleadings removed because, according to the FC, the time was for monitoring the case and not common benefit contributions, an opinion with which B&B disagrees. Without being able to review the detailed time submissions available to the FC and no one else, it is impossible for B&B to determine whether the FC held itself to these same strict standards.

### (3) The Failure of PSC Leadership to Equitably Distribute Common Benefit Work Should Not Be Imputed to Others.

The CDW PSC Leadership, Liaison and Lead Counsel have the duty and obligation to fairly allocate work assignments. Unfortunately this was not done in this MDL. The Liaison and Lead Counsel ran the PSC in a manner that channeled the majority of work to their offices or to those handpicked by them. According to common benefit hours accepted and reported by Phillip Garrett (R. Doc. 21168 at 26), five (5) firms[2] conducted over fifty (50) percent of the work in this MDL. PSC leadership hired lawyers to work in their offices, paid for with PSC Assessment funds in lieu of providing an opportunity to others who were willing and capable. This exacerbated the discrepancy between common benefit work available for those favored and for those unfavored. These failures in leadership should not be imputed to the other firms that contributed, and/or tried

---

[1] Seventy seven (77) hours to the assessment of the litigation, three hundred and twenty eight (328) hours to the Pretrial phase of the litigation, two hundred and thirteen (213) hours on discovery for the litigation and seventy seven (77) hours on Trial Preparation.

[2] Levin, Fishbein, Sedran & Berman (18.80%); HHK (17.37%); Seeger Weiss LLP (6.19%); Colson Hicks Edison PA (6.06%); Richard J. Serpe, PC (5.77%)

3

to contribute more than they were allowed, to the common benefit of those affected by Chinese drywall (Please see Exhibit B – Second Affidavit of Bruno & Bruno in Connection with Request for Allocation of Common Benefit Fee and Cost Award).

### (4) The Appearance of Improprieties By Certain Members of the FC are Evident of Bias and Unfair Dealing Absent Explanation.

The issues raised by the Yance Law Firm in its Motion and Memorandum to Immediately Transfer Attorney Fee Qualified Settlement Fund to a Different Depository Bank or Back Into the Court Registry[3] (R. Doc. 21338, which was joined in whole or part by three firms, *See* R. Doc. 21341, 21350, and 21360) and by Parker Waichman LLP in its Motion to Disqualify Fee Committee Chair and Co-Chair, to Strike the Step Six Recommendation of the Majority of Fee Committee Regarding Allocation of the Common Benefit (R. Doc. 21455), and to Lift the Seal on Related Filings[4] are troubling.

At the very least, these Motions raise issues including but not limited to lack of transparency, lack of impartiality, conflicts of interest, misconduct and self-dealing regarding the PSC leadership. Absent an explanation from PSC leadership (which one would expect to receive without request in a circumstance such as this) and a ruling by this Court on these Motions, the only conclusion is that B&B's allocation from the FC is based on motivations other than the quality and quantity of common benefit worked performed by B&B in this case.

### (5) B&B's Common Benefit Contribution to this Case Supports an Award Much Higher than Either of the Amounts Proposed by the FC.

B&B was initially assigned to the Inspection Committee. In connection with this role, Joseph Bruno and Melissa Debarbieris were required to conduct nationwide inspections of various

---

[3] On July 12, 2018 the Court held a hearing on this Motion and after argument the Motion was taken under submission.
[4] The submission date for this Motion is August 14, 2018 at 9:00 a.m. with a request for oral argument.

4

drywall manufacturers to determine the potential adverse effects to humans and property of the various drywall stocks. These inspections required immense travel and time expenditures. Mr. Bruno met repeatedly with the PSC to detail the results of his nationwide inspections.

Further, B&B was responsible for identifying appropriate bellwether plaintiffs and class representatives. Mr. Bruno successfully identified three such plaintiffs (Jerry Smith, Collette Smith, and Daniel Carter), and conducted extensive and laborious discovery for these plaintiffs.

Next, Mr. Bruno was assigned to the written discovery committee, where he spearheaded drafting of detailed 30(b)(6) Deposition Notices to several insurance companies involved in the litigation (Please see Exhibit "A" and Exhibit "B").

The FC's recommendation of $18,000.00 for B&B's 458.60 approved hours is rendering an effective hourly rate of $39.24 for B&B. This unreasonable recommendation follows an initial recommendation, prior to B&B's June 6, 2018 Objection to the FC, of $14,779.08 for B&B's 458.60 approved hours rendering an effective hourly rate of $32.23 for B&B (Please see Exhibit C – May 23, 2018 email regarding CDW – Fee Committee Common Benefit Fee Allocation Recommendation).

### (6) The FC Should Have Adopted a More Equitable Allocation By Using a Baseline Allocation of Two Times Paid Assessments Plus the Pro Rata Lodestar Percentage of the Remaining Amount.

This Court, and particularly your Honor, has previously begun the fee allocation process by using a baseline award from a multiple of paid assessments by each firm. The same process can be employed here with far more equitable results than those concocted by the FC. By starting with a baseline of two times assessments paid, there is an objective and supportable foundation to base fee allocation. From there, the Court has already used the lodestar provided to it by the FC to determine the split between the common benefit and individual fee portions of the overall attorney

fee award. Despite several recommendations by the FC that seem out of line with the lodestar it provided to the Court, the lodestar percentages are the logical second step in this process and applying them to the remaining available amount is sure to garner the support of nearly all common benefit fee applicants. For the purpose of resolving unique scenarios or making adjustments where appropriate, a "re-allocation fund" could easily be taken off the top to redistribute as appropriate. There was no reason to employ any other method, other than to encourage delay and/or self-servingly promote higher allocations to FC members.

## CONCLUSION

For the reasons stated above, Bruno & Bruno, LLP respectfully objects to the July 3, 2018 Step Six Final Recommendation of the Majority of the Fee Committee Regarding Allocation of the Common Benefit (R. Doc. 21455).  Bruno & Bruno, LLP also respectfully requests that this Honorable Court allow a hearing with oral argument, and that Bruno & Bruno, LLP be allowed to submit any evidentiary submissions/briefing which this Honorable Court deems necessary for this Honorable Court to award Bruno & Bruno, LLP a reasonable and fair Common Benefit Fee Allocation.

Respectfully submitted:

/s/ Joseph M. Bruno
Joseph M. Bruno, (LA Bar No. 3604)
Bruno & Bruno, LLP
855 Baronne Street
New Orleans, Louisiana  70113
Telephone:  (504) 525-1335
Facsimile:   (504) 561-6775

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Objection has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and email and upon all parties by electronically uploading the same to File & ServeXpress in

accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 20th day of July, 2018.

                                            /s/ Joseph M. Bruno