UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| *IN RE:* **CHINESE-MANUFACTURED DRWALL** **PRODUCTS LIABILITY LITIGATION** | : MDL No. 2047 :  :  : SECTION: L : JUDGE FALLON |
| **THIS DOCUMENT RELATES TO:** **ALL ACTIONS** | : MAG. JUDGE WILKINSON :  :  : |
| ………………………………………………………… | : |

**OBJECTION TO JULY 3, 2018 RECOMMENDATION OF FEE COMMITTEE BY VM DIAZ AND PARTNERS, LLC**

Pursuant to this Court's Order dated July 6, 2018, V.M. Diaz and Partners, LLC (hereinafter "the Law Firm") respectfully objects to the July 3, 2018 Fee Committee's recommendation regarding the allocation to the Law Firm of the Common Benefit Fee award as set forth in this Court's Order and Reasons dated January 31, 2018 (the "Common Benefit Fee Award Order"). The Law Firm objects on the following basis:

1. The recommendation of the Fee Committee appears to violate Pre-Trial Order No. 28 and Pre-Trial Order No. 28A, clarifying that the time and expense records to be considered pursuant to PTO 28 shall reflect work performed through and up to December 31, 2013 (Doc. No. 1742);

2. The recommendation of the Fee Committee contradicts a) the Court's Common Benefit Fee Award Order and b) is both internally inconsistent and inconsistent with the Memorandum in Support of the Fee Committee's Motion to Determine the Allocation of the Global Fee Award as between Common Benefit Fees and Individual

1

Counsel's Fees pursuant to PTO 20(F) (hereinafter "the Joint Fee Petition") (Doc. No. 20290-4).

3. The Fee Committee's recommendation violates Pre-Trial Order No. 28 (Doc. No. 179379) requirement that the Fee Committee "provide appropriate deliberate fairness" to all common benefit attorneys in their deliberations and in arriving on their final recommendation to the Court; and

4. Finally, the Law Firm submits that the revised recommendation is not fair and does not reflect accurately the relative contribution of the Law Firm to the outcome of the Knauf litigation.

The Law Firm requests an opportunity to be heard and to present substantive arguments in support of each of its objections. The Law Firm requests oral argument on this objection.

**Objection No. 1 - The recommendation appears to violate Pre-Trial Order No. 28 and Pre-Trial Order No. 28A, clarifying that the time and expense records to be considered pursuant to PTO 28 shall reflect work performed through and up to December 31, 2013.**

The Fee Committee's recommendation of July 3, 2018 is accompanied by Exhibit C, a schedule which appears to reflect the basis of the Fee Committee's recommendation.[1] A review of this schedule reveals that a total lodestar for all Common Benefit Lawyers as calculated by the Fee Committee **includes time from January 2014 through December 2017**. If this rational

---

[1] The Law Firm recognizes the discretion afforded the Fee Committee to make a final recommendation to the Court on the allocation of the Common Benefit Fee, constrained however by the Court's mandated PTO 28 (as amended) and by the Common Benefit Fee Award Order. The lack of any consistent methodology on which the Fee Committee bases its revised recommendation itself raises serious fairness and due-process considerations and violates the Court's requirement that the Fee Committee afford all Common Benefit Attorneys "deliberative fairness" and that its deliberations must be guided solely by the criteria set forth in Pre-Trial Order No. 28. The Law Firm respectfully submits that Pre-Trial Order No. 28 contemplates a level of due-process not afforded by the manner in which the Fee Committee has chosen to communicate and justify and explain its Common Benefit Fee recommendation. The Law Firm concerns are heightened by the here-to-for unknown revelations in the Minority Report.

2

deduction from the supporting documentation provided by the Fee Committee is correct, the Fee Committee's allocation violates Pre-Trial Order No. 28 and 28A, which requires that the time and expenses records to be considered by the Fee Committee "**shall reflect work performed done up to and including December 31, 2013."** Furthermore, the consideration of any lodestar time from December 2013 – December 2017 which relates to the pursuit of plaintiffs' claims against Taishan, the pursuit of unsuccessful fee and other disputes with individual contract attorneys (about which the PSC was never consulted) and other time entries unrelated to the Knauf settlement, also violates Pre-Trial Order No. 28 and the Common Benefit Fee Award Order.

