UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 |
| | SECTION: L |
| THIS DOCUMENT RELATES TO: | JUDGE FALLON |
| *ALL CASES* | MAG. JUDGE WILKINSON |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**PARKER WAICHMAN LLP'S OBJECTION TO THE FINAL RECOMMENDATION OF THE MAJORITY OF THE FEE COMMITTEE REGARDING ALLOCATION OF COMMON BENEFIT FEES**

MAY IT PLEASE THE COURT:

Pursuant to Pre-Trial Order No. 28 (Doc. 17379) and the Order of July 6, 2018 (R. Doc. 21482), Parker Waichman, LLP objects to the Final Recommendation of the Majority of the Fee Committee Regarding Allocation of the Common Benefit (R. Doc. 21455) ("FC Recommendation"), on the following grounds:

**A. The FC Recommendation Should be Rejected in Its Entirety**

As Your Honor has emphasized, "[t]he total amount of the common benefit fund should be reasonable under the circumstances, and the ***method for distributing it should be fair, transparent, and based on accurately recorded data***." *Common Benefit Fees in Multi-District Litigation*, 74 La. L. Rev. 371, 381 (2014) (emphasis added). That standard is not being met in this instance. For the reasons stated in Parker Waichman's Motion To Disqualify Fee Committee Chair And Co-Chair, To Strike the Step Six Recommendation of the Majority of the Fee Committee Regarding Allocation of the Common Benefit and To Lift the Seal on Related Filings (R. Doc. 21489), the Court should proceed without a Fee Committee recommendation

1

under Step Six and conduct a fully *de novo* analysis consistent with the Order and Reasons Setting Common Benefit Fees. R. Doc. 21168.[1] Use of the "Step Six Recommendation" by the Court for any purpose would severely undermine the appearance of impartiality in these proceedings.

### B. Limited Discovery Is Necessary to Challenge The Legitimacy and Value of Time Submissions

As demonstrated in the Step Five fee allocation proceeding, there are serious questions about the integrity of the lodestar data for allocating common benefit fees claimed in connection with the Knauf-related settlements, including the standard for approval and disapproval of hours and the number of hours approved and disapproved. Although the Court and Mr. Garrett provided oversight to the process, <u>all</u> qualitative decisions to approve or disapprove common benefit work were made by the PSC leadership, and firms relied fully and exclusively on those decisions. Mr. Garrett's after-the-fact vetting was solely for accounting purposes, as explained

---

[1] To set the aggregate common benefit fee, the Court found support in similar jurisprudence for an effective average hourly rate of $442.76. R. Doc. 21168 at 22 ("A common benefit fee of approximately $102.86 million, which when divided by the number of hours of common benefit work, would result in an hourly fee of approximately **$442.76** for common benefit work.") This, according to the Court, is consistent with "other cases involving similar recovery [which] range from $165.00 to $677.25 per hour. *See, e.g.*, Vioxx Prods. Liab. Litig., 760 F. Supp.2d 640, 660-61 (E.D. La. 2010) (citing In re Guidant, 2008 WL 682174, at * 15 (D.Minn. Mar. 7, 2008) (finding an average hourly rate of $443.25 was reasonable for work performed between 2005 and 2010 was reasonable); In Re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, MDL No. 2179, Doc.21849 (E.D. La. Oct. 25, 2016) (finding $450.00 per hour was an appropriate average/blended hourly rate); see also In re Avandia Marketing, Sales Practices and Product Liability Litigation, MDL No. 1871, Pretrial Order No. 175, Doc. 2820 (E.D. Pa. Oct. 19, 2012) (approving staggered rates of $225.00, $285.00, $475.00 and $595.00 (for an average hourly rate of $353.00) for attorneys based on their experience and contribution to the case."). R. Doc. 21168 at 18.

2

in his testimony during the Step Five proceeding. He deferred to Mr. Herman and Mr. Levine for qualitative decisions.

At a minimum, it is clear that a large number of hours are improperly included in the common benefit lodestar and that the PSC leadership employed a double standard for screening time and assigning value. For example, the lodestar includes thousands of hours in pursuit of claims against non-settling parties.[2] Further, some firms, including Parker Waichman, were instructed to conduct extensive work in drafting and gathering data for omnibus complaints, but this time was later rejected; while other firms were permitted to bill time for this same endeavor. The Catatphora ordeal is an even more extreme example.

