# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| Bryon Ellison, et al., individually, | ) | IN RE: CHINESE-MANUFACTURED |
| and on behalf of all others similarly | ) | DRYWALL PRODUCTS LIABILITY |
| situated, [ADDITIONAL PLAINTIFFS | ) | LITIGATION |
| LISTED ON EXHIBIT "A" | ) | |
| ATTACHED HERETO], | ) | |
| | ) | MDL NO. 2047 |
| | ) | |
| Plaintiffs, | ) | SECTION:  L |
| | ) | |
| v. | ) | |
| | ) | |
| Taishan Gypsum Company, Ltd. f/k/a | ) | |
| Shandong Taihe Dongxin Company, | ) | |
| Ltd.; Tai'an Taishan Plasterboard | ) | Civil Action No.:  2:17-cv-9827-EEF-JCW |
| Company, Ltd.; Qinhuangdao Taishan | ) | |
| Building Materials Co., Ltd. a/k/a | ) | |
| Qinhuang Dao Taishan Building | ) | |
| Materials Co., Ltd.; Beijing New Building | ) | |
| Materials Public Limited Company; | ) | |
| Beijing New Building Materials (Group) | ) | |
| Company, Ltd.; China National | ) | JURY TRIAL DEMAND |
| Building Material Company, Ltd.; and, | ) | |
| The State-Owned Assets Supervision and | ) | |
| Administration Commission of the | ) | |
| State Council, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## SECOND AMENDED CLASS ACTION COMPLAINT

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the class representatives in this action bring suit on behalf of themselves and all other similarly situated owners and residents of real property containing defective Chinese manufactured drywall that was designed, manufactured, imported, exported, distributed, delivered, supplied, inspected, marketed, sold

and/or installed by the Defendants.  In order to accomplish an effective class structure, each of the class representatives is pursuing a nationwide class action against the manufacturer of the drywall located in plaintiffs' homes.  Each of the Defendants in this action, Taishan Gypsum Company, Ltd. f/k/a Shandong Taihe Dongxin Company, Ltd. ("Taishan"); Tai'an Taishan Plasterboard Company, Ltd. ("TTP"); Qinhuangdao Taishan Building Materials Co., Ltd. a/k/a Qinhuang Dao Taishan Building Materials Co., Ltd. ("Qinhuangdao"); Beijing New Building Materials Public Limited Company ("BNBM"); Beijing New Building Materials (Group) Company, Ltd. ("BNBM Group"); China National Building Material Company, Ltd. ("CNBM"); and, the State-Owned Assets Supervision and Administration Commission of the State Council ("SASAC"), are liable for damages incurred by Plaintiffs due to their role in the design, manufacture, importing, distributing, delivery, supply, marketing inspecting, installing, or sale of the defective drywall at issue in the litigation.

## JURISDICTION, PARTIES, AND VENUE

1.      This action is within the original jurisdiction of this Court by virtue of 28 U.S.C. §1332(d)(2) and the Class Action Fairness Act ("CAFA"). *See* 28 U.S.C. §1711, *et seq*. Plaintiffs and certain Defendants are residents of different states and the amount in controversy of this Class action exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

2.      Venue in this district satisfies the requirements of 28 U.S.C. § 1391(b)(1)-(2) and (c) because some Plaintiffs reside in this jurisdiction and a substantial amount of the events and occurrences giving rise to the claim occurred in this district, or a substantial part of the property that is the subject of this action is situated in this district.

## PLAINTIFFS

3.      For purposes of clarity, the Plaintiffs are asserting claims on behalf of all owners and residents of the subject properties, including but not limited to, minors and other residents of the properties who do not appear herein as named plaintiffs.

4.      Unless specifically stated to the contrary on Exhibit "A," all Plaintiffs are citizens of the state where they reside.

5.      Plaintiffs are participating as class representatives in the class as set forth on Exhibit "A."

6.      Each plaintiff serving as a class representative is identified on Exhibit "A," which is incorporated herein by reference.  Each plaintiff identified on Exhibit "A" is bringing claims against the manufacturing defendants as set forth in the following paragraphs of this Complaint.

## DEFENDANTS

7.      Unless specifically stated to the contrary, all individual defendants are citizens of the state where they do business and all entities are citizens of the state where they are organized. For those entities, where the state of organization is not listed, it is asserted upon information and belief that the entity is incorporated and/or organized in the state of its principal place of business.

8.      Defendant Taishan is a foreign corporation doing business in several States, including but not limited to, Alabama, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Texas and Virginia.  Upon information and belief, Defendant, together with its affiliates and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed

within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by consumers in the United States of America and installed in structures in the United States of America.  Defendant Taishan manufactured defective drywall and then sold, directly and indirectly, to certain suppliers or other business entities within the United States.

9.      Defendant TTP is a foreign corporation doing business in several States, including but not limited to, Alabama, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Texas and Virginia.  Upon information and belief, Defendant, together with its affiliates and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by consumers in the United States of America and installed in structures in the United States of America.  Defendant TTP manufactured defective drywall and then sold, directly and indirectly, to certain suppliers or other business entities within the United States.

