# EXHIBIT

# "A"

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA



IN RE:   CHINESE MANUFACTURED       *   Docket No.: 09-MD-2047
         DRYWALL PRODUCTS           *   Section "L"
         LIABILITY LITIGATION       *   July 12, 2018
                                    *   New Orleans, Louisiana
This Document Relates To All Cases  *
* * * * * * * * * * * * * * * * * * *


              TRANSCRIPT OF MOTION HEARING PROCEEDINGS
            HEARD BEFORE THE HONORABLE ELDON E. FALLON
                    UNITED STATES DISTRICT JUDGE



APPEARANCES:

For the Plaintiffs:         Herman Herman & Katz, L.L.C.
                            BY:  RUSS HERMAN, ESQ.
                            820 O'Keefe Avenue
                            New Orleans, Louisiana 70113



For the Plaintiffs:         Yance Law Firm, LLC
                            BY:  R. TUCKER YANCE, ESQ.
                            169 Dauphin Street
                            Suite 318
                            Mobile, Alabama 36602



Official Court Reporter:    Jodi Simcox, RMR, FCRR
                            500 Poydras Street
                            Room B-406
                            New Orleans, Louisiana 70130
                            (504) 589-7780


Proceedings recorded by mechanical stenography, transcript
produced by computer.
```

