# EXHIBIT

## "A"

1        UNITED STATES DISTRICT COURT

2        EASTERN DISTRICT OF LOUISIANA

3

4

5   IN RE:  CHINESE MANUFACTURED      *   Docket No.: 09-MD-2047
            DRYWALL PRODUCTS          *   Section "L"
6           LIABILITY LITIGATION      *   July 12, 2018
                                      *   New Orleans, Louisiana
7   This Document Relates To All Cases *
    * * * * * * * * * * * * * * * * * *

8

9            TRANSCRIPT OF MOTION HEARING PROCEEDINGS
          HEARD BEFORE THE HONORABLE ELDON E. FALLON
10               UNITED STATES DISTRICT JUDGE

11

12  APPEARANCES:

13  For the Plaintiffs:          Herman Herman & Katz, L.L.C.
                                 BY:  RUSS HERMAN, ESQ.
14                               820 O'Keefe Avenue
                                 New Orleans, Louisiana 70113

15

16
    For the Plaintiffs:          Yance Law Firm, LLC
17                               BY:  R. TUCKER YANCE, ESQ.
                                 169 Dauphin Street
18                               Suite 318
                                 Mobile, Alabama 36602

19

20
    Official Court Reporter:     Jodi Simcox, RMR, FCRR
21                               500 Poydras Street
                                 Room B-406
22                               New Orleans, Louisiana 70130
                                 (504) 589-7780

23

24  Proceedings recorded by mechanical stenography, transcript

25  produced by computer.

OFFICIAL TRANSCRIPT

**PROCEEDINGS**

**(July 12, 2018)**

**\*\*\*\*\*\***

(COURT CALLED TO ORDER)

       **THE COURT:**  Be seated, please.  Good morning, ladies and gentlemen.

       Call the case, please.

       **THE DEPUTY CLERK:**  MDL No. 2047, *In re:  Chinese Manufactured Drywall Products Liability Litigation.*

       **THE COURT:**  Counsel, make their appearance for the record, those who are going to present the case.

       **MR. YANCE:**  Tucker Yance from Mobile, Alabama.

       **MS. EMMERLING:**  Victoria Emmerling from Morris Bart, LLC.

       **THE COURT:**  Okay.

       **MR. HERMAN:**  May it please the Court, good morning, Judge Fallon.  I'm Russ Herman.  I'm here to respond on behalf of liaison and lead to Mr. Yance's motion.

       **THE COURT:**  Okay.  We have a motion regarding the place to put the attorney's fees while the Court's determining who gets what.  They're presently in the registry of the court.

       I'll hear from the parties now.  Where do you want them?

       **MR. YANCE:**  Thank you, Your Honor.  Did you ask me --

OFFICIAL TRANSCRIPT

1    **THE COURT:**  Yeah.  Where do you want the fees?

2    **MR. YANCE:**  Where do I want them?

3    **THE COURT:**  Yeah.

4    **MR. YANCE:**  Well, as it currently sits, the court

5    registry is earning a significantly higher interest rate than

6    Esquire has ever paid, is my understanding based on e-mails

7    from the finance department, so to speak, with the court.

8    **THE COURT:**  Yeah, but times have changed.  From that

9    standpoint, that wasn't the case early on because the interest

10   rate at that early stage was certainly less than it is now.

11   It's, of course, increased.  I don't know what Esquire is

12   paying now, but I know what the court's paying now, but they

13   didn't pay that in '16 or '17.  That's the facts.  You want

14   them left at the --

15   **MR. YANCE:**  Well, Your Honor, I would be open to

16   either them being left in the court registry, if the Court

17   feels that that is appropriate; or, otherwise, you know, a

18   different depository bank, you know, that could come in and

19   apply to be appointed such depository bank and provide accurate

20   information regarding their bank and that kind of thing.  I

21   don't have a specific --

22   **THE COURT:**  You just don't like Esquire Bank; is that

23   basically it?

24   **MR. YANCE:**  Well, Your Honor, yes.  I mean, it's not

25   that I don't like Esquire Bank at all.  It's a matter of the

OFFICIAL TRANSCRIPT

1　circumstances as outlined in my memorandum in response -- I

2　mean, memorandum in support of my motion to immediately

3　transfer the funds, as well as the additional issues raised in

4　my memorandum in reply to that -- to Mr. Herman's response to

5　that motion.

6　　　　　　And I feel that to place those funds back in

7　Esquire Bank at this time would not be an appropriate thing to

8　do.  And to the extent Your Honor ordered them moved from

9　Esquire Bank already, I believe the majority of the funds have

10　already been moved, and it may be that every penny has been

11　moved by now.  I have not verified that.

