# EXHIBIT

## "B"

```
1                UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF FLORIDA
2                  Case No. 11-22408-CIV-COOKE
3

4   EDUARDO AMORIN, et al.,   )
                              )
5           Plaintiffs,       )
                              )
6       -v-                   )
                              )
7   TAISHAN GYPSUM CO., LTD,  )
    f/k/a SHANDONG TAIHE      )
8   DONGXIN CO., LTD., et al.,)
                              )
9           Defendants.       )   Miami, Florida
                              )   July 13, 2018
10  _____ )   11:08 a.m.

11

12               TRANSCRIPT OF STATUS CONFERENCE

13            BEFORE THE HONORABLE MARCIA G. COOKE

14                    U.S. DISTRICT JUDGE

15

16  Appearances:

17

    For the Plaintiffs:        COLSON HICKS EIDSON
18                             BY:  PATRICK S. MONTOYA, ESQ.
                               BY:  NATALIE M. RICO, ESQ.
19                                      -and-
                               LEVIN SEDRAN & BERMAN
20                             BY:  ARNOLD LEVIN, ESQ.
                               BY:  SANDRA L. DUGGAN, ESQ.
21                                      -and-
                               FAIRCLOTH, MELTON & SOBEL, LLC
22                             BY:  JIMMY R. FAIRCLOTH, JR., ESQ.
                                        -and-
23
    Reporter:                  Karl Shires, RMR, FCRR
24  (954) 769-5496             Official Court Reporter
                               299 East Broward Boulevard, # 203G
25                             Fort Lauderdale, Florida  33301
```

STENOGRAPHICALLY RECORDED COMPUTER-AIDED TRANSCRIPT

```
 1   Appearances:  (Continued)

 2   For the Plaintiffs:          KRUPNICK CAMPBELL MALONE BUSER
                                  SLAMA HANCOCK LIBERMAN, PA
 3                                BY:  MICHAEL J. RYAN, ESQ.
                                       -and-
 4                                IRPINO AVIN HAWKINS
                                  BY:  PEARL A. ROBERTSON, ESQ.
 5                                      -and-
                                  MORGAN & MORGAN
 6                                BY:  PETE V. ALBANIS, ESQ.
                                       -and-
 7                                ALLISTON GRANT, PA
                                  BY:  ALLISON GRANT, ESQ.
 8                                      -and-
                                  HERMAN HERMAN & KATZ, LLC
 9                                BY:  LEONARD A. DAVIS, ESQ.

10   For the Defendants:          ALSTON & BIRD, LLP
                                  BY:  BERNARD TAYLOR, ESQ.
11                                BY:  CHRISTINA HULL EIKHOFF, ESQ.
                                       -and-
12                                ORRICK, HERRINGTON & SUTCLIFFE, LLP
                                  BY:  ERIC M. HAIRSTON, ESQ.
13                                BY:  ANDREW K. DAVIDSON, ESQ.
                                  BY:  JAMES STENGLE, ESQ.
14                                      -and-
                                  ABALLI MILNE KALIL, PA
15                                BY:  CRAIG P. KALIL, ESQ.
                                  BY:  MATTHEW R.D. DEBLINGER, ESQ.
16                                BY:  JOSHUA D. POYER, ESQ.

17

18

19

20

21

22

23

24

25
```

1        (Call to Order of the Court.)

2            THE COURT:  All right.  We're on the record for

3    Eduardo Amorin, et al., versus Taishan Gypsum Company Limited,

4    doing business as a name that I'm not going to try to

5    pronounce.

6            So, for the record, appearing on behalf of plaintiffs

7    this morning and any other counsel can introduce themselves if

8    they choose.

9            MR. MONTOYA:  Your Honor, Patrick Montoya on behalf of

10   the Court-Appointed Plaintiffs' Steering Committee and also

11   filed the complaint back in 2011.

12           Alongside of me is Arnold Levin, co-counsel in the

13   case who is lead counsel as part of the MDL Steering Committee

14   from New Orleans who's moved pro hac.

15           MR. LEVIN:  Good morning, Your Honor.

16           MR. MONTOYA:  Sandra Duggan, his colleague as well.

17           MS. DUGGAN:  Good morning.

18           MR. MONTOYA:  Leonard Davis.

19           I'll let the others introduce themselves since they

20   don't have a mic.

21           THE COURT:  Hi, Mr. Montoya.

22           Sir.  Yes, you.

23           MR. FAIRCLOTH:  Good morning, Your Honor.  Jimmy

24   Faircloth from Louisiana.  I represent Parker Waichman.  Parker

25   Waichman has about 300 -- excuse me, about 280 claimants in the

```
 1   litigation.
 2           MR. RYAN:  Good morning, Your Honor.  Michael Ryan
 3   from the law firm of Krupnick Campbell in Fort Lauderdale.  We
 4   have about 100 claimants before Your Honor.
 5           MS. ROBERTSON:  Pearl Robertson from Irpino Avin
 6   Hawkins.  We're counsel on the PSC in the MDL.
 7           MR. DERBY:  David Derby on behalf of multiple
 8   plaintiffs, Your Honor.
 9           MR. ALBANIS:  Good morning, Your Honor.  Pete Albanis
10   from Morgan & Morgan.  We have 264 clients in this litigation.
11           THE COURT:  All right.  I would just make sure, so the
12   court reporter has an accurate record of who's here, that you
13   give your business card to the court reporter so the record
14   will be accurate.
15           So appearing on behalf of the defendant?
16           Did I miss a plaintiff?
17           MS. GRANT:  Allison Grant on behalf of Allison Grant
18   PA.  I along with Barren and Bud respect 473 claimants.
19           THE COURT:  So Mr. Montoya, how many plaintiffs are
20   left?
21           MS. RICO:  Your Honor, there's 1,734 plaintiffs with
22   residences in Florida that have been remanded to this Court by
23   Judge Fallon.
24           THE COURT:  So all that's here are the 1,700 Florida
25   plaintiffs?
```

```
1              MR. MONTOYA:  That's correct.

2              THE COURT:  May I ask a question that may seem a

3    little naive?  What happened at the MDL and if it was

4    successful, why do I have 1,700 plaintiffs?

5              MR. LEVIN:  Your Honor, may I address that?

6              THE COURT:  Please.

7              MR. LEVIN:  Arnold Levin.

8              We share your sentiments, Your Honor.  We have been

9    litigating this case for nine years.  There were two major sets

10   of defendants.  One set of defendants owned by a German

11   national corporation who owned Chinese companies settled early

12   on.  The next set of defendants which are owned by Chinese

13   companies, pure Chinese companies, we had been litigating.

14   They've been in and out of the jurisdiction.  We've been in the

15   Fifth Circuit twice.  We're in the Fifth Circuit again on

16   jurisdiction as to two of the major defendants, BNBM and CNBM.

17             THE COURT:  When you say "jurisdiction," whether or

18   not they should be rightly sued --

19             MR. LEVIN:  Yes, personal jurisdiction.  But the

20   defendant that is presently before you, one of the defendants,

21   Taishan, we have prevailed in the Fifth Circuit for

22   jurisdiction under personal jurisdiction theories for the

23   Fourth, Fifth, and Eleventh Circuits.  The Fifth Circuit

24   handled all of them because the --

25             THE COURT:  Fourth, Fifth, and Eleventh Circuit.  All
```

1  right.

2          MR. LEVIN:  Because the major litigation is

3  concentrated in Florida, Louisiana, and in Virginia.

4          The complaint that you have before you that was

5  remanded has plaintiffs from many different jurisdictions,

6  including Florida.  We intend to stay the claimants' claims in

7  the non-Florida litigation.

