

# Chapter 19A

# EQUITY SECURITIES

### ISSUERS INCORPORATED
### IN THE PEOPLE'S REPUBLIC OF CHINA

### Preliminary

19A.01 (1)  In general, overseas issuers incorporated in the common law jurisdictions of Bermuda and Cayman Islands may list on the Exchange provided that certain additional requirements set out or referred to in Chapter 19 are fulfilled. However, the legal system in the PRC is not based on a common law system. Furthermore, existing PRC law imposes various restrictions affecting the use of foreign exchange in the PRC and its remittance out of the PRC. Under current PRC law only PRC citizens and legal persons are permitted to own the domestic shares (內資股) of a PRC issuer (which pay dividends in Renminbi), and only foreign investors and investors from the regions of Hong Kong, Macau and Taiwan are permitted to own the overseas listed foreign shares (境外上市外資股) of a PRC issuer (which pay dividends in a foreign currency). As a result, although under PRC law such domestic shares and foreign shares are all shares of a PRC issuer, the two kinds of shares in effect operate in separate markets subject to different investor demands.

(2)  To deal with the different markets in which a PRC issuer's shares may be traded as well as with the non-common law basis of the PRC legal system, certain additional requirements, modifications and exceptions to the Exchange Listing Rules are necessary in order for a PRC issuer to obtain and to maintain a listing of its securities on the Exchange.

(3)  The purpose of this Chapter is to clarify that the Exchange Listing Rules apply as much to PRC issuers as they do to Hong Kong and overseas issuers, subject to the additional requirements, modifications and exceptions set out or referred to in this Chapter. Among such requirements are that (a) PRC issuers are expected to present their annual accounts in accordance with HKFRS, IFRS or CASBE; (b) the articles of association of PRC issuers must contain provisions which will reflect the different nature of domestic shares and overseas listed foreign shares (including H shares) and the different rights of their respective holders; and (c) disputes involving holders of H shares and arising from a PRC issuer's articles of association, or from any rights or obligations conferred or imposed by the Company Law and any other relevant laws and regulations concerning the affairs of the PRC issuer, are to be settled by arbitration in either Hong Kong or the PRC at the election of the claimant.

**MTD Exhibit #43**

(4)     However, if changes in PRC law or market practices materially alter the validity or accuracy of any of the foregoing statements, then the Exchange may impose additional requirements or make listing of the equity securities of a PRC issuer subject to special conditions as the Exchange considers appropriate. Whether or not any such changes in PRC law or market practices occur, the Exchange retains its general power to impose additional requirements and make special conditions under rule 2.04.

19A.02 This Chapter sets out the additional requirements, modifications and exceptions which apply to PRC issuers seeking or maintaining a primary listing on the Exchange. Rules 19.01 to 19.28 (inclusive) do not apply in the case of such PRC issuers.

19A.03 The Exchange will consider an application by a PRC issuer for listing on the Exchange under this Chapter only if:—

(1)     it is duly incorporated in the PRC as a joint stock limited company (股份有限公司);

(2)     the Exchange is satisfied that there are adequate communication and cooperation arrangements in place between the Exchange and the relevant securities regulatory authorities in the PRC;

(3)     in the case of a PRC issuer having equity securities listed or to be listed on another stock exchange, the Exchange is satisfied that there is adequate communication arrangement in place between the Exchange and such other stock exchange authority; and

(4)     the Exchange is satisfied that applicable PRC law and the articles of association of the PRC issuer provide a sufficient level of shareholder protection to holders of H shares.

**Definitions and Interpretation**

19A.04 The following terms, save where the context otherwise requires, have the following meanings:—

**"close associate"**         for a PRC issuer:—

(a)     in relation to an individual means:—

(i)     his spouse;

(ii)     any child or step-child, natural or adopted, under the age of 18 years of the individual or of his spouse (together with (a)(i) above, the "family interests");

(iii)    the trustees, acting in their capacity as such trustees, of any trust of which he or any of his family interests is a beneficiary or, in the case of a discretionary trust, is (to his knowledge) a discretionary object;

(iv)    [Repealed 3 June 2010]

(v)     any company (including an equity joint venture established under PRC law) in the equity capital of which he, his family interests, and/or any of the trustees referred to in (a)(iii) above, acting in their capacity as such trustees, taken together are directly or indirectly interested so as to exercise or control the exercise of 30% (or any amount specified in applicable PRC law as the level for triggering a mandatory general offer or for otherwise establishing legal or management control over a business enterprise) or more of the voting power at general meetings, or to control the composition of a majority of the board of directors and any subsidiary of this company; and

(vi)    any company with which or individual with whom he, his family interests, and/or any of the trustees referred to in (a)(iii) above, acting in their capacity as such trustees, taken together are directly or indirectly interested in a cooperative or contractual joint venture (whether or not constituting a separate legal person) under PRC law where he, his family interests, and/or any of the trustees referred to in (a)(iii) above, acting in their capacity as such trustees, taken together directly or indirectly have 30%

(or any amount specified in applicable PRC law as the level for triggering a mandatory general offer or for otherwise establishing legal or management control over a business enterprise) or more interest either in the capital and/or assets contributions to such joint venture or in the contractual share of profits or other income from such joint venture; and

(b)  in relation to a company means:—

(i)  its subsidiary or holding company or a fellow subsidiary of its holding company;

(ii)  the trustees, acting in their capacity as trustees, of any trust of which the company is a beneficiary or, in the case of a discretionary trust, is (to the company's knowledge) a discretionary object;

(iii)  [Repealed 3 June 2010]

(iv)  any other company (including an equity joint venture established under PRC law) in the equity capital of which the company, its subsidiary or holding company, a fellow subsidiary of its holding company, and/or any of the trustees referred to in (b)(ii) above, acting in their capacity as such trustees, taken together are directly or indirectly interested so as to exercise or control the exercise of 30% (or any amount specified in applicable PRC law as the level for triggering a mandatory general offer or for otherwise establishing legal or management control over a business enterprise) or more of the voting power at general meetings, or to control the composition of a majority of the board of directors and any subsidiary of this other company; and

(v)     any other company with which or any individual with whom the company, its subsidiary or holding company, a fellow subsidiary of its holding company, and/ or any of the trustees referred to in (b) (ii) above, acting in their capacity as such trustees, taken together are directly or indirectly interested in a cooperative or contractual joint venture (whether or not constituting a separate legal person) under PRC law where it, its subsidiary or holding company, a fellow subsidiary of its holding company, and/or any of the trustees referred to in (b)(ii) above, acting in their capacity as such trustees, taken together directly or indirectly have 30% (or any amount specified in applicable PRC law as the level for triggering a mandatory general offer or for otherwise establishing legal or management control over a business enterprise) or more interest either in the capital and/or assets contributions to such joint venture or in the contractual share of profits or other income from such joint venture.

