## Cabot, Jason

| | |
|---|---|
| **From:** | Cabot, Jason |
| **Sent:** | Thursday, September 03, 2015 9:23 AM |
| **To:** | 'rherman@hhklawfirm.com' |
| **Cc:** | 'alevin@lfsblaw.com'; 'flonger@lfsblaw.com'; 'gmeunier@gainsben.com'; 'Bruno, Leah R.'; 'michael.barr@dentons.com'; 'mike.kenny@alston.com'; 'mike.moore@dentons.com'; 'Bernard.Taylor@alston.com'; 'eeagan@gordonarata.com'; 'dcurrault@gordonarata.com'; 'harry.rosenberg@phelps.com'; Vejnoska, Christopher; Stengel, James L.; 'sduggan@lfsblaw.com'; 'aweinberger@hanrylaw.com'; 'richard.fenton@dentons.com'; 'Christy.Eikhoff@alston.com'; 'david.venderbush@alston.com'; 'ldavis@hhklawfirm.com' |
| **Subject:** | RE: Notification of inadvertently-produced privileged document |
| **Attachments:** | 20150901-CNBM-MDLI-20150812-SET18_Overlay.zip |

Dear Mr. Herman,

As promised in our August 31, 2015 letter, please find attached a redacted replacement of the inadvertently-produced document.  The password for the attached zip file is pR$hac5k.

Also, we have not yet received confirmation from the PSC that it has sequestered, destroyed and/or deleted the accidentally-disclosed document.  Please confirm that the PSC has taken, or will take, the actions provided in paragraph (b) of the Rule 502(d) Order.

Respectfully,



**JASON CABOT**
*Associate*

ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669

tel +1-415-773-5605
fax +1-415-773-5759
jcabot@orrick.com
bio • vcard

www.orrick.com

---

**From:** Cabot, Jason
**Sent:** Monday, August 31, 2015 11:55 AM
**To:** 'rherman@hhklawfirm.com'
**Cc:** 'alevin@lfsblaw.com'; 'flonger@lfsblaw.com'; 'gmeunier@gainsben.com'; 'Bruno, Leah R.'; 'michael.barr@dentons.com'; 'mike.kenny@alston.com'; 'mike.moore@dentons.com'; 'Bernard.Taylor@alston.com'; 'eeagan@gordonarata.com'; 'dcurrault@gordonarata.com'; 'harry.rosenberg@phelps.com'; Vejnoska, Christopher; Stengel, James L.; 'sduggan@lfsblaw.com'; 'aweinberger@hanrylaw.com'; 'richard.fenton@dentons.com'; 'Christy.Eikhoff@alston.com'; 'david.venderbush@alston.com'; 'ldavis@hhklawfirm.com'
**Subject:** Notification of inadvertently-produced privileged document

Dear Mr. Herman,

**MTD Exhibit #199**

EXHIBIT B

**SONG: Exhibit 358**

Attached, please find a letter concerning CNBM Group's inadvertent production of a privileged document in our August 14, 2015 production. Please let me know if you have any questions.

Respectfully,



**JASON CABOT**
*Associate*

ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669

tel +1-415-773-5605
fax +1-415-773-5759
jcabot@orrick.com
bio • vcard

www.orrick.com

*PRIVILEGED AND CONFIDENTIAL*

## COMMON INTEREST, JOINT DEFENSE AND CONFIDENTIALITY AGREEMENT

This Joint Defense Agreement ("Agreement") is made by and between Beijing New Building Materials, Public Limited Company ("BNBM PLC") China National Building Materials Co., Ltd. ("CNBM"), China National Building Materials Group Corporation ("CNBM Group"), CNBM (USA) Corporation ("CNBM (USA)"), Taishan Gypsum Co. Ltd. ("TG"), Tai'an Taishan Plasterboard Co. Ltd. ("TTP") and Weifang Aotai Plaster Co. Ltd. ("Weifang") referred to collectively as the "Parties" to this Agreement, in the below described litigation.

