MTD Exhibit #223

# Purchase/Supply Agreement

Place of Signature: Beijing, China

This Purchasing and Supplying Agreement (hereinafter referred to as the "Agreement") is entered into by and between Davis Construction Supply, LLC, a Florida corporation limited liability company having an office located at 20725 SW 46th Ave, Newberry, Florida 32669 ("Davis") and Beijing New Building Materials Public Limited Company, a P.R.C company which is located at No16 West Road Jiancaicheng Xisanqi Haidian District, Beijing 100096 China (BNBM PLC).

## RECITALS

A. Davis is a real estate development distribution company that utilizes gypsum board products in connection with its business activities.
B. BNBM PLC is in the business of manufacturing gypsum products and other products.
C. Davis desires to purchase gypsum board manufactured by BNBM PLC according to Davis' product specifications and in accordance with applicable ASTM and UL Standards, and BNBM PLC is willing to manufacture and sell those products according to the production capacity of BNBM PLC, subject to the terms and conditions set forth in this Agreement.

Now therefore, in consideration of the mutual covenants and promises contained herein, the receipt and sufficiency of which is hereby acknowledged, the parties, intending to be legally bound, agree as follows:

### 1. EFFECTIVE DATE AND TERM

This Agreement is effective as of the date of signature (hereinafter referred to as the "Effective Date"). The term of this Agreement shall be from the Effective Date until December 31, 2006 (hereinafter referred to as the "Term"). Ninety (90) days prior to the expiration of the Term, the parties shall meet and negotiate to sign a new agreement in good faith for the Agreement's renewal.

### 2. MANUFACTURING & PURCHASING

Manufacturing & Purchasing Requirements: Subject to the terms and conditions of this Agreement, BNBM PLC hereby agrees to manufacture and sell to Davis, all of Davis' requirements of gypsum board ("Products") are according to the production capacity during the Term of this Agreement.

Initial _[signature]_     Initial _[signature]_

EXHIBIT
Deponent: Chairm
Date: 5/18/15  Rptr: [illegible]
WWW.DEPOBOOK.COM

**2.1 Product Specifications:** All gypsum board products shall be designed and manufactured in full compliance and in strict accordance with ASTM 1396-04, ASTM 1264-05 and UL Standards.

**2.2. UL Approval:** BNBM PLC currently produces 5/8" Type X gypsum board with UL certification under the name of Beijing New Building Materials Co. Ltd (hereinafter referred to as " BNBM Co. Ltd"). BNBM PLC will transfer the UL certificate from BNBM Co. Ltd to BNBM PLC soon. After signing this agreement, BNBM PLC will immediately prepare and submit the application for UL Certificates under BNBM PLC's name for other products (5/8" Type C gypsum board, and 5/8" Type X-Moisture Resistant gypsum board) that Davis will purchase. Davis will assist the application for UL Certificates, and the costs will be paid by Davis. If the total contract amount purchased by Davis from March 15, 2006 through December 31, 2006 reaches or exceeds three million pieces of gypsum boards, the UL Certification costs paid by Davis will be reimbursed to Davis by BNBM PLC within 10 days.

**2.3 Product Type and Quantities:** The type and quantity of the Products purchased by Davis from BNBM PLC will be as follows:
  5/8" Type X gypsum board, 5/8" Type C gypsum board, 1/2" gypsum board, and 5/8" Type X-Moisture Resistant gypsum board All gypsum wall board shall be 4' by 12'. The purchasing ratio of the above four types are respectively as follows: 70%, 15%, 10%, and 5%.

Any changes by Davis to the types and purchasing ratio of the Products shall be provided to BNBM PLC in written form, and any additional cost caused by the changes will be solely borne by Davis. Due to the production and transportation situation, The Product type quantities and ratios of each and every order may be adjusted accordingly by BNBM PLC, provided that Davis shall be informed of and shall confirm Davis' acceptance of the adjusted percentages within ten (10) days after placing a purchase order.

**2.4. Packaging and Labeling.**
**2.4.1** BNBM PLC shall package and label all Products suitable for long distance sea shipment. All Products shall be stamped with the appropriate UL certification and the correct board designation (i.e.5/8" Type X gypsum board, 5/8" Type C gypsum board, or 5/8" Type X- Moisture Resistant gypsum board or ½" gypsum board).

**2.4.2** BNBM PLC will sell the products under its brand. On the end tapes of all products will be printed: Produced by BNBM PLC and distributed by Davis in USA.

