# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | ) ) | MDL NO. 2047 |
| _____ | ) | SECTION: L |
| | ) | |
| THIS DOCUMENT RELATES TO: | ) | |
| | ) | JUDGE FALLON |
| ALL CASES | ) | MAG. JUDGE WILKINSON |
| | ) | |
| _____ | ) | |

### <u>AFFIDAVIT OF PROF. DR. LIU JUNHAI</u>

This is a declaration being made in accordance with and pursuant to 28 U.S.C. § 1746.

DR. LIU JUNHAI, being duly sworn, deposes and says:



1.　　　I am a professor of law at Law School, Renmin University of China (RUC)） since 2006. I

am a supervisor of LLM and JSD program of business law, supervisor of Post-Doctorate Program of

corporate law and securities law. I'm the funding Director for Business Law Center, RUC. I'm one

of legal Counsels for RUC. I'm the Founder & Editor-in-Chief of E-Journal of

www.chinacapitallaw.com. I have been conducted research on corporate law since 1992 when I was

admitted to JSD program on corporate law at the Institute of Law, Chinese Academy of Social

1

MTD Exhibit #248

Sciences. I am qualified to testify about the areas of law required to make this declaration.

**QUALIFICATIONS**

2.          I studied for LLB at Faculty of Law, Hebei University from 1985 through 1989. When I was a second and third year student, I published three academic papers: *The Future Orientation of Chinese Economic Law*, Jianghai Academic Journal（《江海学刊》）, sponsored by Jiangsu Academy of Social Sciences, vol. 4, 1988; *Several Legislative Issues on Enterprise Mergers & Acquisitions*, Economy & Law（《经济与法》）, Shenyang, Liaoning Province, Volume 8 of 1988; *Urgent Legislative Proposal on Private Enterprises*, Economy & Law （《经济与法律》）, Shijiazhuang, Hebei Province, Vol.5, 1987.

3.          I was admitted to LLM program of business law at China University of Political Science & Law (CUPSL) in 1992, and spent three years at CUPSL. I had internship at the Court of Justice in Huairou County as a law clerk from September 1989 to July 1990. After I returned to CUPSL, I passed the National Bar Examination in the summer of 1990. My LLM thesis was *Several Issues on the Securities Legislation*. As one of four keynote academic speakers, and the only student representative, I presented the core arguments of my thesis on the Celebration Ceremony of the 40th Anniversary of CUPSL on May 5,1992. It was nominated the best student paper for the Paper Competition for the 40th Anniversary of CUPSL. In addition to my thesis, I published two articles: *Research on Improving Legal Mechanism of Rural Enterprises*, Law Magazine, Beijing Law Society, Vol.1, 1992;*The Identification and Exercise of the Ownership and the Right of Use of the Collectively-Owned Land in Chinese Rural Areas*, Forum on Political Science & Law, sponsored by China University of Political Science & Law,Vol.1, 1991.

4.           Despite one job offer from the Legal Affairs Office of the State Council, and another offer

from a giant state-owned corporation in 1992, I was admitted to the SJD or PhD program on

corporate law at the Institute of Law, Chinese Academy of Social Sciences (CASS) after I won the

first place in the admission test. My supervisors were Prof. Wang Jiafu (王家福) and Prof. Wang

Baoshu（王保树）。Prof. Wang Jiafu is the Chair for Academic Committee and former Vice President

of China Law Society, former Director for Institute of Law, Chinese Academy of Social

Sciences(1988-1993), Member of Standing Committee of National People's Congress (1993-2003),

Member of Law Committee, NPC (1993-2003). Prof. Wang Baoshu is the President of Chinese

Business Law Society, and was the first dean of the Law School, Tsinghua University (1999-2002).

5.　　In 1995, I received SJD with 400,000 words of dissertation of the *Protection of*

*Shareholders' Rights in Stock Corporations*(股份有限公司股东权的保护)*.* It was first published in

1995 by the Press of People's Court(人民法院出版社) affiliated with Chinese Supreme Court in

two volumes: One was *The Principle of the Protection of Shareholders' Rights*(股东权保护概

论,GU DONG QUAN BAO HU GAI LUN); another one was: *The Exercise and Protection of*

*Various Shareholders' Rights*(股东诸权利的行使与保护, GU DONG ZHU QUAN LI RU HE

XING SHI YU BAO HU). The essential part of it was published by the Press of Law (法律出版社)

in1997, and republished by the Press of Law in 2004 after substantial supplements.

6.　　After I received SJD in 1995, I joined the Institute of Law, CASS for doing research on

corporate law and other business law issues. I was appointed assistant professor in 1995, associate

professor in 1997, Associate Director at the Department of Business Law and Economic Law in

1998, full professor in 2002, Assistant Director & Secretary General of the Institute of Law in 2002,

founding Director of the Department of Social Law in 2005, SJD supervisor in early 2006.

7.　　After eleven years of business law research at CASS, I was invited to take the chair of

business law at the Law School, Renmin University of China (RUC) as a part of their High Level Talent Introducing Program in September 2006, and I was appointed as the founding Director of Business Law Center on October 26, 2006. RUC Law School (http://www.law.ruc.edu.cn) was ranked as the best Law School in China by the Ministry of Education in 2009, compared to CUPSL as Top Two, and Beijing University Law School as the Top Three. http://www.legaldaily.com.cn/0801/2009-01/19/content_1022665.htm The RUC faculties on civil law and business law are generally considered as the best academic group in Chinese legal community.

8.          I have published several monographs and over one hundred original academic papers on Chinese business law in Chinese influential refereed journals and publishers, which have produced significant impacts on Chinese scholars, lawyers, judges, legislatures and government agencies. I have received many awards for my monographs and papers.

9.          As the first comprehensive monograph on shareholder protection in China, *Protection of Shareholders' Rights in Stock Corporations*（《股份有限公司股东权的保护》）proposed scientific framework of shareholders' rights, and prescribed a numerous legislative reform suggestions including introducing shareholder's derivative action, accumulative voting right, empowering the shareholders to inspect the books and records in addition to the financial reports, defining State right in the corporation as shareholder's right instead of real right or debtor's right. Many legislative suggestions such as shareholder's derivative action were accepted by the new Corporate Law of 2005. It has been widely cited by Chinese scholars, lawyers, students and judges. This book was nominated the Best Award of Young Jurists in the National Competition for the Young Jurists(中国青年法律学术奖), organized by CASS（中国社会科学院）, China Law Society（中国法学会）and

4

National Youth League（全国青联）in 2005.

10.　　I'm the first Chinese scholar to study corporate social responsibility (CSR) in China. My academic work *The Corporate Social Responsibility* (《公司的社会责任》) based on my visiting research at Norwegian Institute of Human Rights from 1996 to 1997, was published by Press of Law in 1999 as the first monograph on the research of CSR. Many of the suggestions in this book were endorsed by Article 5 and other articles of Corporate Law of 2005, which is the first statute in the world to include a special CSR article. Additionally, employee's representative on the board of directors and the board of supervisors were also made mandatory by the legislature in 2005, due to the pressure from All China Federation of Trade Unions（ACFTU）and my theoretical support to ACFTU with the employee participation in corporate governance in my monograph *The Corporate Social Responsibility*. Due to my academic contribution of the employee participation reform, I was appointed as the Member of Committee of Legal Advisors, ACFTU in 2008. As Vice President of China Consumers' Association (CCA), I helped CCA in issuing CSR Guidelines for the Good Corporate Citizens in Protecting the Consumers(《良好企业保护消费者利益社会责任导则》) in November 2009.

11.　　I'm the first scholar in China to do serious research on piercing corporate veil in my 1997 edition of *Protection of Shareholders' Rights*, and I advised the legislature to introduce the doctrine of piercing corporate veil in Paragraph 3 of Article 20 of Corporate Law of 2005. I introduced one person corporation to Chinese audience in my research on EU corporate law directives under EU-China Higher Education Program in 1998, and proposed a smart rule of presumption of abuse of legal personality by one-person shareholder, which leads to automatic piercing corporate veil in absence of contradictory proof produced by one-person shareholder in my 2004 edition of *Protection*

5

*of Shareholders' Rights* . My suggestion was accepted in Article 64 of Corporate Law of 2005, which was again very unique to China.

12.       I have contributed many original opinions on Corporatization of SOEs. In an interview with China Youth Daily in early 1994, I pointed the failure of the theory of the separation between the enterprise ownership enjoyed by the State and the management right enjoyed by the enterprise, and suggested that Contract model of SOE reform should be replaced by corporate model. To prevent the state shareholder from abusing its controlling power in corporate governance, to reduce agency cost of multi-level of agents and to encourage individual investors participate in corporate governance, I proposed to define the state shares in corporations as non voting preference shares. To address the embezzlements of state wealth associated with moral hazards of insiders, I proposed to make State-Assets Protection Law in 2006, and advised the legislature in the process of the drafting of State-Owned Assets Law of 2008. To protect corporate property, I successfully advised the legislature to delete the sentence of "state-owned assets in the corporation belong to the state" in Article 4 of Corporate Law of 1993 in 2005.

13.       *Institutional Innovations of New Corporate Law: Legislative and Judicial Controversies*(《新公司法的制度创新：立法争点与解释难点》), published by Law Press, comprehensively analyzed the controversial debates in the process of the Corporate Law Reform of 2005, reported my systematic legislative suggestions and the supporting arguments and evidences for the legislature, and advised the judges on the judicial uncertainties of the new Corporate Law of 2005. This book was the favorite corporate law bible for many corporate law lawyers and judges. It was nominated the Second Place Award of Qian Duansheng(钱端升奖) in the Third National Competition for Best Legal Research Publications, Ministry of Education and CUPSL in 2010.

6

14.     In 2008，I published another monograph, *Modern Corporate Law* at Law Press. It was republished in 2011. It was nominated the Third Best Award in the Third National Competition for the Text Books and Research Reports of Law, Ministry of Justice in 2009.

15.     I have made great academic contributions to securities regulation in China. I participated in the drafting of the Judicial Interpretation on Civil Liabilities of Securities Frauds, which was passed by the hearing Committee of the Supreme Court of Justice in December 2002. I'm the first Chinese scholar to propose the restructure the stock exchanges into listed corporations in my research project financed by Shenzhen Stock Exchange in 2003, to enhance their competitiveness. I proposed a package of policy and legislative measures in my research project on the Legal Issues of Regulation, Improvement and Development of Capital Market financed by National Social Science Foundation (NSSF). My research report was verified as the best one by NSSF in 2009.

16.     My research interests also cover consumer protection, investment funds, partnership, government procurement, competition, contract, e-commerce, advertisement, arbitration, etc. I have deep understanding of Chinese legal traditional and system, including but not confined to civil law, administrative law, criminal law and international law.

17.     I have undertaken many editorial duties. I'm the editor in chief of the E-Journal of www.Chinacapitallaw.com. I'm the editor in chief of *Law Review of Chinese Capital Market* (Press of Law). I'm a member of the Editorial Board of *Corporate Ownership and Control* (Ukraine). I was a member of the Editorial Board of *Global Law Review*, CASS (2002-06). I have been invited to review the quality of contribution papers for many academic journals and the academic merit of research grant applications for the Ministry of Education and National Social Science Foundation.

18.     My academic opinions have been widely cited by the papers and books on Chinese

business law published in Chinese, Japanese and English. For the citation of Chinese academic papers, please search it at Google or scholar. Google by the key word "刘俊海". For the citation of English academic papers, please search it at book. Google by the key word "LIU JUNHAI". My academic opinions have been reported extensively by Chinese and international media in Chinese and English. For instance, my monograph on Corporate Social Responsibility has been cited for 376 times by Chinese academic papers, my monograph on the Protection of Shareholder's Rights in Joint Stock Corporations has been cited 311 times by Chinese academic papers. Some of my monographs have also been published electronically at Lexiscnweb of lexisnexis.

19.      While active in exporting my academic thoughts on Chinese business law to international community, I've made great efforts in introducing international business law scholarship to Chinese audience. I 'm the lead translator of the Chinese Version of "*The Anatomy of Corporate Law: A Comparative and Functional Approach*, Reinier Kraakman,Paul Davies,Henry Hansmann, Gerard Hertig,Klaus J. Hopt,Hideki Kanda, Edward B. Rock, Oxford University Press, 2004". The Chinese version was published by Peking University Press in 2007. I translated all EU corporate law directives into Chinese, *Chinese Translation of EU Corporation Law Directives* was published by Law Press in 2000. I also translated the *Future of Law: Facing the Challenge from Information Technology* authored by Richard Susskind into Chinese, and published it at the Press of Law in 2004. In addition to the translation work, I cite foreign articles, statutes, cases and monographs to support my business law research in China, especially US corporate law works including the ALI Principles of Corporate Governance.

20.      I have conducted many research collaborations with Chinese and international colleagues on business law. I have successfully applied many research projects and grants from Chinese

government, companies and international organizations, including China Law Society, State

Authority of Industry and Commerce, Ministry of Justice, Ministry of Education, Ministry of

Science and Technology, State Development and Reform Commission, Securities Corporations,

Japanese Sumitomo Foundation, Asian Development Bank, Supreme Court of China, National

Social Science Foundation, Shenzhen Stock Exchange, Shanghai Stock Exchange, Ford Foundation,

UNDP, EU-China Higher Education Program, etc. All the grant organizations have been satisfied

with my research reports.

*21.*      Due to my academic prominence, I was nominated as Distinguished Young Jurist by

Beijing Law Society in 1999; nominated one of Top Ten Distinguished Young Jurists by China Law

Society in 2006. I was nominated Chinese Outstanding Social Scientist by the University Ranking

Project Team, Chinese University Alumina Association (www.cuaa.net) in 2008.

www.cuaa.net/...008shkxj/2008jcshkxj.doc I was nominated Chinese Outstanding Social Scientist by

the same ranking organization again in 2011. http://cuaa.net/cur/2011skxj/12.shtml. In 2008, I was

selected as a member of the Program for New Century Excellent Talents in Universities (NCET) by

Ministry of Education of PRC.

*22.*     I have been invited by the Standing Committee of National People's Congress, the State

Council and numerous ministries to advice them on the legislation or policy making in the area of

corporate law, securities law, investment Fund Law, government procurement law, consumer

protection and other business law issues. The representative legislative or policy consulting activities

are as the followings: Member, Drafting Group, Investment Fund Law, NPC (1999-2003); Member,

Drafting Group, Government Procurement Law, NPC (1999-2002); Member, Revising Group,

Partnership Law, NPC(2001-2006); Advisory Expert, Corporate Law Reform, Committee of

9

Legislative Affairs, Standing Committee of NPC (2004-2005);Advisory Expert, State Assets

Management Law, Committee of Legislative Affairs, Standing Committee of NPC (2008); Advisory

Expert, Consumer Protection Law Reform, State Authority on Industry & Commerce (since 2009);

Advisory Expert, Advertisement Law Reform, State Authority on Industry & Commerce (since

2011);Vice Chairman, Committee of Advisory Experts, Online Retails Regulations, Ministry of

Commerce (since 2011);Sole Drafting Expert, Internet Advertisement Regulations, State Authority

on Industry & Commerce (since 2011);Advisory Expert, Regulations on the Bankruptcy of Banking

Financial Institutions, China Banking Regulatory Commission (since 2011); Advisory Expert,

Regulations on Registration of Foreign-Invested Partnerships, State Authority on Industry &

Commerce ( 2009); Deputy Head of Projects on Corporation Law Reform organized by State

Council Development Research Center (DRC) (2004 -2005); Country Expert, Public Debt

Management Project, Asian Development Bank in collaboration with Ministry of Finance

(2004 ),etc.

23.        I have advised the Supreme Court on a great number of judicial interpretations and

controversial cases in the field of corporate law and business law. I advised the Supreme Court on

the Judicial Interpretation of Marriage Law in 2003. I advised the Supreme Court on the Judicial

Interpretation of Corporate Law since 2003, including but not confined to Corporate Law

Interpretation NO.1, No,2, and No.3. I advised the Supreme Court on the Judicial Interpretation of

Disputes of Foreign-invested Enterprises No.1 in 2010. I Delivered highly regarded expert opinion

on Xiancheng Corporation (Thailand) v. Government Agencies of Shenzhen Municipality before the

Supreme Court of Justice on January 13, 1998. Most legal opinions were accepted. I advised the

judicial interpretation on the disputes between securities firms and investors on the illegally misused

transaction funds before the Supreme Court of Justice on May 26, 2004. I advised the judicial

Interpretation on the disputes between securities firms and investors on the illegally misused

transaction funds before China Securities Regulatory Commission on May 22, 2004. I advised the

judicial interpretation on Corporatization of China Construction Bank and Bank of China on March

26, 2004. I advised the judicial interpretation of securities investment advisors before the Supreme

Court of Justice in November 2003. I advised the Judicial Interpretation on Civil Liabilities of

Securities Frauds, which was passed by the Haring Committee of the Supreme Court of Justice in

December 2002. I advised the judicial interpretation on financial lease before the Supreme Court of

Justice in June 2011. http://www.court.gov.cn/spyw/mssp/201110/t20111026_166384.htm. I have

also provided a great number of expert opinions on business law issues to Chinese local Courts.

24.      Despite the fact that I have received three law degrees with excellence from three

prestigious Chinese academic institutions, and I have been doing pioneering research on Chinese

corporate law, I have been pursuing international distinction in the past years, and I have taken a

series of initiatives including conducting business law research at international level, doing visiting

research at international universities, lecturing at international conferences and writing for

international journals and publishers.

25.       After the completion of my research on shareholder's rights in China, I moved on to the

research on corporate social responsibility when I was invited to conduct my post doctorate research

at Norwegian Institute of Human Rights, University of Oslo from 1996 to 1997. I believed that the

corporations have the legal and moral obligation to promote the social rights as the third generation

of human rights. My supervisor Prof. Eide Asbjorn, the then director of the Norwegian Institute of

Human Rights, and the United Nations Sub-commission on Prevention of Discrimination and

11

Protection of Minorities strongly supported my project. Based on the comparative research on the civil law system and the common law system, I proposed a package of legislative and policy suggestions to strengthen corporate social responsibility in my monograph *The Corporate Social Responsibility* published in 1999. It is the first monograph focusing on CSR in China.

26.     In 1998, I shifted my attention to the latest development of EU corporate law after I successfully applied for the research grant from EU-China Higher Education Program. In addition to proposing legislative reform suggestions, I translated all the EU corporate law directives into Chinese, and published them at the Press of Law in 2000. During my visit at University of Amsterdam Law School in the Fall of 1998, I had many fruitful discussions on EU corporate law with Prof. Alexander Mohr and other colleagues there. My innovative research on one person corporations started with my research on EU corporate law directives in 1998.

27.     In 1999, I participated in the 1999 Chinese Fellows for Scholarly Development Competition, organized by American Council of Learned Societies (ACLS) and the Committee on Scholarly Communication with China (CSCC). As an ACLS & CSCC visiting scholar, I conducted the research on American corporate governance at the University of Kansas Law School in the Spring of 2000. My research partner is Prof. Clyde Stoltenberg.

28.     At the invitation of Prof. Timothy Fort at Michigan, I spent another year at the University of Michigan Business School from May 2000 to May 2001. Corporate Governance in China: Then and Now co-authored with Professor Cindy Schipany at the University of Michigan was published by *Columbia Business Law Review*, Volume 2002, Number 1. According to the author report released by Social Science Research Network (www.ssrn.com) regarding my papers in the eLibrary as of 03/03/2012, there have been 1916 downloads of "Corporate Governance in China: Then and

Now" ,7,002 total abstract views and 19 citations from papers in the SSRN eLibrary. According to scholar.Google, this paper has been cited in academic papers in English for 97 times. *" Chinese Business and the Internet: The Infrastructure for Trust"* co-authored with Prof. Timothy Fort at George Washington University won the Ralph Bunche Award for the Best International Paper at the 2001 National Meeting of the Academy of Legal Studies in Business (ALSB). It was published by Vanderbilt Journal of Transnational Law, November, 2002, 35 Vand. J. Transnat'l L. 1545. http://law.vanderbilt.edu/journal/35-05/Fort-Junhai.pdf.

29.      Due to my international distinction, many international law schools invited me to be their visiting scholar. I was a visiting scholar at University of Wisconsin Law School (Summer 2009), a visiting professor at University of Victoria Law School in New Zealand (summer 2007). In 2010, New South Wales Law School also invited me to do visiting research. Unfortunately, I was unable to take the offer due to my busy academic schedule.

30.      In the academic year of 2011-2012, I'm a Grotius & Hughes Visiting Fellow at the University of Michigan Law School. My visiting research focuses on US corporate law, securities regulation and financial regulation. On October 10, 2011, I made a lecture   "China's "Going Out" Strategy: What US Companies Need to Know About Chinese Corporate Governance & Corporate Law". Presented to the International Law Workshop, University of Michigan Law School, chaired by Prof. Michael S Barr. http://www.law.umich.edu/workshopsandsymposia/intlworkshopseries/archive/Pages/f2011schedule .aspx For the flash webcast, please visit: http://web.law.umich.edu/flashmedia/public/Default.aspx?mediaid=1743 Prof. Benjamin L. Liebman and Prof. Curtis J. Milhaupt at Columbia invited me to give two presentations at Columbia on the

13

noon and afternoon of Feb.6. One topic was "Protection of Minority Shareholders in China", chaired by Prof.Benjamin L. Liebman. http://www.law.columbia.edu/center_program/chinese. Please find a link to the audio recording from this presentation at:

http://media.law.Columbia.edu/CCLS/Liu_Junhai_Talk_120206.mp3 Another topic

was "Corporate Governance in SOEs from Global Perspective", chaired by Prof. Curtis J. Milhaupt. On Feb.7, I gave another lecture "Corporate Governance: Theory & Practice"at Fordham University Law School. On March 19 and 20, I taught Financial Regulation in China for Prof. Michael Barr's course of International Finance (code is 678) at Michigan Law School. On March 29, I gave a talk on CSR Requirements for Multinationals Doing Business in China, cospnsored by Chinese Resrarch Center and Erb Institute for Global Sustainable Enterprise of University of Michigan.

31.      I have been invited to speak at a great number of international symposiums or conferences on Chinese business law in foreign countries, including Germany, the Netherlands, Japan, Singapore, Vietnam, Thailand, Malaysia, US, Finland, New Zealand, etc. Most of my English papers have been published in the refereed journals and books. In addition to my presence in the foreign countries, I have also made presentation in Taiwan, Hong Kong and Macao. Major presentations: "Protection of Minority Shareholders in the Events of M&A in China", Presented to the Fifth East Asian Forum on Rule of Law: The International Symposium on the Legal Rules of Formation of Corporate Groups, Organized by Hitotsubashi University, Renmin University of China and Pusan National University of Korea, Tokyo, December 2 -5, 2011. "Director's Duty of Diligence and Shareholder's Derivative Action in China"，presented to the Symposium "Law and Legal Reality - A Chinese-German Dialogue on the Procedural Realization of Private Claims", Freiburg，25th and 26th of June 2010. "Protection of Minority Shareholders", presented to the Corporate Law Symposium, organized by

14

attorney Peter Koh Soon Kwang and his STAMFORD LAW CORPORATION, Singapore, May 6,

2010. "Corporate Governance and Director's Liability", presented to the University of Michigan

Business School students, chaired by Prof. Cindy A. Schipani, Ann Arbor, January 25, 2010. "The

Fiduciary Duty of the Controlling Shareholders in the Framework of Chinese New Corporate Law",

presented to the International Symposium on the New Issues of Modern Corporate Law in China,

Japan and Korea, organized by Doshisha University, Kyoto, February 22-24, 2007. "Corporate

Governance in Listed Corporations and Corporate Law Reform in China", presented to Asian

Bankers' Summit, Singapore, March 14 to 17, 2005. "Controversial Issues in Chinese Bankruptcy

Law", presented to the Symposium of Bankruptcy Law in China and Finland, Helsinki, November

2-9, 2004. "Case Study on the Fiduciary Duty of the Directors in Chinese Corporations", presented

to the International Symposium on Anti-Corruption, organized by UNDP, Hanoi, September 9-23,

2004. "Corporate Governance in China", presented to the International Symposium on the Corporate

Governance in Asia, Kuala Lumpur, April 2002. "Legal reforms in China",

Governance ,Decentralization and Reform in China,, India and Russia, Jean-Jacques Dethier (ed.)

Kluwer Academic Publishers, pp. 373 – 405. ZEF-Discussion Papers on Development Policy No. 13,

Center for Development Research (ZEF), Bonn, September 1999. See,

http://www.zef.de/zef_englisch/f_publ.html1. It was presented at the international seminar of "the

Governance on China, India and Russia", 3-4 May 1999, hosted by the Research Center for

Development, Bonn University. "Approaches to Strengthen the Responsibility of Directors and

Managers in China", presented at the fourth annual conference of Asia Pacific Economic Law

Forum, held in Hong Kong in December 1998.Needless to say, I have talked on many international

conferences held in China.

32.      I have arbitrated many corporate law and business law cases since 1998. My membership

or panelist has been listed by many international arbitration bodies, including: China International

Economic & Trade Arbitration Commission (CIETAC); Beijing Arbitration Commission (BAC);

International Arbitral Centre of the Austrian Federal Economic Chamber (Vienna International

Arbitral Centre, VIAC); Hong Kong International Arbitral Centre（HKIAC); Kuala Lumpur

Regional Centre for Arbitration (KLRCA); The London Court of International Arbitration

*(*LCIA*);* Australian Centre for International Commercial Arbitration (ACICA);Asia Pacific Regional

Arbitration Group (APRAG); Dubai International Arbitral Centre (DIAC);ADR Chambers

International, Canada; German Institution of Arbitration (Deutsche Institution für

Schiedsgerichtsbarkeit e.V.),DIS; LCIA India; Cairo Regional Centre for International Commercial

Arbitration (CRCICA); The Court of International Commercial Arbitration at the Chamber of

Commerce and Industry of Romania, etc. I have heard more than two hundred commercial cases as a

sole arbitrator, presiding arbitrator or party appointed arbitrator. He has written over one hundred

commercial arbitration awards since 1998. I have created my philosophy and strategies to

encourage the dispute parties to solve their disputes by mediation and settlement, instead of waiting

for the judgment. In average, 40% of the cases which I have heard as presiding arbitrator or sole

arbitrator have been successfully settled by the claimant and the respondent based on his facilitation.

