**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

```
==============================  x  ============================
                                x
IN RE: CHINESE-MANUFACTURED     x  MDL NO. 2047
DRYWALL PRODUCTS LIABILITY      x  SECTION: L
LITIGATION                      x  JUDGE FALLON
==============================  x  MAG. JUDGE WILKINSON
THIS DOCUMENT RELATES TO:       x
 ALL ACTIONS                    x
                                x
==============================  x  ============================
```

**<u>DECLARATION OF PROFESSOR CURTIS J. MILHAUPT</u>**

I, CURTIS J. MILHAUPT, declare as follows:

**INTRODUCTION**

1.    I am the Parker Professor of Comparative Corporate Law, the Director of the Parker School of Foreign and Comparative Law, the Fuyo Professor of Japanese Law, and the Director of the Center for Japanese Legal Studies – all at Columbia Law School. I am also a member of Columbia University's Weatherhead East Asian Institute.

2.    In connection with motions relating to personal jurisdiction in the above-referenced matter, I was invited on behalf of the Plaintiffs' Steering Committee ("PSC") to opine on aspects of corporate governance in Chinese state-owned enterprise ("SOE") business groups under the supervision of the State-owned Assets Supervision and Administration Commission ("SASAC") that have a bearing on the corporate separateness of the defendants named in this litigation.

**QUALIFICATIONS**

3.    At Columbia Law School, I have served as the Parker Professor of Comparative Corporate Law since 2010 and Director of the Parker School of Foreign and Comparative Law since 2013.  I have served as the Fuyo Professor of Japanese Law and the Director of the Center for Japanese Legal Studies since 1999.  I am a member of the American Law Institute and a Fellow of the European Corporate Governance Institute. I have been a law professor for over 20 years, beginning at Washington University in St. Louis in 1994.  My fields of expertise include comparative corporate governance, the corporate and financial aspects of Chinese state capitalism, state-owned enterprises, Japanese law (particularly Japanese corporate law and governance), and law and economic development.  I teach courses on U.S. corporate law,

1

MTD Exhibit #265

comparative corporate law and governance, and Japanese law, and I am developing a course on the legal and policy aspects of state capitalism.

4.     I am a member of the bar of the State of New York. I have a B.A. from the University of Notre Dame (1984) and a J.D. from Columbia Law School (1989), where I served on the *Columbia Law Review*. In addition, I conducted graduate studies in law and international relations at the University of Tokyo (1984-86; 1992-93).  Before entering academia, I was an associate at Shearman & Sterling in New York and Tokyo (1989-1994), where I did transactional corporate work, principally mergers and acquisitions, as well as sovereign debt restructuring and bank regulatory work.

5.     I have served as a visiting professor at numerous law schools, academic institutions and think tanks around the world, including the East China University of Political Science and Law in Shanghai (2014), where I was appointed Distinguished Visiting Professor in the International School of Financial Law, the University of Hong Kong (2007), Tsinghua Law School in Beijing (2006), the University of Tokyo (2012), and the Getulio Vargas Foundation (FGV) Law School in São Paulo (2010). In the United States, from 2008 to 2015 I annually taught a course on comparative corporate law and governance (including a module on state capitalism) at the Duisenberg School of Finance in Amsterdam, where I was twice named Best Teacher in Law and Finance. I have also served as a Visiting Scholar at the Bank of Japan's Institute for Monetary and Economic Studies (1998) and a Research Fellow of the Research Institute of Economy, Trade and Industry, affiliated with Japan's Ministry of Economy, Trade and Industry (2002). In the United States, I have been a visiting professor at the University of California, Berkeley, Boalt Hall School of Law (2006) and UCLA Law School (1997).  I am scheduled to be a visiting professor at Stanford Law School for the 2016-17 academic year.

6.     I have testified before the U.S.-China Economic and Security Review Commission on the policy implications of global Chinese SOE investment and trade activity (February 2012). I have also been informally consulted on related issues by officials from the Commerce Department and the United States Trade Representative, as well as European Union trade officials. I have recently been retained by a foreign stock exchange (not located in China or Hong Kong) to conduct a worldwide examination of best practices in the corporate governance of mixed-ownership enterprises (i.e., enterprises controlled by a government, a portion of whose shares are listed on a stock exchange and owned by private investors).

7.     My curriculum vitae is attached as Exhibit A.  As indicated in my c.v., I have published numerous articles and books on topics related to state-owned enterprises, comparative corporate governance, and state capitalism, and I am regularly invited to speak on these topics at academic and professional meetings.

8.     In particular, I have authored, co-authored or edited several scholarly publications on Chinese SOEs and Chinese state capitalism. I am the co-author (with Li-Wen Lin) of *We are the (National) Champions: Understanding the Mechanisms of State Capitalism in China*, 65 STAN. L. REV. 697 (2013); co-author (with Wentong Zheng) of *Beyond Ownership: State Capitalism and the Chinese Firm*, 103 GEO. L.J. 667 (2015); author of *Chinese Corporate Capitalism in Comparative Context*, in Weitseng Chen ed., THE BEIJING CONSENSUS? HOW HAS CHINA

CHANGED WESTERN IDEAS OF LAW AND DEVELOPMENT, Cambridge University Press (forthcoming) and *Is the US Ready for FDI from China? Lessons from Japan's Experience in the 1980s*, in Karl P. Sauvant, ed., INVESTING IN THE UNITED STATES: IS THE US READY FOR FDI FROM CHINA?, Edward Elgar (2009).  I am co-editor (with Benjamin L. Liebman) and contributor to the volume REGULATING THE VISIBLE HAND? THE INSTITUTIONAL IMPLICATIONS OF CHINESE STATE CAPITALISM, published by Oxford University Press (2016).

9.   My scholarship and views on Chinese SOEs have been reported in publications including *The Economist* and *China Real Time Report*, a web site affiliated with the *Wall Street Journal.*

10.   I have been retained in this matter by the PSC as an expert on corporate governance of Chinese SOE business groups under the supervision of SASAC.  In connection with this assignment, I have reviewed the materials listed in Exhibit B, provided by the PSC. I have also relied upon my own research into the corporate governance of Chinese SOEs (conducted individually and with co-authors), reflected in the publications listed in paragraph 8, and consulted relevant secondary literature.

## SUMMARY OF OPINONS

11.   The CNBM Business Group[1] is a typical example of a Chinese SOE business group under SASAC supervision.  Certain corporate governance norms and practices in a Chinese SOE business group differ significantly from U.S. corporate governance norms and practices. In my opinion, these differences are highly relevant in considering questions of corporate separateness among the defendant corporations named in the above-referenced litigation.

12.   In my opinion, light of the political, legal and related institutional circumstances in which central SOEs under the supervision of SASAC – such as the CNBM Business Group – operate, a contextualized analysis is required to assess the separate legal personality of members of the CNBM Business Group in the above-referenced matter.  Specifically, in assessing whether China National Building Material Group Corporation ("CNBM Group"), China National Building Material Company, Limited ("CNBM"), Beijing New Building Materials (Group) Co. Ltd. ("BNBM Group"), Beijing New Building Materials Public Limited Company ("BNBM PLC") and Taishan Gypsum Co. Ltd. ("Taishan") constitute a single business entity[2] with respect to the conduct that gives rise to this litigation, certain non-corporate factors unique to China's national SOE business groups should be considered.

## ANALYSIS

13.   The CNBM Business Group, consisting of numerous individual corporations, is the largest comprehensive building materials industry group in China.[3] The parent company of the

---

[1] I will use the term "CNBM Business Group" to refer collectively to the parent company, China National Building Material Group Corporation, and its subsidiaries.

[2] As used in this Declaration, the term "single business entity" encompasses alter ego theory as well.

[3] *See* CNBM Group's home page, http://www.cnbm.com.cn/EN/c_0000001600070001/.

group, CNBM Group, is a Global Fortune 500 company (ranked 270 in 2015).[4] As with many Chinese Global Fortune 500 companies, the shares of CNBM Group are owned, ostensibly on behalf of the Chinese people, by SASAC, a central holding company *cum* regulatory agency established under China's State Council.

