UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL No. 2:09-md-2047 |
| | SECTION L |
| **THIS DOCUMENT RELATES TO:** | JUDGE ELDON E. FALLON |
| ***Amorin, et al. v. Taishan Gypsum Co., Ltd., et al.,*** **Case No. 11-cv-1395** | MAGISTRATE JUDGE JOSEPH C. WILKINSON, JR. |
| | **ORAL ARGUMENT REQUESTED** |

## CNBM AND THE BNBM ENTITIES' OPPOSITION TO PSC'S TRIAL PLAN

# TABLE OF CONTENTS

**Page**

I.      BACKGROUND ........................................................................................................... 1

II.     ARGUMENT ............................................................................................................... 1

     A.      Non-Defaulted Entities Retain Full Rights To Contest Liability And
          Causation................................................................................................. 2

     B.      Defaulted Entities Retain Jury Trial Rights ........................................................ 4

     C.      Resolution of Damages Necessitates Complete Discovery ................................... 6

     D.      Plaintiffs Bear The Burden Of Proving Remediation Damages ........................... 7

     E.      Resolution of Remediation Damages Cannot Simultaneously Be Based On
          2015 Data And 2018 Data....................................................................................... 8

     F.      The PSC's Claimant-Selection Process Contravenes Fifth Circuit Law .............. 8

     G.      *Brooke* is Unencumbered By The Procedural Complexities Of *Amorin*
          And Thus Warrants A Fresh And Distinct Litigation Process.............................. 9

III.    CONCLUSION ........................................................................................................... 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allenberg Cotton Co. v. Stacy*,
    384 So. 2d 514 (La. Ct. App. 1980)........................................................................4

*Arizona v. California*,
    530 U.S. 392 (2000)............................................................................................4

*In re Chevron U.S.A., Inc.*,
    109 F.3d 1016 (5th Cir. 1997) ...........................................................................9

*Clague v. Bednarski*,
    105 F.R.D. 552 (E.D.N.Y. 1985)........................................................................6

*Crider v. Collect Pros, LLC*,
    No. SACV1600138CJCJCGX, 2016 WL 10966425 (C.D. Cal. June 17, 2016)....................7

*Hacienda Records, L.P. v. Ramos*,
    718 F. App'x 223 (5th Cir. 2018) ......................................................................3

*HICA Educ. Loan Corp. v. Jones*,
    No. 12-cv-962, 2012 WL 3579690 (N.D. Ohio Aug. 16, 2012)................................7

*Int'l Union of Operating Engineers, Local No. 714 v. Sullivan Transfer, Inc.*,
    650 F.2d 669 (5th Cir. Unit A July 1981)............................................................3

*Khammash v. Clark*,
    145 So. 3d 246 (La. 2014) ................................................................................4

*Kormes v. Weis, Voisin & Co.*,
    61 F.R.D. 608 (E.D. Pa. 1974)......................................................................4, 5

*Lambert v. Allstate Ins. Co.*,
    195 So. 2d 698 (La. Ct. App. 1967)...................................................................8

*OrthoArm, Inc. v. Am. Orthodontics Corp.*,
    No. 06-C-0532, 2009 WL 10677059 (E.D. Wis. Feb. 9, 2009)................................7

*S.E.C. v. Wang*,
    No. 88-cv-4461, 1989 WL 135558 (S.D.N.Y. May 22, 1989) ................................7

*Sidag Aktiengesellschaft v. Smoked Foods Prod. Co.*,
    813 F.2d 81 (5th Cir. 1987) .............................................................................2

*Sparrow Capital, LLC v. Katcharian*,
    No. 11-CV-34-WOB, 2013 WL 12176855 (E.D. Ky. Sept. 13, 2013)....................................8

*In re Wells*,
    368 B.R. 506 (Bankr. M.D. La. 2006) ......................................................................4

*Zero Down Supply Chain Sols., Inc. v. Glob. Transp. Sols., Inc.*,
    282 F.R.D. 604 (D. Utah 2012) ...............................................................................5

