UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

*****************************************************************

IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION * Docket No. 09-MDL-2047

* August 14, 2018

Relates to all cases * Section "L"

*****************************************************************

**REPORTER'S OFFICIAL TRANSCRIPT OF THE**

**MONTHLY STATUS CONFERENCE, MOTIONS HEARING, AND RULE TO SHOW CAUSE HEARING**

**BEFORE THE HONORABLE ELDON E. FALLON, UNITED STATES DISTRICT JUDGE.**

**APPEARANCES:**

**For the Plaintiffs:**

Leonard Davis
Emma Kingsdorf Schwab
Lawrence Centola
Patrick Wallace
Patrick Montoya
Richard Serpe
Salvadore Christina, Jr.
Sandra Duggan
Arnold Levin

**For the Defendants:**

Kerry Miller
Harry Rosenberg
Christy Eikhoff
Daniel Dysart

**REPORTED BY:** Mary Thompson, RMR, FCRR
500 Poydras Street, Room B275
New Orleans, Louisiana 70130
(504)589-7783

OFFICIAL TRANSCRIPT

**P R O C E E D I N G S**

(Call to order of the court.)

THE COURT: Be seated, please.

Good morning, ladies and gentlemen.

09:01:45 Call the case, please.

COURTROOM MANAGER: MDL 2047, *In Re: Chinese-Manufactured Drywall Products Liability Litigation*.

THE COURT: Liaison Counsel, make your appearances for the record, please.

09:01:58 MR. DAVIS: Good morning, Your Honor. Leonard Davis from the law firm of Herman, Herman & Katz on behalf of the plaintiffs.

MR. MILLER: Good morning, Judge Fallon. Kerry Miller on behalf of the Knauf defendants and Defense Steering Committee.

09:02:11 MR. ROSENBERG: Good morning, Your Honor. Harry Rosenberg as liaison counsel for CNBM, BNBM, and Taishan.

THE COURT: We're here today for our monthly status conference. I have a number of people on the phone so please use the microphone.

09:02:23 A moment ago I met with lead liaison counsel to discuss the proposed agenda with them. We'll take it in the order given.

Pretrial orders first.

MR. DAVIS: Your Honor, we're here on Joint Report No. 102. I will only go through those matters that really are

09:02:47 pertinent today as we see them. And I'm sure that Mr. Rosenberg

or Mr. Miller will step to the plate if they think I've missed something or if there's something that needs to be addressed in addition.

The first item is Section No. III, the INEX, Banner, Knauf, L&W, and Global settlements.

09:03:03

As the Court's aware, Knauf has filed a motion to extinguish the settlement obligations on certain remediation claims, and Mr. Miller is here to address that, too.

MR. MILLER: And, Judge, this is also set for after the status conference, but because we're going to ask to continue that motion to the next month, I can give the Court a brief status report on those claims.

09:03:23

THE COURT: The motion is continued. Why don't you do --

MR. MILLER: The motion is -- it's 21190. And there are a couple of claims that are left over. One -- two are the Glickman and Rodriguez claims. They are represented by Krupnick Campbell.

09:03:34

We worked out a deal with those parties and their counsel, and we filed a joint motion last Friday to move the Milestone Four payments into the Court's registry. If the Court grants that order, then the claimants would have to deal with Your Honor instead of the settlement administrator and Knauf defendants in terms of obtaining those finds.

09:03:58

Mr. George Toran, who is represented by Parker

09:04:13

Waichman, he has also requested the same relief and we were trying to work through those details to file a similar motion.

The other batch of claims are all represented by Colson Hicks. It's my understanding that those Option 2 or Option 3 claims will all be completed very shortly with the settlement administrator and be submitted to Mr. Woody at BrownGreer. We'll have to continue those until the next conference, but hopefully those will be moot at that point.

The only other one is Mr. Randolph Vincent, who is represented by Barrios Kingsdorf, and that one was an Option 2 claim that he had actually just went ahead and did the remediation without seeking the milestones. And the only relief he was seeking was an inspection so we just wanted to put on the record -- and Ms. Schwab is in agreement -- that we have made an agreement to pay the cost of that inspection to get an environmental certificate. And pass or fail, that's the only relief that Mr. Randolph Vincent is actually seeking. At that point he'll forego any further milestone payments from the remediation funds.

THE COURT: You are satisfied with that?

MS. SCHWAB: Yes, Your Honor.

THE COURT: And the other ones I will pass until the September meeting.

MR. MILLER: Thank you, Your Honor.

MR. DAVIS: Your Honor, the next item on the agenda is

Item No. IV, which is Taishan, BNBM, and the CNBM defendants.

There are a couple matters to address with the Court. One, as the Court's aware, there's a motion regarding supplemental profile alleged deficiencies that's set after the status conference, and we'll be prepared to address each of those matters with the Court.

THE COURT: Okay.

MR. DAVIS: Tomorrow we have a discussion with the Court on the proposed trial plans, and we'll be prepared to address that with the Court tomorrow at 9:00 a.m.

On the jurisdictional track, in September, the next status conference, we'll address with the Court the 1292 issue that's before the Court.

And the only other matter with respect to the Taishan issues are that the parties continue to address confidentiality, and we continue to bring that to the Court. As Your Honor addressed in the preconference, we dealt with the clerk and your clerk of court, Dean Oser, and we continue to deal with those matters and we will hopefully have that --

THE COURT: Yeah. The reason is that oftentimes we put the matters under seal initially to give the parties comfort from the standpoint of producing material, and material is produced or the briefs are filed, things of that nature. But there comes a time when the seal has to be reconsidered and taken off. And particularly in an appellate situation, that seal has to be

removed so that the appellate court gets the material, and that's what we're talking about now.

MR. DAVIS: Your Honor, the next item is Item No. VIII, attorneys' fees. As the Court's aware, the fee committee filed its responses to the objectors, and that's pending before the Court.

THE COURT: What I have done previously -- and I'm going to do the same -- is that I think it's important to have some process so that everybody has confidence in the fact that they're getting the right opportunity to brief matters and to argue matters. So the fee allocation committee made certain recommendations to me. They're just recommendations.

The fee allocation committee is composed of people who are both on the PSC as well as off of the PSC and who have done work on the case.

And I know they've done work on the case because monthly I meet with the CPA who allots all of the time and I make a note of the people who are doing the work, whether they're in or out of the committee. I appoint them on the committee to give me some recommendations.

Once the recommendations are made by the fee allocation committee, I then post those on the website and invite anyone having any objections to make their objections.

That is done. We have a number of objections now, and so I'll be appointing a special master to deal with the

09:09:18

objections. To take testimony if necessary, take discovery if necessary, but at least to meet with the parties and find out what their needs are, what their wishes are. And then he, after a period of time, will make a recommendation to me as to the objectors.

