## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL NO. 2047**<br>**SECTION: L** |
| **THIS DOCUMENT RELATES TO:**<br>*Germano v. Taishan Gypsum*, 2:09-6687 (E.D. La.);<br>*Abner v. Taishan Gypsum*, 2:11-cv-3094 (E.D. La.);<br>*Gross v. Knauf Gips KG*, 2:09-6690 (E.D. La.);<br>*Wiltz v. BNBM*, 2:10-361 (E.D. La.);<br>*Posey v. BNBM Co.*, 2:09-cv-6531 (E.D. La.);<br>*Morris v. BNBM Co.*, 2:09-cv-6530 (E.D. La.);<br>*Amorin v. Taishan Gypsum*, 2:11-1672 (E.D. La.);<br>*Amorin v. Taishan Gypsum*, 2:11-1395 (E.D. La.);<br>*Amorin v. Taishan Gypsum*, 2:11-1673 (E.D. La.);<br>*Amorin v. SASAC*, 2:14-cv-1727 (E.D. La.) | **JUDGE FALLON**<br>**MAG. JUDGE WILKINSON** |

**OMNIBUS RESPONSE/REPLY OF THE PLAINTIFFS' STEERING COMMITTEE TO MOTIONS REGARDING CONTEMPT,[1] ENFORCEMENT OF CONTEMPT ORDER,[2] CLASS DAMAGES HEARING,[3] AND MOTION TO WITHDRAW AS COUNSEL FOR TAISHAN GYPSUM CO., LTD. AND TAIAN TAISHAN PLASTERBOARD CO., LTD.[4]**

---

[1] This Memorandum responds to Taishan's Motion to Lift Order of Contempt [Rec. Doc. No. 18449] and serves as a reply in support of the PSC's Motion to Preclude Taishan or Any of its Affiliates from Participating in Proceedings Involving Plaintiffs' Motion for Assessment of Class Damages Unless and Until Taishan Purges Itself of Contempt [Rec. Doc. No. 18367].

[2] This Memorandum opposes CNBM's Motion for a Continuance of Hearing Date on the Motion to Enforce the Court's July 17, 2014 Contempt Order and Injunction ("Motion to Enforce") [Rec. Doc. No. 18455] and serves as a reply in support of the Motion to Enforce [Rec. Doc. Nos. 18302, 18433 & 18447].

[3] This Memorandum opposes the attempt by CNBM and BNBM to challenge this Court's Findings of Fact and Conclusions of Law in *Germano* and *Amorin* [Rec. Doc. Nos. 18453, 18454].

[4] This Memorandum opposes the Motion of Hogan Lovells US LLP and Stanley, Reuter, Ross, Thornton & Alford, LLC to Withdraw as Counsel for Taishan and TTP [Rec. Doc. No. 18456].

## TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................................................... II

TABLE OF AUTHORITIES ................................................................................IV

I.    CURRENT STATE OF AFFAIRS...................................................1

II.    ARGUMENT..................................................................................16

    A.    The Hearing to Assess Class Damages Should Proceed on March 26, 2015, as Ordered by the Court. ................................................16

        1.    Because the Entry of Default Under FRCP 55(a) Against Taishan, BNBM, and CNBM Establishes Their Liability Per the Allegations in the Complaints They Failed to Answer, the Only Issue Before the Court is the Amount of Damages for Which These Defendants Are Liable. ...............................................................16

        2.    CNBM/BNBM Are Estopped From Further Delaying These Proceedings.............................................................17

        3.    The Interests of CNBM and BNBM, with Taishan, Have Been Aligned Since the Inception of this Litigation, and Thus, These Interests Were Protected....................................20

        4.    Res Judicata ("Claim Preclusion") Bars CNBM/BNBM from Asserting any Claims or Defenses in the Class Damages Hearing that Could have Been Asserted in the *Germano* Proceedings..................24

            a)    The Parties in Class Damages Proceedings are In Privity with the Parties in the Germano Proceedings. ................26

            b)    The *Germano* Default Judgment was Rendered by a Court of Competent Jurisdiction. ................29

            c)    The *Germano* Default Judgment is a Final Judgment on the Merits.................................................29

            d)    The Same Claim or Causes of Action that were Involved in the *Germano* Proceedings are Involved in the Class Damages Proceeding. ................30

         5.    Even if the Default Judgments are Vacated, The Court's September 26, 2014 Findings of Fact and Conclusions of Law are Binding on CNBM and BNBM..................................31

        6.    Class Damages Are Proper Under These Circumstances, Because The Class Consists of Active Litigants With Inspection Reports and Average Square Footage Information.................................34

    B.    The Court Has Sole Authority to Determine Whether its Criminal and Civil Contempt Order Has Been Satisfied. ................36

1. *Germano* Plaintiffs Have Not Yet Received Payment of Their $2.7 Million Judgment From Taishan.................................................. 36

2. PSC Is Entitled to Additional Attorneys' Fees Since Date of Contempt Order on July 17, 2014, Due to Extensive Efforts Required to Enforce the Order.......................................................... 37

3. The Court's Contempt Order and Injunction – Enjoining Taishan and Its Affiliates and Subsidiaries From Doing Business in the U.S. Until Taishan Complies, and Imposing a 25% Profits Penalty For Any Violation – Is Constitutional. ....................................................... 38

   a) The Issuance of the Contempt Order was Appropriate as to Taishan and May be Extended to its Affiliates.......................... 39

   b) The Injunction from Doing Business in the United States Unless the Defendants Purge Themselves of Contempt Was Permissible. ..................................................................................... 42

C. Plaintiffs Are Entitled to Enforce the Court's Contempt Order.................. 42

D. The Court Should Deny Hogan Lovells' Motion to Withdraw..................... 43

E. Plaintiffs Are Entitled To Discovery Regarding the Interrelated Global Conglomerate of SASAC/CNBM Companies. .................................................. 48

   1. Alter Ego Relationships and Allegations Warrant Discovery. ......... 48

   2. If Discovery Is Stayed, the Court Should Order the Attachment of $2 Billion of CNBM's and BNMB's Assets for the Purpose of Securing Satisfaction of Potential Liability to 4,000 Plaintiffs. ....................... 50

III. CONCLUSION ................................................................................................. 51

CERTIFICATE OF SERVICE ........................................................................................ 55

iii

# **TABLE OF AUTHORITIES**

## Cases

*Airco Indus. Gases, Inc. v. Teamsters Health & Welfare Pension Fund*, 850 F.2d 1028 (3rd Cir. 1988)................................................................................................................ 33

*Alabama v. Blue Bird Body Company,* 573 F.2d 309 (5th Cir. 1978) ........................................ 35

*Alessi v. Belanger*, 644 So. 2d 778 (La. Ct. App. 1994).............................................................. 50

*American Auto. Ass'n v. AAA Legal Clinic*, 930 F.2d 1117 (5th Cir. 1991) ............. 31, 32, 33, 34

*Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Civ. Action No. 11-1395 (E.D. La.).............................................................................................. 21

*Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Civ. Action No. 11-1673 (E.D. La.).............................................................................................. 21

*Aurelius Capital Master, Ltd. v. Republic of Argentina*, 589 F. App'x 16 (2d Cir. 2014).......... 49

*Bell Atlantic Corp. v. AT&T Corp.*, 339 F.3d 294 (5th Cir. 2003) ............................................. 35

*Benson & Ford, Inc. v. Wanda Petroleum Co.,* 833 F.2d 1172 (5th Cir. 1987).................... 26, 27

*Beshansky v. First Nat. Entertainment Corp.*, 140 F.R.D. 272 (S.D.N.Y. 1990)......................... 47

*Bonilla v. Trebol Motors Corp.*, 150 F.3d 77 (1st Cir. 1998) ..................................................... 24

*Bowers v. Greene*, 360 So. 2d 639 (La. Ct. App.), *writ denied*, 362 So. 2d 801 (La. 1978)........ 50

*Brandon v. Blech*, 560 F.3d 536 (6th Cir. 2009)........................................................................ 44

*Brook Village North Assoc. v. Gen. Elec. Co.*, 686 F.2d 66 (1st Cir. 1982)................................ 33

*Broughten v. Voss*, 634 F.2d 880 (5th Cir. 1981) ...................................................................... 44

*Buschmeier v. G&G Investments, Inc.*, 222 F. Appx. 160 (3rd Cir. 2007)................................. 47

*Campbell v. Spectrum Automation Co.*, 601 F.2d 246 (6th Cir. 1979)...................................... 31

*Chesapeake Operating, Inc. v. Stratco Operating Co.*, No. 07-354-B-M2, 2009 WL 426101 (M.D. La. Feb. 20, 2009).......................................................................................................... 49

*Compaq Computer Corp. v. Ergonome, Inc.*, 196 F. Supp. 2d 471 (S.D. Tex. 2002), *aff'd*, 387 F.3d 403, 412-13 (5th Cir. 2004) ............................................................................................ 49

*Cook v. Ochsner Found. Hosp.*, 559 F.2d 270, 272 (5th Cir. 1977)................................... 37, 38

*Donovan v. Carls Drug Co., Inc.*, 703 F.2d 650 (2d Cir. 1983) ................................................. 32

*Emile v. Browner*, 1996 WL 724715 (S.D.N.Y. Dec. 17, 1996) ............................................... 47

*Eubanks v. Federal Deposit Ins. Corp.,* 977 F.2d 166 (5th Cir. 1992)....................................... 26

*F.T.C. v. Kuykendall*, 371 F.3d 745 (10th Cir. 2004) ......................................................... 41, 42

*Fid. Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins. Co.*, 310 F.3d 537 (7th Cir. 2002)....................................................................................................................................... 47

*Fielding v. Herbert Burda Media, Inc.*, 415 F.3d 419 (5th Cir. 2005) ....................................... 48

*Frame v. S-H, Inc.*, 967 F.2d 194 (5th Cir. 1992)..................................................................... 24

*Freeman v. Lester Coggins Trucking, Inc.,* 771 F.2d 860, 864 (5th Cir. 1985) ......................... 26

*Gross, et al. v. Knauf Gips, KG, et al.*, Civ. Action No. 09-6690 (E.D. La.) .............................. 21

*Haines v. Liggett Grp., Inc.*, 814 F. Supp. 414 (D.N.J. 1993) ................................................... 47

*Hamilton v. First American Title Insurance, Co.*, 226 F.R.D. 153 (N.D. Tex. 2010).................. 35

*Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334 (5th Cir. 1982)........................................... 26

*Harris v. United States*, 382 U.S. 162 (1965)............................................................................ 42

*Heller v. Cepia, L.L.C.*, No. C 11-01146 JSW, 2012 WL 13572 (N.D. Cal. Jan. 4, 2012), *aff'd*, 560 F. App'x 678 (9th Cir. 2014)........................................................................................... 49

*Hovey v. Elliott*, 167 U.S. 409 (1897)................................................................................. 21, 22

*In re Carney*, 258 F.3d 415 (5th Cir. 2001)........................................................... 31, 32, 33, 34

*In re Chevron USA*, 109 F.3d 1016 (5th Cir. 1997)................................................................... 34

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 2013 WL 499474 (E.D. La. Feb. 7, 2013)........................................................................................................................................ 2

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 2014 WL 4809520 (E.D. La. Sept. 26, 2014).................................................................................................................................. passim

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 706 F. Supp. 2d 655 (E.D. La. 2010). 9, 21

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576 & 753 F.3d 521 (5th Cir. 2014).................................................................................................................................. passim

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576 (5th Cir. 2014) ..... passim

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819 (E.D. La. 2012). 2, 9

*In re Howe*, 913 F.2d 1138 (5th Cir. 1990) ............................................................................... 26

*In re Oliver*, 333 U.S. 257 (1948)............................................................................................. 42

*Isenberg v. Chase Bank USA N.A.*, 661 F. Supp. 2d 627 (N.D. Tex. 2009) .............................. 24

*Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579 (5th Cir. 2010) ...................................... 48

*James v. Frame*, 6 F.3d 307 (5th Cir. 1993) ............................................................................. 22

*John Hancock Property and Cas. Ins. Co. v. Universal Reinsurance Co., Ltd.*, 1993 WL 147560 (S.D.N.Y. Apr. 30, 1993) ........................................................................................................ 47

*Jones v. U.S. ex rel. Farmers Home Admin.*, 46 F.3d 67 (5th Cir. 1995).................................... 30

*Kenneth and Barbara Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al.*, Civ. Action No. 10-361 (E.D. La.)............................................................................................ 21

*Migra v. Warren City School Dist. Bd. of Education,* 465 U.S. 75, 77 n.1 (1984)...................... 25

*Minelli Constr. Co. v. United Derrickmen & Riggers Ass'n, Local 197*, No. 90 Civ. 2846 (RJW), 1990 WL 180550 (S.D.N.Y. Nov. 14, 1990) ........................................................................... 49

*Moyer v. Mathas*, 458 F.2d 431 (5th Cir. 1972) ....................................................................... 30

*Multistate Legal Studies, Inc. v. Marino*, No. 96-5118 ABC (RNBX), 1996 WL 786124 (C.D. Cal. Nov. 4, 1996) .................................................................................................................. 49

*Ocean-Oil Expert Witness, Inc. v. O'Dwyer*, 451 F. App'x 324 (5th Cir. 2011) ........................ 42

*Ohntrup v. Firearms Ctr., Inc.*, 802 F.2d 676 (3d Cir. 1986)..................................................... 47

*Rainbolt v. Johnson*, 669 F.2d 767 (D.C. Cir. 1981) ................................................................. 33

*Reebok Int'l Ltd. v. McLaughlin*, 827 F. Supp. 622 (S.D. Cal. 1993), *rev'd on other grounds*, 49 F.3d 1387 (9th Cir. 1995)....................................................................................................... 41

*Rousseau v. 3 Eagles Aviation, Inc.*, 130 F. App'x 687 (5th Cir. 2005)......................................38

*Rusinow v. Kamara*, 920 F. Supp. 69 (D.N.J. 1996) ......................................................................47

*Saldana v. Zubha Foods, LLC*, 2013 WL 3305542 (W.D. Tex. 2013) ..........................................22

*Savidge v. Fincannon*, 836 F.2d 898 (5th Cir. 1988)......................................................................30

*Seven Arts Pictures, Inc. v. Jonesfilm*, 512 F. App'x 419 (5th Cir. 2013)....................................43

*Steering Committee v. Exxon Mobil Corp.*, 461 F.3d 598, 601 (5th Cir. 2006) ...........................35

