# EXHIBIT 27

1              UNITED STATES DISTRICT COURT

2              EASTERN DISTRICT OF LOUISIANA

3

4

5    IN RE:  CHINESE MANUFACTURED        *    Docket 09-MD-2047
             DRYWALL PRODUCTS            *
6            LIABILITY LIGATION          *    September 24, 2009
                                         *
7    This Document Relates to All Cases  *    9:00 a.m.
     * * * * * * * * * * * * * * * * * * *

8

9

10             STATUS CONFERENCE BEFORE THE
                HONORABLE ELDON E. FALLON
11            UNITED STATES DISTRICT JUDGE

12

13   APPEARANCES:

14
     For the Plaintiffs:          Herman Herman Katz & Cotlar
15                                 BY:  RUSS M. HERMAN, ESQ.
                                   820 O'Keefe Avenue
16                                 New Orleans, Louisiana 70113

17
     For the Defendant:           Frilot, LLC
18                                 BY:  KERRY J. MILLER, ESQ.
                                   1100 Poydras Street, Suite 3700
19                                 New Orleans, Louisiana 70163

20
     Also Participating:          J. Kevin Buster, Esq.
21                                 Dawn M. Barrios, Esq.
                                   Hilarie Bass, Esq.
22                                 Kristin E. Law, Esq.
                                   Arnold Levin, Esq.
23                                 Adrianne L. Baumgartner, Esq.
                                   Robert V. Fitzsimmons, Esq.

24

25

1   Official Court Reporter:        Toni Doyle Tusa, CCR, FCRR
                                    500 Poydras Street, Room B-406
2                                   New Orleans, Louisiana 70130
                                    (504) 589-7778
3

4

5
    Proceedings recorded by mechanical stenography, transcript
6   produced by computer.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          <u>**PROCEEDINGS**</u>

2                       **(September 24, 2009)**

3          **THE DEPUTY CLERK:**  Everyone rise.

4          **THE COURT:**  Be seated, please.  Good morning, ladies

5   and gentlemen.  Let's call the case.

6          **THE DEPUTY CLERK:**  MDL 2047, *In Re: Chinese Drywall*.

7          **THE COURT:**  Counsel, make your appearance for the

8   record, please.

9          **MR. HERMAN:**  Good morning, Judge Fallon.  Russ Herman

10  for the plaintiffs.

11         **MR. MILLER:**  Good morning, Your Honor.  Kerry Miller,

12  liaison counsel on behalf of defendants.

13         **THE COURT:**  We have a full house today in addition to

14  many of my colleagues from Florida state court on the phone

15  with other individuals.  I think we have a couple hundred phone

16  call-ins today in addition to the people here.

17             This is a monthly status conference.  We meet at

18  least once a month, if not sooner, in this matter to discuss

19  the status of the case as well as the various issues that come

20  up in the meantime.  I have also had a number of meetings with

21  counsel during the month, but this is an open court meeting.

22             I have received from the parties a proposed

23  agenda.  I met earlier with liaison counsel and lead counsel

24  for all of the entities to discuss the agenda.  I have added

25  some matters to them.  I will take it in the order presented.

1              First:  Pretrial orders.  Anything on that?

2          **MR. HERMAN:**  May it please the Court.  Good morning,

3    Your Honor.  Russ Herman.  There are no additions to the

4    pretrial orders other than issues that were covered this

5    morning in PTO's that Your Honor has presented to plaintiffs

6    and defendants.

7          **THE COURT:**  Yes.  I asked the parties to get together

8    to see whether or not they could come up with an agreed

9    pretrial order regarding some issues.  They worked through it.

10   They were able to get together on many issues, but they were

11   not able to get together on a few.  They gave me, therefore,

12   their separate pretrial orders with their suggestions.  I

13   looked them over, and I decided which would be the appropriate

14   pretrial order.  I have given them back to the parties with my

15   indication and instructed them to draft the final pretrial

16   order and give it to me for execution.

17         **MR. HERMAN:**  Your Honor, I do have one report on

18   pretrial orders regarding inspections.  Representatives of

19   builders, suppliers, and manufacturers were present yesterday

20   with plaintiffs' representatives and representatives of

21   Crawford & Company.  We have substantial agreement on

22   modifications to the TIP, which all parties believe will be

23   better than where we are now.  We have an agreement to meet

24   after the next 10 inspections and then after the first 30.  We

25   should be able to present the modified TIP to Your Honor and to

1    all parties by the close of business today.

2              **THE COURT:**  A little background on that.  As everyone

3    knows, I have instituted a protocol for threshold inspections,

4    the threshold inspection protocol.  The parties met and

5    conferred initially with Crawford & Company after they were

6    selected and came up with a detailed protocol which they felt,

7    along with Crawford & Company, would be a method of

8    accomplishing these inspections.

