UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * * * CIVIL ACTION * * MDL NO. 2047 * * SECTION L (5) |
| THIS DOCUMENT RELATES TO: ALL *AMORIN* VIRGINIA CASES | * * * |

## SUGGESTION OF REMAND, OPINION AND ORDER

I. **BACKGROUND**

From 2004 through 2006, a housing boom in parts of the United States and rebuilding efforts necessitated by Hurricanes Rita and Katrina in the Gulf South led to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used to construct and refurbish homes in coastal areas of the country, notably the Gulf Coast and East Coast. Sometime after the installation of the Chinese drywall, homeowners began to complain of emissions of foul-smelling gas, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829–30 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014). Many of these homeowners also began to complain of various physical afflictions believed to be caused by the Chinese drywall.

These homeowners then began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. Because of the commonality of facts in the various cases, this litigation was designated as a multidistrict litigation. Pursuant to a

1

Transfer Order from the United States Judicial Panel on Multidistrict Litigation on June 15, 2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 09-2047 before this Court.

The Chinese drywall at issue was largely manufactured by two groups of defendants: (1) the Knauf Entities and (2) the Taishan Entities. The litigation has focused upon these two entities and their downstream associates, and has proceeded on strikingly different tracks for the claims against each group.

## II. PROCEDURAL HISTORY AND RULINGS THAT MIGHT AFFECT FUTURE PROCEEDINGS

### A. *The Knauf Defendants*

The Knauf Entities are German-based, international manufacturers of building products, including drywall, whose Chinese subsidiary, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), advertised and sold its Chinese drywall in the United States. The Knauf Entities are named defendants in numerous cases consolidated with the MDL litigation and litigation in state courts.

The Knauf Entities first entered their appearance in the MDL litigation on July 2, 2009. Thereafter, the Court presided over a bellwether trial in *Hernandez v. Knauf Gips KG*, Case No. 09-6050, involving a homeowner's claims against KPT for defective drywall. The Court found in favor of the plaintiff family in *Hernandez*, issued a detailed Findings of Fact and Conclusions of Law, and entered a Judgment in the amount of $164,049.64, including remediation damages in the amount of $136,940.46—which represented a remediation cost of $81.13 per square foot based on the footprint square footage of the house.

Subsequently, the Knauf Entities agreed to institute a pilot remediation program utilizing the remediation protocol formulated by the Court from the evidence in *Hernandez*. The Knauf pilot remediation program is now completed and has remediated more than 2,200 homes

containing KPT Chinese drywall using the same general protocol. At the Court's urging, the parties began working together to monetize this program and make it available to a broader class of plaintiffs.

On December 20, 2011, the Knauf Entities and the PSC entered into a global, class Settlement Agreement ("Knauf Settlement Agreement"), which was designed to resolve all Knauf-related, Chinese drywall claims. In addition to the Knauf Settlement Agreement and after a jury trial in a bellwether case, numerous defendants in the chain-of-commerce with the Knauf Entities have entered into class settlement agreements, the effect of which settles almost all of the Knauf Entities' chain-of-commerce litigation. The total amount of the Knauf Settlement is approximately $1.1 billion.

The Lead Contractor in the Knauf Settlement, Moss & Associates, managed the remediation for program homes and condominium units. Remediation is complete on approximately 2,209 homes and 633 condominiums. To date, Moss has mailed out 2,847 Work Authorization packets to homeowners in the various states. Moss has received 2,847 executed Work Authorization packets, and no Work Authorization packets are outstanding.

Although the Court occasionally had to deal with settlement administration and enforcement issues, with the assistance of Special Master Dan Balhoff, the Knauf portion of this litigation is now resolved.

### B. *The Chinese Defendants*

The litigation against the Chinese entities has taken a different course. The Chinese Defendants in the litigation include the principal Chinese-based Defendant, Taishan, namely, Taishan Gypsum Co. Ltd. ("TG") and its wholly-owned subsidiary, Taian Taishan Plasterboard

Co., Ltd. ("TTP") (collectively "Taishan" or "Taishan Entities"). Other Chinese-based Defendants include the CNBM and BNBM Entities.

