UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL | : | MDL NO. 2047 |
| PRODUCTS LIABILITY LITIGATION | : | SECTION L |
| | : | |
| | : | JUDGE FALLON |
| | : | MAGISTRATE JUDGE |
| .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. : | | WILKINSON |

**THIS DOCUMENT RELATES TO:** *Payton et al v. Knauf Gips KG et al*, No. 09-7628; *Amato et al v. Liberty Mutual Insurance Company et al*, No. 10-932

## ORDER & REASONS

Before the Court is Mr. William Wayne's Motion to Grant Lump Sum Payments to Wayne Family. R. Doc. 21060. Defendant Knauf responds in opposition. R. Doc. 21085. Having heard oral argument and having considered the parties' briefs and the Opinions of the Special Master, the Court issues this Order & Reasons.

### I. BACKGROUND

The Wayne Family owned a property located at 576 Huseman Lane in Covington, Louisiana. Regions Bank held the mortgage on this property. The Waynes filed claims in the Chinese Drywall MDL in 2009 and 2010. Regions Bank foreclosed and the property was sold at auction in September 2011. Subsequently, the Waynes joined in the Knauf Settlement Agreement resolving their claims in the MDL. The Waynes have previously received payment from the Other Loss Fund under the Knauf Settlement Agreement.

In 2017, Mr. William Wayne filed a Motion for a Lump Sum Payment from the Knauf Settlement. R. Doc. 21060. In January 2018, Special Master Daniel Balhoff submitted an Opinion and Decree denying Mr. Wayne's motion because Mr. Wayne had not proven that he was a "KTP Property Owner" under the terms of the Knauf Settlement Agreement.

On February 14, 2018, Mr. Wayne filed an objection to the Special Master's Decree. R. Doc. 21185. Knauf responded in opposition. R. Doc. 21243. On July 16, 2018, Special Master Daniel Balhoff submitted a Supplemental Opinion regarding his denial of Mr. Wayne's original motion. R. Doc. 21545.

## II. KNAUF SETTLEMENT AGREEMENT

The Knauf Settlement Agreement ("the Agreement") provides that "KPT Property Owner Subclass Members" have several options to receive benefits from the Remediation Fund. Agreement § 4.3. The Agreement defines "KPT Property Owners" as "Owners of KPT Property." Agreement § 1.29. The Agreement defines "KPT Property" as "any Affected Property in which the KPT Drywall Percentage exceeds 90%." Agreement § 1.28. The Agreement defines "Mixed Property Owner" as an "Owner of a Mixed Property." Agreement § 1.37. The Agreement defines "Mixed Property" as "Affected Properties in which the KPT Drywall Percentage is less than or equal to 90%." Agreement § 1.36. The Agreement further provides the procedures to be followed to qualify for Remediation Fund benefits, including defining an owner as a KPT Property Owner or Mixed Property Owner. Agreement § 4.4. All benefits from the Remediation Fund require a showing that the claimant is either a KPT Property Owner or a Mixed Property Owner.

## III. SPECIAL MASTER OPINION AND DECREE

In response to Mr. Wayne's Motion for a Lump Sum Payment, Special Master Balhoff submitted an Opinion and Decree. Mr. Balhoff stated that Mr. Wayne was not entitled to a Lump Sum Payment for two reasons. First, Mr. Wayne has not proven that he is a KPT Property Owner as required by the Agreement. Second, the Foreclosure provision of the Agreement cited by Mr. Wayne does not create additional benefits for petitioners who have not proven that they were

2

KPT Property Owners. Rather, the Foreclosure provision, § 4.3.5.1, merely allocates the already described benefits between the mortgagee and the prior property owner.

## IV. WAYNE'S OBJECTION

Mr. Wayne filed an objection to the Special Master's Decree. R. Doc. 21185. Mr. Wayne argues that he is entitled to a Lump Sum Payment from the Remediation Fund under the Foreclosure provision. R. Doc. 21185 at 4. Mr. Wayne argues that the Foreclosure provision, § 4.3.5.1, has no relationship to the other provisions explaining the Remediation Fund benefits, § 4.3. R. Doc. 21185 at 2. Accordingly, Mr. Wayne believes that the requirements stated for the entire fund do not apply to the Foreclosure provision because they are not explicitly listed under that particular provision. Mr. Wayne argues that he should receive the full Lump Sum Payment regardless of whether he can prove that he had any certain percentage of KPT Drywall.

