UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |
| **THIS DOCUMENT RELATES TO:**<br><br>*Amorin, et al. v. Taishan Gypsum Co., Ltd., et al.*, Case No. 11-cv-1395<br><br>*Brooke et al. v. State-Owned Assets Supervision and Administration Commission of the State Council, et al.*, Case No. 15-cv-4127 | |

### DEFENDANT TAISHAN'S POST-HEARING BRIEF
### IN FURTHER SUPPORT OF
### MOTION FOR ADOPTION OF PROPOSED PLAN FOR
### ADJUDICATION AND RESOLUTION OF
### LOUISIANA CLAIMS IN *AMORIN* AND *BROOKE*

At the August 15, 2018 hearing on the parties' competing proposals for the adjudication and resolution of the Louisiana claims in these cases, the PSC advocated (and the Court indicated tentative support) for an administrative and litigation process that will violate the governing law of Louisiana and the Fifth Circuit as well as due process principles under the U.S. Constitution. Taishan urges the Court to adopt instead the efficient and fair plan it proposed in its Motion for Adoption of Proposed Plan. Rec. Doc. No. 21503.

Taishan has fully briefed the legal and logical justifications for its proposed plan, and limits this post-hearing brief addressing statements made on the record by the Court and the PSC that incorporate or invite legal error, particularly these statements by the Court:

> . . . [W]e first have to separate the *Amorin* docket from those cases that are simply [] just strict property damage cases. There are a large number of them that are property damage cases. There are also in there a number of property damage plus personal injury cases. We may have to separate those out.

> With regard to the property damage cases, I would intend to appoint a master to utilize the formula that has been established in a number of cases, and to verify the square footage, verify the present ownership, verify the location, address, things of that sort, and then we'll simply apply the formula and come up with a figure for the property damage.  Those cases, it seems to me, are just administratively dealt with.  I don't see the necessity for any trials in those cases, I think . . .  I'll be issuing judgments in that fashion.
> With regard to the property plus personal injury, I think that's a different grouping; and with personal injury, it seems to me that jury trials need to be had for the jury to determine personal injury.
> 
> * * *
> 
> The challenging part is with regard to the property aspect of those cases.  It seems to me that there's no need for the jury to deal with property damage because we can deal with that administratively.  So if that's the case, then do we do them both – those cases both at the same time and get the property damage aspect with the personal injury damages and then I join those together for a judgment?  I don't think it's appropriate to have two judgments in every case, so it would be one judgment, but I would use the property damage formula to figure the property damage and then the jury response for the personal injury.

(Transcript of Motion Proceedings, Aug. 15, 2018, at 5-7).

**1. The Distinction of Damages Categories At Issue Is Not "Property Damage" vs. "Personal Injury"**

The Court appears to have misspoken with respect to the distinction between damages categories raised by the PSC plan.  The PSC proposed separate adjudication tracks of (1) remediation damages, and (2) "Other Damages, such as alternative living expense, bodily injury, foreclosure, short sale, bankruptcy, loss of rent, loss of use and enjoyment, and so forth." (Rec. Doc. 21527).  Consistent with their statements since September 8, 2015, the PSC conceded again that all damages other than remediation "will be considered separately, and will involve more

discovery." (*Id.*). Thus, it is inaccurate to categorize the non-remediation damages as "personal injury."[1]

The Court's remarks also incorrectly suggest that a "large number" of claims involve only one category of damages. The PSC has made clear that the claimants seek not only remediation damages, but also non-remediation damages arising from the same claims and allegations. Therefore, every claimant has multiple categories of damages. Because the PSC has conceded that all but one of the damages categories require additional discovery and individualized adjudication, their plan to create two separate methodologies for assessing damages is inefficient and cumbersome. For example, if every claimant must give testimony to support a claim for loss of use and enjoyment, then it makes sense to also depose the claimant about her ownership status, square footage and proof of product identification at the same time. To try to segregate and isolate certain categories of damages that all arise from the same claim is needlessly complex and ineffective.

2. **Binding Law Prevents Formulaic Handling of Most Claims**

The cumbersome insertion of the remediation estimate formula is also a bad idea because it introduces huge legal error while accomplishing very little. Even on the current record, the formula can apply to only a small subset of claimants. This Court's class-damages ruling limited application of the remediation estimate formula to the *Amorin* class, defined as current owners needing remediation. (Rec. Doc. 20741 at 30.) Governing Louisiana law then further limits the formula only to those current owners who have not remediated their properties. *See Volkswagen*

---

[1] The SPPFs that the parties drafted jointly and submitted to the Court to cover the claimants' damages claims and proof did not even touch on bodily injury claims, and included only the following categories of damages: remediation, bankruptcy, foreclosure or short sale, and "Other Damages," which included only alternative living expenses, moving costs, and diminution of value.

