## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE-MANUFACTURED
DRYWALL PRODUCTS LIABILITY
LITIGATION            MDL NO. 2047
           SECTION: L

           JUDGE FALLON
           MAG. JUDGE WILKINSON

THIS DOCUMENT RELATES TO:
*Amorin, et al. v. Taishan Gypsum Co., Ltd., et al.*,
      *Case No. 11-cv-1395*
*Brooke, et al. v. State-Owned Assets Supervision and*
*Administration Commission of the State Council, et al.*,
      *Case No. 15-cv-4127*
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## PLAINTIFFS' STEERING COMMITTEE'S SUPPLEMENTAL POST-ARGUMENT BRIEF REGARDING A TRIAL PLAN FOR THE RESOLUTION OF LOUISIANA CLAIMS IN *AMORIN* AND *BROOKE*

# <u>TABLE OF CONTENTS</u>

Table of Authorities ........................................................................................................ii

I.   INTRODUCTION ................................................................................................ 1

II.  ARGUMENT ....................................................................................................... 4

    A.   Due Process Has Been Satisfied ............................................................... 5

    B.   The Burden of Proof Has Not Been Shifted. .......................................... 7

    C.   Defendants' Due Process Arguments Are Overstated. ......................... 10

    D.   Defendants, and their *Alter Egos*, Do Not Have a Right to a Jury Trial After Default ......................................................................................... 13

III. CONCLUSION .................................................................................................. 18

i

# TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*AEP Elmwood, LLC v. Tesoro Marine Services, LLC*,
   2004 WL 1575545 (E.D. La. July 13, 2004) ........................................................................ 7

*Armeni v. Transunion LLC, Inc.*,
   2016 WL 7046839 (W.D. Va. Dec. 2, 2016) ................................................................. 14, 16

*Au Bon Pain Corp. v. Artect, Inc.*,
   653 F.2d 61 (2d Cir. 1981) ........................................................................................................ 7

*Bass v. Hoagland*,
   172 F.2d 205 (5th Cir. 1949) .................................................................................................. 17

*Boddie v. Connecticut*,
   401 U.S. 371 (1971) ................................................................................................................ 11

*Cimino v. Raymark*,
   151 F.3d 297 (5th Cir. 1998) .................................................................................................... 9

*Clague v. Bednarski*,
   105 F.R.D. 552 (E.D.N.Y. 1985) ............................................................................................. 5

*Collazos v. United States*,
   368 F.3d 190 (2d Cir. 2004) ................................................................................................... 12

*Dierschke v. O'Cheskey*,
   975 F.2d 181 (5th Cir. 1992) ............................................................................................ 13, 15

*Fehlhaber v. Fehlhaber*,
   681 F.2d 1015 (5th Cir. 1982) .......................................................................................... 10, 12

*Finkel v. Romanowicz*,
   577 F.3d 79 (2d Cir. 2009) ...................................................................................................... 7

*Flexible Innovations, Ltd. v. IdeaMax*,
   2013 WL 12126233 (N.D. Tex. Apr. 19, 2013) ............................................................ passim

*Frame v. S-H, Inc.*,
   967 F.2d 194 (5th Cir. 1992) .................................................................................................... 8

*Green v. Life Ins. Co. of N. Am.*,
    754 F.3d 324 (5th Cir. 2014) ................................................................ 6

*Haines v. Comfort Keepers, Inc.*,
    393 P.3d 422 (Alaska 2017) ................................................................ 15

*Hammond Packing Co. v. Arkansas*,
    212 U.S. 322 (1909) ................................................................ 12

*Hovey v. Elliott*,
    167 U.S. 409 (1897) ................................................................ 11, 12, 13

*Hutton v. Fisher*,
    359 F.2d 913 (3d Cir. 1966) ................................................................ 17

*In re Chevron U.S.A., Inc.*,
    109 F.3d 1016 (5th Cir. 1997) ................................................................ 9

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
    2010 WL 1445684 (E.D. La. Apr. 8, 2010) ................................................................ 7

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
    2014 WL 4809520 (E.D. La. Sept. 26, 2014) ................................................................ 2, 5

*In re Depuy Orthopaedics, Inc.*,
    870 F.3d 345 (5th Cir. 2017) ................................................................ 5

*In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*,
    460 F.3d 1217 (9th Cir. 2006) ................................................................ 5

*Kormes v. Weis, Voisin & Co.*,
    61 F.R.D. 608 (E.D. Pa. 1974) ................................................................ 13, 15, 17

*Lumbermen's Mut. Cas. Co. v. Holiday Vehicle Leasing Inc.*,
    2003 WL 1797888 (S.D.N.Y. Apr. 4, 2003) ................................................................ 16

*Michalic v. Cleveland Tankers, Inc.*,
    364 U.S. 325 (1960) ................................................................ 8

*Movible Offshore Company v. Ousley*,
    346 F.2d 870 (5th Cir.1965) ................................................................ 8

*Mwani v. Bin Ladin*,
    244 F.R.D. 20 (D.D.C. 2007) ................................................................ 14

*OrthoArm, Inc. v. Am. Orthodontics Corp.*,
 2009 WL 10677059 (E.D. Wis. Feb. 9, 2009) .......................................................... 5

*Robin v. Chartis Property Casualty Co.*,
 2014 WL 12719193 (E.D. La. May 14, 2014) ......................................................... 6

*S.E.C. v. Wang*,
 1989 WL 135558 (S.D.N.Y. May 22, 1989) .......................................................... 5

