**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE:  CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION<br><br>**THIS DOCUMENT RELATES TO:**<br><br>*ALL CASES* | **MDL No. 2047**<br>**SECTION: L**<br>**JUDGE FALLON**<br>**MAG. JUDGE WILKINSON** |

**CNBM GROUP'S OPPOSITION TO**
**THE PSC'S MOTION TO CERTIFY AN INTERLOCUTORY APPEAL**
**OF THE COURT'S MARCH 10, 2016 ORDER**

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 1

II.     ARGUMENT ....................................................................................................... 2

        A.     The Motion Should Be Denied Due To The PSC's Undue Delay, And
               Granting This Belated Request Would Not Materially Advance The
               Litigation ................................................................................................... 3

        B.     The PSC Identifies No Controlling Question Of Law. .......................... 6

        C.     The Court's FSIA Order Presents No Issue Over Which There Is A
               Substantial Ground For Difference Of Opinion .................................... 8

III.    CONCLUSION .................................................................................................... 12

        CERTIFICATE OF SERVICE ........................................................................... 13

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbey v. United States*,
  89 Fed. Cl. 425 (2009) ..................................................................................3, 4

*Ahrenholz v. Bd. of Trs. of Univ of Ill.*,
  219 F.3d 674 (7th Cir. 2000) ...............................................................................3

*Animal Sci. Prods., Inc. v. Hebei Welcome Pharm. Co.*,
  138 S. Ct. 1865 (2018) ......................................................................................4, 5

*Aparicio v. Swan Lake*,
  643 F.2d 1109 (5th Cir. Unit A 1981) ....................................................................4

*Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A.*,
  875 F.2d 1174 (5th Cir. 1989) ..............................................................................9

*In re Buspirone Pat. Litig.*,
  210 F.R.D. 43 (S.D.N.Y. 2002) ............................................................................3

*Clark-Dietz & Assocs.-Eng'rs, Inc. v. Basic Constr. Co.*,
  702 F.2d 67 (5th Cir. 1983) ...............................................................................2, 8

*Compagnie Noga D'Importation et D'Exportation S.A. v. Russian Fed'n*,
  361 F.3d 676 (2d Cir. 2004)...............................................................................11

*Conn. Nat'l Bank v. Germain*,
  503 U.S. 249 (1992)............................................................................................2

*Dole Food Co. v. Patrickson*,
  538 U.S. 468 (2003)...................................................................................8, 9, 11

*Drummond Co. v. Conrad & Scherer, LLP*,
  885 F.3d 1324 (11th Cir. 2018) .......................................................................6, 7

*Fabricant v. Sears Roebuck & Co.*,
  No. 98-cv-1281, 2001 WL 883303 (S.D. Fla. Jan. 29, 2001)...................................3

*In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*,
  No. 07-md-1873, 2008 WL 4923035 (E.D. La. Nov. 13, 2008) .............................3

*Ferraro v. Sec'y of U.S. Dep't of Health & Human Servs.*,
  780 F. Supp. 978 (E.D.N.Y. 1992) .......................................................................3

*In re First Fin. Dev. Corp.*,
   960 F.2d 23 (5th Cir. 1992) ........................................................................................2

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*,
   462 U.S. 611 (1983)............................................................................................11, 12

*Gagan v. Sharer*,
   No. 99-cv-1427, 2006 WL 3736057 (D. Ariz. Nov. 6, 2006) ...................................3

*Garb v. Republic of Poland*,
   440 F.3d 579 (2d Cir. 2006)......................................................................................11

*Garner v. Wolfinbarger*,
   430 F.2d 1093 (5th Cir. 1970) ....................................................................................6

*Green v. City of New York*,
   No. 05-cv-0429, 2006 WL 3335051 (E.D.N.Y. Oct. 23, 2006) .................................3

*Hester Int'l Corp. v. Fed. Republic of Nigeria*,
   879 F.2d 170 (5th Cir. 1989) ..................................................................................8, 9

