UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:  **CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL 2047** |
| | **SECTION "L"** |
| **This document relates to:** | **JUDGE ELDON FALLON** |
| *Elizabeth Bennett, et al v. Gebr. Knauf Verwaltungsgesellschaft, KG, et al* | |
| **Case No. 14-cv-2722** | **MAGISTRATE JOSEPH WILKINSON, JR.** |

**MEMORANDUM IN SUPPORT OF KNAUF INTERNATIONAL GMBH'S
12(b)(2) MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

**MAY IT PLEASE THE COURT:**

Defendant, Knauf International GmbH ("KI") through undersigned counsel, respectfully submits this memorandum of law in support of its Motion to Dismiss the Complaint of Plaintiffs against KI in its entirety and with prejudice.    The Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2) on the grounds that this Court lacks personal jurisdiction over KI as to the claims asserted against it in Plaintiffs' Fifth Amended Class Action Complaint (the "Fifth Amended Complaint"). Although the Court may defer on its ruling on personal jurisdiction at this time and address other motions, KI is hereby filing this motion to submit the defense and preserve it during the pendency of this action or until such time the Court

1

rules on the issue.  Any participation by KI in this litigation shall be under objection and subject to this personal jurisdiction defense.[1]

Plaintiffs bear the heavy burden of establishing that this Court has personal jurisdiction over KI.  Despite years of MDL discovery and litigation, Plaintiffs cannot establish personal jurisdiction over KI.  First, KI (a German company) does not have the requisite contacts in the United States, or with any of the Plaintiffs' home states where they allege injury (Texas, Louisiana, Mississippi, Alabama, and Florida) sufficient to establish personal jurisdiction over it in this matter.   Second, KI is a completely separate and distinct company from the other defendants, including the manufacturer and distributor of the alleged defective drywall, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), and it does not and did not manufacture, market, sell, or distribute drywall, including but not limited to the alleged defective drywall manufactured by KPT. Third, none of the other defendants, including KPT, were the actual or apparent agent of KI, and therefore,  personal jurisdiction cannot be imputed to KI.   Finally, the Court cannot maintain jurisdiction over the non-residents of Alabama under the recent Supreme Court decision in *Bristol Myers Squibb Co. v. Superior Court*, 582 U.S. __, 137 S. Ct. 1773 (2017). For these reasons and as more fully set forth below, the Court cannot exercise jurisdiction over KI, and otherwise KI is not liable for any of the allegations submitted by Plaintiffs in regards to the alleged defective KPT drywall. Accordingly, KI's motion to dismiss should be granted.

---

[1]Lack of personal jurisdiction arguments should be raised in a 12(b) motion rather than a motion for summary judgment under Rule 56.  *See, e.g. Heyward v. Pub. Hous. Admin.*, 238 F.2d 689, 694–95 (5th Cir. 1956). Courts have found that a defendant's participation in a case prior to the court's ruling on a dispositive motion does not waive his right to assert the defense of lack of personal jurisdiction if it was properly preserved (by raising in answer or in 12(b) motion*). See, e.g., Classic Motel, Inc. v. Coral Grp., Ltd.,* 149 F.R.D. 528, 532 (S.D. Miss. 1993).

# I.     BACKGROUND

## A.     *MDL 2047*

Since the inception of MDL 2047 in June of 2009, numerous cases have been consolidated, containing thousands of claims, over 20,000 record docs have been entered into the record, millions of documents exchanged in discovery, dozens of depositions have been taken here in the United States and in Germany, Hong Kong, and other locations,  over 30 Pretrial Orders have been issued, the Court has appointed steering committees and liaison counsel for plaintiffs, homebuilders, insurers, installers, and manufacturers; and it has presided over monthly status conferences, hearings, and several bellwether trials.[2]

The discovery throughout "revealed that the manufacturers of the drywall in question generally fell into two groups: Knauf  and Taishan."[3]  The Knauf entities include international manufacturers of building products, including drywall.   One such entity, is a Chinese company, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"),  and it manufactured, advertised, sold and distributed its Chinese drywall in the United States.

Thereafter, the Court presided over a bellwether trial in *Hernandez v. Knauf Gips KG*, Case No. 09-6050, involving a homeowner's claims against KPT for defective drywall.[4]  The Court found in favor of the plaintiff family in *Hernandez*,[5] issued a detailed Findings of Fact and Conclusions of Law.  In its Findings of Fact and Conclusions of Law, the Court specifically noted that Plaintiffs originally brought a number of claims against Defendant KPT and other named defendants involved with the Chinese drywall in their home; however, the Court later issued an order dismissing all defendants other than KPT without prejudice.[6] Notably, the Court

---

[2] *See* Order, R. Doc. No. 16570, pp. 3-4.
[3] Order, R. Doc. No. 16570, p. 4.
[4] *See* Findings of Fact and Conclusions of Law, R. Doc. No. 2713.
[5] *See* Judgment, R. Doc. No. 3012.
[6] Findings of Fact and Conclusions of Law, R. Doc. No. 2713, p. 4.

specifically found that "KPT manufactured and sold drywall contained in Plaintiffs' home."[7]
Further, the Court found as a matter of law that Defendant KPT was the manufacturer and seller
of drywall at issue in that case.[8]

