UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: **CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL 2047**<br><br>**SECTION "L"** |
| **This document relates to:**<br><br>*Elizabeth Bennett, et al v. Gebr. Knauf Verwaltungsgesellschaft, KG, et al*<br><br>**Case No. 14:cv-2722** | **JUDGE ELDON FALLON**<br><br>**MAGISTRATE JOSEPH WILKINSON, JR.** |

**MEMORANDUM IN SUPPORT OF KNAUF AMF GMBH & CO. KG'S
12(b)(2) MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

**MAY IT PLEASE THE COURT:**

Defendant, Knauf AMF GmbH & Co. KG ("AMF"), through undersigned counsel, respectfully submits this memorandum of law in support of its Motion to Dismiss the Complaint of Plaintiffs against AMF in its entirety and with prejudice. The Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2) on the grounds that this Court lacks personal jurisdiction over AMF as to the claims asserted against it in Plaintiffs' Fifth Amended Class Action Complaint (the "Fifth Amended Complaint"). Although the Court may defer on its ruling on personal jurisdiction at this time and address other motions, AMF is hereby filing this motion to submit the defense and preserve it during the pendency of this action or until such time

1

the Court rules on the issue. Any participation by AMF in this litigation shall be under objection and subject to this personal jurisdiction defense.[1]

Plaintiffs bear the heavy burden of establishing that this Court has personal jurisdiction over AMF. Despite years of MDL discovery and litigation, Plaintiffs cannot establish personal jurisdiction over AMF. First, AMF (a German company) does not have the requisite contacts in the United States, or with any of the Plaintiffs' home states where they allege injury (Texas, Louisiana, Mississippi, Alabama, and Florida) sufficient to establish personal jurisdiction over it in this matter. Second, AMF is a completely separate and distinct company from the other defendants, including the manufacturer and distributor of the alleged defective drywall, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), and it does not and did not manufacture, market, sell, or distribute drywall, including but not limited to the alleged defective drywall manufactured by KPT. Finally, the Court cannot maintain jurisdiction over the non-residents of Alabama under the recent Supreme Court decision in *Bristol Myers Squibb Co. v. Superior Court*, 582 U.S. __, 137 S. Ct. 1773 (2017). For these reasons and as more fully set forth below, the Court cannot exercise jurisdiction over AMF, and otherwise AMF is not liable for any of the allegations submitted by Plaintiffs in regards to the alleged defective KPT drywall. Accordingly, AMF's motion to dismiss should be granted.

I.  BACKGROUND

   *A.  MDL 2047*

Since the inception of MDL 2047 in June of 2009, numerous cases have been consolidated, containing thousands of claims; over 20,000 record docs have been entered into the

---

[1] Lack of personal jurisdiction arguments should be raised in a 12(b) motion rather than a motion for summary judgment under Rule 56. *See, e.g. Heyward v. Pub. Hous. Admin.*, 238 F.2d 689, 694–95 (5th Cir. 1956). Courts have found that a defendant's participation in a case prior to the court's ruling on a dispositive motion does not waive his right to assert the defense of lack of personal jurisdiction if it was properly preserved (by raising in answer or in 12(b) motion*). See, e.g., Classic Motel, Inc. v. Coral Grp., Ltd.,* 149 F.R.D. 528, 532 (S.D. Miss. 1993).

record, millions of documents exchanged in discovery, dozens of depositions have been taken here in the United States and in Germany, Hong Kong, and other locations, over 30 Pretrial Orders have been issued; the Court has appointed steering committees and liaison counsel for plaintiffs, homebuilders, insurers, installers, and manufacturers; and it has presided over monthly status conferences, hearings, and several bellwether trials.[2]

The discovery throughout "revealed that the manufacturers of the drywall in question generally fell into two groups: Knauf and Taishan."[3] The Knauf entities include international manufacturers of building products, including drywall. One such entity, is a Chinese company, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), and it manufactured, advertised, sold and distributed its Chinese drywall in the United States.

Thereafter, the Court presided over a bellwether trial in *Hernandez v. Knauf Gips KG*, Case No. 09-6050, involving a homeowner's claims against KPT for defective drywall.[4] The Court found in favor of the plaintiff family in *Hernandez*, issued a detailed Findings of Fact and Conclusions of Law, and entered a Judgment.[5] In its Findings of Fact and Conclusions of Law, the Court specifically noted that Plaintiffs originally brought a number of claims against Defendant KPT and other named defendants involved with the Chinese drywall in their home; however, the Court later issued an order dismissing all defendants other than KPT without prejudice.[6] The Court specifically found that "KPT manufactured and sold drywall contained in Plaintiffs' home."[7] Further, the Court found as a matter of law that Defendant KPT was the manufacturer and seller of drywall at issue in that case.[8]

