UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL 2047<br><br>SECTION "L" |
| **This document relates to:**<br><br>*Elizabeth Bennett, et al v. Gebr. Knauf Verwaltungsgesellschaft, KG, et al*<br><br>**Case No. 14:cv-2722** | JUDGE ELDON FALLON<br><br>MAGISTRATE JOSEPH WILKINSON, JR. |

**MEMORANDUM IN SUPPORT OF KNAUF UK GMBH'S
MOTION FOR SUMMARY JUDGMENT ON CLAIMS ASSERTED
IN PLAINTIFFS' FIFTH AMENDED CLASS ACTION COMPLAINT**

**MAY IT PLEASE THE COURT:**

Defendant, Knauf UK GmbH ("Knauf UK"), through undersigned counsel, respectfully submits this Memorandum in Support of its Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure as to the claims asserted against it in Plaintiffs' Fifth Amended Class Action Complaint (the "Fifth Amended Complaint").[1]

**I.     Factual and Procedural Background**

   *A.     MDL 2047*

Since the inception of MDL 2047 in June of 2009, numerous cases have been consolidated, containing thousands of claims; over 20,000 records docs have been entered into the record, millions of documents exchanged in discovery, dozens of depositions, and over 30

---

[1] By filing this motion, Knauf UK GmbH does not waive and specifically reserves all rights and defenses, including but not limited to its pending 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction.

Pretrial Orders have been issued; the Court has appointed steering committees and liaison counsel for plaintiffs, homebuilders, insurers, installers, and manufacturers; it has presided over monthly status conferences, hearings, and several bellwether trials.[2]

The discovery throughout "revealed that the manufacturers of the drywall in question generally fell into two groups: the Knauf entities and the Taishan entities."[3] The Knauf entities include international manufacturers of building products, including drywall. One such entity is a Chinese company, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), and it manufactured, advertised, sold, and distributed its Chinese drywall in the United States. The Knauf Entities were named defendants in numerous cases consolidated with the MDL litigation and litigation in state courts.[4]

Thereafter, the Court presided over a bellwether trial in *Hernandez v. Knauf Gips KG*, Case No. 09-6050, involving a homeowner's claims against KPT for defective drywall.[5] The Court found in favor of the plaintiff family in *Hernandez*, issued a detailed Findings of Fact and Conclusions of Law, and entered a Judgment in the amount of $164,049.64, including remediation damages in the amount of $136,940.46, which represented a cost of $81.13 per square foot based on the footprint square footage of the house.[6] In its Findings of Fact and Conclusions of Law, the Court specifically noted that Plaintiffs originally brought a number of claims against Defendant KPT and other named defendants involved with the Chinese drywall in their home; however, the Court later issued an order dismissing all defendants other than KPT without prejudice.[7] Plaintiffs claimed that KPT manufactured, sold, distributed, marketed, and

---

[2] *See* Order, R. Doc. No. 16570, pp. 3-4.
[3] Order, R. Doc. No. 16570, p. 4.
[4] *See* R. Doc. No. 18.
[5] *See* Findings of Fact and Conclusions of Law, R. Doc. No. 2713.
[6] *See* Judgment, R. Doc. No. 3012.
[7] Findings of Fact and Conclusions of Law, R. Doc. No. 2713, p. 4.

placed into the stream of commerce Chinese drywall with the expectation that such drywall would be purchased by consumers in the United States and performed discovery on this matter prior to proceeding to trial.[8] The Court then found and adopted the stipulations of the parties as proved, finding specifically that "KPT manufactured and sold drywall contained in Plaintiffs' home."[9] Further, the Court found as a matter of law that Defendant KPT was the manufacture and seller of drywall at issue in that case.[10]

