# Exhibit "A"

```
09:06:07   1                 UNITED STATES DISTRICT COURT
                             EASTERN DISTRICT OF LOUISIANA
           2
                ***************************************************************
           3

           4   IN RE:  CHINESE-MANUFACTURED        Docket No. 09-MD-2047
               DRYWALL PRODUCTS LIABILITY          New Orleans, Louisiana
           5                                       Wednesday, August 15, 2018

           6
                ***************************************************************
           7
                          TRANSCRIPT OF MOTION PROCEEDINGS
           8          HEARD BEFORE THE HONORABLE ELDON E. FALLON
                           UNITED STATES DISTRICT JUDGE
           9

          10   APPEARANCES:

          11   FOR THE PLAINTIFF STEERING
               COMMITTEE:                          LEVIN, FISHBEIN, SEDRAN & BERMAN
          12                                       BY:  ARNOLD LEVIN, ESQ.
                                                   510 Walnut Street, Suite 500
          13                                       Philadelphia, PA 19106

          14

          15   FOR THE TAISHAN DEFENDANTS:        ALSTON & BIRD
                                                   BY:  CHRISTINA H. EIKHOFF, ESQ.
          16                                       One Atlantic Center
                                                   1201 West Peachtree St.
          17                                       Suite 4900
                                                   Atlanta, GA 30309-3424
          18

          19

          20   FOR CNBM AND BNBM ENTITIES:        ORRICK
                                                   BY:  JAMES STENGEL, ESQ.
                                                   51 West 52nd St.
          21                                       New York, NY 10019-6142

          22
                                                   PHELPS DUNBAR
          23                                       BY:  HARRY ROSENBERG, ESQ.
                                                   365 Canal St., Suite 2000
          24                                       New Orleans, LA 70130

          25
```

1

2   Official Court Reporter:          Karen A. Ibos, CCR, RPR, CRR
                                      500 Poydras Street, Room HB-406
3                                     New Orleans, Louisiana 70130
                                      (504) 589-7776
4

5

6     Proceedings recorded by mechanical stenography, transcript
    produced by computer.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S

 2              (WEDNESDAY, AUGUST 15, 2018)

 3                 (MOTION PROCEEDINGS)

 4
```

09:13:44  5      (OPEN COURT.)

09:13:44  6          THE COURT:  Be seated, please.  Good morning, ladies and

09:13:46  7  gentlemen.  Call the case, please.

09:13:47  8          THE DEPUTY CLERK:  MDL-2047, *in re:  Chinese Manufactured*

09:13:52  9  *Drywall Products Liability Litigation*.

09:13:53 10          THE COURT:  Counsel make their appearance for the record,

09:13:55 11  please.

09:13:55 12          MR. LEVIN:  Arnold Levin for the Plaintiff Steering

09:13:59 13  Committee, sir.

09:14:00 14          MS. EIKOFF:  Christy Eikhoff for Taishan.

09:14:03 15          THE COURT:  Let me say a word or two about the matter

09:14:03 16  first --  I'm sorry.

09:14:07 17          MR. STENGEL:  Jim Stengel for CNBM and BNBM.

09:14:09 18          THE COURT:  Anybody else?  Okay.  And we have a number of

09:14:13 19  other lawyers in the case.

09:14:19 20          We're here today to discuss the trial plan in the Taishan

09:14:23 21  cases.  As we all know, we've been dealing with this Chinese

09:14:32 22  drywall case, as we term it, for about nine years now, and a large

09:14:40 23  part of the case is over involving Knauf, but the Taishan, et al,

09:14:49 24  cases have not been able to be resolved.  So I am convinced that

09:14:55 25  after a number -- a lot of discovery that the parties conducted and

09:15:03 1   a number of trials, both with and without a jury, that I've done

09:15:11 2   about as best as I can to give the attorneys an opportunity to look

09:15:15 3   at the case, to decide whether or not there's some way of globally

09:15:21 4   resolving the case, some method, some approach, something done.

09:15:28 5   But that hasn't worked.

09:15:29 6          So now it comes time to send the cases back, those that I

09:15:35 7   can send back, and those cases that are involving Louisiana

09:15:42 8   products, Louisiana houses, structures, to try the cases.  And so

09:15:51 9   that's where we are now.

09:15:53 10         I sent back a number of cases to Florida, I'll be sending

09:15:58 11  a number of cases back to Virginia so that those judges can begin

09:16:02 12  the process of resolving the cases by trials.  And I'll do that now

09:16:08 13  in Louisiana.

09:16:10 14         We've got two class action cases that we're dealing with:

09:16:21 15  One is the *Amorin* and the other is the *Brooke* cases.  They're both

09:16:26 16  together involving Louisiana products.  The Louisiana houses total

09:16:33 17  about 919.  We need to, as I mentioned to the parties a moment ago,

09:16:41 18  as I see it, at least at the outset -- and I shared this with them

09:16:47 19  because it's been my experience that in these cases the reason that

09:16:52 20  they can get resolved is that the lawyers involved in these types

09:16:57 21  of cases are really the best of the best.  It's just the way it is.

09:17:05 22  And this case is no exception.

09:17:09 23         And so I find that it's helpful to tap into that

09:17:13 24  experience, that knowledge, that ability in trying to come up with

09:17:21 25  plans to resolve the cases.  And so I always discuss these with the

09:17:27  1   attorneys and invite them to respond.

09:17:30  2           The way I see it, at least at the outset in any event,

09:17:35  3   and this is not in stone, it's in pencil, but I see that they're

09:17:41  4   the two areas:  The *Amorin* cases and the *Brooke* cases.

09:17:45  5           Now, the *Amorin* cases, I've tried a number of those and

09:17:50  6   liability in my opinion has been established in those cases.  There

09:17:57  7   have been two appeals, two different groups of appellate judges

09:18:05  8   affirmed the cases, no cert has been asked for, so it's final.

09:18:14  9           In the *Amorin* cases, therefore, liability has been

09:18:17 10   established.

09:18:18 11           The *Brooke* liability has not been established.  Most of

09:18:22 12   the *Brooke* cases really involve Florida properties, and that will

09:18:28 13   be dealt with by Judge Cook in that area.

09:18:32 14           But the *Amorin* cases is where my focus is going to be

09:18:36 15   primarily, and we first have to separate the *Amorin* docket from

09:18:44 16   those cases that are simply -- are just strict property damage

09:18:49 17   cases.  There are a large number of them that are property damage

09:18:53 18   cases.  There are also in there a number of property damage plus

09:19:00 19   personal injury cases.  We may have to separate those out.

09:19:05 20           With regard to the property damage cases, I would intend

09:19:10 21   to appoint a master to utilize the formula that has been

09:19:18 22   established in a number of cases, and to verify the square footage,

09:19:27 23   verify the present ownership, verify the location, address, things

09:19:34 24   of that sort, and then we'll simply apply the formula and come up

09:19:42 25   with a figure for the property damage.  Those cases, it seems to

09:19:48 1   me, are just administratively dealt with.  I don't see the

09:19:53 2   necessity for any trials in those cases, I think it's just I'll be

09:20:01 3   issuing judgments in that fashion.

09:20:03 4           With regard to the property plus personal injury, I think

09:20:07 5   that's a different grouping; and with personal injury, it seems to

09:20:13 6   me that jury trials need to be had for the jury to determine

09:20:19 7   personal injury.

