Confidential - Subject to Further Confidentiality Review

1           UNITED STATES DISTRICT COURT

2           EASTERN DISTRICT OF LOUISIANA

3   ****************************************************

4   IN RE:  CHINESE-MANUFACTURED   MDL NO. 2047

    DRYWALL PRODUCTS LIABILITY

5   LITIGATION                     SECTION:  L

6   THIS DOCUMENT APPLIES TO       JUDGE FALLON

    ALL CASES

7                                  MAG. JUDGE WILKINSON

8   ****************************************************

9

            CONFIDENTIAL - SUBJECT TO

10          FURTHER CONFIDENTIALITY REVIEW

11             Tuesday, June 2, 2015

12                  — — —

13

14          Videotaped 30(b)(6) Deposition of TAISHAN

15  GYPSUM CO., LTD f/k/a SHANDONG TAIHE DONGXIN CO., LTD.

16  through the testimony of GANG CHE, held in the

17  courtroom of the United States District Court, Eastern

18  District of Louisiana, 500 Poydras Street,

19  New Orleans, Louisiana, commencing at 9:00 a.m., on

20  the above date, before Michael E. Miller, Certified

21  Court Reporter (#27009), Registered Diplomate Reporter

22  and Certified Realtime Reporter.

23                  — — —

24          GOLKOW TECHNOLOGIES, INC.

        877.370.3377 ph | 917.591.5672 fax

25              deps@golkow.com

**FSIA EXHIBIT 27**

Confidential - Subject to Further Confidentiality Review

```
 1   A P P E A R A N C E S:
 2   COUNSEL FOR THE PLAINTIFF CLASS:
 3       HERMAN HERMAN & KATZ LLC
         BY:  RUSS M. HERMAN, ESQUIRE
 4           rherman@hhklawfirm.com
             MADELYN M. O'BRIEN, ESQUIRE
 5           mobrien@hhklawfirm.com
         820 O'Keefe Avenue
 6       New Orleans, Louisiana 70113
         (504) 581-4892
 7
 8       LEVIN FISHBEIN SEDRAN & BERMAN
         BY:  SANDRA L. DUGGAN, ESQUIRE
 9           sduggan@lfsblaw.com
         510 Walnut Street
10       Suite 500
         Philadelphia, Pennsylvania 19106
11       (215) 592-1500
12
13       IRPINO LAW FIRM
         BY:  PEARL A. ROBERTSON, ESQUIRE
14           probertson@irpinolaw.com
         2216 Magazine Street
15       New Orleans, Louisiana 70130
         (504) 525-1500
16
17       GAINSBURGH BENJAMIN DAVID MEUNIER &
         WARSHAUER LLC
18       BY:  RACHEL A. STERNLIEB, ESQUIRE
             rsternlieb@gainsben.com
19       2800 Energy Centre
         1100 Poydras Street
20       New Orleans, Louisiana 70163-2800
         (504) 522-2304
21
22       LAMBERT AND NELSON PLC
         BY:  HUGH P. LAMBERT, ESQUIRE
23           hlambert@lambertandnelson.com
         701 Magazine Street
24       New Orleans, Louisiana 70130-3629
         (504) 581-1750
25
```

Confidential - Subject to Further Confidentiality Review

```
 1   A P P E A R A N C E S:
 2   COUNSEL FOR TAISHAN GYPSUM COMPANY:
 3        ALSTON & BIRD LLP
          BY:  BERNARD TAYLOR, ESQUIRE
 4             bernard.taylor@alston.com
              ALIYYA Z. HAQUE, ESQUIRE
 5             aliyya.haque@alston.com
          One Atlantic Center
 6        1201 West Peachtree Street
          Atlanta, Georgia 30309-3424
 7        (404) 881-7000
 8
          ALSTON & BIRD LLP
 9        BY:  HELEN SU, ESQUIRE
               helen.su@alston.com
10        1950 University Avenue
          5th Floor
11        East Palo Alto, California 94303
          (650) 838-2000
12
13        HANGARTNER RYDBERG & TERRELL LLC
          BY:  ALAN DEAN WEINBERGER, ESQUIRE
14             aweinberger@hanrylaw.com
          One Shell Square
15        701 Poydras Street, Suite 310
          New Orleans, Louisiana 70139
16        (504) 522-5690
17
18
19
20
21
22
23
24
25
```

Confidential - Subject to Further Confidentiality Review

```
 1   A P P E A R A N C E S:

 2   COUNSEL FOR BNBM DEFENDANTS:

 3        DENTONS US LLP
          BY:  DREW W. MARROCCO, ESQUIRE
 4             drew.marrocco@dentons.com
          1301 K Street, N.W.
 5        Suite 600, East Tower
          Washington, D.C. 20005
 6        (202) 408-6400

 7

 8        PHELPS DUNBAR LLP
          BY:  HARRY ROSENBERG, ESQUIRE
 9             harry.rosenberg@phelps.com
          365 Canal Street
10        Suite 2000
          New Orleans, Louisiana 70130-6534
11        (504) 566-1311

12

13   COUNSEL FOR CNBM DEFENDANTS:

14        ORRICK HERRINGTON & SUTCLIFFE LLP
          BY:  ERIC MATTHEW HAIRSTON, ESQUIRE
15             ehairston@orrick.com
          The Orrick Building
16        405 Howard Street
          San Francisco, California 94105
17        (415) 773-5700

18

19        GORDON ARATA McCOLLAM DUPLANTIS & EAGAN LLP
          BY:  EWELL E. EAGAN, JR., ESQUIRE
20             eeagan@gordonarata.com
          201 St. Charles Avenue
21        40th Floor
          New Orleans, Louisiana 70170-4000
22        (504) 582-1111

23

24

25
```

Confidential - Subject to Further Confidentiality Review

```
 1   A P P E A R A N C E S:

 2   COUNSEL FOR THE STATE OF LOUISIANA:

 3       PERKINS COIE LLP

         BY:  DAVID L. BLACK, ESQUIRE

 4           dblack@perkinscoie.com

         1900 Sixteenth Street

 5       Suite 1400

         Denver, Colorado 80202

 6       (303) 291-2400

 7

         OFFICE OF THE ATTORNEY GENERAL

 8       STATE OF LOUISIANA

         BY:  L. CHRISTOPHER STYRON, ESQUIRE

 9           styron@ag.state.la.us

         1885 North Third Street

10       Baton Rouge, Louisiana 70802

         (225) 326-6079

11

12

13   ALSO PRESENT:

14       SUNNY WANG, MANDARIN INTERPRETER

15       YAN GAO

16       CARLING LEE

17       MARK ANCALADE, VIDEOGRAPHER

18                      — — —

19

20

21

22

23

24

25
```

Confidential - Subject to Further Confidentiality Review

```
 1                          INDEX

                          GANG CHE

 2                       June 2, 2015

 3

 4        PROCEEDINGS                                    9

 5

 6    EXAMINATION OF GANG CHE:

 7            BY MR. HERMAN                             26

 8

 9        REPORTER'S CERTIFICATE                      153

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Confidential - Subject to Further Confidentiality Review

```
 1                      DEPOSITION EXHIBITS
                             GANG CHE
 2                         June 2, 2015
 3        NUMBER              DESCRIPTION           MARKED
 4   Exhibit 1-HL_00000025  Chinese Version of         37
                            HL_00000026
 5
     Exhibit 1-HL_00000026  E-mail(s)                  37
 6
     Exhibit 1-HL_00000305  Chinese Version of         38
 7                          HL_00000306
 8   Exhibit 1-HL_00000306  E-mail(s)                  38
 9   Exhibit 4-ALRMH-       CNBM Shareholding         122
     CNBM00004252           Structure of the Group
10
     Exhibit 4A-ALRMH-      Chinese Version of        123
11   CNBM00004361           ALRMH-CNBM00004252
12   Exhibit 5-ALRMH-       CNBM Shareholding         130
     CNBM00004117           Structure of the Group
13
     Exhibit 5A-ALRMH-      Chinese Version of        130
14   CNBM00000655           ALRMH-CNBM00004117
15   Exhibit 8-ALRMH-       CNBM Shareholding         132
     CNBM00001528           Structure of the Group
16
17   Exhibit 8A-ALRMH-      Chinese Version of        132
     CNBM00001734           ALRMH-CNBM00001528
18
     Exhibit 9-ALRMH-       CNBM Notes to the          85
19   CNBM00002134           Consolidated Financial
                            Statements
20
     Exhibit 9A-ALRMH-      Chinese Version of         85
21   CNBM00002348           ALRMH-CNBM00002134
22   Exhibit 12-ALRMH-      CNBM Notes to the          69
     CNBM00003337           Consolidated Financial
23                          Statements
24
25
```

Confidential - Subject to Further Confidentiality Review

```
 1                    DEPOSITION EXHIBITS

 2

 3   Exhibit 12-ALRMH-        CNBM Notes to the          59
     CNBM00003358            Consolidated Financial
 4                           Statements
 5   Exhibit 12A-ALRMH-      Chinese Version of          69
     CNBM00003555            ALRMH-CNBM00003337
 6

     Exhibit 12A-ALRMH-      Chinese Version of          59
 7   CNBM00003576            ALRMH-CNBM00003358
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Confidential - Subject to Further Confidentiality Review

```
 1                    PROCEEDINGS

 2            (June 2, 2015 at 9:00 a.m.)

 3            (The following proceedings were

 4            conducted off the videotaped record.)

 5            JUDGE FALLON:  For those of you that I

 6       have sitting before me, welcome to the

 7       courtroom.  We have today some depositions, and

 8       there's a motion in connection with the

 9       depositions, and so I'd like to speak on the

10       motion and give you my views on it.

11            Just to put this matter in some

12       perspective, after the Fifth Circuit confirmed

13       my ruling affirming that this Court had

14       jurisdiction over Taishan, Taishan took an

15       unusual position and fired its lawyers and, in

16       effect, announced that they quit the litigation.

17            I gave them a number of times to come

18       and reconsider.  In fact, I kept the lawyers in

19       the case for a while because I felt that I

20       didn't have access to Taishan and I expected

21       their lawyers or their former lawyers to advise

22       them of all the happenings in the court.  But

23       eventually I had to move on with the litigation.

24            The plaintiffs' committee filed a motion

25       for a judgment debtor rule to collect on the
```

Confidential - Subject to Further Confidentiality Review

```
 1          judgment that I had issued in Germano and the

 2          other case in my holding for jurisdiction.  I

 3          granted the motion, actually.  I notified the

 4          defendant to come to the judgment debtor ruling.

 5          They failed to appear.

 6                  I continued it, I think one time, and

 7          when they failed to appear again, I proceeded

 8          with it.  I held them in contempt of court, and

 9          you'll recall that I issued the contempt order

10          on July 17th of 2014.

11                  In the contempt order, I ordered Taishan

12          to pay $15,000 of attorneys' fees to plaintiffs'

13          counsel.  I further ordered Taishan to pay a

14          $40,000 penalty for contempt, and I also ordered

15          them to pay the judgment, of course.  And

16          finally, I ordered that Taishan or any of its

17          affiliates or subsidiaries would be enjoined

18          from doing business in the United States until

19          they satisfied the Court's contempt order.

20                  And I put in the contempt that if they

21          violated the contempt order, they or their

22          affiliates did business and subsidiaries did

23          business in the United States, they would have

24          to forfeit 25% of their earnings during that

25          period of time.
```

Confidential - Subject to Further Confidentiality Review

```
 1                  Eventually, Taishan reconsidered and
 2          came into the litigation, once again, on
 3          March 27th, 2015.  They paid the 15,000
 4          attorneys' fees, they paid the $40,000
 5          penalties, and they paid several million dollars
 6          judgment.  But there was still outstanding the
 7          issue of 25% of the earnings that either Taishan
 8          or its affiliates or subsidiaries earned during
 9          the -- July 17, 2014, to March 27th, 2015.  So
10          discovery is proceeding.
11                  Meanwhile, I proceeded with the class
12          certification for the remainder of those
13          affected in the various states.  I proceeded
14          with that before the issuing of the contempt
15          order.  I proceeded with that, but Taishan
16          didn't appear, again.  I held the class
17          certification hearing.  I granted the class
18          certification, and I granted the judgment on the
19          liability.
20                  I scheduled a hearing for damages in the
21          future.  On the 11th hour and probably
22          59 minutes of that eleventh hour, Taishan made
23          an appearance and asked to continue the damage
24          hearing, which I did, and then I continued it,
25          once again, at the request of Taishan because
```

```
 1          they're doing their best to get witnesses and do

 2          their discovery.

 3                  The hearing at that time was set for

 4          June the 9th.  After continuing it, it was about

 5          a month, maybe two months after our first

 6          scheduled hearing.  I anticipated two tracks at

 7          that time.

 8                  One, I anticipated the damage track,

 9          because we were coming up to the hearing; and

10          with the damage track, I thought that the bulk

11          of the discovery would be conducted by Taishan.

12          I would expect that they would want to know and

13          hear from the plaintiffs' witnesses because the

14          plaintiff has the burden of proving the damages.

15          Taishan would want, and I felt they had a right,

16          to depose the plaintiffs' experts on that issue,

17          or any witnesses that they felt that they needed

18          some information on.

19                  With regard to the other track, namely

20          the contempt track, I anticipated that the

21          plaintiffs would be interested in finding out

22          whether -- first, whether Taishan did any

23          business in the United States, whether any of

24          their affiliates did any business in the United

25          States, whether any of their subsidiaries did
```

```
 1          any business in the United States.

 2                  With regard to whether Taishan did any

 3          business in the United States, that's what I

 4          anticipated in the plaintiffs' discovery aspect

 5          of the case.  Shortly -- well, not shortly, but

 6          more recently, BNBM filed a motion contesting

 7          the Court's jurisdiction over it.

 8                  Now, I've had some experience with the

 9          contesting of jurisdiction because Taishan did,

10          initially, and that motion by Taishan a couple

11          of years ago required two trips to China, one

12          trip from the Court, two trips for the lawyers,

13          a number of motions.

14                  I took as long as I could to write an

15          opinion on it, and I didn't have enough time to

16          write it, so it would rattle on.  If I had more

17          time, I would have written a shorter opinion,

18          but I didn't.  I tried to get it out as quickly

19          as I could.

20                  I wrote an opinion.  The Court of

21          Appeals took it up -- two panels of the Court of

22          Appeals took it up, and they affirmed the

23          opinion.

24                  So we are proceeding -- at this point, I

25          was anticipating two tracks.  Now, BNBM
```

```
 1              introduced the jurisdictional track.  Based on

 2              the experience that I've had with Taishan, it

 3              didn't seem to me that there was enough time to

 4              do the discovery on the jurisdictional track.

 5                   As I say, it took months to get

 6              jurisdiction issues before the Court in Taishan.

 7              It didn't seem to me that the lawyers, within a

 8              week or two, could do all of that.  So this was

 9              a third track, so I suggested to the lawyers

10              that we prioritize and do the discovery on the

11              first two tracks, prioritize and keep the

12              jurisdictional aspect of the case for another

13              day so that the lawyers then could focus on what

14              they needed from all the parties dealing with

15              BNBM's jurisdictional contest.

16                   The hearings today, the motions, the

17              depositions today, I was interested in having

18              them dealing with the first two tracks, namely

19              the contempt track and the damage track.  But

20              with regard to the contempt track, the scope of

21              the contempt track is whether Taishan did any

22              business within the period in question.

23                   Now, Taishan can do business in its own

24              name or by an alter ego.  That's part of what's

25              of interest in the contempt track.  They may not
```

```
 1          have done any business in the United States.

 2          They may not have done any alter-ego business in

 3          the United States.  Whether any of their

 4          affiliates or subsidiaries did any business in

 5          the United States, that's dealing with the

 6          contempt track.  If so, how much did they earn?

 7          Those are really the issues that I saw with

 8          regard to the discovery on the contempt track.

 9                Taishan moves to limit the discovery on

10          the contempt track and says that alter ego is

11          not a part of the contempt track.  It is a part

12          of the contempt track.  Affiliates are part of

13          the contempt track.  Associates are part of the

14          contempt track.  Taishan is a part of the

15          contempt track.

16                Now, does it have any effect on BNBM?  I

17          don't know, but that's going to be a discovery

18          part that's going to have to play itself out.

19          Now, I might say that BNBM's attorneys in our

20          discussions on this -- BNBM's attorneys

21          recognize that some of the people at least

22          originally scheduled -- I don't know whether or

23          not the schedule of all the witnesses were able

24          to come, but that some of the witnesses may have

25          some information on jurisdiction.
```

1          Now, BNBM's attorney said it makes sense

2     to him, just as it made sense to the plaintiffs'

3     attorneys, if that person knows something about

4     BNBM, rather than having them come back to the

5     United States, although we welcome them and

6     happy they're here, not to incur all that cost,

7     let him do his discovery at this time.  That

8     seemed realistic to me, reasonable to me.

9          BNBM's attorney said, "We can work it

10    out, Judge.  There's no problem."  I appreciate

11    that.  I assumed that that would be able to be

12    worked out.

13         Now, to be fair, Taishan didn't take an

14    interest, didn't take a role in that.  Taishan

15    didn't agree with that.  And in any event,

16    Taishan voiced some concerns to whether or not

17    they could prepare a witness in such a short

18    time on everything.  I don't know whether that's

19    Taishan's -- I don't know whether they have a

20    dog in that fight, so to speak, on BNBM's doing

21    business in the United States.  They have

22    different lawyers.

23         So it seems to me that Taishan is trying

24    to cut this too finely.  Some of the information

25    on alter ego may have a relationship to BNBM's

```
 1          jurisdiction, but it certainly will have a

 2          relationship to whether or not they're in

 3          contempt of court.

 4               So I don't -- I'm going to deny the

 5          motion.  I may have to -- it may turn out to be

 6          scope, and I'm available -- if we get too far

 7          out of the area that I feel is appropriate for

 8          the contempt, I'll step in and rule on it.  But

 9          just to blanket say that there's no questions

10          can be asked on alter ego, that's how Taishan

11          may or may not have done business in the United

12          States.

13               The fact that they're doing business in

14          the United States, I'm interested in whether or

15          not they in any way did business in the United

16          States or their affiliates did business in the

17          United States during that period of time.  So

18          that's the way I see the issue.

19               MR. TAYLOR:  Your Honor, may I be heard?

20               First of all, good morning, Your Honor.

21               JUDGE FALLON:  Good morning.

22               MR. TAYLOR:  Pleasure to be here with

23          you.  I'm Bernard Taylor, attorney for Taishan.

24          And, Your Honor, may I visit with you?

25               JUDGE FALLON:  Sure, please do.
```

Confidential - Subject to Further Confidentiality Review

```
 1              MR. TAYLOR:  First, I want to introduce
 2        you to Mr. Che, who is here to be the witness.
 3              JUDGE FALLON:  Welcome to you, sir.
 4        Glad you're here.
 5              MR. CHE:  Glad to see you again, Your
 6        Honor.
 7              MR. TAYLOR:  And my colleagues, Helen Su
 8        and Aliyya Haque.
 9              JUDGE FALLON:  Welcome to you.
10              MR. TAYLOR:  And, Your Honor, in regards
11        to the Court's ruling, I understand it, and I
12        agree with it, with this one exception.
13              JUDGE FALLON:  Sure.
14              MR. TAYLOR:  I totally agree that during
15        the contempt period, issues regarding alter ego
16        and all of that is appropriate, and that means
17        from July until March, you know, and that's
18        expansive.  And we have prepared our witness as
19        best we could -- can, and I think he's pretty
20        well prepared to deal with those issues during
21        that period.
22              JUDGE FALLON:  Good.
23              MR. TAYLOR:  The issue we have is that
24        the questions that learned counsel has raised
25        covers a period of time from 2005, all the way
```

```
 1          up to 2015, almost, in some questions, to the
 2          present.  And that's where we were raising the
 3          issue.  So we probably didn't state it as well
 4          as we should have stated it in our briefing.
 5              But what we were raising is that to be
 6          able to answer questions going on alter ego and
 7          those kinds of issues, going all the way back to
 8          2005, would take us more time, because we needed
 9          to look at more documents and we needed to
10          understand those issues so that we could be sure
11          that the witness was prepared.
12              Now, having said that, Your Honor, we
13          said in our briefing that we filed last Friday
14          that we were going to try to work it out with
15          counsel over the weekend.  We weren't able to
16          work it out.  But I think we can say to the
17          Court that Mr. Che has worked hard, and in
18          working hard -- and this is very similar to
19          BNBM, we believe that he will make every effort
20          to try to respond to questions, even questions
21          including the expansive -- more expansive time
22          period.  But he may not be able to answer them
23          all.
24              JUDGE FALLON:  I understand.
25              MR. TAYLOR:  And if he's not able to
```

Confidential - Subject to Further Confidentiality Review

1        answer them all, Mr. Che has indicated that he's

2        willing to ask come back, gather that

3        information to help the PSC with the information

4        they need, and provide it during the course of

5        another deposition setting.  That's really all

6        we're asking for.

7              JUDGE FALLON:  Okay.  Sure.

8              MR. HERMAN:  May it please the Court,

9        Good morning, Judge Fallon.  Russ Herman for the

10       plaintiffs' legal committee.  With me, Rachel

11       Sternlieb.  She is from the Gainsburgh firm.

12             MS. STERNLIEB:  Good morning, Your

13       Honor.

14             MR. HERMAN:  Yan, our trusty

15       interpreter; Sandy Duggan from the Levin

16       Fishbein firm; and from the Irpino firm, Pearl

17       Robertson.  We also have in the courtroom, my

18       partner, Leonard Davis; and Skip, who Your Honor

19       is familiar with those on the PSC.

20             Your Honor, I strenuously object to the

21       time frame.  Taishan has -- not counsel for

22       Taishan.  I want to be clear.  Taishan has put

23       us in an untenable position, but we have found a

24       way to deal with it.  It was originally

25       untenable.

1                    Mr. Wenlong Peng, pronounced "Peng,"

2          P-E-N-G, was the general manager throughout the

3          entire period.  He's not here.  He left under

4          some sort of circumstances we don't know about,

5          from Taishan's employment.  He was the most

6          knowledgeable person next to Chairman Jia.

7                    Chairman Jia was not only the chairman,

8          and, at times, head of the supervisory committee

9          and a director of Taishan throughout the period,

10         and also held positions during the period from

11         2005 through 2014, at least through July.  We

12         don't know, right now, what his position is.

13                    Unfortunately, we were advised 71 days

14         ago that he could not be produced in the United

15         States because he had a heart problem.  But, of

16         course, Taishan has had -- unlike the more than

17         3,000 individuals who are still suffering from

18         defective drywall, Taishan has had years of

19         opportunity, as we will show, to prepare

20         witnesses.

21                    The gentleman from China who's produced

22         as a 30(b)(6) witness, we appreciate very much.

23         However, Taishan has had lawyers in China now

24         since 2010, has had lawyers in the United States

25         for four or five years before learned counsel

Confidential - Subject to Further Confidentiality Review

1      opposite became counsel, from Alston & Bird.

2             Now, alter ego involves a number of

3      factors, facts, which Your Honor has elucidated

4      previously in written opinions, which the Fifth

5      Circuit has twice approved, and in the last case

6      before the Fifth Circuit, a three-judge panel

7      had indicated that there was no appreciable

8      difference between alter ego in China and alter

9      ego in the United States.

10             Learned counsel has chosen, I suppose,

11     unless Taishan has been directed by an alter

12     ego, to produce a gentleman who effectively was

13     a salesman for most of this period.  I don't

14     know what his current position is, and I will

15     not know until I ask the questions.

16             In the meantime, after decisions were

17     made and upheld, there was never an opportunity

18     for plaintiffs to question Taishan about

19     Hogan Lovells' documents that Taishan produced

20     and which were deprivileged.  At least one of

21     those documents says that Chairman Jia --

22             MR. TAYLOR:  Excuse me, Your Honor.  I

23     hate to interrupt, but I think you know where

24     I'm going with this.

25             JUDGE FALLON:  Counsel, look, we're

Confidential - Subject to Further Confidentiality Review

1          dealing with Mr. Che here.  How many witnesses

2          do you have?

3                    MR. TAYLOR:  One witness, Your Honor.

4                    JUDGE FALLON:  That's the witness.

5                    What he knows -- Mr. Che, I expect you

6          to tell what you know.  If we're in an area --

7          go ahead, Ms. Translator.

8                    I expect you to tell what you know.  If

9          you know something, I expect you to answer the

10         question.  If you don't know it, just say you

11         don't know it, and we'll deal with it.  I'm

12         interested in the area of the contempt.

13                   If he can answer questions outside of

14         that area, I expect him to do so.  If he can't

15         answer questions outside of that area, I expect

16         Taishan to bring somebody -- when that issue is

17         before me, to bring somebody to the United

18         States, whether it's Mr. Che or someone else --

19                   MR. TAYLOR:  That's correct, Your Honor.

20         We will do that.

21                   JUDGE FALLON:  -- and make them

22         available.  Do you agree to do that?

23                   MR. TAYLOR:  We agree.

24                   MR. HERMAN:  I understand.  Thank you,

25         Your Honor.

```
 1            JUDGE FALLON:  Anything further from

 2       anybody?  How about the logistics?  Are you-all

 3       situated there?  You've got a room?

 4            MR. TAYLOR:  I thought we were going to

 5       do it in here.  Should we do it --

 6            JUDGE FALLON:  No, no, I don't mean

 7       that.

 8            MR. TAYLOR:  Outside for --

 9            JUDGE FALLON:  No, you can do it here.

10       I'm asking whether there's a coffee room or

11       something of that sort that you need.

12            MR. HERMAN:  We have 22 boxes of

13       exhibits in the jury room that we arranged in

14       advance.  We also have lunch ordered for our

15       team in the jury room.

16            MR. TAYLOR:  So I think we probably will

17       need a room also.

18            JUDGE FALLON:  All right.  Harry, you

19       can use the conference room, if you need to.

20            MR. ROSENBERG:  Thank you, Your Honor.

21            JUDGE FALLON:  And work it out sometime

22       later.

23            MR. TAYLOR:  Thank you, Your Honor, very

24       much.

25            JUDGE FALLON:  Let me know if you-all
```

Confidential - Subject to Further Confidentiality Review

1           need me, and I'll come back out and deal with

2           it.

3                   (Recess taken, 9:23 a.m. to 9:34 a.m.)

4                   (The following proceedings were

5                   conducted on the videotaped record.)

6                   THE VIDEOGRAPHER:  We're now on the

7           record.  My name is Mark Ancalade, the

8           videographer with Golkow Technologies.  Today is

9           June 2nd, 2015, at the time indicated on the

10          video screen, which is 9:34.  Taken in the

11          matter of Chinese Manufactured Drywall Products

12          Liability Litigation, being heard before the

13          United States District Court, Eastern District

14          of Louisiana.

15                  The deponent is Taishan Gypsum Company,

16          Limited, formerly known as Shandong Taihe

17          Dongxin Company, Limited through their

18          representative, Mr. Che Gang.

19                  Would the court reporter, Mr. Mike

20          Miller, please swear in the witness.

21                  MR. HERMAN:  Excuse me.  Also is here on

22          behalf of its wholly owned subsidiary,

23          identified as TPP.

24                  MR. TAYLOR:  TTP.

25                  MR. HERMAN:  TTP.

Confidential - Subject to Further Confidentiality Review

```
 1                  (Interpreter sworn.)

 2                  (Oath administered to the witness.)

 3              MR. CHE:  What should I say?  Should I

 4      start all over again?  So do I take the oath?

 5              MR. HERMAN:  Does he say yes?

 6              MR. CHE:  Yes.

 7              MR. HERMAN:  Okay.  Thank you.

 8                      GANG CHE,

 9          having been first duly sworn,

10              testified as follows:

11                  EXAMINATION

12  BY MR. HERMAN:

13      Q    Good morning.

14      A    Hello.

15      Q    You are aware that in 2006 and 2007, Taishan

16  was shipping to the United States of America drywall

17  manufactured by Taishan; isn't that true?

18      A    I'm not sure.

19      Q    In 2006 and 2007, what was your official

20  position as an employee of Taishan?

21      A    2006?  Well, in 2006 and 2007, I was TTP's

22  employee.

23      Q    All right.  Were you aware that TTP was

24  shipping Chinese drywall to the United States of

25  America in 2006 and 2007?
```

1     A     As far as I know, we did FOB Chinese port.

2  I'm not sure whether it eventually arrived in the

3  United States or not.

4     Q     Would you try to answer my question "yes,"

5  "no," or "I don't know," and you may explain your

6  answer after you answer "yes," "no" or "I don't know."

7             As an employee of TTP in 2006 and

8  2007, was not TTP a hundred percent owned by Taishan?

9     A     Yes.

10     Q     Now, you were in the sales division of TTP

11  as an employee in 2006 and 2007; isn't that true?

12     A     Yes.

13     Q     In 2006 and 2007, was Chairman Jia chairman

14  of Taishan; isn't that true?

15     A     Yes.

16     Q     In the year 2010, were you in the sales

17  division of Taishan or its subsidiary, TTP; isn't that

18  true?

19     A     Can you repeat that, please?

20     Q     Yes.

21             Were you in sales with Taishan and TTP

22  in the year 2010?

23     A     In the year 2010, I had already returned to

24  Taishan, while TTP had stopped manufacturing.

25     Q     Were you in sales with Taishan in 2010?

Confidential - Subject to Further Confidentiality Review

```
 1    A     Yes.

 2    Q     Were you in sales in Taishan in 2012?

 3    A     Yes.

 4    Q     Were you in sales in Taishan in 2014?

 5    A     Yes.

 6    Q     Are you in sales with Taishan today?

 7    A     Yes.

 8    Q     Have you ever been a director of Taishan

 9  from 2005 until today?

10              THE INTERPRETER:  May the interpreter

11       clarify with counsel?

12              MR. HERMAN:  I'm sorry?

13              THE INTERPRETER:  "Director" -- the word

14       "director" can be interpreted in two different

15       meanings:  Director of a board of directors, or

16       director as a director of a sales team or other

17       purpose.

18              MR. HERMAN:  Thank you.

19  BY MR. HERMAN:

20    Q     Since 2005 to today, have you been a member

21  of the board of directors of Taishan?

22    A     No.

23    Q     Have you ever been the general manager of

24  Taishan from 2005 until today?

25    A     No.
```

1        Q      In 2014, did you have any executive position

2    with Taishan?

3        A      Which year?  Which year?

4        Q      2014.

5        A      2014?

6        Q      2014, were you an executive of Taishan?

7        A      No.

8        Q      What position, as you sit here today, do you

9    hold in Taishan?

10        A      I'm the manager of the foreign trade

11    department of Taishan's sales company.

12        Q      In 2014, isn't it true that BNBM owned 65%,

13    direct or indirect, of Taishan?

14        A      I'd like to raise a request.  When you

15    mention the year, I would like you to write it down on

16    a piece of paper, because I have a hard time hearing

17    you.

18        Q      Sure.  Sure.

19        A      Because I have a hard time hearing that

20    year, so can you repeat that, please?

21        Q      In 2014, isn't it true that Beijing New

22    Building Materials Company owned 65% of Taishan?

23        A      Are you talking about BNBM Company Inc.?

24        Q      Yes.

25        A      Correct.

Confidential - Subject to Further Confidentiality Review

1       Q       Isn't it true that in 2014, Mr. Chairman Jia

2    was chairman of Taishan?

3       A       Correct.

4       Q       And isn't it true, in 2014, that Mr. Peng,

5    Wenlong Peng, was the general manager of Taishan?

6       A       No.

7       Q       Who was the general manager in 2014 of

8    Taishan?

9       A       General Manager Jia.

10      Q       In 2014, who were the members of the board

11   of directors of Taishan?

12      A       Jia Tongchun, Wong Bin, Chen Yu, Yang

13   Yanjun, Lin Xueyoung.

14      Q       What was Jia's position with Taishan during

15   the year 2014?

16              MR. TAYLOR:  Counsel, this is -- I want

17        to be sure that you know that "Jia" and "Ja" are

18        the same person.

19              MR. HERMAN:  Yes.

20              MR. TAYLOR:  Okay.  Good.

21      A       What do you mean?

22   BY MR. HERMAN:

23      Q       Isn't it true that former Chairman Jia owned

24   5% of the stock in Taishan in 2014?

25      A       Why did you use the word "formal"?  I don't

1    understand.

2        Q    I didn't use the word "formal."  If I did, I

3    made a mistake, so I'll ask the question again.

4                    Isn't it true that -- strike that.

5                    Was Chairman Jia still chairman of

6    Taishan in 2014?

7        A    Yes.

8        Q    And isn't it true that he owned 5% of the

9    stock shares in Taishan in 2014?

10       A    Yes.

11       Q    What positions, if any, did Jia hold in BNBM

12   in 2014?

13       A    No.

14       Q    In CNBM in 2014?

15       A    No.

16       Q    In BNBM Group in 2014?

17       A    Nothing either.

18       Q    In CNBM Group in 2014?

19       A    Nothing there either.

20       Q    Isn't it true that BNBM was entitled to

21   elect a majority of the board of directors of Taishan

22   in 2010?

23       A    Can you repeat, please?

24       Q    Yes.

25                    Isn't it true that Beijing New

Confidential - Subject to Further Confidentiality Review

 1   Building Materials Company Inc. was entitled to select

 2   a majority of the board of directors of Taishan in

 3   2010?

 4       A     The directors of the directors board in

 5   Taishan were selected through the board of directors

 6   by the directors of Taishan.

 7       Q     I'll ask the question a different way.

 8             Did --

 9             MR. TAYLOR:  We've got a question about

10       the translation.

11             MS. SU:  I think he said --

12             MR. HERMAN:  Whoa, whoa.

13             MR. TAYLOR:  How do we handle that?  We

14       don't want him to hear it, I know.

15             MR. HERMAN:  If you have a question, ask

16       Bernard in English, and Bernard will then put it

17       on the record.

18             MR. TAYLOR:  Okay.

19             (Conference out of the hearing of the

20             reporter between Ms. Su and Mr. Taylor.)

21             MR. TAYLOR:  It's our understanding that

22       the translation is that the directors were

23       chosen by the shareholders of Taishan.  I don't

24       know if...

25             THE INTERPRETER:  I have a question.  We

```
 1          can confer off the record if there's any

 2          translation issues, but I don't know is she

 3          certified or she's official translator for the

 4          Court.  Otherwise --

 5                   MR. HERMAN:  Well, that's their

 6          objection on the record, okay?

 7                   MR. TAYLOR:  Yeah.

 8                   MR. HERMAN:  I will ask the question a

 9          different way.

10  BY MR. HERMAN:

11      Q    Isn't it true that BNBM Company had the

12  right to elect a majority of the directors board of

13  Taishan?

14      A    Yes.

15      Q    Isn't it true that CNBM controlled Taishan

16  through a subsidiary, BNBM?

17      A    No.

18      Q    Was there -- strike that.

19                   Was CNBM Group a controller of Taishan

20  through BNBM?

21                   MR. HAIRSTON:  Object to form.

22                   MR. HERMAN:  Can you answer my question,

23          please?

24                   THE WITNESS:  Can you repeat that,

25          please?
```

Confidential - Subject to Further Confidentiality Review

1           THE INTERPRETER:  The interpreter

2      will --

3           MR. HERMAN:  Let's start at the top.

4  BY MR. HERMAN:

5      Q    Did CNBM Group have a right through a

6  subsidiary to control Taishan?

7           MR. HAIRSTON:  Object to form.

8      A    I don't know.

9  BY MR. HERMAN:

10     Q    Did CNBM, through a subsidiary, have a right

11 to control Taishan?

12          MR. HAIRSTON:  Objection.

13     A    I don't know.

14 BY MR. HERMAN:

15     Q    Are you familiar with the Taishan

16 deprivileged document that said Chairman Jia and Peng

17 had no ability to make a decision and that it had to

18 have a decision by CNBM or CNBMG?

19          MR. TAYLOR:  Objection and assert or

20      request that the court reporter certify that

21      question because it references information

22      contained in a highly confidential document, and

23      will have to be handled that way pursuant to the

24      Court's orders.

25          MR. HERMAN:  Will you answer my

1          question, please?

2     A     I don't understand what he just whispered to

3     me.  The interpreter just interpreted the objection of

4     counsel --

5     BY MR. HERMAN:

6     Q     Well, have you seen a Taishan document --

7     sir, have you seen a Taishan --

8     A     Did my attorney advise me not to answer the

9     question?  Do I need to answer the question?

10          MR. TAYLOR:  I am not advising him not

11          to answer.  He can answer.  And I'll make that

12          clear with every objection.

13    BY MR. HERMAN:

14    Q     Have you -- sir?  Yes.

15          Have you seen, or do you recall

16    seeing, a Taishan document in which it was said -- in

17    which it was said that neither Chairman Jia or

18    Mr. Peng had the authority to make a decision, but the

19    decision had to be made by CNBM or CNBM Group?

20    A     May I take a look at that document?

21    Q     Yes, you may look at the document.  Would

22    you like to see it in English and Chinese?

23    A     Chinese and English, fine.

24          MR. TAYLOR:  Counsel, I need to -- my

25          client is working with his beads here, and I

Confidential - Subject to Further Confidentiality Review

1           need to tell him that it's interfering with

2           the --

3                   And for the record, I think since we --

4           Russ, are you going to go through all of the

5           Hogan Lovells documents at this time?

6                   MR. HERMAN:  No.

7                   MR. TAYLOR:  Okay.  Well, just for the

8           record, as we go through the Hogan Lovells

9           documents, and at any point when he goes through

10          the Hogan Lovells --

11                  MR. HERMAN:  I'll be sure to identify

12          them, Counsel.

13                  MR. TAYLOR:  I'm putting something on

14          the record, Counsel.

15                  MR. HERMAN:  Oh, okay.  I'm sorry.

16                  MR. TAYLOR:  That's all right.  I accept

17          your apology.

18                  -- that the Court's highly confidential

19          order will apply, and that any testimony

20          regarding these documents and the documents

21          themselves will be handled as highly

22          confidential and will be not -- will be sealed

23          and protected in the record.

24                  (Interruption by the videographer.)

25                  MR. HERMAN:  You're going to have to put

1          a piece of tape here.  Sorry for interrupting

2          the picture.

3                  (T:6/2/15-6/4/15 Exhibit 1-HL_00000026

4          marked.)

5                  (T:6/2/15-6/4/15 Exhibit 1-HL_00000025

6          marked.)

7    BY MR. HERMAN:

8      Q    Sir, I'm going to hand you documents

9    produced by Taishan on July 7th, 2014.  Now, I have

10   previously provided these documents to your counsel,

11   and these are your set of documents.  And I will point

12   you to the numbers in the lower right-hand corner,

13   which are Hogan Lovells, HL_26 in English, and HL_ 25

14   in Chinese.

15                  Sir, have you seen those documents

16   previously?

17     A    This is in English.  May I see the Chinese

18   portion?

19             MR. TAYLOR:  Yeah, 25 is not a Chinese

20          translation, I don't think, at least not the

21          part that was not redacted.

22             THE INTERPRETER:  The interpreter just

23          explained to the deponent that Exhibit 25 is

24          bilingual, with English portion on top and the

25          Chinese translation at the bottom.

1             MR. TAYLOR:  Yeah.  So did you want him

2        to see a -- because the only thing that's in

3        Chinese is just the general e-mail transmission

4        information.

5             MR. HERMAN:  Uh-huh.

6             MR. TAYLOR:  Did you want him to have

7        the other part so he can answer the question?

8             MR. HERMAN:  Sure.

9             MR. TAYLOR:  Do we have it, the Chinese

10       version?

11            MR. HERMAN:  I've got everything that

12       was deprivileged, yes.

13            MR. TAYLOR:  He needs the Chinese

14       version to answer the question.

15            MR. HERMAN:  This is how it was produced

16       to us.

17            (T:6/2/15-6/4/15 Exhibit 1-HL_00000305

18            marked.)

19            (T:6/2/15-6/4/15 Exhibit 1-HL_00000306

20            marked.)

21  BY MR. HERMAN:

22     Q    I'm going to hand you several documents in

23  Chinese, 305 -- you have 25 in front of you -- marked

24  HL.  Would you read those two documents.

25     A    This one?

Confidential - Subject to Further Confidentiality Review

1      Q     And 25.

2                 MR. TAYLOR:  What was the other?  Was it

3           305?

4                 MR. HERMAN:  Yes.

5                 MR. TAYLOR:  Thank you, sir.

6                 Just to be sure I'm clear on the record,

7           because we got several documents, did counsel

8           provide him with 25, 26 and 305?

9                 MR. HERMAN:  Yes.

10                MR. TAYLOR:  Thank you, Counsel.

11     A     Exhibit 25 is in English.

12                THE INTERPRETER:  The interpreter was

13          pointing out the Chinese translation to the

14          deponent.  The deponent just said, "I believe

15          this is -- this came with the e-mail itself."

16                MR. HERMAN:  It came with what?

17                THE INTERPRETER:  The e-mail itself.

18                THE WITNESS:  Where do you want me to

19          take a look at?

20     BY MR. HERMAN:

21     Q     I want to know if, from the Taishan

22     documents, it indicates that Chairman Jia and Mr. Peng

23     couldn't make a decision, that it had to go to CNBM or

24     CNBMG.

25                MR. TAYLOR:  Is that the question,

Confidential - Subject to Further Confidentiality Review

1       Counsel?

2              MR. HERMAN:  That's the question.

3              MR. TAYLOR:  I object to the question

4       and ask that you refer the witness to the

5       particular document that you want him to read,

6       because there are multiple documents in front of

7       him.

8              MR. HERMAN:  Well, fine.

9   BY MR. HERMAN:

10      Q     Let's start with 305.  Would you read it in

11  Chinese, please?

12      A     "Attorney Chen, I believe this is a view of

13  the minority shareholders.  They are extremely

14  determined to withdraw from the litigation, and

15  Chief Peng is also just following orders.  I purposely

16  sent out the following e-mail today, which I also sent

17  to the leadership of CNBM and BNBM Chairman Jia and

18  Chief Peng.

19             "I understand that TG wishes to no

20  longer pay Hogan Lovells' bills.  However, I recommend

21  that TG take the following factors into consideration

22  when making a decision on the billing issues:  the

23  motion to withdraw filed by U.S. counsel, including

24  Hogan Lovells, and not being granted by the Court.

25  The U.S. Court has appointed Hogan Lovells to accept

```
 1     service on behalf of TG.

 2               "The lawsuit against SASAC is causing

 3     a great deal of uncertainty concerning our strategies

 4     in the case going forward, and we still do need

 5     counseling from the U.S. attorneys on similar issues.

 6     Clearly, the U.S. litigation is not simply a matter we

 7     can immediately rid ourselves of as we wish.  Rather

 8     this is a very difficult dilemma.

 9               "I will explain this issue again when

10     I get another chance to speak with TG's shareholders.

11     However, as I see it, this is all I can do for the

12     time being.  Please do not forward this e-mail to your

13     colleagues; instead, just give them a brief account of

14     what I have said above so that they can get the

15     general idea.  Thank you.  Dong Chungang," D-O-N-G,

16     comma, C-H-U-N-G-A-N-G.

17     Q     And my question is, sir --

18               MR. TAYLOR:  Again, I'm not -- I'm just

19         trying to be sure the record is right.  There's

20         no record of what document she was reading --

21         the translator was reading from.

22               MR. HERMAN:  Were you reading,

23         Translator, the same document the gentleman was

24         reading?

25               THE INTERPRETER:  Yes.
```

Confidential - Subject to Further Confidentiality Review

1   BY MR. HERMAN:

2       Q    Now, sir, my next question to you is:  Isn't

3   it true --

4               MR. TAYLOR:  I'm sorry, Counsel, I don't

5           mean to interrupt, and I really apologize,

6           but --

7               MR. HERMAN:  If you have an objection,

8           just state it.

9               MR. TAYLOR:  All right.  Well, it's just

10          that the English translation is 306, the Chinese

11          was in 305, and I just wanted to know:  Was she

12          reading from 305 or 306?

13              MR. HERMAN:  She was reading, she said,

14          from the exact document.

15              MR. TAYLOR:  Can I have the document

16          number that she was reading from, please --

17              MR. HERMAN:  Well, not yet.  When I'm

18          through with my questions, I'll number them.

19              MR. TAYLOR:  All right.  I object, for

20          the record, because it's not clear which --

21              MR. HERMAN:  I don't need a speaking

22          objection.  Just object.

23              MR. TAYLOR:  It's not a speaking

24          objection.  I object because it's not clear

25          which document the translator was reading from

Confidential - Subject to Further Confidentiality Review

1          in regards to the translation she just put on

2          the record.

3                    MR. HERMAN:  Were you reading from the

4          same document that the witness was reading from?

5                    THE INTERPRETER:  The interpreter is

6          reading from document Exhibit 306, which is the

7          exact translation, according to the

8          interpreter's experience, of Exhibit 305.

9                    MR. HERMAN:  So we'll offer 305 -- HL305

10         and 306.

11                   MR. TAYLOR:  And that's my point:  The

12         witness was reading from 305.

13                   MR. HERMAN:  Well taken.  Okay.  Let's

14         move on.

15                   MR. TAYLOR:  Thank you.

16    BY MR. HERMAN:

17         Q    Do you understand that Chairman Jia of

18    Taishan could not make a decision that it had to go

19    either to CNBM or CNBM Group?

20                   MR. HAIRSTON:  Objection.

21         A    I don't know why it says that on the e-mail.

22    BY MR. HERMAN:

23         Q    Do you agree it says that?

24         A    No.

25                   MR. HERMAN:  I'm going to -- excuse me.

1    I'm going to take Exhibit 26 in English, and I'm

2    going to put it up on the screen.  And I'll ask

3    the court reporter, would you -- for the court

4    reporter, and I'll ask the translator, the

5    official translator, to read in Chinese the

6    first clause in Chinese, please, in Mandarin.

7         MR. TAYLOR:  Can we see the whole

8    document, because this doesn't look like the

9    entire document?  Can we move it down?  You said

10   the first -- can you move it down some more?

11   Because I just want to be sure I'm looking at

12   the same, because that's the first clause up

13   there.

14        MR. HERMAN:  The first clause under the

15   word "Redacted," would you please read it in

16   Chinese for the witness.

17        THE INTERPRETER:  Start -- this is

18   interpreter speaking.  Starting from "it's not

19   Mr. Jia," or starting from "Forward my e-mail to

20   the shareholders," on the very top?

21        MR. HERMAN:  It's dated July 7th, 2014.

22        Would you state that for the witness,

23   please?

24        THE INTERPRETER:  Let me take a look,

25   first.

Confidential - Subject to Further Confidentiality Review

```
 1                    MR. HERMAN:  And would you now read the

 2           first clause after the word "Redacted."

 3                    THE INTERPRETER:  Yes.

 4                    MR. HERMAN:  Could you read it in

 5           Chinese for the witness?

 6                    THE INTERPRETER:  Yes.  The interpreter

 7           needs a minute to take a look at it to be able

 8           to interpret it into Chinese.

 9                    (Translation.)

10                    THE INTERPRETER:  The interpreter

11           finished interpreting up to, "I tried my best to

12           let them know what is going on in the U.S.

13           courts."  Should I continue?

14                    MR. HERMAN:  Yes, please.

15                    (Translation.)

16                    THE INTERPRETER:  The interpreter has

17           finished interpreting up to "Dong Chungang,

18           Partner."

19                    MR. HERMAN:  Would you please give the

20           document number, the HL document number for the

21           record, that you have interpreted from?

22                    THE INTERPRETER:  The interpreter has

23           interpreted from Exhibit 26.

24                    MR. HERMAN:  HL_26?

25                    THE INTERPRETER:  HL_26, correct.
```

```
 1              MR. HERMAN:  All right.

 2  BY MR. HERMAN:

 3      Q    Sir, do you agree that it was not Mr. Jia

 4  who could make the decision, but it had to be a

 5  high-level officer, or officers, in the CNBM Group?

 6              MR. HAIRSTON:  Objection.

 7      A    I don't know why he said that.

 8  BY MR. HERMAN:

 9      Q    I'm not asking you why he said it.  I'm

10  asking you whether you agree with what he said.

11              MR. TAYLOR:  Excuse me.  Did the witness

12       want to explain or clarify?  Because he raised

13       his hand, and I want to be sure.

14      A    Who was the sender of the e-mail, and who

15  was the recipient of the e-mail?

16  BY MR. HERMAN:

17      Q    The sender of the e-mail was Taishan's

18  attorney.  The person that wrote this material to

19  Taishan's attorney in the U.S. was Taishan's attorney

20  in China.

21              Do you agree that Mr. Jia could not

22  make the decision for Taishan, that it had to be made

23  by CNBMG directors?

24              MR. TAYLOR:  Objection to form.

25              But the witness can answer.
```

```
 1      A      I disagree.

 2  BY MR. HERMAN:

 3      Q      Do you agree that minority shareholders of

 4  Taishan objected to Mr. Jia's decision and Mr. Jia's

 5  agreement to cooperate with the majority shareholder?

 6      A      I disagree.

 7      Q      And who was the majority shareholder of

 8  Taishan on July 7th, 2014?

 9      A      Beijing New Material Construction

10  Company Incorporated holds 65% of the shares.

11      Q      And who, on July 7th, 2014, held, directly

12  or indirectly, 65% of the shares in Taishan?

13      A      Beijing New Material Construction Company,

14  Limited, Inc.

15      Q      And who was the minority shareholders on

16  July 7th, 2014?

17      A      I don't know the definition of "minority

18  shareholders."

19      Q      What shareholders of Taishan, on July 7,

20  2014, held less than 65% of the outstanding stock or

21  shares in Taishan?

22      A      Besides Beijing New Material Construction

23  Company, Limited, all the others for sure hold less

24  than 65%.

25      Q      Who were those that had less than 65%?  If
```

1    you can name them, please name them.

2                THE INTERPRETER:  The interpreter needs

3           to clarify with the deponent, as the deponent

4           said the title of Mr. Jia, which in Chinese is

5           Z-O-N-G, can be either interpreted as general

6           manager or president or chairman.  May the

7           interpreter clarify?  May the interpreter

8           clarify before the deponent answers the

9           question?

10   BY MR. HERMAN:

11       Q     Who owned the -- strike that.

12                Who owned the minority shares in

13   Taishan -- that is, less than 65% -- on July 7, 2014?

14       A     I do not recall the exact name, but I

15   believe from the commercial registration form

16   submitted by Taishan, you should be able to find the

17   details.

18       Q     Do you recall who the board of directors of

19   Taishan was in the year 2010?

20       A     Which year?

21       Q     2010.

22       A     In 2010?  I don't recall for 2010.

23       Q     On July -- strike that.

24                What is Chairman Jia's official title

25   today?

Confidential - Subject to Further Confidentiality Review

1    A    Chairman of board of directors, as well as

2    the general manager of Taishan.

3    Q    When did Mr. Peng leave Taishan?

4    A    In March 2014.

5    Q    And in March -- if he left in March 2014,

6    can you explain why his name appears as a Taishan

7    employee in the July 2014 correspondence between the

8    lawyer in China, in Taishan, and the lawyers in the

9    United States, representing Taishan?

10   A    Are you talking about Mr. Peng or Mr. Jia?

11   Q    Mr. Peng --

12   A    You just mentioned two names to me.

13   Q    -- as reflected in the July 7th, 2014,

14   correspondence.

15   A    Even though Mr. Peng had left Taishan, but

16   during the time he worked for Taishan, Taishan treated

17   him well, and he also had a positive sentiment toward

18   Taishan.  So whenever Taishan needed his help, he

19   would help to handle the matters because there is a

20   need of that transitional period before it was taken

21   over.

22            MR. HERMAN:  I want to thank you for

23       being responsive.  It's 10:30, and our practice

24       is to recess for 15 minutes, and so we're going

25       to recess now, at 10:35, and we will begin again

1       at 10 minutes to 11:00.

2               THE VIDEOGRAPHER:  This is the end of

3       Tape 1 --

4               MR. TAYLOR:  Hold on.  Counsel, one

5       other thing.  I don't know if this is your

6       practice, but it's our practice that on each

7       hour after this, we would want to take a

8       five-minute break for the witness because this

9       is going to be a very long deposition, okay?

10              MR. HERMAN:  Whenever the witness needs

11      a break, I'm perfectly amenable to it.

12              MR. TAYLOR:  Thank you, sir.

13              MR. HERMAN:  That is also our custom.

14              MR. TAYLOR:  Thank you.

15              THE VIDEOGRAPHER:  This is the end of

16      Tape 1.  We're now off the record at 10:33.

17              (Recess taken, 10:33 a.m. to 10:57 a.m.)

18              THE VIDEOGRAPHER:  This is the beginning

19      of Tape 2.  We're now back on the record.  The

20      time is 10:57.

21              MR. TAYLOR:  Counsel, first of all, I

22      notice that you've been standing during the

23      course of the examination, and you would have

24      that right if he was on the witness stand, and

25      I'm fine with that.  As long as you don't get

1       too close, that's fine.

2               MR. HERMAN:  Well, I can't get too close

3       to him because it will interfere with the

4       picture, so that's not going to happen.

5               MR. TAYLOR:  All right.  That works for

6       us.

7               And, also, an objection -- I think we've

8       agreed that an objection by one party is assumed

9       to be an objection by all, yes.

10              MR. HERMAN:  An objection by one

11      defendant is an objection by all defendants.

12              MR. TAYLOR:  All right.  Now, in regards

13      to the issue regarding my objections and the

14      other objections, objections that will be made

15      on the record and in discussions, the

16      interpreter has agreed to explain to Mr. Che

17      what's being said and what the objection was.

18              And she's going to also explain to

19      Mr. Che that in regards to an objection, the

20      colloquy, he really can't answer any questions

21      about that because an English witness wouldn't

22      be able to ask any questions about that.  That's

23      all.

24              MR. HERMAN:  Let's go forward.

25              I'm going to offer to introduce into

1      evidence the last document interpreted by the

2      translator from which the witness was

3      questioned.  It's HoganLovells_26.

4             At this time, I'm going to give learned

5      counsel opposite a list of exhibits which we

6      have provided him.  They're on the chairs behind

7      him, and I'm going to read these exhibits.

8             Exhibit 1 is the Hogan Lovells

9      production Bates 1 through 493.  It's in front

10     of you.

11            MR. TAYLOR:  Okay.  Good.

12            MR. HERMAN:  Exhibit 3 -- first, I want

13     to say that the CNBM documents that I am going

14     to offer came from www.hkex.com.hk in Chinese

15     and English.  The BNBM Plc documents produced by

16     BNBM Plc came from www.cninfo.com.  They were

17     produced in English and downloaded from

18     www.cninfo.com in Chinese, and they were placed

19     there by the defendants and they're publicly

20     accessed.  And in order to facilitate counsel

21     for Taishan, I have produced those documents in

22     English and in Chinese, and I'm now going to

23     identify them for the record.

24            MR. TAYLOR:  Counsel, just one -- you

25     have a document in front of you, and our --

1           MR. HERMAN:  It's an exhibit list.

2           MR. TAYLOR:  Can we have a copy of it?

3           MR. HERMAN:  This is your copy.

4           MR. TAYLOR:  I see.  Okay.

5           Can I just go back one more time?

6      Exhibit 1 was the Hogan document, right?

7           MR. HERMAN:  That's correct.

8           MR. TAYLOR: Exhibit 2 is what?

9           MR. HERMAN:  No.  Is the entire

10     Hogan Lovells production.

11          MR. TAYLOR:  That's Exhibit 2?

12          MR. HERMAN:  That's Exhibit 1.

13          MR. TAYLOR:  Okay.  Good.  So the --

14     just to be clear, since I understand because of

15     the nature of this deposition, I'm not looking

16     at the document --

17          MR. HERMAN:  Well, why don't you take

18     the list as I read it, because it's meant for

19     you anyway.  It's not in Chinese.

20          MR. TAYLOR:  Okay.  Well, I want to be

21     sure the witness understands it also, so that's

22     the problem.

23          MR. HERMAN:  Fine.  Fine.

24          MR. TAYLOR:  But let me finish the

25     question, though, okay?  When you say it's the

1          Hogan Lovells -- Exhibit 1 is the Hogan Lovells

2          documents, are you talking about -- are you

3          limiting that just to the Hogan Lovells

4          documents that were the e-mails that the judge

5          ruled upon --

6                    MR. HERMAN:  Yes.

7                    MR. TAYLOR:  -- the highly confidential?

8                    MR. HERMAN:  Yes, and that's how they're

9          marked.

10                    MR. TAYLOR:  All right.

11                    MR. HERMAN:  They're marked 1 through

12          493.

13                    MR. TAYLOR:  And what is Exhibit 2?

14                    MR. HERMAN:  And they are marked

15          Exhibit 1, T-6/2-4-2014 Exhibit 1, and every

16          exhibit in these three days, and the ones that I

17          read now, will be marked 6/2 to 6/4 with a T in

18          front, 2014, and it's misidentified -- it should

19          be 2015 -- as follows:

20                    Exhibit 4, 2005 CNBM annual report in

21          English, marked ALRMH-CNBM00004244 to 4352.

22          Exhibit 4A, 2005 CNBM annual report in Chinese,

23          marked ALRMH-CNBM00004353 to 4461.

24                    Exhibit 5 is 2006 CNBM annual report in

25          English, ALRMH-CNBM 00000644781 -- I'm sorry,

```
 1            Exhibit 5 is 2006 CNBM annual report in English,
 2       ALRMH-CNBM00004106, dash, 4243.  Exhibit 5A is
 3       2006 CNBM annual report in Chinese,
 4       ALRMH-CNBM00000644781.
 5              Exhibit 6, 2007 CNBM annual report in
 6       English, ALRMH-CNBM0000782 to 949.  6A is 2007
 7       CNBM annual report in Chinese,
 8       ALRMH-CNBM0000950, 1117.
 9              Exhibit 7, 2008 CNBM annual report in
10       English, ALRMH-CNBM00001118, dash, 315.  7A,
11       2008 CNBM annual report in Chinese,
12       ALRMH-CNBM00001316, dash, 153.
13              Exhibit 8, 2009 CNBM annual report in
14       English, ALRMH-CNBM00001514, dash, 1719.  8A,
15       2009 CNBM annual report in Chinese,
16       ALRMH-CNBM00001720 to 1925.
17              Exhibit 9, 2010 CNBM annual report in
18       English, ALRMH-CNBM00001926, dash, 2139.  9A,
19       2010 CNBM annual report in Chinese,
20       ALRMH-CNBM00002140, 2353.
21              I'm going to go back, to make sure I've
22       got this right.  Exhibit 9 is 2010 CNBM annual
23       report in English, ALRMH-CNBM00001926 to 2139.
24       9A is 2010 CNBM annual report in Chinese,
25       ALRMH-CNBM00002140 to 2353.
```

1            Exhibit 10 is 2011 CNBM annual reports

2        in English, ALRMH-CNBM00002354 to 2571.  10A is

3        2011 CNBM annual reports in Chinese,

4        ALRMH-CNBM00002572 to 2789.

5            Exhibit 11, 2012 CNBM annual reports in

6        English, ALRMH-CNBM00002790 to 3007.  11A, 2012

7        CNBM annual reports in Chinese,

8        ALRMH-CNBM00003008 to 3225.

9            Exhibit 12, 2013 CNBM reports in

10       English, ALRMH-CNBM00003226, dash, 3443.

11       Exhibit 12A, 2013 CNBM annual reports in

12       Chinese, ALRMH-CNBM00003444, dash, 3661.

13           13, Exhibit 13, 2014 CNBM annual report

14       in English, ALRMH-CNBM00003662 to 3883.  13A,

15       Exhibit 13A, 2014 CNBM annual report in Chinese,

16       ALRMH-CNBM00003884 to 4105.

17           Exhibit 14, 2006 BNBM annual report in

18       English, Bates BNBMPLC0000489 to 605.

19       Exhibit 14A, 2006 BNBM annual reports in

20       Chinese, BNBMPLC0000381 to 488.

21           Exhibit 15, 2007 BNBM annual report in

22       English, BNBMPLC0000722-0000841.  Exhibit 15A,

23       2007 BNBM annual reports in Chinese,

24       BNBMPLC0000606 to 721.

25           Exhibit 16, 2008 BNBM annual reports in

1    English, BNBMPLC0000961 to 1080.  Exhibit 16A,

2    2008 BNBM annual report in Chinese,

3    BNBMPLC0000842 to 960.

4         Exhibit 17, 2009 BNBM annual reports in

5    English, BNBMPLC0001229 to 1378.  Exhibit 17A,

6    2009 BNBM annual report in Chinese,

7    BNBMPLC0001081 to 1228.

8         Exhibit 18, 2010 BNBM annual reports in

9    English, BNBMPLC0001542 to 1695.  18A, 2010 BNBM

10   annual reports in Chinese, BNBMPLC0001379 to

11   1541.

12        Exhibit 19, 2011 BNBM annual report in

13   English, BNBMPLC0001862 to 2018.  19A, 2011 BNBM

14   annual report in Chinese, BNBMPLC0001696 to

15   1861.

16        Exhibit 20, 2012 BNBM annual reports in

17   English, BNBMPLC0002273 to 2480.  20A, 2012 BNBM

18   annual reports in Chinese, BNBMPLC0002019 to

19   2272.

20        Exhibit 21, 2013 BNBM annual report in

21   English, BNBMPLC0002743 to 2944.  21A, 2013 BNBM

22   annual report in Chinese, BNBMPLC0002481 to

23   2742.

24        Exhibit 22, 2014 BNBM annual report in

25   English, BNBMPLC0002743 to 0002944.  22A,

```
 1          201 [sic] BNBM annual report in Chinese,

 2          BNBMPLC0002945 to 0003163.

 3                    And I'm going to hand counsel opposite a

 4          complete list of these exhibits, which I've

 5          placed on chairs behind him, and one to the

 6          court reporter.

 7                    MR. TAYLOR:  Before you go forward, we

 8          need to take a look at the list, and we want to

 9          take a look at the documents, and then we'll --

10                    MR. HERMAN:  Well, I'm not going to ask

11          questions from the documents right now.  You can

12          check them at recess.

13                    MR. TAYLOR:  I'm sorry, Counsel --

14                    MR. HERMAN:  I'm going to give you

15          specific documents.  I'm going to hand them to

16          you.

17                    MR. TAYLOR:  Okay.  I understand --

18                    MR. HERMAN:  You're not stipulating

19          anything at this point.

20                    MR. TAYLOR:  I understand that.  I want

21          to look at the list, look at the documents, and

22          then you can proceed.

23                    MR. HERMAN:  Well, then, we're not going

24          to do that.  Please take all the documents back

25          to our room.  He doesn't need them.  I'm not
```

Confidential - Subject to Further Confidentiality Review

1    going to have the deposition interrupted with

2    some useless situation.

3         MR. TAYLOR:  The record should reflect

4    that I asked to look at the exhibit list and

5    compare it with the exhibits that are in the

6    room at this time.  Counsel objected and asked

7    his team to remove all of the documents from the

8    room so that defense counsel wouldn't have an

9    opportunity to look at them.

10        MR. HERMAN:  That's not quite true.  I

11   said that I would hand you specifically any

12   document that I used to interrogate the witness.

13   I was trying to extend to you a personal

14   courtesy.

15        MR. TAYLOR:  Sure.  Appreciate it,

16   Counsel.

17             (T:6/2/15-6/4/15

18             Exhibit 12-ALRMH-CNBM00003358 marked.)

19             (T:6/2/15-6/4/15

20             Exhibit 12A-ALRMH-CNBM00003576 marked.)

21        MR. HERMAN:  I'm going to hand the

22   translator and the witness exhibit T6-6/4/15,

23   Exhibit 12, ALRMH-CNBM00003358.  I'll also hand

24   them to counsel, one copy of each.

25        MR. TAYLOR:  Did we -- did someone --

 1              MR. HERMAN:  I'm about to hand it to

 2         you, Counsel.

 3              MR. TAYLOR:  Oh, I'm sorry.  I thought

 4         someone was coming behind here to give it to me.

 5              MR. HERMAN:  Rachel, would you please

 6         enlarge Exhibit 12, 00003358, page 131 of the

 7         annual report of 2013 of the China National

 8         Building Material Company, Limited.  And if you

 9         would just go to the top and enlarge that so

10         everyone in the courtroom can see it, then we'll

11         move down.

12    BY MR. HERMAN:

13      Q    I'll ask the witness to please read that

14    exhibit in Chinese to himself, and then I'll ask a

15    question.

16              THE INTERPRETER:  Counsel, while he's

17         reading, I notice that there's an exact

18         translation of the same document.  When I read,

19         I'll read the translation, if I see they're an

20         accurate translation, but if you want me to not

21         look at English, I'll take time I have to take,

22         say, five minutes or ten minutes, to read it.

23              MR. HERMAN:  That's okay.

24              THE INTERPRETER:  I have to read it --

25              MR. HERMAN:  That's okay.  I'm going to

Confidential - Subject to Further Confidentiality Review

1           ask him a question.  He has the document.  He'll

2           either answer it or he won't.

3                   THE INTERPRETER:  Okay.

4                   MR. HERMAN:  Okay.

5                   THE INTERPRETER:  So it's okay for me

6           to -- if I found this is accurate translation?

7                   MR. HERMAN:  Sure.

8                   THE INTERPRETER:  Okay.

9                   (Document review.)

10   BY MR. HERMAN:

11       Q     Sir, have you read that exhibit that I just

12   identified?

13       A     I roughly reviewed it.

14       Q     Do you agree with its content?

15       A     Number one, the version is in traditional

16   Chinese.  I don't quite have a clear understanding of

17   that.  Let me finish.  Number two, there are way too

18   many professional terminologies.  I don't quite

19   understand that either.  Therefore, I cannot answer

20   your question.

21       Q     Okay.  What you have indicated to me is that

22   the translation downloaded from the public site that

23   BNBM Plc Company established is not in Mandarin; is

24   that correct?

25                   MR. TAYLOR:  Objection to form.

Confidential - Subject to Further Confidentiality Review

```
1          Objection to form, assumes facts not in

2          evidence.

3               MR. HERMAN:  I'm sorry, I misstated.  I

4          misstated, and I need to look at my copy.  And

5          I'll ask the question again, and I apologize to

6          you.

7    BY MR. HERMAN:

8      Q     Are you saying that the CNBM Company,

9    Limited annual report, Bates number ALRMH-CNBM3358,

10   which you have in front of you -- I believe it says

11   page 131 -- is in traditional Chinese and not

12   Mandarin?

13              MR. TAYLOR:  Objection, misstates the

14         document that's in front of the witness.

15              MR. HERMAN:  Can you answer the

16         question?

17     A     There are two forms of written Chinese:

18   simplified Chinese and traditional Chinese.

19   Simplified Chinese is used in mainland China while

20   traditional Chinese is used in Hong Kong, Taiwan and

21   Macau.  My education was completed in mainland China;

22   therefore, I learned simplified Chinese.  Therefore, I

23   don't quite understand the document you presented to

24   me.

25   BY MR. HERMAN:
```

Confidential - Subject to Further Confidentiality Review

1    Q    I want to thank you for that.  I believe

2    that, again, this is T-6/2-6/4/15, Exhibit 12,

3    ALRMH-CNBM00003358.

4              MR. TAYLOR:  Again, I object -- sorry.

5    BY MR. HERMAN:

6    Q    And what I'd like --

7              MR. TAYLOR:  Sorry.  Go ahead.  I

8         apologize.

9    BY MR. HERMAN:

10   Q    What I'd like to do is, I'd like the

11   translator to go to the top and translate under the

12   Section 2.31, "Related Parties," (a), sub (i),

13   sub (ii) and sub (iii).

14             THE INTERPRETER:  Counsel, I understand

15        traditional Chinese.  I can read it to him.  Is

16        that even better?

17   BY MR. HERMAN:

18   Q    Would you read the whole document with the

19   section under "Related Parties," parens (a) -- parens

20   (a), with the three subsections first.

21             MR. TAYLOR:  A couple of objections and

22        a question.

23             MR. HERMAN:  What's your objection?

24             MR. TAYLOR:  I want to be sure she

25        understands.  Okay.

 1                    My objection is that you provided the

 2          witness with a portion of what appears to be a

 3          fairly large document.  You provided him with

 4          one page --

 5                    MR. HERMAN:  I provided him with a

 6          page --

 7                    MR. TAYLOR:  Counsel, you've got to let

 8          me finish my --

 9                    MR. HERMAN:  I can't.  You're giving a

10          speaking objection.  Just make your objection,

11          Counsel.

12                    MR. TAYLOR:  I object because you

13          provided the witness with one page of a document

14          that seems to be a multi-page document.

15                    MR. HERMAN:  Okay.  Are you through?

16                    MR. TAYLOR:  I'm not through yet.

17                    MR. HERMAN:  I'm going to call the

18          judge, if you continue to make speaking

19          objections.

20                    MR. TAYLOR:  Good.  That's what the

21          judge is here for.

22                    MR. HERMAN:  Yes, that is what he's here

23          for.

24                    MR. TAYLOR:  And I want to ensure that

25          the translator is -- is the translator going to

1          read from Bates number ALRMH-CNBM3358 or another

2          document?

3                    MR. HERMAN:  I think you're obstructing

4          the deposition.  I have asked specifically, and

5          it's in full, that the translator only deal with

6          the section "Related Parties."

7                    MR. TAYLOR:  I understand.  I think you

8          didn't understand my question.

9                    MR. HERMAN:  I understand your

10         objection.  It's a complete issue.

11                   MR. TAYLOR:  Are you finished?

12                   MR. HERMAN:  Are you finished?

13                   MR. TAYLOR:  No.

14                   MR. HERMAN:  All right.  Well, you just

15         go ahead.  You make all the objections you want.

16                   MR. TAYLOR:  All right.

17                   MR. HERMAN:  Go ahead.  Just go ahead.

18                   MR. TAYLOR:  There are two documents in

19         front of the witness with separate Bates

20         numbers.  I just want to know which document the

21         translator will be translating from.  That's my

22         question.  That's all.

23                   MR. HERMAN:  Would you continue with

24         your translation?

25                   MR. TAYLOR:  She needs to tell the --

Confidential - Subject to Further Confidentiality Review

1        for the record, what Bates number she's

2        translating from.

3                MR. HERMAN:  Would you continue with

4        your translation?

5                THE INTERPRETER:  This is the

6        interpreter speaking.  As the interpreter just

7        discussed with counsel, the interpreter does

8        read, speak and write both traditional Chinese

9        and simplified Chinese.  Would you like the

10       interpreter to read the traditional Chinese to

11       the deponent?  As we have only one spoken

12       Mandarin Chinese but two different written

13       forms, he should be able to understand Mandarin.

14               MR. HERMAN:  I would like the

15       interpreter to read whatever language it is that

16       the witness understands under 2.31, "Related

17       Parties," (a) through sub (i), (ii) and (iii).

18               THE INTERPRETER:  The interpreter will

19       read --

20               MR. TAYLOR:  Excuse me.  My objection

21       is, I want the record to reflect the Bates

22       number of the document that the translator is

23       reading from.

24               THE INTERPRETER:  The interpreter is

25       reading from ALRMH-CNBM00003576, which is

1          written in traditional Chinese.

2                    MR. TAYLOR:  All right.  Thank you.

3                    THE INTERPRETER:  You're welcome.  May I

4          start?

5                    MR. HERMAN:  Yes.

6                    (Translation.)

7     BY MR. HERMAN:

8          Q     Do you agree with Section (a), Roman numeral

9     (i), (ii), (iii)?

10                   MR. HAIRSTON:  Objection, form.

11         A     First of all, the document is not that of

12    Taishan's.

13    BY MR. HERMAN:

14         Q     Sir, I'm asking you if you agree --

15                   MR. TAYLOR:  Well, let him finish his

16         answer.

17                   MR. HERMAN:  I'd like the translator to

18         please tell the witness that he either says yes,

19         no, he doesn't know, or he explains.

20                   MR. TAYLOR:  And my only modification or

21         objection to counsel's instruction is that it's

22         not "or" he explains.  "And" he can explain.

23                   MR. HERMAN:  That's fine.

24         A     I disagree with what it says.

25    BY MR. HERMAN:

Confidential - Subject to Further Confidentiality Review

```
1      Q     Fine.

2            Would you read to the witness (b) --

3      A     I'm not done yet.

4      Q     Okay.

5      A     According to my personal understanding, I

6   don't understand some of what it says here.

7   Therefore, I cannot agree to that.

8      Q     Fine.

9            Would you read (b), Roman numerals (i)

10  through (vii) and the last sentence under 2.31,

11  "Related Parties," Exhibit 12, 3358, in Chinese that

12  the witness understands.

13           MR. TAYLOR:  Excuse me, Counsel.  We

14       keep going there.  You're referencing document

15       number 3358, and the translator has said she's

16       reading from 3576.  We need to be sure we're on

17       the same page here.

18           MR. HERMAN:  You're correct.  The

19       translator is reading from 3576, which is the

20       translation downloaded from the CNBM public

21       document, which is 3358.

22  BY MR. HERMAN:

23      Q    Do you agree with subparagraph (b), Roman

24  numerals (i), (ii), (iii), (iv), (v), (vi), (vii) and

25  the last sentence?
```

Confidential - Subject to Further Confidentiality Review

```
 1              MR. HAIRSTON:  Objection.

 2              MR. TAYLOR:  Objection, compound.

 3              THE WITNESS:  Do I need to answer the

 4         question?

 5              MR. TAYLOR:  You can answer.

 6      A     I disagree.  Because there are way too many

 7    professional terminologies, I do not know what it is

 8    talking about.

 9                   (T:6/2/15-6/4/15

10                   Exhibit 12-ALRMH-CNBM00003337 marked.)

11                   (T:6/2/15-6/4/15

12                   Exhibit 12A-ALRMH-CNBM00003555 marked.)

13              MR. HERMAN:  Okay.  At this time, I'm

14         going to offer the English and the Chinese

15         translation that was just utilized.  And hand

16         them to the court reporter after you translate,

17         please.

18              I'm going to hand the court reporter

19         and -- a document identified as Exhibit 12,

20         Chinese National Building Material Company,

21         Limited annual report 2013, ALRMH-CNBM00003337

22         in English and ALRMH-CNBM00003555.

23              And I'm going to hand the witness, or

24         have the translator hand the witness the same

25         two documents, and I'm going to ask the
```

```
 1          translator to ask the witness to please pass

 2          this to the witness' counsel.

 3               Would you please translate for the

 4          witness in the language he understands 2.2,

 5          "Basis of Consolidation," from the first

 6          sentence to the sentence that ends "listed

 7          above."

 8               MR. TAYLOR:  Same objection in regards

 9          to which -- what's the Bates number of the

10          document that the translator will be reading

11          from.

12               MR. HERMAN:  Would you read the Bates

13          number of the document you're translating from,

14          please?

15               THE INTERPRETER:  3555.  I will read the

16          Chinese, right?  That's 3555?

17               MR. HERMAN:  Yes.

18               THE INTERPRETER:  Okay.  The interpreter

19          will be reading from Bates number 3555.

20               (Translation.)

21     BY MR. HERMAN:

22      Q    My question, sir, is do you agree that, "The

23     consolidated financial statements incorporate the

24     financial statements of the company and entities

25     controlled by the company and its subsidiaries, and
```

Confidential - Subject to Further Confidentiality Review

1  that control is achieved when the company has power

2  over the investee, is exposed or has rights to

3  variable returns from its involvement with the

4  investee and has the ability to use its power to

5  affect its returns.  The group reassesses whether or

6  not it controls an investee if facts and circumstances

7  indicate that there are changes to one or more of the

8  three elements of control listed above"?

9          MR. TAYLOR:  Objection.

10          MR. HAIRSTON:  Objection.

11    A    I disagree because as I would not be able to

12  understand the professional terminologies that are

13  contained in there.

14          MR. HERMAN:  I'm going to offer

15      Exhibit 12, 3337 and 3555.  3337 is the English.

16      3555 is the Chinese.

17          MR. TAYLOR:  My only objection is that I

18      assume these exhibits are only being offered to

19      be added to the record as an exhibit and not

20      being added to -- or offered to -- for

21      admissibility to prove the truth of the matter

22      asserted therein.  If they are, I object to

23      their admissibility.

24          MR. HERMAN:  Fine.  They're being

25      offered for all purposes, Counsel, and your

Confidential - Subject to Further Confidentiality Review

```
 1          objection is noted.
 2                  MR. TAYLOR:  All right.  So for all of
 3          the exhibits that have been offered up to now,
 4          that objection applies.
 5                  MR. HERMAN:  That's true.
 6                  MR. HAIRSTON:  We join.
 7                  MR. MARROCCO:  We join also.
 8  BY MR. HERMAN:
 9      Q    Sir, is it true that in 2005, Jia Tongchun,
10  T-O-N-G-C-H-U-N, was chairman and general manager of
11  Taishan?
12      A    Who is Jia Tongchun?
13              Oh.  Yes.
14      Q    Is it true that in 2005, Jia J-I-A-N-J-U-N
15  was a director?
16      A    Can you say the Chinese name?
17              Jianjun?  I don't know who Jianjun is.
18      Q    Okay.  Is it true that in 2005, Bing Wang
19  was a director?
20              THE INTERPRETER:  May the interpreter
21          have the spelling of the name?
22              MR. HERMAN:  Wang, W-A-N-G.  Bing,
23          B-I-N-G.
24      A    I don't have a clear recollection on that.
25  BY MR. HERMAN:
```

Confidential - Subject to Further Confidentiality Review

1    Q    Is it true that in 2005, C-A-O,

2  J-I-A-N-G-L-I-N was chairman of the supervisory

3  committee, and the supervisor?

4    A    I don't know.

5    Q    In 2006, was Jia T-O-N-G-C-H-U-N chairman

6  and general manager of Taishan?

7    A    We call it chairman with the board of

8  directors and general manager, that's correct.

9    Q    In 2006, was Z-H-A-N-G deputy general

10  manager of Taishan?

11    A    Zhang what?

12    Q    C-H-E-N-G-O-N-G.

13    A    I don't know.

14    Q    In 2006, was J-I-A-N-J-U-N, Jia a director?

15    A    I don't know that either.  It's quite a

16  while ago.

17    Q    In 2006, was Bing Wang a director of

18  Taishan?

19    A    Regarding these questions, I would recommend

20  you to check the commercial registration form that

21  Taishan had submitted.  It's been quite a while ago,

22  and I have prepared too many things.  I do not have a

23  clear recollection on that.

24    Q    In 2006, was J-I-A-N-G-L-I-N, C-A-O chairman

25  of the supervisory committee and supervisor of the

Confidential - Subject to Further Confidentiality Review

1   board of directors of Taishan?

2       A    I don't know.  You can check the detailed

3   information from the commercial registration material

4   that Taishan had provided.

5       Q    In 2007, was Tongchun Jia chairman and

6   general manager of Taishan?

7       A    Which year?  Yes.

8       Q    In 2007, was Chengong Zhang deputy general

9   manager of Taishan?

10              THE INTERPRETER:  Could the interpreter

11       have the spelling of the name, please?

12              MR. HERMAN:  Yes.  C-H-E-N-G-O-N-G,

13       Z-H-A-N-G.

14      A    I don't -- I don't know.  You can check that

15  information from the commercial registration form that

16  Taishan provided.

17  BY MR. HERMAN:

18      Q    In 2007, did J-I-A-N-J-U-N Jia -- was he a

19  director on the board of directors of Taishan?

20      A    I don't know that either.  Have him check on

21  the commercial registration form that Taishan had

22  provided.

23      Q    In 2007, was Bing Wang a director of the

24  board of directors of Taishan?

25      A    I don't know.  Have him check on the

1    commercial registration form that Taishan provided.

2        Q     In 2007, was J-I-A-N-G-L-I-N, capital C-A-O

3    chairman of the supervisory committee and supervisor

4    of the board of directors of Taishan?

5        A     I don't know.  Have him check on the

6    commercial registration form that Taishan provided.

7        Q     In 2008, was Tongchun Jia chairman and

8    general manager of Taishan?

9        A     Yes.

10       Q     In 2008, was Chengong Zhang deputy general

11   manager of Taishan?

12       A     No.

13       Q     In -- is your answer "no," or "I don't

14   know"?

15       A     No.  In 2008, the general manager of Taishan

16   was still Jia Tongchun.

17       Q     No, that wasn't my question.  I'll ask the

18   questions again, and I'll start from the top.

19             In 2008, was Tongchun Jia chairman and

20   general manager of Taishan?

21       A     Yes.

22       Q     Was Chengong Zhang, in 2008, deputy general

23   manager of Taishan?

24       A     I don't know who the person you are

25   referring to is.

Confidential - Subject to Further Confidentiality Review

1    Q    In 2008, was Bing Wang a director of the

2    board of directors of Taishan?

3    A    I don't have a clear recollection.  You can

4    check on the commercial registration form that Taishan

5    provided.

6    Q    In 2008, was J-I-A-N-J-U-N Jia a director of

7    the board of directors of Taishan?

8    A    I don't have a clear recollection of that.

9    Have him check on the commercial registration form

10   that Taishan provided.

11   Q    In 2008, was J-I-A-N-G-L-I-N chairman of the

12   supervisory committee and supervisor of Taishan's

13   board of directors?

14   A    I don't know.  Go ahead and check on the

15   commercial registration form that Taishan had

16   provided.

17   Q    In 2009, was Tongchun Jia chairman and

18   general manager of Taishan?

19   A    Yes.

20   Q    In 2009, was Chengong Zhang deputy general

21   manager of Taishan?

22   A    I don't know.  Have him check on the

23   commercial registration form that Taishan provided.

24   Q    In 2009, was Bing Wang a director on the

25   board of directors of Taishan?

Confidential - Subject to Further Confidentiality Review

```
 1      A     I don't have a clear recollection.  Have him

 2   check on the commercial registration form that Taishan

 3   provided.

 4      Q     In 2009, was Jianglin, J-I-A-N-G-L-I-N,

 5   capital C-A-O chairman of the supervisory committee

 6   and the supervisor of the board of directors of

 7   Taishan?

 8      A     I don't know.  Please have him check on the

 9   commercial registration form that Taishan had

10   provided.

11      Q     In 2010, was Tongchun Jia chairman and

12   general manager of Taishan?

13      A     Yes.

14      Q     In 2010, was Chengong Zhang deputy general

15   manager of Taishan?

16      A     I don't know.  Please have him check on the

17   commercial registration form that Taishan had

18   provided.

19      Q     In 2010, was Bing Wang a director on the

20   board of directors of Taishan?

21      A     I don't have a clear recollection.  Have him

22   check on the commercial registration form that Taishan

23   had provided.

24      Q     In 2010, was Bing Wang a director on the

25   board of directors of Taishan?
```

```
 1                    In 2010, was C-H-A-N-G-X-I-N, Zhou,

 2    Z-H-O-U, director and representative for Tian

 3    State-Owned Assets Management Company?

 4                    THE INTERPRETER:  May the interpreter

 5         have the spelling of "Tian"?

 6                    MR. HERMAN:  Yes.  C-H-A-N-G-X-I-N,

 7         Z-H-O-U.

 8                    THE INTERPRETER:  May the interpreter

 9         have the spelling of TI, as you said the

10         representative for TI?

11                    MR. HERMAN:  T-A-I-N State-Owned Assets

12         Management Company, Limited

13    A    I don't know.

14 BY MR. HERMAN:

15    Q    In 2010, was Jianglin, capital C-A-O

16 chairman of the supervisory committee and a supervisor

17 of the board of directors of Taishan?

18                    THE INTERPRETER:  May the interpreter

19         have the name of the person?  Is it

20         J-I-A-N-G-L-I-N?

21                    MR. HERMAN:  Yes.

22    A    I don't know.  Please have him check on the

23 commercial registration form that Taishan had

24 provided.

25 BY MR. HERMAN:
```

Confidential - Subject to Further Confidentiality Review

 1      Q      In 2011, was Tongchun Jia chairman and

 2   general manager of Taishan?

 3      A      Yes.

 4      Q      In 2011, was Chengong Zhang deputy general

 5   manager of Taishan?

 6      A      No.

 7      Q      In 2011, was Bing Wang a director of the

 8   board of Taishan?

 9      A      I don't have a clear recollection.  Please

10   have him check on the commercial registration form

11   that Taishan had provided.

12      Q      In 2011, was J-I-A-N-G-L-I-N, capital C-A-O

13   chairman of the supervisory committee and supervisor

14   of the board of directors of Taishan?

15      A      I don't know.  Please have him check on the

16   commercial registration form that Taishan had

17   provided.

18      Q      Is the commercial registration form that

19   Taishan has provided an official document?

20             MR. TAYLOR:  Objection to form.

21             He can answer.

22      A      It is a form that printed out from the

23   commercial registration department.  We did that under

24   the advice and instruction of the attorney.

25   BY MR. HERMAN:

Confidential - Subject to Further Confidentiality Review

1      Q      Which attorney?

2      A      Alston law firm.

3      Q      Mr. Bernard Taylor?

4      A      I don't have a clear recollection of that,

5    but I did that under the advice of our attorney.

6      Q      When was that done?

7      A      While we were collecting the documents.

8      Q      Are you certain that that document was

9    provided to me?

10      A      I don't know.

11      Q      Now, in the year 2012, was Tongchun Jia

12    chairman and general manager of Taishan?

13      A      Yes.

14      Q      In 2012, was Bing Wang a director of the

15    board of directors of Taishan?

16      A      I don't have a clear recollection on that.

17    Go ahead and check on the commercial registration form

18    that Taishan had provided.

19      Q      In 2012, was C-H-A-N-G-X-I-N, Zhou, Z-H-O-U,

20    a director of the board of directors of Taishan?

21      A      I don't have a clear recollection.  Check on

22    the commercial registration form that Taishan had

23    provided.

24      Q      In the year 2013, was Tongchun Jia

25    chairman --

```
 1              MR. TAYLOR:  Counsel.

 2  BY MR. HERMAN:

 3      Q     -- chairman and general manager of Taishan?

 4              MR. TAYLOR:  Counsel, excuse me, it's

 5        after noon --

 6              MR. HERMAN:  Yes, and when I'm through

 7        with this line of questioning -- we spent

 8        from --

 9              MR. TAYLOR:  Yeah, we said we would stop

10        at --

11              MR. HERMAN:  -- ten minutes to 11:00 to

12        11:00 o'clock with your colloquy, and it's now

13        six after noon.  And when I'm through with this

14        line of questioning, which is going to be in

15        about three minutes, we'll break for lunch.

16              THE WITNESS:  I'd like to take a break.

17              MR. HERMAN:  Okay.

18              MR. TAYLOR:  And, Counsel, you didn't

19        let me finish my objection.  It wasn't really an

20        objection.  It was just that we were -- I was

21        going to ask you how much longer it was going to

22        be.

23              MR. HERMAN:  Three minutes.

24              MR. TAYLOR:  Okay.  He needs to stop

25        now.  Can we take three more minutes?
```

```
 1                    MR. HERMAN:  Do you want some water?

 2                    MR. TAYLOR:  Let him catch his breath.

 3                    THE WITNESS:  I'm fine.

 4                    MR. HERMAN:  We have plenty of water

 5          here.  Here you are.

 6                    THE WITNESS:  (In English)  Oh, no, no.

 7                    MR. HERMAN:  No?  Okay.  Okay?

 8   BY MR. HERMAN:

 9      Q     In 2013, was Tongchun Jia chairman and

10   general manager of Taishan?

11      A     Yes.

12      Q     In 2013, was Bing Wang a member of the board

13   of directors of Taishan?

14      A     Yes.

15      Q     In 2013, was Changxin Zhou director and

16   representative, the -- was he director on the board of

17   directors of Taishan?

18                    THE INTERPRETER:  Sorry, Counsel, can I

19          have the spelling --

20                    MR. HERMAN:  Okay.  Yes, I'll spell it

21          again.  It's C-H-A-N-G-X-I-N, capital Z-H-O-U.

22                    THE INTERPRETER:  Thank you.

23                    MR. HERMAN:  You're welcome.

24      A     He's not.

25   BY MR. HERMAN:
```

```
 1      Q     In 2014, was Tongchun Jia chairman and

 2   general manager of Taishan?

 3      A     Yes.

 4      Q     In 2014, was Bing Wang a member of the board

 5   of directors of Taishan?

 6      A     Yes.

 7      Q     In 2014, was Yu, Y-U, Chen, C-H-E-N, a

 8   member of the board of directors of Taishan?

 9      A     Who is Yu Chen?

10      Q     I'll spell it again.  Y-U, C-H-E-N.

11      A     The Chinese name --

12            THE INTERPRETER:  May the interpreter

13        ask whether Yu is the last name or Chen is the

14        last name?

15            MR. HERMAN:  The way I have it, it's

16        C-H-E-N, comma, Y-U.

17      A     Oh.  Chen Yu, yes.

18   BY MR. HERMAN:

19      Q     And in 2014 --

20      A     Excuse me.  Which year --

21      Q     2014.

22      A     -- are you referring to?

23            No.

24      Q     In 2014, was C-H-A-N-G-X-I-N, Z-H-O-U a

25   director of Taishan?
```

Confidential - Subject to Further Confidentiality Review

1      A      No.

2      Q      Now, is Chairman Jia still an executive, as

3  we sit here today, of Taishan?

4      A      I'm sorry, can you repeat that?  I don't

5  understand your question.

6      Q      Yes.

7              What is Chairman Jia's position today

8  with Taishan?

9      A      Chairman of the board of directors and

10 general manager.

11             MR. HERMAN:  Thank you.  We'll recess

12         until ten after 1:00.

13             THE VIDEOGRAPHER:  This is the end of

14         Tape 2.  We're now off the record.  It's 12:11.

15             (Recess taken, 12:11 p.m. to 1:11 p.m.)

16             THE VIDEOGRAPHER:  This is the beginning

17         of Tape 3.  We're now back on the record.  The

18         time is 1:11.

19             MR. HERMAN:  I'm told I neglected to

20         offer for all purposes Hogan Lovells

21         deprivileged document 305 and Hogan Lovells

22         document 306, which were used earlier this

23         morning, and I'll offer them now.

24             MR. TAYLOR:  We object, if the purpose

25         for admitting the documents is for the purposes

Confidential - Subject to Further Confidentiality Review

1            of the truth asserted therein.  The proper

2            showing hasn't been made that would allow the

3            documents to be admitted for that purpose.

4                      MR. HAIRSTON:  Join.

5                      MR. MARROCCO:  Join as well.

6    BY MR. HERMAN:

7        Q     Secondly, with respect to the year -- with

8    respect to the year 2011, J-I-A-N-G-L-I-N, capital

9    C-A-O, was he chairman of the supervisory committee of

10   the board of directors of Taishan?

11       A     I don't have a clear recollection on that.

12   Please check the commercial registration form that

13   Taishan had provided.

14                     (T:6/2/15-6/4/15

15                     Exhibit 9-ALRMH-CNBM00002134 marked.)

16                     (T:6/2/15-6/4/15

17                     Exhibit 9A-ALRMH-CNBM00002348 marked.)

18   BY MR. HERMAN:

19       Q     Okay.  Now, I'm going to direct the witness'

20   attention, and I'll ask the translator to pass to the

21   witness and to his counsel, in English and in Chinese,

22   Exhibit 9, ALRMH-CNBM2134, Exhibit 9 in English, and

23   Exhibit 9A, CNBM Exhibit 2348, in Chinese.

24                     And I'll ask the translator to please

25   translate, in Chinese that the witness will

Confidential - Subject to Further Confidentiality Review

1    understand, the two paragraphs under "Related Party

2    Transactions."

3                    THE INTERPRETER:  This is the

4         interpreter speaking.  The entire page?  The

5         entire page?

6                    MR. HERMAN:  Just the first two

7         paragraphs.

8                    THE INTERPRETER:  All right.  The

9         interpreter will read from Exhibit ALRMH-2348.

10                   (Translation.)

11   BY MR. HERMAN:

12        Q    Sir, do you agree with the definition of

13   "related party transactions" that was just read to

14   you?

15                   MR. TAYLOR:  Objection, requires a legal

16        conclusion of the witness.

17                   THE INTERPRETER:  This is the

18        interpreter speaking.  May the interpreter

19        finish interpretation before the objection is

20        raised?

21                   MR. TAYLOR:  Should I say the objection

22        again?

23                   THE INTERPRETER:  No, the interpreter

24        just started interpretation when you objected.

25                   MR. TAYLOR:  I apologize.  Go ahead, and

Confidential - Subject to Further Confidentiality Review

1           then I'll make --

2                   THE INTERPRETER:  Thank you.  Thank you

3           very much.

4    BY MR. HERMAN:

5        Q    Do you agree with the definition that was

6    just read to you under "Related Party Transactions" in

7    document 9A, Bates number ALRMH-CNBM2348?

8                   MR. TAYLOR:  Objection, requires a legal

9           conclusion of the witness.

10                  MR. HERMAN:  I'm going to object to you

11          giving a speaking objection.  All you have to do

12          is say you object.

13                  MR. TAYLOR:  You know, I'm confused.

14   Let me --

15                  MR. HERMAN:  I think you are.

16                  MR. TAYLOR:  Yeah.  I thought the judge

17          was here to rule on objections today, or are we

18          holding objections to be reserved later?

19                  MR. HERMAN:  Every objection, except as

20          to the form of the question, is reserved.

21                  MR. TAYLOR:  Good.  Good.  Okay.  I

22          didn't understand that.  Then object to the form

23          of the question.

24                  MR. HERMAN:  Can you answer the

25          question?

Confidential - Subject to Further Confidentiality Review

```
 1                THE WITNESS:  Please repeat your

 2      question.

 3  BY MR. HERMAN:

 4      Q    Do you agree with the definition in

 5  Exhibit 9A, Bates number CNBM2348, that was read to

 6  you by the translator?

 7      A    I disagree because I do not understand the

 8  readings.

 9      Q    I'm going to offer exhibit -- Bates

10  number 2134 of Exhibit 9 at CNBM2134 and CNBM2348 of

11  9A.  They both relate to the annual report of CNBM in

12  the year 2010 at page 207.

13                MR. TAYLOR:  I object to the admission

14          of Exhibit 9 and Exhibit 9A, if they are offered

15          to represent the truth of the matters asserted

16          therein.  The appropriate foundation hasn't been

17          laid by the proponent of the exhibits.

18                MR. MARROCCO:  Join the objection.

19                MR. HAIRSTON:  Join.

20  BY MR. HERMAN:

21      Q    Was H-I-L-L-A-N-G Peng, P-E-N-G, the

22  chairman and director of TTP from 2006 through 2014?

23                MR. TAYLOR:  Objection to the question.

24          Objection to form.

25      A    I don't know whether you have a correct
```

Confidential - Subject to Further Confidentiality Review

1    translation of the name of that person or not, but I

2    don't know that person.

3    BY MR. HERMAN:

4        Q    All right.  I'm going to ask it again but

5    differently.

6                    Was S-H-I-L-I-A-N-G chairman, director

7    and general manager of TTP from 2006 through 2014?

8        A    From 2006 to 2008, the person, Shiliang

9    Peng, was TTP's -- I'm sorry.  Well, what were the

10   positions you just mentioned?  Can you repeat that

11   again?

12       Q    From 2006 through 2014, chairman and a

13   director and a general manager of TTP.

14       A    Shiliang Peng was TTP's general manager from

15   2006 to 2008.  In 2008, TTP had stopped production;

16   therefore, I cannot confirm the rest of the

17   information.

18       Q    I'm going to spell this name for the court

19   reporter and the translator.  Z-H-I-P-I-N-G, new word,

20   S-O-N-G.  Isn't it true that Song was chairman of CNBM

21   from 2005 to the present?

22       A    What are you referring to when you say

23   "CNBM"?

24       Q    Beijing New Building Materials Company.

25                    MR. TAYLOR:  Russ, I think you meant

Confidential - Subject to Further Confidentiality Review

1        China New.  You said "Beijing."

2                   MR. HERMAN:  No.

3                   MR. TAYLOR:  Okay.

4                   MR. HERMAN:  I meant Beijing New --

5                   MR. TAYLOR:  Okay.

6                   MR. HERMAN:  -- Building Materials

7        Company, sometimes referred to as Plc.

8    BY MR. HERMAN:

9        Q    Was Song chairman of that company at any

10   time?

11                  MR. TAYLOR:  Objection to form.

12                  He can answer.

13       A    I don't know.

14   BY MR. HERMAN:

15       Q    Was Song chairman of China New Building

16   Materials Company from March 2005 through 2014?

17       A    Is the Song the same Song you just

18   mentioned?

19       Q    Yes.

20       A    I don't know.

21       Q    Was Song chairman of the BNBM Group from

22   1996 through 2014?

23       A    You're asking questions all related to BNBM,

24   but I'm from Taishan.  I do not know anything about

25   that.

Confidential - Subject to Further Confidentiality Review

1    Q    Was Song chairman of CNBM Group from

2   October 2005 through 2014?

3    A    I don't know.

4    Q    Was Jianglin, J-I-A-N-G-L-I-N, capital C-A-O

5   chairman of the supervisory committee from -- of BNBM,

6   from September 2009 through 2014?

7    A    I don't know because I'm a witness for

8   Taishan.

9    Q    Was J-I-A-N-G-L-I-N, capital C-A-O president

10  of CNBM and executive director of CNBM from March 2005

11  to the present?

12   A    I don't know because I'm a witness for the

13  company Taishan.

14   Q    Was Jianglin, capital C-A-O chairman of the

15  supervisory committee of BNBM Group from August 2005

16  to the present date?

17   A    I don't know.  I am the witness for the

18  company Taishan.

19   Q    Was Jianglin, C-A-O a general manager and

20  director -- strike that.

21         Was C-A-O a general manager of

22  CNBM Group from April 2014 to the present?

23   A    I don't know because I'm the witness for the

24  company Taishan.

25   Q    CNBM Group -- was Cao, C-A-O, director of

Confidential - Subject to Further Confidentiality Review

1    the CNBM Group from October 2005 to the present?

2        A     I don't know because I'm the witness for the

3    company Taishan.

4        Q     Was Bing Wang chairman of BNBM from

5    August 2009 to the present?

6        A     I don't know because I'm the witness for the

7    company Taishan.

8        Q     Bing Wang, was he chairman -- strike that.

9              Bing Wang, was he the vice president

10   of CNBM from August 2009 to the present?

11       A     I don't know because I'm the witness for the

12   company Taishan.

13       Q     Was Bing Wang the regional manager of BNBM

14   Group from July 1994 on, forward?

15       A     I don't know because I'm the witness for the

16   company Taishan.

17       Q     Was Tongchun Jia a director of BNBM from

18   2008, July 2008, to September 2012?

19       A     I don't recall the exact month, but from the

20   year 2008 to 2002 [sic], Tongchun Jia was the director

21   of Beijing New Material Company Incorporated.

22       Q     Was Tongchun Jia deputy general manager of

23   BNBM from August 2005 through September 2012?

24       A     I don't remember the exact month, but from

25   2005 to 2000 -- well, 2012, Mr. Jia Tongchun was the

1    deputy --

2                    THE INTERPRETER:  The interpreter needs

3        to clarify with the deponent.

4                    (Translation.)

5                    THE INTERPRETER:  The interpreter

6        continues.

7    A    Jia Tongchun was the deputy general manager

8    of Beijing New Construction Material

9    Company Incorporated, but this is only an honorary

10   title.  Mr. Jia Tongchun was not involved in any way

11   for the operation and management of Beijing New

12   Construction Material Company Incorporated.

13   BY MR. HERMAN:

14   Q    You recall that of your own knowledge; isn't

15   that true?

16   A    During my witness preparation process, with

17   the advice and instruction of my attorney, I have

18   confirmed that was Mr. Jia Tongchun.

19   Q    So you have confirmed it with someone else

20   who is not a witness for the corporation; is that

21   correct?

22                    MR. TAYLOR:  Objection to form.

23                    Witness can answer.

24   A    Please let me know who is the other person

25   you're referring to.

1    BY MR. HERMAN:

2        Q     I'm referring to the person you confirmed

3    your testimony with.

4        A     Would you please say his name?

5        Q     Yes.

6              You indicated in your testimony that,

7    at your attorney's instruction, you confirmed with

8    Tongchun Jia your testimony; is that correct?

9              MR. TAYLOR:  Objection to form.

10       A     Because I'm a witness on behalf of Taishan

11   for matters related to Taishan, it is necessary for me

12   to confirm.  Therefore, as Jia Tongchun is the

13   chairman of board of directors and general manager of

14   Taishan, it is necessary for me to confirm some

15   matters with him.

16   BY MR. HERMAN:

17       Q     That is not of your knowledge.  It is of

18   someone else's knowledge, who has told you of the

19   knowledge that you just spoke of; isn't that true?

20             MR. TAYLOR:  Objection -- I'm sorry.

21        Objection to form.

22       A     Who is this someone else you're referring

23   to?

24   BY MR. HERMAN:

25       Q     Tongchun Jia.

Confidential - Subject to Further Confidentiality Review

1      A      As a requirement of me as the company's

2  witness, I have to confirm certain things, under the

3  advice and instruction of my attorney.

4      Q      Is Jia Tongchun here in the courtroom?

5      A      No.

6      Q      Is he subject to examination under oath in

7  this deposition?

8              MR. TAYLOR:  Objection to form.

9      A      Mr. Jia Tongchun used to be the company's

10  witness that you had requested.  Let me finish.

11  BY MR. HERMAN:

12      Q      Is Jia --

13              MR. TAYLOR:  Had the witness finished

14       his answer?

15      A      But because Mr. Jia's health condition, it

16  is not appropriate for him to take a long-distance

17  travel trip or to take an airplane; therefore, I am

18  the witness of the company.

19  BY MR. HERMAN:

20      Q      Is -- I'll ask again.

21              Is Mister --

22              MR. TAYLOR:  Excuse me.  Excuse me.

23       Wait a minute.  The witness said something else

24       that wasn't translated.

25              THE INTERPRETER:  The interpreter

Confidential - Subject to Further Confidentiality Review

1          interpreted everything the witness had just

2          said.

3     BY MR. HERMAN:

4          Q     Is Mr. Jia --

5                    MR. TAYLOR:  Hold it.  Hold it.  I'm

6          sorry.

7                    THE INTERPRETER:  Except when counsel

8          was objecting and the witness was saying

9          something at the same time, which I did not

10         hear.

11                   MR. TAYLOR:  Okay.  Understood.  Thank

12         you.

13                   MR. HERMAN:  Is Mr. Jia --

14                   MR. TAYLOR:  Wait a minute.  Let him

15         finish his testimony.

16                   THE WITNESS:  I'm not done yet.  Would

17         you wait until I finish?

18                   MR. HERMAN:  Sure.  Sure.

19                   THE WITNESS:  Thank you.

20         A     Therefore, as the witness of the company, I

21    have to confirm some of the issues of the company,

22    under the advice and instruction of the attorney.

23    BY MR. HERMAN:

24         Q     Is Mr. Jia in this courtroom at this time

25    subject to examination?

Confidential - Subject to Further Confidentiality Review

1             MR. TAYLOR:  Objection to form.

2      A     No.

3  BY MR. HERMAN:

4      Q     Was Mr. Jia on the board of directors of

5  BNBM from 2008 to 2012?

6      A     From 2008 to 2012, Mr. Jia Tongchun was the

7  director of Beijing New Construction Material Company,

8  Limited, Inc.

9      Q     From 2005 to 2012, was Jia deputy general

10 manager of BNBM?

11            MR. MARROCCO:  Objection.

12     A     From 2005 to 2012, Mr. Jia was the deputy

13 general manager of Beijing New Construction Material

14 Company Inc., but just like he is a director, it is

15 also an honorary title.  Mr. Jia was not involved in

16 any actual operation and management.

17 BY MR. HERMAN:

18     Q     Is that what Mr. Jia told you?

19     A     Yes.

20     Q     Is he in this courtroom, subject to

21 examination on whatever it is he told you?

22            MR. TAYLOR:  Objection to form.

23     A     What do you think?

24            MR. HERMAN:  Would you repeat the

25        question I asked the witness?

Confidential - Subject to Further Confidentiality Review

```
 1                    (Translation.)

 2      A     I still don't understand your question.

 3   BY MR. HERMAN:

 4      Q     Is Jia in this courtroom, subject to

 5   examination under oath at this time?

 6                    MR. TAYLOR:  Objection to form.

 7      A     I don't understand your question, but I can

 8   tell you that Mr. Jia is not in the courtroom right

 9   now.

10   BY MR. HERMAN:

11      Q     Did Mr. Jia tell you that his participation

12   in BNBM was honorary?

13      A     Yes.

14      Q     I want to ask you now about Yu, Y-U, Chen,

15   C-H-E-N.  Was he a director of BNBM from

16   September 2009 to the present date?

17      A     I don't know because I'm the witness for the

18   company Taishan.

19      Q     As a witness for the company, did you

20   contact Yu Chen to find out if he had been a director

21   for Taishan and a director of BNBM?

22                    MR. TAYLOR:  Objection to form -- I'm

23         sorry.

24                    (Translation.)

25                    MR. TAYLOR:  Objection to form.
```

Confidential - Subject to Further Confidentiality Review

```
 1                    THE WITNESS:  Do I need to answer that
 2        question?
 3                    MR. TAYLOR:  Yes, the witness can
 4        answer.
 5      A     Chen Yu was Taishan company's director in
 6   2015.  For this matter, I only needed to confirm with
 7   our chairman, Jia.
 8   BY MR. HERMAN:
 9      Q     You did not talk to Yu Chen at all, correct?
10      A     Correct.
11      Q     As the company representative, you did not
12   talk to Song, correct?
13                    MR. TAYLOR:  Objection.  Objection to
14        form.
15      A     Who is this Song you're referring to?
16   Please give me his full Chinese name.
17   BY MR. HERMAN:
18      Q     Z-H-I-P-I-N-G Song, S-O-N-G.
19                    As the corporation Taishan or the
20   company Taishan witness, you did not talk to Song; is
21   that correct?
22      A     Correct.
23      Q     As the corporation or company witness for
24   Taishan, you did not talk to J-I-A-N-G-L-I-N, capital
25   CAO; is that correct?
```

Confidential - Subject to Further Confidentiality Review

1    A    As the company witness for Taishan, I did

2  not talk to Jianglin Cao.

3    Q    As the company witness for Taishan, you did

4  not talk to Bing Wang; is that correct?

5    A    Correct.

6    Q    As the company witness for Taishan, you did

7  not talk to Z-H-E-N-G, capital T-A-O; is that correct?

8         THE INTERPRETER:  This is the

9       interpreter speaking.  Is Tao the last name or

10      Zheng the last name?

11         MR. HERMAN:  It's T-A-O, comma,

12      Z-H-E-N-G.

13    A    Correct.

14  BY MR. HERMAN:

15    Q    Do you understand that he was a BNBM

16  assistant manager from 2005 to September 2009?

17    A    I do not know.

18    Q    Do you understand that he was the general

19  manager of BNBM Group from 2014 until today?

20    A    I don't know.

21    Q    Do you understand that he is a director of

22  BNBM Group from July 2014 until today?

23    A    Who is "he"?

24    Q    Who is "he"?

25         Tao is -- was an assistant general

1    manager from February 2005 to September 2009 of BNBM,

2    and he was a general manager and director of BNBM from

3    July 2014 to the present date?

4            MR. MARROCCO:  Object to form.

5        A    I don't know.

6    BY MR. HERMAN:

7        Q    Do you know that he was a nonexecutive

8    director at the same time -- that is, July 2014 to

9    date -- of CNBM?

10           MR. MARROCCO:  Objection.

11       A    Are you still referring to Mr. Tao that you

12   mentioned earlier?

13   BY MR. HERMAN:

14       Q    Yes.

15       A    I don't know.

16       Q    The next individual I'm going to ask you

17   about is C-H-E-N-G-O-N-G, Chengong, Zhang, Z-H-A-N-G.

18   Did you talk to him, as the representative of Taishan?

19       A    No.

20       Q    Did you understand that he was deputy

21   general manager of Taishan from 2006 to 2010?

22           MR. TAYLOR:  Objection to form.

23       A    I do not know.

24   BY MR. HERMAN:

25       Q    You never talked to him?

Confidential - Subject to Further Confidentiality Review

1          MR. TAYLOR:  Objection, form.

2     A     Correct.

3   BY MR. HERMAN:

4     Q     All right.  With respect to Shuhong,

5   S-H-U-H-O-N-G, C-U-L, did you speak with him, as the

6   company representative of Taishan?

7          THE INTERPRETER:  May the interpreter

8      have the last name spelling?

9          MR. HERMAN:  Yes.  C-U-I.

10    A     No.

11  BY MR. HERMAN:

12    Q     Were you aware that, at some time, he was

13  the deputy manager and deputy director of the general

14  manager's office of Taishan?

15    A     I don't know.

16    Q     Did you understand that Mr. C-U-I was a

17  supervisor of CNBM from May 2005 to the present?

18          MR. HAIRSTON:  Objection.

19    A     I don't know because I'm the witness for the

20  company Taishan.

21  BY MR. HERMAN:

22    Q     As the witness for the company Taishan, did

23  you speak to G-U-O-P-I-N-G, Zhou, that's Z-H-O-U?

24    A     No.

25    Q     Did you understand that Z-H-O-U was a

Confidential - Subject to Further Confidentiality Review

1    supervisor of CNBM from March 2005 to the present?

2             MR. HAIRSTON:  Objection.

3             MR. TAYLOR:  Objection to form.

4      A    I don't know because I am the witness for

5    the company Taishan.

6    BY MR. HERMAN:

7      Q    And as the witness for the company Taishan,

8    you never spoke with Z-H-O-U?

9             MR. TAYLOR:  Objection to form.

10     A    Is Zhou referring to the name that you just

11   mentioned?

12   BY MR. HERMAN:

13     Q    Yes.

14     A    Please speak the people's full name because

15   I'm unable to make the connection.

16     Q    You never spoke with G-U-O-P-I-N-G, Z-H-O-U,

17   as the company representative for Taishan?

18     A    Correct.

19     Q    Were you restricted in any way from talking

20   to anyone in BNBM or formerly in BNBM in order to

21   prepare yourself for this deposition?

22             MR. TAYLOR:  Objection to form.

23     A    I'm not sure who are those people you just

24   mentioned.  If you do not give me the name of person,

25   I cannot confirm that.

Confidential - Subject to Further Confidentiality Review

```
 1   BY MR. HERMAN:

 2      Q    I know you think this is funny, and I like

 3   your answer, but I'm going to ask again.

 4              Did anyone restrict you from speaking

 5   to any executive at BNBM to prepare you for this

 6   deposition?

 7              MR. TAYLOR:  Objection to form and

 8         object to counsel's comments in his question.

 9         Sorry.

10              (Translation.)

11              MR. TAYLOR:  Objection to form and

12         object to counsel's comments as being

13         argumentative.

14              The witness can answer.

15              THE WITNESS:  Do I need to answer the

16         question?

17              MR. TAYLOR:  The witness can answer.

18      A    No.

19   BY MR. HERMAN:

20      Q    Did anyone restrict you from speaking to

21   anyone at BNBM Group, an executive, to prepare you for

22   this deposition?

23              MR. TAYLOR:  Objection to form.

24      A    No.

25   BY MR. HERMAN:
```

Confidential - Subject to Further Confidentiality Review

```
1       Q      Did anyone restrict you from speaking to any

2    executive at CNBM to prepare you for this deposition?

3                   MR. TAYLOR:  Objection to form.

4       A      No.

5    BY MR. HERMAN:

6       Q      Did anyone -- did anyone restrict you from

7    speaking with CNBM Group executives, or an executive,

8    to prepare you for this deposition?

9                   MR. TAYLOR:  Objection to form.

10      A      No.

11   BY MR. HERMAN:

12      Q      You've testified earlier today that

13   Mr. Peng, the former general manager of Taishan, left

14   the company in March 2014.  Do you recall that?

15                  MR. TAYLOR:  Objection to form.

16      A      I didn't say that.  I've never said there

17   was a Mr. Peng who was the general manager of Taishan.

18   I don't know where did you get that from.

19   BY MR. HERMAN:

20      Q      What was Mr. Peng's position with Taishan

21   when he left the company in March 2014?

22      A      He was the foreign trade department of

23   Taishan's --

24                  THE INTERPRETER:  And the interpreter

25         will start over again.
```

 1      A      He was a manager of the foreign trade

 2    department of Taishan.

 3    BY MR. HERMAN:

 4      Q      Did you speak with Mr. Peng about preparing

 5    you for this deposition?

 6      A      I did call Mr. Peng and confirmed some

 7    matters.

 8      Q      What matter did you confirm with Mr. Peng?

 9      A      I don't have a clear recollection of that.

10    I've been confirming too much -- too many matters

11    recently in preparation of the deposition.

12      Q      And you did that by telephone?

13      A      Correct.

14      Q      What is his phone number?

15      A      133-2527-0000 -- four zeros.

16      Q      Did you have these conversations over the

17    phone while he was at work?

18      A      I don't have a clear recollection on that.

19    Whenever there were matters that needed to be

20    confirmed, I would call him.

21      Q      Where was he working at the time that you

22    made these phone calls?

23      A      I don't know.

24      Q      Where was he living at the time you made

25    these phone calls?

Confidential - Subject to Further Confidentiality Review

```
 1      A     I believe in Taian City.

 2      Q     How did you get his phone number?

 3      A     He's still using the same phone number he

 4  used before.

 5      Q     And did he give you any resistance to

 6  helping, quote, "prepare you," end quote, to be a

 7  Taishan company representative in this deposition?

 8              MR. TAYLOR:  Objection to form.

 9      A     I don't know what do you mean by "refuse."

10  He cooperated with us.

11  BY MR. HERMAN:

12      Q     Was anyone --

13      A     But he was reluctant on letting us interrupt

14  his new life.

15      Q     What is his new life?

16      A     I don't know.  He's left Taishan.

17      Q     Was he forced out?

18              MR. TAYLOR:  Objection to form.

19      A     He left voluntarily.

20  BY MR. HERMAN:

21      Q     And in preparing yourself for the

22  deposition, did you determine that employees such as

23  yourself and Mr. Peng and Mr. Jia had personnel files?

24              MR. TAYLOR:  Objection to form.

25              THE WITNESS:  Can you repeat your
```

```
 1        question?

 2   BY MR. HERMAN:

 3        Q     You have a personnel file at Taishan?

 4        A     Yes.

 5        Q     Does Mr. Peng have a personnel file at

 6   Taishan?

 7        A     He used to have one.

 8        Q     What happened to it?

 9        A     It was taken away.

10        Q     Who took it away?

11        A     Whoever resigned would have taken away his

12   own personal file.

13        Q     And did Mr. Jia have a personnel file?

14        A     Yes.

15        Q     Where is your personnel file kept,

16   physically?

17        A     What do you mean by "physically"?

18        Q     Where is it?

19        A     What's "where is it?"

20        Q     This cup is on this table.  Where is your

21   personal file, your personnel file?

22                  MR. TAYLOR:  Objection to form.

23        A     I was confirming with you the difference

24   between a physical personal file as a personal file.

25   BY MR. HERMAN:
```

Confidential - Subject to Further Confidentiality Review

1      Q    Well, first, tell me about a physical

2   personal file.  Where is it, of yours?

3                 THE INTERPRETER:  This is the

4          interpreter speaking.  May the interpreter have

5          the definition of "physical," because it can be

6          interpreted in many ways in Chinese?

7   BY MR. HERMAN:

8      Q    Where -- describe your personal file.

9                 MR. TAYLOR:  Objection to form.

10                And, Counsel, we've gone over an hour,

11         and I know you probably have some more

12         questions, but --

13  BY MR. HERMAN:

14     Q    Describe your personal file.

15                MR. TAYLOR:  Counsel, I want to be sure

16         you heard what I just said.

17                MR. HERMAN:  I heard you.

18                MR. TAYLOR:  Thank you.

19                THE WITNESS:  Let's take a break.

20                MR. TAYLOR:  No, no, you have to --

21                MR. HERMAN:  We can't take a break until

22         my question is answered.

23                MR. TAYLOR:  You have to answer the

24         question.

25                THE WITNESS:  Can you repeat the

Confidential - Subject to Further Confidentiality Review

1          question, please?

2                  MR. HERMAN:  Yeah.

3    BY MR. HERMAN:

4      Q     Describe your personal file.

5      A     My file is placed in a file envelope in the

6    personnel department of the company.

7      Q     Give me the address of the personnel

8    department of Taishan.

9      A     Taian City, T-A-I-A-N.  Daiyue District,

10   D-A-I-Y-U-E, District.  Dawenkuo, D-A-W-E-N-K-U-O.

11     Q     And is that where Mr. Jia's file is?

12     A     Correct.

13     Q     And isn't there a file there on Mr. Peng?

14     A     They used to have.

15     Q     Well, do you know, today, whether there's a

16   file there for Mr. Peng?

17     A     Not anymore.

18                  MR. HERMAN:  Thank you.  We'll recess.

19                  MR. TAYLOR:  Okay.  Thank you, sir.

20                  THE VIDEOGRAPHER:  This is the end of

21        Tape 3.  We're now off the record at 2:17.

22                  (Recess taken, 2:17 p.m. to 2:37 p.m.)

23                  THE VIDEOGRAPHER:  This is the beginning

24        of Tape 4.  We're now back on the record.  The

25        time is 2:37.

Confidential - Subject to Further Confidentiality Review

```
 1    BY MR. HERMAN:

 2        Q     Sir, I direct your attention to the screen.

 3    Did you understand that the gypsum that went into the

 4    manufacture of board, gypsum board that was shipped to

 5    the United States of America from China, that that

 6    gypsum came from the Luneng mine?

 7                    MR. MARROCCO:  Object to form.

 8                    (Translation.)

 9                    MR. TAYLOR:  Objection to form.

10                    MR. MARROCCO:  Object to form.

11        A     I do not know.

12    BY MR. HERMAN:

13        Q     What was your job in 2006?

14        A     I was a salesperson in 2006.

15        Q     And were you a salesperson in 2007?

16        A     Yes.

17        Q     And in 2006, you did not know that the

18    drywall shipped to the United States had gypsum from

19    the Luneng mine?

20                    MR. TAYLOR:  Objection to form.

21        A     I'm not sure what were the gypsum boards

22    that were shipped to the United States.

23    BY MR. HERMAN:

24        Q     As the corporate representative of Taishan

25    in this legal matter, you did not review the documents
```

Confidential - Subject to Further Confidentiality Review

```
1    about shipments of Chinese drywall to the United

2    States in 2006?

3                  MR. TAYLOR:  Objection to form.

4                  THE WITNESS:  Please repeat your

5          question.

6                  MR. HERMAN:  No.  What is it you don't

7          understand about my question?

8                  MR. TAYLOR:  Objection to --

9                  (Translation.)

10                 MR. TAYLOR:  Objection to counsel's

11         refusal to repeat the question at the witness'

12         request.  The witness has a perfect right to

13         ask --

14                 MR. HERMAN:  You're giving a speaking

15         objection.  He can ask, but I don't have to

16         answer, sir.

17                 MR. TAYLOR:  He has a perfect right to

18         ask for --

19   BY MR. HERMAN:

20      Q    What is it that you don't understand about

21   the question I asked?

22      A    I did not understand the entire sentence.

23      Q    I'll try to break it down --

24      A    Can you repeat that?

25      Q    -- into two or three words.
```

Confidential - Subject to Further Confidentiality Review

1              In 2006, were there documents of

2    Chinese drywall that was shipped to the United States

3    of America that you reviewed in preparation for your

4    testimony?

5         A    No.

6         Q    In 2007, what was your job?

7         A    Salesperson.

8         Q    In 2006, who were you a salesperson for?

9              THE INTERPRETER:  This is the

10        interpreter speaking.  The interpreter does not

11        understand the question, "Who were you a

12        salesperson for?"

13             MR. HERMAN:  In 2006, who was the

14        employer of the witness, who has testified he

15        was a salesperson?

16        A    What are you referring to?

17   BY MR. HERMAN:

18        Q    Were you a salesperson in 2006?

19        A    Yes.

20        Q    Who did you work for?

21        A    In 2006, I worked for TTP.

22        Q    Did TTP manufacture Chinese drywall?

23        A    We call it paper-faced gypsum board.

24             THE INTERPRETER:  This is the

25        interpreter speaking.  It is a literal

Confidential - Subject to Further Confidentiality Review

1           translation of the deponent's answer.

2    BY MR. HERMAN:

3        Q      Well, did TPP manufacture that material?

4        A      Yes, TTP manufactured the paper-faced gypsum

5    board.

6        Q      And were you involved in any sale of

7    paper-faced gypsum board to the United States of

8    America?

9                MR. TAYLOR:  Objection to form.

10       A      I'm not sure what were the gypsum boards

11   that were sold to the United States; therefore, I

12   can't be sure of my involvement in the sales of the

13   gypsum board.

14   BY MR. HERMAN:

15       Q      In 2007, who was your employer?

16       A      TTP.  I worked as a salesperson in TTP.

17       Q      In 2007, were you involved in any sale of

18   drywall to the United States of America?

19                MR. TAYLOR:  Objection to form.

20       A      I'm not sure what were the gypsum boards

21   that were shipped to the United States; therefore, I

22   cannot be sure of my involvement in the sales of the

23   drywall.

24   BY MR. HERMAN:

25       Q      And in your preparation as a corporate

1    representative of Taishan and TTP, you did not review

2    any documents regarding sales of wallboard, gypsum

3    wallboard, to the United States; is that correct?

4             MR. TAYLOR:  Objection to form.

5             (Translation.)

6             MR. HERMAN:  Excuse me.  Could you look

7        at me instead of your counsel, who points down

8        and has a finger over his lip at some time?

9             MR. TAYLOR:  Excuse me.  For the record,

10        since counsel made those statements, I don't see

11        the witness looking at me, and the witness has a

12        right to look wherever he wants to look when he

13        gives his testimony.  And the fact that I put my

14        finger over my mouth, I don't think is even

15        relevant to be placed on this record.

16             MR. HERMAN:  I disagree with you, and I

17        think that the camera will pick up what happens.

18             MR. TAYLOR:  Yeah, it'll pick up what

19        you're doing also.

20    BY MR. HERMAN:

21        Q    Did you look at any shipping documents of

22    Chinese drywall dated 2006 or 2007 that were shipped

23    from China to the United States of America?

24             MR. TAYLOR:  Objection to form.

25        A    I reviewed some of the company's documents

Confidential - Subject to Further Confidentiality Review

```
 1   while in preparation as a witness, under the

 2   instruction of the lawyer.

 3   BY MR. HERMAN:

 4       Q    Who gave you the documents to review?

 5       A    I reviewed some documents.

 6                I'm not done yet.

 7       Q    Who gave you the documents to review?

 8                MR. TAYLOR:  I think the witness said he

 9         wasn't finished with his testimony.

10                THE WITNESS:  Well, I was thinking about

11         what I was going to say but was interrupted.

12                MR. HERMAN:  I apologize to you.  Why

13         don't you finish what you were going to say.

14                THE WITNESS:  Can you repeat your

15         question, please, because I was interrupted?

16                MR. HERMAN:  Yes.

17   BY MR. HERMAN:

18       Q    Who gave you the documents to review?

19       A    Not this question, the question before this.

20       Q    Who gave you the documents to review?

21       A    Not this question, but the question before

22   it --

23       Q    Whatever that question is, I'll withdraw it.

24                Who gave you the documents to review?

25       A    I reviewed the documents voluntarily.  There
```

1   was no one that gave me the documents.

2        Q    Did you select the documents to review?

3        A    I went to confirm with every department.

4        Q    You selected the documents to review?

5        A    It's not that I selected to review the

6   documents.  It was that I requested every department

7   to provide the documents that were instructed by a

8   lawyer to be provided.

9        Q    What lawyer instructed the departments to

10  select documents?

11            MR. TAYLOR:  Objection to form.

12       A    Alston law firm.

13  BY MR. HERMAN:

14       Q    Did you ever hear of the Luneng mine?

15       A    I have heard of Luneng.

16       Q    Did you ever go to the Luneng mine?

17       A    No.

18       Q    Did you ever go to the manufacturing plant

19  that made the drywall which was shipped to the United

20  States?

21            MR. TAYLOR:  Objection to form.

22       A    I'm not sure what were gypsum boards that

23  were to be shipped to the United States; therefore,

24  I'm not sure which gypsum board manufacturer that I've

25  been to that manufactured gypsum boards that were

1    shipped to the United States.

2    BY MR. HERMAN:

3        Q    As the corporate representative of Taishan,

4    as you sit here today, you don't know what gypsum was

5    shipped to the United States of America, manufactured

6    in China in 2006 or 2007; is that correct?

7              MR. TAYLOR:  Objection to form.

8        A    While I was preparing for the deposition,

9    according to the documents that I have reviewed, both

10   Taishan and TTP had manufactured gypsum board which

11   was shipped out FOB Chinese port, or according to the

12   out of manufacturer price in RMB.  Therefore, I cannot

13   confirm what were the gypsum boards that were shipped

14   to the United States of America.

15   BY MR. HERMAN:

16       Q    Let's first talk about the Taishan

17   manufacturing plant in 2006 that manufactured Chinese

18   drywall, which you saw a shipping order for.  Where

19   was that plant located?

20       A    Where is the shipping order that you are

21   about to show me?

22       Q    I'm not showing you any order.  You

23   mentioned in your testimony you reviewed Taishan and

24   TTP documents shipping drywall FOB.  I'm asking you:

25   Where was the plant of Taishan showing where that

Confidential - Subject to Further Confidentiality Review

```
 1    drywall was manufactured?

 2        A     They are TTP's manufacturing plants, as well

 3    as Taishan's manufacturing plant.

 4        Q     Where?  In 2006, what plants -- where were

 5    the plants that manufactured drywall that you saw FOB

 6    shipping orders for?

 7        A     Taishan's manufacturer plant is located in

 8    Taian City, Daiyue District, D-A-I-Y-U-E, District,

 9    Dawenkuo, D-A-W-E-N-K-U-O, Houzhou Village,

10    H-O-U-Z-H-O-U Village.

11              TTP's manufacturer plant is located in

12    Dawenkuo, D-A-W-E-N-K-U-O -- that's not correct.  TG's

13    manufacturer is in Houzhou, H-O-U-Z-O-U, while TTP's

14    manufacturer is in Dawenkuo -- while TTP is at Houzhou

15    Village, Dawenkuo.  Houzhou, H-O-U-Z-H-O-U; Dawenkuo,

16    D-A-W-E-N-K-U-O.

17              TG is located in Dawenkuo,

18    D-A-W-E-N-K-U-O, not the rest of them.

19        Q     In 2005, did you visit either of those

20    plants?

21        A     TTP did not exist in 2005.

22        Q     Did you visit TG plant in 2005?

23        A     In 2005, I was a salesperson in TG.

24        Q     Did you visit the TG manufacturing plant in

25    2005?
```

Confidential - Subject to Further Confidentiality Review

```
 1        A     Yes.

 2        Q     Did you visit the TTP plant in 2006?

 3        A     Yes.

 4        Q     Did you visit the TG plant in 2006?

 5        A     No.

 6        Q     Did you visit the TTP plant in 2007?

 7        A     Yes.

 8        Q     Did you visit the TG plant in 2007?

 9        A     No.

10        Q     Have you ever seen a lease or license from

11   the owner of the Luneng mine to a manufacturer of

12   Chinese drywall?

13              MR. TAYLOR:  Objection to form.

14              THE WITNESS:  I'm not very clear about

15         the question.  Would you repeat?

16              MR. HERMAN:  I'll ask another question.

17   BY MR. HERMAN:

18        Q     Have you ever seen a permit from the owner

19   of the Luneng mine to either TTP or TG?

20        A     What is a permit?

21        Q     From 2005 to 2008, who owned the Luneng

22   mine?

23        A     I don't know.

24        Q     When you were preparing for your deposition,

25   did you get any preparation about the gypsum that was
```

Confidential - Subject to Further Confidentiality Review

 1   mined in the -- for the Chinese drywall that was

 2   shipped to the United States of America?

 3                  MR. TAYLOR:  Objection to form.

 4      A      Because I cannot confirm what were the

 5   gypsum boards that were shipped to United States,

 6   therefore, I was unable to prepare for that.

 7   BY MR. HERMAN:

 8      Q      And when you traveled around to the various

 9   offices and divisions of Taishan, gathering documents,

10   did anyone give you documents about the Luneng mine?

11      A      No.

12      Q      When you were preparing for your deposition,

13   did you speak to Jianjun, J-I-A-N-J-U-N, Jia, J-I-A,

14   about anything dealing with your representation for

15   the Taishan company?

16      A      No.

17      Q      Did you understand that this gentleman,

18   Jianjun Jia, had been a director of Taishan from 2005

19   to 2008?

20      A      I don't have a clear recollection of that.

21   Please check the commercial registration form that was

22   provided by Taishan.

23      Q      Did you understand that Jianjun Jia was the

24   deputy general manager of BNBM for the same time

25   period, March 2005 through 2008?

Confidential - Subject to Further Confidentiality Review

```
1       A     I don't know.  I'm a company witness for

2    Taishan.

3       Q     As a company witness for Taishan, did you

4    understand that Jianjun Jia was secretary to the board

5    of BNBM from March 2005 through 2008?

6       A     I don't know.

7       Q     When you were preparing as the company

8    representative, did you talk to the gentleman whose

9    name I'm about to spell:  B-A-O-X-I-A-N-G, Wang,

10   W-A-N-G?

11      A     No.

12      Q     Did you understand, or do you understand

13   today, that that gentleman is the deputy general

14   manager of BNBM Group from 2006 to the present date?

15      A     Are you referring to Baoxiang Wang you just

16   mentioned?

17      Q     Yes.

18      A     I don't know.

19      Q     Referring to the same gentleman, did you

20   understand that he began as a director of BNBM Group

21   in 2014 and is a director today?

22      A     I don't know.

23                  (T:6/2/15-6/4/15

24                  Exhibit 4-ALRMH-CNBM00004252 marked.)

25                  (T:6/2/15-6/4/15
```

Confidential - Subject to Further Confidentiality Review

1                    Exhibit 4A-ALRMH-CNBM00004361 marked.)

2    BY MR. HERMAN:

3        Q     This morning, we distributed to counsel

4    opposite the following exhibits:  Exhibit 4 in

5    English; the shareholding structure of CNBM at page 8

6    of its annual report, identified as 6/2/15 to 6/4/15,

7    Exhibit 4; and we distributed Exhibit 4A, 6/2 through

8    6/4/15, in Chinese.  And I'm now going to hand these

9    documents to the court reporter, and we're going to

10   post them in English.  Give us the top.

11       A     I shall look at the Chinese version.

12             (Document review.)

13   BY MR. HERMAN:

14       Q     Did you understand, when you were preparing

15   for your deposition, that in 2005, CNBM Group owned a

16   hundred percent of BNBM Group?

17             MR. HAIRSTON:  Objection.

18             THE INTERPRETER:  May the interpreter

19        clarify with the deponent the tense of his

20        answer?  The deponent said "I do not know" or "I

21        did not know."  May the interpreter clarify that

22        with deponent?  That is the same expression in

23        Chinese, because in Chinese, there's no tense.

24   BY MR. HERMAN:

25       Q     In preparing for your deposition, did you

 1    understand that CNBM Group owned a hundred percent of

 2    CNBM Trading in 2005?

 3              MR. HAIRSTON:  Objection.

 4              THE INTERPRETER:  Interpreter needs to

 5        clarify with deponent the tense.

 6     A    I did not know then.  I do not know now.

 7    BY MR. HERMAN:

 8     Q    Did you know, as the company representative

 9    of Taishan, that in 2005, CNBM Group owned a hundred

10    percent of CNBM Trading?

11              MR. HAIRSTON:  Objection.

12              THE INTERPRETER:  The interpreter needs

13        to clarify with deponent.

14     A    I did not know then.  I do not know now.

15    BY MR. HERMAN:

16     Q    Did you, as preparing to be the Taishan

17    company witness, know then or know now that CNBM owned

18    90% of China United Cement?

19              MR. HAIRSTON:  Objection.

20              THE INTERPRETER:  Can I have a Chinese

21        copy of this?  Chinese copy of this?

22              MR. HERMAN:  You want a Chinese copy?

23        Sure.

24              THE INTERPRETER:  Because if I literally

25        translate some of the words, it doesn't make

Confidential - Subject to Further Confidentiality Review

 1          sense.

 2                    MR. HERMAN:  Excuse me.  I'm handing a

 3          translator a copy of the document in Chinese,

 4          and if you would read the two numbers.

 5                    THE INTERPRETER:  The interpreter will

 6          reinterpret the question that was asked.

 7                    (Translation.)

 8                    THE INTERPRETER:  Interpreter needs to

 9          clarify the tense with deponent.

10     A    I did not know then.  I do not know now.

11     BY MR. HERMAN:

12     Q    As the company representative of Taishan in

13     this deposition, did you understand that CNBM owned

14     60.33% of BNBM Lightweight Building Materials in 2005?

15                    MR. HAIRSTON:  Objection.

16     A    When you said "BNBM," were you referring to

17     China New Building Material Company Inc.?

18     BY MR. HERMAN:

19     Q    I was referring to CNBM owning 60.33% of

20     Beijing New Building Material Inc.

21                    MR. TAYLOR:  Objection to form.

22     A    Are you referring to CNBM Inc. or

23     CNBM Group?

24     BY MR. HERMAN:

25     Q    I'll ask the question again.

Confidential - Subject to Further Confidentiality Review

1           Did you understand, as the company

2   Taishan representative, that BNBM Inc., in 2005, was

3   owned 60.33% by CNBM, China New Building Material?

4           MR. HAIRSTON:  Objection.

5       A    I think there's confusion for the several

6   company names that you have mentioned.  Would you,

7   first of all, confirm the different company names?

8   BY MR. HERMAN:

9       Q    I will --

10      A    Perhaps there are differences between the

11  Chinese translation of the English names.

12      Q    As you look at the Chinese -- if you'll look

13  at the Chinese, CNBM --

14      A    When you look at --

15      Q    -- CNBM is the company.

16      A    -- CNBM, what is CNBM?

17      Q    It is C -- Chinese New Building Material

18  Company.

19      A    When you're talking about this company, are

20  you referring to Chinese New Building

21  Material Incorporated?

22      Q    Yes.

23      A    May I use your pen?

24      Q    Chinese --

25      A    What are you referring to for this company

Confidential - Subject to Further Confidentiality Review

```
1    on the top?

2        Q      China New Building Material Group.

3               Now, I'll ask you again:  Do you

4    understand that CNBM Incorporated owned 60.33% of BNBM

5    in 2005?

6               MR. HAIRSTON:  Objection.

7               THE INTERPRETER:  May counsel not raise

8          his objection until the interpreter finishes the

9          interpretation?  Thanks again.

10              (Translation.)

11       A      In the process of preparing for the witness

12   testimony, under the instruction of the lawyer, I have

13   reviewed some documents.

14              Right now, I know that CNBM Group is

15   the shareholder of CNBM Inc., and CNBM Inc. is

16   shareholder of BNBM Inc., and BNBM Inc. is the

17   shareholder of Taishan Gypsum.  I do not know,

18   however, the detailed numbers of shareholdings.

19   BY MR. HERMAN:

20       Q      All right.  Let's go to 2006.  I'm going to

21   offer the 2005 charts, which are -- the witness has

22   written on, and I'd like to see those so I can

23   identify them for the record.

24              THE INTERPRETER:  This one?

25              MR. HERMAN:  The witness has --
```

1           THE WITNESS:  I cannot read it clearly.

2           MR. HERMAN:  I'm sorry.  This is what

3       the witness has written on.  I need to introduce

4       it to the record because, you see, the witness

5       has written on it.  I'm not moving to 2000 --

6       I'm not moving to 2006 yet.

7           THE WITNESS:  I am only trying to

8       confirm with you what you have just said by

9       writing on it.  I wrote it under your

10      instruction.

11          MR. HERMAN:  The witness wrote on

12      something also.

13          THE WITNESS:  You told me what to write,

14      and I wrote it.

15          MR. HERMAN:  But I saw the witness

16      also write --

17          THE INTERPRETER:  That's it.  The

18      witness, "I didn't write anything."  That's him.

19          MR. HERMAN:  This is not the

20      translator's writing.  It's the witness'

21      writing.

22          THE WITNESS:  Correct.  You told me what

23      companies are on there, and I made a -- I made a

24      remark accordingly, in order to confirm the

25      questions you asked.  I wrote those under your

```
 1            instruction; isn't that true?

 2                 MR. HERMAN:  When you say "you" wrote

 3            it, do you mean the witness wrote it?

 4                 THE INTERPRETER:  The interpreter does

 5            not speak on her behalf, but the interpreter

 6            will always speak on the deponent's behalf.

 7                 MR. HERMAN:  I'm going to introduce

 8            Exhibit 4A, 6/2, dash, 6/15, which the witness

 9            has written on, which is the CNBM 2005 annual

10            report.  It's Exhibit 4A.  And I am going to

11            also introduce the exhibit 6/2/15 to 6/4/15,

12            Exhibit 4, the CNBM annual report of 2005.

13                 THE WITNESS:  May I take a look at that?

14                 MR. HERMAN:  Of course.

15                 THE WITNESS:  I'd like to talk to the

16            judge.  Every word that I have written on this

17            piece of paper was after I had asked the lawyer

18            what were the companies and after the

19            interpreter had interpreted what were the

20            companies, because there had always been

21            confusion of the companies' names that were

22            contained in his questions.

23                 The reason I wrote down those words was

24            to help him to understand what I had knowledge

25            of.  I think it is necessary to let the judge
```

```
 1          know the truth.  Thank you.

 2                  MR. HERMAN:  I appreciate the education,

 3          and I promise not to point at you, but to show

 4          you every courtesy during this questioning.

 5                  MR. TAYLOR:  In regards to the

 6          introduction of Exhibits 4 and 4A, if those

 7          exhibits are being offered for the truth of the

 8          matters recorded or asserted therein, we object

 9          because the propounder of those exhibits has not

10          made the necessary showing for them to be

11          admissible into this record.

12                  MR. HERMAN:  We're offering them for all

13          purposes.

14                  MR. MARROCCO:  Join.

15                  MR. HAIRSTON:  Join.

16                  (T:6/2/15-6/4/15

17                  Exhibit 5-ALRMH-CNBM00004117 marked.)

18                  (T:6/2/15-6/4/15

19                  Exhibit 5A-ALRMH-CNBM00000655 marked.)

20                  MR. HERMAN:  We have put up Exhibit 5,

21          6/2/15 to 6/4/15, an annual report of

22          CNBM Company, Limited, and we have provided the

23          witness and the translator with the 2006 annual

24          report from Exhibit 5 that's Bates-numbered CNBM

25          4117, in English, and CNBM 655, in Chinese.
```

Confidential - Subject to Further Confidentiality Review

1      I'll ask the translator if the translator has

2      both.

3           THE INTERPRETER:  The translator only

4      has the Chinese version.

5           MR. HERMAN:  Okay.  Here is an English

6      version, and the English version is also posted.

7      Now, excuse me, before we go further --

8           THE WITNESS:  I cannot read the Chinese

9      version clearly.

10          MR. HERMAN:  Okay.  Okay.  In a moment,

11     we'll proceed.  We need -- I need to make sure

12     the court reporter gets the exhibits that I

13     introduced, including the one that the gentleman

14     wrote on.

15          THE INTERPRETER:  Counsel, I just want

16     to make sure:  Every time I speak, I'm speaking

17     on his behalf.

18          MR. HERMAN:  Yes.

19          THE INTERPRETER:  I do not -- if I have

20     an opinion, I'll say, "The interpreter is

21     speaking."

22          MR. HERMAN:  I understand.

23          THE INTERPRETER:  Okay.

24          MR. HERMAN:  The gentleman cannot read

25     the Chinese, so I'll ask you to interpret for

Confidential - Subject to Further Confidentiality Review

```
1        the gentleman.

2             Would you -- in order to facilitate this

3        questioning, I'm not going to ask about 2006.

4        There are other dates that are more prominent,

5        and I'm going to ask about 2009.

6             (T:6/2/15-6/4/15

7             Exhibit 8-ALRMH-CNBM00001528 marked.)

8             (T:6/2/15-6/4/15

9             Exhibit 8A-ALRMH-CNBM00001734 marked.)

10            MR. HERMAN:  And I'm going to hand the

11       court reporter, in Chinese, 6/2/15 to 6/4/15,

12       Exhibit 8A, ALRMH-CNBM00001734, in Chinese.  And

13       if the gentleman can't read it, I will ask the

14       court reporter -- not the court reporter, the

15       translator, if the translator can read it.

16            THE INTERPRETER:  Do you have another

17       copy for me?

18            MR. HERMAN:  I need another copy of the

19       Chinese.

20            THE INTERPRETER:  Wow, I can't read

21       this.  We'll share that.  This, I can't see.

22            Do you have the English translation for

23       that?  Do you have the English translation for

24       that?

25            MR. HERMAN:  Yes.
```

```
 1                    THE WITNESS:  Please find somebody to
 2          write in Chinese what is the parent company and
 3          what is this company.
 4                    MR. HERMAN:  The parent company is
 5          CNBM Group.
 6                    THE WITNESS:  Please write it down;
 7          otherwise, I cannot have a clear memory, which
 8          is not beneficial for me to answer your
 9          question.
10                    MR. HERMAN:  Well, then, we won't use
11          the chart.  I'll just ask the question.
12   BY MR. HERMAN:
13       Q    Did you understand, sir, in 2009, that CNBMG
14   owned 65% of BNBMG?
15                    MR. HAIRSTON:  Objection.
16       A    Please use the Chinese name of these two
17   companies.
18   BY MR. HERMAN:
19       Q    Yes.
20                    China New Building Material Group
21   owned 65% of Beijing New Building Material Group in
22   2009.  In preparing for your testimony as a Taishan
23   company representative here, did you understand that?
24       A    Can you repeat your question?
25       Q    In 2009, did you, a company representative
```

1    here for Taishan -- did you understand in the year

2    2009 that China New Building Material Group owned 65%

3    of Beijing New Building Material Group?

4              MR. TAYLOR:  Objection to form.

5      A     These company names are very twisted and

6    similar in Chinese.  If you are asking me questions

7    this way, it is really hard for me to separate them.

8    BY MR. HERMAN:

9      Q     Did you understand, as a company

10   representative, in 2009, that China New Building

11   Material Group owned China New Building

12   Material Incorporated?

13     A     I didn't hear it clearly.  China New

14   Building Material Group owned who?

15     Q     China New Building Material

16   Company Incorporated.

17     A     I know that China New Building Material

18   Group is the shareholder of China New Building

19   Material Incorporated, but I do not know how much of a

20   share -- how much of the shares does it own.

21     Q     As the corporate representative of Taishan,

22   did you understand that China New Building

23   Material Incorporated owned a hundred percent of China

24   United Cement?

25              THE INTERPRETER:  The interpreter needs

Confidential - Subject to Further Confidentiality Review

```
1          to clarify with deponent.

2     A      I did not know then.  I do not know now.

3   BY MR. HERMAN:

4     Q      Were you aware that in 2009, there were more

5   than ten subsidiaries controlled by China United

6   Cement?

7               MR. HAIRSTON:  Objection.

8               THE INTERPRETER:  Interpreter needs to

9          clarify the tense with deponent.

10    A      I did not know then.  I do not know now.

11              THE WITNESS:  May I take a break?

12              MR. TAYLOR:  Yeah, Counsel, we've been

13         going for --

14              MR. HERMAN:  When I finish this line of

15         questioning.

16              MR. TAYLOR:  Counsel, once again, you're

17         not allowing me to finish what I'm trying to

18         say, and I don't think you --

19              MR. HERMAN:  Oh, I'm sorry.  I apologize

20         to you.

21              MR. TAYLOR:  Thank you, sir.  I

22         appreciate it.

23              We've been going for over an hour, and I

24         just wondered how much longer --

25              MR. HERMAN:  You want to stop now?
```

```
 1          We'll stop now, and we'll be back in 15 minutes,

 2          at 4:00 o'clock.

 3                    THE VIDEOGRAPHER:  This is the end of

 4          Tape 4.  We're now off the record at 3:45.

 5                    (Recess taken, 3:45 p.m. to 4:08 p.m.)

 6                    THE VIDEOGRAPHER:  This is the beginning

 7          of Tape 5.  We're now back on the record.  The

 8          time is 4:08.

 9    BY MR. HERMAN:

10      Q    Sir, did you understand, as the corporate

11    representative of Taishan, that in the year 2010,

12    BNBM -- that is, Beijing New Building Materials

13    Company Incorporated -- owned 65% of the stock in

14    Taishan?

15                    MR. MARROCCO:  Object to form.

16                    THE WITNESS:  Can you repeat that?

17    BY MR. HERMAN:

18      Q    Do you understand now that Beijing New

19    Building Materials Incorporated owned 65% of Taishan

20    in the year 2010?

21                    MR. MARROCCO:  Objection.

22      A    I understand that Beijing New Building

23    Materials Incorporated, through itself and indirectly,

24    owns 65% of Taishan.

25    BY MR. HERMAN:
```

Confidential - Subject to Further Confidentiality Review

1      Q      In the years 2007 through 2014, did you

2   understand that Beijing New Building

3   Materials Incorporated owned, directly and indirectly,

4   65% of Taishan?

5      A      Yes.

6      Q      Did you understand at the time that suit was

7   filed against Taishan that Beijing New Building

8   Materials Incorporated owned 65% of Taishan?

9              MR. MARROCCO:  Object to form.

10             THE WITNESS:  Please ask him to repeat.

11             MR. HERMAN:  Yes.

12  BY MR. HERMAN:

13     Q      In 2009, when a lawsuit was filed against

14  Taishan for shipping defective Chinese drywall to the

15  United States of America, isn't it true that Beijing

16  New Building Materials Incorporated owned 65% of

17  Taishan?

18             MR. MARROCCO:  Objection to form.

19             MR. TAYLOR:  Objection to form.

20     A      In 2009, Beijing New Building

21  Materials Incorporated directly or indirectly owned

22  65% of Taishan, but I did not know that at the time.

23  You were talking about the lawsuit in 2009.

24  BY MR. HERMAN:

25     Q      In the year 2014, did Chinese New Building

Confidential - Subject to Further Confidentiality Review

1    Material Group own Chinese New Building Material

2    Import & Export Company?

3        A      I don't know.

4        Q      At the time that Judge Fallon in this case

5    ordered an injunction against Taishan and its

6    affiliates, did you understand that CNBM Import &

7    Export Company was an affiliate of Taishan?

8                    MR. HAIRSTON:  Objection.

9                    MR. TAYLOR:  Objection to form.

10       A      What was the time as you mentioned

11   Judge Fallon had issued an injunction order?

12   BY MR. HERMAN:

13       Q      July 2014.

14       A      What was your question regarding to

15   July 2014?

16       Q      I'll ask another question.

17       A      Okay.

18       Q      In July 2014, as the corporate

19   representative of Taishan, did you understand that

20   China New Building Material Group owned a hundred

21   percent of CNBM Import & Export?

22                    MR. HAIRSTON:  Objection.

23       A      I did not know, because at the time, I was

24   not yet the corporation's representative.

25   BY MR. HERMAN:

1      Q      Well, today, do you know that China New

2    Building Material Group owns a hundred percent of

3    China New Building Material Import & Export Company?

4      A      I do not know.

5      Q      As the Chinese representative here of

6    Taishan Company, are you aware that China New Building

7    Material Incorporated has an interest in the ownership

8    of China J-U-S-H-I Glass Fiber Company?

9                  MR. HAIRSTON:  Objection.

10                 MR. MARROCCO:  Objection to form.

11     A      I do not know.

12   BY MR. HERMAN:

13     Q      At the time Judge Fallon issued his order in

14   July of 2014, as the corporate representative of

15   Taishan, did you know that China New Building Material

16   Company owned 91% of CTIEC company, also known as

17   China Triumph Engineering?

18                 MR. HAIRSTON:  Objection.

19     A      I don't know.  What is the Chinese name of

20   the English company name you just mentioned?

21   BY MR. HERMAN:

22     Q      It's referred to in documents filed in a

23   court, a court, federal court of the United States of

24   America, as CTIEC.

25                 MR. MARROCCO:  Objection to the form.

1       A       Can you give me the Chinese name of that

2   company?

3                       (Conference out of the hearing of the

4                       reporter between the interpreter and

5                       Mr. Herman.)

6                       THE WITNESS:  Would you have him repeat

7          the question?

8                       MR. HERMAN:  Yes.

9   BY MR. HERMAN:

10      Q       Are you aware that at the time Judge Fallon

11  issued his injunction in July 2014, that China New

12  Building Material Incorporated owned 91% of China

13  Triumph Engineering?

14      A       I do not know.

15      Q       Do you know, as the representative of

16  Taishan, that CNBM -- that is, China New Building

17  Material Company Incorporated -- owned a hundred

18  percent of CNBMI, China New Business [sic] Material

19  Investment Company Incorporated?

20      A       I do not know.

21      Q       You do not know now, and you did not know at

22  the time that Judge Fallon issued his injunction in

23  July 2014; is that correct?

24      A       I do not know what?

25      Q       You do not know and did not know in

1    July 2014, when Judge Fallon issued his injunction,

2    that China New Building Material Company Incorporated

3    owned a hundred percent of China New Building Material

4    Investment?

5                   THE INTERPRETER:  The interpreter needs

6         to clarify tense with the deponent.

7    A     I do not know now.  I did not know then.

8    BY MR. HERMAN:

9    Q     When you were preparing as the corporate

10   representative of Taishan, were you advised or did you

11   investigate whether China New Building Material Group

12   was an affiliate of Taishan?

13                  MR. TAYLOR:  Objection to form.  Sorry.

14                  (Translation.)

15                  MR. TAYLOR:  Objection to form and

16        assert the attorney-client privilege to any

17        advice that was provided to Mr. Che by his

18        attorneys.  Other than advice coming from his

19        attorneys, the witness can answer the questions.

20                  THE WITNESS:  Please ask the question

21        again.

22                  MR. HERMAN:  Yes, sir.

23   BY MR. HERMAN:

24   Q     Were you were advised, or did you inquire,

25   as to whether China New Building Material Group was an

Confidential - Subject to Further Confidentiality Review

```
 1    affiliate of Taishan?

 2              MR. HAIRSTON:  Objection.

 3       A    I did confirm that China New Construction

 4    Material Group is the shareholder of China New

 5    Construction Material Inc., while China New

 6    Construction Material Inc. is the shareholder of

 7    Beijing New Construction Material Inc., and Beijing

 8    New Construction Material Inc. is a shareholder of

 9    Taishan Company.

10    BY MR. HERMAN:

11       Q    Do you recall seeing a Taishan document in

12    which is reflected that Mr. Peng indicated that China

13    New Building Material Group, China New Building

14    Material Incorporated, Beijing New Building Material

15    Group, and that China New Building Material

16    Incorporated and Beijing New Building

17    Material Incorporated were affiliates within

18    Judge Fallon's injunction?

19              MR. TAYLOR:  Objection, form.

20              MR. MARROCCO:  Objection.

21       A    Can you show me the document?

22              MR. HERMAN:  I'll break the question up.

23    BY MR. HERMAN:

24       Q    Do you recall -- do you recall reading a

25    Taishan document in which Mr. Peng indicated that
```

Confidential - Subject to Further Confidentiality Review

1    China New Building Material Group was probably an

2    affiliate within Judge Fallon's injunction?

3                    MR. TAYLOR:  Objection to form.

4                    MR. MARROCCO:  Object to form.

5        A     I don't have a clear recollection on that.

6    BY MR. HERMAN:

7        Q     Do you recall a Taishan document in which

8    Mr. Peng indicated that he felt Beijing New Building

9    Material Group was an affiliate within Judge Fallon's

10   injunctive order?

11                   MR. TAYLOR:  Objection to form.

12                   MR. MARROCCO:  Object to form.

13       A     I don't have a clear recollection on that.

14   BY MR. HERMAN:

15       Q     Do you recall, as a corporate representative

16   of Taishan, seeing a document in which Mr. Peng

17   indicated that he thought China New Building

18   Material Inc. was an affiliate of Taishan within the

19   order of injunction issued by Judge Fallon?

20                   MR. TAYLOR:  Objection to form.

21       A     I don't have a clear recollection on that.

22   BY MR. HERMAN:

23       Q     Do you recall seeing a Taishan document in

24   which Mr. Peng indicated that he thought Beijing New

25   Building Material Company Incorporated was an

Confidential - Subject to Further Confidentiality Review

1    affiliate of Taishan within Judge Fallon's injunctive

2    order of July 2014?

3              MR. MARROCCO:  Objection to form.

4              MR. TAYLOR:  Objection to form.

5    A    I don't have a clear recollection on that.

6    BY MR. HERMAN:

7    Q    Did you know that CNBM Import/Export Company

8    was a subsidiary of China New Building Material Group

9    in July of 2014, when Judge Fallon issued an

10   injunction?

11             MR. TAYLOR:  Objection to form.

12             MR. HAIRSTON:  Objection.

13             THE INTERPRETER:  The interpreter needs

14        to clarify tense with the deponent.

15   A    I did not know then.  I do not know now.

16   BY MR. HERMAN:

17   Q    Did you know that China Jushi, J-U-S-H-I,

18   Glass Fiber Company was a subsidiary of China New

19   Building Material Corporation when Judge Fallon issued

20   his injunctive order in July of 2014?

21             MR. TAYLOR:  Objection to form.

22             MR. HAIRSTON:  Objection.

23   A    I don't even know it right now.

24   BY MR. HERMAN:

25   Q    Do you know, as a representative of Taishan,

```
 1    that CTIEC, also known as China Triumph Engineering,

 2    is a subsidiary of China New Business Material

 3    Company Incorporated?

 4              THE INTERPRETER:  May the interpreter

 5         know the Chinese translation for "China New

 6         Business Material Company Incorporated," because

 7         it can be literally translated in different

 8         ways?

 9              MS. ROBERTSON:  Russ, you mean

10         "Building," not "Business."

11    BY MR. HERMAN:

12       Q    On July 17 -- strike that.

13              In July of 2014, at the time Judge

14    Fallon issued his injunction, do you know the China

15    New Building Material Company Inc. was the parent of

16    China Triumph Engineering?

17              MR. TAYLOR:  Objection to form.

18              MR. HAIRSTON:  Objection.

19       A    I did not know.  I do not even know now.

20    BY MR. HERMAN:

21       Q    In July of 2014, when Judge Fallon issued

22    his injunction, as a representative of Taishan, do you

23    know that China New Business Material Investment

24    Company is a subsidiary of China New Building

25    Material Incorporated?
```

```
 1                    MR. TAYLOR:  Objection to form.

 2                    THE WITNESS:  Please repeat.

 3    BY MR. HERMAN:

 4       Q     At the time Judge Fallon issued an

 5    injunction in July of 2014, did you know that China

 6    New Building Material Company Incorporated was the

 7    parent of China New Building Material Investment

 8    Company?

 9       A     I did not know then.  I do not even know

10    now.

11                    MR. TAYLOR:  And objection to form.

12    BY MR. HERMAN:

13       Q     Did you ever read Judge Fallon's injunction

14    issued in July of 2014?

15                    MR. TAYLOR:  Objection to form.

16                    THE WITNESS:  Please repeat.

17    BY MR. HERMAN:

18       Q     As Taishan Gypsum's representative here,

19    under oath, did you ever read, in Chinese or any other

20    language, Judge Fallon's injunction issued in

21    July 2014?

22                    MR. TAYLOR:  Same objection.

23       A     I have heard of the Chinese version.

24    BY MR. HERMAN:

25       Q     Have you read it?
```

Confidential - Subject to Further Confidentiality Review

1     A     I have read the English version, but I did

2  not understand it.  Therefore, I'm not sure of that.

3     Q     As the -- what did you understand it to say,

4  when you read it?

5                MR. TAYLOR:  Objection to form.

6     A     It's been quite a while ago.  I do not have

7  a clear recollection on that.

8  BY MR. HERMAN:

9     Q     As Taishan's representative here, under

10  oath, you have no clear recollection of what Judge

11  Fallon's injunction in July 2014 stated; is that

12  correct?

13     A     No, I was saying that I do not have a clear

14  recollection on the details of it.

15     Q     Do you have a clear recollection that

16  Taishan and its affiliates and subsidiaries were to

17  cease doing business until they paid the Germano

18  judgment?

19                MR. TAYLOR:  Two objections.  One,

20        object to the form.  And secondly, object to any

21        advice or information that was provided to the

22        witness by his attorneys.

23                I instruct the witness not to answer in

24        regards to that advice, but any other

25        information he has about the judgment, the

1        witness is -- it's appropriate for the witness

2        to respond.

3               MR. HERMAN:  I'm going to withdraw the

4        question, and I'm going to ask another question.

5    BY MR. HERMAN:

6      Q    Is it your understanding that in July 2014,

7    Judge Eldon Fallon of the United States District Court

8    in the Eastern District of New Orleans issued an

9    injunction against Taishan and its affiliates doing

10   business in the United States of America until the

11   Germano judgment was paid?

12              MR. TAYLOR:  Object -- I'm sorry.  Go

13       ahead.

14              (Translation.)

15              MR. TAYLOR:  Object and assert the

16       attorney-client privilege to any information

17       that was provided to the witness from his

18       attorneys, and would instruct the witness not to

19       answer in regards to any of that information.

20              Other than that information, the witness

21       is -- it's appropriate for the witness to

22       respond.

23              Also, I would like for the record to

24       reflect that, for some reason, and maybe it's

25       the lateness of the day, that counsel's voice

1          seems to be increasing to a level that I believe

2          is inappropriate for these proceedings.

3                    MR. HERMAN:  I'll withdraw the question.

4     BY MR. HERMAN:

5          Q     Is it your understanding that on July 2014,

6     Judge Eldon Fallon of the United States District Court

7     in the Eastern District of Louisiana enjoined Taishan

8     and any of its affiliates from doing business in the

9     USA until the Germano judgment was paid?

10                   And let me be clear.  I don't care

11    what any lawyer told you.  I want to know what your

12    understanding is.

13                   MR. MARROCCO:  Object to form.

14         A     I understand Judge Fallon had issued a

15    contempt order against Taishan.  During the period of

16    the contempt order, Taishan is forbidden to do

17    business in the United States.

18    BY MR. HERMAN:

19         Q     Did you also understand that any affiliates

20    of Taishan were forbidden to do business in the United

21    States of America?

22                   MR. TAYLOR:  Objection to form.

23         A     I know there is such a saying, but I do not

24    understand, neither do I know the definition of

25    "affiliate," according to the law of the United

Confidential - Subject to Further Confidentiality Review

```
 1   States.

 2   BY MR. HERMAN:

 3       Q     Did you, in your many conversations with

 4   Mr. Peng in preparation for your testimony under oath,

 5   ask him who the affiliates of Taishan Gypsum were

 6   in -- within the context of the order?

 7                   MR. TAYLOR:  Objection to form.

 8       A     Mr. Peng no longer communicates with Taishan

 9   regarding questions such as this.  For this question,

10   I have communicated with the management, and according

11   to Chinese culture and understanding of Taishan,

12   affiliate companies refer to those that Taishan holds

13   interest in.

14   BY MR. HERMAN:

15       Q     Who told you that?

16                   MR. TAYLOR:  Objection to form and

17           assert the attorney-client privilege to any

18           information or advice that was provided to the

19           witness by his attorneys.  Instruct the witness

20           not to answer in that regard.

21                   But to the extent he has other

22           information outside of the information provided

23           to him by his attorneys, the witness should

24           answer, and it is appropriate for the witness to

25           answer.
```

Confidential - Subject to Further Confidentiality Review

1      A      I only remember General Manager Jia and

2    General Manager Zhang, Z-H-A-N-G.  I do not remember

3    anything else.

4    BY MR. HERMAN:

5      Q      Did you make any other investigation as to

6    who or which companies were Taishan affiliates?

7                  MR. TAYLOR:  Objection to form.

8      A      According to Taishan's understanding of

9    "affiliate," and under the instruction and advice of

10   the attorney, we have provided a manufacturer's

11   information sheet, and you'll find the details in its

12   Attachment A.

13   BY MR. HERMAN:

14     Q      That Attachment A that was sent to me

15   yesterday or last night only lists Taishan entities,

16   most of which are subsidiaries.  Do you know the

17   difference between a subsidiary and an affiliate?

18                  MR. TAYLOR:  Objection to form.

19     A      I do not know the difference between

20   "subsidiary" and "affiliate."

21                  MR. HERMAN:  I want to thank you for

22        coming to America for your testimony today.

23        This is the end of questioning today.  I have

24        many, many more questions, and we will begin

25        tomorrow at 9:00 unless counsel from Alston &

Confidential - Subject to Further Confidentiality Review

1           Bird advises me otherwise.  Have a good evening.

2                     MR. TAYLOR:  Thank you, Counsel.

3                     MR. HERMAN:  You're welcome.

4                     THE VIDEOGRAPHER:  This is the end of

5           Tape 5.  We're now off the record at 4:58.

6                     (Proceedings recessed at 4:58 p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Confidential - Subject to Further Confidentiality Review

```
1                    REPORTER'S CERTIFICATE

2

3          This transcript is valid only for a transcript

4    accompanied by my original signature and original

5    required seal on this page.

6          I, Michael E. Miller, Certified Court Reporter

7    (LA Certificate #27009) in and for the State of

8    Louisiana, as the officer before whom this testimony

9    was taken, do hereby certify that GANG CHE, after

10   having been duly sworn by me upon authority of

11   R.S. 37:2554, did testify as herein before set forth

12   in the foregoing 156 pages; that this testimony was

13   reported by me in the stenotype reporting method, was

14   prepared and transcribed by me or under my personal

15   direction and supervision, and is a true and correct

16   transcript to the best of my ability and

17   understanding; that the transcript has been prepared

18   in compliance with transcript format guidelines

19   required by statute or by rules of the board, and that

20   I am informed about the complete arrangement,

21   financial or otherwise, with the person or entity

22   making arrangements for deposition services; that I

23   have acted in compliance with the prohibition on

24   contractual relationships, as defined by Louisiana

25   Code of Civil Procedure Article 1434
```

1    and in rules and advisory opinions of the board;

2    that I have no actual knowledge of any prohibited

3    employment or contractual relationship, direct or

4    indirect, between a court reporting firm and any party

5    litigant in this matter nor is there any such

6    relationship between myself and a party litigant in

7    this matter.  I am not related to counsel or to the

8    parties herein, nor am I otherwise interested in the

9    outcome of this matter.

10

11         Signed this ___ day of _____, 2015.

12

13

14         _____

15         MICHAEL E. MILLER, FAPR, RDR, CRR

16         Certified Court Reporter

17         LA Certified Court Reporter #27009

18

19

20

21

22

23

24

25

```
 1              ACKNOWLEDGMENT OF DEPONENT

 2

 3         I,_____, do hereby

 4    certify that I have read the foregoing pages and

 5    that the same is a correct transcription of the

 6    answers given by me to the questions therein

 7    propounded, except for the corrections or changes in

 8    form or substance, if any, noted in the attached

 9    Errata Sheet.

10

11         _____

12         GANG CHE                   DATE

13

14    Subscribed and sworn to before me this

15    _____ day of _____, 20 _____.

16    My commission expires: _____

17

18    Notary Public

19

20

21

22

23

24

25
```

```
1              — — — — — —

2                   ERRATA

                — — — — — —

3

4    PAGE   LINE    CHANGE/REASON

5    ____   ____   _____

6    ____   ____   _____

7    ____   ____   _____

8    ____   ____   _____

9    ____   ____   _____

10   ____   ____   _____

11   ____   ____   _____

12   ____   ____   _____

13   ____   ____   _____

14   ____   ____   _____

15   ____   ____   _____

16   ____   ____   _____

17   ____   ____   _____

18   ____   ____   _____

19   ____   ____   _____

20   ____   ____   _____

21   ____   ____   _____

22   ____   ____   _____

23   ____   ____   _____

24   ____   ____   _____

25   ____   ____   _____
```

Confidential - Subject to Further Confidentiality Review

1          UNITED STATES DISTRICT COURT

2          EASTERN DISTRICT OF LOUISIANA

3    ****************************************************

4    IN RE:  CHINESE-MANUFACTURED  MDL NO. 2047

     DRYWALL PRODUCTS LIABILITY

5    LITIGATION                 SECTION:  L

6    THIS DOCUMENT APPLIES TO      JUDGE FALLON

     ALL CASES

7                               MAG. JUDGE WILKINSON

8    ****************************************************

9

             CONFIDENTIAL - SUBJECT TO FURTHER

10               CONFIDENTIALITY REVIEW

11               Wednesday, June 3, 2015

12                     — — —

13

14        Continuing Videotaped 30(b)(6) Deposition of

15   TAISHAN GYPSUM CO., LTD f/k/a SHANDONG TAIHE DONGXIN

16   CO., LTD. through the testimony of GANG CHE, VOLUME 2,

17   held in the courtroom of the United States District

18   Court, Eastern District of Louisiana, 500 Poydras

19   Street, New Orleans, Louisiana, commencing at

20   8:58 a.m., on the above date, before Michael E.

21   Miller, Certified Court Reporter (#27009), Registered

22   Diplomate Reporter, Certified Realtime Reporter.

23                     — — —

24             GOLKOW TECHNOLOGIES, INC.

           877.370.3377 ph | 917.591.5672 fax

25               deps@golkow.com

Confidential - Subject to Further Confidentiality Review

```
 1    A P P E A R A N C E S:
 2    COUNSEL FOR THE PLAINTIFF CLASS:
 3         HERMAN HERMAN & KATZ LLC
           BY:  RUSS M. HERMAN, ESQUIRE
 4              rherman@hhklawfirm.com
                MADELYN M. O'BRIEN, ESQUIRE
 5              mobrien@hhklawfirm.com
           820 O'Keefe Avenue
 6         New Orleans, Louisiana 70113
           (504) 581-4892
 7
 8         LEVIN FISHBEIN SEDRAN & BERMAN
           BY:  SANDRA L. DUGGAN, ESQUIRE
 9              sduggan@lfsblaw.com
           510 Walnut Street
10         Suite 500
           Philadelphia, Pennsylvania 19106
11         (215) 592-1500
12
13         IRPINO LAW FIRM
           BY:  PEARL A. ROBERTSON, ESQUIRE
14              probertson@irpinolaw.com
           2216 Magazine Street
15         New Orleans, Louisiana 70130
           (504) 525-1500
16
17         GAINSBURGH BENJAMIN DAVID MEUNIER &
           WARSHAUER LLC
18         BY:  RACHEL A. STERNLIEB, ESQUIRE
                rsternlieb@gainsben.com
19         2800 Energy Centre
           1100 Poydras Street
20         New Orleans, Louisiana 70163-2800
           (504) 522-2304
21
22
23
24
25
```

Confidential - Subject to Further Confidentiality Review

```
 1    A P P E A R A N C E S :
 2    COUNSEL FOR TAISHAN GYPSUM COMPANY:
 3         ALSTON & BIRD LLP
           BY:  BERNARD TAYLOR, ESQUIRE
 4              bernard.taylor@alston.com
                ALIYYA Z. HAQUE, ESQUIRE
 5              aliyya.haque@alston.com
           One Atlantic Center
 6         1201 West Peachtree Street
           Atlanta, Georgia 30309-3424
 7         (404) 881-7000
 8
           ALSTON & BIRD LLP
 9         BY:  HELEN SU, ESQUIRE
                helen.su@alston.com
10         1950 University Avenue
           5th Floor
11         East Palo Alto, California 94303
           (650) 838-2000
12
13    COUNSEL FOR BNBM DEFENDANTS:
14         DENTONS US LLP
           BY:  DREW W. MARROCCO, ESQUIRE
15              drew.marrocco@dentons.com
           1301 K Street, N.W.
16         Suite 600, East Tower
           Washington, D.C. 20005
17         (202) 408-6400
18
19         PHELPS DUNBAR LLP
           BY:  HARRY ROSENBERG, ESQUIRE
20              harry.rosenberg@phelps.com
           365 Canal Street
21         Suite 2000
           New Orleans, Louisiana 70130-6534
22         (504) 566-1311
23
24
25
```

Confidential - Subject to Further Confidentiality Review

```
 1    A P P E A R A N C E S:
 2    COUNSEL FOR CNBM DEFENDANTS:
 3         ORRICK HERRINGTON & SUTCLIFFE LLP
           BY:  ERIC MATTHEW HAIRSTON, ESQUIRE
 4              ehairston@orrick.com
           The Orrick Building
 5         405 Howard Street
           San Francisco, California 94105
 6         (415) 773-5700
 7
 8    COUNSEL FOR THE STATE OF LOUISIANA:
 9         PERKINS COIE LLP
           BY:  DAVID L. BLACK, ESQUIRE
10              dblack@perkinscoie.com
           1900 Sixteenth Street
11         Suite 1400
           Denver, Colorado 80202
12         (303) 291-2400
13
           OFFICE OF THE ATTORNEY GENERAL
14         STATE OF LOUISIANA
           BY:  L. CHRISTOPHER STYRON, ESQUIRE
15              styron@ag.state.la.us
           1885 North Third Street
16         Baton Rouge, Louisiana 70802
           (225) 326-6079
17
18
19    ALSO PRESENT:
20         SUNNY WANG, MANDARIN INTERPRETER
21         YAN GAO
22         MARK ANCALADE, VIDEOGRAPHER
23                        — — —
24
25
```

Confidential - Subject to Further Confidentiality Review

1                         INDEX

                       GANG CHE

2                    June 3, 2015

3

4        PROCEEDINGS                        166

5

6    EXAMINATION OF GANG CHE:

7            BY MR. HERMAN                  166

8            BY MS. DUGGAN                  259

9

10       REPORTER'S CERTIFICATE            291

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Confidential - Subject to Further Confidentiality Review

```
 1                    DEPOSITION EXHIBITS
                           GANG CHE
 2                        June 3, 2015
 3       NUMBER              DESCRIPTION            MARKED
 4    Exhibit 1         Hogan Lovells Deprivileged    208
                        Documents (Complete Set)
 5                      HL_00000001 - HL_00000493
 6    Exhibit          E-mail(s)                      183
      1-HL_00000026    HL_00000026
 7
      Exhibit          E-mail(s)                      190
 8    1-HL_00000162    HL_00000162
 9    Exhibit          E-mail(s)                      200
      1-HL_00000261    HL_00000261
10
      Exhibit          Chinese Version of             183
11    1A-HL_00000026A  Exhibit 1-HL_00000026
12    Exhibit          Chinese Version of             191
      1A-HL_00000162A  Exhibit 1-HL_00000162
13
      Exhibit          Chinese Version of             201
14    1A-HL_00000261A  Exhibit 1-HL_00000261
15    Exhibit 24       BNBM Announcement              224
                       No. 2010-009
16                     ALRMH-CNBM00005105 -
                       ALRMH-CNBM00005107
17
      Exhibit 24A      Chinese Version of             224
18                     Exhibit 24
                       ALRMH-CNBM00005105A -
19                     ALRMH-CNBM00005107A
20    Exhibit 25       CNBM Overseas Regulatory       226
                       Announcement
21                     ALRMH-CNBM00005121 -
                       ALRMH-CNBM00005128
22
      Exhibit 25A      Chinese Version of             226
23                     Exhibit 25
                       ALRMH-CNBM00005121A -
24                     ALRMH-CNBM00005128A
25
```

Confidential - Subject to Further Confidentiality Review

```
1                      DEPOSITION EXHIBITS
2
3    Exhibit 26         BNBM Announcement No.          231
                        2014-030
4                       ALRMH-CNBM00005108 -
                        ALRMH-CNBM00005111
5
     Exhibit 26A        Chinese Version of             231
6                       Exhibit 26
                        ALRMH-CNBM00005108A -
7                       ALRMH-CNBM00005111A
8    Exhibit 27         CNBM Voluntary Announcement    232
                        CNBMCO00000001 -
9                       CNMBCO00000006
10   Exhibit 27A        Chinese Version of             233
                        Exhibit 27
11                      ALRMH-CNBM00005129A
                        ALRMH-CNBM00005132A
12
     Exhibit 28         BNBM Announcement              237
13                      No. 2014-037
                        ALRMH-CNBM00005112 -
14                      ALRMH-CNBM00005113
15   Exhibit 28A        Chinese Version of             237
                        Exhibit 28
16                      ALRMH-CNBM00005112 -
                        ALRMH-CNBM00005113
17
     Exhibit 29         CNBM Voluntary Announcement    238
18                      CNMBCO0000021 -
                        CNMBCO0000004
19
     Exhibit 29A        Chinese Version of             238
20                      Exhibit 29
                        ALRMH-CNBM00005133A -
21                      ALRMH-CNBM00005135A
22   Exhibit 30         BNBM Announcement              242
                        No. 2015-002
23                      ALRMH-CNBM00005114 -
                        ALRMH-CNBM00005117
24
25
```

```
 1                     DEPOSITION EXHIBITS
 2
 3   Exhibit 30A      Chinese Version of         243
                      Exhibit 30
 4                    ALRMH-CNBM00005114A -
                      ALRMH-CNBM00005117A
 5
     Exhibit 31       CNBM Announcement          246
 6                    CNBMCO00000329 -
                      CNBMCO00000331
 7
     Exhibit 31A      Chinese Version of         246
 8                    Exhibit 31
                      ALRMH-CNBM00005136A
 9                    ALRMH-CNBM00005137A
10   Exhibit 32       BNBM Announcement          252
                      No. 2015-003
11                    ALRMH-CNBM00005118 -
                      ALRMH-CNBM00005120
12
     Exhibit 32A      Chinese Version of         252
13                    Exhibit 32
                      ALRMH-CNBM00005118A -
14                    ALRMH-CNBM00005120A
15   Exhibit 33       CNBM Announcement          255
                      ALRMH-CNBM00005138 -
16                    ALRMH-CNBM00005140
17   Exhibit 33A      Chinese Version of         255
                      Exhibit 33
18                    ALRMH-CNBM00005138A -
                      ALRMH-CNBM00005140A
19
     Exhibit 35       Schedule A from Notice of  279
20                    Deposition
21   Exhibit 36       Exhibit 7, Declaration of  270
                      Yan Gao w/Exhibits
22
     Exhibit 37       Table of Taishan           281
23                    Subsidiaries With 6/1/15
                      Cover E-Mail
24
25
```

Confidential - Subject to Further Confidentiality Review

```
 1                    DEPOSITION EXHIBITS
 2
 3   Exhibit 38      CNBM Shareholding Structure      210
                     of the Group
 4                   (Various ALRMH-CNBM Bates
                     Ranges)
 5
     Exhibit 39      Chinese Version of               223
 6                   Exhibit 38 w/Markup by The
                     Witness
 7                   (Various ALRMH-CNBM Bates
                     Ranges)
 8
     Exhibit 40      E-mail(s)                        259
 9                   HL_00000104
10   Exhibit 40A     Chinese Version of               259
                     Exhibit 40
11                   HL_00000105
12   Exhibit 41      1/11/12 Deposition of Gang       269
                     Che w/Exhibits
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Confidential - Subject to Further Confidentiality Review

```
 1                    PROCEEDINGS

 2             (June 3, 2015 at 8:58 a.m.)

 3             THE VIDEOGRAPHER:  We're now on the

 4      record at 8:58.  This is Volume No. 2, Tape 6 on

 5      June 3rd, 2015, to the continuation deposition

 6      of Mr. Che Gang.

 7                  (Interpreter reminded of her oath.)

 8                  (Witness reminded of his oath.)

 9                    GANG CHE,

10                 having been duly sworn,

11                 testified as follows:

12                    EXAMINATION

13   BY MR. HERMAN:

14      Q     Sir, in 2006, when you were involved in

15   shipping Chinese drywall to the United States of

16   America, you used another name in much correspondence.

17   What was that name?

18             MR. TAYLOR:  Objection to form.

19      A     First of all, I'm not sure whether we had

20   shipped gypsum board to the United States because at

21   the time, we used out of manufacturer's price and FOB

22   price.  And as for the time of 2006, I'm also not sure

23   about that, but I have used a name of Bill.

24   BY MR. HERMAN:

25      Q     You used the name of Bill Cher, sir?
```

Confidential - Subject to Further Confidentiality Review

```
 1        A       Bill Cher.

 2        Q       Is that correct?

 3        A       There is some problem with your

 4   pronunciation.

 5        Q       B-I-L-L, new word, C-H-E-R.

 6        A       Hmm.  Yes.

 7        Q       How many, estimate for me, in 2006, how much

 8   correspondence or e-mails to and from Bill Cher.

 9                MR. TAYLOR:  Objection to form.

10        A       I cannot estimate that.  It's been quite a

11   while ago.

12   BY MR. HERMAN:

13        Q       Why do you use the term "FOB"?  Is that

14   something someone coached you to say during these

15   depositions?

16                MR. TAYLOR:  Objection to form,

17          argumentative.

18        A       FOB is a type of sales operation and also

19   the operation that is used by Taishan or TTP.

20   BY MR. HERMAN:

21        Q       Okay.  How many, estimate for me, in 2006,

22   shipments from Taishan or TTP were FOB destined for

23   the United States of America?

24                MR. TAYLOR:  Objection to form.

25        A       Because the operation was that we FOB'd the
```

Confidential - Subject to Further Confidentiality Review

1    shipment Chinese port; therefore, I'm not sure that

2    the shipments eventually arrived in the United States.

3    Therefore, I cannot give you an estimate of how many

4    of those shipments.

5    BY MR. HERMAN:

6        Q     Give me an estimate of how many shipments

7    were FOB that you were listed in correspondence as

8    Bill Cher from Taishan and TTP to the United States of

9    America.

10            MR. TAYLOR:  Objection to form.

11       A     First of all, I'm not sure what were the

12   shipments that were shipped to the United States

13   because we operated FOB Chinese port; therefore, I'm

14   unable to give you an estimate.

15   BY MR. HERMAN:

16       Q     Who gave you the name Bill Cher?

17       A     I came up with that myself.

18       Q     Well, how long have you known English words

19   in connection with your work at Taishan and TPP?

20       A     Please repeat your question.  I don't

21   understand what you said.

22       Q     Yeah.

23            Where did you study English?

24            MR. TAYLOR:  I request that the record

25        reflect that for the last few questions, for

Confidential - Subject to Further Confidentiality Review

```
 1          some reason, counsel has asked his questions

 2          with his back to the client and to the witness.

 3          I just want the record to reflect that.

 4               MR. HERMAN:  That's absolutely true, and

 5          I know of no rule of the Federal Rule of

 6          Evidence or deposition procedure that requires

 7          counsel to face the witness, particularly when

 8          counsel feels the witness is being evasive.  And

 9          I'm going to ask the question again.

10  BY MR. HERMAN:

11      Q    Explain any education that you have had in

12  the English language.

13      A    I only know simple English, such as "ABC" or

14  "morning."  But I do not understand a full sentence of

15  English.

16      Q    Yesterday I asked you, and I'm going to ask

17  you again:  As the corporate representative of

18  Taishan, did you review the documents that you were

19  involved with on shipments from Taishan and TPP of

20  Chinese drywall that was shipped to the United States

21  of America during the years 2006 and 2007?

22               MR. TAYLOR:  Objection to form and

23          question for counsel:  Do you intend to go over

24          all of the questions you asked yesterday again?

25               MR. HERMAN:  Would you answer my
```

Confidential - Subject to Further Confidentiality Review

1          question, please, sir.

2                    MR. TAYLOR:  The record should reflect

3          counsel didn't respond.

4                    THE WITNESS:  Do I need to answer that?

5                    MR. TAYLOR:  Yes.

6                    THE WITNESS:  Please ask the question

7          again.

8     BY MR. HERMAN:

9          Q    As the corporate representative of Taishan

10    and TPP, did you review the documents of 2006 and 2007

11    showing Chinese drywall which was FOB China in

12    2006-2007?

13         A    First of all, we FOB'd Chinese port;

14    therefore, I'm not sure which ones of those gypsum

15    board were shipped to the United States.  Therefore, I

16    cannot confirm what were the documents you're

17    referring to.

18         Q    I don't think my question included the

19    United States.  I'll ask it again.

20                    Did you review documents that had the

21    name "Bill Cher" on them in 2006 and 2007 regarding

22    shipments of Chinese drywall from Taishan or TPP FOB

23    China?

24         A    I did review.

25         Q    When did you review those, sir?

Confidential - Subject to Further Confidentiality Review

```
1      A     I reviewed relevant documents under the

2   instruction and advice of my attorney.

3      Q     Sir, if you could answer my question, I'd

4   appreciate it.

5                  When did you make that review?

6      A     I do not recall the specific dates.

7      Q     Which attorney?  What law firm?

8      A     Alston law firm.

9      Q     That law firm appeared in this case less

10  than 80 days ago.  Have you forgotten what you

11  reviewed during those 80 days?

12                 MR. TAYLOR:  Objection to form,

13       argumentative.

14     A     I did not say that I forgot that I have

15  reviewed the documents.  I was only saying that I do

16  not recall the specific dates.  Do not misquote what I

17  said.

18  BY MR. HERMAN:

19     Q     I did not ask you for specific dates.  I

20  asked you for the years 2006 and 2007.

21                 MR. TAYLOR:  Objection to form.

22     A     Do I need to review those documents in 2006

23  and 2007?

24  BY MR. HERMAN:

25     Q     Did you review them?
```

Confidential - Subject to Further Confidentiality Review

```
1      A    I do not recall what I did in 2006 and 2007

2   as of now.

3      Q    Well, do you recall as of --

4      A    I think you have a problem of asking the

5   question.  Please specify the purpose of you asking

6   the questions.

7      Q    Sir --

8      A    I don't understand the question you asked.

9      Q    I am inadequate, and I'll do the best I can

10   to rephrase a question in my inadequate way more

11   adequately.

12           Did you, under instructions of

13   Alston & Bird, review documents which had Bill Cher's

14   name on them, those documents from 2006?

15           MR. TAYLOR:  Two objections.  One,

16      object to form.  Secondly, object and assert the

17      attorney-client privilege, the work product

18      privilege, and instruct the witness not --

19           MR. HERMAN:  All right.  If you're going

20      to interrupt, I'm going to have Judge Fallon

21      come in.

22           MR. TAYLOR:  Would you let me finish my

23      objection first?

24           MR. HERMAN:  Sure.

25           MR. TAYLOR:  Instruct the witness not to
```

Confidential - Subject to Further Confidentiality Review

```
1        answer to the extent that he is being asked to

2        provide you with information regarding what

3        documents we asked him to review, because that

4        is a direct attempt to get into our work product

5        and our thought process of what's important in

6        this case, so --

7              MR. HERMAN:  Well, we will now call

8        Judge Fallon.  I have not asked this witness for

9        the content.  I only asked him if he was asked

10       to review those documents.

11             MR. TAYLOR:  If you will let me finish?

12             MR. HERMAN:  No.

13             MR. TAYLOR:  Okay.

14             MR. HERMAN:  You have made an objection.

15       Now you've wasted five minutes on a frivolous

16       objection.

17             MR. TAYLOR:  All right.  That's what you

18       think.  But I hadn't quite finished my

19       objection, and I will finish it for the record.

20             MR. HERMAN:  Please, go ahead and finish

21       that objection, and tell the witness whether you

22       instruct him not to answer or to answer.

23             MR. TAYLOR:  I'm instructing the witness

24       not to disclose any document that we directed

25       him to review as part of the advice we provided
```

1    to him during the course of our representation

2    of Taishan, okay?

3              MR. HERMAN:  Are you instructing him not

4    to answer the last question?

5              MR. TAYLOR:  He can answer the question

6    that we -- whether or not -- no, he cannot

7    answer the question of whether or not we asked

8    him to review any documents with his name on

9    them.

10             MR. HERMAN:  I'd like the court reporter

11   to please note the objection -- the question,

12   the objection and the colloquy, and at the first

13   recess, I'll ask Judge Fallon to make a ruling,

14   and I'll need my question and counsel's

15   objection available for the Court.

16             And my response is:  Only content is

17   protected, not whether he was asked to prepare

18   himself as a corporate representative by

19   reviewing his own documents.

20             MR. TAYLOR:  You asked --

21             MR. HERMAN:  That's what I asked him.

22   Counsel, you made your statement.  I have

23   another question.

24             MR. TAYLOR:  I'm sorry, I haven't

25   finished.

Confidential - Subject to Further Confidentiality Review

```
 1              MR. HERMAN:  Well, I have another
 2      question.
 3              MR. TAYLOR:  Well, you're going to wait
 4      until I finish, sir.
 5              MR. HERMAN:  Okay.  You just waste as
 6      much time as you want.
 7              MR. TAYLOR:  That's fine.
 8              MR. HERMAN:  This witness is going to
 9      have to come back.  I'll tell you that.
10              MR. TAYLOR:  As I understood the
11      question, the question was whether or not
12      Alston & Bird specifically asked the witness to
13      review documents with his name on it.
14              MR. HERMAN:  That's true.
15              MR. TAYLOR:  Okay.
16              MR. HERMAN:  And you instructed him not
17      to answer.
18              MR. TAYLOR:  If, indeed, he reviews
19      documents in some other form under some other
20      situation, that's fine, but not at our
21      instruction.
22  BY MR. HERMAN:
23      Q    Did you review documents in -- that were
24  dated in 2006 and 2007 that had Bill Cher's name on
25  them?
```

1            THE WITNESS:  Do I need to answer the

2     question?

3            MR. TAYLOR:  Yes.

4     A     I did review some documents in the years of

5     2006 and 2007, but I'm not sure whether they bear the

6     name "Bill Cher" because I did not pay attention to

7     that.

8     BY MR. HERMAN:

9     Q     When did you, as the corporate

10    representative of Taishan, review those documents?

11    A     In 2015.  I reviewed a large amount of

12    documents related to the company, but because the time

13    is really tight, it is impossible for me to have a

14    very clear recollection on that.  If you have those

15    documents, please take them out and show them to me,

16    because Taishan had already provided a lot of

17    documents according to the document production

18    request.  Is that okay?

19    Q     Who told you that?

20    A     Who told me what?

21    Q     Who told you that Taishan had provided a

22    large part of documents pursuant to document requests?

23    Who said that to you?

24            MR. TAYLOR:  Object to the question.

25         Assert the attorney-client privilege to any

Confidential - Subject to Further Confidentiality Review

```
 1          advice or comments provided to the witness by

 2          his attorneys and instruct him not to answer.

 3          Now, if he received that information from other

 4          sources, the witness can answer.

 5                  THE WITNESS:  Please ask your question

 6          again.

 7                  MR. HERMAN:  I'll ask another question.

 8   BY MR. HERMAN:

 9      Q    Did you review your prior deposition in this

10   case and the exhibits attached to it?

11      A    Well, was it after the prior deposition?

12                  THE INTERPRETER:  The interpreter just

13          repeated the second part of the question, "and

14          the exhibits attached."

15      A    I reviewed some of the documents in the

16   prior deposition of ours.

17   BY MR. HERMAN:

18      Q    Did you read your prior deposition, either

19   in English or in Chinese translation?

20                  MR. TAYLOR:  Object, assert the

21          attorney-client privilege.  And I understand the

22          nature of the question as to whether or not he

23          read it, but just to be sure there's no

24          confusion, assert the attorney-client privilege

25          to any information that Mr. Che's attorneys
```

Confidential - Subject to Further Confidentiality Review

1          provided to him regarding his deposition and the

2          exhibits attached to his deposition, and will

3          instruct him not to answer in regards to those

4          discussions.

5                  If, indeed, he reviewed his deposition

6          and the documents during the course of any other

7          process, he can respond.

8                  THE WITNESS:  Do I need to answer that?

9                  MR. TAYLOR:  Sure.  Yes.

10    A     I have reviewed some relevant documents.

11   Some of them are in Chinese and some of them are in

12   English, but I could only understand those that are in

13   Chinese.  For those that are in English, I would need

14   the assistance of some translation tools to have a

15   general understanding.

16   BY MR. HERMAN:

17    Q     Let me ask my question again, sir, and if

18   you can answer it yes or no and then explain, I'd

19   appreciate it.

20                 Have you reviewed your prior

21   deposition in either English or Chinese in 2015?

22                 MR. TAYLOR:  Object, assert the

23          attorney-client privilege to any portions of his

24          deposition transcript or any exhibits attached

25          to his deposition transcript that he was

Confidential - Subject to Further Confidentiality Review

```
 1          instructed to read or asked to read at the

 2          request of his attorneys.

 3               Other than those instructions, the

 4          witness can answer the question posed by

 5          counsel.

 6               THE WITNESS:  Please repeat.

 7     BY MR. HERMAN:

 8     Q    Did you read your depositions in 2015 that

 9     you gave in this case?

10     A    Is it 2015 or 2005?  In 2015, under the

11     advice and instruction of the attorney, I reviewed

12     relevant documents.

13     Q    Did you review your deposition?

14     A    Yes.

15     Q    Did you say yes?  Did you say yes?

16     A    Yes.

17     Q    And did you review Chairman Jia's prior

18     depositions in 2015?

19               MR. TAYLOR:  Object to form of the

20          question, assert the attorney-client privilege

21          and instruct the witness not to answer to the

22          extent he reviewed any documents, including

23          chairman -- or any portions of Chairman Jia's

24          deposition at the request of his attorneys or

25          any exhibits attached that his attorneys pointed
```

Confidential - Subject to Further Confidentiality Review

```
 1          out for him, ask him not to answer in regards to
 2          those limited portions of the deposition or
 3          those exhibits that his attorneys may have asked
 4          him to review.
 5               Other than those instructions from his
 6          attorneys, if the witness has reviewed any of
 7          the documents that counsel's question is focused
 8          upon, the witness can respond.
 9          MR. HERMAN:  I'm going to reply one time
10          and advise counsel that when I get a complete
11          transcript tomorrow, I'm going to ask the judge
12          to rule, and I'm going to move for sanctions for
13          the cost of the depositions entirely, including
14          attorneys' fees.
15               The rule is that a witness who prepares
16          him or herself for deposition by reviewing
17          documents must state under oath the documents
18          which were reviewed when counsel does not ask
19          for the content reviewed.  I've said it once,
20          and we'll -- when we get a complete, final
21          transcript, we'll move for sanctions.
22          MR. TAYLOR:  That's fine, Counsel.  The
23          way I interpret your question, Counsel, just to
24          be sure that I round out the objection I'm
25          making, is that you are specifically asking the
```

Confidential - Subject to Further Confidentiality Review

1          witness whether he reviewed certain documents

2          and specifically asking the witness if he has

3          reviewed certain portions of a transcript at our

4          request, and I've indicated that if he's done

5          that at our request, he's not to respond.

6                  Now, as I understand the rule, if,

7          indeed, you then want to ask the witness if he's

8          reviewed a particular document, you have the

9          obligation to pull out that document, show it to

10         the witness and ask that -- ask him if that

11         refreshes his memory in regards to any documents

12         he reviewed.

13                 MR. HERMAN:  I'll ask the question

14         again.

15   BY MR. HERMAN:

16     Q    Did you review Chairman Jia's depositions,

17   prior depositions, in the year 2015?

18                 MR. TAYLOR:  And my objection regarding

19         the application of the attorney-client privilege

20         to the witness' response is the same.  If the

21         witness reviewed any of Chairman Jia's

22         deposition that was not specifically requested

23         for him to review by his attorneys, he can

24         respond.  If he reviewed any exhibits that were

25         not specifically requested by his attorneys for

1          him to review, he can respond.

2                 THE WITNESS:  Do I need to answer that?

3                 MR. TAYLOR:  You can answer as long as

4          you don't reveal any of our discussions

5          regarding what your attorneys asked you to

6          review.

7     A     During the process of preparation as a

8     witness, I have reviewed a lot of documents, but I'm

9     not sure specifically what parts of documents you are

10    referring to.  If you have those documents, please

11    take them out and show them to me.

12    BY MR. HERMAN:

13    Q     Did you review Chairman Jia's deposition in

14    the year 2015, as the company representative of

15    Taishan?

16    A     I have reviewed a lot of documents.  I'm not

17    sure what parts of those documents are regarded as

18    Chairman Jia's deposition.  If you have the documents,

19    you can take them out and show them to me so that I

20    can help you to confirm.

21    Q     I appreciate very much your offer of help.

22    Perhaps you can help me with this.

23                At your prior deposition in this case,

24    is it true that you were represented by counsel?

25    A     Please repeat.

Confidential - Subject to Further Confidentiality Review

```
1      Q    Were you represented by counsel, an

2  attorney, at the deposition which you previously gave

3  in this case?

4      A    I don't understand.  What do you mean by

5  whether I was represented by counsel?

6      Q    Was Chairman Jia represented by counsel in

7  his prior deposition in this case?

8      A    I do not understand.  What do you mean, or

9  what is a definition of counsel's representation?  I

10  would suggest to you to use simple sentence.

11              (T:6/2/15-6/4/15

12              Exhibit 1-HL_00000026 marked.)

13              (T:6/2/15-6/4/15

14              Exhibit 1A-HL_00000026A marked.)

15              MR. HERMAN:  I'm going to refer to

16         Hogan Lovells document 26 and the interpretation

17         of Hogan Lovells document 26.  I'm going to hand

18         a copy to the court reporter, I'm going to hand

19         a copy to the translator, and I am going to hand

20         a copy to opposing counsel.

21              MR. TAYLOR:  Thank you, Counsel.

22              THE WITNESS:  I don't have a copy.

23         Chinese?  Do you have a Chinese copy?

24              THE INTERPRETER:  He's got it.  He's got

25         it.
```

```
 1              MR. HERMAN:  Does the translator have a
 2        copy in Chinese?
 3              THE INTERPRETER:  Yes.
 4   BY MR. HERMAN:
 5        Q    Does the witness have a copy in Chinese?
 6        A    No.
 7        Q    In that case, I'd like the witness to read
 8   for the record in Chinese, and I'd like the translator
 9   to translate the July 7th, 5:14 a.m. Dong Chungang
10   writing to Joe and Eugene beneath the word "Redacted."
11        A    Do I need to read it?
12        Q    Yes, please read it aloud, and the
13   interpreter will interpret it in English.
14              MR. TAYLOR:  My only -- it's not really
15        an objection.  It's an agreement that this part
16        of the testimony will be certified in the record
17        and marked as highly confidential so that it's
18        not disclosed to the general public.
19        A    On July the 7th, 2014 at 5:14 a.m., Dong
20   Chungang wrote -- how do you pronounce this word?
21   BY MR. HERMAN:
22        Q    "Joe."
23        A    And?
24        Q    "Eugene."
25        A    "Joe and Eugene, it's not Mr. Jia who can
```

 1   make the decision.  This case involves many high-level

 2   officers in CNBM Group now.  They don't know details

 3   and urgency of the case.  As I know, Mr. Jia and

 4   Mr. Peng have urged them again and again.  The group

 5   have held a series of meetings listening to the

 6   reports about this case, and another meeting is

 7   scheduled for Thursday.  I have tried my best to let

 8   them know what is going on in the U.S. courts.

 9             "On TG level, I know there is a fierce

10   criticism from some local minority shareholders

11   against Mr. Jia about why he has agreed to cooperate

12   with majority shareholders" -- "majority shareholders"

13   in Chinese, it does not sound very proper -- "by

14   paying so much for the U.S. litigation.

15             "Best regards, Dong Chungang,

16   Partner."

17             MR. TAYLOR:  Okay.  I'll --

18             MR. HERMAN:  I offer and introduce into

19        the deposition Hogan Lovells document 000000026

20        in English and 26A in Chinese.

21             MR. TAYLOR:  Object to the introduction

22        of -- first of all, both of these documents will

23        have to be handled as highly confidential and,

24        therefore, sealed.

25             Secondly, I object to the introduction

1    of 26A because, on its face, it is clearly an

2    inaccurate -- and I don't even read Chinese --

3    an inaccurate reflection of what's on 26.

4         The redactions between the sentences

5    are, for whatever reasons, omitted, so that it

6    appears that there are complete sentences where,

7    indeed, there are gaps in between the sentences

8    that were redacted by Judge Fallon as being

9    privileged.

10        Therefore, it gives a completely

11   inaccurate reflection of what's contained in the

12   original document of 26, which is Hogan Lovells

13   number 26.

14        Further, I object to the introduction of

15   both documents to the extent that they are

16   offered for the purpose of showing that they

17   reflect the truth of the matters asserted or

18   recorded therein.  The propounder, Counsel, has

19   not made the appropriate showing that, indeed,

20   the documents are admissible.

21        MR. MARROCCO:  Join the objection.

22   BY MR. HERMAN:

23   Q    Yesterday, you indicated you had discussions

24   with Chairman Jia in order to prepare you as a witness

25   as Taishan's corporate representative.  Did you

Confidential - Subject to Further Confidentiality Review

1  discuss with Mr. Jia that this case involved many

2  high-level officers in the CNBM Group?

3            MR. HAIRSTON:  Objection.

4      A    Under the instruction and advice of my

5  attorney, I confirmed this e-mail with Chairman Jia.

6  Chairman Jia told me he also did not know why Mr. Dong

7  Chungang said what he said.

8  BY MR. HERMAN:

9      Q    Did you discuss in your telephone calls with

10  Mr. Peng the information -- or any information on this

11  document?

12            MR. TAYLOR:  Objection to form.

13      A    Mr. Peng had left his employment in Taishan,

14  and for any specific questions regarding this case, he

15  personally refused to answer.  Therefore, we are

16  unable to confirm the matter with him.

17            MR. HERMAN:  Do you need to change the

18        tape at this point?

19            THE VIDEOGRAPHER:  This is the end of

20        Tape 6.  We're now off the record at 9:51.

21            (Recess taken, 9:51 a.m. to 10:06 a.m.)

22            THE VIDEOGRAPHER:  This is the beginning

23        of Tape 7.  We're now back on the record, and

24        the time is 10:06.

25  BY MR. HERMAN:

Confidential - Subject to Further Confidentiality Review

1      Q     Sir, I direct you to the Hogan Lovells

2   document, I believe it's 26, but in Chinese, and I ask

3   you:  Who were the local minority shareholders against

4   Mr. Jia?

5                    MR. TAYLOR:  I believe the document is

6           26A, if we're looking at the Chinese version.

7                    MR. HERMAN:  Chinese is 26A; it's on the

8           gentleman's right.  And 26 is in English; it's

9           on the gentleman's left.

10                   MR. TAYLOR:  Thanks, Counsel.

11                   THE WITNESS:  It is also 26?  Please ask

12          your question again.

13   BY MR. HERMAN:

14      Q     Who were the -- strike that.

15                   Did you discuss with Chairman Jia

16   fierce criticism from some local minority shareholders

17   against Mr. Jia?

18      A     I have discussed with Mr. Jia, who is our

19   chairman, regarding this e-mail.  However, our

20   chairman also didn't know why Mr. Dong Chungang wrote

21   what he wrote.

22                   MR. HERMAN:  Would you please spell, for

23          the record, that name in English that the

24          gentleman witness just referred to?

25                   THE INTERPRETER:  Yes.  Last name, Dong,

Confidential - Subject to Further Confidentiality Review

1          D-O-N-G, first name, Chungang, C-H-U-N-G-A-N-G.

2     BY MR. HERMAN:

3          Q     Who were the local minority shareholders

4     against Mr. Jia?

5               MR. TAYLOR:  Objection to form.

6          A     I do not know what are those minority

7     shareholders Mr. Dong Chungang wrote in this e-mail.

8     BY MR. HERMAN:

9          Q     When you discussed this with Mr. Jia, did

10    you understand that the local minority shareholders

11    were minority shareholders of Taishan?

12         A     When I was confirming this e-mail with

13    Mr. Jia, Mr. Jia also did not know why Mr. Dong

14    Chungang wrote this e-mail; therefore, he also did not

15    know what the minority shareholders was referred to in

16    this e-mail.

17         Q     This was something that Chairman Jia said to

18    you?

19         A     Yes.

20         Q     Who were the minority shareholders of

21    Taishan on July 7th, 2014?

22         A     I don't know what is your definition of

23    "minority shareholders."

24         Q     Who was the majority shareholders?

25         A     I also do not know what is your definition

Confidential - Subject to Further Confidentiality Review

1   of "majority holders."

2       Q    Isn't it true that on July 7th, 2014, BN

3   Building -- N, New, B, Building, M, Materials,

4   Corporation Inc. owned 65% of Taishan?

5               MR. TAYLOR:  Object to form.

6               THE INTERPRETER:  This is the

7           interpreter speaking.  Counsel, when you said

8           "BN," do you mean Beijing?

9               MR. TAYLOR:  She's asking you.

10      A    On July the 7th, 2014, Beijing New Building

11  Material Company Inc. directly or indirectly owned 65%

12  of Taishan's shares.

13  BY MR. HERMAN:

14      Q    And isn't it true on July 7th, 2014, that

15  Chairman Jia owned 5% of Taishan stock?

16      A    Correct.

17      Q    Together, they -- that is, BNBM Company Inc.

18  and Chairman Jia together owned 70% of the stock in

19  Taishan on July 7th, 2014; isn't that true?

20      A    I don't understand why you put them

21  together.  Mr. Jia, the chairman, owned his shares

22  while BNBM owned its shares.

23              (T:6/2/15-6/4/15

24              Exhibit 1-HL_00000162 marked.)

25              (T:6/2/15-6/4/15

Confidential - Subject to Further Confidentiality Review

```
 1                Exhibit 1A-HL_00000162A marked.)

 2                MR. HERMAN:  I'm going to show you and

 3         the translator and counsel opposite

 4         Hogan Lovells document 162 dated on July 11,

 5         2014, and ask that the witness read 162A, and

 6         I'll so mark a copy for the translator.  And so

 7         the record is clear, HL_162 is in English and

 8         HL_162A is in Chinese.

 9                MR. TAYLOR:  Counsel, with all due

10         respect, sir, I haven't received 162 or 162A

11         yet.

12    BY MR. HERMAN:

13      Q    I'll ask that the witness read aloud 162A,

14    and after the witness has read it aloud, the

15    translator to translate for the record in English.

16                MR. TAYLOR:  Counsel, just a point of

17         order, when the translator translates, is she

18         going to be translating what the witness

19         testified, or will she be reading from 162?

20                MR. HERMAN:  I've asked the translator

21         to translate the witness' reading for the

22         record.

23                MR. TAYLOR:  Thank you, sir.

24                MR. HERMAN:  And for the record, the

25         witness, on his left, has the English, and on
```

1          his right, has the Chinese.

2                    THE WITNESS:  Ask the question again,

3          please.

4                    MR. HERMAN:  Yes.

5    BY MR. HERMAN:

6      Q     Please read the Chinese version for the

7    record.

8      A     "All recipients, we have called Peng to try

9    to get a detailed written instruction to withdraw from

10   Germano.  Essentially, Peng said the final decision

11   has not been made yet.  Therefore, he was unable to

12   give a detailed written withdrawal from Germano or

13   other cases' instruction.  He was only advised to

14   respond to us to confirm that we have learned the

15   intention of withdrawal from the case.

16                    "We'll continue to push and try to

17   give a response on Monday, your time, but at the same

18   time, I believe we need to proceed according to what

19   Tom had suggested in the other e-mail of his.

20                    "Best regards, Eugene Chen, Partner.

21   Hogan Lovells International LLP, 18th Floor, Park

22   Place, 1601 Nanjing," N-A-N-J-I-N-G, "Road West,

23   Shanghai, 200040.  Telephone:  86 21 6122 3800.

24   Direct:  86 21 6122 3858.  Fax:  86 21 6122 3899."

25     Q     Did you discuss with Peng the contents or

1    any of the contents of this e-mail of July 11th, 2014?

2        A      No.  Mr. Peng had already refused to answer

3    any specific questions.

4        Q      Did you discuss the contents -- or any

5    contents of this e-mail with Chairman Jia?

6        A      No.

7        Q      Did you ever, in preparation for your

8    deposition as a corporate representative, ever find

9    out who was responsible for, quote, "final decisions,"

10   end quote, regarding "attorneys' withdrawal," end

11   quote?

12              MR. TAYLOR:  Objection to form.

13       A      Can you be more specific?  Which attorneys'

14   withdrawal?

15   BY MR. HERMAN:

16       Q      Was Hogan Lovells International present as

17   attorneys at your prior deposition?

18       A      Yes.

19       Q      Who were they representing at your prior

20   deposition?

21              MR. TAYLOR:  Objection to form.

22       A      When I was taking my deposition in 2012,

23   Hogan Lovells was the law firm hired by Taishan.

24   BY MR. HERMAN:

25       Q      Again, as the corporate representative of

Confidential - Subject to Further Confidentiality Review

1   Taishan, did you ever determine who was making the

2   final decisions to have Hogan Lovells International

3   law firm withdraw from representation of Taishan?

4        A     Yes.

5        Q     What did you find out about who was making

6   the final decisions?

7                    MR. TAYLOR:  Objection to form.

8        A     The board of directors of Taishan is to make

9   the decision.

10  BY MR. HERMAN:

11       Q     Who told you that?

12       A     Chairman Jia.

13       Q     And so whatever you know about who was to

14  make the final decision of Hogan Lovells

15  International LLP to withdraw, you learned from

16  Chairman Jia; is that correct?

17       A     Regarding the information on my deposition,

18  part of the information I have learned from Chairman

19  Jia, part of the information I've learned from

20  Chairman Zhang, Z-H-A-N-G.  I'm not sure what

21  information I have learned from whom.

22       Q     Well, who said to you the final decision for

23  Hogan Lovells to withdraw from representation of

24  Taishan in July of 2014 -- who told you who made the

25  final decision?

Confidential - Subject to Further Confidentiality Review

1              THE INTERPRETER:  The interpreter needs

2        to clarify with deponent.

3              (Translation.)

4    A    I don't have a clear recollection whether I

5    got the confirmation from Chairman Jia or Mr. Zhang,

6    Z-H-A-N-G, the secretary of the board of directors,

7    that it was the board of directors that had made the

8    decision to have Hogan Lovells withdraw from the case.

9    BY MR. HERMAN:

10   Q    Isn't it true that the secretary to Taishan

11   was also the secretary to BNBM at that time?

12              MR. MARROCCO:  Object to form.

13              MR. TAYLOR:  Objection to form.

14   A    No.

15   BY MR. HERMAN:

16   Q    Who was the secretary, if you know, to BNBM

17   at that time, on July 11th, 2014?

18              MR. TAYLOR:  Objection to form.

19              (Translation.)

20              MR. TAYLOR:  Sorry.  Objection to form.

21        Sorry.

22              THE INTERPRETER:  The interpreter needs

23        to clarify with deponent.

24              (Translation.)

25   A    First of all, I do not know who was the

1    secretary of BNBM at the time.

2                THE INTERPRETER:  And this is the

3           interpreter speaking.  The interpreter

4           interpreted "secretary of board of directors" in

5           a slightly different way of what Mr. Che's,

6           C-H-E's, understanding.  After clarifying with

7           Mr. Che, the interpreter would like to reconfirm

8           the accurate interpretation of the word

9           "secretary" with Mr. Che.

10               (Translation.)

11               THE INTERPRETER:  The interpreter would

12          like to continue her interpretation.

13               (Translation.)

14               THE INTERPRETER:  That was the end of

15          the interpretation.

16   BY MR. HERMAN:

17      Q     Who were the supervisors of Taishan's board

18   of directors on July 11th, 2014?

19      A     I don't have a clear recollection on that.

20   The commercial registration form of Taishan clearly

21   reflected that information.  If you can provide me

22   with such document, I can check for you.

23      Q     How many, if you know, executives of BNBM

24   were also executives of Taishan on July 11th, 2014?

25               MR. MARROCCO:  Object to form.

Confidential - Subject to Further Confidentiality Review

1           MR. TAYLOR:  Objection to form.

2      A    None.

3  BY MR. HERMAN:

4      Q    How many members of the board of directors

5  of CNBM were also executives of Taishan on July 11th,

6  2014?

7           MR. TAYLOR:  Objection to form.

8           MR. HERMAN:  What was the answer?

9      A    None.

10  BY MR. HERMAN:

11     Q    How many executives of CNBM Group were also

12  executives of Taishan on July 11, 2014?

13          MR. TAYLOR:  Objection to form.

14     A    None.

15  BY MR. HERMAN:

16     Q    Can you explain why CNBM Group executives

17  had to determine any of the issues that Taishan was

18  faced with in July 2014?

19          MR. HAIRSTON:  Objection.

20     A    I don't know where your question come from.

21  Why did you say that?

22  BY MR. HERMAN:

23     Q    Can you explain --

24     A    I'm not done yet.

25     Q    Can you explain, if you know --

Confidential - Subject to Further Confidentiality Review

1           MR. TAYLOR:  The witness isn't finished

2       with his answer, Counsel.  Maybe you didn't hear

3       him.

4           MR. HERMAN:  I thought he asked me a

5       question --

6           MR. TAYLOR:  No.

7           MR. HERMAN:  -- which isn't permissible,

8       but I went on.

9           But go ahead.

10          MR. TAYLOR:  Understood.

11   A    The operation of Taishan Company strictly

12   follows the company law as well as the company bylaw.

13   All the decisions were made by the board of directors;

14   therefore, I do not understand why you said what you

15   said.

16   BY MR. HERMAN:

17   Q    Was it part of your preparation that you

18   did, yourself, as the company representative of

19   Taishan in these depositions, to memorize that answer?

20   A    There is nothing to do with whether I

21   memorized it or not.  I'm only stating a fact, because

22   I am the company's witness; therefore, I have to

23   confirm some relevant issues.

24          The reason I come here is for the

25   purpose of having people to have a better

Confidential - Subject to Further Confidentiality Review

1    understanding of Taishan.  Therefore, I try my very

2    best to memorize various of information to answer

3    questions.  Otherwise, how are you able to understand

4    Taishan?

5        Q    Will you try your best to explain why BNBM

6    had to be consulted in connection with Taishan's

7    litigation and activities in July 2014?

8                MR. MARROCCO:  Object to form.

9                THE WITNESS:  Please ask your question

10       again.

11               MR. HERMAN:  I'll move on.

12               I'd like to introduce right now into the

13       record Hogan Lovells 162 and 162A.

14               MR. TAYLOR:  We object to the admission

15       of 162A.  It's not an accurate translation of

16       the English version as set on 162.  Also, we

17       object to the extent the 162 and 162 --

18               I'm sorry, let me be sure I'm right

19       about this.  Counsel, are you admitting 162

20       also?

21               MR. HERMAN:  Yes.

22               MR. TAYLOR:  Okay.

23               -- 162 and 162A, to the extent they're

24       being offered for the truth of the matters

25       asserted or recorded thereon, the propounder,

 1          Counsel, has not made the necessary showing to

 2          have the documents admitted for that purpose.

 3                    MR. MARROCCO:  Join the objection.

 4                    MR. HAIRSTON:  Join as well.

 5                    MR. TAYLOR:  And, I'm sorry, one other

 6          thing.  I guess -- I assume the court reporter

 7          recalls this, but these are also documents that

 8          are marked highly confidential and should have

 9          the highly confidential designation and be

10          sealed with this record.

11   BY MR. HERMAN:

12      Q    To the best of your knowledge as the

13   corporate representative of the Taishan, in the year

14   2014, was Hogan Lovells the law firm representing

15   Taishan in connection with this litigation?

16      A    As far as I know, I believe Hogan Lovells

17   was hired in part of 2014 by Taishan Company.

18      Q    Weren't they also Taishan's attorneys at the

19   deposition in 2012?

20                    MR. TAYLOR:  Objection to form.

21      A    In 2012, Hogan Lovells was the attorney

22   hired by Taishan.

23                    (T:6/2/15-6/4/15

24                    Exhibit 1-HL_00000261 marked.)

25                    (T:6/2/15-6/4/15

Confidential - Subject to Further Confidentiality Review

```
 1                    Exhibit 1A-HL_00000261A marked.)

 2                    MR. HERMAN:  Okay.  I am going to show

 3           first the translator Hogan Lovells page 261 of

 4           the deprivileged document in English and a

 5           Chinese -- and a Chinese translation marked as

 6           Hogan Lovells 261A.

 7                    This exhibit also contains

 8           Exhibit 6/2/15-6/4/15 Exhibit 1 and can be found

 9           there, and also -- and that's in English, and

10           Hogan Lovells 261A can also be found in

11           Exhibit 6/2/15-6/4/15 Exhibit 1A.  For the

12           witness, for counsel for the witness.

13   BY MR. HERMAN:

14      Q    I refer the witness to Hogan Lovells 261A,

15   dated August 12th, 2014, at 10:25 a.m., and I ask him,

16   the witness, to read the translation, HL_261A.

17      A    May I start with the subject?

18      Q    Whatever the first subject is on the

19   translation, the Chinese, 261A.

20      A    This one?

21      Q    Yes.

22                    (Translation.)

23                    MR. HERMAN:  Would the translator please

24           read for the record the witness' recitation?

25                    THE INTERPRETER:  Yes.
```

1      A      "Subject:  Regarding MDL Status

2   Conference/Judgment Debtor Exam.  All recipients:  We

3   have communicated with Peng today regarding affiliate

4   company" --

5                  THE INTERPRETER:  This is interpreter

6           speaking.  The Chinese translation -- the

7           English translation for the Chinese word, I

8           spell it here, F-U-S-H-U, can be translated as

9           "affiliate," "affiliates" or "subsidiary."  So

10          I -- the interpreter will use "affiliates" or

11          "subsidiary" to be the translated version of the

12          Chinese characters fushu, gongsi, F-U-S-H-U,

13          G-O-N-G-S-I.  The interpreter would like to

14          start all over again.

15     A      "To all recipients:  We communicated with

16  Peng on the issue of affiliates company or subsidiary

17  company to ensure that we have provided a proper

18  response.  Please be advised on the Germano order

19  issued on July the 17th, 2014, (Registered Document

20  17869), page 3 mentioned the scope of affiliates or

21  subsidiary company and daughter companies scope,"

22  question mark?

23                  "The specific order is:  It is further

24  ordered that Taishan and any Taishan's affiliates

25  company or subsidiary company or daughter company is

Confidential - Subject to Further Confidentiality Review

1    hereby enjoined from conducting any business in the

2    United States until or unless it participates in a

3    judicial process.

4                    "If Taishan violates this injunction,

5    it must pay a further penalty of 25% of the profits

6    earned by the company or its affiliates or

7    subsidiaries who violate the order for the year of the

8    violation.

9                    "Peng believed the subsidiary company

10   or affiliate company and the daughter companies in

11   this sentence may only be referred to as TG, comma,

12   TTP, comma, BNBM, comma, BNBM Group, comma, CNBM and

13   CNBM Group, period.  This may also be referred to as

14   TG and TTP's daughter companies.  However, he felt

15   that if this terminology includes all entities related

16   to Taishan, especially if it includes public

17   investors, that would be against common sense,

18   period."

19       Q    Would you ask the witness to please read the

20   caption of the document in Chinese, and the translator

21   to translate.

22                    THE INTERPRETER:  This is the

23          interpreter speaking.  Can counsel specify where

24          the caption is?

25                    MR. HERMAN:  (Indicating.)

Confidential - Subject to Further Confidentiality Review

```
1                    THE WITNESS:  Should I only read

2          Chinese?

3                    MR. HERMAN:  Yes.

4       A      "Sender, sent to, time of sending, Tuesday,

5    10:29 a.m. Eastern time, August the 12th, 2014,

6    recipient, copy."

7                    MR. HERMAN:  I will ask the translator

8          to translate to the witness the "From" line, the

9          "To" line, the "Copy" line and the "Subject"

10         line of this document, which is

11         Hogan Lovells 261.

12                   THE INTERPRETER:  This is the

13         interpreter speaking.  The deponent had omitted

14         all English words that are presented in the

15         Chinese translation of the document.

16                   MR. HERMAN:  Would you ask him to

17         please, in Chinese, state what's written in

18         Chinese so that the translator may translate for

19         the record.

20                   THE WITNESS:  What I have read are all

21         in Chinese.

22                   MR. HERMAN:  All right.  We'll offer and

23         introduce Hogan Lovells 261 and 261A, and it's

24         also a part of the global exhibit, Exhibit 1 in

25         this case.
```

Confidential - Subject to Further Confidentiality Review

```
 1              MR. TAYLOR:  Okay.  To the extent that
 2      261 and 261A are being offered for the truth of
 3      the matters asserted or recorded therein, we
 4      object to the admissibility of the documents
 5      because the propounder has failed to make the
 6      necessary showing to cause the documents to be
 7      admissible in this record.
 8              MR. MARROCCO:  Join the objection.
 9              MR. HAIRSTON:  Join.
10              MR. TAYLOR:  And, also, the documents
11      are -- both 261 and 261A are highly
12      confidential, and, therefore, the highly
13      confidential designations and processes would
14      need to be applied to these documents and the
15      documents would need to be sealed in this
16      record.
17              MR. HERMAN:  Counsel opposite, for all
18      day yesterday and for several hours today, you
19      refer to highly confidential documents that are
20      already marked for the court reporter as highly
21      confidential, and if you want to choose, through
22      the remainder of this deposition, whenever
23      they're offered, to make that statement, it's
24      fine.
25              I recognize that the Chinese
```

Confidential - Subject to Further Confidentiality Review

```
1          interpretation does not have highly

2          confidential, but I will stipulate with you, if

3          you wish, that any Hogan Lovells document or

4          Chinese interpretations are highly confidential

5          and should be sealed.

6                    MR. TAYLOR:  I appreciate that

7          professional courtesy, and that will keep me

8          from having to make that objection.  Thank you.

9    BY MR. HERMAN:

10     Q     Let me further direct the witness to 261A

11   with the sentence beginning with "Mr. Peng."

12                    Did you discuss with Mr. Peng, in your

13   conversations in preparing yourself as a corporate

14   representative, about affiliates, subsidiaries, BNBM,

15   BNBM Group, CNBM and CNBM Group?

16                    MR. MARROCCO:  Object to form.

17     A     No, because Mr. Peng had left his

18   employment, and he refused to answer any specific

19   questions.

20   BY MR. HERMAN:

21     Q     Did you discuss the information -- or any

22   information in this document, 161A -- I'm sorry,

23   261 -- Hogan Lovells 261A, with any employee of BNBM?

24                    MR. TAYLOR:  Objection to form.

25                    THE WITNESS:  Please repeat your
```

1        question.

2   BY MR. HERMAN:

3        Q     Did you discuss any information in this

4   document with any employee of BNBM?

5        A     No.

6        Q     Did you discuss any of the information in

7   this document with any employee of BNBM Group?

8        A     No.

9        Q     Did you discuss any of the information in

10  this document with any employee of CNBM?

11       A     No.

12       Q     Did you discuss any of the information in

13  this document with any employee of CNBM Group?

14       A     No.

15       Q     Did you discuss any of the information in

16  this document with Chairman Jia?

17       A     I have reported to Chairman Jia and

18  Secretary Zhang on Hogan Lovells-related documents.

19  In regard to Hogan Lovells-related documents, neither

20  Chairman Jia nor Secretary Zhang had a clear

21  understanding.

22            MR. TAYLOR:  Counsel, we've been going

23       for over an hour.  Is it --

24            MR. HERMAN:  We took an early break, and

25       I'm going to do one more thing, and I'll

```
 1          introduce documents into the record, and if

 2          you'd like, we'll take a 15-minute break.

 3                    MR. TAYLOR:  Okay.  Thank you, sir.

 4                    (T:6/2/15-6/4/15 Exhibit 1 marked.)

 5                    MR. HERMAN:  At this time, I'm going to

 6          offer Hogan Lovells deprivileged documents 1

 7          through 493 as Exhibit 1.

 8                    THE WITNESS:  How many more minutes do

 9          you need, Mister --

10                    MR. HERMAN:  6 --

11                    MR. TAYLOR:  I think the witness is just

12          asking to take a break, and that's -- that's

13          what he's asking, how much longer will it be

14          before he can take a break?

15                    THE WITNESS:  I need to use the

16          restroom.

17                    MR. HERMAN:  I appreciate it if you do

18          not interrupt me.  This will not take long.

19                    I'm going to offer into the record

20          Hogan Lovells deprivileged documents HL

21          Bates-numbered 00000001 to 00000493.  The global

22          document is Exhibit 1.  The individual pages of

23          the global document have Hogan Lovells Bates

24          numbers.  It's marked T:6/2/15-6/4/15.

25                    I indicate for the record that the
```

Confidential - Subject to Further Confidentiality Review

```
 1          foundation has already been testified to and

 2          identified by this witness a number of times,

 3          and particularly in connection with his last

 4          statement.

 5               I have previously provided the full set

 6          to learned counsel opposite.

 7               MR. TAYLOR:  Accepting counsel's

 8          professional courtesy that I don't have to

 9          repeat the confidentiality issues regarding

10          these documents, I'll just go to the fact that

11          the documents are not admissible for the truth

12          of the matters asserted or recorded therein.

13          Counsel has not made the necessary showing for

14          that admissibility, and, therefore, the

15          documents should not be admitted into this

16          record for that purpose.

17               MR. MARROCCO:  Join the objection.

18               MR. HERMAN:  I do have one statement and

19          I'll make it now, but I won't continue to make

20          it.

21               The documents, according to the Federal

22          Rule of Evidence, are not only admissible as

23          exceptions to the hearsay rule but also as

24          admissions against interest.

25               MR. TAYLOR:  Our objection stands.
```

```
 1              MR. HERMAN:  Okay.  We're in a 15-minute

 2         recess until 11:30.

 3              THE VIDEOGRAPHER:  This is the end of

 4         Tape 7.  We're now off the record at 11:15.

 5              (Recess taken, 11:15 a.m. to 11:31 a.m.)

 6              THE VIDEOGRAPHER:  This is the beginning

 7         of Tape 8.  We're now back on the record.  The

 8         time is 11:31.

 9              MR. HERMAN:  I'm going to address the

10         witness with a series of documents which are

11         public documents in English and Chinese,

12         downloaded from the CNBM public website

13         www.hkex.com.hk.  They're the annual reports

14         published by CNBM in Chinese and English for the

15         years 2005 through 2014, and I'm going to pause

16         and let counsel opposite take a look at the

17         documents.

18              MR. TAYLOR:  Thank you, Counsel.  I've

19         looked at it.

20              MR. HERMAN:  We want to first

21         identify...

22              (T:6/2/15-6/4/15 Exhibit 38 marked.)

23    BY MR. HERMAN:

24         Q    This is Exhibit T:6/2/15-6/4/15 Exhibit 38.

25    I'd like you to look, sir, at the annual report
```

Confidential - Subject to Further Confidentiality Review

1    published by CNBM in Chinese for the year 2005.  Do

2    you see on that chart --

3                    MR. TAYLOR:  Excuse me, Counsel.  One

4           objection.  This is CNBM4252, and it looks -- I

5           can't read the Chinese page.  It looks like it's

6           438 something.  Is that --

7                    MR. HERMAN:  04381.

8                    MR. TAYLOR:  04381.  Okay.

9                    The only objection I have is, counsel

10          indicated that 4252 and 04381 was the annual

11          report for CNBM for 2005, and I think counsel

12          just misspoke.  This is a portion of the annual

13          report, not --

14                   MR. HERMAN:  It is marked, is it not, at

15          the bottom of the page "Annual Report 2005"?

16                   MR. TAYLOR:  Is counsel representing

17          that this is the entire annual report?

18                   MR. HERMAN:  I am representing that it's

19          the shareholding structure of CNBM in 2005.

20                   MR. TAYLOR:  Okay.

21    BY MR. HERMAN:

22       Q    Would you look at the 2005 shareholding

23    structure of CNBM, and if you see the word T-A-I-H-E,

24    would you please mark it in yellow.

25                   MR. TAYLOR:  Counsel, are you asking him

Confidential - Subject to Further Confidentiality Review

1          to look at the English version or the Chinese

2          version?

3                    MR. HERMAN:  The translator is

4          translating.

5                    MR. TAYLOR:  I didn't mean to interrupt

6          her.  I apologize.

7                    THE WITNESS:  What do I look at?

8     BY MR. HERMAN:

9          Q    Look at the shareholding structure of CNBM

10    annual report 2005, the Chinese version, and mark in

11    yellow, if you see it, T-A-I-H-E.

12                   MR. TAYLOR:  Counsel, I'm just looking,

13         and I'm certain you can see it also -- I want to

14         be sure he's looking at the right pages.  He's

15         looking at all the pages.

16                   MR. HERMAN:  I understand.  I'm trying

17         to expedite it as I understand it, but we'll

18         see.

19                   MR. TAYLOR:  Okay.

20         A    I do not see any English letter in it.

21    BY MR. HERMAN:

22         Q    Do you see the word in Chinese?

23         A    Oh.

24                   MR. TAYLOR:  Objection to form.

25         A    Just now you asked me to find T-H something.

```
 1   BY MR. HERMAN:

 2       Q    No, I'm asking the translator to have you

 3   mark in yellow the Chinese word for T-A-I-H-E, if you

 4   see it.

 5       A    Should I mark it?

 6            MR. TAYLOR:  Yes.

 7            THE WITNESS:  You really scared me

 8       yesterday when I wrote something on it.  I'm

 9       scared of using a pen now.

10            MR. HERMAN:  Well, just circle it in

11       yellow, and I'll appreciate it.

12            THE WITNESS:  Mr. Judge, he's requesting

13       me to make a mark on it.

14            MR. HERMAN:  If you would, just ask him

15       to circle it in yellow.

16            THE WITNESS:  I'd like to confirm:  Is

17       it Taihe, two characters you were asking?

18   BY MR. HERMAN:

19       Q    I have no idea what that means.  I'm asking

20   that he mark in yellow the Chinese word for T-A-I-H-E,

21   if he sees it.

22            THE INTERPRETER:  This is the

23       interpreter speaking.  T-A-I-H-E can be

24       translated in different Chinese characters

25       because there are four tones in each Chinese
```

1          character.  In each tone, there are hundreds of

2          Chinese characters.

3                   But I -- the interpreter interpreted as

4          Taihe, the Chinese character which is exactly

5          the spelling of T-A-I-H-E in the Chinese

6          version, which is located here.  The interpreter

7          would like to confirm that's the Taihe you're

8          referring to.

9                   Upon clarification, the interpreter just

10         wrote down the Chinese character, Taihe, on a

11         piece of paper and showed it to the deponent.

12         The deponent just asked please confirm with him

13         whether these are the two characters.

14                  THE WITNESS:  Okay.  I will just mark as

15         what the interpreter had just indicated.

16    BY MR. HERMAN:

17         Q    I now ask you to look at the annual report,

18    shareholding structure of the group CNBM annual report

19    of the China National Building Material Company,

20    Limited, and look at, if you would, ALRMH-CNBM

21    page 655.

22                  And if you see in Chinese the same

23    word, which I spell as T-A-I-H-E, on that chart, would

24    you please circle it?

25         A    Are you referring to this page?

Confidential - Subject to Further Confidentiality Review

```
1        Q     Yes.  Yes, I am.

2        A     I've already circled.

3        Q     You've already circled it?  Okay.  Thank

4   you.

5              Now, I'd like you to turn --

6        A     You're welcome.

7        Q     Thank you.

8              I'd like you to turn to the 2007

9   shareholding structure publicly published by CNBM in

10  Chinese, at page 961.  That's ALRMH-CNBM page 961.

11  And would you circle the words "Shandong Taihe"?

12       A     Which page is it?  Can you confirm?

13       Q     It's marked in the annual report page 10,

14  and in the Bates number, 793.

15             MR. TAYLOR:  I think 961 is the Chinese

16        version.

17             MR. HERMAN:  The Chinese version is 961.

18  BY MR. HERMAN:

19       Q     Would you mark in the Chinese version the

20  words "Shandong Taihe"?

21       A     Is it Shandong Taihe?

22       Q     Yes.

23       A     The two characters, Taihe, are the same two

24  characters you just mentioned?

25       Q     Yes.
```

Confidential - Subject to Further Confidentiality Review

1      A      (Witness complies.)

2      Q      Thank you.

3             Would you now turn to the annual

4   report of CNBM at page 11 for 2008, the shareholding

5   structure, Bates number 1130, that is ALRMH-CNBM1130,

6   and the Chinese is marked ALRMH-CNBM1328, all as

7   published as a public document by CNBM.  And I'll ask

8   you to mark the words "Taishan Gypsum" on that

9   document.

10     A      Can you provide me with a Chinese character?

11            THE INTERPRETER:  The interpreter just

12        provided a Chinese pronunciation of "Taishan

13        Gypsum" to the deponent.

14     A      Are these the four characters you're

15  referring to?

16  BY MR. HERMAN:

17     Q      Yes.

18     A      (Witness complies.)

19     Q      If you'll now turn to the publicly published

20  document of CNBM, shareholding structure of the group

21  for the year 2009.  The English version is

22  ALRMH-CNBM1528.  The Chinese version is ALRMH at 1734.

23            And, again, would you circle the words

24  "Taishan Gypsum," if you see them.

25     A      The same four characters as you referred to

Confidential - Subject to Further Confidentiality Review

1    in the prior document?

2        Q     Yes.

3        A     (Witness complies.)

4        Q     Thank you.

5              MR. HERMAN:  What was the last document?

6        Was it 2009 or 2010?

7              MS. DUGGAN:  You just did 2009.

8    BY MR. HERMAN:

9        Q     I'd like you to turn to CNBM's public

10   publishing of the shareholding structure for the year

11   2010, in English, ALRMH-CNBM1940, and in Chinese,

12   ALRMH-CNBM2154.

13             And I'd like you to please circle

14   "Taishan Gypsum," if you see it.

15       A     I did not hear it clearly just now.  Is it

16   2154?

17       Q     Yes, it is.  Thank you.

18       A     You're welcome.

19             I just want to confirm.  Should I

20   circle the same four characters --

21       Q     Yes.

22       A     -- as appeared in the previous document?

23       Q     Yes.

24       A     (Witness complies.)

25       Q     Thank you.

1      A      You're welcome.

2      Q      As published by CNBM, the shareholding

3   structure in English, ALRMH-CNBM2367, I direct you to

4   the Chinese, ALRMH-CNBM2585.

5                Please circle, if you see it, "Taishan

6   Gypsum."

7      A      The same four characters as previous?

8      Q      Yes.

9      A      (Witness complies.)

10      Q      Thank you.

11      A      You're welcome.

12      Q      Now I'll show you the published document of

13   CNBM, in both English and Chinese, of the shareholding

14   structure for the year 2013.  The English version is

15   ALRMH-CNBM3240, and the Chinese version is

16   ALRMH-CNBM3458.

17                And ask you to circle the same words,

18   "Taishan Gypsum," on that document.

19      A      Some parts of this document are very

20   unclear.

21      Q      Is the witness able to see, in Chinese, the

22   words "Taishan Gypsum"?

23      A      I see one.

24      Q      Will you please circle it?

25                THE INTERPRETER:  The interpreter needs

1          to clarify with deponent.

2                (Translation.)

3     A     But there are a lot of characters that are

4     not very clear, and I'm not sure whether they contain

5     the same characters or not.  I only circled what I

6     could see.

7     BY MR. HERMAN:

8     Q     Do you see BNBM Company listed?

9     A     Are you talking about the same document?

10    Q     Yes, I am.

11    A     I do not see the word "BNBM Company."

12    Q     Do you see the word "BNBM Lightweight

13    Building Materials"?

14    A     Yes.

15    Q     Circle it, please.

16    A     I'd like to confirm with you.  Are we still

17    on 3458?

18                MR. HERMAN:  345 what?

19                THE INTERPRETER:  3458.

20    BY MR. HERMAN:

21    Q     Yes.

22    A     "BNBM Lightweight Building Materials"; is

23    that correct?

24    Q     Yes.

25    A     Can you confirm with him whether he's

Confidential - Subject to Further Confidentiality Review

```
 1   referring to the four Chinese characters?

 2        Q     Yes.

 3        A     Thank you.

 4        Q     I direct your attention to the shareholding

 5   structure of CNBM as published for the year 2014 in

 6   English, ALRMH-CNBM3676, and in Chinese,

 7   ALRMH-CNBM3898, and ask you, if you see it, to circle

 8   "Taishan Gypsum."

 9        A     The same characters, correct?

10        Q     Correct.

11        A     (Witness complies.)

12        Q     And circle "BNBM Lightweight Building

13   Material."

14        A     Also the same characters?

15        Q     Yes.

16        A     (Witness complies.)

17        Q     Thank you very much.

18              MR. HERMAN:  In connection with the --

19        A     You're welcome.

20              MR. HERMAN:  -- testimony of the witness

21        and his circling of documents, I'm going to

22        offer Exhibit 38 -- excuse me.

23              I understand I skipped 2012, so we're

24        going to go back to 2012.

25   BY MR. HERMAN:
```

Confidential - Subject to Further Confidentiality Review

```
1      Q    And 2012 -- for the year 2012, the
2  shareholding structure in English and Chinese, as
3  publicly published by CNBM.  The English is
4  ALRMH-CNBM2804, and the Chinese is ALRMH-CNBM3022.
5              And I'll ask you to please circle, if
6  you see it, on document ALRMH-CNBM3022, the words
7  "Taihe Gypsum."
8      A    Is it 3022?  I'd like to confirm.
9      Q    Yes, it is.
10     A    There are no characters representing Taihe
11 Gypsum.
12     Q    Would you circle "Taishan Gypsum," if you
13 see it?
14     A    The same four characters, Taishan Gypsum?
15     Q    Yes.
16     A    Thank you.
17     Q    Would you also circle "BNBM Lightweight
18 Building Materials," if you see it?
19     A    The same four characters as previous
20 document?
21     Q    Yes.
22     A    Thank you.
23              I'd like to confirm whether if you
24 asked me to circle on page 4381.  You did not mention
25 whether I need to circle on this page or not.
```

Confidential - Subject to Further Confidentiality Review

```
1        Q     That is correct.  I did not ask you.

2        A     Oh.  Well, I have also circled Taihe on this

3   page.  When you first asked me to circle --

4        Q     Very good.

5        A     -- I had taken the wrong page.  But should I

6   cross it right now?

7        Q     Just circle or correct -- circle it where it

8   appears correctly.

9              THE INTERPRETER:  This is the

10        interpreter speaking.  Would you like the

11        deponent to circle it, not -- or he just crossed

12        it, because he thought it was wrong.

13             MR. HERMAN:  Well, since he circled it,

14        I would like him to circle it.

15             THE INTERPRETER:  But he already crossed

16        it.

17             MR. HERMAN:  That's all right.  Let him

18        draw a circle or put an arrow to it.

19             MR. TAYLOR:  I can give the witness a

20        clean copy and he can do that.

21   BY MR. HERMAN:

22        Q     Yes, would you circle that copy, please.

23        A     "Taihe"?

24        Q     Yes.

25        A     So you're asking me to circle the two
```

1    characters, Taihe, on page 4381?

2        Q     Yes, sir.

3        A     The same two characters, Taihe, in the very

4    beginning, right?

5        Q     Correct.

6        A     Thank you.

7                 MR. HERMAN:  In connection with the

8            testimony of the witness, I offer Exhibit 38

9            T:6/2/15-6/4/15.

10                (T:6/2/15-6/4/15 Exhibit 39 marked.)

11                MR. HERMAN:  And I offer Exhibit 39, the

12           documents that the witness has circled, and I'll

13           read those pages.  It's T:6/2/15-6/4/15

14           Exhibit 39, and these are the CNBM published

15           documents that the witness has circled in

16           accordance with his testimony, 2005 through

17           2014, the shareholding structure of CNBM as

18           publicly published by CNBM.

19                THE WITNESS:  Wait a minute.  May I have

20           my attorney to confirm that document?  Is it

21           necessary?

22                MR. TAYLOR:  It's fine.

23                THE WITNESS:  Okay.  Thank you.

24                MR. HERMAN:  Okay.  We'll break for

25           lunch.  Thank you very much.

Confidential - Subject to Further Confidentiality Review

1          MR. TAYLOR:  Thank you.

2          THE VIDEOGRAPHER:  This is the end of

3     Tape 8.  We're now off the record at 12:05.

4          (Recess taken, 12:05 p.m. to 1:21 p.m.)

5          THE VIDEOGRAPHER:  This is the beginning

6     of Tape 9.  We're back on the record.  The time

7     is 1:21.

8          (T:6/2/15-6/4/15 Exhibit 24 marked.)

9          (T:6/2/15-6/4/15 Exhibit 24A marked.)

10          MR. HERMAN:  Before the break, counsel

11     for BNBM, BNBMG, Harry Rosenberg, requested

12     that, in questioning, that he be provided a copy

13     of the document as I begin the questioning.

14     It's quite proper for him to make that request.

15     I've provided him with the exhibits, Exhibit 1

16     and Exhibit 38, that had been introduced this

17     morning.

18          We've presented him with the next

19     document, which is T:6/2/15-6/4/15 Exhibit 24,

20     ALRMH-CNBM5105, 5106, 5107, and in Chinese,

21     ALRMH-CNBM00005105A, Exhibit 24A, and the second

22     page, ALRMH-CNBM00005106A.  I hand a set to the

23     translator, I hand a set to the witness, and I

24     ask the witness to hand a copy to Mr. Taylor.

25          MR. TAYLOR:  Thank you.

1   BY MR. HERMAN:

2       Q     This is a document published by BNBM.  It is

3   a 2010 announcement made public by BNBM, and I ask the

4   witness, as the official representative of Taishan

5   Gypsum, to please look at and read Exhibit 24A.

6                 (Document review.)

7                 THE INTERPRETER:  Counsel?  Mr. Russ?

8         May I make marks on this English version?  May I

9         mark on the --

10                MR. HERMAN:  Yes.

11                THE INTERPRETER:  I can?

12                MR. HERMAN:  Yes.

13                THE INTERPRETER:  Okay.  The reason for

14        that is because you're going to ask him to read?

15                MR. HERMAN:  No.

16                THE INTERPRETER:  No?

17                MR. HERMAN:  No.

18                THE INTERPRETER:  Okay.

19                (Document review.)

20  BY MR. HERMAN:

21      Q     Is the last page of 24A dated May 28, 2010?

22      A     Yes.

23      Q     In preparing yourself as a corporate

24  representative of Taishan, have you seen this document

25  before?

1       A     I don't have a clear recollection.  I have

2   read too many documents.

3                   (T:6/2/15-6/4/15 Exhibit 25 marked.)

4                   (T:6/2/15-6/4/15 Exhibit 25A marked.)

5                   MR. HERMAN:  I'm going to show you now

6           and identify for the record a CNBM document

7           which has been published by CNBM publicly, dated

8           T:6/2/15-6/4/15 Exhibit 25, ALRMH-CNBM5121,

9           5122, 5123 through 5127 in English, dated

10          May 28th, 2010, and in Chinese, Exhibit 25A, and

11          it will be exhibit Bates numbers

12          ALRMH-CNBM120 -- 5121A, 5121A, through 5125A.

13                  I have distributed a copy to attorney --

14          Mr. Rosenberg, who is the attorney for BNBM and

15          BNBMG, and I now hand the court reporter

16          Exhibit 25 and 25A.  I have a set for the

17          witness, and I have a set -- I have a set for

18          learned counsel for Taishan.

19                  MR. TAYLOR:  Counsel, I think -- I'm

20          looking -- sorry.

21                  THE INTERPRETER:  Sorry.

22                  (Translation.)

23                  MR. TAYLOR:  Thank you.  I'm sorry.

24                  I'm looking at Exhibit 25, and the page

25          references you gave, I assume, would -- the

```
 1              Bates numbers for the page references you gave,

 2              I assume, would include CNBM5125, and that's not

 3              in the -- at least the English-language version

 4              that I have, although in all honesty, it looks

 5              like it's -- it looks like the pages are

 6              accurate.  It looks like it goes from 4 to 5,

 7              but it just looks like that Bates number was

 8              missed.

 9                   MR. HERMAN:  Well, Counsel, you're

10              absolutely correct.

11                   MR. TAYLOR:  Yeah.

12                   MR. HERMAN:  They are out of sequence,

13              but they're all -- but I don't see, myself, a

14              5125, so I'm going to abandon any questioning at

15              this time.

16                   MR. TAYLOR:  Wait a minute.  It looks

17              like the document is complete, but it just looks

18              like the Bates numbers may be --

19                   MR. HERMAN:  The Bates number is wrong?

20                   MR. TAYLOR:  Yeah.

21                   MR. HERMAN:  Well, then, I'll go ahead,

22              with your permission, and ask the questions.

23                   MR. TAYLOR:  Sure.  Sure.

24     BY MR. HERMAN:

25          Q    With respect to Exhibit 25A, have you seen
```

Confidential - Subject to Further Confidentiality Review

1    that document before or read that document before?

2                    MR. HERMAN:  While the witness is

3           reading, I want to indicate that if -- I haven't

4           had a request, but if counsel for CNBM and CNBMG

5           would like copies of documents as they're handed

6           to the witness and Taishan's counsel, I have

7           copies available.

8                    MR. HAIRSTON:  Counsel, I would

9           appreciate that.  Thank you.

10                   MR. HERMAN:  I'm going to have you, if

11          you would, Matt, hand the gentleman who

12          represents CNBM and CNBMA --

13                   And I don't mean to be rude.  What is

14          your first name?

15                   MR. HAIRSTON:  Eric.

16                   MR. HERMAN:  Eric.

17                   -- Exhibits 24, 24A, 25 and 25A.

18                   And, Counsel for Taishan, I appreciate

19          your courtesy.

20                   MR. TAYLOR:  No problem, sir.

21                   (Document review.)

22                   THE WITNESS:  Do you have a question for

23          these documents that I have?

24                   MR. HERMAN:  Yes, I do.

25    BY MR. HERMAN:

1      Q      Would you turn to --

2             THE INTERPRETER:  He got two Chinese

3       versions.

4             MR. HERMAN:  Does he need an English

5       version?  Is that what the gentleman is saying?

6       I'll hand him an English version.

7             THE WITNESS:  While I'm reading this

8       document, I recall the document I just saw.  Are

9       they the same document?

10             MR. HERMAN:  No, they're not.

11  BY MR. HERMAN:

12      Q      In order to assist the witness in his

13  question, if you will turn to the last page of

14  T:6/2/15-6/4/15 Exhibit 25A, the second-to-last page,

15  you'll see a date.  Can you read that date?

16      A      May 28th, 2010.

17      Q      Now, have you seen this document before?

18      A      While I was preparing to be the company's

19  witness, under the advice and instruction of my

20  attorney, I have reviewed a lot of documents related

21  to Taishan Company or with the words "Taishan" appear

22  on them.  But specifically whether I have seen this

23  document or not, I do not have a recollection.

24      Q      Would you read, in Chinese, Exhibit 25A,

25  page 5121A, in the box?

1      A      Here?

2      Q      Yes, please.

3      A      "This announcement is released by Beijing

4   New Building Material Company, Limited," parentheses

5   start --

6              THE INTERPRETER:  The interpreter would

7         like to start all over again.

8      A      "This announcement is released by Beijing

9   New Building Material Company, Limited, a subsidiary

10  of China National Building Material Company, Limited

11  (CNBM), whose A shares are listed on the Shenzhen

12  Stock Exchange."

13  BY MR. HERMAN:

14     Q      Would you turn to the next page, 5122A?

15  Would you read the boxed in Chinese, please, the boxed

16  material.

17     A      (Indicating.)

18     Q      Yes.

19     A      "The company and all members of the board of

20  directors hereby warrant the truthfulness, accuracy

21  and completeness of the contents of this announcement,

22  and that there are no false representations,

23  misleading statements or material omissions contained

24  herein."

25     Q      Okay.  I'd like you to turn back to

1   Exhibit 24, 24A, on the first page.  Would you read,

2   in Chinese, the boxed material on document 5105A,

3   Exhibit 24A.

4       A     Here?

5       Q     Yes, please.

6       A     "The company and all members of the board of

7   directors hereby warrant the truthfulness, accuracy

8   and completeness of the contents of this announcement,

9   and that there are no false representations,

10  misleading statements or material omissions contained

11  herein."

12      Q     Thank you.

13      A     You're welcome.

14            (T:6/2/15-6/4/15 Exhibit 26 marked.)

15            (T:6/2/15-6/4/15 Exhibit 26A marked.)

16            MR. HERMAN:  I am now going to -- I've

17       handed counsel for CNBM and CNBM Group and BNBM

18       Group Exhibit T:6/2/15-6/4/15 Exhibit 26 in

19       English, ALRMH-CNBM108, 109, 110 and 111,

20       July 18th, 2014.

21            And I'm going to hand the translator and

22       the witness and his counsel that exhibit and

23       Exhibit 26A, ALRMH-CNBM108A, 109A -- strike

24       that.  I mislabeled it.  I apologize --

25       ALRMH-CNBM Exhibit 5108A, 5109A, 5110A and

1        5111A.

2   BY MR. HERMAN:

3        Q      And my first question is:  If you'll look at

4   the last page, 5111A, would you read the date.

5        A      July the 18th, 2014.

6        Q      Have you read this document before?

7               (Document review.)

8        A      While I was preparing to be the witness for

9   the company, under the instruction and advice of the

10  attorney, I've read a great amount of documents

11  related to Taishan.  But specifically whether I have

12  read this document or not, I do not have a

13  recollection on it.

14  BY MR. HERMAN:

15       Q      On the first page of Exhibit 26A, would you

16  read, in Chinese, the highlighted information that

17  begins with the words "The company"?

18       A      Right here?

19       Q      (Indicating.)

20       A      "The company and all members of the board of

21  directors hereby warrant the truthfulness, accuracy

22  and completeness of the information disclosed, and

23  that there are no false representations, misleading

24  statements or material omissions contained herein."

25               (T:6/2/15-6/4/15 Exhibit 27 marked.)

Confidential - Subject to Further Confidentiality Review

```
 1              (T:6/2/15-6/4/15 Exhibit 27A marked.)

 2              MR. HERMAN:  Please hand counsel for

 3         BNBM and BNBMG and counsel for CNBM and CNBMG

 4         Exhibit 27, T:6/2/15-6/4/15, the English version

 5         bearing CNBMCO, C-O, 1 through 6 in English, and

 6         27A, ALRMH-CNBM5129A, 5130A, 5131A, 5132A dated

 7         18 July 2014.

 8              Would you please direct your attention

 9         to Exhibit 27A.  And I hand a set of

10         Exhibit 27/27A to the translator, to you, and to

11         your counsel.

12    BY MR. HERMAN:

13       Q    Would you please give me the date of this

14    document, which is on the last page of the document in

15    Chinese.

16       A    What is the Bates number?

17       Q    July 18, 2014, on the last page of the

18    Chinese document above the words "As at this date."

19       A    I was asking you to confirm the Bates number

20    of this document.

21       Q    The Bates number of the document is

22    ALRMH-CNBM00005132A.

23       A    Thank you.

24       Q    You're welcome.

25              The date?
```

Confidential - Subject to Further Confidentiality Review

```
 1      A      What was the question?

 2      Q      What is the date?

 3      A      April the 18th, 2014.

 4      Q      Would you read, in Chinese, the information

 5   below the date 18 July 2014?

 6      A      The same page?

 7      Q      Beginning at the words "As at this -- as at

 8   the date."

 9      A      This page contains July the 18th, 2014, as

10   well as the other page.  Should I read this page or

11   the other page?

12      Q      Please read the page that has 18 July 2014

13   and begins with the words "As at the date."

14              THE INTERPRETER:  This is the

15         interpreter speaking.  The Chinese translation

16         does not start from the word "As at the date."

17         If you would read the complete phrase before the

18         comma, that would do it.

19              MR. HERMAN:  "Beijing, comma, the PRC,

20         18 July 2014."

21              THE INTERPRETER:  This is the

22         interpreter speaking.  Would you, Counsel, like

23         the deponent to read after "Beijing, the PRC,

24         July 18, 2014"?

25              MR. HERMAN:  Yes.
```

Confidential - Subject to Further Confidentiality Review

1                    (Translation.)

2       A     I'm sorry, sir, there are a lot of

3   traditional Chinese characters contained in the

4   document.  I'm not sure my reading would be accurate.

5   BY MR. HERMAN:

6       Q     I will read it in English and I'll ask the

7   translator to interpret it in Chinese for the witness.

8                    "As at the date of this announcement,

9   the board of directors of the company comprises

10  Mr. Song, S-O-N-G, Zhiping, Z-H-I-P-I-N-G, Mr. Cao,

11  C-A-O, Jianglin, J-I-N-G-L-I-N, Mr. Peng Shou,

12  S-H-O-U, Mr. Cui, C-U-I, Xingtai, X-I-N-G-T-A-I,

13  Mr. Chang Zhangli, capital Z-H-A-N-G-L-I, as executive

14  directors, Mr. Guo, G-U-O, C-H-A-O-M-I-N, Mr. Huang,

15  A-N-Z-H-O-N-G, that's H-U-A-N-G, capital

16  A-N-Z-H-O-N-G, and Ms., M-S, Cui, C-U-I, Lijun,

17  capital L-I-J-U-N, as nonexecutive directors, and

18  Mr. Qiao, Q-I-A-O, second word, capital L-O-N-G-D-E,

19  Mr. Li, L-I, Decheng, capital D-E-C-H-E-N-G, Mr. Ma

20  Zhongzhi, M-A, new word, Z-H-O-N-G-H-I, Mr. Shin,

21  S-H-I-N, Fang, capital F-A-N-G, and Mr. Wu, W-U,

22  Liansheng, L-I-N-S-H-E-N-G, as independent

23  nonexecutive directors."

24                    MR. HERMAN:  Would you please interpret

25       that for the witness and...

Confidential - Subject to Further Confidentiality Review

```
1                    THE INTERPRETER:  Yes.

2                    (Translation.)

3   BY MR. HERMAN:

4        Q     Have you understood the translator?

5        A     I understood.

6        Q     Are you able now to, yourself, read it in

7   Chinese to the translator?

8                    MR. HERMAN:  Okay.  I'm going to change

9          the question, okay?

10       A     I understood, but I did not memorize how to

11  pronounce some particular characters.

12  BY MR. HERMAN:

13       Q     That's fine.

14                   Let me ask you this:  Do you find

15  that -- the translator's translation accurate?

16       A     I don't speak English, neither do I

17  understand the traditional Chinese.  I don't know

18  whether her translation is correct or not.

19       Q     Okay.  Look at the last page in Chinese and

20  tell me who the secretary of the board of China

21  National Building Material Company, Limited, signed

22  off on this announcement.

23                   MR. HAIRSTON:  Objection.

24       A     Do you want me to read here?

25  BY MR. HERMAN:
```

Confidential - Subject to Further Confidentiality Review

1     Q     Yes.

2     A     Chang Zhang Li, C-H-A-N-G, new word,

3   Z-H-A-N-G, L-I.

4     Q     Thank you.

5               (T:6/2/15-6/4/15 Exhibit 28 marked.)

6               (T:6/2/15-6/4/15 Exhibit 28A marked.)

7               MR. HERMAN:  Exhibit 28 T:6/2/15-6/4/15,

8          in English, has ALRMH Bates numbers 5112, 5113,

9          dated August 20, 2014.  And I hand a copy of

10         that, as well as the Chinese translation, which

11         is document 28A, 5112A to 5113A, to the court

12         reporter, to yourself, to your counsel, and

13         previously we've handed same to Harry Rosenberg,

14         attorney for BNBM and BNBMG, as well as counsel

15         for CNBM and CNBMG.

16              (Document review.)

17   BY MR. HERMAN:

18     Q     Have you read this document before?

19     A     While I was preparing for my deposition as

20   the company's witness, under the instruction and

21   advice of the attorney, I've read a great number of

22   documents related to Taishan Company; but for this

23   document, I do not confirm and do not have a clear

24   recollection of whether I have read it or not.

25     Q     Look at the second page, Bates 5113A, and

1    state what the date is, please.

2        A      August the 20th, 2014.

3                    (T:6/2/15-6/4/15 Exhibit 29 marked.)

4                    (T:6/2/15-6/4/15 Exhibit 29A marked.)

5                    MR. HERMAN:  I show you Exhibit 29 and

6        29A T:6/2/15-6/4/15 in English, beginning with

7        Bates number CNBMCO21 and ending with CNBMCO24,

8        and in Chinese, 29A, beginning with 5133A and

9        ending with 5135A.  And I hand a set to the

10       translator, to you, and to your counsel.

11                   (Document review.)

12                   MR. TAYLOR:  Sorry, Counsel, is there a

13       question pending?

14                   MR. HERMAN:  He's reading the document

15       in Chinese.

16                   MR. TAYLOR:  Okay.

17                   MR. HERMAN:  Exhibit 29.

18   BY MR. HERMAN:

19       Q      Have you seen this document before?

20       A      While I was preparing for my deposition as

21   the company's witness, under the instruction and

22   advice of the attorney, I've reviewed a great number

23   of documents related to Taishan Company; but I do not

24   remember clearly whether I have seen this document or

25   not.

1      Q      What is the date of the document on the last

2   page; that is, 5135A?

3      A      There are two dates on the last page of the

4   document.  Which date would you like me to read?

5      Q      Why don't you read both dates.

6      A      July the 18th, 2014.  August the 20th, 2014.

7      Q      And the date July 18th, 2014, says

8   "Announcement," does it not?  I apologize, I'm going

9   to withdraw the question.  I don't want to mislead the

10  witness.

11              The first sentence on that page has a

12  date of July 18th, 2014; is that correct?

13     A      The first sentence on this page?  What

14  sentence you are referring to?

15     Q      The one that says, "Litigation on the

16  company as of 18 July 2014 was set out in the 18 July

17  announcement."

18     A      It's not here.

19     Q      Okay.  Who was the secretary of the board of

20  China National Building Material Company, Limited?

21              MR. HAIRSTON:  Objection.

22     A      I don't know.

23  BY MR. HERMAN:

24     Q      Isn't it on the last page of the document?

25              MR. HAIRSTON:  Objection.

 1      A      If you ask me to read it, that's fine, but I

 2    really don't know it personally.

 3    BY MR. HERMAN:

 4      Q      Okay.  Would you read it for the record,

 5    China New Building Material Company, Limited secretary

 6    of the board.

 7      A      Do you want me to read here?

 8      Q      Yes.

 9      A      Chang Zhangli, C-H-A-N-G, new word,

10    Z-H-A-N-G-L-I.

11      Q      Below that, below the words, "Beijing, the

12    PRC," what is the date?

13      A      Here?  August the 20th, 2014.

14      Q      If you would, read the sentence below the

15    date of August 20th, 2014.

16      A      "As at the date of this announcement, the

17    board of directors of the company" -- I'm sorry, after

18    that, there are too many traditional Chinese

19    characters, just like the document prior to this one.

20      Q      You cannot read the words "Mr. Song,"

21    Z-H-I-P-N-G"?

22      A      I can read that because it's in simplified

23    Chinese.

24      Q      Well, would you read the names of every

25    individual of the board of directors of the company

1    that is stated, just the names of the individuals?

2              MR. TAYLOR:  Objection to form.

3    A    Because some of the characters are in

4    traditional Chinese form, so I'm not sure what are the

5    names that are the names of the members of the board

6    of directors.

7    BY MR. HERMAN:

8    Q    Have you never seen these words before as

9    they're written on this document?

10   A    I can read all simplified characters, not in

11   order, though.  But I do not recognize the traditional

12   Chinese characters.  Do you only want me to read those

13   characters that I'm able to recognize?

14   Q    Certainly.  Yes.

15             THE INTERPRETER:  Counsel, this is the

16        interpreter speaking.  If he reads that, he's

17        going to jump.  It will not make sense.

18             MR. HERMAN:  That's okay.  He can read

19        whatever it is he can read.  That's what I've

20        asked him.

21             THE INTERPRETER:  Okay.

22             (Translation.)

23             THE INTERPRETER:  I can't translate that

24        because he's jumping.  It doesn't make sense.

25        Do you want me to -- it's like Google

Confidential - Subject to Further Confidentiality Review

1          translation.

2                    MR. HERMAN:  Yes.  Let him read it, and

3          then you tell us what he said.  You're unable --

4                    THE INTERPRETER:  I'm not able to

5          translate.  It's like Google translation.  It's

6          funny.

7                    MR. HERMAN:  Okay.  All right.  Okay.

8          No problem.

9                    THE WITNESS:  May I take a break?

10                   MR. HERMAN:  Well, we were late getting

11         back for lunch, but the way we operate, anytime

12         a witness needs to take a break, we take a

13         break.

14                   MR. TAYLOR:  It's been an hour.

15                   MR. HERMAN:  Is a ten-minute break

16         sufficient?

17                   THE WITNESS:  Yes.  I would like to go

18         to the restroom.

19                   THE VIDEOGRAPHER:  This is the end of

20         Tape 9.  We're now off the record at 2:23.

21                   (Recess taken, 2:23 p.m. to 2:48 p.m.)

22                   THE VIDEOGRAPHER:  This is the beginning

23         of Tape 10.  We're now back on the record.  The

24         time is 2:48.

25                   (T:6/2/15-6/4/15 Exhibit 30 marked.)

1              (T:6/2/15-6/4/15 Exhibit 30A marked.)

2              MR. HERMAN:  Sir, I've handed to counsel

3         for BNBM and BNBMG and for CNBM and CNBMG and to

4         the court reporter, to the translator, to the

5         witness and counsel opposite for Taishan

6         T:6/2/15-6/4/15 Exhibit 30, ALRMH-CNBM5114, 5115

7         in English, 5116 in English, 5117 in English;

8         and Exhibit 30A, 5114A, 5115A, 5116A, 5117A as

9         published by BNBM Limited Company on its

10        official website.

11   BY MR. HERMAN:

12        Q    I'd like you first to go to the last page of

13   the announcement by BNBM and confirm the date for me.

14        A    This date?

15        Q    Yes, please.

16        A    February the 13th, 2015.

17        Q    I'd like to go to the first page of

18   Exhibit 30A.  I'd like you to read the highlighted

19   language that begins, "The company" at the top of the

20   first page.  You would read it in Chinese for the

21   court reporter.

22        A    Right here?

23        Q    Yes.  Yes.

24        A    "The company and all members of the board of

25   directors hereby warrant the truthfulness, accuracy

Confidential - Subject to Further Confidentiality Review

1    and completeness of the information disclosed, and

2    that there are no false representations, misleading

3    statements or material omissions contained herein."

4        Q    Have you previously read this document in

5    preparation as Taishan's corporate witness?

6                (Document review.)

7        A    In the process of my preparation as the

8    company's witness for the deposition, under the

9    instruction and the advice of the attorney, I've read

10   a great number of documents related to Taishan; but I

11   do not have a clear recollection on whether I read

12   this specific document or not.

13   BY MR. HERMAN:

14       Q    Sir, that document is dated after you were

15   selected to represent Taishan as its corporate

16   representative; isn't that true?

17       A    I do not remember clearly the accurate date

18   when I was selected as the company's representative.

19   I was -- I was selected as a company representative

20   under the circumstance of Chairman Jia's unfit health

21   condition, which does not allow him for long-distance

22   travel as well as boarding an airplane, and also under

23   the circumstance that plaintiffs' attorney disagree

24   change of deposition venue; but I do not have a clear

25   recollection on the specific date.

 1     Q     Sir, the public announcement you have in

 2   your hand, published by BNBM, was less than three and

 3   a half months ago, and you do not have a specific

 4   recollection now of having read that document in

 5   preparation of your deposition?

 6     A     As the witness for the company, in order for

 7   everyone to understand Taishan, I have reviewed a

 8   great amount of documents in a very limited time.  I

 9   personally do not have the capability of memorize

10   every specific date.

11                 Under the advice and instruction of

12   the attorney, Taishan had also provided many specific

13   information.  If you want to know specific issues,

14   please show me the documents and I will check for you

15   one by one.

16     Q     Sir, I've shown you a specific document.  Is

17   it your testimony under oath, as a company

18   representative, that you cannot recollect reviewing

19   that document prior to your appearance here under

20   oath?

21                 MR. TAYLOR:  Objection to form.

22     A     I don't have a clear recollection on whether

23   I've reviewed this document or not because I've

24   reviewed a great amount of documents under the advice

25   and instruction of my attorney, documents related to

Confidential - Subject to Further Confidentiality Review

1    Taishan.

2                    (T:6/2/15-6/4/15 Exhibit 31 marked.)

3                    (T:6/2/15-6/4/15 Exhibit 31A marked.)

4                    MR. HERMAN:  Sir, I've distributed

5           Exhibit 31, T:6/2/15-6/4/15, pages CNBMCO329 to

6           331 in English, and 31A, 5136A and 5137A to

7           counsel for BNBM, BNBMG, CNBM, CNBMG, and I now

8           hand you Exhibits 31/31A, one of each for the

9           translator, one of each to the witness, one to

10          counsel for Taishan, and I've also distributed

11          to counsel for CNBM and CNBMG.

12   BY MR. HERMAN:

13      Q    Would you turn to the last page of 5137A.

14   At the top of the page is the name of the secretary of

15   the board.  What is that name?

16      A    I still don't understand the traditional

17   Chinese characters, but if you want me to read in any

18   specific part, please point it out for me.

19      Q    I asked you --

20      A    As long as I can recognize the characters, I

21   will try to work with you.

22      Q    My question is very specific as regards this

23   exhibit:  Was Chang Zhangli secretary of the board on

24   this document?

25      A    I don't know Chang Zhangli.

1      Q     What are the words beneath the words "Chang

2   Zhangli"?

3               MR. HERMAN:  Are you unable to respond?

4      A      "The board of directors secret" [sic].  I

5   don't know the other character.

6   BY MR. HERMAN:

7      Q     Okay.  Are you able to read the last

8   paragraph on this page below the date?

9      A      There's still some traditional Chinese

10  characters which I do not understand.

11     Q     Okay.  Do you recall, in preparing your

12  testimony as a representative of the corporation, of

13  reading this document on a prior occasion?

14     A      While I was preparing as the representative

15  of Taishan, under the instruction and advice of the

16  attorney, I have reviewed a great number of documents.

17  But as for this document, which is not Taishan's

18  document, I do not have a clear recollection on

19  whether I have read it or not.

20               MR. HERMAN:  Would you please advise the

21           witness that we will not finish his deposition

22           by tomorrow and he will have to come back at a

23           future date because he gives speeches instead of

24           just saying he doesn't recall.

25               MR. TAYLOR:  Objection to counsel's

1          comments regarding the witness' right to explain

2          his answer.

3                    MR. HERMAN:  Well, you're right.

4          Counsel, I advise you as a member of

5          professionalism, you were asked on the first day

6          by Judge Fallon if you would return this witness

7          to his courtroom if we were unable to finish

8          this deposition.  And I'm advising you

9          professionally, due to the long and lengthy

10         objections that you've made and the witness'

11         nonresponsiveness, that I know I will not finish

12         by tomorrow afternoon, and I say that as a

13         matter of professional courtesy.

14                   MR. TAYLOR:  Thank you, sir.  Appreciate

15         it.

16                   MR. HERMAN:  You're welcome.

17                   THE WITNESS:  I do not understand what

18         you said earlier.

19    BY MR. HERMAN:

20         Q    Are you able to read the first paragraph in

21    italics on the first page of Exhibit 31A?

22         A    You have not yet answered my question.

23         Q    I'm asking you a question, sir.  Are you

24    able to read -- are you able -- are you able to read

25    the first paragraph on the first page, in Chinese, to

1    the translator?

2       A     I was saying that I do not understand what

3    you said earlier.

4       Q     Would you read the first paragraph on the

5    first page of Exhibit 31A to the translator.

6       A     I was asking you:  What did you see on your

7    prior statement?

8       Q     Sir, I'm not a witness.  You're the witness.

9    You're under oath.

10              Please -- if you can read the first

11   paragraph on Exhibit 31A, then please read it to the

12   translator.

13      A     I do not understand what you meant by your

14   earlier statement.  Are you withdrawing the statement?

15   If so, I will not follow up on that anymore.

16      Q     I'm asking you for the fourth time to answer

17   this question, under oath:  Are you able to read the

18   first paragraph on Exhibit 31A to the translator?

19              MR. TAYLOR:  To calm things down a bit,

20         I think we're going to take about a five-minute

21         break --

22              MR. HERMAN:  Oh, I don't think we are,

23         Counsel.  We've already had plenty breaks, and I

24         want the -- there's a question pending.  I want

25         the witness to answer the pending question.

Confidential - Subject to Further Confidentiality Review

```
 1              MR. TAYLOR:  And, Counsel, I'm not
 2       arguing with you.
 3              MR. HERMAN:  Well, good.
 4              MR. TAYLOR:  I'm trying to calm things
 5       down so that you can get an answer.
 6              MR. HERMAN:  I'm very calm.  I'm very
 7       patient.  I've asked the question four times.
 8              MR. TAYLOR:  You're going to keep it up?
 9       It's up to you.
10              MR. HERMAN:  Yeah, I am.
11              MR. TAYLOR:  Okay.
12   BY MR. HERMAN:
13      Q     Are you able to read to the translator the
14   first paragraph on Exhibit 31A?
15              MR. TAYLOR:  The record should reflect
16       that I -- because of the language differences,
17       cultural differences, I tried to --
18              MR. HERMAN:  I don't need a speaking
19       objection from you, Counsel.
20              MR. TAYLOR:  I'm not making an
21       objection.
22              MR. HERMAN:  I am now trying to get the
23       witness to respond.
24              MR. TAYLOR:  Now, are you finished?
25              MR. HERMAN:  No, I'm not.
```

1           MR. TAYLOR:  Well, neither am I.

2           MR. HERMAN:  Not until the witness

3     reads, or says he can't read or won't read,

4     paragraph 1 on 31A.

5           MR. TAYLOR:  Okay.  The record should

6     reflect that because of cultural differences

7     and, I think, language differences, the witness

8     appears to be a bit upset, and as the witness'

9     counsel, I wanted to take a few-minutes break --

10          MR. HERMAN:  The witness --

11          MR. TAYLOR:  -- in order to give the

12    witness an opportunity to calm down and --

13          MR. HERMAN:  There is another speaking

14    comment by you, Counsel.

15          MR. TAYLOR:  -- and make sure that the

16    witness understands the circumstances at this

17    point in the deposition.

18          MR. HERMAN:  You can explain to him in

19    your good time.  You're his lawyer.  I'm asking

20    the question the sixth time.

21          MR. TAYLOR:  Go right ahead, Counsel.

22          THE WITNESS:  You want me to read this?

23          MR. HERMAN:  Yes.

24          THE WITNESS:  The paragraph on the top?

25          MR. HERMAN:  Yes.

```
 1     A     There are still a lot of traditional Chinese

 2   characters which I do not understand.  Do I just read

 3   the individual characters in simplified Chinese that I

 4   understand?

 5   BY MR. HERMAN:

 6     Q     No, if you can't read it the way that it was

 7   produced publicly by BNBM, it's not necessary for you

 8   to read it with things you don't understand.

 9               MR. TAYLOR:  Objection to form and

10          object to plaintiff's argumentative statements

11          to the witness.

12               (T:6/2/15-6/4/15 Exhibit 32 marked.)

13               (T:6/2/15-6/4/15 Exhibit 32A marked.)

14               MR. HERMAN:  I hand to counsel for BNBM

15          and BNBMG and CNBM and CNBMG T:6/2/15-6/4/15

16          Exhibit 32 in English, Bates numbers 5118, 5119,

17          5120, all with the prefix ALRMH-CNBM, dated

18          March 13th, 2015, and in Chinese, Exhibit 32A,

19          ALRMH-CNBM Exhibit 5118A, 5119A, 5120A, as

20          published publicly by BNBM.

21   BY MR. HERMAN:

22     Q     And I ask the witness, as I give the

23   translator a copy of 32 and 32A for the translator,

24   the witness and counsel opposite, to turn to the last

25   page of 32A and read the date.
```

Confidential - Subject to Further Confidentiality Review

1      A      Please confirm the page by letting me know

2   the Bates number.

3      Q      Sure.  5120A.

4      A      5120.  Okay.  Ask your question again,

5   please.

6      Q      Yes.

7                   Confirm the date.

8      A      March the 13th, 2015.

9      Q      Turn to the first page of Exhibit 32A,

10  please.  Are you able to read in Chinese, quote, "The

11  company and all members of the board of directors

12  hereby warrant the truthfulness, accuracy and

13  completeness of the contents of this announcement, and

14  that there are no false representations, misleading

15  statements or material omissions contained therein"?

16                   MR. TAYLOR:  The record should reflect

17          that counsel read from 5118, 5-1-1-8, and not

18          necessarily the Chinese translation, which is on

19          5118A.

20                   THE WITNESS:  What is your question,

21          please?

22  BY MR. HERMAN:

23      Q      Can you read it in Chinese?

24                   MR. TAYLOR:  Objection to form.

25      A      This is in simplified Chinese, not a

1    problem.

2    BY MR. HERMAN:

3        Q      Please read it.

4        A      Which part?

5        Q      The part that begins on the first page, "The

6    company and all members," at the --

7        A      Here?

8        Q      Yes.

9        A      Until where?

10       Q      Here.

11       A      You're showing me the English.

12              THE INTERPRETER:  (Indicating.)

13              THE WITNESS:  All right.

14       A      "The company and all members of the board of

15   directors hereby warrant the truthfulness, accuracy

16   and completeness of the information disclosed, and

17   that there are no false representations, misleading

18   statements or material omissions contained herein."

19   BY MR. HERMAN:

20       Q      The date of the document, as you have

21   indicated, is March 13th, 2015.  Today is June 2nd,

22   2015.  Do you have a recollection, in preparation for

23   your testimony under oath, of having read this

24   document previously?

25       A      While I was prepping as Taishan's company

Confidential - Subject to Further Confidentiality Review

1    witness, I read a great deal of documents, under the

2    instruction/advice of the attorney.  They have nothing

3    to do with the dates of the documents.  I read so many

4    documents from the year 2005, 2007, all the way to

5    2015, related to Taishan.

6                There are so many documents, I cannot

7    confirm, neither do I have a clear recollection on

8    whether I have read this specific document or not.

9    Q    Would you turn to page 5319A of Exhibit 33A.

10               MR. TAYLOR:  I don't think we have -- do

11       we have --

12               MR. HERMAN:  Ah.

13               MR. TAYLOR:  I don't think we have 33.

14               MR. HERMAN:  You may be quite right.

15       I'll withdraw the question.

16               (T:6/2/15-6/4/15 Exhibit 33 marked.)

17               (T:6/2/15-6/4/15 Exhibit 33A marked.)

18   BY MR. HERMAN:

19   Q    Would you turn to -- I'm going to provide

20   your counsel, the translator and you with Exhibit 33

21   and 33A.  Exhibit 33 T:6/2/15-6/4/15, in English, is

22   ALRMH-CNBM5138 through 5139A -- that's wrong.  In

23   English, the document, as published by CNBM publicly,

24   Exhibit 33, in English, is ALRMH-CNBM05138, 5139 and

25   5140.  In Chinese, it's 33A, ALRMH5138A and

1    ALRMH-CNBM5139A.

2              Would you turn to page 5139A.  It's

3    the last page in Exhibit 33A.  Are you able to read

4    the date?

5        A    Which date?

6        Q    The date at the bottom of the page, 5140.

7        A    2140?

8        Q    5140.

9              MR. TAYLOR:  I think it's 39.  It's 39A,

10          I think is what you --

11             MR. HERMAN:  Of Exhibit 39A.

12       A    Right here?

13   BY MR. HERMAN:

14       Q    Yes.

15       A    March the 13th, 2015.

16       Q    Are you able to read, in Chinese, the

17   information below the date March 13, 2015?

18       A    I can only read parts that are in simplified

19   Chinese, but I cannot read the parts that are in

20   traditional Chinese.

21       Q    In preparation for your deposition as the

22   corporate representative of Taishan, did you read this

23   document at some time before today and after the date

24   China National Building Material Company, Limited

25   caused it to be published on March 13, 2015?

1      A      While I was prepping as Taishan's company

2    witness for the deposition, under the attorney's

3    advice and instruction, I've read a great amount of

4    documents.  The time frame is rather broad, and I do

5    not have a clear recollection on whether I have read

6    this document or not.

7                    MR. HERMAN:  How much time on the tape?

8                    THE VIDEOGRAPHER:  40.

9                    MR. HERMAN:  At this time, I offer and

10              introduce into evidence Exhibit 24 and 24A,

11              Exhibit 25 and 25A, 26 and 26A, 27 and 27A, 28

12              and 28A, 29 and 29A, 30 and 30A, 31 and 31A, 32

13              and 32A, 33 and 33A as public records published

14              by named defendants which are -- and business

15              records references which are exceptions to the

16              hearsay rule and in all cases admissions against

17              interest.

18                    MR. MARROCCO:  Objection.

19                    MR. TAYLOR:  Yeah, objection also, and

20              on the basis that to the extent the documents

21              are introduced against Taishan to prove the

22              truth of the matters asserted therein or

23              recorded therein, the admissions have not been

24              proven by counsel, and, therefore, we object to

25              the admission of the documents.

Confidential - Subject to Further Confidentiality Review

```
 1              MR. MARROCCO:  BNBM objects hearsay,
 2         lack of foundation.  Appropriate predicate has
 3         not been established for admissibility for all
 4         documents.
 5              MR. HAIRSTON:  I object to the entire
 6         evidentiary characterization, but I don't think
 7         this is necessarily the place for me to talk to
 8         you about all of that.
 9              MR. HERMAN:  For CNBM and CNBM Group?
10              MR. HAIRSTON:  Yes.
11              MR. HERMAN:  And was your objection,
12         sir --
13              MR. MARROCCO:  BNBM and BNBM Group.
14              MR. HERMAN:  Thank you.  Okay.
15              At this time, I'll introduce my
16         colleague, Sandy Duggan, who is from Arnold
17         Levin, lead counsel's office, who will
18         interrogate the witness on documents, and I will
19         not be part of this documentary interrogation.
20              MR. TAYLOR:  For the record, I didn't
21         think we were having multiple examiners of one
22         witness, but, quite frankly, as a professional
23         courtesy, we will allow it.
24              THE WITNESS:  I'd like to take a break.
25              MR. TAYLOR:  Please go right ahead.
```

Confidential - Subject to Further Confidentiality Review

1           THE VIDEOGRAPHER:  This is the end of

2       Tape 10.  We're now off the record at 3:32.

3           (Recess taken, 3:32 p.m. to 3:44 p.m.)

4           THE VIDEOGRAPHER:  This is the beginning

5       of Tape 11.  We're now back on the record.  The

6       time is 3:44.

7           (T:6/2/15-6/4/15 Exhibit 40 marked.)

8           (T:6/2/15-6/4/15 Exhibit 40A marked.)

9                   EXAMINATION

10  BY MS. DUGGAN:

11      Q     Good afternoon.

12          MS. DUGGAN:  I'd like to hand the

13       witness two documents that have been pre-marked

14       T:6/2/15-6/4/15 Exhibit 40 and Exhibit 40A.

15       These documents were produced to the plaintiffs

16       by Hogan Lovells, and they bear Bates number

17       HL_104 and Exhibit 40A as HL_105.  A copy for

18       the interpreter, a copy for the witness, a copy

19       for Taishan's counsel.  I'm also going to

20       provide a copy to counsel for BNBM and BNBM

21       Group, as requested by counsel, and counsel for

22       CNBM and CNBM Group.

23  BY MS. DUGGAN:

24      Q     Mr. Che, I'd like you to look, if you would,

25   at Exhibit 40A, which is in Chinese.  Are you able to

1    read that document?

2              (Document review.)

3    A    I'm done reading.

4    BY MS. DUGGAN:

5    Q    Okay.  Can you please read the document to

6    us, for the record?

7    A    What do you mean by read it to the record?

8    Q    Read it out loud.

9    A    Which part should I read?

10   Q    Start at the top.

11   A    Until where?

12   Q    Why don't you read to the bottom there, yes,

13   please.

14   A    From here?

15   Q    Yes.  Yes.

16   A    "Attorney Chen, hello, ever since responding

17   to the lawsuit in June 2010, Taishan Gypsum had paid

18   an immense cost in terms of manpower, finance and

19   time, and also carried a heavy burden for that reason.

20              "From the beginning to the end,

21   Taishan Gypsum has not received impartial and just

22   treatment and ruling.  Of course, Taishan Gypsum

23   greatly appreciate the hard work of the lawyers from

24   Hogan Lovells, Stanley Reuter for a long period of

25   time, and we are glad to having received the

1   high-level professional instruction and support from

2   all the attorneys.

3            "Whether to participate or not the

4   July 17th debtor's examination hearing in Germano case

5   and the damage hearing in Lennar case is a decision

6   that's both complicated and a decision that has

7   far-reaching consequence.  Therefore, the company has

8   been actively and repeatedly discussing about this,

9   but has not yet reached consensus.  As soon as a final

10  decision is made, I will immediately inform the

11  attorneys in your firm.

12           "Because we have paid large amount of

13  U.S. dollar payments for long period of time,

14  therefore, the local bank and tax department have

15  repeatedly reviewed Taishan Gypsum's payments.  This

16  is why the schedule for payments has been delayed, and

17  Taishan Gypsum has always been actively pushing for

18  the early payment of the bills.  Once again, we ask

19  for attorneys' understanding.

20           "We estimated there are still about --

21  there is still U.S. dollars of $390,207.68 of bill

22  unpaid.  Please verify the amount with the attorneys.

23  Anyways, Taishan Gypsum will try its best to pay the

24  unpaid bill as soon as possible.  However, please be

25  reminded, in June 2010, Taishan Gypsum Company had

Confidential - Subject to Further Confidentiality Review

```
 1    already paid 300,000 U.S. dollars to your firm for the

 2    guarantee payment.

 3                 "Thank you.  Best regard, Peng

 4    Wenlong," P-E-N-G, new word, W-E-N-L-O-N-G.

 5        Q    Are you able to read the top line of that

 6    document, Exhibit 40A?  I believe you started with the

 7    second line?

 8        A    The Chinese?

 9        Q    Yes, please.

10        A    "Taishan American lawsuit issues regarding

11    withdrawal of representation and bills."

12        Q    Mr. Che, have you seen this document before?

13        A    I don't have a clear recollection.

14        Q    Did you ever discuss the substance of this

15    document with Mr. Peng Wenlong?

16        A    No.

17        Q    Did you discuss with Chairman Jia the

18    subject of this document?

19                 MR. TAYLOR:  Objection to form.

20        A    This is a document of Mr. Peng Wenlong;

21    therefore, I cannot confirm anything with

22    Chairman Jia.

23    BY MS. DUGGAN:

24        Q    But did you discuss it with Chairman Jia?

25                 MR. TAYLOR:  Objection to form.
```

1     A     I don't have a clear recollection on whether

2  I have discussed with Chairman Jia regarding this

3  document because -- because I have shown Chairman Jia

4  some documents that are not his.  Chairman Jia took a

5  rough look at them, and he was not able to make out

6  what were those documents.  And, also, what I've shown

7  Chairman Jia were some Chinese-language-related

8  documents.

9  BY MS. DUGGAN:

10     Q     And what documents did you show

11  Chairman Jia?

12     A     Documents that are related to

13  Taishan Company that need to be confirmed, under the

14  instruction and advice of the attorney.

15     Q     And can you be more specific as to what

16  types of documents those were?

17     A     I don't have a clear recollection on that.

18  They are a lot.

19     Q     Mr. Che, do you agree with the statement in

20  this e-mail that, "TG has paid immense human,

21  financial and time costs, and, therefore, carried a

22  very heavy burden"?

23     A     I agree that Taishan had paid immense costs

24  of manpower, finance and time.  However, Taishan had

25  not been treated justly and fairly and had not

1    received its expected rulings.

2        Q    So would you say, then, it's true that you

3    agree that TG was not treated with any fair or just

4    treatment in rulings from U.S. courts?

5        A    I was saying in the matter of jurisdiction

6    of venue, that Taishan had always believed that

7    American courts do not have venue jurisdiction on

8    Taishan.

9        Q    Do you agree that the decision whether to

10   participate in the July 17, 2014, debtor examination

11   hearing in Germano will have a far-reaching influence?

12       A    Please repeat.

13       Q    Do you agree, sir, that the decision whether

14   to participate in the July 17, 2014, debtor

15   examination hearing in the Germano case will have a

16   far-reaching influence?

17               MR. MARROCCO:  Object to form.

18               THE WITNESS:  Can you interpret it all

19        together?  Can you interpret it all together?

20        There were some pauses in between.

21               THE INTERPRETER:  The interpreter will

22        interpret again.

23       A    I do not know.

24   BY MS. DUGGAN:

25       Q    Are you aware that Taishan was in

Confidential - Subject to Further Confidentiality Review

1    discussions and debates as to whether or not to

2    participate in the July 17, 2014, debtor examination

3    hearing in the Germano case?

4       A     I did not know.

5       Q     Did you discuss that subject with

6    Chairman Jia prior to appearing here today for your

7    deposition?

8              MR. TAYLOR:  Objection to form.

9       A     While prepping to testify, under the

10   instruction and advice of the attorney, I discussed

11   with Chairman Jia regarding a lot of documents.  But I

12   do not have a clear recollection of whether we had or

13   not discussed the Germano decision.

14   BY MS. DUGGAN:

15      Q     Okay.  And I'm not talking about any

16   specific document at this point.  I'm wondering if you

17   had a discussion with Chairman Jia as to the subject

18   matter of Taishan's decision not to participate in the

19   judgment debtor examination in the Germano case.

20      A     We did not discuss that because at the time,

21   this matter was being assisted by Manager Peng,

22   P-E-N-G.

23      Q     But in preparation for your deposition as

24   the representative for Taishan, did you discuss the

25   subject matter of whether or not Taishan was going to

 1    participate in the judgment debtor examination in the

 2    Germano case with Chairman Jia?

 3              MR. TAYLOR:  Objection to form.  Sorry.

 4              (Translation.)

 5              MR. TAYLOR:  Objection.  Thank you.

 6     A     At the time I was preparing for the

 7    deposition as Taishan's witness, under the advice and

 8    instruction of the attorney, at the time Taishan had

 9    already paid for the penalty of the ruling, as well as

10    the plaintiffs' attorneys' fee.  Therefore, we did not

11    further discuss Germano case.

12    BY MS. DUGGAN:

13     Q     But did you discuss at all with Chairman Jia

14    the decision of Taishan not to appear in July of 2014

15    for its debtor examination in the Germano case?

16     A     We did discuss.

17     Q     Can you please tell me the substance of your

18    discussions?

19     A     Under the advice and instruction of the

20    attorney, I confirmed with Chairman Jia who made the

21    decision of not participating, which was to withdraw

22    from the lawsuit.  So the result I had received was --

23    the decision of withdraw from the case was made by

24    Taishan's board of directors.

25     Q     Is that what Chairman Jia told you?

Confidential - Subject to Further Confidentiality Review

```
 1      A      Correct.

 2      Q      Did you happen to know that independently as

 3   well?

 4              MR. TAYLOR:  Objection to form.

 5      A      I did not know.

 6   BY MS. DUGGAN:

 7      Q      And who made the decision, in terms of the

 8   names?  Who was on the board of directors of Taishan

 9   that made the decision to withdraw from the Germano

10   case?

11              MR. TAYLOR:  Objection to form.

12              THE WITNESS:  Do I need to answer?

13              MR. TAYLOR:  Sure, go ahead and answer.

14      A      While I was prepping as the company witness

15   for the deposition, under the instruction and advice

16   of the attorney, I have confirmed with the attorney

17   the members of the board of directors that have made

18   the decision for July 2014.  Do I need to name them?

19   BY MS. DUGGAN:

20      Q      Yes, please.

21      A      Tongchun Jia, T-O-N-G-C-H-U-N, last name,

22   J-I-A.  Bing Wang, B-I-N-G, last name, W-A-N-G.

23   Nailing Zhang, N-A-I-L-I-N-G, last name, Zhang,

24   Z-H-A-N-G.  Yanjun Yang, Y-A-N-J-U-N, last name,

25   Y-A-N-G.  Xueyong Liu, X-U-E-Y-O-N-G, last name,
```

1    L-I-U.

2       Q      Are you finished?

3                  Are you aware whether Wang Bing is

4    also a director of BNBM?

5                  MR. TAYLOR:  Objection to form.  I have

6            a -- this is not a speaking objection, but I do

7            have a general concern that a lot of these

8            questions have already been asked and answered.

9                  MS. DUGGAN:  Your objection is noted.

10                  MR. TAYLOR:  Thank you.

11                  MS. DUGGAN:  I'll repeat the question.

12   BY MS. DUGGAN:

13      Q      Are you aware whether, in July of 2014, Wang

14   Bing was a director of BNBM?

15                  MR. TAYLOR:  Go ahead and answer.

16      A      I do not know.

17   BY MS. DUGGAN:

18      Q      Okay.

19                  MS. DUGGAN:  We'd like to offer

20           Exhibit 40 and Exhibit 40A into evidence.

21           Exhibit 40 is HL_104, and Exhibit 40A is HL_105,

22           for all purposes.

23                  MR. TAYLOR:  Our objection is twofold.

24           One, the highly confidential nature of the

25           document that we've already agreed would be

1        handled in an appropriate way.

2              MS. DUGGAN:  Yes.

3              MR. TAYLOR:  And secondly, to the extent

4        the document is being offered for the purpose of

5        confirming the truthfulness of the statements

6        contained therein, we object because the

7        appropriate standard for admissibility hasn't

8        been made by the propounder, Counsel.

9              MR. MARROCCO:  Join.

10             MR. HAIRSTON:  Join.

11             (T:6/2/15-6/4/15 Exhibit 41 marked.)

12             MS. DUGGAN:  We have marked as

13       Exhibit 41, that's T:6/2/15-6/4/15, the

14       certified deposition transcript of Gang Che

15       dated January 11, 2012.  This deposition was

16       taken in In re Chinese-Manufactured Drywall,

17       MDL 2047, and it contains six exhibits.  We're

18       going to offer that into evidence.

19             MR. TAYLOR:  Counsel, did you indicate

20       it was certified?

21             MS. DUGGAN:  Yes, I did.

22             MR. TAYLOR:  Okay.  Thank you.

23             MS. DUGGAN:  I don't have any questions

24       for the witness on this exhibit.

25             MR. TAYLOR:  That's fine.

1                    (T:6/2/15-6/4/15 Exhibit 36 marked.)

2                    MS. DUGGAN:  We've also marked as

3          Exhibit 36 the declaration of Yan Gao, that's

4          Y-A-N, G-A-O, dated May 13, 2015.  This

5          declaration and all exhibits was filed of record

6          in In re Chinese Drywall, MDL 2047 under seal at

7          rec doc 18958-48.  I'm going to read into the

8          record what the exhibits contain.

9                    MR. TAYLOR:  Counsel, before you go

10         there, can I go back to the deposition

11         transcript, which is 40 -- what was the number?

12         Was it 41?

13                   MS. DUGGAN:  41.

14                   MR. TAYLOR:  If this was going to a

15         jury, which I don't believe this is going to

16         occur in this case, then I would have to object

17         because I think it would be inappropriate for it

18         to be offered as an exhibit that you would be

19         able to cross-examine him on it but not have it

20         as an exhibit to go out with the jury.  As long

21         as we're not in that situation, I have no

22         objection.

23                   MS. DUGGAN:  I want to return now to

24         Exhibit 36, which was filed as Exhibit 7 to the

25         plaintiffs' reply brief.  Again, it was filed

```
 1          under seal at rec doc 18958-48.  Exhibit 1 to

 2          the Yan Gao declaration is Taishan's 2010

 3          auditor's report, contains the cover page and

 4          part of the document that deals with the Chinese

 5          drywall litigation.  That Exhibit 1 to Yan Gao

 6          declaration is in Chinese.

 7                  Exhibit 2 to the declaration is the

 8          translation of Taishan's 2010 auditor's report,

 9          the cover page, and the section dealing with the

10          Chinese drywall litigation.

11                  Exhibit 3 to the declaration is in

12          Chinese.  It is Taishan's 2014 auditor's report,

13          the cover page and the section dealing with the

14          Chinese drywall litigation.

15                  Exhibit 4 is a translation of Taishan's

16          2014 auditor's report, cover page and the

17          section dealing with the Chinese drywall

18          litigation.

19                  Exhibit 5 is in Chinese.  It is

20          Taishan's resolutions of the 2010 annual general

21          meeting.  It contains the first page and the

22          section dealing with the Chinese drywall

23          litigation.

24                  Exhibit 6 is a translation into English

25          of Taishan's resolution of the 2010 annual
```

1    general meeting, first paragraph and the section

2    dealing with the Chinese drywall litigation.

3          Exhibit 7 is in Chinese.  It is BNBM's

4    Announcement No. 2010-009.

5          Exhibit 8 is a translation of BNBM's

6    Announcement No. 2010-009.

7          Exhibit 9 is in Chinese.  It is BNBM's

8    2010 interim report, the cover page and the

9    section dealing with the Chinese drywall

10   litigation.

11         Exhibit 10 is a translation of BNBM's

12   2010 interim report, the cover page and the

13   section dealing with the Chinese drywall

14   litigation.

15         Exhibit 11 is in Chinese.  It is BNBM's

16   2010 third quarterly report, page 4.

17         Exhibit 12 is a translation of BNBM's

18   2010 third quarterly annual -- excuse me.

19   Strike that.

20         Exhibit 12 is a translation of BNBM's

21   2010 third quarterly report, the section dealing

22   with the Chinese drywall litigation.

23         Exhibit 13 is in Chinese.  It is BNBM's

24   2010 annual report, the cover page and the

25   section dealing with the Chinese drywall

Confidential - Subject to Further Confidentiality Review

1    litigation.

2              Exhibit 14 is the translation of BNBM's

3    2010 annual report, the cover page and the

4    section dealing with the Chinese drywall

5    litigation.

6              Exhibit 15 is in Chinese.  It is BNBM's

7    first quarterly report from 2011, page 4.

8              Exhibit 16 is the translation of BNBM's

9    first quarterly report for 2011, the section

10   dealing with the Chinese drywall litigation that

11   is on page 4.

12             Exhibit 17 is in Chinese.  It is BNBM's

13   2011 interim report, the cover page and the

14   section dealing with the Chinese drywall

15   litigation.

16             Exhibit 18 is a translation of BNBM's

17   2011 interim report, the cover page and the

18   section dealing with the Chinese drywall

19   litigation.

20             Exhibit 19 is in Chinese.  It is BNBM's

21   2011 third quarterly report, page 4.

22             Exhibit 20 is a translation of BNBM's

23   2011 third quarterly report, the section dealing

24   with the Chinese drywall litigation on page 4.

25             Exhibit 21 is in Chinese.  It is BNBM's

1    2011 annual report, the cover page and the

2    section dealing with the Chinese drywall

3    litigation.

4            Exhibit 22 is a translation of BNBM's

5    2011 annual report, the cover page and the

6    section dealing with the Chinese drywall

7    litigation.

8            Exhibit 23 is in Chinese.  It is BNBM's

9    2012 first quarterly report, page 3.

10           Exhibit 24 is a translation of BNBM's

11   2012 first quarterly report, the section dealing

12   with the Chinese drywall litigation on page 3.

13           Exhibit 25 is in Chinese.  It is BNBM's

14   2012 interim report, sections dealing with the

15   Chinese drywall litigation.

16           Exhibit 26 is a translation of BNBM's

17   2012 interim report, the sections dealing with

18   the Chinese drywall litigation.

19           Exhibit 27 is in Chinese.  It is BNBM's

20   2012 third quarterly report, page 5.

21           Exhibit 28 is a translation of BNBM's

22   2012 third quarterly report, the section dealing

23   with the Chinese drywall litigation on page 5.

24           Exhibit 29 is in Chinese.  It is BNBM's

25   2012 annual report, the sections dealing with

1          the Chinese drywall litigation.

2                  Exhibit 30 is a translation of BNBM's

3          2012 annual report, the sections dealing with

4          the Chinese drywall litigation.

5                  Exhibit 31 is in Chinese.  It is BNBM's

6          2013 first quarterly report, page 7.

7                  Exhibit 32 is a translation of BNBM's

8          2013 first quarterly report, the section dealing

9          with the Chinese drywall litigation on page 7.

10                 Exhibit 33 is in Chinese.  It is BNBM's

11         2013 interim report, the cover page and the

12         sections dealing with the Chinese drywall

13         litigation.

14                 Exhibit 34 is a translation of BNBM's

15         2013 interim report, the cover page and the

16         sections dealing with the Chinese drywall

17         litigation.

18                 Exhibit 35 is in Chinese.  It is BNBM's

19         2013 third quarterly report, page 7.

20                 Exhibit 36 is a translation of BNBM's

21         2013 third quarterly report, the sections

22         dealing with the Chinese drywall litigation on

23         page 7.

24                 Exhibit 37 is in Chinese.  It is BNBM's

25         2013 annual report, the cover page and the

Confidential - Subject to Further Confidentiality Review

1    sections dealing with the Chinese drywall

2    litigation.

3              Exhibit 38 is a translation of BNBM's

4    2013 annual report.  It's the cover page and the

5    sections dealing with the Chinese drywall

6    litigation.

7              Exhibit 39 is in Chinese.  It is BNBM's

8    2014 first quarterly report, page 7.

9              Exhibit 40 is a translation of BNBM's

10   2014 first quarterly report, the section dealing

11   with the Chinese drywall litigation on page 7.

12             Exhibit 41 is in Chinese.  It is BNBM's

13   2014 interim report, the cover page and the

14   sections dealing with the Chinese drywall

15   litigation.

16             Exhibit 42 is a translation of BNBM's

17   2014 interim report, the cover page and the

18   sections dealing with the Chinese drywall

19   litigation.

20             Exhibit 43 is in Chinese.  It is BNBM's

21   2014 third quarterly report, page 9.

22             Exhibit 44 is a translation of BNBM's

23   2014 third quarterly report, the section dealing

24   with the Chinese drywall litigation on page 9.

25             Exhibit 45 is in Chinese.  BNBM's 2014

1        annual report, the cover page and the sections

2        dealing with the Chinese drywall litigation.

3                Exhibit 46 is a translation of BNBM's

4        2014 annual report, the cover page and the

5        sections dealing with the Chinese drywall

6        litigation.

7                Exhibit 47 is in Chinese.  It is BNBM's

8        Announcement No. 2014-030.

9                Exhibit 48 is a translation of BNBM's

10       Announcement No. 2014-030.

11               Exhibit 49 is in Chinese.  It is BNBM's

12       Announcement No. 2014-037.

13               Exhibit 50 is a translation of BNBM's

14       Announcement No. 2014-037.

15               Exhibit 51 is in Chinese.  It is BNBM's

16       Announcement No. 2015-002.

17               Exhibit 52 is a translation of BNBM's

18       Announcement No. 2015-002.

19               Exhibit 53 is in Chinese.  It is BNBM's

20       Announcement No. 2015-003.

21               Exhibit 54 is a translation of BNBM's

22       Announcement No. 2015-003.

23               Exhibit 55 is in English.  It is CNBM's

24       2014 annual report, page 88.

25               Exhibit 56 is CNBM's 2014 annual report,

Confidential - Subject to Further Confidentiality Review

1          page 89.

2                    Exhibit 57 contains Chinese and a

3          translation of CNBM Group's company news.

4                    Exhibit 58 is Yan Gao's resume.

5                    I would like the record to reflect that

6          counsel for BNBM, BNBM Group, counsel for CNBM

7          and CNBM Group were previously provided with the

8          contents of this exhibit as it was filed of

9          record in this case.

10                   If counsel would like a separate copy,

11         though, I'd be happy to provide it.

12                   MR. ROSENBERG:  Sure.  Thank you.

13                   MS. DUGGAN:  Certainly.

14                   I don't have any questions for the

15         witness, but I will provide Taishan's counsel

16         with the exhibit, and I'll give one to the court

17         reporter.  And we'd like to offer this into

18         evidence as well.

19                   MR. TAYLOR:  Since there are a large

20         number of exhibits we need to review here, would

21         counsel entertain a request that we be given the

22         opportunity to review the documents and then

23         determine, express any objections we have on

24         the record?

25                   MS. DUGGAN:  I think what I could agree

Confidential - Subject to Further Confidentiality Review

```
 1        to, if you'd like, is to review them this

 2        evening, and if you'd like to make an objection

 3        on the record tomorrow morning, that would be

 4        fine.

 5              MR. TAYLOR:  Yes, that will be great.

 6        Thank you very much.

 7              MS. DUGGAN:  Okay, great.

 8              MR. MARROCCO:  BNBM and BNBM Group

 9        object to the admission of these documents in

10        this deposition through this witness.  No

11        foundation has been laid and a predicate for

12        admissibility has not been established.  We

13        would object to the affidavit and all the

14        attached exhibits at this time.

15              MR. HAIRSTON:  Same objections.

16              (T:6/2/15-6/4/15 Exhibit 35 marked.)

17              MS. DUGGAN:  I'd like to show the

18        witness what has been marked as Exhibit

19        T:6/2/15-6/4/15 Exhibit 35.  I have a copy for

20        the interpreter, for the witness and for

21        Taishan's counsel.  I'd also like to provide a

22        copy to counsel for BNBM, BNBM Group, CNBM and

23        CNBM Group.

24              I'd also like to represent that this

25        document is Schedule A from the notice of
```

1          deposition that was served on Taishan Gypsum on

2          May 28th, 2015.  It was filed at Rec Doc 19007

3          in the Chinese drywall litigation MDL 2047.

4                    THE WITNESS:  Can you speak to the

5          microphone?

6                    MS. DUGGAN:  Can you not hear me?

7                    THE WITNESS:  What was your question?

8                    MS. DUGGAN:  I didn't have a question

9          yet.  I just would like the witness to look at

10         the document, and then I'll ask a question.

11                   THE WITNESS:  But this is in English.

12    BY MS. DUGGAN:

13       Q    So my question is:  Have you ever seen this

14    before?

15       A    I believe I have, but I'm not sure.  If it

16    is a notice for a deposition, then under the advice

17    and instruction of the lawyers, I should have read the

18    document.  But because my English is not good,

19    therefore I can't be sure of that.

20       Q    Okay.  Were you provided a translation of

21    this document to review?

22       A    Usually if the attorney is present, the

23    attorney would translate that for me, for me to

24    review.

25       Q    Do you have an understanding of what was

Confidential - Subject to Further Confidentiality Review

1    requested in Schedule A?

2        A    Can you give me a Chinese version, or to

3    have the interpreter interpret it sentence by

4    sentence?

5                (T:6/2/15-6/4/15 Exhibit 37 marked.)

6                MS. DUGGAN:  I'm going to distribute

7            what has been marked as Exhibit T:6/2/15-6/4/15

8            Exhibit 37.  And I'll offer the witness, counsel

9            for Taishan and the interpreter a copy, as well

10           as counsel for BNBM, BNBM Group and counsel for

11           CNBM and CNBM Group.

12                I will represent for the record that

13           this was received by plaintiffs' liaison

14           counsel, Russ Herman.  It was an e-mail from

15           Bernard Taylor dated June 1, 2015.

16                Attached to this e-mail is a chart that

17           has a heading "TG Subsidiaries."  That is on

18           page 3 of the document.

19   BY MS. DUGGAN:

20       Q    My question is:  Have you ever seen this

21   chart before?

22       A    Yes.

23       Q    Did you prepare the chart?

24       A    I prepared the Chinese version.

25       Q    And what is your understanding of what the

Confidential - Subject to Further Confidentiality Review

1   chart contains?

2       A     This chart -- according to Chinese culture

3   and Taishan's understanding, the chart reflects

4   Taishan's affiliate.

5       Q     And what does "affiliate" mean?

6                MR. TAYLOR:  Objection to form.

7       A     I don't know the definition of affiliate

8   companies according to American law, but according to

9   Chinese culture and understanding of Taishan,

10  affiliate companies are those companies that Taishan

11  holds stocks in, Taishan's affiliate companies.

12  BY MS. DUGGAN:

13      Q     Does this chart contain any parents of

14  Taishan?

15               MR. TAYLOR:  Objection to form.

16      A     I don't understand what you meant by "parent

17  companies."

18  BY MS. DUGGAN:

19      Q     According to your testimony, this chart

20  contains Taishan's affiliates, correct?

21      A     These are Taishan's affiliate companies,

22  according to Chinese culture and Taishan's

23  understanding.

24      Q     And does the chart contain the names of any

25  companies that own shares in Taishan?

Confidential - Subject to Further Confidentiality Review

1      A      No.

2      Q      When did you prepare this chart?

3      A      I prepared these charts under the

4   instruction/advice of my attorney while I was prepping

5   as a witness.  This should be the material that we

6   were required to provide.

7      Q      Did you have any assistance from any other

8   employees in your company in preparing the chart?

9      A      Yes.

10      Q      Who helped you prepare the chart?

11      A      Quite a few people, because I would need to

12   confirm one by one.

13      Q      How many people helped you prepare the

14   chart?

15      A      It's hard to confirm that.

16      Q      Did you work with Chairman Jia to prepare

17   this chart?

18      A      Yes.

19      Q      Do you know whether the documents that you

20   used to prepare this chart have been produced in this

21   litigation?

22              MR. TAYLOR:  Objection to form.

23      A      After we have prepared the document, we

24   submitted the document to our attorney.  Our attorney

25   handled the rest.

1    BY MS. DUGGAN:

2        Q    So do you know whether the documents that

3    you used to prepare the chart were produced to

4    plaintiffs' counsel in this litigation?

5        A    Ask again, please.

6        Q    Do you know whether the documents that you

7    used to prepare this chart have been produced to

8    plaintiffs' counsel in this case?

9        A    I know this document is to be produced to

10   plaintiffs' attorney, but I'm not sure when was it

11   produced or whether you have received it or not.

12                THE WITNESS:  May I take a break?

13                MR. HERMAN:  Well, we only have 15 --

14         yeah, you want to take a break?

15                MR. TAYLOR:  Hold on.  Do you need to go

16         to the restroom?

17                MR. HERMAN:  I want to finish this line

18         of questioning.

19                THE VIDEOGRAPHER:  Do you want to go off

20         the record?

21                MR. HERMAN:  Well, he wants to take a

22         break.

23                MR. TAYLOR:  He needs a restroom break.

24                THE VIDEOGRAPHER:  This is the end of

25         Tape 11.  We're now off the record at 4:44.

Confidential - Subject to Further Confidentiality Review

```
1                    (Recess taken, 4:44 p.m. to 4:49 p.m.)

2                    THE VIDEOGRAPHER:  This is the beginning

3         of Tape 12.  We're now back on the record.  The

4         time is 4:49.

5    BY MS. DUGGAN:

6         Q    Hello.  I just have one more question about

7    Exhibit 37, and if you answered it before, I missed

8    it.

9                    When did you prepare this chart?

10        A    I prepared the chart under the instruction

11   and advice of my attorney while I was collecting the

12   documents for the preparation as a witness.

13        Q    Do you know if that was just in May or in

14   April of 2015?

15        A    I don't have a clear recollection of that.

16   I have worked too much recently for this.  My head is

17   confused.

18                   MS. DUGGAN:  I would like to offer both

19        Exhibits 35 and 37 into evidence.

20   BY MS. DUGGAN:

21        Q    Mr. Che, are you aware of a company by the

22   name of China Triumph International Engineering Group?

23        A    I do not know.

24        Q    Have you ever heard of a company named

25   CTIEC?
```

```
 1      A     No.

 2      Q     Are you aware that CTIEC did business in the

 3   United States after July 17, 2014?

 4              MR. HAIRSTON:  Objection.

 5      A     I do not know.

 6   BY MS. DUGGAN:

 7      Q     Are you aware that a company by the name of

 8   CTIEC-TECO American Technology Inc. did business in

 9   the United States after July 17, 2014?

10              MR. HAIRSTON:  Objection.

11      A     I do not know.

12   BY MS. DUGGAN:

13      Q     Have you ever heard of a company named

14   Sunpin Solar?

15      A     What's the Chinese name of it?

16      Q     Sunpin Solar, S-U-N-P-I-N, S-O-L-A-R.

17      A     I've never heard of it.

18              THE INTERPRETER:  This is the

19         interpreter speaking.  Do you have the Chinese

20         character, because it cannot be translated the

21         way it is?

22              MS. DUGGAN:  I understand.

23   BY MS. DUGGAN:

24      Q     Are you aware that a company named China

25   National Building Material Import & Export Company,
```

Confidential - Subject to Further Confidentiality Review

1   which is also known as CNBM Trading, did business in

2   the United States after July 17, 2014?

3                   MR. HAIRSTON:  Objection.

4       A     I do not know.

5   BY MS. DUGGAN:

6       Q     Have you ever heard of the company

7   CNBM Trading?

8       A     If that's convenient to you, would you mind

9   providing the Chinese name of those companies, because

10  I have no idea what you are talking about?

11      Q     So you're not familiar, then, with a company

12  called CNBM Trading?

13                  MR. TAYLOR:  Objection to form.

14      A     I do not know.

15  BY MS. DUGGAN:

16      Q     Have you ever heard of a company called

17  China National Building Material Import & Export

18  Company?

19      A     Please repeat the Chinese name of that

20  company.

21      Q     China National Building Material Import &

22  Export Company.

23                  THE INTERPRETER:  This is the

24          interpreter speaking.  The interpreter did a

25          literal translation of the English name of the

Confidential - Subject to Further Confidentiality Review

1       company.

2               MR. TAYLOR:  Objection to form.

3       A     I've never heard of it.

4    BY MS. DUGGAN:

5       Q     Have you ever heard of a company called

6    CNBM Forest Products (Canada), Limited?

7               THE INTERPRETER:  This is the

8            interpreter speaking.  Should the interpreter

9            literally translate that into Chinese, because

10           Chinese translation many times do not correspond

11           with the English names when it comes to company

12           names?

13              MS. DUGGAN:  Yes, please.

14      A     I have not heard of it.

15   BY MS. DUGGAN:

16      Q     Are you aware that CNBM Forest Products

17   (Canada) did business in the United States after

18   July 17, 2014?

19              MR. HAIRSTON:  Objection.

20              MR. TAYLOR:  Objection to form.

21      A     I do not know.

22   BY MS. DUGGAN:

23      Q     Have you heard of a company CNBMI, also

24   known as CNBMI Investment?

25      A     I have never heard of it.

Confidential - Subject to Further Confidentiality Review

```
 1              THE INTERPRETER:  This is the

 2        interpreter speaking.  I happen to have the

 3        correct translation in Chinese for CNBMI, which

 4        is China New Business Materials Investment

 5        Company Inc.  Should I provide that translation

 6        to Mr. Che?

 7              MS. DUGGAN:  Yes, please.

 8     A    I have not heard of it.

 9  BY MS. DUGGAN:

10     Q    Have you heard of a company BND Company,

11  Limited?

12              MR. HAIRSTON:  Objection.

13     A    I have not heard of it.

14  BY MS. DUGGAN:

15     Q    Are you aware that CNBMI did business in the

16  United States after July 17, 2014?

17              MR. TAYLOR:  Objection to form.

18              MR. HAIRSTON:  Objection.

19     A    I do not know.

20              MS. DUGGAN:  Give me one second, please.

21        Thank you.

22              (Pause.)

23              MS. DUGGAN:  I note that it is 5:00 p.m.

24        and I believe that we agreed to go until 5:00,

25        so we'll pick this up again tomorrow morning at
```

```
 1          9:00 a.m.

 2                    MR. TAYLOR:  Thank you, Counsel.

 3                    MS. DUGGAN:  Thank you.

 4                    THE VIDEOGRAPHER:  This is the end of

 5          Tape 12.  We're now off the record at

 6          5:00 o'clock.

 7                    (Proceedings recessed at 5:00 p.m.)

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    REPORTER'S CERTIFICATE

 2

 3          This transcript is valid only for a transcript

 4     accompanied by my original signature and original

 5     required seal on this page.

 6          I, Michael E. Miller, Certified Court Reporter

 7     (LA Certificate #27009) in and for the State of

 8     Louisiana, as the officer before whom this testimony

 9     was taken, do hereby certify that GANG CHE, after

10     having been duly sworn by me upon authority of

11     R.S. 37:2554, did testify as herein before set forth

12     in the foregoing 138 pages; that this testimony was

13     reported by me in the stenotype reporting method, was

14     prepared and transcribed by me or under my personal

15     direction and supervision, and is a true and correct

16     transcript to the best of my ability and

17     understanding; that the transcript has been prepared

18     in compliance with transcript format guidelines

19     required by statute or by rules of the board, and that

20     I am informed about the complete arrangement,

21     financial or otherwise, with the person or entity

22     making arrangements for deposition services; that I

23     have acted in compliance with the prohibition on

24     contractual relationships, as defined by Louisiana

25     Code of Civil Procedure Article 1434
```

Confidential - Subject to Further Confidentiality Review

1    and in rules and advisory opinions of the board;

2    that I have no actual knowledge of any prohibited

3    employment or contractual relationship, direct or

4    indirect, between a court reporting firm and any party

5    litigant in this matter nor is there any such

6    relationship between myself and a party litigant in

7    this matter.  I am not related to counsel or to the

8    parties herein, nor am I otherwise interested in the

9    outcome of this matter.

10

11           Signed this ___ day of _____, 2015.

12

13

14           _____

15           MICHAEL E. MILLER, FAPR, RDR, CRR

16           Certified Court Reporter

17           LA Certified Court Reporter #27009

18

19

20

21

22

23

24

25

Confidential - Subject to Further Confidentiality Review

```
1                  ACKNOWLEDGMENT OF DEPONENT

2

3           I,_____, do hereby

4    certify that I have read the foregoing pages and

5    that the same is a correct transcription of the

6    answers given by me to the questions therein

7    propounded, except for the corrections or changes in

8    form or substance, if any, noted in the attached

9    Errata Sheet.

10

11           _____

12           GANG CHE                    DATE

13

14   Subscribed and sworn to before me this

15   _____ day of _____, 20 _____.

16   My commission expires: _____

17

18   Notary Public

19

20

21

22

23

24

25
```

1                    — — — — — —

2                        ERRATA

                     — — — — — —

3

4    PAGE   LINE      CHANGE/REASON

5    _____  _____  _____

6    _____  _____  _____

7    _____  _____  _____

8    _____  _____  _____

9    _____  _____  _____

10   _____  _____  _____

11   _____  _____  _____

12   _____  _____  _____

13   _____  _____  _____

14   _____  _____  _____

15   _____  _____  _____

16   _____  _____  _____

17   _____  _____  _____

18   _____  _____  _____

19   _____  _____  _____

20   _____  _____  _____

21   _____  _____  _____

22   _____  _____  _____

23   _____  _____  _____

24   _____  _____  _____

25   _____  _____  _____

Confidential - Subject to Further Confidentiality Review

```
 1              UNITED STATES DISTRICT COURT

 2              EASTERN DISTRICT OF LOUISIANA

 3    ****************************************************

 4    IN RE:  CHINESE-MANUFACTURED  MDL NO. 2047

      DRYWALL PRODUCTS LIABILITY

 5    LITIGATION                     SECTION:  L

 6    THIS DOCUMENT APPLIES TO      JUDGE FALLON

      ALL CASES

 7                                  MAG. JUDGE WILKINSON

 8    ****************************************************

 9

              CONFIDENTIAL - SUBJECT TO FURTHER

10                 CONFIDENTIALITY REVIEW

11                 Thursday, June 4, 2015

12                     — — —

13

14         Continuing Videotaped 30(b)(6) Deposition of

15    TAISHAN GYPSUM CO., LTD f/k/a SHANDONG TAIHE DONGXIN

16    CO., LTD. through the testimony of GANG CHE, VOLUME 3,

17    held in the courtroom of the United States District

18    Court, Eastern District of Louisiana, 500 Poydras

19    Street, New Orleans, Louisiana, commencing at

20    9:02 a.m., on the above date, before Michael E.

21    Miller, Certified Court Reporter (#27009), Registered

22    Diplomate Reporter, Certified Realtime Reporter.

23                     — — —

24            GOLKOW TECHNOLOGIES, INC.

         877.370.3377 ph | 917.591.5672 fax

25                 deps@golkow.com
```

```
 1    A P P E A R A N C E S:
 2    COUNSEL FOR THE PLAINTIFF CLASS:
 3         HERMAN HERMAN & KATZ LLC
           BY:  RUSS M. HERMAN, ESQUIRE
 4              rherman@hhklawfirm.com
                MADELYN M. O'BRIEN, ESQUIRE
 5              mobrien@hhklawfirm.com.
           820 O'Keefe Avenue
 6         New Orleans, Louisiana 70113
           (504) 581-4892
 7
 8         LEVIN FISHBEIN SEDRAN & BERMAN
           BY:  SANDRA L. DUGGAN, ESQUIRE
 9              sduggan@lfsblaw.com
           510 Walnut Street
10         Suite 500
           Philadelphia, Pennsylvania 19106
11         (215) 592-1500
12
13         IRPINO LAW FIRM
           BY:  PEARL A. ROBERTSON, ESQUIRE
14              probertson@irpinolaw.com
           2216 Magazine Street
15         New Orleans, Louisiana 70130
           (504) 525-1500
16
17         GAINSBURGH BENJAMIN DAVID MEUNIER &
           WARSHAUER LLC
18         BY:  RACHEL A. STERNLIEB, ESQUIRE
                rsternlieb@gainsben.com
19         2800 Energy Centre
           1100 Poydras Street
20         New Orleans, Louisiana 70163-2800
           (504) 522-2304
21
22         LAMBERT AND NELSON PLC
           BY:  HUGH P. LAMBERT, ESQUIRE
23              hlambert@lambertandnelson.com
           701 Magazine Street
24         New Orleans, Louisiana 70130-3629
           (504) 581-1750
25
```

Confidential - Subject to Further Confidentiality Review

```
 1   A P P E A R A N C E S:
 2   COUNSEL FOR TAISHAN GYPSUM COMPANY:
 3        ALSTON & BIRD LLP
          BY:  BERNARD TAYLOR, ESQUIRE
 4             bernard.taylor@alston.com
              ALIYYA Z. HAQUE, ESQUIRE
 5             aliyya.haque@alston.com
          One Atlantic Center
 6        1201 West Peachtree Street
          Atlanta, Georgia 30309-3424
 7        (404) 881-7000
 8
          ALSTON & BIRD LLP
 9        BY:  HELEN SU, ESQUIRE
               helen.su@alston.com
10        1950 University Avenue
          5th Floor
11        East Palo Alto, California 94303
          (650) 838-2000
12
13        HANGARTNER RYDBERG & TERRELL LLC
          BY:  ALAN DEAN WEINBERGER, ESQUIRE
14             aweinberger@hanrylaw.com
          One Shell Square
15        701 Poydras Street, Suite 310
          New Orleans, Louisiana 70139
16        (504) 522-5690
17
18
19
20
21
22
23
24
25
```

```
 1   A P P E A R A N C E S:
 2   COUNSEL FOR BNBM DEFENDANTS:
 3       DENTONS US LLP
         BY:  DREW W. MARROCCO, ESQUIRE
 4           drew.marrocco@dentons.com
         1301 K Street, N.W.
 5       Suite 600, East Tower
         Washington, D.C. 20005
 6       (202) 408-6400
 7
 8       PHELPS DUNBAR LLP
         BY:  HARRY ROSENBERG, ESQUIRE
 9           harry.rosenberg@phelps.com
         365 Canal Street
10       Suite 2000
         New Orleans, Louisiana 70130-6534
11       (504) 566-1311
12
13   COUNSEL FOR CNBM DEFENDANTS:
14       ORRICK HERRINGTON & SUTCLIFFE LLP
         BY:  ERIC MATTHEW HAIRSTON, ESQUIRE
15           ehairston@orrick.com
         The Orrick Building
16       405 Howard Street
         San Francisco, California 94105
17       (415) 773-5700
18
19       GORDON ARATA McCOLLAM DUPLANTIS & EAGAN LLP
         BY:  EWELL E. EAGAN, JR., ESQUIRE
20           eeagan@gordonarata.com
         201 St. Charles Avenue
21       40th Floor
         New Orleans, Louisiana 70170-4000
22       (504) 582-1111
23
24
25
```

Confidential - Subject to Further Confidentiality Review

```
 1   A P P E A R A N C E S:

 2   COUNSEL FOR THE STATE OF LOUISIANA:

 3        PERKINS COIE LLP

          BY:  DAVID L. BLACK, ESQUIRE

 4             dblack@perkinscoie.com

          1900 Sixteenth Street

 5        Suite 1400

          Denver, Colorado 80202

 6        (303) 291-2400

 7

 8   ALSO PRESENT:

 9        SUNNY WANG, MANDARIN INTERPRETER

10        YAN GAO

11        MARK ANCALADE, VIDEOGRAPHER

12                       — — —

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Confidential - Subject to Further Confidentiality Review

```
 1                          INDEX

                          GANG CHE

 2                      June 4, 2015

 3

 4        PROCEEDINGS                           302

 5

 6   EXAMINATION OF GANG CHE:

 7            BY MR. HERMAN                      308

 8

 9        REPORTER'S CERTIFICATE                 378

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Confidential - Subject to Further Confidentiality Review

```
 1                    DEPOSITION EXHIBITS

                         GANG CHE

 2                     June 4, 2015

 3    NUMBER              DESCRIPTION              MARKED

 4  Exhibit 23   Summary Chart of Directors of        306
                 Defendant Companies w/Backup

 5
    Exhibit 34   Defendants' Percentage of            343
 6               Ownership and Control 2005-2014

 7  Exhibit 42   Violations by Taishan Affiliates     340
                 of the Court's Contempt Order,
 8               Exhibits 1 through 50

 9  Exhibit 43   Violations by Taishan Affiliates     341
                 of the Court's Contempt Order,
10               Exhibits 51 through 131

11  Exhibit 44   Violations by Taishan Affiliates     341
                 of the Court's Contempt Order,
12               Exhibits 132 through 141

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Confidential - Subject to Further Confidentiality Review

```
 1                    PROCEEDINGS

 2             (June 4, 2015 at 9:02 a.m.)

 3             THE VIDEOGRAPHER:  We're now on the

 4      record.  This is Tape 13 to Volume 3 on

 5      June 4th, 2015, and the time is approximately

 6      9:02.  This is the continuation deposition of

 7      Mr. Che Gang.

 8             (Interpreter reminded of her oath.)

 9             (Witness reminded of his oath.)

10             MR. HERMAN:  Good morning, everyone.

11      First of all, as counsel, I want to thank

12      Bernard Taylor, learned counsel, and the

13      attorneys and folks who are with him.  I want to

14      shake the hand of the witness.  Thank you for

15      appearing in the United States.  I want to thank

16      our interpreter, Sunny, and the court reporter,

17      the videographer.

18             We're going to proceed today.  I'm

19      advised by Bernard Taylor, counsel from Alston &

20      Bird, that the witness has an early flight.

21      I've agreed that we can terminate the

22      deposition, I believe counsel advised me at 4:30

23      today.  When I say "terminate," I don't mean

24      end, because we're going to ask the Court to

25      hold it open, and, of course, we'll notify
```

1    Mr. Taylor and will try to arrange suitable

2    dates for the continuation of the deposition.

3         I anticipate now we will need another

4    two days, or possibly three, of either this

5    30(b)(6) witness or a 30(b)(6) witness that

6    Taishan selects; and the number of days will

7    depend on the 30(b)(6) depositions that are now

8    set for CNBM, CNBM Group and BNBM and BNBM

9    Group.  And we may be able, depending on how

10   those depositions go, to change this request or

11   eliminate it.

12        MR. TAYLOR:  Understood.  My

13   understanding doesn't indicate that I agree, but

14   I do understand.

15        MR. HERMAN:  Counsel, I don't agree very

16   much with you and you don't agree very much with

17   me, but I do agree you're a very fine

18   professional and I've enjoyed this.

19        MR. TAYLOR:  Thank you, sir.

20        MR. HERMAN:  For all counsel, counsel

21   for Taishan, counsel for BNBM and BNBMG and

22   counsel for CNBM and CNBMG who are in this

23   courtroom and have been participating, I am

24   going to offer a number of documents today under

25   Federal Rule of Evidence 1006.

```
 1                    It's a chart that condenses a great deal

 2            of information, but the information from which

 3            it is drawn will be attached.  And I'm going to

 4            ask that all exhibits that BNBM, BNBMG, CNBM,

 5            CNBMG and Taishan have been furnished with, that

 6            they continue to bring those exhibits to the

 7            depositions scheduled for the 30(b)(6)

 8            deposition of CNBM, CNBM Group and BNBM and

 9            BNBM Group, so that -- because we will not be

10            providing you with duplicate exhibits.  Once I

11            hand you the exhibits, they're yours, and you'll

12            have to manage them for yourself.

13                    Does everybody understand that?

14                    MR. HAIRSTON:  I understand, Counsel,

15            but may I make one request of you?  I'm actually

16            leaving directly for the airport.  So I

17            understand your proposal.  Would it be okay if I

18            leave the exhibits, actually, with you --

19                    MR. HERMAN:  No.

20                    MR. HAIRSTON:  -- rather than --

21                    MR. HERMAN:  No.

22                    MR. HAIRSTON:  Because if I have no

23            means of --

24                    MR. HERMAN:  The reason I say that, I'm

25            not being unprofessional or discourteous, is, I
```

```
1        start the CNBM deposition tomorrow morning at

2        9:00 o'clock, and I can't move your exhibits to

3        your deposition.

4               MR. ROSENBERG:  Mr. Herman, let me just

5        offer this, as an interloper.  I'm happy to take

6        the documents and deliver them to CNBM's

7        successor counsel for tomorrow, so we can all

8        move forward on positive issues.

9               MR. HERMAN:  Great.  I appreciate that,

10       Mr. Rosenberg.

11              And I understand your situation.

12              MR. HAIRSTON:  Thank you, Counsel.

13              MR. TAYLOR:  Counsel, before you get

14       started, yesterday, your colleague, learned

15       counsel Ms. Duggan --

16              Duggan or Duggan?

17              MS. DUGGAN:  Duggan.

18              MR. TAYLOR:  Duggan.

19              MR. HERMAN:  Ms. Duggan.

20              MR. TAYLOR:  -- Ms. Duggan provided us

21       with Exhibit 7 and the other exhibits attached

22       to it, and allowed us to take them home and

23       review them.  We have reviewed them, and we'll

24       just make a general objection in regards to

25       admissibility and the failure to lay foundation,
```

```
 1        and that's it, in regards to Exhibit 7.

 2                   MR. HERMAN:  Thank you, Counsel.

 3                   Would you please distribute Exhibit 23

 4        to the court reporter, the translator, the

 5        witness and also to counsel for BNBM, BNBMG,

 6        CNBM, CNBMG.

 7                   (T:6/2/15-6/4/15 Exhibit 23 marked.)

 8                   MR. HERMAN:  We offer Exhibit 23 into

 9        evidence, a summary chart, Federal Rule of

10        Evidence 1006 contains the executive directors

11        of Taishan, TTP, BNBM Group, BNBM, CNBM, CNBM

12        Group.

13                   And if you refer to the chart, the names

14        of the individuals on the chart who were

15        executives of these various defendants are Song,

16        Z-H-I-P-I-N-G; Cao, C-A-O, J-I-A-N-G-L-I-N; Wang

17        Bing, W-A-N-G, B-I-N-G; Jia, J-I-A, Tongchun,

18        T-O-N-G-J-U-N; Chang Zhangli, C-H-A-N-G,

19        Z-H-A-N-G-L-I; Chen Yu, C-H-E-N, Y-U; Tao,

20        T-A-O, Zheng, Z-H-E-N-G; Zhao, Z-H-A-O, Yanming,

21        Y-A-N-M-I-N-G; Jia, J-I-A, J-I-A-N-J-U-N; Zhou

22        Changxin -- Zhou, Z-H-O-U, C-H-A-N-G-X-I-N;

23        Zhang Chengon, Z-H-A-N-G, C-H-E-N-G-O-N; Cai,

24        C-A-I, G-U-O-B-I-N; C-U-I, S-H-U-H-O-N-G; Zhou,

25        Z-H-O-U, G-U-O-P-I-N-G; Peng, P-E-N-G, Shiliang,
```

```
 1          S-H-I-L-L-A-N-G; Wang, W-A-N-G, B-A-O-X-L-A-N-G.

 2              And the dates are stated on the -- by

 3          the various names of these individuals, as to

 4          the positions that they held.  Some predate

 5          2005, and they go to the current time.

 6              And there are, in support, 25 tabbed

 7          documents, and these documents were produced

 8          either by BNBM in English and Chinese annual

 9          reports, or come from CNBM, www.hkex.com.hk in

10          English and Chinese, and all are public

11          documents which were caused to be published by

12          BNBM and CNBM.  And we offer them.

13              MR. TAYLOR:  Counsel, we'd like to have

14          an opportunity for Taishan to review the

15          documents to determine if we have any objections

16          in regards to the extent the documents refer to

17          our directors.  I mean, if they accurately

18          reflect our directors, we're not going to make

19          any objection to that portion of them.

20              But we'd like to have an opportunity --

21              MR. HERMAN:  Well, your review

22          objections or admissions are reserved.

23              MR. TAYLOR:  Thank you, sir.

24              MR. HERMAN:  And we have also provided

25          your 30(b)(6) witness with a copy for his
```

Confidential - Subject to Further Confidentiality Review

 1          review.

 2                    MR. TAYLOR:  Thank you, sir.

 3                    MR. MARROCCO:  BNBM and BNBM Group

 4          similarly object at this time, foundation, lack

 5          of predicate for admissibility, and reserve all

 6          objections.

 7                    MR. HAIRSTON:  As do CNBM and CNBM

 8          Group.

 9                         GANG CHE,

10                    having been duly sworn,

11                     testified as follows:

12                         EXAMINATION

13     BY MR. HERMAN:

14          Q     Sir, in connection with your preparation to

15     testify here today as a corporate representative of

16     Taishan, I am going to ask you a number of questions

17     in that capacity.  If you can answer them, please do.

18     If you can't, please indicate for the record that

19     you're unable to answer.

20                    Who provided, for the years 2005

21     through 2014, the financial records of Taishan to

22     BNBM?

23                    MR. TAYLOR:  Object to form.

24                    THE WITNESS:  Please repeat your

25          question.

Confidential - Subject to Further Confidentiality Review

```
 1   BY MR. HERMAN:

 2       Q    From 2005 through 2014, who at Taishan

 3   provided the financial records of Taishan to BNBM?

 4              MR. MARROCCO:  Object to form.

 5       A    Can you specifically explain what you're

 6   referring to when you said "financial records"?

 7   BY MR. HERMAN:

 8       Q    Who provided, from 2005 through 2014, from

 9   Taishan to BNBM Company Inc., financial records of

10   Taishan of profits, losses, guarantees and other types

11   of financial records such as were publicly reported?

12       A    I understand what you are saying as our

13   financial sheet.

14              THE INTERPRETER:  May the interpreter

15        clarify with deponent?

16              (Translation.)

17              THE INTERPRETER:  There's no change in

18        the interpreter's interpretation.

19   BY MR. HERMAN:

20       Q    What's the answer to the question?

21       A    It is our financial department manager,

22   Manager Wang, W-A-N-G, who provided BNBM with our

23   financial sheet.

24       Q    That is Y-A-N-G, Y-A-N-J-U-N?

25       A    Manager Wang, W-A-N-G.
```

Confidential - Subject to Further Confidentiality Review

```
 1        Q      Who is Y-A-N-G, Y-A-N-J-U-N?

 2        A      Yang Yanjun is our director for a certain

 3   period of time.

 4        Q      Was not that individual the financial

 5   controller and manager of Taishan from 2005 through

 6   2014?

 7        A      Who are you referring to when you said "that

 8   individual"?

 9        Q      Y-A-N-G, Y-A-N-J-U-N.

10        A      No.

11        Q      Is it true that Y-A-N-G, Y-A-N-J-U-N was on

12   the board of directors of Taishan in 2014?

13               THE INTERPRETER:  He said, "What year?"

14        2014.

15        A      Yes.

16   BY MR. HERMAN:

17        Q      Is it true that Wang Bing was chairman of

18   the Taishan board of directors from 2009 through 2014?

19        A      Please repeat your question.

20        Q      Yes.

21               Isn't it true that Wang, W-A-N-G,

22   Bing, B-I-N-G, was a member of the board of directors

23   of Taishan and its chairman from 2009 through 2014?

24               MR. TAYLOR:  Object to form.

25        A      No.
```

 1            MR. HERMAN:  What was the answer?

 2            THE INTERPRETER:  No.

 3   BY MR. HERMAN:

 4      Q    Who was chairman of the board of directors

 5   of Taishan from 2009 to 2014?

 6      A    Mr. Jia Tongchun is the chairman of the

 7   board of directors of Taishan.

 8      Q    From 2009 to 2014, through 2014, was Wang

 9   Bing chairman of the board of directors of BNBM?

10      A    I don't know.

11      Q    Is it true that Dong, D-O-N-G, Hui, H-U-I,

12   was accounting manager of Taishan from 2010 through

13   2014?

14      A    Repeat the name.

15      Q    D-O-N-G, H-U-I.

16      A    No.

17      Q    Do you know if Dong Hui was accounting

18   manager of BNBM from 2010 through 2014?

19      A    I don't know.

20      Q    Did you inquire of any employee at Taishan

21   or BNBM -- strike that.

22            Did you inquire of any employee or

23   former employee of Taishan as to who at Taishan

24   provided, in the years 2006 through 2014, the name of

25   individuals who provided financial information about

Confidential - Subject to Further Confidentiality Review

1    Taishan to BNBM, in preparation for your testimony?

2        A    Yes.

3        Q    Who did you make that inquiry of?

4        A    Manager Wang, W-A-N-G, in the financial

5    department.

6        Q    Do you know Yang Yanjun, Y-A-N-G,

7    Y-A-N-J-U-N, in any capacity with Taishan during the

8    years 2005 through 2014?

9        A    During this period of time, Yang Yanjun was

10   the director of Taishan, but as for the specific years

11   and starting from what time, I do not have a clear

12   recollection.

13       Q    During any time from 2005 through 2014, was

14   Yang Yanjun a financial controller or manager of BNBM?

15       A    I don't know.

16       Q    From 2005 through 2014, can you name the

17   outside auditors of the financial records of Taishan?

18            MR. TAYLOR:  Objection to form.

19       A    What are you referring to as for outside

20   auditors?

21   BY MR. HERMAN:

22       Q    In the year 2014, was there a certified

23   public accounting firm who reviewed the records,

24   financial, of Taishan?

25       A    Are you talking about CPA firm?

Confidential - Subject to Further Confidentiality Review

```
1        Q      Yes.

2        A      Yes.

3        Q      What was the name of that firm?

4        A      I don't have a clear recollection.

5        Q      Did you, in preparation for your deposition,

6   interview anyone from that firm?

7        A      No.

8        Q      For the years 2005 through 2013, can you

9   name any -- well, strike that.

10              For the years 2005 through 2013, were

11  there CPA firms that reviewed Taishan's financial

12  records?

13              THE INTERPRETER:  The interpreter needs

14         to clarify with deponent.

15       A      Well, that should be the audit firm that

16  audited the financial record of Taishan.

17              THE INTERPRETER:  Then the interpreter

18         asked the deponent whether it is one firm or

19         more than one firm, because in Chinese, plural

20         and singular cannot be distinguished.  The

21         deponent said, "I don't have a clear

22         recollection on that, but there was, or were,

23         audit firms, or firm."

24  BY MR. HERMAN:

25       Q      From 2005 to 2014, in preparation for your
```

Confidential - Subject to Further Confidentiality Review

1    testimony under oath here, did you interview any

2    employees of the audit firms?

3        A     No.  I have confirmed everything regarding

4    to financial aspects with Manager Wang of Taishan,

5    because he's responsible for all these words.

6        Q     Did you confirm with that gentleman of

7    Taishan the guaranties that BNBM made of Taishan debt

8    from 2009 through 2014?

9              MR. TAYLOR:  Object to form.

10             (Translation.)

11             MR. TAYLOR:  Object to form.

12       A     What are you referring to when you said

13   "guaranties of debt"?

14   BY MR. HERMAN:

15       Q     Guaranties of bank debt that Taishan

16   borrowed from Chinese banks during the period 2009

17   through 2014.

18       A     Which company guaranteed for Taishan?

19       Q     BNBM Company Inc.

20       A     BNBM guaranteed for Taishan's bank loan;

21   however, I do not remember the specific year.

22       Q     Who at --

23             THE INTERPRETER:  The interpreter needs

24        to clarify with deponent.

25             MR. HERMAN:  Oh.  Sure.

 1      A     We should have already provided you with the

 2   guaranty agreement in that regard.

 3   BY MR. HERMAN:

 4      Q     I advise you, as an officer of the court, I

 5   do not have full guarantee documents that show the

 6   actual full guaranties, when the guaranties were made,

 7   the funds delivered and when the guaranties expired or

 8   how they were extinguished.

 9                 So I will ask you:  What employee of

10   Taishan would have those documents from the years 2009

11   to date?

12                 MR. TAYLOR:  Counsel -- I'm sorry.

13                 (Translation.)

14                 MR. TAYLOR:  I don't want to interrupt

15         his answer.  I have -- there are some financial

16         documents that are in the process of going

17         through the state secret review that you will be

18         receiving.  But you don't have them yet, you're

19         absolutely correct.

20                 MR. HERMAN:  Thank you.

21   BY MR. HERMAN:

22      Q     Who at Taishan would have those documents?

23      A     I have collected this part of the documents

24   through Manager Wang of financial department in

25   Taishan.

Confidential - Subject to Further Confidentiality Review

1      Q      Have you compared the documents you gathered

2    with the public documents published by BNBM?

3      A      No.

4      Q      Have you compared the documents you gathered

5    with the documents made public by CNBM?

6      A      No.  Taishan only provided our true

7    documents under the instruction and advice of the

8    attorney and according to the requirements of document

9    production.

10     Q      Are you aware that public documents

11   published by BNBM report the year and amounts of

12   guaranties which BNBM made Taishan?

13     A      When I was preparing as a witness of Taishan

14   for the deposition, under the advice and instruction

15   of the attorney, I have reviewed a lot of documents

16   related to Taishan.  But as for the part of documents

17   you're referring to, I don't have a clear recollection

18   on whether I have reviewed them or not.

19     Q      Were you aware that from 2006 to 2014, that

20   CNBM reported financial transactions with Taishan?

21          MR. HAIRSTON:  Objection.

22     A      I don't have a clear recollection on that.

23   BY MR. HERMAN:

24     Q      Do you have a recollection that CNBM had a

25   public offering in 2006 and that MorganStanley was in

1    charge of that public offering?

2              MR. HAIRSTON:  Objection.

3         A    I don't know.

4    BY MR. HERMAN:

5         Q    Did you review the public offering of -- by

6    CNBM in 2006 for information as it regarded Taishan?

7         A    During my preparation as Taishan's company

8    witness for the deposition, under the advice and

9    instruction of the attorney, I have reviewed a great

10   amount of documents related to Taishan.  But I do not

11   have the specific recollection on what you have just

12   mentioned.

13        Q    Isn't it true that BNBM Company purchased a

14   hundred percent of T-A-I-A-N, capital D-O-N-G-L-I-A-N

15   Investment Trading Company in 2006, which gave BNBM

16   65% ownership of Taishan Gypsum?

17             MR. MARROCCO:  Object to form.

18        A    I know that it was approximately in the year

19   of 2006, but I don't have a clear recollection on the

20   specific year.  I know that BNBM purchased Taian

21   Donglian; therefore, BNBM held 65% of Taishan,

22   directly or indirectly.  But I do not have a clear

23   recollection on the specific year.

24             For accurate information, please refer

25   to the commercial registration form that we have

 1   provided, which accurately reflected such information.

 2   BY MR. HERMAN:

 3       Q      Are you aware that Judge Eldon Fallon of the

 4   Eastern District of Louisiana, this court that we are

 5   in now, required Taishan to produce those documents in

 6   English?

 7               MR. TAYLOR:   Objection to form.

 8       A      All I know is that under the advice and

 9   instruction of the attorney, Taishan had provided its

10   true documents, but I'm not sure as for what version

11   of the documents that was provided.

12   BY MR. HERMAN:

13       Q      Are you aware that the first volume of

14   documents produced by Taishan were only in Chinese?

15       A      What are you referring to when you said

16   "first volume of documents"?

17       Q      The first volume of documents produced to

18   the Plaintiffs' Legal Committee on behalf of 3,500

19   claimants.

20       A      I don't know what you're referring to when

21   you said the "first volume of documents."  However,

22   Taishan had provided our true documents that reflected

23   the truth to you, under the advice and instruction of

24   our attorney.

25       Q      Were those documents given by you to your

1    attorney, or given from you to me?

2            THE INTERPRETER:  The interpreter needs

3        to correct herself for the prior interpretation.

4            (Translation.)

5    A    The information of Taishan was provided to

6    the attorney of Taishan under the supervision and

7    instruction of our attorney, for handling of the

8    matter.

9    BY MR. HERMAN:

10   Q    Is it true that in February 2007, BNBM

11   guaranteed a total working capital loan of

12   ¥378,600,000 for Taishan?

13   A    While I was preparing myself as the company

14   witness for Taishan for the deposition, and under the

15   supervision and instruction of my attorney, I reviewed

16   a lot of documents related to Taishan.  Taishan had

17   also provided documents in relation to the guaranty,

18   but since what you have mentioned was so specific, I

19   do not have a clear recollection on that.

20   Q    This is the third day of your deposition, so

21   I'll ask you now:  Have you made any personal notes,

22   in Chinese or in English, of the documents which you

23   reviewed for preparation of your testimony under oath?

24            MR. TAYLOR:  Make an objection and

25        assert the attorney-client privilege and the

Confidential - Subject to Further Confidentiality Review

```
 1          attorney work product doctrine to any notes the
 2          witness prepared at the request of his lawyers
 3          to assist his lawyers in providing advice to the
 4          client regarding the defense of this case.
 5               I think the witness can say, however,
 6          having made that objection, whether he made
 7          notes.  But if those notes were made at our
 8          instruction, we would object to the witness
 9          testifying about the contents of any of those
10          notes.
11               THE WITNESS:  Should I answer?
12               MR. TAYLOR:  You can answer to that
13          extent.
14               THE WITNESS:  Please repeat your
15          question.
16     BY MR. HERMAN:
17       Q    Did you make notes of documents you reviewed
18     in preparation for your deposition?
19       A    No, I have not made any notes to the
20     documents that I have reviewed because I'm not allowed
21     to look at anything when I'm testifying.  I can only
22     recall from my memory what I know.
23       Q    Before you arrived at your deposition on
24     June 2nd, did you make any notes of documents you
25     reviewed for your deposition?
```

```
 1                    MR. TAYLOR:  I object.  Assert the

 2           attorney-client privilege and the attorney work

 3           product doctrine to any notes the witness

 4           prepared at our instruction for the purpose of

 5           assisting his attorneys in providing advice in

 6           the defense of this litigation.  Any notes other

 7           than those notes, the witness can testify about.

 8      A    No.

 9  BY MR. HERMAN:

10      Q    Did you make notes in preparation of your

11  deposition -- and I don't want to know the content --

12  based upon instructions from Alston & Bird, of

13  documents which you reviewed in preparation of your

14  testimony?

15                    MR. TAYLOR:  Same objection in regards

16           to asserting the attorney-client privilege to

17           any notes he prepared -- and the attorney work

18           product doctrine to any notes the witness

19           prepared at the request of his attorneys to

20           assist his attorneys in providing advice to

21           his -- in our defense of this case.

22                    The witness can state whether or not he

23           made notes, but cannot state what about those

24           notes -- or disclose the contents of those notes

25           regarding his efforts to assist us in defending
```

Confidential - Subject to Further Confidentiality Review

1        this case.

2              And I want to be sure there's -- sorry.

3        I want to be sure there's not a communication

4        glitch here.  I'm saying that he -- even if we

5        asked him to make notes, he can say that he made

6        those notes, but he can't testify about the

7        contents of those notes or what those notes

8        related to.

9              THE WITNESS:  (Speaking Chinese.)

10             MR. TAYLOR:  Yes.

11    A    It depends on your definition of "notes."

12   For example, yesterday, I made some marks on the

13   documents, if you would regard that as notes.  And for

14   sure I did make notes like that.

15   BY MR. HERMAN:

16    Q    Well, let me make sure that you understand

17   what I'm asking.

18             In preparation for your deposition and

19   before June 2nd, 2015, did you, in preparation of your

20   deposition, either by computer, by handwriting, or any

21   other method, make notes of documents which you

22   reviewed?  And I am not asking for the content.  I am

23   only asking if you made such notes.

24             MR. TAYLOR:  And same objection in

25        regards to the contents that he --

 1     A     Yes.

 2  BY MR. HERMAN:

 3     Q     Where are those notes that you made?

 4     A     On some of the documents, just like the

 5  documents you provided me with yesterday and I marked

 6  on those documents.

 7     Q     You marked them before June 2nd, 2015?

 8     A     I made those marks while I was preparing the

 9  documents under the supervision, instruction and

10  advice of my attorney.

11               THE WITNESS:  May I take a break?

12               MR. HERMAN:  One more question.

13               MR. TAYLOR:  Do you need to go to the

14        restroom?

15  BY MR. HERMAN:

16     Q     Where are the documents?

17               MR. TAYLOR:  Can you hold for two more

18        minutes?

19               THE WITNESS:  Just one more question?

20               MR. HERMAN:  Sure, we can break now.

21        I'd like to get an answer to the question, if he

22        can do it.

23  BY MR. HERMAN:

24     Q     Where are the documents now?

25     A     Perhaps they are in the company.

```
 1      Q     In China?

 2      A     In my company in China.

 3            MR. HERMAN:  I'll ask counsel to provide

 4      a privilege log for those documents, indicating

 5      why they're attorney-client privileged.  And,

 6      Counsel, you can do that anytime in the next two

 7      weeks.  I don't find a necessity to make a

 8      motion.

 9            And we are recessed.  Now you may take a

10      recess.

11            THE VIDEOGRAPHER:  This is the end of

12      Tape 13.  We're now off the record at 10:01.

13            (Recess taken, 10:01 a.m. to 10:18 a.m.)

14            THE VIDEOGRAPHER:  This is the beginning

15      of Tape 14.  We're now back on the record.  The

16      time is 10:18.

17 BY MR. HERMAN:

18      Q     Earlier in your testimony, you indicated a

19 Mr. Wang who is a manager of Taishan involved in

20 Taishan's financial records.  Would you, for the

21 translator and the court reporter, please give

22 Mr. Wang's full name.

23      A     Wang Lifeng.  Last name, W-A-N-G, first

24 name, L-I-F-E-N-G.

25      Q     Thank you.
```

Confidential - Subject to Further Confidentiality Review

1          The official government website for

2   China is jsgsj.gov.  Yesterday, you provided

3   Exhibit 37, which is a chart which you made of Taishan

4   subsidiaries.  Do you recall testifying about the

5   chart you made of Taishan subsidiaries?

6          MR. TAYLOR:  Objection to form.

7     A    Do you mean whether you had asked me or not

8   yesterday regarding Taishan's subsidiaries?

9          MR. HERMAN:  Would the court reporter

10       please hand me Exhibit 37.

11  BY MR. HERMAN:

12    Q    I will show you now Exhibit 37.  The cover

13  is an e-mail from Bernard Taylor, Sr. of Alston & Bird

14  to Russ Herman and Lenny Davis, with a list of

15  purported Taishan subsidiaries that you identified

16  yesterday as your work product Exhibit 37.  It is the

17  exhibit you have in your hand now.

18    A    Yes.

19    Q    Where is -- in what city is, or the nearest

20  city to Taishan Gypsum (N-A-N-T-O-N-G) Company,

21  Limited?

22          MR. HERMAN:  Rachel, would you put it up

23       in English and Chinese.

24  BY MR. HERMAN:

25    Q    If you would look at the enlargement, can

Confidential - Subject to Further Confidentiality Review

1    you tell me where Taishan Gypsum (Nantong) Company,

2    Limited is located?

3         A     The address of Taishan Gypsum

4    (Nantong) Company, Limited is No. 288 Shenzhen Road,

5    Binjiang Street, Haimen City, Jiangsu Province.

6         Q     Isn't it true that Taishan, the company that

7    you are appearing for today, owns controlling interest

8    in Taishan Gypsum (Nantong) Company, Limited?

9              THE INTERPRETER:  May the interpreter

10        take a moment to check the word "chronology

11        interest"?

12              MR. HERMAN:  "Controlling interest."

13              MR. TAYLOR:  Objection to form.

14        A     I don't know what do you mean when you said

15    "controlling interest."  I only know that Taishan

16    Gypsum is the shareholder of Taishan Gypsum (Nantong).

17    BY MR. HERMAN:

18        Q     Do you know that Taishan owns a hundred

19    percent of Taishan Gypsum (Nantong)?

20        A     I don't have a clear recollection of that,

21    but Taishan company definitely owns the shares of

22    Taishan Gypsum (Nantong).

23        Q     Isn't it --

24        A     I do not recall the specific number.

25        Q     Isn't it true that Peng Wenlong is currently

```
 1    employed by Taishan Gypsum (Nantong) Company, Limited?

 2        A    No.

 3        Q    Isn't it true that the current position of

 4    Peng Wenlong is as director and general manager of

 5    Taishan Gypsum (Nantong) Company, Limited?

 6        A    No.

 7        Q    Who is the current director and general

 8    manager of Taishan Gypsum (Nantong) Company, Limited?

 9        A    I'm sorry, I do not recall.

10        Q    I invite you before you return, should

11    Judge Fallon of this court require you to return, to

12    look at the official Chinese website jsgsj.gov, which

13    lists Peng Wenlong as director and general manager of

14    Taishan subsidiary Taishan Gypsum (Nantong) Company,

15    Limited.

16        A    What website is that?

17        Q    It is the official --

18        A    Is that Taishan --

19        Q    -- Chinese website.

20        A    I'm sorry, I'm not aware of this website.

21        Q    I invite you, during the luncheon recess, to

22    access that website under Taishan Gypsum

23    (Nantong) Company, Limited, so that you can determine

24    who the current directors, general manager of Taishan

25    Gypsum (Nantong) Company, Limited are today, as listed
```

1    on that website.  And if you're unable to do that

2    during the luncheon recess, then to do it when you get

3    back to China or before you return here.

4        A     First of all, none of the Taishan Company's

5    subsidiary companies has its own website.  Therefore,

6    I do not know whether this website you just mentioned

7    is authentic and authoritative.

8                    I don't know how were you so sure that

9    it is, indeed, the website of Taishan Gypsum (Nantong)

10   Company.

11       Q     I will answer this one question to you.  I

12   celebrate my 50 years graduation from Tulane Law

13   School at this time next year, and in those 50 years

14   as a trial lawyer, I'm often in error, but I'm never

15   in doubt.

16       A     First of all, congratulations for your

17   50 years anniversary.

18       Q     If I get there.  But I thank you.

19       A     You're welcome.

20       Q     Are you aware that on June 15th, 2007, BNBM

21   entered a joint liability guaranty of ¥41 million with

22   Taishan to replace natural gypsum plasterboard with

23   industrial waste gypsum?

24                    THE INTERPRETER:  This is the

25          interpreter speaking.  May I have the correct

```
 1          Chinese translation of "natural gypsum
 2          plasterboard with industrial waste gypsum"?  The
 3          interpreter just literally interpreted word to
 4          word.  But if I have accurate translation of
 5          that, that would be great.
 6                   MR. TAYLOR:  Object to form.
 7                   MR. HERMAN:  I'll ask the question
 8          again.  I'll ask the question again because I
 9          don't speak Chinese, okay, so I can't -- if I
10          could give you an interpretation, I would.
11  BY MR. HERMAN:
12      Q      Are you aware that in June of 2007, BNBM and
13  Taishan entered a joint guaranty for ¥41 million
14  borrowings from China banks?
15      A      While I was prepping as a witness, as
16  Taishan's representative, under the supervision and
17  instruction of my attorney, I have prepared and
18  reviewed a great amount of documents, but I'm not sure
19  I've seen this document.  I really do not recall
20  clearly whether I've seen this document or not.
21                   According to the requirements of
22  document production, Taishan has provided you with
23  relevant documents regarding to bank guaranty.
24      Q      Did you provide them to me or to your
25  counsel?
```

 1      A      I have provided the documents to the

 2  attorney of Taishan under the supervision and

 3  instruction of the attorney, according to the

 4  requirements of documents production.

 5      Q      I would appreciate it if, in your future

 6  answers to this line of questioning, you would

 7  indicate that you provided them to your attorney and

 8  not to me.

 9      A      I'm sorry, I'm just not that professional,

10  because I'm not a lawyer.

11      Q      On February 18th, 2008, are you aware that

12  BNBM guaranteed Taishan's line of credit in the amount

13  of ¥340 million for one year?

14      A      When I was prepping as the Taishan Company's

15  witness, representative, I, under the supervision,

16  instruction and advice of the attorney, have

17  collected, reviewed and --

18              THE INTERPRETER:  The interpreter needs

19         to clarify with deponent.

20      A      -- and provided a great amount of documents.

21  And Taishan Company has provided with -- Taishan's

22  attorney with the documents related to bank guaranty.

23  BY MR. HERMAN:

24      Q      Isn't it true that BNBM guaranteed a credit

25  to Taishan of ¥150 million at the Bank of China in

Confidential - Subject to Further Confidentiality Review

1    March of 2008?

2      A      While I was prepping for testifying as

3    Taishan Company's representative, under the

4    supervision, instruction and advice of the attorney, I

5    have collected, provided and reviewed a large amount

6    of documents.

7              As for the documents related to the

8    bank guaranty of Taishan, we have provided that to our

9    attorney; however, I do not have a clear recollection

10   on the details.

11     Q    Isn't it true that BNBM allowed Taishan, by

12   resolution of BNBM, to give guaranties by Taishan to

13   various Taishan subsidiaries in April 2008?  And I'm

14   going to withdraw it.  I'm going to shorten the

15   question.

16              Isn't it true that in April 2008,

17   Taishan gave guaranties to various Taishan

18   subsidiaries, once they were approved by BNBM?

19              MR. MARROCCO:  Object to form.

20              THE WITNESS:  Repeat that question,

21       please.

22              MR. HERMAN:  Yes.

23   BY MR. HERMAN:

24     Q    Isn't it true in 2008 that there was a

25   resolution by BNBM approving Taishan to give

1    guaranties to Taishan subsidiaries?

2                    MR. MARROCCO:  Object to form.

3        A    Taishan -- Taishan's resolution for any of

4    its subsidiaries is to be made by Taishan's board of

5    directors.

6    BY MR. HERMAN:

7        Q    Isn't it true that BNBM passed resolutions

8    to allow Taishan's board of directors to make

9    guaranties to Taishan subsidiaries?

10                   MR. MARROCCO:  Object to form.

11       A    I don't know.

12   BY MR. HERMAN:

13       Q    Isn't it true that in 2010, BNBM guaranteed

14   to the Bank of China ¥760 million for Taishan?

15                   MR. MARROCCO:  Object to form.

16                   THE WITNESS:  Please repeat your

17        question.

18   BY MR. HERMAN:

19       Q    Isn't it true that BNBM guaranteed

20   ¥760 million line of credit for Taishan at the Bank of

21   China?

22       A    While I was prepping as Taishan Company's

23   representative to testify, under Taishan's attorney's

24   supervision, instruction and advice, I have reviewed,

25   prepared and provided a great amount of documents.

1           As for Taishan's bank guaranty-related

2    documents, they have already been provided to

3    Taishan's attorneys; but as for the details you

4    mentioned, I do not have a clear recollection on

5    those.

6       Q     Is it true that BNBM, after a review,

7    approved Taishan to invest in construction plans in

8    four different cities?

9                MR. MARROCCO:  Object to form.

10               THE WITNESS:  Please repeat your

11          question.

12               MR. HERMAN:  Would you repeat my

13          question back to the translator, please.

14               THE INTERPRETER:  The interpreter will

15          repeat the question.

16               MR. HERMAN:  Okay.

17               (Translation.)

18      A     It is Taishan Company's board of directors

19   which makes the decision on where to invest in the

20   construction plans.

21               THE INTERPRETER:  Interpreter needs to

22          clarify with deponent.

23   BY MR. HERMAN:

24      Q     Isn't it true that --

25               THE INTERPRETER:  Just a second.

```
 1              (Translation.)

 2      A     Please confirm what you just said,

 3   "construction plans," as referring to Taishan's

 4   constructing of its subsidiary companies.

 5   BY MR. HERMAN:

 6      Q     I'm going to repeat again, because I don't

 7   think my question -- I either misstated or you did not

 8   understand, so I'm going to ask it again.

 9              On February 22nd -- on February 22nd,

10   2011, didn't BNBM review and approve Taishan's

11   investment in construction plans in four different

12   cities?

13              MR. MARROCCO:  Objection to form.

14              MR. TAYLOR:  Object to form.

15      A     I don't understand what you mean by

16   "construction plans."

17   BY MR. HERMAN:

18      Q     Okay.  So you can neither answer yes, no, or

19   you don't know, or you don't understand; is that

20   correct?

21      A     I don't understand what you said by

22   "construction plans."  Do you mean establishing

23   subsidiaries?

24      Q     I'm going to ask another question.

25              On March 17th, 2011, isn't it true
```

Confidential - Subject to Further Confidentiality Review

1    that BNBM guaranteed and increased Taishan's line of

2    credit to ¥900 million?

3                    MR. MARROCCO:  Object to form.

4        A    While I was prepping for my testimony as

5    Taishan Company's representative, under the

6    instruction, advice and supervision of Taishan's

7    attorneys, we have provided and reviewed a large

8    amount of documents related to Taishan.

9                    We have provided documents related to

10   Taishan's bank guaranty to Taishan's attorney, but I

11   do not have a clear recollection on the details.

12   BY MR. HERMAN:

13       Q    Isn't it true that on April 16, 2014, BNBM

14   proposed to guarantee ¥1 billion of Taishan on a line

15   of credit to meet the needs of normal production?

16                   MR. MARROCCO:  Object to form.

17                   MR. TAYLOR:  Objection to form.

18       A    While I was prepping as the witness

19   representing Taishan Company, I, under the

20   instruction, advice and supervision of Taishan's

21   attorney, have prepared, provided and reviewed a great

22   amount of documents related to Taishan.

23                   As for the bank guaranty-related

24   information and documents of Taishan, Taishan has

25   already provided to Taishan's attorneys, but I do not

1    have a clear recollection on the details.

2    BY MR. HERMAN:

3        Q    On March 13th, 2014, isn't it true that CNBM

4    approved an increase in shares to fund the various

5    construction projects and pay back bank loans?

6                    MR. HAIRSTON:  Objection.

7                    THE WITNESS:  Please repeat your

8            question.  I don't quite understand.

9                    THE INTERPRETER:  The interpreter can

10           repeat the question.

11                   MR. HERMAN:  I'll ask the interpreter.

12                   (Translation.)

13       A    This is a matter of CN -- this is a matter

14   of BNBM, which I have no idea.

15                   THE INTERPRETER:  The interpreter just

16           asked the deponent did he say BNBM.  The

17           deponent said, "Did you not say BNBM before?"

18                   MR. HERMAN:  I'll ask the interpreter

19           and the court reporter to take down the

20           following four names, which I'll spell in

21           English, and which appear in the public

22           documents of BNBM Plc, both in English and

23           Chinese, as follows:

24                   Guangxi, G-U-A-N-G-X-I; L-A-I-B-I-N;

25           H-U-B-E-I; X-I-A-N-G-Y-A-N-G.

```
 1    BY MR. HERMAN:

 2        Q     Isn't it true that on August 18th, 2014,

 3    BNBM approved Taishan to invest in gypsum board

 4    production lines at Guangxi, Laibin, Hubei and

 5    Xiangyang?

 6                   MR. MARROCCO:  Objection.

 7                   THE WITNESS:  Please ask your question

 8          again.

 9                   MR. HERMAN:  I'll ask the court reporter

10          to read the question back -- I'm sorry, the

11          translator.  Excuse me.  I'm sorry.  If you

12          would read it back.

13                   (Translation.)

14        A     It is Taishan's board of directors' decision

15    as to where Taishan would invest in its subsidiaries.

16    BY MR. HERMAN:

17        Q     To your knowledge, as the corporate

18    representative, did Taishan's board approve in 2014,

19    in August, lines of production of gypsum board in

20    those four cities?

21        A     As Taishan Company's representative, while I

22    was prepping for my testimony, under the instruction,

23    supervision and advice of my attorney, I have

24    prepared, reviewed and provided a great amount of

25    documents.
```

1                    Among those documents, there should be

2    documents related to the resolutions of the board of

3    directors of Taishan, but I do not remember the

4    details as you have mentioned.  Taishan had provided

5    Taishan's documents to Taishan's attorney.

6        Q    Sir, if you know, isn't it true that before

7    Taishan's board of directors voted to approve the four

8    construction lines, BNBM had to issue its approval for

9    the Taishan board of directors to vote on that issue?

10                   MR. MARROCCO:  Object to form.

11                   MR. TAYLOR:  Objection to form.

12       A    Taishan Company's own resolution is decided

13   by Taishan's own board of directors.

14                   MR. HERMAN:  I'm going to ask the court

15        reporter to repeat my question because your

16        answer, in my view, did not respond to the

17        question that I asked.

18                   (Translation.)

19                   MR. MARROCCO:  Same objection.

20       A    I do not know, because all the decisions of

21   Taishan were made by Taishan's board of directors.

22                   MR. HERMAN:  I understand that a request

23        has been made to stop early.  We had a

24        ten-minute break before.

25                   Counsel, if you or the witness would

1          like to break now, until 10:20, we can take

2          another ten-minute break and then resume.

3                    MR. TAYLOR:  Can I?

4                    MR. HERMAN:  Sure.

5                    (Conference out of the hearing of the

6                    reporter between Mr. Taylor and the

7                    witness.)

8                    THE WITNESS:  Yes.

9                    MR. HERMAN:  Okay.  We'll break until

10         10:20.  I think it's now ten after -- I'm sorry.

11                   MR. TAYLOR:  11:20.

12                   MR. HERMAN:  11:20.  It's now 11:10.

13         And I apologize for trying to turn the clock

14         back.

15                   MR. TAYLOR:  That's all right.

16                   THE VIDEOGRAPHER:  This is the end of

17         Tape 14.  We're now off the record at 11:09.

18                   (Recess taken, 11:09 a.m. to 11:27 a.m.)

19                   THE VIDEOGRAPHER:  This is the beginning

20         of Tape 15.  We're now back on the record.  The

21         time is 11:27.

22                   MR. HERMAN:  Pursuant to Federal Rule of

23         Evidence 1006, 1-0-0-6, I deliver to counsel --

24         we can't go on the record -- I deliver to

25         counsel for BNBM and BNBMG and counsel for CNBM

```
 1         and CNBMG a condensed version of Exhibit 42 in

 2         three binders, Exhibit 1 through Exhibit 141 in

 3         Volume 3 -- strike it all.

 4              Pursuant to Federal Rule of Evidence

 5         1006, I deliver Exhibit 42 in three volumes to

 6         counsel for BNBM, BNBMG, CNBM, CNBMG and

 7         Taishan -- strike it.  I misidentified, and I

 8         apologize.

 9              Pursuant to rule -- Federal Rule of

10         Evidence 1006, I offer a chart titled

11         "Violations by Taishan Affiliates of the Court's

12         Contempt Order," Exhibits 1 through 50, binder 1

13         of 3, identified as Exhibit 42.  I state for the

14         record that there are depositions of deponents

15         within Exhibit 42 in which all defendants had an

16         attorney present to represent their interest.

17              And I deliver Exhibit 42 to all counsel

18         for defendants, including BNBM, BNBM Group,

19         CNBM, CNBM Group and Taishan.

20              (T:6/2/15-6/4/15 Exhibit 42 marked.)

21              MR. HERMAN:  As part of the summary

22         chart, I offer "Violations by Taishan Affiliates

23         of the Court's Contempt Order," Exhibits 51

24         through 131, binder 2 of 3, Exhibit 43.

25              And I state for the record that there
```

```
 1          are depositions included and that every party

 2          defendant had an attorney present at those

 3          depositions.

 4                  (T:6/2/15-6/4/15 Exhibit 43 marked.)

 5                  MR. HERMAN:  That Exhibit 43 has now

 6          been delivered to counsel for Taishan, counsel

 7          for CNBM, CNBM Group, and BNBM and BNBM Group.

 8                  And, again, we will offer, under Federal

 9          Rule of Evidence 1006, binder 3 of 3, titled

10          "Violations by Taishan Affiliates of the Court's

11          Contempt Order," Exhibits 132 through 141.

12                  And Exhibit 44, binder 3 of 3, contains

13          depositions at which Taishan, BNBM, BNBM Group,

14          CNBM, CNBM Group were represented by counsel.

15                  (T:6/2/15-6/4/15 Exhibit 44 marked.)

16                  MR. HERMAN:  And Exhibit 44 has been

17          delivered to Taishan's counsel, to BNBM and BNBM

18          Group's counsel, to CNBM and CNBM Group's

19          counsel.  They're all present in the courtroom.

20                  Again, I remind them that we will not

21          reproduce copies of these for the remaining

22          30(b)(6) depositions, and should you wish, you

23          should have them at the depositions.

24                  I do intend to ask questions regarding

25          all of the backup to the exhibit FRE 1006 charts
```

1      that have been identified and introduced for the

2      record.

3             I also want to indicate that in every

4      FRE 1006 exhibit, the original backup for each

5      of those exhibits is contained with the chart

6      that condenses those exhibits.

7             We've also delivered Exhibits 42,

8      Volume 1; 43, Volume 2; 44, Volume 3 to the

9      court reporter.

10            We will hopefully be able to provide you

11     empty boxes, should you desire them, before you

12     leave today.  I just don't know how many empty

13     boxes that we have here.  But I'm going to try

14     to provide you some boxes.

15            MR. TAYLOR:  That would be helpful.

16            MR. HERMAN:  And I would disregard

17     whatever labels are on there, because they may

18     be labeled incorrectly.  You'll have to label

19     them yourself.

20            At this point, we are going to provide

21     counsel for BNBM and BNBMG who are in the

22     courtroom, and to counsel for CNBM and CNBMG who

23     are in the courtroom, and to counsel for

24     Taishan, and to the translator and the witness

25     Exhibit 34, titled "Defendants' Percentage of

1           Ownership and Control 2005 to 2014."

2                  (T:6/2/15-6/4/15 Exhibit 34 marked.)

3                  MR. HERMAN:  I am further going to

4           identify Exhibit 34 as follows.  In Exhibit 34,

5           in front of the backup material for 2005 is a

6           chart that details the backup material, and it

7           also indicates the public documents of CNBM and

8           BNBM from their annual reports from which the

9           information was drawn.

10                 For the year 2006, there is a chart

11          indicating all backup material which is

12          furnished and cross-referenced to the 2006 CNBM

13          annual report and the 2006 BNBM annual report,

14          both of which were published in English and

15          Chinese by the defendants, BNBM and CNBM, and

16          are public documents.

17                 For the year 2007 in Exhibit 34, the

18          first documents are charts in three pages that

19          index the actual material from CNBM annual

20          reports and BNBM annual reports for the years

21          2007.

22                 For the years 2008, Exhibit 34 contains

23          three pages detailing the public documents of

24          BNBM and CNBM and the backup material that goes

25          with those charts.

1           For the year 2010 -- 2009, there's a

2       chart, three pages long, that shows the

3       documents of ownership as published in the

4       annual reports publicly by CNBM and BNBM, and

5       behind those three pages of charts are the

6       documents that the charts refer to, public

7       documents, published by BNBM and CNBM.

8           I might add that for each document in

9       English in Exhibit 34, it is followed by a

10      document in Chinese.

11          For the year 2010 in Exhibit 34 are

12      three page -- four pages of a chart that lists

13      the public documents published by BNBM and CNBM

14      on public websites, and the backup material from

15      those documents in both English and Chinese.

16          In Exhibit 34, for the year 2011, there

17      is a four-page chart that details the 2011

18      public reports of CNBM and BNBM, and behind them

19      are the original source material -- and when I

20      say "original," I mean from the public documents

21      caused to be published by CNBM and BNBM -- in

22      both English and Chinese.

23          For the year 2012 in Exhibit 34, you

24      will find a four-page chart detailing the

25      published public documents from CNBM and BNBM's

1        annual report, and behind those charts are the

2        documents in English and Chinese that the chart

3        refers to.

4            In Exhibit 2- -- excuse me, 34 for the

5        year 2013, you will find a chart which is three

6        pages, which details for BNBM and CNBM their

7        2013 published and public reports, annual

8        reports, and behind the chart are the documents

9        referred to in the chart as published by BNBM

10       and CNBM.

11          And for the year 2014 in Exhibit 34, you

12       will find a three-page chart detailing the 2014

13       CNBM annual report, the BNBM annual report, the

14       2006 CNBM global offering report. And behind

15       that chart, in Chinese and in English, are the

16       documents referred to in the chart as published

17       publicly by CNBM, BNBM, and MorganStanley on

18       behalf of CNBM.

19          Therefore, having identified and

20       furnished counsel for all defendants Exhibit 34,

21       we offer Exhibit 34 as Federal Rule of

22       Evidence 1006, both the individual pages and the

23       chart summarizing defendants' percentage of

24       ownership and control for the years 2005 through

25       2014.

```
 1              MR. HAIRSTON:  Counsel, just to confirm,
 2        we'd like to reserve all objections until such
 3        time as we've had a chance to review and analyze
 4        these materials.
 5              MR. HERMAN:  That objection is made on
 6        behalf of CNBM and CNBM Group?
 7              MR. HAIRSTON:  Yes, sir.
 8              MR. HERMAN:  Does BNBM and BNBM Group
 9        have the same objection?
10              MR. MARROCCO:  Yes, we object.  At this
11        time, we've just received all these notebooks --
12              MR. HERMAN:  And Taishan has the same
13        objection?
14              MR. TAYLOR:  Yes.
15              MR. HERMAN:  In view of the 4:30
16        request, I want to start the lunch hour early,
17        if that's permissible, but limit it to a half
18        hour at this time, if that's permissible.
19              MR. TAYLOR:  Well, my concern is that
20        we're -- someone's -- it's a logistical issue.
21        Someone's running off to get the food now, and I
22        don't know --
23              MR. HERMAN:  All right.  Whenever you
24        want to break, Counsel, you let me know.
25              MR. TAYLOR:  How about noon?
```

```
 1                    MR. HERMAN:  We can break at noon.
 2          That's fine.
 3                    MR. TAYLOR:  Okay.  Good.  Thank you.
 4                    MR. HERMAN:  How long would you like to
 5          break at noon?
 6                    MR. TAYLOR:  Half an hour would be
 7          great, so we can keep going.
 8                    MR. HERMAN:  So we'll break at noon,
 9          we'll resume at 12:30.
10                    MR. TAYLOR:  All right.  Thank you.
11                    MR. HERMAN:  Somebody watch the clock.
12                    I'd like to ask the videographer how
13          much time we have left on the tape.
14                    THE VIDEOGRAPHER:  62 minutes.
15                    MR. HERMAN:  Okay.  Thank you.
16    BY MR. HERMAN:
17        Q     Are you aware that in 2005, BNBM published
18    publicly that the relationship between BNBM and the
19    actual controller, China National Building Materials
20    Group Corporation, in terms of property ownership and
21    control, was CNBM owning 60.33% of BNBM?
22                    MR. MARROCCO:  Object to form.
23        A     I do not know.
24    BY MR. HERMAN:
25        Q     Are you aware that in 2005, BNBM, in
```

Confidential - Subject to Further Confidentiality Review

1    April 2005, through a capital increase, became the

2    controlling shareholder of Shandong Taihe?

3                    MR. MARROCCO:  Object to form.

4                    THE WITNESS:  Please repeat the

5          question.

6                    MR. HERMAN:  Would the court reporter --

7          the translator, excuse me, would you please

8          repeat the question.

9                    THE INTERPRETER:  Of course.

10                    (Translation.)

11      A     I know that in the year 2005, through

12    increasing of capital, BNBM held 42% of the shares of

13    Shandong Taihe Dongxing, D-O-N-G-X-I-N -- excuse me,

14    D-O-N-G-X-I-N-G.

15    BY MR. HERMAN:

16      Q     Are you aware that in 2005, BNBM published

17    the following:  Beijing New Building Material

18    Group Company, Limited -- start over.

19                    Are you aware that in 2005, BNBM

20    published publicly that Beijing New Building Material

21    Group Company, Limited, the original controlling

22    shareholder of BNBM, would transfer 60.33% equity held

23    by BNBM Group in BM (34,700,000,000 shares) to China

24    National Building Materials Group Corporation, CNBM

25    Group, previously known as China National Building

```
 1   Material and Equipment Import & Export Company,

 2   without compensation?

 3                THE INTERPRETER:  May the interpreter

 4        ask counsel to clarify whether the counsel said

 5        30 billion or 34 billion?

 6                MR. HERMAN:  34,700,000,000.

 7                THE INTERPRETER:  Thank you.

 8                (Translation.)

 9                THE INTERPRETER:  May the interpreter

10        ask the counsel the definition of

11        "compensation"?

12                MR. HERMAN:  Without paying anything of

13        value.

14                (Translation.)

15                MR. MARROCCO:  Object to form.

16                MR. TAYLOR:  Objection to form.

17     A    I do not know.

18   BY MR. HERMAN:

19     Q    Did you know that in 2005, BNBM publicly

20   published that CNBM Group became the controlling

21   shareholder of BNBM?

22                MR. MARROCCO:  Object to form.

23                MR. HAIRSTON:  Objection.

24     A    I do not know.

25   BY MR. HERMAN:
```

Confidential - Subject to Further Confidentiality Review

1     Q     At any time prior to June 2nd, 2015, when

2  you appeared under oath in this courtroom for

3  deposition, did you understand, or did anyone advise

4  you, as to the legal meaning of "alter ego"?

5              MR. TAYLOR:  Objection to form.

6              THE WITNESS:  Please repeat.  I did not

7         quite understand.

8              MR. HERMAN:  I'll ask the translator to

9         repeat the question.

10              (Translation.)

11     A     No.

12  BY MR. HERMAN:

13     Q     Isn't it true that you did not make, in

14  preparation for your testimony as a Taishan corporate

15  witness, an investigation of BNBM and the control of

16  BNBM by any other defendant?

17              MR. TAYLOR:  Objection to form.

18              THE WITNESS:  Repeat the question.

19              MR. HERMAN:  I'll repeat it.  I'll

20         rephrase it.  It may be more -- maybe I'll do a

21         better job.

22  BY MR. HERMAN:

23     Q     Isn't it true -- isn't it true that you did

24  not undertake, as the corporate representative of

25  Taishan, to determine who controlled BNBM?

 1            MR. MARROCCO:  Object to form.

 2            MR. TAYLOR:  Objection to form.

 3      A     As the Taishan Company's witness,

 4   representative, while I was preparing for the

 5   testimony, under Taishan attorney's supervision and

 6   instruction, I've reviewed a great amount of documents

 7   related to Taishan, as well as confirmed a great

 8   amount of information related to Taishan.

 9               I have investigated and confirmed that

10   CNBMG is the shareholder of CNBM Inc. and CNBM Inc. is

11   a shareholder of BNBM, and BNBM is a shareholder of

12   Taishan Gypsum.  I know that BNBM Inc. directly or

13   indirectly owns 65% of Taishan Gypsum, but as for the

14   specific shares they own, I'm not sure.

15            MR. HERMAN:  (Indicating.)

16            MR. TAYLOR:  Yes.

17            MR. HERMAN:  Thank you.  We will recess

18        from five after 12:00 to 12:35.

19            THE VIDEOGRAPHER:  This is the end of

20        Tape 15.  We're now off the record at 12:02.

21               (Recess taken, 12:02 p.m. to 12:44 p.m.)

22            THE VIDEOGRAPHER:  This is the beginning

23        of Tape 16.  We're now back on the record.  The

24        time is 12:44.

25   BY MR. HERMAN:

1      Q      Did you know, or were you aware, that BNBM,

2    in 2005, controlled Shandong Taihe

3    D-O-N-G-X-I-N Company, Limited through investment, and

4    thus indirectly controlled the shares of seven other

5    companies?

6                  MR. MARROCCO:  Object to form.

7                  MR. TAYLOR:  Objection to form.

8      A      I know that in about 2005, through capital

9    increase, BNBM held 42% of Shandong Taihe Dongxin.  I

10   don't know the rest.

11   BY MR. HERMAN:

12     Q      In Chinese business culture, what is the

13   meaning of "grandson company"?

14     A      I don't know.

15     Q      Are you aware that in 2006, that China

16   National Building Material Company, Limited entered a

17   joint and several liability guaranty with BNBM, which

18   was applied and received by the BNBM-owned company

19   J-I-A-N-G-Y-N Taishan Gypsum Building

20   Materials Company, Limited, for which the BNBM-owned

21   subsidiary, Shandong Taihe Dongxin, D-O-N-G-X-I-N,

22   Company, provided a joint guaranty?

23                  MR. TAYLOR:  Objection to form.

24                  MR. HAIRSTON:  Objection.

25                  THE WITNESS:  Please repeat your

```
 1          question.  I don't quite understand.

 2                    MR. HERMAN:  Would the court reporter

 3          repeat the question -- I'm sorry, the

 4          translator.

 5                    THE INTERPRETER:  Yes, of course.

 6                    (Translation.)

 7     A     I do not know.

 8  BY MR. HERMAN:

 9     Q     Are you familiar with the term in the public

10  published annual reports, accounting reports, of BNBM

11  and CNBM -- with the term "related parties with

12  control relationship"?

13     A     I do not know.

14     Q     In 2007, BNBM reported in the shareholder's

15  profile a statement of controlling shareholder as

16  follows, "Controlling shareholder, China National

17  Building Material Company, Limited, holds 52.40% of

18  the company's shares."

19                    Have you ever been familiar with that

20  statement made in a public document by BNBM?

21                    MR. TAYLOR:  Object to the form.

22     A     I do not know.

23  BY MR. HERMAN:

24     Q     Are you familiar with a public report,

25  published by BNBM for the year 2007, that indicated,
```

```
 1    quote, "BNBM, excluding the H-A-I-N-A-N Branch Company

 2    and subsidiaries controlled by the company included

 3    Taishan Gypsum Company, Limited, a subsidiary

 4    controlled" -- I'm going to restate the question,

 5    because I've misstated it.

 6              Are you aware that in 2007, BNBM

 7    published publicly that it controlled Taishan Gypsum

 8    Company, Limited, and that Taishan Gypsum Company,

 9    Limited controlled T-A-I-A-N Paperback Plasterboard

10    Company, Limited, a subsidiary?

11              MR. MARROCCO:  Object to form.

12              MR. TAYLOR:  Objection to form.

13              THE INTERPRETER:  May the interpreter

14         have the Chinese accurate translation for "Taian

15         Paperback Plasterboard Company, Limited"?

16              MR. HERMAN:  I can spell it.

17         T-A-I-S-H-A-N Gypsum Company, Limited and its

18         subsidiary, Taishan Plaster Building Materials

19         Company, Limited, also known as H-E-N-G-S-H-U-I

20         Taishan Plaster Building Materials Company.

21              THE INTERPRETER:  Thank you, but the

22         interpreter would like to have the correct

23         Chinese translation of "Taishan Taihe Paperback

24         Plasterboard Company, Limited," if you have one.

25         If not, I'll just do a literal translation,
```

Confidential - Subject to Further Confidentiality Review

1          which is probably not the accurate translation.

2                    MR. HERMAN:  Well, if it's not accurate,

3          then we can move on.

4                    I'll just indicate for the record that

5          under proper attorney conduct, an attorney can't

6          ask a question, or shouldn't ask a question,

7          unless the attorney has proof of same, and I am

8          going to provide the document which was

9          published by BNBM publicly, and at some point,

10         if the witness is -- comes back to finish his

11         testimony, he may, in the interim -- and that's

12         assuming -- it's up to Judge Fallon, whether the

13         witness comes back.

14                   But assuming that he does come back, in

15         the interim, I'm going to refer him to BNBMPLC

16         document 0000834 at page 113.

17    BY MR. HERMAN:

18      Q    New question:  Are you aware that in 2007,

19    more than four mortgage contracts were approved by

20    BNBM and stated that the mortgage contracts were by

21    its controlled subsidiary, Taishan Gypsum?

22                   MR. MARROCCO:  Object to form.

23                   MR. TAYLOR:  Objection to form.

24                   THE WITNESS:  Repeat the question.

25                   MR. HERMAN:  I'll ask the translator to

1        please repeat the question.

2                    (Translation.)

3        A        I do not know.

4    BY MR. HERMAN:

5        Q        Did you make a search for mortgage contracts

6    executed by Taishan or guaranteed by Taishan when you

7    searched for guaranties by Taishan?

8                    THE INTERPRETER:  May the interpreter

9            have the definition of "mortgage" here,

10           "mortgage" as a property mortgage or "mortgage"

11           as a loan?  Because in Chinese, there are two

12           different specific translations.

13                   MR. HERMAN:  These are mortgages of

14           property, according to BNBM published reports.

15                   (Translation.)

16       A        During the process of my preparation as

17   Taishan's representative and witness, under the

18   supervision, instruction and advice of the attorney, I

19   have collected a great amount of documents related to

20   Taishan, including those documents regarding the bank

21   loans and guaranties of Taishan.  I'm not sure whether

22   you are referring to this part of the documents.

23   BY MR. HERMAN:

24       Q        I'll ask another question.

25                   Are you aware that in 2007, BNBM

1    published publicly that Taishan Gypsum Company, a

2    controlled subsidiary of BNBM, mortgaged many sets of

3    machinery and equipment?

4              MR. TAYLOR:  Objection to form.

5              MR. MARROCCO:  Object to form.

6       A    During the process of preparing to be the

7    witness and representative of Taishan, under the

8    supervision, instruction and advice of the attorney, I

9    have reviewed a great amount of documents related to

10   Taishan, but I do not have a clear recollection of the

11   statement you just said.

12   BY MR. HERMAN:

13      Q    Are you aware that in a public document

14   released by BNBM, that BNBM stated its controlling

15   shareholder was China National Building Material

16   Company, Limited?

17             MR. MARROCCO:  Object to form.

18             MR. TAYLOR:  Objection to form.

19             MR. HAIRSTON:  Objection.

20      A    I do not know.

21   BY MR. HERMAN:

22      Q    Are you aware that in 2008, BNBM published

23   publicly in Historical Evolution Information that BNBM

24   Group Company, Limited, the originally -- or the

25   original controlling shareholder of BNBM transferred

Confidential - Subject to Further Confidentiality Review

1    60.33% equity held by it in BNBM to China National

2    Building Materials Group Corporation without

3    compensation?

4              MR. MARROCCO:  Object to form.

5       A    I don't know.

6    BY MR. HERMAN:

7       Q    Are you aware that in 2009, BNBM reported

8    publicly that the actual controller of BNBM was China

9    National Building Materials Group Corporation?

10      A    I don't know.

11      Q    Are you aware that BNBM reported publicly in

12   2010 that the controlling shareholder of BNBM was

13   China National Building Material Company, Limited?

14             MR. MARROCCO:  Object to form.

15      A    I don't know.

16   BY MR. HERMAN:

17      Q    Were you aware that in the year 2012, BNBM

18   reported publicly, as to the lawsuits before

19   Judge Fallon, that BNBM and Taishan Gypsum had

20   employed a famous American law firm as legal advisor?

21             MR. MARROCCO:  Object to form.

22      A    As a witness and representative of Taishan,

23   while I was prepping for the deposition, under the

24   supervision, instruction and advice of Taishan's

25   attorney, I have reviewed a great amount of documents

1    related to Taishan.  I don't have a clear recollection

2    of whether this document exists or not.

3    BY MR. HERMAN:

4        Q    Are you aware that on May 28, 2010, BNBM

5    reported publicly that BNBM was served a summons from

6    the U.S. concerning the litigation in relation to the

7    use of Chinese gypsum boards?

8                    MR. MARROCCO:  Object to form.

9                    THE WITNESS:  Can you repeat?

10                   THE INTERPRETER:  The interpreter will

11        repeat.

12                   (Translation.)

13       A    I don't know.

14   BY MR. HERMAN:

15       Q    Did Taishan ever report to CNBM that it had

16   been served with summons in a lawsuit from the United

17   States of America regarding gypsum board manufactured

18   by Taishan or TTP?

19                   MR. HAIRSTON:  Objection.

20                   THE WITNESS:  Can you repeat?

21                   THE INTERPRETER:  The interpreter will

22        repeat.

23                   (Translation.)

24       A    No.

25   BY MR. HERMAN:

Confidential - Subject to Further Confidentiality Review

1    Q    As a corporate representative of Taishan

2  under oath here, can you tell us why Taishan withdrew

3  from the litigation in this courtroom before the

4  Germano default?

5              MR. TAYLOR:  Objection to form.

6    A    First of all, Taishan believes its products

7  have no quality issues.

8              Second of all, Taishan believes that

9  the judgment is not matching the facts, and after

10  Taishan paid great effort and cooperated with the

11  Court, however, it was still ruled unfairly against

12  Taishan.

13             Number three -- number three, Taishan

14  believes the ruling amount has been blown out of

15  proportion; therefore, Taishan withdrew from the

16  litigation.

17  BY MR. HERMAN:

18    Q    Isn't it true that Knauf, a German company

19  that made gypsum board in China, mined from the same

20  mine that Taishan and TPP used, notified Taishan, CNBM

21  and BNBM of the litigation and offered and requested

22  that the Chinese manufacturers enter the litigation

23  and cooperate with Knauf Company?

24             MR. TAYLOR:  Objection to form.

25             MR. HAIRSTON:  Objection.

Confidential - Subject to Further Confidentiality Review

1     A     I do not know.

2  BY MR. HERMAN:

3     Q     After the United States Fifth Circuit Court

4  of Appeals, a federal appellate court, ruled that

5  there was jurisdiction of Taishan in this court, why

6  did Taishan again withdraw from the litigation?

7               MR. TAYLOR:  Objection to form.

8               THE WITNESS:  Please repeat.

9               THE INTERPRETER:  The interpreter will

10       repeat the question.

11               (Translation.)

12     A     You used the word "again."  The withdrawing

13  from the litigation this time, is it any difference

14  from the prior mentioning of the withdrawing of

15  litigation?

16  BY MR. HERMAN:

17     Q     Sir, that's a question you have to answer.

18  Is it different?

19     A     I only remember that Taishan has withdrawn

20  from the litigation only once, so I do not know what

21  do you mean when you said "again."

22     Q     Why did Taishan refuse to attend the

23  judgment debtor rule ordered by Judge Eldon Fallon?

24               THE WITNESS:  Please repeat.

25               THE INTERPRETER:  The interpreter will

Confidential - Subject to Further Confidentiality Review

1        repeat.

2                (Translation.)

3      A     I'm sorry, your question is very

4    professional.  The withdrawal you're referring here,

5    is it the same withdrawal as you mentioned earlier

6    regarding to Taishan's withdrawal of the litigation?

7                MR. HERMAN:  I'll reask the question.

8    BY MR. HERMAN:

9      Q     Why did Taishan not show up for a judgment

10   debtor rule in this courtroom after Judge Eldon Fallon

11   of this court directed Taishan to show up?

12     A     First of all, Taishan believes that its

13   products have no quality issues.

14                Second of all, Taishan believes the

15   jurisdiction ruling does not match the facts, after

16   much effort and cooperation from Taishan, but Taishan

17   was unfairly treated.

18                Number three, Taishan believes the

19   ruling amounts has been blown out of proportion

20   tremendously.

21     Q     Are you contending today under oath, as a

22   representative of Taishan, that Judge Eldon Fallon of

23   this court treated Taishan unfairly?

24                MR. TAYLOR:  Objection to form.

25                MR. MARROCCO:  Objection.

 1      A     We, Taishan, respect Judge Fallon, as well

 2   as the Court.  However, Taishan still believes that

 3   the Court does not have jurisdiction with Taishan.

 4   BY MR. HERMAN:

 5      Q     Sir, as the corporate representative of

 6   Taishan, didn't you testify, and hasn't Taishan so

 7   recorded, that the Courts of the United States of

 8   America treated Taishan unfairly?

 9               MR. TAYLOR:  Objection to form.

10      A     I have never said that Judge Fallon had

11   treated Taishan unfairly, nor have I said the Court

12   had treated Taishan unfairly.  I was only stating that

13   after Taishan had paid much effort and cooperation,

14   but the ruling was still not matching the facts.

15   BY MR. HERMAN:

16      Q     Sir, isn't it true --

17      A     We believe the ruling --

18               THE INTERPRETER:  The interpreter needs

19         to clarify with deponent.

20               (Translation.)

21               THE INTERPRETER:  The interpreter was

22         asking the deponent to confirm the last sentence

23         he said in his prior answer.  The deponent would

24         like to repeat his answer as follows.

25      A     Taishan believes the ruling regarding to the

1    jurisdiction of Taishan does not match the facts.

2    Taishan believes, upon paying much effort and

3    cooperation, Taishan was unfairly treated.

4              I did not say that Judge Fallon was

5    unfair.  Neither did I say the United States Court was

6    unfair.  I only said that Taishan believes this matter

7    is unfair.

8    BY MR. HERMAN:

9       Q    Sir, as the corporate representative of the

10   Taishan, under oath, are you aware that six judges of

11   United States Federal Court of Appeals, Fifth Circuit,

12   found that Taishan was subject to the jurisdiction of

13   the United States Courts?

14             MR. TAYLOR:  Objection to form and

15        object to the portion of counsel's question

16        where his voice was -- the decibel level was a

17        little louder than it should have been.

18             THE WITNESS:  Do I need to answer?

19             MR. TAYLOR:  You can answer, yes.

20      A    I only know that the United States Court

21   ruled that the United States Court does have the

22   jurisdiction with Taishan, even though Taishan does

23   not concur with this.

24   BY MR. HERMAN:

25      Q    Are you saying that the United States

1   Federal Court of Appeals for the Fifth Circuit did not

2   match facts with its decision?

3               MR. TAYLOR:  Objection to form.

4       A     I only expressed Taishan's opinion.

5               MR. HERMAN:  I'll ask another question.

6   BY MR. HERMAN:

7       Q     Why did Taishan's board of directors --

8               THE WITNESS:  Can I take a break?

9               MR. HERMAN:  Well, we won't get you out

10          of here by 4:30, if you interrupt my

11          questioning.  Go right ahead, sir.

12              MR. TAYLOR:  Well --

13              MR. HERMAN:  No, no, we'll take a break.

14          I've never, ever, in a deposition in 50 years,

15          when a witness was under cross and having a

16          problem, needed a break, not said, "Let's

17          break."  Let's break.

18              How long do you want the break?

19              MR. TAYLOR:  I think he's just going for

20          a restroom break.

21              MR. HERMAN:  Go right ahead.

22              THE VIDEOGRAPHER:  This is the end --

23              MR. TAYLOR:  The record should reflect

24          that the witness wanted a restroom break.  The

25          witness wanted a restroom break; that's why he

```
 1            needed to break.

 2                 THE VIDEOGRAPHER:  This is the end of

 3            Tape 16.  We're now off the record at 1:37.

 4            (Recess taken, 1:37 p.m. to 1:41 p.m.)

 5                 THE VIDEOGRAPHER:  This is the beginning

 6            of Tape 17.  We're now back on the record.  The

 7            time is 1:41.

 8  BY MR. HERMAN:

 9       Q    Why did the board of directors of Taishan

10  vote to contemptuously, civilly and criminally ignore

11  the order of Judge Eldon Fallon?

12                 MR. TAYLOR:  Objection to form.

13                 MR. MARROCCO:  Object to form.

14       A    I don't understand your question.

15  BY MR. HERMAN:

16       Q    Do you understand that Judge Eldon Fallon

17  held Taishan, the company you're here to represent, in

18  contempt of his court, both civilly and criminally?

19       A    I know that Judge Fallon had issued a

20  contempt order against Taishan, but whether it was

21  expressed as professionally as what you had just

22  stated, I don't quite understand.

23       Q    You do know, don't you, that CNBM Group,

24  CNBM, BNBM and BNBM Group were consulted by Taishan as

25  to whether Taishan should appear for the order of
```

Confidential - Subject to Further Confidentiality Review

1   Judge Fallon for a judgment debtor rule; isn't that

2   true?

3              MR. TAYLOR:  Objection to form.

4              MR. MARROCCO:  Object to form.

5     A     I do not know.  All decisions of Taishan

6   were made by the board of directors of Taishan.

7   BY MR. HERMAN:

8     Q     At whose direction?

9              MR. TAYLOR:  Objection, form.

10    A     I don't know what you mean by "whose

11  direction."  When a board of directors is making a

12  decision, does it need anyone else's instruction?

13  BY MR. HERMAN:

14    Q     Does a puppet need a puppeteer in order to

15  perform?

16              MR. TAYLOR:  I would ask the record to

17         reflect that the counsel is raising his voice to

18         the witness unnecessarily and making

19         argumentative statements that are unnecessary in

20         this record.

21              MR. HERMAN:  Well, Counsel, I was just

22         going to state that I wanted to make sure the

23         witness heard me, number one.  I'm definitely

24         not angry.  But I wanted to answer his question,

25         since he wants to be a lawyer.  And so my answer

Confidential - Subject to Further Confidentiality Review

1           to his question is:  Does a puppeteer operate a

2           puppet?

3                   MR. TAYLOR:  I'm sorry --

4                   (Translation.)

5                   MR. TAYLOR:  Objection to form.

6                   MR. MARROCCO:  Objection, form.

7      A     You may be a good lawyer but not a good

8    teacher.  I still don't understand your example.

9    BY MR. HERMAN:

10     Q     Perhaps I'm not a good lawyer.  I am a good

11   husband, a good father, and a good grandfather, which

12   is more important to me.

13                   Nevertheless, have you heard of

14   Pinocchio?

15     A     Well, you're not a good -- or I am not a

16   good student, anyways.  I don't understand.

17                   (Translation.)

18     A     No.

19   BY MR. HERMAN:

20     Q     Have you heard of the word "marionette"?

21     A     No.

22     Q     Have you heard of the word "ventriloquist"?

23     A     No.

24     Q     I ask you, as a corporate representative of

25   Taishan:  Is it proper for a company such as CNBM to

Confidential - Subject to Further Confidentiality Review

1    use the courtrooms of the United States of America to

2    sue for its own purposes, but to deny any jurisdiction

3    of U.S. courts when they or their subsidiaries commit

4    breaches of contract by supplying defective materials?

5                    MR. HAIRSTON:  Objection.

6                    MR. TAYLOR:  Objection.  Objection to

7          form.

8                    THE WITNESS:  Please repeat.

9                    (Translation.)

10    A      I don't know.  I don't understand your

11    question.

12    BY MR. HERMAN:

13    Q      If you destroyed the home where I live, do

14    you think that I would have a right under the United

15    States Constitution to recover the value of my home?

16                    MR. TAYLOR:  Objection to form.

17    A      Number one, I do not understand United

18    States laws.  Number two, according to the

19    understanding in Chinese way, if you can prove that I

20    did destroy your house, I will for sure be legally

21    responsible for it.

22                    But it had to be definitely me who

23    destroyed your home.  If it was not me, I will not be

24    responsible for it.

25    Q      Well, if you were sure that you destroyed my

1    home a block from this courthouse, wouldn't I have a

2    right to sue you for damages under the laws of the

3    United States, where I live?

4              MR. TAYLOR:  Objection to form.

5       A    I don't know.  I don't understand American

6    laws.

7    BY MR. HERMAN:

8       Q    Do you understand American justice?

9              MR. TAYLOR:  Objection -- sorry.

10             Objection to form.  It goes well beyond the

11             scope.  This entire line of questioning has gone

12             well beyond the scope and the purpose of this

13             deposition.

14             THE WITNESS:  Do I answer?

15             MR. TAYLOR:  You can go ahead and

16             answer, if you can.

17      A    I don't understand what do you mean by

18   "American justice."  Do you mean justice of the law or

19   justice of moral or justice of practice?

20   BY MR. HERMAN:

21      Q    Do you understand a universal concept that

22   says any damage occasioned by another's fault obliges

23   him who created the damage to repair it?

24             MR. TAYLOR:  Objection to form.

25             THE WITNESS:  Repeat your question,

Confidential - Subject to Further Confidentiality Review

 1          please.

 2                  (Translation.)

 3      A     When you said "universal concept," you mean

 4   a common concept?

 5   BY MR. HERMAN:

 6      Q     Yes.

 7      A     Well, according to Chinese culture, if you

 8   can confirm and I admit that I have caused your

 9   damage, I will not avoid to repair such a damage and

10   to pay for such a damage.  But the precondition is

11   that you have to confirm that I have caused such

12   damage.

13      Q     I just have one more series of questions

14   before we break.

15             Sir, you have indicated in your

16   testimony that Taishan used much resources and

17   cooperation in this matter.  How much money did you

18   report you paid your attorneys from 2009 forward,

19   until the time that your attorneys were directed to

20   withdraw?

21             MR. TAYLOR:  Objection to form.

22      A     I believe Taishan entered into this lawsuit

23   in 2010.  I only know that Taishan had paid a great

24   amount of money for that, but I do not have a clear

25   recollection on the specific amount.

1    BY MR. HERMAN:

2        Q    Did Taishan, from 2010 to the time that

3    Hogan Lovells was required to withdraw, spend less

4    than $20 million on attorneys' fees?

5        A    I do not have a clear recollection of the

6    specific number.

7        Q    Isn't it true that between 2010 and the

8    order issued by Judge Eldon Fallon of this United

9    States court for a judgment debtor rule, that BNBM

10   paid in excess of $6 million in attorneys' fees over

11   that time frame?

12               MR. MARROCCO:  Object to form.

13       A    I don't know.

14   BY MR. HERMAN:

15       Q    Do you know how many citizens of the United

16   States of America suffered damage from defective

17   Chinese drywall manufactured by Taishan or TPP who

18   have not yet been paid a single dollar?

19               MR. TAYLOR:  Objection to form.

20               THE WITNESS:  Repeat the question.

21               (Translation.)

22               THE WITNESS:  Is that a question?

23               MR. HERMAN:  Yes.

24       A    I cannot confirm your question, because,

25   first of all, I cannot confirm what are the gypsum

1    boards -- the gypsum boards that were manufactured by

2    Taishan or TTP.

3    BY MR. HERMAN:

4       Q     Sir, I want to point out to you before you

5    come back, if you come back, should the judge order

6    it, or someone in your stead, maybe a director or

7    someone from Taishan that knows more than you know,

8    that in the year 2010, in U.S. dollars, BNBM paid

9    $477,709.15 for attorneys' fees; and that Taishan, in

10   the same year, paid $3,936,986.12 in attorneys' fees;

11   and that in 2011, BNBM paid $1,397,799 in attorneys'

12   fees; and that Taishan Gypsum paid $3,304,817.13; that

13   in 2012, BNBM paid $232,202.18; and Taishan Gypsum

14   paid 4,146 and a hundred -- 146,000 -- strike that.

15              In 2012, Taishan Gypsum paid

16   $4,146,100.29 equivalent in U.S. dollars.  In 2013,

17   BNBM paid $153,327.19 in U.S. dollars equivalent; that

18   in 2013, Taishan Gypsum paid $875,859.84 in U.S.

19   equivalent dollars; and that 2014, BNBM paid

20   $77,548.09; and Taishan Gypsum paid $1,841,257.99 in

21   equivalent U.S. dollars.

22              And so should you or some other

23   representative more knowledgeable than you come back

24   to testify under oath at the direction of this Court,

25   please look at the BNM -- BNBM 2010 annual report, the

```
 1    2011 -- BNBM 2011 annual report, the 2012 BNBM annual
 2    report, the 2013 BNBM annual report and the 2014 BNBM
 3    annual report, which sets forth the dollars paid from
 4    2010 to 2014 to attorneys by BNBM and Taishan Gypsum
 5    in connection with this litigation prior to the time
 6    that BNBM, BNBMG, CNBM and CNBMG appeared and Taishan
 7    reappeared in this litigation.
 8                 And I thank you for your attention.
 9    We'll take a break now.
10                 THE VIDEOGRAPHER:  We're now off --
11                 (Translation.)
12                 MR. TAYLOR:  Thank you.
13                 While we're still on the record, I don't
14         know if counsel meant this, but we have an
15         agreement that this deposition today, this
16         session will end at 4:30.  And if counsel
17         intends to attempt to prevent us from leaving at
18         4:30, so that Mr. Che can catch his plane back
19         to China, I would advise him that he probably
20         should get the Court involved, because we --
21                 MR. HERMAN:  I can assure I have never
22         broken a word or agreement I've ever made with
23         counsel, whether it's on the record, off the
24         record --
25                 MR. TAYLOR:  Thank you.
```

```
 1              MR. HERMAN:  -- confirmed in writing or

 2       not confirmed, and I resent the statement.

 3              MR. TAYLOR:  Well, if you look at the

 4       record --

 5              MR. HERMAN:  I resent the statement.

 6              MR. TAYLOR:  Okay.  Thank you, sir.

 7              THE VIDEOGRAPHER:  We're now off the

 8       record at 2:11.

 9              (Recess taken, 2:11 p.m. to 2:26 p.m.)

10              THE VIDEOGRAPHER:  We're now back on the

11       record.  The time is 2:26.

12              MR. HERMAN:  Sir, I'm going to hand you

13       the Volume 1 production of Taishan Gypsum.  We

14       received no English translations, only Chinese,

15       contrary to Judge Fallon's direction.  I'm going

16       to ask you to take them with you -- I'll give

17       them to your lawyer -- and return them to us

18       with English translations.

19              (Translation.)

20              MR. TAYLOR:  Are you finished?

21              MR. HERMAN:  And by the time I file a

22       motion and a brief to have you or some other

23       30(b)(6) representative of Taishan come back, I

24       hope that the production that you have not

25       produced from Taishan is produced in both
```

Confidential - Subject to Further Confidentiality Review

```
1        English and in Chinese, which includes all of

2        the issues involving affiliates doing business,

3        not in Africa or South America or Asia or in

4        Australia or on the North Pole or the South Pole

5        or in Europe, but in the United States of

6        America.

7              Because I will tell you that the second

8        production, which I have read all of it, myself,

9        does not involve any activity in the United

10       States of America, and I so noted to your

11       counsel.  I have not received in any useable

12       form Chairman Jia's personal files; that is, his

13       e-files, his custodial files.  I have not

14       received Mr. Peng's custodial files or e-files.

15             I have not received communications among

16       or between Taishan, BNBM, BNBMG, CNBM, CNBMG,

17       regarding the drywall which is the subject of

18       litigation; the involvement or noninvolvement of

19       any of the defendants with each other in

20       connection with the litigation; the preliminary

21       default of Germano; the confirmation of default

22       of Germano; the advisories issued by United

23       States Judge Eldon Fallon, repeatedly, to

24       defense counsel to communicate with CNBM, BNBM,

25       BNBMG, CNBM, CNBMG and Taishan to participate;
```

Confidential - Subject to Further Confidentiality Review

```
 1          and any discussions, memoranda, et cetera,

 2          between or among these defendants regarding the

 3          litigation, participation, entry into the

 4          litigation.

 5                    And I ask that if you have such

 6          information, if Taishan has any of those

 7          communications, to please produce them in

 8          English and in Chinese within the next 30 days.

 9                    Thank you for being here.  I welcome you

10          to the United States of America, where all

11          people are responsible for the damage they cause

12          innocent people.  I thank you for appearing in

13          this courtroom.  I wish you Godspeed in the Year

14          of the Goat and a nice travel home.

15                    That ends this deposition, but it's held

16          open for more testimony, subject to

17          Judge Fallon's order.

18                    MR. TAYLOR:  Thank you, sir.

19                    MR. HERMAN:  You're welcome.

20                    THE VIDEOGRAPHER:  This is the end of

21          Tape 17.  We're now off the record at 2:31.

22                    (Proceedings recessed at 2:31 p.m.)

23

24

25
```

Confidential - Subject to Further Confidentiality Review

```
 1                  REPORTER'S CERTIFICATE

 2

 3          This transcript is valid only for a transcript

 4     accompanied by my original signature and original

 5     required seal on this page.

 6          I, Michael E. Miller, Certified Court Reporter

 7     (LA Certificate #27009) in and for the State of

 8     Louisiana, as the officer before whom this testimony

 9     was taken, do hereby certify that GANG CHE, after

10     having been duly sworn by me upon authority of

11     R.S. 37:2554, did testify as herein before set forth

12     in the foregoing 87 pages; that this testimony was

13     reported by me in the stenotype reporting method, was

14     prepared and transcribed by me or under my personal

15     direction and supervision, and is a true and correct

16     transcript to the best of my ability and

17     understanding; that the transcript has been prepared

18     in compliance with transcript format guidelines

19     required by statute or by rules of the board, and that

20     I am informed about the complete arrangement,

21     financial or otherwise, with the person or entity

22     making arrangements for deposition services; that I

23     have acted in compliance with the prohibition on

24     contractual relationships, as defined by Louisiana

25     Code of Civil Procedure Article 1434
```

Confidential - Subject to Further Confidentiality Review

1    and in rules and advisory opinions of the board;

2    that I have no actual knowledge of any prohibited

3    employment or contractual relationship, direct or

4    indirect, between a court reporting firm and any party

5    litigant in this matter nor is there any such

6    relationship between myself and a party litigant in

7    this matter.  I am not related to counsel or to the

8    parties herein, nor am I otherwise interested in the

9    outcome of this matter.

10

11          Signed this ___ day of _____, 2015.

12

13

14          _____

15          MICHAEL E. MILLER, FAPR, RDR, CRR

16          Certified Court Reporter

17          LA Certified Court Reporter #27009

18

19

20

21

22

23

24

25

Confidential - Subject to Further Confidentiality Review

```
 1                 ACKNOWLEDGMENT OF DEPONENT

 2

 3          I,_____, do hereby

 4   certify that I have read the foregoing pages and

 5   that the same is a correct transcription of the

 6   answers given by me to the questions therein

 7   propounded, except for the corrections or changes in

 8   form or substance, if any, noted in the attached

 9   Errata Sheet.

10

11          _____

12          GANG CHE                    DATE

13

14   Subscribed and sworn to before me this

15   _____ day of _____, 20 _____.

16   My commission expires: _____

17

18   Notary Public

19

20

21

22

23

24

25
```

1                    __  __  __  __  __  __

2                         ERRATA

                     __  __  __  __  __  __

3

4    PAGE    LINE    CHANGE/REASON

5    _____   _____   _____

6    _____   _____   _____

7    _____   _____   _____

8    _____   _____   _____

9    _____   _____   _____

10   _____   _____   _____

11   _____   _____   _____

12   _____   _____   _____

13   _____   _____   _____

14   _____   _____   _____

15   _____   _____   _____

16   _____   _____   _____

17   _____   _____   _____

18   _____   _____   _____

19   _____   _____   _____

20   _____   _____   _____

21   _____   _____   _____

22   _____   _____   _____

23   _____   _____   _____

24   _____   _____   _____

25   _____   _____   _____