**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL | x | MDL NO. 2047 |
| PRODUCTS LIABILITY LITIGATION | x | |
| | x | SECTION: L |
| | x | |
| | x | JUDGE FALLON |
| | x | MAG. JUDGE  WILKINSON |
| | x | |

### DECLARATION OF PROFESSOR JAMES FEINERMAN

1.      I am the James M. Morita Professor of Asian Legal Studies at Georgetown

University Law Center and have been admitted as an attorney to practice before the

courts of New York.  Among other courses, I teach a course in Chinese Law. I have

taught at Georgetown, and also as a visitor at Harvard and Yale Law Schools, for over

thirty years.

2.      In addition to my work as a Professor of Law, I served as Editor-in-Chief of the

*China Law Reporter,* a publication of the American Bar Association's Section of

International Law and Practice, from 1986-1998; as Chair of the Committee on Legal

Education Exchange with China, from 1993-1997; as Chair of the Asia Law Forum, of

the Association for Asian Studies, from 1991-1996; as a Trustee of the Lingnan

Foundation from 1994-2003; and was formerly a Trustee of the Yale-China Association

for several terms.  From 1993-1995, I served as Director of the Committee on Scholarly

Communication with China, Washington, D.C., the national organization sponsoring

official academic exchange between the United States and China, sponsored by the

National Academy of Sciences, the American Council of Learned Societies and the

1



**FSIA
EXHIBIT
118**

Social Science Research Council. From 1983-1985, I served as Administrative Director and Fellow of the East Asian Legal Studies Program at Harvard Law School, Cambridge, Massachusetts. In 1982-83, I taught as a Fulbright Lecturer on Law at the Peking University Law Department, Peking. More recently, I was selected as Fulbright Distinguished Senior Lecturer on Law to teach and to do research at Tsinghua University Law Faculty from February to June, 2006. My curriculum vitae is attached as Exhibit B.

3.      I have been retained as an expert on Chinese law to examine and review various documents and exhibits connected with litigation in the United States District Court for the Eastern District of Louisiana, "In re: Chinese Manufactured Drywall Products Liability Litigation," MDL No. 2047, before Judge Fallon and Magistrate Judge Wilkinson.

4.      I have reviewed the official Chinese government "Notice of the State Administration of Taxation on Issuing the Measures for the Implementation of Special Tax Adjustments (for Trial Implementation)," [*Guojia Shuiwuju guanyu yinfa "Tebie nashui tiaozheng shishi banfa (shixing)"*] issued by the State Administration of Taxation and effective as of January 8, 2009 – Document No. 2 [2009] of the State Administration of Taxation. (hereafter the "Special Tax Adjustments Measures"). The Special Tax Adjustments Measures in the original Chinese and in English translation, as published by LawInfoChina, a unit of the Law School of Peking University, are attached as Exhibit A and were also Exhibit 90 in prior proceedings.

5.      In addition, I have relied on my own knowledge of Chinese law and regulations and my own study of the Chinese legal system and have also consulted relevant Chinese law and secondary legal materials.

2

6.      Based on my review, it is my opinion that Article 9 of the Special Tax Adjustments Measures makes clear that the term "affiliation" refers to any relationship between one enterprise and any other enterprise in China where one party directly or indirectly holds 25% or more of the shares of the other party or 25% of the shares of both parties are directly or indirectly held by the same third party. Special Tax Adjustments Measures, art. 9(1).

7.      In addition, the same article provides that "affiliation" also exists where the services that one party receives or provides are largely controlled by the other party. Special Tax Adjustments Measures, art. 9(7).

8.      Further, Article 9 of the Special Tax Adjustments Measures also defines "affiliation" to extend to a situation where one party exercises substantive control over the other party's production, business operations or transactions, or the two parties have any other affiliation of interest, such as a relationship that one party and the main shareholder of the other enjoy basically the same economic interests, even though the 25% shareholding specified in art. 9(1) is not reached. Special Tax Adjustments Measures, art. 9(8).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 16, 2015, in Bethesda, MD

James V. Feinerman

James V. Feinerman

3



**法规 北大法律英文网**
**www.lawinfochina.com**

China's Leader in Online Legal Research
提供法律信息全面解决方案

Jun 29, 47427
Friday

>>>Welcome visitor, you're not logged in.  Login    Subscribe Now!         ▸ Home    ▸ User Management    ▸ About Us    ▸ Chinese

lawinfochina.com > Laws & Regulations >

**Text**

📑 Bookmark   📥 Download   🖨 Print      Search: [      ] 🔍   ☑ "Fabao" Window   Font Size: A A A      🔲 🔲 🔲 🔳 🔳

**Notice of the State Administration of Taxation on Issuing the Measures for the Implementation of Special Tax Adjustments (for Trial Implementation) [Effective]**

国家税务总局关于印发《特别纳税调整实施办法(试行)》的通知 [现行有效]

【法宝引证码】 CLI.4.112360(EN)

**Issuing authority:** State Administration of Taxation

**Date issued:** 01-08-2009

**Area of law:** Taxation

**Document Number:** No. 2 [2009] of the State Administration of Taxation

**Level of Authority:** Departmental Regulatory Documents

**Pkulaw Comments:** 本篇法规的变更情况请参考: 国务院关于取消非行政许可审批事项的决定

---

Notice of the State Administration of Taxation on Issuing the Measures for the Implementation of Special Tax Adjustments (for Trial Implementation)

(No. 2 [2009] of the State Administration of Taxation)

State taxation bureaus and local taxation bureaus of all provinces, autonomous regions, municipalities directly under the Central Government and cities under separate state planning,

To enforce the Enterprise Income Tax Law of the People's Republic of China and the regulation on the implementation thereof and standardize and strengthen the administration of special tax adjustments, the State Administration of Taxation has formulated the Measures for the Implementation of Special Tax Adjustments (for Trial Implementation), which are hereby issued to you for your compliance and implementation.

Annex: Forms, certificates, vouchers and documents under the Measures for the Implementation of Special Tax Adjustments (for Trial Implementation)

January 8, 2009

Measures for the Implementation of Special Tax Adjustments (for Trial Implementation)

Chapter I General Provisions

**Article 1** To regulate the administration of special tax adjustments, these Measures are formulated in accordance with the relevant provisions of the Enterprise Income Tax Law of the People's Republic of China (hereinafter referred to as the EITL), the Regulation on the Implementation of the Enterprise Income Tax Law of the People's Republic of China (hereinafter referred to as the RIEITL), the Law of the People's Republic of China on the Administration of Tax Collection (hereinafter referred to as the LATC), the Detailed Rules on the Implementation of the Law of the People's Republic of China on the Administration of Tax Collection (hereinafter referred to as

国家税务总局关于印发《特别纳税调整实施办法(试行)》
的通知
(国税发〔2009〕2号)

(相关资料:部门规章2篇 其他规范性文件1篇 地方法规4篇)

各省、自治区、直辖市和计划单列市国家税务局、地方税务局:

为贯彻落实《中华人民共和国企业所得税法》及其实施条例, 规范和加强特别纳税调整管理, 国家税务总局制定了《特别纳税调整实施办法(试行)》, 现印发给你们, 请遵照执行。

附件: 《特别纳税调整实施办法(试行)》表证单书

二〇〇九年一月八日

特别纳税调整实施办法(试行)

第一章 总则

第一条 为了规范特别纳税调整管理, 根据《中华人民共和国企业所得税法》(以下简称所得税法)、《中华人民共和国企业所得税法实施条例》(以下简称所得税法实施条例)、《中华人民共和国税收征收管理法》(以下简称征管法)、《中华人民共和国税收征收管理法实施细则》(以下简称征管法实施细则)以及我国政府与有关国家(地区)政府签订的避免双重征税协定(安排)(以下

CG: 6/16/15–6/18/15
Exhibit 90

Jia: Exhibit 409-Exhibit A

ALRMH-CNBM00008856

Case 2:09-md-02047-EEF-MBN   Document 21750-118   Filed 08/31/18   Page 5 of 28

Notice of the State Administration of Taxation on Issuing the Measures for the Implementation of Special Tax Adjustments (for Trial Implementation)

as the DRILATC) and the tax agreements (arrangements) signed by the Chinese Government with the governments of relevant countries (regions) on the avoidance of double taxation (hereinafter referred to as the tax agreements).

**Article 2** These Measures shall apply to the taxation organs' administration of tax adjustments in respect of enterprises' transfer pricing, advance pricing arrangements, cost apportionment agreements, controlled foreign enterprises, thin capitalization and general anti-tax avoidance.

**Article 3** The "administration of transfer pricing" is a general term for the work of the taxation organs on examining, evaluating and investigating whether the transactions between an enterprise and its affiliates (hereinafter referred to as the affiliated transactions) conform to the arm's length principle and making adjustments according to the relevant provisions of Chapter VI of the EITL and Article 36 of the LATC.

**Article 4** The "administration of advance pricing arrangements" is a general term for the work of the taxation organs on examining and evaluating an enterprise's principles and computation methods for the affiliated transactions in future years and entering into an advance pricing arrangement upon negotiation with the enterprise according to the provisions of Article 42 of the EITL and Article 53 of the DRILATC.

**Article 5** The "administration of cost apportionment agreements" is a general term for the work of the taxation organs on examining, evaluating and investigating whether the cost apportionment agreements signed by an enterprise with its affiliates conform to the arm's length principle and making adjustments according to paragraph 2 of Article 41 of the EITL.

**Article 6** The "administration of controlled foreign enterprises" is a general term for the work of the taxation organs on examining, evaluating and investigating a controlled foreign enterprise's non-distribution or reduced distribution of profits and adjusting the income attributable to a Chinese resident enterprise according to Article 45 of the EITL.

**Article 7** The "administration of thin capitalization" is a general term for the work of the taxation organs on examining, evaluating and investigating whether the proportion of debt investments to equity investments in an enterprise made by its affiliates conform to the prescribed proportion or the arm's length principle and making adjustments according to Article 46 of the EITL.

**Article 8** The "administration of general anti-tax avoidance" is a general term for the work of the taxation organs on examining, evaluating and investigating an enterprise's decrease of the taxable revenue or income as a result of its execution of any other arrangement lacking a reasonable commercial purpose and making adjustments according to Article 47 of the EITL.

