**Thomas C. Sand**, OSB No. 773322
tom.sand@millernash.com
**Elisa J. Dozono**, OSB No. 063150
elisa.dozono@millernash.com
**Brian W. Esler**
(*Pro Hac Vice application to be submitted*)
brian.esler@millernash.com
MILLER NASH LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon  97204
Telephone:  (503) 224-5858
Facsimile:  (503) 224-0155

   Attorneys for Plaintiffs
   China National Building Materials Import
   and Export Corporation and
   CNBM Forest Products (Canada) Ltd.

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **CHINA NATIONAL BUILDING MATERIALS IMPORT AND EXPORT CORPORATION**, a People's Republic of China corporation; and **CNBM FOREST PRODUCTS (CANADA) LTD.**, a Canadian corporation,<br><br>    Plaintiffs,<br><br> v.<br><br>**MURPHY OVERSEAS USA ASTORIA FOREST PRODUCTS, LLC,** an Oregon limited liability company; **MURPHY OVERSEAS U.S.A. TIMBER AND LAND DEVELOPMENT, LLC**, an Oregon limited liability company; **MURPHY OVERSEAS U.S.A. HOLDINGS, LLC**, an Oregon limited liability company; and **DOES I–XX**,<br><br>    Defendants. | Case No. _____<br><br>**COMPLAINT**<br><br>(Violation of UCC; Tortious Interference With Contract; Declaratory Judgment) |

Page 1 -  Complaint

SEADOCS:464672.3

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

FSIA
EXHIBIT
123

**FP: Exhibit 508**

Not Confidential

CBMIE00066338

For its complaint, plaintiffs, China National Building Materials Import and Export Corporation ("China National") and CNBM Forest Products (Canada) Ltd. ("CNBM Canada"), allege as follows:

## I.   PARTIES

1.   China National is a foreign corporation established under the laws of the People's Republic of China, with its headquarters and principal place of business in Beijing, China.

2.   CNBM Canada is a foreign corporation established under the laws of Canada, with its headquarters and principal place of business in Vancouver, British Columbia.

3.   Defendant Murphy Overseas USA Astoria Forest Products, LLC ("Astoria Forest Products"), is an Oregon limited liability company whose headquarters and principal place of business are in Oregon, and whose members are all domiciled in Oregon. It did not come into existence until, at the earliest, about January 17, 2014.

4.   Defendant, Murphy Overseas U.S.A. Timber and Land Development, LLC ("Timber and Land"), is an Oregon limited liability company, whose members are all domiciled in Oregon.  It is the sole member of Astoria Forest Products.  It did not come into existence until, at the earliest, about May 21, 2013.

5.   Timber and Land's sole member and manager is Murphy Overseas U.S.A. Holdings, LLC ("Murphy Overseas"), which is also an Oregon limited liability company. Murphy Overseas' members are Dennis J. Murphy, Dennis J. Murphy, Jr., Jennifer D. Murphy, Trudy Gallagher, and Ed Morrissey, all of whom are domiciled in Oregon.  Murphy Overseas did not come into existence until, at the earliest, about May 21, 2013.

6.   Does I–XX are currently unknown persons or entities who are associated with the above-identified LLCs or their members, and who, acting on their own behalf or as agents for those LLCs, participated in and planned the tortious interference and other tortious

Page 2 -   Complaint

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

Not Confidential

acts described below. None of them are foreign citizens, and China National believes they are likely members of Murphy Overseas.

7.  All defendants will be referred to collectively as "Murphy" below.

## II.  JURISDICTION AND VENUE

8.  Jurisdiction in this Court is proper because China National is a foreign corporation (thus a citizen or subject of a foreign state) and Murphy comprises domestic LLCs whose members are all domiciled in Oregon, or individuals domiciled in Oregon, and there is more than $75,000 at issue, such that diversity jurisdiction is established under 28 USC § 1332(a)(2).

9.  Venue is proper in this Court under 28 USC § 1391(b), since Murphy resides and does business in this district and a majority of the events giving rise to the causes of action stated below occurred in this district.

## III.  FACTS

10.  China National's principal business is the purchase of logs and other timber products for import into the People's Republic of China. Thus, it had occasionally used Westerlund Handling, LLC ("Westerlund"), in 2011 and thereafter to process logs purchased in the Northwest.

