1

2

3

4

5

6

7

8

9

10            IN THE CIRCUIT COURT OF THE STATE OF OREGON

11                    FOR THE COUNTY OF CLATSOP

12   **MURPHY OVERSEAS USA ASTORIA**      )    Case No.  14 CV 01829
     **FOREST PRODUCTS, LLC,** an Oregon  )
13   limited liability company,           )    **COMPLAINT FOR DECLARATORY**
                                          )    **JUDGMENT**
14                          Plaintiff,    )
                                          )    **CLAIM NOT SUBJECT TO**
15                    v.                  )    **MANDATORY ARBITRATION**
                                          )
16   **CHINA NATIONAL BUILDING**          )    **Filed Under ORS 21.135(2)(g)**
     **MATERIALS IMPORT AND EXPORT**      )
17   **CORPORATION,** a People's Republic of )
     China corporation; **WESTERLUND LOG** )    **Jury Trial Demanded**
18   **HANDLERS, LLC,** a Washington limited )
     liability company; **DAVID WESTERLUND;** )
19   and **ROGER NANCE,**                 )
                                          )
20                          Defendants.   )

21

22        Plaintiff alleges:

23   ...

24   ...

Page 1 of 5        **COMPLAINT FOR DECLARATORY**
                   **JUDGMENT**

**FSIA**
**EXHIBIT**
**128**

EXHIBIT A
Page 1 of 5

1                            **FIRST CLAIM**

2                          (Declaratory Judgment)

3                              1.

4      Plaintiff Murphy Overseas USA Astoria Forest Products, LLC, ("Astoria Forest Products"),

5 is an Oregon limited liability company. Its principal place of business is in Oregon.

6                              2.

7      Astoria Forest Products entered into a Log Handling Agreement with defendant Westerlund

8 Log Handlers, LLC, ("WLH"), a Washington limited liability company whose principal place of

9 business is in Clatsop County, Oregon, to provide log handling and processing services for logs that

10 Astoria Forest Products purchased and delivered to WLH in Clatsop County, Oregon. The Log

11 Handling Agreement between WLH and Astoria Forest Products is dated January 13, 2014. WLH

12 and Astoria Forest Products have not operated in accordance with the payment terms set forth in the

13 Log Handling Agreement, which call for Astoria Forest Products to pay $107/ mbf 10 days after

14 delivery of logs to WLH. Instead, Astoria Forest Products has prepaid for the services, has

15 advanced money to WLH to pay bills that WLH incurred in connection with Astoria Forest

16 Products' business and on unrelated business, and has paid third parties directly for labor, services,

17 and supplies used to handle Astoria Forest Products' logs.

18                              3.

19      WLH contends that it is entitled to be paid for log handling and processing services that it

20 provides to Astoria Forest Products pursuant to the Log Handling Agreement, less the setoffs to

21 which Astoria Forest Products is entitled as a result of prepayments, advances, and payment of costs

22 directly related to WLH's performance duties under the Log Handling Agreement.

23                              4.

24      Defendant China National Building Materials Import and Export Corporation ("CNBM") is

   **COMPLAINT FOR DECLARATORY JUDGMENT**

ESLER, STEPHENS & BUCKLEY, LLP
Attorneys at Law
888 S.W. Fifth Avenue, Suite 700
Portland, Oregon 97204-2021
Telephone: (503) 223-1510

1  a People's Republic of China corporation. It claims that it is a secured creditor of defendant WLH

2  pursuant to various agreements (collectively referred to herein as the "CNBM Agreements").

3                                                              5.

4        Defendants David Westerlund and Roger Nance have residences in Clatsop County,

5  Oregon, are members of WLH, and are guarantors under the CNBM Agreements.

6                                                              6.

7        On February 5, 2014, CNBM notified Astoria Forest Products that it had a security interest

8  in all WLH accounts, and demanded that Astoria Forest Products make payments on WLH accounts

9  to a designee of CNBM. Specifically, on March 4, 2014, CNBM demanded that Astoria Forest

10 Products pay to CNBM's designee "in the neighborhood of $998,609,000" [*sic*] plus WLH's share

11 of profits on the sale of a shipment of logs "in the neighborhood of $69,966" within five days.

12                                                             7.

13       WLH contends that CNBM has breached the agreements between it and CNBM that

14 underlie CNBM's security interest. WLH also contends that CNBM's claim that it has a perfected

15 security interest over WLH's accounts is invalid, and that any security interest that CNBM has

16 would not cover amounts, if any, owed by Astoria Forest Products for current and future log

17 handling services.

18                                                             8.

19       Astoria Forest Products does not believe it owes any money to CNBM, but the competing

20 claims of WLH and CNBM create uncertainty and insecurity. Pursuant to ORS 28.020, Astoria

21 Forest Products is entitled to a declaration that it owes nothing to CNBM, and for such other relief

22 as is necessary and proper.

23                                                             9.

24       CNBM and WLH claim interests that would be affected by a declaration of the rights of the

Page 3 of 5     **COMPLAINT FOR DECLARATORY**
                **JUDGMENT**

ESLER, STEPHENS & BUCKLEY, LLP
Attorneys at Law
888 S.W. Fifth Avenue, Suite 700
Portland, Oregon 97204-2021
Telephone: (503) 223-1510

EXHIBIT A
Page 3 of 5

1   parties under the various agreements.  Under the various agreements, Westerlund and Nance have or

2   claim an interest that would also be affected by, the declaration of the claims made by CNBM, and

3   are indispensable parties.

4                                              10.

5          The parties are claiming competing interests in payments made by Astoria Forest Products

6   as a result of the following agreements between various parties, and the course of conduct between

7   Astoria Forest Products and WLH:

8          (a)      Prepayment Agreement between WLH and CNBM dated August 10, 2012, as

9   amended, pursuant to a Second Addendum to Prepayment Agreement dated July 2, 2013;

10         (b)      Security Agreement between WLH and China National dated August 10, 2012; and

11         (c)      Guarantees of the various agreements between CNBM and WLH given by Nance

12   and Westerlund.

13                                             11.

14         Pursuant to ORS 28.010, Astoria Forest Products seeks a declaration that is binding on all

15   parties:  (a) that it owes nothing to CNBM, and (b) that Astoria Forest Products is not an "account

16   debtor" of WLH.

17         WHEREFORE, plaintiff Astoria Forest Products Overseas USA Astoria Forest Products,

18   LLC, requests the following relief:

19         1.       A declaration that is binding on all parties:  (a) that Astoria Forest Products owes

20   nothing to CNBM, and (b) that Astoria Forest Products is not an "account debtor" of WLH.

21   ...

22   ...

23   ...

24   ...

Page 4 of 5          **COMPLAINT FOR DECLARATORY**          ESLER, STEPHENS & BUCKLEY, LLP
                     **JUDGMENT**                          Attorneys at Law
                                                           888 S.W. Fifth Avenue, Suite 700
                                                           Portland, Oregon 97204-2021
                                                           Telephone: (503) 223-1510

                                                                              EXHIBIT A
                                                                              Page 4 of 5

1    2.    Plaintiff's costs and disbursements incurred in this case; and

2    3.    Such other relief as the Court deems just and equitable.

3    DATED this 7th of March, 2014.

4                                  Respectfully submitted,

5                                  ESLER, STEPHENS & BUCKLEY

6

7                          By:  _Michael J. Esler_____
                                  Michael J. Esler, OSB No. 710560
8                                  esler@eslerstephens.com

9                                  Of Attorneys for Plaintiff Murphy Overseas
                                  USA Astoria Forest Products, LLC
10
     k:\maureen\murphy overseas\complaint 3-7-14 final.docx
11

12

13

14

15

16

17

18

19

20

21

22

23

24

Page 5 of 5        **COMPLAINT FOR DECLARATORY**        ESLER, STEPHENS & BUCKLEY, LLP
                   **JUDGMENT**                          Attorneys at Law
                                                         888 S.W. Fifth Avenue, Suite 700
                                                         Portland, Oregon 97204-2021
                                                         Telephone: (503) 223-1510
                                                         Facsimile: (503) 294-3995

EXHIBIT A
Page 5 of 5

1

2

3

4           IN THE CIRCUIT COURT OF THE STATE OF OREGON

5                    FOR THE COUNTY OF CLATSOP

6   WESTERLUND LOG HANDLERS, LLC, a
    Washington limited liability company, DAVID      Case No. 14 CV 00618
7   WESTERLUND, an individual, and ROGER
    NANCE, an individual,                            **AMENDED COMPLAINT**
8
                                                     **Action for Breach of Contract, Reformation,**
9                          Plaintiffs,               **Rescission, Declaratory Relief and Tortious**
                                                     **Interference**
10           v.
                                                     **DEMAND FOR JURY TRIAL**
11  CHINA NATIONAL BUILDING
    MATERIALS IMPORT AND EXPORT                      **(Not Subject to Mandatory Arbitration)**
12  CORPORATION, a foreign corporation,
    CNBM  FOREST PRODUCTS CANADA,
13  LTD, a foreign entity, and ALAN K.
    BRUNSTAD, an individual,
14
                           Defendants.
15

16                 **FIRST CLAIM FOR RELIEF**

17                    **(Breach of Contract)**

18                            **1.**

19      Plaintiff WESTERLUND LOG HANDLERS, LLC (hereinafter "WLH") is a

20  Washington limited liability company, authorized to do, and regularly doing business,

21  in Clatsop County, Oregon.  Plaintiff WLH is in the business of transporting,

22  preparing, handling and loading logs for export from ports of the United States,

23  including the Port of Astoria.

24                            **2.**

25      Plaintiff DAVID WESTERLUND is an individual, and is the managing

26

PAGE 1 - AMENDED COMPLAINT

*GORDON T. CAREY, JR., P.C.*
*1020 SW Taylor Street, Suite 375, Portland, Oregon 97205*
*(503) 222-1415 ** Fax (503) 222-1923*

1   member of WLH.  Plaintiff ROGER NANCE is an individual, and a member of WLH.

2   Plaintiffs Westerlund and Nance are domiciled in, and citizens of, the state of

3   Washington.  Plaintiff Westerlund and plaintiff Nance are indemnitors under the

4   prepay agreement referred to herein.

5                                                    **3.**

6          Defendant CHINA NATIONAL BUILDING MATERIALS IMPORT AND

7   EXPORT CORPORATION is a foreign corporation organized under the laws of the

8   People's Republic of China, regularly doing business in Clatsop County, Oregon.

9   Defendant CNBM FOREST PRODUCTS CANADA, Ltd., is a foreign corporation

10  organized under the laws of Canada, regularly doing business in Clatsop County,

11  Oregon.  Unless separately stated, the foregoing shall be referred to as "CNBM".

12  CNBM is in the business of purchasing and shipping logs from the United States and

13  Canada to customers in  China and other countries.  The claims alleged herein arise

14  from the parties' business activities in Clatsop County.

15                                                   **4.**

16         Defendant ALAN K. BRUNSTAD is an individual residing in Thurston

17  County, Washington.  Defendant Brunstad was employed by plaintiff WLH, but is

18  now working for CNBM.  The claims against defendant Brunstad arise, at least in

19  part, from his activities in Clatsop County, Oregon.

20                                                   **5.**

21         In 2012, plaintiffs and defendant CNBM entered into negotiations to conduct

22  an enterprise whereby defendant CNBM would purchase logs in the United States and

23  Canada, and plaintiff WLH would transport the logs purchased by CNBM, prepare

24  and debarking same, and load the logs aboard ships for transportation overseas for

25  rates ranging from $143.00 to $162.00 per 1,000 board feet.  In addition, defendant

26

PAGE 2 - AMENDED COMPLAINT

*GORDON T. CAREY, JR., P.C.*
*1020 SW Taylor Street, Suite 375, Portland, Oregon 97205*
*(503) 222-1415 ** Fax (503) 222-1923*

EXHIBIT B
Page 2 of 11

1  CNBM agreed, for valuable consideration, *inter alia*,  to extend a prepayment of

2  $3,550,000, to enable WLH to acquire equipment to use in its operations, a part of

3  which was for the benefit of CNBM, and to credit plaintiffs $60,000 against said

4  prepayment per ship loaded.  Defendant CNBM further agreed to share the profits of

5  the enterprise, and negotiate in good faith an operating agreement dividing the profits.

6                                          **6.**

7         Pursuant to the agreement of the parties, WLH shipped 18 loads of logs at the

8  direction of CNBM in 2012 and 2013 from the Port of Astoria, Clatsop County, and

9  have stockpiled an additional approximate 4.5 million board feed of logs in Clatsop

10 County, Oregon.

11                                         **7.**

12        Plaintiffs have performed or are prepared to perform all conditions precedent

13 on their part to be performed.

14                                         **8.**

15        Defendant CNBM has breached the agreement in that:

16        (a)    Defendant CNBM failed to credit plaintiffs with $60,000 per ship, or

17 $1,080,000 and, instead,  required WLH to pay $751,000, all to plaintiffs' damage;

18        (b)    Failed to negotiate in good faith an operating agreement, and failed to

19 pay WLH its share of the profits of the enterprise.

20                                         **9.**

21        As a result, plaintiffs have been damaged in the amount of a credit for

22 $1,080,000, $751,000 improperly paid, their share of the profits in an amount to be

23 proven at trial, and such other damages for breach as proved at trial.

24

25

26

PAGE 3 - AMENDED COMPLAINT

***GORDON T. CAREY, JR., P.C.***
*1020 SW Taylor Street, Suite 375, Portland, Oregon 97205*
*(503) 222-1415 ** Fax (503) 222-1923*

<div align="center">

**SECOND CLAIM FOR RELIEF**

**(Reformation)**

**10.**

</div>

Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 9.

<div align="center">

**11.**

</div>

Plaintiffs and defendant CNBM, through mutual mistake, or through plaintiffs' unilateral mistake and inequitable conduct on the part of defendant CNBM, entered into a signed prepayment agreement in August, 2012 which did not clearly express that defendant CNBM would credit plaintiffs as was intended. The mistake did not occur as the result of the gross negligence of plaintiffs.

<div align="center">

**12.**

</div>

This court should reform the agreement to reflect that plaintiffs are entitled to a $60,000 credit for each shipment of logs, against the prepayment of $3,550,000.

<div align="center">

**13.**

</div>

Plaintiff has no plain, speedy or adequate remedy at law.

<div align="center">

**THIRD CLAIM FOR RELIEF**

**(Rescission)**

**14.**

</div>

Plaintiffs reallege and incorporates by reference the allegations of paragraphs 1-9 and 11-13 above.

<div align="center">

**15.**

</div>

In or about August, 2012, the parties entered into a security agreement and membership pledge agreement whereby plaintiffs granted a security interest in assets

PAGE 4 - AMENDED COMPLAINT

<div align="center">

***GORDON T. CAREY, JR., P.C.***
*1020 SW Taylor Street, Suite 375, Portland, Oregon 97205*
*(503) 222-1415 ** Fax (503) 222-1923*

</div>

1   of WLH and their membership interest. The parties further entered into an option to

2   purchase agreement whereby plaintiffs granted defendant CNBM the option to

3   purchase a 50% interest in plaintiff WLH.

4                                         **16.**

5          In entering into said security, pledge and option agreements, plaintiffs relied

6   on, and had the right to rely on, the representations of defendants, and specifically

7   the representations that defendant CNMB would negotiate in good faith and enter into

8   an operating agreement whereby the parties would share the profits of the enterprise,

9   and plaintiffs would receive the credit promised against the prepayment. Plaintiffs

10  believed defendant CNBM's representations to be true, relied thereon and executed

11  the agreements in reliance thereon.  Defendant CNBM's representations were a

12  material inducement to plaintiffs, and plaintiffs would not have entered into the

13  agreements in absence of those representations.

