**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL NO. 2047 SECTION: L JUDGE FALLON MAG. JUDGE WILKINSON** |
| **THIS DOCUMENT RELATES TO:** | |
| *Gross v. Knauf Gips KG, 2:09-cv-6690* *Amorin v. Taishan Gypsum, 2:11-cv-1672* *Amorin v. Taishan Gypsum, 2:11-cv-1395* *Amorin v. Taishan Gypsum, 2:11-cv-1673* *Amorin v. SASAC, 2:14-cv-1727* *State of Louisiana v. Knauf, 2:10-cv-340* *Abner v. Taishan Gypsum, 2:11-cv-3094* *Posey v. BNBM Co., 2:09-cv-6531* *Morris v. BNBM Co., 2:09-cv-6530* | |

**SUPPLEMENTAL RESPONSE OF THE PLAINTIFFS' STEERING
COMMITTEE TO CNBM GROUP'S MOTION TO DISMISS ON
GROUNDS OF THE FOREIGN SOVEREIGN IMMUNITIES ACT**

Russ M. Herman
Leonard A. Davis
Stephen J. Herman
Madelyn O. Breerwood
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com
*Plaintiffs' Liaison Counsel*
*MDL 2047*

Arnold Levin
Fred S. Longer
Sandra L. Duggan
Matthew C. Gaughan
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street
Suite 500
Philadelphia, PA  19106
Phone:  (215) 592-1500
Fax:  (215) 592-4663
ALevin@lfsblaw.com
*Plaintiffs' Lead Counsel*
*MDL 2047*

(Additional Counsel on Signature Page)

## TABLE OF CONTENTS

TABLE OF SUPPLEMENTAL EXHIBITS ............................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

I.   INTRODUCTION ....................................................................................................... 4

II.  SUPPLEMENTAL EVIDENCE DEMONSTRATING THAT CNBM GROUP IS NOT
     ENTITLED TO IMMUNITY FROM SUIT IN THESE PROCEEDINGS............................. 5

     A.  CNBM Group Controls the Operations of Its Subsidiaries and It
         Controls Taishan's Manufacturing of Drywall ....................................... 5

     B.  CNBM Group Has Exercised its Control Over Taishan and the
         Other CNBM and BNBM Defendants from the Outset, Even
         Before the Establishment of the MDL ................................................. 10

     C.  CNBM Group Took Charge of the Response to the Litigation and
         Controlled the Hiring of Counsel for All of the CNBM/BNBM/
         Taishan Defendants ............................................................................ 14

III. DEFENDANTS' TACTICS HAVE SEVERELY PREJUDICED THE
     PLAINTIFFS ........................................................................................................ 19

IV.  CONCLUSION....................................................................................................... 24

## INDEX OF SUPPLEMENTAL EXHIBITS

**FSIA EX.**
**NUMBER**             **DESCRIPTION**

136                    Emails from Andrew K. Davidson, Esq. of Orrick dated 11/25/2015
                       regarding document productions by CNBM and CNBM Group

137                    Updated Chart of CNBM Group Document Productions *Before* and *After*
                       30(b)(6) Deposition

138                    Updated Chart of CNBM Document Productions *Before* and *After*
                       30(b)(6) Deposition

139                    Chart of Taishan Document Productions *Before* and *After* CNBM-BNBM
                       30(b)(6) Depositions

140                    Updated Chart of Taishan Document Productions *Before* and *After*
                       30(b)(6) Depositions

141                    Official Transcript of Evidentiary Hearing dated 11/17/2015 (SEALED)

142                    Memorandum re: "The Course of Events on Hiring Foreign Law Firms for
                       the Gypsum Board Litigation in the United States – Brief Version of the
                       Related Meetings" [BNBMPLC-E-0059965-66] (redacted pursuant to
                       Court Order at Rec. Doc. No. 19792) (previously identified as FSIA Ex.
                       83)

143                    Email from Anthony Irpino to Counsel for CNBM and CNBM Group
                       dated 11/25/2015 regarding Outstanding Discovery Issues

144                    Technical Code for Safety of Gypsum Plasterboard Enterprises:
                       Instructions for Preparation [CNBMGRP00071458-480] (PENG Exhibit
                       810-1)

145                    Email from BNBM PLC to Taishan Gypsum instructing over CNBM
                       Group's Comprehensive Risk Management Notice dated 4/5/2010 [TG-
                       0217959] (PENG Exhibit 815)

146                    2014 China National Building Materials Group Corporation Social
                       Responsibility Report

147      Email and attachment from PENG Wenlong to Manager XU [advertising executive] dated 11/14/2010 [TG-071054-56] (PENG Exhibits 809 & 809-1)

148      Deposition of PENG Wenlong dated 11/12-14/2015

149      Email chain between and among CNBM, BNBM, and Taishan re: "Notice on submitting the information of import and export business operation and countermeasures of the enterprises during the financial crisis" dated 11/3-5/2008 [TG-0218944-946] (PENG Exhibit 814)

150      Attachment to TG-0218944-946, "The Operation Situation and Relevant Suggestions on the Import and Export Business of Taishan Gypsum Company Limited" [TG-0218947-948] (PENG Exhibit 814-1)

151      "Informational Report on the Class Actions Brought by the U.S. Parties Against Taishan Gypsum Company Limited" dated 5/11/2009 [TG-0208428-30] (PENG Exhibit 825)

152      Email from PENG Wenlong [Taishan] to China Building Materials Academy dated 5/31/2009 [TG-0370699] (PENG Exhibit 817)

153      CNBM Group Corporation Meeting Minutes of the 5th Work Meeting of Managers of CNBMG Group dated 7/9/2010 [TG-00026029-39] (PENG Exhibit 822)

154      Attachment to TG-0370699: "Questions to the Enterprise(s)," Taishan's response to China Building Material Academy [TG-0370700] (PENG Exhibit 817-1)

155      Email from PENG Wenlong to ZHANG Jian dated 6/27/2010 [TG-0129674] (PENG Exhibit 801)

156      Attachment 1 to TG-0129674: "Statement on the Data and Statistics of Exports to the U.S. from 2005 to 2007" [TG-0129675-76] (PENG Exhibit 801-1)

157      Attachment 2 to TG-0129674: "Statistics of U.S. Gypsum Boards of Self-managed Export during 2005-2007" [TG-0129677] (PENG Exhibit 801-2)

158    Memorandum re: "The Course of Events on Hiring Foreign Law Firms for the Gypsum Board Litigation in the United States" [BNBMPLC-E-0059967-77] (redacted pursuant to Court Order at Rec. Doc. No. 19792) (previously identified as FSIA Ex. 85).

