# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| EDUARDO AND CARMEN AMORIN, *et al.*, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TAISHAN GYPSUM CO., LTD. f/k/a SHANDONG TAIHE DONGXIN CO., LTD.; TAIAN TAISHAN PLASTERBOARD CO., LTD., et al.,<br><br>Defendants. | Case No. 1:11-CV-22408-MGC |

**PLAINTIFFS' MOTION & MEMORANDUM OF LAW TO STAY ALL CLAIMS IN THE FLORIDA *AMORIN* COMPLAINT THAT RELATE TO PROPERTIES OUTSIDE OF FLORIDA (*i.e.*, "NON-FLORIDA CLAIMS")**

Pursuant to S.D. Fla. L.R. 7.1 and the Court's order of August 14, 2018 (Doc.47), Plaintiffs hereby file their Motion and Incorporated Memorandum of Law to Stay All Claims in the Florida *Amorin* Complaint That Relate to Properties Outside of Florida (*i.e.*, "Non-Florida Claims") in Exhibit A, attached hereto, and in support thereof, state as follows:

**I.      INTRODUCTION**

Thousands of homeowners in Florida, Louisiana, Virginia, and other states have suffered significant damages caused by defective Chinese Drywall installed in their properties. After the devastation of Hurricanes Katrina and Rita along the Gulf Coast in 2005, and as a result of a coinciding housing boom in this country, there was a shortage of drywall available domestically. This created an opportunity for foreign manufacturers to sell their drywall and related building materials to American customers.

In response to the increased demand for drywall, beginning in the fall of 2005 and continuing through 2008, Taishan Gypsum Co. and its wholly-owned subsidiary and alter ego Taian Taishan Plasterboard Co. (collectively, "Taishan") exported nearly 86 million square feet of its Chinese Drywall to customers in the U.S. for installation in homes and condominiums throughout the country. Taishan shipped more than 9 million square feet of

its drywall to Florida. *See*, generally, *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 894 F. Supp. 2d 819 (E.D. La. 2012), *aff'd*, 742 F.3d 576 & 753 F.3d 521 (5th Cir. 2014).

After installation, residents noticed foul odors similar to rotten eggs, making it difficult, if not impossible, to live in the home. Chinese Drywall corrodes everything made out of metal, and particularly copper and silver. *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2010 WL 1445684, *6 (E.D. La. Apr. 8, 2010). Chinese Drywall ruins electrical appliances, copper electrical wiring, heating, venting, and air conditioning units, copper plumbing and copper pipes, showers, pressure regulators, duct work, and jewelry. *Id.* at *6-*8. Many Floridians have had to move out of their homes and find an alternative place to live.

In order to properly fix their properties, all drywall in the home must be removed. *Id.* at *12-*14. In addition, all electrical wiring, copper plumbing, and HVAC systems must be replaced. *Id.* at *15-*21. Further, all carpets, bathroom fixtures, hardwood and vinyl flooring, kitchen cabinets and counters, damaged appliances, and insulation have to be changed. *Id.* at *23-*25. Unfortunately, most victims cannot afford to remediate their homes. They cannot afford to pay rent elsewhere and also pay the mortgages on their toxic homes. So, many Floridians have had to declare bankruptcy and hundreds have lost their homes through foreclosures or short sales.

When the defects of Chinese Drywall became apparent, homeowners began to file suit in various state and federal courts against the manufacturers of Chinese Drywall, as well as the homebuilders, developers, installers, suppliers, importers, exporters, and distributors in the supply chain. Because of the commonality of facts in the various cases, on June 15, 2009, all federal cases involving Chinese Drywall were consolidated in MDL 2047 for coordinated pretrial proceedings before Judge Fallon in the Eastern District of Louisiana.[1]

Judge Fallon appointed a Plaintiffs' Steering Committee ("PSC") and Plaintiffs' Lead and Liaison Counsel. The Court set forth certain duties and responsibilities of the PSC,

---

[1] *In re Chinese-Manufactured Drywall Products Liab. Litig.,* 626 F. Supp. 2d 1346 (J.P.M.L. 2009).

