UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION<br><br>**THIS DOCUMENT RELATES TO:**<br><br>*Amorin, v. Taishan Gypsum Co., Ltd., f/k/a/ Shandong Taihe Dongxin Co., Ltd.*,<br>Case No. 11-cv-01395 (E.D. La.)<br><br>*Brooke, v. State-Owned Assets Supervision and Administration Commission of the State Council*,<br>Case No. 15-cv-4127 (E.D. La.) | MDL No. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |

**CNBM AND BNBM ENTITIES' MEMOMRANDUM IN SUPPORT OF MOTION TO REJECT THE PSC'S NOTICE OF CLARIFICATION REGARDING THE COMPOSITION OF THE *AMORIN* CLASS**

**I.    INTRODUCTION**

On August 28, 2018, the Plaintiffs' Steering Committee ("PSC") filed a "Notice of Clarification Regarding the Composition of the *Amorin* Class." Rec. Doc. 21741. That "Notice" seeks no relief. Instead, under the guise of "clarification," it unilaterally proclaims an expansion of the certified class to comprise former owners. *Id.* No matter the label the PSC affixes its filing, the Court should view it for what it is: a proposed modification of the class definition.

To prove the point, the Court need look no further than the text of the class definition itself. It applies to "all owners"—not former owners, not prior owners, just owners. The PSC knew how to include "prior" owners in a class definition; they used it in the *Amorin* complaints. But they didn't use that language in the class definition, which controls. Even if the Court were to look beyond the definition's plain language, it would find copious confirmation of the parties'

understanding of that plain language. Time and again, the PSC has acknowledged the class is limited to current owners.

Any request to alter the class definition—which, make no mistake, this is—necessitates a new showing that the PSC has satisfied the requirements of Rule 23. The PSC does not even attempt to make that showing, much less satisfy the "rigorous analysis" standard. And even if the PSC were to submit a proper motion to expand the class, that eleventh-hour request should still be denied because it would result in the PSC's own alleged worst enemy: delay. The PSC's so-called "clarification" effort should be denied, and the Court should move forward with expeditious resolution of the litigation.

## II. RELEVANT BACKGROUND

On September 26, 2014, the Court certified the *Amorin* class as follows:

> **All owners** of real property in the United States, who are named Plaintiffs on the complaints in *Amorin*, *Germano*, *Gross*, and/or *Wiltz* (*i.e.*, not an absent class member), asserting claims for remediated damages arising from, or otherwise related to Chinese Drywall manufactured, sold, distributed, supplied, marketed, inspected, imported or delivered by the Taishan Defendants.

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2014 WL 4809520, at *16 (E.D. La. Sept. 26, 2014) (emphasis added).[1] The clarity of the class definition has been underscored by the PSC's own representations to the Court.

Most recently, in response to the Court's direct questioning as to whether the *Amorin* "class … include[s] all owners," the PSC stated without qualification, the class extends solely to "*current owners* at the time, yes." Aug. 15, 2018 Hearing Tr. at 32 (emphasis added). This is no isolated representation. The PSC's class damages formula is predicated upon *and limited to*

---

[1] The PSC also inexplicably includes *Brooke* in its caption despite the fact that no class has been certified there, nor has the PSC even moved for it.

2

current homeowners.  *See* Rec. Doc. 20652-2 at 7 (PSC explaining that "the formulaic remediation damages of the homes" applies only to "current owners").  Indeed, their expert report submitted just before the June 9, 2015 hearing removed all remediation damage calculations for "former, not current, property owners."  Rec. Doc. 21681 at 22.  As the PSC explained, it "intend[ed] for [former owner] claims to be deferred until a subsequent Phase and not presented for *class-wide* damages to be assessed at the June 9, 2015 hearing."  *Id.* (emphasis added); *see also* Rec. Doc. 19197 at 4-5 (PSC's post-hearing proposed FOFCOL: "[t]he Court was *not* presented with evidence relating to remediation damages for former homeowners or any other category of damages" but only "proof on a square foot and class-wide basis of the remediation damages suffered by *current property owners*.") (emphasis added).  Thus, by the PSC's own admission, the class to whom the class damages formula applies comprises current owners only.

