# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL NO. 2047** |
| **THIS DOCUMENT RELATES TO:**<br><br>*Brooke et al. v. State-Owned Assets Supervision and Administration Commission of the State Council, et al.*, Case No. 15-4127 (E.D. La.) | **SECTION: L**<br>**JUDGE FALLON**<br>**MAG. JUDGE WILKINSON** |

## PLAINTIFFS' STEERING COMMITTEE'S RESPONSE
## IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ....................................................................................... iii

I.   INTRODUCTION ........................................................................................... 1

II.  ARGUMENT ................................................................................................... 3

    A.   THE CONDUCT OF TAISAN SHOULD BE IMPUTED TO BNBM PLC
        AND BNBM GROUP AS THE TAISHAN DEFENDANTS ARE PART
        OF A SINGLE BUSINES ENTERPRISE ........................................................ 3

    B.   PLAINTIFFS' CLAIMS ARE TIMELY FILED ................................................ 6

        1.   The *Brooke* Plaintiffs' Claims were Tolled by the Doctrine
            of *Contra Non Valentem* ................................................................... 8

        2.   The *Brooke* Plaintiffs' Claims are Subject to Tolling under Louisiana
            Code of Civil Procedure Article 596 and *American Pipe* ..................... 12

            a.   The *Silva* Action filed in the Civil District Court for
                the Parish of Orleans Suspends Prescription as to
                at Least the *Brooke* Plaintiffs Who Fall within the
                Proposed Class Definition ........................................................... 12

            b.   There was never a denial of class certification
                in this case ................................................................................... 13

            c.   Louisiana Code of Civil Procedure Article 596
                and *Quinn* ................................................................................... 13

            d.   This is Not a "Stacking" of Class Actions, and the Recent
                Supreme Court Holding in *China Agritech* Does Not
                Apply ........................................................................................... 15

    C.   THE PLAINTIFFS' COMPLAINT SUFFICIENTLY STATES THEIR
        GROUNDS FOR RELIEF ................................................................................ 17

        1.   The Defendants Can Be Lumped Together Because They Are a
            Single Business Enterprise ................................................................... 18

        2.   Rule 9(h) Does Not Apply to Claims Brought Under the LPLA ........... 19

        3.   The LPLA Does Not Apply to the Florida or
            Virginia Plaintiffs ................................................................................ 20

i

4.      Plaintiffs Have Sufficiently Pled Negligence ........................................21

5.      Strict Liability ........................................................................22

6.      Unjust Enrichment is not Preempted for All Plaintiffs .........................23

7.      Plaintiffs' Redhibition Claim Should Survive ...................................... 24

D.      DEFENDANTS' CONTENTION THAT THEY HAVE NOT BEEN PROPERLY SERVED IS WITHOUT MERIT.................................................25

III.      CONCLUSION.......................................................................................... 27

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                                          **<u>Page(s)</u>**

*Am. Pipe & Const. Co. v. Utah*,
   414 U.S. 538 (1974) .................................................................................................14

*Babkow v. Morris Bart, P.L.C.*,
   726 So. 2d 423 (La. App. 1998) ...............................................................................9

*Boyle v. Mann*,
   4 La. Ann. 170, 1849 WL 3680 (1849) ...................................................................9

*Brown v. ANA Ins. Grp.*,
   994 So. 2d 1265 (La. 2008) ......................................................................................5

*Walter v. Drayson*,
   538 F.3d 1244 (9th Cir. 2008) ..................................................................................2

*Carter v. Haygood*,
   892 So. 2d 1261 (La. 2005) ......................................................................................8

*Cassidy v. Ford Motor Co.*,
   2016 WL 687621 (E.D. La. Feb. 19, 2016) ...........................................................25

*China Agritech, Inc. v. Resh*,
   138 S. Ct. 1800 (2018) ......................................................................................16, 17

*Corsey v. State ex rel. Dep't of Corr.*,
   375 So. 2d 1319 (1979) .............................................................................................9

*Crown, Cork & Seal Co., Inc. v. Parker*,
   462 U.S. 345 (1983) .................................................................................................15

*Galloway v. State through Dept. of Transp. and Development*,
   654 So. 2d 1345 (La. 1995) ....................................................................................22

*Green v. Champion Ins. Co.*,
   577 So. 2d 249 (La. Ct. App. 1991) ....................................................................4, 5

*Hammons v. ABB C-E Services*,
   671 So. 2d 370 (La. App. 1995) ...............................................................................9

*Hargrave v. Fibreboard*,
   710 F.2d 1154 (5th Cir.1983) ...................................................................................4

*Harvey v. Dixie Graphics, Inc.*,
   593 So. 2d 351 (La. 1992) ................................................................8

*Hollowell v. Orleans Reg'l Hosp. LLC*,
   217 F.3d 379 (5th Cir. 2000) ..........................................................5

*Huntsman Int'l LLC v. Praxair, Inc.*,
   201 So. 3d 899 (La. App. 4 Cir. 2016) ..........................................23

*Hyman v. Hibernia Bank & Trust*,
   71 So. 598 (La. 1916) .....................................................................9

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
   742 F.3d 576 (5th Cir. 2014) ..........................................................7

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
   2018 WL 279629  (E.D. La. Jan. 2, 2018) ...................................19

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
   894 F. Supp. 2d 819 (E.D. La. 2012) .............................................5

*In re Chinese Manufactured Drywall Products Liability Litigation*,
   680 F. Supp. 2d 780 (E.D. La. 2010) ...............................17, 18, 19

*In re Deepwater Horizon*,
   808 F. Supp. 2d 943 (E.D.La. 2011) ............................................11

*In re Vioxx Products Liab. Litig.*,
   478 F. Supp. 2d 897 (E.D. La. 2007) ...........................................14

*Justiss Oil Co., Inc. v. T3 Energy Services, Inc.*,
   2011 WL 539135 (W.D. La. Feb. 7, 2011) ..................................25

*Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*,
   677 F.2d 1045 (5th Cir. 1983) ......................................................17

*Klaxon Co. v. Stentor Electric Mfg. Co.*,
   313 U.S. 487 (1941) .................................................................20, 21

*Marin v. Exxon Mobile Corp.*,
   48 So. 3d 234 (La. 2010) ..............................................................10

*Martin v. Jennings*,
   10 La.Ann. 553 (La. 1855) .............................................................9

*Murry v. Aran Energy Corp.*,
    863 F. Supp. 315 (E.D. La. 1994) ...................................................................22

*Nathan v. Carter,*
    372 So. 2d 560 (La. 1979) ...........................................................................9

*Plaquemines Parish Comm'n Council v. Delta Develop. Co.*,
    502 So.2d 1034 (La. 1987) ...........................................................................9

*Prevo v. State ex rel. Dept. of Public Safety and Corrections Div. of
    Probation and Parole,*
    187 So. 3d 395 (La. 2015) ...........................................................................8

*Quinn v. Louisiana Citizens Property Ins. Corp.*,
    118 So. 3d 1011 (La. 2012) .............................................................11, 13, 14

*S.J. v. Lafayette Parish Sch. Bd.*,
    41 So. 3d 1119 (La. 2010) ...........................................................................22

*South Central Bell Telephone Co. v. Texaco, Inc.*,
    418 So. 2d 531 (La. 1982) ...........................................................................10

