## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 |
| THIS DOCUMENT RELATES TO:<br><br>Rochelle and Jose Abner, et al. v. Taishan Gypsum Co., Ltd. F/K/A Shandong Taihe Dongxin co., Ltd., et al., No. 11-3094 (E.D. La.) | SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |

## PLAINTIFFS' STEERING COMMITTEE'S RESPONSE
## IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

I.      INTRODUCTION ................................................................................................... 1

II.     FACTUAL BACKGROUND .................................................................................. 3

III.    ARGUMENT ........................................................................................................... 8

        A.      The Conduct of Taishan Should be Imputed to its parent, BNBM PLC,
                as BNBM PLC and Taishan share an agency relation ..................................... 8

                1.      California's Law on Imputation of Alter Ego Liability ........................ 8

                2.      California's Law on Imputation of Agency Liability ........................... 9

                3.      Imputation of Contacts under California Law Is Proper ..................... 10

        B.      Plaintiffs Adequately Allege Claims Under California's UCL and CLRA ..... 13

        C.      Plaintiffs Adequately Allege Numerous California Common Law
                Causes of Action .......................................................................................... 15

                1.      Breach of Express and/or Implied Warranty (Count IV) ................... 16

                2.      Negligence (Count I), Negligence *Per Se* (Count II),
                        Strict Liability (Count III), and Private Nuisance (Count VII) ............ 18

                3.      Negligence *Per Se* (Count II), Unjust Enrichment (Count VIII),
                        and Injunctive Relief/Medical Monitoring (Count X) ........................ 19

        D.      The *Abner* Plaintiffs' Claims Were Tolled by the Discovery Rule
                and *American Pipe* ....................................................................................... 22

                1.      The Discovery Rule .......................................................................... 22

                2.      *American Pipe* Tolling Applies ........................................................ 25

                3.      Dismissal of this Protective Action Would be Improper ................... 28

                4.      Defendants' Contention That They Have Not Been Properly
                        Served is Without Merit .................................................................... 29

IV.     CONCLUSION ..................................................................................................... 30

i

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                    **Page(s)**

*Alltrade, Inc. v. Uniweld Products, Inc.*,
   946 F.2d 622 (9th Cir.1991) ............................................................................29

*Am. Pipe & Const. Co. v. Utah*,
   414 U.S. 538 (1974) ...............................................................................25, 26

*Asahi Metal Industry Co. v. Superior Court*,
   480 U.S. 102 (1987) ....................................................................................13

*Associated Vendors, Inc. v. Oakland Meat Co.*,
   26 Cal.Rptr. 806 (Cal. App. 1962) ................................................................9

*BBA Aviation PLC v. Superior Court*,
   117 Cal.Rptr.3d 914 (2010) ....................................................................9, 10

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ......................................................................................5

*Bristol-Myers Squibb Co. v. Superior Court of California*,
   137 S. Ct. 1773 (2017) ...............................................................................28

*Burger v. Am. Mar. Officers Union*,
   1999 WL 46962 (5th Cir. Jan. 27, 1999) ...................................................29

*Cel–Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*,
   83 Cal. Rptr. 2d 548 (Cal. App. 1999) .......................................................14

*Chavez v. Dole Food Company, Inc.*,
   836 F.3d 205 (3d Cir. 2016) ......................................................................30

*China Agritech, Inc. v. Resh*,
   138 S. Ct. 1800 (2018) .........................................................................26, 27

*Cholakyan v. Mercedes-Benz USA, LLC*,
   796 F. Supp. 2d 1220 (C.D. Cal. 2011) .....................................................17

*Clemens v. DaimlerChrysler Corp.*,
   534 F.3d 1017 (9th Cir. 2008) ...................................................................22

*Colgan v. Leatherman Tool Group, Inc.*,
   38 Cal. Rptr. 3d 36 (Cal. App. 2006) .........................................................14

*Crown, Cork & Seal Co., Inc. v. Parker*,
   462 U.S. 345 (1983) ..................................................................................26, 27

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ..................................................................................10, 28

*Darringer v. Intuitive Surgical, Inc.*,
   2015 WL 4623935 (N.D. Cal. Aug. 3, 2015)...............................................24, 25

*Desser v. United States*,
   2014 WL 4258344 (C.D. Cal. Aug. 27, 2014) .................................................21

*Dinosaur Development, Inc. v. White*,
   265 Cal. Rptr. 525 (Cal. App. 1989) ............................................................21

*Division of Labor Law Enforcement v. Transpacific Transportation Co.*,
   137 Cal. Rptr. 855 (Cal. App. 1977) ............................................................18

*Falk v. Gen. Motors Corp.*,
   496 F. Supp. 2d 1088 (N.D. Cal. 2007) .....................................................14, 15

*Fox v. Ethicon Endo-Surgery, Inc.*,
   110 P.3d 914 (Cal. 2005) ........................................................................22, 23

*GeoData Systems Management, Inc. v. American Pacific Plastic Fabricators, Inc.*,
   2015 WL 12731920 n.53 (C.D. Cal. Sept. 21, 2015)...................................21, 22

*Henderson v. Pfizer*,
   285 Fed. App'x. 370 (9th Cir. 2008)...............................................................23

*Hip Hop Beverage Corp. v. Michaux*,
   2016 WL 8578912 (C.D. Cal. Nov. 30, 2016) ................................................22

*Huang v. Garner*,
   203 Cal. Rptr. 800 (Cal. App. 1984) ............................................................20

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
   753 F.3d 521 (5th Cir. 2014)......................................................................6, 13

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
   742 F.3d 576 (5th Cir.2014)..........................................................................13

*In re Chinese Drywall Prod. Liab. Litig.*,
   680 F. Supp. 2d 780 (E.D. La. 2010) ..........................................................5, 19

*In re Deepwater Horizon*,
808 F. Supp. 2d 943 (E.D. La. 2011) ...................................................................25

*In re Katrina Canal Breaches Litig.*,
495 F.3d 191 (5th Cir. 2007) ..............................................................................5

*In re Toyota Motor Corp. Unintended Acceleration Mktg.,*
*Sales Practices, and Prod. Liab. Litig.*,
754 F. Supp. 2d 1145 (C.D. Cal. 2010) ..........................................................14, 15

*Isip v. Mercedes–Benz USA, LLC*,
65 Cal. Rptr. 3d 695 (Cal. App. 2007) ..............................................................16

*J. McIntyre Machinery, Ltd. v. Nicastro*,
564 U.S. 873 (2011) ...........................................................................................13

*Jacobs Farm/Del Cabo, Inc. v. Western Farm Services, Inc.*,
119 Cal. Rptr. 3d 529 (Cal. App. 2010) ............................................................19

*Keegan v. Am. Honda Motor Co., Inc.*,
838 F. Supp. 2d 929 (C.D. Cal. 2012) ..............................................................14

*Kirby v. Albert D. Seeno Construction Co.*,
14 Cal. Rptr. 604 (Cal. App. 1992) ..............................................................23, 25

*Ladd v. County of San Mateo*,
50 Cal. Rptr. 2d 309 (Cal. 1996) ......................................................................18

*Lomboy v. SCME Mortg. Bankers*,
2009 WL 1457738 (N.D. Cal. May 26, 2009) ....................................................21

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) .............................................................................13

*Mexia v. Rinker Boat Co., Inc.*,
95 Cal.Rptr.3d 285 (Cal. App. 2009) ............................................................16, 17

*Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*,
522 F.3d 1049 (9th Cir. 2008) ...........................................................................23

*Quiroz v. Seventh Ave. Center*,
45 Cal.Rptr.3d 222 (Cal. App. 2006) .................................................................20

*Ranza v. Nike, Inc.*,
793 F.3d 1059 (9th Cir. 2015) ..............................................................................8

*Roman Catholic Archbishop v. Superior Court,*
  93 Cal.Rptr. 338 (Cal. App. 1971) ...................................................................9

*San Diego Gas & Electric Co. v. Superior Court,*
  55 Cal.Rptr. 2d 724 (Cal. 1996) ....................................................................18

*Solid Host, NL v. Namecheap, Inc.,*
  652 F. Supp. 2d 1092 (C.D. Cal. 2009)...........................................................18

*Sonora Diamond Corp. v. Superior Court,*
  99 Cal.Rptr.2d 824 (Cal. App. 2000) ........................................................8, 9, 10

*Soule v. GM Corp.,*
  34 Cal. Rptr. 2d 607 (Cal. 1994) ...................................................................18

