# EXHIBIT "B"

```
09:06:07   1              UNITED STATES DISTRICT COURT
                          EASTERN DISTRICT OF LOUISIANA
           2

           3    ***********************************************************

           4    IN RE:  CHINESE-MANUFACTURED          Docket No. 09-MD-2047
                DRYWALL PRODUCTS LIABILITY            New Orleans, Louisiana
           5                                          Wednesday, August 15, 2018

           6
                ***********************************************************
           7
                            TRANSCRIPT OF MOTION PROCEEDINGS
           8          HEARD BEFORE THE HONORABLE ELDON E. FALLON
                             UNITED STATES DISTRICT JUDGE
           9

          10    APPEARANCES:

          11    FOR THE PLAINTIFF STEERING
                COMMITTEE:                            LEVIN, FISHBEIN, SEDRAN & BERMAN
          12                                          BY:  ARNOLD LEVIN, ESQ.
                                                      510 Walnut Street, Suite 500
          13                                          Philadelphia, PA 19106

          14

          15    FOR THE TAISHAN DEFENDANTS:          ALSTON & BIRD
                                                      BY:  CHRISTINA H. EIKHOFF, ESQ.
          16                                          One Atlantic Center
                                                      1201 West Peachtree St.
          17                                          Suite 4900
                                                      Atlanta, GA 30309-3424
          18

          19

          20    FOR CNBM AND BNBM ENTITIES:          ORRICK
                                                      BY:  JAMES STENGEL, ESQ.
                                                      51 West 52nd St.
          21                                          New York, NY 10019-6142

          22
                                                      PHELPS DUNBAR
          23                                          BY:  HARRY ROSENBERG, ESQ.
                                                      365 Canal St., Suite 2000
          24                                          New Orleans, LA 70130

          25
```

1

2     Official Court Reporter:          Karen A. Ibos, CCR, RPR, CRR
                                        500 Poydras Street, Room HB-406
3                                       New Orleans, Louisiana 70130
                                        (504) 589-7776
4

5

6        Proceedings recorded by mechanical stenography, transcript
      produced by computer.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

P R O C E E D I N G S

(WEDNESDAY, AUGUST 15, 2018)

(MOTION PROCEEDINGS)

09:13:44    (OPEN COURT.)

09:13:44         THE COURT:  Be seated, please.  Good morning, ladies and

09:13:46    gentlemen.  Call the case, please.

09:13:47         THE DEPUTY CLERK:  MDL-2047, *in re:  Chinese Manufactured*

09:13:52    *Drywall Products Liability Litigation*.

09:13:53         THE COURT:  Counsel make their appearance for the record,

09:13:55    please.

09:13:55         MR. LEVIN:  Arnold Levin for the Plaintiff Steering

09:13:59    Committee, sir.

09:14:00         MS. EIKOFF:  Christy Eikhoff for Taishan.

09:14:03         THE COURT:  Let me say a word or two about the matter

09:14:03    first --  I'm sorry.

09:14:07         MR. STENGEL:  Jim Stengel for CNBM and BNBM.

09:14:09         THE COURT:  Anybody else?  Okay.  And we have a number of

09:14:13    other lawyers in the case.

09:14:19         We're here today to discuss the trial plan in the Taishan

09:14:23    cases.  As we all know, we've been dealing with this Chinese

09:14:32    drywall case, as we term it, for about nine years now, and a large

09:14:40    part of the case is over involving Knauf, but the Taishan, et al,

09:14:49    cases have not been able to be resolved.  So I am convinced that

09:14:55    after a number -- a lot of discovery that the parties conducted and

09:15:03  1  a number of trials, both with and without a jury, that I've done

09:15:11  2  about as best as I can to give the attorneys an opportunity to look

09:15:15  3  at the case, to decide whether or not there's some way of globally

09:15:21  4  resolving the case, some method, some approach, something done.

09:15:28  5  But that hasn't worked.

09:15:29  6          So now it comes time to send the cases back, those that I

09:15:35  7  can send back, and those cases that are involving Louisiana

09:15:42  8  products, Louisiana houses, structures, to try the cases.  And so

09:15:51  9  that's where we are now.

09:15:53  10         I sent back a number of cases to Florida, I'll be sending

09:15:58  11  a number of cases back to Virginia so that those judges can begin

09:16:02  12  the process of resolving the cases by trials.  And I'll do that now

09:16:08  13  in Louisiana.

09:16:10  14         We've got two class action cases that we're dealing with:

09:16:21  15  One is the *Amorin* and the other is the *Brooke* cases.  They're both

09:16:26  16  together involving Louisiana products.  The Louisiana houses total

09:16:33  17  about 919.  We need to, as I mentioned to the parties a moment ago,

09:16:41  18  as I see it, at least at the outset -- and I shared this with them

09:16:47  19  because it's been my experience that in these cases the reason that

09:16:52  20  they can get resolved is that the lawyers involved in these types

09:16:57  21  of cases are really the best of the best.  It's just the way it is.

09:17:05  22  And this case is no exception.

09:17:09  23         And so I find that it's helpful to tap into that

09:17:13  24  experience, that knowledge, that ability in trying to come up with

09:17:21  25  plans to resolve the cases.  And so I always discuss these with the

09:17:27 1   attorneys and invite them to respond.

09:17:30 2          The way I see it, at least at the outset in any event,

09:17:35 3   and this is not in stone, it's in pencil, but I see that they're

09:17:41 4   the two areas:  The *Amorin* cases and the *Brooke* cases.

09:17:45 5          Now, the *Amorin* cases, I've tried a number of those and

09:17:50 6   liability in my opinion has been established in those cases.  There

09:17:57 7   have been two appeals, two different groups of appellate judges

09:18:05 8   affirmed the cases, no cert has been asked for, so it's final.

09:18:14 9          In the *Amorin* cases, therefore, liability has been

09:18:17 10  established.

09:18:18 11         The *Brooke* liability has not been established.  Most of

09:18:22 12  the *Brooke* cases really involve Florida properties, and that will

09:18:28 13  be dealt with by Judge Cook in that area.

09:18:32 14         But the *Amorin* cases is where my focus is going to be

09:18:36 15  primarily, and we first have to separate the *Amorin* docket from

09:18:44 16  those cases that are simply -- are just strict property damage

09:18:49 17  cases.  There are a large number of them that are property damage

09:18:53 18  cases.  There are also in there a number of property damage plus

09:19:00 19  personal injury cases.  We may have to separate those out.

09:19:05 20         With regard to the property damage cases, I would intend

09:19:10 21  to appoint a master to utilize the formula that has been

09:19:18 22  established in a number of cases, and to verify the square footage,

09:19:27 23  verify the present ownership, verify the location, address, things

09:19:34 24  of that sort, and then we'll simply apply the formula and come up

09:19:42 25  with a figure for the property damage.  Those cases, it seems to

09:19:48  1   me, are just administratively dealt with.  I don't see the
09:19:53  2   necessity for any trials in those cases, I think it's just I'll be
09:20:01  3   issuing judgments in that fashion.

09:20:03  4          With regard to the property plus personal injury, I think
09:20:07  5   that's a different grouping; and with personal injury, it seems to
09:20:13  6   me that jury trials need to be had for the jury to determine
09:20:19  7   personal injury.

