UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L JUDGE FALLON MAG. JUDGE WILKINSON |

THIS DOCUMENT RELATES TO:
ALL CASES

# Special Master's Written Reasons Concerning Requests for Discovery

On January 10, 2014, the Court adopted Pretrial Order No. 28.[1] The Court noted that the parties had entered into nine class settlements, and that those settlements included funds which could be used to pay attorneys' fees and expenses. The Court then promulgated a six-step process to determine entitlement to the funds. In Step Five, the Court would determine the division of the global fee and cost award between individually-retained counsel and common benefit counsel. On July 18, 2016, the Court appointed the undersigned as Special Master "to conduct limited discovery regarding time and expense submissions, procedures, . . . and to make appropriate recommendations regarding [Step Five]."[2]

On July 20, 2016, the Special Master reached out to the involved attorneys to solicit their thoughts on discovery.[3] This started a process whereby the Special Master received input from the involved attorneys by formal submission or, more often, by email. This process is detailed in the Special Master record. Between July 18, 2016 and June 1, 2017 (the final day of the evidentiary

---

[1] R. Doc.17379.

[2] R. Doc. 20410.

[3] SM-16-07-20-0826. References to SM-\*\*-\*\*-\*\*-\*\*\*\* are to Special Master record documents, either in the Step Five phase or the Step Six phase.

hearing), the Special Master sent or received 460 emails concerning the Step Five determination.

Beginning on August 10, 2016, the Special Master periodically circulated detailed status reports to the attorneys.[4] The August 10 status report invited input concerning pending motions and the scope of discovery. On September 25, 2016, the Special Master promulgated Special Master Case Management Order No. 1, which addressed outstanding motions, ordered document production, and laid out a framework for depositions.[5]

On October 7, 2016, some Objectors sent a letter to the Special Master requesting more expansive discovery.[6] On October 28, 2016, the Special Master modified CMO No. 1 in response to the Objectors' request.[7]

On November 14, 2016, the Special Master promulgated Special Master Case Management Order No. 2, which established a protocol for the upcoming depositions.[8] In December 2016 and January 2017, the attorneys took four depositions: Philip Garrett (Court-appointed CPA)[9]; Russ Herman (Plaintiffs' Liaison Counsel, PSC member, and FC Co-Chair/Secretary)[10]; Sandra Duggan[11];

---

[4] SM-16-08-10-1257.

[5] SM-16-09-25-1644.

[6] SM-16-10-07-1332-1.

[7] SM-16-10-28-1739-1.

[8] SM-16-11-14-1746-1.

[9] FC exh. 29.

[10] FC exhs. 5-8 and 5-13.

[11] FC exh. 5-18.

and Arnold Levin (PSC member and FC Chair).[12]

In two letters dated February 8 and 15, 2017, Mr. Faircloth (one of the two appointed Objectors' Co-Liaison Counsel) requested additional discovery.[13] On April 5, 2017, the Special Master denied the requests, citing his reasoning in his October 28, 2016 ruling.[14]

On April 23, 2017, the Special Master issued the Case Management Order Regarding Evidentiary Hearing.[15] The CMO required an exchange of witness and exhibit lists, and furthermore set forth the rules governing the hearing. In the interest of efficiency, the Special Master encouraged the use of declarations in lieu of live testimony.[16]

On May 31 and June 1, 2017, the Special Master conducted an evidentiary hearing.[17] The Special Master stated that the entire MDL record would be considered part of the factual record (so that, in briefing the matter, the parties could refer to the MDL record to establish what the attorneys did or did not do for the common benefit).[18] The attorneys submitted approximately 750 exhibits into evidence. The following witnesses testified:

- Dawn Barrios, member of the PSC, testified concerning the work that she did for her individual clients.

---

[12]FC exh. 5-1.

[13]SM-17-02-08-1650-1 and SM-17-02-15-1521-1.

[14]SM-17-04-05-1653-1.

[15]SM-17-04-23-2058-1.

