UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br><br>SECTION: L |
| THIS DOCUMENT RELATES TO:<br><br>*Paul Beane, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG*, et al., No. 2:13-cv-609 | JUDGE ELDON FALLON<br>MAG. JUDGE WILKINSON |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO CONSTRUE SETTLEMENT AGREEMENT AND DEFINE SCOPE OF REVIEW**

Nine Plaintiffs[1] with already-remediated home claims (a total of sixteen distinct affected properties) were referred to the Special Master by this Court for a recommendation regarding reimbursable costs. In addition to receiving evidence from the Plaintiffs, the Special Master held two phone conferences with counsel for the parties to address what it perceived to be common questions of law, the scope of review, the proper contract interpretation, and the appropriate reimbursable costs that should be allocated to each plaintiff as settlement benefits.

Not surprisingly, the parties differed in significant ways regarding the scope of review by this Court (and Special Master), as well as contract interpretation of the Agreement, and the appropriate reimbursable costs payable to the Plaintiffs. Defendant Knauf's counsel argued that the "SETTLEMENT AGREEMENT REGARDING POST-DECEMBER 9, 2011 CLAIMS AGAINST THE KNAUF

---

[1] Plaintiffs with ARH claims are: Rick Asch, Asset Portfolio Service Company, Doodnauth Bahadur, CDO Investments, LLC, Andrew Kubick, Mohamed & Bibi Latiff, MCF

1

DEFENDANTS IN MDL NO. 2047" (R. Doc. 16978-1) ("*Beane* Agreement" or "Contract") allowed for unbridled review by the Court and Special Master. Plaintiffs hold the position that the Contract contains specifically agreed terms and provisions that limit the scope of review to reimbursable costs.

The Special Master solicited position papers from the parties and ultimately decided to move forward with review in a manner Plaintiffs believe is neither defined, nor allowed, by the Contract. During proceedings with the Special Master, the undersigned became aware that the Special Master, at the urging of defense counsel, had previously adopted an expanded scope of review involving claims presented by other plaintiffs' counsel and had adopted an expanded review and process completely unmoored from the limitations of the Contract. Furthermore, The Special Master cited a 2017 Order affirming that prior recommendation as proof that this Court adopted the expanded scope of review. (R. Doc. 20934). It does not appear that any party has previously requested for this court to construe the Contract, but these nine Plaintiffs contend that adoption of an expanded scope of review is clear error and that Doc. 20934 (or others like it) should not serve as precedent.

This memorandum provides this Court with the basis for Plaintiffs' position and support for the relief sought in its Motion to Construe.

I. **LEGAL ISSUES**

   A. **Louisiana Law Applies To The *Beane* Settlement Agreement.**

The parties agreed that the *Beane* Settlement Agreement, "shall be governed by, and construed and enforced in accordance with the substantive laws of the State

2

of Louisiana without regard to conflict of law principles." (R. Doc. 16978-1, Section VIII(D)). The Agreement also contains a merger clause that prohibits any parol evidence to be used in contract interpretation and also prevents additional undefined terms or additional requirements to be injected by the Court. (R. Doc. 16978-1, Section VIII(E)). The Contract is limited to the four corners of the document with the terms contained therein to be enforced according to Louisiana law, nothing more.

As a preliminary matter, Louisiana law provides that settlement agreements are governed by the same general rules of construction that are applicable to contracts. *Delesdernier v. Delesdernier*, 12-38 (La. App. 5 Cir. 5/31/12), 95 So. 3d 588, 599-600. And, with regard to interpretation of contracts, Louisiana law provides that the "[i]nterpretation of a contract is the determination of the common intent of the parties." LA. Civ. Code art. 2045 (2017). Contracts have the effect of law on parties and courts are bound to give legal effect to such agreements according to the parties' true intent. *Rivercity v. American Can Co.*, 600 F.Supp. 908, *affirmed* 753 F.2d 1300 (E.D.La. 1984). Conversely, where the true intent of the parties cannot be determined by the explicit terms and there is no demonstration of intent by the parties, the Court cannot insert its own terms. The contract controls. And, given the explicit constraint on interpretation by agreement of the parties, the Court cannot reach beyond the terms of the Contract.

Louisiana's Civil Code also provides that interpretation of a contract is the determination of the common intent of the parties. LA Civ. Code art. 2045 (2017). "The words of a contract must be given their generally prevailing meaning." LA Civ.

3

Code art. 2047 (2017).  "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." LA Civ. Code art. 2050 (2017).  "A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties." LA Civ. Code art. 2053 (2017).  Therefore, it appears that both the Louisiana Civil Code and case law are consistent with regard to contract interpretation principles.

