# EXHIBIT "2"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **EDUARDO AND CARMEN AMORIN, *et al.*, individually, and on behalf of all others similarly situated,** | |
| **Plaintiffs,** | |
| **v.** | **Case No. 1:11-CV-22408-MGC** |
| **TAISHAN GYPSUM CO., LTD. f/k/a SHANDONG TAIHE DONGXIN CO., LTD.; TAIAN TAISHAN PLASTERBOARD CO., LTD., *et al.*,** | |
| **Defendants.** | |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO BEIJING NEW BUILDING MATERIALS PLC'S MOTION TO ENFORCE TRIAL RIGHTS

### I.    INTRODUCTION

BNBM's Motion to Enforce Trial Rights (ECF No. 67) is yet another litigation tactic designed to further delay resolution of these cases when all of the Taishan Defendants, including BNBM, were defaulted more than four years ago after having willfully avoided the jurisdiction of the U.S. courts for five years prior to that. BNBM's motion ignores important facts of record in this matter:

- Defendant Beijing New Building Materials PLC ("BNBM") refused to accept service of Chinese Drywall complaints in these proceedings in accordance with its carefully planned litigation strategy to avoid paying for any damages caused by Chinese Drywall[1];

- On May 28, 2010, BNBM announced to its shareholders that "it had been served with notice of the allegations against the company

---

[1] *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2018 WL 279629, at *7 (E.D. La. Jan. 2, 2018) ("these entities have refused to accept service at various points in this history of this litigation," but they "received notice of this action and had sufficient time to present their defense—but they did not.").

concerning defects in its Chinese Drywall, but rather than respond to the lawsuits, '[t]he Company and Taishan Gypsum w[ould] continue to keep an eye on the progress of the incident'"[2];

- BNBM deliberately refused to answer the complaints in this litigation knowing that default judgments would be entered, because "according to the US and Chinese lawyers whom BNBM and Taishan Gypsum have respectively consulted, there is no convention or treaty on mutual recognition and enforcement of judgments between China and the US such that the possibility of the US judgments being enforced in China is very low."[3];

- After Taishan fled the jurisdiction and was in contempt of court and during the time that BNBM was intentionally absent from the proceedings and was in default, upon motion of the Plaintiffs' Steering Committee ("PSC"), the MDL Court certified the *Amorin* class, finding that all of the elements of Rule 23(a)(1)-(4) and (b)(3) were met;[4]

- BNBM already attempted unsuccessfully on multiple occasions to challenge service of process and vacate the defaults against it;[5] and

---

[2] *Id.*, *citing* BNBM Announcement No. 2010-009 in Relation to Event about Gypsum Board in US dated 5/28/2010 ("So far as is known to the Company, the aggregate number of this kind of complaints [referring to gypsum board of BNBM] is approximately 3,000.").

[3] *See* CNBM Voluntary Announcement on Development of Gypsum Board Litigation in the US dated 7/18/2014 (ECF No. 64-5) at 3 ("based on information currently available to the Company, the Company believes that the US courts' judgments will not result in significant economic loss to the Group and will not have material adverse impact on the Group's production and operation.") (emphasis added).

[4] *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2014 WL 4809520 (E.D. La. Sept. 26, 2014).

[5] *See, e.g.*, *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2017 WL 1476595, at *4, *45-46 (E.D. La. Apr. 21, 2017); *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2018 WL 279629, at *2 (discussing prior attempts to have defaults vacated), *6-7 (discussing previous arguments challenging service of process).

- BNBM already attempted unsuccessfully to decertify the *Amorin* class.[6]

It is widely accepted that "'in a default case neither the plaintiff nor the defendant has a constitutional right to a jury trial on the issue of damages.'" *Coton v. Televised Visual X-Ography, Inc.*, No. 07-cv-1332, 2010 WL 813345, at *2 (M.D. Fla. Mar. 9, 2010) (quoting *In re Dierschke*, 975 F.2d 181, 185 (5th Cir.1992)).[7] In this case, BNBM willfully defaulted in the *Amorin* action when it was pending in the MDL and, therefore, has no "trial rights" to enforce. BNBM is liable to the *Amorin* class. To assess class remediation damages the MDL Court appropriately held a non-jury hearing pursuant to Fed. R. Civ. P. 55(b)(2)(B). BNBM fully participated in that hearing.

Despite that participation, after entering the litigation in 2015, the Taishan Defendants, including BNBM, filed numerous motions seeking to relitigate nearly every issue that had been decided in their absence including filing a motion to decertify the *Amorin* class.[8] In their Motion to Decertify, Defendants raised the same issue that BNBM is raising here – each Defendant was not defaulted in each case.[9] However, Judge Fallon rejected this argument noting that each Defendant had been defaulted in at least one Chinese Drywall Omnibus action in the MDL.[10] Further, "the [MDL] Court has already held that Findings of Fact and Conclusions of Law have a preclusive

---

[6] *See* CNBM's Motion to Decertify the Class [MDL Rec. Doc. 20627]; BNBM's Joinder in CNMB's Motion to Decertify the Class [MDL Rec. Doc. 20631]; Taishan's Joinder in CNBM's Motion to Decertify the Class [MDL Rec. Doc. 20632] (collectively referred to herein as the "Motion to Decertify").

[7] *See* Section III.A, *infra*.

[8] Motion to Decertify [MDL Rec. Docs. 20627, 20631, 20632] ("Motion to Decertify").

[9] *See* Order & Reasons re Motion to Decertify [MDL Rec. Doc. 20740, at 12] ("Decertification Order"), attached hereto as Exhibit "A," at 10, 12.

[10] *Id*. at 12.

effect in this class proceeding."[11]  Therefore, "<u>the findings of liability and causation
were final judgments</u> . . . ."[12]

The MDL Court's analysis was correct and applies with equal force in this
*Amorin* Florida action.  As illustrated below, defaults have been entered against all
Defendants on behalf of all Plaintiffs that are before the Court.[13]  Those defaults were
entered by the Transferee Court that had jurisdiction to enter those defaults at the time
they were entered, and those defaults were proper.  As the MDL Court has noted:
"Even though [Defendants] had notice of this litigation early on when Plaintiffs filed
their complaints, [Defendants] chose not to appear or participate."[14]  In denying
Defendants' efforts to vacate the defaults, the MDL Court relied upon evidence
adduced during discovery that showed that Defendants' "absence in this litigation was
a calculated strategy" and noted that "[s]uch deliberate avoidance of litigation is
precisely what default judgments aim to deter."[15]  Subsequently, the Transferee Court
certified the *Amorin* class noting that "the claims at issue here are against default
judgment defendants" and that "liability is conceded by default."  *Chinese Drywall*,
2014 WL 4809520, at *15, ¶ 71.  At that point, BNBM was defaulted as to liability and
its constitutional right to a jury trial was extinguished as to all members of the certified
*Amorin* class.

Even if BNBM succeeded in calling into question Judge Fallon's class
certification decision (despite having failed to prevail on its Motion to Decertify), its

---

[11] *Id.*

[12] *Id.* (emphasis added)

[13] *Id.*; *see, e.g.*, Amended Order on Third Omnibus Motion for Preliminary Default Judgment
[MDL Rec. Doc. 17814], attached hereto as Exhibit "B"; Amended Order on Fourth Omnibus
Motion for Preliminary Default Judgment [MDL Rec. Doc. 17815], attached hereto as Exhibit
"C"; Amended Order on Fifth Omnibus Motion for Preliminary Default Judgment [MDL
Rec. Doc. 17816], attached hereto as Exhibit "D."

[14] *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2018 WL 279629, at *8.

[15] *Id.* at *8-9.

4

arguments with respect to *res judicata* and collateral estoppel miss the mark.  There is no question that BNBM was defaulted in the *Amorin* action originally filed in the Eastern District of Virginia and there is equally no question that that complaint is identical to the *Amorin* complaint filed in Florida.  BNBM hangs its hat on the notion that a default judgment has not "actually been litigated" thereby preventing it from buttressing an argument that the default applies with equal force here in Florida.  However, BNBM fails to note that a default judgment can support a claim for *res judicata* or collateral estoppel when the party against whom the default judgment was issued had an opportunity to litigate the matter but ***chose*** not to and instead engaged in behavior intended to frustrate the litigation.  BNBM's recalcitrant behavior in this respect is well documented.

## II.      **RELEVANT BACKGROUND**

All federal cases involving Chinese Drywall were consolidated in MDL 2047 for coordinated pretrial proceedings in the Eastern District of Louisiana on June 15, 2009.[16]  Discovery revealed that the drywall at issue was manufactured primarily by two groups of Defendants: (1) the Knauf entities, and (2) the Taishan Entities.[17]  Ultimately, the Knauf entities and the associated builders, suppliers, distributers, and insurers agreed to settle Plaintiffs' claims for more than $1.1 billion in benefits for homeowners with Knauf Chinese Drywall in their properties. *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2013 WL 499474 (E.D. La. Feb. 7, 2013); MDL Order and Judgment dated 7/9/2013 [MDL Rec. Doc. 16934].  Litigation against the Taishan Entities, including its parent companies BNBM and CNBM, continues.

---

[16] *In re Chinese-Manufactured Drywall Products Liab. Litig.,* 626 F. Supp. 2d 1346 (J.P.M.L. 2009).

[17] The "Taishan Entities" or "Taishan Defendants" include Taishan Gypsum Co. and Taian Taishan Plasterboard Co. (collectively, "Taishan") along with their corporate parents BNBM, Beijing New Building Material (Group) Co., Ltd. ("BNBM Group"), China National Building Materials Co. ("CNBM"), and China National Building Material Group Corporation ("CNBM Group").

From the outset, the Taishan Defendants orchestrated and carried out a well-developed plan to avoid paying judgments in this litigation. Initially, the Taishan Defendants refused to enter an appearance, despite having been properly served under The Hague Convention, on the grounds that all of the "major assets of the Company, BNBM and Taishan Gypsum are located in China" and there is "no convention or treaty on mutual recognition and enforcement of judgments between China and the U.S." *Chinese Drywall*, 2018 WL 279629, at *8. According to the Taishan entities, "the possibility of the U.S. judgments being enforced in China is very low." *Id.* Consequently, Taishan, and its parent companies BNBM, BNBM Group, CNBM, and CNBM Group[18] allowed the Transferee Court to enter default judgments against them in multiple actions, despite being afforded notice and an opportunity to answer or otherwise respond to the complaints. *See id.* at *8-10.

The presence of foreign Defendant manufacturers and many hundreds of other entities in the chain of distribution across multiple states created significant obstacles to an individual homeowner obtaining relief. To overcome some of these obstacles, the PSC proposed the first-known judicial use of "Omnibus complaints," whereby thousands of Plaintiffs were collectively named on the same pleading against numerous Defendants, allowing those Plaintiffs and their counsel to file and preserve claims and theories of recovery, satisfy CAFA jurisdiction, and avoid the heavy cost of translation and service on foreign Defendants under The Hague Convention (which can exceed $100,000 per complaint in China). All told, the PSC created 34 different Omni Complaints. Absent the use of these Omni Complaints, few Plaintiffs would have been able to perfect service of process under The Hague Convention on the foreign manufacturers of Chinese Drywall.

---

[18] Eventually, CNBM Group was dismissed from the litigation by Order & Reasons dated March 10, 2016 [MDL Rec. Doc. 20150]. The PSC has filed a motion to certify that dismissal ruling for immediate appeal pursuant to 28 U.S.C. § 1292(b) [MDL Rec. Doc. 21533]. Oral argument on the 1292(b) motion was heard in the MDL on September 27, 2018.

6

In 2010, the MDL Court conducted the *Germano* bellwether trial of seven families with properties in Virginia. After Taishan was found liable in *Germano* (*see In re Chinese-Manufactured Drywall Products Liab. Litig.*, 706 F. Supp. 2d 655, 712 (E.D. La. 2010)), Taishan's parent companies CNBM and BNBM arranged for Taishan to enter its appearance in the MDL, but solely for the purpose of contesting jurisdiction and opening the default judgments. Following significant jurisdictional discovery and extensive briefing, the district court issued a comprehensive jurisdictional opinion finding jurisdiction to be proper over Taishan under due process and in accordance with Florida, Louisiana, and Virginia law. The MDL Court refused to vacate the default judgments against Taishan and found that that Taishan and its wholly-owned subsidiary TTP were alter egos.

