# Exhibit "4"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

|  |  |
|---|---|
| **EDUARDO AND CARMEN AMORIN**, *et al.*, **individually, and on behalf of all others similarly situated,** | |
| **Plaintiffs,** | |
| **v.** | **Case No. 1:11-CV-22408-MGC** |
| **TAISHAN GYPSUM CO., LTD. f/k/a SHANDONG TAIHE DONGXIN CO., LTD.; TAIAN TAISHAN PLASTERBOARD CO., LTD.**, *et al.*, | |
| **Defendants.** | |

### PLAINTIFFS' CORRECTED UNOPPOSED MOTION FOR THE COURT TO ACCEPT PLAINTIFFS' LATE FILED OPPOSITION TO DEFENDANTS' MOTION TO ENFORCE DISCOVERY RIGHTS (ECF No. 66) AS TIMELY FILED

Plaintiffs hereby file their Corrected Unopposed Motion for the Court to Accept Their Late Filed Opposition to Defendants' Motion to Enforce Discovery Rights (ECF No. 66) As Timely Filed, and in support state as follows:

1. Pursuant to Court's order of August 14, 2018 (ECF No. 47), the Federal Rules of Civil Procedure, and Local Rule 7.1 the deadline to file the above-identified Opposition to Defendants' Motion to Enforce Discovery Rights was Friday, September 28, 2018.

2. Good cause exists for the Court to accept Plaintiffs' late-filed Opposition to Defendants' Motion to Enforce Discovery Rights as timely filed.

3. Plaintiffs attempted to file their Opposition to Defendants' Motion to Enforce Discovery Rights on Friday, September 28, 2018 through CM/ECF.

4. Through a glitch in the CM/ECF system or user error, Plaintiffs' filing was not accepted or docketed.

5. Plaintiffs were unaware that their Opposition to Defendants' Motion to Enforce Discovery Rights was unfiled until Sunday, September 30, 2018 and took immediate steps to remedy the error.

6. Plaintiffs' Opposition to Defendants' Motion to Enforce Discovery Rights is attached hereto as Exhibit A.

7. Plaintiffs have conferred with Defense Counsel who have represented that they have no opposition to the relief sought in the instant Motion.

8. No prejudice will result from the requested relief, and acceptance of the late filing does not impact any other deadline or the trial date.

9. Further, should the Court grant the relief sought, Plaintiffs have agreed that Defense Counsel may have until Monday, October 8th to file their reply brief.

10. This Motion is made in good faith and is not being filed for the purposes of delay.

11. A proposed Order is attached.

Wherefore, Plaintiffs respectfully request that the Court Accept Their Late Filed Opposition to Defendants' Motion to Enforce Discovery Rights (ECF No. 66) as timely filed.

## CERTIFICATE OF SERVICE

I hereby certify that that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Southern District of Florida by using the CM/ECF System, which will send a notice of electronic filing on this 1st day of October, 2018.

/s/ Patrick S. Montoya, Esq.
Patrick Shanan Montoya

2

Fla. Bar No. 0524441
Email: Patrick@colson.com
Colson Hicks Eidson
255 Alhambra Circle, PH
Coral Gables, FL  33134-2351
Telephone:  (305) 476-7400
Facsimile:  (305) 476-7444
*Interim Lead Counsel for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

**EDUARDO AND CARMEN AMORIN,** *et al.*, **individually, and on behalf of all others similarly situated,**

**Plaintiffs,**

v.

**TAISHAN GYPSUM CO., LTD. f/k/a SHANDONG TAIHE DONGXIN CO., LTD.; TAIAN TAISHAN PLASTERBOARD CO., LTD.,** *et al.*,

**Defendants.**

**Case No. 1:11-CV-22408-MGC**

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO ENFORCE DISCOVERY RIGHTS

## I.    INTRODUCTION

Defendants' Motion to Enforce Discovery Rights (ECF No. 66):

- Ignores Defendants' contempt for our judicial system and their willful refusal to participate in the litigation and the MDL discovery process despite proper service under The Hague Convention;

- Is completely devoid of any Proportionality analysis under Rule 26(b);

- Fails to recognize the limited nature and scope of the Rule 55 procedure and its effect on the Proportionality analysis;

- Disregards the aggregate class damages determination already made by the MDL Transferor Court following an evidentiary hearing in which Defendants fully participated[1];

