# Exhibit "5"

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### Case No. 1:11-CV-22408-MGC

EDUARDO AND CARMEN AMORIN et al.,
individually, and on behalf of all others
similarly situated,

      Plaintiffs,

v.

TAISHAN GYPSUM CO., LTD. F/K/A SHANDONG
TAIHE DONGXIN CO., LTD.; TAIAN TAISHAN
PLASTERBOARD CO., LTD., et al.,

      Defendants.

_____/

## DEFENDANTS' MOTION TO REJECT APPLICATION OF
## REMEDIATION DAMAGES FORMULA

      Taishan Gypsum Co., Ltd., Tai'an Taishan Plasterboard Co., Ltd., and BNBM PLC (collectively "Defendants") respectfully move the Court to reject Plaintiffs' proposed application of their remediation damages formula and order the parties to proceed with discovery and adjudication of all issues for 20 Priority Claimants as the parties agreed and the Court ordered in the Joint Case Management Plan. *See* ECF No. 47.

### <u>CERTIFICATION OF PRE-FILING CONFERENCE</u>
### <u>PURSUANT TO S.D. FLA. L.R. 7.1 (A)(3)</u>

      Counsel for Defendants has engaged in extensive discussions with Plaintiffs in a good faith effort to resolve the issues raised in this motion and has been unable to do so.

                                Respectfully submitted,

Dated: September 14, 2018

                                **AKERMAN LLP**
                                Las Olas Centre II - Suite 1600
                                350 E. Las Olas Boulevard
                                Ft. Lauderdale, Florida 33301
                                Tel: (954) 463-2700
                                Fax: (954) 463-2224

By: /s/ Enjoliqué D. Aytch
    Enjoliqué D. Aytch, Esq.
    enjolique.aytch@akerman.com
    Florida Bar No.: 0104881

**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777

Bernard Taylor, Esq.
Georgia Bar No. 669625
Michael P. Kenny, Esq.
Georgia Bar No. 415064
Christina Hull Eikhoff, Esq.
Georgia Bar No. 242539
David Venderbush, Esq.
New York Bar No. 2920817
bernard.taylor@alston.com
mike.kenny@alston.com
christy.eikhoff@alston.com
david.venderbush@alston.com

*Attorneys for Taishan Gypsum Co., Ltd. and*
*Tai'an Taishan Plasterboard Co., Ltd.*

Craig P Kalil
Aballi Milne Kalil P.A.
SunTrust International Center
1 SE 3rd Avenue
Suite 2250
Miami, FL 33131
305-373-6600
Fax: 305-373-7929
Email: ckalil@aballi.com

L. Christopher Vejnoska
Eric Matthew Hairston
Andrew K. Davidson
Orrick, Herrington & Sutcliffe LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
415-773-5700
Email: cvejnoska@orrick.com

James L. Stengel
Orrick, Herrington & Sutcliffe LLP
51 West 52nd Street
New York, NY 10019
212-506-5000
Email: jstengel@orrick.com

*Counsel for BNBM PLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 14, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to electronically receive Notices of Electronic Filing.

By: */s/Enjoliqué D. Aytch*

## SERVICE LIST:

### *Attorneys for CNBM and the BNBM Entities*

L. Christopher Vejnoska (CA Bar No. 96082)
Eric Matthew Hairston (CA Bar No. 229892)
Andrew K. Davidson
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
San Francisco, CA 94105
T: 415-773-5700
Email: cvejnoska@orrick.com
      ehairston@orrick.com
      adavidson@orrick.com

Craig P Kalil
Aballi Milne Kalil P.A.
SunTrust International Center
1 SE 3rd Avenue
Suite 2250
Miami, FL 33131
305-373-6600
Fax: 305-373-7929
Email: ckalil@aballi.com

James L. Stengel (NY Bar No. 1800556)
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY, 10019
T: 212-506-5000
Email: jstengel@orrick.com

### *Attorney for Zhejiang Provincial Second Light Industry Enterprises Group*

Hongwei Shang
The Law Office of Hongwei Shang, LLC
9130 S. Dadeland Boulevard
Suite 1620
Miami, FL 33156
786-581-9759
Fax: 786-581-9168
Email: hshanglaw@gmail.com

### *Attorneys for Plaintiffs*

Arnold Levin
Levin Fishbein Sedran & Berman
510 Walnut Street
Suite 500
Philadelphia, PA 19106
215-592-1500
Fax: 592-4663
Email: alevin@lfsblaw.com

Natalie Marie Rico
Colson Hicks Eidson
255 Alhambra Circle
Penthouse
Coral Gables, FL 33134
305-476-7400
Fax: 305-476-7444
Email: rico.natalie@gmail.com

Christopher A. Seeger
Seeger Weiss LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
(973) 639-9100
Email: cseeger@seegerweiss.com

Dawn M. Barrios
Barrios Kingsdorf & Casteix
701 Poydras Street
One Shell Square Suite 3650
New Orleans, LA 70139-3650
504-524-3300
Email: barrios@bkc-law.com

Emma Kingsdorf Schwab
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
504-524-3300
Email: eschwab@bkc-law.com

Frederick S. Longer
Levin Fishbein Sedrin & Berman
510 Walnut Street
Suite 500
Philadelphia, PA 19106-3697
215-592-1500
Fax: 592-4663
Email: flonger@lfsblaw.com

Jay Patrick Dinan
Parker Waichman LLP
27300 Riverview Center Blvd., Suite 103
Bonita Springs, FL 34134
239-390-8609
Fax: 239-390-0055
Email: jdinan@yourlawyer.com

Jeffrey A. Breit
Breit Drescher Imprevento PC
600 22nd Street, Suite 402
Virginia Beach, VA 23451
757-622-6000
Email: Jeffrey@breit.law

Pearl Anna Robertson
Irpino Avin Hawkins
Email: probertson@irpinolaw.com

Richard S. Lewis
Hausfeld, LLP
1700 K. Street, N.W.
Washington, DC 20006
202-408-4600
Email: rlewis@hausfeld.com

