<pre>
 1                      UNITED STATES DISTRICT COURT
                       EASTERN DISTRICT OF LOUISIANA
 2

 3

 4      *****************************************************************

 5      IN RE:  CHINESE-MANUFACTURED
        DRYWALL PRODUCTS
 6      LIABILITY LITIGATION

 7                                     CIVIL DOCKET NO. 09-MD-2047 "L"
                                       NEW ORLEANS, LOUISIANA
 8                                     THURSDAY, SEPTEMBER 27, 2018, 9:00 A.M.

 9
        THIS DOCUMENT RELATES TO
10      ALL CASES

11      *****************************************************************

12

13                  TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS
                    HEARD BEFORE THE HONORABLE ELDON E. FALLON
14                        UNITED STATES DISTRICT JUDGE

15
        APPEARANCES:
16

17

        FOR THE PLAINTIFFS'
18      LIAISON COUNSEL:            HERMAN HERMAN KATZ
                                    BY:  RUSS M. HERMAN, ESQUIRE
19                                       LEONARD A. DAVIS, ESQUIRE
                                    820 O'KEEFE AVENUE
20                                  NEW ORLEANS, LA 70113

21

22                                  LEVIN, FISHBEIN, SEDRAN & BERMAN
                                    BY:  FRED S. LONGER, ESQUIRE
23                                       SANDRA L. DUGGAN, ESQUIRE
                                    510 WALNUT STREET, SUITE 500
24                                  PHILADELPHIA, PA 19106
        APPEARANCES CONTINUED:
25
</pre>

*OFFICIAL TRANSCRIPT*

09:02:40 (timestamp at line 8)

```
                              GAINSBURGH BENJAMIN DAVID
                              MEUNIER AND WARSHAUER
                              BY:  GERALD E. MEUNIER, ESQUIRE
                              2800 ENERGY CENTRE
                              1100 POYDRAS STREET, SUITE 2800
                              NEW ORLEANS, LA 70163


                              BARRIOS KINGSDORF & CASTEIX
                              BY:  EMMA K. SCHWAB, ESQUIRE
                              701 POYDRAS STREET, SUITE 3650
                              NEW ORLEANS LA 70139


                              IRPINO LAW FIRM
                              BY:  PEARL A. ROBERTSON, ESQUIRE
                              2216 MAGAZINE STREET
                              NEW ORLEANS, LA 70130


FOR TAISHAN GYPSUM CO.,
LTD, AND TAI'AN TAISHAN
PLASTERBOARD CO., LTD.:        ALSTON & BIRD
                              BY:  CHRISTINA H. EIKHOFF, ESQUIRE
                              ONE ATLANTIC CENTER
                              1201 WEST PEACHTREE STREET
                              ATLANTA, GA 30309


FOR THE KNAUF
LIAISON COUNSEL:              BAKER DONELSON BEARMAN
                              CALDWELL & BERKOWITZ
                              BY:  KERRY J. MILLER, ESQUIRE
                                   DANIEL S. DYSART, ESQUIRE
                              201 ST. CHARLES AVENUE, SUITE 3600
                              NEW ORLEANS, LA 70170




APPEARANCES CONTINUED:
```

*OFFICIAL TRANSCRIPT*

```
 1    FOR THE TAISHAN, BNMB
 2    ENTITIES AND CNBM ENTITIES
      LIAISON COUNSEL:              PHELPS DUNBAR
 3                                  BY:  HARRY ROSENBERG, ESQUIRE
                                    365 CANAL STREET, SUITE 2000
 4                                  NEW ORLEANS, LA 70130

 5

 6    CHINA NATIONAL BUILDING
      MATERIALS GROUP CORPORATION
 7    AND CHINA NATIONAL BUILDING
      MATERIALS COMPANY LIMITED
 8    (COLLECTIVELY, "CNBM"):       ORRICK HERRINGTON & SUTCLIFFE
                                    BY:  JAMES L. STENGEL, ESQUIRE
 9                                  51 WEST 52ND STREET
                                    NEW YORK, NY 10019
10

11
                                    GORDON, ARATA, MCCOLLAM,
12                                  DUPLANTIS & EAGAN
                                    BY:  EWELL E. EAGAN, JR., ESQUIRE
13                                       DONNA P. CURRAULT, ESQUIRE
                                         ALEX B. ROTHENBERG, ESQUIRE
14                                  201 ST. CHARLES AVENUE, 40TH FLOOR
                                    NEW ORLEANS, LA 70170
15

16

17    OFFICIAL COURT REPORTER:      CATHY PEPPER, CRR, RMR, CCR
                                    CERTIFIED REALTIME REPORTER
18                                  CERTIFIED MERIT REPORTER
                                    500 POYDRAS STREET, ROOM B406
19                                  NEW ORLEANS, LA 70130
                                    (504) 589-7779
20                                  Cathy_Pepper@laed.uscourts.gov

21

22    PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
      PRODUCED BY COMPUTER.

23

24

25
```

*OFFICIAL TRANSCRIPT*

**P-R-O-C-E-E-D-I-N-G-S**

THURSDAY, SEPTEMBER 27, 2018

M O R N I N G   S E S S I O N

(COURT CALLED TO ORDER)


THE COURT:  Okay.  We have two motions today.
The first motion has to do with the plaintiffs' motion to
certify a ruling of the court.

The Court two and a half years ago ruled on a
matter and granted dismissal in a particular case.  The
plaintiffs now seek to have a certification at the
Fifth Circuit so they can appeal that particular issue.

I'll hear from the movants.  Go ahead.

MR.  LONGER:  Good morning, Your Honor.  Fred Longer on
behalf of the plaintiffs.  I've asked Mr. Oser to set up the
Elmo, which I intend to use.

Just as preliminary matters, Pearl Robertson is
also going to join me in this argument.  We're going to split
this argument up a little bit.  She's going to address some of
the factual matters that we think are pertinent, and I'll
follow through afterwards and address some of the legal matters
that we think are pertinent.

THE COURT:  Okay.

MS. ROBERTSON:  Good morning.  May it please the Court,

*OFFICIAL TRANSCRIPT*

09:11:06  1    Pearl Robertson on behalf of plaintiffs.

09:11:09  2           I will open today argument with an explanation of

09:11:11  3    how we got here.  We should address the issues of timeliness

09:11:15  4    that may be of the Court's concern.  Following this brief

09:11:19  5    outline of the circumstances that brought us here today,

09:11:22  6    Fred Longer will resume the PSC's argument to justify

09:11:27  7    certification.

09:11:28  8           Without belaboring the points in our briefs, I

09:11:30  9    will quickly explain why the time is ripe for the PSC's motion

09:11:35 10    to certify Your Honor's March 10, 2016, Orders and Reasons.

09:11:38 11           First, there is no time line for request for

09:11:42 12    certification.  28 U.S.C. § 1293(b) contains no time limit for

09:11:49 13    filing a request for certification.  In fact, logic and

09:11:55 14    judicial efficiency supports certification of the March 10,

09:12:00 15    2016, order for immediate review just as this court has done

09:12:04 16    for the other jurisdictional rulings.

09:12:06 17           Second, plaintiffs' recent discovery of

09:12:10 18    translation -- recent discovery and translation of documents

09:12:13 19    provide additional proof that there is separation between the

09:12:16 20    Chinese state and CNBM Group and that CNBM Group was involved

09:12:24 21    in the commercial activities of its subsidiaries.

09:12:27 22           To offer additional context, on May 3, Your Honor

09:12:32 23    entered an order regarding the January 2016 sanction order

09:12:37 24    against Taishan for certain discovery abuses related to

09:12:40 25    documents produced from Peng's computers and e-mails,

*OFFICIAL TRANSCRIPT*

09:12:44  1    Record Document 21318.

09:12:46  2              As part of that order, the Court instructed the

09:12:50  3    PSC to conduct its own relevancy review of Mr. Peng's computer

09:12:55  4    and e-mails.  Thereafter, the PSC would advise Taishan of

09:12:59  5    relevant documents discovered and request manual translation of

09:13:02  6    those documents, all to comply with the Court's May 3rd order.

