UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION<br><br>**THIS DOCUMENT RELATES TO:**<br><br>*Abner v. Taishan Gypsum Co.,* **No. 11-3094 (E.D. La.).** | MDL No. 2:09-md-2047<br><br>SECTION L<br><br>JUDGE ELDON E. FALLON<br><br>MAGISTRATE JUDGE JOSEPH C. WILKINSON, JR. |

**REPLY IN SUPPORT OF DEFENDANTS BNBM PLC AND BNBM GROUP'S
MOTION TO DISMISS PURSUANT TO RULES 12(b)(2), 12(b)(5), 12(b)(6), 8, AND 9(b)**

Defendants Beijing New Building Materials Public Limited Company ("BNBM PLC") and Beijing New Building Material (Group) Co., Ltd. ("BNBM Group") (collectively, the "BNBM Entities") respectfully submit this reply to the Plaintiffs' Steering Committee's Response in Opposition ("Opposition") (Rec. Doc. 21766) to Defendants' Motion to Dismiss Pursuant to Rules 12(b)(2), 12(b)(5), 12(b)(6), 8 and 9(b) ("Motion") (Rec. Doc. 19998).

## <u>INTRODUCTION</u>

Plaintiffs have failed to establish jurisdiction over the BNBM Entities in California. They concede there is no jurisdiction over BNBM Group.  They adduce zero evidence that BNBM PLC purposefully directed Taishan's contacts with California.  Plaintiffs' alter ego and agency theories, which they fail to adequately demonstrate, fail under controlling Chinese law and could not even be brought under California law, if it were to apply, because, as Plaintiffs admit, Taishan is not subject to general jurisdiction in California.

Further, Plaintiffs acknowledge that the non-California Plaintiffs' claims in *Abner* are better addressed in the *Amorin* actions.  *Abner* should be culled to the three California Plaintiffs.

The California Plaintiffs, however, sat on their claims from the time they occupied their houses in 2007 to when they brought suit in 2011.  All the limitations periods have run. Plaintiffs cannot rely on California's discovery rule because they failed to demonstrate sufficient facts that tolling applies.  Nor does the filing of *Gross* toll their claims because *Gross* did not provide sufficient notice of the number and identities of putative plaintiffs to trigger class action tolling under California law.

Even if Plaintiffs could surmount these obstacles, they have failed to adequately plead any of their claims.  Accordingly, for the reasons explained in greater detail in the Motion and set forth below, the claims against the BNBM Entities in *Abner* should be dismissed.

## ARGUMENT

**I.     THERE IS NO JURISDICTION OVER BNBM PLC AND BNBM GROUP.**

The jurisdictional issue before this Court has been significantly narrowed in the wake of the PSC's filing.  The PSC now concedes by waiver that there is no jurisdiction—general or specific—over BNBM Group.  Opposition ("Opp.") at 2 (stating that the PSC will not reargue personal jurisdiction over BNBM Group given the Court's prior rulings).  Likewise, it presents no argument for jurisdiction—either general or specific—over BNBM PLC for its direct sales. Even as to BNBM PLC, the PSC capitulates as to non-California plaintiffs, stating that their claims should be addressed in the context of the *Amorin* action.  And it gives up any contention that BNBM America's actions supply a basis for invoking jurisdiction over BNBM PLC.  Each of these grounds is thus waived.  *See, e.g.*, *Jones v. Jefferson Parish*, No. 12–2191, 2013 WL 871539, at *3 (E.D. La. Mar. 8, 2013) (concluding that plaintiff's "failure to brief this issue [in response to defendants' argument] waives any argument he might have in opposition to it"). Accordingly, the only issue before this Court is whether Taishan's alleged contacts may be imputed to BNBM PLC as a means of subjecting it to jurisdiction.  The answer is no.

To make that determination, this Court must apply the law of the transferor courts, including their choice of law rules.  *In re Vioxx Prod. Liab. Litig*., 478 F. Supp. 2d 897, 903 (E.D. La. 2007); *In re Mastercard Int'l, Inc. Internet Gambling Litig*., No. 00-cv-0661, 2004 WL 287344, at *2 (E.D. La. Feb. 12, 2004).  Under California's choice of law rules, Chinese law applies because BNBM PLC is incorporated in China.  *See, e.g., Schlumberger Logelco Inc. v. Morgan Equip. Co*., No. 94-cv-1776, 1996 WL 251951, at *3 (N.D. Cal. May 3, 1996) (finding, by applying California's government interest test, that "the law of Austria, as the state of incorporation, governs plaintiffs' alter ego claim"); *see also JBR, Inc. v. Cafe Don Paco, Inc*.,

No. 12-cv-02377, 2014 WL 5034640, at *8 (N.D. Cal. Aug. 25, 2014) ("To determine whether a shareholder is the alter ego of a corporate entity in a diversity action, federal courts apply the law of the corporation's forum state.").

