**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION<br><br>**THIS DOCUMENT RELATES TO:**<br><br>*Amorin, v. Taishan Gypsum Co., Ltd., f/k/a/ Shandong Taihe Dongxin Co., Ltd.,*<br>**Case No. 11-cv-01395 (E.D. La.)** | MDL No. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |

**CNBM AND BNBM ENTITIES' REPLY IN SUPPORT OF MOTION TO REJECT THE PSC'S NOTICE OF CLARIFICATION REGARDING THE COMPOSITION OF THE *AMORIN* CLASS**

The PSC has painted itself into a corner. Both during and since class certification, it steadfastly maintained that remediation damages can be uniformly resolved across the entire class via formula. But during litigation of their formula, the PSC repeatedly acknowledged, as it does here, that the formula could be deployed only for current owners. Rec. Doc. 21783 at 5 ("class damages hearing addressed only *current owners'* claims for remediation damages") (emphasis added).

The PSC cannot have it both ways. Either the class is limited to current owners, in which case the formula applies to the entire class (as the PSC proposed at the class damages hearing). Or, as the PSC now claims, the class extends to current *and* former owners, in which case the PSC misrepresented the uniformity with which remediation damages could be determined. In the latter case, the PSC's proposed clarification would expose—for the first time—an array of unaccounted-for individual circumstances that militate in favor of decertification. At a

minimum, they necessitate a new class-certification analysis. The Court should reject the PSC's "notice of clarification" and confirm that the class includes only current owners.

## I. The Class Definition Controls And Dictates That Only Current Owners Are Included.

As between the two interpretations, Defendants have articulated their position: the class is limited to current owners. That's the simple answer to "the simple question." Rec. Doc. 21783 at 1. It is dictated by the plain language of the class definition. *In re Cement & Concrete Antitrust Litig.*, 817 F.2d 1435, 1443 (9th Cir. 1987), abrogated on other grounds by *California v. ARC Am. Corp.*, 490 U.S. 93 (1989) ("court[s] should construe the 'class definition in much the same way that the court might construe the language of a contract or statute'"); *Churlin v. Shalala*, No. 92-cv-7299, 1993 WL 372210, at *3 (N.D. Ill. Sept. 21, 1993). And it's the answer the PSC offered up in open court. Aug. 15, 2018 Hearing Tr. at 32. Embracing that answer avoids the procedural complexities that arise from expanding application of the formula beyond those to whom the PSC expressly said it is limited: current owners.

On the other hand, if the Court adopts the PSC's "clarified" position, it must revisit the class certification decision because the Notice reveals—for the first time—the multitude of individualized issues flowing from inclusion of a cohort (i.e., former owners) that, by the PSC's own admission, were not accounted for in devising the formula. Rec. Doc. 21783 at 5 ("the class damages hearing addressed only current owners' claims"). The PSC's only meaningful answer for why the class should be treated as including former owners is one that refers to the class notice. Rec. Doc. 21873 at 1. But as between the plain language of the class definition and the class notice, the class definition trumps. *See* Mem. ISO Mot. to Reject at 4 (citing cases). The PSC offers not a single citation to the contrary. What it urges instead is its oft-repeated refrain

that swift resolution justifies disregard for all other legal authority—a point counsel made abundantly clear during the most recent argument:

> Your Honor, gives us a chance. We'll take the chance with regard to their due process arguments… We'll take the chance with regard to their argument they want a … trial. We'll take the chance the chance with the fact that there is no … defaults. We'll take all of those things because after nine years, we've got to do something.

Aug. 15, 2018 Hearing Tr. at 31.

In an effort to justify its retroactive modification of the class, the PSC points to Louisiana's subsequent purchaser doctrine, noting that former owners "possess the right to recover damages caused by the defective drywall while they owned the property." Rec. Doc. 21783 at 2. But the question at this point is not what *could* have been certified but what *was* certified. The plain language of the class definition answers that: "all owners." Clearly, the PSC knew how to say current and former owners when it wants to. It has done so on numerous occasions, including the *Amorin* complaints, which proposed a class definition of "owners and residents (past or present) of real property." *See* Mem. ISO Mot. to Reject [Rec. Doc. 21763-1] at 4. It did not here.

The PSC made clear that the class is limited to those to whom the formula is applied—i.e., the current property owners for whom the PSC presented evidence through their designated expert at the class damages hearing. That was, after all, the purported basis for finding of commonality and predominance when the PSC told the Court that "determining class-wide property damages for the class will affect all class members in a similar manner" because there is "a formulaic method to determine class-wide property damages." Plaintiffs' Omnibus Motion for Class Certification [Rec. Doc. 17883-1] at 18, 26-27. The PSC proposed that class damages could be "simply calculated by using a mathematical formula similar to what the Court utilized in *Germano* and *Hernandez* (i.e., price per square foot to remediate X number of square feet in

3

class members' homes = damages)." *Id.* at 27.[1]  Having been told by the PSC that there was uniformity across the class as a consequence of a formula, this Court adopted the PSC's proposed FOFCOL incorporating those representations.  Class FOFCOL [Rec. Doc. 18028] at 24-25, 33.

