UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION<br><br>**THIS DOCUMENT RELATES TO:**<br><br>*Brooke et al. v. State-Owned Assets Supervision and Administration Commission of the State Council, et al.,* **Case No. 15-4127 (E.D. La.).** | MDL No. 2:09-md-2047<br><br>SECTION L<br><br>JUDGE ELDON E. FALLON<br><br>MAGISTRATE JUDGE JOSEPH C. WILKINSON, JR. |

**BNBM GROUP AND BNBM PLC'S REPLY IN SUPPORT OF MOTION TO DISMISS**

Defendants Beijing New Building Materials Public Limited Company ("BNBM PLC") and Beijing New Building Material (Group) Co., Ltd. ("BNBM Group") (collectively, "BNBM") respectfully submit this reply to the Plaintiffs' Steering Committee's Response In Opposition ("Opposition") (Rec. Doc. 21767) to Defendants' Motion to Dismiss Pursuant to Rules 12(b)(2), 12(b)(5), 12(b)(6), 8 and 9(b) ("Motion") (Rec. Doc. 19984).

**INTRODUCTION**

The *Brooke* Complaint—filed six years after the creation of the MDL and five years after the *Amorin* complaints—is deficient on its face. Most glaringly, the claims have prescribed. Saddled with the burden of overcoming that facial deficiency, the PSC invokes the rarely employed doctrine of *contra non valentem*; however, that doctrine is reserved for "exceptional circumstances" that are not present here. The PSC also attempts to toll prescription based on

suits that concluded years before the PSC filed the *Brooke* Complaint. Tellingly, the PSC suggests that the 800 plaintiffs in *Brooke* did not know about the defective drywall for nearly a decade notwithstanding its own allegation that the problems from drywall rapidly manifested and there was wide publicity concerning the issues. That there was not a steady stream of complaints with a few new claimants on each (as opposed to the mass filing with 800 plaintiffs) is itself evidence that Plaintiffs were waiting. The PSC seemingly acknowledges as much by suggesting its belief that Plaintiffs had a year from the time the *Amorin* class was certified to get in subsequent claims. But, that conclusion was misguided because there is no cross-jurisdictional tolling for Louisiana state claims.

Separately, the complaint is wholly conclusory and insufficiently pled. In fact, in many instances, the PSC all but concedes that its claims should be dismissed. Indeed, the PSC's efforts to deflect from its inadequate allegations regarding BNBM contacts with Louisiana by pointing to this Court's Order and Reasons addressing jurisdiction effectively admits that neither BNBM Group nor BNBM PLC had any direct contact with Louisiana. Further, its pleading obligations with regard to imputation cannot be rescued by pointing to the Court's Order and Reasons on jurisdiction, particularly when that order expressly said it was not addressing imputation for purposes of liability. In addition, Plaintiffs' Opposition does not establish that its claims were sufficiently plead under Federal Rule of Civil Procedure 12, and as such, those claims must be dismissed.

Accordingly, for the reasons explained in greater detail in BNBM's Motion and set forth herein, the *Brooke* Complaint should be dismissed.

**ARGUMENT**

**I. Plaintiffs' Claims Are Barred By The Statute of Limitations And There Is No Applicable Exception.**

Nearly six years after the other complaints in this MDL were filed, on September 4, 2015, the PSC filed *Brooke*, which asserted claims on behalf of hundreds of new claimants from Louisiana and all over the country. BNBM moved to dismiss the facially prescribed allegations. In response, the PSC does not dispute any of the limitations periods set forth in BNBM's Motion to Dismiss. Rec. Doc. 19984-1 at 15. Instead, it offers a variety of arguments in favor of tolling, none of which overcome the delayed nature of the allegations. The Court should therefore dismiss the *Brooke* claims as barred by the statute of limitations.

