UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * * * CIVIL ACTION * * MDL NO. 2047 * * SECTION L (5) |
| THIS DOCUMENT RELATES TO: ALL *AMORIN* FLORIDA CASES | * * * |

**ORDER & REASONS**

Before the Court is a motion to certify this Court's March 10, 2016 Order & Reasons for immediate appeal pursuant to 2 U.S.C. § 1292(b) filed by the Plaintiffs' Steering Committee ("PSC"). R. Doc. 21533. The motion is opposed. R. Doc. 21730. The PSC has filed a reply. R. Doc. 21757. Considering the law, the parties' arguments, and having heard oral argument on the motion, R. Doc. 21803, the Court is ready to rule.

I.  BACKGROUND

From 2004 through 2006, a housing boom in parts of the United States and rebuilding efforts necessitated by Hurricanes Rita and Katrina in the Gulf South led to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used to construct and refurbish homes in coastal areas of the country, notably the Gulf and East Coasts. Sometime after the Chinese drywall was installed, homeowners began to complain of foul-smelling odors, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829–30 (E.D. La. 2012),

1

*aff'd*, 742 F.3d 576 (5th Cir. 2014). Many of these homeowners also began to complain of various physical afflictions believed to have been caused by the Chinese drywall.

These homeowners then began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. Because of the commonality of facts in the various cases, this litigation was designated as a multidistrict litigation. Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation on June 15, 2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 09-2047 before this Court.

The Chinese drywall at issue was largely manufactured by two groups of defendants: (1) the Knauf Entities and (2) the Taishan Entities. The litigation has focused on these two entities and their downstream associates and has proceeded on strikingly different tracks for the claims against each group.[1] Relevant to this Order are the Chinese Defendants. These Defendants include the principal Chinese-based Defendant, Taishan, namely, Taishan Gypsum Co. Ltd. ("TG") and its wholly-owned subsidiary, Taian Taishan Plasterboard Co., Ltd. ("TTP") (collectively "Taishan" or "Taishan Entities"). Other Chinese-based Defendants include China New Building Materials Group ("CNBM Group"), China New Building Materials Co. ("CNBM"), CNBMIT Co. Ltd. ("CNBMIT"), CNBM USA Corp. ("CNBM USA"), and United Suntech Craft, Inc. ("United

---

[1] The Knauf Entities are German-based, international manufacturers of building products, including drywall, whose Chinese subsidiary, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), advertised and sold its Chinese drywall in the United States. On December 20, 2011, the Knauf Entities and the PSC entered into a global, class Settlement Agreement ("Knauf Settlement Agreement"), which was designed to resolve all Knauf-related, Chinese drywall claims. In addition to the Knauf Settlement Agreement and after a jury trial in a bellwether case, numerous defendants in the chain-of-commerce with the Knauf Entities have entered into class settlement agreements, the effect of which settles almost all of the Knauf Entities' chain-of-commerce litigation. The total amount of the Knauf Settlement is approximately $1.1 billion. Although the Court occasionally had to deal with settlement administration and enforcement issues, with the assistance of Special Master Dan Balhoff, the Knauf portion of this litigation is now resolved.

2

Suntech") (collectively the "CNBM Entities"), as well as the Beijing New Building Materials Public Limited Company ("BNBM") and Beijing New Building Material Group ("BNBMG") (collectively the "BNBM Entities").

The Court's initial inquiry regarding Taishan involved four cases in this MDL: (1) *Germano v. Taishan Gypsum Co.* (Case No. 09-6687); (2) *The Mitchell Co. v. Knauf Gips KG* (Case No. 09-4115); (3) *Gross v. Knauf Gips KG* (Case No. 09-6690); and (4) *Wiltz v. Beijing New Building Materials Public Ltd.* (Case No. 10-361).

