UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE-MANUFACTURED    MDL NO. 2047
DRYWALL PRODUCTS
LIABILITY LITIGATION            SECTION: L

THIS DOCUMENT RELATES TO:       JUDGE FALLON

*ALL CASES*                     MAG. JUDGE WILKINSON

************************************************************************

## SUPPLEMENTAL MEMORANDUM OF ANDERSON KILL P.C. ("AK") TO REPLY OF MAJORITY OF THE FEE COMMITTEE

Numerous allegations in the Reply of the Majority of the Fee Committee are demonstrably false. Anderson Kill should be awarded $843,002.

1. AK "contributed in an extremely limited basis."

The auditor appointed by the Court, Philip Garrett, approved $1,569,533.45 of AK's fees as common benefit work. The Fee Committee itself on May 23, 2018 recognized the The Total Lodestar for AK as $1,770,088.90. That does not reflect that an "extremely limited" contribution.

In fact, very extensive work was done by AK at the express request of the PSC (set out in part in pages 8-12 of AK's Objection dated July 13, 2018), including, without limitation, (a) extensive briefing in opposing the insurance companies' separate motions to dismiss for (i) lack of personal jurisdiction and (ii) failure to join indispensable parties, (b) taking depositions establishing personal jurisdiction, (c) ferreting out evidence presented to the Court demonstrating that the insurance companies transacted business in Louisiana, (d) arguing those

motions before the Court, (e) drafting the discovery served on the insurance companies that the PSC adopted, (f) numerous sessions of meeting and conferring with the insurance companies, (g) opposing the insurance companies' motions for protective orders, (h) drafting multiple motions to compel discovery from the insurance companies, (i) arguing those motions before the Court, (j) analyzing the pollution exclusion briefing in the Travco case before the United States Court of Appeals for the Fourth Circuit, etc. Those just are some examples of the numerous tasks the PSC expressly asked AK to undertake on the PSC's behalf for the common benefit. The PSC also expressly asked AK to come to and participate in the third mediation in New Orleans given that AK initiated and hosted the first two global mediations in AK's offices. In addition, AK researched, drafted and filed motions for summary judgment regarding insurance case dispositive issues of the (a) pollution exclusion and (b) trigger adopted by the PSC. The insurance companies settled shortly after AK drafted and filed those insurance case dispositive motions. Just those examples reflect that AK's contribution was not "extremely limited."

> 2. "All of which proved to be generally unsuccessful" (page 25). "AK did not materially advance the litigation." (page 27)

Only because of AK's extensive work at the express request of the PSC, the Court ruled in favor of the PSC denying the insurance companies' motions to dismiss for (a) lack of personal jurisdiction and (b) failure to join indispensable parties. That only was after extensive AK discovery, extensive AK briefing, and AK argument in this just one example. But for AK's success, the insurance companies would have been dismissed from the MDL -- the insurance companies would not have settled -- the insurance companies would not have paid $80 million – and the seed money for the Knauf settlement would not have come from the insurance companies' settlement. AK was successful in materially advancing the litigation.

2

       3.    "The mediations in question addressed matters as to the WCI Trust only."

             "AK's involvement in the Global Settlement was virtually nil."

Knauf was present at the mediations. The PSC was present at the mediations. Russ Herman was present at the mediations. The mediator appointed for the MDL by Judge Fallon was present at the mediations. Global issues were negotiated.

Please see the attached Declaration of Hon. Robert C. Pate, whom the Fee Committee never contacted.

The attendees at the 9/20/10 AK initiated and hosted mediation in AK's offices in Philadelphia included Kerry Miller for Knauf, Michael Peterson for Banner, Lenny Davis for the PSC, and John Perry, the MDL mediator, as well as eight insurance company representatives. A Kerry Miller (Knauf's counsel) e-mail dated July 15, 2010 states: "On behalf of KPT, we are fine with either mediator and the last week of August or early Sept. work best for us."

As to the December 6, 2010 second global mediation initiated and hosted by AK in AK's office in New York is a John Perry 10/20/10 e-mail states "I spoke with Greg Wallace on Monday. Knauf is ready to go." A Kerry Miller 11/7/10 e-mail copying Mr. Levin, Mr. Herman, and Mr. Wallace states: "I would like to combine a WCI mediation with one involving the same carries and their CDW exposure beyond WCI. I've previously discussed this with Russ, Arnie and John Perry . . . . This more global mediation will give Lutz and the other carriers the appropriate motivation . . . . Judge Fallon will issue a mediation order requiring same."[1]

---

[1] These e-mails all are attached to the AK Objection dated July 13, 2018.

3

docs-100046856.1

Those were global mediations not limited to WCI issues. AK initiated them. AK hosted them in AK's Philadelphia office and AK's New York office. Knauf participated. Banner participated. The PSC participated. The MDL mediator participated.

4. "Para-professional's hours were excessive and not justified."

The extensive insurance policy analysis of hundreds of insurance policies covering dry wall losses performed by AK's policy analysts not only was necessary to meet the numerous express urgent requests of the PSC, it expressly was approved by Philip Garrett, the auditor appointed by the Court. You can't defeat numerous motions to dismiss by dozens of insurance companies and get $80 million from insurance companies without analyzing their insurance policies. AK's para-professional insurance policy analysts were needed to do that. The PSC relied on AK's para-professional insurance policy analysts to do that. And took the benefit.

5. "Obviously, WCI Trustee Pate, by reducing the monies he submitted to AK, agreed."

This is a materially false statement in a federal filing without any good faith basis. Please see the attached Declaration of Hon. Robert C. Pate, whom the Fee Committee never contacted. Judge Pate did and does not agree. Judge Pate never reduced one penny of monies submitted to AK. Judge Pate fully supports AK's application.

6. "AK had a contingency fee of 15% with WCI, which resulted in a payment to the firm of $344,530.25."

4

docs-100046856.1

AK's full fees and costs were $3,390,682.50. The $344K contingency payment was for work AK performed unique to the WCI Trust and had nothing to do with and was separate from the $1,569,533.45 in common benefit work done by AK as recognized by the Court's auditor, Philip Garrett. Please see Declaration of Hon. Robert C. Pate attached.

> 7. "AK contends that its work should be compensated based on its inflated Lodestar."

The Fee Committee recognized AK's Total Lodestar as $1,770,088.90. The Court's auditor, Philip Garrett, approved $1,569,533.45 of AK's work as common benefit work compliant with the dictates of PTO 9. AK now just asks for $843,002. AK now just asks for the proportionate share of the overall common benefit fee distribution available based on the Total Lodestar. AK does not request an upward or downward departure from a proportionate distribution. There is no basis whatsoever for a downward departure from a proportionate distribution to AK if the dictates of the U.S. District Court or the U.S. Court of Appeals for the Fifth Circuit are to be followed.

Dated: October 5, 2018

Respectfully submitted,
/s/ Robert M. Horkovich

Robert M. Horkovich
State Bar No. 1679778
Anderson Kill P.C.
1251 Avenue of the Americas
New York, New York 10020
P: 212-278-1000
F: 212-278-1733
rhorkovich@andersonkill.com