UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE -MANUFACTURED
DRYWALL PRODUCTS LIABILITY
LITIGATION

MDL NO. 2047

SECTION: L

JUDGE ELDON FALLON
MAGISTRATE WILKINSON

# Report and Recommendations

On March 7, 2018, the Court asked the Special Master to issue recommendations concerning the disposition of 16 already remediated properties (ARH) claims. On March 9, 2018, the Special Master emailed the parties' attorneys, asking for the submission of position papers and exhibit. After considering the arguments and evidence submitted by the parties, the Special Master recommends, for the reasons stated below, that the Court deny 15 of the 16 claims.[1]

## I. Two issues are common to these claims.

### A. Knowledge of Chinese drywall precludes recovery, but the standard for knowledge depends upon the applicable settlement agreement.

In early 2012, the Knauf Defendants ("Knauf") agreed to enter into a class settlement with three subclasses: the Residential Owner Subclass; the Commercial Owner Subclass; and the Tenant Subclass.[2] The Residential Owner Subclass and the Commercial Owner Subclass collectively are

---

[1]The sole exception is the claim of Thomas and Martha Williams for their property located at 301 Intrepid Drive, Slidell, Louisiana. The Special Master has asked the parties' attorneys to address an issue concerning that claim. After receiving comment from the attorneys, the Special Master will make a recommendation as to the disposition of the Williams' claim.

[2]R. Doc. 12918-3 (Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047 §§ 1.1.2.1, 1.1.2.2, and 1.1.2.4).

known as Owners or the Owner Subclasses.[3]  The parties later amended the settlement three times,[4] but those amendments did not change the settlement agreement in a way that is relevant to the disposition of the matters before the Special Master today.

By its own terms, the Knauf Settlement Agreement, both as originally adopted and as amended, offered class membership only to persons "who, as of December 9, 2011, filed a lawsuit in the Litigation as a named plaintiff (i.e., not an absent class member) asserting claims arising from, or otherwise related to, KPT Chinese Drywall, whether or not the Knauf Defendants are named parties to the lawsuit."[5]  Because this version of the settlement agreement, even as amended, only applied to claims asserted on or before December 9, 2011, it became known as the "Old Claims Settlement Agreement."

On August 12, 2013, the parties agreed to extend some, but not all, of the benefits of the class settlement to persons who had filed claims after December 9, 2011.[6]  This "New Claims Settlement Agreement" (so named because it extended benefits to newer claims which previously had not been included) differs from the "Old Claims Settlement Agreement" in a number of ways.

---

[3]R. Doc. 12918-3 (Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047 § 1.1.2.3).

[4]R. Docs. 15787 (Amended Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047); 15948-2 (Second Amendment to Settlement Agreement Regarding Claims Against Interior-Exterior in MDL No. 2047 and Second Amendment to Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047); and 16407-3 (Third Amended Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047).

[5]See, e.g., R. Doc. 12918-3 (Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047 § 1.1.2).

[6]R. Doc. 16978-1 (Settlement Agreement Regarding Post-December 9, 2011 Claims Against the Knauf Defendants in MDL No. 2047).

Only one difference is significant here – the degree of a claimant's knowledge that precludes recovery.

The Old Claims Settlement Agreement provides:

> The Residential Owner Subclass shall not include Owners, other than Mortgagees, who purchased Affected Properties with knowledge that the properties contained KPT Chinese Drywall.

> \* \* \* \* \*

> The Commercial Owner Subclass shall not include Owners, other than Mortgagees, who acquired Affected Properties through foreclosure with knowledge that the properties contained KPT Chinese Drywall except for former owners who lost Affected Properties due to foreclosure or sold Affected Properties in a Short Sale to avoid foreclosure.[7]

The New Claims Settlement Agreement provides:

> Any Exhibit A Claimant[8] or Exhibit B Claimant[9] who purchased the Affected Property with knowledge that there was reactive Chinese Drywall in the Affected Property, or who purchased after December 9, 2009 and failed to make a reasonable inquiry, is not eligible for benefits under this Agreement. . . .[10]

---

[7]R. Doc. 12918-3 (Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047 §§ 1.1.2.1, 1.1.2.2).

[8]"'Exhibit A Claimants' means those claimants listed on Exhibit A [*i.e.*, R. Doc. 16978-2] who have supplied indicia satisfactory to the Knauf Defendants to provisionally establish that they own an Affected Property with reactive KPT Chinese D1ywall, subject to a confirmatory inspection." R. Doc. 16978-1 (Settlement Agreement Regarding Post-December 9, 2011 Claims Against the Knauf Defendants in MDL No. 2047 § I.A).

[9]"'Exhibit B Claimants' means those claimants listed on Exhibit B [*i.e.*, R. Doc. 16978-3] who allege that they own an Affected Property with KPT Chinese Drywall, but who have yet to supply sufficient indicia to establish that they own an Affected Property with reactive KPT Chinese Drywall." R. Doc. 16978-1 (Settlement Agreement Regarding Post-December 9, 2011 Claims Against the Knauf Defendants in MDL No. 2047 § I.B).

[10]R. Doc. 16978-1 (Settlement Agreement Regarding Post-December 9, 2011 Claims Against the Knauf Defendants in MDL No. 2047).

Thus, the Old Claims Settlement Agreement precludes recovery if a claimant had actual knowledge of the presence of Chinese drywall at the time of purchase.  The New Claims Settlement Agreement precludes recovery (1) if a claimant had actual knowledge of the presence of Chinese drywall at the time of purchase; or (2) if a claimant failed to make a reasonable inquiry into the presence of Chinese drywall.  In other words, the New Claims Settlement Agreement provides Knauf an additional defense that is not available to it under the Old Claims Settlement Agreement.

The Special Master repeatedly has held that a claimant who failed to inquire into the presence of Chinese drywall at the time of purchase may not recover benefits under the New Claims Settlement Agreement.[11]  This is because the New Claims Settlement Agreement requires a reasonable inquiry (which is a lower threshold than actual knowledge), and a claimant who has made *no inquiry* has not made a *reasonable inquiry*.

## B.     Failure to preserve evidence precludes recovery.

On October 9, 2009, the Court promulgated Pretrial Order No. 1(B),[12] which set forth the Court's expectations concerning the preservation of evidence.  PTO 1(B) states in part:

> The Parties shall maintain at least two samples (of ten inches by ten inches (10" x 10") in size if possible) of every different drywall brand or marking removed from an affected property, including taking samples of unmarked drywall. If there are any markings on the sample, the samples should include as much of the identifiable marking as possible. In addition, the parties also shall preserve at least one sample of each type of drywall endtape, if any, that is found during inspection, repair or removal of drywall in or from a property.

---

[11] *See*, *e.g.*, R. Doc. 20373.

[12] R. Doc. 337 (Pretrial Order No. 1(B)).

