UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE -MANUFACTURED  　　　　MDL NO. 2047
DRYWALL PRODUCTS LIABILITY
LITIGATION  　　　　　　　　　　　　　　SECTION: L

　　　　　　　　　　　　　　　　　　　　JUDGE ELDON FALLON
　　　　　　　　　　　　　　　　　　　　MAGISTRATE WILKINSON

# Supplemental Report and Recommendations

On March 7, 2018, the Court asked the Special Master to issue recommendations concerning the disposition of 16 already remediated properties (ARH) claims. On March 9, 2018, the Special Master emailed the parties' attorneys, asking for the submission of position papers and exhibits. On August 10, 2018, the Special Master issued his Report and Recommendations concerning 15 of the 16 claims.[1] That same day, the Special Master asked the parties to address additional issues concerning the remaining claim, that of Thomas and Martha Williams for their property located at 301 Intrepid Drive, Slidell, Louisiana. The parties have now made their supplemental submissions, and the Special Master is prepared to issue his final recommendation.

The subject property is included on Exhibit B.[2] Therefore, the New Claims Settlement Agreement controls the disposition of this claim.[3]

The parties have submitted evidence indicating the following:

- On August 30, 1989, Mr. Williams and his wife, Martha Williams, purchased the subject

---

[1] The Special Master adopts the analysis set forth in his August 10, 2018 Report and Recommendations and will not restate it herein except to the extent necessary.

[2] R. Doc. 16978-3.

[3] R. Doc. 16978-1 (Settlement Agreement Regarding Post-December 9, 2011 Claims Against the Knauf Defendants in MDL No. 2047 § III).

property.[4]

- The subject property was damaged during Hurricane Katrina.[5]

- Mr. Williams believes that the contractor that repaired the subject property used Chinese drywall manufactured by Knauf and supplied by Interior Exterior Building Supply.[6]

- Mr. Williams asserts that he did not become aware of the presence of Chinese drywall until April 2009.[7]

- In 2009, the Williamses contacted Chris Witty Construction, LLC ("Chris Witty"), their contractor, concerning corrosion issues at the subject property.[8]

- Upon entering the attic of the subject property, Chris Witty observed "several sheets" of drywall labeled "China" and "Knauf."[9]

- On June 9, 2009, a contractor removed some (but not all) of the drywall from the subject property for inspection. This included approximately one square foot of drywall from each of the following rooms: master bedroom, hall bathroom, utility room, main hallway, front bedroom, and rear bedroom. The samples were bagged, labeled, and transported to Eustis Engineering.[10]

- On July 1, 2009, a contractor removed some (but not all) of the drywall from the subject property for inspection. This included approximately one square foot of drywall from each of the following rooms: den, dining room, kitchen living room. The samples were bagged, labeled, and transported to Eustis Engineering.[11]

---

[4]Affidavit of Thomas Williams ¶¶ 2, 3.

[5]Affidavit of Thomas Williams ¶ 4.

[6]Affidavit of Thomas Williams ¶¶ 5, 6. *See*, *e.g.*, Interior/Exterior invoice dated 2/23/2006 (directing shipment of approximately 130 sheets of drywall to subject property).

[7]Affidavit of Thomas Williams ¶ 7.

[8]Undated letter from Chris Witty to Jimmy Doyle.

[9]Undated letter from Chris Witty to Jimmy Doyle.

[10]Eustis Field Inspection Report dated 6/9/2009.

[11]Eustis Field Inspection Report dated 7/1/2009.

- Chris Witty completed remediation of the subject property by July 31, 2009.[12]

The Knauf Settlement Agreement provides: "[T]he failure to preserve evidence as required by law will result in disallowance or reduction in the amount of the claim if the failure has been prejudicial to a determination of the claim."[13]  The carefully defined requirements of Pretrial Order 1(B) typically govern questions concerning the appropriate preservation of evidence.  However, the Court did not adopt Pretrial Order 1(B) on October 9, 2009 – after the Williamses completed their remediation.  Therefore, the Special Master will decide their claim without reference to Pretrial Order 1(B).

