UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL No. 2:09-md-2047 |
| | SECTION L |
| **THIS DOCUMENT RELATES TO:** | |
| | JUDGE ELDON E. FALLON |
| *Abner v. Taishan Gypsum Co.,* **No. 11-3094 (E.D. La.).** | |
| | MAGISTRATE JUDGE JOSEPH C. WILKINSON, JR. |

**BNBM PLC AND BNBM GROUP'S RESPONSE TO THE PSC'S
MOTION TO STRIKE DECLARATION OF DONALD CLARKE**

Defendants Beijing New Building Materials Public Limited Company ("BNBM PLC")

and Beijing New Building Material (Group) Co., Ltd. ("BNBM Group") (collectively, the

"BNBM Entities") respectfully submit this response opposing the Plaintiffs' Steering

Committee's Motion to Strike Declaration of Donald Clarke ("Motion" or "Motion to Strike")

(Rec. Doc. 21820).

I.      **INTRODUCTION**

The BNBM Entities moved the Court to dismiss the *Abner* complaint on multiple

grounds, including, as relevant here, for lack of personal jurisdiction.  Rec. Doc. 19998.  To that

end, we explained that neither entity engaged in the requisite direct sales to California.  The

BNBM Entities also attempted to blunt anticipated arguments on imputed contacts by explaining

that veil piercing would be improper under either Chinese or California state law.  In response,

the PSC declined to offer any affirmative argument under Chinese law and disavowed any veil-piercing argument altogether.  Instead, the PSC explained that its sole theory for imputation is rooted in California agency law.  Rec. Doc. 21766.  Cognizant of this Court's earlier conclusion that Chinese law controls the imputation analysis, Rec. Doc. 20739 at 41, the BNBM Entities properly submitted Professor Clarke's declaration along with their reply brief, Rec. Doc. 21799, to afford the Court the opportunity to understand why the new agency theory advanced by the PSC in its response should be rejected in all its forms, *i.e.*, under Chinese law or forum state law. *See AAR, Inc. v. Nunez*, 408 F. App'x 828, 830 (5th Cir. 2011) ("a reply brief is limited to addressing matters presented by appellant's opening brief and by appellee's response brief").

It is beyond cavil that Professor Clarke's declaration may be considered by this Court.  In ascertaining foreign law, courts "may consider any relevant material or source . . . whether or not . . . admissible under the Federal Rules of Evidence."  Fed. R. Civ. P. 44.1.  In fact, the very purpose of Rule 44.1 was to ensure district courts are not "encumbered by any restraint on its research or by the rules of admissibility." Wright & Miller, 9A Fed. Prac. & Proc. Civ. § 2444 (3d ed.)  By "dissipat[ing] former inhibitions on judicial inquiry," Rule 44.1 empowers district courts to consider "any material the parties wish to present" and which may "aid the court in determining the content of the applicable foreign law."  *Id.*  Thus, while the PSC, by relying solely on California agency law, has forfeited any contention that Chinese agency law would allow for imputation, to the extent the Court were to entertain such an agency-based imputation theory, it is empowered to consider Professor Clarke's declaration under Rule 44.1.  Therefore, the Court should deny the PSC's Motion to Strike the Declaration of Professor Clarke.

II.   **BACKGROUND**

On January 22, 2016, the BNBM Entities moved to dismiss the claims set out in the *Abner* complaint for lack of personal jurisdiction because neither BNBM PLC nor BNBM Group had sufficient contacts of their own with California to establish personal jurisdiction over them in California.  Rec. Doc. 19998-1 at 13-15.  In anticipation of an argument that personal jurisdiction could be established over them in California based on *Taishan's* contacts, the BNBM Entities also argued that any imputation of Taishan's contacts would be inappropriate.  *Id.* at 15-20.  To impute Taishan's contacts in California, the PSC would have to establish that imputation was appropriate under Chinese law.  *Id.* at 15.  The BNBM Entities argued that the PSC could not meet that Chinese law standard here, citing Professor Clarke's previously filed declaration setting out Chinese law.  *Id.* at 15-16 & nn.39-40.[1]

After the BNBM Entities filed their motion to dismiss in *Abner*, and before the PSC responded, this Court issued an order pertaining to other motions to dismiss.  Rec. Doc. 20739.  This order did not address the issue of the BNBM Entities' contacts in California under either Chinese law or California law.  Instead, the Court focused on whether federal courts in Louisiana, Virginia, and Florida could assert personal jurisdiction over the BNBM Entities.  The Court recognized that because the "BNBM Entities were incorporated in China . . . . under each of the forum state's choice of law rules, Chinese law applies."  *Id.* at 41.  The Court relied on two declarations of Professor Clarke to aid its understanding of Chinese law on disregarding the

