UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L |
| THIS DOCUMENT RELATES TO: | JUDGE FALLON |
| *ALL CASES* | MAG. JUDGE WILKINSON |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION OF COURT'S ORDER ADOPTING SPECIAL MASTER'S WRITTEN REASONS CONCERNING REQUESTS FOR DISCOVERY**

**MAY IT PLEASE THE COURT:**

Parker Waichman LLP and Baron & Budd, P.C. ("Movers") respectfully request reconsideration of the Order issued on October 15, 2018 (R. Doc. 21851) adopting Special Master Balhoff's Written Reasons Concerning Requests for Discovery (the "Written Reasons") (R. Doc. 21798)

The Court has charged the Special Master with making a recommendation concerning the allocation of $99,762,099.56 in common benefit attorneys' fees amongst those firms who performed common benefit services. R. Doc. 21702 and 21777. Movers have a substantial common benefit fee interest[1] and, therefore, seek additional, limited discovery to adequately protect their interest during this common benefit fee allocation process.

**I.      PROCEDURAL HISTORY LEADING TO THIS MOTION**

---

[1] Philip Garrett, the court-appointed CPA, has approved 8,905 common benefit hours for Parker Waichman and 6,870.32 common benefit hours for Baron & Budd.

3

Pretrial Order No. 28 (R. Doc. 17379) established a process for the award and allocations of attorneys' fees and reimbursements of costs in connection with the Knauf related settlements. In accordance with Step Five of that Order, the Court awarded a common benefit attorneys' fee of $99,762,099.56.  R. Doc. 21168.  Pursuant to Step Six of Pretrial Order No. 28, the Court-appointed Fee Committee was charged with recommending to the Court an allocation of the common benefit fee among the counsel who performed common benefit services.  The Fee Committee members were unable to agree amongst themselves, so recommendations were filed by a majority of the Fee Committee (R. Doc. 21455) and a minority of the Fee Committee (R. Doc. 21473).  The six Fee Committee members who formed the majority recommended a collective allocation to their firms in the amount of $76,649,699.56, or 77% of the total available common benefit fee.[2] Sixteen firms, including Movers, filed objections to the majority recommendation. See R. Docs. 21559, 21558, 21517, 21549, 21580, 21560, 21597, 21556, 21566, 21568, 21589, 21554, 21557, 21583, and 21564.  Fourteen firms, some who also filed objections to the majority report, joined in the minority report submitted by the Fee Committee.  R. Doc. 21571.

In light of the recommendations and objections received thereto, the Court appointed Special Master Daniel Balhoff to "conduct limited discovery regarding time and expense submissions, procedures, and the relevant work of Philip Garrett, CPA, to make appropriate recommendations regarding these motions and objections, and for all other purposes outlined [within the appointing order]."  R. Doc. 21777.[3]  In accordance with his duties, the Special Master

---

[2] Forty-six firms submitted common benefit time in accordance with the Court's pretrial orders.

[3] This order affirms the appointment outlined in the Court's Order (R. Doc. 21702) signaling its intent to appoint the Special Master.

4

required the parties to submit any requests for discovery via e-mail by August 29, 2018. Movers complied, seeking the following documents:

1. Common benefit time submissions made pursuant to the Court's Pre-trial Orders;

2. PTO 28 Exhibit B – Second Affidavits in Connection with Request for Allocation of Common Benefit Fee and Cost Award (*see* R. Doc. 21455 at p.5, ¶ 6);

3. Transcripts, minutes and agenda of the Fee Committee meetings when the allocation of common benefit fees or the process for allocating common benefit fees was discussed;

4. All memoranda, emails and other documents and written communications prepared by the Fee Committee or at the direction of the Fee Committee relating to the allocation of common benefit fees or the process for allocating common benefit fees;

5. All memoranda, emails and other documents and written communication prepared by the Fee Committee or at the direction of the Fee Committee assigning, approving, disapproving or disallowing common benefit work;

