# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * CIVIL ACTION <br> * <br> * MDL NO. 2047 <br> * <br> * SECTION L (5) |
| THIS DOCUMENT RELATES TO: <br> ALL CASES | * <br> * <br> * |

## ORDER & REASONS

Before the Court is Plaintiffs' "Motion to Construe Settlement Agreement and Define Scope of Review." R. Doc. 21805. The Knauf Defendants have filed an opposition. R. Doc. 21827. Plaintiffs have filed a reply, R. Doc. 21849,[1] and Defendants have filed a surreply, R. Doc. 21853. Having considered the applicable law and the parties' arguments, the Court is ready to rule.

## I. BACKGROUND

From 2004 through 2006, a housing boom in parts of the United States and rebuilding efforts necessitated by Hurricanes Rita and Katrina in the Gulf South led to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used to construct and refurbish homes in coastal areas of the country, notably the Gulf and East Coasts. Sometime after the Chinese drywall was installed, homeowners began to complain of foul-smelling odors, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829–30 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014). Many of these homeowners also began to complain of various physical afflictions believed to have been caused by the Chinese drywall.

---

[1] The Court notes this filing was marked deficient.

These homeowners then began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. Because of the commonality of facts in the various cases, this litigation was designated as a multidistrict litigation. Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation on June 15, 2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 09-2047 before this Court.

The Chinese drywall at issue was largely manufactured by two groups of defendants: (1) the Knauf Entities and (2) the Taishan Entities. The litigation has focused on these two entities and their downstream associates and has proceeded on strikingly different tracks for the claims against each group. Relevant to this Order are the Knauf Defendants.[2] The Knauf Entities are German-based, international manufacturers of building products, including drywall, whose Chinese subsidiary, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), advertised and sold its Chinese drywall in the United States.

The Knauf Entities are named defendants in numerous cases consolidated with the MDL litigation as well as litigation in state courts. The Knauf Entities did not contest jurisdiction and first entered their appearance in the MDL litigation on July 2, 2009. *See* Rec. Doc. 18. On November 2, 2009, in Pretrial Order No. 17, KPT agreed to a limited waiver of service. *See* Rec. Doc. 401. After a period of intense discovery, the court set various bellwether trials. From March 15–19, 2010, the

---

[2] The Chinese Defendants include the principal Chinese-based Defendant, Taishan, namely, Taishan Gypsum Co. Ltd. ("TG") and its wholly-owned subsidiary, Taian Taishan Plasterboard Co., Ltd. ("TTP") (collectively "Taishan" or "Taishan Entities"). Other Chinese-based Defendants include China New Building Materials Group ("CNBM Group"), China New Building Materials Co. ("CNBM"), CNBMIT Co. Ltd. ("CNBMIT"), CNBM USA Corp. ("CNBM USA"), and United Suntech Craft, Inc. ("United Suntech") (collectively the "CNBM Entities"), as well as the Beijing New Building Materials Public Limited Company ("BNBM") and Beijing New Building Material Group ("BNBMG") (collectively the "BNBM Entities").

Court presided over a bellwether trial in *Hernandez v. Knauf Gips KG*, Case No. 09-6050, involving a homeowner's claims against KPT for defective drywall. *See* Rec. Doc. 2713. For purposes of the trial, Knauf stipulated that KPT Chinese drywall "emits certain reduced sulfur gases and the drywall emits an odor." *Id*. The Court, based on the evidence presented, found the KPT Drywall was a defective product and issued a detailed Findings of Fact and Conclusions of Law in favor of Plaintiff Hernendez ("*Hernandez* FOF /COL"), *see id.*, and entered a Judgment in the amount of $164,049.64, including remediation damages in the amount of $136,940.46, which represented a cost of $81.13 per square foot based on the footprint square footage of the house. *See* Rec. Doc. 3012.

On October 14, 2010, Knauf agreed to participate in a pilot program to remediate a number of homes using the remediation protocol formulated by the Court in *Hernandez*. The Knauf pilot remediation program has, at present, remediated over 2,800 homes containing KPT Chinese drywall using essentially the same protocol. At the Court's urging, after a number of homes had been remediated, the parties began working together to monetize this program and make it available to a broader class of plaintiffs. Thereafter, the PSC and Knauf entered into settlement discussions, and on December 20, 2011, some two years after the formation of this MDL, the PSC reached a global remediation settlement with Knauf, which is designed to resolve all Knauf-related Chinese drywall claims. R. Doc. 16407-3. This agreement (the "Knauf Class Settlement Agreement") applied to all claimants who filed suit against Knauf on or before December 9, 2011.

On August 12, 2013, Plaintiffs' and Defendants' Liaison counsel entered into a second settlement agreement addressing claims filed after December 9, 2011 (the "New Claims Settlement Agreement"). R. Doc.16978-1. Under the New Claims Settlement Agreement, Claimants who gave notice prior to October 25, 2013 and qualified under the terms of the New Claims Agreement, were

eligible to seek benefits under the Knauf Class Settlement Agreement, subject to the requirements set forth in both agreements. R. Doc. 16978-1.

Under the terms of the settlements, the claimants with KPT Chinese drywall (drywall manufactured by Knauf's Chinese subsidiary) were offered several options. Under Option 1, the claimants were offered the opportunity to receive a complete, environmentally certified remediation of their properties. Under Option 2, the claimants were offered cash reimbursement in the event the home was already remediated. Finally, under Option 3, claimants were offered a cash payment instead of remediation as well as the opportunity to receive monetary benefits from the Knauf downstream chain of commerce entities to compensate them for other specifically designated losses. The total amount of the Knauf Settlement is approximately $1.1 billion.

