# Exhibit "2"

```
1                      UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
2                       CASE NO. 11-CV-22408-MGC

3   MR. EDUARDO AMORIN, et al.
                                           Miami, Florida
4               Plaintiff(s),
                                           November 7, 2018
5          vs.

6   TAISHAN GYPSUM CO, LTD., f/k/a
    SHANDONG TAIHE DONGXIN CO., LTD.,
7   et al.

8               Defendant(s).      Pages 1 - 57

9   ------------------------------------------------------------

10                       MOTION HEARING
                BEFORE THE HONORABLE MARCIA G. COOKE
11                  UNITED STATES DISTRICT JUDGE

12  APPEARANCES:

13  FOR THE PLAINTIFF(S):  PATRICK S. MONTOYA, ESQ.
                           Colson Hicks Eidson
14                         255 Alhambra Circle
                           Coral Gables, Florida 33134
15                         (305) 476-7400
                           patrick@colson.com
16
                           SANDRA L. DUGGAN, ESQ.
17                         ARNOLD LEVIN, ESQ.
                           Levin Sedran & Berman
18                         510 Walnut Street
                           Philadelphia, Pennsylvania 19106
19                         (215) 592-1500
                           sduggan@lfsblaw.com
20                         alevin@lfsblaw.com

21                         PEARL A. ROBERTSON, ESQ.
                           Irpino Avin Hawkins
22                         2216 Magazine Street
                           New Orleans, Louisiana 70130
23                         800-7500-LAW

24

25
```

```
1    APPEARANCES (CONT'D)

2    FOR THE PLAINTIFF(S):    PETER ALBANIS, ESQ.
                              Morgan & Morgan
3                             12800 University Drive
                              Suite 600
4                             Fort Myers, Florida 33907
                              (239) 433-6880
5
                              JIMMY FAIRCLOTH, ESQ.
6                             Faircloth Melton & Sobel
                              412 N. 4th Street
7                             Baton Rouge, Louisiana 70802
                              (225) 343-9535
8                             jfaircloth@fairclothlaw.com

9                             PATRICK M. WALLACE, ESQ.
                              Whitfield Bryson & Mason, LLP
10                            900 W. Morgan Street
                              Raleigh, North Carolina 27603
11                            (919) 600-5016
                              pat@wbmllp.com
12
                              ALLISON GRANT, ESQ.
13                            14 S.E. 4th Street
                              Boca Raton, Florida 33432
14                            (561) 994-9646
                              agrant@allisongrantpa.com
15

16   FOR THE DEFENDANT(S):    BERNARD TAYLOR, ESQ.
     Taishan Gypsum          CHRISTY HULL EIKHOFF, ESQ.
17                            Alston & Bird
                              1201 W. Peachtree Street
18                            Atlanta, Georgia 30309
                              (404) 881-7000
19                            bernard.taylor@alston.com
                              christy.eikhoff@alson.com
20
                              ENJOLIQUE D. AYTCH, ESQ.
21                            Akerman, LLP
                              350 East Las Olas Boulevard
22                            Fort Lauderdale, Florida 33301
                              (954) 759-8970
23                            enjoliuqe.aytch@akerman.com

24

25
```

```
 1   APPEARANCES (CONT'D)

 2   FOR THE DEFENDANT(S):   CRAIG P. KALIL, ESQ.
     Beijing New Building     JOSHUA D. POYER, ESQ.
 3   Materials                Aballi Milne Kalil P.A.
                              1 SE 3rd Avenue
 4                            Miami, Florida 33131
                              (305) 373-6600
 5                            ckalil@aballi.com
                              jpoyer@aballi.com
 6

 7   FOR THE DEFENDANT(S):   JAMES STENGEL, ESQ.
                              ANDREW K. DAVIDSON, ESQ.
 8                            MARC SHAPIRO, ESQ.
                              Orrick, Herrington & Sutcliff, LLP
 9                            405 Howard Street
                              San Francisco, California 94105
10                            (415) 773-5700
                              jstengel@orrick.com
11                            adavidson@orrick.com
                              mshapiro@orrick.com
12

13   REPORTED BY:            Jill M. Felicetti, RPR, CRR, CSR
                              Official Court Reporter
14                            400 N. Miami Avenue, Suite 08S27
                              Miami, Florida 33128
15                            jill_felicetti@flsd.uscourts.gov

16

17

18

19

20

21

22

23

24

25
```

```
 1            (Case called to order of the court)

 2            THE COURT:  This is Eduardo Amorin v. Taishan Gypsum.

 3            For the record, appearing on behalf of the plaintiff.

 4            MR. MONTOYA:  Your Honor, Patrick Montoya and a host

 5   of others, if you'd like them to make their individual

 6   appearances.

 7            THE COURT:  At least for purposes of the record,

 8   counsel that's present.

 9            MS. DUGGAN:  Sandra Duggan for the plaintiffs, your

10   Honor.

11            MR. LEVIN:  Arnold Levin for the plaintiffs, your

12   Honor.

13            MS. ROBERTSON:  Pearl Robertson for the plaintiffs,

14   your Honor.

15            MR. ALBANIS:  Pete Albanis for the plaintiffs.

16            MR. FAIRCLOTH:  Jimmy Faircloth for the plaintiffs.

17            MR. WALLACE:  Patrick Wallace for the plaintiffs.

18            MS. GRANT:  Allison Grant for the plaintiffs, and on

19   behalf of Baron & Budd for the plaintiffs.

20            THE COURT:  Thank you very much.

21            Appearing on behalf of defendants, who are also

22   plural.

23            MR. TAYLOR:  Yes, your Honor.  For Taishan, Bernard

24   Taylor.

25            MR. AYTCH:  Good afternoon, your Honor.  For Taishan,
```

1   Enjolique Aytch.

2          MS. HULL EIKHOFF:  For Taishan, Christy Hull Eikhoff.

3          MR. KALIL:  Good afternoon, your Honor.  On behalf of

4   Beijing New Building Materials, Craig Kalil and Joshua Poyer,

5   from Aballi Milne Kalil, here in Miami.

6          With us, Mr. James Stengel, Andrew Davidson and Marc

7   Shapiro.

8          THE COURT:  Now, counsel, plaintiffs may be seated

9   because I am going to start this with defendants' motion.

10          It's amazing to me how a case goes into whatever is

11   the -- I suppose I shouldn't use the pejorative black hole, but

12   I am, of an MDL and comes back and no one agrees on anything.

13          It appears as if the defendants would have me reject

14   everything that Judge Fallon did and start over again.

15          So what I do have is defendants' motion to reject the

16   application of the remediation damages.  I have defendants'

17   motion to enforce trial rights and memorandum in support.

18   That's Docket Entry 66.  And defendants' motion to, memorandum

19   to enforce discovery rights, Docket Entry 67.

20          I am saying them all at once even though they are

21   captioned in separate motions because it's basically the same

22   thing:  Judge, start all over again, scrap what Judge Fallon

23   did, and just let's litigate this case from day one.  So I

24   don't know how you want to present it, but that's how I am

25   seeing it.  If that's not the way, now is your time.

1      MR. TAYLOR:  Thank you, your Honor, for letting us

2   know the court's predilection or at least observation of where

3   you think we are.  Fortunately today our colleague,

4   Ms. Enjolique Aytch, will make the argument for Taishan.

5      THE COURT:  Thank you very much.

6      Ms. Aytch, if you would proceed, please.

7      For the record, all the monitors should be on.

8      MR. AYTCH:  Good afternoon, your Honor.  May it please

9   the court.  Enjolique Aytch on behalf of Taishan.

10      I want to note at the outset and then I will come back

11   to your question that the defendants have filed two separate

12   briefs addressing two distinct issues.

13      One is filed on behalf of both the defendants

14   advocating for the rejection of the remediation formula and the

15   other brief filed by BNBM is applicable to it alone and will be

16   argued by Mr. Stengel following my presentation.

17      We absolutely are not asking the court to start all

18   over.  We are absolutely not asking the court to reject

19   everything that is done in the MDL.  But we are particularly

20   asking the court to retain the jurisdiction that it has as a

21   transferor court and get to damages specifically as to the

22   Florida claimants.

23      So the court in its order specifically asked whether

24   it was required to give preclusive effect to and therefore is

25   bound to follow Judge Fallon's damages formula.  The answer is

1    a resounding no.  And the court can and in fact it must reject

2    the formula.  The Eleventh Circuit will not reverse this court

3    from rejecting the formula, but it will for employing the

4    formula.  Let me explain this.

5           First, the court can reject it for the following three

6    reasons.  Judge Fallon himself did not make the use of the

7    damages formula binding on this court.  His explicit language

8    in the suggestion of remand is clear that this court does not

9    have to employ the formula.  That makes sense because he could

10   not have made it binding.  MDL courts --

11          THE COURT:  Counsel, although I may not be required to

12   accept Judge Fallon's approach, there is case precedent for me

13   to say that it is encouraged using three different plans, ways

14   of looking at it, that I accept Judge Fallon's.  I may not be

15   required, but there is case law encouraging me to do so.

16          MR. AYTCH:  If the order is not clearly erroneous.  If

17   your Honor is satisfied that you do not have to do so, I can

18   skip the first three bullet points and move to the fourth,

19   which is why the Eleventh Circuit absolutely requires you to do

20   so.

21          THE COURT:  I'd like to hear why the Eleventh Circuit

22   will require it because I am not sure I am on the same sheet of

23   music with you that it's required that I reject it.

24          MR. AYTCH:  That's the fourth point, that it is

25   required that you reject it.  You are satisfied, your Honor,

1    that you have the discretion to use it or not.  Am I clear on

2    that point?

3            THE COURT:  Yes.

4            MR. AYTCH:  Okay.  So the Eleventh Circuit will

5    require you to reject it because it does not comport with

6    Florida law or Eleventh Circuit law employing Florida law.

7    Even the plaintiffs agree that there is a duty to reject

8    clearly erroneous orders.  So in this way it's just to

9    determine how is it clearly erroneous.

10           It does not follow property damages in accordance with

11   Florida and Eleventh Circuit law because it provides a

12   windfall, it does not permit individualized proof, and it

13   skirts the two principles of due process.  Namely, that

14   plaintiffs bear the burden for proving damages and those

15   individual damages, as well as defendants have a right to mount

16   a defense to those damages notwithstanding a default procedure.

17           Cases in the Eleventh Circuit in this district have

18   rejected plaintiff's attempt to establish damages through

19   formulaic shortcuts before.  It isn't surprising because

20   formulaic shortcuts go against the basic American tort

21   jurisprudence.

22           Focusing on this district in this circuit for the

23   purposes of this argument, let's look at Amtrak v. Rountree.

24           Here, the Eleventh Circuit affirmed a court where the

25   court refused to consider a damages formula that went beyond

1    actual proven damages for the individual properties at issue.

2    So like this case, it was looking at property damages.  And it

3    held that Florida's law does not permit windfalls.

4         The court makes clear that under Florida law the

5    measure of damages for property is the loss -- is the

6    difference between the value of the damaged property before and

7    after the casualty.  So the court directs the lower courts that

8    they must be careful to ensure that property damages are --

9    that the property damages awarded are not unjustly enriched.

10        Here, the defendants have demonstrated how the use of

11   this particular formula would result in windfall damages to the

12   plaintiffs who do not dispute this finding.  This is the chart

13   that is set forth in the immediate brief on the last pages.

14        Second, Allapattah Services v. Exxon.  The Eleventh

15   Circuit again affirmed a Southern District of Florida court

16   when it refused to enter an aggregate damages award, which is

17   being sought here, to a whole class that was extrapolated from

18   the results of one trial simply because the defendant was

19   entitled to contest the individual claims one by one.

20        Again, under Florida property damages law, individual

21   claims must be assessed.  Your Honor.

22        THE COURT:  Excuse me, Ms. Aytch, you are going to be

23   slightly interrupted.  Unfortunately, our prisoner elevator is

24   broken and we have --

25        THE FEDERAL MARSHAL:  Sorry, your Honor.

1        THE COURT:  I understand under the circumstances.  I

2   apologize to counsel.

3        (Recess)

4        Ms. Aytch, you may continue.  I apologize for the

5   interruption.

6        MR. AYTCH:  No apologies necessary, your Honor.

7        Finishing up on the <u>Allapattah</u> case.  Again, in that

8   case when dealing with property damages, the court -- the

9   Eleventh Circuit affirmed a Florida district court where they

10  refused to enter an aggregate damages award because the

11  defendant was entitled to contest the individual claims one by

12  one.

13       In <u>Cotromano</u>, a Southern District of Florida case,

14  Judge Marra likewise rejected a damages formula because the

15  degree of damages varied among class members and required

16  plaintiff-by-plaintiff scrutiny, just like here.

17       That case involved homes and properties, just like

18  this one.  He recognized that property damages cannot be

19  formulaic because of the individualized factors.  Some of those

20  same individualized factors are present in this case, your

21  Honor.

22       Then similarly, the per unit formula was rejected not

23  only because individualized proof is needed, but in the absence

24  of individualized proof, a defendant is deprived of his due

25  process rights to defend against the damages alleged.

1          This case, the <u>Kpadeh v. Emmanuel</u> case, is all fours

2    on that.  Judge Jordan explicitly rejected the notion of a

3    damages formula based on a sampling of claims.  He found that

4    it violated defendant's due process even though the defendant

5    was in default and was accused of heinous conduct.  He held

6    that using a formula would do a disservice to justice and that

7    awards cannot be the product of a matrix.

8          His reasoning was lawful and sound and a predictor of

9    how the Eleventh Circuit would treat a plaintiff's damages

10   formula here, especially considering that he now sits on that

11   very court.

12         Judge Jordan noted and upheld these principals even in

13   the face of what he thought would be a difficult damages

14   assessment, saying:  I do not pretend that determining damages

15   in a case like this one will be easy.  My point is that damages

16   for different plaintiffs should not be determined by reference

17   to an arbitrary formula.

18         Here, however, damages will be relatively easy because

19   defendants are offering a simple solution to get the claims

20   resolved.  The defendants' trial plan, your Honor, provides due

21   process and makes so much more sense because it follows

22   Eleventh Circuit law, it follows the Constitution, and it is

23   more efficient.

24         The defendants' plan would select 20 priority

25   claimants, would do discovery on all areas of damages for those

1    claimants, trial on those damages claims, and mediation to get

2    to the resolution of these claims.  And mediation is a

3    meaningful step, your Honor, in these cases because it will

4    lead to complete resolution.  In fact, we have already agreed

5    in principle on a framework to settle several hundreds of these

6    claims in Florida, and those discussions are continuing.

7         It is a seven-month track to trial under defendants'

8    plan, which comports with this court's previously entered

9    scheduling order which the parties have already agreed to.

10        On the other hand, plaintiffs' trial plan is confusing

11   and convoluted.  For each claimant -- under plaintiffs' plan,

12   for each claimant there is different timelines and different

13   procedures for different categories of damages.  Their plan

14   does not resolve all of the damages in one trial setting.

15        The first track, which addresses only remediation

16   damages, is advocating for the use of this unlawful formula

17   matrix that we have talked about.

18        The second track, which would get to other damages,

19   such as alternative living expenses, foreclosure, short sale,

20   bankruptcy, and any other damages that aren't remediation

21   damages or bodily injury damages, there is an unspecified

22   method of assessment.

23        Plaintiffs spend a mere sentence in their trial plan

24   on the second track, stating only plaintiffs' claims for other

25   property damages can efficiently be resolved through a special

1    master or tried by a jury depending on the circumstances.  It

2    is absolutely devoid of any way of how we would actually

3    resolve those areas of damages.  And based upon whether or not

4    there is going to be a trial on all of these other areas of

5    damages is not efficient and still requires the work of doing

6    discovery for all 1700 claimants because this track does not

7    relate to any of the priority claimants.

8         Then their third track that addresses only bodily

9    injury damages, that is the only track that at all adheres to

10   this court's prior scheduling order.  On that track, for bodily

11   injury damages only, which the plaintiffs have said are very

12   minimal, that track would then take the court's scheduling

13   order and then due priority claimants and discovery.

14        So as between the two plans, the efficient path to

15   resolution is the defendants.

16        If you adopted plaintiffs' bizarre plan, which

17   includes the unlawful remediation formula, you would get

18   reversed.  It simply does not comport with the way property

19   damages can be adjudicated under Florida law.

20        Aside from that, you wouldn't want to adopt their

21   plan, your Honor, because you previously stated that you wanted

22   to achieve resolution of all of these claims within two years,

23   and plaintiffs' plan simply would not get you there.

24        Like the district court in Allapattah who refused to

25   go along with a more complicated process invented by the

1    plaintiffs to get to an aggregate number, this court should do

2    the same, and the Eleventh Circuit would likewise affirm.

3         The Eleventh Circuit has already held that in light of

4    individualized damages issues, we believe that the district

5    court's decision not to enter an aggregate judgment was proper

6    because the judgment would not have expedited or simplified the

7    claim process.  Indeed, it would have complicated the claims

8    process further.

9         For these reasons, you should reject the remediation

10   damages formula and adhere to the trial schedule that you have

11   already set in place.

12        Any further questions?

13        THE COURT:  No.  No, I do not.

14        MR. AYTCH:  I will then have Mr. Stengel present his

15   position.

16        MR. STENGEL:  Good afternoon, your Honor.  Jim Stengel

17   from BNBM PLC.

18        I am going to deal with a narrower issue, which is the

19   effective defaults on proceedings in this court, but I'd like

20   to take a step back and address the concern your Honor raised

21   at the beginning of this hearing.

22        We aren't looking for a do-over.  We are looking for

23   an efficient way to resolve these cases, mindful of your

24   admonition when we were first before you that this was not a

25   court where we would have unlimited time.  We should expect the

case to be resolved within 24 months.  We have agreed with the plaintiffs on a schedule that we believe on the defense side that would have gotten us there.  But we have to operate in a lawful manner consistent with what the MDL judge has done or has not done.

