UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * * * * * * * | CIVIL ACTION<br><br>MDL NO. 2047<br><br>SECTION L (5) |
| THIS DOCUMENT RELATES TO:<br>ALL *AMORIN* FLORIDA CASES | * * * | |

## ORDER & REASONS

Before the Court are motions to stay the Florida and Virginia-based claims in the Louisiana *Amorin* Complaint filed by the Plaintiffs' Steering Committee (the "PSC"). R. Docs. 21639, 21863. The CNBM and BNBM Defendants oppose the motions. R. Docs. 21728, 21758. Also before the Court is the Taishan Defendants' motion seeking dismissal of these same Florida and Virginia-based claims, R. Docs. 21729, 21913, to which the PSC has filed an opposition, R. Doc. 21758. Having heard oral argument on the parties' respective motions regarding the Florida-based claims on September 27, 2018, R. Doc. 21802, which the parties incorporate by reference in their subsequently filed motions concerning the Virginia-based claims, the Court is ready to rule.

I.  BACKGROUND

From 2004 through 2006, a housing boom in parts of the United States and rebuilding efforts necessitated by Hurricanes Rita and Katrina in the Gulf South led to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used to construct and refurbish homes in coastal areas of the country, notably the Gulf and East Coasts. Sometime after the Chinese drywall was installed, homeowners began to complain of foul-smelling odors, the corrosion and blackening of metal wiring, surfaces,

1

and objects, and the breaking down of appliances and electrical devices in their homes. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829–30 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014). Many of these homeowners also began to complain of various physical afflictions believed to have been caused by the Chinese drywall.

These homeowners then began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. Because of the commonality of facts in the various cases, this litigation was designated as a multidistrict litigation. Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation on June 15, 2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 09-2047 before this Court.

The Chinese drywall at issue was largely manufactured by two groups of defendants: (1) the Knauf Entities and (2) the Taishan Entities. The litigation has focused on these two entities and their downstream associates and has proceeded on strikingly different tracks for the claims against each group.[1] Relevant to this Order are the Chinese Defendants. These Defendants include the principal Chinese-based Defendant, Taishan, namely, Taishan Gypsum Co. Ltd. ("TG") and its wholly-owned subsidiary, Taian Taishan Plasterboard Co., Ltd. ("TTP") (collectively "Taishan" or "Taishan Entities"). Other Chinese-based Defendants include China New Building

---

[1] The Knauf Entities are German-based, international manufacturers of building products, including drywall, whose Chinese subsidiary, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), advertised and sold its Chinese drywall in the United States. On December 20, 2011, the Knauf Entities and the PSC entered into a global, class Settlement Agreement ("Knauf Settlement Agreement"), which was designed to resolve all Knauf-related, Chinese drywall claims. In addition to the Knauf Settlement Agreement and after a jury trial in a bellwether case, numerous defendants in the chain-of-commerce with the Knauf Entities have entered into class settlement agreements, the effect of which settles almost all of the Knauf Entities' chain-of-commerce litigation. The total amount of the Knauf Settlement is approximately $1.1 billion. Although the Court occasionally had to deal with settlement administration and enforcement issues, with the assistance of Special Master Dan Balhoff, the Knauf portion of this litigation is now resolved.

Materials Group ("CNBM Group"), China New Building Materials Co. ("CNBM"), CNBMIT Co. Ltd. ("CNBMIT"), CNBM USA Corp. ("CNBM USA"), and United Suntech Craft, Inc. ("United Suntech") (collectively the "CNBM Entities"), as well as the Beijing New Building Materials Public Limited Company ("BNBM") and Beijing New Building Material Group ("BNBMG") (collectively the "BNBM Entities").

The Court's initial inquiry regarding Taishan involved four cases in this MDL: (1) *Germano v. Taishan Gypsum Co.* (Case No. 09-6687); (2) *The Mitchell Co. v. Knauf Gips KG* (Case No. 09-4115); (3) *Gross v. Knauf Gips KG* (Case No. 09-6690); and (4) *Wiltz v. Beijing New Building Materials Public Ltd.* (Case No. 10-361).

