## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ELIZABETH BENNETT, et al., individually and on behalf of all others similarly situated, [ADDITIONAL PLAINTIFFS LISTED ON SCHEDULE OF PLAINTIFFS ATTACHED HERETO AS EXHIBIT "A"], | ) ) ) ) ) ) | MDL-2047  IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION |
| Plaintiffs, | ) ) | This document relates to: |
| v. | ) ) | **Civil Action No.: 14-cv-2722-EEF-JCW** |
| KNAUF GIPS KG; and KNAUF PLASTERBOARD TIANJIN CO., LTD, | ) ) ) ) | |
| Defendants. | ) ) ) ) | JURY TRIAL DEMAND |

_____ )

## SIXTH AMENDED CLASS ACTION COMPLAINT

Pursuant to Fed. R. Civ. P. 23, the class representatives in this action bring suit on behalf of themselves and all other similarly situated owners and residents of real property containing defective Chinese manufactured drywall that was designed, manufactured, imported, exported, distributed, delivered, supplied, inspected, marketed, sold and/or installed by the Defendants.  In order to accomplish an effective class structure, each of the class representatives is pursuing a nationwide class action against Knauf Gips, KG and Knauf Pasterboard Tianjin, Co., Ltd. (collectively hereinafter "Knauf" or "Defendants), who are the manufacturers of the drywall located in Plaintiffs' homes.  Each defendant in this action is liable for damages incurred by Plaintiffs due to their role in the design, manufacture, importing, distributing, delivery, supply, marketing inspecting, installing, or sale of the defective drywall at issue in the litigation.

## JURISDICTION, PARTIES, AND VENUE

1.      This action is within the original jurisdiction of this Court by virtue of 28 U.S.C. §1332(d)(2) and the Class Action Fairness Act ("CAFA"). *See* 28 U.S.C. §1711, *et seq*. Plaintiffs and Defendants are residents of different states and the amount in controversy of this class action exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

2.      Venue in this district satisfies the requirements of 28 U.S.C. § 1391(b)(1)-(2) and (c) because Plaintiffs  and a significant number of the absent class members reside in this jurisdiction and a substantial amount of the events and occurrences giving rise to these claims occurred in this district, or a substantial part of the property that is the subject of this action is situated in this district.

## PLAINTIFFS

3.      For purposes of clarity, the Plaintiffs are asserting claims on behalf of all owners of the subject properties.

4.      Unless specifically stated to the contrary on Exhibit "A," all Plaintiffs are citizens of the state where they reside and all entities are citizens of the state where they are organized.

5.      All Plaintiffs are participating as class representatives in the class action.

6.      Each plaintiff is identified on Exhibit "A," which is incorporated herein by reference.  Each plaintiff identified on Exhibit "A" is bringing claims against all Defendants.

## DEFENDANTS

7.      Both Defendants are foreign entitied organized in foreign countries and with principal places of business in foreign countries.

8.      Defendant Knauf GIPS, KG ("Knauf GIPS") is a German corporation doing business in several states including but not limited to Alabama, Florida, Georgia, Louisiana,

Mississippi, North Carolina, South Carolina, Texas, and Virginia. Knauf GIPS is a leading manufacturer of building materials and systems. Knauf GIPS together with Knauf Plasterboard Tianjin Co., Ltd, ("Knauf Tianjin") provides building materials and systems to customers in over 50 countries, including the United States. Upon information and belief, at all times material hereto, Knauf GIPS supervised, operated, trained and otherwise exercised control and/or had the right ot control the operations of Knauf Tianjin and its agents, apparent agents, and employees.

9.      Upon information and belief, Knauf GIPS, together with its affiliates and/or actual or apparent agents, including Knauf Tianjin, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers within various states, including but not limited to Alabama, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Texas, and Virginia.

10.      Upon information and belief, Knauf GIPS and/or Knauf Tianjin have continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Knauf GIPS and/or Knauf Tianjin manufactured and sold, directly and indirectly, to certain suppliers in the United States. Knauf GIPS directly controlled through its global family of businesses the importation of defective drywall at all times and provided oversight of internal investigations of sales of defective drywall.

11.      Defendant Knauf Tianjin is a foreign corporation doing business in several states, including but not limited to Alabama, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Texas, and Virginia. Knauf Tianjin is involved in the manufacturing and sale of gypsum drywall. Knauf Tianjin is the actual agent and/or apparent agent of Knauf GIPS. Upon

information and belief, Knauf Tianjin individually and/or together with and at the direction and control of its principal, Knauf GIPS, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers throughout the United States. Knauf Tianjin and/or Knauf GIPS have continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Knauf Tianjin and/or Knauf GIPS manufactured and sold, directly and indirectly, to certain suppliers in the United States. Representatives of Knauf Tianjin have intentionally directed communications to distributors in the United States, employed American distributors as agents for the company, shipped product intending for it to be distributed in the United States and otherwise engaged in commerce and/or circumstances that the company reasonably expected that it could be hailed into the United States courts.

