## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE-MANUFACTURED       MDL NO. 2047
DRYWALL PRODUCTS LIABILITY       SECTION: L
LITIGATION       JUDGE FALLON
      MAG. JUDGE WILKINSON

THIS DOCUMENT RELATES TO:
ALL CASES

# Special Master's Recommendations
# Concerning the Allocation of Common Benefit Fees
# and the Reimbursement of Shared Expenses and Held Costs

The Court has tasked the undersigned, as Special Master, with the assignment of fairly allocating the funds which are available for common benefit attorneys' fees, shared expenses, and held costs. The Special Master submits these Recommendations in response to that assignment.[1]

## I. The common benefit attorneys' efforts result in a novel and complex settlement.

### A. Thousands of property owners complain about Chinese drywall.

This matter arises from an alleged defect[2] common to thousands of buildings: tainted

---

[1]As will be discussed below, Pretrial Order No. 28 adopted a six-step process for allocating attorneys' fees. In making these Recommendation, the Special Master will rely on (1) documents that are available in the federal record; (2) the record developed in Step Five; and (3) the record developed in Step Six.

[2]The Court previously concluded that Chinese drywall (the subject of this litigation) is defective. *See, e.g.*, R. Doc. 2380 at 64 (*In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 706 F.Supp.2d 655, 690 (E.D. La. 2010)); and R. Doc. 2713 at 15 (*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 2010 WL 1710434 at 7 (E.D. La. 2010)). However, the matter still proceeds against some defendants, and the Special Master need not address the preclusive effect of prior findings upon those defendants.

drywall.  Buildings, of course, have walls and ceilings.  Those walls and ceilings are often made of drywall.  And the principal component of drywall is gypsum.[3]  Gypsum is a mineral; its chemical formula is calcium sulfate dihydrate ($CaSO_4$).[4]  But, since it is usually mined rather than manufactured, gypsum is often tainted by the presence of various other materials.

Beginning in approximately 2004, a shortage of drywall in the United States prompted drywall manufacturers to more aggressively pursue sources of gypsum.[5]  This led them to China.[6]  Unfortunately, undesirable non-gypsum materials tainted the Chinese gypsum.[7]

Knauf[8] and Taishan,[9] two drywall manufacturers, used the Chinese gypsum to manufacture

---

[3]"A drywall panel is composed of a layer of hardened gypsum plaster sandwiched between two layers of paper liner." R. Doc. 2380 at 15 (*In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 706 F.Supp.2d at 660).

[4]*See generally*, R. Doc. 20741 at 11 (*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 2017 WL 1421627 at 5 (E.D. La. 2017)).

[5]*Id.* at 1 (*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 2017 WL 1421627 at 1).

[6]*Id.*

[7]"The Chinese drywall in question has a significantly higher average concentration of strontium and significantly more detectable levels of elemental sulfur. It releases three main gases: (I) hydrogen sulfide (H2S), (ii) carbonyl sulfide (COS), and (iii) carbon disulfide (CS2)." R. Doc. 20741 at 13 (*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 2017 WL 1421627 at 6).

[8]When these Recommendations refer to "Knauf," that term includes The Knauf Entities, which are German-based, international manufacturers of building products, including drywall, whose Chinese subsidiary, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), advertised and sold its Chinese drywall in the United States.

[9]When these Recommendations refer to "Taishan," that term includes The Chinese Defendants in the litigation, including the principal Chinese-based Defendant Taishan, namely, Taishan Gypsum Co. Ltd. ("TG") and its wholly owned subsidiary, Taian Taishan Plasterboard Co., Ltd. ("TTP") (collectively "Taishan" or "Taishan Entities").  Other Chinese-based Defendants include the CNBM Defendants ("CNBM"), comprised of the China National Building Materials Group Corporation, China National Building Materials Company Limited, China National Building Materials & Equipment Import & Export Corporation, and CNBM Forest Products (Canada) Ltd.;

drywall (which later became known as "Chinese drywall").[10]  Both companies sold the drywall to suppliers, who then passed it on to contractors, builders, installers, and property owners.[11]  Over the next few years, Chinese drywall found its way into the walls and ceilings of thousands of American buildings, including homes.  Eventually, many homeowners complained that the tainted drywall caused problems, including "emissions of smelly gasses, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices."[12]  Some homeowners even complained of bodily ailments.[13]

## B.   MDL litigation ensues and the Court appoints a Plaintiffs' Steering Committee.

Property owners began to file suit in both federal and state courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and

---

and the BNBM Defendants ("BNMB"), comprised of Beijing New Building Materials Public Limited Company, and Beijing New Building Material (Group) Co. Ltd.  The relationship of these entities has been the subject of much litigation, but it is not relevant to the Special Master's Recommendations.

   [10]R. Doc. 20741 at 2, 4 (*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 2017 WL 1421627 at 1, 2).

   [11]See, generally, R. Doc. 16570 (*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 2013 WL 499474).

   [12]R. Doc. 20741 at 1 (*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 2017 WL 1421627 at 1).

   [13]R. Doc. 20741 at 1 (*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 2017 WL 1421627 at 1).

manufacturers.[14]  The suits alleged that the above-described problems were caused by defective Chinese drywall.  On June 15, 2009, the Judicial Panel on Multidistrict Litigation transferred the pending federal cases to Judge Eldon Fallon in the Eastern District of Louisiana.[15]

On July 2, 2009, the Court appointed Russ Herman as Plaintiffs' Liaison Counsel.[16]  On July 27, 2009, the Court appointed following attorneys to serve on the Plaintiffs' Steering Committee ("PSC"): Dawn M. Barrios; Daniel E. Becnel, Jr.; Victor Manuel Diaz; Ervin Amanda Gonzalez; Ben Gordon; Hugh P. Lambert; Arnold Levin; Gerald E. Meunier; Jerrold Seth Parker; James Robert Reeves; Christopher Seeger; Bruce William Steckler; and Scott Weinstein.[17]

Over the next four years (until December 31, 2013[18]), the PSC spearheaded a coordinated enterprise which:

•    Filed and served complaints naming 1651 separate entities as defendants;[19]

•    Appeared before the MDL Court on almost 200 occasions;[20]

•    Filed well over 1000 pleadings in the MDL record;[21]

_____

[14]R. Doc. 20741 at 1 (*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 2017 WL 1421627 at 1-2).

[15]R. Doc. 1 (*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 626 F.Supp.2d 1346 (J.P.M.L. 2009).

[16]R. Doc. 21.

[17]R. Doc. 144-1.

[18]The Court currently is only allowing the recovery of attorneys' fees and expenses incurred on or before December 31, 2013.  R. Doc. 17402 (Pretrial Order No. 28(A)).

[19]FC exh. 1-3 (R. Doc. 17700-4).

[20]FC exh. 1-7 (R. Doc. 17700-8).

[21]FC exh. 1-18 (R. Doc. 17700-19).

•      Negotiated the development of a protocol for the inspection of properties and the preservation of evidence;[22]

•      Propounded approximately 250 discovery requests (including notices of deposition);[23]

•      Filed approximately 50 discovery-related motions in the MDL Court;[24]

•      Responded to approximately 150 discovery requests;[25]

•      Employed 34 experts;[26]

•      Countered 20 defense experts;[27]

•      Questioned 210 witnesses under oath, either via deposition or trial testimony, including in London, Frankfurt, and Hong Kong;[28]

•      Propounded 10 FOIA requests;[29]

•      Sought the support of elected officials in their effort to recover on behalf of the claimants;[30] and

•      Prepared for several trials, at least two of which settled on the eve of trial, and three of which proceeded to verdict.

---

[22]R. Doc. 337 (Pretrial Order No. 1(B)).

[23]FC exh. 1-12 (R. Doc. 17700-13).

[24]FC exh 1-16 (R. Doc. 17700-17).

[25]FC exh. 1-13 (R. Doc. 17700-14).

[26]FC exh. 1-19 (R. Doc. 17700-20).

[27]FC exh. 1-20 (R. Doc. 17700-21).

[28]FC exh. 1-17 (R. Doc. 17700-18). See, e.g., *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 894 F.Supp.2d 819, 833 (E.D. La. 2012) (discussing 2011 and 2012 Hong Kong depositions).

[29]FC exh. 1-14 (R. Doc. 17700-15).

[30]FC exh. 1-15 (R. Doc. 17700-16).

Two of the trials that proceeded to verdict were *Germano v. Taishan Gypsum Co., Ltd.*[31] and *Hernandez v. Knauf Gips KG.*[32]  In *Germano*, the Court entered a default judgment against Taishan after a two-day hearing, finding that "the average cost per square foot to repair the *Germano* properties was $86" and the properties at issue were "representative of a cross-section of contaminated homes."[33]  In *Hernandez*, the Court presided over a contested trial, awarding a judgment in favor of plaintiffs "which represented a cost of $81.13 per square foot based on the footprint square footage of the house."[34]

In its *Germano* and *Hernandez* rulings, the Court focused on the importance of remediating the plaintiffs' homes.  In addition to determining the remediation cost, the Court formulated a remediation protocol.[35]  All of this laid the foundation for settlement.

### C.     The PSC enters into nine separate class settlements with hundreds of defendants.

On October 14, 2010, Knauf agreed to participate in a pilot remediation program which "was largely based upon the remediation protocol formulated by the Court in *Hernandez*."[36]  More than

---

[31]Case No. 09-6687.

[32]Case No. 09-6050.

[33]R. Doc. 20741 at 6 (*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 2017 WL 1421627 at 3).

[34]*Id.* at 3 (*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 2017 WL 1421627 at 1).

[35]R. Doc. 2713 at 20-36 (*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 2010 WL 1710434 at 10-18 (E.D. La. 2010)).

[36]R. Doc. 20741 at 3 (*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 2017 WL 1421627 at 2).

2,200 claimants have remediated their homes pursuant to the pilot program.[37]   On December 20, 2011, the PSC and Knauf entered into a class settlement agreement.[38]   The PSC also entered into four additional class settlement agreements with some (but not all) of the "downstream" defendants (*i.e.*, those who had supplied or used Chinese drywall), as well as their insurers.[39]   On February 7, 2013, the Court approved these five settlements.[40]   On January 3, 2013, the PSC entered into four additional settlements involving hundreds of claimants, "the vast majority of whom reside in Virginia."[41]   These became known as "the Virginia settlements."   The Court approved these on July 9, 2013.[42]   All told, there are nine settlements.   Although they are unique, the Court has treated all nine as "inter-related."[43]

The case did not end with the settlements.   For one thing, the settlements themselves required

---

[37]*Id.*

[38]R. Doc. 12061-5.

[39]The four class settlements were with: (1) Interior Exterior Building Supply, LP ("Interior Exterior" or "InEx"); (2) the Banner Entities; (3) L&W Supply Corp. and USG Corp.; and (4) a group of numerous homebuilders, installers, suppliers (the "Global Settlement"). R. Docs. 10033-3, 12258-3, 13375-2, and 14404-2.

[40]R. Doc. 16570 (*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 2013 WL 499474 (2013)).   The Court attributed the settlements to six successive "breakthroughs": (1) the Knauf pilot program; (2) the InEx settlement; (3) the Banner settlement; (4) the Knauf settlement; (5) the L&W settlement; and (6) the "Global Settlement" (i.e., the settlement with hundreds of homebuilders, installers, and suppliers, as well as their insurers).   R. Doc. 16570 at 5-6 (*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 2013 WL 499474 at 2-3).

[41]R. Doc. 16934 at 6.

[42]*Id.*

[43]R. Doc. 20257 at 1.

implementation, which necessitated participation by administrative personnel,[44] individually-retained counsel, the PSC, and the Court.  Furthermore, hundreds of defendants did not participate in the settlements, and the case has proceeded against them.

## II.     The Court decides that it is time to compensate the attorneys.

Even though the case was not over (indeed, it still is not over today), the Court decided to take steps to pay the attorneys for the work that they had done through December 31, 2013.[45]  On January 10, 2014, the Court adopted Pretrial Order No. 28.[46]  The Court noted that the parties had entered into nine class settlements, and that those settlements included funds which could be used to pay attorneys' fees and expenses.  The Court then promulgated a six-step process to determine entitlement to the funds.

•     **Step One: Review of Time and Expenses**

This step actually began early in the MDL.  On July 28, 2009, the Court adopted Pretrial Order No. 9, which governed plaintiffs' attorneys' time and expense submissions.[47]  As is typical in MDL litigation, the Court set guidelines designed to allow attorneys to make a contemporaneous

_____

[44]For instance, the original Knauf Settlement Agreement envisions the employment of a "Settlement Administrator, Special Masters, escrow agents, accountants, pro se attorneys and Ombudsmen."  R. Doc. 16406-3 ¶1.2..  The Court record (especially the monthly status reports) reveals the continuing involvement of these agents in implementing the various settlements.

[45]R. Doc. 17402.

[46]R. Doc.17379.  The Court later amended Pretrial Order No. 28 several times.

[47]R. Doc. 147.

record of common benefit time and expenses to support a later recovery.  The attorneys submitted time and expense records to Philip Garrett, the Court-appointed accountant.  Pretrial Order No. 9 specifically promised the timekeepers confidentiality, stating that the submissions "shall be considered as if under seal."[48]  Mr. Garrett compiled the data and provided the Court summaries on a monthly basis.  Mr. Garrett testified in his deposition that the Court took a proactive approach in vetting the time and expense submissions.  The Court later confirmed this account, stating: "The Court has met monthly with the CPA to review the work performed and the costs expended by those performing common benefit work for the purpose of assuring the accuracy and reasonableness of the attorneys' filings."[49]  Additionally, Pretrial Order No. 28 encouraged attorneys to revisit their previous submissions "to assure that their firm's information recorded is accurate and correct."[50] With respect to pre-December 31, 2013 submissions, this step is complete.


• **Step Two: Submission of Initial Affidavit for Compensation for Common Benefit Time and Reimbursement of Expenses to FC and Identification of Individual Claimants Retained by Individual Counsel**

The Court appointed a seven-member Fee Committee ("FC"): Arnold Levin (as the Chair); Russ M. Herman (as the Co-Chair/Secretary); Dawn M. Barrios; Gerald E. Meunier; Michael J. Ryan; Christopher A. Seeger; and Richard J. Serpe.[51]  The Court directed any attorneys who sought

---

[48]R. Doc. 147 at 2.

[49]R. Doc. 21168 at 5.

[50]R. Doc. 17379 at 3.

[51]*Id.* at 14-15.

common benefit fees or reimbursement of expenses to submit a supporting affidavit to the FC.[52] With respect to pre-December 31, 2013 submissions, this step is complete.

•   **Step Three: Filing of a Joint Fee Petition**

Pretrial Order No. 28 directed the FC to consider the affidavits that were submitted in Step Two, and, after coordinating with the PSC, to prepare and submit a joint fee petition to the Court.[53] On May 16, 2014, the FC and the PSC moved for leave to file their joint petition seeking a global fee and cost award.[54]  The Court granted the motion for leave,[55] and, on May 20, 2014, the pleading was filed.[56]  On April 15, 2016, the FC and the PSC filed an amended joint petition, asking for "a global request for Attorney's Fees and costs reimbursement, which includes both individual claimants' counsel and common benefit counsel, and reimbursement of costs, in the amount of $192,981,363.35."[57]  The Court granted the petition on May 17, 2016.[58]

•   **Step Four: Common Benefit Request for Other Cases**

Pretrial Order No. 28 invited attorneys to request a common benefit assessment for any

---

[52]R. Doc. 17379 at 5.

[53]*Id.* at 7.

[54]R. Doc. 17687-2.

[55]R. Doc. 17699.

[56]R. Doc. 17700.

[57]R. Doc. 20205.

[58]R. Doc. 20257.

Chinese Drywall case or claim not participating as a Class Member or claimant in any of the various Class Action Settlement Agreements.[59]   This provision is not relevant to the Special Master's assignment.

• **Step Five: Establishment of Common Benefit and Individual Fees**[60]

Since the Court had already made the global fee and cost award (Step Three), the next step was to divide the award between common benefit fees and individually-retained counsel fees.[61]   On June 7, 2016, the FC filed its Motion to Determine the Allocation of the Global Fee Award as Between Common Benefit Fees and Individual Counsel's Fees Pursuant to PTO 28(F).[62]   Several attorneys and firms ("Objectors") filed responses, some couched as objections or oppositions, others couched as independent motions to allocate.

In Pretrial Order No. 28(F), the Court had signaled that it was considering appointing a Special Master to aid in the division of the global fee and cost award.[63]   On July 15, 2016, several Objectors filed a motion for the appointment of a Special Master, for a case management order, and

---

[59]R. Doc. 17379 at 8.

[60]In making his Step Six recommendations, the Special Master has relied in part upon evidence produced in the Step Five process.  Therefore, the Special Master will restate the Step Five process in detail at this time.

[61]*Id.*

[62]R. Doc. 20293.  The FC's motion referred to PTO 28(F), which the Court entered on May 25, 2016, and which supplemented Pretrial Order No. 28 in light of the Court's global fee and cost award (made on May 17, 2016).  R. Doc. 20282.

[63]R. Doc. 20282 at 7.  The Court later issued an order clarifying and supplementing the appointment.  R. Doc. 20478.

for the unsealing of certain records.[64]  On July 18, 2016, the Court appointed the undersigned as Special Master "to conduct limited discovery regarding time and expense submissions, procedures, . . . and to make appropriate recommendations regarding these motions and objections."[65]

On July 20, 2016, the Special Master reached out to the involved attorneys to solicit their thoughts on discovery.[66]  This started a process whereby the Special Master received input from the involved attorneys by formal submission or, more often, by email.  This process was detailed in the Special Master record.[67]

Beginning on August 10, 2016, the Special Master periodically circulated detailed status reports to the attorneys.[68]  The August 10 status report invited input concerning pending motions and the scope of discovery.  On September 25, 2016, the Special Master promulgated Special Master Case Management Order No. 1, which addressed outstanding motions, ordered document production, and laid out a framework for depositions.[69]

On October 7, 2016, some Objectors sent a letter to the Special Master requesting more expansive discovery.[70]  On October 28, 2016, the Special Master modified CMO No. 1 in response

---

[64]R. Doc. 20394.

[65]R. Doc. 20410.

[66]SM-16-07-20-0826.

[67]The Special Master transmitted the Special Master record to the Court in conjunction with the Step Five recommendations.  Since his appointment to make recommendations with respect to Step Six, the Special Master has supplemented the Special Master record.  The supplemented record will be transmitted to the Court at the appropriate time.

[68]SM-16-08-10-1257.

[69]SM-16-09-25-1644.

[70]SM-16-10-07-1332-1.

to the Objectors' request, but for the most part held course.[71]  The Special Master's ruling discussed the due process issues inherent in a common benefit determination.   After analyzing the jurisprudence, the ruling culled several principles:

• "A court cannot simply rubber-stamp a Fee Committee's application."[72]

• "A court should only allow limited discovery in fee dispute matters, including issues surrounding the appropriate common benefit in an MDL."[73]

• "A court must be fair to both sides, giving each side equal chances to present the evidence that they have and to make arguments. . . .  Fairness, however, does not equate to entitlement to full-blown discovery, cross-examination, and even an evidentiary hearing."[74]

• "Those objecting to a fee application may or may not be entitled to discover source time sheets."[75]

• "The contributions of the individually retained attorneys (*i.e.*, those not asking for a common benefit award) might have some relevance to the ultimate decision to be made by the Special Master."[76]

---

[71]SM-16-10-28-1739-1.

[72]*Id.* at 12, *citing In re: High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220 (5th Cir. 2008).

[73]*Id.*, *citing In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295 (1st Cir. 1995), *order vacated*, *In re Nineteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 982 F.2d. 603 (1st Cir. 1992); and *In re Genetically Modified Rice Litig.*, 764 F.3d 864 (8th Cir. 2014).

[74]*Id.*, *citing Nineteen Appeals* and *Thirteen Appeals*.

[75]*Id.* at 13, *citing Yamada v. Nobel Biocare Holding AG*, 821 F.3d 1058 (9th Cir. 2016), *order amended and superseded on other grounds*, 825 F.3d 536 (9th Cir. 2016); and *Genetically Modified Rice Litig.*  In *Yamada*, plaintiffs' attorneys in a class action requested that attorneys' fees be awarded against a defendant using the lodestar method.  The Ninth Circuit ordered production of the attorneys' timesheets.  The Special Master ultimately chose to employ a percentage method rather than the lodestar method.  Therefore, the Special Master concluded that the time summaries which have been produced are sufficient under the circumstances.

