**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 |
| THIS DOCUMENT RELATES TO:<br>*Brooke et al. v. State-Owned Assets Supervision and Administration Commission of the State Council, et al.,* Case No. 15-4127 (E.D. La.) | SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |

**THE PLAINTIFFS' STEERING COMMITTEE'S**
**SUPPLEMENTAL BRIEF REGARDING TOLLING**
**PURSUANT TO THE ORDER OF NOVEMBER 13, 2018 [REC. DOC. 21914]**

# TABLE OF CONTENTS

1. States in Which Active Plaintiffs' Properties Are Located ...........................................2

2. Cross-Jurisdictional Tolling...............................................................................2

   A.   General Principles and the Landscape of Cross-Jurisdictional Tolling ...................2

       *i.*   *Federal Causes of Action Employ Cross-Jurisdictional Tolling* ...........2

       *ii.*  *Few States Have Addressed Cross-Jurisdictional Tolling, But the Trend Favors Adoption of Tolling* .........................................................4

       *iii. One Federal Circuit Has Applied Cross-Jurisdictional Tolling to Vindicate Federal Interests Despite a State's Rejection of It* ..............6

       *iv. The Class Action Fairness Act Establishes a Nationwide Policy Favoring the Filing and Maintenance of Class Action Lawsuits in Federal Court*...................................................................................7

   B.  State-by-State Survey of Class-Action and Cross-Jurisdictional Tolling................8

       *i.*   *Alabama* .................................................................................8

       *ii.*  *California*...............................................................................9

       *iii.* *Florida* .................................................................................11

       *iv.* *Georgia* ...............................................................................11

       *v.*   *Illinois* .................................................................................11

       *vi.* *Louisiana*.............................................................................12

       *vii.* *Mississippi*..........................................................................12

       *viii.* *North Carolina*....................................................................13

       *ix.* *Oklahoma* ...........................................................................13

       *x.*   *Texas* ...................................................................................14

       *xi.* *Virginia* ...............................................................................15

i

3.    Previously Filed State Court Class Actions ....................................................................15

4.    The Statutes of Limitations for All Actions in this Particular Case Should Be Tolled,
      Given the Conduct and Representations of the Defendants, under the Doctrine
      of Equitable Tolling ..........................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

Cases

*Adams Pub. Sch. Dist. v. Asbestos Corp.*,

    7 F.3d 717 (8th Cir. 1993) ...................................................................................................6

*American Pipe & Const. Co. v. Utah*,

    414 U.S. 538 (1974) .......................................................................................................2, 3

*Assaf v. Trinity Medical Center*,

    696 F.3d 681 (7th Cir. 2012) .............................................................................................24

*Barnhill v. U.S.*,

    11 F.3d 1360 (7th Cir.1993) .............................................................................................24

*Becnel v. Deutsche Bank*, AG,

    507 Fed. App'x 71 (2d Cir. 2013) ....................................................................................11

*Bell v. Showa Denko K.K.*,

    899 S.W.2d 749 (Tex. App. 1995) ................................................................................7, 14

*Bickerstaff v. Suntrust Bank*,

    788 S.E.2d 787 (Ga. 2016) ...............................................................................................11

*Birchwood-Manassas Associates LLC v. Birchwood at Oak Knoll Farm*,

    773 S.E.2d 162 (Va. 2015) ...............................................................................................17

*Boone v. Citigroup, Inc.*,

    416 F.3d 382 (5th Cir. 2005) ............................................................................................12

*Bozeman v. Lucent Techs., Inc.*,

    No. 2:05 CV 45 A, 2005 WL 2145911 (M.D. Ala. Aug. 31, 2005) ....................................8

*BP America Production v. Marshall*,

    342 S.W.3d 59 (Tex. 2011) ...............................................................................................17

*Brown v. McKee,*

    242 So.3d 121 (Miss. 2018) ............................................................................................16

*Casey v. Merck & Co.,*

    722 S.E.2d 842 (Va. 2012) .............................................................................................15

*Chardon v. Fumero Soto,*

    462 U.S. 650 (1983) ..........................................................................................................3

*Chinese Drywall,*

    742 F.3d ...........................................................................................................................21

*Christie v. Hartley Const., Inc.,*

    766 S.E.2d 283 (N.C. 2014) ...........................................................................................16

*Clemens v. DaimlerChrysler Corp.,*

    534 F.3d 1017 (9th Cir. 2008) ........................................................................................10

*Crown, Cork & Seal Co. v. Parker,*

    462 U.S. 345 (1983) .......................................................................................................2, 3

*CTS Corp. v. Waldburger,*

    573 U.S. 1 (2014) ............................................................................................................15

*Dart Cherokee Basin Operating Co. v. Owens,*

    135 S.Ct. 547 (2014) .........................................................................................................7

*DelCostello v. Int'l Bhd. of Teamsters,*

    462 U.S. 151 (1983) ..........................................................................................................3

*Dewey v. State ex rel. Oklahoma Firefighters Pension & Ret. Sys.,*

    28 P.3d 539 (Okla. 2001) ...............................................................................................13

*Dow Chem. Corp. v. Blanco,*

    67 A.3d 392 (Del. 2013) ...................................................................................................5

*Erie R. Co. v. Tompkins,*

    304 U.S. 64 (1938) ............................................................................................................4

iv

*First Baptist Church of Citronelle v. Citronelle-Mobile Gathering, Inc.,*

409 So.2d 727 (Ala. 1981) ................................................................................................8

*Florida Dept. of Health and Rehabilitative Services v. S.A.P.,*

835 So.2d 1091 (Fla. 2002) ............................................................................................16

*Fuller v. Sight "N Sound Appliance Centers, Inc.,*

982 P.2d 528 (Okla. Civ. App. 1999) ............................................................................13

*Gates v. Integris Baptist Med. Ctr. of Oklahoma, Inc.,*

84 P.3d 115 (Okla. Civ. App. 2004) ..............................................................................13

*Gen. Am. Life Ins. Co. Sales Practices Litig.,*

391 F.3d 907 (8th Cir. 2004) ............................................................................................6

*Glus v. Brooklyn E. Dist. Terminal,*

359 U.S. 231 (1959).........................................................................................................17

*Guaranty Trust Co. of N.Y. v. York,*

326 U.S. 99 (1945)............................................................................................................4

*Hatfield v. Halifax PLC,*

564 F.3d 1177 (9th Cir. 2009) ..........................................................................................9

*Hess v. I.R.E. Real Estate Income Fund, Ltd.,*

629 N.E.2d 520 (Ill. App. Ct. 1993) ..............................................................................11

*Hopper v. Novartis Pharm. Corp.,*

No. 2:12-CV-00755-MGL, 2013 WL 8147354 (D.S.C. Dec. 9, 2013) ...........................8

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.,*

894 F. Supp. 2d 819 (E.D. La. 2012) ............................................................18, 19, 20, 21

*In re Deepwater Horizon,*

808 F.Supp.2d 943 (E.D. La. 2011) .................................................................................1

*In re Libor-Based Fin. Instruments Antitrust Litig.,*

No. 11 MDL 2262 NRB, 2015 WL 4634541 (S.D.N.Y. Aug. 4, 2015) .....................5, 10

*In re Vioxx Products Liability Litig.*,

    522 F.Supp.2d 799 (E.D. La. 2007) ........................................................................................ 6

*Irwin v. Dep't of Veterans Affairs*,

    498 U.S. 89 (1990) .............................................................................................................. 17

*Johnson v. Ry. Exp. Agency, Inc.*,

    421 U.S. 454 (1975) ............................................................................................................ 24

*Jolly v. Eli Lilly & Co.*,

    751 P.2d 923 (Cal. 1988) ...................................................................................................... 9

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,

    313 U.S. 487 (1941) .............................................................................................................. 4

*Koehler v. Bank of Bermuda, Ltd.*,

    911 N.E.2d 825 (N.Y. 2009) ......................................................................................... 22, 23

