201 ST. CHARLES AVENUE
SUITE 3600
NEW ORLEANS, LOUISIANA 70170
PHONE:   504.566.5200
FAX:      504.636.4000

www.bakerdonelson.com

KERRY J. MILLER
Shareholder
Direct Dial:      (504) 566-8646
Facsimile:        (504) 585-6946
Email:            kjmiller@bakerdonelson.com

*** REPLY PAPER ***

June 20, 2018

**<u>Via Email</u>**
Dan Balhoff
Perry, Balhoff, Mengis & Burns, LLC
2141 Quail Run Drive
Baton Rouge, LA 70808
Balhoff@pabmb.com

RE:
1.  CDO Investments, 1374 Cathedall Avenue, Northport, FL
2.  CDO Investments, 4698 Globe Terrace, Northport, FL
3.  CDO Investments 2063 Vancouver Lane, Northport, FL
4.  MCF Enterprises, 1933 Wanda Avenue, North Lehigh Acres, FL
5.  MCF Enterprises, 2511 17th Street, South West Lehigh Acres, FL
6.  MCF Enterprises, 900 Tena Avenue, North Lehigh Acres, FL
7.  MCF Enterprises, 3505 9th Street, West Lehigh Acres, FL
8.  MCF Enterprises, 343 Ranchito Avenue, Lehigh Acres, FL
9.  Mohamed and Bibi Latiff, 1943 SE 22nd Drive, Homestead, FL
10. Mohamed and Bibi Latiff, 1898 SE 23rd Court, Homestead, FL
11. Doodnauth Bahadur, 1925 SE 22nd Court, Homestead, FL
12. Asset Portfolio, 1305 E. 9th Street, Lehigh Acres, FL
13. Thomas and Martha Williams, 301 Intrepid Drive, Slidell, LA
14. Andrew Kubick, 2802 21st Street, Lehigh Acres, FL
15. Eric and Colleen Asch, 138 St. Clair Drive, Simons Island, GA
16. Paul and Rebecca McIntyre, 15922 Innerarity Point, Pensacola, FL

Page 2

<u>**REPLY POSITION PAPER**</u>

Dear Mr. Balhoff:

The Knauf Defendants[1] submit the following reply paper. ***First***, in response to claimants, this reply addresses the proper scope of review for these claims under the applicable settlement agreements. ***Second***, this reply responds to the individual claimant submissions, subject to the applicable review under the relevant provisions provided in the settlement agreements.

**I.      Scope of Review under the New Claims Settlement Agreement, the Knauf Class Settlement Agreement, and the Already Remediated Properties Protocol.**

1.      <u>Claimants are Bound by the Terms of the Knauf Class Settlement Agreement and New Claims Settlement Agreement.</u>

The Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL 2047 (the "Knauf Class Settlement Agreement") defines the Class as owners "who, as of December 9, 2011, filed a lawsuit in the Litigation as a named plaintiff…."[2] If Claimants did not file a lawsuit (or even own Affected Property) on or before December 9, 2011, then they were not class members, and their claims could not be settled solely pursuant to the Knauf Class Settlement Agreement. It is undisputed that each and every claim below did not file a lawsuit, and most did not even own their respective properties, on or before December 9, 2011.

However, pursuant to the Settlement Agreement regarding Post-December 9, 2011 Claims Against the Knauf Defendants in MDL 2047 (the "New Claims Settlement Agreement"),

---

[1] The Knauf Defendants include Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Material Products Co., Ltd., Knauf International GmbH, Knauf Insulation GmbH, Knauf AMF GmbH & Co. KG, Knauf UK GmbH, Knauf do Brasil Ltda., Gebr. Knauf Verwaltungsgesellschaft KG, PT Knauf Gypsum Indonesia, or Knauf Gips KG.

[2] R. Doc. 16407-3 at p. 4 (*Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047* at § 1.1.2).

Page 3

Claimants who gave notice prior to October 25, 2013, and qualified under the terms of the New Claims Agreement, were eligible to seek benefits under the Knauf Class Settlement Agreement (subject to the requirements set forth in the two agreements).[3] Therefore, if a Claimant did not meet the December 9, 2011 deadline in the Knauf Class Settlement Agreement, but otherwise made a claim prior to October 25, 2013, the Claimant was considered a class member, and as such was required to comply with the New Claims Settlement Agreement and the Knauf Class Settlement Agreement before the Claimant was eligible for settlement benefits. Section VII(B) of the New Claims Agreement specifically allows the Court to interpret and construe the New Claims Agreement and all of its provisions.  It is undisputed that each and every Claimant below is subject to the New Claims Settlement Agreement and the Knauf Class Settlement Agreement. It is also undisputed that none of the Claimants opted out of the settlement.  Therefore, they are bound by the eligibility requirements for being compensated under the agreements.

      2.    Review of Knowledge/Reasonable Inquiry Determination under the New Claims Settlement Agreement

The New Claims Settlement Agreement does not provide benefits to claimants who purchased a property with knowledge that it contained Chinese drywall or who did not make a reasonable inquiry into the presence of Chinese drywall.[4]

Under the New Claims Settlement Agreement:

Any [Claimant] who purchased the Affected Property with knowledge that there was reactive Chinese Drywall in the Affected Property, or who purchased after December 9, 2009 and failed to make a reasonable inquiry, is not eligible for benefits under this Agreement….[5]

---

[3] R. Doc. 16978-1 (*Settlement Agreement Regarding Post-December 9, 2011 Claims Against the Knauf Defendants in MDL No. 2047*).
[4] *Id.* at § IV(D).
[5] *Id.*

Page 4

The Court, which has continuing and exclusive jurisdiction over the settlement agreements and has already directly ruled on the issue/interpretation (1) of applicability of the New Claims Settlement Agreement to Claimants with Post-December 9, 2011 claims; and (2) that the New Claims Settlement Agreement "requires the claimants meet an objective 'reasonable inquiry' standard to qualify for benefits."[6]  There, Claimants argued that they made a reasonable inquiry because a realtor/real estate company did perform a general inspection/walkthrough of the property, and did not uncover evidence of defective drywall. Claimants claimed that they had never heard of Chinese drywall, that news coverage of Chinese drywall in Alabama was not sufficient to provide constructive notice, and that they had no reason otherwise to inquire further at the time of purchase.[7]  Therefore, Claimants' position was that the informal inspections amounted to a "reasonable inquiry," thus permitting their recovery under the settlement agreements.[8]  The Court rejected these arguments and found that Claimants purchased property in 2012 and took a "calculated risk" by purchasing the property "as-is," without a seller's disclosure, and did not conduct a Chinese drywall inspection.[9]  Therefore, the Court found that Claimants did not make a "reasonable inquiry" and were not eligible to recover benefits under the New Claims Settlement Agreement, and therefore, could not participate in the Knauf Class Settlement Agreement.[10] The same "objective 'reasonable inquiry' standard" and reasoning applies directly to the claims submitted by the Claimants below in this matter.

    3.    <u>Review of Eligibility under the Knauf Class Settlement Agreement/Already Remediated Properties Protocol.</u>

---

[6] R. Doc. 20934 at p. 5 (Order and Reasons regarding Claimant's Objection and Motion for Reconsideration of Special Master's Opinion).
[7] *Id*. at p. 4.
[8] *Id*. at pp. 4-5.
[9] *Id*. at pp. 5-6.
[10] *Id*.

Page 5

Even if the below Claimants are not disqualified under the New Claims Settlement Agreement pursuant to the objective reasonable inquiry standard, they still must satisfy the requirements  under the Knauf Class Settlement Agreement, the Already Remediated Properties Protocol, and PTO 1(B) before they can obtain settlement benefits. The New Claims Settlement Agreement provides that eligible claimants who have self-remediated or entered into contracts to self-remediate between December 9, 2011 and July 31, 2013 are entitled to Remediation Benefits as set forth in 4.3.7 of the Knauf Class Settlement Agreement and the Already Remediated Properties Protocol attached as Exhibit A to the Knauf Class Settlement Agreement.[11]   Section 4.3.7 of the Knauf Class Settlement Agreement provides:

> Owners who have self-remediated Affected Properties or have entered into contracts to self-remediate Affected Properties prior to the Execution Date shall be entitled to benefits to resolve their Remediation Claims as provided in the Already Remediated Properties Protocol. Such benefits shall be paid from the Remediation Fund. In addition, such Owners are entitled to seek benefits from the Other Loss Fund.[12]

The Already Remediated Properties Protocol provides a "process by which to resolve the Remediation Claims of the individual Owners who self-remediated their Affected Properties…."[13]   The Protocol's process requires claimants to submit all required information within their possession, and if needed, proceed to a Court proceeding before the Court to resolve the Claims.[14]

At this stage of the process, it is undisputed that the current claims are all under the Court Proceeding part of the Protocol, and the Court has requested that the Special Master provide a

---

[11] R. Doc. 16978-1 at p. 2 (*Settlement Agreement Regarding Post-December 9, 2011 Claims Against the Knauf Defendants in MDL No. 2047* at § II(B).
[12] R. Doc. 16407-3 at p. 29 (*Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047* at § 4.3.7).
[13] R. Doc. 12061-6 at p. 1 (Already Remediated Properties Protocol - Exhibit A to the *Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047* at § I).
[14] *Id*.

Page 6

report and recommendation. Pursuant to the Protocol, the Court's review shall be limited to Reimbursable Costs set forth in Paragraph IV(D).[15] Paragraph IV(D), "Reimbursable Costs," confirms that the Knauf Defendants' responsibility for Reimbursable Costs shall be limited to the KPT Drywall Percentage[16] as determined by the Court, and that in determining whether to allow a claim or the amount of the claim, the Court shall take into consideration whether the claimant complied with PTO 1(B) in preserving and presenting evidence of KPT Drywall.[17] Specifically, Paragraph IV(D)(4), "Reimbursable Costs, " provides:

> The Special Master and the Court **will take into consideration, in determining whether to allow a claim or the amount of the claim, whether the Owner has complied with MDL Pretrial Order 1B** (if the claim is pending in the MDL) or with applicable state law requirements for preservation of evidence (if the claim is pending in state court). Subject to review by the Special Master or the Court, **the failure to preserve evidence as required by law will result in disallowance or reduction in the amount of the claim if the failure has been prejudicial to a determination of the claim**.[18]

Like the "objective 'reasonable inquiry' standard," the Court has already analyzed similar cases in terms of what is required of a claimant subject to PTO 1(B) and the Protocol.[19] In one such case, and pursuant to Section 4.3.7 of the Knauf Class Settlement Agreement, the Court confirmed that Owners who have self-remediated properties may seek benefits to resolve Remediation Claims pursuant to the Already Remediated Properties Protocol, and that Owners are required to submit required information under the Protocol concerning the remediation of the property, including KPT drywall evidence in the form of PTO 1(B).[20] Pursuant to PTO 1(B), which was entered in October 2009 prior to the remediation of any of the below claims, the

---

[15] *Id*. at § IV(C)(2).
[16] *Id*. at § IV(D)(3).
[17] *Id*. at § IV(D)(4).
[18] *Id*. (emphasis added).
[19] R. Doc. 20933 (Order and Reasons regarding Objection to Special Master's Opinion and Decree).
[20] *Id*. at pp. 1-2.

