**BAKER DONELSON**
BEARMAN, CALDWELL & BERKOWITZ, PC

201 ST. CHARLES AVENUE
SUITE 3600
NEW ORLEANS, LOUISIANA 70170

DANIEL J. DYSART, ASSOCIATE
**Direct Dial:** (504) 566-5206
**Direct Fax:** (504) 636-3906
**E-Mail Address:** ddysart@bakerdonelson.com

PHONE: 504.566.5200
FAX: 504.636.4000

www.bakerdonelson.com

***SUPPLEMENTAL POSITION PAPER ***

August 20, 2018

**Via Email**
Dan Balhoff
Perry, Balhoff, Mengis & Burns, LLC
2141 Quail Run Drive
Baton Rouge, LA 70808
Balhoff@pabmb.com

   RE:  Thomas and Martha Williams, 301 Intrepid Drive, Slidell, LA

.Dear Mr. Balhoff:

On August 10, 2018 and August 13, 2018, the parties were requested to address how the Williams' claim relates to previous decisions made by the Court regarding the application of PTO 1 and PTO 1(B). In response to your directive, and in addition to their previous arguments, the Knauf Defendants[1] submit the following supplemental position paper.

A.  PTO Timeline

On June 16, 2009, the Court issued PTO 1, which reminded all of the "duty to preserve evidence," and extended to tangible things in the possession, custody, and control of Claimants, such as the alleged defective drywall installed in property.[2] On October 9, 2009, the Court issued PTO 1(B), which in addition to confirming the duty to preserve drywall evidence, also set forth a

---

[1] The Knauf Defendants include Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Material Products Co., Ltd., Knauf International GmbH, Knauf Insulation GmbH, Knauf AMF GmbH & Co. KG, Knauf UK GmbH, Knauf do Brasil Ltda., Gebr. Knauf Verwaltungsgesellschaft KG, PT Knauf Gypsum Indonesia, or Knauf Gips KG.
[2] R. Doc. 2 (PTO 1).

Dan Balhoff
*Thomas & Martha Williams*
August 20, 2018
Page 2

few simple procedures, among other things, for maintaining samples of the drywall, documenting markings, photographing boards, and labeling where in the home the drywall was located.[3]

The Knauf Class Settlement Agreement and the Already Remediated Properties Protocol adopted PTO 1(B) as the standard for preserving evidence and presenting ARH claims for compensation under the Knauf Class Settlement Agreement.[4] The Knauf Defendants' position, now and throughout the administration of the settlement, is that regardless of the date of the remediation, the Claimant is bound to comply with the ARH protocol and PTO 1(B), which was adopted into the Knauf Class Settlement Agreement. All claimants were afforded and had the opportunity to opt out of the Knauf Class Settlement Agreement. If a claimant did not opt out, they should be bound to comply with PTO 1(B), and therefore, the prerequisites for recovery under the Knauf Class Settlement Agreement.

B.   *Oceanique* Decision

The *Oceanique* claim presented an "exceptional, if not one-of-kind, situation" where the remediation was performed before the formation of MDL 2047.[5] Although the Court addressed the claim as it related to PTO 1(B), and did not address the applicability of PTO 1, the Court ultimately was able to determine a KPT Percentage based on other evidence that was allowed because the remediation was completed prior to PTO 1 and PTO 1(B).[6] For example, Oceanique submitted hundreds of photos of the removal of the drywall, samples of Knauf drywall and related items preserved, affidavits on the presence of Knauf drywall, and evidence that

---

[3] R. Doc. 337 (PTO 1(B))
[4] R Doc. 12061-6 (Already Remediated Properties Protocol).
[5] R. Doc. at 19413 (Oceanique Order and Reasons)
[6] *Id*. at pp. 3-4.

