UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br><br>SECTION: L |
| THIS DOCUMENT RELATES TO:<br><br>*Paul Beane, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG*, et al.,<br>No. 2:13-cv-609 | JUDGE ELDON FALLON<br>MAG. JUDGE WILKINSON |

### PLAINTIFF'S POSITION STATEMENT TO SPECIAL MASTER REGARDING THE SIXTEEN PROPERTIES REFERRED BY THE COURT FOR A REIMBURSEABLE COST RECOMMENDATION

The undersigned counsel represents the nine property owners with already remediated home claims (a total of sixteen distinct affected properties) that are now referred to the Special Master for a recommendation regarding reimburseable costs. The supporting evidence for each discrete claim has now been provided to both the Special Master and defense counsel and this document is intended to serve as consolidated position statement to the Special Master to address the common questions of law, the scope of review, the proper contract interpretation, and the appropriate reimburseable costs that should be allocated to each plaintiff as settlement benefits.

### I.   LEGAL ISSUES

During our recent scheduling conference calls with both the Special Master and Knauf's Counsel in attendance, the undersigned became aware that the Special Master, at the urging of defense counsel, has adopted an expanded scope of review

in the past (involving claims presented by other counsel) and has conducted "mini-trials" of issues.  In response to the undersigned's objection to the proposed process, Knauf's counsel subsequently offered an order issued by the Court in 2017 affirming this Special Master's prior recommendation in a proceeding that  was clearly the result of an expanded scope of review.  (R. Doc. 20934).   In this section, Plaintiffs present the legal rationale for opposing expansion of the Court's scope of review beyond reimbursable costs.

### A.    Louisiana Law Applies To The *Beane* Settlement Agreement.

The parties agreed that the *Beane* Settlement Agreement, "shall be governed by, and construed and enforced in accordance with the substantive laws of the State of Louisiana without regard to conflict of law principles." (R.Doc. 16978-1, Section VIII(D)).   The Agreement also contains a merger clause that prohibits any parol evidence to be used in contract interpretation and also prevents additional undefined terms or additional requirements to be injected by the Court. (R.Doc. 16978-1, Section VIII(E)).   The Agreement is limited to the four corners of the documents with the terms contained therein to be enforced according to Louisiana law, nothing more.

As a preliminary matter, Louisiana law provides that settlement agreements are governed by the same general rules of construction that are applicable to contracts. *Delesdernier v. Delesdernier*, 12-38 (La. App. 5 Cir. 5/31/12), 95 So. 3d 588, 599-600.   And, with regard to interpretation of contracts, Louisiana law provides that the "[i]nterpretation of a contract is the determination of the common intent of the parties." LA. Civ. Code art. 2045 (2017).  Contracts have the effect of law

on parties and courts are bound to give legal effect to such agreements according to the parties' true intent. *Rivercity v. American Can Co.*, 600 F.Supp. 908, *affirmed* 753 F.2d 1300 (E.D.La. 1984). Conversely, where the true intent of the parties cannot be determined by the explicit terms, there is no demonstration of intent by the parties and the Court cannot insert its own terms. The contract controls. And, given the explicit constraint on interpretation by agreement of the parties, the Court cannot reach beyond the terms of the contract.

Louisiana's Civil Code also provides that interpretation of a contract is the determination of the common intent of the parties. LA Civ. Code art. 2045 (2017). "The words of a contract must be given their generally prevailing meaning." LA Civ. Code art. 2047 (2017). "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." LA Civ. Code art. 2050 (2017). "A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties." LA Civ. Code art. 2053 (2017). Therefore, it appears that both the Louisiana Civil Code and case law are consistent with regard to contract interpretation principles.

    **B.**    **The *Beane* Settlement is a Contract Controlled By the Terms of Agreement and Undefined Terms Must Be Given Their Generally Prevailing Meaning.**

        **1.**    **Parties Did Not Agree to Significantly Expand Scope of Review.**

The 2011 KPT Settlement Agreement contains an exhibit (R. Doc. 12061-6, also labeled as "Exhibit A" to the Agreement) describing the benefits available to

settling plaintiffs with already-remediated home claims - it specifically limited the scope of the court's review to reimbursable costs incurred by plaintiffs.   Specifically, the 2011 KPT Settlement Agreement states:

> **The scope of the Court's review shall be limited to the Reimbursable Costs set forth in Paragraph IV (D).**

 (R. Doc. 12061-6, Section IV(C)(2)).

Under the terms of the 2011 KPT Settlement Agreement, the Special Master's role in the process is limited to providing the court with a recommendation regarding the amount that a qualifying plaintiff is entitled to receive in reimbursable costs should the parties reach an impasse after a specific process (that included compelled mediation).   The *Beane* Settlement Agreement adopts Exhibit A to the 2011 KPT Settlement Agreement without changing the scope of review in any way. (Doc. 16978-1).   In fact, the parties adopted the very same Exhibit A in its entirety - neither expanding nor contracting the scope of review by the Court.   The *Beane* Settlement Agreement specifically states:

> **All Exhibit A Claimants who have self-remediated Affected Properties or who have entered into contracts to self-remediate Affected Properties between December 9, 2011 and July 31, 2013 are entitled to Remediation Fund Benefits as set forth in Section 4.3.7 of the Knauf Class Settlement  and the Already Remediated Properties Protocol attached as Exhibit A to the Knauf Class Settlement.**

 (R. Doc. 16978-1, Section II (B)).

It is the Knauf Defendants' position that the Special Master is compelled to engage in a significantly expanded scope of review, citing a second section in the *Beane* Settlement Agreement that they contend invites broad additional scrutiny by

the Court.  The section of the *Beane* Settlement Agreement that Knauf's Counsel

relies upon states:

> **Any Exhibit A Claimant or Exhibit B Claimant who purchased the Affected Property with knowledge that there was reactive Chinese Drywall in the Affected Property, who purchased after December 9, 2009 and failed to make reasonable inquiry, is not eligible for benefits under this Agreement absent the Knauf Defendants' consent, unless the Claimant was legally assigned the claim owned by the seller of the Affected Property.  The claims of any such Exhibit A or Exhibit B Claimant shall be dismissed without prejudice from the Beane Complaint.**

 (R. Doc. 16978-1, Section IV (D)).

It is noteworthy that the settling parties failed to explicitly state their intent

to expand the scope of review.  The parties do mention "reasonable inquiry," in the

section noted above, but the terms are not defined.  The parties also did not

delineate the acceptable proof standard, and the parties did not suggest any

methodology for review or a standard to apply by the Court.  The agreement is silent.

Given this fact, the Court must remain cognizant of this absence of defined terms

and  conflicting  provisions  when  applying  accepted  contract  interpretation

principles according to Louisiana law.

### 2.    The Plain Meaning of "Reasonable Inquiry".

"When the words of a contract are clear and explicit and lead to no absurd

consequences, no further interpretation may be made in search of the parties'

intent." LA Civ. Code art. 2046 (2017).  Typically, where a contract does not

explicitly prohibit the use of extrinsic, unlike this instance, the use of extrinsic

evidence is proper where a contract is found to be ambiguous after an examination

of the four corners of the agreement. *Mobil Exploration & Producing U.S., Inc. v. Certain Underwriters Subscribing to Cover Note* 95-3317(A), 2001-2219, La.App. 1 Cir. 11/20/02, 837 So.2d 11, 23 (1 Cir. 2002). In this instance, given the absence of defined terms coupled with the explicit prohibition to venture beyond the four corners of the document, this Court is without guidance regarding the intent of the parties. Furthermore, the Court is not permitted by this Agreement to devise a new process for evaluation of claims.

In the order offered by Defendants, it appears that the Knauf Defendants offered a persuasive argument to the Special Master regarding expanded review. (R. Doc. 20934). The opposing plaintiff's counsel is unknown, but it was not the undersigned. There has been no prior course of dealing with any Doyle Firm clients on any ARH-related claim since the *Beane* Settlement was reached.

The prior opposing counsel obviously failed to point out that it is an absurd result to require a purchaser to pay for either a home inspection or a "Chinese Drywall Inspection." Neither have been required by any state or federal government, governmental agency, or court.