In addition, a review of Exhibit A and Exhibit C to the Fee Committee's recommendation dated July 3, 2018 reveals that 1) the recommended award to the Law Firm of **$500,000.00** as reflected in Exhibit A represents **0.502%** of the total Common Benefit fee allocation recommendation of **$99,580,260.69** and that 2) the Law Firm's reported lodestar from inception through December 2013 as reflected in Exhibit C is $882,341.25$^2$ which reflects **0.602%** of the total lodestar through December 2013 for all participating Common Benefit Attorneys of $146,552,301.15. It appears, therefore, that the Law Firm's allocation of the Court awarded Common Benefit Fee has been **reduced** based on the Fee Committee's consideration of time and

---

[2] As noted in the following section, the Law Firm's lodestar from inception through December 2013 calculated by the Fee Committee of **$882,341.25** is also **inconsistent** with the lodestar attributed to the Law Firm by the Court's Common Benefit Fee Award Order. The Court's Order provides that the Law Firm of VM Diaz & Partners, LLC was credited with performing **2,070** hours out of a total **232,309.35** hours of Common Benefit time credited by the Court, which represents **0.89%** of the total lodestar through December 2013. The Law Firm's accredited hours in the Court's Common Benefit Fee Award Order – when multiplied by the Court's awarded hourly rate computation of **$442.67** per hour for Common Benefit work would yield a total lodestar for the Law Firm of **$916,513.20** – which is also **0.89%** of the total lodestar for all Common Benefit Attorneys of **$102,857,943.85**. *See* January 2018 Order at page 42 and attached appendix "A". The discrepancy between the Court's calculated lodestar for the Law Firm of **$916,513.20** and the Fee Committees' reported lodestar of **$882,341.25** is not justified in the recommendation and would appear to contradict the Court's Common Benefit Fee Award Order.

expenses incurred **after** December 2013 for matters possibly relating to the prosecution of claims against Taishan, unnecessary and unsuccessful fee and collateral disputes (about which the PSC was never consulted) and other matters unrelated to the Knauf settlement, which consideration violates PTO No. 28, 28A and, as noted below, the Court's Common Benefit Fee Order.

While there has been additional work by counsel involving the litigation after December 31, 2013, that work should not be considered in the allocation of common benefit fees presently before the Court. As noted in the Minority Report, "throughout the Fee Committee work, there has been a pervasive theme involving the volume of work performed by certain members of the Fee Committee to the Taishan litigation in contrast to other firms. At no point is that work relevant to the Fee Committee's duty to address attorneys' fee allocation involving the Knauf and Global Settlement." *Krupnick Campbell Malone Et Al's Minority Fee Committee Report Consistent with "Step Six" Pursuant to Pre-Trial Order 28* ("Minority Report'). As stated in the Minority Report, noting these deviations is not intended to disparage the work of the Fee Committee or its members, but to raise serious due process concerns about deviation from the Court's announced guidelines and the lack of an "analytical or sustainable methodology" on which the final recommendation is based. Minority Report at p. 1.

**Objection No. 2 -** **The July 3, 2018 recommendation of the Fee Committee contradicts a) the Court's Common Benefit Fee Award Order and b) is both internally inconsistent and inconsistent with the Joint Fee Petition (Doc. No. 20290-4).**

As noted above, the Fee Committee's recommendation of the Law Firm's Common Benefit Fee Allocation appears to contradict and violate the Court's Common Benefit Fee Order. The Law Firm's lodestar from inception through December 2013 calculated by the Fee Committee of **$882,341.25** is inconsistent with the lodestar attributed to the Law Firm by the