Valid lodestar data is critical to allocating common benefit fees. Parker Waichman challenges the legitimacy of the data at issue – not the accuracy per Mr. Garrett, but the legitimacy per Mr. Levin and Mr. Herman – and seeks limited discovery to accomplish due process.

### C. The Fee Committee Process Was Neither Fair Nor Transparent

The Court instructed the Fee Committee to implement "processes to provide appropriate deliberative fairness to those participating [common benefit] attorneys" (PTO 28 at ¶14) and to look at general fee jurisprudence, the *Johnson* Factors, and certain aspects of the litigation as set forth in *In re: Vioxx Prod. Liability Litigation*, 802 F.Supp.2d 740, 764-765. While straining to create the appearance of objectivity by reciting the applicable factors, the Step Six Recommendation is based on a wholly subjective end-means analysis.

---

[2] As noted in the Minority Fee Committee Report, "[t]hroughout the Fee Committee work, there has been a pervasive theme involving the volume of work performed by HHK and LSB related to the Taishan litigation in contrast to other firms." R. Doc. 21473 at 3.

On May 23, 2018, the Fee Committee advised Parker Waichman that it intended to recommend $100,000 for its 8,905.75 approved hours. No explanation was provided for the award; rather, the brief email accompanying the award set forth a few broad guiding principles purportedly considered by the Fee Committee. Specifically, the Fee Committee did not explain its process for distributing the fees among the firms receiving a common benefit allocation (approximately 50), did not explain how it arrived at a recommendation of only $11.29 per hour for Parker Waichman, and did not provide copies of the Fee Committee meeting transcripts when the recommendation was discussed and/or decided. Without this information, Parker Waichman lacked the ability to articulate a well-informed objection, precisely as intended by the Fee Committee. This is emblematic of the Fee Committee repeatedly making a sham of the processes established by the Court.

Although Parker Waichman's allotment was increased in the Step Six Recommendation to $650,000 (or $72.98 per hour), it is impossible to reconcile the award in light of the evidence before the Fee Committee. What is clear, however, is that the Fee Committee's treatment of Parker Waichman is not merely arbitrary, but blatantly punitive. The preliminary recommendation was a "poke in the eye" never intended to reach the Court as a formal recommendation, and it effectively spoiled an important step in the process designed by PTO 28. The final recommendation for Parker Waichman fairs no better in light of the evidence and the awards to other firms, particularly those of other PSC and Fee Committee Members.

In addition to the lack of transparency, inherent unfairness has plagued the Fee Committee's process and the resulting allocation. First, the entire process for allocating common benefit work was inequitably skewed to allot the majority of common benefit work to only a

4

handful of firms.  According to common benefit hours accepted and reported by Philip Garrett (*see* R. Doc. 21168 at 26), five firms conducted over 50% of the work in this MDL.

Second, many of the reported and accepted common benefit hours were unnecessary and conducted solely for the purpose of artificially inflating the common benefit allocation, which Parker Waichman resisted.  For example, the PSC approved a contract with a vendor, Cataphora, whose software would substantially reduce document review, and therefore common benefit time in the litigation.  Ultimately, the contract was breached by the PSC for this very reason.  The conflict over Cataphora is the root of the Fee Committee's treatment of Parker Waichman.[3]

Third, PSC members were instructed that all assessment contributions must be timely paid in order for the members' firms to receive common benefit fees.  Disregarding this rule, the Fee Committee recommended the payment of common benefit fees to firms who failed to timely pay assessments.

Fourth, the Fee Committee's weighting of time is unfairly arbitrary, at best.  On its face, it appears to reward firms who supported the self-serving objectives of the PSC leadership and punish firms who lawfully objected.  The Fee Committee has never provided or explained this hierarchy or why certain types of work are worthy of a higher fee than others.  Instead, the Fee Committee makes clear its guiding factor was the biased opinions of its Members.[4]

---

[3] The PSC leadership squandered millions of dollars of time and money relating to the litigation against Cataphora.  To date, there has been no accountability for such waste and abuse.