10.     Defendant TTP is a wholly-owned subsidiary of Defendant Taishan.

11.     Defendant Qinhuangdao is a foreign corporation doing business in several States, including but not limited to, Alabama, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Texas and Virginia.  Upon information and belief, Defendant Qinhuangdao, together with its affiliates and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by consumers in the United States of America and installed in structures in the United States of America.  Defendant Qinhuangdao manufactured defective drywall and then sold, directly and indirectly, to certain suppliers or other business entities within the United States bearing markings that state, "Crescent City Gypsum, Inc." or "Crescent City."

12.     Defendant Qinhuangdao is a wholly owned subsidiary of Defendant Taishan. (TTP, Qinhuangdao and Taishan are hereinafter collectively referred to as "Taishan").

13.     Defendant BNBM is a foreign corporation doing business in several States, including but not limited to, Alabama, Florida, Georgia, Louisiana, Mississippi, Texas and Virginia.  Upon information and belief, Defendant, together with its affiliates and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by consumers in the United States of America and installed in structures in the United States of America.  Defendant BNBM manufactured defective drywall and then sold, directly and indirectly, to certain suppliers or other business entities within the United States.

14.   Defendant BNBM Group is a foreign corporation doing business in several States, including but not limited to, Alabama, Florida, Georgia, Louisiana, Mississippi, Texas and Virginia.  Upon information and belief, Defendant, together with its affiliates and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by consumers in the United States of America and installed in structures in the United States of America.  Defendant BNBM Group manufactured defective drywall and then sold, directly and indirectly, to certain suppliers or other business entities within the United States.

15.     Defendant CNBM is a foreign corporation doing business in several States, including but not limited to, Alabama, Florida, Georgia, Louisiana, Mississippi, Texas and Virginia.  Upon information and belief, Defendant, together with its affiliates and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by

consumers in the United States of America and installed in structures in the United States of America.  Defendant CNBM manufactured defective drywall and then sold, directly and indirectly, to certain suppliers or other business entities within the United States.

16.     Defendant SASAC supervises the state-owned assets of enterprises engaged in drywall production, including Taishan, TTP, Qinhuangdao, BNBM, BNBM Group, and CNBM. Defendant SASAC oversees 150 large central state-owned assets and enterprises, including a 100% controlling interest in an entity that exerts direct control over CNBM and BNBM.  In turn, BNBM holds a majority stake (estimated at approximately 65%) in Taishan and exerts direct control over its activities.  Because of its controlling interests, SASAC controls all of the Taishan affiliates and subsidiaries, which have been found by the U.S. District Court for the Eastern District of Louisiana to be alter egos of one another and a single business enterprise.

17.     Defendant SASAC retains the authority to appoint the officers and directors in Taishan, TTP, BNBM, BNBM Group, and CNBM.  Moreover, Defendant SASAC has used this authority to direct the business operations and activities of these same subsidiary entities in the years leading up to and including the period of time that defective drywall was manufactured and sold to entities in the United States of America.

18.     Defendant SASAC is a foreign corporation doing business in several States, including but not limited to, Alabama, Florida, Georgia, Louisiana, Mississippi, Texas and Virginia.  Upon information and belief, Defendant SASAC, together with its affiliates and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by consumers in the United States of America and installed in structures in the United States of

America.  Defendant SASAC manufactured defective drywall and then sold, directly and indirectly, to certain suppliers or other business entities within the United States.

19.     Upon information and belief, Taishan is controlled by BNBM and/or China National Building Material Group Corporation, which are state-owned entities and controlled by the Chinese government through Defendant SASAC.

20.     Upon information and belief, with the oversight and control of BNBM, CNBM and SASAC, Taishan (and its related subsidiaries) manufactured and sold defective drywall bearing the following markings:  "Made In China," "4feetx12feetx1/2inch," "4feet*12feet*1/2inch," "Made in China Meet of Exceed ASTM C1396 04 Standard," "Prowall Drywall, Inc.," "Pro Wall," "Dragon Brand Gypsum," "IMT," "IMG," "International Material Gypsum," "IMG Gypsum," "IMG Chinese Plasterboard," "C&K," "Bedrock Gypsum," "Taian Taishan," "Venture Supply, Inc.," "Crescent City Gypsum," "Crescent City Gypsum, Inc.," and "Bedrock Gypsum Company," among others.

21.     To the extent any of the foreign defendants are deemed to be foreign sovereign entities, including but not limited to Taishan, TTP, Qinhuangdao, BNBM, CNBM, CNBM Group, and SASAC, Plaintiffs bring their claims against these entities pursuant to 28 U.S.C. § 1605(a)(2), the commercial activity exception to the Foreign Sovereign Immunities Act, or alternatively under § 1605(a)(5), the tortious act exception.  Plaintiffs allege that the claims against the foreign defendants are based upon commercial activities carried out in the United States of America along with entities including, but not limited to, CNBM USA Corporation, BNBM American, and United Suntech.  The claims also seeks monetary damages against a foreign state for damage to property occurring in the United States of America, caused by the

tortious acts or omissions of that foreign state, or of any official or employee of that foreign state while acting within the line and scope of his office or employment.