```
 1                        PROCEEDINGS
 2                       (July 12, 2018)
 3                          ******
 4
 5          (COURT CALLED TO ORDER)
 6          THE COURT:  Be seated, please.  Good morning, ladies
 7   and gentlemen.
 8          Call the case, please.
 9          THE DEPUTY CLERK:  MDL No. 2047, In re:  Chinese
10   Manufactured Drywall Products Liability Litigation.
11          THE COURT:  Counsel, make their appearance for the
12   record, those who are going to present the case.
13          MR. YANCE:  Tucker Yance from Mobile, Alabama.
14          MS. EMMERLING:  Victoria Emmerling from Morris Bart,
15   LLC.
16          THE COURT:  Okay.
17          MR. HERMAN:  May it please the Court, good morning,
18   Judge Fallon.  I'm Russ Herman.  I'm here to respond on behalf
19   of liaison and lead to Mr. Yance's motion.
20          THE COURT:  Okay.  We have a motion regarding the
21   place to put the attorney's fees while the Court's determining
22   who gets what.  They're presently in the registry of the court.
23              I'll hear from the parties now.  Where do you
24   want them?
25          MR. YANCE:  Thank you, Your Honor.  Did you ask me --
```

1      **THE COURT:**  Yeah.  Where do you want the fees?
2      **MR. YANCE:**  Where do I want them?
3      **THE COURT:**  Yeah.
4      **MR. YANCE:**  Well, as it currently sits, the court
5  registry is earning a significantly higher interest rate than
6  Esquire has ever paid, is my understanding based on e-mails
7  from the finance department, so to speak, with the court.
8      **THE COURT:**  Yeah, but times have changed.  From that
9  standpoint, that wasn't the case early on because the interest
10 rate at that early stage was certainly less than it is now.
11 It's, of course, increased.  I don't know what Esquire is
12 paying now, but I know what the court's paying now, but they
13 didn't pay that in '16 or '17.  That's the facts.  You want
14 them left at the --
15     **MR. YANCE:**  Well, Your Honor, I would be open to
16 either them being left in the court registry, if the Court
17 feels that that is appropriate; or, otherwise, you know, a
18 different depository bank, you know, that could come in and
19 apply to be appointed such depository bank and provide accurate
20 information regarding their bank and that kind of thing.  I
21 don't have a specific --
22     **THE COURT:**  You just don't like Esquire Bank; is that
23 basically it?
24     **MR. YANCE:**  Well, Your Honor, yes.  I mean, it's not
25 that I don't like Esquire Bank at all.  It's a matter of the

1  circumstances as outlined in my memorandum in response -- I
2  mean, memorandum in support of my motion to immediately
3  transfer the funds, as well as the additional issues raised in
4  my memorandum in reply to that -- to Mr. Herman's response to
5  that motion.
6            And I feel that to place those funds back in
7  Esquire Bank at this time would not be an appropriate thing to
8  do.  And to the extent Your Honor ordered them moved from
9  Esquire Bank already, I believe the majority of the funds have
10 already been moved, and it may be that every penny has been
11 moved by now.  I have not verified that.
12           But as of the last time I checked, it was a
13 majority of the funds had been moved.  And to the extent they
14 have, I do think that is the appropriate place for them to be
15 unless and until the Court is presented with a different
16 depository bank that does not have the robust amount of issues
17 and, you know, conflicts, if I may, as Esquire Bank does.
18           **THE COURT:**  Well, the problem with some of the other
19 banks involved that were potential banks in this case was that
20 they had some interest in either Taishan or one of the
21 so-called alphabet areas that we're dealing with.  So it was
22 difficult to pick a bank that had a relationship with a
23 defendant.  That was one of the things that at least was
24 considered in the case.
25           But I hear you.  I understand your position.

1  Let me hear from the respondent, and I'll give you an
2  opportunity to rebut if you need to.
3              My question is the same:  Where would you want
4  the funds?
5         **MR. HERMAN:**  May it please the Court, those funds
6  belong at Esquire Bank for a number of reasons which I will go
7  into, but that's the answer to the question.  I'm prepared
8  today to talk about the history of the case, how the funds were
9  placed, how they were monitored, counsel's overreaching
10 argument about there was some conspiracy to delay by lead and
11 liaison to the benefit of Esquire Bank.
12             I am also prepared to how -- because I believe
13 there's a serious misunderstanding about MDLs, the power of an
14 Article III judge, what an MDL judge's responsibility is, which
15 certainly has been fulfilled here, and the causes of delay.
16 Because one of the overreaching arguments for moving these
17 funds is somehow lead counsel Arnold Levin and I have delayed
18 for the benefit of Esquire in this case as regard fees.
19             Notwithstanding that, I say to Your Honor --
20 originally I was angry.  I was mad.  Harriet Herman told me to
21 write five letters five times, tear them up, get rid of the
22 anger so you could be reasonable.  So the last thing I want to
23 talk about is how sad I am that learned counsel opposite would
24 bring this controversy into open court in the presence of the
25 defendants who are still in this case.  And I only can use my

experience and common sense to know that he has given comfort to them.

This case is hard enough.  He could have come to Your Honor, he could have asked for a private status conference, he could have filed his papers under seal.  I believe that every attorney has a right to challenge.  I don't dispute what's happened here, but I have to tell you, it's sad.

It used to be if a lawyer had a problem with another, he'd go over and see the senior partner, they'd talk about it, they'd resolve it, but they never ever brought a problem like this into open court.  So those are the issues.

But it belongs at Esquire Bank, and there's a solution to it, and it is to call Esquire Bank in, tell them what they can provide interest rate-wise, and continue a process where a court-appointed CPA, a court-appointed claims manager, who's -- they've been in this case from the beginning, Lenny Davis from my office, they make reports once a month.

I don't want ancillary litigation.  We've had enough.  Maybe I'm talking too long in answer to your question, but I did want to outline what I have to say and why the funds should be removed back to Esquire.

**THE COURT:**  Let me make this point.  I don't see any problem with having had the funds in Esquire Bank.  I don't attribute anything to any improper actions or anything of that sort.  The question is what to do with them at this point,

1  whether to keep them in the registry of the court or put them
2  some other place.  That's really the only question for me as I
3  see it.
4          **MR. HERMAN:**  Thank you, Your Honor.  Do you have
5  another question for me right now?
6          **THE COURT:**  What's the advantage of having Esquire as
7  opposed to the registry of the court?
8          **MR. HERMAN:**  Well, because, Your Honor, Esquire --
9  Mr. Garrett, who's appointed CPA by Your Honor, Jake Woody,
10 who's been here from the beginning of this, who says that
11 Esquire's the best bank that he's dealt with in terms of
12 response, and because they're in the process of sending, since
13 2014, monthly reports of everything that they've done.  And
14 they've been before the Court.  They've been before the CPA.
15 They've been before the manager.
16         And to change the process now -- and I believe
17 it is a process -- when there's been no wrongdoing on their
18 part, tends to support -- well, tends to support allegations
19 that are based on inaccuracies, and in my view, and only my
20 view, arise out of delays that have been caused by Mr. Yance
21 and his colleagues.  And I don't mean that in an ad hominem
22 statement.  I think we merely have to review the history of
23 delays to know what's happened here.
24         Lastly, I am concerned, very concerned, about
25 the damage that may have been done by defense counsel within

1  their absolute right.  They're brilliant.  I mean, they've got
2  hundreds and hundreds marshaled, and all bright.  But they had
3  an obligation to report back to the Chinese defendants, and
4  they certainly gave the Chinese defendants, just by human
5  nature, some stiffness to carry on.
6         And I think that should the funds not be sent
7  back to Esquire Bank, who's done a good job, assuming they can
8  match, Your Honor questions them, gives some public statement
9  that Arnold and I haven't been unethical, we haven't delayed,
10 and lately -- well, the media has picked this up because it's
11 all done publicly.  And I just think fairness dictates that the
12 funds be moved back to Esquire Bank.
13         **THE COURT:**  Okay.  I hear you.
14         Any response?
15         **MR. YANCE:**  Thank you, Your Honor.  May it please the
16 Court, first of all, with regard to my original filing, it took
17 a lot of thought and contemplation before I pulled the trigger
18 on that filing.  I didn't take it lightly.  In my 17 years of
19 practice, I have never done anything like this because I have
20 never been faced with anything like this or anything this
21 egregious.
22         I didn't file it under seal, that is correct.
23 And I didn't file it under seal because everybody that was --
24 that has an interest in this situation and the money sitting in
25 these attorney fee QSFs absolutely had the right to know about