12　　　　　　But as of the last time I checked, it was a

13　majority of the funds had been moved.  And to the extent they

14　have, I do think that is the appropriate place for them to be

15　unless and until the Court is presented with a different

16　depository bank that does not have the robust amount of issues

17　and, you know, conflicts, if I may, as Esquire Bank does.

18　　　　　THE COURT:  Well, the problem with some of the other

19　banks involved that were potential banks in this case was that

20　they had some interest in either Taishan or one of the

21　so-called alphabet areas that we're dealing with.  So it was

22　difficult to pick a bank that had a relationship with a

23　defendant.  That was one of the things that at least was

24　considered in the case.

25　　　　　　But I hear you.  I understand your position.

OFFICIAL TRANSCRIPT

1    Let me hear from the respondent, and I'll give you an
2    opportunity to rebut if you need to.
3              My question is the same:  Where would you want
4    the funds?
5         **MR. HERMAN:**  May it please the Court, those funds
6    belong at Esquire Bank for a number of reasons which I will go
7    into, but that's the answer to the question.  I'm prepared
8    today to talk about the history of the case, how the funds were
9    placed, how they were monitored, counsel's overreaching
10   argument about there was some conspiracy to delay by lead and
11   liaison to the benefit of Esquire Bank.
12             I am also prepared to how -- because I believe
13   there's a serious misunderstanding about MDLs, the power of an
14   Article III judge, what an MDL judge's responsibility is, which
15   certainly has been fulfilled here, and the causes of delay.
16   Because one of the overreaching arguments for moving these
17   funds is somehow lead counsel Arnold Levin and I have delayed
18   for the benefit of Esquire in this case as regard fees.
19             Notwithstanding that, I say to Your Honor --
20   originally I was angry.  I was mad.  Harriet Herman told me to
21   write five letters five times, tear them up, get rid of the
22   anger so you could be reasonable.  So the last thing I want to
23   talk about is how sad I am that learned counsel opposite would
24   bring this controversy into open court in the presence of the
25   defendants who are still in this case.  And I only can use my

1    experience and common sense to know that he has given comfort
2    to them.
3              This case is hard enough.  He could have come to
4    Your Honor, he could have asked for a private status
5    conference, he could have filed his papers under seal.  I
6    believe that every attorney has a right to challenge.  I don't
7    dispute what's happened here, but I have to tell you, it's sad.
8              It used to be if a lawyer had a problem with
9    another, he'd go over and see the senior partner, they'd talk
10   about it, they'd resolve it, but they never ever brought a
11   problem like this into open court.  So those are the issues.
12             But it belongs at Esquire Bank, and there's a
13   solution to it, and it is to call Esquire Bank in, tell them
14   what they can provide interest rate-wise, and continue a
15   process where a court-appointed CPA, a court-appointed claims
16   manager, who's -- they've been in this case from the beginning,
17   Lenny Davis from my office, they make reports once a month.
18             I don't want ancillary litigation.  We've had
19   enough.  Maybe I'm talking too long in answer to your question,
20   but I did want to outline what I have to say and why the funds
21   should be removed back to Esquire.
22        **THE COURT:**  Let me make this point.  I don't see any
23   problem with having had the funds in Esquire Bank.  I don't
24   attribute anything to any improper actions or anything of that
25   sort.  The question is what to do with them at this point,

1    whether to keep them in the registry of the court or put them

2    some other place.  That's really the only question for me as I

3    see it.

4            **MR. HERMAN:**  Thank you, Your Honor.  Do you have

5    another question for me right now?

6            **THE COURT:**  What's the advantage of having Esquire as

7    opposed to the registry of the court?

8            **MR. HERMAN:**  Well, because, Your Honor, Esquire --

9    Mr. Garrett, who's appointed CPA by Your Honor, Jake Woody,

10   who's been here from the beginning of this, who says that

11   Esquire's the best bank that he's dealt with in terms of

12   response, and because they're in the process of sending, since

13   2014, monthly reports of everything that they've done.  And

14   they've been before the Court.  They've been before the CPA.

15   They've been before the manager.

16            And to change the process now -- and I believe

17   it is a process -- when there's been no wrongdoing on their

18   part, tends to support -- well, tends to support allegations

19   that are based on inaccuracies, and in my view, and only my

20   view, arise out of delays that have been caused by Mr. Yance

21   and his colleagues.  And I don't mean that in an ad hominem

22   statement.  I think we merely have to review the history of

23   delays to know what's happened here.