8          THE COURT:  So are there more than 1,700 or is 1,700

9  just --

10          MR. LEVIN:  The only thing that the judge remanded was

11  the 1,700 Florida residents.  But the complaint itself, the

12  Amorin Florida complaint, which is a -- it's an omnibus

13  complaint.  There's so much to say that it can't be said very

14  shortly.  That complaint has other plaintiffs in it.  The

15  reason it has other plaintiffs in it is because of the personal

16  jurisdiction jurisprudence.  Personal jurisdiction for these

17  corporations applies where the product came into the United

18  States, and we've determined that the product has come in in

19  Florida, Virginia, Louisiana, and other places.  The Fifth

20  Circuit dealt with those particular localities.  As a result,

21  we have jurisdiction as to Taishan in those localities.

22          Presently, as to another set of defendants, CNBM and

23  BNBM -- CMBM is not before you, but BM is, a 1292(b),

24  interlocutory appeal on jurisdiction, is now presently pending

25  in the Fifth Circuit.

1          Having said all of that, it's very simple why we're

2     here.  Judge Fallon in the Eastern District of Louisiana, the

3     MDL judge, certified a class of current owners for remediation

4     damages of their property.  He left open three things:

5     Ownership of the property, square footage of the property, and

6     product identification proving that the product was

7     manufactured by the Taishan defendants.  Those three aspects of

8     the case are still open according to Judge Fallon's rulings in

9     this case.

10          Judge Fallon also set forth a measure of damages.

11    There was expert testimony as to how to evaluate the

12    remediation.  We are prepared to go to trial on those 1,700

13    Amorin plaintiffs that are in Florida and to resolve these

14    three issues.

15          There have been default judgments taken in the Taishan

16    case.  There are contempt citations that are still in the

17    Eastern District of Louisiana.  But we don't have to go there.

18    It's there.

19          But presently, respectfully, Your Honor, what we have

20    here, after all that is peeled away, is a very simple case of

21    dealing with -- although it's 1,700 plaintiffs and a set of

22    defendants.  At one point we had 700 to 800 builders and

23    insurance carriers.  Those matters have been settled.  We had

24    the Knauf defendants, that's the German corporation.  Those

25    matters have been settled.  Those claims have been remediated.

1    But for our 1,700 plaintiffs in this case, they may

2  live nextdoor to a property that has the same Drywall from the

3  same mines in China.  A neighbor has been fully remediated, has

4  received two, three hundred thousand dollars worth of

5  remediation.  The properties have been stripped to their studs.

6  The electrical systems have been replaced.  The

7  air-conditioning systems have been replaced.  But the

8  unfortunate neighbor that has its Drywall from the defendants

9  in this litigation is living with infected Drywall.  That's

10  nine years synthesized, Your Honor.

11    MR. FAIRCLOTH:  Your Honor, may I be heard?

12    THE COURT:  Yes.

13    MR. FAIRCLOTH:  Jimmy Faircloth.  I want to add one

14  thing.  Your Honor, this case is in such an unusual procedural

15  posture.  There's really not a formal aggregation of this

16  proceeding at the moment.

17    THE COURT REPORTER:  Can you use the microphone,

18  please.

19    MR. FAIRCLOTH:  When these cases were sent back, it

20  was contemplated by Judge Fallon that the individual firms and

21  the individual claimants would have to find some way to go

22  forward in Florida, and that's why we're here, and I understand

23  you're going to help us with that.  But as it currently stands,

24  Parker Waichman represents its clients in this proceeding.  I

25  think there are issues that will be addressed at some point by

1    the Court with regard to how we proceed, the extent of

2    leadership, the extent of aggregation, but for right now I want

3    to make clear and see if there's any instructions from the

4    Court.  We've been told by Judge Fallon go back to Florida, see

5    how you do you on your cases.  I want to make clear that I have

6    authority to represent our clients in this matter at present.

7    I don't want to do anything as I progress with this, which

8    would include also speaking to Taishan about where we go from

9    here.

10             THE COURT:  Let me ask this question.  Maybe I'm being

11   naive.  Was it ever contemplated that you would have a trial

12   with 1,700 claimants?

13             MR. LEVIN:  Your Honor --

14             THE COURT:  Because it seems to me if there are three

15   issues that need to be decided, ownership of the property,

16   square footage involved, and identify the Drywall in the

17   property, that that could be done through some sort of claim

18   procedure.

19             MR. LEVIN:  Well, we plaintiffs would feel that way

20   too.  In fact, presently before the Court in Louisiana, who --

21   Judge Fallon still has the Louisiana cases and has a number of

22   other cases, some of which are Florida cases that are

23   post-default.  We feel that could be done and we have presently

24   before the Court as of yesterday, really, both sides submitted

25   a trial plan as to how to resolve these multiple plaintiff

1  cases.

2        First, you would have to resolve for everyone the

3  products and which products are proven to be Taishan products.

4  That is before Judge Fallon.

5        THE COURT:  Well, if that is before Judge Fallon, why

6  are you here?

7        MS. RICO:  Your Honor, if I could just add one thing.

8  What we're dealing with before Judge Fallon are all of the

9  Louisiana cases.  Judge Fallon certified the Amorin litigation

10  for remediation damages.  Now the Florida cases have come

11  before Your Honor.  We have already provided to the defendants

12  spreadsheets that identify the square footage, the product

13  identification evidence that we have on each and every one of

14  those properties.  The only thing we've been waiting for is for

15  the defendants to assert any contests to the evidence we've

16  already given.  So for the 1,730 plaintiffs, we are all ready

17  to go with all of the evidence that we have for each and every

18  one of those cases.

19        MR. LEVIN:  And that's in the Florida cases.  Judge

20  Fallon's trial plan is for the Louisiana cases that he --

21        THE COURT:  So let's leave Judge Fallon out of this.

22  If he wanted these cases, he'd still have them.

23        All right.  Let me see who's here on behalf of the

24  defendant.

25        MR. TAYLOR:  Good morning, Your Honor.  I'm Bernard

```
1    Taylor on behalf of Taishan.  And my partner, Christi Eikhoff,

2    we're here for Taishan.  And we both have --

3              THE COURT:  Let me see who else is here with you.

4              MR. KALIL:  Good morning, Your Honor.  Craig Kalil of

5    Aballi Milne Kalil.  With me in the courtroom are Joshua Poyer

6    and Matthew Deblinger.  And with me at the counsel table is

7    James Stengel of the Orrick, Herrington & Sutcliffe firm.  And

8    also behind me, Eric Hairston and Andrew Davidson of Orrick,

9    Herrington.  They all three have pending pro hac vice motions.

10   We represent Beijing New Building Materials Public Limited

11   Company, one of the defendants in the case.

12             THE COURT:  All right.  Back to defendants' counsel.

13   What did you envision here?

14             MR. TAYLOR:  Well, your Honor, first of all, I know

15   that the Court is probably not that interested in having to

16   handle these 1,700 or actually much more cases, but we're

17   honored to be here in front of you.  And we are here on motions

18   pro hac.  Our sponsor couldn't be here -- she's one of our

19   partners from our law firm in Atlanta but is a licensed lawyer

20   here -- because she's injured.  And I hope the Court will allow

21   us to continue to speak.

22             THE COURT:  Well, for today I will because I have to

23   figure out what's going on.  So I'm obviously not going to

24   stand on too much ceremony.

25             MR. TAYLOR:  All right.  Your Honor, the plaintiffs'
```

1  counsel, at least one of the plaintiffs' counsel has made the

2  statements about what's going on in this case and the status of

3  this case, and I'm certain the Court will understand that if we

4  agree with them and if we agree that the facts as they have

5  stated them were accurate, we wouldn't be here.  This would be

6  all resolved.

7         One of the threshold issues that needs to be resolved

8  here is the issue of jurisdiction of those cases.  There are a

9  certain number of cases that -- I'm sorry, I'll get to the

10  microphone.