**"Company Law"**      the Company Law (公司法) of the PRC adopted at the Fifth Session of the Standing Committee of the Eighth National People's Congress on 29 December 1993 and effective from 1 July 1994, as amended, supplemented or otherwise modified from time to time

| | |
|---|---|
| **"domestic shares"** | shares issued by a PRC issuer under PRC law, the par value of which is denominated in Renminbi, and which are subscribed for in Renminbi |
| **"foreign shares"** | shares issued by a PRC issuer under PRC law, the par value of which is denominated in Renminbi, and which are subscribed for in a currency other than Renminbi |
| **"H shares"** | overseas listed foreign shares which are listed on the Exchange |
| **"Hong Kong register"** | for a PRC issuer, the part of its register of members located and maintained in Hong Kong pursuant to its articles of association |
| **"overseas listed foreign shares"** | foreign shares which are listed outside the PRC |
| **"PRC"** | for purposes of the Exchange Listing Rules, the People's Republic of China, other than the regions of Hong Kong, Macau and Taiwan |
| **"PRC Governmental Body"** (中國政府機關) | for purposes of rules 19A.14 and 19A.19, includes (but not limited to) |

(a) PRC Central Government, including the State Council of the PRC (中國國務院), State Ministries and Commissions (國家部委), Bureaus and Administrations directly under the State Council (國務院直屬機構), State Council Offices and Institutions (國務院辦事機構及直屬國務院事業單位), Bureaus supervised by State Ministries and Commissions (國家部委代管局);

(b) PRC Provincial-level Governments, including Provincial Governments (省政府), Municipalities directly under the Central Government (直轄市) and Autonomous Regions (自治區), together with their respective administrative arms, agencies and institutions.

**19A** – 6

(c)    PRC local governments immediately under the PRC Provincial-level Governments, including prefectures (區), municipalities (市) and counties (縣), together with their respective administrative arms, agencies and institutions.

Note:    *For clarity, entities under the PRC Government that are engaging in commercial business or operating another commercial entity will be excluded from this definition.*

**"PRC issuer"**    an issuer which is duly incorporated in the PRC as a joint stock limited company (股份有限公司)

**"PRC law"**    the applicable provisions of the PRC constitution, or any statute, ordinance, regulation, rule or normative statement from time to time in force in the PRC, as the context may require

**"PRC stock exchange"**    the Shanghai Stock Exchange or the Shenzhen Stock Exchange

**"promoter"**    as to any PRC issuer, any person who undertook the establishment of such issuer, subscribed for shares of such issuer and assumes liability for such issuer's establishment, prepared the initial articles of association of such issuer and convened the inaugural meeting of the subscribers of shares of such issuer, or any person who performed a similar role under PRC law in the establishment of a PRC issuer

**"Regulations"**    the Special Regulations on the Overseas Offering and Listing of Shares by Joint Stock Limited Companies (國務院關於股份有限公司境外募集股份及上市的特別規定) issued by the State Council of the PRC on 4 August 1994, as amended, supplemented or otherwise modified from time to time

**"supervisor"**    a member elected to the supervisory committee (監事會) of a PRC issuer which under PRC law performs a supervisory function in relation to such issuer's board of directors, the manager and other officers

## Chapter 3A — Sponsors and Compliance Advisers

19A.05 (1)    [Repealed 1 January 2005]

(2)    The PRC issuer should ensure that the Compliance Adviser retained by it has access at all times to its authorised representatives, directors and other officers and should procure that such persons provide promptly to the Compliance Adviser such information and assistance as the Compliance Adviser may need or may reasonably request in connection with the performance of the Compliance Adviser's duties as set out in Chapter 3A and rule 19A.06. The PRC issuer should also ensure that there are adequate and efficient means of communication between itself, its authorised representatives, directors and other officers and the Compliance Adviser and should keep the Compliance Adviser fully informed of all communications and dealings between it and the Exchange.

(3)    Rules 3A.26 and 3A.27 are modified so as to:

(a)    require that the PRC issuer not terminate the role of a Compliance Adviser until the PRC issuer has appointed a replacement Compliance Adviser;

(b)    require that during the Fixed Period the PRC issuer and the Compliance Adviser immediately notify the Exchange of termination or resignation of the Compliance Adviser, in each case stating the reason for termination or resignation, as applicable; and

(c)    require that the PRC issuer and the new Compliance Adviser immediately notify the Exchange of the new Compliance Adviser's appointment.

(4)    If the Exchange is not satisfied that the sponsor or Compliance Adviser is fulfilling its responsibilities under Chapter 3A and rule 19A.06 adequately, the Exchange may require the PRC issuer to terminate the sponsor's or Compliance Adviser's appointment and appoint a replacement as soon as possible. The PRC issuer and the new sponsor or Compliance Adviser should immediately notify the Exchange of the new sponsor's or Compliance Adviser's appointment.