WHEREAS, plaintiffs throughout the United States of America ("United States" or "US") have filed numerous legal actions, in both federal and state courts, naming or attempting to name the Parties, and actual or alleged affiliates of those entities, as defendants (collectively, the "Mass Tort Drywall Litigation"); and

WHEREAS, the actions in the Mass Tort Drywall Litigation generally contain allegations that Chinese gypsum drywall products allegedly manufactured, sold, or distributed by the Parties, as well as numerous other companies, are defective and have caused property damage and/or personal injury; and

WHEREAS, the Mass Tort Drywall Litigation includes, among others, numerous federal court actions that have been transferred to and coordinated in a single federal docket, Multidistrict Litigation No. 2047, U.S. Federal District Court for the Eastern District of Louisiana (the "MDL Actions"), as well as many actions filed by homeowners in various state courts throughout the United States and indemnity actions such as *Lennar Homes, LLC et al. v. Knauf GIPS KG et al.*, Miami-Dade County, Florida State Case No. 09-07901-CA-23, filed on January 30, 2009 (the "*Lennar Homes* Action"), all of which raise pressing issues for the Parties; and

WHEREAS, the Parties recognize that the allegations raised by plaintiffs in the Mass Tort Drywall Litigation present certain legal and factual issues that are common to the Parties, and even though the Parties maintain that such allegations are baseless, they warrant joint efforts in analyzing, responding to, and, where appropriate, defending individual actions in the Mass Tort Drywall Litigation; and

WHEREAS, the Parties to this Agreement believe that it will be in their mutual and common interest that they and/or their counsel have the ability to (1) exchange certain of their counsel's legal advice, factual and legal research, documents and other information; (2) share certain of their counsel's work product; (3) and jointly work with one another and their counsel- in connection with responding to and defending the Mass Tort Drywall Litigation and any other actual or potential proceeding involving the same or similar allegations; and they believe that the sharing of information, communications and their counsel's legal advice and work product will reduce the costs of litigation, will promote efficiency, and will be beneficial to their common interests in the joint defense of the Mass Tort Drywall Litigation and any other actual or potential proceeding involving the same or similar allegations; and

EXHIBIT C

*PRIVILEGED AND CONFIDENTIAL*

WHEREAS, in undertaking and effectuating their joint efforts, it has been and will be advisable and necessary for the Parties and/or their counsel to share with each other information that may be of a privileged, protected, and/or confidential nature; and

WHEREAS, the Parties intend that their joint efforts not constitute or be construed as a waiver of any attorney/client, work product, joint defense, common interest, or self-evaluative privilege, or of any protection afforded to proprietary information or trade secrets, and/or of any other type of privilege or protection, and that such joint efforts have been and shall continue to be undertaken subject to, and without waiving, any such privileges and protections; and

WHEREAS, the Parties intend that their joint efforts shall not constitute joint representation of them by any counsel and shall not itself constitute a basis for disqualification by one Party of the other's lawyers in any litigation or proceeding.

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein, the Parties agree as follows:

## AUTHORIZATION AND INCORPORATION OF ABOVE "WHEREAS" CLAUSES

1.      The undersigned represent that they are fully authorized to enter into this Agreement. The above-stated "WHEREAS" clauses are hereby incorporated by reference and made fully a part of this Agreement.

## COMMON INTEREST

2.      In connection with the Parties' efforts in defending against the Mass Tort Drywall Litigation and any other actual or potential proceedings involving the same or similar allegations as those alleged in the Mass Tort Drywall Litigation, the Parties believe and agree they share a mutuality of interest in a common defense. In order to advance the Parties' common interest, they have concluded that facts and information known or discovered by each of them may assist the other Party in the preparation of an individual defense or between the Parties a joint defense. The Parties therefore acknowledge and agree that they share certain common interests and that their interests will be best served if they and/or their counsel can exchange information related to those interests subject to the continued protection of the attorney-client privilege, attorney work product doctrine, joint defense and/or common interest doctrines, and/or any other applicable privileges or protections.