**2.5** Notice of Delay or Defects. If it appears that BNBM PLC will not be able to meet Davis' requirements or BNBM PLC learns that any Product has not been manufactured in accordance with the specifications, BNBM PLC will immediately notify Davis thereof,

Initial: _____                            Initial: _____

including the nature of the cause for delay, defect, or complaint, and any affected time schedule. Failure to notify Davis timely will be deemed a default under this Agreement.

## 3. PRICING AND PAYMENTS

### 3.1 Pricing

RMB 54.74 per sheet for 5/8"Type X gypsum board of 5/8".

RMB 42.67 per sheet for1/2"gypsum board

5/8" Type C gypsum board ( the price will be negotiated and confirmed by both parties in written form)

5/8" Type X Moisture Resistant gypsum board. (the price will be negotiated and confirmed by both parties in written form)

The price above is based on FOB under tackle China Port. These prices shall remain in effect through December 31, 2006. The sea freight and insurance fee etc. will be at Davis' expense. Partial shipments are allowed with notification to Davis fifteen (15) days prior to the schedule ship date for the order, but all the costs incurred by multi-shipment will be at Davis's expense. In no instance shall Davis be required to accept a shipment of less than 150,000 boards. Both parties agree that, the purchase price of Davis' first purchasing of 200,000 boards of 5/8" Type X gypsum board ordered on November 18, 2005 is USD$12.0, including shipping costs and insurance during shipment. After signing this Agreement, the price for all future orders will be based on FOB under tackle China port.

### 3.2 Exchange Rate.

3.2.1 The price is quoted on RMB. For the term of this agreement, any conversions will be made at the rate published by Bank of China on the day that BNBM PLC confirms DAVIS' purchasing order. (Order Day)

3.2.2 If the exchange rate published by Bank of China on the day that the payments have been placed into BNBM PLC's account (Payment Day) increases more than 2% over the exchange rate on the Order Day and a loss occurs to BNBM PLC, the loss over 2% should be at DAVIS' expense. If the difference of exchange rate between the payment date and the order date fluctuates within 2%, the expense will be at BNBM PLC's expense.

**3.3 Method of payment.** Payments for Products ordered under this Agreement shall be by irrevocable letter of credit at sight (sight draft). Davis will establish an irrevocable letter of credit at sight (sight draft) from a major United States bank in terms of partial shipment allowable, a sum in the amount of two million five hundred fifty thousand United States Dollars ($2,550,000.00).

Initial: _____          Initial: _____

3.4 If the manufacturing and packaging cost to BNBM PLC increases because of performing ASTM 1396-04, ASTM 1264-05, the cost will be at Davis' expense.

## 4. SHIPMENT DELIVERY & ACCEPTANCE

Davis shall place orders with BNBM PLC for Products by notifying BNBM PLC in writing in the form of a purchase order (hereinafter referred to as "Purchase Order"). Davis may submit such Purchase Orders via facsimile, overnight delivery, or electronic mail, or any other means as may be agreed upon between the parties from time to time. Each Purchase Order shall set forth the specific requirements of the Products including types, specifications, quantities, and total amount. The date for delivery of each shipment shall be negotiated. If there is adjustment according to section 2.3, The Products, specifications, quantities, and the time of shipment of every purchasing Order should be confirmed in writing to Davis by BNBM PLC.

## 5. WARRANTY

5.1 All Products delivered to Davis from BNBM PLC shall be manufactured in accordance with all applicable ASTM1396-04, ASTM1264-05 and UL standards, but BNBM PLC shall have no responsibility or obligation to Davis or its customers' under warranty claims with respect to products that have been subjected to abuse, misuse, improper handling, alteration, or neglect.

5.2 Davis will confirm the requirements for the packing and labeling before the production. Any accident material defects caused by the improper packaging or labeling by BNBM PLC will be the responsibility of BNBM PLC.

5.3 BNBM PLC shall be responsible for any lawsuits and liabilities arising from a failure of the Products to meet the referenced ASTM and UL Standards.

5.4 Acceptance: Within sixty (60) days after arrival of the Product at the destination port, if the specifications of the Products do not confirm with this Agreement, Both parties will choose an independent inspector together to issue an inspection certificate. And Davis shall have the right to demand replacement or compensation from BNBM PLC.