Furthermore, none of my arbitration awards has been challenged or denied by the Courts of Justice

in China.  Some of the awards are highly regarded by the secretariats and arbitrators at CIETAC and

BAC. Arbitration matters handled include: corporate incorporation, shareholder disputes,

shareholder rights, M&As, corporate dissolutions; commercial contracts; international investment,

financing and security; construction disputes; purchase of real estate; insurance; franchises and

distributorships; securities; attorney client disputes, arbitration, etc. I have made many lectures for the mandatory training programs in Beijing Arbitration Commission on the topic of Arbitrator's Judgment Philosophy, the writing of the arbitration awards and corporate law, and given several lectures for CIETAC and its South China Branch and Shanghai Branch on corporate law.

33.     I have earned several academic awards for my corporate law excellence, including but not confined to: Member for Program for New Century Excellent Talents in Universities (NCET) by Ministry of Education, 2008; the Best Award for One-Hundred National Legal Lectures by One Hundred Jurists, organized by China Law Society and Ministry of Justice, 2008; one of Top Ten Distinguished Young Jurists, China Law Society, 2006;   Distinguished Young Jurist, Beijing Law Society, 1999; Top Ten National Opinion Leaders in China，Financial Weekly，2003; Best Award for the excellent lectures on Corporate Law to the State-enterprises, Beijing Municipal Government, 2006.

34.     I was a vice Head for Department of Business law &Economic Law from 1998 to 2002. I was the Assistant Director and Secretary General for the Institute of Law, Chinese Academy of Social Sciences from 2002 to 2005. I founded the Department of social law in 2005, which was the first professional research institution of social law in China.

35.     After I joined the RUC Law School as a chair in business law in September 2006, I established the Business Law Center of RUC in October 2006. For the information of this Center, please visit: http://www.civillaw.com.cn/sfyjs/I created a professional E-Journal of Chinese business law especially capital market law in 2008, http://www.chinacapitallaw.com/. It is the first E-Journal on the legal issues of capital market in China. I have edited a new series of Law Review of Chinese Capital Market(中国资本市场法治评论). Up to 2011, three volumes have been published by the

17

Press of Law.

36.　　　Leadership and membership in corporate law related organizations. In addition to serving the legislature, the judiciary and the ministries, I have made great intellectual contributions to business community, NGOs, consumer associations, labor associations, business associations, and other public interest organizations. Major positions are as the followings: vice Chairman，China Consumers' Association (CCA); Vice President & Secretary General，China Consumers Protection Law Society; Advisory Expert, Committee of Legislative Affairs, Standing Committee of National People's Congress (NPC); Member, Group of Experts on Lecturing to the National Higher and Middle Levels of Officials, organized by Central Organization Ministry, Ministry of Justice and China Law Society; Member, Advisory Committee of E-Commerce Experts, Ministry of Commerce; Member, Committee of Legal Advisors, All China Federation of Trade Unions（ACFTU）; Vice Director, Committee of Internal Governance, China Association of Public Certified Accountants; Former Member, Committee of Listing, Shenzhen Stock Exchange; Member, Committee of Appealing Review, Shenzhen Stock Exchange; Executive Director, China Association of Private entrepreneurs; Executive Director, China Business Law Society; Executive Director, China Securities Law Society; Executive Director, China Industry & Commerce Administration Society; Member, Board of Editors, Corporate Ownership and Control, Ukraine; Member, Board of Directors, China Arbitrational Law Society; Member , Board of Editors, Global Law Review, China (2002-2006); Academic Advisor, China Securities Journal; Academic Advisor, Legal Daily; Advisor for Economic News, Central People's Radio; Academic Advisor, Procuratorate Daily, sponsored by Supreme People's Procuratorate; Member, Advisory Committee of Civil and Administrative Cases, Beijing People's Procuratorate; Independent Director at HongYuan Securities Inc., Zhuye Group,

Inc., First Trust Investment Funds Management Inc.;Member, Expert Committee, China General Chamber of Commerce; etc.

37.     I have made many professional comments and interviews with influential mass media on corporate and business law issues.My comments and interviews could be searched from the search engines including www.google.com, www.baidu.com, or www.sohu.com by inserting the key word "刘俊海"or"liu junhai". I have made a great number of comments on business law issues with People's Daily （人民日报）, Guangming Daily （光明日报），Xinhua News Agency（新华社），China National Radio (CNR), China Daily, Legal Daily（法制日报），Chinese Youth Daily（中国青年报），Procutorate Daily（检察日报），People's Court Daily（人民法院报），Economic Daily（经济日报），etc. For my comments with People's Daily, please visit: http://www.people.com.cn/.For my comments with Guangming Daily, please visit: http://www.gmw.cn/.For my comments with People's Daily, please visit: http://www.xinhuanet.com/. For my comments with Legal Daily, please visit: http://www.legaldaily.com.cn/.For my comments with China Youth Daily, please visit: http://www.cyol.net/. For my comments with Procutorate Daily, please visit: http://www.jcrb.com/.For my comments with People's Court Daily, please visit: www.rmfyb.chinacourt.org,or http://www.chinacourt.org.For my comments with Economic Daily, please visit: http://www.ce.cn/.

38.     My academic arguments have also been covered by international influential mass media, including the Wall Street Journal. For example, my argument that "The CSRC has a responsibility to ensure the securities market is open, fair, just and transparent. It's not the obligation of the government to guarantee stock prices keep going up" was reported by Dinny Mcmahon in the article "China Premier Backs Blueprint for Financial Reform", published by the Wall Street Journal on

19

March 5, 2012.

http://online.wsj.com/article/SB10001424052970203458604577262903484069144.html

39.     For details of my curriculum vitae, please find my CV in both English and Chinese

attached.

## SCOPE OF ENGAGEMENT

40.     Although I was invited by Herman, Herman, Katz & Cotlar LLP on behalf of the Plaintiffs'

Steering Committee ("PSC") to opine on the scope of analysis of piercing corporate veil in the

context of Chinese law, my statements are impartial, honest and true to the best of my knowledge

and expertise.

41.     I understand that the PSC is seeking to impute the conduct and contacts of two Chinese

companies, Taishan Gypsum Co., Ltd. ("TG") and Taian Taishan Plasterboard Co. Ltd. ("TTP") for

the purposes of maintaining jurisdiction over both in proceedings in the United States. TG is the sole

shareholder of its subsidiary, TTP. The PSC requested an opinion whether, under Chinese

Corporation law and based on the Facts provided by the PSC (as set forth below at paragraph 69), a

court would have sufficient evidence to determine that the veil between TG and TTP should be

pierced, and the acts of TG and TTP could be attributed to one another.

42.     I am being compensated by the PSC for my work in this matter at an hourly rate of $850.00

(USD).   Payment is not contingent on the conclusion that I reach in this declaration.

## LEGAL FRAMEWORK

43.      Before Chinese legislature, the Standing Committee of National People's Congress

enacted the new version of Corporate Law on October 27, 2005, the doctrine of piercing corporate

veil or disregard of corporate legal personality was not recognized by Corporate Law of 1993.

20

Instead, Article 3 of Corporate Law of 1993 recognized shareholder's limited liability privileges in very clear language. This article said that both limited liability corporation and the joint stock limited corporation are enterprises legal persons. The shareholders in a limited liability corporation shall assume liability towards the corporation to the extent of their respective capital contributions, and the corporation shall be liable for its debts to the extent of all its assets. The shareholders in the joint stock limited corporations shall assume liability towards the corporation to the extent of their respective shareholdings, and the corporation shall be liable for its debts to the extent of all its assets.

44.     The principle of limited liability for the shareholders (the principle of no-liability for the shareholders) is the key to the long-term success of the system of corporation. This principle and the legal personality nature of the corporation are the outside and inside for each other, and they are interdependent. The former is observed from the position of the shareholders while the latter is observed from the position of the corporation. In other words, the corporation shall be liable for its debts to the extent of all its assets when conducting commercial activities, while the shareholders shall assume no liability to the debts of the corporation once they have fulfilled their obligation to make capital contributions.

45.     Absolute, unlimited privileges of shareholder's limited liability not only encouraged the investment, but also tolerated the dishonest shareholders' abuse of their limited liability privileges and legal personality of the corporation in practice. Without effective remedy of piercing corporate veil, the dishonest shareholders, especially the controlling shareholders, paid no cost for defrauding the creditors of the corporations, many creditors got very concerned about their due claims, and the order of commercial transactions were threatened seriously.

46.      Considering numerous cases in which some shareholders, especially those controlling

21

shareholders, abused the status legal personality of the corporation, defrauded and trapped the creditors by using various tricks, I proposed Chinese legislature to introduce the doctrine of piercing corporate veil in my monograph of *Protection of Shareholders' Rights in Stock Corporations* （《股份有限公司股东权的保护》）, published by Press of Law in 1997.

47.      In 2002, as one of the major advocates for the comprehensive reform of Corporate Law of 1993, I urged the legislature, under the guidance of the Principle of Good Faith and Equality, to introduce the system of piercing the corporate veil and recognize the exception to the principle to limited liability for the shareholders. In other words, when the shareholders, in order to escape from his legal or promised duty, abuse his treatment of limit liability to such an extent that he is mixed up with the corporation in respect of property and personality, the courts or arbitration bodies have the right to disregard the corporate nature of the corporation and order the wrongdoing shareholders directly fulfill legal obligation to the creditors of the corporation and assume legal liability". Certainly, this system is still in the process of evolution in the whole world.[1]

48.       In 2005, Chinese legislature decided to change the situation of the abuse of corporate legal personalities. It took a very active position in restructuring the balance between the protection of investors and the welfare of the creditors. In addition to maintaining the shareholder's limited liability privilege in Article 3, the Corporate Law of 2005 added Article 20, as a special legislative mechanism, to fight against the dishonest use of corporate legal personality in terms of clear warning and severe punishment.

49.      Article 20 of Corporate Law of 2005 reads as follows:

---

[1] Liu Junhai, A Prospect of the Amending of Corporation Law After China's Accession to WTO（中国加入世贸组织后公司法的修改前瞻），CHINA LEGAL SCIENCE （中国法学），sponsored by China Law Society, Vol.6,2002.

(1)  Shareholders of a corporation shall exercise their shareholders'rights in compliance with laws, administrative rules and regulations as well as the articles of association of the corporation, shall not abuse their shareholders' rights to injure the interests of the corporation or other shareholders, or abuse the corporation's independent status or the limited liability of shareholders to injure the interests of the creditors of the corporation.

(2)  Where the abuse of shareholders' rights causes any loss to the corporation or other shareholders, such abusive shareholder shall be liable for compensation in accordance with the law.

(3)  Where shareholders of a corporation abuse the corporate independent status or the limited liability of shareholders for the purpose of escaping the debts, and seriously injures the interests of the creditors of the corporation, such shareholders shall be jointly and severally liable for the debts of the corporation.

50.     Among the above mentioned paragraphs, the first paragraph and the third paragraph are relevant to the doctrine of piercing of corporate veil for the purpose of protecting the creditors of the corporation, while the second paragraph serves the purpose of protecting the interests of the corporation and its shareholders as a whole. Therefore, I only focus on the first paragraph and the third paragraph for the purpose of examines the possibility of piercing corporate veil.

51.      The first Paragraph of Article 20 notifies shareholders how to behave themselves in relation to the creditors and stakeholders of the corporation. The rationale here is that respecting the creditor's interest is the price the shareholders are supposed to pay for obtaining the privileges of limited liability. Thus, when the shareholders refrain themselves from abusing the corporate independent status or the limited liability of shareholders, they could enjoy their limited liability privilege.

52.     The third Paragraph starts to work after shareholders have abused their limited liability and the corporate independent status, in violation of the provisions of the first Paragraph.

53.      The core element of the Article (3) is the definition of "abuse the corporate independent

status or the limited liability of shareholders." In my opinion, abuse of the corporate independent status or the limited liability of shareholders implies any forms of utilization or taking advantages of the corporate independent status or the limited liability of shareholders in violation of the principle of honesty, integrity or public policy. The common abuses of the corporate independent status or the limited liability of shareholders could be classified as undercapitalization and commingling of legal personalities between the corporation and its shareholder.

54.     Undercapitalization refers to the situation where the shareholder invested unreasonably insufficient equity capital into the corporations in relation to the excessively higher debt capital of the corporations, based on the elements of the requirements of the corporate business nature, operation scale, employment size and potential risks, etc. As Chinese Corporate Law of 2005 lowers the mandatory minimum equity capital requirements, the mandatory minimum equity capital requirements are not the precise and effective indicator of undercapitalization. In other words, undercapitalization should be recognized if the shareholder was supposed to capitalize more equity capital to support the existence and growth of the corporation, despite the mere fact of actual capitalization above the mandatory minimum equity capital requirements by the shareholder.[2]

55.     Commingling of legal personalities between the corporation and its shareholder usually implies the collapse of the legal distinction between of the corporation and its shareholder, including but not confined to the failure to observe the due corporate governance rules and formalities. The commingling may take many forms, including the following: (i)Commingling of assets including but not confined to cash, movables and immovable, intellectual property ; (ii) Unreasonable overlapping

---

[2] For the details of undercapitalization under Chinese law, please see Page 547, Page 548, Page 549 and Page 550, Modern Corporation Law（现代公司法）, Liu Junhai, Press of Law, Second Edition, 2011.

of legal representatives, directors and senior executives ; (iii) Commingling of corporate governance organs including general meeting of shareholders, board of directors, board of supervisors and the management; (iv)Sharing the same financial officers, accountants, banking accounts and auditors; (v)Commingling of business activities including failure to properly account for joint business activities; (vi)Other relevant factors, such as same logos, business cards, same office, same telephone number, same email address, same mail envelopes, same advertisements, etc. [3]

56.     The list of factors considered by Chinese courts is non-exhaustive and parties may argue that any factor relating to whether a single-shareholder limited liability corporation's property has been kept "independent" is relevant. Of course, the court should exercise its own discretion in judging whether the corporate legal personality has been abused by the single shareholder, or whether corporate separateness has been maintained in reality, depending on the unique facts and circumstances of each case *in toto*.

57.      Although Article 20 is generally applicable to each and every category of corporation, a one person corporation represents greater risk of the abuse of corporate legal personality. Accordingly, in January of 2004, I first proposed a rule of presumption of abuse of legal personality by one-person shareholder corporations, which leads to automatic piercing corporate veil in absence of contradictory proof produced by the one-person shareholder. This proposal was aimed to lower

---

[3] For the details of commingling of legal personalities between the corporation and its shareholder undercapitalization under Chinese law, please see Page 550 and Page 551, Modern Corporation Law（现代公司法）, Liu Junhai, Press of Law, Second Edition, 2011. In China, many courts have started to examine the different factors of abuse of corporate legal personality. See, *China Galaxy Investment Co., Ltd vs. Hefei Feifan Investment Consulting Co., Ltd* (2011), Anhui Higher People's Court. http://www.ahcourt.gov.cn/gb/ahgy_2004/cpws/ms/userobject1ai30083.html

the burden of the proof of the plaintiff, and was presented in my 2004 edition of *Protection of Shareholders' Rights*.[4]

58.     My proposal was adopted by the legislature and made law in Article 64 of the Corporate Law of 2005. This article reads as follows:

> Where the shareholder of a one person limited liability corporation is unable to prove that the corporate property are independent from the single shareholder's own property, such shareholder shall be jointly and severally liable for the debts of the corporation. The single shareholder could be either individuals or legal persons.

59.     It is important to understand the relationship between Article 20(3) and Article 64 of Corporate Law of 2005. Whereas Article 20(3) is placed in the general provisions of Chapter 1 of Corporate Law, Article 64 is placed in the special provisions of Section 3 of Chapter 2 of the Corporation Law. Article 20(3) serves as the general rule, and Article 64 serves as the special rule applicable in the case of single shareholder corporations. Although the plaintiff bears the burden of proof of abuse of corporate legal personality by the defendant shareholder under Article 20(3), the defendant single shareholder bears the burden of proof to establish the separateness between the shareholder and corporation.

60.     As far as the case relating to TG and TTP is concerned, the burden is placed upon TG to prove that its own property was independent and separate from the property of TTP.

61.     However, the defendant single shareholder, such as TG, must show more than the existence of separate corporate governance documents, such as articles of incorporation and related corporate documents.    Such a shareholder must also show actual independence and separateness between the single shareholder and the one person corporation.

62.     It should be noted that the term "property" should be interpreted broadly enough to cover

---

[4] Page 22, *Protection of Shareholders' Rights in Joint Stock Corporations*, Liu Junhai, Press of Law, 2004.

reasonable arms length pecuniary relationships, especially in the business operations between the single shareholder and the corporation, as well as the conduct of governance and leadership, and does not only refer to ordinary corporate holdings and assets.

63.      When making a veil-piercing determination pursuant to Article 64, Chinese courts usually consider a broad spectrum of factors to assess whether the one-person limited liability corporation's property has been maintained independently of its shareholder's property.

64.      The following factors should be considered relevant to determining whether the single shareholder's property has been maintained independently from that of its one-person limited liability corporation: (i)Commingling of assets; (ii) Unreasonable overlapping legal representatives, directors and senior executives ; (iii) Commingling of corporate governance organs; (iv)Sharing the same chief financial officers, accountants, banking accounts and auditors; (v)Commingling of business activities including failure to properly account for joint business activities; (vi)Other factors, such as same logos, business cards, same office, same telephone number, same email address, same envelopes, same advertisements, etc.

65.      As with the analysis under Article 20, the list of factors considered by Chinese courts is non-exhaustive and parties may argue that any factor relating to whether a single-shareholder limited liability corporation's property has been kept "independent" is relevant. Of course, the court should exercise its own discretion in judging whether the corporate legal personality has been abused by the single shareholder, or whether corporate separateness has been maintained in reality, depending on the unique facts and circumstances of each case *in toto*.

66.      Although the burden of proof is on the defendant single shareholder to prove separateness, the plaintiff may produce his own evidence either to challenge the evidence produced by the

defendant single shareholder, or to otherwise support a showing that there was improper commingling

67.     Furthermore, even if the defendant shareholder has produced convincing evidence regarding the corporate separateness for the purpose of Article 64, the plaintiff creditor may now mount challenge under Article 20 (3) to apply for the application of the doctrine of piercing corporate veil because of abuse, as provided by the plain language of that Article. However, at this stage, the burden shifts to the plaintiff.

68.     To my knowledge, there is no requirement of proof that abuse of the corporate form was done intentionally and maliciously in addition to the proof of abuse of that legal personality in order to prevail on a claim to pierce the corporate veil either under Article 20 (3) or Article 64. Neither the Corporate Law of 2005 nor the current judicial interpretations of the Chinese Supreme Court requires that the plaintiffs prove intent or malice in order to succeed in a veil piercing claim, and I am aware of no other legal authority where such a requirement is set forth.

### FACTS PROVIDED BY THE PSC AND ANALYSIS OF THESE FACTS

69.     For the benefit of the Court, the PSC requested that I apply the provisions of the Company Law to the following Facts Provided, which the PSC has instructed me to assume would be established by a preponderance of the evidence:

<u>TG Establishes TTP as a One-Person Limited Liability Company Under Chinese Law</u>

•   TTP is a one-person limited liability company, organized under Article 58 of the Company Law.   TG is TTP's sole shareholder.

•   TG incorporated TTP in February 2006.   TG contributed an initial registered capital investment of RMB 15,000,000 to TTP.   On June 22, 2006, TG increased its registered capital investment in TTP by RMB 7,000,000, bringing TG's total

registered capital investment in TTP to RMB 22,000,000.   After nearly one year of operations, TTP's income statement covering the period from its incorporation in February 2006 to December 31, 2006, reported total revenue of RMB 112,091,957.59.   TTP's balance sheet as of December 31, 2006, reported assets of RMB 50,296,330.58 against liabilities of RMB 22,302,275.82 and equity of 27,994,054.76.

TTP Failed to Observe Corporate Formalities

•   TTP and TG produced separate annual reports; however, TG and TTP have not presented additional evidence that TTP otherwise maintained separate financial records.   TTP failed to produce records showing monthly or quarterly audited financial statements.   Aside from annual financial statements, TTP produced no evidence showing that it maintained separate accounting records from TG.

•   There is no record of TTP holding regular meetings of its Board of Directors, although there are records that TG regularly held meetings of its own Board of Directors.

•   TTP and TG both used Tai'an Zhongcheng CPA for accounting services.   TTP used Tai'an Zhongcheng CPA to perform the capital verification during its formation mandated by Chinese law.   TG used the same accountant to value shares TG sold to its parent, Beijing New Building Materials, Ltd.

TG and TTP Commingled Assets, Failed to Engage in Business Transactions at Arm's Length, and Abused the Corporate Form Through Improper Record Keeping.

•   At the time of TTP's formation, TG leased a manufacturer's site to TTP at the rate of RMB 80,000 per year, which was allegedly "based on the local rental pricing at the time."   Ten days later the same parties entered into a similar lease agreement at a rate of RMB 420,000 per year because "based on the evaluation and calculation of the accounting department, we reached a more reasonable leasing price of over 400,000." Whether TTP ever paid TG the rental price per month is unclear from the limited financial statements produced.

•   On February 20, 2006, TG sold TTP two production lines and auxiliary equipment for RMB 35,727, 650.75 via a contract requiring payment within three months.   However, TTP's 2006 Financial Statement only reflects payment of   RMB 34,380,888.25 to "purchase fixed assets, intangible assets and other long-term assets."

•   On January 1, 2008, TTP and TG executed a Purchase and Sale Agreement by which TTP sold the two production lines and auxiliary equipment back to TG for

RMB 31,453,579.80.   Yet, TTP's 2008 Financial Statement does not reflect any income for the sale of these assets.

• On February 10, 2006, TTP and TG entered into a lease agreement under the terms of which TG leased one of its manufacturing sites with the property ownership certificate number of Tai Fang Quan Zheng Tai Zi No. 130132 to TTP for a period of ten years.   However, this same facility was also recorded as the property of Taihe Branch of TG in Taihe Branch's registration document. There is no record of TG or TTP having transferred their interest in the manufacturing site to Taihe Branch of TG. Indeed, neither TTP nor TG appear to have terminated the February 10, 2006, lease agreement.

• On February 20, 2006, TG authorized TTP's use of all trademarks in connection with the "Taishan brand" for a period of use "tentatively set at five years."   There is no record of any consideration paid by TTP in exchange for this authorization. Similarly, there are no restrictions placed on TTP's use of the trademarks.   In addition, such authorization was not recorded with the China Trademark Office as required by relevant Chinese trademark laws, rendering the authorization without binding force as to third parties.

• Although there is no record of TG's authorization of TTP's use of the DUN brand, TTP executed a Sole Agency Agreement with Oriental Trading Company, LLC on October 20, 2006, in which TTP certified Oriental Trading Company, LLC as TTP's exclusive agent for the DUN brand in the United States.   This agreement became binding on TTP and the Oriental Trading Company, LLC, upon execution. Subsequently, the DUN brand was customized by TTP and Oriental Trading Company for the United States market, including the use of red, white and blue coloring.   Despite having never received authorization from TG to use the DUN trademark from TG, TTP's records indicate that it indeed exported over $125,000 worth of DUN drywall to Oriental Trading Company between April 30, 2007, and July 3, 2007.

### TG and TTP Settled Each Others' Debts Related to Disputes with U.S. Customers

• At the time it wound down its operations, TTP owed one of its U.S. customers, Oriental Trading Company, LLC of Florida, a refund on a $100,000 deposit for the purchase of TTP-manufactured drywall.   Former TTP employees who had subsequently returned to TG and were no longer employed by TTP, Che Gang and Peng Wenlong, attempted to resolve the dispute by offering to provide a representative of Oriental Trading Company with an equivalent amount in Chinese yuan or by offering to provide the equivalent of $100,000 worth of TG-manufactured building materials such as metal studs and tracks.   The dispute over the $100,000 deposit remains unresolved.

- TTP and TG also worked together to resolve each others' outstanding debts in a dispute that arose between TG and Guardian Building Products ("Guardian") of Greer, South Carolina. Guardian sought to recover damages arising from its alleged purchase of substandard drywall from TG. Although Guardian made its claims against TG, TTP negotiated and entered into a settlement under which Guardian released claims against TTP, TG (which was then known as Shandong Taihe Dongxin Co., Ltd.), and all other affiliates. The terms of the settlement required TTP to pay $380,000 in exchange for Guardian releasing its claims against TTP, TG, and other affiliates.

<u>TTP and TG Shared Employees and Management</u>

- Upon the formation of TTP, the entire export sales staff of TG was transferred to TTP. Specifically, TG's Board of Directors authorized the export sales staff to work for TTP; and TTP's Board of Directors hired TG's former export sales staff.

- Certain directors of TTP remained in TG's employ during their tenure with TTP. For example, Fu Tinghuan, while serving as Director for TTP, also served as a supervisor at TG. Prior to joining TTP, Fu Tinghuan had served as TG's Director of Foreign Sales. Peng Shiliang, who had served as Director and Chairman of TTP, testified at his January 2012 deposition that he remains the legal representative and sole employee of TTP and that he is also employed by TG.

- These same directors had their salaries paid not by TTP, but by TG or another of TG's subsidiaries. For example, Fu Tinghuan, a Director of TTP, was paid by TG during his tenure at TTP. Fu Tinghuan received no compensation from TTP during his tenure with TTP. Similarly, Peng Shiliang, who remains employed as TTP's legal representative, receives his salary from neither TTP nor TG, but from another TG subsidiary, Taishan Gypsum Co, Ltd, Lucheng Branch in Shanxi Province.

<u>TTP Employees Held Themselves Out as Employees of TG</u>

- TTP produced no brochures or similar marketing materials of its own. Instead, TTP referred its potential customers to TG's brochures and marketing materials, passing these materials off as TTP's.

- Similarly, TTP's sales staff referred potential customers to TG's website. Peng Wenlong, for example, testified that when customers requested a website from which they could review TTP's products, he would refer them to TG's website.

- TTP sales staff signed their e-mails to potential sales targets as if they remained employees of TG or some variant of its former name, Shandong Taihe Dongxin Co., Ltd. One such e-mail sent by Peng Wenlong in May 2007, while he was employed

by TTP, listed his employer as Taihe Dongxin Company Ltd. This same e-mail boasted that "Shandong Taihe Dongxin Co., Ltd." was a key manufacturer of new building materials with branch companies throughout China. Nowhere did the e-mail mention that Peng Wenlong was employed by TTP. Other e-mails from TTP employees were signed as if they had been sent from "Taishan Gypsum Co., Ltd." and "Shandong Taihe Dongxin Co., Ltd."

- Employees who left TG for TTP retained use of the same phone numbers they had used at TG. For example, while employed as salesmen at TTP, Peng Wenlong and Yang Jiapao, each used phone numbers that had previously belonged to TG. These phone numbers were also listed on TG's sales brochures (f/k/a as Shandong Taihe Dongxin Co., Ltd.).