14.   As its home page on the Internet indicates, CNBM Group "was established in 1984 with approval from the State Council, and then became a Central Enterprise under direct supervision of State-owned Assets Supervision and Administration Commission of the State Council in 2003."[5]

15.   The background of CNBM Group's establishment as a central SOE is relevant to the questions at issue in this motion. As China law scholar Nicholas Howson of the University of Michigan School of Law has noted,

> Critically [the] process of corporatization [of SOEs] did not implicate 'privatization' of the Chinese economy generally or SOEs individually, or any real withdrawal from the economy of the state or the Communist Party. This is because a controlling equity interest in the SOE or state-owned asset groups converted into a company was maintained by state entities, and party committees remained important actors behind the formal governance structures required by the corporate form. To the present day, the Party-state remains absolutely committed to retaining control over converted asset groups and enterprises in a very broad range of sectors – not just the usual suspects for state control…but also non-national security and non-key infrastructure sectors that promise high returns to central or local state or party insiders when financed with the aid of passive public investors.[6]

16.   Adam Hersch, Senior Economist at the Center for American Progress, argues that although contemporary Chinese SOEs "assume many of the trappings of modern global business, including publicly traded shares and corporate boards with ostensibly independent external directors…[,]function does not necessarily follow form. In practice, these firms operate under quite different decision making mechanisms, through official capacities or otherwise, than do comparable firms in the United States or other advanced economies."[7]

17.   In a similar vein, legal scholar Jiangyu Wang of the National University of Singapore points out that an "essential dimension of corporate governance in China, especially in … SOEs" is "the political control of state enterprises by the Party-state that commingles the Chinese Communist Party (CCP) and the CCP-controlled government."[8] Professor Wang concludes that as a result of this "essential dimension," it is a mistake to assume that standard corporate law principles familiar to Western academics and practitioners (principles which are

---

[4] *See* Fortune Global 500 (2015), http://fortune.com/global500/china-national-bldg-materials-group-270/.
[5] China National Building Material Group Corporation home page, http://www.cnbm.com.cn/EN/c_0000001600070001/.
[6] Nicholas Calcina Howson, *Protecting the State from Itself? Regulatory Interventions in Corporate Governance and the Financing of China's "State Capitalism,"* in Benjamin L. Liebman & Curtis J. Milhaupt eds., REGULATING THE VISIBLE HAND? THE INSTITUTIONAL IMPLICATIONS OF CHINESE STATE CAPITALISM 49, 51-52 (2016) (internal reference omitted).
[7] Adam Hersh, *Assessing China's Economic Reform Agenda*, May 1, 2014, available at https://www.americanprogress.org/issues/economy/report/2014/05/01/88864/assessing-chinas-economic-reform-agenda/.
[8] Jiangyu Wang, *The Political Logic of China's State-Owned Enterprises*, 47 CORNELL INT'L L.J. 631, 635 (2014).

contained in the *formal* Chinese Company Law) actually explain the inner workings of Chinese SOEs and the control relationships therein.[9]

18.   Therefore, in my opinion, in order to fully understand the governance structures and managerial practices of the CNBM Business Group as they bear on the question of the relationship between Taishan and upstream corporate members of the CNBM Business Group named as defendants in this litigation, it is necessary to examine the complex architecture of Chinese SOE business groups under SASAC supervision and the *non-corporate* systems of control in which these groups operate.

19.   Such an examination, conducted in the remainder of this Declaration, reveals many distinctive qualities of Chinese SOE business groups – qualities that are quite far removed from accepted corporate governance norms and practices in the United States and other advanced economies.

20.   Chinese SOE business groups such as the CNBM Business Group have several distinct components. The top firm in the group (in this case, CNBM Group), which I will refer to as the "core company" in the group, has only one shareholder: SASAC.  SASAC acts as both an investor on behalf of the Chinese people and as a regulatory agency.  (SASAC's unique features as a controlling shareholder will be discussed in paragraphs 27-35 *infra*.) The core company principally acts as a holding company and serves as an intermediary between SASAC and group member firms that engage in production and other commercial activity. The core company coordinates information flow, strategy and resource allocation within the group.  It transmits policy downward from Chinese economic strategists and regulators to group members, and provides information and advice upward from the group to state strategists and regulators.

21.   Shareholding within these groups is predominantly hierarchical. Firms higher in the structure own shares in downstream subsidiaries, but there is very little upstream or cross-ownership among group firms, in contrast to most private business groups in other countries. This shareholding structure reflects the top-down nature of governance practices within the SOE business groups. There is evidence in the record indicating that governance practices in the CNBM Business Group are likewise hierarchical in nature.[10]

22.   Important governance structures internal to a Chinese SOE business group are typically specified in a legally binding agreement, often referred to as articles of grouping, which is adopted by all member companies.  The core company sets the terms of the articles, and the internal governance rules grant it a high degree of centralized control with respect to group members.  Many articles of grouping, for example, provide for plenary or management bodies to facilitate group or delegated decision making, but these organs typically either have only advisory power or are structured so that the core company effectively controls their decision making processes. In the case of the CNBM Business Group, certain centralized internal

---

[9] *Id.*
[10] *See, e.g.*, Deposition of HU Jinyu dated 12/7/2015, at 112:8-9, FSIA Exhibit No. 169 (describing the form of management in the tiers of CNBM's subsidiaries as a "cascade").

governance rules are provided in the China National Building Material Group Corporation Administrative Measures for Appointing Representatives of Capital Contributors.[11]

23.   The external face of a Chinese SOE business group is not the group per se, but one or more firms whose shares are publicly traded on Chinese or Hong Kong stock exchanges, and often on other major global stock exchanges.  In this case, two of the relevant CNBM Business Group member companies have private investors: CNBM's shares are listed on the Hong Kong Stock Exchange and BNBM PLC's shares are listed on the Shenzhen Stock Exchange.

24.   Chinese policy makers have encouraged business groups to include research institutes as members in order to promote technological development and increase international competitiveness.  The research institute conducts R&D, particularly applied research in areas related to the group's products and production processes.  The CNBM Business Group includes the China Building Materials Academy.

25.   The foregoing describes the main components of the SOE business groups and the shareholding and contractual devices that bind them as a group.  But in my opinion, a wider lens is needed to appreciate the governance environment of these groups in the unique ecology of the contemporary Chinese political economy.

26.   The leading business groups, such as the CNBM Business Group, are linked with institutions of the central government and the Chinese Communist Party ("CCP").[12]  For example, an organization called the China Group Companies Association is formally designed as an intermediary between the national SOE business groups and the central government.  Its board of directors is composed of senior government officials and top managers of the most important national SOE business groups.  The Association is a vehicle for conveying the concerns of top SOE mangers to the State Council.  A second example is the regular exchange of personnel between SASAC and the SOEs it supervises.  Moreover, a number of positions in government and party bodies, such as the National People's Congress and the National People's Political Consultative Conference, are reserved for leaders of the national SOEs, and senior managers of national SOEs sometimes simultaneously hold important positions in the party, the government, or industrial associations (sometimes called chambers of commerce) which are ostensibly private but which also perform governmental functions.

27.   At the top of the national SOE business groups is SASAC, which has been described as "the world's largest controlling shareholder."[13]  Established under the State Council in 2003, SASAC represents an attempt by the Chinese government to consolidate control rights over the

---

[11] Exhibit 43 to the PSC's Response to CNBM Group's Motion to Dismiss on Grounds of the Foreign Sovereign Immunities Act. Article Fifteen of the Administrative Measures provides that if any one of a list of specified "significant decisions" is under consideration by a member company, the decision "can only be implemented after the [China National Building Material] Group Corporation gives a reply."

[12] In my scholarship, I use the term "networked hierarchy" to describe the phenomenon of a hierarchical SOE business group enmeshed in other institutions of the Chinese political economy.

[13] Marcos Aguiar et al., *SASAC: China's Megashareholder*, BCG Perspectives (Dec. 1, 2007), http://www.bcgperspectives.com/content/articles/globalization_strategy_sasac_chinas_megashareholder.

national SOEs.[14] SASAC has a long list of formal functions and responsibilities, including preserving and enhancing the value of state-owned assets, appointing and removing top SOE executives, setting remuneration for SOE personnel and regulating income distribution among senior SOE managers, dispatching supervisory panels to the SOEs and taking charge of their daily management, and drafting regulations on the management of state-owned assets.[15]

28.   The legal foundation for SASAC's role in the SOE system is the Law of the People's Republic of China on State-Owned Assets of Enterprises ("SOE Asset Law").[16] The SOE Asset Law was enacted for the purpose of "consolidating and developing the state-owned economy, strengthening the protection of state-owned assets, giving play to the leading role of the state-owned economy in the national economy, and promoting the development of the socialist market economy."[17] In essence, the law formally recognizes SASAC as an investor – a shareholder in the national SOEs, with the rights and duties of a shareholder.[18] But the law contains some provisions that alter the ordinary rights of a shareholder under standard corporate law principles. For example, Article 34 requires that SASAC obtain government approval before exercising its rights as a shareholder with respect to the "merger, splitting, dissolution or petition for bankruptcy of an important" SOE under its supervision. Article 22 gives SASAC the power to appoint and remove senior managers in the SOEs under its supervision.  Moreover, in practice SASAC has at times acted in ways that exceed the power of a shareholder under ordinary corporate law principles, for example by requiring consolidation or disposition of assets in SOE business groups without acting through the boards of directors of the companies involved.