**Rules**

Fed. R. Civ. P. 26(b)(1)..................................................................................................7

Fed. R. Civ. P. 38(d) ................................................................................................4, 5

Fed. R. Civ. P. 54(b) .....................................................................................................2

Fed. R. Civ. P. 55 ..........................................................................................................5

Fed. R. Civ. P. 55(b) .....................................................................................................5

Fed. R. Civ. P. 55(b)(2)............................................................................................5, 6

**Other Authorities**

46 Am. Jur. 2d Judgments § 285...................................................................................6

Restatement (Second) of Judgments § 27 cmt.e ...........................................................4

If the objective is to resolve this litigation expeditiously, the PSC's trial plan undermines that goal.  That's because any plan that sacrifices procedural rights for the sake of expediency puts at risk a forthcoming judgment—and if that judgment is reversed on appeal, it means the litigation starts anew.  Accordingly, the PSC's trial plan which touts speed as its virtue—and is even questionable as to that—is a short-sighted one.  The better course of action is to minimize procedural vulnerabilities and ensure the result of this litigation is just and secure.  CNBM and the BNBM Entities propose a plan that accomplishes these goals while *simultaneously* providing for prompt resolution.

## I.      BACKGROUND

On May 18, 2018, this Court entered an order stating that it "will proceed to the trial phase of all Louisiana actions within this Court's jurisdiction."  Rec. Doc. 21339.  Accordingly, the Court ordered that the parties meet and confer to discuss a trial plan.  *Id.*  Following numerous discussions, on July 11, 2018, Taishan filed a proposed trial plan, Rec. Doc. 21503, as did CNBM and the BNBM Entities, Rec. Doc. 21501.  The PSC submitted a plan to chambers and on July 16, 2018, the PSC filed a response to Taishan, CNBM, and the BNBM Entities' trial plans.  Rec. Doc. 21525.  On July 17, 2018, this Court scheduled oral argument on the matter for August 15, 2018 at 9:00 a.m.. Rec. Doc. 21532.

## II.      ARGUMENT

This litigation is at a crossroads.  What trial plan the Court adopts will not only dictate the foreseeable course of litigation but the amount of scrutiny applied on appeal.  For its part, the PSC proposes a plan that, it claims, has the virtue of efficiency.  But, with that singular focus, the plan dispenses with fundamental rights and firmly-rooted procedures, as we discuss below.  One is left to ask: at what expense?  Plaintiffs cannot execute on an order for remediation damages

1

alone because Rule 54(b) allows for partial final judgments only as to entire "claims" or "parties"—not types of damages (such as remediation). *Sidag Aktiengesellschaft v. Smoked Foods Prod. Co*., 813 F.2d 81, 84 (5th Cir. 1987) ("Only a fully adjudicated whole claim against a party may be certified under Rule 54(b)").  With finality dependent on resolution of all claims, including non-remediation damages, there is then no efficiency on the face of the PSC's plan. And by dispensing with fundamental rights in the name of expediency, the PSC's plan invites reversal and therefore would require all claimants to start the litigation process anew. Accordingly, the most prudent course of action is for this Court to adopt CNBM and the BNBM Entities' Trial Plan, which adheres to governing law and thereby is more efficient.[1]

### A.  Non-Defaulted Entities Retain Full Rights To Contest Liability And Causation

The PSC's Trial Plan rests on the premise that "liability has already been established with respect to the *Amorin* Plaintiffs."  Rec. Doc. 2152 at 21525.  Citing this Court's April 21, 2017 FOFCOL, the PSC claims that, due to "Defendants' default …, the only issue before the Court is the amount of damages which should be awarded."   PSC Trial Plan at 2.  But the Court could not have meant as to *all* Defendants.  After all, it has repeatedly acknowledged that certain Defendants are not in default.  Take for example the class certification FOFCOL.  There, the Court visually set forth the respective defaults, reflecting that certain companies were *not* in default in certain actions.  Rec. Doc. 1808 at 6.  And that recognition was driven by the PSC's own acknowledgment

---

[1] Alternatively, the Court should adopt a comparable version such as Taishan's, whose arguments and arguments against the PSC's Trial Plan are joined in full by CNBM and the BNBM Entities and incorporated by reference, *see* Rec. Doc. 21503-1.  To be clear, adoption of one of Defendants' proposed plans would not account for—nor rectify—the various errors they previously identified, including, by way of example only, the Court's class certification decision (and decision not to decertify), its adoption of Inglis' remediation formula, and its personal jurisdiction determination.