09:09:41

And at that point I'll have all of the material that the CPA has given to me over the years, the fee allocation committee's recommendations, and the special master's recommendation, and I'll be able to then formulate what I think is an appropriate fee distribution. And that's where we are at this time.

I'll do it as quickly as I can for you, but sometimes it takes a little while.

09:09:52

MR. DAVIS: Right. Your Honor, on Section IX there are four matters set for hearing after the status conference. And I won't get into that at this point because we'll deal with that following the status conference.

09:10:20

On Section XI on remand, just to update the Court, the Florida court had set previously a meeting, and counsel for all parties had an opportunity to attend in front of Judge Cooke. We expect that Judge Cooke will be mooting that matter, and as recently as this morning an order was issued.

09:10:41

But we will apprise the Court as to what's happening on an ongoing basis with respect to Florida, but there have been meetings and discussions with Florida counsel.

THE COURT: Right. And in that connection, the Knauf matters have been terminated -- just about -- in any event. Now we're focused and have been focused for some time on Taishan matters, as we've defined "Taishan." And the parties have done considerable discovery: Taken a large number of depositions, made trips to China, and things of that nature.

09:11:04

Notwithstanding the good efforts of counsel on both sides, the matters have not been able to be globally resolved at this time so it became my duty at that juncture to send the cases back so that they can be tried, and I'm doing that in waves. I sent the first several thousand to the Florida court and I'll be sending another bunch to the Virginia court. And we'll see how that works.

09:11:27

MR. DAVIS: Your Honor, the only other matter I think is the October status conference.

09:11:51

THE COURT: Our next status conference is September 13th.

Following that one, October 16th will be the status conference on that date.

Okay. All right. We'll take up, then -- I'll take just a couple minute break and we'll do the things that are outstanding, some of the motions.

09:12:07

Court will stand in recess for a couple of minutes.

(A recess was taken.)

**AFTER THE RECESS**

09:12:22

(Call to order of the court.)

THE COURT: Be seated, please.

We have several motions. The first motion is by Mr. Wayne.

09:17:58 Mr. Wayne, are you in the audience?

MR. WAYNE: (Indicating.)

THE COURT: Would you come forward, please.

Mr. William Wayne.

By way of background -- come on, Mr. Wayne.

09:18:12 By way of background, let me say that Mr. William Wayne filed a motion for a lump sum payment from Knauf. It's a settlement program.

I might start by saying that the Waynes owned the property located at 576 Huseman Lane in Covington, Louisiana. 09:18:36 Regions Bank held the mortgage on this particular piece of property, and Regions foreclosed on the property. The property was sold at auction in January of 2011.

Mr. Wayne filed a motion for a lump sum payment from the Knauf Settlement Program.

09:18:56 In January of 2018 the Special Master took into consideration the motion, and wrote an opinion denying Mr. Wayne's motion because Mr. Wayne had not proven that KPT property -- he was not a KPT property owner as that was described in the agreement under the terms of the agreement.

09:19:23 The bottom line in the case is, according to the

Special Master, that Mr. Wayne was unable to prove the percentage of drywall in his home to demonstrate his qualifications as a KPT property owner. He didn't have the home. It had been seized and sold. He doesn't own it anymore.

09:19:48 He's now appealed the Special Master's opinion to this Court.

The issue in the case, when you boil it all down, is whether the foreclosure provision in 4.3.5.1 of the agreement stands alone or whether it must be interpreted in relationship to 09:20:18 the other provisions of the agreement.

That's the contention here.

So I'll hear from Mr. Wayne at this time.

MR. WAYNE: That is correct.

THE COURT: Mr. Wayne, I appreciate you being with us 09:20:38 today and --

MR. WAYNE: Thank you, Mr. Fallon, for actually having me. After nine years, this is the first opportunity I've had to tell my story.

THE COURT: We've tried to keep everybody apprised of 09:20:48 what was happening with our website and also inviting anyone to court that was interested or able to be with us.

MR. WAYNE: I was represented until I think three or four years ago. After we recovered from the other losses fund, my lawyer said that was enough for him, I guess. And I was 09:21:07 asking lots of questions so he decided to turn me loose. Then he

sent me a bill, but that's okay.

So I want to start with a little bit of background on my particular case, and I'll try not to be too long-winded.

09:21:27 When I was a 26-year-old man, my family and I moved into the home that we contracted with Sunrise Homes. My oldest son was two months old. While we lived in that house, we suffered headaches and our infant son was repeatedly getting unexplained bloody noses.

09:21:43 Three years later my wife was pregnant with our second child. About halfway through, she began losing weight. And despite being put on a very high calorie diet by her doctor, every week she lost more weight until her doctor labeled her a risk to miscarry.

09:21:59 In the summer of 2009, Interior Exterior notified Sunrise Homes that, according to their records, a number of houses were delivered Knauf brand Chinese drywall during a period of shortage of U.S. Gypsum drywall, which is the brand that Sunrise contracted to have INEX deliver. One of those homes was ours, and Sunrise notified us of this fact.

09:22:15 We searched for and found an example of Knauf drywall installed in the home with the lettering. Our lawyers would later send a sample of this drywall to be tested, for which it tested positive, and take many photos of samples of corroded copper wiring. These were submitted to the settlement

09:22:31 administrator, otherwise we wouldn't have been able to

participate in the Other Losses Fund.

We informed my wife's doctor, whose mother just happened to be a researcher studying the Chinese drywall. We were given the doctor's order to leave the home and not take anything with us as all of our possessions were contaminated.

My wife never set foot in that house again. Within a week, her pregnancy returned to normal. As a man of logic, I knew that it wasn't possible at that time to prove that the various toxins emitted by the drywall put the pregnancy in jeopardy, but it would have been unethical to ask my wife to return to the home just to see if the pregnancy became threatened again. I'm glad I did not take that chance with my son's life. He's now nine years old.

There was a paper published recently in 2014 that summarizes a number of studies related to the various chemicals found in the contaminated drywall, and the symptoms match what my wife was going through and then lead to worse. I think maybe the long-term exposure was different than what they saw in the studies.

So after months of alternate living arrangements -- my family was living in Slidell and I was commuting to Baton Rouge so I was staying with friends and family in Hammond and Baton Rouge for a number of -- you know, for a period of time. And after I felt that I overstayed my welcome, I slept in a van in the parking garage at work for a few months before I finally

just quit my job. I was out of work for six months while I looked for another job, and then I moved to Austin.

So after months of alternate living arrangements with friends and family while paying my mortgage, it became clear that no help was forthcoming. My insurance company, for instance, denied all claims, refused to renew coverage, and withdrew from the entire region.

No other insurance companies were writing policies for those homes requiring those with mortgages to turn to the State's insurance of last resort, a policy that's several times more expensive than private insurance by design.