*Stubbs v. Comm'r Internal Rev.*, 797 F.2d 936 (11th Cir. 1986)...................................................31

*Tegal Corp. v. Tokyo Electron Co.*, 248 F.3d 1376 (Fed. Cir. 2001) .....................................41, 42

*Towns v. Morris*, 50 F.3d 8 (4th Cir. 1995) ...................................................................................47

*Toys 'R Us, Inc. v. Step Two, S.A.*, 318 F.3d 446 (3d Cir.2003).................................................48

*Trak Microcomputer Corp. v. Wearne Bros.*, 628 F. Supp. 1089 (N.D. Ill. 1985).......................49

*United States Use of M-CO Constr., Inc. v. Shipco General, Inc.*, 814 F.2d 1011 (5th Cir. 1987)
...........................................................................................................................................................22

*United States v. Hernandez*, 771 F.3d 707 (10th Cir. 2014)..........................................................40

*United States v. Kasuboski*, 834 F.2d 1345 (7th Cir. 1987)....................................................32, 33

*United States v. Onu*, 730 F.2d 253 (5th Cir. 1984) ......................................................................40

*United States v. Shanbaum*, 10 F.3d 305 (5th Cir. 1994) .......................................................25, 26

*United States v. United Mine Workers*, 330 U.S. 258 (1947).......................................................37

*United States v. Voss*, 82 F.3d 1521 (10th Cir. 1996)...................................................................41

*Waffenschmidt v. MacKay*, 763 F.2d 711 (5th Cir. 1985).............................................................43

*Walker v. Newgent*, 583 F.2d 163 (5th Cir. 1978) ........................................................................48

*Whiting v. Lacara*, 187 F.3d 317 (2d Cir. 1999)...........................................................................45

*Williams v. City of Dothan*, 818 F.2d 755 (11th Cir. 1987)..........................................................33

*Windham v. American Brands, Inc.*, 565 F.2d 59 (4th Cir. 1977).................................................35

## Statutes

28 U.S.C. § 1961 .............................................................................................................................36

Federal Rule of Civil Procedure 36(b)............................................................................................32

Federal Rule of Civil Procedure 55 ..........................................................................................16, 17

Federal Rule of Civil Procedure 64 ................................................................................................50

Federal Rule of Civil Procedure 65 ................................................................................................43

Federal Rule of Criminal Procedure 42 .....................................................................................39, 42

Louisiana Code of Civil Procedure article 3543.............................................................................50

Louisiana Code of Civil Procedure article 3544.............................................................................50

## Rules

Louisiana Rule of Professional Conduct 1.16..................................................................................46

## Treatises

10-55 MOORE'S FEDERAL PRACTICE - CIVIL § 55.32 ....................................................................24

3B MOORE'S FEDERAL PRACTICE................................................................................................. 35

Wright, Miller & Marcus, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2254 (1994) ........ 31

I.    **CURRENT STATE OF AFFAIRS**

• More than 4,000 families living primarily in the Gulf Coast states of Louisiana, Florida, Alabama, Mississippi, and Texas, and in Virginia and elsewhere, are still awaiting redress for the extensive damages they have suffered as a result of having defective Chinese Drywall, manufactured by Taishan Gypsum Co. Ltd. ("Taishan") and/or its wholly-owned subsidiary and alter ego Taian Taishan Plasterboard Co., Ltd. ("TTP"), installed in their homes. In the aggregate, these Plaintiffs have losses in excess of $1 billion.  Despite filing lawsuits against these manufacturers and their controlling parent companies China National Building Materials (Group) Co., Ltd.  ("CNBM Group"), Beijing New Building Material (Group) Co., Ltd. ("BNBM Group"), China National Building Material Company, Limited ("CNBM"), and Beijing New Building Materials Public Limited Co. ("BNBM"), beginning in 2009, to date, none of these Plaintiffs have received any money from the Taishan Defendants.[5]

Sadly, many of these "Taishan Plaintiffs" have been displaced from their homes while awaiting relief, incurring tremendous expense for alternative housing, and, unable to afford the significant costs required to remediate their properties, have undergone foreclosure or been forced to declare bankruptcy.  For those Taishan Plaintiffs remaining in their contaminated properties, their horrendous plight is made more intolerable because they have had to witness that many of their neighbors – who happen to have Knauf Chinese Drywall installed in their homes – have realized justice.  In contrast to the actions of the obstinate Chinese Taishan

---

[5] Taishan contends that it is now "in the process of satisfying the *Germano* Default Judgment," almost five years after that judgment was entered by the Court [Rec. Doc. No. 18449-1 at 5].  As of the date of this filing, however, the seven *Germano* families (most of which have been forced to declare bankruptcy or suffer short sales of their homes as a result of the dangerous Taishan drywall in their homes and the extensive delays in receiving payment) do not have any of their money from Taishan.  These Plaintiffs are entitled to $2,758,356.20, plus post-judgment interest and costs.

1

Defendants, the German Knauf Defendants honorably stepped up to the plate and established an uncapped settlement fund valued in excess of $1 billion to provide Knauf homeowners with complete remediation relief and other benefits. *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 2013 WL 499474 (E.D. La. Feb. 7, 2013).

- After exhibiting a recalcitrant attitude towards the authority of this Court and these judicial proceedings for almost six years – by ignoring complaints properly served through the Hague Convention,[6] by allowing multiple default judgments to be entered,[7] including a $2.7 million judgment against Taishan in *Germano*, by using precious judicial resources to contest personal jurisdiction at the trial court level[8] and on appeal,[9] with no intention of satisfying any

---

[6] *See* Rec. Doc. Nos. 3256, 3257, 4217, 7027, 9306, 12942, 12943, 13774, 13775, 13776, 13777, 16990, 17909, 17910, 17911, 17912, 17914, 17915, 17916, 17917, 17921, 17922, and 17923 (Proofs of Service under the Hague Convention attached hereto as Exhibit "1").

[7] *See* Rec. Doc. Nos. 487, 3013, 17814, 17815 (Taishan defaults); *see also* Rec. Doc. Nos. 17814, 17815 (TTP defaults); *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 2014 WL 4809520, *2-3 (E.D. La. Sept. 26, 2014) ("FOFCOL") (discussing default judgments against Taishan and its Affiliates and including chart of cases where these entities have been held in default).

[8] This required a significant commitment from the Court and its staff to oversee extensive jurisdictional discovery of Taishan and TTP, entailing months of depositions of numerous witnesses located on several continents. Taishan's lack of forthrightness required the filing and adjudication of numerous motions to compel and for sanctions against Taishan. Ultimately, due to conflicts between the parties' interpreters at the foreign depositions, the Court ordered that a second round of depositions of Taishan's witnesses would take place in Hong Kong under the Court's first-hand supervision, using a single court-appointed translator, to oversee witnesses bent on exaggeration and deception. After extensive briefing, compilation of a monumental record, and an all-day evidentiary hearing in June, 2012, which was coordinated with related State-court proceedings, the Court determined in an epic 142-page opinion that Taishan and TTP were alter-egos subject to the Court's jurisdiction. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 834, 865, 892, 903 (E.D. La. 2012).

[9] Taishan filed four separate appeals of the Court's jurisdictional rulings. The record on appeal in *Germano* alone contained more than 16,000 pages. Two different appellate panels, along with the Court's staff, invested significant resources and energy affirming this Court's jurisdictional

2

valid judgment in the event the courts did not rule in their favor, by firing their attorneys "immediately" after personal jurisdiction was firmly established against Taishan and TTP, by "discussing *how* to withdraw from the litigation internally" on June 22, 2014,[10] and ultimately by refusing to appear before Your Honor for a Judgment Debtor Examination on July 17, 2014, thereby committing acts constituting criminal and civil contempt of court – Taishan recently engaged new counsel on February 17, 2015, to represent its interests in these proceedings.[11]

Taishan deposited the $40,000 fine into the Court's registry and claims it intends to pay the $15,000 awarded to Plaintiffs' counsel as attorneys' fees (and has requested wiring instructions to accomplish same), in purported satisfaction of the Court's Order holding Taishan in criminal and civil contempt.[12] In essence, Taishan wants to wipe the slate clean, lift the Contempt Order, and start over. Yet, there remains the issue of the bill of costs,[13] and, more importantly, whether Taishan or any of its affiliates or subsidiaries violated the Court's order enjoining them from doing business in the United States as long as Taishan was in contempt of court. Moreover, more than 4,000 families with Taishan's Chinese Drywall in their homes have not been compensated, and the PSC has expended far in excess of $15,000 in their efforts to bring Taishan back into these proceedings to collect on the *Germano* judgment on behalf of

---

analysis and conclusions. *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576 & 753 F.3d 521 (5th Cir. 2014).

[10] Rec. Doc. No. 18196 at 7 (*citing* Privilege Log Item 143).

[11] Rec. Doc. No. 18352.

[12] Rec. Doc. No. 17869 at 2.

[13] *See* Rec. Doc. No. 17825.

families desperate to rebuild their lives and to continue the litigation for all of the other thousands of families still waiting for their day in court.

- After BNBM and BNBM Group refused to accept proper service of the Chinese Drywall complaints served under the Hague; after BNBM retained counsel (the same counsel that recently has come in to represent its parent CNBM) to enter an appearance on its behalf early on in these proceedings but then quickly withdrew that appearance and disappeared; after these Defendants allowed default judgments to be entered[14]; after a privilege log prepared by Taishan's counsel at Hogan Lovells revealed that BNBM was communicating with this law firm in as early as June, 2009 regarding " ███████████████████████████████ ████████████████████████████████ " but BNBM nevertheless allowed its Board Member and Deputy General Manager Jia Tongchun, who is also the Chairman of Taishan, to falsely deny any knowledge of the legal process in the United States; and after recently produced documents brought to light BNBM's involvement in the decision for Taishan to refuse to appear for its Judgment Debtor Examination, prompting the PSC to seek to hold BNBM in contempt of court, BNBM and BNBM Group recently has retained new counsel to represent their interests in these proceedings.

And, yet, these Defendants' new counsel already have telegraphed to this Court and the Plaintiffs that, at the outset, they will contest this Court's exercise of personal jurisdiction over them, which is reminiscent of a familiar, yet troubling, scene from *Groundhog Day*. The record in this litigation already demonstrates – without any formal discovery of BNBM – that (i)

---

[14] *See* Rec. Doc. Nos. 7302, 15687, 7735, 17815 (BNBM and BNBM Group defaults); *see also* FOFCOL, *2-3.

jurisdiction over Taishan and its alter ego TTP is firmly established[15]; (ii) BNBM is the parent and largest shareholder of Taishan[16]; (iii) in 2005, BNBM controlled 4 of the 7 members of Taishan's Board[17]; (iv) in 2006, when BNBM acquired an additional 23% of Taishan's shares by acquiring Taian City Donglian Investment and Trading Company,[18] it funded that acquisition through a loan that was collateralized not by BNBM's assets, but, rather, those of Taian City State Owned Assets Management, which was a minority shareholder of Taishan[19]; (v) amendments to Taishan's by-laws in 2006, gave BNBM the right to nominate 3 of the 5 members of Taishan's Board,[20] while Jia Tongchun (wearing multiple hats as BNBM Board Member and Deputy General Manager and Taishan Chairman), together with Taian Anxin

---

[15] *See Chinese Drywall*, 894 F. Supp. 2d 819, *aff'd*, 742 F.3d 576 (5th Cir. 2014) and 753 F.3d 521 (5th Cir. 2014).

[16] *See* Excerpts of 2014 CNBM Interim Report, attached to the Affidavit of Yan Gao as Exhibit "Q" [Rec. Doc. No. 18433-19] at pp. 6 & 12, accessed at: http://www.cnbmltd.com/en/tzzgx/xx.jsp?newsId=6488.

[17] CNBM 2006 Global Offering Prospectus (Q000438-952) at p. 113 (Herman Aff. Ex. "131"). The Affidavit of Russ M. Herman ("Herman Aff.") was filed with the Court on May 8, 2012, as Exhibit "A" to the PSC's Global Statement of Facts in Opposition to Taishan's jurisdictional motions [*see* Rec. Doc. No. 14215-3]. The 202 Exhibits attached thereto were filed manually, due to their volume [Rec. Doc. No. 14224]. The Herman Aff. and Exhibits contain evidence derived from the jurisdictional discovery that occurred in this litigation. *See* Chart summarizing Taishan's 2006 Structure Post-March 16, 2006 Global Offering (Q000955-956) (Herman Aff. Ex. "130").

[18] *See* Deposition of Jia Tongchun dated 1/9-10/2012 ("Jia II Dep.") at 593:14-594:4 (Herman Aff. Ex. "200"); Defendants' Ex. 11A to Jia II Dep. (Articles of Association to Shandong Taihe Dongxin Co., Ltd., August 8, 2006, Article 17) (TG0020686-709) (Herman Aff. Ex. "132"); *see also* Summary of BNBM 2006 Annual Report (Herman Aff. Ex. "133") at pp. 16, 37.

[19] August 28, 2006 CNBM Public Regulatory Announcement "Connected Transaction Acquisition of the Entire Equity Interest in Taian Donglian Investment and Trading Company Limited" (Q000010-12) (Herman Aff. Ex. "134").

[20] First Extraordinary General Meeting of Shareholders for the Year 2007 of Shandong Taihe Dongxin Co., Ltd. (TG0020715) (Herman Aff. Ex. "135").

Investments, nominated a fourth member of Taishan's Board[21]; (vi) CNBM announced in its 2006 public offering that when "BNBM gained long-term control of [Taishan's] board of directors in connection with the acquisition, [Taishan] became a subsidiary consolidated with BNBM"[22]; (vii) BNBM and Taishan were "joint venturers"[23]; (viii) BNBM and Taishan undertook several drywall related investments together[24]; (ix) BNBM maintained the right to purchase interest in all present and future subsidiaries of Taishan[25]; (x) BNBM's and Taishan's development strategies and production capacities frequently have been reported as one[26]; (xi) BNBM advertises on its website that it is a global company that looks "forward to building long term relationships with customers all over the world"[27]; (xii) BNBM specifically targeted the U.S. commercially, establishing BNBM of America, Inc. in Tampa, Florida in 2000 as BNBM's U.S. marketing arm and selling over $1 million in drywall[28]; (xiii) BNBM appeared with CNBM

---

[21] *See id.*

[22] CNBM Global Offering (Q000438-952) at p. 4 (emphasis added).

[23] *See* Jia II Dep. at 203:2-204:10, 404:13-18.