9              At the outset, we recognized that you can put

10   things on paper, but until you actually do the inspections, you

11   don't know whether that protocol is the best protocol available

12   for this particular purpose.  The parties involved themselves

13   in 10 inspections, and clearly it was not what could have been.

14   To put it a different way, the protocol needed to be changed

15   because there were certain issues that presented themselves in

16   the actual inspections that were not envisioned when the

17   protocol was drafted.

18             After the 10 inspections, we went back to the

19   drawing board.  Counsel for all sides met and talked about it,

20   and this is the result.  They have come up with an amended

21   threshold inspection protocol which all sides feel is better.

22   Again, we are going to take it a step at a time and do another

23   10 and see how that works.

24             I ask the parties to keep on top of this.  We'll

25   get the best protocol with experience and will be able to then

6

1    step it out to the whole litigation.

2              **MR. HERMAN:**   Your Honor, one more quick report.   The

3    inspections will commence again Tuesday and Wednesday to see

4    how the new protocol works.   Crawford requested that we get two

5    properties within the same geographic area.   We have done that.

6    It will be a property in Slidell and a property in Mandeville.

7    We will provide defense counsel and Crawford with floor plans

8    by tomorrow of these properties in order to facilitate the

9    inspections.

10             We understand that Crawford has posted or

11   provided inspection reports on the first 10.   The plaintiffs'

12   committee met last night.   We need some indication of where we

13   can access those inspection reports because we haven't been

14   able to access them.   I'm certain that those on the defense

15   side that have them will provide us, or Crawford, with that

16   information.

17             **MR. MILLER:**   Your Honor, Kerry Miller.   A couple

18   issues.   On the issue of inspections, these inspection reports

19   are very voluminous because they contain many, many, many

20   pictures.   I am not an expert by many means, but Crawford's

21   preferred method for disseminating the information is to

22   actually upload them to what's known as an FTP site.   I think

23   Jerry Parker's firm maybe has one.   My firm has one.   I know my

24   firm has received those inspection reports.   I can share that

25   FTP site information with Mr. Herman.   You go onto a site, you

1  access it, you click on it.

2              Folks shouldn't get frustrated.  There are a lot

3  of pictures.  It's voluminous, so sometimes when you click on a

4  particular property it takes several minutes to upload so that

5  you have all the pictures in front of you, but I will be happy

6  to provide that information.  It's an instruction.  It's two

7  lines.  You type in a number and you access the information.

8          **MR. HERMAN:**  We appreciate that because the residents

9  who have had their properties inspected want to know what --

10          **THE COURT:**  That's fair.

11          **MR. HERMAN:**  I will also talk with Kerry and

12  Crawford & Company to see if there's a better way to do this so

13  we can get immediate -- 48 hours, I think, was required.  That

14  may be too short a time frame, but we will resolve it.

15          **THE COURT:**  All right.

16          **MR. MILLER:**  Your Honor, on the issue of technology,

17  just to go back for a second in connection with Pretrial

18  Order 10, that was the pretrial order that dealt with the

19  catalog of photographs and markings.  I want to mention it

20  while we are all here in court and people are on the phone line

21  to make sure that they know that now that catalog and that

22  index are on the Court's Web site.

23              We really appreciate the efforts of Lexy and the

24  Court's I/S department working with us to get that information

25  on the Web site.  I was getting many calls a day for that

1   information.  I just want to make sure and highlight for those

2   in the audience and on the phone that if they want to access

3   the pictures -- and that's been a very popular request -- they

4   can do so now on the Court's Web site.  It's in a very

5   user-friendly format.

6          What we will do, as we continue to do

7   inspections -- I know Russ mentioned the other day that they

8   found some additional marks in some inspections -- is we are

9   going to meet on a regular basis and update that information

10  and get with the Court and update the index and the photographs

11  because, again, that has been a popular request.

12      **THE COURT:**  With regard to the photographs, so that

13  everyone is clear on that, that's the markings on the back of

14  the drywall that potentially indicates the manufacturer of the

15  drywall and in some cases even the mine from which the drywall

16  was obtained.  There are various markings:  Some in Chinese,

17  some in English, some in German, whatever.  They are

18  photographs, and the photographs are of that information.

19          Also, with Crawford, I don't know whether it's

20  possible or not to put that material on the Court's Web site;

21  but if it is, we will house that, also, so that people can get

22  it.  That's something that we will have to talk to them about.

23          The third item is the plaintiff and defendant

24  profile forms.  Any report on that?