The Court's initial inquiry regarding Taishan involved four cases in this MDL: (1) *Germano v. Taishan Gypsum Co.* (Case No. 09-6687); (2) *The Mitchell Co. v. Knauf Gips KG* (Case No. 09-4115); (3) *Gross v. Knauf Gips KG* (Case No. 09-6690); and (4) *Wiltz v. Beijing New Building Materials Public Ltd.* (Case No. 10-361).

The first issues involving Taishan arose when Taishan failed to timely answer or otherwise enter an appearance in *Mitchell* and *Germano*, despite the fact that it had been properly served in each case. Thus, after an extended period of time, the Court entered preliminary defaults against Taishan in both of these cases.

Thereafter, the Court moved forward with an evidentiary hearing in furtherance of the preliminary default in *Germano* on the Plaintiffs' claimed damages. At this hearing, the Plaintiffs presented evidence specific to seven individual properties, which served as bellwether cases. Following this hearing on February 19 and 20, 2010, the Court issued detailed Findings of Fact and Conclusions of Law. On May 11, 2010, the Court issued a Default Judgment against Taishan in *Germano* and in favor of the Plaintiffs. On June 10, 2010, the last day to timely appeal, Taishan filed a Notice of Appeal of the Default Judgment in *Germano* and entered its appearance in *Germano* and *Mitchell*. Taishan challenged this Court's jurisdiction over the Defendants. As a result, because this was the first instance where Defendants raised jurisdictional issues, the Fifth Circuit remanded the case to this Court to determine whether this Court indeed has jurisdiction over Taishan.

After Taishan entered its appearance in the MDL, it quickly sought to have the Default Judgment in *Germano* and the Preliminary Default in *Mitchell* vacated for lack of personal

jurisdiction. In the fall of 2010, the Court directed the parties to commence the personal jurisdiction discovery necessary to resolve Taishan's motions to vacate. Sometime after the initial discovery, the parties agreed to expand the discovery beyond the *Germano* and *Mitchell* cases to other cases in which Taishan had been served, including *Gross* and *Wiltz*.

Formal personal jurisdiction discovery of Taishan began in October 2010. Discovery has included the production of both written and electronic documents, as well as depositions of Taishan's corporate representatives, with each type of discovery proceeding in a parallel fashion. This discovery has often been contentious, requiring close supervision by the Court. The Court has presided over regularly-scheduled status conferences to keep the parties on track, and conducted hearings and issued rulings to resolve numerous discovery-related disputes.

The first Taishan depositions were held in Hong Kong on April 4–8, 2011. Thirteen attorneys traveled to Hong Kong and deposed several Taishan witnesses. However, upon return to the United States, several motions were filed seeking to schedule a second round of Taishan depositions as a result of problems during the depositions and seeking discovery sanctions against Taishan. The Court, after reviewing the transcripts from the depositions, concluded that the depositions were ineffective because of disagreement among interpreters, counsel and witnesses, translation difficulties, speaking objections, colloquy among counsel and interpreters, and in general, ensuing chaos.

The Court scheduled the second round of Taishan depositions for the week of January 9, 2012 in Hong Kong. Due to the problems experienced at the first deposition, the Court appointed a Federal Rule of Evidence 706 expert to operate as the sole interpreter at the depositions. Counsel for the interested parties and the Court traveled to Hong Kong for these depositions. Because the Court was present at the depositions, objections were ruled upon immediately and the majority of

problems which plagued the first round of depositions were absent. Also, the Court was able to observe the comments, intonation, and body language of the deponents. Upon return from Hong Kong, the parties informed the Court that minimal further discovery was necessary before briefing could be submitted on Taishan's personal jurisdiction challenges.