## V. SPECIAL MASTER SUPPLEMENTAL OPINION

Special Master Balhoff submitted a supplemental opinion in response to Mr. Wayne's objection. R. Doc. 21545. In this supplement, the Special Master confirms his previous opinion and adds more information for clarification. He argues that Mr. Wayne's interpretation of the Foreclosure provision as separate from the rest of the remediation provisions is in error and further elaborates on the requirement that the mortgagee provide a release before the prior owner can receive any foreclosure benefits. R. Doc. 21545 at 8. Mr. Balhoff explains that the Agreement is designed to benefit claimants whose property had KPT Drywall and that the amount of those benefits depends on the percentage of KPT Drywall demonstrated by the claimant. R. Doc. 21545 at 6. Accordingly, because Mr. Wayne no longer has access to the home in question and cannot demonstrate the percentage of KPT Drywall in the home, he is not entitled to any Lump Sum payment. R. Doc. 21545 at 9.

## VI. LAW & ANALYSIS

The Agreement is a formal contract outlining the details of the settlement between the parties. One of the primary rules of contract interpretation is the "four corners rule." 11 Williston on Contracts § 32:1 (4th ed.). Courts read contracts as a whole and every part is read with reference to the whole contract, i.e. within the "four corners" of the document. Restatement (Second) of Contracts § 202 (Am. Law Inst. 1981); 11 Williston on Contracts § 32:5 (4th ed.). Courts prefer interpretations that give effect and reasonable meaning to all provisions of the contract rather than interpretations which make parts of the contract "useless or inexplicable." Restatement (Second) of Contracts § 203 (Am. Law Inst. 1981); 11 Williston on Contracts § 32:5 (4th ed.). Courts also prefer interpretations that give effect to the parties' main purpose for forming the agreement. 11 Williston on Contracts § 32:9 (4th ed.).

Accordingly, the Foreclosure provision of the Agreement, § 4.3.5, must be interpreted in the context of § 4 and indeed the entire Agreement; it may not be construed as a stand-alone provision. The Court finds that the Foreclosure provision must be read in conjunction with other provisions of the Agreement, including the definitions discussed above and § 4.4 Remediation Fund Qualifying Procedures. The purpose of the Agreement was to compensate those claimants who were damaged by the presence of KPT Drywall, as defined by the Agreement, in their homes. Section 4.4 is essential to serving this purpose because it ensures that those recovering settlement funds were in fact damaged by KPT Drywall. Accordingly, the Court finds that to recover from the Remediation Fund under § 4.3 the claimant must satisfy the requirements of § 4.4.

Additionally, the Foreclosure provision references § 4.3.1.1 as the source of the Lump Sum Payment for the prior owner. Agreement § 4.3.5.1(b) ("[T]he Owner prior to the foreclosure

shall be entitled to the Lump Sum Payment under Section 4.3.1.1 . . . ."). Under the principles of contract interpretation, the Foreclosure provision therefore incorporates the requirements of § 4.3.1.1. Section 4.3.1.1 provides the Lump Sum Payment specifically for KPT Properties as defined in the Agreement. Unfortunately, Mr. Wayne has not satisfied the § 4.4 requirements to show that his home was a KPT Property.

Moving on to an analysis of the Mixed Property Owners provision, 4.3.4, does not provide any further benefit to Mr. Wayne. After discussing the options for KPT Property Owners, the Agreement explains how these options may be modified for Mixed Property Owners. Agreement § 4.3.4. These modifications include a modification of the Lump Sum Payment provided under § 4.3.1.1. This modification is accomplished by multiplying the Lump Sum Payment by the Mixed Property Owner's KPT Drywall Percentage.[1] The method used to determine the KPT Drywall Percentage is described in § 4.4 Remediation Fund Qualifying Procedures. Applying the Foreclosure and Mixed Property provisions together would allow a former Mixed Property Owner to recover the Lump Sum Payment under the Foreclosure provision. However, the claimant would still need to follow the procedures outlined in § 4.4 to determine the applicable KPT Drywall Percentage.

Here, Mr. Wayne argues that the Court should simply assume that he is at least a Mixed Property Owner and because he is not able to determine his KPT Drywall Percentage he should be entitled to the full Lump Sum Payment as if he were a KPT Property Owner. This interpretation would defeat the earlier stated purpose of the Agreement and theoretically allow recovery from the Remediation Fund without proof of KPT Drywall. This was not the intention

---

[1] "KPT Drywall Percentage" is defined in § 1.27 of the Agreement.

of the parties nor is it an accurate reading of the terms of the Agreement. Because Mr. Wayne has not proven that he is a KPT Property Owner or a Mixed Property Owner under the terms of the Agreement and has not determined his KPT Drywall Percentage, he has not met the threshold requirements for recovery from the Remediation Fund and is not entitled to a Lump Sum Payment.

### VII. CONCLUSION

Accordingly,

**IT IS ORDERED** that Mr. Wayne's Motion to Grant Lump Sum Payments to Wayne Family, R. Doc. 21060, is hereby **DENIED**.

New Orleans, Louisiana, this 20th day of August, 2018.

*[signature]*
UNITED STATES DISTRICT JUDGE

CC: William Wayne
    1007 Chippewa
    Round Rock, TX 78665