*of Am., Inc. v. Robertson*, 713 F.2d 1151 (1983) ("If the damaged property has been restored to its former condition by repair, the proper basis for assessing the damage is the repair bill."). Any use of the remediation estimate formula to determine damages for current owners who have already remediated their properties to any degree[2] would be unlawful.

Moreover, the PSC's proposal to extend the application of the class-damages formula outside of the class as a shortcut for determining damages for "former" and "new" owners would be even more unlawful. When the Court challenged the PSC at the hearing to explain their position on the class definition's limitation to current owners, the PSC admitted that the class definition "just included current owners at the time, yes," but then asserted without legal support, "[b]ut you can take your findings and apply them to everybody else." (Tr. at 32). That is not correct. What the PSC proposes is an expansion of the certified class, which would require a new motion supported by evidence, including expert testimony,[3] and a new Rule 23 rigorous analysis. They cannot just extend it by fiat.

On this record, claimants must qualify with two overlapping characteristics to possibly be eligible for remediation damages determination by formula: (1) they have never remediated their properties, and (2) they are current owners at the time the formula is specifically applied to them.[4] Out of the approximately 780 remaining Louisiana *Amorin* claims, *only **112*** fall into both categories based on a review of the returned verified SPPFs. And all 112 claimants must still

---

[2] As noted at oral argument, to the extent that a claimant may argue that her remediation was incomplete, that contention must be proven with a showing of the scope and cost of the actual remediation and a proffer of precisely what more would need to be done to reach adequacy.

[3] No evidentiary basis exists in this record for extending the formula to former owners or new owners.

[4] No evidentiary basis exists in this record for backdating ownership to some prior date as the PSC proposes.

participate in discovery and individualized adjudication of their non-remediation damages. These real facts belie the notion that "a large number" of these claims can be handled administratively or that their damages can be simply calculated by formula.

**3. Individualized Issues Prevent the Proposed "Administrative" Handling of Class Claims**

Even for the 112 claimants, formula application will violate Taishan's due process rights and will be less efficient than a unitary individual adjudication of all damages. Each formula claimant will still have to present claimant-specific proof on ownership, product ID, square footage, and remediation status that will require individualized assessment and adjudication, which would be done most efficiently in a unitary proceeding. But the PSC proposes a constitutional shortcut to have a Special Master make categorical proof determinations on Product ID—for example, that a single decision will be made as to all boards marked with the words "Made in China" regardless of variations in the quality and scope of documentary evidence, specific content, markings, and characteristics presented by each claimant. That categorical decision will then bind Taishan to pay damages for every individual claimant that shows any degree of proof (whether a full inspection report or a single fuzzy photograph) without any opportunity for Taishan to defend against individual claims. This proposed categorical "administrative" shortcut for the imposition of money damages violates Taishan's due process rights. *See N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 143 (5th Cir. 1996) ("Under our system of justice, the opportunity to be heard is the most fundamental requirement.").

Moreover, Plaintiffs seek to shift their burden to prove presence of Taishan's product to a burden on Taishan to prove that every alleged claim does *not* constitute Taishan product. That improper shifting of the burden of proof violates another fundamental due process principle that requires an affirmative showing of proof by a preponderance of the evidence. *Servicios-*

*Expoarma, C.A. v Indus. Mar. Carriers, Inc.*, 135 F.3d 984, 995 (5th Cir. 1998) ("It is a basic concept of damages that they must be proved by the party seeking them."); *see also Mobil Expl. & Producing U.S., Inc. v. Cajun Const. Servs., Inc*., 45 F.3d 96, 101–02 (5th Cir. 1995).