*Tyson Foods, Inc. v. Bouaphakeo*,
 __ U.S. __, 136 S. Ct. 1036 (2016) ........................................................................ 9

*Volkswagen of Am., Inc. v. Robertson*,
 713 F.2d 1151 (1983) .............................................................................................. 9

*Zero Down Supply Chain Sols., Inc. v. Glob. Transp. Sols., Inc.*,
 282 F.R.D. 604 (D. Utah 2012) .............................................................. 13, 14, 17

## **Rules**

Fed. R. Civ. P. 23(a)(1)-(4), (b)(3) ............................................................................ 2

Rule 38 .................................................................................................... 14, 16, 17

Fed. R. Civ. P. 55(b)(2) ............................................................................ 5, 14, 16, 17

## I.     <u>INTRODUCTION</u>

The trial plan contemplated by the Court for Louisiana claims in *Amorin* and *Brooke* is fair, reasonable, appropriate, and amply supported by the record.  It is easy to get lost in the barrage of eye-catching legal principles espoused by Defendants[1] – *i.e.*, constitutional rights, due process, jury trial rights, broad prohibitions against formulaic damages in property cases, inability to get a final judgment, etc. – but to be clear, those arguments[2] are nothing more than distractions that have little to no impact on the Court's trial plan.  These doctrines and principles become relevant only when you mischaracterize the factual and procedural history of this litigation, as Defendants have done – not a surprising tactic given that they see their opportunity slipping away to delay the final resolution of this case for another thirty-plus years.

Substantial discovery has made all parties and the Court completely aware of certain basic facts, the first of which is that ***all*** of the Defendants have been participating in this litigation since the outset.  Whether they formally entered their appearance after judgments were entered or orchestrated recalcitrance from behind the scenes in China (with help from their American counsel), ***all*** of the Defendants have consistently acted with the intent and purpose to

---

[1] "Defendants" collectively refers to Taishan Gypsum Co., Ltd. and its alter ego Tai'an Taishan Plasterboard Co., Ltd. ("Taishan"), BNBM PLC ("BNBM"), CNBM Company, Ltd. ("CNBM"), and BNBM (Group) Co., Ltd. ("BNBM Group") (collectively referred to herein as the "CNBM/BNBM Entities").

[2] *See*, *e.g.*, Memorandum in Support of CNBM and BNBM Entities Motion to Adopt Louisiana *Amorin* Trial Plan [Rec. Doc. 21501-1]; Taishan's Motion for Adoption of Proposed Plan for Adjudication and Resolution of Louisiana Claims in *Amorin* and *Brooke* [Rec. Doc. 21503]; Taishan's Opposition to the PSC's Proposed Pretrial Order for Louisiana Trials [Rec. Doc. 21646]; and the CNBM/BNBM Entities' Opposition to PSC's Trial Plan [Rec. Doc. 21647].

frustrate and delay the proceedings in this Court.[3]  As a result, in this MDL, whether in Louisiana or elsewhere, ***every*** Defendant has been defaulted due to their willful and deliberate failure to respond to the identical *Amorin* complaints properly served under the Hague and certified by the Court pursuant to Fed. R. Civ. P. 23(a)(1)-(4) & 23(b)(3).[4]  Appropriately following up on those rulings, the Court conducted, as is its right, a Class Damages hearing on June 9, 2015, where ***all*** Defendants were present and participated.  ***All*** Defendants were allowed to present evidence, the Court considered that evidence, and the Court issued a ruling as to damages.  The Court's proposed trial plan flows from these indisputable realities.

It is no wonder the Defendants want to pretend that all of this never happened, but the rest of the litigants here, and the Court, do not have that luxury.  Although Defendants casually refer to and brag about a time when they "re-entered and re-engaged" in the litigation[5] (forgetting everything that happened in the first ***five-plus years*** of the litigation), treating any part of this case as "a fresh start"[6] is not required by any legal principles, constitutional or otherwise.  The fact that Defendants see remand as "a fresh start" illustrates the problem with their approach.  As the Court appropriately noted, "the whole approach is just delay.  Delay because people die, delay because they lose their homes, delay because they're frustrated and

---

[3] *See, e.g.*, PSC's Opposition to the Motion to Vacate Default Judgments Against CNBM/BNBM [Rec. Doc. 21082], *filed under seal*; Order & Reasons Denying the Motion to Vacate Default Judgments Against CNBM/BNBM [Rec. Doc. 21108].

[4] *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2014 WL 4809520 (E.D. La. Sept. 26, 2014).

[5] *See* August 15, 2018 Hearing Tr., at 25:8-16 (CNMB/BNBM counsel stated: "[b]ut if you take the span of the case since the parties re-entered and re-engaged, it's been a little slow, . . . .") (attached hereto as Exhibit "A").

[6] *Id.*, at 23:2-4 ("*Brooke* is a fresh start.  We may not like it, but it's a late filed case.").

2

giving up."[7] This case needs to move forward and reach a resolution – a reality recognized by the Court – which does not violate any fundamental principles of justice and which is incorporated in the Court's proposed trial plan.

Defendants resist the approach favored by the Court, invoking a jury trial right and other vaguely asserted rights they claim all fall under the rubric of "due process." Looked at closely, however, Defendants are not really arguing they have had no process afforded them, they are arguing they don't like the process that they were afforded (a result of their choosing to be absent from much of the early phases of the litigation) and more specifically, they do not like the results that came out of that process.