*Hypertherm, Inc. v. Am. Torch Tip Co.*,
   No. 05-cv-373, 2008 WL 1767062 (D.N.H. Apr. 15, 2008) ......................................3

*Magness v. Russian Fed'n*,
   247 F.3d 609 (5th Cir. 2001) ...............................................................................10, 11

*Morton Coll. Bd. of Trs. v. Town of Cicero*,
   25 F. Supp. 2d 882 (N.D. Ill. 1998) ...........................................................................3

*O'Connell Machinery Co. v. M.V. "Americana"*,
   734 F.2d 115 (2d Cir. 1984).......................................................................................11

*Oasis Research, LLC v. Carbonite, Inc.*,
   No. 10-cv-435, 2015 WL 12829617 (E.D. Tex. June 11, 2015) ................................3

*Oasis Research, LLC v. EMC Corp.*,
   No. 10-cv-435, 2015 WL 5318119 (E.D. Tex. Sept. 11, 2015)..................................3

*Pemex Exploración Y Producción v. Big Star Gathering Ltd.*,
   No. 10-cv-1997, 2014 WL 12596522 (S.D. Tex. Feb. 11, 2014) ...............................7

*Reese v. BP Exploration (Alaska) Inc.*,
   643 F.3d 681 (9th Cir. 2011) ......................................................................................8

*Richardson Elecs., Ltd. v. Panache Broad. of Pa., Inc.*,
   202 F.3d 957 (7th Cir. 2000) ......................................................................................3

*Ryan v. Flowserve Corp.*,
  444 F. Supp. 2d 718 (N.D. Tex. 2006) ............................................................2

*Singh ex rel. Singh v. Caribbean Airlines Ltd.*,
  798 F.3d 1355 (11th Cir. 2015) ...............................................................11, 12

*Swank v. L & J Tr.*,
  No. 10-cv-366, 2010 WL 2218181 (W.D. La. May 28, 2010) ................................7

**Statutes**

28 U.S.C. § 1292(b) ........................................................1, 2, 5, 6, 7, 8, 10

28 U.S.C. § 1603(a) ..........................................................................10

28 U.S.C. § 1603(b)(2) ....................................................................8, 12

28 U.S.C. § 1605(a) ..........................................................................10

Foreign Sovereign Immunities Act ...........................................1, 2, 5, 6, 7, 8, 9, 10, 12

**Miscellaneous**

*In re Chinese Manufactured Drywall Prods. Liab. Litig.*,
  No. 18-90013, Doc. No. 00514397054 (5th Cir. filed Mar. 22, 2018) ......................6

China New Building Materials Group respectfully submits this memorandum in opposition to the PSC's motion to certify an interlocutory appeal, pursuant to 28 U.S.C. § 1292(b), of this Court's order holding CNBM Group immune from suit under the Foreign Sovereign Immunities Act (FSIA).

## I.     INTRODUCTION

Nearly 2½ years after this Court issued its FSIA Order, the PSC asks this Court to certify that order for "immediate" appeal.  To call this request tardy doesn't nearly do it justice.  When the order issued in March 2016, President Obama was just about to visit Cuba.  Since that time, there has been a presidential election.  Brexit.  The Olympics in Rio de Janeiro.  The Syrian refugee crisis.  The Orlando nightclub shooting.  The hurricane in Puerto Rico.  Allegations against Harvey Weinstein.  The Olympics in South Korea.  And more than a thousand separate docket entries since the FSIA order issued—1,579, as of this writing.

Had the PSC made this motion 2½ *months* after the FSIA order issued, there might be grounds to debate its timeliness.  But the PSC does not identify a single case, under any circumstances, in which a court granted a request as untimely as this one.