In addition to issuing detailed findings of fact and conclusions of law following
*Hernandez*, the Court also approved a remediation protocol.[9]  Based on inspections, testing, and
analyses of the various drywall types by party experts and governmental agencies, including the
CPSC, and through the developed remediation protocol, Plaintiffs identified that the only
defective drywall manufactured by any of the Knauf manufacturing defendants was
manufactured by KPT, a Chinese company.[10]  Following implementation of this protocol by the
parties, in a notable breakthrough towards resolving the MDL litigation claims against Knauf, a
class action settlement agreement with plaintiffs was entered in December 2011.  The global,
class settlement agreement was "intended to resolve claims made in filed actions which arose out
of KPT Chinese drywall installed in properties in the United States."[11]  The Court granted
preliminary approval of this settlement agreement on January 10, 2012 (the "Knauf Settlement
Agreement"),[12] and the Court granted final approval of the Knauf Settlement Agreement on
February 7, 2013.[13]

In addition to the Knauf Settlement Agreement, numerous defendants in the chain-of-
commerce with distribution of KPT Chinese drywall have entered into class settlement
agreements, the effect of which settles almost all of the chain-of-commerce litigation.  This

---

[7] Findings of Fact and Conclusions of Law, R. Doc. No. 2713, p. 5 (citing R. Doc. No. 1438, ¶ 7).
[8] Findings of Fact and Conclusions of Law, R. Doc. No. 2713, p. 44.
[9] *See* Order, R. Doc. No. 16570, p. 4.
[10] *See* CDW Indicia Guide, Exhibit C-1, R. Doc. No. 12061-10, p. 3.
[11] Order, R. Doc. No. 16570, p. 6.
[12] Order, R. Doc. No. 16570, p. 6 (citing Order granting preliminary approval, R. Doc. 12138)).
[13] Order, R. Doc. No. 16570, pp. 20-21.

Court noted that, "[a]lthough the Court occasionally must deal with settlement administration and enforcement issues, the Knauf portion of this litigation is largely resolved."[14]

## B.    The Allegations of Plaintiffs' Fifth Amended Class Action Complaint

The Plaintiffs, Elizabeth Bennett, et al. (the "Bennett Plaintiffs"), filed their Fifth Amended Complaint on May 14, 2018,[15] asserting various claims for alleged damages based on Chinese drywall manufactured by KPT.[16]  Plaintiffs currently consist of 119 plaintiffs from five different states: Texas, Louisiana, Mississippi, Alabama, and Florida that did not timely file actions to be part of the Knauf Class Settlement Agreement.   Despite the nine years of MDL discovery and litigation identifying KPT as the manufacturer, advertiser, seller, and distributer of KPT Chinese Drywall, the Plaintiffs named eleven separate Knauf entities as Defendants in their Fifth Amended Complaint: "Gebrueder Knauf Verwaltungsgesellschaft, KG ('KI'); Knauf International GmbH ('Knauf International'); Knauf Insulation GmbH ('Knauf Insulation'); Knauf UK GmbH ('Knauf UK'); Knauf AMF GmbH & Co., KG ('Knauf AMF'); Knauf do Brasil, Ltd. ('Knauf Brasil'); PT Knauf Gypsum Indonesia ('Knauf Indonesia'); Knauf GIPS KG ('Knauf GIPS'); Knauf Plasterboard Tianjin Co., Ltd. ('Knauf Tianjin'); Knauf Plasterboard Wuhu Co., Ltd. ('Knauf Wuhu'); and Guangdong Knauf New Building Material Products Co., Ltd ('Guangdong Knauf')."[17]

The Bennett Plaintiffs' Fifth Amended Complaint asserts causes of action against the Knauf entities for (1) Negligence, (2) Negligence Per Se, (3) Strict Liability, (4) Breach of Express and/or Implied Warranty, (5) Redhibition (by Louisiana Plaintiffs Against Defendants), (6) Louisiana Products Liability Act (LPLA), (7) Private Nuisance, (8) Negligent Discharge of a

---

[14] Order, R. Doc. No. 20739, p. 6.
[15] The original complaint was filed on November 11, 2014 and listed 31 plaintiffs from Louisiana, Mississippi, Alabama and Florida.  See Original Complaint (Rec. Doc. 1 in Case No. 14-CV-2204, N.D. Ala.).
[16] Fifth Amended Class Action Complaint, R. Doc. No. 21334.
[17] Fifth Amended Class Action Complaint, R. Doc. No. 21334, Introductory paragraph, p. 1 n 1.

Corrosive Substance, (9) Unjust Enrichment, (10) Violation of Consumer Protection Acts, and (11) Equitable and Injunctive Relief and Medical Monitoring.[18]

The Plaintiffs allege generally that all of the named Knauf defendants are the "manufacturers of drywall located in plaintiffs' homes."[19] In particular, as to Defendant KI, the Bennett Plaintiffs allege that "Defendant KI is a foreign corporation doing business in several states including but not limited to Alabama, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Texas, and Virginia," that "KI is an investment holding company" and that a "parent corporation of Defendants KNAUF TIANJIN, KNAUF WUHU, AND GUANGDONG KNAUF."[20] In addition, the Bennett Plaintiffs allege that that KPT ("Knauf Tianjin"), Knauf Wuhu, and Guangdong Knauf ("and their employees") were the "actual agent and/or apparent agent[s]" of KI.[21]

### C.    KI is a German Holding Company and has Zero Contacts.

KI is a holding company. It does not design, manufacture, market, sell, or distribute any products in any countries.[22]    KI did not design, manufacture, market, sell, or distribute any gypsum-based products to the United States between 2005 and 2007.    KI does not design, manufacture, market, sell, or distribute any gypsum-based drywall products.[23] KI does not conduct any operations regarding the design, manufacture, marketing, distribution or sale of any products.[24]  KI does not conduct any operations in the United States or China.[25]

---

[18] Fifth Amended Class Action Complaint, R. Doc. No. 21334, ¶¶ 45-144.
[19] Fifth Amended Class Action Complaint, R. Doc. No. 21334, Introductory paragraph, p. 1.
[20] Fifth Amended Class Action Complaint, R. Doc. No. 21334, ¶ 9
[21] Fifth Amended Class Action Complaint, R. Doc. No. 21334, ¶¶ 18-21.
[22] Declaration of Jörg Schanow ¶ 14, attached as Exhibit A.
[23] Id. at ¶ 13.
[24] Id. at ¶ 16.
[25] Id. at ¶ 17.