---

[2] *See* Order, R. Doc. No. 16570, pp. 3-4.
[3] Order, R. Doc. No. 16570, p. 4.
[4] *See* Findings of Fact and Conclusions of Law, R. Doc. No. 2713.
[5] *See* Judgement, R. Doc. No. 3012.
[6] Findings of Fact and Conclusions of Law, R. Doc. No. 2713, p. 4.
[7] Findings of Fact and Conclusions of Law, R. Doc. No. 2713, p. 5 (citing R. Doc. No. 1438, ¶ 7).
[8] Findings of Fact and Conclusions of Law, R. Doc. No. 2713, p. 44.

In addition to issuing detailed findings of fact and conclusions of law following *Hernandez*, the Court also approved a remediation protocol.[9] Based on inspections, testing, and analyses of the various drywall types by party experts and governmental agencies, including the CPSC, and through the developed remediation protocol, Plaintiffs identified that the only defective drywall manufactured by any of the Knauf manufacturing defendants was manufactured by KPT, a Chinese company.[10] Following implementation of this protocol by the parties, in a notable breakthrough towards resolving the MDL litigation claims against Knauf, a class action settlement agreement with plaintiffs was entered in December 2011. The global, class settlement agreement was "intended to resolve claims made in filed actions which arose out of KPT Chinese drywall installed in properties in the United States."[11] The Court granted preliminary approval of this settlement agreement on January 10, 2012 (the "Knauf Settlement Agreement"),[12] and the Court granted final approval of the Knauf Settlement Agreement on February 7, 2013.[13]

In addition to the Knauf Settlement Agreement, numerous defendants in the chain-of-commerce with distribution of KPT Chinese drywall have entered into class settlement agreements, the effect of which settles almost all of the chain-of-commerce litigation. This Court noted that, "[a]lthough the Court occasionally must deal with settlement administration and enforcement issues, the Knauf portion of this litigation is largely resolved."[14]

---

[9] *See* Order, R. Doc. No. 16570, p. 4.
[10] *See* CDW Indicia Guide, Exhibit C-1, R. Doc. No. 12061-10, p. 3.
[11] Order, R. Doc. No. 16570, p. 6.
[12] Order, R. Doc. No. 16570, p. 6 (citing Order granting preliminary approval, R. Doc. 12138)).
[13] Order, R. Doc. No. 16570, pp. 20-21.
[14] Order, R. Doc. No. 20739, p. 6.

### B.     *The Allegations of Plaintiffs' Fifth Amended Class Action Complaint*

The Plaintiffs, Elizabeth Bennett, et al. (the "Bennett Plaintiffs"), filed their Fifth Amended Complaint on May 14, 2018,[15] asserting various claims for alleged damages based on Chinese drywall manufactured by KPT.[16] Plaintiffs currently consist of 119 plaintiffs from five different states: Texas, Louisiana, Mississippi, Alabama, and Florida that did not timely file actions to be part of the Knauf Class Settlement Agreement. Despite the nine years of MDL discovery and litigation identifying KPT as the manufacturer, advertiser, seller, and distributor of KPT Chinese Drywall, the Plaintiffs named eleven separate Knauf entities as Defendants in their Fifth Amended Complaint: "Gebrueder Knauf Verwaltungsgesellschaft, KG ('AMF'); Knauf International GmbH ('Knauf International'); Knauf Insulation GmbH ('Knauf Insulation'); Knauf UK GmbH ('Knauf UK'); Knauf AMF GmbH & Co., KG ('Knauf AMF'); Knauf do Brasil, Ltd. ('Knauf Brasil'); PT Knauf Gypsum Indonesia ('Knauf Indonesia'); Knauf GIPS KG ('Knauf GIPS'); Knauf Plasterboard Tianjin Co., Ltd. ('Knauf Tianjin'); Knauf Plasterboard Wuhu Co., Ltd. ('Knauf Wuhu'); and Guangdong Knauf New Building Material Products Co., Ltd ('Guangdong Knauf')."[17]

The Bennett Plaintiffs' Fifth Amended Complaint asserts causes of action against the Knauf entities for (1) Negligence, (2) Negligence Per Se, (3) Strict Liability, (4) Breach of Express and/or Implied Warranty, (5) Redhibition (by Louisiana Plaintiffs Against Defendants), (6) Louisiana Products Liability Act (LPLA), (7) Private Nuisance, (8) Negligent Discharge of a

---

[15] The original complaint was filed on November 11, 2014 and listed 31 plaintiffs from Louisiana, Mississippi, Alabama and Florida. See Original Complaint (Rec. Doc. 1 in Case No. 14-CV-2204, N.D. Ala.).
[16] Fifth Amended Class Action Complaint, R. Doc. No. 21334.
[17] Fifth Amended Class Action Complaint, R. Doc. No. 21334, Introductory paragraph, p. 1 n 1.