In addition to issuing detailed findings of fact and conclusions of law following *Hernandez*, the Court also issued a remediation protocol.[11] As part of the remediation protocol, Plaintiffs identified the only defective drywall manufactured by the Knauf entities, which was manufactured by KPT, a Chinese company.[12] Following implementation of this protocol by the parties, in a notable breakthrough towards resolving the MDL litigation claims against Knauf, a class action settlement agreement was entered with plaintiffs in December 2011. The global, class settlement agreement was "intended to resolve claims made in filed actions which arose out of KPT Chinese drywall installed in properties in the United States."[13] The Court granted preliminary approval of this settlement agreement on January 10, 2012 (the "Knauf Settlement Agreement"),[14] and the Court granted final approval of the Knauf Settlement Agreement on February 7, 2013.[15]

In addition to the Knauf Settlement Agreement, numerous defendants in the chain-of-commerce have entered into class settlement agreements, the effect of which settles almost all of the chain-of-commerce litigation. This Court noted that, "[a]lthough the Court occasionally must

---

[8] Findings of Fact and Conclusions of Law, R. Doc. No. 2713, p. 4.
[9] Findings of Fact and Conclusions of Law, R. Doc. No. 2713, p. 5 (citing R. Doc. 1438, ¶ 7).
[10] Findings of Fact and Conclusions of Law, R. Doc. No. 2713, p. 44.
[11] *See* Order, R. Doc. No. 16570, p. 4.
[12] *See* CDW Indicia Guide, Exhibit C-1, R. Doc. No. 12061-10, p. 3.
[13] Order, R. Doc. No. 16570, p. 6.
[14] Order, R. Doc. No. 16570, p. 6 (citing Order granting preliminary approval, R. Doc. No. 12138)).
[15] Order, R. Doc. 16570, pp. 20-21.

deal with settlement administration and enforcement issues, the Knauf portion of this litigation is largely resolved."[16]

### B. The Allegations of Plaintiffs' Fifth Amended Class Action Complaint

The Plaintiffs, Elizabeth Bennett, et al. (the "Bennett Plaintiffs"), filed their Fifth Amended Complaint on May 14, 2018,[17] asserting various claims for alleged damages based on Chinese drywall manufactured by KPT.[18] Plaintiffs consist of 119 plaintiffs from five different states: Texas, Louisiana, Mississippi, Alabama, and Florida. Despite the nine years of MDL discovery and litigation identifying KPT as the manufacturer, advertiser, seller, and distributor of KPT Chinese Drywall, the Plaintiffs named eleven separate Knauf entities as Defendants in their Fifth Amended Complaint: "Gebrueder Knauf Verwaltungsgesellschaft, KG ('GKV'); Knauf International GmbH ('Knauf International'); Knauf Insulation GmbH ('Knauf Insulation'); Knauf UK GmbH ('Knauf UK'); Knauf AMF GmbH & Co., KG ('Knauf AMF'); Knauf do Brasil, Ltd. ('Knauf Brasil'); PT Knauf Gypsum Indonesia ('Knauf Indonesia'); Knauf GIPS KG ('Knauf GIPS'); Knauf Plasterboard Tianjin Co., Ltd. ('Knauf Tianjin'); Knauf Plasterboard Wuhu Co., Ltd. ('Knauf Wuhu'); and Guangdong Knauf New Building Material Products Co., Ltd ('Guangdong Knauf')."[19]

The Bennett Plaintiffs' Fifth Amended Complaint asserts causes of action against the Knauf entities for (1) Negligence, (2) Negligence Per Se, (3) Strict Liability, (4) Breach of Express and/or Implied Warranty, (5) Redhibition (by Louisiana Plaintiffs Against Defendants), (6) Louisiana Products Liability Act (LPLA), (7) Private Nuisance, (8) Negligent Discharge of a

---

[16] Order, R. Doc. No. 20739, p. 6.
[17] The original complaint was filed on November 11, 2014 and listed 31 plaintiffs from Louisiana, Mississippi, Alabama and Florida. See Original Complaint (Rec. Doc. 1 in Case No. 14-CV-2204, N.D. Ala.).
[18] Fifth Amended Class Action Complaint, R. Doc. No. 21334.
[19] Fifth Amended Class Action Complaint, R. Doc. No. 21334, Introductory paragraph, p. 1 n 1.