09:20:20 8           Now, unlike the bellwether cases where I am trying to

09:20:27 9   give the lawyers an opportunity to view the case in the real world

09:20:32 10  setting of trials, I think that bellwethers work best if it's one

09:20:39 11  case at a time because that's closer to the real world.  It's a

09:20:43 12  bellwether case, it's not total real world, but you're getting a

09:20:46 13  jury, you're getting a case, one case, you're seeing how your

09:20:52 14  witnesses do, you're seeing how much it costs, you're seeing the

09:20:54 15  logistics of the trial.  It's best handled, in my opinion, one case

09:20:59 16  at a time.

09:21:00 17          But at this stage I am not -- no longer interested in

09:21:05 18  bellwether cases.  I am interested in resolution of cases.  So in

09:21:12 19  that area, I think multiple cases can be handled to the jury.  I

09:21:17 20  would like to start with maybe three cases and then work up to

09:21:20 21  maybe ten cases at a time so that we can finish with these cases.

09:21:32 22  And we'll be dealing with a jury who will set the damages, the

09:21:37 23  injuries and damages.

09:21:41 24          The challenging part is with regard to the property

09:21:45 25  aspect of those cases.  It seems to me that there's no need for the

09:21:51 1   jury to deal with property damage because we can deal with that

09:21:54 2   administratively.  So if that's the case, then do we do them

09:22:02 3   both -- those cases both at the same time and get the property

09:22:05 4   damage aspect with the personal injury damages and then I join

09:22:14 5   those together for a judgment?  I don't think it's appropriate to

09:22:19 6   have two judgments in every case, so it would be one judgment, but

09:22:24 7   I would use the property damage formula to figure the property

09:22:28 8   damage and then the jury response for the personal injury.

09:22:40 9         That's kind of what I envision based upon, you know,

09:22:45 10  dealing with this case for a long period of time, and also

09:22:49 11  reviewing the various briefs, which were very helpful to me, from

09:22:54 12  both sides.  But I shared that a moment ago with the attorneys for

09:22:59 13  both sides, and I would be interested in their responses and any

09:23:05 14  other comments that they might have.

09:23:06 15        Let me hear from the plaintiffs first.

09:23:09 16        MR. LEVIN:  Good morning, your Honor.  Arnold Levin.

09:23:16 17        We basically are very comfortable with what your Honor

09:23:19 18  has stated.  And as such, I probably should sit down.

09:23:26 19        But there are several issues that were briefed by the

09:23:32 20  defendants.  I think we've covered -- you've covered them at least

09:23:38 21  by what you've told us, but I would like to reserve my time in

09:23:41 22  rebuttal to deal with their arguments of due process, if they're

09:23:45 23  still going to make it; the jury trial demand, if they're still

09:23:48 24  going to make it; the nature of the default judgments, if they're

09:23:54 25  still going to make it.  And I think I can be very brief at that

09:24:00 1    time, five or ten minutes; and if your Honor will give me leave,
09:24:03 2    I'll sit down.
09:24:05 3              THE COURT:  Okay.  Fine.  Christy.
09:24:08 4              We've talked also about the question of discovery, and
09:24:15 5    there's no question in my mind that the defendants need some
09:24:19 6    discovery in the personal injury aspects of the case.  They haven't
09:24:24 7    had anything, they, I assume, haven't received any recent reports.
09:24:30 8    So the discovery aspect of those cases needs to be done, so I
09:24:34 9    recognize that.  I would like to see if we can expedite it, but
09:24:40 10   discovery needs have to be satisfied.
09:24:42 11             MS. EIKOFF:  Sure, your Honor.  Christy Eikhoff on behalf
09:24:47 12   of Taishan.  Jim Stengel is going to be making a separate argument
09:24:52 13   on behalf of his clients BNBM and CNBM.  And as the Court knows,
09:24:57 14   those parties are differently situated from Taishan.
09:25:00 15             THE COURT:  Right.
09:25:01 16             MS. EIKOFF:  We recognize, as the Court has said, that
09:25:02 17   the defaults have been upheld by the circuit court and that Taishan
09:25:05 18   is in default, so we are in a different situation from those other
09:25:09 19   entities.
09:25:10 20             Your Honor, I would -- I am going to slightly rearrange
09:25:15 21   the order that I was planning to cover things today because I want
09:25:19 22   to make sure I get clarification and share with the Court our
09:25:25 23   perspective of the categories of damages.
09:25:27 24             THE COURT:  Sure.
09:25:28 25             MS. EIKOFF:  The Court has referred to property damage

09:25:32  1    this morning versus personal injury damage.  Those are not the

09:25:36  2    distinctions that we have been using, and even, frankly, that the

09:25:39  3    PSC has been using in the course of this litigation.  The more

09:25:45  4    relevant distinction, your Honor, between categories of damages in

09:25:50  5    this case so far has been within the umbrella of property damage,

09:25:53  6    the distinction between remediation damages and non-remediation

09:25:57  7    damages.

09:25:58  8           Non-remediation damages covers other categories of

09:26:03  9    damages that could still be considered property damage, but -- and

09:26:09  10   are not "personal injury damages."  It includes personal injuries,

09:26:13  11   alternative living expenses, loss of use and enjoyment, appliances,

09:26:20  12   foreclosure, bankruptcy, short sale.  There's a whole laundry list.

09:26:27  13          The distinction between remediation and non-remediation

09:26:31  14   is important because this Court certified a class for remediation

09:26:35  15   damages only, and this Court has also identified a formula that can

09:26:44  16   be used for current owners only for remediation damages only.  And

09:26:57  17   I will get into why even that isn't quite as simple as it sounds.

09:27:03  18          But at this point, your Honor, the current owner

09:27:06  19   remediation damages is actually a very small aspect of this case

09:27:12  20   now, because in the original claimants and plaintiffs that came to

09:27:19  21   the court, many have sold the properties so they're former owners

09:27:23  22   now, and many have already remediated their properties and so

09:27:26  23   they're outside of the class.  The majority of this case, of the

09:27:30  24   claimants in this case, your Honor, at this point are outside of

09:27:33  25   the class.

09:27:33  1      And so that is the basis for the plan that we have
09:27:40  2  proposed, and I would like to go ahead and skip to the first slide.
09:27:44  3  I'm sure the Court is familiar with Occam's razor, which is the
09:27:49  4  principle that the simplest solution tends to be the right one.
09:27:52  5  And here, Taishan has submitted the simplest plan, but it's the
09:27:56  6  right plan because it is the most efficient.  And we'll show you,
09:28:02  7  it's not delay, it's not inefficient, it actually gets to judgment
09:28:07  8  quickly, well under a year.  It follows Fifth Circuit law and it
09:28:11  9  follows constitutional law.
09:28:12  10      And, your Honor, we need to point out the violations of
09:28:15  11  both Fifth Circuit and Constitution law that we think are embedded
09:28:19  12  in the plan that has been submitted by the PSC.
09:28:29  13      Our plan is quick.  We're saying that within 37 days of
09:28:35  14  when the Court enters its order, we will have priority claimants
09:28:38  15  selected, 24 priority claimants.  That will be enough for us to
09:28:42  16  really understand all of the variations.  Our proposal is that
09:28:47  17  those 24 be selected based on categories of the product ID that
09:28:52  18  they have, and it will also include former owners and also include
09:28:56  19  perhaps bankruptcy, short sale.  We will try to get a good variety
09:29:01  20  of the issues that we're dealing with.