Chapter II Reporting of Affiliation

**Article 9** The term "affiliation" as mentioned in Article 109 of the RIEITL and Article 51 of the DRILATC mainly refers to any of the following relationships between an enterprise and other enterprises, organizations or individuals:

1. One party directly or indirectly holds at least 25% of the total shares of the other party, or 25% of the shares of both parties are directly or indirectly held by a same third party. If one

简称税收协定）的有关规定，制定本办法。

第二条　本办法适用于税务机关对企业的转让定价、预约定价安排、成本分摊协议、受控外国企业、资本弱化以及一般反避税等特别纳税调整事项的管理。

第三条　转让定价管理是指税务机关按照所得税法第六章和征管法第三十六条的有关规定，对企业与其关联方之间的业务往来（以下简称关联交易）是否符合独立交易原则进行审核评估和调查调整等工作的总称。

第四条　预约定价安排管理是指税务机关按照所得税法第四十二条和征管法实施细则第五十三条的规定，对企业提出的未来年度关联交易的定价原则和计算方法进行审核评估，并与企业协商达成预约定价安排等工作的总称。

第五条　成本分摊协议管理是指税务机关按照所得税法第四十一条第二款的规定，对企业与其关联方签署的成本分摊协议是否符合独立交易原则进行审核评估和调查调整等工作的总称。

第六条　受控外国企业管理是指税务机关按照所得税法第四十五条的规定，对受控外国企业不作利润分配或减少分配进行审核评估和调查，并对归属于中国居民企业所得进行纳税等工作的总称。

第七条　资本弱化管理是指税务机关按照所得税法第四十六条的规定，对企业接受关联方债权性投资与企业接受的权益性投资的比例是否符合规定比例或独立交易原则进行审核评估和调查调整等工作的总称。

第八条　一般反避税管理是指税务机关按照所得税法第四十七条的规定，对企业实施其他不具有合理商业目的的安排而减少其应纳税收入或所得额进行审核评估和调查调整等工作的总称。

第二章　关联申报

<mark>第九条　所得税法实施条例第一百零九条及征管法实施细则第五十一条所称关联关系，主要是指企业与其他企业、组织或个人具有下列之一关系：

（一）一方直接或间接持有另一方的股份总和达到25%以上，或者双方直接或间接同为第三方所持有的股份达</mark>

ALRMH-CNBM00008857

party indirectly holds the shares of the other party through an intermediate party, as long as it holds at least 25% of the shares of the intermediate party, the proportion of the other party's shares held by it shall be computed on the basis of the other party's shares held by the intermediate party;

2. The loans received by one party from the other party (excluding an independent financial institution) account for at least 50% of one party's paid-in capital, or at least 10% of the total loans received by one party are guaranteed by the other party (excluding an independent financial institution);

3. At least half of one party's senior management (including members of the board of directors and managers) are or at least 1 senior member of the board of directors who has the controlling power over the board of directors is appointed by the other party, or at least half of both parties' senior management (including members of the board of directors and managers) are or at least 1 senior member of the board of directors who has the controlling power over the board of directors is appointed by a same third party;

4. At least half of one party's senior management (including members of the board of directors and managers) are also senior management of the other party (including members of the board of directors and managers), or at least 1 senior member of the board of directors of one party who has the controlling power over the board of directors is also a senior member of the board of directors of the other party;

5. The normal production and business operations of one party must depend on the industrial property, know-how or any other franchise provided by the other party;

6. One party's purchase or sale activities are largely controlled by the other party;

7. The services that one party receives or provides are largely controlled by the other party; or

8. One party exercises a substantive control over the other party's production, business operations or transactions, or the two parties have any other affiliation of interest, such as a relationship that one party and the main shareholder of the other party enjoy basically the same economic interests though the shareholding percentage described in subparagraph 1 hereof is not reached, a clanship or a kinship.

**Article 10** The affiliated transactions shall mainly include the following types of transactions:

1. Purchase, sale, transfer and use of tangible assets, including the purchase, sale, transfer and lease of such tangible assets as buildings, transport means, machinery, tools, commodities and products;

2. Transfer and use of intangible assets, including the transfer of ownership of or the provision of right to use the land use right, copyright, patent, trademark, client list, marketing channel, licensed plate or number, trade secret, know-how or any other franchise right, as well as industrial property such as industrial product design or utility model;

3. Accommodation, including all types of long-term and short-term borrowing and guaranty businesses and all kinds of interest-bearing advance payment and deferred payment businesses; and

4. Provision of services, including but not limited to market research, marketing, management, administrative affairs, technical services, maintenance, design, consultancy,

到25%以上。一方通过中间方对另一方间接持有股份，只要一方对中间方持股比例达到25%以上，则一方对另方的持股比例按照中间方对另一方的持股比例计算。

（二）一方与另一方（独立金融机构除外）之间借贷资金占一方实收资本50%以上，或者一方借贷资金总额的10%以上是由另一方（独立金融机构除外）担保。

（三）一方半数以上的高级管理人员（包括董事会成员和经理）或至少一名可以控制董事会的董事会高级成员是由另一方委派，或者双方半数以上的高级管理人员（包括董事会成员和经理）或至少一名可以控制董事会的董事会高级成员同为第三方委派。

（四）一方半数以上的高级管理人员（包括董事会成员和经理）同时担任另一方的高级管理人员（包括董事会成员和经理），或者一方至少一名可以控制董事会的董事会高级成员同时担任另一方的董事会高级成员。

（五）一方的生产经营活动必须由另一方提供的工业产权、专有技术等特许权才能正常进行。

（六）一方的购买或销售活动主要由另一方控制。

（七）一方接受或提供劳务主要由另一方控制。

（八）一方对另一方的生产经营、交易具有实质控制，或者双方在利益上具有相关联的其他关系，包括虽未达到本条第（一）项持股比例，但一方与另一方的主要持股方享受基本相同的经济利益，以及家族、亲属关系等。

第十条 关联交易主要包括以下类型：

（一）有形资产的购销、转让和使用，包括房屋建筑物、交通工具、机器设备、工具、商品、产品等有形资产的购销、转让和租赁业务；

（二）无形资产的转让和使用，包括土地使用权、版权（著作权）、专利、商标、客户名单、营销渠道、牌号、商业秘密和专有技术等特许权，以及工业品外观设计或实用新型等工业产权的所有权转让和使用权的提供业务；

（三）融通资金，包括各类长短期资金借偿和担保以及各类计息预付款和延期付款等业务；

（四）提供劳务，包括市场调查、行销、管理、行政事务、技术服务、维修、设计、咨询、代理、科研、法律、

ALRMH-CNBM00008858

Notice of the State Administration of Taxation on Issuing the Measures for the Implementation of Special Tax Adjustments (for Trial Implementation)

agency, scientific research, legal services and accounting services.

**Article 11** When filing an annual enterprise income tax return, a resident enterprise whose tax is levied on the basis of audit of account books or a non-resident enterprise which has any establishment in China and file a return for and pay the enterprise income tax on an actual basis shall also submit the Forms for the Annual Reporting of Affiliated transactions of an Enterprise of the People's Republic of China, including the Form of Affiliations, Consolidated Form of Affiliated Transactions, Form of Purchases and Sales, Form of Services, Form of Intangible Assets, Form of Fixed Assets, Form of Accommodation, Form of External Investments and Form of External Payments.

**Article 12** Where it is really difficult for an enterprise to submit the Forms as required in Article 11 of these Measures within the specified time limit and an extension is needed, it shall be handled according to the relevant provisions of the LATC and DRILATC.

Chapter III Administration of Contemporaneous Documentation

**Article 13** An enterprise shall prepare by taxable year, keep and submit as required by the taxation organs the contemporaneous documentation relevant to its affiliated transactions in accordance with Article 114 of the RIEITL.

**Article 14** The contemporaneous documentation shall mainly include:

1. Organizational structure

(1) The relevant organizational structure and equity structure of the enterprise group with which an enterprise is affiliated;

(2) Annual changes of affiliations of the enterprise;

(3) Information on the affiliates transacting with the enterprise, including an affiliated enterprise's name, legal representative, senior management such as members of the board of directors and managers, registered address and actual business address, an affiliated individual's name, nationality, place of residence, family members, etc., and an indication of the affiliates having a direct influence on the pricing of affiliated transactions of the enterprise; and

(4) The type and rate of tax of the income tax nature and preferential tax treatments applicable to each affiliate.

2. Information on Production and Business Operations

(1) Brief account of the businesses of the enterprise, including the brief account of the enterprise's development and changes, brief account of the enterprise's industry and development of the industry, business strategies, industrial policies, industrial restrictions and other main economic and legal issues that affect the enterprise and its industry, industry chains of the group and the enterprise's position in the chains;

(2) The composition of the enterprise's core business, the proportion of the revenue from its core business to the total revenue, and the proportion of the profits from its core business to the total profits;

(3) The analysis of the enterprise' position in the industry and of the related market

会计事务等服务的提供。

第十一条 实行查账征收的居民企业和在中国境内设立机构、场所并据实申报缴纳企业所得税的非居民企业向税务机关报送年度企业所得税纳税申报表时，应附送《中华人民共和国企业年度关联业务往来报告表》，包括《关联关系表》、《关联交易汇总表》、《购销表》、《劳务表》、《无形资产表》、《固定资产表》、《融通资金表》、《对外投资情况表》和《对外支付款项情况表》。

第十二条 企业按规定期限报送本办法第十一条规定的报告表确有困难，需要延期的，应按征管法及其实施细则的有关规定办理。

第三章 同期资料管理

第十三条 企业应根据所得税法实施条例第一百一十四条的规定，按纳税年度准备、保存、并按税务机关要求提供其关联交易的同期资料。

第十四条 同期资料主要包括以下内容：

（一）组织结构

1．企业所属的企业集团相关组织结构及股权结构；

2．企业关联关系的年度变化情况；

3．与企业发生交易的关联方信息，包括关联企业的名称、法定代表人、董事和经理等高级管理人员构成情况、注册地址及实际经营地址，以及关联个人的名称、国籍、居住地、家庭成员及构成等情况，并注明对企业关联交易定价具有直接影响的关联方；

4．各关联方适用的具有所得税性质的税种、税率及相应可享受的税收优惠。

（二）生产经营情况

1．企业的业务概况，包括企业发展变化概况、所处的行业及发展概况、经营策略、产业政策、行业限制等影响企业和行业的主要经济和法律问题，集团产业链以及企业所处地位；

2．企业的主营业务构成，主营业务收入及其占收入总额的比重，主营业务利润及其占利润总额的比重；

3．企业所处的行业地位及相关市场竞争环境的分析；

ALRMH-CNBM00008859

Case 2:09-md-02047-EEF-MBN   Document 21750-118   Filed 08/31/18   Page 8 of 28

Notice of the State Administration of Taxation on Issuing the Measures for the Implementation of Special Tax Adjustments (for Trial Implementation)

competition environment;

(4) The enterprise' internal organizational structure and the respective functions performed, risks assumed, assets employed, etc. by the enterprise and its affiliates in the affiliated transactions, including the Form of Enterprise Function and Risk Analysis filled out by reference to the relevant information; and

(5) The consolidated financial statements of the enterprise group, the preparation of which may be postponed in light of the accounting year of the enterprise group, but shall not be later than December 31 of the year following the year of occurrence of an affiliated transaction.

3. Information on Affiliated Transactions

(1) An affiliated transaction's type, participants, time, amount, settlement currency and conditions;

(2) Trade mode of an affiliated transaction, annual changes thereof, and an explanation for the changes;

(3) The comparison of similarities and differences between the operating flows of an affiliated transaction and an unaffiliated transaction, including the information flow, logistical flow and cash flow at all stages;

(4)The intangible asset involved in an affiliated transaction and its influence on the pricing;

(5) Copies of contracts or agreements related to an affiliated transaction and a description of the execution thereof;

(6)The analysis of major economic and legal factors that affect the pricing of an affiliated transaction; and

(7)Information on the division of revenues, costs, expenses and profits between affiliated transactions and unaffiliated transactions. When a direct division is impossible, the division shall be made in a reasonable proportion, an explanation of the determined division rate shall be made, and a Form of Financial Analysis of Annual Affiliated Transactions shall be filled out by reference to the relevant information.