11.  In 2012, Westerlund approached China National to seek China National's financial assistance because Westerlund had defaulted on its obligations to International Veneer Corporation ("International Veneer") and needed someone to provide refinancing quickly. Westerlund was desperate—it owed International Veneer over $3.5 million, and Westerlund would have to close its operations unless it could raise those funds immediately. Westerlund had told International Veneer that Westerlund might declare bankruptcy.

12.  To induce China National to lend Westerlund money, Westerlund offered to do more than just pay back any loan. If China National would bail out Westerlund, Westerlund would offer China National exclusive access to the facilities that Westerlund leased

Page 3 -   Complaint

SEADOCS:464672.3

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

Not Confidential
CBMIE00066340

at the Port of Astoria, so that China National could be guaranteed a convenient location from which to ship overseas the logs that it purchased domestically. Westerlund offered to act as China National's agent to purchase logs on China National's behalf, to use its local contacts in the logging industry to get China National the best logs at the best prices, and to help maximize the number of logs that China National could purchase, process, and ship through Westerlund's leased facilities at the Port. By giving China National exclusive access to the Port facilities and maximizing log shipments through the Port, and by having China National use Westerlund to process logs at the Port (and pay Westerlund for those services), Westerlund would be able to pay off the loan by repaying China National at least $60,000 from the fees that China National would pay to Westerlund for processing each log shipment.

13.     Ultimately, China National agreed to Westerlund's proposed conditions, which were memorialized in a Pre-Payment Agreement and associated documents. A true and correct copy of the Pre-Payment Agreement (with addenda) is attached as <u>Exhibit 1</u>, and its terms are incorporated by reference. This contract was not terminable at will, but rather had an explicit term that was intended to continue until Westerlund had repaid the loan exclusively by doing business with China National.

14.     China National ultimately lent approximately $3.55 million to Westerlund. Westerlund also gave China National a Security Agreement, which secures, among other things, repayment of the loans. A true and correct copy of the Security Agreement is attached as <u>Exhibit 2</u>, and its terms are incorporated by reference.

15.     By a Second Amendment to the Pre-Payment Agreement (dated July 2, 2013), the parties added CNBM Canada as a party to that Agreement, with the same rights and responsibilities as China National. Hence, from that time onward, CNBM Canada had the same contract rights and business expectations as China National with respect to the Westerlund relationship. Unless the context indicates otherwise, all references to "China National" below include CNBM Canada.

Page 4 -     Complaint

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

Not Confidential

CBMIE00066341

16.     China National is unique in the log-buying industry because it often pays its log handlers for services before actually receiving services. Thus, in addition to lending China National sufficient funds to settle its debt with International Veneer, purchase new equipment, pay salaries, and generally stay in business, China National would also prepay Westerlund for Westerlund's log-handling services for each shipment, as well as provide Westerlund with letters of credit that it could use to purchase logs on China National's behalf. For each log purchase, China National extended to Westerlund further credit to purchase logs on China National's behalf and to pay itself for the services that it would provide to China National in processing the logs for shipment. Then, once the logs had been loaded and shipped, Westerlund was to pay China National at least $60,000 for each shipment. Thus, China National had a reasonable expectation of buying over 60 shiploads of logs through Westerlund, which meant that China National had a reasonable expectation of doing business with Westerlund for many more years if there was no interference from outside parties.

17.     By way of example, China National prepaid Westerlund approximately $4.5 million in late 2013 for logs that should have been processed and shipped in mid-January 2014. Westerlund used approximately $3.5 million of that prepayment to purchase logs on China National's behalf. Westerlund should have used the other $1 million to pay Westerlund itself and any other contractors for processing and transporting the logs and other associated services. Westerlund should have then also repaid China National at least $60,000 after the logs shipped to pay down the $3.55 million originally lent by China National to Westerlund in 2011. As a result of Murphy's interference, as described further below, those logs are still sitting undelivered at the Port, and the loan remains unpaid.

18.     Once China National started to effectively utilize the Port facilities and increased the number of logs that it was shipping through the Port, others in the industry, including the Murphy defendants, realized the opportunity presented by that facility. Thus, upon information and belief, in the fall of 2013, Murphy set out to take control of Westerlund in such a

Page 5 -    Complaint

SEADOCS:464672.3

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

Not Confidential                                                          CBMIE00066342

way that it hoped to receive the benefits of Westerlund's services while ensuring that China National did not get repaid.