14                                        **17**.

15         Defendant CNBM's representations were at the time made false and untrue,

16  or were made with reckless disregard for whether they were true or false, in that

17  defendant CNBM did not have the authority to enter into an operating agreement

18  sharing the profits, and did not intend to do so.  At the time defendant CNBM made

19  the representations, defendant CNBM knew or should have known the representations

20  were false, or made the representations recklessly without regard for whether the

21  representations were true or false.

22                                        **18**.

23         As a result, plaintiffs hereby elect to rescind the security, pledge and option

24  agreements.

25

26

PAGE 5 - AMENDED COMPLAINT

***GORDON T. CAREY, JR., P.C.***
*1020 SW Taylor Street, Suite 375, Portland, Oregon 97205*
*(503) 222-1415 ** Fax (503) 222-1923*

**19.**

Plaintiffs have no adequate or efficient remedy at law.

### FOURTH CLAIM FOR RELIEF

### (Declaratory Relief)

**20.**

Plaintiffs reallege and incorporates by reference the allegations of paragraphs 1-9, 11-13, and 15-19 above.

**21.**

There is an actual controversy between plaintiffs and defendant CNBM about the terms and performance of the agreements between parties.

**22.**

Plaintiffs contend that they are entitled to a credit for every ship loaded of $60,000, and defendant CNBM denies same.

**23.**

Plaintiffs further contend that the agreement should be reformed to provide for such credits, and that plaintiff should be repaid $751,000. Defendant CNBM denies same.

**24.**

Finally, plaintiffs contend that the security agreement, membership pledge agreement and option to purchase agreement are void, and defendant CNBM denies same.

///
///
///

PAGE 6 - AMENDED COMPLAINT

***GORDON T. CAREY, JR., P.C.***
*1020 SW Taylor Street, Suite 375, Portland, Oregon 97205*
*(503) 222-1415 ** Fax (503) 222-1923*

## FIFTH CLAIM FOR RELIEF

### (Accounting)

**25.**

Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1-9, 11-13, 15-19 and 21-24 above.

**26.**

Plaintiffs and defendant CNBM formed a joint venture for purposes of the enterprise.

**27.**

Plaintiffs and defendant CNBM do not have a written joint venture agreement. Because the partnership's principal place of business is in Oregon, Oregon partnership law and ORS Chapter 67 govern their joint venture.

**28.**

Under the terms of their joint venture agreement, plaintiffs conducted the operations of transporting, preparing and loading logs purchased by defendant CNBM, and defendant CNBM purchased the logs and arranged for resale. The parties agreed to divide any profits made by the venture and to account to each other for all costs of the venture.

**29.**

Defendant CNBM has breached its duties, including its fiduciary duties, to the partnership and plaintiffs by, among other things, failing to provide plaintiffs with accounts of the income and expenses of the partnership.

**30.**

Pursuant to ORS Chapter 67, plaintiffs demand an accounting from defendant CNBM for all profits earned during the course of the enterprise, including all benefits

PAGE 7 - AMENDED COMPLAINT

*GORDON T. CAREY, JR., P.C.*
*1020 SW Taylor Street, Suite 375, Portland, Oregon 97205*
*(503) 222-1415 ** Fax (503) 222-1923*

EXHIBIT B
Page 7 of 11

1 received from partnership opportunities.

2 **31**.

3 Plaintiffs seek an order from the court compelling defendant CNBM to account
4 to plaintiffs concerning the enterprise, and upon completion of the accounting, to pay
5 to plaintiffs their share of the profits, and damages as a result of diversion of
6 partnership opportunities.

7 **SIXTH CLAIM FOR RELIEF**

8 **(Tortious Interference)**

9 **32**.

10 Plaintiffs reallege and incorporate by reference the allegations of paragraphs
11 1-9, 11-13, 15-19, 21-24 and 26-31 above.

12 **33.**

13 At all material times, plaintiffs were engaged in business relationships with
14 customers, vendors and others, which relationships would continue indefinitely in the
15 future.

16 **34**.

17 Defendants CNBM and Brunstad interfered with plaintiffs' existing business
18 relationships and prospective advantage through improper means by, *inter alia*,
19 disparaging plaintiffs, spreading malicious misinformation, and threatening litigation.
20 As a result, defendants caused plaintiffs' performance of their duties to be so onerous
21 and difficult that defendants frustrated plaintiffs' performance thereof and have
22 caused customers, vendors and others to cease doing business with plaintiffs. In
23 addition, defendants CNBM and Brunstad owed duties of loyalty to plaintiffs and
24 violated those duties.

25

26

PAGE 8 - AMENDED COMPLAINT

*GORDON T. CAREY, JR., P.C.*
*1020 SW Taylor Street, Suite 375, Portland, Oregon 97205*
*(503) 222-1415 ** Fax (503) 222-1923*

EXHIBIT B
Page 8 of 11

**35.**

Defendants interfered with plaintiffs for an improper purpose in that, *inter alia*, defendants intended to prevent plaintiffs from continuing in business, and further intended to appropriate plaintiffs' equipment, operations, customers and opportunities for themselves.

**36.**

As a result, plaintiffs have been damaged in the amount of lost past and future profits, the value of their operations, and the value of future opportunities, all in an amount to be proved at trial, but not less than $30,000,000.

**37.**

Defendants' acts amount to a particularly aggravated disregard of the rights of plaintiffs and society. Following discovery, plaintiffs may seek leave of the court to amend the complaint to seek punitive damages in an amount of not less than $5,000,000.

WHEREFORE, plaintiffs pray for relief as follows:

1.   For an accounting and payment of profits and other amounts due;

2.   For reformation of the written prepayment agreement to reflect that plaintiffs were entitled to a credit of $60,000 per ship;

3.   For rescission of the security, pledge and option agreements;

4.   For damages for breach in the amount of $1,831,000 and additional amounts to be proved at trial;

5.   For damages for lost profits, the value of plaintiffs' operations and opportunities in an amount to be proved at trial, but not less than $30,000,000;

PAGE 9 - AMENDED COMPLAINT

*GORDON T. CAREY, JR., P.C.*
*1020 SW Taylor Street, Suite 375, Portland, Oregon 97205*
*(503) 222-1415 ** Fax (503) 222-1923*

EXHIBIT B
Page 9 of 11

1    6.    For costs and disbursements incurred herein;

2    7.    For pre-judgment and post-judgment interest; and

3    8.    For such other and further relief as the court may deem just and

4          equitable.

5

6    DATED this 2nd  day of February, 2014.

7

8                              GORDON T. CAREY, JR., P.C.

9

10                             _____

11                             Gordon T. Carey, Jr., OSB No. 77133
                               Attorney for Plaintiffs

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PAGE 10 - AMENDED COMPLAINT

**GORDON T. CAREY, JR., P.C.**
*1020 SW Taylor Street, Suite 375, Portland, Oregon 97205
(503) 222-1415 ** Fax (503) 222-1923*

EXHIBIT B
Page 10 of 11

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2013, I served the foregoing AMENDED

COMPLAINT on the following named persons on the date indicated, by

[ **x** ] mailing with postage prepaid;

[    ] fax;

[    ] hand delivery

[    ] email

to said person(s) a copy thereof:


Thomas C. Sand
Miller Nash LLP
3400 US Banorp Tower
111 SW Fifth Avenue
Portland, OR 97204

Gordon T. Carey, Jr., OSB#771331
Attorney for plaintiff

EXHIBIT B
Page 11 of 11

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WESTERLUND LOG HANDLERS, LLC,                    3:14-CV-00176-BR
a Washington limited
liability company;                               OPINION AND ORDER
DAVID WESTERLUND, an
individual; and ROGER NANCE,
an individual,

          Plaintiffs,

v.

CHINA NATIONAL BUILDING
MATERIALS IMPORT AND EXPORT
CORPORATION, a foreign
corporation; CNBM FOREST
PRODUCTS CANADA, LTD, a
foreign entity; and ALAN K.
BRUNSTAD, an individual,

          Defendants.


GORDON T. CAREY, JR.
1020 S.W. Taylor
Suite 375
Portland, OR 97205
(503) 222-1415

          Attorney for Plaintiffs

THOMAS C. SAND
Miller Nash LLP
111 S.W. Fifth Avenue
Suite 3400
Portland, OR 97204
(503) 205-2475


1 - OPINION AND ORDER

EXHIBIT C
Page 1 of 12

**BRIAN W. ESLER**
Miller Nash, LLP
4400 Two Union Square
601 Union Street
Seattle, WA 98101-2352
(206) 622-8484

      Attorneys for Defendants

**BROWN, Judge.**

    This matter comes before the Court on Plaintiffs' Motion (#4) to Remand. For the reasons that follow, the Court **GRANTS** Plaintiffs' Motion and **REMANDS** this matter to Clatsop County Circuit Court.

<u>**BACKGROUND**</u>

    On January 31, 2014, Plaintiffs filed a complaint in Clatsop County Circuit Court against Defendants alleging claims for breach of contract, reformation, rescission, declaratory relief, tortious interference, libel, and misappropriation. Plaintiffs allege in their complaint that Plaintiff Westerlund Log Handlers, LLC (WLH), is a Washington limited-liability company whose sole members are Plaintiffs David Westerlund and Roger Nance; Defendant China National Building Materials Import and Export Corporation is a foreign corporation organized under the laws of the People's Republic of China; Defendant CNBM Forest Products Canada, Ltd, is a foreign corporation organized under the laws of Canada; and Defendant Alan Brunstad is an individual residing in

2 - OPINION AND ORDER

EXHIBIT C
Page 2 of 12

Washington.  Plaintiffs' complaint does not contain any
allegations as to the domicile of Plaintiffs David Westerlund or
Roger Nance.

On January 31, 2014, Defendants removed the matter to this
Court on the ground of diversity jurisdiction.

On February 2, 2014, Plaintiffs filed a Motion to Remand in
which they seek an order remanding this matter to Clatsop County
Circuit Court on the ground that there is not complete diversity.

The Court took Plaintiffs' Motion under advisement on
March 26, 2014.

## STANDARDS

28 U.S.C. § 1446(a) provides in pertinent part:
"[D]efendants desiring to remove any civil action . . . from a
State court shall file in the district court of the United States
for the district and division within which such action is pending
a notice of removal."

A motion to remand is the proper procedure for challenging
removal.  *Babasa v. LensCrafters, Inc.*, 498 F.3d 972, 974 (9th
Cir. 2007).  "The removal statutes are to be strictly construed."
*Romo v. Teva Pharm. USA, Inc.*, 731 F.3d 918, 921 (9th Cir. 2013)
(citation omitted).  "A corollary precept is that we apply a
presumption against removal and construe any uncertainty as to
removability in favor of remand."  *Id.* (citation omitted).

3 - OPINION AND ORDER

EXHIBIT C
Page 3 of 12

"[I]n a case that has been removed from state court to federal court . . . on the basis of diversity jurisdiction, the proponent of federal jurisdiction . . . has the burden to prove, by a preponderance of the evidence, that removal is proper." *Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1106-07 (9th Cir. 2010)(citation omitted). "The preponderance of the evidence standard applies because removal jurisdiction ousts state-court jurisdiction and 'must be rejected if there is any doubt as to the right of removal in the first instance.'" *Id*. at 1107 (quoting *Gaus v. Miles, Inc*., 980 F.2d 564, 566 (9th Cir. 1992)).

For removal based on diversity jurisdiction to be valid, there must be "complete diversity of citizenship between the parties opposed in interest." 28 U.S.C. § 1332(a). *See also Kuntz v. Lamar Corp*., 385 F.3d 1177, 1181 (9th Cir. 2004). A "core principle of federal removal jurisdiction on the basis of diversity [is] that it is determined (and must exist) as of the time the complaint is filed and removal is effected." *Strotek Corp. v. Air Transport Ass'n of Am*., 300 F.3d 1129, 1131-31 (9th Cir. 2002)(citations omitted).

## DISCUSSION

28 U.S.C. § 1332(a)(1) provides: "The district courts shall have original jurisdiction of all civil actions where the matter

4 - OPINION AND ORDER

EXHIBIT C
Page 4 of 12

in controversy exceeds the sum or value of $75,000, exclusive of
interest and costs, and is between . . . citizens of different
States." The Ninth Circuit has made clear that residency alone
is insufficient to establish citizenship for purposes of
§ 1332(a)(1). In *Kanter v. Warner-Lambert Company* the Ninth
Circuit explained:

> [T]he diversity jurisdiction statute, 28 U.S.C.
> § 1332, speaks of citizenship, not of residency.
> To be a citizen of a state, a natural person must
> first be a citizen of the United States.
> *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S.
> 826, 828, 109 S. Ct. 2218, 104 L. Ed.2d 893
> (1989). The natural person's state citizenship is
> then determined by [his] state of domicile, not
> [his] state of residence. A person's domicile is
> [his] permanent home, where [he] resides with the
> intention to remain or to which [he] intends to
> return. *See Lew v. Moss*, 797 F.2d 747, 749 (9th
> Cir. 1986). A person residing in a given state is
> not necessarily domiciled there, and thus is not
> necessarily a citizen of that state.

265 F.3d 853, 857 (9th Cir. 2001).

In their Notice of Removal Defendants allege Westerlund and
Nance are "residents of Oregon," and, therefore, they are
completely diverse from Defendants China National Building
Materials and CNBM Forest Products, Chinese and Canadian
corporations respectively, and from Defendant Alan Brunstad who
is a "Washington resident."[1]

---

[1] Although the allegation of Brunstad's residency is
insufficient to establish domicile, the parties do not appear to
dispute that Brunstad was domiciled in Washington at the time
that Plaintiffs filed their complaint.

5 - OPINION AND ORDER

EXHIBIT C
Page 5 of 12

Plaintiffs move to remand this matter on the ground that even though they resided in Oregon at the time they filed their complaint, they were domiciled in Washington at that time and they remain domiciled in Washington.  According to Plaintiffs, therefore, they are citizens of the same state as Brunstad, and, accordingly, this Court lacks diversity jurisdiction.

The Ninth Circuit pointed to a number of factors that are relevant to the determination of domicile:

> [C]urrent residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes.

*Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986).  *See also Kyung Park v. Holder,* 572 F.3d 619, 624-25 (9th Cir. 2009)(same).  "[N]o single factor" is controlling.  *Lew*, 797 F.2d at 750.

## I.  Defendant Westerlund

Westerlund testifies in his February 2, 2014, Declaration that WLH entered into a business relationship with China National Building Materials in 2012 and "commenced loading logs in Astoria, Oregon."  Decl. of David Westerlund at ¶ 3.  Westerlund notes:

> Initially, I commuted from my home in Silverdale, Washington, and stayed in various temporary lodging in the Astoria area, including motels. Approximately one and one-half years ago, I rented a house in Warrenton[, Oregon] so I would have a base in the local area and not have to move from

6 - OPINION AND ORDER

EXHIBIT C
Page 6 of 12

> time to time.  I have not changed my domicile.  My
> home in Silverdale, Washington, which I purchased
> in 2005, is not rented, and I still spend time
> there with my wife.  I have owned a home in the
> state of Washington for 35 years.

Westerlund Decl. at ¶ 3.  Westerlund testifies he is a citizen of

Washington and does not have any intention of being domiciled in

Oregon.