159    Email from ZHANG Jian to JIA Tongchun, CHEN Yu, and WANG Bing dated 6/3/2010 [TG-0374792] (PENG Exhibit 821)

160    Attachment to TG-0374792: "Informational Report on Seriously and Proactively Doing a Good Job in Responding to the Incident of 'Problematic Gypsum Boards Shipped to the United States'" (Opinion Soliciting Draft) [TG-0374793-801] (PENG Exhibit 821-1)

161    CNBM Group's "Informational Report on Seriously and Proactively Doing a Good Job in Responding to the Incident of 'Problematic Gypsum Boards Shipped to the United States,'" *addressed to* General Administration of Quality Supervision, dated 4/10/2011 [TG-0217757-62] (PENG Exhibit 820)

162    Email chain between and among PENG Wenlong, DONG Chungang, and ZHANG Jian dated 10/14/2014-11/3/2014 [TG-0369908-13] (PENG Exhibit 800)

163    Meeting Minutes of the Seminar on Deepening Reform, CNBM Group Board of Directors, dated 2/26/2014 [CNBMGRP00023355-75] (PENG Exhibit 816)

164    Offering Memorandum for 654,214,000 H Shares of CNBM Stock dated 3/16/2006 (MS-14) [MS001946-93]

165    Deposition of Morgan Stanley (Terence Keyes) dated 11/14/2015

166    Morgan Stanley Post-Mortem PowerPoint for CNBM dated 3/16/2006 [MS056130-38] (MS-17)

167    CNBM Co., Ltd. [2007] No. 22, Tenth President's Office Meeting [CNBMCO00102014-25] (Exhibit 351)

168    "Present the People, the Object, and the Mindset, Integrate Strictness with Reliability, and Change the Work Style" [CNBMCO00055606-611] (Exhibit 392)

## PRELIMINARY STATEMENT

In the latest chapter of Defendants' manipulative hardball litigation tactics, CNBM and CNBM Group served the PSC with 6,851 new documents, totaling 48,852 pages, in the wee hours of the morning on November 25, 2015, beginning at 4:24 a.m.[1]  These productions were dumped on the PSC just five calendar days before the instant Supplemental Response to CNBM Group's FSIA Motion was due and, conveniently, these productions were made four weeks after the PSC's response to the FSIA Motion was filed on October 29, 2015.  In customary fashion, Defendants produced thousands of additional documents in Chinese, with machine translations only, leaving no time for human translations to be prepared.  The documents were grouped in ten separate load files and production folders.  Nine of these folders have file creation dates ranging from September 10 – October 15, 2015,[2] which is before the PSC's response to the FSIA Motion was submitted, and well before the documents were actually produced on November 25th.  This cannot be a coincidence and suggests that Defendants strategically held onto these documents to the prejudice of the Plaintiffs.

This planned course of action by Defendants – producing tens of thousands and in many cases hundreds of thousands of pages of documents after key depositions have been taken and after dispositive briefing has been submitted to the Court – is far too familiar an occurrence in this case.[3]  And, yet, CNBM Group makes light of the PSC's contention that Plaintiffs

---

[1] *See* Emails from Andrew K. Davidson, Esq. of Orrick dated 11/25/2015, regarding document productions by CNBM and CNBM Group (attached hereto collectively as FSIA Ex. "136").

[2] *See* Supplemental Affidavit of Russ M. Herman dated 11/30/2015, filed herewith, at ¶ 3.

[3] *See* Updated Chart of CNBM Group Document Productions *Before* and *After* 30(b)(6) Deposition (showing 381,230 pages, or 96.49%, produced *after* the deposition of ZHOU Guoping) (attached hereto as FSIA Ex. "137"); Updated Chart of CNBM Document Productions

"somehow" have been prejudiced by these late productions and that additional corporate

depositions are warranted.[4]  This Defendant goes as far as to suggest that the unfortunate timing

of Defendants' productions "was a result of Plaintiffs' own making: CNBM Group agreed to

provide its corporate representative for deposition in New Orleans on the date specified in the

PSC's deposition notice."[5]  Such an outlandish argument is astonishing, given the Company's

latest document productions on the last business day prior to the Thanksgiving holiday, as well

---

*Before* and *After* 30(b)(6) Deposition (showing 259,148 pages, or 98.25%, produced *after* the
deposition of CHANG Zhangli) (attached hereto as FSIA Ex. "138"); Chart of Taishan
Document Productions *Before* and *After* CNBM-BNBM 30(b)(6) Depositions (showing 388,075
pages, or 85.11%, produced *after* the depositions of CNBM Group, CNBM, BNBM Group, and
BNBM) (attached hereto as FSIA Ex. "139").

██████████████████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████  *See* Updated Chart of Taishan Document Productions *Before* and *After*
30(b)(6) Depositions (showing 383,421 pages, or 89.18%, produced after the depositions of CHE
Gang and JIA Tongchun) (attached hereto as FSIA Ex. "140"); *see also* Official Transcript of
Evidentiary Hearing dated 11/17/2015 (SEALED) (attached hereto as FSIA Ex. "141") at 12-13.

Moreover, as the recently de-privileged summary memorandum regarding "The Course of
Events on Hiring Foreign Law Firms for the Gypsum Board Litigation in the United States"
reveals, the litigation strategy of all of the CNBM/BNBM/Taishan Defendants is controlled and
orchestrated by CNBM Group ("Chairman Song agreed that CNBM Group will organize the
response to the litigation.").  *See* Course of Events Summary Memo [BNBMPLC-E-0059965-66]
(previously identified as FSIA Ex. 83) at 3.  In accordance with the Court's recent ruling on
BNBM's Motion for Reconsideration of the decision on the PSC's Disclosure Motion [Rec. Doc.
No. 19792], a revised version of the Course of Events Summary Memo has been prepared by the
PSC (attached hereto as FSIA Ex. "142").

[4] *See* Reply in Support of CNBM Group's Motion to Dismiss for Lack of Subject Matter
Jurisdiction under the FSIA ("FSIA Reply") [Rec. Doc. No. 19798-2] at 34.

[5] *Id.*

as the fact that the Court had originally ordered that alter ego and contempt discovery should be concluded by April 28, 2015.[6]

CNBM Group's attempts at unfair surprise are not limited to calculated incomplete and staggered document productions.  In its Reply to the FSIA Motion CNBM Group has submitted new affidavits from the Company's current General Manager and CNBM President CAO Jianglin (attaching CNBM's Articles of Association not previously produced)[7] and an expert, Robin Hui Huang, Professor of Law at the Faculty of Law, Chinese University of Hong Kong (opining on Chinese corporate law and piercing the corporate veil).[8]  Plaintiffs have not had an opportunity to depose or otherwise challenge this expert nor provide any adverse opinion. Further, for the first time in its Reply to the FSIA Motion, CNBM Group is relying on the declarations of experts proffered by BNBM in its renewed motion to dismiss for lack of jurisdiction – Professor Jeffrey N. Gordon (opining on corporate governance in a 29-page declaration) and Mr. Bruce F. Deal (opining on common corporate structure in the United States in a 156-page declaration).[9]  However, as CNBM Group is aware, the PSC noticed the depositions of BNBM's experts for January 2016,[10] and they are now scheduled to occur on December 17, 2015 and January 15, 2016, respectively, to accommodate the witnesses'

---

[6] *See* Rec. Doc. No. 18493.