2

including: preparation and completion of pleadings; filing of motions; responding to motions; discovery; pretrial preparation; settlement; docket management; establishment and administration of a document depository; communication with individual Plaintiffs and their counsel; liaison with Defendants; and court appearances.

Discovery conducted by the PSC revealed that the drywall at issue was manufactured primarily by two groups of Defendants: (1) the Knauf entities, and (2) the Taishan entities. The litigation proceeded simultaneously against both groups of Defendants and their various downstream associates that were involved in the chain of commerce leading to the defective drywall being installed in Plaintiffs' homes. Knauf entered its appearance early in the litigation and agreed to a limited waiver of service in November 2009. Ultimately, the Knauf entities and the associated builders, suppliers, distributers, and insurers agreed to settle Plaintiffs' claims for more than $1 billion in benefits for homeowners with Knauf Chinese Drywall in their properties. *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2013 WL 499474 (E.D. La. Feb. 7, 2013); MDL Order and Judgment dated 7/9/2013 [MDL Rec. Doc. 16934].

In stark contrast to the Knauf Defendants (who appeared in the MDL, participated and ultimately settled the claims against them), the Taishan Defendants from the outset orchestrated and carried out a well-developed plan to avoid paying judgments in this litigation. Initially, the Taishan Defendants refused to enter an appearance, despite having been properly served under The Hague Convention, on the grounds that all of the "major assets of the Company, BNBM and Taishan Gypsum are located in China" and there is "no convention or treaty on mutual recognition and enforcement of judgments between China and the U.S." *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2018 WL 279629, *8 (E.D. La. Jan. 2, 2018). According to the Taishan entities, "the possibility of the U.S. judgments being enforced in China is very low." *Id*. Consequently, Taishan, and its parent companies Beijing New Building Materials PLC ("BNBM"), Beijing New Building Material (Group) Co., Ltd. ("BNBM Group"), China National Building Materials Co. ("CNBM"), and China

3

National Building Material Group Corporation ("CNBM Group")[2] allowed the Transferee Court to enter default judgments against them in multiple actions, despite being afforded notice and an opportunity to answer or otherwise respond to the complaints.

The presence of foreign Defendant manufacturers and many hundreds of other entities in the chain of distribution across multiple states created significant obstacles to an individual homeowner obtaining relief. To overcome some of these obstacles, the PSC proposed the first-known judicial use of "Omnibus complaints," whereby thousands of Plaintiffs were collectively named on the same pleading against numerous Defendants, allowing those Plaintiffs and their counsel to file and preserve claims and theories of recovery, satisfy CAFA jurisdiction, and avoid the heavy cost of translation and service on foreign Defendants under The Hague Convention (which can exceed $100,000 per complaint in China). The preparation of the "Omni" complaints required investigation to verify case-specific facts and creation of a protocol for product identification. Through extensive meetings with relevant experts, the PSC was able to develop a catalogue of markings, brands, and other identifiers that assisted claimants in naming the proper Defendants.

All told, the PSC created 32 different Omni Complaints, which facilitated the joinder of individual Plaintiffs' claims against more than 1,650 different manufacturers, importers, suppliers, distributors, builders, installers, and their insurers involved in the supply chain of Chinese Drywall installed in Plaintiffs' properties. The PSC intervened into these Omni Complaints approximately 10,000 Plaintiffs with properties from various jurisdictions, including Louisiana, Florida, Virginia, Mississippi, Texas, Georgia, North Carolina, Tennessee, Alabama, Illinois, and California. Absent the use of these Omni Complaints, few Plaintiffs would have been able to perfect service of process under The Hague Convention on the foreign manufacturers of Chinese Drywall.