What's more, the PSC then used this composition of the class—limited to current owners—to justify the Court's class certification decision in the face of Defendants' decertification motions.  Rec. Doc. 20652-2 at 7, 15 (PSC asserting that Rule 23(b)'s predominance requirement is satisfied because "[t]he formulaic remediation damages of the homes of *current owners*" and "how such damages are to be quantified … remains the dominant issue herein") (emphasis added).  Now, however, the PSC seeks to simply slot former owners into the formulaic process through expansion of the class definition.

The Court should decline the PSC's invitation to error.  To blue-pencil the class definition would necessitate full briefing and the required "rigorous analysis" of whether the expanded class meets the criteria of Rule 23, which would then trigger the right to seek immediate appellate review under Rule 23(f).

**III.   ARGUMENT**

The PSC's labeling its filing a "clarification" does not make it so.  This Court must resolve for itself whether the request is, in fact, what the PSC claims it is—a clarification—or a stealth modification of the class definition.  The starting point for that inquiry is a familiar one: the "plain language of the class definition." *In re Cement & Concrete Antitrust Litig.*, 817 F.2d 1435, 1443 (9th Cir. 1987), *abrogated on other grounds by California v. ARC Am. Corp.*, 490 U.S. 93 (1989); *Churlin v. Shalala*, No. 92-cv-7299, 1993 WL 372210, at *3 (N.D. Ill. Sept. 21, 1993) ("In analyzing the definition of the *Johnson* class, the court should construe the 'class definition in much the same way that the court might construe the language of a contract or statute.'") (citation omitted).

Here, the plain language of the class definition is clear.  It applies to "all owners." *Chinese Drywall*, 2014 WL 4809520, at *16.  Had the PSC intended a broader definition, it certainly knew how to say so.  The *Amorin* complaints proposed a much larger class definition made up of "owners and residents (past or present) of real property." *Amorin v. Taishan Gypsum Co., Ltd.*, No. 11-cv-1395 Dkt. No. 1 at 34 (E.D. La filed June 13, 2011).  But the PSC ultimately chose to present—and the Court adopted—a more limited class of "all owners."  Given the unmistakable clarity of the class definition, there is no cause to look beyond it.  But even if the Court were inclined to do so (which it should not), it would encounter the PSC's repeated affirmations, culminating in its statement just two weeks ago in open court, that the class—and class to whom the damages formula applies—is limited to current property owners. *See infra* at 2-3.

The PSC's only justification for why, despite the plain language and its own statements to the contrary, the class should be construed as extending to former owners is because the

4

"Class Notice and Supplemental Class Notice made clear that the *Amorin* class 'includes all current and former owners.'" Rec. Doc. 21741 at 1 (citing Rec. Docs. 18028-1 at n.2; Rec. Doc. 18086-18 at n.2). What that ignores is that "it is the certification order, and not the notice" controls. *Carlough v. Amchem Prods., Inc.*, 158 F.R.D. 314, 334 (E.D. Pa. 1993). Where the two are in accord, there is, of course, no problem. *Id.* at 334-35. But where, as here, an incongruity exists, it must be resolved in favor of the class definition. *Id.* at 334.

To be clear, the distinction between "clarification" and "modification" has significant implications. That's because a broadening of the class (as opposed to a mere clarification) requires a distinct Rule 23 analysis. *See, e.g.*, *Hughes v. Gulf Interstate Field Servs., Inc.*, No. 2:14-cv-000432, 2015 WL 4112312, at *7 n.2 (S.D. Ohio July 7, 2015) ("The Court notes that broadening the requested class is not likely to satisfy the requirements of Rule 23, while evidence demonstrating that a narrower class or subclasses meet the requirements could lead to a different result."); *Whitton v. Deffenbaugh Disposal, Inc.*, No. 12-2247-CM, 2014 WL 11485715, at *6 (D. Kan. Oct. 28, 2014) (in certifying class, court explained that if it subsequently "finds that plaintiff's new Contract Class satisfies Rule 23(b)'s predominance and superiority factors, the court can expand plaintiff's newly-proposed class"); *Esposito v. Mister Softee, Inc.*, No. 75 C 555, 1976 WL 1354, at *1 (E.D.N.Y. Dec. 8, 1976) (applying Rule 23 requirements and concluding they were not satisfied as to plaintiffs' expanded class definition); *see also Fosbre v. Las Vegas Sands Corp.*, No. 2:10-cv-00765-APG-GWF, 2015 WL 3722496, at *2 (D. Nev. June 15, 2015) (engaging in new and detailed Rule 23 analysis following request to expand class definition).