*Southwest Louisiana Hosp. Ass'n. v. BASF Const. Chemicals, LLC*,
    947 F.Supp.2d 661 (W.D. La. 2013) .............................................................25

*Stahl v. Novartis Pharms. Corp.,*
    283 F.3d 254 (5th Cir.2002) .......................................................................19

*Wyman v. Dupepe Constr.*,
    24 So. 3d 848 (La. 2009) ...........................................................................12

**<u>Statutes</u>**

La. Code Civ. Pro. art. 596 ...................................................................... passim

La. Code Civ. Pro. art. 3493 ...........................................................................10

La. Civ. Code Ann. art. 2520 ......................................................................24, 25

La. Civ. Code Ann. art. 2524 ...............................................................13, 24, 25

La. Civ. Code Ann. art. 3462 ...........................................................................15

La. Civ. Code Ann. art. 3542 ...........................................................................20

La. Civ. Code Ann. art. 3545 ......................................................................20, 23

**<u>Rules</u>**

F.R.C.P. 12 ................................................................................................................................7

Fed. Rule Civ. Pro. 8(d)(3) ....................................................................................................24

Federal Rules of Civil Procedure 12(b)(2), 12(b)(5), 12(b)(6) .....................................................1

## I.      **INTRODUCTION**

Now into the 10th year of this litigation, the Plaintiffs' Steering Committee ("PSC") submits this Response to Beijing New Building Materials Public Limited Company ("BNBM PLC" or "BNBM") and Beijing New Building Material (Group) Co., Ltd. ("BNBM Group")'s motion to dismiss made pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(5), 12(b)(6), 8 and 9(b), which addresses the Omni Complaint filed in Louisiana (Rec. Doc. 19984). The Defendants' motion was originally filed on January 12, 2016, two days in advance of the then-scheduled status conference. At the January 14, 2016 Status Conference, the Parties agreed to maintain the current briefing schedule on the Taishan Defendants' other extant motions to dismiss.[1]   The parties then entered into a standstill agreement (Rec.Doc. 20030) and no action was taken on the matter even after CNBM caused Taishan to walk away from its settlement. Thereafter, the motion lay dormant for the next 19 months until the Court Ordered the PSC to respond on August 23, 2018 (Rec. Doc. 21719).   Notwithstanding that in the interim this Court issued an extensive ruling on personal jurisdiction over BNBM PLC and BNBM Group in the context of other related motions, April 21, 2017 Order & Reasons (Rec. Doc. 20739) (hereafter "Jurisdiction O&R"), and the parties have exchanged trial plans and motions in the MDL[2] which address the means to adjudicate the claims of the *Brooke* plaintiffs, these Defendants made no effort to substitute or amend their stale papers.  It would have been of great service to the

[1] *See In re Chinese Manufactured Drywall Prod. Liab. Litig.*, MDL 2047, January 14, 2016 Status Conference Transcript at 8:19-23 (E.D. La. Jan. 14. 2016) ("The PSC on January 22 has a due date on briefing for the BNBM/CNBM jurisdiction issues.  We have continued since the last status conference to receive BNBM documents, but it should not delay the filing of our briefs.") (Attached hereto as Exhibit "A").

[2] *See, e.g*., Amended Memorandum filed by Plaintiffs' Steering Committee, in Support of MOTION for Severance and Suggestion of Remand (Rec. Doc. 21752).

litigants and the Court to have received revised papers but consistent with the practices of the

Taishan Defendants[3] and their national counsel's efforts to delay, prolong and complicate these

proceedings,[4] no updates have been submitted.

Consequently, aided by this Court's Jurisdiction O&R, the PSC's response will be

severely truncated. The PSC does not wish to burden the Court with the need to relitigate facts

that this Court has already deemed sufficient to establish that personal jurisdiction may be

imposed upon BNBM PLC and BNBM Group due to its findings that both BNBM PLC and

BNBM Group are part of a single business enterprise with Taishan have been proven under

Louisiana law. These are matters that the BNBM entities could have and should have addressed

after this Court's Jurisdiction O&R issued, but for strategic or other reasons they chose not to

engage. Suffice it to say, personal jurisdiction over BNBM PLC and BNBM Group is proper

under Louisiana law.[5]

---

[3] In the Jurisdiction O&R this Court defined the Taishan defendants to be comprised of the following entities: Taishan Gypsum Co., Ltd. (hereafter "Taishan"); BNBM; BNBM Group; China National Building Materials Co., Ltd. (hereafter "CNBM"); China National Building Materials Group Corporation (hereafter "CNBM Group"); and Tai'an Taishan Plasterboard Co., Ltd. (hereafter "TTP"). Jurisdiction O&R at 91 n.28.

[4] The orchestration of the activities of the single business enterprise that comprises the Taishan Defendants virtually parallels sanctionable corrupt behavior. *C.f. Walter v. Drayson,* 538 F.3d 1244 (9th Cir. 2008).

[5] The BNBM entities' motion addresses claims of plaintiffs outside of Louisiana. Those plaintiffs' claims are more appropriately addressed in connection with ongoing proceedings involving the Amorin and Brooke actions for each of the jurisdictions where Plaintiffs were caused to prove (over Taishan's denials) that the product entered the United States (*i.e.*, Louisiana, Florida and Virginia). These matters are the subject of current and future proceedings before this Court. The Court is presently engaged in motions practice for Virginia and Louisiana case, and has already remanded the Florida Amorin action. It is likely that the Judicial Panel on Multidistrict Litigation will entertain this Courts' Suggestion of Remand regarding the Virginia Amorin action and enter a remand to Virginia,

After litigating these actions for close to a decade, the Defendants' additional arguments suggesting that the allegations of the Complaint are not adequate to state a cause of action under Louisiana's Product Liability Act or Redhibition are not justified. Plaintiffs recognize that certain alleged Louisiana-based claims are subsumed by either the LPLA or Redhibition claims. To the extent that the Defendants contend that even these claims are not adequately stated, Plaintiffs will address the plausibility of each of their state law claims. Equally invalid is the Defendants' statute of limitations defense, which is not specific to any plaintiff and so factually pregnant that only a jury could resolve the contentions raised as to whether the matter can be globally adjudicated on a class wide basis. Finally, Defendants' dispute with this Court's order permitting alternative service on counsel is an improper means to seek reconsideration and invalid in any event.

## II.   ARGUMENT

### A.   THE CONDUCT OF TAISAN SHOULD BE IMPUTED TO BNBM PLC AND BNBM GROUP AS THE TAISHAN DEFENDANTS ARE PART OF A SINGLE BUSINESS ENTERPRISE.