*Strasner v. Touchstone Wireless Repair & Logistics, LP,*
  210 Cal.Rptr.3d 16 (Cal. App. 2016) ....................................................... passim

*Talbot v. Freson-Pacific Corp.,*
  5 Cal. Rptr. 361 (1960)..................................................................................9

*Tomaselli v. Transamerica Ins. Co.,*
  31 Cal.Rptr.2d 433 (Cal. App. 1994) ..............................................................9

*Victorino v. FCA US LLC,*
  __ F.R.D. __, 2018 WL 2967062 (S.D. Cal. June 13, 2018) ...............................16

*Yoon v. Subaru of Am., Inc.,*
  2008 WL 11340332 (C.D. Cal. Sept. 2, 2008)...................................................17

## Statutes

Cal. Civ. Code § 1770(a) ....................................................................................14

Cal. Civ. Code §§ 1790........................................................................................16

Cal. Civ. Code § 3479 .........................................................................................18

## Rules

Federal Rule of Civil Procedure 9(b)................................................................13, 14

Federal Rules of Civil Procedure 12(b)(2), 12(b)(5), 12(b)(6)...................1, 5, 19, 25

## I.  __INTRODUCTION__

Now into the 10th year of this litigation, the Plaintiffs' Steering Committee ("PSC")

submits this Response to Beijing New Building Materials Public Limited Company ("BNBM

PLC" or "BNBM") and Beijing New Building Material (Group) Co., Ltd. ("BNBM Group")'s

motion to dismiss made pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(5),

12(b)(6), 8 and 9(b), which addresses the Omni Complaint filed in California (Rec.Doc. 19998).

The Defendants' motion was originally filed on January 12, 2016, two days in advance of the

then-scheduled status conference. At the January 14, 2016 Status Conference, the Parties agreed

to maintain the current briefing schedule on the Taishan Defendants' other extant motions to

dismiss.[1]  The parties then entered into a standstill agreement (Rec.Doc. 20030) and no action

was taken on the matter even after CNBM caused Taishan to walk away from its settlement.

Thereafter, the motion lay dormant for the next 19 months until the Court Ordered the PSC to

respond on August 23, 2018 (Rec. Doc. 21719).   Notwithstanding that in the interim this Court

issued an extensive ruling on personal jurisdiction over BNBM PLC and BNBM Group in the

context of other related motions, Order & Reasons (Rec. Doc. 20739) (hereafter "Jurisdiction

O&R"), and the parties have exchanged trial plans and motions in both the MDL[2] and Florida[3]

---

[1]*See In re Chinese Manufactured Drywall Prod. Liab. Litig*., MDL 2047, January 14, 2016
Status Conference Transcript at 8:19-23 (E.D. La. Jan. 14. 2016) ("The PSC on January 22 has a
due date on briefing for the BNBM/CNBM jurisdiction issues.  We have continued since the last
status conference to receive BNBM documents, but it should not delay the filing of our briefs.").
*See* Declaration of Russ M. Herman, attached hereto as Exhibit "A," and Exhibit 1 thereto
[hereafter "Herman Dec., Exb __"].

[2] *See, e.g*., The Plaintiffs' Steering Committee's Motion to Stay All Florida Claims on Louisiana
and Virginia *Amorin* Complaints (Rec. Doc. 21639).

[3] *See* Plaintiffs' Motion to Stay All Claims in The Florida *Amorin* Complaint That Relate to
Properties Outside Of Florida (*i.e.*, "Non-Florida Claims), Case No. 1:11-CV-22408-MGC (S.D.
Fla. August 24, 2018) (Fla. Rec. Doc. 49).

which address the means to adjudicate the claims of plaintiffs named in these protective actions where personal jurisdiction was already established against Taishan, these Defendants made no effort to substitute or amend their stale papers.  It would have been of great service to the litigants and the Court to have received revised papers but consistent with the practices of the Taishan Defendants and their national counsel's efforts to delay, prolong and complicate these proceedings, no updates have been submitted.

Consequently, aided by this Court's Jurisdiction O&R, the PSC's response will be somewhat truncated.  The PSC does not wish to burden the Court with the need to relitigate facts that this Court has already deemed sufficient to establish that personal jurisdiction may be imposed upon BNBM PLC due to its findings that BNBM PLC is part of a single business enterprise with Taishan or that an agency relationship between the two has been proven.  Nor does the PSC intend to misuse the Court's resources rearguing why personal jurisdiction over BNBM Group should be asserted when this Court has found otherwise, except under Louisiana's single business enterprise doctrine.  These are matters that the BNBM entities could have and should have addressed after this Court's Jurisdiction O&R issued, but for strategic or other reasons they chose not to engage.

Because California imputes the conduct of a subsidiary to its parent when the facts support findings that it is the alter ego of the subsidiary or an agency relation exists, this Court's Jurisdiction O&R suffices as to agency.  The facts presented in Plaintiffs' Omnibus Response in Opposition to Defendants' Motions to Dismiss (Rec. Doc. 21641) (hereafter "Omnibus Response"), prove that BNBM PLC's day-to-day control over Taishan permits the Court to impute Taishan's contacts with California to its parent.  BNBM PLC concedes that it previously targeted California for drywall sales, but the evidentiary record confirms that Taishan also

targeted California, where it shipped the defective drywall that caused Plaintiffs their injury. Thus, personal jurisdiction over BNBM PLC is proper in California.[4]

After litigating these actions for close to a decade, BNBM PLC's additional arguments suggesting that the allegations of the Complaint are not adequate to state a cause of action border on contemptuous. For either defendant to contend that they are not on notice of the causes of action asserted against them is itself not plausible given the fact that they have answered virtually identical allegations in earlier Omni Complaints. Nevertheless, Plaintiffs will address the plausibility of each of their state law claims. Equally invalid is the Defendants' statute of limitations defense, which is not specific to any plaintiff and so factually pregnant that only a jury could resolve the contentions raised as to whether the matter can be globally adjudicated on a class wide basis. Finally, Defendants' dispute with this Court's order permitting alternative service on counsel is an improper means to seek reconsideration and invalid in any event.

## II.    FACTUAL BACKGROUND

Plaintiffs' Omnibus Response, a 214 page dossier employing 280 exhibits, meticulously details the Taishan Defendants' inter-relatedness. It amply supported this Court's Jurisdiction O&R's factual findings that these Defendants operated as a single business entity and that an agency relationship exists between BNBM PLC and Taishan such that Taishan's contacts with the various jurisdictions at issue could be imputed to BNBM PLC for purposes of establishing

---

[4] The BNBM entities' motion addresses claims of Plaintiffs outside of California. Those Plaintiffs' claims are more appropriately addressed in connection with ongoing proceedings involving the Amorin actions for each of the jurisdictions where Plaintiffs were caused to prove (over Taishan's denials) that the product entered the United States (*i.e.*, Louisiana, Florida and Virginia). These matters are the subject of current and future proceedings before this Court. The Court is presently engaged in motions practice for Virginia and Louisiana case, and has already remanded the Florida Amorin action. It is likely that the Judicial Panel on Multidistrict Litigation will entertain this Courts' Suggestion of Remand regarding the Virginia Amorin action and enter a remand to Virginia,

personal jurisdiction based on Louisiana, Florida and Virginia law, which were the jurisdictions challenged by Defendants at the time.

Plaintiffs' Omnibus Response (which is incorporated herein by reference) goes to great lengths to establish BNBM's ownership and control of Taishan.  Plaintiffs detailed how BNBM promoted itself and Taishan as a single entity, reporting production statistics of both companies as one. *See* Omnibus Response at 76. Plaintiffs produced evidence and the Court found that BNBM controls Taishan's board through stock ownership, overlapping officers and directors, and the power to appoint a majority of Taishan's board of directors.  *Id*. at 77. We demonstrated that BNBM controls the construction of Taishan drywall factories, controls the production of Taishan drywall and controls Taishan's export of drywall to the United States.  *Id*. at 78. We elaborated on how BNBM controls Taishan's funding and finances.  *Id*. at 82.  We expounded on how BNBM compelled Taishan to make it a co-owner of Taishan subsidiaries.  *Id*. at 84.  We reported on how BNBM is responsible for Taishan's land-use certificates. *Id*. at 85.  We highlighted BNBM's practice to include Taishan as part of its regular internal audit process.  *Id*. at 86. We exposed how BNBM conducts regular financial audits of Taishan. *Id*. at 87. We pinpointed how BNBM imposes strict administrative policies on Taishan as part of controlling and managing Taishan's operations.  *Id*. at 88.  We revealed how BNBM controls Taishan's financial management, operational management, and management of its Human Resources Department.  *Id*. at 89-90. We proved that BNBM controls Taishan's establishment of subsidiaries.  *Id*. at 90. We established that Taishan is required to report various matters to BNBM.  *Id*. at 91. We also confirmed that BNBM controls Taishan's handling of significant events such as investments, loans, financing, contracts, donations, and risks.  *Id*. at 92.