09:20:20  8          Now, unlike the bellwether cases where I am trying to
09:20:27  9   give the lawyers an opportunity to view the case in the real world
09:20:32 10   setting of trials, I think that bellwethers work best if it's one
09:20:39 11   case at a time because that's closer to the real world.  It's a
09:20:43 12   bellwether case, it's not total real world, but you're getting a
09:20:46 13   jury, you're getting a case, one case, you're seeing how your
09:20:52 14   witnesses do, you're seeing how much it costs, you're seeing the
09:20:54 15   logistics of the trial.  It's best handled, in my opinion, one case
09:20:59 16   at a time.

09:21:00 17          But at this stage I am not -- no longer interested in
09:21:05 18   bellwether cases.  I am interested in resolution of cases.  So in
09:21:12 19   that area, I think multiple cases can be handled to the jury.  I
09:21:17 20   would like to start with maybe three cases and then work up to
09:21:20 21   maybe ten cases at a time so that we can finish with these cases.
09:21:32 22   And we'll be dealing with a jury who will set the damages, the
09:21:37 23   injuries and damages.

09:21:41 24          The challenging part is with regard to the property
09:21:45 25   aspect of those cases.  It seems to me that there's no need for the

09:21:51  1    jury to deal with property damage because we can deal with that

09:21:54  2    administratively.  So if that's the case, then do we do them

09:22:02  3    both -- those cases both at the same time and get the property

09:22:05  4    damage aspect with the personal injury damages and then I join

09:22:14  5    those together for a judgment?  I don't think it's appropriate to

09:22:19  6    have two judgments in every case, so it would be one judgment, but

09:22:24  7    I would use the property damage formula to figure the property

09:22:28  8    damage and then the jury response for the personal injury.

09:22:40  9          That's kind of what I envision based upon, you know,

09:22:45 10    dealing with this case for a long period of time, and also

09:22:49 11    reviewing the various briefs, which were very helpful to me, from

09:22:54 12    both sides.  But I shared that a moment ago with the attorneys for

09:22:59 13    both sides, and I would be interested in their responses and any

09:23:05 14    other comments that they might have.

09:23:06 15          Let me hear from the plaintiffs first.

09:23:09 16          MR. LEVIN:  Good morning, your Honor.  Arnold Levin.

09:23:16 17          We basically are very comfortable with what your Honor

09:23:19 18    has stated.  And as such, I probably should sit down.

09:23:26 19          But there are several issues that were briefed by the

09:23:32 20    defendants.  I think we've covered -- you've covered them at least

09:23:38 21    by what you've told us, but I would like to reserve my time in

09:23:41 22    rebuttal to deal with their arguments of due process, if they're

09:23:45 23    still going to make it; the jury trial demand, if they're still

09:23:48 24    going to make it; the nature of the default judgments, if they're

09:23:54 25    still going to make it.  And I think I can be very brief at that

09:24:00  1    time, five or ten minutes; and if your Honor will give me leave,

09:24:03  2    I'll sit down.

09:24:05  3            THE COURT:  Okay.  Fine.  Christy.

09:24:08  4            We've talked also about the question of discovery, and

09:24:15  5    there's no question in my mind that the defendants need some

09:24:19  6    discovery in the personal injury aspects of the case.  They haven't

09:24:24  7    had anything, they, I assume, haven't received any recent reports.

09:24:30  8    So the discovery aspect of those cases needs to be done, so I

09:24:34  9    recognize that.  I would like to see if we can expedite it, but

09:24:40 10    discovery needs have to be satisfied.

09:24:42 11            MS. EIKOFF:  Sure, your Honor.  Christy Eikhoff on behalf

09:24:47 12    of Taishan.  Jim Stengel is going to be making a separate argument

09:24:52 13    on behalf of his clients BNBM and CNBM.  And as the Court knows,

09:24:57 14    those parties are differently situated from Taishan.

09:25:00 15            THE COURT:  Right.

09:25:01 16            MS. EIKOFF:  We recognize, as the Court has said, that

09:25:02 17    the defaults have been upheld by the circuit court and that Taishan

09:25:05 18    is in default, so we are in a different situation from those other

09:25:09 19    entities.

09:25:10 20            Your Honor, I would -- I am going to slightly rearrange

09:25:15 21    the order that I was planning to cover things today because I want

09:25:19 22    to make sure I get clarification and share with the Court our

09:25:25 23    perspective of the categories of damages.

09:25:27 24            THE COURT:  Sure.

09:25:28 25            MS. EIKOFF:  The Court has referred to property damage

09:25:32  1   this morning versus personal injury damage.  Those are not the

09:25:36  2   distinctions that we have been using, and even, frankly, that the

09:25:39  3   PSC has been using in the course of this litigation.  The more

09:25:45  4   relevant distinction, your Honor, between categories of damages in

09:25:50  5   this case so far has been within the umbrella of property damage,

09:25:53  6   the distinction between remediation damages and non-remediation

09:25:57  7   damages.

09:25:58  8       Non-remediation damages covers other categories of

09:26:03  9   damages that could still be considered property damage, but -- and

09:26:09 10   are not "personal injury damages."  It includes personal injuries,

09:26:13 11   alternative living expenses, loss of use and enjoyment, appliances,

09:26:20 12   foreclosure, bankruptcy, short sale.  There's a whole laundry list.

09:26:27 13       The distinction between remediation and non-remediation

09:26:31 14   is important because this Court certified a class for remediation

09:26:35 15   damages only, and this Court has also identified a formula that can

09:26:44 16   be used for current owners only for remediation damages only.  And

09:26:57 17   I will get into why even that isn't quite as simple as it sounds.

09:27:03 18       But at this point, your Honor, the current owner

09:27:06 19   remediation damages is actually a very small aspect of this case

09:27:12 20   now, because in the original claimants and plaintiffs that came to

09:27:19 21   the court, many have sold the properties so they're former owners

09:27:23 22   now, and many have already remediated their properties and so

09:27:26 23   they're outside of the class.  The majority of this case, of the

09:27:30 24   claimants in this case, your Honor, at this point are outside of

09:27:33 25   the class.

09:27:33  1          And so that is the basis for the plan that we have

09:27:40  2     proposed, and I would like to go ahead and skip to the first slide.

09:27:44  3     I'm sure the Court is familiar with Occam's razor, which is the

09:27:49  4     principle that the simplest solution tends to be the right one.

09:27:52  5     And here, Taishan has submitted the simplest plan, but it's the

09:27:56  6     right plan because it is the most efficient.  And we'll show you,

09:28:02  7     it's not delay, it's not inefficient, it actually gets to judgment

09:28:07  8     quickly, well under a year.  It follows Fifth Circuit law and it

09:28:11  9     follows constitutional law.

09:28:12  10          And, your Honor, we need to point out the violations of

09:28:15  11    both Fifth Circuit and Constitution law that we think are embedded

09:28:19  12    in the plan that has been submitted by the PSC.

09:28:29  13          Our plan is quick.  We're saying that within 37 days of

09:28:35  14    when the Court enters its order, we will have priority claimants

09:28:38  15    selected, 24 priority claimants.  That will be enough for us to

09:28:42  16    really understand all of the variations.  Our proposal is that

09:28:47  17    those 24 be selected based on categories of the product ID that

09:28:52  18    they have, and it will also include former owners and also include

09:28:56  19    perhaps bankruptcy, short sale.  We will try to get a good variety

09:29:01  20    of the issues that we're dealing with.