[16]*Id.* at 2.

[17]*See* Transcript of the Testimony of Fee Hearing, Day 1 (May 31, 2017); and Transcript of the Testimony of Fee Hearing, Day 2 (June 1, 2017).

[18]Transcript of the Testimony of Fee Hearing, Day 2 at 344 (June 1, 2017).

- Luis Gonzales, a claimant represented by C. David Durkee, testified that concerning the circumstances surrounding his claim, including the hiring of his own contractor to remediate his home, and his recovery pursuant to Option 2 of the Knauf settlement.

- Jake Woody, senior counsel for BrownGreer (settlement administrator for the MDL settlements) testified concerning BrownGreer's accounting of the settlement funds.

- Kerry Miller, counsel for Knauf; testified concerning the circumstances surrounding the Knauf settlement.

- Russ Herman, who has served as the Plaintiffs' Liaison Counsel, a PSC member, and the FC Co-Chair/Secretary, testified concerning the PSC's conduct of the litigation and the FC's suggested allocation.

- Eric Hoaglund, an Objector; testified concerning the work he did for his individual clients.

- C. David Durkee, an Objector; testified concerning the work he did for his individual clients.

In addition to receiving testimony, the parties admitted approximately 750 exhibits into evidence. Many of these exhibits had been obtained through discovery.

On September 12, 2017, the undersigned filed his Report and Recommendations into the record.[19] The undersigned subsequently transmitted to the Court the record that had been developed in the proceedings before the Special Master. This record included, among other things, written discovery, depositions, the transcript of the evidentiary hearing, and the exhibits that the parties had submitted into evidence.[20] On January 31, 2018, the Court issued its Order and Reasons Setting Common Benefit Fees,[21] thereby concluding Step Five.

On July 3, 2018, the Step Six Final Recommendation of the Majority of the Fee Committee

---

[19] R. Doc. 20950.

[20] This record is partially under seal. If necessary, any party to the Step Six proceeding may request to view documents from the record.

[21] R. Doc. 21168.

Regarding Allocation of the Common Benefit was filed into the record.[22] Numerous attorneys have filed responses. Some of these filings were under seal, but they have been made available for review by the interested parties.[23]

On July 3, 2018, the Step Six Final Recommendation of the Majority of the Fee Committee Regarding Allocation of the Common Benefit was filed into the record.[24] Since then, numerous firms have filed responses to the recommendation.

On August 21, 2018, the Court entered an order signaling its intent to appoint the undersigned as Special Master "to conduct limited discovery regarding time and expense submissions, procedures, and the relevant work of Philip Garrett, CPA, to make appropriate recommendations regarding these motions and objections."[25] The Court later affirmed the appointment.[26]

On August 22, 2018, the Special Master circulated an email to all attorneys known to have an interest in the Step Six determination:

> I have reviewed the memoranda that have been filed in the public record (those not under seal), and I see that there is a difference of opinion concerning whether we should conduct any further discovery. If a party believes that we should engage in any further discovery, please send a group email detailing what discovery you envision and explaining why such discovery is necessary in light of the record that has already been developed (including but not limited to the record that was developed in dividing the fund between

---

[22] R. Doc. 21455.

[23] SM-18-09-12-2255.

[24] R. Doc. 21455.

[25] R. Doc. 21702.

[26] R. Doc. 21777.

individually-retained counsel and common benefit counsel). Please email your thoughts in this respect (only if you support additional discovery) no later than the end of business on Wednesday, August 29, 2018. After I review any such proposals, I will set a deadline (probably five to seven days) for others to respond.[27]

Attorneys representing two firms[28] subsequently requested discovery. Attorneys representing 20 firms[29] (including all seven firms that were represented on the Fee Committee as wall as 12 firms that were not represented on the Fee Committee) have explicitly stated that they oppose discovery.

## Parker Waichman's requests

Parker Waichman submitted eight requests for discovery.[30] Baron & Budd joined in the requests.[31] The Special Master will address each in turn.