> **B.** **The *Beane* Agreement is a Contract Controlled By the Terms of Agreement and Undefined Terms Must Be Given Their Generally Prevailing Meaning.**

> **1.  Parties Did Not Agree to Expand The Scope of Review.**

The 2011 KPT Settlement Agreement contains an exhibit (R. Doc. 12061-6, also labeled as "Exhibit A" to the Agreement) describing the benefits available to settling plaintiffs with already-remediated home claims - it specifically limited the scope of the court's review to reimbursable costs incurred by plaintiffs.   The 2011 KPT Settlement Agreement plainly states:

> **The scope of the Court's review shall be limited to the Reimbursable Costs set forth in Paragraph IV (D).**

(R. Doc. 12061-6, Section IV(C)(2)).

Under the terms of the 2011 KPT Settlement Agreement, the Special Master's role in the process is limited to providing this Court with a recommendation regarding the amount that a qualifying plaintiff is entitled to receive in reimbursable costs should the parties reach an impasse after a specific process (that included compelled mediation).  The *Beane* Agreement adopts Exhibit A to the 2011 KPT

4

Settlement Agreement without changing the scope of review in any way. (Doc. 16978-1). In fact, the parties adopted the very same Exhibit A in its entirety - neither expanding nor contracting the scope of review by the Court. The *Beane* Agreement states:

> **All Exhibit A Claimants who have self-remediated Affected Properties or who have entered into contracts to self-remediate Affected Properties between December 9, 2011 and July 31, 2013 are entitled to Remediation Fund Benefits as set forth in Section 4.3.7 of the Knauf Class Settlement and the Already Remediated Properties Protocol attached as Exhibit A to the Knauf Class Settlement.**

(R. Doc. 16978-1, Section II (B)).

It is the Knauf Defendants' position that the Special Master is compelled to engage in a significantly expanded scope of review, citing a second section in the *Beane* Agreement that they contend invites broad and unbridled additional scrutiny by the Court. The section of the *Beane* Agreement that Knauf's Counsel relies upon states:

> **Any Exhibit A Claimant or Exhibit B Claimant who purchased the Affected Property with knowledge that there was reactive Chinese Drywall in the Affected Property, who purchased after December 9, 2009 and failed to make reasonable inquiry, is not eligible for benefits under this Agreement absent the Knauf Defendants' consent, unless the Claimant was legally assigned the claim owned by the seller of the Affected Property. The claims of any such Exhibit A or Exhibit B Claimant shall be dismissed without prejudice from the Beane Complaint.**

(R. Doc. 16978-1, Section IV (D)).

It is noteworthy that the settling parties failed to explicitly declare their intention to expand the scope of review in the Contract. The parties do mention

5

"reasonable inquiry," as noted above, but the terms are not defined. There was no adoption of any pretrial order issued in MDL-2047 requiring a buyer to take any specific action to meet a "reasonable inquiry" standard, because there is not one. Likewise, there are no state or federal statutes requiring a buyer to take any action prior to purchase in order to evaluate whether a structure contains defective Knauf-made Chinese drywall. In either instance, the Contract would need to adopt such a standard, but it did not.

The parties also did not delineate the acceptable proof standard, and the parties did not suggest any methodology for review or a standard to apply by the Court. The Contract is silent.

Given these omissions, coupled with the limitation on parol evidence, this Court must remain cognizant of this absence of defined terms and conflicting provisions when applying accepted contract interpretation principles according to Louisiana law.

### 2. The Plain Meaning of "Reasonable Inquiry".

"When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." LA Civ. Code art. 2046 (2017). Typically, the use of extrinsic evidence is proper where a contract is found to be ambiguous after an examination of the four corners of the agreement. *Mobil Exploration & Producing U.S., Inc. v. Certain Underwriters Subscribing to Cover Note* 95-3317(A), 2001-2219, La.App. 1 Cir. 11/20/02, 837 So.2d 11, 23 (1 Cir. 2002). Here, given the absence of defined terms coupled with the explicit prohibition to venture beyond the four corners of the

document, this Court is without guidance regarding the intent of the parties. Furthermore, the Court is not permitted by this Contract to devise a new process for evaluation of claims.

In the order offered by Defendants, it appears that the Knauf Defendants persuaded the Special Master regarding expanded review. (R. Doc. 20934). The opposing plaintiff's counsel is unknown, but it was not the undersigned. There has been no prior course of dealing with any Doyle Firm clients on any ARH-related claim since Contract was executed. And, it appears that this Motion to Construe is the first request to this Court to address the issues contained herein.