Faced with having to pay the *Germano* judgment, the BNBM and CNBM entities devised a plan for Taishan to fire its counsel of record and refuse to appear in open court for a judgment debtor examination. The MDL Court entered a civil and criminal contempt order and injunction enjoining Taishan and its affiliates and subsidiaries from conducting any business in the U.S. until or unless Taishan participated in this judicial process.[19] In violation of the Contempt Order, Taishan's affiliates blatantly continued to do business in the U.S. during the period of time that Taishan was in contempt of court.[20]

Meanwhile, during the time that the jurisdictional briefing occurred in the MDL, from 2010-2012, there existed a colorable question regarding the application of the "stream-of-commerce" and the "stream-of-commerce-plus" jurisdictional tests. *See Asahi Metal Industry Co., Ltd. v. Superior Court of California*, 480 U.S. 102 (1987) and *J.*

---

[19] *See* Contempt Order and Injunction imposing penalties on Taishan and awarding attorneys' fees to Plaintiffs for Defendants' refusal to appear in open court for a judgment debtor examination (ECF No. 64-7).

[20] *See* Transcript of MDL Proceedings dated 3/2/2017 concerning Plaintiffs' Motion to Enforce the Contempt Order and Injunction (ECF No. 64-8) at 33:19-82:13.

7

*McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011).[21]  Accordingly, the Plaintiffs filed three identical *Amorin* class action Omnibus complaints in Louisiana,[22] Florida,[23] and Virginia,[24] as protective actions designed to perfect claims against Taishan, as well as its parent entities BNBM and CNBM.  The Florida and Virginia *Amorin* Complaints were transferred by the JPML to the MDL.  The *Amorin* complaints[25] included all Plaintiffs who previously had been named in various Omnibus complaints (along with their complaints in intervention).[26]

Because all of the *Amorin* actions were pending before the Transferee Court, there were no questions concerning Judge Fallon's authority to issue orders in all three *Amorin* cases.  On July 1, 2014, the MDL Court granted Plaintiffs' Third, Fourth and Fifth Omnibus Motions for Preliminary Default Judgment.  *See* Default Order [MDL

---

[21] Most recently, the differences in the application of these two tests was on display in *Align Corp. Ltd. v. Boustred*, No. 16SC448, 2017 WL 7208133 (Colo. Nov. 13, 2017), *cert. denied,* 2018 WL 1142978 (U.S. June 11, 2018), wherein the United States Supreme Court refused to accept the matter for review at the very end of its last term.

[22] *Amorin, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.,* No. 11-1395 (MDL Omnibus XVI) (Louisiana *Amorin* Complaint).

[23] *Amorin, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.,* No. 11-1672 (MDL Omnibus XV) (Florida *Amorin* Complaint).

[24] *Amorin, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.,* No. 11-1673 (MDL Omnibus XVII) (Virginia *Amorin* Complaint).

[25] The Plaintiffs in each *Amorin* complaint are identical, such that the Florida *Amorin* Complaint includes Plaintiffs owning properties in Louisiana and Virginia (and other states), the Louisiana *Amorin* Complaint includes Plaintiffs owning properties in Florida and Virginia (and other states), and the Virginia *Amorin* Complaint includes Plaintiffs owning properties in Florida and Louisiana (and other states).

[26] *See, e.g., Kenneth and Barbara Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al.,* No. 10-361 (E.D. La.) (Omnibus II); *Gross, et al. v. Knauf Gips, KG, et al.,* No. 09-6690 (E.D. La.) (Omnibus III); *Kenneth Abel, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.,* No. 11-080 (E.D. La.) (Omnibus VII); *Richard and Constance Almeroth, et al.* v. *v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.,* No. 12-0498 (E.D. La.) (Omnibus XIII); *Laura, Daniel and Irene Haya, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.,* No. 11-1077 (E.D. La.) (Omnibus IX).

Rec. Doc. 17814] (Exhibit "B" hereto); Default Order [MDL Rec. Doc. 17815]
(Exhibit "C" hereto); Default Order [MDL Rec. Doc. 17816] (Exhibit "D" hereto). In
those orders, Judge Fallon sought to align the proper Plaintiffs with the proper
Defendants by generally finding that "Plaintiffs [we]re awarded preliminary default
judgments against the defendants with whom they are aligned...."  In specifically
defaulting certain Defendants in one of the three *Amorin* cases (*i.e.*, Louisiana, Florida
and Virginia), Judge Fallon issued a default judgment as to BNBM in the *Amorin*
action originally filed in the Eastern District of Virginia (*see* Exhibit "C" hereto, at Ex.
C) and as to BNBM of America and BNBM USA in the *Amorin* action originally filed
in the Southern District of Florida (*see* Exhibit "D" hereto, at Ex. B).[27]

Subsequently, on September 26, 2014, the MDL Court certified the *Amorin*
class, defining it as:  all Plaintiffs named on an Omni complaint as of the date *Amorin*
was filed directly into the MDL; and all Plaintiffs named in identical *Amorin*
complaints filed in Florida and Virginia federal district courts and transferred to the
MDL (collectively, the "*Amorin* class"). *See Chinese Drywall*, 2014 WL 4809520, at *16.
Once the *Amorin* class was certified, there was no reason to enter additional defaults
since every member of the certified *Amorin* class had a default judgment as to liability
with respect to each Defendant. *See id.* at *15, ¶ 71 ("Because the only claims at issue
here are against default judgment defendants, and because the Court has already found
sufficient facts to establish the causation issue associated with these types of claims, all
that is required is an assessment of damages. Liability is conceded by default.
Accordingly, the Court will establish class-wide damages pursuant to Rule
55(b)(2)(B).").

---

[27] Plaintiffs note that the chart cited on page 3 of BNBM's Brief, while taken from one of the
Court's opinions, is inaccurate in that it doesn't reflect the Transferee Court's entry of the
default judgments entered in the Default Orders (*see* Exhibit "C" hereto, at Ex. C; *see also*
Exhibit "D" hereto, at Ex. B).

After the *Amorin* class was certified, the MDL Court scheduled a hearing to determine class damages. *See Chinese Drywall*, 2014 WL 4809520 (certifying class); *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2017 WL 1421627, at *5 (E.D. La. Apr. 21, 2017) (discussing hearing). On the day of that hearing in February 2015, BNBM entered an appearance for the first time and requested a continuance of the class damages hearing. Shortly thereafter, Taishan and TTP returned to the litigation and paid the *Germano* judgment, plus fines, and BNBM Group and the CNBM entities appeared the litigation for the first time. On June 9, 2015, Taishan, BNBM, and their parent companies participated in the class damages hearing.

Since that time over three years ago, the Defendants have fought hard to challenge jurisdiction, decertify the class, and avoid a class damages verdict. In seeking to decertify the class, Defendants argued that "[b]ecause 'at least one defendant has not defaulted in each of the relevant actions,' ... each non-defaulting Defendant is entitled to address individual questions of liability and causation." Decertification Order (Exhibit "A" hereto, at 10). On April 21, 2017, Judge Fallon entered an order on class damages against Taishan and denied Defendants' motion to decertify the Taishan class. *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2017 WL 1421627, at *24-25; Decertification Order (Exhibit "A" hereto). In denying the motion to decertify, the MDL Court noted that "each of the defendants have defaulted in at least one action." Decertification Order (Exhibit "A" hereto, at 12). In addition, in denying Defendants' contentions that the defaults were not "final judgments," the MDL Court noted that it had "already held that Findings of Fact and Conclusions of Law have a preclusive effect in this class proceeding." *Id.*

With respect to the ongoing efforts of CNBM and BNBM to contest jurisdiction over them, the Court entered an Order and Reasons on April 21, 2017, holding that (i) CNBM, BNBM Group, BNBM, and Taishan operate as a single business enterprise under Louisiana law, (ii) Taishan and BNBM are agents under Virginia and Florida law, and (iii) there is jurisdiction over BNBM under Florida law for its manufacture

10

and sales of BNBM Dragon board in Florida. *See Chinese Drywall*, 2017 WL 1476595, at *46-47. With respect to jurisdiction over BNBM directly, the MDL Court premised that jurisdiction on activity of BNBM of America dating back to 2000 through the period when BNBM of America was winding down and BNBM directly sold its drywall to customers in Florida between 2004-2006. *See id.* at 42.

## III.  ARGUMENT

### A.  Jury Trial Rights Do Not Survive Default.

It is clear that "[u]nder federal law there is no right to a jury trial after default absent a federal statute that specifically preserves the right to a jury trial after default." *Estate of Faull v. McAfee*, No. 6:13-cv-1746, 2015 WL 6125309, at *4 (M.D. Fla. Oct. 16, 2015); *see also Safari Programs, Inc. v. Collecta International Limited*, No. 1:15-cv-20263, 2016 WL 8983535, at *4 (S.D. Fla. Feb. 2, 2016); *Coton*, 2010 WL 813345, at *2. This proposition has not only been applied in district courts in the Eleventh Circuit but has been well-accepted in federal courts nationwide. *See, e.g., Graham v. Malone Freight Lines, Inc.*, 314 F.3d 7, 16 (1st Cir. 1999) ("Neither the Seventh Amendment nor the Federal Rules of Civil Procedure require a jury trial to assess damages after entry of default in these circumstances."); *Matter of Dierschke*, 975 F.2d 181, 185 (5th Cir. 1992) (holding that neither plaintiff nor defendant has a constitutional right to a jury trial following default); *Olcott v. Delaware Flood Co.*, 327 F.3d 1115, 1124 (10th Cir. 2003) (finding that a party bears no constitutional right to a jury trial following the entry of default); *Mwani v. Bin Ladin*, 244 F.R.D. 20, 23 (D.D.C. 2007) (finding no constitutional or statutory right to a jury trial following default but leaving open the question whether, as a discretionary matter, a jury trial would be the most appropriate method for assessing damages); *CountrymAn Nevada, LLC v. Suarez*, No. 6:15-cv-0436-SI, 2016 WL 5329597, at *4 (D. Ore. Sept. 22, 2016) ("There is ... substantial case law holding that there is no right to a jury trial for damages after an entry of default....") (collecting cases).

11

In fact, this well-settled law dates back to the origins of our judicial system.  *See Brown v. Van Braam*, 3 (Dallas) U.S. 344, 355 (1797) (concluding that "the English authorities countenance the Rhode Island law and practice" with regard to the roles of judge and jury in determining damages, including that "[w]here judgment is by default, the court may give the damages, without putting the party to the trouble of a writ of enquiry [to a jury]").

**B.**     **BNBM Is Defaulted.**

The MDL Court specifically entered a default against BNBM in the *Amorin* action that was originally filed in the Eastern District of Virginia.[28]  Subsequently, when the Court certified the *Amorin* class, it found that liability was established as to all class members as to BNBM because it had been defaulted in at least one of the *Amorin* actions. *See* Decertification Order (Exhibit "A" hereto, at 12) ("each of the defendants have defaulted in at least one action" and "the Court has already held that Findings of Fact and Conclusions of Law have a preclusive effect in this class proceeding"); *see also Chinese Drywall*, 2014 WL 4809520, at *15, ¶ 71 ("Because the only claims at issue here are against default judgment defendants, and because the Court has already found sufficient facts to establish the causation issue associated with these types of claims, all that is required is an assessment of damages. Liability is conceded by default. Accordingly, the Court will establish class-wide damages pursuant to Rule 55(b)(2)(B).").  In assessing the class claims before it, the MDL Court had the authority to treat BNBM as defaulted as to all Plaintiffs regardless of location of any particular Plaintiff's property because all of the cases were properly before the Court, BNBM had not appeared in the litigation as to any of the *Amorin* complaints, the parties to all of the *Amorin* complaints were identical, and the MDL Court was ruling on a motion to certify a class.

---

[28] *See* Default Order (Exhibit "C" hereto, at Ex. C).

BNBM essentially argues that the MDL Court was required, even though the *Amorin* complaints are identical and defaults as to every Defendant existed, to first enter additional defaults as to each identical complaint in each jurisdiction and then to issue an order regarding class certification. This is the ultimate form-over-substance argument and BNBM offers no support for it. In addition, not only is there no support for such an approach but it flies in the face of the purposes of multidistrict litigation. *See, e.g., In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d 1217, 1230-31 (9th Cir. 2006) ("A district judge charged with the responsibility of 'just and efficient conduct' of the multiplicity of actions in an MDL proceeding must have discretion to manage them that is commensurate with the task. The task is enormous, for the court must figure out a way to move thousands of cases toward resolution on the merits while at the same time respecting their individuality.").

In addition, even if the MDL Court had not certified the class in the manner it did, BNBM would still be defaulted because of the preclusive effect of the default judgment entered against it in the *Amorin* action originally filed in the Eastern District of Virginia, and its *res judicata* argument would fail. BNBM notes the standard for *res judicata* and collateral estoppel but then applies that standard only to the defaults that were entered against it in *Gross* and *Wiltz*. *See* BNBM Brief at 3-4 & n.3. BNBM makes no mention of the default judgment entered against it in *Amorin*. *See id.* at 3-4; *but see* Default Order (Exhibit "C" hereto, at Ex. C). Under the standard articulated by BNBM itself, *res judicata* requires: "'(1) a final judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) the parties, or those in privity with them, must be identical in both suits, and (4) the same cause of action must be involved in both cases.'" *See id.* at 4 (quoting *Hart v. Yamaha-Parts Distributors, Inc.*, 787 F.2d 1468, 1470 (11th Cir. 1986)).