---

[1] In keeping with their shifting-sands approach designed to achieve interminable delay, Defendants seek to undo the class damages hearing and start over with unnecessary discovery on all issues followed by jury trials on all claims. At this point, however, there are only three issues left to verify to reach an award for each Plaintiff's remediation damages: (i) square footage in the property; (ii) product ID; and (iii) ownership. As set forth in Plaintiffs' Plan for Resolution of the Florida Claims (ECF No. 52), the calculation of each Plaintiffs' remediation damages can and should be done through a claims process before a Special Master. Any discovery needed with regard to Plaintiffs' other damages (alternate living expenses, foreclosure, bankruptcy, short sale, loss of use and enjoyment,

- Ignores the Court's wide discretion in the management of complex cases under Rule 16(c)(2)(L); and,

- Ignores the Suggestion of Remand by Judge Fallon, approved by the Judicial Panel on Multi-District Litigation, that discovery is effectively complete and the remaining cases in Florida ready for trial.

As already determined by the MDL Court in this certified class action, there is only one way to effectively remediate a home affected by toxic drywall: take everything down to the studs and replace all drywall, the entire HVAC assembly, the entire electrical system (including receptacles and switches), all copper and silver plumbing, all items that are likely to be damaged during demolition (*i.e.*, cabinets, trim and baseboards), and all items that are ultimately more efficient to replace than restore, such as carpet and flooring.[2] Somewhat ironically, the destructive nature of the defective Chinese Drywall at issue makes calculating its remediation a relatively straightforward matter. The Defendants' request to further delay these proceedings with a cumbersome and onerous individualized discovery process is not proportional to the needs of this case. Instead, it is yet another in a long series of attempts to delay the resolution of these claims that have sat through more than nine years of pretrial proceedings; proceedings that were delayed for extended periods of time due to the Defendants' recalcitrance and manipulation of our judicial system.

## II.    HISTORY

To give this Court an idea of why the Defendants' motion is so nonsensical and without merit, a brief recap of the history of the litigation regarding the damage caused by toxic drywall and the most effective method of remediation and damage estimation will be of assistance to the Court.

---

etc.), which was not already produced to Defendants through the verified Plaintiffs' Supplemental Profile Forms ("SPPFs"), can also be addressed by the Special Master.

[2] *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2010 WL 1445684, *12-25 (E.D. La. Apr. 8, 2010) (FINDINGS OF FACT AND CONCLUSIONS OF LAW FOR GERMANO PLAINTIFFS) [MDL Rec. Doc. 2308]; *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2017 WL 1421627 at *6-8 (E.D. La. Apr. 21, 2017) (FINDINGS OF FACT & CONCLUSIONS OF LAW RELATED TO THE JUNE 9, 2015 DAMAGES HEARING) ("Damages FOFCOL") [MDL Rec. Doc. 20741].

## A. GERMANO

In 2009, Michelle Germano and several other plaintiffs in the Eastern District of Virginia filed a class action complaint against Taishan, BNBM, and their affiliated entities.[3] Once the case was transferred to the MDL Court, seven Plaintiff intervenors were permitted, along with Defendant intervenor Knauf Plasterboard Tianjin Co. Ltd. ("Knauf")[4] and The Mitchell Company.[5] The seven Plaintiff intervenors were used as bellwethers. "Vigorous discovery was conducted by the Intervenors. Depositions were taken and expert reports were exchanged. A *Daubert* hearing was held on January 29, 2010."[6]

The evidence adduced at the hearing showed that the effects of defective drywall were devastating. "The evidence supports the conclusion that the appropriate remediation for the Plaintiff-intervenor homes includes the removal of all drywall, all electrical wiring, the entire HVAC system, and many other items such as appliances, carpet, cabinetry, trim work and flooring."[7] "[T]he Chinese drywall . . . emits a foul odor, irritates the human body, and emits sulfur gases which corrode copper and silver, metals of which most electronic and mechanical objects are made, . . . making the homes hard, if not impossible, to live in."[8] The devastation wrought by Chinese Drywall was so severe that the Court held that the "overwhelming evidence" showed that even in homes in which Chinese Drywall was only partly installed,

---

[3] Falsely claiming it did not understand the American judicial system and was not required to answer for the damage its products had caused, Taishan ignored the complaint and failed to enter an appearance, and the MDL Court ultimately issued a Final Default Judgment against Taishan in the case. As the Plaintiffs later learned, Taishan acted in concert with its parent companies BNBM, BNBM Group, CNBM, and CNBM Group to refuse service of complaints served on them under the Hague Convention and allow defaults to be entered since all of their assets are located in China. *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2018 WL 279629, *7 (E.D. La. Jan. 2, 2018) ("these entities have refused to accept service at various points in this history of this litigation," but they "received notice of this action and had sufficient time to present their defense—but they did not."). These Chinese companies were represented by American attorneys from Orrick at the time.