Richard J. Serpe
Law Offices of Richard J. Serpe, PC
580 E Main Street
Suite 310
Norfolk, VA 23510
757-233-0009
Email: rserpe@serpefirm.com

Sandra Duggan
Levin Sedran & Berman LLP
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500
Email: sduggan@lfsblaw.com

Scott George
Seeger Weiss, LLP
1515 Market Street
Suite 1380
Philadelphia, PA
215-553-7980
Email: sgeorge@seegerweiss.com

Patrick Shanan Montoya
Colson Hicks Eidson
255 Alhambra Circle
Penthouse
Coral Gables, FL 33134-2351
305-476-7400
Fax: 476-7444
Email: patrick@colson.com

Jeffrey S. Grand
Seeger Weiss LLP
77 Water Street, 8th Floor
New York, NY 10005
(212) 584-0700
Email: jgrand@seegerweiss.com

Jimmy Faircloth
Faircloth, Melton, & Sobel
Gras Town Plaza
412 N. 4th Street, Suite 230
Baton Rouge, LA 70802
(225) 343-9535
Email: jfaircloth@fairclothlaw.com

Leonard A. Davis
Herman, Herman & Katz, LLC
820 O'Keefe Avenue
New Orleans, LA 70113
504-581-4892
Email: ldavis@hhklawfirm.com

James V. Doyle
Doyle Law Firm, PC
201 Biscayne Blvd.
28th Floor
Miami, FL 33131
305-677-3388
Fax: 844-638-5812
Email: jim.doyle@doylefirm.com (Inactive)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### Case No. 1:11-CV-22408-MGC

EDUARDO AND CARMEN AMORIN et al.,
individually, and on behalf of all others
similarly situated,

      Plaintiffs,

v.

TAISHAN GYPSUM CO., LTD. F/K/A SHANDONG
TAIHE DONGXIN CO., LTD.; TAIAN TAISHAN
PLASTERBOARD CO., LTD., et al.,

      Defendants.

_____/

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO REJECT APPLICATION OF REMEDIATION DAMAGES FORMULA

### I.    INTRODUCTION

> "I do not pretend that determining damages in a case like this one
> will be easy; my point is that damages for different plaintiffs should
> not be determined by reference to an arbitrary formula."
>
> *Kpadeh v. Emmanuel*, 261 F.R.D. 687, 693 n.4 (S.D. Fla. 2008)
> (Jordan, J.).

Plaintiffs here seek a class-wide formulaic assessment of tort damages against a defaulted

foreign defendant. In *Kpadeh*, Judge Adalberto Jordan considered an identical request—and

rejected it emphatically: a formulaic approach "would do a disservice to justice," and "would

transform a federal district court—an institution that is tasked above all else with doing justice and

safeguarding the due process rights of the litigants who appear before it—into a mechanical claims

adjustor or a risk assessment center." *Id.* at 692. Instead, consistent with Eleventh Circuit law, he

held that any plaintiff's judgment "must . . . be the result of an individual assessment by the finder

of fact . . . so that it adequately and accurately reflects (and compensates for)" each plaintiff's

situation. *Id.* (citation omitted). In short, damages "awards cannot be the product of a matrix." *Id.*

Like Judge Jordan, this Court should reject Plaintiffs' unlawful, inaccurate matrix that would deny Defendants' due process right to an adequate and accurate judicial assessment of each claimant's damages. Further, there is no need for such unfair methods because this mass-tort action presents fairly typical issues. Approximately 1,700 plaintiffs have sued foreign manufacturers seeking damages for Florida properties allegedly affected by defective drywall. Federal courts routinely handle large litigations involving allegedly defective building supplies, and they do so with traditional procedural mechanisms. *See, e.g.*, *In re Stucco Litig.*, 175 F.R.D. 210 (E.D.N.C. 1997) (denying class certification and ordering parties "to file a joint scheduling and discovery plan for these cases"). So too here.

Last month, the parties agreed to—and the Court ordered—a traditional litigation timetable to expeditiously discover and individually adjudicate the claims of 20 Priority Claimants. (ECF No. 47). But having just agreed to a schedule outlining that generally accepted judicial process, Plaintiffs suddenly abandon the schedule in favor of a bizarre and cumbersome, multi-part procedure of their own invention. The centerpiece of Plaintiffs' proposal is an unprecedented formula that the Court should reject as unconstitutional, unlawful, and inefficient. [1]

Judge Jordan's opinion in *Kpadeh* and Judge Marra's recent decision in *Cotromano v. United Technologies Corp.*, 2018 WL 2047468 (S.D. Fla. May 2, 2018) (rejecting property-damage formula), show that Plaintiffs' formula violates the law in this district and constitutional due process. This Court should follow Judge Jordan, who recognized that denying due process to a defaulted foreign defendant is a "disservice to justice." *Kpadeh*, 261 F.R.D. at 692.

This Court, as the transferor court to which these cases have been remanded for case-

---

[1] This Court is free to reject Plaintiffs' formulaic plan because the MDL court did not order this Court to apply the formula. *See* Suggestion of Remand [ECF No. 33] at 10 (stating that the "transferor courts are strongly encouraged to utilize this formula"). Nor could it under 28 U.S.C. § 1407 and *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998) (limiting MDL court authority to pretrial matters).

specific discovery and adjudication, retains full discretion to manage these claims to resolution. The Court should exercise that discretion to reject Plaintiffs' flawed formula and adhere to the traditional Priority Claimant discovery and adjudication schedule to which the parties agreed and which the Court ordered.

## II.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiffs' proposed remediation-damages formula has no principled basis, but is a mere expediency that Plaintiffs invented to maximize their recoveries.