09:13:06  7              The PSC and Taishan engaged in this process

09:13:09  8    amicably, but return of manual translations takes between 30

09:13:14  9    and 35 days.  So, upon discovery of documents that appear to

09:13:18  10   speak to the indirect ownership of PSC over CNBM Group and

09:13:24  11   documents that were suggestive of commercial activity by CNBM,

09:13:28  12   the PSC opted to expedite the translations and ask their

09:13:34  13   translator Yan Gao to translate those documents the PSC

09:13:36  14   determined relevant to the FSIA issues.  Shortly thereafter, we

09:13:40  15   filed our motion for certification.

09:13:42  16             To be clear, the documents attached to the PSC's

09:13:47  17   certification briefing result from the PSC's relevancy review

09:13:50  18   of Peng's documents and e-mails.  Further, the PSC conducted

09:13:56  19   additional due diligence and used search phrases from the

09:13:59  20   machine translation of these documents to discover whether CNBM

09:14:04  21   Group produced the documents in 2015.  The PSC was unable to

09:14:09  22   match any such documentation in the CNBM group documents.

09:14:13  23             THE COURT:  Why don't you focus, though, on facts in

09:14:17  24   that situation.  In my opinion, I didn't see any evidence

09:14:24  25   adverse to the fact that the CNBM Group was wholly owned by the

**OFFICIAL TRANSCRIPT**

09:14:30  1    People's Republic of China.  There was nothing there and I made

09:14:36  2    the decision, but it was factual based decision.  The appeal,

09:14:41  3    you're talking about appealing now, it's generally 1292 is

09:14:45  4    issues of law that are significant.  You're focused on issues

09:14:51  5    of fact.  Is that a 1292 appeal?

09:14:54  6        MS. ROBERTSON:  Your Honor, what we feel is that the

09:14:56  7    documents show that the facts that are discovered in these

09:14:59  8    newly translated documents support the controlling question of

09:15:02  9    law of whether there is direct ownership by the PRC.  Some of

09:15:06 10    the documents attached we feel show that CNBM Group is

09:15:11 11    reporting up the line, but they are not reporting up the line

09:15:13 12    to the PRC.  They are reporting up the line to different

09:15:18 13    governmental entities that's showing a separation between

09:15:22 14    CNBM Group and the People's Republic of China.

09:15:25 15        As Mr. Longer will explain, we believe *Dole Foods*

09:15:28 16    is wholly applicable to the argument and certification for 1292

09:15:32 17    as *Dole Food* definitely stands for the fact that indirect

09:15:35 18    ownership, any indirectness there, absolutely -- is absolutely

09:15:40 19    fatal to defendant's argument that foreign sovereign immunity

09:15:44 20    applies.

09:15:44 21        On that point, Your Honor, as displayed in our

09:15:50 22    brief, the first brief, 21533-1, at page 8 that Mr. Longer will

09:15:59 23    discuss further with you, CNBM Group itself acknowledges that

09:16:03 24    it is 100 percent owned by SASAC.  SASAC is not the PRC and PRC

09:16:09 25    is not SASAC; therefore, our argument remains that there is

*OFFICIAL TRANSCRIPT*

09:16:13  1    separation between CNBM Group and the Chinese foreign state

09:16:22  2    itself.

09:16:22  3            It seems as though, Your Honor, perhaps

09:16:23  4    Mr. Longer should now address some of the other issues of law

09:16:26  5    unless you have any further issues questions regarding

09:16:30  6    documents or timeliness.

09:16:32  7            THE COURT:  No, I'll hear from him.

09:16:33  8            MR. LONGER:  So, good morning, again.  Fred Longer.

09:16:38  9            So, to your point, Your Honor, everyone here is

09:16:42 10    familiar with Section 1292(b).  There are three elements that

09:16:47 11    we have to require -- meet, satisfy, and I think we've easily

09:16:53 12    satisfied all of them of.

09:16:54 13            The concern that Your Honor raised about whether

09:16:57 14    there is a controlling question of law is something that the

09:17:00 15    defendants raised.  We think it's very clear that whether the

09:17:05 16    PRC directly owns a majority of shares of CNBM Group is a

09:17:12 17    controlling question of law, if there are facts that support

09:17:18 18    it, but that is coming directly from the *Dole Food* case, which

09:17:22 19    is the United States Supreme Court, and the United States

09:17:25 20    Supreme Court has told us that there cannot be an intermediary

09:17:31 21    based on the precise language of the FSIA.

09:17:35 22            So, there are a number of points that, I guess, I

09:17:46 23    want to start with.  So, as to a controlling question of law,

09:17:50 24    whether there has been an incorrect disposition that would

09:17:55 25    require reversal of a final judgment is recognized to be a

*OFFICIAL TRANSCRIPT*

09:18:00  1    controlling question of law.

09:18:01  2         So even though there are facts involved in this

09:18:04  3    decision, any personal jurisdiction opinion, Your Honor, is

09:18:09  4    going to involve questions of fact.  So, it's whether the

09:18:14  5    marriage of fact to law is worth going up on appeal right away.

09:18:23  6    That's basically the big picture that's at issue here.

09:18:26  7         Your Honor, as you've just heard from my

09:18:29  8    colleague, has heard, and we know, that for the April 21, 2017,

09:18:37  9    order of personal jurisdiction regarding the other Taishan

09:18:42 10    defendants in the CNBM and BNBM entities, Your Honor certified

09:18:46 11    that question.  You said it made sense to go up right now and

09:18:49 12    that an immediate appeal would certainly help the ultimate

09:18:54 13    termination of the litigation.

09:18:55 14         All of the same reasoning that was rendered in

09:19:02 15    that opinion applies here.

09:19:05 16    THE COURT:  I don't have any objection to that.  You

09:19:08 17    know my feeling on these matters, and I treat the MDL's

09:19:12 18    differently than I do the individual case.  It seems to me that

09:19:16 19    seminal issues, gateway issues -- preemption, jurisdiction,

09:19:21 20    things of that sort, immunity -- really, if I can decide that

09:19:25 21    as quickly as I can, it's helpful to the litigation because you

09:19:29 22    don't have to spend a ton of money to get where you're going

09:19:33 23    and then all of a sudden find out that you're in the wrong

09:19:36 24    place and it was all for naught.

09:19:38 25         So I do try to focus on those.  I think that

*OFFICIAL TRANSCRIPT*

09:19:41 1    issue is a significant one, but the issue of timeliness is

09:19:47 2    giving me a little difficulty.

09:19:51 3         MR. LONGER:  I want to get to that.

09:19:55 4         THE COURT:  Why is it two and a half years late?

09:19:57 5         MR. LONGER:  Let me take it on right now, Your Honor.

09:20:00 6              So there is a number of things that happened.

09:20:02 7    First of all, the FSIA ruling originally from March 10, 2016,

09:20:07 8    was not a final order.  Everyone recognizes that there were

09:20:14 9    other defendants.  The PSC was of the mind-set we didn't agree

09:20:20 10   with Your Honor's ruling -- we still don't agree with

09:20:23 11   Your Honor's ruling -- but because there were other defendants

09:20:26 12   in the litigation, it's not a final order; we can't take an

09:20:29 13   appeal right now.

09:20:30 14             As time has gone by, we knew that the other

09:20:34 15   defendants were moving for dismissal under Rule 12.  Your Honor

09:20:38 16   ruled.  That was April of 2017.  They sought to take the

09:20:45 17   immediate appeal.  Your Honor certified that question.  That

09:20:51 18   was a trigger point.

09:20:53 19             Right after that or at that time the

09:20:56 20   Supreme Court came out with *Animal Science*, which said that you

09:21:01 21   can't take the word of a Chinese entity, the say-so of a

09:21:08 22   Chinese entity.  In that case it was the Chinese government who

09:21:13 23   came in and said, hey, we do regulate the rates of the

09:21:19 24   defendant's pricing and you should take our word for it.  The

09:21:25 25   Supreme Court goes, well, that's very nice, but we're only

*OFFICIAL TRANSCRIPT*

09:21:29  1    going to give you deferential respect.