**A.**     **Chinese Law Precludes Imputing Taishan's Contacts to BNBM PLC.**

As set forth elsewhere, and incorporated herein in full, the only basis for imputing contacts under Chinese law is through a veil-piercing theory. Rec. Doc. 20043-2 at 6-20 (incorporating by reference). Just as there can be no veil-piercing as to other entities, there can be no veil-piercing as to BNBM PLC under Chinese law. *Id.* Corporate veil-piercing under Chinese law requires that the plaintiff demonstrate the shareholder has "abuse[d] the independent status of the company as a legal person or the limited liability of shareholders" in order to "evade [] debts," and thereby "seriously damaged the interests of the creditors of the company." *Id.* at n.14. And this Court has already recognized that "Plaintiffs have not demonstrated that Taishan's separate existence was maintained for an illegal or improper purpose." Rec. Doc. 20739 at 54. Accordingly, there is no basis for imputation under Chinese alter ego law.

Nor does Chinese law allow for the use of agency principles, which the PSC now invokes (albeit on state grounds only), to impute jurisdictional contacts or otherwise subject a party to exposure based on an agency-driven control theory. *See* Ex. 1 (Declaration of Donald Clarke). Not only does the PSC forgo any discussion or application of Chinese law (notwithstanding BNBM PLC's arguments and the Court's prior conclusion that "Chinese law applies"—Rec. Doc. 20739 at 41; *see also* Motion ("Mot.") at 15-16), the PSC's entire agency theory is predicated upon control and thus does not suffice under Chinese agency law. *See, e.g.*, Opp. at 9-10.

**B.** **California Law Also Precludes Imputing Taishan's Contacts to BNBM PLC.**

Because the PSC has repeatedly misconstrued Defendants' arguments opposing a state-law-based jurisdictional approach, the BNBM Entities want to be clear:  They do not concede that the test under Chinese and California law is the same.  Despite differences, the outcome remains the same; BNBM PLC should be dismissed, even under the application of California law, as set forth below.

**1.** **Neither Alter Ego Nor Agency Supply a Basis for Imputing Taishan's Contacts to BNBM PLC and There Is No Evidence that BNBM PLC Deliberately Directed Taishan's Activities in California.**

The PSC errs in attempting to impute Taishan's contacts to BNBM PLC for jurisdictional purposes under California alter ego or agency principles because Taishan is not subject to general jurisdiction in California but rather only specific jurisdiction.  *See* Opp. at 8 & 10 n.23 ("general jurisdiction . . . is inapplicable here, as the state of California was specifically targeted by Taishan, where the Plaintiffs' homes are located, and therefore specific jurisdiction exists").  Such theories of imputation are permissible only where there is general jurisdiction in California over the subsidiary.  *Strasner v. Touchstone Wireless Repair & Logistics, LP*, 210 Cal. Rptr. 3d 16, 22 (Cal. Ct. App. 2016) ("[A] plaintiff may impute minimum contacts of a *California subsidiary* to a nonresident parent through theories of alter ego or agency" to establish general jurisdiction over a foreign defendant.) (emphasis added); *BBA Aviation PLC v. Superior Court*, 117 Cal. Rptr. 3d 914, 921 (Cal. Ct. App. 2010) ("General jurisdiction over a *local subsidiary* extends to the foreign parent under an alter ego theory, general principles of agency, or under the representative services doctrine, a narrow species of agency.") (emphasis added).  Stated conversely, jurisdictional alter ego and agency arguments do not even get off the ground when the subsidiary is only subject to specific jurisdiction in California.  *HealthMarkets, Inc. v.*

*Superior Court*, 90 Cal. Rptr. 3d 527, 535 (Cal. Ct. App. 2009).[1]  Because Taishan is not subject to general jurisdiction in California, under California law Plaintiffs may not impute its contacts to BNBM PLC under alter ego and agency theories.

Rather, to establish specific jurisdiction over BNBM PLC in California, the PSC "must demonstrate that "(1) [BNBM PLC] has purposefully availed itself of forum benefits with respect to the matter in controversy; (2) the controversy is substantially related to or arises out of [BNBM PLC's] contacts with the forum; and (3) the assertion of jurisdiction would comport with fair play and justice." *BBA Aviation*, 117 Cal. Rptr. 3d at 436.  "A parent company purposefully avails itself of forum benefits through the activities of its subsidiary, as required to justify the exercise of specific personal jurisdiction, *if and only if* the parent deliberately directs the subsidiary's activities in, or having a substantial connection with, the forum state." *Id.* (quoting *HealthMarkets*, 90 Cal. Rptr. 3d at 534-35) (emphasis added).  "[P]urposeful availment by a parent company through the acts of its subsidiary must be evaluated under the rule that we have stated." *HealthMarkets*, 90 Cal. Rptr. 3d at 535.  Moreover, courts "must examine the defendant's contacts with the forum at the time of the events underlying the dispute when determining whether they have jurisdiction"—"not at the time of the suit." *Steel v. United States*, 813 F.2d 1545, 1549 (9th Cir. 1987); *see also Strasner*, 210 Cal. Rptr. 3d at 25. Considering evidence of contacts or control post-dating the events underlying the dispute is a due process violation, as it eliminates the requisite "fair warning that a particular activity may subject