But the PSC later disclosed the formula could only be applied to current owners.  *See, e.g.*, Rec. Doc. 20652-2 at 7 (PSC explaining that "the formulaic remediation damages of the homes" applies only to "current owners"); Rec. Doc. 19197 at 4-5 (PSC's post-hearing proposed FOFCOL: "[t]he Court was not presented with evidence relating to remediation damages for former homeowners or any other category of damages" but only "proof on a square foot and class-wide basis of the remediation damages suffered by current property owners.").  And it continues to acknowledge as much.  Rec. Doc. 21783 at 5 (stating that the "class damages hearing addressed only *current owners'* claims for remediation damages").  In fact, in opposing Defendants' class decertification motion, the PSC specifically represented to this Court that its understanding of the class comports with Defendants': "[t]he formulaic remediation damages of the homes of *current owners*" and "how such damages are to be quantified … remains the dominant issue herein."  Rec. Doc. 20652-2 at 7, 15.

Accordingly, to the extent the PSC now claims the class includes those to whom the formula does not apply (i.e., former owners unaddressed at the class damages hearing), this is not addressed in the Court's class certification FOFCOL.  The presence of large swaths of property owners whose damages cannot be uniformly determined through application of the formula fundamentally alters the Rule 23 calculus and tips the scales in favor of decertification.  At a

---

[1] The Court did not award damages in *Germano* and *Hernandez* using "a mathematical formula." Instead, it relied on property-specific testimony from a designated expert who in turn relied on property-specific estimates from remediation contractors.

minimum though, a new class certification analysis is required that accounts for this unaddressed cohort. *See Richardson v. Byrd*, 709 F.2d 1016, 1019 (5th Cir. 1983) (courts are under a continuing duty to "monitor[] [their] class decisions in light of the evidentiary development of the case"); *see also Gene & Gene, L.L.C. v. BioPay, L.L.C.*, 624 F.3d 698, 703 (5th Cir. 2010) ("When "it becomes clear that the district court needs to alter, amend, or even decertify the class," it is obligated to "do so under Rule 23(c)(1)(C)").

## II.     The PSC's Proposed Modification Of The Class Definition Compounds The Individualized Issues and Need For Decertification.

No matter how the PSC styles its request to include former owners, it would fundamentally disrupt these proceedings. If the Court were to reject the PSC's position, the litigation can proceed as is. The class will not have been expanded and will be properly limited to the group this Court accounted for in its class certification FOFCOL. If, however, the Court were to entertain the PSC's request then the Notice must be treated as either a class expansion or a recently exposed misrepresentation that commands a new class certification analysis.

The PSC seeks to avoid the inevitable fate of its position by appealing to Louisiana law. Rec. Doc. 21783 at 2-3. In effect, it claims that former owners *are* subject to the formula. *Id.* Of course, that's not right. Former owners cannot remediate property; therefore, as discussed below, they would be limited to the decreased value of the property upon sale. Accordingly, if former owners were part of the class, the PSC's prior representations to this Court—that remediation damages could be resolved uniformly via formula—were inaccurate. The PSC's contention thus expressly undermines this Court's commonality determination. Moreover, the PSC's Louisiana-specific contention ignores that the class it proposed and that this Court certified extends well beyond Louisiana. Plaintiffs' Omnibus Motion for Class Certification [Rec. Doc. 17883-1] at 2 (seeking certification of nationwide class); Class FOFCOL [Rec. Doc.

5

18028] at 34-35 (certifying same). Indeed, the bulk of the claims are from outside the state—most from Florida, but also including significant claimants from Alabama and Virginia as well. Yet, the PSC points to nothing akin to the subsequent purchaser doctrine in those states—or any others.

The PSC's disregard for this variation in state law only underscores why its attempted unilateral redefinition of the class would compound the problem with the initial class certification order. To prove the point, we begin with the PSC's own authority. Even under the subsequent purchaser doctrine, the Court will first have to determine for each former owner whether there was "an assignment or subrogation of the rights belonging to the owner of the property when the damage was inflicted." *Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*, 79 So. 3d 246, 257 (La. 2011). From there, individual and property-specific issues only proliferate, precluding rote application of the formula. As the Louisiana Supreme Court has explained, "when a person sustains property damage due to the fault of another, he is entitled to recover damages including the cost of restoration that has been or may be reasonably incurred." *Roman Catholic Church of Archdiocese of New Orleans v. Louisiana Gas Serv. Co*., 618 So. 2d 874, 879 (La. 1993). Alternatively, and "at his election," the property owner can choose to recover "the difference between the value of the property before and after the harm." *Id.* There's more. If it turns out that "the cost of restoring the property in its original condition is disproportionate to the value of the property or economically wasteful," "damages are measured only by the difference between the value of the property before and after the harm." *Id.* Even then though, a homeowner can *still* recover the disproportionate amount under certain circumstance, such as if "there is a reason personal to the owner for restoring the original condition." *Id.*

Stated otherwise, under Louisiana law, if a property owner remediated, he is entitled to

6

his remediation costs—nothing more. That cannot be determined on a formulaic basis. A former owner who did not remediate is limited to the decreased value of the property attributable to the alleged harm. And a current owner who did not remediate may elect that option. The formula has no bearing on that figure. Further, because a property owner is presumptively precluded from recovering more than the value of the property, in all cases, that figure must be determined. The court would then have to hear whether (for current owners) there are personal reasons to overcome this cap. To countenance the PSC's blind adherence to a formulaic approach to remediation damages deprives Defendants an opportunity to demonstrate applicable caps on damages. The PSC's invocation of Louisiana state law as a basis for justifying expansion of the class serves as a reminder of how fact-dependent the remediation inquiry is.