**A. *Contra Non Valentem* Is Inapplicable To The *Brooke* Claimants**

Where, as here, a complaint "reveals on its face that prescription has run, the plaintiff has the burden of showing why the claim has not prescribed." *Doe v. Roman Catholic Church*, 94-1476, p. 3 (La. App. 3 Cir. 5/3/95), 656 So. 2d 5,7; *Frank v. Shell Oil Co.*, 828 F. Supp. 2d 835, 840 (E.D. La. 2011) (Fallon J.). The PSC attempts to avoid its statute of limitations problem by invoking *contra non valentem*. But the doctrine is reserved for only the most "exceptional circumstances," La. Civ. Code art. 3467, cmt. (d); *Marin v. Exxon Mobil Corp.*, 2009-C-2368, 2009-C-2371, p. 13 (La. 10/19/10), 48 So. 3d 234, 245,[1] and Louisiana courts have admonished against its use, explaining: "The secular laws of this State prevents us from judicially editing the applicable prescription statute or from expanding the 'exceptional' doctrine of *contra non*

---

[1] *See also Specialized Loan Servicing, LLC v. January*, 2012-2668, p. 6 (La. 6/28/13), 119 So. 3d 582, 585 (*contra non valentem* should only apply in "exceptional circumstances") (quoting La. Civ. Code. art. 3467, Official Revision Comment (d)); *State Through Div. of Admin. v. McInnis Bros. Const.*, 97–0742 (La. Oct. 21, 1997), 701 So. 2d 937, 940; *Renfroe v. State ex rel. Dept. of Transp. and Development*, 01–1646 p. 9 (La. 02/26/02), 809 So. 2d 947, 953.

*valentem* to achieve a desired end *no matter how just or morally right*." *Doe*, 94-1476 at p. 10, 656 So. 2d at 11 (emphasis added). Against this high bar, the PSC asserts two exceptions apply: (1) the defendant's conduct prevented plaintiff from availing himself of his cause of action, and (2) the cause of action was not known or reasonably knowable by plaintiff. Neither applies.

The first exception advanced by the PSC pertains to obstructionist behavior. The paradigmatic example occurs when "domination on a board precludes suit against the controlling wrongdoers." *Resolution Trust Corp. v. Walke*, No. 92-430, 1994 WL 777355, at *10 (W.D. La. July 29, 1994). Beyond that, this Court has recognized its application where "there is an affirmative misrepresentation or lie on the defendant's part," "the defendant's tortious behavior produces the plaintiff's mental and/or physical inability to file suit," or "defendant threatens plaintiff against filing suit." *Frank*, 828 F. Supp. 2d at 843. By contrast, the doctrine does not apply "where the defendant misled the plaintiff about the extent of the tortious harm" or "failed to warn of tortious aspects of a product and made false and fraudulent representations about safety and efficacy." *Id.* Here, BNBM did not affirmatively misrepresent the quality of its product. Nor did it "definitely []or directly state[] to plaintiffs that they had no cause of action, []or that" the Taishan drywall "did not contribute to" their property damage. *Cross v. Alpha Therapeutic Corp.*, No. CIV. A. 94-382, 2000 WL 1140491, at *5 (E.D. La. Aug. 11, 2000). Accordingly, "[t]he present case is more analogous to the[] latter examples" this Court identified in *Frank*, 828 F. Supp. 2d at 843.

The PSC acknowledges as much, arguing instead that events occurring ***after*** the creation of the MDL somehow precluded other plaintiffs from bringing similar actions. Rec. Doc. 21767-2 at 9-10. The PSC's contention disproves its point. Clearly, nothing prevented large swaths of property owners from coming forward. Indeed, thousands did—so many that it prompted the

creation of a MDL.  The PSC identifies no impediment unique to *Brooke* property owners that did not confront the thousands of owners that came before them.  Nor does the PSC identify a single case where post-filing litigation conduct was found to have been an impediment to additional plaintiffs bringing suit.  Quite simply, to articulate the PSC's argument is to refute it.

As to the remaining exception concerning knowledge, the PSC asserts now—rather than in the *Brooke* complaint—that "no amount of reasonable diligence … would have led [the *Brooke* Plaintiffs] to the knowledge that their homes had been damaged by substandard drywall until (a) the damage manifested and (b) the property owner understood that … defective Chinese drywall" was the cause.  Rec. Doc. 21767-2 at 10.  As to the former, the Complaint itself acknowledges manifestation could not be the cause of the delay.  As Plaintiffs allege, "[t]he sulfur compounds … exit Defendants' drywall and cause *rapid* sulfidation and damage to personal property."  Rec. Doc. 19625 at 9 (emphasis added); *id.* at 10.  The Complaint thus undercuts any contention that it took almost a decade to learn of damage.