The first issues involving Taishan arose when Taishan failed to timely answer or otherwise enter an appearance in *Mitchell* and *Germano*, despite the fact that it had been properly served in each case. Thus, after an extended period of time, the Court entered preliminary defaults against Taishan in both cases. Thereafter, the Court moved forward with an evidentiary hearing in furtherance of the preliminary default in *Germano* on Plaintiffs' claimed damages. At the hearing, the PSC presented evidence specific to seven individual properties, which served as bellwether cases. Thereafter, on February 19 and 20, 2010, the Court issued detailed Findings of Fact and Conclusions of Law. On May 11, 2010, the Court issued a Default Judgment against Taishan in *Germano* and in favor of Plaintiffs.

On June 10, 2010, the last day to timely appeal the Default Judgment against them, Taishan filed a Notice of Appeal in *Germano* and entered its appearance in *Germano* and *Mitchell*. After Taishan entered its appearance in the MDL, it quickly sought to have the Default Judgment in *Germano* and the Preliminary Default in *Mitchell* vacated for lack of personal jurisdiction. Because this was the first time Defendants raised jurisdictional issues, the Fifth Circuit remanded the case to this Court to determine whether this Court indeed has jurisdiction over Taishan.

In the fall of 2010, the Court directed the parties to commence the personal jurisdiction discovery necessary to resolve Taishan's motions to vacate. Sometime after the initial discovery, the parties agreed to expand the discovery beyond the *Germano* and *Mitchell* cases to other cases in which Taishan had been served, including *Gross* and *Wiltz*.

Formal personal jurisdiction discovery of Taishan began in October 2010. Discovery included the production of both written and electronic documents as well as depositions of Taishan's corporate representatives, with each type of discovery proceeding in a parallel fashion. This discovery was highly contentious, requiring close supervision by the Court. The Court presided over regularly-scheduled status conferences, conducted hearings, and issued rulings to resolve numerous discovery-related disputes.

In June 2011, the PSC filed identical complaints in Federal district courts in Florida, Virginia, and Louisiana (the "*Amorin* complaints"). The *Amorin* complaints include all Plaintiffs named in the *Wiltz*, *Gross*, *Abel*, and *Haya* actions. The Florida and Virginia actions were transferred by the JPML to the MDL; the PSC filed the Louisiana omnibus complaint directly into the MDL. It is undisputed that the allegations and Plaintiffs named in the *Amoin* complaints are identical. According to the PSC, these identical complaints were filed "out of an abundance of caution," because "there existed a colorable question regarding the application of the jurisdictional tests known as the 'stream-of-commerce' test and the 'stream-of-commerce-plus' test reflected in the plurality opinions in *McIntyre* and *Asahi*, as well as Justice Brennan's concurring opinion in *Asahi*."

In April 2012, Taishan filed various motions, including motions to dismiss for lack of personal jurisdiction. On June 29, 2012, over three years since the creation of this MDL and after a year-and-a-half of personal jurisdiction discovery on Taishan, the Court presided over a hearing

4

on Taishan's motions. The Court coordinated its hearing with the Honorable Joseph Farina of the Florida state court, who had a similar motion involving Taishan's challenge to personal jurisdiction.

On September 4, 2012, this Court issued a 142-page Order regarding Taishan's motions in *Germano*, *Mitchell*, *Gross*, and *Wiltz*, in which the Court denied the motions to dismiss and held that it maintained personal jurisdiction over Taishan. *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819 (E.D. La. 2012). The Court also ruled that Taishan was operating as the alter ego of TG and TTP. The Court certified an interlocutory appeal, and the Fifth Circuit granted permission to appeal. In January and May of 2014, two different panels of the Fifth Circuit affirmed this Court's ruling and held that this Court maintained personal jurisdiction over Taishan, TG, and TTP. *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 753 F.3d 521 (5th Cir. 2014); *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576 (5th Cir. 2014). The time for writ of certiorari passed, and the issue of personal jurisdiction over Taishan became firmly and finally settled. Nevertheless, Taishan refused to voluntarily participate in this suit.