These drywall and endtape samples shall be labeled with the date of collection, the room location and the specific wall that the sample was taken from. These drywall and endtape samples shall be stored separately in double-bagged polyethylene ziplock bags or equivalents, and not grouped together. Any drywall or endtape sample to be preserved under this paragraph shall be stored in reasonable climate controlled conditions and free of water or moisture. All samples should be clearly labeled on the outside of the plastic bag or equivalent, and then placed inside a second plastic bag or equivalent. The label shall include the name and address of the property from which the sample was taken, the date sampled, a sampler identification which identifies the type of item (e.g. drywall, copper wire, etc.), and where the item was taken from in the property.

In addition to taking these samples, the Parties shall photograph the backside of each Chinese drywall board immediately after it is removed on-site, and, document on a floor plan, building diagram, or other similar form of documentation, the location of each full or partial Chinese drywall board removed from the property and its photograph. Photographs of the wall sections should be taken so that any markings on the backside of the drywall sections are most clearly visible in the photographs.[13]

While the New Claims Settlement Agreement differs from the Old Claims Settlement Agreement in some ways, it adopts most of its provisions by reference.[14] This includes the requirement that ARH claimants abide by the Already Remediated Properties Protocol.[15] This protocol,[16] which is attached as Exhibit A to the Old Claims Settlement Agreement,[17] mandates a

_____

[13]R. Doc. 337 (Pretrial Order No. 1(B)).

[14]*See* R. Doc. 16978-1 (Settlement Agreement Regarding Post-December 9, 2011 Claims Against the Knauf Defendants in MDL No. 2047 §§ II.A and III.B).

[15]R. Doc. 12918-3 (Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047 § 4.3.7.1).

[16]R. Doc. 12061-6 (Already Remediated Properties Protocol).

[17]R. Doc. 12918-3 (Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047 § 1.4).

process for resolving ARH claims.  Among other things, the protocol requires an ARH claimant to produce evidence which complies with PTO 1(B).  If the ARH claimant fails to produce such evidence, and the failure prejudices Knauf's ability to evaluate the claim, the Special Master or the Court must disallow or reduce the claimant's recovery:

> The Special Master and the Court will take into consideration, in determining whether to allow a claim or the amount of the claim, whether the Owner has complied with MDL Pretrial Order [1(B)] (if the claim is pending in the MDL) or with applicable state law requirements for preservation of evidence (if the claim is pending in state court). Subject to review by the Special Master or the Court, the failure to preserve evidence as required by law will result in disallowance or reduction in the amount of the claim if the failure has been prejudicial to a determination of the claim.[18]

The Special Master repeatedly has denied recovery to claimants who have failed to preserve evidence in compliance with Court orders.[19]

## II.    The Special Master has the authority to address these issues.

The claimants here seek ARH benefits.  The Claims Settlement Agreement (whether Old or New) has always mandated a process for resolving ARH claims – the Already Remediated Claims Protocol.[20]

> This process consists of: (1) the Owner's provision of documents concerning the remediation; (2) a negotiation period; (3) a non-binding mediation, if necessary; and (4) if the mediation fails, a

---

[18]R. Doc. 12061-6 (Already Remediated Properties Protocol § IV.D.4).

[19]*See*, *e.g.*, R. Doc. 20300-1 (denying claim that failed to comply with PTO 1).

[20]R. Doc. 12918-3 (Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047 § 4.3.7.1).

proceeding before the Court to resolve the Remediation Claims.[21]

If the process reaches the fourth step (resolution by the Court), the protocol states:  "The scope of the Court's review shall be limited to the Reimbursable Costs set forth in Paragraph IV(D)."[22] Paragraph IV(D) essentially provides that a cost is not reimbursable unless it is for work that is "reasonably consistent" with the kinds of work that the Court-approved general contractor would have performed in analogous circumstances.  Paragraph IV(D) does not, however, affirmatively define which costs are reimbursable, which is a subset of the claimant's recoverable benefits.  While the New Claims Settlement Agreement opens the door to additional claimants, it does not define what benefits those claimants will receive.  That job remains with the Old Claims Settlement Agreement, the provisions of which the New Claims Settlement Agreement adopts by reference.[23]

Both the Old Claims Settlement Agreement and the New Claims Settlement Agreement acknowledge that, "[n]otwithstanding any other provision," the Court has jurisdiction for "purposes of administering, supervising, construing [and] enforcing" the settlement.[24]  Both Claims Settlement Agreements contemplate that the Court will be called upon to decide claimants' entitlements to benefits.  And both contemplate the possibility that the Court can request input from a Special

---

[21]R. Doc. 12061-6 (Already Remediated Properties Protocol § I).

[22]R. Doc. 12061-6 (Already Remediated Properties Protocol § IV.C.2).

[23]R. Doc. 16978-1 (Settlement Agreement Regarding Post-December 9, 2011 Claims Against the Knauf Defendants in MDL No. 2047 §§ II.A, II.E, and III.B).

[24]R. Doc. 12918-3 (Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047 § 15.1); R. Doc. 16978-1 (Settlement Agreement Regarding Post-December 9, 2011 Claims Against the Knauf Defendants in MDL No. 2047 § VII.C).

Master before the Court makes a final decision.[25]

Claimants here contend that the Special Master's (and presumably the Court's) determination should be conducted using a "summary judgment" standard.  Summary judgment is a procedural device whereby the litigants can avoid prolonged litigation because there is no disputed fact concerning who would win a full-blown trial.  It is not designed as a substitute for trial when there are material issues of fact in dispute.  Moreover, there is no legitimate reason to declare (as claimants contend should occur) the claimants as the ultimate victors simply because there are material issues of fact in dispute.  The better view is that both sides should marshal and present their evidence for the current proceeding (as the Special Master directed the attorneys to do); the Special Master will make a recommendation based upon that evidence (including, where necessary, making credibility determinations); and the Court subsequently will make a final decision.[26]

## III.    Recommendations concerning the claims.

- **Eric "Rick" and Colleen Asch – 138 Saint Clair Drive, St. Simons Island, Georgia.**

The subject property is included on Exhibit B.[27]  Therefore, the New Claims Settlement

---

[25]See, e.g., R. Doc. 12061-6 (Already Remediated Properties Protocol § IV.D.4). Indeed, even if the settlement agreements did not contemplate the use of a Special Master, the Court has the authority to employ one pursuant to F.R.C.P. 53.

[26]The Special Master gave the attorneys ample opportunity to submit evidence for his consideration. Both sides did in fact submit evidence, including affidavits, deeds, contractor reports, bills, photographs, etc.  The Special Master has based his determinations only on the evidence that was submitted to him, which constitutes the record in this matter.

[27]R. Doc. 16978-3.

Agreement controls the disposition of this claim.[28]

The parties have submitted evidence indicating the following:

o       Mr. Asch believes that Deutsche Bank National Trust Company, as trustee of IndyMac IMSC Mortgage Loan Trust-F1, had acquired the subject property through foreclosure on May 1, 2007.[29]

o       Deutsche Bank listed the subject property to be sold "As-Is" via an online auction with no disclosures regarding the condition of the subject property, including the presence of Chinese drywall.[30]

o       Prior to the time of purchase, Mr. Asch was a resident of California, and had not heard of the potential effects of Knauf-manufactured Chinese drywall.[31]

o       Mr. Asch and his realtor inspected the subject property once prior to the time of purchase.  They were permitted to enter the house, but were not permitted to conduct destructive testing.   Mr. Asch noted several areas of concern, but no "major defects."[32]

o       On May 24, 2012, the Asches purchased the subject property.[33]

o       On June 20, 2012, the Asches signed an "As Is" Property Acceptance Agreement.[34]

o       On August 31, 2012, Quantum Home Inspections Inc. conducted an inspection of the

---

[28]R. Doc. 16978-1 (Settlement Agreement Regarding Post-December 9, 2011 Claims Against the Knauf Defendants in MDL No. 2047 § III).