This does not mean, though, that the Williamses had no duty to preserve evidence.  From the very start of the MDL, the Court set forth its expectations with respect to preservation of evidence.  On June 16, 2009 the Court issued Pretrial Order 1, which reminded parties and counsel of "their duty to preserve evidence that may be relevant to this action."[14]

Although the Williamses' contractor removed some drywall on June 9, 2009, Pretrial Order 1 was in effect when the Williamses removed much of the drywall from the subject property.  It is impossible to determine how much was removed before or after the Court entered Pretrial Order 1.  This point is of no moment, though, since the Court's admonition to preserve evidence was merely a recognition of the duty to preserve evidence that attaches to every potential products liability plaintiff.

In considering the Williamses duty to preserve evidence, the Special Master asked the parties

---

[12]Undated letter from Chris Witty to Jimmy Doyle.

[13]R. Doc. 12061-6 (Already Remediated Properties Protocol § IV.D.4).

[14]R. Doc. 2.

to address the applicability of the Court's determinations of two previous claims: Oceanique Development Company[15] and Howard and Chari Rapp.[16] Oceanique involved a claim by a company that completed remediation of the subject property before the Court entered Pretrial Order 1(B). The Special Master denied Oceanique's claim on the ground that it did not comply with Pretrial Order 1(B). The Court reversed, holding that Pretrial Order 1(B) did not apply, and that Oceanique's additional evidence of product identification (which was substantial) was sufficient to prove Oceanique's claim of a KPT Drywall Percentage of 60%. Like Oceanique, the Rapps completed remediation of the subject property before the Court entered Pretrial Order 1(B). The Special Master concluded that the Rapps did not satisfy a claimant's basic duty to preserve evidence, and denied the claim. The Court agreed with the Special Master.

The principle that arises from Oceanique's claim and the Rapps' claim is that, even though a claimant might not have to satisfy Pretrial Order 1(B) (because the remediation concluded before October 9, 2009), the claimant still bears the burden of proving product identification, and still must preserve evidence for the defendant to review. As the Special Master stated in analyzing the Rapps' claim, the Special Master must determine (1) whether Knauf-manufactured drywall was present, and (2) how much Knauf-manufactured drywall was present (i.e., what is the KPT Drywall Percentage[17]). Setting aside the first question, the manner in which the Williamses preserved evidence simply makes it impossible for the Special Master to determine the second. In other words,

---

[15]R. Docs. 19023, 19413.

[16]R. Docs. 20300, 20930.

[17]KPT Drywall Percentage is defined as "the amount of KPT Chinese Drywall in the Affected Property divided by the total amount of KPT Chinese Drywall and Non-KPT Chinese Drywall in the Affected Property rounded to the next highest 10% increment." R. Doc. 12918-3 (Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047 §1.26).

after reviewing the submissions of the parties, the Special Master has no way of telling whether the structures contained 1%, 50%, or 100% KPT drywall.

The Williamses suggest that all of the drywall was purchased from Interior/Exterior, and that "[i]t is . . . undisputed that the only defective Chinese-manufactured drywall imported and sold by INEX was KPT brand." The Special Master and the Court have previously addressed a similar claim by Amy and Daniel Carter. The Carters submitted affidavits stating that their property's drywall was KPT Chinese drywall, and also submitted evidence that the drywall had been supplied by Interior/Exterior. Both the Special Master and the Court rejected the claim.[18] It is important to note that the Carters' claim, unlike the Williamses' claim, was governed by Pretrial Order 1(B). However, the Special Master finds that, even if this were a routine products liability case (i.e., one outside the context of an MDL), this evidence of product identification is not sufficient.

Since the Court and the law have always imposed the burden to preserve evidence upon the claimants, and the failure to do so was prejudicial in this case, the Special Master finds that the Williamses cannot recover under the Knauf Settlement Agreement.

For these reasons, the Special Master recommends that the Court deny the Williamses' claim. The Court has directed the Special Master to assess the costs of his services (for this as well as for the 15 claims addressed in the August 10, 2018 Report and Recommendations) to Knauf.

Dated: August 22, 2018                                /s/ Daniel J. Balhoff
                                                      DANIEL J. BALHOFF

---

[18] R. Docs. 20764, 20933.