---

[1] The BNBM Entities alternatively maintained that the requirements for imputation under California law would not be met.  *Id.* at 16.  So, even if California law were applicable, imputation of Taishan's contacts to the BNBM Entities would nevertheless be inappropriate.  The fact that the BNBM Entities should prevail under both Chinese and California law does not, however, mean that Chinese and California alter ego law are the same, as Professor Clarke made clear in his declaration.

corporate form.  *Id.* at 41-42; *see also id.* at 51 (citing a law review article authored by Professor Clarke).  Ultimately, however, the Court disregarded Chinese law and instead applied the law of the forum states on the theory that the substantive laws are "similar" enough to be used interchangeably.  *Id.* at 41-42.

Applying the law of these states, the Court determined that Taishan's contacts could not be imputed to the BNBM Entities on an alter ego theory under Florida and Virginia law.  *Id.* at 54, 64.  But the Court held that Taishan's contacts could be imputed (1) to both BNBM Entities under Louisiana's "single business enterprise" test and to BNBM PLC under Louisiana alter ego law, and (2) to BNBM PLC on an agency theory under Florida and Virginia law.  *Id.* at 98.

After that ruling came down, the PSC responded to the BNBM Entities' motion to dismiss the complaint in *Abner*.  In their response, Plaintiffs conceded that there is no jurisdiction over BNBM Group in California, presented no argument for jurisdiction over BNBM PLC based on its direct contacts with California, and abandoned their argument for imputation based on an alter ego theory.  Rec. Doc. 21766-2 at 2, 13 n.30.  Instead, drawing on the Court's agency analysis in its April 21, 2017 order, Plaintiffs argued only for imputation to BNBM PLC on a theory of agency-based imputation.  *Id.* at 8-13.  Plaintiffs advanced that argument entirely under California law, *id.* at 10-13, notwithstanding this Court's earlier determination that Chinese law governs.

The BNBM Entities' reply brief properly addressed the matter of imputed jurisdiction presented in their opening brief and Plaintiffs' theory of agency-based imputed jurisdiction raised in their response brief.  Rec. Doc. 21799.  The BNBM Entities explained that under California's choice of law rules, Chinese law applies.  *Id.* at 3-4.  And though the PSC forfeited any right to argue that Chinese agency law would allow for imputation by failing to raise any

such argument in its response, to the extent this Court were inclined to entertain an agency-based imputation theory, the BNBM Entities provided an additional declaration of Professor Clarke, whom the Court has previously relied on for interpretation of Chinese law.  As Professor Clarke explained, Chinese agency law, unlike Chinese alter ego law, does not supply even a conceptual basis for imputing contacts from one entity to another.  *Id.* at 4.  The BNBM Entities further explained that California law, even if it were applicable, also does not permit imputation of Taishan's contacts to BNBM PLC on an agency theory.  *Id.* at 5-9.

## III.   ARGUMENT

### A.   The Declaration of Donald Clarke Properly Responds to Issues Presented in the BNBM Entities' Motion to Dismiss and the PSC's Response.

The BNBM Entities have consistently maintained in their briefing on their motion to dismiss that Chinese law governs the question of whether Taishan's contacts can be imputed to them.  The PSC's response brief, however, now suggests that agency law could support imputing Taishan's contacts.  Rec. Doc. 21766-2 at 11 ("Taishan's actions may be imputed to its controlling parent company [BNBM PLC] through agency principles.").  The BNBM Entities properly addressed that argument in their reply brief (supported by Professor Clarke's declaration) with the response that Chinese law does not "allow for the use of agency principles . . . to impute jurisdictional contacts or otherwise subject a party to exposure based on an agency-driven control theory."  Rec. Doc. 21799-3 at 4.