6. A list of the "objective criteria" relied upon by the Fee Committee in evaluating the contributions of common benefit counsel (see R. Doc. 21455 at p. 4);

7. All documents and written communications prepared by the Fee Committee discussing or pertaining to the Fee Committee's "subjective understanding of the relevant contributions of counsel toward generating the various Settlement Funds. . . . " (see id. at p. 4-5);

8. All documents and written communications prepared by the Fee Committee discussing, pertaining to, evaluating or assigning weight to the relative contribution of common benefit counsel to the outcome of the litigation or the relief achieved (*see id.* at p. 5); and

9. An Accounting of the $233,078,270.33 in attorneys' fees received by the Plaintiffs' Steering Committee in conjunction with the Knauf, Global, Banner, InEx, Virginia, and L & W settlements, the InEx North River fee award, and voluntary contributions deposited into the Court registry, as previously requested by Movers (*see* R. Docs. 20995 and 21005).

*See* R. Doc. 21798 at 6.

Thereafter, on September 25, 2018, the Special Master issued the Special Master's Written Reasons Concerning Requests for Discovery ("Written Reasons"), denying the request in all regards other than expressing his "inclin[ation] to ask the Court to allow the parties with an interest

5

in Step Six to view the Second Affidavits. . . ." R. Doc. 21798 at 8.  Pursuant to the Court's Order (R. Doc. 21702 and 21777), Parker Waichman requested the Special Master to file his Written Reasons in the record.  The Written Reasons were filed in the record on September 26, 2018.  R. Doc. 21798.  However, once the Written Reasons were filed with the Court, the parties did not receive formal service through LexisNexis File & Serve.  *See* Fed. R. Civ. Proc. 53 (requiring master's orders to be filed and served on each party); *see also*, Pretrial Order No. 6 (requiring electronic service through LexisNexis File & Serve).  As such, Movers were not aware that the Written Reasons were filed until October 15, 2018 when served with the Court's Order adopting the Written Reasons.  R. Doc. 21851.

**II.    EXPANDED DISCOVERY IS NECESSARY FOR COUNSEL TO DEFEND THEIR FEE INTERESTS.**

The essence of Due Process is the sense of fair play.  *See Galvan v. Press*, 347 U.S. 522, 530 (1954).  As Your Honor has warned, "Disproportionate results and inconsistent standards threaten to damage the public's faith in the judicial resolution of mass tort litigation by creating an impression of inherent unfairness."  Eldon E. Fallon, *Common Benefit Fees in Multidistrict Litigation*, 74 La. L. Rev. 371, 380 (2014).  "[T]ruth – as well as fairness – is best discovered by powerful statements on both sides . . . ." *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536 (9th Cir. 2016), quoting *Penson v. Ohio*, 488 U.S. 75, 84 (1988).  The ultimate question is whether "given the nature and circumstances of the case . . . the parties [had] a fair opportunity to present relevant facts and arguments to the court, and to counter the opponents' submission." *In re High Sulphur Content Gasoline Products Liability Litigation*, 517 F.3d 220, 231 (5th Cir. 2008) (quoting *In re Nineteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 982 F.2d 603, 614 (1st Cir. 1992), citing *In re Fine Paper Antitrust Litigation*, 751 F.2d 562, 584 (3d Cir. 1984)).

6

The above principles apply with equal force in fee proceedings. Minimum standards of transparency, impartiality and procedural fairness must be maintained. *In re High Sulfur Content Gasoline Products Liab. Litig.*, 517 F.3d at 234. "When a judge constructs a process for setting fees, the process must contain at least the procedural minima that the Due Process Clause requires; and, moreover, those procedures must apply in a fair and evenhanded manner to the parties in interest, without preferring one group of disputants over another." *In re Nineteen Appeals*, 982 F.2d at 614–15. Accordingly, the denial of basic discovery deprives Movers a fair and transparent process with equal access to the evidence necessary to adequately evaluate and rebut the Fee Committee's recommendations and, thereby, deprives Movers of an equal opportunity to be heard.