To assist in the adjudication of this MDL, and pursuant to the settlement agreements' terms, the Court appointed Dan Balhoff to serve as Special Master. Relevant to this motion, at the direction of the Court, the Special Master was tasked with determining eligibility for settlement benefits for sixteen already remediated properties. He reviewed the relevant documents and submissions of the interested parties and issued his report and recommendations and supplemental report and recommendations on August 10, 2018 and August 22, 2018, respectively. R. Docs. 21838, 21839. On October 1, 2018, Plaintiffs filed the instant motion, arguing that the Special Master's review of these claims exceeded the scope of his authority under both the Knauf Class Settlement Agreement and New Claims Settlement Agreement. R. Doc. 21805.

## II. DISCUSSION

Plaintiffs argue the Special Master exceeded the scope of his authority under the Knauf settlement agreements in issuing his report and recommendations regarding whether the sixteen already remediated properties in dispute are eligible for settlement funds. According to Plaintiffs,

4

the Special Master's authority is limited to a determination of reimbursable costs only. R. Doc. 21805-1 at 2. In opposition, Defendants submit the Court and the Special Master have an obligation under the terms of the Knauf Class Settlement Agreement and New Claims Settlement Agreement to make eligibility determinations when a conflict arises. R. Doc. 21827.

Section 4.3.7 of the Knauf Class Settlement Agreement provides:

> Owners who have self-remediated Affected Properties or have entered into contracts to self-remediate Affected Properties prior to the Execution Date shall be entitled to benefits to resolve their Remediation Claims as provided in the Already Remediated Properties Protocol. Such benefits shall be paid from the Remediation Fund. In addition, such Owners are entitled to seek benefits from the Other Loss Fund.

R. Doc. 16407-3. The Already Remediated Properties Protocol provides a "process by which to resolve the Remediation Claims of the individual Owners who self-remediated their Affected Properties . . . ." R. Doc. 12061-6. The Protocol's process obligates claimants to submit all required information within their possession and, if needed, move the Court to resolve the claims if a dispute arises. *Id.*

The Court's review of ARH Claims is defined by Paragraph IV(D) of the Protocol for "Reimbursable Costs." *Id.* § IV(C)(2). Paragraph IV(D) limits the Knauf Defendants' responsibility for Reimbursable Costs to the KPT Drywall Percentage and explicitly requires the Special Master and the Court to determine a Claimant's eligibility for settlement benefits based on compliance/non-compliance with PTO 1(B)'s evidence preservation and presentation requirements. *Id.* §§ IV(D)(3), (4); *see also* R. Doc. 337 (setting forth the Court's expectations concerning the preservation of evidence).

In turn, Paragraph IV(D)(4), "Reimbursable Costs," provides:

> The Special Master and the Court will take into consideration, in determining whether to allow a claim or the amount of the claim, whether the Owner has complied with MDL Pretrial Order 1B (if the claim is pending in the MDL) or with applicable

5

state law requirements for preservation of evidence (if the claim is pending in state court). Subject to review by the Special Master or the Court, the failure to preserve evidence as required by law will result in disallowance or reduction in the amount of the claim if the failure has been prejudicial to a determination of the claim.

R. Doc. 20933 at 3.

On February 1, 2018, the Knauf Defendants requested the Court hold a status conference to discuss their objection to the sixteen already remediated properties at issue in this order. In their motion, the Knauf Defendants explained:

The Knauf Defendants have sixteen (16) unresolved Already Remediated Home ("ARH") claims all represented by the same plaintiff counsel. As the Court is aware, typically when unresolved, ARH claims under the Settlement Agreement are submitted to the Special Master, who reviews and provides an opinion and decree, with all parties having appeal rights to this Court. However, for the sixteen (16) unresolved claims, plaintiffs' counsel's position is that these claims may be submitted directly to the Court for review and decision.

R. Doc. 21167 (footnote omitted). Pursuant to the Knauf Entities' request, the Court set a status conference to take place on March 7, 2018. R. Doc. 21171. Following the March 7, 2018 status conference, the Court referred the matter to the Special Master for consideration in the first instance. R. Doc. 21238.

The Court concludes the settlement agreements' terms allowed for this action to be taken. Both the Knauf Class Claims Settlement Agreement and the New Claims Settlement Agreement acknowledge that, "[n]otwithstanding any other provision," the Court has jurisdiction for "purpose of administering, supervising, *construing* [and] enforcing" the settlement, R. Doc. 12918-3 at § 15.1 (emphasis added); R. Doc. 16978-1 at § VII.C (emphasis added), and that the Court may request input from a Special Master before the Court makes a final decision. *See, e.g.*, R. Doc. 12061-6 § IV.D.4. Indeed, even if the Knauf Class Claims Settlement Agreement and the New Claims Settlement Agreement did not contemplate the use of a Special Master, the Court has the authority

6

to employ one pursuant to Federal Rule of Civil Procedure 53. As a result, the Court will deny Plaintiffs' request.

### III. CONCLUSION

After reviewing the record, the applicable law, and the terms of the settlement agreements, the Court finds it did not exceed the scope of its authority in referring the matter to the Special Master and finds the Special Master did not exceed the scope of his authority in making eligibility determinations with respect to the sixteen already remediated properties. Moreover, the Court finds that the Special Master's report and recommendations and supplemental report and recommendations are supported by the terms of the settlement agreement. Accordingly,

**IT IS ORDERED** that Plaintiffs' motion to construe the settlement be and hereby is **DENIED**.

New Orleans, Louisiana, this 22nd day of October, 2018.

_____
Eldon E. Fallon
United States District Judge