I join in the argument on the application of the formula.  There is no reason for this court to do that.  It doesn't resolve any claim in its entirety.  Claims will still have to be tried.  There will have to be process applied to them.  We don't gain anything other than to infect these proceedings with appealable error.  And that will not be an aide to resolution in the cases.

Now the narrower issue I need to address is the effect of defaults on BNBM PLC.  Just by way of background -- and, your Honor, I do beg your indulgence.  The procedural history in these cases is extremely complex, and I know the court has struggled with the volume of material.  But the defaults here have a genesis in an action where BNBM PLC was not a party.

Seven properties were part of a trial in a case captioned Germano.  It proceeded to final judgment with the default against Taishan but not BNBM PLC.

Next, please.

I am collapsing a substantial amount of time and activity in the court before Judge Fallon, but peculiarly and for reasons which the plaintiffs can explain, we ended up with

1    three class actions.  The Amorin cases, which were filed in

2    Louisiana, this court, and Virginia.  They largely overlapped.

3    There is some slight variations in terms of equitable tolling

4    doctrines in various jurisdictions, but they are essentially

5    the same case.  But critically, they are not consolidated.

6    They are not the same case.  They have individual captions.

7    They have proceeded as separate cases.  No motion was made to

8    consolidate.  In those cases both Taishan and BNBM PLC are in

9    fact defendants.

10         Now, one of the issues we struggle with here and we

11   decide what to do going forward is the nature of the record we

12   are left with.  The plaintiffs' steering committee in the MDL

13   did move selectively for defaults in the Amorin cases, but as

14   they have admitted in their own briefing, they did not seek to

15   have default entered against each defendant in every case.  And

16   we have a chart here which is drawn from findings and

17   conclusions that Judge Fallon entered in support of class

18   certification in 2014.

19         I will say it has been corrected because Judge

20   Fallon's version, based on submissions from the plaintiffs --

21   this was essentially an ex parte proceeding at that point in

22   time -- did not reflect the entry of a default against BNBM PLC

23   in the Virginia Amorin action.

24         What the plaintiffs argue is, well, these cases are

25   all kind of the same.  You know, if we had you on one case, we

1    had you on all of them.  That's all we needed to do.  Or that

2    through res judicata or collateral estoppel if we had default

3    against BNBM PLC in one case, it should be applicable to the

4    others.  Neither of those is a legally sustainable argument.

5          Now, first and most fundamentally, as I noted, these

6    are separate cases and they were litigated that way.  If you

7    look at the findings and conclusions of Judge Fallon, he listed

8    the cases separately, they had separate docket numbers, and,

9    most importantly, there is no basis in the law to suggest that

10   the MDL process in any way affects a substantive consolidation

11   of the cases.  1407 does not have that effect for substantive

12   purposes.  So the cases remain separate.  So it is significant

13   when a default has been entered in one but not all cases

14   against BNBM PLC, particularly when the case, where there is no

15   default entered, is this very case before your Honor.

16         As your Honor is probably acutely aware at this point

17   since you have this litigation in your courtroom, these cases

18   have been remanded separately.  The plaintiffs' explanation for

19   the three Amorin cases is a reference to concerns about

20   personal jurisdiction.  Those concerns have obviously been

21   substantially heightened by the Bristol-Myers Squibb case out

22   of the Supreme Court.  If you look at the structure of the

23   remands, where we are today, you see a clear reflection of the

24   fact that these cases have been narrowed so that we will be

25   litigating Florida claims in this courtroom, presumably

1    Virginia claims in the Virginia court, and we will stay in

2    Louisiana to litigate Louisiana claims.  That means that these

3    cases are different and distinct and it matters where the

4    defaults took place.

5         Now, one of the disputes we have had with the

6    plaintiffs here is a loose use of terminology.  As your Honor

7    is well aware, black letter law requires that for there to be

8    preclusive effect there has to be a final judgment.

9         The only final judgment in this case is the Germano

10   case, which does not involve BNBM PLC.  It involves only

11   Taishan.  So none of these preliminary defaults or default

12   entries constitute final judgments which end the litigation.  I

13   mean, that's one of the problems we are having here, is we

14   can't get to finality without a complete disposition of all of

15   the claims.

16        Ironically, to claim that Amorin, Virginia, was in

17   some sense a final judgment is belied by the fact that the MDL

18   court has transferred it back to the Eastern District of

19   Virginia.  So we're frankly in the same position as this court,

20   although several months behind, since the court there has just

21   recently received the case.

22        The admissions of the plaintiffs in their briefing on

23   this matter are essentially dispositive because they

24   acknowledge there is no default in this case.  They acknowledge

25   they didn't seek a default in all cases.  That means that there

1    is no basis to give preclusive effect to the default in this

2    case, which means BNBM PLC has full rights to litigate.

3           Now, the only contrary authority that the plaintiffs

4    refer to is the Bush case.  The Bush case is a very

5    distinguishable case.  It deals with the discharge of

6    obligations in bankruptcy.  We think on its face it's limited

7    to bankruptcy.

8           Further, the behavior of the defendant there, and I

9    anticipate you will hear a different story on this from the

10   plaintiffs, there the plaintiff -- excuse me, the defendant

11   actually appeared.  He answered.  He participated in

12   litigation.  He sought discovery.  He acknowledged the

13   jurisdiction of the court.

14          BNBM PLC never did that.  It never participated and,

15   again, you will probably hear a slightly different tune from

16   the plaintiffs on this.  There is nothing wrong with a party

17   choosing not to appear.  That's within their rights.  They put

18   themselves at risk.  But that puts us outside Bush where,

19   frankly, the preclusive effect was pursuant to Rule 37 as a

20   sanction for litigation and misconduct.  That's not in any way

21   relevant here.

22          So where that leaves us, your Honor, is in proceeding,

23   we are not seeking a do-over.  But as I represent a client that

24   retains full rights, we need to make sure we have a process in

25   this court to get to resolution that honors those full and

1   undiminished rights.  We think by agreeing to a very aggressive

2   schedule with the plaintiffs in this case we committed to honor

3   your Honor's request that we resolve this matter quickly, and

4   it's not productive or useful to exchange blows, if you will,

5   about who is at fault for where all the time went in the MDL.

6   We have been engaged in a number of tracks of litigation that

7   probably in retrospect are not terrifically productive.

8          But we arrived in this court with the case where it

9   is.  We recognize the court and, frankly, all the parties'

10  needs to see that this is resolved.  We think that the proposal

11  the defendants have made and the agreed-upon schedule with the

12  plaintiffs is the best and safest way to get us to that end

13  point.

14         Thank you very much, your Honor.

15         THE COURT:  Thank you very much.

16         Anything else from the defendants before I hear from

17  plaintiff?

18         Mr. Montoya, are you speaking for all the plaintiffs

19  or will they each take a turn?

20         MR. MONTOYA:  Your Honor, I will handle the bulk of

21  the argument.  Certain issues I will hand over to my

22  co-counsel, Ms. Duggan, who is sitting behind me.

23         THE COURT:  Thank you.

24         MR. MONTOYA:  Your Honor, if I could, if you could

25  toggle on the computer at the plaintiffs' counsel desk.  I also

1    want to let your Honor know at some point I may switch over to

2    the ELMO as well.

3          THE COURT:  Let me know and we will make sure it gets

4    switched.

5          MR. MONTOYA:  If I could approach, I do have some

6    printed materials.

7          THE COURT:  Hand them to the law clerk, please.

8          MR. MONTOYA:  Your Honor, I have struggled with

9    exactly how to start this presentation.  The closest thing I

10   can come to as I listened to what the defendants have said, and

11   I don't know if your Honor is familiar are the movie Groundhog

12   Day or not.  That's the Bill Murray movie when every day he

13   wakes up the same thing keeps happening over and over and over

14   again.  No matter what he tries to do, the same thing keeps

15   happening over and over and over again.  That's what we are

16   faced with here in this case.

17         THE COURT:  Isn't the moral of the story it keeps

18   happening that way until he figures out what he's doing wrong?

19         MR. MONTOYA:  That's exactly right.

20         THE COURT:  So I think what the defendants would tell

21   me is, Judge, you need to figure out what you are doing wrong

22   before you go down this path, and I think you are going to tell

23   me, if I follow what Judge Fallon did, I am going to be okay

24   procedurally and intellectually.  Correct?

25         MR. MONTOYA:  Correct.  You have the cloak and the

1   protection of the district court judge's findings at every step

2   of the way.  You have due process that has been given to the

3   defendants, who sat on the sidelines, admittedly, for years and

4   years and years, as our clients, thousands of them, sat in

5   their homes with Chinese drywall, from 2005 to 2008 when these

6   products were shipped into the United States, and then from

7   now, from '08 to '18, who are still without resolution.

8          It does matter what happened and what they did outside

9   of litigation and not appearing and knowing about the

10  litigation, which I will walk the court through briefly a

11  little bit of the history, it does matter to their due process

12  argument, because due process is different in each case and it

13  depends on the nature of the case, and the conduct of the

14  parties matters.

15         These defendants do not come here with clean hands.

16  They want to start with a new slate before your Honor and they

17  don't want to talk about their past actions in delaying this

18  matter.  A deliberate, and what Judge Fallon found, deliberate

19  delay in litigation tactics.

20         The first slide, which is at Tab 1 of your book if you

21  want to look, but obviously it is also on your screen.

22  Everything I am reading and showing to you in this presentation

23  is either Judge Fallon's finding or from their own internal

24  documents.

25         This is a quote from Judge Fallon:  Defendants delay

1  tactics have permeated every aspect of the defendants'

2  litigation strategy, from their initial failure to appear to

3  their now perpetual motions to relitigate settled matters.

4         That was as of January 2, 2018.

5         Make no mistake, their trial plan is a plan to simply

6  relitigate individualized damages to try to decertify the

7  class, which they have already tried to do on multiple

8  occasions, and to relitigate this matter from the beginning.

9         Short history.  2005 to 2008, the defendants shipped

10  over 9.3 million square feet of drywall into the state of

11  Florida and into other various other states.  What's important

12  is that the defendants stayed out of this lawsuit for several

13  years while all this was going on and had full knowledge that

14  these lawsuits were being served.

15         These were documents -- and what I am showing you now

16  is a document from the MDL in Louisiana.  This is a document

17  filed in August of '18.  These were de-privileged documents

18  that, once Judge Fallon found the defendants in contempt, we

19  were allowed to go in and de-privilege and find out.  We found

20  out exactly what their litigation strategy was throughout the

21  entirety of this litigation.

22         This is BNBM PLC, a defendant here, this is their own

23  internal document where they realize, since they write and they

24  admit, that since the end of 2008 that BNBM PLC and Taishan

25  Gypsum were listed as defendants in this case.  So rewind ten

1    years ago, from day one, they knew it was happening.

2          The first of the lawsuits in Florida was served on

3    Taishan Gypsum in May of 2009.  They ignored that complaint.

4    And the next internal document we have is from Taishan Gypsum.

5    And that says:  After analysis, Taishan Company believes this

6    lawsuit is relatively complicated and plans not to respond.

7          They took deliberate measures not to pay attention to

8    these lawsuits.  They gave us reasons in their own internal

9    documents, in their own admissions.  Because responding to the

10   lawsuit would incur a large amount of attorneys' fees and

11   traveling fees.

12         They go on to say:  There is no judicial treaty signed

13   between China and the U.S. on mutual recognition and

14   enforcement of poor judgments, and since Taishan Gypsum does

15   not have any assets within the continental U.S., even if the

16   lawsuit was lost, the U.S. cannot enforce Taishan's assets in

17   China.

18         In other words, they are thumbing their nose at our

19   court system, at our Constitution, and our system of justice

20   because they think they can get away with it.  They don't have

21   assets here and they are not collectible.  This is a conscious

22   litigation strategy.

23         Now when they come to you ten years later and ask you

24   to reset it, it is simply the equities are on the side of the

25   plaintiffs in this matter in terms of the due process that they

1    deserve.  Yet they have been given due process every step of

2    the way.

3         Taishan Gypsum in May of 2009, right when these

4    lawsuits are being served and, frankly, the hysteria is going

5    on for our clients here because they are just finding out that

6    the walls of their home are attacking them with sulphuric

7    gasses that are coming out of their walls, that are harming

8    them from a personal injury standpoint, that are destroying

9    their appliances, that are destroying the value of their home.

10   As this is going on, Taishan goes to its leadership at BNBM,

11   another defendant in this case, goes to the top and goes to

12   approve the plan to ignore these lawsuits.  It's a conscious

13   strategy.

14        MDL is formed about a month later, in June of '09.  By

15   August, the summer of '09, the Germano case is served.  That's

16   the Virginia case where the default judgment was entered.

17        So we also found out after Taishan was found in

18   contempt of court that Taishan and BNBM have been in

19   consultation with counsel from the very beginning, since 2009.

20   We didn't know that from 2010 through about 2015.

21        What their internal documents have showed is that they

22   did consult with counsel that's in the courtroom today, that is

23   here now asking for this court's mercy for full due process and

24   a full shot back to square one so they could relitigate this

25   again for years.

1          In September of 2009 -- this is, again, another

2     internal document from BNBM PLC -- they interviewed three sets

3     of lawyers -- the Orrick firm, the Hogan Lovells firm, and also

4     the K&L Gates firm.

5          They knew that judgments would be entered against

6     them.  BNBM PLC reports in September of '09 that they are aware

7     that Judge Fallon already issued a warning to Taishan Gypsum.

8     And they knew that if Taishan did not respond before September

9     of 2009 that the court would enter an order and issue a default

10    judgment against Taishan Gypsum.

11         The assumption here is, Judge, the lawyers at those

12    tables were probably giving those clients pretty good advice,

13    saying you are going to get defaults entered against you, you

14    need to pay attention.  Defaults were entered.  They didn't pay

15    attention.  Conscious litigation strategy.

16         They are defaulted in September of '09 in the Mitchell

17    case, which is in Florida, and in November of '09 in Germano,

18    which is in Virginia.

19         In 2010, the Germano trial is held by Judge Fallon.

20    Taishan chooses not to participate.  I will show you just a few

21    photos of the damage that results with Chinese drywall.  But

22    today I know we are here on procedural issues and I just want

23    to go through the history here.

24         $2.6 million judgment, default, in Germano.

25         Then we are into May 2010.  After the trial has

happened, BNBM has still not responded to the lawsuits at all.
Judge Fallon found, and this is a judicial findings, BNBM's
early absence in this litigation was a calculated strategy
rather than a misunderstanding of the court's pretrial order.

They had counsel.  We know they have had counsel.
They have had counsel for eight years.  Yet they chose to
ignore us.

BNBM PLC in May of 2010 admits that they were served
with a summons from the U.S., and BNBM and Taishan Gypsum is
going to continue to keep an eye on the progress of the
incident.  As counsel said in their presentation to you, well,
you know, we can choose to ignore the litigation, but ignoring
the litigation does have consequences.  One of those
consequences is when you are given due process at every step of
the way and you are defaulted, it means these types of damages
can be decided against you at this point.

Taishan retains the Hogan Lovells firm in June of
2010.  They say they do not respond to lawsuits because they
didn't understand the U.S. legal system.  That was a finding in
2012 when Judge Fallon found that Taishan Gypsum says they
didn't understand the U.S. legal system.  What we didn't know
in 2012, which is what we know now, is that those documents I
showed you, that said they were consulting with lawyers, they
were consulting with lawyers the whole time.  They knew exactly
what was going on and they chose to ignore it.

1          BNBM in September 2010 retains Orrick.  Everybody

2     sitting at that table, the client sitting at that table sign a

3     joint defense agreement.  They are working together.  They have

4     knowledge of exactly what's going on with one another.

5          So between 2010 and 2014, what happens?  There was a

6     big gap.  My last slide was November 2010 and then January to

7     May 20, 2014.

8          Taishan comes back in.  BNBM still hasn't been heard

9     of at all.  They are sitting with their lawyers on the

10     sidelines.  Taishan comes back in and wants to contest

11     jurisdiction.  Guess what Judge Fallon does.  He gives them due

12     process.  He allows them to come in to contest jurisdiction.

13          We do full-blown jurisdictional discovery for about a

14     year to a year and a half, including depositions in Hong Kong,

15     which I mentioned to you the first time I was before your

16     Honor.  The first round of those depositions went so poorly

17     that Judge Fallon took the unprecedented step of flying back

18     out to Hong Kong for the next round of depositions to make sure

19     that the questions were asked truthfully or the questions were

20     answered truthfully and that the depositions proceeded

21     efficiently.  More due process.

22          July of 2014.

23          THE COURT:  Were they present when Judge Fallon was in

24     Hong Kong?

25          MR. MONTOYA:  Was who present?

1           THE COURT:  Were the defendants who claimed they

2    weren't aware of this case and didn't participate, were they

3    present or did they have legal representative?

4           MR. MONTOYA:  Yes.  To be absolutely clear, Taishan

5    enters into the litigation.  Judge Fallon says you want to

6    contest jurisdiction, we will have jurisdictional discovery.

7           We went and took the depositions of the Taishan

8    employees in Hong Kong, and Hogan Lovells was representing them

9    at that time.  Absolutely they were represented, and they knew

10   we were there.

11          The depositions went so poorly, the interpreters were

12   fighting with one another, the witnesses were not responding to

13   questions appropriately, the judge read the transcripts and

14   said we are going to do these over again.  It's a do-over.  I

15   am flying out and we are going to get a State Department

16   interpreter.  We are going to have one interpreter and I am

17   going to rule on objections on the spot in order to get this

18   done.

19          THE COURT:  Judge Fallon was there during the

20   depositions.  Plaintiff had -- I mean defendant had counsel

21   during the deposition and objected during some of the testimony

22   taken at that time.

23          MR. MONTOYA:  That's correct, your Honor.

24          So after Taishan, after the default judgment was

25   entered, Judge Fallon ordered Taishan to make an appearance for

1    judgment debtor exam in New Orleans.  Taishan chose to ignore

2    Judge Fallon's order.  Judge Fallon entered both a civil

3    contempt order and a criminal contempt order at that point.

4         So when I tell you the defendants don't come in with

5    clean hands, it's not Patrick talking, it's a district court

6    judge talking and finding Taishan in contempt both civilly and

7    criminally.