The first issues involving Taishan arose when Taishan failed to timely answer or otherwise enter an appearance in *Mitchell* and *Germano*, despite the fact that it had been properly served in each case. Thus, after an extended period of time, the Court entered preliminary defaults against Taishan in both cases. Thereafter, the Court moved forward with an evidentiary hearing in furtherance of the preliminary default in *Germano* on Plaintiffs' claimed damages. At the hearing, the PSC presented evidence specific to seven individual properties, which served as bellwether cases. Thereafter, on February 19 and 20, 2010, the Court issued detailed Findings of Fact and Conclusions of Law. On May 11, 2010, the Court issued a Default Judgment against Taishan in *Germano* and in favor of Plaintiffs.

On June 10, 2010, the last day to timely appeal the Default Judgment against them, Taishan filed a Notice of Appeal in *Germano* and entered its appearance in *Germano* and *Mitchell*. After Taishan entered its appearance in the MDL, it quickly sought to have the Default Judgment in *Germano* and the Preliminary Default in *Mitchell* vacated for lack of personal jurisdiction.

Because this was the first time Defendants raised jurisdictional issues, the Fifth Circuit remanded the case to this Court to determine whether this Court indeed has jurisdiction over Taishan.

In the fall of 2010, the Court directed the parties to commence the personal jurisdiction discovery necessary to resolve Taishan's motions to vacate. Sometime after the initial discovery, the parties agreed to expand the discovery beyond the *Germano* and *Mitchell* cases to other cases in which Taishan had been served, including *Gross* and *Wiltz*.

Formal personal jurisdiction discovery of Taishan began in October 2010. Discovery included the production of both written and electronic documents as well as depositions of Taishan's corporate representatives, with each type of discovery proceeding in a parallel fashion. This discovery was highly contentious, requiring close supervision by the Court. The Court presided over regularly-scheduled status conferences, conducted hearings, and issued rulings to resolve numerous discovery-related disputes.

In June 2011, the PSC filed identical complaints in Federal district courts in Florida, Virginia, and Louisiana (the "*Amorin* complaints"). The *Amorin* complaints include all Plaintiffs named in the *Wiltz*, *Gross*, *Abel*, and *Haya* actions. The Florida and Virginia actions were transferred by the JPML to the MDL; the PSC filed the Louisiana omnibus complaint directly into the MDL. It is undisputed that the allegations and Plaintiffs named in the *Amoin* complaints are identical. According to the PSC, these identical complaints were filed "out of an abundance of caution," because "there existed a colorable question regarding the application of the jurisdictional tests known as the 'stream-of commerce' test and the 'stream-of-commerce-plus' test reflected in the plurality opinions in *McIntyre* and *Asahi*, as well as Justice Brennan's concurring opinion in *Asahi*."

In April 2012, Taishan filed various motions, including motions to dismiss for lack of personal jurisdiction. On June 29, 2012, over three years since the creation of this MDL and after a year-and-a-half of personal jurisdiction discovery on Taishan, the Court presided over a hearing on Taishan's motions. The Court coordinated its hearing with the Honorable Joseph Farina of the Florida state court, who had a similar motion involving Taishan's challenge to personal jurisdiction.

On September 4, 2012, this Court issued a 142-page Order regarding Taishan's motions in *Germano*, *Mitchell*, *Gross*, and *Wiltz,* in which the Court denied the motions to dismiss and held that it maintained personal jurisdiction over Taishan. *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819 (E.D. La. 2012). The Court also ruled that Taishan was operating as the alter ego of TG and TTP. The Court certified an interlocutory appeal, and the Fifth Circuit granted permission to appeal. In January and May of 2014, two different panels of the Fifth Circuit affirmed this Court's ruling and held that this Court maintained personal jurisdiction over Taishan, TG, and TTP. *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 753 F.3d 521 (5th Cir. 2014); *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576 (5th Cir. 2014). The time for writ of certiorari passed, and the issue of personal jurisdiction over Taishan became firmly and finally settled. Nevertheless, Taishan refused to voluntarily participate in this suit.