12.     In 1995, the Knauf GIPS introduced its advanced production techniques and technology into China. From 1997 through 2001, Knauf GIPS established three plasterboards plants which are located in Wuhu, Tianjin, and Dongguan. The product quality of all Knauf-related plants in China, including Knauf Tianjin, are strictly controlled according to the requirements of Knauf GIPS' headquarters in Germany. Knauf GIPS's sales and technical support teams support Knauf's businesses throughout the world, including Knauf Tianjin in China. Knauf Tianjin and its employees are controlled by the actual and/or apparent agents of Knauf GIPS. And, based on information and belief all Knauf entities act without regard to corporate formalities.

### GENERAL ALLEGATIONS

13.     Upon information and belief, Defendants' drywall contains gypsum.

14.     In "defective" drywall (such as that designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, sold and/or installed by Defendants herein), the gypsum and other components of the product react, break down, and release sulfur compounds and other noxious gases from the drywall.

15.     The sulfur compounds, including Hydrogen Sulfide, Carbonyl Sulfide, and Carbon Disulfide, exit Defendants' drywall and cause rapid sulfidation and damage to personal property (such as air conditioning and refrigerator coils, faucets, utensils, electrical wiring, copper, electronic appliances and other metal surfaces and property).

16.     Exposure to sulfur compounds and the other noxious gases emitted from Defendants' drywall can cause eye irritation, sore throat and cough, nausea, fatigue, shortness of breath, fluid in the lungs, and/or neurological harm to some inhabitants who possess a sensitivity.

17.     Although the drywall functions according to is intended purpose as a building component, it is unfit for this purpose due to the damaging side effects and/or because its use is so inconvenient that Plaintiffs would not have purchased their homes had the side effects been disclosed by Defendants.

18.     As a direct and proximate result of Defendants' actions and omissions, Plaintiffs and the Class Members' homes, structures, and personal property have been exposed to Defendants' defective and unfit drywall and the corrosive and harmful effects of the sulfur compounds and other noxious gases being released from Defendants' problematic drywall.

19.     Defendants tortiously manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed, sold and/or installed defective drywall, which was unfit for its intended purpose and unreasonably dangerous in its normal use in that the drywall caused corrosion and damage to personal property in Plaintiffs' and Class Members' homes.

20.     Defendants recklessly, wantonly, and/or negligently manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed and/or sold the defective drywall at issue in this litigation.

21.     Defendants recklessly, wantonly, and/or negligently implemented faulty procedures for purposes of formulating, preparing, testing, and otherwise ensuring the quality and/or character of the problematic drywall at issue in this litigation.

22.     As a direct and proximate result of Defendants' defective, problematic, and unfit drywall and the corrosive and harmful effects of the sulfur compounds and other noxious gases released from these products, Plaintiffs and the Class Members have suffered, and continue to suffer, economic harm.

23.     As a direct and proximate result of Defendants' defective drywall, the Plaintiffs have suffered, and continue to suffer damages.  These damages include, but are not limited to, cost of inspection; cost and expenses necessary for remediation of the home; the cost to remove and replace the other property that has been impacted; inability to sell their home; interest payments to a lender while the home is unsellable; inability to entertain family and friends in the home; lost value or devaluation of their homes and property; alternative living expenses; and loss of use and enjoyment of their home and property.

24.     As a direct and proximate result of Defendants' defective and unfit drywall, Plaintiffs have need for injunctive relief in the form of repair and remediation of their homes, rescission of contracts, the ordering of emergency/corrective notice, the ordering of testing.

## CLASS ACTION ALLEGATIONS

**The Knauf Class**

25.     The representative Plaintiffs with claims against the Knauf manufacturing defendants assert classes pursuant to Rules 23(a), (b)(1), (b)(2), (b)(3) and/or 23(c)(4) of the Federal Rules of Civil Procedure, on behalf of themselves and those similarly situated, against the manufacturing defendants for whom they have standing. The designated Plaintiffs in Exhibit "A" define their classes to be as follows:

> Owners and residents (past and present) of real property located in the United States containing defective Chinese drywall manufactured, sold, distributed, and/or supplied by Knauf GIPS, KG and/or Knauf Plasterboard Tianjin Co., Ltd.

**General Class Allegations and Exclusions from the Class Definitions**

26.     The following Persons shall be excluded from the Class: (1) Defendants and their subsidiaries, affiliates, officers and employees; (2) all Persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the judge(s) to whom this case is assigned and any immediate family members thereof.

27.     Upon information and belief, the Defendants' defective and unfit drywall was installed in thousands of homes, residences, or other structures owned by Plaintiffs and Class Members. Therefore, the Class is sufficiently numerous such that joinder of all members of the Class in a single action is impracticable.