[76]SM-16-10-28-1739-1 at 13, *citing Thirteen Appeals*.  In fact, some of the effort pursuing non-settling defendants directly contributed to the nine settlements.  The *Germano* trial, for instance,

•      Attorneys may be entitled to a common benefit award even for work done vis-à-vis non-settling defendants if the work is "found to be reasonable and designed to advance the common interest."[77]

On November 14, 2016, the Special Master promulgated Special Master Case Management Order No. 2, which established a protocol for the upcoming depositions.[78]  In December 2016 and January 2017, the attorneys took four depositions: Philip Garrett (Court-appointed accountant);[79] Russ Herman (Plaintiffs' Liaison Counsel, PSC member, and FC Co-Chair/Secretary);[80] Sandra Duggan;[81] and Arnold Levin (PSC member and FC Chair).[82]

In two letters dated February 8 and 15, 2017, one of the Objectors requested additional discovery.[83]  On April 5, 2017, the Special Master denied the requests, citing his reasoning in his October 28, 2016 ruling.[84]

On April 23, 2017, the Special Master issued the Case Management Order Regarding Evidentiary Hearing.[85]  The CMO required an exchange of witness and exhibit lists, and furthermore

_____

targeted Taishan (a non-settling defendant), but helped set the stage for the settlements with other defendants.

[77]SM-16-10-28-1739-1 at 14.

[78]SM-16-11-14-1746-1.

[79]FC exh. 29.

[80]FC exhs. 5-8 and 5-13.

[81]FC exh. 5-18.

[82]FC exh. 5-1.

[83]SM-17-02-08-1650-1 and SM-17-02-15-1521-1.

[84]SM-17-04-05-1653-1.

[85]SM-17-04-23-2058-1.

set forth the rules governing the hearing. In the interest of efficiency, the Special Master encouraged the use of declarations in lieu of live testimony.[86]

On May 31 and June 1, 2017, the Special Master conducted an evidentiary hearing.[87] The Special Master stated that the entire MDL record would be considered part of the factual record (so that, in briefing the matter, the parties could refer to the MDL record to establish what the attorneys did or did not do for the common benefit).[88] The attorneys submitted approximately 750 exhibits into evidence. The following witnesses testified:

• Dawn Barrios, member of the PSC, testified concerning the work that she did for her individual clients.

• Luis Gonzales, a claimant represented by C. David Durkee, testified that concerning the circumstances surrounding his claim, including the hiring of his own contractor to remediate his home, and his recovery pursuant to Option 2 of the Knauf settlement.

• Jake Woody, senior counsel for BrownGreer (settlement administrator for the MDL settlements) testified concerning BrownGreer's accounting of the settlement funds.

• Kerry Miller, counsel for Knauf; testified concerning the circumstances surrounding the Knauf settlement.

• Russ Herman, who has served as the Plaintiffs' Liaison Counsel, a PSC member, and the FC Co-Chair/Secretary, testified concerning the PSC's conduct of the litigation and the FC's suggested allocation.

• Eric Hoaglund, an Objector; testified concerning the work he did for his individual clients.

• C. David Durkee, an Objector; testified concerning the work he did for his individual clients.

On July 14, 2017, Objectors and the FC submitted post-hearing briefs (Objector James V.

_____

[86]*Id*. at 2.

[87]*See* Transcript of the Testimony of Fee Hearing, Day 1 (May 31, 2017); and Transcript of the Testimony of Fee Hearing, Day 2 (June 1, 2017).

[88]Transcript of the Testimony of Fee Hearing, Day 2 at 344 (June 1, 2017).

Doyle, Jr. filed his own brief).

On September 12, 2017, the Special Master filed his Step Five recommendations.[89]   The Special Master thereafter transmitted the entire record of the Step Five proceedings to the Court. On January 31, 2018, the Court issued its Order and Reasons Setting Common Benefit Fees,[90] thereby concluding Step Five.

• **Step Six: Common Benefit Fee Allocation**

Pretrial Order No. 28 next laid out the process for the allocation of common benefit fees and reimbursement of reasonable expenses (Step Six).[91]   This process envisions that, before the Court makes its own determination, it will have the benefit of recommendations from the FC and from a Special Master.  The Court has explained the philosophy behind this approach in a law review article on the subject:

> After the total common benefit fund is established, a mechanism or procedure must be devised to determine the proper distribution of the fund among those attorneys who did the common benefit work. It is helpful for the transferee court to get input from the plaintiffs' attorneys who occupied leadership roles, those who actually did the work both in the MDL and the state courts, and a third party, someone outside of this group, who can bring an objective perspective to the issue. But in the end, it is the transferee court's responsibility to set the common benefit fee and determine how it is to be distributed.[92]

---

[89]R. Doc. 20950.

[90]R. Doc. 21168.

[91]R. Doc. 17979 at 9.

[92]Eldon E. Fallon, *Common Benefit Fees in Multidistrict Litigation*, 74 La. L. Rev. 371, 387 (2014).

On July 3, 2018, the FC filed its recommendation.[93]  In reaching its recommendation, the FC considered time submissions as well as Initial Affidavits and Second Affidavits filed by firms claiming common benefit funds.  The FC also conducted interviews of the firms.

Many of the firms filed objections to the FC's recommendation.  The Court then appointed the undersigned as Special Master, with the task of making an independent recommendation for the allocation of fees and reimbursement of expenses.[94]

On August 22, 2018, the Special Master contacted all known interested firms, asking whether additional "discovery is necessary in light of the record that has already been developed (including but not limited to the record that was developed in dividing the fund between individually-retained counsel and common benefit counsel)."[95]  Only two firms requested discovery.[96]  On September 25, 2018, the Special Master ordered the production of the Second Affidavits, but denied the discovery requests in all other respects.[97]  On October 12, 2018, the Court adopted the Special Master's discovery ruling.[98]  One of the firms seeking discovery subsequently filed a motion for reconsideration,[99] but the Court has not yet acted upon the motion.

The Special Master allowed the firms to submit supplemental memoranda concerning the

---

[93]R. Doc. 21455.  One member of the FC dissented.

[94]R. Docs. 21702 and 21777.

[95]SM-18-08-22-1123.

[96]SM-18-08-28-1542; SM-08-29-0905-1; and 18-08-29-1346.

[97]R. Doc. 21798.

[98]R. Doc. 21851.

[99]R. Doc. 21860.

merits of the allocation issue.[100]  On October 24, 2018, the Special Master informed the firms that the record was closed.[101]

## III.   Pretrial Order No. 28 tethers allocation to "the relative contribution of each common benefit attorney."

In Pretrial Order No. 28, the Court directed the FC to consider several factors in allocating common benefit fees.  Presumably the Court intended the Special Master to employ the same factors in arriving at a recommendation.

Although Pretrial Order No. 28 discusses various factors, it makes clear that all of these factors are designed to achieve a single objective: "The over-arching guideline . . . is to consider is the relative contribution of each common benefit attorney to the outcome of the litigation."[102]  The Court has explained its rationale in previous cases:

> In a case of this kind, not all types of work are created equal. Hours spent taking depositions, participating in hearings, or trials, actively participating in developing the appropriate litigation strategies and tactics (through moot court presentations or similar practices), drafting briefs, actively participating in Court conferences, arguing motions, negotiating with opposing counsel to reach a settlement, and actively managing and organizing the administrative aspects of the case are some of the more significant types of work that a case of this sort requires and deserves the most recognition. This, of course, is not the only type of work that such a case requires. Documents must be reviewed, categorized, and analyzed; e-mails must be read and responded to; claimants must be kept advised; meetings must be attended and in general the litigation must be monitored. This work, while necessary and often time consuming does not deserve equal

---

[100]SM-18-09-21-1213; SM-18-09-21-1218; and SM-18-10-19-1021.

[101]SM-18-10-24-1619.

[102]R. Doc. 17379 at 9-10.

treatment when allotting fees.[103]

Because "not all types of work are created equal," the Court has rejected using a pure lodestar analysis in allocating common benefit fees.  "[W]hen the focus is on the allocation of th[e] fee the lodestar analysis is incomplete because it is necessary to drill down on the hours and prioritize them, consistent with the facts of each MDL."[104]  In other words, the first step is to allocate the fee based on a qualitative analysis.  Only after the qualitative analysis is complete should the lodestar be referenced to ensure that the result is not "grossly unfair."[105]

In light of the above, the Court has provided the following guidelines as a means to qualitatively analyze common benefit contributions:

• **The *Johnson* factors**

Pretrial Order No. 28 states: "The *Johnson* factors are applicable to this litigation and should be considered in addition to other matters considered by the courts to evaluate fee allocations."[106] Pretrial Order No. 28 then lists the following as the criteria that should be considered:

  o   The time and labor required

  o   The novelty and difficulty of the questions

  o   The skill requisite to perform the legal service properly

  o   The preclusion of other employment by the attorney due to acceptance of the case

---

[103]*Turner v. Murphy Oil USA, Inc*., 582 F.Supp.2d 797, 810-11 (E.D. La. 2008).

[104]*In re Vioxx Prods. Liab. Litig*., 802 F.Supp.2d 740, 773 (E.D. La. 2011).

[105]*Id.*

[106]R. Doc. 17379 at 10.

○     The customary fee

○     Whether the fee is fixed or contingent

○     Time limitations imposed by the client or the circumstances

○     The amount involved and the results obtained

○     The experience, reputation, and ability of the attorneys

○     The "undesirability" of the case

○     The nature and length of the professional relationship with the client

○     Awards in similar cases[107]

These twelve factors originated in the case of *Johnson v. Georgia Highway Express, Inc.*[108] In *Johnson*, plaintiffs filed a class action requesting various forms of relief plus attorneys' fees. Plaintiffs won on the merits. With respect to attorneys' fees, plaintiffs requested $30,145.50, but the district court only awarded $13,500.00. Plaintiffs appealed, and the Fifth Circuit vacated and remanded. Notably, the issue on appeal was how much of an aggregate attorneys' fee was justified. The issue was not, as here, the appropriate allocation of fees among the attorneys. Because of this, the Fifth Circuit included several factors that, while they apply to *aggregate* attorneys' fee awards, might not apply to an *allocation* of attorneys' fees. Indeed, some of the factors may "cancel out" since they apply equally to all attorneys seeking to participate in the common benefit (for instance, the undesirability of the case).

---

[107]*Id.* at 10-11.

[108]488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds*, *Blanchard v. Bergeron*, 489 U.S. 87, 109 S.Ct. 939 (1989).

- **Other special considerations**

One of the objectives that the Court has expressed is to ensure that none of the firms "pad" their hours with duplicate work or make-work.[109]  Pretrial Order No. 28 lists some rules designed to achieve this objective:

- ○ Participating attorneys will not be compensated for work performed without authorization by Lead and/or Liaison Counsel or appropriate state court actions.

- ○ Monitoring and review work not related to ongoing assignments is not compensable.

- ○ Where work was performed by contract lawyers, those counsel are required to disclose the salary/wage of such contract lawyers to avoid paying windfall profits to such counsel.[110]

- **Second Affidavit factors**

Pretrial Order No. 28 provided a means by which the firms could demonstrate their "relative contribution . . . to the outcome of the litigation" – the Second Affidavit.[111]  The Court devised a template for an affidavit for each firm to complete.  A review of the topics to be addressed reveals that the Second Affidavit provides a comprehensive overview of the firm's common benefit claim:

- ○ The extent to which each common benefit firm made a substantial contribution to the outcome of the litigation

- ○ The consistency quantum, duration, and intensity of each firm's commitment to the litigation

- ○ The level of partner participation by each firm

---

[109]*In re Vioxx Prods. Liab. Litig.*, 802 F.Supp.2d 740, 772-73 (E.D. La. 2011).

[110]R. Doc. 17379 at 11.

[111]*Id.*

○　　Membership and leadership on the PSC

○　　Participation and leadership in discovery (motions, depositions)

○　　Participation and leadership in law and briefing matters

○　　Participation and leadership in science and experts

○　　Participation and leadership in document review

○　　Activities surrounding trials of individual Chinese Drywall claimants, including bellwether trials and non-MDL trials that impacted proceedings on a common benefit level (identify the claimant, docket number, the venue and outcome of each trial)

○　　Participation and leadership in settlement negotiations, drafting of settlement documentation and closing papers, and administration of settlement agreements (excluding individual representations)

○　　The jurisdiction in which non-MDL common benefit work occurred

○　　Leadership positions on regular committees engaged in common benefit work

○　　Participation in ongoing activities, such as the FC, Settlement Claims Administration, Court Appointed Committees (e.g. Settlement Allocation Committees, Claims Administration Committee, FC, etc.), that are intended to provide common benefits

○　　Whether counsel was involved in the Chinese Drywall litigation prior to the JPMDL, and the time and expense incurred during such time that was for common benefit

○　　Whether counsel made significant contributions to the funding of the litigation[112]

○　　Those PSC members or committee members whose commitment to the litigation did not ebb

---

[112]Some of the firms have suggested that the Special Master include as part of the common benefit a factor based upon the funds that a firm has advanced in support of the litigation. *See*, *e.g.*, *Turner v. Murphy Oil USA, Inc.*, 582 F.Supp.2d 797, 809 (E.D. La. 2008). The Special Master here has taken into account, on a firm-by-firm basis, financial contributions in determining the appropriate common benefit fee. But the Special Master has not assigned a specific across-the-board factor. The Special Master's concern is that imposing an inelastic model would unfairly penalize firms whose contributions to the common benefit are disproportionately non-financial.

○   A certification by a partner in the firm seeking to recover common benefit fees and costs setting forth all sources and amounts of any other previous payments received from a Chinese Drywall claimant or other sources (broken down to identify amounts paid for fees and amounts paid for costs)

○   Any other relevant factors[113]

Of course, the Second Affidavits represent the various firms' own positions concerning their contributions to the common benefit; it is possible that some or all of the Second Affidavits might be mistaken in some way.  This is why Pretrial Order No. 28 gave the FC an opportunity to review the Second Affidavits, to interview the various firms, and to submit a recommendation based upon the FC's appreciation of the facts.

## IV.   Firm-by-firm analysis and recommendations.

The Special Master has reviewed the Second Affidavits, the FC's recommendation (which includes the FC's accounts of the relative common benefit contribution of each firm), the various filed objections, and the supplemental memoranda submitted by the various firms.  For the most part, the FC has done a fair job of supplying a summary of each firm's place in the litigation.  The Special Master will not attempt to restate these summaries in the analysis below, but will instead supplement the summaries by relying on the other materials that the firms have provided.

•   **Allison Grant, P.A.**

○   **Assessments**

This firm has contributed no assessments.  Therefore, this firm is not entitled to reimbursement of any assessments.

_____

[113]R. Doc. 17379 at 12-13.

○ **Held costs**

This firm is not entitled to reimbursement of any held costs.

○ **Approved time**

This firm has devoted 85.00 approved hours toward the common benefit.

○ **Lodestar**

Using the firm's hourly rates at the inception of litigation, the firm's lodestar is $29,750.00. Using the firm's 2013 hourly rates, the firm's lodestar is $29,750.00.[114] Using a blended rate, the firm's lodestar is $29,750.00.

○ **Common benefit contribution**

This firm is located in Boca Raton, Florida. This firm reports that it made the following nonexclusive common benefit contributions:  working with Florida governmental authorities to develop inspection protocols; communicating with home inspectors, appraisers, and realtors; reviewing and proposing changes to various documents; coordinating with the PSC concerning various declaratory actions; working with Florida county officials to reduce property taxes for claimant property owners; coordinating with the PSC concerning issues arising from the cancellation of homeowner's insurance; coordinating with the PSC and contractors to implement the Pilot Program, including coordinating with Benchmark Inspections and Moss Contractors; researching legal issues surrounding standing, foreclosures, abandoned units, condominium associations, and statutes of limitations; participating in home inspections and depositions of Gary Carroll and Robert Block, who were the Banner class representatives; and serving as co-counsel for Eleanor Aguilar, the first claimant to participate in the Pilot Program.

○ **Other comments**

None.

○ **Special Master's recommendation**

The Special Master recommends that this firm receive: $0.00 for reimbursement of assessments; $0.00 for reimbursement of held costs; and $29,000.00 for common benefit fee.

---

[114]The firm did not increase its hourly rates from the inception of the litigation through 2013.

- **Alters Law Firm, P.A. a/k/a The Justin Grosz Firm, P.A.**

  ○ **Assessments**

  This firm has contributed $50,000.00 in assessments.  Of that amount, this firm has already been reimbursed $40,000.00.  This firm is entitled to reimbursement of the balance in the amount of ($50,000.00 - $40,000.00 =) $10,000.00.

  ○ **Held costs**

  This firm is not entitled to reimbursement of any held costs.

  ○ **Approved time**

  This firm has devoted 657.50 approved hours toward the common benefit.

  ○ **Lodestar**

  Using the firm's hourly rates at the inception of litigation, the firm's lodestar is $316,675.00.   Using the firm's 2013 hourly rates, the firm's lodestar is $316,675.00.[115]  Using a blended rate, the firm's lodestar is $316,675.00.

  ○ **Common benefit contribution**

  This firm was formerly known as Alters Boldt Brown Rash & Culmo, P.A., and is located in Miami, Florida.  The firm's efforts were led by Jeremy Alters.  Mr. Alters served as "Of Counsel" to the PSC until June 2010. Mr. Alters served as chair or co-chair of the Government Relations/Chinese Drywall Political Support Committee and was also appointed by the Court to the State-Federal Coordination Committee.  Bob Brown served on the Discovery and Standards Committee.  In the Spring of 2010, this firm entered into a co-counsel agreement with Baron & Budd, P.C.  The firm's participation with the PSC and its committees cease by June 2010.  The firm reports that it made the following nonexclusive common benefit contributions: discovery (principally concerning Banner); government relations; meeting with experts and developing a program to "fingerprint" drywall chemically for identification; conducting home inspections and drywall sampling; preparing for expert depositions; reviewing documents; locating a German translator; preparing and filing class and individual complaints; assisting in the preparation for bellwether trials; and arguing for the creation of the MDL.

---

[115]The firm did not increase its hourly rates from the inception of the litigation through 2013.

○ **Other comments**

In its recommendation, the FC discussed certain disciplinary actions that the Supreme Court of Florida has taken against Jeremy Alters. The Special Master takes no position on whether this should affect the award herein.

○ **Special Master's recommendation**

The Special Master recommends that this firm receive: $10,000.00 for reimbursement of assessments; $0.00 for reimbursement of held costs; and $175,000.00 for common benefit fee.

• **Anderson Kill, P.C.**

○ **Assessments**

This firm has contributed no assessments. Therefore, this firm is not entitled to reimbursement of any assessments.

○ **Held costs**

This firm is entitled to reimbursement of held costs in the amount of $20,627.57.

○ **Approved time**

This firm has devoted 4,180.83 approved hours toward the common benefit.

○ **Lodestar**

Using the firm's hourly rates at the inception of litigation, the firm's lodestar is $1,748,342.65. Using the firm's 2013 hourly rates, the firm's lodestar is $1,748,342.65.[116] Using a blended rate, the firm's lodestar is $1,748,342.65.

○ **Common benefit contribution**

This firm is based in New York City, New York. It began work on this litigation in the fall of 2009 when the WCI Chinese Drywall Trust ("the Trust") retained the firm to represent it. The firm's efforts have been led by Robert Horkovich. The firm has received $344,539.34 ($285,000.00 in fees and $59,539.34 in costs) in payment from the Trust. The firm reports that it made the following nonexclusive common benefit

---

[116]The firm did not increase its hourly rates from the inception of the litigation through 2013.

contributions: participating in the Pate Action, a liability insurance coverage lawsuit; participating in three global mediations; briefing, arguing, and participating in discovery regarding various insurance issues; coordinating with RSM McGladrey to review, approve, and process the claims of homeowners; and participating in non-MDL litigation in an attempt to preserve the central role of the MDL.

○   **Other comments**

None.

○   **Special Master's recommendation**

The Special Master recommends that this firm receive: $0.00 for reimbursement of assessments; $20,627.57 for reimbursement of held costs; and $300,000.00 for common benefit fee.

•   **Aronfeld Trial Lawyers, P.A.**

○   **Assessments**

This firm has contributed $10,000.00 in assessments.  Of that amount, this firm has already been reimbursed $8,000.00.  This firm is entitled to reimbursement of the balance in the amount of ($10,000.00 - $8,000.00 =) $2,000.00.

○   **Held costs**

This firm is entitled to reimbursement of held costs in the amount of $3,431.06.

○   **Approved time**

This firm has devoted 112.95 approved hours toward the common benefit.

○   **Lodestar**

Using the firm's hourly rates at the inception of litigation, the firm's lodestar is $44,995.00.  Using the firm's 2013 hourly rates, the firm's lodestar is $44,995.00.[117] Using a blended rate, the firm's lodestar is $44,995.00.

---

[117]The firm did not increase its hourly rates from the inception of the litigation through 2013.