*Krause v. Textron Financial Corp.*,

    59 So.3d 1085 (Fla. 2011) ................................................................................................. 11

*Lozano v. Montoya Alvarez*,

    572 U.S. 1 (2014) ............................................................................................................... 15

*Mabry v. Village of Glenwood*,

    41 N.E.3d 508 (Ill. App. Ct. 2015) .................................................................................... 16

*Marchesani v. Pellerin-Milnor*,

    269 F.3d 481 (5th Cir. 2001) ............................................................................................... 4

*McDonald v. Antelope Valley Community College District*,

    194 P.3d 1026 (Cal. 2008) ................................................................................................. 16

*McDonald v. Farm Bureau Ins. Co.*,

    747 N.W.2d 811 (Mich. 2008) .......................................................................................... 15

*Newby v. Enron Corp.*,

    542 F.3d 463 (5th Cir. 2008) ............................................................................................. 14

*Occidental Life Ins. Co. v. EEOC*,

    432 U.S. 355 (1977) ...................................................................................................................... 3

*Order of R.R. Telegraphers v. Ry. Express Agency*,

    321 U.S. 342 (1944) .................................................................................................................... 25

*Pace v. DiGuglielmo*,

    544 U.S. 408 (2005) .................................................................................................................... 17

*Piney Woods Country Life Sch. v. Shell Oil Co.*,

    170 F.Supp.2d 675 (S.D. Miss. 1999) ........................................................................................ 12

*Plaquemines Parish Comm'n Council v. Delta Develop. Co.*,

    502 So.2d 1034 (La. 1987) ......................................................................................................... 16

*Portwood v. Ford Motor Co.*,

    701 N.E.2d 1102 (Ill.1998) .................................................................................................... 5, 11

*Quinn v. Louisiana Citizens Property Ins. Corp.*,

    2012-0152 (La. 11/2/12), 118 So.3d 1011 ............................................................................... 1, 5

*Robinson v. Clark*,

    217 P.3d 155 (Okla. Civ. App. 2009) ........................................................................................ 17

*Roccaforte v. Jefferson County*,

    341 S.W.3d 919 (Tex. 2011) ...................................................................................................... 17

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*,

    No. 3:07CV62/MCR, 2008 WL 2385506 (N.D. Fla. June 9, 2008) ............................................ 6

*San Francisco Unified Sch. Dist. v. W.R. Grace & Co.*,

    44 Cal. Rptr. 2d 305  (Cal. Ct. App. 1995) ............................................................................... 10

*Scarvey v. First Fed. Sav. & Loan Ass'n of Charlotte*,

    552 S.E.2d 655 (N.C. Ct. App. 2001) ........................................................................................ 13

*Smith v. Bayer Corp.*,

    No. B145059, 2001 WL 1660064 (Cal. Ct. App. Dec. 28, 2001) ........................................... 9, 10

*Smith v. Transport Services Co.*,

    148 So.3d 903 (La. 2014) ........................................................................................12

*Standard Fire Ins. Co. v. Knowles*,

    568 U.S. 588 (2013).................................................................................................7

*Staub v. Eastman Kodak Co.*,

    726 A.2d 955 (N.J. Super. Ct. App. Div. 1999)......................................................4

*Steinberg v. Chicago Medical School*,

    371 N.E.2d 634 (Ill. 1977) ....................................................................................11

*Tigg v. Pirelli Tire Corp.*,

    232 S.W.3d 28 (Tenn. 2007)...................................................................................4

*Torkie-Tork v. Wyeth*,

    739 F.Supp.2d 887 (E.D. Va. 2010).......................................................................15

*USF&G Ins. Co. of Miss. v. Walls*,

    911 So.2d 463 (Miss. 2005)...................................................................................12

*Vaught v. Showa Denko K.K.*,

    107 F.3d 1137 (5th Cir. 1997) ...........................................................................7, 14

*Wade v. Danek Med., Inc.*,

    182 F.3d 281 (4th Cir. 1999) ................................................................................10

*Weaver v. Firestone*,

    155 So.3d 952 (Ala. 2013)....................................................................................16

*Welding, Inc. v. Bland County Service Authority*,

    541 S.E.2d 909 (Va. 2001)....................................................................................15

*White v. Sims*,

    470 So. 2d 1191 (Ala. 1985)...................................................................................8

*Young v. United States*,

    535 U.S. 43 (2002).............................................................................................15, 17

## Statutes

28 U.S.C. § 1367(d) .................................................................................................................6, 7, 11

42 U.S.C. § 1988 .................................................................................................................................3

GA. CODE ANN. § 9-3-96 .................................................................................................................16

Louisiana Civil Code Article 3542 .....................................................................................................4

Lousivie Civil Code Article 3549(B)(2) .............................................................................................4

Louisiana Civil Code Article 3549(C) ................................................................................................4

Louisiana Code of Civil Procedure Article 596 ...........................................................................4, 12

Okla. Stat. tit. 12, § 100 ....................................................................................................................13

Va. Code § 8.01-229(E)(1) ...............................................................................................................15

## Other Authorities

S. REP. NO. 109-14 .............................................................................................................................7

Plaintiffs respectfully submit the following brief in further opposition to the BNBM Defendants' Motion to Dismiss the *Brooke* Omnibus Complaint,[1] and in response to the Court's request for additional briefing:[2]

**MAY IT PLEASE THE COURT:**

As the Court has at least implicitly acknowledged, it would be inappropriate to grant the defendants' motion on a "blanket" basis, given the individual issues of accrual and/or notice under each State's discovery rule.[3] The Court, nevertheless, has sought further guidance from the parties regarding the availability of a legal doctrine that might effect a tolling of the relevant prescriptive period or statute of limitations on a "blanket" basis.[4]

To that end, the Court has asked the parties to elaborate on: (1) which Plaintiffs' claims remain active, including the states in which the affected properties are located; (2) whether those states allow for cross-jurisdictional tolling; (3) with respect to the states that do not allow for cross-jurisdictional tolling, whether a class action with a class definition covering the *Brooke* Plaintiffs

---

[1] *See* Rec. Doc. 19984; *see also* PLAINTIFFS' OPP'N [Rec. Doc. 21779] (Sept. 12, 2018).

[2] *See* ORDER [Rec. Doc. 21914] (Nov. 13, 2018); *see also* TRANSCRIPT (Nov. 15, 2018) at pp.7-8; *see also* ORDER [Rec. Doc. 21930] (Nov. 15, 2018) (revising briefing schedule deadlines).

[3] *See, e.g.,* TRANSCRIPT (Nov. 15, 2018) at p.7 ("one of the defenses that the defendants have raised is a prescription, statute of limitations, as we say sometimes. In that type of situation, some of those cases are really factually involved; that is to say, when did they know, what they knew, should they have known, all of that sort of thing"); *see also* OPP'N TO MOT. TO DISMISS [Rec. Doc. 21779] at pp.11-12 (*citing In re Deepwater Horizon,* 808 F.Supp.2d 943, 964-65 (E.D. La. 2011) (deferring the consideration of which individual plaintiffs' claims might be subject to dismissal for lack of presentment on defendant's Rule 12(b) motion to dismiss master complaint)); *see also Quinn v. Louisiana Citizens Property Ins. Corp.,* 2012-0152 (La. 11/2/12), 118 So.3d 1011, 1023 (because prescription statutes are to be liberally construed with the party urging prescription bearing the burden of proving the exception, plaintiffs are entitled and will, if necessary under the discovery rule, present additional allegations in a formal filing).

[4] *See, e.g.,* TRANSCRIPT (Nov. 15, 2018) at pp.7-8 ("there are some cases that might not be factually involved. They might be more legal issues.... So I asked counsel for their input as to those particular state laws, whether or not they recognize *American Pipe,* whether or not you need a class action in that state, or whether they recognize class actions that are filed in other cases are sufficient to interrupt prescription").

was filed in state court and, if so, whether and when that proposed class was certified or denied; and (4) whether the states in which the affected properties sit recognize other tolling doctrines.[5]

Accordingly, Plaintiffs respectfully provide the Court with the following brief.