Page 7

Court stated that Owners were and are required to preserve evidence by following a few basic procedures, including but not limited to:

> The parties shall photograph the backside of each Chinese drywall board immediately after it is removed on-site, and, document on a floor plan, building diagram, or other similar form of documentation, the location of each full or partial Chinese drywall board removed from the property and its photograph. Photographs of the wall sections should be taken so that any markings on the backside of the drywall sections are most clearly visible in the photographs.[21]

Under the Protocol and PTO 1(B), the Court analyzed the relevant facts, and found that the Claimants remediated the property after PTO 1(B) and that they did not opt out of the Knauf Class Settlement Agreement.[22]   Although the Claimants did not comply with PTO 1(B), they argued that their testimony and additional evidence was sufficient to demonstrate that they had KPT drywall in their home prior to remediation.[23]   The Court rejected this argument and concluded that the Claimants did not opt out of the Knauf Class Settlement Agreement, were bound by the requirements for preserving and presenting evidence under Paragraph IV (D)(4) of the Protocol, and could not demonstrate how much, if any, KPT drywall was in their property.[24] Furthermore, the Court determined that the additional proffered testimony and evidence did not comply with the Knauf Class Settlement Agreement's requirement, which set out the prerequisites for recovering under the Agreement.[25]

If the Court does allow a claim after considering PTO 1(B) and a KPT percentage can be determined and applied to the Reimbursable Costs, Paragraph IV(D), "Reimbursable Costs" also provides (1) that Owners will only be reimbursed for "remediation work reasonably consistent with the Remediation Protocol," reimbursement," (2) that "any upgrades made to the Affected

---

[21] *Id*. at p. 3; *see also* PTO 1(B).
[22] *Id*.
[23] *Id*. at pp. 3-4.
[24] *Id*. at pp. 4-5.
[25] *Id*.

Page 8

Property are not eligible for reimbursement," and (3) that "reimbursable costs shall not include costs attributable to contractor double billing, waste or fraud."[26] Further, Paragraph IV(D), "Reimbursable Costs," confirms that Claimants eligible for benefits under the Protocol are subject to a reduction in benefits if they received amounts from the GBI Settlements, which are assigned to the Knauf Defendants.[27]

The Court's determination and resolution of the Remediation Claims under the Protocol shall be final and without appeal.[28] Further, each party shall bear its own costs in connection with any Remediation Claim submitted to the Court.[29]

## II.   Response to Individual Claim Submissions.

### 1.      *CDO Investments, 1374 Cathedall Avenue, Northport, FL*

First, CDO Investments failed to conduct a reasonable inquiry as to Chinese drywall prior to purchasing the property.  In support of its claims, CDO Investments submitted an affidavit of one of its members, Chris Owens.  Mr. Owens confirmed that 1374 Cathedall was purchased in December 2012, and is therefore subject to the New Claims Settlement Agreement and the Knauf Class Settlement Agreement. The property was purchased in December 2012 in an area (Northport, Florida) and at a time when Chinese drywall was commonly known to exist, particularly for someone such as Mr. Owens and CDO, who are real estate property developers, investors, and contractors. Furthermore, the Contractor's proposal is dated December 17, 2012 prior to the purchase date of December 21, 2012 provided by Mr. Owens in his affidavit, which is indicative of knowledge prior to purchase.  The fact that CDO alleges that it had no reason

---

[26] R. Doc. 12061-6 at pp. 5-6 (Already Remediated Properties Protocol - Exhibit A to the *Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047* at § IV(D)(1)).
[27] *Id*. at IV(D)(2).
[28] *Id*. at IV(C)(4).
[29] *Id*. at IV(C)(5).

Page 9

otherwise to further inquire at the time of purchase, and that a realtor did an inspection by walking around the exterior of the property,[30] does not overcome the fact CDO Investments failed to conduct a "reasonable inquiry."   Furthermore, the Claimant's subjective opinions about the settlement agreements, the constructive notice provided to property owners, or the laws regarding municipalities, though inaccurate and/or without any foundation, are completely irrelevant to the Court's determination as to whether the claimant meets the objective "reasonable inquiry" standard.[31]   The Court has already rejected similar arguments and found that when claimants, such as CDO, purchased property "as-is" without a seller's disclosure, and without conducting a Chinese drywall inspection, they are taking a "calculated risk".[32]   The same is true for CDO Investments' purchase of this property.  The Claimant has confirmed that it purchased the property "as-is," without any disclosures, without any representations, and without conducting a Chinese drywall inspection. Therefore, the Claimant failed to conduct a reasonable inquiry under this Court's objective standard, and so the Claimant is disqualified from receiving benefits under the Knauf Class Settlement Agreement.

Second, CDO's claim should be disqualified because they failed to preserve and present KPT evidence as required by the Knauf Class Settlement Agreement, the Protocol, and PTO 1(B).  In its recent submission and previous submissions, CDO submitted a single photo of an installed KPT board in its submission[33]  and a photo of three (3) purported KPT drywall pieces

---

[30] The date of inspection lists February 1, 2013, which is after the purchase of the property in December 2012. Note further, that the realtor that did the exterior inspection is the same company that  performed exterior inspection of properties at issue in this matter for CDO, MCF, Kubick, and Asset Portfolio.

[31] Furthermore, Judge Fallon began approving settlements and notice programs as early as May 2011. PTO 1(B) was in place in October 2009 and the demonstration remediation agreement was entered in October 2010.

[32] R. Doc. 20934 at pp. 5-6 (Order and Reasons regarding Claimant's Objection and Motion for Reconsideration of Special Master's Opinion). Furthermore, claimant has not provided any sales documents, evidence of foreclosure or advertisements referenced in the claimant's affidavit.

[33] Claimant alleges in its position paper that it has offered to provide samples to the Knauf Defendants.  Under the Protocol and the Knauf Class Settlement Agreement, the claimant is required to submit all KPT evidence in the form

Page 10

as evidence for this property.  The Knauf Defendants identified that the second photo depicting drywall pieces contained the same evidence presented by MCF Enterprises for their property at 900 Tena and 4698 Globe Terrace.[34]    Nonetheless, it is undisputed that CDO did not comply with PTO 1(B).  Further, affidavits and other evidence are insufficient and not compliant with the Knauf Class Settlement Agreement to demonstrate that Claimants had KPT drywall (or a KPT drywall percentage) in their property prior to remediation.[35]   Indeed, of the approximately 190 boards that would be contained in the property, only one (1) KPT board was presented. Based on the lack of evidence of the existence of KPT drywall in the property, and Claimant's failure to preserve and present evidence of KPT Chinese drywall in accordance with PTO 1(B) and the Knauf Class Settlement Agreement, the Knauf Defendants have been prejudiced in a determination of the claim.  Therefore, Claimant's ARH claim is not compensable under the Knauf Class Settlement Agreement.

Finally, while it is undisputed the that the lump sum payment is not owed for this commercial property, CDO Investments has submitted that the Reimbursable Costs amount to $75,612.50.  Although the claim should be denied under the "reasonable inquiry" standard and for the failure to comply with PTO 1(B), the Knauf Defendants submit that $73,505.41 is the amount of Reimbursable Costs to be applied to the KPT percentage, if any.[36]  Furthermore,  if

---

of PTO 1(B). Further, the Knauf Defendants have consistently identified the lack of KPT evidence with these claims and requested the samples be sent to the Knauf Defendants' counsel but those samples or pictures of same were never received by the Knauf Defendants or the Special Master. See Reply Exhibit 1.

[34] See Composite Exhibit A to the Knauf Defendant's March 16, 2018 Position Paper and Reply Exhibit 2. The same remediation company remediated properties for CDO, MCF, Kubick and Asset.

[35] R. Doc. 20933 (Order and Reasons regarding Objection to Special Master's Opinion and Decree).

[36] See Reply Exhibit 3 noting deductions for non-protocol items.

Page 11

any Reimbursable Costs are permitted, $10,631.18 should be deducted for amounts received by claimant under the GBI settlement for this property.[37]

  2. *CDO Investments, 4698 Globe Terrace, Northport, FL*

  First, CDO Investments failed to conduct a reasonable inquiry as to Chinese drywall prior to purchasing the property.  In support of its claims, CDO Investments submitted an affidavit of one of its members, Chris Owens.  Mr. Owens confirmed that this property was purchased in May 2013, and is therefore subject to the New Claims Settlement Agreement and the Knauf Class Settlement Agreement. The property purchased in May 2013 was in same area (Northport, Florida) as its first property, and was purchased at a time (May 2013), when Chinese drywall was commonly known to exist, particularly for someone such as Mr. Owens and CDO, who are a real estate property developers, investors, and contractors.  Furthermore, CDO had actual knowledge of the Chinese drywall issue because approximately six months before the purchase of this property, it purchased the Cathedall property and allegedly completed a Chinese drywall remediation on that property just two months prior to purchasing the Globe Terrace property. This property was purchased at auction for $75,000.00 and sold less than six months later for $148,000.00.  The fact that CDO alleges that it had no reason otherwise to further inquire at the time of purchase, and that a realtor walked around the exterior of the property, does not overcome the fact CDO Investments failed  to conduct a "reasonable inquiry."  Furthermore, the claimant's subjective opinions about the settlement agreements, the constructive notice provided to property owners, or the laws regarding municipalities, though inaccurate and/or without any foundation, are completely irrelevant to the Court's determination as to whether the claimant

---

[37] See Reply Exhibit 4.   R. Doc. 12061-6 at IV(D)(2) (Already Remediated Properties Protocol - Exhibit A to the *Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047*).

Page 12

meets the objective "reasonable inquiry" standard.[38]   The Court has already rejected similar arguments and found that when claimants, such as CDO, purchase property "as-is" without a seller's disclosure, and without conducting a Chinese drywall inspection, they are taking a "calculated risk".[39]  The same is true for CDO Investments' purchase of this property and is even more true when this Claimant previously purchased a Chinese drywall property before this purchase.  The Claimant has confirmed that he was generally aware of the Chinese drywall issue when he purchased it, that he purchased the property "as-is," without any disclosures, without any representations, and without conducting a Chinese drywall inspection.[40] Therefore, the Claimant failed to conduct a reasonable inquiry under this Court's objective standard and the Claimant is disqualified from receiving benefits under the Knauf Class Settlement Agreement.

Second, CDO's claim should be disqualified because they failed to preserve and present KPT evidence as required by the Knauf Class Settlement Agreement, the Protocol, and PTO 1(B).  Originally, CDO submitted to the Knauf Defendants a single photo depicting an installed board.  In its recent submission, CDO submitted a different photo depicting the same board as a sample and another partial board for the property.[41]  However, both of these partial boards were the same evidence presented by CDO for its property at 1374 Cathedall, and one of which was the same evidence submitted by MCF Enterprises for their property at 900 Tena.[42]  Nonetheless,

---

[38] Furthermore, Judge Fallon began approving settlements and notice programs as early as May 2011. PTO 1(B) was in place in October 2009 and the demonstration remediation agreement was entered in October 2010.

[39] R. Doc. 20934 at pp. 5-6 (Order and Reasons regarding Claimant's Objection and Motion for Reconsideration of Special Master's Opinion).

[40] Furthermore, claimant has not provided any sales documents, evidence of foreclosure or advertisements referenced in the claimant's affidavit.

[41] Claimant alleges in its position paper that it has offered to provide samples to the Knauf Defendants.  Under the Protocol and the Knauf Class Settlement Agreement, the claimant is required to submit all KPT evidence in the form of PTO 1(B). Further, the Knauf Defendants previously identified the lack of KPT evidence with these claims and requested the samples be sent to the Knauf Defendants' counsel but those samples or pictures of same were never submitted. See Reply Exhibit 1.

[42] See attached Reply Exhibit 2.

Page 13

it is undisputed that CDO did not comply with PTO 1(B).  Further, affidavits and other evidence are insufficient and not compliant with the Knauf Class Settlement Agreement to demonstrate that Claimants had KPT drywall (or a KPT drywall percentage) in their property prior to remediation.[43]  Indeed, of the approximately 190 boards that would be contained in the property, only one (1) indicative board was presented.   Based on the lack of evidence of the existence of KPT drywall in the property and Claimant's failure to preserve and present evidence of KPT Chinese drywall in accordance with PTO 1(B) and the Knauf Class Settlement Agreement, the Knauf Defendants have been prejudiced in a determination of the claim.  Therefore, Claimant's ARH claim is not compensable under the Knauf Class Settlement Agreement.