Dan Balhoff
*Thomas & Martha Williams*
August 20, 2018
Page 3

Oceanique only bought drywall from one specific supplier that could not identify the Taishan drywall it received and distributed.[7] Therefore, while the Knauf Defendants disagreed, because the remediation was prior to PTO 1, the Court ultimately determined a KPT percentage (60%), and awarded the Claimant 60% of the Reimbursable Costs.[8]

C.  *Rapp* Decision

The *Rapp* decision was decided after the *Oceanique* decision, and while it was similar in that it involved the failure to comply with PTO 1(B), the timeline of the remediation was different.[9] In *Rapp*, claimants remediated after the formation of MDL 2047 and after PTO 1, but prior to October 2009 when PTO 1(B) was entered.[10] Although claimants stressed that the early remediation was to minimize losses and they submitted other evidence, including testimony that the only drywall in their home was KPT drywall, the Court denied the claim and found that claimants did not comply with PTO 1 because they disposed of the physical drywall and did not have sufficient photographic evidence to demonstrate how much, if any, KPT drywall was in their home.[11]

D.  The Williams' Remediation Timeline

Here, Claimants submit that they moved out of the residence on May 15, 2009 - one month before PTO 1.[12] However, the undated letter from Claimants' contractor indicates that the remediation did not begin until June 2009.[13] Furthermore, on or after June 18, 2009, Claimants received a report on certain drywall samples taken on June 9, 2009 by Eustis Engineering

---

[7] *Id.*
[8] *Id.*
[9] R. Doc. 20930 (Rapp Order and Reasons).
[10] *Id.* at p. 4.
[11] *Id.* at pp. 5-6.
[12] Williams Submission at p. 6 (ODA).
[13] *Id.* at p. 14 (Undated Letter from C. Witty to Doyle Law Firm).

Dan Balhoff
*Thomas & Martha Williams*
August 20, 2018
Page 4

Services in three bedrooms, the utility room, and certain hallways.[14] Furthermore, on or after July 7, 2009, Claimants received report of the drywall samples taken on July 1, 2009 by Eustis Engineering Services in the den, dining room, kitchen and living room.[15] Therefore, based on the dates of the inspections and the dates the reports were issued/received, it is clear that all, or a substantial amount, of Claimants' drywall was still installed in the Affected Property and was within their possession, custody and control in July 2009.

E.  <u>Like Rapp, Williams Failed to Comply with PTO 1, and Unlike Oceanique, Williams Failed to Submit Other Evidence That Would Allow the Court to Determine a KPT Percentage.</u>

Although Claimants did not opt out of the Knauf Class Settlement Agreement and should be required to comply with PTO 1(B), Claimants' own submissions indicate that the remediation occurred after the Court entered PTO 1, but before the Court entered PTO 1(B). Therefore, this claim is more similar to *Rapp* than *Oceanique*. Like *Rapp*, the evidence is undisputed that Claimants failed to comply with the requirements of PTO 1.[16] Claimants disposed of the physical drywall and do not have sufficient photographic evidence to demonstrate how much, if any, KPT drywall was in their home.[17] Further, while the Claimants have submitted other evidence, including testimony that KPT was the only drywall in their home, such evidence is insufficient and does not comply with the terms of the Knauf Class Settlement Agreement, which set out the prerequisites for Claimants seeking to recover.[18]

Alternatively, even if viewed similar to *Oceanique*, Claimants should still be denied recovery because PTO 1 is only a reminder of what all litigants/claimants are required to do

---

[14] *Id*. at pp. 15-16 (First Eustis Report).
[15] *Id*. at pp. 17-18 (Second Eustis Report).
[16] *Id*. at pp. 1-4 (Williams Affidavit).
[17] *Id*.
[18] R. Doc. 20930 at p. 5 (*Rapp* Order and Reasons).

Dan Balhoff
*Thomas & Martha Williams*
August 20, 2018
Page 5

when they have a product liability claim. Claimants are always required to preserve and present evidence of the defective product, including the identification of the manufacturer of the product. Furthermore, unlike *Oceanique*, Claimants have not submitted any evidence that the Court may use to determine a KPT percentage. As set forth previously herein and as recognized by the Special Master and the Court, the testimony of the Claimants, their contractors, and/or the INEX supplier invoice are insufficient to establish product identification, and are not in compliance with the requirements of the Knauf Class Settlement Agreement.[19]  Therefore, Claimants' claim should be denied.

Sincerely,

**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC**

*/s/ Daniel J. Dysart*
**DANIEL J. DYSART**

DJD/mgc

---

[19] *Id*.; *see also* R. Doc. 20933 at p. 5  (*Carter* Order and Reasons).