It is a fact that no local ordinance in any locale has required a prospective buyer to pay for any inspection prior to purchase. It is a fact that no state government has required a prospective buyer to pay for any inspection prior to purchase. It is a fact that the federal government has not required a prospective buyer to pay for any inspection prior to purchase. And, most importantly, it is a fact that no pre-trial order has been issued by Judge Fallon in MDL No. 2047 requiring a prospective buyer, later a plaintiff, to pay for either a home inspection or Chinese

drywall inspection prior to purchase.   For the Court to do so now would be an absurd result and not consistent with the Settlement Agreement.

The common definition for "reasonable" is, "using or showing reason, or sound judgment; sensible."[1]  If the Court finds that Section IV(D) was intended by the parties to add two additional items for review (purchasing with knowledge of defective Chinese drywall and reasonable inquiry), then the extent of the inquiry and the finding must be based on the evidence presented.  Plaintiffs position is that a recommendation by the Special Master and later a review by the Court, must be a binary one – either Plaintiffs purchased with knowledge or they did not; either Plaintiffs acted sensibly in the given situation or they did not.   The rationale for the decision should be in writing as contract interpretation is reviewable by an appellate court *de novo*.

It is Plaintiff's position that this post-settlement process proposed by the defendants is the equivalent of a summary judgment proceeding.  Under Louisiana law, a summary judgment shall only be granted in favor of the mover if all evidence, taken together with affidavits, if any, shows that there is no genuine issue of material fact.  *Rapp v. City of New Orleans*, 95-1638, La. App. 4 Cir. 9/18/96, 681 So.2d 433, 436 (4 Cir. 1996).   And, where a genuine issue of material fact exists in a Section IV(D) inquiry, with evidence viewed in a light most favorable to the non-moving party, the Court must rule in favor of the non-moving party (i.e, Plaintiff).

**C.     Section IV(D) Terms Are Vague And Ambiguous.**

---

[1] Webster's New World College Dictionary, Fourth Edition, 2002, at Pg. 1194.

The parties have expressed two vastly different interpretations of the meaning of "reasonable inquiry" found in Section IV(D).  Plaintiffs take the position that no expanded review is warranted based on the terms of the Agreement – Section IV(D) is a statement of general agreement of the parties that explains to disqualified plaintiffs, that were left off or stricken from the exhibits to the agreement, exactly why they will not participate and receive settlement benefits. The issue of disqualification and the interplay between counsel prior to defining a universe of settling claims (i.e., negotiation and dispositive motion practice) is typically conducted prior to reaching a settlement agreement.  It makes no sense to agree to conduct what is essentially dispositive motion (i.e., summary judgment) practice now, particularly since the Agreement fails to property articulate the exact terms of any such process and standard.

Defendants argue that Section IV(D) opens this review process up and allows this Court to make up any standard of review and any scope of review it sees fit, including conducting "mini-trials" that in the past have resulted in requiring pre-purchase inspections by a plaintiff.  Without an express agreement to conduct such a review, it is clear error by the Court to create such a requirement now.  It is not consistent with the terms of the Agreement and it is not consistent with contract interpretatoin principles outlined in the Louisiana Civil Code.

Under Louisiana law, three things are absolutely necessary to confection of obligation: 1) the thing, 2) the price, and 3) the consent.  *Trinity Carton Co., Inc. v. Falstaff Brewing Corp.*, 767 F2d 184, reh'g denied, 775 F.2d 301, certirorari denied 106 S.Ct. 1202, 475 U.S. 1017, 89 L.Ed.2d 315.  Conversely, under Louisiana law, no

contract is properly confected without consent of both parties to all essential terms of contract. *Id*. In this instance, the parties have not agreed upon a process to evaluate Section IV(D) challenges by the defendants.

There was no meeting of the minds at the time of formation regarding the appropriate scope of review and the parties now disagree about the meaning of the section. This is the very definition of "vague and ambiguous" under Louisiana law. Under Louisiana law, the starting point in contractual interpretation is language of contract itself. LSA-C.C. art. 2046; *Mac Sales, Inc. v. E.I du Pont de Nemours & Co.*, 24 F.3d 747 (5th Cir. 1994). When a contract is expressed in unambiguous language, its terms will be given their plain meaning, and enforced as written. *Chisom v. Jindal*, 890 F.Supp.2d 696 (E.D.La. 2012). But, a contract is ambiguous if its terms are unclear or susceptible to more than one interpretation, or the intent of the parties cannot be ascertained from the language employed. *Preston Law Firm, LLC v. Mariner Health Care Management Co.*, 622 F.3d 384 (5th Cir. 2010). Under Louisiana law, parties may not create an ambiguity where none exists within the four corners of the contract. *Id*. Here, the tension between Section II(B) and Section IV(D) is plainly evident.

Louisiana law also provides that a doubtful contractual provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties. *Red River Parish Port Com'n v. Headwaters Resources, Inc.*, 698 F.Supp.2d 684 (W.D.La. 2010). The nature of the contract and usages are inapplicable here. As this is the first instance that plaintiffs represented

by Doyle Law Firm have been confronted with this issue and there is no course of conduct by the parties, this avenue is likewise foreclosed here.  But, if the Court looks to contracts of a like nature between the parties, it is left with no other choice than limiting the scope of review for already remediated homes to reimbursable costs as the parties fully agreed in the 2011 KPT Settlement Agreement - that was adopted in the *Beane* Settlement Agreement.

Until the scheduling conference interactions with the Special Master, the undersigned counsel has not been aware of the Special Master's deviation from the limited scope of review articulated in the 2011 KPT Settlement Agreement, later affirmed in the *Beane* Settlement Agreement.   To be clear, the undersigned counsel has had no previous course of dealings with this Special Master in this context (i.e., previous settled already-remediated home claims were settled by agreement); consequently, there has been no participation by conduct of the undersigned counsel to the proposed "mini-trial" process in the past.

Because the parties failed to agree on a Section IV(D) process, the Court is left with two limited options: 1) strike the language in the agreement that is vague and ambiguous; or, 2) allow for a very limited review for purchasing a home with knowledge and "reasonable inquiry" with resulting binary rulings regarding whether a plaintiff purchased with knowledge and acted sensibly/reasonably in their inquiry about a property's condition.

## II.    REIMBURSABLE COSTS

Per the terms of the *Beane* Settlement, the Already Remediated Home Protocol found in the 2011 KPT Settlement Agreement (R. Doc. 12061-6) were

adopted in their entirety. (R. Doc. 16978-1). Once the Court is convinced that a Plaintiff owns and Affected Property containing defective KPT drywall and that owner self –remediated, the focus shifts to analyzing the remediation and calculating reimbursable costs. It is a very straight-forward analysis.

The Owner Disclosure Affidavit (R. Doc. 12061-7), again adopted by the *Beane* Settlement Agreement, plainly states that, "[t]he following items should have been produced given the nature of the remediation project and will help us confirm the remediation costs associated with your property." (R. Doc. 12061-7, Page 5 of 7). Nowhere does the *Beane* Agreement indicate that failing to produce any item on the list will result in dismissal or invalidation of a claim. Instead, the document clearly indicates that confirming the appropriate remediation cost is the focus.

Not all requested items are necessary to calculate the appropriate remediation cost. For instance, many of the plaintiffs impacted by this process have retained samples of the defective KPT drywall. Offers have been extended over the past five years to provide the defendants with an opportunity to personally view the samples. Not once have the defendants ever attempted to arrange a viewing. So, any claim by the Knauf Defendants that a plaintiff's failure to keep drywall samples will somehow adversely affect them is a complete sham. They have no intention of ever viewing or testing samples at this late date. Their side show is an attempt to reduce payments to deserving plaintiffs. It should be disregarded in its entirety.

All settling Plaintiffs with pending already remediated home claims have submitted the requested remediation-related documents in their possession. All have made a good faith effort to comply with the terms of the Settlement Agreement.

All have provided sufficient documentation to allow the court to arrive at the appropriate reimbursable remediation cost for their respective properties.

The following section provides the court with Plaintiff's position on the pending issues and provides a consolidated summary regarding their claims that is intended to supplement their individual supporting documents recently submitted.