4

Court's Common Benefit Fee Award Order. The Court's Common Benefit Fee Award Order provides that the Law Firm of VM Diaz & Partners, LLC was credited with performing **2,070** hours out of a total **232,309.35** hours of Common Benefit time credited by the Court, which represents **0.89%** of the total lodestar through December 2013. The Law Firm's accredited hours in the Court's Common Benefit Fee Award Order – when multiplied by the Court's awarded hourly rate computation of **$442.67** per hour for Common Benefit work would yield a total lodestar for the Law Firm of **$916,513.20** – which is also **0.89%** of the total lodestar for all Common Benefit Attorneys of **$102,857,943.85**. *See* The Court's Common Benefit Fee Award Order at page 42 and attached Appendix "A". The discrepancy between the Court's calculated lodestar for the Law Firm of **$916,513.20** and the Fee Committee's reported lodestar of **$882,341.25** is not justified in the recommendation of **$500,000.00** and would appear to contradict the Court's Common Benefit Fee Award Order. Similarly, the discrepancy between the Court's recognized percentage allocation to the Law Firm (**0.89% or 2,070 hours**) of the total number of accredited hours (232,309.25) is not justified in the recommendation awarding the Law Firm only **0.502%** of the total Common Benefit Fee allocation recommendation of **$99,580,260.69** and would appear to contradict the Court's Common Benefit Fee Order.[3] Additionally, the Fee Committee consideration of time after December 2013 violates the Court's calculation of the Common Benefit Fee and Common Benefit Lodestar. Finally, the consideration of any time spent in pursuing claims against Taishan and unrelated to Knauf settlement also would violate the Common Benefit Fee Order.

---

[3] If the Law Firm's percentage (**0.89%**) of the total Common Benefit Lodestar recognized by the Court's Common Benefit Fee Order is multiplied by the Court's award of a total Common Benefit Fee of **$99,762,099.56**, the Law Firm's Common Benefit Fee Allocation should be approximately **$887,882.69.**

5

Second, the July 3, 2018 recommendation of the Fee Committee is both internally inconsistent and inconsistent with the Joint Fee Petition (Doc. No. 20290-4). Exhibit C to the Fee Committee recommendation reflects a total lodestar from inception through December 2013 submitted by all Common Benefit Attorneys and recognized by the Fee Committee of **$146,552,301.15**. The Fee Committee's total lodestar cannot be reconciled and is inconsistent with the Fee Committee's Joint Fee Petition's reported "blended market rates" total lodestar for all Common Benefit Attorneys through December 2013 of **$131,588,525.35**[4] nor does it reconcile with either of the alternative calculations cited by the Fee Committee from the Garrett Affidavit at Paragraph 17[5]. This inconsistency in the filed pleadings of the Fee Committee on which the Court and all counsel are entitled to rely – and did rely – is not explained in the Fee Committee's recommendation.[6]

These various inconsistencies with Exhibit A and Exhibit C to the Fee Committee's final recommendation and – more importantly – the Court's Common Benefit Fee Order raise serious concerns regarding the methodology employed by the Fee Committee in arriving at its recommendation and also raise serious due process concerns.

**Objection No. 3 - The Fee Committee's recommendation violates Pre-Trial Order No. 28 requirement that the Fee Committee "provide appropriate deliberate fairness" to all common benefit attorneys in their deliberations and in arriving at their final recommendation to the Court.**

---

[4] See Joint Fee Petition at pg. 54.
[5] Id. at pg. 54, FN18.
[6] PTO 28, at page 7, explicitly provides that the Joint Fee Petition "shall have substantive significant in any ruling by the Court as to the award of Common Benefit Fee" and therefore is binding on the Fee Committee and presumably was relied on by the Court in its Common Benefit Fee Order.

VMDIAZ AND PARTNERS | 119 WASHINGTON AVE SUITE 402 | MIAMI BEACH FLORIDA, 33139 | INFO@DIAZPARTNERS.COM | T: (305)704-3200

Pre-trial Order No. 28 set forth a detailed set of procedures to afford **all** counsel due-process in presenting objective and subjective documentation and arguments to the Fee Committee to evaluate "the relative contribution of each Common Benefit Attorney to the outcome of the litigation." PTO 28 required the Fee Committee to "implement additional processes to provide appropriate deliberative fairness" to all Common Benefit Counsel. In accordance with PTO 28, the Law Firm timely complied with each required submission contemplated by the Court Order. The Law Firm incorporates by reference and attaches hereto the Initial Affidavit and the Second Affidavit of Victor M. Diaz, Jr., Esq., of V.M. Diaz & Partners, LLC submitted to the Fee Committee.