[4] "The Committee considered the submitted time of counsel for common benefit fee purposes as entitled to allocation weight only in relationship to outcome contribution.  Not simply how much time an attorney has spent and submitted, therefore, but whether and how an attorney's time contributed to the outcome of these class settlements, has been a consistent, and even primary, focus of the FC in its analysis and recommendation."  R. Doc. 21455 at 7-8

### D. The Recommendation Does not Comply with the Court's Pretrial Orders

Pretrial Order No. 28(A) requires each firm's Initial Affidavit, upon which the common benefit allocations are based, to "reflect all time submitted for work performed up to and including December 31, 2013. . . ." But the Step Six Recommendation includes a bonus for the efforts of certain counsel outside of this time frame. Accompanying the preliminary recommendation was an email from Sandra Duggan on behalf of the Fee Committee Co-Chairs, explaining that the Committee was rewarding the "efforts of those firms that worked diligently to obtain, over strenuous objection, the Court's approval of the total common benefit fee now to be allocated." This "bonus" plainly violates the cut-off date established by PTO 29.

### E. Parker Waichman's Common Benefit Allocation is Quantitatively Unreasonable

Philip Garrett approved 8,905.75 of Parker Waichman's common benefit hours with a lodestar value of $4,830,231.25. For that work, the Fee Committee recommends $650,000.00, an effective average hourly rate of $72.98. It is impossible to reconcile this recommendation with the Court's use of $442.76 as the effective hourly rate in its lodestar analysis (R. Doc. 21168 at 22) or the effective rate of other firms in the Step Six Recommendation.

Parker Waichman has studiously and timely complied with all requirements in connection with the reporting and submission of common benefit time and dutifully complied with the instructions of the PSC leadership. *See* Amended Initial Affidavit of Parker Waichman LLP for Compensation for Common Benefit Time and Reimbursement of Expenses, Exhibit "A" [under seal], and Second Affidavit of Parker Waichman LLP in Connection with Request for Allocation of Common Benefit Fee and Cost Award, Exhibit "B" [under seal] (collectively, the "Parker Waichman Affidavits"). It also participated in a meeting with the Fee Committee on

August 20, 2014 to answer questions about its common benefit hours.  Transcript of 8/20/14, Exhibit "C" [under seal].

In sum, Parker Waichman has been actively involved since the inception of this MDL.  The firm, along with Morgan & Morgan, filed the first Federal class action complaint regarding defective Chinese Drywall.  *Allen v. Plasterboard Tianjin Co., LTD, et al*., Case No. 2:09-cv-00054.  Jerry Parker was a member of the Plaintiffs' Steering Committee, chair of the Public Relations Committee, and Chair of the IT Committee.  Upon the PSC's instruction and approval, as thoroughly outlined in the Parker Waichman Affidavits, the firm conducted extensive and valuable work in this litigation.  Further, Parker Waichman timely met all funding obligations for PSC Members.  In addition to Mr. Parker, Jordan Chaikin, a former partner at Parker Waichman, devoted approximately 80% of his practice to this litigation; April Goodwin, a former associate at Parker Waichman, devoted approximately 90% of her time to this litigation; and three full-time and two part-time legal assistants devoted 100% of their time.

On its face, the Step Six Recommendation for Parker Waichman is quantifiably unreasonable.  There is no objective criteria to explain it.

### F. Conclusion

The process used by the Fee Committee was not transparent, failed to comply with the law and pertinent pre-trial orders, and was unfair.  For those reasons, Parker Waichman objects to the Recommendation and requests that the Court permit limited discovery to challenge the legitimacy of the lodestar data.  Following that process, the Court should employ a *de novo* lodestar analysis consistent with the Order and Reasons Setting Common Benefit Fees, R. Doc. 21168.

Respectfully submitted:

**FAIRCLOTH, MELTON & SOBEL, LLC**

By: ___/s/ *Jimmy R. Faircloth, Jr.*___
    Jimmy R. Faircloth, Jr. (LA #20645)
    jfaircloth@fairclothlaw.com
    Brook L. Villa (LA #31988)
    bvilla@fairclothlaw.com
    Franklin "Drew" Hoffmann (LA #35824)
    dhoffmann@fairclothlaw.com
    412 N. 4th Street, Suite 230
    Baton Rouge, LA 70802
    Phone: (225) 343-9535
    Fax: (225) 343-9538

*Attorneys for Parker Waichman LLP*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Parker Waichman LLP's Objection to the Final Recommendation of the Majority of the Fee Committee Regarding Allocation of Common Benefit Fees, by U.S. Mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 20th day of July, 2018.

                                                                  /s/ *Jimmy R. Faircloth, Jr.*
                                                                   OF COUNSEL