**Unascertainable Manufacturer Defendants**

22.     Upon information and belief, certain defendants are manufacturers of the defective Chinese manufactured drywall at issue in this litigation.  Because these defendants have fraudulently concealed their identities and/or their involvement in the manufacture, distribution, supply sale, importing, exporting, and/or brokering of the defective drywall at issue in this litigation they are considered "unascertainable manufacturer defendants." Certain of the defendants below (and the Plaintiffs asserting claims against them) may later need to be included in these proceedings.

23.     Defendant, International Material Gypsum, Inc. a/k/a IMG Gypsum; International Material Gypsum, Ltd.; IMG; International Materials Gypsum; IMG Chinese Plasterboard (hereinafter "IMG") is a manufacturer, importer, exporter, distributor, supplier, and/or broker of drywall and related building products that engaged in these practices, which has resulted in harm and damages to Class and Subclass Members.  Defendant's address and place of incorporation are unknown and have been fraudulently concealed by this Unascertainable Defendant and others.

24.     Defendant, Bedrock Gypsum Company, Inc. a/k/a Bedrock Gypsum, Inc.; Bedrock Gypsum, LLC; and, Bedrock Gypsum, Ltd. (hereinafter "Bedrock Gypsum") is a manufacturer, importer, exporter, distributor, supplier, and/or broker of drywall and related building products that engaged in these practices, which has resulted in harm and damages to Class and Subclass Members.  Defendant's address and place of incorporation are unknown and have been fraudulently concealed by this Unascertainable Defendant and others.

## GENERAL ALLEGATIONS

25.     Upon information and belief, Defendants' drywall contains gypsum.

26.     In "defective drywall" (such as that designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, sold and/or installed by Defendants herein), the gypsum and other components of the product react, break down, and release sulfur compounds and other noxious gases from the drywall.

27.     The sulfur compounds, including Hydrogen Sulfide, Carbonyl Sulfide, and Carbon Disulfide, exit Defendants' drywall and cause rapid sulfidation and damage to personal property (such as air conditioning and refrigerator coils, faucets, utensils, electrical wiring, copper, electronic appliances and other metal surfaces and property).

27.     Although the drywall functions according to is intended purpose as a building material and/or building component, it is unfit for this purpose due to the damaging side effects and/or because its use is so inconvenient that Plaintiffs would not have purchased their homes had the side effects been disclosed by Defendants.

28.     As a direct and proximate result of Defendants' actions and omissions, Plaintiffs and the Class Members' homes, residences, structures, and personal property have been exposed to the harmful effects of Defendants' defective drywall, including the corrosive damage and harmful effects causally connected to the sulfur compounds and other noxious gases emitted by Defendants' defective drywall.

29.     Defendants tortiously manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed, sold and/or installed defective drywall, which was unfit for its intended purpose and unreasonably dangerous in its normal use because the drywall

caused corrosion and damage to personal property in Plaintiffs' and Class Members' homes, residences and structures.

30.     Defendants recklessly, wantonly, and/or negligently manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed and/or sold the defective drywall at issue in this litigation.

31.     Defendants recklessly, wantonly, and/or negligently failed to implement procedures for safely formulating, preparing, testing, and otherwise ensuring that the drywall at issue in this litigation was safe for consumers.

32.     As a direct and proximate result of Defendants' defective drywall and the corrosive and harmful effects of the sulfur compounds and other noxious gases released from these products, Plaintiffs and the Class Members have suffered, and continue to suffer, economic harm.

33.     As a direct and proximate result of Defendants' defective drywall and the harmful effects of the sulfur compounds and other noxious gases emitted by their products, the Plaintiffs and the Class Members have suffered, and continue to suffer damages.

34.     Plaintiffs' damages include, but are not limited to, cost of inspection; cost and expenses necessary to fully remediate their homes of defective drywall, cost of alternative living arrangements, economic hardship resulting in lower credit ratings leading to higher interest rates on loans and credit cards, lost value or devaluation of their homes and property; and/or loss of use and enjoyment of their home and property.

35.     As a direct and proximate result of Defendants' defective drywall and the harmful effects of the sulfur compounds and other gases released from these products, Plaintiffs have

need for injunctive relief in the form of repair and remediation of their homes, rescission of contracts, the ordering of emergency/corrective notice.

## CLASS ACTION ALLEGATIONS

### The Manufacturing Class

36.     The representative Plaintiffs with claims against the manufacturing defendant assert a class pursuant to Rules 23(a), (b)(1), (b)(2), (b)(3) and/or 23(c)(4) of the Federal Rules of Civil Procedure, on behalf of themselves and those similarly situated, against the manufacturing defendants named herein. Plaintiffs define their class as follows:

> All owners and residents (past and present) of real property located in the United States of America containing defective Chinese drywall manufactured, sold, distributed, and/or supplied by the defendants.