```
 1   it, number one.
 2                 Number two, it has absolutely zero to do with
 3   the defendants in the case that remained, the Taishan
 4   defendants.
 5                 Now, having said that, Your Honor, I tried to
 6   put together an original filing with a memorandum and attached
 7   exhibits that provided a very short, concise, and easy to
 8   understand statement about the various problems with Esquire
 9   Bank continuing to serve as the depository bank, why it was
10   important to get those funds moved.
11                 I then in reply to a response by Mr. Herman
12   filed another one with that same goal.  I understand, and
13   admittedly, it was more complex in some ways than my first one.
14   So, you know, from that standpoint, I intend to rely primarily
15   on the filings that I have already made that clearly show the
16   conflicts that do exist and just the underlying issues.  And,
17   again, I say appearance, the appearance of impropriety.
18                 You know, do I know what was in Russ Herman's
19   mind?  No, I do not.  But what I have uncovered, as laid out in
20   both of my filings, is a very disturbing looking set of facts
21   supported by largely publicly available documents.  Now, in the
22   face of all of that, following the last status conference, Your
23   Honor moved the QSF to this court.
24                 You know, I am prepared to give a full-blown
25   presentation with a PowerPoint, go through the whole thing, and
```

1  lay out all of the reasons and expound upon the reasons why
2  Esquire Bank is not the appropriate bank to serve.  And if Your
3  Honor is even contemplating in any way, shape or form putting
4  the funds back in Esquire Bank, I do want to go through my
5  presentation.
6              I understand the sensitive nature of what I
7  filed.  Again, I don't take it lightly.  I take zero pleasure
8  in doing it.  I don't want to come in here and beat a dead
9  horse by going through 50 slides of why the money should never
10 even be considered to go back into Esquire Bank.  I don't want
11 to do that.  But if that contemplation is there, then I feel
12 that it's necessary that I do so.
13             **THE COURT:**  The disappointing thing to me is that
14 we're not talking about clients at this point.  We're just
15 talking about lawyers and lawyer fees.  And lawyers themselves
16 can't get it together about fees.  You're arguing not
17 necessarily the fee, but where to put the fee, and how much
18 interest can be earned with the fee.
19             And then you're trying to use whatever you feel
20 you could use either to get a better fee or a better portion of
21 the fee, and it's just disappointing to me to see lawyers
22 fighting about their money.  I'm not talking about the clients'
23 money.  The clients have no interest in this.  This is just
24 attorney's fees.  And you all can't even get together on
25 deciding where to put the money, not a question of how much to

1  get, but even where to put the money.  It's just disconcerting.
2              I'll take it on paper and I'll make a decision
3  on it.  Thank you all.
4              **MR. HERMAN:**  Thank you, Your Honor.
5              **THE COURT:**  Court will stand in recess.
6              (WHEREUPON, the proceedings were concluded.)
7                               *****
8                            **CERTIFICATE**
9          I, Jodi Simcox, RMR, FCRR, Official Court Reporter
10 for the United States District Court, Eastern District of
11 Louisiana, do hereby certify that the foregoing is a true and
12 correct transcript, to the best of my ability and
13 understanding, from the record of the proceedings in the
14 above-entitled and numbered matter.
15
16
17                            *s/Jodi Simcox, RMR, FCRR*
                              Jodi Simcox, RMR, FCRR
18                            Official Court Reporter
19
20
21
22
23
24
25

OFFICIAL TRANSCRIPT