24            Lastly, I am concerned, very concerned, about

25   the damage that may have been done by defense counsel within

1  their absolute right.  They're brilliant.  I mean, they've got

2  hundreds and hundreds marshaled, and all bright.  But they had

3  an obligation to report back to the Chinese defendants, and

4  they certainly gave the Chinese defendants, just by human

5  nature, some stiffness to carry on.

6            And I think that should the funds not be sent

7  back to Esquire Bank, who's done a good job, assuming they can

8  match, Your Honor questions them, gives some public statement

9  that Arnold and I haven't been unethical, we haven't delayed,

10  and lately -- well, the media has picked this up because it's

11  all done publicly.  And I just think fairness dictates that the

12  funds be moved back to Esquire Bank.

13            **THE COURT:**  Okay.  I hear you.

14            Any response?

15            **MR. YANCE:**  Thank you, Your Honor.  May it please the

16  Court, first of all, with regard to my original filing, it took

17  a lot of thought and contemplation before I pulled the trigger

18  on that filing.  I didn't take it lightly.  In my 17 years of

19  practice, I have never done anything like this because I have

20  never been faced with anything like this or anything this

21  egregious.

22            I didn't file it under seal, that is correct.

23  And I didn't file it under seal because everybody that was --

24  that has an interest in this situation and the money sitting in

25  these attorney fee QSFs absolutely had the right to know about

1 it, number one.

2          Number two, it has absolutely zero to do with
3 the defendants in the case that remained, the Taishan
4 defendants.

5          Now, having said that, Your Honor, I tried to
6 put together an original filing with a memorandum and attached
7 exhibits that provided a very short, concise, and easy to
8 understand statement about the various problems with Esquire
9 Bank continuing to serve as the depository bank, why it was
10 important to get those funds moved.

11          I then in reply to a response by Mr. Herman
12 filed another one with that same goal.  I understand, and
13 admittedly, it was more complex in some ways than my first one.
14 So, you know, from that standpoint, I intend to rely primarily
15 on the filings that I have already made that clearly show the
16 conflicts that do exist and just the underlying issues.  And,
17 again, I say appearance, the appearance of impropriety.

18          You know, do I know what was in Russ Herman's
19 mind?  No, I do not.  But what I have uncovered, as laid out in
20 both of my filings, is a very disturbing looking set of facts
21 supported by largely publicly available documents.  Now, in the
22 face of all of that, following the last status conference, Your
23 Honor moved the QSF to this court.

24          You know, I am prepared to give a full-blown
25 presentation with a PowerPoint, go through the whole thing, and

1   lay out all of the reasons and expound upon the reasons why

2   Esquire Bank is not the appropriate bank to serve.  And if Your

3   Honor is even contemplating in any way, shape or form putting

4   the funds back in Esquire Bank, I do want to go through my

5   presentation.

6                I understand the sensitive nature of what I

7   filed.  Again, I don't take it lightly.  I take zero pleasure

8   in doing it.  I don't want to come in here and beat a dead

9   horse by going through 50 slides of why the money should never

10  even be considered to go back into Esquire Bank.  I don't want

11  to do that.  But if that contemplation is there, then I feel

12  that it's necessary that I do so.

13        **THE COURT:**  The disappointing thing to me is that

14  we're not talking about clients at this point.  We're just

15  talking about lawyers and lawyer fees.  And lawyers themselves

16  can't get it together about fees.  You're arguing not

17  necessarily the fee, but where to put the fee, and how much

18  interest can be earned with the fee.

19                And then you're trying to use whatever you feel

20  you could use either to get a better fee or a better portion of

21  the fee, and it's just disappointing to me to see lawyers

22  fighting about their money.  I'm not talking about the clients'

23  money.  The clients have no interest in this.  This is just

24  attorney's fees.  And you all can't even get together on

25  deciding where to put the money, not a question of how much to

1   get, but even where to put the money.  It's just disconcerting.

2           I'll take it on paper and I'll make a decision

3   on it.  Thank you all.

4           **MR. HERMAN:**  Thank you, Your Honor.

5           **THE COURT:**  Court will stand in recess.

6           (WHEREUPON, the proceedings were concluded.)

7                           *****

8                     <u>**CERTIFICATE**</u>

9           I, Jodi Simcox, RMR, FCRR, Official Court Reporter

10  for the United States District Court, Eastern District of

11  Louisiana, do hereby certify that the foregoing is a true and

12  correct transcript, to the best of my ability and

13  understanding, from the record of the proceedings in the

14  above-entitled and numbered matter.

15

16

17                      <u>*s/Jodi Simcox, RMR, FCRR*</u>
                        Jodi Simcox, RMR, FCRR
18                      Official Court Reporter

19

20

21

22

23

24

25

OFFICIAL TRANSCRIPT