11         THE COURT:  So you don't agree with counsel that the

12  issue of personal jurisdiction has been resolved for the

13  Fourth, Fifth, and Eleventh Circuit?

14         MR. TAYLOR:  The issue of personal jurisdiction in

15  regards to Taishan has been resolved for the cases that fall

16  under the Amorin class in Florida.  And the issue that we're

17  focusing on or that I'm focusing on is that there are more than

18  the Florida cases before this Court.  And we believe that the

19  first action --

20         THE COURT:  So you're saying I don't have only Florida

21  cases?

22         MR. TAYLOR:  I am saying that.  That's correct.  That

23  there are more than Florida cases on this docket, that is this

24  listing of cases that have been remanded to you.  And what

25  we're proposing, and my colleague, Ms. Eikhoff, will speak more

1   about that if the Court wants to hear more about it, is that we

2   believe the first order of business here should be -- that we

3   suggest to the Court would be that we look at those cases and

4   figure out which cases are not Florida cases, and we know that

5   already, and clear those cases off the docket.  Get those cases

6   dismissed.  Not stayed but dismissed.  And then we think in

7   order to make sure --

8           THE COURT:  Where would they go?  So you're telling me

9   after nine years of cases going around, I'm just going to

10  dismiss them?

11          MR. TAYLOR:  Yes, because they're duplicate cases in

12  three different class actions that were filed, and one of these

13  sets of cases were sent here.  They're duplicate cases that are

14  in the other class actions.  And they can proceed in those

15  actions as appropriate.  But before this Court we propose that

16  we strip those cases from this Court.  And we would be willing

17  to move forward and pursue some briefing on that issue because

18  we think that would help the Court to understand that issue and

19  to understand the background issues in regards to the

20  litigation.

21          Now, if the Court wants to hear more, Ms. Eikhoff can

22  fill you in.

23          THE COURT:  Let me hear from Ms. Eikhoff, and then I'm

24  going to go back to Mr. Montoya because you are basically the

25  representative for what is the Amorin class, correct?

1          MR. MONTOYA:  Correct, Your Honor.

2          THE COURT:  And you have only Florida plaintiffs?

3          MR. MONTOYA:  That's correct.

4          THE COURT:  Okay.  Don't lose whatever your train of

5    thought is because I'll be back to.

6          MS. EIKHOFF:  Thank you, Your Honor.  Christi Eikhoff

7    on behalf of Taishan.

8          I think it would be helpful to start at the beginning

9    when the Amorin cases were filed.

10         THE COURT:  Why would I start at the beginning?  What

11   has Judge Fallon been doing all of these years?

12         MS. EIKHOFF:  Okay.  So just to explain, as my partner

13   Mr. Taylor just said, there were three identical Amorin

14   complaints that were filed in three federal courts at the same

15   time by the Plaintiffs' Steering Committee.  There was one

16   filed here.  There was one filed in Virginia.  There was one

17   filed in Louisiana.  They amended those complaints to add a

18   total of 4,072 named class members nationwide.

19         Those 4,072 plaintiffs are in this court before you,

20   are simultaneously in Judge Fallon's Court in Louisiana, and

21   are simultaneously -- well, in a Virginia Court, although

22   that's still --

23         THE COURT:  So you're saying 4,000 and the

24   representation of 1,700 is incorrect?

25         MS. EIKHOFF:  And so of those 4,072, there are

1    1,700 --

2              THE COURT:  34.

3              MS. EIKHOFF:  -- 34 that are Florida residents.  We

4    believe that those claims are properly in this Court and that

5    it was the intent of Judge Fallon to have this Court adjudicate

6    the Florida resident claims only.  But the problem that we have

7    from a jurisdictional perspective is that as long as these

8    extra jurisdictional plaintiffs are still sitting in this

9    Court, this Court does not have jurisdiction over those claims,

10   stayed or not, and also they're being simultaneously

11   adjudicated in other forums.

12             I just wanted to add some more context to what

13   Mr. Taylor's suggestion is, which is our first order of

14   business is to make sure that there are only claims in this

15   case that this Court has jurisdiction over, and that should be

16   approximately 1,700.  But we heard Mr. Levin say, well, we just

17   stayed those other claims.  But to us that is not sufficient

18   because there shouldn't be these identical simultaneous claims

19   sitting in multiple complaints at the same time.

20             THE COURT:  Mr. Montoya.

21             MR. MONTOYA:  Your Honor, I'm going to defer to

22   Mr. Levin on that if that's all right with you.

23             THE COURT:  Okay.

24             MR. MONTOYA:  Thank you.

25             MR. LEVIN:  Because of the nature of personal

1   jurisdiction jurisprudence, all 4,000 cases have been filed in

2   three jurisdictions because we believed that all three

3   jurisdictions had personal jurisdiction over the claimants

4   whether their residences were in that jurisdiction or not.  The

5   Fifth Circuit agreed with us in the Taishan case.  That's why

6   they analyzed Fourth Circuit, Eleventh Circuit, and Fifth

7   Circuit law.

8           So that the complaint that's before you -- because,

9   after all, the panel, the MDL panel has to remand a cause of

10  action, which is a complaint, has all 4,000.  Judge Fallon

11  remediated -- transferred the 1,700 Florida cases which were

12  part of that particular complaint.  That's what we're dealing

13  with here is the Florida residents.

14          The other plaintiffs are there to protect their

15  jurisdiction.  Every plaintiff, including the Florida

16  plaintiffs, are in Louisiana and in Virginia.  When Virginia is

17  remanded, those cases that are not Virginia plaintiffs will be

18  stayed.  In Louisiana, those plaintiffs that are not Louisiana

19  plaintiffs will be stayed.  But they have to be there to

20  protect their jurisdictional basis for being there.  And that's

21  why I suggest respectfully that we're only dealing with the

22  1,700.

23          We don't have to be dealing with dismissals because

24  that will create issues that probably have appellate

25  ramifications because they're only there as protective actions.

```
 1   But the 1,700 Florida plaintiffs are part of the class that was

 2   certified by Judge Fallon, and that part he remanded to Florida

 3   for trial purposes as to that aspect of the case.

 4            THE COURT:  Mr. Montoya, do you think there may be a

 5   role for a special master to organize these cases and set them

 6   up in a way that the Court can deal with it in a manageable

 7   way?

 8            MR. MONTOYA:  Your Honor, we're open to that

 9   recommendation, yes.

10            MS. EIKHOFF:  Your Honor, if we may.

11            THE COURT:  Yes.

12            MS. EIKHOFF:  Your Honor, I just need to correct

13   something else that the defendants have a different perspective

14   on, which is Mr. Levin's representation that there are only

15   three issues that are triable in this case.

16            It is true that with respect to remediation the --

17   remediation damages, that the plaintiffs have identified

18   ownership, square footage, and product ID as issues that they

19   think are contested.  The defendants believe there are many

20   more issues that are contested.

21            THE COURT:  What?

22            MS. EIKHOFF:  Whether or not the properties have

23   already been remediated, for example.  If they have already

24   been remediated, then we would need the actual costs of what

25   that remediation was.
```

1          THE COURT:  But if they've been remediated, it meant

2     it wasn't your stuff, right?  It wasn't your Drywall.  Somebody

3     else did it, right?

4          MS. EIKHOFF:  Not necessarily because they may have

5     self-funded a remediation if they didn't have their --

6          THE COURT:  Well, you would still be liable even if

7     somebody went into their own pocket to do.

8          MS. EIKHOFF:  A hundred percent.  We would be

9     liable --

10         THE COURT:  So why would that be a separate issue?

11         MS. EIKHOFF:  Because we would be liable for what they

12    actually paid to remediate, not for this abstract formula that

13    the PSC -- that the plaintiffs' side is advancing.