19A.06 In addition to the responsibilities of sponsors and Compliance Advisers set out in Chapter 3A of the Exchange Listing Rules:

(1)    given the particular importance attached to the sponsor's role, the sponsor, in sponsoring a PRC issuer for listing, has a particular responsibility to satisfy himself, on all available information, that the PRC issuer is suitable to be listed and that its directors and supervisors appreciate the nature of their responsibilities and can be expected to honour their obligations under their directors' or supervisors' undertakings, the Exchange Listing Rules and under applicable PRC law and

regulations. In particular, the sponsor must be satisfied that the directors of the PRC issuer understand what is required of them under the Exchange Listing Rules and applicable laws and regulations;

(2)   [Repealed 2 November 2009]

(3)   the Compliance Adviser must inform the PRC issuer on a timely basis of any amendment or supplement to the Exchange Listing Rules and any new or amended law, regulation or code in Hong Kong applicable to such issuer. Without limiting the generality of Chapter 3A, the Compliance Adviser must provide advice to such issuer on the continuing requirements under the Exchange Listing Rules and applicable laws and regulations; and

(4)   where the authorised representatives of the PRC issuer are expected to be frequently outside Hong Kong, the Compliance Adviser must act as the PRC issuer's principal channel of communication with the Exchange in Hong Kong. The Compliance Adviser must also provide the Exchange with the names, home and office telephone numbers and where available, facsimile numbers, of at least one of its officers and an alternate who will act as the Compliance Adviser's contact with the Exchange and the PRC issuer.

19A.07 If the authorised representatives of a PRC issuer are expected to be frequently outside Hong Kong, then they or their alternates (who must be authorised to speak on behalf of the PRC issuer) appointed under rule 3.06(2) must be readily contactable by the Exchange at the home and office telephone numbers and where available, facsimile numbers, provided by them to the Exchange.

19A.07A In the case of a PRC issuer the requirements of rule 3.20 are replaced in their entirety by the following provisions:-

Every director or supervisor of a PRC issuer shall provide to the Exchange, immediately upon his resignation from his office in the issuer, his up-to-date contact information, including his address for correspondence from and service of notices and other documents by the Exchange and telephone number.

19A.07B In the case of a PRC issuer, references to directors in rules 13.67, 13.68 and 13.69 shall also mean and include supervisors.

### Chapter 4 — Accountants' Reports and Pro Forma Financial Information

19A.08 The reporting accountants for a PRC issuer must normally be qualified and be independent to the same extent as required under rule 4.03 for the reporting accountants of any other issuer. The Exchange also accepts a firm of practising accountants which has been approved by the China Ministry of Finance and the China Securities Regulatory Commission as being suitable to act as an auditor or a reporting accountant for a PRC incorporated company listed in Hong Kong.

19A.09 A report will not normally be regarded as acceptable unless the relevant accounts have been audited to a standard comparable to that required in Hong Kong or under International Standards on Auditing or China Auditing Standards.

19A.10 Reports for PRC issuers will normally be required to conform with the requirements as to accounting standards set out in rules 4.11 to 4.13.

19A.11 As indicated in rules 4.14 to 4.16, where the figures in the accountants' report differ from those in the audited annual accounts, a statement of adjustments must be submitted to the Exchange enabling the figures to be reconciled.

### Chapter 6 — Trading Halt, Suspension, Cancellation and Withdrawal of Listing

19A.12 The references in rules 6.11, 6.12, 6.15 and 6.16 to shareholders shall be construed to mean holders of H shares.

### Chapter 8 — Qualifications for Listing

19A.13 The following modifications and additional requirements apply:—

(1)  the Exchange reserves the right, in its absolute discretion, to refuse a listing of securities of a PRC issuer if it believes that it is not in the public interest to list them;

(2)  the PRC issuer must appoint, and maintain throughout the period its securities are listed on the Exchange the appointment of, a person authorised to accept service of process and notices on its behalf in Hong Kong, and must notify the Exchange of his appointment and any termination of his appointment and details of:—

(a)  his address for service of process and notices;

(b)  if different, his place of business or, if he does not maintain a place of business, his residential address;

(c)  his business or residential telephone number, as the case may be;

(d)  his email address and facsimile number (if available); and

(e)    any change in the above particulars;

*Note: The person appointed under this rule may also be the person authorised to accept service required to be appointed under Part 16 of the Companies Ordinance, if applicable.*

(3)    (a)    in the case of registered securities (other than those transferable by endorsement and delivery), provision must be made for a register of holders to be maintained in Hong Kong, or such other place as the Exchange may agree, and for transfers to be registered locally. The Exchange may, however, consider an alternative proposal for registering transfers for Hong Kong holders in exceptional circumstances; and

(b)    in the case of bearer securities, provision must be made for the payment of dividends or interest and repayment of capital in Hong Kong, or such other place as the Exchange may agree;

(4)    unless the Exchange otherwise agrees, only securities registered on the Hong Kong register may be traded on the Exchange;

(5)    where two or more share registers are maintained it will not be necessary for the Hong Kong register to contain particulars of the shares registered on any other register; and

19A.14  Under rule 8.10, the Exchange requires a new applicant to make disclosure where it has a controlling shareholder or a director with an interest in a business apart from the new applicant's business which competes or is likely to compete, either directly or indirectly, with the new applicant's business. In this connection, in the case of a new applicant which is a PRC issuer, "controlling shareholder" means any shareholder or other person or group of persons together entitled to exercise, or control the exercise of 30% (or such other amount as may from time to time be specified in applicable PRC law as being the level for triggering a mandatory general offer or for otherwise establishing legal or management control over a business enterprise) or more of the voting power at general meetings of the new applicant or who is in a position to control the composition of a majority of the board of directors of the new applicant. For the purposes of this rule, the Exchange will normally not consider a PRC Governmental Body (see definition in rule 19A.04) as a "controlling shareholder" of a PRC issuer.

19A.15  The requirement in rule 8.12 for sufficient management presence in Hong Kong, including that normally at least two of the new applicant's executive directors must be ordinarily resident in Hong Kong, shall apply except as otherwise permitted by the Exchange in its discretion. Where the new applicant wants to apply for a waiver from the requirement of rule 8.12, it must make a written submission for the Exchange's consideration. In exercising such discretion the Exchange will have regard to, among other considerations,

the new applicant's arrangements for maintaining regular communication with the Exchange, including but not limited to compliance by the new applicant with rules 19A.05 to 19A.07.

19A.16 [Repealed 1 January 2012]

19A.17 Rules 8.19(1) and 8.20 do not apply to domestic shares or foreign shares other than H shares of a PRC issuer.