## JOINT DEFENSE INFORMATION

3.      The Parties agree that they may cooperate with each other as each Party may deem appropriate and shall abide by this Agreement in the joint defense of the Parties' common interests to the extent permitted by law pursuant to the joint defense and/or common interest doctrines recognized by the various state and federal courts. To that end, a Party or its counsel (a "Producing Party") may communicate, exchange or share with the other Party or its counsel ("Receiving Party") information protected by the attorney–client privilege, the attorney work product doctrine, or other privileges, and information which constitutes confidential business information, trade secrets, or any other type of privileged or protected confidential

*PRIVILEGED AND CONFIDENTIAL*

information—both orally and in paper and electronic documents—including but not limited to, documents, facts, strategies, factual analyses, mental impressions, investigations, legal advice and analysis and memoranda and opinions, reports of witness interviews, draft briefs and pleadings, and other information.  All such information that is disclosed pursuant to this Agreement, including information exchanged both orally and in paper and electronic documents, shall be referred to herein as "Joint Defense Information."  All such information communicated between the Parties is intended as confidential shall be covered by a joint defense privilege and shall be treated as confidential Joint Defense Information unless expressly designated otherwise by the Producing Party.

4.     The Parties hereby confirm to each other that, to the extent they have already been in oral or written communication with one another about matters pertaining to the Mass Tort Drywall Litigation or other actual or potential proceedings involving the same or similar allegations as those alleged in the Mass Tort Drywall Litigation, such communications and work-product have occurred and been created in furtherance of the joint defense, and are subject to this Agreement and the joint defense privilege.

5.     Nothing in this Agreement is intended to, or shall be deemed to, impose any obligation upon either Party to disclose Joint Defense Information to another Party or its counsel.

## PRESERVATION OF ALL PRIVILEGES AND CONFIDENCES

6.     The Parties agree and intend that the otherwise privileged or confidential Joint Defense Information will continue to be protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or other applicable privileges or protections, even if such materials are exchanged between themselves or between counsel and other representatives or consultants for the Parties and that disclosure of Joint Defense Information in this manner is not intended to and does not waive any applicable privilege of protection.  Any inadvertent disclosure of Joint Defense Information shall not constitute a waiver of confidentiality or privilege.  Any other disclosure shall not constitute a waiver of confidentiality or privilege by any Party that did not make the disclosure.

## LIMITATIONS ON USE OF JOINT DEFENSE INFORMATION

7.     The Parties intend and understand that disclosure of Joint Defense Information pursuant to this Agreement shall be done solely to facilitate the preparation and/or presentation of common or coordinated defenses.  To ensure the protection of the mental impressions, conclusions, opinions, legal theories, and other work product of counsel for the Parties, as well as other privileged, protected, or confidential information, each Party agrees that Joint Defense Information shall not be given, shown, made available, or communicated in any way to anyone other than the following:

(a)     counsel for the Parties and such members of their support staff whose access to such Joint Defense Information is reasonably necessary to such counsel's representation of the Party;

(b)     managerial employees and/or in-house counsel for a Party who have responsibilities relevant to the conduct or defense of the Mass Tort Drywall Litigation or other related litigations or proceedings;

(c)     independent consultants and/or non-testifying experts retained, employed, or otherwise consulted by a Party or by the Parties to assist counsel in representing the Party or Parties except that no Joint Defense Information may be disclosed to any such person unless he or she has signed a confidentiality agreement in the form attached as Exhibit A that (a) requires such person to maintain the confidentiality of the Joint Defense Information; (b) limits the use of Joint Defense Information solely for purposes of the Mass Tort Drywall Litigation; and (c) acknowledges that any disclosure of Joint Defense Information is governed exclusively by this Agreement; and

(d)     those individuals or entities to whom disclosure is required by statute, regulation, court or administrative order.

8.     Joint Defense Information that is shared pursuant to this Agreement is to be used solely for the joint defense of the Mass Tort Drywall Litigation or any other actual or potential proceeding involving the same or similar allegations as those alleged in the Mass Tort Drywall Litigation.  Joint Defense Information, or information derived therefrom may not be disclosed or used for any other purpose without the consent of both Parties, provided, however, that any Party may use Joint Defense Information for purposes of its own internal factual or legal analysis.

9.     Nothing in this Agreement shall restrict a Party from using its own information or documents, its own legal research and memoranda, or other materials compiled or prepared by its counsel or experts in the Mass Tort Drywall Litigation or any other litigation or proceeding, despite the fact that any of those materials may have been shared with the other Party pursuant to this Agreement.

10.     Provided that no disclosure is made of Joint Defense Information, nothing in this Agreement shall preclude a Party from (a) pursuing independently any subject matter, including subjects reflected in Joint Defense Information, or (b) disclosing to a third party, at its discretion, information which is developed independently of Joint Defense Information.