## 6. EXCLUSIVE DISTRIBUTION

6.1 Davis guarantees the total amount of orders for the year 2006 will be no less than four million five hundred thousand (4,500,000) pieces of gypsum board. In March, April and May, Davis will purchase no less than 150,000 pieces per month. After BNBM PLC

Initial: _____     Initial: _____

obtains UL certifications for the other 2 products, Davis will purchase over 400,000 pieces per month. After Davis has purchased the 150,000 boards per month for three months, UL certifications have been received, and payment of the deposit per provision 6.3, Davis will become the authorized exclusive distributor for the USA and Caribbean region.

**6.1.1** Although Davis agrees to purchase over 400,000 boards per month, BNBM PLC agrees to store in China free of charge, after receipt of the payment, a maximum of 100,000 boards that Davis is not ready to receive for a maximum of two months.

**6.2 Exceptions:**
**6.2.1** The region for Davis as the exclusive distributor shall consist of: the United States of America and the Caribbean region. The Caribbean region shall include only Puerto Rico, Virgin Island, Dominican Republic, and Haiti.

**6.2.2** From May 15, 2006 through the end of the Term of the contract, once Davis becomes the authorized exclusive distributor for BNBM PLC in the USA, for UL certified gypsum products only, other products of BNBM PLC are not included in this agreement.

**6.2.3** Retail distributors such as Home Depot, Lowe's, etc could buy any other products from BNBM PLC, but could not buy UL certified gypsum products from BNBM PLC.

**6.3** For obtaining the exclusive distributorship, Davis shall pay USD $1 million to BNBM PLC as a security deposit, which shall be paid within 10 days of receipt of UL certification for both products. If before December 31, 2006: the total purchase amount is no more than 3,000,000 pieces, the security deposit will not be returned; if the total purchase amount is between 3,000,000 and 4,000,000 pieces, USD$500,000 of the security deposit will not be returned; if the total purchase amount is between 4,000,000 and 4,500,000 pieces, USD$300,000 of the security deposit will not be returned. If more than 4,500,000 pieces are purchased, all of the deposit money will be returned within 10 days of meeting the above goals. This deposit is to guarantee that Davis will order a certain quantity of material and shall not be considered damages for a material breach for any reason. If the UL certifications are not received by May 15, the quantity required by BNBM PLC will be reduced by 400,000 pieces.

**6.4** Davis's monthly Purchase Order commitment is contingent upon the prior month's Purchase Order being manufactured and delivered to port for shipment. Further, BNBM PLC's failure to meet confirmed orders by both parties is not cause for BNBM PLC to deny an exclusive distributorship to Davis.

## 7. TERMINATION
**7.1 Termination.**
**7.1.1** Bankruptcy. This Agreement shall terminate automatically if either party becomes bankrupt or insolvent, whether by voluntary act of such party or otherwise.

Initial: _____     Initial: _____

### 7.1.2 Termination by BNBM PLC.

BNBM PLC shall have the right to terminate this Agreement in the event Davis materially breaches or defaults on any material obligation under this Agreement; provided, however, that BNBM PLC must provide written notice of material default or breach and thirty (30) days after receipt of such notice by Davis the default or breach remains uncured. BNBM PLC shall have the right to terminate this Agreement upon thirty (30) days written notice to Davis in the event Davis breaches or defaults on any material obligation under this Agreement; provided, however, Davis shall have thirty (30) days from its receipt of such notice to solve the problem.

### 7.1.3. Termination by Davis.

Davis shall have the right to terminate this Agreement in the event BNBM PLC materially breaches or defaults on any material obligation under this Agreement; provided, however, that Davis must provide written notice of material default or breach and thirty (30) days after receipt of such notice by BNBM PLC the default or breach remains uncured. DAVIS shall have the right to terminate this Agreement upon thirty (30) days written notice to BNBM PLC in the event BNBM PLC breaches or defaults on any material obligation under this Agreement; provided, however, BNBM PLC shall have thirty (30) days from its receipt of such notice to solve the problem.