- One of TTP's customers, Ivan Gonima of Oriental Trading Company, testified that he understood TG and TTP to be the same company, which went by the informal name of "Taihe," a shortened version of Shandong Taihe Dongxin Co., Ltd. TG's former name. Peng Wenlong, a TTP salesman, testified that unless customers inquired, he made no efforts to clarify that he worked for TTP and not TG.

70.    Because TTP is a one-person limited liability corporation organized under Chinese Law, and TG is TTP's sole shareholder, TG is obligated to prove the corporate separateness of TTP. Where TG is unable to prove that the corporate property (as defined above) of TTP is independent from TG, such shareholder shall be jointly and severally liable.

71.    Although the burden of proof is on TG, the PSC may produce their own evidence either to challenge the evidence produced by TG, or to support their own claims for piercing corporate veil.

72.    Furthermore, even if TG has produced convincing evidence regarding the corporate separateness for the purpose of Article 64, the PSC may still seek to pierce the corporate veil under Article 20 (3). However, at such a stage, the PSC would have the burden of proof on the alleged facts.

73.     Assuming the facts provided by the PSC are true and adequately established by evidence, there is a sufficient basis for a court to determine, under either Article 64 or Article 20(3), that the corporate veil between TG and TTP should be pierced. These entities failed to observe corporate

formalities: TG and TTP commingled their assets, TG and TTP failed to engage in business transactions at arm's length, TG abused the corporate form through improper record keeping, TTP and TG shared employees and management, TTP employees held themselves out as employees of TG.


Prof. Dr. Junhai Liu  刘俊海教授    Date: May 4, 2012

Prof. Liu Junhai 刘俊海教授



Law School, Renmin University of China (RUC) http://www.law.ruc.edu.cn
Top One Law School in China ranked by the Ministry of Education in 2009.
http://www.legaldaily.com.cn/0801/2009-01/19/content_1022665.htm
No. 59, Zhongguancun Avenue, Haidian District, Beijing, China 100872
Email: jhliu@cass.org.cn, junhailiu@sohu.com
Telephone: 86-10-8250 0470; 86-139 1093 6920
Web Site: www.chinacapitallaw.com
Birth Date: June 12, 1969
Nationality: CHINA

**Academic Employment**
Professor of law, Supervisor of LLM and JSD program of business law，Supervisor of
Post-Doctorate Program of corporate law and securities law,
Law School, Renmin University of China (RUC)（since2006）.

Funding Director, Business Law Center, RUC.

Legal Consultant, RUC.

Founder & Editor-in-Chief, E-Journal of www.chinacapitallaw.com

**Research Expertise**
- Business law
- Corporate law
- Securities law
- Investment funds law
- Consumer law
- Government procurement
- International investment
- Arbitration
- Business ethics and corporate social responsibility

**Institute of Law, Chinese Academy of Social Sciences(CASS) (1995-2006)**
CASS is the most prestigious think tank of social sciences in China.
Full Professor (2002-2006).

Associate Professor (1997-2002).
Assistant Professor (1995-1997).
Assistant Director and Secretary General (2002-2005).
Founder and Head for Department of social law (2005-2006). The Department of social law is the first professional research institution of social law in China.
Associate Head for Department of Business law &Economic Law (1998-2002).
Professor, Graduate School, CASS (1998-2006).
Secretary General, Business Law Research Center, CASS (1999-2002).
Part time Law Attorney: Ke Hua Law Firm associated with CASS (1995-2006)

**Visiting Scholarships**
1. Grotius & Hughes Visiting Fellow, University of Michigan Law School (2011-2012).
2. Visiting scholar, University of Wisconsin Law School (Summer 2009).
3. Visiting professor, University of Victoria Law School in New Zealand (summer 2007）.
4. Visiting scholar, University of Michigan Business School (2000-2001).
5. ACLS & CSCC visiting scholar, University of Kansas Law School. A participant in the 1999 Chinese Fellows for Scholarly Development Competition, organized by American Council of Learned Societies(ACLS) and the Committee on Scholarly Communication with China(CSCC) (Spring 2000).
6. Visiting Scholar of EU-China Higher Education Program, University of Amsterdam Law School (Fall 1998).
7. Visiting scholar for post doctorate program, Norwegian Institute of Human Rights, University of Oslo (1996-1997).

**Adjunct Professorships**
1. Fellow, Department of Business Law and Taxation, Monash University, Australia (since 2012)
2. National Judges College (since 1998)
3. China University of Political Science & Law(since 2010)
4. Hebei University (since 2004)
5. Huaqiao University (since 2004)

**Education**
**SJD,** magna cum laude, Chinese Academy of Social Sciences,1995. The first SJD on corporate law in China. The dissertation title is ***the Protection of Shareholders' rights in Joint Stock Corporations***. As the first comprehensive monograph in China, it has been widely cited by Chinese scholars, lawyers, students and judges.
**LLM**, magana cum laude, China University of Political Science & Law,1992. The thesis is the Several Issues on the Legislation of Securities Law.
National Bar Examination of China, 1990.
Clerk, Court of Justice in Huairou Dsitrict, Beijing (1989-1990)

2

**LLB**, magna cum laude, Hebei University,1989.

**Membership of business law related organizations**

1. Member, Academy of Legal Studies in Business（ALSB）,USA.
2. Vice Chairman，China Consumers' Association (CCA)
3. Vice President & Secretary General，China Consumers Protection Law Society
4. Advisory Expert, Committee of Legislative Affairs, Standing Committee of National People's Congress (NPC)
5. Member, Group of Experts on Lecturing to the National Higher and Middle Levels of Officials, organized by Central Organization Ministry, Ministry of Justice and China Law Society
6. Member, Advisory Committee of E-Commerce Experts, Ministry of Commerce
7. Member, Committee of Legal Advisors, All China Federation of Trade Unions （ACFTU）
8. Vice Director, Committee of Internal Governance, China Association of Public Certified Accountants
9. Former Member, Committee of Listing, Shenzhen Stock Exchange
10. Member, Committee of Appealing Review, Shenzhen Stock Exchange
11. Executive Director, China Association of Private entrepreneurs
12. Executive Director, China Business Law Society
13. Executive Director, China Securities Law Society
14. Executive Director, China Industry & Commerce Administration Society
15. Member, Board of Editors, Corporate Ownership and Control, Ukraine
16. Member, Board of Directors, China Arbitrational Law Society
17. Member , Board of Editors, Global Law Review, China (2002-2006)
18. Academic Advisor, China Securities Journal
19. Academic Advisor, Legal Daily
20. Advisor for Economic News, Central People's Radio
21. Academic Advisor, Procuratorate Daily, sponsored by Supreme People's Procuratorate.
22. Member, Advisory Committee of Civil and Administrative Cases, Beijing People's Procuratorate.
23. Independent Director at HongYuan Securities Inc., Zhuye Group, Inc., First Trust Investment Funds Management Inc., etc.
24. Member, Expert Committee, China General Chamber of Commerce
25. Council Member, Gerson Lehrman Group
26. Member, Academy of Legal Studies in Business (ALSB), USA

**Arbitration panelists and memberships**
1. China International Economic & Trade Arbitration Commission (CIETAC).
2. Beijing Arbitration Commission (BAC).
3. International Arbitral Centre of the Austrian Federal Economic Chamber (Vienna International Arbitral Centre, VIAC).

3

4. Hong Kong International Arbitral Centre（HKIAC).
5. Kuala Lumpur Regional Centre for Arbitration (KLRCA).
6. The London Court of International Arbitration *(LCIA).*
7. Australian Centre for International Commercial Arbitration (ACICA).
8. Asia Pacific Regional Arbitration Group (APRAG).
9. Dubai International Arbitral Centre (DIAC).
10. ADR Chambers International, Canada.
11. German Institution of Arbitration (Deutsche Institution für Schiedsgerichtsbarkeit e.V.),DIS
12. LCIA India
13. Cairo Regional Centre for International Commercial Arbitration (CRCICA)
14. The Court of International Commercial Arbitration at the Chamber of Commerce and Industry of Romania
15. The Arbitration Center of Mexico (CAM)
16. The International Arbitration court at the chamber of Commerce of the Kyrgyz Republic
17. The Court of Arbitration at the Polish Chamber of Commerce.
18. The International Arbitration Institute in Paris (IAI)
19. The Arbitral Tribunal, Waren-Verein der Hamburger Börse e.V.
20. Associazione Italiana per l'Arbitrato（AIA）

He has heard more than two hundred commercial cases as a sole arbitrator, presiding arbitrator or party appointed arbitrator. He has written over one hundred commercial arbitration awards since 1998. He has created his philosophy and strategies to encourage the dispute parties to solve their disputes by mediation and settlement, instead of waiting for the judgment. In average, 40% of the cases which he has heard as presiding arbitrator or sole arbitrator have been successfully settled by the claimant and the respondent based on his facilitation. Furthermore, none of his arbitration awards has been challenged or denied by the Courts of Justice in China. Some of the awards are highly regarded by the secretariats and arbitrators at CIETAC and BAC. Arbitration matters handled include: corporate incorporation, shareholder disputes, shareholder rights, M&As, corporate dissolutions; commercial contracts; international investment, financing and security; construction disputes; purchase of real estate; insurance; franchises and distributorships; securities; attorney client disputes, arbitration, etc.

He has made many lectures for the mandatory training programs in Beijing Arbitration Commission on the topic of Arbitrator's Judgment Philosophy, the writing of the arbitration awards and corporate law, and given several lectures for CIETAC and its South China Branch and Shanghai Branch on corporate law.

**Language Proficiency**

|  | *Speaking* | *Reading* | *Writing* |
|---|---|---|---|
| English | Fluent | Fluent | Fluent |
| Chinese | Native | Native | Native |

4

| | |
|---|---|
| French | Good |
| Japanese | Good |

**Expert advice to the Legislature and policy makers at national level**

1. Member, Drafting Group, Investment Fund Law, NPC (1999-2003).
2. Member, Drafting Group, Government Procurement Law, NPC (1999-2002).
3. Member, Revising Group, Partnership Law, NPC(2001-2006).
4. Advisory Expert, Corporate Law Reform, Committee of Legislative Affairs, Standing Committee of NPC (2004-2005).
5. Advisory Expert, Securities Law Reform, Committee of Legislative Affairs, Standing Committee of NPC (2004-2005).
6. Advisory Expert, State Assets Management Law, Committee of Legislative Affairs, Standing Committee of NPC (2008).
7. Advisory Expert, Consumer Protection Law Reform, State Authority on Industry & Commerce (since 2009).
8. Advisory Expert, Advertisement Law Reform, State Authority on Industry & Commerce (since 2011).
9. Vice Chairman, Committee of Advisory Experts, Online Retails Regulations, Ministry of Commerce (since 2011).
10. Sole Drafting Expert, Internet Advertisement Regulations, State Authority on Industry & Commerce (since 2011).
11. Advisory Expert, Regulations on the Bankruptcy of Banking Financial Institutions, China Banking Regulatory Commission (since 2011).
12. Advisory Expert, Regulations on Registration of Foreign-Invested Partnerships, Regulations, State Authority on Industry & Commerce ( 2009).
13. Advisory Expert, Regulations on Registration of Representative Agencies of Foreign Enterprises, Legal Affairs Office of State Council and State Authority on Industry & Commerce (2008).
14. Advisory Expert, Regulations on Registration of Branches of Foreign Enterprises, Legal Affairs Office of State Council and State Authority on Industry & Commerce (2006).
15. Advisory Expert, Draft of Telecommunication Law, Legal Affairs Office of State Council (2005).
16. Advisory Expert, Reform of Regulations on Corporate Registration, Legal Affairs Office of State Council and State Authority on Industry & Commerce (2005).
17. Advisory Expert, Law of Banking Industry Regulation, Law of Commercial Banks, Legal Affairs Office of State Council and State Authority on Industry & Commerce (2003).
18. Advisory Expert, Implementation Regulations of Government Procurement Law, Ministry of Finance (since 2004).
19. Member, Drafting Group, West Regions Development Law, State Council Office of West Regions Development (since 2004 ).
20. Core Expert, the research project for "WTO Government Procurement Agreements and Chinese Government Market," Ministry of Commerce (since

2004).

21. Deputy Head of Projects on Corporation Law Reform organized by State Council Development Research Center (DRC) (2004 -2005).

22. Country Expert, Public Debt Management Project, ASIAN Development Bank in collaboration with Ministry of Finance (2004 ).

---

### *Expert Advice to Supreme Court of Justice*

He also advised the Supreme Court on a great number of judicial interpretations and controversial cases in the field of corporate law and business law.

1. He advised the Supreme Court on the Judicial Interpretation of Marriage Law in 2003.

2. He advised the Supreme Court on the Judicial Interpretation of Corporate Law since 2003, including but not confined to Corporate Law Interpretation NO.1, No,2, and No.3.

3. He advised the Supreme Court on the Judicial Interpretation of Disputes of Foreign-invested Enterprises No.1 in 2010.

4. Delivering highly regarded expert opinion on Xiancheng Company (Thailand) v. Government Agencies of Shenzhen Municipality before the Supreme Court of Justice on January 13, 1998. Most legal opinions were accepted.

5. Offering expert opinions on an administrative dispute between Xiancheng Inc. and Shenzhen Municipal Government before the Supreme Court of Justice on August 16, 2004.

6. Advising Judicial Interpretation on the disputes between securities firms and investors on the illegally misused transaction funds before the Supreme Court of Justice on May 26, 2004.

7. Advising Judicial Interpretation on the disputes between securities firms and investors on the illegally misused transaction funds before China Securities Regulatory Commission on May 22, 2004.

8. Advising Judicial Interpretation on Corporatization of China Construction Bank and Bank of China on March 26, 2004.

9. Advising Judicial Interpretation of Securities Investment Advisors before the Supreme Court of Justice in November 2003.

10. Advising Judicial Interpretation on Civil Liabilities of Securities Frauds, which was passed by the Haring Committee of the Supreme Court of Justice in December 2002.

11. Advising Judicial Interpretation on Financial Lease before the Supreme Court of Justice in June 2011.

http://www.court.gov.cn/spyw/mssp/201110/t20111026_166384.htm

Prof. Liu has also provided a great number of expert opinions on business law issues to Chinese Courts, arbitration bodies and foreign courts, including US District Court, Eastern District of Louisiana.

---

**Academic Honours and Prizes**

1. Chinese Outstanding Social Scientist, nominated by the University Ranking Project Team of Chinese University Alumina Association (www.cuaa.net) in 2011. http://cuaa.net/cur/2011skxj/12.shtml

2. Member, Program for New Century Excellent Talents in Universities (NCET) by Ministry of Education of PRC, 2008.

3. The Best Award for One-Hundred National Legal Lectures by One Hundred Jurists, organized by China Law Society and Ministry of Justice, 2008.

4. One of Top Ten Distinguished Young Jurists, nominated by China Law Society, 2006.

5. The Third Place for the monograph *Modern Corporate Law*, Law Press in the Third National Competition for the Text Books and Research Reports of Law, Ministry of Justice, 2009.

6. Chinese Outstanding Social Scientist, nominated by the University Ranking Project Team of Chinese University Alumina Association (www.cuaa.net) in 2008. www.cuaa.net/...008shkxj/2008jcshkxj.doc

7. The First Award of Young Jurists for the monograph *Protection of Shareholder Rights in Stock Corporation*, Law Press in the National Competition for the Young Scholars, organized by Chinese Academy of Social Sciences, China Law Society and National Youth League, 2005.
http://www.gmw.cn/01gmrb/2005-05/10/content_229581.htm

8. The Second Best Award of Qian Duansheng for the monograph *Protection of Shareholder Rights in Stock Corporation*, Law Press in the Second National Competition for Best Legal Research Publications, Ministry of Education and China University of Political Sciences & Law, 2008.

9. Co-winner of the Ralph Bunche Award for the Best International Paper of "Trust E-commerce in China" in collaboration with Prof.Timothy Fort at the 2001 National Meeting of the Academy of Legal Studies in Business (ALSB) of U.S..

10. Distinguished Young Jurist, Beijing Law Society, 1999.

11. Top Ten National Opinion Leaders in China，Financial Weekly， 2003.

12. Best Award for the excellent lectures on Corporate Law to the State-enterprises in Beijing, Beijing Municipal Government, 2006.

13. Winner of the "12.315 & Consumer Protection" Award for the Best Paper of "Studies on Commercial Actions against Fake Products" at the 2000 paper competition organized by the State Authority on Industry and Commerce, China Consumers' Association and China Association of Industrial and Commercial Studies.

14. Distinguished researcher, Institute of Law, CASS, 1997, 1999.

15. Distinguished academic work of young scholars for the monograph "The principles of the protection of shareholders' rights", CASS, 1999.

16. Best research report "Some issues on Rectifying CESCR by China," Special Information Report edited by CASS, No. 83, October12, 1997, CASS, 1997.

17. Best research report "Correct the Mistranslation of 'Civil Rights' in International Convention on Economic, Social and Cultural Rights," Special Information Report edited by CASS, No. 63, July 30,1997. Highly regarded by Vice Premier

Qian Qichen.

18. Best research report " Properly Deal with the Foreign Shareholders in the Reform of the Non-tradable Shares in Listed Companies," Special Information Report edited by CASS, No. 27, 2005. Highly regarded by late Vice Premier Huang Ju.

19. Best research report "Suggestions for Clearing Up the Laws Restrictive of the Development of Non-Public Economies", Special Information Report edited by CASS, No. 21, 2004.

20. Distinguished paper "The re-orientation of the legal roles of the government and the people," Review Committee for the research paper competition of "Moving toward the rule of law" in China, 1996.

21. Best SJD dissertation "Protection of shareholders' rights", Academic Committee of the Graduate School, CASS, 1995.

22. Best LLM thesis "Some critical issues on securities legislation", China University of Politics & Law, 1992.

**Representative Academic Books**

1. *Modern Securities Law*, Law Press, published in 2011.

2. *Modern Corporate Law*, Law Press, first published in 2008, revised in 2011. The Third Best Award in the Third National Competition for the Text Books and Research Reports of Law, Ministry of Justice, 2009.

3. *Science of Corporate Law*, Peking University Press, 2008.

4. *Corporate Law*, China Legal System Press, 2008.

5. *Institutional Innovations of New Corporate Law: Legislative and Judicial Controversies*, Law Press, 2006. The Second Best Award of Qian Duansheng in the Third National Competition for Best Legal Research Publications, Ministry of Education and China University of Political Sciences & Law, 2010.
http://www.legaldaily.com.cn/bm/content/2010-09/21/content_2295782.htm?node=20735

6. *Protection of Shareholder Rights in Stock Corporation*, Law Press, first published in 1997, revised in 2004. This is Prof. Liu's SJD dissertation, and is the first monograph on comprehensive study on the protection of shareholder's rights. The Best Award of Young Jurists in the National Competition for the Young Scholars, organized by Chinese Academy of Social Sciences, China Law Society and National Youth League, 2005. The Second Best Award of Qian Duansheng in the Second National Competition for Best Legal Research Publications, Ministry of Education and China University of Political Sciences & Law, 2008.http://www.iolaw.org.cn/showNews.asp?id=18427

7. *The Corporate Social Responsibility*, Law Press,1999. This is the research result of Prof. Liu's post doctorate program at Norwegian Institute of Human Rights, and is the first monograph focusing on corporate social responsibility in China.

8. *The Property Law and Protection of Securities Investors Rights*, RUC Press,2008. Co-authored.

9. Main Translator of the Chinese Version of "*The Anatomy of Corporate Law: A Comparative and Functional Approach*, Reinier Kraakman,Paul Davies,Henry

Hansmann, Gerard Hertig,Klaus J. Hopt,Hideki Kanda, Edward B. Rock, Oxford University Press, 2004", Peking University Press, 2007.

10. *Chinese Translation of EU Company Law Directives*, Law Press, 2000. .
11. *Case Comments and Legislative Issues on Business Law and Economic Law*, Economic Science Press, 2000.
12. *Introduction to Securities Law*, Law Press, 1999.
13. *Principles of Economic Law*, Press of Social Science Works, 1999. Co-author,.
14. *Introduction to Economic Law*, Press of Chinese Economics, 1997. Co-author.
15. *The Law of Negotiable Instruments*, Press of People's Court, 1996. Co-autho.
16. *The Laws of Guarantees*, Press of People's Court, 1995. Co-author.
17. *The Regulated Securities Market-----the Legal Analysis of the Securities,* Press of Guizhou province, 1995. Co-author.
18.  Making foot notes for *the Law of Corporations*, Fourth Edition, by Robert W. Hamilton, 1996. The book was republished by the Press of Renmin University of China, 2001.

**Academic Papers**

1. Increasing the Punishments against the Violations of Food Safety Law at Multi-levels, Digest Of Opinions, Edited by General Office of CCCPC. This article offered a reference for the Central's scientific decision, and was praised in the letter from the General Office of CCCPC to Renmin University of China on December 31, 2011.
2. Research on Some Issues of Piercing Corporate Veil in Judicial Practice, Application of Law, sponsored by National Judges College, Vol.8, 2011.
3. Uphold the Principle of Honesty and Credit, Build Harmonious Consumption Environment, Economic Daily, June 15, 2011. http://paper.ce.cn/jjrb/html/2011-06/15/node_8.htm
4. The Justification and Feasibility of Corporate Social Responsibility, Social Sciences, sponsored by Shanghai Academy of Social Sciences, Vol.2, 2010.
5. **"Corporate Governance of Business Organizations in the People's Republic of China: The Legal Framework After the Revision of the Company Law in 2005", presented at the XVIIIth International Congress of the International Academy of Comparative Law 2010*, co-authored with Dr. Knut Benjamin Pissler. http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1695888. This paper is also included in the book *Comparative Corporate Governance*, edited by Dr. Andreas Fleckner and Prof. Claus Hopt, Cambridge University Press (forthcoming in 2012).**
6. **"Director's Duty of Diligence and Shareholder's Derivative Action in China" presented at the Symposium "Law and Legal Reality - A Chinese-German Dialogue on the Procedural Realisation of Private Claims", Freiburg, 25th and 26th of June 2010. Published as a part of the book "Recht und rechtswirklichkeit in Deutschland und China", edited by Yuanshi Bu, published by Mohr Siebeck, 2011. P.61-P.87.**

7. Increasing the Corporate transparency to Enhance Corporate Competitiveness, Theory Frontier, sponsored by Party School of the Central Committee of CPC, Vol.5, 2009.

8. Institutional Innovations of Food Safety Regulation, Law Forum, sponsored by Shandong Law Society, Vol.3, 2009.

9. March 15 Should Become the Thanks–Giving Day of the Firms for their consumers, Some Thoughts on the Firm's CSR towards their Consumers, China Industry and Commerce Administration Research, sponsored by State Authority on Industry and Commerce, Vol.3, 2009.

10. An Honesty Project to Build Judge's Credit, People's Court Journal, Feb.3, 2009.

11. Implement Scientific Development Vision, Improve the Rule of Law in Capital Market, Focusing on the Regulation of Listed Corporations, Gansu Social Science, sponsored by Gansu Academy of Social Sciences, Vol.5, 2008.

12. Promote Shareholders Democracy Philosophy, Reactivate the General Meeting of Shareholders, Board of Directors, Vol.10, 2008.

13. Suggestions on the Legislation on State Assets, Journal of Henan College of Political and Legal Administrators, Vol.5, 2008.

14. On the Principle of Shareholder Equality, Law Magazine, sponsored by Beijing Law Society, Vol.3, 2008.

15. The Retrospect of Chinese Corporate Legislation in the Past Thirty Years Since Reform and Opening Outside and Foresight, Law Forum, Vol.3, 2008.

16. Implement Scientific Development Vision, Create New Brand for Rule of Law in the Administration of Industry & Commerce, China Industry and Commerce Administration Research, sponsored by State Authority on Industry and Commerce, Vol.3, 2008.

17. The Shareholder's Civil Liabilities for Withdrawing Capital, Law Magazine, sponsored by Beijing Law Society, Vol.1, 2008.

18. Study on the Contract Operation of Corporations in the New Corporate Law Framework, Modern Legal Science, sponsored by Jilin University Law School, Vol.1, 2008.

19. The Validity of the Share Transfer Contracts in Limited Liability Companies, Jurist, sponsored by Renmin University of China Law School, Vol.6, 2007.

20. Legal Regulation of One-Man Corporation in China, International Business Law, Japan, Vol.9, 2007.

21. Improve the Internal Governance of Accounting Firms, and Enable Them Bigger and Stronger, China Certified Public Accountants, sponsored by Chinese Institute of Certified Public Accountants, Vol.6, 2007.

22. Law Should Favour the Vulnerable Groups, Democracy & Law, Vol.5, 2007.

23. Several Important Issues on Corporate Social Responsibility, Theory Frontier, sponsored by Party School of the Central Committee of CPC, Vol.22, 2007.

24. The Interpretation and Application of the Doctrine of Piercing Corporate Veil in China, Chinese Law, Hong Kong, Vol.8, 2007.

25. Improve the Legal Environment for the Healthy Development of the Capital Market, Capital Market, Vol.11, 2007.

26. Legal Research Should Serve for the Building of Harmonious Society, Law Forum, sponsored by Shandong Law Society, Vol.3,2009.

27. Price Cartel Calls for the Strengthening of CSR of Business Associations, People's Court Journal, Oct.16, 2007.

28. The Difficult Issues to be Interpreted in the Doctrine of Piercing Corporate Veil in Chinese New Corporate Law, Journal of Tongji University, Vol.6, 2006.

29. China Should Make the Law on the Protection of State-owned Assets, CASS Important Reports: leader's Reference, edited by CASS, No. 20, 2006.

30. Socialist Harmonious Society Should be a Society with Rule of Law, Law Forum, sponsored by Shandong Law Society, Vol.6,2006.

31. Annotations of New Corporate Law, Business Review, Peking University, Vol.7, 2006.

32. Controversial Issues in the Process of Enforcement of New Corporate Law, Guangming Daily, Dec.26, 2006.

33. Institutional Innovations of New Corporate Law, Yuedan Financial Law, Taiwan, Vol.3, 2006.

34. Construction of Harmonious Society and Innovation of Legal Philosophy, Focusing on the Relationship between Harmonious Society and Improvement of Social Law, Study and Explore, sponsored by Heilongjiang Academy of Social Sciences, Vol.5, 2006.

35. Six Services of the Government Agencies from the Public Service, Administration of Industry and Commerce, Vol.14, 2006.

36. Judgment Thinking Should be Innovated to Protect the Financial Creditors, People's Judicature, sponsored by Supreme Court of China, Vol.1, 2006.