29.   As noted, one of SASAC's main functions is the selection and compensation of top managers of the firms under its supervision. There are two distinctive aspects to SASAC's exercise of this function.

30.   First, "political qualities," including party membership, are among the major criteria against which managerial performance is evaluated.  Approximately one-third of the employees in national SOEs are members of the CCP.  The percentage of top managers who are members of the party is much higher. In the case of CNBM Group, for example, according to its web site all of the senior managers are members of the CPC.[19]

31.   Second and relatedly, there are two parallel personnel systems in all national Chinese SOEs: the regular corporate management system and the party system. In the corporate management system, positions are similar to those found in firms elsewhere in the world, including CEO, Vice-CEO, chief accountant and independent board members. The leadership team in the parallel party system includes the secretary of the Party Committee, several deputy secretaries, and a secretary of the Discipline Inspection Commission (an anti-corruption office). Institutionalized party penetration of corporate roles mirrors the party's parallel governance

---

[14] Prior to the creation of SASAC, SOEs were typically controlled by the specific line ministries from which they had been created in the transition out of a centrally planned economy.
[15] See SASAC, Main Functions, available at http://en.sasac.gov.cn/n1408028/n1408521/index.html.
[16] Zhonghua Renmin Gonghe Guo Quiye Gouyou Zichan Fa (promulgated by the Standing Com. Nat'l People's Cong., Oct. 28, 2008, effective May 1, 2009).
[17] Id., art. 1.
[18] See id. arts. 11-14.
[19] See the CNBM Group web site, available at http://www.cnbm.com.cn/EN/c_0000001600070004/.

structures vis-à-vis the government. Overlaps between the two systems are rather uniform, such that a corporate manager of a given rank typically holds a position of equivalent rank in the party system. According to the CNBM Group's web site, all but one of the senior managers also holds positions in the parallel party system.[20]

32.   The party's presence in the SOE business groups, and the penetration of the party throughout the SOE corporate hierarchy, from SASAC on down, is concretely manifest in party committees, which are established in each group member corporation. An illustration of the operation of the party committees within the CNBM Business Group can be found in the record of a "Special Democratic Life Meeting" held with respect to Taishan.[21] The record reveals that a supervision team from SASAC's Party Committee worked with the supervision teams of the party committees at CNMB Group and BNBM to check Taishan's compliance with central government requirements, examine the problems at Taishan in depth, and make "solid rectification plans." That these party committees also have non-corporate functions is evident from the document.  The record states that the supervision teams instructed relevant colleagues to identify problems related to the "Four Forms of Decadence," an apparent reference to a political campaign of Chinese President Xi Jinping.

33.   With respect to senior management appointments in the SOE business groups, SASAC shares decision rights with the CCP in a highly institutionalized arrangement. The top positions in the most important SOEs, including board chairman, CEO, and party secretary, are appointed and evaluated by the Organization Department of the CCP. Some of these positions hold ministerial rank equivalent to that of provincial governors and members of the State Council. Deputy positions in these enterprises are appointed by a Party Building Bureau of SASAC (the CCP's organization department within SASAC). A separate division of SASAC assists in this process. Appointments and evaluations of top executives in the remaining SOEs are made by yet another division of SASAC, the Second Bureau for the Administration of Corporate Executives.  While appointments power formally resides with SASAC, senior appointments are made with input from various party organs and ministries regulating relevant business operations, and are subject to approval by the State Council.

34.   Note that the standard corporate law organ for the appointment and evaluation of senior executives – the board of directors – can be bypassed in this process.  Indeed, the creation of boards of directors at the core companies of the SOE business groups wholly owned by SASAC has been a slow process.  The CNBM Group website notes that it is "one of those wholly state-owned enterprises carrying out the *pilot trial* of Board of Directors system..."[22] These facts suggest that board-centered governance – a central feature of U.S. corporate law[23] – is still a developing concept that has not been fully internalized in the governance culture of Chinese SOEs.

---

[20] *See id*.

[21] "Present the People, the Object, and the Mindset, Integrate Strictness with Reliability, and Change the Work Style," FSIA Exhibit No.168.

[22] CNBM home page, http://www.cnbm.com.cn/EN/c_0000001600070001/ (emphasis added).

[23] *See, e.g.*, Delaware General Corporation Law §141(a) (providing that "[t]he business and affairs of every corporation organized under this chapter shall be managed by or under the direction of a board of directors, except as may be otherwise provided in this chapter or in its certificate of incorporation.")

35.   Given SASAC's ability to bypass boards of directors in the appointment, removal, remuneration and supervision of senior managers, SASAC can exert substantial influence over the SOE business groups and their member companies even without involvement in their day-to-day management.

36.   The above factors suggest that focusing solely on corporate ownership structures, board appointments and other formal corporate governance arrangements in determining the separateness of the CNBM Business Group companies upstream from Taishan overlooks the important, distinctive context in which the CNBM Business Group and its various member companies operate as an SOE business group under SASAC supervision.  In fact, the evidence suggests that senior managers of the CNBM Business Group recognize the complications that state ownership and related non-corporate governance practices create for Chinese SOEs on the issue of separate corporate identity.[24]

37.   Given the importance and distinctiveness of the political and institutional context in which the Chinese SOE business groups operate, in my opinion it is not possible to assess Taishan's corporate separateness from other CNBM Business Group companies by comparing CNBM Business Group structures and practices with those of a U.S. conglomerate, because there are no examples in the United States that would facilitate a meaningful, "apples-to-apples" comparison.

## CONCLUSION

38.   Nothing in my examination of the discovery record indicates that the CNBM Business Group has departed from the hierarchical group governance structure linked to a parallel party structure that characterizes the national SOE business groups under SASAC supervision. Rather, the CNBM Business Group shares with other SOE business groups under SASAC supervision a variety of unique corporate governance features as a result of the distinctive political and institutional context in which they operate. These features allow the Chinese government and CCP, working through SASAC, to operate the subsidiaries of SOE business group companies outside the formal dictates of the corporate law.

39.   Accordingly, in assessing whether the CNBM Business Group entities named as defendants in this litigation should be considered a single business entity, it would be a mistake, as the scholarship cited in paragraphs 15-17 *supra* suggests, to look only at those outward aspects of CNBM Business Group's corporate attributes that are familiar to U.S. legal practitioners, on the assumption that those attributes convey a complete picture of the CNBM Business Group's actual governance practices and intra-group relations. The unique, non-corporate features of Chinese SOE governance must be considered as well. Considering these features, there is evidence in the record to support a finding that the CNBM Business Group is a single business entity.

---

[24] *See* Meeting Minutes of the Seminar on Deepening Reform, CNBM Group Board of Directors, FSIA Exhibit 163.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
Curtis J. Milhaupt

New York, New York
January 21, 2016

**EXHIBIT A**

# Curtis J. Milhaupt

**Columbia Law School**
**435 West 116ᵗʰ Street**
**New York, New York 10027**
**(212) 854-4926**
**milhaupt@law.columbia.edu**

**Current Positions:**
Edwin B. Parker Professor of Comparative Corporate Law, since 2010
Fuyo Professor of Japanese Law, since 1999
Director, Parker School of Foreign and Comparative Law
Director, Center for Japanese Legal Studies
Member, Weatherhead East Asian Institute, Columbia University

**Prior Academic Positions:**
Vice Dean for Intellectual Life, Columbia Law School, 2010-2011
Professor of Law, Washington University School of Law, St. Louis, 1997-1998
Associate Professor of Law, Washington University School of Law, St. Louis, 1994-1998

**Visiting Academic and Research Appointments:**
Visiting Professor, Duisenberg School of Finance, Univ. of Amsterdam, annually since 2008
Visiting Professor, Getulio Vargas Foundation Law School, Sao Paulo, March 2010
Erasmus Mundus Fellow in Law and Economics, University of Bologna, June 2008
Paul Hastings Visiting Professor in Corporate Law, Hong Kong University, May 2007
Visiting Professor of Law, Tsinghua University, Beijing, Fall 2006
Visiting Professor of Law, University of California, Berkeley, Spring 2006
Visiting Professor of Law, University of Tokyo Faculty of Law, Summer 2012, Summer 2005
Visiting Fellow, Research Institute of Economy, Trade and Industry, Fall 2002
Lee Gagliardi Visiting Professor of Law, Columbia Law School, Spring 1999
Visiting Scholar, Bank of Japan Institute for Monetary and Economic Studies, Fall 1998
Visiting Professor of Law, University of California, Los Angeles, Fall 1997