2

of the haphazard defaults.  Rec. Doc. 17883-1 at 10.  More to the point, a search of the Court's

docket reveals no default order as to BNBM Group or BNBM PLC in *Amorin* Louisiana.  *Cf.* Rec.

Doc. 17793 at 4 (listing defaults in *Amorin* Louisiana, which does not include BNBM Group or

BNBM PLC); 17792 at 4-6 (same); 17816 at 2 (same).

      Even in the face of this incontrovertible record, the PSC claims BNBM Group and BNBM

PLC's Trial Plan seeks to "revisit the default judgments against them" and obtain "relief which

this Court already denied multiple times."  Rec. Doc. 21525 at 14.  But that assertion presumes

defaults against them exist in *Amorin* Louisiana.  They do not.  And the PSC points to no order

otherwise, which is hardly surprising given that the PSC never moved for such a default.

      Nonetheless, the PSC appears to interpret this Court's April 21, 2017 rulings as somehow

either transferring other entities' defaults in *Amorin* Louisiana to the non-defaulted BNBM

Entities ("intra-case, inter-party transference") or applying the BNBM Entities' defaults in other

cases to the *Amorin* Louisiana action ("inter-case, intra-party transference").  But neither

supplies a basis for transferring defaults.  As to intra-case, inter-party transference, the only

plausible basis for doing so would be under an imputation theory.  But there can be no basis for

transferring alleged concessions *of liability* from one entity to another under such a theory when

this Court has expressly recognized it has not yet to "address the parties' arguments regarding

corporate veil piercing for purposes *of liability*."  Rec. Doc. 20739 at 39-40 (emphasis added).

As for inter-case, intra-party transference, that is an equally untenable proposition because it

would necessarily require application of collateral estoppel.  Yet, the "essence of collateral

estoppel by judgment is that some question or fact in dispute has been judicially and finally

determined."  *Int'l Union of Operating Engineers, Local No. 714 v. Sullivan Transfer, Inc.*, 650

F.2d 669, 676 (5th Cir. Unit A July 1981) (citation omitted); *see also Hacienda Records, L.P. v.*

*Ramos*, 718 F. App'x 223, 228-30 (5th Cir. 2018).  Here, however, there has been no final

judgment issued in any case in which a default has been entered against BNBM Group or BNBM

PLC.  Nor even if there had been, could there be preclusive effect as to liability because "[i]n the

case of a judgment entered by confession, consent, or *default*, none of the issues is actually

litigated." *Arizona v. California*, 530 U.S. 392, 414 (2000) (emphasis added); *see also*

*Restatement (Second) of Judgments* § 27 cmt. e (same).[2]

Because no defaults have been entered against BNBM Group or BNBM PLC in the

*Amorin* Louisiana litigation nor is there any basis for transferring any defaults to them, they

retain all rights—due process, statutory, and otherwise—to defend against all claims, including

as to liability, causation, and defect, before a jury.  The PSC's Trial Plan deprives BNBM Group

and BNBM PLC of these rights.  Specifically, it limits discovery to product identification, square

footage and homeownership status and denies them the right to a jury trial.  PSC Trial Plan at

8-11; Rec Doc. 21525 at 3 (ability to contest square footage and product ID "should be very

limited and involve only discrete factual disputes").

### B.    Defaulted Entities Retain Jury Trial Rights

Even as to defaulted entities, remediation damages should still be resolved by a jury.