Sunrise Homes apologized but noted that because they were not legally required to remediate the home, and because it would be very expensive to do so, they weren't going to.

We filed a lawsuit against Sunrise Homes but the Louisiana New Home Warranty Act prevented the lawsuit as it was written with no concept of latent defects and the catch-all one-year warranty had long expired.

We filed another lawsuit to challenge the constitutionality of this aspect of the New Home Warranty Act, but threatened by the implications of such a suit, the Louisiana Home Builders Association --

THE COURT REPORTER: I need you to slow down, please.

THE COURT: Just slow down a little bit. She needs to --

MR. WAYNE: I'm sorry. Should I back up?

THE COURT: No, you're okay.

MR. WAYNE: Threatened by the implications of such a suit, the Louisiana Home Builders Association wrote an amicus brief, and the judge promptly chose to forcibly consolidate our suit into the MDL.

Tired of the process, I read the settlement agreement and thought that it was reasonably fair and that I would at least recover some of the very real and lasting economic damage wrought upon my family by Knauf's products.

There are two reasons I bring this up. The first is a reminder that this affected real people and real families.

The other is to dispel the idea that foreclosures are second-class citizens simply because we lack the financial wherewithal to support a mortgage, rent, and a policy with the insurer of last resort.

I'm now pushing 39 years old, but there is gray in my beard. I was patient for many years and trusted the process to play out, but in 2014 I began making phone calls to get some answers as to why there had been no movement in the MDL for foreclosures.

The first person I spoke with was, I believe, a member of the PSC. When I asked about foreclosures, he said foreclosures don't collect from the Remediation Funds.

I then asked why there was a foreclosure clause in the

definition of the Remediation Fund, but he offered no explanation.

I talked with BrownGreer, with permission from my lawyer, and they agreed with my position but they informed me that Knauf was given the ability to approve or deny claims, and they had been denying foreclosure claims -- the proverbial fox in charge of the henhouse. This is, as I understand it, why the Other Losses Fund was implemented so differently than how it was written. After my recovery from the Other Losses Fund, my lawyer cut his losses and quit.

What the settlement agreement says in Section 4.3.5.1 -- there are two subclauses, (a) and (b). (a) describes the recovery for the mortgagee who takes ownership of the foreclosed property and (b) describes the recovery from the owner prior to foreclosure.

The Special Master notes that it would be unfair to pay the lump sum payment twice on a single property; once to the mortgagee and once to the owner prior to foreclosure. However, this clause excludes the lump sum payment from the mortgagee and so there is no duplication of benefit.

As a software engineer with 20 years' experience writing and debugging software, I'm well practiced in finding logical errors and unintended consequences. In seeking to deny my recovery, Knauf continues to move the goalpost as their logical errors are exposed.

09:28:14 09:28:35 09:28:58 09:29:13 09:29:31

The first time I spoke with Knauf, it was Rene Marreno [phonetic] who I believe is no longer representing them. His argument was that because Section 4.3.1.1 refers specifically to KPT owners, as do all options for recovery, that I must be a KPT owner in order to recover benefits from the foreclosure clause.

My response, of course, is that if this were true, then the mixed properties would not be able to recover from Options 1, 2, or 3 either, as all of them also refer specifically to KPT owners. That Section 4.3.5.1 grants benefits of the lump sum payment overrides the fact that KPT owners are specified in that benefit.

The Special Master argues that mixed property owners actually are allowed to recover from Options 2 and 3, despite the language therein, because Section 4.3.4 grants them access. However, he argues that a 4.3.5.1 is not able to recover the lump sum because 4.3.4 does not have access to Option 1. As the KPT percentage of my house is an unknown and non-zero amount, it must be assumed that my property is a mixed property despite whatever evidence that we have.

The rationale here is that even though the transition from a mixed property owner to a foreclosed owner would cause that owner to lose all benefits enumerated in either Option 2 or 3, this transition must not confer new benefits.

However, the mixed property owners are, in fact, granted access to the lump sum payment in 4.3.1.1 through their

09:29:56 09:30:16 09:30:39 09:31:03 09:31:18

access to Options 2 and 3 which each grant access to 4.3.1.1. But also again in Sections 4.3.4.1 and 4.3.4.2, technically mixed property owners are granted access to the lump sum payment twice. The Special Master's assertion that a benefit not granted in 4.3.4 is not available to mixed property owners eliminates the recovery of explicit benefits.

The Special Master says that if a property owner could have recovered Option 1 benefits, such as a lump sum payment, but for the foreclosure, Section 4.3.5.1 sets forth how he can recover those benefits after the foreclosure.

And so because the mixed property clause does grant access to 4.3.1.1, the basis of the Special Master's argument is flawed.

Knauf asserts again that access to 4.3.1.1 requires a property be a KPT property and something about Section 4.4.1 enforcing the KPT percentage. However, once again this means that mixed property owners are also denied access to the lump sum payment despite explicitly being granted access to it.

Knauf expresses concerns that my interpretation opens the door for one owner to collect from both 4.3.4 and 4.3.5, as an example.

I agree that this should not occur. What I said was that 4.3.4 and 4.3.5 are sibling clauses and are therefore mutually exclusive. I can't imagine the situation where somebody would recover from the mixed property clause, for instance, and

then foreclose, and then apply again to get the lump sum benefit from the foreclosure clause. I don't understand how that would happen. You know, one should not collect from both anymore than one should collect from both mixed properties and multiple unit properties.

09:31:39

There's been this longstanding idea that in order to collect from the foreclosure clause, one must be a KPT owner and also sign a release -- or get a release signed by the mortgagee. The basis of this idea comes from the original settlement agreement where Section 4.3.5.2 said that in order for an owner, prior to foreclosure, to collect, that they must be a KPT owner and get a release signed by the mortgagee.

09:32:06

This clause, in 2012, was deprecated. It is no longer in existence, it is gone. But the ideas from that clause are still being imposed upon Section 4.3.5.1 for what was previously owners prior to the -- prior to foreclosure before the execution date of the agreement.

09:32:34

This clause was broadened to be more inclusive. If it had been narrowed to become more exclusive, then we would have had a much larger issue as it was several years after the house had been gone and I had already been required to sign away my -- abrogate my rights to collect from Sunrise Homes/Interior Exterior due to the settlement agreement.

09:32:58

THE COURT: Just finish. I'm going to let your opponent speak and then you can have an opportunity to rebut.

09:33:33

What's KPT's position on this matter?

Stay with us, Mr. Wayne. You're going to have a chance to rebut.

MR. DYSART: Good morning, Judge Fallon. Danny Dysart on behalf of the Knauf defendants.

09:33:56

Again, just to go back, like you said, to the background, this claim was originally denied by the settlement administrator. It went to the Special Master and it was also denied. And then it was referred back.