[24] *See* 2005 Annual Shareholders Meeting (TG0020677), item 5(2) (Herman Aff. Ex. "136"); Resolution of the 4th Extraordinary Meeting of 2005 (TG0020682), item II, 1, 2 and 4 (Herman Aff. Ex. "171").

[25] *See* 2006 BNBM Bylaws (TG0020686), Chapter 3 (Herman Aff. Ex. "137").

[26] *See, e.g.,* CNBM May 2010 Overseas Regulatory Announcement (Q000975-981) (Herman Aff. Ex. "138") at p. 3; 2009 BNBM Annual Report (Q000155-223) (Herman Aff. Ex. "139") at p. 44; Summary of BNBM 2008 Annual Report (Q000091-154) (Herman Aff. Ex. "140") at pp. 27, 64; Summary of BNBM 2006 Annual Report, at pp. 14, 16, 17, 20, 37, 44.

[27] http://english.bnbm.com.cn/service/service.asp?lm=4.

[28] Deposition of Richard Hannam dated 2/13/2012 ("Richard Hannam Dep.") at 16:7-14, 22:21-22, 24:11-19, 32:15-19, 36:2-8, 74:8-32 (Herman Aff. Ex. "39"); Ex. 1 to Richard Hannam Dep. (2003 For Profit Corporation Uniform Business Report (Florida Secretary of State) and Articles of Incorporation for BNBM of America, Inc.) (Herman Aff. Ex. "142").

at a 2007 trade show in Las Vegas and actively pursued sales of its products in the United States[29]; (xiv) this Court has found that BNBM is a controlling parent of Taishan, in which it holds 65% equity interest[30]; (xv) this Court has concluded that "Taishan, TTP, BNBM, BNBM Group, CNBM, and CNBM Group constitute a single business enterprise for purposes of piercing the corporate veil and holding each of these entities liable for the conduct of their affiliated entities"[31]; and (xvi) in documents previously withheld as privileged, but produced after the Fifth Circuit refused to overturn Your Honor's determination that these records were subject to the crime-fraud exception to the privilege, there is *prima facie* evidence that the decision for Taishan to flout this Court's valid directive was ultimately the province of BNBM and CNBM.

•      After CNBM and CNBM Group refused to accept proper service of the Chinese Drywall complaints served under the Hague; after these Defendants allowed default judgments to be entered[32]; after they acknowledged that the Court's Contempt Order and Injunction, "imposing certain restrictions on the affiliates of Taishan Gypsum," "may extend to the Company," CNBM nevertheless pronounced that the Court's Contempt Order was of no moment because "the [CNBM] Group's major assets and principal commercial activities are all located in

---

[29] Deposition of John Gunn dated 7/22/2011 ("Guardian Dep.") (Herman Aff. Ex. "143") at 148:8-149:1, 154:2-6; *see also id*. at 34:23-35:6, 147:8-11.

[30] FOFCOL, *5 at ¶ 26, *6 at ¶ 29, *9 at ¶¶ 50-51; *see also* Excerpts of 2014 CNBM Interim Report, attached to the Affidavit of Yan Gao as Exhibit "Q" [Rec. Doc. No. 18433-19] at pp. 6 & 12, accessed at: http://www.cnbmltd.com/en/tzzgx/xx.jsp?newsId=6488.

[31] FOFCOL, *9 at ¶ 50.

[32] *See* Rec. Doc. Nos. 7302, 15687, 17814, 17815 (CNBM and CNBM Group defaults); *see also* FOFCOL, *2-3.

China and since there is no convention or treaty on mutual recognition and enforcement of judgments between China and the US, … the possibility of the US judgments being enforced in China is very low.  Therefore, … <u>the Company believes that the above recent developments in the gypsum board litigation in the US will not result in significant economic loss to the Group and will not have material adverse impact on the Group's production and operation</u>."[33]; after two subsidiaries of CNBM Group – China National Building Material Import and Export Company ("CNBM Trading") and CNBM Forest Products (Canada), Ltd. – were found to be doing business in Oregon in violation of the Court's Contempt Order and Injunction; after documents from Taishan's counsel offered evidence of CNBM's involvement in and controlling authority over the decision whether Taishan would appear for its Judgment Debtor Examination in open court before Your Honor on July 17, 2014, CNBM and CNBM Group retained the same counsel that formerly represented BNBM <u>in this very litigation</u>[34] to represent their interests in these proceedings.

Like BNBM, the CNBM entities have asserted their rights to challenge this Court's jurisdiction over them, despite the fact that the record shows – again, without any formal

---

[33] *See* CNBM Voluntary Announcement on August 20, 2014, available at http://www.hkexnews.hk/listedco/listconews/SEHK/2014/0820/LTN20140820707.pdf (emphasis added); *see also* CNBM Public Announcement on February 13, 2015, available at: http://www.hkexnews.hk/listedco/listconews/SEHK/2015/0213/LTN20150213741.pdf (same); CNBM Voluntary Announcement on July 18, 2014, available at http://www.hkexnews.hk/listedco/listconews/SEHK/2014/0718/LTN20140718768.pdf (acknowledging that "Taishan Gypsum does not agree that the US courts have jurisdiction," despite the finality of the Court's ruling on that matter).

[34] *See* Herman Aff. Ex. "144" (Letter from James L. Stengel at Orrick, dated 10/13/2010, confirming that he and his firm "have recently been retained by BNBM" in the Chinese Drywall MDL proceedings) (attached hereto as Exhibit "2").

discovery of these Defendants – that:  (i) jurisdiction over Taishan is firmly established[35]; (ii) CNBM Group is the parent of BNBM Group, CNBM, BNBM, and Taishan[36]; (iii) CNBM appeared with BNBM at a 2007 trade show in Las Vegas and actively pursued sales of its products in the United States[37]; (iv) CNBM established CNBM (USA) Corporation in 2006 in California as a "branch" (or subsidiary) of CNBM Import & Export Corporation ("CNBM International"),[38] at the same time that Taishan sold its Chinese Drywall to Venture Supply in Virginia, to "provide[] all kinds of building materials products and services to the whole US."[39]; (v) CNBM USA's platform "aims at a wide market, including Canada, Mexico, Central and South America Markets," [40] and its stated "mission [is] to distribute products made by CNBM and made in China, to provide its clients with local warehousing, transportation, and after-sale service, and to actively expand CMAX brand to the whole American market."[41]; (vi) this Court

---

[35] *See Chinese Drywall*, 894 F. Supp. 2d 819; *Chinese Drywall*, 742 F.3d 576; *Chinese Drywall*, 753 F.3d 521.

[36] FOFCOL, *5 at ¶ 26, *6 at ¶ 29, *9 at ¶¶ 50-51; *see also* Chart of Taishan Affiliates and Subsidiaries [Rec. Doc. No. 18433-29].

[37] Guardian Dep. (Herman Aff. Ex. "143") at 148:8-149:1, 154:2-6; *see also id.* at 34:23-35:6, 147:8-11.

[38] *See* CNBM International website at http://www.icnbm.com/en/info.php?id=15 and http://www.cnbminternational.com/en/lxwm/ (attached hereto as Exhibit "3"); *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 706 F. Supp. 2d 655, 663 (E.D. La. 2010); Rec. Doc. No. 6245-4, at p.6; State of California Business Entity Detail for CNBM (USA) Corp. dated 3/31/2011 (Q000982) (Herman Aff. Ex. "141").

[39] CNBM's website: http://www.cnbm.com.cn/EN/c_0000001600050003/ (attached hereto as Exhibit "4").

[40] *Id.*

[41] *Id.*

has found that CNBM is a controlling parent of Taishan[42]; (vii) this Court has concluded that "Taishan, TTP, BNBM, BNBM Group, CNBM, and CNBM Group constitute a single business enterprise for purposes of piercing the corporate veil and holding each of these entities liable for the conduct of their affiliated entities"[43]; and (viii) there is *prima facie* evidence in documents previously withheld as privileged, but produced after the Fifth Circuit refused to overturn Your Honor's determination that these records were subject to the crime-fraud exception to the privilege, that the decision for Taishan to flout this Court's valid directive was ultimately the province of CNBM.

In addition, similar to the interrelationships and overlap in leadership between alter egos Taishan and TTP, BNBM, CNBM, BNBM Group, and CNBM Group share an unreasonable overlapping of legal representatives, directors, and senior executives, not only amongst themselves, but also with Taishan.  For example, Jianglin Cao was a director and officer of BNBM of America,[44] he served on the Board of Supervisors of Taishan,[45] he was a Chairman of BNBM,[46] he served as the President and Executive Director of CNBM,[47] and he held senior

---

[42] FOFCOL, *5 at ¶ 26, *6 at ¶ 29, *9 at ¶¶ 50-51; *see also* Excerpts of 2014 CNBM Interim Report, attached to the Affidavit of Yan Gao as Exhibit "Q" [Rec. Doc. No. 18433-19] at pp. 6 & 12, accessed at: http://www.cnbmltd.com/en/tzzgx/xx.jsp?newsId=6488.

[43] FOFCOL, *9 at ¶ 50.

[44] Ex. 1 to Richard Hannam Dep. (2003 For Profit Corporation Uniform Business Report and Articles of Incorporation for BNBM of America, Inc.) (Herman Aff. Ex. "142").

[45] Defendants' Ex. 8A to Jia II Dep. (Resolutions of the General Meeting of Shareholders dated 4/25/2005) (Translation of TG0020601-602) (Herman Aff. Ex. "185").

[46] Summary of BNBM 2006 Annual Report at pp. 2, 12; Summary of BNBM 2008 Annual Report at pp. 2, 12, 64 (Q000091-154); 2010 CNBM Annual Report (Q000224-437) (Herman Aff. Ex. "186") at p. 75.

positions, including Directorships at BNBM Group and CNBM Group.[48]  Zhiping Song was also

a director of BNBM of America,[49] he was the Chairman of BNBM,[50] he served as an Executive

Director and Chairman at CNBM,[51] and he held senior positions at BNBM Group and CNBM

Group.[52]  Wang Bing was a Director of Taishan,[53] he was a Director, Chairman, and General

Manager of BNBM,[54] and he was a Vice President at CNBM.[55]  Yanjun Yang was another

Director at Taishan,[56] who held a variety of leadership roles at BNBM, including CFO and

---

[47] CNBM Global Offering at pp. 157, 188-89 (Herman Aff. Ex. "131"); CNBM 2010 Annual Report (Q000224-437) at pp. 4, 20, 43, 55, 75 (Herman Aff. Ex. "186").

[48] 2006 Global Offering at p. 188 (Herman Aff. Ex. "131"); 2010 CNBM Annual Report at p. 75 (Herman Aff. Ex. "186").

[49] Ex. 1 to Richard Hannam Dep. (2003 For Profit Corporation Uniform Business Report and Articles of Incorporation for BNBM of America, Inc.) (Herman Aff. Ex. "142").

[50] 2006 Global Offering at pp. 188-89 (Herman Aff. Ex. "131"); 2010 CNBM Annual Report at p. 74 (Herman Aff. Ex. "186").

[51] *Id.*

[52] *Id.*

[53] Defendants' Ex. 8A to Jia II Dep. (Resolutions of the General Meeting of Shareholders dated 4/25/2005) (Translation of TG0020601-602) (Herman Aff. Ex. "185").

[54] 2010 CNBM Annual Report at p. 84 (Herman Aff. Ex. "186").

[55] *Id.*

[56] Resolution of the First Extraordinary General Meeting of 2006 (TG0020675) (Herman Aff. Ex. "187").

Deputy General Manager.[57]  Jinyu Hu was also a Director at Taishan and he served as a

Supervisor at BNBM.[58]

•  The tortured history of these Defendants' repeated and prolonged attempts to

avoid the jurisdiction of our courts is well-known to Your Honor and the Plaintiffs and, if recent

filings on behalf of CNBM and BNBM are any indication, apparently will continue for some

time.  The Taishan Defendants created a maelstrom in this litigation – exhibiting a pattern of

obfuscation designed to conceal the true picture of what transpires behind the scenes of this

global conglomerate, showing that their printed and spoken word are not the entire truth, and

attesting to their acceptance of "exaggeration" – "In China, we exaggerate a little bit.… that's

allowed"!,[59] filing false affidavits disavowing any knowledge of the U.S. legal system,[60] playing

musical chairs with their counsel, and parachuting into the litigation at critical junctures, only to

absent themselves from the jurisdiction at their whim and convenience,[61] because, as they have

---

[57] Summary of BNBM 2006 Annual Report at pp. 13, 46 (Herman Aff. Ex. "133"); Summary of
BNBM 2008 Annual Report at p. 13 (Herman Aff. Ex. "140").

[58] Summary of BNBM 2006 Annual Report at p. 13 (Herman Aff. Ex. "133"); Summary of
BNBM 2008 Annual Report at p. 13 (Herman Aff. Ex. "140").

[59] Deposition of Tinghuan Fu dated 1/10/2012 ("Fu Dep.") at 86:14-15 (Herman Aff. Ex. "2");
Deposition of Wenlong Peng dated 1/13/2012 ("Peng Dep.") at 479 (Herman Aff. Ex. "201").

[60] *Cf.*, *e.g.*, Declaration of Jia Tongchun, Taishan Chairman and BNBM Board Member and
Deputy General Manager, dated 8/5/2010 (disavowing any knowledge of the U.S. legal system
[Rec. Doc. No. 5459-4] *with* Privilege Log Item 10 (evidencing that BNBM was communicating
with Taishan's U.S. counsel in as early as August, 2009, regarding ███████████████████
███████████████████████████████████████████████████████████████████████
████████ ).

[61] During the litigation, CNBM (USA) entered its appearance in the litigation, but then instructed
its counsel to withdraw as counsel of record.  *See* Rec. Doc. No. 9568 (Ex Parte Motion to
Withdraw as Counsel of Record for CNBM USA Corp.).

proudly announced, "Taishan Gypsum [along with BNBM and CNBM] do[] not agree that the US courts have jurisdiction."[62]

Now, five years and nine months since the formation of this MDL, these Defendants want to further continue the hearing to assess class damages for the thousands of victims of Taishan's Chinese Drywall, who have been suffering for more than eight years since this defective material was installed in their homes, while they await relief from the parties ultimately responsible.  This hearing was already adjourned, unfortunately, at Defendant's request a month ago, when counsel for BNBM suddenly appeared in open court, in dramatic fashion, literally just as the hearing was about to begin on February 12, 2015.  As the transcript reflects, the Deputy Clerk called the motion, and the Court asked Counsel to make their appearance for the record.[63]  After Lead Counsel Arnold Levin spoke up for the PSC, the Court asked whether "Anybody from the defendant? Anybody from either the defendant or any of their affiliates?" was present in the courtroom, because there "was at least a rumor that they were interested in having a continuance, but they didn't put up anybody to represent them formally and ask for a continuance."[64]  It was at that moment that Mr. Levin noted:  "We have some activity in the back of the courtroom, Your Honor."[65]  Sure enough, Attorney Aaron Block from Alston & Bird, LLP stood up to announce that he was "entering a formal appearance for BNBM,"[66] but they needed "a brief extension

---

[62] CNBM Voluntary Announcement on August 20, 2014, available at http://www.hkexnews.hk/listedco/listconews/SEHK/2014/0820/LTN20140820707.pdf.