25      **MR. HERMAN:**  I have exchanged this morning with

1   Mr. Kerry Miller and Hilarie Bass -- Kerry has the disk for
2   supplements 2, 3, and in effect a fourth supplement which isn't
3   on disk yet.
4           I want to thank our colleagues of the
5   plaintiffs' bar for being here today.  We'll be meeting tonight
6   on the tagalongs and other cases that haven't ended up here yet
7   to see if we can expedite additional plaintiff profile forms.
8           I provided Kerry Miller and Hilarie Bass with a
9   list of what we believe are defense profile forms we haven't
10  received yet.  They will look at it, and they will update us as
11  to that.
12          In terms of the importer/exporter/broker profile
13  form, Your Honor has been advised of competing versions, and we
14  have been discussing a retailer form.
15          THE COURT:  The profile forms are helpful because it
16  cuts through some of the time that it usually takes with
17  interrogatories.  It's not intended to stop you from serving
18  interrogatories, but it will allow you to make your
19  interrogatories more specific because you will have some
20  specific information from which to go further with it and
21  develop it.
22          I need your cooperation on that.  From the
23  plaintiffs' standpoint, as soon as they are received, they
24  should be sent to the defendants.  I remind you that I'm in the
25  process and I will be meeting with the parties shortly to

1  discuss some dates for upcoming trials, and the profile forms
2  will serve as the census from which those trials will be
3  picked.  So if you don't put the profile form in, you're not
4  going to get a trial.

5      **MR. MILLER:**  Before we leave that issue, on the
6  issue, Your Honor, of the retailer profile form as well as the
7  importer/broker type profile form, we do have counsel here who
8  are in court who represent those interests.  I'm not quite sure
9  what the PSC and the Court wants to do with those issues.  I
10 understand the competing forms are fairly divergent at this
11 point.  If the Court wants a presentation, I would advise
12 counsel who represent retailers and installers that they may
13 need to give that information to the Court or meet with their
14 counterpart from the PSC today while everyone is here.

15     **MR. HERMAN:**  We have a representative of the PSC that
16 can meet and confer following the conference.

17     **THE COURT:**  This is what I would like you to do.  I
18 would like you to meet and confer following the conference.
19 Give me the final versions of your competing forms if you have
20 changed them.  I will come up with a form and then meet with
21 each side and tell them why I feel it should be that way and
22 hear any argument the other way, and then I will put it in
23 final form and issue it.

24     **MR. HERMAN:**  Kerry, if you give us the names of those
25 individuals, Lenny Davis and Fred Longer of the plaintiffs'

1    committee will meet with them immediately following.

2         **MR. MILLER:**  Mr. Rasco is the person who will talk to

3    you about the La Suprema profile form, and Chris Bottcher is

4    the retailer profile form.

5         **MR. HERMAN:**  Thank you very much.

6         **THE COURT:**  Again, gentlemen, I need your cooperation

7    on the profile forms.  I'm talking to you all.  It's not

8    intended to restrict your future discovery, but it will be of

9    assistance to everyone, including you.  You're going to be

10   giving the information anyway.  So rather than take it the long

11   route, I want to shorten that.  I need your cooperation on

12   that, and the same way for the plaintiffs.

13              The preservation order is the next item.

14        **MR. HERMAN:**  Yes, Your Honor.  There are two issues

15   outstanding.  The preservation of material things, we are very

16   close on the substantive issues; the technical issues we have

17   to negotiate.

18        **MR. MILLER:**  I was advised that they met between 8:30

19   and 9:00, when we were in the back, and there either is

20   agreement on all issues or --

21        **MR. BUSTER:**  We are very close.

22        **THE COURT:**  If anybody needs to use the mic, use the

23   mic.  You have the mic on the table.

24        **MR. MILLER:**  Much progress was made, I think, on the

25   physical evidence protocol between 8:30 and 9:00.  I think the

1    parties are hopeful that they will reconvene after this

2    conference, the folks from both sides who are dealing with

3    physical evidence, and be in a position to present a joint

4    order to the Court by the next day or so.

5         THE COURT:  That's fine.  I'm going to consult with

6    my colleagues in state court to make sure that they are

7    comfortable with the preservation order.  It's no sense for you

8    to preserve information in a form and fashion that's acceptable

9    to the federal court but not acceptable to the state court.  I

10   really think it ought to be acceptable to both entities, so I

11   will be conferring with my colleagues and give you that input.

12        MR. HERMAN:  Excuse me, Your Honor.  With regard to

13   documents, it's a different issue.  The defendants' position is

14   that there are multiple defendants, and each type of defendant

15   needs a different type of preservation order on documents.  We

16   believe it's a coordinated MDL, and there should be one

17   preservation order on documents that apply to all parties to

18   the litigation.

19        THE COURT:  The way to move that situation is that

20   there may be some documents that are extant with one defendant

21   that don't exist for another defendant.  In that type

22   situation, the defendant that has no documents simply says,

23   "This document doesn't exist in our situation."  A manufacturer

24   may have certain documents that a distributor doesn't and

25   vice-versa.