In April 2012, Taishan filed various motions, including its motions to dismiss for lack of personal jurisdiction. On June 29, 2012, over three years since the creation of this MDL, and after a year-and-a-half of personal jurisdiction discovery on Taishan, the Court presided over a hearing on Taishan's motions. The Court coordinated its hearing with the Honorable Joseph Farina of the Florida state court, who had a similar motion involving Taishan's challenge to personal jurisdiction.

On September 4, 2012, this Court issued a 142-page Order regarding Taishan's motions in *Germano*, *Mitchell*, *Gross*, and *Wiltz*, in which the Court denied the motions to dismiss, and held that it maintained personal jurisdiction over Taishan. *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819 (E.D. La. 2012). The Court also ruled that Taishan was operating as the alter ego of TG and TPP. The Court certified an interlocutory appeal, and the Fifth Circuit granted permission to appeal.

In January and May of 2014, two different panels of the Fifth Circuit affirmed this Court's ruling and held that this Court maintained personal jurisdiction over Taishan, TG and TPP. *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 753 F.3d 521 (5th Cir. 2014); *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576 (5th Cir. 2014). The time for writ of certiorari passed, and the issue of personal jurisdiction over Taishan became firmly and finally settled. Nevertheless, Taishan refused to voluntarily participate in this suit.

On June 20, 2014, the Court ordered Taishan to appear in open court on July 17, 2014 to be examined as a judgment debtor. Taishan failed to appear for the July 17, 2014 Judgment Debtor Examination, and the Court held Taishan in contempt and ordered that Taishan pay $15,000.00 in attorney's fees to Plaintiffs' counsel; that Taishan pay $40,000.00 as a penalty for contempt; that Taishan and any of its affiliates or subsidiaries be enjoined from conducting any business in the United States until or unless it participates in this judicial process; and that if Taishan violates the injunction, it must pay a further penalty of 25-percent of the profits earned by the Company or its affiliates who violate the Order for the year of the violation.

On July 23, 2014, Plaintiffs filed their Omnibus Motion for Class Certification pursuant to Rule 23(b)(3). Taishan did not appear and, on September 26, 2014, this Court certified a class of all owners of real properties in the United States, who are named Plaintiffs on the complaints in *Amorin*, *Germano*, *Gross*, and/or *Wiltz* (*i.e.*, not an absent class member), asserting claims for remediated damages arising from, or otherwise related to Chinese Drywall manufactured, sold, distributed, supplied, marketed, inspected, imported or delivered by the Taishan Defendants.

Taishan finally entered an appearance with the Court in February 2015, and, to satisfy the contempt, Taishan paid both the sum of $15,000.00 in attorney's fees to Plaintiffs' counsel and the contempt penalty of $40,000.00 in March 2015. On March 17, 2015, the Court ordered Taishan and the BNBM and CNBM Entities to participate in expedited discovery related to "the relationship between Taishan and BNBM/CNBM, including whether affiliate and/or alter ego status exists."

In March 2016, this Court granted CNBM Group's motion to dismiss, finding it was an "agent or instrumentality of a foreign state" within the meaning of the Foreign Sovereign Immunities Act ("FSIA"), and therefore outside the jurisdiction of this Court under 28

U.S.C. § 1603(b). The Court determined that the tortious activity exception did not apply because the alleged tortious conduct did not occur within the United States under 28 U.S.C. § 1605(a)(5). Further, the Court found that the commercial activity exception did not apply in this case, as CNBM Group did not directly manufacture, inspect, sell, or market drywall in the United States. Because Plaintiffs failed to present evidence sufficient to overcome the presumption that CNBM Group was entitled to independent status for purposes of the FSIA, the Court granted the motion and dismissed CNBM Group from the present litigation.