### 4. The Court Cannot Enter a Judgment on Any Segregated Portion of Claimant Damages

The Court has rightly recognized that it cannot issue judgments on any portion of the claimants' damages until all categories of damages are decided, regardless of the delineation of the categories. *See Monument Mgmt. Ltd. P'ship I v. City of Pearl*, 952 F.2d 883, 885 (5th Cir. 1992) (holding that judgment that does not dispose of the entirety of a claim cannot be made appealable by recourse to Rule 54(b)). That law prohibits the PSC's plans to obtain "judgment" on remediation damages through an administrative, formulaic process by a Special Master. Therefore, the cumbersome and improper extra-judicial process for determining remediation damages provides no acceleration of any of these claims to collectible or appealable judgment. On the contrary, the process distracts from what could be an efficient accelerated discovery and adjudication process for select Priority Claimants, as proposed by Taishan, which would achieve a trial that could lead to a final judgment on all categories of damages, properly tested and defended, within six to ten months of the entry of this Court's order. Taishan's plan is therefore more efficient and productive than the PSC's plan, which assumes simultaneous discovery and serial trials of every claimant for all of their categories of damages except remediation.

### 5. The PSC's Indifference to Due Process and Error Should Be Rejected

At the hearing, Defendants raised significant practical, legal and constitutional concerns about the procedural shortcuts that are incorporated in the PSC's written plan. That very morning, the PSC improvised even more shortcuts to fair adjudication, expanding on the fly the scope of contested issues to be delegated to the Special Master from their written proposal that he handle

6

remediation damages only, to a new process whereby the Special Master adjudicates every issue for every category of damages, which contradicts the plan they have pursued since September 2015.  *See* Transcript at 29.

When presented with Due Process challenges, the PSC stated, wrongly, that "the Fifth Circuit has said . . . that there is no due process in a default judgment, you don't have it."  Tr. at 30.  *Dierschke v. O'Cheskey*, 975 F.2d 181 (5th Cir. 1992), does not support that audacious proposition as the PSC claimed; it held merely that a defendant's failure to answer a complaint waives his rights to a jury trial under the Seventh Amendment.  *Id.*  Fifth Circuit and Supreme Court law requires that Rule 55 proceedings are "bounded at [their] outer limits … by constitutional due process concerns."  *Frame v. S-H, Inc*., 967 F.2d 194, 204 (5th Cir. 1992) (citing *Hovey v. Elliott*, 167 U.S. 409, 417–18 (1897)).

The PSC's disregard for Defendants' due process, disregard for efficiency, and disregard for avoiding legal error was manifest in their declaration that "[w]e'll take the chance with regard to their due process arguments for the Chinese defendants."  Tr. at 31.  The PSC made a bald plea for (misperceived) expediency over a fair and proper process:

> We'll take all of those [chances] because after nine years, we've got to do something and we shouldn't – I learned a long time ago that if you play the game by other people's rules, you're apt to lose because they wrote the rules.  And I think it's time not to play by the defendants' rules.

Tr. at 35-36.  Those remarks betray a callous indifference to due process and error in bringing these claims to money judgment.  Everybody's goal of final resolution will be thwarted by a rushed and flawed adjudication process that will trigger appellate review (and likely reversal and remand).

Therefore, Taishan urges the Court to consider its sensible, fair and efficient proposal for resolution of these claims, and to resist further consideration of the adoption of the PSC's bad plan.

Dated: Aug. 22, 2018

Respectfully submitted,

/s Christina Hull Eikhoff
Michael P. Kenny, Esq.
Georgia Bar No. 415064
Bernard Taylor, Esq.
Georgia Bar No. 669625
Christina Hull Eikhoff, Esq.
Georgia Bar No. 242539
David Venderbush, Esq.
New York Bar No. 2920817
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
christy.eikhoff@alston.com
*Counsel for Taishan Gypsum Co., Ltd. And Tai'an Taishan Plasterboard Co., Ltd.*

Alan Dean Weinberger
LA Bar No. 13331
HANGARTNER, RYDBERG & TERRELL, LLC
One Shell Square
701 Poydras St., Suite 310
New Orleans, Louisiana 70179
Phone: (504) 434-6815
Fax: (504) 522-5689
aweinberger@hanrylaw.com
*Local Counsel for Taishan Gypsum Co., Ltd. And Tai'an Taishan Plasterboard Co., Ltd.*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Notice of Submission has been served on Plaintiffs' Liaison Counsel, Russ Herman, by U.S. mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 22nd day of August, 2018.

  /s Michael P. Kenny
Michael P. Kenny, Esq.
Georgia Bar No. 415064
ALSTON & BIRD LLP
1201 West Peachtree Street NW
Atlanta, Georgia  30309
Phone: (404) 881-7000
Fax: (404) 881-7777
mike.kenny@alston.com

*Counsel for Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd.*