Defendants cannot seriously contend that the hallmarks of due process – notice and an opportunity to be heard – have not been satisfied to date and by the Court's proposed trial plan. Yet, Defendants continue to beat the drum of due process, referencing it at every chance they get. Most galling is that Defendants seek to rely on various procedural anomalies that have taken place in this case (*e.g.*, trying to exploit the fact that protective actions were filed in multiple jurisdictions, etc.) to pick apart the procedures that the Court has undertaken, when it was the Defendants' misconduct that prevented the Plaintiffs and the Court from prosecuting this case in a traditional fashion from the outset. And that misconduct was directed from the beginning by, among others, Defendants' counsel Orrick, who now come to the Court and pretend that there was a period of time when things "happened before [they] got involved in the litigation."[8]

---

[7] *Id.*, at 24:2-11.

[8] *Id.*, at 25:8-16.

3

Meanwhile, it was the Defendants' misconduct that delayed resolution of this case for nearly ten years, leaving Plaintiffs to suffer with their lives turned upside down and run through the ringer.

In addition to all of the fair process that has already been provided to Defendants, going forward, the Court's trial plan provides an appropriate forum for the Plaintiffs to present evidence from which a reasonable factfinder – in this case, a Special Master – can determine, for each class member, the recoverable elements of damage using the appropriate burden of proof, subject to review and modification or approval by the Court. The Defendants are afforded the opportunity to present their own contradictory evidence (if any), as well as whatever argument Defendants might have that the Plaintiffs' evidence is insufficient to support an award of damages. To be clear, there is no burden-shifting, no lack of opportunities to present evidence, and no other infirmities that Defendants are trying to gin up.

For these reasons, for the reasons previously submitted,[9] and for the reasons further outlined below, the Court should proceed with the trial plan articulated during the hearing on August 15, 2018.

## II.   <u>ARGUMENT</u>

Defendants raise a myriad of constitutional and due process arguments to suggest that the Court's proposed trial plan violates their rights and would subject any final determination to possible reversal in the Fifth Circuit.[10] The main arguments raised by Defendants – that their

---

[9] *See* Rec. Doc. 21525.

[10] BNBM Group's and BNBM's argument that they are not subject to default in *Amorin* in Louisiana is misguided. As the Court is aware, they are being held vicariously liable for the conduct of Taishan in Louisiana, and their ability to be held so liable will be addressed in the Fifth Circuit. However, even if that were not the case, both entities are defaulted as it relates to the Louisiana claimants. Both were defaulted as to the very same *Amorin* complaint in Virginia, which was consolidated and coordinated before this Court in this MDL. After that consolidation, the Court had on its docket a default against each

4

due process rights are being violated, that they have a right to a jury trial on damages, that formulaic damages are not allowed – are misguided as set forth below.

### A.   Due Process Has Been Satisfied.

Defendants make broad statements that they have a right to a hearing on damages in which the Plaintiffs bear the burden of proof.  This seemingly logical and legally supportable position misses the larger point – that Defendants have received just such a hearing, and simply because they are dissatisfied with the result, doesn't mean the hearing didn't occur.  Even the cases cited by Defendants illustrate that the Court is entitled to set damages post-default by an evidentiary hearing.[11]  That hearing was conducted in this case, and additional proceedings will

---

Defendant as to each Plaintiff and was entitled to adopt those defaults as effective in each jurisdiction. The Court certified the *Amorin* class as to each Defendant having accepted and adopted that all of the Defendants were in default.  *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.,* 2014 WL 4809520, at *2 (E.D. La. Sept. 26, 2014).  It cannot seriously be questioned that this Court had a right to do so at least as to each and every Louisiana Plaintiff.  BNBM Group and BNBM essentially argue that this Court was required, even though defaults as to every party existed, to go back and enter new defaults as to each identical complaint in each jurisdiction.  This is nothing but an attempt to use their own misconduct to gain a form-over-substance advantage and is contrary to everything MDLs are about.  *See*, *e.g.*, *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d 1217, 1230-31 (9th Cir. 2006) ("A district judge charged with the responsibility of 'just and efficient conduct' of the multiplicity of actions in an MDL proceeding must have discretion to manage them that is commensurate with the task. The task is enormous, for the court must figure out a way to move thousands of cases toward resolution on the merits while at the same time respecting their individuality.").  Under BNBM Group's and BNBM's hyper-technical reading of MDL jurisdiction, cases like *In re Depuy Orthopaedics, Inc.*, 870 F.3d 345 (5th Cir. 2017), which stated that "[c]ases that are directly filed in an MDL court are treated 'as if they were transferred from a judicial district sitting in the state where the case originated'" couldn't exist.  *Id.* at 348 (citation omitted).

[11] *See* Rec. Doc. 21647, at 6-7 (CNBM/BNBM citing cases that permit discovery when challenging damages); *see also Clague v. Bednarski*, 105 F.R.D. 552, 552 (E.D.N.Y. 1985) (acknowledging Rule 55(b)(2) authorizes the court to conduct a hearing to determine the amount of damages to be assessed against a defaulting defendant); *S.E.C. v. Wang*, 1989 WL 135558, at *1 (S.D.N.Y. May 22, 1989) (noting that because damages are not established upon default, "a hearing to determine the amount of damages may be required"); *OrthoArm, Inc. v. Am. Orthodontics Corp.*, 2009 WL 10677059, at *1 (E.D. Wis. Feb. 9, 2009) ("Fed. R. Civ. P. 55(b)(2) provides that a court may conduct a hearing if the amount of damages needs to be determined before entry of judgment.").

occur before the Special Master, subject to the Court's review and approval.  The Plaintiffs must produce evidence that the damages have occurred (meeting their burden) and Defendants have an opportunity to contest that evidence.  Nothing in the cases cited by Defendants takes issue with this process.