That extraordinary delay, among other factors, explains why the requirements for certifying an immediate appeal under § 1292(b) have not been satisfied.  *First*, granting certification would not materially advance the litigation.  The PSC is incorrect that this appeal would proceed in tandem with the personal jurisdiction appeal.  On the contrary, as a result of the PSC's delay in bringing this motion, an appeal of this order would be many, many months behind the currently pending appeal—as the PSC elsewhere acknowledges.  Accordingly, there is nothing to be gained by having the FSIA order reviewed now, rather than after final judgment from the first set of trials, which are slated for just a few months from now.

*Second*, the PSC has not identified a controlling question of law.  Rather, the motion

1

simply takes issue with the FSIA determination as a whole—i.e., "whether … CNBM Group[] was presumptively immune from prosecution and whether … either the commercial activity or tortious conduct exceptions to the FSIA applied to the company."  PSC Memorandum In Support of FSIA Appeal ("PSC Mem.") at 11.[1]  But those ultimate questions are not the stuff of an appeal under § 1292(b), and whether the FSIA exceptions apply is fact-dependent.  Indeed, the factual nature of the question the PSC seeks to raise is made clear on the very next page of its motion, which discusses having the Fifth Circuit review whether a "singular averment" can support an FSIA finding in the face of "substantial controverting evidence."  PSC Mem. at 12 (emphasis added).  But the weight to be given the PSC's supposedly "substantial controverting evidence" is not a question of law.  And, further demonstrating the factual nature of the PSC's request, even now it asks the Court to rely on additional documents and sources.

        For all of these reasons, the motion should be denied.

## II.    ARGUMENT

        Interlocutory appeals "do[] not lie simply to determine the correctness of a judgment." *Clark-Dietz & Assocs.-Eng'rs, Inc. v. Basic Constr. Co*., 702 F.2d 67, 68 (5th Cir. 1983); *see also Ryan v. Flowserve Corp*., 444 F. Supp. 2d 718, 724 (N.D. Tex. 2006).  Rather, to certify an appeal under 28 U.S.C. § 1292(b), a court must find that an "order involves [1] a controlling question of law [2] as to which there is substantial ground for difference of opinion and that [3] an immediate appeal from the order may materially advance the ultimate termination of the litigation."  *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 251-52 (1992); *In re First Fin. Dev. Corp*., 960 F.2d 23, 25 (5th Cir. 1992).  In addition, like any other filing, a request for interlocutory review must be timely.  And the PSC, as the moving party, bears the burden of

---

[1] There is no docket number for the PSC's sealed filing.  The redacted version can be found at Rec. Doc. 21533-1.

demonstrating that an interlocutory appeal is appropriate.  *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, No. 07-md-1873, 2008 WL 4923035, at *2 (E.D. La. Nov. 13, 2008). Plaintiffs' request for certification fails to satisfy any of these criteria.

> **A.     The Motion Should Be Denied Due To The PSC's Undue Delay, And Granting This Belated Request Would Not Materially Advance The Litigation.**

As a threshold matter, "the request for certification [must] 'be filed in the district court within a reasonable time after the order sought to be appealed.'"  *Oasis Research, LLC v. Carbonite, Inc.*, No. 10-cv-435, 2015 WL 12829617, at *2 (E.D. Tex. June 11, 2015) (quoting *Ahrenholz v. Bd. of Trs. of Univ of Ill.*, 219 F.3d 674, 675-76 (7th Cir. 2000)).  Courts rarely if ever will certify an appeal if the moving party has delayed more than a few months.  Thus, after extensively surveying the caselaw, one court explained that "[d]elays longer than three months have generally been found to be untimely and motions to certify interlocutory appeals have been denied."  *Abbey v. United States*, 89 Fed. Cl. 425, 430 (2009); *see Richardson Elecs., Ltd. v. Panache Broad. of Pa., Inc.*, 202 F.3d 957, 958 (7th Cir. 2000) (certification denied after 2-month delay); *Oasis Research*, 2015 WL 12829617, at *2 (certification denied after 2½-month delay); *Oasis Research, LLC v. EMC Corp.*, No. 10-cv-435, 2015 WL 5318119, at *4 (E.D. Tex. Sept. 11, 2015) (certification untimely where "filed months after the Court's original decision").[2] "Even within the three-month window," moreover, "timeliness is not automatic."  *Abbey*, 89 Fed. Cl. at 430.  "[A] party must still articulate a reason for the delay."  *Id.*