KI is a German limited liability company with its principal place of business in Iphofen, Germany.[26]  KI's ultimate members are comprised of German limited partnerships.[27]  KI does not and has never had any partners based in Texas, Louisiana, Mississippi, Alabama or Florida.[28]  KI has never held any member or board of directors meetings in Texas, Louisiana, Mississippi, Alabama or Florida.[29]  None of KI's employees reside in Texas, Louisiana, Mississippi, Alabama or Florida.[30]  KI has never obtained loans or any other financing from banks, or any other source of financing, in the United States.[31]  KI has never owned or leased any assets or property in Texas, Louisiana, Mississippi, Alabama or Florida, and has never held a mortgage or lien on any real property within those states.[32]  KI does not host any of its corporate documents or records in the United States.[33]  KI has never been licensed or registered to conduct business in Texas, Louisiana, Mississippi, Alabama or Florida, has never sued anyone in those states, and has never contracted to obtain insurance in those states.[34]  KI has never paid taxes in Texas, Louisiana, Mississippi, Alabama or Florida.[35]

As has been previously determined by this Court and demonstrated through years of evidence in the MDL, KI (and the other named defendants other than KPT itself) were not involved in the manufacture, marketing, sale, or distribution of  KPT Chinese drywall that is the subject of this litigation.  In fact, KI has no contacts to Alabama, where the complaint was filed, or the individual plaintiff home states.  Through this Motion, KI demonstrates that it is not a proper party to this suit, that Plaintiffs have not established personal jurisdiction over KI, and

---

[26] *Id*. at ¶ 4.
[27] *Id*.
[28] *Id*. at ¶ 5.
[29] *Id*. at ¶ 6.
[30] *Id*. at ¶ 7.
[31] *Id*. at ¶ 8.
[32] *Id*. at ¶ 9.
[33] *Id*. at ¶ 10.
[34] *Id*. at ¶ 11.
[35] *Id*. at ¶ 12.

that they cannot establish any connection of KI with any of the operative facts that form the basis for Plaintiffs' claims.  For the reasons set forth more fully herein, this Court should dismiss all of the Bennett Plaintiffs' claims against KI.

## II.   LAW AND ARGUMENT

### A.   *Due Process Requirements.*

The Due Process Clause "operates to limit the power of a State to assert *in personam* jurisdiction over a non-resident defendant."[36] Due process requires that in order to subject a nonresident defendant to personal jurisdiction, the defendant must have certain minimum contacts with the forum state, such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.[37] The exercise of personal jurisdiction over a non-resident defendant comports with due process when a two-part test is satisfied: First, the defendant must have had certain minimum contacts with the forum state, and second, as a result of those contacts, the maintenance of the suit must not offend traditional notions of fair play and substantial justice.

The "constitutional touchstone" of the inquiry to determine if personal jurisdiction can be exercised is whether the defendant "purposefully established minimum contacts in the forum State."[38] The "minimum contacts" can be established by showing either specific jurisdiction or general jurisdiction.  Specific jurisdiction is established where the defendant has sufficient contacts relating to the underlying controversy with the forum state, while general jurisdiction is established when "the [defendant's] affiliations with the [forum] state are so continuous and

---

[36] *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 413–14, 104 S.Ct. 1868, 80 L. Ed. 2d 404 (1984).

[37] *Boatwright v. Metropolitan Life Ins. Co.,* 661 So.2d 169, 171 (La. App. 4 Cir. 1995)(*citing International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L. Ed. 95 (1945)); *de Reyes v. Marine Mgt. and Consulting,* 586 So.2d 103 (La. 1991).

[38] *Asahi Metal Ind. Co. v. Super. Ct.,* 480 U.S. 102, 108–09, 107 S.Ct. 1026, 94 L. Ed. 2d 92 (1987) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L. Ed. 2d 528 (1985)).

systematic as to render them essentially at home in the forum state."[39] General jurisdiction over an out of state corporate defendant may be found absent a finding of specific jurisdiction only if the corporation's contacts are "sufficiently continuous and systematic as to render them essentially at home in the forum state."[40] In defining what it means to be "at home", the *Daimler* Court held that "with respect to a corporation, *the place of incorporation and principle place of business are paradigm…bases for general jurisdiction.*"[41] Only in an "exceptional case" would personal jurisdiction lie elsewhere than one of those two locations.[42] If a defendant has relatively few contacts, a court may still exercise specific jurisdiction in a suit arising out of or related to the defendant's contacts with the forum.[43]

### B.    General Jurisdiction Does Not Exist.

KI is a German company organized and existing under the laws of Germany.[44] Its legal domicile is located in Iphofen, Germany.[45] KI has never owned any real estate in Texas, Louisiana, Mississippi, Alabama or Florida, has no employees in any of those states, and has never had an office or mailing address in any of those states.[46]  Furthermore, KI has no partners based in Texas, Louisiana, Mississippi, Alabama, or Florida and is not registered to do business in any of those states.[47]

---

[39] *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2851 (2011).
[40] *Id.*; *see also Daimler AG v. Bauman*, 571 U.S. 117, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014) (rejecting the notion that general jurisdiction is appropriate in every state in which a corporation engages in "substantial, continuous, and systematic course of business" as "unacceptably grasping").
[41] *Daimler*, 134 S. Ct. at 761-62 emphasis added).
[42] *Daimler*, 134 S. Ct. at 761, n. 19.
[43] *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 198 L. Ed. 2d 395 (2017).
[44] Declaration of Jörg Schanow ¶ 4, attached as Exhibit A.
[45] *Id.*
[46] *Id.* at ¶¶ 9 and 7.
[47] *Id.* at ¶¶ 5 and 11.