...

Corrosive Substance, (9) Unjust Enrichment, (10) Violation of Consumer Protection Acts, and (11) Equitable and Injunctive Relief and Medical Monitoring.[18]

### C. AMF is a German Holding Company and has Zero Contacts in the United States.

AMF does not conduct any operations or business in the United States or in China.[19] AMF is a manufacturer and distributor of ceiling tiles and ceiling grids for modular ceiling solutions.[20] AMF conducts all manufacturing in Germany, France, Great Britain, Belgium, and Austria.[21] It does not manufacture any products in China. AMF did not design, manufacture, market, sell, or distribute any gypsum-based products to the United States between 2005 and 2007.[22] AMF does not design, manufacture, market, sell, or distribute any gypsum-based drywall products. AMF does not source any gypsum from China in the manufacture of any of its products. AMF did not and does not control the chain of supply or exert operational control over Knauf Plasterboard (Tianjin) Co., Ltd.[23]

AMF is a German limited liability company with a German limited liability company as general partner.[24] Its principal place of business is Grafenau, Germany.[25] AMF does not and has never had any U.S. based partners or members and has never received any equity contribution from U.S. entities or individuals.[26] AMF has never held any partnership, member or board of directors meetings in Texas, Louisiana, Mississippi, Alabama or Florida.[27] None of

---

[18] Fifth Amended Class Action Complaint R. Doc. No. 21334, ¶¶ 45-144.
[19] Declaration of Karl Wenig, attached as Exhibit A.
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] *Id.*

AMF's employees reside in Texas, Louisiana, Mississippi, Alabama or Florida.[28] AMF has never obtained loans or any other financing from banks, or any other source of financing, in the United States. AMF has never owned or leased any assets or property in Texas, Louisiana, Mississippi, Alabama or Florida, and has never held a mortgage or lien on any real property within those states.[29]  AMF does not host any of its corporate documents or records in the United States.[30] AMF has never been licensed or registered to conduct business in Texas, Louisiana, Mississippi, Alabama or Florida, has never sued anyone in those states, and has never contracted to obtain insurance in those states.[31]  AMF has never paid taxes in Texas, Louisiana, Mississippi, Alabama or Florida.[32]

As has been previously determined by this Court and demonstrated through years of evidence in the MDL, AMF (and the other named defendants other than KPT itself) were not involved in the manufacture, marketing, sale, or distribution of KPT Chinese drywall that is the subject of this litigation.  In fact, AMF has no contacts to Alabama, where the complaint was filed, or the individual plaintiff home states.  Through this Motion, AMF demonstrates that it is not a proper party to this suit, that Plaintiffs have not established personal jurisdiction over AMF, and that they cannot establish any connection of AMF with any of the operative facts that form the basis for Plaintiffs' claims.  For the reasons set forth more fully herein, this Court should dismiss all of the Bennett Plaintiffs' claims against AMF.

---

[28] *Id.*
[29] *Id.*
[30] *Id.*
[31] *Id.*
[32] *Id.*

## II.   LAW AND ARGUMENT

### A.   *Due Process Requirements.*

The Due Process Clause "operates to limit the power of a State to assert *in personam* jurisdiction over a non-resident defendant."[33] Due process requires that in order to subject a nonresident defendant to personal jurisdiction, the defendant must have certain minimum contacts with the forum state, such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.[34] The exercise of personal jurisdiction over a non-resident defendant comports with due process when a two-part test is satisfied: First, the defendant must have had certain minimum contacts with the forum state, and second, as a result of those contacts, the maintenance of the suit must not offend traditional notions of fair play and substantial justice.

The "constitutional touchstone" of the inquiry to determine if personal jurisdiction can be exercised is whether the defendant "purposefully established minimum contacts in the forum State."[35] The "minimum contacts" can be established by showing either specific jurisdiction or general jurisdiction. Specific jurisdiction is established where the defendant has sufficient contacts relating to the underlying controversy with the forum state, while general jurisdiction is established when "the [defendant's] affiliations with the [forum] state are so continuous and systematic as to render them essentially at home in the forum state."[36] General jurisdiction over an out of state corporate defendant may be found absent a finding of specific jurisdiction only if the corporation's contacts are "sufficiently continuous and systematic as to render them

---

[33] *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 413–14, 104 S.Ct. 1868, 80 L. Ed. 2d 404 (1984).