Corrosive Substance, (9) Unjust Enrichment, (10) Violation of Consumer Protection Acts, and (11) Equitable and Injunctive Relief and Medical Monitoring.[20]

The Bennett Plaintiffs allege generally that these Knauf entities are the "manufacturers of drywall located in plaintiffs' homes."[21] In particular, as to Defendant Knauf UK, the Bennett Plaintiffs allege that "Defendant Knauf UK is a foreign corporation doing business in several states including but not limited to Alabama, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Texas, and Virginia," that "Knauf UK is involved in the insulation and building material industry" and is "associated with GKV, Knauf GIPs and the Knauf Group", and that it "has participated in the activities and sales of the Knauf Group's drywall manufactured in China and sold in the United States."[22] In addition, Plaintiffs allege that that KPT ("Knauf Tianjin"), Knauf Wuhu, and Guangdong Knauf ("and their employees") were the "actual agent and/or apparent agent[s]" of Knauf UK and that Knauf UK acted as the actual or apparent agent of Knauf GIPS, which supervised or controlled the operations of Knauf UK.[23]

All of the Bennett Plaintiffs' claims are premised on their allegations that the Defendants' drywall was defective, and that the Plaintiffs and their "homes, structures, personal property, and bodies" were exposed to the "problematic/defective Chinese drywall manufactured, sold,

But, as has been previously determined by this Court and demonstrated through years of evidence in the MDL, Knauf UK and the other named defendants, except KPT itself, were not involved in the manufacture, marketing, sale, or distribution of KPT Chinese drywall nor are they responsible for the Chinese drywall that is the subject of this litigation. In fact, Knauf AMF has no contacts with or in the state of Alabama, where the original Complaint was field, or the

---

[20] Fifth Amended Class Action Complaint, R. Doc. No. 21334, ¶¶ 45-144.
[21] Fifth Amended Class Action Complaint, R. Doc. No. 21334, Introductory paragraph, p. 1.
[22] Fifth Amended Class Action Complaint, R. Doc. No. 21334, ¶ 11.
[23] Fifth Amended Class Action Complaint, R. Doc. No. 21334, ¶¶ 15-17, 21.

individual plaintiffs' home states. Through this Motion, Knauf UK demonstrates that it is not a proper party to this suit. Plaintiffs have not alleged Knauf UK's connection to any of the operative facts that form the basis for their claims. For the reasons set forth more fully herein, this Court should grant summary judgment in favor of Knauf UK and dismiss all of the Bennett Plaintiffs' claims against it.

## II. Legal Standards

### A. Rule 56 Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is required if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[24] "A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[25]

When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial.[26] However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[27]

On a motion for summary judgment, "[a]lthough 'the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor,' summary judgment remains appropriate if the non-movant's evidence is 'merely colorable' or 'not significantly

---

[24] FED. R. CIV. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").
[25] *Bennett v. Hartford Ins. Co. of Midwest*, 890 F.3d 597, 604 (5th Cir. 2018) (quoting *Johnson v. World All. Fin. Corp.*, 830 F.3d 192, 195 (5th Cir. 2016) (internal quotation marks omitted)).
[26] *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2558, 91 L.Ed.2d 265 (1986).
[27] *Id.* at 322; *see also Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir. 1993).

probative."[28] "Only when 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party' is a full trial on the merits warranted."[29] Furthermore, "[d]iscovery is not a prerequisite to the disposition of a motion for summary judgment."[30] "If it appears that further discovery will not provide evidence creating a genuine issue of material fact, the district court may grant summary judgment."[31]

B. Judicial Notice

Although the usual method of establishing facts in a proceeding is through the introduction of evidence with the testimony of witnesses proffering documents to be admitted into evidence, a court may take judicial notice of adjudicative facts that not subject to reasonable dispute because they are (1) generally known within the trial court's territorial jurisdiction, or (2) can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[32] A court may take judicial notice, whether requested or not, at any stage in the proceeding.[33]

"A court may take judicial notice of related proceedings and records in cases before the same court."[34] Taking notice of another court's finding of fact, however, "does not necessarily

---

[28] *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.,* 892 F.3d 167, 170 (5th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)).