09:29:04  21      Discovery would be complete 60 days after that.  If we
09:29:08  22  need experts -- I don't think either party has decided whether or
09:29:11  23  not they will need experts -- but if we need experts, that entire
09:29:15  24  expert discovery process - depositions, reports, rebuttal - all of
09:29:20  25  that would take 120 days.  And then we're into pretrial briefing

09:29:24 1    within 75 days after that.

09:29:25 2          So what we're looking for is we would be ready for the

09:29:29 3    first trial on damages in six to ten months.  That is an efficient

09:29:33 4    plan.  And it's more efficient than the PSC's plan and it makes

09:29:37 5    more sense because, as the Court has recognized, as the PSC has

09:29:41 6    recognized, we need to take depositions of everybody anyway because

09:29:47 7    everybody has non-remediation damages.  There are no claimants in

09:29:55 8    this case that have claimed only remediation damages and nothing

09:29:58 9    else.  They're asking for, on top of their remediation damages,

09:30:03 10   they want their loss of use and enjoyment, they want their

09:30:06 11   alternative living expenses, they want a whole host of other

09:30:09 12   things.

09:30:10 13         And I'll note, your Honor, that very, very few of the

09:30:12 14   claimants in these cases have alleged personal injury.  Personal

09:30:17 15   injury is a minuscule part of this case, if any part of this case

09:30:22 16   at all.  It's really about all property damage but the remediation

09:30:26 17   versus the non-remediation damages.

09:30:29 18         THE COURT:  Would you propose liability trials also?

09:30:32 19         MS. EIKOFF:  No.  No, your Honor.  Because, again,

09:30:34 20   Taishan, we know we're in default.  So what we're saying is that --

09:30:38 21   these damages, your Honor, are not liquidated.  When you have

09:30:41 22   unliquidated damages, even a defaulted defendant, it is entitled to

09:30:46 23   defend against that and the plaintiff has to prove the damages.

09:30:49 24         And so we're saying, let's do a short expedited discovery

09:30:55 25   period for everybody, for all categories of damages.  So just to

09:30:59  1    illustrate kind of the bizarreness of the PSC's plan, under their
09:31:06  2    plan we're deposing everybody, we're deposing 800 claimants, we're
09:31:10  3    deposing them all -- which, by the way, I don't think it's possible
09:31:14  4    in the amount of time that they've proposed, but that's what
09:31:17  5    they're proposing.
09:31:18  6         We propose we depose everybody.  But in those depositions
09:31:21  7    we can ask about them about certain of their property damages, but
09:31:25  8    we can't ask them about other property damages unless we get leave
09:31:28  9    of court, and that just doesn't make sense.  If people are going to
09:31:30 10    be deposed, let's ask about all of their damages.  If there are
09:31:34 11    going to be trials, let's try all of their damages together.  So
09:31:37 12    that's why we have proposed the priority claimants.
09:31:40 13         We've got a single track for all damages, it all gets
09:31:42 14    done in six to ten months, and it's more efficient than their plan
09:31:48 15    because we're going to be taking these depositions anyway.  We
09:31:51 16    might as well be asking them all of the questions that we have.
09:31:54 17         And to be clear, there are contested issues on even
09:31:58 18    remediation damages.  It sounds easy to say, well, there's a
09:32:02 19    formula and there's square foot, but there's a lot of questions
09:32:07 20    about whether they ever had Taishan drywall in their property and
09:32:12 21    whether they have changed the size of their house and where it was
09:32:16 22    and where the drywall came from.  So there are questions that we
09:32:21 23    have that make it more complex than just simply applying a formula.
09:32:25 24         But, your Honor, just to go to the next slide.
09:32:29 25         THE COURT:  Would you propose one trial at a time or

09:32:32  1    multiple trials?

09:32:34  2            MS. EIKOFF:  So, your Honor, our proposal actually does

09:32:36  3    not directly address that question, but we have proposed 24

09:32:39  4    priority claimants.  I know that our client would be open to

09:32:44  5    grouping some of those if it makes sense to group some of those,

09:32:48  6    your Honor.

09:32:49  7            But one thing that is important to know about the

09:32:52  8    remediation damages, I just was saying that there's a lot of

09:32:56  9    contested issues there.  Well, the Fifth Circuit and Louisiana law

09:32:59 10    actually prohibits the application of the formula to a claimant who

09:33:04 11    has already remediated.  And we've got -- we cited it in our

09:33:10 12    briefs, we've got it here in the PowerPoint, that using an estimate

09:33:17 13    for property damage where the property has already been repaired is

09:33:22 14    improper because you need to look at the repairs.

09:33:24 15            Now, the PSC has often said, and it's a point well taken,

09:33:29 16    well, you know, people may not have done a good job because they

09:33:32 17    were doing the best they could with the resources they had.  That

09:33:35 18    is well and we get that but that is an assumption.  And in the

09:33:39 19    court of law, we can't just assume that they didn't do a good job.

09:33:43 20    We need to see what they actually did.  And if it wasn't a good job

09:33:47 21    and if the receipts show that they are entitled to more, then

09:33:52 22    that's how it would be litigated.  But we can't just assume that

09:33:57 23    everyone did an improper job and should get the formula anyway,

09:34:00 24    especially when you have binding law that says it's improper to use

09:34:04 25    an estimate when the damages have already been incurred.

09:34:10  1    Also, the PSC's plan says, well, we want to get judgment

09:34:15  2 on remediation damages, so we want Cal Mayo to work with the

09:34:18  3 spreadsheet; and then once he applies the formula and does the

09:34:21  4 math, then it's going to spit out a number.  And they've already

09:34:24  5 said they want that number to be more than half of a billion

09:34:29  6 dollars.  Well, that's not -- even if that were allowed -- and

09:34:32  7 we'll get into why we think that that violates the due process of

09:34:36  8 the defendants.  Even if that were allowed, they can't do anything

09:34:39  9 with it because it won't be a judgment.  The Fifth Circuit law

09:34:46 10 black letter says you can't collect or appeal anything that's a

09:34:50 11 judgment if it doesn't include all of the categories of damages.

09:34:55 12 So we think, again, that's another reason why their process is more

09:35:00 13 complex, more convoluted, and it doesn't gain anything.

09:35:04 14    The PSC -- we cited these in our brief.  The PCS's

09:35:08 15 response did not address these cases at all, so we see this as

09:35:14 16 undisputed.

09:35:15 17    Next please.

09:35:16 18    Finally, your Honor, constitutional due process.  The

09:35:21 19 plaintiff -- there are twin principles that are mutually

09:35:23 20 reinforceable in due process, and these principles apply to us even

09:35:27 21 in default.  The plaintiffs still have the burden of proof and the

09:35:31 22 defendants have a right to mount a defense.  That doesn't go away

09:35:35 23 under Rule 55, the Supreme Court has said that.  The PSC's plan

09:35:40 24 seeks to shift the burden to us to tell Cal Mayo why the drywall is

09:35:48 25 not Taishan.  So they say it's Taishan and then we have to prove

09:35:51  1    that it's not, that's improper.  The process that they say that we

09:35:57  2    need to go through has the Special Master making decisions on

09:36:03  3    categories, so they just say -- he just says any drywall that has a

09:36:08  4    made in China mark is Taishan or isn't Taishan.  Well, if you look

09:36:12  5    at what has been submitted for proof, there are dozens of

09:36:15  6    variations of drywall that say made in China.