4. Comparability Analysis

(1) The factors to be considered in a comparability analysis shall include but not be limited to the characteristics of assets or services in a transaction, functions performed and risks assumed by the parties to a transaction, contractual terms and conditions, economic environment and operating strategies;

(2) Information on the functions performed, risks assumed, assets employed, etc. by a comparable enterprise;

(3) A description of a comparable transaction, covering the physical features, quality and use efficacy of tangible assets; the normal interest rate, amount, currency, duration, guaranty, borrower's credit standing, repayment manner and interest calculation method for a financing business; the nature and extent of services; the type and transaction mode of an intangible asset, the right to use an intangible asset through transaction, and benefits from using an intangible assets; etc.;

4．企业内部组织结构，企业及其关联方在关联交易中执行的功能、承担的风险以及使用的资产等相关信息，并参照填列《企业功能风险分析表》；

5．企业集团合并财务报表，可视企业集团会计年度情况延期准备，但最迟不得超过关联交易发生年度的次年12月31日。

（三）关联交易情况

1．关联交易类型、参与方、时间、金额、结算货币、交易条件等；

2．关联交易所采用的贸易方式、年度变化情况及其理由；

3．关联交易的业务流程，包括各个环节的信息流、物流和资金流，与非关联交易业务流程的异同；

4．关联交易所涉及的无形资产及其对定价的影响；

5．与关联交易相关的合同或协议副本及其履行情况的说明；

6．对影响关联交易定价的主要经济和法律因素的分析；

7．关联交易和非关联交易的收入、成本、费用和利润的划分情况，不能直接划分的，按照合理比例划分，说明确定该划分比例的理由，并参照填写《企业年度关联交易财务状况分析表》。

（四）可比性分析

1．可比性分析所考虑的因素，包括交易资产或劳务特性、交易各方功能和风险、合同条款、经济环境、经营策略等；

2．可比企业执行的功能、承担的风险以及使用的资产等相关信息；

3．可比交易的说明，如：有形资产的物理特性、质量及其效用；融资业务的正常利率水平、金额、币种、期限、担保、融资人的资信、还款方式、计息方法等；劳务的性质与程度；无形资产的类型及交易形式、通过交易获得的使用无形资产的权利，使用无形资产获得的收益；

ALRMH-CNBM00008860

Case 2:09-md-02047-EEF-MBN   Document 21750-118   Filed 08/31/18   Page 9 of 28

Notice of the State Administration of Taxation on Issuing the Measures for the Implementation of Special Tax Adjustments (for Trial Implementation)

(4) The sources of and conditions and reasons for selecting the comparable information; and

(5) The difference adjustments made to the comparable data and the reasons for making such adjustments.

5. Selection for use of a Transfer Pricing Method

(1) The selection for use of a transfer pricing method and reasons for the selection. When selecting a profit-based method, the enterprise shall state its contribution to the overall level of profits or residual profits of the enterprise group;

(2) How the comparable information supports the transfer pricing method selected for use;

(3) Assumptions and judgments made in the process of determining the price for or profit from a comparable unaffiliated transaction;

(4) A description of the determination of the price for or profit from a comparable unaffiliated transaction by using a reasonable transfer pricing method and the comparability analysis results, as well as the compliance with the arm's length principle; and

(5) Other information that supports the transfer pricing method selected for use.

**Article 15** An enterprise which falls under any of the following circumstances may be exempt from preparing the contemporaneous documentation:

1. The amount of affiliated purchases and sales per annum shall be less than 200 million yuan (the amount of the processing business with supplied materials shall be calculated based on the customs declaration prices for imports and exports during the year) and the amount of other affiliated transactions shall be less than 40 million yuan (the amount of affiliated accommodation shall be calculated based on the interest paid or received). The aforesaid amounts shall exclude those of the affiliated transactions involved in the cost apportionment agreements or advance pricing arrangements executed within the year;

2. The affiliated transactions are within the coverage of the advance pricing arrangements; or

3. The foreign-owned shares account for less than 50 percent and the affiliated transactions are conducted with domestic affiliates only.

**Article 16** Unless it is otherwise provided for in Chapter VII of these Measures, an enterprise shall complete the preparation of contemporaneous documentation before May 31 of the year following the year of occurrence of an affiliated transaction, and shall submit the documentation to the taxation organ within 20 days from the date of requirement of the taxation organ .

If the enterprise is unable to provide such documentation on time due to any force majeure, it shall provide such documentation within 20 days after the elimination of the force majeure.

**Article 17** The contemporaneous documentation submitted by an enterprise as required by the taxation organ shall bear the official seal of the enterprise, as well as the signature or seal of the legal representative of the enterprise or the person authorized by the legal representative. If the contemporaneous documentation contains any citation, the source of it shall be indicated.

**Article 18** Where the tax registration of an enterprise is modified or cancelled for merger,

---

4. 可比信息来源、选择条件及理由;

5. 可比数据的差异调整及理由。

(五) 转让定价方法的选择和使用

1. 转让定价方法的适用及理由, 企业选择利润法时, 须说明对企业集团整体利润或剩余利润水平所做的贡献;

2. 可比信息如何支持所选用的转让定价方法;

3. 确定可比非关联交易价格或利润的过程中所做的假设和判断;

4. 运用合理的转让定价方法和可比性分析结果, 确定可比非关联交易价格或利润, 以及遵循独立交易原则的说明;

5. 其他支持所选用转让定价方法的资料。

第十五条 属于下列情形之一的企业, 可免于准备同期资料:

(一) 年度发生的关联购销金额 (来料加工业务按年度进出口报关价格计算) 在2亿元人民币以下且其他关联交易金额 (关联融通资金按利息收付金额计算) 在4000万元人民币以下, 上述金额不包括企业在年度内执行成本分摊协议或预约定价安排所涉及的关联交易金额;

(二) 关联交易属于执行预约定价安排所涉及的范围;

(三) 外资股份低于50%且仅与境内关联方发生关联交易。

第十六条 除本办法第七章另有规定外, 企业应在关联交易发生年度的次年5月31日之前准备完毕该年度同期资料, 并自税务机关要求之日起20日内提供。
企业因不可抗力无法按照提供同期资料的, 应在不可抗力消除后20日内提供同期资料。

第十七条 企业按照税务机关要求提供的同期资料, 须加盖公章, 并由法定代表人或法定代表人授权的代表签字或盖章。同期资料涉及引用的信息资料、应标明出处来源。

第十八条 企业因合并、分立等原因变更或注销税务

ALRMH-CNBM00008861

Case 2:09-md-02047-EEF-MBN   Document 21750-118   Filed 08/31/18   Page 10 of 28

Notice of the State Administration of Taxation on Issuing the Measures for the Implementation of Special Tax Adjustments (for Trial Implementation)

split or any other reason, the contemporaneous documentation of the enterprise shall be kept by the new or surviving enterprise(s) after the merger or split.

**Article 19** The contemporaneous documentation shall be prepared in Chinese. If the original material is in a foreign language, a Chinese copy shall be submitted as well.

**Article 20** The contemporaneous documentation shall be kept for 10 years from June 1 of the year following the year of occurrence of an affiliated transaction.

Chapter IV Transfer Pricing Methods

**Article 21** Enterprises to conduct affiliated transactions and taxation organs to inspect and assess affiliated transactions shall adopt reasonable transfer pricing methods under the arm's-length principle.

In accordance with Article 111 of the RIEITL, the transfer pricing methods shall include the comparable uncontrolled price method (CUPM), the resale price method (RPM), the cost-plus method (CPM), the transactional net margin method (TNMM), the profit split method (PSM), and other methods in compliance with the arm's-length principle.

**Article 22** A comparability analysis shall be made during the selection of a reasonable transfer pricing method. A comparability analysis shall mainly cover the factors in the following five aspects:

1. Characteristics of assets transacted or services provided, mainly including the physical characteristics, quality, quantity, etc. of tangible assets; nature and scope of services provided; types, transaction forms, terms, scopes, expected return, etc. of intangible assets;

2. The functions performed and risks assumed by each party to a transaction. The functions mainly include the research and development, design, procurement, processing, assembly, manufacture, inventory management, distribution, after-sales services, advertising, transport, storage, financing, financial affairs, accounting, legal affairs and human resources management. At the time of comparison of functions, attention shall be paid to the degree of similarity of the assets employed by the enterprise for performing the functions. The risks mainly include the research and development risks, procurement risks, manufacturing risks, distribution risks, marketing risks, and management and financial risks;

3. Contractual terms and conditions, mainly including a transaction's subject matter, transaction amount and price, methods and conditions for payments, delivery conditions, scope of and conditions for after-sales services, stipulations on the provision of additional services, right to modify and revise the contents of a contract, duration of a contract, and right to terminate or renew a contract;

4. Economic environment, mainly including the industry profile, geographic location, market scale, market level, market share, intensity of market competition, consumer purchasing power, substitutability of products or services, prices for production factors, transport costs, and government control; and

5. Business strategies, mainly including the strategies for innovation and development, diversified business operations, risk-avoidance, and market share.

**Article 23** Under the CUPM, the price for a business transaction conducted between unaffiliated parties which is identical or similar to an affiliated transaction shall be regarded

登记的，应由合并、分立后的企业保存同期资料。

第十九条　同期资料应使用中文。如原始资料为外文的，应附送中文副本。

第二十条　同期资料应自企业关联交易发生年度的次年6月1日起保存10年。

第四章　转让定价方法

第二十一条　企业发生关联交易以及税务机关审核、评估关联交易均应遵循独立交易原则，适用合理的转让定价方法。

根据所得税法实施条例第一百一十一条的规定，转让定价方法包括可比非受控价格法、再销售价格法、成本加成法、交易净利润法、利润分割法和其他符合独立交易原则的方法。

第二十二条　适用合理的转让定价方法应进行可比性分析。可比性分析因素主要包括以下五个方面：

（一）交易资产或劳务特性，主要包括：有形资产的物理特性、质量、数量等，劳务的性质和范围，无形资产的类型、交易形式、期限、范围、预期收益等；

（二）交易各方功能和风险，功能主要包括：研发、设计、采购、加工、装配、制造、存货管理、分销、售后服务、广告、运输、仓储、融资、财务、会计、法律及人力资源管理等，在比较功能时，应关注企业为实现功能所使用资产的相似程度；风险主要包括：研发风险、采购风险、生产风险、分销风险、市场推广风险、管理及财务风险等；

（三）合同条款，主要包括：交易标的、交易数量、价格、收付款方式和条件、交货条件、售后服务范围和条件、提供附加劳务的约定、变更、修改合同内容的权利、合同有效期、终止或续签合同的权利；

（四）经济环境，主要包括：行业概况、地理区域、市场规模、市场层级、市场占有率、市场竞争程度、消费者购买力、商品或劳务可替代性、生产要素价格、运输成本、政府管制等；

（五）经营策略，主要包括：创新和开发策略、多元化经营策略、风险规避策略、市场占有策略等。

第二十三条　可比非受控价格法以非关联方之间进行的与关联交易相同或类似业务活动所取的价格作为关联

as the arm's-length price for the affiliated transaction.