19.     Unbeknownst to China National, upon information and belief, in the fall or winter of 2013, Murphy and Westerlund began discussing ways that Westerlund could try to escape its agreement with China National, avoid repayment, and do business with Murphy. Murphy did so with the express purpose of harming China National by interfering with its contracts and business expectancies with Westerlund.

20.     Upon information and belief, Murphy assisted Westerlund to abandon and breach its contract with China National, and to avoid repaying its debts to China National. It did so in part by surreptitiously putting its own personnel at Westerlund, so that it could learn how China National had operated with Westerlund, how much China National paid for logs, and other information regarding the operations, which it then used to ensure that Westerlund abandoned and reneged on its contracts with China National.

21.     Upon information and belief, Murphy encouraged or caused Westerlund to cease communicating with China National about the January log shipment. Ultimately, because China National could not get Westerlund to confirm that the logs purchased were available for pickup, China National had to divert the ship it had sent to pick up those logs—which logs are still sitting at the Port of Astoria.

22.     On or about January 13, 2014, Astoria Forest Products entered into a Log Handling Agreement with Westerlund. A true and correct copy of the Log Handling Agreement is attached as Exhibit 3, and its terms are incorporated herein by reference.

23.     Soon thereafter, Murphy set up a separate Oregon corporation called "Westerlund Workout, LLC," which, upon information and belief, Murphy expected to use to cause assets to be transferred out of Westerlund once Westerlund had breached its contract with China National. Murphy did this, and all its other alleged actions, with the intent of ensuring that

Page 6 -     Complaint

SEADOCS:464672.3

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

Not Confidential                                                                                   CBMIE00066343

China National's loan obligation would not be repaid and that Westerlund would not fulfill its contractual obligations to China National.

24.     On January 15, 2014—just two days after signing its new agreement with Murphy—Westerlund sent a letter to China National purporting to terminate all contracts with China National.

25.     But for Murphy's actions in interfering with China National's agreements and expectations with respect to Westerlund, China National would have continued utilizing Westerlund as its agent and continued shipping its logs out of Westerlund's leased Port facilities for many years to come.  Under the August 2012 Pre-Payment Agreement, by making only the minimum repayments of $300,000 per quarter, Westerlund would not have repaid its debt until sometime in 2015, and China National had a reasonable expectation of exclusive access to Westerlund's services and its leased Port facilities for at least that long.  But for Murphy's interference, China National would have continued to profit from its relationship with Westerlund.

26.     Westerlund's contract termination letter, along with its failure to make payments and other acts, constituted a default under the loan documents.  China National properly notified Westerlund of those defaults.  Westerlund failed to cure.  Instead, on the date that its period to cure expired, Westerlund filed a lawsuit in Clatsop County Circuit Court (*Westerlund Log Handlers, LLC v. China Nat. Bldg. Materials Imp. and Exp. Corp.*, No. 14-CV-00618).  Upon information and belief, Murphy not only assisted in the planning for this lawsuit for Westerlund, but also helped finance it.

27.     On about February 5, 2014, China National notified Astoria Forest Products that Westerlund was in default, and that all future payments to Westerlund should be paid directly to China National in accordance with China National's rights as a secured creditor of Westerlund.  A true and correct copy of the notice is attached as <u>Exhibit 4</u>, and its terms are incorporated herein by reference.

Page 7 -     Complaint

SEADOCS:464672.3

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

28.     Despite receiving that notice, Astoria Forest Products has continued to pay Westerlund.  Although the amount of damages will be proved at trial, China National believes and therefore alleges that Murphy has paid Westerlund over $1 million since February 5, 2014, under the Log Handling Agreement or other agreements, and all these funds should have been paid directly to China National.

29.     Further, after it received the February 5, 2014, notice, Murphy engaged in further acts intended to interfere with China National's contractual rights.  In particular, it caused Astoria Forest Products to make filings in which Astoria Forest Products has alleged that it has a security interest in certain of Westerlund's assets, including a log debarker, when no underlying debt was owed to support any such security agreement.  These filings were intended solely to interfere with and cast doubt on China National's superior secured interest in the assets.  Despite requests from China National, Astoria Forest Products has not been able to produce any evidence of any valid debt owed to it by Westerlund.