In their Response to Plaintiffs' Motion to Remand,

Defendants note Westerlund's "mailing address" is listed as

Warrenton, Oregon, on various forms that WLH filed with the

Washington Secretary of State's Office.  Defendants point out

that Westerlund's property-tax statements for his Washington

property are sent to his rental address in Warrenton, Oregon.

Defendants also rely on the fact that Westerlund listed his

property in Washington for sale in 2011.  Finally, Defendants

rely on the Declaration of Alan Brunstad, a former employee of

WLH, in which he testifies Westerlund has rented homes in Astoria

and Warrenton, Oregon, and "seemed to live there permanently."

Decl. of Alan Brunstad at ¶ 8.  Brunstad testifies "as far as

[he] could tell, [Westerlund] resided in Oregon full-time, and

only occasionally visited the property in Washington."  *Id.*

Brunstad notes Westerlund's adult daughter lives in Oregon, but

he also notes Westerlund has another adult child who lives in

California.

Westerlund testifies in his Declaration in support of

7 - OPINION AND ORDER

EXHIBIT C
Page 7 of 12

Plaintiffs' Reply that although he listed his home in Washington
for sale in March 2011 (nearly three years before Plaintiffs
filed their complaint), he removed the listing in September 2011.
Westerlund testifies he placed his house on the market because

> the County would not permit me to build a shop on
> the property because of a nearby creek.  I took
> the Seabeck home off the market until I could find
> another parcel upon which I could build a home and
> a shop.  I recently entered into an earnest money
> agreement to purchase real property in Pacific
> County[, Washington,] upon which I intend to build
> a new home and a shop, as well as keep my Seabeck
> home.

Westerlund Decl. at ¶ 2.  Westerlund attaches to his Declaration
a copy of the Earnest Money Agreement dated October 9, 2013, for
property he is purchasing in Naselle, Washington.  Thus, even if
placing his house on the market nearly three years before
Plaintiffs commenced this action could indicate an intent to no
longer be domiciled in Washington, Westerlund has pointed to
evidence sufficient to establish that he did not sell his
property in Washington or have any intent to become domiciled in
Oregon at the time that Plaintiffs filed their complaint.

Westerlund also testifies in his Declaration that he
continues to do business in Washington, consults for a business
in Washington that he previously owned, conducts 90% of his
leisure activities in Washington, and returns to Washington on a
weekly basis.  In addition, Westerlund testifies his doctors and
dentist are in Washington, he pays Washington property taxes, he

8 - OPINION AND ORDER

EXHIBIT C
Page 8 of 12

has a Washington driver's license, his personal vehicles are registered in Washington, he is registered to vote in Washington, his passport was issued in Washington, and his personal bank account is in Washington at the Bank of the Pacific. Attached to his Declaration are copies of Westerlund's Washington driver's license, Washington vehicle registrations, Washington voter registration card, passport issued in Washington, and a bank statement from Bank of the Pacific located in Washington. Thus, all but one of the factors relevant to a determination of domicile set out in *Lew* support a conclusion that Westerlund was domiciled in Washington at the time that Plaintiffs filed their complaint. On the other hand, the evidence relied on by Defendants merely establishes that Westerlund's mailing address was in Oregon and that he resided in Oregon for business purposes. As noted, residence and a mailing address do not establish domicile or citizenship in a particular state under § 1332(a).

On this record the Court concludes Westerlund has established he was domiciled in Washington at the time that Plaintiffs filed their complaint. Thus, Westerlund was a citizen of Washington at that time, and, therefore, there was not complete diversity of Plaintiffs and Defendants.

**II. Defendant Nance**

Nance testifies in his February 2, 2014, Declaration that he

9 - OPINION AND ORDER

EXHIBIT C
Page 9 of 12

is a citizen of Washington, he has never been domiciled in Oregon, and he does not intend to be domiciled anywhere but Washington.  When WLH began loading logs in Astoria, Oregon, Nance states:

> Initially, I commuted from my home in Bremerton, Washington, and stayed in various temporary lodging in the Astoria area, including motels. Approximately 14 months ago, I rented a house in Gearhart so I would not have to change local residence from time to time.  I have not changed my domicile. I have not rented out my home in Bremerton, Washington, and still spend time there.

Decl. of Roger Nance at ¶ 3.

In their Response, however, Defendants point to the following:  (1) Nance listed an address in Astoria, Oregon, in the signature block of the Pre-Payment Agreement between China National and WLF; (2) Nance listed his "last known residence" as Astoria, Oregon, in his April 3, 2013, Petition for Dissolution of Marriage; (3) Nance has the property-tax statements for his Washington home sent to his address in Oregon; and (4) Nance placed his Washington home up for sale in August 2013. Defendants also rely on Brunstad's testimony that he "shared a residence" with Nance in Oregon for two years, and it "appeared to [Brunstad] that [Nance] intended to reside there permanently." Brunstad Decl. at ¶ 4.  Brunstad also testified Nance's girlfriend and her son moved into a condominium with Nance in Oregon in the Summer of 2013.  *Id*. at ¶ 3.

Nance, in turn, testifies in his Declaration in support of

10 - OPINION AND ORDER

EXHIBIT C
Page 10 of 12

Plaintiffs' Reply that he placed his Washington home up for sale for two months in 2013 (three months before Plaintiffs filed their complaint):

> My wife and I owned two adjacent houses in Bremerton. We lived in one of the houses as our home. When we separated [in February 2012] and divorced, I retained the home in which we jointly co-habitated and she kept the adjacent house next door. After our separation, I spent less time in Bremerton but I continued to return and spend 50% of my time there because I have friends and family there, and could continue working from my home. My wife and I eventually worked out a property settlement whereby she retained and resides in the adjacent house.
>
> I put my home up for sale for less than three (3) months because I was not sure how I would feel with living next door to my ex-wife and her boyfriend in what I expected would be the home in which we would retire. I decided not to sell my home in Bremerton because Bremerton is my permanent domicile.

Nance Decl. at ¶¶ 3-4. Nance testifies he pays Washington property taxes, has a Washington driver's license, is registered to vote in Washington, and has a brokerage account with Morgan Stanley in Washington. Attached to his Declaration are copies of Nance's Washington driver's license, Washington voter-registration card, and brokerage-account statement. Nance also testifies he was not represented by counsel in his divorce, and he did not intend to indicate that he was domiciled in Oregon when he noted in his Petition for Dissolution of Marriage that his residence was in Oregon.

As with Defendant Westerlund, most of the factors relevant

11 - OPINION AND ORDER

EXHIBIT C
Page 11 of 12

to a determination of domicile as set out in *Lew* also support a
conclusion that Nance was domiciled in Washington at the time
that Plaintiffs filed their complaint.  The evidence relied on by
Defendants establishes, at most, that Nance's mailing address was
in Oregon and that he resided in Oregon for business purposes.
As noted, residence and a mailing address do not establish
domicile or citizenship in a particular state under § 1332(a).

On this record the Court concludes Nance has established he
was domiciled in Washington at the time that Plaintiffs filed
their complaint.  Thus, Nance was a citizen of Washington at the
time that Plaintiffs filed their Complaint and, therefore, there
was not complete diversity of Plaintiffs and Defendants.

## **CONCLUSION**

For these reasons, the Court **GRANTS** Plaintiffs' Motion (#4)
to Remand and **REMANDS** this matter to Clatsop County Circuit
Court.

IT IS SO ORDERED.

DATED this 4th day of April, 2014.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge


12 - OPINION AND ORDER

EXHIBIT C
Page 12 of 12

1
2
3
4                    IN THE CIRCUIT COURT OF THE STATE OF OREGON

5                        FOR THE COUNTY OF CLATSOP

6   MURPHY OVERSEAS USA ASTORIA
7   FOREST PRODUCTS, LLC, an Oregon          Case No. 14 CV 01829
    limited liability company,
8                                            ANSWER AND CROSS-COMPLAINT
                        Plaintiff,
9                                            Demand for Jury Trial
         v.
10
    CHINA NATIONAL BUILDING
11  MATERIALS IMPORT AND EXPORT
    CORPORATION, a People's Republic of
12  China corporation, WESTERLUND LOG
    HANDLERS, LLC, a Washington limited
13  liability company, DAVID WESTERLUND;
    and ROGER NANCE,
14
                        Defendants.
15

16       For answer to plaintiff Murphy Overseas USA Astoria Forest Products,

17  LLC, ("Astoria Forest Products"), defendants Westerlund Log Handlers, LLC,

18  David Westerlund and Roger Nance (hereinafter, "defendants Westerlund")

19  hereby admit, deny and allege as follows:

20                                    **1.**

21       Defendants Westerlund admit the allegations of paragraphs 1 through 3, 6, 9

22  and 11 of plaintiff's complaint.

23                                    **2.**

24       Defendants Westerlund admit the allegations of paragraph 4, noting that

25  defendant China National Building Materials Import and Export Corporation

26

PAGE 1 - ANSWER AND CROSS-COMPLAINT

*GORDON T. CAREY, JR., P.C.*
*1020 SW Taylor Street, Suite 375, Portland, Oregon 97205*

1   ("CNBM") *claims* to be a secured creditor which defendants Westerlund deny.

2                                **3**.

3      Defendants David Westerlund and Roger Nance admit that they have

4   residences in Clatsop County, Oregon, but assert that their domiciles are in

5   Washington, and assert that any alleged guarantees are void or voidable, and are not

6   enforceable.

7                                 **4**.

8      Defendants Westerlund admit the allegations of paragraph 10, except that

9   defendants Westerlund contend that any alleged security agreements and guarantees

10   are void or voidable and are not enforceable.

11             **CROSS-CLAIMS AGAINST DEFENDANT CNBM**

12      For cross-claims against defendant CNBM, defendants Westerlund hereby

13   allege that:

14                     **FIRST CLAIM FOR RELIEF**

15                      **(Breach of Contract)**

16                                 **5**.

17      Plaintiff WESTERLUND LOG HANDLERS, LLC (hereinafter "WLH") is a

18   Washington limited liability company, authorized to do, and regularly doing

19   business, in Clatsop County, Oregon.  Plaintiff WLH is in the business of

20   transporting, preparing, handling and loading logs for export from ports of the

21   United States, including the Port of Astoria.

22                                 **6**.

23      Plaintiff DAVID WESTERLUND is an individual, and is the managing

24   member of WLH. Plaintiff ROGER NANCE is an individual, and a member of WLH.

25   Plaintiffs Westerlund and Nance are domiciled in, and citizens of, the state of

26

PAGE 2 - ANSWER AND CROSS-COMPLAINT

1  Washington.  Plaintiff Westerlund and plaintiff Nance are indemnitors under the

2  prepay agreement referred to herein.

### 7.

4  Defendant CHINA NATIONAL BUILDING MATERIALS IMPORT AND

5  EXPORT CORPORATION is a foreign corporation organized under the laws of the

6  People's Republic of China, regularly doing business in Clatsop County, Oregon

7  (hereinafter, "CNBM"). Defendant CNBM FOREST PRODUCTS CANADA, Ltd.,

8  is a foreign corporation organized under the laws of Canada, regularly doing business

9  in Clatsop County, Oregon.  Unless separately stated, the foregoing shall be referred

10  to as "CNBM".  CNBM is in the business of purchasing and shipping logs from the

11  United States and Canada to customers in  China and other countries.  The claims

12  alleged herein arise from the parties' business activities in Clatsop County.

### 8.

14  In 2012, plaintiffs and defendant CNBM entered into negotiations to conduct

15  an enterprise whereby defendant CNBM would purchase logs in the United States and

16  Canada, and plaintiff WLH would transport the logs purchased by CNBM, prepare

17  and debarking same, and load the logs aboard ships for transportation overseas for

18  rates ranging from $143.00 to $162.00 per 1,000 board feet.  In addition, defendant

19  CNBM agreed, for valuable consideration, *inter alia*,  to extend a prepayment of

20  $3,550,000, to enable WLH to acquire equipment to use in its operations, a part of

21  which was for the benefit of CNBM, and to credit plaintiffs $60,000 against said

22  prepayment per ship loaded.  Defendant CNBM further agreed to share the profits of

23  the enterprise, and negotiate in good faith an operating agreement dividing the profits.

### 9.

25  Pursuant to the agreement of the parties, WLH shipped 18 loads of logs at the

26

PAGE 3 - ANSWER AND CROSS-COMPLAINT

1  direction of CNBM in 2012 and 2013 from the Port of Astoria, Clatsop County, and

2  have stockpiled an additional approximate 4.5 million board feed of logs in Clatsop

3  County, Oregon.

4  **10**.

5  Plaintiffs have performed or are prepared to perform all conditions precedent

6  on their part to be performed.

7  **11.**

8  Defendant CNBM has breached the agreement in that:

9  (a)    Defendant CNBM failed to credit plaintiffs with $60,000 per ship, or

10  $1,080,000 and, instead,  required WLH to pay $751,000, all to plaintiffs' damage;

11  (b)    Failed to negotiate in good faith an operating agreement, and failed to

12  pay WLH its share of the profits of the enterprise.

13  **12.**

14  As a result, plaintiffs have been damaged in the amount of a credit for

15  $1,080,000, $751,000 improperly paid, their share of the profits in an amount to be

16  proven at trial, and such other damages for breach as proved at trial.

17  **SECOND CLAIM FOR RELIEF**

18  **(Reformation)**

19  **13.**

20  Plaintiffs reallege and incorporate by reference the allegations of paragraphs

21  1 through 9.

22  **14.**

23  Plaintiffs and defendant CNBM, through mutual mistake, or through plaintiffs'

24  unilateral mistake and inequitable conduct on the part of defendant CNBM, entered

25  into a signed prepayment agreement in August, 2012 which did not clearly express

26

PAGE 4 - ANSWER AND CROSS-COMPLAINT

*GORDON T. CAREY, JR., P.C.*
*1020 SW Taylor Street, Suite 375, Portland, Oregon 97205*

EXHIBIT D
Page 4 of 11

1   that defendant CNBM would credit plaintiffs as was intended.  The mistake did not

2   occur as the result of the gross negligence of plaintiffs.

3                         **15.**

4       This court should reform the agreement to reflect that plaintiffs are entitled to

5   a $60,000 credit for each shipment of logs, against the prepayment of $3,550,000.

6                         **16.**

7       Plaintiff has no plain, speedy or adequate remedy at law.

8                 **THIRD CLAIM FOR RELIEF**

9                      **(Rescission)**

10                       **17.**

11       Plaintiffs reallege and incorporates by reference the allegations of paragraphs

12   1-9 and 11-13 above.

13                      **18**.

14       In or about August, 2012, the parties entered into a security agreement and

15   membership pledge agreement whereby plaintiffs granted a security interest in assets

16   of WLH and their membership interest. The parties further entered into an option to

17   purchase agreement whereby plaintiffs granted defendant CNBM the option to

18   purchase a 50% interest in plaintiff WLH.

19                       **19.**

20       In entering into said security, pledge and option agreements, plaintiffs  relied

21   on, and had the right to rely on,  the representations of defendants, and specifically

22   the representations that defendant CNMB would negotiate in good faith and enter into

23   an operating agreement whereby the parties would share the profits of the enterprise,

24   and plaintiffs would receive the credit promised against the prepayment. Plaintiffs

25   believed defendant CNBM's representations to be true, relied thereon and executed

26

PAGE 5 - ANSWER AND CROSS-COMPLAINT

1  the agreements in reliance thereon.  Defendant CNBM's representations were a

2  material inducement to plaintiffs, and plaintiffs would not have entered into the

3  agreements in absence of those representations.