[7] Rec. Doc. No. 19798-3.

[8] Rec. Doc. No. 19798-5.

[9] *See* FSIA Reply at 29-30.

[10] Rec. Doc. Nos. 19749 (Notice of Deposition for Bruce F. Deal) & 19750 (Notice of Deposition for Jeffrey N. Gordon).

schedules.[11]  CNBM Group's reliance on these experts provides additional grounds for permitting the PSC an opportunity to supplement its opposition to the FSIA Motion and/or postponing adjudication of the FSIA Motion.

## I.    **INTRODUCTION**

The incomplete and late productions of documents by Defendants in this litigation have stymied not only the prosecution of Plaintiffs' claims in this MDL but also the PSC's efforts to oppose CNBM Group's FSIA Motion.  Notwithstanding CNBM Group's suggestion to the contrary, Plaintiffs did not cause this problem.  At or about the time that the PSC was finalizing its response to the FSIA Motion at the end of October 2015, Taishan produced hundreds of thousands of pages of previously undisclosed documents that Taishan found on Mr. PENG Wenlong's computers.[12]  These documents should have been produced years ago.  As it turns out, many of these materials would have eliminated or drastically cut short the years of Taishan/TTP personal jurisdiction litigation.  Moreover, these documents are critical to the issue of alter ego relationships between and among the CNBM Entities, the BNBM Entities, and Taishan.[13]

---

[11] Rec. Doc. Nos. 19801 (Amended Notice of Deposition for Jeffrey N. Gordon) & 19802 (Amended Notice of Deposition for Bruce F. Deal).

[12] *See* Updated Chart of Taishan Document Productions *Before* and *After* 30(b)(6) Depositions.

[13] Disputes over CNBM Group's productions and the productions of other Defendants is ongoing.  For example, the PSC is still seeking confirmation whether the files of ZHANG Jian, CNBM Group's Business Manager, who played a critical role in communicating with PENG Wenlong about Taishan's sales of drywall to the U.S., have been provided to Plaintiffs. Moreover, although CNBM Group has produced some resolutions and meeting minutes of its Board of Directors, many appear to be missing or not to have been produced for the period from January 1, 2005 to December 31, 2014.  *See* Email from Anthony Irpino to Counsel for CNBM and CNBM Group dated 11/25/2015 regarding Outstanding Discovery Issues (attached hereto as FSIA Ex. "143").

CNBM Group has criticized the Plaintiffs for "trying mightily to muster some connection between CNBM Group and the facts that gave rise to their claims," but only supporting their assertion that CNBM Group was "directly involved" in Taishan's sales of drywall to the United States "by just a single paragraph (and not a very long one), which relies on a single piece of evidence that doesn't even support the point."[14]  However, the recently produced documents from PENG's "missing" computers offer significant additional evidence in support of Plaintiffs' claims and the commercial activity and tortious conduct exceptions to the FSIA.  As shown below, these new documents have enabled the PSC to uncover other missing pieces to this complicated, interlocking puzzle.

## II.   SUPPLEMENTAL EVIDENCE DEMONSTRATING THAT CNBM GROUP IS NOT ENTITLED TO IMMUNITY FROM SUIT IN THESE PROCEEDINGS

### A.   CNBM Group Controls the Operations of Its Subsidiaries and It Controls Taishan's Manufacturing of Drywall

Despite averments to the contrary, CNBM Group has been and continues to be the ultimate controlling shareholder of CNBM and its subsidiaries, including BNBM and Taishan.[15]  In fact, Morgan Stanley, as the sponsor of the 2006 CNBM Global Public Offering,[16] confirmed

---

[14] FSIA Reply at 2.

[15] *See* Morgan Stanley Post-Mortem PowerPoint for CNBM dated 3/16/2006 [MS056130-38] (MS-17) (attached hereto as FSIA Ex. "166") at 2 (corporate structure); Deposition of Morgan Stanley (Terence Keyes) dated 11/14/2015 ("Keyes Dep.") (attached hereto as FSIA Ex. "165") at 250:10-254:14.

[16] Morgan Stanley received $1 million "to commend that company's contribution to the successful implementation of allotment of shares at lightning speed and for their longstanding support of CNBM."  *See* SONG Dep. at 67:6-13 (FSIA Ex. 25).

recently that these companies were marketed to investors "as one – one group."[17]   In other words, "CNBM was actually controlling its subsidiaries in a consolidated fashion."[18]   Accordingly, CNBM Group "Management focuses on ensuring strong integration across different business's segments by cultivating a unified corporate culture and establishing coordinated purchasing sales, logistics and other operational processes and procedures."[19]

The Group controls the manufacturing policies and procedures of Taishan Gypsum.[20]   There is no dispute that CNBM Group does not physically operate the gypsum production lines of Taishan.  However, there is clear indication that Taishan Gypsum Company conducts its operations pursuant to CNBM Group policies.  For example, CNBM Group has publicized that it "undertakes preparation of [the] 'Technical code for safety of gypsum plasterboard enterprises'" and it assigns BNBM with specific responsibility "for drafting of the code."[21]   CNBM Group's policies control the "safety technology of gypsum plasterboard production enterprises,"[22] and are mandatory in nature.[23]

---

[17] Keyes Dep. at 253:5-7.

[18] Keyes Dep. at 253:2-4.

[19] Keyes Deps. at 253:22-254:6.

[20] *See* Technical Code for Safety of Gypsum Plasterboard Enterprises: Instructions for Preparation [CNBMGRP00071458-480] (PENG Exhibit 810-1) (attached hereto as Exhibit "144").

[21] *Id*. at CNBMGRP00071460.

[22] *Id.* at CNBMGRP00071461.

[23] *Id.* at CNBMGRP00071479.

6

Moreover, CNBM Group regularly notifies its controlled subsidiaries of policy changes, implementations and/or requirements through the issuance of Notices sent to company executives _via_ email.  In addition, CNBM Group even posts certain related materials on the CNBM Group website.  In fact, the "Notice about the Year 2010 Comprehensive Risk Management Work Arrangement" was sent to Taishan Gypsum Company from BNBM PLC at the insistence of CNBM Group.[24]  Taishan was instructed to "prepare the Comprehensive Risk Management Report for Year 2010" and to download related materials from "the website of CNBM Group Corporation."[25]  As evidenced in FSIA Ex. 47 filed with the PSC's response to the FSIA Motion, Taishan Gypsum Company completed its Comprehensive Risk Management Report and submitted same to the Group Corporation.[26]

Although CNBM Group proclaims separateness from Taishan Gypsum for the purposes of defending this litigation, it has proclaimed the opposite in the real world of commerce, by effectively identifying itself with the very drywall manufacturing and distribution which give rise to Plaintiffs' claims.  In fact, CNBM Group proudly touts its global success in the building materials industry generally.  On its website and in its reports, CNBM Group boasts that "[a]s the leader in China's building materials industry, CNBM is the largest comprehensive building materials industry group in China.  It has been ranked first among the top 500 enterprises in the building materials industry for many years, 41st among the Top 500 Enterprises in China and

---

[24] _See_ Email from BNBM PLC to Taishan Gypsum instructing over CNBM Group's Comprehensive Risk Management Notice dated 4/5/2010 [TG-0217959] (PENG Exhibit 815) (attached hereto as FSIA Ex. "145").