---

[2] Eventually, Judge Fallon dismissed CNBM Group from the litigation by Order & Reasons dated March 10, 2016 [MDL 2047 Rec. Doc. 20150]. The PSC has filed a motion to certify that dismissal ruling for immediate appeal pursuant to 28 U.S.C. § 1292(b) [MDL Rec. Doc. 21533]. Oral argument on the 1292(b) motion is scheduled to be heard by Judge Fallon on September 13, 2018.

4

In addition to preparation of the Omni Complaints, the PSC prepared detailed jurisdictional and substantive discovery requests of Defendants, they took and defended more than 200 depositions in the U.S. and abroad, they exchanged more than 1 million pages of documents and scores of expert reports, they issued dozens of FOIA requests, and they conducted several successful bellwether trials in *Germano* and *Hernandez* establishing a comprehensive remediation protocol for Chinese Drywall.

Taishan was found liable in the *Germano* bellwether trial in 2010 (*Chinese Drywall*, 2010 WL 1445684, at *54-*55), but rather than pay that judgment, Taishan's parent companies CNBM and BNBM arranged for Taishan to enter its appearance in the MDL solely for the purpose of contesting jurisdiction and opening the default judgments. Following significant jurisdictional discovery, including scores of depositions on several continents and a week of depositions personally overseen by Judge Fallon in Hong Kong, and extensive briefing, the district court issued a comprehensive jurisdictional opinion finding jurisdiction to be proper over Taishan under due process and in accordance with Florida, Louisiana, and Virginia law. The district court refused to vacate the default judgments against Taishan and found that that Taishan and its wholly-owned subsidiary TTP were alter-egos.

Faced with having to pay the *Germano* judgment, the CNBM/BNBM entities devised a plan for Taishan and TTP to fire their counsel and refuse to appear in open court for a judgment debtor examination. Judge Fallon entered a civil and criminal contempt order and injunction enjoining Taishan and its affiliates and subsidiaries from conducting any business in the U.S. until or unless Taishan participated in this judicial process.[3] In violation of the Contempt Order, the Taishan Defendants blatantly continued to do business in the U.S. during the period of time that Taishan was in contempt of court.

After Taishan fled the jurisdiction with CNBM and BNBM's blessing, on September 26, 2014, the MDL Court certified the *Amorin* class having property damage claims against the Taishan Defendants and scheduled a hearing to determine class damages. *See In re Chinese-*

---

[3] MDL Rec. Doc. 17869.

5

*Manufactured Drywall Prod. Liab. Litig.*, 2014 WL 4809520 (E.D. La. Sept. 26, 2014); MDL Order dated 12/17/2014 [MDL Rec. Doc. 18217]. The *Amorin* class is defined as: 1) all Plaintiffs named on an Omni complaint as of the date *Amorin* was filed directly into the MDL, and 2) all Plaintiffs named in identical *Amorin* complaints filed in Florida and Virginia federal district courts and transferred to the MDL (collectively, the "*Amorin* class").[4]

On the day of the class damages hearing in February 2015, BNBM entered an appearance for the first time and requested a continuance of the class damages hearing. Shortly thereafter, Taishan and TTP returned to the litigation and paid the *Germano* judgment, plus fines, and BNBM Group and the CNBM entities appeared the litigation for the first time. Taishan satisfied the contempt ruling and was ordered to participate in expedited discovery relating to the limited issue of its relationship with BNBM and CNBM.[5]

Judge Fallon then presided over a class damages hearing on June 9, 2015, to determine a formulaic approach for remediation damages suffered by the *Amorin* class.[6] Following extensive pretrial briefing, which included *Daubert* motions, the PSC presented evidence at the class damages hearing and after that hearing prepared extensive findings of fact and conclusions of law. On April 21, 2017, Judge Fallon entered an order on class damages against Taishan and denied Defendants' motion to decertify the Taishan class. *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2017 WL 1421627 (E.D. La. Apr. 21, 2017); MDL Order dated 4/21/2017 [MDL Rec. Doc. 20740].

For the next three years, Taishan and its malfeasant parent companies made countless attempts to delay the proceedings and challenge virtually every ruling by Judge Fallon, while the PSC attempted to move the case forward. These Defendants have fought hard to challenge jurisdiction, decertify the Taishan class, and avoid a class damages verdict.