It is therefore incumbent upon the PSC to demonstrate why an expanded class would satisfy Rule 23. The PSC has not even attempted to do so—much less demonstrated it can

5

withstand the requisite rigorous analysis. *Spence v. Glock, Ges.m.b.H.*, 227 F.3d 308, 310 (5th Cir. 2000). While Defendants do not purport to address all arguments the PSC might advance— indeed, that would be impossible given that the PSC has not detailed them—it is highly unlikely the PSC could satisfy its burden.

An expanded class that includes former property owners would present a wide range of intractable individual issues unique to each owner. For instance, unlike current owners, who are more likely to have been impacted by defective drywall in their homes, former owners will have to demonstrate that the drywall was installed *and* detected during the period of their property ownership. If they remediated before they sold the property, then the measure of damages would presumably relate to the actual cost and scope of their remediation. But if they sold the property without remediating it, then the scope of cost of a theoretical remediation becomes irrelevant. The measure of damages would presumably relate instead to allegations of diminution in value related to selling an unremediated property—requiring a property-specific, contextual market value analysis. These disparate situations cannot merit classwide treatment.

Layer on top of that the numerous state choice of law issues occasioned by these inquiries because the Court has asserted jurisdiction over the claims of non-residents. *See, e.g.*, *Turner v. Murphy Oil USA, Inc.*, 234 F.R.D. 597, 608 (E.D. La. 2006) ("[T]he Fifth Circuit ha[s] refused to certify class actions … where the laws of multiple states are potentially applicable to the plaintiffs' claims, on the grounds that the claims are unmanageable and present too many issues requiring individual resolution."). Moreover, a class that includes both former and current owners would create irreconcilable tensions. A current owner and former owner of the same property would, for example, be at loggerheads as to whether drywall was discovered prior to a sale and whether and to what extent it was accounted for in the sale price. And those

hypothetical class members would most certainly have different damages, defying the notion of a class. Finally, broadening the class to include former owners would run headlong into *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013), because the damages model the PSC featured in its class certification motion is presumptively inapplicable to the overwhelming majority of former owners who can no longer undertake remediation efforts. The PSC has never addressed any of these Rule 23 issues as applied to former owners—nor has this Court. That failure dooms the PSC's request.

And, even if the PSC were to try to remedy that defect with a new filing now, the Court should decline to entertain it at this late stage of the litigation. To do so on the cusp of selecting and setting in motion a trial plan would result in undue delay. Consider the timing. Following a properly submitted request by the PSC, the Court would have to afford Defendants an opportunity to respond, and the PSC would no doubt submit a reply. The briefing will, on its own, consume a number of weeks—to say nothing about the prospect of the Court hearing argument and rendering a decision. In the interim, it would make little sense to proceed full steam ahead because resolution of this issue would impact the course of proceedings insofar as the class definition is inexorably tied to application of the class damages formula.

Adding to the disruptive nature of the PSC's request is the fact that Florida *Amorin*—one of the three identical class complaints—has already been remanded and Virginia *Amorin* is en route. In proceeding in this fashion, this Court expressly noted it was doing so because "[n]o further pretrial motions raising common questions are pending in these cases…." Rec. Doc. 21695 at 10. Now, however, the PSC presents a common question, despite only one class complaint remaining before this Court. Entertaining the PSC's request would therefore create significant incongruities between the cases going forward.