Plaintiffs' Omnibus Response in Opposition to Defendants' Motions to Dismiss (Rec. Doc. 21641) (hereafter "Omnibus Response"), a 214 page dossier employing 280 exhibits, meticulously details how the CNBM Group operates as a single business entity. It was accompanied by the Plaintiffs' Steering Committee's Supplement to Omnibus Response in Opposition to Defendants' Motions to Dismiss (Rec. Doc. 20585-2), which further describes the events leading up to BNBM's total and complete acquisition of Taishan. Together, these papers amply supported this Court's Jurisdiction O&R's factual findings that these defendants are in fact as a single business enterprise such that Taishan's contacts with the Louisiana could be

imputed to BNBM PLC and BNBM Group for purposes of establishing personal jurisdiction based on Louisiana law.[6]

Plaintiffs' Omnibus Response and Supplement thereto (which are incorporated herein by reference) go to great lengths to establish the SBE theory using Louisiana's non-exhaustive eighteen-factor test, in which no single factor is dispositive. *See Green v. Champion Ins. Co.*, 577 So. 2d 249, 251-53 (La. Ct. App. 1991). This illustrative, non-exhaustive list of factors used to determine whether, under the totality of the circumstances, one or more entities constitute a "single business enterprise," is as follows:

> (1)  corporations with identity or substantial identity of ownership, that is, ownership of sufficient stock to give actual working control; (2) common directors or officers; (3) unified administrative control of corporations whose business functions are similar or supplementary; (4) directors and officers of one corporation act independently in the interest of that corporation; (5) corporation financing another corporation; (6) inadequate capitalization ("thin incorporation"); (7) corporation causing the incorporation of another affiliated corporation; (8) corporation paying the salaries and other expenses or losses of another corporation; (9) receiving no business other than that given to it by its affiliated corporations; (10) corporation using the property of another corporation as its own; (11) noncompliance with corporate formalities; (12) common employees; (13) services rendered by the employees of one corporation on behalf of another corporation; (14) common offices; (15) centralized accounting; (16) undocumented transfers of funds between corporations; (17) unclear allocation of profits and losses between corporations; and (18) excessive fragmentation of a single enterprise into separate corporations.

---

[6] In addition to SBE, the Court found an alter ego relation exists between BNBM and Taishan. *See* Jurisdiction O&R at 75 ("Thus, viewing '[a]ll the relevant facts and circumstances surrounding the operations of the[se] parent[s] and subsidiary[ies]' in the light more favorable to Plaintiffs, the Court concludes that Taishan is an alter ego of BNBM under Louisiana law. Hargrave, 710 F.2d at 1160.").

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 894 F. Supp. 2d 819, 894-95 (E.D. La. 2012) (citing *Green,* 577 So. 2d at 257–58; *Hollowell v. Orleans Reg'l Hosp. LLC*, 217 F.3d 379, 385-89 (5th Cir. 2000)).

Following an in-depth analysis of all of the evidence brought to the Court, it concluded that the *Green* multi-factorial analysis was satisfied:

> As discussed above, the corporate entities within the CNBM Group had common ownership, directors, officers, and employees; factors one, two, and three strongly support a finding of a single business enterprise. Similarly, the Court has already addressed that while the entities do not share permanent offices, at least some officers use the office space of one corporation in their work for a related entity, and shareholders of one entity have used other entities' offices for their shareholder meetings; this factor is neutral.
>
> The evidence demonstrates that these entities were all controlled—directly and indirectly—by CNBM Group. As the ultimate authority, or actual shareholder, over all the subsidiaries, CNBM Group appointed directors and officers, approved loan guarantees, directed its subsidiaries on how to vote, audited and gave recommendations for corrective action to its subsidiaries, and even specified the safety regulations and production standards for Taishan's drywall. See 4/15/2006 Taishan Board of Director Resolution. While CNBM Group is no longer a party to this case, its control and dominance is still considered when evaluating whether it and its downstream publicly-owned corporate entities constitute a single-business enterprise.
>
>         \*    \*    \*
>
> Applying the factors for a single-business enterprise to the facts of this case, the Court finds the evidence supports the existence of a single business enterprise under Louisiana law. These entities were led and controlled by CNBM Group, who ensured each of the entities under it were working to maximize the profits of CNBM Group. "When a corporation integrates their resources . . . to achieve a common business purpose, each business may be held liable for the wrongful acts done in pursuit of that purpose." Brown, 996 So. 2d at 1267 n.2. Here, the entities within the CNBM Group corporate umbrella have integrated their resources to ensure their success as an international building materials

company. Thus, each business within the larger corporate family—
including BNBM, BNBM Group, and CNBM—may be held liable
for the wrongful acts done in pursuit of that purpose. *Id.*

\*     \*     \*

CNBM Group controlled, directed, and monitored the activities of
its subsidiaries. It provided approval for financing to build drywall
factories, established manufacturing guidelines, and set production
limits. CNBM Group, along with its subsidiaries clearly
contemplated that Taishan drywall would end up in the forum
states; and received the financial benefit from these sales. Under
the Louisiana single-enterprise doctrine, the Court finds that
Taishan, BNBM, BNBM Group, and CNBM constitute a single
business enterprise. This single business enterprise is therefore
considered one entity for the purposes of imputing personal
jurisdiction under Louisiana law.[7]

The Court properly determined that BNBM PLC and BNBM Group were part of the

business group controlled by CNBM Group which is a single business enterprise. Jurisdiction

O&R at 79. As a consequence, BNBM PLC and BNBM Group should have imputed to them

Taishan's ample contacts with Louisiana such that personal jurisdiction is properly asserted

against them in Louisiana.

**B.      PLAINTIFFS' CLAIMS ARE TIMELY FILED.**

An original class of plaintiffs was certified against the Taishan defendants by the District

Court on September 26, 2014.[8] Beyond the common injuries and remedies uniting the plaintiffs

as a class, they were further united by the default judgment against defendant Taishan that was

---

[7] Jurisdiction O&R at 76-79.

[8] FINDINGS OF FACT AND CONCLUSIONS OF LAW WITH RESPECT TO PLAINTIFFS' OMNIBUS MOTION
FOR CLASS CERTIFICATION PURSUANT TO RULES 23(a)(1)-(4) AND 23 (b)(3). [Rec Doc. 18028].

granted by this Court in the various suits filed as class actions and in intervention.[9] Less than a

year after this class was certified, the *Brooke* complaint was filed, on September 4, 2015.[10]

The Defendants' Motion to Dismiss not only misapplies *American Pipe*,[11] but completely

ignores the doctrine of *contra non valentem*. It is well-settled that Louisiana plaintiffs are not

required to plead their claims within one year from the date of the *act* that caused them harm –

particularly when, as here, the condition is latent, the damages take time to become manifest, and

the defendants take steps to actively conceal their responsibility for the damages complained of.

Even assuming *arguendo* that media coverage were sufficient to place on constructive notice of a

problem with Chinese drywall generally,[12] (which is denied), that is not sufficient to establish

that each and every plaintiff knew, as of September 4, 2014, or at any time, that his or her

property, in particular, was contaminated with Chinese drywall, or that it was manufactured by

one of the Taishan Defendants.  Plaintiffs believe that all claims arising out of the transactions

---

[9] *Id.* at 5-6; *see also* Rec. Doc. 487 (granting default judgment against Taishan for *Germano* plaintiffs); *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 742 F.3d 576 (5th Cir. 2014) (affirming default judgment against Taishan); Rec. Doc. 3013 (granting default judgment against Taishan for *Germano* intervenors); Rec. Doc. 7302 (granting default judgment against BNBM, BNBM Group, CNBM, and CNBM for *Gross* plaintiffs); Rec. Doc. 15687 (again finding Taishan affiliates in default in *Gross* omnibus intervention complaint); Rec. Doc. 7735 (holding BNBM default in *Wiltz* proceeding); Rec. Doc. 17814 (granting default judgment against Taishan, TTP, and CNBM for *Amorin* plaintiffs); Rec. Doc. 17815 (granting default against Taishan, TTP, BNBM, CNBM, and CNBM Group with respect to the *Amorin* plaintiffs filed in Eastern District of Virginia).