4

With this dossier in hand, this Court could readily determine that BNBM PLC's iron-clad control of Taishan fit well within the accepted standards for finding an agency relationship. Ineluctably, the Court found: "The evidence in this case demonstrates BNBM controlled Taishan. It determined how Taishan would grow, controlled its capital expenditures, and dictated how Taishan would manufacture drywall. The two entities shared directors and officers. BNBM has admitted it controlled the daily operation and important activities of Taishan." Jurisdiction O&R at 53, citing 10/16/2007 BNBM Special Inspection Report on the "Management and Control of its Branches and Subsidiaries."

In contrast to the Jurisdiction O&R, the Defendants' motion to dismiss is deficient in both facts and credibility.  BNBM PLC denies on page seven of its brief that it has any contact with California. Def. Brf. at 7.  Yet, one only has to turn that page of the brief to learn just the opposite.  To quote BNBM PLC: "Although in December, 2005 and February, 2006 BNBM PLC made two drywall sales to California customer Great Western…." *Id* at 8.  Plainly, California was as much a target for BNBM PLC as the Gulf Coast states that were the focus of attention in the Jurisdiction O&R.[5]  But just as Taishan targeted the Gulf Coast States, it was just as eager to sell to the California market.  And it was these sales of drywall by Taishan (through its alter ego

---

[5] The Taishan Defendants' denial that their drywall injured anyone in California based on a report of the CPSC stretches the limits of jurisdictional challenges to the breaking point.  While Plaintiffs agree that evidence may be used to support jurisdictional disputes, the issue of whether product sold by BNBM or Taishan actually caused harm is a matter directed solely to the merits of the litigation.  On this point, the allegations of Plaintiffs' complaint must still be assumed to be true, because for purposes of Defendants' motion to dismiss, their veracity has been conceded.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007) (On a motion to dismiss there exists "the assumption that all the allegations in the complaint are true"); *In re Chinese Drywall Prod. Liab. Litig.*, 680 F.Supp. 2d 780, 788 (E.D. La. 2010) ("In considering a motion to dismiss under Rule 12(b)(6), the Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).").

and agent, Taian Taishan Plasterboard Co., Ltd. or "TTP")[6] to customers in California, which give rise to the claims presented by the California Plaintiffs in the *Abner* complaint.

The California Plaintiffs in the *Abner* Complaint -- Huy Thinh Ngo, aka, Bruce Ngo; Peter Phung K. Ngo, aka, Peter Ngo & Kimberly Nguyen; No Thi La; and Victor V. Ho and Shirley A. Nguyen -- all purchased their homes from a custom contractor, D/T Builders Developer (hereafter "D/T Builders").[7] Triet Minh Dinh was the owner of D/T Builders.[8] D/T Builders' drywall importer was Pan Pacific.[9] The drywall Pan Pacific Homemart supplied to D/T Builders, which Mr. Dinh used to construct each of the Plaintiffs' homes, was "Taishan" drywall.[10] Mr. Ngo, whose house was being constructed by D/T Builder, learned from the principal of Pan Pacific, Kevin Hoang, that the containers of drywall delivered for the construction of his home and the adjacent home contained drywall supplied by Taishan.[11]

The provenance of the drywall as being manufactured by TTP, shipped to California by TTP, and installed in the Plaintiffs' homes is documented. Pan Pacific (Kevin Huang) utilized the services of Stone Pride International Corp. (Yongzhi Yang), a California corporation, to

---

[6] In its landmark opinion on jurisdiction involving Taishan, this Court was affirmed in its determination that Taishan could be imputed with TTP's contact within the forum state. *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 753 F.3d 521, 529 (5th Cir. 2014) ("TG argues that TTP's contacts with Florida may not be imputed to TG for purposes of personal jurisdiction. We hold that they can.").

[7] *See* Plaintiff Profile Form of Huy T. Ngo [Herman Dec., Exb. 2]; Plaintiff Profile Form of No Thi La [Herman Dec., Exb. 3]; Plaintiff Profile Form of Cindy Quan [Herman Dec., Exb. 4].

[8] *See* Declaration of Triet Minh Dinh ¶¶3 & 4 [Herman Dec., Exb. 5].

[9] *Id.*, ¶4.

[10] *Id.,* ¶5.

[11] *See* Declaration of Peter Phung Ngo ¶¶3-7 [Herman Dec., Exb. 6].

arrange for the sale of drywall.[12]   Stone Pride determined that Taishan drywall met U.S. standards because it was selling drywall in Florida.[13]   It paid for and obtained drywall samples from Taishan.[14]   Stone Pride also ordered a substantial amount of drywall for Pan Pacific.  In the course of the sales negotiation, Mr. Yang spoke directly with "two people at Taian." The drywall sales were confirmed by an Invoice dated November 20, 2006, where Taishan agreed to sell FOB to Stone Pride, 2,640 sheets of drywall for $11,035.00.[15]   The Invoice reflects that shipping was arranged for 4 containers from Qingdao, China to the United States.[16]   The drywall containers were shipped from Qingdao, China on December 18, 2006 and arrived in Long Beach, California on December 24, 2006.[17]   When the shipment arrived, the four containers of drywall cleared customs.[18]   The containers of TTP drywall were then trucked to worksites of Pan Pacific Homemart,[19] where ultimately the drywall was installed in the plaintiffs' homes.[20]   Stone Pride then submitted its invoice for the Taishan drywall to Pan Pacific.[21]

---

[12] *See* Deposition of Yongzhi Yang for Stone Pride International at 32-33 [Herman Dec., Exb 7].

[13] *Id*. at 43, 49.

[14] *Id.* at 42, 48 ("The company sent us directly using our DHL account.").

[15] *See* Yang Depo. at 63; Yang Exb. 2 [Herman Dec., Exb 8].

[16] *Id*.

[17] Yang Depo. at 63; Yang Exb. 3 [Herman Dec., Exb 9].

[18] Yang Depo. at 73-77; Yang Exb. 4 [Herman Dec., Exb 10]; Yang Exb. 5 [Herman Dec., Exb 11].

[19] *See* Yang Depo. at 82; Yang Exb. 7 [Herman Dec. Exb. 12].

[20] See Ngo Declaration ¶5; Dinh Declaration  ¶6.

[21] *See* Yang Depo. at 77-78; Yang Exb. 6 [Herman Dec., Exb. 13].

Because Taishan could not sell drywall to the United States without authority from its controlling parent, BNBM PLC, each of the California plaintiffs were injured by having Taishan drywall installed in their homes.  BNBM should have imputed to it Taishan's specific targeting of California for the sale of its defective drywall, and Taishan's shipment and transportation of samples and enough drywall to California to build at least three homes of the Plaintiffs.

## III.   ARGUMENT

### A.   The Conduct of Taishan Should be Imputed to its parent, BNBM PLC, as BNBM PLC and Taishan share an agency relation.

Under California law, jurisdiction may be asserted over a parent corporation by virtue of its control over its subsidiary such that it is the alter ego of the subsidiary or the subsidiary is its agent. *See Strasner v. Touchstone Wireless Repair & Logistics, LP*, 210 Cal.Rptr.3d 16, 22 (Cal. App. 2016).  *See also Ranza v. Nike, Inc*., 793 F.3d 1059 (9th Cir. 2015). *Strasner* holds, "even if a defendant lacks sufficient direct contacts with a forum to establish general jurisdiction, a plaintiff may impute the minimum contacts of a California subsidiary to a nonresident parent through theories of alter ego or agency." *Id*.

### 1.   California's Law on Imputation of Alter Ego Liability.

California's interpretation of alter ego liability is straightforward: "To invoke the alter ego doctrine, a plaintiff must show there is such a unity of interest and ownership between the two entities that they do not have separate personalities and it would be inequitable to treat the conduct as attributable to only one of the entities."  *Strasner*, 210 Cal.Rptr.3d at 22. The doctrine exists to prevent natural and corporate persons from "from misusing the corporate laws by the device of a sham corporate entity formed for the purpose of committing fraud or other misdeeds."  *Sonora Diamond Corp. v. Superior Court*, 99 Cal.Rptr.2d 824, 836 (Cal. App.