09:29:04  21          Discovery would be complete 60 days after that.  If we

09:29:08  22    need experts -- I don't think either party has decided whether or

09:29:11  23    not they will need experts -- but if we need experts, that entire

09:29:15  24    expert discovery process - depositions, reports, rebuttal - all of

09:29:20  25    that would take 120 days.  And then we're into pretrial briefing

09:29:24  1    within 75 days after that.

09:29:25  2              So what we're looking for is we would be ready for the

09:29:29  3    first trial on damages in six to ten months.  That is an efficient

09:29:33  4    plan.  And it's more efficient than the PSC's plan and it makes

09:29:37  5    more sense because, as the Court has recognized, as the PSC has

09:29:41  6    recognized, we need to take depositions of everybody anyway because

09:29:47  7    everybody has non-remediation damages.  There are no claimants in

09:29:55  8    this case that have claimed only remediation damages and nothing

09:29:58  9    else.  They're asking for, on top of their remediation damages,

09:30:03 10    they want their loss of use and enjoyment, they want their

09:30:06 11    alternative living expenses, they want a whole host of other

09:30:09 12    things.

09:30:10 13              And I'll note, your Honor, that very, very few of the

09:30:12 14    claimants in these cases have alleged personal injury.  Personal

09:30:17 15    injury is a minuscule part of this case, if any part of this case

09:30:22 16    at all.  It's really about all property damage but the remediation

09:30:26 17    versus the non-remediation damages.

09:30:29 18              THE COURT:  Would you propose liability trials also?

09:30:32 19              MS. EIKOFF:  No.  No, your Honor.  Because, again,

09:30:34 20    Taishan, we know we're in default.  So what we're saying is that --

09:30:38 21    these damages, your Honor, are not liquidated.  When you have

09:30:41 22    unliquidated damages, even a defaulted defendant, it is entitled to

09:30:46 23    defend against that and the plaintiff has to prove the damages.

09:30:49 24              And so we're saying, let's do a short expedited discovery

09:30:55 25    period for everybody, for all categories of damages.  So just to

09:30:59   1   illustrate kind of the bizarreness of the PSC's plan, under their

09:31:06   2   plan we're deposing everybody, we're deposing 800 claimants, we're

09:31:10   3   deposing them all -- which, by the way, I don't think it's possible

09:31:14   4   in the amount of time that they've proposed, but that's what

09:31:17   5   they're proposing.

09:31:18   6          We propose we depose everybody.  But in those depositions

09:31:21   7   we can ask about them about certain of their property damages, but

09:31:25   8   we can't ask them about other property damages unless we get leave

09:31:28   9   of court, and that just doesn't make sense.  If people are going to

09:31:30  10   be deposed, let's ask about all of their damages.  If there are

09:31:34  11   going to be trials, let's try all of their damages together.  So

09:31:37  12   that's why we have proposed the priority claimants.

09:31:40  13          We've got a single track for all damages, it all gets

09:31:42  14   done in six to ten months, and it's more efficient than their plan

09:31:48  15   because we're going to be taking these depositions anyway.  We

09:31:51  16   might as well be asking them all of the questions that we have.

09:31:54  17          And to be clear, there are contested issues on even

09:31:58  18   remediation damages.  It sounds easy to say, well, there's a

09:32:02  19   formula and there's square foot, but there's a lot of questions

09:32:07  20   about whether they ever had Taishan drywall in their property and

09:32:12  21   whether they have changed the size of their house and where it was

09:32:16  22   and where the drywall came from.  So there are questions that we

09:32:21  23   have that make it more complex than just simply applying a formula.

09:32:25  24          But, your Honor, just to go to the next slide.

09:32:29  25          THE COURT:  Would you propose one trial at a time or

09:32:32  1  multiple trials?

09:32:34  2       MS. EIKOFF:  So, your Honor, our proposal actually does

09:32:36  3  not directly address that question, but we have proposed 24

09:32:39  4  priority claimants.  I know that our client would be open to

09:32:44  5  grouping some of those if it makes sense to group some of those,

09:32:48  6  your Honor.

09:32:49  7       But one thing that is important to know about the

09:32:52  8  remediation damages, I just was saying that there's a lot of

09:32:56  9  contested issues there.  Well, the Fifth Circuit and Louisiana law

09:32:59  10  actually prohibits the application of the formula to a claimant who

09:33:04  11  has already remediated.  And we've got -- we cited it in our

09:33:10  12  briefs, we've got it here in the PowerPoint, that using an estimate

09:33:17  13  for property damage where the property has already been repaired is

09:33:22  14  improper because you need to look at the repairs.

09:33:24  15       Now, the PSC has often said, and it's a point well taken,

09:33:29  16  well, you know, people may not have done a good job because they

09:33:32  17  were doing the best they could with the resources they had.  That

09:33:35  18  is well and we get that but that is an assumption.  And in the

09:33:39  19  court of law, we can't just assume that they didn't do a good job.

09:33:43  20  We need to see what they actually did.  And if it wasn't a good job

09:33:47  21  and if the receipts show that they are entitled to more, then

09:33:52  22  that's how it would be litigated.  But we can't just assume that

09:33:57  23  everyone did an improper job and should get the formula anyway,

09:34:00  24  especially when you have binding law that says it's improper to use

09:34:04  25  an estimate when the damages have already been incurred.

09:34:10 1          Also, the PSC's plan says, well, we want to get judgment

09:34:15 2    on remediation damages, so we want Cal Mayo to work with the

09:34:18 3    spreadsheet; and then once he applies the formula and does the

09:34:21 4    math, then it's going to spit out a number.  And they've already

09:34:24 5    said they want that number to be more than half of a billion

09:34:29 6    dollars.  Well, that's not -- even if that were allowed -- and

09:34:32 7    we'll get into why we think that that violates the due process of

09:34:36 8    the defendants.  Even if that were allowed, they can't do anything

09:34:39 9    with it because it won't be a judgment.  The Fifth Circuit law

09:34:46 10   black letter says you can't collect or appeal anything that's a

09:34:50 11   judgment if it doesn't include all of the categories of damages.

09:34:55 12   So we think, again, that's another reason why their process is more

09:35:00 13   complex, more convoluted, and it doesn't gain anything.

09:35:04 14          The PSC -- we cited these in our brief.  The PCS's

09:35:08 15   response did not address these cases at all, so we see this as

09:35:14 16   undisputed.

09:35:15 17          Next please.

09:35:16 18          Finally, your Honor, constitutional due process.  The

09:35:21 19   plaintiff -- there are twin principles that are mutually

09:35:23 20   reinforceable in due process, and these principles apply to us even

09:35:27 21   in default.  The plaintiffs still have the burden of proof and the

09:35:31 22   defendants have a right to mount a defense.  That doesn't go away

09:35:35 23   under Rule 55, the Supreme Court has said that.  The PSC's plan

09:35:40 24   seeks to shift the burden to us to tell Cal Mayo why the drywall is

09:35:48 25   not Taishan.  So they say it's Taishan and then we have to prove

09:35:51   1   that it's not, that's improper.  The process that they say that we

09:35:57   2   need to go through has the Special Master making decisions on

09:36:03   3   categories, so they just say -- he just says any drywall that has a

09:36:08   4   made in China mark is Taishan or isn't Taishan.  Well, if you look

09:36:12   5   at what has been submitted for proof, there are dozens of

09:36:15   6   variations of drywall that say made in China.