**1.    Common benefit time submissions made pursuant to the Court's Pre-trial Orders**

As the Supreme Court has noted, "[a] request for attorneys' fees should not result in a second

---

[27]SM-18-08-22-1123.

[28]Baron & Budd, P.C. and Parker Waichman LLP.

[29]The Lambert Firm, PLC; Steckler Gresham Cochran, PLLC; Reeves & Mestayer, PLLC; Morgan & Morgan; Becnel Law Firm, LLC; Podhurst Orseck, P.A.; Whitfield, Bryson & Mason, LLP; Mason LLP; Kanner & Whiteley, L.L.C.; Martzell, Bickford and Centola; Taylor Martino, P.C.; Rhine Law Firm, P.C.; The Law Office of Robert M. Becnel; Herman, Herman & Katz, LLC; Levin, Sedran & Berman LLP; Seeger Weiss, LLP; Barrios, Kingsdorf & Casteix, LLP; Gainsburgh, Benjamin, David, Meunier & Warshauer, LLC; Law Offices of Richard J Serpe; and Krupnick Campbell Malone Buser Slama Hancock Liberman, P.A.

[30]SM-2018-08-29-0905-1

[31]SM-2018-08-29-1346.

major litigation."[32] During Step Five, the Special Master considered whether actual time sheets should be produced. The Special Master determined that the materials produced by the Court-appointed CPA were sufficient. The Court has made clear that the Court itself has involved itself in the vetting of the time and expense filings on a monthly basis:

> The Court required all attorneys expecting to recover a common benefit fee and cost reimbursement for performing common benefit work to report (1) the time spent and nature of the work and (2) the amount of cost expended and the purpose of the costs. These reports were made on a monthly basis to a Court-appointed certified public accountant ("CPA"). The CPA has on staff a paralegal whose task is to monitor and verify the attorneys' filings required by these guidelines. If the time reported by counsel for a particular task is non-descriptive or not for common benefit, then the time is rejected and counsel is so advised. Throughout this litigation, the Court has met monthly with the CPA to review the work performed and the costs expended by those performing common benefit work for the purpose of assuring the accuracy and reasonableness of the attorneys' filings. These reports have now been summarized and show the total amount of time spent by those seeking common benefit fees, the type of work performed by them and the cost expended. The time and cost reports reveal the attorneys who performed common benefit work and put up common benefit costs.[33]

Not all of the issues in Step Six are not identical to those in Step Five. But the evaluation of the common benefit attorneys' efforts, both quantitatively and qualitatively, was at issue in Step Five just as it is in Step Six. The Special Master adheres to his previous determination that opening the door to the time sheets which underlie the Court-appointed CPA's materials is not appropriate under the circumstances.

This request is denied.

---

[32]*Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983).

[33]R. Doc. 21168, p. 5.

**2. PTO 28 Exhibit B – Second Affidavits in Connection with Request for Allocation of Common Benefit Fee and Cost Award (see R. Doc. 21455 at p.5, ¶ 6)**

In Pretrial Order 28, the Court set a deadline for attorneys seeking common benefit to submit "Second Affidavits" to the Fee Committee.[34] The Second Affidavits initially were to be held by the Fee Committee in confidence.[35] However, Pretrial Order 28 went on to direct the Fee Committee to file the Second Affidavits with the Court under seal at the time the Fee Committee filed its Joint Fee Petition.[36] Therefore, on May 16, 2014, the Fee Committee filed the Second Affidavits with the Court under seal.

The Special Master is inclined to ask the Court to allow the parties with an interest in Step Six to view the Second Affidavits with the understanding that the documents still could not be shared with anyone other than the parties, their attorneys, and appropriate staff. The Special Master will reach out to the parties in this respect as described in the Conclusion below.