It is a fact that no local ordinance where affected properties are located has required a prospective buyer to pay for an inspection prior to purchase. It is a fact that no state government has required a prospective buyer to pay for any inspection prior to purchase. It is a fact that the federal government has not required a prospective buyer to pay for any inspection prior to purchase. And, it is a fact that no pre-trial order has been issued in MDL No. 2047 requiring a prospective buyer, later a plaintiff, to pay for either a standard home inspection or Chinese drywall-specific inspection prior to purchase. For the Court to do so now would be an absurd result and not consistent with the terms of the Contract. Prior counsel involved in the already-remediated home claim referenced in R. Doc. 20934 obviously failed to point out that it is an absurd result to require a purchaser to pay for either a home inspection or a "Chinese Drywall Inspection."

The common definition for "reasonable" is, "using or showing reason, or sound judgment; sensible."[2] The antonym of sensible is "foolish." If the Court finds that Section IV(D) was intended by the parties to add two additional items for review (purchasing with knowledge of defective Chinese drywall and reasonable inquiry), then the extent of the inquiry and the finding must be based on the evidence presented. Plaintiffs' position is that a recommendation by the Special Master and later a review by this Court, must be a binary one – either Plaintiffs purchased with knowledge or they did not; either Plaintiffs acted sensibly in the given situation or they acted foolishly.

If this Court concludes that a plaintiff acted foolishly by purchasing a home containing defective Knauf-manufactured drywall, the finding should be in writing as contract interpretation is reviewable by an appellate court *de novo*.

It is Plaintiffs' position that this post-settlement process proposed by the defendants is the equivalent of a summary judgment proceeding. Under Louisiana law, a summary judgment shall only be granted in favor of the mover if all evidence, taken together with affidavits, if any, shows that there is no genuine issue of material fact. *Rapp v. City of New Orleans*, 95-1638, La. App. 4 Cir. 9/18/96, 681 So.2d 433, 436 (4 Cir. 1996). And, where a genuine issue of material fact exists in a Section IV(D) inquiry, with evidence viewed in a light most favorable to the non-moving party, the Court must rule in favor of the non-moving party (i.e., Plaintiff).

    C.    **Section IV(D) Terms Are Vague And Ambiguous.**

---

[2] Webster's New World College Dictionary, Fourth Edition, 2002, at Pg. 1194.

The parties have expressed two vastly different interpretations of the meaning of "reasonable inquiry" found in Section IV(D).  Plaintiffs take the position that no expanded review is warranted based on the terms of the Agreement – Section IV(D) is a statement of general agreement of the parties that explains to disqualified plaintiffs, that were left off or stricken from the exhibits to the agreement, exactly why they will not participate and receive settlement benefits.  The issue of disqualification and the interplay between counsel prior to defining a universe of settling claims (i.e., negotiation and dispositive motion practice) is typically conducted prior to reaching a settlement agreement.  It makes no sense to agree to conduct what is essentially dispositive motion (i.e., summary judgment) practice now, particularly since the Contract fails to contemplate any such process and standard.

Defendants argue that Section IV(D) opens this review process up and allows this Court to make up any standard of review and any scope of review it sees fit, including conducting "mini-trials" that in the past have resulted in requiring pre-purchase inspections by a plaintiff.  Without an express agreement to conduct such a review, it is clear error by the Court to create such a requirement now.  It is not consistent with the terms of the Contract and it is not consistent with contract interpretation principles outlined in the Louisiana Civil Code.

Under Louisiana law, three things are absolutely necessary to confection an obligation: 1) the thing, 2) the price, and 3) the consent.  *Trinity Carton Co., Inc. v. Falstaff Brewing Corp.*, 767 F2d 184, reh'g denied, 775 F.2d 301, certiorari denied 106 S.Ct. 1202, 475 U.S. 1017, 89 L.Ed.2d 315.  Conversely, under Louisiana law, no

9

contract is properly confected without consent of both parties to all essential terms of contract. *Id*. In this instance, the parties have not agreed upon a process to evaluate Section IV(D) challenges by the defendants - there was no meeting of the minds.