These elements are satisfied here. Although default judgments are usually not considered final judgments "on the merits" because they are not actually litigated, that rule does not apply when the defaulting party had a full and fair opportunity to litigate

but chose not to and instead actively worked to thwart the administration of justice. *See In re Bush*, 62 F.3d 1319, 1325 (11th Cir.1995) ("Where a party has substantially participated in an action in which he had a full and fair opportunity to defend on the merits, but subsequently chooses not to do so, and even attempts to frustrate the effort to bring the action to judgment, it is not an abuse of discretion for a district court to apply the doctrine of collateral estoppel to prevent further litigation of the issues resolved by the default judgment in the prior action."); *see also Sewell v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 94 F.3d 1514, 1518 (11th Cir.1996) ("Default judgments may constitute *res judicata* for purposes of both claim and issue preclusion."). BNBM's decision to consciously avoid the jurisdiction, and its involvement in Taishan fleeing the jurisdiction, and numerous other instances of misconduct, are well documented in this case. *See Chinese Drywall*, 2018 WL 279629, at *8-10 (detailing Defendants' willful default). As for the *Amorin* complaints, there is no question they were properly before the MDL Court and they were identical in every respect.

Furthermore, BNBM ignores that in addition to being held liable in Florida for any judgment against Taishan under an agency theory, the MDL Court found jurisdiction in Florida premised upon BNBM's own sales activity. *See Chinese*, 2017 WL 1476595, at *42. In assessing that activity, the MDL Court treated BNBM of America and BNBM essentially as the same entity because BNBM took over BNBM of America's Florida contacts as the company was winding down. *See id.* Here, BNBM of America was specifically defaulted in the *Amorin* action originally filed in Florida. *See id.* BNBM should be treated as defaulted as well.

### C. A Rule 38 Jury Demand Does Not Change the Court's Analysis Because There Is No Constitutional Right to a Jury Trial After Default.

In the MDL, Defendants, including BNBM, argued that the well-settled rule that neither the plaintiff nor defendant retains a right to a jury trial after default, is inapplicable if the plaintiff had demanded a jury trial under Rule 38. This argument

seeks to exploit a perceived conflict between Rule 38 and Rule 55 that does not exist. However, Plaintiffs will address it here preemptively in case BNBM raises it in its Reply.

In federal court, the right to a jury trial is determined by federal law.  *See Estate of Faull*, 2015 WL 6125309, at *4-5 (discussing *Simler v. Conner*, 372 U.S. 221, 222 (1963) (per curiam) which held that the right to a jury trial in federal court is determined by federal law).  As discussed above, after default, there is no *constitutional* right to a jury trial.  Rule 55(b)(2), dealing with the calculation of damages after default, specifically permits a court to hold an evidentiary hearing, not a jury trial, in the case of default unless there is a federal *statutory* right to a jury trial (there is no statutory right to a jury trial here).[29]  Therefore, on its face, neither party has a right to a jury trial.  To the extent that BNBM believed it had a right to a jury trial on remediation damages, Plaintiffs submit that it waived that right by participating in the class damages hearing.

In the past, BNBM has pointed to Rule 38(d), which states that withdrawal of a jury demand can only be done with the consent of the other party, to assert that BNBM retains its right to jury trial on damages because it did not consent to the withdrawal of the jury demand.  Several cases have articulated this argument.  *See, e.g., Zero Down Supply Chain Sols., Inc. v. Global Transp. Sols., Inc.*, 282 F.R.D. 604, 606-07 (D. Utah 2012) (acknowledging federal consensus that defendants do not have a constitutional right to a jury trial following entry of default, but relying on "the plain language of Rule 38(d)," holding that a non-consenting party does not lose its right to a jury trial just because it is in default); *Kormes v. Weis, Voisin & Co.*, 61 F.R.D. 608,

---

[29] This provision has been narrowly construed.  Indeed, for a federal statutory right to a jury trial to exist, courts have required that the statute "specif[y] a right to a jury trial following entry of default" and "[i]n this connection, it has been stated the only statute that meets this requirement is 28 U.S.C. § 1874."  *Coton*, 2010 WL 813345, at *2.

15

609-10 (E.D. Pa. 1974) (same). However, the reasoning of this argument misses the mark.

Rule 38 provides that a party may demand a jury trial on any issue to which that party has a constitutional or federal statutory right, and once demanded, may only withdraw that demand with the consent of the opposing party. *See* Fed. R. Civ. P. 38(a)(b)(d). However, once a default occurs, there is no longer a statutory or constitutional right to a jury trial and therefore, there is no "withdrawal" of a jury trial demand that implicates Rule 38(d). Rather, the loss of the right to a jury trial is based on a default, not withdrawal. This more reasoned approach has been followed by many courts. *See, e.g., Flexible Innovations, Ltd. v. IdeaMax*, No. 12-cv-856, 2013 WL 12126233, at *1-2 (N.D. Tex. Apr. 19, 2013) ("default has been properly and appropriately entered, there is no statutory right to a jury trial to preserve, there is no constitutional right to a jury trial on damages, and a jury is not necessary for the court to determine the amount of damages"); *Armeni v. Transunion LLC, Inc.*, No. 15-cv-00066, 2016 WL 7046839, at *2-3 (W.D. Va. Dec. 2, 2016); *Mwani v. Bin Ladin*, 244 F.R.D. 20, 23-24 (D.D.C. 2007) (denying request for jury trial after entry of default because no right to a jury trial on damages exists).

In addition, it is clear that the Court has the discretion to have damages tried to a jury if it determines that this is the better way to determine damages. This is usually done in situations where the court can benefit from the input of a jury such as in personal injury claims. By way of example, *Armeni* was very similar to this case except that after the last defendant had defaulted, it was the plaintiff who wished to try damages to the jury. *See Armeni*, 2016 WL 7046839, at *1. Plaintiff in that case argued that under Rule 38, "the right to a jury trial is 'inviolate' and withdrawn only on the parties' consent," while the defendant argued that "any Seventh Amendment right to a jury trial does not survive the entry of default." *See id*. at *1-2. The court rejected the Rule 38 argument finding that "the overwhelming weight of authority instructs that the Seventh Amendment does not guarantee a jury trial after default."

16

*Id.* at *2. However, even though there was no constitutional or statutory right to a jury trial, the court noted that it could "choose to empanel one" under Rule 55(b)(2) and that it otherwise had "'the [inherent] discretion to order a jury trial even in the absence of a constitutional or statutory right.'" *See id.* at *3 (quoting *Lumbermen's Mut. Cas. Co. v. Holiday Vehicle Leasing Inc.*, No. 02-cv-137, 2003 WL 1797888, at *2 (S.D.N.Y. Apr. 4, 2003) (alteration in original)). The court ordered a jury trial because, unlike the claims for remediation damages, the damages in *Armeni* were in the form of emotional, mental and physical distress, which were more suited for a jury; and because it would have been unfair to put the plaintiff in a worse position than he would have been had the defendant actually defended the case. *See id.* at *4.

In fact, the Court's ability to exercise its discretion to empanel a jury may very well be the underlying reason that the courts permitted jury trials in the cases that adopted the Rule 38(d) argument. *See Zero Down Supply*, 282 F.R.D. at 606-07 ("The court agrees that considerations of fairness argue against allowing Plaintiffs *in this case* to unilaterally withdraw their demand for a jury after that demand has been properly made." (emphasis added)); *Kormes*, 61 F.R.D. at 609-10 ("*Under the facts of the present case*, we will 'in fairness and logic' apply the consent requirement of Rule 38(d) to the default situation of Rule 55(b)(2), and will *in the exercise of our discretion* grant a jury trial to defendant … limited to the issue of damages.") (emphasis added). While these cases, previously relied upon by Defendants, claim to adopt the Rule 38 argument, they also seem to suggest it is a matter of discretion rather than one of right.

In addition, this issue most often arises in cases where a plaintiff desires to have his or her damages tried to a jury even though the defendant has defaulted. Even in that circumstance, courts have limited the plaintiff's right to a jury trial against a defendant in default under Rule 55(b)(2)(B) where seeking to establish damages. *See, e.g., Armeni*, 2016 WL 7046839, at *3 (finding plaintiff had no constitutional or statutory right to jury trial). Under the defendants' interpretation of Rule 38(d),

therefore, a defaulting defendant would have greater jury trial rights than the plaintiff. Clearly this cannot be law.

Simply put, Rule 38 does not enlarge BNBM's right to a jury trial, which in this case has been forfeited.

## IV.     **CONCLUSION**

For the foregoing reasons, BNBM's Motion to Enforce Trial Rights should be denied.

Dated:   September 28, 2018                              Respectfully submitted,


                                                  /s/ Patrick S. Montoya, Esq.
                                                  Patrick Shanan Montoya
                                                  Fla. Bar No. 0524441
                                                  Email: Patrick@colson.com
                                                  Colson Hicks Eidson
                                                  255 Alhambra Circle, PH
                                                  Coral Gables, FL  33134-2351
                                                  Telephone:  (305) 476-7400
                                                  Facsimile:  (305) 476-7444
                                                  *Interim Lead Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Southern District of Florida by using the CM/ECF System, which will send a notice of electronic filing on this 28th day of September, 2018.

/s/ Patrick S. Montoya, Esq.
Patrick Shanan Montoya
Fla. Bar No. 0524441
Email: Patrick@colson.com
Colson Hicks Eidson
255 Alhambra Circle, PH
Coral Gables, FL 33134-2351
Telephone: (305) 476-7400
Facsimile: (305) 476-7444
*Interim Lead Counsel for Plaintiffs*

# EXHIBIT

# "A"

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | CIVIL ACTION |
| | NO. 09-02047 |
| | SECTION "L" (5) |
| THIS DOCUMENT RELATES TO: ALL CASES | |

## <u>ORDER & REASONS</u>

Before this Court is Defendant China New Building Materials Co. ("CNBM"), CNBMIT Co. Ltd. ("CNBMIT"), CNBM USA Corp. ("CNBM USA"), and United Suntech Craft, Inc. ("United Suntech") (collectively, the "CNBM Entities") Motion to Decertify Class Pursuant to Rule 23(c)(1)(C). (R. Doc. 20627). Defendants Beijing New Building Materials Public Limited Company ("BNBM"), Beijing New Building Material (Group) Co. ("BNBM Group"), and Taishan join the Motion. (R. Docs. 20631, 20632). The Court has previously held that Taishan is an agent of BNBM, such that Taishan's jurisdictional contacts can be imputed to BNBM under Louisiana, Virginia, and Florida law. Additionally, under Louisiana law, Taishan, BNBM, BNBM Group, and CNBM formed a single business enterprise, such that Taishan's jurisdictional contacts can be imputed to those other entities. Therefore, the Court will address the Defendants' Motions as one. Having read the parties' briefs, reviewed the applicable law, and heard the parties on oral argument, the Court now issues this Order and Reasons.

## I.    INTRODUCTION

The present MDL litigation arises from alleged property damage and personal injuries sustained as a result of the presence of Chinese-manufactured drywall in homes and other buildings in a number of states. This Court previously certified the property damage aspect of this litigation. Defendants now seek decertification. To put this matter in perspective, the Court will first discuss the procedural and factual background and then turn to the Motion to Decertify.

## II.    PROCEDURAL BACKGROUND

From 2004 through 2006, the housing boom in Florida and rebuilding efforts necessitated by Hurricanes Rita and Katrina led to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used in the construction and refurbishing of homes in coastal areas of the country, notably the Gulf Coast and East Coast. Sometime after the installation of the Chinese drywall, homeowners began to complain of emissions of smelly gasses, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes. *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 894 F. Supp. 2d 819, 829 (E.D. La. 2012), *aff'd*, 742 F. 3d 576 (5th Cir. 2014). Many of these homeowners also began to complain of various physical afflictions believed to be caused by the Chinese drywall. Accordingly, these homeowners began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. Because of the commonality of facts in the various cases, this litigation was designated as multidistrict litigation. Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation on June 15,

2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 2047 in the U.S. District Court, Eastern District of Louisiana.

The Chinese drywall at issue was largely manufactured by two groups of defendants: (1) the Knauf Entities, and (2) the Taishan Entities. The litigation has focused upon these two entities and their downstream associates, and has proceeded on strikingly different tracks for the claims against each group as described below.