[4] Knauf was one of the entities that manufactured defective drywall.

[5] The Mitchell Company brought a class action against Taishan on behalf of builders and secured a default against Taishan in that case. *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 894 F. Supp. 2d 819, 832 (E.D. La. 2012), *aff'd*, 742 F.3d 576 & 753 F.3d 521 (5th Cir. 2014).

[6] *Chinese Drywall*, 2010 WL 1445684 at *2. The night before the evidentiary hearing, Knauf and Mitchell voluntarily withdrew from the proceeding. *Id.*

[7] *Id.* at 26-27.

[8] *Id.* at 27-28.

3

the only possible remediation was to remove *all* of the drywall.[9]  Further, the Court held that removal of all the drywall at once was practical and economical, and also permitted the replacement of all of the corroded electrical wiring that had been damaged by the Chinese Drywall.[10] Even water-carrying copper pipes need to be replaced, as the "corrosive gases responsible for destroying copper in wiring have also damaged the plumbing and mechanical copper components."[11] The HVAC system and electrical devices and appliances, composed of so many materials susceptible to corrosion, needed to be replaced.[12] In many cases, the Court found that the damage involved in replacing all of these items would require the replacement of wood trim and flooring, cabinets and countertops, and all insulation as well.[13]

In short, the Court found in *Germano* that every home afflicted with Chinese Drywall required a top-to-bottom remediation – taking the walls down to the studs and replacing just about everything. The Court found that the average cost per square foot to remediate the homes was $86, and calculated the cost of repair of each of the seven intervenors' homes based on that figure.[14] The Court went on to find that the homes of the seven intervenors were "representative of a cross-section of contaminated homes" and that "the chemical and physical properties of Chinese-manufactured drywall . . . do not differ significantly from region to region or state to state."[15] In other words, anyone whose home had Chinese Drywall installed could expect the same kind of damages and would require the same level of remediation.

### B.  THE ADOPTION OF THE *GERMANO* STANDARD IN SUBSEQUENT LITIGATION

For the next five years after *Germano* was decided, the litigation continued with delay after delay. Taishan finally entered into the litigation to contest jurisdiction, and after losing twice in the Fifth Circuit Court of Appeals,[16] refused to appear at a Judgment Debtor

---

[9] *Id.* at 28.

[10] *Id.* at 31, 38.

[11] *Id.* at 39.

[12] *Id.* at 40-49.

[13] *Id.* at 49-53.

[14] *Id.* at 57-60.

[15] *Id.* at 62-63.

[16] *Chinese Drywall*, 742 F.3d 576 & 753 F.3d 521 (5th Cir. 2014).

Examination in 2014. The MDL Court found Taishan in civil and criminal contempt of court and ordered Taishan to pay $15,000 in attorneys' fees and $40,000 in contempt penalties.[17] Taishan and its affiliates and subsidiaries were further enjoined from conducting any business in the United States.[18] Taishan's parents, BNBM, BNBM Group, and CNBM, finally entered into the litigation in 2015, after the nationwide *Amorin* class was certified in 2014,[19] but before the non-jury Class Damages Hearing was held on June 9, 2015.[20]

At the Class Damages Hearing, Defendants were afforded a full and fair opportunity to contest the scope and nature of remediation damages.[21] They introduced two expert witnesses to counter the Plaintiffs' experts.[22] After carefully considering the evidence and testimony that was provided by both sides, the MDL Court held that "remediating a Chinese drywall property requires complete remediation and cleaning," reaffirming its holding in *Germano*.[23] The Court held that all drywall had to be replaced, even in a "mixed" drywall environment; that all electrical wiring had to be replaced; that all copper piping and HVAC systems had to be replaced; and that any other items like carpeting, insulation, and electronic appliances needed to be replaced as well.[24] Most importantly, the MDL Court reiterated that, as far as the cost of remediating different homes and buildings, "[t]he scope of work is the

---

[17] *See* Contempt Order and Injunction [MDL Rec. Doc. 17869] (ECF No. 64-7).