### A.     Origins of the Chinese-Manufactured Drywall Litigation

From 2004 through 2006, a shortage of construction materials, including drywall, occurred in the United States. Drywall manufactured in China was brought into the United States and used in the construction and refurbishing of residential and commercial buildings. Sometime after the installation of the Chinese drywall, property owners began to complain of emissions of smelly gasses, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices. MDL Dkt. No. 2380 ("*Germano* FOFCOL") at 4.

Litigation commenced in various state and federal courts against homebuilders, developers, installers, brokers, suppliers, importers, exporters, distributors, and manufacturers involved with Chinese drywall. *Id.* The U.S. Judicial Panel on Multidistrict Litigation on June 15, 2009, ordered all federal cases involving Chinese drywall transferred for pretrial proceedings to Judge Eldon Fallon in the Eastern District of Louisiana. *Id.* at 4-5. The Florida *Amorin* action was filed in the Southern District of Florida on July 5, 2011, and transferred to the MDL on July 21, 2011.

### B.     Origin of the Formula

#### 1.     The Non-Adversarial *Germano* Hearing in Virginia

Michelle Germano and four other Virginia homeowners filed a putative class action against

Defendant Taishan Gypsum Co., Ltd. ("Taishan") and other defendants[2] in the Eastern District of Virginia on May 1, 2009. The case was transferred to the MDL, which granted a default against Taishan in November 2009 because Taishan had not appeared in the lawsuit. MDL Dkt. No. 487. Fourteen individual plaintiffs ("*Germano* Intervenors") intervened, and the MDL Court scheduled a Rule 55(b) hearing on their claimed damages. MDL Dkt. No. 641. Taishan had not yet appeared in the litigation.

At the February 2010 evidentiary hearing—in which no defendants participated—the *Germano* Intervenors presented the MDL court with evidence specific to seven individual properties. For remediation costs, the *Germano* Intervenors presented a designated expert who based his testimony on property-specific estimates from local contractors. He acknowledged that "individual characteristics . . . create some of the variations that we see in the square-foot price" among houses. MDL Dkt. No. 2191 (Trial Transcript, Feb. 22, 2010, Vol. II) at 119:6-120:9. Without a defense side, none of the evidence was challenged, and no witness was cross-examined.

Based on the evidentiary record for each property, the MDL court made individualized damages determinations and awarded the estimated costs of remediating each specific property along with individual damages for alternative living expenses and loss of use and enjoyment.[3] (*Germano* FOFCOL at 69-108). The MDL court issued separate awards to each set of the *Germano* Intervenors based on the property-specific evidence presented during the damages trial. *Id.*

Although immaterial to the specific findings on remediation costs for the seven properties at issue, Judge Fallon observed that the average cost per square foot to repair the seven *Germano*

---

[2] BNBM was not named as a defendant in *Germano*.

[3] The MDL Court awarded $100,000 to each property for loss of use and enjoyment, with the exception of one award of $30,000 for a property where the Chinese Drywall in the home was limited to the wine cellar. *Germano* FOFCOL at 106-107.

properties was $86 and that this average cost was based on "the average of independent quotes from two local reputable Virginia contractors." *Id.* at 57. Judge Fallon's double-average observation was just that: an observation. The average of averages was not actually used to calculate estimated remediation costs for any of the *Germano* properties. The damages were based on estimates made by experts based on property-specific inspections. In May 2010, the MDL court entered a Default Judgment awarding the seven sets of *Germano* Intervenors a separate award for their respective properties.

### 2. Taishan's Appearance and Appeal from Germano

Following the MDL court's entry of the Final Default Judgment in *Germano* (MDL Dkt. No. 3013), Taishan appeared and appealed the entry of default to the Fifth Circuit Court of Appeals based on lack of personal jurisdiction. The Fifth Circuit remanded for jurisdictional discovery but ultimately affirmed the MDL court's personal jurisdiction over Taishan for those Virginia claims and also affirmed the *Germano* Default Judgment. *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576, 580 (5th Cir. 2014).

### 3. Taishan's Period of Withdrawal from the MDL

In June 2014, the MDL court ordered a Taishan representative to appear for a judgment debtor examination on July 17, 2014. MDL Dkt. No. 17774. Two days before the examination was scheduled to occur, Taishan's then-counsel Hogan Lovells moved to withdraw as Taishan's counsel of record, reporting to the Court that Taishan "has notified Counsel that it does not intend to participate in the judgment debtor exam or any decision on the Bill of Costs." MDL Dkt. No. 17846-1. Consistent with its counsel's announcement, Taishan did not appear through counsel or a representative at the July 17, 2014 judgment debtor examination. That same day, the MDL court entered the Contempt Order "[a]s a consequence of Taishan's refusal to appear at the Judgment Debtor Examination, in direct, willful violation of this Court's June 20, 2014 order."

MDL Dkt. No. 17869 (Contempt Order) at 2.

### C. Class Certification and Class Damages in Taishan's Absence

On July 23, 2014, a week after Taishan missed the *Germano* judgment debtor examination, Plaintiffs moved for class certification. MDL Dkt. No. 17883. Judge Fallon granted class certification in September 2014 by adopting Plaintiffs' motion essentially verbatim. *Compare id.* with MDL Dkt. No. 18028 ("Class Certification FOFCOL"). The "findings of fact" were based on deemed admissions that Plaintiffs procured by propounding written Requests to Admit knowing that Taishan would not respond. Judge Fallon defined the nationwide class exactly as Plaintiffs requested: only specifically named plaintiffs with no absent class members. Class Certification FOFCOL at 34-35. Plaintiffs submitted no analysis of variations of state law, and Judge Fallon did not address that issue. Plaintiffs submitted no expert testimony on a potential class-wide damages model, and Judge Fallon did not analyze that issue.