09:21:33  2              That, the immediately certification of the other

09:21:37  3    appeal, the Fifth Circuit has jurisdiction in front of it,

09:21:41  4    Your Honor.  We're getting new documents, as Ms. Robertson just

09:21:46  5    mentioned.  Everything is pointing to the fact that there are

09:21:50  6    new indicia that support an immediate appeal now.

09:21:56  7              As a practical matter, it makes sense that if the

09:22:00  8    Fifth Circuit is going to deal with the jurisdiction of the

09:22:03  9    underlings, it may have -- it may as well take jurisdiction

09:22:10 10    over the overling and that would be CNBM Group.  So that's the

09:22:17 11    argument on that score.

09:22:19 12              I want to go back to the statute itself.  I have

09:22:25 13    on the board here, this is on the Elmo, this is coming right

09:22:29 14    out of the *Dole Food* case.  It talks about Section 1603 of the

09:22:35 15    FSIA, and it says that, you know, the definition of an agency

09:22:41 16    or instrumentality of a foreign state is any entity which is a

09:22:47 17    separate legal person, corporate, or otherwise, and -- and this

09:22:51 18    is a disjunctive -- which is an organ of a foreign state or a

09:22:55 19    political subdivision thereof or a majority of whose shares or

09:23:01 20    other ownership interest is owned by a foreign state or

09:23:04 21    political subdivision thereof.

09:23:06 22              As we know from *Dole Food*, that the ultimate

09:23:13 23    holding in the case was only direct ownership of a majority of

09:23:18 24    shares by the foreign state satisfies the regulatory

09:23:23 25    requirement.  That's the United States Supreme Court.

*OFFICIAL TRANSCRIPT*

09:23:25 1          So, in terms of majority ownership, Your Honor

09:23:32 2   expressed a finding just a moment ago that there was no

09:23:40 3   evidence, but at the hearing that took place on the FSIA

09:23:47 4   argument, we presented this slide.

09:23:57 5          It was argued that in the BNBM PLC annual

09:24:05 6   reports, there were ten of them listed here, Your Honor.

09:24:07 7   That's in the legend below, Exhibits 3, 8, 10, 12, 15, 29, 21,

09:24:17 8   18, 20, and 23.  There were ten annual reports which were filed

09:24:21 9   under the Shenzhen Stock Exchange rules.

09:24:25 10         Mr. Cao, who is an officer of BNBM at CNBM Group,

09:24:36 11  declared under penalties of whatever perjury is over in China,

09:24:43 12  that the following was accurate and truthful.  What the annual

09:24:50 13  reports said under Mr. Cao's signature and declaration thereof

09:24:57 14  is that SASAC, the State-Owned Asset Supervision and

09:25:02 15  Administration Commission of the State Council, owned CNBM

09:25:07 16  Materials Group Corporation 100 percent.  Ten times he said

09:25:11 17  that.

09:25:11 18         He gives two times, Your Honor -- this is also a

09:25:22 19  slide that we presented at that hearing.  Twice Your Honor has

09:25:28 20  ruled that SASAC owns 100 percent of CNBM Group.  One is the

09:25:35 21  *Germano* findings of fact; the other is the class certification

09:25:40 22  findings of fact.

09:25:41 23         After that we have one declaration of Mr. Cao,

09:25:46 24  where he says forget everything that I've said in the annual

09:25:50 25  reports.  I guess -- he didn't say he was lying then, but he

*OFFICIAL TRANSCRIPT*

09:25:57 1   must have said I am mistaken or I'm exaggerating the truth then

09:26:01 2   or whatever the words that will come out of his mouth.  He

09:26:04 3   gives another declaration as says just the opposite.

09:26:09 4   CNBM Group is owned by the People's Republic of China.

09:26:17 5          There is a real dispute there, Your Honor, but it

09:26:20 6   does come down -- there is evidence supporting our position.

09:26:24 7   There was evidence presented at the hearing.  We recognize that

09:26:28 8   Your Honor found otherwise, but irrespective of the support,

09:26:41 9   the evidentiary support, it creates a mixed question of law

09:26:45 10  which is supported by fact, and it is this the ultimate

09:26:49 11  question that *Dole Food* presents, which is is there an

09:26:54 12  intermediary in between the foreign sovereign and the defendant

09:27:05 13  such that there is not or that there is indirect ownership.

09:27:11 14         We have proven that there is not direct

09:27:16 15  ownership.  That is the controlling question of law which we

09:27:21 16  would like to have certified to the Circuit court so that we

09:27:26 17  can get to bottom of it because we think that Your Honor's

09:27:29 18  ruling, based on one declaration of Mr. Cao, which is

09:27:34 19  controverted by Mr. Cao, is worthy of appellate review.

09:27:40 20         We also presented the opinion of our expert,

09:27:48 21  Curtis Milhaupt, and Professor Milhaupt, who is knowledgeable

09:27:56 22  about state-owned enterprises and Chinese corporate structure

09:28:02 23  has opined, in essence, that things are not what they seem in

09:28:06 24  China.  You can't make direct parallels to our experience here

09:28:12 25  in the United States with the corporate structures that exist

*OFFICIAL TRANSCRIPT*

09:28:15 1   in China.  A lot of that has to do with the Communist Party

09:28:20 2   being involved in all of these entities.

09:28:21 3              So, we think that what I just described provides

09:28:36 4   quite a substantial grounds for difference of opinion.  In

09:28:40 5   fact, Your Honor has two opinions that support exactly what

09:28:42 6   we're saying.  Now we have one opinion against it.  So, you,

09:28:48 7   yourself, Your Honor, have a substantial ground for difference

09:28:51 8   of opinion here.

09:28:52 9              Then, finally, we think --

09:28:54 10             THE COURT:  Give me a time, though, Fred.  That's the

09:28:57 11  point.  I got it.  I understand the mixed question of fact.

09:29:03 12  That may have carried the day clearly soon thereafter.  What's

09:29:10 13  the reason for the delay for two and a half years?

09:29:15 14             MR. LONGER:  So I return to where I was.

09:29:18 15             THE COURT:  Yep.

09:29:19 16             MR. LONGER:  Section 1292 has no timeline.  There is no

09:29:27 17  prohibition.  The defendants have cited to no controlling

09:29:31 18  authority to suggest that there must be an immediacy to the

09:29:39 19  request for the 1292(b).

09:29:42 20             THE COURT:  There is no statutory restriction about

09:29:45 21  that.

09:29:46 22             MR. LONGER:  (Speaking simultaneously) There is no

09:29:47 23  statutory restriction; there is no Circuit restriction.  The

09:29:49 24  best they have is the *Aparicio* case.  I may be mispronouncing

09:29:53 25  it.  It was a Sieracki seaman case, Your Honor.  I'm going to

*OFFICIAL TRANSCRIPT*

09:29:56  1    take you back a long way to the Longshoreman's Act.

09:29:59  2              In that case, the Fifth Circuit -- that's a

09:30:01  3    Fifth Circuit case -- the Fifth Circuit simply said it was

09:30:08  4    actually okay to a year later recertify -- I'm sorry, to issue

09:30:15  5    a second opinion and then recertify from the second opinion, a

09:30:22  6    year later, and take that one up on appeal, and they said that

09:30:26  7    they had appellate jurisdiction.

09:30:29  8              So timeliness is not at issue.  They want to make

09:30:32  9    it an issue.  I get it.  There is a Seventh Circuit opinion

09:30:36 10    that they are harping on, and there is, I'm sure, other

09:30:41 11    out-of-Fifth-Circuit opinions, but there is no controlling

09:30:49 12    authority that is here.