---

[1] "[R]eliance on state substantive law of agency and alter ego to determine the constitutional limits of specific personal jurisdiction is unnecessary and is an imprecise substitute for the appropriate jurisdictional question.  The proper jurisdictional question is not whether the defendant can be liable for the acts of another person or entity under state substantive law, but whether the defendant has purposefully directed its activities at the forum state by causing a separate person or entity to engage in forum contacts." *HealthMarkets*, 90 Cal. Rptr. 3d at 535.

[a party] to the jurisdiction of a foreign sovereign." *Steel*, 813 F.2d at 1549 (internal punctuation and citations omitted).

The PSC's temporally undifferentiated evidence of BNBM PLC's supposed general control over Taishan misses the mark entirely. *See* Opp. at 11-13. The only relevant evidence for jurisdictional purposes concerns BNBM PLC's purported purposeful direction of Taishan's California-aimed conduct. *See HealthMarkets*, 90 Cal. Rptr. 3d at 530 ("Absent evidence that [the parent company] purposefully directed the activities of [its subsidiary] *toward this state*, we conclude that there is no basis for personal jurisdiction over [the parent company].") (emphasis added). The PSC fails to marshal any such evidence, and, thus, fails to meet its burden to establish that BNBM PLC purposefully availed itself of the benefits of conducting business in California such that the court has specific jurisdiction over BNBM PLC.

### 2.     Alternatively, Plaintiffs' Alter Ego and Agency Theories Fail.

Even if California law permitted Plaintiffs to establish specific jurisdiction over BNBM PLC by imputing Taishan's contacts through alter ego or agency theories, Plaintiffs fail to make the requisite showing under either theory.

### a.     Taishan Was Not BNBM PLC's Alter Ego.

In California, alter ego is "an extreme remedy" that is "sparingly used." *Sonora Diamond Corp. v. Superior Court*, 99 Cal. Rptr. 2d 824, 836 (Cal. Ct. App. 2000). Courts will disregard the presumption of corporate separateness on an alter ego theory only when "the separate personalities of the corporation and the shareholder do not in reality exist" and "when the corporate form is used to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose." *Id.*; *see also* Mot. at 16.

Not only have Plaintiffs failed to demonstrate the requisite unity of interest between

BNBM PLC and Taishan, they do not even attempt demonstrate that BNBM PLC abused the corporate form of Taishan for any improper purpose. *See* Opp. at 8-9. Indeed, the entirety of the PSC's imputation argument concerns control. Opp. at 8-13. The PSC's argument thus ignores precisely what this Court has already found: an absence of evidence that "Taishan's separate existence was maintained for an illegal or improper purpose." Rec. Doc. 20739 at 54, 64. Therefore, Taishan's contacts cannot be imputed to BNBM PLC in California under an alter ego theory.

### b.      Taishan Was Not BNBM PLC's Agent.

As the PSC recognizes (Opp. at 9-10), in California only "[i]f a parent corporation exercises such a degree of control over its subsidiary corporation that the subsidiary can legitimately be described as only a means through which the parents acts, or nothing more than an incorporated department of the parent, the subsidiary will be deemed to be the agent of the parent in the forum state and jurisdiction will extend to the parent." *Sonora Diamond Corp.*, 99 Cal. Rptr. 2d at 838. "The nature of the control . . . must reflect the parent's *purposeful disregard* of the subsidiary's independent corporate existence." *Id.* (emphasis added). "As a practical matter, the parent must be shown to have moved beyond the establishment of general policy and direction for the subsidiary and in effect taken over performance of the subsidiary's *day-to-day* operations in carrying out that policy." *Id.* at 839 (emphasis in original).

Plaintiffs fail to demonstrate the requisite control by BNBM PLC over Taishan's performance of its day-to-day operations to establish jurisdiction in California under an agency theory. Plaintiffs' allegations that BNBM PLC "controlled Taishan's ability to construct plants" and produce drywall in China are irrelevant to Taishan's export of drywall to California and do not demonstrate any control over day-to-day operations. *See* Opp. at 11. Plaintiffs' allegation

that BNBM PLC had Taishan "change its business registration to include export of drywall" to the United States, *id.*, might indicate some purported direction to Taishan but "direction" is insufficient to establish agency under California law. *Sonora Diamond Corp.*, 99 Cal. Rptr. 2d at 839. Even the PSC's reference to the Court's analyses under Florida and Virginia law fails to redeem its agency argument. *See* Opp. at 12. Neither direction of production requirements, issuance of safety codes, nor oversight by directors of annual production and operation plans suffices to demonstrate that BNBM PLC has "in effect taken over performance of Taishan's *day-to-day* operations in carrying out" such policies or direction. *Sonora Diamond Corp.*, 99 Cal. Rptr. 2d at 839. Therefore, Taishan's contacts cannot be imputed to BNBM PLC in California under an agency theory.