And that's just Louisiana. The PSC convinced this Court that remediation damages could be uniformly determined across a nationwide class without acknowledging, much less discussing, the many variations in state law. In Florida, for instance, if "the cost of restoration is less than the diminution in value, the law generally requires that damages be measured by the cost of repairs or restoration." *Davey Compressor Co. v. City of Delray Beach*, 639 So. 2d 595, 596 (Fla. 1994). Thus, for any Florida claims, the formula will have no utility if repairs have already been completed—a likely scenario for many owners. Florida law adds another highly individualized wrinkle: "[T]he cost of restoration 'cannot be adopted as the measure of damages where the cost of restoring the property would exceed the value thereof in its original condition, or the depreciation in the value thereof, or the actual damage sustained by plaintiff, or where restoration is impracticable." *Id.* (citing *Keyes Co. v. Shea*, 372 So.2d 493 (Fla. 4th DCA 1979). Thus, in addition to determining restoration costs (whether that be costs incurred or prospective costs), there will have to be a determination of home value for each property owner.

What's clear then is that, contrary to the PSC's representations. "damages are [not] simply calculated by using a mathematical formula." Rec. Doc. 18028 at 33. This same state-specific calculus must be undertaken over a dozen more times: once for every state that has a property in the certified class. Accordingly, the PSC's invocation of state law as a basis for modifying the class definition only highlights the many nuances it overlooked in violation of Fifth Circuit law when it first asked the Court to certify the class. *See, e.g., Castano v. Am. Tobacco Co.*, 84 F.3d 734, 743 (5th Cir. 1996) (reversing certification because plaintiffs' materials "failed to discuss, in any meaningful way, how the court could deal with variations in state law").

## III.  CONCLUSION

The Court should reject the PSC's newly invented efforts to "clarify" the class definition. If not rejected outright, the Court should construe the PSC's submission as a request to modify the class definition or disclosure of new information, either of which necessitates renewed Rule 23 briefing and a detailed order from this Court.

Dated:   September 26, 2018

Respectfully submitted,

*/s/ L. Christopher Vejnoska*

L. Christopher Vejnoska (CA Bar No. 96082)
Eric Matthew Hairston (CA Bar No. 229892)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
San Francisco, CA 94105
T: 415-773-5700
Email: cvejnoska@orrick.com
ehairston@orrick.com

Eric A. Shumsky (D.C. Bar No. 477926)
ORRICK, HERRINGTON & SUTCLIFFE LLP
Columbia Center
1152 15th Street NW
Washington, D.C. 20005
T: 202-339-8400
Email: eshumsky@orrick.com

James L. Stengel (NY Bar No. 1800556)
Xiang Wang (NY Bar No. 4311114)
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY, 10019
T: 212-506-5000
Email: jstengel@orrick.com
xiangwang@orrick.com

*Attorneys for the CNBM and BNBM Entities*

Ewell E. Eagan, Jr. (LA Bar No. 5239)
Donna Phillips Currault (LA Bar No. 19533)
Alex B. Rothenberg (LA Bar No. 34740)
GORDON, ARATA, MONTGOMERY, BARNETT,
MCCOLLAM, DUPLANTIS & EAGAN, LLC
201 St. Charles Avenue, 40th Floor
New Orleans, LA 70170-4000
T: (504) 582-1111
Email: eeagan@gamb.law
dcurrault@gamb.law
arothenberg@gamb.law

*Attorneys for CNBM Company, Ltd.*

Harry Rosenberg (LA Bar No. 11465)
PHELPS DUNBAR LLP
365 Canal Street, Suite 2000
New Orleans, LA 70130-6534
T: (504) 584-9219
Email: harry.rosenberg@phelps.com

*Counsel for BNBM (Group) Co. Ltd. and BNBM PLC*

**CERTIFICATE OF SERVICE**

     I hereby certify that the above and foregoing pleading has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and email and upon all parties by electronically uploading the same to File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on September 26, 2018.

                                /s/ *L. Christopher Vejnoska*

                                L. Christopher Vejnoska (CA Bar No. 96082)
                                ORRICK, HERRINGTON & SUTCLIFFE LLP
                                The Orrick Building
                                405 Howard Street
                                San Francisco, CA 94105
                                Tel: 415-773-5700
                                Fax: 415-773-5759
                                Email: cvejnoska@orrick.com

                                *Counsel for CNBM Co. Ltd., BNBM (Group) Co. Ltd., and BNBM PLC*