Such rapid manifestation also undermines a supposed lack of understanding of drywall as the cause.  Because any damages would have manifested soon after the drywall was installed between 2005 and 2008, Plaintiffs necessarily are left to argue that what many other homeowners figured out within weeks or months took nearly a decade for the 800 *Brooke* Plaintiffs.  But the doctrine of *contra non valentem* is not designed to reward ignorance and, thus, a "plaintiff will be deemed to know that which he could have learned by reasonable diligence."  *Matthews v. Sun Exploration & Prod. Co.*, 521 So. 2d 1192, 1197 (La. App. 2 Cir. 1988).  It is thus irrelevant what Plaintiffs in fact knew.  What matters is what they reasonably should have known.  There is no need to speculate as to that.  The Court need only look at what many others did.

That is also why the PSC's dismissive treatment of news stories is unavailing. This Court has recognized that "national and local media coverage" is more than "sufficient to put the plaintiff on notice of a potential link between her alleged injuries" and the allegedly defective product. *In re Vioxx Prod. Liab. Litig.*, 522 F. Supp. 2d 799, 808 (E.D. La. 2007). The PSC does not deny—nor can it—the breadth of coverage during the relevant time-period. A simple Google search from 2009 to 2014 proves the point. Nor can there be any excusal based on the theory that Plaintiffs perhaps knew they had defective drywall but did not know which manufacturer to sue. A Plaintiff "will be responsible to seek out those whom he believes may be responsible for a specific injury." *Cross*, 2000 WL 1140491, at *3. Here, no Plaintiff had to look far—in all likelihood, no further than his front door. The considerable media coverage amply provided notice of the manufacturers. So too did the CPSC's public release in 2010 regarding the issue of Chinese drywall that specifically identified the manufacturers. *Cf. Cross*, 2000 WL 1140491, at *5. As did the earlier complaints that also named the alleged manufacturers. Thus, the PSC's incredible assertion—that hundreds of Plaintiffs thought for years that damages readily associated with defective drywall were due to faulty HVAC systems—is irrelevant. What matters is what Plaintiffs reasonably could have known. They could have known—as the thousands that came before them did—that any damages were a result of defective drywall.

### B. Prescription Has Not Been Tolled

Contrary to the PSC's assertions, neither tolling under Louisiana Code of Civil Procedure Article 596 nor *American Pipe* applies to save the *Brooke* claims. *American Pipe* tolling does not apply here because this is a diversity class action, and as such, the Court must examine each

state's laws to see if it recognizes class action tolling.[2] *See In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 2d 897, 907-08 (E.D. La. 2007); *see also Vaught v. Showa Denko*, K.K., 107 F.3d 1137, 1144 (5th Cir. 1997). Louisiana law does not recognize cross-jurisdictional or *American Pipe* tolling; it has its own tolling regime. *Chaverri v. Dole Food Co.*, 546 F. App'x. 409, 414 (5th Cir. 2013) (state law claims prescribed because Louisiana does not recognize "cross-jurisdictional tolling"); *Quinn v. Louisiana Citizens Prop. Ins. Corp.*, 2012-0152 p. 9 (La. 11/2/12), 118 So. 3d 1011, 1022 (recognizing that "the legislature has rejected 'cross-jurisdictional tolling' in class action proceedings;" Article 596 dictates that "the suspension of prescription provided therein applies only to petition[s] brought on behalf of a class *in the state courts of Louisiana*").

Recognizing this limitation, the *Brooke* Plaintiffs incorrectly suggest that the *Silva* action filed in Louisiana state court provides a basis for tolling under Article 596. But *Silva* does not do nearly the work Plaintiffs need. That's because after being removed from state court to this Court, *Silva* was ultimately included in this Court's February 7, 2013 order and judgment dismissing the case (among others) pursuant to a settlement.[3] Rec. Doc. 16570. Notice of the settlement was published on the Court's website and thus prescription re-started in 2013 pursuant to Article 596.[4] La. Code Civ. Proc. art. 596(A)(3) ("[P]rescription which has been suspended as

---

[2] As the Court has separated out the *Amorin* claims based on state of residency, BNBM addresses here Louisiana residents. Other state laws (e.g., Florida and Virginia) can be addressed in the respective *Brooke* actions in those states.