On June 20, 2014, the Court ordered Taishan to appear in open court on July 17, 2014 to be examined as a judgment debtor. Taishan failed to appear for the July 17, 2014 Judgment Debtor Examination, and the Court held Taishan in contempt, ordering that Taishan pay $15,000.00 in attorneys' fees to Plaintiffs' counsel and $40,000.00 as a penalty for contempt; Taishan and any of its affiliates or subsidiaries be enjoined from conducting any business in the United States until or unless it participates in this judicial process; and if Taishan violates the injunction, it must pay a further penalty of twenty-five percent of the profits earned by the Company or its affiliate who violate the Order for the year of the violation.

On July 23, 2014, the PSC filed their Omnibus Motion for Class Certification pursuant to Rule 23(b)(3). Taishan did not appear and, on September 26, 2014, this Court certified a class of all owners of real properties in the United States, who are named Plaintiffs on the complaints in *Amorin*, *Germano*, *Gross*, and/or *Wiltz* (*i.e.*, not an absent class member), asserting claims for remediated damages arising from, or otherwise related to Chinese Drywall manufactured, sold, distributed, supplied, marketed, inspected, imported or delivered by the Taishan Defendants. R. Doc. 18028.

Taishan finally entered an appearance with the Court in February 2015, and, to satisfy the contempt, Taishan paid both the sum of $15,000.00 in attorneys' fees to Plaintiffs' counsel and the contempt penalty of $40,000.00 in March 2015. On March 17, 2015, the Court ordered Taishan and the BNBM and CNBM Entities to participate in expedited discovery related to "the relationship between Taishan and BNBM/CNBM, including whether affiliate and/or alter ego status exists."

On March 10, 2016, this Court granted CNBM Group's motion to dismiss, finding it was an "agent or instrumentality of a foreign state" within the meaning of the Foreign Sovereign Immunities Act ("FSIA"), and therefore outside the jurisdiction of this Court under 28 U.S.C. § 1603(b). R. Doc. 20150. The Court determined the tortious activity exception did not apply because the alleged tortious conduct did not occur within the United States under 28 U.S.C. § 1605(a)(5). Further, the Court found the commercial activity exception did not apply, as CNBM Group did not directly manufacture, inspect, sell, or market drywall in the United States. Because the PSC failed to present evidence sufficient to overcome the presumption that CNBM Group was entitled to independent status for purposes of the FSIA, the Court granted the motion and dismissed CNBM Group from the present litigation. It is this Order & Reasons the PSC now seeks to certify for immediate appeal.

After concluding it lacked personal jurisdiction over CNBM Group, on April 21, 2017, the Court issued a 100-page opinion related to jurisdictional challenges being raised with respect to CNBM, BNBM Group, and BNBM. The Court found Taishan was an agent of BNBM under Florida and Virginia law, such that Taishan's contacts in Florida and Virginia are imputed to BNBM. This Court further found that CNBM, BNBM Group, and BNBM were part of a single business enterprise with Taishan under Louisiana law, such that Taishan's contacts in Louisiana may be imputed to them, and that the Court has jurisdiction over CNBM, BNBM Group, and BNBM in relation to Plaintiffs' claims based on Louisiana law. Also on April 21, 2017, the Court issued its Findings of Fact and Conclusions of Law related to the June 9, 2015 damages hearing and adopted the PSC's damage calculations methodology related to remediation of properties.

On May 22, 2017, Defendants filed a motion pursuant to 28 U.S.C. § 1292(b) to certify an interlocutory appeal from this Court's April 21, 2017 jurisdiction order. Because the Court found the April 21, 2017 Order & Reasons involved a controlling question of law as to which there was substantial ground for difference of opinion, and because the Court further found that an interlocutory appeal might materially advance the ultimate termination of this MDL, on August 4, 2017, the Court certified an interlocutory appeal to the Fifth Circuit pursuant to 28 U.S.C. § 1292(b).