[29]Affidavit of Eric K. "Rick" Asch ¶ 10.

[30]Affidavit of Eric K. "Rick" Asch ¶ 11, 12.

[31]Affidavit of Eric K. "Rick" Asch ¶¶ 7, 8.

[32]Affidavit of Eric K. "Rick" Asch ¶¶ 14, 15, 16.

[33]Affidavit of Eric K. "Rick" Asch ¶ 3 and attachment (Special Warranty Deed dated May 24, 2012).

[34]Affidavit of Eric K. "Rick" Asch  attachment ("As Is" Property Acceptance Agreement dated June 20, 2012).

subject property.[35]  The subsequent Inspection Report includes six photographs of the backs of in-place (i.e., prior to removal) drywall.  The markings include such words as "KNAUF", "CHINA", and "TIANJIN".  The Inspection Report concluded: "Knauf Tianjin Chinese drywall was used in the construction of interior of this home."

○    Mr. Asch employed Greg Crosby, a contractor operating as Crosby Services, to perform repairs at the subject property, including drywall remediation[36].

○    Mr. Asch engaged Quantum Home Inspections Inc. to perform the post-environmental inspection.[37]

There is no direct evidence that anyone told the Asches that the subject property contained Chinese drywall prior to the date of purchase.  By the same token, there is no evidence that the Asches made any inquiry whatsoever into the presence of Chinese drywall before they purchased the subject property.  As the Special Master has held previously, *no inquiry* into the presence of Chinese drywall is not a *reasonable inquiry*.  For this reason, the Asches are not eligible for benefits under the New Claims Settlement Agreement.

The Asches also have failed to properly preserve and present evidence in compliance with PTO 1(B).  This failure has prejudiced Knauf's ability to present a defense.  For this additional reason, the Asches are not eligible for benefits under the New Claims Settlement Agreement.

---

[35]Affidavit of Eric K. "Rick" Asch ¶¶ 4, 5 and attachment (Inspection Report dated August 31, 2012).

[36]Affidavit of Eric K. "Rick" Asch ¶ 41.

[37]Affidavit of Eric K. "Rick" Asch ¶ 42.

● **Asset Portfolio Servicing Company, Inc. – 1305 East 9th Street, Lehigh Acres, Florida.**

The subject property is included on Exhibit C.[38]  Therefore, the Old Claims Settlement

Agreement controls the disposition of their claim.[39]

The parties have submitted evidence indicating the following:

○  On April 15, 2005, Jose A. Azcarate and Lori A. Azcarate bought the subject property for $238,500.00.[40]

○  On October 28. 2009, Drywall Disaster of Florida conducted a Chinese drywall inspection of the subject property for the Azcarates..[41]  The inspection report concluded:  "Based on a series of visual inspections performed, it is the opinion of the undersigned Inspection Technician of Drywall Disaster of Florida that the subject residence of this inspection does exhibit the known effects of the presence of Defective or Problematic Chinese Drywall."

○  On December 31, 2009, the Azcarates' attorney sent a letter to I & E Homes, Inc. (presumably the homebuilder for the subject property) as notice of a expected construction defect suit based upon the presence of Chinese drywall in the property.[42]

○  The Azcarates advertised the subject property as a foreclosure to be sold "as-is" at auction.[43]

○  No walkthroughs or interior inspections were allowed prior to the auction date.[44]

○  APSC engaged Team Realty of Southwest Florida to conduct an inspection prior to

---

[38]R. Doc. 16978-4.

[39]R. Doc. 16978-1 (Settlement Agreement Regarding Post-December 9, 2011 Claims Against the Knauf Defendants in MDL No. 2047 § IV.A).

[40]Knauf Exhibit Asset 1305-2 (Agreement of Sale dated $238,500.00).

[41]Knauf Exhibit Asset 1305-1 (Drywall Evidence and Inspection Report).

[42]Knauf Exhibit Asset 1305-2 (Letter dated December 31, 2009).

[43]Affidavit of Roy Michael Freeman ¶ 7, 8.

[44]Affidavit of Roy Michael Freeman ¶ 10.

the date of auction.  Team Realty's Home Inspection Report, dated April 27, 2011, states: "No access to home on date of inspection noted above.  This report reflects the condition of the home that was viewed from the exterior of the structure."[45] There is no indication that Team Realty inspected for the presence of Chinese drywall, or that it was asked to inspect for the presence of Chinese drywall.

○     APSC asserts that no person or entity told APSC that the subject property contained Chinese drywall prior to the date of purchase.[46]

○     On May 20, 2011, the Azcarates signed a PPF for the subject property in the Chinese drywall MDL.

○     On June 10, 2011, APSC purchased the subject property for $34,000.00.[47]

○     APSC purchased the subject property for commercial purposes.[48]

○     On June 16, 2011 (five days after the purchase), TERCO Home Inspections conducted a drywall inspection.  TERCO subsequently issued a Defective Drywall Inspection report, concluding: "[I]t is the inspector's opinion that this home does have the defective drywall installed."[49]

○     On July 5, 2011, Superior Contracting Environmental Specialties, LLC made a proposal to APSC.[50]  APSC subsequently employed Superior "to perform repairs, including the remediation of Chinese-made drywall."[51]

○     On October 7, 2011, APSC sold the subject property to John Kirkwood for

---

[45]Affidavit of Roy Michael Freeman ¶ 11, 12 and attachment (Home Inspection Report dated April 27, 2011).

[46]Affidavit of Roy Michael Freeman ¶ 19.

[47]Affidavit of Roy Michael Freeman ¶ 4.and attachment (Warranty Deed dated June 10, 2011).

[48]Affidavit of Roy Michael Freeman ¶ 6.

[49]Affidavit of Roy Michael Freeman attachment (Defective Drywall Inspection dated June 16, 2011).

[50]Affidavit of Roy Michael Freeman attachment (Letter dated July 5, 2011).

[51]Affidavit of Roy Michael Freeman ¶ 40.

$84,800.00.[52]

The Old Claims Settlement Agreement precludes recovery of benefits by persons who had actual (as opposed to constructive) knowledge of the presence of Chinese drywall at the time of purchase.  APSC contends that it did not have actual knowledge.  Knauf challenges this assertion, arguing that the time line suggests that APSC knowingly purchased the subject property at a depressed price (because it contained Chinese drywall) with the intention of quickly remediating it and reselling it for a profit.  There is no need for the Special Master to resolve this disputed point, inasmuch as APSC has failed to meet another requirement of the Old Claims Settlement Agreement.