The Fifth Circuit has recognized that this form of responsive reply brief is permissible.  A reply may always address "matters presented by appellant's opening brief and by appellee's response brief."  *AAR, Inc.*, 408 F. App'x at 830.  And courts have consistently rejected parties' objections to "reply arguments [that] are responsive" to arguments in response briefs.  *Gann v. J&B Servs., Inc.*, No. 1:18-cv-00104-GHD-DAS, 2018 WL 4431297, at *1 (N.D. Miss. Sept. 17,

2018) (denying motion to strike reply arguments that "go[] directly" to response arguments); *Fried Alligator Films, LLC v. N.Y. Life Ins. Co.*, 4:16-CV-175-DMB-JMV, 2017 WL 4355825, at *2 (N.D. Miss. Sept. 29, 2017) (denying motion to strike "arguments and evidence raised in [defendant's] reply because they "are responsive to arguments and evidence in the plaintiffs' responses to [defendant's] motion" to dismiss); *In re Hassell Joint Venture*, No. H-16-3220, 2017 WL 3141168, at *12 (S.D. Tex. July 24, 2017) (holding that the court properly considered "evidence that was submitted in reply because it was directly responsive to new evidence submitted by RHHC in its response"); *Levy v. Schlumberger Tech. Corp.*, No. 6:16-cv-00043, 2016 WL 6885916, at *1, *4 (W.D. La. Nov. 2, 2016) (concluding that "it would be inequitable to preclude from consideration the evidence and arguments that [defendant] presented in its response to the plaintiff's submission" of a supplemental brief to its opposition brief to a motion to dismiss); *Lynch v. Union Pac. R.R. Co.*, No. 3:13-CV-2701-L, 2015 WL 6807716, at *1 (N.D. Tex. Nov. 6, 2015) (denying plaintiff's motion to strike because "[t]he matters objected to by Plaintiff with respect to Defendant's summary judgment reply and evidence, however, are specifically directed at and responsive to arguments and evidence in Plaintiff's response to Defendant's summary judgment motion").

A party may attach declarations to a reply brief to respond to arguments raised in an opposition brief. *KeyBank Nat'l Ass'n v. Perkins Rowe Assocs., LLC*, No. 09–497–JJB, 2010 WL 1945715, at *1-2 (M.D. La. May 12, 2010) (denying motion to strike "supplemental declarations included in plaintiff's reply brief in support of its motion for summary judgment" because they addressed an issue raised in the parties' "summary judgment moving papers and opposition briefs" and because they "respond[ed] directly to [defendant's] attack, raised in its opposition to summary judgment").

- 6 -

Indeed, in this context, where the question considered is the legal question of what foreign law requires, the court may consider any information submitted by the parties to aid the court's interpretation.  Fed. R. Civ. P. 44.1.  Rule 44.1 was designed to free district courts of any needless constraints in ascertaining foreign law.  9A Wright & Miller, *supra*, § 2444.  By liberalizing the materials that may be offered, it enabled litigants to present—in any array of forms—"any other information concerning foreign law that is believed to further his or her cause" and thereby empowered district courts to utilize these sources as a key aid "in determining the content of the applicable foreign law."  *Id.*  And it remains the case that "expert testimony," such as Dr. Clarke's declaration, is the "basic mode of proving foreign law."  *Id.*

The PSC's protests that the BNBM Entities could have raised such argument in their opening brief are unavailing.  Defendants challenging personal jurisdiction have no obligation under Rule 12(b)(2) to identify every possible theory by which plaintiffs could conceivably attempt to establish jurisdiction.  The burden of establishing personal jurisdiction falls on plaintiffs.  *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101-02 (5th Cir. 2018).  Here, the BNBM Entities in their opening brief disposed of reasonably anticipated theories of personal jurisdiction based on direct minimum contacts and imputation of contacts under alter ego principles, relying on Professor Clarke's prior declaration on Chinese alter ego law to argue that imputation was inappropriate under Chinese law.  Rec. Doc. 19998-1 at 15-16 & nn.39-40.  Once the PSC sought to meet their burden under a new theory based on agency law, citing California agency law, the BNBM entities necessarily responded with an argument that such a theory fails as a matter of law because Chinese law applies and does not permit agency-based imputation, submitting Professor Clarke's declaration on Chinese agency law as a clarification.  Rec. Doc. 21799-3 at 4.  Thus, the BNBM Entities' responsive argument and submission of

Professor Clarke's supporting declaration is properly within the scope of a reply brief, and, therefore, should not be struck.

**B.**     **Plaintiffs Have Not Suffered Any Prejudice.**

Plaintiffs' assertion of prejudice is wholly unsupported by authority and insufficient grounds for their Motion to Strike.  Plaintiffs first contend that they "are prejudiced simply by the necessity to file this motion to strike what is a patently improper use of the expert's report." Rec. Doc. 21820-1 at 5.  Of course, it cannot be that a party is prejudiced every time they have to respond to a motion or evidence they perceive as improper.  Plaintiffs have no authority to the contrary.  And in any event, as discussed above, the BNBM Entities *properly* used the Declaration of Professor Clarke as an aid to the Court's understanding of Chinese agency law in support of their argument directly rebutting Plaintiffs' agency argument raised in their opposition.