## III.     EVIDENCE OF THE COMMON BENEFIT WORK BEING COMPENSATED SHOULD BE AVAILABLE TO ALL INTERESTED PARTIES.

Movers categorize the discovery they seek into three general categories. The first is the common benefit time submissions underlying the lodestar calculations. The second category encompasses those documents related to the Fee Committee's evaluation of firms' common benefit work and its corresponding common benefit fee recommendations. Stated differently, the second category is aimed at the process for distributing the fees among the forty-six firms receiving a common benefit allocation; the common benefit fees recommended to Parker Waichman and Baron & Budd; and the Fee Committee meetings when the recommendation was discussed and/or decided. The third category is an accounting of all attorneys' fees received in connection with the Knauf and related settlements, which are at issue in this common benefit fee allocation proceeding.

### A.  Time Submissions

Movers request the time records which were submitted in accordance with Pretrial Order Nos. 9 (R. Doc. 147) and 9A (R. Doc. 12961). These time records demonstrate who performed

7

work, what specific work was performed and how much time was spent on said work. These time records were filed under seal and are available to the Plaintiffs' Steering Committee (the "PSC"), the Fee Committee, the court-approved CPA, the Court, and the Special Master.

The time submissions are the foundation of the lodestar computation, and valid lodestar data is critical to allocating common benefit fees. As demonstrated in the Step Five fee allocation proceeding, there are serious questions about the integrity of the lodestar data, including the number of hours approved and disapproved and whether such time is fairly assignable to the Knauf-related settlements. While the Court and Mr. Garrett provided oversight to the process, all qualitative decisions to assign, approve or disapprove common benefit work were made by the PSC leadership, and firms relied fully and exclusively on those decisions. Mr. Garrett's after-the-fact vetting was solely for accounting purposes, as explained in his testimony during the Step Five proceeding. He deferred to Mr. Herman and Mr. Levin for qualitative decisions. Movers challenge the legitimacy of the data at issue and seek limited discovery to accomplish Due Process.

In denying this request, the Special Master considered the discovery conducted during Step Five as sufficient for purposes of Step Six. *See, e.g., id.* at 10. However, most of the discovery requested in Step Five, including the production of the common benefit time submissions, was denied (*see* R. Doc. 20767), partially because of limited allocation issues as between the two competing stakeholder groups. The issues in Step Six clearly are different than those involved in Step Five. In Step Six, the Fee Committee's weighing and valuing of common benefit time are the foundation upon which its recommendations are based. Movers cannot adequately challenge the Fee Committee's recommendation on those issues without being privy to the time submissions.

8

Additionally, the lodestar approach was the primary method used by the Court in allocating fees between common benefit counsel and individually retained counsel.  R. Doc. 21168.  This was confirmed by the Court in its Order and Reasons denying certification or, alternatively, entry of final judgment on its Step 5 ruling.  R. Doc. 21322 at 8.  Specifically, the Court explained, "In setting the 52-48 allocation, the Court spent countless hours reviewing the record, and then applied the lodestar method and *Johnson* factors to arrive at its decision."  *Id.*   Because the Lodestar is an essential component in the Court's fee award, Movers should be given access the records underlying the lodestar computation.

### B. The Analysis and Considerations Leading to the Fee Committee's Recommendations

In addition to the time submissions, Movers should be allowed access to those documents which would reveal the Fee Committee's analyses, considerations and processes culminating in its common benefit fee recommendations.  This denial was improper for several reasons.

First, as explained above, the process for allocating fees must be fair and transparent.  The Fee Committee, in making its recommendations, relied on facts, analyses, evaluations and other considerations not available to other counsel.  Indeed, the Fee Committee's recommendations were heavily influenced by subjective factors.  As acknowledged by the Fee Committee majority, the Fee Committee relied on the "subjective understanding" of counsel's contributions to the litigation (R. Doc. 21455 at 4-5) and exercised "its discretion . . . in evaluating which work and expenses furthered the common benefit of the litigation (*Id.*, citing Pretrial Order No. 28 (R. Doc. 17379 at 14)).