8         In September 2014 the Amorin class is certified, which

9    is the case that's before your Honor.  The defendants had the

10   opportunity to appear.  Very well were much aware of the

11   litigation at that point.  Did not do so.  The class gets

12   certified.  Judge Fallon sets a damages hearing in February of

13   2015.

14        It's at that point that BNBM, who is the puppet master

15   in all of this, whose documents we saw that they had counsel

16   the whole time in 2010, all the way up through now, 2015, they

17   decide to come off the sidelines and jump in at this point.

18   This is now six years, almost six years post the first filing

19   of the complaint.

20        BNBM comes in and asks for a continuance from Judge

21   Fallon on the remediation damages hearing.  Judge Fallon grants

22   them that continuance so they could contest damages.  I believe

23   it was a six-month continuance.

24        Yet another finding by Judge Fallon in January of this

25   year -- I apologize I am reading to the court -- he is

1   discussing the damages hearing.  He says:  It was only after

2   the court certified the Amorin class and scheduled a hearing on

3   class remediation damages that movants decided to appear in the

4   MDL in 2015, almost six years after suits were filed against

5   them, to challenge plaintiffs' evidence of damages, class

6   certification, and the court's jurisdiction over them.

7        The class damages hearing is held.  Taishan and BNBM

8   are now participating.  So when we go through the checklist of

9   due process, they stood on the sidelines, now they decide we

10  are in, they are contesting it, they made their Daubert

11  challenges, they cross-examined the plaintiffs' expert.  Any

12  challenge to the sufficiency or the merits of plaintiffs'

13  damages formula, the remediation damages formula, has been

14  fully vetted by Judge Fallon.

15       So on a clearly erroneous standard, which we believe

16  is the standard your Honor would have to look at for Judge

17  Fallon's ruling, that work has been done for your Honor.  And

18  simply what our trial plan does is to try to expedite this

19  process.

20       We are not talking about fault here anymore.  We are

21  talking about damages.  The biggest category of damages is the

22  remediation damages.  Those can be applied on a classwide

23  formula.  Judge, the defendants had the opportunity to contest

24  it, they did so, and Judge Fallon found what he found.

25       Due process isn't lacking.  They may not like the

1   results, but that doesn't mean due process wasn't given.  They

2   have had their due process.  And they have been litigating that

3   for the last few years.

4           This is yet another quote from Judge Fallon in January

5   of 2018:  While the defendants keep relitigating, moving to

6   decertify the class, fighting individual damages, Judge Fallon

7   found that plaintiffs here, thousands of them, are still

8   without remedy after installing defective Chinese drywalls and

9   suffering from them.  Additionally, plaintiffs have expended

10  significant time and money in this litigation.  Any further

11  delays would undeniably prejudice the plaintiffs.

12          That's why we are here today.  We can't afford any

13  more delay in this case, your Honor.

14          Your Honor has this presentation at Tab 2 of our

15  package, I believe.  This is simply a timeline of what has

16  occurred.  The reason I feel the need to go through this with

17  your Honor is to reemphasize that they do not come here with

18  clean hands.  The buck needs to stop here.  Unfortunately,

19  these cases have now been dumped on your Honor in the position

20  that they are in, but it stops with you.

21          THE COURT:  Well, we will use the more diplomatic

22  term, transferred.

23          MR. MONTOYA:  I need to work on my legal lexicon.  I

24  apologize.

25          But your Honor is now faced with these.  What you have

1    is significant findings from a district court judge, due

2    process at every step of the way.  Judge, to really shortcut

3    the argument, to do what they are suggesting would pervert the

4    MDL statute completely, 1407 statute, and the purpose of having

5    an MDL, especially when they have been given due process along

6    the way.  To further shortcut it, your Honor has discretion in

7    these matters, and it's up to your discretion as to whether you

8    found Judge Fallon's rulings and orders to be clearly erroneous

9    or not.

10          THE COURT:  Mr. Montoya, let me ask you this question.

11   I appreciate -- you obviously learned appearing before me that

12   visuals help.

13          What about the defendants' argument that not only --

14   that although I may have discretion, exercising the discretion

15   in the manner that you suggest is reversible error.

16          MR. MONTOYA:  I have not seen a case that says it's

17   reversible error, number one.

18          Number two, if we follow the law of the case doctrine,

19   we know that the third prong of that test -- and we actually

20   have a further cheat sheet for your Honor on the due process

21   issues which go to the remediation damages formula.  If your

22   Honor could give me the ELMO, I will address that directly.

23          THE COURT:  Certainly.

24          MR. MONTOYA:  This is Tab 9 of the packet that we

25   handed the court.

1           If I understood your Honor's question appropriately --

2    and correct me if I am wrong, please -- your concern is about

3    an overbroad application of remediation damages formula.

4           THE COURT:  If I understand, the defendants concede

5    that under other circumstances exercising my discretion and

6    adopting the formula of Judge Fallon, the rulings in Judge

7    Fallon, might be appropriate.  But that in this case it would

8    be a denial -- that it would result in reversible error because

9    I am not following Florida law, and they discussed three cases.

10   One by Judge Gordon, one the Allapattah case, all which talk

11   about this.  How is this case different such that I am not

12   going down that path?

13          MR. MONTOYA:  Your Honor, I go back to what's on the

14   screen.  Due process requires notice and opportunity for

15   hearing appropriate to the nature of the case.

16          The nature of this case is the equities that I just

17   walked your Honor through, which was them standing on the

18   sidelines, being held in contempt both civilly and criminally,

19   BNBM waiting until '15 to make its appearance, and then Judge

20   Fallon, when the remediation damages time comes for a hearing,

21   giving them the full opportunity to be heard, cross-examine

22   witnesses, and now they just don't like the result.  That ship

23   has sailed.

24          The remediation damages formula is there.  It is not

25   mandatory upon your Honor, which you have recognized you do

1    have discretion and you do have the protection and the cloak of

2    a district court judge's findings.

3          As to the cases that were cited by the defendants,

4    Kpadeh is the Liberian torture case.  We have no dispute that

5    personal injury type damages, and there will be probably some

6    limited personal injury type claims that are brought in this

7    litigation, those do deserve individualized type consideration

8    that are not subject to a formula.  Nobody is making that

9    argument.

10         THE COURT:  Would I still be able, just let's say that

11   there are personal type injury damages.  Would I still be able

12   to hear those plaintiffs that have those injuries and use Judge

13   Fallon's formula legally and equitably, or are you saying any

14   personal injury issues are minimal and therefore not subject to

15   the formula that's in the case that was discussed by the

16   defendants because that's a very different factual situation?

17         MR. MONTOYA:  That's correct, your Honor.

18         As to the Cotromano case, which was, I believe, Judge

19   Marra's case from earlier this year.  It was an environmental

20   stigma damages case.  It's from the Pratt Whitney plant up in

21   West Palm Beach that's been allegedly leaking toxins into the

22   soil, et cetera.

23         Those are very individualized questions.  What

24   contaminant it was, when it got there, how it got there, and

25   they are trying to deal with 60,000 homes.

1          Here, we have one common core of operative facts.  We

2     have already got default, so we have got liability.  Two, we

3     know what this drywall does.  It off gases sulfer.  It destroys

4     all the copper and silver in a home.  It ruins anything with

5     silver in it, which means any electronics, with electronic

6     board, any plumbing.  Judge Fallon has found and has been

7     affirmed that the remediation damages are a full rip and tear.

8     Everybody's home that has this drywall needs full rip-and-tear

9     damages and needs to be replaced.  The electrical gets

10    replaced, the plumbing gets replaced, and it gets put back to

11    where it should be.

12         Those are the damages in the case.  That's what the

13    remediation damages formula encompasses and it takes into

14    account the geography of this area, the prices in South

15    Florida, and on an average basis does that.  Frankly, it's been

16    tested.  It's passed judicial muster and it's passed Daubert.

17    Your Honor does have that protection in terms of being reversed

18    from the Eleventh Circuit.

19         I don't want to belabor any further points unless your

20    Honor has questions.  The only thing I haven't addressed, if

21    your Honor has questions, is the BNBM default issue.

22         THE COURT:  The BNBM default issue, please.

23         MR. MONTOYA:  And I would now punt to my co-counsel

24    Ms. Duggan.

25         THE COURT:  Counsel.

1          MS. DUGGAN:  Good afternoon, your Honor.  May it

2     please the court, Sandra Duggan for the plaintiffs.

3          With regard to the defaults against BNBM, each and

4     every one of the 1700 Florida plaintiffs who are before this

5     court on remand has a default judgment against BNBM.  And by

6     way of background, I'd like to explain that there are three

7     identical Amorin complaints.  One was filed in Virginia, one

8     was filed in Florida, one was filed in Louisiana.

9          The reason we did that was because at the time they

10    were filed in 2011, the jurisdiction over Taishan was in

11    dispute.  Taishan said there were not enough minimum contacts

12    to hold Taishan responsible in the United States.  So we were

13    busy litigating that in the MDL.  It ultimately was appealed to

14    the Fifth Circuit, and that did not get finally resolved until

15    2014.

16         So in order to protect all of the plaintiffs in the

17    MDL we filed these three Amorin complaints.  It's important to

18    understand that each of the Amorin complaints included anybody,

19    any plaintiff, who was on an omni complaint previously.  So

20    every plaintiff who was in the Gross complaint -- and Gross was

21    one of the very first complaints filed back in 2009.  Every

22    plaintiff who was in the Wiltz omni complaint, Haya, Almeroth,

23    et cetera, were included on Amorin.

24         So Amorin really goes way back to 2009.

25         So all of the plaintiffs at that time in 2011 when we

1   filed the Amorin complaints were included.  As I said, they

2   were filed in three different jurisdictions because at that

3   time we didn't know what the courts were going to hold.

4          The reason we had to do that was because not only was

5   Taishan contesting jurisdiction, but we have since learned they

6   didn't want to participate in the litigation.

7          Now, as far as BNBM goes, we didn't obtain defaults

8   against BNBM just in Amorin in Virginia.  In fact, starting in

9   February of 2011 the plaintiffs obtained a default against BNBM

10  in the Gross case.  And that's at Rec. Docs. 7302.

11         On February 24 2011, the plaintiffs obtained a default

12  against BNBM in the Wiltz case.  That's at Rec. Docs. 7735.

13         On August 7, 2012, BNBM was again held in default in

14  the Gross case.  There were interventions into that complaint,

15  and that was at Rec. Docs. 15687.

16         After Amorin was filed we obtained defaults against

17  all of the defendants.  On July 1, 2014, BNBM was held in

18  default in Amorin, in Virginia, at Rec. Docs. 17815.

19         Three weeks after we obtained that default, the

20  plaintiffs moved for certification of the Amorin class.  That

21  was at a time when Taishan refused to appear in court before

22  Judge Fallon for judgment debtor exam.  So they were held in

23  civil and criminal contempt of court.  So because they took

24  this -- Judge Fallon said in his transcript they basically

25  didn't like the result, they lost their appeal, they took their

1    ball and went home.  So what we did is we filed the motion for

2    class certification.

3           Now, we call it the Amorin class, but the class

4    certification order that was entered on September 26, 2012

5    includes active litigants in Gross, in Germano, in Wiltz, all

6    three Amorin actions, as well as several other of the omnis,

7    Almeroth, Haya, and Abel.

8           In certifying the class, Judge Fallon carefully goes

9    through all of the defaults that have been obtained against all

10   of the Taishan defendants.  He ruled that because of the

11   default judgments, liability is conclusively established.  And

12   as Mr. Montoya set forth, this is not a situation where the

13   defendants weren't aware of the litigation or they didn't have

14   the means to come in and defend it.  They chose it as their

15   litigation strategy.

16          So for them to now come and say, well, we don't have a

17   default against them, these plaintiffs in Florida should go to

18   Virginia, for example, and pursue their case there, they also

19   argue that Bristol-Myers would prevent that.  So their

20   bottom-line argument is that the plaintiff should have nowhere

21   to go.

22          For that reason, none of the cases that are cited

23   apply to this case.  In other words, this is not a situation

24   where we are trying to meld together separate actions that were

25   in the MDL.  The case that they talk about says that they are

1   separate actions, but here you have the exact same plaintiffs

2   against the exact same defendants.  It's the same case.

3            THE COURT:  Thank you very much, counsel.

4            MS. DUGGAN:  Thank you.

5            THE COURT:  So basically the arguments I just heard

6   were on Docket Entry 61, 66 and 67.  Do we need arguments on 52

7   and 53, which is which trial plan to accept?  I think that I

8   will decide once I decide what claims, if any, are left, what's

9   the procedure going to be is which plan would be appropriate.

10           Does either counsel wish to speak to 52 or 53?

11           MR. MONTOYA:  No, your Honor.

12           MR. AYTCH:  Yes, your Honor, but only insofar as that

13   was part and parcel of the argument we previously made when I

14   addressed the individual plans.

15           THE COURT:  So do you want to address it?

16           MR. AYTCH:  So it doesn't need to be anything separate

17   and distinct.

18           THE COURT:  Counsel -- I am sorry, Ms. Aytch.  I

19   didn't mean to interrupt -- what I am going to do is take under

20   advertisement 61, 66, and 67.

21           The decision that I make there will decide which is

22   the appropriate trial plan or if I need additional briefing or

23   information or hearing as to 52 or 53.

24           MR. AYTCH:  Your Honor, may I address a couple of

25   points in rebuttal?

1          THE COURT:  Please.

2          MR. AYTCH:  I am going to come to the podium.

3          Your Honor's questioning was very insightful and very

4     enlightening as to where we need to go with this.  I am going

5     to try to follow the questions that you set forth.

6          Notably, the plaintiffs did not refute the binding

7     Eleventh Circuit court authority which is, how do you achieve

8     damages, property damages under Florida law.  Instead, the

9     argument came down to, well, Judge Fallon came up with this

10    remediation formula and so we should apply it.  But that

11    doesn't make it legally sound in this circuit, because Judge

12    Fallon was not applying Florida property damages law when he

13    came up with the remediation formula.  In fact, it was based on

14    seven Virginia homes, and that is critical in this case.

15         The second point was Taishan is a bad actor and so

16    therefore let's not even look at anything else because they

17    pretty much brought this on themselves.  That's what I want to

18    hit critically, your Honor.

19         Taishan has not avoided discussing prior behavior for

20    any reason, that it is just a red herring that is irrelevant to

21    how you adjudicate these claims.  However, let's also talk

22    about what plaintiffs did not mention that defendants did in

23    the past.

24         Taishan returned to the litigation, paid all the

25    Germano judgments that was previously put up by the plaintiffs,

1   and paid all of the fines that Judge Fallon entered.  Taishan

2   is now here litigating these cases and has given a plan for

3   resolution to get to -- to resolve all of the cases before your

4   Honor.  Also, Taishan has begun settlement talks for some of

5   these claims.  So the idea that Taishan is wanting to continue

6   to delay and is going to skirt and run is just, it's baseless

7   both legally and factually.

8        However, Kpadeh is again on all fours in this

9   instance.  Due process, as Mr. Montoya said, has to be given

10  every step of the way.  So the fact that the defendants

11  previously defaulted has no bearing on whether or not they have

12  a due process right to defend the damages against them

13  currently.  And that is the Kpadeh case through and through.

14       Lastly, there was a note or a suggestion that Kpadeh

15  is only about bodily injury.  It is not, your Honor.  It is

16  about all of the damages that would be assessed when

17  individualized damages need to be proved up.

18       On the bodily injury issue, your Honor asked about how

19  much of a category of damages is that, and the idea was that it

20  is minimal.  We want to come back to the plaintiffs' trial plan

21  in saying this remediation damages formula would not apply to

22  the bodily injury damages nor would it apply to all of the

23  other damages that are outstanding.  I do not recall hearing

24  plaintiff saying that they were abandoning these categories of

25  damages, but nevertheless, there has been no plan presented to

1    this court as to how you would resolve those categories of

2    damages even if you were to apply the unlawful remediation

3    formula.

4         That is the second and third track.  And minimal or

5    not, those damages -- those claims would still be pending here

6    and would need resolution in some shape, form, or fashion.  The

7    defendants' plan gets to resolution of all of these claims.

8         Does your Honor have any additional questions about

9    the background on this?

10        THE COURT:  No.  Thank you, counsel.

11        Thank you very much, counsel.  As I said, I will --

12        MR. STENGEL:  Your Honor, if I may.

13        THE COURT:  Yes.

14        MR. STENGEL:  Your Honor, Jim Stengel again.  I won't

15   say I will be brief because it always appropriately raises

16   judicial suspicion.

17        What you heard from plaintiffs is a recital of a long

18   history of litigation.  It's made no one happy.  We don't

19   dispute many of the factual procedural notions.  But what we do

20   dispute is Taishan and BNBM PLC are not the same entity.  We

21   are separate.  BNBM PLC did not appear before Judge Fallon and

22   disappear.  That was Taishan and Taishan alone.

23        It is inappropriate to conflate Taishan and BNBM PLC

24   for these purposes in these discussions.

25        One point I think is very clear is we heard a

1    reiteration of the plaintiffs' arguments as to why the Amorin,

2    Virginia, default should be applied in this court against BNBM

3    PLC.  But what you didn't hear was any evidence that there is a

4    default in this case, the Florida case.

5          Further, plaintiff said what PLC wants to happen is to

6    leave these plaintiffs with nowhere to go.  That's not,

7    frankly, what's at issue, your Honor.  The issue is whether

8    there is a default which will be preclusive.

9          These plaintiffs are free to litigate in this court.

10   We have agreed to a schedule, we have agreed to a process that

11   will allow them to do that.  We are not leaving anyone without

12   a place to go from a litigation perspective.

13         What we are saying is that there were not appropriate

14   defaults entered so that we have rights to proceed.  That's all

15   we are asking for in this court.

16         To back up more broadly, your Honor, the law of the

17   case does not insulate this court from Appellate review.  You

18   heard from Taishan's counsel a very extensive presentation

19   about the risk of statutory adjudication of claims in tort.