On June 20, 2014, the Court ordered Taishan to appear in open court on July 17, 2014 to be examined as a judgment debtor. Taishan failed to appear for the July 17, 2014 Judgment Debtor Examination, and the Court held Taishan in contempt, ordering that Taishan pay $15,000.00 in attorneys' fees to Plaintiffs' counsel and $40,000.00 as a penalty for contempt; Taishan and any of its affiliates or subsidiaries be enjoined from conducting any business in the United States until or unless it participates in this judicial process; and if Taishan violates the injunction, it must pay

5

a further penalty of twenty-five percent of the profits earned by the Company or its affiliate who violate the Order for the year of the violation.

On July 23, 2014, the PSC filed their Omnibus Motion for Class Certification pursuant to Rule 23(b)(3). Taishan did not appear and, on September 26, 2014, this Court certified a class of all owners of real properties in the United States, who are named Plaintiffs on the complaints in *Amorin*, *Germano*, *Gross*, and/or *Wiltz* (*i.e.*, not an absent class member), asserting claims for remediated damages arising from, or otherwise related to Chinese Drywall manufactured, sold, distributed, supplied, marketed, inspected, imported or delivered by the Taishan Defendants. R. Doc. 18028.

Taishan finally entered an appearance with the Court in February 2015, and, to satisfy the contempt, Taishan paid both the sum of $15,000.00 in attorneys' fees to Plaintiffs' counsel and the contempt penalty of $40,000.00 in March 2015. On March 17, 2015, the Court ordered Taishan and the BNBM and CNBM Entities to participate in expedited discovery related to "the relationship between Taishan and BNBM/CNBM, including whether affiliate and/or alter ego status exists."

On March 10, 2016, this Court granted CNBM Group's motion to dismiss, finding it was an "agent or instrumentality of a foreign state" within the meaning of the Foreign Sovereign Immunities Act ("FSIA"), and therefore outside the jurisdiction of this Court under 28 U.S.C. § 1603(b). R. Doc. 20150. The Court determined the tortious activity exception did not apply because the alleged tortious conduct did not occur within the United States under 28 U.S.C. § 1605(a)(5). Further, the Court found the commercial activity exception did not apply, as CNBM Group did not directly manufacture, inspect, sell, or market drywall in the United States. Because the PSC failed to present evidence sufficient to overcome the presumption that CNBM Group was entitled to independent status for purposes of the FSIA, the Court granted the motion and dismissed CNBM Group from the present litigation.

After concluding it lacked personal jurisdiction over CNBM Group, on April 21, 2017, the Court issued a 100-page opinion related to jurisdictional challenges being raised with respect to CNBM, BNBM Group, and BNBM. The Court found Taishan was an agent of BNBM under Florida and Virginia law, such that Taishan's contacts in Florida and Virginia are imputed to BNBM. This Court further found that CNBM, BNBM Group, and BNBM were part of a single business enterprise with Taishan under Louisiana law, such that Taishan's contacts in Louisiana may be imputed to them, and that the Court has jurisdiction over CNBM, BNBM Group, and BNBM in relation to Plaintiffs' claims based on Louisiana law. Also on April 21, 2017, the Court issued its Findings of Fact and Conclusions of Law related to the June 9, 2015 damages hearing and adopted the PSC's damage calculations methodology related to remediation of properties.

On May 22, 2017, Defendants filed a motion pursuant to 28 U.S.C. § 1292(b) to certify an interlocutory appeal from this Court's April 21, 2017 jurisdiction order. Because the Court found the April 21, 2017 Order & Reasons involved a controlling question of law as to which there was substantial ground for difference of opinion, and because the Court further found that an interlocutory appeal might materially advance the ultimate termination of this MDL, on August 4, 2017, the Court certified an interlocutory appeal to the Fifth Circuit pursuant to 28 U.S.C. § 1292(b).