28.     There are numerous common questions of law and fact that predominate over any questions affecting only individual members of the Class.  Among these common questions of law and fact are the following:

> a.  whether Defendants' drywall products that release sulfur compounds and other noxious gases are defective and/or unfit for their intended purposes;

      b.  whether Defendants manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, sold, and/or installed defective drywall products;

      c.  whether Plaintiffs and Class Members are entitled to recover compensatory, exemplary, incidental, consequential, punitive and/or other damages as a result of Defendants' unlawful and tortious conduct; and,

      d.  whether Plaintiffs and Class Members are entitled to recover injunctive and/or equitable relief as a result of Defendants' unlawful and tortious conduct.

29.    The legal claims of all named Plaintiffs are typical of the legal claims of other Class Members.  Named Plaintiffs have the same legal interests and need for legal remedies as other Class Members.

30.    Named Plaintiffs are adequate representatives of the Class, together with their legal counsel, each will fairly and adequately protect the interests of Class members.  Named Plaintiffs have no known conflict with the Class and are committed to the vigorous prosecution of this action.

31.    The undersigned counsel is competent counsel experienced in class action litigation, mass torts, and litigation involving defective and harmful products.  Counsel will fairly and adequately protect the interests of the Class.

32.    The various claims asserted in this action are certifiable under the provisions of Federal Rules of Civil Procedure 23(b)(1) because prosecuting separate actions by or against individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party opposing the class; or adjudications with respect to individual Class members that, as a practical matter, would be dispositive of the interests of the other Class members not parties to

the individual adjudications or would substantially impair or impede their ability to protect their interests.

33.     The claims for injunctive relief in this case are certifiable under Fed. R. Civ. P. 23(b)(2).  Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief is appropriate respecting the Class as a whole.

34.     A class action is superior to other methods of dispute resolution in this case.  The Class members have an interest in class adjudication rather than individual adjudication because of their overlapping rights.  It is highly desirable to concentrate the resolution of these claims in this single forum because it would be difficult and highly unlikely that the affected Class members would protect their rights on their own without this class action case.  Management of the class will be efficient and far superior to the management of individual lawsuits. Accordingly, Plaintiffs' legal claims are appropriate for certification pursuant to Rule 23(b) of the Federal Rules of Civil Procedure.

35.     The issues particularly common to the Class members' claims, some of which are identified above, are alternatively certifiable pursuant to Fed. R. Civ. P. 23(c)(4), as resolution of these issues would materially advance the litigation, and class resolution of these issues is superior to repeated litigation of these issues in separate trials.

### COUNT I
### NEGLIGENCE

36.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth fully herein.

37.     Defendants owed a duty to Plaintiffs and Class Members to exercise reasonable care in designing, manufacturing, exporting, importing, distributing, delivering, supplying,

inspecting, marketing, selling, and/or installing this drywall, including a duty to adequately warn of their failure to do the same.

38.     Defendants knew or should have known that their wrongful acts or omissions would result in harm and damages in the manner set forth herein.

39.     Defendants breached their duty to exercise reasonable care in the designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, selling, and/or installing this drywall.

40.     Defendants likewise breached their duties to Plaintiffs and Class Members by failing to warn about the defective nature of the drywall.  Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the homes and bodies of Plaintiffs and Class Members.

41.     Defendants breached their duty to exercise reasonable care to timely remove and/or recall from the market and/or otherwise prevent the continued contact of Plaintiffs and Class Members with the drywall, upon learning it had been sold in an unreasonably dangerous condition.

42.     Given the defect in the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm, damages and/or personal injuries to Plaintiffs and Class Members.

43.     As a direct and proximate cause of Defendants' acts or omissions, Plaintiffs and Class Members were harmed and have incurred damages and/or personal injuries as described herein.

## COUNT II
## NEGLIGENCE PER SE

44.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth fully herein.

45.     Defendants owed statutory duties to Plaintiffs and Class Members to exercise reasonable care in designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, selling, and/or installing this drywall.

46.     Defendants breached their statutory duties to the Plaintiffs and Class Members by failing to exercise reasonable care in the designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, selling, and/or installing this drywall.

47.     Defendants likewise breached their statutory duties, including but not limited to those imposed under the International Building Code ("IBC") and other state and local building codes, to Plaintiffs and Class Members by failing to warn about the defective nature of the drywall.  For instance, it is specifically alleged that Defendants furnished the drywall in violation of ASTM C 1396/C 1396M-069, and its predecessor(s).

48.     Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the homes of Plaintiffs and Class Members.

49.     Given the defect in the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm and damages to Plaintiffs and Class Members.

50.     As a direct and proximate cause of Defendants' acts or omissions, Plaintiffs and Class Members were harmed and have incurred damages as described herein.

<u>COUNT III</u>
**STRICT LIABILITY**

51.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth fully herein.