○    **Common benefit contribution**

This firm is located in Coral Gables, Florida.  The firm's lead lawyer is Spencer Aronfeld.  The firm reports that it made the following nonexclusive common benefit contributions: conducting two town meetings in Florida to discuss Chinese drywall issues with residents; and inspecting a warehouse where drywall was stored in Virginia.

○    **Other comments**

On July 3, 2018, a majority of the FC filed its recommendation concerning the allocation of the common benefit.[118]  The majority of the FC recommended that this firm receive a common benefit fee in the amount of $0.00.  On July 6, 2018, the Court entered an order  stating the "anyone having any objections to [the majority of the FC's recommendations] shall file their objections with the Court no later than Friday, July 20, 2018 at 5:00 p.m. central standard time."[119]  This firm did not timely file an objection.  The Special Master infers from this silence that this firm agrees that the proposed common benefit fee is reasonable.[120]  After conducting an independent review,[121] and taking into consideration all of the circumstances, especially the relative contributions of the various firms, the Special Master agrees that this proposed common benefit fee is reasonable.

○    **Special Master's recommendation**

The Special Master recommends that this firm receive: $2,000.00 for reimbursement of assessments; $3,431.06 for reimbursement of held costs; and $4,500.00 for common benefit fee.

---

[118]R. Doc. 21455.

[119]R. Doc. 21482.

[120]It is noteworthy that no member of this firm served on the FC.  Therefore, the FC had no financial incentive to overstate this firm's common benefit contribution.

[121]The Special Master takes seriously the Fifth Circuit's admonition that a court "has an independent duty under Federal Rule of Civil Procedure 23 to the class and the public to ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel," and therefore a court must not "merely 'ratify a pre-arranged compact.'"  *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d at 227, 228 (citations omitted).

- **Aylstock, Witkin, Kreis & Overholtz, PLLC**

  ○ **Assessments**

     This firm has contributed $10,000.00 in assessments.  Of that amount, this firm has already been reimbursed $8,000.00.  This firm is entitled to reimbursement of the balance in the amount of ($10,000.00 - $8,000.00 =) $2,000.00.

  ○ **Held costs**

     This firm is not entitled to reimbursement of any held costs.

  ○ **Approved time**

     This firm has devoted no approved hours toward the common benefit.

  ○ **Lodestar**

     Since this firm has devoted no approved hours toward the common benefit, this firm's lodestar is $0.00.

  ○ **Common benefit contribution**

     None.

  ○ **Other comments**

     On July 3, 2018, a majority of the FC filed its recommendation concerning the allocation of the common benefit.[122]  The majority of the FC recommended that this firm receive a common benefit fee in the amount of $0.00.  On July 6, 2018, the Court entered an order  stating the "anyone having any objections to [the majority of the FC's recommendations] shall file their objections with the Court no later than Friday, July 20, 2018 at 5:00 p.m. central standard time."[123]  This firm did not timely file an objection.  The Special Master infers from this silence that this firm agrees that the proposed common benefit fee is reasonable.[124]   After conducting an

---

[122]R. Doc. 21455.

[123]R. Doc. 21482.

[124]It is noteworthy that no member of this firm served on the FC.  Therefore, the FC had no financial incentive to overstate this firm's common benefit contribution.

independent review,[125] and taking into consideration all of the circumstances, especially the relative contributions of the various firms, the Special Master agrees that this proposed common benefit fee is reasonable.

○    **Special Master's recommendation**

The Special Master recommends that this firm receive: $2,000.00 for reimbursement of assessments; $0.00 for reimbursement of held costs; and $0.00 for common benefit fee.

•    **Barrios, Kingsdorf & Casteix, L.L.P.**

○    **Assessments**

This firm has contributed $700,000.00 in assessments.  Of that amount, this firm has already been reimbursed $560,000.00.   The firm would have been entitled to reimbursement of ($700,000.00 - $560,000.00 =) $140,000.00, but the firm has donated $7,142.86 to the American Association for Justice as a non-reimbursable expense.  This firm is entitled to reimbursement of the balance in the amount of ($700,000.00 - $560,000.00 - $7,142.86 =) $132,857.14.

○    **Held costs**

This firm is entitled to reimbursement of held costs in the amount of $70,452.96.

○    **Approved time**

This firm has devoted 7,964.30 approved hours toward the common benefit.

○    **Lodestar**

Using the firm's hourly rates at the inception of litigation, the firm's lodestar is $3,126,242.50.   Using the firm's 2013 hourly rates, the firm's lodestar is $3,667,232.00.  Using a blended rate, the firm's lodestar is $3,396,738.75.

---

[125]The Special Master takes seriously the Fifth Circuit's admonition that a court "has an independent duty under Federal Rule of Civil Procedure 23 to the class and the public to ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel," and therefore a court must not "merely 'ratify a pre-arranged compact.'" *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d at 227, 228 (citations omitted).

○　　**Common benefit contribution**

This firm is located in New Orleans, Louisiana. The firm's efforts in this litigation were led by Dawn Barrios (senior partner), with the help of Bruce Kingsdorf (senior partner) and Zachary Wool (associate, now junior partner). Ms. Barrios served on the PSC. Ms. Barrios also served on the following committees: State Federal Committee (Chair), the FC, Discovery-Written Committee (Co-Chair), Discovery Deposition Committee, Research and Collection of Standards Committee (Co-Chair), LA Law Committee, Witness Development Committee (Co-Chair), Administration & Depository Committee, Case Tracking Committee, Public Relations Committee, and Trial & Trial Package Committee. Mr. Kingsdorf served on the Bankruptcy & Financial Research Committee, Discovery-Written Committee, Law-Overall and MDL Committee, and LA Law Committee. This firm reports that it made the following common benefit contributions: commenting on proposed pretrial orders; helping set up databases; assisting with the branding of trial exhibits, working with BrownGreer and Garretson; working as a liaison between the MDL and CPSC; being on all trial teams; assisting in the selection and preparation of plaintiffs for depositions and trials; briefing and preparing pleadings; devising the damages model used in *Germano* and *Hernandez*; communicating with individually-retained counsel at the request of Lead Counsel; conducting and assisting with discovery; vetting damage experts; reviewing documents, including those associated with the *North River* trial; and coordinating with Richard Serpe's efforts in the Virginia litigation.

○　　**Other comments**

None.

○　　**Special Master's recommendation**

The Special Master recommends that this firm receive: $132,857.14 for reimbursement of assessments; $70,452.96 for reimbursement of held costs; and $2,750,000.00 for common benefit fee.

•　　**Becnel Law Firm, LLC**

○　　**Assessments**

This firm has contributed $700,000.00 in assessments. Of that amount, this firm has already been reimbursed $560,000.00. The firm would have been entitled to reimbursement of ($700,000.00 - $560,000.00 =) $140,000.00, but the firm has donated $7,142.86 to the American Association for Justice as a non-reimbursable expense. This firm is entitled to reimbursement of the balance in the amount of ($700,000.00 - $560,000.00 - $7,142.86 =) $132,857.14.

○ **Held costs**

This firm is entitled to reimbursement of held costs in the amount of $27,243.80.

○ **Approved time**

This firm has devoted 2,834.85 approved hours toward the common benefit.

○ **Lodestar**

Using the firm's hourly rates at the inception of litigation, the firm's lodestar is $1,320,120.00.  Using the firm's 2013 hourly rates, the firm's lodestar is $1,320,120.00.[126]  Using a blended rate, the firm's lodestar is $1,320,120.00.

○ **Common benefit contribution**

This firm is located in Reserve, Louisiana.  Its common benefit efforts have been led by Daniel Becnel, Jr. (the founding attorney), Salvadore Christina, Jr., Toni Becnel, Christopher Becnel, and Matthew Moreland.  Daniel Becnel has served as a member of the PSC, Discovery-Written Committee (Co-Chair), Expert Science (PI) Committee (Chair), Inspections Committee (Co-Chair), New Defendants Committee (Co-Chair), Research and Collection of Standards Committee (Co-Chair), Public Relations Committee, Remediation and Release Committee, Trial and Trial Package Committee, and Witness Development Committee.  Toni Becnel has served on the Government Relations Committee.  Salvadore Christina has served on the Discovery-Written Committee, Inspections Committee, and Insurance Committee.  Matthew Moreland has served on the Discovery-Written Committee, the Inspections Committee, the Insurance Committee, the Law (Overall and MDL) Committee, and the Research and Collection of Standards Committee.  This firm reports that it made the following nonexclusive common benefit contributions: filing the first Chinese drywall lawsuit in Louisiana, after which it moved to form the MDL; arguing before the JPML panel in favor of MDL status; at an early stage, inspecting homes and cataloguing drywall markings; attending court hearings, trials, depositions, and PSC meetings; coordinating with federal and state officials; coordinating with others to conduct town hall meetings; working with plaintiffs for the InEx trial; identifying and vetting various experts; serving as lead attorneys for the settlement of Sean Payton's self-remediation; and disseminating information to the public through public service announcements and the news media.

○ **Other comments**

None.

---

[126]The firm did not increase its hourly rates from the inception of the litigation through 2013.

○ **Special Master's recommendation**

The Special Master recommends that this firm receive: $132,857.14 for reimbursement of assessments; $27,243.80 for reimbursement of held costs; and $1,000,000.00 for common benefit fee.

• **Bencamo & Associates**

○ **Assessments**

This firm has contributed $10,000.00 in assessments. Of that amount, this firm has already been reimbursed $8,000.00. This firm is entitled to reimbursement of the balance in the amount of ($10,000.00 - $8,000.00 =) $2,000.00.

○ **Held costs**

This firm is not entitled to reimbursement of any held costs.

○ **Approved time**

This firm has devoted no approved hours toward the common benefit.

○ **Lodestar**

Since this firm has devoted no approved hours toward the common benefit, this firm's lodestar is $0.00.

○ **Common benefit contribution**

None.

○ **Other comments**

On July 3, 2018, a majority of the FC filed its recommendation concerning the allocation of the common benefit.[127] The majority of the FC recommended that this firm receive a common benefit fee in the amount of $0.00. On July 6, 2018, the Court entered an order stating the "anyone having any objections to [the majority of the FC's recommendations] shall file their objections with the Court no later than Friday, July 20, 2018 at 5:00 p.m. central standard time."[128] This firm did not timely

---

[127]R. Doc. 21455.

[128]R. Doc. 21482.

file an objection.  The Special Master infers from this silence that this firm agrees that the proposed common benefit fee is reasonable.[129]   After conducting an independent review,[130] and taking into consideration all of the circumstances, especially the relative contributions of the various firms, the Special Master agrees that this proposed common benefit fee is reasonable.

    ○    **Special Master's recommendation**

The Special Master recommends that this firm receive: $2,000.00 for reimbursement of assessments; $0.00 for reimbursement of held costs; and $0.00 for common benefit fee.

•    **Berrigan, Litchfield, Schonekas, Mann & Traina LLC**

    ○    **Assessments**

This firm has contributed $10,000.00 in assessments.  Of that amount, this firm has already been reimbursed $8,000.00.  This firm is entitled to reimbursement of the balance in the amount of ($10,000.00 - $8,000.00 =) $2,000.00.

    ○    **Held costs**

This firm is not entitled to reimbursement of any held costs.

    ○    **Approved time**

This firm has devoted 17.25 hours toward the common benefit.

    ○    **Lodestar**

Using the firm's hourly rates at the inception of litigation, the firm's lodestar is $3,450.00.  Using the firm's 2013 hourly rates, the firm's lodestar is $3,450.00.[131]

---

[129]It is noteworthy that no member of this firm served on the FC.  Therefore, the FC had no financial incentive to overstate this firm's common benefit contribution.

[130]The Special Master takes seriously the Fifth Circuit's admonition that a court "has an independent duty under Federal Rule of Civil Procedure 23 to the class and the public to ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel," and therefore a court must not "merely 'ratify a pre-arranged compact.'" *In re High Sulfur Content Gasoline Prods. Liab. Litig*., 517 F.3d at 227, 228 (citations omitted).

[131]The firm did not increase its hourly rates from the inception of the litigation through 2013.

Using a blended rate, the firm's lodestar is $3,450.00.

○   **Common benefit contribution**

This firm is located in New Orleans, Louisiana. Its participation in the common benefit effort concluded in April 2010. John Litchfield, a partner in the firm, has served on the Discovery-Written Committee. The firm reports that it made the following nonexclusive common benefit contribution: causing a series of articles to be published concerning Chinese drywall.

○   **Other comments**

On July 3, 2018, a majority of the FC filed its recommendation concerning the allocation of the common benefit.[132] The majority of the FC recommended that this firm receive a common benefit fee in the amount of $900.00. On July 6, 2018, the Court entered an order stating the "anyone having any objections to [the majority of the FC's recommendations] shall file their objections with the Court no later than Friday, July 20, 2018 at 5:00 p.m. central standard time."[133] This firm did not timely file an objection. The Special Master infers from this silence that this firm agrees that the proposed common benefit fee is reasonable.[134] After conducting an independent review,[135] and taking into consideration all of the circumstances, especially the relative contributions of the various firms, the Special Master agrees that this proposed common benefit fee is reasonable.

○   **Special Master's recommendation**

The Special Master recommends that this firm receive: $2,000.00 for reimbursement of assessments; $0.00 for reimbursement of held costs; and $900.00 for common benefit fee.

---

[132]R. Doc. 21455.

[133]R. Doc. 21482.

[134]It is noteworthy that no member of this firm served on the FC. Therefore, the FC had no financial incentive to overstate this firm's common benefit contribution.

[135]The Special Master takes seriously the Fifth Circuit's admonition that a court "has an independent duty under Federal Rule of Civil Procedure 23 to the class and the public to ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel," and therefore a court must not "merely 'ratify a pre-arranged compact.'" *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d at 227, 228 (citations omitted).

- **Bruno & Bruno, LLP**

  ○ **Assessments**

    This firm has contributed $10,000.00 in assessments.  Of that amount, this firm has already been reimbursed $8,000.00.  This firm is entitled to reimbursement of the balance in the amount of ($10,000.00 - $8,000.00 =) $2,000.00.

  ○ **Held costs**

    This firm is entitled to reimbursement of held costs in the amount of $6,219.03.

  ○ **Approved time**

    This firm has devoted 458.60 approved hours toward the common benefit.

  ○ **Lodestar**

    Using the firm's hourly rates at the inception of litigation, the firm's lodestar is $159,225.00.  Using the firm's 2013 hourly rates, the firm's lodestar is $226,900.00.  Using a blended rate, the firm's lodestar is $193,062.50.

  ○ **Common benefit contribution**

    This firm is located in New Orleans, Louisiana.  Joseph Bruno, the lead lawyer in this firm, has served on the Discovery-Written Committee and the Inspection Committee.  This firm reports that it made the following nonexclusive common benefit contribution: participating in insurance discovery; document review; inspecting facilities in Alabama and Florida thought to contain Chinese drywall; and identifying, interviewing, and vetting class representatives.

  ○ **Other comments**

    None.

  ○ **Special Master's recommendation**

    The Special Master recommends that this firm receive: $2,000.00 for reimbursement of assessments; $6,219.03 for reimbursement of held costs; and $75,000.00 for common benefit fee.

- **Burdman Law Group**

  ○ **Assessments**

    This firm has contributed no assessments.  Therefore, this firm is not entitled to reimbursement of any assessments.

  ○ **Held costs**

    This firm is entitled to reimbursement of held costs in the amount of $1,561.73.

  ○ **Approved time**

    This firm has devoted 50.50 approved hours toward the common benefit.

  ○ **Lodestar**

    Using the firm's hourly rates at the inception of litigation, the firm's lodestar is $12,625.00.  Using the firm's 2013 hourly rates, the firm's lodestar is $12,625.00.[136] Using a blended rate, the firm's lodestar is $12,625.00.

  ○ **Common benefit contribution**

    This firm is located in San Diego, California.  The firm reports that it made the following nonexclusive common benefit contribution: researching and preparing a class action lawsuit in California federal court; providing MDL counsel with the deposition of Yongzhi Yang, related to the importation of Chinese drywall from China to California; and interviewing approximately four California homeowners concerning the presence of Chinese drywall in their homes.

  ○ **Other comments**

    On July 3, 2018, a majority of the FC filed its recommendation concerning the allocation of the common benefit.[137]  The majority of the FC recommended that this firm receive a common benefit fee in the amount of $15,000.00.  On July 6, 2018, the Court entered an order stating the "anyone having any objections to [the majority of the FC's recommendations] shall file their objections with the Court no later than Friday, July 20, 2018 at 5:00 p.m. central standard time."[138]  This firm did not timely

---

[136]The firm did not increase its hourly rates from the inception of the litigation through 2013.

[137]R. Doc. 21455.

[138]R. Doc. 21482.

file an objection.  The Special Master infers from this silence that this firm agrees that the proposed common benefit fee is reasonable.[139]  After conducting an independent review,[140] and taking into consideration all of the circumstances, especially the relative contributions of the various firms, the Special Master agrees that this proposed common benefit fee is reasonable.

○   **Special Master's recommendation**

The Special Master recommends that this firm receive: $0.00 for reimbursement of assessments; $1,561.73 for reimbursement of held costs; and $15,000.00 for common benefit fee.

• **Collins – Live Oak**

○   **Assessments**

This firm has contributed $10,000.00 in assessments.  Of that amount, this firm has already been reimbursed $8,000.00.  This firm is entitled to reimbursement of the balance in the amount of ($10,000.00 - $8,000.00 =) $2,000.00.

○   **Held costs**

This firm is not entitled to reimbursement of any held costs.

○   **Approved time**

This firm has devoted no approved hours toward the common benefit.

○   **Lodestar**

Since this firm has devoted no approved hours toward the common benefit, this firm's lodestar is $0.00.

---

[139]It is noteworthy that no member of this firm served on the FC.  Therefore, the FC had no financial incentive to overstate this firm's common benefit contribution.

[140]The Special Master takes seriously the Fifth Circuit's admonition that a court "has an independent duty under Federal Rule of Civil Procedure 23 to the class and the public to ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel," and therefore a court must not "merely 'ratify a pre-arranged compact.'"  *In re High Sulfur Content Gasoline Prods. Liab. Litig*., 517 F.3d at 227, 228 (citations omitted).

○    **Common benefit contribution**

None.

○    **Other comments**

On July 3, 2018, a majority of the FC filed its recommendation concerning the allocation of the common benefit.[141]  The majority of the FC recommended that this firm receive a common benefit fee in the amount of $0.00.  On July 6, 2018, the Court entered an order  stating the "anyone having any objections to [the majority of the FC's recommendations] shall file their objections with the Court no later than Friday, July 20, 2018 at 5:00 p.m. central standard time."[142]  This firm did not timely file an objection.  The Special Master infers from this silence that this firm agrees that the proposed common benefit fee is reasonable.[143]   After conducting an independent review,[144] and taking into consideration all of the circumstances, especially the relative contributions of the various firms, the Special Master agrees that this proposed common benefit fee is reasonable.

○    **Special Master's recommendation**

The Special Master recommends that this firm receive: $2,000.00 for reimbursement of assessments; $0.00 for reimbursement of held costs; and $0.00 for common benefit fee.

•    **Colson Hicks Eidson**

○    **Assessments**

This firm has contributed $700,000.00 in assessments.  Of that amount, this firm has already been reimbursed $560,000.00.   The firm would have been entitled to

---

[141]R. Doc. 21455.

[142]R. Doc. 21482.

[143]It is noteworthy that no member of this firm served on the FC.  Therefore, the FC had no financial incentive to overstate this firm's common benefit contribution.

[144]The Special Master takes seriously the Fifth Circuit's admonition that a court "has an independent duty under Federal Rule of Civil Procedure 23 to the class and the public to ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel," and therefore a court must not "merely 'ratify a pre-arranged compact.'"  *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d at 227, 228 (citations omitted).

reimbursement of ($700,000.00 - $560,000.00 =) $140,000.00, but the firm has donated $7,142.86 to the American Association for Justice as a non-reimbursable expense.  This firm is entitled to reimbursement of the balance in the amount of ($700,000.00 - $560,000.00 - $7,142.86 =) $132,857.14.

○   **Held costs**

This firm is entitled to reimbursement of held costs in the amount of $387,668.26.

○   **Approved time**

This firm has devoted 14,080.55 approved hours toward the common benefit.

○   **Lodestar**

Using the firm's hourly rates at the inception of litigation, the firm's lodestar is $6,959,697.50.   Using the firm's 2013 hourly rates, the firm's lodestar is $8,447,876.25.  Using a blended rate, the firm's lodestar is $7,703,786.88.