## 1. States in Which Active Plaintiffs' Properties Are Located.

The active *Brooke* plaintiffs have properties located in the following States:

- Alabama
- California
- Florida
- Georgia
- Illinois
- Louisiana

- Mississippi
- North Carolina
- Oklahoma[6]
- Texas
- Virginia

*See* Addendum for detail.

## 2. Cross-Jurisdictional Tolling

### A.   General Principles and the Landscape of Cross-Jurisdictional Tolling.

#### i.   *Federal Causes of Action Employ Cross-Jurisdictional Tolling.*

In federal court, "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353-54 (1983). *Crown, Cork* built upon *American Pipe & Const. Co. v. Utah*, 414 U.S. 538 (1974), where the Supreme Court held that there were no longer any "conceptual or practical obstacles in the path

---

[5] *See* ORDER [Rec. Doc. 21914] (Nov. 13, 2018), at p.2.

[6] The *Cole* Omni Complaint was filed on October 26, 2018 in the District of Oklahoma and only recently transferred to the MDL on November 27, 2018, and not specifically encompassed by the defendants' motions to dismiss. Nonetheless, plaintiffs identify this action as one that would become subject to the Court's ruling.

of holding that the filing of a timely class action complaint commences the action for all members of the class as subsequently determined" because, under Rule 23, a class action is "a truly representative suit designed to avoid, rather than encourage, unnecessary filing of repetitious papers and motions." *American Pipe*, 414 U.S. at 550.

Tolling on this basis does not conflict with "the functional operation of a statute of limitations" because the filing of the class action supplies defendants with "the essential information necessary to determine both the subject matter and size of the prospective litigation," thereby fulfilling the rationale behind limitations periods. *Id*. at 554, 555. *American Pipe* tolling thus seeks to further the "efficiency and economy of litigation" purposes of the class action device by avoiding the "needless multiplicity of actions." *Crown, Cork*, 462 U.S. at 349, 351.

While federal statutes of limitations and tolling rules generally apply to federal causes of action,[7] state statutes of limitations and tolling rules generally apply to state causes of action. As the Court has noted, a federal court sitting under diversity jurisdiction treats state statutes of limitations as substantive under the *Erie* doctrine, thereby requiring the use of state law in determining the **applicable** limitations period. *See* ORDER [Rec. Doc. 21914] (Nov. 13, 2018), at

---

[7] One exception to the general rule relying upon federal statute of limitations is when a federal statute explicitly relies upon state statutes of limitations. *See, e.g., Chardon v. Fumero Soto*, 462 U.S. 650, 661 (1983) (explaining that 42 U.S.C. § 1988 directs federal courts to borrow state statutes of limitations unless inconsistent with federal law). Another exception is when there is no applicable federal statute of limitations, and courts generally use usually "the most closely analogous statute of limitations under state law." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 158 (1983). *But see id*. at 161 (where state statutes of limitations are "unsatisfactory vehicles for the enforcement of federal law," they will not be applied so that the "importation of state law will not frustrate or interfere with the implementation of national policies.") (*quoting Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 367 (1977)).

p.1 (*citing Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 110-11 (1945) (applying *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)).[8]

Notably, however, the prevailing choice-of-law provision under *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487 (1941)[9] is not Louisiana Civil Code Article 3542, but Article 3549, which creates a presumption that an action that is timely filed in Louisiana is timely.  *See, e.g., Marchesani v. Pellerin-Milnor,* 269 F.3d 481, 490-93 (5th Cir. 2001) (maintaining timely filed suit in Louisiana, despite the fact that the action would be barred under Tennessee's state of repose).[10] Because, therefore, the *Silva* class action filing in Louisiana state court suspended prescription under Louisiana Code of Civil Procedure Article 596,[11] filings in the Eastern District of Louisiana are presumed to be timely.

> ii.     *Few States Have Addressed Cross-Jurisdictional Tolling, But the Trend Favors Adoption of Tolling.*

A majority of states have adopted a class action tolling rule that largely follows *American Pipe* and *Crown, Cork.  See Tigg v. Pirelli Tire Corp.,* 232 S.W.3d 28, 33 (Tenn. 2007) (surveying cases); *Staub v. Eastman Kodak Co.*, 726 A.2d 955, 963 (N.J. Super. Ct. App. Div. 1999) (same). Few states, however, have addressed the issue of cross-jurisdictional tolling for class actions. As a general matter, "cases rejecting cross-jurisdictional tolling (particularly those that were decided

---

[8] As discussed more fully ahead, Plaintiffs question whether strict adherence to such precedent, in this particular context of cross-jurisdictional tolling based on federally filed class actions, appropriately accounts for the federal policy and effect of the Class Action Fairness Act, passed in 2005.

[9] *Id.* at 496.

[10] While *Marchesani* was legislatively overruled, in part, with respect to the application of substantive statutes of repose, by the addition of Louisiana Civil Code Article 3549(C), where a merely procedural statute of limitation is concerned, the presumption for the maintenance of an action timely filed in Louisiana is retained under Article 3549(B)(2).

[11] *See* OPP'N TO MOT. TO DISMISS [Rec. Doc. 21779], at pp.12-13.

early in the development of this doctrine) tend to emphasize a risk that a state will attract individual out-of-state plaintiffs after a failed federal class action." *In re Libor-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 NRB, 2015 WL 4634541, at *128 (S.D.N.Y. Aug. 4, 2015), *amended*, No. 11 MDL 2262 (NRB), 2015 WL 13122396 (Oct. 19, 2015) (*citing*, *e.g., Portwood v. Ford Motor Co.,* 701 N.E.2d 1102, 1104 (Ill.1998), *cert. denied,* 525 U.S. 1148 (1999). On the other hand, "cases adopting cross-jurisdictional tolling point out that rejecting cross-jurisdictional tolling creates a risk that individual plaintiffs will file duplicative 'placeholder'" suits to preserve their rights while a class action is pending elsewhere. *Id.* (*citing*, *e.g., Dow Chem. Corp. v. Blanco*, 67 A.3d 392, 395 (Del. 2013)); *see also Quinn v. Louisiana Citizens Prop. Ins. Corp.*, 2012-0152 (La. 11/2/12), 118 So. 3d 1011, 1021-22 (outlining same rationales).

After conducting its own survey, the *Libor* court concluded that the states are evenly divided on cross-jurisdictional tolling, that "[c]ross-jurisdictional tolling may even be the majority rule among state courts that have decided the question, and [that] the trend is in favor of tolling." *Libor*, 2015 WL 4634541, at *129. It added that, in states where intra-jurisdictional tolling is accepted, "the best prediction is that a state would recognize cross-jurisdictional tolling." *Id*. After all, it reasoned, the same considerations and same notice obtain regardless of the place where the case is filed, while the "parties' parades of docket-control horribles are unpersuasive," given "[m]ost states have a general 'borrowing rule' that prevents an out-of-state plaintiff from filing if his suit would be barred in his home state" and that "[p]ersonal jurisdiction may also bar many claims filed by non-resident plaintiffs against non-resident defendants." *Id*.

iii.    *One Federal Circuit Has Applied Cross-Jurisdictional Tolling to Vindicate Federal Interests Despite a State's Rejection of It.*

In addition, one federal circuit has applied cross-jurisdictional tolling to vindicate the federal interests described in *American Pipe,* even when state law would deny the class-action member the ability to continue the case. The Eighth Circuit held that the "federal interest in 'the efficiency and economy of the class-action procedure' outweighs any state interest and therefore justifies tolling in diversity cases where the otherwise-applicable state law provides no relief.'" *In re Gen. Am. Life Ins. Co. Sales Practices Litig.*, 391 F.3d 907, 915 (8th Cir. 2004) (*quoting Adams Pub. Sch. Dist. v. Asbestos Corp.*, 7 F.3d 717, 718-19 (8th Cir. 1993)). *General American Life* involved a bad-faith insurance case originally filed in Pennsylvania state court, removed to the federal Western District of Pennsylvania, and then transferred to the Eastern District of Missouri by the Judicial Panel on Multidistrict Litigation.  *Id.* at 910.  The Eighth Circuit concluded that Pennsylvania did not recognize cross-jurisdictional tolling, yet still imposed that variety of tolling. Few other courts have examined the approach to tolling adopted by Eighth Circuit. Of the jurisdictions relevant to the *Brooke* class, only the U.S. District Court for the Northern District of Florida has, and it indicated that it would follow *General American Life*, though it actually applied Louisiana law and permitted tolling under its reading of Louisiana law. *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, No. 3:07CV62/MCR, 2008 WL 2385506, at *3, *4 (N.D. Fla. June 9, 2008) (citing *In re Vioxx Products Liability Litig.*, 522 F.Supp.2d 799, 811 n.12 (E.D. La. 2007); *see also, e.g.,* 28 U.S.C. § 1367(d) (tolling limitations periods for state law claims originally joined in federal court).