Finally, while it is undisputed the that the lump sum payment is not owed for this commercial property, CDO Investments has submitted materials and an affidavit stating that the Reimbursable Costs amount to $75,612.50.  Although the claim should be denied under the "reasonable inquiry" standard and for the failure to comply with PTO 1(B), the Knauf Defendants submit that $73,630.81 is the amount of Reimbursable Costs to be applied to the KPT percentage, if any.[44]  Furthermore,  if any Reimbursable Costs are permitted, $10,749.12 should be deducted for amounts received by claimant under the GBI settlement for this property.[45]

### 3.    *CDO Investments 2063 Vancouver Lane, Northport, FL*

First, CDO Investments failed to conduct a reasonable inquiry as to Chinese drywall prior to purchasing the property.  In support of its claims, CDO Investments submitted an affidavit of one of its members, Chris Owens.  Mr. Owens confirmed that this property was purchased in

---

[43] R. Doc. 20933 (Order and Reasons regarding Objection to Special Master's Opinion and Decree).
[44] See Reply Exhibit 3 noting deductions for non-protocol items.
[45] See Reply Exhibit 4. R. Doc. 12061-6 at IV(D)(2) (Already Remediated Properties Protocol - Exhibit A to the *Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047*).

Page 14

May 2013, and is therefore subject to the New Claims Settlement Agreement and the Knauf Class Settlement Agreement. The property purchased in May 2013 was in same area (Northport, Florida) as its other two properties and was purchased at a time (May 2013)  when Chinese drywall was commonly known to exist, particularly for someone such as  CDO and Mr. Owens, who are real estate property developers, investors, and contractors.   Furthermore, CDO had actual knowledge of the Chinese drywall issue in the area because CDO had already submitted that it learned of Chinese drywall in two other properties prior to the purchase of this property. In fact, CDO purchased this property five (5) days after it determined Chinese drywall in the Globe Terrace property, less than two months after it remediated the Cathedall property, and for the same exact price as it paid for the Globe Terrace property ($75,000.00).  Furthermore,  CDO sold the Vancouver Lane property five months after purchasing it for $149,900.00.  The fact that CDO alleges that it had no reason otherwise to further inquire at the time of purchase, and that a realtor walked around the exterior of the property, does not overcome the fact  CDO Investments failed  to conduct a "reasonable inquiry."   Furthermore, the claimant's subjective opinions about the settlement agreements, the constructive notice provided to property owners, or the laws regarding municipalities, though inaccurate and/or without any foundation, are completely irrelevant to the Court's determination as to whether the claimant meets the objective "reasonable inquiry" standard.[46] The Court has already rejected similar arguments and found that when claimants, such as CDO, purchase property "as-is" without a seller's disclosure, and without conducting a Chinese drywall inspection, they are taking a "calculated risk".[47]  The same is true for CDO Investments' purchase of this property and is even more true when this Claimant

---

[46] Furthermore, Judge Fallon began approving settlements and notice programs as early as May 2011. PTO 1(B) was in place in October 2009 and the demonstration remediation agreement was entered in October 2010.
[47] R. Doc. 20934 at pp. 5-6 (Order and Reasons regarding Claimant's Objection and Motion for Reconsideration of Special Master's Opinion).

Page 15

previously purchased two Chinese drywall properties before this purchase.  The Claimant has confirmed that he was aware of the Chinese drywall issue when he purchased it, that he purchased the property "as-is," without any disclosures, without any representations, and without conducting a Chinese drywall inspection.[48]   Therefore, the Claimant failed to conduct a reasonable inquiry under this Court's objective standard and the Claimant is disqualified from receiving benefits under the Knauf Class Settlement Agreement.

Second, CDO's claim should be disqualified because they failed to preserve and present KPT evidence as required by the Knauf Class Settlement Agreement, the Protocol, and PTO 1(B).   Originally and in its recent submission CDO submitted to the Knauf Defendants photographs of a single, KPT board (firstly submitted as an installed board and later as a removed (partial) board).[49]   Nonetheless, it is undisputed that CDO did not comply with PTO 1(B).  Further, affidavits and other evidence are insufficient and not compliant with the Knauf Class Settlement Agreement to demonstrate that Claimants had KPT drywall (or a KPT drywall percentage) in their property prior to remediation.[50]   Indeed, of the approximately 190 boards that would be contained in the property, only one (1) KPT board was presented.   Based on the lack of evidence of the existence of KPT drywall in the property and Claimant's failure to preserve and present evidence of KPT Chinese drywall in accordance with PTO 1(B) and the Knauf Class Settlement Agreement, the Knauf Defendants have been prejudiced in a

---

[48] Furthermore, claimant has not provided any sales documents, evidence of foreclosure or advertisements referenced in the claimant's affidavit.

[49] Claimant alleges in its position paper that it has offered to provide samples to the Knauf Defendants.  Under the Protocol and the Knauf Class Settlement Agreement, the claimant is required to submit all KPT evidence in the form of PTO 1(B). Further, the Knauf Defendants previously identified the lack of KPT evidence with these claims and requested the samples be sent to the Knauf Defendants' counsel but those samples or pictures of same were never submitted. See Reply Exhibit 1.

[50] R. Doc. 20933 (Order and Reasons regarding Objection to Special Master's Opinion and Decree).

Page 16

determination of the claim.   Therefore, Claimant's ARH claim is not compensable under the Knauf Class Settlement Agreement.

Finally, while it is undisputed the that the lump sum payment is not owed for this commercial property, CDO Investments has submitted materials and an affidavit stating that the Reimbursable Costs amount to $74,159.31.   Although the claim should be denied under the "reasonable inquiry" standard and for the failure to comply with PTO 1(B), the Knauf Defendants submit that $72,177.62 is the amount of Reimbursable Costs to be applied to the KPT percentage, if any.[51]   Furthermore, if any Reimbursable Costs are permitted, $10,395.31 should be deducted for amounts received by claimant under the GBI settlement for this property.[52]

### 4.      MCF Enterprises, 1933 Wanda Avenue, North Lehigh Acres, FL

First, MCF failed to conduct a reasonable inquiry as to Chinese drywall prior to purchasing the property.   In support of its claims, MCF submitted an affidavit of one of its shareholders, Roy Freeman.   Notably Mr. Freeman swore an affidavit for another property for claimant Asset Portfolio, which had allegedly purchased a CDW property prior to any of the MCF properties and therefore he had knowledge of the Chinese drywall issue. Mr. Freeman confirmed that 1933 Wanda was purchased in January 2012, and is therefore subject to the New Claims Settlement Agreement and the Knauf Class Settlement Agreement. The property purchased in January 2012 in an area (Lehigh Acres, Florida) and at a time when Chinese drywall was commonly known to exist, particularly for someone such as Mr. Freeman and MCF, who are real estate property developers, investors, and contractors.   The property was purchased

---

[51] See Reply Exhibit 3 noting deductions for non-protocol items.
[52] See Reply Exhibit 4.  R. Doc. 12061-6 at IV(D)(2) (Already Remediated Properties Protocol - Exhibit A to the *Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047*).

for $52,000 and sold six months later for $110,000, prior to making any claims for Chinese drywall.[53]  The fact that MCF alleges that it had no reason otherwise to further inquire at the time of purchase, and that it completed an exterior inspection (by the same company that conducted foreclosure inspections for CDO),  does not overcome the fact  that it failed  to conduct a "reasonable inquiry."    Furthermore, the claimant's subjective opinions about the settlement agreements,  the  constructive  notice  provided  to  property  owners,  or  the  laws  regarding municipalities, though inaccurate and/or without any foundation, are completely irrelevant to the Court's determination as to whether the claimant meets the objective "reasonable inquiry" standard.[54]  The Court has already rejected similar arguments and found that when claimants, such as MCF, purchase property "as-is" without a seller's disclosure, and without conducting a Chinese drywall inspection, they are taking a "calculated risk".[55]  The same is true for MCF's purchase of this property.  The Claimant has confirmed that it purchased the property "as-is," without any disclosures, without any representations, and without conducting a Chinese drywall inspection. Therefore, the Claimant failed to conduct a reasonable inquiry under this Court's objective standard and the Claimant is disqualified from receiving benefits under the Knauf Class Settlement Agreement.

Second, MCF's claim should be disqualified because they failed to preserve and present KPT evidence as required by the Knauf Class Settlement Agreement, the Protocol, and PTO 1(B).  Originally and in its recent submission to the Knauf Defendants, MCF submitted a single

---

[53] Claimant has not provided any advertisements referenced in the claimant's affidavit.
[54] Furthermore, Judge Fallon began approving settlements and notice programs as early as May 2011. PTO 1(B) was in place in October 2009 and the demonstration remediation agreement was entered in October 2010.
[55] R. Doc. 20934 at pp. 5-6 (Order and Reasons regarding Claimant's Objection and Motion for Reconsideration of Special Master's Opinion).

Page 18

photo of four partial boards in its submission, two of which show KPT markings.[56]  Furthermore,

this evidence appears to be the same evidence submitted by MCF for property it owned located

at 2511 17th Street.[57]   Nonetheless, it is undisputed that MCF did not comply with PTO 1(B).

Further, affidavits and other evidence are insufficient and not compliant with the Knauf Class

Settlement Agreement to demonstrate that Claimants had KPT drywall (or a KPT drywall

percentage) in their property prior to remediation.[58]   Indeed, of the approximately 220 boards

that would be contained in the property, only 2 partial KPT boards were presented,[59] and 2 were

indicative though not in compliance with PTO 1(B).   Based on the lack of evidence of the

existence of KPT drywall in the property and Claimant's failure to preserve and present evidence

of KPT Chinese drywall in accordance with PTO 1(B) and the Knauf Class Settlement

Agreement, the Knauf Defendants have been prejudiced in a determination of the claim.

Therefore, Claimant's ARH claim is not compensable under the Knauf Class Settlement

Agreement.

Finally, while it is undisputed the that the lump sum payment is not owed for this

commercial property, MCF has submitted materials and an affidavit stating that the

Reimbursable Costs amount to $98,382.99.   Although the claim should be denied under the

"reasonable inquiry" standard and for the failure to comply with PTO 1(B), the Knauf

Defendants submit that $95,336.23 is the amount of Reimbursable Costs to be applied to the

---

[56] Claimant alleges in its position paper that it has offered to provide samples to the Knauf Defendants.  Under the
Protocol and the Knauf Class Settlement Agreement, the claimant is required to submit all KPT evidence in the form
of PTO 1(B). Further, the Knauf Defendants previously identified the lack of KPT evidence with these claims and
requested the samples be sent to the Knauf Defendants' counsel but those samples or pictures of same were never
submitted. See Reply Exhibit 1.
[57] See Exhibit 1933-3 (Drywall Evidence), Exhibit MCF 2511-2 (Drywall Evidence) and  Composite Exhibit B from
the Knauf Defendant's March 16, 2018 position paper.  It also is possible another board submitted as evidence was
also submitted for  2511 17th Street and Kubick's claim for 2802 21st Street.  See Composite Exhibit C at *id*.
[58] R. Doc. 20933 (Order and Reasons regarding Objection to Special Master's Opinion and Decree).
[59] These were presented as evidence for another property as set forth above.