## III.    REASONABLE INQUIRY & REIMBURSABLE COST RECOMMENDATION

### A.  Rick Asch – 138 Saint Clair Drive, St. Simons Island, GA 31522

#### 1.    Knowledge of Defective Drywall and Reasonable Inquiry

Mr. Asch was a California resident that moved to this area of Georgia when he purchased this property in May of 2012.  The affected property was a foreclosure and the seller was a bank.  The property was advertised and sold through an online auction.  It was sold "as-is" with no representations about the condition of the property.  The online auction listing did not provide for entry into the structure prior to the online sale; however, the realtor used by Mr. Asch was able to arrange entry on one occasion, just before the sale, through a contact at the bank.

Mr. Asch has provided photographic proof that the home contained defective Chinese drywall manufactured by the Knauf Defendants.  Mr. Asch also provided the Court with a notarized affidavit confirming that the home was purchased without knowledge of the presence of Knauf-made drywall (or any other brand of defective drywall) before purchase.

After analyzing the court's filing records, it appears that there are no other claims for Chinese drywall within 100 miles of this address.  The Chinese drywall issue was not known in this area of Georgia at the time and it certainly was not

known by a California resident moving to the area.  There was no notice by the seller, by a state or federal governmental agency or by the Knauf Defendants to Mr. Asch, his realtor, or any other prospective buyer.

Mr. Asch acted reasonably under the circumstances.  Mr. Asch personally inspected the property in the days just prior to the online auction after considerable effort by his real estate agent to secure access to the property where none was available to other prospective buyers.  No destructive testing of any kind was allowed by either the bank or the online auction entity during that walkthrough.  Mr. Asch looked for the common defects as outlined in his affidavit – none were present. The home appeared to be well-built, but neglected and requiring repair work.  The defective Chinese drywall was a latent defect that only presented itself after purchase when the Asch family's contractor began repairing the home, prior to the family moving from California.

Mr. Asch's affidavit affirms that he purchased the home without knowledge of defective Chinese drywall in the home.  And, as Mr. Asch affidavit affirms, he exercised sensible, sound judgment (i.e., acted "reasonably") in evaluating the condition of this property, prior to auction.

Defendants have offered conjecture and no proof to the contrary regarding these two issues; therefore, their baseless challenge is without merit and should be rejected.

## 2.     Reimburseable Costs and Recommendation to Court

All documentation necessary for the Court to calculate the reimbursable costs payable to Mr. Asch have been produced.  These documents and pictures were

produced to "help [all parties and the Court] confirm the remediation costs associated with [the Asch affected] property." *Owner Disclosure Affidavit*, Page 7.

A notarized owner disclosure affidavit was provided that contains a verification that the contents are truthful and correct to the best of Mr. Asch's knowledge. The contractor provided affirmation via the same document. Mr. Asch also submitted an environmental certification, remediation agreement, contractor invoices, proof of payment, and photographs of the property before, during and after remediation to confirm both the presence of Knauf brand Chinese-made drywall in the home as well as the details of the remediation that was performed on the home.

Mr. Asch purchased this property from a bank for residential purposes; thus, a lump-sum living expense payment is an available settlement benefit per the terms of the contract. The home was measured to be 3,616 square feet per the Glynn County Property Tax Records; therefore, a lump sum amount is payable to Mr. Asch for $36,160.00. The full cost of remediation incurred by Mr. Asch was documented to be $106,702.00.

A recommendation to the Court is hereby requested for a payment to Mr. Asch for the combined reimbursable remediation costs and a living expense benefit in the amount of $142, 862.00, as the terms of the *Beane* Settlement provide.

**B. Asset Portfolio Servicing Company – 1305 East 9th Street, Lehigh Acres, FL 33972**

**1. Knowledge of Defective Drywall and Reasonable Inquiry**

Asset Portfolio Servicing Company ("APSC") purchased this property through a county auction overseen by the Lee County Sheriff's Department, conducted at the

courthouse.  The property was listed to be sold "as-is" without any representations about the condition.  Per the terms of the auction, no prospective bidders were permitted to enter the property prior to the sale; however, an inspection of the property was performed by Team Realty of Southwest Florida from the exterior of the home at the request of  APSC.  The inspection report was produced with the other documentation in support of ASPC's ARH Claim.

APSC has provided photographic proof that the home contained defective Chinese drywall manufactured by the Knauf Defendants.  APSC also provided the Court with a notarized affidavit of Roy Michael Freeman, a shareholder, confirming that the home was purchased without knowledge of the presence of Knauf-made drywall (or any other brand of defective drywall) before purchase.

APSC received no notice, either actual or constructive, from any entity – local government, state government, federal government, state court, or federal court – providing notice that the property contained defective Chinese-made drywall prior to the purchase at auction.  Because APSC purchased this property without knowledge of defective Chinese drywall, affirmed by the affidavit of Mr. Roy Michael Freeman, and because APSC engaged an inspection company to evaluate the condition of the property to the extent possible prior to the auction, APSC acted sensibly under the circumstance; therefore, APSC's actions demonstrate that it conducted a reasonable inquiry.

Defendants have offered conjecture and no proof to the contrary regarding these two issues; therefore, their baseless challenge is without merit and should be rejected.

## 2.       Reimburseable Costs and Recommendation to Court

All documentation necessary for the Court to calculate the reimbursable costs payable to APSC have been produced.  These documents and pictures were produced to "help [all parties and the Court] confirm the remediation costs associated with [the APSC affected] property." *Owner Disclosure Affidavit*, Page 7.

A notarized owner disclosure affidavit was provided that contains a verification that the contents are truthful and correct to the best of Mr. Roy Michael Freeman's knowledge.  The contractor that conducted the remediation also provided affirmation via the same document.  APSC also submitted an environmental certification, remediation agreement, contractor invoices, proof of payment, and photographs of the property before, during and after remediation to confirm both the presence of Knauf brand Chinese-made drywall in the home as well as the details of the remediation that was performed on the home.

Samples of the defective drywall have been retained and inspection of the same has been offered to defense counsel on multiple occasions.  The Knauf Defendants, their counsel and/or agents have never attempted to view the retained samples.

APSC purchased this property from a bank for commercial purposes; thus, a lump-sum living expense payment is not an available settlement benefit per the terms of the contract.  The full cost of remediation incurred by APSC was documented to be $63,869.91.

A recommendation to the Court is hereby requested for a payment to APSC for reimbursable remediation costs in the amount of $63,869.91.

16

C. **Doodnauth Bahadur – 1925 SE 22nd Court, Miami, FL  33035**

1. **Knowledge of Defective Drywall and Reasonable Inquiry**

Mr. Bahadur is a New York resident that intended to relocate to Florida once he retired and this property was purchased in April of 2011 in anticipation of that move.  The affected property was a foreclosure and the seller was a bank.  The property was advertised and sold through an online auction.  It was sold "as-is" with no representations about the condition of the property.

Mr. Bahadur has provided photographic proof that the home contained defective Chinese drywall manufactured by the Knauf Defendants.  Mr. Bahadur also provided the Court with a notarized affidavit confirming that the home was purchased without knowledge of the presence of Knauf-made drywall (or any other brand of defective drywall) before purchase.

At the time of his purchase, this MDL was formed, but the litigation was immature.  The Chinese drywall issue was not well known in this area of Florida at the time and it certainly was not known by a New York resident moving to the area.  There was no notice by the seller, by a state or federal governmental agency or by the Knauf Defendants to Mr. Bahadur, his realtor, or any other prospective buyer.

Mr. Bahadur acted reasonably under the circumstances.  Mr. Bahadur personally inspected the property with his contractor prior to the sale to inspect the condition of the property.  Mr. Bahadur and his contractor looked for the common defects as outlined in his affidavit.  The home was abandoned and had been so for some time.  No appliances remained, fixtures were missing and there was damage to walls and floors throughout the home.  There was no "rotten egg" smell during his

inspections.   The home appeared to be well-built, but neglected and requiring significant repair work.  The defective Chinese drywall was a latent defect that only presented itself after purchase when Mr. Bahadur's contractor began repairing the home.

Mr. Bahadur's affidavit affirms that he purchased the home without knowledge of defective Chinese drywall.  And, as Mr. Bahadur's affidavit affirms, he exercised sensible, sound judgment (i.e., acted "reasonably") in evaluating the condition of this property.

Defendants have offered no proof to the contrary regarding these two issues; therefore, their baseless challenge is without merit and should be rejected.