Prior to receiving the initial recommendation of the Fee Committee, and consistent with PTO 28, the Law Firm and Victor M. Diaz, Jr., Esq., were provided an opportunity to make a presentation to the Fee Committee. Additionally, Mr. Diaz met with both Lead and Liaison Counsel to discuss the Law Firm's submissions. These submissions and opportunities to be heard by the Fee Committee prior to its initial recommendation being communicated to the Law Firm are consistent with the Court's mandate that the Fee Committee must provide "deliberative fairness" and due-process in determining the allocation of the Common Benefit Fee.

In June 2015, Lead and Liaison Counsel proposed Common Benefit allocations for all Common Benefit firms and such was communicated to the Common Benefit firms, including VM Diaz & Partners, LLC. As disclosed **for the first time** in the Minority Report, Lead and Liaison Counsel's proposal was based on a 50/50 allocation between funds available for Common Benefit and for Individually Retained firms. However, when seeking the initial fee allocation between common benefit and individual retained counsel, the Fee Committee (without consulting the full PSC) sought a 60/40 allocation, in favor of common benefit.  After the

7

Court's January 31, 2018 ruling regarding allocation, the common benefit fund actually increased to $99,762,099 or approximately an additional $7,200,000 over the June 2015 recommendations. The Fee Committee now recommends - **with no due-process or "deliberative fairness" being afforded to the Law Firm** - that those additional funds not be allocated amongst all common benefit firms, nor that they be utilized to make adjustments to those firms who have raised substantive objections to the June 2015 recommendations, but rather that the entirety of these additional funds be divided amongst Lead and Liaison Counsel[7].

PTO 28 also requires the Fee Committee to consider the *Johnson* factors and the Court's announced guidelines and required submissions in arriving at their recommended allocation. Despite the guidelines of PTO 28, the Fee Committee recommendation allocates **$76,649,699.57 or 76.68%** of the **entire** common benefit award to the firms of the six Fee Committee Members supporting the recommendation, including **$53,049,699.56 (53.18%)** to the firms of Levin and Herman[8]. As proposed, the Fee Committee recommends that the Herman and Levin firms receive the identical dollar amount of common benefit fee, despite having dedicated substantially different hours to the effort. There is no analytical and sustainable methodology for accounting

---

[7] Notably, in addition to the common benefit allocation pursuant to the January 31, 2018 Order, there apparently are, according to the Minority Report, undisclosed additional potential common benefit funds or fees from individual cases to be distributed from other settlement funds to Lead and/or Liaison counsel. Minority Report at p.6. The potential amounts to be awarded to each individual firm have not been disclosed, discussed and taken into consideration in the proposed common benefit allocation. The settlements in Virginia and North River present as potential, but yet undisclosed, additional fees or recovery. It is not clear that the common benefit hours associated with the Virginia and North River settlements were removed from the common benefit hours submission recognized by the Fee Committee. As a result, Lead and/or Liaison counsel may ultimately propose and receive additional common benefit allocation in excess of even what they propose currently from Knauf Fee Fund. If, on the other hand, there is no common benefit award expected from those resolutions, then that should be clarified to an absolute certainty before any award involving this Fee Committee recommendation.

[8] The Step Six Recommendation awards $23,600,000.00 to the firms of the FC Members in the majority (not including Herman and Levin). These firms logged 44,421 common benefit hours. This leaves approximately $23,112,400.00 for the remaining 44 firms with 104,088 hours.

8

for deviations from lodestar – other than some undisclosed subjective analysis - consistent with an expectation of due process, that the Herman and Levin firms should receive the identical dollar amount of common benefit especially where the lodestar hours are so heavily weighted toward the Levin Firm. Parity for Herman and Levin firms is substantially different methodology than how all other firms were treated[9].