### General Class Allegations and Exclusions from the Class Definitions

37.     The following Persons shall be excluded from the Class: (1) Defendants and their subsidiaries, affiliates, officers and employees; (2) all Persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the judge(s) to whom this case is assigned and any immediate family members thereof.

38.     Upon information and belief, the Defendants' defective drywall was installed in thousands of homes, residences, or other structures owned by Plaintiffs and Class Members. The Class defined herein are sufficiently numerous such that joinder of all members of the Class in a single action is impracticable.

39.     There are numerous common questions of law and fact that predominate over any questions affecting only individual members of the Class.  Among these common questions of law and fact are the following:

  a.   whether Defendants' drywall products that release sulfur compounds are defective and/or unfit for their intended purposes;

  b.   whether Defendants tortiously manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, sold, and/or installed defective drywall products;

  c.   whether Plaintiffs are entitled to recover compensatory, exemplary, incidental, consequential, punitive, and/or other damages as a result of Defendants' unlawful and tortious conduct; and,

  d.   whether Plaintiffs and Class Members are entitled to recover injunctive and/or equitable relief as a result of Defendants' unlawful and tortious conduct.

40.     The legal claims of named Plaintiffs are typical of the legal claims of other Class Members.  The named Plaintiffs are typical of the legal claims of other Class Members and the named Plaintiffs have the same legal interests and need for legal remedies as other Class Members.

41.     Named Plaintiffs are adequate representatives of the Class and, together with the undersigned legal counsel, each will fairly and adequately protect the interests of Class Members.  Named Plaintiffs have no known conflict with the Class and are committed to the vigorous prosecution of this action.

42.     The undersigned counsel is competent counsel experienced in class action litigation, mass torts, and litigation involving defective and harmful products.  Counsel will fairly and adequately protect the interests of the Class.

43.     The various claims asserted in this action are certifiable under the provisions of Federal Rules of Civil Procedure 23(b)(1) because prosecuting separate actions by or against

individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class and Subclass members that would establish incompatible standards of conduct for the party opposing the class; or adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other Class Members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

44.     The claims for injunctive relief in this case are certifiable under Fed. R. Civ. P. 23(b)(2).  Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief is appropriate respecting the Class as a whole.

45.     A class action is superior to other methods of dispute resolution.  The Class members have an interest in class adjudication rather than individual adjudication because of their overlapping rights.  It is highly desirable to concentrate the resolution of these claims in this single forum because it would be difficult and highly unlikely that the affected Class Members would protect their rights on their own without this class action case.  Management of the class will be efficient and far superior to the management of individual lawsuits. Accordingly, Plaintiffs' legal claims are appropriate for certification pursuant to Rule 23(b) of the Federal Rules of Civil Procedure.

46.     The issues particularly common to the Class Members' claims, some of which are identified above, are alternatively certifiable pursuant to Fed. R. Civ. P. 23(c)(4), as resolution of these issues would materially advance the litigation, and class resolution of these issues is superior to repeated litigation of these issues in separate trials.

<u>**COUNT I**</u>
**NEGLIGENCE**

47.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth fully herein.

48.     Defendants owed a duty to Plaintiffs and Class Members to exercise reasonable care in designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, selling, and/or installing this drywall, including a duty to adequately warn of their failure to do the same.

49.     Defendants knew or should have known that their wrongful acts or omissions would result in harm and damages in the manner set forth herein.

50.     Defendants breached their duty to exercise reasonable care in the designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, selling, and/or installing this drywall.

51.     Defendants likewise breached their duties to Plaintiffs and Class Members by failing to warn about the defective nature of the drywall.  Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the homes of Plaintiffs and Class Members.

52.     Defendants breached their duty to exercise reasonable care to timely remove and/or recall from the market and/or otherwise prevent the continued contact of Plaintiffs and Class Members with the drywall, upon learning it had been sold in an unreasonably dangerous condition.

53.     Given the defect in the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm and damages to Plaintiffs and Class Members.

14

54.     As a direct and proximate cause of Defendants' acts or omissions.  Plaintiffs and Class Members were harmed and have incurred damages as described herein.

## COUNT II
## NEGLIGENCE PER SE

55.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth fully herein.

56.     Defendants owed statutory duties to Plaintiffs and Class Members to exercise reasonable care in designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, selling, and/or installing this drywall.

57.     Defendants breached their statutory duties to the Plaintiffs and Class Members by failing to exercise reasonable care in the designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, selling, and/or installing this drywall.

58.     Defendants likewise breached their statutory duties, including but not limited to those imposed under the International Building Code ("IBC") and other state and local building codes, to Plaintiffs and Class Members by failing to warn about the defective nature of the drywall.  For instance, it is specifically alleged that Defendants furnished the drywall in violation of ASTM C 1396/C 1396M-069, and its predecessor(s).

59.     Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the homes of Plaintiffs and Class Members.

60.     Given the defect in the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm and damages to Plaintiffs and Class Members.