14         But in addition to remediation, that is not --

15         THE COURT:  But if the plaintiffs are willing to

16    accept that in terms of the remediation, even if they

17    self-mediated, why not use it?

18         MS. EIKHOFF:  Why not use the --

19         THE COURT:  Their formula.

20         MS. EIKHOFF:  Oh, because --

21         THE COURT:  It's their property.  If they're willing

22    to say we self-mediated, we paid out of our own pocket, but

23    we're willing to use this formula in order to get repaid by

24    you, who's the party that should have paid for it in the first

25    place.

1      MS. EIKHOFF:  That would be a windfall, Your Honor.

2   Judge Fallon did not mandate the application of his formula.

3   And specifically in the remand order he suggested that the

4   Court consider it, but the defendants believe it is absolutely

5   inflated and in many stances, Your Honor, gives far greater

6   value than the property itself, than fair market value of the

7   property.

8      But in addition to remediation, Your Honor, it's

9   important to note that that is not --

10     THE COURT:  But you are placing this basically on the

11  remediation being only the replacement of the bad Drywall and

12  the bad electrical, not any other damages that may have come as

13  a result of the use of this product in a home.

14     MS. EIKHOFF:  That's right.  And so the plaintiffs are

15  seeking many more damages, Your Honor.  The plaintiffs are

16  seeking damages for alternative living expenses, loss of use

17  and enjoyment.  They've alleged personal injury.  They're

18  asking for consequential damages like appliances and whatnot.

19  And we agree that all of those damages are on the table.

20     The plaintiffs admit that those are individualized

21  inquiry, they require discovery, they require individual

22  adjudication.  And so, Your Honor, it is not true that the only

23  issue is a remediation formula with three factors.  Even by the

24  plaintiffs' own acknowledgment, there are many other damages on

25  the table, all of which need to be individually assessed and

1    adjudicated.

2              MR. TAYLOR:  Your Honor, I think that we are probably

3    all being a little unfair to the Court because, as you can see,

4    there are multiple issue that still need to be flushed out so

5    that the Court can understand the real status of this case.

6    And we haven't done that.  And it's unfair to think that we can

7    poor nine years of facts and issues into the Court during this

8    brief hearing and have the Court --

9              THE COURT:  See, I think this is what -- and I know

10   Mr. Montoya knows this because he practices in this district.

11   This case wouldn't still be here if you had been kept in the

12   Southern District of Florida.  It would have been tried,

13   finished.  Whatever would have happened, would have happened.

14   We don't have cases in this district that are --

15             MR. MONTOYA:  Eleven.

16             THE COURT:  -- seven years old.  It does not happen.

17   So anybody who practices in any other jurisdiction that thinks

18   this is going to be a case that's going to sit around for three

19   or four more years, take that knowledge and leave it wherever

20   it came from.  Doesn't happen here.

21             So, first of all, this case is going to -- I don't

22   know what you're going to have to do or how you're going to

23   have to do it, but everybody who practices in this district

24   will tell you, even our most complex litigation is in trial

25   within 24 months.

1          MR. TAYLOR:  Good.

2          THE COURT:  That's just it.  And probably 13.  I'm

3    giving you 24 months because it's so many lawyers.  But

4    everybody should understand that two years from now this case

5    will be over in some way, shape, or form.  I don't know how you

6    all are going to do it or how it's all going to come out in the

7    wash in the end, but in 24 months it will be over, which is why

8    I am anticipating using a special master to do these pretrial

9    issues.

10          But what I need for you all to do is to establish a

11   plan, not one that I may necessarily agree with but one that I

12   think might allow us to start, for how using a special master

13   for these pretrial issues will allow us to advance the ball.

14   What truly are the remaining issues to be resolved?  Which are

15   the cases that are going to be stayed and/or dismissed?  And

16   the potential and what I anticipate -- and since Mr. Montoya

17   was the lead Florida lawyer, if we have to go to trial, maybe

18   doing three or four trials as a test.  And then those of you

19   that think there's a chance for mediation, establish what the

20   mediation would be, and then establishing a mediator to move it

21   forward.

22          MR. TAYLOR:  That's understood, Your Honor.

23          THE COURT:  Mr. Montoya, do you think you can do this

24   in 30 days?

25          MR. MONTOYA:  Absolutely.

```
 1              THE COURT:  All right.  Today is July 13th.  Why can I
 2    not remember that it's Friday the 13th?
 3              All right.  So I'm going to ask for a plan for how
 4    counsel might envision, a joint plan, to be filed by Friday,
 5    August 10th.
 6              And I know there's lot of lawyers back there, but I'm
 7    going to keep Mr. Montoya as the chief on the plaintiffs' side
 8    for now, someone who I -- has a bar license in Florida who I
 9    can attach if something goes wrong.
10              MR. MONTOYA:  I have my toothbrush in my bag, Your
11    Honor.
12              THE COURT:  All right.
13              MR. FAIRCLOTH:  Your Honor, may I ask a question?
14              THE COURT:  Yes.
15              MR. FAIRCLOTH:  Jimmy Faircloth.
16              I understand Your Honor's instruction with regard to
17    Mr. Montoya, and that's fine.  I just need to state for the
18    record that only a part of this case was remanded.  There is no
19    formal leadership sanctioned by this Court.  So Mr. Montoya has
20    no authority to speak for Parker Waichman's clients.  I have
21    concerns about the authority part of this.
22              THE COURT:  I may get to that, but can you at least
23    let me get to a plan and I'll decide whether or not that stays.
24              MR. FAIRCLOTH:  Absolutely.
25              THE COURT:  I have to let you all know that Judge
```

1  Fallon has reached out to me.  I just did not have an

2  opportunity to speak to him.  So I will be speaking to him

3  about how he sees this case based upon his order, and I will

4  make a determination at some point, you can include that in

5  part of your plan, whether or not there should be lead counsel

6  in this case.

7            I have to say, and I'm not saying my mind is made up,

8  I am inclined to want a lead counsel because it just makes

9  sense given the number of parties here.  I know lawyers don't

10  like it.  But as my father would say, the people in hell want

11  ice water.  All right.

12            All right.  Everybody has their directions.

13            We'll be back in ten minutes and we'll do United

14  States versus Rivera.

15       (Proceedings concluded at 11:37 a.m.)

16

17                    C E R T I F I C A T E

18       I, Karl Shires, Registered Merit Reporter and Federal

19  Certified Realtime Reporter, certify that the foregoing is a

20  correct transcript from the record of proceedings in the

21  above-entitled matter.

22       Dated this 18th day of July, 2018.

23

24       _____
         Karl Shires, RMR FCRR

25

MR. ALBANIS: [1] 4/8
MR. DERBY: [1] 4/6
MR. FAIRCLOTH: [7]
3/22 8/10 8/12 8/18
22/12 22/14 22/23
MR. KALIL: [1] 11/3
MR. LEVIN: [10] 3/14
5/4 5/6 5/18 6/1 6/9
9/12 9/18 10/18 15/24
MR. MONTOYA: [12]
3/8 3/15 3/17 4/25
13/25 14/2 15/20
15/23 17/7 20/14
21/24 22/9
MR. RYAN: [1] 4/1
MR. TAYLOR: [9]
10/24 11/13 11/24
12/13 12/21 13/10
20/1 20/25 21/21
MS. DUGGAN: [1]
3/16
MS. EIKHOFF: [14]
14/5 14/11 14/24 15/2
17/9 17/11 17/21 18/3
18/7 18/10 18/17
18/19 18/25 19/13
MS. GRANT: [1] 4/16
MS. RICO: [2] 4/20
10/6
MS. ROBERTSON:
[1] 4/4
THE COURT
REPORTER: [1] 8/16
THE COURT: [48]