19A.18 (1)   In addition to the requirements of Chapter 3, the independent non- executive directors of a PRC issuer must also be able to demonstrate an acceptable standard of competence and adequate commercial or professional experience to ensure that the interests of the general body of shareholders will be adequately represented. Moreover, at least one of the independent non-executive directors must be ordinarily resident in Hong Kong.

(2)   Supervisors of a PRC issuer must have the character, experience and integrity and be able to demonstrate a standard of competence commensurate with their position as supervisors. The Exchange may request further information regarding the background, experience, other business interests or character of any supervisor or proposed supervisor.

19A.19 In addition to the requirement of rule 19A.14, the Exchange may from time to time determine that certain persons or entities should be treated as connected persons of a PRC issuer for purposes of the connected transaction provisions of Chapter 14A.

## Chapter 9 — Application Procedures and Requirements

19A.20 [Repealed 1 October 2013]

19A.21 (1)    [Repealed 2 November 2009]

    (2)    The forms of confirmation and undertaking to be lodged under rules 9.11(3a) and 9.11(3b) may require additional adjustment by virtue of the laws to which the PRC issuer is subject.

19A.22 [Repealed 2 November 2009]

19A.22A Rule 9.11 is amended by adding the following new provision:

    (23A)  a certified copy of the document issued by the China Securities Regulatory Commission or other PRC competent authority expressly approving the PRC issuer's listing on the Exchange.

19A.22B Rule 9.21 is amended by adding the following new provision:

    (3)    a certified copy of the document issued by the China Securities Regulatory Commission or other PRC competent authority expressly approving the issuance of equity securities in the manner contemplated by the PRC issuer's listing application.

19A.23 [Repealed 2 November 2009]

## Chapter 10 — Restrictions on Purchase and Subscription

19A.24 A PRC issuer may purchase its own shares on the Exchange in accordance with the provisions of this rule and rules 10.05 and 10.06. Although the share repurchase provisions of rules 10.05 and 10.06 normally apply to a PRC issuer's equity securities which are listed on the Exchange and which are or are proposed to be purchased on the Exchange, when seeking shareholders' approval to make purchases of such securities on the Exchange or when reporting such purchases, a PRC issuer should provide information on the proposed or actual purchases of any or all of its equity securities, whether or not listed or traded on the Exchange. Therefore, in the case of a PRC issuer, rule 10.06(6)(c) is amended and restated in its entirety to read as follows:

    (c)    for the purposes of rules 10.05, 10.06, 19A.24 and 19.46, "shares" shall mean shares of all classes listed on the Exchange and securities listed on the Exchange

which carry a right to subscribe or purchase shares of the PRC issuer, provided that references to "shares" in rules 10.06(1)(b) and 10.06(4) shall also include shares of all classes listed on any stock exchange and securities that are listed on any stock exchange which carry a right to subscribe or purchase shares of such PRC issuer, and provided further that the Exchange may waive the requirements of those rules in respect of any fixed participation shares which are, in the opinion of the Exchange, more analogous to debt securities than equity securities. References to purchases of shares include purchases by agents or nominees on behalf of the PRC issuer or subsidiary of the PRC issuer, as the case may be.

19A.25 (1)   References to "ordinary resolution" in (a), (b) and (c) of rule 10.06(1) shall mean, for a PRC issuer, the special resolutions of shareholders in general meetings and of holders of domestic shares and foreign shares (and, if applicable, H shares) at separate meetings of such holders conducted in accordance with such issuer's articles of association for approving share repurchases.

(2)   For a PRC issuer, (vii) of rule 10.06(1)(b) is restated in its entirety as follows:—

(vii)   a statement as to the consequences of any purchases which will arise under either or both of the Takeovers Code and any similar applicable law of which the directors are aware, if any;

(3)   For a PRC issuer, the reference to "10 per cent. of the existing issued share capital of the issuer" in (i) of rule 10.06(1)(c) is amended to mean "10 per cent. of the total amount of existing issued H shares of the PRC issuer".

### Chapter 11 — Listing Documents

19A.26 Attention is particularly drawn to:

(1)   the requirement to include a statement of responsibility (see rule 11.12);

(2)   the fact that the Exchange may require disclosure of such additional or alternative items of information as it considers appropriate in any particular case (see rule 11.11); and

(3)   the requirement to include a summary of the provisions of the constitutive documents of the PRC issuer and the relevant PRC law in the listing document (see rules 19A.27(2) and (3) and 19A.27A).

19A.27 The following modifications and additional requirements apply to the contents of listing documents:

    (1)    some of the items of information specified in Parts A and B of Appendix 1 may be inappropriate. In such a case, the item should be appropriately adapted so that equivalent information is given;

    (2)    the listing document must contain a summary of all provisions of the constitutive documents of the PRC issuer in so far as they may affect shareholders' rights and protection and directors' powers (using, and covering at the least, the same subject headings as is required by Section 2 in Part D of Appendix 13 in respect of PRC issuers);

    (3)    the listing document must contain a summary of the relevant PRC law in a form to be agreed upon by the Exchange on a case by case basis and in the Exchange's absolute discretion; and

          *Note: In general the relevant PRC law to be summarized normally would be expected to cover matters such as taxation on the PRC issuer's income and capital, tax (if any) deducted on distributions to shareholders, foreign exchange controls or restrictions, company law, securities regulations or other relevant laws or regulations, and any PRC law which regulates or limits the PRC issuer's major business(es) or the industry in which it mainly operates.*

    (4)    the documents to be offered for inspection will be the documents corresponding to those mentioned in paragraph 53 of Part A and paragraph 43 of Part B of Appendix 1. Unless otherwise provided by the Companies (Winding Up and Miscellaneous Provisions) Ordinance, where any such documents are not in the English language, certified English translations thereof must be available for inspection. In addition, where rule 19A.27(3) applies, the PRC issuer must offer for inspection a copy of any statutes or regulations which are relevant to the summary of relevant PRC law. In particular cases, the Exchange may require other additional documents to be offered for inspection.