**DISCOVERY DEMANDS**

11.     If a Party hereto receives a request, subpoena, or demand from any person or entity not a Party to this Agreement for the production of Joint Defense Information other than that Party's own information, by discovery request or otherwise, it shall:  (i) immediately notify counsel for the other Party's client of the demand; (ii) provide the other Parties and their counsel with copies of any writings or documents, including subpoenas, summonses, motions, briefs and transmittals related thereto, that request the Joint Defense Information; (iii) make such objections to the demand as are reasonable and appropriate and assert all available privileges with respect to the requested Joint Defense Information; and (iv) not produce or provide the requested Joint

*PRIVILEGED AND CONFIDENTIAL*

Defense Information until all such objections are finally resolved by a court, unless the privilege and the protections of this Agreement are waived in writing by the Producing Party. Each Party will take all steps necessary to permit the assertion of all applicable rights and privileges with respect to Joint Defense Information and shall cooperate fully with the other Party in any judicial or administrative proceeding relating to the requested disclosure of Joint Defense Information. The cost of defending or challenging such a request, subpoena, or other demand shall be borne by the Party that originated the Joint Defense Information or, if none, by the Party contesting the disclosure.

If the disclosure of Joint Defense Information is compelled by a court of competent jurisdiction or as part of a judicial, administrative, or alternative dispute resolution ("ADR") procedure, then the Party asked to disclose Joint Defense Information shall give notice of the request or compulsion to the other Party so that the other Party may take appropriate action. The cost of defending or challenging such a disclosure of Joint Defense Information shall be borne by the Party that originated the Joint Defense Information or, if none, by the Party contesting the disclosure.

Each Party agrees that it shall assert all privileges in opposition to any discovery request, subpoena, or other demand propounded by any person or entity not a signatory to this Agreement that seeks information that the Party has received or developed pursuant to this joint defense effort. The terms of this paragraph shall survive the termination of this Agreement.

## DISCLOSURE TO INSURERS

12.     Joint Defense Information received from the other Party shall not be provided to an insurer(s) or other indemnitor unless, in advance of any such disclosure, the Producing Party provides express written consent to the disclosure and the insurer or indemnitor agrees in writing (a) to use the materials only for the joint defense of the Mass Tort Drywall Litigation, and (b) not to disclose the materials to any third parties or employees of the insurer or indemnitor who are not involved in the joint defense of the Mass Tort Drywall Litigation.

## WITHDRAWAL OR TERMINATION

13.     A Party may withdraw from participation in this Agreement at any time pursuant to the procedures set forth herein. In the event a Party elects to withdraw from participation in this Agreement, the withdrawing Party shall immediately provide written notice of its intention to withdraw by e-mail and overnight delivery to the other Party. Within ten (10) business days after providing written notice of its intention to withdraw, the Withdrawing Party shall return all Joint Defense Information received from the other Party pursuant to this Agreement, including all copies thereof, or destroy all such information and certify in writing to the Producing Party that it has done so. The withdrawal shall be deemed effective upon the return or certification of destruction of all Joint Defense Information.

14.     This Agreement shall not be construed in any way as precluding any Party to this Agreement from individually settling with plaintiffs and/or any other person or entity. To preserve the obligations of the Parties under this Agreement, no Party to this Agreement may enter into any settlement of any action in the Mass Tort Drywall Litigation with plaintiffs or their

*PRIVILEGED AND CONFIDENTIAL*

representatives that includes any agreement by it to voluntarily or affirmatively assist the plaintiffs or their representatives in (1) the prosecution of that action or any other claim, demand or action against the other; (2) the prosecution of any other action in the Mass Tort Drywall Litigation against the other; and/or (3) any activities that would disclose any Joint Defense Information, or strategy, or would otherwise act to waive the attorney-client work product or other privileges pertaining to such Joint Defense Information, or strategy.