7.1.4 All damages arising out of a material breach and defaults of this agreement are confined to direct damages.

7.2 If the United States local gypsum board manufacturers cut their Products prices sharply, which will influence Davis' price advantage, Davis has the right to inform BNBM PLC and terminate this Agreement with written evidence and 30 days notice in advance. After which, Davis has no obligation to go on purchasing Products from BNBM PLC. However, Davis has the responsibility to pay for the orders already confirmed in writing by BNBM PLC. Termination of this Agreement by Davis will also terminate the exclusive distributorship and per provision 6.3 the deposit will be released to BNBM PLC. Equally, BNBM PLC can also terminate the contract if there are big changes in domestic market and economic conditions with which BNBM PLC can not sustain such prices. However, if BNBM PLC terminates this agreement the deposit shall be returned to Davis according to provision 6.3.

7.3 If UL certifications are not received until June 15, 2006, the total quantity required per 6.3 shall be decreased by 400,000 pieces. If UL certifications are not received by June 15, 2006, Davis shall have the right to terminate this Agreement in written form and shall have no further obligation to order Products from BNBM PLC.

Initial: _____                                              Initial: _____

7.4 Upon termination of the exclusive distributorship per this Agreement, BNBM PLC has the right to sell all its products to any customer in the United States.

## 8. ASSIGNMENT

This agreement is personal to each of the parties and shall not be assigned without the express prior written consent of the other party, this consent shall not be unreasonably withheld. This agreement contemplates the expectation by both parties that Davis and BNBM PLC will remain in business throughout the Term of this Agreement. Nevertheless, each party is free to discontinue its business at any time by bona fide liquidation, sale or other disposition, either by sale of substantially all of the assets, the sale of all its corporate stock, or its merger or reorganization. Any attempted assignment in violation of this section shall be void and of no force or effect.

## 9. GENERAL

**9.1 No benefit to others.** The representations, warranties, covenants and agreements contained in this agreement are for the sole benefit of the parties hereto and their heirs, executors, administrators, legal representatives, successors and assigns and they shall not be construed as conferring any rights to any other persons.

**9.2 Relationship of Parties:** The relationship of BNBM PLC to Davis is that of an independent manufacturer and neither manufacturer BNBM PLC nor its agents or employees shall be considered employees of Davis. This agreement does not constitute and shall not be construed as authority for either party to act for the other partying in any capacity, except as provided herein.

**9.3 No rights in trademarks:**
9.3.1 BNBM PLC acknowledges and agrees that no license or other grant to the use of any of Davis' name and/or trademarks contained in the labeling are granted under this Agreement except as required for the preformance of this Agreement. Neither during or after the termination of this Agreement shall BNBM PLC assert any claim to the name, trademarks or such goodwill or contest or oppose their validity. BNBM PLC shall not take any action that could be detrimental to the goodwill associated with Davis' name and trademarks.
9.3.2 Davis acknowledges and agrees that no license or other grant to the use of any of BNBM's name and/or trademarks contained in the labeling are granted under this Agreement except as required for the performance of this Agreement. Neither during or after the termination of this Agreement shall Davis assert any claim to the name, trademarks or such goodwill or contest or oppose their validity. Davis shall not take any

Initial: _____   Initial: _____

action that could be detrimental to the goodwill associated with BNBM's name and trademarks.

**9.4 Integration.** This Agreement constitutes the entire and only agreement between the parties and all prior negotiations, representations, agreements, and understandings are superseded hereby except for the Sales Contract previously agreed to on November 18, 2005 which shall remain in full force and effect. No agreements altering or supplementing the terms hereof may be made except by a written documents, bills of lading, purchase orders, or other similar documents that are materially different from these terms and conditions shall be binding upon either party unless evidenced in writing signed by a duly authorized officer of each party. No terms or provisions in any subsequent shipping documents, bills of lading, purchase orders, or other similar documents that are materially different from these terms and conditions shall be binding upon either party unless evidenced in writing by a duly authorized officer of each party. Such terms or provisions not in compliance with this Section shall be of no force or effect.

**9.5 Notices.** Any notice required by this Agreement must be given by facsimile transmission confirmed by personal delivery, by overnight courier, or by prepaid, first class, certified mail, return receipt requested, addressed as follows:

| | |
|---|---|
| Davis Construction Supply, LLC | Beijing New Building Materials Public Limited Company |
| Attention: Stefan M. Davis | Attention: Wang Bing |
| 20725 SW 46TH Avenue | No.16 West Road Jiancaicheng Xisanqi, Haidian |
| Newberry, Florida 32669 | District BEIJING 100096 CHINA |
| Telephone: (352)472-7773 | Telephone: 0086-10-82918788 |
| Facsimile: (352)472-5969 | Facsimile: 0086-10-82912657 |
| Email:stefand@Davisandsons.com | Email: wb@bnbm.com.cn |

Or other address as may be given from time to time under the terms of this notice Provision.