37. Institutional Innovations of New Corporate Law and their Impacts on the Arbitration practice, Beijing Arbitration, Press of Law, Vol.1, 2006.

38. Properly Deal with the Foreign Shareholders in the Reform of the Non-tradable Shares in Listed Companies, Special Information Report edited by CASS, No. 27, 2005.

39. Institutional Innovations of New Securities Law, China Finance, sponsored by People's Bank of China, Vol.22,2005.

40. Implications of Bad Chain Reactions of Dishonesty, New Finance, Vol.11, 2005.

41. Where is the Justification of the Reform of Non-tradable Shares in Listed Corporations? New Finance, Vol.9, 2005.

42. Corporate Social Responsibility and the Creation of Harmonious Consumer Environment, Rule of Law Forum, sponsored by Shanghai College of Political Science & Law, Vol.4, 2005. I College

43. Reform the Securities Law to Encourage the Investor Confidence, CASS Important Reports for Leader Reference, Vol.28,2005.

44. Strengthening Corporate Social Responsibility is an Important Part of Building Harmonious Society, CASS Journal, Sep.27, 2005.

45. Innovate Legal Systems in order to Build Harmonious Society, Popular Tribune (Qunyan),sponsored by China Democratic League, Vol.11, 2005.

46. The Right Judgment Thinking for the Civil and Commercial Judges in the

Process of building Harmonious Society, Shandong Judiciary, sponsored by Shandong Province Higher Court of Justice, Vol.3, 2005.

47. Research on the Difficult Issues in Designing the Institutions for the One-man Corporations, Journal of the Graduate School, Chinese Academy of Social Sciences, Vol.6, 2005.

48. Research on the Legal Problems in the Sale of the Property of State-owned Assets in SOEs, People's Judicature, sponsored by Supreme Court of China, Vol.3, 2005.

49. The Reform and Interpretation of Corporate Law, Focusing on the Proper Judicial Intervention, Application of Law, sponsored by National Judges College, Vol.3, 2005.

50. Suggestion to Modify Corporate Law to Enable Corporate Guarantor Capacity, Journal of National Prosecutors College, Vol.4, 2005.

51. The Key Issue of Consumer protection is to Increase the Cost for Breach of the Law, People's Daily, March 17, 2005.

52. The Reform of Corporate Law Should be Innovation Oriented, Legal Science, sponsored by East China University of Political Science & Law, Vol.7, 2004.

53. Relevant Problems in Creating Separate Voting System for the Public Shareholders, China Finance, sponsored by People's Bank of China, Vol.23, 2004.

54. Research on the Protection of the Rights of Firms and Entrepreneurs, Modern Economy, Vol.4, 2004.

55. Legal Thinking on Improvement of Judicial Review of Arbitrations, Beijing Arbitration, Press of Law, Vol.1, 2004.

56. Modernization of New Corporate Law, Global Law Review, sponsored by Institute of Chinese Academy of Social Sciences, Vol.4, 2004.

57. Suggestions for Clearing Up the Laws Restrictive of the Development of Non-Public Economies", Special Information Report edited by CASS, No. 21, 2004.

58. Legal Analysis and Thoughts on the Corporate Reform of SOEs, Law Reports of SOEs Reform, Vol.1, Zhongxin Press, 2004.

59. Some Fundamental Issues in the Reform of Corporate Law, Frontier Forum on Civil and Commercial Law. Edited by Prof. Wang Liming, People's Court Press, 2004.

60. Strengthening the Research on the Interpretation of Corporate Law, Hearing the Corporate Law Disputes Actively but with Caution, Research on Business Judiciary, People's Court Press, 2004.

61. The Legislative and Judicial Harmonization between the Legal Liabilities in Securities Market, Modern Legal Science, sponsored by South–West China University of Political Science & Law, Vol.3, 2003.

62. Shareholder's Accumulative Voting, Global Law Review, sponsored by Institute of Chinese Academy of Social Sciences, Vol.1, 2003.

63. Thoughts on Transplanting Independent Director System into Chinese Corporate Law, Forum on Political Science & Law, sponsored by China University of

Political Science & Law, Vol.3,2003.

64. We Should Establish the Legal Person and Corporate Property System in Socialist Market Economy, Investigation Report of Development Research Centre of State Council, No.164, 2003.

65. We Should Make Best Efforts to Create Legal Environment Supportive of the Healthy Development of Non-public Enterprises, presented to the National Committee of the Chinese People's Political Consultative Conference (CPPCC) on July 11, 2003. Highly regarded by Chairman Jia Qinglin. This paper was included in the Book of "Legal Environment for the Development of Non-public Economy", edited by the Office of the Committee of Society & Law, CPPCC, published by Chinese Workers Press, 2004.

66. **"Increasing Role of the Courts in China", Law, Development & Socio-Economic Changes in Asia，2003.**

67. Strengthening the Legal protection of Non-public Economy, Popular Tribune (Qunyan), sponsored by China Democratic League, Vol.7, 2003.

68. Spinning Off of Listed Corporations and Protection of Minority Shareholders, Securities Law Review, 2003.

69. Legal Thoughts on the Regulation of Designing Suppliers by Government Buyers, Journal of Chinese Government Procurement, sponsored by Ministry of Finance, Vol.6, 2003.

70. On the Harmonization Mechanism for the Enforcement of Securities Legal Liabilities, Application of Law, sponsored by National Judges College, Vol.4, 2003.

71. Legal Thoughts on the Rectification and Regulation of Market Economy Order, China Industry and Commerce Administration Research, sponsored by State Authority on Industry and Commerce, Vol.7, 2003.

72. Creating Ideal Consumer Environment to Build a Well-off Society, Journal of Quality Promotion in China, sponsored by China Association of Quality Promotion, Vol.3, 2003.

73. Research on the E-Commerce Entities and Market Access, included in the book, Study on the Theory and Practice of Market Regulation, China Industry & Commerce Press, published in July 2003.

74. Rationalize the Relationships between The Firms to Protect the Consumer Rights and Interest, People's Daily, Nov.3, 2003.

75. Improve the Credit Legislation, and Consolidate the Base of Integrity, People's Daily, June 17,2003.

76. Research on the Some Issues on Transfer of shareholder's rights in Limited Liability Companies, China Civil & Commercial Cases Hearing, Vol.1, 2003.

77. **Corporate Governance in China: Then and Now, Co-authored with Professor Cindy Schipany at the University of Michigan, *Columbia Business Law Review*, Volume 2002, Number 1.**

78. **Chinese Business and the Internet: The Infrastructure for Trust, Co-authored with Professor Timothy L. Fort at the University of Michigan,**

13

**Vanderbilt Journal of Transnational Law,** November, **2002, 35 Vand. J. Transnat'l L. 1545.** http://law.vanderbilt.edu/journal/35-05/Fort-Junhai.pdf.

79. Create Good Legal and Ethical Environment for Scientific Consumption and the Roles of Firms, Government Agencies, NGOs and Intermediaries, China Industry and Commerce Administration Research, sponsored by State Authority on Industry and Commerce, Vol.11, 2002.

80. International Practice is not Equal to Truth, Xinhua Digest, Vol.9, 2002.

81. Government Procurement Law Pays Attention to the Protection of Suppliers, Journal of Chinese Government Procurement, Vol.6, 2002.

82. The Reform Foresight of Corporate Law after China's Accession to WTO, Academic Journal of China Law Society, Vol. 6, 2002.

83. Several Relevant Issues on Independent Directors, China Industry and Commerce Administration Research, sponsored by State Authority on Industry and Commerce, Vol.3, 2002.

84. Several Thoughts on Establishing and Improving Corporate Governance Structure, Law Forum, sponsored by Shandong Law Society, Vol.6, 2002.

85. Guiding Principles for Corporate Law Reform, Journal of Chinese Academy of Social Sciences, Dec.1, 2002.

86. Research on Some Controversial Issues on the Legislation on Investment Funds, China Securities Journal, March 29, 2002.

87. Challenge the Rationale of Maximization of Shareholder Interest: Research on the Non-shareholder Constituencies Statutes of Recent Years in US, International Trade, sponsored by Ministry of Commerce, Vol.7, 2002.

88. The Best Combination of Capital and Intelligence: Suggestions for Establishing Limited Partnership System, International Trade, sponsored by Ministry of Commerce, Vol.2, 2002.

89. Fair Competition Should be Encouraged, People's Daily, July 15, 2002.

90. "Overview of the Dispute resolution mechanism in China", presented at the "Roundtable Meeting on Law, Development and Socio-Economic Change in Asia (II), held in Bangkok, Thailand, 19-20 November, 2001.

91. An Indicator for the Maturity of Market: Some Controversial Issues on the Legislation on Investment Funds, International Trade, sponsored by Ministry of Commerce, Vol.9, 2001.

92. Democratic Corporate Governance: The Legislative Process of Worker Representation on the Corporate Governance at EU Level, International Trade, sponsored by Ministry of Commerce, Vol.7, 2001.

93. Research on Several Principles of Government Procurement Legislation, Journal of Chinese Government Procurement, sponsored by Ministry of Finance, Vol.4, 2001.

94. The Government Intervention in the Market Economy Must Move towards the Rule of Law after China Joins WTO, China Industry and Commerce Administration Research, sponsored by State Authority on Industry and Commerce, Vol.12, 2001.

95. Legal Issues Concerning Corporate Reform of State-owned Enterprises,

Academic Journal of China Law Society, Vol. 1, 2000.

96. Proposed Draft of Investment Funds Law, Civil and Commercial Law Forum, Edited by Prof. Liang Huixing, Vol.4, 2000.

97. The Parties in the Legal Relationships of Investment Fund, Legal Magzine,Spoonsored by Beijing Law Society, vol.1, 2000. Originally presented to the International Symposium on Investment Fund Legislation sponsored by NPC and Securities Times. See, http://www.securitiestimes.com.cn/qt/yth_gdzb.html

98. Taking Care of the Creditors' Interest in the Case of Fraudulent Bankruptcy of Corporate Debtors, Legal Daily, January 9, 2000.

99. The Transparency and Fairness of the Mechanism of Medical Disputes Resolution, China Industry and Commerce Administration Research, sponsored by State Authority on Industry and Commerce, Vol.3, 2000.

100.Studies on Commercial Actions against Fake Products, China Industry and Commerce Administration Research, sponsored by State Authority on Industry and Commerce, Vol.4, 2000.

101.The Reform of Chinese Economic Legislation after China's Accession to WTO, Economic Times, Vol.1, 2000.

**102.Legal Reforms in China, ZEF-Discussion Papers on Development Policy No. 13, Center for Development Research (ZEF), Bonn, September 1999. See, http://www.zef.de/zef_englisch/f_publ.html1**
**It was also published as a chapter of *Governance, Decentralization and Reform in China, India and Russia*, Jean-Jacques Dethier (ed.) Kluwer Academic Publishers, pp. 373 – 405. It was presented at the international seminar of "the Governance on China, India and Russia", 3-4 May 1999, hosted by the Research Center for Development, Bonn University.**

103.Government Fees Should be Transformed into Taxation Legally, Economy & Law, Vol.3, 1999.

104.Chinese Legislature Should Recognize One-man Corporation, Democracy &Law, Vol. 14, 1999.

105. Case Study: Violation of Fiduciary Duty by Securities Brokers against Their Clients and Remedies, International Business Journal, July 26, 1999.

106. Prospect for Corporate Legislation Reform, Legal Daily, June 24, 1999.

107. Legal Strategies for Preventing Financial Crisis, Academic Journal of China Law Society, Vol. 2, Beijing, 1999.

108.Approaches to Strengthen the Responsibility of Directors and Managers in China, presented at the fourth annual conference of Asia Pacific Economic Law Forum, held in Hong Kong in December 1998.

109. Comparative Research on Employee Participation in Corporate Governing Bodies, Commercial Law Review, Vol. 3, 1998, Press of Law.

110. The Governmental Intervention of the Market Economy Must Move towards the Rule of Law, Legal Daily, April 23, 1998. Further discussion was presented to the International Symposium on "Reflections and Prospect on Economic Reform and Opening Up to Outside World" organized by CASS and Shenzhen municipality

on October 28, 1998.

111. The Governmental Intervention of the Market Economy Must be Restricted to Five Levels, CASS Important Reports: Leader's Reference, edited by CASS, No. 22, 1998.

112. Some Issues on Rectifying CESCR by China, Special Information Report edited by CASS, No. 83, October12, 1997. Based on the discussions held with the UN Committee of Economic, Social and Cultural Rights and International Organization, ILO.

**113. The Perspectives for Tax Law in Hong Kong after 1 July 1997, presented at the International Symposium "Tax Law in East and South-east Asia toward the 21st Century", held in Leiden, the Netherlands in July 1996 and published by Kluwer Law International in 1997.**

**114. The Protection of Social Rights and the Coming Implementation of CESCR in China, presented at the International Symposium "The domestic obligation to implement International Convention on Economic, Social and Cultural Rights" held in Oslo, Norway, in November 1997.**

**115. The Protection of Labor Rights in China, Working Paper Series of Norwegian Institute of Human Rights, the University of Oslo, 1997.**

116. Correct the Mistranslation of 'Civil Rights' in International Convention on Economic, Social and Cultural Rights, Special Information Report edited by CASS, No. 63, July 30,1997.

117. Accelerate the Process of Corporate Law Reform of SOEs by Enforcing Corporate Law, Legal Daily, September 6 ,1997.

118. The Shareholder's Right to Take Directive Actions", Commercial Law Review, Vol.1, Law Press, Beijing,1997.

119. Accelerating the Process of Antitrust Legislation to Promote the Development of the Competitive Market Machinery, Legal Daily, May 16, 1996.

120. Theoretical Discussion on the Introducing of the Accumulative Voting Right of the Shareholders in China, Jianghai Academic Journal, sponsored by Jiangsu Academy of Social Sciences, vol. 3, 1996.

121. Four Emergent Problems in the Course of Corporate Law Reform of state-owned enterprises, Law Sciences, sponsored by East China University of Political Sciences and Law, vol. 3, 1996.

122. The re-orientation of the legal roles of the government and the people", Legal Daily, Nov.16 ,1995; Legal Review, sponsored by Wuhan University Law School,vol. 1,1996.

123. On the Shareholders' Voting Right, Law Sciences, sponsored by Northwest China Institute of Political Sciences and Law, vol. 6, 1995.

124. The Theory and Practice of the Protection of the Shareholders' Rights", Law Science, sponsored by East China University of Political Sciences and Law, vol. 8, 1995.

125. The System of Corporation may not be Forcibly Combined with the System of Co-operatives, The Internal Reference, edited by Chinese Youth Daily, Jun.8, 1994.

126. It is Unnecessary to Enact a Special Act on the Rural Enterprises", The Important Report, edited by China Law Society, May 31, 1994.

127. The Theory of the Separation between the Ownership and the Management Right has failed, the Legislation should be Right-oriented", The Internal Reference, edited by Chinese Youth Daily, Jan.8, 1994.

128. Several Problems on the Protection of the State Shareholder's Rights State-owned Enterprises during the Corporate Reform, Chinese Private Science & Technology Industry", vol. 4, 1994.

129. Exploring on the Gray areas of the Patent Right, Chinese Private Science & Technology Industry," vol. 3, 1994.

130. Nine Errors during the Corporate Reform, Enterprises News, July 27,1994.

131. The Pre-emptive Right to New Issued Shares, Legal Daily, July 29,1994.

132. The Corporate Property Rights of the Corporations, Legal Daily, July 27,1994.

133. The Rights of Shareholders, Legal Daily, July 2, 1994.

134. The Corporate Reform of the State-owned Enterprises must be Carried out Lawfully," Legal Daily, May 9, 1994.

135. Corporation Law----the Key Legal Cornerstone for Building Modern Enterprise System, Chinese Lawyers, vol. 3, 1994.

136. The Characters of Chinese Corporation Law, Law Magazine, Beijing Law Society, vol. 2, 1994.

137. The Legal Protection of the State-owned Assets during the Corporate Reform," Beijing Daily, Feb.23, 1994.

138. Comments on Chinese Corporation Law, China Securities Rating, vol. 1, 1994.

139. Several Advice on the Chinese Corporate Legislation, China Securities Rating, vol. 6, 1993.

140. The Basic Solution to Transform the Management Machinery of Large State-owned Enterprises," Law Magazine, Beijing Law Society, Vol. 2, 1993.

141. Some Issues on Chinese Legislation of Securities Exchange, a Chapter of the Book, Corporations, Securities & Contracts, Press of people's court, 1993.

142. Research on Improving Legal Mechanism of Rural Enterprises, Law Magazine, Beijing Law Society, Vol.1, 1992.

143. The Identification and Exercise of the Ownership and the Right of Use of the Collectively-Owned Land in Chinese Rural Areas, Forum on Political Science & Law, sponsored by China University of Political Science & Law,Vol.1, 1991.

144. The Future Orientation of Chinese Economic Law, Jianghai Academic Journal, sponsored by Jiangsu Academy of Social Sciences, vol. 4, 1988.

145. Several Legislative Issues on Enterprise Mergers & Acquisitions, Economy & Law, Shenyang, Liaoning Province, Volume 8 of 1988.

146. Urgent Legislative Proposal on Private Enterprises, Economy & Law, Shijiazhuang, Hebei Province, Vol.5, 1987.

**Major lectures, teachings and presentations outside Mainland China**

1. Taught Financial Regulation in China for Prof. Michael Barr's course of

International Finance (code is 678) at Michigan Law School on March 19, and 20, 2012.

2. "Corporate Governance and Deregulation of the Government", Presented at the 22nd annual Asia Business Conference, organized by University of Michigan Business School, on February 11, 2012. http://rossabc.com/panels/china

3. "Corporate Governance: Theory & Practice", Presented at Fordham University Law School on February 7, 2012.

4. "Corporate Governance in SOEs from Global Perspective", Presented at Columbia University Law School on February 6, 2012.

5. "Protection of Minority Shareholders in China", Presented at Columbia University Law School on February 6, 2012. http://www.law.columbia.edu/center_program/chinese. Please find a link to the audio recording from this presentation at: http://media.law.columbia.edu/CCLS/Liu_Junhai_Talk_120206.mp3

6. "Protection of Minority Shareholders in the Events of M&A in China", Presented to the Fifth East Asian Forum on Rule of Law: The International Symposium on the Legal Rules of Formation of Corporate Groups, Organized by Hitotsubashi University, Renmin University of China and Pusan National University of Korea, Tokyo, December 2 -5, 2011.

7. "Suggestions on Strengthening the Food Safety Regulation", Presented to the Forum of the Rule of Law in Food Safety", organized by China Law Society, City University of Hong Kong and Hong Kong Law Forum, Hong Kong, November 11-14, 2011.

8. "China's "Going Out" Strategy: What US Companies Need to Know About Chinese Corporate Governance & Corporate Law". Presented to the International Law Workshop, University of Michigan Law School, chaired by Prof. Michael S Barr, October 10, 2011. http://www.law.umich.edu/workshopsandsymposia/intlworkshopseries/archive/Pages/f2011schedule.aspx;http://web.law.umich.edu/LawEvents/EventDetails.aspx?EventID=22755;http://ur.umich.edu/events/events.php?se=26655;For the flash webcast, please visit: http://web.law.umich.edu/flashmedia/public/Default.aspx?mediaid=1743

9. "Director's Duty of Diligence and Shareholder's Derivative Action in China", presented to the Symposium "Law and Legal Reality - A Chinese-German Dialogue on the Procedural Realisation of Private Claims", Freiburg，25th and 26th of June 2010.

10. "Protection of Minority Shareholders", presented to the Corporate Law Symposium, organized by attorney Peter Koh Soon Kwang and his STAMFORD LAW CORPORATION, Singapore, May 6, 2010.

11. "Corporate Governance and Director's Liability", presented to the University of Michigan Business School students, chaired by Prof. Cindy A. Schipani, Ann Arbor, January 25, 2010.

12. Taught Chinese Business Law at University of Victoria Law School in New Zealand in August, 2007.

13. "The Fiduciary Duty of the Controlling Shareholders in the Framework of

Chinese New Corporate Law", presented to the International Symposium on the New Issues of Modern Corporate Law in China, Japan and Korea, organized by Doshisha University, Kyoto, February 22-24, 2007.

14. "Corporate Governance in Listed Corporations and Corporate Law Reform in China", presented to Asian Bankers' Summit, Singapore, March 14 to 17, 2005.

15. "Controversial Issues in Chinese Bankruptcy Law", presented to the Symposium of Bankruptcy Law in China and Finland, Helsinki, November 2-9,2004.

16. "Case Study on the Fiduciary Duty of the Directors in Chinese Corporations", presented to the International Symposium on Anti-Corruption, organized by UNDP, Hanoi, September 9-23, 2004.

17. "The Increasing Role of the Courts in China in Solving Private Disputes after the Development and Accession to WTO", presented to the International Symposium on the Social Development and Legal Reform in Asia, Tokyo, October, 2002.

18. "Corporate Governance in China", presented to the International Symposium on the Corporate Governance in Asia, Kuala Lumpur, April 2002.

19. "ADR Mechanism in China", presented to the International Symposium on the ADR in Southeast Asia, Bangkok, November 2001.

20. "Increasing role of the courts in China", Law, Development & Socio-Economic Changes in Asia，2003.

21. "Overview of the Dispute resolution mechanism in China", presented at the "Roundtable Meeting on Law, Development and Socio-Economic Change in Asia (II), held in Bangkok, Thailand, 19-20 November, 2001.

22. "Legal reforms in China", Governance, Decentralization and Reform in China, India and Russia, Jean-Jacques Dethier (ed.) Kluwer Academic Publishers, pp. 373 – 405. ZEF-Discussion Papers on Development Policy No. 13, Center for Development Research (ZEF), Bonn, September 1999. See, http://www.zef.de/zef_englisch/f_publ.html1. It was presented at the international seminar of "the Governance on China, India and Russia", 3-4 May 1999, hosted by the Research Center for Development, Bonn University.

23. "Approaches to Strengthen the Responsibility of Directors and Managers in China", presented at the fourth annual conference of Asia Pacific Economic Law Forum, held in Hong Kong in December 1998.

24. "The Protection of Social Rights and the Coming Implementation of CESCR in China, presented at the International Symposium "The domestic obligation to implement International Convention on Economic, Social and Cultural Rights" held in Oslo, Norway, in November 1997.

25. "The Protection of Labor Rights in China", Working Paper Series of Norwegian Institute of Human Rights, the University of Oslo, 1997.

26. "The Perspectives for Tax Law in Hong Kong after 1 July 1997", presented at the International Symposium "Tax Law in East and South-east Asia toward the 21st Century", held in Leiden, the Netherlands in July 1996 and published by Kluwer Law International in 1997.

**Teaching activities in China**

He has been teaching business law including corporate law and securities law in Chinese Academy of Social Sciences, Renmin University of China, National Judges College, other universities, National and local Bar Associations, governments and business companies nationwide since 1995.

As a Professor at Law School, Renmin University of China (RUC) since 2006, he has been teaching analysis of corporate law cases for undergraduate LLB students, teaching corporate law, securities law, comparative corporate law and frontier issues in business law and economic law for LLM, JM and SJD students.

From 1995 to 2006, he was an assistant professor, associate professor and full professor at the Graduate School, Chinese Academy of Social Sciences. He taught business law, corporate law and trade law including contract law and consumer law.

As an adjunct professor at National Judges College (since 1998), he has taught corporate law, securities, the methodology of the interpretation of corporate law, the philosophy of judges and arbitrators in the judgment of commercial disputes. The audience are judges from the Supreme Court and local courts.

He has supervised 15 SJD candidates and 120 LLM students at Chinese Academy of Social Sciences and Renmin University of China. He has also supervised 3 post doctorate researchers at Shenzhen Stock Exchange as a supervisor.

Prof. Liu has his unique teaching philosophy. He has been using the case analysis methodology as one of the major tools to guide and enable the students to find the best resolution for certain commercial disputes. He encourages his students to work out different resolutions based on their independent thinking from the perspective of social justice and rule of law. He engages his students to make comments on the decided cases of the Supreme Court and the local Courts, and identify the defects in the judgement and the rationale behind it. In addition to training his students as the new generation of qualified judges and arbitrators, he has other three ambitious goals. First, he encourages his students as business people or entrepreneurs to acquire the legal wisdom for the management of legal risks in the future business transactions to avoid and control the predictable legal risk, moral hazards and market risks. Second, he encourages his students as legislature to target the blind or dangerous area in need of legal rules, and to work out the fair and efficient institutional arrangements supportive of the commercial activities. Third, he encourage his students as legal scholars to write top quality academic papers in terms of offering convincing interpretation of current legal facts and environments of business and making original policy advice for the legislative, administrative or judiciary reform in building a business friendly legal environment.

Major universities where Prof. has lectured on business law include Peking University, Tsinghua University, China University of Political Sciences and Law, Graduate School of Chinese Academy of Social Sciences, University of International Business

and Economics, Central University of Finance and Economics, Nanjing University, South-West University of Political Sciences and Law, East China University of Political Sciences and Law.

Prof. Liu Junhai has earned a great number of awards of for his teaching excellence, including but not confined to: Member for Program for New Century Excellent Talents in Universities (NCET) by Ministry of Education of PRC2008; the Best Award for One-Hundred-Jurist National Tour Speech, organized by China Law Society and Ministry of Justice, 2008; one of Top Ten Distinguished Jurists, China Law Society, 2006;  Distinguished Young Jurist, Beijing Law Society, 1999; Top Ten National Opinion Leaders in China，Financial Weekly，2003; Best Award for the excellent lectures on Corporate Law to the State-enterprises in Beijing, Beijing Municipal Government,2006; Teaching Excellence Award of Young Faculty, Law School, Renmin University of China,2008. He has harvested many thanks and gratitude from his great number of undergraduate students, graduated students, lawyers, judges and in house counsels..

**Academic Leadership**

Prof. Liu was a vice Head for Department of Business law &Economic Law from 1998 to 2002. He was the Assistant Director and Secretary General for the Institute of Law, Chinese Academy of Social Sciences from 2002 to 2005. He was the founder and Head for Department of social law from 2005 to 2006. The Department of social law is the first professional research institution of social law in China. He founded China Social Law Forum in May 2006.As an academic leader, he work closely with his colleagues at CASS, and fulfilled his duty in a creative and innovative way. He respected the senior scholars and helped young scholars on academic or administrative matters.

In September 2006, Prof. Liu Junhai was invited by the People's University of China to join the Law School as a chair in business law.