**Education:**
Columbia Law School, J.D. 1989
        Editor, *Columbia Law Review*
University of Notre Dame, B.A., with High Honors, 1984, Government and International Studies
University of Tokyo, Research Fellow, 1992-93 (Faculty of Law), 1984-86 (Dept. of International Relations)

**Courses and Seminars Taught:**
U.S. Corporate Law; Japanese Law; Law and Capitalism; The Corporation in Global Perspective; Comparative Corporate Governance; Mergers and Acquisitions; Regulation of Banks and Other Financial Intermediaries

**Research Interests:**
East Asian legal systems, particularly Japanese and Chinese law; comparative corporate governance; corporate law; law and economic development; state owned enterprises; state capitalism; foreign investment

**Special Projects:**
Project Director, Center for International Political Economy, 2001-2002
Member, U.S. delegation, Nation Building for Korean Unification (international, interdisciplinary planning for unification of the Korean Peninsula, sponsored by the Korean Economic Research Institute), June 1997-2000
Special Committee on Asian Affairs, Association of the Bar of the City of New York, 2004-2006; Member, 1991-92

**Books:**
Law and Capitalism: What Corporate Crises Reveal about Legal Systems and Economic Development around the World (Chicago: University of Chicago Press, 2008) (with Katharina Pistor) (translated into Chinese and Portuguese)

Economic Organizations and Corporate Governance in Japan: The Impact of Formal and Informal Rules (Oxford: Oxford University Press, 2004) (with Mark D. West)

**Edited Volumes:**
Regulating the Visible Hand?: The Institutional Implications of Chinese State Capitalism (Oxford: Oxford University Press, 2016) (with Benjamin Liebman)

Transforming Corporate Governance in East Asia (London: Routledge, 2008)

Global Markets, Domestic Institutions: Corporate Law and Governance in a New Era of Cross-Border Deals (New York: Columbia University Press, 2003)

**Treatises and Textbooks:**
U.S. Corporate Law (Tokyo: Yuhikaku, 2009) (in Japanese)

The Japanese Legal System: Cases, Codes, and Commentary (New York: Foundation Press, 2006) (with J. Mark Ramseyer and Mark D. West) Second Edition 2012.

Japanese Law in Context: Readings in Society, the Economy and Politics (Cambridge: Harvard University Asia Center, Harvard University Press, 2001) (with J. Mark Ramseyer and Michael K. Young)

**Scholarly Articles:**

"Beyond Ownership: State Capitalism and the Chinese Firm," Georgetown Law Journal (2015) (with Wentong Zheng)

"We are the (National) Champions: Understanding the Mechanisms of State Capitalism in China," Stanford Law Review (2013) (with Li-Wen Lin)

"An Analytical Framework for Hostile Takeover Regimes in Developed and Emerging Markets," Harvard International Law Journal (2011) (with John Armour and Jack Jacobs)

"Economically Benevolent Dictators: Lessons for Developing Democracies," American Journal of Comparative Law (2011) (with Ronald Gilson)

"Beyond Legal Origin: Rethinking Law's Relationship to the Economy—Implications for Policy," American Journal of Comparative Law 52: 831-845 (2009)

"Reputational Sanctions in China's Securities Market," Columbia Law Review 108: 929-983 (2008) (with Benjamin Liebman)

"Sovereign Wealth Funds and Corporate Governance: A Minimalist Response to the New Merchantilism," Stanford Law Review 60: 1345-1369 (2008) (with Ronald Gilson)

"In the Shadow of Delaware? The Rise of Hostile Takeovers in Japan," Columbia Law Review 105: 2171-2216 (2005)

"Choice as Regulatory Reform: The Case of Japanese Corporate Governance," American Journal of Comparative Law 53: 343-377 (2005) (with Ronald Gilson)

"Nonprofit Organizations as Investor Protection: Economic Theory, and Evidence from East Asia," Yale Journal of International Law 29: 169-207 (2004)

"Re-Examining Legal Transplants: The Director's Fiduciary Duty in Japanese Corporate Law," American Journal of Comparative Law 51: 887-901 (2003) (with Hideki Kanda)

"Law's Dominion and the Market for Legal Elites in Japan," Law and Policy in International Business 34: 451-498 (2003) (with Mark D. West)

"Creative Norm Destruction: The Evolution of Nonlegal Rules in Japanese Corporate Governance," University of Pennsylvania Law Review 146: 2083-2129 (2001)

"Privatization and Corporate Governance in a Unified Korea," Journal of Corporation Law 26: 200-223 (2001)

"The Dark Side of Private Ordering: An Institutional and Empirical Analysis of Organized Crime," University of Chicago Law Review 67: 41-98 (2000) (with Mark D. West)

"Japan's Experience with Deposit Insurance and Failing Banks: Implications for Financial Regulatory Design?," Monetary and Economic Studies 17: 21-46 (1999)

"Property Rights in Firms," Virginia Law Review 84: 1145-1194 (1998)

"The Small Firm Financing Problem: Private Information and Public Policy," Journal of Small and Emerging Business Law 2: 177-196 (1998)

"Cooperation, Conflict, and Convergence in Japanese Finance: Evidence from the *Jusen* Problem," Law & Policy in International Business 29: 1-78 (1997) (with Geoffrey P. Miller)

"The Market for Innovation in the United States and Japan: Venture Capital and the Comparative Corporate Governance Debate," Northwestern University Law Review 91: 865-898 (1997)

"A Regulatory Cartel Model of Decisionmaking in Japanese Finance," Zeitschrift für Japanisches Recht 4: 18-29 (1997) (with Geoffrey P. Miller)

"A Relational Theory of Japanese Corporate Governance: Contract, Culture, and the Rule of Law," Harvard International Law Journal 37: 3-64 (1996)

"Path Dependence and Comparative Corporate Governance," Washington University Law Quarterly 74: 317 (1996) (with Ronald J. Mann)

"Managing the Market:  The Ministry of Finance and Securities Regulation in Japan," Stanford Journal of International Law 30: 423-481 (1994)

**Book Chapters:**
"Chinese Corporate Capitalism in Comparative Context," *in* Weitseng Chen ed., The Beijing Consensus? How has China Changed the Western Ideas of Law and Economic Development (Cambridge: Cambridge University Press, forthcoming)

"Is the U.S. Ready for FDI from China? Lessons from Japan's Experience in the 1980s," *in* Karl Sauvant ed., Investing in the United States: Is the U.S. Ready for FDI from China? (Cheltanham, UK: Edward Elgar, 2009)

"A Lost Decade for Corporate Governance Reform in Japan? What Has Changed, What Hasn't, and Why" *in* Magnus Blomstrom & Sumner La Croix eds., Institutional Change in Japan (London: Routledge, 2006)

"Historical Pathways of Reform: Foreign Law Transplants and Japanese Corporate Governance" *in* Klaus Hopt et al. eds., Corporate Governance in Context: Corporations, States, and Markets in Europe, Japan and the U.S. (Oxford: Oxford University Press, 2005)

"Institutional Change and M&A in Japan: Diversity through Deals" *in* Curtis Milhaupt ed., Global Markets, Domestic Institutions: Corporate Law and Governance in a New Era of Cross-Border Deals (New York: Columbia University Press, 2003)

**Review and Commentary:**
"Why Mixed Ownership Reforms Cannot Fix China's State Sector," Paulson Institute web site (2016)

"On the (Fleeting) Existence of the Main Bank System and Other Japanese Economic Institutions," Law and Social Inquiry 27: 425-437 (2001)

**Books/Articles Written in or Translated into Japanese:**
U.S. Corporate Law (Tokyo: Yuhikaku, 2009) (written in Japanese)

"In the Shadow of Delaware? The Rise of Hostile Takeovers in Japan," Jurisuto 1315: 88-95; 1316: 100-108 (2006) (translation in Japan's leading law journal)

"Choice as Regulatory Reform: The Case of Japanese Corporate Governance" *in* Hideki Kanda ed., Koporeto gabanansu ni okeru shoho no yakuwari (Tokyo: Chuo Keizai, 2004) (written in Japanese)

"The Dark Side of Private Ordering," Leviathan 30: 178-212 (2002) (translation in Japan's leading political science journal)

"What Can Japan Learn from the United States: Reflections based on My Experience at Columbia," Shiho Kaikaku 17: 31-35 (2001) (written in Japanese)