While "it is generally agreed that neither party has a constitutional right to a jury trial on the

issue of damages after the entry of default," where the "plaintiff has [e]ndorsed a jury demand on

his complaint," a different calculus applies. *Kormes v. Weis, Voisin & Co.*, 61 F.R.D. 608, 609

---

[2] The result would be the same under state law.  *See In re Wells*, 368 B.R. 506, 511 (Bankr. M.D.
La. 2006) (under Louisiana law, "default judgments do not give rise to collateral estoppel in later
litigation"); *Khammash v. Clark*, 145 So. 3d 246, 257 (La. 2014) ("[A] previous judgment can
only preclude an issue against a party that *actually participated* in the litigation."  (emphasis
added)); *Allenberg Cotton Co. v. Stacy*, 384 So. 2d 514, 516 (La. Ct. App. 1980) (distinguishing
between "opportunity … to litigate" and "actually litigated").

(E.D. Pa. 1974).  That is because having made such a demand, a party is then subject to Federal Rule of Civil Procedure 38(d), which states "[a] proper demand [for a jury trial] may be withdrawn *only if the parties consent*."  *Id* (emphasis added).  That holds true even in the case of a Rule 55 default.  Stated otherwise, "nothing in the language of [Rule 38(d)] implies that the non-consenting party loses its right to a jury trial simply because it is in default."  *Zero Down Supply Chain Sols., Inc. v. Glob. Transp. Sols., Inc.*, 282 F.R.D. 604, 606 (D. Utah 2012).  For that reason, numerous courts "have held that the protection of Rule 38(d) is extended to the defendant after the entry of default, when Rule 55(b)(2) requires a determination of damages."  *Kormes*, 61 F.R.D. at 610 (citing cases); *see also Zero Down Supply Chain Sols., Inc.*. 282 F.R.D. at 606-07 (citing cases).

Here, the PSC's plan for resolution of remediation damages provides that "[t]he Court, with input from Co-Special Master Cal Mayo, if needed, shall assess if appropriate class remediation damages for *Amorin* Louisiana Former Owners and/or New Owners."  PSC Trial Plan at 11.  But the PSC ignores that it expressly requested that these issues proceed via jury trials.  Indeed, stated in bold in a separate and distinct heading in its complaint, the PSC stated, "Plaintiffs, individually and on behalf of the class members, *hereby demand a trial by jury* as to all issues so triable as a matter of right."  *Amorin v. Taishan*, Case No. 11-cv-1395, Rec. Doc. 1 at 49 (filed June 13, 2011) (emphasis added).  Likewise, the Complaint in Intervention reiterated the same jury demand.  Rec. Doc. 16227 at 2.  Having invoked Rule 38(d), Plaintiffs cannot unilaterally withdraw it.  Accordingly, all damages determinations—remediation and non-remediation—are subject to adjudication by a jury even as to defaulted entities.[3]

---

[3] It bears repeating that a distinction exists between defaults (or what this Court has referred to as "preliminary default judgments"), which are at issue here, and default judgments.  Defaults admit

### C.     Resolution of Damages Necessitates Complete Discovery

It is undisputed that a range of issues must be resolved to adjudicate damages.  As this Court explained, following an initial data run, Defendants would "be permitted to review and contest or seek set-offs," which includes verification of square footage as well as the "presence of Taishan Drywall in those properties."  Rec. Doc. 20741 at 50.  To adequately assert their rights as provided for in the Court's order, Defendants will require information beyond that provided in the spreadsheet process.  For instance, they will need to ask questions regarding repair time where homeowners engaged in self-remediation, the extent to which drywall disclosures were made in the case of former owners (and thus accounted for in the sale price), and authentication of physical drywall remnants.  However, the PSC's Trial Plan curtails—if not eliminates—the ability to gather such information insofar as it limits discovery to product identification, home ownership, and square footage.  And even as to these, it endeavors to limit fact-gathering to written discovery, imposing upon Defendants an obligation to show "good cause" why "depositions are necessary."  PSC Trial Plan 8, 10.