09:34:02

So the first time we got it is actually after the denial period.

With respect 4.3.5.1, what you said at the outset is completely true. The issue turns on whether that provision creates new benefits or whether it is read in interpretation with the rest of the agreement, that an owner understands that it flows for benefits to a foreclosure claimant if they can satisfy that provision.

09:34:18

And under 4.3.5.1, the two provisions -- well, first let me back up.

09:34:34

The lump sum payment comes out of the Remediation Fund. That's understood.

So as the Court is aware, there were two funds that were set up from the Knauf class settlement agreement, the Other Loss Fund and the Remediation Fund.

09:34:47

As a foreclosure claimant, Mr. Wayne, as he did, was

able to file an Other Loss Fund claim and seek losses for personal injury or foreclosure claims, et cetera.

THE COURT: And he did recover that?

MR. DYSART: He did recover that, yes, sir.

09:35:01 The other part of it is the lump sum payment which comes into effect under 4.3.5.1. That's under the Remediation Fund. To recover under the Remediation Fund, though, again you have to submit certain prerequisites to recover.

The other thing, he also mentioned Sunrise. There was 09:35:21 the Global/Banner/INEX settlement. Off the top of my head, I'm not sure if he did have GBI claims. Maybe Mr. Wayne can let me know on that, but I believe he may and he may have recovered GBI funds as well.

But in order to qualify under the Remediation Fund, all 09:35:41 claimants must satisfy 4.4.1. And in that they have to prove they had KPT Chinese drywall, corrosion, and they have to identify the KPT percentage.

It's undisputed here that Mr. Wayne is unable to identify any KPT percentage for the property. He attempted to do 09:35:57 so. He submitted a video to the Special Master and myself. It did show blue and yellow end tape. We reviewed it. We looked at it. Unfortunately, the blue and yellow end tape is not indicative of KPT drywall because, as the Court is well aware, there were other manufacturers with blue and yellow end tape, 09:36:17 including other Knauf entities, that had non-reactive drywall.

So without being able to establish a KPT percentage or any KPT drywall, he is not permitted to recover from the Remediation Fund or the lump sum payment to satisfy those provisions.

09:36:33 THE COURT: What's the percentage? 90 percent, 95 percent? What is the --

MR. DYSART: It's 90 percent.

THE COURT: 90 percent.

MR. DYSART: So, you know, our position, while 09:36:44 unfortunate for Mr. Wayne, is that 4.3.5.1 does not create enough benefits. It's benefits that may be satisfied if the claim goes into foreclosure, but he has to satisfy -- otherwise satisfy the release provision and the provision to establish that KPT percentage. And he has been unable to do so at this point, and 09:37:04 that is why the claim ultimately has been denied and why our position is that he's not entitled to the lump sum payment.

THE COURT: Okay. Mr. Wayne, do you have any response on that?

Let me explain. And you know the situation because 09:37:17 you've lived it. The problem in these cases is that you had some properties that had 100 percent KPT drywall and you had other properties that had a percentage of KPT drywall.

Now, when the negotiations proceeded, at first there was some indication that the company was not even interested in 09:37:48 discussing settlement unless people had 100 percent. Well, that

really wasn't the real world in this particular litigation, so after negotiations with the plaintiffs' committee, eventually an agreement was made that there would be a percentage of drywall. If a party could establish that they had 90 percent KPT drywall, which is Knauf drywall, then they would be entitled to partake of the settlement in foreclosure proceedings.

The problem with foreclosures is that there was concern by the defendant that they didn't want to pay twice, they just wanted to pay one person. And oftentimes with a foreclosure, the person who made the claim didn't own the property anymore, somebody else owned the property. So the deal was struck that, in that type situation, the claimant who made the claim would have to get some agreement with the present owner that they weren't going to make a claim or that they agreed with the settlement or whatever. There's some provisions made for that.

But the defendant takes the position that you've got to first satisfy the percentage requirement in order to get through the door.

You take the position that the 4.3.1 ought to stand alone and that ought to give you a claim.

The defendant says, Well, 4.3.1 is just one aspect of a large settlement agreement, and that ought to be taken into consideration with the entire agreement. And other provisions, even in that section, they say requires you first to prove that you're a KPT owner as that's defined. Namely, that 90 percent of

the property has KPT drywall in it. And then you also have the requirements of getting a release from the present owner.

You take the position that those provisions are really stand-alone provisions, and that that stand-alone, when interpreted that way, ought to give you an opportunity to get recovery of the lump sum.

That's the issue that I'm grappling with at this time.

MR. WAYNE: My interpretation of the reason for the foreclosure clause is as a concession to those who could not have had their homes remediated, those who lost tens of thousands of dollars in equity and personal possessions and time and all these other things.

Some people maybe have 10 percent. Some people maybe have 90 percent. The average, though, could be 50 percent, or something like that, if we want to talk about percentages. The recovery --

THE COURT: Well, I appreciate your interpretation, but that's not what counts. It's my interpretation --

MR. WAYNE: I understand.

THE COURT: -- that counts.

But I understand your argument, and I -- you're very articulate and you've expressed it very well. I understand the issue. I'll take that into consideration. I'll have to write an opinion on it, and you can see what I say on it.

MR. WAYNE: So there has been an argument that the --

09:42:12 09:42:25 09:42:35 09:42:48 09:43:03

the inspection is typically optional provided that the claimant can prove a certain amount of KPT in the house. We know, and it is undisputed, that there was reactive Knauf drywall in my home. Nobody has ever tried to dispute that. And so Section 4.3.5.1, when it says that the owner, prior to foreclosure, is granted the benefit of the lump sum payment, and it does not modify the award by the percentage --

THE COURT: Okay.

MR. WAYNE: Somebody who has 100 percent and somebody who has 20 percent with the same square footage, they would receive the same award.

THE COURT: Okay. I see. I got your point. Thank you very much.

MR. WAYNE: Okay.

THE COURT: Okay. Let's go to the next matter on the agenda, please.

I'll take that into consideration and I'll be writing an opinion on it.

Thank you, again, Mr. Wayne, for being with us.

MR. WAYNE: Thank you.

CASE MANAGER: Slidell Property Management.

THE COURT: Let's do the Slidell Property. What's that one from Knauf's standpoint?

CASE MANAGER: There's a show cause, Judge.

THE COURT: The LLC, is that the matter?

09:43:26 09:43:49 09:44:04 09:44:20 09:44:32

MR. DYSART: That's right, Your Honor. This was set as a show cause order by --

THE COURT: Yeah. But this was a case where the plaintiff is a corporation and they have been representing themselves *pro se*, and under the law a corporation cannot do that. The motion was filed to dismiss the case on that basis. I alerted the parties that a rule to show cause would be made to show whether or not there is any representation.