[63] *See* Transcript of Proceedings, dated 2/12/2015 ("2/12/2015 Tr.") (attached hereto as Exhibit "5").

[64] 2/12/2015 Tr. at 3.

[65] 2/12/2015 Tr. at 4.

[66] 2/12/2015 Tr. at 4 & 6.

given [they] were just retained [that] morning."[67]  In fact, Mr. Block "got on the last seat on the

last flight"[68] to arrive on time.  Therefore, he argued, "[i]n order for us to have time to

understand and get our arms around this," "we would ask for an extension of two months."[69]

The Court granted Defendants a five-week extension.[70]

   Since then, there has been a flurry of activity regarding entries of appearance by counsel

for the various Defendants before the Court.  The same law firm (Alston & Bird) that came in for

BNBM on February 12, 2015, also entered an appearance for Taishan on February 17, 2015,[71]

and for TTP on March 2, 1015.[72]  On March 4, 2015, the law firms of Dentons US LLP and

Phelps Dunbar LLP entered their appearance for BNBM[73] and BNBM Group.[74]  These counsel

have since moved to replace Alston & Bird in its representation of BNBM, and they assure the

Court and the parties that "Alston & Bird LLP has notified [Dentons] of all deadlines and

pending court appearances," as set forth in the Certificate of Compliance of Aaron Block.[75]

Meanwhile, the law firm of Orrick, Herrington & Sutcliffe LLP and James Stengel (who

---

[67] 2/12/2015 Tr. at 6.

[68] 2/12/2015 Tr. at 6.

[69] 2/12/2015 Tr. at 6-7.

[70] Rec. Doc. Nos. 18331, 18400.

[71] Rec. Doc. No. 18352.

[72] Rec. Doc. No. 18406.

[73] Rec. Doc. No. 18427.

[74] Rec. Doc. No. 18428.

[75] Rec. Doc. No. 18462.

previously were retained by BNBM)[76] have entered their appearance for CNBM and CNBM Group.[77]  On February 26, 2015, the Loeb Law Firm and J. Scott Loeb entered their appearance for CNBM Trading and CNBM Forest Products (Canada), Ltd.,[78] but were quickly replaced by the Orrick firm.[79]  It would be impossible to know at this juncture whether the Defendants have finished hiring, firing, and trading their legal representatives in these proceedings.  As Dorothy remarked in *The Wizard of Oz*, "My! People come and go so quickly here!"

Incredibly, these Defendants contend that "fundamental due process" requires another adjournment of the hearings set by the Court to address Defendants' contempt of court and an assessment of damages for the thousands of Plaintiffs who have been waiting for almost 6 years for relief,[80] and they have the temerity to suggest they are "new parties" coming into the litigation to defend against "new allegations."[81]  The Contempt Order and Injunction only resulted from Taishan's *refusal* to appear for a Judgment Debtor Examination, in which, as it turns out, CNBM and BNBM played a role.  To request more delay on top of the delay that has already occurred is sheer *chutzpah* on their part.

Plaintiffs are fully prepared to go forward with the special hearing set for March 17, 2015 at 9 a.m. and they are fully prepared to have this Court assess class damages and address the

---

[76] *See* Exhibit "2" hereto.

[77] Rec. Doc. Nos. 18411, 18444.

[78] Rec. Doc. No. 18397.

[79] Rec. Doc. Nos. 18431, 18445.

[80] CNBM Motion for Continuance at 3 [Rec. Doc. No. 18455-1].

[81] CNBM Motion for Continuance at 6, 9 [Rec. Doc. No. 18455-1].

15

motions regarding Defendants' contempt of court on March 26, 2015, following the monthly

status conference.  CNBM's motion for a continuance should be denied.

II.   **ARGUMENT**

    A.    **The Hearing to Assess Class Damages Should Proceed on March 26, 2015, as Ordered by the Court.**

        1.    **Because the Entry of Default Under FRCP 55(a) Against Taishan, BNBM, and CNBM Establishes Their Liability Per the Allegations in the Complaints They Failed to Answer, the Only Issue Before the Court is the Amount of Damages for Which These Defendants Are Liable.**

The class certification proceedings followed the entry of several default judgments

obtained against Defendants Taishan, TTP, BNBM, BNBM Group, CNBM and CNBM Group.[82]

Pursuant to Rule 55(a) of the Federal Rules of Civil procedure, the entries of default against

these Defendants establish their liability as per the allegations in the Complaints they failed to

answer.  Therefore, in the next step to be taken in money-claim cases, which is the entry of a

default judgment under Rule 55(b), the focus is not on whether the Defendants are liable as

alleged, but the amount of their liability.  *See* Fed. R. Civ. P. 55(a) and (b).  With respect to

Taishan, since its liability and the *Germano* damages are the law of the case *via* a **confirmed** and

**final** default judgment, the only issue remaining is class-wide damages.[83]  Moreover, the fact

that Taishan is completely aligned with Knauf with respect to damages makes it further

unnecessary to relitigate issues such as corrosion, and scope and cost of remediation.  Arguably,

the only issue that Taishan may challenge at the damages hearing is the total number of Taishan

---

[82] *See* Rec. Doc. Nos. 487, 3013, 17814, 17815 (Taishan Defaults); *see also* Rec. Doc. Nos. 17814, 17815 (TTP defaults); Rec. Doc. Nos. 7302, 15687, 7735, 17815 (BNBM and BNBM Group defaults); Rec. Doc. Nos. 7302, 15687, 17814, 17815 (CNBM and CNBM Group defaults); FOFCOL, *2-3.

[83] *See* Section II.A.3, *infra* (discussing the res judicata effect of the *Germano* default judgment).

properties in the class, as this issue has not yet been litigated and does bear on the entry of a class-wide money judgment against them.  With respect to CNBM and BNBM, since alter-ego liability is established by the Rule 55(a) defaults entered against them, it is likewise true that the only issue that remains is class-wide damages.  This remains true unless and until these Defendants move under Rule 55(c), as Taishan tried to do unsuccessfully in *Germano*, to set aside the default.  *See Chinese Drywall*, 753 F.3d at 545 (affirming the Court's denial of Taishan's Rule 55(c) Motion).  However, no such motion has been filed to date.  Thus, Defendants may not contest their liability, but rather, they are limited to issues regarding how much they are liable unto Plaintiffs.

## 2. **CNBM/BNBM Are Estopped From Further Delaying These Proceedings.**

CNBM and BNBM are estopped from delaying these proceedings any further, as they are hardly "new" Defendants to the litigation; rather, they *chose* not to participate in these proceedings until now.  Both CNBM and BNBM, in addition to all other foreign Defendants in MDL 2047, were properly served under the Hague Convention many years ago.[84]  Despite proper effectuation of service, CNBM and BNBM *made a strategic decision* to sit on the sidelines, allowing the litigation to proceed and allowing multiple default judgments to be entered against them in not just one, but multiple actions.[85]  Over 4,000 Taishan Plaintiffs have suffered extensive damages and have been waiting for six years as the litigation has dragged on in large part due to these Defendants' recalcitrance.  In its Motion to Continue the March 26,

---

[84] *See* Exhibit "1" hereto (Proofs of Service under the Hague Convention).
[85] *See*, *e.g.*, Rec. Doc. Nos. 487, 3013, 17814, 17815 (Taishan defaults); *see also* Rec. Doc. Nos. 17814, 17815 (TTP defaults); *Chinese Drywall*, 2014 WL 4809520 at *2-3 (discussing default judgments against Taishan and its Affiliates and including chart of cases where these entities have been held in default).

2015 Hearing,[86] CNBM and CNBM Group argue that a continuance is warranted to "allow[]
[them] to review the allegations and evidence set out against them and defend themselves from
the serious sanctions Plaintiffs propose."[87]   However, nothing has prevented these Defendants
from doing so as the evidence was submitted and the allegations were made.  The unilateral
*choice* of Defendants not to participate in the litigation is insufficient to warrant another
continuance of the hearing presently set for March 26, 2015 – which was already adjourned at
the request of counsel for BNBM at the time (who has since switched to represent Taishan).  In
its Motion, CNBM and CNBM Group fail to account for or even offer an explanation as to their
unwillingness to participate in the litigation until now.  They have had ample time to step up to
the plate and defend themselves throughout the entire duration of this litigation, which began in
June, 2009.  Their strategy not to participate should not be allowed to prejudice Plaintiffs'
interest in resolving this prolonged litigation.

Moreover, the Motion for Continuance ignores the fact that CNBM and BNBM were not
only aware of, but controlled, the decision for Taishan to engage in contumacious conduct.
Contrary to Defendants' assertion otherwise, both CNBM and BNBM received "real and
adequate notice of the alleged contumacious conduct."[88]  On February 27, 2015, Taishan's
discharged counsel, Hogan Lovells US LLP and Stanley, Reuter, Ross, Thornton & Alford, LLC,
produced to the PSC the 31 documents previously withheld as allegedly privileged.  The content
of these emails reveals that these recalcitrant Defendants (Taishan, BNBM, and CNBM), in
concert, made the decision for Taishan to defy this Court's Order to appear for a Judgment

[86] Rec. Doc. No. 18455.

[87] CNBM Motion for Continuance at 7 [Rec. Doc. No. 18455-1].

[88] *See id.*

18

Debtor Examination – the conduct underlying the Court's entry of the July 17, 2014 Contempt

Order.  Taishan's counsel Dong Chungang kept both CNBM and BNBM in the loop when

discussing the issues surrounding Taishan not appearing for its Judgment Debtor Examination

and the contempt of court ruling.  He wrote: "███████████████████████████████

████████████████████████████████████████████████"[89]

Acknowledging the true entities in charge, Taishan's counsel "██████████████████

████████████████████████████████"[90]  And, he

made Taishan's U.S. counsel aware that he "██████████████████████████████

██████████████████████████████████████████████████████

█████████████"[91]

Also included in this production are numerous emails between and among Taishan and its

attorneys, wherein Taishan makes clear that the ultimate decision to ignore this Court's orders

and engage in contempt of court had to be made at the highest levels: "████████████████

███████████████████████████████████████████

---

[89] *See* Email from Dong [Chungang] to Eugene Chen at Hogan Lovells, dated August 5, 2014 (filed under seal) [Rec. Doc. No. 18433-32]; *see also* Email from Phoebe Yan to Eugene Chen, Hogan Lovells, dated July 11, 2014 ████████████████████ ████████████████ ███████████████") (filed under seal) [Rec. Doc. No. 18433-32].

[90] *Id.* (emphasis added).

[91] Email from Dong Chungang to Eugene Chen at Hogan Lovells dated August 5, 2014 (filed under seal) [Rec. Doc. No. 18433-32].

[redacted]"[92] Taishan's Chief of Foreign Trade Peng Wenlong [redacted]"[93]

Thus, as evidenced by these emails, CNBM and BNBM have had ample time to review the evidence and allegations of contempt, but have *chosen* to delay doing so until now. Moreover, these Defendants and their highest level executives (which greatly overlap with each other and with Taishan, in any event) have been kept abreast throughout the entire course of the litigation, and, ultimately, made the final call as to whether Taishan obeyed the Court's orders to appear for a Judgment Debtor Examination. As such, CNBM and BNBM's arguments must fail.

**3. <u>The Interests of CNBM and BNBM, with Taishan, Have Been Aligned Since the Inception of this Litigation, and Thus, These Interests Were Protected.</u>**

The interests of CNBM and BNBM have been aligned with Taishan since inception, and, therefore, were protected. Discussed fully, *infra*, Taishan, CNBM and BNBM are affiliate companies of one another and alter egos,[94] aware of the others' dealings in drywall sales in the United States during the relevant timeframe. In fact, the record shows that CNBM tracked the sales and export of gypsum board to the United States, reporting the export of 580,000 tons of gypsum boards in 2006 and 430,000 tons of gypsum boards in 2007 to the US by companies in the PRC.[95] Furthermore, during the bellwether trial in *Germano*, publicly available documents

---

[92] Email from Dong Chungang to Joe [Cyr] and Eugene [Chen] [Hogan Lovells] dated July 7, 2014 (5:14 a.m.) (emphasis added) (filed under seal) [Rec. Doc. No. 18433-32].

[93] Email from Peng Wenlong dated July 7, 2014 (emphasis added) (filed under seal) [Rec. Doc. No. 18433-32].

[94] FOFCOL, *3 at ¶ 4, *10-21 at ¶¶ 24-51.

[95] Herman Aff. Ex. "3" (Regulatory Announcement of China National Building Material Company Limited, 2010-009) at p. 3.

showed that the State-owned Assets Supervision and Administration Commission ("SASAC") of the State Counsel of the PRC controls the "plasterboard" manufacturing, exportation and certification industry and oversees and manages the state-owned assets of companies involved in drywall production, including Taishan, CNBM, and BNBM.[96]

As mentioned previously, CNBM and BNBM were named as Defendants, and properly served, in *Gross/Wiltz/Amorin*,[97] but they defaulted.[98] Continuously, CNBM and BNBM were aware of the cases against them, watching as their subsidiary, Taishan, defended against various entries of default, moved to vacate default judgments, and appealed those entries, yet CNBM and BNBM remained silent. Now, nearly six years after the initial action was brought, CNBM and BNBM are attempting to escape the admission of liability imposed upon them through the default judgments pursuant to Federal Rule of Civil Procedure 55.