1          I would like to have one order, if that's

2   possible, but I understand that in some aspects of that

3   particular order the answer might be "not applicable."  If that

4   can be done, fine.  Rather than have five or six or seven or

5   eight orders, I would rather have one if it's possible.

6          **MR. MILLER:**  Your Honor, if I may, actually, the

7   defendants' position has two options.  We believe the plaintiff

8   protocol is too specific, very system specific.  When we talk

9   about documents, I guess we all kind of date ourselves.

10  Really, what it revolves around is electronically stored

11  information.

12         **THE COURT:**  Right.

13         **MR. MILLER:**  That relates to tapes and systems and

14  servers and backup systems, all kind of things that I am just

15  not familiar with.

16          What the defendants would like to do,

17  Your Honor -- certainly, some of us on the defense side are

18  more up to speed on ESI terminology, search terms, the

19  different types of storage devices that hold information -- is

20  to have that kind of an expert or that kind of a person with

21  more knowledge that I have meet with someone from the PSC or

22  some lawyers from the PSC, again, who are knowledgeable in the

23  field of ESI and technology and see what can be worked out so

24  we don't feel as if we are being bound to protect and preserve

25  systems and tapes that certain defendants don't have and don't

1    possess.

2         **THE COURT:**  We are finding throughout the federal

3    system that oftentimes the best way of handling electronically

4    stored documents is to have the parties enter into some kind of

5    agreements that are tailored for that material.  Keep in mind

6    that you have always got clawbacks now and quick peeks and

7    things of that sort that make it better able to be dealt with.

8    The easiest thing is to meet and confer and see if you can

9    draft some kind of agreement, and then I'll have an order that

10   recognizes those agreements and does some specific aspects.

11        **MR. HERMAN:**  Your Honor, if they'll designate who

12   this expert is, we will meet with them today, we will meet with

13   them tomorrow, over the weekend.  We simply believe if you

14   don't have it, all you have to do is say you don't have it.  We

15   believe that the order we have submitted conforms to what's

16   happened in other MDL's and complex litigation.

17             As Kerry, I'm more of a dinosaur probably than

18   even he is.  I am still trying to master e-mails.  We do have

19   people that can meet, and we would like to get this done

20   posthaste.

21        **THE COURT:**  I think it's necessary that you all meet.

22   Let's do that next week, and then by Thursday give me a letter

23   or talk with me about what the result of it is.  If you can't

24   agree, then I will put in place some format.  I think it's

25   better that you try to agree because the format that I will put

1  in will be probably more burdensome than you will come up with

2  if you agree.

3         MR. HERMAN:  I'm willing to indicate that Jeff Grand,

4  Steve Herman, Jerry Parker, and Lenny Davis, will be available

5  whenever their people can meet.

6         MR. MILLER:  The defense counterparts on the issue of

7  ESI preservation orders are Doug Sanders and Liz Ferry.

8         THE COURT:  Let's get together sometime this week:

9  Monday, Tuesday, or Wednesday.

10        MR. HERMAN:  Your Honor, Ms. Barrios is here to

11 address state/federal coordination.

12        THE COURT:  I have appointed the committee of

13 state/federal coordination.  I am appointing Dawn Barrios chair

14 of that committee.

15        MS. BARRIOS:  Thank you, Your Honor.  Dawn Barrios

16 for the state/federal committee.

17            Consistent with my duties in other MDL's, I

18 would like to give you the following report.  Through CTO 5,

19 there have been no motions for remand that have been filed.  We

20 appreciate the Court's indulgence in amending Pretrial Order 2

21 to order that remand and removal pleadings be sent over to the

22 transferee court.