On April 21, 2017, the Court issued a 100-page opinion related to jurisdictional challenges being raised in four separate motions filed by Defendants. The Court found that Taishan was an agent of BNBM under Florida and Virginia law, such that Taishan's contacts in Florida and Virginia are imputed to BNBM. This Court further found that CNBM, BNBM Group, and BNBM were part of a single business enterprise with Taishan under Louisiana law, such that Taishan's contacts in Louisiana may be imputed to Defendants, and the Court has jurisdiction over Defendants in relation to Plaintiffs' claims based on Louisiana law.

Also on April 21, 2017, the Court issued its Findings of Fact and Conclusions of Law related to the June 9, 2015 damages hearing, and adopted Plaintiffs' damage calculations methodology related to remediation of properties.

On May 22, 2017, Defendants filed a motion pursuant to 28 U.S.C. § 1292(b) to certify interlocutory appeal from this Court's jurisdiction order. Because the Court found that its Order and Reasons involves a controlling question of law as to which there is substantial ground for difference of opinion, and because the Court further found that an interlocutory appeal from that Order and Reasons may materially advance the ultimate termination of this MDL, on August 4,

2017, the Court certified an interlocutory appeal to the Fifth Circuit pursuant to 28 U.S.C. § 1292(b).

On August 1, 2017, Defendants filed a motion to dismiss for lack of personal jurisdiction following the recent U.S. Supreme Court case of *Bristol–Myers Squibb v. Superior Court of California*. Based on *Bristol-Myers*, Defendants contest this Court's findings of personal jurisdiction, class certification, and agency relationship. On August 14, 2017, Defendants filed a petition for permission to appeal pursuant to 28 U.S.C. § 1292(b) in the Fifth Circuit, in which they argue that the *BMS* opinion impacts questions raised on appeal. On August 24, 2017, this Court vacated its 28 U.S.C. § 1292(b) certification order to avoid piecemeal litigations. The Court noted its duty to address the effect of *Bristol–Myers* on the jurisdictional issue before certifying the matter to the Fifth Circuit. Subsequently, on November 30, 2017, the Court denied Defendants' motion to dismiss, holding that *Bristol–Myers* does not change this Court's jurisdictional findings and class certification.

On January 2, 2018, the Court denied Defendants CNBM Company, BNBM Group, and BNBM PLC's motion to vacate the default judgments against them.

On March 5, 2018, the Court reinstated its order to certify interlocutory appeal of its April 2017 jurisdiction opinion arising from the Chinese Defendants' agency relationship. The Court, nevertheless, denied Defendants' request to certify the interlocutory appeal of its opinion involving *Bristol–Myers*'s impact (or lack thereof) on the Court's personal jurisdiction analysis. First, the Supreme Court's opinion in *Bristol–Myers* does not address class actions, and therefore is inapplicable to this MDL. Second, two separate panels on the Fifth Circuit have already reaffirmed the Court's original personal jurisdiction analysis in 2014. Any further litigation on the issue of

personal jurisdiction for the Chinese Defendants would cause needless delay and waste judicial resources.

## III. SUGGESTION OF REMAND

After managing this MDL for nine years, the Court concludes that the purposes behind consolidating these related actions in this Court have now been served. The Court has addressed numerous discovery disputes, dispositive motions, and other pretrial issues involving facts and legal questions common to the various cases in this MDL proceeding. No further pretrial motions raising common questions are pending in these cases, and remand to the transferor courts appears to be in the interest of judicial efficiency and fairness to the parties.

Given the extensive motions practice and bellwether trials that have occurred in this MDL, the Court finds it appropriate to transfer the cases back to the transferor courts, beginning with cases from Florida, and now including cases from Virginia. This Court recognizes that parties may still need to conduct some discovery before trial. Nevertheless, this discovery is case-specific; thus, it can, and perhaps should, be supervised by the transferor court. This Court has worked diligently for the past nine years, and transferor courts and parties are now equipped with abundant resources—evidence produced in discovery, a trial package, trial binders, and judicial opinions on numerous issues—to steer these cases to a fair and just conclusion. In particular, this Court has established and approved a class-wide, evidence-based formula and methodology to calculate property damages involving defective drywall. The transferor courts are strongly encouraged to utilize this formula to determine the appropriate award in each individual case. At this point in the litigation, centralizing these cases has minimal benefit to parties; local courts are well-suited to evaluate the property damages and other losses incurred by plaintiffs.