Defendants' argument can best be described as a complaint regarding the amount of discovery they are going to receive.[12]  Their efforts here to elevate what is ostensibly a discovery dispute to the level of constitutional significance is unwarranted.  Many of the issues – liability and causation – have been established by default, so no discovery is warranted.  And the remaining remediation damages issues resulting from the contested class damages hearing – ownership, square footage and product identification – do not warrant the expansive discovery that Defendants seek.  For example, putting aside whether depositions are required in the abstract, depositions of individual homeowners in this case are completely irrelevant and are meant strictly to harass.  Surely Defendants cannot claim the Court lacks discretion to limit irrelevant and harassing discovery.  *See*, *e.g.*, *Green v. Life Ins. Co. of N. Am.*, 754 F.3d 324, 329 (5th Cir. 2014) (noting the district court had "broad discretion" with respect to discovery); *Robin v. Chartis Property Casualty Co.*, 2014 WL 12719193, at *2 (E.D. La. May 14, 2014) (Fallon, J.) ("This Court has discretion to limit the scope of discovery.").

The irrelevance of a homeowner deposition is illustrated perfectly by Taishan's counsel's attempt to explain its relevance at the August 15, 2018 hearing on the trial plans.  Counsel explained that to establish product identification, a homeowner may have provided a "blurry photograph" that depicted merely a "Made in China" stamp, and Taishan would like to ask at a

---

[12] Rec. Doc. 21647, at 6-7.

deposition "Well, where did this picture come from?  What room was it taken in?  Who took it?"[13]  It is completely irrelevant in what room a photo was taken,[14] and equally clear that a homeowner would not have relevant information as to where the drywall in their home was manufactured.  This is a preview of the ridiculous and irrelevant line of questioning that the Defendants would like to use against these homeowners to further delay the resolution of this case that is in its tenth year already.

>    **B.**    **The Burden of Proof Has Not Been Shifted.**

Again, Defendants make an uncontroversial statement – that the Plaintiffs retain the burden of proof on damages after default – but misstate the facts to make it applicable to this case.  Simply put, the Plaintiffs have always borne the burden of proof on damages, and nothing that the Court proposes changes that.  However, while a plaintiff may have the burden to prove damages in a default proceeding, all reasonable inferences from the evidence are drawn in the plaintiff's favor.  *See*, *e.g.*, *Finkel v. Romanowicz*, 577 F.3d 79, 87 (2d Cir. 2009); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).  And, there are no constitutional restrictions on the type of evidence Plaintiffs are allowed to present to satisfy that burden.  *See*, *e.g.*, *AEP Elmwood, LLC v. Tesoro Marine Services, LLC*, 2004 WL 1575545, at *4 (E.D. La. July 13,

---

[13] August 15, 2018 Hearing Tr., at 15:15-19.

[14] The irrelevance of this particular contention by Defendants has already been illustrated by this Court's recognition that the existence of one sheet of defective Chinese Drywall in the property – regardless of its location – mandates that the entire house be remediated and all drywall removed.  "The issue is whether all drywall should be removed or only the problematic drywall in this case.  The overwhelming evidence reveals that in such mixed structures it is necessary to remove all the drywall, both Chinese and other, for the following reasons."  *In re Chinese-Manufactured Drywall Prod. Liab. Litig*., 2010 WL 1445684, *12 (E.D. La. Apr. 8, 2010).  The Court made clear that "in order to make the plaintiff whole, any system that lacks the ability to definitely identify the offensive drywall is unacceptable and rejected by this Court.  The regulatory and scientific record demonstrates that removing all drywall from a mixed drywall home is the only method that ensures this goal is obtained."  *Id*. at *14.

2004) ("as a general rule the law makes no distinction between direct and circumstantial evidence") (citing *Movible Offshore Company v. Ousley*, 346 F.2d 870, 874 (5th Cir.1965) ("As the Supreme Court has repeatedly stated: 'Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive that direct evidence'") (quoting *Michalic v. Cleveland Tankers, Inc*., 364 U.S. 325, 330 (1960)).

Remediation damages have already been established in this case on a class-wide basis at a hearing in which Plaintiffs bore the burden of proof and Defendants presented evidence to support their position.[15]  The remaining issues with respect to remediation damages – ownership, square footage and product identification – are objectively definable and straightforward.  Under those circumstances, there is no need to conduct additional trials or evidentiary hearings.  *See Frame v. S-H, Inc*., 967 F.2d 194, 204 (5th Cir. 1992) ("If the damages can be computed with certainty by reference to the pleadings and supporting documents alone, an evidentiary hearing may not be necessary").[16]

Under the Court's trial plan, Plaintiffs are entitled to present competent evidence from which damages to any class member or other Plaintiff may be reasonably inferred by the appropriate legal burden – establishing damages as more likely than not.  As noted above, there

---

[15] *See* Rec. Doc. 20741.