---

[2] *See also Hypertherm, Inc. v. Am. Torch Tip Co.*, No. 05-cv-373, 2008 WL 1767062, at *1 (D.N.H. Apr. 15, 2008) (certification untimely after 3-month delay); *Gagan v. Sharer*, No. 99-cv-1427, 2006 WL 3736057, at *2 (D. Ariz. Nov. 6, 2006) (same; 15-month delay); *Green v. City of New York*, No. 05-cv-0429, 2006 WL 3335051, at *2 (E.D.N.Y. Oct. 23, 2006) (same; 2+ month delay); *In re Buspirone Pat. Litig.*, 210 F.R.D. 43, 49-50 (S.D.N.Y. 2002) (same; 3-month delay); *Fabricant v. Sears Roebuck & Co.*, No. 98-cv-1281, 2001 WL 883303 (S.D. Fla. Jan. 29, 2001) (same, 46-*day* delay); *Morton Coll. Bd. of Trs. v. Town of Cicero*, 25 F. Supp. 2d 882, 885 (N.D. Ill. 1998) (same. 30-*day* delay); *Ferraro v. Sec'y of U.S. Dep't of Health & Human Servs.*, 780 F. Supp. 978, 979 (E.D.N.Y. 1992) (same; two and a half month delay).

The PSC's certification request falls well outside the three-month window—*twenty-one months* outside of it.  The PSC does not even attempt to identify a case in which a similarly lengthy delay occurred, much less one in which the request was *granted*.  The closest that CNBM Group has been able to identify is the one-year delay that led the motion to be denied in *Abbey*.  Even there, the court explained that there are but "a few cases where a party has [even] *sought* certification of an interlocutory appeal" a year after the targeted order issued.  *Abbey*, 89 Fed. Cl at 431 (emphasis added).  And "in nearly every instance," the request for certification was *denied*.  *Id.*  The lone grant occurred in *Aparicio v. Swan Lake*, 643 F.2d 1109, 1113 (5th Cir. Unit A 1981).  But those were exceptional circumstances:  The district court had to push the case to resolution because the District Court for the Canal Zone was set to be abolished.  *Id.*  There are no comparable circumstances here.

The PSC says that this question didn't become "ripe for consideration" until the Fifth Circuit accepted interlocutory appeal of this Court's personal jurisdiction order and the Supreme Court decided *Animal Science Products, Inc. v. Hebei Welcome Pharmaceutical Co.*, 138 S. Ct. 1865 (2018).  Neither remotely justifies the tardiness of this motion.

Start with *Animal Science Products*.  Simply put, that case has nothing to do with this one.  The PSC says that the Supreme Court "demonstrated a distrust and unease with the Chinese government's pronouncements of its own laws."  PSC Mem. at 12.  It did nothing of the sort, and it certainly didn't establish some such legal principle that governs here.  On the contrary, as the PSC has to acknowledge, the Supreme Court held that "a federal court should accord respectful consideration to a foreign government's submission."  *Animal Sci. Prods.*, 138 S. Ct. at 1869; *see* PSC Mem. at 13.  That hardly amounts to "distrust."  In reaching that conclusion, the Court rejected the approach of the Second Circuit, which held that it was "'bound to defer'" to a

statement by a foreign government.  *See Animal Sci. Prods.*, 138 S. Ct. at 1869.  But that's not what this Court did.  This Court did not blindly defer.  Rather, this Court determined that the evidence showed that CNBM Group satisfies the standards for immunity from suit.