The *Daimler* test for an exceptional case is **not merely** "whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic.'"[48] It is "whether that corporation's 'affiliations with the state are so 'continuous and systematic' **as to render [it] essentially at home in the forum state… i.e. comparable to a domestic enterprise in that State.**"[49]

Furthermore, in *Daimler,* the Supreme Court of the United States expressly cautions against an expansive reading of what constitutes an exceptional case:

> [A] corporation that operates in many places can scarcely be deemed at home in all of them.  Otherwise, "at home" would be synonymous with "doing business" tests framed before specific jurisdiction evolved in the United States.[50]

The single example cited in *Daimler* for what constitutes an exceptional case, *Perkins v. Benguiet Consolidated Mining Co.,*[51] is wholly inapposite to the circumstances of KI in this case. *Perkins* involved a foreign corporation that had completely relocated to the forum state during World War II: the president maintained his office there, the company files were located there, and the company was supervised from the forum state.[52] Under those defined and limited circumstances, the Supreme Court held that the forum state was the company's "principal, if temporary place of business."[53]

Following *Daimler*, numerous federal courts, including the United States Fifth Circuit Court of Appeals on two occasions, have observed that "it is incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business."[54] Courts have found that because the paradigm bases for general jurisdiction are the

---

[48] *Daimler*, 134 S. Ct. at 761 (2014).
[49] *Id.* at 758, n. 11  (emphasis added).
[50] *Id.* at 762, n. 20.
[51] *Perkins v. Benguiet Consolidated Mining Co.*, 342 U.S. 437, 72 S.Ct. 413 (1952).
[52] *Id..* at 419.
[53] *Id.* at 419 (1952).
[54] *Monkton Ins. Services Ltd. v. Ritter*, 768 F.3d 429, 432-33 (5th Cir. 2014); *Whitener v. Pliva*,

place of incorporation and the principal place of business, "even a company's engagement in a substantial, continuous, and systematic course of business is alone insufficient to render it at home in a forum."[55]

KI does not have any contacts in the United States or with Texas, Louisiana, Mississippi, Alabama or Florida,[56] let alone the "continuous and systematic" contacts required for assertion of general jurisdiction.  As such, Plaintiff cannot satisfy the requirements of general jurisdiction in this matter.

### C.     Specific Jurisdiction Does Not Exist.

Plaintiffs also cannot satisfy the requirements of specific jurisdiction over KI.  Specific jurisdiction arises only where the allegations in the case stem from the defendant's contacts with the chosen forum.[57] Because there must be an affiliation between the forum and the underlying controversy, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction."[58]

There is a three-step analysis for the specific jurisdiction inquiry: (1) whether the defendant has minimum contacts with the forum state, *i.e.*, whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair

---

*Inc.*, 606 F. App'x 762, 765 (5th Cir. 2015); *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1205 (11th Cir. 2015); *Sonera Holding V.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014); *Kipp v. Ski Enterprise Corporation of Wisconsin, Inc.*, 783 F.3d 695, 698 (7th Cir. 2015); *Jones v. ITT Systems Division*, 596 Fed. App'x. 662 (8th Cir. 2015).

[55] *Sonera Holding*, 750 F.3d 221, 225 (2d Cir. 2014).
[56] Declaration of Jörg Schanow, attached as Exhibit A.
[57] *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 198 L. Ed. 2d 395 (2017).
[58] *Casso's Wellness Store & Gym, L.L.C. v. Spectrum Lab. Prod., Inc.*, No. CV 17-2161, 2018 WL 1377608, at *4 (E.D. La. Mar. 19, 2018) (*citing Bristol-Myers*, 137 S.Ct. at 1780 (2017)).

and reasonable.[59] The "purposeful availment" requirement ensures that the nonresident defendant will not be haled into a jurisdiction solely as a result of a random, fortuitous, or attenuated contact, **or by the unilateral activity of another party or a third person**.[60]

In determining whether a defendant has the necessary minimum contacts, this Court must find that the defendant's conduct shows that it "reasonably anticipates being haled into court" in Louisiana.[61] In defining when it is that a potential defendant should "reasonably anticipate" out-of-state litigation, the Supreme Court of Louisiana has frequently drawn from the reasoning of *Hanson v. Denckla*: "**The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State**." The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."[62] The minimum contacts requirement has not been satisfied as to KI, nor can it be based on the facts of this case.

Plaintiffs, as the party asserting jurisdiction, have the burden to establish minimum contacts. The Plaintiffs have the burden of demonstrating specific jurisdiction for each claim asserted against a nonresident defendant.[63] Unless the facts presented to the Court are sufficient to affirmatively show a basis for personal jurisdiction, the action should be dismissed.[64] On a

---

[59] *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006) (*quoting Nuovo Pignone, Spa v. Storman Asia M/V*, 310 F.3d 374 (5th Cir. 2002) (*citing Burger King*, 471 U.S. at 474, 105 S.Ct. 2174)).