[34] *Boatwright v. Metropolitan Life Ins. Co.,* 661 So.2d 169, 171 (La. App. 4 Cir. 1995)(*citing International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L. Ed. 95 (1945)); *de Reyes v. Marine Mgt. and Consulting,* 586 So.2d 103 (La. 1991).

[35] *Asahi Metal Ind. Co. v. Super. Ct.,* 480 U.S. 102, 108–09, 107 S.Ct. 1026, 94 L. Ed. 2d 92 (1987) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L. Ed. 2d 528 (1985)).

[36] *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2851 (2011).

essentially at home in the forum state."[37] In defining what it means to be "at home", the *Daimler* Court held that "with respect to a corporation, *the place of incorporation and principle place of business are paradigm…bases for general jurisdiction*."[38] Only in an "exceptional case" would personal jurisdiction lie elsewhere than one of those two locations.[39] If a defendant has relatively few contacts, a court may still exercise specific jurisdiction in a suit arising out of or related to the defendant's contacts with the forum.[40]

### B. *General Jurisdiction Does Not Exist.*

AMF is a German company organized and existing under the laws of Germany.[41] Its legal domicile is located in Germany. AMF has never owned any real estate in Texas, Louisiana, Mississippi, Alabama or Florida, has no employees in any of those states, and has never had an office or mailing address in any of those states.[42] Furthermore, AMF has no corporate officers in Texas, Louisiana, Mississippi, Alabama, or Florida, is not registered to do business in any of those states, and does not have a registered agent for service of process in any of those states.[43]

The *Daimler* test for an exceptional case is **not merely** "whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic.'"[44] It is "whether that corporation's 'affiliations with the state are so 'continuous and systematic' **as to render [it] essentially at home in the forum state…i.e. comparable to a domestic enterprise in that State.**"[45]

---

[37] *Id.*; *see also Daimler AG v. Bauman*, 571 U.S. 117, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014) (rejecting the notion that general jurisdiction is appropriate in every state in which a corporation engages in "substantial, continuous, and systematic course of business" as "unacceptably grasping").
[38] *Daimler*, 134 S. Ct. at 761-62 (emphasis added).
[39] *Daimler*, 134 S. Ct. at 761, n. 19.
[40] *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 198 L. Ed. 2d 395 (2017).
[41] Declaration of Karl Wenig, attached as Exhibit A.
[42] *Id.*
[43] *Id.*
[44] *Daimler*, 134 S. Ct. at 761.
[45] *Id.* at 758, n. 11 (2014) (emphasis added).

9

Furthermore, in *Daimler,* the Supreme Court of the United States expressly cautions against an expansive reading of what constitutes an exceptional case:

> [A] corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise, "at home" would be synonymous with "doing business" tests framed before specific jurisdiction evolved in the United States.[46]

The single example cited in *Daimler* for what constitutes an exceptional case, *Perkins v. Benguiet Consolidated Mining Co.*,[47] is wholly inapposite to the circumstances of AMF in this case. *Perkins* involved a foreign corporation that had completely relocated to the forum state during World War II: the president maintained his office there, the company files were located there, and the company was supervised from the forum state.[48] Under those defined and limited circumstances, the Supreme Court held that the forum state was the company's "principal, if temporary place of business."[49]

Following *Daimler*, numerous federal courts, including the United States Fifth Circuit Court of Appeals on two occasions, have observed that "it is incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business."[50] Courts have found that because the paradigm bases for general jurisdiction are the place of incorporation and the principal place of business, "even a company's engagement in a substantial, continuous, and systematic course of business is alone insufficient to render it at home in a forum."[51]

---

[46] *Id.* at 762, n. 20 (2014).
[47] *Perkins v. Benguiet Consolidated Mining Co.*, 342 U.S. 437, 72 S.Ct. 413 (1952).
[48] *Perkins*, 72 S.Ct. at 419.
[49] *Id.*
[50] *Monkton Ins. Services Ltd. v. Ritter*, 768 F.3d 429, 432-33 (5th Cir. 2014); *Whitener v. Pliva, Inc.*, 606 F. App'x 762, 765 (5th Cir. 2015); *Carmouche v. Tamborlee Mgmt., Inc.,* 789 F.3d 1201, 1205 (11th Cir. 2015); *Sonera Holding V.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014); *Kipp v. Ski Enterprise Corporation of Wisconsin, Inc.*, 783 F.3d 695, 698 (7th Cir. 2015); *Jones v. ITT Systems Division*, 596 Fed. App'x. 662 (8th Cir. 2015).
[51] *Sonera Holding*, 750 F.3d 221, 225.