[29] *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)).

[30] *Carder v. Cont'l Airlines, Inc.*, 595 F. App'x 293, 299 (5th Cir. 2014) (quoting *Skiba v. Jacobs Entm't Inc.*, 587 Fed. Appx. 136, 138 (5th Cir. 2014) (per curiam)).

[31] *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (citing *Access Telecom, Inc. v. MCI Telecomm. Corp.*, 197 F.3d 694, 720 (5th Cir.1999); *see also Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir.1990) ("This court has long recognized that a plaintiff's entitlement to discovery prior to a ruling on a motion for summary judgment is not unlimited, and may be cut off when the record shows that the requested discovery is not likely to produce the facts needed by the plaintiff to withstand a motion for summary judgment.").

[32] FED. R. EVID. 201(b).

[33] *See* FED. R. EVID. 201(c) & (f).

[34] *MacMillan Bloedel Ltd. v. Flintkote Co.,* 760 F.2d 580, 587 (5th Cir. 1985) (citing *Missionary Baptist Foundation of America v. Huffman*, 712 F.2d 206, 211 (5th Cir. 1983); *State of Florida Board of Trustees of the Internal Improvement Trust Fund v. Charley Toppino and Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975)); *see Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 420 (5th Cir. 2013) (affirming district court's judicial notice of the fact that the Macondo well had been capped on July 15, 2010 in Deepwater Horizon MDL in connection with ruling on district court's motion to dismiss); *see also Baldwin v. Local 843, Int'l Bhd. of Teamsters*,

denote adoption or finding of that fact."[35] Instead, "courts in subsequent related cases [may] rely upon the evidence presented in earlier litigation," but must still "reach their own, independent findings of fact in the cases before them."[36]

### III. No Genuine Issue of Material Fact Exists and Knauf UK Is Not Liable to the Bennett Plaintiffs As a Matter of Fact and Law.

Although named a defendant in this case, Defendant Knauf UK was not the manufacturer, distributor, or seller the Chinese drywall at issue in the Bennett's Fifth Amended Complaint. Nor did any other Knauf entity act as an agent or apparent agent of Knauf UK, such that Knauf UK might somehow be responsible for their actions.[37] After nearly ten years of discovery in the MDL on the same Chinese drywall at issue here, no evidence of Knauf UK's connection to the production of the Chinese drywall at issue has ever been discovered or been placed at issue.

To the contrary, the evidence demonstrates that the Knauf entities are separate legal entities,[38] and that only KPT drywall produced the defective Chinese drywall at issue. The evidence produced demonstrated that the problem with the defective drywall stemmed from the

---

562 F. Supp. 36, 38 (D.N.J. 1982) (taking judicial notice of court's own records concerning other proceeding concerning events surrounding matter at issue).

[35] *Foley v. Syrian Arab Republic*, 249 F. Supp. 3d 186, 191–92 (D.D.C. 2017) (citation omitted) ((taking judicial notice of findings in prior cases where court found that Syria materially supported Zarqawi's Terrorist Organization during the timeframe that was relevant to the instant case, but noting that the findings merely serve as evidence in the instant case and may be considered alongside other evidence presented).

[36] *Id.* (citations and internal quotation marks omitted).