09:36:20  7           And there are also dozens of variation of the quality of

09:36:24  8    proof.  Some claimants have a full inspection report with clear

09:36:28  9    pictures from every room, and some claimants have a single, blurry

09:36:33 10    photograph.  And they're saying that the special master would just

09:36:37 11    treat them the same.  Wouldn't even look at them.  Literally

09:36:41 12    wouldn't even look at it.  Would just decide, oh, well, if it says

09:36:44 13    made in China, it either is Taishan or it isn't Taishan.  That

09:36:49 14    violates our due process, your Honor.

09:36:51 15           And by saying that we can't dispose -- they're saying we

09:36:54 16    aren't allowed to depose anyone about their product ID, we can't

09:36:57 17    ask them any questions, so the single blurry photograph, the

09:37:01 18    example I gave, we can't ask the plaintiff:  "Well, where did this

09:37:04 19    picture come from?  What room was it taken in?  Who took it?"

09:37:10 20           And then, what's also very problematic about this is that

09:37:13 21    the PSC is seeking to expand the class definition.  And so if you

09:37:19 22    look at their plan, they say, "We have a formula.  We love it.  We

09:37:22 23    want it to apply not just to current owners," which is what the

09:37:25 24    class is defined, "we also want it to apply to people who have

09:37:29 25    already remediated," which we say violates Fifth Circuit law,

09:37:33 1   because it does, "we also want to apply it to former owners, even

09:37:38 2   though it's outside of the class.  We also want to apply it to new

09:37:40 3   owners.  Oh, and by the way, we also want to apply it in *Brooke*, a

09:37:45 4   case where liability has not even been established yet.  So let's

09:37:47 5   go ahead and work into our plan that we're going to be applying it

09:37:50 6   to *Brooke* as well."  That violates our due process, your Honor, and

09:37:54 7   it should not be permitted.

09:37:57 8          Finally, speaking of *Brooke* because we were accused of

09:38:02 9   ignoring it, we have not ignored it.  So here is what we propose on

09:38:07 10  *Brooke*.  It is improper to weave *Brooke* into the *Amorin* process.

09:38:13 11  This Court has already acknowledged that and we appreciate that.

09:38:17 12  There has been no default in *Brooke* as the Court has acknowledged.

09:38:21 13  There is no class.  So this idea of let's just go ahead and apply

09:38:24 14  the formula in *Brooke* in the next two months or something is simply

09:38:31 15  not permissible.

09:38:33 16         In fact, I just want to point out how far they're going

09:38:37 17  with *Brooke*.  They have in the first 45 days in their schedule,

09:38:41 18  they're going to submit motions for sanctions against us for our

09:38:48 19  conduct in other cases.  We've got to recognize *Brooke* for what it

09:38:56 20  is, which is a different case and a new case.  It is a case that

09:39:00 21  has the vast majority of its claimants in Florida, so we think

09:39:03 22  Florida should be the center of gravity for *Brooke*.

09:39:06 23         Your Honor has not remanded *Brooke* yet.  We think *Brooke*

09:39:10 24  should be remanded.  And when it is remanded, then we think that

09:39:14 25  the timetable for the hundred odd *Brooke* claimants in Louisiana

09:39:19 1   should mirror the timetable that is established by the Florida

09:39:23 2   court for the 800 plus *Brooke* claimants.

09:39:26 3        And then what we're going to advocate for in Florida is

09:39:30 4   that *Brooke*, the new case, needs to be trifurcated into three

09:39:34 5   threshold issues:  First, we need to look at statute of limitations

09:39:38 6   because the *Brooke* claims were filed so late in the game, years and

09:39:44 7   years after this litigation was underway; then we'll look at class

09:39:48 8   certification to see whether it can become a class; and then if it

09:39:53 9   is a class or isn't a class, we'll address issues of liability

09:39:57 10  which are available in that case because it is not presumed that

09:40:00 11  the drywall is defective, they have to prove it.

09:40:05 12       So, your Honor, I am happy to answer any questions for

09:40:08 13  the Court.

09:40:09 14       THE COURT:  No, that's fine.  Let me hear from Jim.

09:40:25 15       MR. STANGEL:  If you'll indulge us for a moment, your

09:40:30 16  Honor, we need to switch over some technology.

09:40:33 17       THE COURT:  Sure.

09:40:43 18       MR. STENGEL:  Your Honor, Jim Stengel for CNBM and BNBM.

09:40:47 19       I hesitate to enter into what happened before we appeared

09:40:52 20  in this litigation because there is an extensive prior procedural

09:40:56 21  record.  But one point that I am not sure I agree with your Honor

09:40:59 22  is we haven't had bellwethers in this case.  There were Virginia

09:41:04 23  properties tried in the *Germano* proceedings years ago, we have not

09:41:08 24  been involved in any such proceeding.  We have been through a

09:41:11 25  substantial amount of litigation before your Honor, obviously, but

09:41:14 1   there aren't bellwethers.

09:41:17 2         Your Honor observed early on that this is a case that

09:41:34 3   should settle and you probably have the personnel in the courtroom

09:41:37 4   to do that.  We agree with that.  But at the outset, I will say I

09:41:44 5   am responding to your Honor's description of a proposal this

09:41:47 6   morning, as well as the PSC.  I think what your Honor proposes,

09:41:51 7   while efficient in some ways, does further violence to due process

09:41:56 8   rights of the defendants.  And to do that to further skew that

09:42:00 9   value, to tilt the playing field in our perspective, from my

09:42:05 10  clients' perspective, is further away from what we would view as

09:42:09 11  balanced is a mistake, and I think it will complicate the process

09:42:12 12  of resolving these matters.

09:42:14 13        Now, we've made a slightly different proposal from

09:42:17 14  Taishan in terms of how to proceed, but in large measure, I won't

09:42:21 15  repeat what Ms. Eikhoff said because we largely agree in approach.

09:42:25 16  We do think we need discovery on alternate living expenses and

09:42:29 17  property damages that are components that we as the defendants know

09:42:32 18  nothing about.  We also believe the supplemental profile form,

09:42:37 19  although useful, is tantamount to interrogatory answers, it's not

09:42:45 20  the be all and end all of discovery, even as to their mediation

09:42:46 21  damage component.

09:42:46 22        So there's more work that needs to be done, and we think

09:42:50 23  our process is -- the Taishan and CNBM and BNBM proposals provide

09:42:53 24  the Court with a working structure to push these cases towards

09:42:58 25  resolution, and I'm afraid what the PSC has proposed and what your

09:43:03  1   Honor proposes takes us, frankly, further away from where we need

09:43:08  2   to be.

09:43:08  3        Now, specifically from the context of BNBM and CNBM.  And

09:43:13  4   I -- Mark, let's skip the description of the PSC plan because I

09:43:20  5   think we're dealing with something slightly different now.

09:43:24  6        The fact that Taishan is in default even if we were

09:43:28  7   proceeding under Rule 55 does not end the discovery rights of the

09:43:32  8   defendants - defendants being Taishan, BNBM and CNBM.  The PSC

09:43:40  9   tends to view this through the lens of:  We have liability, we have

09:43:44 10   a spreadsheet process, we're finished.  But as your Honor knows,

09:43:48 11   we've seen nothing on alternative living expenses, loss of use and

09:43:51 12   enjoyment, and there are a myriad of other issues embedded in the

09:43:55 13   damage determination that have to be addressed.