The comparability analysis shall particularly focus on the examination of the differences between affiliated transactions and unaffiliated transactions in respect of the characteristics of assets transacted or services provided, contractual terms and conditions and economic environment, and shall, by the different types of transactions, contain the following information:

1. Purchase, Sale or transfer of tangible assets:

(1) Process of purchase, sale or transfer, including the time and place of a transaction, delivery conditions, delivery procedures, payment conditions, transaction quantity, time and place of after-sales services, etc;

(2) The purchase, sale or transfer stage, including the ex-factory, wholesale, retail, export and other stages;

(3) Purchase, sale or transfer of goods, including the name of goods, brand name, specifications, model, functions, structures, appearance, packaging, etc; and

(4) Purchase, sale or transfer environment, including the ethnic customs, consumers' preferences, political stability, fiscal, tax and foreign exchange policies, etc.

2. Use of tangible assets:

(1) Functions, specifications, models, structures, types, and depreciation methods of the assets;

(2) The time, period, and place of the provided right to use the assets; and

(3) The investment expenditures, maintenance fees, etc. of the asset owner for the assets.

3. Transfer and use of intangible assets:

(1) Types, purposes, applicable industries, expected return of the intangible assets; and

(2) Development of, investment in, transfer conditions for, degree of exclusive possession of, extent and period of protection by the relevant laws of the state of, transfer costs and expenses as a transferee of, functions and risks of, substitutability of, etc. of the intangible assets.

4. Accommodation, including the amount, currency, term, guaranty, credit standing of the borrower, method of repayment, method of interest computation, etc. of financing.

5. Provision of services, including the nature of business, technical requirements, level of specialty, liabilities, conditions and methods for payment, direct and indirect costs, etc.

If there is any material difference between an affiliated transaction and an unaffiliated transaction in any of the afore-mentioned aspects, reasonable adjustments shall be made on the basis of the influence of such difference on the price; if it is impossible to make reasonable adjustments, another reasonable transfer pricing method shall be selected under the provisions of this Chapter.

The CUPM may be applicable to all types of affiliated transactions.

**Article 24** Under the RPM, the resale price to an unaffiliated party for goods purchased by an affiliate minus the gross profit from a comparable unaffiliated transaction shall be regarded as the arm's-length price for goods purchased by the affiliate.

交易的公平成交价格。

可比性分析应特别考察关联交易与非关联交易在交易资产或劳务的特性、合同条款及经济环境上的差异，按照不同交易类型具体包括如下内容：

（一）有形资产的购销或转让

1．购销或转让过程，包括交易的时间与地点、交易条件、交易手续、支付条件、交易数量、售后服务的时间和地点等；

2．购销或转让环节，包括出厂环节、批发环节、零售环节、出口环节等；

3．购销或转让货物，包括品名、品牌、规格、型号、性能、结构、外型、包装等；

4．购销或转让环境，包括民族风俗、消费者偏好、政局稳定程度以及财政、税收、外汇政策等。

（二）有形资产的使用

1．资产的性能、规格、型号、结构、类型、折旧方法；

2．提供使用权的时间、期限、地点；

3．资产所有者对资产的投资支出、维修费用等。

（三）无形资产的转让和使用

1．无形资产类别、用途、适用行业、预期收益；

2．无形资产的开发投资、转让条件、独占程度、受有关国家法律保护的程度及期限、受让成本和费用、功能风险情况、可替代性等。

（四）融通资金：融资的金额、币种、期限、担保、融资人的资信、还款方式、计息方法等。

（五）提供劳务：业务性质、技术要求、专业水准、承担责任、付款条件和方式、直接和间接成本等。

关联交易与非关联交易之间在以上方面存在重大差异的，应就该差异对价格的影响进行合理调整、无法合理调整的，应根据本章规定选择其他合理的转让定价方法。可比非受控价格法可以适用于所有类型的关联交易。

第二十四条　再销售价格法以关联方购进商品再销售给非关联方的价格减去可比非关联交易毛利后的金额作为关联方购进商品的公平成交价格。其计算公式如下：

ALRMH-CNBM00008863

The calculation formula shall be as follows:

Arm's-length price = resale price to an unaffiliated party × (1 – gross profit rate of a comparable unaffiliated transaction)

Gross profit rate of a comparable unaffiliated transaction = gross profit of a comparable unaffiliated transaction / net income of a comparable unaffiliated transaction × 100%

The comparability analysis shall particularly focus on the differences in functions, risks, and contractual terms and conditions between an affiliated transaction and an unaffiliated transaction, as well as other factors influencing the gross profit rate, specifically including the sales, advertising and service functions, inventory risk, value and useful life of machinery and equipment, use and value of intangible assets, wholesale or retail stage, business experience, accounting treatments, management efficiency, etc.

If there is any material difference between an affiliated transaction and an unaffiliated transaction in any of the afore-mentioned aspects, reasonable adjustments shall be made based on the influence of such difference on the gross profit rate; if it is impossible to make reasonable adjustments, another reasonable transfer pricing method shall be selected under the provisions of this Chapter.

Generally, the RPM shall apply to a reseller's simple processing or sheer purchase-sale business which does not involve the substantial value-added processing of goods such as alteration of appearance, functions or structure or change of trademark of goods.

**Article 25** Under the CPM, the reasonable cost of an affiliated transaction plus the gross profit from a comparable unaffiliated transaction shall be regarded as the arm's-length price for the affiliated transaction. The calculation formula shall be as follows:

Arm's-length price = reasonable costs of an affiliated transaction × (1 + cost-plus rate of a comparable unaffiliated transaction)

Cost-plus rate of a comparable unaffiliated transaction = gross profit of a comparable unaffiliated transaction / cost of a comparable unaffiliated transaction ×100%

The comparability analysis shall particularly focus on the differences in functions, risks, and contractual terms and conditions between an affiliated transaction and an unaffiliated transaction as well as other factors influencing the cost-plus rate, specifically including the manufacturing, processing, installing and testing functions, market and foreign exchange risks, value and useful life of machinery and equipment, use and value of intangible assets, business experience, accounting treatments, management efficiency, etc.

If there is any material difference between an affiliated transaction and an unaffiliated transaction in any of the afore-mentioned aspects, reasonable adjustments shall be made based on the influence of such difference on the cost-plus rate; if it is impossible to make reasonable adjustments, another reasonable transfer pricing method shall be selected under the provisions of this Chapter.

Generally, the CPM shall apply to affiliated transactions involving the purchase, sale, transfer or use of tangible assets, provision of services, or accommodation.

**Article 26** Under the TNMM, the net profit from an affiliated transaction shall be determined by the profit level indicators of a comparable unaffiliated transaction. Profit level indicators shall include the rate of return on assets, sale profit rate, net cost-plus rate, berry ratio, etc.

The comparability analysis shall particularly focus on the differences in functions, risks, and economic environment between an affiliated transaction and an unaffiliated transaction as well as other factors influencing the operating profits, specifically including the functions performed, risks assumed, assets employed, industrial and market conditions, business scale, economic cycle and product life cycle, allocation of costs, expenses, income and assets among respective transactions, accounting treatments, business management efficiency, etc.

公平成交价格＝再销售给非关联方的价格×（1-可比非关联交易毛利率）

可比非关联交易毛利率＝可比非关联交易毛利/可比非关联交易收入净额×100%

可比性分析应特别考察关联交易与非关联交易在功能风险及合同条款上的差异以及影响毛利率的其他因素，具体包括销售、广告及服务功能，存货风险，机器、设备的价值及使用年限，无形资产的使用及价值，批发或零售环节，商业经验，会计处理及管理效率等。

关联交易与非关联交易之间存以上方面存在重大差异的，应就该差异对毛利率的影响进行合理调整，无法合理调整的，应根据本章规定选择其他合理的转让定价方法。

再销售价格法通常适用于再销售者未对商品进行改变外型、性能、结构或更换商标等实质性增值加工的简单加工或单纯购销业务。

第二十五条  成本加成法以关联交易发生的合理成本加上可比非关联交易毛利作为关联交易的公平成交价格，其计算公式如下：

公平成交价格＝关联交易的合理成本×（1+可比非关联交易成本加成率）

可比非关联交易成本加成率＝可比非关联交易毛利/可比非关联交易成本×100%

可比性分析应特别考察关联交易与非关联交易在功能风险及合同条款上的差异以及影响成本加成率的其他因素，具体包括制造、加工、安装及测试功能，市场及汇兑风险，机器、设备的价值及使用年限，无形资产的使用及价值，商业经验，会计处理及管理效率等。

关联交易与非关联交易之间在以上面存在重大差异的，应就该差异对成本加成率的影响进行合理调整，无法合理调整的，应根据本章规定选择其他合理的转让定价方法。

成本加成法通常适用于有形资产的购销、转让和使用，劳务提供或资金融通的关联交易。

第二十六条  交易净利润法以可比非关联交易的利润率指标确定关联交易的净利润。利润率指标包括资产收益率、销售利润率、完全成本加成率、贝里比率等。

可比性分析应特别考察关联交易与非关联交易之间在功能风险及经济环境上的差异以及影响营业利润的其他因素，具体包括执行功能、承担风险和使用资产、行业和市场情况、经营规模、经济周期和产品生命周期、成本、费用、所得和资产在各交易间的分摊，会计处理及经营管理效率等。

ALRMH-CNBM00008864

If there is any material difference between an affiliated transaction and an unaffiliated transaction in any of the afore-mentioned aspects, reasonable adjustments shall be made on the basis of the influence of such difference on the operating profits; if it is impossible to make reasonable adjustments, another reasonable transfer pricing method shall be selected under the provisions of this Chapter.

Generally, the TNMM shall apply to affiliated transactions that involve the purchase, sale, transfer or use of tangible assets, the transfer or use of intangible assets, and the provision of services.

**Article 27** Under the PSM, the profit allocated to each party to an affiliated transaction shall be determined on the basis of their respective contributions to the consolidated profits from the affiliated transaction. The PSM may be divided into the general PSM and the residual PSM.

Under the general PSM, the profits allocated to each party to an affiliated transaction shall be determined according to the functions performed, risks assumed and assets employed by each party.

Under the residual PSM, the residual profit shall be first determined by deducting the routine profit allocated to each party to an affiliated transaction from the consolidated profits from the affiliated transaction of all parties, and then the residual profit shall be allocated on the basis of each party's contribution to the residual profit.

The comparability analysis shall particularly focus on the functions performed, risks assumed and assets employed by each transaction party; the allocation of costs, expenses, income and assets among all transaction parties; the accounting treatment; the reliability of the information and assumptions adopted to determine the contribution of each transaction party to the residual profit; etc.

Generally, the PSM shall apply where an affiliated transaction is highly integrated and it is difficult to assess separately the transaction result of each party to the transaction.

Chapter V Transfer Pricing Investigation and Adjustment

**Article 28** The taxation organs shall have the power to determine enterprises for investigation, and conduct transfer pricing investigations and adjustments under the provisions on tax inspections of the LATC and DRILATC. An enterprise under investigation must faithfully report on its affiliated transactions and provide relevant information, and shall not refuse the report or provision or conceal the relevant information.