30.     Further, Murphy also improperly induced the Port of Astoria to consent to an agreement whereby Murphy would "sublease" Port facilities from Westerlund.  Murphy did so by, in part, misinforming the Port about the status of China National's interests in all of Westerlund's assets, including the lease, by failing to inform the Port of ongoing litigation, and by failing to inform the Port of Murphy's intention to cause Westerlund to default on that lease. Murphy thereafter induced Westerlund to default on its lease with the Port so that Murphy could take over the lease, and thus ensure that China National would have no access to the facilities, and to try to impair China National's access to the logs it purchased that are still stored at that facility, in an effort to further impair its contractual rights and remedies.

31.     China National has been damaged by Murphy's actions in an amount to be determined at trial, but believed to be well over $3.55 million.

Page 8 -    Complaint

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

Not Confidential

CBMIE00066345

## IV.  CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

### (Failure to Pay Upon Notice—Astoria Forest Products)

32.     China National realleges all the allegations above.

33.     Astoria Forest Products is the holder of "accounts" with Westerlund, as that term is defined in the Security Agreement and the Uniform Commercial Code.

34.     Despite receiving a valid notice to pay, Astoria Forest Products has refused to honor Westerlund's assignment and continues to pay Westerlund, in violation of the provisions of the Uniform Commercial Code and the Security Agreement.

35.     Astoria Forest Products is liable to China National for the amount of all its payments to or on behalf of Westerlund since February 5, 2014.

### SECOND CLAIM FOR RELIEF

### (Tortious Interference With Contracts and Business Expectancies—All Defendants)

36.     China National realleges all the allegations above.

37.     Murphy knew of China National's contracts, business expectancies, and relationship with Westerlund, and tortiously sought to and did interfere with those contracts, expectancies and relationship.

38.     Murphy did so for an improper purpose and through improper means, as explained further above, and such other ways as discovery will show.

39.     But for Murphy's interference, China National would have realized the full value of its contract with Westerlund and had a valid expectation of continuing to do business with Westerlund through the Port of Astoria for many years.

40.     China National has been damaged in an amount to be proved at trial.

41.     After discovery, China National will seek leave to amend this Complaint to seek punitive damages.

Page 9 -     Complaint

SEADOCS:464672.3

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

Not Confidential

CBMIE00066346

**THIRD CLAIM FOR RELIEF**

**(Declaratory Judgment—Astoria Forest Products)**

42.    China National realleges all the allegations above.

43.    There is an actual controversy between China National and Astoria Forest Products such that this Court may declare the rights or other legal relations of those parties pursuant to 28 U.S.C. § 2201.

44.    Astoria Forest Products claims a security interest in certain Westerlund assets, including a log debarker that Astoria Forest Products claims is a fixture rather than equipment.  China National has a competing security interest in those assets and in the debarker in particular.  The debarker is a valuable piece of equipment, and worth in excess of $75,000.

45.    China National seeks a declaration that (a) Astoria Forest Products has no valid security interest in any Westerlund assets and (b) the security interest of China National is superior to any interest that Astoria Forest Products may have in those assets.

**V.    RELIEF REQUESTED**

Wherefore, China National and CNBM Canada request the following relief:

1.    A judgment for compensatory damages in an amount to be proved at trial.

2.    Recovery of all its reasonable costs, expenses, and attorney fees to be included in the judgment against all defendants.

3.    A declaration that Astoria Forest Products has no security interest in any assets of Westerlund and that China National's security interest is superior to any interest of any defendant in those assets.

/ / /

/ /

Page 10 -    Complaint

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

Not Confidential                                                                                                          CBMIE00066347

4.    For all other relief, whether legal or equitable, that the Court may determine is appropriate.

DATED this 5th day of May, 2014.

MILLER NASH LLP

s/Thomas C. Sand
Thomas C. Sand, OSB No. 773322
tom.sand@millernash.com
Elisa J. Dozono, OSB No. 063150
elisa.dozono@millernash.com
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon 97204
Telephone: (503) 224-5858
Fax: (503) 224-0155

Brian W. Esler, WSB No. 22168
(*Pro Hac Vice application to be submitted
and previously admitted Pro Hac Vice in
USDC, District of Oregon,
Case No. 3:14-cv-00176-BR*)
brian.esler@millernash.com
4400 Two Union Square
601 Union Street
Seattle, Washington 98101
Telephone: (206) 622-8484
Fax: (206) 622-7485

*Of Attorneys for Plaintiffs
China National Building Materials Import
and Export Corporation and
CNBM Forest Products (Canada) Ltd.*

Page 11 -   Complaint

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

Not Confidential                                                                 CBMIE00066348