4  <center>**20**.</center>

5  Defendant CNBM's representations were at the time made false and untrue,

6  or were made with reckless disregard for whether they were true or false, in that

7  defendant CNBM did not have the authority to enter into an operating agreement

8  sharing the profits, and did not intend to do so.  At the time defendant CNBM made

9  the representations, defendant CNBM knew or should have known the representations

10  were false, or made the representations recklessly without regard for whether the

11  representations were true or false.

12  <center>**21**.</center>

13  As a result, plaintiffs hereby elect to rescind the security, pledge and option

14  agreements.

15  <center>**22**.</center>

16  Plaintiffs have no adequate or efficient remedy at law.

17  <center>**FOURTH CLAIM FOR RELIEF**</center>

18  <center>**(Declaratory Relief)**</center>

19  <center>**23**.</center>

20  Plaintiffs reallege and incorporates by reference the allegations of paragraphs

21  1-9, 11-13, and 15-19 above.

22  <center>**24**.</center>

23  There is an actual controversy between plaintiffs and defendant CNBM about

24  the terms and performance of the agreements between parties.

25  <center>**25**.</center>

26

PAGE 6 - ANSWER AND CROSS-COMPLAINT

<center>***GORDON T. CAREY, JR., P.C.***
*1020 SW Taylor Street, Suite 375, Portland, Oregon 97205*</center>

EXHIBIT D
Page 6 of 11

1    Plaintiffs contend that they are entitled to a credit for every ship loaded of

2    $60,000, and defendant CNBM denies same.

3                                **26.**

4    Plaintiffs further contend that the agreement should be reformed to provide

5    for such credits, and that plaintiff should be repaid $751,000. Defendant CNBM

6    denies same.

7                                **27.**

8    Finally, plaintiffs contend that the security agreement, membership pledge

9    agreement and option to purchase agreement are void, and defendant CNBM

10   denies same.

11                        **FIFTH CLAIM FOR RELIEF**

12                            **(Accounting)**

13                                **28.**

14   Plaintiffs reallege and incorporate by reference the allegations of paragraphs

15   1-9, 11-13, 15-19 and 21-24 above.

16                                **29.**

17   Plaintiffs and defendant CNBM formed a joint venture for purposes of the

18   enterprise.

19                                **30.**

20   Plaintiffs and defendant CNBM do not have a written joint venture agreement.

21   Because the partnership's principal place of business is in Oregon, Oregon

22   partnership law and ORS Chapter 67 govern their joint venture.

23                                **31.**

24   Under the terms of their joint venture agreement, plaintiffs conducted the

25   operations of transporting, preparing and loading logs purchased by defendant

26

PAGE 7 - ANSWER AND CROSS-COMPLAINT

***GORDON T. CAREY, JR., P.C.***
*1020 SW Taylor Street, Suite 375, Portland, Oregon 97205*

EXHIBIT D
Page 7 of 11

1    CNBM, and defendant CNBM purchased the logs and arranged for resale.    The

2    parties agreed to divide any profits made by the venture and to account to each other

3    for all costs of the venture.

4                                                    **32.**

5           Defendant CNBM has breached its duties, including its fiduciary duties, to the

6    partnership and plaintiffs by, among other things, failing to provide plaintiffs with

7    accounts of the income and expenses of the partnership.

8                                                    **33.**

9           Pursuant to ORS Chapter 67, plaintiffs demand an accounting from defendant

10    CNBM for all profits earned during the course of the enterprise, including all benefits

11    received from partnership opportunities.

12                                                    **34**.

13           Plaintiffs seek an order from the court compelling defendant CNBM to account

14    to plaintiffs concerning the enterprise, and upon completion of the accounting, to pay

15    to plaintiffs their share of the profits, and damages as a result of diversion of

16    partnership opportunities.

17                                **SIXTH CLAIM FOR RELIEF**

18                                  **(Tortious Interference)**

19                                                    **35**.

20           Plaintiffs reallege and incorporate by reference the allegations of paragraphs

21    1-9, 11-13, 15-19, 21-24 and 26-31 above.

22                                                    **36.**

23           At all material times, plaintiffs were engaged in business relationships with

24    customers, vendors and others, which relationships would continue indefinitely in the

25    future.

26

PAGE 8 - ANSWER AND CROSS-COMPLAINT

*GORDON T. CAREY, JR., P.C.*
*1020 SW Taylor Street, Suite 375, Portland, Oregon 97205*

EXHIBIT D
Page 8 of 11

**37**.

Defendant CNBM and its agents and/or representatives interfered with plaintiffs' existing business relationships and prospective advantage through improper means by, *inter alia*, disparaging plaintiffs, spreading malicious misinformation, and threatening litigation. As a result, defendant caused plaintiffs' performance of their duties to be so onerous and difficult that defendant frustrated plaintiffs' performance thereof and have caused customers, vendors and others to cease doing business with plaintiffs. In addition, defendant CNBM owed duties of loyalty to plaintiffs and violated those duties.

**38**.

Defendant interfered with plaintiffs for an improper purpose in that, *inter alia*, defendant intended to prevent plaintiffs from continuing in business, and further intended to appropriate plaintiffs' equipment, operations, customers and opportunities for themselves.

**39**.

As a result, plaintiffs have been damaged in the amount of lost past and future profits, the value of their operations, and the value of future opportunities, all in an amount to be proved at trial, but not less than $30,000,000.

**40**.

Defendant's acts amount to a particularly aggravated disregard of the rights of plaintiffs and society. Following discovery, plaintiffs may seek leave of the court to amend the complaint to seek punitive damages in an amount of not less than $5,000,000.

WHEREFORE, plaintiffs pray for relief as follows:

1.     On their answer, for declaratory relief as prayed for by plaintiff

PAGE 9 - ANSWER AND CROSS-COMPLAINT

Astoria Forest Products;

2.      On plaintiffs' cross-claims:

a.      For an accounting and payment of profits and other amounts due;

b.      For reformation of the written prepayment agreement to reflect that plaintiffs were entitled to a credit of $60,000 per ship;

c.      For rescission of the security, pledge and option agreements;

d.      For damages for breach in the amount of $1,831,000 and additional amounts to be proved at trial;

e.      For damages for lost profits, the value of plaintiffs' operations and opportunities in an amount to be proved at trial, but not less than $30,000,000;

f.      For costs and disbursements incurred herein;

g.      For pre-judgment and post-judgment interest; and

h.      For such other and further relief as the court may deem just and equitable.

DATED this 16th day of April, 2014.

GORDON T. CAREY, JR., P.C.

Gordon T. Carey, Jr., OSB No. 77133
Attorney for Plaintiffs

PAGE 10 - ANSWER AND CROSS-COMPLAINT

EXHIBIT D
Page 10 of 11

## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2014, I served the foregoing ANSWER AND

CROSS-COMPLAINT on the following named persons on the date indicated, by

[  x ] mailing with postage prepaid;

[    ] fax;

[    ] hand delivery

[    ] email

to said person(s) a copy thereof:

Thomas C. Sand
Miller Nash LLP
3400 US Banorp Tower
111 SW Fifth Avenue
Portland, OR 97204

Michael J. Esler
Esler, Stephens & Buckley
888 SW 5th Avenue, Suite 700
Portland, OR 97204

Brian W. Esler
Miller Nash LLP
4400 Two Union Square
601 Union Street
Seattle, WA 98101

John D. Ostrander
Elliott, Ostrander & Preston, PC
707 SW Washington Street, Ste 1500
Portland, OR 97205

Gordon T. Carey, Jr., OSB#771331
Attorney for plaintiffs

EXHIBIT D
Page 11 of 11

# SECURITY AGREEMENT

THIS SECURITY AGREEMENT (this "Security Agreement"), dated as of August 10, 2012, is made and given by WESTERLUND LOG HANDLERS, LLC, a limited liability company organized under the laws of the State of Washington (the "Grantor"), to CHINA NATIONAL BUILDING MATERIALS IMPORT AND EXPORT CORPORATION, a corporation incorporated under the laws of People's Republic of China (the "Secured Party").

## Recitals

A. Grantor, Secured Party, David Westerlund and Roger Nance, Jr. are party to that certain Pre-payment Agreement (the "Pre-payment Agreement") dated as of the date hereof, pursuant to which, among other things, Secured Party has agreed to make a pre-payment to Grantor in exchange for a Purchase Credit (as defined in the Pre-payment Agreement) towards each log shipment Grantor makes to Secured Party.

B. As a condition to entering into the Pre-payment Agreement, the Secured Party has required that Grantor enter into this Security Agreement to pledge all of its present and after acquired personal property to the Secured Party.

C. The Grantor finds it advantageous, desirable and in its best interests to comply with the requirement that it execute and deliver this Security Agreement to the Secured Party.

NOW, THEREFORE, in consideration of the premises and in order to induce the Secured Party to make the pre-payment to the Grantor, the Grantor hereby agrees with the Secured Party for the Secured Party's benefit as follows:

## 1. Defined Terms.

(a)     As used in this Agreement, the following terms shall have the meanings indicated:

"Account" shall mean the rights of the Grantor to payment for goods sold or leased or for services rendered which is not evidenced by an Instrument or Chattel Paper, whether or not such right has been earned by performance, all guaranties and security therefor, and all interests in the goods the sale or lease of which gave rise thereto, including the right to stop such goods in transit.

"Account Debtor" shall mean a Person who is obligated on or under any Account, Chattel Paper, Instrument or General Intangible.

"Capital Cost Reimbursement" shall have the meaning assigned to such term in the Pre-payment Agreement.

"Chattel Paper" shall mean a writing or writings which evidence both a monetary obligation and a security interest in or lease of specific goods; when a transaction is evidenced by both a security agreement or a lease and by an Instrument or a series of Instruments, the group of writings taken together constitutes Chattel Paper.

"Collateral" shall mean all property and rights in property now owned or hereafter at any time acquired by the Grantor in or upon which a Security Interest is granted to the Secured Party by the Grantor under this Agreement.

- 2 -

"Document" shall mean any bill of lading, dock warrant, dock receipt, warehouse receipt or order for the delivery of goods, together with any other document or receipt which in the regular course of business or financing is treated as adequately evidencing that the Person in possession of it is entitled to receive, hold and dispose of the document and the goods it covers.

"Equipment" shall mean all machinery, equipment, motor vehicles, furniture, furnishings and fixtures, including all accessions, accessories and attachments thereto, and any guaranties, warranties, indemnities and other agreements of manufacturers, vendors and others with respect to such Equipment.

"Event of Default" shall have the meaning given to such term in Section 19 hereof.

"Financing Statement" shall have the meaning given to such term in Section 4 hereof.

"General Intangibles" shall mean any personal property (other than goods, Accounts, Chattel Paper, Documents, Instruments and money) including choses in action, causes of action, contract rights, corporate and other business records, inventions, designs, patents, patent applications, service marks, trademarks, tradenames, trade secrets, internet domain names, engineering drawings, good will, registrations, copyrights, licenses, franchises, customer lists, tax refund claims, royalties, licensing and product rights, rights to the retrieval from third parties of electronically processed and recorded data and all rights to payment resulting from an order of any court.

"Instrument" shall mean a draft, check, certificate of deposit, note, bill of exchange, security or any other writing which evidences a right to the payment of money, and is not itself a security agreement or lease and is of a type which is transferred in the ordinary course of business by delivery with any necessary endorsement or assignment.

"Inventory" shall mean any and all goods owned or held by or for the account of the Grantor for sale or lease, or for furnishing under a contract of service, or as raw materials, work in process, materials incorporated in or consumed in the production of any of the foregoing and supplies, in each case wherever the same shall be located, whether in transit, on consignment, in retail outlets, warehouses, terminals or otherwise, and all property the sale, lease or other disposition of which has given rise to an Account and which has been returned to the Grantor or repossessed by the Grantor or stopped in transit.

"Lien" shall mean any security interest, mortgage, pledge, lien, charge, encumbrance, title retention agreement or analogous instrument or device (including the interest of the lessors under capitalized leases), in, of or on any assets or properties of the Person referred to.

"Obligations" shall mean (a) any and all obligations owing to the Secured Party under the Pre-payment Agreement (and any extension, renewal or replacement thereof) including, without limitation, all Purchase Credits, Top Up Payments and Capital Cost Reimbursements, (b) all liabilities of the Grantor under this Agreement.

"Person" shall mean any individual, corporation, partnership, limited partnership, limited liability company, joint venture, firm, association, trust, unincorporated organization, government or governmental agency or political subdivision or any other entity, whether acting in an individual, fiduciary or other capacity.

"Pre-payment Agreement" shall have the meaning indicated in Recital A.

- 3 -

"Purchase Credits" shall have the meaning assigned to such term in the Pre-payment Agreement.

"Security Interest" shall have the meaning given such term in Section 2 hereof.

"Top Up Payments" shall have the meaning assigned to such term in the Pre-payment Agreement.

(b)    All other terms used in this Agreement which are not specifically defined herein shall have the meaning assigned to such terms in the Uniform Commercial Code in effect in the State of Washington as of the date of this Agreement to the extent such other terms are defined therein.

(c)    Unless the context of this Agreement otherwise clearly requires, references to the plural include the singular, the singular, the plural and "or" has the inclusive meaning represented by the phrase "and/or." The words "include," "includes" and "including" shall be deemed to be followed by the phrase "without limitation." The words "hereof," "herein," "hereunder" and similar terms in this Agreement refer to this Agreement as a whole and not to any particular provision of this Agreement. References to Sections are references to Sections in this Security Agreement unless otherwise provided.

## 2.  Grant of Security Interest.

As security for the payment and performance of all of the Obligations, the Grantor hereby grants to the Secured Party a security interest (the "Security Interest") in all of the Grantor's right, title, and interest in and to the following, whether now or hereafter owned, existing, arising or acquired and wherever located:

(a) All Accounts.

(b) All Chattel Paper.

(c) All Documents.

(d) All Equipment.

(e) All General Intangibles.

(f) All Instruments.

(g) All Inventory.

(h) To the extent not otherwise included in the foregoing, (i) all other rights to the payment of money, including rents and other sums payable to the Grantor under leases, rental agreements and other Chattel Paper and insurance proceeds; (ii) all books, correspondence, credit files, records, invoices, bills of lading, and other documents relating to any of the foregoing, including, without limitation, all tapes, cards, disks, computer software, computer runs, and other papers and documents in the possession or control of the Grantor or any computer bureau from time to time acting for the Grantor; (iii) all rights in, to and under all policies insuring the life of any officer, director, stockholder or employee of the Grantor, the proceeds of which are payable to the Grantor; and (iv) all accessions and additions to, parts and appurtenances of, substitutions for and replacements of any of the foregoing.

(i) To the extent not otherwise included, all proceeds and products of any and all of the foregoing.

- 4 -

## 3.  Grantor Remains Liable.

Anything herein to the contrary notwithstanding, (a) the Grantor shall remain liable under the Accounts, Chattel Paper, General Intangibles and other items included in the Collateral to the extent set forth therein to perform all of its duties and obligations thereunder to the same extent as if this Agreement had not been executed, (b) the exercise by the Secured Party of any of the rights hereunder shall not release the Grantor from any of its duties or obligations under any items included in the Collateral, and (c) the Secured Party shall have no obligation or liability under Accounts, Chattel Paper, General Intangibles and other items included in the Collateral by reason of this Agreement, nor shall the Secured Party be obligated to perform any of the obligations or duties of the Grantor thereunder or to take any action to collect or enforce any claim for payment assigned hereunder.