[25] _Id._

[26] _See_ PSC's Response to FSIA Motion at 31 n.107.

270th among the Fortune Global 500."[27]  With respect to the manufacturing of drywall, the

Company claims that CNBM Group is the "Largest gypsum board producer in the world."[28]

Through its alter ego relationships with BNBM and Taishan, CNBM Group takes credit for the

volume of gypsum board produced by its controlled subsidiaries.

CNBM Group carefully tracks the progress of the subsidiary entities it controls.  In fact,

SONG Zhiping is known to attend CNBM President's meetings hosted by CAO Jianglin to

discuss business matters, such as the construction of investment projects.[29]  These discussions

include the gross profit rates of BNBM PLC and Taishan Gypsum, as well as guarantees and

loans to same.[30]

Further, CNBM Group participates and coordinates meetings that involve supervisory

teams and three tiers of review over Taishan Gypsum's management and operation. [31]  Seeming

to occur each year, CNBM Group sends leadership groups to Taishan in order to instruct,

---

[27] *See* 2014 China National Building Materials Group Corporation Social Responsibility Report
(attached hereto as FSIA Ex. "146") at 6 ("Up to the end of 2014, the total assets of the Group
amounted to RMB 406.9 billion and the total number of employees reached 176,854.  In 2014,
CNBM achieved revenue of RMB 250.4 billion with total profit of RMB 13.0 billion, whilst
taxes paid amounted to RMB 14.6 billion.").

[28] *Id.*; *see also id.* at 8 ("annual productivity of gypsum plasterboard exceeds 1.78 billion m$^2$,
ranking the first in the world.").

[29] *See* CNBM Co., Ltd. [2007] No. 22, Tenth President's Office Meeting [CNBMCO00102014-
25] (Exhibit 351) (attached hereto as FSIA Ex. "167").

[30] *Id.* at CNBMCO00102022-23.

[31] "Present the People, the Object, and the Mindset, Integrate Strictness with Reliability, and
Change the Work Style" [CNBMCO00055606-611] (Exhibit 392) (attached hereto as FSIA Ex.
"168").

supervise and identify management problems.[32]  Most notably, the meeting documents show that there are three tiers of supervisory teams that assess the activities of Taishan Gypsum, and that none of the three tiers include Taishan executives, employees, or directors.[33]  Yet again, CNBM Group is shown to pay close attention to the "supervision and instruction" over Taishan Gypsum.[34]

It is not surprising that in 2010, Taishan Gypsum, through the efforts of PENG Wenlong, redesigned Taishan Gypsum's logo to read, "China National Building Material Group Taishan Gypsum Company."[35]

In 2008, CNBM Group expressed concern over the economic environment and placed specific requests for information from Taishan related to its import and export business.[36]  CNBM Group sent a Notice to its subsidiaries via email requesting full information related to the import and export business of each.[37]  Pursuant to the request in the email, Taishan offered a response that outlined the influx of import and export percentages for the years 2006, 2007, and

---

[32] *Id.*

[33] *Id.*

[34] *Id.* at CNBMCO00055606.

[35] *See* Email and attachment from PENG Wenlong to Manager XU [advertising executive] dated 11/14/2010 [TG-071054-56] (PENG Exhibits 809 & 809-1) (attached hereto as FSIA Ex. "147"). *See also* Deposition of PENG Wenlong dated 11/12-14/2015 ("PENG Dep.") (attached hereto as FSIA Ex. "148") at 101:25-103:5.

[36] *See* Email chain between and among CNBM, BNBM, and Taishan re: "Notice on submitting the information of import and export business operation and countermeasures of the enterprises during the financial crisis" dated 11/3-5/2008 [TG-0218944-946] (PENG Exhibit 814) (attached hereto as FSIA Ex. "149").

[37] *Id.*

9

2008.[38]  Again, Taishan dutifully supplied import and export data to CNBM Group to satisfy a request from the controlling parent.

In order to refute Plaintiffs' claim that CNBM Group is the alter ego of Taishan and the other CNBM and BNBM Entities, the Company in its FSIA Reply mischaracterizes the PSC's argument regarding CNBM Group's control over Taishan.  CNBM Group contends that "Plaintiffs agree that making "'big picture' decisions" about another entity – including, *e.g.*, determining operational guidelines and development strategy, approving annual financial plans, and conducting audits does not constitute "day-to[-]day control.""[39]  This quote refers to the PSC's argument that CNBM Group is not a governmental entity, and it is taken out of context. The PSC maintains that the conglomerate corporate structure created by CNBM Group since 2006 – with the Parent Group Company constituting the controlling shareholder on top of all of its subsidiaries – includes CNBM Group's control over Taishan directly and through interlocking relationships with BNBM Group, CNBM, and BNBM.  The evidence presented is sufficient to make CNBM Group the alter ego of its subsidiaries.

**B.**  **CNBM Group Has Exercised its Control Over Taishan and the Other CNBM and BNBM Defendants from the Outset, Even Before the Establishment of the MDL**

CNBM Group has consistently asserted separateness from Taishan Gypsum's commercial activity, including, Taishan Gypsum's sale of drywall gypsum board to the United States.  However, from the outset, CNBM Group's long-time Chairman SONG Zhiping and its

---

[38] *See* Attachment to TG-0218944-946, "The Operation Situation and Relevant Suggestions on the Import and Export Business of Taishan Gypsum Company Limited" [TG-0218947-948] (PENG Exhibit 814-1) (attached hereto as FSIA Ex. "150").

[39] FSIA Reply at 27.

Director CAO Jianglin were consulted by Taishan Gypsum seeking instructions from its "leaders" on how to respond to this litigation.  On May 8, 2009, Taishan was served with process under the Hague Convention in the first of hundreds of U.S. lawsuits complaining of defects with Taishan's Chinese-manufactured drywall.[40]  Three days later, Taishan compiled for its leaders at CNBM Group an "Informational Report on the Class Actions Brought by the U.S. Parties Against Taishan Gypsum Company Limited."[41]  The report is dated May 11, 2009.  It was specifically addressed to Chief SONG and Chief CAO.[42]  In this memorandum, Taishan detailed the large quantity of gypsum boards exported to the United States and acknowledged that shipments of its drywall occurred during the relevant period of 2005-2008.[43]  Despite Taishan's acknowledgment that more than 70 million square feet of its drywall [6,656,748.44 square meters] were sent to the United States and were the subject of complaints from customers, Taishan reported that "[it] is not inclined to respond to the lawsuit."  Taishan asked Chiefs SONG and CAO for instructions and approval as to whether such inaction is appropriate.[44]

Taishan expressed concern that "responding to the lawsuit would incur a large amount of

---

[40] *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 894 F. Supp. 2d 819, 832 (E.D. La. 2012), *aff'd*, 753 F.3d 521 (5th Cir. 2014) (referencing *The Mitchell Co., Inc. v. Knauf Gips KG*, Case No. 09-4115).