---

[4] MDL Rec. Doc. 18028.

[5] MDL Rec. Doc. 17869.

[6] MDL Rec. Doc. 20741.

With respect to the ongoing efforts of CNBM/BNBM to contest jurisdiction over them, the Court entered an Order and Reasons on April 21, 2017, holding that (i) CNBM, BNBM Group, BNBM, and Taishan operate as a single business enterprise under Louisiana law, (ii) Taishan and BNBM are agents under Virginia and Florida law, and (iii) there is jurisdiction over BNBM under Florida law for its manufacture and sales of BNBM Dragon board in Florida. Following these rulings, Defendants filed multiple motions pursuant to 28 U.S.C. § 1292(b), seeking immediate appellate review. On August 4, 2017, Judge Fallon certified the Jurisdiction Order for immediate appeal but, thereafter, the CNBM and BNBM Defendants filed a supplemental motion to dismiss based on *Bristol-Myers Squibb v. Superior Court of California* ("*BMS*"). Extensive briefing occurred again on the issue of the Court's jurisdiction over the Taishan Defendants and again, on November 30, 2017, Judge Fallon issued a well-reasoned opinion on personal jurisdiction that rejected the Defendants' meritless challenges under *BMS*.

Having lost again, the Taishan Defendants revisited their request for interlocutory review. That request was granted in part by Judge Fallon, who certified the issues arising from the original Jurisdiction Order but denied certification with respect to issues raised by *BMS*. Defendants then petitioned the Fifth Circuit for permission to appeal the Jurisdiction Order, which prompted additional briefing. That petition was granted, and the appeal before the Fifth Circuit is pending.

Throughout the entirety of this abusive litigation strategy by Defendants, one thing has remained constant – the PSC has fought on a daily basis to keep the case alive and viable against all Defendants and they continue that fight to this day.

During the time that the jurisdictional briefing occurred in the MDL, from 2010-2012, there existed a colorable question regarding the application of the "stream-of-commerce" and the "stream-of-commerce-plus" jurisdictional tests reflected in the plurality opinions in *McIntyre* and *Asahi*, as well as Justice Brennan's concurring opinion in *Asahi*. *See Asahi Metal Industry Co., Ltd. v. Superior Court of California*, 480 U.S. 102 (1987) and *J. McIntyre Machinery,*

7

*Ltd. v. Nicastro*, 564 U.S. 873 (2011).[7] Accordingly, the PSC filed three identical *Amorin* class action Omnibus complaints in Louisiana,[8] Florida,[9] and Virginia,[10] as protective actions designed to perfect claims against Taishan, as well as its parent entities BNBM and CNBM. After filing, the Florida and Virginia *Amorin* Complaints were transferred by the JPML to the MDL.

The *Amorin* complaints[11] included all Plaintiffs who previously had been named in the *Wiltz*,[12] *Gross*,[13] *Abel*,[14] *Almeroth*[15] and *Haya*[16] Omnibus complaints (along with their complaints in intervention). Following Fifth Circuit precedent,[17] the MDL Court applied the stream-of-

---

[7] Most recently, the differences in the application of these two tests was on display in *Align Corp. Ltd. v. Boustred,* No. 16SC448, 2017 WL 7208133 (Colo. Nov. 13, 2017), *cert. denied,* 2018 WL 1142978 (U.S. June 11, 2018), wherein the United States Supreme Court refused to accept the matter for review at the very end of its last term.

[8] *Amorin, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.,* No. 11-1395 (MDL Omnibus XVI) (Louisiana *Amorin* Complaint).

[9] *Amorin, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.,* No. 11-1672 (MDL Omnibus XV) (Florida *Amorin* Complaint).

[10] *Amorin, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.,* No. 11-1673 (MDL Omnibus XVII) (Virginia *Amorin* Complaint).