In addition to the litigation-wide asymmetry and prospective delay before this Court, the PSC's submission could also result in delay occasioned by an immediate appeal. Endorsement by this Court of the PSC's filing, irrespective of its label, would trigger Defendants' rights under Rule 23(f) because "an order materially altering a previous order granting or denying class certification is within the scope of Rule 23(f)…." *Matz v. Household Int'l Tax Reduction Inv. Plan*, 687 F.3d 824, 826 (7th Cir. 2012); *In re Wholesale Grocery Prod. Antitrust Litig.*, 849 F.3d 761, 765 (8th Cir. 2017) (recognizing that when a district court alters the "status quo" with respect to the class certification definition, a Rule 23(f) appeal may be entertained); *Carpenter v. Boeing Co.*, 456 F.3d 1183, 1191 (10th Cir.2006) ("when the district court accepts a suggestion and the certification decision is changed, the new order, to the extent it modifies the prior order, is [an order subject to] … an interlocutory appeal under Rule 23(f)"). And embracing the PSC's nomenclature—i.e., "clarification"—would not insulate the decision from appeal because appellate courts do not accept such characterizations at face value; rather, they "review do novo the district court's analysis of the language of the class definition." *In re Cement and Concrete Antitrust Litig.*, 817 F.2d at 1443. In other words, when a district court purports to "interpret"—rather than modify—"an existing class definition, the [district] court does not exercise its discretion." *Id.* For that reason, the court of appeals reviews the district court's professed clarification much as it would "the language of a contract or a statute": with no deference. *Id.* Accordingly, if the PSC's proposed "Notice" is endorsed in any way, it would trigger Rule 23(f) and occasion further delay.

**IV.     CONCLUSION**

The Court should reject the PSC's newly invented efforts to "clarify" the class definition. The PSC fails to satisfy the requirements of Rule 23 and its request is untimely. If not rejected

outright, the Court should construe the PSC's submission as a request to modify the class definition subject to the requirements of Rule 23, necessitating complete briefing and a detailed order from this Court.

Dated:   September 6, 2018

Respectfully submitted,

*/s/ L. Christopher Vejnoska*

| | |
|---|---|
| L. Christopher Vejnoska (CA Bar No. 96082)<br>Eric Matthew Hairston (CA Bar No. 229892)<br>ORRICK, HERRINGTON & SUTCLIFFE LLP<br>The Orrick Building<br>San Francisco, CA  94105<br>T:  415-773-5700<br>Email:  cvejnoska@orrick.com<br>            ehairston@orrick.com | Ewell E. Eagan, Jr. (LA Bar No. 5239)<br>Donna Philipps Currault (LA Bar No. 19533)<br>GORDON, ARATA, MONTGOMERY, BARNETT, MCCOLLAM, DUPLANTIS & EAGAN, LLC<br>210 St. Charles Avenue, 40th Floor<br>New Orleans, LA 70170-4000<br>Tel: (504) 582-1111<br>Email: eegan@gamb.law<br>           dcurrault@gamb.law |
| James L. Stengel (NY Bar No. 1800556)<br>Xiang Wang (NY Bar No. 4311114)<br>ORRICK, HERRINGTON & SUTCLIFFE LLP<br>51 West 52nd Street<br>New York, NY, 10019<br>T:  212-506-5000<br>Email:  jstengel@orrick.com<br>            xiangwang@orrick.com | Eric A. Shumsky (D.C. Bar No. 477926)<br>ORRICK, HERRINGTON & SUTCLIFFE LLP<br>Columbia Center<br>1152 15th Street NW<br>Washington, D.C. 20005<br>T:  202-339-8400<br>Email:  eshumsky@orrick.com |

*Counsel for CNBM Co. Ltd., BNBM (Group) Co. Ltd., and BNBM PLC*

Harry Rosenberg (LA Bar No. 11465)
PHELPS DUNBAR LLP
365 Canal Street, Suite 2000
New Orleans, LA 70130-6534
T:  (504) 584-9219
Email:  harry.rosenberg@phelps.com

*Counsel for BNBM (Group) Co. Ltd. and BNBM PLC*

9

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and email and upon all parties by electronically uploading the same to File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on September 6, 2018.

/s/ *L. Christopher Vejnoska*

L. Christopher Vejnoska (CA Bar No. 96082)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Tel: 415-773-5700
Fax: 415-773-5759
Email: cvejnoska@orrick.com

*Counsel for CNBM Co. Ltd., BNBM (Group) Co. Ltd., and BNBM PLC*