[10] PLAINTIFFS' OMNIBUS CLASS ACTION COMPLAINT (XX), Case No. 2:15-cv-04127  Rec. Doc. 1.

[11] *See generally* DEFENDANTS BEIJING NEW BUILDING MATERIALS PUBLIC LIMITED COMPANY AND BEIJING NEW BUILDING MATERIAL (GROUP) CO., LTD.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO F.R.C.P. 12((B)(2), 12(B)(5), 12(B)(6), 8, AND 9(B) at pp.17-19. [Rec. Doc. 19984-1].

[12] *See* DEFENDANT'S MEMO, at p.17.

and occurrences described in the *Silva* Petitions[13] and the *Germano/Gross/Wiltz/Amorin*

Complaints are tolled under Louisiana Code of Civil Procedure Article 596 and/or *American*

*Pipe.* Or, alternatively, the Third Category of *contra non valentum.* Finally, and in the

alternative, each Louisiana plaintiff should be afforded the opportunity to come forward with

evidence that he or she did not reasonably know of his or her cause of action until September 4,

2014, or thereafter.

        **1.**        **The *Brooke* Plaintiffs' Claims were Tolled by the Doctrine
of *Contra Non Valentem.*

       In Louisiana, "our courts have recognized a jurisprudential exception to prescription

known as *contra non valentem non currit praescriptio*, which means that prescription does not

run against a person who could not bring his suit. *Carter v. Haygood*, 04-0646 (La. 1/19/05), 892

So. 2d 1261. This principle is based on the equitable notion that no one is required to exercise a

right when it is impossible for him or her to do so." *Prevo v. State ex rel. Dept. of Public Safety*

*and Corrections Div. of Probation and Parole*, 2015-0823 (La. 11/20/15), 187 So. 3d 395, 398

(citing *Harvey v. Dixie Graphics, Inc.*, 593 So. 2d 351, 354 (La. 1992)).

       There are four categories in which *contra non valentem* applies, but the two which are

most relevant to this case are: the "third category" which applies where the defendant, through

fraud or concealment, attempts to prevent the plaintiff from bringing a cause of action; and the

"fourth category" – or "discovery rule" – where the cause of action is not known or reasonably

knowable to the plaintiff. When, as here, the defendant takes affirmative steps to prevent the

plaintiff from filing suit, prescription is suspended, even where known or knowable to the

---

[13] Petition, *Silva v. Interior Exterior Building Supply,* No.09-12503 (CDC Parish of Orleans,
State of La. Nov. 30, 2009).

plaintiff. *Plaquemines Parish Comm'n Council v. Delta Develop. Co.,* 502 So.2d 1034, 1056 (La. 1987) ("whether the cause of action is known or reasonably knowable is not alone dispositive") (citing *Nathan v. Carter,* 372 So. 2d 560, 563 (La. 1979); *Corsey v. State ex rel. Dep't of Corr.,* 375 So. 2d 1319, 1323 (1979);  *Martin v. Jennings,* 10 La.Ann. 553 (La. 1855);  *Boyle v. Mann,* 4 La. Ann. 170, 1849 WL 3680 (1849)).  The application of *contra non valentem,* under these circumstances, works like an estoppel, which is intended to prevent the defendant from profiting by his own misconduct. *Plaquemines Parish,* 502 So.2d at 1056; *Nathan v. Carter,* 372 So.2d at 562-63; *Hyman v. Hibernia Bank & Trust,* 139 La. 411, 418, 71 So. 598, 600 (1916); *see also Babkow v. Morris Bart, P.L.C.,* 1998-0256 (La. App. 4 Cir. 12/16/98); 726 So. 2d 423, 429 ("a defendant who takes actions or makes statements to lull the plaintiff into a 'false sense of security' is estopped from pleading prescription");  *Hammons v. ABB C-E Services,*  94-2444 (La. App. 1 Cir. 10/6/95); 671 So. 2d 370, 375 (holding that the defendants are "estopped" from terminating SEBs, which is analogous to the rule suspending prescription where the employer lulls the plaintiff into a false sense of security).

In this particular case, the Taishan Defendants have engaged in a well-established course of conduct intended to prevent the plaintiffs of availing their legal rights, including an MDL discovery process that should have, as early as 2010, allowed plaintiff's counsel and their clients to better determine which suspected boards were manufactured with defective drywall by which specific companies[14] – not to mention the affirmatively concealed corporate confusion, direction, and the finding of single business enterprise between and among the Taishan, CNBM and BNBM entities.  The defendants even denied that they shipped their defective drywall to the U.S.

---

[14] *See, e.g.,* PRE-TRIAL ORDER NO. 10 (instructing the Defendants to produce photographs of their "markings, brands, endtapes and other identifying markers").

9

and they concealed the whereabouts of a key witness and withheld key documents from the Plaintiffs resulting in a sanctions order against Taishan (Rec. Doc. 19959).  A party should not be permitted to deny liability, deny jurisdiction, refuse to engage in the discovery process, and otherwise evade the judicial process, with the bad faith and contempt that defendants have exhibited in these proceedings, and then seek to profit from their own misconduct.

Moreover, and even assuming that prescription were not suspended under the Third Category of *contra non valentum*, (as well as Code of Civil Procedure Article 596 and/or *American Pipe,* as addressed more fully below), many, if not all, of the plaintiffs' claims are timely, as their causes of action were "neither known nor reasonably knowable by the plaintiff even though plaintiff's ignorance is not induced by the defendant." *Marin v. Exxon Mobile Corp.*, 2009-2368 (La. 10/19/10), 48 So. 3d 234, 245. This category of *contra non valentem* is better known as the "discovery rule," and it is also proscribed by article 3493 of the Louisiana Code of Civil Procedure.[15] *Id.* Generally, the prescriptive period for property damage begins on "the date the damage becomes apparent." *Id.* (citing *South Central Bell Telephone Co. v. Texaco, Inc.*, 418 So. 2d 531, 532 (La. 1982)).

In this case, no amount of reasonable diligence on the part of the *Brooke* plaintiffs would have led them to the knowledge that their homes had been damaged by substandard drywall until (a) the damage manifested, and (b) the property owner understood that it was defective Chinese drywall – and not some other problem with the air conditioning or electrical system – that was

---

[15] "When damage is caused to immovable property, the one year prescription commences to run from the day the owner of the immovable acquired, or should have acquired, knowledge of the damage." La. C.C. art. 3493.

causing the damages. The drywall manufactured by Defendants, moreover, was purposefully designed so that the identity of its manufacturer would be difficult to discern.[16]

Furthermore, in any event, the fact that there were news stories about Chinese Drywall or attention on the litigation in no way changes the fact that some property damage manifested later than others. Not all drywall deteriorated at the same rate, and not all plaintiffs identified the fact that their homes had been damaged, even if they somehow had the wherewithal and ability to open up their walls and attempt to identify the drywall that was put into their homes.  The drywall, even where properly marked by the defendants, was not apparent to the naked eye, but was hidden behind paint, behind walls.  In some cases, for example, plaintiffs believed for years that their HVAC systems were defective, until undertaking inspections after years of recurrent failures.   The Defendants' argument that their acts that caused the damages ceased in 2006 is not relevant to this inquiry.