2000), citing, *Associated Vendors, Inc. v. Oakland Meat Co*., 26 Cal.Rptr. 806 (Cal. App. 1962).[22]

Among the factors to be consider when applying the alter ego doctrine are the following: 1) commingling of funds and other assets of the two entities, 2) the holding out by one entity that it is liable for the debts of the other, 3) identical equitable ownership in the two entities, 4) use of the same offices and employees, 5) use of one as a mere shell or conduit for the affairs of the other, 6) inadequate capitalization, 7) disregard of corporate formalities, 8) lack of segregation of corporate records,  and 9) identical directors and officers.  *Id.* at 538-39, citing *Roman Catholic Archbishop v. Superior Court*, 93 Cal.Rptr. 338 (Cal. App. 1971); *Associated Vendors, Inc. v. Oakland Meat Co., 2*6 Cal.Rptr. 806 (Cal. App. 1962); *Tomaselli v. Transamerica Ins. Co.,* 31 Cal.Rptr.2d 433 (Cal. App. 1994). Because "[n]o one characteristic governs" courts look to the totality of the circumstances to determine whether alter ego principles apply.  *Id*., citing *Talbot v. Freson-Pacific Corp.,* 5 Cal. Rptr. 361 (1960).

## 2.      California's Law on Imputation of Agency Liability.

To determine under California law whether a parent and subsidiary hold an agency relationship sufficient to impute the contacts of the subsidiary to the parent, "a plaintiff must demonstrate that the parent 'exercised pervasive and continuous control over [the subsidiary's] day-to-day operations that went beyond the normal parent-subsidiary relationship.'" *Strasner*, 210 Cal.Rptr. 3d at 22, quoting *BBA Aviation PLC v. Superior Court*, 117 Cal.Rptr.3d 914 (2010).  To meet this "beyond the normal" standard the power of control is determinative.  For example, in *Sonora,* the court held that a parent "trespassed the boundaries" when the control

---

[22] Plaintiffs first raised these imputation of contacts concepts under California law in their Omnibus Response at 180, citing *Sonora, supra*.

exercised over the subsidiary "is so pervasive and continual" that the subsidiary is just a "means through which the parent acts, or nothing more than an incorporated department of the parent." *Sonora*, 99 Cal.Rptr. at 838.  *See also BBA Aviation*, 117 Cal.Rptr.3d at 924.  "The nature of the control exercised by the parent over the subsidiary necessary to put the subsidiary in an agency relationship with the parent must be over and above that to be expected as an incident of the parent's ownership of the subsidiary and must reflect the parent's purposeful disregard of the subsidiary's independent corporate existence." *Sonora*, 99 Cal.Rptr. at 838.  Stated differently, agency can be proven by establishing that the parent corporation, "directed or participated in the methods or means by which [the subsidiary] performed [its] function." *BBA Aviation*, 117 Cal.Rptr. 3d at 925.[23]

### 3.      Imputation of Contacts under California Law Is Proper.

Applying the foregoing analysis to the facts set forth above, the BNBM PLC, at all relevant times, controlled or had the absolute right of control over Taishan.  Taishan was so

---

[23] *Daimler AG v. Bauman*, 571 U.S. 117 (2014), a general jurisdiction decision, is inapplicable here, as the state of California was specifically targeted by Taishan, where the Plaintiffs' homes are located, and therefore specific jurisdiction exists.  With respect to BNBM's control over Taishan, the California court of appeal made clear in *Strasner,* 210 Cal. Rptr. 3d at 23 n.1, that the conduct of one defendant may be imputed to a parent corporation or other entity under California's agency test:

"The agency test formerly used by the Ninth Circuit differs from that applied by California courts, as it allowed a finding of agency whenever the work performed by a subsidiary was so "important" to its parent that the parent would have performed the services itself in the subsidiary's absence. (*Daimler, supra*, 134 S.Ct. at p. 759.) The Supreme Court characterized this inquiry as "stack[ing] the deck" in favor of jurisdiction. (*Ibid*.) In contrast, the California test considers whether a parent exercised excessive control over its subsidiary's forum-based operations beyond that of a normal parent-subsidiary relationship. (*BBA Aviation, supra*, 190 Cal.App.4th at p. 433, 117 Cal.Rptr.3d 914.) The reasoning in *Daimler* therefore does not preclude imputing a resident's contacts to a nonresident under the California version of the agency test."

10

dominated by these companies that Taishan's actions may be imputed to its controlling parent company through agency principles.

At the time Taishan was selling drywall to the United States, BNBM PLC controlled Taishan's Board of Directors through stock ownership, overlapping officers and directors, and the power to appoint a majority of Taishan's board, to the point that Taishan became an instrumentality of BNBM.[24]  BNBM PLC controlled Taishan's ability to construct plants, and its production of drywall.[25]  It specifically controlled Taishan's export of drywall to the United States by having it change its business registration to include export of drywall.[26]  And, as shown in the Omnibus Response, BNBM PLC's directives cascaded down upon it from above, *i.e.,* from CNBM and CNBM Group.  These entities boldly acknowledged that Taishan is not independent, and that the company was acquired for the purpose of being subject to CNBM Group's complete and total control.[27]  This capacity to control was demonstrated by the parent companies' ability to acquire 100% of Taishan's shares.[28]

This evidence proves that BNBM PLC acknowledged that Taishan would act for them, and that Taishan accepted the undertaking, and further that BNBM PLC controlled every aspect

---

[24] CNBM Group, BNBM Group, CNBM, BNBM, and Taishan share numerous common officers and directors, and in many instances, individuals simultaneously wear multiple hats on various boards and committees and in countless management roles. This overlap during the pertinent time period (2005-present) renders impossible any sort of independence or autonomy among the CNBM and BNBM Entities, and Taishan, particularly with respect to voting on issues such as the provision of (1) loans; (2) guarantees; (3) financing; etc.  *See* Omnibus Response, Statement of Facts, Section II.A.13.

[25] *See* Omnibus Response, Statement of Facts, Section II.A.13.c. and d.

[26] *See* Omnibus Response, Statement of Facts, Section II.A.13.e.

[27] *See* Omnibus Response, Statement of Facts, Section II.A.

[28] *See* Omnibus Response, Statement of Facts, Section II.A.1.d.

of Taishan's actions.  Thus, BNBM PLC may collectively be treated as the alter ego of Taishan

for jurisdictional purposes, but Taishan was certainly its agent.

Based on these facts, this Court already found an agency relationship to exist between

Taishan and BNBM under Florida and Virginia law and a single business enterprise to exist

among Taishan, BNBM, and CNBM under Louisiana law in its Jurisdiction O&R.  The Court

perciphently recognized that the overlapping directorate of the Taishan Defendants to be strong

indicia of excessive control that *Strasner* requires "beyond that of a normal parent-subsidiary

relationship." Specifically, the Jurisdiction Order states: "the Court finds this system of

overlapping board membership provides a mechanism of control *which exceeds the typical*

*parent subsidiary relationship*."  Jurisdiction O&R at 57 (emphasis added).  After all, if

BNBM's purchase of the majority of Taishan was done in order to "maintain control" of the

company's strategy and day-to-day operations, to the point that the Court found BNBM was able

to exert "high and very significant" levels of control sufficient to "fuse Taishan and BNBM for

jurisdictional purposes, *id.*, BNBM's complete and total acquisition of the Taishan ensures

absolute dominion and control of its subsidiary.[29]  *Id.*  But the Court did not stop at overlapping

directorates.  It also found that BNBM controls Taishan's financial and strategic business

decisions, *id.* at 57-58, it controlled Taishan's day to day operations, *id.* at 59-61, it occasionally

held itself out as the same entity as Taishan, *id.* at 61-62, and found that there was some evidence

of commingling and shared property, *id* at 63-64.  These findings enabled the Court to conclude:

"Based on the overwhelming evidence of actual control of all significant aspects of Taishan's

---

[29] *See* Plaintiffs' Steering Committee's Supplement to Omnibus Response in Opposition to
Defendants' Motions to Dismiss (Rec. Doc. 20585-2) (describing the events leading up to
BNBM's total and complete acquisition of Taishan) (incorporated herein by reference).

operations by BNBM, afforded to it by both formal and informal, means, the court concludes that the Plaintiffs have demonstrated that Taishan was an agent of BNBM such that the Court's jurisdiction over Taishan is imputed to BNBM." *Id.* at 64.[30]  This same logic, reasoning and outcome should apply to the California complaint.