09:36:20   7           And there are also dozens of variation of the quality of

09:36:24   8   proof.  Some claimants have a full inspection report with clear

09:36:28   9   pictures from every room, and some claimants have a single, blurry

09:36:33 10   photograph.  And they're saying that the special master would just

09:36:37 11   treat them the same.  Wouldn't even look at them.  Literally

09:36:41 12   wouldn't even look at it.  Would just decide, oh, well, if it says

09:36:44 13   made in China, it either is Taishan or it isn't Taishan.  That

09:36:49 14   violates our due process, your Honor.

09:36:51 15           And by saying that we can't dispose -- they're saying we

09:36:54 16   aren't allowed to depose anyone about their product ID, we can't

09:36:57 17   ask them any questions, so the single blurry photograph, the

09:37:01 18   example I gave, we can't ask the plaintiff:  "Well, where did this

09:37:04 19   picture come from?  What room was it taken in?  Who took it?"

09:37:10 20           And then, what's also very problematic about this is that

09:37:13 21   the PSC is seeking to expand the class definition.  And so if you

09:37:19 22   look at their plan, they say, "We have a formula.  We love it.  We

09:37:22 23   want it to apply not just to current owners," which is what the

09:37:25 24   class is defined, "we also want it to apply to people who have

09:37:29 25   already remediated," which we say violates Fifth Circuit law,

09:37:33  1   because it does, "we also want to apply it to former owners, even

09:37:38  2   though it's outside of the class.  We also want to apply it to new

09:37:40  3   owners.  Oh, and by the way, we also want to apply it in *Brooke*, a

09:37:45  4   case where liability has not even been established yet.  So let's

09:37:47  5   go ahead and work into our plan that we're going to be applying it

09:37:50  6   to *Brooke* as well."  That violates our due process, your Honor, and

09:37:54  7   it should not be permitted.

09:37:57  8        Finally, speaking of *Brooke* because we were accused of

09:38:02  9   ignoring it, we have not ignored it.  So here is what we propose on

09:38:07 10   *Brooke*.  It is improper to weave *Brooke* into the *Amorin* process.

09:38:13 11   This Court has already acknowledged that and we appreciate that.

09:38:17 12   There has been no default in *Brooke* as the Court has acknowledged.

09:38:21 13   There is no class.  So this idea of let's just go ahead and apply

09:38:24 14   the formula in *Brooke* in the next two months or something is simply

09:38:31 15   not permissible.

09:38:33 16        In fact, I just want to point out how far they're going

09:38:37 17   with *Brooke*.  They have in the first 45 days in their schedule,

09:38:41 18   they're going to submit motions for sanctions against us for our

09:38:48 19   conduct in other cases.  We've got to recognize *Brooke* for what it

09:38:56 20   is, which is a different case and a new case.  It is a case that

09:39:00 21   has the vast majority of its claimants in Florida, so we think

09:39:03 22   Florida should be the center of gravity for *Brooke*.

09:39:06 23        Your Honor has not remanded *Brooke* yet.  We think *Brooke*

09:39:10 24   should be remanded.  And when it is remanded, then we think that

09:39:14 25   the timetable for the hundred odd *Brooke* claimants in Louisiana

09:39:19  1   should mirror the timetable that is established by the Florida

09:39:23  2   court for the 800 plus *Brooke* claimants.

09:39:26  3          And then what we're going to advocate for in Florida is

09:39:30  4   that *Brooke*, the new case, needs to be trifurcated into three

09:39:34  5   threshold issues:  First, we need to look at statute of limitations

09:39:38  6   because the *Brooke* claims were filed so late in the game, years and

09:39:44  7   years after this litigation was underway; then we'll look at class

09:39:48  8   certification to see whether it can become a class; and then if it

09:39:53  9   is a class or isn't a class, we'll address issues of liability

09:39:57 10   which are available in that case because it is not presumed that

09:40:00 11   the drywall is defective, they have to prove it.

09:40:05 12          So, your Honor, I am happy to answer any questions for

09:40:08 13   the Court.

09:40:09 14          THE COURT:  No, that's fine.  Let me hear from Jim.

09:40:25 15          MR. STANGEL:  If you'll indulge us for a moment, your

09:40:30 16   Honor, we need to switch over some technology.

09:40:33 17          THE COURT:  Sure.

09:40:43 18          MR. STENGEL:  Your Honor, Jim Stengel for CNBM and BNBM.

09:40:47 19          I hesitate to enter into what happened before we appeared

09:40:52 20   in this litigation because there is an extensive prior procedural

09:40:56 21   record.  But one point that I am not sure I agree with your Honor

09:40:59 22   is we haven't had bellwethers in this case.  There were Virginia

09:41:04 23   properties tried in the *Germano* proceedings years ago, we have not

09:41:08 24   been involved in any such proceeding.  We have been through a

09:41:11 25   substantial amount of litigation before your Honor, obviously, but

09:41:14  1    there aren't bellwethers.

09:41:17  2            Your Honor observed early on that this is a case that

09:41:34  3    should settle and you probably have the personnel in the courtroom

09:41:37  4    to do that.  We agree with that.  But at the outset, I will say I

09:41:44  5    am responding to your Honor's description of a proposal this

09:41:47  6    morning, as well as the PSC.  I think what your Honor proposes,

09:41:51  7    while efficient in some ways, does further violence to due process

09:41:56  8    rights of the defendants.  And to do that to further skew that

09:42:00  9    value, to tilt the playing field in our perspective, from my

09:42:05 10    clients' perspective, is further away from what we would view as

09:42:09 11    balanced is a mistake, and I think it will complicate the process

09:42:12 12    of resolving these matters.

09:42:14 13            Now, we've made a slightly different proposal from

09:42:17 14    Taishan in terms of how to proceed, but in large measure, I won't

09:42:21 15    repeat what Ms. Eikhoff said because we largely agree in approach.

09:42:25 16    We do think we need discovery on alternate living expenses and

09:42:29 17    property damages that are components that we as the defendants know

09:42:32 18    nothing about.  We also believe the supplemental profile form,

09:42:37 19    although useful, is tantamount to interrogatory answers, it's not

09:42:45 20    the be all and end all of discovery, even as to their mediation

09:42:46 21    damage component.

09:42:46 22            So there's more work that needs to be done, and we think

09:42:50 23    our process is -- the Taishan and CNBM and BNBM proposals provide

09:42:53 24    the Court with a working structure to push these cases towards

09:42:58 25    resolution, and I'm afraid what the PSC has proposed and what your

09:43:03  1    Honor proposes takes us, frankly, further away from where we need

09:43:08  2    to be.

09:43:08  3          Now, specifically from the context of BNBM and CNBM.  And

09:43:13  4    I -- Mark, let's skip the description of the PSC plan because I

09:43:20  5    think we're dealing with something slightly different now.

09:43:24  6          The fact that Taishan is in default even if we were

09:43:28  7    proceeding under Rule 55 does not end the discovery rights of the

09:43:32  8    defendants - defendants being Taishan, BNBM and CNBM.  The PSC

09:43:40  9    tends to view this through the lens of:  We have liability, we have

09:43:44 10    a spreadsheet process, we're finished.  But as your Honor knows,

09:43:48 11    we've seen nothing on alternative living expenses, loss of use and

09:43:51 12    enjoyment, and there are a myriad of other issues embedded in the

09:43:55 13    damage determination that have to be addressed.

09:43:58 14          Next slide, Mark.  And the other sort of failing, I

09:44:04 15    think, from the PCS's approach -- and I want to make sure your

09:44:08 16    Honor doesn't fall into this trap as well -- as the Federal Rules

09:44:10 17    of Evidence apply with full force and default proceeding and we

09:44:13 18    can't shortcut this no matter how tempting it is in the name of

09:44:18 19    efficiency to do that.