**3. Transcripts, minutes and agenda of the Fee Committee meetings when the allocation of common benefit fees or the process for allocating common benefit fees was discussed**

This request appears to be aimed at determining how the Fee Committee came to its recommended allocation. However, the Court has made clear that the Fee Committee's recommendation is only that – a recommendation.

> The Court reminds counsel that the Fee Committee is only one piece of the process the Court utilizes to determine the appropriate allocation of fees. The Court meets monthly with the appointed CPA to review all hours submitted by attorneys working in the MDL. The

---

[34] R. Doc. 17379 ¶15.

[35] *Id.*

[36] *Id.* n.9.

> Court appoints members of the PSC and other attorneys working in the MDL to the Fee Committee. . . .
>
> The Fee Committee makes a recommendation to the Court. This is only a recommendation, and one of several recommendations received by the Court. Attorneys are free to make objections to the Fee Committee Recommendations. Finally, the Court expects to receive yet another recommendation from the Special Master. Only after careful consideration of all of these recommendations, as informed by the Court's familiarity with the efforts reported, does the Court make decisions regarding the appropriate allocation of fees.[37]

The Court has charged the Special Master with making a recommendation independent of the Fee Committee. In doing so, the Special Master will consider the Fee Committee's recommendation and whatever evidence and arguments the Fee Committee submits. The Special Master will likewise consider anyone else's recommendations, evidence, and arguments.

This request is denied.

**4.  All memoranda, emails and other documents and written communications prepared by the Fee Committee or at the direction of the Fee Committee relating to the allocation of common benefit fees or the process for allocating common benefit fees**

This request is denied for the same reasons as Parker Waichman's third request.

**5.  All memoranda, emails and other documents and written communication prepared by the Fee Committee or at the direction of the Fee Committee assigning, approving, disapproving or disallowing common benefit work**

This request is denied for the same reasons as Parker Waichman's third request.

**6.  A list of the "objective criteria" relied upon by the Fee Committee in evaluating the contributions of common benefit counsel**

This request is denied for the same reasons as Parker Waichman's third request.

---

[37]R. Doc. 21686.

7. **All documents and written communications prepared by the Fee Committee discussing or pertaining to the Fee Committee's "subjective understanding of the relevant contributions of counsel toward generating the various Settlement Funds. . . ."**

   This request is denied for the same reasons as Parker Waichman's third request.

8. **All documents and written communications prepared by the Fee Committee discussing, pertaining to, evaluating or assigning weight to the relative contribution of common benefit counsel to the outcome of the litigation or the relief achieved**

   This request is denied for the same reasons as Parker Waichman's third request.

**Baron & Budd**

In addition to joining Parker Waichman's discovery requests, Baron & Budd has submitted its own. Specifically, Baron & Budd has requested "the common benefit hourly attorney time records and the Accounting requested in the Motion for Accounting [see Docs. 20728, 20993, 20995, and Primary Counsel's Post-Evidentiary Hearing Brief filed before Your Honor]."[38] For the reasons stated above, the Special Master continues to believe that the information that has already been provided by the Court-appointed CPA is sufficient in this respect.

# Conclusion

As stated previously, the Special Master is inclined to ask the Court to allow the parties with an interest in Step Six to view the Second Affidavits with the understanding that the documents still could not be shared with anyone other than the parties, their attorneys, and appropriate staff. If a

---

[38] SM-18-08-28-1542.

party objects to this proposed course of action, the party's attorney must submit an objection to the Special Master by email (balhoff@pbmbllc.com) by 5:00 p.m. on September 28, 2018. Any party failing to timely object will be considered as consenting to the Special Master's proposed course of action.[39] If even a single party objects, the Special Master will consult with the Court to determine the appropriate course of action.

In all other respects, the requests for discovery are denied.

/s/ Daniel J. Balhoff<br>DANIEL J. BALHOFF<br>SPECIAL MASTER

---

[39] In the event that the Special Master makes the Second Affidavits available, the parties may ask for additional time to submit the five-page memorandum that is currently due on October 5, 2018. *See* SM-2018-09-21-123.