The terms of this Contract meet the definition of "vague and ambiguous" under Louisiana law. Under Louisiana law, the starting point in contractual interpretation is language of contract itself. LSA-C.C. art. 2046; *Mac Sales, Inc. v. E.I du Pont de Nemours & Co.*, 24 F.3d 747 (5th Cir. 1994). When a contract is expressed in unambiguous language, its terms will be given their plain meaning, and enforced as written. *Chisom v. Jindal*, 890 F.Supp.2d 696 (E.D.La. 2012). But, a contract is ambiguous if its terms are unclear or susceptible to more than one interpretation, or the intent of the parties cannot be ascertained from the language employed. *Preston Law Firm, LLC v. Mariner Health Care Management Co.*, 622 F.3d 384 (5th Cir. 2010). Under Louisiana law, parties may not create an ambiguity where none exists within the four corners of the contract. *Id*. Here, the tension between Section II(B) and Section IV(D) is plainly evident.

Louisiana law also provides that a doubtful contractual provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties. *Red River Parish Port Com'n v. Headwaters Resources, Inc.*, 698 F.Supp.2d 684 (W.D.La. 2010). The nature of the contract and usages are inapplicable here. As this is the first instance that plaintiffs represented by Doyle Law Firm have been confronted with this issue and there is no course of

conduct by the parties, this avenue is likewise foreclosed here. But, if the Court looks to contracts of a like nature between the parties, it is left with no other choice than limiting the scope of review for already remediated homes to reimbursable costs as the parties fully agreed in the 2011 KPT Settlement Agreement - that was adopted in the Contract.

Until the scheduling conference interactions with the Special Master, the undersigned counsel was not aware of the Special Master's deviation from the limited scope of review articulated in the 2011 KPT Settlement Agreement, later affirmed in the Contract. To be clear, the undersigned counsel has had no previous course of dealings with the Special Master or Court in this context (i.e., previous settled already-remediated home claims were settled by agreement); consequently, there has been no participation by conduct of the undersigned counsel in an expanded review or deviant claim review process in the past.

Because the parties failed to agree on a Section IV(D) process, the Court is left with two limited options: 1) strike the language in the agreement that is vague and ambiguous; or, 2) allow for a very limited review of the factors that led to a contaminated home being purchased without knowledge of defective Knauf-made Chinese drywall and allow the application of a "reasonable inquiry" standard with resulting binary rulings regarding whether a plaintiff purchased with knowledge and acted sensibly or foolishly in their inquiry about a property's condition.

## II.   REIMBURSABLE COSTS

Per the terms of the Contract, the Already Remediated Home Protocol found in the 2011 KPT Settlement Agreement (R. Doc. 12061-6) was adopted in its entirety. (R. Doc. 16978-1). Once the Court is convinced that a Plaintiff owns an affected property containing defective KPT drywall and that owner self–remediated, the focus shifts to analyzing the remediation and calculating reimbursable costs. It should be a very straightforward analysis.

The Owner Disclosure Affidavit (R. Doc. 12061-7), again adopted by the Contract, plainly states that, "[t]he following items should have been produced given the nature of the remediation project and will help us confirm the remediation costs associated with your property." (R. Doc. 12061-7, Page 5 of 7). Nowhere does the Contract indicate that failing to produce any item on the list will result in dismissal or invalidation of a claim. Instead, the document clearly indicates that confirming the appropriate remediation cost is the focus.

Plaintiffs request that the Court interpret the Contract to provide the parties with the appropriate evidentiary standard to apply when calculating the appropriate reimbursable cost for each affected property.

### III. CONCLUSION

For the reasons set forth herein, Plaintiffs have moved this Court to construe the Contract and issue an order providing the settling parties with: 1) a definition of "reasonable inquiry" that the Court construes to be the intention of the settling parties; 2) the limits regarding the amended scope of review that the Court construes to be the intention of the settling parties; 3) an objective evidentiary

standard, including all elements of proof necessary, for the parties to utilize and apply when providing the Court with evidence addressing whether a Plaintiff's actions satisfied a "reasonable inquiry" about the condition of a structure prior to purchase, that the Court construes that the parties intended the Contract to contain; 4) the evidentiary standard regarding the burden of proof should the Court find that inclusion of "reasonable inquiry" was intended by the settling parties to expand the scope of review; 5) where the facts are at issue, the standard that the Court will utilize for resolving genuine issues of material fact in this post-settlement process, should it find that inclusion of "reasonable inquiry" was intended by the settling parties to expand the scope of review; and, 6) the appropriate evidentiary standard to apply when calculating the full reimbursable cost for each affected property.

Respectfully submitted by:

/s/ *James V. Doyle, Jr.*

James V. Doyle, Jr.
DOYLE LAW FIRM, PC
2100 Southbridge Pkwy., Suite 650
Birmingham, AL 35209
Tele: 205-533-9500
Fax: 844-638-5812
jimmy@doylefirm.com
*Attorney for Plaintiffs*