The Knauf Entities are German-based, international manufacturers of building products, including drywall, whose Chinese subsidiary, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), advertised and sold its Chinese drywall in the United States. The Knauf Entities are named defendants in numerous cases consolidated with the MDL litigation and litigation in state courts. The Knauf Entities first entered their appearance in the MDL litigation on July 2, 2009. *See* (R. Doc. 18). Thereafter, the Court presided over a bellwether trial in *Hernandez v. Knauf Gips KG*, Case No. 09-6050, involving a homeowner's claims against KPT for defective drywall. *See* (R. Doc. 2713). The Court found in favor of the plaintiff family in *Hernandez*, issued a detailed Findings of Fact and Conclusions of Law and entered a Judgment in the amount of $164,049.64, including remediation damages in the amount of $136,940.46, which represented a cost of $81.13 per square foot based on the footprint square footage of the house. *See* (R. Doc. 3012).

Subsequently, the Knauf Entities entered into a pilot remediation program with the Plaintiffs' Steering Committee ("PSC") in the MDL. This program was largely based upon the remediation protocol formulated by the Court in *Hernandez*. The Knauf pilot remediation program is ongoing and has, at present, remediated over 2,200 homes containing KPT Chinese drywall using the same protocol. At the Court's urging, the parties began working together to monetize this program and make it available to a broader class of plaintiffs.

3

On December 20, 2011, the Knauf Entities and the PSC entered into a global, class

Settlement Agreement ("Knauf Settlement Agreement"), which is designed to resolve all Knauf-

related, Chinese drywall claims. *See* (R. Doc. 12061-5). In addition to the Knauf Settlement

Agreement, numerous defendants in the chain-of-commerce with the Knauf Entities have entered

into class settlement agreements, the effect of which settles almost all of the Knauf Entities'

chain-of-commerce litigation. Although the Court occasionally must deal with settlement

administration and enforcement issues, the Knauf portion of this litigation is largely resolved.

The litigation against the Chinese entities has taken a different course. The Chinese

Defendants in the litigation include the principal Chinese-based Defendant Taishan, namely,

Taishan Gypsum Co. Ltd. ("TG") and its wholly-owned subsidiary, Taian Taishan Plasterboard

Co., Ltd. ("TTP") (collectively "Taishan" or "Taishan Entities"). Other Chinese-based

Defendants include the CNBM and BNBM Entities.

The Court's initial inquiry regarding Taishan involved four cases in this MDL: (1)

*Germano v. Taishan Gypsum Co., Ltd.*, Case No. 09-6687; (2) *The Mitchell Co., Inc. v. Knauf

Gips KG*, Case No. 09-4115; (3) *Gross v. Knauf Gips KG*, Case No. 09-6690; and (4) *Wiltz v.

Beijing New Building Materials Public Ltd., Co.*, Case No. 10-361. The first issues involving

Taishan arose when Taishan failed to timely answer or otherwise enter an appearance in *Mitchell*

and *Germano*, despite the fact that it had been properly served in each case. *See* (R. Doc. 52);

(R. Doc. 1-7) (Case No. 09-6687). Thus, after an extended period of time, the Court entered

preliminary defaults against Taishan in both of these cases. *See* (R. Docs. 277, 487).

Thereafter, the Court moved forward with an evidentiary hearing in furtherance of the

Preliminary Default in *Germano* on the Plaintiffs' claimed damages. *See* (R. Doc. 502, 1223,

1258, 2380). At this hearing, the Plaintiffs presented evidence specific to seven individual

properties, which served as bellwether cases. Following this hearing, which occurred on

February 19 and 20, 2010, the Court issued detailed Findings of Fact & Conclusions of Law. *See*

(R. Doc. 2380). On May 11, 2010, the Court issued a Default Judgment against Taishan in

*Germano*, in favor of the Plaintiffs. (R. Doc. 3031). On the last day to timely do so, June 10,

2010, Taishan filed a Notice of Appeal of the Default Judgment in *Germano* and entered its

appearance in *Germano* and *Mitchell*. (R. Docs. 3668, 3670).

  After Taishan entered its appearance in the MDL, it quickly sought to have the Default

Judgment in *Germano* and the Preliminary Default in *Mitchell* vacated for lack of personal

jurisdiction. *See* (R. Docs. 5436, 5583). In the fall of 2010, the Court directed the parties to

commence the personal jurisdiction discovery necessary to resolve Taishan's motions to vacate.

Sometime after the initial discovery, the parties agreed to expand the discovery beyond the

*Germano* and *Mitchell* cases to other cases in which Taishan had been served, including *Gross*

and *Wiltz*.

  Formal personal jurisdiction discovery of Taishan began in October 2010. *See, e.g.*, (R.

Docs. 5839, 5840). Discovery has included the production of both written and electronic

documents, as well as depositions of Taishan's corporate representatives, with each type of

discovery proceeding in a parallel fashion. This discovery has often been contentious, requiring

close supervision by the Court. The Court has presided over regularly-scheduled status

conferences to keep the parties on track, and conducted hearings and issued rulings to resolve

numerous discovery-related disputes. *See, e.g.*, (R. Docs. 7136, 7511).

  In April, 2012, Taishan filed various motions, including its motions to dismiss for lack of

personal jurisdiction. On June 29, 2012, over three years since the creation of this MDL, and

after a year-and-a-half of personal jurisdiction discovery on Taishan, the Court presided over a

hearing on Taishan's motions. The Court coordinated its hearing with Judge Joseph Farina of the 11th Judicial Circuit Court of Florida, who had a similar motion involving Taishan's challenge to personal jurisdiction.

On September 4, 2012, this Court issued a 142-page order regarding Taishan's motions in *Germano*, *Mitchell*, *Gross*, and *Wiltz*, in which the Court denied the motions to dismiss, and held that it maintained personal jurisdiction over Taishan. *In re: Chinese-Manufactured Drywall Products Liability Litigation,* 894 F. Supp. 2d 819 (E.D. La. 2012). The Court also ruled that TTP was operating as the alter ego of TG. The Court certified an interlocutory appeal and the Fifth Circuit granted permission to appeal. In January and May of 2014, two different panels of the Fifth Circuit affirmed this Court's ruling and held that this Court maintained personal jurisdiction over the Taishan Entities (TG and TTP). *In re: Chinese-Manufactured Drywall Products Liability Litigation,* 753 F.3d 521 (5th Cir. 2014); *In re: Chinese-Manufactured Drywall Products Liability Litigation,* 742 F.3d 576 (5th Cir. 2014). The time for writs of certiorari passed and the issue of personal jurisdiction over Taishan became firmly settled.

On June 20, 2014, the Court ordered Taishan to appear in open court on July 17, 2014 to be examined as a judgment debtor. (R. Doc. 17774). Taishan failed to appear for the July 17, 2014 Judgment Debtor Examination and the Court held Taishan in contempt and ordered that Taishan pay $15,000.00 in attorney's fees to Plaintiffs' counsel; that Taishan pay $40,000.00 as a penalty for contempt; that Taishan, and any of its affiliates or subsidiaries be enjoined from conducting any business in the United States until or unless it participates in this judicial process. If Taishan violated the injunction, it must pay a further penalty of 25% of the profits earned by the Company or its affiliate who violated the Order for the year of the violation. (R. Doc. 17869).

On July 23, 2014, Plaintiffs filed their Omnibus Motion for Class Certification pursuant to Rule 23(b)(3). (R. Doc. 17883). Taishan did not appear or oppose the Motion and, on September 26, 2014, this Court certified a class of "[a]ll owners of real properties in the United States, who are named Plaintiffs [in the various MDL complaints] asserting claims for remediated damages arising from, or otherwise related, Taishan drywall. *See* (R. Doc. 18028 at 34-35, herein after "Class Certification FOFCOL").

In analyzing whether certification was appropriate, the Court noted that even though the factual allegations and liability had been established by multiple default judgments, "Rule 23(c) imposes an independent duty on the district court to determine by order that the requirements of Rule 23(a) are met regardless of the defendant's admissions." (R. 18028 at 22) (quoting *Davis v. Hutchins*, 321 F.3d 641, 648-49 (7th Cir. 2003)). Thus, the Court performed a rigorous Rule 23 analysis and determined Plaintiffs established Rule 23(a)'s numerosity, commonality, typicality, and adequacy of representation requirements. (R. 18028 at 23-29). Additionally, the Court held that Plaintiffs had met Rule 23(b)(3) requirements for predominance and superiority. (R. 18028 at 30-35). Class certification was particularly appropriate where liability and causation had already been determined. The only remaining issue was the assessment of damages, which could be calculated on an aggregate basis. (R. 18028 at 31-33). Because Plaintiffs could "establish a formulaic method to determine class wide property damages," they met Rule 23(b)(3)'s predominance requirement. (R. 18028 at 33). Finally, the Court determined that class proceedings were a superior method to adjudicate the remaining damage assessments in the case, as any factual determinations that still had to be made were substantially narrower in scope than the factual issues the Court had already resolved in the course of this litigation. (R. 18028 at 34).

After the class was certified, Taishan entered an appearance with the Court in February 2015 and, to satisfy the contempt, Taishan paid both the sum of $15,000 in attorney's fees to Plaintiffs' counsel and the contempt penalty of $40,000 in March 2015. (R. Doc. 18764). Since that date, the Taishan Defendants have actively participated in the litigation.

## III.    FACTUAL BACKGROUND

As this Court has previously explained, defective Chinese Drywall led to extensive corrosion and damage to Plaintiffs' properties. *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 706 F. Supp. 2d 655 (E.D. La. 2010). When this litigation began—nearly eight years ago—Plaintiffs filed claims seeking damages for personal injuries, alternative living expenses, loss of use and enjoyment, foreclosure claims, personal property, lost rent or business, and remediation costs. Since that time, Plaintiffs have completed vast discovery to reveal the gravamen of this case—claims for remediation damages. To determine the correct amount of remediation damages, the Court conducted multiple evidentiary hearings and developed a remediation protocol based on its findings in *Hernandez* and *Germano.* This protocol has been used to successfully remediate more than 2,200 properties.

On June 9, 2015, the Court held a class damages hearing, in which Taishan, BNBM, and CNBM all participated. As a result of these hearings and the remediation program, the Court determined that the scope of the necessary remediation is consistent across the effected properties—buildings with the defective drywall require complete remediation and cleaning. This includes the removal of all drywall, all electrical wiring, the entire HVAC system, and many other items such as appliances, carpet, cabinetry, trim work, and flooring. *Germano* FOFCOL at 27-55; *Hernandez* FOFCOL at 20-34. Additionally, fire alarms and smoke detectors should be removed and replaced because of the low cost in relation to the high risk of injury or

death if these appliances are faulty. *Germano* FOFCOL at 27-40. After remediation is complete, the property needs to be cleaned and completely aired-out to ensure all traces of drywall dust are removed. A HEPA vacuum should be used to remove fine drywall dust. Finally, the property should be wet-wiped or power-washed to eliminate any remaining particles. *Germano* FOFCOL at 53. After remediation is complete, the property will need to be inspected by an independent and qualified engineering company. *Germano* FOFCOL at 53-54. The scope of remediation work is the same regardless of the type of building or the location of the property. The only difference is the square footage of the contaminated area of the building.

Now, after nearly eight years and six default trials, where the Court heard evidence from multiple witnesses including experts, Defendants seek to decertify the class of property owners.

## IV. PRESENT MOTIONS

### a. Defendants' Motion to Decertify Class Pursuant to Rule 23(c)(1)(C)

Defendants have filed a motion to decertify the class, and argue Plaintiffs cannot satisfy Rule 23's predominance, superiority or adequacy requirements. (R. 20627, 20631, 20632). First, Defendants argue Plaintiffs have not demonstrated predominance, as individual issues predominate over common questions. According to Defendants, the formulaic approach embraced by Plaintiffs' damage expert cannot save the faulty certification order. Second, Defendants argue the numerous individual issues in this case make it unsuitable for class-wide management. Finally, Defendants contend the PSC has demonstrated its interests are not aligned with those of the proposed class.

Defendants contend that in light of changes to the class since the Court issued the Certification FOFCOL, individual issues now predominate over the allegedly common claims, and the "remediation itself requires individual adjudication." (R. 20627 at 12). Because "at least

one defendant has not defaulted in each of the relevant actions," Defendants argue that each non-defaulting Defendant is entitled to address the individual questions of liability and causation. (R. 20627 at 14). Further, Defendants aver that even if liability and causation were resolved, there are numerous issues which require individual adjudication. (R. 20627 at 15). While the Plaintiffs initially claimed various damages, including personal injury, medical monitoring, property taxes, insurance, utilities, and property maintenance, could be addressed on a class wide basis, the PSC has since conceded that these issues will require individual adjudication. (R. 20627 at 16-17). Thus, Defendants aver that the sole remaining issue—remediation—does not predominate this class action. (R. 20627 at 18).