[18] *See id.* Despite the injunction, many of the Taishan affiliates continued to do business in the United States during the period of contempt. *See* Transcript of MDL Proceedings dated 3/2/2017 concerning Plaintiffs' Motion to Enforce the Contempt Order and Injunction [MDL Rec. Doc. 21710] (ECF No. 64-8) at 32:19-82:13.

[19] The MDL Court adopted the reasoning of *Germano* in its order certifying this case as a class action, stating that because it had "already found that the costs of remediation can be calculated on a square footage basis and the Court has already determined what other property damages are recoverable . . . Plaintiffs can establish a formulaic method to determine class-wide property damages as required by the Rule 23(b)(3) predominance requirement." *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2014 WL 4809520, *15 (E.D. La. Sept. 26, 2014) (FINDINGS OF FACT AND CONCLUSIONS OF LAW WITH RESPECT TO PLAINTIFFS' OMNIBUS MOTION FOR CLASS CERTIFICATION PURSUANT TO RULES 23(a)(1)-(4) AND 23(b)(3)) ("Class FOFCOL") [MDL Rec. Doc. 18028].

[20] *Chinese Drywall.*, 2017 WL 1421627 at *5.

[21] *See, generally, id.*

[22] *Id.* at *5.

[23] *Id.* at *6.

[24] *Id.* at *7-8.

same regardless of the type of building or the location of the property. The *only* difference is the square footage of the contaminated area of the building."[25]

The MDL Court found a piecemeal, house-by-house determination of damages untenable and "ill-advised given the number of homes needing remediation and the more than six-year wait already endured by homeowners."[26]

> Additionally, the task of stripping a property to the studs and rebuilding does not present the same variability in costs as does an entirely new construction (*i.e.*, building a new house). With Chinese drywall remediation, the bulk of the costs is in nearly uniform demolition of the drywall and replacement of standard building materials – differences in finish from home to home add little variability to the total damages estimate.
>
> Thus, the hypothetical problem . . . [of] two equally sized properties with very different layouts is not a problem; it is a routine aspect of damage estimation. Such variations, to the extent they exist in some outlier homes, present minimal cost variation in the final total remediation damages estimate.
> . . .
> Furthermore, the potential risk of any minimal cost variation is greatly outweighed by the fact that the alternative – individually inspecting each home to determine a project specific estimate – is both inefficient and unjust given the number of Plaintiffs who are still awaiting resolution of their claims where liability has already been established.[27]

Ultimately, the MDL Court held that, given the unique nature of the damages involved and the absence of "efficient and appropriate" alternatives, a formulaic calculation of remediation damages was "fair and reasonable."[28]

The scope of damage and remediation due to defective Chinese Drywall has been extensively litigated. All Defendants have had the opportunity, at one stage or another, to present their case as to why a formulaic calculation of remediation damages was inappropriate. The MDL Court has consistently held that the nature of the damages make

---

[25] *Id.* at *11 (emphasis added).

[26] *Id.* at *12.

[27] *Id.* at *13.

[28] *Id.* at *14.

such a calculation relatively easy and efficient, whereas a delayed inspection and discovery process through thousands of homes, years after the fact, would only waste more time and cause fewer Plaintiffs to be properly compensated. With that background, the Defendants' legal arguments regarding why their discovery rights should be enforced is revealed to be the hollow, disingenuous delay tactic that it is. This same context renders their legal arguments hollow as well.

## III.  ARGUMENT

### A. THE DEFENDANTS' INEFFICIENT METHOD OF PROPOSED DISCOVERY RUNS COUNTER TO THE HOLDINGS OF THE MDL COURT AND THE PURPOSE OF THE MDL STATUTE.

The purpose of Multidistrict litigation is to consolidate cases with common questions of fact in one district court for "coordinated or consolidated pretrial proceedings" designed to "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Once preliminary proceedings – including discovery – are complete, the cases may then be remanded back to the courts in which they were filed. 28 U.S.C. § 1407(a). The MDL Court, in requesting that these cases be remanded back to this Court, effectively decided that preliminary damages discovery is essentially complete, and individualized discovery will be relatively minor. The Defendants' motion flies in the face of this framework and essentially asks this Court to ignore the reasonable findings of the MDL Court.