### D. The Evolution of the Formula

After achieving class certification in Taishan's absence, in October 2014, Plaintiffs filed a Motion for Class Damages, which requested a staggering single lump sum of $1,263,330,881.19 for 3,852 properties.[4] MDL Dkt. No. 18086 ("Damages Motion"). On February 17, 2015, the law firm Alston & Bird, LLP, entered an appearance for Taishan. MDL Dkt. No. 18352. Shortly thereafter Taishan paid the *Germano* judgment and the fees and penalty in the Contempt Order. An evidentiary hearing on the Damages Motion was set for June 9, 2015. In the months leading up to the June 9 hearing, Defendants exposed multiple flaws in Plaintiffs' designated experts' facts and methodology, including that Plaintiffs were missing square footage information for 34% of

---

[4] Plaintiffs' request comprised three components: remediation costs, alternative living costs (ALE) and loss of use and enjoyment (LOUE). For remediation damages, ($782,944,292.37), Plaintiffs also requested $385,200,000 for LOUE, calculated by multiplying $100,000 by the number of properties.

the class, and that the class spreadsheet contained several facial errors, such as the inclusion of plaintiffs who had dismissed their claims or opted out of the class, plaintiffs whose properties contained only Knauf drywall, plaintiffs who no longer owned the properties at issue, and multiple duplicate entries. MDL Dkt. No. 18598. at 4-5. Plaintiffs subsequently submitted a series of corrected and amended expert reports before the June 9 hearing, ultimately reducing their calculations to $497,180,467 in remediation damages for 2,686 properties.

      **E.**      **The June 9, 2015 Damages Hearing**

      Plaintiffs' expert to support their claim for aggregate class-wide damages proffered a baseline $105.91/square foot formula for calculating remediation costs. To arrive at that figure, the expert started at $86 per square foot—taken from the average of the remediation estimates for the seven *Germano* properties combined. That flawed starting point grew in several ways, including adjustment for inflation, geographic cost factors, and other added fees that Plaintiffs had not included in the *Germano* claims. He did not test the results of his formula approach against any actual inspections of any of the actual properties, and admitted that some people may get more or less than they would need for remediation under this approach.

      Defendants' expert was a licensed Certified General Contractor in the State of Florida with more than 30 years of experience in construction cost estimating who testified that Plaintiffs' methodology to estimate remediation costs for the class properties does not work and would not be utilized in the construction industry to estimate costs to be incurred for remediation. *See* MDL Dkt. No. 20802, June 9, 2015 Hearing Transcript at 193:8-24. He testified that the only way to reliably estimate remediation cost is to perform site-specific, individual inspection of the property. *See id.* at 177:18-178:14; 179:5-8; 184:17-185:12; 188:12-25; 189:8-18; 190:5-23; 192:8-21; 195:9-199:11. Defendants also proffered a statistician who testified that Plaintiffs could not rely upon the average of seven property owners in Virginia to estimate class-wide damages. *Id.* at

233:4-238:1.

### 1.   The MDL Court Approves the Formula

After post-hearing written submissions, the MDL court eventually entered a FOFCOL on issues presented in the damages hearing.[5] MDL Dkt. No. 20741 ("Damages FOFCOL"). In approving Plaintiffs' formula of $105.91, the MDL court confirmed that the formula "begins with a benchmark figure of $86 per square foot . . . developed in 2010 using data from the *Germano* properties," then increased by three large "adjustments." *Id.* at 24-25.

The Eastern District of Louisiana court approved the formula despite the existence of several relevant Fifth Circuit decisions. The MDL court distinguished those cases primarily by characterizing the Chinese Drywall litigation as "unique" and "*sui generis*." *Id.* at 32, 47. The MDL court found that the traditional method of individualized proof and adjudication would be "not only unreasonable and inefficient, [and] also unjust in light of the continued suffering of the Plaintiffs." *Id.* at 43. The court asserted that requiring individuals to pursue individual claims and incur individual costs is "a serious injustice" and "amounts to cruel and unusual treatment of innocent homeowners." *Id.* at 48-9.[6] Ultimately, the perceived uniqueness of the case was the court's grounds for embracing the formula: "Given the unique circumstances surrounding Chinese drywall and the absence of efficient and appropriate alternatives, a formulaic method used to calculate remediation damages is fair and reasonable." *Id.* at 29.

In December 2016, Plaintiffs submitted a new declaration inflating the per-unit figure to $107.83. MDL Dkt. No. 20613.  Plaintiffs will likely increase that again if the inflated formula is

---

[5] There was a considerable period of time after the submission of post-hearing briefs and the Court's ruling on class damages because the parties engaged in a lengthy mediation process that ultimately did not result in settlement.

[6] The court nevertheless envisioned that individual "Property Owners will still have an opportunity at later phases to seek damages for alternative living expenses and loss of use and enjoyment of their properties." *Id.* at 51.

approved.  *See* Pls.' Mot. at 2 n.4.  Defendants have never had the chance to depose this expert.[7]

## III.    ARGUMENT

### A.    Plaintiffs' Formula is Unconstitutional Because It Will Trample Defendants' Due Process Rights

#### 1.    The Formula Violates the Law of this District

The Court should reject Plaintiffs' proposed class-wide, dollar-per-square-foot formula for assessing tort damages because it would violate the law of this district and of the Eleventh Circuit under which such formulas deprive defendants of due process. Judge Jordan made that abundantly clear in *Kpadeh*, in which the court faced a remarkably similar procedural context:  a plaintiff group seeking class treatment for the assessment of damages against a defaulted foreign defendant.[8] Just as Plaintiffs here have improperly extrapolated from the prior *Germano* verdicts to a per-square-foot damages formula, the *Kpadeh* plaintiffs proposed to use class mechanisms to extrapolate from the named plaintiffs' experiences to assign damages to a larger class. *Kpadeh*, 261 F.R.D. at 692. Judge Jordan explicitly confronted—and rejected—the notion of a per-unit "formula based upon a sampling of claims [to] assign a monetary figure to each month spent" in captivity. *Id.* Judge Jordan held that "this summary resolution of class members' claims would do a disservice to justice," and "would transform a federal district court . . . into a mechanical claims adjustor or a risk assessment center." *Id.*

Judge Jordan did not ground his analysis and ruling on the type of damages sought (pain and emotional distress, as opposed to property damages sought here), but looked to larger

---

[7] Plaintiffs' proposal does not appear to allow for expert depositions, a standard discovery right in expert-witness practice. The Court's schedule, agreed to by the parties, does provide for expert depositions. *See* ECF No. 47 at 3.