09:30:50 13              The timeliness of the 1292(b) motion should only

09:30:55 14    be a concern where nothing has changed since the ruling, but

09:31:00 15    much has changed here.  We have Your Honor's opinion on the

09:31:04 16    BNBM and CNBM Group.  We have new authority coming out of the

09:31:13 17    United States Supreme Court, the *Animal Science* opinion.  As

09:31:16 18    Ms. Robertson has explained, we have new documents which

09:31:18 19    confirm the facts that were already of record way back when.

09:31:21 20              So, all of those, the constellation of all of

09:31:28 21    those matters, Your Honor, make this more than timely.

09:31:30 22    Timeliness is not the issue here.  It's really a practical

09:31:33 23    question.  Your Honor, does it -- is this the type of threshold

09:31:39 24    gateway issue that Your Honor described that belongs up at the

09:31:42 25    Circuit court because, at the end of the day, we're going to

*OFFICIAL TRANSCRIPT*

09:31:44  1    have to take an appeal, and CNBM Group should come back in.

09:31:51  2         Why not know now?  It's just a practical

09:31:54  3    question.  The only answer to that is if you've got the other

09:31:57  4    ones going up, we acknowledge that they are not going to be

09:32:00  5    consolidated, they will be separate appeals, but why not have

09:32:04  6    it all go up at once?

09:32:05  7         Thank you, Your Honor.

09:32:07  8         THE COURT:  I got it.  Thank you.

09:32:35  9         If anybody is on the phone, please don't discuss

09:32:38 10    the matters on the phone.  Just listen to what's being held.

09:32:44 11         MR. STENGEL:  James Stengel, S-T-E-N-G-E-L, for

09:32:50 12    CNBM Group.

09:32:51 13         All right.  Let's go to the first substantive

09:32:58 14    page.  Your Honor, there are four requirements for

09:33:02 15    certification under 1292(b).  None of them have been met here.

09:33:08 16    What the PSC argued this morning was useful in clarifying the

09:33:13 17    reality of what's happened.

09:33:15 18         A tactile decision was made to avoid an immediate

09:33:19 19    appeal at the time Your Honor rendered this opinion two and a

09:33:21 20    half years ago.  Subsequent events have unfolded, and there has

09:33:27 21    been buyer's remorse about not having sought an appeal.

09:33:30 22         Each of these requirements has to be met, and

09:33:36 23    Your Honor appropriately focused on timeliness because this is

09:33:40 24    two and a half years after the decision.  What I think this

09:33:43 25    morning clarified was despite the recitals of Peng, there was

*OFFICIAL TRANSCRIPT*

09:33:49  1    no new evidence which is relevant to the issues in this matter.

09:33:55  2         What you saw were exhibits which were put before

09:33:58  3    you in late 2015, early 2016.  That was before this court.

09:34:02  4    What they are saying is we don't like the way you came out.

09:34:05  5    You made a mistake.  There is no justification and, Mr. Longer

09:34:11  6    is correct, there is no rule which specifies a 10-day period,

09:34:16  7    there is no statute which does that, but as Your Honor is aware

09:34:19  8    there is a substantial body of district court opinion and

09:34:21  9    Circuit court opinion doing something quite reasonable, which

09:34:24 10    is imposing time limits on when a party makes a decision on

09:34:30 11    whether they are going to seek certification.

09:34:31 12         I would contrast the PSC's behavior with that of

09:34:34 13    ours where we made an immediate application to this court where

09:34:39 14    it was appropriate, which, I should note, was vociferously

09:34:44 15    opposed by the PSC, but we recognized what the 1292(b) talks

09:34:49 16    about is immediate appeal.  It's hard to square two and a half

09:34:54 17    years with an immediate appeal.

09:34:57 18         The other point I think we all ought to have in

09:35:01 19    mind here is there was an assertion about, well, if you took

09:35:04 20    the BNBM and CNBM personal jurisdiction matters and they are

09:35:09 21    now certified they are before the Circuit, and while we can't

09:35:10 22    argue them together, we might as well get everything up there

09:35:12 23    at once.

09:35:13 24         We're talking about substantially different legal

09:35:15 25    questions.  This is a matter of subject matter jurisdiction for

*OFFICIAL TRANSCRIPT*

09:35:17  1    the Court because of sovereign immunity.  Those are personal

09:35:21  2    jurisdiction arguments as to BNBM and CNBM.  It involves

09:35:27  3    application of state law.  Now, we can debate as to whether we

09:35:32  4    think that's appropriate or not, but there is no real overlap

09:35:34  5    in terms of what's at issue.

09:35:36  6              What's happened here is two and a half years have

09:35:39  7    passed where CNBM Group is now part of litigation.  Now

09:35:44  8    because, I think, of the certification more than anything else,

09:35:48  9    the PSC wants to revisit the issue.

09:35:50  10             As Your Honor identified, and it's somewhat

09:35:56  11   disingenuous to say there is no law in this because there are

09:36:00  12   cases in that discuss what's timely under 1292(b), and one year

09:36:03  13   is the absolute outside.  There are cases discussing whether

09:36:08  14   three months is too late because of the need to have cases

09:36:12  15   proceed in an orderly fashion before the courts, and obviously

09:36:16  16   it's disruptive to have a lengthy delay before cases are taken

09:36:22  17   up.

09:36:22  18             THE COURT:  They say there is no harm doing it.  If it

09:36:30  19   comes late, it comes late, but the main thing is justice be

09:36:33  20   done.  They say that you're up there now, you might as well

09:36:36  21   have the whole loaf.  What's your feeling there?

09:36:43  22             MR. STENGEL:  Well, a couple of responses to that,

09:36:43  23   Your Honor.  First of all, it's their burden on this motion.

09:36:46  24   They need to show where the justice resides.

09:36:49  25             The other is -- and we need to be careful about

*OFFICIAL TRANSCRIPT*

09:36:51 1    this, and Your Honor and I have talked about this in prior

09:36:56 2    appearances -- we are not before the Fifth Circuit, meaning

09:37:00 3    CNBM Group.  These are distinct entities and you're talking

09:37:03 4    about taking a different corporation up to Circuit.

09:37:07 5            Different CNBM and BNBM entities are there, but,

09:37:11 6    again, since they are going to proceed on a separate

09:37:14 7    schedule -- I mean, we're on the cusp of getting a briefing

09:37:17 8    schedule as to the personal jurisdiction matters.  This matter

09:37:20 9    would, of necessity, since we would have to go to the Circuit,

09:37:23 10   litigate the issue of certification, and only if they were

09:37:25 11   successful at that point proceed, these are not going to be

09:37:29 12   connected in time.

09:37:30 13           Again, I think the justice point is really the --

09:37:34 14   and I won't use the technical phrase of *estoppel*, but the PSC

09:37:39 15   made a decision.  They didn't like your outcome on sovereign

09:37:43 16   immunity.  They presented evidence, factual matter that

09:37:46 17   Your Honor did not think that was adequate, and it is not for a

09:37:49 18   variety of reasons we can talk about, but now to come back

09:37:51 19   after two and a half years, with all this litigation, with, I

09:37:55 20   think, 1,500 docket entries -- we have been busy.  Lots has

09:37:59 21   happened.

09:38:00 22           It's one thing for a party who has been dismissed

09:38:03 23   to bear the risk that at the end of a case there may be a final

09:38:08 24   appeal with a final judgment, and there may be some risk a

09:38:11 25   reversal, but it's quite different to say one party can lie in

*OFFICIAL TRANSCRIPT*

09:38:15 1    the weeds, and at their decision bring a party back in to the

09:38:20 2    litigation.  That's unfair and it's unjustified as a matter of

09:38:23 3    law.

09:38:23 4         We can talk about justice, but if we look at the

09:38:27 5    requirements of the statute, what we'll see is they come

09:38:30 6    nowhere close to meeting their obligation as movants under

09:38:36 7    1292(b) to seek certification of this court.

09:38:38 8         They don't like what Your Honor decided, and I

09:38:41 9    understand that.  I suspect Your Honor understands that, but

09:38:44 10   the fact that they don't like the outcome, they want to take a

09:38:47 11   different view now, doesn't justify reopening the situation in

09:38:52 12   a grossly untimely fashion, particularly when, on the merits,

09:38:56 13   if we were only arguing timeliness, I believe we still prevail.