## II.    PLAINTIFFS' DUPLICATIVE CLAIMS SHOULD BE DISMISSED.

As the PSC admits, and the BNBM Entities agree, the "claims of Plaintiffs outside of California . . . are more appropriately addressed in connection with ongoing proceedings involving the *Amorin* actions." Opp. at 3 n.4. The PSC further acknowledges that the only reason "this action was filed in California [is] to preserve personal jurisdiction claims against the Defendants because certain California plaintiffs were [allegedly] injured there." *Id.* at 28. As Defendants have argued elsewhere and incorporate herein by reference, *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017), dictates that these non-resident plaintiffs' claims be dismissed because there has been no showing that any of their particular causes of action arise out of BNBM PLC's (or even Taishan's) purported contacts with California. *See also* Mot. at 21-22.

The PSC's only argument to the contrary—a hypothetical risk of prejudice due to jurisdictional uncertainty in the other fora—is irrelevant because the absence of jurisdiction in

another forum does not supply a basis for creating jurisdiction elsewhere.  *See* Opp. at 28-29.
The PSC's cases do not prove otherwise.  Rather, they all presume jurisdiction exists in the
second-filed forum and counsel against dismissal with prejudice in such circumstances in the
event the first-filed forum does not have jurisdiction.  Opp. 28-29 (citing cases).  Either a forum
has jurisdiction or it does not.  At a minimum, the PSC's cases affirmatively support dismissal
*without prejudice*.  The PSC makes no argument against such an outcome.

## III.   PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTES OF LIMITATIONS.

Plaintiffs' claims, which all have limitations periods of four years or less, are time-barred.
*See* Mot. at 36-37.  The California Plaintiffs allege that they moved into their houses in October
and November 2007 after Taishan drywall was allegedly installed during construction in 2006 or
2007.  *See* Opp. at 6-7 & n.7 (citing Plaintiff Profile Form of Huy T. Ngo at 3 (Rec. Doc. 21766-
5) (attesting to move-in date of November 2007); Plaintiff Profile Form of No Thi La at 3 (Rec.
Doc. 21766-6) (attesting to move-in date of November 2007); Plaintiff Profile Form of Cindy
Quan at 3 (Rec. Doc. 21766-7) (attesting to move-in date of October 2007)).  Yet the California
Plaintiffs waited until more than four years had passed to file their claims on November 18,
2011.  The statutes of limitations have all run and the claims must be dismissed.

### A.      California's Discovery Rule Did Not Toll Plaintiffs' Claims.

The PSC fails to properly invoke California's discovery rule to delay the accrual of the
claims.  In California, "[t]he discovery rule only delays accrual until the plaintiff has, or should
have, inquiry notice of the cause of action."  *Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914,
920 (Cal. 2005).  Under the discovery rule, "plaintiffs are charged with presumptive knowledge
of an injury if they have information of circumstances to put them on inquiry or if they have the
opportunity to obtain knowledge from sources open to their investigation."  *Id.* (internal

punctuation omitted).  "[P]laintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation."  *Id.*  "[T]he statute of limitations begins to run when the plaintiff has reason to suspect an injury and some wrongful cause, unless the plaintiff *pleads and proves* that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action."  *Id.* (emphasis added).

The PSC admits that Plaintiffs must, before any tolling applies to their claims, prove "(1) the time and manner of discovery and (2) the inability [to] have made earlier discovery despite reasonable diligence."  Opp. at 24-25 (citing *Darringer v. Intuitive Surgical, Inc.*, 2015 WL 4623935, at *4 (N.D. Cal. Aug. 3, 2015)).  Plaintiffs failed to prove either.  Plaintiffs allege no facts about when and how they discovered the alleged defects.  The three California Plaintiffs, who are not acting in a representative capacity, certainly could have and should have pled such facts but utterly failed to do so.  Moreover, Plaintiffs were on inquiry notice from the time they occupied their houses.  They allege that the Taishan drywall releases sulfur compounds that "cause rapid sulfidation and damage to personal property."  Compl. ¶¶ 118, 122.  And this Court has determined that "[t]he sulfur gases released by this Chinese drywall cause offending odors in homes, making them hard if not impossible to live in . . . Rec. Doc. 20741 at 13.  Plaintiffs do not, and cannot, explain how ignoring such offensive odors in their homes, the rapid sulfidation occurring around them, and the damage to their personal property constitutes the reasonably diligent investigation required to delay accrual under California's discovery rule.