[3] *Silva, et al. v. Interior Exterior Building Supply, LP, et al.*, Case No. 09-8030 (E.D. La) and *Silva, et al. v. Arch Insurance Company, et al.*, Case No. 09-8034 (E.D. La.).

[4] http://www.laed.uscourts.gov/case-information/mdl-mass-class-action/drywall (under "Settlements" tab).

provided herein beings to run again … as to all members, thirty days after mailing or other delivery or publication of a notice to the class that the action has been dismissed.")  Accordingly, the one-year prescriptive period applicable to the vast majority of Louisiana claims would have expired by the time the *Brooke* complaint was filed in September 2015.[5]  The PSC appears to contend that's not the case because tolling only lapses when "a class member elects to be excluded from the class, is excised from a certified class, or there is a denial of certification."  Rec. Doc. 21767-2.  That is a misrepresentation—at least as to the third circumstance, which is most relevant here.  It is not limited to denials of certification but also applies "thirty days after mailing or other delivery or publication of a notice to the class that the action has *been dismissed*."  *Quinn*, 118 So. 3d at 1015 (quoting art. 596(A)(3)) (emphasis added).  The PSC does not dispute that provision applies here, and the Court should not countenance the PSC's selective reading of *Quinn* and Article 596.

The PSC also appears to make the spurious argument that *Quinn* and Article 596 do not limit what federal courts may do with regard to tolling.  Rec. Doc. 21767-2 at 12-13.  However, the PSC's argument that federal courts are permitted to expand the use of the Louisiana Code of Civil Procedure beyond what state courts may do and what the Louisiana Supreme Court has instructed is unsupported and flies in the face of *Erie*.  Moreover, the Fifth Circuit has spoken on the issue and recognized the application of Article 596 to preclude tolling in federal courts.  *See McGee v. State Farm Fire & Casualty Co.*, 515 F. App'x 291, 294 (5th Cir. 2013) (accepting the rule announced in *Quinn* and holding that "[a]s a federal class action petition, the *Master*

---

[5] Other of the Plaintiff's claims for which a longer limitations period apply (e.g. unjust enrichment) nonetheless fail on other grounds as discussed in Section III below.

*Complaint* cannot suspend prescription under Article 596 as a matter of law.").[6] In short, none of the federal class action complaints filed by other putative class members (e.g. *Amorin*) or the lone Louisiana state action trigger tolling for *Brooke* under Article 596.

Finally, the PSC argues that its maneuvering here would not constitute improper class action stacking—for purposes of evading the statute of limitations—because *Brooke* was filed within a year of the date *Amorin* was *certified*—i.e., there was no denial. Rec. Doc. 21767-2 at 15. The PSC's argument improperly presumes that the only occasion that issues of improper tolling may be implicated is if the class certification request is denied. Not so. The same concerns arise if, after filing a class action complaint, plaintiffs then narrow the class definition. That's because narrowing puts the excluded plaintiffs on notice that their claims are no longer tolled just as much as a denial does. *See, e.g.*, *Smith v. Pennington*, 352 F.3d 884, 894 (4th Cir.2003) ("When a plaintiff moves for class certification by asserting an unambiguous definition of his desired class that is more narrow than is arguably dictated by his complaint, his asserted class for tolling purposes may be limited to that more narrow definition."); *Ganousis v. E.I. du Pont de Nemours & Co*., 803 F. Supp. 149, 157 (N.D. Ill. 1992) ("motion that specifically

---

[6] *See also Chaverri*, 546 F. App'x at 414; *Lewis v. Hanover Ins. Grp.,* No. 10-3026, 2014 WL 172383, at *1 (E.D. La. Jan. 15, 2014) (Duvall, J.); *James v. Hanover Ins. Co.*, No. 11-2610, 2013 WL 3728279, at *2 (E.D. La. July 12, 2013) (Vance, J.) ("*Quinn* held that Article 596 applies only to class actions brought in the State of Louisiana; it 'do[es] not extend to suspend prescription on claims asserted in a putative class action filed in a federal court.'") (quoting *Quinn*); *Herring v. Metro. Prop. & Cas. Ins. Co.*, No. 10-935, 2013 WL 3893282, at *1 (E.D. La. July 26, 2013) (Engelhardt, J.) ("Given that the only putative class actions against Metropolitan were filed in federal court, defendant argues that, under *McGee* and *Quinn,* no bases exist for suspension of prescription on the instant claims. The Court agrees."); *Cf. Newby v. Enron Corp.*, 542 F.3d 463, 471-72 (5th Cir. 2008) (Texas courts have not extended *American Pipe* tolling to federal class action pursuing state mass personal injury claims); *In re: BP P.L.C. Securities Litigation*, 51 F.Supp.3d 693 (S.D. Tex. 2014) (federal class action does not toll state law statute of limitation because Texas does not recognize cross-jurisdictional tolling).