On August 1, 2017, Defendants filed a motion to dismiss for lack of personal jurisdiction following the recent U.S. Supreme Court case of *Bristol-Myers Squibb v. Superior Court of California* ("*Bristol-Myers*"), 137 S. Ct. 1773 (2017). Based on *Bristol-Myers*, Defendants contested this Court's findings of personal jurisdiction, class certification, and agency relationship. On August 14, 2017, Defendants filed a petition for permission to appeal pursuant to 28 U.S.C. § 1292(b) in the Fifth Circuit, in which they argued *Bristol-Myers* impacted questions raised on

appeal.  On August 24, 2017, this Court vacated its 28 U.S.C. § 1292(b) certification order to avoid piecemeal litigations, noting its duty to address the effect of *Bristol–Myers* on the jurisdictional issue before certifying the matter to the Fifth Circuit.  Subsequently, on November 30, 2017, the Court denied Defendants' motion to dismiss, holding *Bristol-Myers* did not change this Court's jurisdictional findings and class certification.

On January 2, 2018, the Court denied Defendants CNBM, BNBM Group, and BNBM's motion to vacate the default judgments against them.  On March 6, 2018, the Court reinstated its order to certifying the interlocutory appeal of its April 21, 2017 order.  The Court nevertheless denied Defendants' request to certify the interlocutory appeal of its opinion involving *Bristol–Myers*' impact on the Court's personal jurisdiction analysis, as the Supreme Court's opinion in *Bristol–Myers* does not address class actions and because two separate panels of the Fifth Circuit had already affirmed the Court's original personal jurisdiction analysis with respect to Taishan in 2014. This issue remains with the Fifth Circuit.

In the motion presently before the Court, the PSC moves to certify the Court's March 10, 2016 Order & Reasons in which the Court granted CNBM Group's motion to dismiss pursuant to the FSIA. R. Doc. 21533.

## II.    DISCUSSION

The PSC moves to certify this Court's March 10, 2016 Order & Reasons in which the Court granted Defendant CNBM Group's motion to dismiss on the grounds of immunity under the FSIA. R. Doc. 21533. The PSC argues an immediate appeal will resolve controlling questions of law, R. Doc. 21533-9 at 11, and that definitively answering these jurisdictional questions—whether CNBM Group is presumptively immune and whether the PSC failed to establish exceptions to the FSIA—will save time and expense for the Court and litigants, R. Doc. 21533-9 at 11. The PSC

further argues there is substantial ground for difference of opinion on this jurisdictional issue, R. Doc. 21533-9 at 12, and that an immediate appeal will advance termination of the litigation, R. Doc. 21533-9 at 15. Finally, the PSC argues its motion is timely because: (1) the Court's April 21, 2017 Order & Reasons regarding this Court's jurisdiction over CNBM, BNBM Group, and BNBM is presently before the Fifth Circuit, R. Doc. 21533-9 at 15–16; and (2) the U.S. Supreme Court's recent decision in *Animal Science Products, Inc. v. Hebei Welcome Pharmaceutical Co. Ltd.*, 138 S. Ct. 1865, 1869 (2018), in which the Supreme Court held a federal court "is not bound to accord conclusive effect to [a] foreign government's statements," places the validity of this Court's jurisdictional analysis with respect to CNBM Group into question, R. Doc. 21533-9 at 12.

In opposition, Defendant CNBM Group argues the motion is untimely, having been filed more than two years after the Court issued the Order & Reasons the PSC seeks to certify. R. Doc. 21730 at 3. Moreover, CNBM Group submits the U.S. Supreme Court's decision in *Animal Science Products* has no bearing on the instant case and therefore does not excuse the untimeliness of the PSC's motion. R. Doc. 21730 at 4. CNBM Group addresses the PSC's argument that the interlocutory appeal of the Court's March 10, 2016 Order & Reasons would be judicially efficient because the issue of jurisdiction with respect to CNBN, BNBM Group, and BNBM is presently before the Fifth Circuit by pointing out that the issues presented in the two orders are discrete and, in any event, would not be heard at the same time or by the same panel of the Fifth Circuit. R. Doc. 21730 at 6. Finally, CNBM Group argues the Court's March 10, 2016 Order & Reasons does not concern a controlling issue of law; rather, according to CNBM Group, the PSC identifies only questions of fact regarding whether the circumstances of this case support immunity. R. Doc. 21730 at 7–10.