APSC has failed to properly preserve and present evidence in compliance with PTO 1(B).  This failure has prejudiced Knauf's ability to present a defense.  For this reason, APSC is not eligible for benefits under the Old Claims Settlement Agreement.

- **Doodnauth Bahadur – 1925 SE 22nd Court, Miami, Florida.**

The subject property is included on Exhibit C.[53]  Ordinarily, the Old Claims Settlement Agreement would control the disposition of their claim.[54]  However, the parties have agreed that the subject property should not have been included on Exhibit C, since Mr. Bahadur did not file suit before December 9, 2011, and he did not participate in the Pilot Program.[55]  Therefore, the New

---

[52]Knauf Composite Exhibit F (Warranty Deed dated October 7, 2011).

[53]R. Doc. 16978-4.

[54]R. Doc. 16978-1 (Settlement Agreement Regarding Post-December 9, 2011 Claims Against the Knauf Defendants in MDL No. 2047 § IV.A).

[55]R. Doc. 16978-1 (Settlement Agreement Regarding Post-December 9, 2011 Claims Against the Knauf Defendants in MDL No. 2047 §§ I.C., IV.A).

Claims Settlement Agreement will control the disposition of this claim.

The parties have submitted evidence indicating the following:

o    The previous owner of the subject property was BankUnited, Assignee of the FDIC
     as Receiver for BankUnited FSB.[56]

o    Mr. Bahadur believes that BankUnited advertised the subject property as a
     foreclosure to be sold "as-is."[57]

o    BankUnited did not disclose that the subject property contained Chinese drywall.[58]

o    In early 2011, Mr. Bahadur conducted a walkthrough inspection of the property,
     hoping to purchase it for use as his home in his retirement years.  He did not notice
     any symptoms typically associated with Chinese drywall (such as a "rotten egg"
     smell) at that time.[59]

o    On April 7, 2011, Mr. Bahadur purchased the subject property.[60]

o    On approximately May 21, 2011, Mr. Bahadur's contractor notified him that the
     subject property had corroded wiring and that a smell emitted from the interior of a
     wall.[61]

o    Mr. Bahadur engaged Pro-Lab, an environmental testing company, to inspect the
     subject property.[62]   On June 10, 2011, Pro-Lab rendered a series of reports
     concluding that some, but not all, of the rooms at the subject property tested positive

---

[56]Affidavit of Doodnauth Bahadur ¶ 4; Knauf Composite Exhibit F (Special Warranty Deed
dated April 7, 2011).

[57]Affidavit of Doodnauth Bahadur ¶¶ 6, 7, 25.

[58]Affidavit of Doodnauth Bahadur ¶ 8, 23.

[59]Affidavit of Doodnauth Bahadur ¶¶ 9, 10, 11, 12.

[60]Affidavit of Doodnauth Bahadur ¶ 3; Knauf Composite Exhibit F (Special Warranty Deed
dated April 7, 2011).

[61]Affidavit of Doodnauth Bahadur ¶ 14.

[62]Affidavit of Doodnauth Bahadur ¶ 15.

for contaminated drywall.[63]

There is no direct evidence that anyone told Mr. Bahadur that the subject property contained Chinese drywall prior to the date of purchase. By the same token, there is no evidence that the Mr. Bahadur made any inquiry whatsoever into the presence of Chinese drywall before he purchased the subject property. As the Special Master has held previously, *no inquiry* into the presence of Chinese drywall is not a *reasonable inquiry*. For this reason, Mr. Bahadur is not eligible for benefits under the New Claims Settlement Agreement.

Mr. Bahadur also failed to properly preserve and present evidence in compliance with PTO 1(B). This failure has prejudiced Knauf's ability to present a defense. For this additional reason, Mr. Bahadur is not eligible for benefits under the New Claims Settlement Agreement.

- **CDO Investments, LLC – 1374 Cathedall Avenue, North Port, Florida.**

The subject property is included on Exhibit B.[64] Therefore, the New Claims Settlement Agreement controls the disposition of this claim.[65]

The parties have submitted evidence indicating the following:

○ The previous owner advertised the property as a foreclosure to be sold "as-is" at auction.[66]

○ Christopher Owens, a member of CDO, states that CDO engaged Team Realty of

---

[63]Affidavit of Doodnauth Bahadur ¶ 16, attachments (Certificates of Drywall Analysis dated June 10, 2011).

[64]R. Doc. 16978-3.

[65]R. Doc. 16978-1 (Settlement Agreement Regarding Post-December 9, 2011 Claims Against the Knauf Defendants in MDL No. 2047 § III).

[66]Affidavit of Christopher Owens ¶¶ 8, 9.

Southwest Florida to conduct an inspection of the property before CDO purchased it.[67]

○ Team Realty's Home Inspection Report states: "No access to home on date of inspection noted above. This report reflects the condition of the home that was viewed from the exterior of the structure."[68] There is no indication that Team Realty inspected for the presence of Chinese drywall, or that it was asked to inspect for the presence of Chinese drywall.

○ On December 21, 2012, CDO purchased the subject property, intending to use it for commercial purposes.[69]

○ Mr. Owens asserts that CDO did not learn that Chinese drywall was present at the subject property until after the date of purchase.[70]

○ On December 17, 2012 (four days before the date of purchase), Kyle W. Vealey of Superior Contracting Specialties, LLC sent a letter with a proposal to "Mr. Goss."[71] The letter referenced the subject property, and stated in part: "Based upon our preliminary conversation(s) it is our understanding that you would like to obtain professional engineering consulting services from our firm to design and permit the defective drywall home located at **1374 Cathedall Ave, North Port FL 34288.**" On December 18, 2012, the proposal was accepted by Chris Owen.

With the possible exception of the December 17, 2012 letter from Mr. Vealey of Superior, there is no direct evidence that anyone told CDO that the subject property contained Chinese drywall

---

[67]Affidavit of Christopher Owens ¶ 12. Accompanying Owens's affidavit is a Home Inspection Report by Team Realty. *See* Affidavit of Christopher Owens attachment (Home Inspection Report dated February 1, 2013). This inspection report states that the inspection was conducted on February 1, 2013, which is several weeks after the date that CDO claims it purchased the subject property. This discrepancy does not affect the disposition of this matter.

[68]Affidavit of Christopher Owens attachment (Home Inspection Report dated February 1, 2013).

[69]Affidavit of Christopher Owens ¶¶ 5, 7.

[70]Affidavit of Christopher Owens ¶ 17.

[71]Affidavit of Christopher Owens ¶ 18; Affidavit of Christopher Owens attachment (Letter dated December 17, 2012). "Mr. Goss" is the common addressee of Superior's proposals irrespective of the property owner.

prior to the date of purchase.  By the same token, with the possible exception of the December 17, 2012 letter from Mr. Vealey of Superior,[72] there is no evidence that CDO made any inquiry whatsoever into the presence of Chinese drywall before it purchased the subject property.  As the Special Master has held previously, *no inquiry* into the presence of Chinese drywall is not a *reasonable inquiry*.  For this reason, CDO is not eligible for benefits under the New Claims Settlement Agreement.

CDO also has failed to properly preserve and present evidence in compliance with PTO 1(B).  This failure has prejudiced Knauf's ability to present a defense.  For this additional reason, CDO is not eligible for benefits under the New Claims Settlement Agreement.