Plaintiffs next object that Professor Clarke's Declaration will somehow "needlessly protract these proceedings and delay matters even further."  Rec. Doc. 21820-1 at 5.  But Professor Clarke's Declaration will in fact have the opposite effect.  To the extent this Court looks past the PSC's failure to argue that they would meet their burden under Chinese law and wants to assess what Chinese agency law requires, it can look to Professor Clarke's Declaration to determine the relevant standard Chinese law requires.  If this Court were to strike that declaration, it would then be in the unenviable position of having to determine Chinese law on its own.  But this Court has already acknowledged that there is relatively limited material interpreting Chinese law.  Rec. Doc. 20739 at 53.  And so, by trying to deprive the Court of useful information on what Chinese law requires, it is Plaintiffs who are "needlessly protracting these proceedings" through the filing of this spurious Motion to Strike.

Plaintiffs fail to specify any other way in which they are prejudiced. But any prejudice they have suffered is of their own making. In their response brief, Plaintiffs chose not to respond to the BNBM Entities' argument in their opening brief that any imputation analysis must be conducted pursuant to Chinese law. *See* Rec. Doc. 19998-1 at 15-16 && nn.39-40. And although Plaintiffs relied on this Court's April 21, 2017 order in their response brief, they ignored this Court's determination in that same order that "Chinese law applies" to imputation analyses. *See* Rec. Doc. 20739 at 40-42. If Plaintiffs are now "prejudiced" by their failure to properly support their new agency-based imputation argument with the applicable Chinese law, it is only the prejudice any party faces when they forfeit or waive a responsive argument necessary for them to prevail. *See Jones v. Jefferson Parish*, No. 12–2191, 2013 WL 871539, at *3 (E.D. La. Mar. 8, 2013) (concluding that plaintiff's "failure to brief this issue [in response to defendants' argument] waives any argument he might have in opposition to it"). But it is certainly not the BNBM Entities' responsibility to make sure that the Plaintiffs adequately brief the issues to establish jurisdiction over BNBM PLC.

Of course, if what Plaintiffs mean to admit is that they forfeited any argument under Chinese law, then the BNBM Entities would agree that the Declaration of Professor Clarke is no longer necessary to consider. That is because the Plaintiffs would be taken to concede that the BNBM Entities prevail under Chinese law, and if, as this Court has previously concluded, Chinese law applies, then there cannot be jurisdiction over the BNBM Entities in California. If the Court construes the Plaintiffs' motion to be making such a concession, then dismissal follows automatically.

## IV.   **CONCLUSION**

For the foregoing reasons, BNBM PLC and BNBM Group respectfully request that the

Court deny the PSC's Motion to Strike.


Dated: October 16, 2018                                        Respectfully submitted,

                                                                                */s/ L. Christopher Vejnoska*

L. Christopher Vejnoska (CA Bar No. 96082)        Eric A. Shumsky (D.C. Bar No. 477926)
Eric Matthew Hairston (CA Bar No. 229892)         ORRICK, HERRINGTON & SUTCLIFFE LLP
ORRICK, HERRINGTON & SUTCLIFFE LLP                Columbia Center
The Orrick Building                               1152 15th Street NW
San Francisco, CA  94105                          Washington, D.C. 20005
T:  415-773-5700                                  T:  202-339-8400
Email:  cvejnoska@orrick.com                      Email:  eshumsky@orrick.com
        ehairston@orrick.com


James L. Stengel (NY Bar No. 1800556)             Harry Rosenberg (LA Bar No. 11465)
Xiang Wang (NY Bar No. 4311114)                   PHELPS DUNBAR LLP
ORRICK, HERRINGTON & SUTCLIFFE LLP                365 Canal Street, Suite 2000
51 West 52nd Street                               New Orleans, LA 70130-6534
New York, NY, 10019                               T:  (504) 584-9219
T:  212-506-5000                                  Email:  harry.rosenberg@phelps.com
Email:  jstengel@orrick.com
        xiangwang@orrick.com


*Counsel for BNBM PLC and BNBM Group*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail and upon all parties by electronically uploading the same to File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 16th day of October, 2018.

/s/ *L. Christopher Vejnoska*

L. Christopher Vejnoska (CA Bar No. 96082)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105
Tel:  415-773-5700
Fax: 415-773-5759
Email:  cvejnoska@orrick.com

*Counsel for BNBM PLC and BNBM Group*

- 11 -