Second, the Fee Committee performed several analyses or weighing exercises to arrive at its recommendations.  *See, e.g.,* R. Doc. 21455 at 5 (explaining that the Fee Committee "weighed

9

the contributions of counsel" (at ¶ 5) and "weigh[ed] reported hours of common benefit attorneys in degrees of importance to the relief achieved." (at ¶ 6)). The criteria and results of these weighing exercises, along with the Fee Committee communications on these subjects, should be available to all counsel who performed common benefit work and have an interest in a common benefit fee.

Third, the Special Master partially based his ruling on his promise to "consider the Fee Committee's recommendation and whatever evidence and arguments the Fee Committee submits" (R. Doc. 21798 at 9) as well as "anyone else's recommendations, evidence, and arguments." *Id.* This assurance is meaningless when only one side, the Fee Committee, has unilateral access to the relevant evidence.

### C. An Accounting of the Attorneys' Fees at Issue

On September 29, 2017, Movers requested a full accounting of the $233,078,270.33 in attorneys' fees received or constructively received by the PSC in connection with the Knauf, Global, Banner, InEx, Virginia, and L & W settlements[4], the InEx/North River fee award[5], and voluntary contributions[6] deposited into the Court registry. R. Docs. 20995 and 21005. To date, the Court has not ruled on Movers' request. The accounting was sought after numerous questionable common benefit expenditures were discovered by Movers and brought to the attention of the Special Master and the Court[7], and after certain attorneys' fees were segregated

---

[4] *See* R. Docs. 17398, 17426, 20175.

[5] *See* R. Doc. 16968.

[6] *See* R. Docs. 8389 and 8545.

[7] *See* Primary Counsel's Post-Evidentiary Hearing Brief filed with the Special Master; *See also* R. Rec. Doc. 20993-2.

10

from the attorney fee fund to be allocated pursuant to Steps Five and Six set forth in Pretrial Order No. 28 (R. Doc. 17379). *See* R. Docs. 20995 and 21005. The requested accounting is required by Due Process to provide transparency to this proceeding and is necessary to assure all stakeholders that the attorneys' fees at issue have been appropriately handled. Further, if the accounting reveals that any funds have been improperly used, this should be taken into account in the common benefit fee allocation. As such, Movers' request for an accounting should be granted.

### IV. CONCLUSION

For the reasons set forth above, the Motion for Reconsideration should be granted. The Court should decline to adopt the Special Master's Written Reasons (R. Doc. 21798) and order the production of those documents requested by Movers as necessary to provide Due Process in this common benefit fee allocation proceeding.

Respectfully submitted,

**FAIRCLOTH, MELTON & SOBEL, LLC**

By:   /s/ *Jimmy R. Faircloth, Jr.*
    Jimmy R. Faircloth, Jr. (LA #20645)
    jfaircloth@fairclothlaw.com
    Brook L. Villa (LA #31988)
    bvilla@fairclothlaw.com
    Franklin "Drew" Hoffmann (LA #35824)
    dhoffmann@fairclothlaw.com
    9026 Jefferson Highway
    Building 2, Suite 200
    Baton Rouge, LA 70809
    Phone: (225) 343-9535
    Fax: (225) 343-9538

*Attorneys for Parker Waichman LLP*

**AND**

                                  **BARON & BUDD, P.C.**

                                  By:   /s/ *Russell W. Budd*
                                  Russell W. Budd (TX #03312400)
                                  rbudd@baronbudd.com
                                  S. Ann Saucer (TX #00797885; LA #21368)
                                  asaucer@baronbudd.com
                                  Holly Werkema (TX # 24081202)
                                  hwerkema@baronbudd.com
                                  3102 Oak Lawn Avenue, Suite 1100
                                  Dallas, TX 75219
                                  Phone: 214-521-3605
                                  Fax: 214-520-1181

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 17th day of October, 2018.

                                  /s/ *Jimmy R. Faircloth, Jr.*
                                  OF COUNSEL