20   These are tort claims first and foremost.  They have the same

21   issues of variability and individual characteristic that was

22   included in the other cases.  So for this court to go down the

23   path of using a formulaic approach would be reversible error.

24         Thank you.

25         THE COURT:  Thank you very much, counsel.

```
 1              As I said previously, order to enter on the issues

 2   that were a part of this hearing.

 3              Thank you very much.

 4                (Proceedings adjourned.)

 5

 6                    C E R T I F I C A T E

 7

 8       I hereby certify that the foregoing is an accurate

 9   transcription of the proceedings in the above-entitled matter.

10

11

12   November 12, 2018        /s/ Jill M. Felicetti
                              Jill M. Felicetti, RPR, CRR, CSR
13                            Official Court Reporter
                              400 N. Miami Avenue, Suite 08S27
14                            Miami, Florida 33128
                              jill_felicetti@flsd.uscourts.gov
15

16

17

18

19

20

21

22

23

24

25
```

MR. ALBANIS: [1]  4/14
MR. AYTCH: [11]  4/24 6/7 7/15 7/23
8/3 10/5 14/13 40/11 40/15 40/23 41/1
MR. FAIRCLOTH: [1]  4/15
MR. KALIL: [1]  5/2
MR. LEVIN: [1]  4/10
MR. MONTOYA: [17]  4/3 20/19 20/23
21/4 21/7 21/18 21/24 28/24 29/3 29/22
32/22 33/15 33/23 34/12 35/16 36/22
40/10
MR. STENGEL: [3]  14/15 43/11 43/13
MR. TAYLOR: [2]  4/22 5/25
MR. WALLACE: [1]  4/16
MS. DUGGAN: [3]  4/8 36/25 40/3
MS. GRANT: [1]  4/17
MS. HULL EIKHOFF: [1]  5/1
MS. ROBERTSON: [1]  4/12
THE COURT: [35]  4/1 4/6 4/19 5/7 6/4
7/10 7/20 8/2 9/21 9/25 14/12 20/14
20/22 21/2 21/6 21/16 21/19 28/22 28/25
29/18 32/20 33/9 33/22 34/3 35/9 36/21
36/24 40/2 40/4 40/14 40/17 40/25 43/9
43/12 44/24
THE FEDERAL MARSHAL: [1]  9/24

## $

$2.6 [1]  26/24

## '

'08 [1]  22/7
'09 [5]  25/14 25/15 26/6 26/16 26/17
'15 [1]  34/19
'18 [2]  22/7 23/17

## /

/s [1]  45/12

## 0

08S27 [2]  3/14 45/13

## 1

11-CV-22408-MGC [1]  1/2
12 [1]  45/12
1201 [1]  2/17
12800 [1]  2/3
14 [1]  2/13
1407 [2]  17/11 33/4
1500 [1]  1/19
15687 [1]  38/15
1700 [2]  13/6 37/4
17815 [1]  38/18
19106 [1]  1/18

## 2

20 [2]  11/24 28/7
2005 [2]  22/5 23/9
2008 [3]  22/5 23/9 23/24
2009 [7]  24/3 25/3 25/19 26/1 26/9
37/21 37/24
2010 [9]  25/20 26/19 26/25 27/8 27/18
28/1 28/5 28/6 30/16
2011 [4]  37/10 37/25 38/9 38/11
2012 [4]  27/20 27/22 38/13 39/4
2014 [7]  16/18 28/5 28/7 28/22 30/8
37/15 38/17

2015 [4]  25/20 30/13 30/16 31/4
2018 [4]  1/4 23/4 32/5 45/12
215 [1]  1/19
2216 [1]  1/22
225 [1]  2/7
239 [1]  2/4
24 [2]  15/1 38/11
255 [1]  1/14
26 [1]  39/4
27603 [1]  2/10

## 3

30309 [1]  2/18
305 [2]  1/15 3/4
33128 [2]  3/14 45/14
33131 [1]  3/4
33134 [1]  1/14
33301 [1]  2/22
33432 [1]  2/13
33907 [1]  2/4
343-9535 [1]  2/7
350 [1]  2/21
37 [1]  19/19
373-6600 [1]  3/4
3rd [1]  3/3

## 4

400 [2]  3/14 45/13
404 [1]  2/18
405 [1]  3/9
412 [1]  2/6
415 [1]  3/10
433-6880 [1]  2/4
476-7400 [1]  1/15
4th [2]  2/6 2/13

## 5

5016 [1]  2/11
510 [1]  1/18
52 [3]  40/6 40/10 40/23
53 [3]  40/7 40/10 40/23
561 [1]  2/14
57 [1]  1/8
5700 [1]  3/10
592-1500 [1]  1/19

## 6

60,000 [1]  35/25
600 [1]  2/3
600-5016 [1]  2/11
61 [2]  40/6 40/20
66 [3]  5/18 40/6 40/20
6600 [1]  3/4
67 [3]  5/19 40/6 40/20
6880 [1]  2/4

## 7

7000 [1]  2/18
70130 [1]  1/22
70802 [1]  2/7
7302 [1]  38/10
7400 [1]  1/15
759-8970 [1]  2/22
773-5700 [1]  3/10
7735 [1]  38/12

## 8

800-7500-LAW [1]  1/23
881-7000 [1]  2/18
8970 [1]  2/22

## 9

9.3 million [1]  23/10
900 [1]  2/10
919 [1]  2/11
94105 [1]  3/9
9535 [1]  2/7
954 [1]  2/22
9646 [1]  2/14
994-9646 [1]  2/14

## A

Aballi [2]  3/3 5/5
aballi.com [2]  3/5 3/5
abandoning [1]  42/24
Abel [1]  39/7
able [2]  35/10 35/11
about [20]  12/17 17/19 20/5 22/9 22/17
25/14 25/20 28/13 31/20 31/21 33/13
34/2 34/11 39/25 41/22 42/15 42/16
42/18 43/8 44/19
above [1]  45/9
above-entitled [1]  45/9
absence [1]  10/23 27/3
absolutely [6]  6/17 6/18 7/19 13/2 29/4
29/9
accept [3]  7/12 7/14 40/7
accordance [1]  8/10
account [1]  36/14
accurate [1]  45/8
accused [1]  11/5
achieve [2]  13/22 41/7
acknowledge [2]  18/24 18/24
acknowledged [1]  19/12
action [2]  15/18 16/23
actions [5]  16/1 22/17 39/6 39/24 40/1
active [1]  39/5
activity [1]  15/24
actor [1]  41/15
actual [1]  9/1
actually [3]  13/2 19/11 33/19
acutely [1]  17/16
adavidson [1]  3/11
additional [2]  40/22 43/8
Additionally [1]  32/9
address [5]  14/20 15/13 33/22 40/15
40/24
addressed [2]  36/20 40/14
addresses [2]  12/15 13/8
addressing [1]  6/12
adhere [1]  14/10
adheres [1]  13/9
adjourned [1]  45/4
adjudicate [1]  41/21
adjudicated [1]  13/19
adjudication [1]  44/19
admissions [2]  18/22 24/9
admit [1]  23/24
admits [1]  27/8
admitted [1]  16/14
admittedly [1]  22/3
admonition [1]  14/24

# A

**adopt** [1] 13/20
**adopted** [1] 13/16
**adopting** [1] 34/6
**advertisement** [1] 40/20
**advice** [1] 26/12
**advocating** [2] 6/14 12/16
**affects** [1] 17/10
**affirm** [1] 14/2
**affirmed** [4] 8/24 9/15 10/9 36/7
**afford** [1] 32/12
**after** [11] 9/7 24/5 25/17 26/25 29/24 29/24 31/1 31/4 32/8 38/16 38/19
**afternoon** [5] 4/25 5/3 6/8 14/16 37/1
**again** [14] 5/14 5/22 9/15 9/20 10/7 19/15 21/14 21/15 25/25 26/1 29/14 38/13 42/8 43/14
**against** [23] 8/20 10/25 15/21 16/15 16/22 17/3 17/14 26/5 26/10 26/13 27/16 31/4 37/3 37/5 38/8 38/9 38/12 38/16 39/9 39/17 40/2 42/12 44/2
**aggregate** [4] 9/16 10/10 14/1 14/5
**aggressive** [1] 20/1
**ago** [1] 24/1
**agrant** [1] 2/14
**agree** [1] 8/7
**agreed** [6] 12/4 12/9 15/1 20/11 44/10 44/10
**agreed-upon** [1] 20/11
**agreeing** [1] 20/1
**agreement** [1] 28/3
**agrees** [1] 5/12
**aide** [1] 15/12
**Akerman** [1] 2/21
**akerman.com** [1] 2/23
**al** [2] 1/3 1/7
**ALBANIS** [2] 2/4 4/15
**alevin** [1] 1/20
**Alhambra** [1] 1/14
**all** [41] 5/20 5/22 6/7 6/17 11/1 11/25 12/14 13/4 13/6 13/9 13/22 16/25 17/1 17/1 17/13 18/14 18/25 20/5 20/9 20/18 23/13 27/1 28/9 30/15 30/16 34/10 36/4 37/16 37/25 38/17 39/5 39/9 39/9 41/24 42/1 42/3 42/8 42/16 42/22 43/7 44/14
**Allapattah** [4] 9/14 10/7 13/24 34/10
**alleged** [1] 10/25
**allegedly** [1] 35/21
**ALLISON** [2] 2/12 4/18
**allisongrantpa.com** [1] 2/14
**allow** [1] 44/11
**allowed** [1] 23/19
**allows** [1] 28/12
**Almeroth** [2] 37/22 39/7
**almost** [2] 30/18 31/4
**alone** [2] 6/15 43/22
**along** [2] 13/25 33/5
**already** [7] 12/4 12/9 14/3 14/11 23/7 26/7 36/2
**also** [8] 4/21 20/25 22/21 25/17 26/3 39/18 41/21 42/4
**alson.com** [1] 2/19
**Alston** [1] 2/17
**alston.com** [1] 2/19
**alternative** [1] 12/19
**although** [3] 7/11 18/20 33/14

**always** [1] 43/15
**am** [22] 5/9 5/12 5/20 5/24 7/22 7/22 8/1 14/18 15/23 21/23 22/22 23/15 29/15 29/16 30/25 34/2 34/9 34/11 40/18 40/19 41/2 41/4
**amazing** [1] 5/10
**American** [1] 8/20
**among** [1] 10/15
**AMORIN** [22] 1/3 4/2 16/1 16/13 16/23 17/19 18/16 30/8 31/2 37/7 37/17 37/18 37/23 37/24 38/1 38/8 38/16 38/18 38/20 39/3 39/6 44/1
**amount** [2] 15/23 24/10
**Amtrak** [1] 8/23
**analysis** [1] 24/5
**ANDREW** [2] 3/7 5/6
**another** [6] 25/11 26/1 28/4 29/12 30/24 32/4
**answer** [1] 6/25
**answered** [2] 19/11 28/20
**anticipate** [1] 19/9
**any** [20] 12/20 13/2 13/7 14/12 15/8 17/10 19/20 24/15 31/1 32/10 32/12 35/13 36/5 36/6 36/19 37/19 40/8 41/20 43/8 44/3
**anybody** [1] 37/18
**anymore** [1] 31/20
**anyone** [1] 44/11
**anything** [6] 5/12 15/10 20/16 36/4 40/16 41/16
**apologies** [1] 10/6
**apologize** [4] 10/2 10/4 30/25 32/24
**appeal** [1] 38/25
**appealable** [1] 15/11
**appealed** [1] 37/13
**appear** [6] 19/17 23/2 30/10 31/3 38/21 43/21
**appearance** [2] 29/25 34/19
**appearances** [4] 1/12 2/1 3/1 4/6
**appeared** [1] 19/11
**appearing** [4] 4/3 4/21 22/9 33/11
**appears** [1] 5/13
**Appellate** [1] 44/17
**appliances** [1] 25/9
**applicable** [2] 6/15 17/3
**application** [3] 5/16 15/6 34/3
**applied** [3] 15/9 31/22 44/2
**apply** [5] 39/23 41/10 42/21 42/22 43/2
**applying** [1] 41/12
**appreciate** [1] 33/11
**approach** [3] 7/12 21/5 44/23
**appropriate** [5] 34/7 34/15 40/9 40/22 44/13
**appropriately** [3] 29/13 34/1 43/15
**approve** [1] 25/12
**arbitrary** [1] 11/17
**are** [88]
**area** [1] 36/14
**areas** [3] 11/25 13/3 13/4
**aren't** [2] 12/20 14/22
**argue** [2] 16/24 39/19
**argued** [1] 6/16
**argument** [12] 6/4 8/23 15/6 17/4 20/21 22/12 33/3 33/13 35/9 39/20 40/13 41/9
**arguments** [3] 40/5 40/6 44/1
**ARNOLD** [2] 1/17 4/11

**arrived** [1] 20/9
**as** [40] 5/13 6/20 6/21 8/15 8/15 12/19 13/14 16/7 16/13 17/5 17/16 18/6 18/19 19/19 19/23 21/2 21/10 22/4 23/4 23/25 25/10 27/11 33/7 35/3 35/18 38/1 38/7 38/7 39/6 39/6 39/12 39/14 40/12 40/23 41/4 42/9 43/1 43/11 44/1 45/1
**Aside** [1] 13/20
**ask** [2] 24/23 33/10
**asked** [3] 6/23 28/19 42/18
**asking** [5] 6/17 6/18 6/20 25/23 44/15
**asks** [1] 30/20
**aspect** [1] 23/1
**assessed** [2] 9/21 42/16
**assessment** [2] 11/14 12/22
**assets** [3] 24/15 24/16 24/21
**assumption** [1] 26/11
**Atlanta** [1] 2/18
**attacking** [1] 25/6
**attempt** [1] 8/18
**attention** [3] 24/7 26/14 26/15
**attorneys'** [1] 24/10
**August** [3] 23/17 25/15 38/13
**August 7** [1] 38/13
**authority** [2] 19/3 41/7
**Avenue** [3] 3/3 3/14 45/13
**average** [1] 36/15
**Avin** [1] 1/21
**avoided** [1] 41/19
**award** [2] 9/16 10/10
**awarded** [1] 9/9
**awards** [1] 11/7
**aware** [6] 17/16 18/7 26/6 29/2 30/10 39/13
**away** [1] 24/20
**AYTCH** [8] 2/20 5/1 6/4 6/6 6/9 9/22 10/4 40/18

# B

**back** [14] 5/12 6/10 14/20 18/18 25/24 28/8 28/10 28/17 34/13 36/10 37/21 37/24 42/20 44/16
**background** [3] 15/14 37/6 43/9
**bad** [1] 41/15
**ball** [1] 39/1
**bankruptcy** [3] 12/20 19/6 19/7
**Baron** [1] 4/19
**based** [4] 11/3 13/3 16/20 41/13
**baseless** [1] 42/6
**basic** [1] 8/20
**basically** [3] 5/21 38/24 40/5
**basis** [3] 17/9 19/1 36/15
**Baton** [1] 2/7
**be** [50]
**Beach** [1] 35/21
**bear** [1] 8/14
**bearing** [1] 42/11
**because** [35] 5/9 5/21 7/9 7/22 8/5 8/11 8/19 9/18 10/10 10/14 10/19 10/23 11/18 11/21 12/3 13/6 13/21 14/6 16/19 18/23 22/12 24/9 24/20 25/5 27/18 34/8 35/16 37/9 38/2 38/4 38/23 39/10 41/11 41/16 43/15
**been** [20] 16/19 17/13 17/18 17/20 17/24 20/6 22/2 25/1 25/18 28/8 31/13 31/17 32/2 32/19 33/5 35/21 36/6 36/15

**B**

been... [2]  39/9 42/25
before [17]  1/10 8/19 9/6 14/24 15/24
 17/15 20/16 21/22 22/16 26/8 28/15 30/9
 33/11 37/4 38/21 42/3 43/21
beg [1]  15/15
beginning [3]  14/21 23/8 25/19
begun [1]  42/4
behalf [6]  4/3 4/19 4/21 5/3 6/9 6/13
behavior [2]  19/8 41/19
behind [2]  18/20 20/22
Beijing [2]  3/2 5/4
being [5]  9/17 23/14 25/4 34/18 36/17
belabor [1]  36/19
belied [1]  18/17
believe [6]  14/4 15/2 30/22 31/15 32/15
 35/18
believes [1]  24/5
Berman [1]  1/17
BERNARD [2]  2/16 4/23
bernard.taylor [1]  2/19
best [1]  20/12
between [4]  9/6 13/14 24/13 28/5
beyond [1]  8/25
big [1]  28/6
biggest [1]  31/21
Bill [1]  21/12
binding [3]  7/7 7/10 41/6
Bird [1]  2/17
bit [1]  22/11
bizarre [1]  13/16
black [2]  5/11 18/7
blown [1]  28/13
blows [1]  20/4
BNBM [41]  6/15 14/17 15/14 15/18
 15/21 16/8 16/22 17/3 17/14 18/10 19/2
 19/14 23/22 23/24 25/10 25/18 26/2 26/6
 27/1 27/8 27/9 28/1 28/8 30/14 30/20
 31/7 34/19 36/21 36/22 37/3 37/5 38/7
 38/8 38/9 38/12 38/13 38/17 43/20 43/21
 43/23 44/2
BNBM's [1]  27/2
board [1]  36/6
Boca [1]  2/13
bodily [6]  12/21 13/8 13/10 42/15 42/18
 42/22
book [1]  22/20
both [6]  6/13 16/8 30/2 30/6 34/18 42/7
bottom [1]  39/20
bottom-line [1]  39/20
Boulevard [1]  2/21
bound [1]  6/25
brief [3]  6/15 9/13 43/15
briefing [3]  16/14 18/22 40/22
briefly [1]  22/10
briefs [1]  6/12
Bristol [2]  17/21 39/19
Bristol-Myers [2]  17/21 39/19
broadly [1]  44/16
broken [1]  9/24
brought [2]  35/6 41/17
Bryson [1]  2/9
buck [1]  32/18
Budd [1]  4/19
Building [2]  3/2 5/4
bulk [1]  20/20