On August 1, 2017, Defendants filed a motion to dismiss for lack of personal jurisdiction following the recent U.S. Supreme Court case of *Bristol-Myers Squibb v. Superior Court of California* ("*Bristol-Myers*"), 137 S. Ct. 1773 (2017). Based on *Bristol-Myers*, Defendants contested this Court's findings of personal jurisdiction, class certification, and agency relationship. On August 14, 2017, Defendants filed a petition for permission to appeal pursuant to 28 U.S.C. § 1292(b) in the Fifth Circuit, in which they argued *Bristol-Myers* impacted questions raised on

appeal. On August 24, 2017, this Court vacated its 28 U.S.C. § 1292(b) certification order to avoid piecemeal litigations, noting its duty to address the effect of *Bristol–Myers* on the jurisdictional issue before certifying the matter to the Fifth Circuit. Subsequently, on November 30, 2017, the Court denied Defendants' motion to dismiss, holding *Bristol-Myers* did not change this Court's jurisdictional findings and class certification.

On January 2, 2018, the Court denied Defendants CNBM, BNBM Group, and BNBM's motion to vacate the default judgments against them. On March 5, 2018, the Court reinstated its order certifying the interlocutory appeal of its April 21, 2017 order. This issue remains with the Fifth Circuit.

On March 12, 2018, having found that the purpose behind consolidating these related actions in this Court had been served, the Court issued its suggestion of remand with respect to the Florida *Amorin* Plaintiffs. R. Doc. 21240. In its suggestion of remand, the Court specifically retained jurisdiction "to consider the fair and equitable assessment of any potential recovery for the services performed and expenses incurred by attorneys acting for administration and common benefit of all MDL plaintiffs." *Id.* On June 6, 2018, the JPML entered its remand order, remanding the Florida-based *Amorin* claims to the U.S. District Court for the Southern District of Florida, the Honorable Marcia G. Cooke presiding. *See Amorin, et al. v. Taishan Gypsum Co., Ltd.*, No. 11-22408 (S.D. Fla.)

On August 3, 2018, the PSC moved to stay all Florida-based claims brought in the *Amorin* complaints filed in Louisiana and Virginia. R. Doc. 21639. The CNBM and BNBM entities filed their motion in opposition on August 24, 2018. R. Doc. 21728. The same day, August 24, 2018, Thaishan filed a motion seeking dismissal of the Florida claims included in the Louisiana and Virginia *Amorin* complaints. R. Doc. 21729. The PSC filed an omnibus reply in support of its

motion to stay and in opposition to Taishan's motion to dismiss on September 6, 2018. R. Doc. 21758. On September 27, 2018, the Court heard oral argument on both motions. R. Doc. 21802.

Meanwhile, on October 16, 2018, the JPML formally remanded the Virginia *Amorin* claims to the Eastern District of Virginia, the Honorable Mark S. Davis presiding. *See Amorin, et al. v. Taishan Gypsum Co., Ltd.*, No. 11-377 (E.D. Va.). Thereafter, the PSC filed a second motion to stay, this time seeking to stay the Virginia-based *Amorin* claims, R. Doc. 21863, which the CNBM and BNBM entities opposed on November 13, 2018, R. Doc. 21913.

## II. MOTIONS TO STAY AND TO DISMISS

The PSC moves the Court to stay all Florida and Virginia claims in the Louisiana *Amorin* complaint. R. Docs. 21639, 21863. It argues a stay is appropriate, as outright dismissal of these claims would be unduly prejudicial to Plaintiffs and could be deemed an abandonment or non-suit of the claims. R. Doc. 21758 at 5; R. Doc. 21639-1 at 8. Defendants oppose a stay, arguing the Florida and Virginia cases in the Louisiana *Amorin* complaint should be dismissed without prejudice, as a stay would only further complicate the proceedings. R. Doc. 21738 at 4; R. Doc. 21729 at 1. In response, the PSC argues a stay is a necessary protective measure that is within the Court's discretion to order and that a stay would have the same impact on Defendants as would an outright dismissal of the Florida and Virginia-based *Amorin* claims. R. Doc. 21758 at 3, 5.