52.     At all times relevant hereto, Defendants were in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public.

53.     The drywall, including that installed in the homes of Class Members was placed by Defendants into the stream of commerce.

54.     Defendants knew that the subject drywall would be used without inspection for defects by consumers.

55.     Defendants intended that the drywall reach the ultimate consumers, such as Class members, and it indeed reached Class members when it was installed in their homes.

56.     When installed in Class Members' homes, the drywall was in substantially the same condition as it was in when Defendants manufactured, sold, and/or delivered it.

57.     At all times relevant hereto the subject drywall was used in a manner consistent with the uses intended by, or known to Defendants, and in accordance with the Defendants' directions and instructions.

58.     The subject drywall was not misused or altered by any third parties.

59.     The Defendants' drywall was defectively manufactured, designed, inspected, tested, marketed, distributed, and sold.

60.     The design defect was in designing drywall that allowed high levels of sulfur and/or other chemicals to emit through off-gassing.

61.     The manufacturing defect was in improperly selecting, testing, inspecting, mining, making, assembling, and using, gypsum for drywall with levels of sulfur that were too high and emitted various sulfide gasses and/or other chemicals through off-gassing.

62.     The drywall was also defective because it was improperly exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold in a defective condition, as described above.

63.     The Defendants' defective manufacturing, designing, inspecting, testing, marketing, distributing, and selling of the drywall rendered it unsafe and unreasonably dangerous for its intended use by Plaintiffs and Class Members.

64.     The drywall is also defective and unreasonably dangerous because Defendants failed to adequately warn and instruct Class members of the defective design, inspection, testing, manufacturing, marketing, and selling of the drywall.

65.     Class Members were neither aware of the unreasonably dangerous propensities and defective condition of the drywall, nor could Class Members, acting as reasonably prudent people discover that Defendants' drywall was defective, as set forth herein, or perceive its danger.

66.     Defendants' defective drywall was much more dangerous and harmful than expected by the average consumer and by Class Members.

67.     The benefit, if any, of Class Members using Defendants' defective drywall was greatly outweighed by the risk of harm and danger.

68.     The defects in the drywall, as well as Defendants' failure to adequately warn Class Members of the defects rendered the drywall unreasonably dangerous, was the direct and proximate cause of damages incurred by Class members.

## COUNT IV
## BREACH OF EXPRESS AND/OR IMPLIED WARRANTY

69.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

70.     Defendants and/or their agents were in privity with Plaintiffs and Class Members and/or Plaintiffs and Class Members were foreseeable third-party beneficiaries of any warranty.

71.     At the times Defendants' drywall was installed, utilized, supplied, inspected, sold, in the Plaintiffs' and Class Members' homes, Defendants knew, or it was reasonably foreseeable, that the drywall would be installed in the Plaintiffs' and Class Members' homes for use as a building material, and expressly or impliedly warranted the product to be fit for that use.

72.     Defendants placed their drywall products into the stream of commerce in a defective condition and these products were expected to, and did, reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

73.     The drywall was defective because it was not fit for the uses intended by Defendants; the installation of the drywall in Plaintiffs' and Class Members' homes was not suitable for use as a building material, because it contained the defects as set forth herein.

74.     The Defendants breached their warranty because the drywall was not fit and safe for the particular purposes for which the goods were required (to be installed in Plaintiffs and Class Members' homes as a building material) due to the defects set forth herein.

75.     Defendants had reasonable and adequate notice of the Plaintiffs' and the Class Members' claims for breach of warranty and failed to cure.

76.     As a direct and proximate cause of Defendants' breach of warranties, Plaintiffs and Class Members have incurred harm and damages as described herein.

14

## COUNT V
### REDHIBITION
#### (By Louisiana Plaintiffs Against Defendants)

77.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

78.     The drywall manufactured, distributed and/or sold by Defendants was not reasonably fit for its ordinary and intended purpose.

79.     Defendants are therefore liable to Louisiana Plaintiffs for all reasonable damages in accordance with La. Civ. Code art. 2524.

80.     In addition, or in the alternative, the drywall manufactured, distributed and/or sold by Defendants contained redhibitory defects, because, at the time of delivery, the propensity to emit or off-gas sulfur compounds and/or other potentially harmful, irritating and/or corrosive substances renders the drywall so useless and/or inconvenient that it must be presumed that Plaintiffs would not have purchased the drywall had they known of the defect or defects.

81.     In the alternative, the defects are redhibitory because, while not rendering the drywall totally useless, it did diminish the drywall's use and/or diminish the drywall's value to such an extent that it must be presumed that the buyer would have bought it, but for a lesser price.

82.     The Manufacturing Defendants are presumed to possess knowledge of the defects in the drywall manufactured by them.

83.     In addition, it is believed and alleged that all defendants knew of the defects in the drywall at the time the drywall was delivered and/or sold.