○   **Common benefit contribution**

This firm is located in Coral Gables, Florida.  The firms efforts in the MDL were led by Ervin Gonzalez (now deceased) and Patrick Montoya.  Mr. Gonzalez served on the PSC.  Mr. Gonzalez also served on the following committees: Personal Injury Committee (Chair), Medical Monitoring Committee (Chair), Remediation Release Committee (Chair), Trial Committee, Bankruptcy Committee, Experts Committee, Science Committee, State/Federal Coordination Committee, Discovery Committee, Insurance Committee, Jurisdictional Committee, Strategy Committee, Banner Settlement Allocation Committee, Knauf Settlement Committee, and State of Florida Liaison Committee.  The firm reports that it has made the following nonexclusive common benefit contributions: filing and prosecuting the *Vickers* suit in Florida prior to the establishment of the MDL, which suit later became a vehicle for the settlement classes in Florida; participation in depositions, including as lead counsel on behalf of the PSC or on behalf of state governments in numerous depositions; drafting and arguing motions; drafting pleadings; selecting experts, reviewing expert reports, and conducting depositions of defense experts; creating demonstrative aids used in bellwether trials; reviewing documents; trying the bellwether trial against Banner; participating as part of the INEX trial team; participation in the Banner settlement negotiations; participating in post-settlement administration; and participation in related litigation in southern Florida.

○   **Other comments**

On July 3, 2018, a majority of the FC filed its recommendation concerning the

allocation of the common benefit.[145]  The majority of the FC recommended that this firm receive a common benefit fee in the amount of $3,900,000.00.  On July 6, 2018, the Court entered an order stating the "anyone having any objections to [the majority of the FC's recommendations] shall file their objections with the Court no later than Friday, July 20, 2018 at 5:00 p.m. central standard time."[146]  This firm did not timely file an objection.  The Special Master infers from this silence that this firm agrees that the proposed common benefit fee is reasonable.[147]  After conducting an independent review,[148] and taking into consideration all of the circumstances, especially the relative contributions of the various firms, the Special Master agrees that this proposed common benefit fee is reasonable.

o  **Special Master's recommendation**

The Special Master recommends that this firm receive: $132,857.14 for reimbursement of assessments; $387,668.26 for reimbursement of held costs; and $3,900,000.00 for common benefit fee.

•  **Cuneo, Gilbert & LaDuca, LLP**

o  **Assessments**

This firm has contributed $10,000.00 in assessments.  Of that amount, this firm has already been reimbursed $8,000.00.  This firm is entitled to reimbursement of the balance in the amount of ($10,000.00 - $8,000.00 =) $2,000.00.

o  **Held costs**

This firm is entitled to reimbursement of held costs in the amount of $4,037.79.

---

[145]R. Doc. 21455.

[146]R. Doc. 21482.

[147]It is noteworthy that no member of this firm served on the FC.  Therefore, the FC had no financial incentive to overstate this firm's common benefit contribution.

[148]The Special Master takes seriously the Fifth Circuit's admonition that a court "has an independent duty under Federal Rule of Civil Procedure 23 to the class and the public to ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel," and therefore a court must not "merely 'ratify a pre-arranged compact.'"  *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d at 227, 228 (citations omitted).

○   **Approved time**

This firm has devoted no approved hours toward the common benefit.

○   **Lodestar**

Since this firm has devoted no approved hours toward the common benefit, this firm's lodestar is $0.00.

○   **Common benefit contribution**

None.

○   **Other comments**

On July 3, 2018, a majority of the FC filed its recommendation concerning the allocation of the common benefit.[149]  The majority of the FC recommended that this firm receive a common benefit fee in the amount of $0.00.  On July 6, 2018, the Court entered an order  stating the "anyone having any objections to [the majority of the FC's recommendations] shall file their objections with the Court no later than Friday, July 20, 2018 at 5:00 p.m. central standard time."[150]  This firm did not timely file an objection.  The Special Master infers from this silence that this firm agrees that the proposed common benefit fee is reasonable.[151]   After conducting an independent review,[152] and taking into consideration all of the circumstances, especially the relative contributions of the various firms, the Special Master agrees that this proposed common benefit fee is reasonable.

○   **Special Master's recommendation**

The Special Master recommends that this firm receive: $2,000.00 for reimbursement of assessments; $4,037.79 for reimbursement of held costs; and $0.00 for common

---

[149]R. Doc. 21455.

[150]R. Doc. 21482.

[151]It is noteworthy that no member of this firm served on the FC.  Therefore, the FC had no financial incentive to overstate this firm's common benefit contribution.

[152]The Special Master takes seriously the Fifth Circuit's admonition that a court "has an independent duty under Federal Rule of Civil Procedure 23 to the class and the public to ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel," and therefore a court must not "merely 'ratify a pre-arranged compact.'"  *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d at 227, 228 (citations omitted).

benefit fee.

- **Davis & Duncan, LLC**

    ○ **Assessments**

    This firm has contributed no assessments.  Therefore, this firm is not entitled to reimbursement of any assessments.

    ○ **Held costs**

    This firm is not entitled to reimbursement of any held costs.

    ○ **Approved time**

    This firm has devoted no approved hours toward the common benefit.

    ○ **Lodestar**

    Since this firm has devoted no approved hours toward the common benefit, this firm's lodestar is $0.00.

    ○ **Common benefit contribution**

    None.

    ○ **Other comments**

    On July 3, 2018, a majority of the FC filed its recommendation concerning the allocation of the common benefit.[153]  The majority of the FC recommended that this firm receive a common benefit fee in the amount of $0.00.  On July 6, 2018, the Court entered an order  stating the "anyone having any objections to [the majority of the FC's recommendations] shall file their objections with the Court no later than Friday, July 20, 2018 at 5:00 p.m. central standard time."[154]  This firm did not timely file an objection.  The Special Master infers from this silence that this firm agrees that the proposed common benefit fee is reasonable.[155]   After conducting an

---

[153]R. Doc. 21455.

[154]R. Doc. 21482.

[155]It is noteworthy that no member of this firm served on the FC.  Therefore, the FC had no financial incentive to overstate this firm's common benefit contribution.

independent review,[156] and taking into consideration all of the circumstances, especially the relative contributions of the various firms, the Special Master agrees that this proposed common benefit fee is reasonable.

○ **Special Master's recommendation**

The Special Master recommends that this firm receive: $0.00 for reimbursement of assessments; $0.00 for reimbursement of held costs; and $0.00 for common benefit fee.

• **Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.**

○ **Assessments**

This firm has contributed $700,000.00 in assessments. Of that amount, this firm has already been reimbursed $560,000.00. The firm would have been entitled to reimbursement of ($700,000.00 - $560,000.00 =) $140,000.00, but the firm has donated $7,142.86 to the American Association for Justice as a non-reimbursable expense. This firm is entitled to reimbursement of the balance in the amount of ($700,000.00 - $560,000.00 - $7,142.86 =) $132,857.14.

○ **Held costs**

This firm is entitled to reimbursement of held costs in the amount of $108,510.76.

○ **Approved time**

This firm has devoted 7,963.55 approved hours toward the common benefit.

○ **Lodestar**

Using the firm's hourly rates at the inception of litigation, the firm's lodestar is $4,633,866.25. Using the firm's 2013 hourly rates, the firm's lodestar is $5,603,215.00. Using a blended rate, the firm's lodestar is $5,118,540.63.

---

[156]The Special Master takes seriously the Fifth Circuit's admonition that a court "has an independent duty under Federal Rule of Civil Procedure 23 to the class and the public to ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel," and therefore a court must not "merely 'ratify a pre-arranged compact.'" *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d at 227, 228 (citations omitted).

○ **Common benefit contribution**

This firm is located in New Orleans, Louisiana.  The firm's common benefit efforts have been led by Gerald Meunier (managing partner), together with Irving Warshauer and Michael Ecuyer.  Mr. Meunier has served on the PSC.  Mr. Meunier also served on the following committees:  Discovery Deposition Committee (Co-Chair), Discovery Written Committee, Inspections Committee (Chair), Overall and MDL Law Committee (Co-Chair), Litigation Group and Seminar Planning Committee, Medical Monitoring Committee (Co-Chair), Trial Package Committee (Co-Chair), and Witness Development Committee.  The firm reports that it made the following nonexclusive common benefit contributions: drafting pleadings; participating in litigation planning with the PSC; factual investigation; lay and expert witness discovery (including taking the lead in or participating in numerous deposition, some of which took place in Hong Kong) and preparation; trial preparation (including for *Germano*, *Hernandez*, *Campbell/Clement*, and *North River*) and presentations; legal analysis; and appeal briefing.  This firm has been consistently involved in all facets of the litigation from its start.

○ **Other comments**

None.

○ **Special Master's recommendation**

The Special Master recommends that this firm receive: $132,857.14 for reimbursement of assessments; $108,510.76 for reimbursement of held costs; and $8,500,000.00 for common benefit fee.


• **Gary, Naegele & Theado, LLC**

○ **Assessments**

This firm has contributed $10,000.00 in assessments.  Of that amount, this firm has already been reimbursed $8,000.00.  This firm is entitled to reimbursement of the balance in the amount of ($10,000.00 - $8,000.00 =) $2,000.00.

○ **Held costs**

This firm is entitled to reimbursement of held costs in the amount of $13,979.54.

○ **Approved time**

This firm has devoted 476.20 approved hours toward the common benefit.

○    **Lodestar**

Using the firm's hourly rates at the inception of litigation, the firm's lodestar is $243,127.50.   Using the firm's 2013 hourly rates, the firm's lodestar is $243,127.50.[157]  Using a blended rate, the firm's lodestar is $243,127.50.

○    **Common benefit contribution**

This firm is located in Lorain, Ohio.  The firm reports that, in January 2009, it was one of the first firms to become involved in what would later become Chinese drywall litigation.  The firm reports that it made the following nonexclusive common benefit contributions: meeting with homeowners and inspectors; meeting with environmental scientists and experts; meeting with representatives of the Florida Department of Health; investigating and identifying chain of distribution; and attended committee hearings and submitted testimony to the U.S. Senate.

○    **Other comments**

None.

○    **Special Master's recommendation**

The Special Master recommends that this firm receive: $2,000.00 for reimbursement of assessments; $13,979.54 for reimbursement of held costs; and $100,000.00 for common benefit fee.


•    **Glago Law Firm, L.L.C.**

○    **Assessments**

This firm has contributed $10,000.00 in assessments.  Of that amount, this firm has already been reimbursed $8,000.00.  This firm is entitled to reimbursement of the balance in the amount of ($10,000.00 - $8,000.00 =) $2,000.00.

○    **Held costs**

This firm is not entitled to reimbursement of any held costs.

---

[157]The firm did not increase its hourly rates from the inception of the litigation through 2013.

○   **Approved time**

This firm has devoted 149.15 approved hours toward the common benefit. However, this firm did not submit an Initial Affidavit or a Second Affidavit as required by Pretrial Order No. 28. Therefore, this firm cannot recover a common benefit fee for its approved time.

○   **Lodestar**

Because this firm cannot recover a common benefit fee for its approved time, the lodestar calculation is irrelevant.

○   **Common benefit contribution**

This firm did not submit an Initial Affidavit or a Second Affidavit as required by Pretrial Order No. 28. Therefore, this firm cannot recover a common benefit fee.

○   **Other comments**

On July 3, 2018, a majority of the FC filed its recommendation concerning the allocation of the common benefit.[158] The majority of the FC recommended that this firm receive a common benefit fee in the amount of $0.00. On July 6, 2018, the Court entered an order stating the "anyone having any objections to [the majority of the FC's recommendations] shall file their objections with the Court no later than Friday, July 20, 2018 at 5:00 p.m. central standard time."[159] This firm did not timely file an objection. The Special Master infers from this silence that this firm agrees that the proposed common benefit fee is reasonable.[160] After conducting an independent review,[161] and taking into consideration all of the circumstances, especially the relative contributions of the various firms, the Special Master agrees that this proposed common benefit fee is reasonable.

---

[158]R. Doc. 21455.

[159]R. Doc. 21482.

[160]It is noteworthy that no member of this firm served on the FC. Therefore, the FC had no financial incentive to overstate this firm's common benefit contribution.

[161]The Special Master takes seriously the Fifth Circuit's admonition that a court "has an independent duty under Federal Rule of Civil Procedure 23 to the class and the public to ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel," and therefore a court must not "merely 'ratify a pre-arranged compact.'" *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d at 227, 228 (citations omitted).

Page 47 of 104

○ **Special Master's recommendation**

The Special Master recommends that this firm receive: $2,000.00 for reimbursement of assessments; $0.00 for reimbursement of held costs; and $0.00 for common benefit fee.

• **Hausfeld LLP**

○ **Assessments**

This firm has contributed $175,000.00 in assessments. Of that amount, this firm has already been reimbursed $140,000.00. This firm is entitled to reimbursement of the balance in the amount of ($175,000.00 - $140,000.00 =) $35,000.00.

○ **Held costs**

This firm is entitled to reimbursement of held costs in the amount of $66,504.16.

○ **Approved time**

This firm has devoted 5,106.50 approved hours toward the common benefit.

○ **Lodestar**

Using the firm's hourly rates at the inception of litigation, the firm's lodestar is $2,388,189.75. Using the firm's 2013 hourly rates, the firm's lodestar is $2,809,791.00. Using a blended rate, the firm's lodestar is $2,598,990.39.

○ **Common benefit contribution**

This firm is based in Washington, D.C. Its efforts in this litigation were led by Richard Lewis. The PSC designated Mr. Lewis as "Of Counsel." Mr. Lewis served on the Expert Committee and on the Briefing Committee. The firm reports that it made the following nonexclusive common benefit contributions: preparing experts and damage protocols; contributing to the preparation of experts, including some who testified in the *Germano* trial; drafting and responding to various motions; participating in the default judgment action against Taishan; participating in the negotiations of the Virginia settlements; briefing class certification issues; serving on the Allocation Committee for the Virginia settlements; and overseeing settlement administration.

○ **Other comments**

On July 3, 2018, a majority of the FC filed its recommendation concerning the allocation of the common benefit.[162]  The majority of the FC recommended that this firm receive a common benefit fee in the amount of $3,200,000.00.  On July 6, 2018, the Court entered an order stating the "anyone having any objections to [the majority of the FC's recommendations] shall file their objections with the Court no later than Friday, July 20, 2018 at 5:00 p.m. central standard time."[163]  This firm did not timely file an objection.  The Special Master infers from this silence that this firm agrees that the proposed common benefit fee is reasonable.[164]  After conducting an independent review,[165] and taking into consideration all of the circumstances, especially the relative contributions of the various firms, the Special Master agrees that this proposed common benefit fee is reasonable.

○ **Special Master's recommendation**

The Special Master recommends that this firm receive: $35,000.00 for reimbursement of assessments; $66,504.16 for reimbursement of held costs; and $3,200,000.00 for common benefit fee.

• **Hawkins, Stracener & Gibson, PLLC**

○ **Assessments**

This firm has contributed $10,000.00 in assessments.  Of that amount, this firm has already been reimbursed $8,000.00.  This firm is entitled to reimbursement of the balance in the amount of ($10,000.00 - $8,000.00 =) $2,000.00.

---

[162]R. Doc. 21455.

[163]R. Doc. 21482.

[164]It is noteworthy that no member of this firm served on the FC.  Therefore, the FC had no financial incentive to overstate this firm's common benefit contribution.

[165]The Special Master takes seriously the Fifth Circuit's admonition that a court "has an independent duty under Federal Rule of Civil Procedure 23 to the class and the public to ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel," and therefore a court must not "merely 'ratify a pre-arranged compact.'"  *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d at 227, 228 (citations omitted).

○   **Held costs**

This firm is not entitled to reimbursement of any held costs.

○   **Approved time**

This firm has devoted no approved hours toward the common benefit.

○   **Lodestar**

Since this firm has devoted no approved hours toward the common benefit, this firm's lodestar is $0.00.

○   **Common benefit contribution**

None.

○   **Other comments**

On July 3, 2018, a majority of the FC filed its recommendation concerning the allocation of the common benefit.[166]  The majority of the FC recommended that this firm receive a common benefit fee in the amount of $0.00.  On July 6, 2018, the Court entered an order  stating the "anyone having any objections to [the majority of the FC's recommendations] shall file their objections with the Court no later than Friday, July 20, 2018 at 5:00 p.m. central standard time."[167]  This firm did not timely file an objection.  The Special Master infers from this silence that this firm agrees that the proposed common benefit fee is reasonable.[168]  After conducting an independent review,[169] and taking into consideration all of the circumstances, especially the relative contributions of the various firms, the Special Master agrees that this proposed common benefit fee is reasonable.

---

[166]R. Doc. 21455.

[167]R. Doc. 21482.

[168]It is noteworthy that no member of this firm served on the FC.  Therefore, the FC had no financial incentive to overstate this firm's common benefit contribution.

[169]The Special Master takes seriously the Fifth Circuit's admonition that a court "has an independent duty under Federal Rule of Civil Procedure 23 to the class and the public to ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel," and therefore a court must not "merely 'ratify a pre-arranged compact.'"  *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d at 227, 228 (citations omitted).

○ **Special Master's recommendation**

The Special Master recommends that this firm receive: $2,000.00 for reimbursement of assessments; $0.00 for reimbursement of held costs; and $0.00 for common benefit fee.

● **Herman, Herman & Katz, LLC**

○ **Assessments**

This firm has contributed $700,000.00 in assessments. Of that amount, this firm has already been reimbursed $560,000.00. The firm would have been entitled to reimbursement of ($700,000.00 - $560,000.00 =) $140,000.00, but the firm has donated $7,142.86 to the American Association for Justice as a non-reimbursable expense. This firm is entitled to reimbursement of the balance in the amount of ($700,000.00 - $560,000.00 - $7,142.86 =) $132,857.14.

○ **Held costs**

This firm is entitled to reimbursement of held costs in the amount of $191,102.27.

○ **Approved time**

This firm has devoted 40,350.00 approved hours toward the common benefit.

○ **Lodestar**

Using the firm's hourly rates at the inception of litigation, the firm's lodestar is $20,188,768.75. Using the firm's 2013 hourly rates, the firm's lodestar is $26,789,325.00. Using a blended rate, the firm's lodestar is $23,489,046.88.

○ **Common benefit contribution**

This firm is located in New Orleans, Louisiana. Its efforts in this litigation were led by the firm's senior partner, Russ Herman. Among other positions, Mr. Herman has served as Plaintiffs' Liaison Counsel and as an ex-Officio Member of the PSC. Together with Arnold Levin of Levin Fishbein Sedran & Berman (now Levin Sedran & Berman), who has served as Lead Counsel in the MDL, Mr. Herman has led the plaintiffs' efforts in every respect. Mr. Herman and Mr. Levin, relying heavily on resources from their own firms while at the same time drawing on resources from other firms, have been the driving forces in designing and implementing the plaintiffs' efforts that led to the settlements and the attendant creation of the common benefit fund. Since the settlements were consummated, Mr. Herman and Mr. Levin

have continued in their roles, administering the settlements and pursuing the remaining defendants.

○ **Other comments**

The FC recommended that this firm receive exactly the same amount in common benefit fee as Levin Sedran & Berman. The two firms have submitted hours that yield significantly different lodestars. Nevertheless, the Special Master has reviewed the record and has concluded that the two firms have worked hand-in-hand throughout the litigation, and it would be fair to conclude that both firms are equally responsible for the litigation's success. Therefore, the Special Master determined an aggregate award for the two firms, and assigned half of the aggregate to each firm.

○ **Special Master's recommendation**

The Special Master recommends that this firm receive: $132,857.14 for reimbursement of assessments; $191,102.27 for reimbursement of held costs; and $22,588,599.78 for common benefit fee.

• **Ingram & Associates LLC**

○ **Assessments**

This firm has contributed $10,000.00 in assessments. Of that amount, this firm has already been reimbursed $8,000.00. This firm is entitled to reimbursement of the balance in the amount of ($10,000.00 - $8,000.00 =) $2,000.00.

○ **Held costs**

This firm is not entitled to reimbursement of any held costs.

○ **Approved time**

This firm has devoted no approved hours toward the common benefit.

○ **Lodestar**

Since this firm has devoted no approved hours toward the common benefit, this firm's lodestar is $0.00.

○ **Common benefit contribution**

None.

○ **Other comments**

On July 3, 2018, a majority of the FC filed its recommendation concerning the allocation of the common benefit.[170]  The majority of the FC recommended that this firm receive a common benefit fee in the amount of $0.00.  On July 6, 2018, the Court entered an order  stating the "anyone having any objections to [the majority of the FC's recommendations] shall file their objections with the Court no later than Friday, July 20, 2018 at 5:00 p.m. central standard time."[171]  This firm did not timely file an objection.  The Special Master infers from this silence that this firm agrees that the proposed common benefit fee is reasonable.[172]  After conducting an independent review,[173] and taking into consideration all of the circumstances, especially the relative contributions of the various firms, the Special Master agrees that this proposed common benefit fee is reasonable.