Although the other circuits have not reviewed the Eighth Circuit's approach to cross-jurisdictional tolling, the leading treatise on class actions, Newberg on Class Actions, argues that

cross-jurisdictional tolling would best serve the interests of federalism so that a "unitary national *American Pipe* tolling approach, with a class action anywhere tolling individual claims everywhere," should be adopted. 3 NEWBERG ON CLASS ACTIONS (5th ed.) §9:68. The Eighth Circuit's rationale of a "federal interest in 'the efficiency and economy of the class-action procedure'" doubly applies to the cases before this Court because of both their combined MDL and CAFA jurisdictional status.

>            iv.    *The Class Action Fairness Act Establishes a Nationwide Policy*
>                   *Favoring the Filing and Maintenance of Class Action Lawsuits in*
>                   *Federal Court.*

It is well-settled that CAFA was enacted to facilitate the adjudication of multi-state class actions in federal court. *Dart Cherokee Basin Operating Co. v. Owens,* 135 S.Ct. 547, 554 (2014); *Standard Fire Ins. Co. v. Knowles,* 568 U.S. 588, 595 (2013) ("CAFA's primary objective" is to "ensure 'Federal court consideration of interstate cases of national importance'") (*quoting* §2(b)(2), 119 Stat. 5); S. REP. NO. 109-14, at 43 (2005) (CAFA's "provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court"). The scant caselaw on cross-jurisdictional tolling seems to have predated or largely ignored the import and effect of CAFA. As a practical matter, state law diversity cases that would have previously been filed and litigated in state court are now all being filed and litigated in federal court. And if it is indeed federal policy that such state law class actions be filed and adjudicated in federal court as matters of "national importance," why would the federal policy underlying *American Pipe* and *Crown, Cork* not similarly apply?[12]

---

[12] *See, e.g., Vaught v. Showa Denko K.K.,* 107 F.3d 1137, 1147 (5th Cir. 1997) (pre-CAFA) ("the Texas non-tolling rule (stated in *Bell v. Showa Denko K.K.*, 899 S.W.2d 749 (Tex. App. 1995)) could arguably be displaced because it conflicts with the well-established federal tolling practice promulgated in *American Pipe* and *Crown, Cork & Seal*"). *See also, e.g.,* 28 U.S.C. § 1367(d) (tolling limitations periods for state law claims originally joined in federal court).

**B.      State-by-State Survey of Class-Action and Cross-Jurisdictional Tolling.**

   *i.      Alabama*

Alabama has wholeheartedly embraced the *American Pipe* rule. In *First Baptist Church of Citronelle v. Citronelle-Mobile Gathering, Inc.*, 409 So.2d 727 (Ala. 1981), the Alabama Supreme Court held that a statute of limitations is tolled from the date of the commencement of the action until the date of denial of class certification, when the interests of putative class members are not adequately protected by the representative of the class or by the court. *Id.* at 728. In subsequently applying class action tolling, the Alabama Supreme Court anticipated *Crown, Cork* and extended tolling beyond intervenors to those who seek to file independent actions. *White v. Sims*, 470 So. 2d 1191, 1193 (Ala. 1985). The court further held that "when a class action is instituted against a class of unnamed defendants, the statute is tolled as to all putative members of the defendant class." *Id.*

Despite its enthusiastic adherence to *American Pipe*, no Alabama decision discusses cross-jurisdictional tolling. In two unreported federal district court decisions, judges, refusing to make an *Erie* guess, effectively placed the burden on plaintiffs to provide a clear indication that the Alabama Supreme Court would embrace the concept. *Hopper v. Novartis Pharm. Corp.*, No. 2:12-CV-00755-MGL, 2013 WL 8147354 (D.S.C. Dec. 9, 2013); *Bozeman v. Lucent Techs., Inc.*, No. 2:05 CV 45 A, 2005 WL 2145911 (M.D. Ala. Aug. 31, 2005).  Notably, however, the plaintiffs in *Bozeman* were attempting to "toll their **state securities law claim** when a separate earlier class action dealt with a **federal securities law claim**." *Bozeman*, 2005 WL 2145911, at *2 (emphasis in original).

ii.     California

This Court has already received briefing on California's approach to the tolling issues.[13] As that briefing made clear, California has generally adopted *American Pipe* tolling. *See Jolly v. Eli Lilly & Co.*, 751 P.2d 923 (Cal. 1988); *see also Hatfield v. Halifax PLC*, 564 F.3d 1177 (9th Cir. 2009) (the "California Supreme Court has indicated a general agreement with tolling in the class action context.") (*citing Jolly*).

*Jolly* recognized that mass tort actions often turn on individual facts and that might provide reason not to apply tolling, yet it did not answer that question and said it "need not address the broader question whether in any personal injury mass-tort case the filing of a class action complaint can serve to toll the statute of limitations for putative class members when the class ultimately is denied certification for lack of commonality." *Jolly*, 751 P.2d at 937. Nonetheless, in an "unpublished/noncitable" decision subsequent to *Jolly*, the California Court of Appeals held a one-year statute of limitations was tolled by the existence of two federal class actions both of which were filed in the Northern District of Illinois. *Smith v. Bayer Corp.*, No. B145059, 2001 WL 1660064, at *9 (Cal. Ct. App. Dec. 28, 2001). In doing so, the *Smith* court relied on Seventh Circuit precedent recognizing tolling and an earlier California Court of Appeals decision. The latter involved property damage resulting from asbestos contamination. The court reasoned that "because the class action was filed in federal district court and the United States Supreme Court is the ultimate authority on the meaning of Federal Rules of Civil Procedure, under the supremacy clause, the Supreme Court decisions on class action tolling have the force of law in California if

---

[13] *See* OPP'N TO MOT. TO DISMISS *ABNER* [Rec. Doc. 21766-2] (Sept. 7, 2018).

9

the class action was filed in federal court." *Smith*, 2001 WL 1660064, at *11 (describing *San Francisco Unified Sch. Dist. v. W.R. Grace & Co.,* 44 Cal. Rptr. 2d 305  (Cal. Ct. App. 1995)).

The California Supreme Court has not addressed cross-jurisdictional tolling, and the federal courts predicting its position are split on the subject. *Compare Libor*, 2015 WL 4634541, at *130 ("we can comfortably predict the California Supreme Court would accept class-action [cross-jurisdictional] tolling generally."), *with Clemens v. DaimlerChrysler Corp*., 534 F.3d 1017, 1025 (9th Cir. 2008). In *Clemens*, relying on a handful of older cases, the court rejected cross-jurisdictional tolling based on policies that are inapplicable here. *See Clemens*, 534 F.3d at 1025 (*citing Wade v. Danek Med., Inc.,* 182 F.3d 281, 287-88 (4th Cir. 1999) (noting Virginia's lack of interest in furthering the economy of class action procedures in another jurisdiction, the risk that forum-shopping plaintiffs from out of state would swell the dockets of Virginia's courts, and the unwieldy prospect of tying Virginia's statute of limitations to the resolution of claims in other jurisdictions)). In this post-CAFA world, of course, there is a nationwide policy of furthering the economy of class action procedures through federal court jurisdiction; nor is there any risk of the MDL *Brooke* plaintiffs "swelling" the state court dockets in California. Indeed, it is the refusal to recognize cross-jurisdictional tolling that actually encourages the filing of multiple unnecessary actions. *See* 3 NEWBERG ON CLASS ACTIONS (5th ed.) §9:68 ("Residents will flood courts with protective actions if not recognized").