Page 19

KPT percentage, if any.[60]   Furthermore, if any Reimbursable Costs are permitted, $12,383.40 should be deducted for amounts received by claimant under the GBI settlement for this property.[61]

> 5.      MCF Enterprises, 2511 17th Street, South West Lehigh Acres, FL

First, MCF failed to conduct a reasonable inquiry as to Chinese drywall prior to purchasing the property.  In support of its claims, MCF submitted an affidavit of one of its shareholders, Roy Freeman.  Mr. Freeman confirmed that this property was purchased in October 2012, and is therefore subject to the New Claims Settlement Agreement and the Knauf Class Settlement Agreement. The property purchased in October 2012 was in same area (Lehigh Acres, Florida) as its first property, and was purchased at a time (October 2012) when Chinese drywall was commonly known to exist, particularly for someone such as  Mr. Freeman and MCF, who are real estate property developers, investors, and contractors.[62]   Furthermore, MCF had actual knowledge of the Chinese drywall issue because before the purchase of this property, it purchased the 1933 Wanda Avenue property and allegedly completed a Chinese drywall remediation on that property just three months prior to purchasing this property.[63] This property was purchased at auction for $36,900.[64]   The fact that MCF alleges that it had no reason otherwise to further inquire at the time of purchase, and that it completed an exterior inspection, does not overcome the fact that MCF failed to conduct a "reasonable inquiry."  Furthermore, the claimant's subjective opinions about the settlement agreements, the constructive notice provided

---

[60] See Reply Exhibit 3 noting deductions for non-protocol items.

[61] See Reply Exhibit 4.  R. Doc. 12061-6 at IV(D)(2) (Already Remediated Properties Protocol - Exhibit A to the *Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047*).

[62] All claimed properties by MCF were purchased within an approximate five mile radius.

[63] Purchase, CDW determination, and remediation proposal were all very close in time:  purchased Oct 18, 2012, Terco report determining CDW Oct 20, 2012 and 6 days later they have the remediation proposal.

[64] Furthermore, claimant has not provided any sales documents, evidence of foreclosure or advertisements referenced in the claimant's affidavit.

to property owners, or the laws regarding municipalities, though inaccurate and/or without any foundation, are completely irrelevant to the Court's determination as to whether the claimant meets the objective "reasonable inquiry" standard.[65] The Court has already rejected similar arguments and found that when claimants, such as MCF, purchase property "as-is" without a seller's disclosure, and without conducting a Chinese drywall inspection, they are taking a "calculated risk".[66] The same is true for MCF's purchase of this property and is even more true when this Claimant previously purchased a Chinese drywall property before this purchase. The Claimant has confirmed that he was aware of the Chinese drywall issue when he purchased it, that he purchased the property "as-is," without any disclosures, without any representations, and without conducting a Chinese drywall inspection. Therefore, the Claimant failed to conduct a reasonable inquiry under this Court's objective standard and the Claimant is disqualified from receiving benefits under the Knauf Class Settlement Agreement.

Second, MCF's claim should be disqualified because they failed to preserve and present KPT evidence as required by the Knauf Class Settlement Agreement, the Protocol, and PTO 1(B). In its original submission and in its recent submission to the Knauf Defendants, MCF submitted the same two photos: one of a single installed indicative board and one depicting three partial boards (two KPT and one indicative boards).[67] Furthermore, the evidence of three partial boards appears to include the same board evidence submitted by MCF for property located at

---

[65] Furthermore, Judge Fallon began approving settlements and notice programs as early as May 2011. PTO 1(B) was in place in October 2009 and the demonstration remediation agreement was entered in October 2010.

[66] R. Doc. 20934 at pp. 5-6 (Order and Reasons regarding Claimant's Objection and Motion for Reconsideration of Special Master's Opinion).

[67] Claimant alleges in its position paper that it has offered to provide samples to the Knauf Defendants. Under the Protocol and the Knauf Class Settlement Agreement, the claimant is required to submit all KPT evidence in the form of PTO 1(B). Further, the Knauf Defendants previously identified the lack of KPT evidence with these claims and requested the samples be sent to the Knauf Defendants' counsel but those samples or pictures of same were never submitted. See Reply Exhibit 1.

Page 21

1933 Wanda Avenue.[68]   Nonetheless, it is undisputed that MCF did not comply with PTO 1(B).

Further, affidavits and other evidence are insufficient and not compliant with the Knauf Class

Settlement Agreement to demonstrate that Claimants had KPT drywall (or a KPT drywall

percentage) in their property prior to remediation.[69]   Indeed, of the approximately 210 boards

that would be contained in the property, only 2 partial KPT boards were presented, and one

indicative board that did not comply with PTO 1(B) and this evidence was presented for other

properties.   Based on the lack of evidence of the existence of KPT drywall in the property and

Claimant's failure to preserve and present evidence of KPT Chinese drywall in accordance with

PTO 1(B) and the Knauf Class Settlement Agreement, the Knauf Defendants have been

prejudiced in a determination of the claim.  Therefore, Claimant's ARH claim is not compensable

under the Knauf Class Settlement Agreement.

Finally, while it is undisputed the that the lump sum payment is not owed for this

commercial property, MCF has submitted materials and an affidavit stating that the

Reimbursable Costs amount to $73,365.80.   Although the claim should be denied under the

"reasonable inquiry" standard and for the failure to comply with PTO 1(B), the Knauf

Defendants submit that $71,384.11 is the amount of Reimbursable Costs to be applied to the

KPT percentage, if any.[70]   Furthermore,  if any Reimbursable Costs are permitted, $5,697.33

should be deducted for amounts received by claimant under the GBI settlement for this

property.[71]

### 6.     *MCF Enterprises, 900 Tena Avenue, North Lehigh Acres, FL*

---

[68]See Exhibit MCF 2511-2 (Drywall Evidence) and Composite Exhibit B from the Knauf Defendant's March 16, 2018 Position Paper.
[69] R. Doc. 20933 (Order and Reasons regarding Objection to Special Master's Opinion and Decree).
[70] See Reply Exhibit 3 noting deductions for non-protocol items.
[71] See Reply Exhibit 4.  R. Doc. 12061-6 at IV(D)(2) (Already Remediated Properties Protocol - Exhibit A to the *Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047*).

Page 22

First, MCF failed to conduct a reasonable inquiry as to Chinese drywall prior to purchasing the property. In support of its claims, MCF submitted an affidavit of one of its shareholders, Roy Freeman. Freeman confirmed that this property was purchased in February 2013, and is therefore subject to the New Claims Settlement Agreement and the Knauf Class Settlement Agreement. The property purchased in February 2013[72] was in same area (Lehigh Acres, Florida) as its other two properties, and was purchased at a time when Chinese drywall (February 2013) was commonly known to exist, particularly for someone such as MCF and Mr. Freeman, who are real estate property developers, investors, and contractors. Furthermore, MCF had actual knowledge of the Chinese drywall issue, because MCF had already submitted that it learned of Chinese drywall in two other properties prior to the purchase of this property. In fact, MCF purchased this property less than a year after it remediated 1933 Wanda Avenue and while 2511 17th Street was actively under remediation. The fact that MCF alleges that it had no reason otherwise to further inquire at the time of purchase, and that it completed an exterior inspection, does not overcome the fact MCF failed to conduct a "reasonable inquiry." Furthermore, the claimant's subjective opinions about the settlement agreements, the constructive notice provided to property owners, or the laws regarding municipalities, though inaccurate and /or without any foundation, are completely irrelevant to the Court's determination as to whether the claimant meets the objective "reasonable inquiry" standard.[73] The Court has already rejected similar arguments and found that when claimants, such as MCF, purchase property "as-is" without a seller's disclosure, and without conducting a Chinese drywall inspection, they are taking a

---

[72] Furthermore, claimant has not provided any sales documents, evidence of foreclosure or advertisements referenced in the claimant's affidavit.
[73] Furthermore, Judge Fallon began approving settlements and notice programs as early as May 2011. PTO 1(B) was in place in October 2009 and the demonstration remediation agreement was entered in October 2010.

Page 23

"calculated risk".[74]   The same is true for MCF's purchase of this property and is even more true

when this Claimant previously purchased two Chinese drywall properties before this purchase.

The Claimant has confirmed that he was aware of the Chinese drywall issue when he purchased

it, that he purchased the property "as-is," without any disclosures, without any representations,

and without conducting a Chinese drywall inspection. Therefore, the Claimant failed to conduct

a reasonable inquiry under this Court's objective standard and the Claimant is disqualified from

receiving benefits under the Knauf Class Settlement Agreement.

Second, MCF's claim should be disqualified because they failed to preserve and present

KPT evidence as required by the Knauf Class Settlement Agreement, the Protocol, and PTO

1(B).   In its original submission and in its recent submission to the Knauf Defendants, MCF

submitted the same two photos: one of a single partial board and one depicting three partial

boards (none in compliance with PTO1(B) or confirming KPT).[75]   For purported evidence that

was submitted, it contained the same evidence (one board) that was submitted for CDO's claim

for property located at 1374 Cathedall Avenue and 4698 Globe Terrace.[76]   Moreover, evidence in

this property indicates the presence of other (non-KPT) Chinese drywall.[77]   Nonetheless, it is

undisputed that MCF did not comply with PTO 1(B).   Further, affidavits and other evidence are

insufficient and not compliant with the Knauf Class Settlement Agreement to demonstrate that

---

[74] R. Doc. 20934 at pp. 5-6 (Order and Reasons regarding Claimant's Objection and Motion for Reconsideration of Special Master's Opinion).

[75] Claimant alleges in its position paper that it has offered to provide samples to the Knauf Defendants.  Under the Protocol and the Knauf Class Settlement Agreement, the claimant is required to submit all KPT evidence in the form of PTO 1(B). Further, the Knauf Defendants previously identified the lack of KPT evidence with these claims and requested the samples be sent to the Knauf Defendants' counsel but those samples or pictures of same were never submitted. See Reply Exhibit 1.

[76] See Reply Exhibit 2; Exhibit MCF 900-2 (Drywall Evidence); Exhibit CDO 1374-3 (Drywall Evidence). and Composite Exhibit A from the Knauf Defendant's March 16, 2018 Position Paper.

[77] Exhibit MCF 900-2 (Drywall Evidence). Prowall another, non-Knauf Defendant defective Chinese drywall brand was contained in this home. Photos submitted by claimant show boards with Prowall end-tape.  See Reply Exhibit 8; see also Rec. Doc. 12061-10 (Drywall Indicia Guide) at p. 17.

Page 24

claimants had KPT drywall (or a KPT drywall percentage) in their property prior to remediation.[78] Indeed, of the approximately 220 boards that would be contained in the property, three (3) were indicative of KPT but none were presented in compliance with PTO 1(B) though. Based on the lack of evidence of the existence of KPT drywall in the property, the evidence of other defective Chinese Drywall and Claimant's failure to preserve and present evidence of KPT Chinese drywall in accordance with PTO 1(B) and the Knauf Class Settlement Agreement, the Knauf Defendants have been prejudiced in a determination of the claim. Therefore, Claimant's ARH claim is not compensable under the Knauf Class Settlement Agreement.

Finally, while it is undisputed the that the lump sum payment is not owed for this commercial property, MCF has submitted materials and an affidavit stating that the Reimbursable Costs amount to $73,332.27. Although the claim should be denied under the "reasonable inquiry" standard and for the failure to comply with PTO 1(B), the Knauf Defendants submit that $71,398.85 is the amount of Reimbursable Costs to be applied to the KPT percentage, if any.[79] Furthermore, if any Reimbursable Costs are permitted, $5,697.33 should be deducted for amounts received by claimant under the GBI settlement for this property.[80]

7. _MCF Enterprises, 3505 9th Street, West Lehigh Acres, FL_

First, MCF failed to conduct a reasonable inquiry as to Chinese drywall prior to purchasing the property. In support of its claims, MCF submitted an affidavit of one of its shareholders, Roy Freeman. Freeman confirmed that this property was purchased in February 2013, and is therefore subject to the New Claims Settlement Agreement and the Knauf Class

---

[78] R. Doc. 20933 (Order and Reasons regarding Objection to Special Master's Opinion and Decree).
[79] See Reply Exhibit 3 noting deductions for non-protocol items.
[80] See Reply Exhibit 4. R. Doc. 12061-6 at IV(D)(2) (Already Remediated Properties Protocol - Exhibit A to the _Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047_).