## 2.    Reimburseable Costs and Recommendation to Court

All documentation necessary for the Court to calculate the reimbursable costs payable to Mr. Bahadur have been produced.  These documents and pictures were produced to "help [all parties and the Court] confirm the remediation costs associated with [the Asch affected] property."  *Owner Disclosure Affidavit*, Page 7.

A notarized owner disclosure affidavit was provided that contains a verification that the contents are truthful and correct to the best of Mr. Bahadur's knowledge.  The contractor did not provide affirmation via the document due to a conflict that arose during remediation that ultimately caused Mr. Bahadur to terminate the contractor's services.  Mr. Bahadur also submitted a Third Party Remediation Inspection Report,  remediation agreement, contractor invoices, proof of payment, and photographs of the property before, during and after remediation to confirm both the presence of Knauf brand Chinese-made drywall in the home as

well as the details of the remediation that was performed on the home.  Mr. Bahadur also provided the environmental testing report issued by Pro-Lab that identified and confirmed the defective Knauf-made drywall in the home.

Mr. Bahadur purchased this property from a bank for residential purposes; thus, a lump-sum living expense payment is an available settlement benefit per the terms of the contract.  The home was measured to be 3,453 square feet  of living space per the Miami-Dade County Property Appraiser's records; therefore, a lump sum amount is payable to Mr. Bahadur for $29,350.50.

A recommendation to the Court is hereby requested for a payment to Mr. Bahadur for reimbursable remediation costs and living expense benefits in the amount of $189,650.50.

### D. CDO Investments, LLC – 1374 Cathedall Avenue, North Port, FL 34288

#### 1. Knowledge of Defective Drywall and Reasonable Inquiry

CDO Investments, LLC ("CDO") purchased this property through a county auction overseen by the Sarasota County Sheriff's Department, conducted at the courthouse.  The property was listed to be sold "as-is" without any representations about the condition.  Per the terms of the auction, no prospective bidders were permitted to enter the property prior to the sale; however, an inspection of the property was performed by Team Realty of Southwest Florida from the exterior of the home at the request of  CDO.  The inspection report was produced with the other documentation in support of CDO's ARH Claim.

CDO has provided photographic proof that the home contained defective Chinese drywall manufactured by the Knauf Defendants.  CDO also provided the

Court with a notarized affidavit of Christopher Owens, a member of the LLC, confirming that the home was purchased without knowledge of the presence of Knauf-made drywall (or any other brand of defective drywall) before purchase.

CDO received no notice, either actual or constructive, from any entity – local government, state government, federal government, state court, or federal court – providing notice that the property contained defective Chinese-made drywall prior to the purchase at auction. Because CDO purchased this property without knowledge of defective Chinese drywall, affirmed by the affidavit of Mr. Christopher Owens, and because CDO engaged an inspection company to evaluate the condition of the property to the extent possible prior to the auction, CDO acted sensibly under the circumstance; therefore, APSC's actions demonstrate that it conducted a reasonable inquiry.

Defendants have offered conjecture and no proof to the contrary regarding these two issues; therefore, their baseless challenge is without merit and should be rejected.

**2.     Reimburseable Costs and Recommendation to Court**

All documentation necessary for the Court to calculate the reimbursable costs payable to CDO have been produced. These documents and pictures were produced to "help [all parties and the Court] confirm the remediation costs associated with [the CDO affected] property." *Owner Disclosure Affidavit*, Page 7.

A notarized owner disclosure affidavit was provided that contains a verification that the contents are truthful and correct to the best of Mr. Christopher Owens' knowledge. Additional information about the property was submitted and

affirmed in the affidavit executed by Mr. Chris Owens, dated May 19, 2018. It too was intended to provide information about the property to the best of his knowledge under penalty of perjury.

The contractor that conducted the remediation also provided affirmation via the same home owner disclosure affidavit that was signed and notarized. CDO also submitted an environmental certification, remediation agreement, contractor invoices, proof of payment, and photographs of the property before, during and after remediation to confirm both the presence of Knauf brand Chinese-made drywall in the home as well as the details of the remediation that was performed on the home.

Samples of the defective drywall have been retained and inspection of the same has been offered to defense counsel on multiple occasions. The Knauf Defendants, their counsel and/or agents have never attempted to view the retained samples.

CDO purchased this property from a bank at auction for commercial purposes; thus, a lump-sum living expense payment is not an available settlement benefit per the terms of the contract. The full cost of remediation incurred by CDO was documented to be $75,612.50.

A recommendation to the Court is hereby requested for a payment to CDO for the reimbursable remediation costs in the amount of $75,612.50, as the terms of the *Beane* Settlement provide.

### E. CDO Investments, LLC – 4698 Globe Terrace, North Port, FL 34286

#### 1. Knowledge of Defective Drywall and Reasonable Inquiry

CDO Investments, LLC ("CDO") purchased this property through a county auction overseen by the Sarasota County Sheriff's Department, conducted at the courthouse.  The property was listed to be sold "as-is" without any representations about the condition.  Per the terms of the auction, no prospective bidders were permitted to enter the property prior to the sale; however, an inspection of the property was performed by Team Realty of Southwest Florida from the exterior of the home at the request of CDO.  The inspection report was produced with the other documentation in support of CDO's ARH Claim.

CDO has provided photographic proof that the home contained defective Chinese drywall manufactured by the Knauf Defendants.  CDO also provided the Court with a notarized affidavit of Christopher Owens, a member of the LLC, confirming that the home was purchased without knowledge of the presence of Knauf-made drywall (or any other brand of defective drywall) before purchase.

CDO received no notice, either actual or constructive, from any entity – local government, state government, federal government, state court, or federal court – providing notice that the property contained defective Chinese-made drywall prior to the purchase at auction.  Because CDO purchased this property without knowledge of defective Chinese drywall, affirmed by the affidavit of Mr. Christopher Owens, and because CDO engaged an inspection company to evaluate the condition of the property to the extent possible prior to the auction, CDO acted sensibly under

the circumstance; therefore, CDO's actions demonstrate that it conducted a reasonable inquiry.

Defendants have offered conjecture and no proof to the contrary regarding these two issues; therefore, their baseless challenge is without merit and should be rejected.

### 2.    Reimburseable Costs and Recommendation to Court

All documentation necessary for the Court to calculate the reimbursable costs payable to CDO have been produced.  These documents and pictures were produced to "help [all parties and the Court] confirm the remediation costs associated with [the CDO affected] property." *Owner Disclosure Affidavit*, Page 7.

A notarized owner disclosure affidavit was provided that contains a verification that the contents are truthful and correct to the best of Mr. Christopher Owens' knowledge.  Additional information about the property was submitted and affirmed in the affidavit executed by Mr. Chris Owens, dated May 19, 2018.  It too was intended to provide information about the property to the best of his knowledge under penalty of perjury.

The contractor that conducted the remediation also provided affirmation via the same home owner disclosure affidavit that was signed and notarized.  CDO also submitted an environmental certification, remediation agreement, contractor invoices, proof of payment, and photographs of the property before, during and after remediation to confirm both the presence of Knauf brand Chinese-made drywall in the home as well as the details of the remediation that was performed on the home.

Samples of the defective drywall have been retained and inspection of the same has been offered to defense counsel on multiple occasions. The Knauf Defendants, their counsel and/or agents have never attempted to view the retained samples.

CDO purchased this property from a bank at auction for commercial purposes; thus, a lump-sum living expense payment is not an available settlement benefit per the terms of the contract. The full cost of remediation incurred by CDO was documented to be $75,612.50.

A recommendation to the Court is hereby requested for a payment to CDO for the reimbursable remediation costs in the amount of $75,612.50, as the terms of the *Beane* Settlement provide.

### F. CDO Investments, LLC – 2063 Vancouver Lane, North Port, FL 34286

### 1. Knowledge of Defective Drywall and Reasonable Inquiry

CDO Investments, LLC ("CDO") purchased this property through a county auction overseen by the Sarasota County Sheriff's Department, conducted at the courthouse. The property was listed to be sold "as-is" without any representations about the condition. Per the terms of the auction, no prospective bidders were permitted to enter the property prior to the sale; however, an inspection of the property was performed by Team Realty of Southwest Florida from the exterior of the home at the request of CDO. The inspection report was produced with the other documentation in support of CDO's ARH Claim.