In addition, the recommendation also includes a bonus for "the efforts of those firms that worked diligently to obtain, over strenuous objection, the Court's approval of the total common benefit fee now to be allocated." (*See* email of Herman and Levin dated May 23, 2018). A bonus to reward firms for work during the Step Five Allocation Proceeding is improper since it pays firms for work performed after the December 31, 2013 cutoff date imposed by PTO 28. Also, this bonus was not authorized by Court Order or authorized by a vote of the Court appointed PSC, a majority of whose members may have dissented from the strategies pursued during months of unproductive fee disputes. The additional common benefit fee obtained is only 2% more than what the Minority Report discloses was "assumed" by the Fee Committee in their June 2016 recommendations communicated to all common benefit lawyers. Why was this "assumption" not disclosed to all lawyers back in June of 2015? Why was the PSC not given the opportunity to weigh in on the advisability of pursuing a 60/40 allocation? Why has all of this been undisclosed when this Court's PTO 28 required the Fee Committee to afford all common benefit lawyers "deliberative fairness?"

---

[9] The Minority Report suggestion that there was an agreement at the outset of the litigation between the Herman and Levin firms to have the same award is **not** an "analytical and sustainable methodology," leaving common benefit attorneys with the inquiry - "What other 'undisclosed' agreements informed the Fee Committee's subjective analysis"?

In its recommendation, the Fee Committee provides "no analytical and sustainable methodology[10] to support the excessive and disproportionate Common Benefit Fee allocation to Lead and Liaison Counsel and the bonus to certain firms for work performed after the cutoff date. The lack of transparency, due-process, "deliberative fairness" and apparent violations of PTO 28 and of the Court's Common Benefit Fee Order analysis and allocation constitute a violation of the Court's Orders and a deprivation of the Law Firm's due-process rights.

Further, the Fee Committee's Step Six Recommendation misrepresents the methodology used by the Court and disregards the substance of the Court's lodestar analysis and findings. According to the recommendation, the Court "discussed the lodestar, percentage-of-recovery, and 'blended' calculation methods, noting that the 'blended' approach entails a percentage-of-recovery calculation cross-checked by the lodestar method." (Doc. No. 21455 at 4). On the contrary, the Court did not simply discuss the lodestar, the Court **applied** the lodestar. The lodestar was not just used as a cross-check, it was used as the primary method and then cross-checked by the *Johnson* factors. *See* Order and Reasons [denying interlocutory appeal] (Doc. No. 21322 at 8) ("In setting the 52-48 allocation, the Court spent countless hours reviewing the record, and then applied the lodestar method and Johnson factors to arrive at its decision."). Such clouding of a foundational ruling by the Court creates an impression of inherent unfairness. *See* Eldon E. Fallon, *Common Benefit Fees in Multidistrict Litigation*, 74 La. L. Rev. 371, 380 (2014) ("Disproportionate results and inconsistent standards threaten to damage the public's faith

---

[10] Minority Report at p. 1. In addition to the deviations noted above for the Law Firm, the revised Fee Committee Common Benefit Fee allocation recommendation **materially** deviates, in a disproportionate manner, from the Court's Common Benefit Fee Order recognized percentages of the total lodestar for a significant number of other Common Benefit Lawyers to the notable benefit of certain members of the Fee Committee. In addition, the "smoothed" or "rounded" allocations given to certain law firms is further evidence of the lack of a uniform methodology based on permissible criteria.

10

in the judicial resolution of mass tort litigation by creating an impression of inherent unfairness.").[11]

**Objection Four -** **The Law Firm submits that the recommendation is not fair and does not reflect accurately the relative contribution of the Law Firm to the outcome of the Knauf litigation.**

The Law Firm incorporates by reference the Initial and Second Affidavits submitted by Victor M. Diaz, Esq. on behalf of the Law Firm to the Fee Committee outlining the contributions made to the outcome of the Knauf litigation.