15

61.     As a direct and proximate cause of Defendants' acts or omissions, Plaintiffs and Class Members were harmed and have incurred damages as described herein.

## COUNT III
## STRICT LIABILITY

62.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth fully herein.

63.     At all times relevant hereto, Defendants were in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public.

64.     The drywall, including that installed in the homes of Class Members was placed by Defendants into the stream of commerce.

65.     Defendants knew that the subject drywall would be used without inspection for defects by consumers.

66.     Defendants intended that the drywall reach the ultimate consumers, such as Class members, and it indeed reached Class members when it was installed in their homes.

67.     When installed in Class Members' homes, the drywall was in substantially the same condition as it was in when Defendants manufactured, sold, and/or delivered it.

68.     At all times relevant hereto the subject drywall was used in a manner consistent with the uses intended by, or known to Defendants, and in accordance with the Defendants' directions and instructions.

69.     The subject drywall was not misused or altered by any third parties.

70.     The Defendants' drywall was defectively manufactured, designed, inspected, tested, marketed, distributed, and sold.

16

71.     The design defect was in designing drywall that allowed high levels of sulfur and/or other chemicals to emit through off-gassing.

72.     The manufacturing defect was in improperly selecting, testing, inspecting, mining, making, assembling, and using, gypsum for drywall with levels of sulfur that were too high and emitted various sulfide gasses and/or other chemicals through off-gassing.

73.     The drywall was also defective because it was improperly exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold in a defective condition, as described above.

74.     The Defendants' defective manufacturing, designing, inspecting, testing, marketing, distributing, and selling of the drywall rendered it unsafe and unreasonably dangerous for its intended use and to Class Members.

75.     The drywall is also defective and unreasonably dangerous because Defendants failed to adequately warn and instruct Class members of the defective design, inspection, testing, manufacturing, marketing, and selling of the drywall.

76.     Class Members were neither aware of the unreasonably dangerous propensities and defective condition of the drywall, nor could Class Members, acting as reasonably prudent people discover that Defendants' drywall was defective, as set forth herein, or perceive its danger.

77.     Defendants' defective drywall was much more dangerous and harmful than expected by the average consumer and by Class Members.

78.     The benefit, if any, of Class Members using Defendants' defective drywall was greatly outweighed by the risk of harm and danger.

79.     The defects in the drywall, as well as Defendants' failure to adequately warn

Class Members of the defects rendered the drywall unreasonably dangerous, was the direct and

proximate cause of damages of Class members.


## COUNT IV
## BREACH OF EXPRESS AND/OR IMPLIED WARRANTY

80.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

81.     Defendants and/or their agents were in privity with Plaintiffs and Class Members

and/or Plaintiffs and Class Members were foreseeable third-party beneficiaries of any warranty.

82.     At the times Defendants installed, utilized, supplied, inspected, sold, and/or

installed this drywall for use in the Plaintiffs' and Class Members' homes, Defendants knew, or

it was reasonably foreseeable, that the drywall would be installed in the Plaintiffs' and Class

Members' homes for use as a building material, and expressly or impliedly warranted the

product to be fit for that use.

83.     Defendants placed their drywall products into the stream of commerce in a

defective condition and these products were expected to, and did, reach users, handlers, and

persons coming into contact with said products without substantial change in the condition in

which they were sold.

84.     The drywall was defective because it was not fit for the uses intended by

Defendants; to wit, the installation of the drywall in Plaintiffs' and Class Members' homes was

not suitable for use as a building material, because it contained the defects as set forth herein.

85. The Defendants breached their warranty because the drywall was not fit and safe for the particular purposes for which the goods were required (to be installed in Plaintiffs and Class Members' homes as a building material) due to the defects set forth herein.

86. Defendants had reasonable and adequate notice of the Plaintiffs' and the Class Members' claims for breach of warranty and failed to cure.

87. As a direct and proximate cause of Defendants' breach of warranties, Plaintiffs and Class Members have incurred harm and damages as described herein.

**COUNT V**
**BREACH OF IMPLIED WARRANTY OF FITNESS AND MERCHANTABILITY**
**PURSUANT TO FLORIDA STATUTES SECTION 718.203**
**(On Behalf of Plaintiffs Who Own Condominiums in the State of Florida)**

88. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

89. Class Members who own condominiums in Florida, are owners of condominiums as that term is defined by Florida Statutes section 718.503.

90. Such Class members, as owners, are entitled to the benefit of the statutory warranties of fitness and merchantability pursuant to Florida Statutes section 718.203.

91. Each of the builders who are subject to this claim are developers, as defined by Florida Statutes section 718.203(16), as they created condominiums or offered condominiums for sale in the ordinary course of business.