-
-and [9] 1/19 1/21
1/22 2/3 2/5 2/6 2/8
2/11 2/14
-v [1] 1/6

1
1,700 [16] 4/24 5/4 6/8
6/8 6/11 7/12 7/21 8/1
9/12 11/16 14/24 15/1
15/16 16/11 16/22
17/1
1,730 [1] 10/16
1,734 [1] 4/21
100 [1] 4/4
10th [1] 22/5
11-22408-CIV-COOKE
[1] 1/2
11:08 [1] 1/10
11:37 [1] 23/15
1292 [1] 6/23
13 [2] 1/9 21/2
13th [2] 22/1 22/2
18th [1] 23/22

2
2011 [1] 3/11
2018 [2] 1/9 23/22
203G [1] 1/24
24 [3] 20/25 21/3 21/7

264 [1] 4/10
280 [1] 3/25
299 [1] 1/24

3
30 [1] 21/24
300 [1] 3/25
33301 [1] 1/25
34 [2] 15/2 15/3

4
4,000 [3] 14/23 16/1
16/10
4,072 [3] 14/18 14/19
14/25
473 [1] 4/18

5
5496 [1] 1/24

7
700 [1] 7/22
769-5496 [1] 1/24

8
800 [1] 7/22

9
954 [1] 1/24

A
a.m [2] 1/10 23/15
ABALLI [2] 2/14 11/5
above-entitled [1]
23/21
absolutely [3] 19/4
21/25 22/24
abstract [1] 18/12
accept [1] 18/16
accurate [3] 4/12 4/14
12/5
acknowledgment [1]
19/24
action [2] 12/19 16/10
actions [4] 13/12
13/14 13/15 16/25
actual [1] 17/24
add [4] 8/13 10/7
14/17 15/12
addition [2] 18/14
19/8
address [1] 5/5
addressed [1] 8/25
adjudicate [1] 15/5
adjudicated [2] 15/11
20/1
adjudication [1] 19/22
admit [1] 19/20
advance [1] 21/13
advancing [1] 18/13
aggregation [2] 8/15
9/2
agree [5] 12/4 12/4
12/11 19/19 21/11
agreed [1] 16/5
air [1] 8/7
air-conditioning [1]

8/7
al [3] 1/4 1/8 3/3
ALBANIS [2] 2/6 4/9
alleged [1] 19/17
ALLISON [2] 2/7 4/17
4/17
ALLISTON [1] 2/7
allow [3] 11/20 21/12
21/13
Alongside [1] 3/12
ALSTON [1] 2/10
alternative [1] 19/16
amended [1] 14/17
AMORIN [9] 14/3 3/3
6/12 7/13 10/9 12/16
13/25 14/9 14/13
analyzed [1] 16/6
and/or [1] 21/15
ANDREW [2] 2/13
11/8
anticipate [1] 21/8
anticipating [1] 21/8
anybody [1] 20/17
appeal [1] 6/24
Appearances [2] 1/16
2/1
appearing [2] 3/6 4/15
appellate [1] 16/24
appliances [1] 19/18
application [1] 19/2
applies [1] 6/17
Appointed [1] 3/10
appropriate [1] 13/15
approximately [1]
15/16
ARNOLD [3] 1/20 3/12
5/7
asking [1] 19/18
aspect [1] 17/3
aspects [1] 7/7
assert [1] 10/15
assessed [1] 19/25
Atlanta [1] 11/19
attach [1] 22/9
August [1] 22/5
August 10th [1] 22/5
authority [3] 9/6 22/20
22/21
AVIN [2] 2/4 4/5

B
back [8] 3/11 8/19 9/4
11/12 13/24 14/5 22/6
23/13
background [1] 13/19
bad [2] 19/11 19/12
bag [1] 22/10
ball [1] 21/13
bar [1] 22/8
Barren [1] 4/18
based [1] 23/3
basically [2] 13/24
19/10
basis [1] 16/20
beginning [2] 14/8
14/10

behalf [8] 3/6 3/9 4/7
4/15 4/17 10/23 11/1
14/7
Beijing [1] 11/10
believe [5] 12/18 13/2
15/4 17/19 19/4
believed [1] 16/2
BERMAN [1] 1/19
BERNARD [2] 2/10
10/25
BIRD [1] 2/10
BM [1] 6/23
BNBM [2] 5/16 6/23
Boulevard [1] 1/24
brief [1] 20/8
briefing [1] 13/17
Broward [1] 1/24
Bud [1] 4/18
builders [1] 7/22
Building [1] 11/10
BUSER [1] 2/2
business [4] 3/4 4/13
13/2 15/14

C
Call [1] 3/1
CAMPBELL [2] 2/2
4/3
card [1] 4/13
carriers [1] 7/23
case [24]
cases [37]
cause [1] 16/9
ceremony [1] 11/24
certain [2] 12/3 12/9
certified [4] 7/3 10/9
17/2 23/19
certify [2] 23/19
chance [1] 21/19
chief [1] 22/7
China [1] 8/3
Chinese [3] 5/11 5/12
5/13
choose [1] 3/8
Christi [2] 11/1 14/6
CHRISTINA [1] 2/11
Circuit [12] 5/15 5/15
5/21 5/23 5/25 6/20
6/25 12/13 16/5 16/6
16/6 16/7
Circuits [1] 5/23
citations [1] 7/16
CIV [1] 1/2
claim [1] 9/17
claimants [6] 3/25 4/4
4/18 8/21 9/12 16/3
claimants' [1] 6/6
claims [8] 6/6 7/25
15/4 15/16 15/9 15/14
15/17 15/18
class [7] 7/3 12/16
13/12 13/14 13/25
14/18 17/1
clear [3] 9/3 9/5 13/5
clients [4] 4/10 8/24
9/6 22/20

CNBM [2] 5/16 6/22
co-counsel [1] 3/12
colleague [3] 3/16
12/25
COLSON [1] 1/17
come [4] 6/18 10/10
19/12 21/6
Committee [3] 3/10
3/13 14/15
companies [3] 5/11
5/13 5/13
Company [2] 3/3
11/11
complaint [9] 3/11 6/4
6/11 6/12 6/13 6/14
16/8 16/10 16/12
complaints [3] 14/14
14/17 15/19
complex [1] 20/24
concentrated [1] 6/3
concerns [1] 22/21
concluded [1] 23/15
conditioning [1] 8/7
CONFERENCE [1]
1/12
consequential [1]
19/18
consider [1] 19/4
contemplated [2] 8/20
9/11
contempt [1] 7/16
contested [2] 17/19
17/20
contests [1] 10/15
context [1] 15/12
continue [1] 11/21
Continued [2] 2/1
COOKE [3] 1/2 1/13
corporation [2] 5/11
7/24
corporations [1] 6/17
correct [7] 5/1 12/22
13/25 14/1 14/3 17/12
23/20
costs [1] 17/24
counsel [12] 3/7 3/12
3/13 4/6 11/6 11/12
12/1 12/1 12/11 22/4
23/5 23/8
court [36]
Court-Appointed [1]
3/10
courtroom [1] 11/5
courts [1] 14/14
CRAIG [2] 2/15 11/4
create [1] 16/24
current [1] 7/3
currently [1] 8/23

D
damages [10] 7/4
7/10 10/10 17/17
19/12 19/15 19/16
19/18 19/19 19/24
Dated [1] 23/22