19A.27A Rules 19A.27(2) and (3) do not apply to listing documents issued by listed issuers unless they are issued in connection with an introduction or a deemed new listing under the Exchange Listing Rules.

## Chapter 13 — Continuing Obligations

19A.28 Whilst Chapter 13 and Appendix 16 apply equally to PRC issuers, the Exchange may be prepared to agree to such modifications as it considers appropriate in a particular case.

19A.29 Conversely, the Exchange may impose additional requirements in a particular case (see, for example, rule 19A.19). The additional requirements currently imposed by the Exchange in respect of PRC issuers are set out in Part D of Appendix 13. The Exchange may add to, waive, modify or not require compliance with, the requirements of Chapter 13 and Appendix 16, on a case by case basis in its absolute discretion.

### *Annual report and accounts and auditors' report*

19A.30 The following modifications and additional requirements apply to Appendix 16 insofar as an issuer is a PRC issuer. To the extent such modifications and additional requirements conflict with the provisions of Appendix 16, the following provisions shall apply.

19A.31 The annual accounts must be audited by a person, firm or company who must be a practising accountant of good standing. Such person, firm or company must also be independent of the PRC issuer to the same extent as that required of an auditor under the Companies Ordinance and in accordance with the statements on independence issued by the International Federation of Accountants and, if the PRC issuer's primary listing is or is to be on the Exchange, must be:

(1)   qualified under the Professional Accountants Ordinance for appointment as an auditor of a company; or

(2)   a firm of practising accountants acceptable to the Exchange which has an international name and reputation and is a member of a recognised body of accountants; or

(3)   a firm of practising accountants acceptable to the Exchange which is a joint venture approved or otherwise permitted by the China Securities Regulatory Commission or other competent authority in the PRC to act as an auditor of a listed company in the PRC and at least one of whose principal joint venture partners is either qualified under (1) or acceptable under (2); or

(4)   a firm of practising accountants which has been approved by the China Ministry of Finance and the China Securities Regulatory Commission as being suitable to act as an auditor or a reporting accountant for a PRC incorporated company listed in Hong Kong.

19A.32 The accounts must be audited to a standard comparable to that required in Hong Kong or under International Standards on Auditing or China Auditing Standards.

19A.33 The report of the auditors must be annexed to all copies of the annual accounts required to be sent by the PRC issuer and indicate whether in the opinion of the auditors the accounts give a true and fair view:

(1)   in the case of the PRC issuer's balance sheet, of the state of its affairs at the end of the financial year and in the case of the PRC issuer's profit and loss account, of the profit or loss and in the case of the PRC issuer's cash flow statement, of the cash flows for the financial year; and

(2)    in the case where consolidated accounts are prepared, of the state of affairs, the profit or loss, and the cash flows of the PRC issuer and the group of which the PRC issuer is the holding company.

19A.34  The report of the auditors must indicate the act, ordinance or other legislation in accordance with which the annual accounts have been drawn up and the authority or body whose auditing standards have been applied.

19A.35  If the PRC issuer is not required to draw up its accounts so as to give a true and fair view but is required to draw them up to an equivalent standard, the Exchange may allow its accounts to be drawn up to that standard. Reference must, however, be made to the Exchange.

19A.36  If the PRC issuer's primary listing is or is to be on another stock exchange, an auditors' report which conforms to the requirements of the International Standards on Auditing or China Auditing Standards is acceptable.

19A.37  An auditors' report in a different form may be applicable in the case of banking and insurance companies. The wording of such an auditors' report should make it clear whether or not profits have been stated before transfers to or from undisclosed reserves.

### *Pre-emptive rights*

19A.38  The requirements of rule 13.36(1) and (2) are replaced in their entirety by the following provisions:

"13.36 (1)    (a)    Except in the circumstances mentioned in rule 13.36(2), the directors of the PRC issuer shall obtain the approval by a special resolution of shareholders in general meeting, and the approvals by special resolutions of holders of domestic shares and overseas listed foreign shares (and, if applicable, H shares) (each being otherwise entitled to vote at general meetings) at separate class meetings conducted in accordance with the PRC issuer's articles of association, prior to authorising, allotting, issuing or granting:—

(i)    shares;

(ii)   securities convertible into shares; or

(iii)  options, warrants or similar rights to subscribe for any shares or such convertible securities.

> Note:    *Importance is attached to the principle that a shareholder should be able to protect his proportion of the total equity by having the opportunity to subscribe for any new issue of equity securities. Accordingly, unless shareholders otherwise permit, all issues of equity securities by the PRC issuer must be offered to the existing shareholders (and, where appropriate, to holders of other equity securities of the PRC issuer entitled to be offered them) pro rata to their existing holdings, and only to the extent that the securities offered are not taken up by such persons may they be allotted or issued to other persons or otherwise than pro rata to their existing holdings. This principle may be waived by the shareholders themselves on a general basis, but only within the limits of rule 13.36(2).*

(b)    Notwithstanding rule 13.36(2), the directors of the PRC issuer shall obtain the approval by special resolution of the shareholders in general meeting prior to allotting any voting shares if such allotment would effectively alter the control of the PRC issuer.

(2)    No such approval as is referred to in rule 13.36(1)(a) shall be required in the case of authorising, allotting or issuing shares if, but only to the extent that,

(a)    the existing shareholders of the PRC issuer have by special resolution in general meeting given approval, either unconditionally or subject to such terms and conditions as may be specified in the resolution, for the PRC issuer to authorise, allot or issue, either separately or concurrently once every twelve months, not more than twenty per cent. of each of the existing issued domestic shares and overseas listed foreign shares of the PRC issuer; or

(b)    such shares are part of the PRC issuer's plan at the time of its establishment to issue domestic shares and overseas listed foreign shares and which plan is implemented within 15 months from the date of approval by the China Securities Regulatory Commission or such other competent state council securities regulatory authority.