      15.    If any Party enters into an agreement to resolve one or more individual actions in the Mass Tort Drywall litigation with plaintiffs or their representatives, that Party's counsel must immediately notify counsel for the other Parties that it has reached such a resolution, even if all the terms of the resolution have yet to be finalized in writing, and shall withdraw from this Agreement with respect to the individual action it has resolved. The Party or its counsel's continued participation in this Agreement is permitted only for the purpose of its defense of any remaining actions in the Mass Tort Drywall Litigation. The Parties shall not consult or use Joint Defense Information for any purpose other than its defense of the remaining actions in the Mass Tort Drywall Litigation. A resolving Party shall continue to be bound by this Agreement with regard to any Joint Defense Information provided, disclosed, received, learned, or obtained from the other Party before withdrawal.

      16.    The obligations that a Party assumes by becoming a signatory to this Agreement are continuing in nature, and shall survive withdrawal from the Agreement by a Party for any reason and/or termination of the Agreement. The withdrawal by a Party from participation in this Agreement shall be prospective only and shall not constitute a waiver of any privilege, right, or immunity with regard to information shared pursuant to the terms of this Agreement; all such privileges, rights and immunities shall survive withdrawal from the joint defense effort by a Party to this Agreement. A withdrawing Party shall have a continuing obligation pursuant to this Agreement to take reasonable steps and make a good faith effort to preserve all applicable privileges, rights and immunities. A withdrawing Party shall not share Joint Defense Information with any person, firm, corporation or entity not a Party to this Agreement.

      17.    Upon either: (1) a written request for return or destruction by a Producing Party; or (2) termination of this Agreement upon consent or at such time as the Parties determine that the Mass Tort Drywall Litigation and other related proceedings have been resolved, any Joint Defense Information shared by any counsel or Party in connection with the joint defense effort, including all copies of such Joint Defense Information, shall be destroyed (and such destruction certified in writing by the destroying party) or returned to the Party that originally furnished such materials, within thirty (30) business days. Notwithstanding the foregoing, outside counsel for each Party to this Agreement may retain archival copies of all Joint Defense Information for record-keeping purposes. This paragraph also shall not be deemed to require the return or destruction by a Party of its own work product or the work product of its counsel that may reflect a knowledge of Joint Defense Information disclosed by the other Party.

      18.    This Agreement shall remain in full force and effect unless and until terminated by the written consent of the Parties. This Agreement may be modified or amended only by written consent of both of the Parties.

\\\NY - 037476/000001 - 2290422 v1

*PRIVILEGED AND CONFIDENTIAL*

**INDEPENDENT REPRESENTATION/NO WAIVER**

19.     Nothing in this Agreement shall be construed to affect the separate and independent representation of each Party by their respective counsel, or to require counsel to do anything that is not in counsel's client's best interest.  This Agreement does not grant any right to either Party to control, influence, or be consulted with respect to the defenses or claims asserted by the other Party in discussion and/or litigation with plaintiffs, or their manner and timing of assertion, and provides no opportunity to appear on behalf of or to litigate any issues in any case where that Party's client is not a named party in such litigation.  The Parties recognize that each is represented by counsel of its own choice.  Counsel for one company do not represent the other company by virtue of this Agreement; indeed, the mutually-recognized need for independent choice of counsel is one of the bases for this arrangement.  Notwithstanding the obligation of confidentiality created by this Agreement, the Parties recognize that their interests may become directly adverse, that each Party must represent his or her or her own client and no other, and that this Agreement does not create an attorney-client relationship between any lawyer and any client other than the client or clients that the lawyer and his or her firm represents.

20.     The Parties understand and agree that nothing contained herein shall be deemed to create an attorney-client or other agency or fiduciary relationship between any of the undersigned counsel and anyone other than the named client of such counsel as listed below.  No Party shall have authority to waive any applicable confidence, privilege, or doctrine on behalf of the other Party, nor shall any waiver of an applicable privilege or doctrine by the conduct of one Party be construed to affect the rights of the other Party.

21.     The fact that the Parties have agreed to be bound by the terms of this Agreement, or obtained Joint Defense Information pursuant to this Agreement, shall not in any way preclude counsel from taking any position or strategy regardless of whether the other Party agrees with that position or strategy.

22.     The Parties each agree that counsel for the other Party will not be disqualified for any reason arising out of the existence of this Agreement, including that such counsel have been privy to attorney-client communications pursuant to this Agreement.