**9.6 Counterparts and Translations.** Due to the inability to identically translate this Agreement in English and Chinese, The Agreement shall be prepared and executed in English version and the translation is for convenience purposes only. Any translated version of this document shall not be binding on the parties.

**9.7 Heading, Persons and Plurals.** All Section headings contained in this Agreement are for convenience of reference only, do not form a part of this Agreement and shall not affect in anyway the meaning or interpretation of this Agreement. Words used herein, regardless

Initial: _____          Initial: _____

of the number and gender specifically used, shall be deemed and construed to include any other number, singular or plural, and any other gender, masculine, feminine, or neuter, as the context requires. Any reference to a "person" herein shall include an individual, firm, corporation, partnership, trust, governmental authority or body, association, unincorporated organization or any other entity.

**9.8 Severability.** Whenever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law. However, if any provision of this Agreement or the application of any provision to any party or circumstance shall be prohibited by or invalid under applicable law, such provision shall be reduced to such scope as is reasonable and enforceable if possible.

9.9 Arbitration. Any dispute, disagreement, claim or controversy between the parties arising out of or relating to the Agreement or the parties performance, hereunder (a "Disputed Matter") which cannot be resolved in a timely manner by consultations between the President duly authorized officers of each party shall be resolved by binding arbitration decided by a single arbitrator at Hong Kong International Arbitration Center in Hong Kong in accordance with rules of arbitration of the International Chamber of Commerce in English and Chinese language.  The parties will share the cost of the arbitration, subject to any final apportionment by the arbitrator. The written decision and reasons of the arbitrator, which shall be communicated to the parties not later than thirty (30) days after close of argument in the arbitration, will be final, conclusive, and binding on the parties.

**9.10 Force Majeure.** Should any of the following circumstances prevent either party from carrying out its obligations under the contract, namely:   acts of civil or military authority; government acts, orders, or restrictions; earthquakes; or flood, the contract shall be extended for as long as the circumstances remain.  In the event that these circumstances continue for more than 30 days, each party shall have the right to refuse to continue the performance of its obligations under the contract and, in such case; no party shall be entitled to indemnification from the other party for any loss it may sustain.  In all cases, the party declaring force majeure is required to provide within 14 days acceptable documentation of the incident issued by the competent Government Authorities where the incident occurs as evidence thereof.

Initial: _____     Initial: _____

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement effective as of the Effective date.

| Davis Construction Supply, LLC | Beijing New Building Materials Public Limited Company |
|---|---|
| By: _____ | By: _____ |
| Mr. Stefan M. Davis, its | Mr. Wang Bing, its |
| Managing Member | General Manager |
| March 12, 2006 | March 12, 2006 |

Initial: _____        Initial: _____

# AMENDMENT TO PURCHASE/SUPPLY AGREEMENT
## DATED MARCH 12, 2006

Place of signature: Beijing, China

Through friendly negotiations between Davis Construction Supply, LLC (hereinafter referred to as "Davis") and Beijing New Building Materials public Limited Company (hereinafter referred to as "BNBM PLC") both parties agree to this Amendment to the Purchase/Supply Agreement dated March 12, 2006 (hereinafter referred to as the "Agreement").

1. In paragraph 2.2, of the Agreement, DELETE "After signing this agreement, BNBM PLC will immediately prepare and submit the application for UL Certificates under BNBM PLC's name for other products (5/8" Type C gypsum board, and 5/8" Type X-Moisture Resistant gypsum board) that Davis will purchase. Davis will assist the application for UL Certificates, and the costs will be paid by Davis. If the total contract amount purchased by Davis from March 15, 2006 through December 31, 2006 reaches or exceeds three million pieces of gypsum boards, the UL Certification costs paid by Davis will be reimbursed to Davis by BNBM PLC within 10 days" ADD "Davis will prepare and submit the application for UL Certificates under BNBM PLC's name for other products (5/8" Type C gypsum board, and 5/8" Type X-Moisture Resistant gypsum board) that Davis will purchase. BNBM PLC will assist and execute the application and authorization forms for UL Certifications immediately, and the costs for UL Certifications will be paid by Davis. If the total contract amount purchased by DAVIS within the year of 2006 reaches or exceeds 4,500,000 pieces of gypsum boards, the UL certification costs paid by DAVIS will be reimbursed to DAVIS by BNBM PLC within 10 days."