He established the Business Law Center of RUC in October 2006.  For the information of this Center, please visit: http://www.civillaw.com.cn/sfyjs/

As a founding Director, Prof. Liu Junhai created a professional E-Journal of Chinese business law especially capital market law in 2008, http://www.chinacapitallaw.com/. It is the first E-Journal on the legal issues of capital market in China.

Prof. Liu Junhai has edited a new series of publication, *the Law Review of Chinese Capital Market(中国资本市场法治评论)*. Up to 2011, three volumes have been published by the Press of Law(法律出版社), the biggest professional press for law.

21

Prof. Liu Junhai launched a high profile Business Law Forum in November 2006. He has organized 67 forums, most speakers are established Chinese and international professors and top rank authorities on legislation and judiciary, including Prof. Li Fei, the Vice Minister of the Legislative Affairs Commission of Standing Committee of National People's Congress (NPC), Professor Xi Xiaoming, the Vice President of Supreme Court of China, Prof. Li Guoguang, the former Vice President of Supreme Court of China, Prof.Jiang Jianchu, vice General Attorney of the Supreme Procutorate of China, Prof. Saul Levmore, the former Dean of the University of Chicago Law School, Prof. Nicholas Calcina Howson from the University of Michigan Law School, Prof. Dr.Helmut Kohl, the Honorable Dean of Frankfurt University Law School, ,etc. for the detailed information, please visit http://www.civillaw.com.cn/sfyjs/

Prof. Liu Junhai launched a series of international forum on the rule of law in Chinese capital market. He sponsored the first International Symposium on the Regulation of Listed Corporations in collaboration with the Ministry of Commerce, China Securities Regulatory Commission and Japan International Cooperation Agency (JICA) on October, 12 and 13, 2007. Over one hundred scholars and experts from Chinese and Japanese Universities and government regulatory bodies including Chinese Securities Regulatory Commission (CSRC) and Japanese Financial Regulatory Agency attended this symposium. For the minutes of the symposium, please visit http://www.civillaw.com.cn/article/default.asp?id=36126. On January 8, he organized the second International Symposium on the Property Law of 2007 and the Protection of Investors in collaboration with GUO TAI JUN AN Securities Corporation. Over 400 representatives from securities firms, listed corporations, CSRC, courts of justice and universities attended this symposium. For the minutes of the symposium, please visit http://www.civillaw.com.cn/article/default.asp?id=37358. On June 16, 2009, Prof. Liu organized the third International Symposium on the Corporate Social Responsibility aftermath the International Financial Crisis in collaboration with Hong Yuan Securities Corporation. For the minutes of the symposium, please visit http://chinacapitallaw.com/article/default.asp?id=3434. On May 11,2010, he organized the fourth Symposium in collaboration with Suchou University and Wanguo Law Firm in Taibei, Taiwan. For the summary of this symposium, please visit: http://chinacapitallaw.com/article/default.asp?id=5834.

**Profile comments and interview with influential mass media**

Due to Prof. Liu Junhai's strong professional reputation, sound moral integrity and committed social responsibility, many influential mass media including newspapers, magazines, televisions and radios have been very active in inviting Prof. Liu Junhai to make comments on various significant and controversial business law issues. Hundreds of thousands of web pages of his comments and interviews could be searched from the search engines including www.google.com, www.baidu.com, or www.sohu.com by inserting the key word "刘俊海"or"liu junhai". Most importantly, many

22

of his opinions have been accepted by the decision makers, business community or the courts.

He has made a great number of comments on business law issues with People's Daily （人民日报）, Guangming Daily （光明日报），Xinhua News Agency（新华社）, China National Radio (CNR), China Daily, Legal Daily（法制日报），Chinese Youth Daily（中国青年报），Procutorate Daily（检察日报），People's Court Daily （人民法院报），Economic Daily（经济日报），etc.
For his comments with People's Daily, please visit: http://www.people.com.cn/.
For his comments with Guangming Daily, please visit: http://www.gmw.cn/
For his comments with People's Daily, please visit: http://www.xinhuanet.com/
For his comments with Legal Daily, please visit: http://www.legaldaily.com.cn/
For his comments with China Youth Daily, please visit: http://www.cyol.net/
For his comments with Procutorate Daily, please visit: http://www.jcrb.com/
For his comments with People's Court Daily, please visit: www.rmfyb.chinacourt.org or http://www.chinacourt.org
For his comments with Economic Daily, please visit: http://www.ce.cn/

In addition to the regular interviews with China Central Television （CCTV），he has made legal comments on over two hundreds of civil and commercial law cases on the daily program of Legal Report （今日说法） of CCTV from 12:40pm to 13:00pm since 1999. For the videos of his comments, please visit:
http://cctv.cntv.cn/lm/jinrishuofa/index.shtml
For instance, for his comment on the tort liability of defective fire works, please visit: http://jinrishuofa.cctv.com/20100510/103611.shtml, for his comments on the ownership of controversial but valuable cultural relic vase, please visit: http://jinrishuofa.cctv.com/20100510/102570.shtml, etc.

His academic arguments have also been covered by international influential mass media, including the Wall Street Journal. For example, his argument that "The CSRC has a responsibility to ensure the securities market is open, fair, just and transparent. It's not the obligation of the government to guarantee stock prices keep going up" was reported by Dinny Mcmahon in the article "China Premier Backs Blueprint for Financial Reform", published by the Wall Street Journal on March 5, 2012.
http://online.wsj.com/article/SB10001424052970203458604577262903484069144.html

**Sample Interviews with Chinese media in English include:**
Key guest for the talk show "Stock market reform" at China Radio International, April 9, 2012. The web link: http://english.cri.cn/8706/2012/04/09/2861s692226.htm

Called to strengthen the regulation on the internet retails: "Singles' Day sales push couriers to the limit", by Yu Ran and Shen Jingting, China Daily, November 23, 2011. http://www.chinadaily.com.cn/usa/china/2011-11/23/content_14146241.htm

Urged Taobao to have a pricing procedure that takes account of sellers' views and that more competition should be welcomed: "Regulators review Taobao", by Chen Limin and Ding Qingfen, China Daily, November 1, 2011.
http://www.chinadaily.com.cn/usa/business/2011-11/01/content_14013274.htm

Criticizing DEHP contamination scandal and called for unconditional recall:"Mainland recalls Taiwan's possibly tainted drinks", by Li Yao,China Daily, May 28, 2011.
http://www.chinadaily.com.cn/usa/china/2011-05/28/content_12597474.htm

Criticizing Carrefour stores for overcharging Chinese consumers:"More Carrefour stores caught overcharging", China Daily,Feb.9, 2011.
http://www.chinadaily.com.cn/usa/business/2011-02/09/content_11969677.htm

Making comments on the protection of consumers of fake paints: "Police detain three for producing fake paint", Cao Yin, China Daily, August 26, 2011. http://www.chinadaily.com.cn/cndy/2011-08/26/content_13194683.htm

Criticizing the employers not paying overtime wages for the wages: "Holiday? What holiday? Get to work!", By He Na, China Daily,October 4, 2010.
http://www.chinadaily.com.cn/usa/2010-10/04/content_11376925.htm

Suggesting to set up free but compulsory registration system for vendors to protect consumers' right： "Selling some hope to vendors", by He Bolin, China Daily,September 8, 2009.
http://www.chinadaily.com.cn/opinion/2009-09/08/content_8665596.htm

Comments on the Chinese Spreme Court's efforts to help local governments cope with an increasing number of mass incidents involving disputes over wages and management amid the economic downturn： "Courts to help governments reduce protests", by Xie Chuanjiao, China Daily, June 9, 2009.
http://www.chinadaily.com.cn/china/2009-06/09/content_8262039.htm

Arguing that as the global financial crisis becomes more severe, entrepreneurs should realize that social responsibility is the most effective way to resist risk:"Top multinationals' CSR projects honored"， by Liu Jie, China Daily,April 20, 2009.
http://www.chinadaily.com.cn/bw/2009-04/20/content_7693373.htm

Arguing that celebrities should be more conscious over legal ramifications and protect themselves by being wary of using unreliable scientific information in advertisements, and that they should calm down and treat the legislation on Food Safety Law rationally:"Celebrity row is 'aiding food safety'", by Lin Shujuan, China Daily,March 13, 2009. http://www.chinadaily.com.cn/cndy/2009-03/13/content_7574338.htm

Arguing that Courts should be more service-oriented so they can play a protective role for economic development, instead of the "crackdown" role they have taken in the past："Maintaining stability key, judge says", by Xie Chuanjiao, China Daily,December 20, 2008.
http://www.chinadaily.com.cn/cndy/2008-12/20/content_7324476.htm

Suggested that judicial system to permit consumer class action against the poisonous milk manufactures on the ground of the huge number of victims involved, the fact that more victims will choose to give up because of high costs or other reasons, and the fact that individual lawsuits will also waste judicial resources and may take a long time to resolve："Pre-Sept 14 dairy products ordered off shelves", by Zhu Zhe and He Bolin，China Daily, October 15, 2008.
http://www.chinadaily.com.cn/china/2008-10/15/content_7105782.htm

Encouraging public awareness about protecting citizens' rights and interests in the Sanlu poisonous milk scandal: "1st suit filed against Sanlu"，by Xie Chuanjiao, China Daily,October 7, 2007.
http://www.chinadaily.com.cn/cndy/2008-10/07/content_7081446.htm

Called for the introduction of more detailed regulations on government procurement on the internet, as parts of the current law are unclear and difficult to implement: "Govt boosts online purchasing"，by Xie Chuanjiao, China Daily, December 15, 2007. http://www.chinadaily.com.cn/china/2007-12/15/content_6323778.htm

Advised Beijing government to relax the restrict requirements in the New Guidelines for domestic help contracts in Beijing: "Beijing to issue home help guidelines", China Daily, October 19, 2006. http://www.chinadaily.com.cn/2008/2006-10/19/content_712197.htm

Criticizing Kodak for its failure to satisfy Chinese consumers' claims for free upgrading of the defective cameras, and arguing that manufacturers should be full responsible for their defective products so as to protect the interests of consumers on the public hearing of China Consumers' Association:" Public hearing presses for compensation from Kodak", Xinhua News agency, China Daily, August 23, 2006.
http://www.chinadaily.com.cn/bizchina/2006-08/23/content_672345.htm

Called for more government regulations of the charges of the mobile phone service industry and abolishing two-way charging of mobile calls:"Beijing telecom expenses need to be regulated", China Daily, March 18, 2006.
http://www.chinadaily.com.cn/china/2006-03/18/content_544548.htm

Criticizing the court ruling that families of three victim girls killed in a truck fatality received different compensations based on their HUKOU status as a resident in city or in rural areas, and arguing that families of the three victims were similarly devastated,

but in terms of financial loss, the rural parents suffered more because even though they had lower income, the relative cost of raising their child is higher. He interpreted compensation as mostly for emotional damage, which cannot be measured by one's hukou or the living standard that it dictates. What's more, the compensation has punitive and educational functions, he told China Daily. In today's China, rural and urban residents have different costs of living. But when they enter heaven, they should be given the same dignity: "Hukou blamed for compensation discrepancy", by Wang Zhuoqiong and Zhou Liming, China Daily, January 27, 2006.
http://www.chinadaily.com.cn/english/doc/2006-01/27/content_515895.htm

Making comments on Tang Wanxin and his notorious and bankrupt D'Long Group for illegally accepting deposits, manipulating stock prices and embezzlement:"D'Long boss on trial in biggest finance case", by Jiao Xiaoyang and Wang Zhuoqiong, China Daily, January 20, 2006.
http://www.chinadaily.com.cn/english/doc/2006-01/20/content_513861.htm

Surrogate motherhood involves personal freedom, human rights and ethics, and must be handled in accordance with the law. The websites are open to the public and may have to face legal ramifications when the natural and surrogate mothers enter into an agreement without a full understanding of the law. He emphasized that laws should be more explicit in terms of protecting the rights of these women, monitoring the procedure of surrogate pregnancy and guaranteeing legal rights of all participants. "Surrogate pregnancy challenges social ethic",by Wang Zhuoqiong and Raymond Zhou, China Daily.
http://www.chinadaily.com.cn/english/doc/2006-01/07/content_510158.htm

Making comments on the New Corporate Law Draft of 2005, and said the revised law would have far-reaching implications on the operation of public firms and the securities market. In many places the shareholders' meetings have become something irrelevant and small investors have little leverage over executives, attributing the problem to insufficient rules in the law. Many stipulations in the amendment are vital to improve corporate governance systems and may add some morale to the sluggish stock market, he said. "Strengthening shareholders' rights should be a main principle of the revision of the law," said Liu. "Ease of incorporating opens doors", China Daily, March 2, 2005.
http://www.chinadaily.com.cn/english/doc/2005-03/02/content_420771.htm

Annuity regulations need to be improved in additional ways to make annuity management more cost-effective. According to current regulations, a financial company entrusted to manage a business annuity should hire a custodian, a bookkeeper and an asset manager to take care of the respective links in annuity management. "Such a long management chain is costly and will lower the efficiency of supervision," Liu told China Daily."The policy-makers' great caution in making the first-ever annuity regulation is understandable, but efficiency is also a factor that

needs to be taken into account." "Annuity system tops US$12 b in 9 months"，by Ling Hu, China Daily, January27,2005.
http://www.chinadaily.com.cn/english/doc/2005-01/27/content_412668.htm

Making comments on the Draft of Notarization Law and argued that the legislation should make notaries accountable, and supporting the lawmakers to use all-inclusive general articles to cover any dishonest or grossly negligent notarizations. "Law in pipeline to make notaries accountable", by Hu Cong, China Daily, December 28, 2004. http://www.chinadaily.com.cn/english/doc/2004-12/28/content_404047.htm

Making comments on the government procurement of foreign soft wares: " Procurement dispute calms "，Zhu Boru, China Daily, December 9, 2004.
http://www.chinadaily.com.cn/english/doc/2004-12/09/content_398646.htm
Making comments on Chinese Supreme People's Court decree on the execution of property in civil cases, said the new judicial explanation is in the limelight because the disposal of property it covers is "the most important link in all enforcement jobs in civil cases: " Facilitating property execution " , Hu Cong, China Daily, November 11, 2004.
http://www.chinadaily.com.cn/english/doc/2004-11/30/content_395807.htm

Criticizing the excessive banking charges for consumers. I pointed out the banks' mistake in legal terms. If the banks change their agreements with the consent of the central bank but not of the consumers, they are only free from administrative responsibility, but not the responsibility to uphold their contracts with consumers. I encouraged consumers to file a class action complaint to protect their rights. I also suggested that the consumers' association could negotiate with the representatives of the major banks on the rights and obligations of both sides. Either side that wants to change the contract must get the agreement of the other side. "Consumers baulk at bank charges"，China Daily，April 9，2004.
http://www.chinadaily.com.cn/english/doc/2004-04/09/content_321896.htm

Revisions of the Securities Law and the Company Law should be in tandem to raise flexibility and avoid conflicts:" What's new"，China Daily, HK Edition, July 8, 2003.
http://www.chinadaily.com.cn/en/doc/2003-07/08/content_243845.htm

Making comments on the Securities Law reform, and advised the legislature to keep Securities Law reform consistent with other financial legislation, much of which is also being revised: "Securities Law pondered", China Daily, July 7, 2003.
http://www.chinadaily.com.cn/en/doc/2003-07/07/content_243333.htm

Making comments on the decided case of punitive damage by the fraudulent real estate development corporation towards its consumers, as the local courts in Hebi of Central China's Henan Province for the first time ordered a real estate company to double its compensation payment after it sold a house of substandard quality. Hailing it as a milestone in law enforcement for China, I said: "The case has set a precedent in judicial practice when dealing with similar cases in the future." :Consumers count costs of pricing abuses", Jiang Zhuqing,

China Daily, March 25, 2003.http://www.chinadaily.com.cn/en/doc/2003-03/25/content_159374.htm

Urged Chinese legislature to revise Chinese Corporate Law of 1993 in accordance with international rules is needed to maintain the country's economic progress. Without an effective corporate law, foreign capital as well as domestic capital will flow to other countries with the fastening international capital movement. Under the current corporate law there are too many limitations on investment, especially foreign acquisition in China, which has hindered the country's further attraction of foreign investment. In principle, a ratification process concerning corporate activities should be replaced with a registration system, making it easier for investors and corporate managers to adjust their strategies. "Experts urge changes to corporate law", China Daily, September 16, 2002.
http://www.chinadaily.com.cn/en/doc/2002-09/16/content_136419.htm

Making comments on the legal strategy to avoid tax evasions and frauds. I explained that the average salary level in China, which was affected by the decades of planned economy, was far below the benchmark of personal income tax. Hence, most people still consider tax payments have nothing to do with themselves even though their living standard and the salary level have been greatly improved since China adopted the opening reform. "Dodgers evade US$12 billion in tax", Gang Ji, China Daily, September 4, 2003.

http://www.chinadaily.com.cn/en/doc/2002-09/04/content_134913.htm

Criticizing the revised draft of Shanghai's local consumer-protection provisions, and urged the local legislature to protect the consumer's claim for the punitive damage. The law protects citizens' rights of disposing their wealth freely except when they are engaged in illegal deals. But where can we find the rule of law if it is a person's motive that is investigated even when they buy something open and aboveboard? In fact, a mandatory definition of "consumer" is hardly practical in judicial procedures because it is nearly impossible to decide whether a claimant bought something for personal use or just to cash in using the law. The proposed provision will not only put consumers in an unfavorable situation, but also dent the country's effort in combating fake goods. The anti-fake campaign has never been easy. The legislators should encourage the public to join the battle rather than throw a wet blanket over them. The crux of the matter is that the government alone does not have enough force to deal with so many fakes. This is a reason why professional fake-hunters like Wang Hai have become famous. Some people do not like the so-called 'anti-fake heroes' simply because they make money in the business. But their job only hurts fake goods sellers and is good to society. Generally speaking, consumers are in a passive status when dealing with fake good producers and sellers. It is very rare to see a few smart and brave consumers take the initiative to challenge them. We ought to support that. "Draft rule counter-productive", Xiao Jiao, China Daily, July 23, 2002.
http://www.chinadaily.com.cn/en/doc/2002-07/23/content_128990.htm

**Research projects and grants**
1.   Research on the Class Shares in Joint Stock Corporations, China Law Society,

2011.

2. Research on the Draft of the Internet Advertisement Regulation, State Authority of Industry and Commerce, 2011.

3. Innovation of the Mechanism of State Intervention of the Market, Ministry of Justice, 2009.

4. The Research on the Modernization of Chinese Corporation Law aftermath the International Financial Crisis, Ministry of Education, 2009.

5. The Study on the Legal System of Private Equity Funds, Ministry of Education, 2009.

6. The Study on the Corporate Social Responsibility aftermath the Financial Crisis, Hong Yuan Securities Corporation,2009.

7. The Research on the Amendment of Chinese Consumer Protection Law, State Authority of Industry and Commerce,2009.

8. The Protection of Securities Investor, Program for New Century Excellent Talents in Universities (NCET), Ministry of Education, 2008.

9. The Study on the Legal Issues of the Listing of Chinese Corporations at Japanese Stock Exchanges, Sumitomo Foundation, Japan, 2009.

10. The Research on the Improvement of Institutions of the Protection of Securities Investors in the Model of Indirect Ownership of the Shares, Project of 985 of Renmin University of China, 2008.

11. The Study on the Public Debt Management in China, Asian Development Bank, 2006.

12. The Study on the Mechanism of the Collaboration between Legal Enforcement Agencies in Securities Market, 2006.

13. The Study on the Share Transfer Disputes, Supreme Court of China, 2005.

14. China and Economic Globalization, Ford Foundation,2005.

15. The Study on the Legal Issues of Regulation, Improvement and Development of Capital Market, National Social Science Foundation, 2005.

16. The Study on the Basic Theory of Chinese Social Law, Chinese Academy of Social Sciences, 2005.

17. The Comparative Study on the Legal Status of Stock Exchange, Shenzhen Stock Exchange,2003.

18. The Study on the System of the Commercial Credibility in Securities Market, China Securities Regulatory Commission and Shanghai Stock Exchange, 2004.

19. The Study on the Reform of Chinese Corporate Governance, UNDP, 2003.

20. The Study on the Shares Incentive Mechanism of High-Tech Corporations, Ministry of Science and Technology, 2002.

21. The Study on the Effective Supervision of E-commerce Orders by the Authorities of Industry & Commerce, 2002.

22. The Study on the M &As and the Restructuring of State-owned Assets, Institute of Macro Economy, State Development and Reform Commission, 1999.

23. EU Company Law and Their Implications for Chinese Establishment of Modern Enterprise System, EU-China Higher Education Program, 1998.

24. Legal Prevention of Financial Crisis, National Social Science Foundation, 1998.

25.   The Study on Corporate Groups, Chinese Academy of Social Sciences,1996.

26. Principles of Economic Law, National Social Science Foundation, 1996.

## List of supervised PhD theses

1.   Yang Jiangtao（杨江涛）(2007-2011)，The Study on the Legal Effects of Anti-Takeovers in Chinese Listed Corporations（上市公司反收购措施的合法性研究），passed by Law School, Renmin University of China in 2011. He is working for Zhan Jiang Commercial Bank in Guangdong Province.

2.   Chen Xiaofang（陈晓芳） (2008-2011), The Study on the Land Reserve System in China (中国土地储备制度研究), passed by Law School, Renmin University of China in 2011. She is an assistant professor at International Financial Law School, East China University of Political Sciences & Law.

3.   Cai Yunhong（蔡云红）（2009000125，2009-2012），A Study on the Legal Issues of Hedge Fund Regulation (对冲基金监管的法律问题研究)， to be reviewed by Law School, Renmin University of China in June 2011. Hw works for Beijing Branch, China Securities Regulatory Commission (CSRC).

Li Peihua（李培华） (2009000124，2009-2012), Legal Issues of Incentive Stock Plan(上市公司股权激励法律问题研究), to be reviewed by Law School, Renmin University of China in June 2011.

4.   Xu Yijing(徐义景)(2008090002 ，2008-2012，Korean student)，A Study on Exemption of Directors' Liability In Companies Law（公司法上的董事责任免除研究），to be reviewed by Law School, Renmin University of China in June 2011.

5.   Chen Yongfeng（陈勇峰）（2008000119，2008-2012），Research on the Corporate Governance of Corporate Groups：Focused on the State-Owned Corporate Groups（企业集团治理问题研究——以国有企业集团为中心，to be reviewed by Law School, Renmin University of China in June 2011.

## List of supervised visiting scholar at Renmin University of China

1.   Wang Rui（王瑞）（2009-2010），Professor of law, Beijing Industrial University School of Law.

2.   Zhang Shijun（张世君）（2010-2011), Associate Dean and Associate Professor of law, Capial University of Economics & Trade School of Law.

3. Li Danning（李丹宁）(2011-2012), Associate Professor of law, Beijing Industrial University School of Law.

**List of supervised post doctorate program at Renmin University of China**

Fan Jiwei（樊纪伟）（2012-2014），will do research on Modernization of Chinese Corporate law under my supervision. He received his Ph D of law from Toshisha University （同志社大学）, Japan, 2012.