"The *Jusen* Problem in Japanese Finance: A Legal and Economic Analysis," Jurisuto 1132: 140-149; 1134: 86-92; 1136: 86-92 (1998) (with Geoffrey P. Miller) (translation in Japan's leading law journal)

"The Lawyer's Role in Business Transactions: Japan and the United States in Comparative Perspective," Amerikaho 1996-2: 266-274 (1996) (written in Japanese)

**Grants Received:**
Abe Fellowship Program of the Social Science Research Council and the American Counsel of Learned Societies, with funding by the Center for Global Partnership, 2002
Center for International Political Economy, 2001-2002
Japan Foundation Fellowship, 1992-1993
Monbusho (Japanese Ministry of Education) Fellowship, 1984-1986

**Academic Honors:**
Phi Beta Kappa
Three articles chosen as "The Best Corporate and Securities Articles of the Year" in peer review process

**Teaching Honors:**
Best Teacher in Law and Finance 2011-2012; 2009-2010.  Masters in Law and Finance Program, Duisenberg School of Finance, University of Amsterdam

**Conferences Organized:**
Chinese State Capitalism, June 13-14, 2014, Columbia Law School
Japanese Immigration Policy, November 5, 2010, Columbia Law School
M&A and the Law, Tokyo, Japan, June 18, 2010
Evaluating Japan's New Jury (Saiban-in) System, November 5, 2008, Columbia Law School
M&A in Japan, October 12, 2007, Columbia Law School
Gatekeepers and Corporate Governance, August 2, 2005, Tokyo Japan
Hostile M&A and the Poison Pill in Japan: Prospects and Policy, June 13, 2003, Tokyo Japan
Global Markets, Domestic Institutions: Corporate Law and Governance in a New Era of
Cross-Border Deals, October 25-26, 2001 and April 5-6, 2002, Columbia Law School
Japanese Law Research Conference, April 4-5, 1998, Washington University School of Law

**Selected Speaking Engagements (Past Three Years)**
Abenomics and Japanese Corporate Governance Reform, Hawaii State Bar Committee on
International Law, Dec. 2015

Roundtable on State-Owned Enterprises, Duke University, Dec. 2015

Party-State Inc., Eighth Annual William Jones Distinguished Lecture, Washington University
in St. Louis, Feb. 2015

Japanese Corporate Governance Reform, Japan Society Corporate Breakfast, Feb. 2015

Chinese Corporate Capitalism in Comparative Context, National University of Singapore,
Jan. 2015

Chinese State Capitalism, East China University of Political Science and Law, Nov. 2014

Executive Compensation in Japan, Hawaii State Bar Committee on International Law, July
2014

Institutional Implications of Korean Unification, Columbia Univ. Aug 2014

Assessing Chinese Variable Interest Entities, Cornell Law School, Feb. 2014

Beyond Ownership: State Capitalism and the Chinese Firm, New York City Bar Association,
Feb. 2014

Beyond Ownership: State Capitalism and the Chinese Firm, Tsinghua University, Nov. 2013

**Major Administrative Experience at Columbia Law School:**
Chair, Global Initiatives Task Force, 2015-2016
Vice Dean for Intellectual Life, 2010-2011
Chair, Curriculum Committee, 2008-2009
Co-Chair, Comparative and International Law Committee, 2014-14; 2012-13; 2007-08
Chair, Transactional Studies Program, 2004-2005
Member, Appointments Committee, 2009-2010; 2003-2005; 1999-2000; Co-Chair for Entry-
Level Appointments, Spring 2000

Member, Dean Search Committee, 2004

**Advisory Positions:**
Senior Faculty Advisor, Vale Columbia Center on Sustainable International Investment
Advisory Board, *Columbia Transnational Law Journal*
Advisory Board, Asian Institute of International Financial Law, Hong Kong University
Board of Directors, *Columbia Journal of Asian Law*

**Government Testimony**
U.S.-China Economic and Security Review Commission, February 15, 2012

**Other Professional Experience:**
Associate, Shearman & Sterling, New York and Tokyo, 1989-1994
Handled cross-border mergers and acquisitions transactions, sovereign debt restructurings, bank regulatory work, and a range of pro bono matters.

**Bar Admissions and Professional Associations:**
Member, New York State Bar
Member of the American Law Institute (elected March 2009)

**Media Appearances:**
*New York Times, Wall Street Journal, The Economist, Financial Times, CNBC, NHK Television, Bloomberg News, Straits Times of Singapore*

**Foreign Language:**
Japanese (fluent)

# EXHIBIT B

## INDEX OF RELIANCE MATERIALS

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.,* 742 F.3d 576 (5th Cir. 2014)

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.,* 753 F.3d 521 (5th Cir. 2014)

Partial Translation of BNBM(Group)-E-0005101-5106, BG: 7/15/15-7/18/15 Exhibit 251

Translation of BNBMPLC-E-0109215-109216, WANG Exhibit 313-R

Affidavit of Prof. Dr. Liu Junhai filed May 8, 2012 [Rec.Doc. No. 14203-1]

Declaration of Bing Cheng filed May 8, 2012 [Rec.Doc. No. 14203-2]

Declaration of James V. Feinerman, James M. Morita Professor of Asian Legal Studies Georgetown University Law Center filed May 8, 2012 [Rec.Doc. No. 14203-3]

China New Building Materials Group, Chine New Building Materials Co., CNBMIT Co., Ltd., CNBM USA Corp., and United Suntech Craft, Inc.'s Motion to Dismiss the Complaints Pursuant to Rules 12(B)(1), 12(B)(2), 12(B)(4) and 12(B)(5), Memorandum in Support with Exhibits filed under seal on June 22, 2015 [Rec.Doc. No. 19179]

China New Building Materials Group, China New Building Materials Co., CNBMIT Co., Ltd., CNBM USA Corp., and United Suntech Craft, Inc.'s Motion for Leave to Amend Motion to Dismiss with attachments filed September 18, 2015 [Rec.Doc.No. 19527]

Beijing New Building Materials Public Limited Company's Motion to Dismiss the Complaints Pursuant to Rules 12(B)(2) and 12(B)(5), Memorandum in Support thereof, Exhibits and sealed documents filed October 23, 2015 [Rec.Doc. Nos. 19646 (1-56)

Motion of Beijing New Building Material (Group) Co., Ltd. to Dismiss the Complaints Pursuant to Rules 12(B)(2) and12(B)(5), Memorandum in Support there and Exhibits filed October 30, 2015 [Rec.Doc.Nos. 19664 (1-32)]

Response of Plaintiffs' Steering Committee to CNBM Group's Motion to Dismiss on Grounds of the Foreign Sovereign Immunities Act with Affidavit of Russ M. Herman and Exhibits filed under seal on October 29, 2015 [Rec.Do.No.19658]

Reply in Support of CNBM Group's Motion to Dismiss for Lack of Subject Matter Jurisdiction under the FSIA with Exhibits filed November 24, 2015 [Rec.Doc. 19798]

Supplemental Response of the Plaintiffs' Steering Committee to CNBM Group's Motion to Dismiss on Grounds of the Foreign Sovereign Immunities Act with Exhibits filed under seal on November 30, 2015 [Rec.Doc.No. 19817]

Second Supplemental Response of the Plaintiffs' Steering Committee to CNBM Group's Motion to Dismiss on Grounds of the Foreign Sovereign Immunities Act Pursuant to Order of January 6, 2016 [Rec.Doc. 19553] with Exhibits filed under seal on January 8, 2016 [Rec.Doc. No. 19960]

CNBM Group's Second Supplemental Reply in Support of its Motion to Dismiss for Lack of Subject Matter Jurisdiction under the FSIA filed on January 12, 2016 [Rec.Doc. No. 19962]