The PSC offers no basis for curtailing discovery in this manner.  To the extent the PSC's position is rooted in defaults, as noted above, that has no application to the BNBM Entities.  They have not defaulted in *Amorin* Louisiana.  Even as to defaulted entities, reviewing courts have recognized they are entitled to damages discovery.  As these courts have explained, "any rationale strong enough to justify allowing a defendant who has defaulted to appear and offer proof with respect to the amount of damages would equally justify allowing such defendant discovery with respect to the amount of damages."  *Clague v. Bednarski*, 105 F.R.D. 552, 552

---

to the allegations in the complaint; however, a defaulted defendant maintains the right to challenge damages pursuant to Federal Rule of Civil Procedure 55(b).  *See* 46 Am. Jur. 2d Judgments § 285.

(E.D.N.Y. 1985).  After all, "[t]here would be little point in allowing a defendant to contest the amount of damages if the defendant is not permitted adequately to prepare for the hearing on damages."  *Id.*  Accordingly, these courts have held "that Rule 26(b)(1) authorizes a defendant who has defaulted to conduct discovery regarding the amount of unliquidated damages in preparation for an inquest on damages under Rule 55(b)(2)."  *Id.*; *S.E.C. v. Wang*, No. 88-cv-4461, 1989 WL 135558, at *1 (S.D.N.Y. May 22, 1989).  That means a defaulted defendant "is entitled to conduct discovery through depositions rather than interrogatories if it so chooses." *OrthoArm, Inc. v. Am. Orthodontics Corp.*, No. 06-C-0532, 2009 WL 10677059, at *1 (E.D. Wis. Feb. 9, 2009).  As such, there is no basis for curtailing discovery as to issues the parties agree upon.

> ### D.    Plaintiffs Bear The Burden Of Proving Remediation Damages

The PSC similarly offers no authority to support its effort to shift the burden to Defendants to show damages eligibility.  Specifically, the PSC proposes that in the event "Defendants deny a product ID category was manufactured by Taishan, TTP, and/or BNBM, Defendants shall set forth with specificity the basis for the denial and both describe and attach all documents and identify all witnesses whose testimony, in whole or in part, form the basis for Defendants' denial."  PSC Trial Plan at 6-7.  By imposing this requirement, the PSC seems to suggest that the Defendants bear an obligation to demonstrate affirmatively that they did not manufacture any allegedly defective drywall rather than require plaintiffs to satisfy their burden to prove same by a preponderance of the evidence.  Such burden-flipping is contrary to black letter law, which recognizes that even in the case of a default, the "plaintiff bears the burden of establishing damages."  *HICA Educ. Loan Corp. v. Jones*, No. 12-cv-962, 2012 WL 3579690, at *1 (N.D. Ohio Aug. 16, 2012); *see also Crider v. Collect Pros, LLC*, No.

SACV1600138CJCJCGX, 2016 WL 10966425, at *3 (C.D. Cal. June 17, 2016) (following a

default, "Plaintiffs carry the burden of proving up their damages and requests for other relief");

*Sparrow Capital, LLC v. Katcharian*, No. 11-CV-34-WOB, 2013 WL 12176855, at *11 (E.D.

Ky. Sept. 13, 2013), *report and recommendation adopted*, No. CV 2011-34 (WOB-CJS), 2013

WL 12177260 (E.D. Ky. Sept. 26, 2013) ("Unlike the liability question, the allegations in the

complaint regarding the amount of the damages are not presumed to be true" and "[t]he burden is

'squarely and solely' upon Plaintiffs to establish damages.")

### E. Resolution of Remediation Damages Cannot Simultaneously Be Based On 2015 Data And 2018 Data.

The PSC's Trial Plan improperly relies upon data from two distinct time periods.  In

calculating damages, the PSC proposes that RS Means adjustments be made using 2018 data.