I understand there is no representation. They are *pro se*, which cannot be done, so I'll dismiss the claim.

MR. DYSART: And I believe Mr. Campbell is his name. I don't know if Mr. Campbell is in court today.

But, again, just for the record, Your Honor, from the Knauf defendants' standpoint, I think this relates to the dec action that you had. In terms of the Knauf class settlement agreement, his claim was extinguished in December of 2016, but this relates to some outstanding matters.

And you are correct, Your Honor, he is represented -- the company has represented itself as *pro se*, Slidell Property Management, LLC.

THE COURT: Okay. So we dismiss that case.

The next one is the motion to extinguish. Do you want to take those up?

MR. DYSART: That's right, Your Honor. I gave a brief status report of this during the status conference. We're going

 09:44:45 09:44:57 09:45:19 09:53:08 09:53:27

to pass this motion, continue it until September.

THE COURT: September.

MR. DYSART: And at that point it's our hope that all the outstanding claims will be mooted out because they will be resolved through the program.

THE COURT: If not, let me know, and we'll take those up.

MR. DYSART: Thank you, Your Honor.

THE COURT: The next item on the agenda is the Taishan matters.

CASE MANAGER: I think we need to get people on the phone for this one. We need a short break.

THE COURT: We need some people on the phone -- or give them an opportunity to be on the phone so we'll take a five-minute break to deal with that.

(A recess was taken.)

**AFTER THE RECESS**

(Call to order of the court.)

THE COURT: Be seated, please.

Now we have a rule to show cause of why certain cases should not be dismissed for failing to comply with the requirements. I'll take them in the order presented.

MS. EIKHOFF: Good morning, Your Honor. Christy Eikhoff on behalf of Taishan.

MS. SCHWAB: Good morning, Your Honor. Emma Schwab on

09:53:36 09:54:01 09:54:30 09:54:50 09:55:10

behalf of the plaintiffs.

THE COURT: Okay.

MS. EIKHOFF: May it please the Court:

It has been seven months to the day since this Court issued its PTO 11 ordering the plaintiffs to complete a supplemental plaintiff profile form. The original deadline for responding to the Court's order and completing those forms was March 22, 2018.

The defendants have granted more than 1,000 requests for extensions since then. The defendants also issued notices of deficiencies for people who missed the first deadline.

Additional extensions were granted.

We issued more notices of deficiency in April.

Finally, after several months and several missed deadlines, we moved to dismiss.

And at the last status conference on July 18th, the Court admonished from the bench that any plaintiffs who had not yet complied, needed to comply, or else show cause why their claim should not be dismissed.

The Court entered a show cause order on July 30th.

And since then we have received a few that have adjusted and cured their deficiency.

And, Your Honor, we are prepared to go through and give the Court the names of those that have cured their deficiency, the names of those who have consented to the dismissal, and then

the names of those that are still outstanding and that we believe should be dismissed under Rule 37(b)(2)(A) for non-compliance with the Court's order.

I do want to mention for the record, Your Honor, that of the noncompliant SPPFs, or just failure to comply with the Court's order, 71 of those are Florida claimants for residences in Florida.

It is the position of the defendants that this Court could still at least dismiss those from the complaints that continue to be in front of this Court in the MDL, which is the Louisiana *Amorin* complaint and the Virginia *Amorin* complaint, but we understand from the Court that it will defer those decisions --

THE COURT: Right.

MS. EIKHOFF: -- for Florida.

Okay. So for the record, the 12 that were attached as an exhibit to the order to show cause that is Document No. 21608 filed on July 30, 2018 -- 12 have occurred.

And for the record, I will identify those 12 as:

2522 Cambronne Street, LLC.

Chester Bilbo.

Ora Brock.

Crystal Farve.

Merle Foxworth.

Rose Giving.

Marie and Timothy Helmick.

Melissa Hudson.

Carroll Lamarque, Jr.

Lubraine and Anese Racius.

09:57:23 Taylor Travis.

And Jason Urtubey.

Did I get those right?

MS. SCHWAB: Yes, Your Honor, that's correct.

I would just like to note for the record, though, that 09:57:41 three properties -- Helmick, Racius, Urtubey -- are Florida properties so that would fall into the category that Christy mentioned earlier.

THE COURT: All right. Well, I'll pass the Florida properties, defer those.

09:57:56 But the others have complied so they will be removed from the exhibit -- from the dismissal list.

MS. SCHWAB: Thank you, Your Honor.

MS. EIKHOFF: We have also received notice from claimants for two properties, that they wish for their claims to 09:58:15 be dismissed and do not object to the dismissal.

THE COURT: Okay.

MS. EIKHOFF: The first one is James & Vita, LLC.

It's also listed as Ken James and Thomas Vita.

And then the second property is Exilus Louise and 09:58:52 Roselene Alexis.

09:59:14 09:59:37 10:00:08 10:00:23 10:00:38

And we have received word from counsel that those parties wish to be dismissed from this action.

MS. SCHWAB: Your Honor, the record doc numbers for those responses are 21435 and 21436 for the Louise property.

And for James it's 21660.

THE COURT: All right. I'll dismiss those with prejudice.

MS. EIKHOFF: If we subtract out the 71 Florida claims that have failed to comply, by my count that leaves us with 44 non-Florida claims that are still subject to dismissal.

I do understand that there may be counsel on the phone who may want to speak for those claimants, and so I'll just read a name and wait and see if somebody has something to say.

The first one is Silas Battie.

MR. CHRISTINA: Your Honor, Sal Christina from The Becnel Law Firm, Your Honor.

Mr. Battie had moved to Alabama. We recently just located him there. We'd sent him two copies of the claim form to fill out, and we just have not gotten it returned from him.

We sent the notice after the last status conference that the rule to show cause was going to occur at this status conference, but we just haven't received anything back.

THE COURT: All right. I'll do this. I'll pass that for 30 days, but he's got to know that if he doesn't present the material, I'll be dismissing it with prejudice.

MR. CHRISTINA: Yes, sir.

THE COURT: In these matters we've got large numbers of cases, and the only way you can handle a matter of this sort is to have fact sheets, profile forms, and they have to be filled out and sent back. I give them an opportunity to fill it out. There's some problems occasionally. There may be deaths, there may be moves, things of that sort.

But if they cannot fill out the forms, then that means that they're not willing to participate in the litigation, and I dismiss them with prejudice.

MR. CHRISTINA: Yes, sir.

THE COURT: So I'll pass it for 30 days, but next time if he doesn't give it to you, I will be dismissing his case.

MR. CHRISTINA: Yes, sir. I have four others listed. Do you want to take them now or --

THE COURT: Sure, we can take them now.