CNBM and BNBM have no valid grounds to reopen any default judgments on liability. CNBM and BNBM attempt to argue that without an evidentiary hearing, their due process rights are somehow violated.[99] In citing the United States Supreme Court in *Hovey v. Elliott*, 167 U.S. 409 (1897), CNBM and BNBM represent to this Court that they must be afforded an opportunity

---

[96] *Chinese Drywall*, 706 F. Supp. 2d at 662; *see* Chart summarizing Taishan's 2006 Structure Post-March 16, 2006 Global Offering (Q000955-956) (Herman Aff. Ex. "130"); CNBM Global Offering (Q000438-952) (Herman Aff. Ex. "131") at p. 100.

[97] *Gross, et al. v. Knauf Gips, KG, et al.*, Civ. Action No. 09-6690 (E.D. La.); *Kenneth and Barbara Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al.*, Civ. Action No. 10-361 (E.D. La.); *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Civ. Action No. 11-1395 (E.D. La.); *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Civ. Action No. 11-1673 (E.D. La.).

[98] *See* Rec. Doc. Nos. 7302, 15687, 7735, 17815 (BNBM and BNBM Group defaults); *see also* FOFCOL, *2-3.

[99] CNBM Opposition at 9; BNBM Opposition at 2.

to present evidence prior to an award of damages.  However, reliance on *Hovey* is misplaced.  In *Hovey*, the Constitutional violation found by the Supreme Court resulted from the district court striking defendant's answer from the record.  *Hovey*, 167 U.S. at 414.  In the instant matter, this Court first entered preliminary default, and then held a full evidentiary hearing prior to entering a final judgment of default.  Factually, CNBM and BNBM had every opportunity to participate in the litigation process at any time prior to default and/or during the appeals brought by Taishan and, as Taishan's parents and alter egos, they had every incentive to participate.  Unlike *Hovey* where the defendants failed to comply with a court order, these Defendants simply ignored all pleadings, judgments, appeals, and orders until this point.  The situation, therefore, is vastly different, such that *Hovey* does not apply.

CNBM/BNBM have no right to introduce any new evidence at the hearing assessing damages.  Their right is limited to participating in the hearing to challenge the methodology underlying the Plaintiffs' calculation of the amount of damages.  The default judgment entered against Defendants established liability as described by Federal Rule 55.  A Rule 55 default generally accepts the pleaded facts as true, leaving open only the issue of damages.  *United States Use of M-CO Constr., Inc. v. Shipco General, Inc.*, 814 F.2d 1011 (5th Cir. 1987).  In instances where damages are either liquidated or mathematically ascertainable, there is no need for an evidentiary hearing on damages following a Rule 55 default.  *James v. Frame*, 6 F.3d 307, 310-11 (5th Cir. 1993) (generally damages are not awarded without an evidentiary hearing; the exception to this rule occurs where the damages are either liquidated or capable of mathematical calculation); *Saldana v. Zubha Foods, LLC*, 2013 WL 3305542, *11 (W.D. Tex. 2013) (finding a hearing unnecessary because damages and costs could be calculated with certainty by reference to pleadings and supporting documents).

22

In the instant matter, bellwether trials, parallel actions, expert reports, and, most importantly, a full evidentiary hearing specific to the Taishan Defendants have all already occurred, which establish the fact of damage, the means, and the appropriate method for calculating damages to homeowners whose properties were damaged by Taishan's defective drywall.  Now that this Court has certified the matter as a class action, Plaintiffs have presented additional evidence, including the expert opinion of Ronald E. Wright, P.E., regarding the proper mathematical formula for calculating class-wide damages that are common to the class.[100] Contrary to the arguments of BNBM and CNBM, the defaulted Defendants are not entitled to a fully contested hearing assessing the fact of damage, now that a final entry of default exists. Discussed fully, *infra*, at Section II.A.6 (and in the PSC's Motion for Assessment of Class Damages),[101] class-wide damages are mathematically ascertainable and provable through expert findings whose basis was previously established at the bellwether trials that the defaulted Defendants consciously chose not to attend.  As such, their contumacious conduct should not be rewarded by allowing them to reset the game clock, to the prejudice of class members who have abided by this Court's directives and the Federal Rules of Civil Procedure.

CNBM and BNBM accuse Plaintiffs of attempting to thwart the judicial process by asking the Court to bar defaulted Defendants' from taking part in any evidentiary hearing on class damages."[102]  This is simply not so; rather, Plaintiffs posture that such a hearing already occurred, and any participation by the defaulted Defendants on class damages should be limited. Taishan's willful decision to ignore court proceedings until after the evidentiary hearing and

---

[100] Rec. Doc. No. 18086-3 through 18086-13.

[101] Rec. Doc. No. 18086.

[102] *See* BNBM Opposition [Rec. Doc. No. 18454]; CNBM Opposition [Rec. Doc. No. 18453].

entry of final default in *Germano*, and the decision of CNBM and BNBM to allow defaults in all of the *Amorin* and other cases, does not warrant a second, subsequent evidentiary hearing.

The cases relied upon by Defendants do not pass muster.  Specifically, BNBM cites to *Bonilla v. Trebol Motors Corp.*, 150 F.3d 77 (1st Cir. 1998), and the case law cited therein. *Bonilla* is readily distinguishable in that the damage calculation used by plaintiffs was contrary to precedent.  The court remanded for a hearing only to properly assess damages consistent with other fraud actions.  Like *Bonilla*, the other cases referenced by Defendants permit evidentiary hearing on damages following default in the most specific of circumstances.[103]

### 4.   Res Judicata ("Claim Preclusion") Bars CNBM/BNBM from Asserting any Claims or Defenses in the Class Damages Hearing that Could have Been Asserted in the *Germano* Proceedings.

The doctrine of res judicata precludes CNBM, BNBM, or any other Defendant from relitigating claims or defenses that were previously adjudicated to finality and memorialized in the *Germano* default judgment.  As is discussed in Section I of this brief, *supra*, the Court entered a final default judgment in the *Germano* case against Taishan on May 10, 2010, awarding $2.7 million and in favor of seven Plaintiff-Intervenors.[104]  The *Germano* default judgment resulted from vigorous efforts undertaken by the PSC and the Court while these

---

[103] *Frame v. S-H, Inc.*, 967 F.2d 194, 204 (5th Cir. 1992) ("we require the district court to hold an evidentiary hearing on damages, even in the case of default judgments such as this one"- remand here was for a reassessment of the interest and punitive damages only.  There, remand was not related to the compensatory damages awarded as a result of the default.); 10-55 MOORE'S FEDERAL PRACTICE - CIVIL § 55.32 ("The defaulting party is entitled to contest damages, and to participate in a hearing on damages, should one be held.").  The trial court has the sole discretion of determining whether a damages hearing should be held.  *Isenberg v. Chase Bank USA N.A.*, 661 F. Supp. 2d 627, 628 (N.D. Tex. 2009) (permitting defaulted party to submit a "brief and evidence to respond and voice any objection" to evidence on damages).

[104] *See* Rec. Doc. No. 3013; *see also* FOFCOL, *2-3 at ¶ 15 (discussing default judgments against Taishan and its Affiliates and including chart of cases where these entities have been held in default).

Defendants simply decided not to participate in the litigation.[105]  The Court issued its FOFCOL in *Germano* regarding liability and damages, in which these entities were found to be a "single family enterprise."[106]  Moreover, there are two appellate rulings upholding (i) the Court's refusal to open the default judgments in *Germano* and *Mitchell* and (ii) finding that Taishan and TTP are alter egos, and thus, subject to the Court's jurisdiction.  *See Chinese Drywall*, 742 F.3d 576 (5th Cir. 2014) and 753 F.3d 521 (5th Cir. 2014).

The doctrine of res judicata, read in the broad sense of the term, embraces two distinct preclusion concepts: claim preclusion (often termed "res judicata") and issue preclusion (often referred to as "collateral estoppel").  *United States v. Shanbaum,* 10 F.3d 305, 310 (5th Cir. 1994) (citing *Migra v. Warren City School Dist. Bd. of Education,* 465 U.S. 75, 77 n.1 (1984)). Often referred to as "pure" res judicata, "claim preclusion," protects the finality of judgments by barring relitigation of claims that have already been adjudicated to finality. In practice, claim preclusion ultimately serves the interests of judicial economy and ensures consistency in litigation by avoiding multiple lawsuits.  *See id.*  Four (4) conditions must be satisfied for res judicata to apply:

1) the parties in a later action must be identical to (or at least be in privity with) the parties in a prior action;

2) the judgment in the prior action must have been rendered by a court of competent jurisdiction;

3)  the prior action must have concluded with a final judgment on the merits; and

---

[105] *See id.*  *See also* FOFCOL, *9 at ¶ 50.

[106] *See Germano* FOFCOL [Rec. Doc. No. 2380]; *see also* FOFCOL, *8-9 at ¶¶ 48-50.

> 4) the same claim or cause of action must be involved in both suits.

*Shanbaum,* 10 F.3d at 310; *see also Eubanks v. Federal Deposit Ins. Corp.,* 977 F.2d 166, 169 (5th Cir. 1992).  If the foregoing conditions are satisfied, res judicata "prohibits either party from raising any claim or defense in the later action that was or *could have been* raised in support of or opposition to the cause of action asserted in the prior action."  *Shanbaum,* 10 F.3d at 310 (citing *In re Howe*, 913 F.2d 1138, 1144 (5th Cir. 1990)) (emphasis in original).  One of the rationales for claim preclusion is waiver, in that a party who does not raise a claim or defense in a prior action thereby waives its right to raise that claim or defense in a subsequent action.  *Id*.

Application of the requirements of claim preclusion to the facts undeniably results in the conclusion that CNBM and BNBM are barred from asserting claims or defenses in the class damages hearing that could have been raised in the *Germano* proceedings.

### a)       The Parties in Class Damages Proceedings are In Privity with the Parties in the Germano Proceedings.

With respect to the first requirement, a litigant has a due process right to a "full and fair opportunity to litigate an issue." *Benson & Ford, Inc. v. Wanda Petroleum Co.,* 833 F.2d 1172, 1174 (5th Cir. 1987) (quoting *Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334, 338 (5th Cir. 1982)).  A new party to the later suit is said to be in privity, or sufficiently close to a party in the prior suit so as to justify preclusion, where: (1) a nonparty who has succeeded to a party's interest in property is bound by any prior judgments against that party; (2) a nonparty who controlled the original suit will be bound by the resulting judgment; or (3) a nonparty's interests were represented adequately by a party in the original suit.  *Benson & Ford*, 833 F.2d at 1174; *see also Freeman v. Lester Coggins Trucking, Inc.,* 771 F.2d 860, 864 (5th Cir. 1985) (citation omitted).

26

The Plaintiffs in the *Germano* matter are also Plaintiffs in the present action, in combination with other class members whose interests were adequately represented in the *Germano* proceedings in that they have the same claims against the same Defendants arising from the same set of facts.  Although the Defendants in the *Germano* matter are not identical to those in the present matter, CNBM and BNBN are in privity with Taishan and TTP, the Defendants in *Germano* against whom a default judgment has been entered.  With respect to the control required to establish privity under the second situation, above, the Fifth Circuit in *Benson & Ford, supra*, explained:

> To have control of litigation requires that a person have effective choice as to the legal theories and proofs to be advanced in behalf of the party to the action.  He must also have control over the opportunity to obtain review.  *Hardy,* 681 F.2d at 339 (quoting *Restatement (Second) of Judgments* 39, comment c (1982)).  Examples of the "control" necessary to preclude a nonparty are: the president and sole shareholder controls his company; **a parent corporation controls its subsidiary**; *Freeman,* 771 F.2d at 864 n. 3; a liability insurer assumes control of a defense; and the indemnitor defends an action against an indemnitee. 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4451, at 430-31 (1981).

*Benson & Ford*, 833 F.2d at 1174 (emphasis added).

In its FOFCOL, the Court held that CNBM Group ultimately controls BNBM Group, CNBM, BNBM, and Taishan, and is considered a "Taishan affiliate."[107]  CNBM is the controlling parent of BNBM and both are controlling parents of Taishan and subsidiaries of CNBM Group.[108]  Additionally, recently produced emails from Taishan's discharged counsel reveal that the requisite privity and control exists between the Defendants in *Germano* and in the

---

[107] FOFCOL, *1 at ¶ 4, *5 at ¶ 26, *6 at ¶¶ 28-29, *8 at ¶ 47, *9 at ¶¶ 50-51.

[108] FOFCOL, *5 at ¶ 26, *6 at ¶ 29, *9 at ¶¶ 50-51.

present matter.  In a July 7, 2014 email from Taishan's counsel, Dong Chungang to Joe Cyr and

Eugene Chen at Hogan Lovells, Dong advised "███████████████████████████████████

████████████████████████████████████████"[109]  In a later email, again

acknowledging the true entities in charge, Dong Chungang, "████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████"[110]  And, he made Taishan's U.S. counsel aware

that he "████████████████████████████████████████████████████████

████████████████████████████████████████████████"[111]  As such,

there is sufficient evidence on the record proving that the parties in control of the *Germano*

litigation are the same parties in the instant matter.

Moreover, it is abundantly clear that the interests of CNBM and BNBM have been

aligned with Taishan and TTP from the outset of this litigation as is discussed in Section II.A.3,

*supra*.  The third circumstance under which parties are considered in privity "does not pertain to

the competence of the previous litigation[,]" rather, "it refers to the concept of virtual

representation, by which a nonparty may be bound because the party to the first suit 'is so closely

aligned with his [the nonparty's] interests as to be his virtual representative.'"  *Benson & Ford*,

833 F.2d at 1175 (citing *Freeman*, 771 F.2d at 864 (citation omitted) (internal quotations

---

[109] Email from Dong [Chungang] to Joe Cyr and Eugene Chen at Hogan Lovells, dated July 7, 2014 (filed under seal) [Rec. Doc. No. 18433-32].

[110] Email from Dong [Chungang] to Eugene Chen at Hogan Lovells, dated August 5, 2014 (filed under seal) [Rec. Doc. No. 18433-32]; *see also* Email from Phoebe Yan to Eugene Chen, Hogan Lovells, dated July 11, 2014 ███████████████████ | ██████████████████████████
████████████") (emphasis added) (filed under seal) [Rec. Doc. No. 18433-32].