23            I have prepared for Your Honor spreadsheets of

24 all the state court cases of which we are aware.  We have

25 various fields on these spreadsheets, and I would ask if

1  Your Honor would look at these fields to see if there's any
2  other information that you deem appropriate.  We do provide you
3  with the state court's contact information because I know it's
4  Your Honor's belief and preference to strongly coordinate with
5  the state court judges, so we provide that to you.  I would
6  like to particularly thank Joe Hassinger and Kyle Spaulding for
7  their assistance in helping put this together.
8           Lastly, Your Honor, I have asked the defense
9  state/federal committee to stay after this conference and meet
10  with the plaintiff state/federal committee so we can begin our
11  official coordination to assist you in any way possible so that
12  you can coordinate with the state judges.
13       **THE COURT:**  Thank you very much.  I'll make this
14  available to the state judges also.
15           My thinking in a case of this sort is that we
16  ought to do as much as we can one time.  Now, there's
17  differences and there's going to be some overlap, but when we
18  can do something one time as opposed to 50 times, it's
19  certainly better on the litigants and I think it's better on
20  the systems.  So I really appreciate my colleagues in state
21  court and look forward to working with them in getting their
22  counsel and wisdom on it as this matter proceeds.
23           Next, motions in the MDL.  I have two oral
24  motions today following this meeting which I will take up and,
25  if possible, I will rule on them at that time.

```
 1              Discovery issues, that may also be a motion.
 2         MR. MILLER:  I think it's subsumed within the motion
 3    practice.
 4         MR. HERMAN:  Your Honor, I did want to point out at
 5    page 7, DSC motions, they have been filed.  We need dates, and
 6    we certainly will reply.  We have already submitted a bench
 7    brief on 558.  If Your Honor would consider hearing dates and
 8    dates when --
 9         THE COURT:  I'll get with the parties and give you
10    some dates that are consistent with your schedule.
11         MR. MILLER:  Judge, do we want to do it after the
12    next scheduled hearing we talked about in the back?
13         THE COURT:  Yes.
14         MR. MILLER:  I think it's October 15.
15         THE COURT:  October 15.  I can do it at that time if
16    that's convenient with you all.
17         MR. MILLER:  The two filed motions by the DSC that
18    have been filed and I think have briefing schedules and would
19    allow for hearing on October 15 are the motion for protective
20    order filed by Knauf Gips KG and the motion to compel plaintiff
21    profile forms.
22         THE COURT:  How's that schedule with the plaintiffs?
23         MR. HERMAN:  Your Honor, I'm not sure that the first
24    one, without some discovery, is going to be ripe.  As far as
25    plaintiff profile forms, we are submitting those, so I don't
```

1    see any problem with that.

2            **MR. MILLER:**  I want to be clear.  The first motion,

3    Russ, is just a motion for protective order.  It is not the

4    personal jurisdiction motion.

5            **MR. HERMAN:**  Shouldn't have a problem.

6            **THE COURT:**  We'll set it, then, at that time.

7                    Freedom of Information Act.

8            **MR. HERMAN:**  We have listed all the FOIA requests,

9    Your Honor, that plaintiffs have made.

10           **THE COURT:**  If the defendants have any, they should

11   give them also to the plaintiffs, just as the plaintiffs should

12   give them to the defendants.  There's no sense in both sides

13   getting FOIA information and just --

14           **MR. HERMAN:**  We are going to share.

15           **THE COURT:**  If the plaintiffs have gotten it, give

16   it.  If the defendants have received them, they should give

17   them to the plaintiffs.

18           **MR. HERMAN:**  We have received some information.  It's

19   not complete.  When we have complete information, it will be

20   provided without cost.

21                   We are going to ask the Court's assistance if by

22   October 15 we haven't had replies from certain governmental

23   agencies.  Our position is Knauf may have made a FOIA request,

24   Knauff says they haven't, but it's an issue that we can take up

25   with the Court at another time.

 1          **MR. MILLER:**  On that issue, Your Honor, no

 2   defendants -- other, potentially, than Knauff -- have made any

 3   type of FOIA request.  I did review an e-mail from a paralegal

 4   at Knauff's national counsel's law firm to the Florida

 5   Department of Health from earlier this year that requested

 6   information on complaints to that entity.  That would be the

 7   only type of public records request that any defendant has

 8   made.  We will share that e-mail and any return information we

 9   have with the plaintiffs pursuant to their agreement to share

10   the information.

11          **MR. HERMAN:**  We appreciate that.  We will list it in

12   the next status conference report.

13          **THE COURT:**  The next item is trial settings in

14   federal court.  I would like to meet with liaison counsel

15   Monday, Tuesday, or Wednesday of next week, pick some dates,

16   and discuss with you the procedures for picking cases.

17          **MR. HERMAN:**  Yes, Your Honor.  On direct filings and

18   acceptance of service, I believe I have this correct.  Six out

19   of the eight suppliers --

20          **THE COURT:**  Seven out of the eight.

21          **MR. HERMAN:**  Well, they were waiting, I think, for

22   one affirmation.  Maybe you ought to come up and address it.

23          **THE COURT:**  Before we get through the trial settings

24   in federal court, I'm looking for trials in January, February,

25   and March.  I start another series of trials in another MDL in

1   April and May.  So January, February, and March would be the
2   times, but I will get with you on specific dates.
3                    The filings in the MDL.
4            MR. BAUMANN:  Yes.  May it please the Court.  Gary
5   Baumann for IBSA.  On behalf of the supplier group, we do have
6   agreements from six of the suppliers.  One has a specific
7   reservation.  I will get the names of those parties to Russ
8   later today.
9            THE COURT:  Give them to the Court, the ones that
10  will not agree, and I'll look into it.
11           MR. BAUMANN:  Yes, Your Honor.
12           MR. HERMAN:  With respect to builders, the chair of
13  that group is Hilarie Bass, who can address the question of
14  service and direct filing.
15           MS. BASS:  Thank you, Your Honor.  Hilarie Bass on
16  behalf of the builders.  Consistent with the representation I
17  made to the Court at the last hearing, the builders are willing
18  to accept service of any cases, but we are not willing to agree
19  to direct filing.
20           MR. HERMAN:  In fairness to those agreements, they
21  have a full reservation of their rights.
22           THE COURT:  Notices of appearance and default
23  judgments, anything on that?  We have a motion.
24           MR. HERMAN:  We have a representative of Mitchell
25  Homes, I believe, here, Your Honor.  We indicate that Taishan

1   has now been served in an MDL complaint.