## IV. COMMON BENEFIT WORK

Attorneys in this MDL—in particular, the PSC—have expended significant resources and made substantial common-benefit contributions to the *Chinese-Manufactured Drywall* litigation. All counsel on the PSC or authorized by the PSC to do common benefit work are highly skilled and very capable professionals. Therefore, these attorneys should be entitled to the fair and equitable assessment of any potential recovery for the services performed and expenses incurred by attorneys acting for MDL administration and common benefit of all plaintiffs in this complex litigation. *See In re FedEx Ground Package Sys., Inc. Employment Practices Litig.*, No. 3:05-MD-527 RM, 2010 WL 785279, at *5–6 (N.D. Ind. Mar. 2, 2010).

"The effect of an order remanding a case to the transferor court for trial is to divest the transferee court of jurisdiction in the case and to vest the transferor court with jurisdiction." *Id.* (citing DAVID F. HERR, Multidistrict Litigation Manual, § 10:5 (2005)). "The Panel's power to sever and remand a portion of an action is limited to entire claims. The Panel cannot remand only part of a claim or only certain factual issues." *Id.* (citation omitted).

The award of attorney's fees, nevertheless, is a "collateral matter over which a court normally retains jurisdiction even after being divested of jurisdiction on the merits." *Id.*; *In re Zyprexa Prods. Liab. Litig.*, 467 F. Supp. 2d 256, 274 (E.D.N.Y. 2006) (citations omitted); *see also In re Zyprexa Prods. Liab. Litig.*, 594 F.3d 113, 2010 WL 367556, * 10 (2d Cir. 2010) (stating that an order imposing an assessment to create a fund that could be used to compensate attorneys who demonstrate that their efforts conferred a benefit on the plaintiffs generally is "even less related to the ultimate merits than orders awarding attorney's fees, which are collateral matters over which a court retains jurisdiction even if it ultimately is determined to lack subject matter jurisdiction"). Accordingly, because the fees awarded to the MDL attorneys

for the common benefit of all plaintiffs is a collateral issue separate from the merits of this case, the Court suggests that it retain jurisdiction to consider the fair and equitable assessment of any potential recovery for the services performed and expenses incurred by attorneys acting for administration and common benefit of all MDL plaintiffs.

## V. CONCLUSION

Based on the foregoing reasons and pursuant to Rule 10.1(b)(i) of the Rules of the Judicial Panel on Multidistrict Litigation, the Court **SUGGESTS** that the cases listed in Appendix A be remanded to the transferor courts in Virginia for trial or further proceedings. The cases on the attached list involve property located in Virginia and were named in a class action complaint filed in the Eastern District of Virginia, *Amorin, et al. v. Taishan Gypsum Co., Ltd. et al.*, 2:11-cv-00377 (E.D. Va.), which was transferred to MDL 2047. *See Amorin, et al. v. Taishan Gypsum Co., Ltd., et al.*, 11-cv-1673 (E.D. La.). Here, Appendix B is that *Amorin* class action complaint, which was originally filed in the Eastern District of Virginia. Appendix C is a copy of the Panel's conditional transfer order, which transferred said Virginia *Amorin* case to this Court on July 19, 2011. The Court further **SUGGESTS** that this Court retain jurisdiction to consider the fair and equitable assessment of any potential recovery for the services performed and expenses incurred by attorneys acting for administration and common benefit of all MDL plaintiffs.

**IT IS SO ORDERED.**

New Orleans, Louisiana, this 20th day of August, 2018.

                                                 **ELDON E. FALLON**
                                                 United States District Judge