[16] Defendants cite *Frame* for the notion that a district court is required to hold evidentiary hearings on damages even in the case of defaults.  *See* Rec. Doc. 21501-1, at 5.  However, such reliance is misplaced.  The only reason the Fifth Circuit remanded the case for a determination of damages is because it appeared to the Court that the summary judgment on liability had been dissolved by the district court.  *See Frame*, 967 F.2d at 204 ("We were initially tempted, as the James group [intervening plaintiffs] urged us, to affirm the damage award on the basis of the summary judgment, which itself is not contested on this appeal. However, after a more complete review of the record, we find that the district court vacated its summary judgment ruling on October 31, 1989.").  Read properly, *Frame* supports the Court's decision to handle remediation damages administratively.

is nothing in the substantive law that limits or constrains the type of evidence that can be used.[17]

Rather, as in any case, a class member or other Plaintiff is free to rely on expert testimony,

statistical evidence (such as RS Means or Xactimate), or any other form of evidence that is

probative as to the scope or *quantum* of damages.[18]  *See*, *e.g.*, *Tyson Foods, Inc. v. Bouaphakeo*,

__ U.S. __, 136 S. Ct. 1036, 1046 (2016) ("A representative or statistical sample, like all

evidence, is a means to establish or defend against liability.  Its permissibility turns not on the

form a proceeding takes – be it a class or individual action – but on the degree to which the

evidence is reliable in proving or disproving the elements of the relevant cause of action").

Defendants, in turn, will be permitted to argue that the evidence is insufficient to

establish damages for some or all of the class members, or to present their own contrary

---

[17] Taishan makes the mistaken argument that "Louisiana property damages law requires proof of actual repair cost – not estimation – for the many *Amorin* properties already remediated," citing to *Volkswagen of Am., Inc. v. Robertson*, 713 F.2d 1151, 1169 (1983).  Rec. Doc. 21503, at 2.  There is no such rule in Louisiana property law generally, and Taishan's reliance upon *Volkswagen* is misplaced.  This is just another attempt to attack the Court's Findings of Fact & Conclusions of Law from the June 9, 2015 Class Damages Hearing.  *Volkswagen* was a case dealing with an automobile lessor seeking compensation for cars that were damaged while being left on a lot owned by the defendant.  *See Volkswagen*, 713 F.2d at 1153-56.  The proper measure of damages was the cost either to replace the vehicles (if they were totaled) or to repair the vehicles (if they were fixed), in addition to the diminution in value of the repaired cars (that otherwise would have been new).  *See id.*, at 1168-70.  The court found that for the vehicles that had actually been repaired, the proper measure of damages was the actual cost to repair.  *Id*. at 1169.  Defendants' claim for a broad application of this general statement within the context of this case is unsupportable.  *Volkswagen* has no bearing on formulaic damages in a property case such as this which the Court already addressed.  *See* Rec. Doc. 20741, at ¶¶ 82-85.

[18] In their papers and at oral argument, Defendants suggest that Plaintiffs advocate using representative bellwether verdicts to determine individual causation and damages for other Plaintiffs and that doing so would violate precedent such as *Cimino v. Raymark*, 151 F.3d 297 (5th Cir. 1998), and *In re Chevron U.S.A., Inc.,* 109 F.3d 1016, 1019 (5th Cir. 1997).  These cases are inapposite.  No proposal suggests that the Court should try the case of a "representative" Plaintiff A, and then award the same damages to Plaintiff B.  Rather, the PSC simply proposes providing the factfinder – in this case a Special Master – with a body of evidence (*e.g.*, expert testimony, RS Means data, etc.) that is relevant to both the claims of Plaintiff A and the claims of Plaintiff B.

evidence, if any.  Then, the Special Master, subject to review and potential modification or approval by the Court, can either accept or reject the Plaintiffs' evidence, in whole or in part, and make the appropriate damage awards, as applied to each class member's, or other associated *Amorin* Plaintiff's, claim.

Nothing about this very fair process implicates Defendants' constitutional concerns, which is likely why Defendants use broad, sweeping statements instead of looking at the process as it is.  Instead they cite case after case that does little to suggest that this process is infirm.

### C.   **Defendants' Due Process Arguments Are Overstated.**

As discussed, Defendants ignore the process that has taken place, and will take place, when arguing they are being deprived of due process.  Defendants misleadingly want to make this a debate about whether a party in default has been stripped of its constitutional rights and then, having erected this strawman, want to point to some cases to knock it down.[19]   However, beyond a few misleading characterizations (*e.g.*, the burden has shifted from Plaintiffs to Defendants, etc.), Defendants never put any meat on the bones of their argument and explain how what the Court has done, or what the Court proposes to do, fails to provide them with notice and an opportunity to be heard.

Defaulting for failure to appear under Rule 55 as Defendants chose to do from the beginning, and further delaying the proceedings every chance they get has real-life consequences, and the Defendants cannot avoid that by simply parroting the phrase "due process."  *See*, *e.g.*, *Fehlhaber v. Fehlhaber*, 681 F.2d 1015, 1028 (5th Cir. 1982) (citing *Boddie v. Connecticut*, 401 U.S. 371, 378 (1971)) ("regardless of what due process requires where a

---

[19] *See*, *e.g.*, August 15, 2018 Hearing Tr., at 32:17-33:13; Rec. Doc. 21647, at 4-5.

defendant has not defaulted, the Supreme Court has stated that no hearing at all is required by the due process clause when a defendant is in default.").  The Defendants here are not entitled to have the litigation proceed precisely as it would have if they had shown up and litigated at the outset and never engaged in misconduct.  *See id*.  While Defendants may still be entitled to "due process," what they are entitled to ***may vary under the circumstances***, and all that is needed is "an opportunity granted at a meaningful time and in a meaningful manner for a hearing ***appropriate to the nature of the case***.  The formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings."  *Boddie*, 401 U.S. at 378 (emphasis added).