Nor is there any merit to the claim that it was only after the Fifth Circuit granted permission to appeal the personal jurisdiction order that an interlocutory appeal of the FSIA order became "the most efficient means of resolving the ultimate termination of this litigation."  PSC Mem. at 2.  The suggestion that it would have been "premature" to seek an interlocutory appeal at any earlier time is upside-down.  If the FSIA order concerned a controlling issue of law and would help to facilitate the prompt resolution of the litigation, that would've been every bit as true the day the order was issued.  And if, as the PSC now says, its purpose was to seek the simultaneous resolution of all jurisdictional issues, it could have promptly sought certification after this Court issued its personal jurisdiction order—*in April 2017*.  It could have sought certification of the FSIA order when CNBM and the BNBM Entities moved to certify the personal jurisdiction order—in May 2017.  It could have sought certification when this Court granted Defendants' §1292(b) request, or when Defendants sought review in the Fifth Circuit—both in August 2017.  Instead, the PSC opposed review at every turn.  *See, e.g.*, Rec. Doc. 20898-1.

But that's not all.  If the PSC really were serious about simultaneous appellate review of the FSIA order and the personal jurisdiction order, there were many more opportunities for it to have sought just that.  Recall that the PSC initially persuaded this Court to withdraw its certification request.  Rec. Doc. 20927.  That led to numerous other opportunities to seek consolidated review.  The PSC could have done so in December 2017 (when Defendants renewed their certification request), or in March 2018 (when this Court recertified the order for

appeal, and Defendants sought review in the Fifth Circuit). Rec. Docs. 21095-1, 21231, *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, No. 18-90013, Doc. No. 00514397054 (5th Cir. filed Mar. 22, 2018). The PSC did nothing then, or even during the four-month period that Defendants' certification request was pending in the Fifth Circuit. Instead, it continued to fight certification at every step of the way.

As a consequence of this protracted delay, the PSC's certification motion would create little if any efficiency, and thus would not materially advance the litigation.

Even the PSC has to acknowledge that any FSIA appeal would have to be resolved by a different Fifth Circuit panel than the one that will hear the personal jurisdiction appeal. PSC Mem. at 16. That plainly is correct. In the personal jurisdiction appeal, record designations are due in days, with merits briefing to follow soon thereafter. If the timeline for the personal jurisdiction appeal is any indication, even an immediate certification decision by this Court wouldn't lead to an order from the Fifth Circuit on certification before next January, with briefs not due until Spring 2019. Put another way—the only thing that has happened here is that the PSC has sought certification, but the equivalent event occurred with regard to the personal jurisdiction order some eight months ago. There are no efficiencies to be gained.

## B.    The PSC Identifies No Controlling Question Of Law.

Section 1292(b) is designed to allow immediate review of controlling questions of *law*—"as opposed to a question of fact or matter for the discretion of the trial court." *Garner v. Wolfinbarger*, 430 F.2d 1093, 1097 (5th Cir. 1970). Thus, interlocutory review is inappropriate when answering the question posed by the moving party "would require the court to apply law to the particular facts of the case and thus to take a deep dive into this case's voluminous record." *Drummond Co. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1337 (11th Cir. 2018); *see also*

6

*Pemex Exploración Y Producción v. Big Star Gathering Ltd.*, No. 10-cv-1997, 2014 WL 12596522, at \*11 (S.D. Tex. Feb. 11, 2014) ("Fact review questions are inappropriate for § 1292(b) review."); *Swank v. L & J Tr.*, No. 10-cv-366, 2010 WL 2218181, at \*3 (W.D. La. May 28, 2010) (declining to certify under § 1292(b) where the issue was "heavily fact-based," and "necessarily involve[s] a review of the factual record").   That is precisely what the PSC's request would require.