[60] *A & L Energy, Inc. v. Pegasus Grp.*, 2000-3255 (La. 6/29/01), 791 So.2d 1266, 1271 (emphasis added).

[61] *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006) (*citing World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L. Ed. 2d 490 (1980)).

[62] *Hanson v. Denkla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–1240, 2 L. Ed. 2d 1283 (1958) (emphasis added).

[63] *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193 (5th Cir. 2016).

[64] *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994).

motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation.[65] In *Ashcroft v. Iqbal,* the United States Supreme Court stated:

> **[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions**. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation."[66]

"[T]the court does not accept as true legal conclusions or mere conclusory statements, and 'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'"[67]

### D. Plaintiffs Cannot Establish KI's Minimum Contacts or that Plaintiffs' Injuries were a Result of KI's Contacts in Texas, Louisiana, Mississippi, Alabama, or Florida.

Plaintiffs have not and cannot allege or establish sufficient facts to show that KI has minimum contacts with Texas, Louisiana, Mississippi, Alabama or Florida.  KI has not engaged in any activity by which it purposefully availed itself of the privilege of conducting activities within those States, thereby invoking the benefits and protections of the respective State's law.

Defendant KI was not the manufacturer, distributor, or seller of any drywall, much less the Chinese drywall at issue in the Bennett Plaintiffs' Fifth Amended Complaint.[68]  Nor did any other Knauf entity act as an agent or apparent agent of KI, such that KI might somehow be responsible for their actions.  After nearly ten years of discovery in the MDL on the same Chinese drywall at issue here, no evidence of KI's connection to the manufacture, marketing,

---

[65] *Valle v. Beauryne Builders LLC*, No. CV 17-274-SDD-RLB, 2018 WL 1463692, at *1 (M.D. La. Mar. 23, 2018)(emphasis added).

[66] *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79, 129 S. Ct. 1937, 1949–50, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007))(internal citations omitted) (emphasis added).

[67] *Carpenter v. Webre*, No. CV 17-808, 2018 WL 1453201, at *4 (E.D. La. Mar. 23, 2018)(quoting *Twombly* 550 U.S. at 570).

[68] Declaration of Jörg Schanow ¶¶ 13-16, attached as Exhibit A.

sale, or distribution of the Chinese drywall at issue has ever been discovered, been placed at issue, or determined by this or any Court.

To the contrary, the evidence demonstrates that named Knauf entities are separate legal entities,[69] and that only KPT produced, marketed, sold, and distributed the alleged defective Chinese drywall at issue.[70]  The evidence produced demonstrated that the problem with the defective drywall stemmed from the raw material (*i.e.*, gypsum) used to manufacture the drywall boards, which was collected from the Luneng Mine in China, the same mine that produced the Taishan drywall.[71]  KPT used this gypsum to manufacture the drywall boards.[72]  Each shipment of KPT drywall was shipped directly from China to the United States by KPT, arranged by their Director of Sales, Mark Norris, who directly marketed, negotiated, and transacted with the United States suppliers and/or third party brokers.[73]  KPT had only three customers in the United States that received KPT drywall shipments: L&W Supply Company ("L&W"), Rothchilt

---

[69] Although the usual method of establishing facts in a proceeding is through the introduction of evidence with the testimony of witnesses proffering documents to be admitted into evidence, a court may take judicial notice of adjudicative facts that are not subject to reasonable dispute  because they are (1) generally known within the trial court's territorial jurisdiction, or (2) can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  A court may take judicial notice, whether requested or not, at any stage in the proceeding. See Fed. R. Evid. 201(c) & (f).  "A court may take judicial notice of related proceedings and records in cases before the same court."  *MacMillan Bloedel Ltd. v. Flintkote Co.,* 760 F.2d 580, 587 (5th Cir. 1985) (citing *Missionary Baptist Foundation of America v. Huffman*, 712 F.2d 206, 211 (5th Cir. 1983); *see Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 420 (5th Cir. 2013) (affirming district court's judicial notice of the fact that the Macondo well had been capped on July 15, 2010 in Deepwater Horizon MDL in connection with ruling on district court's motion to dismiss); *see also Baldwin v. Local 843, Int'l Bhd. of Teamsters*, 562 F. Supp. 36, 38 (D.N.J. 1982) (taking judicial notice of court's own records concerning other proceeding concerning events surrounding matter at issue).

[70] *See* Exhibit H, Deposition of Manfred Grundke, at p. 225 (Knauf entities are independent legal entities); Exhibit I, Deposition of Martin Stuermer, at p. 712 (each Knauf entity is a separate corporation) & p. 727 (each Knauf entity maintains separate bank accounts).

[71] Exhibit B, Deposition of David Gregory, at p. 682 & pp. 247–48 (KPT used raw materials from Luneng mine to make KPT drywall from 2001 to end of 2006 but stopped sourcing raw materials from Luneng mine because of a "potential connection between the source of natural gypsum and this issue of boards reportedly smelling.").

[72] Exhibit H, Grundke Deposition, at p. 261 (KPT was ultimate authority with respect to Chinese drywall issue); *see* CDW Indicia Guide, Exhibit C-1, R. Doc. No. 12061-10, p. 3.

[73] Exhibit B, Gregory Deposition, at pp. 254-55 (Norris was in charge of sales, marketing, customer services and technical services for the Knauf East Asia entities).