AMF does not have any contacts in the United States or with Texas, Louisiana, Mississippi, Alabama or Florida, let alone the "continuous and systematic" contacts required for assertion of general jurisdiction. As such, Plaintiff cannot not satisfy the requirements of general jurisdiction in this matter.[52]

### C. *Specific Jurisdiction Does Not Exist.*

Plaintiff also cannot satisfy the requirements of specific jurisdiction over AMF. Specific jurisdiction arises only where the allegations in the case stem from the defendant's contacts with the chosen forum.[53] Because there must be an affiliation between the forum and the underlying controversy, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction."[54]

There is a three-step analysis for the specific jurisdiction inquiry: (1) whether the defendant has minimum contacts with the forum state, *i.e.*, whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.[55] The "purposeful availment" requirement ensures that the nonresident defendant will not be haled into a jurisdiction solely as a result of a random, fortuitous, or attenuated contact, **or by the unilateral activity of another party or a third person**.[56]

In determining whether a defendant has the necessary minimum contacts, this Court must find that the defendant's conduct shows that it "reasonably anticipates being haled into court" in

---

[52] Declaration of Karl Wenig, attached as Exhibit A.
[53] *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 198 L. Ed. 2d 395 (2017).
[54] *Casso's Wellness Store & Gym, L.L.C. v. Spectrum Lab. Prod., Inc.*, No. CV 17-2161, 2018 WL 1377608, at *4 (E.D. La. Mar. 19, 2018) (*citing Bristol-Myers*, 137 S.Ct. at 1780 (2017)).
[55] *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006) (*quoting Nuovo Pignone, Spa v. Storman Asia M/V*, 310 F.3d 374 (5th Cir. 2002) (*citing Burger King*, 471 U.S. at 474, 105 S.Ct. 2174)).
[56] *A & L Energy, Inc. v. Pegasus Grp.*, 2000-3255 (La. 6/29/01), 791 So.2d 1266, 1271 (emphasis added).

11

Louisiana.[57] In defining when it is that a potential defendant should "reasonably anticipate" out-of-state litigation, the Supreme Court of Louisiana has frequently drawn from the reasoning of *Hanson v. Denckla*: "**The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State**." The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."[58] The minimum contacts requirement has not been satisfied as to AMF, nor can it be based on the facts of this case.

Plaintiffs, as the party asserting jurisdiction, have the burden to establish minimum contacts. The Plaintiffs have the burden of demonstrating specific jurisdiction for each claim asserted against a nonresident defendant.[59] Unless the facts presented to the Court are sufficient to affirmatively show a basis for personal jurisdiction, the action should be dismissed.[60] On a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation.[61] In *Ashcroft v. Iqbal,* the United States Supreme Court stated:

> **[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions**. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Although for the purposes of a motion to dismiss we must take all of the

---

[57] *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006) (*citing World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L. Ed. 2d 490 (1980)).
[58] *Hanson v. Denkla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–1240, 2 L. Ed. 2d 1283 (1958) (emphasis added).
[59] *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.,* 818 F.3d 193 (5th Cir. 2016).
[60] *Wilson v. Belin,* 20 F.3d 644, 648 (5th Cir. 1994).
[61] *Valle v. Beauryne Builders LLC*, No. CV 17-274-SDD-RLB, 2018 WL 1463692, at *1 (M.D. La. Mar. 23, 2018)(emphasis added).

factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation."[62]

"[T]the court does not accept as true legal conclusions or mere conclusory statements, and 'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'"[63]

### D. *Plaintiffs Cannot Establish AMF's Minimum Contacts or that Plaintiffs' Injuries were a Result of AMF's Contacts in Texas, Louisiana, Mississippi, Alabama, or Florida.*

Plaintiffs have not and cannot allege or establish sufficient facts to show that AMF has minimum contacts with Texas, Louisiana, Mississippi, Alabama or Florida. AMF has not engaged in any activity by which it purposefully availed itself of the privilege of conducting activities within those States, thereby invoking the benefits and protections of the respective State's law.

Defendant AMF was not the manufacturer, distributor, or seller of any drywall, much less the Chinese drywall at issue in the Bennett Plaintiffs' Fifth Amended Complaint.[64] Nor did any other Knauf entity act as an agent or apparent agent of AMF, such that AMF might somehow be responsible for their actions. After nearly ten years of discovery in the MDL on the same Chinese drywall at issue here, no evidence of AMF's connection to the manufacture, marketing, sale, or distribution of the Chinese drywall at issue has ever been discovered, been placed at issue, or determined by this or any Court.