[37] *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1363 (5th Cir. 1990); *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983) (stating that the mere existence of a parent-subsidiary relationship will not support the assertion of jurisdiction over a foreign parent" although there may be instances in which the parent so dominates the subsidiary that 'they do not in reality constitute separate and distinct corporate entities). None of the requirements for imputing jurisdiction based on an agency theory have been sufficiently alleged or satisfied as to Knauf UK. Further, after 9 years of discovery, Plaintiffs cannot submit or establish any facts that would support such an agency conclusion under Hargrave. Because no showing has been made—nor can be made—to demonstrate that Knauf UK engaged KPT, or any other defendant in an agency relationship that purposefully resulted in the manufacture, sale, and distribution of KPT Chinese drywall to the named Plaintiffs in Texas, Louisiana, Mississippi, Alabama and Florida, those claims must be dismissed as to Knauf UK.

[38] *See* Exhibit "I", Deposition of Manfred Grundke ("Grundke Depo."), at p. 225 (Knauf entities are independent legal entities); Exhibit "B", Deposition of Martin Stuermer, at p. 712 (each Knauf entity is separate corporation) & p. 727 (each Knauf entity maintains separate bank account).

raw material (*i.e.*, gypsum) used to manufacture the drywall boards that was collected from the Luneng Mine in China.[39] And it was the Knauf entity KPT that used this gypsum to manufacture the drywall boards.[40] Each shipment of KPT drywall was shipped directly from China to the United States by KPT arranged by their Director of Sales, Mark Norris, who directly marketed, negotiated, and transacted with the United States suppliers nad/or third-party brokers.[41] KPT had only three customers in the United States that received KPT drywall shipments: L&W Supply Company ("L&W"), Rothchilt International Limited (which was sold to Banner Supply Company in Florida), and Interior Exterior Supply ("INEX").[42] The chain of supply continued as follows:

(1) Rothchilt International Limited, a broker, purchased the KPT drywall from KPT[43] and sold the KPT drywall to La Suprema Enterprise, Inc.[44] La Suprema Trading, Inc. then invoiced Banner Supply Company ("Banner") for the product and delivered it to Banner's warehouses.[45] Banner sold and distributed the drywall to consumers in the United States.[46]

---

[39] Exhibit "A", Deposition of David N. Gregory ("Gregory Depo."), at p. 682 & pp. 247–48 (KPT used raw materials from Luneng mine to make KPT drywall from 2001 to end of 2006 but stopped sourcing raw materials from Luneng mine because of a "potential connection between the source of natural gypsum and this issue of boards reportedly smelling.").

[40] Exhibit "I", Grundke Depo., at p. 261 (KPT was ultimate authority with respect to Chinese drywall issue); *see* CDW Indicia Guide, Exhibit C-1, R. Doc. No. 12061-10, p. 3.

[41] Exhibit "A", Gregory Depo., at pp. 254-55 (Norris was in charge of sales, marketing, customer services and technical services for the Knauf East Asia entities).

[42] Exhibit "C", Deposition of Mark P. Norris, Vol. III ("Norris Depo. Vol. III"), at p. 876; *see* Exhibit "D", KPT Defense Profile Form, at ¶ 4.

[43] *See* Exhibit "E", Deposition of Mark P. Norris, Vol. I ("Norris Depo. Vol. I"), at pp. 98, 103–04.

[44] Exhibit "F", La Suprema Enterprise, Inc. Profile Form (Salomon Abadi), at pp. 2–3; *see* Exhibit "G", Banner Profile Form (Port St. Lucie), p. 1.

[45] *See* Exhibit "G", Banner Profile Form (Port St. Lucie), p. 1.

[46] *Id.*

  (2) INEX purchased KPT drywall directly from KPT and distributed the drywall to suppliers in the United States.[47] L&W purchased the KPT drywall through broker in Florida that purchased drywall directly from KPT.[48]

 Knauf UK, however, had no part in the chain of supply or control over the entities producing the KPT drywall. Knauf UK does not sell or manufacture KPT drywall nor does Knauf UK supervise or impose standards on the manufacture of the drywall by KPT or otherwise.[49] While Knauf UK is a manufacturer of drywall in the United Kingdom, its products are manufactured and sold within the United Kingdom.