09:43:58 14        Next slide, Mark.  And the other sort of failing, I

09:44:04 15   think, from the PCS's approach -- and I want to make sure your

09:44:08 16   Honor doesn't fall into this trap as well -- as the Federal Rules

09:44:10 17   of Evidence apply with full force and default proceeding and we

09:44:13 18   can't shortcut this no matter how tempting it is in the name of

09:44:18 19   efficiency to do that.

09:44:19 20        So here we're going to have to have some form of

09:44:22 21   proceeding where there's real evidence and the burdens are in the

09:44:26 22   right place.

09:44:27 23        And here is one of our primary objections -- and your

09:44:31 24   Honor did not specifically address this point, but it's certainly

09:44:34 25   deeply embedded in the PSC's approach.  There is in effect, through

09:44:38 1    Cal Mayo's process or otherwise, an inversion of the burdens of

09:44:43 2    proofs, and there's no legal basis to do that.

09:44:46 3         The plaintiffs still bear the burden of proving their

09:44:49 4    claims, even under a default situation.  So nothing we do should

09:44:53 5    shorthand that, and again, why I think Taishan and CNBM and BNBM

09:44:59 6    moved in the direction of a more limited number of trials is the

09:45:04 7    idea that the trials themselves are going to have to be more

09:45:06 8    extensive proceedings than I'm afraid your Honor and the PSC may be

09:45:11 9    contemplating.

09:45:11 10        And now I am going to turn to the specific situation of

09:45:18 11   BNBM and CNBM, because your Honor has made statements about the

09:45:20 12   fact that there really aren't issues as to liability for us because

09:45:25 13   we're alter egos with Taishan.  Frankly, your Honor, I don't

09:45:28 14   believe that's sustainable.  This is a chart from your Honor's

09:45:32 15   findings of fact and conclusions of law.  You'll see in Louisiana,

09:45:37 16   *Amorin* only CNBM is in default; and that's not a default judgment,

09:45:41 17   that's a preliminary default.  Neither of the BNBM entities are in

09:45:47 18   default.  And that has legal significance in how we proceed here.

09:45:51 19        I don't think there's any basis to proceed on an

09:45:53 20   imputation basis to give the default to the BNBM entities for the

09:45:58 21   following reasons:  If it's BNBM to BNBM -- or excuse me, Taishan

09:46:05 22   to BNBM, your Honor ruled only that you found there was under, as

09:46:12 23   to Louisiana cases, SBE would apply but your Honor specifically in

09:46:19 24   your opinion limited that finding to jurisdictional purposes.

09:46:22 25   That's a fact reservation of some substantial significance here as

09:46:31  1    there are temporal components as to when the attribution theory can

09:46:35  2    apply.  So within the case, there is no basis to say because

09:46:39  3    Taishan is in default, we don't dispute that fact, BNBM and BNBM,

09:46:44  4    PLC should be also in default, or CNBM company for that matter.

09:46:48  5          They take another approach to say, no, no, no, it's not

09:46:52  6    an imputation theory, it's a matter of collateral estoppel or claim

09:46:57  7    preclusion.  Doesn't work either because the matter of black letter

09:47:01  8    law that the only preclusive aspects are matters that were actually

09:47:06  9    litigated and the black letter law is defaults to not create a

09:47:10  10   preclusive effect.

09:47:12  11         So we're left with parties with a substantial interest,

09:47:14  12   which are remote to the processes your Honor has noted, to

09:47:17  13   manufacturing, sales, any aspect to the actual production of

09:47:20  14   drywall.  But what the PSC would do is substantially truncate our

09:47:26  15   rights in the interest of making sure there are assets available.

09:47:31  16         Now, this also implicates some procedural rights.  And

09:47:36  17   our view is the B and C entity that's in this case are entitled to

09:47:44  18   try this matter before a jury.  We may ultimately elect not to do

09:47:48  19   that, but it's our right and one of the limitations we think on

09:47:50  20   shorthand approaches to trying these cases.  Certainly to mass

09:47:56  21   consolidations or the spreadsheet process is we think we retain

09:48:00  22   these rights.

09:48:00  23         And there are two grounds for that:  One, because we

09:48:05  24   think that are not taken from us.

09:48:08  25         The other is Rule 38 and this is -- there are obviously

09:48:12 1    courts that have come out both ways on this issue.  But the premise

09:48:15 2    is that once a party has elected, Rule 38 doesn't allow them to

09:48:19 3    unilaterally withdraw their demand for a jury.  And there are cases

09:48:24 4    in a default setting that say that's still the case.  So we

09:48:29 5    think -- and it may be a complication that's not welcome by the PSC

09:48:31 6    or, in fact, the Court, we have to design a program that maintains

09:48:35 7    the jury trial rights of CNBM and BNBM.

09:48:40 8              This gets us to who we choose, and I think this is

09:48:43 9    implicated in your Honor's proposal as well as the PSC's --

09:48:54 10             THE COURT:  I'm sorry.

09:48:55 11             MR. STENGEL:  Thank you, your Honor.

09:48:57 12             There is no reason, frankly, and this gets to my initial

09:49:00 13   point that I think we still need a bellwether process and that will

09:49:04 14   hopefully herd the cats into some form of resolution here.  But it

09:49:08 15   would be counterproductive under either the PSC's proposal or your

09:49:13 16   Honor's proposal to have a skewed, non-random distribution of cases

09:49:18 17   to be tried, because we all as experienced counsel will take

09:49:23 18   signals from the outcome of trials.  We're not irrational.  But to

09:49:29 19   the extent one party or the other is allowed to sort of tilt the

09:49:34 20   balance in favor of their best cases, it means you're getting

09:49:37 21   nothing but noise out of the process.  And I don't think it's on

09:49:41 22   the table at this point, although I hesitate given I don't think

09:49:45 23   *Germano* was intended to be preclusive and it became that through

09:49:48 24   the damage formula.  Obviously *Chevron* makes it absolutely clear

09:49:54 25   there can be no preclusive effect of bellwethers, or even initial

09:49:58  1    trials if we're going to try all of these things in short order.

09:50:02  2             *Brooke*, Ms. Eikhoff addressed.  *Brooke* is a fresh start.

09:50:11  3    We may not like it, but it's a late filed case.  There are no

09:50:13  4    defaults.  Liability is still fully at issue.  And we agree that

09:50:15  5    since the center of gravity in the *Brooke* litigation is in Florida,

09:50:20  6    and she may not welcome this, but *Brooke* is largely Judge Cook's

09:50:25  7    problem.  But we ought not get too wrapped up with the Louisiana

09:50:28  8    *Brooke* claimants here.  But I just want to make clear that we did,

09:50:31  9    in fact respond to the PSC on that point.

09:50:34 10             THE COURT:  Okay.

09:50:35 11             MR. STENGEL:  In closing, your Honor, we think Taishan

09:50:37 12    and CNBM and BNBM have made rational proposals.  They are clearly

09:50:44 13    aggressive in terms of how quickly we would move through a

09:50:49 14    discovery process and get to bellwether trials.  And granted,

09:50:52 15    there's a central premise there, which is different from your

09:50:55 16    Honor's, that bellwethers still would have some utility in this

09:50:58 17    litigation.  But that is our belief and we don't see any way that

09:51:02 18    we can proceed with either the PSC's proposal, or in fairness your

09:51:06 19    Honor's, without doing substantial violence to the due process

09:51:09 20    rights of the defendants.