**Article 29** Transfer pricing investigations shall focus on the following enterprises:

1. Enterprises with a considerable amount of affiliated transactions or more types of affiliated transactions;

2. Enterprises with longtime losses or slight profits or with leaping profits;

3. Enterprises with profits lower than the average of the same industry;

4. Enterprises with a profit level which obviously does not match the functions performed and risk assumed by the enterprises;

5. Enterprises engaging in transactions with affiliates in a tax haven;

关联交易与非关联交易之间在以上方面存在重大差异的，应就该差异对营业利润的影响进行合理调整，无法合理调整的，应根据本章规定选择其他合理的转让定价方法。交易净利润法通常适用于有形资产的购销、转让和使用，无形资产的转让和使用以及劳务提供等关联交易。

第二十七条　利润分割法根据企业与其关联方对关联交易合并利润的贡献计算各自应该分配的利润额。利润分割法分为一般利润分割法和剩余利润分割法。

一般利润分割法根据关联交易各参与方所执行的功能、承担的风险以及使用的资产，确定各自应取得的利润。

剩余利润分割法将关联交易各参与方的合并利润减去分配给各方的常规利润的余额作为剩余利润，再根据各方对剩余利润的贡献程度进行分配。

可比性分析应特别考察交易各方执行的功能、承担的风险和使用的资产，成本、费用、所得和资产在各交易方之间的分摊，会计处理，确定交易各方对剩余利润贡献所采用信息和假设条件的可靠性等。

利润分割法通常适用于各参与方关联交易高度整合且难以单独评估各方交易结果的情况。

第五章　转让定价调查及调整

第二十八条　税务机关有权依据税收征收管理法及其实施细则有关税务检查的规定，确定调查企业，进行转让定价调查、调整。被调查企业必须如实报告其关联交易情况，并提供相关资料，不得拒绝或隐瞒。

第二十九条　转让定价调查应重点选择以下企业：

（一）关联交易数额较大或类型较多的企业；

（二）长期亏损、微利或跳跃性盈利的企业；

（三）低于同行业利润水平的企业；

（四）利润水平与其所承担的功能风险明显不相匹配的企业；

（五）与避税港关联方发生业务往来的企业；

ALRMH-CNBM00008865

Notice of the State Administration of Taxation on Issuing the Measures for the Implementation of Special Tax Adjustments (for Trial Implementation)

6. Enterprises that fail to file their affiliated transaction declarations or prepare the contemporaneous documentation as required; and

7. Enterprises that obviously violate the arm's-length principle.

**Article 30** In principle, no transfer pricing investigation and adjustment shall be made as to a transaction between domestic affiliates whose actual tax burdens are the same, provided that the transaction does not directly or indirectly lead to the decrease of the overall tax revenue of the state.

**Article 31** Taxation organs shall carry out desk reviews and determine enterprises to be investigated in light of the routine administration of tax collection. The desk review refers to a comprehensive assessment and analysis of the business operations, affiliated transactions and other situations of an enterprise under investigation mainly on basis of the tax payment data submitted by the enterprise in the past years such as annual income tax returns and reporting forms for affiliated transactions.
Enterprises may submit the contemporaneous documentation to the taxation organs at the desk review stage.

**Article 32** The taxation organ shall conduct an on-site investigation of a determined enterprise in accordance with Chapter VI of the EITL Law, Chapter VI of the RIEITL, Chapter IV of the LATC and Chapter VI of the DRILATC.

1. The number of the on-site investigators shall not be less than 2.

2. During an on-site investigation, the investigators shall show their Tax Investigation Certificate, and serve a Tax Inspection Notice on the enterprise.

3. During an on-site investigation, as needed, such manners as interview, required provision of account books and records and site check may be adopted under the statutory procedures.

4. A specific person shall be assigned to make the Interview (Investigation) Transcripts, when a party concerned is interviewed. The interviewee shall be informed of the legal liabilities for his failure to provide true information. The Interview (Investigation) Transcripts shall be verified and confirmed by the interviewee.

5. In accordance with Article 86 of the DRILATC, when it is necessary to require the provision of account books and relevant materials, the taxation organ shall produce a Notice of Required Provision of Account Books and a Checklist of Account Books and Materials Required to Be Provided, handle the relevant legal formalities, properly keep the account books and relevant materials provided, and return them exactly as they were to the enterprise within the statutory time limit.

6. The investigators shall make the Interview (Investigation) Transcripts for the problems and situations found during an on-site investigation. The Interview (Investigation) Transcripts shall be signed by at least 2 investigators and, as needed, verified and confirmed by the investigated enterprise. If the investigated enterprise refuses to verify and confirm the transcripts, the transcripts may be signed for confirmation by at least 2 tax investigators.

7. The data related to the investigated case may be acquired upon request in the manner of transcripts, sound recording, visual recording, photograph and duplication, but the names of keepers and sources of the original data must be indicated. The keepers or providers of the original data shall confirm the data by an endorsement of "IN CONFORMITY WITH THE

（六）未按规定进行关联申报或准备同期资料的企业；

（七）其他明显违背独立交易原则的企业。

第三十条 实际税负相同的境内关联方之间的交易，只要该交易没有直接或间接导致国家总体税收收入的减少，原则上不做转让定价调查、调整。

第三十一条 税务机关应结合日常征管工作，开展案头审核，确定调查企业。案头审核主要根据被调查企业历年报送的年度所得税申报资料及关联业务往来报告表等纳税资料，对企业的生产经营状况、关联交易等情况进行综合评估分析。
企业可以在案头审核阶段向税务机关提供同期资料。

第三十二条 税务机关对已确定的调查对象，应根据所得税法第六章、所得税法实施条例第六章、征管法第四章及征管法实施细则第六章的规定，实施现场调查。

（一）现场调查人员须2名以上。

（二）现场调查时调查人员应出示《税务检查证》，并送达《税务检查通知书》。

（三）现场调查可根据需要依照法定程序采取询问、调取账簿资料和实地核查等方式。

（四）询问当事人应有专人记录《询问（调查）笔录》，并告知当事人如实提供情况应当承担的法律责任。《询问（调查）笔录》应交当事人核对确认。

（五）需调阅账簿及有关资料时，应按照征管法实施细则第八十六条的规定，填制《调取账簿资料通知书》、《调取账簿资料清单》，办理有关法定手续，调取的账簿、记账凭证等资料，应妥善保管，并按法定期限如数退还。

（六）实地核查过程中发现的问题及情况，由调查人员填写《询问（调查）笔录》。《询问（调查）笔录》应由2名以上调查人员签字，并根据需要由被调查企业核对确认，若被调查企业拒绝，可由2名以上调查人员签认备案。

（七）可以以记录、录音、录像、照相和复制方式索取与案件有关的资料，但必须注明原件的保存方及出处，由原件保存或提供方核对签注"与原件核对无误"字样，并盖章或押印。

ALRMH-CNBM00008866

ORIGINAL UPON VERIFICATION" and affix their seals or imprints thereto.

8. If witnesses are needed to testify, the taxation organ shall inform the witnesses of the legal liabilities for their failure to provide true information. The witness testimonies shall be signed or imprinted by the witnesses in person.

**Article 33** In accordance with paragraph 2 of Article 43 of the EITL and Article 114 of the RIEITL, at the time of conducting a transfer pricing investigation, the taxation organ shall have the power to require an enterprise under investigation and its affiliates as well as other enterprises relevant to the investigation of the affiliated business (hereinafter referred to as the comparable enterprises) to provide the relevant documents, and serve a Notice on Tax-related Matters on them.

1. The enterprise under investigation shall provide the relevant materials within the time limit as specified in the Notice on Tax-related Matters. If it is unable to provide them on time for any special reason, it shall file a written application for extension to the taxation organ, and upon approval, may provide them during an extension period of not more than 30 days. The taxation organ shall make a reply by letter within 15 days as of the date of receipt of the extension application of the enterprise. If the taxation organ fails to make a reply by letter within the time limit, it shall be deemed as having approved the enterprise's extension application.

2. The affiliates of the investigated enterprise and comparable enterprises shall provide the relevant materials within the time limit as agreed on with the taxation organ which generally shall not exceed 60 days.

The enterprise and its affiliates as well as the comparable companies shall provide true and complete relevant materials as required by the taxation organ.

**Article 34** The taxation organ shall, in accordance with the relevant provisions of Chapter II of these Measures, verify an enterprise's affiliation reporting, and require the enterprise to fill out the Analysis Form of Enterprise Comparability Factors.

On the basis of the affiliation reporting and materials provided by the enterprise, the taxation organ shall fill out the Determination Form for Enterprise Affiliations, Determination Form for Affiliated Transactions of Enterprises and Determination Form for Analysis of Enterprise Comparability Factors, which shall be verified and confirmed by the enterprise under investigation.

**Article 35** If a transfer pricing investigation involves the investigation of and taking of evidence from the affiliates and comparable enterprises, the taxation organ shall serve a Tax Inspection Notice on them to investigate and take evidence.

**Article 36** When examining the relevant data provided by an enterprise and its affiliates as well as the comparable enterprises, the taxation organ may verify the data in such manners as site investigation, issuance of a letter for investigation assistance and consultation of open information. If it is necessary to obtain materials from overseas, it may initiate the information exchange procedures in a relevant tax agreement according to the relevant provisions, or investigate and gather the relevant information via the Chinese institutions stationed abroad. For the relevant data involving an overseas affiliate, the taxation organ may require the enterprise to provide certificates issued by a notarial agency.

**Article 37** The taxation organ shall analyze and evaluate whether the affiliated transactions of an enterprise conform to the arm's-length principle by selecting and using a transfer

（八）需要证人作证的，应事先告知证人不如实提供情况应当承担的法律责任。证人的证言材料应由本人签字或捺印。

第三十三条 根据所得税法第四十三条第二款及所得税法实施条例第一百一十四条的规定，税务机关在实施转让定价调查时，有权要求企业及其关联方、以及与关联业务调查有关的其他企业（以下简称可比企业）提供相关资料，并送达《税务事项通知书》。

（一）企业应在《税务事项通知书》规定的期限内提供相关资料，因特殊情况不能按期提供的，应向税务机关提交书面延期申请，经批准，可以延期提供，但最长不得超过30日。税务机关应自收到企业延期申请之日起15日内函复，逾期未函复的，视同税务机关已同意企业的延期申请。

（二）企业的关联方以及可比企业应在与税务机关约定的期限内提供相关资料，约定期限一般不应超过60日。
企业、关联方及可比企业应按税务机关要求提供真实、完整的相关资料。

第三十四条 税务机关应按技术办法第二章的有关规定，核实企业申报信息，并要求企业填制《企业可比性因素分析表》。
税务机关在企业关联申报和提供资料的基础上，填制《企业关联关系认定表》、《企业关联交易认定表》和《企业可比性因素分析认定表》，并由被调查企业核对确认。

第三十五条 转让定价调查涉及向关联方和可比企业调查取证的，税务机关向企业送达《税务检查通知书》，进行调查取证。

第三十六条 税务机关审核企业、关联方及可比企业提供的相关资料，可采用现场调查、发函协查和查阅公开信息等方式核实。需取得境外有关资料的，可按有关规定启动税收协定的情报交换程序，或通过我驻外机构调查收集有关信息。涉及境外关联方的相关资料，税务机关也可要求企业提供公证机构的证明。

第三十七条 税务机关应选用本办法第四章规定的转让定价方法分析、评估企业关联交易是否符合独立交易原

ALRMH-CNBM00008867

Case 2:09-md-02047-EEF-MBN Document 21750-118 Filed 08/31/18 Page 16 of 28

Notice of the State Administration of Taxation on Issuing the Measures for the Implementation of Special Tax Adjustments (for Trial Implementation)

pricing method as provided in Chapter IV of these Measures, and may use open information and undisclosed information during the analysis and evaluation.