## 4.  Title to Collateral.

The Grantor has (or will have at the time it acquires rights in Collateral hereafter acquired or arising) and will maintain so long as the Security Interest may remain outstanding, title to each item of Collateral (including the proceeds and products thereof), free and clear of all Liens except the Security Interest. The Grantor will defend the Collateral against all claims or demands of all Persons (other than the Secured Party) claiming the Collateral or any interest therein. As of the date of execution of this Security Agreement, no effective financing statement or other similar document used to perfect and preserve a security interest under the laws of any jurisdiction (a "Financing Statement") covering all or any part of the Collateral is on file in any recording office, except such as may have been filed in favor of the Secured Party relating to this Agreement.

## 5.  Disposition of Collateral.

The Grantor will not sell, lease or otherwise dispose of, or discount or factor with or without recourse, any Collateral, except sales of items of Inventory in the ordinary course of business.

## 6.  Covenants

The Grantor covenants with the Secured Party that at all times while this Agreement remains in effect the Grantor shall:

  (a) fully and effectually maintain and keep maintained the validity and effectiveness of the security interest created hereby;

  (b) maintain the Collateral in good order and repair;

  (c) forthwith discharge all security interests, charges, encumbrances, liens and claims that rank or could in any event rank in priority to the security interest created hereby, other than the charges or security interests, if any, consented to in writing by the Secured Party;

  (d) notify the Secured Party promptly of

      a.  the details of any material acquisition of Collateral;

      b.  any material loss or damage to the Collateral;

      c.  any material default by any account debtor in payment or other performance of his or her obligations to the Grantor with respect to any Accounts;

EXHIBIT E
Page 4 of 15

- 5 -

    d.  the return to or repossession by the Grantor of the Collateral where such return or repossession of the Collateral is material in relation to the business of the Grantor; and

    e.  the details of any claims or litigation affecting the Grantor or the Collateral;

(e)  prevent the Collateral, other than Inventory sold, leased, or otherwise disposed of as permitted by this Agreement, from being or becoming an accession to other property not covered by this Agreement; and

(f)  carry on and conduct the business of the Grantor in a proper and efficient manner and so as to protect and preserve the Collateral and to keep, in accordance with generally accepted accounting principles, consistently applied, proper books of account for the Grantor's business as well as accurate and complete records concerning the Collateral;

(g)  where the Collateral is Investment Property, shall prevent any party other than the Secured Party from having control.

## 7.  Names, Offices, Locations.

The Grantor does business solely under its own name and the trade names and styles, if any, set forth on Schedule II hereto. Except as noted on said Schedule, no such trade names or styles and no trademarks or other similar marks owned by the Grantor are registered with any governmental unit. The chief place of business and chief executive office and the office where it keeps its books and records concerning the Accounts and General Intangibles and the originals of all Chattel Paper, Documents and Instruments are located at its address set forth on the signature page hereof. All items of Equipment and Inventory existing on the date of this Agreement are located at the places specified on Schedule I hereto. The Grantor will immediately notify the Secured Party of any additional state in which any item of Inventory or Equipment is hereafter located. The Grantor will from time to time at the request of the Secured Party provide the Secured Party with current lists as to the locations of the Equipment and Inventory. The Grantor will not permit any Inventory, Equipment, Chattel Paper or Documents or any records pertaining to Accounts and General Intangibles to be located in any state or area in which, in the event of such location, a financing statement covering such Collateral would be required to be, but has not in fact been, filed in order to perfect the Security Interest. The Grantor will not change its name or the location of its chief place of business and chief executive office unless the Secured Party has been given at least 30 days prior written notice thereof and the Grantor has executed and delivered to the Secured Party such Financing Statements and other instruments required or appropriate to continue the perfection of the Security Interest.

## 8.  Rights to Payment.

Except as the Grantor may otherwise advise the Secured Party in writing, each Account, Chattel Paper, Document, General Intangible and Instrument constituting or evidencing Collateral hereafter arising or issued will be when arising or issued the valid, genuine and legally enforceable obligation of the Account Debtor or other obligor named therein or in the Grantor's records pertaining thereto as being obligated to pay or perform such obligation. Without the Secured Party's prior written consent, the Grantor will not agree to any modifications, amendments, subordinations, cancellations or terminations of the obligations of any Account Debtors (or Account Debtors or other obligors in respect of such currently subsisting rights to payments) or other obligors except in the ordinary course of business and in amounts not exceeding $5,000 per Account Debtor or other obligor in any calendar year. The Grantor will perform and comply in all material respects with all its obligations under any items included in the Collateral and exercise promptly and diligently its rights thereunder.

32794\1169648_2\KMILLER
01/08/2012 5:59:26 PM

- 6 -

**9.  Further Assurances; Attorney-in-Fact.**

(a)  The Grantor agrees that from time to time, at its expense, it will promptly execute and deliver all further instruments and documents, and take all further action, that may be necessary or that the Secured Party may reasonably request, in order to perfect and protect the Security Interest granted or purported to be granted hereby or to enable the Secured Party to exercise and enforce its rights and remedies hereunder with respect to any Collateral (but any failure to request or assure that the Grantor execute and deliver such instrument or documents or to take such action shall not affect or impair the validity, sufficiency or enforceability of this Agreement and the Security Interest, regardless of whether any such item was or was not executed and delivered or action taken in a similar context or on a prior occasion). Without limiting the generality of the foregoing, the Grantor will, promptly and from time to time at the request of the Secured Party: (i) mark, or permit the Secured Party to mark, conspicuously its books, records, and accounts showing or dealing with the Collateral, and each item of Chattel Paper included in the Collateral, with a legend, in form and substance satisfactory to the Secured Party, indicating that each such item of Collateral and each such item of Chattel Paper is subject to the Security Interest granted hereby; (ii) deliver and pledge to the Secured Party, all Instruments and Documents, duly indorsed or accompanied by duly executed instruments of transfer or assignment, with full recourse to the Grantor, all in form and substance satisfactory to the Secured Party; (iii) execute and file such Financing Statements or continuation statements in respect thereof, or amendments thereto, and such other instruments or notices (including fixture filings with any necessary legal descriptions as to any goods included in the Collateral which the Secured Party determines might be deemed to be fixtures, and instruments and notices with respect to vehicle titles), as may be necessary or desirable, or as the Secured Party may request, in order to perfect, preserve, and enhance the Security Interest granted or purported to be granted hereby; and (iv) obtain waivers, in form satisfactory to the Secured Party, of any claim to any Collateral from any landlords or mortgagees of any property where any Inventory or Equipment is located.

(b)  The Grantor hereby authorizes the Secured Party to file one or more Financing Statements or continuation statements in respect thereof, and amendments thereto, relating to all or any part of the Collateral without the signature of the Grantor where permitted by law. A photocopy or other reproduction of this Agreement or any Financing Statement covering the Collateral or any part thereof shall be sufficient as a Financing Statement where permitted by law.

(c)  The Grantor will furnish to the Secured Party from time to time statements and schedules further identifying and describing the Collateral and such other reports in connection with the Collateral as the Secured Party may reasonably request, all in reasonable detail and in form and substance reasonably satisfactory to the Secured Party.

(d)  In furtherance, and not in limitation, of the other rights, powers and remedies granted to the Secured Party in this Agreement, the Grantor hereby appoints the Secured Party the Grantor's attorney-in-fact, with full authority in the place and stead of Grantor and in the name of Grantor or otherwise, from time to time in the Secured Party's good faith discretion, to take any action (including the right to collect on any Collateral) and to execute any instrument that the Secured Party may reasonably believe is necessary or advisable to accomplish the purposes of this Agreement, in a manner consistent with the terms hereof.

**10.  Taxes and Claims.**

The Grantor will promptly pay all taxes and other governmental charges levied or assessed upon or against any Collateral or upon or against the creation, perfection or continuance of the Security Interest,

- 7 -

as well as all other claims of any kind (including claims for labor, material and supplies) against or with respect to the Collateral, except to the extent (a) such taxes, charges or claims are being contested in good faith by appropriate proceedings, (b) such proceedings do not involve any material danger of the sale, forfeiture or loss of any of the Collateral or any interest therein, (c) such taxes, charges or claims are adequately reserved against on the Grantor's books in accordance with generally accepted accounting principles, and (d) to the extent such taxes, charges or claims are indemnified against by the Secured Party in the Pre-payment Agreement.

**11. Books and Records.**

The Grantor will keep and maintain at its own cost and expense satisfactory and complete records of the Collateral, including a record of all payments received and credits granted with respect to all Accounts , Chattel Paper and other items included in the Collateral.

**12. Inspection, Reports, Verifications.**

The Grantor will at all reasonable times permit the Secured Party or its representatives to examine or inspect any Collateral, any evidence of Collateral and the Grantor's books and records concerning the Collateral, wherever located. The Grantor will from time to time when requested by the Secured Party furnish to the Secured Party a report on its Accounts, Chattel Paper, General Intangibles and Instruments, naming the Account Debtors or other obligors thereon, the amount due and the aging thereof.

**13. Notice of Loss.**

The Grantor will promptly notify the Secured Party of any loss of or material damage to any material item of Collateral or of any substantial adverse change, known to Grantor, in any material item of Collateral or the prospect of payment or performance thereof.

**14. Insurance.**

The Grantor will keep the Inventory and Equipment insured against "all risks" for the full replacement cost thereof subject to a deductible not exceeding $[    ] and with an insurance company or companies satisfactory to the Secured Party, the policies to protect the Secured Party as its interests may appear, with such policies or certificates with respect thereto to be delivered to the Secured Party at its request. Each such policy or the certificate with respect thereto shall provide that such policy shall not be canceled or allowed to lapse unless at least 30 days prior written notice is given to the Secured Party.

**15. Lawful Use; Fair Labor Standards Act.**

The Grantor will use and keep the Collateral, and will require that others use and keep the Collateral, only for lawful purposes, without violation of any federal, state or local law, statute or ordinance. All Inventory of the Grantor hereafter produced by the Grantor or with respect to which the Grantor performs any manufacturing or assembly process will be produced by the Grantor in compliance in all material respects with all requirements of the Fair Labor Standards Act.

**16. Action by the Secured Party.**

If the Grantor at any time fails to perform or observe any of the foregoing agreements, the Secured Party shall have (and the Grantor hereby grants to the Secured Party) the right, power and authority (but not the duty) to perform or observe such agreement on behalf and in the name, place and stead of the Grantor (or, at the Secured Party's option, in the Secured Party's name) and to take any and all other actions which the

- 8 -

Secured Party may reasonably deem necessary to cure or correct such failure (including, without limitation, the payment of taxes, the satisfaction of Liens, the procurement and maintenance of insurance, the execution of assignments, security agreements and Financing Statements, and the indorsement of instruments); and the Grantor shall thereupon pay to the Secured Party on demand the amount of all monies expended and all costs and expenses (including reasonable attorneys' fees and legal expenses) incurred by the Secured Party in connection with or as a result of the performance or observance of such agreements or the taking of such action by the Secured Party, together with interest thereon from the date expended or incurred at the highest lawful rate then applicable to any of the Obligations, and all such monies expended, costs and expenses and interest thereon shall be part of the Obligations secured by the Security Interest.

**17. Insurance Claims.**

As additional security for the payment and performance of the Obligations, the Grantor hereby assigns to the Secured Party any and all monies (including proceeds of insurance and refunds of unearned premiums) due or to become due under, and all other rights of the Grantor with respect to, any and all policies of insurance now or at any time hereafter covering the Collateral or any evidence thereof or any business records or valuable papers pertaining thereto. At any time, whether before or after the occurrence of any Event of Default, the Secured Party may (but need not), in the Secured Party's name or in Grantor's name, execute and deliver proofs of claim, receive all such monies, indorse checks and other instruments representing payment of such monies, and adjust, litigate, compromise or release any claim against the issuer of any such policy. Notwithstanding any of the foregoing, so long as no Event of Default exists the Grantor shall be entitled to all insurance proceeds with respect to Equipment or Inventory provided that such proceeds are applied to the cost of replacement Equipment or Inventory.

**18. The Secured Party's Duties.**

The powers conferred on the Secured Party hereunder are solely to protect its interest in the Collateral and shall not impose any duty upon it to exercise any such powers. The Secured Party shall be deemed to have exercised reasonable care in the safekeeping of any Collateral in its possession if such Collateral is accorded treatment substantially equal to the safekeeping which the Secured Party accords its own property of like kind. Except for the safekeeping of any Collateral in its possession and the accounting for monies and for other properties actually received by it hereunder, the Secured Party shall have no duty, as to any Collateral, as to ascertaining or taking action with respect to calls, conversions, exchanges, maturities, tenders or other matters relative to any Collateral, whether or not the Secured Party has or is deemed to have knowledge of such matters, or as to the taking of any necessary steps to preserve rights against any Persons or any other rights pertaining to any Collateral. The Secured Party will take action in the nature of exchanges, conversions, redemptions, tenders and the like requested in writing by the Grantor with respect to the Collateral in the Secured Party's possession if the Secured Party in its reasonable judgment determines that such action will not impair the Security Interest or the value of the Collateral, but a failure of the Secured Party to comply with any such request shall not of itself be deemed a failure to exercise reasonable care.

**19. Default.**

Each of the following occurrences shall constitute an Event of Default under this Agreement: (a) the failure of the Grantor to pay when due any of the Obligations; (b) the failure of the Grantor to perform any agreement of its contained herein or in the Pre-payment Agreement; (c) any statement, representation or warranty of the Grantor made herein or at any time furnished to the Secured Party is untrue in any material respect as of the date made; (d) the entry of any judgment in excess of $[500,000] against the Grantor; (e) the Grantor becomes insolvent or is generally not paying its debts as they become due; (f) the

- 9 -

appointment of or assignment to a custodian, as that term is defined in the United States Bankruptcy Code, for any property of the Grantor, or encumbrance, levy, seizure or attachment of any portion of the Collateral; (g) the commencement of any proceeding or the filing of a petition by or against the Grantor under the provisions of the United States Bankruptcy Code for liquidation, reorganization or adjustment of debts or under any insolvency law or other statute or law providing for the modification or adjustment of the rights of creditors; (h) dissolution, consolidation, or merger, or transfer of a substantial part of the property of the Grantor and (i) any Event of Default under the Pre-payment Agreement.

**20. Remedies on Default.**

If an Event of Default is not fully cured 14 calendar days following its occurrence, then at any time thereafter:

(a) The Secured Party may exercise and enforce any and all rights and remedies available upon default to a secured party under the Uniform Commercial Code.

(b) The Secured Party shall have the right to enter upon and into and take possession of all or such part or parts of the properties of the Grantor, including lands, plants, buildings, Equipment, Inventory and other property as may be necessary or appropriate in the judgment of the Secured Party to permit or enable the Secured Party to manufacture, produce, process, store or sell or complete the manufacture, production, processing, storing or sale of all or any part of the Collateral, as the Secured Party may elect, and to use and operate said properties for said purposes and for such length of time as the Secured Party may deem necessary or appropriate for said purposes without the payment of any compensation to Grantor therefor. The Secured Party may require the Grantor to, and the Grantor hereby agrees that it will, at its expense and upon request of the Secured Party forthwith, assemble all or part of the Collateral as directed by the Secured Party and make it available to the Secured Party at a place or places to be designated by the Secured Party.

(c) Any sale of Collateral may be in one or more parcels at public or private sale, at any of the Secured Party's offices or elsewhere, for cash, on credit, or for future delivery, and upon such other terms as the Secured Party may reasonably believe are commercially reasonable. The Secured Party shall not be obligated to make any sale of Collateral regardless of notice of sale having been given, and the Secured Party may adjourn any public or private sale from time to time by announcement made at the time and place fixed therefor, and such sale may, without further notice, be made at the time and place to which it was so adjourned.