[41] *See* "Informational Report on the Class Actions Brought by the U.S. Parties Against Taishan Gypsum Company Limited" dated 5/11/2009 [TG-0208428-30] (PENG Exhibit 825) (attached hereto as FSIA Ex. "151").  At that time, Mr. SONG was also the Chairman of BNBM Group and CNBM.  Meanwhile, Mr. CAO was the Chairman of BNBM, President and Executive Director of CNBM, and Chairman of the Supervisory Committee of both BNBM Group and Taishan.  *See* FSIA Ex. 42.

[42] *Id.*

[43] *Id.* at TG-0208428-29.

[44] *Id.* at TG-0208430.

attorney's fees and traveling fees."[45]  In addition, since "there is no judicial treaty signed between China and the U.S. on mutual recognition and enforcement of court judgements, and Taishan Company does not have assets within the continental U.S., even if the lawsuit was lost, the U.S. court cannot enforce Taishan's assets in China."[46]  Admittedly, Taishan prepared this report for CNBM Group "so that the leaders can understand the facts of the case and give relevant instructions."[47]  The company proposed to Chiefs SONG and CAO that "when necessary, it will provide documents that are beneficial to Taishan Company to the court that accepted the case."[48]

Within two weeks of the May 11, 2009 report, at the "arrangements of the Company's leaders," PENG Wenlong of Taishan Gypsum corresponded with China Building Materials Academy ("Building Materials Academy"),[49] a wholly-owned subsidiary of CNBM Group that took the lead in researching and analyzing the issues related to American reports of defective gypsum board.[50]  Mr. PENG offered Building Materials Academy a report on Taishan Gypsum's drywall manufacturing.[51]  He attached to his communication with Building Materials Academy a

---

[45] *Id.*

[46] *Id.*

[47] *Id.*

[48] *Id.*

[49] *See* Email from PENG Wenlong [Taishan] to China Building Materials Academy dated 5/31/2009 [TG-0370699] (PENG Exhibit 817) (attached hereto as FSIA Ex. "152").

[50] *See* CNBM Group Corporation Meeting Minutes of the 5th Work Meeting of Managers of CNBMG Group [TG-00026029-39] (PENG Exhibit 822) (attached hereto as FSIA Ex. "153") at TG-00026030-31.

[51] FSIA Ex. 152.

completed questionnaire that included succinct answers to important questions imposed upon Taishan about the quality of its drywall, shipping and loading information for the boards exported to the U.S. in 2006, and whether the packages were sealed.[52]  This email exchange again shows CNBM Group's instant concern over the U.S. Drywall litigation, as well as its control over Taishan.

On June 27, 2010, Taishan's Foreign Sales Manager, PENG Wenlong wrote to CNBM Group's Business Manager regarding Taishan's sales of drywall to the United States.  Mr. PENG (using email address v20100526@163.com) wrote to Chief ZHANG Jian (at email address zj@cnbm.com.cn) in an effort to fulfill a request from CNBM Group that included an analysis of Taishan's U.S. gypsum board lawsuits, the origin of gypsum used in Taishan's boards (specific gypsum mine information), and a spreadsheet showing Taishan's U.S. exports for the years 2005-2007.[53]  Chairman JIA Tongchun and Secretary ZHANG [Jianchun] of Taishan Gypsum were copied on the email.  Mr. PENG's email contained two attachments, titled "Statement on the export data and statistics.doc" and "Invoice statistics100627.xls," respectively.  Contrary to Mr. PENG's claim at his recent deposition on November 12, 2015, that his email to CNBM Group and its attachments are merely the result of "speculation,"[54] in actuality, the email and

---

[52] *See* Attachment to TG-0370699: "Questions to the Enterprise(s)" [TG-0370700] (PENG Exhibit 817-1) (attached hereto as FSIA Exhibit "154").

[53] Email from PENG Wenlong to ZHANG Jian dated 6/27/2010 [TG-0129674] (PENG Exhibit 801) (attached hereto as FSIA Ex. "155"); Attachment 1 to TG-0129674: "Statement on the Data and Statistics of Exports to the U.S. from 2005 to 2007" [TG-0129675-76] (PENG Exhibit 801-1) (attached hereto as FSIA Ex. "156"); Attachment 2 to TG-0129674: "Statistics of U.S. Gypsum Boards of Self-managed Export during 2005-2007" [TG-0129677] (PENG Exhibit 801-2) (attached hereto as FSIA Ex. "157").

[54] PENG Dep. at 85:8-86:12 (FSIA Ex. 148).

accompanying documents reflect a very thorough analysis of the gypsum board litigation, the nature of Taishan's manufacturing, customer base, and operating business related to gypsum board, and the mineral origin of same.

In fact, the first attachment shows that Taishan reported in detail to CNBM Group the city, state, square meters, and source of the gypsum ore, in some instances down to the 1/1000 percent.[55]  Further, the second attachment is a spreadsheet detailing the exact shipment dates, invoice serial numbers, U.S. Customers, volume, value, *et al.*, all of which was provided in 2010 at the request of CNBM Group.[56]  It is troubling that CNBM Group did not produce this email, written to its employee ZHANG Jian, and the Company did not produce the attachments provided to CNBM Group by Taishan Gypsum and PENG Wenlong, which begs the question: What other important documents did CNBM Group fail to produce?

### C.    CNBM Group Took Charge of the Response to the Litigation and Controlled the Hiring of Counsel for All of the CNBM/BNBM/ Taishan Defendants

CNBM Group's Chairman took the lead in organizing Taishan's response to the U.S. Drywall litigation, as well as the response of the CNBM and BNBM Entities.[57]  The Company advised its subsidiaries to "reject the legal service of process," because judgments likely could not be enforced against them in China.[58]  After the *Germano* judgment was entered on May 11,

---

[55] Statement on the Data and Statistics of Exports to the U.S. from 2005 to 2007 (FSIA Ex. 156).

[56] Statistics of U.S. Gypsum Boards of Self-managed Export during 2005-2007 (FSIA Ex. 157).

[57] *See* Course of Events Summary Memo at 3 (FSIA Ex. 142).

[58] *See* Course of Events Summary Memo at 4 (FSIA Ex. 142).

2010, CNBM Group adopted a "limited response to litigation"[59] strategy to challenge the exercise of personal jurisdiction over Taishan and TTP.