[11] The Plaintiffs in each *Amorin* complaint are identical, such that the Florida *Amorin* Complaint includes Plaintiffs owning properties in Louisiana and Virginia (and other states), the Louisiana *Amorin* Complaint includes Plaintiffs owning properties in Florida and Virginia (and other states), and the Virginia *Amorin* Complaint includes Plaintiffs owning properties in Florida and Louisiana (and other states).

[12] *Kenneth and Barbara Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al.*, No. 10-361 (E.D. La.) (Omnibus II).

[13] *Gross, et al. v. Knauf Gips, KG, et al.*, No. 09-6690 (E.D. La.) (Omnibus III).

[14] *Kenneth Abel, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.,* No. 11-080 (E.D. La.) (Omnibus VII).

[15] *Richard and Constance Almeroth, et al.* v. *v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.,* No. 12-0498 (E.D. La.) (Omnibus XIII).

[16] *Laura, Daniel and Irene Haya, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.,* No. 11-1077 (E.D. La.) (Omnibus IX).

[17] In its September 4, 2012 Opinion, which was twice affirmed by the Fifth Circuit, Judge Fallon recognized that "the Fifth Circuit has found personal jurisdiction on the basis of a foreign defendant's

commerce test from Justice Brennan's concurrence in *Asahi* to conclude it could assert personal jurisdiction over the defendants for having targeted the states where they shipped their drywall products. *See Chinese Drywall*, 894 F. Supp. 2d at 855. *See also Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 178 (5th Cir. 2013). On appeal of the jurisdictional rulings, the Fifth Circuit affirmed the MDL Court's decision recognizing that under either jurisdictional formula ("stream-of-commerce" or "stream-of-commerce-plus"), and under the laws of the Fourth, Fifth, and Eleventh Circuits, the exercise of personal jurisdiction over Taishan was appropriate since "TG placed its drywall into the stream of commerce with the knowledge that its drywall would end up in and be used in [the targeted state]." *Chinese Drywall,* 742 F.3d at 583 (quoting *Chinese Drywall*, 894 F. Supp. 2d at 854); *see also Chinese Drywall,* 753 F.3d 521, *supra*. After losing their appeals in the Fifth Circuit, Defendants made a calculated decision to no longer defend the litigation. The *Germano* judgment became a final and enforceable judgment and defaults were subsequently taken in the *Amorin* complaints.[18]

As a result of the Taishan Defendants' legal maneuvers, this litigation has dragged on for over nine years. Judge Fallon has concluded that common questions and other pretrial issues have been decided and, therefore, he remanded the Florida *Amorin* claimants to the Southern District of Florida.[19] In the MDL Court's Suggestion of Remand, Judge Fallon precisely states the only claims to be remanded are the Florida Plaintiffs on the attached

---

sale of products bound for the forum." *Chinese Drywall*, 894 F. Supp. 2d at 855 (citing *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 471 (5th Cir. 2006); *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 420-21 (5th Cir. 1993); *Irving v. Owens-Corning Fiberglas Corp.*, 864 F.2d 383, 386 (5th Cir. 1989)).

[18] *See* MDL Rec. Doc. 17814 and 17815; *see also Chinese Drywall*, 742 F.3d 576, *supra*.

[19] Judge Fallon entered a Suggestion of Remand relating to all *Amorin* Florida claims on March 12, 2018 [MDL Rec. Doc. 21242], and the JPML entered a Conditional Remand Order on March 22, 2018 [JPML Rec. Doc. 482]. The Florida *Amorin* Claims were formally remanded to the Southern District of Florida on June 6, 2018 under 28 U.S.C. § 1407(a). *See Amorin, et al. v. Taishan Gypsum Co., Ltd.*, No. 11-22408 [ECF No. Doc. 13] (S.D. Fla. June 6, 2018).

9

Appendix,[20] and that the MDL Court would retain jurisdiction over those claims only for the allocation of common benefit fees.