Defendants contend that the burden lies on plaintiffs to show that their claims are subject to tolling. But the inquiry – at least under the Fourth Category of *contra non valentum* – is inherently individualized, and should not be considered in this manner, in this type of proceeding.  *See, e.g., In re Deepwater Horizon*, 808 F.Supp.2d 943, 964-965 (E.D.La. 2011) (deferring the consideration of which individual plaintiffs' claims might be subject to dismissal for lack of presentment on defendant's Rule 12(b) motion to dismiss master complaint).  At the very least, each plaintiff should be afforded the opportunity to come forward with case-specific allegations and/or evidence to establish notice and accrual for prescription purposes after some initial particularized showing by the Defendant.  *See, e.g.,  Quinn v. Louisiana Citizens Property*

---

[16] *See* PRE-TRIAL ORDER NO. 10, Photo Catalog (some of the Taishan Defendants drywall was not marked or intentionally left blank).

*Ins. Corp.*, 2012-0152 (La. 11/2/12), 118 So. 3d 1011, 1023 (cited in Defendant's Memo, at p.18) (permitting amendment of the plaintiff's pleadings "if the new allegations which the plaintiff proposes raise the possibility the claim is not prescribed. . . .") (quoting *Wyman v. Dupepe Constr.*, 09-0817 (La. 12/1/09), 24 So. 3d 848, 849).

> **2.     The *Brooke* Plaintiffs' Claims are Subject to Tolling under Louisiana Code of Civil Procedure Article 596 and *American Pipe*.**

Defendants, in addressing the Article 596 and *American Pipe* issues, completely ignore the *Silva* class action filed in Louisiana State Court.  Defendants also ignore the fact that, unlike the class actions at issue in *Quinn* and *China Agritech,* the class actions in this litigation were *certified,* not denied.  Finally, and even assuming *arguendo* that the *Brooke* action were improperly "piggybacking" on the *Amorin* and other actions, (which is denied), that should only affect the ability of *Brooke* plaintiffs to seek *class certification,* not their ability to assert individual claims in their own names.

> **a.     The *Silva* Action filed in the Civil District Court for the Parish of Orleans Suspends Prescription as to At Least the *Brooke* Plaintiffs Who Fall within the Proposed Class Definition.**

On November 30, 2009, Stephen and Isis Silva filed a putative class action on behalf of themselves and others similarly situated, for damages arising out of the purchase and/or installation of defective Chinese-manufactured drywall, specifically:

> All citizens of the State of Louisiana who, between January 1, 2005 and December 31, 2008, purchased Chinese-manufactured drywall, by and/or thru InteriorExterior Building Supply, either directly or through a builder, retailer, contractor, or other supplier, for installation or use in commercial or residential property located within the State of Louisiana.[17]

---

[17] PETITION, *Silva v. InteriorExterior Building Supply,* No.09-12503 (CDC Parish of Orleans, State of La. Nov. 30, 2009), ¶VIII.

Louisiana Code of Civil Procedure Article 596 suspends prescription with respect to all claims "arising out of the transactions or occurrences" described in the petition. La. Code Civ. Pro. art. 596(A); *see also* La. Civ. Code art. 2324(C) ("Interruption of prescription against one joint tortfeasor is effective against all joint tortfeasors").

### b.      There was never a denial of class certification in this case.

The tolling, and limitations thereon, established in *American Pipe*, *Crown Cork & Seal*, *China Agritech*, and *Quinn,* occurs until the <u>denial</u> of class certification, and the subsequent attempts of frustrated members of those failed classes to continue their litigation – in some instances with a successive class.   In this case, by contrast, the *Germano/Gross/Wiltz/Amorin* complaints, like the Knauf class settlement, were certified to proceed as class actions.  Hence, the limitations that have been recognized in the cases relied upon by defendants do not apply.

### c.      Louisiana Code of Civil Procedure Article 596 and *Quinn*.

In *Quinn v. Louisiana Citizens Property Ins. Corp.*, 2012-0152 (La. 11/2/12), 118 So. 3d 1011, the Louisiana Supreme Court held that Article 596 only applies where a putative class action is filed in State Court.  Putting the State Court *Silva* Petitions (and likely other State Court Chinese-drywall related putative class actions) aside, the defendants ignore the fact that the Court contemplates only three scenarios: a class member elects to be excluded from the class, is excised from a certified class, or there is a denial of certification. None of those situations apply to the *Brooke* plaintiffs.  The *Brooke* plaintiffs did not elect to be excluded from a certified class. The *Brooke* plaintiffs were not re-defined out of a certified class.  Class certification was not denied.

Under the plain language of Article 596, prescription is tolled indefinitely for class members in that situation. After all, as stated in *Quinn*, prescription can only begin to run again

upon the occurrence of three very specific scenarios, none of which include the *granting* of class

certification. And the members of *Brooke* all fall under the umbrella of the certified class in this

litigation. The only reason they were not individually identified in the certified class was because

of the sheer number of plaintiffs, the latent nature of the damages at issue, and the fact that they

cannot now simply join the class to which they ought to belong because they are now not entitled

to a default judgment against the Defendants as the members of the certified class are.

"[P]rescription statutes are strictly construed against prescription and in favor of the

obligation sought to be extinguished." *Id.* at 1017 (quotation omitted). There is a strong Federal

interest in the tolling of Rule 23 class actions. As the Supreme Court explained in *American*

*Pipe*:

> To hold to the contrary would frustrate the principal function of a class
> suit, because then the sole means by which members of the class could
> assure their participation in the judgment if notice of the class suit did not
> reach them until after the running of the limitation period would be to file
> earlier individual motions to join or intervene as parties—precisely the
> multiplicity of activity which Rule 23 was designed to avoid in those cases
> where a class action is found 'superior to other available methods for the
> fair and efficient adjudication of the controversy.[18]

Plaintiffs note, additionally and in the alternative, that this Court's *Vioxx* decision relied

upon by defendant was decided before the Louisiana Supreme Court's decision in *Quinn.*[19]

*Quinn* simply stands for the proposition that a Louisiana State Court will only suspend

prescription under Article 596 where the previous putative class action was filed in State Court.

Neither *Quinn* nor Article 596 purport to limit, restrict or in any way abrogate the tolling effect

that Federal Courts give to putative class actions filed in Federal Court – and, indeed, under the

---

[18] *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 551 (1974).
[19] DEFENDANT'S MEMO, at pp.17-18; *citing In re Vioxx Products Liab. Litig.,* 478 F. Supp. 2d 897, 907-08 (E.D. La. 2007).

Court's logic, that should be the rule of decision.  The Louisiana Civil Code, in this respect, instructs that: "Prescription is interrupted when the owner commences action … in a court of competent jurisdiction." La. Civ. Code art. 3462.  No one contests that the original putative class actions filed in the United States District Court were not commenced in a court of competent jurisdiction, and the effect of such filings was to interrupt prescription under *American Pipe* and its progeny.[20]

**d.     This is Not a "Stacking" of Class Actions, and the Recent Supreme Court Holding in *China Agritech* Does Not Apply.**

Defendants also contend that the *Brooke* complaint is an attempt to "stack" class actions on top of one another in an attempt to drag out the statute of limitations indefinitely. First, it should again be noted that the original class in this matter was certified on September 26, 2014, and the *Brooke* complaint was filed within one year of that date, on September 4, 2015. Secondly, this is not a "stacking" of successive identical class actions because, once again, the first class action was certified. For that exact reason, the Supreme Court's most recent decision regarding successive class action filings and *American Pipe* tolling does not apply.