Defendant BNBM PLC should be subject to personal jurisdiction, as Taishan was an agent of the company whose contacts with California may be imputed to BNBM PLC.

### B.    Plaintiffs Adequately Allege Claims Under California's UCL and CLRA.

Defendants challenge Plaintiffs' claims brought under California's consumer protection laws – the Unfair Competition Law ("UCL") and the Consumer Legal Remedies Act ("CLRA") (Count IX).[31]  Defendants essentially argue that these claims sound in fraud, and Plaintiffs have not pled with sufficient specificity to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).[32]

---

[30] Because of the similarities between California's alter ego imputation doctrine and those states already evaluated by the Court, Plaintiffs will not challenge this Court's reasoning that the evidence does not demonstrate Taishan was created or used for a fraudulent purpose.

[31] *See* Def. Brf. at 28-29.

[32] Defendants also argue that claims brought on behalf of non-California residents must be dismissed as well.  *See* Def. Brf. at 28-29.  However, Defendants ignore that they targeted California and intentionally put their drywall into the stream of commerce there.  *See Chinese Drywall*, 753 F.3d at 542-43 (discussing stream of commerce with respect to Florida claims); *Chinese Drywall*, 742 F.3d 576, 589 (5th Cir.2014) (discussing stream of commerce with respect to Virginia claims); *see also Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 112 (1987); *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 887-888 (2011) (Breyer, J., concurring).  As a result, claims may be brought on behalf of anyone who purchased drywall that was flowing through California.  *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) (under California law, place of the wrong is where the last event happened rendering the defendants liable).

The CLRA "makes illegal various 'unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer,'" which includes any conduct that is "'likely to mislead a reasonable consumer.'"  *See Keegan v. Am. Honda Motor Co., Inc*., 838 F. Supp. 2d 929, 938 (C.D. Cal. 2012) (quoting CAL. CIV. CODE § 1770(a) and *Colgan v. Leatherman Tool Group, Inc*., 38 Cal. Rptr. 3d 36, 48 (Cal. App. 2006) (internal citation omitted)).  "A 'reasonable consumer' is 'the ordinary consumer acting reasonably under the circumstances,' who 'is not versed in the art of inspecting and judging a product, [or] in the process of its preparation or manufacture . . ..'" *Keegan*, 838 F. Supp. 2d at 938 (quoting *Colgan*, 38 Cal. Rptr. 3d at 48 (internal citation omitted)).  The CLRA prohibits representing that the product being sold has characteristics, ingredients, uses or benefits it does not have and the statute is to be liberally construed to, among other things, protect consumers.  *See Keegan*, 838 F. Supp. 2d at 938 (quoting *Colgan*, 38 Cal. Rptr. 3d at 46 (internal citation omitted)); *see also* CAL. CIV. CODE § 1770(a)(4)(5). The relevant misconduct here is also actionable under the UCL.  *See Keegan*, 838 F. Supp. 2d at 938 (describing the broad sweep of the UCL); *see also Cel–Tech Communications, Inc. v. Los Angeles Cellular Telephone Co*., 83 Cal. Rptr. 2d 548, 560 (Cal. App. 1999).

In failure to disclose cases, Rule 9(b) is looked at a little differently because "a plaintiff in a fraud by omission suit will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim."  *Falk v. Gen. Motors Corp*., 496 F. Supp. 2d 1088, 1098-99 (N.D. Cal. 2007).  In addition, "[t]o plead a duty to disclose, Plaintiffs must show the nondisclosed facts are material." *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Prod. Liab. Litig*., 754 F. Supp. 2d 1145,

1173 (C.D. Cal. 2010).  Courts have consistently found that, like here, "[n]ondisclosures about safety considerations of consumer products are material."  *Id.*

Plaintiffs' allegations clearly meet this standard.  Plaintiffs allege that Defendants knowingly and intentionally failed to disclose that the drywall was defective because it contained sulfur compounds that would exit the drywall "and cause rapid sulfidation and damage to personal property" as well as "cause[] personal injury resulting in eye problems, sore throat and cough, nausea, fatigue, shortness of breath, fluid in the lungs, and/or neurological harm."[33] Plaintiffs also allege that they would not have purchased the drywall had the defect been disclosed and that by purchasing the drywall and installing it in their homes, they have incurred substantial damages.[34]

Allegations identical in specificity to those of Plaintiffs here, particularly involving nondisclosure of safety-related defects, have consistently been found sufficient to satisfy the pleading requirements. *See In re Toyota,* 754 F. Supp. 2d at 1173; *Falk*, 496 F. Supp. 2d at 1094-95.

    **C.**    **Plaintiffs Adequately Allege Numerous California Common Law Causes of Action.**

Defendants work their way through the Complaint count by count asserting that the pleadings fail to state certain claims, miss certain elements of claims and/or assert claims that cannot be enforced against them.  Specifically, Defendants seek to pick apart the California state law claims contained in Counts I, II, III, IV, VII, VIII and X.  Often, Defendants simply ignore the fact that they are being held responsible based upon the agency relationship between BNBM

---

[33] *See, e.g.*, Compl., at ¶¶ 116-119.

[34] *See, e.g.*, *id.*, at ¶¶ 120, 227-231.

and Taishan, a relationship that renders meaningless Defendants' claim that BNBM isn't the entity that sold the defective board.[35]  Other times, Defendants simply mischaracterize the causes of action to shoot them down.  A brief review of the claims show that dismissal is not warranted.

As set forth below, the Complaint adequately sets forth causes of action for Negligence (Count I), Negligence Per Se (Count II), Strict Liability (Count III), Breach of Express and/or Implied Warranty (Count IV), Private Nuisance (Count VII), Unjust Enrichment (Count VIII), and Equitable and Injunctive Relief and Medical Monitoring (Count X).[36]

## 1.    Breach of Express and/or Implied Warranty (Count IV).

In California, the Song-Beverly Act[37] provides for an implied warranty of merchantability and implied warranties of quality and fitness.  *See Victorino v. FCA US LLC*, __ F.R.D. __, 2018 WL 2967062, at *3 (S.D. Cal. June 13, 2018).  "'The core test of merchantability is fitness for the ordinary purpose for which such goods are used.'" *Id.* (quoting *Isip v. Mercedes–Benz USA, LLC*, 65 Cal. Rptr. 3d 695, 700 (Cal. App. 2007)).  "Such fitness is shown if the product is 'in safe condition and substantially free of defects . . . .'" *Id.* (quoting *Mexia v. Rinker Boat Co., Inc*., 95 Cal.Rptr.3d 285, 290 (Cal. App. 2009)) (internal citation omitted).

Plaintiffs clearly allege that Defendants' drywall is a building component intended to be used in residential homes and that it is unfit for that purpose due to the damaging side effects set

---

[35] *See, e.g.,* Def. Brf. at 31-32 (describing warranty claims made by Taishan, not BNBM), at 33 ("The Complaint makes only generic allegations aimed at all 'Defendants,' lumped together, without identifying any harm caused by drywall manufactured or sold by BNBM PLC or BNBM Group.").

[36] *See id.* at 30-35 (Defendants' argument for dismissal of these counts).

[37] *See, e.g*., Cal. Civ. Code §§ 1790, *et seq.*

forth in the Complaint.[38]  The California *Abner* Plaintiffs focus on the Taishan drywall being imported into California and the relationship between Taishan and BNBM.[39]   Plaintiffs have satisfactorily alleged a breach of the implied warranty of merchantability against all of the Defendants.

Defendants respond by distancing themselves from Taishan and then adding two misguided arguments, that a breach of implied warranty claim is not allowed because: (1) the claims are being brought more than a year after the product was sold, and (2) they are not in privity with the homeowners.[40] With respect to the one-year time limit referenced by Defendants, their argument has been expressly rejected by California courts dealing with latent defects.  *See Mexia*, 95 Cal. Rptr. 3d at 290 (2009).  Indeed, the time limit is satisfied here because the allegations in the Complaint make clear that the drywall contained a latent defect that existed at the time of sale.  *See Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1244 (C.D. Cal. 2011) (citing *Mexia*, 95 Cal. Rptr. 3d at 290).