09:44:19 20          So here we're going to have to have some form of

09:44:22 21    proceeding where there's real evidence and the burdens are in the

09:44:26 22    right place.

09:44:27 23          And here is one of our primary objections -- and your

09:44:31 24    Honor did not specifically address this point, but it's certainly

09:44:34 25    deeply embedded in the PSC's approach.  There is in effect, through

09:44:38 1    Cal Mayo's process or otherwise, an inversion of the burdens of

09:44:43 2    proofs, and there's no legal basis to do that.

09:44:46 3        The plaintiffs still bear the burden of proving their

09:44:49 4    claims, even under a default situation.  So nothing we do should

09:44:53 5    shorthand that, and again, why I think Taishan and CNBM and BNBM

09:44:59 6    moved in the direction of a more limited number of trials is the

09:45:04 7    idea that the trials themselves are going to have to be more

09:45:06 8    extensive proceedings than I'm afraid your Honor and the PSC may be

09:45:11 9    contemplating.

09:45:11 10       And now I am going to turn to the specific situation of

09:45:18 11   BNBM and CNBM, because your Honor has made statements about the

09:45:20 12   fact that there really aren't issues as to liability for us because

09:45:25 13   we're alter egos with Taishan.  Frankly, your Honor, I don't

09:45:28 14   believe that's sustainable.  This is a chart from your Honor's

09:45:32 15   findings of fact and conclusions of law.  You'll see in Louisiana,

09:45:37 16   *Amorin* only CNBM is in default; and that's not a default judgment,

09:45:41 17   that's a preliminary default.  Neither of the BNBM entities are in

09:45:47 18   default.  And that has legal significance in how we proceed here.

09:45:51 19       I don't think there's any basis to proceed on an

09:45:53 20   imputation basis to give the default to the BNBM entities for the

09:45:58 21   following reasons:  If it's BNBM to BNBM -- or excuse me, Taishan

09:46:05 22   to BNBM, your Honor ruled only that you found there was under, as

09:46:12 23   to Louisiana cases, SBE would apply but your Honor specifically in

09:46:19 24   your opinion limited that finding to jurisdictional purposes.

09:46:22 25   That's a fact reservation of some substantial significance here as

09:46:31  1   there are temporal components as to when the attribution theory can

09:46:35  2   apply.  So within the case, there is no basis to say because

09:46:39  3   Taishan is in default, we don't dispute that fact, BNBM and BNBM,

09:46:44  4   PLC should be also in default, or CNBM company for that matter.

09:46:48  5        They take another approach to say, no, no, no, it's not

09:46:52  6   an imputation theory, it's a matter of collateral estoppel or claim

09:46:57  7   preclusion.  Doesn't work either because the matter of black letter

09:47:01  8   law that the only preclusive aspects are matters that were actually

09:47:06  9   litigated and the black letter law is defaults to not create a

09:47:10  10  preclusive effect.

09:47:12  11       So we're left with parties with a substantial interest,

09:47:14  12  which are remote to the processes your Honor has noted, to

09:47:17  13  manufacturing, sales, any aspect to the actual production of

09:47:20  14  drywall.  But what the PSC would do is substantially truncate our

09:47:26  15  rights in the interest of making sure there are assets available.

09:47:31  16       Now, this also implicates some procedural rights.  And

09:47:36  17  our view is the B and C entity that's in this case are entitled to

09:47:44  18  try this matter before a jury.  We may ultimately elect not to do

09:47:48  19  that, but it's our right and one of the limitations we think on

09:47:50  20  shorthand approaches to trying these cases.  Certainly to mass

09:47:56  21  consolidations or the spreadsheet process is we think we retain

09:48:00  22  these rights.

09:48:00  23       And there are two grounds for that:  One, because we

09:48:05  24  think that are not taken from us.

09:48:08  25       The other is Rule 38 and this is -- there are obviously

09:48:12  1   courts that have come out both ways on this issue.  But the premise

09:48:15  2   is that once a party has elected, Rule 38 doesn't allow them to

09:48:19  3   unilaterally withdraw their demand for a jury.  And there are cases

09:48:24  4   in a default setting that say that's still the case.  So we

09:48:29  5   think -- and it may be a complication that's not welcome by the PSC

09:48:31  6   or, in fact, the Court, we have to design a program that maintains

09:48:35  7   the jury trial rights of CNBM and BNBM.

09:48:40  8           This gets us to who we choose, and I think this is

09:48:43  9   implicated in your Honor's proposal as well as the PSC's --

09:48:54  10          THE COURT:  I'm sorry.

09:48:55  11          MR. STENGEL:  Thank you, your Honor.

09:48:57  12          There is no reason, frankly, and this gets to my initial

09:49:00  13  point that I think we still need a bellwether process and that will

09:49:04  14  hopefully herd the cats into some form of resolution here.  But it

09:49:08  15  would be counterproductive under either the PSC's proposal or your

09:49:13  16  Honor's proposal to have a skewed, non-random distribution of cases

09:49:18  17  to be tried, because we all as experienced counsel will take

09:49:23  18  signals from the outcome of trials.  We're not irrational.  But to

09:49:29  19  the extent one party or the other is allowed to sort of tilt the

09:49:34  20  balance in favor of their best cases, it means you're getting

09:49:37  21  nothing but noise out of the process.  And I don't think it's on

09:49:41  22  the table at this point, although I hesitate given I don't think

09:49:45  23  *Germano* was intended to be preclusive and it became that through

09:49:48  24  the damage formula.  Obviously *Chevron* makes it absolutely clear

09:49:54  25  there can be no preclusive effect of bellwethers, or even initial

09:49:58  1    trials if we're going to try all of these things in short order.

09:50:02  2           *Brooke*, Ms. Eikhoff addressed.  *Brooke* is a fresh start.

09:50:11  3    We may not like it, but it's a late filed case.  There are no

09:50:13  4    defaults.  Liability is still fully at issue.  And we agree that

09:50:15  5    since the center of gravity in the *Brooke* litigation is in Florida,

09:50:20  6    and she may not welcome this, but *Brooke* is largely Judge Cook's

09:50:25  7    problem.  But we ought not get too wrapped up with the Louisiana

09:50:28  8    *Brooke* claimants here.  But I just want to make clear that we did,

09:50:31  9    in fact respond to the PSC on that point.

09:50:34 10           THE COURT:  Okay.

09:50:35 11           MR. STENGEL:  In closing, your Honor, we think Taishan

09:50:37 12    and CNBM and BNBM have made rational proposals.  They are clearly

09:50:44 13    aggressive in terms of how quickly we would move through a

09:50:49 14    discovery process and get to bellwether trials.  And granted,

09:50:52 15    there's a central premise there, which is different from your

09:50:55 16    Honor's, that bellwethers still would have some utility in this

09:50:58 17    litigation.  But that is our belief and we don't see any way that

09:51:02 18    we can proceed with either the PSC's proposal, or in fairness your

09:51:06 19    Honor's, without doing substantial violence to the due process

09:51:09 20    rights of the defendants.

09:51:11 21           And to reiterate, it's counterproductive in terms of

09:51:16 22    moving towards a resolution for the defendants to be put in the

09:51:19 23    position where they think this court is in some way rolling over

09:51:22 24    their rights, that will merely harden positions and make it more

09:51:27 25    difficult to get to where we need to be.