In the alternative, Defendants contend that even if remediation did predominate, these damages cannot be considered on a class-wide basis. First, they argue the PSC's methodology fails to consider variations in state law. (R. 20627 at 18-24). Second, Defendants aver even if the damage awards in *Germano* and *Hernandez* could be aggregated, they would not have a binding effect, as Defendants were not parties to these actions, and the properties in those cases were not representative of the overall class. (R. 20627 at 24-27). Finally, they contend Plaintiffs expert testimony is unreliable and does not alleviate the need for individual damage calculations. (R. 20627 at 32).

### b. Plaintiffs' Opposition

Plaintiffs oppose the motion, and argue class certification was, and is still, appropriate in this case. (R. 20652). First, the PSC argues the Court's Rule 23(a) findings of numerosity, commonality, typicality and adequacy are still supported by the current facts of this litigation. Second, the PSC argues the facts of this case meet Rule 23's predominance requirement, and the formulaic methodology for calculating damages is the correct method for resolving these claims.

(R. 20652). Plaintiffs contend that Defendants' Motion attempts to re-litigate issues the Court has resolved long ago, and nothing substantial has changed since the Court reached those findings. (R. 20652 at 1).

Addressing Defendants' arguments that this case fails to satisfy Rule 23's predominance requirement, Plaintiffs contend that all class members are entitled to property damages. To determine whether the predominance element is satisfied, Fifth Circuit law requires courts to "weigh common issues against individual ones and determine which category is likely to be the focus of the trial." (R. 20652 at 13) (citing *Crutchfield v. Sewerage & Water Bd. Of New Orleans*, 829 F.3d 370, 376 (5th Cir. 2016). This does not require every issue in the case be tried simultaneously. (R. 20652 at 13). The PSC argues that in this case, the property damage issue predominates, even though other important matters may have to be tried separately. Any individual issues all flow from the common question of property damages, and these individual adjustments do not preclude a finding of predominance. (R. 20652 at 24) (citing *Bertulli v. Ass'n of Cont'l Pilots*, 242 F.3d 290, 297-98 (5th Cir. 2001)).

Next, Plaintiffs argue that choice-of-law issues do not preclude certification in this case. They aver the predominant issue in this case is property damage and the law of each state involved in the class allows recovery for remediation damages for toxic contamination of the home. (R. 20652 at 21-22). Additionally, the PSC avers that even if state law differed in this regard, it would present a "manageability issue" and "courts should not refuse to certify a class because of manageability concerns." (R. 20652 at 23) (quoting *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017)).

Finally, Plaintiffs aver that class-certification is the superior method for resolving these claims. This Court, as well as Judge Farina in Florida, has already determined that class

certification was a superior way to resolve these claims. (R. 20652 at 25). This determination was based on the Court's eight-year involvement with this litigation, including its knowledge of the facts of this case, experience with the Defendants, and that liability had already been established. (R. 20652 at 25). Thus, Plaintiffs aver that class certification is still appropriate in this case, and Defendant's motion should be denied.

## V.    Class Certification Under Federal Rule of Civil Procedure 23

As an initial matter, Defendants argue liability has not been established against every Defendant, as at least one Defendant has not defaulted in each of the relevant actions. However, liability is not a requirement for maintaining a class under Rule 23. Fed. R. Civ. Proc. 23. Furthermore, each of the defendants have defaulted in at least one action. While Defendants argue these were not final judgments, the Court has already held that Findings of Fact and Conclusions of Law have a preclusive effect in this class proceeding. Thus, the findings of liability and causation were final judgments, and Defendants' argument that open questions of liability and causation preclude decertification is without merit.

### a.    Legal Standard Rule 23

Rule 23 provides in relevant part:

(a) **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) **Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: . . . (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

12

Fed. R. Civ. Proc. 23. Thus, read in combination, Rule 23(a) and 23(b)(3) provide six requirements for a group of claims to be certified as a class action—numerosity, commonality, typicality, adequacy, predominance, and superiority. Fed. R. Civ. P. 23. The proponents of the class bear the burden of demonstrating that the case is appropriate for class treatment. *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 n.4 (5th Cir. 2001). Class certification is soundly within the district court's discretion, and this decision is essentially a factual inquiry. *Vizena v. Union Pac. R.R. Co.,* 360 F.3d 496, 502–03 (5th Cir. 2004). In some cases it is necessary for a district court to go beyond the pleadings to understand the claims, defenses, substantive law, and relevant facts in order to make a meaningful certification decision. *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2556 (2011). However, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013). In the present motion, Defendants argue Plaintiffs cannot satisfy the predominance, superiority or adequacy requirements of Rule 23; thus the Court's analysis will focus on these factors.

### i. Predominance

Rule 23(b)(3) requires that common questions of law or fact "predominate over any questions affecting only individual [class] members." *Unger*, 401 F.3d at 320. To predominate, common issues must form a significant part of individual cases. *Mullen*, 186 F.3d at 626. The trial court should "weigh common issues against individual ones and determine which category is likely to be the focus of a trial." *Crutchfield v. Sewerage and Water Bd. Of New Orleans, 829 F.3d 370, 376 (2016).* The predominance requirement of Rule 23(b)(3) is "far more demanding" than the commonality requirement of Rule 23(a), because it "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Unger*, 401 F.3d at 320.

In the Fifth Circuit, district courts may divide damage hearings into phases, particularly in complex cases where, as here, such a division would serve judicial efficiency by separating common issues from individual ones. *See, e.g., In re Deepwater Horizon*, 739 F.3d 790, 816 (5th Cir.), *cert. denied sub nom. BP Expl. & Prod. Inc. v. Lake Eugenie Land & Dev., Inc.*, 135 S. Ct. 754 (2014) ("[P]redominance may be ensured in a mass accident case when a district court performs a sufficiently 'rigorous analysis' of the means by which common and individual issues will be divided and tried. In many circuits, this has been accomplished by means of multi-phase trials under Rule 23(c)(4), which permits district courts to limit class treatment to 'particular issues' and reserve other issues for individual determination."); *Watson v. Shell Oil Co.*, 979 F.2d 1014, 1023 (5th Cir. 1992) *on reh'g*, 53 F.3d 663 (5th Cir. 1994) (affirming and "express[ing] [its] admiration" for the district court's trial plan, which included three damages phases and allowed the district court to adjudicate common class issues in the first phase and individualized issues in later phases, despite due process challenge). To predominate, "common issues must constitute a significant part of the individual cases." *Mullen,* 186 F.3d at 626. As another section within this Court has explained, "[t]his is a matter of weighing, not counting, issues." *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*, 910 F. Supp. 2d 891, 912 (E.D. La. 2012), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014).

Here, the Taishan Defendants have been held liable for damages caused by defective Chinese drywall. Any properties containing Chinese drywall require complete remediation and cleaning. The only variation is the *extent* of the damages suffered based on the square footage of the involved property. This variation does not prevent class certification. *See In re Deepwater Horizon*, 739 F.3d 790, 815 (5th Cir. 2014) ("'Even wide disparity among class members as to

14

the amount of damages' does not preclude class certification 'and courts, therefore, have certified classes even in light of the need for individualized calculations of damages.'") (quoting *Bell Atlantic Corp. v. AT&T Corp.*, 339 F.3d 294, 306 (5th Cir. 2003)).

Defendants argue there are other issues which will require individual resolution, and thus claims for remediation damages do not predominate this litigation. In an attempt to demonstrate the "numerous" claims which will require independent resolution, Defendants parse each potential non-remediation claim into as many discrete issues as possible, then argue this "plethora" of discrete issues demonstrates remediation damages no longer predominate. The Court finds this argument unpersuasive. The vast majority of claimants seek to have their properties remediated. Claims for property damage are undoubtedly the focus of this MDL. *See Crutchfield*, 829 F.3d at 376 (explaining that an issues predominates when it "is likely to be the focus of a trial."). The fact that some plaintiffs have other claims that may require individual resolution does not undermine the central focus of the class—remediation damages. *See Mullen*, 186 F.3d at 626; *see also Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 911 (7th Cir. 2003) (Posner, J.) ("If there are genuinely common issues, issues identical across all the claimants, issues moreover the accuracy of the resolution of which is unlikely to be enhanced by repeated proceedings, then it makes good sense, especially when the class is large, to resolve those issues in one fell swoop while leaving the remaining, claimant-specific issues to individual follow-on proceedings.").

Calculating remediation damages was an extensive process, requiring the Court to hear evidence and make determinations on countless issues. *See Germano* FOFCOL at 27-55; *Hernandez* FOFCOL at 20-34. Defendants' attempt to cast remediation damages as only a minor part of this litigation is incompatible with the facts of this case. Thus, the Court finds Plaintiffs

have established remediation damages predominate over issues affecting only individual class members. *See Unger*, 401 F.3d at 320; *see also Turner v. Murphy Oil USA, Inc.*, 234 F.R.D. 597, 607 n.6 (E.D. La. 2006) (finding presence of claims for personal injury and mental anguish damages did not undermine a finding of predominance when they did not form a significant portion of the plaintiffs' claims).

### ii. Remediation Damage Formula

Defendants also argue that Plaintiffs' damage calculations are flawed. While "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage," the Court finds it necessary to briefly address Defendants' arguments. *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013). The Supreme Court recently held that in some circumstances, statistical evidence may be used to make class-wide determinations depending on what purpose the evidence is being introduced and the elements of the underlying cause of action. *Tyson Foods, Inc. v. Bouaphekeo*, 136 S. Ct. 1036, 1046 (2016) (citing *Erica P. John Fund, Inc. v. Haliburton Co.*, 563 U.S. 804, 809 (2011).

In *Tyson Foods*, Plaintiffs filed suit against their employer, alleging the employer's failure to compensate employees for time spent "donning and doffing" protective gear violated the Fair Labor Standards Act. *Tyson*, 136 S. Ct. at 1041. Because the employer did not keep records of how long it took each individual employee to put on and take off their gear, the district court relied on an average to determine each employee's damages. *Id*. To calculate the average, an expert reviewed video footage of various employees in multiple jobs putting on their protective gear, and then calculated an average "donning and doffing time" for two different departments. *Id*. The employer argued using an average for calculating damages was improper,

16

as some employees would be compensated for more time than they actually spent "donning and doffing." *Id.*

However, the Court disagreed and held the representative sample was a permissible means of showing individual damages. *Id.* at 1046. While declining to establish a general rule that representative evidence is always admissible in class action cases, the Court explained the use of such evidence can be admissible, but should "depend on the purpose for which the evidence is being introduced and on 'the elements of the underlying cause of action.' " *Id.* at 1046 (quoting *Erica P. John Fund, Inc. v. Halliburton Co.,* 563 U.S. 804, 809 (2011)). Specifically, the Court noted that using the statistical sample filled an evidentiary gap, and even if each Plaintiff had proceeded with an individual suit, the statistical evidence still would have been necessary to prove damages. *Id.*

Here, the Plaintiff class owns (or previously owned) properties which require remediation as a result of defective drywall. There is no variation with regard to the severity and type of injury or the nature and type of the damages. All Plaintiffs with defective Chinese drywall in their homes are entitled to total remediation of their properties. The duration of exposure or quantity of drywall installed does not change the nature of damages, and the solution to their problems—remediation—is identical in every instance. Unlike asbestos cases, including *In re Fibreboard*, (and unlike other similar circumstances, such as exposure to second-hand smoke), Plaintiffs' property damages in the Chinese drywall class do not vary according to duration or intensity of exposure that would require individual mini-trials to ascertain the origins of the damages. The vast majority of the Taishan properties are typical single-family homes where variations in trim and standard appliances will ultimately make no significant difference in the cost of repair. The damage estimate was based on competitive bids, and then cross-checked

17

through R.S. Means, which is a standard statistical reference tool in building construction estimation. The damage calculation is statistically adequate and based on plausible assumptions. *Tyson*, 136 S. Ct. at 1049. Thus, Defendants' challenges to the damage calculation formula are an insufficient basis for decertifying the class. Moreover, those claimants who feel that their property does not fit into the vast majority of properties can opt out of the class, and have their properties individually evaluated.

### iii. Superiority

Under Rule 23(b)(3), a district court must evaluate four factors to determine whether the class action format is superior to other methods of adjudication: the class members' interest in individually controlling their separate actions, the extent and nature of existing litigation by class members concerning the same claims, the desirability of concentrating the litigation in the particular forum, and the likely difficulties in class management. Fed. R. Civ. Proc. 23.