"Coordinated fact and expert discovery . . . is among the 'primary purposes' of multidistrict litigation." *In re State Street Bank and Trust Co. Fixed Income Funds Inv. Litig.*, 2011 WL 1046162 at *4 (E.D.N.Y. Mar. 22, 2011) (quoting *In re Orthopedic Bone Screw Prods. Liab. Litig.*, MDL No. 1014, 1997 WL 109595 at *2 (E.D. Pa. Mar 7, 1997). In fact, "[t]he purpose of 28 U.S.C. § 1407 is to streamline the entire pretrial process by eliminating duplication in discovery, reducing litigation costs, and saving time and effort on the part of the parties, the witnesses and the judiciary." Cahn, Robert A.,[29] A LOOK AT THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION, 72 F.R.D. 211, 213 (1976). The MDL statute's aim is "to eliminate the potential for conflicting contemporaneous pretrial rulings by coordinate district

---

[29] Former Executive Attorney, Judicial Panel on Multidistrict Litigation.

and appellate courts in multidistrict related civil actions." *In re Plumbing Fixture Cases*, 298 F.Supp. 484, 499 (J.P.M.L. 1968).

In this case, *many years* have been spent by the MDL Court litigating the issue of Chinese drywall damages and their remediation. The parties have conducted extensive discovery, as lamented by the MDL Court: "I mean, we've discovered this case now for nine years. Even going to China to take depositions. And I think everybody knows the facts of this case pretty well."[30] There was extensive discovery taken regarding the extent of the damage to the intervenors' homes in *Germano*. The MDL Court specifically found that the damage was typical of the type of damage that would be expected of all class members nationwide, and it painstakingly laid out the reasoning why a formulaic calculation of damages was the simplest, most efficient way to dispense with the claims that have lain dormant for so long in this case. It reaffirmed this method of calculating remediation damages in both the Class FOFCOL[31] and the Damages FOFCOL[32] in this case.

As the MDL Court stated in its Suggestion of Remand Opinion and Order:

> This Court has worked diligently for the past nine years, and transferor courts and parties are now equipped with abundant resource – evidence produced in discovery, a trial package, and judicial opinions on numerous issues – to steer these cases to a fair and just conclusion. *In particular*, this Court has established and approved a class-wide, evidence-based formula and methodology to calculate property damages involving defective drywall. The transferor courts are *strongly encouraged* to utilize this formula to determine the appropriate award in each individual case.[33]

This reasoning was approved by the Judicial Panel on Multidistrict Litigation.[34] The MDL Court, nine years into the case, after extensive intentional delay on the part of Defendants, after extensive discovery regarding damages and remediation, and after giving these particular

---

[30] *See* TRANSCRIPT OF MDL PROCEEDINGS dated 8/15/2018 [ECF No. 64-1] at 24:12-14.

[31] *Chinese Drywall*, 2014 WL 4809520.

[32] *Chinese Drywall*, 2017 WL 1421627.

[33] MDL Rec. Doc. 21242 at 10 (emphasis added).

[34] REMAND ORDER [MDL Rec. Doc. 21642].

Defendants an opportunity to be heard regarding remediation, has stated that little, if any, discovery related to damages is still necessary.

Although the MDL Court has not issued an order regarding its plan for resolution of the Louisiana cases, Judge Fallon recently stated:

> With regard to the property damage cases, I would intend to appoint a master to utilize the formula that has been established in a number of cases, and to verify the square footage, verify the present ownership, verify the location, address, things of that sort, and then we'll simply apply the formula and come up with a figure for the damage. Those cases, it seems to me, are just administratively dealt with. I don't see the necessity for any trials in those cases, I think it's just I'll be issuing judgments in that fashion.[35]

The discovery requested by the Defendants is unnecessary. The Plaintiffs' proposed method to determine remediation damages, *i.e.* the MDL Court's favored method to determine remediation damages, is the fairest and most efficient way to get this done.