[8] The actual facts in *Kpadeh* are obviously not comparable. The *Kpadeh* plaintiffs sought damages against notorious Liberian strongman Charles Taylor for illegal confinement and horrific torture, which were admitted by default. *See* 261 F.R.D. at 688-89 (describing treatment of plaintiffs). Despite those compelling equities, Judge Jordan remained faithful to legal principles of due process and individualized proof to deny plaintiffs' request for summary class treatment of tort damages.

9

principles of "doing justice and safeguarding the due process rights of the litigants who appear

before [the court]." *Id.* Judge Jordan held that even a serial torturer like Charles Taylor was entitled

to due process of law after default and that the court had a duty to protect that interest:

> The fact that Mr. Taylor has defaulted on liability as to the named
> plaintiffs does not eliminate his due right to due process in the
> remainder of these proceedings. To the contrary, his default places
> the onus on the court to ensure that any award of damages comports
> with principles of equity and due process.

*Id.* at 692 n.3 (citing *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003));

*accord Handal v. Joseph*, 2013 WL 12141340, at *3 (S.D. Fla. Dec. 3, 2013) (citing *Kpadeh*)).

But Judge Jordan went further, recognizing that a formulaic approach "would fall below

the standard of due process owed both to Mr. Taylor *and to each individual plaintiff*." *Id.* (emphasis

added). Here, the Plaintiffs' formula would produce very different awards based solely on the

square footage of the respective properties, regardless of the actual cost to remediate those

properties. Judge Jordan recognized that "[a]lthough similarly situated plaintiffs must be treated

in a roughly similar way with respect to damages, awards cannot be the product of a matrix." *Id.*

Instead, tort damages awards "must . . . be the result of an individualized assessment of the finder

of fact . . . so that it adequately and accurately reflects (and compensates for) the suffering

experience by that plaintiff." *Id.*

Judge Jordan's due-process rejection of class-damages extrapolated formulas is entirely

consistent with the Supreme Court's later seminal decision in *Wal-Mart Stores, Inc. v. Dukes,* 564

U.S. 338 (2011). Like *Kpadeh*, *Dukes* rejected a class attempt to "replace" individual damages

proceedings with a "Trial by Formula" that used extrapolation from a "sample set of class

members" to determine "the backpay owing" in a process "supervised by a master." *Id.* at 367.

The Supreme Court "disapprove[d] that novel project," holding that such attempts violate the

Rules Enabling Act because they use class procedural mechanisms to deny defendants the right to litigate individual issues. *Id.* The same holds true here.

Just this year, Judge Marra in this District rejected a similarly unlawful class-based formulaic approach to tort damages—specifically with respect to property damages. *See Cotromano*, 2018 WL 2047468. After an alleged environmental contamination, a group of property owners sought class certification and proffered a designated expert, who opined that damages for diminution in value and loss of use and enjoyment for a putative class of 18,000 owners "are susceptible to calculation on a class-wide, uniform basis . . . by application of a 'mass appraisal' methodology." *Id.* at *8. The expert recommended his "mass appraisal technique because this method would achieve economies of scale in calculating property values." *Id.* at *13.

Judge Marra disagreed, excluding the expert testimony under Rule 702 and rejecting the formulaic approach because assessing the "degree of damage" among class members raised many "questions requiring plaintiff-by-plaintiff scrutiny." *Id.* at *19. Judge Marra properly recognized the direct relation of property differences to property damages:

> [T]he individual measurement of damages on any given property will depend on construction materials, architectural style, neighborhood location, size and condition of property, as well as any unique structures present which deserve individual evaluation.

*Id.* at *20. That is the *precise* argument that Defendants here made in the MDL—and that Judge Fallon disregarded when he approved the fatally flawed formula.

This Court should follow the law of this District. Plaintiffs invite the Court to use a damages formula that is "riddled with individual inquiries," *Cotromano*, 2018 WL 2047468, at *19, and does a "disservice to justice." *Kpadeh*, 261 F.R.D. at 692. "Meaningful due process dictates more." *Id.*

##### 2.     The Formula Would Violate Both Eleventh Circuit and Fifth Circuit Law

Judge Jordan recognized that a damages-formula matrix also would violate "the Eleventh Circuit's approach" to these issues "in cases that require individualized proof of . . . damages." *Kpadeh*, 261 F.R.D. at 693 (citing *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004)). The Eleventh Circuit "focuses on each class-plaintiff's effect on the presentation of additional evidence" so that "'if the addition of more plaintiffs to a class requires the presentation of significant amounts of new evidence, that strongly suggests that individual issues (made relevant only through the inclusion of these new class members) are important.'" *Id.* (quoting *Klay*). Here, under Plaintiffs' own proposal, the fact-finder must "determine, for each class member, whether sufficient evidence of square footage, product ID, and ownership has been presented, as well as additional other objective damages." Pls.' Mot. at 8. Plaintiffs cannot dispute that here, as in *Kpadeh*, "the evidence presented by each individual plaintiff is wholly . . . irrelevant to the next class member." 261 F.R.D. at 693.

In rejecting a damages formula for a class "whose claims would require an individualized inquiry for resolution," Judge Jordan criticized the Ninth Circuit majority opinion in *Hilao v. Estate of Marcos*, 103 F.3d 767 (9th Cir. 1996), and adopted the dissenting opinion of Judge Rymer, who "argued that the procedure used by the district court to manage the class ran afoul of fundamental notions of due process." *Kpadeh*, 261 F.R.D. at 691-92. Judge Rymer's crystalized the due process principle that widespread harm does not reduce the right to individualized assessment of tort damages:

> There is little question that [defendant] caused tremendous harm to many people, but the question is ***which people, and how much***. That, I think, is a question on which the defendant has a right to due process.