09:39:02 14   But when you fold in the failure to comply with the other

09:39:05 15   requirements of the statute, this becomes a frolic and detour,

09:39:11 16   and it's really not a matter of justice when they can't support

09:39:14 17   a reason for certification here.

09:39:17 18        THE COURT:  Let me ask you this just as a practical

09:39:20 19   matter in these types of cases.  When it's over in a sense that

09:39:27 20   one side wins or the other side loses, if the plaintiffs lose,

09:39:34 21   don't they take an appeal at that time?  Then this issue is

09:39:38 22   before either the Fifth Circuit or some court two, three, four

09:39:47 23   five years from now, and if they prevail, aren't you then back

09:39:52 24   in it?

09:39:53 25        MR. STENGEL:  Well, Your Honor, everything having only

*OFFICIAL TRANSCRIPT*

been doing this for 40 years I hesitate to tell Your Honor how litigation works, but it seems to me that this is a speculative enterprise. We have come close to resolving this litigation. The odds are substantial there won't be appeals. We just don't know.

One of the reasons for the structure of 1292(b) is the idea that you are entitled to some level of intermediate finality during litigation. The statute, as Your Honor is well aware, places fairly high burdens on movants to achieve certification. We think in our case we met those and Your Honor agreed. In this case, again, they fail at every juncture.

THE COURT: Now, the issues are, to some extent, different in an MDL than in a one-off case. I take the point well with the timeliness in a one-off case. My concern about this from the standpoint of an MDL is that it just keeps it alive forever because they have a continuing opportunity to appeal. You may win the case and then five years down the road win the case, and then they take the appeal and you're back in it again.

It seems to me that somewhere along the line if you can find some finality before. This case is 23,000 people, plaintiffs, a thousand defendants. To keep it alive for 15, 20 years, it's not good for the litigants; it's not good for the system. I'm trying to grapple with that issue.

*OFFICIAL TRANSCRIPT*

09:41:51  1        MR. STENGEL:  Well, Your Honor, the problem with

09:41:52  2    that -- and I come from New York where, in our state system,

09:41:55  3    everything is immediately appealable and it's a nightmare.

09:41:59  4        THE COURT:  Right.  We have that too.

09:42:02  5        MR. STENGEL:  I'm not suggesting the federal courts do

09:42:04  6    that, but the federal courts have made a decision that, by and

09:42:07  7    large, they are not interlocutory appeals, and the system works

09:42:12  8    that way.  That's why 1292(b), excuse me, Your Honor is a

09:42:16  9    restrictive provision.

09:42:19 10             You could envision an alternative universe where

09:42:22 11    like, in the New York Supreme Court, everything is appealed.

09:42:24 12        THE COURT:  We have that in Louisiana.

09:42:28 13        MR. STENGEL:  I would suggest, Your Honor -- and

09:42:30 14    Your Honor has spent more time in MDLs than I have certainly,

09:42:33 15    but it would be a nightmarish outcome if everything were

09:42:37 16    immediately appealable in matters of this complexity.  So there

09:42:41 17    is a reason why the hurdle that 1292(b) imposes is a very high

09:42:45 18    one.

09:42:45 19        THE COURT:  I agree.  Both of these issues, your

09:42:50 20    issues -- that's the reason I 1292'd those because, to me, it's

09:42:54 21    a key issue.  It's a seminal issue.  Jurisdiction is

09:42:59 22    significant.  This is also jurisdiction.  That's an area that

09:43:05 23    I'm grappling with is just whether we deal with it differently

09:43:09 24    in an MDL as opposed to a one-off case.

09:43:12 25        MR. STENGEL:  Well, Your Honor, I don't think there is

**OFFICIAL TRANSCRIPT**

09:43:14  1    a reason to deal with it differently because the proof provided

09:43:18  2    by the PSC in 2015 and 2016 was found by this court by

09:43:25  3    Your Honor to be wanting on the issues presented.

09:43:28  4          The rational for them coming back now, and I

09:43:32  5    think there was clarity provided in Mr. Longer's argument, that

09:43:36  6    this really isn't a matter of new evidence which goes to the

09:43:39  7    points which are critical to your decision.  They are saying

09:43:42  8    here is what we gave you in early 2016 and, boy, did you get it

09:43:47  9    wrong.  That's not what 1292(b) is all about.

09:43:52 10          Now, the explanation they provide is we have new

09:43:55 11    evidence.  Well, I think we can take that off the table because

09:43:58 12    there is no new evidence relevant to the issue they are raising

09:44:01 13    here today.

09:44:02 14          The other issue is a citation to the

09:44:06 15    Supreme Court's case In *Animal Products*.

09:44:09 16          THE COURT:  I see that.

09:44:10 17          MR. STENGEL:  This is a completely different case.  I

09:44:12 18    will say, and I've raised this with Your Honor before, I think

09:44:15 19    we do need to be careful.  We're not going to revive the

09:44:20 20    Chinese Exclusion Act in this courtroom.  That's not what the

09:44:23 21    Supreme Court said.

09:44:24 22          They didn't cast doubt about the Chinese

09:44:27 23    government's statements, but as Your Honor knows that was a

09:44:29 24    very different situation where the Chinese government had

09:44:31 25    literally come in and said that this is our rule as to pricing

*OFFICIAL TRANSCRIPT*

09:44:34  1    of vitamin C.

09:44:36  2              The Second Circuit had said that's game, set, and

09:44:39  3    match.  If the Chinese government says that or if any

09:44:40  4    government says it we're finished.

09:44:41  5              The Supreme Court said, no, it's certainly

09:44:43  6    probative, but you're not bound by the statement of a

09:44:46  7    governmental entity.  In any event, since it's not relevant to

09:44:50  8    your decision here, it's not a justification for their delay.

09:44:54  9              We've covered the issue of the fact that these

09:45:00 10    appeals are not going to be together, so we're not talking

09:45:03 11    about any particular savings, any utility.

09:45:05 12              The issue of controlling question of law is very

09:45:11 13    important because that's really what's at issue here, and you

09:45:14 14    heard, I think, with some clarity the objection is they don't

09:45:17 15    like the way you assessed the application of facts to law here.

09:45:22 16    They think, boy, you should have relied on the

09:45:27 17    Shenzhen Exchange documents and ignored Mr. Cao's declaration.

09:45:31 18              The problem for that is that's typical argument

09:45:32 19    in isolation because I think what we presented at the time,

09:45:34 20    what Your Honor reacted to was its reasonably clear as a matter

09:45:38 21    of Chinese law that the PRC, I mean these are called

09:45:42 22    *state-owned enterprises* for a reason.  They use SASAC because

09:45:46 23    somebody has to administer the companies owned by the

09:45:49 24    government, and there is really no contrary evidence of that.

09:45:52 25    I think it's broadly accepted.  There may have been some

*OFFICIAL TRANSCRIPT*

09:45:54 1    imprecision in disclosure documents but, you know, nothing that

09:45:58 2    brings us, you know, to a different result.

09:46:01 3            Two points I make.  One I hesitate to make but I

09:46:04 4    think I really have to.  This issue of SASAC ownership, and we

09:46:12 5    heard an eminent counsel only an hour ago talk about the fact

09:46:16 6    that you couldn't raise new matters in reply, so there is a

09:46:19 7    substantial question of waiver here.

09:46:20 8            But beyond that, and I would like spend just a

09:46:23 9    moment on *Dole Foods* because it's not applicable in this

09:46:26 10   situation because what's being read out is the ownership can be

09:46:31 11   either directly by the state or by a political subdivision.  We

09:46:35 12   think worst case, if you looked at SASAC rationally, it's a

09:46:39 13   political subdivision of the PRC, you come to the same result

09:46:43 14   one way or the other.  *Dole Foods* doesn't run contrary to that.