The PSC misapprehends the law in arguing that Plaintiffs did not understand whether the offensive odors emanated from defective drywall or defective air conditioning.  Opp. at 24.  The limitations period begins "when the plaintiff has reason to *suspect* an injury and *some* wrongful

cause." *Fox*, 110 P.3d at 920 (emphasis added).  Nor is it relevant that Plaintiffs were not immediately aware of the identity of the drywall manufacturer.  *See* Opp. at 24.  "The discovery rule . . . allows accrual of the cause of action even if the plaintiff does not have reason to suspect the defendant's identity . . . . because the identity of the defendant is not an element of a cause of action."  *Fox*, 110 P.3d at 920.

The PSC has also failed to show that any "defendant, through fraud or concealment, attempt[ed] to prevent the plaintiff from bringing a cause of action."  Opp. at 22 (citing *Fox*, 110 P.3d at 924).  Instead, the PSC argues that events occurring ***after*** the creation of the MDL somehow precluded the instant Plaintiffs from bringing similar actions.  *Id.* at 22-23.  It is nonsensical to assert that certain Defendants' conduct in the MDL litigation somehow prevented the *Abner* Plaintiffs from bringing their claims.  Many other plaintiffs filed prior to the *Abner* Plaintiffs.  Without having identified any impediment unique to *Abner* property owners and residents that did not confront those plaintiffs who filed earlier, Plaintiffs cannot reasonably contend Defendants' actions somehow hampered them and only them from timely filing suit.

**B.**  **The Filing of *Gross* Did Not Toll Plaintiffs' Claims.**

In its argument that Plaintiffs' claims were tolled under *American Pipe*, the PSC applies the wrong law.  *See* Opp. at 25-26.  Instead, because *Gross* is based on ***diversity*** jurisdiction, any class action tolling depends on the law of the state in which the putative class members filed their own action, which here in *Abner* is California.  *See In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 2d 897, 907-08 (E.D. La. 2007); *see also Vaught v. Showa Denko, K.K.*, 107 F.3d 1137, 1144 (5th Cir. 1997).

California recognizes a narrower version of class action tolling than *American Pipe*.  *See Jolly v. Eli Lilly & Co.*, 751 P.2d 923, 935-38 (Cal. 1988) (determining that tolling must satisfy

the competing policy considerations of "protecting the efficiency and economy of litigation and protecting the defendant from unfair claims").  In *Jolly*, the California Supreme Court recognized that class action tolling is inappropriate if the proposed class does not provide sufficient notice to the defendants "of the number and generic identities of the potential plaintiffs who may participate in the judgment."  *Id.* at 935-36 (quoting *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554-55 (1974)).  The potential plaintiffs must be "limited to a set number from a specific, clearly defined area."  *Perkin v. San Diego Gas & Elec. Co.*, 170 Cal. Rptr. 3d 335, 344, 347 (Cal. Ct. App. 2014) (holding that tolling did not apply because the proposed class's broad inclusion of "any resident of California whose property was somehow damaged by the Witch fire" did not give the defendant adequate notice of the "number and generic identities of the potential plaintiffs"); *Becker v. McMillin Const. Co.*, 277 Cal. Rptr. 491, 496 (Cal. Ct. App. 1991) (defendant was reasonably put on notice as to the number and "generic identity" of potential plaintiffs by a proposed class limited to "a certain number of homeowners in [a] specific subdivision").

Contrary to the PSC's contention (Opp. at 26), the *Gross* complaint provides no basis for class action tolling because it did not provide Defendants with the "number and generic identities of the potential plaintiffs."  *See Perkin*, 170 Cal. Rptr. 3d at 347 (quoting *Am. Pipe*, 414 U.S. at 555).  The proposed class in *Gross* included "All owners and landlords of real properties located in the United States containing defective Chinese drywall."  Complaint at ¶ 191, *Gross v. Knauf Gips KG*, No. 09-6690 (E.D. La. Oct. 7, 2009), ECF No. 1; Class Action Complaint at ¶ 226, *Gross v. Knauf Gips KG*, No. 09-6690 (E.D. La. Oct. 19, 2009), ECF No. 366.  This sweeping description of putative plaintiffs provided even less notice to Defendants of the number and identities of such plaintiffs than the proposed class description that the *Perkin* court concluded

could not support class action tolling due to inadequate notice.  *See Perkin*, 170 Cal. Rptr. 3d at

346 (purported class included "all persons and entities who owned property destroyed or

damaged by the Witch ... fire in the State of California").  Therefore, the filing of *Gross* provides

no tolling relief to Plaintiffs here who have "slept on [their] rights."  *Jolly*, 751 P.2d at 935

(quoting *Am. Pipe*, 414 U.S. at 554-55).