defined the prospective class in the Minnesota lawsuits to cover only Minnesota residents halted the *American Pipe–Crown, Cork & Seal* tolling period as to Ganousis and Cazares. That being so, Ganousis and Cazares have conceded that their actions here are barred by limitations."). Accordingly, the PSC's filing of the *Amorin* class certification motion itself halted tolling for those it did not cover—i.e., anyone not named in *Amorin*. That motion was filed on July 23, 2014 (Rec. Doc. 17883-1)—well beyond a year before the *Brooke* complaint was filed. Thus, even if *Amorin* could toll the statute of limitations (as explained, it cannot), Plaintiffs would still be out of time.

## II.     Plaintiffs Cannot Show That the *Brooke* Complaint Sufficiently States A Plausible Claim For Relief

### A.     Plaintiffs' Claims Are Inadequately Pled With Conclusory Allegations

The PSC asserts that the Court's finding of single-business enterprise ("SBE") liability enables Plaintiffs to treat all Defendants as one in the same in the Complaint without distinguishing the specific conduct attributable to either BNBM PLC or BNBM Group. *See* Rec. Doc. 21767-2 at 18. However, for the PSC to rely on SBE liability to impute Taishan's activities to BNBM, the allegations in the complaint must establish SBE liability—not the Court's class certification order. This Court is limited to considering the pleadings in evaluating a motion to dismiss, and therefore cannot look to the PSC's briefing in connection with class certification to substantiate its claim for SBE. *See Davis v. Ashley Furniture Indus., Inc.*, No. CIV.A.308CV77-SASAA, 2009 WL 605741, at *1 (N.D. Miss. Mar. 9, 2009) ("When considering a motion to dismiss for failure to state a claim for which relief may be granted, the Court may only consider the pleadings. Fed.R.Civ.P. 12(d)."). As stated in Defendants' Motion, the Complaint fails to adequately plead SBE or alter-ego liability. *See* Rec. Doc. 19984-1 at 12. Because SBE liability is not established on the face of the Complaint, Plaintiffs needed to allege particularized facts as

- 10 -

to each Defendant, which they failed to do. Thus, Plaintiffs' inadequate claims must be dismissed.

### B. Plaintiffs Concede That Several Of The Asserted Claims Are Improper and As Such, Must Be Dismissed

When a party fails to oppose a point made in a motion to dismiss, the party concedes the point. *See Williams v. City of Booneville*, No. 1:10CV-221-D-D, 2011 WL 2565254, at *2 (N.D. Miss. June 28, 2011) (finding plaintiffs conceded failure to comply with the Mississippi Tort Claims Act as defendants alleged in their motion to dismiss because plaintiffs did not oppose the claim); *David v. Assumption Parish Police Jury*, No. Civ. A. 02-765, 2003 WL 57039 at *8 (E.D. La. Jan. 6, 2003) ("[Plaintiff] has filed to respond to defendants' arguments in support of their motion to dismiss his other state law claims. Accordingly these claims are deemed abandoned by plaintiff's failure to brief them.") Therefore, by failing to respond in its Opposition to arguments raised in Defendants' Motion, the PSC has conceded the following:

- Louisiana Plaintiffs can only recover under the LPLA and cannot assert common law claims for negligence, negligence per se, strict liability, express or implied warranty, private nuisance and unjust enrichment. Therefore, as to the Louisiana Plaintiffs, Counts I, II, III, IV, VII, and VIII should be dismissed. Indeed, the PSC concedes this point in its Opposition, stating "Plaintiffs recognize that certain alleged Louisiana-based claims are subsumed by either the LPLA or Redhibition claims." Rec. Doc. 21767-2 at 3.