## III. LEGAL STANDARD

United States Code, Title 28, section 1292(b) governs when a district court may certify an interlocutory order for appeal. It provides that a district court may certify an order for immediate appeal if the order (1) "involves a controlling question of law," (2) as to which "there is substantial ground for difference of opinion" and where (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

The availability of such an appeal under § 1292(b) does not "jeopardiz[e] the usual rule of not permitting an appeal until all the proceedings on the trial court level are complete." 10 Charles Alan Wright, et al., FED. PRAC. & PROC. JURIS. § 2658.2 (3d ed. 1998 & 2009 supp.). Rather, § 1292(b) is a "narrow exception" to the traditional rule that appeals may only be made after final judgment, *In re Rolls Royce Corp.*, 775 F.3d 671, 676 (5th Cir. 2014), and relief under it is granted only in "exceptional cases," *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 74 (1996) (internal quotations omitted). An interlocutory appeal "does not lie simply to determine the correctness of a judgment." *Chauvin v. State Farm Mut. Auto. Ins. Co.*, Nos. 06-7145 & 06-8769, 2007 WL 4365387, at *2 (E.D. La. Dec. 11, 2007) (quoting *Clark-Dietz & Assocs.-Eng'rs, Inc. v. Basic Const. Co.*, 702 F.2d 67, 68, 69 (5th Cir. 1983)).

Both the district court's decision to certify an order for appeal and the court of appeals' decision to accept the appeal are discretionary. *See U.S. v. Caremark, Inc.*, 634 F.3d 808, 814 (5th Cir. 2011); *see also* 28 U.S.C. § 1292(b) ("The Court of Appeals . . . may . . . in its discretion, permit an appeal to be taken."); S. Rep. No. 85–2434 (1958), *reprinted in* 1958 U.S.C.C.A.N. 5255, 5257 ("[T]he appeal is discretionary rather than a matter of right. It is discretionary in the first instance with the district judge . . . ."). The moving party bears the burden of demonstrating that interlocutory appeal is appropriate. *In re FEMA Formaldehyde Prods. Liab. Litig.*, No. MDL 07-1873, 2008 WL

4923035, at *2 (E.D. La. Nov. 13, 2009) (citing *In re Complaint of L.L.P. & D. Marine, Inc.*, Nos. 97-1668, 97-2992 & 97-3349, 1998 WL 66100, at *1 (E.D. La. Feb. 13, 1998)).

### IV. ANALYSIS

Defendants largely take issue with the timeliness of the PNC's motion. They contended the motion should be denied as untimely, having been brought more than two years after the Court issued the Order & Reasons from which the PSC now seeks interlocutory appeal. The Court agrees.

As the Court previously explained, a district court may certify an order for immediate appeal pursuant to 28 U.S.C. § 1292(b) if: the order (1) "involves a controlling question of law," (2) as to which "there is substantial ground for difference of opinion" and where (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). "Prior to applying the three-part statutory test, however, in this instance a threshold requirement for certification must be addressed. Any such request for certification must be timely." *Abbey v. United States*, 89 Fed. Cl. 425, 429–32 (Ct. Fed. Cl. 2009) (reviewing U.S. district court case law discussing timeliness of motions for certification under § 1292(b) and denying a motion filed ten months after interlocutory order) (quoting *Wolfchild v. United States*, 78 Fed.Cl. 472, 481 (Fed. Cl. 2007)).