- ● **CDO Investments, LLC – 4698 Globe Terrace, North Port, Florida.**

The subject property is included on Exhibit B.[73]  Therefore, the New Claims Settlement Agreement controls the disposition of this claim.[74]

The parties have submitted evidence indicating the following:

- ○ The previous owner advertised the property as a foreclosure to be sold "as-is" at auction.[75]

- ○ Christopher Owens, a member of CDO, states that CDO engaged Team Realty of

---

[72]The timing of Mr. Vealey's letter appears to contradict the Mr. Owens's affidavit.  If Mr. Vealey sent the letter before CDO purchased the property, it suggests that CDO had actual knowledge of the presence of Chinese drywall before it purchased the property.  Such knowledge would preclude recovery.

[73]R. Doc. 16978-3.

[74]R. Doc. 16978-1 (Settlement Agreement Regarding Post-December 9, 2011 Claims Against the Knauf Defendants in MDL No. 2047 § III).

[75]Affidavit of Christopher Owens ¶¶ 8, 9.

Southwest Florida to conduct an inspection of the property before CDO purchased it.[76]  There is no indication that Team Realty inspected for the presence of Chinese drywall, or that it was asked to inspect for the presence of Chinese drywall.

o   On May 15, 2013, CDO purchased the subject property, intending to use it for commercial purposes.[77]

o   Mr. Owens asserts that CDO did not learn that Chinese drywall was present at the subject property until after the date of purchase

o   On May 27, 2013, Kyle W. Vealey of Superior Contracting Specialties, LLC sent a letter with a proposal to Mr. Goss of CDO Investments.  The letter referenced the subject property, and stated in part: "Based upon our preliminary conversation(s) it is our understanding that you would like to obtain professional engineering consulting services from our firm to design and permit the defective drywall home located at **4698 Globe Terr, North Port FL 34286.**"  On May 28, 2013, the proposal was accepted by Chris Owen.[78]

There is no direct evidence that anyone told CDO that the subject property contained Chinese drywall prior to the date of purchase.  By the same token, there is no evidence that CDO made any inquiry whatsoever into the presence of Chinese drywall before it purchased the subject property.  As the Special Master has held previously, *no inquiry* into the presence of Chinese drywall is not a *reasonable inquiry*.  For this reason, CDO is not eligible for benefits under the New Claims Settlement Agreement.

CDO also has failed to properly preserve and present evidence in compliance with PTO 1(B).  This failure has prejudiced Knauf's ability to present a defense.  For this additional reason, CDO is not eligible for benefits under the New Claims Settlement Agreement.

_____

[76]Affidavit of Christopher Owens ¶ 12.

[77]Affidavit of Christopher Owens ¶¶ 4, 7.

[78]Knauf Exhibit CDO 4698-2 (Letter dated May 27, 2013).

● **CDO Investments, LLC – 2063 Vancouver Lane, North Port, Florida.**

The subject property is included on Exhibit B.[79]  Therefore, the New Claims Settlement

Agreement controls the disposition of this claim.[80]

The parties have submitted evidence indicating the following:

○ The previous owner advertised the property as a foreclosure to be sold "as-is" at auction.[81]

○ Christopher Owens, a member of CDO, states that CDO engaged Team Realty of Southwest Florida to conduct an inspection of the property before CDO purchased it.[82]  There is no indication that Team Realty inspected for the presence of Chinese drywall, or that it was asked to inspect for the presence of Chinese drywall.

○ On May 27, 2013, CDO purchased the subject property, intending to use it for commercial purposes.[83]

○ Mr. Owens asserts that CDO did not learn that Chinese drywall was present at the subject property until after the date of purchase.[84]

○ On May 30, 2013, Kyle W. Vealey of Superior Contracting Specialties, LLC sent a letter with a proposal to Mr. Goss of CDO Investments.  The letter referenced the subject property, and stated in part: "Based upon our preliminary conversation(s) it is our understanding that you would like to obtain professional engineering consulting services from our firm to design and permit the defective drywall home located at **2063 Vancouver Ln, North Port FL 34286.**"  On May 30, 2013, the proposal was accepted by Chris Owen.[85]

---

[79]R. Doc. 16978-3.

[80]R. Doc. 16978-1 (Settlement Agreement Regarding Post-December 9, 2011 Claims Against the Knauf Defendants in MDL No. 2047 § III).

[81]Affidavit of Christopher Owens ¶¶ 8, 9.

[82]Affidavit of Christopher Owens ¶ 12.

[83]Affidavit of Christopher Owens ¶¶ 6, 7.

[84]Affidavit of Christopher Owens ¶ 17.

[85]Knauf Exhibit CDO 4698-2 (Letter dated May 30, 2013).

There is no direct evidence that anyone told CDO that the subject property contained Chinese drywall prior to the date of purchase.  By the same token, there is no evidence that CDO made any inquiry whatsoever into the presence of Chinese drywall before it purchased the subject property. As the Special Master has held previously, *no inquiry* into the presence of Chinese drywall is not a *reasonable inquiry*.  For this reason, CDO is not eligible for benefits under the New Claims Settlement Agreement.

CDO also has failed to properly preserve and present evidence in compliance with PTO 1(B). This failure has prejudiced Knauf's ability to present a defense.  For this additional reason, CDO is not eligible for benefits under the New Claims Settlement Agreement.

- **Andrew Kubick – 2802 21st Street West, Lehigh Acres, Florida.**

The subject property is included on Exhibit B.[86]  Therefore, the New Claims Settlement Agreement controls the disposition of this claim.[87]

The parties have submitted evidence indicating the following:

- The previous owner advertised the property as a foreclosure to be sold "as-is" at auction.[88]

- Mr. Kubick engaged Team Realty of Southwest Florida to conduct an inspection of the property before Mr. Kubick purchased it.

- Team Realty's Home Inspection Report, dated December 16, 2011, states: "No

---

[86]R. Doc. 16978-3.

[87]R. Doc. 16978-1 (Settlement Agreement Regarding Post-December 9, 2011 Claims Against the Knauf Defendants in MDL No. 2047 § III).

[88]Affidavit of Andrew Kubick ¶¶ 7, 8.

access to home on date of inspection noted above.  This report reflects the condition of the home that was viewed from the exterior of the structure."[89]  There is no indication that Team Realty inspected for the presence of Chinese drywall, or that it was asked to inspect for the presence of Chinese drywall.

○   On February 6, 2012, Mr. Kubick purchased the subject property, intending to use it for residential purposes.[90]

○   Mr. Kubick asserts that he did not learn that Chinese drywall was present at the subject property until after the date of purchase.[91]

○   On February 7, 2012, Kyle W. Vealey of Superior Contracting Specialties, LLC sent a letter with a proposal to Mr. Goss.  The letter referenced the subject property, and stated in part: "Based upon our preliminary conversation(s) it is our understanding that you would like to obtain professional engineering consulting services from our firm to design and permit the defective drywall home located at **2802 21st St W Lehigh Acres, FL 33971.**"  On February 7, 2012, the proposal was accepted by Mr. Kubick.[92]

There is no direct evidence that anyone told Mr. Kubick that the subject property contained Chinese drywall prior to the date of purchase.  By the same token, there is no evidence that Mr. Kubick made any inquiry whatsoever into the presence of Chinese drywall before they purchased the subject property.  As the Special Master has held previously, *no inquiry* into the presence of Chinese drywall is not a *reasonable inquiry*.  For this reason, Mr. Kubick is not eligible for benefits under the New Claims Settlement Agreement.