**C**

calculated [1]  27/3
California [1]  3/9
call [1]  39/3
called [1]  4/1
came [3]  41/9 41/9 41/13
can [11]  7/1 7/5 7/17 12/25 13/19 15/25
 21/10 24/20 27/12 27/16 31/22
can't [2]  18/14 32/12
cannot [2]  10/18 11/7 24/16
captioned [2]  5/21 15/20
captions [1]  16/6
careful [1]  9/8
carefully [1]  39/8
Carolina [1]  2/10
case [71]
cases [27]  8/17 12/3 14/23 15/12 15/16
 16/1 16/7 16/8 16/13 16/24 17/6 17/8
 17/11 17/12 17/13 17/17 17/19 17/24
 18/3 18/25 32/19 34/9 35/3 39/22 42/2
 42/3 44/22
casualty [1]  9/7
categories [3]  12/13 42/24 43/1
category [2]  31/21 42/19
Certain [1]  20/21
Certainly [1]  33/23
certification [7]  16/18 31/6 38/20 39/2
 39/4
certified [3]  30/8 30/12 31/2
certify [1]  45/8
certifying [1]  39/8
cetera [2]  35/22 37/23
challenge [2]  31/5 31/12
challenges [1]  31/11
characteristic [1]  44/21
chart [2]  9/12 16/16
cheat [1]  33/20
checklist [1]  31/8
China [2]  24/13 24/17
Chinese [3]  22/5 26/21 32/8
choose [1]  27/12
chooses [1]  26/20
choosing [1]  19/17
chose [4]  27/6 27/25 30/1 39/14
CHRISTY [2]  2/16 5/2
christy.eikhoff [1]  2/19
Circle [1]  1/14
circuit [19]  7/2 7/19 7/21 8/4 8/6 8/11
 8/17 8/22 8/24 9/15 10/9 11/9 11/22
 14/2 14/3 36/18 37/14 41/7 41/11
circumstances [3]  10/1 13/1 34/5
cited [2]  35/3 39/22
civil [2]  30/2 38/23
civilly [2]  30/6 34/18
ckalil [1]  3/5
claim [3]  14/7 15/8 18/16
claimant [2]  12/11 12/12
claimants [6]  6/22 11/25 12/1 13/6 13/7
 13/13
claimed [1]  29/1
claims [24]  9/19 9/21 10/11 11/3 11/19

bullet [1]  7/18
burden [1]  8/14
Bush [3]  19/4 19/4 19/18
busy [1]  37/13

class [17]  9/17 10/15 16/1 16/17 23/7
 30/8 30/11 31/2 31/3 31/5 31/7 32/6
 38/20 39/2 39/3 39/3 39/8
classwide [1]  31/22
clean [3]  22/15 30/5 32/18
clear [6]  7/8 8/1 9/4 17/23 29/4 43/25
clearly [5]  7/16 8/8 8/9 31/15 33/8
clerk [1]  21/7
client [2]  19/23 28/2
clients [3]  22/4 25/5 26/12
cloak [2]  21/25 35/1
closest [1]  21/9
co [4]  1/6 1/6 20/22 36/23
co-counsel [2]  20/22 36/23
collapsing [1]  15/23
collateral [1]  17/2
colleague [1]  6/3
collectible [1]  24/21
Colson [1]  1/13
colson.com [1]  1/15
come [12]  6/10 21/10 22/15 24/23 28/12
 30/4 30/17 32/17 39/14 39/16 41/2 42/20
comes [5]  5/12 28/8 28/10 30/20 34/20
coming [1]  25/7
committed [1]  20/2
committee [1]  16/12
common [1]  36/1
Company [1]  24/5
complaint [6]  24/3 30/19 37/19 37/20
 37/22 38/14
complaints [5]  37/7 37/17 37/18 37/21
 38/1
complete [2]  12/4 18/14
completely [1]  33/4
complex [1]  15/16
complicated [3]  13/25 14/7 24/6
comport [2]  8/5 13/18
comports [1]  12/8
computer [1]  20/25
concede [1]  34/4
concern [2]  14/20 34/2
concerns [2]  17/19 17/20
conclusions [2]  16/17 17/7
conclusively [1]  39/11
conduct [2]  11/5 22/13
conflate [1]  43/23
confusing [1]  12/10
conscious [3]  24/21 25/12 26/15
consequences [2]  27/13 27/14
consider [1]  8/25
consideration [1]  35/7
considering [1]  11/10
consistent [1]  15/4
consolidate [1]  16/8
consolidated [1]  16/5
consolidation [1]  17/10
constitute [1]  18/12
Constitution [2]  11/22 24/19
consult [1]  25/22
consultation [1]  25/19
consulting [2]  27/23 27/24
CONT'D [2]  2/1 3/1
contacts [1]  37/11

## C

**contaminant** [1] 35/24
**contempt** [7] 23/18 25/18 30/3 30/3 30/6 34/18 38/23
**contest** [7] 9/19 10/11 28/10 28/12 29/6 30/22 31/23
**contesting** [2] 31/10 38/5
**continental** [1] 24/15
**continuance** [3] 30/20 30/22 30/23
**continue** [3] 10/4 27/10 42/5
**continuing** [1] 12/6
**contrary** [1] 19/3
**convoluted** [1] 12/11
**COOKE** [1] 1/10
**copper** [1] 36/4
**Coral** [1] 1/14
**core** [1] 36/1
**correct** [5] 21/24 21/25 29/23 34/2 35/17
**corrected** [1] 16/19
**Cotromano** [2] 10/13 35/18
**could** [7] 7/9 20/24 20/24 21/5 25/24 30/22 33/22
**counsel** [23] 4/8 5/8 7/11 10/2 20/22 20/25 25/19 25/22 27/5 27/5 27/6 27/11 29/20 30/15 36/23 36/25 40/3 40/10 40/18 43/10 43/11 44/18 44/25
**couple** [1] 40/24
**court** [62]
**court's** [6] 6/2 12/8 13/10 13/12 14/5 25/23 27/4 31/6
**courtroom** [3] 17/17 17/25 25/22
**courts** [3] 7/10 9/7 38/3
**CRAIG** [2] 3/2 5/4
**criminal** [2] 30/3 38/23
**criminally** [2] 30/7 34/18
**critical** [1] 41/14
**critically** [2] 16/5 41/18
**cross** [2] 31/11 34/21
**cross-examine** [1] 34/21
**cross-examined** [1] 31/11
**CRR** [2] 3/13 45/12
**CSR** [2] 3/13 45/12
**currently** [1] 42/13
**CV** [1] 1/2

## D

**damage** [1] 26/21
**damaged** [1] 9/6
**damages** [86]
**Daubert** [2] 31/10 36/16
**DAVIDSON** [2] 3/7 5/6
**day** [4] 5/23 21/12 21/12 24/1
**de** [2] 23/17 23/19
**de-privilege** [1] 23/19
**de-privileged** [1] 23/17
**deal** [2] 14/18 35/25
**dealing** [1] 10/8
**deals** [1] 19/5
**debtor** [2] 30/1 38/22
**decertify** [2] 23/6 32/6
**decide** [6] 16/11 30/17 31/9 40/8 40/8 40/21
**decided** [2] 27/16 31/3
**decision** [2] 14/5 40/21
**default** [30] 8/16 11/5 15/21 16/15

18/22 17/21 17/13 17/15 18/11 18/22 18/25 19/1 25/16 26/9 26/24 29/24 36/2 36/21 36/22 37/5 38/9 38/11 38/13 38/18 38/19 39/11 39/17 44/2 44/4 44/9
**defaulted** [3] 26/16 27/15 42/11
**defaults** [13] 14/19 15/14 15/17 16/13 18/4 18/11 26/13 26/14 37/3 38/7 38/16 39/9 44/14
**defective** [1] 32/8
**defend** [3] 10/25 39/14 42/12
**defendant** [14] 1/8 2/16 3/2 3/7 9/18 10/11 10/24 11/4 16/15 19/8 19/10 23/22 25/11 29/20
**defendant's** [1] 11/4
**defendants** [34] 4/21 5/13 6/11 6/13 8/15 9/10 11/19 13/15 16/9 20/11 20/16 21/10 21/20 22/3 22/15 22/25 23/9 23/12 23/18 23/25 29/1 30/4 30/9 31/23 32/5 34/4 35/3 35/16 38/17 39/10 39/13 40/2 41/22 42/10
**defendants'** [10] 5/9 5/15 5/16 5/18 11/20 11/24 12/7 23/1 33/13 43/7
**defense** [3] 8/16 15/2 28/3
**degree** [1] 10/15
**delay** [4] 22/19 22/25 32/13 42/6
**delaying** [1] 22/17
**delays** [1] 32/11
**deliberate** [3] 22/18 22/18 24/7
**demonstrated** [1] 9/10
**denial** [1] 34/8
**Department** [1] 29/15
**depending** [1] 13/1
**depends** [1] 22/13
**deposition** [1] 29/21
**depositions** [7] 28/14 28/16 28/18 28/20 29/7 29/11 29/20
**deprived** [1] 10/24
**deserve** [2] 25/1 35/7
**desk** [1] 20/25
**destroying** [2] 25/8 25/9
**destroys** [1] 36/3
**determine** [1] 8/9
**determined** [1] 11/16
**determining** [1] 11/14
**devoid** [1] 13/2
**did** [21] 5/14 5/23 7/6 16/13 16/14 16/22 19/14 21/23 22/8 25/22 26/8 29/3 30/11 31/24 37/9 37/14 39/1 41/6 41/22 41/22 43/21
**didn't** [14] 18/25 25/20 26/14 27/19 27/21 27/21 29/2 38/3 38/6 38/7 38/25 39/13 40/19 44/3
**difference** [1] 9/6
**different** [12] 7/13 11/16 12/12 12/12 12/13 18/3 19/9 19/15 22/12 34/11 35/16 38/2
**difficult** [1] 11/13
**diplomatic** [1] 32/21
**directly** [1] 33/22
**directs** [1] 9/7
**disappear** [1] 43/22
**discharge** [1] 19/5
**discovery** [7] 5/19 11/25 13/6 13/13 19/12 28/13 29/6
**discretion** [7] 8/1 33/6 33/7 33/14 33/14 34/5 35/1

**discussed** [2] 34/9 35/13
**discussing** [2] 31/1 41/19
**discussions** [2] 12/6 43/24
**disposition** [1] 18/14
**dispositive** [1] 18/23
**dispute** [5] 9/12 35/4 37/11 43/19 43/20
**disputes** [1] 18/5
**disservice** [1] 11/6
**distinct** [3] 6/12 18/3 40/17
**distinguishable** [1] 19/5
**district** [15] 1/1 1/1 1/11 8/17 8/22 9/15 10/9 10/13 13/24 14/4 18/18 22/1 30/5 33/1 35/2
**do** [39] 5/15 7/15 7/17 7/17 7/19 9/12 11/6 11/14 11/25 14/1 14/13 14/22 15/7 15/15 16/11 17/11 20/11 20/15 21/14 22/15 23/7 27/18 28/13 29/14 29/14 30/11 32/17 33/3 34/25 35/1 35/7 38/4 40/6 40/15 40/19 41/7 42/23 43/19 44/11
**do-over** [3] 14/22 19/23 29/14
**docket** [2] 5/18 5/19 17/8 40/6
**Docs** [4] 38/10 38/12 38/15 38/18
**doctrine** [1] 33/18
**doctrines** [1] 16/4
**document** [5] 23/16 23/16 23/23 24/4 26/2
**documents** [7] 22/24 23/15 23/17 24/9 25/21 27/22 30/15
**does** [22] 7/8 8/5 8/10 8/12 9/3 12/14 13/6 13/18 17/11 18/10 22/8 22/11 24/14 27/13 28/11 31/18 36/3 36/15 36/17 40/10 43/8 44/17
**doesn't** [4] 15/8 32/1 40/16 41/11
**doing** [3] 13/5 21/18 21/21
**don't** [10] 5/24 15/10 21/11 22/17 24/20 30/4 34/22 36/19 39/16 43/18
**done** [5] 6/19 15/4 15/5 29/18 31/17
**DONGXIN** [1] 1/6
**down** [4] 21/22 34/12 41/9 44/22
**drawn** [1] 16/16
**Drive** [1] 2/3
**drywall** [5] 22/5 23/10 26/21 36/3 36/8
**drywalls** [1] 32/8
**due** [24] 8/13 10/24 11/4 11/20 13/13 22/2 22/11 22/12 24/25 25/1 25/23 27/14 28/11 28/21 31/9 31/25 32/1 32/2 33/1 33/5 33/20 34/14 42/9 42/12
**DUGGAN** [5] 1/16 4/9 30/26 36/24 37/2
**dumped** [1] 32/19
**during** [3] 29/19 29/21 29/21
**duty** [1] 8/7

## E

**each** [7] 12/11 12/12 16/15 20/19 22/12 37/3 37/18
**earlier** [1] 35/19
**early** [1] 27/3
**East** [1] 2/21
**Eastern** [1] 18/18
**easy** [2] 11/15 11/18
**EDUARDO** [2] 1/3 4/2
**effect** [6] 6/24 15/13 17/11 18/8 19/1 19/19
**effective** [1] 14/19
**efficient** [4] 11/23 13/5 13/14 14/23
**efficiently** [2] 12/25 28/21

**E**

**Eidson** [1] 1/13
**eight** [1] 27/6
**EIKHOFF** [2] 2/16 5/2
**either** [2] 22/23 40/10
**electrical** [1] 36/9
**electronic** [1] 36/5
**electronics** [1] 36/5
**elevator** [1] 9/23
**Eleventh** [16] 7/2 7/19 7/21 8/4 8/6 8/11 8/17 8/24 9/14 10/9 11/9 11/22 14/2 14/3 36/18 41/7
**ELMO** [2] 21/2 33/22
**else** [2] 20/16 41/16
**Emmanuel** [1] 11/1
**employ** [1] 7/9
**employees** [1] 29/8
**employing** [2] 7/3 8/6
**encompasses** [1] 36/13
**encouraged** [1] 7/13
**encouraging** [1] 7/15
**end** [3] 18/12 20/12 23/24
**ended** [1] 15/25
**enforce** [3] 5/17 5/19 24/16
**enforcement** [1] 24/14
**engaged** [1] 20/6
**ENJOLIQUE** [4] 2/20 5/1 6/4 6/9
**enjoliuqe.aytch** [1] 2/23
**enlightening** [1] 41/4
**enough** [1] 37/11
**enriched** [1] 9/9
**ensure** [1] 9/9
**enter** [5] 9/16 10/10 14/5 26/9 45/1
**entered** [14] 12/8 16/15 16/17 17/13 17/15 25/16 26/5 26/13 26/14 29/25 30/2 39/4 42/1 44/14
**enters** [1] 29/5
**entirety** [2] 15/8 23/21
**entitled** [3] 9/19 10/11 45/9
**entity** [1] 43/20
**entries** [1] 18/12
**entry** [4] 5/18 5/19 16/22 40/6
**environmental** [1] 35/19
**equitable** [1] 16/3
**equitably** [1] 35/13
**equities** [2] 24/24 34/16
**erroneous** [5] 7/16 8/8 8/9 31/15 33/8
**error** [5] 15/11 33/15 33/17 34/8 44/23
**especially** [2] 11/10 33/5
**ESQ** [16] 1/13 1/16 1/17 1/21 2/2 2/5 2/9 2/12 2/16 2/16 2/20 3/2 3/2 3/7 3/7 3/8
**essentially** [3] 16/4 16/21 18/23
**establish** [1] 8/18
**established** [1] 39/11
**estoppel** [1] 17/2
**et** [4] 1/3 1/7 35/22 37/23
**even** [7] 5/20 8/7 11/4 11/12 24/15 41/16 43/2
**every** [11] 16/15 21/12 22/1 23/1 25/1 27/14 33/2 37/4 37/20 37/21 42/10
**Everybody** [1] 28/1
**Everybody's** [1] 36/8
**everything** [3] 5/14 6/19 22/22
**evidence** [2] 31/5 44/3
**ex** [1] 16/21

**exact** [2] 40/1 40/2
**exactly** [5] 21/9 21/19 23/20 27/24 28/4
**exam** [2] 30/1 38/22
**examine** [1] 34/21
**examined** [1] 31/11
**example** [1] 39/18
**exchange** [1] 20/4
**excuse** [2] 9/22 19/10
**exercising** [2] 33/14 34/5
**expect** [1] 14/25
**expedite** [1] 31/18
**expedited** [1] 14/6
**expended** [1] 32/9
**expenses** [1] 12/19
**expert** [1] 31/11
**explain** [3] 7/4 15/25 37/6
**explanation** [1] 17/18
**explicit** [1] 7/7
**explicitly** [1] 11/2
**extensive** [1] 44/18
**extrapolated** [1] 9/17
**extremely** [1] 15/16
**Exxon** [1] 9/14
**eye** [1] 27/10

**F**

**f/k/a** [1] 1/6
**face** [2] 11/13 19/6
**faced** [2] 21/16 32/25
**fact** [8] 7/1 12/4 16/9 17/24 18/17 38/8 41/13 42/10
**factors** [2] 10/19 10/20
**facts** [1] 36/1
**factual** [2] 35/16 43/19
**factually** [1] 42/7
**failure** [1] 23/2
**FAIRCLOTH** [3] 2/5 2/6 4/16
**fairclothlaw.com** [1] 2/8
**Fallon** [40] 5/14 5/22 7/6 15/24 16/17 17/7 21/23 22/18 22/25 23/18 26/7 26/19 27/2 27/20 28/11 28/17 28/23 29/5 29/19 29/25 30/2 30/12 30/21 30/21 30/24 31/14 31/24 32/4 32/6 34/6 34/7 34/20 36/6 38/22 38/24 39/8 41/9 41/12 42/1 43/21
**Fallon's** [9] 6/25 7/12 7/14 16/20 22/23 30/2 31/17 33/8 35/13
**familiar** [1] 21/11
**far** [1] 38/7
**fashion** [1] 43/6
**fault** [2] 20/5 31/20
**February** [3] 30/12 38/9 38/11
**February 24** [1] 38/11
**feel** [1] 32/16
**fees** [2] 24/10 24/11
**feet** [1] 23/10
**felicetti** [5] 3/13 3/15 45/12 45/12 45/14
**few** [2] 26/20 32/3
**Fifth** [1] 37/14
**fighting** [1] 29/12 32/6
**figure** [1] 21/21
**figures** [1] 21/18
**filed** [16] 6/11 6/13 6/15 16/1 23/17 31/4 37/7 37/8 37/8 37/10 37/17 37/21 38/1 38/2 38/16 39/1
**filing** [1] 30/18