## III. LAW & ANALYSIS

The issue presently before the Court—whether to stay identical claims in an MDL after its companion cases have been remanded—is unique. It is clear, however, that the Federal Rules of Civil Procedure "endow the trial judge with formidable case management authority," *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 508 (5th Cir. 1999) (quoting *Rosario–Diaz v. Gonzalez*, 140 F.3d 312, 315 (1st Cir. 1998)), and that this Court has "broad discretion to stay proceedings as an

9

incident to its power to control its own docket," *Clinton v. Jones*, 520 U.S. 681, 706 (1997). Thus, in deciding whether to dismiss or stay the Florida and Virginia-based claims in the Louisiana *Amorin* complaint, the Court will weigh the equities of the options before it.

Prior to remanding the Florida and Virginia *Amorin* omnibus complaints, this Court issued several orders regarding personal jurisdiction. Since remanding the Florida action, however, Defendants have argued this Court's rulings should not be given preclusive effect in the Florida court. *See* No. 11-22408, R. Doc. 91 (S.D. Fla.). This factor militates in favor of granting a stay, as Plaintiffs could be prejudiced by a dismissal should Judge Cooke conclude her court lacks jurisdiction over Defendants.[2] *See cf. Burger v. Am. Maritime Officers Union*, 170 F.3d 184, *2 (5th Cir. 1999) ("When the jurisdiction of the first-filed court to hear the dispute is uncertain, it is an abuse of discretion to dismiss the claims in the second-filed court with prejudice, as it creates the risk that the merits of the claims could never be addressed." (citing *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628–29 (9th Cir. 1991))).

On the other hand, staying these cases, as opposed to dismissing them, would not prejudice Defendants. A stay will not require Defendants to engage in any discovery or motion practice regarding the Florida and Virginia *Amorin* Plaintiffs in this Court, and these claims essentially will be removed from this Court's docket.

The PSC filed identical complaints in Florida, Virginia, and Louisiana as a protective measure, fearing both issues of personal jurisdiction and statute of limitations defenses. Given the convoluted nature of the case, particularly with the issue of personal jurisdiction, the Court finds

---

[2] Although the effect of a stay (as opposed to a dismissal without prejudice) appears to be a distinction without a difference, Plaintiffs could be prejudiced by a dismissal in the sense that, in the event Judge Cooke finds the Florida court lacks jurisdiction, Plaintiffs would have to refile their lawsuit in this Court and start the process anew, including serving Defendants. Given the difficulties the parties have had in this case, including with service, the Court finds the refiling of the Florida (and Virginia) cases would prejudice Plaintiffs.

it most prudent to stay the Florida and Virginia-based *Amorin* claims presently before it to avoid any unforeseen and unintended consequences an outright dismissal might cause. *See* 17 MOORE'S FEDERAL PRACTICE ¶ 111.13[1] [o] [ii] [A] (3d ed. 2016) ("If the first-filed action is vulnerable to dismissal on jurisdictional or statute of limitations grounds, the court in the second-filed action should stay it or transfer it, rather than outright dismiss it."). Thus, pursuant to the Court's "formidable case management authority," the Court will stay the Florida and Virginia-based claims in the Louisiana *Amorin* complaint. *See Rushing*, 185 F.3d at 508.

V. **CONCLUSION**

For the foregoing reasons,

**IT IS ORDERED** that the Florida and Virginia-based claims in the Louisiana *Amorin* complaint be and hereby are **STAYED**.

New Orleans, Louisiana, this 19th day of November, 2018.

_____
**ELDON E. FALLON**
United States District Judge