84.     Defendants have had numerous opportunities to repair and/or replace the drywall and associated fixtures and/or building components and have failed to do so; in addition and/or in the alternative, such requests have been and/or would be futile; moreover, Manufacturing Defendants are deemed to be placed on notice when notice is provided to its agents or business

15

partners; and, in addition or alternatively, Defendants had actual knowledge of the problems in the drywall and the need for replacement, remediation and/or repair as early as 2006.

85.     Defendants are therefore liable to all Louisiana Plaintiffs for a return of the purchase price (with interest from the time it was paid), reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the drywall and associated items, for all other damages, and for reasonable attorneys' fees, in accordance with La. Civ. Code art. 2545.

**COUNT VI**
**LOUISIANA PRODUCTS LIABILITY ACT**

86.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

87.     In addition to any and all damages, attorneys' fees and other remedies made available to Louisiana Plaintiffs under the warranty of fitness and/or warranty against redhibitory defects, the Manufacturing Defendants are liable to Louisiana Plaintiffs under the Louisiana Products Liability Act, ("LPLA"), La. R.S. 9:2800.51 *et seq*.

88.     The Manufacturing Defendants, upon information and belief, expressly warranted that "the gypsum boards manufactured and sold... are guaranteed to be free from defects in materials and workmanship."

89.     The Manufacturing Defendants expressly warranted that "the gypsum boards were manufactured in accordance with ASTM C36."

90.     Plaintiffs assert that the drywall marked "KNAUF TIANJIN CHINA ASTM C36," imported beginning in 2005, did not comply with ASTM C36.

91.     The drywall at issue is, in all cases, unreasonably dangerous by virtue of the unreasonable off-gassing and/or emission of sulfur compounds and/or other corrosives, toxins and/or irritants, which do not in any way contribute to or enhance the utility of the drywall, yet

pose a risk to the wiring, plumbing, appliances, personal property, overall economic value of the property and financial security of the owner, and/or the health of the residents of the property.

92.     At all times pertinent and material hereto, the Knauf Defendants knew that their drywall was unreasonably dangerous and/or defective as set forth herein.

93.     Defendants' drywall is unreasonably dangerous in composition or construction in that, at the time it left Defendants' control, it deviated in a material way from Defendant's own specification or performance standards.

94.     In addition, and in the alternative, defendants' drywall is unreasonably dangerous in design, in that, at the time the drywall left Defendant's control, there existed an alternative design for the product that was capable of preventing Plaintiffs' damage, and the likelihood of causing the plaintiffs' damage and the gravity of that harm outweighed the burden (if any) on the Defendant in adopting such alternative design and the adverse effect (if any) on the utility of the drywall.

95.     In addition, or in the alternative, Defendants' drywall is unreasonably dangerous in that it fails to conform to an express warranty about the product which induced the use of the product and caused damage to Plaintiffs to the extent that the warranty was untrue.

96.     In addition, or in the alternative, Defendants' drywall is unreasonably dangerous due to an inadequate warning, because at the time the drywall left Defendant's control, the drywall possessed a characteristic that might cause damage and yet Defendant failed to use reasonable care to provide an adequate warning of such characteristics and/or dangers to users and/or handlers of the drywall.

97.     Defendants are therefore liable to Louisiana Plaintiffs for all damages reasonable in the premises.

## COUNT VII
## PRIVATE NUISANCE

98.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

99.     The Defendants' tortious or wrongful acts or omissions have caused sulfide gas and/or other chemical leaching into Plaintiffs' and Class Members' homes which has unreasonably interfered, and continues to interfere, with the Plaintiffs' and Class Members' use and enjoyment of their properties and caused them harm and damage as discussed herein.

100.    Defendants' interference has impaired the rights of Plaintiffs' and Class Members' health, comfort, safety, free use of their property, and/or peaceful enjoyment of their property.

101.    Defendants' invasions were intentional and unreasonable, and/or unintentional, but otherwise negligent or reckless.

102.    The interference with Plaintiffs' and Class Members' use of their property was caused by Defendants and is substantial and is ongoing.

103.    Defendants' private nuisance was the direct, proximate, and foreseeable cause of Plaintiffs and Class Members' damages, injuries, harm, loss, and increased risk of harm, which they suffered and will continue to suffer.

104.    As a direct and proximate cause of Defendants' creation of a private nuisance, Plaintiffs and Class Members have incurred harm and damages and/or personal injuries as described herein.

## COUNT VIII
## NEGLIGENT DISCHARGE OF A CORROSIVE SUBSTANCE

105.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

106.    Defendants had actual or constructive knowledge of the extremely corrosive and dangerous propensities of the drywall at issue in this litigation.

107.    Notwithstanding their actual or constructive knowledge of the corrosive and dangerous propensities of the drywall, Defendants nevertheless designed, manufactured, imported, distributed, delivered, supplied, marketed, inspected, installed, or sold the drywall for use in the homes or other structures owned by Plaintiffs and Class Members.