○ **Special Master's recommendation**

The Special Master recommends that this firm receive: $2,000.00 for reimbursement of assessments; $0.00 for reimbursement of held costs; and $0.00 for common benefit fee.

• **Irpino Avin Hawkins Law Firm**

○ **Assessments**

This firm has contributed $50,000.00 in assessments.  Of that amount, this firm has already been reimbursed $40,000.00.  This firm is entitled to reimbursement of the balance in the amount of ($50,000.00 - $40,000.00 =) $10,000.00.

---

[170]R. Doc. 21455.

[171]R. Doc. 21482.

[172]It is noteworthy that no member of this firm served on the FC.  Therefore, the FC had no financial incentive to overstate this firm's common benefit contribution.

[173]The Special Master takes seriously the Fifth Circuit's admonition that a court "has an independent duty under Federal Rule of Civil Procedure 23 to the class and the public to ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel," and therefore a court must not "merely 'ratify a pre-arranged compact.'"  *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d at 227, 228 (citations omitted).

○ **Held costs**

This firm is entitled to reimbursement of held costs in the amount of $10,903.75.

○ **Approved time**

This firm has devoted 7,687.10 approved hours toward the common benefit.

○ **Lodestar**

Using the firm's hourly rates at the inception of litigation, the firm's lodestar is $3,135,532.50. Using the firm's 2013 hourly rates, the firm's lodestar is $3,529,550.00. Using a blended rate, the firm's lodestar is $3,332,541.25.

○ **Common benefit contribution**

This firm is located in New Orleans, Louisiana. Its efforts in this litigation were led by Anthony Irpino. Mr. Irpino served as Of Counsel to the PSC. Mr. Irpino also served on the following committees: Document Depository Committee (Chair), Privilege Committee (Chair), Confidentiality Committee (Chair), Stigma Damages Committee (Co-Chair), InEx/*North River* Discovery Committee (Co-Chair), and InEx/*North River* Trial Committee (Co-Captain). This firm reports that it made the following nonexclusive common benefit contributions: participating in the drafting of pretrial orders; helping to set up the document depository; developing and implementing document review protocols; reviewing and coding documents; participating in the drafting of written discovery and deposition notices; participating in deposition preparation and discovery teams; attending depositions; working with experts; handling privilege and confidentiality claims; participating in the drafting of motions to compel; participating in legal research and drafting of various motions and oppositions; assisting trial teams with exhibits; and assisting with appellate briefing and preparation for oral argument.

○ **Other comments**

None.

○ **Special Master's recommendation**

The Special Master recommends that this firm receive: $10,000.00 for reimbursement of assessments; $10,903.75 for reimbursement of held costs; and $2,750,000.00 for common benefit fee.

- **Kanner & Whiteley, LLC**

  ○ **Assessments**

    This firm has contributed $10,000.00 in assessments.  Of that amount, this firm has already been reimbursed $8,000.00.  This firm is entitled to reimbursement of the balance in the amount of ($10,000.00 - $8,000.00 =) $2,000.00.

  ○ **Held costs**

    This firm is entitled to reimbursement of held costs in the amount of $4,169.13.

  ○ **Approved time**

    This firm has devoted 624.95 approved hours toward the common benefit.

  ○ **Lodestar**

    Using the firm's hourly rates at the inception of litigation, the firm's lodestar is $248,166.25.   Using the firm's 2013 hourly rates, the firm's lodestar is $248,166.25.[174]  Using a blended rate, the firm's lodestar is $248,166.25.

  ○ **Common benefit contribution**

    This firm is located in New Orleans, Louisiana.  Its efforts in this litigation were led by Allan Kanner.  Mr. Kanner has served on the following committees: the Trial Strategy and Discovery Committee and the Insurance Committee.  This firm reports that it made the following nonexclusive common benefit contributions: participating in discussions of discovery from Louisiana suppliers; reviewing and commenting on 30(b)(6) deposition notices; investigating distributors; reviewing and commenting on pleadings, including deposition notices; and assisting in discovery related to insurance issues.

  ○ **Other comments**

    None.

  ○ **Special Master's recommendation**

    The Special Master recommends that this firm receive: $2,000.00 for reimbursement of assessments; $4,169.13 for reimbursement of held costs; and $65,000.00 for

---

[174]The firm did not increase its hourly rates from the inception of the litigation through 2013.

common benefit fee.

- **Krupnick Campbell Malone Buser Slama Hancock Liberman P.A.**

  ○ **Assessments**

  This firm has contributed no assessments.  Therefore, this firm is not entitled to reimbursement of any assessments.

  ○ **Held costs**

  This firm is entitled to reimbursement of held costs in the amount of $34,237.84.

  ○ **Approved time**

  This firm has devoted 699.80 approved hours toward the common benefit.

  ○ **Lodestar**

  Using the firm's hourly rates at the inception of litigation, the firm's lodestar is $314,910.00.  Using the firm's 2013 hourly rates, the firm's lodestar is $314,910.00.[175]  Using a blended rate, the firm's lodestar is $314,910.00.

  ○ **Common benefit contribution**

  This firm is located in Fort Lauderdale, Florida.  This firm's efforts in this litigation were led by Michael Ryan.  Mr. Ryan served as the Plaintiffs' Liaison Counsel for the Broward County Circuit Court litigation (appointed by the state court) and also served on the following committees: the WCI Trust Advisory Committee, the MDL Allocation Committee, and the FC.  The firm reports that it made the following nonexclusive common benefit contributions: investigating cases in Broward County, Florida in early 2009; filing cases in the MDL starting in early December 2009; litigating 14 cases involving over 350 properties in Broward County Circuit Court (this litigation was in part directed at Banner); participating in the rollout of the Pilot Program; participating in discussions with Knauf concerning potential global resolution; and reviewing and supplying input concerning proposed settlement agreements.

---

[175]The firm did not increase its hourly rates from the inception of the litigation through 2013.

○  **Other comments**

None.

○  **Special Master's recommendation**

The Special Master recommends that this firm receive: $0.00 for reimbursement of assessments; $34,237.84 for reimbursement of held costs; and $350,000.00 for common benefit fee.

• **Landskroner Grieco Merriman, LLC**

○  **Assessments**

This firm has contributed $10,000.00 in assessments.  Of that amount, this firm has already been reimbursed $8,000.00.  This firm is entitled to reimbursement of the balance in the amount of ($10,000.00 - $8,000.00 =) $2,000.00.

○  **Held costs**

This firm is entitled to reimbursement of held costs in the amount of $2,950.25.

○  **Approved time**

This firm has devoted 57.25 approved hours toward the common benefit.

○  **Lodestar**

Using the firm's hourly rates at the inception of litigation, the firm's lodestar is $28,893.75.  Using the firm's 2013 hourly rates, the firm's lodestar is $28,893.75.[176] Using a blended rate, the firm's lodestar is $28,893.75.

○  **Common benefit contribution**

This firm is located in Cleveland, Ohio.  Its efforts in this litigation were led by Jack Landskroner and Paul Greico.  The firm reports that it made the following nonexclusive common benefit contributions: meeting with Florida residents with potential claims; and attending the JPML panel hearing in 2009.

---

[176]The firm did not increase its hourly rates from the inception of the litigation through 2013.

○     **Other comments**

On July 3, 2018, a majority of the FC filed its recommendation concerning the allocation of the common benefit.[177]  The majority of the FC recommended that this firm receive a common benefit fee in the amount of $23,000.00.  On July 6, 2018, the Court entered an order stating the "anyone having any objections to [the majority of the FC's recommendations] shall file their objections with the Court no later than Friday, July 20, 2018 at 5:00 p.m. central standard time."[178]  This firm did not timely file an objection.  The Special Master infers from this silence that this firm agrees that the proposed common benefit fee is reasonable.[179]  After conducting an independent review,[180] and taking into consideration all of the circumstances, especially the relative contributions of the various firms, the Special Master agrees that this proposed common benefit fee is reasonable.

○     **Special Master's recommendation**

The Special Master recommends that this firm receive: $2,000.00 for reimbursement of assessments; $2,950.25 for reimbursement of held costs; and $23,000.00 for common benefit fee.

•     **Law Offices of Robert M. Becnel**

○     **Assessments**

This firm has contributed $75,000.00 in assessments.  Of that amount, this firm has already been reimbursed $60,000.00.  This firm is entitled to reimbursement of the balance in the amount of ($75,000.00 - $60,000.00 =) $15,000.00.

---

[177]R. Doc. 21455.

[178]R. Doc. 21482.

[179]It is noteworthy that no member of this firm served on the FC.  Therefore, the FC had no financial incentive to overstate this firm's common benefit contribution.

[180]The Special Master takes seriously the Fifth Circuit's admonition that a court "has an independent duty under Federal Rule of Civil Procedure 23 to the class and the public to ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel," and therefore a court must not "merely 'ratify a pre-arranged compact.'"  *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d at 227, 228 (citations omitted).

&#9675;    **Held costs**

This firm is entitled to reimbursement of held costs in the amount of $6,216.99.

&#9675;    **Approved time**

This firm has devoted 819.00 approved hours toward the common benefit.

&#9675;    **Lodestar**

Using the firm's hourly rates at the inception of litigation, the firm's lodestar is $286,650.00. Using the firm's 2013 hourly rates, the firm's lodestar is $409,500.00. Using a blended rate, the firm's lodestar is $348,075.00.

&#9675;    **Common benefit contribution**

This firm is located in LaPlace, Louisiana. Its efforts in this litigation were led by Robert Becnel, who is a sole practitioner. Mr. Becnel served on the following committees: Inspections Committee (Co-Chair), Governmental Relations Committee (Co-Chair), Administration and Depository Committee (Co-Chair), Discovery Deposition Committee, and Case Tracking Committee. The firm reports that it made the following common benefit contributions: briefing; summarizing depositions; and participating in the bellwether trial of Cheryl Gross.

&#9675;    **Other comments**

None.

&#9675;    **Special Master's recommendation**

The Special Master recommends that this firm receive: $15,000.00 for reimbursement of assessments; $6,219.99 for reimbursement of held costs; and $100,000.00 for common benefit fee.

- **Law Offices of Sidney D. Torres, III**

&#9675;    **Assessments**

This firm has contributed $10,000.00 in assessments. Of that amount, this firm has already been reimbursed $8,000.00. This firm is entitled to reimbursement of the balance in the amount of ($10,000.00 - $8,000.00 =) $2,000.00.

○ **Held costs**

This firm is not entitled to reimbursement of any held costs.

○ **Approved time**

This firm has devoted no approved hours toward the common benefit.

○ **Lodestar**

Since this firm has devoted no approved hours toward the common benefit, this firm's lodestar is $0.00.

○ **Common benefit contribution**

None.

○ **Other comments**

On July 3, 2018, a majority of the FC filed its recommendation concerning the allocation of the common benefit.[181]  The majority of the FC recommended that this firm receive a common benefit fee in the amount of $0.00.  On July 6, 2018, the Court entered an order  stating the "anyone having any objections to [the majority of the FC's recommendations] shall file their objections with the Court no later than Friday, July 20, 2018 at 5:00 p.m. central standard time."[182]  This firm did not timely file an objection.  The Special Master infers from this silence that this firm agrees that the proposed common benefit fee is reasonable.[183]   After conducting an independent review,[184] and taking into consideration all of the circumstances, especially the relative contributions of the various firms, the Special Master agrees that this proposed common benefit fee is reasonable.

---

[181]R. Doc. 21455.

[182]R. Doc. 21482.

[183]It is noteworthy that no member of this firm served on the FC.  Therefore, the FC had no financial incentive to overstate this firm's common benefit contribution.

[184]The Special Master takes seriously the Fifth Circuit's admonition that a court "has an independent duty under Federal Rule of Civil Procedure 23 to the class and the public to ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel," and therefore a court must not "merely 'ratify a pre-arranged compact.'"  *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d at 227, 228 (citations omitted).

○ **Special Master's recommendation**

The Special Master recommends that this firm receive: $2,000.00 for reimbursement of assessments; $0.00 for reimbursement of held costs; and $0.00 for common benefit fee.

• **Lemmon Law Firm, LLC**

○ **Assessments**

This firm has contributed $150,000.00 in assessments. Of that amount, this firm has already been reimbursed $120,000.00. This firm is entitled to reimbursement of the balance in the amount of ($150,000.00 - $120,000.00 =) $30,000.00.

○ **Held costs**

This firm is entitled to reimbursement of held costs in the amount of $12,103.96.

○ **Approved time**

This firm has devoted 4,695.25 approved hours toward the common benefit.

○ **Lodestar**

Using the firm's hourly rates at the inception of litigation, the firm's lodestar is $1,268,431.25. Using the firm's 2013 hourly rates, the firm's lodestar is $1,578,131.25. Using a blended rate, the firm's lodestar is $1,423,281.25.

○ **Common benefit contribution**

This firm is based in New Orleans, Louisiana. Its efforts in this litigation were led by the firm's founder, Andrew Lemmon. Mr. Lemmon served as Of Counsel on the PSC. Mr. Lemmon also served on the following committees: New Defendant Committee (Chair) and the Insurance Committee. The firm reports that it made the following nonexclusive common benefit contributions: representing Paul and Celeste Clement in a case against Lowe's, which included all aspects of litigating the case; participating in the oversight of the claims office; participating in the oversight of the plaintiffs' depository; assisting in the review of Taishan documents; identifying deficiencies in defendant and insurance profile forms; and reviewing and analyzing insurance policies.

&#9675;   **Other comments**

None.

&#9675;   **Special Master's recommendation**

The Special Master recommends that this firm receive: $30,000.00 for reimbursement of assessments; $12,103.96 for reimbursement of held costs; and $800,000.00 for common benefit fee.

&#8226;   **Leopold Kuvin/Mrachek, Fitzgerald, Rose, Konopka, Thomas & Weiss, P.A.**

&#9675;   **Assessments**

These firms contributed $10,000.00 in assessments. Of that amount, these firms have already been reimbursed $8,000.00. These firms are entitled to reimbursement of the balance in the amount of ($10,000.00 - $8,000.00 =) $2,000.00.

&#9675;   **Held costs**

These firms are entitled to reimbursement of held costs in the amount of $31,630.50.

&#9675;   **Approved time**

These firms have devoted 832.75 approved hours toward the common benefit.

&#9675;   **Lodestar**

Using the firms' hourly rates at the inception of litigation, the firms' lodestar is $367,587.50. Using the firm's 2013 hourly rates, the firms' lodestar is $367,587.50.[185] Using a blended rate, the firms' lodestar is $367,587.50.

&#9675;   **Common benefit contribution**

Leopold Law, P.A. (formerly known as Leopold-Kuvin, P.A.) and Mracheck, Fitzgerald, Rose, Konopka, Thomas & Weiss, P.A. have made a joint application for common benefit. The Leopold firm is located in Palm Beach Gardens, Florida, and the Mrachek firm is located in West Palm Beach, Florida. The firms report that they had a representative on the Experts Committee. The firms report that they made the

---

[185]The firms did not increase their hourly rates from the inception of the litigation through 2013.

following nonexclusive common benefit contributions: filing on of the first Chinese drywall complaints; vetting plaintiffs' experts for the initial benchmark trial, and reviewing defendants' experts; and preparing the Villa Lago at Renaissance Commons claim.

○ **Other comments**

On July 3, 2018, a majority of the FC filed its recommendation concerning the allocation of the common benefit.[186] The majority of the FC recommended that these firms receive a common benefit fee in the amount of $47,000.00. On July 6, 2018, the Court entered an order stating the "anyone having any objections to [the majority of the FC's recommendations] shall file their objections with the Court no later than Friday, July 20, 2018 at 5:00 p.m. central standard time."[187] These firms did not timely file an objection. The Special Master infers from this silence that these firms agree that the proposed common benefit fee is reasonable.[188] After conducting an independent review,[189] and taking into consideration all of the circumstances, especially the relative contributions of the various firms, the Special Master agrees that this proposed common benefit fee is reasonable.

○ **Special Master's recommendation**

The Special Master recommends that these firms receive: $2,000.00 for reimbursement of assessments; $32,789.34 for reimbursement of held costs; and $47,000.00 for common benefit fee.

• **Levin Papantonio Thomas Mitchell Rafferty Proctor PA.**

○ **Assessments**

This firm has contributed $700,000.00 in assessments. Of that amount, this firm has

---

[186]R. Doc. 21455.

[187]R. Doc. 21482.

[188]It is noteworthy that no member of these firms served on the FC. Therefore, the FC had no financial incentive to overstate these firms' common benefit contribution.

[189]The Special Master takes seriously the Fifth Circuit's admonition that a court "has an independent duty under Federal Rule of Civil Procedure 23 to the class and the public to ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel," and therefore a court must not "merely 'ratify a pre-arranged compact.'" *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d at 227, 228 (citations omitted).

already been reimbursed $560,000.00. The firm would have been entitled to reimbursement of ($700,000.00 - $560,000.00 =) $140,000.00, but the firm has donated $7,142.86 to the American Association for Justice as a non-reimbursable expense. This firm is entitled to reimbursement of the balance in the amount of ($700,000.00 - $560,000.00 - $7,142.86 =) $132,857.14.

○ **Held costs**

This firm is entitled to reimbursement of held costs in the amount of $80,991.39.

○ **Approved time**

This firm has devoted 4,136.90 approved hours toward the common benefit.

○ **Lodestar**

Using the firm's hourly rates at the inception of litigation, the firm's lodestar is $2,126,133.75. Using the firm's 2013 hourly rates, the firm's lodestar is $2,350,103.75. Using a blended rate, the firm's lodestar is $2,238,118.75.

○ **Common benefit contribution**

This firm is located in Pensacola, Florida. The firm's efforts in this litigation were led by Ben Gordon, Jr. Mr. Gordon served on the PSC. Mr. Gordon has also served on the following committees: Science Committee (Co-Chair), Experts Committee (Co-Chair), Trial Committee (Co-Chair), and IT Committee (Co-Chair). William Cash has served on the IT Committee. The firm reports the following nonexclusive common benefit contributions: assisting in the development of the National Inspection Program; securing and developing expert witnesses; drafting and editing expert reports; participating in depositions; working with witnesses and participating in trials or trial preparation, particularly in the *Germano* and *Hernandez* cases; and inspecting homes.

○ **Other comments**

On July 3, 2018, a majority of the FC filed its recommendation concerning the allocation of the common benefit.[190] The majority of the FC recommended that this firm receive a common benefit fee in the amount of $750,000.00. On July 6, 2018, the Court entered an order stating the "anyone having any objections to [the majority of the FC's recommendations] shall file their objections with the Court no later than

---

[190]R. Doc. 21455.

Friday, July 20, 2018 at 5:00 p.m. central standard time."[191]  This firm did not timely file an objection.  The Special Master infers from this silence that this firm agrees that the proposed common benefit fee is reasonable.[192]   After conducting an independent review,[193] and taking into consideration all of the circumstances, especially the relative contributions of the various firms, the Special Master agrees that this proposed common benefit fee is reasonable.

○   **Special Master's recommendation**

The Special Master recommends that this firm receive: $132,857.14 for reimbursement of assessments; $80,991.39 for reimbursement of held costs; and $750,000.00 for common benefit fee.


•   **Levin Sedran & Berman**

○   **Assessments**

This firm has contributed $700,000.00 in assessments.  Of that amount, this firm has already been reimbursed $560,000.00.   The firm would have been entitled to reimbursement of ($700,000.00 - $560,000.00 =) $140,000.00, but the firm has donated $7,142.86 to the American Association for Justice as a non-reimbursable expense.  This firm is entitled to reimbursement of the balance in the amount of ($700,000.00 - $560,000.00 - $7,142.86 =) $132,857.14.

○   **Held costs**

This firm is entitled to reimbursement of held costs in the amount of $1,083,786.21.

○   **Approved time**

This firm has devoted 43,663.75 approved hours toward the common benefit.

---

[191]R. Doc. 21482.

[192]It is noteworthy that no member of this firm served on the FC.  Therefore, the FC had no financial incentive to overstate this firm's common benefit contribution.

[193]The Special Master takes seriously the Fifth Circuit's admonition that a court "has an independent duty under Federal Rule of Civil Procedure 23 to the class and the public to ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel," and therefore a court must not "merely 'ratify a pre-arranged compact.'"  *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d at 227, 228 (citations omitted).

○    **Lodestar**

Using the firm's hourly rates at the inception of litigation, the firm's lodestar is $25,695,110.00. Using the firm's 2013 hourly rates, the firm's lodestar is $42,473,673.75. Using a blended rate, the firm's lodestar is $34,084,391.88.