Consistent with this approach, a more recent decision reviewed the landscape of state pronouncements on the issue and declared that "we can comfortably predict that the California Supreme Court would accept class-action [cross-jurisdictional] tolling generally." *Libor*, 2015 WL 4634541, at *130.

iii.     *Florida*

It does not appear that Florida state law provides for the tolling of the statute in class actions. *See Becnel v. Deutsche Bank*, AG, 507 Fed. App'x 71, 73 (2d Cir. 2013). Notably, however, the Florida Supreme Court has recognized that the tolling provision found within 28 U.S.C. § 1367(d) "serves to prevent the limitations period from expiring while a plaintiff unsuccessfully pursues state claims in federal court." *Krause v. Textron Financial Corp.,* 59 So.3d 1085, 1091 (Fla. 2011) (holding that the statute of limitations was tolled with respect to state law claims that were dismissed on the basis that the Bankruptcy Court lacked subject matter jurisdiction).

iv.     *Georgia*

While no state court appears to have directly addressed the issue of cross-jurisdictional tolling, and no federal court appears to have made an *Erie* guess, Georgia broadly recognizes class action tolling, affording class members the benefit of the named class representative's filing. *See Bickerstaff v. Suntrust Bank*, 788 S.E.2d 787, 791 (Ga. 2016), *cert. denied*, 137 S. Ct. 571 (2016) (signaling rejection of an arbitration agreement and tolling the time in which putative class members were required to notify the defendant of their similar intent to decline arbitration).

v.     *Illinois*

Illinois adopted *American Pipe* early on. *See Steinberg v. Chicago Medical School*, 371 N.E.2d 634 (Ill. 1977); *see also Hess v. I.R.E. Real Estate Income Fund, Ltd.*, 629 N.E.2d 520 (Ill. App. Ct. 1993) (discussing *American Pipe*, *Crown, Cork,* and *Steinberg*). However, it appears that cross-jurisdictional tolling has not been accepted. *Portwood,* 701 N.E.2d at 1102 (pre-CAFA).

### vi. Louisiana

This Court has received prior briefing on Louisiana law concerning tolling.[14] In brief, Louisiana has adopted tolling for class actions by statute.  La. Code Civ. Proc. Ann. art. 596. Although the Louisiana Supreme Court rejected cross-jurisdictional tolling in *Quinn*, *supra,* it also held that cross-jurisdictional class action tolling does apply to a case originating in Louisiana state court but removed to federal court by the defendant. *Smith v. Transport Services Co.,* 148 So.3d 903 (La. 2014), *cert denied*, 135 S.Ct. 1404 (2015). Because the *Silva* petitions were filed in Louisiana state court prior to removal, prescription was suspended for Louisiana Chinese Drywall owners under Article 596.[15]

### vii. Mississippi

Mississippi has no class action procedure. *USF&G Ins. Co. of Miss. v. Walls*, 911 So.2d 463, 464 (Miss. 2005). Its state courts do not appear to have considered whether to accord its residents the benefits of tolling when members of a putative federal court class action. In the Fifth Circuit, tolling under *American Pipe* is afforded to Mississippi residents who are "indisputably members of the putative class seeking to recover on the identical cause of action." *Boone v. Citigroup, Inc.,* 416 F.3d 382, 394 (5th Cir. 2005) (*citing Piney Woods Country Life Sch. v. Shell Oil Co.,* 170 F.Supp.2d 675, 677 (S.D. Miss. 1999)).

---

[14] *See* PLAINTIFFS' OPP'N TO MOT. TO DISMISS [Rec. Doc. 21779] (Sept. 12, 2018), at pp.6-17.

[15] *See* OPP'N TO MOT. TO DISMISS [Rec. Doc. 21779], at pp.12-13. In particular, *Silva v. Interior Exterior,* No.09-12503, was filed in the Civil District Court for the Parish of Orleans, on November 30, 2009, and *Silva v. Arch, et al,* No.2009-17087, was filed in the 22nd Judicial District Court, on December 1, 2009.

viii.    *North Carolina*

*American Pipe* tolling was adopted in North Carolina. *Scarvey v. First Fed. Sav. & Loan Ass'n of Charlotte*, 552 S.E.2d 655, 661 (N.C. Ct. App. 2001) ("statutes of limitations on claims raised in a class action complaint are tolled as to all putative members of the class from the filing of the complaint until a denial of class action certification by the trial court, as per *American Pipe* and *Crown, Cork.*").  It does not appear that the issue of cross-jurisdictional tolling has been specifically addressed by the courts in North Carolina.

ix.    *Oklahoma*

Oklahoma also recognizes *American Pipe* tolling. *American Fuller v. Sight "N Sound Appliance Centers, Inc.*, 982 P.2d 528, 531 n.5 (Okla. Civ. App. 1999) (concluding that it would follow the Supreme Court's rule from *American Pipe*); *see also Dewey v. State ex rel. Oklahoma Firefighters Pension & Ret. Sys.*, 28 P.3d 539, 547 & n.30 (Okla. 2001) (holding that it is the filing of the class action that tolls the statute of limitations and the Court's ruling in this case comports with the U.S. Supreme Court's decision in *American Pipe).*

A state savings statute allows for cross-jurisdictional tolling. Okla. Stat. tit. 12, § 100 provides that "any action" commenced within due time, where the plaintiff's judgment is reversed or fails other than on the merits, may file a new action in state court "within one (1) year." Applying that clause, a state court held that a federal court's order of dismissal does not preclude the subsequent reassertion of the original negligence claim in the state court." *Gates v. Integris Baptist Med. Ctr. of Oklahoma, Inc.*, 84 P.3d 115, 117 (Okla. Civ. App. 2004).

13

> x.    *Texas*

While Texas has generally adopted *American Pipe* with respect to class actions filed in Texas state court, some courts have declined to extend such tolling with respect to class actions filed in federal court. *See Newby v. Enron Corp.,* 542 F.3d 463, 471-72 (5th Cir. 2008).  However, this stems largely from pre-CAFA cases which, even at that time, recognized that "the Texas non-tolling rule (stated in *Bell v. Showa Denko K.K.*, 899 S.W.2d 749 (Tex. App. 1995)) could arguably be displaced because it conflicts with the well-established federal tolling practice promulgated in *American Pipe* and *Crown, Cork & Seal.*" *Vaught v. Showa Denko K.K.,* 107 F.3d 1137, 1147 (5th Cir. 1997) (pre-CAFA).

Moreover, the basis for declining to extend *American Pipe* type tolling to federal court class actions was that "the state rules for tolling are based on state, not federal, law." *Newby,* 542 F.3d at 471-72 (*citing Bell,* 899 S.W.2d at 757-58) (pre-CAFA). In this case, of course, both the previously filed class action and the subsequently filed actions were and are based on the same Texas state law.

The Texas state court in *Bell* also declined to apply *American Pipe* in that case because the initial class action was for personal injuries, while the subsequent state court actions "were a readily discernible group of people claiming injury to certain property rather than personal injury." *Bell,* 899 S.W.2d at 758. The court found that distinction crucial "in determining whether the defendants have received fair notice of the existence of a claim by the filing of a class suit." *Id.*  In this case, by contrast, the same claims for the same property damages were the subject of the putative class actions, and Defendants were clearly on notice with respect to the existence of such claims.