Settlement Agreement. The property purchased in February 2013[81] was in same area (Lehigh Acres, Florida) as its previous three properties, and was purchased at a time when Chinese drywall (February 2013) was commonly known to exist, particularly for someone such as MCF and Mr. Freeman, who are real estate property developers, investors, and contractors. Furthermore, MCF had actual knowledge of the Chinese drywall issue because MCF had already submitted that it learned of Chinese drywall in two other properties prior to the purchase of this property, and it purchased this property just three days after it purchased 900 Tena Avenue.  In fact, MCF purchased this property less than a year after it remediated 1933 Wanda Avenue, and while 2511 17th Street was actively under remediation.  Furthermore, it obtained a remediation proposal for CDW on February 26, 2013, two days before the purchase.[82]  The fact that MCF alleges that it had no reason otherwise to further inquire at the time of purchase, and that it completed an exterior inspection, does not overcome the fact MCF failed  to conduct a "reasonable inquiry."   Furthermore, the claimant's subjective opinions about the settlement agreements, the constructive notice provided to property owners, or the laws regarding municipalities, though inaccurate and /or without any foundation, are completely irrelevant to the Court's determination as to whether the claimant meets the objective "reasonable inquiry" standard.[83]  The Court has already rejected similar arguments and found that when claimants, such as MCF, purchase property "as-is" without a seller's disclosure, and without conducting a Chinese drywall inspection, they are taking a "calculated risk".[84]  The same is true for MCF's

---

[81] Furthermore, claimant has not provided any sales documents, evidence of foreclosure or advertisements referenced in the claimant's affidavit.

[82] Claimant submission at pp. 1, 20.

[83] Furthermore, Judge Fallon began approving settlements and notice programs as early as May 2011. PTO 1(B) was in place in October 2009 and the demonstration remediation agreement was entered in October 2010.

[84] R. Doc. 20934 at pp. 5-6 (Order and Reasons regarding Claimant's Objection and Motion for Reconsideration of Special Master's Opinion).

Page 26

purchase of this property and is even more true when this Claimant previously purchased two Chinese drywall properties before this purchase.  The Claimant has confirmed that he was aware of the Chinese drywall issue when he purchased it, that he purchased the property "as-is," without any disclosures, without any representations, and without conducting a Chinese drywall inspection. Therefore, the Claimant failed to conduct a reasonable inquiry under this Court's objective standard and the Claimant is disqualified from receiving benefits under the Knauf Class Settlement Agreement.

Second, MCF's claim should be disqualified because they failed to preserve and present KPT evidence as required by the Knauf Class Settlement Agreement, the Protocol, and PTO 1(B).  In its original submission and in its recent submission to the Knauf Defendants, MCF submitted the same two photos: one of a single KPT board installed, and one depicting the same board detached and two partial boards.[85]  However, the photos provided clearly indicate that one board is the same board used as KPT evidence for Asset Portfolio's claim.[86]  Further, evidence submitted appears to be the same as that submitted for MCF's claim for 343 Ranchito.[87] Nonetheless, it is undisputed that MCF did not comply with PTO 1(B).  Further, affidavits and other evidence are insufficient and not compliant with the Knauf Class Settlement Agreement to demonstrate that Claimants had KPT drywall (or a KPT drywall percentage) in their property prior to remediation.[88]  Indeed, of the approximately 220 boards that would be contained in the

[85] Claimant alleges in its position paper that it has offered to provide samples to the Knauf Defendants.  Under the Protocol and the Knauf Class Settlement Agreement, the claimant is required to submit all KPT evidence in the form of PTO 1(B). Further, the Knauf Defendants previously identified the lack of KPT evidence with these claims and requested the samples be sent to the Knauf Defendants' counsel but those samples or pictures of same were never submitted. See Reply Exhibit 1.
[86] See Exhibit Asset 1305-1 (Drywall Evidence and Inspection Report) and Composite Exhibit D from the Knauf Defendant's March 16, 2018 Position Paper.
[87] See Exhibit MCF 343-2 (Drywall Evidence); Exhibit MCF 3505-2 (Drywall Evidence); and Composite Exhibit E from the Knauf Defendant's March 16, 2018 Position Paper.
[88] R. Doc. 20933 (Order and Reasons regarding Objection to Special Master's Opinion and Decree).

Page 27

property, only one KPT board was submitted, but was also presented for another property as outlined above.   Based on the lack of evidence of the existence of KPT drywall in the property and Claimant's failure to preserve and present evidence of KPT Chinese drywall in accordance with PTO 1(B) and the Knauf Class Settlement Agreement, the Knauf Defendants have been prejudiced in a determination of the claim.  Therefore, Claimant's ARH claim is not compensable under the Knauf Class Settlement Agreement.

Finally, while it is undisputed the that the lump sum payment is not owed for this commercial property, MCF has submitted materials and an affidavit stating that the Reimbursable Costs amount to $73,332.27.  Although the claim should be denied under the "reasonable inquiry" standard and for the failure to comply with PTO 1(B),  the Knauf Defendants submit that $71,398.85 is the amount of Reimbursable Costs to be applied to the KPT percentage, if any.[89]  Furthermore,  if any Reimbursable Costs are permitted, $5,697.33 should be deducted for amounts received by claimant under the GBI settlement for this property.[90]

### 8.        MCF Enterprises, 343 Ranchito Avenue, Lehigh Acres, FL

First, MCF failed to conduct a reasonable inquiry as to Chinese drywall prior to purchasing the property.  In support of its claims, MCF submitted an affidavit of one of its shareholders, Roy Freeman.  Freeman confirmed that this property was purchased in April 2013, and is therefore subject to the New Claims Settlement Agreement and the Knauf Class Settlement Agreement. The property purchased in April 2013,[91] was in same area (Lehigh Acres,

---

[89] See Reply Exhibit 3 noting deductions for non-protocol items.
[90] See Reply Exhibit 4.   R. Doc. 12061-6 at IV(D)(2) (Already Remediated Properties Protocol - Exhibit A to the *Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047*).
[91] Furthermore, claimant has not provided any sales documents, evidence of foreclosure or advertisements referenced in the claimant's affidavit.

Page 28

Florida) as its previous four properties and was purchased at a time when Chinese drywall (April 2013) was commonly known to exist, particularly for someone such as MCF and Mr. Freeman, who are real estate property developers, investors, and contractors.   Furthermore, MCF had actual knowledge of the Chinese drywall issue because MCF had already submitted that it learned of Chinese drywall in four other properties prior to the purchase of this property, which it purchased for $60,300 and sold four months later for $124,900.   Furthermore, MCF had a CDW remediation proposal for this property dated April 9, 2013, one day before the purchase of the property.[92]   The fact that MCF alleges that it had no reason otherwise to further inquire at the time of purchase, and that it completed an exterior inspection, does not overcome the fact  MCF failed  to conduct a "reasonable inquiry."   Furthermore, the Claimant's subjective opinions about the settlement agreements, the constructive notice provided to property owners, or the laws regarding municipalities, though inaccurate and/or without any foundation, are completely irrelevant to the Court's determination as to whether the claimant meets the objective "reasonable inquiry" standard.[93]   The Court has already rejected similar arguments and found that when claimants, such as MCF, purchase property "as-is" without a seller's disclosure, and without conducting a Chinese drywall inspection, they are taking a "calculated risk".[94]   The same is true for MCF's purchase of this property and is even more true when this  Claimant previously purchased four Chinese drywall properties before this purchase.   The Claimant has confirmed that he was aware of the Chinese drywall issue when he purchased it, that he purchased the property "as-is," without any disclosures, without any representations, and without conducting a

---

[92] Claimant submission at pp. 1, 17.
[93] Furthermore, Judge Fallon began approving settlements and notice programs as early as May 2011. PTO 1(B) was in place in October 2009 and the demonstration remediation agreement was entered in October 2010.
[94] R. Doc. 20934 at pp. 5-6 (Order and Reasons regarding Claimant's Objection and Motion for Reconsideration of Special Master's Opinion).

Page 29

Chinese drywall inspection. Therefore, the Claimant failed to conduct a reasonable inquiry under this Court's objective standard and the Claimant is disqualified from receiving benefits under the Knauf Class Settlement Agreement.

Second, MCF's claim should be disqualified because they failed to preserve and present KPT evidence as required by the Knauf Class Settlement Agreement, the Protocol, and PTO 1(B).  In its original submission and in its recent submission to the Knauf Defendants, MCF submitted the same two photos: one of a single, partial, detached indicative board and one depicting the same board and three additional partial, detached boards, two of which have KPT markings.[95]  However, for the purported evidence submitted, the picture provided clearly indicates that two of these board samples are from the same board used as evidence for MCF's property located at 3505 9th Street.[96]  Nonetheless, it is undisputed that MCF did not comply with PTO 1(B).  Further, affidavits and other evidence are insufficient and not compliant with the Knauf Class Settlement Agreement to demonstrate that Claimants had KPT drywall (or a KPT drywall percentage) in their property prior to remediation.[97]  Indeed, of the approximately 240 boards that would be contained in the property, only two KPT partial boards were submitted as evidence of KPT and one of these was presented as evidence for another property as outlined above.  Based on the lack of evidence of the existence of KPT drywall in the property and Claimant's failure to preserve and present evidence of KPT Chinese drywall in accordance with PTO 1(B) and the Knauf Class Settlement Agreement, the Knauf Defendants have been

---

[95] Claimant alleges in its position paper that it has offered to provide samples to the Knauf Defendants.  Under the Protocol and the Knauf Class Settlement Agreement, the claimant is required to submit all KPT evidence in the form of PTO 1(B). Further, the Knauf Defendants previously identified the lack of KPT evidence with these claims and requested the samples be sent to the Knauf Defendants' counsel but those samples or pictures of same were never submitted. See Reply Exhibit 1.

[96] See Exhibit MCF 343-2 (Drywall Evidence); Exhibit MCF 3505-2 (Drywall Evidence); and Composite Exhibit E from the Knauf Defendant's March 16, 2018 Position Paper.

[97] R. Doc. 20933 (Order and Reasons regarding Objection to Special Master's Opinion and Decree).

Page 30

prejudiced in a determination of the claim. Therefore, Claimant's ARH claim is not compensable under the Knauf Class Settlement Agreement.

Finally, while it is undisputed the that the lump sum payment is not owed for this commercial property, MCF has submitted materials and an affidavit stating that the Reimbursable Costs amount to $78,114.92. Although the claim should be denied under the "reasonable inquiry" standard and for the failure to comply with PTO 1(B), the Knauf Defendants submit that $75,834.16 is the amount of Reimbursable Costs to be applied to the KPT percentage, if any.[98] Furthermore, if any Reimbursable Costs are permitted, $11,327.57 should be deducted for amounts received by claimant under the GBI settlement for this property.[99]

### 9.     *Mohamed and Bibi Latiff, 1943 SE 22nd Drive, Homestead, FL*

First, Latiff failed to conduct a reasonable inquiry as to Chinese drywall prior to purchasing the property. In support of his claims, Latiff submitted an affidavit and Latiff confirmed that this property was purchased August 25, 2011. However, Latiff did not file a claim by December 2011, and is therefore subject to the New Claims Settlement Agreement and the Knauf Class Settlement Agreement. The property was purchased in August 2011 in an area (Miami, Florida) and at a time when Chinese drywall (August 2011) was commonly known to exist, particularly for someone such as Latiff, who owned his own construction company and was a real estate property developer. Furthermore, the property was advertised as "Cash Only due to Chinese drywall,"[100] claimant had a right to inspect the property prior to closing, and

---

[98] See Reply Exhibit 3 noting deductions for non-protocol items.
[99] See Reply Exhibit 4. R. Doc. 12061-6 at IV(D)(2) (Already Remediated Properties Protocol - Exhibit A to the *Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047*).
[100] Reply Exhibit 6: Online sale listing from August 3, 2011.