CDO has provided photographic proof that the home contained defective Chinese drywall manufactured by the Knauf Defendants. CDO also provided the

Court with a notarized affidavit of Christopher Owens, a member of the LLC, confirming that the home was purchased without knowledge of the presence of Knauf-made drywall (or any other brand of defective drywall) before purchase.

CDO received no notice, either actual or constructive, from any entity – local government, state government, federal government, state court, or federal court – providing notice that the property contained defective Chinese-made drywall prior to the purchase at auction.   Because CDO purchased this property without knowledge of defective Chinese drywall, affirmed by the affidavit of Mr. Christopher Owens, and because CDO engaged an inspection company to evaluate the condition of the property to the extent possible prior to the auction, CDO acted sensibly under the circumstance; therefore, CDO's actions demonstrate that it conducted a reasonable inquiry.

Defendants have offered conjecture and no proof to the contrary regarding these two issues; therefore, their baseless challenge is without merit and should be rejected.

**2.      Reimburseable Costs and Recommendation to Court**

All documentation necessary for the Court to calculate the reimbursable costs payable to CDO have been produced.   These documents and pictures were produced to "help [all parties and the Court] confirm the remediation costs associated with [the CDO affected] property." *Owner Disclosure Affidavit*, Page 7.

A notarized owner disclosure affidavit was provided that contains a verification that the contents are truthful and correct to the best of Mr. Christopher Owens' knowledge.   Additional information about the property was submitted and

affirmed in the affidavit executed by Mr. Chris Owens, dated May 19, 2018.  It too was intended to provide information about the property to the best of his knowledge under penalty of perjury.

The contractor that conducted the remediation also provided affirmation via the same home owner disclosure affidavit that was signed and notarized.  CDO also submitted an environmental certification, remediation agreement, contractor invoices, proof of payment, and photographs of the property before, during and after remediation to confirm both the presence of Knauf brand Chinese-made drywall in the home as well as the details of the remediation that was performed on the home.

Samples of the defective drywall have been retained and inspection of the same has been offered to defense counsel on multiple occasions.  The Knauf Defendants, their counsel and/or agents have never attempted to view the retained samples.

CDO purchased this property from a bank at auction for commercial purposes; thus, a lump-sum living expense payment is not an available settlement benefit per the terms of the contract.  The full cost of remediation incurred by CDO was documented to be $74,159.31.

G. **Andrew Kubick – 2802 21st Street West, Lehigh Acres, FL  33971**

1.  **Knowledge of Defective Drywall and Reasonable Inquiry**

Mr. Andrew Kubick purchased this property through a county real estate auction overseen by the Lee County Sheriff's Department, conducted at the courthouse in February of 2012.  The property was listed to be sold "as-is" without

any representations about the condition.  Per the terms of the auction, no prospective bidders were permitted to enter the property prior to the sale; however, an inspection of the property was performed by Team Realty of Southwest Florida from the exterior of the home at the request of  Mr. Kubick.  The inspection report was produced with the other documentation in support of Mr. Kubick's ARH Claim.

Mr. Kubick has provided photographic proof that the home contained defective Chinese drywall manufactured by the Knauf Defendants.  Mr. Kubick also provided the Court with a notarized affidavit confirming that the home was purchased without knowledge of the presence of Knauf-made drywall (or any other brand of defective drywall) before purchase.

Mr. Kubick received no notice, either actual or constructive, from any entity – local government, state government, federal government, state court, or federal court – providing notice that the property contained defective Chinese-made drywall prior to the purchase at auction.  Because Mr. Kubick purchased this property without knowledge of defective Chinese drywall, affirmed again in a affidavit signed and notarized by Mr. Kubick on May 19, 2018, and because Mr. Kubick engaged an inspection company to evaluate the condition of the property to the extent possible prior to the auction, Mr. Andrew Kubick acted sensibly under the circumstance; therefore, Andrew Kubick's actions demonstrate that it conducted a reasonable inquiry.

Defendants have offered conjecture and no proof to the contrary regarding these two issues; therefore, their baseless challenge is without merit and should be rejected.

2.       **Reimburseable Costs and Recommendation to Court**

All documentation necessary for the Court to calculate the reimbursable costs payable to Mr. Kubick have been produced.  These documents and pictures were produced to "help [all parties and the Court] confirm the remediation costs associated with [the Asch affected] property."  *Owner Disclosure Affidavit*, Page 7.

   A notarized home owner disclosure affidavit was provided that contains a verification that the contents are truthful and correct to the best of Mr. Kubick's knowledge.  The contractor provided affirmation via the same document.  Mr. Kubick also submitted an environmental certification, remediation agreement, contractor invoices, proof of payment, and photographs of the property before, during and after remediation to confirm both the presence of Knauf brand Chinese-made drywall in the home as well as the details of the remediation that was performed on the home.  The full cost of remediation incurred by Mr. Kubick was documented to be $73,365.80.

Mr. Kubick purchased this property at auction for residential purposes; thus, a lump-sum living expense payment is an available settlement benefit per the terms of the contract.  The home was measured to be 1,698 square feet of living space per the Lee County Property Appraiser's records; therefore, a lump sum amount is payable to Mr. Kubick for $14,433.00.

A recommendation to the Court is hereby requested for a payment to Mr. Kubick for reimbursable remediation costs and living expense benefits in the amount of $87,798.80.

**H. <u>Mohamed Latiff – 1943 SE 22nd Drive, Homestead, FL 33035</u>**

**1.      Knowledge of Defective Drywall and Reasonable Inquiry**

Mr. Mohamed Latiff purchased this property in August of 2011.  The affected property was a foreclosure and the seller was a bank.  The property was advertised and sold through an online auction.  It was sold "as-is" with no representations about the condition of the property.

Mr. Latiff has provided photographic proof that the home contained defective Chinese drywall manufactured by the Knauf Defendants.  Mr. Latiff also provided the Court with a notarized affidavit confirming that the home was purchased without knowledge of the presence of Knauf-made drywall (or any other brand of defective drywall) before purchase.

At the time of his purchase, this MDL was formed, but the litigation was immature.   The Chinese drywall issue was not well known in this area of Florida at the time and it was not known by Mr. Latiff.  There was no notice by the seller, by a state or federal governmental agency or by the Knauf Defendants to Mr. Latiff, his realtor, or any other prospective buyer.

Mr. Latiff acted reasonably under the circumstances.  Mr. Latiff personally inspected the property. He is a contractor and is knowledgable about common contruction defects.  Mr. Latiff looked for the common defects as outlined in his affidavit.  The home was abandoned and had been so for some time.  It had also been vandalized. No appliances remained, fixtures were missing and there was damage to walls and floors throughout the home.  He does not recall a "rotten egg" smell during his inspections.  The home appeared to be well-built, but neglected and requiring

significant repair work.  The defective Chinese drywall was a latent defect that only presented itself after purchase when Mr. Latiff's construction company began repairing the home.

Mr. Latiff's affidavit affirms that he purchased the home without knowledge of defective Chinese drywall in the home.  And, as Mr. Latiff's affidavit affirms, he believes that he exercised sensible, sound judgment (i.e., acted "reasonably") in evaluating the condition of this property.

Defendants have offered no proof to the contrary regarding these two issues; therefore, their baseless challenge is without merit and should be rejected.

### 2.   Reimburseable Costs and Recommendation to Court

All documentation necessary for the Court to calculate the reimbursable costs payable to Mr. Latiff have been produced.  These documents and pictures were produced to "help [all parties and the Court] confirm the remediation costs associated with [the Asch affected] property."  *Owner Disclosure Affidavit*, Page 7.

A notarized home owner disclosure affidavit was provided that contains a verification that the contents are truthful and correct to the best of Mr. Latiff's knowledge.  The contractor provided affirmation via the same document.  Mr. Latiff also submitted an environmental certification, remediation agreement, contractor invoices, proof of payment, and photographs of the property before, during and after remediation to confirm both the presence of Knauf brand Chinese-made drywall in the home as well as the details of the remediation that was performed on the home.  The full cost of remediation incurred by Mr. Latiff was documented to be $125,000.00.

Mr. Latiff purchased this property for residential purposes; thus, a lump-sum living expense payment is an available settlement benefit per the terms of the settlement contract.  The home was measured to be 3,567 square feet of living space per the Miami-Dade County Property Appraiser's records; therefore, a lump sum amount is payable to Mr. Latiff for $35,670.00.