The Law Firm is in the unique position of having been asked to "join" the PSC in March of 2012 at the request of Lead and Liaison Counsel and the Honorable Eldon Fallon. At the time, the Law Firm successfully had challenged in Florida state courts certain critical rulings of the MDL Court and obtained other rulings that posed a substantial threat to the ability of the MDL Court to finalize the Global Knauf settlement. In addition, the Law Firm represented a substantial inventory of Knauf clients and opt-out plaintiffs that had successfully served the Knauf Defendants independent of the MDL and were set for trial in various Florida courts.

At the time the Law Firm was invited to "[re]join" the PSC, Victor M. Diaz, Jr., Esq., expressed grave concerns regarding re-joining the PSC from which he had been removed under what he would later learn were "unusual circumstances" involving untrue statements made in

---

[11] The inherent flaw in the "off the top" adjustment factor methodology the Minority Report attributes to "certain common benefit firms" is that it also deviates form the lodestar methodology principally utilized by the court in setting the Common Benefit Fee to artificially reward certain firms for financial contributions made to the PSC. Minority Report at p. 7, n. 5. This approach suffers from the same "lack of analytical and sustainable methodology" criticism it levels at the Fee Committee and unduly penalizes the Law Firm who was asked to "rejoin" the PSC at a point when no further assessments were requested of the Law Firm and no opportunity to contribute financially was afforded. At no time has this Court in any iteration of PTO 28 announced that "monies contributed to the litigation" would become a factor in this Court's determination or allocation of the Common Benefit Fee, to introduce this factor now is frankly engaging in the same type of subjective Common Benefit fee subjective manipulation about which these same firms complain of in the Fee Committee recommendation.

communications with the Court in 2010 of which Mr. Diaz was not advised at the time and did not become aware of until he met in private with the Honorable Eldon Fallon. In his meetings with Judge Fallon and in his conversations with Lead and Liaison Counsel, Mr. Diaz expressed his concerns that re-joining the PSC would disadvantage the Law Firm due to the fact that its late arrival onto the PSC would limit its ability to obtain common benefit assignments and the concern that the "unusual circumstances" surrounding Mr. Diaz's prior removal from the PSC would not allow the Law Firm to share fairly in the Common Benefit Fee allocation. The Law Firm was given assurances by both Lead and Liaison Counsel and more importantly by the Court that the Law Firm's contribution to the ability of the MDL to finalize the Knauf settlement by "re-joining" the PSC and cooperating with the requests of Judge Fallon with respect to the settlement of the then-pending Florida state court litigation would be recognized by the Fee Committee and by the Court in its final Common Benefit Fee allocation. The Law Firm relied on the integrity of the PSC leadership and the Court in accepting the Court's invitation to "re-join" the PSC. The Law Firm relied then on the integrity of this Court and does so again in submitting this objection.[12]

The Law Firm respectfully submits that the Fee Committee's recommendation undercompensates the Law Firm for its valuable common benefit work. Application of the *Johnson* factors in this case demonstrates that the Fee Committee's proposed $500,000.00 allocation to the Law Firm is subjectively low. The *Johnson* factors consist of (1) The time and labor required, 2) the novelty and difficulty of the question involved, and 3) the skill requisite to

---

[12] Specifically, this Court ordered that the Law Firm's time in pursuing the collateral claims whose settlement allowed the Knauf Global settlement to be finalized be included in the time submission recognized by the Court and vetted by Phillip Garrett, CPA. Now that Court mandate is being diminished by the Fee Committee recommendation affording the Law Firm's lodestar hours, recognized by Phillip Garret CPA, objectively and subjectively less weight.

perform the legal service properly; (4) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (5) the fee customarily charged in the locality for similar legal services; (6) whether fee is fixed or contingent; (7) The time limitations imposed by the client or by the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the lawyer or lawyers performing the services; (10) the undesirability of the case (11) The nature and length of the professional relationship with the client; and (12) awards in similar cases.