92. Pursuant to Florida Statutes section 718.203(1)(a-e), each builder who is subject to this claim is deemed to have granted Class Members, who own condominiums in Florida, an implied warranty of fitness and merchantability for the purposes or uses as follows:

19

a.     As to each unit, a warranty for 3 years commencing with the completion of the building containing the unit.

b.     As to the personal property that is transferred with, or appurtenant to, each unit, a warranty which is for the same period as that provided by the manufacturer of the personal property, commencing with the date of closing of the purchase or the date of possession of the unit, whichever is earlier.

c.     As to all other improvements for the use of unit owners, a 3 year warranty commencing with the date of completion of the improvements.

d.     As to all other personal property for the use of unit owners, a warranty which shall be the same as that provided by the manufacturer of the personal property.

e.     As to the roof and structural components of a building or other improvements and as to mechanical, electrical, and plumbing elements serving improvements or a building, except mechanical elements serving only one unit, a warranty for a period beginning with the completion of construction of each building or improvement and continuing for 3 years thereafter or 1 year after owners other than the developer obtain control of the association, whichever occurs last, but in no event more than 5 years.

93.     At all times relevant hereto, routine maintenance was performed by Class members and/or the builders who are subject to this claim or by an association controlled by such builders.

94.     At the times the builders who are subject to this claim installed, utilized, supplied, inspected, and/or sold drywall for use in the Class Members' homes, the builders knew, or it was reasonably foreseeable, that the drywall would be installed in the Class Members' homes for use as a building material, and warrantied the product be fit and merchantable for that use.

95.     Defendants' drywall product was placed into the stream of commerce by the builders who are subject to this claim in a defective condition and was expected to, and did, reach users, handlers, and personas coming into contact with said product without substantial change in the condition in which it was sold.

96.     The drywall was defective because it was not fit for the uses intended or reasonably foreseeable by the builders; to wit, the installation of the drywall in Class Members' homes for use as a building material, because it contained defects as set forth herein.

97.     The builders who are subject to this claim breached the implied warranty of merchantability and fitness because the drywall was not fit to be installed in Class Members' homes as a building material due to the defects set forth herein.

98.     The builders who are subject to this claim had reasonable and adequate notice of the Class Members' claims for breach of implied warranty of fitness and merchantability and failed to cure.

99.     As a direct and proximate cause of the builders' breach of the warranties under Florida Statutes section 718.203, Class Members have incurred harm and damages as described herein.

### COUNT VI
### REDHIBITION
### (By Louisiana Plaintiffs Against All Defendants)

100.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

101.    The drywall manufactured, distributed and/or sold by Defendants was not reasonably fit for its ordinary and intended purpose.

102.    Defendants are therefore liable to Louisiana Plaintiffs for all reasonable damages in accordance with La. Civ. Code art. 2524.

103.    In addition, or in the alternative, the drywall manufactured, distributed and/or sold by Defendants contained redhibitory defects, because, at the time of delivery, the propensity to emit or off-gas sulfur compounds and/or other potentially harmful, irritating and/or corrosive

substances renders the drywall so useless and/or inconvenient that it must be presumed that Plaintiffs would not have purchased the drywall had they known of the defect or defects.

104.    In the alternative, the defects are redhibitory because, while not rendering the drywall totally useless, it did diminish the drywall's use and/or diminish the drywall's value to such an extent that it must be presumed that the buyer would have bought it, but for a lesser price.

105.    The Manufacturing Defendants are presumed to possess knowledge of the defects in the drywall manufactured by them.

106.    In addition, it is believed and alleged that all defendants knew of the defects in the drywall at the time the drywall was delivered and/or sold.

107.    Defendants have had numerous opportunities to repair and/or replace the drywall and associated fixtures and/or building components and have failed to do so; in addition and/or in the alternative, such requests have been, would have been and/or would be futile; moreover, Manufacturing Defendants and/or Distributor Defendants are deemed to be placed on notice when notice is provided to "Builder Defendants" (and/or Distributor Defendants); and, in addition or alternatively, all Defendants had actual knowledge of the problems in the drywall and the need for replacement, remediation and/or repair.

108.    All Defendants are therefore liable to all Louisiana Plaintiffs for a return of the purchase price (with interest from the time it was paid), reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the drywall and associated items, for damages, and for reasonable attorneys' fees, in accordance with La. Civ. Code art. 2545.

109.    In the alternative, to the extent that any Distributor Defendant and/or Builder Defendant did not know of the defects in the drywall at the time of delivery and/or sale, those

defendants are liable to Louisiana Plaintiffs to repair, remediate or correct the defect; and/or if unable to do so, for a return of the purchase price (with interest from the time it was paid), reimbursement of the reasonable expenses occasioned by the sale, and those expenses incurred for the preservation of the drywall and associated items, in accordance with La. Civ. Code art. 2531.

**COUNT VII**
**LOUISIANA PRODUCTS LIABILITY ACT**

110. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

111. In addition to any and all damages, attorneys' fees and other remedies made available to Louisiana Plaintiffs under the warranty of fitness and/or warranty against redhibitory defects, the Manufacturing Defendants are liable to Louisiana Plaintiffs under the Louisiana Products Liability Act, ("LPLA"), La. R.S. 9:2800.51 *et seq*.