**D**

David [1] 4/7
DAVIDSON [2] 2/13 11/8
DAVIS [2] 2/9 3/18
day [1] 23/22
days [1] 21/24
deal [1] 17/6
dealing [5] 7/21 10/8 16/12 16/21 16/23
dealt [1] 6/20
DEBLINGER [2] 2/15 11/6
decide [1] 22/23
decided [1] 9/15
default [2] 7/15 9/23
defendant [1] 4/15 5/20 10/24
defendants [18] 1/9 2/10 5/10 5/10 5/12 5/16 5/20 6/22 7/7 7/22 7/24 8/8 10/11 10/15 11/11 17/13 17/19 19/4
defendants' [1] 11/12
defer [1] 15/21
Derby [1] 4/7
determination [1] 23/4
determined [1] 6/18
didn't [1] 18/5
different [3] 6/5 13/12 17/13
directions [1] 23/12
discovery [1] 19/21
dismiss [1] 13/10
dismissals [1] 16/23
dismissed [3] 13/6 13/6 21/15
district [9] 1/1 1/1 1/14 7/2 7/17 20/10 20/12 20/14 20/23
docket [2] 12/23 13/5
doing [3] 3/4 14/11 21/18
dollars [1] 8/4
DONGXIN [1] 1/8
Drywall [6] 8/2 8/8 8/9 9/16 18/2 19/11
DUGGAN [2] 1/20 3/16
duplicate [2] 13/11 13/13

**E**

early [1] 5/11
East [1] 1/24
Eastern [2] 7/2 7/17
EDUARDO [2] 1/4 3/3
EIDSON [1] 1/17
EIKHOFF [6] 2/11 11/1 12/25 13/21 13/23 14/6
electrical [2] 8/6 19/12
Eleven [1] 20/15

Eleventh [4] 5/23 5/25 12/13 16/6
enjoyment [1] 19/17
entitled [1] 23/21
envision [2] 11/13 22/4
ERIC [2] 2/12 11/8
ESQ [18] 1/18 1/18 1/20 1/20 1/22 2/3 2/4 2/6 2/7 2/9 2/10 2/11 2/12 2/13 2/13 2/15 2/15 2/16
establish [2] 21/10 21/19
establishing [1] 21/20
et [3] 1/4 1/8 3/3
evaluate [1] 7/11
everybody [3] 20/23 21/4 23/12
evidence [3] 10/13 10/15 10/17
example [1] 17/23
excuse [1] 3/25
expenses [1] 19/16
expert [1] 7/11
explain [1] 14/12
extent [2] 9/1 9/2
extra [1] 15/8

**F**

f/k/A [1] 1/7
fact [1] 9/20
factors [1] 19/23
facts [2] 12/4 20/7
fair [1] 19/6
FAIRCLOTH [5] 1/21 1/22 3/24 8/13 22/15
fall [1] 12/15
Fallon [17] 4/23 7/2 7/10 8/20 9/4 9/21 10/4 10/5 10/8 10/9 10/21 14/11 15/5 16/10 17/2 19/2 23/1
Fallon's [3] 7/8 10/20 14/20
far [1] 19/5
father [1] 23/10
FCRR [2] 1/23 23/24
federal [2] 14/14 23/18
feel [2] 9/19 9/23
Fifth [11] 5/15 5/15 5/21 5/23 5/23 5/25 6/19 6/25 12/13 16/5 16/6
figure [2] 11/23 13/4
filed [9] 3/11 13/12 14/9 14/14 14/16 14/16 14/17 16/1 22/4
fill [1] 13/22
find [1] 8/21
fine [1] 22/17
finished [1] 20/13
firm [3] 4/3 11/7 11/19
firms [1] 11/19
first [7] 10/2 11/14

Eleventh [4] 12/19 13/2 15/15 18/24 20/21
FLORIDA [33]
flushed [1] 20/4
focusing [2] 12/17 12/17
footage [4] 7/5 9/16 10/12 17/18
foregoing [1] 23/19
form [1] 21/5
formal [2] 8/15 22/19
formula [5] 18/12 18/19 18/23 19/2 19/23
Fort [2] 1/25 4/3
Fort Lauderdale [1] 4/3
forth [1] 7/10
forums [1] 15/11
forward [3] 8/22 13/17 21/21
four [2] 20/19 21/18
Fourth [4] 5/23 5/25 12/13 16/6
Friday [2] 22/2 22/4
front [1] 11/17
fully [1] 8/3
funded [1] 18/5

**G**

German [2] 5/10 7/24
give [1] 4/13
given [2] 10/16 23/9
gives [1] 19/5
giving [1] 21/3
go [9] 7/12 7/17 8/21 9/4 9/8 10/17 13/8 13/24 21/17
goes [1] 8/21
going [19] 3/4 8/23 11/23 11/23 12/2 13/9 13/9 13/24 15/21 20/18 20/18 20/21 20/22 20/22 21/6 21/6 21/15 22/3 22/7
Good [8] 3/15 3/17 3/23 4/2 4/9 10/25 11/4 21/1
GRANT [4] 2/7 2/7 4/17 4/17
greater [1] 19/5
GYPSUM [1] 1/7 3/3

**H**

hac [3] 3/14 11/9 11/18
HAIRSTON [2] 2/12 11/8
HANCOCK [1] 2/2
handle [1] 11/16
handled [1] 5/24
happen [2] 20/16 20/20
happened [5] 5/3 20/13 20/13
HAWKINS [2] 2/4 4/6

hear [3] 13/7 13/21 13/23
heard [2] 8/11 15/16
hearing [1] 20/8
hell [1] 23/10
help [2] 8/23 13/18
helpful [1] 14/8
HERMAN [2] 2/8 2/8
HERRINGTON [3] 2/12 11/7 11/9
Hi [1] 3/17
HICKS [1] 1/17
home [1] 19/13
Honor [36]
Honor's [2] 22/16
HONORABLE [1] 1/13
honored [1] 11/17
hope [1] 11/20
HULL [1] 2/11
hundred [2] 8/4 18/8

**I**

I'll [4] 3/19 12/9 14/5 22/23
I'm [14] 3/4 9/10 10/25 11/23 12/3 12/9 12/17 13/9 13/23 15/21 21/2 22/3 22/6 23/7
ice [1] 23/11
ID [1] 17/18
identical [2] 14/13 15/18
identification [2] 7/6 10/13
identified [1] 17/17
identify [2] 9/16 10/12
important [1] 19/9
inclined [1] 23/8
include [2] 9/8 23/4
including [2] 6/6 16/15
incorrect [1] 14/24
individual [3] 8/20 8/21 19/21
individualized [1] 19/20
individually [1] 19/25
infected [1] 8/9
inflated [1] 19/5
injured [1] 11/20
injury [1] 19/17
inquiry [1] 19/21
instruction [1] 22/16
instructions [1] 9/3
insurance [1] 7/23
intend [1] 6/6
intent [1] 15/5
interested [1] 11/15
interlocutory [1] 6/24
introduce [2] 3/7 3/19
involved [1] 9/16
IRPINO [2] 2/4 4/5
issue [9] 12/8 12/12 12/14 12/16 13/17 13/18 18/10 19/23 20/4

near [3] 13/4 13/21 13/23
Issues [13] 7/14 8/25 9/15 12/7 13/19 16/24 17/15 17/18 17/20 20/7 21/9 21/13 21/14
it's [10] 6/12 7/1 7/18 7/21 18/21 19/8 20/6 21/3 21/6 22/2

**J**

JAMES [2] 2/13 11/7
JIMMY [1] 1/22 3/23 8/13 22/15
joint [1] 22/4
JOSHUA [2] 2/16 11/5
JR [1] 1/22
judge [23] 1/14 4/23 6/10 7/2 7/3 7/8 7/10 8/20 9/4 9/21 10/4 10/5 10/8 10/9 10/19 10/21 14/11 14/20 15/5 16/10 17/2 19/2 22/25
judgments [1] 7/15
July [3] 1/9 22/1 23/22
July 13th [1] 22/1
jurisdiction [20] 5/14 5/16 5/17 5/19 5/22 5/22 6/16 6/16 6/21 6/24 12/8 12/12 12/14 15/9 15/15 16/1 16/3 16/4 16/15 20/17
jurisdictional [3] 15/7 15/8 16/20
jurisdictions [1] 6/5 16/2 16/3
jurisprudence [2] 6/16 16/1