> Notes :  (1)    *Other than where independent shareholders' approval has been obtained, an issue of securities to a connected person pursuant to a general mandate given under rule 13.36(2) is only permitted in the circumstances set out in rule 14A.92.*

(2)   *The PRC issuer does not have to comply with rule 13.36 if its primary listing is or is to be on another stock exchange and it is not subject to any other statutory or other requirement giving pre-emptive rights to shareholders over further issues of share capital. If the PRC issuer has no domestic shares issued, nor expects to issue domestic shares in the future, the PRC Issuer should consult the Exchange concerning appropriate modifications to the provisions of rule 13.36(2).*

(3)   *Notwithstanding any issue of securities pursuant to a general mandate given under rule 13.36(2), the PRC issuer must at all times comply with the prescribed minimum percentage requirements concerning shares held by the public, as set out in rule 13.32."*

## Chapter 14 — Notifiable Transactions

19A.39  References in Chapter 14 to an issuer's "accounts" shall mean, in the case of a PRC issuer, the latest published audited accounts or consolidated accounts of such issuer which have been prepared in accordance with Hong Kong Financial Reporting Standards, International Financial Reporting Standards or China Accounting Standards for Business Enterprises as provided for in rule 19A.10 or rule 19A.31, as the case may be.

### Despatch of circular and listing document

19A.39A The timing for despatching a circular under rules 13.73, 14.41(b), 14.51, 14A.46(1) and 17.06 is modified to require a PRC issuer to despatch the circular on or before the deadline for giving notice of the general meeting under the Company Law.

19A.39B The timing for despatching a listing document under rule 14.57 is modified to require a PRC issuer to despatch the listing document on or before the deadline for giving notice of the general meeting under the Company Law.

### Listing Fees

19A.40  Details of the initial listing fee, annual listing fee, subsequent issue fee and other charges together with details of the brokerage charge, transaction levies and trading fees on new issues are set out in Appendix 8.

### Appendix 1

### Part A — Contents of Listing Documents where listing is sought for equity securities of a PRC issuer no part of whose share capital is already listed on the Exchange

19A.41  References to directors or proposed directors in paragraphs 13, 28(1), 33(2), 41, 45(1), 46(1), 46(2), 46(3), 47(1), 47(2) and 49(1) in Part A of Appendix 1 shall also mean and include supervisors and proposed supervisors, as appropriate.

*Note: For purposes of applying paragraph 45(1) to each supervisor of a PRC issuer, paragraph 45(1) should be interpreted as if Part XV of the Securities and Futures Ordinance applied to such persons to the same extent as directors.*

19A.42 Part A of Appendix 1 is further supplemented by adding below paragraph 53 thereof, but before the Notes thereto, the following new caption heading and new paragraphs 54 to 62:

**"Additional information on PRC issuers**

54.    Where a public or private issue or placing of securities of the PRC issuer other than H shares is being made simultaneously with the issue of H shares in Hong Kong or is proposed to be made as part of such issuer's share issue plan which was approved at the inaugural meeting or any shareholders' meeting of the issuer:—

   (1)    information concerning such securities and such issue or placing, including the information described in paragraphs 11,15,17, 20, 22, 25, 48, 49 and 50;

   (2)    a statement of whether or not such issue plan has been approved by the China Securities Regulatory Commission and the timetable for the share issues under such plan, and if such plan has not been approved, when such approval is expected;

   (3)    a statement of whether or not the issue in Hong Kong is conditional (in whole or in part) on such issue or placing of securities;

   (4)    a description of the effect on the PRC issuer's future plans, prospects and financial condition (including profit forecast, if any) if such issue or placing of securities is not being completed in the manner described in the listing document or if the share issue plan referred to in (2) above is not approved by the expected date;

   (5)    if such securities are not admitted for listing on any stock exchange, a statement of whether there is (or is proposed to be) trading or dealing in such securities on any other authorised trading facility such as the Securities Trading Automated Quotation System (証券交易自動報價系統) in the PRC;

   (6)    a breakdown of the PRC issuer's shares issued or proposed to be issued; and

   (7)    information concerning each legal person or individual expected to hold domestic shares or foreign shares other than H shares constituting 10% or more of the existing issued share capital of the PRC issuer upon the completion of such issue or placing of domestic shares or foreign shares other than H shares, and the number of domestic shares or foreign shares other than H shares to be held by each such legal person or individual.

55. Where any securities of the PRC issuer are already issued and outstanding:—

   (1)   information concerning such securities, including the information described in paragraphs 11, 23 and 25;

   (2)   if such securities are not admitted for listing on any stock exchange, a statement of whether there is trading or dealing in such securities on any other authorised trading facility such as the Securities Trading Automated Quotation System (証券交易自動報價系統) in the PRC;

   (3)   a breakdown of the PRC issuer's shares already issued; and

   (4)   information concerning each legal person or individual holding such securities constituting 10% or more of the existing issued share capital of the PRC issuer, and the number of shares held by each such legal person or individual.

56. Particulars of the quorum and voting requirements for general meetings of shareholders and for separate meetings of holders of domestic shares and foreign shares (and, if applicable, H shares).

57. Particulars of the legal form(s) and enabling PRC law under which the PRC issuer operated at any time during the trading record period under rule 8.05 and prior to its conversion into a joint stock limited company.

58. In regard to every company referred to in paragraph 29(1) which is an equity joint venture or which operates as or under a cooperative or contractual joint venture, particulars of the joint venture arrangement including the names of all joint venture partners; their respective capital contributions and percentage interests in the profits, dividends or other distributions of the joint venture; the term of the joint venture; any pre-emption rights of the joint venture partners and other restrictions on the sale, assignment or transfer of a partner's interest in the joint venture; arrangements concerning the management of the joint venture's business and operations; any special supply, production or licensing arrangements involving any of the joint venture partners; provisions on termination of the joint venture; and any other material terms of the joint venture contract.

59. A statement of whether or not the PRC issuer has applied or intends to apply for the status of a sino-foreign investment joint stock limited company (中外合資股份有限公司) and whether or not the PRC issuer is or expects to be subject to the PRC Sino-Foreign Joint Venture Law (中外合資經營企業法).

60. Particulars of the tax rates applicable to the PRC issuer's income or profits during the trading record period under rule 8.05 and in the next three years, including any preferential tax rates or exemptions.