23.     Each Party agrees that it will not assert that any lawyer or law firm is disqualified from representing its current client(s) in this litigation because that firm has (or any of its lawyers have) received Joint Defense Information, and each Party agrees to waive any such alleged conflict.  Each Party also agrees that it will not assert that any of the other Party's lawyers is disqualified from representing its current client(s) or any third party adverse to the first-mentioned Party's client in any subsequent proceeding because its lawyers have received Joint Defense Information, if that firm represents in writing that no lawyer who is personally representing the current client(s) or third party has actual knowledge of relevant Joint Defense Information.  As to lawyers that have actual knowledge of relevant Joint Defense Information, the Parties will confer in good faith regarding their participation in the subsequent proceeding and will not assert a conflict of interest unless there is a basis to believe that the lawyers' participation will result in actual prejudice to the Party whose Joint Defense Information is in question.

*PRIVILEGED AND CONFIDENTIAL*

**NO ADMISSION OF LIABILITY**

24.     Nothing in this Agreement is intended to be, or shall be deemed to be, an admission of liability on the part of either Party or of the existence of facts upon which liability could be based.

**NO WAIVER OF DEFENSES**

25.     Nothing in this Agreement is intended to be, or shall be deemed to be, a waiver of any defenses including, but not limited to, those relating to personal jurisdiction over either Party.

**PRESERVATION OF RIGHTS AND REMEDIES**

26.     Nothing in this Agreement shall be construed to waive any rights that one Party may have against the other Party.  Nothing in this Agreement shall be construed to create any enforceable claims or liabilities except to assure compliance with this Agreement.

**NO WAIVER**

27.     Any waiver in any particular instance of the rights, obligations or limitations contained in this Agreement shall not be deemed, and is not intended to be, a general waiver of any rights, obligations or limitations under this Agreement and shall not operate as a waiver beyond that particular instance.

**ENFORCEMENT**

28.     Disclosure of Joint Defense Information in violation of this Agreement will cause the Parties to suffer irreparable harm for which there is no adequate remedy at law. The Parties agree that injunctive relief is an appropriate means to enforce this Agreement.  A Party that obtains such injunctive relief shall be entitled to recover its reasonable attorneys' fees and costs from the breaching Party.

**SEVERABILITY**

29.     In the event that any provision of this Agreement shall be finally determined by a court of competent jurisdiction to be illegal or unenforceable, then such provision shall have no force or effect, but the illegality or unenforceability of such provision shall neither affect nor impair the legality or enforceability of any other provision of this Agreement.

**CONFIDENTIALITY**

30.     Neither this Agreement nor its terms may be disclosed to anyone other than the Parties to this Agreement and their client in the Mass Tort Drywall Litigation, except as otherwise provided in this Agreement or agreed to in writing between the Parties or ordered by a court of competent jurisdiction.  If pursuant to due legal process, however, it becomes necessary to disclose the existence of this Agreement (e.g., in response to litigation discovery process

\\\NY - 037476/000001 - 2290422 v1

*PRIVILEGED AND CONFIDENTIAL*

where a log of privileged documents must be submitted), then the mere existence of this Agreement may be disclosed without disclosure of any terms hereof.  This Agreement shall not be admissible in any action in the Mass Tort Drywall Litigation or in any related or other litigation except in the case where a Party seeks to have its terms enforced or to prove the continued existence of any protection or privilege.

## SETTLEMENT PROTECTION

31.     The Parties intend and agree that this Agreement, as well as their discussions and communications among themselves and with other parties relating to the matters covered in this Agreement, are to be afforded the full scope of the protection provided in the Federal Rules of Evidence, including, without limitations, Rule 408, which limits the admissibility of settlement-related evidence.  The terms of this paragraph shall survive the termination of this Agreement.

## COUNTERPARTS

32.     This Agreement may be executed in counterparts, which taken together, shall constitute one and the same instrument.

## BINDING EFFECT

33.     This Agreement shall be for the benefit of and binding upon the Parties and their respective related or affiliated entities, partners, employees, agents, successors and assigns.

## NOTICE

34.     Any notice required by this Agreement shall be made in writing to a Party to the representative designed below (or another representative if one is designated by the party in writing).  Notice shall be by hand delivery, overnight delivery, telecopy or electronic mail.  If notice is sent by telecopy or electronic mail, a copy shall be sent by overnight delivery or First Class U.S. Mail the same day.