2. In paragraph 2.3, of the Agreement, DELETE "The type and quantity of the Products purchased by Davis from BNBM PLC will be as follows: 5/8" Type X gypsum board, 5/8" Type C gypsum board, 1/2" gypsum board, and 5/8" Type X-Moisture Resistant gypsum board All gypsum wall board shall be 4' by 12'. The purchasing ratio of the above four types are respectively as follows: 70%, 15%, 10%, and 5%."

3. In paragraph 6.1, of the Agreement, DELETE "In March, April and May, Davis will purchase no less than 150,000 pieces per month. After BNBM PLC obtains UL certifications for the other 2 products, Davis will purchase over 400,000 pieces per month. After Davis has purchased the 150,000 boards per month for three months, UL certifications have been received, and payment of the deposit per provision 6.3. Davis will become the authorized exclusive distributor for the USA and Caribbean region."

Initial _SMD_                                                Initial _[signature]_

1

ADD "For obtaining the exclusive distributorship, DAVIS shall pay a security deposit in an amount of USD$1 million to BNBM PLC's account, within 7 days after signing of the Amendment. Additionally, DAVIS agrees to purchase 4,500,000 sheets during 2006. However, this total amount is subject to provision 6.3 of the original Agreement and provision 7 of the Amendment. The exclusive distributorship shall come into force immediately upon BNBM PLC's receipt of this security deposit. BNBM PLC reserves the right to terminate the exclusive distributorship if DAVIS fails to open the L/C by the date and the monthly quantity as stipulated in Paragraph 6 of this Amendment. This termination shall not be regarded as breach of Agreement from BNBM PLC."

4. In paragraph 6.1.1, of the Agreement, **DELETE** "over 400,000 boards per month," **ADD** "450,000 boards per month after May, 2006."

5. In paragraph 6.3, of the Agreement, **DELETE** "For obtaining the exclusive distributorship, DAVIS shall pay USD$1 million to BNBM PLC as a security deposit, which shall be paid within 10 days of the receipt of UL certification for both products."

6. Davis shall provide the Purchase Order and Letter of Credit for June's 450,000 board order by May 27, 2006. For all remaining 2006 Purchase Orders, Davis will provide the Purchase Order before the 10th day of every month for the next month's order. BNBM PLC shall confirm it's ability to produce the requested amount in the Purchase Order and request a change in the order, if required, within five working days after receiving the Purchase Order. Davis shall issue the Letter of Credit within five working days after confirmation is received. Should any of the timeframes referenced in this paragraph occur on a weekend or holiday an additional three days grace period will be allowed, for either party, and shall not be reason for termination of the exclusive distributorship. If Davis fails to issue the Letter of Credit within the above mentioned timeframe, BNBM PLC shall have the right to terminate the exclusive distributorship. Additionally, should Davis not purchase at least 450,000 sheets per month, BNBM PLC shall have the right to terminate the exclusive distributorship.

7. BNBM PLC shall have the right to sell a maximum of 500,000 sheets of 5/8"TYPE X during the months of JUNE, JULY, and AUGUST in 2006. Additionally, BNBM PLC shall notify DAVIS of the boat name, the port of discharge, anticipated delivery date and quantity. The 4,500,000 sheets required in the original Agreement shall be reduced by the actual number of sheets sold under this provision. Should BNBM PLC sell over 500,000 sheets of 5/8"TYPE X, BNBM PLC shall immediately return the USD $1 million security deposit to DAVIS.

8. DAVIS exclusive distributorship shall be for UL certified gypsum products only.

Initial _SMD_                                    Initial _____

This Amendment shall come into force at the date of signature and shall have the same binding force for the original Purchase/Supply Agreement. The Amendment shall hereby be made part of the original Purchase/Supply Agreement. Termination of the exclusive distributorship will not be grounds for termination of the original Purchase/Supply Agreement.

The Amendment Agreement will be signed in 4 copies as original copies. Two copies shall be preserved by DAVIS and other 2 copies shall be preserved by BNBM PLC.

Davis Construction Supply LLC

Beijing New Building Materials Public Limited Company

By: _____
Mr. Stefan M. Davis, its
Managing Member
May 15, 2006

By: _____
Mr. Wang Bing, its
General Manager
May 15, 2006

Initial _____

Initial _____

3