### 刘俊海教授简历

刘俊海，河北泊头人，民商法博士。现为中国人民大学法学院教授、博士生导师、博士后导师，中国人民大学商法研究所所长，中国人民大学法律顾问。兼任澳大利亚蒙纳什大学（Monash University）客座教授、中国消费者协会副会长、中国消费者权益保护法研究会副会长兼秘书长、中国国际经济贸易仲裁委员会仲裁员、北京仲裁委员会仲裁员、伦敦仲裁院仲裁员、维也纳国际仲裁中心仲裁员、香港国际仲裁中心仲裁员、亚太仲裁集团仲裁员、中华全国总工会法律顾问委员会委员、中宣部司法部与中国法学会"六五"普法国家中高级干部学法讲师团成员、国家法官学院兼职教授、商务部电子商务专家咨询委员会委员、深圳证券交易所博士后工作站博士后导师、深圳证券交易所第二届上诉复核委员会委员、中国法学会理事、中国法学会商法学研究会常务理事、中国法学会证券法研究会常务理事、中国工商行政管理学会常务理事、中国个体劳动者协会常务理事、中国注册会计师协会会计师事务所内部治理委员会副主任、海峡两岸法学交流促进会常务理事、北京市人民检察院民事行政专家咨询委员会委员、《中国资本市场法治评论》主编、《资本市场法治网》（www.chinacapitallaw.com）主编、中国政法大学与河北大学等多所大学兼职教授等。

1985年9月至1989年7月，在河北大学法律系学习，获法学学士学位。1989年9月至1992年7月在中国政法大学研究生院学习，获经济法硕士学位。1992年9月至1995年7月，在中国社会科学院研究生院学习，获民商法博士学位。1995年7月，进入中国社会科学院法学所从事商法经济法研究工作。历任中国社会科学院法学所研究员、中国社会科学院研究生院教授、博士生导师、商法经济法研究室副主任、中国社会科学院法学所所长助理兼所务办公室主任、社会法研究室主任、中国社会科学院法学所商事法研究中心秘书长等职。2006年9月，调入中国人民大学法学院任教。

1996年11月至1997年11月，赴挪威奥斯陆大学从事博士后研究，研究课题为公司的社会责任。1998年9月，受欧盟资助赴荷兰阿姆斯特丹大学法学院从事访问研究，研究课题为欧盟公司法。2000年1月至2001年5月，受美国学术界理事会（American Council of Learned Societies, ACLS）与美中学术交流委员会（the Committee on Scholarly Communication with China, CSCC）资助，赴美国密西根大学和堪萨斯大学作访问学者，研究课题为美国公司法。2007年8月，赴新西兰维多利亚大学法学院做访问学者。2009年7月至8月，赴美国威斯康辛大学做访问研究。2011年8月至2012年6月，作为密西根大学格劳秀斯学者（Grotius Research Fellowship）和休斯学者（Hughes Fellowship），从事访问研究。

自1996年以来，多次赴美国、荷兰、德国、芬兰、新西兰、日本、新加坡、马来西亚、泰国、越南等国出席国际学术研讨会，提交英语论文并发表英语演讲。《电子商务中的信任机制研究》（英文）在美国商法学会（the Academy of Legal Studies in Business）2001年年会上荣获拉尔夫·邦奇奖（the Ralphe Bunche Award）。多次前往我国港澳台地区参加学术研讨会、发表学术演讲。

主要研究专长为公司法、证券法和其他商法经济法前沿问题。作为核心咨询专家或起草工作小组成员，参加了《公司法》、《证券法》、《证券投资基金法》、《合伙企业法》、《政府采购法》、《企业国有资产法》和《消费者权益保护法》等商事经济法律的研究、起草和修改工作。多次参加立法机关组织的专家座谈会，并多次向立法机关提供咨询建议，多项立法建议被采纳。独立承担或主持了国家社会科学基金项目《规范、健全、发展资本市场的法律问题研究》等多项课题研究项目。

自1987年起，已出版《现代公司法》、《新公司法的制度创新：立法争点与解释难点》、《股份有限公司股东权的保护》、《公司的社会责任》、《欧盟公司法指令全译》等专著或

译著 12 部，在美国《哥伦比亚商法评论》（Columbia Business Law Review）和《中国法学》等学术刊物发表中英文学术论文 100 余篇。

1999 年被北京市法学会授予"优秀中青年法学家"称号。2003 年被《财经时报》评选为全国"2003 年度十大意见领袖"。2005 年《股份有限公司股东权的保护》一书在中国社会科学院、中国法学会和全国青联举办的第一届"中国青年法律学术奖（法鼎奖）"评选中获金鼎奖（一等奖）。2006 年被中国法学会评选为第五届"全国十大杰出青年法学家"。2008 年，入选教育部新世纪优秀人才支持计划。2008 年，当选为中国消费者协会副会长。2008 年和 2011 年，连续两次入选中国校友会网大学评价课题组《中国杰出人文社会科学家研究报告》中的第二届和第三届"中国杰出人文社会科学家"名单。

## 主要社会兼职

1. 美国商法研究会（ALSB）会员；
2. 澳大利亚蒙纳什大学（Monash University）客座教授；
3. 中国消费者协会副会长；
4. 中国法学会消费者权益保护法研究会副会长兼秘书长；
5. 中宣部、司法部、中国法学会"六五"普法国家中高级干部学法讲师团成员；
6. 中国法学会理事；
7. 中国国际经济贸易仲裁委员会仲裁员；
8. 北京仲裁委员会仲裁员；
9. 呼和浩特仲裁委员会仲裁员、咨询委员会委员
10. 香港国际仲裁中心仲裁员；
11. 亚太区域仲裁集团仲裁员（APRAG）；
12. 澳大利亚国际仲裁中心仲裁员；
13. 吉隆坡区域仲裁中心仲裁员；
14. 维也纳国际仲裁中心仲裁员；
15. 德国仲裁协会仲裁员；
16. 伦敦国际仲裁院仲裁员；
17. 迪拜国际仲裁中心仲裁员；
18. 加拿大国际 ADR 中心仲裁员；
19. 全国总工会法律顾问委员会委员；
20. 全国人大法工委专家库专家；
21. 商务部电子商务专家咨询委员会委员；
22. 海峡两岸法学交流促进会常务理事；
23. 中国法学会商法学研究会常务理事；
24. 中国法学会证券法研究会常务理事；
25. 中国工商行政管理学会常务理事；
26. 国家工商行政管理局培训中心兼职教授；
27. 中国个体劳动者协会常务理事；
28. 深圳证券交易所博士后工作站博士后导师；
29. 深圳证券交易所第三届上市委员会委员；
30. 深圳证券交易所第二届上诉复核委员会委员；
31. 中国社会科学院民营经济研究中心特邀研究员；
32. 中国法律咨询中心专家委员会委员；

33. 中国注册会计师协会会计师事务所内部治理委员会副主任；
34. 《中国证券报》专家学术顾问；
35. 《法制日报》法学专家顾问团成员；
36. 《检察日报》学术指导委员会委员；
37. 《中央人民广播电台》经济宣传顾问；
38. 中央电视台《今日说法》点评嘉宾；
39. 第一届中国法学会商法学研究会副秘书长；
40. 国家法官学院兼职教授；
41. 中国政法大学兼职教授；
42. 河北大学兼职教授；
43. 华侨大学兼职教授；
44. 乌克兰《公司所有权与控制》(Corporate Ownership and Control)杂志编委；
45. 《环球法律评论》(中国社会科学院)编委（2002-2006）
46. 中国人民大学民商事法律科学研究中心研究员；
47. 中国人民大学法律顾问；
48. 教育部科研基金和科技奖励评审专家；
49. 中国商业联合会专家工作委员会委员；
50. 中国市场学会信用学术委员会委员
51. 北京市人民检察院民事行政专家咨询委员会委员
52. 北京市消费者协会专家委员会委员；
53. 北京市评标专家；
54. 曾任泰信基金管理有限公司、株冶火炬集团、哈工大首创科技股份有限公司等公司独立董事，现任宏源证券股份有限公司独立董事；
55. 中国法学会食品安全法治研究中心学术委员会委员、研究员；
56. 欧美同学会中国留学人员联谊会会员。

**荣誉奖励**

1. 2006 年，被中国法学会评选为第五届"全国十大杰出青年法学家"；
2. 2008 年，入选教育部新世纪优秀人才支持计划；
3. 2008 年，被中央宣传部、中央政法委员会、司法部和中国法学会评为"百名法学家百场报告会"最佳宣讲奖；
4. 2006 年，刊登于《中国社会科学要报:领导内参》2005 年第 27 期的《妥善解决股权分置改革中涉及外资股东的难点法律问题》获中国社会科学院（省部级）优秀信息一等奖。该文被黄菊副总理批阅。
5. 2005 年，《股份有限公司股东权的保护》（法律出版社 1997 年第 1 版）在中国社会科学院、中国法学会和全国青联举办的"第一届中国青年法律学术奖（法鼎奖）"评选中荣获金鼎奖（一等奖）；
6. 2003 年，被《财经时报》评选为全国"2003 年度十大意见领袖"；
7. 2001 年，《电子商务中的信任机制研究》（英文）在美国商法学会（the Academy of Legal Studies in Business）2001 年年会上荣获拉尔夫·邦奇奖（the Ralphe Bunche Award），该奖为国际商法论文一等奖。
8. 1999 年，被北京市法学会授予"优秀中青年法学家"称号；
9. 2008 年，《股份有限公司股东权的保护（修订本）》（法律出版社 2004 年第 2 版）获得第二届钱端升法学研究成果奖（部级奖）二等奖；

http://www.legaldaily.com.cn/bm/content/2010-09/21/content_2295782.htm?node
=20735

10. 2008 年，《股份有限公司股东权的保护（修订本）》（法律出版社 2004 年第 2 版）
在中国法学会主办的首届"中国法学优秀成果奖"（部级奖）评选中获得专著类三等奖；

11. 2008 年，入选中国校友会网大学评价课题组《2008 中国杰出人文社会科学家研究
报告》中的第二届中国杰出人文社会科学家名单。

12. 2011 年，入选中国校友会网大学研究团队《2011 中国杰出人文社会科学家研究报
告》中的第三届中国杰出人文社会科学家名单。

13. 中国人民大学法学院 2007 年度青年教师学术交流优秀奖。

14. 中国人民大学法学院 2008 年度青年教师教学优秀奖。

15. 2009 年，《现代公司法》一书获司法部第三届全国法学教材与科研成果奖；

16. 2006 年，《公司法的修改与解释:以司法权的适度干预为中心》（《法律适用》，2005
年第 3 期）获最高人民法院《法律适用》"珠海杯"征文二等奖；

17. 2004 年，《论证券市场法律责任的立法和执法协调》（《现代法学》，2003 年第 1 期）
荣获重庆市新闻出版局、重庆市期刊协会颁发的优秀论文奖；

18. 2006 年，被中共北京市委宣传部、北京市委讲师团评选为北京市第 16 届"灵山杯"
优秀报告（党课）二等奖；

19. 2005 年，刊登于中国社会科学院要报:专供信息（国办）2004 年第 21 期的《关于
清理限制非公有制经济发展的法律的建议》获中国社会科学院 2004 年优秀决策信息对
策研究类二等奖。

20. 2005 年 10 月，获得《中国消费者报社》颁发的"三一五文化贡献奖"。

21. 2004 年，《站在理论的前沿》获中国消费者协会与《中国消费者报》社与《我与消
法》征文一等奖。

22. 2003 年，《论非营利组织的社会责任》获民政部"民间组织理论研究优秀论文奖"。

23. 2001 年，《论商事打假行为》（《中国工商管理研究》2000 年第 4 期）获国家工商局、
中国工商管理学会和中国消费者协会主办的"12315"面向 21 世纪消费者权益保护征
文一等奖。

24. 2001 年，《公司的社会责任》一书获中国社会科学院法学所优秀科研成果奖。

25. 2000 年，《股东权保护概论》一书获中国社会科学院（省部级）第三届青年优秀科
研成果专著三等奖；

26. 1998 年，刊登于《中国社会科学院要报--信息专报》1997 年 7 月 30 日第 63 期的
《建议尽快纠正对〈联合国民事权利和政治权利公约〉中"民事权利"的不准确译法》
获中国社会科学院（省部级）优秀信息奖。该文被钱其琛副总理批阅；

27. 1992 年，《论证券交易立法的若干问题》获中国政法大学四十周年校庆研究生有
奖征文一等奖。刘俊海在 1992 年 5 月 5 日举行的中国政法大学建校四十周年校庆上宣
读了该论文（见《我校举行建校四十周年校庆活动》，晓理、肖舟，《政法论坛》，1992
年第 3 期）。

**一、代表性学术专著**

1. 《公司法学》，独著，北京大学出版社，面向 21 世纪课程教材，
ISBN978-7-301-12193-1，2008 年 8 月版；

2. 《现代公司法》，独著，法律出版社，ISBN978-7-5036-8508-8，117.8 万字，2008
年 7 月版。该书获第三届全国法学教材与科研成果奖；

3. 《公司法》，独著，名校名师讲义系列，中国法制出版社，ISBN9787509305348，2008

年 6 月版；

4.　　《物权法与证券投资者权益保护》，副主编（王利明、祝幼一主编），中国人民大学出版社，2008 年版；

5.　　《新公司法的制度创新：立法争点与解释难点》，独著，法律出版社，2006 年版。2010 年获得第二届钱端升法学研究成果奖（部级奖）二等奖；

6.　　《股份有限公司股东权的保护》(1997 年出版，2004 年修订版)在中国社会科学院、中国法学会和全国青联举办的"第一届中国青年法律学术奖（法鼎奖）"评选中荣获金鼎奖（一等奖）；2008 年获得第二届钱端升法学研究成果奖（部级奖）二等奖；

7.　　《公司的社会责任》，独著，补白性著作，法律出版社，1999 年版。该书于 2001 年获中国社会科学院法学所优秀科研成果奖；

8.　　《商法经济法热点案例评析与立法问题》，独著，论文集，经济科学出版社，2000 年版；

9.　　《欧盟公司法指令全译》，独译，法律出版社，2000 年版；

10.　　《公司法剖析：比较与功能的视角》，译著，合译，北京大学出版社，ISBN 978-7-301-12623-3，2007 年 8 月第一版；

11.　　《中国法学家访谈丛书》，昆仑出版社，2000 年版；

12.　　《股份制企业法律知识概述》，独著，北京工业大学出版社，1993 年版；

13.　　《规范的证券市场--证券的法律分析》，合著，贵州人民出版社，1995 年版；

14.　　《经济法原理》，合著，社科文献出版社，1999 年版；

15.　　《法律的未来：信息技术对法律的挑战》(英)，主译，法律出版社，2004 年 8 月第 1 版；

16.　　《非公有制经济发展的法制环境》，合著，中国工人出版社，全国政协社会和法制委员会办公室编，2004 年 2 月第 1 版。

二、代表性中英文学术论文

1.　　《强化董秘稳定性的制度创新》，《董事会》杂志，2012 年第 4 期；

2.　　《中国企业赴美并购的法律风险及其防范对策》，刘俊海，《法学论坛》，2012年第2期；

3.　　《法官如何裁判商人纷争—怎么看转变商事裁判理念》，最高人民法院《人民法院报》第 2 版，"司法热点怎么看之七"，2012 年 2 月 27 日。

4.　　《管窥中美"乔丹"姓名权与商标权之争》，《光明日报》，2012 年 4 月 5 日，第 15 版。http://epaper.gmw.cn/gmrb/html/2012-04/05/nw.D110000gmrb_20120405_2-15.htm?div=-1

5.　　http://rmfyb.chinacourt.org/paper/html/2012-02/27/content_40792.htm

6.　　《乔丹商标案胜负关键在于消费者》，《重庆晨报》第 9 版"名家专栏"，2012 年 2 月 27 日。http://cqcbepaper.cqnews.net/cqcb/html/2012-02/27/content_1505839.htm

7.　　《去美国并购并非有钱就行》，新华社《经济参考报》，2012 年 2 月 1 日。

8.　　《赴美投资为何成了"带刺的玫瑰"》，新华社《经济参考报》，2012 年 1 月 18 日。http://news.xinhuanet.com/fortune/2012-01/18/c_122601217.htm

9.　　《股市跌宕与法治相连》，《法治日报》周末版，2012 年 1 月 4 日。http://www.legaldaily.com.cn/Economic_and_Social/content/2012-01/04/content_3263764.htm

10.　　《坚持诚实信用原则，构建和谐消费环境》，《经济日报》第 7 版，2011 年 6 月 15 日。本文是作者应《经济日报》之邀，为该报开辟的"诚信大家谈"专版撰写的开篇之

作。 http://paper.ce.cn/jjrb/html/2011-06/15/content_156289.htm

11.　《多维度加大食品领域违法处罚力度》，《观点摘编》，中共中央办公厅秘书局信息刊物。该文获得中共中央办公厅 2011 年 12 月 31 日致中国人民大学的《感谢函》的高度赞扬，为专业科学决策提供了参考。

12.　《让夫妻间的股权悲情故事不再重复上演》，《人民法院报》，2011 年 11 月 9 日。 http://rmfyb.chinacourt.org/paper/html/2011-11/09/content_35703.htm

13.　《揭开公司面纱制度应用于司法实践的若干问题研究》，《法律适用》（国家法官学院），2011 年第 8 期；

14.　《婚姻法解释（三）体现若干制度创新》，《人民法院报》，2011 年 11 月 9 日。 http://rmfyb.chinacourt.org/paper/html/2011-08/19/content_32002.htm

15.　"Corporate Governance of Business Organizations in the People's Republic of China: The Legal Framework After the Revision of the Company Law in 2005"，co-authored with Knut Benjamin Pissler. 该文提交 2010 年国际比较法大会，并发表在社会科学研究网上： http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1695888。

16.　"Director's Duty of Diligence and Shareholder's Derivative Action in China"，提交 2010 年 6 月 25 日至 26 日在德国弗莱堡大学召开的"法律与法律现实：中德私人诉讼的程序实现对话"国际研讨会（Symposium ″Law and Legal Reality - A Chinese-German Dialogue on the Procedural Realisation of Private Claims″, Freiburg, 25th and 26th of June 2010）。

17.　"Corporate Governance in China: Then and Now"，Co-authored with Professor Cindy Schipany at the University of Michigan, *Columbia Business Law Review*, Volume 2002, Number 1. LENGTH: 24908 words. 据美国社会科学研究网（Social Science Research Network）2003 年 9 月 13 日的统计，该文是该网"亚洲法"论文中点击率最高的十篇文章之一。

18.　"Chinese Business and the Internet: The Infrastructure for Trust"，Vanderbilt Journal of Transnational Law, November,2002, 35 Vand. J. Transnat'l L. 1545. Co-authored with Prof. Timothy L. Fort at the University of Michigan, 该文曾在美国商法学会 2001 年年会上荣获最佳国际商法论文奖拉尔夫·邦奇奖。

19.　"The Perspectives for Tax Law in Hong Kong after 1 July 1997"，presented at the International Symposium "Tax Law in East and South-east Asia toward the 21st Century"，held in Leiden, the Netherlands in July 1996 and published by Kluwer Law International in 1997.

20.　"Increasing role of the courts in China", Law, Development & Socio-Economic Changes in Asia, 2003.

21.　"The Protection of Social Rights and the Coming Implementation of CESCR in China, presented at the International Symposium "The domestic obligation to implement International Convention on Economic, Social and Cultural Rights" held in Oslo, Norway, in November 1997.

22.　"The Protection of Labor Rights in China"，Working Paper Series of Norwegian Institute of Human Rights, the University of Oslo, 1997.

23.　"Approaches to Strengthen the Responsibility of Directors and Managers in China"，presented at the fourth annual conference of Asia Pacific Economic Law Forum, held in Hong Kong in December 1998.

24.    "Legal reforms in China", Governance ,Decentralization and Reform in China , India and Russia, Jean-Jacques Dethier (ed.) Kluwer Academic Publishers, pp. 373 - 405. ZEF-Discussion Papers on Development Policy No. 13, Center for Development Research (ZEF), Bonn, September 1999. See, http://www.zef.de/zef_englisch/f_publ.html1. It was presented at the international seminar of "the Governance on China, India and Russia", 3-4 May 1999, hosted by the Research Center for Development, Bonn University.

25.    "Overview of the Dispute resolution mechanism in China", presented at the "Roundtable Meeting on Law, Development and Socio-Economic Change in Asia (II), held in Bangkok, Thailand, 19-20 November, 2001.

26.    《论全球金融危机背景下的公司社会责任的正当性与可操作性》,《社会科学》,2010年第2期；

27.    《推行厂务公开制度，增强企业竞争力》，《理论前沿》，2009年第5期；

28.    《食品安全监管的制度创新》,《法学论坛》,2009年第3期；

29.    《3·15应成为企业对消费者的感恩节——论公司对消费者的社会责任》,《中国工商管理研究》，2009年第3期；

30.    《一项塑造法官公信力的诚信工程》，《人民法院报》，2009年2月3日，第4版。

31.    《落实科学发展观，完善资本市场法治：以上市公司监管立法为中心》,《甘肃社会科学》,2008年第5期；

32.    《弘扬股东民主理念，激活股东大会制度》，《董事会》，2008年第10期；

33.    《制定国有资产法的思考》,《河南省政法管理干部学院学报》，2008年第5期；

34.    《论股权平等原则》,《法学杂志》,2008年第3期；

35.    《改革开放30年来公司立法的回顾与前瞻》,《法学论坛》,2008年第3期；

36.    《贯彻落实科学发展观，打造法治工商新品牌》，《中国工商管理研究》，2008年第3期；

37.    《论抽逃出资股东的民事责任》,《法学杂志》,2008年第1期；

38.    《新公司法框架下的公司承包经营问题研究》,《当代法学》,2008年第1期；

39.    《论有限责任公司股权转让合同的效力》,《法学家》,2007年第6期；

40.    《中国对一人公司的法律规制》,《国际商事法务》(日本),2007年第9期；

41.    《优化事务所内部治理，实现做大做强》,《中国注册会计师》,2007年第6期；

42.    《关于公司社会责任的若干问题》,《理论前沿》(中央党校),2007年第22期；

43.    《揭开公司面纱制度在中国的解释与运用》,《中国法律》(香港),2007年第8期；
http://wenku.baidu.com/view/139e604669eae009581bec91.html

44.    《一本不平的平话——评〈行业协会商会平话〉》,《中国商贸》,2007年第6期；

45.    《优化资本市场健康发展的法治环境》，《资本市场》，2007年第11期；

46.    《法学研究要为构建社会主义和谐社会服务》,《法学论坛》,2007年第2期；

47.    《价格同盟：行业协会的社会责任亟待强化》,《人民法院报》,2007年10月16日；

48.    《法律应该向弱者适度倾斜》，《民主与法制》，2007年第5期；

49.    《新公司法中揭开公司面纱制度的解释难点探析》,《同济大学学报》(社会科学版),2006年第6期；

50.    《我国应尽快制定国有资产保护法》,《中国社会科学院要报：领导参阅》,2006年第20期；

51.    《社会主义和谐社会是法治社会》,《法学论坛》,2006年第6期；

52.　《新公司法解读》，《北大商业评论》，2006 年第 7 期；

53.　《新公司法实施中的争点》，《光明日报》（2006 年 12 月 26 日）第九版整版刊登；

54.　《新公司法的制度创新》，《月旦财经法学》（我国台湾地区），2006 年第 3 期；

55.　《构建和谐社会与法理念的更新——兼论和谐社会与社会法的完善》，《学习与探索》，2006 年第 5 期；

56.　《评〈公司集团基本法律问题研究〉》，《山东社会科学》，2006 年第 12 期；

57.　《从公共服务视角看行政机关的六种服务》，《工商行政管理》，2006 年 14 期；

58.　《创新裁判思维，维护金融债权》，《人民司法》（最高人民法院主办），2006 年第 1 期；

59.　《新公司法的制度创新及其对仲裁实践的影响》，《北京仲裁》，2006 年第 1 期；

60.　《妥善解决股权分置改革中涉及外资股东的难点法律问题》，《中国社会科学院要报：领导内参》，2005 年第 27 期。该文被黄菊副总理批阅，获中国社会科学院优秀信息一等奖；

61.　《完善证券法，鼓励投资信心》，《中国社会科学院要报：领导内参》，2005 年第 28 期；

62.　《强化公司社会责任是构建和谐社会的重要内容》，《中国社会科学院院报》，2005 年 9 月 27 日第 3 版；

63.　《创新法律制度，构建和谐社会》，《群言》，2005 年第 11 期；

64.　《论构建和谐社会过程中民商法官的裁判思维》，《山东审判》，2005 年第 3 期；

65.　《一人公司制度难点问题研究》，《中国社会科学院研究生院学报》，2005 年第 6 期；

66.　《企业国有产权转让中的法律问题研究》，《人民司法》（最高人民法院主办），2005 年第 3 期；

67.　《公司法的修改与解释：以司法权的适度干预为中心》，《法律适用》，2005 年第 3 期。该文获最高人民法院《法律适用》"珠海杯"征文二等奖；

68.　《证券法律的制度创新》，《中国金融》，2005 年第 22 期；

69.　《诚信株连的启示》，《新财经》，2005 年第 11 期；

70.　《股改的法律依据何在》，《新财经》，2005 年第 9 期；

71.　《公司社会责任与和谐消费环境的构建》，《上海政法学院学报》（法治论丛），2005 年第 4 期；

72.　《修改公司法，放宽公司的担保能力》，《国家检察官学院学报》，2005 年第 4 期；

73.　《有效维权重在加大违法成本》（专访），《人民日报》，2005 年 3 月 17 日第 5 版；

74.　《关于清理限制非公有制经济发展的法律的建议》，《中国社会科学院要报：专供信息（国办）》，2004 年第 21 期。该文被评为中国社会科学院 2004 年优秀决策信息对策研究类二等奖；

75.　《公司法修改应着力创新》，《法学》（华东政法学院），2004 第 7 期；

76.　《建立社会公众股股东单独表决制度的有关问题》，《中国金融》，2004 年第 23 期；

77.　《关于企业和企业家的维权立法问题》，《当代经济》，2004 年第 4 期；

78.　《完善国内仲裁司法监督问题的法学思考》，《北京仲裁》，2004 年第 1 期；

79.　《论新公司法的现代化》，《环球法律评论》，2004 年冬季号；

80.　《国有企业公司制改革的法律分析与思考》，《国有企业改革法律报告》，第 1 卷，中信出版社，2004 年版；

81.　《公司法修改中的重大问题》，《民商法前沿论坛》，第 3 辑。王利明主编，人民法院出版社，2004 年；

82.　《加强公司法解释学研究，积极审慎审理公司纠纷案件》，《商事审判研究》，2004

年卷，人民法院出版社，2004年；

83. 《论证券市场法律责任的立法和执法协调》，《现代法学》，2003年第1期。该文在2004年7月荣获重庆市新闻出版局、重庆市期刊协会颁发的优秀论文奖；被收入《中国商法学精萃 2004年卷》，高等教育出版社，2004年版。

84. 《我国公司法移植独立董事制度的思考》，《政法论坛》，2003年第3期；

85. 《建立社会主义市场经济的法人和企业产权制度》，国务院发展研究中心调查研究报告2003年第164号；

86. 《倾力打造非公有制企业健康发展的法律环境》，提交2003年全国政协社会和法制委员会专题研讨会，收入《非公有制经济发展的法制环境》，中国工人出版社，全国政协社会和法制委员会办公室编，2004年2月第1版；

87. 《加强对非公有制经济的法律保护》，《群言》，2003年第7期；

88. 《上市公司分立与小股东权益保护》，《证券法律评论》2003年卷；

89. 《规制政府采购人变相指定供应商的法律思考》，《中国政府采购》，2003年第6期；

90. 《论完善证券法律责任的协调实施机制》，《法律适用》（国家法官学院），2003年第4期；

91. 《整顿和规范市经济秩序的法律思考》，《中国工商管理研究》，2003年第7期；

92. 《营造放心消费环境，全面建设小康社会》，《中国质量万里行》，2003年第3期；

93. 《电子商务主体及准入监管研究》，1.5万字，载入《市场监管理论与实践研究》，中国工商出版社，2003年7月版；

94. 《有限责任公司股东权转让若干问题研究》，《中国民商审判》，2003年第1卷；

95. 《论股东累积投票权》，《环球法律评论》，2003年第1期；

96. 《理顺工商关系，保护消费者权益》（专访），《人民日报》，2003年11月3日；

97. 《完善信用立法，夯实诚信根基》，《人民日报》，2003年6月17日；

98. 《塑造科学消费的良好法治与伦理环境——谈商家、政府职能部门及社会团体、中介机构在推动科学消费方面的作用》，《中国工商管理研究》，2002年第11期；

99. 《国际惯例≠真理》，《新华文摘》，2002年第9期；

100. 《政府采购法重视对供应商权益的保护》，《中国政府采购》，2002年第6期；

101. 《论独立董事制度的几个相关法律问题》，《中国工商管理研究》，2002年第3期；

102. 《建立健全公司治理结构的若干思考》，《法学论坛》，2002年第6期；

103. 《政府采购法重视对供应商权益的保护》，《中国政府采购》，2002年第6期；

104. 《修改公司法的指导思想》，《中国社会科学院院报》，2002年12月1日；

105. 《中国加入世贸组织后公司法的修改前瞻》，《中国法学》，2002年第6期；后载入《商法论文选萃》，中国法制出版社，2004年；

106. 《投资基金立法若干争议问题研究》，《中国证券报》2002年3月29日第12版，中国人民大学复印资料《经济法学、劳动法学》2002年第6期转载；

107. 《挑战股东利益最大化——美国近年非股东利害关系人立法研究》，《国际贸易》，2002年第7期；中国人民大学复印报刊资料《民商法学》2002年第10期转载；

108. 《资本与知本最佳组合：建立有限合伙制度解析》，《国际贸易》，2002年第2期；

109. 《正当竞争应鼓励》（专访），《人民日报》，2002年7月15日；

110. 《市场化成熟度标杆——我国投资基金立法若干争议问题研究》，《国际贸易》，2001年第9期；

111. 《民主管理公司——欧盟职工参加公司机关制度的立法过程》,《国际贸易》,2001年第 7 期;