## INDEX OF EXHIBITS

**FSIA EXHIBIT
NUMBER**

| | |
|---|---|
| 1 | Deposition of BNBM Group (ZHAO Yanming) dated 7/15-17/2015 |
| 2 | 2005 CNBM Annual Report [ALRMH-CNBM00004244-4352] (Exhibit 4) |
| 3 | 2005 BNBM Annual Report [BNBMPLC0000288-380] (Exhibit 136) |
| 4 | Deposition of CNBM Forest Products (Canada) Ltd.DENG Jianjun dated 10/28/2015 |
| 5 | 2006 CNBM Global Offering Prospectus [ALRMH-CNBM000001-643] (Exhibit 3) |
| 6 | 2005 BNBM Group Auditor's Report [BNBM(Group)00000427R-518R] (Exhibit 168R) |
| 7 | 2006 CNBM Annual Report [ALRMH-CNBM00004106-4243] (Exhibit 5) |
| 8 | 2006 BNBM Annual Report [BNBMPLC0000489-605] (Exhibit 14) |
| 9 | 2007 CNBM Annual Report [ALRMH-CNBM00000782-949] (Exhibit 6) |

| | |
|---|---|
| 10 | 2007 BNBM Annual Report [BNBMPLC0000722-841] (Exhibit 15) |
| 11 | 2008 CNBM Annual Report [ALRMH-CNBM00001118-315] (Exhibit 7) |
| 12 | 2008 BNBM Annual Report [BNBMPLC0000961-1080] (Exhibit 16) |
| 13 | 2008 BNBM Group Auditor's Report 2008 [BNBM(Group)0000745R-807R] (Exhibit 171R) |
| 14 | 2009 CNBM Annual Report [ALRMH-CNBM00001514-719] (Exhibit  8) |
| 15 | 2009 BNBM Annual Report [BNBMPLC0001229-378] (Exhibit 17) |
| 16 | 2011 CNBM Annual Report [ALRMH-CNBM00002354-571] (Exhibit 10) |
| 17 | 2012 CNBM Annual Report [ALRMH-CNBM00002790-3007] (Exhibit 11) |
| 18 | 2012 BNBM Annual Report [BNBMPLC00002273-480] (Exhibit 20) |
| 19 | 2013 CNBM Annual Report [ALRMH-CNBM00003226-443] (Exhibit 12) |
| 20 | 2013 BNBM Annual Report [BNBMPLC0002743-944] (Exhibit 21) |
| 21 | 2011 BNBM Annual Report [BNBMPLC0001862-2018] (Exhibit 19) |
| 22 | 2014 CNBM Annual Report [ALRMH-CNBM00003662-883] (Exhibit 13) |
| 23 | 2014 BNBM Annual Report [BNBMPLC0003164-336] (Exhibit 22) |
| 24 | Deposition of CNBM (CHANG Zhangli) dated 6/5-7/2015 |

3

| | |
|---|---|
| 25 | Deposition of SONG Zhiping dated 9/14-15/2015 |
| 26 | 2015 CNBM Interim Report [PSC00000001-0102] (Exhibit 334) |
| 27 | Deposition of Taishan (CHE Gang) dated 6/2-4/2015 |
| 28 | 2010 CNBM Annual Report [ALRMH-CNBM00001926-2139] (Exhibit 9) |
| 29 | 2010 BNBM Annual Report [BNBMPLC0001542-695] (Exhibit 18) |
| 30 | CNBM Announcement: Acquisition of Equity Interest in Taishan Gypsum Through Share Issuance of BNBM dated 10/13/2015 |
| 31 | Deposition of JIA Tongchun dated 9/17-18/2015 |
| 32 | Articles of Association of Shandong Taihe Dongxin Co., Ltd., dated 8/8/2006 [Herman Aff. Ex. 132 filed 5/8/2012] |
| 33 | Announcement for Decision of 12th Interim Meeting of the Third Board of Directors, dated 4/23/2005 [BNBMPLC0004402-4403] (part of Exhibit 101) |
| 34 | BNBM PLC Annual General Meeting of Shareholders, dated 4/8/2004 [BNBMPLC0006280-6283] (part of Exhibit 103) |
| 35 | Shandong Taihe Building Materials Corporation Forms |
| 36 | Declaration of JIA Tongchun ("JIA Declaration") dated 9/16/2015 (Exhibit 335) |
| 37 | CNBM Public Regulatory Announcement: "Connected Transaction Acquisition of the Entire Equity Interest in Tai'an Donglian Investment Trading Company Limited" dated 8/28/2006 (Herman Aff. Ex. 134 filed 5/8/2012) |
| 38 | CNBM Group's "Home" webpage, www.cnbm.com.cn/EN/ |
| 39 | CNBM trademark records, United States Patent and Trademark Office |
| 40 | Deposition of BNBM PLC (CHEN Yu) dated 7/8-11/2015 |

4

| 41 | Deposition of WANG Bing dated 8/25-27/2015 |
| 42 | Summary Chart of Overlapping Executives and Officers (Exhibit 23-1) |
| 43 | China National Building Material Group Corporation Administrative   Measures for Appointing Representatives of Capital Contributors [BNBM (Group)-E-0005107-5115] (Exhibit 249) |
| 44 | China National Building Material Group Corporation Sample Document [CNBMGRP00006793-6795](Exhibit 75) |
| 45 | "China National Building Material Group Corporation Year of 2015 - 2017 "Development Strategy and Plan" dated April, 2015 [CNBMGRP000013290-13347](Exhibit 91) |
| 46 | "Beijing New Building Materials (Group) Company Limited Internal Control System Construction Work Summary" submitted to CNBM Group [BNBM(Group)-E-0004986-4990] (Exhibit 247) |
| 47 | "Taishan Gypsum Company Limited Comprehensive Risk Management Report for the Year 2011" submitted to CNBM Group, CNBM and BNBM [CNBMGRP00371516-371562] (Exhibit 416) |
| 48 | "China National Building Material Group Corporation Comprehensive Risk Management Report of the Year 2010" [CNBMGRP00330873-330934] (Exhibit 388) |
| 49 | "China National Building Material Group Corporation Interim Measure on Fully Implementing the Decision-Making Rules for the 'Three Significant Issues and One Large Operation'" [BNBMPLC-E-0001156-1172] (Exhibit 113) |
| 50 | "Statement on Implementing the Requirements from the Group Corporation's Meeting of International Business Risk Prevention," dated 7/11/2014 [Translation of BNBM(Group)-E-0000444-446] (Exhibit 215) |
| 51 | Email and attachment to JIA Tongchun re: Notice on Matters Relevant to CNBM Group's Training Class in 2011 for Leaders |

5

| | |
|---|---|
| | at Middle and Senior Levels dated 6/29/2011 [Translation of TG-0073103-73111] |
| 52 | Stock Listing Rules of the Shenzhen Stock Exchange (2014 Revision), No. 378 and Partial Translation of same |
| 53 | CNBM Group Board of Directors Meeting Minutes, 23rd Meeting of the Third Session of Board of Directors, dated 1/29/2015 [Translation of CNBMGRP00012512] (Exhibit 98) |
| 54 | CNBM Group's "Reply on Beijing New Building Material (Group) Co., Ltd.'s 2013 annual loan and guarantee plan" [CNBMGRP00000564] (Exhibit 86) |
| 55 | BNBM (Group) Guarantee for Taishan for 100,000,00 yuan with Taian Quingnian Street Branch of China- "Maximum Guarantee Contract Serial No. 2013-123010-ZG03" dated 1/10/2013 [TG-068133-53 English translation provided by Taishan] |
| 56 | BNBM Group Guarantee for Taishan for 350,000,000 yuan with Agricultural Bank of China Taian Longze Sub Branch- "Maximum Guarantee Contract Serial No. 37100052013005 1039" dated 7/11/2013 [TG-067973-90 English translation provided by Taishan] |
| 57 | BNBM Guarantees to/Investments in Taishan Gypsum - FRE 1006 Summary Chart (reflecting BNBM's Guarantees from 2005 to 2014) (Exhibit 162-1) |
| 58 | CNBM Storefront on Alibaba.com [ALRMH-CNBM00010001-10002](Exhibit 270-1) |
| 59 | BNBM PLC Public Announcement of the External Guaranties for the year 2015 dated 3/18/2015 [BNBMPLC-E-0112095R-112112R] (Exhibit 322R) |
| 60 | BNBM PLC Resolution of the 2013 Annual General Meeting of Shareholders dated 4/16/2014 [BNBMPLC-E-0011157R-0011166R] (Exhibit 305R) |
| 61 | CNBM Guarantees to BNBM - FRE 1006 Summary Chart (Exhibit 346) |