PSC Trial Plan 9, 10 ("the PSC shall submit RS Means calculations using 2018 data").  At the

same time, the PSC proposes evaluating homeownership "as of June 9, 2015." *Id.* at 8, 9.  The

use of asymmetric time periods is inherently incompatible.[4]  To illustrate the problem, under the

PSC's approach, an individual who sold her home in August 2015 would have her damages

calculated based on what it would cost to repair the property in 2018.  The PSC offers no

explanation for this sort of incongruous analysis.[5]

---

[4] Moreover, it is contrary to the class definition, which does not set any date for determining homeownership status.

[5] Nor does it offer any basis for resolving homeowner damages based on a damages formula rather than, where applicable, actual remediation costs incurred.  *Lambert v. Allstate Ins. Co.*, 195 So. 2d 698, 700 (La. Ct. App. 1967) ("Damages may be predicated on estimation only when the loss has not been repaired.  If the damaged property has been restored to its former condition by repair, the proper basis for assessing the damage is the repair bill.").

**F.      The PSC's Claimant-Selection Process Contravenes Fifth Circuit Law**

Unlike remediation damages, the PSC recognizes jury trials are in order for non-remediation damages.  PSC Trial Plan at 13.  It proposes an initial set of claimants.  *Id.*  CNBM and the BNBM Entities are in agreement with the PSC that a serial trial process is sensible.  However, it disagrees with the PSC's approach for identifying the initial set of claimants.  The PSC's Trial Plan confers upon it unilateral discretion to identify the first set of claimants for trial.  *Id.*  ("the PSC shall identify ___ *Amorin* Plaintiffs [ or ___ groups of *Amorin* Plaintiffs] whose claims for Other Damages will be set for jury trial").  Here too, the PSC offers no legal authority to support its one-sided selection process.  To the extent these trials are intended to be used as (or have the potential to be treated as) bellwethers—that is, serve a "value ascertainment function for settlement purposes"—they must be representative of the *Amorin* Louisiana claimants at-large.  *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997).  As the Fifth Circuit has explained, that means the "sample must be a randomly selected one of sufficient size so as to achieve statistical significance to the desired level of confidence in the result obtained."  *Id.*  The PSC's proposed unilateral selection process would preclude the parties here from "draw[ing] sufficiently reliable inferences about the whole that could, in turn, form the basis for a judgment affecting cases other than the selected" claimants.  *Id.*  Stated otherwise, the PSC's Trial Plan lacks any assurance of representativeness and thus undermines its stated goal of expediency by foreclosing the possibility of settlement following adjudication of its hand-selected initial sample set.

**G.      *Brooke* is Unencumbered By The Procedural Complexities Of *Amorin* And Thus Warrants A Fresh And Distinct Litigation Process**

The PSC claims that "Defendants' plans do not even address the Louisiana *Brooke* cases."  Rec. Doc. 21525.  But they do.  *See* Rec. Doc. 21501-1 at 9.  The PSC is simply

unhappy with the posture of that case.  Having waited until 2015 to file the *Brooke* complaints, the PSC secured no defaults.  And as recently as this year, the PSC continues to file intervening complaints in *Brooke*.  As such, that litigation is, for all intents and purposes, at "Day 1 of this MDL."  Rec. Doc. 21525.

Given that the PSC has repeatedly discussed remanding *Brooke*, there should be nothing contentious about the Defendants' proposal to do just that (remand to Florida), particularly given the overwhelming number of claims arising out of that state.  At a minimum though, the PSC's Trial Plan ignores *Brooke*'s wholly distinct posture.  It effectively creates a structure not dissimilar to *Amorin*[6] that is targeted towards damages-related discovery while ignoring discovery relating to liability, causation, and/or defect.  And, in any event, it fails to properly account for the role of discoverable information in briefing by imposing deadlines for filing dispositive motions *before* discovery is completed.  But the nature of many of these motions, such as those pertaining to statute of limitations and class certification, turn on discoverable information.  For instance, when a homeowner knew or should have known of her allegedly defective drywall is relevant to prescription/statute of limitations and the particular type of drywall in each home goes to the predominance inquiry for class certification.  Simply put, those motions cannot be briefed until discovery is conducted.  The PSC's efforts to cloud the process in *Brooke* by invoking its equitable arguments in *Amorin* should be disregarded.[7]  *Brooke* stands in a wholly distinct posture from *Amorin* and should be treated as such.