MR. CHRISTINA: Three of the other ones that are pending, Your Honor, are Charles Bowden, Konrad Hampton, and Lawrence Murphy. We have sent notices to all the addresses we had on file. I got on to the Assessors' websites to see if there were any new addresses. The only one that had a different address was Mr. Murphy. We sent him notices and there's just been no response from him.

So I couldn't voluntarily agree to dismiss --

THE COURT: No, I understand.

MR. CHRISTINA: -- but I wanted to let Your Honor know what was going on.

THE COURT: It's not counsel's fault. Counsel have done everything they can to have the clients cooperate. It's just that they have to understand that they have responsibilities to keep in touch with their lawyer, as well as the lawyer has a responsibility to keep in touch with the client. It's not just a one-way street.

And these individuals are alerted to it. They've been noticed. And notwithstanding that, they've chosen not to respond to their attorney so I'm going to dismiss it with prejudice.

MR. CHRISTINA: Okay. And then the last one is Sandra Steffy, Your Honor. She's an active member of the Navy and has been moved around a lot recently. From Louisiana she went to North Carolina, and then two different locations in Virginia. I'm just not quite sure where she is right now.

We have learned that Road Home remediated her property, and so we're trying to work with the State of Louisiana to see if they can fill out the claim form on her behalf to have it turned in to you since they'll have most of the information as to who did the work and how much it cost.

THE COURT: How long do you think --

MR. CHRISTINA: If I could have 30 days on that one as well --

THE COURT: I'll pass that one for 30 days with her

being in the Navy.

MR. CHRISTINA: Yes, Your Honor. Thank you.

THE COURT: Christy, bring those up next time, the 30 days, so that we can deal with them.

10:03:21 MS. EIKHOFF: Yes, Your Honor.

The next one on the list is Larry Bazemore represented by Colson Hicks and others.

(No response.)

THE COURT: Hearing no one speak on his behalf, I will 10:03:36 dismiss that with prejudice.

MS. EIKHOFF: Levin is on it, too.

MR. LEVIN: Thanks.

THE COURT: What's the next one?

MS. EIKHOFF: The next one is Elbert Bland represented 10:03:55 by Reich & Binstock, LLP.

THE COURT: Anyone for Mr. Bland?

(No response.)

THE COURT: Okay. I'll dismiss that one with prejudice.

10:04:04 MS. EIKHOFF: The next is a *pro se* plaintiff. It says Tiffany Braden as representative of the Estate of Jane Bienemy, deceased.

MS. SCHWAB: Your Honor, I just would like to note for the record that I have made a handful of attempts to try to get 10:04:25 in touch with the Braden Estate. At the time that the motion to

dismiss was filed, there were roughly seven *pro se* litigants, and we -- I've gotten in touch with all of them except for this *pro se* plaintiff.

I've done people map searches through Westlaw and tried to get ahold of everybody, including other heirs that are not the estate representative, but have not received a response back.

I would request some additional time to try to get ahold of somebody to submit the supplemental plaintiff profile form for Braden.

THE COURT: Due to the fact that the person is *pro se*, I'll give them 30 days, but let's keep in touch with it. If they don't respond, I'm going to be dismissing it.

MS. SCHWAB: Absolutely.

MS. EIKHOFF: The next claimants are Juanita and William Bridges represented by Hurricane Legal Center, LLC.

THE COURT: Anyone on the phone for those individuals?

MR. CENTOLA: Hello?

THE COURT: Hello.

MR. CENTOLA: Larry Centola on behalf of Hurricane Legal Center. Can you hear me?

THE COURT: Very lightly. Get a little closer to the phone.

MR. CENTOLA: I'm on top of it, Judge.

Again, Lawrence Centola, on behalf of Hurricane Legal Center.

We have 15 cases in the situation, and it's somewhat what the other attorneys have said. We've made contact, we sent out letters. Based upon the way Your Honor has been ruling, I would ask for a final 30-day extension with the understanding that that is it.

THE COURT: How many do you have on that one?

MR. CENTOLA: Fifteen, Your Honor.

We've gotten letters back from James Waiters and Albert Williams that they are no longer at those addresses. I'm doubtful whether I can get them, but, again, would ask for 30 days.

THE COURT: Well, yeah. With respect to those two individuals, you know, they've already indicated by their lack of response. I'll carve those out. We'll dismiss those.

But the others I'll pass for 30 days. But if you don't have responses by those individuals in 30 days, I'm going to dismiss them with prejudice.

MS. EIKHOFF: Your Honor, to clarify, you're giving 30 days to all 15 that they represent?

THE COURT: Well, 13 of the 15.

What's the two that --

MR. CENTOLA: The two that came back were Waiters, James and Terrea, and Albert Williams.

THE COURT: Okay. Those are dismissed with prejudice. The other 15 -- or 13 I'll pass for 30 days.

Do you have those listed, Christy.

MS. EIKHOFF: I do. They'll be on my list as I go down it.

THE COURT: Okay.

10:07:33 MS. EIKHOFF: Your Honor, of course the defendants believe the seven months' time has been sufficient.

THE COURT: I understand.

MS. EIKHOFF: I don't think that he's offered good cause. He's just saying "just give me 30 more days." The other 10:07:45 ones who have gotten 30 days have given some explanation.

THE COURT: I agree with that except that this is a hurricane group. It's not just the --

MR. LEVIN: I want to address the Colson Hicks that was passed before.

10:08:00 THE COURT: All right.

MR. LEVIN: It's my understanding that Patrick was on the line and got kicked off.

MR. MONTOYA: I just joined the line. I apologize.

MR. LEVIN: It appears that -- Patrick will handle 10:08:12 this, but it appears it's a North Carolina case, which is usually a Richard Serpe case, so I don't know whether Patrick has the information.

But in any event, Richard Serpe would have the information. And if the client was uncooperative, I could 10:08:29 confirm that with Richard Serpe and I'm sure we wouldn't even

have to wait 30 days on that one.

MS. EIKHOFF: Just to make sure the record is clear, we're talking about Larry Bazemore.

MR. LEVIN: Yes.

10:08:37 MS. EIKHOFF: And Larry Bazemore, the Court previously said, would be dismissed but now counsel is --

MR. LEVIN: You may know more than me.

But let's hear from Patrick, sir.

THE COURT: Go ahead, Patrick.

10:08:51 MR. MONTOYA: Your Honor, my apologies. The reception is terrible. If you could let me know what the question is, I would be happy to respond.

MS. EIKHOFF: It's the rule to show cause by Larry Bazemore.

10:09:04 THE COURT: Bazemore.

MR. MONTOYA: Yes, and hearing what Mr. Levin just said, that's correct. That's the North Carolina clients. I would have to consult with Mr. Serpe. My apologies.