[111] Email from Dong [Chungang] to Eugene Chen at Hogan Lovells, dated August 5, 2014 (filed under seal) [Rec. Doc. No. 18433-32].

omitted)).  The question of "virtual representation" is one of fact, and requires the existence of an express or implied legal relationship in which parties to the first suit are accountable to non-parties in the subsequent suit raising identical issues." *Id*. (citations omitted). The Court previously held that "[a]t all relevant times, BNBM and CNBM had and still have control over Taishan and all of its subsidiaries."[112]  Additionally, "[a]t all relevant times, Taishan and/or TTP were express and/or implied mandataries (*i.e.* agents) of BNBM, BNBM Group, CNBM, and/or CNBM Group, in that BNBM, BNBM Group, CNBM, and/or CNBM Group had and still has the right to control the conduct and/or actions of Taishan and TTP, and Taishan and/or TTP have authority to bind BNBM, BNBM Group, CNBM, and/or CNBM Group."[113]  As such, there is no question that CNBM and BNBM's interests have been aligned since the outset of this litigation and continue to remain aligned.

### b)      The *Germano* Default Judgment was Rendered by a Court of Competent Jurisdiction.

The second requirement for res judicata is also met, as the May 10, 2010 *Germano* Default judgment was issued by a court of competent jurisdiction.  In fact, the Court's exercise of personal jurisdiction over Taishan was twice affirmed by the Fifth Circuit.  *See Chinese Drywall*, 742 F.3d 576 & 753 F.3d 521 (5th Cir. 2014).  Thus, the second requirement is satisfied.

### c)      The *Germano* Default Judgment is a Final Judgment on the Merits.

The third requirement, that the prior claim be concluded by a judgment on the merits is likewise satisfied in that the claim concluded with a default judgment entered by the Court on May 10, 2010.  It is well settled that a default judgment is, in fact, a judgment "on the merits" for

---

[112] FOFCOL, *6 at ¶ 29.

[113] FOFCOL, *8 at ¶ 47.

purposes of res judicata.  *Jones v. U.S. ex rel. Farmers Home Admin.*, 46 F.3d 67 (5th Cir. 1995)

(citing *Moyer v. Mathas*, 458 F.2d 431, 434 (5th Cir. 1972) (noting that a prior "judgment is no

less res judicata because it was obtained by default, absent any proof of fraud, collusion, or lack

of jurisdiction.")).

> **d)** **The Same Claim or Causes of Action that were Involved in the *Germano* Proceedings are Involved in the Class Damages Proceeding.**

Finally, the same claim or causes of action are indeed involved in both suits.  "It is

important to remember that res judicata is measured by the underlying transactions or

occurrences at issue, and not by the relief that the plaintiff is seeking."  *Savidge v. Fincannon,*

836 F.2d 898, 906 n.31 (5th Cir. 1988).  This "transactional test" has been established in that

both proceedings arise out of the same transaction or occurrence.  Both the *Germano* case as well

as those at issue in the class damages hearing involve claims of thousands of the same class

members who have suffered property damages arising from defective Chinese-manufactured

drywall manufactured, sold, distributed, supplied, marketed, inspected, imported or delivered by

the Taishan Defendants and used in plaintiffs' properties.[114]  As such, the fourth requirement for

res judicata is satisfied.

Accordingly, CNBM and BNBM are precluded from asserting any claims or defenses in

the class damages hearing that could have been raised in the *Germano* proceedings.  As such, the

holding of the *Germano* default judgment applies, with full force to the parties involved in the

class damages hearing.

---

[114] *See* FOFCOL, *1 at ¶ 1.

**5.      Even if the Default Judgments are Vacated, The Court's September 26, 2014 Findings of Fact and Conclusions of Law are Binding on CNBM and BNBM.**

Even if Defendants move the court for and are successful in vacating the entries default, the FOFCOL issued by the Court on September 26, 2014 are binding on them moving forward. Because CNBM and BNBM chose not to participate in the litigation, and particularly in the class certification proceedings, the FOFCOL entered therein are binding on both parties.  Pursuant to Federal Rule of Civil Procedure 36(a), the PSC served Taishan and TTP with a Request for Admissions on July 21, 2014, which largely formed the basis for the Court's FOFCOL.[115] Because neither Taishan nor TTP timely responded to the Request for Admissions within the time prescribed by the Federal rules (*i.e.*, 30 days after service thereof), the Request for Admissions were deemed admitted in accordance with Rule 36(a)(3).  As such, the admissions of Taishan and TTP are binding on CNBM and BNBM, to the extent each applies to these entities.

Rule 36 allows litigants to request admissions as to a broad range of matters, including ultimate facts, as well as applications of law to fact.  *In re Carney*, 258 F.3d 415, 419 (5th Cir. 2001) (citing *Stubbs v. Comm'r Internal Rev.*, 797 F.2d 936, 938 (11th Cir. 1986); *Campbell v. Spectrum Automation Co.*, 601 F.2d 246, 253 (6th Cir. 1979).  Such breadth accomplishes the very purpose of Rule 36, "to obviate the need to present evidence on a matter that has been admitted." *American Auto. Ass'n v. AAA Legal Clinic*, 930 F.2d 1117, 1120 (5th Cir. 1991).  Thus, admissions under Rule 36 allow litigants to winnow down issues prior to trial and thus focus their energy and resources on disputed matters.  *Id*. (citing Wright, Miller & Marcus, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2254 (1994)).  The Fifth Circuit has emphasized: "[f]or Rule 36 to be effective in this regard, litigants must be able to rely on the fact

---

[115] *See* FOFCOL, *6 at ¶ 28, n. 5.

that matters admitted will not later be subject to challenge." *In re Carney*, 258 F.3d at 419

(citing *American Auto. Ass'n*, 930 F.2d at 1119).  Rule 36(b) mandates that "[a]ny matter

admitted . . . is conclusively established *unless* the court on motion permits withdrawal or

amendment of the admission." Fed. R. Civ. P. 36(b) (emphasis added).

It is well-settled that "a deemed admission can only be withdrawn or amended by motion

in accordance with Rule 36(b)."  *In re Carney*, 258 F.3d at 419 (citing *American Auto*, 930 F.2d

at 1120).  Under Rule 36(b), a deemed admission may only be amended or withdrawn if the trial

court determines that: (1) withdrawal or amendment of the admission would serve the

presentation of the case on its merits, **and** (2) it would not prejudice the party that obtained the

admissions in its presentation of the case.[116]  *See id.* (citing *American Auto.*, 930 F.2d at 1120;

Fed. R. Civ. P. 36(b)) (emphasis added).  However, even where both conditions are satisfied, it

remains within the district court's discretion to deny a request for leave to withdraw or amend an

admission.  *See id.* (citing *United States v. Kasuboski,* 834 F.2d 1345, 1350 n.7 (7th Cir. 1987)

("[R]ule 36(b) allows withdrawal of admissions if certain conditions are met and the district

court, in its discretion, permits the withdrawal."); *Donovan v. Carls Drug Co., Inc.*, 703 F.2d

650, 652 (2d Cir. 1983) ("Because the language of [Rule 36(b)] is permissive, the court is not

required to make an exception to Rule 36 even if both the merits and the prejudice issues cut in

favor of the party seeking exception to the rule.")).

Because admissions under Rule 36 are conclusive as to the matters admitted they cannot

be overcome by conflicting trial testimony. *In re Carney*, 258 F.3d at 419 (citing *American

Auto.*, 930 F.2d at 1119).  "An admission that is not withdrawn or amended cannot be rebutted

---

[116] Courts have usually found that the prejudice contemplated by Rule 36(b) relates to special
difficulties a party may face caused by a sudden need to obtain evidence upon withdrawal or
amendment of an admission.  *See American Auto.*, 930 F.2d at 1120.

by contrary testimony or ignored by the district court simply because it finds the evidence presented by the party against whom the admission operates more credible." *American Auto. Ass'n*, 930 F.2d at 1120  (citing *Airco Indus. Gases, Inc. v. Teamsters Health & Welfare Pension Fund*, 850 F.2d 1028, 1036–37 (3rd Cir. 1988); *Williams v. City of Dothan*, 818 F.2d 755, 762 (11th Cir. 1987); *Brook Village North Assoc. v. Gen. Elec. Co.*, 686 F.2d 66, 73 (1st Cir. 1982); *Rainbolt v. Johnson*, 669 F.2d 767, 769 (D.C. Cir. 1981)).  This conclusive effect of admissions applies with equal force regardless of whether the admissions were made affirmatively or by default, and whether "the admissions relate to material facts that defeat a party's claim." *Id.*; *see also Kasuboski*, 834 F.2d at 1350; *Rainbolt*, 669 F.2d at 768; *Brook Village*, 686 F.2d at 70.

Thus, the only vehicle through which a litigant can avoid the consequences of its failure to timely respond to Rule 36 requests for admission is by filing a motion to amend or withdraw the default admissions in accordance with Rule 36(b).  *See id*.  Where such a motion has not been filed, default admissions remain binding on the litigant as matters conclusively established.  The Fifth Circuit in *In re Carney* explained:

> We recognize the potential harshness of this result. **The failure to respond to admissions can effectively deprive a party of the opportunity to contest the merits of a case. This result, however, is necessary to insure the orderly disposition of cases; parties to a lawsuit must comply with the rules of procedure**. In addition, the harshness is tempered by the availability of the motion to withdraw admissions, a procedure which [Carney] did not employ.

*In re Carney*, 258 F.3d at 421 (quoting *Kasuboski,* 834 F.2d at 1345) (emphasis added).

Here, Defendants have not moved the court to amend withdrawal of the July 21, 2014 Admissions under Rule 36(b), which, in large part, formed the basis for the Court's FOFCOL. Because these defendants did not avail themselves of the procedural mechanism for attempting to avoid the effect of their default, the validity of the admissions must be considered conclusively

established under the applicable precedent and the plain language of Rule 36.  *See In re Carney*,

258 F.3d at 420; *see also American Auto.*, 930 F.2d at 1119.

> **6.      Class Damages Are Proper Under These Circumstances, Because The Class Consists of Active Litigants With Inspection Reports and Average Square Footage Information.**

Defaulted Defendants allege that the Plaintiff class is not well represented by the

*Germano* bellwether hearings, and if this Court holds otherwise, such a decision will be contrary

to Fifth Circuit precedent.  Citing to *In re Chevron USA, Inc.*, the BNBM Defendants argue that

the use of bellwether verdicts are improper because Plaintiffs have not properly shown

"competent, scientific, statistical evidence" upon which a court may rely in determining class-

wide damages.[117]  It bears noting that the issue before the court in *Chevron USA*, 109 F.3d 1016,

1020 (5th Cir. 1997), was the result of a proposal by counsel to hold thirty bellwether trials

solely with respect to the issue of *liability* in a ground contamination case.  Further, the Fifth

Circuit's reversal was not an attack on bellwether hearings, rather, the Fifth Circuit held that due

process would not be satisfied without a greater showing that the sample cases adequately

represented the 3,000 member class.  *Chevron USA*, 109 F.3d at 1020.  As shown by the

Findings and Fact and Conclusion of Law of this Honorable Court, the *Germano* bellwether

hearings properly represent an adequate showing of class member plight such that damages are

reasonably ascertainable through the methods proposed by Plaintiffs.

This Court carefully considered the scientific evidence provided by the Consumer

Product Safety Commission ("CPSC"), which outlined the harmful effects of Chinese-

manufactured drywall.  These accounts, coupled with the findings of Plaintiffs' experts revealed

---

[117] *See* BNBM Opposition at 16-17 [Rec. Doc. No. 18454].

similar, and now familiar, damage to all homes containing the defective drywall.[118]  Next, this

Court held a four-day evidentiary hearing in order to determine the scope of remediation

expenses, relocation expenses, and other property damage resulting from the use and installation

of Taishan's defective drywall.[119]  The result of the bellwether hearings was an assessment of

damages based on the square footage of the home showing drywall damage and the reasonable

relocation expenses.  This type of calculation is not new to this Court or this litigation.  The

argument brought by BNBM and other defaulting defendants diminishes nearly five-years of this

court's efforts to adequately settle and compensate plaintiffs injured as a result of defective

drywall.

The proposed method for calculating class damages is appropriate under Fifth Circuit

precedent.  An award of class damages is reasonable and proper so long as the damages

calculation used is straight forward and mechanical.  *Bell Atlantic Corp. v. AT&T Corp.*, 339

F.3d 294, 306-307 (5th Cir. 2003); *Steering Committee v. Exxon Mobil Corp.,* 461 F.3d 598, 601

(5th Cir. 2006)*; Hamilton v. First American Title Insurance, Co.,* 226 F.R.D. 153, 165 (N.D.

Tex. 2010); *Alabama v. Blue Bird Body Company,* 573 F.2d 309, 326 (5th Cir. 1978); *see also*

*Windham v. American Brands, Inc.*, 565 F.2d 59 (4th Cir. 1977); 3B MOORE'S FEDERAL

PRACTICE, p. 23.45(2) at 23-334 (individual damages are permitted "where damages are

susceptible to mathematical or formula calculation.").  The instant case involves a class of

individuals who each suffer from the same factual injury.  The damages calculation is based on

the total number of affected square footage, property damage and reasonable relocation

---

[118] *See* FOFCOL ¶¶ 21, 22.

[119] FOFCOL, ¶ 23.

expenses.  Each consideration is an objective measure and easily input into a simple A+B+C

mathematical formula.

      **B.**      **The Court Has Sole Authority to Determine Whether its Criminal and Civil Contempt Order Has Been Satisfied.**

              **1.**      *Germano* **Plaintiffs Have Not Yet Received Payment of Their $2.7 Million Judgment From Taishan.**

To date, the *Germano* Plaintiffs have not received any payment in consideration for their

ruined homes and/or subsequent repairs.[120]  This Court awarded prejudgment interest to the

*Germano* Plaintiffs through entry of the Final Default Judgment on May 10, 2010.[121]

As calculated by this Court, the awards are as follows:

| *Germano Plaintiff* | Damages | Prejudgment Interest |
|---|---|---|
| Morgan | $481,613.29 | $27,550.92 |
| Baldwin | $441,669.11 | $25,267.61 |
| Leach | $89,676.96 | $5,130.01 |
| Orlando | $407,905.44 | $23,334.43 |
| Michaux | $355,607.80 | $20,342.71 |
| McKellar | $351,741.22 | $20,121.52 |
| Heischober | $480,886.27 | $27,509.33 |
| Total | $2,609,099.99 | $149,256.53 |

In addition to the above, the Court also awarded Plaintiffs undetermined post-judgment

interest and costs.  Post-judgment interest is due pursuant to 28 U.S.C. § 1961(a), which

calculates interest from the date of the entry of the judgment on a daily basis up to the date of

payment of the judgment and compounded annually.  *See* 28 U.S.C. § 1961(a)-(b).  Post-

---

[120] Taishan claims it is "in the process" of arranging to pay these Plaintiffs, but as of this filing, no payments have been made.