2           **THE COURT:**  We had a matter with Elizabeth Cabraser

3   on that default judgment.

4           **MS. LAW:**  Good morning, Your Honor.  May it please

5   the Court.  I'm Kristin Law.  I'm one of Elizabeth Cabraser's

6   law partners.  She was unexpectedly called to appear at another

7   hearing today and sends her apologies for not being here

8   herself.

9                   As we mentioned to the Court at the last

10  hearing, we did perfect service of the Mitchell Brothers

11  complaint in this matter on Taishan on May 18.  We haven't

12  heard anything from them, and I understand that a preliminary

13  default was entered yesterday.  It's our intention to file a

14  confirmatory motion.  We can do that before the next status

15  hearing if that's convenient with the Court.

16          **THE COURT:**  Yes, that's fine.  We issued the

17  preliminary default.  The default will be confirmed.  Any

18  amounts should be able to be proved at that time if you have

19  any proof on it.  Depending upon what the proof is, I will

20  issue a final default, and then you can execute on it.

21          **MS. LAW:**  Very good, Your Honor.  Just to be clear,

22  we should then submit our showing of damages proof with the

23  confirmatory motion?

24          **THE COURT:**  Yes.

25          **MS. LAW:**  Yes, Your Honor.  Thank you.

```
 1            MR. LEVIN:  Your Honor, Arnold Levin.  Before there's
 2   an assessment of damages, the Mitchell complaint is a class
 3   action complaint on behalf of all builders, and we assume
 4   they're going to assess damages in accordance with their
 5   averments in their complaint.  We will be intervening in that
 6   case because we think that money belongs to us.
 7            THE COURT:  Okay.  We'll see.
 8                The next matter is tolling agreements/suspension
 9   of prescription.  Anything on that?
10            MR. HERMAN:  There are none, Your Honor.
11            THE COURT:  Insurance issues.
12            MR. HERMAN:  I would like to, if I might, defer that
13   until I talk very briefly about master complaint.
14            THE COURT:  Okay.
15            MR. MILLER:  Insurance issues, Your Honor, I was made
16   aware via e-mail yesterday that State Farm removed a case, I
17   think, from state court in Louisiana and is now a party to the
18   MDL.  They seek to opt out of the MDL proceeding.  If the
19   lawyer for State Farm is here, perhaps he or she will want to
20   address the issue.
21            THE COURT:  What does "opt out of the MDL" mean?
22            MR. MILLER:  I defer to my colleague from State Farm,
23   Your Honor.
24            MS. BAUMGARTNER:  Good morning, Your Honor.  Adrianne
25   Baumgartner.  The case, in particular, involves only the
```

1    homeowner's insurer.  They are not suing anyone else.  We will

2    have insurance issues and policy coverage issues, which we are

3    planning to file early motions in order to deal with that issue

4    and dismiss the case, and then we have no further connexity

5    with the MDL in that type of suit.

6              The question is whether or not the Court will

7    allow us, if we are not severed from the MDL, to file those

8    motions, particularly based upon the orders that the Court has

9    in place concerning that, and whether we can have a methodology

10   in order to deal with cases such as that.

11             **THE COURT:**  Well, I put a stay on motions.  The first

12   thing you need to do is file a motion for permission to lift

13   the stay for that reason, and then I will give you an

14   opportunity to file.  Once you're in the MDL --

15             **MS. BAUMGARTNER:**  Well, we were brought in.  What we

16   were trying to avoid is we had similar type cases in the levee

17   breach case and we languished for two years without being able

18   to do anything.  I will file the appropriate motion.  Thank

19   you, Your Honor.

20             **THE COURT:**  I don't plan to be around two years with

21   this.

22             **MR. HERMAN:**  Well, we welcome State Farm, Your Honor.

23   We know that, like their competitors, they're safe hands.

24             Your Honor, we are going to be providing

25   Your Honor and all counsel copies.  We have an insurance chart

1 │ of a plethora of insurers, possibly in excess of 100.  We are

2 │ meeting tonight with 90 plaintiff firms.  We expect the

3 │ Louisiana lawyers to file direct actions.  What we would be

4 │ concerned with is a declaratory judgment on insurance issues

5 │ that then is going to be transported without the opportunity

6 │ for the PSC to confront that in a direct and in-depth way.