Defendants' reliance upon cases such as *Hovey v. Elliott*, 167 U.S. 409 (1897), which was cited in their briefing and by Taishan's counsel at the hearing,[20] is entirely overstated and misplaced.  *Hovey* itself involved a situation where the defendant had answered the complaint and subsequently been found in contempt for failing to abide by a court order (not a discovery order).  *See Hovey*, 167 U.S. at 411.  As punishment for contempt, the lower court struck the answer, found the defendant in default, and entered judgment against it.  *See id*., at 411-12.  The Supreme Court found, under those circumstances, that the lower court did not "have inherent power to deny all right to defend an action, and to render decrees without any hearing."  *Id.* at 414.  To say that *Hovey* has been narrowly interpreted and tied to its specific facts would be an understatement.

---

[20] *Id.*, at 33:9-13; *see also* Rec. Doc. 21503-1, at 11.

The key in *Hovey* is that it was dealing with default that occurred as punishment for contempt, not default for the deliberate and willful failure to appear, as is the case here.  The Fifth Circuit itself has characterized *Hovey* as standing merely for the proposition that a "default judgment [is] subject to collateral attack where entered improperly as a punishment for contempt."  *Fehlhaber*, 681 F.2d at 1028.  In *Hammond Packing Co. v. Arkansas*, 212 U.S. 322 (1909), the Supreme Court explained the narrow application of *Hovey* even in the context of punishment, finding that striking an answer as punishment for violating a court's discovery order was not a violation of due process.  *Id.* at 350-51.  As the Supreme Court noted in *Hammond*, in contrast to the punishment in *Hovey* that was found to violate due process, "the striking out of the answer and default [in *Hammond*] was a punishment, but it was only remotely so, as the generating source of the power was the right to create a presumption flowing from the failure to produce."  *Id.* at 351; *see also Collazos v. United States*, 368 F.3d 190, 202-203 (2d Cir. 2004) (discussing limitation of holding of *Hovey*);

The Supreme Court also focused on the very distinction at issue here, comparing the default in *Hammond*, which did not result in a due process violation, with defaults entered as a result of a party's failure to answer.  "In its ultimate conception, therefore, the power exerted below ***was like the authority to default or to take a bill for confessed because of a failure to answer***, based upon a presumption that the material facts alleged or pleaded were admitted by not answering, and might well also be illustrated by reference to many other presumptions attached by the law to the failure of a party to a cause to specially set up or assert his supposed rights in the mode prescribed by law."  *See Hammond*, 212 U.S. at 351 (emphasis added).

12

*Hovey*, and other vague due process cases, have no impact on the Court's determination of an appropriate trial plan moving forward against these defaulted Defendants.[21]

**D.    Defendants, and their *Alter Egos*, Do Not Have a Right to a Jury Trial After Default.**

A party does not have a constitutional right to a jury trial after default has been entered. *See Dierschke v. O'Cheskey*, 975 F.2d 181, 185 (5th Cir. 1992) (after a default has been entered, "neither the plaintiff nor the defendant has the constitutional right to a jury trial on the issue of damages"); *see also Flexible Innovations, Ltd. v. IdeaMax*, 2013 WL 12126233, at *1 (N.D. Tex. Apr. 19, 2013) (finding no right to a jury trial against defaulted defendant even when plaintiff had demanded a jury trial in its complaint).  This well-settled law dates back to the origins of our judicial system.  *See Brown v. Van Braam*, 3 (Dallas) U.S. 344, 355 (1797) (concluding that "the English authorities countenance the Rhode Island law and practice" with regard to the roles of judge and jury in determining damages, including that "[w]here judgment is by default, the court may give the damages, without putting the party to the trouble of a writ of enquiry [to a jury]").  There really is no dispute about this rule of law; even the cases cited by Defendants concede as much.  *See, e.g.*, *Kormes v. Weis, Voisin & Co.*, 61 F.R.D. 608, 609 (E.D. Pa. 1974);[22] *Zero Down Supply Chain Sols., Inc. v. Glob. Transp. Sols., Inc*., 282 F.R.D. 604, 606 (D. Utah

---

[21] Taishan also argues that treating remediation damages as established by the Court's prior ruling at the Class Damages hearing somehow fails because, according to Taishan, Plaintiffs "cannot get a Rule 54(b) judgment on only remediation damages."  Rec. Doc. 21646, at 3.  This argument is a red herring and completely misses the point.  There is no reason that the Court cannot establish remediation damages through the formulaic and administrative process that has already been decided upon and then set that figure to the side while the remaining issues are determined.  In fact, many Plaintiffs will likely only have remediation damages and will be able to proceed to final judgment as soon as those determinations are made.  There is nothing about the Court's process in this regard that implicates constitutional principles.

[22] Rec. Doc. 21647, at 4-5.

2012).[23]  Yet, Defendants argue that this fundamentally accepted rule is modified if a plaintiff had previously, prior to the default, invoked a jury demand in its complaint.