The PSC seeks to have the Fifth Circuit review "whether the State-Owned Enterprise, CNBM Group, was presumptively immune" and "whether Plaintiffs had failed to establish either the commercial activity or tortious conduct exceptions to the FSIA applied to the company." PSC Mem. at 11.  Nowhere does the PSC explain how this is a controlling question of law, which it plainly is not.  This is just an assessment of whether the facts support the claim of immunity.  Indeed, elsewhere the PSC itself characterizes the issue as whether this Court properly found immunity "based on the singular averment of Mr. Cao that CNBM Group 'is directly and wholly owned by the State …' when *substantial controverting evidence* was before the Court." *Id.* at 12 (emphasis added).  That, on its face, is a quintessentially fact-based inquiry; indeed, much of the PSC's motion is devoted to facts.  PSC Mem. at 3-10.  Among other things, the PSC relies upon alleged instructions from CNBM Group to Taishan on litigation strategy, and an affidavit from Russ Herman.  *Id.* at 5-6, 13 n.32.  The PSC's supplemental motion also now includes "newly translated documents" that, the PSC now claims, demonstrate the inapplicability of the FSIA.  Rec. Doc. 21645-2 at 2.  These factual submissions only demonstrate the inappropriateness of review under § 1292(b).

Ultimately, the PSC's request looks just like the one rejected by the Fifth Circuit in *Clark-Dietz*.  There, the petitioner proposed that the Fifth Circuit review "whether the finder of

fact can render a decision contrary to uncontradicted expert testimony." 702 F.2d at 69. As the Fifth Circuit explained, that "is hardly an unusual question or one on which there appears to be substantial dispute." *Id.* Accordingly, it is "merely [a] fact-review question inappropriate for § 1292(b) review." *Id.* Likewise, whether this Court properly relied on the testimonial statement of a particular witness in the context of other evidence presents no controlling question of law. As in *Clark-Dietz*, the petition should be denied.

### C.   The Court's FSIA Order Presents No Issue Over Which There Is A Substantial Ground For Difference Of Opinion.

"A substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed." *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011). "Stated another way, when novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions, a novel issue may be certified for interlocutory appeal …." *Id.*

This Court's FSIA order relied upon bedrock principles of sovereign immunity over which there can be little disagreement. It identified and applied the FSIA's governing statutory framework, and did so by relying on binding Supreme Court and Fifth Circuit authority. Rec. Doc. 20150 at 21. Specifically, this Court began by explaining that an entity qualifies as an agency or instrumentality of a foreign state under 28 U.S.C. § 1603(b)(2) if "a majority of its shares or other ownership interest is owned by a foreign state or political subdivision thereof." *Id.* at 21-22. It cited *Dole Food Co. v. Patrickson*, 538 U.S. 468, 477 (2003), which held that "[m]ajority ownership by a foreign state, not control, is the benchmark of instrumentality status." *Id.* at 22. This Court buttressed that settled understanding by reference to governing Fifth Circuit authority. *Id.* (citing *Hester Int'l Corp. v. Fed. Republic of Nigeria*, 879 F.2d 170, 176 n.5 (5th Cir. 1989) ("NGPC is clearly an 'agency or instrumentality' of Nigeria for purposes of the FSIA,

because Nigeria owned 100% of NGPC's stock") and *Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A.*, 875 F.2d 1174, 1176 (5th Cir. 1989)).  Applying this well-established framework to the facts of this case, this Court held that CNBM Group is an instrumentality of the Chinese Government and presumptively immune from suit. *Id.* at 22.

The PSC now suggests, citing *Dole Food*, that SASAC has an intervening ownership interest that precludes a finding of sovereign immunity:  The "People's Republic of China ('PRC') itself did not directly own CNBM Group, rather SASAC owned the company."  PSC Mem. at 8.