International Limited (which was sold to Banner Supply Company in Florida), and Interior

Exterior Building Supply, L.P. ("INEX").[74]  The chain of supply continued as follows:

1.  Rothchilt International Limited, a broker, purchased the KPT drywall from KPT[75] and

    sold the KPT drywall to La Suprema Enterprise, Inc.[76]  La Suprema Trading, Inc. then

    invoiced Banner  Supply Company ("Banner") for the product and delivered it to

    Banner's warehouses.[77]  Banner sold and distributed the drywall to customers in the

    United States.[78]

2.  INEX purchased KPT drywall directly from KPT and distributed the drywall to

    customers in the United States.[79]

3.  L&W purchased the KPT drywall through a broker in Florida who purchased drywall

    from KPT.[80]

    KI had no part in the chain of supply or operational control over KPT, the Chinese entity

that produced, marketed, sold, and distributed the KPT drywall.[81]  KI does not sell KPT drywall

nor does KI supervise or impose standards on the manufacture of the drywall by KPT or

otherwise.[82]  KI is a German limited liability company with its principal place of business in

Iphofen, Germany.[83]  KI is a holding company.[84]  It does not design, manufacture, market, sell,

---

[74] Exhibit C, Deposition of Mark P. Norris, Vol. III ("Norris Depo. Vol. III"), at p. 876; *see* Exhibit D, KPT Defense Profile Form, at ¶ 4.

[75] *See* Exhibit E, Deposition of Mark P. Norris, Vol. I ("Norris Depo. Vol. I"), at pp. 98, 103–04.

[76] Exhibit F, La Suprema Enterprise, Inc. Profile Form (Salomon Abadi), at pp. 2–3; *see* Exhibit G, Banner Profile Form (Port St. Lucie), p. 1.

[77] *Id.*

[78] *Id.*

[79] Ex. E, Norris Depo. Vol. I, at pp. 119-120.

[80] Ex. E, Norris Depo. Vol. I, at pp. 163-164.

[81] Declaration of Jörg Schanow ¶ 18, attached as Exhibit A.

[82] *See* Ex. B, Gregory Depo., at p. 263-66 (Knauf East Asia had a separate quality control department); pp. 545-546 (German engineers did not control quality at facility and did not train personnel); p. 548 (KPT had professional lab to test raw materials and quality); p. 507–08 (KPT was responsible for testing incoming gypsum); and p. 176 (some German machinery is used in Knauf plants in China but standards are controlled locally); Declaration of Jörg Schanow ¶¶ 13-16, attached as Exhibit A.

[83] Declaration of Jörg Schanow ¶ 4, attached as Exhibit A.

or distribute any products in any countries.[85]   KI did not design, manufacture, market, sell, or distribute any gypsum-based products to the United States between 2005 and 2007.[86]   KI does not design, manufacture, market, sell, or distribute any gypsum-based drywall products.[87]   KI does not conduct any operations regarding the design, manufacture, marketing, distribution or sale of any products.[88]   KI does not conduct any operations in the United States or China.[89]

In a bellwether trial in this MDL, it was previously stipulated by parties as adopted by the Court that, among several Knauf entities, KPT was the manufacturer of the defective Chinese drywall, which in this MDL is limited to drywall manufactured in China.[90]   And, as noted above, it was previously established through discovery that the KPT drywall was the defective drywall at issue.   The Court may take judicial notice of these findings of fact as evidence in support of this Motion in addition to the evidence above supporting the fact that KI had no connection whatsoever with the manufacture or distribution (or any related actions) of the purportedly defective drywall in this case.   Together, this evidence demonstrates that KI did not have any part (as a principal or otherwise) in the manufacture, marketing, distribution, or sale of the alleged defective KPT Chinese drywall at issue in this case.   In short, KI has no involvement with the manufacture, marketing, sale or distribution of KPT drywall, and it has no contacts whatsoever based on its own conduct with the state of Alabama or any of the Plaintiffs' home states.

---

[84] *Id*. at ¶ 13.
[85] *Id*.
[86] *Id*. at ¶ 14.
[87] *Id*. at ¶ 15.
[88] *Id*. at ¶ 16.
[89] *Id*. at ¶ 17.
[90] *See* Findings of Fact, Conclusions of Law, R. Doc. No. 2713, p. 44.

### E.   KI Does Not Have an Agency Relationship with KPT, or the Other Defendants that Would Allow the Imputation of Personal Jurisdiction.

Whether a company is an agent or an apparent agent is a legal question. Plaintiffs' allegations against KI are based on Plaintiffs' incorrect assumption that KPT, Knauf Insulation, or other defendants are the agent or apparent agent to KI.  The Supreme Court has recognized, "[a]gencies … come in many sizes and shapes" such that "[o]ne may be an agent for some business purposes and not others so that the fact that one may be an agent for one purpose does not make him or her an agent for every purpose."[91]  Accordingly, courts must assess the agency relationship to determine whether a principal "purposefully availed itself of a forum by directing" an agent to engage in the activity giving rise to the claim.[92]

*Bristol-Myers* clarified any lingering uncertainty regarding the scope of the agency inquiry.[93]  It is not enough to simply show that a relationship exists between two companies.[94] Or even that they have engaged in extensive interactions.[95] Just as a plaintiff must demonstrate that his claim arises out of the defendant's contacts with the forum state, when the jurisdictional theory turns on an agency relationship, the Plaintiffs must demonstrate that their claim arises out of an agency relationship connected with the forum state.