---

[62] *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79, 129 S. Ct. 1937, 1949–50, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007))(internal citations omitted) (emphasis added).
[63] *Carpenter v. Webre*, No. CV 17-808, 2018 WL 1453201, at *4 (E.D. La. Mar. 23, 2018)(quoting *Twombly* 550 U.S. at 570).
[64] Declaration of Karl Wenig, attached as Exhibit A.

To the contrary, the evidence demonstrates that named Knauf entities are separate legal entities,[65] and that only KPT produced, marketed, sold, and distributed the alleged defective Chinese drywall at issue. [66] The evidence produced demonstrated that the problem with the defective drywall stemmed from the raw material (*i.e.*, gypsum) used to manufacture the drywall boards, which was collected from the Luneng Mine in China, the same mine that produced the Taishan drywall.[67] KPT used this gypsum to manufacture the drywall boards.[68] Each shipment of KPT drywall was shipped directly from China to the United States by KPT, arranged by their Director of Sales, Mark Norris, who directly marketed, negotiated, and transacted with the United States suppliers and/or third party brokers.[69] KPT had only three customers in the United States that received KPT drywall shipments: L&W Supply Company ("L&W"), Rothchilt International Limited (which was sold to Banner Supply Company in Florida), and Interior Exterior Building Supply, L.P. ("INEX").[70] The chain of supply continued as follows:

---

[65] Although the usual method of establishing facts in a proceeding is through the introduction of evidence with the testimony of witnesses proffering documents to be admitted into evidence, a court may take judicial notice of adjudicative facts that are not subject to reasonable dispute because they are (1) generally known within the trial court's territorial jurisdiction, or (2) can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A court may take judicial notice, whether requested or not, at any stage in the proceeding. See Fed. R. Evid. 201(c) & (f). "A court may take judicial notice of related proceedings and records in cases before the same court." *MacMillan Bloedel Ltd. v. Flintkote Co.,* 760 F.2d 580, 587 (5th Cir. 1985) (citing *Missionary Baptist Foundation of America v. Huffman*, 712 F.2d 206, 211 (5th Cir. 1983); *see Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 420 (5th Cir. 2013) (affirming district court's judicial notice of the fact that the Macondo well had been capped on July 15, 2010 in Deepwater Horizon MDL in connection with ruling on district court's motion to dismiss); *see also Baldwin v. Local 843, Int'l Bhd. of Teamsters*, 562 F. Supp. 36, 38 (D.N.J. 1982) (taking judicial notice of court's own records concerning other proceeding concerning events surrounding matter at issue).

[66] *See* Exhibit H, Deposition of Manfred Grundke, at p. 225 (Knauf entities are independent legal entities); Exhibit I, Deposition of Martin Stuermer, at p. 712 (each Knauf entity is a separate corporation) & p. 727 (each Knauf entity maintains separate bank accounts).

[67] Exhibit B, Deposition of David Gregory, at p. 682 & pp. 247–48 (KPT used raw materials from Luneng mine to make KPT drywall from 2001 to end of 2006 but stopped sourcing raw materials from Luneng mine because of a "potential connection between the source of natural gypsum and this issue of boards reportedly smelling.").

[68] Ex. H, Grundke Depo., at p. 261 (KPT was ultimate authority with respect to Chinese drywall issue); *see* CDW Indicia Guide, Exhibit C-1, R. Doc. No. 12061-10, p. 3.

[69] Ex. B, Gregory Depo., at pp. 254-55 (Norris was in charge of sales, marketing, customer services and technical services for the Knauf East Asia entities).

[70] Exhibit C, Deposition of Mark P. Norris, Vol. III ("Norris Depo. Vol. III"), at p. 876; *see* Exhibit D, KPT Defense Profile Form, at ¶ 4.

1. Rothchilt International Limited, a broker, purchased the KPT drywall from KPT[71] and sold the KPT drywall to La Suprema Enterprise, Inc.[72] La Suprema Trading, Inc. then invoiced Banner Supply Company ("Banner") for the product and delivered it to Banner's warehouses.[73] Banner sold and distributed the drywall to customers in the United States.[74]

2. INEX purchased KPT drywall directly from KPT and distributed the drywall to customers in the United States.[75]

3. L&W purchased the KPT drywall through a broker in Florida who purchased drywall from KPT.[76]

AMF had no part in the chain of supply or operational control over KPT, the Chinese entity that produced, marketed, sold, and distributed the KPT drywall.[77] AMF does not sell KPT drywall nor does AMF supervise or impose standards on the manufacture of the drywall by KPT or otherwise.[78] AMF is a German limited liability company with a German limited liability company as general partner and its principal place of business is Grafenau, Germany. AMF does not conduct any operations or business in the United States.[79] AMF is a manufacturer and distributor of ceiling tiles and ceiling grids for modular ceiling solutions.[80] AMF conducts all