 Knauf UK is a German limited liability company, incorporated in Iphofen, Germany, with its principal place of business in Sittingbourne, United Kingdom.[50] Knauf UK's sole member is Knauf International GmbH.[51] It does not conduct any operations in the United States or China.[52] Knauf UK manufactures gypsum-based construction materials, including drywall, but performs all manufacturing activities at its sites in Sittingbourne and Immingham in the United Kingdom; it does not conduct *any* operations or manufacture any products in China, nor does it source any gypsum from China in connection with its manufacturing operations.[53] But, more importantly to this case, Knauf UK did not design, manufacture, market, sell, or distribute any gypsum-based products, including KPT Chinese drywall, to the United States (or with the

---

[47] Exhibit "E", Norris Depo. Vol. I, at pp. 119-120.
[48] *Id.* at pp. 163-64.
[49] *See* Exhibit "A", Gregory Depo., at p. 263-66 (Knauf East Asia had a separate quality control department); pp. 545-546 (German engineers did not control quality at facility and did not train personnel); p. 548 (KPT had professional lab to test raw materials and quality); p. 507–08 (KPT was responsible for testing incoming gypsum); and p. 176 (some German machinery is used in Knauf plants in China but standards are controlled locally).
[50] Declaration of Ian Dean (Dean Decl.), attached hereto as Exhibit "H".
[51] *See id.*
[52] *See id.*
[53] *See id.*

expectation that it would be purchased by consumers in the United States) between 2005 and 2007.[54]

In a prior bellwether trial in this MDL, it was previously stipulated by parties as adopted by the Court in the bellwether trial that, among the "Knauf entities" (including Knauf UK), KPT was the manufacturer of the defective Chinese drywall, which in this MDL is limited to drywall manufactured in China.[55] And, as noted above, it was previously established through discovery that the KPT drywall was the defective drywall at issue. The Court may take judicial notice of these findings of fact as evidence in support of this Motion in addition to the evidence above supporting the fact that GKV had no connection whatsoever with the manufacture or distribution (or any related actions) of the purportedly defective drywall in this case. Together, this evidence demonstrates that there is no genuine issue as to the facts central to the Bennett Plaintiffs claims – that Knauf UK did not have any part (as a principal or otherwise) in the manufacture, distribution, or sale of the alleged defective Chinese drywall at issue in this case. Despite the posture of this particular case, the absence of contradictory evidence developed over years of litigation in this MDL on the same factual issues makes Plaintiffs' claims against Knauf UK ripe for resolution.

## IV. Conclusion

After ten years' worth of discovery, the facts do not support the Bennett Plaintiffs' claims against Knauf UK. The Bennett Plaintiffs cannot substantiate any of the facts forming the basis of the claims against Knauf UK, and there is no genuine issue material fact preventing summary judgment. No further discovery is necessary to determine these issues, and this Court should

---

[54] *See id.*
[55] *See* Findings of Fact, Conclusions of Law, R. Doc. No. 2713, p. 44.

grant summary judgment in its favor as a matter of law, dismissing the Bennett Plaintiffs' claims against Knauf UK with prejudice.

                        Respectfully submitted,

                        **BAKER, DONELSON, BEARMAN,**
                        **CALDWELL & BERKOWITZ, PC**

                        /s/ *Kerry J. Miller*
                        **KERRY J. MILLER (#24562), T.A.**
                        **DANIEL J. DYSART (#33812)**
                        201 St. Charles Avenue, Suite 3600
                        New Orleans, LA  70170
                        Telephone:   (504) 566-8646
                        Facsimile:    (504) 585-6946
                        Email:         kjmiller@bakerdonelson.com
                        Email:         ddysart@bakerdonelson.com
                        ***Counsel for Defendant,***
                        ***Knauf UK GmbH***

## CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, and to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was filed with the Clerk of Court of the United States Court for the Eastern District of Louisiana, on this 27th day of August, 2018.

                        */s/ Kerry J. Miller*
                        **KERRY J. MILLER**