09:51:11 21             And to reiterate, it's counterproductive in terms of

09:51:16 22    moving towards a resolution for the defendants to be put in the

09:51:19 23    position where they think this court is in some way rolling over

09:51:22 24    their rights, that will merely harden positions and make it more

09:51:27 25    difficult to get to where we need to be.

09:51:29  1          So unless there are any questions.

09:51:31  2          THE COURT:  No.  Just the problem that I am faced with is

09:51:33  3   that we've been doing this for nine years now.  Every step of the

09:51:38  4   way the defendant has resisted looking at the case.  I mean, we've

09:51:48  5   had jurisdictional issues and a bunch of other things.  It just is

09:51:59  6   apparent -- it appears to me, or at least it's a strong argument,

09:52:03  7   that the whole approach is just delay.  Delay because people die,

09:52:10  8   delay because they lose their homes, delay because they're

09:52:16  9   frustrated and giving up.  And it's a method, and I am not talking

09:52:23 10   about counsel, but it's just -- I don't know how much more I can

09:52:30 11   give you to look at from the standpoint of bellwethers.

09:52:36 12          I mean, we've discovered this case now for nine years.

09:52:40 13   Even going to China to take depositions.  And I think everybody

09:52:45 14   knows the facts of this case pretty well, and it just seems to me

09:52:53 15   that we're just -- we're finding ourselves in, you know, a Dickens

09:53:03 16   kind of Bleak House where we just keep discovering and keep moving

09:53:11 17   the case at glacial speed, and pretty soon the glacier melts and

09:53:18 18   you don't have anything.  And that concerns me.  I am trying to

09:53:22 19   figure a way of just bringing this to a head and getting rid of the

09:53:28 20   case.

09:53:28 21          Not settlement.  I've given up on settlement.  I don't

09:53:31 22   think settlement is feasible, and if I have to be the one to

09:53:36 23   approve it, I am probably not going to approve it.  So we need

09:53:40 24   trials in these cases, and I just need to get either my colleagues

09:53:46 25   in state court, particularly those that have issues of punitive

09:53:50  1   damages and things of that sort, they've got to get on with their
09:53:54  2   thing and I've got to get on with mine.  I just don't see starting
09:53:59  3   bellwethers again.  I mean, you know, we just --

09:54:03  4        It's nine years out at this time.  It's nine years.  And
09:54:08  5   I hear you and I understand your argument and it's not without
09:54:15  6   sincerity and it's certainly not without citations, but that's the
09:54:21  7   pickle that I am in dealing with the case.

09:54:23  8        MR. STENGEL:  Well, your Honor, but as a practical
09:54:25  9   matter, and we tried to address this -- and I am not going to
09:54:28 10   address what happened before we got involved in the litigation
09:54:31 11   because I simply don't know.  But if you take the span of the case
09:54:36 12   since the parties re-entered and re-engaged, it's been a little
09:54:41 13   slow, but we've largely been engaged, other than times where with
09:54:46 14   everyone's consent we stopped because we thought we had something
09:54:50 15   positive by way of resolution, so we lost time.  No one's fault but
09:54:55 16   it happened.

09:54:56 17        But, your Honor, our fundamental point is that it doesn't
09:55:02 18   behoove anyone's interest, certainly not the claimants -- and I am
09:55:06 19   not attempting to wrap myself in the interest of the claimants
09:55:10 20   here, obviously I represent a defendant.  But if something goes
09:55:13 21   forward, if a defective trial process is unleashed, we've already
09:55:17 22   got a matter before the Fifth Circuit, your Honor has heard me in
09:55:22 23   particular on the due process issues that we think are already
09:55:26 24   implicated with the damage model, with class certification, with
09:55:28 25   contempt, et cetera.

09:55:31  1      There are a broad buffet of issues here, most of them

09:55:35  2  worthy of consideration by this circuit.  We go forward with the

09:55:38  3  PSC plan or indeed with what your Honor has outlined -- granted in

09:55:44  4  outline form, not with precision -- I think we are buying greater

09:55:49  5  delay because I think the end result -- and I understand your

09:55:57  6  Honor's pessimism about settlement.  And I can't represent to you

09:56:01  7  that fortune will smile and we'll become reasonable and settle this

09:56:04  8  thing in X days.  I wish I could.  It should.  But it hasn't

09:56:07  9  happened yet for a variety of reasons.

09:56:09 10      But I don't think it's because some sinister orientation

09:56:13 11  towards delay on the part of my clients.  I think our behavior both

09:56:17 12  in resolution discussions and in litigation has been contrary to

09:56:21 13  that.  But I think your Honor should give due consideration to the

09:56:24 14  fact that our paths here diverge fairly substantially, but the real

09:56:32 15  risk is we unleash unlimited war, we're trying ten cases at a time

09:56:38 16  in what I would guess is probably under Rule 42 an improper

09:56:43 17  consolidation.  But we will, I will virtually guarantee your Honor,

09:56:46 18  end up on that in the Fifth Circuit at some point.

09:56:49 19      It will be a long time coming because we don't think

09:56:53 20  54(b) allows a partial damages judgment.  And we could spend

09:56:57 21  another two or three years -- and again, your Honor, I am trying to

09:57:00 22  be very careful, this is not a lawyer threatening your Honor --

09:57:04 23      THE COURT:  No, I understand that.

09:57:05 24      MR. STENGEL:  -- this is just an effort to make an

09:57:08 25  objective assessment of what's likely to happen.  We could be here

09:57:10  1  for sometime even under your Honor's notion.  If we're going to try

09:57:14  2  every case, 900 cases, unless we throw due process just completely

09:57:18  3  out the window, and even with the employment of all the district

09:57:24  4  judges here, who I believe have other things to do, we're going to

09:57:26  5  be here for years.  And we don't want to do that with the idea that

09:57:30  6  all it's going to do is arm the parties with what they think are

09:57:34  7  unlimited set of grounds for appeal.

09:57:36  8          So I think our proposals, and there is a leap of faith

09:57:39  9  for your Honor here, I admit that, that rationality will begin to

09:57:44 10  intrude and the parties will be pushed closer together.  But we at

09:57:48 11  least, I think, posit an exit strategy within some reasonable

09:57:54 12  amount of time.  And my perception of reasonable may be different

09:58:00 13  from your Honor's because I haven't lived through all nine and a

09:58:03 14  half or ten years.

09:58:04 15          THE COURT:  All right.  Thank you.

09:58:04 16          MR. STENGEL:  But that's where we're trying to go, your

09:58:04 17  Honor.

09:58:05 18          THE COURT:  I appreciate it.  Thank you very much.  Let

09:58:07 19  me hear from the plaintiffs.

09:58:12 20          MR. LEVIN:  Well, I wasn't going to mention the aborted

09:58:17 21  settlement, so I won't, whose at fault.  But, your Honor, you put

09:58:22 22  your finger right on what the problem was.  After counsel and the

09:58:26 23  Court invested so much time in this case over nine years, we're now

09:58:36 24  at square one.  Francis Scott Key had one song.  The defendants

09:58:40 25  have one position:  Delay.

09:58:48  1          Your Honor, they won two percent of the cases.  There's

09:58:53  2   no settlement.  There's no talk of settlement.  There's no want of

09:58:57  3   settlement on their part.  It would take 31.9 years to conclude

09:59:02  4   this.