**Article 38** When analyzing and evaluating the affiliated transactions of an enterprise, in principle, the taxation organ shall not adjust the differences in operating profits caused by the differences between the enterprise and the comparable enterprises in the use of working capital. If it is really necessary to make an adjustment, it shall report, level by level, to the State Administration of Taxation (hereinafter referred to as the SAT) for approval.

**Article 39** Enterprises which are engaged in processing and manufacturing to order of affiliates and do not undertake functions such as business decision making, research and development of products and sale shall not assume the risks and losses caused by faulty decisions, operation under capacity, unmarketable products, etc., and usually keep a certain level of profit margin. For enterprises that suffer losses, the taxation organs shall select appropriate comparable prices or comparable enterprises to determine the profit levels of them based on an economic analysis.

**Article 40** Where the payments and receipts under the transactions between an enterprise and its affiliates are offset each other, the taxation organ shall, in principle, restore the offset transactions at the time of making the comparability analysis and tax adjustments.

**Article 41** When the taxation organ analyzes and evaluates an enterprise's profit level in the quartile method, it shall, in principle, make an adjustment according to a value not lower than the median if the profit level of the enterprise is lower than the median of the profit rate range of the comparable enterprises.

**Article 42** If, upon investigation, the affiliated transactions of an enterprise conform to the arm's-length principle, the taxation organ shall make a transfer pricing investigation conclusion and serve a Notice of Special Tax Investigation Conclusion on the enterprise.

**Article 43** If, upon investigation, the affiliated transactions of an enterprise do not conform to the arm's-length principle, resulting in the decrease of enterprise's taxable revenues or income, the taxation organ shall make transfer pricing tax adjustments under the following procedures:

1. The taxation organ shall draft a preliminary special tax adjustment plan on the basis of estimation, demonstration and comparable analysis;

2. The taxation organ shall negotiate with the enterprise according to the preliminary adjustment plan. The taxation organ and the enterprise shall appoint their respective chief negotiators. The investigators shall make the Negotiation Minutes which shall be signed and confirmed by the chief negotiators of both parties. If the enterprise refuses to sign the Negotiation Minutes, the Negotiation Minutes may be signed for confirmation by at least 2 tax investigators;

3. If the enterprise raises any objection to the preliminary adjustment plan, it shall provide further relevant materials within the time limit as prescribed by the taxation organ. After receiving the relevant materials, the taxation organ shall carefully examine them and timely make an examination decision;

4. According to the examination decision, the taxation organ shall serve a Notice on Preliminary Adjustments under a Special Tax Investigation on the enterprise. If the enterprise raises any objection to the preliminary adjustment opinion, it shall file the

则，分析评估时可以使用公开信息资料，也可以使用非公开信息资料。

第三十八条　税务机关分析、评估企业关联交易时，原则上不应对企业运营资本占用不同而对于企业利润产生的差异原则上不做调整。确需调整的，须层报国家税务总局批准。

第三十九条　按照关联方订单从事加工制造、不承担经营决策、产品研发、销售等功能的企业，不应承担由于决策失误、开工不足、产品滞销等原因带来的风险和损失，通常应保持一定的利润率水平。对出现亏损的企业，税务机关应在经济分析的基础上，选择适当的可比价格或可比企业，确定企业的利润水平。

第四十条　企业与关联方之间收取价款与支付价款的交易相互抵消的，税务机关在可比性分析和纳税调整时，原则上应还原被抵消交易。

第四十一条　税务机关采用四分位法分析、评估企业利润水平时，企业利润水平低于可比企业利润率区间中位值的，原则上应按照不低于中位值进行调整。

第四十二条　经调查，企业关联交易符合独立交易原则的，税务机关应做出转让定价调查结论，并向企业送达《特别纳税调查结论通知书》。

第四十三条　经调查，企业关联交易不符合独立交易原则而减少其应纳税收入或者所得额的，税务机关应按以下程序实施转让定价纳税调整：

（一）在测算、论证和可比性分析的基础上，拟定特别纳税调查初步调整方案；

（二）根据初步调整方案与企业协商谈判，税企双方均应指定主谈人，调查人员应做好《协商内容记录》，并由双方主谈人签字确认，若企业拒签，可由2名以上调查人员签认备案；

（三）企业对初步调整方案有异议的，应在税务机关规定的期限内进一步提供相关资料，税务机关收到资料后，应认真审核，并及时做出审议决定；

（四）根据审议决定，向企业送达《特别纳税调查初步调整通知书》，企业对初步调整意见有异议的，应自收到通知书之日起7日内书面提出，税务机关收到企业意见后，应

Case 2:09-md-02047-EEF-MBN Document 21750-118 Filed 08/31/18 Page 17 of 28

Notice of the State Administration of Taxation on Issuing the Measures for the Implementation of Special Tax Adjustments (for Trial Implementation)

objection in writing within 7 days as of the date of receipt of the Notice. The taxation organ shall negotiate with the enterprise and examine the relevant materials again after receiving the objection from the enterprise. If the enterprise fails to file an objection within the above time limit, it shall be deemed as having acceded to the preliminary adjustment opinion; and

5. The taxation organ shall determine the final adjustment plan, and serve a Notice on Adjustments under a Special Taxation Investigation on the enterprise.

**Article 44** After receiving the Notice on Adjustments under a Special Taxation Investigation, an enterprise shall pay tax and interest within the specified time limit.

**Article 45** After executing the transfer pricing adjustments to an enterprise, the taxation organ shall administer a 5-year follow-up of the enterprise from the year following the last year of adjustments to the enterprise. During the period of follow-up, the enterprise shall provide the contemporaneous documentation for a follow-up year before June 20 of the year following the follow-up year, and the taxation organ shall focus on analyzing and evaluating the following contents based on the contemporaneous documentation and tax return information:

1. The enterprise's investment, business operation and changes thereof;

2. The changes of the amounts as shown on the tax returns submitted by the enterprise;

3. The changes of the enterprise's operating results; and

4. The changes of affiliated transactions.

If the taxation organ finds any transfer pricing abnormality of an enterprise during the period of follow-up, it shall timely communicate with the enterprise, and require it to make self-adjustment or make the transfer pricing investigation and adjustments according to the relevant provisions of this Chapter.

Chapter VI Administration of Advance Pricing Arrangements

**Article 46** In accordance with Article 42 of the EITL, Article 113 of its RIEITL and Article 53 of the DRILATC, an enterprise may reach an advance pricing arrangement (hereinafter referred to as the APA) with the taxation organ regarding the pricing principles and computation methods for its affiliated transactions in future years. The negotiation and execution of an APA shall usually undergo six stages: preparatory meeting, formal application, examination and evaluation, negotiation, signing, and monitoring of execution. The APAs may be divided into three types: unilateral, bilateral and multilateral APAs.

**Article 47** An APA application shall be processed by the taxation organ at or above the level of a districted city or autonomous prefecture.

**Article 48** Generally, an APA shall apply to an enterprise that meets all of the following requirements:

1. The annual amount of affiliated transactions of the enterprise is not less than 40 million yuan;

2. The enterprise performs the obligation of affiliation reporting in accordance with the law; and

再次协商审议；企业逾期未提出异议的，视为同意初步调整意见；

（五）确定最终调整方案，向企业送达《特别纳税调查调整通知书》。

第四十四条 企业收到《特别纳税调查调整通知书》后，应按规定期限缴纳税款及利息。

第四十五条 税务机关对企业实施转让定价纳税调整后，应自企业被调整的最后年度的下一年度起5年内实施跟踪管理。在跟踪管理期内，企业应在跟踪年度的次年6月20日之前向税务机关提供跟踪年度的同期资料，税务机关根据同期资料和纳税申报资料重点分析、评估以下内容：

（一）企业投资、经营状况及其变化情况；

（二）企业纳税申报额变化情况；

（三）企业经营成果变化情况；

（四）关联交易变化情况等。

税务机关在跟踪管理期内发现企业转让定价异常等情况，应及时与企业沟通，要求企业自行调整，或按照本章有关规定开展转让定价调查调整。

第六章 预约定价安排管理

第四十六条 企业可以依据所得税法第四十二条、所得税法实施条例第一百一十三条及征管法实施细则第五十三条的规定，与税务机关就企业未来年度关联交易的定价原则和计算方法达成预约定价安排。预约定价安排的谈签与执行通常经过预备会谈、正式申请、审核评估、磋商、签订安排和监控执行6个阶段。预约定价安排包括单边、双边和多边3种类型。

第四十七条 预约定价安排应由设区的市、自治州以上的税务机关受理。

第四十八条 预约定价安排一般适用于同时满足以下条件的企业：

（一）年度发生的关联交易金额在4000万元人民币以上；

（二）依法履行关联申报义务；

ALRMH-CNBM00008869

Notice of the State Administration of Taxation on Issuing the Measures for the Implementation of Special Tax Adjustments (for Trial Implementation)

3. The enterprise prepares, keeps and submits the contemporaneous documentation according to the relevant provisions.

**Article 49** An APA shall be applicable to the affiliated transactions conducted in three to five consecutive years starting from the year following the year of an enterprise's filing a formal written application.

The negotiation and signing of an APA shall not affect the taxation organ's transfer pricing investigation and adjustments of the affiliated transactions during the year of an enterprise's filing a formal written APA application or during the previous years.

If the affiliated transactions during the year of application of an enterprise or previous years are identical with or similar to those during the years to which the APA applies, at the request of the enterprise and upon the approval of the taxation organ, the pricing principles and computation methods determined in the APA may also apply to the evaluation and adjustments of the affiliated transactions conducted during the year of application or previous years.

**Article 50** Before formally applying for negotiating and signing an APA, an enterprise shall express an intention to negotiate and sign an APA in writing to the taxation organ. The taxation organ may, at the written request of the enterprise, arrange a preparatory meeting with the enterprise about the relevant contents of the APA and the feasibility of reaching an APA, and make the APA Meeting Minutes. The preparatory meeting may be conducted in an anonymous way.

1. To apply for a unilateral APA, an enterprise shall express an intention to negotiate and sign a unilateral APA in writing to the taxation organ. During the preparatory meeting period, the enterprise shall provide data in respect of the following contents, and discuss them with the taxation organ:

(1) The applicable years of the arrangement;

(2) The affiliates and affiliated transactions involved in the arrangement;

(3) The information on the enterprise's production and business operations during the previous years;

(4) A statement of the functions performed and risks assumed by the affiliates involved in the arrangement;

(5) Whether to solve the transfer pricing issues during the previous years in the method determined in the arrangement; and

(6) Other situations needing an explanation.