(d) The Secured Party is hereby granted a license or other right to use, without charge, all of the Grantor's property, including, without limitation, all of the Grantor's labels, trademarks, copyrights, patents and advertising matter, or any property of a similar nature, as it pertains to the Collateral, in completing production of, advertising for sale and selling any Collateral, and the Grantor's rights under all licenses and all franchise agreements shall inure to the Secured Party's benefit until the Obligations are paid in full.

(e) If notice to the Grantor of any intended disposition of Collateral or any other intended action is required by law in a particular instance, such notice shall be deemed commercially reasonable if given in the manner specified for the giving of notice in Section 25 hereof at least ten calendar days prior to the date of intended disposition or other action, and the Secured Party may exercise or enforce any and all other rights or remedies available by law or agreement against the Collateral, against the Grantor, or against any other Person or property.

- 10 -

**21. Remedies as to Certain Rights to Payment.**

Upon the occurrence of an Event of Default and at any time thereafter the Secured Party may notify any Account Debtor or other Person obligated on any Accounts or other Collateral that the same have been assigned or transferred to the Secured Party and that the same should be performed as requested by, or paid directly to, the Secured Party, as the case may be. The Grantor shall join in giving such notice, if the Secured Party so requests. The Secured Party may, in the Secured Party's name or in the Grantor's name, demand, sue for, collect or receive any money or property at any time payable or receivable on account of, or securing, any such Collateral or grant any extension to, make any compromise or settlement with or otherwise agree to waive, modify, amend or change the obligation of any such Account Debtor or other Person. If any payments on any such Collateral are received by the Grantor after an Event of Default has occurred, such payments shall be held in trust by the Grantor as the property of the Secured Party and shall not be commingled with any funds or property of the Grantor and shall be forthwith remitted to the Secured Party for application on the Obligations.

**22. Application of Proceeds.**

All cash proceeds received by the Secured Party in respect of any sale of, collection from, or other realization upon all or any part of the Collateral may, in the discretion of the Secured Party, be held by the Secured Party as collateral for, or then or at any time thereafter be applied in whole or in part by the Secured Party against, all or any part of the Obligations (including, without limitation, any expenses of the Secured Party payable pursuant to Section 23 hereof).

**23. Costs and Expenses; Indemnity.**

The Grantor will pay or reimburse the Secured Party on demand for all out-of-pocket expenses (including in each case all filing and recording fees and taxes and all reasonable fees and expenses of counsel and of any experts and agents) incurred by the Secured Party in connection with the foreclosure or enforcement of the Security Interest and the enforcement of this Agreement, and all such costs and expenses shall be part of the Obligations secured by the Security Interest. The Grantor shall indemnify and hold the Secured Party harmless from and against any and all claims, losses and liabilities (including reasonable attorneys' fees) growing out of or resulting from this Agreement and the Security Interest hereby created (including enforcement of this Agreement) or the Secured Party's actions pursuant hereto, except claims, losses or liabilities resulting from the Secured Party's gross negligence or willful misconduct as determined by a final judgment of a court of competent jurisdiction. Any liability of the Grantor to indemnify and hold the Secured Party harmless pursuant to the preceding sentence shall be part of the Obligations secured by the Security Interest. The obligations of the Grantor under this Section shall survive any termination of this Agreement.

**24. Waivers; Remedies; Marshalling.**

This Agreement can be waived, modified, amended, terminated or discharged, and the Security Interest can be released, only explicitly in a writing signed by the Secured Party. A waiver so signed shall be effective only in the specific instance and for the specific purpose given. Mere delay or failure to act shall not preclude the exercise or enforcement of any rights and remedies available to the Secured Party. All rights and remedies of the Secured Party shall be cumulative and may be exercised singly in any order or sequence, or concurrently, at the Secured Party's option, and the exercise or enforcement of any such right or remedy shall neither be a condition to nor bar the exercise or enforcement of any other. The Grantor hereby waives all requirements of law, if any, relating to the marshalling of assets which would be applicable in connection with the enforcement by the Secured Party of its remedies hereunder, absent this waiver.

32794|1169648_2|KMILLER
01/08/2012 5:59:26 PM

- 11 -

**25. Notices.**

Any notice or other communication to any party in connection with this Agreement shall be in writing and shall be sent by manual delivery, telegram, telex, facsimile transmission, overnight courier or United States mail (postage prepaid) addressed to such party at the address specified on the signature page hereof, or at such other address as such party shall have specified to the other party hereto in writing. All periods of notice shall be measured from the date of delivery thereof if manually delivered, from the date of sending thereof if sent by telegram, telex or facsimile transmission, from the first business day after the date of sending if sent by overnight courier, or from four days after the date of mailing if mailed.

**26. Grantor Acknowledgments.**

The Grantor hereby acknowledges that (a) it has been advised by counsel in the negotiation, execution and delivery of this Agreement, (b) the Secured Party has no fiduciary relationship to the Grantor, the relationship being solely that of debtor and creditor, and (c) no joint venture exists between the Grantor and the Secured Party.

**27. Continuing Security Interest.**

This Agreement shall (a) create a continuing security interest in the Collateral and shall remain in full force and effect until payment in full of the Obligations and the expiration of the obligations, if any, of the Secured Party to extend credit accommodations to the Grantor, (b) be binding upon the Grantor, its successors and assigns, and (c) inure to the benefit of, and be enforceable by, the Secured Party and its successors, transferees, and assigns.

**28. Termination of Security Interest.**

Upon payment in full of the Obligations and the expiration of any obligation of the Secured Party to extend credit accommodations to the Grantor, the Security Interest granted hereby shall terminate. Upon any such termination, the Secured Party will return to the Grantor such of the Collateral then in the possession of the Secured Party as shall not have been sold or otherwise applied pursuant to the terms hereof and execute and deliver to the Grantor such documents as the Grantor shall reasonably request to evidence such termination. Any reversion or return of Collateral upon termination of this Agreement and any instruments of transfer or termination shall be at the expense of the Grantor and shall be without warranty by, or recourse on, the Secured Party. As used in this Section, "Grantor" includes any assigns of Grantor, any Person holding a subordinate security interest in any of the Collateral or whoever else may be lawfully entitled to any part of the Collateral.

**29. Governing Law and Construction.**

**THE VALIDITY, CONSTRUCTION AND ENFORCEABILITY OF THIS AGREEMENT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF WASHINGTON, WITHOUT GIVING EFFECT TO CONFLICT OF LAWS PRINCIPLES THEREOF, EXCEPT TO THE EXTENT THAT THE VALIDITY OR PERFECTION OF THE SECURITY INTEREST HEREUNDER, OR REMEDIES HEREUNDER, IN RESPECT OF ANY PARTICULAR COLLATERAL ARE MANDATORILY GOVERNED BY THE LAWS OF A JURISDICTION OTHER THAN THE STATE OF WASHINGTON.** Whenever possible, each provision of this Agreement and any other statement, instrument or transaction contemplated hereby or relating hereto shall be interpreted in such manner as to be effective and valid under such applicable law, but, if any provision of this Agreement or any other statement, instrument or transaction contemplated hereby or relating hereto shall be held to be prohibited or invalid under such applicable law, such provision shall be ineffective only to the extent of

- 12 -

such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement or any other statement, instrument or transaction contemplated hereby or relating hereto.

**30. Consent to Jurisdiction.**

**THIS AGREEMENT MAY BE ENFORCED IN THE COURTS OF BRITISH COLUMBIA AND THE GRANTOR CONSENTS TO THE JURISDICTION AND VENUE OF ANY SUCH COURT AND WAIVES ANY ARGUMENT THAT VENUE IN SUCH FORUMS IS NOT CONVENIENT. IN THE EVENT THE GRANTOR COMMENCES ANY ACTION IN ANOTHER JURISDICTION OR VENUE UNDER ANY TORT OR CONTRACT THEORY ARISING DIRECTLY OR INDIRECTLY FROM THE RELATIONSHIP CREATED BY THIS AGREEMENT, THE SECURED PARTY AT ITS OPTION SHALL BE ENTITLED TO HAVE THE CASE TRANSFERRED TO ONE OF THE JURISDICTIONS AND VENUES ABOVE-DESCRIBED, OR IF SUCH TRANSFER CANNOT BE ACCOMPLISHED UNDER APPLICABLE LAW, TO HAVE SUCH CASE DISMISSED WITHOUT PREJUDICE.**

**31. Waiver of Notice and Hearing.**

**THE GRANTOR HEREBY WAIVES ALL RIGHTS TO A JUDICIAL HEARING OF ANY KIND PRIOR TO THE EXERCISE BY THE SECURED PARTY OF ITS RIGHTS TO POSSESSION OF THE COLLATERAL WITHOUT JUDICIAL PROCESS OR OF ITS RIGHTS TO REPLEVY, ATTACH, OR LEVY UPON THE COLLATERAL WITHOUT PRIOR NOTICE OR HEARING. THE GRANTOR ACKNOWLEDGES THAT IT HAS BEEN ADVISED BY COUNSEL OF ITS CHOICE WITH RESPECT TO THIS PROVISION AND THIS AGREEMENT.**

**32. Waiver of Jury Trial.**

**EACH OF THE GRANTOR AND THE SECURED PARTY, BY ITS ACCEPTANCE OF THIS AGREEMENT, IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.**

**33. Counterparts.**

This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, but all such counterparts together shall constitute but one and the same instrument.

**34. General.**

All representations and warranties contained in this Agreement or in any other agreement between the Grantor and the Secured Party shall survive the execution, delivery and performance of this Agreement and the creation and payment of the Obligations. The Grantor waives notice of the acceptance of this Agreement by the Secured Party. Captions in this Agreement are for reference and convenience only and shall not affect the interpretation or meaning of any provision of this Agreement.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the Grantor has caused this Security Agreement to be duly executed and delivered by its officer thereunto duly authorized as of the date first above written.

WESTERLUND LOG HANDLERS, LLC

By: _David Westerlund_

Name: ‌

Title: _Pres._

Address for Grantor: ——————→  No. 10 Pier 1, Suite 301
Suite 200 – 3473 NW Lowell St.                Astoria, OR 97103
Silverdale, Washington, 98383
Fax [ ]

Grantor's Tax ID # [ ]

Address for the Secured Party:
c/o Victor Tsao
Farris, Vaughan, Wills & Murphy LLP
25th Floor, 700 West Georgia Street
Vancouver, British Columbia, Canada, V7Y 1B3
Fax (604) 661-9349

32794|1169648_2|KMILLER
01/08/2012 5:59:26 PM

EXHIBIT E
Page 13 of 15

**SCHEDULE I**

to

**Security Agreement**

**Locations of Equipment and Inventory as of Date of Security Agreement**

[ ASTORIA, OR 97103 ]

| Assets - Equipment | Serial/VIN Number | Mkt Value |
|---|---|---|
| 1978 Mack Dump Truck RL600L | | 3,500.00 |
| 2001 Linkbelt Log Shovel | E631-5758 | 50,000.00 |
| Log Forks | | 1,100.00 |
| Debarker | | 1,200,000.00 |
| 16085 · Control & Power Container | | 126,601.74 |
| 16225 · Marathon 680 Generator | | 18,000.00 |
| 16001 · Ford F450 Utility Truck | 1FDLF47GXSEA52694 | 8,500.00 |
| 1601 · 2004 Cat 320CLL Log Shovel | SAH243 | 95,000.00 |
| 16025 · 2007 CAT 320FM Log Shovel | SAH01223 | 125,000.00 |
| 16030 · 2000 Komatsu PC-300 Log Shovel | A84014 | 95,000.00 |
| 16035 · 1993 Komatsu 600 Wheel Loader | A50052 | 100,000.00 |
| 16040 · 1998 Komatsu 600 Wheel Loader | A52087 | 125,000.00 |
| 16045 · 1997 Komatsu 600 Wheel Loader | A51052 | 125,000.00 |
| 16050 · 1991 Komatsu 600 Wheel Loader | A10286 | 95,000.00 |
| 16055 · 1992 Komatsu 600 Wheel Loader | A10314 | 95,000.00 |
| 16060 · 1993A Komatsu 600 Wheel Loader | A50002 | 95,000.00 |
| 16065 · 1992A Komatsu 600 Wheel Loader | A10337 | 95,000.00 |
| 16071 · 2003 CAT 325CFM Log Shovel | C53M00319L | 125,000.00 |
| 16075 · 2001 CAT 320C Log Shovel | BGB00341 | 75,000.00 |
| 16076 · 199? Komatsu 600 Wheel Loader | A11235 | 95,000.00 |
| 16090 · Log Bunks | | 33,000.00 |
| 16100 · 1987 Kenworth Fuel Truck | | 15,000.00 |
| 16101 · 1998 GMC - Little Red | 1GBJ7H1C9WJ112245 | 50,000.00 |
| 16111 · 2004 Cat 322C Log Shovel | ECR00297 | 95,000.00 |
| 16200 · Air Compressor | | 1,500.00 |
| 16205 · L&C Scale shack | | 6,523.00 |
| 16220 · 45KVA Generator | | 6,190.20 |
| 16230 · Trailer Loader | | 2,500.00 |
| 17010 · 2005 Ford F150 Pickup | 1FTPX14505FB30368 | 12,000.00 |
| 17112 · 2000 Peterbilt - Big Red | 2NPNHD7X8YM536937 | 65,000.00 |
| 17120 · Storage Container - Pier 1 | | 5,285.00 |
| 17121 · Trailer Loader - Hoh River | | 2,000.00 |
| 17122 · 2001 CAT 330B Log Shovel | 6DR041780 | 140,000.00 |
| 17123 · Welder | | 10,734.24 |
| Total | | 3,192,434.18 |

Landlord's name: [ PORT OF ASTORIA, LEWIS & CLARK OREGON
TIMBER, LLC ]

SCHEDULE II

to

Security Agreement

Trade Names and Trade Styles

[   ]

## CONTRACT

THIS Agreement is entered into this _13th_ day of January, 2014, by and between WESTERLUND LOG HANDLERS, LLC, a Washington limited liability company ("WLH"), Roger Nance, Jr. ("Nance") and David Westerlund ("Westerlund") (collectively hereinafter sometimes referred to as "Guarantors") and MURPHY OVERSEAS USA ASTORIA FOREST PRODUCTS, LLC, an Oregon limited liability company ("Astoria Forest Products").

### RECITALS:

WHEREAS, WLH is in the business of sorting, grading, debarking, decking, storing and delivering to dockside, logs for export. It has leases on property suitable for storage and processing near Astoria, Oregon, and at the Port of Astoria adjacent to Pier One suited for these purposes and on which logs owned by its customers may be segregated and stored.

WHEREAS, Westerlund has expertise and an established reputation in the business of handling and preparing for shipment certain types of logs found in Northwestern Oregon and Southwestern Washington that makes his services unique and not easily replaceable.

WHEREAS, Astoria Forest Products is in the business of purchasing logs and reselling them in the overseas market [outside the USA]. It intends to purchase logs for export through the Port of Astoria and desires to engage the services of WLH and Westerlund.

WHEREAS, Astoria Forest Products desires to use WLH to transport, store, process and prepare for shipment logs that Astoria Forest Product purchases for shipment through the Port of Astoria;

NOW, THEREFORE, IT IS AGREED:

1.      From time to time Astoria Forest Products will have logs delivered to WLH at its log yard near Astoria, Oregon. The logs will be scaled by an independent, Pacific Rim Scaling Bureau or other certified scaling bureau acceptable to the parties and will be branded with unique bar code identifiers standard in the industry such as CT3 stapled to each log.