In fact, CNBM Group hosted two telephonic conference meetings on June 3, 2010, both of which included CNBM Group, CNBM, BNBM, and Taishan Gypsum, recapping the organizational and strategic efforts of CNBM Group Chairman SONG Zhiping in responding to the U.S. litigation.[60] The summary memorandum memorializing these meetings reveals that (i) the owner of Taishan's competitor Knauf invited SONG Zhiping and CNBM Group to consider a collaborative effort in responding to the U.S. Gypsum lawsuit, (ii) Chairman SONG would organize the response to the litigation, and (iii) CNBM Group's Board of Directors would discuss and decide the direction of the U.S. Drywall litigation.[61] Overall, the June 3, 2010 teleconferences reiterate that CNBM Group would organize Taishan Gypsum's response to the U.S. Drywall lawsuits.

Consistent with the plan described above, on June 3, 2010, CNBM Group business administrator ZHANG Jian circulated via email to WANG Bing (BNBM Chairman, CNBM VP, and Taishan Director), CHEN Yu (BNBM General Manager and Director), and JIA Tongchun (Taishan Chairman and BNBM Director) an opinion soliciting draft from CNBM Group's Board of Directors titled, "Informational Report on Seriously and Proactively Doing a Good Job in

---

[59] *Id.*

[60] *See* The Course of Events on Hiring Foreign Law Firms for the Gypsum Board Litigation in the United States ("Course of Events Memo") [BNBMPLC-E-0059967-77] (redacted pursuant to Court Order at Rec. Doc. No. 19792) (previously identified as FSIA Ex. 85) (attached hereto as FSIA Ex. "158") at BNBMPLC-E-0059975.

[61] *Id.* at BNBMPLC-E-0059975-76.

Responding to the Incident of 'Problematic Gypsum Boards Shipped to the United States.'"[62]

The Report describes the timeline of the lawsuit in great detail, relating 3,296 CPSC complaints, receipt of 81 class action subpoenas, and acknowledgment that "subordinate enterprises of the Group ... exported 14,220,000 square meters [of gypsum board] to the U.S."[63] Additionally, the CNBM Group report demonstrates the degree of CNBM Group control over Taishan Gypsum and BNBM by stating, "[d]uring the entire development process of the incident, CNBM Group has required and arranged BNBM PLC and Taishan Gypsum to actively cooperate...."[64] CNBM Group consistently hosted meetings to discuss the U.S. Drywall lawsuits, which required attendance by CNBM, BNBM, and Taishan.

After Taishan's June 10, 2010 entry of appearance in the MDL,[65] CNBM Group continued to monitor and control Taishan's response to the lawsuit by hosting meetings to discuss strategy. On July 9, 2010, CNBM Group summoned (among others) WANG Bing, CHEN Yu, and JIA Tongchun to the "Fifth Work Meeting of Managers of CNBM Group for the Year 2010."[66] This meeting was convened by Chairman SONG and, in part, addressed the

---

[62] *See* Email from ZHANG Jian dated 6/3/2010 [TG-0374792] (PENG Exhibit 821) (attached hereto as FSIA Ex. "159"); *see also* Attachment to TG-0374792: "Informational Report on Seriously and Proactively Doing a Good Job in Responding to the Incident of 'Problematic Gypsum Boards Shipped to the United States'" (Opinion Soliciting Draft) [TG-0374793-801] (PENG Exhibit 821-1) (attached hereto as FSIA Ex. "160").

[63] FSIA Ex. 160 at TG-0374795.

[64] *Id.* at TG-0374797.

[65] Rec. Doc. No. 3668.

[66] *See* CNBM Group Meeting Minutes of 5th Work Meeting of Managers (FSIA Ex. 153).

16

"problematic gypsum board event."[67]  The discussion "confirmed 21 cases that were served upon [Defendants] through the Hague Convention, including each of CNBM Group, CNBM Co., Ltd., BNBM PLC ... CNBM USA ... and Taishan Gypsum" and reported that "the Test Center of China Building Materials Academy has taken the lead" to research and analyze the issues related to American reports of defective gypsum board.[68]

CNBM Group's control continued through 2011, as evidenced in a report dated April 10, 2011, sent by Group to the PRC's General Administration of Quality Supervision and Inspection Quarantine Department.[69]  Here, CNBM Group explained to the governmental entity that great importance is attached to the lawsuit and all "relevant enterprises" are communicating with "the General Administration of Quality Supervision, Inspection and Quarantine, the Ministry of Commerce, the SASAC, industry associations, association of exporters, and other relevant institutions...."[70]  Further, the Group assured active cooperation and responsibility to "customers all over the world."[71]  CNBM Group acknowledged the importance of the U.S. Drywall lawsuits because ultimately, the Group Corporation is accountable for product complaints of its subordinate entities.

---

[67] *Id*. at CNBMGRP00026030.

[68] *Id.* at CNBMGRP00026030-31.

[69] *See* CNBM Group's "Informational Report on Seriously and Proactively Doing a Good Job in Responding to the Incident of 'Problematic Gypsum Boards Shipped to the United States,'" *addressed to* General Administration of Quality Supervision [TG-0217757-62] (PENG Exhibit 820) (attached hereto as FSIA Ex. "161").

[70] *Id.* at TG-0217759.

[71] *Id.* at TG-0217762.

In 2014,  [72] In fact,

[73] The use of CNBM Group's attorney as a consultant for and to Taishan is consistent with CNBM Group's history of organization and orchestration of Taishan Gypsum's response to the U.S. lawsuit.

Following the Contempt Order in July 2014, CNBM Group organized not only the re-entry and response of Taishan in the litigation, but also its own appearance in the U.S. gypsum board lawsuits.  Just prior to entering its formal appearance in February 2015, CNBM Group held a Board of Directors Meeting wherein Chairman SONG Zhiping discussed the lawsuit and the business economic state of Taishan and CNBM Group.[74]

The February 2015 meeting discussed the changing business environment within China, as well as the U.S. Drywall litigation.  In the same breath, SONG acknowledged that the U.S. lawsuit includes the premise of piercing the corporate veil, as well as the fact that CNBM and

---

[72] Email chain between and among PENG Wenlong, DONG Chungang, and ZHANG Jian dated 10/14/2014-11/3/2014 [TG-0369908-13] (PENG Exhibit 800) (attached hereto as FSIA Ex. "162").

[73] *Id.* at TG-0369911-12 (email from DONG to ZHANG dated 10/14/2013).

[74] *See* Meeting Minutes of the Seminar on Deepening Reform, CNBM Group Board of Directors, dated 2/26/2014 [CNBMGRP00023355-75] (PENG Exhibit 816) (attached hereto as FSIA Ex. "163").

SASAC are potentially liable in U.S. courts.[75]  Further, Mr. SONG acknowledged that Taishan

Gypsum is a limited company, <u>but not independent</u>.[76]  The statements of Chairman SONG at the

February meeting are yet another example of the depth of involvement of CNBM Group in the

U.S. Drywall litigation and its knowledge of U.S. law.  At all relevant times, CNBM Group

commanded and directed the actions of Taishan and the inactions of BNBM and the other

Defendants.  In the days before entering its formal appearance, CNBM Group was well aware

and apprised of the legal nuances and consequences of Taishan's default and the Group's

ultimate liability for same.