The Florida Claims against Taishan (the manufacturer of the Chinese Drywall installed in Plaintiffs' homes) and BNBM (Taishan's direct parent company for whom Taishan is an agent under Florida law and also a manufacturer of Chinese Drywall) are ready to proceed in this Court. Plaintiffs appreciate that these Florida *Amorin* Claims also appear in the identical Louisiana and Virginia *Amorin* Complaints. For that reason, the PSC has moved to stay the claims of the Florida Plaintiffs included in the Louisiana *Amorin* Complaint that currently remains in the MDL.[21] The PSC will file a similar motion to stay with respect to the Virginia *Amorin* Complaint once the remand of that complaint to the Eastern District of Virginia is final.

Likewise, the Non-Florida Claims in the Florida *Amorin* Complaint should be stayed while those cases proceed in other jurisdictions. Defendants insist (in error) that this Court will be presiding over nearly 4,000 *Amorin* claims. As discussed *infra*, a stay of the claims of the non-Florida Plaintiffs included in the Florida *Amorin* Complaint would serve the interests of judicial economy and guard against any wasteful, unnecessary efforts or hardships.

II.     **MEMORANDUM OF LAW**

The purpose of multidistrict litigation is to coordinate pretrial management of actions sharing common facts in a just and efficient manner. See 28. U.S.C. § 1407(a). Judge Fallon certainly did not envision that the MDL Court *and* the Southern District of Florida would both be presiding over overlapping discovery issues when he suggested the Florida *Amorin* claims be remanded. *See In re Plumbing Fixture Cases*, 298 F. Supp. 484, 495 (J.P.M.L.1968) ("Two courts of exclusive different jurisdictions, or venues, cannot exercise control over the same single claim for relief at the same time…. [However, under 28 U.S.C. § 1407(a),]

---

[20] Attached to Judge Fallon's Suggestion of Remand as Appendix "A" is a list of approximately 1,700 properties, all of which are located in Florida [*see* MDL Rec. Doc. 21242-1].

[21] *See* MDL Rec. Doc. 21639 and 21639-1.

10

separate claims for relief can be separated and …remanded."). Now that the Florida claims in the Florida *Amorin* complaint have been transferred by remand out of the MDL, there is no need for Judge Fallon to address issues that are now before the Southern District of Florida. Similarly, there is no need for this Court to address issues relating to non-Florida Louisiana claimants who remain in the MDL or non-Florida Virginia claimants who will be remanded to Virginia.

The Federal Rules of Civil Procedure "endow the trial judge with formidable case-management authority." *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 508 (5th Cir. 1999) (quoting *Rosario-Diaz v. Gonzalez*, 140 F.3d 312, 315 (1st Cir. 1998)). *See also Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."). Moreover, a district court has "broad discretion in managing pretrial discovery matters," and such discretion will not be disturbed absent a clear abuse of discretion. *Republic of Ecuador v. Hinchee*, 741 F.3d 1185, 1188 (11th Cir. 2013) (citations omitted); *Companhia Energetica Potiguar v. Caterpillar Inc.*, 307 F.R.D. 620, 626 (S.D. Fla. 2015) (citing *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1306 (11th Cir. 2011)). Thus, it is inherently within the Court's discretion as to whether a stay is warranted.

As discussed *supra*, the jurisdictional and procedural history of this matter is incredibly complex, and one that cannot be compared to other cases. Filing identical Florida, Louisiana, and Virginia *Amorin* Complaints to protect Plaintiffs' claims from Defendants' jurisdictional challenges was a decision that was methodical and justified. The originating Transferor Courts where the *Amorin* complaints were filed were selected purposefully as those are the same states that Defendants targeted for sales of their products and where their drywall entered the market. A stay applicable to the non-Florida claimants in this Court would certainly serve the interests of judicial economy, since those claims cannot simply be dismissed as that might negatively impact the cases remaining in the MDL or remanded elsewhere. A stay is more appropriate because it would avoid imposing additional costs and burdens on Plaintiffs and it would avoid the possibility of prejudicing Plaintiffs in the event