In *American Pipe* and its successor case, *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345 (1983), the Supreme Court held that putative class members who wished to intervene or file individual suits after the putative class was denied certification could claim that the statute of limitations for their claims was tolled while the class certification decision was pending. While *American Pipe* specifically concerned intervening plaintiffs, *Crown, Cork* involved the tolling of the right of putative class members to bring their own suits individually. *Crown, Cork*, 462 U.S.

---

[20] In any event, the Defendants failed to address the import of the *Silva* action which was filed in Louisiana State Court and affectively acted to toll prescription of Louisiana plaintiffs.

353-54. In both *American Pipe* and *Crown, Cork*, the original motion for class certification was denied.

Most recently, in *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1804 (2018), the Supreme Court confronted the issue of subsequent class actions filed after the original class was *denied* certification. There, the Court answered the question presented: "*Upon denial of class certification*, may a putative class member, in lieu of promptly joining an existing suit or promptly filing an individual action, commence a class action anew beyond the time allowed by the applicable statute of limitations? Our answer is no." (emphasis supplied)  Again, the situation contemplated is that the first class action is denied. *China Agritech*, 138 S.Ct. at 1806-1807 ("*American Pipe* tolls the limitation period for individual claims because economy of litigation favors delaying those claims until after a class-certification *denial.* If certification is granted, the claims will proceed as a class and there would be no need for the assertion of any claim individually. If certification is denied, *only then* would it be necessary to pursue claims individually") (emphasis supplied).

Here, the *Brooke* plaintiffs followed the certification of the original class. The fact is, the *Brooke* plaintiffs meet all of the requirements of being class members in all the other class actions that have been filed in this case. Their rights have been protected since the original complaint in *Gross* was filed in 2009. The problem is, even after the class was certified, people were still discovering damage to their homes due to the installation of Chinese Drywall.

The original class was certified. The *Brooke* plaintiffs meet all of the requirements of the certified class. The only difference is that they are not permitted to invoke the default judgment against Taishan because Taishan decided to finally submit to the proceedings before the *Brooke* complaint was filed. Neither *American Pipe* nor *Crown, Cork* nor *China Agritech* discussed the

situation here – where a class *was* certified and where additional class members filed suit timely once they discovered that they had been injured.

The logic of *China Agritech* and the other "piggybacking" cases, moreover, is directed toward the maintenance of a successive class action. *See, e.g., China Agritech,* 138 S.Ct. at 1806 ("any additional *class* filings should be made early on") (emphasis in original).  These cases do not dispute the notion that "*American Pipe* tolls the statute of limitations during the pendency of a putative class action, allowing unnamed class members to join the action individually or file individual claims if the class fails." *China Agritech,* 138 S.Ct. at 1804.  At most, therefore, these cases could only impact the certification of *Brooke* as a class action, under Rule 23.   To the extent they cannot join the *Amorin* action, (due to the absence, in their case, of default), they should nevertheless be permitted to pursue their own individual claims in their own name.

### C.      THE PLAINTIFFS' COMPLAINT SUFFICIENTLY STATES <br> THEIR GROUNDS FOR RELIEF.

"[T]he motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1983). All well-pleaded facts in the complaint must be accepted as true, and the complaint must be liberally construed in favor of the plaintiff. *Id.* "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Id.* To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *In re Chinese Manufactured Drywall Products Liability Litigation*, 680 F.Supp.2d 780, 788 (E.D. La. 2010).

Here, the well-pleaded facts of the complaint – and a considerable body of evidence in record – demonstrate that the Defendants did engage in the business of manufacturing and

distributing defective drywall to homes and other properties belonging to the class members. The motion to dismiss should be denied.

### 1. The Defendants Can Be Lumped Together Because They Are a Single Business Enterprise.

Defendants first contend that the complaint in *Brooke* is insufficient because it does not distinguish the specific "conduct attributable to either BNBM PLC or BNBM Group."[21] Although the Defendants apparently concede the fact that the harms alleged form a proper basis to make a claim, they argue that the failure to allege specific actions on behalf of BNBM PLC or BNBM Group is fatal to the claim. In other words, the Defendants argue that the plaintiffs "have improperly tried to make it appear that all named Defendants are one and the same."[22]

Unfortunately for the Defendants, this Court has now held that the named Defendants are "one and the same." When this Court certified the first class in this case, it held "that Taishan, TTP, BNBM, BNBM Group, CNBM, and CNBM Group constitute a single business enterprise for purposes of piercing the corporate veil and holding each of these entities liable for the conduct of their affiliated entities."[23] Additionally, although this decision was made with respect to Louisiana law, the Court further held "that Taishan, TPP, BNBM, BNBM Group, CNBM, and CNBM Group may be held liable for the conduct of their affiliated entities under the laws of Virginia, Florida, Mississippi, and Alabama law."[24]

---

[21] MEMORANDUM IN SUPPORT OF MOTION TO DISMISS, at p.20 [Rec. Doc. 19984-1].

[22] *Id.* at p.21.

[23] FINDINGS OF FACT AND CONCLUSIONS OF LAW WITH RESPECT TO PLAINTIFFS' OMNIBUS MOTION FOR CLASS CERTIFICATION PURSUANT TO RULES 23(a)(1)-(4) AND 23 (b)(3) at p.20 [Rec. Doc. 18028].  *See also* Jurisdiction O&R, *supra*.

[24] *Id.*  Plaintiffs submit that the current motion to dismiss the *Brooke* Louisiana Complaint should be limited to the Louisiana plaintiffs identified therein.  *See* fn. 2 and 4 *supra*.  To the extent the

The *Brooke* complaint was filed almost a year after this pronouncement by this Court. Referring to the Defendants collectively as the Defendants was appropriate. Otherwise, the nature of the damages alleged, and the Defendants' collective role in causing those damages, was sufficiently explained so as to state a claim for relief. This contention has no merit.

### 2.   Rule 9(h) Does Not Apply to Claims Brought Under the LPLA.

Initially, it should be noted that the evidentiary record in this litigation amply supports the notion that Defendants' conduct was knowing, intentional, and deliberate.  However, the fact that "Defendants knew that their drywall was unreasonably dangerous and/or problematic" does not convert the plaintiffs' claims under the LPLA – which does not even require knowledge in the event of a construction and composition, breach of express warranty, or design defect claim – into a claim for "fraud", nor require a plaintiff to "state with particularity the circumstances constituting fraud." Defendant's Memo, at p.28.  Indeed, the U.S. Fifth Circuit has indicated that a Louisiana plaintiff cannot assert a claim for "fraud" in conjunction with a product liability claim. *See Stahl v. Novartis Pharms. Corp.,* 283 F.3d 254, 260–261 (5th Cir.2002).  The Court has already concluded, after extensive evidentiary proceedings and trials, that the drywall in question is defective.  In fact, "[e]ven the Defendants' experts agree that the drywall is defective and needs to be removed."  *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2018 WL 279629, *8-9 (E.D. La. Jan. 2, 2018). There is no legal or factual basis to dismiss the plaintiffs' claims under the LPLA.

---

Court requires further explanation of the laws of other jurisdictions, the PSC is prepared to respond to that request.