Defendants' argument regarding privity ignores that they are being held responsible for the actions of their agent Taishan.  *See, e.g., Yoon v. Subaru of Am., Inc.*, No. 08-cv-03366, 2008 WL 11340332, at *2 (C.D. Cal. Sept. 2, 2008) ("vertical privity exists between a consumer and a manufacturer when a consumer buys a good from the manufacturer or its agent.") (internal quotations omitted).  Furthermore, with respect to vertical privity, Plaintiffs allege that they are third-party beneficiaries of any warranty between BNBM, Taishan and any other entity that

---

[38] *See, e.g.,* Compl. at ¶¶ 116-124.

[39] *See, e.g.*, *id.*, at ¶¶ 103-108, 120.

[40] *See* Def. Brf. at 32-33.

stood between Plaintiffs and Defendants in the distribution chain.[41]  There is little doubt that homeowners were the ultimate intended beneficiary of any interim sale of Defendants' drywall. Plaintiffs allege that "Defendants placed their drywall into the stream of commerce in a problematic condition and these products were expected to, and did, reach users, handlers, and persons coming into contact with said products . . . ."[42]  In addition, intent and what constitutes a contract (*e.g.* an invoice, etc.) is a factual issue normally assessed by a jury thereby making it inappropriate for dismissal at the pleading stage.  *See Solid Host, NL v. Namecheap, Inc*., 652 F. Supp. 2d 1092, 1119 (C.D. Cal. 2009) ("Because they involve factual questions of intent, third party beneficiary claims are often not appropriate for resolution via motion to dismiss."); *Division of Labor Law Enforcement v. Transpacific Transportation Co*., 137 Cal. Rptr. 855, 859-60 (Cal. App. 1977) (discussing fact-based inquiry of determining whether a contract exists). Under any circumstance, dismissal is not appropriate at this stage.

### 2. Negligence (Count I), Negligence *Per Se* (Count II), Strict Liability (Count III), and Private Nuisance (Count VII).

Defendants do not argue that Plaintiffs fail to plead the relevant elements for claims under these causes of action.[43]  Instead, Defendants lump all of these claims together and assert

---

[41] *See* Compl., at ¶ 187.

[42] *See id*., at ¶ 189.

[43] The elements of a cause of action for negligence in California are well established: "(a) a legal duty to use due care; (b) a breach of such legal duty; [and] (c) the breach as the proximate or legal cause of the resulting injury." *Ladd v. County of San Mateo*, 50 Cal. Rptr. 2d 309 (Cal. 1996).  Similarly, a claim for strict liability exists:  "A manufacturer, distributor, or retailer is liable in tort if a defect in the manufacture or design of its product causes injury while the product is being used in a reasonably foreseeable way."  *Soule v. GM Corp*., 34 Cal. Rptr. 2d 607, 613 (Cal. 1994).  Nuisance is "[a]nything which is injurious to health, . . ., or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, . . . ."  *See* Cal. Civ. Code § 3479; *see also San Diego Gas & Electric Co. v. Superior Court*, 55 Cal. Rptr. 2d 724 (Cal. 1996) ("In distinction to

that they must fail because, according to them, BNBM itself did not sell drywall in California and the claim that the drywall is defective is contrary to a report by the Consumer Product Safety Commission.[44]  Again, BNBM's ongoing relationship with Taishan allows for imputation and therefore, claims with respect to BNBM's level of commerce are irrelevant (although BNBM did directly market drywall in California by their own admission).  Second, whether the drywall itself is defective is purely a factual issue not ripe for determination on a motion to dismiss.  In addition, Defendants' reference to the CPSC findings brings in extra-record evidence whose use is misplaced on a motion to dismiss where the allegations of product defect are conceded to be true for purposes of this motion.  *See Chinese Drywall*, 680 F. Supp. 2d at 788 ("In considering a motion to dismiss under Rule 12(b)(6), the Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.").

### 3.  Negligence *Per Se* (Count II), Unjust Enrichment (Count VIII), and Injunctive Relief/Medical Monitoring (Count X).

*Negligence Per Se*.  Defendants attempt to elevate the notion that negligence *per se* is not, according to them, an independent cause of action.[45]  Negligence *per se* is the concept that "violation of the law does raise a presumption that the violator was negligent" and it is recognized in California.  *See Jacobs Farm/Del Cabo, Inc. v. Western Farm Services, Inc*., 119 Cal. Rptr. 3d 529, 546-48 (Cal. App. 2010).  It is an alternate means of proving a negligence

---

trespass, liability for nuisance does not require proof of damage to the plaintiff's property; proof of interference with the plaintiff's use and enjoyment of that property is sufficient.").

[44] *See* Def. Brf. at 33-34.

[45] *See id*. at 34.

claim and it is of no significance if it is an independent claim or an adjunct to Plaintiffs'
negligence claim.

Negligence *per se* can be established if "(1) the defendant violated a statute; (2) the
violation proximately caused the plaintiff's injury; (3) the injury resulted from the kind of
occurrence the statute was designed to prevent; and (4) the plaintiff was one of the class of
persons the statute was intended to protect."  *Id*. (citing *Quiroz v. Seventh Ave. Center*, 45 Cal.
Rptr. 3d 222, 243-44 (Cal. App. 2006), *citing* Cal. Evid. Code, § 669, subd. (a)).  "The first two
elements are normally questions for the trier of fact and the last two are determined by the trial
court as a matter of law" meaning that "the trial court decides whether a statute or regulation
defines the standard of care in a particular case." *Id*. (citing *Quiroz*, 45 Cal.Rptr.3d at 243-44).
Plaintiffs allege that Defendants violated state and local building codes that required the exercise
of reasonable care in the provision of drywall.[46]  *See, e.g., Huang v. Garner*, 203 Cal.Rptr. 800,
804-05 (Cal. App. 1984) (negligence *per se* claim supported by violation of Uniform Building
Code).

Plaintiffs have adequately pled negligence *per se* and nothing that Defendants argue
changes that fact.

***Unjust Enrichment***.  Dismissing Plaintiffs' unjust enrichment claim would be premature
at this juncture.  California courts are split on whether unjust enrichment is a separate cause of
action or merely an equitable remedy.  *See GeoData Systems Management, Inc. v. American
Pacific Plastic Fabricators, Inc*., No. 15-cv-04125, 2015 WL 12731920, at *6 n.53 (C.D. Cal.
Sept. 21, 2015) (discussing split in California cases regarding whether California recognizes a

---

[46] Compl., at ¶¶ 162-66.

cause of action for unjust enrichment).  A claim for unjust enrichment is essentially a claim for restitution.  *See Dinosaur Development, Inc. v. White*, 265 Cal. Rptr. 525, 527 (Cal. App. 1989). Federal courts applying California law have generally come down on the side that "California law does not recognize a cause of action for unjust enrichment ***so long as another cause of action is available that permits restitutionary damages***."  *See GeoData Systems Management, Inc.*, 2015 WL 12731920, at *6 n.53 (emphasis added).  Until such time as the parties can assess whether the applicable restitution can be made, denial of the motion to dismiss is appropriate. Furthermore, BNBM has been unjustly enriched in light of its agency relationship with Taishan.[47]

*Injunctive Relief/Medical Monitoring*.  Defendants do not dispute Plaintiffs' potential entitlement to these two remedies but still seek to have this count dismissed.  This is the ultimate form-over-substance argument.  This is not a case where the underlying causes of action are being struck as insufficient and the claim for injunctive relief is not tied to any viable cause of action.  *See Lomboy v. SCME Mortg. Bankers*, No. 09-cv-1160, 2009 WL 1457738, at *7 (N.D. Cal. May 26, 2009) (plaintiff had a separate claim for similar declaratory relief that was specifically tied to wrongdoing).  Here, Plaintiffs are asserting viable causes of action, and injunctive relief is a proper remedy for those causes of action.  *See Desser v. United States*, 2014 WL 4258344, at *11-12 (C.D. Cal. Aug. 27, 2014).  While the request for injunctive relief should perhaps have been set forth in the prayer for relief as opposed to a separate count, the Court has the power to simply construe it as such.  *See, e.g., Desser*, 2014 WL 4258344, at *12. Defendants' mountain of a motion to dismiss is in reality a molehill and should be denied.

---

[47] *See* Compl., at ¶¶ 103-08, 223-26.