09:51:29  1        So unless there are any questions.

09:51:31  2        THE COURT:  No.  Just the problem that I am faced with is

09:51:33  3   that we've been doing this for nine years now.  Every step of the

09:51:38  4   way the defendant has resisted looking at the case.  I mean, we've

09:51:48  5   had jurisdictional issues and a bunch of other things.  It just is

09:51:59  6   apparent -- it appears to me, or at least it's a strong argument,

09:52:03  7   that the whole approach is just delay.  Delay because people die,

09:52:10  8   delay because they lose their homes, delay because they're

09:52:16  9   frustrated and giving up.  And it's a method, and I am not talking

09:52:23 10   about counsel, but it's just -- I don't know how much more I can

09:52:30 11   give you to look at from the standpoint of bellwethers.

09:52:36 12        I mean, we've discovered this case now for nine years.

09:52:40 13   Even going to China to take depositions.  And I think everybody

09:52:45 14   knows the facts of this case pretty well, and it just seems to me

09:52:53 15   that we're just -- we're finding ourselves in, you know, a Dickens

09:53:03 16   kind of Bleak House where we just keep discovering and keep moving

09:53:11 17   the case at glacial speed, and pretty soon the glacier melts and

09:53:18 18   you don't have anything.  And that concerns me.  I am trying to

09:53:22 19   figure a way of just bringing this to a head and getting rid of the

09:53:28 20   case.

09:53:28 21        Not settlement.  I've given up on settlement.  I don't

09:53:31 22   think settlement is feasible, and if I have to be the one to

09:53:36 23   approve it, I am probably not going to approve it.  So we need

09:53:40 24   trials in these cases, and I just need to get either my colleagues

09:53:46 25   in state court, particularly those that have issues of punitive

09:53:50  1    damages and things of that sort, they've got to get on with their

09:53:54  2    thing and I've got to get on with mine.  I just don't see starting

09:53:59  3    bellwethers again.  I mean, you know, we just --

09:54:03  4          It's nine years out at this time.  It's nine years.  And

09:54:08  5    I hear you and I understand your argument and it's not without

09:54:15  6    sincerity and it's certainly not without citations, but that's the

09:54:21  7    pickle that I am in dealing with the case.

09:54:23  8          MR. STENGEL:  Well, your Honor, but as a practical

09:54:25  9    matter, and we tried to address this -- and I am not going to

09:54:28 10    address what happened before we got involved in the litigation

09:54:31 11    because I simply don't know.  But if you take the span of the case

09:54:36 12    since the parties re-entered and re-engaged, it's been a little

09:54:41 13    slow, but we've largely been engaged, other than times where with

09:54:46 14    everyone's consent we stopped because we thought we had something

09:54:50 15    positive by way of resolution, so we lost time.  No one's fault but

09:54:55 16    it happened.

09:54:56 17          But, your Honor, our fundamental point is that it doesn't

09:55:02 18    behoove anyone's interest, certainly not the claimants -- and I am

09:55:06 19    not attempting to wrap myself in the interest of the claimants

09:55:10 20    here, obviously I represent a defendant.  But if something goes

09:55:13 21    forward, if a defective trial process is unleashed, we've already

09:55:17 22    got a matter before the Fifth Circuit, your Honor has heard me in

09:55:22 23    particular on the due process issues that we think are already

09:55:26 24    implicated with the damage model, with class certification, with

09:55:28 25    contempt, et cetera.

09:55:31  1          There are a broad buffet of issues here, most of them

09:55:35  2  worthy of consideration by this circuit.  We go forward with the

09:55:38  3  PSC plan or indeed with what your Honor has outlined -- granted in

09:55:44  4  outline form, not with precision -- I think we are buying greater

09:55:49  5  delay because I think the end result -- and I understand your

09:55:57  6  Honor's pessimism about settlement.  And I can't represent to you

09:56:01  7  that fortune will smile and we'll become reasonable and settle this

09:56:04  8  thing in X days.  I wish I could.  It should.  But it hasn't

09:56:07  9  happened yet for a variety of reasons.

09:56:09  10          But I don't think it's because some sinister orientation

09:56:13  11  towards delay on the part of my clients.  I think our behavior both

09:56:17  12  in resolution discussions and in litigation has been contrary to

09:56:21  13  that.  But I think your Honor should give due consideration to the

09:56:24  14  fact that our paths here diverge fairly substantially, but the real

09:56:32  15  risk is we unleash unlimited war, we're trying ten cases at a time

09:56:38  16  in what I would guess is probably under Rule 42 an improper

09:56:43  17  consolidation.  But we will, I will virtually guarantee your Honor,

09:56:46  18  end up on that in the Fifth Circuit at some point.

09:56:49  19          It will be a long time coming because we don't think

09:56:53  20  54(b) allows a partial damages judgment.  And we could spend

09:56:57  21  another two or three years -- and again, your Honor, I am trying to

09:57:00  22  be very careful, this is not a lawyer threatening your Honor --

09:57:04  23          THE COURT:  No, I understand that.

09:57:05  24          MR. STENGEL:  -- this is just an effort to make an

09:57:08  25  objective assessment of what's likely to happen.  We could be here

09:57:10  1   for sometime even under your Honor's notion.  If we're going to try

09:57:14  2   every case, 900 cases, unless we throw due process just completely

09:57:18  3   out the window, and even with the employment of all the district

09:57:24  4   judges here, who I believe have other things to do, we're going to

09:57:26  5   be here for years.  And we don't want to do that with the idea that

09:57:30  6   all it's going to do is arm the parties with what they think are

09:57:34  7   unlimited set of grounds for appeal.

09:57:36  8           So I think our proposals, and there is a leap of faith

09:57:39  9   for your Honor here, I admit that, that rationality will begin to

09:57:44 10   intrude and the parties will be pushed closer together.  But we at

09:57:48 11   least, I think, posit an exit strategy within some reasonable

09:57:54 12   amount of time.  And my perception of reasonable may be different

09:58:00 13   from your Honor's because I haven't lived through all nine and a

09:58:03 14   half or ten years.

09:58:04 15           THE COURT:  All right.  Thank you.

09:58:04 16           MR. STENGEL:  But that's where we're trying to go, your

09:58:04 17   Honor.

09:58:05 18           THE COURT:  I appreciate it.  Thank you very much.  Let

09:58:07 19   me hear from the plaintiffs.

09:58:12 20           MR. LEVIN:  Well, I wasn't going to mention the aborted

09:58:17 21   settlement, so I won't, whose at fault.  But, your Honor, you put

09:58:22 22   your finger right on what the problem was.  After counsel and the

09:58:26 23   Court invested so much time in this case over nine years, we're now

09:58:36 24   at square one.  Francis Scott Key had one song.  The defendants

09:58:40 25   have one position:  Delay.

09:58:48 1        Your Honor, they won two percent of the cases.  There's

09:58:53 2   no settlement.  There's no talk of settlement.  There's no want of

09:58:57 3   settlement on their part.  It would take 31.9 years to conclude

09:59:02 4   this.

09:59:03 5        This is not what an MDL is about.  An MDL at least was

09:59:11 6   established to get results in mass torts, whether they be

09:59:17 7   antitrust, securities, or mass torts.  And I invite your Honor to

09:59:21 8   look at the *PPA* case of the Ninth Circuit, 460 F.3d 1217.  "For all

09:59:38 9   its work, multidistrict litigation assumes cooperation by counsel

09:59:42 10  and macro-, rather than micro-, judicial management."  Why?