One need only review the factual and procedural history of this litigation to reveal the superiority of the class action proceeding in this case. Since the inception of this MDL Defendants have challenged jurisdiction, discovery, service of process, liability, and damage calculations, among other issues. Each one of these battles has resulted in extensive costs—costs which most individual Plaintiffs cannot, and should not, bear. Under Defendants' approach, every Plaintiff would need to find an expert to inspect their property, that expert would need to create an estimate, and Defendants would then have an opportunity to challenge that estimate, or submit their own. This approach would create infinite opportunities for conflict, as parties would need to re-litigate the scope and extent of remediation. Each Plaintiff would be forced to re-litigate issues this Court has already addressed, including what components of the home need complete replacement as opposed to removal, cleaning, storage, and reinstallation or the

appropriate method of cleaning a home after non-defective drywall was reinstalled. Such a case-by-case approach to this tragedy is not only unreasonable and inefficient, it is also unjust in light of the continued suffering of the Plaintiffs.

Liability and causation have already been established by default. The Court has already conducted extensive hearings—where Defendants' interests were capably represented—and made detailed findings which apply to all class members. There is only one narrow issue which remains—remediation damages. In light of this history, and the extensive progress that has already been made, a class proceeding is the superior method to adjudicate Plaintiffs' remaining claims.

### iv.  Adequacy

Rule 23(a)(4) demands that the named class representatives fairly and adequately represent the claims of the other class members. There can be differences between the position of class representatives and other class members so long as these differences do not "create conflicts between the named plaintiffs' interests and the class members' interests." *Mullen,* 186 F.3d at 626. A district court should evaluate whether the class representatives have a sufficient stake in the outcome of the litigation, and whether the class representatives have interests antagonistic to the unnamed class members. *Id.* (citing *Jenkins v. Raymark Indus., Inc.,* 782 F.2d 468, 472 (5th Cir.1986)). In addition, the district court should inquire into the zeal and competence of the class representatives' counsel and into the class representatives' willingness to take an active role in the litigation and to protect the interests of absentees. *Berger v. Compaq Computer Corp.,* 257 F.3d 475, 479 (5th Cir. 2001).

As this Court has previously noted, the class representatives have the same interests as class members. *See* Class Certification FOFCOL (R. Doc. 18028). Both the representatives and

19

class members seek damages in order to remedy the harm caused by the defective drywall. The class representatives have endured inspections of their homes in order to identify the drywall in their properties, and have waited for years as Taishan ignored, then abandoned, and finally re-entered this litigation. While Defendants allege the class counsel have conflicts of interest that prevent them from adequately representing Plaintiffs, the Court finds these arguments without merit. Class Counsel have spent years working to resolve this case. The have completed vast discovery, pursued multiple, international Defendants, and worked with the Court and the Knauf Defendants to ensure effective and efficient administration of the Knauf Settlement Agreement. Throughout this process, Class Counsel have demonstrated their professionalism and competence. Thus, the Court finds that both the class representatives and Class Counsel adequately represent the interests of the class.

## VI.    CONCLUSION

First, Plaintiffs have demonstrated that claims for remediation damages constitute the predominant issue in this MDL. Second, in light of the complex nature of this case and extensive history of the litigation, a class action is the superior mechanism for resolving these claims. Finally, both the class representatives and Class Counsel adequately represent the interests of class members. This Court therefore finds that class certification is appropriate pursuant to Fed. R. Civ. P. 23. Accordingly,

**IT IS ORDERED** that CNBM Group's Motion to Decertify the Class Pursuant to Rule 23(c)(1)(C), R. Doc. 20627, is **DENIED**.

**IT IS FURTHER ORDERED** that Taishan's Motion to Decertify the Class, R. Doc.
18879, is **DENIED**.


New Orleans, Louisiana this 21st day of April, 2017.


UNITED STATES DISTRICT JUDGE

# EXHIBIT

# "B"

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L JUDGE FALLON MAG. JUDGE WILKINSON |

THIS DOCUMENT RELATES TO:

**Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et. al.,  Case No. 2:11-cv-1395 (E.D.La.)**

**Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et. al.,  Case No. 2:11-cv-1672 (E.D.La.)**

**AMENDED ORDER**

AND NOW, on this ___1st___ Day of _____July_____, 2014, upon consideration of

the Plaintiffs' Third Omnibus Motion for Preliminary Default Judgement, it is hereby

ORDERED, ADJUDGED AND DECREED that said motion is GRANTED.

Plaintiffs are awarded preliminary default judgement against the defendants with whom

they are aligned as follows:

1.    With respect to the proceedings in *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et. al.*,  Case No. 2:11-cv-1395 (E.D.La.), Plaintiffs are awarded default judgment against the defendants identified in the Third Amended Exhibit "A" hereto; and

2.    With respect to the proceedings in *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et. al.*,  Case No. 2:11-cv-1672 (E.D.La.), Plaintiffs are awarded default judgment against the defendants identified in the Third Amended Exhibit "B" hereto.

Plaintiffs and the class they seek to represent are entitled to the entry of default and preliminary default judgment against the Defaulting Defendants with whom they are aligned on liability, with damages to be determined on further submission according to proof.

New Orleans, Louisiana this 1st day of July, 2014.

_____

United States District Judge

2

# THIRD AMENDED EXHIBIT A

**AMORIN, ET AL. V. TAISHAN GYPSUM CO., LTD. F/K/A SHANDONG TAIHE DONGXIN CO., LTD., ET AL.,**
**CASE NO.: 2:11-CV-1395 (E.D.LA.)**
**DEFENDANTS IN DEFAULT**

| DEFENDANT | ADDRESS FOR SERVICE | SERVICE WAS MADE |
|---|---|---|
| Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd. | Dawenkou Daiyue District East of National Road 104, 25KM South Tai'an City Shandong, China 271000 | 2/28/13 |
| Taian Taishan Plasterboard Co., Ltd. | Beixiyao Village Dawenkou Taian Shandong 271026 China | 6/20/13 |
| Qinhuangdao Taishan Building Materials Co., Ltd. a/k/a Qinhuang Dao Taishan Building Materials Co., Ltd. | Gangcheng Street East No. 69 Haigang District Qinhuangdao 066000 | 6/25/13 |
| China National Building Materials Co., Ltd. | 17th Floor Zhong Guo Jian Cai Da Sha San Li He Road #11 Haidian District Beijing City, PR.China 100037 | 4/3/13 |
| CNBM USA Corp | 17800 Castleton Street, Ste. 558 City of Industry, CA 91748 | 10/2/12 |
| Hubei Taishan Building Material Co., Ltd. | Jingmen High and New Technology Industrial Park, Hubei 448000 | 3/29/13 |
| Pingyi Baier Building Materials Co., Ltd. | Baier Industrial Park Ziqiu Town Pingyi County Shandong China 273305 | 4/18/13 |
| Tai'an Jindun Building Material Co., Ltd. | Dawenkou Daiyue District Tai'an 271026 | 6/20/13 |

*AMORIN, ET AL. V. TAISHAN GYPSUM CO., LTD. F/K/A SHANDONG TAIHE DONGXIN CO., LTD., ET AL.,*
CASE NO.: 2:11-CV-1395 (E.D.LA.)
DEFENDANTS IN DEFAULT

| DEFENDANT | ADDRESS FOR SERVICE | SERVICE WAS MADE |
|---|---|---|
| Taishan Gypsum Co., Ltd. Lucheng Branch | Ganlin Road No. 3<br>Lucheng, Shaanxi<br>047500 | 2/28/13 |
| Taishan Gypsum (Pingshan) Co., Ltd. | Dianchang Road<br>Pingshan Township<br>Pingshan County<br>050400 | 6/7/13 |
| Taishan Gypsum (Pizhou) Co., Ltd. | Yunhe Bridge West<br>Xulian Road<br>Pizhou City<br>Jiangsu<br>221200 | 7/18/13 |
| Taishan Gypsum (Tongling) Co., Ltd. | Jinqiao Industrial Park<br>Tongling Anhui<br>244000 | 4/9/13 |
| Taishan Gypsum (Xiangtan) Co., Ltd. | Industrial Park<br>Guoqiang Village<br>Shuangma Township<br>Yuetang District<br>Xiangtan<br>Hunan<br>411102 | 4/8/13 |
| Yunan Taishan Gypsum And Building Material Co., Ltd. | Sanjia Village<br>Liujiezhen Factory<br>Yimen County<br>Yunan<br>651107 | 4/24/13 |
| Taishan Gypsum (Hengshui) Co., Ltd. | Renmin West Road (Hengfeng Power Plant Ecology Industrial Park)<br>Hengshui City<br>053000 | 2/28/13 |
| Taishan Gypsum (Jiangyin) Co., Ltd. | Shengang Industrial Park<br>Jiangyin Economic and Technological Development Zone<br>Jiangsu<br>214443 | 2/28/13 |

**AMORIN, ET AL. V. TAISHAN GYPSUM CO., LTD. F/K/A SHANDONG TAIHE DONGXIN CO., LTD., ET AL.,
CASE NO.: 2:11-CV-1395 (E.D.LA.)
DEFENDANTS IN DEFAULT**

| DEFENDANT | ADDRESS FOR SERVICE | SERVICE WAS MADE |
|---|---|---|
| Tianjin Tianbao Century Development Co., Ltd. | 3 F, Eastern Exhibition Hall 31 Halbin Fifth Road Tianjin Free Trade Zone Tianjin City, China | 4/27/13 |
| Shandong Oriental International Trading Corp. | 17 - 21/F Shandong International Trades Mansion 51 Taiping Road Qingdao, China 266002 | 4/22/13 |
| Zibo International Economic and Technical Cooperation Corporation | 4/F No. 107 LiuQuan Rd. ZhangDian District Zibo, Shandong, China | 4/12/13 |
| Xuzhou Hanbang Global Trade Co., Ltd. | Room409, Yicheng Plaza, No.95 Pengcheng Road Xuzhou Jiangsu 221003 China | 6/5/13 |
| China Xuzhou International Economic & Technological Cooperation Co., Ltd. | 4/F Yingdu Bldg. 120 Huaihai West Rd. Xuzhou, Jiangsu, China | 6/5/13 |
| Jiangsu Easthigh Group Import & Export Co., Ltd. | 3/F, Jiangsu International Economic Trade Building, No. 50, Zhonghua Road, Nanjing 210001 | 3/23/13 |

# THIRD AMENDED EXHIBIT B

**AMORIN, ET AL. V. TAISHAN GYPSUM CO., LTD. F/K/A SHANDONG TAIHE DONGXIN CO., LTD., ET AL., CASE NO.: 2:11-CV-1672 (E.D.LA)**

**DEFENDANTS IN DEFAULT**

| DEFENDANT | ADDRESS FOR SERVICE | SERVICE WAS MADE |
|---|---|---|
| Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd. | Dawenkou Daiyue District East of National Road 104, 25KM South Tai'an City Shandong, China 271000 | 5/10/13 |
| Taian Taishan Plasterboard Co., Ltd. | Beixiyao Village Dawenkou Taian Shandong 271026 China | 12/27/12 |
| Qinhuangdao Taishan Building Materials Co., Ltd. a/k/a Qinhuang Dao Taishan Building Materials Co., Ltd. | Gangcheng Street East No. 69 Haigang District Qinhuangdao 066000 | 12/27/12 |
| CNBM USA Corp | 17800 Castleton Street, Ste. 558 City of Industry, CA 91748 | 10/2/12 |
| Changzhou Yinhe Wood Industry Co., Ltd. | Qianfeng Industrial Park Henglin Town Changzhou, Jiangsu, China 213 103 | 6/3/13 |
| Fuxin Taishan Gypsum And Building Material Co., Ltd. | Pingxi Industrial Park North Haizhou District Fuxin Liaoning 123000 | 3/29/13 |
| Hubei Taishan Building Material Co., Ltd. | Jingmen High and New Technology Industrial Park, Hubei 448000 | 4/18/03 |
| Pingyi Baier Building Materials Co., Ltd. | Baier Industrial Park Ziqiu Town Pingyi County Shandong China 273305 | 4/3/13 |

*AMORIN, ET AL. V. TAISHAN GYPSUM CO., LTD. F/K/A SHANDONG TAIHE DONGXIN CO., LTD., ET AL.,*
*CASE NO.: 2:11-CV-1672 (E.D.LA)*