**B. THE FACT THAT THE DEFENDANTS ARE OPERATING UNDER RULE 55 DOES NOT EXEMPT THEM FROM RULE 26 PROPORTIONALITY CONSIDERATIONS, AND THE DISCOVERY REQUESTED BY THE DEFENDANTS IS NOT PROPORTIONAL UNDER RULE 26.**

The main thrust of the Defendants' argument is that even though they have a default judgment against them, they are still entitled to discovery under Rule 55. This may be true. However, even assuming *arguendo* that they are still entitled to discovery under Rule 55, that does not mean that the discovery is unbound from the proportionality requirements of Rule 26, nor does it mean that operating within the constraints of Rule 26 in any way violates their rights to due process. The *only* mention of Rule 26 proportionality in the Defendants' motion is to say that their plan is proportional to the needs of this case under Rule 26 because "hundreds of millions of dollars are at stake."[36]

Rule 26(b) states that discovery is limited to "any nonprivileged matter that is relevant to any party's claim or defense *and proportional to the needs of the case*." F.R.C.P. 26(b)(1)

---

[35] *See* TRANSCRIPT OF MDL PROCEEDINGS dated 8/15/2018 [ECF No. 64-1] at 5:20-6:3.

[36] DEFENDANTS' MOTION AND MEMORANDUM TO ENFORCE DISCOVERY RIGHTS [ECF No. 66] at 4.

(emphasis added). Revised in 2015, the rule factors in several considerations to assist the Court in determining whether discovery is proportional. These include: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

Here, since the Defendants are defaulted with respect to liability, the issue at stake is the remediation damages of thousands of Plaintiffs whose homes were destroyed by the Defendants' products – remediation that has been delayed for more than nine years now. The amount in controversy is substantial for each damaged Plaintiff. So much time has passed at this point that it is unclear how much access any of the Plaintiffs have to the kind of information Defendants are claiming they require. But most importantly, as discussed above, the requested discovery simply is not important in resolving the parties' issues. Chinese Drywall so thoroughly destroys homes that a per-square-foot estimate of cost of remediation is simple, efficient, and accurate. As the MDL Court found, there is little individual discovery left to conduct, as the main damage calculation has been vetted, disputed, litigated, and reaffirmed several times over the course of many years now. Additionally, the Plaintiffs have already been providing revised spreadsheets and SPPFs that outline the basic information necessary for the relatively simple damage calculation to be made.

Moreover, this Court is empowered by Rule 16 to adopt "special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems." Fed. R. Civ. P. 16(c)(2)(L). Rule 16 undergirds the District Courts' "broad discretion in deciding how best to manage the cases before them." *Adinolfe v. United Technologies Corp.*, 768 F.3d 1161, 1167 (11th Cir. 2014) (quoting *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366 (11th Cir. 1997)). Of course, the rules of civil procedure regarding the scope of discovery still apply to this discretion. However, where the proportionality factors of Rule 26 weigh against the type of discovery sought by a defaulted defendant, there is no support for the idea that Rule 55 discovery somehow supersedes the requirement of proportional and relevant discovery. This discovery is not proportional or even necessary.

And finally, although the Defendants would paint themselves as victims in this scenario, the truth is that their egregious behavior brought about the default judgments against them. In fact, they planned from the outset to avoid paying for any of the damages caused by their drywall. In consultation with American attorneys, these Defendants first refused service under The Hague Convention, and then when service was perfected, they ignored the complaints because they calculated that it would be close to impossible for American citizens to enforce any judgments against them in China.[37] Both Taishan Gypsum and BNBM (in concert with CNBM) knowingly defaulted in order to avoid these proceedings.[38] The MDL Court was "disheartened that delay tactics have permeated every aspect of Defendants' litigation strategy: from their initial failure to appear to their now perpetual motions to re-litigate settled matters." *Chinese Drywall*, 2018 WL 279629 at *9. "Every step of the way the defendant has resisted looking at the case. . . . It just is apparent . . . that the whole approach is just delay. Delay because people die, delay because they lose their homes, delay because they're frustrated and giving up."[39]

These same Defendants now seek to delay this process even longer. The discovery regime they wish to impose is not proportional under Rule 26. The MDL Court already held an extensive evidentiary hearing on the aggregate damages owed to these *Amorin* class members, in which Defendants were afforded the opportunity to participate. In conjunction with these proceedings, the Plaintiffs have provided them with spreadsheets identifying and outlining the key elements of each claim – which information has been periodically supplemented, with the most current version filed into the record as ECF No. 52. In addition, and as Defendants themselves recognize, Plaintiffs hfave further provided them with SPPFs.

---

[37] *See* CNBM Voluntary Announcement on Development of Gypsum Board Litigation in the US dated 7/18/2014 (ECF No. 64-5) at 3 ("<u>according to the US and Chinese lawyers whom BNBM and Taishan Gypsum have respectively consulted</u>, there is no convention or treaty on mutual recognition and enforcement of judgments between China and the US such that <u>the possibility of the US judgments being enforced in China is very low</u>. Therefore, based on information currently available to the Company, <u>the Company believes that the US courts' judgments will not result in significant economic loss to the Group</u> and will not have material adverse impact on the Group's production and operation.") (emphasis added).