*Id.* at 692 (quoting *Hilao*, 103 F.3d at 788) (emphasis added). Judge Jordan also quoted Judge

Rymer's expression of "a profound disquiet" with formulaic shortcuts, *id.*, a phrase that Judge Rymer took from *In re Fibreboard Corp.*, 893 F.2d 706, 710 (5th Cir. 1990), a leading Fifth Circuit authority that Defendants cited prominently to Judge Fallon in opposition to the Plaintiffs' formula. *See* MDL Dkt. No. 20741 at 35-37 and n.5. Over the last 22 years, *Hilao* has stood on island, and as Judge Jordan noted, has been widely criticized. *Kpadeh*, 261 F.R.D. at 691. Thus, the Eleventh Circuit, the Fifth Circuit and this District are fully aligned that Defendants facing the imposition of damages have due process rights that prohibit the use of Plaintiffs' formula.

### B. Plaintiffs' Formula is Inefficient because it will Require Three Separate Tracks and then More Tracks after That.

In addition to the formula's denial of Defendants' due process rights to individualized adjudication of damages, the Court should reject the formula because it is the driver of all the inefficient procedural gymnastics that Plaintiffs propose in their new trial plan. Plaintiffs have played a strange game of bait-and-switch with the Court and Defendants. In early August, Plaintiffs agreed to an *Amorin* trial schedule (based on the Court's scheduling template) that set an ambitious but achievable process for motions, discovery and adjudication for 20 Priority Plaintiffs over the next ten months. ECF No. 45. The Court ordered that schedule as the parties requested. ECF No. 47. But on August 31, Plaintiffs effectively abandoned that Court-ordered schedule and proposed to litigate these cases under a completely different schedule. Pls.' Mot., Exhibit G. Plaintiffs marginalize the Court's schedule to only "claims for bodily injury," *id.* at 4, which they confirm "are not a major factor." Pls.' Mot. at 5 n.15.

Plaintiffs' new plan is convoluted and difficult to summarize. It seeks to put the parties through two parallel phases of discovery and adjudication instead of one unified phase that could bring claims to complete judgment in significantly less time. Plaintiffs' plan trifurcates the claims among remediation damages, all other property damages, and bodily injury. Plaintiffs then

subdivide the remediation phase into three more phases—for a total of five.

Plaintiffs announce to the Court that "[t]he only issue remaining is the amount of Plaintiffs' damages." Pls.' Mot. at 1 (emphasis in original). But Plaintiffs' own description of the first two remediation subphases reveals the many disputed issues that still remain, including at least 12 categories of product identification, square footage, individual product ID, and ownership. Pls.' Mot., Exhibit G at 1-2. And the endpoint of all that is application of the gerrymandered formula, "*i.e.*, multiplying the under air square footage of each affected Florida property by the national square foot unit price for remediation in 2018 (with certified industrial hygienist (CIH) costs included), as adjusted by the RS Means local factor for each  affected property in Florida." Pls.' Mot., Exhibit G at 3. The Court should reject that bizarre formula, which will also pull the plug on the unprecedented and inefficient remediation-damages subphase structure.

Plaintiffs' devotion to their unlawful formula drives several other inefficiencies. For example, the formula on its own terms applies to only current property owners. MDL Dkt. No. 20741 at 30 ("On June 9, 2015, the Court considered only remediation damages for current owners."). Plaintiffs have acknowledged in the MDL that they must do more to seek formula application for former owners.  MDL Dkt. No. 21527 at 5. But Plaintiffs try to pull a fast one by asking the Court to approve the formula for *all* Florida claimants, regardless of ownership status. *See* Pls.' Mot., Exhibit G at 3 ("The Special Master shall assess class remediation damages for Florida Plaintiffs . . ."). That problem goes away when the formula goes away.

And in the ultimate inefficiency, Plaintiffs' formula-based remediation phases actually achieve nothing because the claimants cannot get actual judgment on only remediation damages. *See Lloyd Noland Found., Inc. v. Tenet Health Care Corp.*, 483 F.3d 773, 779 (11th Cir. 2007) (holding that "a partially adjudicated 'claim' cannot serve as the basis for a Rule 54(b)

certification"); *accord Monument Mgmt. Ltd. P'ship I v. City of Pearl*, 952 F.2d 883, 885 (5th Cir. 1992) (same). Because each *Amorin* claimant seeks multiple categories of damages, including but not limited to remediation damages, alternative living expenses, foreclosure, short sale, bankruptcy, loss of rent, and loss of use and enjoyment, the improper formula "short cut" for remediation damages does not save any time or effort. No judgment can be entered in the Plaintiffs' plan until *all* of the hundreds of Florida claimants' depositions have been taken and claims been adjudicated. Despite the attempted procedural shortcuts, the entire plan presents a longer path to resolution than the traditional plan already entered by the Court.

### C.   Plaintiffs' Formula Is Unfair Because it Will Produce Windfall Recoveries that Violate Florida Law

The Court should reject Plaintiffs' remediation formula as fundamentally unfair because it will produce excessive recoveries that exceed claimants' actual remediation costs and also exceed the value of the structure being remediated. Both situations violate Florida law. As a general matter, courts applying Florida law "must seek to avoid" overcompensation. *System Components Corp. v. Fla. Dept. of Transp.*, 14 So.3d 967, 984 (Fla. 2009). And specifically, Florida law limits property-damage recovery to the lesser of the "cost of repairs" or the "diminution in value" of the property. *Santa Rosa Golf Associates, Inc. v. Haraway*, 998 So.2d 1166, 1167 (1st DCA 2008) ("Restricting the costs of repairs or restoration to the diminution in value is a means to prevent plaintiffs from being overcompensated or from receiving overlapping recovery.") (citing *Davey Compressor Co. v. City of Delray Beach*, 639 So.2d 595, 596 (1994)).