09:46:47 15           If we were going to be an equivalent role to

09:46:52 16   *Dole Foods,* what we would be doing is we would have come in and

09:46:54 17   said, Taishan, BNBM, the whole corporate chain is immune

09:46:58 18   because they are all owned ultimately and controlled by

09:47:01 19   CNBM Group and, by extension, the PRC.

09:47:04 20           That wasn't the argument we made.  We were

09:47:06 21   reasoned in our request that sovereign immunity apply.  We read

09:47:11 22   the statute.  We read the cases and said, we think this is

09:47:15 23   clearly applicable to CNBM Group, but we can't stretch it

09:47:21 24   further down, but that issue of ownership is really a red

09:47:25 25   herring in this context.

**OFFICIAL TRANSCRIPT**

09:47:26 1          So, with that, Your Honor, unless you have

09:47:29 2   questions....

09:47:30 3          THE COURT:  No.  I'm fine.

09:47:32 4          MR. STENGEL:  Thank you very much.

09:47:32 5          THE COURT:  Thank you very much.  I appreciate, Jim.

09:47:34 6          Any rebuttal?  Fred?

09:47:38 7          MR. LONGER:  There is no buyer's remorse here,

09:47:40 8   Your Honor.  As Mr. Stengel mentioned, we have been busy.  A

09:47:45 9   lot has happened since Your Honor's ruling.  In fact,

09:47:48 10  Your Honor's ruling setup an avenue, if you will, where we

09:47:54 11  began settlement discussions.  Those settlement discussions

09:47:59 12  fail.  Then Your Honor ruled on the BNBM/CNBM motions to

09:48:08 13  dismiss, and then Your Honor certified that for an immediate

09:48:14 14  appeal.  The straggler was the FSIA ruling, which was not the

09:48:20 15  straggler, was the seminal opinion.  We're saying let's bring

09:48:24 16  that back, have it all go up.

09:48:26 17          Now is the time.  If not now, when?  What they

09:48:30 18  are saying, and I heard Your Honor saying this, you're going

09:48:33 19  to -- we have been delaying and delaying and delaying.  It's

09:48:37 20  not *we*.  The defendants' strategy from the moment their counsel

09:48:44 21  went over to China to meet with their clients is we will delay

09:48:49 22  these proceedings ad infinitum.  We are almost a decade into

09:48:57 23  this litigation, and they still want to delay the appeal of a

09:49:05 24  fundamental jurisdictional question.  Is this defendant

09:49:08 25  properly in the United States federal system or not?  They want

*OFFICIAL TRANSCRIPT*

09:49:12 1    to keep delaying that.

09:49:14 2          The reality is that a 54(b) judgment could be

09:49:19 3    entered, Your Honor, and we'll just go up on a direct appeal.

09:49:23 4    So why not have it now, certify the matter, and as a practical

09:49:30 5    matter, the Fifth Circuit will resolve all of these questions,

09:49:34 6    and the delay can be avoided?

09:49:39 7          THE COURT:  What do you gain by it, Fred, if you're got

09:49:44 8    jurisdiction over the other part of the alphabet but not the

09:49:47 9    group?

09:49:50 10         MR. LONGER:  We have all of the direction and control

09:49:52 11   that originated at the very top.  All of the documents that we

09:49:59 12   have presented, as Ms. Robertson was talking about, all of

09:50:04 13   those documents are more than relevant.  They are absolutely

09:50:07 14   relevant.

09:50:08 15         They show that this was a deliberate act on the

09:50:15 16   defendants' part, all the way to the corporate parent, which is

09:50:22 17   CNBM Group.  CNBM Group should have -- be heard here in the

09:50:27 18   court.  It should not avoid jurisdiction when there is an

09:50:30 19   intermediary owner, the SASAC, in between it and the PRC, and

09:50:39 20   we think that that is a fundamental question which needs to be

09:50:44 21   resolved at the Circuit.

09:50:46 22         THE COURT:  Okay.  I got it.  I understand.

09:50:48 23         MR. STENGEL:  Your Honor, there is something I have to

09:50:50 24   respond to, which there is this process of conflating what's at

09:50:54 25   issue in terms of control.  The record in this court is devoid

*OFFICIAL TRANSCRIPT*

09:50:58 1    of any indication that CNBM Group had any contact, awareness,

09:51:03 2    or involvement in the sale of allegedly defective drywall in

09:51:08 3    the United States, full stop.

09:51:10 4              There may be issues which we think the PSC

09:51:14 5    misinterprets as to the conduct of the litigation years later.

09:51:19 6    When we start talking about the tort exception or the  , those

09:51:27 7    would require affirmative proof by the PSC to meet the burden

09:51:30 8    that there was involvement by group in the sale of drywall.

09:51:34 9    After 10 years, there is no evidence in this record.

09:51:36 10             Thank you, Your Honor.

09:51:37 11         THE COURT:  Okay.  I got it.  Okay.  I'll take that

09:51:41 12   under advisement.

09:51:42 13             Let's to go the next issue.

09:51:44 14         MR. LONGER:  Thank you, Your Honor.

09:51:45 15         THE COURT:  Thanks, Fred.

16                ^ MOTION 2

17

18                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF LOUISIANA

19

20   ****************************************************************

21   IN RE:  CHINESE-MANUFACTURED
     DRYWALL PRODUCTS
22   LIABILITY LITIGATION

23                      CIVIL DOCKET NO. 09-MD-2047 "L"
                        NEW ORLEANS, LOUISIANA
09:02:40 24             THURSDAY, SEPTEMBER 27, 2018

25
     THIS DOCUMENT RELATES TO
                        *OFFICIAL TRANSCRIPT*

```
1    REF: 11-1395 and 11-1673

2    *****************************************************************

3

4                TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS
               HEARD BEFORE THE HONORABLE ELDON E. FALLON
5                     UNITED STATES DISTRICT JUDGE

6

7    APPEARANCES:

8

9    FOR THE PLAINTIFFS'
     LIAISON COUNSEL:               HERMAN HERMAN KATZ
                                    BY:  RUSS M. HERMAN, ESQUIRE
10                                       LEONARD A. DAVIS, ESQUIRE
                                    820 O'KEEFE AVENUE
11                                  NEW ORLEANS, LA 70113

12

13                                  LEVIN, FISHBEIN, SEDRAN & BERMAN
                                    BY:  FRED S. LONGER, ESQUIRE
14                                       SANDRA L. DUGGAN, ESQUIRE
                                    510 WALNUT STREET, SUITE 500
15                                  PHILADELPHIA, PA 19106

16

17

18

19

20

21

22

23

24

25
```

*OFFICIAL TRANSCRIPT*

1  APPEARANCES CONTINUED:

2

3                                  GAINSBURGH BENJAMIN DAVID
                                   MEUNIER AND WARSHAUER
4                                  BY:  GERALD E. MEUNIER, ESQUIRE
                                   2800 ENERGY CENTRE
5                                  1100 POYDRAS STREET, SUITE 2800
                                   NEW ORLEANS, LA 70163
6

7                                  BARRIOS KINGSDORF & CASTEIX
8                                  BY:  EMMA K. SCHWAB, ESQUIRE
                                   701 POYDRAS STREET, SUITE 3650
9                                  NEW ORLEANS LA 70139

10

11                                 IRPINO LAW FIRM
                                   BY:  PEARL A. ROBERTSON, ESQUIRE
12                                 2216 MAGAZINE STREET
                                   NEW ORLEANS, LA 70130
13

14

15  FOR TAISHAN GYPSUM CO.,
    LTD, AND TAI'AN TAISHAN
    PLASTERBOARD CO., LTD.:    ALSTON & BIRD
16                             BY:  CHRISTINA H. EIKHOFF, ESQUIRE
                               ONE ATLANTIC CENTER
17                             1201 WEST PEACHTREE STREET
                               ATLANTA, GA 30309
18