## IV.   PLAINTIFFS FAILED TO SUFFICIENTLY STATE A CLAIM FOR RELIEF.

### A.   <u>Plaintiffs Lack Standing to Bring Their Claims Against the BNBM Entities.</u>

Plaintiffs' claims against the BNBM Entities must be dismissed because they have not

sufficiently alleged any injury attributable to the BNBM Entities.  Mot. at 22-25.  The PSC made

no attempt in its Opposition to argue that the BNBM Entities directly caused Plaintiffs' alleged

injuries or that the corporate veil can be pierced for purposes of imposing liability between

related corporations.  *See* Rec. Doc. 20739 at 39-40 (explaining that "the Court will address the

parties' arguments regarding corporate veil piercing for the purposes of liability if and when such

a determination becomes necessary").  Having failed to respond to the BNBM Entities'

argument, the PSC has waived any opposition to it and, thus, their claims against the BNBM

Entities must be dismissed for lack of standing.  *See, e.g.*, *Jones*, 2013 WL 871539, at *3

(dismissing claims with prejudice because plaintiff's "failure to brief this issue waives any

argument he might have in opposition to it"); *In re Deepwater Horizon*, MDL No. 2179, 2011

WL 4829905, at *3 n.8 (E.D. La. Oct. 12, 2011) (dismissing claims with prejudice where MDL

claimants failed to respond to defendants' arguments).

### B.   <u>Plaintiffs' Claims Are Inadequately Pled Without the Requisite Specificity.</u>

Plaintiffs' claims against the BNBM Entities must also be dismissed because they have

not sufficiently specified the basis of their claims against the BNBM Entities but instead have

lumped all Defendants together.  Mot. at 25-26.  The PSC waived any opposition to this argument by failing to respond in its Opposition.  *See, e.g.*, *Jones*, 2013 WL 871539, at *3; *In re Deepwater Horizon*, 2011 WL 4829905, at *3 n.8.  The PSC's single, conclusory sentence asserting that the BNBM Entities "are being held responsible based upon the [alleged] agency relationship" with Taishan (Opp. at 15-16) is insufficient effort to preserve any such argument. *See United States v. Brown*, 261 F. App'x 810, 811 (5th Cir. 2008) (concluding that "one sentence" in appellant's opposition was "not sufficient to preserve his … argument … because Brown cited no cases in support of his assertion, made no attempt to apply the facts of his case to the law, and did not otherwise explain" his contention).  Therefore, Plaintiffs' claims against the BNBM entities must be dismissed for failing to satisfy the minimum pleading standard.

### C.      Plaintiffs Concede That Certain Claims Are Improper.

The PSC has conceded that several of Plaintiffs' claims are improper and, therefore, must be dismissed, by failing to respond in its Opposition to the BNBM Entities' arguments that these claims are inadequately pled.  *See, e.g.*, *Jones*, 2013 WL 871539, at *3; *In re Deepwater Horizon*, 2011 WL 4829905, at *3 n.8.  Specifically, the PSC has conceded that the following claims must be dismissed:

- Count IV regarding breach of express warranty (Mot. at 31-32);

- Counts V and VI -- Louisiana statutory claims (Mot. at 26-27);

- Count IX regarding consumer protection acts of North Carolina, Texas, and Mississippi (Mot. at 28); and

- Count IX regarding consumer protection acts of Louisiana, Alabama, Florida, and Virginia (Mot. at 28-30).

### D.      Plaintiffs Failed to Adequately Plead California Statutory Claims.

Plaintiffs' claims against the BNBM Entities under the California Unfair Competition

Law ("UCL") and the California Consumer Legal Remedies Act ("CLRA") in Count IX must be dismissed because Plaintiffs failed to plead sufficiently particularized allegations against the BNBM Entities.  Mot. at 29-30.  The PSC concedes, by failing to respond to the BNBM Entities' argument, that Plaintiffs' "knowing misrepresentation" claim fails to meet the requisite pleading standard and, thus, must be dismissed.  *See, e.g.*, *Jones*, 2013 WL 871539, at *3; *In re Deepwater Horizon*, 2011 WL 4829905, at *3 n.8.  The PSC argues, however, that Plaintiffs' burden to plead their "failure to disclose" claim "is looked at a little differently."  Opp. at 14.