- Negligence per se must be dismissed as to all Plaintiffs because it cannot be a stand-alone cause of action and this doctrine has been rejected in Louisiana. Therefore, as to all Plaintiffs, Count II should be dismissed.

- Strict liability is not a viable theory for recovery in this context. The PSC accuses BNBM of "drastically oversimplifying the Plaintiffs' complaint with respect to strict liability." Rec. Doc. 21767-2 at 22. However, the PSC ignores the fact, as stated in Defendants' Motion at 24, that Louisiana has largely eliminated strict liability such that it only applies to dog owners, explosive users, pile drivers, parents of minor children, and persons exposed to vicarious liability. *Sadler v. Int'l Paper Co.,* No. 09-1254, 2010 WL 5125502, at *3 n.4 (W.D. La. Dec. 9, 2010). Since none of these fact-specific scenarios apply here, Count III should be dismissed.

- Private Nuisance is not a viable theory for recovery where, as here, there is no "neighbor-proprietor" relationship, a point the PSC does not address in its Opposition. Therefore, as to all Plaintiffs, Count VII should be dismissed, and the PSC does not suggest otherwise, thereby waiving any contrary contention.

- The claims made under the Mississippi, Alabama, and Louisiana Consumer Protection Statutes should be dismissed as they cannot be brought on behalf of a class. Therefore, these claims under Count IX should be dismissed.

### C.     Plaintiffs Did Not Sufficiently Plead Negligence, Strict Liability, Or Unjust Enrichment

As explained in greater detail in Defendants' Motion to Dismiss, *see* Rec. Doc. 19984-1 at 23-26, Plaintiffs made conclusory allegations in their Complaint such that claims for negligence, strict liability, and unjust enrichment as to all Plaintiffs should be dismissed.

### D.     Plaintiffs' Redhibition Claim Should Be Dismissed

Though the PSC notes there is not statewide consensus regarding whether Articles 2520 and 2524 can be pled together, it fails to recognize that this Court has already taken a position on this issue, holding "[c]omment (b) [to article 2524] implies that a breach of contract of fitness for ordinary use claim is only an independent cause of action when an item is free from redhibitory defects." *Stroderd v. Yamaha Motor Cor., U.S.A.*, Np. 04-3040, 2005 WL 2037419, at *3 (E.D. La. Aug 4, 2005). Given that Plaintiffs allege redhibitory defects under Article 2520, the claims under Article 2524 should be dismissed. If both claims are allowed to proceed technically, the Article 2524 claim still should fail because the drywall functions according to its purpose as a building component, and thus is fit for the intended purpose. *See* Rec. Doc. 19984-1 at 26-28.

### E. Even As To Louisiana Plaintiffs, Claims For Violation Of The Louisiana Products Liability Act Should Be Dismissed

Contrary to the PSC's assertion, Plaintiffs' pleading that "Defendants knew that their drywall was unreasonably dangerous and/or problematic" converts the claim under the Louisiana Products Liability Act ("LPLA") to one for fraud requiring a heightened pleading standard under Rule 9(b). That is because Rule 9(b) applies to "to all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud." *Frith v. Guardian Life Ins. Co. of America*, 9 F. Supp. 2d 734, 742 (S.D. Tex. 1998) (citing *Toner v. Allstate Ins. Co.*, 821 F.Supp. 276, 283 (D.Del.1993) (citations omitted)). Because Plaintiffs' allegations sound in fraud, Plaintiffs' failure to plead with particularity as to the LPLA claim warrants dismissal. Plaintiffs' failure to plead with particularity is especially egregious here, where Plaintiffs lump the actions of BNBM in with other Defendants.

### III. The Court Does Not Have Jurisdiction Over BNBM And Cannot Properly Impute Contacts Of Other Defendants

As an initial matter, the *Brooke* Plaintiffs do not dispute that BNBM PLC and BNBM Group are not subject to specific jurisdiction under Louisiana's long-arm statute, La. Rev. Stat 13:3201. *See* Rec. Doc. 19984-1 at 9-10. Notably, Plaintiffs wholly fail to address the evidence and authority detailed in BNBM's Motion establishing that neither BNBM PLC nor BNBM Group has purposefully directed activities toward residents of the forum, and further that exercise of jurisdiction over these Defendants would violate constitutional due process. *Id.* Tellingly, the *Brooke* Complaint lacks facts showing minimal contacts with Louisiana by BNBM, despite that the PSC had the benefit of months of jurisdictional discovery.