While § 1292(b) provides a deadline by which a party must apply to the court of appeals for permission to appeal an order, "it does not set a deadline for parties to move for certification of an order by the district court." *Teladoc, Inc. v. Tex. Med. Bd.*, No. 15-343, 2016 WL 4362208, at * (W.D. Tex. Aug. 15, 2016). Nevertheless, district courts routinely exercise their discretion to deny motions seeking certification when the motion is filed after an unreasonable amount of time. *See, e.g.*, *id.* at *4; *Oasis Research, LLC v. EMC Corp.*, No. 10-435, 2015 WL 5318119, at *4 (E.D.

11

Tex. Sept. 11, 2015) (denying motion for certification as untimely when it was filed one day before defendants' production deadline and seven weeks before trial was scheduled to begin); *Franklin v. Gen. Trucking LLC*, No. 07-5002, 2008 WL 4531779, at *2 (W.D. Ark. Oct. 8, 2008) (denying motion for certification after "litigation continued" during a "lengthy" four month delay); *Green v. City of New York*, No. 05-0429, 2006 WL 3335051, at *2 (E.D.N.Y. Oct. 23, 2006) (denying motion for certification due to "defendants' more than two-month delay in requesting certification"); *Fabricant v. Sears Roebuck & Co.*, No. 98-1281, 2001 WL 883303, at *1 (S.D. Fla. Jan. 29, 2001) (denying motion for certification as untimely where "[d]efendants waited forty-six days after the filing of the [interlocutory order]"); *Ferraro v. Sec'y of U.S. Dep't of Health & Hum Servs.*, 780 F. Supp. 978, 979 (E.D.N.Y. 1992) (denying motion for certification after "plaintiff's two and a half month delay"); *Morton Coll. Bd. of Trustees v. Town of Cicero*, 25 F. Supp. 2d 882, 885 (N.D. Ill. 1998) (denying motion for certification as untimely when it was filed 30 days after the interlocutory order).

Although the Fifth Circuit has not articulated a test for timeliness with respect to motions filed in the district court pursuant to 28 U.S.C. § 1292(b), the Seventh Circuit has repeatedly held that district courts must consider as a threshold issue whether a motion for certification was timely filed in deciding whether to certify an interlocutory order. *See Ahrenholz v. Bd. of Trustees of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000) (Posner, C.J.) (stating that § 1292(b) has "a nonstatutory requirement" that "the petition . . . be filed in the district court within a reasonable time after the order sought to be appealed"); *Richardson Elecs., Ltd. v. Panache Bd. of Penn., Inc.*, 202 F.3d 957, 958 (7th Cir. 2000) ("[A] district judge should not grant an inexcusably dilatory request" for certification); *Weir v. Propst*, 915 F.2d 283, 287 (7th Cir. 1990) (suggesting that district court abused its discretion in certifying an interlocutory order where "[n]either the parties nor the district

judge . . . presented any reason for the delay in certification"). Thus, the Court concludes that as a part of its discretionary function, it must consider the timeliness of the PNC's motion and determine whether its request for interlocutory appeal was inexcusably delayed in filing. *Richardson*, 202 F.3d at 958.

The PSC filed its motion for certification on July 17, 2018, two years, four months, and one week after the Court issued its Order & Reasons on March 10, 2016. The PSC argues this delay is reasonable, pointing to: (1) the Court's recertification of its April 21, 2017 jurisdictional order addressing the Chinese Defendants' agency relationship on March 6, 2018; and (2) the U.S. Supreme Court's decision in *Animal Science Products, Inc. v. Hebei Welcome Pharmaceutical Co. Ltd.*, 138 S. Ct. 1865, 1869 (2018). According to the PSC, these events both serve as "triggering" events that made the Court's March 10, 2016 order ripe for review. Neither argument persuades.