Mr. Kubick also has failed to properly preserve and present evidence in compliance with PTO 1(B).  This failure has prejudiced Knauf's ability to present a defense.  For this additional

---

[89]Affidavit of Andrew Kubick attachment (Home Inspection Report dated December 16, 2011).

[90]Affidavit of Andrew Kubick ¶¶ 4, 6.

[91]Affidavit of Andrew Kubick ¶¶ 13, 16.

[92]Affidavit of Andrew Kubick attachment (Letter dated February 7, 2012).

reason, Mr. Kubick is not eligible for benefits under the New Claims Settlement Agreement.

- **Mohammed Latiff – 1943 SE 22nd Drive, Homestead, Florida.**

    The subject property is included on Exhibit C.[93]  Ordinarily, the Old Claims Settlement Agreement would control the disposition of their claim.[94]  However, the parties have agreed that the subject property should not have been included on Exhibit C, since Mr. Latiff did not file suit before December 9, 2011, and he did not participate in the Pilot Program.[95]  Therefore, the New Claims Settlement Agreement will control the disposition of this claim.

    The parties have submitted evidence indicating the following:

    ○   Mr. Latiff believes that the previous owner advertised the subject property as a foreclosure to be sold "as-is."[96]

    ○   Mr. Latiff asserts that neither the previous owner nor anyone else disclosed to him that the subject property contained Chinese drywall.[97]

    ○   Before purchasing the subject property, Mr. Latiff conducted a walkthrough inspection of the property, hoping to purchase it for use as his family home.  He did not notice any symptoms typically associated with Chinese drywall (such as a "rotten egg" smell) at that time.[98]

    ○   On August 25, 2011, Mr. Latiff purchased the subject property in the name of his

---

[93]R. Doc. 16978-4.

[94]R. Doc. 16978-1 (Settlement Agreement Regarding Post-December 9, 2011 Claims Against the Knauf Defendants in MDL No. 2047 § IV.A).

[95]R. Doc. 16978-1 (Settlement Agreement Regarding Post-December 9, 2011 Claims Against the Knauf Defendants in MDL No. 2047 §§ I.C., IV.A).

[96]Affidavit of Mohamed Latiff ¶¶ 6, 7.

[97]Affidavit of Mohamed Latiff ¶ 8, 20, 21, 22.

[98]Affidavit of Mohamed Latiff ¶¶ 5, 10, 11, 12, 13, 17.

business, J.S. Carpentry, Inc.[99]

○       On approximately September 10, 2011, Mr. Latiff's subcontractor notified him that the subject property had corroded wiring and that a smell emitted from the interior of a wall.[100]

There is no direct evidence that anyone told Mr. Latiff that the subject property contained Chinese drywall prior to the date of purchase.  By the same token, there is no evidence that Mr. Latiff made any inquiry whatsoever into the presence of Chinese drywall before they purchased the subject property.  As the Special Master has held previously, *no inquiry* into the presence of Chinese drywall is not a *reasonable inquiry*.  For this reason, Mr. Latiff is not eligible for benefits under the New Claims Settlement Agreement.

Mr. Latiff also has failed to properly preserve and present evidence in compliance with PTO 1(B).  This failure has prejudiced Knauf's ability to present a defense.  For this additional reason, Mr. Latiff is not eligible for benefits under the New Claims Settlement Agreement.

●   **Mohammed Latiff – 1898 SE 23rd Court, Homestead, Florida.**

The subject property is included on Exhibit C.[101]  Ordinarily, the Old Claims Settlement Agreement would control the disposition of their claim.[102]  However, the parties have agreed that the subject property should not have been included on Exhibit C, since Mr. Latiff did not file suit

---

[99]Affidavit of Mohamed Latiff ¶ 3.

[100]Affidavit of Mohamed Latiff ¶ 15.

[101]R. Doc. 16978-4.

[102]R. Doc. 16978-1 (Settlement Agreement Regarding Post-December 9, 2011 Claims Against the Knauf Defendants in MDL No. 2047 § IV.A).

before December 9, 2011, and he did not participate in the Pilot Program.[103]  Therefore, the New

Claims Settlement Agreement will control the disposition of this claim.

The parties have submitted evidence indicating the following:

o        Mr. Latiff believes that the previous owner advertised the subject property as a short
         sale to be sold "as-is."[104]

o        Mr. Latiff asserts that neither the previous owner nor anyone else disclosed to him
         that the subject property contained Chinese drywall.[105]

o        Before purchasing the subject property, Mr. Latiff conducted a walkthrough
         inspection of the property, hoping to purchase it for use as a home for his extended
         family.  He did not notice any symptoms typically associated with Chinese drywall
         (such as a "rotten egg" smell) at that time.[106]

o        On February 8, 2013, Mr. Latiff purchased the subject property in the name of his
         business, J.S. Carpentry, Inc.[107]

o        Mr. Latiff did not learn that the subject property contained Chinese drywall until
         after the date of purchase, when he began renovations.[108]

There is no direct evidence that anyone told Mr. Latiff that the subject property contained

Chinese drywall prior to the date of purchase.  By the same token, there is no evidence that Mr.

Latiff made any inquiry whatsoever into the presence of Chinese drywall before they purchased the

subject property.  As the Special Master has held previously, *no inquiry* into the presence of Chinese

---

[103]R. Doc. 16978-1 (Settlement Agreement Regarding Post-December 9, 2011 Claims
Against the Knauf Defendants in MDL No. 2047 §§ I.C., IV.A).

[104]Affidavit of Mohamed Latiff ¶ 7, 10.

[105]Affidavit of Mohamed Latiff ¶ 8, 17, 18, 19, 20, 21.

[106]Affidavit of Mohamed Latiff ¶¶ 9, 12, 13, 14, 15, 16.

[107]Affidavit of Mohamed Latiff ¶ 3.

[108]Affidavit of Mohamed Latiff ¶ 17.

drywall is not a *reasonable inquiry*.  For this reason, Mr. Latiff is not eligible for benefits under the New Claims Settlement Agreement.

Mr. Latiff also has failed to properly preserve and present evidence in compliance with PTO 1(B).  This failure has prejudiced Knauf's ability to present a defense.  For this additional reason, Mr. Latiff is not eligible for benefits under the New Claims Settlement Agreement.

- **MCF Enterprises, Inc. – 1933 Wanda Avenue North, Lehigh Acres, Florida.**

The subject property is included on Exhibit B.[109]  Therefore, the New Claims Settlement Agreement controls the disposition of this claim.[110]

The parties have submitted evidence indicating the following:

- ○ The previous owner advertised the property as a foreclosure to be sold "as-is" at auction.[111]

- ○ Roy Michael Freeman, a shareholder of MCF, states that MCF engaged Team Realty of Southwest Florida to conduct an inspection of the property before MCF purchased it.[112]  There is no indication that Team Realty inspected for the presence of Chinese drywall, or that it was asked to inspect for the presence of Chinese drywall.