**final** [5] 15/20 18/6 18/9 18/12 18/17
**finality** [1] 18/14
**finally** [1] 37/14
**find** [1] 23/19
**finding** [6] 9/12 22/23 25/5 27/19 30/6 30/24
**findings** [6] 16/16 17/7 22/1 27/2 33/1 35/2
**fines** [1] 42/1
**Finishing** [1] 10/7
**firm** [4] 26/3 26/3 26/4 27/17
**first** [12] 7/5 7/18 12/15 14/24 17/5 22/20 24/2 28/15 28/16 30/18 37/21 44/20
**FLORIDA** [32] 1/1 1/3 1/14 2/4 2/13 2/22 3/4 3/14 6/22 8/6 8/6 8/11 9/4 9/15 9/20 10/9 10/13 12/6 13/19 17/25 23/11 24/2 26/17 34/9 36/15 37/4 37/8 39/17 41/8 41/12 44/4 45/14
**Florida's** [1] 9/3
**flsd.uscourts.gov** [2] 3/15 45/14
**flying** [2] 28/17 29/15
**Focusing** [1] 8/22
**follow** [5] 6/25 8/10 21/23 33/18 41/5
**following** [3] 6/16 7/5 34/9
**follows** [2] 11/21 11/22
**foreclosure** [1] 12/19
**foregoing** [1] 45/8
**foremost** [1] 44/20
**form** [1] 43/6
**formed** [1] 25/14
**formula** [34] 6/14 6/25 7/2 7/3 7/4 7/7 7/9 8/25 9/11 10/14 10/22 11/3 11/6 11/10 11/17 12/16 13/17 14/24 15/7 31/13 31/13 31/23 33/21 34/3 34/6 34/24 35/8 35/13 35/15 36/13 41/10 41/13 42/21 43/3
**formulaic** [4] 8/19 8/20 10/19 44/23
**Fort** [2] 2/4 2/22
**forth** [3] 9/13 39/12 41/5
**Fortunately** [1] 6/3
**forward** [1] 16/11
**found** [13] 11/3 22/18 23/18 23/19 25/17 25/17 27/2 27/20 31/24 31/24 32/7 33/8 36/6
**fours** [2] 11/1 42/8
**fourth** [2] 7/18 7/24
**framework** [1] 12/5
**Francisco** [1] 3/9
**frankly** [6] 18/19 19/19 20/9 25/4 36/15 44/7
**free** [1] 44/9
**full** [10] 19/2 19/24 19/25 23/13 25/23 25/24 28/13 34/21 36/7 36/8
**full-blown** [1] 28/13
**fully** [1] 31/14
**fundamentally** [1] 17/5
**further** [8] 14/8 14/12 19/8 32/10 33/6 33/20 36/19 44/5

**G**

**Gables** [1] 1/14
**gain** [1] 15/10
**gap** [1] 28/6
**gases** [1] 36/3
**gasses** [1] 25/7

**G**

Gates [1]  26/4
gave [1]  24/8
genesis [1]  15/18
geography [1]  36/14
Georgia [1]  2/18
Germano [8]  15/20 18/9 25/15 26/17 26/19 26/24 39/5 41/25
get [16]  6/21 11/19 12/1 12/18 13/17 13/23 14/1 18/14 19/25 20/12 24/20 26/13 29/15 29/17 37/14 42/3
gets [6]  21/3 30/11 36/9 36/10 36/10 43/7
give [3]  6/24 19/1 33/22
given [7]  22/2 25/1 27/14 32/1 33/5 42/2 42/9
gives [1]  28/11
giving [2]  26/12 34/21
go [16]  8/20 13/25 21/22 23/19 24/12 26/23 31/8 32/16 33/21 34/13 39/17 39/21 41/4 44/6 44/12 44/22
goes [7]  5/10 25/10 25/11 25/11 37/24 38/7 39/8
going [25]  5/9 9/22 13/4 14/18 16/11 21/22 21/23 23/13 25/4 25/10 25/13 27/10 27/25 28/4 29/14 29/15 29/16 29/17 34/12 38/3 40/9 40/19 41/2 41/4 42/6
good [6]  4/25 5/3 6/8 14/16 26/12 37/1
Gordon [1]  34/10
got [4]  35/24 35/24 36/2 36/2
gotten [1]  15/3
GRANT [2]  2/12 4/18
grants [1]  30/21
Gross [5]  37/20 37/20 38/10 38/14 39/5
Groundhog [1]  21/11
Guess [1]  28/11
GYPSUM [12]  1/6 2/16 4/2 23/25 24/3 24/4 24/14 25/3 26/7 26/10 27/9 27/20

**H**

had [16]  16/25 17/1 17/2 17/8 18/5 23/13 27/5 27/5 27/6 29/20 30/9 30/15 31/23 32/2 38/4
half [1]  28/14
hand [3]  12/10 20/21 21/7
handed [1]  33/25
handle [1]  20/20
hands [3]  22/15 30/5 32/18
happen [1]  44/5
happened [2]  22/8 27/1
happening [4]  21/13 21/15 21/18 24/1
happens [1]  28/5
happy [1]  43/18
harming [1]  25/7
has [32]  6/20 14/3 15/4 15/5 15/16 16/19 17/13 18/8 18/18 18/20 19/2 22/2 26/25 27/1 31/13 31/17 32/14 32/15 33/6 34/23 36/6 36/6 36/8 36/20 36/21 37/5 41/19 42/2 42/4 42/9 42/11 42/25
hasn't [1]  28/8
have [92]
haven't [1]  36/20
having [2]  18/13 33/4
Hawkins [1]  1/21
Haya [2]  37/22 39/7

**I**

he [21]  7/9 10/18 11/3 11/5 11/10 11/13 17/7 19/11 19/11 19/12 19/12 21/12 21/14 21/18 28/11 28/12 30/25 31/1 31/24 39/10 41/12
he's [1]  21/18
hear [6]  7/21 19/9 19/15 20/16 35/12 44/3
heard [6]  28/8 34/21 40/5 43/17 43/25 44/18
hearing [12]  1/10 14/21 30/12 30/21 31/1 31/2 31/7 34/15 34/20 40/23 42/23 45/2
heightened [1]  17/21
heinous [1]  11/5
held [9]  9/3 11/5 14/3 26/19 31/7 34/18 38/13 38/17 38/22
help [1]  33/12
here [31]  5/5 8/24 9/10 9/17 10/16 11/10 11/18 15/17 16/10 16/16 18/6 18/13 19/21 21/16 22/15 23/22 24/21 25/5 25/23 26/11 26/22 26/23 31/20 32/7 32/12 32/17 32/18 36/1 40/1 42/2 43/5
hereby [1]  45/8
herring [1]  41/20
Herrington [1]  3/8
Hicks [1]  1/13
himself [1]  7/6
his [5]  7/7 10/24 11/8 14/14 38/24
history [3]  15/15 22/11 23/9 26/23 43/18
hit [1]  41/18
Hogan [3]  26/3 27/17 29/8
hold [2]  37/12 38/3
hole [1]  5/11
home [5]  25/6 25/9 36/4 36/8 39/1
homes [4]  10/17 22/5 35/25 41/14
Hong [4]  28/14 28/18 28/24 29/8
honor [66]
Honor's [3]  20/3 34/1 41/3
HONORABLE [1]  1/10
honors [1]  19/25
host [1]  4/4
how [14]  5/10 5/24 5/24 8/9 9/10 11/9 13/2 21/9 34/11 35/24 41/7 41/21 42/18 43/1
Howard [1]  3/9
however [3]  11/18 41/21 42/8
HULL [2]  2/16 5/2
hundreds [1]  12/5
hysteria [1]  25/4

**I**

I'd [3]  7/21 14/19 37/6
idea [2]  42/5 42/19
identical [1]  37/7
ignore [5]  25/12 27/7 27/12 27/25 30/1
ignored [1]  24/3
ignoring [1]  27/12
immediate [1]  9/13
important [2]  23/11 37/17
importantly [1]  17/9
inappropriate [1]  43/23
incident [1]  27/11
included [4]  37/18 37/23 38/1 44/22
includes [1]  13/17 39/5
including [1]  28/14

**I** (continued)

incur [1]  24/10
Indeed [1]  14/7
individual [10]  4/5 8/15 9/1 9/19 9/20 10/11 16/6 32/6 40/14 44/21
individualized [10]  8/12 10/19 10/20 10/23 10/24 14/4 23/6 35/7 35/23 42/17
indulgence [1]  15/15
infect [1]  15/10
information [1]  40/23
initial [1]  23/2
injuries [1]  35/12
injury [11]  12/21 13/9 13/11 25/8 35/5 35/6 35/11 35/14 42/15 42/18 42/22
insightful [1]  41/3
insofar [1]  40/12
installing [1]  32/8
instance [1]  42/9
Instead [1]  41/8
insulate [1]  44/17
intellectually [1]  21/24
internal [6]  22/23 23/23 24/4 24/8 25/21 26/2
interpreter [2]  29/16 29/16
interpreters [1]  29/11
interrupt [1]  40/19
interrupted [1]  9/23
interruption [1]  10/5
interventions [1]  38/14
interviewed [1]  26/2
invented [1]  13/25
involve [1]  18/10
involved [1]  10/17
involves [1]  18/10
Ironically [1]  18/16
Irpino [1]  1/21
irrelevant [1]  41/20
is [167]
isn't [3]  8/19 21/17 31/25
issue [9]  9/1 14/18 15/13 26/9 36/21 36/22 42/18 44/7 44/7
issued [1]  26/7
issues [9]  6/12 14/4 16/10 20/21 26/22 33/21 35/14 44/21 45/1
it [98]
it's [21]  5/10 5/21 7/23 8/8 19/6 20/4 25/12 29/14 30/5 30/5 30/14 33/7 33/16 35/20 36/15 36/16 36/16 37/17 40/2 42/6 43/18
its [5]  6/23 15/8 19/6 25/10 34/19

**J**

JAMES [2]  3/7 5/6
January [4]  23/4 28/6 30/24 32/4
January 2 [1]  23/4
jfaircloth [1]  2/8
jill [5]  3/13 3/15 45/12 45/12 45/14
Jim [2]  14/16 43/14
JIMMY [2]  2/5 4/16
join [1]  15/6
joint [1]  28/3
Jordan [2]  11/2 11/12
JOSHUA [2]  3/2 5/4
jpoyer [1]  3/5
jstengel [1]  3/10
judge [64]
judge's [2]  22/1 35/2

**J**

**judgment [13]**  14/5 14/6 15/20 18/8 18/9 18/17 25/16 26/10 26/24 29/24 30/1 37/5 38/22

**judgments [5]**  18/12 24/14 26/5 39/11 41/25

**judicata [1]**  17/2

**judicial [4]**  24/12 27/2 36/16 43/16

**July [2]**  28/22 38/17

**July 1 [1]**  38/17

**jump [1]**  30/17

**June [2]**  25/14 27/17

**jurisdiction [9]**  6/20 17/20 19/13 28/11 28/12 29/6 31/6 37/10 38/5

**jurisdictional [2]**  28/13 29/6

**jurisdictions [2]**  16/4 38/2

**jurisprudence [1]**  8/21

**jury [1]**  13/1

**just [16]**  5/23 8/8 10/16 10/17 15/14 18/20 25/5 26/20 26/22 34/16 34/22 35/10 38/8 40/5 41/20 42/6

**justice [2]**  11/6 24/19

**K**

**KALIL [4]**  3/2 3/3 5/4 5/5

**keep [2]**  27/10 32/5

**keeps [3]**  21/13 21/14 21/17

**kind [1]**  16/25

**knew [5]**  24/1 26/5 26/8 27/24 29/9

**know [16]**  5/24 6/2 15/16 16/25 21/1 21/3 21/11 25/20 26/22 27/5 27/12 27/21 27/22 33/19 36/3 38/3

**knowing [1]**  22/9

**knowledge [2]**  23/13 28/4

**Kong [4]**  28/14 28/18 28/24 29/8

**Kpadeh [5]**  11/1 35/4 42/8 42/13 42/14

**L**

**lacking [1]**  31/25

**language [1]**  7/7

**large [1]**  24/10

**largely [1]**  16/2

**Las [1]**  2/21

**last [3]**  9/13 28/6 32/3

**Lastly [1]**  42/14

**later [2]**  24/23 25/14

**Lauderdale [1]**  2/22

**law [19]**  1/23 7/15 8/6 8/6 8/6 8/11 9/3 9/4 9/20 11/22 13/19 17/9 18/7 21/7 33/18 34/9 41/8 41/12 44/16

**lawful [2]**  11/8 15/4

**lawsuit [4]**  23/12 24/6 24/10 24/16

**lawsuits [7]**  23/14 24/2 24/8 25/4 25/12 27/1 27/18

**lawyers [5]**  26/3 26/11 27/23 27/24 28/9

**lead [1]**  12/4

**leadership [1]**  25/10

**leaking [1]**  35/21

**learned [2]**  33/11 38/5

**least [2]**  4/7 6/2

**leave [1]**  44/6

**leaves [1]**  19/22

**leaving [1]**  44/11

**left [2]**  16/12 40/8

**legal [4]**  27/19 27/21 29/3 32/23

**legally [1]**  17/4 35/13 41/11 42/7

**let [4]**  7/4 21/1 27/5 33/10

**let's [5]**  5/23 8/23 35/10 41/16 41/21

**letter [1]**  18/7

**letting [1]**  6/1

**LEVIN [3]**  1/17 1/17 4/11

**lexicon [1]**  32/23

**lfsblaw.com [2]**  1/19 1/20

**liability [1]**  36/2 39/11

**Liberian [1]**  35/4

**light [1]**  14/3

**like [12]**  4/5 7/21 9/2 10/16 10/17 11/15 13/24 14/19 31/25 34/22 37/6 38/25

**likewise [2]**  10/14 14/2

**limited [2]**  19/6 35/6

**line [1]**  39/20

**listed [1]**  17/7 23/25

**listened [1]**  21/10

**litigants [1]**  39/5

**litigate [4]**  5/23 18/2 19/2 44/9

**litigated [1]**  17/6

**litigating [4]**  17/25 32/2 37/13 42/2

**litigation [26]**  17/17 18/12 19/12 19/20 20/6 22/9 22/10 22/19 23/2 23/20 23/21 24/22 26/15 27/3 27/12 27/13 29/5 30/11 32/10 35/7 38/6 39/13 39/15 41/24 43/18 44/12

**little [1]**  22/11

**living [1]**  12/19

**LLP [3]**  2/9 2/21 3/8

**long [1]**  43/17

**look [6]**  8/23 17/7 17/22 22/21 31/16 41/16

**looking [4]**  7/14 9/2 14/22 14/22

**loose [1]**  18/6

**loss [1]**  9/5

**lost [2]**  24/16 38/25

**Louisiana [7]**  1/22 2/7 16/2 18/2 18/2 23/16 37/8

**Lovells [3]**  26/3 27/17 29/8

**lower [1]**  9/7

**LTD [2]**  1/6 1/6

**M**

**made [6]**  7/10 16/7 20/11 31/10 40/13 43/18

**Magazine [1]**  1/22

**make [11]**  4/5 6/4 7/6 19/24 21/3 23/5 28/18 29/25 34/19 40/21 41/11

**makes [3]**  7/9 9/4 11/21

**making [1]**  35/8

**mandatory [1]**  34/25

**manner [2]**  15/4 33/15

**many [1]**  43/19

**MARC [2]**  3/8 5/6

**MARCIA [1]**  1/10

**Marra [1]**  10/14

**Marra's [1]**  35/19

**Mason [1]**  2/9

**master [1]**  13/1 30/14

**material [1]**  15/17

**materials [3]**  3/3 5/4 21/6

**matrix [1]**  11/7 12/17

**matter [9]**  18/23 20/3 21/14 22/8 22/11 22/18 23/8 24/25 45/9

**matters [4]**  18/3 22/14 23/3 33/7

**may [16]**  5/8 6/8 7/11 7/14 10/4 21/1

**me [15]**  5/10 5/13 7/4 7/12 7/15 9/22 19/10 20/22 21/3 21/21 21/23 23/10 33/11 33/22 34/2

**mean [4]**  18/13 29/20 32/1 40/19

**meaningful [1]**  12/3

**means [6]**  18/2 18/25 19/2 27/15 36/5 39/14

**measure [1]**  9/5

**measures [1]**  24/7

**mediation [2]**  12/1 12/2

**meld [1]**  39/24

**Melton [1]**  2/6

**members [1]**  10/15

**memorandum [2]**  5/17 5/18

**mention [1]**  41/22

**mentioned [1]**  28/15

**mercy [1]**  25/23

**mere [1]**  12/23

**merits [1]**  31/12

**method [1]**  12/22

**MGC [1]**  1/2

**Miami [7]**  1/3 3/4 3/14 3/14 5/5 45/13 45/14

**might [1]**  34/7

**million [2]**  23/10 26/24

**Milne [2]**  3/3 5/5

**mindful [1]**  14/23

**minimal [4]**  13/12 35/14 42/20 43/4

**minimum [1]**  37/11

**misconduct [1]**  19/20

**mistake [1]**  23/5

**misunderstanding [1]**  27/4

**Mitchell [1]**  26/16

**money [1]**  32/10

**monitors [1]**  6/7

**month [3]**  12/7 25/14 30/23

**months [2]**  15/1 18/20

**MONTOYA [6]**  1/13 4/4 20/18 33/10 39/12 42/9

**moral [1]**  21/17

**more [7]**  11/21 11/23 13/25 28/21 32/13 32/21 44/16

**Morgan [2]**  2/2 2/2 2/10

**most [2]**  17/5 17/9

**motion [7]**  1/10 5/9 5/15 5/17 5/18 16/7 39/1

**motions [2]**  5/21 23/3

**mount [1]**  8/15

**movants [1]**  31/3

**move [2]**  7/18 16/13

**moved [1]**  38/20

**movie [2]**  21/11 21/12

**moving [1]**  32/5

**MR [2]**  1/3 6/16

**Mr. [6]**  5/6 14/14 20/18 33/10 39/12 42/9

**Mr. James [1]**  5/6

**Mr. Montoya [4]**  20/18 33/10 39/12 42/9

**Mr. Stengel [1]**  14/14

**Ms [1]**  10/4

**May 20 [1]**  28/7

**May 2010 [1]**  26/25

**MDL [16]**  5/12 6/19 7/10 15/4 16/12 17/10 18/17 20/5 23/16 25/14 31/4 33/4 33/5 37/13 37/17 39/25

**37/1 40/24 43/12**

**M**

**Ms. [6]**  6/4 6/6 9/22 20/22 36/24 40/18
**Ms. Aytch [3]**  6/6 9/22 40/18
**Ms. Duggan [2]**  22/22 36/24
**Ms. Enjolique [1]**  6/4
mshapiro [1]  3/11
much [12]  4/20 6/5 11/21 20/14 20/15
30/10 40/3 41/17 42/19 43/11 44/25 45/3
multiple [1]  12/4
**Murray [1]**  21/12
music [1]  7/23
must [3]  7/1 9/8 9/21
muster [1]  36/16
mutual [1]  24/13
my [7]  6/16 11/15 20/21 28/6 32/23 34/5
36/23
**Myers [3]**  2/4 17/21 39/19