108.    By causing the sale, distribution, delivery, and/or supply of the drywall under these circumstances, Defendants breached their duty to exercise reasonable care and created a foreseeable zone of risk of injury to Plaintiffs and Class Members.

109.    Defendants likewise breached their duties to Plaintiffs and Class Members by failing to warn about the corrosive and dangerous propensities of the drywall.  Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the property and bodies of Plaintiffs and Class Members.

110.    Plaintiffs and Class Members have incurred damages by virtue of exposure of their property to the defective drywall at issue in this litigation.  Given the defect in the Defendants' drywall, Defendants knew or should have known that their product would cause injury to Plaintiffs and Class Members.

111.    As a direct and proximate result of Defendants' acts and omissions, Plaintiffs and Class Members were harmed and have incurred damages as described herein.  The injuries sustained by Plaintiffs and Class Members are within the foreseeable zone of risk created by Defendants.

## COUNT IX
## UNJUST ENRICHMENT

112.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

113.    Defendants received money as a result of Plaintiffs' and Class Members' purchase of Defendants' defective drywall, or purchase of homes containing this drywall, either directly or through an agent, and Defendants wrongfully accepted and retained these benefits to the detriment of Plaintiffs and Class Members.

114.    Defendants' acceptance and retention of these benefits under the circumstances make it inequitable and unjust for Defendants to retain the benefit without payment of the value to the Plaintiffs and the Class Members.

115.    Defendants, by the deliberate and tortious conduct complained of herein, have been unjustly enriched in a manner which warrants restitution.

**COUNT X**
**VIOLATION OF CONSUMER PROTECTIONAL ACTS**

116.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

117.    This is an action for relief under the various Consumer Protection Acts of the jurisdictions in which affected properties are present, including but not limited to Ala. Code 1975 § 8-19-1, *et seq*. (Alabama Deceptive Trade Practices Act); F.S. § 501.201, *et seq*. (Florida Deceptive and Unfair Trade Practices Act); O.C.G.A. § 10-1-370, *et seq*. (Georgia Uniform Deceptive Trade Practices Act); La R.S. 51:1401, *et seq*. (Louisiana Unfair Trade Practices and Consumer Protection Law); Miss. Code Ann. § 75-24-1, et seq. (Mississippi Consumer Protection Act); and, Tex. Bus. Com. Code Ann. §17.41, *et seq*. (Texas Deceptive Trade Practices - Consumer Protection Act).

118.    The Defendants' acts and omissions as well as their failure to use reasonable care in this matter as alleged in this complaint, including but  not limited to, the knowing misrepresentation or failure to disclose the source, affiliation, origin, characteristics, ingredients,

20

standards and quality of defective drywall constitute violation of the provisions of the Consumer Protection Acts of the relevant states.

119.    Plaintiffs and Class members have suffered actual damages as a result of Defendants' violation of these Consumer Protection Acts and are entitled to relief.

120.    As a direct and proximate cause of Defendants' violations of the Consumer Protection Acts of the relevant states, Plaintiffs and Class Members have incurred harm and damages as described herein.

<u>COUNT XI</u>
**FRAUDULENT MISREPRESENTATION**

121.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

122.    Beginning in 2006, Defendants intentionally and fraudulently misrepresented the fitness of their drywall product to its buyers and distributors through its marketing activities.

123.    In Particular, Defendants intentionally and fraudulently:

a.    Failed to adequately warn about the level of sulfur off-gassing;

b.    Failed to provide full and complete information about corrosive nature of the gasses its product emits;

c.    Provided marketing material that did not adequately disclose the risks that Defendants knew of;

d.    Provided importers, distributors, or consumers information about their product that did not adequately disclose the risks that Defendants knew of; and,

e.    Overstated the quality of their drywall product.

124.    The representations were made by the Defendants with the intent that importers, exporters, distributors and consumers, including Plaintiffs, rely upon them, in willful, wanton,

and reckless disregard for the lack of truthfulness of the representations and with the intent to defraud and deceive Plaintiffs.

125.     Plaintiffs reasonably relied on the fraudulent misrepresentations directly or as third party beneficiaries when purchasing their homes.

<u>**COUNT XII**</u>
**NEGLIGENT MISREPRESENTATION**

126.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

127.     From the time Defendants first tested, studied, researched, evaluated, endorsed, manufactured, marketed and distributed, and up to the present, Defendants made misrepresentations to Plaintiffs and the general public, including but not limited to the misrepresentation that Defendants' drywall was safe, fit, and effective for use in the homes of Class Members.

128.     Defendants owed a duty to Plaintiffs to exercise reasonable care to ensure they did not misrepresent the safety or fitness for use, and failed to exercise that reasonable care and therefore breached their duty.

129.     The Defendants made misrepresentations without any reasonable grounds for believing them to be true, and were in fact, reckless.