○    **Common benefit contribution**

This firm is located in Philadelphia, Pennsylvania. Its efforts in this litigation were led by its Senior Partner, Arnold Levin. Among other positions, Mr. Levin has served as Lead Counsel and a Member of the PSC. Together with Russ Herman of Herman, Herman & Katz, who has served as Plaintiffs' Liaison Counsel in the MDL, Mr. Levin has led the plaintiffs' efforts in every respect. Mr. Levin and Mr. Herman, relying heavily on resources from their own firms while at the same time drawing on resources from other firms, have been the driving forces in designing and implementing the plaintiffs' efforts that led to the settlements and the attendant creation of the common benefit fund. Since the settlements were consummated, Mr. Levin and Mr. Herman have continued in their roles, administering the settlements and pursuing the remaining defendants.

○    **Other comments**

The FC recommended that this firm receive exactly the same amount in common benefit fee as Herman, Herman & Katz, LLC. The two firms have submitted hours that yield significantly different lodestars. Nevertheless, the Special Master has reviewed the record and has concluded that the two firms have worked hand-in-hand throughout the litigation, and it would be fair to conclude that both firms are equally responsible for the litigation's success. Therefore, the Special Master determined an aggregate award for the two firms, and assigned half of the aggregate to each firm.

○    **Special Master's recommendation**

The Special Master recommends that this firm receive: $132,857.14 for reimbursement of assessments; $1,083,786.21 for reimbursement of held costs; and $22,588,599.78 for common benefit fee.


•    **Lockridge Grindal Nauen P.L.L.P.**

○    **Assessments**

This firm has contributed $10,000.00 in assessments. Of that amount, this firm has already been reimbursed $8,000.00. This firm is entitled to reimbursement of the balance in the amount of ($10,000.00 - $8,000.00 =) $2,000.00.

○   **Held costs**

This firm is entitled to reimbursement of held costs in the amount of $1,425.20.

○   **Approved time**

This firm has devoted 142.50 approved hours toward the common benefit.

○   **Lodestar**

Using the firm's hourly rates at the inception of litigation, the firm's lodestar is $46,842.50.  Using the firm's 2013 hourly rates, the firm's lodestar is $46,842.50.[194] Using a blended rate, the firm's lodestar is $46,842.50.

○   **Common benefit contribution**

This firm is located in Minneapolis, Minnesota.  The firm's efforts in this litigation were led by Robert Shelquist.  Mr. Shelquist served on the following committees: Discovery-Written Committee, Experts Science Committee, Inspections Committee, and Overall MDL Law Committee.  This firm reports that it made the following nonexclusive common benefit contributions: investigating trade association involvement and other related industry issues.

○   **Other comments**

On July 3, 2018, a majority of the FC filed its recommendation concerning the allocation of the common benefit.[195]  The majority of the FC recommended that this firm receive a common benefit fee in the amount of $23,000.00.  On July 6, 2018, the Court entered an order stating the "anyone having any objections to [the majority of the FC's recommendations] shall file their objections with the Court no later than Friday, July 20, 2018 at 5:00 p.m. central standard time."[196]  This firm did not timely file an objection.  The Special Master infers from this silence that this firm agrees that the proposed common benefit fee is reasonable.[197]   After conducting an

---

[194]The firm did not increase its hourly rates from the inception of the litigation through 2013.

[195]R. Doc. 21455.

[196]R. Doc. 21482.

[197]It is noteworthy that no member of this firm served on the FC.  Therefore, the FC had no financial incentive to overstate this firm's common benefit contribution.

independent review,[198] and taking into consideration all of the circumstances, especially the relative contributions of the various firms, the Special Master agrees that this proposed common benefit fee is reasonable.

○ **Special Master's recommendation**

The Special Master recommends that this firm receive: $2,000.00 for reimbursement of assessments; $1,425.20 for reimbursement of held costs; and $23,000.00 for common benefit fee.

• **Luckey & Mullins, PLLC**

○ **Assessments**

This firm has contributed $10,000.00 in assessments. Of that amount, this firm has already been reimbursed $8,000.00. This firm is entitled to reimbursement of the balance in the amount of ($10,000.00 - $8,000.00 =) $2,000.00.

○ **Held costs**

This firm is not entitled to reimbursement of any held costs.

○ **Approved time**

This firm has devoted 47.75 approved hours toward the common benefit.

○ **Lodestar**

Using the firm's hourly rates at the inception of litigation, the firm's lodestar is $16,712.50. Using the firm's 2013 hourly rates, the firm's lodestar is $16,712.50.[199] Using a blended rate, the firm's lodestar is $16,712.50.

○ **Common benefit contribution**

This firm is located in Ocean Springs, Mississippi. The firm's efforts in this

---

[198]The Special Master takes seriously the Fifth Circuit's admonition that a court "has an independent duty under Federal Rule of Civil Procedure 23 to the class and the public to ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel," and therefore a court must not "merely 'ratify a pre-arranged compact.'" *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d at 227, 228 (citations omitted).

[199]The firm did not increase its hourly rates from the inception of the litigation through 2013.

litigation were led by Stephen Mullins.  The firm reports that it made the following nonexclusive common benefit contributions: assisting PSC member Dan Bryson in reviewing shipping invoices and bills of lading; identifying manufacturers, suppliers, and installers; helping locate builders and homeowners; and researching insurance issues.

○    **Other comments**

On July 3, 2018, a majority of the FC filed its recommendation concerning the allocation of the common benefit.[200]  The majority of the FC recommended that this firm receive a common benefit fee in the amount of $14,000.00.  On July 6, 2018, the Court entered an order stating the "anyone having any objections to [the majority of the FC's recommendations] shall file their objections with the Court no later than Friday, July 20, 2018 at 5:00 p.m. central standard time."[201]  This firm did not timely file an objection.  The Special Master infers from this silence that this firm agrees that the proposed common benefit fee is reasonable.[202]   After conducting an independent review,[203] and taking into consideration all of the circumstances, especially the relative contributions of the various firms, the Special Master agrees that this proposed common benefit fee is reasonable.

○    **Special Master's recommendation**

The Special Master recommends that this firm receive: $2,000.00 for reimbursement of assessments; $0.00 for reimbursement of held costs; and $14,000.00 for common benefit fee.

---

[200]R. Doc. 21455.

[201]R. Doc. 21482.

[202]It is noteworthy that no member of this firm served on the FC.  Therefore, the FC had no financial incentive to overstate this firm's common benefit contribution.

[203]The Special Master takes seriously the Fifth Circuit's admonition that a court "has an independent duty under Federal Rule of Civil Procedure 23 to the class and the public to ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel," and therefore a court must not "merely 'ratify a pre-arranged compact.'"  *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d at 227, 228 (citations omitted).

- **Martzell, Bickford & Centola**

  ○ **Assessments**

  This firm has contributed $10,000.00 in assessments.  Of that amount, this firm has already been reimbursed $8,000.00.  This firm is entitled to reimbursement of the balance in the amount of ($10,000.00 - $8,000.00 =) $2,000.00.

  ○ **Held costs**

  This firm is entitled to reimbursement of held costs in the amount of $15,542.32.

  ○ **Approved time**

  This firm has devoted 155.75 approved hours toward the common benefit.

  ○ **Lodestar**

  Using the firm's hourly rates at the inception of litigation, the firm's lodestar is $31,218.75.  Using the firm's 2013 hourly rates, the firm's lodestar is $31,218.75.[204] Using a blended rate, the firm's lodestar is $31,218.75.

  ○ **Common benefit contribution**

  This firm is located in New Orleans, Louisiana.  The firm made the following nonexclusive common benefit contributions: retaining experts to review and develop methods for identifying contaminated drywall; working with members of the PSC to provide assistance for meetings with government officials; and assisting in document review.

  ○ **Other comments**

  None.

  ○ **Special Master's recommendation**

  The Special Master recommends that this firm receive: $2,000.00 for reimbursement of assessments; $15,542.32 for reimbursement of held costs; and $30,000.00 for common benefit fee.

---

[204]The firm did not increase its hourly rates from the inception of the litigation through 2013.

- **Mason LLP**

  ○ **Assessments**

    This firm has contributed $50,000.00 in assessments.  Of that amount, this firm has already been reimbursed $40,000.00.  This firm is entitled to reimbursement of the balance in the amount of ($50,000.00 - $40,000.00 =) $10,000.00.

  ○ **Held costs**

    This firm is entitled to reimbursement of held costs in the amount of $9,625.50.

  ○ **Approved time**

    This firm has devoted 226.70 approved hours toward the common benefit.

  ○ **Lodestar**

    Using the firm's hourly rates at the inception of litigation, the firm's lodestar is $99,651.00.  Using the firm's 2013 hourly rates, the firm's lodestar is $99,651.00.[205] Using a blended rate, the firm's lodestar is $99,651.00.

  ○ **Common benefit contribution**

    This firm is located in Washington, D.C.  The firm's efforts in this litigation were led by Gary Mason.  Mr. Mason served on the Insurance Committee (Co-Chair).  This firm reports that it made the following nonexclusive common benefit contributions: making a presentation on the Economic Loss Rule; writing articles on the Economic Loss Rule; participating in litigating the lead Economic Loss Rule in Maryland; assisting in the drafting of an opposition to a motion to dismiss on the Economic Loss Rule; participating in organizational meetings and assignments related to the Insurance Committee; assisting in briefing with respect to Virginia law; and participating in meetings and discussions concerning USG's and L&R's interest in settlement.

  ○ **Other comments**

    None.

---

[205]The firm did not increase its hourly rates from the inception of the litigation through 2013.

○ **Special Master's recommendation**

The Special Master recommends that this firm receive: $10,000.00 for reimbursement of assessments; $9,625.50 for reimbursement of held costs; and $80,000.00 for common benefit fee.

• **Morgan & Morgan**

○ **Assessments**

This firm has contributed $700,000.00 in assessments. Of that amount, this firm has already been reimbursed $560,000.00. The firm would have been entitled to reimbursement of ($700,000.00 - $560,000.00 =) $140,000.00, but the firm has donated $7,142.86 to the American Association for Justice as a non-reimbursable expense. This firm is entitled to reimbursement of the balance in the amount of ($700,000.00 - $560,000.00 - $7,142.86 =) $132,857.14.

○ **Held costs**

This firm is entitled to reimbursement of held costs in the amount of $140,581.27.

○ **Approved time**

This firm has devoted 2,969.00 approved hours toward the common benefit.

○ **Lodestar**

Using the firm's hourly rates at the inception of litigation, the firm's lodestar is $1,465,637.50. Using the firm's 2013 hourly rates, the firm's lodestar is $1,774,178.75. Using a blended rate, the firm's lodestar is $1,465,637.50.

○ **Common benefit contribution**

This firm is located in Fort Myers, Florida. The firm's efforts in this litigation were led by Scott Weinstein. Mr. Weinstein has served as a member of the PSC. Mr. Weinstein has also served on the following committees: Bankruptcy and Financial Research Committee (Co-Chair), Discovery-Deposition Committee, Discovery-Written Committee, Governmental Relations Committee, Inspections Committee, Insurance Committee (Co-Chair), Law-Overall and MDL Committee, Law-Florida Committee, New Defendants Committee (Chair), Public Relations Committee (Co-Chair), Remediation and Release Committee, State and Federal Committee, Trial and Trial Package Committee, and Witness Development Committee. This firm reports that it made the following nonexclusive common benefit contributions: filing the first

federal class action case regarding Chinese drywall in January 2009; attending the Court's monthly status conferences; attending PSC meetings; participating in discovery; participating in discovery; participating in Chinese drywall symposia; participating in town hall meetings; participating in inspections; interviewing potential experts; researching and preparing omni complaints; serving as lead counsel for the PSC in the Mid-Continent litigation; coordinating and communicating with claimants; communicating with government entities; reviewing discovery responses; preparing motions to compel; reviewing insurance information; reviewing and analyzing deposition transcripts; researching numerous legal issues; preparing briefs, motions, memoranda, and responses; participating in the *Seifart* trial; and participating in settlement negotiations, the drafting of settlement documents, and the implementation of the various settlements.

○   **Other comments**

None.

○   **Special Master's recommendation**

The Special Master recommends that this firm receive: $132,857.14 for reimbursement of assessments; $140,581.27 for reimbursement of held costs; and $1,250,000.00 for common benefit fee.

• **Morris Bart, L.L.C.**

○   **Assessments**

This firm has contributed $10,000.00 in assessments. Of that amount, this firm has already been reimbursed $8,000.00. This firm is entitled to reimbursement of the balance in the amount of ($10,000.00 - $8,000.00 =) $2,000.00.

○   **Held costs**

This firm is entitled to reimbursement of held costs in the amount of $7,439.42.

○   **Approved time**

This firm has devoted 1,734.66 approved hours toward the common benefit.

○   **Lodestar**

Using the firm's hourly rates at the inception of litigation, the firm's lodestar is $682,972.00. Using the firm's 2013 hourly rates, the firm's lodestar is

$682,972.00.[206]  Using a blended rate, the firm's lodestar is $682,972.00.

○  **Common benefit contribution**

This firm is located in New Orleans, Louisiana.  The firm's efforts in this litigation have been led by Morris Bart, Reed Bowman, Jeff Keiser, and Mekel Alvarez.  This firm reports that it has made the following nonexclusive common benefit contributions: filing lawsuits beginning in 2009; participation in the Pilot Program; attending home inspections; interfacing with clients concerning the various aspects of making claims and resolving disputes (including with Moss) arising out of the litigation and the settlements; participating in the litigation of *Gross v. InEx*; and participating in document review.

○  **Other comments**

None.

○  **Special Master's recommendation**

The Special Master recommends that this firm receive: $2,000.00 for reimbursement of assessments; $7,439.42 for reimbursement of held costs; and $500,000.00 for common benefit fee.

•  **Nast Law LLC**

○  **Assessments**

This firm has contributed $10,000.00 in assessments.  Of that amount, this firm has already been reimbursed $8,000.00.  This firm is entitled to reimbursement of the balance in the amount of ($10,000.00 - $8,000.00 =) $2,000.00.

○  **Held costs**

This firm is entitled to reimbursement of held costs in the amount of $2,928.93.

○  **Approved time**

This firm has devoted no approved hours toward the common benefit.

---

[206]The firm did not increase its hourly rates from the inception of the litigation through 2013.

○   **Lodestar**

Since this firm has devoted no approved hours toward the common benefit, this firm's lodestar is $0.00.

○   **Common benefit contribution**

None.

○   **Other comments**

On July 3, 2018, a majority of the FC filed its recommendation concerning the allocation of the common benefit.[207]  The majority of the FC recommended that this firm receive a common benefit fee in the amount of $0.00.  On July 6, 2018, the Court entered an order  stating the "anyone having any objections to [the majority of the FC's recommendations] shall file their objections with the Court no later than Friday, July 20, 2018 at 5:00 p.m. central standard time."[208]  This firm did not timely file an objection.  The Special Master infers from this silence that this firm agrees that the proposed common benefit fee is reasonable.[209]  After conducting an independent review,[210] and taking into consideration all of the circumstances, especially the relative contributions of the various firms, the Special Master agrees that this proposed common benefit fee is reasonable.

○   **Special Master's recommendation**

The Special Master recommends that this firm receive: $2,000.00 for reimbursement of assessments; $2,928.93 for reimbursement of held costs; and $0.00 for common benefit fee.

---

[207]R. Doc. 21455.

[208]R. Doc. 21482.

[209]It is noteworthy that no member of this firm served on the FC.  Therefore, the FC had no financial incentive to overstate this firm's common benefit contribution.

[210]The Special Master takes seriously the Fifth Circuit's admonition that a court "has an independent duty under Federal Rule of Civil Procedure 23 to the class and the public to ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel," and therefore a court must not "merely 'ratify a pre-arranged compact.'"  *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d at 227, 228 (citations omitted).

- **Parker Waichman LLP**

  ○ **Assessments**

  This firm has contributed $700,000.00 in assessments. Of that amount, this firm has already been reimbursed $560,000.00. The firm would have been entitled to reimbursement of ($700,000.00 - $560,000.00 =) $140,000.00, but the firm has donated $7,142.86 to the American Association for Justice as a non-reimbursable expense. This firm is entitled to reimbursement of the balance in the amount of ($700,000.00 - $560,000.00 - $7,142.86 =) $132,857.14.

  ○ **Held costs**

  This firm is entitled to reimbursement of held costs in the amount of $146,300.95.

  ○ **Approved time**

  This firm has devoted 8,905.75 approved hours toward the common benefit.

  ○ **Lodestar**

  Using the firm's hourly rates at the inception of litigation, the firm's lodestar is $4,780,906.25. Using the firm's 2013 hourly rates, the firm's lodestar is $4,830,231.25. Using a blended rate, the firm's lodestar is $4,805,568.75.

  ○ **Common benefit contribution**

  This firm is based in New York City, New York. The firm's efforts in this litigation were led by Jerrold Parker. Mr. Parker served as a member on the PSC. Mr. Parker also served on the following committees: IT and Electronic Discovery Committee (Chair), Discovery-Deposition Committee, Discovery-Written Committee (Co-Chair), Experts Science (Property) Committee (Co-Chair), Inspections Committee (Co-Chair), Public Relations Committee (Chair), State/Federal Committee, and Remediation/Release Committee. This firm reports that it made the following nonexclusive common benefit contributions: researching legal issues particular to Florida; coordinating discovery with builders and drafting related motions to compel; reviewing and analyzing remediation offers made by builders to homeowners; organizing and participating in town hall meetings for property owners; reviewing and analyzing documents produced by defendants; handling intake of homeowners; handling information concerning bodily injury claims; handling information concerning defendants' insurance; translating Taishan documents; evaluating cases for bellwether trials; attending inspections; evaluating remediation protocols; developing and maintaining a website for the PSC; coordinating advertising and marketing; meeting with state and federal government officials; participating in

weekly PSC conference calls; attending monthly PSC meetings; attending monthly status conferences (on occasion); participating in various aspects of discovery; reviewing builder release assignments, reviewing remediation protocols; researching issues related to the Economic Loss Doctrine; participation in the selection of experts; developing inspection protocols; participating in the selection of cases for bellwether trials; and participating in discussions of settlement.

○ **Other comments**

None.

○ **Special Master's recommendation**

The Special Master recommends that this firm receive: $132,857.14 for reimbursement of assessments; $146,300.95 for reimbursement of held costs; and $2,900,000.00 for common benefit fee.

- **Paul A. Lea, Jr., APLC**

○ **Assessments**

This firm has contributed no assessments.  Therefore, this firm is not entitled to reimbursement of any assessments.

○ **Held costs**

This firm submitted an Initial Affidavit stating that it contributed $16,749.47 om expenses.  However, Mr. Garrett's reports do not reflect these expenses; the firm did not submit a Second Affidavit; and the firm did not make a presentation to the FC. The Special Master concludes that this firm is not entitled to reimbursement of any held costs.

○ **Approved time**

This firm has devoted no approved hours toward the common benefit.

○ **Lodestar**

Since this firm has devoted no approved hours toward the common benefit, this firm's lodestar is $0.00.

○    **Common benefit contribution**

None.

○    **Other comments**

On July 3, 2018, a majority of the FC filed its recommendation concerning the allocation of the common benefit.[211]  The majority of the FC recommended that this firm receive a common benefit fee in the amount of $0.00.  On July 6, 2018, the Court entered an order  stating the "anyone having any objections to [the majority of the FC's recommendations] shall file their objections with the Court no later than Friday, July 20, 2018 at 5:00 p.m. central standard time."[212]  This firm did not timely file an objection.  The Special Master infers from this silence that this firm agrees that the proposed common benefit fee is reasonable.[213]   After conducting an independent review,[214] and taking into consideration all of the circumstances, especially the relative contributions of the various firms, the Special Master agrees that this proposed common benefit fee is reasonable.

○    **Special Master's recommendation**

The Special Master recommends that this firm receive: $0.00 for reimbursement of assessments; $0.00 for reimbursement of held costs; and $0.00 for common benefit fee.

•    **Pender & Coward, PC**

○    **Assessments**

This firm has contributed no assessments.  Therefore, this firm is not entitled to reimbursement of any assessments.

---

[211]R. Doc. 21455.

[212]R. Doc. 21482.

[213]It is noteworthy that no member of this firm served on the FC.  Therefore, the FC had no financial incentive to overstate this firm's common benefit contribution.

[214]The Special Master takes seriously the Fifth Circuit's admonition that a court "has an independent duty under Federal Rule of Civil Procedure 23 to the class and the public to ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel," and therefore a court must not "merely 'ratify a pre-arranged compact.'"  *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d at 227, 228 (citations omitted).

○   **Held costs**

This firm is entitled to reimbursement of held costs in the amount of $17,697.26.

○   **Approved time**

This firm has devoted 702.15 approved hours toward the common benefit.