*xi.   Virginia*

While Virginia has recognized *American Pipe* tolling under Va. Code § 8.01-229(E)(1) and *Welding, Inc. v. Bland County Service Authority,* 541 S.E.2d 909 (Va. 2001) (*see also Torkie-Tork v. Wyeth,* 739 F.Supp.2d 887, 894 (E.D. Va. 2010) ("statutory tolling clearly applies ... to a federal class action suit")), the Virginia Supreme Court, (without considering the policy or effect of CAFA), held that tolling did not apply with respect to a previous class action that had been filed in Tennessee. *Casey v. Merck & Co.*, 722 S.E.2d 842, 845 (Va. 2012).

**3.   Previously Filed State Court Class Actions**

As noted *supra*, a pair of *Silva* class actions were filed in Louisiana state court prior to removal and transfer to the MDL, and class certification of those actions has never been denied. *See* fn. 15 *supra.*

**4.   The Statutes of Limitations for All Actions in this Particular Case Should Be Tolled, Given the Conduct and Representations of the Defendants, under the Doctrine of Equitable Tolling**

It is well-settled that statutes of limitation remain "subject to equitable tolling, a doctrine that 'pauses the running of, or "tolls," a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action.'" *CTS Corp. v. Waldburger*, 573 U.S. 1, 9 (2014) (*quoting Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014)); *see also, e.g., Young v. United States,* 535 U.S. 43, 49 (2002) ("It is hornbook law that limitations periods are customarily subject to equitable tolling"). Most states follow equitable tolling, as it "aris[es] out of our common law, and it may be invoked when traditional equitable reasons compel such a result." *McDonald v. Farm Bureau Ins. Co.*, 747 N.W.2d 811, 819 (Mich. 2008).

A version of this near-universal doctrine has been recognized in the forum State of Louisiana and the other relevant states. *See, e.g., Plaquemines Parish Comm'n Council v. Delta Develop. Co.,* 502 So.2d 1034, 1056 (La. 1987) (under the Third Category of *contra non valentum,* which works like an estoppel, based on the defendants' misconduct and misrepresentations, "whether the cause of action is known or reasonably knowable is not alone dispositive");[16] *see also, e.g., Weaver v. Firestone,* 155 So.3d 952, 958-59 (Ala. 2013) (recognizing the doctrine of equitable tolling): *McDonald v. Antelope Valley Community College District,* 194 P.3d 1026, 1031 (Cal. 2008) (recognizing equitable tolling "to prevent unjust and technical forfeitures of the right to a trial on the merits when the purpose of the statute of limitations—timely notice to the defendant of the plaintiff's claims—has been satisfied."); *Florida Dept. of Health and Rehabilitative Services v. S.A.P.,* 835 So.2d 1091, 1095-99 (Fla. 2002) (recognizing the application of equitable estoppel to toll the statute of limitations based on a defendant's fraudulent concealment or other misconduct); GA. CODE ANN. § 9-3-96 (tolling where the "defendant or those under whom he claims are guilty of a fraud by which the plaintiff has been debarred or deterred from bringing an action"); *Mabry v. Village of Glenwood,* 41 N.E.3d 508, 512 (Ill. App. Ct. 2015) (equitable tolling is recognized where the defendant actively misleads the plaintiff); *Brown v. McKee,* 242 So.3d 121, 130 (Miss. 2018) (confirming that equitable estoppel may be applied to toll the statute of limitations where the defendant is guilty of inequitable or fraudulent conduct); *Christie v. Hartley Const., Inc.,* 766 S.E.2d 283, 286 (N.C. 2014) (confirming that the statute of limitations is subject to equitable defenses, such as "when delay has been induced by acts, representations, or conduct, the repudiation of which would amount to a breach of good faith");

---

[16] *See generally* OPP'N TO MOT. TO DISMISS [Rec. Doc. 21779] at pp.8-10.

*Robinson v. Clark,* 217 P.3d 155, 156 (Okla. Civ. App. 2009) (recognizing that an ordinary statute of limitations may be tolled or waived); *BP America Production v. Marshall,* 342 S.W.3d 59, 67 (Tex. 2011) (a defendant's fraudulent concealment of wrongdoing may toll the statute of limitations, as a matter of equity, after the cause of action accrues);[17] *Birchwood-Manassas Associates LLC v. Birchwood at Oak Knoll Farm,* 773 S.E.2d 162, 164 (Va. 2015) (confirming that equity will toll a statute of limitations under certain extraordinary circumstances).

Equitable tolling is a concept "[d]eeply rooted in our jurisprudence," "applied in many diverse classes of cases by both law and equity courts and has frequently been employed to bar inequitable reliance on statutes of limitations." *Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231, 232-33 (1959) (footnotes omitted). The Supreme Court has permitted equitable tolling, *inter alia*, in situations "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) (footnotes omitted). Generally, equitable tolling requires the establishment of two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

In this particular case, Defendants have, for almost ten years, made calculated and strategic decisions to erect as many roadblocks as possible to the plaintiffs' ability to recover for the

---

[17] *See also, e.g., Roccaforte v. Jefferson County,* 341 S.W.3d 919, 930 n.24 (Tex. 2011) (Willet, J., concurring) ("It is hornbook law that limitations periods are customarily subject to equitable tolling, unless tolling would be inconsistent with the text of the relevant statute") (*quoting Young, supra,* 535 U.S. at 49).

contamination that Chinese Drywall has caused to their homes. As recognized by this Court, CNBM, on July 18, 2014, acknowledged that:

> Although the US lawyers of BNBM and Taishan Gypsum estimate that the damages that might be imposed in the US court's default judgments for the gypsum board cases might be very large, since the major assets of the Company, BNBM and Taishan Gypsum are all located in China, according to the US and Chinese lawyers whom BNBM and Taishan Gypsum have respectively consulted, <u>there is no convention or treaty on mutual recognition and enforcement of judgments between China and the US such that the possibility of the US judgments being enforced in China is very low</u>. Therefore, based on information currently available to the Company, the Company believes that the US courts' judgments will not result in significant economic loss to the Group and will not have material adverse impact on the Group's production and operation.[18]

Even before the MDL was formed, after service of process was perfected on Taishan in *Mitchell*[19] under the Hague Convention on May 8, 2009,[20] Taishan indicated to its leaders Chief SONG and Chief CAO of CNBM Group that it was "inclined not to respond to the lawsuit."[21] Taishan asked CNBM Group for instructions and approval as to whether such inaction was appropriate.[22]

Around the same time, CNBM Group was contacted by the Chairman of the Board of its chief competitor Knauf, who encouraged "CNBM and BNBM [to] take effective measures to respond to the U.S. consumer lawsuits and media coverage as soon as possible."[23] However, in

---

[18] *See* ORDER AND REASONS [Rec. Doc. 21108] (Jan. 2, 2018) at p.16 [2018 WL 279629, at *8].

[19] *The Mitchell Co., Inc. v. Knauf Gips KG, et al.*, Case No. 09-4115 (E.D. La.).

[20] *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 894 F. Supp. 2d 819, 832 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014) & 753 F.3d 521 (5th Cir. 2014); *see also* Rec. Doc. No. 52.

[21] *See* "Informational Report on the Class Actions Brought by the U.S. Parties Against Taishan Gypsum Company Limited" dated 5/11/2009 [Rec. Doc. No. 21641].

[22] *Id.* at TG-0208430.

[23] *See* Letter from David Gregory, Chairman of the Board of Knauf Plasterboard (Tianjin) Co., Ltd., to SONG Zhiping, Chairman of the Board of CNBM Group, dated 5/15/2009 [KNAUFGIPS0160544-888] [MTD Ex. 187]; *see also*

accordance with their plan not to answer any Chinese Drywall suits, defendants sat on the sidelines, refusing to participate in these proceedings.