Page 31

claimant acknowledged that he was satisfied with the condition of the property.[101]  Furthermore, the Claimant's subjective opinions about the settlement agreements, the constructive notice provided to property owners, or the laws regarding municipalities, though inaccurate and/or without any foundation, are completely irrelevant to the Court's determination as to whether the Claimant meets the objective "reasonable inquiry" standard.[102]  The Court has already rejected similar arguments and found that when claimants, such as Latiff, purchase property "as-is" and without conducting a Chinese drywall inspection, they are taking a "calculated risk".[103]  The same is true for Latiff's purchase of this property.  The Claimant has confirmed that it purchased the property "as-is," and without conducting a Chinese drywall inspection. Therefore, the Claimant failed to conduct a reasonable inquiry under this Court's objective standard and the Claimant is disqualified from receiving benefits under the Knauf Class Settlement Agreement.

Second, Latiff's claim should be disqualified because he failed to preserve and present KPT evidence as required by the Knauf Class Settlement Agreement, the Protocol, and PTO 1(B).  In his recent submission and in his original submission, Latiff submitted evidence only of one (1) partial, detached KPT board of the approximately 390 boards that would be contained in the property.  Based on the lack of evidence of the existence of KPT drywall in the Property and Claimants' failure to preserve and present evidence of KPT Chinese drywall in accordance with PTO 1(B) and the Knauf Class Settlement Agreement, the Knauf Defendants have been prejudiced in a determination of the claim.   Therefore, the Knauf Defendants submit that Claimants' ARH claim is not compensable under the Knauf Class Settlement Agreement.  It is

---

[101] See Claimant Submission at pp. 22-23 (Purchase Addendum attached to Claimant submissions at Articles 12 - 14).

[102] Furthermore, Judge Fallon began approving settlements and notice programs as early as May 2011. PTO 1(B) was in place in October 2009 and the demonstration remediation agreement was entered in October 2010.

[103] R. Doc. 20934 at pp. 5-6 (Order and Reasons regarding Claimant's Objection and Motion for Reconsideration of Special Master's Opinion).

Page 32

undisputed that Latiff did not comply with PTO 1(B).  Further, affidavits and other evidence are insufficient and not compliant with the Knauf Class Settlement Agreement to demonstrate that Claimants had KPT drywall (or a KPT drywall percentage) in their property prior to remediation.[104]  Based on the lack of evidence of the existence of KPT drywall in the property and Claimant's failure to preserve and present evidence of KPT Chinese drywall in accordance with PTO 1(B) and the Knauf Class Settlement Agreement, the Knauf Defendants have been prejudiced in a determination of the claim.  Therefore, Claimant's ARH claim is not compensable under the Knauf Class Settlement Agreement.

Finally, Latiff has submitted materials and an affidavit stating that the Reimbursable Costs amount to $125,000.  Although the claim should be denied under the "reasonable inquiry" standard and for the failure to comply with PTO 1(B), the Knauf Defendants cannot identify Reimbursable Costs to be applied to the KPT percentage.  The claim suffers from the fact Latiff admits that the property was purchased through his company, J.S. Carpentry, Inc. and that J.S. Carpentry remediated the property, not Latiff.   Further the cost documentation submitted includes bank statements and cancelled checks but no vendor invoices, or contractor scope of work documents and therefore the amount of Reimbursable Costs cannot be determined. Finally, the property had damages/issues unrelated to CDW and there has not been any segregation of costs between CDW and non-CDW related upgrades. If any Reimbursable Costs are permitted,[105] $20,032.47 should be deducted for amounts received by claimant under the GBI settlement for this property.[106]

---

[104] R. Doc. 20933 (Order and Reasons regarding Objection to Special Master's Opinion and Decree).

[105] See Purchase addendum in Claimant submission at Article 9 that the lump sum should not be allowed because claimant confirmed this property was not a primary residence. Furthermore, it appears that the property was bought for commercial purposes, the Claimant never moved-in or out and never intended on moving in. The addendum to the purchase contract confirms that the buyer never intended to use and occupy the property. The property was not

Page 33

10.      *Mohamed and Bibi Latiff, 1898 SE 23rd Court, Homestead, FL*

First, Latiff failed to conduct a reasonable inquiry as to Chinese drywall prior to purchasing the property.  In support of his claims, Latiff submitted an affidavit and Latiff confirmed that this property was purchased in February 2013, and is therefore subject to the New Claims Settlement Agreement and the Knauf Class Settlement Agreement.[107] The property purchased in February 2013 in an area (Miami, Florida) and at a time when Chinese drywall (February 2013) was commonly known to exist, particularly for someone such as Latiff, who owned his own construction company and was a real estate property developer.  Furthermore, Latiff had actual knowledge of the Chinese drywall issue because before the purchase of this property, he previously purchased and remediated CDW-containing property  in the same neighborhood months prior to purchasing this property.   Furthermore, the property was advertised as containing "defective Chinese drywall," and stated that the buyer must do inspections prior to making an offer.[108]  Furthermore, the Claimant's subjective opinions about the settlement agreements, the constructive notice provided to property owners, or the laws regarding municipalities, though inaccurate and/or without any foundation, are completely irrelevant to the Court's determination as to whether the Claimant meets the objective "reasonable inquiry" standard.[109]  The Court has already rejected similar arguments and found that when claimants, such as Latiff, purchase property "as-is", without any disclosures and

habitable for other reasons and required renovation due to vandalism.  In the event a lump sum payment has to be made, it shall be calculated as follows: SQF 3567 x 10 = $ 35,670.
[106] See Reply Exhibit 4.  R. Doc. 12061-6 at IV(D)(2) (Already Remediated Properties Protocol - Exhibit A to the *Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047*).
[107] Furthermore, claimant has not provided any sales documents, evidence of foreclosure or advertisements referenced in the claimant's affidavit.
[108] Reply Exhibit 7: Online Realtor listing from January 2012 prior to claimant purchase.
[109] Furthermore, Judge Fallon began approving settlements and notice programs as early as May 2011. PTO 1(B) was in place in October 2009 and the demonstration remediation agreement was entered in October 2010.

Page 34

without conducting a Chinese drywall inspection, they are taking a "calculated risk."[110] Although Latiff alleges Seller provided written disclosures prior to purchase, the disclosures were not provided to the Knauf Defendants on request and have not been submitted in support of this claim. The Claimant has confirmed that he purchased the property "as-is," without conducting a Chinese drywall inspection, and without providing any other evidence regarding disclosures. Therefore, the Claimant failed to conduct a reasonable inquiry under this Court's objective standard and the Claimant is disqualified from receiving benefits under the Knauf Class Settlement Agreement.

Second, Latiff's claim should be disqualified because he failed to preserve and present KPT evidence as required by the Knauf Class Settlement Agreement, the Protocol, and PTO 1(B). In his recent submission and in its original submission, Latiff submitted evidence[111] only of two (2) KPT boards of the approximately 390 boards that would be contained in the property. Based on the lack of evidence of the existence of KPT drywall in the Property and Claimants' failure to preserve and present evidence of KPT Chinese drywall in accordance with PTO 1(B) and the Knauf Class Settlement Agreement, the Knauf Defendants have been prejudiced in a determination of the claim. Therefore, the Knauf Defendants submit that Claimants' ARH claim is not compensable under the Knauf Class Settlement Agreement. It is undisputed that Latiff did not comply with PTO 1(B). Further, affidavits and other evidence are insufficient and not compliant with the Knauf Class Settlement Agreement to demonstrate that Claimant had KPT drywall (or a KPT drywall percentage) in their property prior to remediation.[112] Based on the lack of evidence of the existence of KPT drywall in the property and Claimant's failure to

---

[110] R. Doc. 20934 at pp. 5-6 (Order and Reasons regarding Claimant's Objection and Motion for Reconsideration of Special Master's Opinion).
[111] The reports submitted in the latest documentation submission had certain pages missing.
[112] R. Doc. 20933 (Order and Reasons regarding Objection to Special Master's Opinion and Decree).

preserve and present evidence of KPT Chinese drywall in accordance with PTO 1(B) and the Knauf Class Settlement Agreement, the Knauf Defendants have been prejudiced in a determination of the claim. Therefore, Claimant's ARH claim is not compensable under the Knauf Class Settlement Agreement.

Finally, Latiff has submitted materials and an affidavit stating that the Reimbursable Costs amount to $125,000. Although the claim should be denied under the "reasonable inquiry" standard and for the failure to comply with PTO 1(B), the Knauf Defendants cannot identify Reimbursable Costs to be applied to the KPT percentage. The claim suffers from the fact Latiff admits that the property was purchased through his company, J.S. Carpentry, Inc. and that J.S. Carpentry remediated the property, not Latiff. Further the cost documentation submitted includes bank statements and cancelled checks but no vendor invoices, or contractor scope of work documents and therefore the amount, if any, of Reimbursable Costs cannot be determined. Finally, the property had damages/issues unrelated to CDW and there has not been any segregation of costs between CDW and non-CDW related upgrades. If any Reimbursable Costs are permitted[113], $20,032.47 should be deducted for amounts received by claimant under the GBI settlement for this property.[114]

### 11.    Doodnauth Bahadur, 1925 SE 22nd Court, Homestead, FL

First, Bahadur failed to conduct a reasonable inquiry as to Chinese drywall prior to purchasing the property. In support of its claims, Bahadur submitted an affidavit and Bahadur confirmed that this property was purchased in April 2011. However, Bahadur did not file a

---

[113] We do not believe that the Claimant is entitled to the lump sum payment for the following reasons: it appears that the property was bought for commercial purposes, the Claimant never moved-in and out. The property was not habitable for other reasons and required renovation for other reasons such as mold, leaks and vandalism etc. In the event a lump sum payment has to be made, it shall be calculated as follows: SQF 3567 x 10 = $ 35,670.

[114] See Exhibit 4. R. Doc. 12061-6 at IV(D)(2) (Already Remediated Properties Protocol - Exhibit A to the *Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047*).

Page 36

claim by December 2011, and is therefore subject to the New Claims Settlement Agreement and the Knauf Class Settlement Agreement. The property purchased in April 2011 in an area (Miami, Florida) and at a time when Chinese drywall (April 2011) was commonly known to exist.[115]  The fact that Bahadur alleges that he had no reason otherwise to further inquire at the time of purchase does not overcome the fact Bahadur failed  to conduct a "reasonable inquiry." Furthermore, the Claimant's subjective opinions about the settlement agreements, the constructive notice provided to property owners, or the laws regarding municipalities, though inaccurate and/or without any foundation, are completely irrelevant to the Court's determination as to whether the claimant meets the objective "reasonable inquiry" standard.  The Court has already rejected similar arguments and found that when claimants, such as Bahadur, purchase property "as-is," without a seller's disclosure and without conducting a Chinese drywall inspection, they are taking a "calculated risk".[116]  The same is true for Bahadur's purchase of this property.  The Claimant has confirmed that he purchased the property "as-is," without any disclosures, without any representations, and without conducting a Chinese drywall inspection.[117] Therefore, the Claimant failed to conduct a reasonable inquiry under this Court's objective standard and the Claimant is disqualified from receiving benefits under the Knauf Class Settlement Agreement.

Second, Bahadur's claim should be disqualified because he failed to preserve and present KPT evidence as required by the Knauf Class Settlement Agreement, the Protocol, and PTO 1(B).  In his recent submission and in its original submission, Bahadur submitted evidence only

---

[115] Furthermore, Judge Fallon began approving settlements and notice programs as early as May 2011. PTO 1(B) was in place in October 2009 and the demonstration remediation agreement was entered in October 2010.

[116] R. Doc. 20934 at pp. 5-6 (Order and Reasons regarding Claimant's Objection and Motion for Reconsideration of Special Master's Opinion.