A recommendation to the Court is hereby requested for a payment to Mr. Latiff for reimbursable remediation costs and living expense benefits in the amount of $160,670.00.

I. **Mohamed Latiff – 1898 SE 23rd Court, Homestead, FL 33035**

1. **Knowledge of Defective Drywall and Reasonable Inquiry**

Mr. Mohamed Latiff purchased this property in February of 2013.   The affected property was a short sale managed by a bank.   The property was sold "as-is" with no representations about the condition of the property.

Mr. Latiff has provided photographic proof that the home contained defective Chinese drywall manufactured by the Knauf Defendants.  Mr. Latiff also provided the Court with a notarized affidavit confirming that the home was purchased without knowledge of the presence of Knauf-made drywall (or any other brand of defective drywall) before purchase.

The Chinese drywall issue was known in this area of Florida at the time and it was known by Mr. Latiff; however, there was no notice by the seller, by a state or federal governmental agency or by the Knauf Defendants to Mr. Latiff, his realtor, or any other prospective buyer.

The property was in extremely poor condition at the time of sale. It had not been inhabited in over two years. The exterior was damaged and windows leaked throughout the home. The roof was damaged and significant damage to the floors was present throughout the structure. In addition, kitchen cabinets were missing, electrical fixtures were missing, the bathrooms were in disrepair and the home was infested with termites and mold. Mr. Latiff personally inspected the property personally, although the extent of the inspection was limited due to the lack of utility service at the time.

Mr. Latiff is a contractor and is knowledgable about common contruction defects. Mr. Latiff looked for the common defects as outlined in his affidavit. Mr. Latiff recalls no "rotten egg" smell during his inspections, only the smell of mold that had built up during the two years as it sat vacant. The home appeared to be well-built, but neglected and requiring significant repair work. The defective Chinese drywall was a latent defect that only presented itself after purchase when Mr. Latiff's construction company began repairing the home.

Mr. Latiff's affidavit affirms that he purchased the home without knowledge of defective Chinese drywall in the home. And, as Mr. Latiff's affidavit affirms, he believes that he exercised sensible, sound judgment (i.e., acted "reasonably") in evaluating the condition of this property.

Defendants have offered no proof to the contrary regarding these two issues; therefore, their baseless challenge is without merit and should be rejected.

32

## 2.    Reimburseable Costs and Recommendation to Court

All documentation necessary for the Court to calculate the reimbursable costs payable to Mr. Latiff have been produced.  These documents and pictures were produced to "help [all parties and the Court] confirm the remediation costs associated with [the Asch affected] property." *Owner Disclosure Affidavit*, Page 7.

A notarized home owner disclosure affidavit was provided that contains a verification that the contents are truthful and correct to the best of Mr. Latiff's knowledge.  The contractor provided affirmation via the same document.  Mr. Latiff also submitted an environmental certification, remediation agreement, contractor invoices, proof of payment, and photographs of the property before, during and after remediation to confirm both the presence of Knauf brand Chinese-made drywall in the home as well as the details of the remediation that was performed on the home.  The full cost of remediation incurred by Mr. Latiff was documented to be $125,000.00.

Mr. Latiff purchased this property for residential purposes; thus, a lump-sum living expense payment is an available settlement benefit per the terms of the settlement contract.  The home was measured to be 3,567 square feet of living space per the Miami-Dade County Property Appraiser's records; therefore, a lump sum amount is payable to Mr. Latiff for $35,670.00.

A recommendation to the Court is hereby requested for a payment to Mr. Latiff for reimbursable remediation costs and living expense benefits in the amount of $160,670.00.

**J.** **MCF Enterprises, Inc. – 1933 Wanda Avenue North, Lehigh Acres, FL 33971**

**1.** **Knowledge of Defective Drywall and Reasonable Inquiry**

MCF Enterprises, Inc. ("MCF") purchased this property through a county auction overseen by the Lee County Sheriff's Department, conducted at the courthouse. The property was listed to be sold "as-is" without any representations about the condition. Per the terms of the auction, no prospective bidders were permitted to enter the property prior to the sale; however, an inspection of the property was performed by Team Realty of Southwest Florida from the exterior of the home at the request of MCF. The inspection report was produced with the other documentation in support of MCF's ARH Claim.

MCF has provided photographic proof that the home contained defective Chinese drywall manufactured by the Knauf Defendants. MCF also provided the Court with a notarized affidavit of Roy Michael Freeman, the managing shareholder, confirming that this home was purchased without knowledge of the presence of Knauf-made drywall (or any other brand of defective drywall) before purchase.

MCF received no notice, either actual or constructive, from any entity – local government, state government, federal government, state court, or federal court – providing notice that the property contained defective Chinese-made drywall prior to the purchase at auction. Because MCF purchased this property without knowledge of defective Chinese drywall, affirmed by the affidavit of Mr. Roy Michael Freeman, and because MCF engaged an inspection company to evaluate the condition of the property to the extent possible prior to the auction, MCF acted

sensibly under the circumstance; therefore, MCF's actions demonstrate that it conducted a reasonable inquiry.

Defendants have offered conjecture and no proof to the contrary regarding these two issues; therefore, their baseless challenge is without merit and should be rejected.

### 2. Reimburseable Costs and Recommendation to Court

All documentation necessary for the Court to calculate the reimbursable costs payable to MCF have been produced.  These documents and pictures were produced to "help [all parties and the Court] confirm the remediation costs associated with [the CDO affected] property." *Owner Disclosure Affidavit*, Page 7.

A notarized owner disclosure affidavit was provided that contains a verification that the contents are truthful and correct to the best of Mr. Roy Michael Freman's knowledge.  Additional information about the property was submitted and affirmed in the affidavit executed by Mr. Roy Michael Freeman, dated May 19, 2018. It too was intended to provide information about the property to the best of his knowledge under penalty of perjury.

The contractor that conducted the remediation also provided affirmation via the same home owner disclosure affidavit that was signed and notarized.  MCF also submitted an environmental certification, remediation agreement, contractor invoices, proof of payment, and photographs of the property before, during and after remediation to confirm both the presence of Knauf brand Chinese-made drywall in the home as well as the details of the remediation that was performed on the home.

Samples of the defective drywall have been retained and inspection of the same has been offered to defense counsel on multiple occasions. The Knauf Defendants, their counsel and/or agents have never attempted to view the retained samples.

MCF purchased this property from a bank at auction for commercial purposes; thus, a lump-sum living expense payment is not an available settlement benefit per the terms of the contract. The full cost of remediation incurred by MCF was documented to be $98,382.99.

### K.   MCF Enterprises, Inc. – 2511 17th Street SW, Lehigh Acres, FL 33976

#### 1.      Knowledge of Defective Drywall and Reasonable Inquiry

MCF Enterprises, Inc. ("MCF") purchased this property through a county auction overseen by the Lee County Sheriff's Department, conducted at the courthouse. The property was listed to be sold "as-is" without any representations about the condition. Per the terms of the auction, no prospective bidders were permitted to enter the property prior to the sale; however, an inspection of the property was performed by Team Realty of Southwest Florida from the exterior of the home at the request of MCF. The inspection report was produced with the other documentation in support of MCF's ARH Claim.

MCF has provided photographic proof that the home contained defective Chinese drywall manufactured by the Knauf Defendants. MCF also provided the Court with a notarized affidavit of Roy Michael Freeman, the managing shareholder, confirming that this home was purchased without knowledge of the presence of Knauf-made drywall (or any other brand of defective drywall) before purchase.

MCF received no notice, either actual or constructive, from any entity – local government, state government, federal government, state court, or federal court – providing notice that the property contained defective Chinese-made drywall prior to the purchase at auction.   Because MCF purchased this property without knowledge of defective Chinese drywall, affirmed by the affidavit of Mr. Roy Michael Freeman, and because MCF engaged an inspection company to evaluate the condition of the property to the extent possible prior to the auction, MCF acted sensibly under the circumstance; therefore, MCF's actions demonstrate that it conducted a reasonable inquiry.

Defendants have offered conjecture and no proof to the contrary regarding these two issues; therefore, their baseless challenge is without merit and should be rejected.