The Law Firm invested significant time and labor on this litigation. Indeed, Mr. Diaz' service on the PSC and aggressive prosecution of these consolidated cases demanded substantial time and labor, including considerable vetting of experts, hundreds of hours spent reviewing hundreds of thousands of pages of production documents, extensive travel for the purposes of taking discovery and briefing and arguing complex legal questions – including novel questions of international jurisdiction, discovery of viable causes of action and recoverable elements of damages - as they arose of these consolidated proceedings. Success in these matters requires considerable experience and a high degree of skill, along with an exhausting expenditure of effort, at a level generally unknown in other types of cases, even those involving class actions. Mr. Diaz and the Law Firm possesses these attributes, making our participation in this matter a significant contribution to the PSC's collective common benefit to all Plaintiffs.

Mr. Diaz possesses 33 years of experience handling complex and mass tort litigation of this nature and has demonstrated tremendous diligence, skill, expertise, efficiency of effort, and ability in providing the services that have been rendered in this action.  His reputation for successfully handling this type of work is notable – and has been recognized by several courts – and his skill and talent should be known to this Court. Moreover, in assessing the quality of

13

representation, the Court also should consider the quality of the opposition. *See, e.g., Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992); *Angoff v. Goldfine*, 270 F.2d 185, 192 (1st Cir. 1959). The excellent quality of that opposition has been no less apparent in the instant case. Each lawyer who has worked on the defense side of this action has an excellent reputation in the community, as do their respective law firms.

The Law Firm accepted these cases on a pure contingency basis and the Law Firm's fee rested **one hundred percent** on the outcome of the representation. The Law Firm should therefore be compensated for the risk of non-payment it assumed and realized by carrying out this case on a pure contingency basis – a case which was notably undesirable because there were no prior/similar cases weighing in favor of a high return leaving open the real possibility of a "zero return". Despite this risk, at all times, the Law Firm – particularly given its small size - was subject to tight deadlines involving large volumes of work including the laborious task of reviewing millions of pages of document production, depositions of Knauf employees, upper management, experts and fact witnesses as well as over half a dozen employees and former employees of Banner. Attorneys for the Law Firm personally traveled both domestically and internationally to participate in these depositions, the preparation of which, plus travel costs (including airfare and accommodations) and relevant expenses were all advanced solely by the Law Firm.

The record before the Court establishes that this case involved significant challenges to the members of the PSC, that the skill of Mr. Diaz and the Law Firm was commensurate with the novelty and complexity of the issues in the case and that the hours and expenses included by the Law Firm LC in connection with the Chinese drywall litigation should be considered, in its entirety, by the Court.

14

VMDIAZ AND PARTNERS | 119 WASHINGTON AVE SUITE 402 | MIAMI BEACH FLORIDA, 33139 | INFO@DIAZPARTNERS.COM | T: (305)704-3200

In summary, we respectfully object to the Fee Committee July 3, 2013 recommendation and ask that the Court adjust the Fee Committee's proposed allocation to the Law Firm be grounded on a lodestar analysis consistent with the Order and Reasons Setting Common Benefit Fees (Doc. No. 21168), in consideration of the *Johnson* factors, with an upward adjustment for the unique nature of the Law Firm's role in assisting the Court to finalize the Knauf Global Settlement by "re-joining" the PSC. The Law Firm thanks the Fee Committee for its efforts and recognizes the collective efforts of all common benefit attorneys, especially Lead and Liaison counsel, and submits this objection for this Court's deliberate consideration in maintaining the public's faith in the judicial resolution of mass tort litigation by ensuring "deliberative fairness" to all common benefit lawyers for what has proven to be a long, arduous and draining process.

Respectfully submitted,

**VM DIAZ & PARTNERS, LLC**
*Attorneys for Plaintiff*
119 Washington Ave., Ste. 402
Miami Beach, Florida 33139
T: (305) 704-3200
F: (305) 538-4928

By:*/s/ Victor M. Diaz*
   Victor M. Diaz, Jr., Esq.
   Florida Bar No. 503800
   victor@diazpartners.com

**CERTIFICATE OF SERVICE**

  **I HEREBY CERTIFY** that on this 20th day of July, 2018, a true copy of the foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047.

            By:_____/s/ Victor M. Diaz_____
               Victor M. Diaz, Jr., Esq.