112. The LPLA is also pleaded in the alternative with respect to any Distributor Defendant who might be considered a "manufacturer" under La. R.S. 9:2800.53(1)(a) (labels or otherwise holds the drywall out as his own), 9:2800.53(1)(b) (exercises control over or influences a characteristic of the drywall causing damage), 9:2800.53(1)(c) (the manufacturer of a product which contains the drywall as a component part), and/or 9:2800.53(1)(d) (a seller of a product of an alien manufacturer where the seller is in the business of importing or distributing the drywall for resale and is the alter ego of the alien manufacturer).

113. The Manufacturing Defendants, upon information and belief, expressly warranted that "the gypsum boards manufactured and sold… are guaranteed to be free from defects in materials and workmanship."

114. The Manufacturing Defendants expressly warranted that "the gypsum boards were manufactured in accordance with ASTM C36."

115. The drywall at issue is, in all cases, unreasonably dangerous by virtue of the unreasonable off-gassing and/or emission of sulfur compounds and/or other corrosives, toxins and/or irritants, which do not in any way contribute to or enhance the utility of the drywall, yet pose a risk to the wiring, plumbing, appliances, personal property, overall economic value of the property and financial security of the owner, and/or the health of the residents of the property.

116. At all times pertinent and material hereto, Manufacturing Defendants (and/or Distributor Defendants who may be considered "manufacturers" under the LPLA) knew that their drywall was unreasonably dangerous and/or defective as set forth herein.

117. In the alternative, Manufacturing Defendants and/or Distributor Defendants who may be considered "manufacturers" under the LPL) should have, at all times pertinent and material hereto, known of the unreasonably dangerous and/or defective characteristics and/or conditions, had the reasonably employed then-existing scientific and/or technical knowledge, reasonable testing, and/or other reasonable and then-accepted methods of quality assurance and/or quality control.

118. Defendants' drywall is unreasonably dangerous in composition or construction in that, at the time it left Defendants' control, it deviated in a material way from Defendant's own specification or performance standards.

119. In addition, and in the alternative, defendants' drywall is unreasonably dangerous in design, in that, at the time the drywall left Defendant's control, there existed an alternative design for the product that was capable of preventing Plaintiffs' damage, and the likelihood of causing the plaintiffs' damage and the gravity of that harm outweighed the burden (if any) on the

Defendant in adopting such alternative design and the adverse effect (if any) on the utility of the drywall.

120.    In addition, or in the alternative, Defendants' drywall is unreasonably dangerous in that it fails to conform to an express warranty about the product which induced the use of the product and caused damage to Plaintiffs to the extent that the warranty was untrue.

121.    In addition, or in the alternative, Defendants' drywall is unreasonably dangerous due to an inadequate warning, in that, at the time the drywall left Defendant's control, the drywall possessed a characteristic that might cause damage and yet Defendant failed to use reasonable care to provide an adequate warning of such characteristics and/or dangers to users and/or handlers of the drywall.

122.    Defendants are therefore liable to Louisiana Plaintiffs for all damages reasonable in the premises.

**COUNT VIII**
**PRIVATE NUISANCE**

123.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

124.    The Defendants' tortious or wrongful acts or omissions have caused sulfide gas and/or other chemical leaching into Plaintiffs' and Class Members' homes which has unreasonably interfered, and continues to interfere, with the Plaintiffs' and Class Members' use and enjoyment of their properties and caused them harm and damage as discussed herein.

125.    Defendants' interference has impaired the rights of Plaintiffs' and Class Members' health, comfort, safety, free use of their property, and/or peaceful enjoyment of their property.

126.    Defendants' invasions were intentional and unreasonable, and/or unintentional but otherwise negligent or reckless.

127.    The interference with Plaintiffs' and Class Members' use of their property caused by Defendants is substantial and is ongoing.

128.    Defendants' private nuisance was the direct, proximate, and foreseeable cause of Plaintiffs and Class Members' damages, injuries, harm, loss, and increased risk of harm, which they suffered and will continue to suffer.

129.    As a direct and proximate cause of Defendants' creation of a private nuisance, Plaintiffs and Class Members have incurred harm and damages and/or personal injuries as described herein.

<u>**COUNT IX**</u>
**NEGLIGENT DISCHARGE OF A CORROSIVE SUBSTANCE**

130.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

131.    Defendants had actual or constructive knowledge of the extremely corrosive and dangerous propensities of the drywall at issue in this litigation.

132.    Notwithstanding their actual or constructive knowledge of the corrosive and dangerous propensities of the drywall, defendants nevertheless designed, manufactured, imported, distributed, delivered, supplied, marketed, inspected, installed, or sold the drywall for use in the homes or other structures owned by Plaintiffs and Class Members.

133.    By causing the sale, distribution, delivery, and/or supply of the drywall under these circumstances, Defendants breached their duty to exercise reasonable care and created a foreseeable zone of risk of injury to Plaintiffs and Class Members.

134.    Defendants likewise breached their duties to Plaintiffs and Class Members by failing to warn about the corrosive and dangerous propensities of the drywall. Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective

drywall and the adverse effects that it could have on the property and bodies of Plaintiffs and Class Members.