**K**

KALIL [4] 2/14 2/15 11/4 11/5
KATZ [1] 2/8
keep [1] 22/7
kept [1] 20/11
Knauf [1] 7/24
know [8] 11/14 13/4 20/9 20/22 21/5 22/6 22/25 23/9
knowledge [1] 20/19
knows [1] 20/10
KRUPNICK [2] 2/2 4/3

**L**

Lauderdale [2] 1/25 4/3
law [3] 4/3 11/19 16/7
lawyer [2] 11/19 21/17
lawyers [3] 21/3 22/6 23/9
lead [4] 3/13 21/17 23/5 23/8
leadership [2] 9/2 22/19
leave [2] 10/21 20/19
left [2] 4/20 7/4
LEONARD [2] 2/9

**L**

LEONARD... [1] 3/18
LEVIN [6] 1/19 1/20
3/12 5/7 15/16 15/22
Levin's [1] 17/14
liable [3] 18/6 18/9
18/11
LIBERMAN [1] 2/2
license [1] 22/8
licensed [1] 11/19
Limited [2] 3/3 11/10
listing [1] 12/24
litigating [2] 5/9 5/13
litigation [8] 4/1 4/10
6/2 6/7 8/9 10/9 13/20
20/24
little [2] 5/3 20/3
live [1] 8/2
living [2] 8/9 19/16
LLC [2] 1/21 2/8
LLP [2] 2/10 2/12
localities [2] 6/20 6/21
long [1] 15/7
look [1] 13/3
lose [1] 14/4
loss [1] 19/16
lot [1] 22/6
Louisiana [14] 3/24
6/3 6/19 7/2 7/17 9/20
9/21 10/9 10/20 14/17
14/20 16/16 16/18
16/18

**M**

major [3] 5/9 5/16 6/2
MALONE [1] 2/2
manageable [1] 17/6
mandate [1] 19/2
manufactured [1] 7/7
MARCIA [1] 1/13
market [1] 19/6
master [3] 17/5 21/8
21/12
Materials [1] 11/10
matter [2] 9/6 23/21
matters [2] 7/23 7/25
MATTHEW [2] 2/15
11/6
MDL [5] 3/13 4/6 5/3
7/3 16/9
meant [1] 18/1
measure [1] 7/10
mediated [2] 18/17
18/22
mediation [2] 21/19
21/20
mediator [1] 21/20
MELTON [1] 1/21
members [1] 14/18
Merit [1] 23/18
Miami [1] 1/9
mic [1] 3/20
MICHAEL [2] 2/3 4/2
microphone [2] 8/17
12/10
MILNE [2] 2/14 11/5

mind [1] 23/7
mines [1] 8/3
minutes [1] 23/13
moment [1] 8/16
months [3] 20/25 21/3
21/7
MONTOYA [13] 1/18
3/9 3/21 4/19 13/24
15/20 17/4 20/10
21/16 21/23 22/7
22/17 22/19
MORGAN [4] 2/5 2/5
4/10 4/10
morning [8] 3/7 3/15
3/17 3/23 4/2 4/9
10/25 11/4
motions [1] 11/9
11/17
move [2] 13/17 21/20
moved [1] 3/14
Mr [1] 22/17
Mr. [15] 3/21 4/19
13/24 14/13 15/13
15/16 15/20 15/22
17/4 17/14 20/10
21/16 21/23 22/7
22/19
Mr. Levin [2] 15/16
15/22
Mr. Levin's [1] 17/14
Mr. Montoya [10] 3/21
4/19 13/24 15/20 17/4
20/10 21/16 21/23
22/7 22/19
Mr. Taylor [1] 14/13
Mr. Taylor's [1] 15/13
Ms [1] 12/25
Ms. [2] 13/21 13/23
Ms. Eikhoff [2] 13/21
13/23
multiple [4] 4/7 9/25
15/19 20/4

**N**

naive [2] 5/3 9/11
name [1] 3/4
named [1] 14/18
NATALIE [1] 1/18
national [1] 5/11
nationwide [1] 14/18
nature [1] 15/25
necessarily [2] 18/4
21/11
need [7] 9/15 17/12
17/24 19/25 20/4
21/10 22/17
needs [1] 12/7
neighbor [2] 8/3 8/8
New [2] 3/14 11/10
nextdoor [1] 8/2
nine [4] 5/9 8/10 13/9
20/7
non [1] 6/7
non-Florida [1] 6/7
note [1] 19/9
number [3] 9/21 12/9

23/9

**O**

obviously [1] 11/23
Official [1] 1/24
Oh [1] 18/20
Okay [3] 14/4 14/12
15/23
old [1] 20/16
omnibus [1] 6/12
open [3] 7/4 7/8 17/8
opportunity [1] 23/2
order [3] 3/1 13/2 13/7
15/13 18/23 19/3 23/3
organize [1] 17/5
Orleans [1] 3/14
ORRICK [3] 2/12 11/7
11/8
owned [5] 5/10 5/11
5/12
owners [1] 7/3
ownership [2] 7/5
9/15 17/18

**P**

PA [4] 2/2 2/7 2/14
4/18
paid [3] 18/12 18/22
18/24
panel [2] 16/9 16/9
Parker [4] 3/24 3/24
8/24 22/20
part [7] 3/13 16/12
17/1 17/2 22/18 22/21
23/5
particular [2] 6/20
16/12
parties [1] 23/9
partner [2] 11/1 14/12
partners [1] 11/19
party [1] 18/24
PATRICK [2] 1/18 3/9
PEARL [2] 2/4 4/5
peeled [1] 7/20
pending [2] 6/24 11/9
people [1] 23/10
percent [1] 18/8
personal [9] 5/19 5/22
6/15 6/16 12/12 12/14
15/25 16/3 19/17
perspective [2] 15/7
17/13
PETE [2] 2/6 4/9
place [1] 18/25
places [1] 6/19
placing [1] 19/10
plaintiff [3] 4/16 9/25
16/15
plaintiffs [31]
plaintiffs' [7] 3/10
11/25 12/1 14/15
18/13 19/24 22/7
plan [9] 9/25 10/20
21/11 22/3 22/4 22/23
23/5
please [2] 5/6 8/18

pocket [2] 16/7 18/22
point [3] 7/22 8/25
23/4
poor [1] 20/7
post [1] 9/23
post-default [1] 9/23
posture [1] 8/15
potential [1] 21/16
POYER [2] 2/16 11/5
practices [3] 20/10
20/17 20/23
prepared [1] 7/12
present [1] 9/6
presently [6] 5/20
6/22 6/24 7/19 9/20
9/23
pretrial [2] 21/8 21/13
prevailed [1] 5/21
pro [3] 3/14 11/9
11/18
probably [4] 11/15
16/24 20/2 21/2
problem [1] 15/6
procedural [1] 8/14
procedure [1] 9/18
proceed [2] 9/1 13/14
proceeding [2] 8/16
8/24
proceedings [2] 23/15
23/20
product [7] 6/17 6/18
7/6 7/6 10/12 17/18
19/13
products [3] 10/3 10/3
10/3
progress [1] 9/7
pronounce [1] 3/5
properly [1] 15/4
properties [3] 8/5
10/14 17/22
property [9] 7/4 7/5
7/5 8/2 9/15 9/17
18/21 19/6 19/7
propose [1] 13/15
proposing [1] 12/25
protect [2] 16/14
16/20
protective [1] 16/25
proven [1] 10/3
provided [1] 10/11
proving [1] 7/6
PSC [2] 4/6 18/13
Public [1] 11/10
pure [1] 5/13
purposes [1] 17/3
pursue [1] 13/17