61.   A statement of whether or not the PRC issuer will have sufficient foreign exchange to pay forecasted or planned dividends on H shares and to meet its foreign exchange liabilities as they become due, with particulars of the anticipated sources of such foreign exchange.

62.   In an appropriately prominent place and manner in the listing document, the statements by the acquirer of shares required to be in a PRC issuer's listing document pursuant to rule 19A.52.

63.   A general statement on the front page of the listing document to the following effect:

"The Company is incorporated, and its businesses are located, in the People's Republic of China ("PRC"). Potential investors in the Company should be aware of the differences in the legal, economic and financial systems between the mainland of the PRC and Hong Kong and that there are different risk factors relating to investment in PRC-incorporated businesses. Potential investors should also be aware that the regulatory framework in the PRC is different from the regulatory framework in Hong Kong and should take into consideration the different market nature of the shares of the Company. Such differences and risk factors are set out in the sections headed '_____' on pages _____."

64.   The risk factors section shall include, among other things, a brief summary of:

(a)   the relevant PRC laws and regulations;

(b)   the political structure and economic environment of the PRC;

(c)   foreign exchange controls in the PRC and the exchange rate risk of the Renminbi;

(d)   the different regulatory framework for PRC issuers listing outside the mainland of the PRC;

(e)   specific risk factors related to the business of the PRC issuer and/or its products; and

(f)   the law(s) governing the resolution of disputes arising from the PRC issuer's articles of association and the transfer of the PRC issuer's shares.

65.   A description of applicable company law matters including material differences between the requirements of the PRC and of Hong Kong. Such description should include the following:

(a)   the quorum and voting requirements for general meetings of shareholders and for separate meetings of holders of domestic shares and foreign shares (and, if applicable, H shares);

(b)   the PRC issuer's ability, by way of a special resolution in a general meeting, to issue, allot or grant up to 20% of its existing share capital in domestic shares and/or foreign shares (and, if applicable, H shares) once every 12 months, without a separate vote by holders of foreign shares;

(c)   the PRC issuer's ability to issue domestic shares and foreign shares (and, if applicable, H shares) pursuant to a share issue plan adopted at the inaugural meeting of the PRC issuer without a separate vote by holders of foreign shares;

(d)   any right of action a shareholder may have against directors of the PRC issuer;

(e)   the special features of arbitration; and

(f)   the standard of shareholder protection, which is different from that generally available in Hong Kong."

**Appendix 1**

**Part B — Contents of Listing Documents where listing is sought for equity securities of a PRC issuer some part of whose share capital is already listed on the Exchange**

19A.43 References to directors or proposed directors in paragraphs 8,26(1), 31(2), 34, 38(1), 39, 40(1) and 40(2) in Part B of Appendix 1 shall also mean and include supervisors and proposed supervisors, as appropriate.

*Note: For purposes of applying paragraph 38(1) to each supervisor of a PRC issuer, paragraph 38(1) should be interpreted as if Part XV of the Securities and Futures Ordinance applied to such persons to the same extent as directors.*

19A.44 Part B of Appendix 1 is further supplemented by adding below paragraph 43 thereof, but before the Notes thereto, the following new caption heading and new paragraphs 44 and 47:

**"Additional information on PRC issuers**

44.   Where a public or private issue or placing of securities of the PRC issuer other than H shares is being made simultaneously with the issue of H shares in Hong Kong or is proposed to be made prior to the end of three months after the issue of the listing document in Hong Kong:—

(1)   information concerning such securities and such issue or placing, including the information described in paragraphs 6,10,11,12,14 and 17;

(2)    a statement of whether or not the issue in Hong Kong is conditional (in whole or in part) on such issue or placing of securities, and if not conditional, a description of the effect on the PRC issuer's future plans, prospects and financial condition (including profit forecast, if any) as a result of such issue or placing of securities not being completed in the manner described in the listing document;

(3)    if such securities are not admitted for listing on any stock exchange, a statement of whether there is (or is proposed to be) trading or dealing in such securities on any other authorised trading facility such as the Securities Trading Automated Quotation System (証券交易自動報價系統) in the PRC;

(4)    a breakdown of the PRC issuer's shares issued or proposed to be issued; and

(5)    information concerning each legal person or individual expected to hold domestic shares or foreign shares other than H shares constituting 10% or more of the existing issued share capital of the PRC issuer upon the completion of such issue or placing of domestic shares or foreign shares other than H shares, and the number of domestic shares or foreign shares other than H shares to be held by each such legal person or individual.

45.    [Repealed 3 June 2010]

46.    [Repealed 3 June 2010]

47.    In an appropriately prominent place and manner in the listing document, the statements by the acquirer of shares required to be in a PRC issuer's listing document pursuant to rule 19A.52.

48.    [Repealed 3 June 2010]

49.    [Repealed 3 June 2010]

50.    [Repealed 3 June 2010]

**Appendix 3 — Articles of Association or equivalent constitutional documents**

19A.45  A PRC issuer shall not at any time permit or cause any amendment to be made to its articles of association which would cause the same to cease to comply with the provisions of Appendix 3 or Section 1 of Part D of Appendix 13.

19A.46  References to "shares" in paragraphs 1(1) and 1(2) of Appendix 3 shall mean and refer to H shares only, and shall not include the domestic shares of a PRC issuer.

19A.47  Paragraph 3(2) of Appendix 3 shall, in the case of a PRC issuer, be amended and restated to read as follows:

"Where power is taken to forfeit unclaimed dividends, that power shall not be exercised until after the expiration of the applicable limitations period."

19A.48  The reference to "every member" in paragraph 5 of Appendix 3 shall mean and refer to only registered holders of the PRC issuer's H shares.

19A.49  Paragraphs 6(2), 7(2), 11(1) and 11(2) of Appendix 3, which are covered by the additional required provisions set out in Section 1 of Part D of Appendix 13, shall not apply to a PRC issuer.