If to BNBM PLC:                    L. Christopher Vejnoska, Esq.
                                   Orrick, Herrington & Sutcliff LLP
                                   405 Howard Street
                                   San Francisco, CA 94105-2669
                                   (415) 773-5916
                                   Facsimile No.: (415) 773-5759

*PRIVILEGED AND CONFIDENTIAL*

If to TG:

Joe Cyr, Esq.
Hogan Lovells US LLP
875 Third Avenue
New York, NY 10022
(212) 918-3000
Facsimile No.: (212) 918-3100

If to TTP:

Joe Cyr, Esq.
Hogan Lovells US LLP
875 Third Avenue
New York, NY 10022
(212) 918-3000
Facsimile No.: (212) 918-3100

If to Weifang:

Joe Cyr, Esq.
Hogan Lovells US LLP
875 Third Avenue
New York, NY 10022
(212) 918-3000
Facsimile No.: (212) 918-3100

If to CNBM:

Kyle Schonekas
Schonekas, Evans, McGoey & McEachin, L.L.C.
650 Poydras Street, Suite 2105
New Orleans, Louisiana 70130
504.680.6050
Facsimile No.: 504.680.6051

If to CNBM Group:

Kyle Schonekas
Schonekas, Evans, McGoey & McEachin, L.L.C.
650 Poydras Street, Suite 2105
New Orleans, Louisiana 70130
504.680.6050
Facsimile No.: 504.680.605

If to CNBM USA:

[INSERT]

-10-

*PRIVILEGED AND CONFIDENTIAL*

**CLIENT AGREEMENT**

35.    By executing this Agreement, each Party certifies its counsel has explained the contents of this Agreement to the Party and it has agreed to enter into the Agreement, and understanding that it can terminate this Agreement at any time by asking its counsel to promptly notify counsel for the other parties of such termination.

**ENTIRE AGREEMENT**

36.    This writing reflects the entire agreement by the Parties with regard to subject matter hereof and supersedes all prior agreements, whether oral or written, among the Parties relating to the subject matter hereof.

**INTERPRETATION**

37.    This Agreement shall be governed by the laws of the State of New York without reference to the principles of choice or conflicts of law.

**COUNTERPARTS**

38.    This Agreement may be executed in counterparts each one of which shall be deemed part of a single agreement. This Agreement may be modified only in a writing signed by the Parties. The addition of parties to this Agreement shall be permitted upon notice to and written consent by all Parties to this Agreement

[The remainder of this page is intentionally left blank.]

DATED as of November 29, 2010. _____

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: _____
    Attorneys for Beijing New Building Materials, PLC

HOGAN LOVELLS US LLP

By: _____
    Attorneys for Taishan Gypsum Co., Ltd.

-11-

*PRIVILEGED AND CONFIDENTIAL*

HOGAN LOVELLS US LLP

By: _____

      Attorneys for Taishan Tai'an
      Taishan Plasterboard Co. Ltd.

HOGAN LOVELLS US LLP

By: _____

      Attorneys for Weifang Aotai Plaster Co. Ltd.


SCHONEKAS, EVANS, MCGOEY & MCEACHIN, L.L.C.

By: _____

      Attorneys for China National Building Materials
      Co., Ltd.

SCHONEKAS, EVANS, MCGOEY & MCEACHIN, L.L.C.

By: _____

      Attorneys for China National Building Material
      Group Corporation

[INSERT FIRM NAME]

By: _____

      Attorneys for CNBM (USA) Corporation

*PRIVILEGED AND CONFIDENTIAL*

Exhibit A

**UNDERTAKING CONCERNING JOINT DEFENSE INFORMATION
COVERED BY COMMON INTEREST, JOINT DEFENSE AND CONFIDENTIALITY
AGREEMENT**

I, _____, declare that:

1.      I have received a copy of the Common Interest, Joint Defense and Confidentiality

Agreement in the Mass Tort Drywall Litigation ("the Agreement").

2.      I will comply with all of the provisions of the Agreement.  I will hold in confidence, will

not disclose to anyone other than those persons specifically authorized by the Agreement, and

will not copy or use for purposes other than for the defense or joint defense of a party or parties

to the Agreement,  any Joint Defense Information that I receive.


Date:_____                    _____
                                                                                    Signature