112. 《加入 WTO 后,政府干预市场经济走向法治化势在必行》,《中国工商管理研究》,2001 年第 12 期;

113. 《国有企业公司制改革的法律思考》,《中国法学》,2000 年第 1 期(笔名"刘股东");

114. 《中华人民共和国投资基金法学者建议稿》,《民商法论丛》第 14 卷,2000 年;

115. 《论社会权的保护及〈经社文公约〉在中国的未来实施》,《经济、社会和文化权利国际公约研究》,刘海年主编,中国法制出版社,2000 年;

116. 《医患纠纷解决机制的公开化与公正化》,《中国工商管理研究》,2000 年第 3 期。

117. 《入世后中国经济立法的完善》,《经济时刊》,2000 年第 1 期;

118. 《论商事打假行为》,《中国工商管理研究》,2000 年第 4 期。该文于 2001 年 3 月荣获国家工商局、中国工商管理学会和中国消费者协会主办的"12315"面向 21 世纪消费者权益保护征文一等奖;

119. 《依法推进费改税》,《经济与法》,1999 年第 3 期;

120. 《职工参与公司机关制度的比较研究》,《商事法论集》第 3 卷,王保树主编,法律出版社,1999 年;

121. 《论投资基金法律关系中的当事人》,《法学杂志》,1999 年第 1 期;

122. 《金融危机的法律防范》,《中国法学》,1999 年第 2 期;转载于中国人民大学复印报刊资料《经济法学、劳动法学》,1999 年第 6 期;

123. 《政府干预市场经济必须走向法治化》,《特区理论与实践》,1999 年第 2 期;并在《改革内参》第 9 期、第 10 期、第 11 期和第 12 期全文刊登;后载入《面向 21 世纪的思考:中国经济体制改革和对外开放 20 周年回顾与前瞻.》,王洛林主编,中国社会科学出版社,1999 年;《依法治国与廉政建设》,刘海年等主编,中国法制出版社,1999 年;

124. 《政府干预市场经济的法律形式》,《企业改革与管理》,1999 年第 3 期;

125. 《这样的"联手"有违法律》,《民主与法制》,1999 年第 10 期;

126. 《我国应允许设立一人公司》,《民主与法制》半月刊,1999 年第 14 期;

127. 《股民状告证券商侵权案件的法律启示》,《国际商报》,1999 年 7 月 26 日第 7 版;并被法律之星网站 1999 年 8 月 11 日法制论坛转载(http://www.lawstar.com.cn);

128. 《加强农村社会稳定的若干法律对策》,《法学杂志》,1998 年第 4 期;

129. 《政府干预市场经济应限制在五个法律层次》,《中国社会科学院要报——领导参阅》,1998 年第 22 期;

130. 《建议尽快纠正对〈联合国民事权利和政治权利公约〉中"民事权利"的不准确译法》,《中国社会科学院要报--信息专报》1997 年第 63 期。该文被钱其琛副总理批阅,获中国社会科学院(省部级)优秀信息奖。

131. 《论股东的代表诉讼提起权》,《商事法论集》,第 1 卷,法律出版社,1997 年 1 月第 1 版;

132. 《强化公司的社会责任--建立我国现代企业制度的一项重要内容》,《商事法论集》,第 2 卷,法律出版社,1997 年 11 月第 1 版;

133. 《商法学研究述评》,《法学研究》,1997 年第 1 期;

134. 《论股份有限公司股东权的保护》,《中国社会科学院研究生院博士文萃》(1993~1995),中国社会科学院研究生院学位办公室编,中国社会科学出版社,1997 年。

135. 《建议尽快纠正对〈联合国民事权利和政治权利公约〉中"民事权利"的不准确译法》,《中国社会科学院要报--信息专报》,1997 年 7 月 30 日,第 63 期。1998 年 2 月获中国社会科学院优秀信息奖;

136. 《我国签署〈国际经济、社会和文化权利公约〉应当注意的若干问题》,《中国社会科学院要报—信息专报》,1997 年 10 月 12 日,第 83 期;

137. 《人权对社会和经济发展的要求》(A・艾德著),译文,2 万字,《外国法译评》,1997 年第 4 期;

138. 《论政府与人民的法律角色定位》,《法学评论》,1996 年第 1 期;后载于《依法治国,建设社会主义法治国家》,刘海年主编,中国法制出版社,1996 年;

139. 《国有企业公司制改革中亟待解决的四个法律问题》,《法学》(沪),1996 年第 3 期;

140. 《走向成熟的中国市场经济法制建设》,《数量经济技术经济研究》,1996 年第 2 期;

141. 《国有企业改建为国有独资公司探讨》,《法制日报》,1996 年 4 月 25 日理论版,转载于中国人民大学复印报刊资料《经济法学、劳动法学》,1996 年第 4 期;

142. 《我国公司法确认股东累积投票权的理论探讨》,《江海学刊》,1996 年第 3 期;

143. 《消费者疑假买假胜诉,经营者知假卖假败诉》,《内蒙古质量技术监督》,1996 年第 6 期;

144. 《论股东权保护的渊源》,《法学杂志》,1996 年第 2 期;

145. 《股东权保护的理论与实践》,《法学》(沪),1995 年第 8 期;

146. 《论不公正的新股发行与股东权的保护》,《河北法学》,1995 年第 6 期;

147. 《论股东的表决权》,《法律科学》,1995 年第 6 期;

148. 《股东权法律保护的理论和实践》,《法学》(沪),1995 年第 8 期;

149. 《我国公司法的特点》,《法学杂志》,1994 年第 2 期;

150. 《股东权模式的内涵与功能》,《中国民营科技与经济》,1994 年第 2 期;

151. 《我国公司法的特点》,《法学杂志》,1994 年第 2 期;

152. 《"两权"分离理论失败,立法应取权利本位》,《内参情况》,中国青年报社编,1994 年 1 月 8 日;

153. 《股份制与合作制不能"捏"在一起》,《内参情况》,中国青年报社编,1994 年 6 月 8 日;

154. 《有关中国公司立法的若干建议》,《中国证券评估杂志》,1993 年第 6 期;

155. 《转换国有大企业经营机制的重要途径》,《法学杂志》,1993 年第 2 期;转载于中国人民大学复印报刊资料《经济法》,1993 年第 4 期;

156. 《关于加强乡镇企业法律机制的研究》,《法学杂志》,1992 年第 1 期;

157. 《论我国农村集体土地所有权和使用权的确认和行使》,《政法论坛》,1991 年第 1 期;

158. 《论我国经济法的目标模式》,《江海学刊》,1988 年第 4 期;转载于中国人民大学复印报刊资料《经济法》,1988 年第 5 期;

159. 《论企业兼并立法的几个基本问题》,《经济与法》,1988 年第 10 期;

160. 《建议尽快制定私人企业法》,《经济与法律》,1987 年第 8 期.


### 三、主持、独立承担或参加的重要科研项目

1. 中国法学会省部级课题《股份公司类别股份制度研究》CLS(2011)C19;

2. 司法部 2009 年度国家法治与法学理论研究项目重点课题《创新市场的国家干预法律机制研究》(09SFB1007);

3. 教育部 2009 年人文社会科学重点研究基地重大项目《金融危机背景下的我国公司法现代化研究》(2009JJD820009);

4. 教育部 2009 年哲学社会科学研究青年课题《私募股权基金法律制度研究》

（08JJD820178 7）；

5. 教育部 2008 年新世纪优秀人才支持计划《弘扬股权文化，完善证券投资者权益保护制度》；

6. 中国人民大学 985 课题《完善我国间接持有模式下证券投资者权益保护制度研究》主持人（2008 年）；

7. 住友财团 2008 年度亚洲地区日本研究资助计划课题《中国公司赴日本上市的法律问题研究》主持人（2009 年 3 月至 2010 年 3 月）；

8. 国家社会科学基金项目《规范、健全、发展资本市场的法律问题研究》（05CFX013）课题主持人。2009 年 3 月 12 日，该课题成果被全国哲学社会科学规划办公室鉴定为优秀成果；

9. 中国社会科学院重点研究项目《中国社会法基本理论研究》课题主持人；

10. 独立承担中欧高等教育合作项目资助的研究项目《欧盟公司法及其对中国建立现代企业制度的启示》；

11. 独立承担中国社会科学院青年基金项目《公司集团法律制度研究》；

12. 独立承担深圳证券交易所委托的课题《证券交易所法律地位比较研究》；

13. 受国家计委宏观经济研究院之邀，参加国家社会科学基金重点项目《企业并购重组与国有资产优化机制研究》，负责撰写《企业并购重组的法律监管体系》部分；

14. 国家社会科学基金项目《经济法原理》课题组成员；

15. 国家社会科学基金重点项目《金融危机的法律防范》课题组成员；

16. 科技部与国务院发展研究中心《高科技企业股权激励机制研究》课题组成员；

17. 国家工商行政管理总局与中国工商行政管理学会《工商行政管理对电子商务秩序的有效监管研究》课题组成员；

18. 联合国开发计划署（UNDP）《中国公司治理改革研究》课题组成员；

19. 中国证监会与上海证券交易所委托的《证券市场中的诚信体系研究》课题组成员；

20. 商务部《WTO 政府采购协定》专家研究组成员；

21. 亚洲开发银行（ADB）《中国公共债务管理研究项目》法律咨询专家；

22. 最高人民法院 2005 年重点调研课题《关于股权转让纠纷的调研》课题组成员；

23. 福特基金会赞助的《中国与经济全球化》课题组成员；

24. 公安部经济犯罪侦察局委托的《证券执法合作机制研究》（2006 年至 2007 年）课题主持人。

**四、国家经济立法和政策研究活动**

1. 2004 年至 2005 年，作为核心咨询专家多次参加全国人大法工委举行的《公司法》和《证券法》修改专家座谈会，并提出立法建议，很多建议被采纳；

2. 2005 年 11 月 23 日，参加国务院法制办与国家工商总局《公司登记管理条例》的修改专家座谈会，并提出立法建议；

3. 2006 年 2 月 26 日，参加国务院法制办与国家工商总局《外国公司分支机构在中国从事生产经营活动管理条例》的修改专家座谈会，并提出立法建议。

4. 应全国整顿和规范市场经济秩序领导小组办公室之邀，于 2003 年 3 月 31 日参加由吴仪副总理主持的《全国整顿和规范市场经济秩序专家座谈会》，并提交书面研究报告，主张进一步发挥社会公众在整顿和规范市场经济秩序、建立社会信用体系中的主动性和积极作用。

5. 应全国政协社会与法制委员会之邀，于 2003 年 7 月 11 日向全国政协常委会作了《完善非公有制经济健康发展的法律环境》的专题发言，就非公有制经济发展面临的立法、执法

和司法难点问题发表学术见解，认为公司法、证券法与证券市场既要为国企改革和发展服务，也要为非公有制经济健康发展服务。这些观点受到全国政协主席贾庆林同志的高度评价。

6. 作为《证券投资基金法》起草工作小组成员，提交了《投资基金法学者建议稿》，计 3 万字。其中多项建议被 2003 年通过的《证券投资基金法》采纳。

7. 为《政府采购法》起草工作小组成员，提出了"要强调保护供应商权益"、"政府采购合同不是行政合同，而是特殊民事合同"等观点，被 2002 年 6 月颁布的《政府采购法》采纳。

8. 自 2002 年开始，担任全国人大财经委《合伙企业法》修改工作小组成员；

9. 受国家经贸委委托，于 1995 年 11 月起草了《中华人民共和国国有独资公司条例草案》试拟稿，并作为主笔起草了第一稿和第二稿，1·2 万字；

10. 受原国家计委之邀，作为《固定资产投资法》起草小组成员于 1988 年参与起草《固定资产投资法》；

11. 对《证券法》、《食品卫生法》、《统计法》和《反倾销条例》等草案提出立法建议；

12. 受深圳经济特区人大常委会法工委委托，于 1998 年独立撰写了《深圳经济特区独资企业条例（草案）》的起草大纲，并参加撰写《深圳经济特区商人条例（草案）》。该条例于 1999 年颁布；

13. 独立起草了《中华人民共和国公司法修改学者建议稿》（中英文对照），该建议稿与《推进国有企业公司制改革的法学思考》一文系王家福与胡康生主持的国家重大项目《邓小平法制思想与社会主义市场经济法律问题》的子课题；

14. 应国家工商总局之邀，于 2004 年 1 月 12 日参加《关于处理侵害消费者权益行为的若干规定》的专家论证会，并提出修改建议。该规定已发布实施；

15. 国务院西部开发办公室《西部开发促进法草案》起草小组咨询专家；

16. 应信息产业部之邀，于 2004 年 1 月 17 日参加《电信卡管理有关问题专家咨询会》，并提出政策建议；

17. 应商务部之邀，于 2003 年 10 月参加《成品油市场管理条例》（修改稿）的专家论证会，并提出修改建议；

18. 应中国银监会与国务院法制办之邀，于 2003 年 6 月参加《银行业监督管理法草案》、《商业银行法修改稿》的专家论证会，并提出修改建议；

19. 应财政部之邀，于 2004 年 9 月参加《政府采购法实施条例》的专家论证会，并提出修改建议；

20. 应中国银监会之邀，于 2004 年 8 月参加《集合资金信托业务信息披露暂行规定》和《信托投资公司信息披露管理暂行办法》的专家论证会，并提出修改建议；

21. 应国务院法制办之邀，于 2005 年 7 月参加《电信法草案》专家论证会，并提出修改建议；

22. 应全国政协社会与法制委员会之邀，于 2005 年 4 月 13 日出席全国政协社会与法制委员会"法制建设在构建社会主义和谐社会中的作用"专题座谈会。

23. 应全国政协社会与法制委员会之邀，于 2005 年 5 月 30 日出席全国政协社会与法制委员会与中国社会科学院联合举办的"统筹经济社会发展"研讨会，提交《加强与繁荣社会法研究，构建社会主义和谐社会》的论文。

24. 应中国证监会之邀，于 2003 年 12 月 4 日参加"完善关联董事回避制度"专家研讨会，并发表专家建议；

25. 应中国证监会之邀，于 2004 年 5 月 21 日参加"客户交易结算资金权利性质"专家研讨会，并发表专家建议，主张客户交易结算资金的性质是信托财产；

26. 应中国证监会之邀，于 2005 年 8 月 25 日在北京富凯大厦 A 座 1928 室参加由原中国证监会主席尚福林主持的"《上市公司股权分置改革管理办法》专家座谈会"，并就公众股东权益保护发表专家意见。其他七位专家包括吴晓求、华生、刘纪鹏、林义相、李振宁、左晓蕾与王保树。http://news.xinhuanet.com/stock/2005-08/26/content_3405315.htm；http://finance.people.com.cn/BIG5/1041/3645876.html

27. 2006 年 6 月 28 日，出席国务院西部开发办公室主办的"西部开发促进法中－加国际研讨会"，并作主题发言。

28. 2007 年 1 月 22 日，作为第五届"全国十大杰出青年法学家"受到周永康同志的亲切接见，并向周永康同志和其他中央领导汇报了"发展与规范并重、公平与效率兼顾、向弱势群体适度倾斜"等法治新思维。

29. 2007 年 5 月 16 日，出席财政部"完善政府采购法律制度"专家座谈会"，并就完善政府采购支持经济社会发展的制度措施，充分发挥政府采购政策功能发表了专家意见。认为，政府采购法既具有节约采购资金、培育政府采购市场的经济功能、遏制腐败的政治功能，也具有推动社会和谐发展的政策功能，主张进一步重视社会政策的立法价值目标。

30. 2007 年 6 月 19 日，出席国家食品药品监督管理局局长邵明立主持的"药品安全责任体系理论研讨会"，并以《建立消费者友好型的药品安全问责体系》为题作了专题发言。呼吁有关监管部门建立信息共享、快捷高效、无缝对接的联动监管机制，切实扭转地方政府的地方保护主义和消极监管现象。还建议国家食品药品监督管理局出台《制药企业社会责任导则》，强化制药企业的社会责任。

31. 2007 年 6 月 28 日，出席中国工商学会举办的"工商行政管理改革与发展高层论坛"，并发表了《建设服务型法治工商》的演讲。指出，工商行政管理机关的改革和创新要瞄准服务型角色定位。认为工商行政管理机关的首要服务就是尊重型服务，工商行政管理机关要充分尊重企业 的首创精神，放松不必要的经营范围管制和股权出资限制；要提供规范快捷的市场准入服务，取消工商行政管理机关基于行政自由裁量权而设定的不必要门槛；要提 供保护型服务，切实维护交易安全、交易公正、交易迅捷和竞争公平；要提供行政指导服务，对企业和消费者提供必要的善意提醒。还就打造法治工商的六大原则进行了阐述。

32. 2007 年 11 月 20 日至 21 日，出席全国人大财经委在昆明召开的经济立法规划座谈会，并以《落实科学发展观，完善商事立法》为题作了专题发言。他认为，完善商事立法是完善社会主义市场经济体制的需要，是增强民族经济竞争力的需要，是落实依法治国方 略的需要，是构建和谐社会的需要。主张进一步提高商事立法质量，重视商事立法的统一性、逻辑性、民主性、前瞻性、竞争性和可诉性。建议立法机关根据科学发 展观的要求，对现行立法文件中有碍公正义价值的条款进行彻底清理，该废止的，坚决废止。他还对制定商事登记法、推进外资企业法与公司法并轨等问题发表了意见。

33. 2008 年 1 月 25 日，出席最高人民法院民二庭与商务部条法司、日本国际协力机构中国事务所在宁波召开的"公司诉讼以及公司纠纷案件非诉程序研讨会"。指出，在公司法司法解释中建立健全公司决议瑕疵救济机制对于维护股东权利、完善公司治理具有重要意义。司法解释既要强调人民法院旗帜鲜明地保护股东的诉权，也要设计相应的股东滥权防弊措施；既要增强司法解释的可操作性，又要兼顾法院的自由裁量权；既要注重公司决策效率，又要遵守交易安全的法律底线。

34. 2008 年 3 月 17 日，出席全国人大法工委组织的"《国有资产法(草案)》专家研讨会"，主张《国有资产法》的主要立法任务是确认和保护国家股东权。建议将国有资产界定为国家对企业出资后形成的股东权益，包括参与重大决策、选 择管理者以及分取利润等民事权利。至于国家基于公共政策对企业提供的专项拨款主要具有政府采购的性质，不宜由《国有资产法》调整。还就《国有资产法》对二级企业的法律监管等问题发表了意见。

35. 2008 年 4 月 7 日，出席国务院法制办公室与国家工商行政管理总局组织召开的"《外国企业常驻代表机构登记管理条例》"专家论证会，认为我国对外国公司来华设立代表处应当采取允许与鼓励的态度，以扩大我国对外开放的领域，积极推进经济的全球化；同时应当完善公司登记机关与其他相关部门之间的信息共享的合作监管机制，以维护交易安全和社会公共利益。

36. 2008 年 4 月 16 日，出席全国人大常委会法工委召开的"立法规划工作专家座谈会"，并就完善商事经济立法项目发表了专家意见。

37. 2008 年 5 月 5 日，出席中国法学会与中国农业经济法研究会在友谊宾馆联合主办的"《食品安全法草案》"专家研讨会，并发表了修改意见。

38. 2008 年 5 月 22 日至 23 日，出席最高人民法院"《公司法司法解释（三）》和《公司法司法解释（四）》的征求意见座谈会，并发表专家意见。

39. 2008 年 7 月 29 日至 30 日，出席最高人民法院"《公司法司法解释（三）》的征求意见座谈会，并发表专家意见。

40. 2008 年　11 月 25 日上午，出席中欧司法研讨会，并发表了公司社会责任演讲。认为，既要强化发展中国家的供应商的 社会责任，也要强化发达国家的跨国公司的社会责任。为避免劣币驱逐良币的现象，政府应当运用政府采购等手段鼓励公司主动承担社会责任。

41. 2008 年 11 月 26 日，出席由中国证监会举办的"完善资本市场法制建设"专家学者座谈会，并就如何以科学发展观为指导，进一步完善资本市场法制建设，围绕立法工作的思路和重点、执法体制和执法模式的完善以及司法环境的优化等方面发表了意见和建议。

42. 2008 年 12 月 2 日，出席全国总工会举办的"纪念厂务公开推行 10 周年座谈会暨企业民主管理高层论坛"，并宣读会议论文。

43. 2009 年 3 月 18 日，出席国家工商行政管理总局召开的《消费者权益保护法》修订工作座谈会，并发表专家意见。

44. 2009 年 9 月 9 日，出席教育部科技发展中心组织的"高校资产经营公司规范化与一人公司制度"座谈会。认为，鉴于大多数高校资产管理公司是高校作为唯一股东的一人有限责任公司，因此按照一人有限责任公司制度规范高校资产管理公司具有重大现实意 义。建议高校与高校资产公司在机构、人员、资产、财务和业务等方面保持严格的法律界限。从长远看，可以积极探索高校资产管理公司的股权多元化试点。

45. 2009 年 10 月 15 日至 16 日，出席最高人民法院"《公司法司法解释（四）》的征求意见座谈会，并发表专家意见。

46. 2009 年 10 月 29 日，出席全国政协组织召开的"新形势下社会和谐与稳定"研讨会，并在会上做了《构建群众维权友好型的社会环境》的发言。

47. 2009 年 10 月 29 日，出席最高人民法院召开的"关于审理外商投资企业纠纷案件若干问题的规定（一）"的专家座谈会，并发表专家意见。

48. 2009 年 11 月 27 日，出席科技部知识产权事务中心主办的产业技术创新战略联盟审核工作研讨会，并就《联盟组织形式审核专家工作手册》和《协议书范本》的完善发表了意见。主张，产业技术创新战略联盟的主体不应当局限于具有法人资格的企业，还应当囊括方兴未艾的合伙企业（包括有限合伙企业）以及个人独资企业等不具有法人资格的商事组织。并就产业技术创新战略联盟的内部治理结构的制度设计发表了学术见解。

49. 2009 年 12 月 17 日，出席国家工商行政管理总局为贯彻实施《外国企业或者个人在中国境内设立合伙企业管理办法》，研究论证《外商投资合伙企业登记管理规定》而在北京瑞海姆田园度假村召开的专家论证会，并就外商投资合伙企业登记立法得基本原则和具体制度设计等内容发表了修改意见。

50. 2010 年 1 月 14 日，出席国务院国资委召职工董事制度研讨会。认为，建立健全职工董事制度对于完善国有公司治理、提升国有企业的核心竞争力都有积极作用，堪称民主治理工程、企业和谐工程。认为，职工董事 既具有董事的一般性，也具有职工董事的特殊性。职工的实际要对职代会负责，又要有自己的独立专业判断。他还就职工董事的薪酬制度和职工董事的诚信义务发表了专家意见。

51. 2010 年 2 月 3 日，出席民政部《基金会管理条例》修订征求意见座谈会，并从服务型政府和法治型政府的立法理念，基金会的设立与治理的制度设计，以及立法技术等方面就《基金会管理条例》修订稿发表了专家意见。

52. 2010 年 4 月 21 日，出席国家工商局外商投资企业注册局召开的外资合伙立法效果评估座谈会，就《外国企业或者个人在中国境内设立合伙企业管理办法》和《外商投资合伙企业登记管理规定》的贯彻实施效果及存在的主要问题，发表了意见。他主张加大外资合伙制度对外宣传力度，进一步改革外汇管理 制度，推动外资合伙制度的顺利实施。

53. 2010 年 4 月 22 日上午， 出席国家工商局企业注册局召开的"公司合并分立登记程序研讨会"。认为，在公司合并与公司分立登记实践 中，无论先行办理注销或变更登记，还是先行办理新公司设立登记手续，都存在不确定的法律风险。他建议公司登记机关通过纵向授权或者横向委托的方式确定由一 家公司登记机关统一负责公司合并或分立的登记手续。他还就公司合并分立后的注册资本与实收资本的核定、分公司及其持有其他公司股权归属的变更、公司合并分 立等几种异议股东权利的法律保护等问题发表了意见。

54. 2010 年 12 月 7 日，出席中国注册会计师协会《特殊普通合伙会计师事务所协议范本(草稿)》专题研讨会，并担任特殊普通合伙会计师事务所改制研究咨询工作组组副组长。

55. 2011 年 3 月 31 日，出席国家旅游局举办的旅游立法座谈会。并就《旅游法草案》中的旅游者的权利与义务发表了专家意见。主张将旅游者改称旅游消费者，并从安全保障权、知情权、选择权和隐私权等多角度规定旅游消费者的权利。

56. 2011 年 4 月 28 日，出席中共中央办公厅秘书局举办的食品安全监管座谈会，并就完善法律责任追究机制、贯彻执行《食品安全法》发表了自己的学术见解。

57. 2011 年 5 月 17 日，应邀出席中纪委举办的"违纪股票处置问题"座谈会，并就违法违纪行为人违纪取得的股票的变现问题发表了专家意见。

58. 2011 年 5 月 25 日，出席中注协 "会计师事务所多元化经营" 座谈会。就会计事 务所的混业经营、会计师事务所由公司制改为特殊普通合伙的组织架构和治理结构等问题发表了专家意见。

59. 211 年 6 月 3 日，赴深圳出席交易制度创新研讨会，并就《交易的本质和市场的界定》发表了专题演讲。

60. 2011 年 6 月 13 日，应邀出席国务院国资委组织的"国家与国有企业法律关系"研讨会，就国家股东与国有企业之间的法 律法律关系发表了专家意见，并就国外某法院管辖的国外某公司诉我国某国有企业和中华人民共和国的民事诉讼案件中国家享有豁免权的法律问题起草了专家证词。

61. 2011 年 6 月 15 日应邀出席国家工商总局《互联网广告管理办法》课题座谈会，欣然接受了国家工商总局委托的《互联网广告管理办法草案及其立法理由书》课题，并就《互联网广告管理办法》起草的指导思想和课题的研究思路发表了专家意见。

62. 2011 年 6 月 27 日至 28 日，应邀出席最高人民法院融资租赁司法解释专家座谈会，并就融资租赁司法解释征求意见稿发表了专家意见。

63. 2011 年 7 月 6 日至 7 日，应邀出席中国银监会《银行业金融机构破产条例》专家论证会，并就该条例的立法名称、调整对象和制度设计发表了重要的学术观点。

64. 2011 年 7 月 12 日，作为专家组副组长应邀出席了由商务部主办的《网络零售管理办法》起草专家论证会，并就电子商务领域的消费者权益保护等问题的制度设计发表了专家意见。