| | |
|---|---|
| 62 | Deposition of CTIEC-TECO American Technology, Inc. (Fred Paulsen) dated 4/24/2015 |
| 63 | CNBM Group's "Global Presence" webpage, http://www.cnbm.com.cn/EN/c_00000016000300001/ (Exhibit 89) |
| 64 | 2006 BNBM Group Auditor's Report [BNBM(Group)00000560R-611R] (Exhibit 169R) |
| 65 | 2007 BNBM Group Auditor's Report [BNBM(Group)0000651R-701R] (Exhibit 170R) |
| 66 | Transcript of Motion Hearing Proceedings dated 10/6/2015 |
| 67 | 2009 BNBM Group Auditor's Report [BNBM(Group)00000850R-913R] (Exhibit 172R) |
| 68 | 2010 BNBM Group Auditor's Report [BNBM(Group)00000956R-1011R] (Exhibit 173R) |
| 69 | 2011 BNBM Group Auditor's Report [BNBM(Group)00001054R-109R] (Exhibit 174R) |
| 70 | 2012 BNBM Group Auditor's Report [BNBM(Group)00001154R-213R] (Exhibit 175R) |
| 71 | 2013 BNBM Group Auditor's Report [BNBM(Group)00001266R-337R] (Exhibit 176R) |
| 72 | 2014 BNBM Group Auditor's Report [BNBM(Group)00003274R-330R] (Exhibit 177R) |
| 73 | Taishan Gypsum Co., Ltd. Resolutions of the First Meeting of the 4th Board of Directors [TG 0020787] (Exhibit 23-1 at Exhibit 14) |
| 74 | "Main Issues in State-owned Asset Supervision and Administration Commission's Audit of Economic Responsibility" [BNBMPLC-E-0010163R] (Exhibit 134R) |

| 75 | "Award for Significant Business Contributors from Taishan Gypsum and BNBM Homes," dated 01/20/2012 [BNBMPLC0007291] (Exhibit 143) |

| 76 | Problems Discovered During Auditing Review [CNBMGRP00009807-9838](Exhibit 133) |

| 77 | Explanation on the Rectification Status [BNBMPLC-E-0010164](Exhibit 134-1) |

| 78 | Communications about the Problems of BNBM [Partial Translation of BNBMPLC-E-0006059-6060] (Exhibit 123) |

| 79 | Summary Chart of Taishan Gypsum Board Sales to United States, with supporting documentation (Exhibit 394) |

| 80 | Summary Chart of BNBM Sales, Contracts, and Shipments of Gypsum Drywall to U.S. (Exhibit 96) |

| 81 | Email from PENG Wenlong (Taishan) to ZHANG Jian (CNBM Group) dated 6/27/2010 re Spreadsheets of TSG Exports [Translation of TG-0129674-676] |

| 82 | CNBM Group Resolution No. 17 of the Third Session of the Board of Directors of CNBM Group dated 7/11/2014[CNBMGRP00393000-002] (part of Exhibit 332) |

| 83 | Memorandum re "The Course of Events on Hiring Foreign Law Firms for the Gypsum Board Litigation in the United States – Brief Version of the Related Meetings" (redacted version of Exhibit 323) [BNBMPLC-E-0059965-0059966] |

| 84 | Letters with attachments from Knauf to SONG Zhiping (CNBM Group) and WANG Bing (BNBM  Group) dated 5/15/2009 [KNAUFGIPS0160544-888] (Exhibit 61) |

| 85 | Memorandum [Translation of BNBMPLC-E-0059967-77] (redacted version of Exhibit 331) |

| 86 | Privilege Log Produced by Hogan Lovells showing over 200 emails beginning in August, 2009 (Exhibit 66) |

| 87 | Refusals of Service by CNBM Group (Exhibit 264) |

8

| | |
|---|---|
| 88 | Refusals of Service by BNBM Group (Exhibit 95) |
| 89 | Refusals of Service by CNBM (Exhibit 263) |
| 90 | Refusals of Service by BNBM (Exhibit 93) |
| 91 | Letter from James Stengel of Orrick to Arnold Levin dated 10/13/13 advising that Orrick had been retained as counsel for BNBM (Herman Aff. Ex. 144 filed 5/8/2012) |
| 92 | Transcript of Special Hearing dated 2/12/2015  [Rec. Doc. No. 18475-7] |
| 93 | Common Interest Joint Defense and Commonality Agreement dated 11/29/2010 (Exhibit 358) |
| 94 | Common Interest, Joint Defense and Commonality Agreement dated March 2015 [BNBMPLC0007605-7625] (Exhibit 310) |
| 95 | CNBM Group's Biography of PENG Xuefeng webpage, http://www.cnbm.com.cn/EN/c_0000001600070003/d_26385.html |
| 96 | CNBM Group 18th Meeting of the Third Session of the Board of Directors of CNBM Group dated 8/15/2014 [CNBMGRP00346624-6636] (Exhibit 356) [Rec.Doc. No. 19492-3] |
| 97 | BNBM Group website pages [ALRMH-CNBM00008874, 8887] (Exhibits 214 and 214A) |
| 98 | CNBM Group Notice of 17th Meeting of Third Session of the Board of Directors of CNBM Group dated 11/7/2014 [CNBMGRP00010052-53] |
| 99 | Email from DONG Chungang to Joe Cyr and Eugene Chen at Hogan Lovells dated 7/7/2014 [HL00000026 and HL00000026A](part of Exhibit 1) |
| 100 | Email from DONG Chungang to Eugene Chen at Hogan Lovells regarding payment of legal bills dated 8/5/2014 [HL_00000306](part of Exhibit 1) |

| 101 | Email from PENG Wenlong to Eugene Chen dated 7/7/2014 [HL00000104-105] (Exhibits 40 and 40A) |
|---|---|
| 102 | Chart of CNBM Group Document Productions Before and After 30(b)(6) Deposition |
| 103 | Email chain among CNBM Group, Taishan, BNBM and CNBM employees re: Drywall Lawsuit Press Release dated 8/19/2014 [CNBMGRP00346665](Exhibit 342) |
| 104 | First Quarter 2012, CNBM Group International Trade Report [CNBMGRP00117685-117696](Exhibit 344-2) |
| 105 | Chart of CNBM Document Productions Before and After 30(b)(6) Deposition |
| 106 | Chart of Taishan Document Productions Before and After 30(b)(6) Deposition |
| 107 | Chart of BNBM Group Document Productions Before and After 30(b)(6) Deposition |
| 108 | Deposition of New Jersey Institute of Technology (Donald Sebastian) dated 4/22/2015 (Exhibit 42-1(A)) |
| 109 | Deposition of Sunpin Solar Development, LLC (Steve Kim) dated 4/17/2015 (Exhibit 42-1(K)) |
| 110 | Deposition of Western Wood (John Salamanca) dated 5/21/2015 (Exhibit 43-1(D)) |
| 111 | Web Article, OKorder.com Official Launch from cnbm.com.cn dated 2/18/2011 [ALRMH-CNBM0008810-8812] (Exhibit 81) |
| 112 | Web Article, CTIEC signs Wal-Mart Roof Power Plant Project from cnbm.com.cn dated 3/2/2015 [ALRMH-CNBM0008813-8814] (Exhibit 82) |
| 113 | Web Article, CTIEC signed a 100 MW Photovoltaic Power Plant Project in the U.S., from cnbm.com.cn dated 12/2/2014 [ALRMH-CNBM0008854-8855] (Exhibit 82-1) |

| | |
|---|---|
| 114 | Transcript of Phone Conference Proceedings dated 9/17/2015 |
| 115 | Letter from CNBM (USA) to Eastern Metal Supply, Inc. created on 4/3/2008 [CNBMUSA00045438] |
| 116 | 2003 For Profit Corporation Uniform Business Report and Articles of Incorporation for BNBM of America, Inc. [part of Ex. 1 to the Deposition of Richard Hannam dated 2/13/2012] (Exhibit 144-3) |
| 117 | Notice of the State Administration of Taxation on Issuing the Measures for the Implementation of Special Tax Adjustments (for Trial Implementation) (No. 2 [2009] of the State Administration of Taxation) [ALRMH-CNBM00008856-8872] (Exhibit 90) |
| 118 | Declaration of Professor James Feinerman dated 9/16/2015 (Exhibit 409) |
| 119 | Deposition of CNBM  Group ZHOU Guoping dated 6/16-18/2015 |
| 120 | Deposition of PENG Shou dated 9/16/2015 |
| 121 | Resolutions of the General Meeting of Shareholders [of Taishan Gypsum] dated 4/25/2005 [TG0020601-602 & Translation] (Herman Aff. Ex. 185 filed 5/8/2012) |
| 122 | Shandong Taihe Dongxin Co., Ltd. Resolution of the First Extraordinary General Meeting of 2006 of Taishan [TG0020675-676 & Translation] (Herman Aff. Ex. 187 filed 5/8/2012) |
| 123 | *CNBM Import & Export v. Murphy Overseas USA Astoria Forest Products, LLC, et al.*, No. 14-cv-00746 (D.Ore.) [Rec.Doc. No. 18302-8] (Exhibit 508) |
| 124 | Deposition of Jeffrey J. Chang (BNK) dated 5/20/2015 |
| 125 | Deposition of CAO Jianglin dated 8-4-5/2015 |
| 126 | Deposition of Steve Zika dated 5/18/2015 (Exhibit 43-1(S)) |