---

[6] As such, the arguments marshaled against the PSC's *Amorin* Trial Plan apply with equal force to the *Brooke* Trial Plan.  By way of example, the PSC's unilateral selection of claimants for trial in *Brooke* suffers from the same flaws identified above as to *Amorin*.

[7] Even as to the PSC's equitable arguments, it continually asserts that Defendants' supposed goal is delay.  But the PSC never explains why that would be so.  Homeowners are not incurring the cost of this litigation.  And Defendants recognize the PSC and Primary Counsel will vigorously

**III.     CONCLUSION**

For these reasons, this Court should reject the PSC's Trial Plan and adopt CNBM and the

BNBM Entities' proposed Trial Plans.

---

pursue this action—as they have—on behalf of all homeowners.  Thus, the PSC simply invokes
the boogeyman of delay—in lieu of legal authority—as a catch-all response to Defendants'
assertions of their rights.

Respectfully submitted,


*/s/ L. Christopher Vejnoska*

| | |
|---|---|
| L. Christopher Vejnoska (CA Bar No. 96082) | Eric A. Shumsky (D.C. Bar No. 477926) |
| Eric Matthew Hairston (CA Bar No. 229892) | ORRICK, HERRINGTON & SUTCLIFFE LLP |
| ORRICK, HERRINGTON & SUTCLIFFE LLP | Columbia Center |
| The Orrick Building | 1152 15th Street NW |
| San Francisco, CA 94105 | Washington, D.C. 20005 |
| T: 415-773-5700 | T: 202-339-8400 |
| Email: cvejnoska@orrick.com | Email: eshumsky@orrick.com |
| ehairston@orrick.com | |

James L. Stengel (NY Bar No. 1800556)
Xiang Wang (NY Bar No. 4311114)
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY, 10019
T: 212-506-5000
Email: jstengel@orrick.com
         xiangwang@orrick.com

*Attorneys for CNBM and the BNBM Entities*

Ewell E. Eagan, Jr. (LA Bar No. 5239)
Donna Phillips Currault (LA Bar No. 19533)
Alex B. Rothenberg (LA Bar No. 34740)
GORDON, ARATA, MONTGOMERY,
BARNETT, MCCOLLAM, DUPLANTIS &
EAGAN, LLC
201 St. Charles Avenue, 40th Floor
New Orleans, LA 70170-4000
T: (504) 582-1111
Email: eeagan@gamb.law
         dcurrault@gamb.law
         arothenberg@gamb.law

*Attorneys for CNBM Company, Ltd.*

Harry Rosenberg (LA Bar No. 11465)
PHELPS DUNBAR LLP
365 Canal Street, Suite 2000
New Orleans, LA 70130-6534
T:  (504) 584-9219
Email:  harry.rosenberg@phelps.com

*Attorneys for BNBM (Group) Co. Ltd. and BNBM PLC*

Dated:   August 7, 2018

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing CNBM AND THE BNBM ENTITIES'

OPPOSITION TO PSC'S TRIAL PLAN has been served on Plaintiffs' Liaison Counsel, Russ

Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail and upon all

parties by electronically uploading the same to File & Serve in accordance with Pre-Trial Order

No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States

District Court for the Eastern District of Louisiana by using the CM/ECF System, which will

send a notice of electronic filing in accordance with the procedures established in MDL 2047, on

August 7, 2018.

*/s/ L. Christopher Vejnoska*

L. Christopher Vejnoska (CA Bar No. 96082)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105
Tel:  415-773-5700
Fax: 415-773-5759
Email: cvejnoska@orrick.com

*Counsel for CNBM and the BNBM Entities*