MR. LEVIN: We'll call Richard Serpe today and we'll

10:09:26 get Christy the information right away. And if it's an uncooperative client, we have no reason to pursue it. And we'll tell Christy and we'll inform the Court.

THE COURT: All right. Alert me to that, then --

MR. LEVIN: Absolutely, Your Honor.

10:09:53 THE COURT: -- within a week.

You know, the point is, I'm not -- I don't willy nilly dismiss the case, and there's always reasons. But after a period of time, if the client doesn't respond to the lawyer and the lawyer keeps trying to do something but gets no response, I have no alternative but to dismiss the case. I mean, that's where we are at this point.

MS. EIKHOFF: Your Honor, the next name on the list is one of the Hurricane Legal Center claimants, which is Kerri and Jack Brown, so we understand that they've been given 30 days to comply.

THE COURT: Right.

MS. EIKHOFF: The next one on the list is Thomas Chestnut represented by Reich & Binstock.

THE COURT: Anyone on for that?

(No response.)

THE COURT: Hearing none, dismissed with prejudice.

MS. EIKHOFF: The next one is Angela Crandle also of Riech & Binstock.

(No response.)

THE COURT: Dismissed with prejudice.

MS. EIKHOFF: The next one is Harry DeOlivera also represented by Riech & Binstock.

(No response.)

THE COURT: Dismissed with prejudice.

MS. EIKHOFF: The next name is Ray Dillon represented

10:11:23
10:11:35
10:11:53
10:12:11
10:12:24

by Martzell, Bickford & Centola APC.

THE COURT: Anyone on that one?

(No response.)

THE COURT: Dismissed with prejudice.

MS. EIKHOFF: The next is Kim Dowell also represented by Martzell Bickford.

(No response.)

THE COURT: Dismissed with prejudice.

MS. EIKHOFF: The next name is represented by Hurricane Legal Center, LLC, so we understand that they will be given 30 days. The name is Victor Duvernay.

The next one is Charles England represented by Whitfield Bryson & Mason.

MR. WALLACE: Good morning, Your Honor. This is Pat Wallace with Whitfield Bryson & Mason.

Mr. England is deceased and we have been in contact with his heirs. We request a 30-day extension.

THE COURT: Okay. I'll pass it for 30 days, then.

Let's get that taken care of, though.

MR. WALLACE: Okay.

MS. EIKHOFF: The next one is also represented by Whitfield Bryson & Mason, and that is -- the claimants are Jameson and Lauren Falls.

MR. WALLACE: Your Honor, we have made several attempts to communicate with the Falls and have been unsuccessful. We do

not oppose dismissal.

THE COURT: Okay. Notwithstanding the efforts of counsel, the parties have not responded. Dismissed with prejudice.

10:12:35 MS. EIKHOFF: And the next claimants are also represented by Whitfield Bryson & Mason. The names are David and Marjorie Fulton.

MR. WALLACE: Your Honor, we've made several attempts to contact the Fultons and have been unsuccessful. We do not oppose dismissal. 10:12:48

THE COURT: Dismissed with prejudice.

MS. EIKHOFF: The next name is Konrad Hampton, and I believe that that is one of the ones that you extended 30 days to. He's represented by The Becnel Law Firm.

10:13:09 The next claimants are Fred and Sylvia Johnson represented by Matthews & Associates.

MR. WALLACE: Your Honor, Pat Wallace here. I believe this was also a Whitfield Bryson & Mason client. We have been in contact with the Johnsons. They're an elderly couple who have 10:13:32 had some difficulty understanding the process. However, we have made successful contact with them and we believe that, given a 30-day extension, we could file a supplemental fact sheet. We request a 30-day extension.

THE COURT: Okay. I'll pass it for 30 days, but if 10:13:47 they don't comply, I'm going to dismiss the case. You need to

10:14:00
10:14:22
10:14:46
10:15:02
10:15:26

tell them that.

MR. WALLACE: Thank you, Your Honor.

MS. EIKHOFF: The next one is represented by Hurricane Legal Center, and so I understand they have been granted 30 days.

The name of the claimant is Walter Johnson.

The next one is represented by Whitfield Bryson & Mason, and the name is Christopher Jones.

MR. WALLACE: We have made several attempts to contact Mr. Jones and have been unsuccessful. We do not oppose dismissal.

THE COURT: Dismissed with prejudice.

MS. EIKHOFF: The next one is represented by Herman, Herman & Katz. We received a written response on this one. The name is Merritt Landry.

MR. DAVIS: Your Honor, Leonard Davis from Herman, Herman & Katz.

We actually have four cases that are on this list, Merritt Landry, which counsel opposite just mentioned. There's also Debra Peoples. There's Michelle Rogers also known as Michelle Canepa. And there's Logan Williams.

With respect to the first three, Landry, Peoples, and Canepa, we have attempted to reach these claimants repeatedly since February of 2018. You'll see that we filed a response, Rec Doc 21643, which outlines our efforts, as well as attempting to phone these people. We have not received responses from them.

However, with respect to --

THE COURT: Let's take those first.

Notwithstanding the efforts of counsel, the parties haven't responded. It's through no fault of counsel. I'll dismiss them with prejudice.

10:15:49

MR. DAVIS: Your Honor, with respect to Logan Williams, again we outlined our efforts in Rec Doc 21643.

With respect to those, not only have we written this claimant, but we've also had numerous telephone conversations. And we were told at least twice that we had been sent a supplemental profile form and that we should have received it, but unfortunately we haven't.

10:16:10

We would like to have some time to try to find out what the situation is with that and make sure before the Court takes some action with respect to this particular claimant.

10:16:30

But we'll do our best efforts to try to locate that if, in fact, it's been sent or try to get another copy. And we certainly won't delay the matter.

THE COURT: I'll pass it for 30 days.

MR. DAVIS: Thank you.

10:16:44

MS. DUGGAN: Your Honor, Richard Serpe is on the line now and has a statement to make about Larry Bazemore.

MR. SERPE: Good morning, Your Honor.

THE COURT: Good morning, Richard.

What's the situation with --

10:16:57

MS. EIKHOFF: Larry Bazemore.

THE COURT: -- Larry Bazemore?

MR. SERPE: Mr. Bazemore.

Yes, Your Honor, years ago we had authority and filed the claim on behalf of Mr. Bazemore. We've used diligent efforts. We confirmed recently, after this rule to show cause was set, to find instructions from him with respect to his intention of moving forward or not, and he has not responded to any repeated requests.

Your Honor, I believe it's appropriate to dismiss the matter at this time.

THE COURT: We'll dismiss it with prejudice.

Thank you, Richard.

MR. LEVIN: That was faster than one week.

THE COURT: Right.

MS. EIKHOFF: The next claimant is represented by Hurricane Legal Center so we understand they've been granted a 30-day deadline. And the name is Norma Lazard.