[121] *See* Rec. Doc. No. 3013 (*Germano* default judgment).

judgment interest cannot be calculated until the defaulting Defendants satisfy the $2.7 million judgment.[122]  A bill of costs was filed with the Court on July 2, 2014.[123]

### 2. PSC Is Entitled to Additional Attorneys' Fees Since Date of Contempt Order on July 17, 2014, Due to Extensive Efforts Required to Enforce the Order.

Since entry of the Court's July 17, 2014 Contempt Order, the PSC has undertaken extensive efforts to enforce the Order.  These efforts not only required significant resources, but also necessarily entailed devotion of substantial amounts of time of numerous attorneys.  It is a well-established principle that "[district] courts have, and must have, the inherent authority to enforce their judicial orders and decrees in cases of civil contempt."  *Cook v. Ochsner Found. Hosp.*, 559 F.2d 270, 272 (5th Cir. 1977).  Thus, courts are vested with great discretion in enforcing their decrees, which necessarily includes the discretion to award attorneys' fees.  *See id*.  An award of attorneys' fees for civil contempt is premised on the idea that "civil contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance."  *Id*. (citing *United States v. United Mine Workers*, 330 U.S. 258, 303-04 (1947)).  As this Court is well-aware, the PSC has spent countless hours and significant resources as a direct result of Defendants' contempt of court.  The Court's July 17, 2014 Contempt Order and Injunction awarded the PSC $15,000 in attorneys' fees for its losses sustained by reason of Defendants' refusal to appear in open court for a Judgment Debtor Examination, in direct violation of the Court's June 20, 2014 order.[124]

---

[122] However, if full payment of the *Germano* judgment were made today, $29,922.05 in post-judgment interest would be due, so that the total sum owing to the *Germano* Plaintiffs would be $2,788,278.57.

[123] Rec. Doc. No. 17825.

[124] *See* July 17, 104 Contempt Order at p. 2 [Rec. Doc. No. 17869].

Since the Court's entry of the Contempt Order, substantial time and resources has been required

yet again of the PSC solely with respect to enforcing the Contempt Order and Injunction.  Thus,

the PSC is entitled to attorneys' fees, in addition to those awarded in the July 17, 2014 Contempt

Order, to compensate it for additional losses sustained by reason of Defendants' noncompliance.

*See Rousseau v. 3 Eagles Aviation, Inc.*, 130 F. App'x 687, 690 (5th Cir. 2005) (citing *Cook*, 559

F.2d at 272).

> **3.      The Court's Contempt Order and Injunction – Enjoining Taishan
> and Its Affiliates and Subsidiaries From Doing Business in the U.S.
> Until Taishan Complies, and Imposing a 25% Profits Penalty For Any
> Violation – Is Constitutional.**

This Court has broad authority to summarily issue contempt orders when confronted with

flagrant acts of contempt occurring in its presence, *e.g.*, Taishan's willful refusal to appear, after

having notice of the July 17, 2014 Judgment Debtor hearing.  Imbued with such power, this

Court's Contempt Order does not violate the due process rights of Taishan or its affiliates

(including BNBM and CNBM), already found by the Court to have been acting collectively as a

single entity.[125]  Taishan concedes, as it must, that this Court found that Taishan's failure to

appear at the judgment debtor hearing occurred in the presence of the Court.  Yet, it denies that

the Court's finding of direct contempt may apply to Taishan's affiliates who control Taishan.

*See* discussion, *supra*, at Section II.A.2.  These arguments are not well founded.

---

[125] "Taishan, TTP, BNBM, BNBM Group, CNBM, and CNBM Group constitute a single business enterprise for purposes of piercing the corporate veil and holding each of these entities liable for the conduct of their affiliated entities."  *See* FOFCOL, *9 at ¶50; *see also* FOFCOL, *5 at ¶26, and *6 at ¶29; Excerpts of 2014 CNBM Interim Report, attached to Affidavit of Yan Gao as Exhibit "Q" [Rec. Doc. 18433-19] at pp. 6 & 12, accessed at: http://www.cnbmltd.com/en/tzzgx/xx.jsp?newsld=6488.

Similarly, the Taishan Defendants' mistakenly challenge the Contempt Order's award of 25% of their profits as an unconstitutional criminal penalty, and beyond the Court's sanctioning authority.  Their challenge mistakes the coercive and therefore civil nature of the Contempt Order's injunction of "Taishan, and any of its affiliates or subsidiaries" from conducting business in the United States "until or unless it participates in this judicial process," which afforded the Taishan Defendants the ability to avoid the penalty altogether simply by participating in the judicial process.

a)   **The Issuance of the Contempt Order was Appropriate as to Taishan and May be Extended to its Affiliates.**

Taishan states that the Contempt Order violates the due process rights of its affiliates, claiming no notice was given that a criminal sanction would issue.[126]  Even assuming Taishan is correct in arguing that the $40,000 fine and the award of $15,000 in attorneys' fees in the Contempt Order are criminal in nature, this argument fails at first blush – as the Taishan Defendants had notice.  Taishan and its affiliates were fully aware that the failure of Taishan to appear at the Judgment Debtor hearing could result in severe sanctions, including as to them. How did Taishan, CNBM, CNBM Group, BNBM and BNBM Group obtain this knowledge? Upon express advice of their counsel – Hogan Lovells – ███████████████████████ ████████████████████████████████████████. It that inter-locking relationship which resulted in a finding by this Court that they collectively constitute a single business enterprise.[127]  Therefore, it is respectfully submitted that the Court appropriately

---

[126] *See* Taishan Gypsum Co., Ltd.'s Response in Opposition to Plaintiff-Intervenors' and the PSC's Motion for an Expedited Hearing to Enforce the Court's July 17, 2014 Contempt Order and Injunction at 9-10, *citing*, Fed. R. Crim. P. 42 [Rec. Doc. No. 18451].

[127] *See supra*, at Section II.A.4; *see also* FOFCOL, ¶ 23.

held Taishan in contempt and that the Contempt Order is properly extended to the Taishan

Affiliates so far as they participated in Taishan's willful decision not to appear at the Judgment

Debtor proceeding.

The law in the Fifth Circuit clearly finds that failure to appear may be grounds for

summary contempt where the reason for the failure to appear are known to the Court.  *See United*

*States v. Onu*, 730 F.2d 253, 255 n.5 (5th Cir. 1984) (recognizing that the failure to appear for a

hearing could be construed as a contempt in the presence of the court if the reason for the failure

to appear before the court are known to the court.  "In such instances, it may be that all the

procedures [applying to indirect contempt] need not be followed.").  *See also United States v.*

*Hernandez*, 771 F.3d 707, 712 (10th Cir. 2014) (summarily sanctioning counsel for contempt

under Fed. R. Crim. P. 42(b) for his willful failure to appear at a sentencing).

It is respectfully submitted that the reason for Taishan's failure to appear at the Judgment

Debtor hearing was open and notoriously known to the Court based on Taishan's decision to

terminate its counsel immediately prior to the July 17, 2014 Judgment Debtor hearing, with no

attempt to hire new counsel for purposes of going forward with the proceedings.[128]  Taishan

deliberately refused to appear at the hearing in direct violation of this Court's order requiring its

appearance – making Taishan's conduct in this matter clearly worse than that involved in the

*Onu* case.[129]  This Court, therefore, was well within its authority to summarily issue its Contempt

Order.

---

[128] *See* July 14, 2014 Motion to Withdraw as Counsel of Record [Rec. Doc. No. 17846].

[129] *Onu* involved the failure of counsel, as opposed to a party, to appear in open court.  In addition, counsel in *Onu* had engaged in repeated efforts to reschedule the trial in light of his duties as an active member of the Texas State Senate.

40

In addition, so far as the Taishan Defendants contend that the Taishan Affiliates may not be held liable for a contempt by Taishan,[130] this argument should be rejected since the jurisprudence is clear that affiliates and related parties may be held liable where they exercise control over a contemnor.  *See F.T.C. v. Kuykendall*, 371 F.3d 745, 759 (10th Cir. 2004) (affiliates and related corporate entities may be held vicariously in contempt where they engage in a "common enterprise" or could have controlled the activities of the contemnor); *Tegal Corp. v. Tokyo Electron Co.*, 248 F.3d 1376, 1379 (Fed. Cir. 2001) ("[C]ourts have held parties in contempt based on the conduct of others, but in that circumstance they have required proof that the party subject to contempt sanctions had control over those who engaged in the conduct proscribed by the injunction."); *see also Reebok Int'l Ltd. v. McLaughlin*, 827 F. Supp. 622, 625 (S.D. Cal. 1993) (holding that a non-party may be bound by injunction where it is proved that the nonparty participated in the contumacious act of the party), *rev'd on other grounds*, 49 F.3d 1387 (9th Cir. 1995); *United States v. Voss*, 82 F.3d 1521, 1527 (10th Cir. 1996) (individual that controlled organization that had access to requested records was properly convicted of criminal contempt where that individual was aware of court orders requiring organizations to respond to grand jury subpoenas the organizations failed to comply with the orders).

It is beyond dispute that the Taishan Affiliates exercised control over Taishan with respect to its decision to terminate its counsel and disregard this Court's order requiring its appearance at Judgment Debtor proceedings.  Consequently, not only is the Contempt Order appropriate as to Taishan, but it was also well within this Court's authority to extend that Contempt Order to the Taishan Affiliates.

---

[130] *See* BNBM's Opposition at 12-13 [Rec. Doc. No. 18454].

**b)      The Injunction from Doing Business in the United States Unless the Defendants Purge Themselves of Contempt Was Permissible.**

Taishan contends that this Court's Contempt Order impermissibly imposed a criminal penalty in the guise of the 25% of profits earned by the company or its affiliates or subsidiaries that violated the injunction on doing business in the United States.  Taishan argues that only in "exceptional circumstances" may a court impose such a penalty on a contemnor.[131]  But Fed. R. Crim. P. 42(b) itself states that the court may "summarily punish a person who commits criminal contempt in its presence."  As discussed above, this Court correctly found that Taishan's defiant refusal to attend the Judgment Debtor Examination was in the Court's presence.  And, as also discussed above, there is no doubt that Taishan's non-attendance was a deliberate, willful, and orchestrated action plotted by the principals of Taishan, BNBM and CNBM, who were acting collectively and in concert, and, therefore, punishable collectively.  *See Kuykendall*, 371 F.3d at 759; *Tegal Corp.*, 248 F.3d at 1379.  Therefore, the imposition of the coercive profit penalty upon the Taishan Defendants was entirely within this Court's authority.  *See In re Oliver*, 333 U.S. 257, 275 (1948); *Ocean-Oil Expert Witness, Inc. v. O'Dwyer*, 451 F. App'x 324, 330 (5th Cir. 2011).

In sum, Taishan's argument that this Court behaved unconstitutionally is completely without merit.

**C.      Plaintiffs Are Entitled to Enforce the Court's Contempt Order**

In its July 17, 2014 Order of contempt, the Court ordered that "Taishan, and any of its affiliates or subsidiaries, is hereby ENJOINED from conducting any business in the United

---

[131] Taishan Opposition at p. 10 (citing *Harris v. United States*, 382 U.S. 162, 164 (1965)) [Rec. Doc. No. 18451].

States until or unless it participates in this judicial process. If Taishan violates this injunction, it must pay a further penalty of 25% of the profits earned by the company or its affiliates who violate the order, for the year of the violation."[132]  The Contempt Order is binding on not only Taishan, but all of its affiliates or subsidiaries that received actual notice of the order. Under Federal Rule of Civil Procedure 65(d)(2), every order granting an injunction "binds only the following who receive actual notice of it by personal service or otherwise:  (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) *other persons who are in active concert or participation with* anyone described in Rule 65(d)(2)(A) or (B)."  Fed. R. Civ. P. 65 (Emphasis added).  Indeed, "[u]nder Rule 65, … orders bind persons 'in active concert,' irrespective of whether the court recites that specific language." *Seven Arts Pictures, Inc. v. Jonesfilm*, 512 F. App'x 419, 426 (5th Cir. 2013).  A federal court's injunction runs nationwide, and "carries with it the concomitant power of the court to reach out to nonparties who knowingly violate its orders."  *Waffenschmidt v. MacKay*, 763 F.2d 711, 717 (5th Cir. 1985).  Thus, irrespective of whether any given Taishan affiliate or subsidiary or employee thereof is technically a party to the litigation because the Taishan Defendants were in active concert, the Court has the power to enforce its injunction and punish any violation by way of sanctions or contempt.

     **D.**    **The Court Should Deny Hogan Lovells' Motion to Withdraw.**

Hanging over and clouding these proceedings and each of the pending motions to be heard by the Court, including the Motion to Withdraw as Counsel of Record, is the long and complicated history of evasion by each of the Defendants, culminating in an order of contempt. Recent appearances by new counsel for Taishan, and for BNBM and CNBM (some of whom

---

[132] *See* Rec. Doc. No. 17869 (hereinafter "Contempt Order").

appeared earlier in the litigation and then disappeared) do not clean the slate. Rather, that history remains compelling, and as the recently produced emails of Hogan Lovells US LLP and Stanley, Reuter, Ross, Thornton & Alford, LLC ("Taishan's First Counsel") make clear, these counsel are in integral part of this complex scenario, which is still in the process of being fleshed out. The Court must have the ability to call upon these firms from time to time to uncover the relationships between and among the Defendants and counsel's knowledge of Defendants' efforts to evade these proceedings and mock the Court's authority and jurisdiction. Taishan's new attorneys do not possess that information. Moreover, given Taishan's willingness to appear and disappear at its own whim, retention of new counsel provides little assurance that continued engagement in these proceedings will occur.[133] The timing of the withdrawal of counsel for Taishan is crucial to protecting the interests of the thousands of homeowners who have Taishan drywall in their homes.