7 │             We will work with Ms. Baumgartner to ensure that

8 │ her client's interests are facilitated, but we would expect

9 │ there to be a large number of direct actions to be filed.

10 │           **THE COURT:**  Service of pleadings electronically.

11 │           **MR. HERMAN:**  It's up and running, Your Honor.

12 │           **THE COURT:**  Let me say something about the electronic

13 │ situation.  We are having a misunderstanding with some

14 │ individuals.  They are filing with LexisNexis instead of the

15 │ Court.  You can't file something with LexisNexis and think that

16 │ it's been filed in federal court.  It's not filed in federal

17 │ court.  You have to file it in federal court.  Now, LexisNexis

18 │ then will alert everybody as to things that are filed in

19 │ federal court, but be aware that filing with LexisNexis is not

20 │ the same as filing a case in federal court.  Any comments on

21 │ that from anyone?

22 │           **MR. HERMAN:**  No, Your Honor.  At this time, if

23 │ Your Honor permits, I want to alert folks here and those that

24 │ have joined Your Honor for this hearing that Your Honor has

25 │ established a Web site at www.laed.uscourts.gov which has a tab

1   that links directly to "Drywall MDL" and has transcripts of
2   hearings as well as PTO's posted.
3           THE COURT:  I have everything posted on that Web site
4   and will continue to post everything on the Web site.  It's not
5   a Web site that's only accessible by individuals who have filed
6   suit.  It's accessible to everyone.  So go to the Court's Web
7   site and simply click on the "Drywall MDL" button on the
8   left-hand side of the page, and it will bring up everything
9   that's done in this case.  All of these transcripts will be
10  posted in due course.  All of the pleadings that have been
11  filed, I post those by way of -- by "pleadings" I mean pretrial
12  orders and the like that the Court has issued.  Any opinions
13  that the Court has issued will be there as well.
14          MR. MILLER:  Judge, on the issue of LexisNexis, I was
15  reminded by one of my co-counsel that in a few instances filers
16  who access the LexisNexis service to do a notification have not
17  uploaded their pleading to LexisNexis, so just as a reminder to
18  make sure in uploading a pleading -- because aside from us,
19  Russ and I, everybody else who is a party to the litigation
20  only gets notice by LexisNexis.
21          THE COURT:  If anyone has any problems or questions,
22  you really should call liaison counsel.  If they have any
23  problems, get the Court involved.
24              Master complaint is the next item on the agenda.
25          MR. HERMAN:  Yes, Your Honor.  I don't want to

1    confuse myself or anyone else about utilizing the term *master*
2    *complaint* as a procedural matter, under the manual, with what
3    I'm about to say about two types of other master complaints.
4                    We contemplate filing a complaint that will
5    bring all the builders and manufacturers in a complaint which
6    can be served one time by participating law firms with all of
7    their clients to avoid the $15,000 Hague-type service that
8    comes with each complaint.  In addition to that, we intend to
9    file another type of general complaint which deals with Chinese
10   manufacturers as a defendant group who are unknown at this
11   point where there is Chinese drywall.  We expect that before
12   the next status conference those complaints will be filed, and
13   I'm alerting the Court and the defendants that we will be
14   filing certainly those types of complaints within the next two
15   to three weeks.
16                    As far as a procedural master complaint,
17   although we are working on that, we are delaying the issue of a
18   master complaint until we have what we believe are what we need
19   in this court.  We have identified 100 builders, for example,
20   who are not presently before this Court.  We have identified
21   26, so far, Chinese manufacturers of drywall.  The only two
22   that are before this Court in some way right now are the North
23   entities.
24                    We also intend to provide on Monday to the Court
25   and to all defense counsel, in addition to an insurer schedule,

1    shipping documents we have been able to obtain that show a

2    number of manufacturers, who they shipped to, who were the

3    exporters, who were the importers, and the points of entry of

4    those vessels transporting Chinese drywall.  We think that will

5    assist all parties before the Court in an appropriate way with

6    regard to the gravitas in the MDL.

7            **MR. MILLER:**  Obviously, Your Honor, we haven't seen

8    the master complaint, so we will address those when we see it,

9    but we would hope that if a master complaint or complaints are

10   drafted that they would also clean up the pleadings, so to

11   speak.  We have issues with some of the cases in the MDL where

12   you have Florida suppliers who only dealt in a certain section

13   of Florida sued in Louisiana cases and a Louisiana supplier who

14   only sold in Louisiana in cases down in the Southern District

15   of Florida.  So we would hope those issues are cleaned up too.

16           **MR. LEVIN:**  I'm the vacuum cleaner, Your Honor.  We

17   will file motions to amend existing complaints where parties

18   were perhaps improperly sued and also to allege additional

19   averments as to jurisdiction in some of them.