Defendants seek to exploit a perceived conflict between Rule 55 defaults and the rule governing demands for jury trials, Rule 38.  Yet, the plainest reading of the rules suggests that there is no conflict at all.  Rule 38 provides that a party may demand a jury trial on any issue to which that party has a constitutional or federal statutory right, and once demanded, may only withdraw that demand with the consent of the opposing party.  *See* Fed. R. Civ. P. 38(a)(b)(d).  Rule 55(b)(2) specifically permits a court to hold an evidentiary hearing, not a jury trial, in the case of default unless there is a federal statutory right to a jury trial (a fact not present here).  Reading these statutes together along with the well-settled law on defaults, once the default occurs, there is no constitutional right to a jury trial, and, therefore, Rule 38 does not apply.  *See*, *e.g.*, *Flexible Innovations, Ltd.*, 2013 WL 12126233, at *1; *Armeni v. Transunion LLC, Inc*., 2016 WL 7046839, at *2-3 (W.D. Va. Dec. 2, 2016); *Mwani v. Bin Ladin*, 244 F.R.D. 20, 23-24 (D.D.C. 2007) (denying request for jury trial after entry of default because no right to a jury trial on damages exists).  The loss of a jury trial right, therefore, is based ***not on the withdrawal of a jury demand*** implicating Rule 38(d) but, rather, the loss of the right to a jury trial is based on the default.

Yet, Defendants assert, with the support of a few cases, that such a conflict exists.  *See*, *e.g.*, *Zero Down Supply Chain Sols., Inc. v. Global Transp. Sols., Inc*., 282 F.R.D. 604, 606-07 (D. Utah 2012) (acknowledging federal consensus that defendants do not have a constitutional right to a jury trial following entry of default, but relying on "the plain language of Rule 38(d)"

---

[23] *Id*. at 5.

14

holding that a non-consenting party does not lose its right to a jury trial just because it is in default); *Kormes v. Weis, Voisin & Co.*, 61 F.R.D. 608, 609-10 (E.D. Pa. 1974) (same).  But, these cases go against the weight of authority.  *See*, *generally*, *Haines v. Comfort Keepers, Inc.*, 393 P.3d 422 (Alaska 2017) (surveying federal law on this "conflict" for the purposes of interpreting similar rights in Alaska, the court stated that "federal courts had largely coalesced behind a rule that although '*the court may order a jury trial as to damages in a default* situation if it seems to be the best means of assessing damages[,] . . . *neither side has a right to a jury trial on damages*.'  This continues to be the generally accepted interpretation of the constitutional right, and *most courts therefore reject demands that a jury trial on damages follow entry of default as a matter of right*.  We have found no indication that the common law as understood by the framers of the Alaska Constitution was any different." (emphasis added) (internal citations omitted)).  Furthermore, the one case that addressed the issue head-on in the Fifth Circuit rejected the very same argument being raised by Defendants based upon prevailing Fifth Circuit precedent.  *See Flexible Innovations, Ltd.,* 2013 WL 12126233, at *1.

The procedural posture of *Flexible Innovations* was remarkably similar to this case. There was a default, the court set a hearing to determine what damages should be awarded to the plaintiff, and the defendants "filed a motion requesting a jury trial on the issue of damages, arguing that they are entitled to have a jury determine the amount of damages because plaintiff had demanded a jury trial in its original complaint." *Id.* at *1.  Relying upon *Dierschke* and rejecting defendants' broad reading of Fifth Circuit case law, the court found that there was no such right to a jury trial.  *See id.* at *2.  In so doing, the court noted:

> In this case, default has been properly and appropriately entered, there is no statutory right to a jury trial to preserve, there is no

> constitutional right to a jury trial on damages, and a jury is not
> necessary for the court to determine the amount of damages, if any,
> to be awarded to plaintiff. Accordingly, the court concludes that
> defendants are not entitled to have a jury determine the proper
> measure of relief, and that defendants' motion for reconsideration
> should be denied. *Id*.

This is precisely the same reasoning to be applied in this case. After the default "there is

no statutory right to a jury trial to preserve, there is no constitutional right to a jury trial on

damages." *Id.* at *1. Again, the loss of jury trial rights is not based on the withdrawal of a jury

demand by a plaintiff implicating Rule 38(d) but, rather, the loss of the right to a jury trial is

based on default.

As noted above, the Court has the discretion to have damages tried to a jury if it

determines that it is the better way to determine damages. By way of example, *Armeni* was very

similar to this case except that after the last defendant had defaulted, it was the ***plaintiff*** who

wished to try damages to the jury. *See id.* at *1. Plaintiff in that case argued that under Rule 38,

"the right to a jury trial is 'inviolate' and withdrawn only on the parties' consent," while the

defendant argued that "any Seventh Amendment right to a jury trial does not survive the entry of

default." *See id.* at *1-2. The court rejected the Rule 38 argument finding that "the

overwhelming weight of authority instructs that the Seventh Amendment does not guarantee a

jury trial after default." *Id.* at *2. However, even though there was no constitutional or statutory

right to a jury trial, the court noted that it could "choose to empanel one" under Rule 55(b)(2)

and that it otherwise had "'the [inherent] discretion to order a jury trial even in the absence of a

constitutional or statutory right.'" *See id.* at *3 (quoting *Lumbermen's Mut. Cas. Co. v. Holiday

Vehicle Leasing Inc.*, 2003 WL 1797888, at *2 (S.D.N.Y. Apr. 4, 2003) (alteration in original)).

The court ordered a jury trial because, unlike here, the damages were in the form of emotional,

mental and physical distress, which were more suited for a jury; and because it would have been unfair to put the plaintiff in a worse position than they would have been had the defendant actually defended the case. *See id.* at *4.