But the PSC never properly preserved this argument, which therefore cannot be a basis for interlocutory review.  The relationship between the People's Republic of China and CNBM Group has been front and center in the briefing about the FSIA, and the PSC itself has claimed that SASAC was involved in these events (as evidenced by the fact that plaintiffs named SASAC itself as a defendant in certain cases).  Indeed, the PSC's opposition brief regarding the FSIA mentioned SASAC—but didn't even mention the argument that the PSC now is making, and actually minimized SASAC's role.  Rec. Doc. 19689 at 94 ("SASAC does not exercise day-to-day control over" CNBM Group).  Because the PSC's briefing failed to make this argument, the argument is waived, and certainly is no basis for an interlocutory appeal.  *See CEF Funding, L.L.C. v. Sher Garnder Cahill Richter Klein & Hilbert, L.L.C.*, No. 09-cv-6623, 2011 WL 1792691, at *4 n. 8 (E.D. La. May 9, 2011) ("plaintiff waived its argument by failing to raise it at the appropriate time"); *see also United States v. Thibodeaux*, 211 F.3d 910, 912 (5th Cir. 2000) (failure to raise an issue on appeal waives it).

Moreover, this is neither a controlling question of law nor subject to debate.  First, this is not a controlling question of law because the relationship between the PRC, SASAC, and CNBM

Group is fact-dependent.  And as this Court already has found, CNBM Group "was, at the time

this suit was filed[,] directly and wholly owned by the People's Republic of China."  Rec. Doc.

20150 at 22.  The PSC now purports to offer new evidence, but it is simply wrong:  Chinese law

makes clear that SASAC is simply delegated the power to act on behalf of the government in its

ownership of certain enterprises.  *See* Rec. Doc. 19329-1 at 10 (Law of the People's Republic of

China on the State-Owned Assets in Enterprises, articles 3, 4, 11); *see also id.* at 4.  And CNBM

Group's own Articles of Incorporation confirm this.  *See* Rec. Doc. 19527-6 at Ex. B at 31

(Article 13).  But more to the point, a factual dispute does not fall within the purview of

§ 1292(b).  *See supra* 6-7.  And indeed, a *new* factual dispute is even *less* amenable to review for

the first time on appeal.

       Second, the PSC's supposed evidence that SASAC owns CNBM Group does not change

anything.  That is because SASAC is a government commission of the PRC,[3] and so even if it

were true that SASAC owns CNBM Group—which it does not—the legal answer still would be

the same:  CNBM Group is an instrumentality of the Chinese Government and presumptively

immune from suit.  Rec. Doc. 20150 at 22.

       That conclusion is dictated by application of settled immunity law.  Under the FSIA, a

governmental entity is a "foreign state" or "political subdivision" (and therefore treated as the

foreign state itself, *see* 28 U.S.C. § 1603(a), 1605(a), (b)(2)), if the "nature of its 'core

functions'" are "governmental" rather than commercial.  *Magness v. Russian Fed'n*, 247 F.3d

609, 613 n.7 (5th Cir. 2001).  That plainly is true here.  Start with the title: "State-owned Assets

---

[3] *See* Rec. Doc. 19329-1, at 4 (Memorandum from Dr. Xu Hong, Director-General, Department of Treaty and Law, Ministry of Foreign Affairs of the PRC to Ms. Mary Mcleod, Acting Legal Advisor, U.S. Department of State) ("SASAC is one of the ministries and commissions composing the Chinese central government, just like the Ministry of Foreign Affairs, Ministry of Finance, and other ministries and commissions in China.").

Supervision and Administration Commission *of the State Council*."  In short, SASAC is a

government commission operating under the State Council of the PRC.  *See also* Rec. Doc.

19527-6 at Ex. 1 (Cao Dec.) ¶ 7.[4]  The record establishes that SASAC is "an integral part of the

Chinese government."  Rec. Doc. 19329-1 at 1, 3; *see also supra* n.3 and accompanying text

(SASAC acts on behalf of government entities that invest in state-owned enterprises).