As set forth above, KPT (and the other defendants) are **not** the agent or apparent agent to KI, and KI has not otherwise engaged in any activities in Texas, Louisiana, Mississippi, Alabama or Florida that could subject them to the jurisdiction of this Court. Moreover, as the question of whether or not KPT (or any other defendant) is the agent or apparent agent to KI is a **legal question**, Plaintiffs' statements to that effect cannot be taken as true and should not be construed

---

[91] *Daimler AG v. Bauman*, 134 S. Ct. 746, 759 (2014).
[92] *Id*. at 759 & n.13.
[93] *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 198 L. Ed. 2d 395 (2017).
[94] *Id*. at 1781.
[95] *Id*.

in Plaintiffs' favor in deciding this Motion.  Furthermore, throughout all the discovery, evidence, and litigation in this MDL,  there has never been a finding that any defective drywall contained in residents' homes specifically resulted from KI's alleged agency relationship with KPT.[96]  In fact, as set forth above, what has been confirmed is that KPT, KI, and all the other named defendants are separate and distinct legal entities, and it was KPT that manufactured, marketed, distributed and sold the alleged defective Chinese drywall.

In order for the Court to have jurisdiction over KI as a result of KPT's (or another defendant's) contacts in the Plaintiffs' respective states, the Court would have to impute the alleged contacts to KI.  The fact that KI is a parent holding company with the Knauf entities is irrelevant to the determination of jurisdiction as to acts of KPT (or any other defendant).  Federal courts have acknowledged that "the mere existence of a parent-subsidiary relationship will not support the assertion of jurisdiction over a foreign parent" although there may be instances in which the parent so dominates the subsidiary that 'they do not in reality constitute separate and distinct corporate entities….'"[97]

In *Hargrave v. Fibreboard Corp.*, the Fifth Circuit considered the following factors in determining whether a parent's control exceeded the norm:  1) the parent owned 100% of the subsidiary's stock; 2) the two corporations had separate headquarters; 3) they had no common officers and only one common director; 4) they observed corporate formalities; 5) they maintained separate accounting systems; 6) the parent exercised complete authority over general policy; and 7) the subsidiary exercised complete authority over daily operations, including

---

[96] To be clear:  BNBM here challenges, under *Bristol-Myers*, the Court's agency finding under Florida and Virginia law.  It has separately challenged (and continues to challenge) the Court's finding of jurisdiction concerning its alleged direct drywall sales to Florida homeowners.

[97] *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1363 (5th Cir. 1990) (*quoting Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983) (citations omitted)).

research and development, marketing, and supply.[98]   Applying this to the imputation of personal

jurisdiction, the Fifth Circuit stated:

> [S]o long as a parent and subsidiary maintain separate and distinct corporate
> entities, the presence of one in a forum state may not be attributed to the
> other….Generally, **our cases demand proof of control by the parent over the
> internal business operations and affairs of the subsidiary in order to fuse the
> two for jurisdictional purposes**…. The degree of control exercises by the parent
> must be greater than that normally associated with common ownership and
> directorship…. All the relevant facts must and circumstances surrounding the
> operations of the parent and subsidiary must be examined to determine whether
> two separate and distinct corporate entities exist.[99]

None of the requirements for imputing jurisdiction based on an agency theory have been

sufficiently alleged or satisfied as to KI.  Further, after 9 years of discovery, Plaintiffs cannot

submit or establish any facts that would support such an agency conclusion under *Hargrave*.

Because no showing has been made—nor can be made—to demonstrate that KI engaged KPT, or

any other defendant in an agency relationship that purposefully resulted in the manufacture, sale,

and distribution of KPT Chinese drywall to the named Plaintiffs in Texas, Louisiana,

Mississippi, Alabama and Florida, those claims must be dismissed as to KI.

### F.    The Exercise of Jurisdiction Over KI Would be Unfair and Unjust.

The Court should decline to exercise personal jurisdiction over KI, because to do so

would offend traditional notions of fair play and substantial justice.[100]   In determining whether to

exercise jurisdiction, courts must weigh the burden on the non-resident defendant of defending

an action in Texas, Louisiana, Mississippi, Alabama or Florida against the interests of the state

---

[98] *Hargrave*, 710 F.2d at 1160.

[99] *Id.* at 1160 (internal quotations and citations omitted) (emphasis added).  *See also Dickson Marine, Inc. v. Palanpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999) ("Courts have long presumed the institutional independence of related corporations, such as parent and subsidiary, when determining if one corporation's contacts with a forum can be the basis of a related corporation's contacts"; the presumption may be overcome by "clear evidence"); *See also Southmark Corp. v Life Investors, Inc.*, 851 F.2d 63, 773-74 (5th Cir. 1988) ("it is well settled that where … a wholly owned subsidiary is operated as a distinct corporation, its contacts with the forum cannot be imputed to the parent").

[100] *Burger King*, 471 U.S. at 474-475 (1985).

and the judicial system in adjudicating the dispute.[101]   Other considerations include the unique

burdens placed upon the defendant who must defend himself in a foreign legal system,[102] and the

determination must be made in light of the "quality, nature, and extent" of any activity by the

non-resident defendant.[103]   The factors weigh heavily against the exercise of personal jurisdiction

over KI.  The burden of a non-manufacturer, holding company, litigating a product liability case

in Texas, Louisiana, Mississippi, Alabama and/or Florida would be substantial as KI does not

manufacture any products, and all of its partners and employees are located outside of the United

States.[104]   This conclusion is buttressed by the "quality, nature, and extent" of KI's activities in

those states, which are wholly non-existent.  Accordingly, the Court should decline to exercise

personal jurisdiction over KI in this case.