---

[71] *See* Exhibit E, Deposition of Mark P. Norris, Vol. I ("Norris Depo. Vol. I"), at pp. 98, 103–04.
[72] Exhibit F, La Suprema Enterprise, Inc. Profile Form (Salomon Abadi), at pp. 2–3; *see* Exhibit G, Banner Profile Form (Port St. Lucie), p. 1.
[73] *Id.*
[74] *Id.*
[75] Ex. E, Norris Depo. Vol. I, at pp. 119-120.
[76] Ex. E, Norris Depo. Vol. I, at pp. 163-164.
[77] Declaration of Karl Wenig, attached as Exhibit A.
[78] *See* Ex. B, Gregory Depo., at p. 263-66 (Knauf East Asia had a separate quality control department); pp. 545-546 (German engineers did not control quality at facility and did not train personnel); p. 548 (KPT had professional lab to test raw materials and quality); p. 507–08 (KPT was responsible for testing incoming gypsum); and p. 176 (some German machinery is used in Knauf plants in China but standards are controlled locally).
[79] *Id.*
[80] *Id.*

manufacturing in Germany, France, Great Britain, Belgium, and Austria.[81] It does not manufacture any products in China. AMF did not design, manufacture, market, sell, or distribute any gypsum-based products to the United States between 2005 and 2007.[82] AMF does not design, manufacture, market, sell, or distribute any gypsum-based drywall products. AMF does not source any gypsum from China in the manufacture of any of its products. AMF did not and does not control the chain of supply or exert operational control over Knauf Plasterboard (Tianjin) Co., Ltd.[83]

In a bellwether trial in this MDL, it was previously stipulated by parties as adopted by the Court that, among several Knauf entities, KPT was the manufacturer of the defective Chinese drywall, which in this MDL is limited to drywall manufactured in China.[84] And, as noted above, it was previously established through discovery that the KPT drywall was the defective drywall at issue. The Court may take judicial notice of these findings of fact as evidence in support of this Motion in addition to the evidence above supporting the fact that AMF had no connection whatsoever with the manufacture or distribution (or any related actions) of the purportedly defective drywall in this case. Together, this evidence demonstrates that AMF did not have any part (as a principal or otherwise) in the manufacture, marketing, distribution, or sale of the alleged defective KPT Chinese drywall at issue in this case. In short, AMF has no involvement with the manufacture, marketing, sale or distribution of KPT drywall, and it has no contacts whatsoever based on its own conduct with the state of Alabama or any of the Plaintiffs' home states.

---

[81] *Id.*
[82] *Id.*
[83] *Id.*
[84] *See* Findings of Fact, Conclusions of Law, R. Doc. No. 2713, p. 44.

### E. The Exercise of Jurisdiction Over AMF Would be Unfair and Unjust.

The Court should decline to exercise personal jurisdiction over AMF, because to do so would offend traditional notions of fair play and substantial justice.[85] In determining whether to exercise jurisdiction, courts must weigh the burden on the non-resident defendant of defending an action in Texas, Louisiana, Mississippi, Alabama or Florida against the interests of the state and the judicial system in adjudicating the dispute.[86] Other considerations include the unique burdens placed upon the defendant who must defend himself in a foreign legal system,[87] and the determination must be made in light of the "quality, nature, and extent" of any activity by the non-resident defendant.[88] The factors weigh heavily against the exercise of personal jurisdiction over AMF. The burden of a non-manufacturer, holding company, litigating a product liability case in Texas, Louisiana, Mississippi, Alabama and/or Florida would be substantial as AMF does not manufacture any products, and all of its officers and employees are located outside of the United States.[89] This conclusion is buttressed by the "quality, nature, and extent" of AMF's activities in those states, which are wholly non-existent. Accordingly, the Court should decline to exercise personal jurisdiction over AMF in this case.

### F. The Court Must Dismiss Claims Brought by Plaintiffs Outside of Their States of Residency.

Plaintiffs filed their complaint in Alabama without regard to the individual residency of the 119 plaintiffs. Plaintiffs have not articulated any basis in the Complaint by which the nonresidents of Alabama may be permitted to bring suit against AMF, or any of the other

---

[85] *Burger King*, 471 U.S. at 474-475 (1985).
[86] *Frisella v. Transoceanic Cable Ship Co.*, 181 F. Supp. 2d 644, 677 (E.D. La. 2002).
[87] *Asahi*, 480 U.S. at 114-15 (1987).
[88] *Growden v. Ed Bowlin & Assocs.*, 733 F.2d 1149, 1151 n. 1 (5th Cir. 1984).
[89] Declaration of Karl Wenig, attached as Exhibit A.