09:59:03  5          This is not what an MDL is about.  An MDL at least was

09:59:11  6   established to get results in mass torts, whether they be

09:59:17  7   antitrust, securities, or mass torts.  And I invite your Honor to

09:59:21  8   look at the *PPA* case of the Ninth Circuit, 460 F.3d 1217.  "For all

09:59:38  9   its work, multidistrict litigation assumes cooperation by counsel

09:59:42 10   and macro-, rather than micro-, judicial management."  Why?

09:59:48 11   Because the Court's business and Counsel's business is to resolve

09:59:53 12   things.  And there's no resolution here.

10:00:00 13          Mr. Stengel says he's new to the process.  He wasn't here

10:00:04 14   when we began.  Your Honor, Orrick, his law firm, was here before I

10:00:14 15   was here in this case.  They were in China, they were in China

10:00:21 16   advising these defendants that they couldn't collect -- that we

10:00:26 17   couldn't collect judgments in the United States.  They were in

10:00:29 18   China advising these defendants that they didn't have to appear.

10:00:35 19   They are the fault of nine years.

10:00:50 20          This case can be resolved in a proper fashion with a

10:00:57 21   Special Master.  If it's a non-jury trial -- case, and I'll get to

10:01:03 22   why it should be a non-jury case -- the plaintiffs can make a prima

10:01:12 23   facie case before the Special Master with regard to move in/move

10:01:16 24   out, foreclosure, short sales.

10:01:19 25          God did we hear a story yesterday on foreclosures and

| | |
|---|---|
| 10:01:23 | 1 |
| 10:01:30 | 2 |
| 10:01:35 | 3 |
| 10:01:36 | 4 |
| 10:01:42 | 5 |
| 10:01:46 | 6 |
| 10:01:53 | 7 |
| 10:02:08 | 8 |
| 10:02:08 | 9 |
| 10:02:11 | 10 |
| 10:02:15 | 11 |
| 10:02:19 | 12 |
| 10:02:23 | 13 |
| 10:02:27 | 14 |
| 10:02:31 | 15 |
| 10:02:38 | 16 |
| 10:02:43 | 17 |
| 10:02:50 | 18 |
| 10:02:58 | 19 |
| 10:03:04 | 20 |
| 10:03:10 | 21 |
| 10:03:15 | 22 |
| 10:03:20 | 23 |
| 10:03:25 | 24 |
| 10:03:30 | 25 |

what a beautiful, personal injury, mental anguish case there would
be for what that fella went through that spoke to this court
yesterday.

          The Special Master can make recommendations and then an
Article III judge can deal with the recommendations that the
Special Master makes.  If people want to resolve matters, they know
how to do it.  Some of us have been doing this for over 50 years.
Now --

          THE COURT:  How would you propose to handle it?

          MR. LEVIN:  I would propose putting *Brooke* aside, and I
don't believe that we should just let *Brooke* go to Florida for
resolution because your Honor has been involved in the liability
aspects of this case.  If the *Brooke* case is tried here and
processed here, there is an awful lot of knowledge that the Court
has that we don't have to re-invent the wheel in Florida.

          I would propose that we use your plan, your Honor:  Have
a Special Master appointed; that we not have to redo the class
hearings; the remediation decision that your Honor wrote; that
square footage, ownership, and product ID be established before the
special master; and that we give a Special Master a plan with
regard to the non-pure remediation aspects; and that we present our
evidence, create our prima facie case, and let the Special Master
make recommendations.  Perhaps the best thing to do is to meet with
that Special Master collectively and provide a plan of the Special
Master for your court to view.

10:03:33  1          But we are not going to try all of these cases for

10:03:36  2     31 years.  And to pick out 24 cases and start right now after nine

10:03:43  3     years is just not proper.

10:03:45  4          THE COURT:  How do you deal with their constitutional

10:03:47  5     argument?

10:03:48  6          MR. LEVIN:  Well, let me tell you how we deal with the

10:03:51  7     constitutional argument, your Honor.

10:03:53  8          First of all, the Fifth Circuit has said in *Dierschke v.*

10:03:59  9     *O'Cheskey,* 975 F.2d 181, that there is no due process in a default

10:04:06 10     judgment, you don't have it.

10:04:08 11          How do we deal with the jury trial?  Rule 38 does not

10:04:14 12     come into play here.  Usually you get a default judgment, the

10:04:20 13     plaintiff has demanded a jury trial and he wants a jury trial in

10:04:24 14     default and that's how it goes up.  But there is a Northern

10:04:31 15     District of Texas case, Flexible Innovations v. IDEA Max, 2013

10:04:46 16     Westlaw 12126232.  I can't get used to those cites, your Honor, I'm

10:04:55 17     too old.  And in a Rule -- under Rule 55 you do not need the jury

10:05:02 18     trial.

10:05:05 19          As to the multiple defaults, every defendant has been

10:05:11 20     defaulted in this case in at least one of the *Amorin* cases, and the

10:05:16 21     *Amorin* cases are all the same in three different jurisdictions

10:05:21 22     because of the personal jurisprudence involved.  And they were all

10:05:28 23     before your Honor, we were dealing with them altogether.  It was an

10:05:32 24     MDL, and, your Honor, you know, has so indicated in your damage

10:05:36 25     opinion.  So I don't see a problem there.

10:05:41  1        The problems that are here are created problems for delay
10:05:48  2   so that all -- because the defendants are playing the long game.
10:05:53  3   In the end, we'll all be dead.  Some of us chronologically we'll be
10:06:02  4   dead sooner than others, but eventually the entire client base will
10:06:07  5   be dead.
10:06:11  6        And for CNBM and BNBM who are single business
10:06:16  7   enterprises, alter egos, to come in here right now and say they
10:06:20  8   know nothing about this case, they have been in this case forever.
10:06:25  9   They have been formulating the plan as to how to defend this case
10:06:33 10   forever.  They were in China before they were in the United States
10:06:37 11   and before these cases were commenced, or at least when the first
10:06:42 12   complaint landed in China.  And for the defendants to say when they
10:06:48 13   came in here that they didn't understand American law when they had
10:06:51 14   American lawyers telling them what the American law was, only shows
10:06:55 15   that there is only one thing that they're interested in, and that's
10:07:00 16   delay.
10:07:01 17        Your Honor, give us a chance.  We'll take the chance with
10:07:05 18   regard to their due process arguments for the Chinese defendants.
10:07:09 19   We'll take the chance with regard to their argument that they know
10:07:12 20   want a jury trial.  We'll take the chance with the fact that there
10:07:15 21   is no -- that the defaults are inappropriate.  We'll take all of
10:07:19 22   those things because after nine years, we've got to do something
10:07:25 23   and we shouldn't -- I learned a long time ago that if you play the
10:07:32 24   game by other people's rules, you're apt to lose because they wrote
10:07:38 25   the rules.  And I think it's time not to play by the defendants'

10:07:43   1    rules.  And your Honor, you know, we'll be guided by what you have

10:07:48   2    to say.

10:07:49   3         THE COURT:  Let me ask you one question.  The class they

10:07:52   4    say include -- does not include all owners, it just includes the

10:07:57   5    present owners.

10:07:59   6         MR. LEVIN:  It just included current owners at the time,

10:08:01   7    yes.  But you can take your findings and apply them to everybody

10:08:05   8    else.  Now, there may be --

10:08:06   9         I would suggest that there are issues here, there's

10:08:08  10    always issues.  But like in pharmaceutical cases, you have a

10:08:15  11    science day.  Perhaps we have a motions day and the plaintiffs do

10:08:20  12    their motions, defendants do their motions, and we take them one at

10:08:24  13    a time over a day or two and resolve them all before your Honor.

10:08:28  14         THE COURT:  Okay.