2. To apply for a bilateral or multilateral APA, an enterprise shall express an intention to negotiate and sign a bilateral or multilateral APA in writing to the SAT and the competent taxation organ at the same time. The SAT shall organize a preparatory meeting with the enterprise. The preparatory meeting shall cover the following special contents in addition to those as mentioned in subparagraph 1 hereof:

(1) The information on an application for a preparatory meeting with the competent tax authority of the other contracting party to a tax agreement;

(2) The information on the production and business operations and affiliated transactions during the previous years of the affiliates involved in the arrangement; and

（三）按规定准备、保存和提供同期资料。

第四十九条　预约定价安排适用于自企业提出正式书面申请年度的次年起3至5个连续年度的关联交易。

预约定价安排的谈签不影响税务机关对企业提交预约定价安排正式书面申请当年或以前年度关联交易的转让定价调查调整。

如果企业申请当年或以前年度的关联交易与预约定价安排适用年度相同或类似，经企业申请，税务机关批准，可将预约定价安排确定的定价原则和计算方法适用于申请当年或前年度关联交易的评估和调整。

第五十条　企业正式申请谈签预约定价安排前，应向税务机关书面提出谈签意向，税务机关可以根据企业的书面要求，与企业就预约定价安排的相关内容及达成预约定价安排的可行性开展预备会谈，并签制《预约定价安排会谈记录》。预备会谈可以采用匿名方式。

（一）企业申请单边预约定价安排的，应向税务机关书面提出谈签意向。在预备会谈期间，企业应就以下内容提供资料，并与税务机关进行讨论：

1．安排的适用年度；

2．安排涉及的关联方及关联交易；

3．企业以前年度生产经营情况；

4．安排涉及各关联方功能和风险的说明；

5．是否应用安排确定的方法解决以前年度的转让定价问题；

6．其他需要说明的情况。

（二）企业申请双边或多边预约定价安排的，应同时向国家税务总局和主管税务机关书面提出谈签意向，国家税务总局组织与企业开展预备会谈，预备会谈的内容除本条第（一）项外，还应特别包括：

1．向税收协定缔约对方税务主管当局提出预备会谈申请的情况；

2．安排涉及的关联方以前年度生产经营情况及关联交易情况；

ALRMH-CNBM00008870

Case 2:09-md-02047-EEF-MBN Document 21750-118 Filed 08/31/18 Page 19 of 28

Notice of the State Administration of Taxation on Issuing the Measures for the Implementation of Special Tax Adjustments (for Trial Implementation)

(3) The pricing principles and computation methods to be adopted in the APA submitted to the competent tax authority of the other contracting party to a tax agreement.

3. If an agreement is reached at the preparatory meeting, the taxation organ shall notify the enterprise in writing within 15 days as of the date on which the agreement is reached, and may start the formal negotiation about the matters related to the APA and serve a Notice on Formal APA Negotiation on the enterprise. If no agreement is reached at the preparatory meeting, the taxation organ shall notify the enterprise in writing within 15 days as of the date of termination of the last preparatory meeting and serve a Notice on Rejecting an Enterprise's APA Application on the enterprise to reject the enterprise's APA application, but shall make an explanation of the rejection.

**Article 51** An enterprise shall submit a written APA application report and a Formal Application Form for an APA to the taxation organ within 3 months as of the date of receipt of a notice of formal meeting from the taxation organ. If the enterprise applies for a bilateral or multilateral APA, it shall submit a Formal Application Form for an APA and an Application Form for Initiating Mutual Consultation Procedures to the SAT and the competent taxation organ at the same time.

1. The written APA application report shall include the following:

(1) The information on the organizational structure of the relevant group, internal structure of a company, affiliations and affiliated transactions;

(2) The enterprise's financial and accounting statements and data for the recent 3 years and data on product functions and assets (including intangible and tangible assets);

. . . . . .

3. 向税收协定缔约对方税务主管当局提出的预约定价安排拟采用的定价原则和计算方法。

（三）预备会谈达成一致意见的，税务机关应自达成一致意见之日起15日内书面通知企业，可以就预约定价安排相关事宜进行正式会谈，并向企业送达《预约定价安排正式会谈通知书》；预备会谈不能达成一致意见的，税务机关应自最后一次预备会谈结束之日起15日内书面通知企业，向企业送达《拒绝企业申请预约定价安排通知书》，拒绝企业申请预约定价安排，并说明理由。

第五十一条 企业应在接到税务机关正式会谈通知之日起3个月内，向税务机关提出预约定价安排书面申请报告，并报送《预约定价安排正式申请书》。企业申请双边或多边预约定价安排的，应将《预约定价安排正式申请书》和《启动相互协商程序申请书》同时报送国家税务总局和主管税务机关。

（一）预约定价安排书面申请报告应包括如下内容：

1. 相关的集团组织架构、公司内部结构、关联关系、关联交易情况；

2. 企业近三年财务、会计报表资料、产品功能和资产（包括无形资产和有形资产）的资料；

. . . . . .

Dear visitor, you are attempting to view a subscription-based section of lawinfochina.com. If you are already a subscriber, please login to enjoy access to our databases . If you are not a subscriber, please subscribe . You can purchase a single article through Online Pay to immediately view and download this document. Should you have any questions, please contact us at:

+86 (10) 8268-9699 or +86 (10) 8266-8266 (ext. 153)

Mobile: +86 133-1157-0712

Fax: +86 (10) 8266-8268

database@chinalawinfo.com

您好：您现在要进入的是北大法律英文网会员专区，如您是我们英文用户可直接 登录，进入会员专区查询您所需要的信息；如您还不是我们的英文用户，请注册并交纳相应费用成为我们的英文会员；您也可通过网上支付订单即时购买，支付成功即可立即浏览和下载本篇法规。如有问题请来电咨询；

Tel: +86 (10) 82689699, +86 (10) 82668266 ext. 153

Mobile: +86 13311570712

Fax: +86 (10) 82668268

E-mail: database@chinalawinfo.com

【法宝引证码】CLI.4.112360(EN)　　北大法宝www.lawinfochina.com

    

**Message: Please kindly comment on the present translation.**

Translations are by lawinfochina.com, and we retain exclusive copyright over content found on

ALRMH-CNBM00008871

Case 2:09-md-02047-EEF-MBN   Document 21750-118   Filed 08/31/18   Page 20 of 28

Notice of the State Administration of Taxation on Issuing the Measures for the Implementation of Special Tax Adjustments (for Trial Implementation)

Confirmation Code: ☐ `0707` Click image to reset code!

Submit

our website except for content we publish as authorized by respective copyright owners or content that is publicly available from government sources.

Due to differences in language, legal systems, and culture, English translations of Chinese law are for reference purposes only. Please use the official Chinese-language versions as the final authority. lawinfochina.com and its staff will not be directly or indirectly liable for use of materials found on this website.

We welcome your comments and suggestions, which assist us in continuing to improve the quality of our materials.

Home | Products and Services | FAQ | Disclaimer | Chinese | Site Map

©2012 Chinalawinfo Co., Ltd    database@chinalawinfo.com  Tel: +86 (10) 8268-9699   京ICP证010230-8

ALRMH-CNBM00008872

**Name:**  James Vincent Feinerman

**Address:**  7824 Moorland Lane
                    Bethesda, MD 20814
                    Tel.:  (301) 951-1020

e-mail: feinerma@law.georgetown.edu

**Born:**  October 30, 1950

Georgetown University Law Center
600 New Jersey Avenue, N.W.
Washington, DC 20001
          Tel.: (202) 662-9474
          Fax:  (202) 662-4030

**Education:**

Preparatory:  Loyola Academy, Wilmette, Illinois
                     Graduated 1968

College:  Yale, B.A., 1971
        Course:  Chinese Studies
        Honors:  B.A. with honors
                    Three NDFL/Ford Foundation Summer Fellowships
                    (for Chinese Language Study:  1968, 1969 and 1970)
                    Yale-in-China Fellowship, Hong Kong, 1971-1973

Graduate:  Yale University, 1973-1975; 1976-1977
                    Department:  East Asian Languages and Literatures
                    Degrees:  M.A., 1974; M. Phil., 1975; Ph.D., 1979
                    Dissertation Title:  *The Poetry of Wang Wei*

Legal:  Harvard Law School, J.D., 1979
        Honors and Activities:  Board of Student Advisers
                                Editor, Harvard International Law Journal
                                Teaching Fellow, Prof. Fried (First Year Contracts)
                                Robert A. Taft Scholarship
                                CSCPRC Fellowship for Study in the
                                    People's Republic of China

**Employment Experience:**

1971-1973        Tutor, Department of English
                        The Chinese University of Hong Kong

1973-1975        Assistant to the Committee,
1976-1977        Yale College Undergraduate Admissions Office

1976                Summer Associate, Mayer, Brown & Platt
                        Chicago, Illinois

**JIA: Exhibit 409 - Exhibit B**

**James V. Feinerman**                    -2-

**Employment Experience (continued):**

1976-1977        Research Assistant, Prof. Jerome A. Cohen
                    Harvard Law School

1977            Summer Associate, Orrick, Herrington, Rowley & Sutcliffe
                    San Francisco, California

1978            Summer Associate, Davis Polk & Wardwell
                    New York, New York

1978-1979        Teaching Fellow, Contracts I, Prof. Charles Fried
                    Harvard Law School

1979-1983        Associate, Davis Polk & Wardwell
                    New York, New York
                    (on leave while studying in China)

1982-1983        Lecturer on Law, Peking University Law Department
                    Peking, People's Republic of China

1983-1985        Administrative Director and Fellow
                    East Asian Legal Studies Program
                    Harvard Law School, Cambridge, Massachusetts

1985-1986        Visiting Professor, Georgetown University Law Center

1986            Fulbright Visiting Researcher, Faculty of Law
                    Kyoto University, Kyoto, Japan
                    (Fulbright Research Award, Japan-U.S. Educational Commission)

1986-1992        Associate Professor, Georgetown University Law Center

1992-1997        Professor of Law, Georgetown University Law Center
                    [on leave of absence, July 1, 1993 - June 30, 1995]

1993-1995        Director, Committee on Scholarly Communication with China
                    Washington, DC

1997-present    James M. Morita Professor of Asian Legal Studies

2001-2005        Associate Dean, International and Graduate Programs

2013-present    Associate Dean, International and Transnational Programs

**James V. Feinerman**                -3-

**Honors, Awards and Activities:**

1979-1980        CSCPRC Postgraduate Fellowships, Peking University and
                         Institute of Law, Chinese Academy of  Social Sciences
                         Peking, People's Republic of China

1982-1983        Fulbright Lecturer on Law, Peking University Law Department

1986               Fulbright Visiting Researcher, Faculty of Law
                         Kyoto University, Kyoto, Japan
                         (Fulbright Research Award, Japan-U.S. Educational Commission)

1986-1998         Editor-in-Chief, *China Law Reporter* [publication of the
                         ABA's Section of International Law and Practice]

1987-1998         Member, Committee on Legal Educational Exchange with China
                         Chair, 1993-1998

1987-1990         Member, Northeast Asia Advisory Committee, Council on
                         International Exchange of Scholars (Fulbright Program)

1989               Recipient, John D. and Catherine T. MacArthur Foundation
                         Award for Research and Writing in Peace and International Cooperation
                         Project:  "Post-Mao China and International Law"

1991-1995        Chair, Asian Law Forum, Association for Asian Studies

1991-1996;      Trustee, Yale-China Association, New Haven, Connecticut
1997-2008

1991-present  Board of Governors, Washington Foreign Law Society
                         Chair, Jackson Award Committee [for Best Student

1992-1993        Fellow, Woodrow Wilson International Center for Scholars

1994-2003        Trustee, Lingnan Foundation, New York, New York

1997-present   James M. Morita Professor of Asian Legal Studies
                         (First incumbent of newly established chair)

2005-2006        Fulbright Distinguished Senior Lecturer on Law, Tsinghua University
                         Law School
                         Peking, People's Republic of China

FEINERMAN PUBLICATIONS LIST                    June 2014

1.  Note, "The Arab Boycott and State Law:  The New York Anti-Boycott Statute," 18 *Harvard International Law Journal*  343 (1977).