2.      WLH will off-load logs delivered for the account of Astoria Forest Products, record them as received, sort them by grades depending on the specifications submitted by Astoria Forest Products and its customers, store them, debark them and prepare them for export in a manner that meets customary and usual standards in the industry. WLH will maintain accurate records of the location of Astoria Forest Products logs at all times and will take reasonable precautions to make sure that the branding tags do not become detached.

3.     After preparing the logs for shipment, WLH will deliver them to Pier One of the Port of Astoria within twelve (12) normal working hours of the request by Astoria Forest Products.  The branding tags will be intact at the time of delivery by WLH.

4.     The logs owned by Astoria Forest Products will be stored by WLH in a segregated location at WLH's yards and will not be commingled with logs or forest products owned by WLH or by others.  Promptly upon receipt and, thereafter in the event any of the logs are moved, WLH will inform Astoria Forest Products by the end of the next business day after receipt or movement.  Upon receipt, WLH will inform Astoria Forest Products of the logs received, their unique identifiers and their location.  WLH will clearly mark the areas in which Astoria Forest Products logs are stored with signage disclosing that the logs are owned by Astoria Forest Products.  WLH will not hold itself out as having an ownership interest in Astoria Forest Products' logs.

5.     Astoria Forest Products will pay WLH $107 mbf ("MBF Payment") within ten (10) business days of receipt of the logs by WLH for its services hereunder.  In addition, Astoria Forest Products will pay WLH 30% of the net profits, if any, calculated on a fully allocated tax basis, that are realized by Astoria Forest Products upon sale of the logs within ten (10) days of receipt of payment by Astoria Forest Products ("Percentage Payment").  In determining the Percentage Payment any profits of WLH, Guarantors, and Astoria Forest Products shall be included.  The purchase and sale prices for the logs shall be determined at the sole discretion of Astoria Forest Products.  Astoria Forest Products shall have no duty to WLH to obtain lower purchase prices or higher sale prices for the benefit of WLH.  Without limiting other costs that may be deducted in determining the purchase price, letter of credit costs and financing costs will all be expenses to be offset against the Net profit shall be determined by Astoria Forest Product using generally-accepted accounting principles, consistent with its normal practices.  Log profits shall be accounted for based on the actual cost and sale price of the logs.  In the event of a dispute over the calculation of profits hereunder, the parties agree that the matter shall be determined by an accountant selected by Astoria Forest Products and WLH.  If they cannot agree on an accountant, the parties will select a third accountant whose determination shall be binding on the parties.

6.     WLH waives any rights to possessory or nonpossessory liens on the logs, including any right to a landlord's lien, chattel lien under ORS 87.216 or any similar statute or at common law, stevedore's lien, logger's lien under ORS 87.222, or the any other statutory or common law lien that might be available or claimed to be available.  WLH will not suffer any liens to be filed against Astoria Forest Products logs by others and will indemnify and hold Astoria Forest Products harmless from any such liens or encumbrances.

7.     The parities recognize that WLH is in a unique position to provide access to the Port of Astoria facilities and, accordingly WLH and Guarantors agree that they will not terminate this Agreement and the rights that inure to Astoria Forest Products hereunder in any event except a nonpayment of amounts due hereunder to WLH where

Page 2 of 6 - CONTRACT

such nonpayment is material in amount and continues for a period of 60 days after written notice of such nonpayment delivered to Astoria Forest Products by certified mail at its offices and by email to each of the last known addresses of the principles and principal office of Astoria Forest Products. In the event there is a dispute about amounts claimed due to WLH for its services hereunder, Astoria Forest Products will not be in default if it is seeking a determination of the amounts due, if any, under Paragraph 5, above until there has been a final, binding determination and any payments found to be due have not been paid within 30 days of such final, binding determination. This Agreement will continue until terminated by Astoria Forest Products. Upon termination, Astoria Forest Products shall have all of the rights it would have if their was a default of this Agreement by WLH, including the rights provided in Paragraph 11, below. The MBF Payment may be adjusted by the parties quarterly in an amount equal to any increase in WLH's actual cost of processing or storing the Astoria Forest Products logs. In order to establish a right to such an increase, WLH will provide Astoria Forest Products with records, information and other support reasonable requested by Astoria Forest Products. Any dispute about whether WLH is entitled to an increase will be resolved in the manner provided in Paragraph 5, above.

8.      Guarantors shall guaranty full performance of each and every obligation of WLH hereunder. WLH and Guarantors each agree to indemnify and hold harmless Astoria Forest Products and its affiliates, managers, members and owners of the foregoing, of and from any and all claims, liabilities and damages, including reasonable attorneys fees, as a result of this agreement. In addition to all warranties that are implied at law, WLH and Guarantors represent and warrant to Astoria Forest Products that: (i) WLH has the power and authority to enter into this Agreement; (ii) the terms, conditions, undertakings and promises contained herein will not cause WLH or Guarantors to be in breach of any other agreement, promise, lease, mortgage, instrument, judgment, decree or undertaking each is subject to; (iii) WLH is now and shall remain during the term hereof a limited liability company in good standing under the laws of the State of Washington qualified to do business under the laws of the State of Oregon; (iv) WLH shall pay all taxes , assessments, and other charges imposed by any governmental authority promptly when due; and, (v) WLH will comply with all laws and regulations governing its operations and will not permit the discharge of any hazardous material and will promptly report and remediate any environmentally hazardous condition existing on property on which it operates or occurring as a result of its operations.

9.      This Agreement shall be governed by the laws of the State of Oregon and the Circuit Court for the County of Clatsop, State of Oregon, shall have exclusive jurisdiction to resolve any dispute arising hereunder or relating in any way to this Agreement.

10.     It is not the intent of the parties to create a partnership or joint venture hereunder and no party to this Agreement shall contend to the contrary. No party shall hold himself or itself out to any person as the agent of the other with authority to bind the other.

11.     Astoria Forest Products shall have the right to the immediate possession of logs delivered to WLH hereunder.  Astoria Forest Products may file a UCC Financing statement and take other steps to put third parties on notice of its ownership interest in the logs delivered to WLH for Astoria Forest Products' account and WLH and Guarantors will reasonably cooperate in any such efforts.  WLH and Guarantors will use their best efforts to have Astoria Forest Products added as an additional lessee with rights to continue the leases in the event of a default by WLH on any leases it has with the Port of Astoria, on terms reasonably acceptable to Astoria Forest Products.

12.     In the event Astoria Forest Products, at its sole and absolute discretion, deems itself insecure; or in the event of any default by WLH under this agreement; or in the event that guarantors are not in control of WLH; Astoria Forest products shall available to it all remedies provided for hereunder, or at law and in equity, including without limiting the generality of  the foregoing: (i) the right to immediately access and secure its logs; (ii) the right to enter upon WLH's premises, even if locked; (iii) the right to seize logs owned by Astoria Forest Products; (iv) if not identifiable, the right to seize a quantity of logs of generally the same type and quantity as the Astoria Forest Products logs that were in WLH's custody; and (v) the right to use WLH equipment and employees to process, handle and transport Astoria Forest Products logs or substitute logs.  WLH and Guarantors will cooperate with Astoria Forest Products rights hereunder, will not hinder the free exercise of those rights, will not seek judicial relief to interfere with or prevent Astoria Forest Products from enforcing its rights hereunder and hereby grants Astoria Forest Products a license to enter upon its premises, use its equipment and employees, and remove its logs.

13.     The parties hereto may amend, modify and supplement this Agreement in such manner as may be agreed upon by them in writing.

14.     Each party to this Agreement shall pay all of the expenses incurred by it in connection with this Agreement, including without limitation its legal and accounting fees and expenses, and the commission, fees and expenses of any person employed or retained by it to bring about, or to represent it in, the transactions contemplated hereby.

15.     This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, except that WHL may not assign its rights or delegate its duties hereunder without the prior written consent of Astoria Forest Products.

16.     This agreement contains the entire agreement of the parties hereto with respect to the Astoria Forest Products logs that WHL will receive, process, store and transport for Astoria Forest Products and supersedes all prior understandings and agreements of the parties with respect to the subject matter hereof. In the event of any inconsistency between this Agreement and any purchase order, confirmation or similar document or instrument of WHL, any WHL-Designated Purchaser, Authorized Recipient, or Astoria Forest Products, this Agreement shall govern.

17.    This Agreement may be executed in any number of counterparts, each of which shall be deemed an original.

18.    Any notice, request, information or other document to be given hereunder shall be in writing.  Any notice, request, information or the document shall be deemed duly given three business days after it is sent by registered or certified mail, postage prepaid, to the intended recipient, addressed as follows:

If to WHL, addressed to such party at the following address:

Westerlund Log Handlers, LLC
#10 Pier 1, Suite 301
Astoria, OR  97103

If to Astoria Forest Products, addressed as follows:

Murphy Overseas USA Astoria Forest Products, LLC
5319 SW Westgate Drive, Suite 211
Portland, OR  97221

with a copy to:

Michael J. Esler, Esq.
Esler, Stephens & Buckley, LLP
888 SW 5th Avenue, Suite 700
Portland, OR 97204-1510

Any party may send any notice, request, information or other document to be given hereunder using any other means (including personal delivery, courier, messenger service, fax or ordinary mail), but no such notice, request, information or other document shall be deemed duly given unless and until it is actually received by the party for whom it is intended.  Any party may change the address to which notices hereunder are to be sent to it by giving written notice of such change of address in the manner herein provided for giving notice.

19.    In the event of a breach or threatened breach of any of the provisions above in this Agreement, the parties acknowledge and agree that the non-breaching party will not have an adequate remedy at law and therefore will be entitled to enforce any such provision by temporary or permanent injunctive or mandatory relief as a remedy for any such breach, and that such remedy shall not be deemed to be the exclusive remedy for any such breach but shall be in addition to all other remedies, subject, however, to the provisions of hereof.

20.    In no event shall either party hereto seek, or be liable to the other party hereto for, speculative, exemplary or punitive damages.

Page 5 of 6 - CONTRACT

21.     No press release or other public or trade announcement or statement related to this Agreement or the transactions contemplated hereby (or the existence of any discussions or negotiations between the parties regarding any other possible transactions) will be issued, and no disclosure of this Agreement or the terms hereof will made, by either party hereto without the prior approval of the other party hereto.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the day and year first above written.

WESTERLUND LOG HANDLERS, LLC,
a Washington limited liability company

By: _David Westerlund_
Its: _CEO_
Dated: _1-13-14_

GUARANTORS

_David Westerlund_
David Westerlund

_[signature]_
Roger Nance

MURPHY OVERSEAS USA ASTORIA FOREST PRODUCTS, LLC,
an Oregon limited liability company

By: _[signature]_
Its: _President_
Dated: _1·13·14_

K:\Barbara\Murphy\Contract Westerlund draft 1-8-14.doc

EXHIBIT F
Page 6 of 6



**MILLER NASH** LLP
ATTORNEYS AT LAW

PORTLAND, OREGON
SEATTLE, WASHINGTON
VANCOUVER, WASHINGTON
CENTRAL OREGON
WWW.MILLERNASH.COM

3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon 97204-3699
OFFICE 503.224.5858
FAX 503.224.0155

**Brian W. Esler, P.C.**
brian.esler@millernash.com
(206) 777-7415 direct line

February 5, 2014

**VIA FIRST CLASS AND
REGISTERED MAIL**

Murphy Overseas USA Astoria Forest Products, LLC
5319 S.W. Westgate Drive, Suite 211
Portland, Oregon  97221

Attention:    Accounts Payable Department

Subject:    Notice to Pay Over All Accounts Payable of Westerlund Log Handlers, LLC

Dear Sir or Madam:

We represent China National Building Materials Import and Export Corporation ("CBMIE"), who is the secured creditor of Westerlund Log Handlers, LLC ("Westerlund").  Westerlund granted CBMIE a security interest in all of Westerlund's accounts.  Westerlund defaulted in its obligations to CBMIE and CBMIE is exercising its rights and remedies.

One of CBMIE's remedies is to require, under the applicable provisions of the Uniform Commercial Code, that payment on all of Westerlund's accounts be made to CBMIE or its designee.

You have a contract with Westerlund, pursuant to which you are obligated to make certain payments to Westerlund.  We hereby notify you to begin immediately sending all further payments due or owing on your accounts with Westerlund directly to CBMIE through its designee.  Such payments should be made by check payable to "CNBM Forest Products Canada, Ltd." and sent to:

CNBM Forest Products Canada, Ltd.
c/o Victor Tsao
Farris, Vaughan, Wills & Murphy LLP
25th Floor, 700 West Georgia Street
Vancouver, British Columbia, Canada  V7Y 1B3

PDXDOCS:2026227.1

**EXHIBIT G
Page 1 of 2**



PORTLAND, OREGON
SEATTLE, WASHINGTON
VANCOUVER, WASHINGTON
CENTRAL OREGON
WWW.MILLERNASH.COM

Murphy Overseas USA Astoria Forest Products, LLC
February 5, 2014
Page 2

       Please be advised that if you do not make your payments in the foregoing manner, and make any payment on the above account to any party other than CBMIE or its designee, you will remain liable to CBMIE for any such payments.  Should you have any questions regarding a payment or this account, please contact the undersigned.