CNBM insists that its control over Taishan's decision-making in response to this

litigation is of no moment, because the test for alter ego depends on proof that it controlled

Taishan's manufacture and sale of the drywall which has caused Plaintiffs' harm.  But CNBM

here dances on the head of a pin; for it surely does not deny, and cannot do so under the facts

now of record, that the same organizational power structure that became manifest once this

litigation commenced, also existed at the time Plaintiffs' cause of action arose.  The

dramatic illustration of that control when, for example, Taishan was authorized by CNBM Group

to defy this Honorable Court's authority in June 2014, affords clear evidence that none of the

day-to-day operations of Taishan have ever been truly independent of the oversight, control and

direction of this controlling parent Company.

## III.    <u>DEFENDANTS' TACTICS HAVE SEVERELY PREJUDICED THE PLAINTIFFS</u>

Through an orchestrated effort led by CNBM Group, Taishan appeared in this litigation

---

[75] *Id.* at CNBMGRP00023369.

[76] *Id.*

19

for the first time in 2010, after a default judgment had already been entered against the company.[77]  "Determined to adopt the 'limited response to litigation' strategy," the CNBM and BNBM Entities sat on the sidelines as Taishan contested the exercise of personal jurisdiction over the company and its wholly-owned subsidiary TTP.  After two years of extensive jurisdictional discovery, including multiple depositions of Taishan's witnesses in Hong Kong (under the personal supervision of the Court), Taishan argued in its motions to dismiss that:

- "TG did not sell drywall to any customer who claimed to be from Florida or to any customer that indicated it intended to ship drywall to Florida."[78]

- "TG never has conducted business in Virginia or anywhere else in the U.S. TG only had one U.S. customer to whom it sold drywall on two isolated occasions. TG delivered the drywall in China, did not ship it to Virginia or anywhere else in the U.S., and was not aware of where Venture Supply would be marketing the drywall."[79]

- "TG did not sell drywall to any customer from Louisiana or any customer that advised TG it intended to market drywall in Louisiana."[80]

- "TTP was an independent subsidiary of TG. TTP made a few isolated sales of drywall in China to two companies that advised TTP they intended to ship the drywall they purchased to Louisiana. TTP was not aware that those companies would later market the drywall in Louisiana."[81]

These statements were false.  The recently produced documents from Mr. PENG's

---

[77] *See* Course of Events Summary Memo at 3 (FSIA Ex. 142).

[78] *See* Taishan's Memo of Law in Support of its Renewed Motion to Dismiss in *Mitchell*, at 1 [Rec. Doc. No. 13566-1].

[79] *See* Taishan's Memo of Law in Support of its Renewed Motion to Dismiss in *Germano*, at 1 [Rec. Doc. No. 13490-1].

[80] *See* Taishan's Memo of Law in Support of its Renewed Motion to Dismiss in *Wiltz*, at 1 [Rec. Doc. No. 13591-1].

[81] *Id.*

missing computers prove that Taishan and CNBM Group have known, since before this MDL was established, precisely how much drywall Taishan exported to the United States:

- "From 2005 to 2008, Taishan Company exported a total of 6656748.44 square meters [> 71 million square feet] of gypsum boards to the U.S."[82]

- "822037.37 square meters [> 8.8 million square feet] of gypsum boards were directly exported to the U.S. under the name of Shandong Taihe Dongxin Company Limited (Taishan Gypsum Company Limited)"[83]

- "5834711.07 square meters [> 62 million square feet] of gypsum boards were exported under the name of Tai'an Taishan Plasterboard Company Limited [TTP] through domestic import and export companies."[84]

- "Categorized by dates,

  → 446520.0 square meters [> 4.8 million square feet] were exported to the U.S. in 2005,
  → 5952556.63 square meters [> 64 million square feet] were exported in 2006,
  → 240763.584 square meters [almost 2.6 million square feet] were exported in 2007, [and]
  → 16908.224 square meters [almost 182,000 square feet] were exported in 2008."[85]

- "[A]ll gypsum boards exported to the U.S. followed the demands of the customers in conducting either neutral packaging labeling or labeling the company name and brand of the customer's own company."[86]

---

[82] *See* "Informational Report on the Class Actions Brought by the U.S. Parties Against Taishan Gypsum Company Limited" dated 5/11/2009 at TG-0208428 (FSIA Ex. 151); *see also* FSIA Ex. 149 (Email chain between and among CNBM, BNBM, and Taishan re: "Notice on submitting the information of import and export business operation and countermeasures of the enterprises during the financial crisis."); FSIA Ex. 150 ("The Operation Situation and Relevant Suggestions on the Import and Export Business of Taishan Gypsum Company Limited").

[83] *Id*. at TG-020849.

[84] *Id*.

[85] *Id*.

[86] *Id*.

In 2010, Taishan provided CNBM Group with detailed information regarding its exports of drywall to the U.S., including the fact that it made direct shipments of drywall to ports in Miami, Tampa, Norfolk, Camden, and New York.[87]

There is no question that these documents should been produced years ago when Taishan's computers were first searched by its former counsel Hogan Lovells.[88]  Had the PSC received this information on a timely basis, the Plaintiffs and the Court would not have wasted two years engaging in intense jurisdictional discovery and motion practice related to that discovery.  Likewise, the PSC would not have had to painstakingly gather at great time and expense the evidence it needed to support the exercise of jurisdiction over Taishan and TTP, through third party discovery and multiple depositions of Defendants' witnesses.  Had proper responses to discovery been made by Defendants in the first instance, the PSC would not have been required to many spend many months briefing oppositions to Taishan's jurisdictional motions before this Court and on appeal to the Fifth Circuit Court of Appeals.  In fact, had Plaintiffs and the Court been made aware from the beginning that Taishan and TTP purposefully exported millions of square feet of their drywall to specific jurisdictions in the United States, with the knowledge and approval of their controlling parent companies, discovery of the parent companies would not have been stayed.

In the briefing on Taishan's jurisdictional motions, the PSC made clear that their efforts to obtain discovery related to the "upstream" BNBM and CNBM Entities was effectively

---

[87] *See* "Statement on the Data and Statistics of Exports to the U.S. from 2005 to 2007" at TG-0129675 (FSIA Ex. 156).

[88] *See* PENG Dep. at 250:9-251:21 (FSIA Ex. 148).

curtailed due to representations that Taishan and its former counsel Hogan Lovells made to this

Court (which were not true and in hindsight caused the PSC to waste a lot of time and money).