11

Defendants attempt to make additional jurisdictional challenges. Moreover, staying the Non-Florida Claims will have no effect on this Court's docket statistics as they are all part of the *Amorin* complaint and thus considered one case. Furthermore, Defendants will suffer no prejudice if these actions are stayed, as that is precisely what the MDL Court is currently doing for the Florida *Amorin* claimants pending an award of common benefit attorneys' fees. Indeed, in its Jurisdiction Order, Judge Fallon recognized that dismissal with prejudice was not the appropriate vehicle since the ability to "sever and transfer any non-Louisiana" claimants was available. *Chinese Drywall*, 894 F. Supp. 2d at 902.

If the Non-Florida *Amorin* Claims are not stayed in this Court, Defendants will be at liberty to present matters addressing Plaintiffs' claims before the MDL Court, this Court, the Virginia Court and elsewhere, and all parties would be at risk of suffering the prejudice of inconsistent rulings by two or more different federal district courts. *See Alexander v. GlaxoSmithKline, LLC*, No. 15-2323, 2015 WL 5446792, at *1 (E.D. La. Sept. 15, 2015) ("[B]etween the various lawyers and judges on the cases, there is a grave potential for conflicting discovery orders. This poses not only a hardship for the defendants, but mocks an efficient and orderly judicial system.") (citation omitted). Judge Fallon's remand of 1,700 Florida cases to this Court would have served no purpose if a stay is not imposed. By the clear nature of Judge Fallon's Florida Suggestion of Remand Order attaching a list of claimants subject to said order, it is apparent that Judge Fallon intended to remand only the Florida *Amorin* cases here. The MDL Court intended to keep the non-Florida cases within the MDL (and remand the Virginia cases to Virginia). Indeed, Judge Fallon acknowledged that the Eastern District of Louisiana was "divested of jurisdiction *on the merits*" of the Florida *Amorin* claims in its Suggestion of Remand. MDL Rec. Doc. 21242, p. 11 (emphasis added). *Cf.* Virginia Suggestion of Remand Order (regarding Virginia cases) [MDL Rec. Doc. 21695, p. 11].

Nevertheless, dismissing (as opposed to staying) the Non-Florida Claims on the Florida *Amorin* Complaint is not an option, as it would prejudice those specific Plaintiffs affected by such an order while equally prejudicing the other Plaintiffs, including those from

12

Alabama, Mississippi, North Carolina, California, Georgia, Tennessee, Texas, and other jurisdictions, who endorsed this litigation strategy to preserve their rights to file protective actions to address potential venue-specific personal jurisdiction and statute of limitation defenses. Accordingly, in the interests of economy and efficiency, the claims of the non-Florida Plaintiffs in the Florida *Amorin* complaint should be stayed in this Court.

### III. CONCLUSION

Considering the foregoing, Plaintiffs respectfully move this Honorable Court to simply stay the Non-Florida *Amorin* Claims in the Florida *Amorin* Complaint as set forth in Exhibit A, attached hereto.

### CERTIFICATION OF PRE-FILING CONFERENCE PURSUANT TO S.D. FLA. L.R. 7.1(A)(3)

Counsel for Plaintiffs has engaged in extensive discussions with Defendants in a good faith effort to resolve the issues raised in this motion and has been unable to do so.

Dated: August 24, 2018

Respectfully submitted,

/s/ Patrick S. Montoya, Esq.
Patrick Shanan Montoya
Fla. Bar No. 0524441
Email: Patrick@colson.com
Colson Hicks Eidson
255 Alhambra Circle, PH
Coral Gables, FL 33134-2351
Telephone: (305) 476-7400
Facsimile: (305) 476-7444
*Interim Lead Counsel for Plaintiffs*

13

## CERTIFICATE OF SERVICE

I hereby certify that that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Southern District of Florida by using the CM/ECF System, which will send a notice of electronic filing on this 24th day of August, 2018.