3.    **The LPLA Does Not Apply to the Florida or Virginia Plaintiffs.**

While the PSC concedes that the Louisiana Product Liability Act ("LPLA"), together with the claims in Redhibition, provide the sole avenues of recovery for the claims asserted by the members of *Brooke* who are domiciled in Louisiana, they do not apply to the members of *Brooke* who live in Florida[25] or Virginia. When sitting in a Federal diversity action, a district court must apply the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496-97 (1941). Louisiana law very clearly states that the LPLA applies only "(1) when the injury was sustained in this state by a person domiciled or residing in this state; or (2) when the product was manufactured, produced, or acquired in this state and caused the injury either in this state or in another state to a person domiciled in this state." La. Civ. Code Ann. art. 3545.

Where the injury was not sustained by a person who falls under the umbrella of Article 3545, the more general choice of law rule contained within Article 3542 is used, which simply says that "an issue of delictual or quasi-delictual obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue." La. Civ. Code Ann. art. 3542. In this case, that would be either the law of Florida or Virginia. As the LPLA does not apply to them, their claims for negligence, negligence per se, strict liability, express or implied warranty, private nuisance, and unjust enrichment should be maintained.

---

[25]As the Florida *Amorin* plaintiffs have been remanded to Florida for trial, and a suggestion of remand is pending for Virginia, the PSC has filed a Motion to Stay All Florida Claims on Louisiana and Virginia *Amorin* Complaints, with the goal of trying only the Louisiana cases in this Court. [Rec. Doc. 21639]. A similar motion has been filed in Florida for the non-Florida properties involved in that case, and will be again for Virginia. Addressing only the claims of class members based in the forum while staying the others is the recommended way to proceed with the litigation.

4.      **Plaintiffs Have Sufficiently Pled Negligence.**

This case is not occurring in a vacuum. The *Brooke* complaint was filed by property owners who fall under the umbrella of the certified class – meaning they were damaged in the same way by the same defendants with the same products. For Defendants to argue that the complaint fails to state a claim for negligence is disingenuous at best.

This Court has held that the drywall manufactured and distributed by the Defendants exposed the owners of the homes in which it was installed to a "corrosive environment."[26] In fact, the drywall produced "corrosive sulfur gases" to such a degree that it "exceeded the safe level established by recognized standards, peer reviewed literature, and expert opinions."[27] The corrosion produced by the drywall is so severe that it requires all drywall to be replaced, all electrical wires to be replaced, all copper pipes to be replaced, all HVAC units to be replaced, insulation to be replaced, certain electrical devices and appliances to be replaced, and even carpet, trim, crown molding, baseboards, and countertops to be replaced.[28]

In the *Brooke* complaint, plaintiffs allege that (1) the Defendants manufactured drywall that produces sulfur compounds; (2) those sulfur compounds damage property in the home; (3) the Defendants should have known that the drywall they made was extremely corrosive and caused severe damage to the homes in which it was installed; and (4) the failure to prevent the installation of corrosive drywall into homes was a breach of Defendants' duty of care. This allegation easily complies with the pleading requirements of negligence in Louisiana. The plaintiffs are required to prove (1) the defendant had a duty of care; (2) the defendant breached

---

[26] GERMANO FINDINGS OF FACT AND CONCLUSIONS OF LAW, p.17 [Rec. Doc. 2380].

[27] *Id.*

[28] *See generally, Id.* at pp.17-53.

that duty; (3) the breach was a cause-in-fact of the plaintiffs' injuries; (4) the plaintiffs' injuries were within the scope of Defendants' duty; and (5) the plaintiffs were actually injured. *S.J. v. Lafayette Parish Sch. Bd.*, 41 So. 3d 1119, 1125 (La. 2010).

The *Brooke* complaint alleges that the Defendants had a duty to prevent the installation of their corrosive defective product, they breached this duty, the corrosive product was a "cause-in-fact" of the plaintiffs' injuries, the damages incurred by the plaintiffs were within the scope of the Defendants' duty, and the plaintiffs actually were injured.[29] The pleading conforms to the Louisiana standard of negligence. The Defendants were fully apprised of the nature of the claims against them. The motion to dismiss the claim for negligence should be denied.

And, even though negligence per se has been rejected in Louisiana, "statutory violations provide guidelines for civil liability." *Galloway v. State through Dept. of Transp. and Development*, 654 So. 2d 1345, 1348 (La. 1995). The many breaches of Louisiana and international building code provides guidelines for the liability of the Defendants.

### 5. <u>Strict Liability.</u>

The Defendants drastically oversimplify the Plaintiffs' complaint with respect to strict liability. As stated by the Defendants, strict liability requires the plaintiffs to show "1) the thing which caused the damage was in the care custody and control of the defendant; 2) the thing had a vice or defect which had an unreasonable risk of harm; and 3) the injuries were caused by the defect." *Murry v. Aran Energy Corp.*, 863 F. Supp. 315, 319 n.1 (E.D. La. 1994). In the complaint, Plaintiffs contend that the Defendants manufactured the drywall, placed it into the stream of commerce with a defect that rendered it unreasonably dangerous and that caused the

---

[29] *See* Complaint ¶¶42-28.

plaintiffs' injuries.[30] On its face, the complaint makes a valid claim for relief under the theory of strict liability. The Defendants' motion to dismiss this claim should be denied.

### 6.    Unjust Enrichment is not Preempted for All Plaintiffs.

The Defendants contend that the plaintiffs' unjust enrichment claims are preempted by the LPLA. Once again, the LPLA applies only to Louisiana plaintiffs.[31]  The LPLA applies only "(1) when the injury was sustained in this state by a person domiciled or residing in this state; or (2) when the product was manufactured, produced, or acquired in this state and caused the injury either in this state or in another state to a person domiciled in this state." La. Civ. Code Ann. art. 3545.

Further, plaintiffs adequately pled unjust enrichment in the complaint so as to survive Defendants' motion to dismiss. A claim for unjust enrichment requires the plaintiff to prove "(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and resulting impoverishment, (4) an absence of justification or cause for the enrichment and impoverishment, and (5) no other remedy at law available to plaintiff." *Huntsman Int'l LLC v. Praxair, Inc.*, 201 So. 3d 899, 911 (La. App. 4 Cir. 2016). The Plaintiffs' complaint alleges that the Defendants made money from the product for which the Plaintiffs paid money, and there was no justification

---

[30] COMPLAINT, pp.16-17. Case no. 2:15-cv-04127 [Rec. Doc. 1].

[31] As previously addressed in Plaintiffs' Amended Memorandum in Support of their Motion of Severance and Suggestion of Remand, the non-forum plaintiffs' actions should be stayed.  All parties agree that the *Brooke* Complaints filed in Virginia and Florida should be remanded and the claims of those plaintiffs in the other jurisdictions will be addressed in their appropriate venue.  Defendants' contention that the non-forum plaintiffs' claims should be dismissed is premature and invalid.

for the Defendants' retention of the money they made from sales of their defective drywall.[32] The claim for unjust enrichment is sufficiently pled. The Defendants were unjustly enriched.