**D.   The *Abner* Plaintiffs' Claims Were Tolled by the Discovery Rule and *American Pipe*

**1.    The Discovery Rule.**

"In California, the discovery rule postpones accrual of a claim until 'the plaintiff discovers, or has reason to discover, the cause of action.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008). The discovery rule can toll the statue of limitations in one of two ways: (1) where the defendant, through fraud or concealment, attempts to prevent the plaintiff from bringing a cause of action; or the more traditional discovery rule where the cause of action is not known or reasonably knowable to the plaintiff. "[A] plaintiff's ignorance of wrongdoing involving a product's defect will usually delay accrual because such wrongdoing is essential to that cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914, 924 (Cal. 2005). And where the "wrongdoing was fraudulently concealed," the defendant's actions may act to toll the statute of limitations. *Hip Hop Beverage Corp. v. Michaux*, 2016 WL 8578912 at *4 (C.D. Cal. Nov. 30, 2016) (citing *Clemens*, 534 F.3d at 1024).

When pleading fraudulent concealment, the plaintiff has the burden of proving "(1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put him [or her] on inquiry." *Michaux*, 2016 WL 8578912 at *4 (C.D. Cal. Nov. 30, 2016) (quotation omitted).

In this particular case, the Taishan defendants have engaged in a well-established course of conduct intended to prevent the plaintiffs of availing their legal rights, including an MDL discovery process that should have, as early as 2010, allowed plaintiff's counsel and their clients to better determine which suspected boards were manufactured with defective drywall by which

specific companies[48] – not to mention the affirmatively concealed corporate confusion, direction, and agency between and among the Taishan, CNBM and BNBM entities.  The defendants even denied that they shipped their defective drywall to the U.S.  A party should not be permitted to deny liability, deny jurisdiction, refuse to engage in the discovery process, and otherwise evade the judicial process, with the bad faith and contempt that defendants have exhibited in these proceedings, and then seek to profit from their own misconduct.

Moreover, and even assuming that prescription were not suspended under fraudulent concealment (as well as *American Pipe,* as addressed more fully below), many, if not all, of the plaintiffs' claims are timely, as it took time for the plaintiffs to discover or have reason to discover the existence of a claim. *Henderson v. Pfizer*, 285 Fed. App'x. 370, 372 (9th Cir. 2008) (citing *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1054 (9th Cir. 2008)).  In other words, the plaintiffs' "products liability claims did not accrue until [they] had reason to suspect that [they] had been injured by a defective product." *Henderson*, 285 Fed. App'x. at 372 (citing *Fox*, 110 P.3d at 924). More specifically, with regard to latent defects in real property, the cause of action is tolled until "plaintiff either (1) actually discovered his injury and its negligent cause or (2) could have discovered injury and cause through the exercise of reasonable diligence. . . ." *Kirby v. Albert D. Seeno Construction Co.*, (1992) 11 Cal. App. 4th 1059, 1065, 14 Cal. Rptr. 604 (quotation omitted). This rule is consistent in keeping with the rule that a cause of action in product liability does not accrue until the plaintiff knows or should have known that it was a defective product that caused his or her injury.

---

[48] *See, e.g.,* PRE-TRIAL ORDER NO. 10 (instructing the Defendants to produce photographs of their "markings, brands, endtapes and other identifying markers").

In this case, no amount of reasonable diligence on the part of the *Abner* plaintiffs would have given them reason to suspect that it was a defective product that damaged their property until (a) the damage manifested, and (b) the property owner understood that it was defective Chinese drywall – and not some other problem with the air conditioning or electrical system – that was causing the damages. The drywall manufactured by Defendants, moreover, was purposefully designed so that the identity of its manufacturer would be difficult to discern.[49]

Furthermore, in any event, the fact that there were news stories about Chinese Drywall or attention on the litigation in no way changes the fact that some property damage manifested later than others. Not all drywall deteriorated at the same rate, and not all plaintiffs identified the fact that their homes had been damaged, even if they somehow had the wherewithal and ability to open up their walls and attempt to identify the drywall that was put into their homes.  The drywall, even where properly marked by the defendants, was not apparent to the naked eye, but was hidden behind paint, behind walls.  In some cases, for example, plaintiffs believed for years that their HVAC systems were defective, until undertaking inspections after years of recurrent failures.   The Defendants' argument that their acts that caused the damages ceased in 2006 is not relevant to this inquiry.

After the extensive litigation and discovery in this case, the Court is well aware of the lengths to which the Defendants went to conceal the nature of their product and their own identities as manufacturers. California law does require a plaintiff pleading that tolling applies to "show (1) the time and manner of discovery and (2) the inability the have made earlier discovery despite reasonable diligence." *Darringer v. Intuitive Surgical, Inc.*, 2015 WL 4623935 at *4

---

[49] *See* PRE-TRIAL ORDER NO. 10, photo catalog (some of the Taishan Defendants drywall was not marked or intentionally left blank).

(N.D. Cal. Aug. 3, 2015). Given the history of this litigation, the plaintiffs believe that they have sufficiently pled their case with regard to tolling. In any event, the inquiry is inherently individualized, and should not be considered in this manner, in this type of proceeding. *See, e.g., In re Deepwater Horizon*, 808 F.Supp.2d 943, 964-65 (E.D. La. 2011) (deferring the consideration of which individual plaintiffs' claims might be subject to dismissal for lack of presentment on defendant's Rule 12(b) motion to dismiss master complaint). At the very least, each plaintiff should be afforded the opportunity to come forward with case-specific allegations and/or evidence to establish notice and accrual for prescription purposes. *See, e.g., Darringer*, 2015 WL 4623935 at *5 (holding that plaintiffs who insufficiently pled facts to support tolling "may be able to correct the deficiencies in their allegations" and giving leave to amend); *Kirby v. Albert D. Seeno Construction Co.*, (1992) 11 Cal. App. 4th 1059, 1069, 14 Cal. Rptr. 2d 604 (holding that trial court abused its discretion in denying amendment of complaint where the evidence established "a reasonable probability that appellants can amend their complaint to state the necessary facts in support of the delayed discover rule.").

More importantly, the *Abner* plaintiffs filed their claims *prior to* the certification of the *Germano*, *Gross*, *Wiltz*, and *Amorin* plaintiffs' class. Their claims should no more be prescribed than any of the plaintiffs' in those actions. These people were in court pursuing their remedy in a timely fashion.

### 2.    *American Pipe* **Tolling Applies.**

To give the Court an idea of how little Defendants believe in their tolling argument, they devote one sentence to their argument that *American Pipe*[50] tolling does not apply in this case. The *Abner* complaint was filed during the pendency of class certification for the

---

[50] *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538 (1974).

*Germano/Gross/Wiltz/Amorin* complaints. Under the law of *American Pipe*, every claimant in *Abner* who fell under the umbrella of those nationwide class actions had their causes of action tolled while the court considered whether to certify the class. Moreover, the class actions eventually were certified. All of the *Abner* plaintiffs' claims were tolled from the date that the *Gross* complaint was filed in 2009 until class certification occurred on September 26, 2014.

In *American Pipe* and its successor case, *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345 (1983), the Supreme Court held that putative class members who wished to intervene or file individual suits after the putative class was denied certification could claim that the statute of limitations for their claims was tolled while the class certification decision was pending. While *American Pipe* specifically concerned intervening plaintiffs, *Crown, Cork* involved the tolling of the right of putative class members to bring their own suits individually. *Crown, Cork*, 462 U.S. 353-54. In both *American Pipe* and *Crown, Cork*, the original motion for class certification was denied.

Most recently, in *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1804 (2018), the Supreme Court confronted the issue of subsequent class actions filed after the original class was *denied* certification. There, the Court answered the question presented: "*Upon denial of class certification*, may a putative class member, in lieu of promptly joining an existing suit or promptly filing an individual action, commence a class action anew beyond the time allowed by the applicable statute of limitations? Our answer is no." (emphasis supplied)  Again, the situation contemplated is that the first class action is denied. *China Agritech*, 138 S.Ct. at 1806-1807 ("*American Pipe* tolls the limitation period for individual claims because economy of litigation favors delaying those claims until after a class-certification *denial.* If certification is granted, the claims will proceed as a class and there would be no need for the assertion of any claim

individually. If certification is denied, *only then* would it be necessary to pursue claims individually") (emphasis supplied).

Here, the *Abner* plaintiffs filed *during* the pendency of a *successful* attempt at class certification, not after the denial of one. The *Abner* plaintiffs meet all of the requirements of being class members in all the other class actions that have been filed in this case. Their rights have been protected since the original complaint in *Gross* was filed in 2009. The problem is, even after the *Gross* was filed, people all over the country were still discovering damage to their homes due to the installation of Chinese Drywall. These plaintiffs necessitated the filing of additional protective class actions, of which *Abner* was one.