09:59:48 11  Because the Court's business and Counsel's business is to resolve

09:59:53 12  things.  And there's no resolution here.

10:00:00 13       Mr. Stengel says he's new to the process.  He wasn't here

10:00:04 14  when we began.  Your Honor, Orrick, his law firm, was here before I

10:00:14 15  was here in this case.  They were in China, they were in China

10:00:21 16  advising these defendants that they couldn't collect -- that we

10:00:26 17  couldn't collect judgments in the United States.  They were in

10:00:29 18  China advising these defendants that they didn't have to appear.

10:00:35 19  They are the fault of nine years.

10:00:50 20       This case can be resolved in a proper fashion with a

10:00:57 21  Special Master.  If it's a non-jury trial -- case, and I'll get to

10:01:03 22  why it should be a non-jury case -- the plaintiffs can make a prima

10:01:12 23  facie case before the Special Master with regard to move in/move

10:01:16 24  out, foreclosure, short sales.

10:01:19 25       God did we hear a story yesterday on foreclosures and

10:01:23  1  what a beautiful, personal injury, mental anguish case there would

10:01:30  2  be for what that fella went through that spoke to this court

10:01:35  3  yesterday.

10:01:36  4          The Special Master can make recommendations and then an

10:01:42  5  Article III judge can deal with the recommendations that the

10:01:46  6  Special Master makes.  If people want to resolve matters, they know

10:01:53  7  how to do it.  Some of us have been doing this for over 50 years.

10:02:08  8  Now --

10:02:08  9          THE COURT:  How would you propose to handle it?

10:02:11 10          MR. LEVIN:  I would propose putting *Brooke* aside, and I

10:02:15 11  don't believe that we should just let *Brooke* go to Florida for

10:02:19 12  resolution because your Honor has been involved in the liability

10:02:23 13  aspects of this case.  If the *Brooke* case is tried here and

10:02:27 14  processed here, there is an awful lot of knowledge that the Court

10:02:31 15  has that we don't have to re-invent the wheel in Florida.

10:02:38 16          I would propose that we use your plan, your Honor:  Have

10:02:43 17  a Special Master appointed; that we not have to redo the class

10:02:50 18  hearings; the remediation decision that your Honor wrote; that

10:02:58 19  square footage, ownership, and product ID be established before the

10:03:04 20  special master; and that we give a Special Master a plan with

10:03:10 21  regard to the non-pure remediation aspects; and that we present our

10:03:15 22  evidence, create our prima facie case, and let the Special Master

10:03:20 23  make recommendations.  Perhaps the best thing to do is to meet with

10:03:25 24  that Special Master collectively and provide a plan of the Special

10:03:30 25  Master for your court to view.

10:03:33 1          But we are not going to try all of these cases for
10:03:36 2   31 years.  And to pick out 24 cases and start right now after nine
10:03:43 3   years is just not proper.
10:03:45 4          THE COURT:  How do you deal with their constitutional
10:03:47 5   argument?
10:03:48 6          MR. LEVIN:  Well, let me tell you how we deal with the
10:03:51 7   constitutional argument, your Honor.
10:03:53 8          First of all, the Fifth Circuit has said in *Dierschke v.*
10:03:59 9   *O'Cheskey,* 975 F.2d 181, that there is no due process in a default
10:04:06 10  judgment, you don't have it.
10:04:08 11         How do we deal with the jury trial?  Rule 38 does not
10:04:14 12  come into play here.  Usually you get a default judgment, the
10:04:20 13  plaintiff has demanded a jury trial and he wants a jury trial in
10:04:24 14  default and that's how it goes up.  But there is a Northern
10:04:31 15  District of Texas case, Flexible Innovations v. IDEA Max, 2013
10:04:46 16  Westlaw 12126232.  I can't get used to those cites, your Honor, I'm
10:04:55 17  too old.  And in a Rule -- under Rule 55 you do not need the jury
10:05:02 18  trial.
10:05:05 19         As to the multiple defaults, every defendant has been
10:05:11 20  defaulted in this case in at least one of the *Amorin* cases, and the
10:05:16 21  *Amorin* cases are all the same in three different jurisdictions
10:05:21 22  because of the personal jurisprudence involved.  And they were all
10:05:28 23  before your Honor, we were dealing with them altogether.  It was an
10:05:32 24  MDL, and, your Honor, you know, has so indicated in your damage
10:05:36 25  opinion.  So I don't see a problem there.

|          |    |                                                                          |
|----------|----|--------------------------------------------------------------------------|
| 10:05:41 | 1  | The problems that are here are created problems for delay                |
| 10:05:48 | 2  | so that all -- because the defendants are playing the long game.         |
| 10:05:53 | 3  | In the end, we'll all be dead.  Some of us chronologically we'll be       |
| 10:06:02 | 4  | dead sooner than others, but eventually the entire client base will      |
| 10:06:07 | 5  | be dead.                                                                 |
| 10:06:11 | 6  | And for CNBM and BNBM who are single business                            |
| 10:06:16 | 7  | enterprises, alter egos, to come in here right now and say they          |
| 10:06:20 | 8  | know nothing about this case, they have been in this case forever.       |
| 10:06:25 | 9  | They have been formulating the plan as to how to defend this case        |
| 10:06:33 | 10 | forever.  They were in China before they were in the United States       |
| 10:06:37 | 11 | and before these cases were commenced, or at least when the first        |
| 10:06:42 | 12 | complaint landed in China.  And for the defendants to say when they      |
| 10:06:48 | 13 | came in here that they didn't understand American law when they had      |
| 10:06:51 | 14 | American lawyers telling them what the American law was, only shows       |
| 10:06:55 | 15 | that there is only one thing that they're interested in, and that's      |
| 10:07:00 | 16 | delay.                                                                   |
| 10:07:01 | 17 | Your Honor, give us a chance.  We'll take the chance with                |
| 10:07:05 | 18 | regard to their due process arguments for the Chinese defendants.        |
| 10:07:09 | 19 | We'll take the chance with regard to their argument that they know       |
| 10:07:12 | 20 | want a jury trial.  We'll take the chance with the fact that there       |
| 10:07:15 | 21 | is no -- that the defaults are inappropriate.  We'll take all of         |
| 10:07:19 | 22 | those things because after nine years, we've got to do something         |
| 10:07:25 | 23 | and we shouldn't -- I learned a long time ago that if you play the       |
| 10:07:32 | 24 | game by other people's rules, you're apt to lose because they wrote      |
| 10:07:38 | 25 | the rules.  And I think it's time not to play by the defendants'         |

10:07:43  1  rules.  And your Honor, you know, we'll be guided by what you have

10:07:48  2  to say.

10:07:49  3         THE COURT:  Let me ask you one question.  The class they

10:07:52  4  say include -- does not include all owners, it just includes the

10:07:57  5  present owners.

10:07:59  6         MR. LEVIN:  It just included current owners at the time,

10:08:01  7  yes.  But you can take your findings and apply them to everybody

10:08:05  8  else.  Now, there may be --

10:08:06  9         I would suggest that there are issues here, there's

10:08:08 10  always issues.  But like in pharmaceutical cases, you have a

10:08:15 11  science day.  Perhaps we have a motions day and the plaintiffs do

10:08:20 12  their motions, defendants do their motions, and we take them one at

10:08:24 13  a time over a day or two and resolve them all before your Honor.

10:08:28 14         THE COURT:  Okay.