**DEFENDANTS IN DEFAULT**

| DEFENDANT | ADDRESS FOR SERVICE | SERVICE WAS MADE |
|---|---|---|
| Tai'an Jindun Building Material Co., Ltd. | Dawenkou<br>Daiyue District<br>Tai'an<br>271026 | 12/27/12 |
| Taishan Gypsum Co., Ltd. Lucheng Branch | Ganlin Road No. 3<br>Lucheng, Shaanxi<br>047500 | 5/22/13 |
| Taishan Gypsum (Chongqing) Co., Ltd. | Luhuang Industrial Park A<br>Jiangjin<br>Chongqing<br>402260 | 12/27/12 |
| Taishan Gypsum (Henan) Co., Ltd. | Shouyang Industrial Park<br>Beihuan Road North<br>Yanshi<br>Henan<br>471900 | 3/26/13 |
| Taishan Gypsum (Pingshan) Co., Ltd. | Dianchang Road<br>Pingshan Township<br>Pingshan County<br>050400 | 4/8/13 |
| Taishan Gypsum (Pizhou) Co., Ltd. | Yunhe Bridge West<br>Xulian Road<br>Pizhou City<br>Jiangsu<br>221200 | 4/14/13 |
| Taishan Gypsum (Tongling) Co., Ltd. | Jinqiao Industrial Park<br>Tongling Anhui<br>244000 | 3/19/13 |
| Taishan Gypsum (Xiangtan) Co., Ltd. | Industrial Park<br>Guoqiang Village<br>Shuangma Township<br>Yuetang District<br>Xiangtan<br>Hunan<br>411102 | 3/14/13 |

***AMORIN, ET AL. V. TAISHAN GYPSUM CO., LTD. F/K/A SHANDONG TAIHE DONGXIN CO., LTD., ET AL.,***
***CASE NO.: 2:11-CV-1672 (E.D.LA)***

**DEFENDANTS IN DEFAULT**

| DEFENDANT | ADDRESS FOR SERVICE | SERVICE WAS MADE |
|---|---|---|
| Yunan Taishan Gypsum And Building Material Co., Ltd. | Sanjia Village<br>Liujiezhen Factory<br>Yimen County<br>Yunan<br>651107 | 3/26/13 |
| Shaanxi Taishan Gypsum Co., Ltd. | Weibei Industrial Park<br>Xinshi Township<br>Linwei District<br>Weinan City<br>Shaanxi<br>714000 | 12/27/12 |
| Taishan Gypsum (Hengshui) Co., Ltd. | Renmin West Road (Hengfeng Power Plant Ecology Industrial Park)<br>Hengshui City<br>053000 | 5/7/13 |
| Taishan Gypsum (Jiangyin) Co., Ltd. | Shengang Industrial Park<br>Jiangyin Economic and Technological Development Zone<br>Jiangsu<br>214443 | 4/23/13 |
| Qingdao Yilie International Trade Co., Ltd | Room 804<br>Building 1<br>Tianshengyuan<br>21 Donghai West Road<br>Shinan District<br>Qingdao, Shandong, China<br>266071 | 3/27/13 |
| Shanghai East Best Arts & Crafts Co., Ltd. | 273 SI Ping Lu<br>Shanghai<br>Shanghai China 200081 | 12/27/12 |
| Tianjin Tianbao Century Development Co., Ltd. | 3 F, Eastern Exhibition Hall<br>31 Halbin Fifth Road<br>Tianjin Free Trade Zone<br>Tianjin City, China | 4/1/13 |

***AMORIN, ET AL. V. TAISHAN GYPSUM CO., LTD. F/K/A SHANDONG TAIHE DONGXIN CO., LTD., ET AL.,***
**CASE NO.: 2:11-CV-1672 (E.D.LA)**

**DEFENDANTS IN DEFAULT**

| DEFENDANT | ADDRESS FOR SERVICE | SERVICE WAS MADE |
|---|---|---|
| Shandong Oriental International Trading Corp. | 17 - 21/F Shandong International Trades Mansion 51 Taiping Road Qingdao, China 266002 | 12/27/12 |
| Shanghai YuYuan Market Import & Export Co., Ltd. | 19 Wen Chuan Rd. Changhai China | |
| Zibo International Economic and Technical Cooperation Corporation | 4/F No. 107 LiuQuan Rd. ZhangDian District Zibo, Shandong, China | 3/27/13 |
| Shanghai Yujin Industry Co., Ltd. | Room 1805, Lucky Mansion, 660 Shangcheng Road, Shanghai, China 200120 | 4/26/13 |
| Jiangsu Easthigh Group Import & Export Co., Ltd. | 3/F, Jiangsu International Economic Trade Building, No. 50, Zhonghua Road, Nanjing 210001 | 5/7/13 |

# EXHIBIT

# "C"

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO:<br><br>Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et. al., Case No. 2:11-cv-1395 (E.D.La.)<br><br>Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et. al., Case No. 2:11-cv-1672 (E.D.La.)<br><br>Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et. al., Case No. 2:11-cv-1673 (E.D.La.) | |

## AMENDED ORDER

AND NOW, on this ___1st___ Day of ___July___, 2014, upon consideration of the Plaintiffs' Fourth Omnibus Motion for Preliminary Default Judgement, it is hereby ORDERED, ADJUDGED AND DECREED that said motion is GRANTED.

Plaintiffs are awarded preliminary default judgement against the defendants with whom they are aligned as follows:

1. With respect to the proceedings in *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et. al.*, Case No. 2:11-cv-1395 (E.D.La.) (originally filed in the Eastern District of Louisiana), Plaintiffs are awarded default judgment against the defendants identified in Amended Exhibit "A" hereto; and

2. With respect to the proceedings in *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et. al.*, Case No. 2:11-cv-1672 (E.D.La.)

(originally filed in the Southern District of Florida prior to being transferred to this Court), Plaintiffs are awarded default judgment against the defendants identified in Amended Exhibit "B" hereto; and

3.    With respect to the proceedings in *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et. al.*, Case No. 2:11-cv-1673 (E.D.La.) (originally filed in the Eastern District of Virginia before being transferred to this Court), Plaintiffs are awarded default judgment against the defendants identified in Amended Exhibit "C" hereto.

Plaintiffs and the class they seek to represent are entitled to the entry of default and preliminary default judgment against the Defaulting Defendants with whom they are aligned on liability, with damages to be determined on further submission according to proof.

New Orleans, Louisiana this 1st day of July, 2014.

_____
United States District Judge

# AMENDED

# EXHIBIT A

*AMORIN, ET AL. V. TAISHAN GYPSUM CO., LTD. F/K/A SHANDONG TAIHE DONGXIN CO., LTD., ET AL.*,
CASE NO.: 2:11-CV-1395 (E.D.LA.)
DEFENDANTS IN DEFAULT

| DEFENDANT | ADDRESS FOR SERVICE | SERVICE WAS MADE |
|---|---|---|
| Shaanxi Taishan Gypsum Co., Ltd. | Weibei Industrial Park Xinshi Township Linwei District Weinan City Shaanxi 714000 | 9/26/13 |
| CNBMI Co., Ltd. | 14/F International Trade Building, NO. 3002, Renmin South Road, Luohu District, Shenzhen, China 518014 | 7/18/13 |
| Shanghai East Best Arts & Crafts Co., Ltd. | 273 SI Ping Lu Shanghai Shanghai China 200081 | 4/23/13 |
| Shanghai Yujin Industry Co., Ltd. | Room 1805, Lucky Mansion, 660 Shangcheng Road, Shanghai, China 200120 | 4/26/13 |
| Taishan Gypsum (Chongqing) Co., Ltd. | Luhuang Industrial Park A Jiangjin Chongqing 402260 | 2/28/13 |
| Taishan Gypsum (Pingshan) Co., Ltd. | Dianchang Road Pingshan Township Pingshan County 050400 | 6/7/13 |
| Shanghai Yu Yuan Imp. & Exp.Co., Ltd | 3/F No. 135-1 Jiu Jiao Chang Road Shanghai China 200010 | 4/22/13 |

# AMENDED
# EXHIBIT B

*AMORIN, ET AL. V. TAISHAN GYPSUM CO., LTD. F/K/A SHANDONG TAIHE DONGXIN CO., LTD., ET AL.,*
CASE NO.: 2:11-CV-1672 (E.D.LA)

**DEFENDANTS IN DEFAULT**

| DEFENDANT | ADDRESS FOR SERVICE | SERVICE WAS MADE |
|---|---|---|
| CNBMI Co., Ltd. | 14/F International Trade Building, NO. 3002, Renmin South Road, Luohu District, Shenzhen, China 518014 | 8/15/13 |
| Taishan Gypsum (Wenzhou) Co., Ltd. | Yinhui Road No. 76, Panshi Zhen, Leqing, Wenzhen, Zhenjiang, China 325602 | 5/9/13 |

# AMENDED
# EXHIBIT C

*AMORIN, ET AL. V. TAISHAN GYPSUM CO., LTD. F/K/A SHANDONG TAIHE DONGXIN CO., LTD., ET AL.*, CASE NO.: 2:11-CV-1673 (E.D.LA)

### DEFENDANTS IN DEFAULT

| DEFENDANT | ADDRESS FOR SERVICE | SERVICE WAS MADE |
|---|---|---|
| Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd. | Dawenkou Daiyue District East of National Road 104, 25KM South Tai'an City Shandong, China 271000 | 8/6/13 |
| Taian Taishan Plasterboard Co., Ltd. | Beixiyao Village Dawenkou Taian Shandong 271026 China | 3/29/13 |
| Qinhuangdao Taishan Building Materials Co., Ltd. a/k/a Qinhuang Dao Taishan Building Materials Co., Ltd. | Gangcheng Street East No. 69 Haigang District Qinhuangdao 066000 | 7/16/13 |
| Beijing New Building Materials Public Limited Company | No. A-11 Sanlihe Road Haidian District, Beijing 100037<br><br>new address:<br><br>Long Guan Zhi Ye Plaza, No. 118 West Street, Huilongguan, Changping District, Beijing, China 102208 | 6/18/13 |
| China National Building Materials Co., Ltd. | 17th Floor Zhong Guo Jian Cai Da Sha San Li He Road #11 Haidian District Beijing City, PR.China 100037<br><br>new address:<br><br>21/F, Tower 2, Guohai Plaza, 17 Fuxing Road, Haidian District, Beijing 100036 | 6/18/13 |

*AMORIN, ET AL. V. TAISHAN GYPSUM CO., LTD. F/K/A SHANDONG TAIHE DONGXIN CO., LTD., ET AL., CASE NO.: 2:11-CV-1673 (E.D.LA)*

**DEFENDANTS IN DEFAULT**

| DEFENDANT | ADDRESS FOR SERVICE | SERVICE WAS MADE |
|---|---|---|
| China National Building Material Group | 17th Floor<br>Zhong Guo Jian Cai Da Sha<br>San Li He Road #11<br>Haidian District<br>Beijing City, PR.China 100037<br><br>new address:<br><br>23/F, Tower 2, Guohai Plaza, 17 Fuxing Road, Haidian District, Beijing 100036 | 6/18/13 |
| Changzhou Yinhe Wood Industry Co., Ltd. | Qianfeng Industrial Park<br>Henglin Town<br>Changzhou, Jiangsu, China<br>213 103 | 6/3/13 |
| Fuxin Taishan Gypsum And Building Material Co., Ltd. | Pingxi Industrial Park North<br>Haizhou District<br>Fuxin<br>Liaoning<br>123000 | 5/30/13 |
| Hubei Taishan Building Material Co., Ltd. | Jingmen High and New Technology Industrial Park,<br>Hubei<br>448000 | 5/28/13 |
| Pingyi Baier Building Materials Co., Ltd. | Baier Industrial Park<br>Ziqiu Town<br>Pingyi County<br>Shandong<br>China 273305 | 6/5/13 |

*AMORIN, ET AL. V. TAISHAN GYPSUM CO., LTD. F/K/A SHANDONG TAIHE DONGXIN CO., LTD., ET AL.*, CASE NO.: 2:11-CV-1673 (E.D.LA)

### DEFENDANTS IN DEFAULT

| DEFENDANT | ADDRESS FOR SERVICE | SERVICE WAS MADE |
|---|---|---|
| Tai'an Jindun Building Material Co., Ltd. | Dawenkou<br>Daiyue District<br>Tai'an<br>271026 | 3/29/13 |
| Taishan Gypsum (Henan) Co., Ltd. | Shouyang Industrial Park<br>Beihuan Road North<br>Yanshi<br>Henan<br>471900 | 7/9/13 |
| Taishan Gypsum (Pizhou) Co., Ltd. | Yunhe Bridge West<br>Xulian Road<br>Pizhou City<br>Jiangsu<br>221200 | 6/5/13 |
| Taishan Gypsum (Tongling) Co., Ltd. | Jinqiao Industrial Park<br>Tongling Anhui<br>244000 | 5/22/13 |
| Yunan Taishan Gypsum And Building Material Co., Ltd. | Sanjia Village<br>Liujiezhen Factory<br>Yimen County<br>Yunan<br>651107 | 7/17/13 |
| Shaanxi Taishan Gypsum Co., Ltd. | Weibei Industrial Park<br>Xinshi Township<br>Linwei District<br>Weinan City<br>Shaanxi<br>714000 | 9/26/13 |