[38] Default judgments *were* entered. *See*, *generally*, Plaintiffs' Response to Defendants' Trial Plan [ECF No. 64].

[39] *See* Transcript of MDL Proceedings dated 8/15/2018 [ECF No. 64-1] at 24:3-9.

As the Court is expressly authorized to make referrals in order to determine the amount of damages,[40] additional extensive discovery is unnecessary and disproportional to the Court's inquiry. The Plaintiffs' plan to appoint a Special Master to handle any minor administrative discovery necessary to grant relief to the damaged homeowners is the fairest, most efficient way to grant some relief to these Plaintiffs who have languished without compensation for their injuries for so long.

## IV.   CONCLUSION

For the foregoing reasons, the Defendants' Motion to Enforce Discovery Rights should be denied.

Dated: September 28, 2018                    Respectfully Submitted,


                                             /s/ Patrick S. Montoya, Esq.
                                             Patrick Shanan Montoya
                                             Fla. Bar No. 0524441
                                             Email: Patrick@colson.com
                                             Colson Hicks Eidson
                                             255 Alhambra Circle, PH
                                             Coral Gables, FL  33134-2351
                                             Telephone:  (305) 476-7400
                                             Facsimile:  (305) 476-7444
                                             *Interim Lead Counsel for Plaintiffs*

---

[40] FED. RULE CIV. PRO. 55(b)(2)(B).  *See, e.g., Armeni v. Transunion LLC, Inc.,* No.15-0066, 2016 WL 7046839, at *3 (W.D. Va. Dec. 2, 2016) ("Rule 55(b)(2) imbues the Court with authority to 'make referrals' to determine the amount of damages") (*citing Consol. Masonry & Fireproofing, Inc. v. Wagman Const. Corp.,* 383 F.2d 249, 252 (4th Cir. 1967) (affirming referral of damages after default to special master)); *see also* FED. RULE CIV. PRO. 53(a)(1)(b)(ii) (special master can be appointed to resolve a difficult computation of damages where issues are to be decided without a jury).

## CERTIFICATE OF SERVICE

I hereby certify that that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Southern District of Florida by using the CM/ECF System, which will send a notice of electronic filing on this 28th day of September, 2018.

/s/ Patrick S. Montoya, Esq.
Patrick Shanan Montoya
Fla. Bar No. 0524441
Email: Patrick@colson.com
Colson Hicks Eidson
255 Alhambra Circle, PH
Coral Gables, FL 33134-2351
Telephone: (305) 476-7400
Facsimile: (305) 476-7444
*Interim Lead Counsel for Plaintiffs*

13

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| EDUARDO AND CARMEN AMORIN, *et al.*, individually, and on behalf of all others similarly situated, | |
|      **Plaintiffs,** | |
|           v. | Case No. 1:11-CV-22408-MGC |
| TAISHAN GYPSUM CO., LTD. f/k/a SHANDONG TAIHE DONGXIN CO., LTD.; TAIAN TAISHAN PLASTERBOARD CO., LTD., *et al.*, | |
|      **Defendants.** | |

## ORDER GRANTING CORRECTED PLAINTIFFS' UNOPPOSED MOTION FOR THE COURT TO ACCEPT PLAINTIFFS' LATE FILED OPPOSITION TO DEFENDANTS' MOTION TO ENFORCE DISCOVERY RIGHTS (ECF No. 66) AS TIMELY FILED

THIS MATTER is before the Court on the Plaintiffs' Corrected Unopposed Motion for the Court to Accept Their Late Filed Opposition to Defendants' Motion to Enforce Discovery Rights (ECF No. 66) As Timely Filed, filed October 1, 2018.

The Court, having reviewed the Motion and being fully advised in the premises, hereby ORDERS and ADJUDGES as follows:

The Plaintiffs' Corrected Unopposed Motion for the Court to Accept Their Late Filed Opposition to Defendants' Motion to Enforce Discovery Rights As Timely Filed is GRANTED.

DONE and ORDERED in Chambers, Miami, Florida, this ___ day of _____, 2018.

_____

MARCIA G. COOKE
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of record