Plaintiffs' own complicated spreadsheet [ECF No. 56] shows that their formula could grossly overcompensate the claimants. The spreadsheet lists in Column M the remediation costs produced by the formula for each claimant. The spreadsheet also lists much of the information produced in discovery by the claimants, many of whom reported in Column AR that their

properties were already "completely remediated." The spreadsheet then lists in Column AU the actual cost of that completed remediation, which in most instances is much less than the remediation "estimate" produced by Plaintiffs' inflated formula.

The following chart presents just a sampling of comparisons for claimants who self-reported complete remediation:

| CLAIMANT | ADDRESS | FORMULA DAMAGES | ACTUAL COST OF REMEDIATION |
|---|---|---|---|
| Mariner Village Investments LLC | 4987 Mariner Garden Circle, Stuart, FL | $132,328 | $31,437 |
| Pollux, LLC | 1220 Ederle Street, Lehigh Acres, FL | $188,239 | $42,538 |
| Nikolaos Giannoussidis | 1189 Bayport Lane, #404, Ft. Myers, FL | $158,536 | $29,396 |
| Charles and Sharon Summerall | 2060 Deerwood Road, Seffner, FL | $148,623 | $16,840 |
| Brandon and Juliet Winn | 12616 20th Street East, Parrish, FL | $263,601 | $65,609 |

And the following chart presents a few of the claimants whose proposed formula-based recovery is greater than the *total value of the remediated structure*:

| CLAIMANT | ADDRESS | FORMULA DAMAGES | REPORTED BUILDING VALUE |
|---|---|---|---|
| Meyer, Harry E. Jr. | 3014 Spruce Street, Zolfo Springs, FL | $213,548 | $36,088 |
| Romero, M.D. Jacqueline and Jose | 3645 7th Avenue, NW, Naples, FL | $673,688 | $206,835 |
| Rosado, Lurdenis and Angel Rosado | 11151 Laurel Walk Road, Wellington, FL | $249,972 | $195,623 |
| Rubin, Mitchell | 9800 Cobblestone Lakes Court, Boynton Beach, FL | $339,782 | $252,245 |
| Zaki, Hussein | 292 North Broken Oak Trail, Jensen Beach, FL | $131,337 | $54,110 |

Even where the formula will not overcompensate on the face of the spreadsheet, Defendants have a due process right to present evidence on cost of repair and diminution in value

to ensure that the Court applies the proper measure of damages under Florida law. See *McHale v. Farm Bureau Mut. Ins. Co.*, 409 So.2d 238, 240 (Fla.App. 3 Dist. 1982) (defendant should be "at liberty to go forward with proof that the cost of repairs exceeded the difference in market value") (citing *Slaughter v. Barrett*, 395 S.W.2d 552 (Ark. 1965)). The most accurate and fair way to adjudicate remediation damages is to follow Florida law and the Court's current schedule requiring property-specific proof from both sides in individual property-specific proceedings.

**D.    Plaintiffs' Formula is Unlawful Because it Attempts to Use Prior Trials to Bind the Class**

Plaintiffs' formula also violates Defendants' due process rights by attempting to use trial results from *Germano* as a binding "bellwether" to extrapolate to judgments in other cases. Courts have affirmatively rejected that approach. In *In re Chevron U.S.A., Inc.*, the Fifth Circuit prohibited use "of the results obtained from the trial of the thirty (30) selected cases for any purpose affecting issues or claims of, or defenses to, the remaining untried cases." 109 F.3d 1016, 1021 (5th Cir. 1997); *see also Cimino*, 151 F.3d at 318 (casting doubt as to whether extrapolation is ever permissible and noting that any suggestion to the contrary *In re Chevron* is dicta); *accord In re Fibreboard Corp.*, 893 F.2d at 711 (courts must assess tort damages suffered by "individuals, not groups"). The MDL court recognized that Defendants' *Chevron*-based arguments were "compelling," but then dismissed them by asserting "the *sui generis* nature of this Chinese Drywall litigation." (Damages FOFCOL at 45). But there is nothing so unique about this litigation that would permit a district court judge to ignore such settled law in his circuit on such a broad principle as using prior results to extrapolate judgments for other cases. This Court should disregard Judge Fallon's results-oriented legerdemain and exercise its broad discretion to reject the unlawful formula based on extrapolation from unrepresentative prior cases.

**E.    Plaintiffs' Formula is Unlawful Because the Underlying Class Violates FRCP 23**

17

Although the Court need not reach this issue, it can also reject Plaintiffs' class formula because the MDL Court should never have certified the underlying class in the first place. This Court can revisit and correct an MDL court ruling that is "clearly erroneous." *Hill v. Ford Motor Co.*, 975 F. Supp. 2d 1351, 1358 (N.D. Ga. 2013) (explaining standard for post-remand review of prior MDL rulings). Judge Fallon's certification of a nationwide class meets that standard.

***First***, as in *Kpadeh*, these Plaintiffs didn't satisfy the Rule 23(b)(3) predominance requirement because their damages are not susceptible to mechanical calculation and the proposed formula does not accurately calculate class members' varying individual damages. *See* 261 F.R.D. at 690-91 (predominance not met where determination of "damages requires a case-by-case inquiry for each prospective plaintiff"); *accord Bussey v. Macon County Greyhound Park, Inc.*, 562 F. App'x 782, 790-91 (11th Cir. 2014) (reversing class certification for failure to rigorously analyze predominance of individual damages); *Cotromano*, 2018 WL 2047468, at **19-20 (denying class certification "for failure to fulfill Rule 23(b)'s predominance requirement" based on "individual assessments on damages").