19
    FOR THE KNAUF
20  LIAISON COUNSEL:           BAKER DONELSON BEARMAN
                               CALDWELL & BERKOWITZ
21                             BY:  KERRY J. MILLER, ESQUIRE
                                    DANIEL S. DYSART, ESQUIRE
22                             201 ST. CHARLES AVENUE, SUITE 3600
                               NEW ORLEANS, LA 70170
23

24

25

                        *OFFICIAL TRANSCRIPT*

1    APPEARANCES CONTINUED:

2

3    FOR THE TAISHAN, BNMB
     ENTITIES AND CNBM ENTITIES
4    LIAISON COUNSEL:                PHELPS DUNBAR
                                     BY:  HARRY ROSENBERG, ESQUIRE
5                                    365 CANAL STREET, SUITE 2000
                                     NEW ORLEANS, LA 70130
6

7

8    CHINA NATIONAL BUILDING
     MATERIALS GROUP CORPORATION
     AND CHINA NATIONAL BUILDING
9    MATERIALS COMPANY LIMITED
     (COLLECTIVELY, "CNBM"):        ORRICK HERRINGTON & SUTCLIFFE
10                                   BY:  JAMES L. STENGEL, ESQUIRE
                                     51 WEST 52ND STREET
11                                   NEW YORK, NY 10019

12

13                                   GORDON, ARATA, MCCOLLAM,
                                     DUPLANTIS & EAGAN
14                                   BY:  EWELL E. EAGAN, JR., ESQUIRE
                                          DONNA P. CURRAULT, ESQUIRE
15                                        ALEX B. ROTHENBERG, ESQUIRE
                                     201 ST. CHARLES AVENUE, 40TH FLOOR
16                                   NEW ORLEANS, LA 70170

17

18
     OFFICIAL COURT REPORTER:        CATHY PEPPER, CRR, RMR, CCR
19                                   CERTIFIED REALTIME REPORTER
                                     CERTIFIED MERIT REPORTER
20                                   500 POYDRAS STREET, ROOM B406
                                     NEW ORLEANS, LA 70130
21                                   (504) 589-7779
                                     Cathy_Pepper@laed.uscourts.gov
22

23    PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.   TRANSCRIPT
      PRODUCED BY COMPUTER.
24

25

                         *OFFICIAL TRANSCRIPT*

**P-R-O-C-E-E-D-I-N-G-S**

THURSDAY, SEPTEMBER 27, 2018

M O R N I N G   S E S S I O N

(COURT CALLED TO ORDER)


THE COURT:  The motion to stay, plaintiffs' motion to stay.  These class actions were filed in this court.  There is also the same class action filed in Virginia, and the same class action filed in Florida.  The Court has now sent the Florida cases back.

The question is what do we do with those Florida cases that appear in this court?  Do we stay those actions and allow Florida to go on or do we dismiss those actions so that Florida can go on?

MS. SCHWAB:  Good morning, Your Honor.  Emma Schwab for plaintiffs.

May it please the Court, plaintiffs are here today on a motion to stay the Florida clams that are included in the Louisiana Amorin complaint before this court because these claims are proceeding in Florida.  We have also filed a motion to stay the nonFlorida claims in the Southern District of Florida in front of Judge Cooke.  That motion is pending.

While CNBM and BNBM argue for dismissal without prejudice, Taishan is silent.  Taishan's motion is silent as to

*OFFICIAL TRANSCRIPT*

09:53:13 1   whether they are requesting dismissal with or without

09:53:16 2   prejudice.

09:53:16 3          Regardless of whether it is with or without,

09:53:19 4   dismissal is not proper.

09:53:20 5          THE COURT:  What are you concerned about?

09:53:22 6          MS. SCHWAB:  These complaints were filed as protective

09:53:26 7   measures for jurisdictional defenses, statute of limitation

09:53:32 8   defenses, and we would like to keep the balance at play here.

09:53:35 9          We think that these -- that other states would

09:53:41 10  have to independently prove jurisdiction without the

09:53:47 11  significant port such as Florida, Louisiana, and Virginia.  We

09:53:54 12  think that the protective measures of keeping the claims in the

09:53:58 13  MDL, not asking Your Honor to deal with them substantively but

09:54:03 14  just keeping them here, would help and would alleviate any

09:54:10 15  issues down the road.

09:54:11 16         THE COURT:  In which way?  Meaning since I've ruled on

09:54:15 17  jurisdiction here, that they did business in Florida,

09:54:24 18  jurisdictionally, since I found that, that if I dismiss them

09:54:31 19  here, you'll be adversely affected in some way in Florida?

09:54:40 20         MS. SCHWAB:  Yes, Your Honor.  That's precisely what

09:54:42 21  we're arguing.

09:54:43 22         Defendants have challenged jurisdiction every

09:54:45 23  step of the way.  If history is any indication, they will stop

09:54:48 24  at nothing, and they will continue to challenge jurisdiction.

09:54:50 25         We think that without having the cases here with

*OFFICIAL TRANSCRIPT*

09:54:53 1   some kind of connexity to the MDL and some kind of connection

09:54:59 2   to the significant ports, that it will prejudice plaintiffs,

09:55:04 3   while a stay of the Florida cases on the MDL docket will have

09:55:09 4   no impact whatever on defendants.

09:55:13 5          THE COURT:  All right.

09:55:15 6          MS. SCHWAB:  So, Your Honor, as I was saying, that

09:55:18 7   defendants have challenged jurisdiction every step of the way.

09:55:21 8   That is no question.  Defendants will never concede

09:55:28 9   jurisdiction.  I think that we can all agree on that, which is

09:55:32 10  all the more reason why the cases should be stayed.

09:55:35 11         Defendants continually blame the plaintiffs for

09:55:38 12  the procedural mess, which is the three Amorin complaints, but

09:55:43 13  it was their repeated misrepresentations and devious conduct

09:55:49 14  which put us in the situation and provoked the need to file the

09:55:51 15  protective actions in the first place.

09:55:53 16         If the Florida cases are dismissed, this court

09:55:55 17  will likely apply the same ruling for other cases that are

09:55:59 18  remanded in the future, and all nonFlorida, nonLouisiana, and

09:56:04 19  nonVirginia claims would essentially have to prove jurisdiction

09:56:10 20  independently of those significant ports once those Amorin

09:56:14 21  complaints are remanded out of the MDL.

09:56:16 22         This would defeat the entire purpose of filing

09:56:18 23  the protective actions to proactively address potential

09:56:24 24  venue-specific personal jurisdiction and statute-of-limitation

09:56:27 25  defenses.

*OFFICIAL TRANSCRIPT*

09:56:29   1               A stay will have -- and I was saying earlier, a

09:56:31   2   stay will have the identical impact on defendants as a

09:56:34   3   dismissal, so it cannot be argued that they would suffer any

09:56:37   4   prejudice if the Florida Amorin claims are stayed, but a

09:56:42   5   dismissal would negligently impact the rights of the Florida

09:56:45   6   claimants without any corresponding benefit to this court and

09:56:48   7   the plaintiffs.

09:56:49   8               A stay will not require defendants to engage in

09:56:53   9   any discovery or motion practice in this court regarding these

09:56:56 10   plaintiffs.  The Florida claims will substantively be removed

09:57:00 11   from the Court's management docket.

09:57:02 12               The Amorin complaints were filed as a protective

09:57:05 13   action, and plaintiffs simply want to keep the balance in play.

09:57:08 14   So, we respectfully request this court to exercise its

09:57:13 15   jurisdiction and stay the Florida Amorin claims and any other

09:57:18 16   prospective claims that are remanded out of the MDL while those

09:57:23 17   claims run their course in other jurisdictions.

09:57:29 18         THE COURT:  What's the disadvantage of staying it?  Why

09:57:37 19   not stay it?  How are you hurt that way?

09:57:42 20         MS. EIKHOFF:  It is clear that you can stay or you can

09:57:45 21   dismiss.  Fifth Circuit law is absolutely clear on that, so it

09:57:49 22   is well within the Court's discretion to make this decision.

09:57:53 23         THE COURT:  What do you get out of dismissal that you

09:57:55 24   don't have out of stay?