The PSC relies on a California federal district court decision that proposes that a plaintiff may plead a failure to disclose claim under the UCL and the CLRA by alleging, subject to the heightened pleading standards of Rule 9(b), either (1) a fiduciary relationship between the plaintiff and the defendant, (2) that "the defendant had exclusive knowledge of material facts not known to the plaintiff," (3) that "the defendant actively conceals a material fact from the plaintiff," or (4) that "the defendant makes partial representations but also suppresses some material fact."  *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1095, 1098-99 (N.D. Cal. 2007).[2]  The PSC contends that Plaintiffs allege the third scenario, that Defendants actively concealed from Plaintiffs material facts concerning the safety of the drywall.  Opp. at 15.  *Falk* further instructs that a claim for active concealment has five elements, including that "the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff."  *Falk*, 496 F. Supp. 2d at 1097.  The plaintiffs in *Falk* successfully pleaded active concealment with specific factual allegations that suggested intentional "concealment of a

---

[2] The BNBM Entities reserve their rights as to the validity of *Falk*.  *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1142 (9th Cir. 2012) (examining without applying *Falk*); *Buller v. Sutter Health*, 74 Cal. Rptr. 3d 47, 52 n.3 (Cal. Ct. App. 2008) (disagreeing that *Falk* sets out the correct test for a failure to disclose claim).

systematic problem" such as allegations that the manufacturer received customer complaints but never notified any other customers and allegations that it replaced broken products with products of the same model that were equally defective.  *Id.*  Here, to the contrary, Plaintiffs pled **no** specific factual allegations suggesting active concealment but only conclusory allegations that do not satisfy Rule 9(b).  *See* Opp. at 15.   Thus, Plaintiffs' claims under the UCL and the CLRA must be dismissed.

### E.   Plaintiffs Failed to Adequately Plead Breach of Implied Warranty.

Plaintiffs' claims against the BNBM Entities for breach of implied warranty in Count IV must be dismissed because Plaintiffs have not adequately pled vertical privity of contract with the BNBM Entities or that they were third-party beneficiaries of a contract with the BNBM Entities.  Mot. at 32-33.  The PSC's invocation of California's Song-Bervely Act is not well taken.  *See* Opp. at 16.  The sale of drywall to a builder for the construction of houses is outside the purview of that statute, which applies only to the "sale of consumer goods that are sold at retail in this state."  Cal. Civ. Code § 1792; *see also* Cal. Civ. Code § 1791(a) (defining "consumer goods" under the Song-Bervely Act); *Atkinson v. Elk Corp.*, 135 Cal. Rptr. 2d 433, 446 & n.17 (Cal. Ct. App. 2003) (holding that roof shingles and other buildings materials are not "consumer goods" under the Song-Bervely Act).

The PSC's argument that Plaintiffs are in vertical privity with the BNBM Entities through "the actions of their agent Taishan" is nonsensical and contrary to California law.  *See* Opp. at 17.  First, even if Taishan were the BNBM Entities' agent, Plaintiffs do not allege that the BNBM Entities held any contract in the distribution chain of the Taishan drywall to Plaintiffs' houses.  Second, the PSC's argument that there was vertical privity between Plaintiffs and Taishan fails.  With respect to general implied warranty claims in California, "[a] buyer and

seller stand in privity if they are in adjoining links of the distribution chain" and so "an end consumer . . . who buys from a retailer is ***not*** in privity with a manufacturer." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (emphasis added).  The PSC's assertion that a manufacturer can be in vertical privity with a consumer applies only to claims under the Song-Beverly Act, which, as explained above, is inapplicable here.  *See* Opp. at 17 (citing *Yoon v. Subaru of Am., Inc.*, No. CV 08–03366, 2008 WL 11340332, at *2 (C.D. Cal. Sept. 2, 2008) (analyzing implied warranty claim under the Song-Beverly Act)).

Plaintiffs' allegation that they were "foreseeable third party beneficiaries of any warranty" by Defendants is insufficient to state an implied warranty claim against the BNBM Entities in California.  *See* Opp. at 17-18 (citing Compl. at ¶ 187).  To sustain a third-party beneficiary claim, there must be at the very least "factual allegations in the . . . complaint demonstrating any intent" of the contracting parties to confer a "benefit [on] plaintiff or a class of individuals encompassing plaintiff."  *H.N. & Frances C. Berger Found. v. Perez*, 159 Cal. Rptr. 3d 434, 441 (Cal. Ct. App. 2013).  "[P]ersons who are only incidentally or remotely benefited" do not qualify as third party beneficiaries.  *Id.* at 440.  Here, Plaintiffs not only fail to plead the existence of any warranty made by the BNBM Entities with respect to the drywall in their houses, but also fail to plead that the BNBM Entities ever *intended* to confer any benefit on Plaintiffs.  Plaintiffs' allegation that they were *foreseeable* beneficiaries of some unspecified warranty is inadequate to satisfy the intent requirement.  Thus, Plaintiffs' claims under Count IV against the BNBM Entities must be dismissed.