Instead, Plaintiffs assert that the contacts of Taishan with Louisiana should be imputed to BNBM in order to exercise jurisdiction. In this regard, Plaintiffs rely solely on the conclusions

of fact and law in this Court's Jurisdiction O&R that found an alter ego relationship and single business enterprise between BNBM and Taishan, ignoring that the *Brooke* Complaint fails to allege facts sufficient to support jurisdiction under either theory.  *See Ameresco Solar, LLC v. Sader*, No. 14-2890, 2015 WL 3952771 at *5 (E.D. La. June 15, 2015) (facts that would demonstrate alter-ego liability must be well-plead sufficient to rise "above the speculative level").  Further, for reasons stated at length in BNBM PLC's and BNBM Group's respective Motions to Dismiss (Rec. Doc. 19646, 19664), incorporated herein by reference, and as explained in the instant Motion (Rec. Doc. 19984) at 10-14), BNBM respectfully disagrees with the Court's conclusion that BNBM was a part of a SBE with Taishan or its alter ego, such that Taishan's contacts should be imputed to BNBM under Louisiana law.  *See* Jurisdiction O&R, Rec. Doc. 20739 at 75-79, 99.

## IV. Defendants Object That Service Of The *Brooke* Complaint Was Improper

For reasons previously explained to the Court, BMBM respectfully disagrees that service of the *Brooke* Complaint on counsel was proper.[7]  The *Brooke* Plaintiffs do not contest that they never attempted service under the Hague Convention.  Further, contrary to Plaintiffs' assertions, Defendants' objections to service here do not amount to mere technicalities, and this Court's Jurisdiction O&R is not controlling as to the facts and circumstances at hand.

---

[7] *See* Motion to Dismiss (Rec. Doc. 19984) and Defendants' Opposition to the Plaintiff's Steering Committee's Motion to Approve Alternative Service of Process.  (Rec. Doc. 19558).

## **CONCLUSION**

For the foregoing reasons and the reasons set forth in the BNBM PLC and BNBM Group Motion to Dismiss and supporting memorandum, declarations, and exhibits, BNBM PLC and BNBM Group respectfully move the Court to dismiss the *Brooke* Complaint.

Dated: September 26, 2018                              Respectfully submitted,

*/s/  L. Christopher Vejnoska*

L. Christopher Vejnoska (CA Bar No. 96082)  
Eric Matthew Hairston (CA Bar No. 229892)  
ORRICK, HERRINGTON & SUTCLIFFE LLP  
The Orrick Building  
San Francisco, CA  94105  
T:  415-773-5700  
Email:  cvejnoska@orrick.com  
            ehairston@orrick.com  

Eric A. Shumsky (D.C. Bar No. 477926)  
ORRICK, HERRINGTON & SUTCLIFFE LLP  
Columbia Center  
1152 15th Street NW  
Washington, D.C. 20005  
T:  202-339-8400  
Email:  eshumsky@orrick.com  

James L. Stengel (NY Bar No. 1800556)  
Xiang Wang (NY Bar No. 4311114)  
ORRICK, HERRINGTON & SUTCLIFFE LLP  
51 West 52nd Street  
New York, NY, 10019  
T:  212-506-5000  
Email:  jstengel@orrick.com  
            xiangwang@orrick.com  

Harry Rosenberg (LA Bar No. 11465)  
PHELPS DUNBAR LLP  
365 Canal Street, Suite 2000  
New Orleans, LA 70130-6534  
T:  (504) 584-9219  
Email:  harry.rosenberg@phelps.com  

*Counsel for BNBM PLC and BNBM Group*

- 16 -

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail and upon all parties by electronically uploading the same to File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 26th day of September, 2018.

/s/ *L. Christopher Vejnoska*

L. Christopher Vejnoska (CA Bar No. 96082)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105
Tel:  415-773-5700
Fax: 415-773-5759
Email:   cvejnoska@orrick.com

*Counsel for BNBM PLC and BNBM Group*