First, even assuming *arguendo* the Court's March 10, 2016 Order & Reasons did not become "ripe for consideration" until the Court recertified its April 21, 2017 order on March 6, 2018, the PSC did not seek certification of the March 10, 2016 order until over four months after the Court recertified its April 21, 2017 Order & Reasons for appeal. *See Green*, 2006 WL 3335051, at *2 (denying motion for certification due to "defendants' more than two-month delay in requesting certification"). Moreover, the PSC opposed recertification of this order. *See* R. Doc. 21158. Finally, as CNBM Group points out, granting the PSC's instant motion would not allow the Fifth Circuit to consider concurrently the jurisdictional issues raised in each order. Moreover, the issues presented the orders are distinct. The Court held it lacked personal jurisdiction over CNBM Group pursuant to its finding that CNBM Group is an "agent or instrumentality of a foreign state" entitled to immunity under the FSIA. Contrastingly, the Court held it could

13

exercise personal jurisdiction over CNBM, BNBM Group, and BNBM, based on its finding that these entities are part of a single business enterprise with Taishan. In sum, given the substantial delay in filing the instant motion, these issues would be considered by two separate panels of the Fifth Circuit that would be tasked with considering two distinct issues of law. The Court's recertification of its April 21, 2017 Order & Reasons for appeal does not excuse the PSC's failure to timely seek certification of the Court's March 10, 2016 Order & Reasons.

Second, the U.S. Supreme Court's ruling in *Animal Science* is not applicable to the issue at bar. In *Animal Science*, the Supreme Court rejected the U.S. Court of Appeals for the Second Circuit's ruling in *In re Vitamin C Antitrust Litigation*, 837 F.3d 175 (2d Cir. 2016), in which the Second Circuit held federal courts are "bound to defer" to a foreign government's construction of its own law, 837 F.3d at 189, and instead held that "[a] federal court should accord respectful consideration to a foreign government's submission, but is not bound to accord conclusive effect to the foreign government's statements," *Animal Science*, 138 S. Ct. at 1869. The Court notes that, in its March 10, 2016 Order & Reasons, it did not base its findings on representations from Chinese officials alone. As the Court explained:

> First, as a state-owned entity, CNBM Group enjoys a presumption of immunity under FSIA. Second, because it does no business in the United States, and has never manufactured, marketed, sold, or shipped drywall in China or anywhere else, no exception to immunity applies to CNBM Group. Finally, and most critically, Plaintiffs have not put forth sufficient evidence to show that CNBM Group controlled the day-to-day operations of Taishan and its subsidiaries as required under FSIA to demonstrate an alter ego relationship and overcome the presumption of separate status. Other than evidence of instances of supervision, general corporate governance structure, or high-level policy directives, the majority of Plaintiffs' evidence shows that CNBM Group played a role in coordinating the conglomerate corporation, including Taishan's, response to the litigation. However, as stated above, control over massive litigation is not equivalent to control over day-to-day operations. This Court therefore lacks subject-matter jurisdiction over CNBM Group because it is entitled to sovereign immunity under FSIA.

14

R. Doc. 20150 at 32. Thus, *Animal Science* is inapplicable to this case, as the Court did not simply accept a representation from the Chinese Government as dispositive; rather, it concluded that the PSC had failed to present evidence demonstrating CNBM Group was not entitled to immunity under the FSIA. As a result, the Court finds the PSC has failed to bear its burden of showing its more than two-year delay in filing the motion was reasonable.

V. **CONCLUSION**

Because the PSC's delay in seeking certification of the Court's March 10, 2016 Order & Reasons was not reasonable, the Court will not exercise its discretion to certify the order for immediate appeal. *See Gagan v. Sharar*, No. 99-1427, 2006 WL 3736057, at *2 (D. Ariz. Nov. 6, 2006) ("[D]efendant's unexplained delay of fifteen months cannot be tolerated.").

Accordingly,

**IT IS ORDERED** that the PSC's motion for certification of this Court's March 10, 2016 order, R. Doc. 21533, be and hereby is **DENIED**.

New Orleans, Louisiana, this 4th day of October, 2018.

**ELDON E. FALLON**
United States District Judge