- ○ On January 26, 2012, MCF purchased the subject property, intending to use it for commercial purposes.[113]

- ○ Mr. Freeman asserts that MCF did not learn that Chinese drywall was present at the

---

[109]R. Doc. 16978-3.  The property listed in Exhibit B is "199 Wanda Avenue."  The parties have stipulated that this is a clerical error, and Exhibit B should refer to "1933 Wanda Avenue."

[110]R. Doc. 16978-1 (Settlement Agreement Regarding Post-December 9, 2011 Claims Against the Knauf Defendants in MDL No. 2047 § III).

[111]Affidavit of Roy Michael Freeman ¶¶ 15, 16.

[112]Affidavit of Roy Michael Freeman ¶ 19.

[113]Affidavit of Roy Michael Freeman ¶¶ 4, 14.

subject property until after the date of purchase.[114]

There is no direct evidence that anyone told MCF that the subject property contained Chinese drywall prior to the date of purchase.  By the same token, there is no evidence that MCF made any inquiry whatsoever into the presence of Chinese drywall before they purchased the subject property.  As the Special Master has held previously, *no inquiry* into the presence of Chinese drywall is not a *reasonable inquiry*.  For this reason, MCF is not eligible for benefits under the New Claims Settlement Agreement.

MCF also has failed to properly preserve and present evidence in compliance with PTO 1(B).  This failure has prejudiced Knauf's ability to present a defense.  For this additional reason, MCF is not eligible for benefits under the New Claims Settlement Agreement.

● **MCF Enterprises, Inc. – 2511 17th Street SW, Lehigh Acres, Florida.**

The subject property is included on Exhibit B.[115]  Therefore, the New Claims Settlement Agreement controls the disposition of this claim.[116]

The parties have submitted evidence indicating the following:

○ The previous owner advertised the property as a foreclosure to be sold "as-is" at auction.[117]

○ Roy Michael Freeman, a shareholder of MCF, states that MCF engaged Team Realty of Southwest Florida to conduct an inspection of the property before MCF purchased

---

[114]Affidavit of Roy Michael Freeman ¶¶ 21, 24.

[115]R. Doc. 16978-3.

[116]R. Doc. 16978-1 (Settlement Agreement Regarding Post-December 9, 2011 Claims Against the Knauf Defendants in MDL No. 2047 § III).

[117]Affidavit of Roy Michael Freeman ¶¶ 15, 16.

it.[118]  There is no indication that Team Realty inspected for the presence of Chinese drywall, or that it was asked to inspect for the presence of Chinese drywall.

o    On October 18, 2012, MCF purchased the subject property, intending to use it for commercial purposes.[119]

o    Mr. Freeman asserts that MCF did not learn that Chinese drywall was present at the subject property until after the date of purchase.[120]

There is no direct evidence that anyone told MCF that the subject property contained Chinese drywall prior to the date of purchase.  By the same token, there is no evidence that MCF made any inquiry whatsoever into the presence of Chinese drywall before they purchased the subject property. As the Special Master has held previously, *no inquiry* into the presence of Chinese drywall is not a *reasonable inquiry*.  For this reason, MCF is not eligible for benefits under the New Claims Settlement Agreement.

MCF also has failed to properly preserve and present evidence in compliance with PTO 1(B). This failure has prejudiced Knauf's ability to present a defense.  For this additional reason, MCF is not eligible for benefits under the New Claims Settlement Agreement.


•    **MCF Enterprises, Inc. – 343 Ranchito Avenue, Lehigh Acres, Florida.**

The subject property is included on Exhibit B.[121]  Therefore, the New Claims Settlement

---

[118]Affidavit of Roy Michael Freeman ¶ 19.

[119]Affidavit of Roy Michael Freeman ¶¶ 5, 14.

[120]Affidavit of Roy Michael Freeman ¶¶ 21, 24.

[121]R. Doc. 16978-3.

Agreement controls the disposition of this claim.[122]

The parties have submitted evidence indicating the following:

○ The previous owner advertised the property as a foreclosure to be sold "as-is" at auction.[123]

○ Roy Michael Freeman, a shareholder of MCF, states that MCF engaged Team Realty of Southwest Florida to conduct an inspection of the property before MCF purchased it.[124] There is no indication that Team Realty inspected for the presence of Chinese drywall, or that it was asked to inspect for the presence of Chinese drywall.

○ On April 10, 2013, MCF purchased the subject property, intending to use it for commercial purposes.[125]

○ Mr. Freeman asserts that MCF did not learn that Chinese drywall was present at the subject property until after the date of purchase.[126]

There is no direct evidence that anyone told MCF that the subject property contained Chinese drywall prior to the date of purchase. By the same token, there is no evidence that MCF made any inquiry whatsoever into the presence of Chinese drywall before they purchased the subject property. As the Special Master has held previously, *no inquiry* into the presence of Chinese drywall is not a *reasonable inquiry*. For this reason, MCF is not eligible for benefits under the New Claims Settlement Agreement.

MCF also has failed to properly preserve and present evidence in compliance with PTO 1(B). This failure has prejudiced Knauf's ability to present a defense. For this additional reason, MCF is

---

[122]R. Doc. 16978-1 (Settlement Agreement Regarding Post-December 9, 2011 Claims Against the Knauf Defendants in MDL No. 2047 § III).

[123]Affidavit of Roy Michael Freeman ¶¶ 15, 16.

[124]Affidavit of Roy Michael Freeman ¶ 19.

[125]Affidavit of Roy Michael Freeman ¶¶ 6, 14.

[126]Affidavit of Roy Michael Freeman ¶¶ 21, 24.

not eligible for benefits under the New Claims Settlement Agreement.

- **MCF Enterprises, Inc. – 3505 9th Street West, Lehigh Acres, Florida.**

The subject property is included on Exhibit B.[127]  Therefore, the New Claims Settlement Agreement controls the disposition of this claim.[128]

The parties have submitted evidence indicating the following:

- ○    The previous owner advertised the property as a foreclosure to be sold "as-is" at auction.[129]

- ○    Roy Michael Freeman, a shareholder of MCF, states that MCF engaged Team Realty of Southwest Florida to conduct an inspection of the property before MCF purchased it.[130]  There is no indication that Team Realty inspected for the presence of Chinese drywall, or that it was asked to inspect for the presence of Chinese drywall.

- ○    On February 28, 2013, MCF purchased the subject property, intending to use it for commercial purposes.[131]

- ○    Mr. Freeman asserts that MCF did not learn that Chinese drywall was present at the subject property until after the date of purchase.[132]

There is no direct evidence that anyone told MCF that the subject property contained Chinese drywall prior to the date of purchase.  By the same token, there is no evidence that MCF made any inquiry whatsoever into the presence of Chinese drywall before they purchased the subject property.

---

[127]R. Doc. 16978-3.