**N**

**Namely [1]**  8/13
narrowed [1]  17/24
narrower [2]  14/18 15/13
nature [4]  16/11 22/13 34/15 34/16
necessary [1]  10/6
need [12]  15/13 19/24 21/21 26/14
32/16 32/23 40/6 40/16 40/22 41/4 42/17
43/6
needed [2]  10/23 17/1
needs [4]  20/10 32/18 36/8 36/9
**Neither [1]**  17/4
never [2]  19/14 19/14
nevertheless [1]  42/25
new [5]  1/22 3/2 5/4 22/16 30/1
next [3]  15/22 24/4 28/18
no [21]  1/2 5/12 7/1 10/6 14/13 14/13
15/7 16/7 17/9 17/14 18/24 19/1 21/14
23/5 24/12 35/4 40/11 42/11 42/25 43/10
43/18
**Nobody [1]**  35/8
none [2]  18/11 39/22
**North [1]**  2/10
nose [1]  24/18
not [94]
**Notably [1]**  41/6
note [2]  6/10 42/14
noted [2]  11/12 17/5
nothing [1]  19/14
notice [1]  34/14
notion [1]  11/2
notions [1]  43/19
notwithstanding [1]  8/16
**November [4]**  1/4 26/17 28/6 45/12
**November 2010 [1]**  28/6
now [26]  5/8 5/25 11/10 15/13 16/10
17/5 18/5 19/3 22/7 23/3 23/15 24/23
25/23 27/22 30/16 30/18 31/8 31/9 32/19
32/25 34/22 36/23 38/7 39/3 39/16 42/2
nowhere [2]  39/20 44/6
number [4]  14/1 20/6 33/17 33/18
numbers [1]  17/8

**O**

objected [1]  29/21
objections [1]  29/17
obligations [1]  19/6
observation [1]  6/2

obtain [1]  38/7
obtained [5]  38/9 38/11 38/16 38/19
39/9
obviously [3]  17/20 22/21 33/11
occasions [1]  23/8
occurred [1]  32/16
off [2]  30/17 36/3
offering [1]  11/19
**Official [2]**  3/13 45/13
okay [2]  8/4 21/23
**Olas [1]**  2/21
omni [2]  37/19 37/22
omnis [1]  39/6
once [3]  5/20 23/18 40/8
one [34]  5/12 5/23 6/13 9/18 9/19 9/19
10/11 10/12 10/18 11/5 12/14 16/10
16/25 17/3 17/13 18/5 18/13 24/1 25/24
27/13 28/4 29/12 29/16 33/17 34/10
34/10 36/1 37/4 37/7 37/7 37/8 37/21
43/18 43/25
only [15]  10/23 12/15 12/24 13/8 13/9
13/11 18/9 18/10 19/3 31/1 33/13 36/20
38/4 40/12 42/15
operate [1]  15/3
operative [1]  36/1
opportunity [4]  30/10 31/23 34/14
34/21
order [15]  4/1 6/23 7/16 12/9 13/10
13/13 26/9 27/4 29/17 30/2 30/3 30/3
37/16 39/4 45/1
ordered [1]  29/25
orders [2]  8/8 33/8
**Orleans [1]**  1/22 30/1
**Orrick [3]**  3/8 26/3 28/1
orrick.com [3]  3/10 3/11 3/11
other [15]  6/15 12/10 12/18 12/20 12/24
13/4 15/10 23/11 23/11 24/18 34/5 39/6
39/23 42/23 44/22
others [2]  4/5 17/4
our [9]  6/3 9/23 22/4 24/18 24/19 24/19
25/5 31/18 32/14
out [11]  17/21 21/18 21/21 23/12 23/19
23/20 25/5 25/7 25/17 28/18 29/15
outset [1]  6/10
outside [2]  19/18 22/8
outstanding [1]  42/23
over [18]  5/14 5/22 6/18 14/22 19/23
20/21 21/1 21/13 21/13 21/13 21/15
21/15 21/15 23/10 29/14 29/14 31/6
37/10
overbroad [1]  34/3
overlapped [1]  16/2
own [5]  16/14 22/23 23/22 24/8 24/9

**P**

**P.A [1]**  3/3
package [1]  32/15
packet [1]  33/24
pages [2]  1/8 9/13
paid [2]  41/24 42/1
**Palm [1]**  35/21
parcel [1]  40/13
part [3]  15/19 40/13 45/2
parte [1]  16/21
participate [3]  26/20 29/2 38/6
participated [2]  19/11 19/14

participating [1]  31/8
particular [1]  9/11
particularly [2]  6/19 17/14
parties [2]  12/9 22/14
parties' [1]  20/9
party [2]  15/18 19/16
passed [2]  36/16 36/16
past [2]  22/17 41/23
pat [1]  2/11
path [4]  13/14 21/22 34/12 44/23
patrick [6]  1/13 1/15 2/9 4/4 4/17 30/5
pay [3]  24/7 26/14 26/14
**Peachtree [1]**  2/17
**PEARL [2]**  1/21 4/13
peculiarly [1]  15/24
pejorative [1]  5/11
pending [1]  43/5
**Pennsylvania [1]**  1/18
per [1]  10/22
permeated [1]  23/1
permit [2]  8/12 9/3
perpetual [1]  23/3
personal [6]  17/20 25/8 35/5 35/6 35/11
35/14
perspective [1]  44/12
pervert [1]  33/3
**Pete [1]**  4/15
**PETER [1]**  2/2
**Philadelphia [1]**  1/18
photos [1]  26/21
place [3]  14/11 18/4 44/12
plaintiff [15]  1/4 1/13 2/2 4/3 10/16
10/16 19/10 20/17 29/20 37/19 37/20
37/22 39/20 42/24 44/5
plaintiff's [2]  8/18 11/9
plaintiff-by-plaintiff [1]  10/16
plaintiffs [48]
plaintiffs' [13]  12/10 12/11 12/24 13/16
13/23 16/12 17/18 20/25 31/5 31/11
31/12 42/20 44/1
plan [21]  11/20 11/24 12/8 12/10 12/11
12/13 12/23 13/3 13/23 23/5 23/5
25/12 31/18 40/7 40/9 40/22 42/2 42/20
42/25 43/7
plans [4]  7/13 13/14 24/6 40/14
plant [1]  35/20
**PLC [21]**  14/17 15/14 15/18 15/21 16/8
16/22 17/3 17/14 18/10 19/2 19/14 23/22
23/24 26/2 26/6 27/8 43/20 43/21 43/23
44/3 44/5
please [8]  6/6 6/8 15/22 21/7 34/2 36/22
37/2 41/1
plumbing [2]  36/6 36/10
plural [1]  4/22
podium [1]  41/2
point [14]  7/24 8/2 11/15 16/21 17/16
20/13 21/1 27/16 30/3 30/11 30/14 30/17
41/15 43/25
points [3]  7/18 36/19 40/25
poor [1]  24/14
poorly [2]  28/16 29/11
position [3]  14/15 18/19 32/19
post [1]  30/18
**POYER [2]**  3/2 5/4
**Pratt [1]**  35/20
precedent [1]  7/12

## P

**preclusive [5]** 6/24 18/8 19/1 19/19 44/8
**predictor [1]** 11/8
**predilection [1]** 6/2
**prejudice [1]** 32/11
**preliminary [1]** 18/11
**present [7]** 4/8 5/24 10/20 14/14 28/23 28/25 29/3
**presentation [6]** 6/16 21/9 22/22 27/11 32/14 44/18
**presented [1]** 42/25
**presumably [1]** 17/25
**pretend [1]** 11/14
**pretrial [1]** 27/4
**pretty [2]** 26/12 41/17
**prevent [1]** 39/19
**previously [7]** 12/8 13/21 37/19 40/13 41/25 42/11 45/1
**prices [1]** 36/14
**principals [1]** 11/12
**principle [1]** 12/5
**principles [1]** 8/13
**printed [1]** 21/6
**prior [2]** 13/10 41/19
**priority [3]** 11/24 13/7 13/13
**prisoner [1]** 9/23
**privilege [1]** 23/19
**privileged [1]** 23/17
**probably [5]** 17/16 19/15 20/7 26/12 35/5
**problems [1]** 18/13
**procedural [3]** 15/15 26/22 43/19
**procedurally [1]** 21/24
**procedure [2]** 8/16 40/9
**procedures [1]** 12/13
**proceed [2]** 6/6 44/14
**proceeded [3]** 15/20 16/7 28/20
**proceeding [2]** 16/21 19/22
**proceedings [4]** 14/19 15/11 45/4 45/9
**process [31]** 8/13 10/25 11/4 11/21 13/25 14/7 14/8 15/9 17/10 19/24 22/2 22/11 22/12 24/25 25/1 25/23 27/14 28/12 28/21 31/9 31/19 31/25 32/1 32/2 33/2 33/5 33/20 34/14 42/9 42/12 44/10
**product [1]** 11/7
**productive [2]** 20/4 20/7
**products [1]** 22/6
**progress [1]** 27/10
**prong [1]** 33/19
**proof [3]** 8/12 10/23 10/24
**proper [1]** 14/5
**properties [3]** 9/1 10/17 15/19
**property [13]** 8/10 9/2 9/5 9/6 9/8 9/9 9/20 10/8 10/18 12/25 13/18 41/8 41/12
**proposal [1]** 20/10
**protect [1]** 37/16
**protection [3]** 22/1 35/1 36/17
**proved [1]** 42/17
**proven [1]** 9/1
**provides [2]** 8/11 11/20
**proving [1]** 8/14
**punt [1]** 36/23
**puppet [1]** 30/14
**purpose [1]** 33/4
**purposes [4]** 4/7 8/23 17/12 43/24

**pursuant [1]** 19/19
**pursue [1]** 39/18
**put [3]** 19/17 36/10 41/25
**puts [1]** 19/18

## Q

**question [3]** 6/11 33/10 34/1
**questioning [1]** 41/3
**questions [9]** 14/12 28/19 28/19 29/13 35/23 36/20 36/21 41/5 43/8
**quickly [1]** 20/3
**quote [2]** 22/25 32/4

## R

**raised [1]** 14/20
**raises [1]** 43/15
**Raleigh [1]** 2/10
**rather [1]** 27/4
**Raton [1]** 2/13
**read [1]** 29/13
**reading [2]** 22/22 30/25
**realize [1]** 23/23
**really [2]** 33/2 37/24
**reason [6]** 15/7 32/16 37/9 38/4 39/22 41/20
**reasoning [1]** 14/20
**reasons [4]** 7/6 14/9 15/25 24/8
**rebuttal [1]** 40/25
**Rec [4]** 38/10 38/12 38/15 38/18
**recall [1]** 42/23
**received [1]** 18/21
**recently [1]** 18/21
**Recess [1]** 10/3
**recital [1]** 43/17
**recognition [1]** 24/13
**recognize [1]** 20/9
**recognized [2]** 10/18 34/25
**record [4]** 4/3 4/7 6/7 16/11
**red [1]** 41/20
**reemphasize [1]** 32/17
**refer [1]** 19/4
**reference [2]** 11/16 17/19
**reflect [1]** 16/22
**reflection [1]** 17/23
**refused [5]** 8/25 9/16 10/10 13/24 38/21
**refute [1]** 41/6
**regard [1]** 37/3
**reiteration [1]** 44/1
**reject [10]** 5/13 5/15 6/18 7/1 7/5 7/23 7/25 8/5 8/7 14/9
**rejected [4]** 8/18 10/14 10/22 11/2
**rejecting [1]** 7/3
**rejection [1]** 6/14
**relate [1]** 13/7
**relatively [2]** 11/18 24/6
**relevant [1]** 19/21
**relitigate [4]** 23/3 23/6 23/8 25/24
**relitigating [1]** 32/5
**remain [1]** 17/12
**remand [2]** 7/8 37/5
**remanded [1]** 17/18
**remands [1]** 17/23
**remediation [20]** 5/16 6/14 12/15 12/20 13/17 14/9 30/21 31/3 31/13 31/22 33/21 34/3 34/20 34/24 36/7 36/13 41/10 41/13 42/21 43/2

**remedy [1]** 32/9
**replaced [3]** 36/9 36/10 36/10
**REPORTED [1]** 3/13
**Reporter [2]** 3/13 45/13
**reports [1]** 26/6
**represent [1]** 19/23
**representative [1]** 29/3
**represented [1]** 29/9
**representing [1]** 29/8
**request [1]** 20/3
**require [2]** 7/22 8/5
**required [6]** 6/24 7/11 7/15 7/23 7/25 10/15
**requires [4]** 7/19 13/5 18/7 34/14
**res [1]** 17/2
**reset [1]** 24/24
**resolution [10]** 12/2 12/4 13/15 13/22 15/12 19/25 22/7 42/3 43/6 43/7
**resolve [7]** 12/14 13/3 14/23 15/8 20/3 42/3 43/1
**resolved [5]** 11/20 12/25 15/1 20/10 37/14
**resounding [1]** 7/1
**respond [3]** 24/6 26/8 27/18
**responded [1]** 27/1
**responding [2]** 24/9 29/12
**responsible [1]** 37/12
**result [4]** 9/11 34/8 34/22 38/25
**results [3]** 9/18 26/21 32/1
**retain [1]** 6/20
**retains [3]** 19/24 27/17 28/1
**retrospect [1]** 20/7
**returned [1]** 41/24
**reverse [1]** 7/2
**reversed [2]** 13/18 36/17
**reversible [4]** 33/15 33/17 34/8 44/23
**review [1]** 44/17
**rewind [1]** 23/25
**right [4]** 8/15 21/19 25/3 42/12
**rights [8]** 5/17 5/19 10/25 19/2 19/17 19/24 20/1 44/14
**rip [2]** 36/7 36/8
**rip-and-tear [1]** 36/8
**risk [2]** 19/18 44/19
**ROBERTSON [2]** 1/21 4/13
**Rouge [1]** 2/7
**round [2]** 28/16 28/18
**Rountree [1]** 8/23
**RPR [2]** 3/13 45/12
**ruins [1]** 36/4
**rule [2]** 19/19 29/17
**ruled [1]** 39/10
**ruling [1]** 31/17
**rulings [2]** 33/8 34/6
**run [1]** 42/6

## S

**S.E.** [1] 2/13
**safest [1]** 20/12
**said [12]** 13/11 21/10 27/11 27/23 29/14 37/11 38/1 38/24 42/9 43/11 44/5 45/1
**sailed [1]** 34/23
**sale [1]** 12/19
**same [15]** 5/21 7/22 10/20 14/2 16/5 16/6 16/25 18/19 21/13 21/14 40/1 40/2 40/2 43/20 44/20

**S**

**sampling** [1]  11/3
**San** [1]  3/9
**sanction** [1]  19/20
**SANDRA** [3]  1/16 4/9 37/2
**sat** [2]  22/3 22/4
**satisfied** [2]  7/17 7/25
**saw** [1]  30/15
**say** [7]  7/13 16/19 24/12 27/18 35/10
39/16 43/15
**saying** [7]  5/20 11/14 26/13 35/13 42/21
42/24 44/13
**says** [6]  24/5 27/20 29/5 31/1 33/16
39/25
**schedule** [5]  14/10 15/2 20/2 20/11
44/10
**scheduled** [1]  31/2
**scheduling** [3]  12/9 13/10 13/12
**scrap** [1]  5/22
**screen** [2]  22/21 34/14
**scrutiny** [1]  10/16
**sdduggan** [1]  1/19
**SE** [1]  3/3
**seated** [1]  5/8
**second** [5]  9/14 12/18 12/24 41/15 43/4
**Sedran** [1]  1/17
**see** [2]  17/23 20/10
**seeing** [1]  5/5
**seek** [2]  16/14 18/25
**seeking** [1]  19/23
**seen** [1]  33/16
**select** [1]  11/24
**selectively** [1]  16/13
**sense** [3]  7/9 11/21 18/17
**sentence** [1]  12/23
**separate** [10]  5/21 6/11 16/7 17/6 17/8
17/12 39/24 40/1 40/16 43/21
**separately** [2]  17/8 17/18
**September** [7]  26/1 26/6 26/8 26/16
28/1 30/8 39/4
**September 2010** [1]  28/1
**September 2014** [1]  30/8
**September 26** [1]  39/4
**served** [5]  23/14 24/2 25/4 25/15 27/8
**Services** [1]  9/14
**set** [4]  9/13 14/11 39/12 41/5
**sets** [2]  26/2 30/12
**setting** [1]  12/14
**settle** [1]  12/5
**settled** [1]  23/3
**settlement** [1]  42/4
**seven** [3]  12/7 15/19 41/14
**seven-month** [1]  12/7
**several** [4]  12/5 18/20 23/12 39/6
**SHANDONG** [1]  1/6
**shape** [1]  43/6
**SHAPIRO** [2]  3/8 5/7
**sheet** [2]  7/22 33/20
**ship** [1]  34/22
**shipped** [2]  22/6 23/9
**short** [2]  12/19 23/9
**shortcut** [2]  33/2 33/6
**shortcuts** [2]  8/19 8/20
**shot** [1]  25/24
**should** [11]  6/7 11/16 14/1 14/9 14/25
17/3 36/11 39/17 39/20 41/10 44/2