130.     The Defendants had a duty to correct these material misstatements because they knew or should have known that they were inaccurate and that others would reasonably rely on them and suffer damages.

131.     These misrepresentations were made directly by Defendants, by sales representatives and other authorized agents of Defendants, and in publications and other written materials directed to their customers including builders, distributors and importers, with the intention of inducing reliance, purchase, and use of their product.

132.    The representations by the Defendants were in fact false, in that their product is not safe, fit, and effective for use in the homes and structures owned by Plaintiffs and Class Members because their drywall has a propensity to emit corrosive gasses.

133.    The representations by Defendants were made with the expectation and intention of inducing reliance upon them and increasing their sale of drywall products.

134.    Plaintiffs reasonably relied on the misrepresentations made by the Defendants to their detriment.

135.    In reliance of the misrepresentations by the Defendants, Plaintiffs were induced to purchase and use Defendants' drywall.

136.    If Plaintiffs had known of the true facts and the facts concealed by the Defendants, Plaintiff would not have used Defendants' product.

137.    The reliance of Plaintiffs upon Defendants' misrepresentations was justified because such misrepresentations were made and conducted by individuals and entities that were in a position to know the true facts.

138.    As a direct, proximate, and foreseeable result of Defendants' negligent misrepresentations, Plaintiff suffered injuries and damages as alleged herein.

<u>COUNT XIII</u>
**FRAUDULENT CONCEALMENT**

139.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

140.    At all relevant times, Defendants knew that their drywall was defective, unreasonably unsafe, and that its risks were understated and its benefits were overstated.

141.    Defendants willfully, intentionally and fraudulently concealed their knowledge from Plaintiffs, Plaintiff's builders, distributors, importers, and the public, and instead knowingly provided false information.

142.    Defendants withheld information that they had a duty to disclose through advertising, marketing materials, sales persons, publications, that their product was fit for its intended use.

143.    Defendants withheld information about the severity of the risks of using their product and their knowledge of the harmful effects.

144.    Defendants withheld information that their product failed to comply with the IBC, and other state and local building codes like other gypsum products available on the market.

145.    The above facts were material and would have been considered important to a reasonable person.

146.    Had the above facts been disclosed, they would have changed Plaintiffs' decision to purchase their affected property or Defendants' product.

147.    Defendants had a duty to disclose the information to Plaintiffs and other consumers.

148.    Defendants had sole access to material facts concerning, and unique and special knowledge and expertise regarding, the dangers and unreasonable risks associated with their gypsum products.

149.    Defendants knew or should have known and expected or should have expected and intended that Plaintiffs and others would rely on the inaccurate information they provided.

150.    As a foreseeable, direct, and proximate result of Defendants' actions and fraudulent concealment, Plaintiff suffered injury.

**COUNT XIV**
**FRAUD**

151.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

152.    Defendants' intentional misrepresentations and concealments constitute fraud under state law and were made with the intent to defraud its distributors and all downstream purchasers, including consumers such as Plaintiffs.

153.    Specifically Defendants intentionally and fraudulently did the following:

a.    In 2006, Defendants received written and verbal complaints from U.S. customers about their defective drywall;

b.    Specifically, Banner Supply Company passed complaints it received from builders and installers to Mike Norris, Defendant Knauf Tianjin's general manager;

c.    Based on information and belief, Mr. Norris contacted the Knauf headquarters in Germany about the complaints received;

d.    Executive level employees of Defendants, including Isabel Knauf who was serving as manager of Knauf's operations in Asia, discussed the complaints and chose to send at least one corporate representative to the United States to meet with one of their larger distributors in Florida, Banner Supply Company;

e.    After confirming that their drywall product was indeed defective and being widely sold primarily in the Southeastern United States, Defendants chose to take no corrective action and instead continued to sell the product to its distributors without any limitation or disclosure regarding the defective nature of their product;

f.  After confirming that their drywall product was defective and being sold in the United States, Defendants struck an indemnification  agreement with Banner Supply Company, one of its distributors, in order to avoid litigation and to encourage continuing sales of the defective product without any limitation or disclosure regarding the defective nature of their product;

g.  Based on information and belief, the terms of the indemnification agreement between Defendants and Banner Supply required both parties to conceal the existence of the deal from government, media, and the public;

h.  After confirming that their drywall product was defective and being sold in the United States, Defendants chose to notify no other distributors or buyers that their drywall was indeed defective; instead, Defendants chose to conceal the defective nature of its product while continuing its marketing and sale of the remaining defective product, estimated to be 55 million pounds, that had been imported from its Tianjin plant in China;

i.  On information and belief each and every advertisement and marketing channel fraudulently omits information about the risks of defective Knauf-manufactured drywall and overstates the benefits;

j.  Defendants failed to disclose that their product was not as safe and effective as other gypsum products sold by other manufacturers;

k. Defendants failed to disclose that the risk of harm associated with their gypsum products was greater than the risk of harm associated with other gypsum products sold by other manufacturers;

l. Defendants failed to disclose that their drywall was not adequately tested;

m. Defendants failed to disclose that testing had revealed unreasonably high risk of damage to homes and personal property;

n. On information and belief, Defendants failed to disclose that Defendants intentionally withheld internal quality tests; and

o. Defendants affirmatively asserted that their drywall was safe and fit for its intended use.