○   **Lodestar**

Using the firm's hourly rates at the inception of litigation, the firm's lodestar is $99,353.25.  Using the firm's 2013 hourly rates, the firm's lodestar is $179,930.00.  Using a blended rate, the firm's lodestar is $139,641.63.

○   **Common benefit contribution**

This firm is located in Virginia Beach, Virginia.  This firm reports that it made the following nonexclusive common benefit contributions: representing Dr. Benjamin and Holly Proto; filing the first Chinese drywall case in Virginia Circuit Court; conducting discovery; working with experts to develop testing protocols and repair protocols; working with contractors to develop repair cost estimates; overseeing remediation work; researching pollution exclusion issues; involvement in air monitoring and testing issues; participating in the litigation of dispositive motions; evaluating remediation protocols; and researching liability and damage issues.

○   **Other comments**

On July 3, 2018, a majority of the FC filed its recommendation concerning the allocation of the common benefit.[215]  The majority of the FC recommended that this firm receive a common benefit fee in the amount of $23,000.00.  On July 6, 2018, the Court entered an order stating the "anyone having any objections to [the majority of the FC's recommendations] shall file their objections with the Court no later than Friday, July 20, 2018 at 5:00 p.m. central standard time."[216]  This firm did not timely file an objection.  The Special Master infers from this silence that this firm agrees that the proposed common benefit fee is reasonable.[217]   After conducting an

---

[215]R. Doc. 21455.

[216]R. Doc. 21482.

[217]It is noteworthy that no member of this firm served on the FC.  Therefore, the FC had no financial incentive to overstate this firm's common benefit contribution.

independent review,[218] and taking into consideration all of the circumstances, especially the relative contributions of the various firms, the Special Master agrees that this proposed common benefit fee is reasonable.

○ **Special Master's recommendation**

The Special Master recommends that this firm receive: $0.00 for reimbursement of assessments; $17,697.26 for reimbursement of held costs; and $23,000.00 for common benefit fee.

• **Pendley Baudin & Coffin, LLP**

○ **Assessments**

This firm has contributed $10,000.00 in assessments.  Of that amount, this firm has already been reimbursed $8,000.00.  This firm is entitled to reimbursement of the balance in the amount of ($10,000.00 - $8,000.00 =) $2,000.00.

○ **Held costs**

This firm is entitled to reimbursement of held costs in the amount of $9,877.46.

○ **Approved time**

This firm has devoted 717.45 approved hours toward the common benefit.

○ **Lodestar**

Using the firm's hourly rates at the inception of litigation, the firm's lodestar is $292,532.50.  Using the firm's 2013 hourly rates, the firm's lodestar is $308,920.00.  Using a blended rate, the firm's lodestar is $300,726.25.

○ **Common benefit contribution**

This firm is located in Plaquemine, Louisiana.  Christopher Coffin served on the Insurance Committee.  This firm reports that it made the following nonexclusive

---

[218]The Special Master takes seriously the Fifth Circuit's admonition that a court "has an independent duty under Federal Rule of Civil Procedure 23 to the class and the public to ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel," and therefore a court must not "merely 'ratify a pre-arranged compact.'" *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d at 227, 228 (citations omitted).

common benefit contributions: reviewing documents produced in discovery; analyzing insurance documents; preparing witnesses for depositions; working up a KPT trial pool case, analyzing and briefing issues related to declaratory judgment actions; and participating in settlement discussions.

○ **Other comments**

None.

○ **Special Master's recommendation**

The Special Master recommends that this firm receive: $2,000.00 for reimbursement of assessments; $9,877.46 for reimbursement of held costs; and $150,000.00 for common benefit fee.

• **Podhurst Orseck, P.A.**

○ **Assessments**

This firm has contributed $700,000.00 in assessments. Of that amount, this firm has already been reimbursed $560,000.00. The firm would have been entitled to reimbursement of ($700,000.00 - $560,000.00 =) $140,000.00, but the firm has donated $7,142.86 to the American Association for Justice as a non-reimbursable expense. This firm is entitled to reimbursement of the balance in the amount of ($700,000.00 - $560,000.00 - $7,142.86 =) $132,857.14.

○ **Held costs**

This firm is entitled to reimbursement of held costs in the amount of $173,657.23.

○ **Approved time**

This firm has devoted 5,483.25 approved hours toward the common benefit.

○ **Lodestar**

Using the firm's hourly rates at the inception of litigation, the firm's lodestar is $2,304,686.25. Using the firm's 2013 hourly rates, the firm's lodestar is $2,786,335.00. Using a blended rate, the firm's lodestar is $2,545,510.63.

○ **Common benefit contribution**

This firm is located in Miami, Florida. Victor Diaz and Robert Josefsberg served on

the PSC. This firm had representation on the following committees: Science Committee, Government Relations Committee, Public Relations/Public Affairs Committee, Personal Injury Committee (Co-Chair), and Trial Preparation Committee. The firm reports that it made the following nonexclusive common benefit contributions: obtaining service of process on Knauf-Tianjin at an early date; obtaining a settlement that led to homeowners recovering from insurers; litigating the *Harrell* case, which was the source of information for use in the MDL; taking depositions of Banner employees for use in the *Seifart* action; participating in unsealing settlement agreement between Banner and Knauf: briefing Hague Evidence Convention issues; briefing and arguing Economic Loss Rule issues; selecting and vetting experts; coordinating with government entities; reviewing documents; and serving as co-lead counsel or support in the litigation of several actions.

○ **Other comments**

None.

○ **Special Master's recommendation**

The Special Master recommends that this firm receive: $132,857.14 for reimbursement of assessments; $173,657.23 for reimbursement of held costs; and $2,000,000.00 for common benefit fee.


• **Reeves & Mestayer, PLLC**

○ **Assessments**

This firm has contributed $650,000.00 in assessments. Of that amount, this firm has already been reimbursed $520,000.00. The firm would have been entitled to reimbursement of ($650,000.00 - $520,000.00 =) $130,000.00, but the firm has donated $7,142.86 to the American Association for Justice as a non-reimbursable expense. This firm is entitled to reimbursement of the balance in the amount of ($650,000.00 - $520,000.00 - $7,142.86 =) $122,857.14.

○ **Held costs**

This firm is entitled to reimbursement of held costs in the amount of $76,878.62.

○ **Approved time**

This firm has devoted 9,364.71 approved hours toward the common benefit.

○ **Lodestar**

Using the firm's hourly rates at the inception of litigation, the firm's lodestar is $4,178,924.40.   Using the firm's 2013 hourly rates, the firm's lodestar is $4,666,255.00.  Using a blended rate, the firm's lodestar is $4,422,589.70.

○ **Common benefit contribution**

This firm is located in Biloxi, Mississippi.  The firm's efforts in this litigation were led by its managing partner, Jim Reeves.  Mr. Reeves served on the PSC.  A representative of the firm served on the following committees: Witness Development Committee (Chair), Governmental Relations Committee (Co-Chair), Inspections Committee (Co-Chair), Insurance Committee (Co-Chair), New Defendants Committee (Co-Chair), State and Federal Committee (Co-Chair), Discovery Deposition Committee, Discovery Written Committee, Experts Science (PI) Committee, Public Relations Committee, Law-Mississippi Committee, Remediation and Release Committee, Trial and Trial Package Committee, and *North River* Trial Team.  This firm reports that it made the following nonexclusive common benefit contributions: identifying potential former employee witnesses of INEX and other distributors; inspecting warehouses; interviewing potential plaintiffs for bellwether selection; meeting with attorneys to persuade them to file their clients' claims in the MDL; reviewing and organizing documents, particularly INEX discovery documents; working on expert issues, including those related to the duties of Chinese drywall importers; researching legal issues; drafting pleadings; and participating in depositions, including depositions taken in Europe and in Hong Kong.

○ **Other comments**

None.

○ **Special Master's recommendation**

The Special Master recommends that this firm receive: $122,857.14 for reimbursement of assessments; $76,878.62 for reimbursement of held costs; and $2,250,000.00 for common benefit fee.

• **Reich & Binstock, LLP**

○ **Assessments**

This firm has contributed $50,000.00 in assessments.  Of that amount, this firm has already been reimbursed $40,000.00.  This firm is entitled to reimbursement of the balance in the amount of ($50,000.00 - $40,000.00 =) $10,000.00.

○ **Held costs**

This firm is not entitled to reimbursement of any held costs.

○ **Approved time**

This firm has devoted no approved hours toward the common benefit.

○ **Lodestar**

Since this firm has devoted no approved hours toward the common benefit, this firm's lodestar is $0.00.

○ **Common benefit contribution**

None.

○ **Other comments**

On July 3, 2018, a majority of the FC filed its recommendation concerning the allocation of the common benefit.[219]  The majority of the FC recommended that this firm receive a common benefit fee in the amount of $0.00.  On July 6, 2018, the Court entered an order  stating the "anyone having any objections to [the majority of the FC's recommendations] shall file their objections with the Court no later than Friday, July 20, 2018 at 5:00 p.m. central standard time."[220]  This firm did not timely file an objection.  The Special Master infers from this silence that this firm agrees that the proposed common benefit fee is reasonable.[221]  After conducting an independent review,[222] and taking into consideration all of the circumstances, especially the relative contributions of the various firms, the Special Master agrees that this proposed common benefit fee is reasonable.

---

[219]R. Doc. 21455.

[220]R. Doc. 21482.

[221]It is noteworthy that no member of this firm served on the FC.  Therefore, the FC had no financial incentive to overstate this firm's common benefit contribution.

[222]The Special Master takes seriously the Fifth Circuit's admonition that a court "has an independent duty under Federal Rule of Civil Procedure 23 to the class and the public to ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel," and therefore a court must not "merely 'ratify a pre-arranged compact.'"  *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d at 227, 228 (citations omitted).

○   **Special Master's recommendation**

The Special Master recommends that this firm receive: $10,000.00 for reimbursement of assessments; $0.00 for reimbursement of held costs; and $0.00 for common benefit fee.

•   **Rhine Law Firm, P.C.**

○   **Assessments**

This firm has contributed $10,000.00 in assessments.  Of that amount, this firm has already been reimbursed $8,000.00.  This firm is entitled to reimbursement of the balance in the amount of ($10,000.00 - $8,000.00 =) $2,000.00.

○   **Held costs**

This firm is entitled to reimbursement of held costs in the amount of $11,109.28.

○   **Approved time**

This firm has devoted 417.75 approved hours toward the common benefit.

○   **Lodestar**

Using the firm's hourly rates at the inception of litigation, the firm's lodestar is $199,600.00.  Using the firm's 2013 hourly rates, the firm's lodestar is $199,600.00.[223]  Using a blended rate, the firm's lodestar is $199,600.00.

○   **Common benefit contribution**

This firm is located in Wilmington, North Carolina.  The firm's efforts in this litigation were led by Joel Rhine.  Mr. Rhine was a member of the following committees: Discovery Deposition Committee, Discovery Written Committee, Insurance Committee, Law-North Carolina Committee, Experts Science (Property) Committee, Research and Collection of Standards Committee, State and Federal Committee, and Trial and Trial Package Committee.  This firm reports the following nonexclusive common benefit contributions: preparing case fact sheets; engaging in discovery, mostly limited to individual cases; researching and briefing insurance issues; attending two multi-day symposia; providing experts for use by the PSC; reviewing L&W documents; overseeing inspections; defending depositions; and

---

[223]The firm did not increase its hourly rates from the inception of the litigation through 2013.

participating in the *Hobbie* case.

○　　**Other comments**

None.

○　　**Special Master's recommendation**

The Special Master recommends that this firm receive: $2,000.00 for reimbursement of assessments; $11,109.28 for reimbursement of held costs; and $65,000.00 for common benefit fee.

•　**Richard J. Serpe, P.C.**

○　　**Assessments**

This firm has contributed $375,000.00 in assessments. Of that amount, this firm has already been reimbursed $300,000.00. This firm is entitled to reimbursement of the balance in the amount of ($375,000.00 - $300,000.00 =) $75,000.00.

○　　**Held costs**

This firm is entitled to reimbursement of held costs in the amount of $76,064.30.

○　　**Approved time**

This firm has devoted 13,413.08 approved hours toward the common benefit.

○　　**Lodestar**

Using the firm's hourly rates at the inception of litigation, the firm's lodestar is $3,946,202.00. Using the firm's 2013 hourly rates, the firm's lodestar is $3,946,202.00.[224] Using a blended rate, the firm's lodestar is $3,946,202.00.

○　　**Common benefit contribution**

This firm is located in Norfolk, Virginia. The firm's efforts in this litigation were led by Richard Serpe. Mr. Serpe served as a member of the PSC. Mr. Serpe also served as a member of the following committees: Expert Science (Property) Committee, Expert Science (PI) Committee, Inspections Committee, Law-North Carolina

---

[224]The firm did not increase its hourly rates from the inception of the litigation through 2013.

Committee, Law-Virginia Committee, Research and Collection of Standards Committee, Allocation Committee for the Four Virginia-based Settlements, and State/Federal Coordination Committee (Co-Chair). This firm reports that it made the following nonexclusive common benefit contributions: managing, coordinating, and participating in discovery of and selection of expert witnesses in the *Germano* case; taking the lead on several Taishan importer discovery depositions; managing discovery in the Virginia litigation; drafting *Daubert* briefs in *Germano*; drafting proposed Findings of Fact and Conclusions of Law in *Germano*; taking the lead on Virginia declaratory judgment litigation, including appellate work; working with experts in *Germano*; obtaining discovery and organizing documents in the Taishan litigation; participating in various aspects of bellwether trial; coordinating settlement negotiations; and litigating non-MDL cases in North Carolina, Georgia, and Florida.

○ **Other comments**

None.

○ **Special Master's recommendation**

The Special Master recommends that this firm receive: $75,000.00 for reimbursement of assessments; $76,064.30 for reimbursement of held costs; and $3,500,000.00 for common benefit fee.

• **Roberts & Durkee P.A./Milstein, Jackson, Fairchild & Wade, L.L.P.**

○ **Assessments**

These firms have contributed no assessments. Therefore, these firms are not entitled to reimbursement of any assessments.

○ **Held costs**

These firms are entitled to reimbursement of held costs in the amount of 155,928.82.

○ **Approved time**

These firms devoted 3,722.50 approved hours toward the common benefit.

○ **Lodestar**

Using the firms' hourly rates at the inception of litigation, the firms' lodestar is $2,619,900.00. Using the firms' 2013 hourly rates, the firms' lodestar is

$2,619,900.00.[225]  Using a blended rate, the firms' lodestar is $2,619,900.00.

○ **Common benefit contribution**

Roberts & Durkee PA is located in Coral Gables Florida.  Milstein Adelman LLP is located in Santa Monica, California.  These firms report that they made the following common benefit contributions: meeting with government officials; serving as Plaintiffs' Liaison Counsel in West Palm Beach; serving on the PSC in Miami-Dade and Broward; representing clients throughout Florida; and coordinating these activities with the MDL PSC as part of an effort to facilitate the various settlements.

○ **Other comments**

On July 3, 2018, a majority of the FC filed its recommendation concerning the allocation of the common benefit.[226]  The majority of the FC recommended that this firm receive a common benefit fee in the amount of $450,000.00.  On July 6, 2018, the Court entered an order stating the "anyone having any objections to [the majority of the FC's recommendations] shall file their objections with the Court no later than Friday, July 20, 2018 at 5:00 p.m. central standard time."[227]  This firm did not timely file an objection.  The Special Master infers from this silence that this firm agrees that the proposed common benefit fee is reasonable.[228]  After conducting an independent review,[229] and taking into consideration all of the circumstances, especially the relative contributions of the various firms, the Special Master agrees that this proposed common benefit fee is reasonable.

○ **Special Master's recommendation**

The Special Master recommends that these firms receive: $0.00 for reimbursement of assessments; $155,928.82 for reimbursement of held costs; and $450,000.00 for

---

[225]The firm did not increase its hourly rates from the inception of the litigation through 2013.

[226]R. Doc. 21455.

[227]R. Doc. 21482.

[228]It is noteworthy that no member of these firms served on the FC.  Therefore, the FC had no financial incentive to overstate these firms' common benefit contribution.

[229]The Special Master takes seriously the Fifth Circuit's admonition that a court "has an independent duty under Federal Rule of Civil Procedure 23 to the class and the public to ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel," and therefore a court must not "merely 'ratify a pre-arranged compact.'"  *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d at 227, 228 (citations omitted).

common benefit fee.

- **Seeger Weiss LLP**

  - **Assessments**

    This firm has contributed $700,000.00 in assessments.  Of that amount, this firm has already been reimbursed $560,000.00.   The firm would have been entitled to reimbursement of ($700,000.00 - $560,000.00 =) $140,000.00, but the firm has donated $7,142.82[230] to the American Association for Justice as a non-reimbursable expense.  This firm is entitled to reimbursement of the balance in the amount of ($700,000.00 - $560,000.00 - $7,142.82 =) $132,857.18.

  - **Held costs**

    This firm is entitled to reimbursement of held costs in the amount of $399,123.84.

  - **Approved time**

    This firm has devoted 14,380.35 approved hours toward the common benefit.

  - **Lodestar**

    Using the firm's hourly rates at the inception of litigation, the firm's lodestar is $8,815,193.00.   Using the firm's 2013 hourly rates, the firm's lodestar is $10,004,653.50.  Using a blended rate, the firm's lodestar is $9,409,923.50.

  - **Common benefit contribution**

    This firm is based in New York City, New York.  The firm's efforts in this litigation were led by Christopher Seeger.  Mr. Seeger served as a member of the PSC.  Mr. Seeger also served on the following committees: Trial Committee (Leader) and FC. Jeffrey Grand served on the Electronic Discovery Committee (Co-Chair). This firm reports that it made the following nonexclusive common benefit contributions: supervising several trials; providing expertise in developing the trial kit; arguing several pre-trial motions concerning the proper scope of discovery and challenging the defendants' scientific theories; providing leadership for the development of scientific and other expert matters concerning the proper scope of remediation;

---

[230]The other firms in this litigation that made a similar donation to the American Association for Justice gave $7,142.86.  The FC reports that this firm gave $7,142.82.  The Special Master will assume that the FC correctly reported this firm's donation.

examining key witnesses at trial; taking and defending depositions of witnesses, including expert witnesses; participating in the selection of bellwether plaintiffs; taking depositions of the executives of defendants; participating in settlement negotiations; leading presentations to focus groups in preparation for trial; preparing party profile forms and inspection protocols; negotiating electronic discovery protocols and search terms; and researching issues and drafting motions.

○ **Other comments**

None.

○ **Special Master's recommendation**

The Special Master recommends that this firm receive: $132,857.18 for reimbursement of assessments; $399,123.84 for reimbursement of held costs; and $8,500,000.00 for common benefit fee.

- **Strom Law Firm, L.L.C.**

○ **Assessments**

This firm has contributed $10,000.00 in assessments. Of that amount, this firm has already been reimbursed $8,000.00. This firm is entitled to reimbursement of the balance in the amount of ($10,000.00 - $8,000.00 =) $2,000.00.

○ **Held costs**

This firm is entitled to reimbursement of held costs in the amount of $3,356.21.

○ **Approved time**

This firm has devoted no approved hours toward the common benefit.

○ **Lodestar**

Since this firm has devoted no approved hours toward the common benefit, this firm's lodestar is $0.00.

○ **Common benefit contribution**

None.

○   **Other comments**

On July 3, 2018, a majority of the FC filed its recommendation concerning the allocation of the common benefit.[231]  The majority of the FC recommended that this firm receive a common benefit fee in the amount of $0.00.  On July 6, 2018, the Court entered an order  stating the "anyone having any objections to [the majority of the FC's recommendations] shall file their objections with the Court no later than Friday, July 20, 2018 at 5:00 p.m. central standard time."[232]  This firm did not timely file an objection.  The Special Master infers from this silence that this firm agrees that the proposed common benefit fee is reasonable.[233]  After conducting an independent review,[234] and taking into consideration all of the circumstances, especially the relative contributions of the various firms, the Special Master agrees that this proposed common benefit fee is reasonable.

○   **Special Master's recommendation**

The Special Master recommends that this firm receive: $2,000.00 for reimbursement of assessments; $3,356.21 for reimbursement of held costs; and $0.00 for common benefit fee.

•   **Taylor Martino, P.C.**

○   **Assessments**

This firm has contributed no assessments.  Therefore, this firm is not entitled to reimbursement of any assessments.

○   **Held costs**

This firm is not entitled to reimbursement of any held costs.

---

[231]R. Doc. 21455.

[232]R. Doc. 21482.

[233]It is noteworthy that no member of this firm served on the FC.  Therefore, the FC had no financial incentive to overstate this firm's common benefit contribution.