Represented by esteemed American lawyers,[24] their legal strategies included "reject[ing] the service of legal process"[25] and deliberately allowing multiple default judgments to be entered against them. Following the formation of the MDL on June 15, 2009, and right after Taishan was served with process in *Germano*[26] under the Hague Convention on August 3, 2009,[27] Defendants consulted with three U.S. law firms, including Orrick, regarding U.S. Chinese Drywall lawsuits [Course of Events memo, p. 1][Rec.Doc. 21641-192].  BNBM and Taishan were aware of the consequences of defaults: "Judge Fallon already issued a warning to Taishan Gypsum. If Taishan Gypsum did not respond to the litigation before September 24, 2009, the judge will hold a hearing on September 24, 2009, and issue a default judgment against Taishan Gypsum." [*Id. at* p. 6]. Nevertheless, despite their awareness and close monitoring of the Chinese Drywall proceedings, however, none of these defendants entered an appearance in the litigation.[28] It was not until the

---

Letter from Mark Norris, Commercial Director of  Knauf Plasterboard (Tianjin) Co., Ltd., to WANG Bing, General Manager of BNBM Group, dated 5/15/2009 (referencing 90 lawsuits against Taishan and BNBM and wide media coverage of the Chinese Drywall crisis) [MTD Ex. 187] [Attached as Exhibit "A" FILED UNDER SEAL].

[24] In fact, as of June 30, 2017, BNBM and Taishan collectively paid in excess of $62.6 million in attorneys' fees for advice they received related to the "U.S. gypsum board litigation matter."  *See* BNBM Interim Report dated 8/17/2017 (Translation of relevant pages attached hereto as Exhibit "B" FILED UNDER SEAL) (reporting that "the Company and Taishan Gypsum have accumulatively paid a total of 460,602,374.66 yuan of attorney's fee, travel expense, judgment payment and settlement payment, etc. for this litigation," which amounts to >$62.6 million for attorneys' fees, using current rates of conversion, after accounting for the payment of the *Germano* judgment, fines for contempt and a settlement of *Dragas* in Virginia).  The corresponding attorneys' fees paid by the controlling parents of BNBM and Taishan – *i.e.*, CNBM Group and CNBM – for legal advice in this case has not been disclosed.

[25] *See* Mem. re: "The Course of Events on Hiring Foreign Law Firms for the Gypsum Board Litigation in the United States—Brief Version of the Related Meetings" ("Course of Events Memo – Brief Version") at 3-4 [Rec. Doc. 21641-245].

[26] *Germano v. Taishan Gypsum Co., Ltd.*, Case No. 09-6687 (E.D. La.).

[27] *See Chinese Drywall*, 894 F.Supp.2d at 832.

[28] On May 28, 2010, BNBM admitted it had been served with notice of the allegations against the company concerning defects in its Chinese Drywall, but rather than respond to the lawsuits, "[t]he Company and Taishan Gypsum w[ould]

default judgment was entered in *Germano* on May 11, 2010,[29] that defendants made the decision to test the jurisdiction of this Court.

On June 3, 2010, it was determined by Chairman SONG that CNBM Group would "organize the response to the litigation." The plan was to "adopt the 'limited response to litigation' strategy …,"[30] whereby Taishan, as the stalking horse for defendants, would enter its appearance solely for purposes of challenging personal jurisdiction. In addition, defendants would "continu[e] to reject the service of legal process."[31]

Defendants' avoidance-of-Chinese-Drywall-lawsuits game plan resulted in four years of additional delay for plaintiffs. From 2010-2012, the PSC made multiple trips to Hong Kong for jurisdictional discovery of Taishan's employees and directors (which, as a result of numerous obstructions and problems with the interpretation and translation of witnesses' testimony,[32] required this Court to take the extraordinary step of personally attending the overseas depositions[33] in order to "listen to the testimony and … evaluate the credibility of the truthfulness of the

---

[29] Rec. Doc. 3013.

[30] Course of Events Memo – Brief Version at 3-4.

[31] *Id.*

[32] *See* Order and Reasons dated 9/9/2011 [Rec. Doc. 10269] at 5; *see also* Order dated 5/26/2011 [Rec. Doc. 9107].

[33] *See* Rec. Doc. 9107.

20

witnesses,"[34] and make appropriate rulings on objections). The PSC issued dozens of third-party subpoenas and document requests. In addition, the PSC served jurisdictional discovery on Taishan[35] and then filed several motions to compel adequate and complete responses to that discovery.[36] The PSC also reviewed and analyzed tens of thousands of pages of documents related to Taishan's sales of Chinese Drywall to customers in the U.S. Following these steps, the parties wrote and exchanged hundreds of pages of briefs on issues related to this Court's jurisdiction over Taishan and its wholly-owned subsidiary Taian Taishan Plasterboard Co., Ltd. ("TTP"). The result? In September, 2012, this Court issued a 142-page opinion finding that: (1) Taishan and TTP are alter egos; (2) these Defendants are subject to the jurisdiction of this Court under Virginia, Florida, and Louisiana law; and (3) there are no grounds to vacate either the *Germano* judgment or the *Mitchell* preliminary default.[37] Not surprisingly, defendants were unwilling to accept this Court's jurisdictional rulings. Taishan filed four appeals to the Fifth Circuit, and after hundreds of additional pages of appellate briefing and motion practice, and oral argument before two appellate Panels, in 2014, this Court's jurisdictional findings of fact and conclusions of law were affirmed,[38] and no petition for certiorari was filed.

Eager to enforce the *Germano* judgment against Taishan and hopeful that they would finally see some relief, in June, 2014, plaintiffs requested[39] and this Court ordered Taishan to

---

[34] *See* Deposition of PENG Shiliang dated 1/11/2012 at 44:8-45:8 (Herman Aff. Ex. "85") (filed manually 5/8/2012) [Rec. Doc. 14215].

[35] Rec. Doc. 6964-2; Rec. Doc. 6964-3.

[36] *See* Rec. Doc. 6964; Rec. Doc. 7364; Rec. Doc. 8685.

[37] *See generally Chinese Drywall*, 894 F. Supp. 2d 819.

[38] *See Chinese Drywall*, 742 F.3d at 576; *see also Chinese Drywall* 753 F.3d at 521.

[39] Rec. Doc. 17760.

appear in open court on the morning of July 17, 2014 for a Judgment Debtor Examination.[40] Plaintiffs' attempts to collect on the final *Germano* judgment, however, were once again stymied by the Chinese defendants' continued efforts to avoid paying any judgments to Americans with Chinese Drywall claims. Behind the scenes, CNBM Group summoned the Chairman of Taishan to a CNBM Group Board meeting for purposes of "[d]eliberating on the proposal on strategies of coping with the event of gypsum boards transported to the U.S."[41] Thereafter, CNBM Group's Board of Directors voted unanimously to "respect" Taishan's decision to fire its American attorneys and flee the jurisdiction of this Court, "refusing" to appear for the Judgment Debtor Examination scheduled for July 17, 2014.[42] In addition, CNBM Group instructed its subsidiaries "to avoid depositing funds in banks that have branches in the State of New York, United States"[43] (presumably to avoid seizures of the Company's assets).[44] Further, CNBM Group required that overseas personnel "carry out business activities only in the name of their own legal person unit," that "communications on overseas projects … be conducted by specially appointed people using special email accounts," and that "business personnel use their own [personal] emails" rather than company emails.[45]

---

[40] Rec. Doc. 17774.

[41] *See* CNBM Group Notice of 17th Meeting of Third Session of the Board of Directors of CNBM Group dated 7/7/2014 [CNBMGRP00010052-53 and translation] [Rec. Doc. 21641-214].

[42] *See* CNBM Group Resolution No. 17 of the 3rd Session of the Board of Directors of CNBM Group dated 7/11/2014 [CNBMGRP00393000-002 and translation] [Rec. Doc. 21641-211].

[43] *See* "Statement on Implementing the Requirements from the Group Corporation's Meeting of International Business Risk Prevention" dated 7/11/2014 ("Requirements for International Business Risk Prevention") [Rec. Doc. 21641-69].

[44] *See Koehler v. Bank of Bermuda, Ltd.*, 911 N.E.2d 825 (N.Y. 2009).

[45] "Requirements for International Business Risk Prevention" [Rec. Doc. 21641-69].