[117]  Furthermore, claimant has not provided any sales documents, evidence of foreclosure or advertisements referenced in the claimant's affidavit.

of four (4) KPT boards of the approximately 350 boards that would be contained in the property. In fact, the Pro-lab report presented by claimant showed that nine (9) boards were tested, six (6) were not defective and three (3) were defective although there was no identification of manufacturer.  Based on the lack of evidence of the existence of KPT drywall in the Property and Claimants' failure to preserve and present evidence of KPT Chinese drywall in accordance with PTO 1(B) and the Knauf Class Settlement Agreement, the Knauf Defendants have been prejudiced in a determination of the claim.   Therefore, the Knauf Defendants submit that Claimants' ARH claim is not compensable under the Knauf Class Settlement Agreement.  It is undisputed that Bahadur did not comply with PTO 1(B).  Further, affidavits and other evidence are insufficient and not compliant with the Knauf Class Settlement Agreement to demonstrate that Claimants had KPT drywall (or a KPT drywall percentage) in their property prior to remediation.[118]  Based on the lack of evidence of the existence of KPT drywall in the property and Claimant's failure to preserve and present evidence of KPT Chinese drywall in accordance with PTO 1(B) and the Knauf Class Settlement Agreement, the Knauf Defendants have been prejudiced in a determination of the claim.  Therefore, Claimant's ARH claim is not compensable under the Knauf Class Settlement Agreement.

Finally, Bahadur has submitted materials and an affidavit stating that the Reimbursable Costs amount to $160,300.  Although the claim should be denied under the "reasonable inquiry" standard and for the failure to comply with PTO 1(B), the Knauf Defendants submit that $85,311.00  is the amount of Reimbursable Costs to be applied to the KPT percentage, if any.[119]

---

[118]  R. Doc. 20933 (Order and Reasons regarding Objection to Special Master's Opinion and Decree).
[119] See Reply Exhibit 3 noting deductions for non-protocol items. We do not believe that the Claimant is entitled to the lump sum payment for the following reasons: it appears that the property was bought for commercial purposes, he never lived in it and is a rental. In the event a lump sum payment has to be made ,it shall be calculated as follows: SQF 3453 x 8, 50 = $ 29,350.50.

Page 38

Pro-lab identified Defective drywall in only three rooms of a property that was already undergoing substantial remediation and Claimant did not attach or provide a remediation contract, a scope of work, or invoices from the remediation contractor. In any event, if any Reimbursable Costs are permitted, $18,886.78 should be deducted for amounts received by claimant under the GBI settlement for this property.[120]

12.    *Asset Portfolio, 1305 E. 9th Street, Lehigh Acres, FL*

First, Asset Portfolio failed to conduct a reasonable inquiry as to Chinese drywall prior to purchasing the property.  In support of its claims, Asset Portfolio submitted an affidavit of one of its shareholders, Roy Freeman.  Mr. Freeman is also a shareholder and submitted affidavits for the MCF properties as well.  Mr. Freeman confirmed that the property was purchased in June 2011, but did not make a claim before December 9, 2011, and is therefore subject to the New Claims Settlement Agreement and the Knauf Class Settlement Agreement. The property purchased in June 2011 in an area (Lehigh Acres, Florida) and at a time when Chinese drywall (June  2011) was commonly known to exist, particularly for someone such as  Mr. Freeman and Asset Portfolio, who are real estate property developers, investors, and contractors.  The property was purchased[121] for $34,000 and sold four months later for $84,800.  The fact that Asset Portfolio alleges that it had no reason otherwise to further inquire at the time of purchase, and that its realtor did an inspection by walking around the exterior of the property  (the same company that conducted foreclosure inspections for CDO and MCF), does not overcome the fact that it failed  to conduct a "reasonable inquiry."   Furthermore, the Claimant's subjective opinions about the settlement agreements, the constructive notice provided to property owners, or the laws

---

[120]  See Reply Exhibit 4.  R. Doc. 12061-6 at IV(D)(2) (Already Remediated Properties Protocol - Exhibit A to the *Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047*).
[121]  Furthermore, claimant has only provided a one page special warranty and not any other sales documents, evidence of foreclosure or advertisements referenced in the claimant's affidavit.

Page 39

regarding municipalities, though inaccurate and/or without any foundation, are completely irrelevant to the Court's determination as to whether the claimant meets the objective "reasonable inquiry" standard.[122]   The Court has already rejected similar arguments and found that when claimants, such as Asset Portfolio, purchase property "as-is" without a seller's disclosure, and without conducting a Chinese drywall inspection, they are taking a "calculated risk".[123]   The same is true for Asset Portfolio's purchase of this property.  The Claimant has confirmed that it purchased the property "as-is," without any disclosures, without any representations, and without conducting a Chinese drywall inspection. Therefore, the Claimant failed to conduct a reasonable inquiry under this Court's objective standard and the Claimant is disqualified from receiving benefits under the Knauf Class Settlement Agreement.

Second, Asset Portfolio's claim should be disqualified because they failed to preserve and present KPT evidence as required by the Knauf Class Settlement Agreement, the Protocol, and PTO 1(B).  In its recent submission and in its submission to the Knauf Defendants, Asset Portfolio submitted a single photo of a single, partial board indicative of KPT, which did not comply with PTO 1(B).  Further, this evidence is the same evidence that was also submitted in support of MCF's ARH claim for 3505 E. 9th Street.[124]   Nonetheless, it is undisputed that Asset Portfolio did not comply with PTO 1(B).  Further, affidavits and other evidence are insufficient and not compliant with the Knauf Class Settlement Agreement to demonstrate that Claimants had KPT drywall (or a KPT drywall percentage) in their property prior to remediation.[125]

---

[122] Furthermore, Judge Fallon began approving settlements and notice programs as early as May 2011. PTO 1(B) was in place in October 2009 and the demonstration remediation agreement was entered in October 2010.

[123] R. Doc. 20934 at pp. 5-6 (Order and Reasons regarding Claimant's Objection and Motion for Reconsideration of Special Master's Opinion).

[124] See Exhibit Asset 1305 -1 (Drywall Evidence) and  Composite Exhibit D-2 from the Knauf Defendant's March 16, 2018 Position Paper.

[125] R. Doc. 20933 (Order and Reasons regarding Objection to Special Master's Opinion and Decree).

Page 40

Indeed, of the approximately 180 boards that would be contained in the property, none comply with PTO 1(B).   Based on the lack of evidence of the existence of KPT drywall in the property and Claimant's failure to preserve and present evidence of KPT Chinese drywall in accordance with PTO 1(B) and the Knauf Class Settlement Agreement, the Knauf Defendants have been prejudiced in a determination of the claim.  Therefore, Claimant's ARH claim is not compensable under the Knauf Class Settlement Agreement.

Finally, while it is undisputed the that the lump sum payment is not owed for this commercial property, Asset Portfolio has submitted materials and an affidavit stating that the Reimbursable Costs amount to $63,896.91.   Although the claim should be denied under the "reasonable inquiry" standard and for the failure to comply with PTO 1(B), the Knauf Defendants submit that $61,714.55 is the amount of Reimbursable Costs to be applied to the KPT percentage, if any.[126]   Furthermore, if any Reimbursable Costs are permitted, $5,887.24 should be deducted for amounts received by claimant under the GBI settlement for this property.[127]

### 13.      Thomas and Martha Williams, 301 Intrepid Drive, Slidell, LA

First, there is no knowledge or reasonable inquiry issue with the Williams claim.

Second, however, the Williams claim should be disqualified because they failed to preserve and present KPT evidence as required by the Knauf Class Settlement Agreement, the Protocol, and PTO 1(B).   In their recent submission and in their submission to the Knauf Defendants, the Williams submitted a single photo of a single KPT board of the approximately 270 boards in the property. Further, affidavits and other evidence are insufficient and not

---

[126] See Reply Exhibit 3 noting deductions for non-protocol items.
[127] See Reply Exhibit 4.   R. Doc. 12061-6 at IV(D)(2) (Already Remediated Properties Protocol - Exhibit A to the *Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047*).

Page 41

compliant with the Knauf Class Settlement Agreement to demonstrate that Claimants had KPT drywall (or a KPT drywall percentage) in their property prior to remediation.[128]   Based on the lack of evidence of the existence of KPT drywall in the property and Claimant's failure to preserve and present evidence of KPT Chinese drywall in accordance with PTO 1(B) and the Knauf Class Settlement Agreement, the Knauf Defendants have been prejudiced in a determination of the claim.   Therefore, Claimant's ARH claim is not compensable under the Knauf Class Settlement Agreement.

Finally, Williams has submitted materials and an invoice stating that the Reimbursable Costs amount to $43,267.00.[129]   However, claimant has not paid for any of the remediation costs, the contractor is not a claimant under the Knauf Class Settlement Agreement, and no agreement was presented other than an invoice dated July 31, 2009.  In any event, while the claim should be denied for the failure to comply with PTO 1(B), under the Protocol, the Knauf Defendants submit that $42,417[130] would be the Reimbursable Costs applied to the KPT percentage, if any.[131]   If any Reimbursable Costs are permitted,[132] $832.03 should be deducted for amounts received by claimant under the GBI settlement for this property.[133]

   *14.      Andrew Kubick, 2802 21st Street, Lehigh Acres, FL*

---

[128] R. Doc. 20933 (Order and Reasons regarding Objection to Special Master's Opinion and Decree). Although affidavits are inappropriate evidence of product identification under PTO 1(B) the statement that the contractor observed Chinese drywall marked "China" and "Knauf" does not remove the possibility of other defective drywall. *See* drywall indicia guide, Exhibit C-1 to the Knauf Class Settlement Agreement.

[129] Claimant increased claim in the last submission to allow for $3,200 for appliances.

[130] Claimant claims for $3,200 for appliances should be reduced to $2,350 because washer and dryers are not protocol unless contamination is proven under the Remediation Protocol.

[131] See Reply Exhibit 3 noting deductions for non-protocol items.

[132] In the event a lump sum payment has to be made, it shall be calculated as follows: Moss' SQF is 2006 x 8.50 = $17,051.

[133] See Reply Exhibit 4.   R. Doc. 12061-6 at IV(D)(2) (Already Remediated Properties Protocol - Exhibit A to the *Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047*).

Page 42

First, Kubick failed to conduct a reasonable inquiry as to Chinese drywall prior to purchasing the property. In support of its claims, Kubick submitted an affidavit. Kubick confirmed that the property was purchased in February 2012, and is therefore subject to the New Claims Settlement Agreement and the Knauf Class Settlement Agreement. The property purchased in February 2012 out of foreclosure in an area (Lehigh Acres, Florida) and at a time (February 2012) when Chinese drywall was commonly known to exist. The fact that Kubick alleges that he had no reason otherwise to further inquire at the time of purchase, and that he had an exterior inspection completed, does not overcome the fact Kubick failed to conduct a "reasonable inquiry." Furthermore, the Claimant's subjective opinions about the settlement agreements, the constructive notice provided to property owners, or the laws regarding municipalities, though inaccurate and/or without any foundation, are completely irrelevant to the Court's determination as to whether the claimant meets the objective "reasonable inquiry" standard.[134] The Court has already rejected similar arguments and found that when claimants purchase property "as-is" without a seller's disclosure, and without conducting a Chinese drywall inspection, they are taking a "calculated risk".[135] The same is true for the purchase of this property. The Claimant has confirmed that he purchased the property "as-is,"[136] without any disclosures, without any representations, and without conducting a Chinese drywall inspection. Therefore, the Claimant failed to conduct a reasonable inquiry under this Court's objective standard and the Claimant is disqualified from receiving benefits under the Knauf Class Settlement Agreement.

---

[134] Furthermore, Judge Fallon began approving settlements and notice programs as early as May 2011. PTO 1(B) was in place in October 2009 and the demonstration remediation agreement was entered in October 2010.

[135] R. Doc. 20934 at pp. 5-6 (Order and Reasons regarding Claimant's Objection and Motion for Reconsideration of Special Master's Opinion).

[136] Furthermore, claimant has not provided any sales documents, evidence of foreclosure or advertisements referenced in the claimant's affidavit.