### 2.      Reimburseable Costs and Recommendation to Court

All documentation necessary for the Court to calculate the reimbursable costs payable to MCF have been produced.   These documents and pictures were produced to "help [all parties and the Court] confirm the remediation costs associated with [the CDO affected] property." *Owner Disclosure Affidavit*, Page 7.

A notarized owner disclosure affidavit was provided that contains a verification that the contents are truthful and correct to the best of Mr. Roy Michael Freman's knowledge.   Additional information about the property was submitted and affirmed in the affidavit executed by Mr. Roy Michael Freeman, dated May 19, 2018. It too was intended to provide information about the property to the best of his knowledge under penalty of perjury.

The contractor that conducted the remediation also provided affirmation via the same home owner disclosure affidavit that was signed and notarized.  MCF also submitted an environmental certification, remediation agreement, contractor invoices, proof of payment, and photographs of the property before, during and after remediation to confirm both the presence of Knauf brand Chinese-made drywall in the home as well as the details of the remediation that was performed on the home.

Samples of the defective drywall have been retained and inspection of the same has been offered to defense counsel on multiple occasions.  The Knauf Defendants, their counsel and/or agents have never attempted to view the retained samples.

MCF purchased this property from a bank at auction for commercial purposes; thus, a lump-sum living expense payment is not an available settlement benefit per the terms of the contract.  The full cost of remediation incurred by MCF was documented to be $73,365.80.

**L.   MCF Enterprises, Inc. – 343 Ranchito Avenue, Lehigh Acres, FL 33974**

**1.      Knowledge of Defective Drywall and Reasonable Inquiry**

MCF Enterprises, Inc. ("MCF") purchased this property through a county auction overseen by the Lee County Sheriff's Department, conducted at the courthouse.  The property was listed to be sold "as-is" without any representations about the condition.  Per the terms of the auction, no prospective bidders were permitted to enter the property prior to the sale; however, an inspection of the property was performed by Team Realty of Southwest Florida from the exterior of

38

the home at the request of MCF. The inspection report was produced with the other documentation in support of MCF's ARH Claim.

MCF has provided photographic proof that the home contained defective Chinese drywall manufactured by the Knauf Defendants. MCF also provided the Court with a notarized affidavit of Roy Michael Freeman, the managing shareholder, confirming that this home was purchased without knowledge of the presence of Knauf-made drywall (or any other brand of defective drywall) before purchase.

MCF received no notice, either actual or constructive, from any entity – local government, state government, federal government, state court, or federal court – providing notice that the property contained defective Chinese-made drywall prior to the purchase at auction. Because MCF purchased this property without knowledge of defective Chinese drywall, affirmed by the affidavit of Mr. Roy Michael Freeman, and because MCF engaged an inspection company to evaluate the condition of the property to the extent possible prior to the auction, MCF acted sensibly under the circumstance; therefore, MCF's actions demonstrate that it conducted a reasonable inquiry.

Defendants have offered conjecture and no proof to the contrary regarding these two issues; therefore, their baseless challenge is without merit and should be rejected.

### 2.   Reimburseable Costs and Recommendation to Court

All documentation necessary for the Court to calculate the reimbursable costs payable to MCF have been produced. These documents and pictures were

produced to "help [all parties and the Court] confirm the remediation costs associated with [the CDO affected] property." *Owner Disclosure Affidavit*, Page 7.

A notarized owner disclosure affidavit was provided that contains a verification that the contents are truthful and correct to the best of Mr. Roy Michael Freman's knowledge. Additional information about the property was submitted and affirmed in the affidavit executed by Mr. Roy Michael Freeman, dated May 19, 2018. It too was intended to provide information about the property to the best of his knowledge under penalty of perjury.

The contractor that conducted the remediation also provided affirmation via the same home owner disclosure affidavit that was signed and notarized. MCF also submitted an environmental certification, remediation agreement, contractor invoices, proof of payment, and photographs of the property before, during and after remediation to confirm both the presence of Knauf brand Chinese-made drywall in the home as well as the details of the remediation that was performed on the home.

Samples of the defective drywall have been retained and inspection of the same has been offered to defense counsel on multiple occasions. The Knauf Defendants, their counsel and/or agents have never attempted to view the retained samples.

MCF purchased this property from a bank at auction for commercial purposes; thus, a lump-sum living expense payment is not an available settlement benefit per the terms of the contract. The full cost of remediation incurred by MCF was documented to be $78,114.92.

M. **MCF Enterprises, Inc. – 3505 9th Street West, Lehigh Acres, FL 33971**

    **1.**    **Knowledge of Defective Drywall and Reasonable Inquiry**

MCF Enterprises, Inc. ("MCF") purchased this property through a county auction overseen by the Lee County Sheriff's Department, conducted at the courthouse.  The property was listed to be sold "as-is" without any representations about the condition.  Per the terms of the auction, no prospective bidders were permitted to enter the property prior to the sale; however, an inspection of the property was performed by Team Realty of Southwest Florida from the exterior of the home at the request of MCF.  The inspection report was produced with the other documentation in support of MCF's ARH Claim.

MCF has provided photographic proof that the home contained defective Chinese drywall manufactured by the Knauf Defendants.  MCF also provided the Court with a notarized affidavit of Roy Michael Freeman, the managing shareholder, confirming that this home was purchased without knowledge of the presence of Knauf-made drywall (or any other brand of defective drywall) before purchase.

MCF received no notice, either actual or constructive, from any entity – local government, state government, federal government, state court, or federal court – providing notice that the property contained defective Chinese-made drywall prior to the purchase at auction.  Because MCF purchased this property without knowledge of defective Chinese drywall, affirmed by the affidavit of Mr. Roy Michael Freeman, and because MCF engaged an inspection company to evaluate the condition of the property to the extent possible prior to the auction, MCF acted

sensibly under the circumstance; therefore, MCF's actions demonstrate that it conducted a reasonable inquiry.

Defendants have offered conjecture and no proof to the contrary regarding these two issues; therefore, their baseless challenge is without merit and should be rejected.

### 2.    Reimburseable Costs and Recommendation to Court

All documentation necessary for the Court to calculate the reimbursable costs payable to MCF have been produced.  These documents and pictures were produced to "help [all parties and the Court] confirm the remediation costs associated with [the CDO affected] property." *Owner Disclosure Affidavit*, Page 7.

A notarized owner disclosure affidavit was provided that contains a verification that the contents are truthful and correct to the best of Mr. Roy Michael Freman's knowledge.  Additional information about the property was submitted and affirmed in the affidavit executed by Mr. Roy Michael Freeman, dated May 19, 2018. It too was intended to provide information about the property to the best of his knowledge under penalty of perjury.

The contractor that conducted the remediation also provided affirmation via the same home owner disclosure affidavit that was signed and notarized.  MCF also submitted an environmental certification, remediation agreement, contractor invoices, proof of payment, and photographs of the property before, during and after remediation to confirm both the presence of Knauf brand Chinese-made drywall in the home as well as the details of the remediation that was performed on the home.

Samples of the defective drywall have been retained and inspection of the same has been offered to defense counsel on multiple occasions. The Knauf Defendants, their counsel and/or agents have never attempted to view the retained samples.

MCF purchased this property from a bank at auction for commercial purposes; thus, a lump-sum living expense payment is not an available settlement benefit per the terms of the contract. The full cost of remediation incurred by MCF was documented to be $73,332.27.

### N.  MCF Enterprises, Inc. – 900 Tena Avenue North, Lehigh Acres, FL  33971

#### 1.      Knowledge of Defective Drywall and Reasonable Inquiry

MCF Enterprises, Inc. ("MCF") purchased this property through a county auction overseen by the Lee County Sheriff's Department, conducted at the courthouse. The property was listed to be sold "as-is" without any representations about the condition. Per the terms of the auction, no prospective bidders were permitted to enter the property prior to the sale; however, an inspection of the property was performed by Team Realty of Southwest Florida from the exterior of the home at the request of MCF. The inspection report was produced with the other documentation in support of MCF's ARH Claim.

MCF has provided photographic proof that the home contained defective Chinese drywall manufactured by the Knauf Defendants. MCF also provided the Court with a notarized affidavit of Roy Michael Freeman, the managing shareholder, confirming that this home was purchased without knowledge of the presence of Knauf-made drywall (or any other brand of defective drywall) before purchase.