135.    Plaintiffs and Class Members have suffered injuries by virtue of their exposure to the defective drywall at issue in this litigation.  Given the defect in the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm, damages and/or personal injuries to Plaintiffs and Class Members.

136.    As a direct and proximate result of Defendants' acts and omissions, Plaintiffs and Class Members were harmed and have incurred damages and/or personal injuries as described herein.  The injuries sustained by Plaintiffs and Class Members are within the foreseeable zone of risk created by Defendants.


## COUNT X
## UNJUST ENRICHMENT

137.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

138.    Defendants received money as a result of Plaintiffs' and Class Members' purchase of Defendants' defective drywall, or purchase of homes containing this drywall, either directly or through an agent, and Defendants wrongfully accepted and retained these benefits to the detriment of Plaintiffs and Class Members.

139.    Defendants' acceptance and retention of these benefits under the circumstances make it inequitable and unjust for Defendants to retain the benefit without payment of the value to the Plaintiffs and the Class Members.

140.    Defendants, through deliberate and tortious conduct complained of herein, have been unjustly enriched in a manner which warrants restitution.

## COUNT XI
## VIOLATION OF CONSUMER PROTECTIONAL ACTS

141.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

142.    This is an action for relief under the various Consumer Protection Acts of the jurisdictions in which affected properties are present, including but not limited to La R.S. 51:1401, *et seq*. (Louisiana Unfair Trade Practices and Consumer Protection Law); Ala. Code 1975 § 8-19-1, *et seq*. (Alabama Deceptive Trade Practices Act); G.S. § 75-1-1, *et seq*. (North Carolina Consumer Protection Act); F.S. § 501.201, *et seq*. (Florida Deceptive and Unfair Trade Practices Act); O.C.G.A. § 10-1-370, *et seq*. (Georgia Uniform Deceptive Trade Practices Act); Virginia Code § 59.1-196, *et seq*. (Virginia Consumer Protection Act); Tex. Bus. Com. Code Ann. §17.41, *et seq*. (Texas Deceptive Trade Practices - Consumer Protection Act); Miss. Code Ann. § 75-24-1, et seq. (Mississippi Consumer Protection Act).

143.    The Defendants' acts and omissions as well as their failure to use reasonable care in this matter as alleged in this complaint, including but not limited to, the knowing misrepresentation or failure to disclose the source, affiliation, origin, characteristics, ingredients, standards and quality of defective drywall constitute violation of the provisions of the Consumer Protection Acts of the relevant states.

144.    Plaintiffs and Class members have suffered actual damages as a result of Defendants' violation of these Consumer Protection Acts and are entitled to relief.

145.    As a direct and proximate cause of Defendants' violations of the Consumer Protection Acts of the relevant states, Plaintiffs and Class Members have incurred harm and damages as described herein.

## COUNT XII
## EQUITABLE AND INJUNCTIVE RELIEF

146.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

147.     Plaintiffs and Class Members are without adequate remedy at law, rendering injunctive and other equitable relief appropriate.

148.     Plaintiffs and Class Members will suffer irreparable harm if the Court does not render the injunctive relief as set forth herein, and if Defendants are not ordered to recall, buy back, rescind, and/or repair the homes and structures owned by Plaintiffs and Class Members.

149.     Plaintiffs, on behalf of themselves and all others similarly situated, demand injunctive and equitable relief and further, that Defendants be ordered to: (1) to buy back or rescind the contracts for Plaintiffs' and Class Members' homes and other structures, or in the alternative, remediate, repair and/or replace the drywall in the homes and structures upon proof by the Defendants of the feasibility of such remedy or repair; (2) cease and desist from misrepresenting to the Class and the general public that there is no defect in, or danger associated with the drywall; and (3) institute, at their own cost, a public awareness campaign to alert the Class and general public of the defect and dangers associated with the drywall.

## DEMAND FOR JURY TRIAL

Plaintiffs individually and on behalf of the Class Members, hereby demand a trial by jury as to all issues so triable as a matter of right.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs, on behalf of themselves and all others similarly situated demand upon Defendants jointly and severally for:

a.   An order certifying the case as a class action;

b.   An order certifying the Class as defined herein;

c.   An order appointing Plaintiffs as the Class Representatives;

d.   An order appointing the undersigned as counsel for the Class;

e.   Compensatory, statutory, and/or punitive damages;

f.   Pre and post-judgment interest as allowed by law;

g.   Injunctive relief;

h.   An award of attorney's fees as allowed by law;

i.   An award of taxable costs; and

j.   Any and all such further relief as this Court deems just and proper.


s/ *James V. Doyle, Jr.*
James V. Doyle, Jr.
DOYLE LAW FIRM, PC
2100 Southbridge Pkwy., Suite 650
Birmingham, AL 35209
Tele: 205-533-9500
Fax: 844-638-5812
jimmy@doylefirm.com
*Attorney for Plaintiffs*


Dated: July 9, 2018