**Q**

question [3] 5/2 9/10
22/13

**R**

R.D [1] 2/15
ramifications [1]
16/25
reached [1] 23/1

ready [1] 10/16
real [1] 20/5
really [2] 8/15 9/24
Realtime [1] 23/19
reason [1] 6/15
received [1] 8/4
recommendation [1]
17/9
record [6] 3/2 3/6 4/12
4/13 22/18 23/20
regard [2] 9/1 22/16
regards [2] 12/15
13/19
Registered [1] 23/18
remaining [1] 21/14
remand [2] 16/9 19/3
remanded [4] 4/22 6/5
6/10 12/24 16/17 17/2
22/18
remediate [1] 18/12
remediated [6] 7/25
8/3 16/11 17/23 17/24
18/1
remediation [13] 7/3
7/12 8/5 10/10 17/16
17/17 17/25 18/5
18/14 18/16 19/8
19/11 19/23
remember [1] 22/2
repaid [1] 18/23
replaced [2] 8/6 8/7
replacement [1] 19/11
reporter [6] 1/23 1/24
4/12 4/13 23/18 23/19
represent [3] 3/24 9/6
11/10
representation [2]
14/24 17/14
representative [1]
13/25
represents [1] 8/24
require [2] 19/21
19/21
residences [2] 4/22
16/4
resident [1] 15/6
residents [3] 6/11
15/3 16/13
resolve [3] 7/13 9/25
10/2
resolved [5] 12/6 12/7
12/12 12/15 21/14
respect [4] 4/18 17/16
respectfully [2] 7/19
16/21
result [2] 6/20 19/13
RICO [1] 1/18
right [16] 3/2 4/11 6/1
9/2 10/23 11/12 11/25
15/22 18/2 18/3 19/14
22/1 22/3 22/12 23/11
23/12
rightly [1] 5/18
Rivera [1] 23/14
RMR [2] 1/23 23/24
ROBERTSON [2] 2/4

**R**

ROBERTSON... [1] 4/5
role [1] 17/5
rulings [1] 7/8
RYAN [2] 2/3 4/2

**S**

sanctioned [1] 22/19
SANDRA [2] 1/20 3/16
saying [4] 12/20 12/22 14/23 23/7
SEDRAN [1] 1/19
see [6] 9/3 9/4 10/23 11/3 20/3 20/9
seeking [2] 19/15 19/16
sees [1] 23/3
self [3] 18/5 18/17 18/22
self-funded [1] 18/5
self-mediated [2] 18/17 18/22
sense [1] 23/9
sent [2] 8/19 13/13
sentiments [1] 5/8
separate [1] 18/10
set [6] 5/10 5/12 6/22 7/10 7/21 17/5
sets [2] 5/9 13/13
settled [3] 5/11 7/23 7/25
seven [1] 20/16
SHANDONG [1] 1/7
shape [1] 21/5
share [1] 5/8
shortly [1] 6/14
side [2] 18/13 22/7
sides [1] 9/24
simple [2] 7/1 7/20
simultaneous [1] 15/18
simultaneously [3] 14/20 14/21 15/10
Sir [1] 3/22
sit [1] 20/18
sitting [2] 15/8 15/19
SLAMA [1] 2/2
SOBEL [1] 1/21
somebody [2] 18/2 18/7
sorry [1] 12/9
sort [1] 9/17
SOUTHERN [2] 1/1 20/12
speak [4] 11/21 12/25 22/20 23/2
speaking [2] 9/8 23/2
special [3] 17/5 21/8 21/12
specifically [1] 19/3
sponsor [1] 11/18
spreadsheets [1] 10/12
square [4] 7/5 9/16 10/12 17/18

stances [1] 9/5
stand [1] 11/24
stands [1] 8/23
start [3] 14/8 14/10 21/12
state [1] 22/17
stated [1] 12/5
statements [1] 12/2
STATES [3] 1/1 6/18 23/14
status [3] 1/12 12/2 20/5
stay [1] 6/6
stayed [6] 13/6 15/10 15/17 16/18 16/19 21/15
stays [1] 22/23
Steering [3] 3/10 3/13 14/15
Stengel [1] 11/7
STENGLE [1] 2/13
strip [1] 13/16
stripped [1] 8/5
studs [1] 8/5
stuff [1] 18/2
submitted [1] 9/24
successful [1] 5/4
sued [1] 5/18
sufficient [1] 15/17
suggest [2] 13/3 16/21
suggested [1] 19/3
suggestion [1] 15/13
sure [3] 4/11 13/7 15/14
SUTCLIFFE [2] 2/12 11/7
synthesized [1] 8/10
systems [2] 8/6 8/7

**T**

table [3] 11/6 19/19 19/25
TAIHE [1] 1/7
TAISHAN [13] 1/7 3/3 5/21 6/21 7/7 7/15 9/8 10/3 11/1 11/2 12/15 14/7 16/5
take [1] 20/19
taken [1] 7/15
TAYLOR [3] 2/10 11/1 14/13
Taylor's [1] 15/13
tell [1] 20/24
telling [1] 13/8
ten [1] 23/13
terms [1] 18/16
test [1] 21/18
testimony [1] 7/11
Thank [2] 14/6 15/24
theories [1] 5/22
thing [4] 6/10 8/14 10/7 10/14
things [1] 7/4
think [12] 8/25 13/6 13/18 14/8 17/4 17/19

20/2 20/6 20/9 21/12 21/19 21/23
thinks [1] 20/17
thought [1] 14/5
thousand [1] 8/4
three [15] 7/4 7/7 7/14 8/4 9/14 11/9 13/12 14/13 14/14 16/2 16/2 17/15 19/23 20/18 21/18
threshold [1] 12/7
time [2] 14/15 15/19
today [2] 11/22 22/1
told [1] 9/4
toothbrush [1] 22/10
total [1] 14/18
train [1] 14/4
transcript [2] 1/12 23/20
transferred [1] 16/11
triable [1] 17/15
trial [7] 7/12 9/11 9/25 10/20 17/3 20/24 21/17
trials [1] 21/18
tried [1] 20/12
true [2] 17/16 19/22
truly [1] 21/14
try [1] 3/4
twice [1] 5/15
two [4] 5/9 5/16 8/4 21/4

**U**

U.S [1] 1/14
understand [7] 8/22 12/3 13/18 13/19 20/5 21/4 22/16
understood [1] 21/22
unfair [2] 20/3 20/6
unfortunate [1] 8/8
UNITED [3] 1/1 6/17 23/13
unusual [1] 8/14
use [6] 8/17 18/17 18/18 18/23 19/13 19/16

**V**

value [2] 19/6 19/6
versus [2] 3/3 23/14
vice [1] 11/9
Virginia [7] 6/3 6/19 14/16 14/21 16/16 16/16 16/17

**W**

Waichman [3] 3/24 3/25 8/24
Waichman's [1] 22/20
waiting [1] 10/14
want [6] 8/13 9/2 9/5 9/7 23/8 23/10
wanted [2] 10/22 15/12
wants [2] 13/1 13/21

wash [1] 21/7
water [1] 23/11
way [5] 8/21 9/19 17/6 17/7 21/5
we've [5] 5/14 6/18 9/4 10/14 10/15
well [8] 3/16 9/19 10/5 11/14 11/22 14/21 15/16 18/6
went [1] 18/7
whatnot [1] 19/18
willing [4] 13/16 18/15 18/21 18/23
windfall [1] 19/1
worth [1] 8/4
wrong [1] 22/9

**Y**

years [8] 5/9 8/10 13/9 14/11 20/7 20/16 20/19 21/4
yesterday [1] 9/24