19A.50  A PRC issuer shall make available at a place in Hong Kong for inspection by the public and shareholders free of charge, and for copying by shareholders at reasonable charges, the following:—

(1)  a complete duplicate register of shareholders;

(2)  a report showing the state of the issued share capital of the PRC issuer;

(3)  the PRC issuer's latest audited financial statements and the directors', auditors' and supervisors' reports thereon;

(4)  special resolutions of the PRC issuer;

(5)  reports showing the number and nominal value of securities repurchased by the PRC issuer since the end of the last financial year, the aggregate amount paid for such securities and the maximum and minimum prices paid in respect of each class of securities repurchased (with a breakdown between domestic shares and foreign shares (and, if applicable, H shares));

(6)     a copy of the latest annual return filed with the Administration for Industry and Commerce or other competent PRC authority; and

(7)     for shareholders only, copies of the minutes of meetings of shareholders.

19A.51 A PRC issuer shall appoint one or more receiving agents in Hong Kong and pay to such agents dividends declared and other monies owing in respect of securities listed on the Exchange to be held, pending payment, in trust for the holders of such securities.

19A.52 A PRC issuer shall ensure that all its listing documents and share certificates include the statements stipulated below and shall instruct and cause each of its share registrars not to register the subscription, purchase or transfer of any of its shares in the name of any particular holder unless and until such holder delivers to such share registrar a signed form in respect of such shares bearing statements to the following effect:—

(1)     The acquirer of shares agrees with the PRC issuer and each shareholder of the PRC issuer, and the PRC issuer agrees with each shareholder, to observe and comply with the Company Law, the Regulations and the articles of association of the PRC issuer.

(2)     The acquirer of shares agrees with the PRC issuer, each shareholder, director, supervisor, manager and officer of the PRC issuer and the PRC issuer acting for itself and for each director, supervisor, manager and officer agrees with each shareholder to refer all differences and claims arising from the articles of association or any rights or obligations conferred or imposed by the Company Law or other relevant laws and administrative regulations concerning the affairs of the PRC issuer to arbitration in accordance with the articles of association, and any reference to arbitration shall be deemed to authorise the arbitration tribunal to conduct hearing in open session and to publish its award. Such arbitration shall be final and conclusive.

(3)     The acquirer of shares agrees with the PRC issuer and each shareholder of the PRC issuer that shares in the PRC issuer are freely transferable by the holder thereof.

(4)     The acquirer authorises the PRC issuer to enter into a contract on his behalf with each director and officer whereby such directors and officers undertake to observe and comply with their obligations to shareholders stipulated in the articles of association.

19A.53 A PRC issuer shall observe and comply with the Company Law, the Regulations and the PRC Issuer's articles of association.

19A.54 A PRC issuer shall enter into a contract in writing with every director and officer containing at least the following provisions:—

(1)    an undertaking by the director or officer to the PRC issuer to observe and comply with the Company Law, the Regulations, the articles of association, the Takeovers Code and Share Buy-backs Code and an agreement that the PRC issuer shall have the remedies provided in the articles of association and that neither the contract nor his office is capable of assignment;

(2)    an undertaking by the director or officer to the PRC issuer acting as agent for each shareholder to observe and comply with his obligations to shareholders stipulated in the articles of association; and

(3)    an arbitration clause as follows:—

(a)    Whenever any disputes or claims arise from this contract, the company's articles of association or any rights or obligations conferred or imposed by the Company Law or other relevant laws and administrative regulations concerning the affairs of the company between (i) the company and its directors or officers; and (ii) a holder of overseas listed foreign shares and a director or officer of the company, the parties concerned shall resolve such disputes and claims through arbitration.

(b)    Where a dispute or claim described above is referred to arbitration, the entire dispute or claim shall be resolved through arbitration; all persons who have a cause of action based on the same facts giving rise to the dispute or claim or whose participation is necessary for the resolution of such dispute or claim, if they are shareholders, directors, supervisors, manager or other officers of the company or the company, shall submit to arbitration.

(c)    Disputes over who is a shareholder and over the share register do not have to be resolved through arbitration.

(d)    The party seeking arbitration may elect to have the dispute or claim arbitrated either by the China International Economic and Trade Arbitration Commission in accordance with its arbitration rules or by the Hong Kong International Arbitration Centre in accordance with its securities arbitration rules. Once the party seeking arbitration submits a dispute or claim to arbitration, the other party must submit to the arbitral body selected by the party seeking the arbitration.

(e)    If the party seeking arbitration elects to arbitrate the dispute or claim at the Hong Kong International Arbitration Centre, then either party may apply to have such arbitration conducted in Shenzhen according to the securities arbitration rules of the Hong Kong International Arbitration Centre.

(f)     The laws of the People's Republic of China shall govern the arbitration of disputes or claims described in clause (a) above, unless otherwise provided by law or administrative regulations.

(g)     The award of the arbitral body is final and shall be binding on the parties thereto.

(h)     This agreement to arbitrate is made by the director or officer with the company on its own behalf and on behalf of each shareholder.

(i)     Any reference to arbitration shall be deemed to authorise the arbitral tribunal to conduct hearings in open session and to publish its award.

19A.55  A PRC issuer shall enter into a contract in writing with every supervisor containing at least the following provisions:—

(1)     an undertaking by the supervisor to the PRC issuer to observe and comply with the Company Law, the Regulations and the articles of association and an agreement that the PRC issuer shall have the remedies provided in the articles of association and that neither the contract nor his office is capable of assignment;

(2)     an undertaking by the supervisor to the PRC issuer acting as agent for each shareholder to observe and comply with his obligations to shareholders stipulated in the articles of association; and

(3)     the arbitration clause set forth in rule 19A.54(3), subject to necessary modifications.

19A.56  All notices or other documents required under Chapter 13 to be sent by a PRC issuer to the Exchange shall be in the English language, or accompanied by a certified English translation.

**General**

19A.57  All documents furnished by a PRC issuer, including accounts, which are in a language other than English must be accompanied by a certified English translation. If the Exchange so requires, an additional translation must be prepared in Hong Kong at the PRC issuer's expense by such person or persons as the Exchange shall specify.

19A.58  Information to be supplied by PRC issuers in a listing document or accounts notwithstanding any obligation in the Exchange Listing Rules, the Statutory Rules or any obligation imposed by the laws of Hong Kong shall not be less than that required to be supplied by the PRC issuer under applicable PRC law.