65. 2011 年 7 月 14 日，应邀出席了全国总工会法律顾问委员会会议，并就鼓励职工持股、健全职工董事制度和职工监事制度等问题法律专家意见。

66. 2011 年 8 月 7 日，应邀出席国家广电总局委托中国国际工程咨询公司召开的国家有线电视网络公司组建专家论证会，就广播电视集成播控中心与国家有线电视网络公司之间的法律关系的梳理发表了专家意见。

67. 2011 年 8 月 24 日，刘俊海教授应邀出席《经济日报》"加强商业诚信建设座谈会"，并发表专家意见。他认为，加强商业诚信建设对于完善社会主义市场经济体制，提升企业的核心竞争力，推进市场经济法治化建设具有重大现实意义，并从完善诚信数据库建设、提高失信成本、降低维权成本等方面 提出了对策性建议。

68. 应最高人民法院之邀，先后参加了《最高人民法院关于审理证券市场虚假陈述民事赔偿案件的若干规定》、《婚姻法司法解释》（二）、《公司法司法解释（一）、（二）、（三）》、《关于审理外商投资企业纠纷案件若干问题的规定（一）》、《关于审理金融市场上委托理财类合同纠纷案件的若干规定征求意见稿》、《最高人民法院关于审理涉及企业法人解散案件若干问题的规定草案》、《关于证券公司破产时股民保证金是否应当优先取回的案件的法律适用问题》、《注册会计师虚假陈述民事责任的司法解释》等民商法领域重要司法解释和重大疑难案件的专家论证会，并发表专家意见。

**五、国际以及港澳台地区的学术交流**

1. 自 1996 年以来，多次赴美国、荷兰、德国、芬兰、新西兰、日本、新加坡、马来西亚、泰国、越南等国和我国港澳台地区出席学术研讨会，提交英语论文并发表英语演讲。

2. 1996 年 11 月至 1997 年 11 月，赴挪威奥斯陆大学从事博士后研究，研究课题为公司的社会责任；

3. 1998 年 9 月，受欧盟资助赴荷兰阿姆斯特丹大学法学院从事访问研究，研究课题为欧盟公司法；

4. 2000 年 1 月至 2001 年 5 月，受美中学术交流委员会资助，赴美国密西根大学和堪萨斯大学作访问学者，研究课题为美国公司法；

5. 1998 年 12 月赴香港参加"第四届亚太经济法论坛年会"，提交《强化公司董事责任的若干思路》（英文）。

6. 1999 年 5 月赴德国波恩大学参加"中国、印度与俄罗斯的管理与发展国际学术研讨会"，提交《论中国的法制改革》（英文）。

7. 2000 年，译著《欧盟公司法指令全译》由法律出版社出版；

8. 2000 年，为美国罗伯特·汉米尔顿（Robert W. Hamilton）所著的《公司法》(*The Law of Corporations*, Fourth Edition, 1996) 作注，中国人民大学出版社，2001nian1 出版。

9. 2001 年 11 月赴泰国曼谷参加"东南亚地区的非诉讼争议解决方式国际学术研讨会"，提交论文《中国的非诉讼争议解决机制》（英文）。

10. 受德国技术合作公司委托翻译了《政府采购法草案》(2001 年 8 月 8 日征求意见稿)。

11. 2002 年 4 月赴马来西亚吉隆坡参加"亚洲公司治理国际学术研讨会"，提交论文《论中国公司治理》（英文）。

12. 2002 年 10 月赴日本东京参加"亚洲社会发展与法律改革国际学术研讨会"，提交论文《论中国加入世贸组织后法院在解决民商纠纷中的作用》（英文）。

13. 2003 年 7 月，应邀赴我国台湾地区参加韩忠谟教授基金会主办的《两岸公司法学术研讨会》，就《股东的账簿查阅权》与《中国大陆的有限合伙制度》发表了演讲；

14. 2004 年，主译的《法律的未来：信息技术对法律的挑战》一书由法律出版社出版；

15. 2004 年 9 月 19 日至 23 日赴越南河内参加 UNDP 的"国际学术研讨会"，提交英语论文《中国公司高管人员的诚信义务的案例分析》。

16. 2004 年 11 月 2 日至 9 日赴芬兰参加 "中芬破产法研讨会"，并发表英语演讲《中国破产法的争议问题》。

17. 2005 年 3 月 14 日至 17 日赴新加坡参加 "亚洲银行家高峰会"，并发表英语演讲《中国上市公司治理与公司法改革》。

18. 2007 年 2 月 22 日至 24 日赴日本参加同志社大学主办的 "中日韩现代公司法新课题"国际研讨会，并发表演讲《中国新公司法框架下控制股东的诚信义务》。

19. 2007 年 3 月 30 日，出席由 OECD（国际经合组织）和上海证券交易所在上海共同举办的"中国公司治理政策对话会"。指出，中外各国公司治理相比既具有个性，也有共性，但总体而言共性多于个性。各国公司治理都要解决大小股东之间、股东与经营者之间以及公司内部人 与公司外部人之间的利益冲突。认为，良好的公司治理应当具有透明度、民主性、和谐性，弘扬股权价值，强化社会责任。

20. 2007 年 5 月 28 日，应邀赴我国澳门地区参加澳门特别行政区法律改革办公室主办的《修订商法典工作坊》，就《公司治理制度与实务》发表了演讲。

21. 2007 年 6 月 7 日，出席由国务院发展研究中心与韩国开发研究院在北京饭店共同举办的"结构调整与经济变革背景下的国家政策与企业战略中韩企业研讨会，并发表了题为《中国企业法制环境改革和对内外资企业的影响》的主题学术演讲。着重介绍和评论了中国新《公司法》在鼓励投资兴业、优化公司治理以及保护中小股东权益等方面的积极作用。在谈到新公司法大幅下调最低注册资本、 废除转投资限制的积极作用时，提醒投资者谨记扁平化的投资智慧，避免投资链条过长导致的失败公司家族。

22. 2007 年 6 月 29 日，出席联合国开发计划署（UNDP）与中国企业联合会联合举办的"二00七企业社会责任在中国"国际论坛，并以《强化公司社会责任、构建和谐经营环境》为题发表演讲。

23. 2007 年 7 月至 8 月，应邀赴新西兰维多利亚大学法学院担任访问教授，用英语讲授中国公司法；

24. 2007 年 10 月 1 日至 4 日，刘俊海教授应邀出席了新加坡腾福律师事务所举办的"2007 年中国公司与税收研讨会"，并发表了题为《中国公司治理制度与董事责任》、《中国新公司法的制度创新》的学术演讲；

25. 2007 年 10 月 19 日，出席由司法部和法国驻华使馆共同举办的中法"法律安全为经济发展服务"研讨会，并在"困境中的企业"单元发表了题为"中国公司重整制度的创新"的学术演讲。他介绍了中国公司重整制度的设计理念，并就公司重整程序的启动主体、公司重整计划的 通过与批准、公司重整计划执行的监督等制度在操作层面存在的争点问题进行了探讨。认为，中国公司重整制度与法国的公司保护法具有异曲同工之妙。

26. 2009 年 7 月至 8 月，应邀赴美国威斯辛大学法学院作访问研究；

27. 2010 年 1 月 24 日至 28 日，应邀赴密西根大学法学院与商学院作公司法专题讲座；

28. 2010 年 5 月 4 日至 7 日，应邀出席了新加坡腾福律师事务所举办的中国公司法研讨会，并发表了题为《中小股东权利保护》的学术演讲；

29. 2010 年 6 月 24 日至 27 日，出席弗莱堡大学东亚法研究所举办的国际研讨会，并发表了《董事的勤勉义务与股东代表诉讼》的英语论文，并回答了听众提问。

30. 2007 年，主持翻译的牛津大学出版社出版的六国公司法专家联袂撰写的《公司法剖析》一书已由北京大学出版社出版；

31. 乌克兰《公司所有权与控制》(Corporate Ownership and Control)杂志编委。

32. 2011 年 10 月 10 日，刘俊海教授应密西根大学法学院之邀，做《中国走出去战略以及美国企业必须了解的中国公司治理和公司法》（"China's "Going Out" Strategy: What US Companies Need to Know About Chinese Corporate Governance & Corporate Law）。演讲会由著名美国商法专家麦克--巴尔教授主持。巴尔教授曾于 2009 年至 2010 年担任美国财政部副部长，是《多得--弗兰克华尔街改革与消费者保护法》的主要设计师。
http://www.law.umich.edu/workshopsandsymposia/intlworkshopseries/archive/Pages/f2011schedule.aspx;http://web.law.umich.edu/LawEvents/EventDetails.aspx?EventID=22755;http://ur.umich.edu/events/events.php?se=26655。演讲实录链接：
http://web.law.umich.edu/flashmedia/public/Default.aspx?mediaid=1743

33. 2011 年 11 月 11 日至 14 日，出席中国法学会、香港城市大学与香港法律论坛联合在香港举办的第三届"内地与港澳台地区法律研讨会：食品监管法治论坛"，并提交了论文《加强食品安全监管的若干建议》。会后作为主要起草人向中央上报了论坛综述和改革建议。

34. 2011 年 12 月 2 日至 5 日，赴日本东京出席由日本一桥大学、中国人民大学与韩国釜山大学联合主办的"第五届东亚法治论坛：东亚企业结合法制国际研讨会"，并提交了《中国公司并购过程中的中小股东的权利保护》。

35. 2012 年 2 月 6 日中午，在美国哥伦比亚大学法学院做《中国小股东权利保护》的专题演讲。http://www.law.columbia.edu/center_program/chinese。演讲录音网址为：
http://media.law.columbia.edu/CCLS/Liu_Junhai_Talk_120206.mp3

36. 2012 年 2 月 6 日下午，在美国哥伦比亚大学法学院做《全球视野下的中国国企的公司治理》的专题演讲。

37. 2012 年 2 月 7 日上午，在美国佛德姆（Fordham）大学法学院做《公司治理：理论与实践》的专题演讲。

38. 2012 年 2 月 11 日，在美国密歇根大学罗斯商学院主办的第 22 届"亚洲商业会议"上发表题为《公司治理与政府放松管制》的演讲。

39. 2012 年 3 月 19 日和 20 日，应美国密歇根大学法学院的邀请，为麦克--巴尔教授（Michael Barr）教授主持的《国际金融》课程讲授《中国金融监管》专题。
http://www.chinacapitallaw.com/article/default.asp?id=8833

40. 2012 年 3 月 29 日，应美国密西根大学中国研究中心和 Erb 全球可持续企业研究所的邀请，在密西根大学商学院作了题为《全球化与在华经营的跨国公司的社会责任要求》的专题演讲。
http://www.chinacapitallaw.com/announce/default.asp?id=119；
http://www.chinacapitallaw.com/article/default.asp?id=8884

## 六、其他商法学术活动

在中国社会科学院法学所与中国人民大学法学院指导法学博士、法学硕士和法律硕士研究生论文百余篇，并多次应邀在北京大学、清华大学和中国政法大学参加博士生论文答辩。

多次为各级党委和政府宣讲公司法和证券法。从 2006 年到 2008 年，先后三次参加中宣部、中央政法委、司法部和中国法学会组织的"百名法学家百场报告会"活动。2006 年 9 月 26 日，前往昆明，为云南省直机关作"落实科学发展观，完善市场经济法治"的法制讲座。2008 年 5 月 23 日，前往北京，为中央和北京市国有企业作"法制建设与社会主义市场经济体制完善"的法制讲座。2008 年 7 月 2 日，前往福建泉州，为泉州市委和市政府作"优化非公经济健康发展的法治环境"的法制讲座。1999 年 11 月，先后应邀给山西省委与省政府、河南省人民政府等部门作《国有企业公司制改革的法律问题》的学术报告。2008 年 4 月 18 日，为国家工商行政管理总局企业注册局作股权出资的学术讲座。

多次参加最高人民法院司法解释（包括但不限于《公司法司法解释》（一）、（二）和（三），）

的专家论证会，并应邀就最高人民法院审理中遇到的疑难法律案件（包括民事、商事和行政案件）发表专家意见。

多次为法院系统宣讲公司法和证券法。自1998年以来，作为国家法官学院兼职教授，数十次在国家法官学院为来自全国各级人民法院的院长、庭长和审判员讲授《公司法》和《证券法》，受到好评。自1998年开始，先后赴北京、上海、天津、广东、山东、重庆、福建、河南、浙江等高级人民法院作公司法审判实务的演讲，并为北京市第一中级人民法院、福州市中级人民法院和包头市中级人民法院等中级人民法院授课。

多次为仲裁机构讲授公司法和仲裁员的裁判思维。2005年12月与2006年5月，两次应邀给中国国际贸易仲裁委员会讲授新公司法对仲裁实务的影响。多次在北京仲裁委员会做公司法专题讲座，并长期为新任仲裁员讲授《仲裁文书的写作规范与仲裁员的裁判思维》。2008年3月27日下午，为北京仲裁委员会组织的2008年第三期仲裁沙龙作《公司争讼的裁判思维》的演讲。2008年8月28日，为北京仲裁委员会2008年第八期仲裁沙龙作了题为《有限责任公司股权转让纠纷案件的前沿问题》的专题演讲。2011年6月23日上午，应邀赴呼和浩特仲裁委员会，做了《公司法实践中的前沿问题》的学术讲座。

多次为律师界做公司法与证券法专题讲座。多次应全国律协、北京市律协、南京市律协、重庆市律协、贵州省律协、江西省律协等律师协会的邀请，为广大律师讲授公司法专题讲座。2007年9月1日至2日，出席由中华全国律师协会和宁夏回族自治区人民政府主办的第七届中国律师论坛，并就广大律师关注的娃哈哈—达能之争的法律关系以及企业法律风险的防范发表了演讲。认为，法律不仅是斗争和诉讼的艺术，更是构建和谐、走向合作的艺术。主张律师界和企业界应当认真研究娃哈哈—达能这一标本案例，进而萃取出鼓励投资兴业、拓展律师服务领域的法律"营养素"。

多次为大型国有企业和民营企业宣讲公司法。多次为国务院国资委、广东省国资委、北京市国资委举办的国有企业高管讲授公司法和证券法，并多次为中国银行、中国工商银行、中央汇金公司、国家电网、华能集团、华北电网、内蒙古电力公司、中国电信、五矿集团、光大集团、粤海集团、中诚信托等大型国有企业讲授公司法。并多次为长江商学院和国务院发展研究中心企业所与美国斯坦福大学举办的"企业新领袖培训项目"讲授商法和公司法。多次为国家和地方工商行政管理部门和中国消费者协会等组织的企业家培训讲授公司的社会责任方略。

自1998年以来，还应邀到北京大学、清华大学、中国人民大学、中国政法大学、中国社会科学院研究生院、对外经济贸易大学、中央财政金融大学、北京工商大学、首都经贸大学、中央民族大学、北方工业大学、南京大学、华东政法大学、华东交通大学、西南政法大学、四川大学、河北大学、深圳大学、华南师范大学、西南科技大学、西南财经大学、福州大学、西北民族学院、大连海事大学、内蒙古大学等高等院校作商法学术讲座。

多次应中国证监会邀请，为中国证监会党校讲授《公司法》与《证券法》等课程。多次为深圳证券交易所讲授《公司治理中的法律问题》。

密切跟踪新兴商法问题，并结合商法基本理论，多次向新华社、中央电视台、人民日报、法制日报、光明日报、中国日报（China Daily）、中国证券报、财经时报、中国青年报、经济参考报、人民法院报、检察日报、中国消费者报、南方周末等大众传媒就重大商法问题发表专家意见，取得了较好的法律效果、学术效果与社会效果。

七、代表性学术著作

1、论文《中国加入世贸组织后公司法的修改前瞻》，《中国法学》，2002年第6期

公司法的修改是十届人大期间的重要立法项目。公司法在立法技术上和制度设计上何去

何从，是大改、中改，还是小改；公司法与外商投资企业法是否需要并轨；公司自治与政府干预、司法干预的关系如何解决，都值得研究。《中国加入世贸组织后公司法的修改前瞻》一文系统回答了这些问题。他主张全面修改《公司法》，认为新《公司法》应坚持公司的法人性与营利性；承认公司的社会性，确认公司的社会责任；抛弃社团性，承认一人公司。建议立法者更加尊重公司自治、公司自由、公司民主和公司权利，大幅减少国家行政权和国家意志对公司生活的不必要干预；废除公司经营范围制度，重视公司章程和股东协议的效力，对各类公司一律采行登记制为主、审批制为辅的设立原则，允许公司选择法定代表人的一元化或多元化。主张大胆引入授权资本制，改进资本维持原则，放宽对股东出资形式的限制，明确验资机构对债权人和投资者的民事责任，原则上废除法定最低注册资本原则。主张实现外商投资企业立法与公司立法的并轨，赋予外商投资企业国民待遇；法院和仲裁机构应积极受理公司法未作规定或规定不明的公司纠纷案件。其中，一些建议被新《公司法》采纳。

2、论文《金融危机的法律防范》，《中国法学》，1999 年第 2 期

该文从分析金融危机的爆发原因入手，主张从公法与私法（民商法）两个层面上构建防范金融危机的法律机制。指出，政府干预过多过滥，不可能有效地预防和化解金融危机和经济危机，只能加剧和推动危机的爆发；腐败、低效、黑箱行政本身就是金融隐患，过多过滥的审批本身就是金融风险。为防范金融风险，政府干预市场经济的法律形式必须限制在五个层次上：尊重型干预、保护型干预、调控型干预、促成型干预和给付型干预。主张完成全部国有专业银行的公司制改革；对国有独资商业银行和国家控股的商业银行全面推行强制担保贷款制度；及早改变目前过分依赖于商业银行的危险局面，依法鼓励发展直接资本市场；尽快建立公司重整制度，避免公司、企业不必要的破产。2004 年初，党和国家决定将四大国有独资商业银行改制为股份有限公司。可见，作者 5 年之前提出的商业银行进行公司制改革建议具有一定的前瞻性。

3、论文《我国公司法移植独立董事制度的思考》，《政法论坛》，2003 年第 3 期

一文主张要从根本上避免上市公司独立董事与监事会制度叠床架屋，减少监督资源的不必要浪费（如独立董事与监事的薪酬、重复聘请中介机构的费用），应从制度上革除当前独立董事与监事会并存的格局；为使独立董事的声音不被内部董事和关联董事吞没，独立董事应在董事会中占据多数席位，至于独立董事在董事会中占据简单多数（第五种模式），还是绝对多数（第六种模式），都应尊重公司与股东自治，以及市场的自由选择；为确保独立董事对全体股东利益负责，《公司法》应确认独立董事对广大股东的报告和说明义务，打通独立董事与广大股东间的信息沟通渠道。

4、专著《股份有限公司股东权的保护》，法律出版社，1997 年版，2004 年修订版

股东权的保护问题关系到现代企业制度和经济体制改革的成败。《股份有限公司股东权的保护》一书以专题著作形式对此进行了多角度、全方位、系统性的研究，并对我国立法上应如何因应提出了作者的主张和建议。该书详细阐述了股东权与物权、债权的关系，认为股东权既不是物权，也不是债权，而是一种新兴的民事权利。

在比较了物权模式、债权模式和股东权模式等三种国家所制的法律实现方式的基础上，认为股东权模式是国家所有制在投资领域的最佳法律实现方式。作者认为，在国有企业公司制改革过程中应当加强对国家股东权的保护，警惕国有资产流失；建议早日把国家股推向二级流通市场，并慎重选择国家股代理人。为明确国家股东权的法律地位，认为《公司法》第 4 条第 3 款 "公司中的国有资产所有权属于国家" 的规定有欠严谨，应予删除。

鉴于中小股东在公司治理中的弱势地位，作者对于中小股东的权利保护与救济提出了诸多立法建议。针对大股东滥用多数表决权的现象，提出了构建股东诚实义务的学说。为保护中小股东监督和制衡经营者与控制股东的积极性，主张新公司法承认股东代表诉讼提起权，允许中小股东为捍卫公司利益而以自己的名义对违法失信的当事人提起诉讼。针对 1993

年《公司法》只允许股东查阅公司财务会计报告，而不能查阅会计帐簿的缺憾，主张新公司法允许小股东查阅公司会计帐簿，以加大对股东知情权的保护力度。

对于股东权变动的效力，主张公司内部登记生效主义与公司外部登记对抗主义相结合的态度。具体来说，就公司内部关系而言，公司股东名册的变更登记之时视为股权交付、股东身份（股东投资权利、义务、风险和收益）开始转移之时；就公司外部关系而言，公司登记机关的股权变更登记行为具有对抗第三人的效力。

鉴于一人股东很难慎独自律，作者首次在法学界提出对一人公司的股东采取法人格滥用推定的立法态度，推定一人股东对一人公司债务承担连带责任，但允许一人股东举反证推翻。以上立法建议多被 2005 年新《公司法》采纳。书中有关论述还先后被国内外许多学术论文或著作引述。

5、专著《公司的社会责任》，法律出版社，1999 年版

该书首次在我国公司法学界对强化公司社会责任的理论依据、国外公司社会责任运动的理论与实践、强化公司社会责任的立法论和解释论、落实董事躬行公司社会责任的义务、导入社会公开法律机制、强化公司社会责任监督等问题进行了深入探讨。认为，公司不能仅仅以最大限度地为股东们赚钱作为自己的唯一存在目的，应当最大限度地增进股东利益之外的其他所有社会利益，包括职工利益、消费者利益、债权人利益、中小竞争者利益、当地社区利益、环境利益、社会弱者利益及整个社会公共利益等内容。

认为，强化公司社会责任的理论依据在于，公司的经济力量及其推动社会权实现的社会义务。公司社会责任与人权中的社会权紧密相连。对公司的传统概念"公司是以营利为目的的社团法人"提出了质疑，认为既要强调公司的营利性，也要强调公司的社会性；主张董事会决策既要考虑股东利益，也要考虑其他利害关系人的利益；公司既要履行法律意义上的社会责任，也要履行伦理意义上的社会责任。

主张立法规定非股东的社会利益代表参与公司机关，包括职工董事制度、消费者董事制度和环境保护董事制度。为使我国职工参与制度更有实效，建议取消职工监事制度，实行统一的职工董事制度，并将职工董事的具体比例法定化。主张我国立法摒弃只按公司投资者的所有制性质决定职工参与程度的保守态度，改采以公司规模和雇工人数为准。该书出版后，受到国际劳工组织北京代表处、国内学界和有关部门的重视。相关立法建议被 2005 年新《公司法》采纳。

6、译著《欧盟公司法指令全译》，法律出版社，2000 年版

这是国内第一部系统翻译欧盟公司法指令的译著，是国内公司法同行研究欧盟公司法的重要文献资料。其严谨性、准确性受到同行高度评价。对于推动我国公司法学界对于欧盟公司法和中国公司法的比较研究起到了积极的推动作用。

7、独著《新公司法的制度创新：立法争点与解释难点》，法律出版社，2006 年版

作者认为，公司制度是拉动国民经济增长的引擎。如果说宪法是政治生活中的根本大法，是治国安邦的总章程，公司法则是经济生活中的根本大法，是投资兴业的总章程。2005 年 10 月 27 日，全国人大常委会通过的新《公司法》针对 1993 年《公司法》重管制、轻自治，重国有、轻民营，重除弊、轻兴利等弊端，进行了一系列大刀阔斧的改革。作者认为新《公司法》是一部鼓励投资兴业的服务型公司法、鼓励公司自治的市场型公司法、对国有经济与民营经济一视同仁的平等型公司法、债权人友好型的公司法、弘扬股权文化的护权型公司法、优化公司治理的规范型公司法、注重社会责任的人本型公司法、具有可操作性的可诉型公司法。该书结合作者多年研究公司法改革的学术成果及其参与 2005 年新《公司法》修改的过程，对新《公司法》的制度创新在立法层面的争点问题和操作层面的解释难题进行了深入剖析和权威诠释。

8、译著《公司法剖析：比较与功能的视角》，北京大学出版社，2007 年版

本书是对公司法领域所作的精要分析。作者们的立论前提是各国公司法都要解决以下三大基本代理问题：经营者对股东们的机会主义行为、控制股东对小股东们的机会主义行为以及股东群体对其他公司利益相关者（债权人与雇员）的机会主义行为。各国都必须在纷繁复杂的公司内部关系及其与产品、劳动力、资本与控制权市场的互动关系中解决以上三大问题。作者们的核心观点是，各国的公司形式大同小异；更令人惊讶的是，各国为了解决三大代理问题往往在相同的备选法律策略中作出选择，尽管选择的策略并不雷同。本书阐明了欧洲主要国家、日本和美国如何以及为何在解决特定公司法问题时有时选择了相同的法律策略，而有时则截然相反。在对代理问题和法律策略作了简要概述后，本书探讨了公司的基本治理结构，包括董事会与股东会的权力。接下来，本书探讨了债权人保护措施、关联交易以及公司合并、章程修改等公司重大行为问题。最后，本书分析了友好收购、敌意收购和资本市场规制问题。

10、独著《现代公司法》，法律出版社，2008年第1版，2011年再版。

这是一部体系化的公司法学术著作。该书围绕公司法总论、公司设立、公司自治、公司资本、股东权、有限责任公司的股权转让、股份发行和转让、公司治理、公司债权人的保护、公司重组、公司社会责任、公司债券、公司财务会计制度、国有企业公司制改革、特殊类型公司、公司终止、外国公司与公司争讼等内容进了深入探讨。该书覆盖了公司从设立到终止的生命周期中不可或缺的主要法律制度，并就公司争讼的裁判思维进行了探讨。该书既具有较高的学术研究价值，也有较强的实务指导作用。

11、《现代证券法》，法律出版社，2011年第1版。

该书以证券投资者权益保护为红线，立足中国证券市场的法治实践，围绕证券法总论和证券法各项基本制度进了深入探讨。全书共分证券法总论、证券发行、证券交易、上市公司收购、证券交易所、证券公司、证券登记结算机构、证券服务机构、证券投资基金、公司债券、投资者权益的保护、证券监督管理机构、证券争讼和法律责任等十四章。作者既从解释论入手对我国现行的与证券市场有关的法律、法规、部门规章、证券交易所自治规则进行了梳理和诠释，也从立法论角度对证券法律制度的改革与创新提出了相应的学术建议。纵观全书，内容全面、体系严谨、逻辑清晰，主题鲜明，理论与实践并重，是一部具有较高学术水准的证券法著作。该书具有很强的针对性与立体感，适合证券法的执法、司法担当者、上市公司董事监事高管、证券公司及中介机构从业人员、法律和财经院校师生阅读。

Email: jhliu@cass.org.cn, junhailiu@sohu.com