11

| 127 | Memorandum of Understanding between Hampton Affiliates and CNBM Group (Exhibit 4 to Zika Deposition) |
| 128 | Murphy Overseas USA Astoria Forest Products, LLC v. CNBM Import & Export, et al., No. 14-cv-00752 (D. Ore.); Westerlund Log Handlers, LLC, et al. v. CNBM Import & Export, et al., No. 14-cv-00618 (Clatsop Cty. Cir. Ct. Ore.) |
| 129 | Joint Post-Hearing Memorandum of Clarification, CNBM Import & Export v. Murphy dated 1/26/15 & 2/10/15 [Rec. Doc. No. 18302-9] |
| 130 | Letter from counsel for Murphy/Astoria dated 4/3/2015, Stipulation dated 8/8/2014, Settlement Agreement dated 11/10/2014, and related materials [Rec. Doc. No. 18671-2] |
| 131 | Plaintiff China National Building Material Investment Co., Ltd. (f/k/a BND Co., Ltd.'s) Corporate Disclosure Statement filed in CNBMI v. BNK Int'l, No. 14-701 (W.D. Tex.) [part of Rec. Doc. No. 18671-13] |
| 132 | Complaint and exhibits thereto in CNBMI v. BNK Int'l, No. 14-701 (W.D. Tex.) [Rec. Doc. No. 18671-13] |
| 133 | CNBM Forest Products (Canada) Co., Ltd. "Contracts Status Check" [partial Translation of CNBMFP00001663] (Exhibit 511) |
| 134 | "Strengthen Operation, Accelerate Construction, Develop Harmoniously, Work Together to Create Success" [Partial Translation of BNBMPLC-E-0004827-4847] (Exhibit 315R) |
| 135 | "Welcome Speech on the 2008 BNBM Annual Marketing Meeting, BNBM General Manager Bing Wang" [Partial Translation of BNBMPLC-E-0005889-92] (Exhibit 316R) |

**INDEX OF SUPPLEMENTAL EXHIBITS**

**FSIA EX.**
**NUMBER**               **DESCRIPTION**

12

| | |
|---|---|
| 136 | Emails from Andrew K. Davidson, Esq. of Orrick dated 11/25/2015 regarding document productions by CNBM and CNBM Group |
| 137 | Updated Chart of CNBM Group Document Productions *Before* and *After* 30(b)(6) Deposition |
| 138 | Updated Chart of CNBM Document Productions *Before* and *After* 30(b)(6) Deposition |
| 139 | Chart of Taishan Document Productions *Before* and *After* CNBM-BNBM 30(b)(6) Depositions |
| 140 | Updated Chart of Taishan Document Productions *Before* and *After* 30(b)(6) Depositions |
| 141 | Official Transcript of Evidentiary Hearing dated 11/17/2015 (SEALED) |
| 142 | Memorandum re: "The Course of Events on Hiring Foreign Law Firms for the Gypsum Board Litigation in the United States – Brief Version of the Related Meetings" [BNBMPLC-E-0059965-66] (redacted pursuant to Court Order at Rec. Doc. No. 19792) (previously identified as FSIA Ex. 83) |
| 143 | Email from Anthony Irpino to Counsel for CNBM and CNBM Group dated 11/25/2015 regarding Outstanding Discovery Issues |
| 144 | Technical Code for Safety of Gypsum Plasterboard Enterprises: Instructions for Preparation [CNBMGRP00071458-480] (PENG Exhibit 810-1) |
| 145 | Email from BNBM PLC to Taishan Gypsum instructing over CNBM Group's Comprehensive Risk Management Notice dated 4/5/2010 [TG-0217959] (PENG Exhibit 815) |
| 146 | 2014 China National Building Materials Group Corporation Social Responsibility Report |
| 147 | Email and attachment from PENG Wenlong to Manager XU [advertising executive] dated 11/14/2010 [TG-071054-56] (PENG Exhibits 809 & 809-1) |
| 148 | Deposition of PENG Wenlong dated 11/12-14/2015 |

13

| 149 | Email chain between and among CNBM, BNBM, and Taishan re: "Notice on submitting the information of import and export business operation and countermeasures of the enterprises during the financial crisis" dated 11/3-5/2008 [TG-0218944-946] (PENG Exhibit 814) |
| 150 | Attachment to TG-0218944-946, "The Operation Situation and Relevant Suggestions on the Import and Export Business of Taishan Gypsum Company Limited" [TG-0218947-948] (PENG Exhibit 814-1) |
| 151 | "Informational Report on the Class Actions Brought by the U.S. Parties Against Taishan Gypsum Company Limited" dated 5/11/2009 [TG-0208428-30] (PENG Exhibit 825) |
| 152 | Email from PENG Wenlong [Taishan] to China Building Materials Academy dated 5/31/2009 [TG-0370699] (PENG Exhibit 817) |
| 153 | CNBM Group Corporation Meeting Minutes of the 5th Work Meeting of Managers of CNBMG Group dated 7/9/2010 [TG-00026029-39] (PENG Exhibit 822) |
| 154 | Attachment to TG-0370699: "Questions to the Enterprise(s)," Taishan's response to China Building Material Academy [TG-0370700] (PENG Exhibit 817-1) |
| 155 | Email from PENG Wenlong to ZHANG Jian dated 6/27/2010 [TG-0129674] (PENG Exhibit 801) |
| 156 | Attachment 1 to TG-0129674: "Statement on the Data and Statistics of Exports to the U.S. from 2005 to 2007" [TG-0129675-76] (PENG Exhibit 801-1) |
| 157 | Attachment 2 to TG-0129674: "Statistics of U.S. Gypsum Boards of Self-managed Export during 2005-2007" [TG-0129677] (PENG Exhibit 801-2) |
| 158 | Memorandum re: "The Course of Events on Hiring Foreign Law Firms for the Gypsum Board Litigation in the United States" [BNBMPLC-E-0059967-77] (redacted pursuant to Court Order at Rec. Doc. No. 19792) (previously identified as FSIA Ex. 85). |
| 159 | Email from ZHANG Jian to JIA Tongchun, CHEN Yu, and WANG Bing dated 6/3/2010 [TG-0374792] (PENG Exhibit 821) |

14

160       Attachment to TG-0374792: "Informational Report on Seriously and Proactively Doing a Good Job in Responding to the Incident of 'Problematic Gypsum Boards Shipped to the United States'" (Opinion Soliciting Draft) [TG-0374793-801] (PENG Exhibit 821-1)

161       CNBM Group's "Informational Report on Seriously and Proactively Doing a Good Job in Responding to the Incident of 'Problematic Gypsum Boards Shipped to the United States,'" *addressed to* General Administration of Quality Supervision, dated 4/10/2011 [TG-0217757-62] (PENG Exhibit 820)

162       Email chain between and among PENG Wenlong, DONG Chungang, and ZHANG Jian dated 10/14/2014-11/3/2014 [TG-0369908-13] (PENG Exhibit 800)

163       Meeting Minutes of the Seminar on Deepening Reform, CNBM Group Board of Directors, dated 2/26/2014 [CNBMGRP00023355-75] (PENG Exhibit 816)

164       Offering Memorandum for 654,214,000 H Shares of CNBM Stock dated 3/16/2006 (MS-14) [MS001946-93]

165       Deposition of Morgan Stanley (Terence Keyes) dated 11/14/2015

166       Morgan Stanley Post-Mortem PowerPoint for CNBM dated 3/16/2006 [MS056130-38] (MS-17)

167       CNBM Co., Ltd. [2007] No. 22, Tenth President's Office Meeting [CNBMCO00102014-25] (Exhibit 351)

168       "Present the People, the Object, and the Mindset, Integrate Strictness with Reliability, and Change the Work Style" [CNBMCO00055606-611] (Exhibit 392)

15

## INDEX OF SUPPLEMENTAL EXHIBITS

**FSIA EX.
NUMBER**          **DESCRIPTION**

169          Deposition of HU Jinyu dated 12/7/2015

170          "CNBM Co., Ltd. 2010, 6th Working Meeting" dated 6/11/2010
             [CNBMCO000327370-00327390]

171          "Request for Instructions on Establishing the Trade Union at the
             Headquarters of China National Building Material Company, Ltd." dated
             5/10/2006 [CNBMCO00032583-32585] (HU Exhibit 656)

172          ""Work Report of China National Building Material Company Ltd. on
             Special Treatment of Private Coffers" dated 11/11/2011
             [CNBMGRP00211002-00211011] (HU Exhibit 653)

173          "V. Problems found in the audit" [CNBMGRP00331473-00331500] (HU
             Exhibit 662)