The next name on the list is represented by The Becnel Law Firm so we understand they've also been granted a 30-day extension because of their attorney's remarks earlier. And the name is Lawrence Murphy.

The next name is represented by Hurricane Legal Center. We understand they have been granted a 30-day deadline. And that is Barbara Nicholas.

Hurricane Legal Center also represents Manuel Patterson. We understand 30 days have been extended.

Your Honor just dismissed the claim of Debra Peoples who is represented by Herman, Herman & Katz.

10:19:04 MR. DAVIS: I think we addressed the four Herman, Herman & Katz matters.

MS. EIKHOFF: Right.

THE COURT: Right.

MS. EIKHOFF: The next claimants actually have three claims for three separate properties. The name of the claimant is Billy W. Rogers on behalf of Rogers Company. And they are represented by the Law Offices of Sidney D. Torres, III, for three different properties.

10:19:16

THE COURT: Anyone on the line for Rogers?

10:19:44 (No response.)

MS. EIKHOFF: For Billy Rogers of Rogers Company.

(No response.)

THE COURT: We'll dismiss it with prejudice.

MS. EIKHOFF: The next name has been dismissed. They are represented by Herman, Herman & Katz. And the name is Michelle L. Rogers.

10:20:15

The next claimant is represented by Hurricane Legal Center and has received a 30-day deadline. The name is Hubert Sentino.

10:20:33 Also represented by Hurricane Legal Center with a

30-day extension is Sarah and Michael Sims.

Represented by The Becnel Law Firm and granted 30 days by the Court already is Sandra Steffy and Peggy Meyers.

The next claimant is represented by Whitfield, Bryson & Mason, and the name is Christopher Thrower.

10:21:08

MR. WALLACE: Your Honor, Pat Wallace for Whitfield Bryson & Mason. We have made several attempts to contact Mr. Thrower and have been unsuccessful and we do not oppose dismissal.

10:21:23

THE COURT: Okay. Dismissed with prejudice.

MS. EIKHOFF: The next claimant is represented by Hurricane Legal Center and so receives 30 days. The name is Joel Tillman.

The next name is represented by Hurricane Legal Center, but I understand it may be one that's being dismissed so we probably need clarification on that. That is James and Terrea Waiters.

10:21:42

MR. CENTOLA: That's correct.

THE COURT: Dismissed with prejudice.

10:22:02

MS. EIKHOFF: The next claimant on the list is Christopher and Tanya Walker represented by Colson Hicks and Serpe.

MR. CENTOLA: Richard, if you could address that one.

MR. SERPE: I'm sorry, the name once again?

10:22:20

MS. EIKHOFF: Christopher and Tanya Walker.

10:22:39

Richard, is that you on the line?

MR. SERPE: Yes, it is.

Can you pass this and I'll chime in, in a minute, please? I'm doing some research.

MS. EIKHOFF: Okay. We'll move on.

The next claimant is represented by Hurricane Legal Center and has been granted 30 days. That is Monique Washington.

Also represented by Hurricane Legal Center and granted 30 days are Dave and Darnell Welcome.

10:22:59

The next claimant is represented by Hurricane Legal Center, but I understand the claim has been dismissed. And that is Albert Williams.

THE COURT: Is that Albert Logan Williams?

MS. EIKHOFF: No, sir. It's just Albert Williams, 3015 Clouet Street.

10:23:20

THE COURT: Okay. Dismissed with prejudice.

MS. EIKHOFF: The next claimant is represented by Whitfield, Bryson & Mason. Deborah Williams is the name of the claimant.

10:23:34

MR. WALLACE: Pat Wallace for Whitfield, Bryson & Mason.

Your Honor, regarding Ms. Williams, this is another individual who's been deceased. We have been in contact with her estate, and have -- we have made contact. They are following up with us. I understand they are a little slow given that this

10:23:48

10:24:09 10:24:34 10:24:55 10:25:17 10:25:37

woman is deceased. We request a 30-day extension to submit the plaintiff's fact sheet.

THE COURT: I'll extend it for 30 days.

MS. EIKHOFF: The next name on the list has already been discussed by the Court and Mr. Davis, Logan Williams. We understand he has been granted a 30-day extension.

The next on the list are Raymond and Johnell Williams represented by Hurricane Legal Center. We understand 30 days has been extended by the Court.

The next claimants on the list are Alton and Rhonda Wilson represented by Levin Papantonio.

(No response.)

THE COURT: Okay. Dismissed with prejudice.

MS. EIKHOFF: And that's it, Your Honor.

THE COURT: Okay. Back to -- what is the one that --

MS. EIKHOFF: That's right.

MR. SERPE: The Walker case.

MS. EIKHOFF: Christopher and Tanya Walker. The address is 712 Stanhope Close.

MR. SERPE: Your Honor, I have to beg the Court's indulgence. I think because it was filed under Colson's name, I wasn't on my toes with this information. This is one of my files, and as I'm reading the file here, I'm just not at a point where I can report to the Court.

And I'm -- with the Court's indulgence, I think this is

10:25:51 10:26:03 10:26:25 10:26:39 10:26:47

one to be dismissed, but I just don't want to commit to that. If I could have a week, I'm happy to work with counsel towards a stipulation.

THE COURT: Okay. We'll pass it for a week.

Is that it?

MS. EIKHOFF: Thank you, Your Honor.

THE COURT: Y'all get together --

MS. SCHWAB: Your Honor, one note. Danny Seymore was on the rule to show cause list for an address of 86 Legends Lane. This property was not filed on the *Amorin* complaints and is not part of the *Amorin* class so it is not subject to PTO 11B.

THE COURT: All right. Would y'all get together and give me a judgment on it and I'll dismiss the cases that were indicated?

MS. EIKHOFF: Yes, Your Honor. We'll work together and provide the Court with a proposed order of dismissal with prejudice.

MR. SERPE: Your Honor, I'm sorry. It's Richard Serpe. I've just found the final confirming letter. I don't need a week. It is appropriate to dismiss the Walker claim at this time.

THE COURT: We'll dismiss it with prejudice.

Thank you, Richard.

MR. SERPE: Thank you, Your Honor.

MR. DAVIS: Just so it's clear for the court reporter,

if we could get an expedited transcript, that would be helpful for the parties since this is the first time.

Thank you.

THE COURT: Right. Okay. Folks. As I understand it, the next conference in October is the 16th of October. The 16th of October.

10:27:00

Okay. Court will stand in recess. Thank you.

(Proceedings adjourned.)

* * * *

**CERTIFICATE**

**I hereby certify this 15th day of August, 2018, that the foregoing is, to the best of my ability and understanding, a true and correct transcript of the proceedings in the above-entitled matter.**

***/s/ Mary V. Thompson***

**Official Court Reporter**