The Fifth Circuit has made it clear that, even where the withdrawal of counsel appears justified, "it is incumbent on the court to assure that the prosecution of the lawsuit before it is not disrupted by the withdrawal of counsel ... to protect the interests of the parties before the court and assure fair treatment of the court's officers." *Broughten v. Voss*, 634 F.2d 880, 882-83 (5th Cir. 1981). For this reason, district judges are vested with broad discretion in deciding whether to grant or deny a motion for the withdrawal of counsel, and to decide the appropriate conditions and timing for any such withdrawal. *See Brandon v. Blech*, 560 F.3d 536, 537 (6th Cir. 2009);

---

[133] *See* CNBM Voluntary Announcement on August 20, 2014, available at http://www.hkexnews.hk/listedco/listconews/SEHK/2014/0820/LTN20140820707.pdf; *see also* CNBM Public Announcement on February 13, 2015, available at: http://www.hkexnews.hk/listedco/listconews/SEHK/2015/0213/LTN20150213741.pdf; CNBM Voluntary Announcement on July 18, 2014, available at http://www.hkexnews.hk/listedco/listconews/SEHK/2014/0718/LTN20140718768.pdf (acknowledging that "Taishan Gypsum does not agree that the US courts have jurisdiction," despite the finality of the Court's ruling on that matter).

*Whiting v. Lacara*, 187 F.3d 317, 320 (2d Cir. 1999).  Prosecution of the claims against each of the Defendants requires the continued presence of Taishan's First Counsel to provide additional facts regarding the relationship between the Defendants and, now that the Defendants have appeared (or, in the case of Taishan, re-appeared), to ensure that they remain tethered to this Court.

Taishan's First Counsel held a crucial view of the relationship between Taishan and each of the other Defendants, including BNBM and CNBM.  Even when the focus was solely on Taishan's contempt, the Privilege Log produced by Taishan's First Counsel lists over 100 communications from June 30, 2009 (only five days after Taishan was served with process) through May 28, 2014 regarding "███████████████████████████████ ████████████████████████"  This was during the time that Taishan's First Counsel was representing Taishan in these proceedings, and continues into the time that Taishan's First Counsel was discussing "████████████████████████ ████████████████" with Taishan.[134]  Like the contempt of Taishan and the other Defendants, such communications have continued.  And like the earlier discovery into the "contempt," discovery through Taishan's First Counsel about the relationship between the Defendants and their wider contempt for these proceedings should be permitted.

Furthermore, these Defendants remain poised to again evade these proceedings.  CNBM has not minced words on this point, declaring, in response to the Court's Contempt Order, that

---

[134] Privilege Log at No. 104, p. 19 (dated May 9, 2014).  Even earlier, on June 27, 2011, ████████████████████████████████████████████████ Privilege Log at No. 101, p. 18.

CNBM is basically beyond the reach of U.S. law.[135]  Adding to its track record with this Court,

Taishan stated as recently as July 11, 2014 in an email to its First Counsel that 

"[136]  Further, in the July 14, 2014 letters sent to

Taishan's First Counsel ████████████████████  each of the Taishan entities

made clear that it "████████████████████████████

████████"[137]  Taishan's First Counsel are vital in tethering Taishan to these proceedings until

they make clear a respect for these proceedings.

Louisiana Rule of Professional Conduct 1.16, which mandates the withdrawal of counsel

from "the representation" of a client in cases where counsel is discharged, is the sole basis for the

Motion by Taishan's First Counsel, and one which the PSC readily acknowledges.  The Rule

makes clear that, even when good cause exists for withdrawal, a court may still require that the

attorney continue to act as a representative of the client.  Rule 1.16(c), La. R. Prof. Conduct.

But, the Rule does not outline the conditions or timing to be associated with the required Order

permitting withdrawal so that the wider interests, including those of the Court and Plaintiffs, are

considered.

---

[135] *See* CNBM Voluntary Announcement on August 20, 2014, available at
http://www.hkexnews.hk/listedco/listconews/SEHK/2014/0820/LTN20140820707.pdf.

[136] HL_00000215-218, at 216 (attached as Exhibit "6" hereto) (filed under seal).

[137] HL_00000220, 224 (attached as Exhibit "7" hereto) (filed under seal).

In determining whether to grant a motion to withdraw as counsel, the district courts must balance the burden imposed on all parties as well as the burden imposed on counsel who are attempting to withdraw.[138]  *See Buschmeier v. G&G Investments, Inc.*, 222 F. Appx. 160, 164 (3rd Cir. 2007); *Fid. Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins. Co.*, 310 F.3d 537, 541 (7th Cir. 2002).  Indeed, Rule 1.16(c) "recognizes the notion that 'even if withdrawal is otherwise appropriate, other considerations must sometimes take precedence, such as maintaining fairness to litigants and preserving a court's resources and efficiency.'" *Rusinow v. Kamara*, 920 F. Supp. 69, 71 (D.N.J. 1996) (quoting *Haines v. Liggett Grp., Inc.*, 814 F. Supp. 414, 423 (D.N.J. 1993)).

It is precisely this balancing of competing interests that informs district courts in deciding the conditions and timing for the withdrawal of counsel, including where the conditions imposed by the Court require certain actions or tasks to be performed as a predicate to withdrawal.  *See Emile v. Browner*, 1996 WL 724715, *2 (S.D.N.Y. Dec. 17, 1996) (citations omitted); *John Hancock Property and Cas. Ins. Co. v. Universal Reinsurance Co., Ltd.*, 1993 WL 147560, *2 (S.D.N.Y. Apr. 30, 1993); *Beshansky v. First Nat. Entertainment Corp.*, 140 F.R.D. 272, 274 (S.D.N.Y. 1990).  Defendants' record of evasions and bad faith is sufficient reason for this Court to deny the Motion to Withdraw until the interests of the homeowners have been secured.  *See Towns v. Morris*, 50 F.3d 8 (4th Cir. 1995) (citing *Ohntrup v. Firearms Ctr., Inc.*, 802 F.2d 676 (3d Cir. 1986).

Accordingly, the PSC respectfully renews its request that the Motion to Withdraw should not be granted at this time.  Taishan's First Counsel should be obliged to furnish further

---

[138] With new counsel for Taishan, there is no burden on Taishan's First Counsel, even to act as a place where service of papers can be made.  However, the benefits to the homeowners to have continued contact with Taishan's First Counsel are clear.

information regarding the relationship between the Defendants and remain designated as counsel for Taishan,[139] until such time as the Court is convinced that Taishan no longer poses a flight risk.  The history of Taishan's First Counsel with the Taishan Defendants is not yet truly substituted by that of new counsel.  There is evidence that First Counsel were communicating with all Defendants since the inception of this litigation.

**E.**    **Plaintiffs Are Entitled To Discovery Regarding the Interrelated Global Conglomerate of SASAC/CNBM Companies.**

**1.**    **Alter Ego Relationships and Allegations Warrant Discovery.**

As noted above and in numerous prior submissions, Taishan, BNBM, CNBM, BNBM Group, CNBM Group, and SASAC are interlocking corporate entities.  The relationship between Taishan and its parent corporations is relevant to imputing jurisdiction of this Court over the parents, because a corporation's contacts with the United States can be imputed to its parents for purposes of personal jurisdiction when it is an alter ego of the parent.  *See*, *e.g.*, *Chinese Drywall*, 753 F.3d 521 (upholding ruling that Taishan and its wholly-owned subsidary TTP are alter egos), 546-47; *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 586 (5th Cir. 2010) (recognizing that contacts can be imputed to alter-egos for the purpose of specific jurisdiction); *Walker v. Newgent*, 583 F.2d 163, 167 (5th Cir. 1978).  As this Court is painfully aware, such an inquiry is extremely fact-intensive.  *Fielding v. Herbert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005) (quoting *Toys 'R Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir.2003)).  That being the case, the PSC should be permitted to take discovery concerning the various components of this interconnected global conglomerate.

Courts have repeatedly permitted discovery into the issue of whether one corporate defendant is the alter ego of another where, as here, concrete allegations of such relationships

---

[139] Rec. Doc. No. 17790.

have been asserted. *E.g.*, *Chesapeake Operating, Inc. v. Stratco Operating Co.*, No. 07-354-B-M2, 2009 WL 426101, at *8 (M.D. La. Feb. 20, 2009) ("Where factual allegations and specific evidence have been adduced substantiating that an 'alter ego' relationship may exist, courts have allowed discovery into financial information to determine whether the corporate veil should be pierced."); *Compaq Computer Corp. v. Ergonome, Inc.*, 196 F. Supp. 2d 471, 473 (S.D. Tex. 2002) (recounting discovery that court allowed on alter ego issue, ultimately resulting in court finding alter ego relationship as a matter of law as sanction for over two years of obstructionist resistance to discovery), *aff'd*, 387 F.3d 403, 412-13 (5th Cir. 2004); *Heller v. Cepia, L.L.C.*, No. C 11-01146 JSW, 2012 WL 13572, at *12-13 (N.D. Cal. Jan. 4, 2012) (permitting discovery on whether alter ego doctrine was applicable), *aff'd*, 560 F. App'x 678 (9th Cir. 2014); *Multistate Legal Studies, Inc. v. Marino*, No. 96-5118 ABC (RNBX), 1996 WL 786124, at *8 (C.D. Cal. Nov. 4, 1996) (noting court's discretion to permit discovery on alter ego liability theory); *see also Trak Microcomputer Corp. v. Wearne Bros.*, 628 F. Supp. 1089, 1093 (N.D. Ill. 1985) (plaintiffs alleged sufficient basis for court to permit discovery concerning company's alter ego relationship with its subsidiaries); *Minelli Constr. Co. v. United Derrickmen & Riggers Ass'n, Local 197*, No. 90 Civ. 2846 (RJW), 1990 WL 180550, at *5 (S.D.N.Y. Nov. 14, 1990) (permitting discovery into whether one company was alter ego of another, noting that it presented question of fact); *cf. Aurelius Capital Master, Ltd. v. Republic of Argentina*, 589 F. App'x 16, 18 (2d Cir. 2014) (district court acted within its discretion in permitting discovery that concerned whether entities were legally distinct from Argentina; even if entity is not defendant's alter ego, it may nevertheless hold attachable assets on behalf of defendant).

**2.** **If Discovery Is Stayed, the Court Should Order the Attachment of $2 Billion of CNBM's and BNMB's Assets for the Purpose of Securing Satisfaction of Potential Liability to 4,000 Plaintiffs.**

In the event that the Court declines to permit discovery concerning the relationships of the various tentacles of the SASAC/CNBM global conglomerate, it should take steps to ensure that CNBM and BNBM do not, at some point down the road, change their minds once again, do an about-face, and walk away from these MDL proceedings if the results are not to their liking.

 Rule 64 of the Federal Rules of Civil Procedure provides that, any time "throughout an action," a district court may employ "every remedy [that] is available under the law of the state where the court is located" to authorize the "seizing of persons or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64. In turn, the Louisiana Code of Civil Procedure provides that "[a] writ of attachment may be obtained before the debt sued upon is due." La. Code Civ. Proc. Ann. art. 3543; *see Bowers v. Greene*, 360 So. 2d 639, 641 (La. Ct. App.), *writ denied*, 362 So. 2d 801 (La. 1978). Where a writ of attachment is against the property of a non-resident defendant, the plaintiff is required to post security of no more than $250 (although a court may order a higher amount). La. Code Civ. Proc. Ann. art. 3544; *see Alessi v. Belanger*, 644 So. 2d 778, 785 (La. Ct. App. 1994).

Here, significant prejudgment attachment is warranted given that CNBM and BNBM (a) are non-resident defendants and (b) have demonstrated a history of entering or withdrawing from these proceedings as it best suits their litigation strategy. Moreover, the amount of the requested attachment is amply justified given this Court's September 2014 certification of a class and the verdicts yielded by the bellwether trials to date. Thus, these defendants face huge potential class-wide liability. They have every incentive – and a demonstrated willingness – to avoid adverse outcomes.

50

III.    **CONCLUSION**

The Taishan Plaintiffs have been waiting almost six years for their day in Court, but they have been stymied by the recalcitrance of these Defendants, who have tried to make a mockery of these proceedings by showing their disrespect.  We are prepared to go forward with the hearings scheduled for March 17 and March 26, 2015.  There should be no further delays.

Dated: March 13, 2015                    Respectfully Submitted,

BY:  ____ /s/ Russ M. Herman
Russ M. Herman (LA Bar No. 6819) (On the Brief)
Leonard A. Davis (LA Bar No. 14190) (On the Brief)
Stephen J. Herman (LA Bar No. 23129) (On the Brief)
Herman, Herman & Katz, LLC
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
ldavis@hhklawfirm.com
*Plaintiffs' Liaison Counsel*
*MDL 2047*

Arnold Levin (On the Brief)
Fred S. Longer (On the Brief)
Sandra L. Duggan (On the Brief)
Matthew Gaughan (On the Brief)
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*
*MDL 2047*

Gerald E. Meunier (LA Bar No. 9471) (On the Brief)
Rachel A. Sternlieb (LA Bar No. 35338) (On the Brief)
Gainsburgh, Benjamin, David,
  Meunier & Warshauer, LLC
2800 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2800
Phone:  (504) 522-2304
Fax:  (504) 528-9973
gmeunier@gainsben.com
*Co-Counsel for Plaintiffs and PSC Member*

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm, LLC
425 W. Airline Highway, Suite B
Laplace, LA 70068
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Peter Prieto
Podhurst Orseck, PA
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
pprieto@podhurst.com

Bruce William Steckler
Steckler LLP
12720 Hillcrest Road, Suite 1045
Dallas, TX 75230
Phone: (972) 387-4040
Fax: (972) 387-4041
bruce@stecklerlaw.com

Ervin A. Gonzalez
Colson, Hicks, Eidson
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
ervin@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
  Echsner & Proctor, PA
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
The Lambert Firm
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@thelambertfirm.com

Jerrold Seth Parker
Parker Waichman, LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Myers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

James Robert Reeves
Reeves & Mestayer, PLLC
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@attorneys4people.com

Christopher Seeger
Scott Alan George (On the Brief)
Dion Kekatos (On the Brief)
Seeger Weiss, LLP
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5002
dan@wbmllp.com

Richard J. Serpe
Law Offices of Richard J. Serpe
Crown Center, Suite 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com

Victor M. Diaz, Jr.
V.M. Diaz and Partners, LLC
119 Washington Ave., Suite 402
Miami Beach, FL 33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W., Suite  650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Anthony D. Irpino (On the Brief)
Pearl Robertson (On the Brief)
IRPINO LAW FIRM
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 13th day of March, 2015.

Respectfully Submitted,

BY:  */s/ Leonard A. Davis*
      Russ M. Herman
      Leonard A. Davis
      Stephen J. Herman
      Herman, Herman & Katz, LLC
      820 O'Keefe Avenue
      New Orleans, LA 70113
      Phone: (504) 581-4892
      Fax: (504) 561-6024
      ldavis@hhklawfirm.com

      *Plaintiffs' Liaison Counsel*
      *MDL 2047*