20           **THE COURT:**  That's not unusual in a case of this

21   sort.  We do need to clean up the pleadings.  That's one of the

22   reasons for a master complaint, too, so that we can get

23   everything before us in one complaint so that you don't have to

24   file pleadings in every case.  It's only a procedural vehicle,

25   not a substantive one.

1            Anything else that we need to deal with at this
2    status conference?
3            **MR. HERMAN:**  No, but I want to thank the competitor
4    of Oreck for volunteering to clean up these complaints.  We do
5    have a next hearing date, Your Honor.
6            **THE COURT:**  Anything further from defendant?
7            **MR. MILLER:**  Yes, Your Honor.  There is one request
8    made by counsel for -- I think he represents drywall
9    installers.  I'm not quite sure he is in the MDL, but he is in
10   some state court cases and has been put on notice.  I think he
11   would like to address the Court with respect to whether he is
12   going to be in the case or not.
13           **THE COURT:**  Okay.
14           **MR. FITZSIMMONS:**  May it please the Court.  My name
15   is Bob Fitzsimmons.  I'm a lawyer from Miami, Florida.  I
16   represent several drywall contractors.  Given the influence
17   that this Court's process will have over the state court
18   actions and also given that the drywall contractor appears to
19   be an unrepresented class in this action, we have now been
20   identified on the profile forms.  While we also are in
21   litigation with several builders in the state court action, I
22   would just ask the Court direction.
23           Are we anticipated to be parties in this
24   litigation?  For example, now that we are on the profile form,
25   can there be a deadline for the plaintiffs to sue the drywall

 1   contractors directly if they are going to?  Similarly, down the

 2   line third-party practice level builders and contractors will

 3   be going after the subcontractors.  We don't have a lot of

 4   influence on the process, not being parties.

 5        THE COURT:  Sure.  Can the plaintiff answer that one?

 6   Why don't you stay with us a minute.

 7        MR. HERMAN:  Thank you very much for the suggestion.

 8   We'll cast a wide net.

 9        THE COURT:  It doesn't mean you're going to stay in

10   the litigation, but you really are probably better off formally

11   in the litigation than on the fringes of it.  It will permit

12   you then to have access to various things, participate in

13   discovery, and file motions as you see fit.  On the outside

14   looking in, you're not as protected as you are on the inside.

15        MR. FITZSIMMONS:  That's why I stand before you,

16   Your Honor.  So I would request the Court consider giving them

17   a deadline to bring us in given the expedited schedule.

18        THE COURT:  Why don't you confer with counsel before

19   you leave today and work up something that you feel is

20   appropriate from the standpoint of time line and I'll consider

21   it.

22        MR. FITZSIMMONS:  Thank you, Your Honor.

23        MR. HERMAN:  I don't mean to make light.  I know you

24   have serious clients to represent.  The Court's Web site also

25   has trademarks available which you can identify from what you

1    installed.  We'll provide you with whatever information we can.

2                 In terms of deadline, we have committees that

3    are looking through the profile forms for additional parties

4    that should be brought in.  Hopefully, by October 15 you'll be

5    formally brought in.  I would ask as to whether or not, in

6    order to facilitate this, your clients are willing to accept

7    service in the MDL, reserving your rights to substantive

8    defenses?

9            THE COURT:  I won't put you on the spot, but what you

10   need to do is meet and confer with counsel, give them your

11   feeling as to deadlines.  If you can agree, that's fine.  If

12   you can't, then bring it to me and I will set deadlines.  I

13   would like you to meet with counsel first, discuss your

14   problems, flesh them out, and hear from him.  If you can't get

15   some agreement, bring it to me and I will deal with it.

16           MR. FITZSIMMONS:  Thank you, sir.

17           THE COURT:  Anything further from anyone?

18                 The next meeting will be on October 15.  I'll

19   meet with liaison counsel at 8:30, and I will meet in court

20   with everyone at 9:00.

21                 Anything from anyone in the audience that feels

22   obliged to speak?

23                 Again, finally, I want to again thank my

24   colleagues, the state court judges, who are doing yeoman work

25   in this matter.  I look forward to working with them.  I

1    appreciate their cooperation.

2              Court will stand in recess for 10 minutes, and

3    then I will come back and deal with motions.

4              **THE DEPUTY CLERK:**  Everyone rise.

5                              * * *

6                            <u>CERTIFICATE</u>

7              I, Toni Doyle Tusa, CCR, FCRR, Official Court

8    Reporter for the United States District Court, Eastern District

9    of Louisiana, do hereby certify that the foregoing is a true

10   and correct transcript, to the best of my ability and

11   understanding, from the record of the proceedings in the

12   above-entitled and numbered matter.

13

14

15                              <u>s/ Toni Doyle Tusa</u>
                               Toni Doyle Tusa, CCR, FCRR
16                             Official Court Reporter

17

18

19

20

21

22

23

24

25