Key from these cases is that there is no constitutional or due process right to a jury trial that remains after default. The court's ability to exercise its discretion to empanel a jury may very well be the underlying reason that the courts permitted jury trials in the cases cited by Defendants. *See Zero Down Supply Chain Sols., Inc.*, 282 F.R.D. at 606-07 ("The court agrees that considerations of fairness argue against allowing Plaintiffs *in this case* to unilaterally withdraw their demand for a jury after that demand has been properly made." (emphasis added)); *Kormes*, 61 F.R.D. at 609-10 ("***Under the facts of the present case***, we will 'in fairness and logic' apply the consent requirement of Rule 38(d) to the default situation of Rule 55(b)(2), and ***will in the exercise of our discretion*** grant a jury trial to defendant Alexander limited to the issue of damages." (emphasis added)).[24]  As currently situated, the law within the Fifth Circuit, and a reading of the statutes and other case law, strongly rebuts the Defendants' Rule 38(d) argument. And, in light of the objective damages issues being evaluated by a Special Master and the Court, there would be no need for the Court to exercise its discretion and empanel a jury.

---

[24] *See also Hutton v. Fisher*, 359 F.2d 913, 920-21 (3d Cir. 1966) ("I am not unmindful that in the medley of confusion on both sides, much of it in good faith, ***the granting of relief to the defendants, which is equitable in nature***" (emphasis added)).  Notably, *Hutton*, cited by both *Zero Down* and *Kormes*, relied, in part, upon *Bass v. Hoagland*, 172 F.2d 205 (5th Cir. 1949), for the proposition that there remained a right to a jury trial after default absent consent.  *Id.* at 916.  This same argument was relied upon by defendants in *Flexible Innovations* where the court distinguished *Bass* finding that the court there was really exercising its discretion "[b]ecause there were improprieties concerning the entry of default and serious errors concerning several other aspects of the case that "seem[ed] to present a case of injustice." 2013 WL 12126233, at *1.

17

III.    <u>**CONCLUSION**</u>

For these reasons, for the reasons articulated by the Court at the August 15, 2018 hearing, for the reasons set forth previously by the PSC, and for those set forth herein, the PSC respectfully submits that the Court's contemplated trial plan should be confirmed.

Dated:  August 22, 2018                     Respectfully Submitted,


                                            By: */s/ Russ M. Herman*
                                            Russ M. Herman (La Bar No. 6819) (on the brief)
                                            Leonard A. Davis (La Bar No. 14190) (on the brief)
                                            Stephen J. Herman (La Bar No. 23129)(on the brief)
                                            Robert S. Peck (on the brief)
                                            Herman, Herman & Katz, LLC
                                            820 O'Keefe Avenue
                                            New Orleans, LA 70113
                                            Phone: (504) 581-4892
                                            Fax: (504) 561-6024
                                            RHerman@hhklawfim.com
                                            *Plaintiffs' Liaison Counsel MDL 2047*

                                            Arnold Levin (on the brief)
                                            Fred S. Longer (on the brief)
                                            Sandra L. Duggan (on the brief)
                                            Keith Verrier (on the brief)
                                            Levin Sedran & Berman LLP
                                            510 Walnut Street, Suite 500
                                            Philadelphia, PA 19106
                                            Phone: (215) 592-1500
                                            Fax: (215) 592-4663
                                            alevin@lfsblaw.com
                                            *Plaintiffs' Lead Counsel MDL 2047*

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Robert M. Becnel
Law Office of Robert M. Becnel
425 W. Airline Highway, Suite B
Laplace, LA 70068
Phone: (985) 359-6101
Fax: (985) 651-6101
robbecnel@aol.com

Salvadore Christina, Jr.
Becnel Law Firm, LLC
425 W. Airline Highway, Suite B
Laplace, LA 70068
Phone: (985) 536-1186
Fax: (985) 536-6445
schristina@becnellaw.com

Peter Prieto
Podhurst Orseck, PA
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
pprieto@podhurst.com

Bruce William Steckler
Steckler Gresham Cochran
12720 Hillcrest Road, Suite 1045
Dallas, TX 75230
Phone: (972) 387-4040
Fax: (972) 387-4041
bruce@stecklerlaw.com

Patrick Montoya
Colson, Hicks, Eidson
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
patrick@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
Echsner & Proctor, PA
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
The Lambert Firm
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@thelambertfirm.com

Pete Albanis
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Myers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
palbanis@forthepeople.com

James R. Reeves, Jr.
Reeves & Mestayer, PLLC
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@rmlawcall.com

Christopher A. Seeger
Seeger Weiss, LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5002
dan@wbmllp.com

Richard J. Serpe
Law Offices of Richard J. Serpe
Crown Center, Suite 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com

Victor M. Diaz, Jr.
V.M. Diaz and Partners, LLC
119 Washington Ave., Suite 402
Miami Beach, FL 33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

Anthony D. Irpino (on the brief)
Pearl A. Robertson (on the brief)
IRPINO AVIN HAWKINS LAW FIRM
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

Gerald E. Meunier (on the brief)
Gainsburgh, Benjamin, David,
Meunier & Warshauer, LLC
2800 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2800
Phone:  (504) 522-2304
Fax:  (504) 528-9973
gmeunier@gainsben.com

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W., Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, which will serve a notice of the uploading in accordance with the procedures established in MDL 2047, on this 22nd day of August, 2018.

<u>/s/ Leonard A. Davis</u>
Leonard A. Davis
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com
Plaintiffs' Liaison Counsel
MDL 2047

*Co-Counsel for Plaintiffs*