 In short, SASAC's core functions are plainly governmental.  *See* Rec. Doc. 19329-1 at 5

("As an integral part of the central government, SASAC is a governmental body funded by the

state treasury ….").  Much like the Bureau of Land Management and National Park Service

(entities within the Department of the Interior) administer and manage federal lands, SASAC

manages state-owned enterprises, including CNBM Group.  *See* Rec. Doc. 19527-6 at Ex. 1 (Cao

Decl.) ¶7; *id.* at Ex. B. art. 13; Rec. Doc. 19527-12 at Ex. C art. 64; *id.* at Ex. D arts. 4, 12.  As

multiple courts have recognized, "hold[ing] and administer[ing] the property of the [foreign]

state [is] indisputably governmental."  *Singh ex rel. Singh v. Caribbean Airlines Ltd.*, 798 F.3d

1355, 1359 (11th Cir. 2015) (alterations in original) (quoting *Garb v. Republic of Poland*, 440

F.3d 579, 594 (2d Cir. 2006)); *Compagnie Noga D'Importation et D'Exportation S.A. v. Russian

Fed'n*, 361 F.3d 676, 687 (2d Cir. 2004) ("'a public financial entity which coordinate[d] the

management of the commercial enterprises of the Italian Government[]' was a political

subdivision") (first alteration in original) (quoting *O'Connell Machinery Co. v. M.V.

"Americana,"* 734 F.2d 115, 116 (2d Cir. 1984)); *see also First Nat'l City Bank v. Banco Para

El Comercio Exterior de Cuba*, 462 U.S. 611 (1983).  Thus, SASAC is treated the same as the

---

[4] For that reason alone, this is utterly unlike *Dole Food*, where the company seeking sovereign immunity (the Dead Sea Companies), was owned not by the State of Israel, but rather separated by multiple layers of separately incorporated companies.  538 U.S. at 473-74.  The equivalent here might be Taishan, which of course has not even claimed foreign sovereign immunity.  And in *Dole Food*, the subsidiaries did not even argue that "the corporate parent was itself a political subdivision."  *Singh*, 798 F.3d at 1360.

PRC for purposes of § 1603(b)(2).  And majority ownership by a foreign state or political subdivision renders a corporation immune from suit under the FSIA.  28 U.S.C. § 1603(b)(2) (requiring that an instrumentality be majority owned "by a foreign state or political subdivision thereof"); *Singh*, 798 F.3d at 1358.

There are no unsettled legal principles here meriting immediate review—only factual disputes that the PSC tries to create with new submissions at this late date.

## III.    CONCLUSION

For the foregoing reasons, this Court should deny the motion.

Dated:   August 27, 2018

Respectfully submitted,


*/s/ L. Christopher Vejnoska*

L. Christopher Vejnoska (CA Bar No. 96082)       Eric A. Shumsky (D.C. Bar No. 477926)
Eric Matthew Hairston (CA Bar No. 229892)        ORRICK, HERRINGTON & SUTCLIFFE LLP
ORRICK, HERRINGTON & SUTCLIFFE LLP               Columbia Center
The Orrick Building                              1152 15th Street NW
San Francisco, CA  94105                         Washington, D.C. 20005
T:  415-773-5700                                 T:  202-339-8400
Email:  cvejnoska@orrick.com                     Email:  eshumsky@orrick.com
        ehairston@orrick.com

James L. Stengel (NY Bar No. 1800556)
Xiang Wang (NY Bar No. 4311114)
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY, 10019
T:  212-506-5000
Email:  jstengel@orrick.com
        xiangwang@orrick.com

*Counsel for CNBM Group*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing pleading has been served on Plaintiffs'

Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail

and email and upon all parties by electronically uploading the same to File & Serve in

accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the

Clerk of Court of the United States District Court for the Eastern District of Louisiana by using

the CM/ECF System, which will send a notice of electronic filing in accordance with the

procedures established in MDL 2047 on this 27th day of August, 2018.

/s/ L. Christopher Vejnoska

L. Christopher Vejnoska (CA Bar No. 96082)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105
Tel:  415-773-5700
Fax: 415-773-5759
Email: cvejnoska@orrick.com