G.      **The Court Must Dismiss Claims Brought by Plaintiffs Outside of Their States of Residency.**

Plaintiffs filed their complaint in Alabama without regard to the individual residency of

the 119 plaintiffs.  Plaintiffs have not articulated any basis in the Complaint by which the

nonresidents of Alabama may be permitted to bring suit against KI, or any of the other

defendants, in a state other than that in which each property is located.[105]   This multi-state

complaint is impermissible under the recent decision by the Supreme Court in *Bristol Meyers*.

There, as here, a contingent of plaintiffs from various states elected to file in a jurisdiction other

those in which they were residents.[106]  They had no basis for asserting general, personal

---

[101] *Frisella v. Transoceanic Cable Ship Co.*, 181 F. Supp. 2d 644, 677 (E.D. La. 2002).

[102] *Asahi Metal Co. v. Super. Ct.*, 480 U.S. 102, 114-15 (1987).

[103] *Growden v. Ed Bowlin & Assocs.*, 733 F.2d 1149, 1151 n. 1 (5th Cir. 1984).

[104] Declaration of Jörg Schanow, attached as Exhibit A.

[105] Although styled as a class action complaint,  "[t]he upshot of [Bristol-Myers] is that plaintiffs cannot join their claims together and sue a defendant in a State in which only some of them have been injured." 137 S. Ct. 1733, 1788 (2017) (Sotomayor, J., dissenting) (emphasis added).  *Bristol-Myers* dictates that, absent general jurisdiction, "plaintiffs who are injured in different States by a defendant's nationwide course of conduct [cannot] sue that defendant in a single, consolidated action." *Id.* at 1784.

[106] *Id*. at 1778.

jurisdiction. Relying on specific jurisdiction, the nonresident plaintiffs attempted to bootstrap onto the claims of in-state residents and capitalize on Bristol Myers' general business dealings within California.[107] Those, the Supreme Court found, were inadequate grounds for finding specific jurisdiction over Bristol Myers as to the nonresidents' claims.[108]

There is no general jurisdiction because KI (nor any of the other named defendants) can "fairly [be] regarded as being at home" in Texas, Louisiana, Mississippi, Alabama or Florida.[109] Thus, jurisdiction here must be based on specific jurisdiction. Specific jurisdiction, of course, "is confined to adjudication of  issues deriving from, or connected with, the very controversy that establishes jurisdiction."[110]   But, as noted, Plaintiffs have not alleged a theory for invoking personal jurisdiction over KI or the other defendants on behalf of nonresident plaintiffs. The only available arguments for why a state has specific jurisdiction over claims brought by nonresident homeowners are those the Supreme Court rejected in *Bristol-Myers*. Thus, there is no "connection between the forum [states] and the [nonresidents'] specific claims at issue" and no jurisdiction over the nonresidents' claims.[111]

To hold otherwise would be to adopt just the sort of "loose and spurious form of general jurisdiction" that the Supreme Court rejected in *Bristol-Myers*.[112] Accordingly, this Court should

---

[107] *Id*. at 1781.

[108] *Id*. at 1782.

[109] *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).

[110] *Bristol-Myers*, 137 S. Ct. at 1780 (*citing Goodyear*, 564 U.S. at 919).

[111] *Id*. at 1781; *see also, e.g.*, *Oliver v. Ethicon*, 12- cv-06950, 2017 WL 3193652, at *3 (S.D.W. Va. July 27, 2017) (relying on *Bristol-Myers* to dismiss defendant for lack of specific jurisdiction from product liability MDL filed in Minnesota because "the record indicate[d] no connection between the mesh product implanted in the plaintiff in Arkansas and Ethicon's mesh products sold in Minnesota"); *Ergon Oil Purchasing, Inc. v. Canal Barge Co., Inc.*, No. 16-cv-5884, 2017 WL 2730853, at *5 (E.D. La. June 26, 2017) (post-*Bristol Myers* dismissal of nonresident defendant where plaintiff's "general assertions—without a specific evidentiary tie to [the Louisiana company co-defendant] and the barge cleaning services in question—[we]re insufficient evidence of specific jurisdiction"). Although *Bristol-Myers* left open the question of its application in federal court, *id*. at 1783-84, there is no principled basis for concluding a different due process analysis would apply in diversity actions (as opposed to cases invoking federal question jurisdiction).

[112] *Id*.

dismiss all plaintiffs from Texas, Louisiana, Mississippi, and Florida because the Complaint was filed in Alabama in which their properties are not located.

## III.   CONCLUSION

After ten years' worth of MDL litigation on the facts and liability related to KPT Chinese drywall, the Plaintiffs cannot establish personal jurisdiction against KI for KPT Chinese drywall. No further discovery, jurisdictional or otherwise, is necessary to determine these issues, and this Court should dismiss the Bennett Plaintiffs' claims against KI with prejudice.

Respectfully submitted,

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**

/s/ *Kerry J. Miller*
**KERRY J. MILLER (#24562), T.A.**
**DANIEL J. DYSART (#33812)**
201 St. Charles Avenue, Suite 3600
New Orleans, LA 70170
Phone: 504.566.8646
Fax:    504.585.6946
Email: kjmiller@bakerdonelson.com
***Counsel for Defendant,***
***Knauf International GmbH***

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, individually to pro se claimants by U.S. Mail, and that the foregoing was filed with the Clerk of Court of the United States Court for the Eastern District of Louisiana, on this 27th day of August, 2018.

/s/ *Kerry J. Miller*
**KERRY J. MILLER**