defendants, in a state other than that in which each property is located.[90] This multi-state complaint is impermissible under the recent decision by the Supreme Court in *Bristol Meyers*. There, as here, a contingent of plaintiffs from various states elected to file in a jurisdiction other those in which they were residents.[91] They had no basis for asserting general, personal jurisdiction. Relying on specific jurisdiction, the nonresident plaintiffs attempted to bootstrap onto the claims of in-state residents and capitalize on Bristol Myers' general business dealings within California.[92] Those, the Supreme Court found, were inadequate grounds for finding specific jurisdiction over Bristol Myers as to the nonresidents' claims.[93]

There is no general jurisdiction because AMF (nor any of the other named defendants) can "fairly [be] regarded as being at home" in Texas, Louisiana, Mississippi, Alabama or Florida.[94] Thus, jurisdiction here must be based on specific jurisdiction. Specific jurisdiction, of course, "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction."[95] But, as noted, Plaintiffs have not alleged a theory for invoking personal jurisdiction over AMF or the other defendants on behalf of nonresident plaintiffs. The only available arguments for why a state has specific jurisdiction over claims brought by nonresident homeowners are those the Supreme Court rejected in *Bristol-Myers*.

---

[90] Although styled as a class action complaint, "[t]he upshot of [Bristol-Myers] is that plaintiffs cannot join their claims together and sue a defendant in a State in which only some of them have been injured." 137 S. Ct. at 1788 (Sotomayor, J., dissenting) (emphasis added). *Bristol-Myers* dictates that, absent general jurisdiction, "plaintiffs who are injured in different States by a defendant's nationwide course of conduct [cannot] sue that defendant in a single, consolidated action." 137 S. Ct. at 1784.
[91] 137 S. Ct. at 1778.
[92] *Id*. at 1781.
[93] *Id*. at 1782.
[94] *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).
[95] *Bristol-Myers*, 137 S. Ct. at 1780 (*citing Goodyear*, 564 U.S. at 919).

Thus, there is no "connection between the forum [states] and the [nonresidents'] specific claims at issue" and no jurisdiction over the nonresidents' claims.[96]

To hold otherwise would be to adopt just the sort of "loose and spurious form of general jurisdiction" that the Supreme Court rejected in *Bristol-Myers*.[97] Accordingly, this Court should dismiss all plaintiffs from Texas, Louisiana, Mississippi, and Florida because the Complaint was filed in Alabama in which their properties are not located.

### III. CONCLUSION

After ten years' worth of MDL litigation on the facts and liability related to KPT Chinese drywall, the Plaintiffs cannot establish personal jurisdiction against AMF for KPT Chinese drywall. No further discovery, jurisdictional or otherwise, is necessary to determine these issues, and this Court should dismiss the Bennett Plaintiffs' claims against AMF with prejudice.

Respectfully submitted,

**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC**

/s/ *Kerry J. Miller*
**KERRY J. MILLER (#24562), T.A.
DANIEL J. DYSART (#33812)**
201 St. Charles Avenue, Suite 3600
New Orleans, LA 70170
Phone: 504.566.8646
Fax: 504.585.6946
Email: kjmiller@bakerdonelson.com
***Counsel for Defendant, Knauf AMF GmbH & Co. KG***

---

[96] *Id.* at 1781; *see also, e.g.*, *Oliver v. Ethicon*, 12-cv-06950, 2017 WL 3193652, at *3 (S.D.W. Va. July 27, 2017) (relying on *Bristol-Myers* to dismiss defendant for lack of specific jurisdiction from product liability MDL filed in Minnesota because "the record indicate[d] no connection between the mesh product implanted in the plaintiff in Arkansas and Ethicon's mesh products sold in Minnesota"); *Ergon Oil Purchasing, Inc. v. Canal Barge Co., Inc.*, No. 16-cv-5884, 2017 WL 2730853, at *5 (E.D. La. June 26, 2017) (post-*Bristol Myers* dismissal of nonresident defendant where plaintiff's "general assertions—without a specific evidentiary tie to [the Louisiana company co-defendant] and the barge cleaning services in question—[we]re insufficient evidence of specific jurisdiction"). Although *Bristol-Myers* left open the question of its application in federal court, *id.* at 1783-84, there is no principled basis for concluding a different due process analysis would apply in diversity actions (as opposed to cases invoking federal question jurisdiction).

[97] *Id.*

## **CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, individually to pro se claimants by U.S. Mail, and that the foregoing was filed with the Clerk of Court of the United States Court for the Eastern District of Louisiana, on this 27th day of August, 2018.

      /s/ *Kerry J. Miller*
      **KERRY J. MILLER**