10:08:30  15         MS. EIKOFF:  May I respond?

10:08:31  16         THE COURT:  Yes.  Sure.

10:08:39  17         MS. EIKOFF:  Your Honor, I just want to respond to a

10:08:41  18    couple of the things that Mr. Levin said.

10:08:44  19         I was surprised to hear him say that the Fifth Circuit

10:08:48  20    has held that due process doesn't apply to a defaulted defendant.

10:08:53  21    That is not the law.  I will cite to you a case *Frame v. SH, Inc.*,

10:09:01  22    967 F.2d 134 (VERBATIM), that says that discretion granted to

10:09:08  23    judges for damages adjudication under Rule 55 is bounded at its

10:09:13  24    outer limits by constitutional due process concerns.  That is

10:09:17  25    citing a Supreme Court case called *Hovey v. Elliott* from 1897.

10:09:23   1   I've gotten to know that case.  It was one of the first cases that

10:09:26   2   I read when we were engaged in this matter in 2015.  Alston & Bird

10:09:34   3   was never involved in the cases before that.

10:09:40   4        In that case, the argument that was being made by the

10:09:44   5   adverse party was that a party that was in contempt and that was in

10:09:48   6   default was entitled to no constitutional rights.  I thought that

10:09:51   7   was an interesting case based on where I was coming from and where

10:09:57   8   our client was at the time.

10:09:59   9        And that case holds, Supreme Court, in no uncertain terms

10:10:04  10   that the Constitution applies and whether a party is in default and

10:10:08  11   whether a party is in contempt, they are still allowed to defend

10:10:13  12   themselves against the imposition of damages, and that is the basis

10:10:16  13   of the due process issues that we've raised today.

10:10:19  14        I want to respond, also, to this allegation that our end

10:10:25  15   game is delay or driven by delay, all we want to do is delay, and

10:10:31  16   that our plan is for delay.  As I put up on the screen earlier and

10:10:36  17   we have in the packet, under the plan that we propose, they would

10:10:40  18   get to an appealable, collectable judgment through a trial, through

10:10:46  19   the first trial in less than a year, in six to ten months.

10:10:54  20        They say that their plan is so much faster.  Well, their

10:10:59  21   plan has changed today, because the plan that they submitted did

10:11:02  22   not have Cal Mayo doing all of the trials on all of the issues.

10:11:06  23   They've shifted to that because it's convenient for them.  Their

10:11:10  24   plan was for every single claimant, all 800 to 900 of them to be

10:11:16  25   deposed on non-remediation damages only and to have discovery on

10:11:22  1    non-remediation damages only and then for all of them to be tried.

10:11:27  2    Our plan is actually faster.  Our plan makes more sense.

10:11:31  3            And I will close on this note.  They say in their brief

10:11:34  4    that their plan is ambitious.  It's ambitious because it's

10:11:38  5    unbounded by constitutional principles.  It's also unbounded by

10:11:43  6    realistic principles.  And so I would ask that if the court does

10:11:49  7    consider their plan, they have a long list of things that they say

10:11:52  8    that the parties need to do in the first 15 days, it includes

10:11:58  9    extensive briefing, it includes obligations on both parties.  Of

10:12:04 10    course we would ask the Court to reject their entire plan; but if

10:12:08 11    it does accept their plan, we would ask that the first 15-day mark

10:12:12 12    be shifted to 30 just so that the parties can more realistically

10:12:16 13    get things done, your Honor.

10:12:17 14            THE COURT:  All right.  Thank you very much.

10:12:20 15            MR. STENGEL:  Your Honor.

10:12:22 16            THE COURT:  You want to respond, Jim?

10:12:24 17            MR. STENGEL:  And I won't respond to the ad hominem

10:12:28 18    attacks.  I think I was fairly precise in saying we hadn't been

10:12:30 19    involved here before your Honor, which was totally accurate.

10:12:34 20            I think two things are instructive there.  One was this

10:12:39 21    sort of on the fly expansion of what Cal Mayo would consider, to

10:12:42 22    include, apparently, claims that we have all, both sides conceded

10:12:46 23    had to be discovered and litigated.  That and the sort of fascicle

10:12:52 24    restructuring of what the class covers and does not, I think

10:12:55 25    bespeaks of a fairly substantial indifference to error here.

10:13:01 1          Procedural error matters and our clients do have rights

10:13:04 2    and we're here to assert those rights and will continue to do so.

10:13:07 3    And to the extent the PSC wants to take the position of, well, you

10:13:11 4    know, close is good enough.  It's not.  And that gets us exactly in

10:13:15 5    the adverse end game I outlined of we go through substantial

10:13:21 6    efforts here, we spend a lot of your time and our time and our

10:13:26 7    clients' time, and we end up with an indefensible outcome in the

10:13:31 8    circuit.  That serves no one's interest.  Thank you, your Honor.

10:13:34 9          THE COURT:  Okay.  I got it.

10:13:34 10          MR. LEVIN:  Your Honor, 30 seconds?

10:13:38 11          THE COURT:  Sure.  Go ahead.

10:13:41 12          MR. LEVIN:  Yes, we did expand what Cal Mayo would be

10:13:45 13    doing, and the reason we did that is we were listening to your

10:13:49 14    Honor and made the adjustment based on what we heard the Court say.

10:13:54 15          THE COURT:  Okay.  Harry.

10:13:55 16          MR. ROSENBERG:  Not substantively.  But when we were in

10:13:59 17    chambers this morning with your Honor, you suggested that it might

10:14:02 18    serve the Court to submit briefs after this hearing, your Honor,

10:14:07 19    because there are a number of issues that have been raised almost

10:14:11 20    for the first time, and we would respectfully ask the Court to

10:14:15 21    afford at least the parties ten business days to do so.

10:14:19 22          THE COURT:  Let's do it in five days, so I'll let you do

10:14:22 23    it.

10:14:22 24          MR. LEVIN:  If they can do five days, we would like five

10:14:25 25    days to reply.

10:14:26  1          MR. ROSENBURG:  I expected it would be simultaneous, your
10:14:30  2   Honor.  Mr. Levin --
10:14:30  3          MR. LEVIN:  I don't know what the issues are.
10:14:32  4          MR. ROSENBERG:  Well, he heard all of the issue.  I don't
10:14:34  5   want to argue the case, but Mr. Levin was pretty articulate.  He
10:14:39  6   can raise the issues like we can, and we'll do it simultaneously.
10:14:42  7          THE COURT:  Yes, I agree, simultaneously.  Let's do it in
10:14:44  8   five days.  The court will stand in recess.  Thank you.
10:14:47  9          MR. ROSENBERG:  Thank you, your Honor.
10:14:48  10          THE DEPUTY CLERK:  All rise.
10:14:50  11       (WHEREUPON, THE PROCEEDINGS WERE CONCLUDED.)

         12

         13                       *  *  *  *  *  *

         14

         15                    REPORTER'S CERTIFICATE

         16

         17          I, Karen A. Ibos, CCR, Official Court Reporter, United
              States District Court, Eastern District of Louisiana, do hereby
         18   certify that the foregoing is a true and correct transcript, to the
              best of my ability and understanding, from the record of the
         19   proceedings in the above-entitled and numbered matter.

         20
                                   ___/s/ Karen A. Ibos_____
         21                        Karen A. Ibos, CCR, RPR, CRR, RMR
                                   Official Court Reporter
         22

         23

         24

         25