2.  Book Review, Ralph Clough's *Island China*, 20 *Harvard International Law Journal* 221 (1979).

3.  Ph.D. Dissertation, Yale University, *The Poetry of Wang Wei*, May 1979.

4.  Co-translator, "Lectures on the Criminal Law," in *Chinese Law and Government*, Vol. XIII, No. 2, Summer 1980.

5.  Book Reviews, Fox Butterfield's *China:  Alive in the Bitter Sea* and Edoarda Masi's *China Winter*, in *Worldview*, December 1982, p. 17.

6.  Translator, Liu Binyan's "People or Monsters?" in Perry Link, ed., *People or Monsters?*, Indiana University Press, 1983.

7.  Book Review, A. Doak Barnett's *China's Economy in Global Perspective*, 4 *Northwestern Journal of International Law and Business* 647 (1983).

8.  "China and the U.S.:  Five Years After Normalization," in *Worldview*, January 1984, p. 20.

9.  "New Patent Law Offers Basic Protection, But Questions Remain," *East Asian Executive Reports*, June 1984, p. 9.

10.  "An Overview of China's Patent Regulations," *East Asian Executive Reports*, April 1985, p. 9.

11.  Article, "The Disposition of Cases Involving Juveniles in the People's Republic of China,"  4 *U.C.L.A. Pacific Basin Law Journal* 1 (1985).

12.  Remarks, "The Hong Kong Accord As a Model for Dealing With Other Disputed Territories," *Proceedings of the Eightieth  Annual Meeting of the American Society of International Law*, April 9-12, 1986.

13.  Chapter, "Law and Legal Professionalism in the People's Republic of China," in M. Goldman, ed., *Chinese Intellectuals and the State:  the Search for a New Relationship*, Harvard University Press (1987).

14.  Co-author, Article, "The Role of Law in Economic Development: Lessons of the Recent Agrarian Reform in the PRC," 23 *Stanford International Law Journal* 319 (1987).

15.  Contributor, Colloquy:  *In Re Baby M*, "A Comparative Look at Surrogacy," 76 *Georgetown Law Journal* 1837 (1988).

16.  Article, "The Evolving Chinese Enterprise," 15 *Syracuse Journal of International Law and Commerce* 203 (1988).

17.  Book Review, Moser, ed., *Foreign Trade, Investment, and the Law in the People's Republic of China*, in 47 *Journal of Asian Studies* 866 (November 1988).

18.  Article, "Backwards into the Future" (Securities Law in the People's Republic of China) 52 *Law and Contemporary Problems* 169 (Summer 1989).

19.  Article, "Human Rights in China," *Current History*, September, 1989, at 273.

20.  Book Review, "Taking Japanese Law Seriously," (F. Upham, *Law andSocial Change in Postwar Japan*) in 67 *Washington University Law Quarterly* 1219 (1989).

21.  Article, "Deteriorating Human Rights in China," *Current History*, September, 1990, at 265.

22.  Article, "Prospects for Democracy in the People's Republic of China," in *Update on Law-Related Education*, Vol. 14, No. 3 (Fall 1990), pp. 13-15, 46-48.

23.  Chapter, "Chinese Law Relating to Foreign Investment and  Trade: the Decade of Reform in Retrospect," in 1991 Joint Economic Committee, Congress of the United States, *China's Economic Dilemmas in the 1990s: The Problems of Reforms, Modernization, and Interdependence*, pp. 828-840.

24.  Article, "Economic and Legal Reform in the People's Republic of China, 1978-1991," in *Problems of Communism*, Sept.-Oct., 1991, pp. 62-75.

25. Article, "Enter the Dragon: Chinese Investment in the United States," in *Law and Policy in International Business*, Vol. 22, No. 3 (1991), pp. 547-569.

26.  Chapter, "Civil Appeals Procedure in the People's Republic of China," in Charles Platto, ed., *Civil Appeal Procedures Worldwide*, pp. 104-113 (International Bar Association 1992).

27.  Article, "Taiwan and the GATT," in *Columbia Business Law Review*, pp. 39-60 (January 1992).

28.  Article, "The Quest for GATT Membership: Will Taiwan Be Allowed to Enter before China?" in *China Business Review*, Vol. 19, (May-June 1992), pp. 24-27.

29. Book Review, of Amnesty International, *China: Punishment without Crime: Administrative Detention*, in *China Quarterly*, No. 130, pp. 436-438 (June 1992).

30.  Chapter, "The Meiji Reception of Western Law," in *Wege zum japanischen Recht: Festschrift fur Zentaro Kitagawa zum 60.Geburtstag am 5.April 1992* (Festschrift for Prof. Zentaro Kitagawa on the Occasion of his Sixtieth Birthday, April 5, 1992), pp. 93-105.

31.  Article, "A Criminal Case in the Chinese Courts," in Special Issue: "Law in World Cultures," of *Update on Law-Related Education*, Vol. 16, No. 3, pp. 21-27 (Fall 1992).

32.  Book Review, of Lawrence Beer, ed., *Constitutional Systems in Late Twentieth-Century Asia*, in *Journal of Asian Studies*, Vol. 52, No. 2   (May 1993).

33.  Article, "Sovereign Immunity in the Chinese Case and Its Implications for the Future of International Law," in R. St. J. Macdonald, ed., *Essays in Honour of Wang Tieya* (University of Toronto Festschrift for Professor Wang Tieya) (Kluwer Academic Publishers 1993).

34. Chapter, "Legal Institution, Administrative Device or Foreign Import: The Roles of Contract in the People's Republic of China," in Pitman Potter, ed., *Domestic Law Reforms in Post-Mao China* (M.E. Sharpe, Inc. 1994).

35. Chapters, "Taiwan and the GATT," and "Investment in the European Economic Community," in Mitchell A. Silk, ed., *Taiwan Trade and Investment Law* (Oxford University Press 1994).

36. Chapter, "Introduction to Asian Legal Systems," in Danner and Bernal, eds., *Introduction to Foreign Legal Systems* (Oceana Publishers 1994).

37. Article, "China's Evolving Securities Law," in *China Financial Review*, pp. 22-27 (June 1994).

38. Book Review, of Pitman Potter, *The Economic Contract Law of China: Legitimation and Contract Autonomy in the PRC*, in Vol. 53, No.1, *Journal of Asian Studies*, pp. 206-207 (February 1995).

39. Article, "Antagonistic Contradictions: Criminal Law and Human Rights in China," *China Quarterly*, Vol. 141, March 1995, pp. 135-154.

40. Article, "Chinese Participation in the International Legal Order: Rogue Elephant or Team Player," *China Quarterly*, Vol. 141, March 1995, pp. 186-210.

41.  Chapter, "The History and Development of China's Dispute Resolution System," in *Dispute Resolution in the PRC* (Hong Kong: Asia Law & Practice 1995), pp. 1-21.

42.  Chapter, "The Past and Future of Chinese Labor Law," U.S. Department of Labor, Bureau of International Labor Affairs, *Changes in China's Labor Market: Implications for the Future*, pp.119-134 (1996).

43.  Remarks, "China  Quest to Enter the GATT/WTO," on Panel, China and International Economic Institutions, *Proceedings of the Ninetieth  Annual Meeting of the American Society of International Law*, March 27-30, 1996.

44.  Chapter, Hong Kong Faces 1997: Legal and Constitutional Issues, in Cohen & Li, eds., *Hong  Kong Under Chinese Rule* (Cambridge: Cambridge University Press 1997).

45.  Article, The Rule of Law...with Chinese Socialist Characteristics, *Current History*, September, 1997, pp. 278-281.

46.  Article, The Give and Take of Central-Local Relations, *The China Business Review,* January-February 1998, pp. 16-21.

47. Chapter, Japan: Consensus-Based Compliance, in Jacobson & Weiss, eds., *National Implementation and Compliance with International Environmental Accords* (Cambridge: MIT Press 1998).

48.  "Beware the Clinton Oversell," New York Times, Op-Ed Piece, November 27, 1999.

49. Book, Feinerman, Guy and Turner, eds., *The Limits of the Rule of Law in China* (Seattle: University of Washington Press 2000).

50.  Book, Feinerman and Peele, eds., *China and the WTO: What You Need to Know Now* (New York: Practicing Law Institute 2001).

51.  Testimony, Human Rights in China in the Context of the Rule of Law, Hearing before the Congressional-Executive Commission on China, One Hundred Seventh Congress, Second Session, February 7, 2002 (Statement, pp. 13-16; Prepared Statement, pp. 56-63).

52.  Testimony, Forum, Lawyers without Law: Prospects for the Rule of Law in China in the 21st Century, in *The Rule of Law in China: Lawyers Without Law?* Hearing before the Congressional-Executive Commission on China, One Hundred Eighth Congress, First Session, April 1, 2003.

53.  China's Small Steps of Progress, *Christian Science Monitor*, Op-ed Commentary, December 23, 2003.

54.  Chapter, The US-Korean Status of Forces Agreement as a Source of Continuing Korean Anti-American Attitudes, David I. Steinberg, ed., *Korean Attitudes Toward the United States: Changing Dynamics*, (2004) (Chapter in Conference Volume from Georgetown University Conference, February 2003, on Korean Anti-Americanism).

55.  Article, "Odious Debt, Old and New:  The Legal Intellectual History of an Idea," Vol. 70, Number 4,  *Law and Contemporary Problems*, pp. 193-220  (2007).

56.  Article, "What Hope for Corporate Governance in China?" Vol. 191, *China Quarterly*, pp. 590-612, Autumn, 2007.

57.  Chapter, "Sovereignty Old and New:  Another Look at Taiwan's International Legal Status," in Lung-chu Chen, ed., *Membership for Taiwan in the United Nations* (2007).

58. Chapter, "Legal Aspects of Hong Kong SAR's First Ten Years:  What Went Wrong, What Went Right and What We Expected," in Carola McGiffert and James Tang, eds., *Hong Kong on the Move: 10 Years as the HKSAR* (edited by CSIS 2008).

59. Chapter, "What Hope for Corporate Governance in China?" in *China's Legal System: New Developments, New Challenges* (Cambridge University Press, 2008).

60. Op-ed, "In China, Justice in Reverse," *Washington Post*, December 18, 2008.

61. Testimony, *The UN Human Rights Council's Review of China's Record: Process and Challenges*, Roundtable Before the Congressional-Executive Commission on China, 111th Congress, 1st Session, Jan. 16, 2009

62. Forthcoming, "The Death Penalty in China," Drawn from panel paper, Catholic University, Columbus School of Law, Conference on the Death Penalty.

62. Forthcoming, Legal Problems of Central-Local Relations in the People's Republic of China.