                     Very truly yours,

                     Brian W. Esler

cc:    Mr. Mike Esler (via e-mail and first class mail)
        Mr. Gordon Carey (via e-mail and first class mail)

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| MURPHY OVERSEAS USA ASTORIA FOREST PRODUCTS, LLC, | CHINA NATIONAL BUILDING MATERIALS IMPORT AND EXPORT CORPORATION, WESTERLUND LOG HANDLERS, LLC, et al., |

**(b)** County of Residence of First Listed Plaintiff    Multnomah
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    China
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Michael J. Esler, Esler, Stephens & Buckley, LLP, (503) 223-1510
888 S.W. Fifth Avenue, Suite 700, Portland, OR 97204-2021

Attorneys *(If Known)*    (SEE ATTACHED)
Thomas C. Sand
Miller Nash LLP, 111 S.W. Fifth Avenue, Suite 3400
Portland, Oregon  97204, (503) 224-5858

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government Plaintiff

☐ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 2   U.S. Government Defendant

☒ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*     *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product |    Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument |    Liability | ☐ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & |    Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
|    & Enforcement of Judgment |    Slander |    Personal Injury | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' |    Product Liability | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted |    Liability | ☐ 368 Asbestos Personal | | ☐ 840 Trademark |    Corrupt Organizations |
|    Student Loans | ☐ 340 Marine |    Injury Product | | | ☐ 480 Consumer Credit |
|    (Excludes Veterans) | ☐ 345 Marine Product |    Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment |    Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
|    of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud |    Act | ☐ 862 Black Lung (923) |    Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☒ 190 Other Contract |    Product Liability | ☐ 380 Other Personal |    Relations | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal |    Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 196 Franchise |    Injury | ☐ 385 Property Damage | ☐ 751 Family and Medical | | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury - |    Product Liability |    Leave Act | |    Act |
| |    Medical Malpractice | | ☐ 790 Other Labor Litigation | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** |    Income Security Act | ☐ 870 Taxes (U.S. Plaintiff |    Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | |    or Defendant) |    Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ |    Sentence | |    26 USC 7609 |    State Statutes |
| ☐ 245 Tort Product Liability |    Accommodations | ☐ 530 General | | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| |    Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| |    Other | ☐ 550 Civil Rights |    Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | |    Conditions of | | | |
| | |    Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1   Original Proceeding    ☒ 2   Removed from State Court    ☐ 3   Remanded from Appellate Court    ☐ 4   Reinstated or Reopened    ☐ 5   Transferred from Another District *(specify)*    ☐ 6   Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC §§ 1332

Brief description of cause:
Declaratory Relief

| VII. REQUESTED IN COMPLAINT: | ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P. | DEMAND $ 1,000,000.00 | CHECK YES only if demanded in complaint: JURY DEMAND: ☒ Yes ☐ No |
|---|---|---|---|

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE
05/05/2014

SIGNATURE OF ATTORNEY OF RECORD
Thomas C. Sand, Attorney for Defendant China National Building Materials Import and Export Corporation

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

CIVIL COVER SHEET – Attachment

I.    **(a) DEFENDANTS**

Attorneys for Defendant China National Building Materials Import and Export Corporation:

Thomas C. Sand, OSB No. 773322
Elisa J. Dozono, OSB No. 063150
Brian W. Esler (*Pro Hac Vice application to be submitted*)
Miller Nash LLP
111 S.W. Fifth Avenue, Suite 3400
Portland, OR 97204
Telephone: (503) 224-5858

Attorney for Defendants Westerlund Log Handlers, LLC, David Westerlund, and Roger Nance:

Gordon T. Carey, Jr., OSB No. 771331
1020 S.W. Taylor Street, Suite 375
Portland, OR 97205
Telephone: (503) 222-1415

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF CLATSOP

| | |
|---|---|
| WESTERLUND LOG HANDLERS, LLC, a Washington limited liability company, DAVID WESTERLUND, an individual, and ROGER NANCE, an individual, | Case No. 14 CV 00618 |
| Plaintiffs, | **COMPLAINT** |
| | **Action for Breach of Contract, Reformation, Rescission, Declaratory Relief, Tortious Interference, Business Libel and Misappropriation** |
| v. | |
| CHINA NATIONAL BUILDING MATERIALS IMPORT AND EXPORT CORPORATION, a foreign corporation, CNBM FOREST PRODUCTS CANADA, LTD, a foreign entity, and ALAN K. BRUNSTAD, an individual, | **DEMAND FOR JURY TRIAL** |
| | **(Not Subject to Mandatory Arbitration)** |
| Defendants. | |

## FIRST CLAIM FOR RELIEF

### (Breach of Contract)

**1.**

Plaintiff WESTERLUND LOG HANDLERS, LLC (hereinafter "WLH") is a Washington limited liability company, authorized to do, and regularly doing business, in Clatsop County, Oregon. Plaintiff WLH is in the business of transporting, preparing, handling and loading logs for export from ports of the United States, including the Port of Astoria.

**2.**

Plaintiff DAVID WESTERLUND is an individual, and is the managing

PAGE 1 - COMPLAINT

**GORDON T. CAREY, JR., P.C.**
1020 SW Taylor Street, Suite 375, Portland Oregon 97205
(503) 222-1415 ** Fax (503) 222-1923

**FP: Exhibit 507**

Exhibit 1
Page 1 of 10

CBMIE00065639

1  member of WLH. Plaintiff ROGER NANCE is an individual, and a member of WLH.
2  Plaintiff Westerlund and plaintiff Nance are indemnitors under the prepay agreement
3  referred to herein.

**3.**

5  Defendant CHINA NATIONAL BUILDING MATERIALS IMPORT AND
6  EXPORT CORPORATION is a foreign corporation organized under the laws of the
7  People's Republic of China, regularly doing business in Clatsop County, Oregon.
8  Defendant CNBM FOREST PRODUCTS CANADA, Ltd., is a foreign corporation
9  organized under the laws of Canada, regularly doing business in Clatsop County,
10  Oregon.  Unless separately stated, the foregoing shall be referred to as "CNBM".
11  CNBM is in the business of purchasing and shipping logs from the United States and
12  Canada to customers in China and other countries.  The claims alleged herein arise
13  from the parties' business activities in Clatsop County.

**4.**

15  Defendant ALAN K. BRUNSTAD is an individual residing in Thurston
16  County, Washington. Defendant Brunstad was employed by plaintiff WLH, but is
17  now working for CNBM. The claims against defendant Brunstad arise, at least in
18  part, from his activities in Clatsop County, Oregon.

**5.**

20  In 2012, plaintiffs and defendant CNBM entered into negotiations to conduct
21  an enterprise whereby defendant CNBM would purchase logs in the United States and
22  Canada, and plaintiff WLH would transport the logs purchased by CNBM, prepare
23  and debarking same, and load the logs aboard ships for transportation overseas for
24  rates ranging from $143.00 to $162.00 per 1,000 board feet.  In addition, defendant
25  CNBM agreed, for valuable consideration, *inter alia*,  to extend a prepayment of
26

PAGE 2 - COMPLAINT

**GORDON T. CAREY, JR., P.C.**
*1020 SW Taylor Street, Suite 375, Portland, Oregon 97205*
*(503) 222-1415 ** Fax (503) 222-1923*

Exhibit 1
Page 2 of 10

$3,550,000, to enable WLH to acquire equipment to use in its operations, a part of
which was for the benefit of CNBM, and to credit plaintiffs $60,000 against said
prepayment per ship loaded. Defendant CNBM further agreed to share the profits of
the enterprise, and negotiate in good faith an operating agreement dividing the profits.

6.

Pursuant to the agreement of the parties, WLH shipped 18 loads of logs at the
direction of CNBM in 2012 and 2013 from the Port of Astoria, Clatsop County, and
have stockpiled an additional approximate 4.5 million board feed of logs in Clatsop
County, Oregon.

7.

Plaintiffs have performed or are prepared to perform all conditions precedent
on their part to be performed.

8.

Defendant CNBM has breached the agreement in that:

(a)    Defendant CNBM failed to credit plaintiffs with $60,000 per ship, or
$1,080,000 and, instead, required WLH to pay $751,000, all to plaintiffs' damage;

(b)    Failed to negotiate in good faith an operating agreement, and failed to
pay WLH its share of the profits of the enterprise.

9.

As a result, plaintiffs have been damaged in the amount of a credit for
$1,080,000, $751,000 improperly paid, their share of the profits in an amount to be
proven at trial, and such other damages for breach as proved at trial.

## SECOND CLAIM FOR RELIEF

### (Reformation)

PAGE 3 - COMPLAINT

**GORDON T. CAREY, JR., P.C.**
*1020 SW Taylor Street, Suite 375, Portland, Oregon 97205*
*(503) 222-1415 ** Fax (503) 222-1923*

Exhibit 1
Page 3 of 10

CBMIE00065641

**10.**

Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 9.

**11.**

Plaintiffs and defendant CNBM, through mutual mistake, or through plaintiffs' unilateral mistake and inequitable conduct on the part of defendant CNBM, entered into a signed prepayment agreement in August, 2012 which did not clearly express that defendant CNBM would credit plaintiffs as was intended.  The mistake did not occur as the result of the gross negligence of plaintiffs.

**12.**

This court should reform the agreement to reflect that plaintiffs are entitled to a $60,000 credit for each shipment of logs, against the prepayment of $3,550,000.

**13.**

Plaintiff has no plain, speedy or adequate remedy at law.

**THIRD CLAIM FOR RELIEF**

**(Rescission)**

**14.**

Plaintiffs reallege and incorporates by reference the allegations of paragraphs 1-9 and 11-13 above.

**15.**

In or about August, 2012, the parties entered into a security agreement and membership pledge agreement whereby plaintiffs granted a security interest in assets of WLH and their membership interest. The parties further entered into an option to purchase agreement whereby plaintiffs granted defendant CNBM the option to

PAGE 4 - COMPLAINT

*GORDON T. CAREY, JR., P.C.*
1020 SW Taylor Street, Suite 375, Portland, Oregon 97205
(503) 222-1415 ** Fax (503) 222-1923

Exhibit 1
Page 4 of 10

Not Confidential                                     CBMIE00065642

1   purchase a 50% interest in plaintiff WLH.

2   **16.**

3   In entering into said security, pledge and option agreements, plaintiffs relied
4   on, and had the right to rely on, the representations of defendants, and specifically
5   the representations that defendant CNMB would negotiate in good faith and enter into
6   an operating agreement whereby the parties would share the profits of the enterprise,
7   and plaintiffs would receive the credit promised against the prepayment. Plaintiffs
8   believed defendant CNBM's representations to be true, relied thereon and executed
9   the agreements in reliance thereon. Defendant CNBM's representations were a
10  material inducement to plaintiffs, and plaintiffs would not have entered into the
11  agreements in absence of those representations.

12  **17.**

13  Defendant CNBM's representations were at the time made false and untrue,
14  or were made with reckless disregard for whether they were true or false, in that
15  defendant CNBM did not have the authority to enter into an operating agreement
16  sharing the profits, and did not intend to do so. At the time defendant CNBM made
17  the representations, defendant CNBM knew or should have known the representations
18  were false, or made the representations recklessly without regard for whether the
19  representations were true or false.

20  **18.**

21  As a result, plaintiffs hereby elect to rescind the security, pledge and option
22  agreements.

23  **19.**

24  Plaintiffs have no adequate or efficient remedy at law.

25

26

PAGE 5 - COMPLAINT

*GORDON T. CAREY, JR., P.C.*
1020 SW Taylor Street, Suite 375, Portland, Oregon 97205
(503) 222-1415 ** Fax (503) 222-1923

Exhibit 1
Page 5 of 10

Not Confidential

CBMIE00065643

## FOURTH CLAIM FOR RELIEF

### (Declaratory Relief)

**20.**

Plaintiffs reallege and incorporates by reference the allegations of paragraphs 1-9, 11-13, and 15-19 above.

**21.**

There is an actual controversy between plaintiffs and defendant CNBM about the terms and performance of the agreements between parties.

**22.**

Plaintiffs contend that they are entitled to a credit for every ship loaded of $60,000, and defendant CNBM denies same.

**23.**

Plaintiffs further contend that the agreement should be reformed to provide for such credits, and that plaintiff should be repaid $751,000. Defendant CNBM denies same.

**24.**

Finally, plaintiffs contend that the security agreement, membership pledge agreement and option to purchase agreement are void, and defendant CNBM denies same.

## FIFTH CLAIM FOR RELIEF

### (Accounting)

**25.**

Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1-9, 11-13, 15-19 and 21-24 above.

PAGE 6 - COMPLAINT

**GORDON T. CAREY, JR., P.C.**
1020 SW Taylor Street, Suite 375, Portland, Oregon 97205
(503) 222-1415 ** Fax (503) 222-1923

Exhibit 1
Page 6 of 10

Not Confidential

CBMIE00065644

**26.**

Plaintiffs and defendant CNBM formed a joint venture for purposes of the enterprise.

**27.**

Plaintiffs and defendant CNBM do not have a written joint venture agreement. Because the partnership's principal place of business is in Oregon, Oregon partnership law and ORS Chapter 67 govern their joint venture.

**28.**

Under the terms of their joint venture agreement, plaintiffs conducted the operations of transporting, preparing and loading logs purchased by defendant CNBM, and defendant CNBM purchased the logs and arranged for resale. The parties agreed to divide any profits made by the venture and to account to each other for all costs of the venture.

**29.**

Defendant CNBM has breached its duties, including its fiduciary duties, to the partnership and plaintiffs by, among other things, failing to provide plaintiffs with accounts of the income and expenses of the partnership.

**30.**

Pursuant to ORS Chapter 67, plaintiffs demand an accounting from defendant CNBM for all profits earned during the course of the enterprise, including all benefits received from partnership opportunities.

**31.**

Plaintiffs seek an order from the court compelling defendant CNBM to account to plaintiffs concerning the enterprise, and upon completion of the accounting, to pay to plaintiffs their share of the profits, and damages as a result of diversion of

PAGE 7 - COMPLAINT

*GORDON T. CAREY, JR., P.C.*
*1020 SW Taylor Street, Suite 375, Portland, Oregon 97205*
*(503) 222-1415 ** Fax (503) 222-1923*

Exhibit 1
Page 7 of 10

Not Confidential

1   partnership opportunities.

2

3                           **SIXTH CLAIM FOR RELIEF**

4                              **(Tortious Interference)**

5                                       **32.**

6        Plaintiffs reallege and incorporate by reference the allegations of paragraphs

7   1-9, 11-13, 15-19, 21-24 and 26-31 above.

8                                       33.

9        At all material times, plaintiffs were engaged in business relationships with

10  customers, vendors and others, which relationships would continue indefinitely in the

11  future.

12                                      34.

13       Defendants CNBM and Brunstad interfered with plaintiffs' existing business

14  relationships and prospective advantage through improper means by, *inter alia*,

15  disparaging plaintiffs, spreading malicious misinformation, and threatening litigation.

16  As a result, defendants caused plaintiffs' performance of their duties to be so onerous

17  and difficult that defendants frustrated plaintiffs' performance thereof and have

18  caused customers, vendors and others to cease doing business with plaintiffs.   In

19  addition, defendants CNBM and Brunstad owed duties of loyalty to plaintiffs and

20  violated those duties.

21                                      35.

22       Defendants  interfered with plaintiffs for an improper purpose in that, *inter*

23  *alia*, defendants intended to prevent plaintiffs from continuing in business, and

24  further intended to appropriate plaintiffs' equipment, operations, customers and

25  opportunities for themselves.

26

PAGE 8 - COMPLAINT

*GORDON T. CAREY, JR., P.C.*
1020 SW Taylor Street, Suite 375, Portland Oregon 97205
(503) 222-1415 ↔ Fax (503) 222-1923

Exhibit 1
Page 8 of 10

Not Confidential                                                          CBMIE00065646

**36.**

As a result, plaintiffs have been damaged in the amount of lost past and future profits, the value of their operations, and the value of future opportunities, all in an amount to be proved at trial, but not less than $30,000,000.

37.

Defendants' acts amount to a particularly aggravated disregard of the rights of plaintiffs and society. Following discovery, plaintiffs may seek leave of the court to amend the complaint to seek punitive damages in an amount of not less than $5,000,000.

WHEREFORE, plaintiffs pray for relief as follows:

1.  For an accounting and payment of profits and other amounts due;

2.  For reformation of the written prepayment agreement to reflect that plaintiffs were entitled to a credit of $60,000 per ship;

3.  For rescission of the security, pledge and option agreements;

4.  For damages for breach in the amount of $1,831,000 and additional amounts to be proved at trial;

5.  For damages for lost profits, the value of plaintiffs' operations and opportunities in an amount to be proved at trial, but not less than $30,000,000;

6.  For costs and disbursements incurred herein;

PAGE 9 - COMPLAINT

***GORDON T. CAREY, JR., P.C.***
1020 SW Taylor Street, Suite 375, Portland, Oregon 97205
(503) 222-1415 ** Fax (503) 222-1923

Not Confidential

Exhibit 1
Page 9 of 10
CBMIE00065647

7.   For pre-judgment and post-judgment interest; and

8.   For such other and further relief as the court may deem just and
equitable.

DATED this 31st day of January, 2014.

GORDON T. CAREY, JR., P.C.

_____
Gordon T. Carey, Jr., OSB No. 77133
Attorney for Plaintiffs

PAGE 10 - COMPLAINT

**GORDON T. CAREY, JR., P.C.**
1020 SW Taylor Street, Suite 375, Portland, Oregon 97205
(503) 222-1415 ** Fax (503) 222-1923

Exhibit 1
Page 10 of 10

Not Confidential

CBMIE00065648