This left the Plaintiffs no choice but to focus on Taishan and TTP alone:

> Plaintiffs have been precluded from taking any formal discovery of
> Taishan's upstream entities – CNBM and BNBM . . . Taishan has
> asserted that "[t]he evidence . . . shows BNBM was nothing more
> than a major shareholder of TG and there is no basis in the record
> to disregard the separate corporate existence of TG and BNBM."
> Taishan further alleges that "TG also had little or no interaction
> with any other Upstream Entities. Therefore, there is also no basis
> to disregard the separate corporate existence of TG, BNBM, or any
> of the other Upstream Entities."[89]

Based on Taishan's representations regarding its relationships with its parent companies, the

Court allowed the PSC to hold discovery of the upstream entities over to a later date, but

foreclosed any revisiting of such relationships and contacts for the purposes of determining the

jurisdiction over Taishan.[90]

Based on the newly produced documents, CNBM Group's plan from the beginning is

now clear.  The Company wanted to avoid this litigation entirely, rejecting service of complaints

under the Hague Convention, and thwarting execution of any judgments received in American

courts.  Through incomplete document productions dating as far back as 2011 and the recent

calculated document dumps, the Plaintiffs have been severely prejudiced.  There has been a

purposeful attempt to deprive the Plaintiffs and the Court of the complete picture of what

transpired regarding the export of Taishan's drywall to the U.S.  It will take the PSC weeks to

thoroughly examine and translate the recent document productions.  Rather than provide the

---

[89] *See* Rec. Doc. 14209 at 35-36 (emphasis added).

[90] *See Chinese Drywall*, 894 F. Supp. 2d at 861 n.6.

Plaintiffs with due process, the Company would prefer that the Court rush to adjudicate its FSIA Motion based only on a snapshot of evidence. The better practice would be to defer the FSIA Hearing until critical factual issues can be resolved on such an important issue,[91] but at a minimum, the PSC should be provided an opportunity to supplement Plaintiffs' response after the depositions of BNBM's experts and after Defendants' recent document productions have been analyzed.

## IV.    **CONCLUSION**

In spite of the serious delays in Defendants' document productions and the lack of proper responses to Plaintiffs' discovery requests, there is sufficient evidence to show that CNBM Group controlled the CNBM Entities, BNBM Entities, and Taishan, from the top down, and engaged in commercial activity and tortious conduct related to Plaintiffs' claims. CNBM Group strenuously denies these facts. However, as the Plaintiffs have learned from witnesses in this litigation: "In China, we exaggerate a little bit. Exaggerate a little bit, that's allowed."[92]

Indeed, Morgan Stanley, the sponsor for CNBM's Global Public Offering in 2006, confirmed as much by warning investors: "**We cannot guarantee the accuracy of facts and statistics derived from official sources and industry publications with respect to the PRC, the PRC economy and the PRC building materials industry contained in this prospectus,**

---

[91] *See* Plaintiffs' Steering Committee's Response to Beijing New Building Materials Public Limited Company's and Beijing New Building Material (Group) Co., Ltd.'s Motion to Set a Briefing Schedule and Hearing Date for Their Motions to Dismiss the Complaints Pursuant to Rules 12(b)(2) and 12(b)(5) and Motion for Reconsideration of September 28, 2015 Order [Rec. Doc. 19549] Scheduling the CNBM Entities Amended Motion to Dismiss for a Hearing Following the January Monthly Status Conference [Rec. Doc. No. 19803].

[92] Deposition of Fu Tinghuan dated 1/10/2012 at 86:14-15 (Herman Aff. Ex. 2 filed 5/8/2012).

**and investors should not place undue reliance on them**."[93]  The reason for this cautionary instruction "would be due to the experience of our people [at Morgan Stanley] who study these statistics and compare it with other information…. [I]t's quite well established, for example, that many economists doubt economic data that comes out of China being accurate, just as an example."[94]

As shown in the PSC's Response to the FSIA Motion, and as further supplemented above, CNBM Group is the alter ego of BNBM Group, CNBM, BNBM, and Taishan, and, therefore, the acts of BNBM and Taishan relating to the drywall that is the subject of Plaintiffs' claims, may be imputed to CNBM Group.  This conduct satisfies both the commercial activity and tortious conduct exceptions of the FSIA.  CNBM Group's FSIA Motion should be denied.

---

[93] *See* Offering Memorandum for 654,214,000 H Shares of CNBM Stock dated 3/16/2006 [MS001946-93] (MS-17) (attached hereto as FSIA Ex. "164") (emphasis in original).

[94] Keyes Dep. at 217:23-218:7 (FSIA Ex. 165).

Dated: November 30, 2015               Respectfully Submitted,

BY: /s/ Russ M. Herman
Russ M. Herman (La. Bar No. 6819) (on the Brief)
Leonard A. Davis (La. Bar o. 14190) (on the Brief)
Stephen J. Herman (La. Bar No. 23129)
Madelyn O. Breerwood (La. Bar No. 35538) (on the Brief)
Herman, Herman & Katz, LLC
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
ldavis@hhklawfirm.com
*Plaintiffs' Liaison Counsel MDL 2047*

Arnold Levin (on the Brief)
Fred S. Longer (on the Brief)
Sandra L. Duggan (on the Brief)
Matthew Gaughan (on the Brief)
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
alevin@lfsblaw.com
*Plaintiffs' Lead Counsel MDL 2047*

**PLAINTIFFS' STEERING COMMITTEE**

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm, LLC
425 W. Airline Highway, Suite B
Laplace, LA 70068
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

26

Peter Prieto
Podhurst Orseck, PA
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
pprieto@podhurst.com

Bruce William Steckler (on the Brief)
Steckler LLP
12720 Hillcrest Road, Suite 1045
Dallas, TX 75230
Phone: (972) 387-4040
Fax: (972) 387-4041
bruce@stecklerlaw.com

Ervin A. Gonzalez
Colson, Hicks, Eidson
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
ervin@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
  Echsner & Proctor, PA
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
The Lambert Firm
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@thelambertfirm.com

Jerrold Seth Parker
Parker Waichman, LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Myers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

James Robert Reeves
Reeves & Mestayer, PLLC
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@attorneys4people.com

Christopher Seeger
Seeger Weiss, LLP
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5002
dan@wbmllp.com

27

Richard J. Serpe
Law Offices of Richard J. Serpe
Crown Center, Suite 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com

Victor M. Diaz, Jr.
V.M. Diaz and Partners, LLC
119 Washington Ave., Suite 402
Miami Beach, FL 33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

Gerald E. Meunier (on the Brief)
Rachel A. Sternlieb (on the Brief)
Gainsburgh, Benjamin, David,
  Meunier & Warshauer, LLC
2800 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2800
Phone:  (504) 522-2304
Fax:  (504) 528-9973
gmeunier@gainsben.com

28

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W., Suite  650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Anthony D. Irpino (on the Brief)
Pearl A. Robertson (on the Brief)
IRPINO LAW FIRM
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 30th day of November, 2015.

Respectfully Submitted,

BY:  */s/ Leonard A. Davis*
       Leonard A. Davis
       Herman, Herman & Katz, LLC
       820 O'Keefe Avenue
       New Orleans, LA 70113
       Phone: (504) 581-4892
       Fax: (504) 561-6024
       ldavis@hhklawfirm.com

       *Plaintiffs' Liaison Counsel MDL 2047*