/s/ Patrick S. Montoya, Esq.
Patrick Shanan Montoya
Fla. Bar No. 0524441
Email: Patrick@colson.com
Colson Hicks Eidson
255 Alhambra Circle, PH
Coral Gables, FL 33134-2351
Telephone: (305) 476-7400
Facsimile: (305) 476-7444
*Interim Lead Counsel for Plaintiffs*

## SERVICE LIST

Arnold Levin, Esq.
Sandra Duggan, Esq.
Frederick S. Longer, Esq.
LEVIN SEDRAN & BERMAN LLP
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500
*Attorneys for Plaintiffs*

Dawn Barrios, Esq.
Emma Kingsdorf Schwab, Esq.
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, Louisiana 70139,
504-524-3300
*Attorneys for Plaintiffs*

Leonard A. Davis, Esq.
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue,
New Orleans, Louisiana 70113,
PH: (504) 581-4892
*Attorneys for Plaintiffs*

Pearl Anna Robertson, Esq.
IRPINO, AVIN, HAWKINS, LLP
2216 Magazine Street
New Orleans, LA 70130
504-525-1500
*Attorneys for Plaintiffs*

James V. Doyle, Esq.
DOYLE LAW FIRM, PC
2100 Southbridge Pkwy., Suite 650
Birmingham, AL 35209
Tele: 205-533-9500 Fax: 844-638-5812
Jim.Doyle@DoyleFirm.com
*Attorney for Plaintiffs*

Jay P. Dinan
FL Bar No.: 876593
Email: jdinan@yourlawyer.com
Parker Waichman LLP
27300 Riverview Center Boulevard, Suite 103
Bonita Springs, Florida 34134
Office: 239.390.1000
Fax: 239.390.0055
*Counsel for Parker Waichman LLP Plaintiffs*

Jimmy Faircloth, Esq.
Faircloth, Melton, & Sobel
Gras Town Plaza,
412 N. 4th Street, Suite 230
Baton Rouge, LA 70802,
(225) 343-9535
*Attorney for Plaintiffs*

Scott A. George, Esq.
Jeffrey S. Grand, Esq.
Christopher Seeger, Esq.
Seeger Weiss LLP
1515 Market Street, Suite 1380
Philadelphia, PA 19102,
(215) 564-2300
*Attorney for Plaintiffs*

Jeffrey A. Breit, Esq.
BREIT DRESCHER IMPREVENTO, P.C.
600 22nd Street, Suite 402
Virginia Beach, VA 23451
757-622-6000
*Attorney for Plaintiffs*

15

Richard S. Lewis, Esq.
Hausfeld LLP,
1700 K Street, NW., Ste. 650
Washington, DC 20006
(202) 540-7200
*Attorney for Plaintiffs*

Richard J. Serpe, Esq.
LAW OFFICES OF RICHARD J. SERPE, PC
580 E. MAIN STREET, SUITE 310
Norfolk, Virginia 23510
757-233-0009
*Attorney for Plaintiffs*

David Venderbush, Esq.
Cristine McAlister Brown, Esq.
Michael P. Kenney, Esq.
Kristine McAlister Brown, Esq.
Christina Hull Eikhoff, Esq.
Bernard Taylor, Esq.
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
PH 404-881-7000 Fax: 404-881-7777
kristy.brown@alston.com

*Attorney for Defendant Taishan Gypsum Co. Ltd, & Tai'an Taishan Plasterboard Co.,*

Craig P. Kahl, Esq.
Aballi Milne Kalil, PA
2250 Suntrust International Center
One Southeast Third Avenue
Miami, Florida 33131
Tel: 305-373-6600
Tel: 305-372-5924
Fax: 305-373-7929
*Attorneys for BNBM PLC*

Eric Matthew Hairston, Esq.
Andrew K. Davidson, Esq.
L. Christopher Vejnoska, Esq.
James L. Stengel, Esq.
Orrick, Herrington & Sutcliffe, LLP
The Orrick Building
405 Howard Street
San Fancisco, CA 94105
Tel: 415-773-5700

*Attorneys for Beijing News Building Materials Public*