### 7.   Plaintiffs' Redhibition Claim Should Survive.

The Defendants argue that the Plaintiffs' claims for redhibition fail because they have pled claims for both redhibitory defects under Louisiana Civil Code article 2520 and breach of the implied warranty for fitness under Article 2524. A redhibitory defect is one that renders a product "useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect [or] without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price." La. Civ. Code art. 2520. An item is not fit for its ordinary use when the seller knows how the buyer intends to use it, the buyer relies on the seller to select it for that use, and the thing sold does not fit the buyer's intended use. La. Civ. Code art. 2524. The Defendants argue that these two claims cannot coexist. This is wrong, particularly at the 12(b)(6) stage.

First, even if the two theories are inconsistent, the Federal Rules of Civil Procedure recognize that "[a] party may state as many claims or defenses as it has, regardless of consistency." Fed. Rule Civ. Pro. 8(d)(3). But the two theories are not inconsistent in any event, as many courts in Louisiana have recognized.

Obviously, an item can be so defective that it is useless *and* it can also not be fit for its ordinary use. Drywall that corrodes the materials of your home to such a degree that the home must be gutted and rebuilt obviously is so inconvenient that a buyer would not have bought it had he or she known of its defects. Just the same, drywall that corrodes the appliances, metal

---

[32] *Id.* at ¶¶ 111-14.

objects, and electrical, plumbing and HVAC systems of a person's home after being installed is not fit to be used for its purpose as drywall.

The fact is there is not statewide consensus regarding whether Articles 2520 and 2524 can be pled together. Two cases out of the Western District have held that both claims may survive. *See Justiss Oil Co., Inc. v. T3 Energy Services, Inc.*, 2011 WL 539135 (W.D. La. Feb. 7, 2011) (holding that where claims under Article 2520 and 2524 were both filed within their prescriptive periods that there was no reason to find one subsumed into the other); *Southwest Louisiana Hosp. Ass'n. v. BASF Const. Chemicals, LLC*, 947 F.Supp.2d 661 (W.D. La. 2013) (stating that it could see no reason why, under the right circumstances, a claim could not be brought under Articles 2520 and 2524). Judge Engelhardt, citing to both *BASF* and *Justiss*, recently held that Ford Motor Company's motion to dismiss claims under Articles 2520 and 2524 should be denied because "Ford has not convinced the Court that a departure from the rationale of the *Justiss* and *BASF* decisions is warranted. While it is true that the article 2524 claim may not later survive a summary judgment challenge, Ford has not demonstrated why, at this early stage in the proceedings, Plaintiffs should be precluded from bringing it now." *Cassidy v. Ford Motor Co.*, 2016 WL 687621, at *4 (E.D. La. Feb. 19, 2016).

So should it be here. The plaintiffs have sufficiently pled that the drywall was both useless and Redhibitory *and* unfit for its intended use. The motion to dismiss these claims should be denied.

## D.   DEFENDANTS' CONTENTION THAT THEY HAVE NOT BEEN PROPERLY SERVED IS WITHOUT MERIT.

Both BNBM PLC and BNBM Group posit that this Court's Orders permitting alternative service (Rec. Doc. Nos. 19713, 18566, 17790), which intervention put a stop to the Defendants' efforts to avoid or evade service, was improperly decided.  They argue from antiquated briefing

that the Court's original order was incorrect, while ignoring altogether this Court's reasoning in

its Jurisdiction O&R that their gamesmanship regarding service was nothing short of

"disingenuous."  Jurisdiction O&R at 98.  Plaintiffs disagree that this Court's order on alternative

service was incorrect.  Further, this Court's more recent ruling on the matter should control the

present motion as well:

> Based on the extensive procedural history of this case, the Court is convinced
> service on these entities has satisfied due process. Even without considering the agency
> and alter-ego relationships that exist between many of these related corporations, the
> evidence demonstrates the entities received adequate notice of this action and sufficient
> time to present their defenses. Additionally, these entities have refused to accept service
> at various points in this history of this litigation. <u>To now argue these minor technical
> deficiencies should warrant dismissal is disingenuous</u>. Thus, the Defendants' motion is
> denied in regards to their arguments that these claims should be dismissed for lack of
> proper service of process.[33]

These entities were well on notice of the plaintiffs' efforts to raise the instant matters in

United States courthouses.  To still contend that they are not aware of these matters before the

Court when they are ably represented by some of the most powerful counsel in the United States

who have orchestrated their defenses from the inception of this litigation, is not well founded and

should be rejected.

---

[33] Jurisdiction O&R at 97-98 (emphasis added).

III.     <u>**CONCLUSION**</u>

For the reasons set forth above, as well as in the PSC's Omnibus Response, and this

Court's Jurisdiction O&R, the Defendants' motion should be denied as to BNBM PLC and

BNBM Group.

Respectfully submitted,

Dated:  September 7, 2018

By: */s/ Russ M. Herman*
Russ M. Herman (La Bar No. 6819) (on the brief)
Leonard A. Davis (La Bar No. 14190) (on the brief)
Stephen J. Herman (La Bar No. 23129)(on the brief)
Charles King (La Bar No.34621) (on the brief)
Herman, Herman & Katz, LLC
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
RHerman@hhklawfim.com
*Plaintiffs' Liaison Counsel MDL 2047*

Arnold Levin (on the brief)
Fred S. Longer (on the brief)
Sandra L. Duggan (on the brief)
Keith Verrier (on the brief)
Nicola F. Serianni (on the brief)
Levin Sedran & Berman LLP
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
alevin@lfsblaw.com
*Plaintiffs' Lead Counsel MDL 2047*

# PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Robert M. Becnel,
Law Office of Robert M. Becnel
425 W. Airline Highway, Suite B
Laplace, LA 70068
Phone: (985) 359-6101
Fax: (985) 651-6101
robbecnel@aol.com

Salvadore Christina, Jr.
Becnel Law Firm, LLC
425 W. Airline Highway, Suite B
Laplace, LA 70068
Phone: (985) 536-1186
Fax: (985) 536-6445
schristina@becnellaw.com

Peter Prieto
Podhurst Orseck, PA
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
pprieto@podhurst.com

Bruce William Steckler
Steckler Gresham Cochran
12720 Hillcrest Road, Suite 1045
Dallas, TX 75230
Phone: (972) 387-4040
Fax: (972) 387-4041
bruce@stecklerlaw.com

Patrick Montoya
Colson, Hicks, Eidson
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
patrick@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
Echsner & Proctor, PA
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
The Lambert Firm
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@thelambertfirm.com

Pete Albanis
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Myers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
palbanis@forthepeople.com

James R. Reeves, Jr.
Reeves & Mestayer, PLLC
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@rmlawcall.com

Christopher A. Seeger
Seeger Weiss, LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5002
dan@wbmllp.com

Richard J. Serpe
Law Offices of Richard J. Serpe
Crown Center, Suite 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com

Victor M. Diaz, Jr.
V.M. Diaz and Partners, LLC
119 Washington Ave., Suite 402
Miami Beach, FL 33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

Anthony D. Irpino
IRPINO AVIN HAWKINS LAW FIRM
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

Gerald E. Meunier
Gainsburgh, Benjamin, David,
Meunier & Warshauer, LLC
2800 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2800
Phone:  (504) 522-2304
Fax:  (504) 528-9973
gmeunier@gainsben.com

### OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W., Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, which will serve a notice of the uploading in accordance with the procedures established in MDL 2047, on this 7th day of September, 2018.

*/s/ Leonard A. Davis*
Leonard A. Davis
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com
Plaintiffs' Liaison Counsel
MDL 2047

*Co-Counsel for Plaintiffs*