The original class was certified. The *Abner* plaintiffs meet all of the requirements of the certified class. The only difference is that they are not permitted to invoke the default judgment against Taishan. Neither *American Pipe* nor *Crown, Cork* nor *China Agritech* discussed the situation here – where a class *was* certified, where a class action comprised of members of a pending class was filed *during* the interim before class certification, and where additional class members filed suit timely once they discovered that they had been injured.

Moreover, none of the line of *American Pipe* cases dispute the notion that "*American Pipe* tolls the statute of limitations during the pendency of a putative class action, allowing unnamed class members to join the action individually or file individual claims if the class fails." *China Agritech,* 138 S.Ct. at 1804.  At most, therefore, these cases should only prevent the certification of *Abner* as a class action, under Rule 23.   To the extent they cannot join the *Amorin* action, (due to the absence, in their case, of default), they should nevertheless be permitted to pursue their own individual claims in their own name.

### 3.    Dismissal of this Protective Action Would be Improper.

The recent Supreme Court pronouncements of *Daimler AG*[51] and *Bristol-Myers Squibb*[52] have yielded some uncertainty regarding the jurisprudence of personal jurisdiction.  To assure that plaintiffs' rights in this MDL were adequately attended, the PSC resorted to filing in some instances identical, protective actions in several jurisdictions to preserve statutes of limitations and jurisdictional arguments.  Defendants pejoratively characterize this *Abner* action as duplicative litigation that should be dismissed because its merits will be attended to in matters already decided by the Court and because the complaint "does not plead any unique facts."  Def. Brf. at 21. Defendants' argument lacks merit and loses all credibility when it is observed that some of the parties differ amongst the different protective actions.

While citing cases speaking to platitudes that duplicative actions should be dismissed, the Defendants gloss over the simple fact that this action was filed in California to preserve personal jurisdiction claims against the Defendants because certain California plaintiffs were injured there, and the Taishan Defendants targeted that state as a market to sell their drywall.  As BNBM readily admits it directly targeted and sold drywall into California in 2006-2007. Def. Brf. at 7-10. Further, Plaintiffs have proven that Taishan through TTP sold the Taishan-brand drywall in their homes.  These deliberate acts focused on actual sales to the forum state and justify jurisdiction in that forum.  As a protective action, the fact that the claims and some parties may be duplicative is not good grounds for dismissal.  To the contrary, under Fifth Circuit law dismissal of a protective action such as the matter *sub judice* would be error. *See Burger v. Am.*

---

[51] *Daimler AG v. Bauman*, 571 U.S. 117 (2014).

[52] *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017).

*Mar. Officers Union*, No. 97–31099, 1999 WL 46962, at *2 (5th Cir. Jan. 27, 1999) ("When the jurisdiction of the first-filed court to hear the dispute is uncertain, it is an abuse of discretion to dismiss the claims in the second-filed court with prejudice, as it creates the risk that the merits of the claims could never be addressed.").  *See also Chavez v. Dole Food Company, Inc*., 836 F.3d 205, 219 (3d Cir. 2016) (en banc) ("a court exercising its discretion under the first-filed rule should be careful not to cause unanticipated prejudice to the litigants before it." Where duplicative litigation exists generally a federal court should "enter a stay order that postpones adjudication of the dispute, not to dismiss the federal suit altogether.") (citing *Burger, supra*); *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 628–29 (9th Cir.1991) ("[W]here the first-filed action presents a likelihood of dismissal, the second-filed suit should be stayed, rather than dismissed," because "jurisdictional uncertainty ... at the very least ... counsels against outright dismissal.").

Because the Fifth Circuit (amongst the overwhelming majority of courts addressing protective actions) agrees that dismissal of such duplicative actions is an abuse of discretion, Defendants' motion to dismiss should be denied.

### 4.   Defendants' Contention That They Have Not Been Properly Served is Without Merit.

Both BNBM PLC and BNBM Group posit that this Court's Orders permitting alternative service (Rec. Doc. Nos. 19713, 18566, 17790), which intervention put a stop to the Defendants' efforts to avoid or evade service, was improperly decided.  They argue from antiquated briefing that the Court's original order was incorrect, while ignoring altogether this Court's reasoning in its Jurisdiction O&R that their gamesmanship regarding service was nothing short of "disingenuous."  Jurisdiction O&R at 98.  Plaintiffs disagree that this Court's order on alternative

29

service was incorrect.  Further, this Court's more recent ruling on the matter should control the

present motion as well:

> Based on the extensive procedural history of this case, the Court is convinced service on these entities has satisfied due process. Even without considering the agency and alter-ego relationships that exist between many of these related corporations, the evidence demonstrates the entities received adequate notice of this action and sufficient time to present their defenses. Additionally, these entities have refused to accept service at various points in this history of this litigation. To now argue these minor technical deficiencies should warrant dismissal is disingenuous. Thus, the Defendants' motion is denied in regards to their arguments that these claims should be dismissed for lack of proper service of process.[53]

These entities were well on notice of the Plaintiffs' efforts to raise the instant matters in

United States courthouses.  To still contend that they are not aware of these matters before the

Court when they are ably represented by some of the most powerful counsel in the United States

who have orchestrated their defenses from the inception of this litigation, is not well founded and

should be rejected.

## IV.   CONCLUSION

For the reasons set forth above, as well as in the PSC's Omnibus Response, and this

Court's Jurisdiction O&R, the Defendants' motion should be denied as to BNBM PLC.

Respectfully submitted,

Dated:  September 7, 2018

By: */s/ Russ M. Herman*
Russ M. Herman (La Bar No. 6819) (on the brief)
Leonard A. Davis (La Bar No. 14190) (on the brief)
Stephen J. Herman (La Bar No. 23129)(on the brief)
Charles M. King (La Bar No. 34621) (on the brief)
Herman, Herman & Katz, LLC
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
RHerman@hhklawfim.com
*Plaintiffs' Liaison Counsel MDL 2047*

---

[53] Jurisdiction O&R at 97-98 (emphasis added).

Arnold Levin (on the brief)
Fred S. Longer (on the brief)
Sandra L. Duggan (on the brief)
Keith Verrier (on the brief)
Nicola F. Serianni (on the brief)
Levin Sedran & Berman LLP
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
alevin@lfsblaw.com
*Plaintiffs' Lead Counsel MDL 2047*

**PLAINTIFFS' STEERING COMMITTEE**

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Robert M. Becnel,
Law Office of Robert M. Becnel
425 W. Airline Highway, Suite B
Laplace, LA 70068
Phone: (985) 359-6101
Fax: (985) 651-6101
robbecnel@aol.com

Salvadore Christina, Jr.
Becnel Law Firm, LLC
425 W. Airline Highway, Suite B
Laplace, LA 70068
Phone: (985) 536-1186
Fax: (985) 536-6445
schristina@becnellaw.com

Peter Prieto
Podhurst Orseck, PA
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
pprieto@podhurst.com

Bruce William Steckler
Steckler Gresham Cochran
12720 Hillcrest Road, Suite 1045
Dallas, TX 75230
Phone: (972) 387-4040
Fax: (972) 387-4041
bruce@stecklerlaw.com

Patrick Montoya
Colson, Hicks, Eidson
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
patrick@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
Echsner & Proctor, PA
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
The Lambert Firm
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@thelambertfirm.com

Pete Albanis
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Myers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
palbanis@forthepeople.com

James R. Reeves, Jr.
Reeves & Mestayer, PLLC
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@rmlawcall.com

Christopher A. Seeger
Seeger Weiss, LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5002
dan@wbmllp.com

Richard J. Serpe
Law Offices of Richard J. Serpe
Crown Center, Suite 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com

Victor M. Diaz, Jr.
V.M. Diaz and Partners, LLC
119 Washington Ave., Suite 402
Miami Beach, FL 33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

Anthony D. Irpino
IRPINO AVIN HAWKINS LAW FIRM
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

Gerald E. Meunier
Gainsburgh, Benjamin, David,
Meunier & Warshauer, LLC
2800 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2800
Phone:  (504) 522-2304
Fax:  (504) 528-9973
gmeunier@gainsben.com

## OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W., Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, which will serve a notice of the uploading in accordance with the procedures established in MDL 2047, on this 7th day of September, 2018.

<u>/s/ Leonard A. Davis</u>
Leonard A. Davis
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com
Plaintiffs' Liaison Counsel
MDL 2047

*Co-Counsel for Plaintiffs*

34