10:08:30 15         MS. EIKOFF:  May I respond?

10:08:31 16         THE COURT:  Yes.  Sure.

10:08:39 17         MS. EIKOFF:  Your Honor, I just want to respond to a

10:08:41 18  couple of the things that Mr. Levin said.

10:08:44 19         I was surprised to hear him say that the Fifth Circuit

10:08:48 20  has held that due process doesn't apply to a defaulted defendant.

10:08:53 21  That is not the law.  I will cite to you a case *Frame v. SH, Inc.*,

10:09:01 22  967 F.2d 134 (VERBATIM), that says that discretion granted to

10:09:08 23  judges for damages adjudication under Rule 55 is bounded at its

10:09:13 24  outer limits by constitutional due process concerns.  That is

10:09:17 25  citing a Supreme Court case called *Hovey v. Elliott* from 1897.

10:09:23  1    I've gotten to know that case.  It was one of the first cases that

10:09:26  2    I read when we were engaged in this matter in 2015.  Alston & Bird

10:09:34  3    was never involved in the cases before that.

10:09:40  4         In that case, the argument that was being made by the

10:09:44  5    adverse party was that a party that was in contempt and that was in

10:09:48  6    default was entitled to no constitutional rights.  I thought that

10:09:51  7    was an interesting case based on where I was coming from and where

10:09:57  8    our client was at the time.

10:09:59  9         And that case holds, Supreme Court, in no uncertain terms

10:10:04 10    that the Constitution applies and whether a party is in default and

10:10:08 11    whether a party is in contempt, they are still allowed to defend

10:10:13 12    themselves against the imposition of damages, and that is the basis

10:10:16 13    of the due process issues that we've raised today.

10:10:19 14         I want to respond, also, to this allegation that our end

10:10:25 15    game is delay or driven by delay, all we want to do is delay, and

10:10:31 16    that our plan is for delay.  As I put up on the screen earlier and

10:10:36 17    we have in the packet, under the plan that we propose, they would

10:10:40 18    get to an appealable, collectable judgment through a trial, through

10:10:46 19    the first trial in less than a year, in six to ten months.

10:10:54 20         They say that their plan is so much faster.  Well, their

10:10:59 21    plan has changed today, because the plan that they submitted did

10:11:02 22    not have Cal Mayo doing all of the trials on all of the issues.

10:11:06 23    They've shifted to that because it's convenient for them.  Their

10:11:10 24    plan was for every single claimant, all 800 to 900 of them to be

10:11:16 25    deposed on non-remediation damages only and to have discovery on

10:11:22  1  non-remediation damages only and then for all of them to be tried.

10:11:27  2  Our plan is actually faster.  Our plan makes more sense.

10:11:31  3         And I will close on this note.  They say in their brief

10:11:34  4  that their plan is ambitious.  It's ambitious because it's

10:11:38  5  unbounded by constitutional principles.  It's also unbounded by

10:11:43  6  realistic principles.  And so I would ask that if the court does

10:11:49  7  consider their plan, they have a long list of things that they say

10:11:52  8  that the parties need to do in the first 15 days, it includes

10:11:58  9  extensive briefing, it includes obligations on both parties.  Of

10:12:04  10  course we would ask the Court to reject their entire plan; but if

10:12:08  11  it does accept their plan, we would ask that the first 15-day mark

10:12:12  12  be shifted to 30 just so that the parties can more realistically

10:12:16  13  get things done, your Honor.

10:12:17  14         THE COURT:  All right.  Thank you very much.

10:12:20  15         MR. STENGEL:  Your Honor.

10:12:22  16         THE COURT:  You want to respond, Jim?

10:12:24  17         MR. STENGEL:  And I won't respond to the ad hominem

10:12:28  18  attacks.  I think I was fairly precise in saying we hadn't been

10:12:30  19  involved here before your Honor, which was totally accurate.

10:12:34  20         I think two things are instructive there.  One was this

10:12:39  21  sort of on the fly expansion of what Cal Mayo would consider, to

10:12:42  22  include, apparently, claims that we have all, both sides conceded

10:12:46  23  had to be discovered and litigated.  That and the sort of fascicle

10:12:52  24  restructuring of what the class covers and does not, I think

10:12:55  25  bespeaks of a fairly substantial indifference to error here.

```
10:13:01   1          Procedural error matters and our clients do have rights
10:13:04   2   and we're here to assert those rights and will continue to do so.
10:13:07   3   And to the extent the PSC wants to take the position of, well, you
10:13:11   4   know, close is good enough.  It's not.  And that gets us exactly in
10:13:15   5   the adverse end game I outlined of we go through substantial
10:13:21   6   efforts here, we spend a lot of your time and our time and our
10:13:26   7   clients' time, and we end up with an indefensible outcome in the
10:13:31   8   circuit.  That serves no one's interest.  Thank you, your Honor.
10:13:34   9          THE COURT:  Okay.  I got it.
10:13:34  10          MR. LEVIN:  Your Honor, 30 seconds?
10:13:38  11          THE COURT:  Sure.  Go ahead.
10:13:41  12          MR. LEVIN:  Yes, we did expand what Cal Mayo would be
10:13:45  13   doing, and the reason we did that is we were listening to your
10:13:49  14   Honor and made the adjustment based on what we heard the Court say.
10:13:54  15          THE COURT:  Okay.  Harry.
10:13:55  16          MR. ROSENBERG:  Not substantively.  But when we were in
10:13:59  17   chambers this morning with your Honor, you suggested that it might
10:14:02  18   serve the Court to submit briefs after this hearing, your Honor,
10:14:07  19   because there are a number of issues that have been raised almost
10:14:11  20   for the first time, and we would respectfully ask the Court to
10:14:15  21   afford at least the parties ten business days to do so.
10:14:19  22          THE COURT:  Let's do it in five days, so I'll let you do
10:14:22  23   it.
10:14:22  24          MR. LEVIN:  If they can do five days, we would like five
10:14:25  25   days to reply.
```

```
10:14:26   1         MR. ROSENBURG:  I expected it would be simultaneous, your

10:14:30   2    Honor.  Mr. Levin --

10:14:30   3         MR. LEVIN:  I don't know what the issues are.

10:14:32   4         MR. ROSENBERG:  Well, he heard all of the issue.  I don't

10:14:34   5    want to argue the case, but Mr. Levin was pretty articulate.  He

10:14:39   6    can raise the issues like we can, and we'll do it simultaneously.

10:14:42   7         THE COURT:  Yes, I agree, simultaneously.  Let's do it in

10:14:44   8    five days.  The court will stand in recess.  Thank you.

10:14:47   9         MR. ROSENBERG:  Thank you, your Honor.

10:14:48  10         THE DEPUTY CLERK:  All rise.

10:14:50  11      (WHEREUPON, THE PROCEEDINGS WERE CONCLUDED.)

          12

          13                        *  *  *  *  *  *

          14

          15                      REPORTER'S CERTIFICATE

          16

          17         I, Karen A. Ibos, CCR, Official Court Reporter, United
                States District Court, Eastern District of Louisiana, do hereby
          18    certify that the foregoing is a true and correct transcript, to the
                best of my ability and understanding, from the record of the
          19    proceedings in the above-entitled and numbered matter.

          20
                                   ___/s/ Karen A. Ibos_____
          21                       Karen A. Ibos, CCR, RPR, CRR, RMR
                                   Official Court Reporter
          22

          23

          24

          25
```