***AMORIN, ET AL. V. TAISHAN GYPSUM CO., LTD. F/K/A SHANDONG TAIHE DONGXIN CO., LTD., ET AL., CASE NO.: 2:11-CV-1673 (E.D.LA)***

### DEFENDANTS IN DEFAULT

| DEFENDANT | ADDRESS FOR SERVICE | SERVICE WAS MADE |
|---|---|---|
| Taishan Gypsum (Jiangyin) Co., Ltd. | Shengang Industrial Park<br><br>Jiangyin Economic and Technological Development Zone<br><br>Jiangsu<br><br>214443 | 3/29/13 |
| Taishan Gypsum (Wenzhou) Co., Ltd. | Yinhui Road No. 76, Panshi Zhen, Leqing, Wenzhen, Zhenjiang, China 325602 | 6/13/13 |
| Shanghai East Best Arts & Crafts Co., Ltd. | 273 SI Ping Lu<br><br>Shanghai<br><br>Shanghai China 200081 | 5/29/13 |
| Tianjin Tianbao Century Development Co., Ltd. | 3 F, Eastern Exhibition Hall<br><br>31 Halbin Fifth Road<br><br>Tianjin Free Trade Zone<br><br>Tianjin City, China | 5/24/13 |
| Shandong Oriental International Trading Corp. | 17 - 21/F Shandong<br><br>International Trades Mansion<br><br>51 Taiping Road<br><br>Qingdao, China 266002 | 6/4/13 |
| Zibo International Economic and Technical Cooperation Corporation | 4/F No. 107 LiuQuan Rd.<br><br>ZhangDian District<br><br>Zibo, Shandong, China | 6/3/13 |
| Shanghai Yujin Industry Co., Ltd. | Room 1805, Lucky Mansion, 660 Shangcheng Road, Shanghai, China 200120 | 5/27/13 |
| Xuzhou Hanbang Global Trade Co., Ltd. | Room409, Yicheng Plaza, No.95 Pengcheng Road Xuzhou Jiangsu 221003 China | 6/5/13 |

*AMORIN, ET AL. V. TAISHAN GYPSUM CO., LTD. F/K/A SHANDONG TAIHE DONGXIN CO., LTD., ET AL.,* CASE NO.: 2:11-CV-1673 (E.D.LA)

### DEFENDANTS IN DEFAULT

| DEFENDANT | ADDRESS FOR SERVICE | SERVICE WAS MADE |
|---|---|---|
| China Xuzhou International Economic & Technological Cooperation Co., Ltd. | 4/F Yingdu Bldg.<br>120 Huaihai West Rd.<br>Xuzhou, Jiangsu, China | 6/5/13 |
| Jiangsu Easthigh Group Import & Export Co., Ltd. | 3/F, Jiangsu International Economic Trade Building, No. 50, Zhonghua Road, Nanjing<br>210001 | 5/7/13 |
| BNBM of America Inc. | PPB:<br>4900 W. Rio Vista Avenue<br>Tampa, FL 33634<br><br>Service Address:<br><br>Donald H. Wilson, Jr.<br>245 South Central Ave.<br>Bartow, FL 33830 | 9/27/12 |
| BNBM USA | 245 South Central Ave.<br>Bartow, FL 33830 | 10/22/12 |
| United Suntech Craft, Inc. | 7813 NW 67th Street<br>Miami, FL 33166-2703 | 10/2/12 |
| CNBMI Co., Ltd. | 14/F International Trade Building, NO. 3002, Renmin South Road, Luohu District, Shenzhen, China<br>518014 | 7/18/13 |

# EXHIBIT

# "D"

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |

THIS DOCUMENT RELATES TO:

*Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et. al.,*  Case No. 2:11-cv-1395 (E.D.La.)

*Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et. al.,*  Case No. 2:11-cv-1672 (E.D.La.)

*Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et. al.,*  Case No. 2:11-cv-1673 (E.D.La.)

## AMENDED ORDER

AND NOW, on this ___1st___ Day of ___July___, 2014, upon consideration of the Plaintiffs' Fifth Omnibus Motion for Preliminary Default Judgement, it is hereby ORDERED, ADJUDGED AND DECREED that said motion is GRANTED.

Plaintiffs are awarded preliminary default judgement against the defendants with whom they are aligned as follows:

1.  With respect to the proceedings in *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et. al.,* Case No. 2:11-cv-1395 (E.D.La.) (originally filed in the Eastern District of Louisiana), Plaintiffs are awarded default judgment against the defendants identified in Amended Exhibit "A" hereto; and

2.  With respect to the proceedings in *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et. al.,* Case No. 2:11-cv-1672 (E.D.La.)

(originally filed in the Southern District of Florida prior to being transferred to this Court), Plaintiffs are awarded default judgment against the defendants identified in Amended Exhibit "B" hereto; and

3.  With respect to the proceedings in *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et. al.*, Case No. 2:11-cv-1673 (E.D.La.) (originally filed in the Eastern District of Virginia before being transferred to this Court), Plaintiffs are awarded default judgment against the defendants identified in Amended Exhibit "C" hereto.

Plaintiffs and the class they seek to represent are entitled to the entry of default and preliminary default judgment against the Defaulting Defendants with whom they are aligned on liability, with damages to be determined on further submission according to proof.

New Orleans, Louisiana this 1st day of July, 2014.

_____
United States District Judge

2

# AMENDED EXHIBIT A

***AMORIN, ET AL. V. TAISHAN GYPSUM CO., LTD. F/K/A SHANDONG TAIHE DONGXIN
CO., LTD., ET AL., CASE NO.: 2:11-CV-1395 (E.D.LA.)***

**DEFENDANTS IN DEFAULT**

| DEFENDANT | ADDRESS FOR SERVICE | SERVICE WAS MADE |
|---|---|---|
| Nanhai Silk Imp. & Exp. Corporation | Block 1<br>4 Nangui Road, West<br>Foshan Guangdong<br>China, 528200 | 9/26/13 |
| BNBM of America Inc. | PPB:<br>4900 W. Rio Vista Avenue<br>Tampa, FL 33634<br><br>Service Address:<br><br>Donald H. Wilson, Jr.<br>245 South Central Ave.<br>Bartow, FL 33830 | 11/1/11<br><br>12/18/12 (Omni XVI) |
| BNBM USA | 245 South Central Ave.<br>Bartow, FL 33830 | 12/18/12<br><br>12/18/12 (Omni XVI) |
| United Suntech Craft, Inc. | 7813 NW 67th Street<br>Miami, FL 33166-2703 | 12/20/12<br><br>12/20/12 |
| CNBM USA Corp | 17800 Castleton Street, Ste. 558<br>City of Industry, CA 91748 | 12/17/12 (Omni XVI) |

# AMENDED EXHIBIT B

*AMORIN, ET AL. V. TAISHAN GYPSUM CO., LTD. F/K/A SHANDONG TAIHE DONGXIN CO., LTD., ET AL., CASE NO.: 2:11-CV-1672 (E.D.LA)*

**DEFENDANTS IN DEFAULT**

| DEFENDANT | ADDRESS FOR SERVICE | SERVICE WAS MADE |
|---|---|---|
| Nanhai Silk Imp. & Exp. Corporation | Block 1<br>4 Nangui Road, West<br>Foshan Guangdong<br>China, 528200 | 4/25/13<br><br>8/12/13 (Omni XV) |
| BNBM of America Inc. | PPB:<br>4900 W. Rio Vista Avenue<br>Tampa, FL 33634<br><br>Service Address:<br><br>Donald H. Wilson, Jr.<br>245 South Central Ave.<br>Bartow, FL 33830 | 9/27/12 |
| BNBM USA | 245 South Central Ave.<br>Bartow, FL 33830 | 10/22/12 |
| United Suntech Craft, Inc. | 7813 NW 67th Street<br>Miami, FL 33166-2703 | 10/2/12 |
| Qinhuangdao Taishan Building Materials Co., Ltd. a/k/a Qinhuang Dao Taishan Building Materials Co., Ltd. | Gangcheng Street East No. 69<br>Haigang District<br>Qinhuangdao<br>066000 | 1/20/14 (Omni XV) |
| CNBM USA Corp | 17800 Castleton Street, Ste. 558<br>City of Industry, CA 91748 | 12/17/12 (Omni XV) |
| Changzhou Yinhe Wood Industry Co., Ltd. | Qianfeng Industrial Park Henglin Town<br>Changzhou, Jiangsu, China<br>213 103 | 12/16/13 (Omni XV) |

*AMORIN, ET AL. v. TAISHAN GYPSUM CO., LTD. F/K/A SHANDONG TAIHE DONGXIN CO., LTD., ET AL., CASE NO.: 2:11-CV-1672 (E.D.LA)*

**DEFENDANTS IN DEFAULT**

| DEFENDANT | ADDRESS FOR SERVICE | SERVICE WAS MADE |
|---|---|---|
| Fuxin Taishan Gypsum And Building Material Co., Ltd. | Pingxi Industrial Park North Haizhou District Fuxin Liaoning 123000 | 8/5/13 (Omni XV) |
| Hubei Taishan Building Material Co., Ltd. | Jingmen High and New Technology Industrial Park, Hubei 448000 | 10/14/13 (Omni XV) |
| Pingyi Baier Building Materials Co., Ltd. | Baier Industrial Park Ziqiu Town Pingyi County Shandong China 273305 | 8/22/13 (Omni XV) |
| Taishan Gypsum (Henan) Co., Ltd. | Shouyang Industrial Park Beihuan Road North Yanshi Henan 471900 | 8/22/13 (Omni XV) |
| Taishan Gypsum (Pingshan) Co., Ltd. | Dianchang Road Pingshan Township Pingshan County 050400 | 5/28/13 (Omni XV) |
| Taishan Gypsum (Tongling) Co., Ltd. | Jinqiao Industrial Park Tongling Anhui 244000 | 7/26/13 (Omni XV) |
| Taishan Gypsum (Xiangtan) Co., Ltd. | Industrial Park Guoqiang Village Shuangma Township Yuetang District Xiangtan Hunan 411102 | 5/28/13 (Omni XV) |

*AMORIN, ET AL. V. TAISHAN GYPSUM CO., LTD. F/K/A SHANDONG TAIHE DONGXIN CO., LTD., ET AL.*, CASE NO.: 2:11-CV-1672 (E.D.LA)

**DEFENDANTS IN DEFAULT**

| DEFENDANT | ADDRESS FOR SERVICE | SERVICE WAS MADE |
|---|---|---|
| Yunan Taishan Gypsum And Building Material Co., Ltd. | Sanjia Village Liujiezhen Factory Yimen County Yunan 651107 | 8/9/13 (Omni XV) |
| Taishan Gypsum (Wenzhou) Co., Ltd. | Yinhui Road No. 76, Panshi Zhen, Leqing, Wenzhen, Zhenjiang, China 325602 | 9/5/13 (Omni XV) |
| Tianjin Tianbao Century Development Co., Ltd. | 3 F, Eastern Exhibition Hall 31 Halbin Fifth Road Tianjin Free Trade Zone Tianjin City, China | 8/28/13 (Omni XV) |
| Nantong Economic and Technological Development Zone Corporation | 9 Waihuan West Rd. Chongchuan Nantong Jiangsu, China | 7/23/13 (Omni XV) |
| Zhejiang Provincial Second Light Industry Enterprises Group Imp. & Exp. Co., Ltd. | 11/F Jiangjiang Mansion, 111 Hushu South Road, Hangzhou, Zhejiang, China, 310005 | 7/31/13 (Omni XV) |
| SIIC Shanghai International Trade Group Pudong Co., Ltd. | SIIC Building 30F., NO.18cao Xi Bei RD. Shanghai 200030, China, Shanghai | 9/3/13 (Omni XV) |

# AMENDED
# EXHIBIT C

*AMORIN, ET AL. V. TAISHAN GYPSUM CO., LTD. F/K/A SHANDONG TAIHE DONGXIN CO., LTD., ET AL., CASE NO.: 2:11-CV-1673 (E.D.LA.)*

**DEFENDANTS IN DEFAULT**

| DEFENDANT | ADDRESS FOR SERVICE | SERVICE WAS MADE |
|---|---|---|
| Nanhai Silk Imp. & Exp. Corporation | Block 1<br>4 Nangui Road, West<br>Foshan Guangdong<br>China, 528200 | 9/26/13 |
| Taishan Gypsum (Pingshan) Co., Ltd. | Dianchang Road<br>Pingshan Township<br>Pingshan County<br>050400 | 6/20/13 |
| Taishan Gypsum (Xiangtan) Co., Ltd. | Industrial Park<br>Guoqiang Village<br>Shuangma Township<br>Yuetang District<br>Xiangtan<br>Hunan<br>411102 | 5/23/13 |