Judge Marra in *Cotromano*, 2018 WL 2047468, at *20 relied on *Corley v. Orangefield Indep. Sch. Dist.*, 152 F. App'x 350, 355 (5th Cir. 2005), to show that a property-damages class was improper. *Corley* confirmed that "where the issue of damages 'does not lend itself to mechanical calculation, but requires separate mini-trials of an overwhelmingly large number of individual claims,' class certification will not be appropriate." 152 F. App'x at 355 (quoting *Bell Atlantic Corp. v. AT & T Corp.*, 339 F.3d 294, 306 (5th Cir. 2003)).[9]

---

[9] The Fifth Circuit authorities show that the certification decision was manifestly erroneous and contrary to the law governing the drywall MDL. That law is consistent with the law of this Circuit, as demonstrated by Judge Marra's reliance on *Corley*, and Judge Jordan's citation in *Kpadeh*, 261 F.R.D. at 691, of *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 605 (5th Cir. 2006); and *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 745 (5th Cir. 2003). Defendants presented all three decisions for decertification of the *Amorin* class.

 **Second**, Plaintiffs failed to establish the predominance requirement because they made no attempt to analyze or account for variations in the 15 different states' laws implicated by the class. *See Castano v. Am. Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996) (holding that court "erred" when "it failed to consider how variations in state law affect predominance and superiority"). Judge Fallon previously recognized that the state law applicable to drywall claims is the state the claimant's real property is "situated" and the claimants' "losses . . . occurred." *Germano* FOFCOL at 64 (MDL Dkt. No. 2380). But the MDL court's class certification order contains no state-law analysis, and thus missed important conflicts in state damages laws that prevented a nationwide tort-damages class. Under Florida law alone, class treatment using a formula is improper here because it deprives Defendants of their right to present evidence on the proper measure of property damage. *See, e.g.*, *Keyes Co. v. Shea*, 372 So. 2d 493, 496 (4th DCA 1979) ("measure of damages may be, or should include, the cost of repairs or restoration").

 **Third**, Plaintiffs didn't satisfy Rule 23(b)(3)'s superiority requirement because liability was determined before certification, and the subsequent class consists entirely of individuals who were already named parties to the suit. *See Robertson v. Monsanto Co.*, 287 F. App'x 354, 361-62 (5th Cir. 2008) (reversing class certification where, as here, liability was adjudicated "*before* the class was certified" and "the class . . . is defined to include only individuals . . . who were already named as plaintiffs") (emphasis in original). The appellate court held such a group of cases involving only tort damages "can be adjudicated fairly and efficiently by means other than a class action," and that "there simply is no gain to be had from using the class action form." *Id.* at 363, 362; *accord Kpadeh*, 261 F.R.D. at 693 (highlighting need to "conduct countless mini-trials in order to determine damages" and "[t]hus, the judicial synergies and economies of scale contemplated by Rule 23 are not furthered by class certification in this case"). In addition, the

*Amorin* class is also not superior given the high value of each individual's claim. *See Castano*, 84 F.3d at 748 (reversing class certification because "[t]he most compelling rationale for finding superiority in a class action—the existence of a negative value suit—is missing in this case"); *accord Kpadeh*, 261 F.R.D. at 693 (denying class certification because "the damages suffered by each member of the proposed class is sufficient to warrant the cost and effort inherent to litigation on an individual basis").

**Fourth**, Plaintiffs failed to submit evidence sufficient to meet their "burden of proof to establish" that they satisfied Rule 23, and for the Court to perform the "rigorous analysis" demanded by Rule 23. *See M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 837 (5th Cir. 2012) (citing *Dukes*). Plaintiffs' class certification motion offered no evidence—including no expert testimony—"to establish that damages could be measured on a classwide basis." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1431 n.4 (2013) (rejecting class certification because of problems with class damages). Instead Plaintiffs merely asked the MDL court to assume that, based on the specific circumstances of seven Virginia homeowners and a single Louisiana homeowner, Plaintiffs "can establish a formulaic method to determine class-wide property damages" for thousands of homes located in 15 states. Motion for Class Certification at 26 (MDL Dkt. No. 17883-1). That was not sufficient. "Given the plaintiffs' burden, a court cannot rely on assurances of counsel that any problems with predominance or superiority can be overcome." *Castano*, 84 F.3d at 742 (citing *Windham v. American Brands, Inc.*, 565 F.2d 59, 70 (4th Cir. 1977)).

## IV. CONCLUSION

The Court should reject Plaintiffs' proposed formula and order the parties to proceed with discovery and adjudication of all issues for 20 Priority Claimants as the parties agreed and the Court ordered in the Joint Case Management Plan. ECF No. 47.

Respectfully submitted,

20

Dated: September 14, 2018

**AKERMAN LLP**
Las Olas Centre II - Suite 1600
350 E. Las Olas Boulevard
Ft. Lauderdale, Florida 33301
Tel: (954) 463-2700
Fax: (954) 463-2224

By: /s/ Enjoliqué D. Aytch
    Enjoliqué D. Aytch, Esq.
    enjolique.aytch@akerman.com
    Florida Bar No.: 0104881

**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777

Bernard Taylor, Esq.
Georgia Bar No. 669625
Michael P. Kenny, Esq.
Georgia Bar No. 415064
Christina Hull Eikhoff, Esq.
Georgia Bar No. 242539
David Venderbush, Esq.
New York Bar No. 2920817
bernard.taylor@alston.com
mike.kenny@alston.com
christy.eikhoff@alston.com
david.venderbush@alston.com

*Attorneys for Taishan Gypsum Co., Ltd. and*
*Tai'an Taishan Plasterboard Co., Ltd.*

Craig P Kalil
Aballi Milne Kalil P.A.
SunTrust International Center
1 SE 3rd Avenue
Suite 2250
Miami, FL 33131
305-373-6600
Fax: 305-373-7929
Email: ckalil@aballi.com

L. Christopher Vejnoska

21

Eric Matthew Hairston
Andrew K. Davidson
Orrick, Herrington & Sutcliffe LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
415-773-5700
Email: cvejnoska@orrick.com

James L. Stengel
Orrick, Herrington & Sutcliffe LLP
51 West 52nd Street
New York, NY 10019
212-506-5000
Email: jstengel@orrick.com

*Counsel for BNBM PLC*