09:57:57 25         MS. EIKHOFF:  That eliminates the risk of inconsistent

*OFFICIAL TRANSCRIPT*

09:58:01  1   outcomes.  It also cleans up these cases and provides more

09:58:06  2   simplicity and more clarity as to where these cases are being

09:58:12  3   adjudicated.

09:58:12  4         We're talking about only the Florida claims here.

09:58:14  5   Those are before Judge Cooke.  They are identical to the claims

09:58:19  6   that are sitting here in this court that the PSC is asking to

09:58:22  7   stay.

09:58:23  8         It is entirely unclear to us what the PSC means

09:58:32  9   when they say they want to keep them alive as a protective

09:58:36 10   measure, and I believe that Ms. Schwab just said *to keep the*

09:58:40 11   *balance in play*.  I don't know what that means.

09:58:43 12         THE COURT:  I think what she's saying is that there is

09:58:49 13   an argument that it's the law of case.  If I decided

09:58:51 14   jurisdiction, they can argue that Judge Cooke doesn't have to

09:58:55 15   deal with jurisdiction because the law of the case is that I've

09:58:59 16   already decided the jurisdiction.

09:59:01 17         MS. EIKHOFF:  But that's true, Your Honor, we're not

09:59:03 18   talking about the cases in front of Judge Cooke.  We're not

09:59:07 19   asking you to dismiss Judge Cook's cases.  We're asking you to

09:59:12 20   dismiss from the entirely identical duplicative Louisiana

09:59:18 21   action the cases that Judge Cooke is actively adjudicating with

09:59:25 22   jurisdiction that Taishan is not contesting.

09:59:31 23         So we don't understand why they want to keep

09:59:34 24   these alive, to hold them on ice as, a quote, protective

09:59:40 25   measure.  We can only speculate that they want to keep them

*OFFICIAL TRANSCRIPT*

09:59:43  1    alive so that they can revive them at some point down the road

09:59:48  2    if they don't like what Judge Cooke does.

09:59:53  3         Many federal courts, Your Honor, have said that's

09:59:57  4    improper.  You don't keep duplicative claims on ice in another

10:00:01  5    court to hedge your bets or to keep the balance in play while

10:00:07  6    another federal court is actively adjudicating them with

10:00:09  7    jurisdiction.

10:00:10  8         Now, what I want to remind the Court that this is

10:00:13  9    oral argument on the PSC's motion to stay, which is document

10:00:16 10    Number 21639, but there are competing motions here, Your Honor,

10:00:23 11    because Taishan did move to dismiss is the same claims, and

10:00:26 12    that's Document Number 21729.

10:00:29 13         Your Honor, we hear it every month.  We see it in

10:00:33 14    every brief.  They accuse us of delay, delay, delay, but here,

10:00:38 15    we're trying to reach resolution, finality, simplicity, clean

10:00:46 16    up these dockets.  Judge Cooke has got the Florida claims.  We

10:00:50 17    are going forward on a discovery schedule and a full scheduling

10:00:56 18    order that will get these cases to trial within the year.

10:01:01 19         So what we're trying to do is trying to avoid the

10:01:04 20    delay of having lingering identical claims hanging out for some

10:01:10 21    mysterious protective purposes, and that's why we believe it's

10:01:15 22    appropriate to dismiss these claims, and I must make clear,

10:01:19 23    without prejudice.

10:01:21 24         Your Honor, the PSC's brief said that the

10:01:25 25    defendants are seeking to dismiss with prejudice.  That is not

*OFFICIAL TRANSCRIPT*

10:01:29  1   reflected in anything that we've filed, and that is, in fact,

10:01:32  2   not what we are doing.

10:01:35  3          THE COURT:  Okay.  I got it.  I understand.

10:01:38  4              Any rebuttal.

10:01:43  5          MS. SCHWAB:  Yes, Your Honor, very briefly.

10:01:48  6              Ms. Eikhoff mentioned that she was or that

10:01:52  7   Taishan was worried about inconsistent outcomes, and that's the

10:01:55  8   reason why the cases should be dismissed rather than stay.  As

10:01:58  9   I stated earlier, we are not seeking -- we are not asking this

10:02:02 10   court to revisit this case at a later date or in the future,

10:02:07 11   and that is not what our intention is.

10:02:10 12              They also -- Ms. Eikhoff also mentioned that

10:02:15 13   Taishan is not contesting jurisdiction, which I believe that

10:02:19 14   is -- that we disagree with as, just whenever Bristol-Myers

10:02:26 15   came out, they were very quick to file another challenge to

10:02:30 16   Your Honor's jurisdictional rulings.

10:02:33 17              She also mentioned that they are trying to avoid

10:02:37 18   delay and clean up the docket, but, yet, they are trying to

10:02:41 19   unravel and start from scratch in the Florida proceedings.

10:02:44 20              So, I believe that in order to keep this all in

10:02:50 21   line and to keep the balance at play that these cases should be

10:02:53 22   stayed as opposed to dismissed.

10:02:55 23          THE COURT:  Okay.  Thank you.  I got it.

10:02:58 24              One thing that I'm trying to do for you folks,

10:03:02 25   both sides, I'm sending these cases back, but I'm sending them

*OFFICIAL TRANSCRIPT*

10:03:09  1    back in waves so that I can keep involved in the case if you

10:03:23  2    need me for some reason, and that's comes into my thinking,

10:03:28  3    too.

10:03:29  4         I've been with the case, been with you all now

10:03:34  5    for about a decade, and while I'm happy to send them out, I do

10:03:41  6    want to be available for you if you need me.  I'm trying to

10:03:44  7    figure out how I can do that for you and at the same time not

10:03:49  8    have a lot of duplicity in the cases, and that's kind of a

10:03:55  9    challenge in these types of cases.

10:04:01  10        Frankly, it's a discussion point that a lot of my

10:04:06  11   colleagues have.  The opportunity to get rid of a case, get rid

10:04:11  12   of the case immediately, and I can understand that.  I feel if

10:04:18  13   I could be of help to you all or be of service, I want to be

10:04:23  14   able to do that, and I'm trying to figure out how to do that

10:04:26  15   without having a problem.

10:04:28  16        I understand both sides of it.  I'll take them

10:04:30  17   under advisement, and I'll be coming out with a ruling shortly.

10:04:34  18   Thank you very much.

10:04:34  19        VOICES:  Thank you, Your Honor.

10:04:36  20        MR. HERMAN:  Thank you, Your Honor.

10:04:36  21        May it please the Court, may Mr. Davis and I see

10:04:39  22   you about a matter that has -- nothing to with drywall?  I've

10:04:43  23   discussed it with Harry.

10:04:44  24        THE COURT:  Harry, do you have any issue there?

10:04:46  25        MR. ROSENBERG:  I've discussed that matter with

**OFFICIAL TRANSCRIPT**

10:04:48 1  Mr. Herman and Mr. Davis, and we do not have an objection.

10:04:54 2          THE COURT:  Okay.  It's another case, as I understand.

10:04:57 3  I've got a couple of these.

4          (WHEREUPON, at 10:04 a.m., the proceedings were

5  concluded.)

6                          *    *    *

7

8

9

10

11                  REPORTER'S CERTIFICATE

12

13          I, Cathy Pepper, Certified Realtime Reporter, Registered

14  Merit Reporter, Certified Court Reporter in and for the State

15  of Louisiana, Official Court Reporter for the United States

16  District Court, Eastern District of Louisiana, do hereby

17  certify that the foregoing is a true and correct transcript to

18  the best of my ability and understanding from the record of the

19  proceedings in the above-entitled and numbered matter.

20

21                          *s/Cathy Pepper*
                          _____

22                          Cathy Pepper, CRR, RMR, CCR
                          Certified Realtime Reporter
23                          Registered Merit Reporter
                          Official Court Reporter
24                          United States District Court
                          Cathy_Pepper@laed.uscourts.gov
25

                   *OFFICIAL  TRANSCRIPT*