F. **Plaintiffs Failed to Adequately Plead Negligence, Negligence Per Se, Strict Liability, and Private Nuisance.**

Plaintiffs' claims against the BNBM Entities for negligence (Count I), negligence per se[3] (Count II), strict liability (Count III), and private nuisance (Count VII) must be dismissed because Plaintiffs made only conclusory allegations about all Defendants without identifying any specific harm caused by drywall manufactured or sold by the BNBM Entities.  Mot. at 33.  The PSC fails to identify any such harm and thus concedes the point.  *See, e.g.*, *Jones*, 2013 WL 871539, at *3; *In re Deepwater Horizon*, 2011 WL 4829905, at *3 n.8.  Instead, the PSC offers the conclusory contention that "BNBM's ongoing relationship with Taishan allows for imputation."  Opp. at 19.  This contention, unsupported by any argument for imposing liability on the BNBM Entities based on Taishan's conduct, provides no support for Plaintiffs' claims.  *See Brown*, 261 F. App'x at 811 (refusing to address a single, unsupported sentence in an opposition).  Thus, these claims must be dismissed.

G. **Plaintiffs Failed to Adequately Plead "Unjust Enrichment."**

While there is no independent cause of action for unjust enrichment or restitution in California, a court may construe an allegation of unjust enrichment "as a quasi-contract claim seeking restitution."  *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).  Plaintiffs' claim in Count VIII seeking restitution from the BNBM Entities must be dismissed because Plaintiffs do not allege that the BNBM Entities specifically received at Plaintiffs' expense any particular benefit for which it would be unjust for the BNBM Entities to retain.  *See McBride v. Boughton*, 20 Cal. Rptr. 3d 115, 122 (Cal. Ct. App. 2004) (describing the law of

---

[3] Assuming *arguendo* that there is in fact an independent cause of action for negligence per se. As noted below, there is no such cause of action.  *See infra* at H.

restitution).  The PSC's conclusory assertion that "BNBM has been unjustly enriched in light of its agency relationship with Taishan" is wholly unsupported and not specific enough to save their claim.  *See Brown*, 261 F. App'x at 811 (refusing to address a single, unsupported sentence in an opposition).  Thus, Plaintiffs' claim for "unjust enrichment" must be dismissed.

### H.  Plaintiffs' Claims for Negligence Per Se and Injunctive and Other Relief Are Not Independent Causes of Action.

Plaintiffs' claims against the BNBM Entities for negligence per se (Count II) and equitable and injunctive relief and medical monitoring (Count X) must be dismissed because they are not independent causes of action in California.  Mot. at 34-35.  The PSC concedes that negligence per se is not an independent tort but merely a theory of proving a negligence claim.  Opp. at 19-20.  The PSC also concedes that Plaintiffs' claims for relief in Count X is not an independent tort but rather a prayer for relief.  Opp. at 21.  Counts II and X must be dismissed.

## V.  PLAINTIFFS FAILED TO PROPERLY EFFECTUATE SERVICE OF PROCESS.

The BNBM Entities respectfully preserve their objections that the complaint should be dismissed for insufficient service of process.  Plaintiffs do not contest that they never attempted service on the BNBM Entities through the Hague Convention.  The BNBM Entities respectfully disagree with the Court's conclusion that service on counsel is in accordance with Federal Rule of Civil Procedure 12(b)(5).

## CONCLUSION

For the foregoing reasons and the reasons set forth in the memorandum supporting their motion to dismiss, BNBM PLC and BNBM Group respectfully request that the Court dismiss the *Abner* Complaint.

Dated: September 26, 2018

Respectfully submitted,

*/s/  L. Christopher Vejnoska*

L. Christopher Vejnoska (CA Bar No. 96082)
Eric Matthew Hairston (CA Bar No. 229892)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
San Francisco, CA  94105
T:  415-773-5700
Email:  cvejnoska@orrick.com
            ehairston@orrick.com

James L. Stengel (NY Bar No. 1800556)
Xiang Wang (NY Bar No. 4311114)
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY, 10019
T:   212-506-5000
Email:  jstengel@orrick.com
            xiangwang@orrick.com

Eric A. Shumsky (D.C. Bar No. 477926)
ORRICK, HERRINGTON & SUTCLIFFE LLP
Columbia Center
1152 15th Street NW
Washington, D.C. 20005
T:  202-339-8400
Email:  eshumsky@orrick.com

Harry Rosenberg (LA Bar No. 11465)
PHELPS DUNBAR LLP
365 Canal Street, Suite 2000
New Orleans, LA 70130-6534
T:  (504) 584-9219
Email:  harry.rosenberg@phelps.com

*Counsel for BNBM PLC and BNBM Group*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing pleading has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail and upon all parties by electronically uploading the same to File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 26th day of September, 2018.

*/s/ L. Christopher Vejnoska*

L. Christopher Vejnoska (CA Bar No. 96082)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105
Tel:  415-773-5700
Fax: 415-773-5759
Email:   cvejnoska@orrick.com

*Counsel for BNBM PLC and BNBM Group*