[128]R. Doc. 16978-1 (Settlement Agreement Regarding Post-December 9, 2011 Claims Against the Knauf Defendants in MDL No. 2047 § III).

[129]Affidavit of Roy Michael Freeman ¶¶ 15, 16.

[130]Affidavit of Roy Michael Freeman ¶ 19.

[131]Affidavit of Roy Michael Freeman ¶¶ 7, 14.

[132]Affidavit of Roy Michael Freeman ¶¶ 21, 24.

As the Special Master has held previously, *no inquiry* into the presence of Chinese drywall is not a *reasonable inquiry*.  For this reason, MCF is not eligible for benefits under the New Claims Settlement Agreement.

MCF also has failed to properly preserve and present evidence in compliance with PTO 1(B). This failure has prejudiced Knauf's ability to present a defense.  For this additional reason, MCF is not eligible for benefits under the New Claims Settlement Agreement.

● **MCF Enterprises, Inc. – 900 Tena Avenue North, Lehigh Acres, Florida.**

The subject property is included on Exhibit B.[133]  Therefore, the New Claims Settlement Agreement controls the disposition of this claim.[134]

The parties have submitted evidence indicating the following:

○ The previous owner advertised the property as a foreclosure to be sold "as-is" at auction.[135]

○ Roy Michael Freeman, a shareholder of MCF, states that MCF engaged Team Realty of Southwest Florida to conduct an inspection of the property before MCF purchased it.[136]  There is no indication that Team Realty inspected for the presence of Chinese drywall, or that it was asked to inspect for the presence of Chinese drywall.

○ On February 25, 2013, MCF purchased the subject property, intending to use it for commercial purposes.[137]

---

[133]R. Doc. 16978-3.

[134]R. Doc. 16978-1 (Settlement Agreement Regarding Post-December 9, 2011 Claims Against the Knauf Defendants in MDL No. 2047 § III).

[135]Affidavit of Roy Michael Freeman ¶¶ 15, 16.

[136]Affidavit of Roy Michael Freeman ¶ 19.

[137]Affidavit of Roy Michael Freeman ¶¶ 8, 14.

○    Mr. Freeman asserts that MCF did not learn that Chinese drywall was present at the subject property until after the date of purchase.[138]

There is no direct evidence that anyone told MCF that the subject property contained Chinese drywall prior to the date of purchase.  By the same token, there is no evidence that MCF made any inquiry whatsoever into the presence of Chinese drywall before they purchased the subject property.  As the Special Master has held previously, *no inquiry* into the presence of Chinese drywall is not a *reasonable inquiry*.  For this reason, MCF is not eligible for benefits under the New Claims Settlement Agreement.

MCF also has failed to properly preserve and present evidence in compliance with PTO 1(B).  This failure has prejudiced Knauf's ability to present a defense.  For this additional reason, MCF is not eligible for benefits under the New Claims Settlement Agreement.

●    **Rebecca McIntyre – 15922 Innerarity Point Road, Pensacola, Florida.**

The subject property is included on Exhibit C.[139]  Ordinarily, the Old Claims Settlement Agreement would control the disposition of their claim.[140]  However, the parties have agreed that the subject property should not have been included on Exhibit C, since Ms. McIntyre did not file suit before December 9, 2011, and he did not participate in the Pilot Program.[141]  Therefore, the New Claims Settlement Agreement will control the disposition of this claim.

---

[138]Affidavit of Roy Michael Freeman ¶¶ 21, 24.

[139]R. Doc. 16978-4.

[140]R. Doc. 16978-1 (Settlement Agreement Regarding Post-December 9, 2011 Claims Against the Knauf Defendants in MDL No. 2047 § IV.A).

[141]R. Doc. 16978-1 (Settlement Agreement Regarding Post-December 9, 2011 Claims Against the Knauf Defendants in MDL No. 2047 §§ I.C., IV.A).

The parties have submitted evidence indicating the following:

○    Ms. McIntyre believes that the previous owner advertised the subject property as a foreclosure to be sold "as-is."[142]

○    Ms. McIntyre asserts that neither the previous owner nor anyone else disclosed to him  that the subject property contained Chinese drywall.[143]

○    Ms. McIntyre were the high bidders for the sale of the subject property in an auction. After the action, the McIntyres were allowed to conduct a walkthrough inspection of the property.  They did not notice any symptoms typically associated with Chinese drywall (such as a "rotten egg" smell) at that time.[144]

○    On March 22, 2013, the McIntyres purchased the subject property.[145]

○    Ms. McIntyre asserts that she and her husband discovered the presence of Chinese drywall at the subject property only after they began to clean and paint the subject property and discussed the matter with other property owners.[146]

There is no direct evidence that anyone told Ms. McIntyre that the subject property contained Chinese drywall prior to the date of purchase.  By the same token, there is no evidence that Ms. McIntyre made any inquiry whatsoever into the presence of Chinese drywall before they purchased the subject property.  As the Special Master has held previously, *no inquiry* into the presence of Chinese drywall is not a *reasonable inquiry*.  For this reason, Ms. McIntyre is not eligible for benefits under the New Claims Settlement Agreement.

Ms. McIntyre also has failed to properly preserve and present evidence in compliance with PTO 1(B).  This failure has prejudiced Knauf's ability to present a defense.  For this additional

---

[142]Affidavit of Rebecca McIntyre ¶¶ 6, 7.

[143]Affidavit of Rebecca McIntyre ¶¶ 8, 19, 20.

[144]Affidavit of Rebecca McIntyre ¶¶ 11, 12, 13.

[145]Affidavit of Rebecca McIntyre ¶ 3.

[146]Affidavit of Rebecca McIntyre ¶¶ 14, 15, 16.

reason, Ms. McIntyre is not eligible for benefits under the New Claims Settlement Agreement.

# Conclusion

With respect to the knowledge issue, 14 of the 15 claims discussed above are governed by the New Claims Settlement Agreement and its requirement that a claimant conduct a "reasonable inquiry" into the presence of Chinese drywall prior to purchasing a property.  None of those 14 inquired at all into the presence or absence of Chinese drywall before the date of purchase.  The other claim, by Asset Portfolio Servicing Company, is governed by the Old Claims Settlement Agreement, and there is a dispute as to whether the claimant actually knew that the subject property contained Chinese drywall at the time of purchase.

With respect to preservation of evidence, the claimants have not satisfied their burden of showing that any of the 15 claims satisfied the requirements of PTO 1(B).[147]  This failure precludes the claimants from recovering benefits under either the Old Claims Settlement Agreement or the New Claims Settlement Agreement.

For these reasons, the Special Master recommends that the Court deny all 15 of the above-referenced claims.  The Special Master will confer with the Court to determine who will be responsible for the costs associated with the making of these recommendations.

Dated: August 10, 2018                                    /s/ Daniel J. Balhoff
                                                                      DANIEL J. BALHOFF

---

[147]In its submissions, Knauf questions whether some claimants' product identification evidence is reliable, citing (for instance) evidence of what Knauf contends is the same drywall used in support of more than one claim.  There is no need to address this issue, given the Special Master's reasoning herein.