**shouldn't** [1]  9/11
**show** [1]  26/20
**showed** [2]  25/21 27/23
**showing** [2]  22/22 23/15
**side** [2]  15/2 24/24
**sidelines** [5]  22/3 28/10 30/17 31/9
34/18
**sign** [1]  28/2
**signed** [1]  24/12
**significant** [3]  17/12 32/10 33/1
**silver** [2]  36/4 36/5
**similarly** [1]  10/22
**simple** [1]  11/19
**simplified** [1]  14/6
**simply** [7]  9/18 13/18 13/23 23/5 24/24
31/18 32/15
**since** [7]  17/17 18/20 23/23 23/24 24/14
25/19 38/5
**sits** [1]  11/10
**sitting** [4]  20/22 28/2 28/2 28/9
**situation** [3]  35/16 39/12 39/23
**six** [4]  30/18 30/18 30/23 31/4
**six-month** [1]  30/23
**skip** [1]  7/18
**skirt** [1]  42/6
**skirts** [1]  8/13
**slate** [1]  22/16
**slide** [2]  22/20 28/6
**slight** [1]  16/3
**slightly** [2]  9/23 19/15
**so** [52]
**Sobel** [1]  2/6
**soil** [1]  35/22
**solution** [1]  11/19
**some** [9]  10/19 16/3 18/17 21/1 21/5
29/21 35/5 42/4 43/6
**sorry** [1]  9/25 40/18
**sought** [2]  9/17 19/12
**sound** [2]  11/8 41/11
**South** [1]  36/14
**SOUTHERN** [3]  1/1 9/15 10/13
**speak** [1]  40/10
**speaking** [1]  20/18
**special** [1]  12/25
**specifically** [2]  6/21 6/23
**spend** [1]  12/23
**spot** [1]  29/17
**square** [2]  23/10 25/24
**Squibb** [1]  17/21
**standard** [2]  31/15 31/16
**standing** [1]  34/17
**standpoint** [1]  25/8
**start** [6]  5/9 5/14 5/22 6/17 21/9 22/16
**starting** [1]  38/8
**state** [2]  23/10 29/15
**stated** [1]  13/21
**states** [5]  1/1 1/11 22/6 23/11 37/12
**stating** [1]  12/24
**statute** [2]  33/4 33/4
**statutory** [1]  44/19
**stay** [1]  18/1
**stayed** [1]  23/12
**steering** [1]  16/12
**STENGEL** [6]  3/7 5/6 6/16 14/14 14/16
43/14
**step** [8]  12/3 14/20 22/1 25/1 27/14

28/1 33/2 42/10
**stigma** [1]  35/20
**still** [9]  13/5 15/8 22/7 27/1 28/8 32/7
35/10 35/11 43/5
**stood** [1]  31/9
**stop** [1]  32/18
**stops** [1]  32/20
**story** [2]  19/9 21/17
**strategy** [7]  23/2 23/20 24/22 25/13
26/15 27/3 39/15
**Street** [7]  1/18 1/22 2/6 2/10 2/13 2/17
3/9
**structure** [1]  17/22
**struggle** [1]  16/10
**struggled** [2]  15/17 21/8
**subject** [2]  35/8 35/14
**submissions** [1]  16/20
**substantial** [1]  15/23
**substantially** [1]  17/21
**substantive** [2]  17/10 17/11
**such** [2]  12/19 34/11
**suffering** [1]  32/9
**sufficiency** [1]  31/12
**suggest** [2]  17/9 33/15
**suggesting** [1]  33/3
**suggestion** [2]  7/8 42/14
**Suite** [3]  2/3 3/14 45/13
**suits** [1]  31/4
**sulfer** [1]  36/3
**sulphuric** [1]  25/6
**summer** [1]  25/15
**summons** [1]  27/9
**support** [2]  5/17 16/17
**suppose** [1]  5/11
**Supreme** [1]  17/22
**sure** [4]  7/22 19/24 21/3 28/18
**surprising** [1]  8/19
**suspicion** [1]  43/16
**sustainable** [1]  17/4
**Sutcliff** [1]  3/8
**switch** [1]  21/1
**switched** [1]  21/4
**system** [4]  24/19 24/19 27/19 27/21

**T**

**Tab** [3]  22/20 32/14 33/24
**table** [2]  28/2 28/2
**tables** [1]  26/12
**tactics** [2]  22/19 23/1
**TAIHE** [1]  1/6
**TAISHAN** [52]
**Taishan's** [2]  24/16 44/18
**take** [4]  13/12 14/20 20/19 40/19
**taken** [1]  29/22
**takes** [1]  36/13
**talk** [4]  22/17 34/10 39/25 41/21
**talked** [1]  12/17
**talking** [4]  30/5 30/6 31/20 31/21
**talks** [1]  42/4
**TAYLOR** [2]  2/16 4/24
**tear** [2]  36/7 36/8
**tell** [3]  21/20 21/22 30/4
**ten** [2]  23/25 24/23
**term** [1]  32/22
**terminology** [1]  18/6
**terms** [3]  16/3 24/25 36/17

**T**

**terrifically [1]** 20/7
**test [1]** 33/19
**tested [1]** 36/16
**testimony [1]** 29/21
**than [2]** 15/10 27/4
**Thank [13]** 4/20 6/1 6/5 20/14 20/15
20/23 40/3 40/4 43/10 43/11 44/24 44/25
45/3
**that [211]**
**that's [27]** 4/8 5/18 5/24 5/25 7/24 17/1
18/13 19/17 19/20 21/12 21/15 21/19
25/15 25/22 29/23 30/9 32/12 35/15
35/16 35/17 35/21 36/12 38/10 38/12
41/17 44/6 44/14
**their [34]** 4/5 12/13 12/23 13/8 13/20
16/14 18/22 19/17 22/5 22/11 22/17
22/23 23/2 23/3 23/5 23/20 23/22 24/8
24/9 24/18 25/6 25/7 25/9 25/9 25/21
27/11 28/9 31/10 32/22 38/25 38/25 39/14
39/18 39/19
**them [23]** 4/5 5/20 15/10 17/1 21/7 22/4
25/6 25/8 26/6 28/11 28/12 29/8 30/22
31/5 31/6 32/7 32/9 34/17 34/21 39/16
39/17 42/12 44/11
**themselves [2]** 19/18 41/17
**then [10]** 6/10 10/22 13/8 13/12 13/13
14/14 22/6 26/25 28/6 34/19
**there [40]** 7/12 7/15 8/7 12/12 12/21
13/4 13/23 15/3 15/7 15/9 16/3 17/9
17/14 18/7 18/8 18/20 18/24 18/25 19/8
19/10 19/16 24/12 28/5 29/10 29/19
34/24 35/5 35/11 35/24 35/24 37/6 37/11
38/14 39/18 40/21 42/14 42/25 44/3 44/8
44/13
**therefore [3]** 6/24 35/14 41/16
**these [41]** 11/12 12/2 12/3 12/5 13/4
13/22 14/9 14/23 15/10 15/16 16/24 17/5
17/17 17/24 18/2 18/11 22/5 22/15 23/14
23/15 23/17 24/8 25/3 25/12 27/15 29/14
32/19 32/25 33/7 37/17 39/17 41/21 42/2
42/5 42/24 43/7 43/24 43/24 44/6 44/9
44/20
**they [105]**
**thing [5]** 5/22 21/9 21/13 21/14 36/20
**think [9]** 6/3 19/6 20/1 20/10 21/20
21/22 24/20 40/7 43/25
**third [3]** 13/8 33/19 43/4
**this [117]**
**those [25]** 8/14 8/16 10/19 11/25 12/1
12/6 13/3 16/8 17/4 17/20 19/25 26/11
26/12 27/13 27/22 28/16 31/22 35/7
35/12 35/12 35/23 36/12 43/1 43/5 43/5
**though [2]** 5/20 11/4
**thought [1]** 11/13
**thousands [2]** 22/4 32/7
**three [12]** 7/5 7/13 7/18 16/1 17/19 26/2
34/9 37/6 37/17 38/2 38/19 39/6
**through [13]** 8/18 12/25 17/2 22/10
25/20 26/23 30/16 31/8 32/16 34/17 39/9
42/13 42/13
**throughout [1]** 23/20
**thumbing [1]** 24/18
**time [16]** 5/25 14/25 15/23 16/22 20/5
27/24 28/15 29/9 29/22 30/16 32/10
34/20 37/9 37/25 38/3 38/21

**timeline [1]** 32/15
**timelines [1]** 12/12
**today [5]** 6/3 17/23 25/22 26/22 32/12
**together [2]** 28/3 39/24
**toggle [1]** 20/25
**tolling [1]** 16/3
**took [6]** 18/4 24/7 28/17 29/7 38/23
38/25
**top [1]** 25/11
**tort [3]** 8/20 44/19 44/20
**torture [1]** 35/4
**toxins [1]** 35/21
**track [10]** 12/7 12/15 12/18 12/24 13/6
13/8 13/9 13/10 13/12 43/4
**tracks [1]** 20/6
**transcript [1]** 38/24
**transcription [1]** 45/9
**transcripts [1]** 29/13
**transferor [1]** 6/21
**transferred [2]** 18/18 32/22
**traveling [1]** 24/11
**treat [1]** 11/9
**treaty [1]** 24/12
**trial [18]** 5/17 9/18 11/20 12/1 12/7
12/10 12/14 12/23 13/4 14/10 15/19 23/5
26/19 26/25 31/18 40/7 40/22 42/20
**tried [3]** 13/1 15/9 23/7
**tries [1]** 21/14
**truthfully [2]** 28/19 28/20
**try [3]** 23/6 31/18 41/5
**trying [2]** 35/25 39/24
**tune [1]** 19/15
**turn [1]** 20/19
**two [7]** 6/11 6/12 8/13 13/14 13/22
33/18 36/2
**type [4]** 35/5 35/6 35/7 35/11
**types [1]** 27/15

**U**

**U.S [6]** 24/13 24/15 24/16 27/9 27/19
27/21
**ultimately [1]** 37/13
**undeniably [1]** 32/11
**under [9]** 9/4 9/20 10/1 12/7 12/11
13/19 34/5 40/19 41/8
**understand [5]** 10/1 27/19 27/21 34/4
37/18
**understood [1]** 34/1
**undiminished [1]** 20/1
**Unfortunately [2]** 9/23 32/18
**unit [1]** 10/22
**UNITED [4]** 1/1 1/11 22/6 37/12
**University [1]** 2/3
**unjustly [1]** 9/9
**unlawful [3]** 12/16 13/17 43/2
**unless [1]** 36/19
**unlimited [1]** 14/25
**unprecedented [1]** 28/17
**unspecified [1]** 12/21
**until [3]** 21/18 34/19 37/14
**up [11]** 10/7 15/25 21/13 30/16 33/7
35/20 41/9 41/13 41/25 42/17 44/16
**upheld [1]** 11/12
**upon [3]** 13/3 20/11 34/25
**us [8]** 5/6 6/1 15/3 19/18 19/22 20/12
24/8 27/7

**use [8]** 5/11 7/8 9/1 9/10 12/16 18/6
32/21 35/12
**useful [1]** 20/4
**using [3]** 7/13 11/6 44/23

**V**

**value [2]** 9/6 25/9
**variability [1]** 44/21
**variations [1]** 16/3
**varied [1]** 10/15
**various [2]** 16/4 23/11
**version [1]** 16/20
**very [22]** 4/20 6/5 11/11 13/11 17/15
19/4 20/1 20/14 20/15 25/19 30/10 35/16
35/23 37/21 40/3 41/3 41/3 43/11 43/25
44/18 44/25 45/3
**vetted [1]** 31/14
**violated [1]** 11/4
**Virginia [14]** 16/2 16/23 18/1 18/1 18/16
18/19 25/16 26/18 37/7 38/8 38/18 39/18
41/14 44/2
**visuals [1]** 33/12
**volume [1]** 15/17

**W**

**waiting [1]** 34/19
**wakes [1]** 21/13
**walk [1]** 22/10
**walked [1]** 34/17
**WALLACE [2]** 2/9 4/17
**walls [2]** 25/6 25/7
**Walnut [1]** 1/18
**want [14]** 5/24 6/10 13/20 21/1 22/16
22/17 22/21 26/22 29/5 36/19 38/6 40/15
41/17 42/20
**wanted [1]** 13/21
**wanting [1]** 42/5
**wants [2]** 28/10 44/5
**warning [1]** 26/7
**was [71]**
**wasn't [1]** 32/1
**way [20]** 5/25 8/8 13/2 13/18 14/23
15/14 17/6 17/10 19/20 20/12 21/18 22/2
25/2 27/15 30/16 33/2 33/6 37/6 37/24
42/10
**ways [1]** 7/13
**wbmllp.com [1]** 2/11
**we [112]**
**we're [1]** 18/19
**weeks [1]** 38/19
**well [10]** 8/15 16/24 18/7 21/2 27/11
30/10 32/21 39/6 39/16 41/9
**went [6]** 8/25 20/5 28/16 29/7 29/11
39/1
**were [42]** 14/24 15/19 16/1 17/6 22/6
23/14 23/15 23/17 23/19 23/25 26/12
26/14 27/8 27/23 27/24 28/19 28/19
28/23 29/1 29/2 29/9 29/10 29/11 29/12
30/10 31/4 35/3 37/10 37/11 37/12 37/23
38/1 38/2 38/3 38/14 38/22 39/24 40/6
42/24 43/2 44/13 45/2
**weren't [2]** 29/2 39/13
**West [1]** 35/21
**what [44]** 5/15 5/22 11/13 15/4 16/11
16/24 21/14 21/14 21/15 21/18 21/20
21/21 21/23 22/8 22/8 22/18 23/15 23/20

## W

**what...** [26]  25/21 27/21 27/22 27/25 28/5 28/11 31/18 31/24 32/15 32/25 33/3 33/13 35/23 36/3 36/12 38/3 39/1 40/8 40/19 41/17 41/22 43/17 43/19 44/3 44/5 44/13

**what's** [5]  23/11 28/4 34/13 40/8 44/7

**whatever** [1]  5/10

**when** [22]  9/16 10/8 14/24 17/13 17/14 21/12 22/5 24/23 25/3 27/14 27/20 28/23 30/4 31/8 33/5 34/20 35/24 37/25 38/21 40/13 41/12 42/16

**where** [18]  6/2 8/24 10/9 14/25 15/18 17/14 17/23 18/3 19/18 19/22 20/5 20/8 23/23 25/16 36/11 39/12 39/24 41/4

**whether** [5]  6/23 13/3 33/7 42/11 44/7

**which** [36]  7/19 9/16 12/8 12/9 12/15 12/18 13/11 13/16 14/18 15/25 16/1 16/16 18/10 18/12 19/2 22/10 22/20 23/7 26/17 26/18 27/22 28/15 30/8 31/15 33/21 34/10 34/17 34/25 35/18 36/5 40/7 40/7 40/9 40/21 41/7 44/8

**while** [2]  23/13 32/5

**Whitfield** [1]  2/9

**Whitney** [1]  35/20

**who** [14]  4/21 9/12 13/24 20/5 20/22 22/3 22/7 28/25 29/1 30/14 37/4 37/19 37/20 37/22

**whole** [3]  9/17 27/24 30/16

**whose** [1]  30/15

**why** [4]  7/19 7/21 32/12 44/1

**will** [36]  6/4 6/10 6/15 7/2 7/3 7/22 8/4 11/15 11/18 12/3 14/14 15/8 15/9 15/11 16/19 17/24 18/1 19/9 19/15 20/4 20/19 20/20 20/21 21/3 22/10 26/20 29/6 32/21 33/22 35/5 40/8 40/21 43/11 43/15 44/8 44/11

**Wiltz** [3]  37/22 38/12 39/5

**windfall** [2]  8/12 9/11

**windfalls** [1]  9/3

**wish** [1]  40/10

**within** [4]  13/22 15/1 19/17 24/15

**without** [4]  18/14 22/7 32/8 44/11

**witnesses** [2]  29/12 34/22

**won't** [1]  43/14

**words** [2]  24/18 39/23

**work** [3]  13/5 31/17 32/23

**working** [1]  28/3

**would** [39]  5/13 6/6 9/11 11/6 11/9 11/13 11/24 11/25 12/18 13/2 13/12 13/17 13/23 14/2 14/6 14/7 14/25 15/3 21/20 24/10 26/5 26/9 31/16 32/11 33/3 34/7 34/8 35/10 35/11 36/23 39/19 40/9 42/16 42/21 42/22 43/1 43/5 43/6 44/23

**wouldn't** [1]  13/20

**write** [1]  23/23

**wrong** [4]  19/16 21/18 21/21 34/2

## Y

**year** [4]  28/14 28/14 30/25 35/19

**years** [13]  13/22 22/3 22/4 22/4 23/13 24/1 24/23 25/25 27/6 30/18 30/18 31/4 32/3

**Yes** [5]  4/23 8/3 29/4 40/12 43/13

**yet** [4]  25/1 27/6 30/24 32/4

**you** [90]

**You'd** [1]  42/3

**your** [77]