154. Plaintiffs and other consumers were misled by Defendants' affirmative statements or material omissions that provided the fraudulently inaccurate information described above.

155. Defendants had access to these facts, while Plaintiffs did not and were unaware of them and could not reasonably learn of them from an alternative source prior to purchase.

156. The above facts were material to Plaintiffs' decision to either purchase the gypsum product from Defendants' distributors or to purchase the affected property, and they reasonably relied on Defendants' representations either directly or indirectly.

157. As a direct, proximate, and foreseeable result of Defendants' fraud they caused Plaintiff injuries.

## PUNITIVE DAMAGES ALLEGATIONS

158.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

159.    The acts, conduct and omissions of Defendants, as alleged throughout the Complaint were willful and malicious. Defendants committed these acts with a conscious disregard for the rights and safety of Plaintiffs and other consumers and for the primary purpose of increasing Defendants' profits from the sale and distribution of its product. Defendants' outrageous and unconscionable conduct warrants an award of exemplary and punitive damages against Defendants in an amount appropriate to punish and make an example of Defendants.

160.    Prior to the manufacturing, sale, and distribution of its product, Defendants knew that said drywall or sheetrock was in a defective condition as previously described herein and knew that those consumers or home owners would experience and did experience damages due to the corrosive off-gassing.  Further, Defendants, through their officers, directors, managers, and agents, knew that the drywall or sheetrock presented a substantial and unreasonable risk of harm to Plaintiffs or other consumers and Defendants unreasonably subjected all consumers of said drywall or sheetrock to risk of injury or damages.

161.    Despite their knowledge, Defendants, acting through their officers, directors and managing agents, for the purpose of enhancing Defendants' profits, knowingly and deliberately failed to remedy the known defects in their drywall and failed to warn the public, including Plaintiffs of the extreme risk of injury occasioned by said defects inherent in the defective drywall or sheetrock. Defendants and their agents, officers, and directors intentionally proceeded with the manufacturing, sale, distribution, and marketing of drywall or sheetrock knowing these

actions would expose persons to damages in order to advance Defendants' pecuniary interest and monetary profits.

162.    Defendants' conduct was so contemptible that it would be looked down upon and despised by ordinary decent people, and was carried on by Defendants with willful and conscious disregard for the safety of Plaintiff and other consumers, entitling Plaintiff to exemplary damages.

**EQUITABLE AND INJUNCTIVE RELIEF**

163.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

164.    Plaintiffs and Class Members are without adequate remedy at law, rendering injunctive and other equitable relief appropriate.

165.    Plaintiffs and Class Members will suffer irreparable harm if the Court does not render the injunctive relief as set forth herein, and if Defendants are not ordered to recall, rescind, and/or repair the homes and structures owned by Plaintiffs and Class Members.

166.    Plaintiffs demand injunctive and equitable relief and further, that Defendants be ordered to: (1) remediate, repair and/or replace the drywall in the homes and structures upon proof by the Defendants of the feasibility of such remedy or repair; (2) cease and desist from misrepresenting to the Class and the general public that there is no defect in, or danger associated with the drywall; and, (3) institute, at their own cost, a public awareness campaign to alert the Class and general public of the defect and dangers associated with their defective drywall.

167.    Until Defendants' defective drywall has been removed and Plaintiffs' and Class Members' homes are properly remediated, Defendants should provide continued environmental and air monitoring in the homes and structures.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiffs, on behalf of themselves and all others similarly situated demand upon Defendants jointly and severally for:

a.  An order certifying the case as a class action;

b.  An order certifying the Class;

c.  An order appointing Plaintiffs as the Class Representatives;

d.  An order appointing the undersigned as counsel for the Class;

e.  Compensatory damages;

f.  Statutory damages;

g.  Punitive damages;

h.  Pre and post-judgment interest as allowed by law;

i.  Injunctive relief;

j.  An award of attorney's fees as allowed by law;

k.  An award of taxable costs; and

l.  Any and all such further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs individually and on behalf of the Class Members, hereby demand a trial by jury of twelve (12) as to all issues so triable as a matter of right.

/s/ *James V. Doyle, Jr.*

James V. Doyle, Jr.
DOYLE LAW FIRM, PC
2100 Southbridge Pkwy., Suite 650
Birmingham, AL 35209
Tele: 205-533-9500
Fax: 844-638-5812
jimmy@doylefirm.com
*Attorney for Plaintiffs*