[234]The Special Master takes seriously the Fifth Circuit's admonition that a court "has an independent duty under Federal Rule of Civil Procedure 23 to the class and the public to ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel," and therefore a court must not "merely 'ratify a pre-arranged compact.'"  *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d at 227, 228 (citations omitted).

   ○    **Approved time**

      This firm has devoted 471.00 approved hours toward the common benefit.

   ○    **Lodestar**

      Using the firm's hourly rates at the inception of litigation, the firm's lodestar is $157,862.50.  Using the firm's 2013 hourly rates, the firm's lodestar is $157,862.50.[235]  Using a blended rate, the firm's lodestar is $157,862.50.

   ○    **Common benefit contribution**

      This firm is located in Mobile, Alabama.  This firm reports that it made the following nonexclusive common benefit contributions: litigating all aspects of and settling the Prichard Housing Authority case; researching Alabama law regarding the Economic Loss Rule, emotional damages, liability of third party suppliers, and liability of manufacturers; issuing subpoenas in Alabama at the request of the PSC; organizing and reviewing documents; and taking depositions, including corporate depositions.

   ○    **Other comments**

      None.

   ○    **Special Master's recommendation**

      The Special Master recommends that this firm receive: $0.00 for reimbursement of assessments; $0.00 for reimbursement of held costs; and $175,000.00 for common benefit fee.

•   **The Andry Law Firm**

   ○    **Assessments**

      This firm has contributed $10,000.00 in assessments.  Of that amount, this firm has already been reimbursed $8,000.00.  This firm is entitled to reimbursement of the balance in the amount of ($10,000.00 - $8,000.00 =) $2,000.00.

   ○    **Held costs**

      This firm is not entitled to reimbursement of any held costs.

---

[235]The firm did not increase its hourly rates from the inception of the litigation through 2013.

○ **Approved time**

This firm has devoted no approved hours toward the common benefit.

○ **Lodestar**

Since this firm has devoted no approved hours toward the common benefit, this firm's lodestar is $0.00.

○ **Common benefit contribution**

None.

○ **Other comments**

On July 3, 2018, a majority of the FC filed its recommendation concerning the allocation of the common benefit.[236]  The majority of the FC recommended that this firm receive a common benefit fee in the amount of $0.00.  On July 6, 2018, the Court entered an order  stating the "anyone having any objections to [the majority of the FC's recommendations] shall file their objections with the Court no later than Friday, July 20, 2018 at 5:00 p.m. central standard time."[237]  This firm did not timely file an objection.  The Special Master infers from this silence that this firm agrees that the proposed common benefit fee is reasonable.[238]  After conducting an independent review,[239] and taking into consideration all of the circumstances, especially the relative contributions of the various firms, the Special Master agrees that this proposed common benefit fee is reasonable.

○ **Special Master's recommendation**

The Special Master recommends that this firm receive: $2,000.00 for reimbursement of assessments; $0.00 for reimbursement of held costs; and $0.00 for common

---

[236]R. Doc. 21455.

[237]R. Doc. 21482.

[238]It is noteworthy that no member of this firm served on the FC.  Therefore, the FC had no financial incentive to overstate this firm's common benefit contribution.

[239]The Special Master takes seriously the Fifth Circuit's admonition that a court "has an independent duty under Federal Rule of Civil Procedure 23 to the class and the public to ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel," and therefore a court must not "merely 'ratify a pre-arranged compact.'"  *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d at 227, 228 (citations omitted).

benefit fee.

- **The Lambert Firm**

  ○ **Assessments**

  This firm has contributed $700,000.00 in assessments. Of that amount, this firm has already been reimbursed $560,000.00. The firm would have been entitled to reimbursement of ($700,000.00 - $560,000.00 =) $140,000.00, but the firm has donated $7,142.86 to the American Association for Justice as a non-reimbursable expense. This firm is entitled to reimbursement of the balance in the amount of ($700,000.00 - $560,000.00 - $7,142.86 =) $132,857.14.

  ○ **Held costs**

  This firm is entitled to reimbursement of held costs in the amount of $63,448.31.

  ○ **Approved time**

  This firm has devoted 4,750.00 approved hours toward the common benefit.

  ○ **Lodestar**

  Using the firm's hourly rates at the inception of litigation, the firm's lodestar is $1,644,301.25. Using the firm's 2013 hourly rates, the firm's lodestar is $1,820,256.25. Using a blended rate, the firm's lodestar is $1,732,278.75.

  ○ **Common benefit contribution**

  This firm is located inn New Orleans, Louisiana. The firm's efforts in this litigation have been led by Hugh "Skip" Lambert. Mr. Lambert served on the PSC. Mr. Lambert has served on the following committees: Insurance Committee (Chair), Experts Science (PI) Committee (Co-Chair), and Discovery Depositions Committee (Co-Chair). This firm reports that it made the following nonexclusive common benefit contributions: serving Rule 30(b)(6) notices and subpoenas duces tecum, including concerning insurance issues; compelling production of documents; organizing and analyzing produced documents; deposing witnesses; advising the PSC concerning the briefing of legal issues; researching and briefing various motions; developing inspection protocols; participating in the litigation of *Germano* and *Hernandez*; participating in home inspections; participating in the InEx litigation; vetting class representatives; participating in the *North River* litigation; and negotiating settlements.

○   **Other comments**

None.

○   **Special Master's recommendation**

The Special Master recommends that this firm receive: $132,857.14 for reimbursement of assessments; $63,448.31 for reimbursement of held costs; and $1,500,000.00 for common benefit fee.

• **The Singleton Law Firm**

○   **Assessments**

This firm has contributed $50,000.00 in assessments.  Of that amount, this firm has already been reimbursed $40,000.00.  This firm is entitled to reimbursement of the balance in the amount of ($50,000.00 - $40,000.00 =) $10,000.00.

○   **Held costs**

This firm is entitled to reimbursement of held costs in the amount of $9,862.94.

○   **Approved time**

This firm has devoted 339.00 approved hours toward the common benefit.

○   **Lodestar**

Using the firm's hourly rates at the inception of litigation, the firm's lodestar is $151,380.00.   Using the firm's 2013 hourly rates, the firm's lodestar is $151,380.00.[240]  Using a blended rate, the firm's lodestar is $151,380.00.

○   **Common benefit contribution**

This firm is located in Shreveport, Louisiana.  This firm reports the following nonexclusive common benefit contributions: reviewing communications; attending conferences; and visiting homes which contained Chinese drywall.

○   **Other comments**

---

[240]The firm did not increase its hourly rates from the inception of the litigation through 2013.

On July 3, 2018, a majority of the FC filed its recommendation concerning the allocation of the common benefit.[241]  The majority of the FC recommended that this firm receive a common benefit fee in the amount of $18,000.00.  On July 6, 2018, the Court entered an order stating the "anyone having any objections to [the majority of the FC's recommendations] shall file their objections with the Court no later than Friday, July 20, 2018 at 5:00 p.m. central standard time."[242]  This firm did not timely file an objection.  The Special Master infers from this silence that this firm agrees that the proposed common benefit fee is reasonable.[243]  After conducting an independent review,[244] and taking into consideration all of the circumstances, especially the relative contributions of the various firms, the Special Master agrees that this proposed common benefit fee is reasonable.

○   **Special Master's recommendation**

The Special Master recommends that this firm receive: $10,000.00 for reimbursement of assessments; $9,862.94 for reimbursement of held costs; and $18,000.00 for common benefit fee.

•   **The Steckler Law Firm/Baron & Budd, P.C.**

○   **Assessments**

These firms have contributed $700,000.00 in assessments.  Of that amount, these firms have already been reimbursed $560,000.00.  These firms would have been entitled to reimbursement of ($700,000.00 - $560,000.00 =) $140,000.00, but the firms have donated $7,142.86 to the American Association for Justice as a non-reimbursable expense.  These firms is entitled to reimbursement of the balance in the amount of  ($700,000.00 - $560,000.00 - $7,142.86 =) $132,857.14.

---

[241]R. Doc. 21455.

[242]R. Doc. 21482.

[243]It is noteworthy that no member of this firm served on the FC.  Therefore, the FC had no financial incentive to overstate this firm's common benefit contribution.

[244]The Special Master takes seriously the Fifth Circuit's admonition that a court "has an independent duty under Federal Rule of Civil Procedure 23 to the class and the public to ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel," and therefore a court must not "merely 'ratify a pre-arranged compact.'"  *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d at 227, 228 (citations omitted).

o      **Held costs**

These firms are entitled to reimbursement of held costs in the amount of $180,679.34.

o      **Approved time**

These firms have devoted 6,870.32 approved hours toward the common benefit.

o      **Lodestar**

Using the firms' hourly rates at the inception of litigation, the firms' lodestar is $4,515,968.75.   Using the firms' 2013 hourly rates, the firms' lodestar is $4,515,968.75.[245]  Using a blended rate, the firms' lodestar is $4,515,968.75.

o      **Common benefit contribution**

These firms are both located in Dallas, Texas.  Bruce Steckler has served on the PSC. Mr. Steckler also served on the following committees: Bankruptcy Committee (Chair), Insurance Committee (Co-Chair), Discovery Committee (Co-Chair), Taishan Questioners Committee, and Banner Allocation Committee.  These firms report that they made the following nonexclusive common benefit contributions: participating in the discovery of and depositions of insurance carriers; participating in the discovery of suppliers; litigating declaratory relief actions; researching corporate structure issues; researching and briefing for the Omni Complaints; researching and briefing insurance issues; researching and briefing Taishan jurisdiction issues; coordinating with *Germano* trial experts; researching issues surrounding corporate finances; participating in the various settlement negotiations; and handling issues surrounding defendant bankruptcies.

o      **Other comments**

None.

o      **Special Master's recommendation**

The Special Master recommends that these firms receive: $132,857.14 for reimbursement of assessments; $180,679.34 for reimbursement of held costs; and $2,500,000.00 for common benefit fee.

---

[245]The firm did not increase its hourly rates from the inception of the litigation through 2013.

- **Thornhill Law Firm, A PLC**

  ○ **Assessments**

  This firm has contributed $10,000.00 in assessments.  Of that amount, this firm has already been reimbursed $8,000.00.  This firm is entitled to reimbursement of the balance in the amount of ($10,000.00 - $8,000.00 =) $2,000.00.

  ○ **Held costs**

  This firm is entitled to reimbursement of held costs in the amount of $1,607.49.

  ○ **Approved time**

  This firm has devoted 115.75 approved hours toward the common benefit.

  ○ **Lodestar**

  Using the firm's hourly rates at the inception of litigation, the firm's lodestar is $50,262.50.  Using the firm's 2013 hourly rates, the firm's lodestar is $54,312.50.  Using a blended rate, the firm's lodestar is $52,287.50.

  ○ **Common benefit contribution**

  This firm is located in Slidell, Louisiana.  The firm's efforts in this litigation were led by Tommy Thornhill.  Mr. Thornhill served on the Insurance Committee.  This firm reports that it made the following nonexclusive common benefit contributions: participation in discovery; participation in trial preparation; coordinating with bellwether plaintiffs who were the firm's clients; participating in depositions; and drafting and reviewing memoranda concerning insurance issues.

  ○ **Other comments**

  On July 3, 2018, a majority of the FC filed its recommendation concerning the allocation of the common benefit.[246]  The majority of the FC recommended that this firm receive a common benefit fee in the amount of $18,000.00.  On July 6, 2018, the Court entered an order stating the "anyone having any objections to [the majority of the FC's recommendations] shall file their objections with the Court no later than Friday, July 20, 2018 at 5:00 p.m. central standard time."[247]  This firm did not timely file an objection.  The Special Master infers from this silence that this firm agrees

---

[246]R. Doc. 21455.

[247]R. Doc. 21482.

that the proposed common benefit fee is reasonable.[248]   After conducting an independent review,[249] and taking into consideration all of the circumstances, especially the relative contributions of the various firms, the Special Master agrees that this proposed common benefit fee is reasonable.

○   **Special Master's recommendation**

The Special Master recommends that this firm receive: $2,000.00 for reimbursement of assessments; $1,607.49 for reimbursement of held costs; and $18,000.00 for common benefit fee.

• **Vaughn Bowden & Wooten, PA**

○   **Assessments**

This firm has contributed no assessments.  Therefore, this firm is not entitled to reimbursement of any assessments.

○   **Held costs**

This firm is not entitled to reimbursement of any held costs.

○   **Approved time**

This firm has devoted 100.50 approved hours toward the common benefit.

○   **Lodestar**

Using the firm's hourly rates at the inception of litigation, the firm's lodestar is $50,250.00.  Using the firm's 2013 hourly rates, the firm's lodestar is $50,250.00.[250] Using a blended rate, the firm's lodestar is $50,250.00.

---

[248]It is noteworthy that no member of this firm served on the FC.  Therefore, the FC had no financial incentive to overstate this firm's common benefit contribution.

[249]The Special Master takes seriously the Fifth Circuit's admonition that a court "has an independent duty under Federal Rule of Civil Procedure 23 to the class and the public to ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel," and therefore a court must not "merely 'ratify a pre-arranged compact.'" *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d at 227, 228 (citations omitted).

[250]The firm did not increase its hourly rates from the inception of the litigation through 2013.

○   **Common benefit contribution**

This firm is located in Slidell, Louisiana.  The firm's efforts in this litigation were led by Tommy Thornhill.  Mr. Thornhill served on the Insurance Committee.  This firm reports that it made the following nonexclusive common benefit contributions: participation in discovery; participation in trial preparation; coordinating with bellwether plaintiffs who were the firm's clients; participating in depositions; and drafting and reviewing memoranda concerning insurance issues.

○   **Other comments**

On July 3, 2018, a majority of the FC filed its recommendation concerning the allocation of the common benefit.[251]  The majority of the FC recommended that this firm receive a common benefit fee in the amount of $4,500.00.  On July 6, 2018, the Court entered an order  stating the "anyone having any objections to [the majority of the FC's recommendations] shall file their objections with the Court no later than Friday, July 20, 2018 at 5:00 p.m. central standard time."[252]  This firm did not timely file an objection.  The Special Master infers from this silence that this firm agrees that the proposed common benefit fee is reasonable.[253]  After conducting an independent review,[254] and taking into consideration all of the circumstances, especially the relative contributions of the various firms, the Special Master agrees that this proposed common benefit fee is reasonable.

○   **Special Master's recommendation**

The Special Master recommends that this firm receive: $0.00 for reimbursement of assessments; $0.00 for reimbursement of held costs; and $4,500.00 for common benefit fee.

---

[251]R. Doc. 21455.

[252]R. Doc. 21482.

[253]It is noteworthy that no member of this firm served on the FC.  Therefore, the FC had no financial incentive to overstate this firm's common benefit contribution.

[254]The Special Master takes seriously the Fifth Circuit's admonition that a court "has an independent duty under Federal Rule of Civil Procedure 23 to the class and the public to ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel," and therefore a court must not "merely 'ratify a pre-arranged compact.'"  *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d at 227, 228 (citations omitted).

● **VM Diaz and Partners, LLC**

○ **Assessments**

This firm has contributed no assessments.  Therefore, this firm is not entitled to reimbursement of any assessments.

○ **Held costs**

This firm is entitled to reimbursement of held costs in the amount of $16,414.31.

○ **Approved time**

This firm has devoted $2,070.00 approved hours toward the common benefit.

○ **Lodestar**

Using the firm's hourly rates at the inception of litigation, the firm's lodestar is $882,341.25.  Using the firm's 2013 hourly rates, the firm's lodestar is $882,341.25.[255]  Using a blended rate, the firm's lodestar is $882,341.25.

○ **Common benefit contribution**

This firm is located in Miami Beach, Florida.  Victor Diaz served on the PSC.  The firm reports that it made the following nonexclusive common benefit contributions: filing the first case in the United States against the Knauf Defendants; filing the first case in the United States against Banner; attending the JPML hearing; serving as co-lead counsel for cases in Miami-Dade and Broward; reviewing documents produced by several of the defendants; serving as Chief Liaison between the CPSC and the PSC; reviewing documents from and coordinating with the CPSC; serving on the Science and Expert Committee; serving the Knauf Defendants through the Hague Service Convention; arguing evidence issues related to the Hague Evidence Convention and the FRCP; attending and participating in depositions; participating in the discovery of an intra-defendant settlement agreement; participating in expert selection, vetting, and development; participating in settlement negotiations.

○ **Other comments**

None.

---

[255]The firm did not increase its hourly rates from the inception of the litigation through 2013.

○ **Special Master's recommendation**

The Special Master recommends that this firm receive: $0.00 for reimbursement of assessments; $16,414.31 for reimbursement of held costs; and $600,000.00 for common benefit fee.

• **Webb & Scarmozzino, P.A.**

○ **Assessments**

This firm has contributed $10,000.00 in assessments.  Of that amount, this firm has already been reimbursed $8,000.00.  This firm is entitled to reimbursement of the balance in the amount of ($10,000.00 - $8,000.00 =) $2,000.00.

○ **Held costs**

This firm is entitled to reimbursement of held costs in the amount of $4,119.34.

○ **Approved time**

This firm has devoted no approved hours toward the common benefit.

○ **Lodestar**

Since this firm has devoted no approved hours toward the common benefit, this firm's lodestar is $0.00.

○ **Common benefit contribution**

None.

○ **Other comments**

On July 3, 2018, a majority of the FC filed its recommendation concerning the allocation of the common benefit.[256]  The majority of the FC recommended that this firm receive a common benefit fee in the amount of $0.00.  On July 6, 2018, the Court entered an order  stating the "anyone having any objections to [the majority of the FC's recommendations] shall file their objections with the Court no later than Friday, July 20, 2018 at 5:00 p.m. central standard time."[257]  This firm did not timely

---

[256]R. Doc. 21455.

[257]R. Doc. 21482.

file an objection.  The Special Master infers from this silence that this firm agrees that the proposed common benefit fee is reasonable.[258]   After conducting an independent review,[259] and taking into consideration all of the circumstances, especially the relative contributions of the various firms, the Special Master agrees that this proposed common benefit fee is reasonable.

○   **Special Master's recommendation**

The Special Master recommends that this firm receive: $2,000.00 for reimbursement of assessments; $4,119.34 for reimbursement of held costs; and $0.00 for common benefit fee.

•   **Whitfield Bryson & Mason LLP (fka Lewis & Roberts)**

○   **Assessments**

This firm has contributed $400,000.00 in assessments.  Of that amount, this firm has already been reimbursed $320,000.00.  This firm is entitled to reimbursement of the balance in the amount of ($400,000.00 - $320,000.00 =) $80,000.00.

○   **Held costs**

This firm is entitled to reimbursement of held costs in the amount of $149,666.16.

○   **Approved time**

This firm has devoted 7,864.35 approved hours toward the common benefit.

○   **Lodestar**

Using the firm's hourly rates at the inception of litigation, the firm's lodestar is $3,143,982.50.   Using the firm's 2013 hourly rates, the firm's lodestar is $4,162,384.00.  Using a blended rate, the firm's lodestar is $3,653,183.25.

---

[258]It is noteworthy that no member of this firm served on the FC.  Therefore, the FC had no financial incentive to overstate this firm's common benefit contribution.

[259]The Special Master takes seriously the Fifth Circuit's admonition that a court "has an independent duty under Federal Rule of Civil Procedure 23 to the class and the public to ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel," and therefore a court must not "merely 'ratify a pre-arranged compact.'"  *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d at 227, 228 (citations omitted).

○ **Common benefit contribution**

This firm is based in Raleigh, North Carolina.  Daniel Bryson served on the PSC. Mr. Bryson also served on the following committees: Scientific Committee, Expert Committee, Trial Committee, and Litigation Committee.  This firm reports that it made the following nonexclusive common benefit contributions: reviewing shipping documents, InEx invoices, and Knauf "Hot Docs"; selecting expert witnesses; developing the sulfur gas theory and resulting corrosion; preparing expert reports; participation in depositions; preparation of motions and attending hearings; assisting in mock trials; and participating in several trials, including but not limited to *Germano* and *Hernandez*.

○ **Other comments**

None.

○ **Special Master's recommendation**

The Special Master recommends that this firm receive: $80,000.00 for reimbursement of assessments; $149,666.16 for reimbursement of held costs; and $3,100,000.00 for common benefit fee.

# Conclusion

The Special Master recommends that the Court adopt these Recommendations Concerning the Allocation of Common Benefit Fees and the Reimbursement of Shared Expenses and Held Costs.[260]

Baton Rouge, Louisiana, this 4th day of December, 2018.

*Daniel J. Balhoff*
Daniel J. Balhoff, Special Master

---

[260]The Special Master has summarized his recommendations in the accompanying spreadsheet.  If there are any discrepancies between the above narrative and the spreadsheet, the spreadsheet should be considered controlling.