The flagrant disrespect for this Court's valid jurisdictional Orders and Taishan's refusal to appear for a Judgment Debtor Examination resulted in sanctions against Taishan[46] and the entry of a Contempt Order and Injunction barring "Taishan, and any of its affiliates or subsidiaries, … from conducting any business in the United States until or unless it participates in this judicial process."[47] As the Court explained, "[i]n this massive suit, the harm from Taishan's noncompliance is high and requires strong sanctions to coerce compliance and restore integrity to these proceedings."[48] The injunction was necessary because "the Contempt Order alone would not stop Taishan from continuing to disregard the orders of the Court."[49]

From a statute of limitations point of view, the Court's evidentiary finding that the defendants "had adequate notice of this litigation"[50] is significant.

> For instance, on May 28, 2010, BNBM announced it had been served with notice of the allegations against the company concerning defects in its Chinese Drywall, but rather than respond to the lawsuits, "[t]he Company and Taishan Gypsum w[ould] continue to keep an eye on the progress of the incident, and address and handle the same with due prudence, so as to be responsible to investors, consumers and the industry." *See* BNBM Announcement No. 2010-009 in Relation to Event about Gypsum Board in US dated 5/28/2010 ("So far as is known to the Company, the aggregate number of this kind of complaints [referring to gypsum board of BNBM] is approximately 3,000."); *see also* BNBM 2010 Annual Report at 36, 38 & 143; BNBM 2011 Annual Report at 39 & 108; BNBM 2012 Annual Report at 36; BNBM 2013 Annual Report at 35, 95 & 96; BNBM 2014 Annual Report at 37; BNBM Announcement dated 2/13/2015 ("Since 2010, BNBM

---

[46] These sanctions would not be the only sanctions to be imposed on Taishan in this litigation, as it turns out.  On January 8, 2016, the Court found that Taishan committed numerous discovery abuses, including "protracted withholding of relevant evidence."  *See* Findings of Facts and Conclusions of Law from the November 17, 2015 Evidentiary Hearing, at 14 [Rec. Doc. 19959].  Taishan "conceded its failure to relay [to the plaintiffs] Mr. Peng's whereabouts and produce documents from his computer in a timely manner," which caused an eight-month delay and forced the plaintiffs to seek Court intervention.  *Id.* at 17.

[47] CONTEMPT ORDER AND INJ. [Rec. Doc. 17869].

[48] *Id.*

[49] Order & Reasons denying Defendants' Motion to Vacate the Contempt Order at 3 [Rec. Doc. 19392].

[50] ORDER AND REASONS [Rec. Doc. 21108] (Jan. 2, 2018) at p.13 [2018 WL 279629, at *7].

has engaged one US well-known law firm for legal consultation services in relation to the gypsum board litigation in the US.").

**The evidence here indicates that the Chinese entities received notice of this action and had sufficient time to present their defense—but they did not.**[51]

At the same time, defendants actively concealed the facts from plaintiffs and their counsel, who should have been able to determine, as early as 2010, which suspected boards were manufactured with defective drywall by which specific companies[52] – not to mention the affirmatively concealed corporate confusion, direction, and the finding of single business enterprise between and among the Taishan, CNBM and BNBM entities.

The defendants even denied that they shipped their defective drywall to the U.S. and they concealed the whereabouts of a key witness and withheld key documents from the plaintiffs resulting in a sanctions order against Taishan.[53] A party should not be permitted to deny liability, deny jurisdiction, refuse to engage in the discovery process, and otherwise evade the judicial process, with the bad faith and contempt that defendants have exhibited in these proceedings, and then seek to profit from their own misconduct.[54]

---

[51] ORDER AND REASONS [Rec. Doc. 21108] (Jan. 2, 2018) at pp.13-14 [2018 WL 279629, at *7] (emphasis supplied).

[52] *See, e.g.,* PRE-TRIAL ORDER NO. 10 (instructing the defendants to produce photographs of their "markings, brands, endtapes and other identifying markers").

[53] Rec. Doc. 19959.

[54] This well-established principle -- that one should not benefit from their own misconduct – is embedded in our jurisprudence.  *See generally Barnhill v. U.S.*, 11 F.3d 1360, 1368 (7th Cir.1993) ("Misconduct may exhibit such flagrant contempt for the court and its processes that to allow the offending party to continue to invoke the judicial mechanism for its own benefit would raise concerns about the integrity and credibility of the civil justice system that transcend the interest of the parties immediately before the court."); *Assaf v. Trinity Medical Center*, 696 F.3d 681, 686 (7th Cir. 2012) ("[A] classic rule of contract law, is that a party should be prevented from benefitting from its own breach.").

Statutes of limitations "are designed to insure fairness to defendants by preventing the revival of stale claims in which the defense is hampered by lost evidence, faded memories, and disappearing witnesses, and to avoid unfair surprise." *Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 473 (1975) (Marshall, J., concurring). The theory behind limitations periods "is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Order of R.R. Telegraphers v. Ry. Express Agency*, 321 U.S. 342, 349 (1944). None of the justice-promoting considerations or purposes for having statutes of limitations exist here. Defendants have had more than adequate notice and opportunity to defend. The delays they induced and continue to induce, paired with the discouraging message of pursuing a case that defendants' behavior sent to potential plaintiffs provide a classic case of why equitable tolling should apply here.

Dated:  December 14, 2018                    Respectfully Submitted,

By: */s/ Russ M. Herman*
Russ M. Herman (La Bar No. 6819) (on the brief)
Leonard A. Davis (La Bar No. 14190) (on the brief)
Stephen J. Herman (La Bar No. 23129)(on the brief)
Robert S. Peck (on the brief)
Herman, Herman & Katz, LLC
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
RHerman@hhklawfim.com
*Plaintiffs' Liaison Counsel MDL 2047*

Arnold Levin (on the brief)
Fred S. Longer (on the brief)
Sandra L. Duggan (on the brief)
Keith Verrier (on the brief)
Levin Sedran & Berman LLP
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
alevin@lfsblaw.com
*Plaintiffs' Lead Counsel MDL 2047*

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Peter Prieto
Podhurst Orseck, PA
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
pprieto@podhurst.com

Robert M. Becnel,
Law Office of Robert M. Becnel
425 W. Airline Highway, Suite B
Laplace, LA 70068
Phone: (985) 359-6101
Fax: (985) 651-6101
robbecnel@aol.com

Bruce William Steckler
Steckler Gresham Cochran
12720 Hillcrest Road, Suite 1045
Dallas, TX 75230
Phone: (972) 387-4040
Fax: (972) 387-4041
bruce@stecklerlaw.com

Salvadore Christina, Jr.
Becnel Law Firm, LLC
425 W. Airline Highway, Suite B
Laplace, LA 70068
Phone: (985) 536-1186
Fax: (985) 536-6445
schristina@becnellaw.com

Patrick Montoya
Colson, Hicks, Eidson
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
patrick@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
Echsner & Proctor, PA
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
The Lambert Firm
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@thelambertfirm.com

Pete Albanis
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Myers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
palbanis@forthepeople.com

James R. Reeves, Jr.
Reeves & Mestayer, PLLC
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@rmlawcall.com

Christopher A. Seeger
Seeger Weiss, LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5002
dan@wbmllp.com

Richard J. Serpe
Law Offices of Richard J. Serpe
Crown Center, Suite 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com

Victor M. Diaz, Jr.
V.M. Diaz and Partners, LLC
119 Washington Ave., Suite 402
Miami Beach, FL 33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

Anthony D. Irpino
IRPINO AVIN HAWKINS LAW FIRM
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

Gerald E. Meunier
Gainsburgh, Benjamin, David,
Meunier & Warshauer, LLC
2800 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2800
Phone:  (504) 522-2304
Fax:  (504) 528-9973
gmeunier@gainsben.com

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W., Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, which will serve a notice of the uploading in accordance with the procedures established in MDL 2047, on this 14th day of December, 2018.

/s/ Leonard A. Davis
Leonard A. Davis
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com
Plaintiffs' Liaison Counsel
MDL 2047

*Co-Counsel for Plaintiffs*