Page 43

Second, Kubick's claim should be disqualified because he failed to preserve and present KPT evidence as required by the Knauf Class Settlement Agreement, the Protocol, and PTO 1(B).  In its original and recent submission, of the approximately 210 boards in the property, Kubick submitted a single photo of a single installed KPT board in its submission.[137]  Therefore, it is undisputed that Kubick did not comply with PTO 1(B).  Further, affidavits and other evidence are insufficient and not compliant with the Knauf Class Settlement Agreement to demonstrate that Claimants had KPT drywall (or a KPT drywall percentage) in their property prior to remediation.[138]  Based on the lack of evidence of the existence of KPT drywall in the property and Claimant's failure to preserve and present evidence of KPT Chinese drywall in accordance with PTO 1(B) and the Knauf Class Settlement Agreement, the Knauf Defendants have been prejudiced in a determination of the claim.  Therefore, Claimant's ARH claim is not compensable under the Knauf Class Settlement Agreement.

Finally, Kubick has submitted materials and an invoice stating that the Reimbursable Costs amount to $73,365.80.  Although the claim should be denied under the "reasonable inquiry" standard and for the failure to comply with PTO 1(B), the Knauf Defendants submit that $71,258.71 is the amount of Reimbursable Costs to be applied to the KPT percentage, if any.[139]

---

[137] See Exhibit Composite C from the Knauf Defendants' March 2018 position paper. The same installed board was in another photo as removed pieces of the installed board. The partial piece with the single dot numbering "3 – 28" looks like it may have come from the same board that was provided for 1933 Wanda Avenue as an installed board.
[138] R. Doc. 20933 (Order and Reasons regarding Objection to Special Master's Opinion and Decree).
[139] See Reply Exhibit 3 noting deductions for non-protocol items.

Page 44

Furthermore, if any Reimbursable Costs are permitted,[140] $5,657.35 should be deducted for amounts received by claimant under the GBI settlement for this property.[141]

15.      *Eric and Colleen Asch, 138 St. Clair Drive, Simons Island, GA*

First, Asch failed to conduct a reasonable inquiry as to Chinese drywall prior to purchasing the property.  In support of his claims, Asch submitted an affidavit.  Asch confirmed that the property was purchased in May 2012, and is therefore subject to the New Claims Settlement Agreement and the Knauf Class Settlement Agreement. The property purchased in May 2012 out of foreclosure at a time (May 2012) when Chinese drywall was known to exist. The fact that Asch alleges that they had no reason otherwise to further inquire at the time of purchase does not overcome the fact Asch failed to conduct a "reasonable inquiry." Furthermore, the Claimant's subjective knowledge and opinions about the settlement agreements, the constructive notice provided to property owners, or the laws regarding municipalities, though inaccurate and/or without any foundation, are completely irrelevant to the Court's determination as to whether the claimant meets the objective "reasonable inquiry" standard.[142]  The Court has already rejected similar arguments and found that when claimants purchase property "as-is" without a seller's disclosure, and without conducting a Chinese drywall inspection, they are taking a "calculated risk".[143]  The same is true for the purchase of this property.  The Claimant has confirmed that it purchased the property "as-is," without any disclosures, without any

---

[140] We do not believe that the Claimant is entitled to the lump sum payment for the following reasons: it appears that the property was bought for commercial purposes given the quick turn-around of events. It was purchased, remediated and re-sold within a short period from Feb 2012 to Nov 2012. In the event a lump sum payment has to be made, it shall be calculated as follows: SQF 1698x $8.50 = $ 14,433.

[141] See Reply Exhibit 4.  R. Doc. 12061-6 at IV(D)(2) (Already Remediated Properties Protocol - Exhibit A to the *Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047*).

[142] Furthermore, Judge Fallon began approving settlements and notice programs as early as May 2011. PTO 1(B) was in place in October 2009 and the demonstration remediation agreement was entered in October 2010.

[143] R. Doc. 20934 at pp. 5-6 (Order and Reasons regarding Claimant's Objection and Motion for Reconsideration of Special Master's Opinion).

Page 45

representations, and without conducting a Chinese drywall inspection.[144]  Indeed, Asch

purchased the property for $231,000 in 2012 and in 2017 it was assessed as $502,200.[145]

Therefore, the Claimant failed to conduct a reasonable inquiry under this Court's objective

standard and the Claimant is disqualified from receiving benefits under the Knauf Class

Settlement Agreement.

Second, Asch's claim should be disqualified because they failed to preserve and present

KPT evidence as required by the Knauf Class Settlement Agreement, the Protocol, and PTO

1(B).  In its original and recent submission, of the approximately 310 boards in the property,

Asch submitted evidence of five (5) KPT boards.  Therefore, it is undisputed that Asch did not

comply with PTO 1(B).  Further, affidavits and other evidence are insufficient and not compliant

with the Knauf Class Settlement Agreement to demonstrate that Claimants had KPT drywall (or

a KPT drywall percentage) in their property prior to remediation.[146]  Based on the lack of

evidence of the existence of KPT drywall in the property and Claimant's failure to preserve and

present evidence of KPT Chinese drywall in accordance with PTO 1(B) and the Knauf Class

Settlement Agreement, the Knauf Defendants have been prejudiced in a determination of the

claim.  Therefore, Claimant's ARH claim is not compensable under the Knauf Class Settlement

Agreement.

Finally, Asch has submitted materials and an affidavit stating that the Reimbursable

Costs amount to $106,700.  Although the claim should be denied under the "reasonable inquiry"

standard and for the failure to comply with PTO 1(B), the Knauf Defendants agree that this

---

[144] Furthermore, the closing documentation provided by claimant's provides that they had opportunity to inspect. See Asch Submission to Special Master at p. 71 of 84.
[145] See attached Reply Exhibit 5.
[146] R. Doc. 20933 (Order and Reasons regarding Objection to Special Master's Opinion and Decree).

Page 46

amount for Reimbursable Costs would be applied to the KPT percentage, if any.[147]   If any Reimbursable Costs are permitted,[148] amounts for GBI, if any, should be deducted from any recovery.[149]

### 16.    Paul and Rebecca McIntyre, 15922 Innerarity Point, Pensacola, FL

First, McIntyre failed to conduct a reasonable inquiry as to Chinese drywall prior to purchasing the property.  In support of its claims, McIntyre submitted an affidavit.  McIntyre confirmed that the property was purchased in March 2013 at an online auction following foreclosure, and is therefore subject to the New Claims Settlement Agreement and the Knauf Class Settlement Agreement. The property purchased in March 2013 out of foreclosure at a time (March 2013) when Chinese drywall was known to exist, particularly in Florida.  The fact that Ms. McIntyre alleges that they had no reason otherwise to further inquire at the time of purchase does not overcome the fact they failed to conduct a "reasonable inquiry."   Furthermore, the Claimant's subjective knowledge and opinions about the settlement agreements, the constructive notice provided to property owners, or the laws regarding municipalities, though inaccurate and/or without any foundation, are completely irrelevant to the Court's determination as to whether the claimant meets the objective "reasonable inquiry" standard.[150]   The Court has already rejected similar arguments and found that when claimants purchase property "as-is" without a seller's disclosure, and without conducting a Chinese drywall inspection, they are

---

[147] See Reply Exhibit 3.

[148]  We do not believe that the Claimant is entitled to lump sum payment for the following reasons: no alternative living costs were claimed and it was a second property. Asch swore in his affidavit that the applicable sqf is 3565. In the event a lump sum payment has to be made, it shall be calculated as follows: SQF 3565 x $10 = $ 35,650.

[149] R. Doc. 12061-6 at IV(D)(2) (Already Remediated Properties Protocol - Exhibit A to the *Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047*).

[150] Furthermore, Judge Fallon began approving settlements and notice programs as early as May 2011. PTO 1(B) was in place in October 2009 and the demonstration remediation agreement was entered in October 2010.

Page 47

taking a "calculated risk".[151]   The same is true for the purchase of this property.  The Claimant has confirmed that it purchased the property "as-is," and without conducting a Chinese drywall inspection.  Claimant indicated that she did a walkthrough of the property at section 11 of her affidavit.  Claimant also signed an Indemnity, Hold Harmless Agreement and General Release whereby they agreed to indemnify and hold harmless the seller for claims "arising out of, because of, due to, or in any related to …defective drywall, drywall products, "Chinese Drywall' or any other items associated with these drywall items…." located in or around the property.[152] They still did not conduct a Chinese drywall inspection.  Therefore, the Claimant failed to conduct a reasonable inquiry under this Court's objective standard and the Claimant is disqualified from receiving benefits under the Knauf Class Settlement Agreement.[153]

Second, McIntyre's claim should be disqualified or limited because they failed to preserve and present KPT evidence as required by the Knauf Class Settlement Agreement, the Protocol, and PTO 1(B).  Evidence of twelve (12) partial KPT boards[154] out of approximately 150 in the property has been submitted for this property.[155]   Further, affidavits and other evidence are insufficient and not compliant with the Knauf Class Settlement Agreement to demonstrate that Claimants had KPT drywall (or a KPT drywall percentage) in their property

---

[151] R. Doc. 20934 at pp. 5-6 (Order and Reasons regarding Claimant's Objection and Motion for Reconsideration of Special Master's Opinion).
[152] See claimant Submission at p. 5 of 137.
[153] Claimant's reference to other claimants is irrelevant as they were not ARH claims within the New Claims Settlement Agreement and regardless if the knowledge issues were identified in those claims, as they have been here, is irrelevant. Further, these belonged to a different program where properties can still be inspected to determine the KPT percentage. Finally, the claimants referenced had issues decided by the special master related to the Lump Sum Payment, not knowledge issues.
[154] Note that this evidence includes evidence submitted by the previous owners.  In the Claimant's latest submittal there were some of the same drywall photos submitted to Brown Greer (DOC 5730 on Brown Greer Portal) on February 4, 2011, which is two years before McIntyre purchased the property.
[155] Claimant alleges in its position paper that it has offered to provide samples to the Knauf Defendants.  Under the Protocol and the Knauf Class Settlement Agreement, the claimant is required to submit all KPT evidence in the form of PTO 1(B). Further, the Knauf Defendants previously identified the lack of KPT evidence with these claims and requested the samples be sent to the Knauf Defendants' counsel but those samples or pictures of same were never submitted. See Reply Exhibit 1.

Page 48

prior to remediation.[156]   Based on the lack of preservation of evidence of the existence of KPT

drywall in the property and Claimant's failure to preserve and present evidence of KPT Chinese

drywall in accordance with PTO 1(B) and the Knauf Class Settlement Agreement, the Knauf

Defendants have been prejudiced in a determination of the claim.   Therefore, Claimant's ARH

claim is not compensable under the Knauf Class Settlement Agreement.

Finally, McIntyre submitted $95,000.00 for claimed Reimbursable Costs.   Although the

claim should be denied under the "reasonable inquiry" standard and for the failure to comply

with PTO 1(B), Knauf Defendants submit[157] that $54,713.01   is the amount of Reimbursable

Costs to be applied to the KPT percentage, if any.[158]   Furthermore, if any Reimbursable Costs are

permitted, $5,042.47 should be deducted for amounts received by claimant under the GBI

settlement for this property.[159]


Respectfully submitted,

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC


 _/s/ Daniel J. Dysart_
DANIEL J. DYSART

---

[156] R. Doc. 20933 (Order and Reasons regarding Objection to Special Master's Opinion and Decree).

[157]   We do not believe that the Claimant is entitled to lump sum payment costs for the following reasons: no alternative living costs were claimed, they have an alternative living address and it was not a primary residence. In the event a lump sum payment has to be made, it shall be calculated as follows: SQF 1314 x $8.50 = $ 11,169.

[158] See Reply Exhibit 3 noting deductions for non-protocol items.

[159] See Reply Exhibit 4.  R. Doc. 12061-6 at IV(D)(2) (Already Remediated Properties Protocol - Exhibit A to the *Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047*).