MCF received no notice, either actual or constructive, from any entity – local government, state government, federal government, state court, or federal court – providing notice that the property contained defective Chinese-made drywall prior to the purchase at auction. Because MCF purchased this property without knowledge of defective Chinese drywall, affirmed by the affidavit of Mr. Roy Michael Freeman, and because MCF engaged an inspection company to evaluate the condition of the property to the extent possible prior to the auction, MCF acted sensibly under the circumstance; therefore, MCF's actions demonstrate that it conducted a reasonable inquiry.

Defendants have offered conjecture and no proof to the contrary regarding these two issues; therefore, their baseless challenge is without merit and should be rejected.

### 2. Reimburseable Costs and Recommendation to Court

All documentation necessary for the Court to calculate the reimbursable costs payable to MCF have been produced. These documents and pictures were produced to "help [all parties and the Court] confirm the remediation costs associated with [the CDO affected] property." *Owner Disclosure Affidavit*, Page 7.

A notarized owner disclosure affidavit was provided that contains a verification that the contents are truthful and correct to the best of Mr. Roy Michael Freman's knowledge. Additional information about the property was submitted and affirmed in the affidavit executed by Mr. Roy Michael Freeman, dated May 19, 2018. It too was intended to provide information about the property to the best of his knowledge under penalty of perjury.

The contractor that conducted the remediation also provided affirmation via the same home owner disclosure affidavit that was signed and notarized.  MCF also submitted an environmental certification, remediation agreement, contractor invoices, proof of payment, and photographs of the property before, during and after remediation to confirm both the presence of Knauf brand Chinese-made drywall in the home as well as the details of the remediation that was performed on the home.

Samples of the defective drywall have been retained and inspection of the same has been offered to defense counsel on multiple occasions.  The Knauf Defendants, their counsel and/or agents have never attempted to view the retained samples.

MCF purchased this property from a bank at auction for commercial purposes; thus, a lump-sum living expense payment is not an available settlement benefit per the terms of the contract.  The full cost of remediation incurred by MCF was documented to be $73,332.27.

O.  **Rebecca McIntyre – 15922 Innerarity Point Road, Pensacola, FL  32507**

1.  **Knowledge of Defective Drywall and Reasonable Inquiry**

Mrs. McIntyre was a Jackson, Mississippi, resident that moved to this area of Florida only within the past three years.  She and her late husband, Paul McIntyre purchased this property in March of 2013.  The affected property was a foreclosure and the seller was a bank.  The property was advertised and sold through an online auction.  It was sold "as-is" with no representations about the condition of the property.  The online auction listing did not provide for entry into the structure

prior to the online sale. The auction site, listing, terms of sale, and closing documents are entirely consistent with other settling plaintiffs that received both remediation and settlement benefits (See, e.g., Plaintiffs Lowell Butts, Darrell Steward, Jinxi Zhu, Xiao-Ching Chen, Derrick Racine and others). The McIntyre closing documents were also provided in the supporting documentation for this claim. There is no waiver, acknowledgement, or assumption of the risk document included in the settlement paperwork to place the McIntyres on notice of the latent defect – just like the others.

Mrs. McIntyre has provided photographic proof that the home contained defective Chinese drywall manufactured by the Knauf Defendants. Mrs. McIntyre also provided the Court with a notarized affidavit confirming that the home was purchased without knowledge of the presence of Knauf-made drywall (or any other brand of defective drywall) before purchase.

Analysis of the filed Chinese drywall claims in MDL No. 2047 reveals there are very few claims for Chinese drywall in this area of Florida outside of the Innerarity Point Condominiums. The Chinese drywall issue was not well known in the Escambia County, Florida, area at the time and it certainly was not known by a Jackson, Mississippi, couple purchasing a secondeary residence. There was no notice by the seller, by a state or federal governmental agency or by the Knauf Defendants to Mrs. McIntyre or any other prospective buyer.

Msr. McIntyre acted reasonably under the circumstances, just like the other settling plaintiffs that have received benefits through the *Beane* Settlement Agreement. There was no entry to the property, no destructive testing of any kind

was allowed by either the bank or the online auction entity.   Mrs. McIntyre was completely blindsided by the latent defect that only presented itself after purchase when the McIntyre family's contractor began minor repairs to the home, prior to the family moving from Mississippi.

Mrs. McIntyre's affidavit affirms that she purchased the home without knowledge of defective Chinese drywall in the home.   And, as Mrs. McIntyre's affidavit affirms, she and Mr. McIntyre exercised sensible, sound judgment (i.e., acted "reasonably") in evaluating the condition of this property.

Defendants have offered no proof to the contrary regarding these two issues; therefore, their baseless challenge is without merit and should be rejected.   Their position is also contradicted by the settlement and payment of the many other Innerarity Point Condominium-related claims contained in the *Beane* complaint.   It was an unfortunate decision for Mr. & Mrs. McIntyre to self-remediate the home, because this process has taken many more years to resolve than their neighbors who settled pre-remediation claims years ago.

## 2. Reimburseable Costs and Recommendation to Court

All documentation necessary for the Court to calculate the reimbursable costs payable to Mrs. McIntyre have been produced.   These documents and pictures were produced to "help [all parties and the Court] confirm the remediation costs associated with [the Asch affected] property." *Owner Disclosure Affidavit*, Page 7.

A notarized owner disclosure affidavit was provided that contains a verification that the contents are truthful and correct to the best of Mrs. McIntyre's knowledge.   The contractor provided affirmation via the same document.   Mrs.

McIntyre also submitted an environmental certification, remediation agreement, contractor invoices, proof of payment, and photographs of the property before, during and after remediation to confirm both the presence of Knauf brand Chinese-made drywall in the home as well as the details of the remediation that was performed on the home.

Mrs. McIntyre continues to possess samples of the defective drywall. Knauf's counsel has been offered the opportunity to view the samples, but have never taken any action to do so.

Mrs. McIntyre purchased this property from a bank via online auction for residential purposes; thus, a lump-sum living expense payment is an available settlement benefit per the terms of the contract. The home was measured to be 1,314 square feet of living space per the Escambia County Property Appraiser's records; therefore, a lump sum amount is payable to Mrs. McIntyre for $11,169.00. The full cost of remediation incurred by Mrs. McIntyre was documented to be $95,000.00.

A recommendation to the Court is hereby requested for a payment to Mrs. McIntyre for reimbursable remediation costs and living expense benefits in the amount of $101,169.00.

### P. Thomas Williams – 301 Intrepid Drive, Slidell, LA 70458

#### 1. Knowledge of Defective Drywall and Reasonable Inquiry

Mr. & Mrs., Thomas Williams have owned this property since 1985. No knowledge or reasonable inquiry analysis is necessary.

#### 2. Reimburseable Costs and Recommendation to Court

All documentation necessary for the Court to calculate the reimbursable costs payable to Mr. Williams have been produced.  These documents and pictures were produced to "help [all parties and the Court] confirm the remediation costs associated with [the Asch affected] property."  *Owner Disclosure Affidavit*, Page 7.

A notarized owner disclosure affidavit was provided that contains a verification that the contents are truthful and correct to the best of Mr. Williams' knowledge.   The contractor provided affirmation via the same document.   Mr. Williams also submitted an environmental certification, remediation agreement, contractor invoices, proof of payment owed, and photographs of the property before and after remediation to confirm both the presence of Knauf brand Chinese-made drywall in the home as well as the details of the remediation that was performed on the home.

Mr. Williams purchased and has owned this property for residential purposes; thus, a lump-sum living expense payment is an available settlement benefit per the terms of the contract.  The home was measured to be 2,075 square feet of living space per the St. Tammany Parish Property Tax records; therefore, a lump sum amount is payable to Mr. Williams for $17,637.50.   The full cost of remediation incurred by Mr. Williams was documented to be $43,267.00.

A recommendation to the Court is hereby requested for a payment to Mr. & Mrs. Williams for reimbursable remediation costs and living expense benefits in the amount of $60,904.50.

Respectfully submitted by:

/s/ *James V. Doyle, Jr.*

James V. Doyle, Jr.
DOYLE LAW FIRM, PC
2100 Southbridge Pkwy., Suite 650
Birmingham, AL 35209
Tele: 205-533-9500
Fax: 844-638-5812
jimmy@doylefirm.com
*Attorney for Plaintiffs*