1
                UNITED STATES DISTRICT COURT

2
                EASTERN DISTRICT OF LOUISIANA

3
****************************************************************

   IN RE:  CHINESE-MANUFACTURED DRYWALL

4
   PRODUCTS LIABILITY LITIGATION

5
                Civil Action No. 09MD2047

   VS.               Section "L"

6
                New Orleans, Louisiana

                December 20, 2018 at 9:11 a.m.

7
   THIS DOCUMENT RELATES TO ALL CASES

8
****************************************************************

9

10
               TRANSCRIPT OF MOTION HEARING

        HEARD BEFORE THE HONORABLE ELDON E. FALLON

             UNITED STATES DISTRICT JUDGE

11

12

   APPEARANCES:

13

   FOR THE PLAINTIFFS' LIAISON COUNSEL:

14

15
                RUSS M. HERMAN

                HERMAN HERMAN KATZ

16
                820 O'KEEFE AVENUE

                NEW ORLEANS, LA 70113

17
                FRED LONGER

18
                LEVIN SEDRAN & BERMAN

                510 WALNUT STREET

                SUITE 500

19
                PHILADELPHIA, PA 19106

20
   FOR THE TAISHAN GYPSUM CO., LTD,

   AND TTP CO., LTD.:

21

22
                MATTHEW D. LAWSON

                CHRISTINA H. EIKHOFF

                ALSTON & BYRD

23
                ONE ATLANTIC CENTER

                1201 WEST PEACHTREE STREET

24
                ATLANTA, GA 30309

25

```
 1   FOR THE KNAUF LIAISON COUNSEL:

 2                              KERRY J. MILLER
                               DANIEL S. DYSART
 3                              BAKER DONELSON BEARMAN
                               201 ST. CHARLES AVENUE
 4                              SUITE 3600
                               NEW ORLEANS, LA 70170
 5
     FOR THE TAISHAN, BNMB ENTITIES
 6   AND CNMB ENTITIES LIAISON COUNSEL:

 7                              HARRY ROSENBERG
                               PHELPS DUNBAR
 8                              365 CANAL STREET
                               SUITE 2000
 9                              NEW ORLEANS, LA 70130

10   FOR THE BNMB AND CNMB ENTITIES:

11                              ANDREW K. DAVIDSON
                               ORRICK HERRINGTON & SUTCLIFFE
12                              THE ORRICK BUILDING
                               405 HOWARD STREET
13                              SAN FRANCISCO, CA 94105

14
     Official Court Reporter:   Nichelle N. Drake, RPR, CRR
15                              500 Poydras Street, B-275
                               New Orleans, Louisiana 70130
16                              (504) 589-7775

17       Proceedings recorded by mechanical stenography,
     transcript produced via computer.
18

19

20

21

22

23

24

25
```

<u>**P R O C E E D I N G S**</u>

(Call to order of the court.)

THE COURT:  Let's go into the motions then.

I have a number of motions, three motions before me really, dealing with confidentiality.  My thinking on these types of cases -- I get the case as a transferee judge.  And there are thousands and thousands of claims that are presented, and I have to deal with those cases as expeditiously as I can but also give the lawyers an opportunity to discover the case.

I find in these cases that -- that certain documents at the early stage, both from the standpoint of documents and depositions and things of that nature, present some issues that -- that the parties are really reticent about resolving -- about disclosing.  So I believe in the First Amendment, but I also feel that my job, the Sixth and Seventh Amendment, causes me to do some prioritizing.  And so I prioritize the Sixth or Seventh Amendment in this case before the First, and I give the parties comfort in saying, let's put things in confidential areas, but disclose them.  If I don't do that, there's a reticence of disclosing, and the whole case is then shut down in essence.  And so there are situations where -- where I don't have to deal necessarily with privilege because the documents are confidential.

Now, once the trials are finished, I then have to

1   deal with what to do with the confidentiality of the

2   documents.  The First Amendment begins to become a

3   significant amendment and the Sixth and Seventh Amendment in

4   this case begins to fade in some areas in some regards.  But

5   it's still an issue, and so it's not unusual that I then have

6   motions dealing with the various confidential matters.

7           So in this particular case, we had a number of

8   issues, but the parties, as I know they always do, they try

9   to meet.  And these individuals -- these lawyers have worked

10  very hard in these cases.  And they have met and conferred

11  and they were able to resolve most of the issues but three

12  prevail.  And so I'll deal with those now.

13          There are two depositions or excerpts from

14  depositions and one document that deals with another issue or

15  another case, but it has to do with some of the same parties.

16  I'll take them up at this time.

17          MR. LONGER:  Good morning, Your Honor.

18          THE COURT:  Is it your motion or is it defendants'

19  motion?

20          MR. LONGER:  This is the plaintiffs' motion.

21          THE COURT:  Motion to remove the confidentiality.

22          MR. LONGER:  Exactly, Your Honor.

23          Fred Longer for the record with Levin, Sedran &

24  Berman.

25          And, Your Honor, in July 17, 2014, Your Honor entered

1    its contempt order against Taishan and its affiliates and

2    that set in motion a series of efforts by the Plaintiffs'

3    Steering Committee to enforce Your Honor's contempt order.

4    And in the course of those proceedings, following a lengthy

5    period of time for discovery of third-parties, affiliates,

6    and the parties themselves to find out what activities, what

7    commerce they had been conducting in the United States during

8    the contempt period, we filed a motion to enforce the

9    contempt order and our substituted memorandum was filed on

10   February 10, 2016.  That substituted memorandum along with

11   its reply brief, all together, we had over 200 exhibits that

12   were submitted to the Court, and those are all identified in

13   Exhibit A to our motion.

14         Many of those exhibits -- well, all of the exhibits

15   were filed under seal.  Many of those exhibits that were

16   filed under seal, it is our position should never have been

17   subject to any confidentiality.  One that comes to mind is

18   the plaintiffs' own expert's deposition, Curtis Milhaupt.  He

19   was an expert on state-owned enterprises and the effect of

20   Chinese law in these -- in these proceedings.  And it was our

21   position it shouldn't be confidential.

22         The -- the PSC earlier this year had gone through a

23   number of efforts to negotiate with counsel opposite to

24   arrive at a number of agreements on certain documents that

25   should be lifted from other documents, not just the contempt

1    motion, the motion to enforce contempt.  And the Court has

2    largely approved those efforts, and there are many documents

3    now that are no longer under seal.  Your Honor has issued

4    orders to that effect.  And that's for good reason as Your

5    Honor pointed out.

6         The First Amendment is a significant issue, and the

7    Sixth Amendment obviously fades.  And it's our position that

8    there's -- the First Amendment right and the public's right

9    of access to these documents is very significant in this

10   matter.

11        So we prepared the exhibit to our motion which

12   identified all -- I think it's 203 exhibits.  Some of them we

13   recognize had already been made public, some we recognize the

14   defendants still contend were confidential, and we asked --

15   and it's not just the defendants by the way, Your Honor.

16   There's third-party affiliated interests like Sunpin

17   (phonetic) and other entities like the New Jersey Institute

18   of Technology.  We've asked for a show cause for people to

19   come forward if they had any real justification for these

20   documents remaining under seal.

21        Our motion was filed in October.  It has Your Honor's

22   issued briefing schedule, and in the course of that interim

23   time for briefing, only Taishan and the CNMB and BNMB

24   Entities have approached us.

25        And as Your Honor pointed out just a moment ago, we

1   have been able to come to agreements with at least the major

2   parties, the alphabet defendants, the CNMB and BNMB and

3   Taishan, and we've narrowed down our disputes to just a few

4   documents.

5         But the -- the ones that are left are Mr. Jia's

6   deposition, which is Exhibit Number 10; Peng Shiliang's,

7   which is Exhibit Number 197.  And we have agreed with

8   Taishan's counsel that Mr. Jia's declaration's, Exhibit

9   Number 198, is not confidential at all and that may be

10  released into the public.

11        And then as to CNMB and BNMB, it is a mediation

12  statement that was prepared for litigations taking place in

13  the west coast in both federal and state court there

14  involving logging industry -- logging disputes.  And that was

15  Exhibit Number 82.

16        THE COURT:  Now, in these matters, I'm not dealing

17  with privilege issues and I'm not dealing with evidentiary

18  issues.  I'm dealing solely with whether or not

19  confidentiality should be retained or removed.  Is that your

20  understanding?

21        MR. LONGER:  I agree with that statement, Your Honor.

22  I think that you may hear with regard to the Jia deposition

23  -- I'm going to show -- I can show you excerpts of that.

24        THE COURT:  I have it.

25        MR. LONGER:  The defendants may take issue that there

1    are certain Hogan Lovells documents that are alluded to

2    within the testimony, and -- and it's our position, my

3    position, that all of our questions could have been asked in

4    the abstract without reference to any Hogan Lovells document.

5    And as a consequence, there is no privilege issue at all.  We

6    are strictly talking about confidentiality.  So I do agree

7    with Your Honor on that point, but I think I might get some

8    pushback from counsel opposite.

9         So with that, we can start with Exhibit C to our

10   reply brief which I provided to Your Honor.  What we did,

11   Your Honor, was to provide to the defendants a proposed

12   redaction of the Jia deposition to account for the -- the

13   issues regarding direct reference to the Jia -- I'm sorry, to

14   a Hogan Lovells document and what we have is a color-coded --

15        MS. EIKHOFF:  Fred, you're not publishing what's at

16   issue.

17        MR. LONGER:  I was going to.  You have a problem with

18   that?

19        MS. EIKHOFF:  Yeah.  That's the whole point.

20        MR. LONGER:  So I won't.

21        Your Honor, you have them before you.

22        So Exhibit Number C, and what it is, it's a

23   color-coded deposition, and there is testimony therein where

24   we take the position that the questions being asked have

25   nothing to do with the document itself.  And that happens all

1    the time in a deposition.  You come forward and you ask

2    questions about -- of the witness knowing that you have a

3    document later on that you intend to controvert their

4    testimony on if they take issue with it.  Or you set them up

5    and you say, "You performed a certain act on this day.  Do

6    you recall that?"  And you use the document.

7         And then after that, the document has really nothing

8    to do with the testimony or the questions that are being

9    asked, and that is exemplified in the testimony that we have

10   highlighted, Your Honor.  And it's in yellow what we contend

11   is not confidential and should not be -- and is not

12   privileged either.  It has nothing to do with the document at

13   all.  The document just sets the stage.  You know, the table

14   was set and then the questions got asked.  And that is our

15   whole position with the Jia deposition.  The defendants took

16   issue with it.  We disagree with them.

17        As to Mr. Peng's deposition, there's a discussion of

18   a -- and that's Exhibit D to our reply brief.  It is

19   Exhibit 197 of the contempt motion.  And that testimony

20   related to a settlement between Guardian Products --

21   Building -- Guardian Building Products.  And there was a

22   challenge by Guardian, and Taishan ended up paying a

23   substantial amount of money to resolve that litigation --

24        THE COURT:  Now, that's the mediation paper or is

25   that the Peng deposition?

1          MR. LONGER:  That's the Peng deposition.  And that's

2     Exhibit Number 197, Your Honor, and Exhibit Number D to our

3     motion -- to our reply brief.  I'm sorry.

4          THE COURT:  Pages 99 through 111 as I have it.

5          MR. LONGER:  That's correct, sir.

6          So, again, counsel opposite takes issue with the

7     designations.  They say that the settlement that Guardian had

8     with Taishan is irrelevant.  Our whole point is that it gives

9     notice to the other side that there was a problem with their

10    product.  It doesn't matter to us that they are contesting

11    the strength of the product as opposed to the inherent defect

12    in the product.  It is a defect in the product that was at

13    issue that they resolved, and they had notice that they were

14    having problems with their products here in the United

15    States, and, frankly, that's relevant.

16         THE COURT:  Let me ask you this though:  With the

17    confidentiality situation, we have -- confidential by virtue

18    of the PTO 16, but -- but it provides in that PTO 16 that

19    anybody can use them that is associated with the case or has

20    anything to do necessarily with the case.  So even though it

21    is confidential, it can be used by anybody associated with

22    the case in other cases.  What's the advantage of removing

23    the confidentiality?

24         MR. LONGER:  Well, it makes it much easier to use it

25    in the remand courts, Your Honor, where we don't have to --

1           THE COURT:  But can't you do that anyway?

2           MR. LONGER:  Your Honor, it's my take that the

3    confidentiality order limits us in this jurisdiction that we

4    would -- we would be restricted outside of the court and we

5    could -- I'm sure we could negotiate with counsel opposite

6    and come to terms as to uses outside the court, but it

7    strikes me that these documents are limited in use and that

8    we would like to expand the use because we now have other

9    venues in which --

10          THE COURT:  Yeah, I never -- I never intended it to

11   be only restricted.  I never intended it.  I was just trying

12   to give comfort to you folks so that you could exchange

13   documents without having them broadcast on the front page of

14   the New York Times or whatever, not that I want to interfere

15   with them.  But, I mean, I got to -- my focus is to get the

16   case moving.  And so I try to give you comfort in that way.

17   But I didn't intend it only to be for this jurisdiction.

18          I mean, it seems to me, if I send the case over to

19   Florida, they can use it.  If I send the case to Virginia,

20   they can use it.  I don't have any problem --

21          MR. LONGER:  Well, as long as the other courts adopt

22   all of your court's orders, then I would think that

23   presumably that's going to be the case and we know that

24   recently --

25          THE COURT:  Let's assume they can do that.  What's

1    the -- is there any advantage other than that?  What's the

2    advantage of removing confidentiality if everybody can use it

3    in connection with any dispute involving these cases?

4            MR. LONGER:  It frees up everyone to avoid filing

5    papers under seal still, Your Honor.  There is a process

6    still -- the matters still have to be filed under seal

7    irrespective.

8            The last, Your Honor, is the mediation statement

9    which is Exhibit Number E.  And that document is proof

10   positive that the defendants were doing business in the

11   United States and that they were -- it was a Taishan

12   affiliate doing business in the United States during the

13   contempt period, and it is obvious that they are using the

14   United States judicial system and state court system, the

15   judiciary of the United States is being employed for them to

16   conduct business in the United States which was the very

17   purpose of Your Honor's contempt order, which is that they

18   should not do that during the contempt period and that

19   document is proof of that.  So we don't think that it

20   deserves any confidentiality to the -- to the limited extent

21   that it's a mediation statement.

22           And the notion that we've heard in briefing is that

23   it would have a chilling effect.  Well, the chill is gone.

24   The thaw has arrived.  There is global warming.  Time has

25   passed.  The whole purpose of that mediation was four years

1    ago.  There's no need for anything to remain confidential at

2    this point, and that's where we are on all of the three

3    documents at issue.

4         And then as to everything else, Your Honor, there is

5    no one that has come forward, so we would ask Your Honor to

6    issue a rule to show cause that if no one is going to come

7    forward and contest these documents, let's have them out.

8         THE COURT:  Okay.  I got it.

9         MR. LONGER:  Thank you, sir.

10        THE COURT:  Any response?

11        And so let me ask you too:  Am I dealing with only

12   confidentiality or -- and I'm not dealing with privilege and

13   I'm not dealing with evidence as you see it?

14        MR. LAWSON:  That's right.  Your Honor, with these

15   documents -- and specifically I'll speak to the two

16   deposition transcripts.

17        THE COURT:  Yeah, two deposition and the mediation.

18        MR. LAWSON:  That's right.  And Mr. Davidson will

19   speak.

20        Matt Lawson, Alston & Berg on behalf of Taishan.

21        Your Honor, with the two deposition transcripts --

22   and Mr. Davidson will speak regarding the mediation statement

23   -- there are not evidentiary issues at stake and also any

24   privilege issues have already been resolved as of the Hogan

25   Lovells documents as I'll discuss in a moment.  So the only

1    thing that is at issue here are the confidentiality

2    designations that Taishan made or that other companies have

3    made for their documents, not evidentiary or privilege

4    issues.

5         THE COURT:  How are you with the situation with -- do

6    you feel that the documents can be used in other

7    jurisdictions if it's associated with this issue?

8         MR. LAWSON:  Your Honor, if you look to your Pretrial

9    Order 16, it specifically has a provision where the documents

10   can be used whether they're confidential or highly

11   confidential in related litigation, related to Chinese

12   drywall.  Furthermore, when it comes to the remand to

13   Florida, Judge Cooke has already adopted all of the pretrial

14   orders made by Your Honor in this MDL, so that is not at

15   issue.  And as we've maintained with the plaintiffs

16   throughout this litigation, there's nothing in PTO 16 that

17   allows them to share these documents within the litigation.

18   The only question here today is whether these documents and

19   specifically the confidential excerpts from them can be used

20   outside of the litigation, specifically whether plaintiffs

21   are going to be allowed to be able to mass publish them on

22   the online docket where anyone could view them for any

23   purpose.

24        THE COURT:  What's your concern about that?  Let's

25   say the world knows this.  What's your concern?

1          MR. LAWSON:  Well, the concern here is that when

2     parties to litigation allow discovery and produce documents

3     within litigation and do so under a confidentiality order,

4     it's meant to speed the process along and to be able to

5     enable quicker litigation and for open discovery within

6     litigation to resolve issues.  And if we later on remove

7     those protections that were -- that were made, then we're

8     ultimately having the chilling effect on open discovery

9     within litigation.  And information -- likely information

10    contained within these deposition transcripts which in -- for

11    the case of the Jia deposition that you have already set as

12    highly confidential, it can lead to embarrassment or

13    divulging things that were not meant to be made for public

14    consumption but can be used in the litigation for any purpose

15    as needed in the litigation by the parties.

16         THE COURT:  So you're concerned about the system

17    itself.  I mean, it's a -- you feel that this will hurt

18    future MDLs or future matters.  Is that the thrust of

19    your argument?

20         MR. LAWSON:  I think there's both a concern for all

21    litigation that parties always have an understanding that

22    confidentiality protections will be consistent throughout the

23    course of litigation, but also specifically for these

24    documents.  When we're looking at both of them in the first

25    case, the Hogan Lovells e-mails that we're discussing that

1    were part of the Jia deposition that he was questioned about,

2    those related to attorney-client communications.  And while

3    Your Honor de-privileged those documents, they were produced

4    by Hogan Lovells with a highly confidential designation that

5    Your Honor maintained in an order in May 2015.  Because

6    attorney-client communications are made under an assumption

7    of confidentiality, that's the only way to be able to have

8    open discourse between attorneys and clients.  So it's

9    extremely important that we maintain confidentiality over

10   those communications even if they're de-privileged.  And that

11   was the thrust of Your Honor's order back in May 2015.

12           And the same goes for the settlement agreement that

13   was discussed between Taishan and Guardian Buildings

14   Products.  That -- when parties enter into private settlement

15   agreements, they do so for the purpose of maintaining

16   confidentiality over those settlement agreements, and while

17   Mr. Longer was discussing the relevance of that agreement,

18   whether it put a party on notice or not, that's an

19   evidentiary issue.  That's not an issue related to the

20   confidentiality of the document.  Mr. Longer and the PSC are

21   welcome to use that excerpt of testimony for any purpose that

22   they think is relevant within this litigation.  But

23   ultimately when we look at all of these excerpts that are at

24   issue, none of them were actually used in the contemporary

25   theme that the PSC put forward.  In all cases, they cited

1   within their briefing to other portions that are not

2   confidential.  So anything that's within the briefing that

3   Mr. Longer was talking about is already available to not only

4   the parties within this litigation, but it's not under seal

5   to the public either.

6         These designations are to materials that are

7   completely unrelated to the contempt briefing itself and

8   that's why maintaining the confidentiality designations makes

9   sense in this regard.

10        THE COURT:  How do you see the problem with the First

11  Amendment there?  The public says, "We have a right to know

12  and we want to know what the whole story is."  And why -- why

13  do I say, "No, you don't -- you can't know the whole story?"

14        MR. LAWSON:  That's why we've narrowly tailored these

15  designations only to the specific issues of the private

16  settlement agreement and to the attorney-client

17  communications in the Hogan Lovells documents.  Outside of

18  that, there are no other designations that are at issue today

19  before you and we are not attempting to make the entire

20  deposition transcript unavailable to the public.  The vast

21  majority of these transcripts would be available for view to

22  the public and the entirety of them would be available to the

23  claimants in this litigation as well as the attorneys and

24  other parties in this litigation.  So I think the First

25  Amendment is served here while also maintaining the policy

1    purposes of allowing confidentiality in litigation to permit

2    free and open discovery within litigation and to make sure

3    that the -- that litigation can move expediently because the

4    parties are divulging all the information that is needed to

5    be able to resolve the dispute.

6         Your Honor, looking to those documents, there's a few

7    other matters that I wanted to be able to address with you

8    today.  First looking to Chairman Jia's deposition

9    transcript, this is the deposition that was taken in 2015.

10   If you look to the sections that are at issue, Mr. Longer was

11   saying that the limited redactions that the PSC has made are

12   sufficient to be able to protect the highly confidential

13   nature of these documents.  But when he said that the

14   document almost doesn't matter once you've introduced it,

15   what he's really saying is that he can ask questions or

16   counsel can ask questions and those can be divulged publicly

17   if they just don't directly quote the document.

18        But if you look to the questions that surround the

19   PSC's redactions they are proposing, they paraphrase sections

20   of the document.  They're asking questions directly about the

21   facts -- underlying facts within those e-mails, and it would

22   be very easy for someone to be able to read that with the

23   PSC's redactions to be able to understand exactly what is

24   going on inside of those highly confidential e-mails.  It

25   would attempt to circumvent Your Honor's order that these are

1  highly confidential and shouldn't be used outside of the

2  litigation because anyone could read the unredacted portions

3  surrounding the limited redactions and understand the content

4  of those e-mails.

5       THE COURT:  But if they did, would Taishan be

6  embarrassed or hurt in any way?  I mean, what would be the

7  issue specifically to this litigation?

8       I understand your argument that it's just a -- has a

9  chilling effect or may affect future litigations or it's not

10  good for the system, but how about this particular -- what

11  would --

12       MR. LAWSON:  Well, we have to remember here that

13  these designations were made by a law firm that is no longer

14  here to be able to represent itself, but it did so because

15  these are communications with their clients.  And we all

16  understand as lawyers how sensitive those communications can

17  be and how important it is to be able to have an open

18  discourse amongst attorney and client to be able to provide

19  effective representation.  And that's what is at issue here.

20       If we are removing these designations or allowing

21  such limited redactions that someone could tell exactly what

22  the communications between what an attorney and client said,

23  then ultimately what we're doing is opening up those

24  communications to public exposure for something that had an

25  expectation of confidentiality when it was made.  And that

1  can harm future attorney-client communications, make it more

2  difficult to be able to have open discourse between attorney

3  and client, and there's real harm to that.  And I think that

4  is what is at issue here.

5       And I think that's what is contemplated under Rule 26

6  when they talk about embarrassment or other issues that can

7  result from public disclosure of documents.  We don't want to

8  have a chilling effect on both the discovery of documents and

9  also on attorney-client communications by divulging highly

10  confidential attorney-client communications.

11       THE COURT:  You sound like you're advocating for the

12  ABA, American Bar Association --

13       MR. LAWSON:  Only on behalf of Taishan today but --

14       THE COURT:  I got it.

15       MR. LAWSON:  For the Peng deposition, we discussed

16  this a little bit before, but ultimately this is about a

17  private settlement agreement.  There is a public interest

18  exception when it comes to public settlements that are

19  approved by judges within court cases, but as we noted in our

20  briefing, that does not apply to private settlement

21  agreements.  And that's ultimately what this is here.

22       Mr. Longer talked a little bit about the relevance of

23  this document, and as I said before, that is not at issue

24  here.  Whether or not it put anyone on notice does not

25  matter.  What is at issue with this deposition excerpt is

1    whether this settlement agreement should be maintained for

2    its confidentiality, and, again, this is completely unrelated

3    to anything on the contemporary theme.  It's not at issue in

4    the contemporary theme.  That was not the reason for the PSC

5    putting this deposition transcript into the record as an

6    exhibit, and, ultimately, we believe that the confidentiality

7    designations made by Taishan here for both of these

8    deposition transcripts are proper and should be maintained by

9    Your Honor.

10        THE COURT:  Okay.  And they take the position that

11   the reason is that they want to show that Taishan or the --

12   or their -- whatever affiliates or whatever do business or

13   did business in the United States, is that embarrassing to

14   anybody as you see it?

15        MR. LAWSON:  No.  And that deposition transcript as a

16   whole discusses that issue in its entirety.  This is a

17   deposition back from 2012 where the issue of jurisdiction was

18   at the forefront.  And at that time, the deposition was about

19   whether Taishan and TTP had done business in the United

20   States.  Those facts are in the public record.

21        What is at issue here is just this private settlement

22   agreement which is a wholly separate issue, and it was about

23   a dispute that was unrelated to any of the alleged defects

24   that are in dispute in this litigation.  So we believe that

25   this is a separate matter where confidentiality designation

1   is appropriate and the information that is related to this --

2   these cases is available in the public record and that

3   confidentiality is appropriate.

4           Thank you, Your Honor.

5           THE COURT:  Before you leave, you're going to talk

6   about the mediation papers?  Or somebody --

7           MR. LAWSON:  That's right.

8           THE COURT:  Thank you.  I appreciate your comments.

9           MR. DAVIDSON:  Good morning, Your Honor, Andrew

10  Davidson from Orrick on behalf of CNMB and BNMB Entities.

11          This is it.  This is hopefully the last document that

12  we're going to talk about for confidentiality challenges or

13  at the very least the last one in 2018.

14          So what remains as you mentioned was Exhibit 82.

15  This is a confidential mediation submission produced in

16  Oregon litigation about timber.

17          Substantial public policy interests advocate for

18  maintaining confidential protections on this document.  These

19  significant interests outweigh whatever unique value there is

20  to the PSC in contempt related proceedings.  The passage of

21  time we don't think makes the information that's in this

22  mediation submission any less sensitive and we can talk about

23  that a little bit further.

24          And, finally, this mediation submission was produced

25  under PTO 16, and as Mr. Lawson said and as we agree, we

1    think it can be used by the PSC and by primary counsel in any

2    of the remand cases.

3          I would like to thank Mr. Longer for the

4    collaborative process that he engaged in.  As he mentioned,

5    we were able to use redactions.  We were able to waive

6    challenges.  We were able to waive designations where

7    appropriate.  We got down from well over 100 documents to

8    this one last one.

9          THE COURT:  Both of you all have done a great job and

10   I appreciate it.

11         MR. DAVIDSON:  And we think that resolution of this

12   last one is fairly straightforward.  I won't burden the Court

13   with the information and the arguments about the public

14   policy about the Louisiana and Oregon statutes that apply to

15   protecting confidential mediation submissions, about case law

16   or about the local rules, but they're all in favor of

17   protecting confidentiality here.

18         What I will talk about are the two items that

19   Mr. Longer mentioned.  So he said first and foremost that

20   this document is proof of business in the United States and

21   proof of use by the judiciary.  But if you look at the PSC's

22   substituted memorandum, what you will see is that Exhibit 82

23   is not a primary source of information for either of these.

24   It is cited as a "see also" reference in a footnote and the

25   primary citation in that footnote is, in fact, the Oregon

1    docket for the litigation and that's publicly accessible.

2          And further the PSC has also published substantial

3    details about the subsidiary's US operations on the very next

4    page of the substituted memorandum.  So we think that there

5    is very little, if any, unique information in this mediation

6    submission.

7          Mr. Longer's other point was that this mediation

8    submission is stale, that it was -- it was provided to the

9    mediator by counsel four years ago and therefore there's

10   nothing left of interest, no privacy interest remaining.  But

11   this mediation submission sets forth CNMB Import & Export and

12   CNMB Forest Products Canada's business model for operations

13   out of the Port of Astoria, a place where they still do

14   business.  And it also details their profits for these

15   operations.  This information would no doubt be useful to a

16   competitor.

17         The mediation submission also indicates that when

18   these companies find themselves in a business dispute they're

19   willing to settle these transactions rather than litigate and

20   on very specific terms.  This information shouldn't be placed

21   in the public.

22         One of Mr. Longer's arguments in his briefing was

23   that having been produced, the mediation privilege has been

24   waived.  I would just like to address that briefly.

25         This document was produced in response to the PSC's

1   very broad discovery requests in 2015.  Our productions

2   comprised more than a million pages, and they were produced

3   in response to expedited requests before corporate

4   representative depositions.  To the extent it was a waiver,

5   we think that that waiver was inadvertent and the parties

6   entered into a Rule 502 order to deal with just the

7   situation.

8        So, finally, for these reasons, the Court should

9   protect the confidentiality of this document.  And it's not

10  just to protect the terms of that actual settlement, but as

11  this Court knows, the parties here will be entering mediation

12  at least in the Florida *Amorin* cases on remand, and the

13  parties here today should know that these confidential

14  communications that they will make to mediators will be

15  protected.  Thank you.

16       THE COURT:  Okay.  Thank you very much.

17       Let me hear from -- any response?

18       He takes the position that you can use them

19  throughout the country and anything associated with the

20  litigation.  What's the advantage of keeping them

21  confidential?

22       MR. LONGER:  Well, there's no advantage to keeping

23  them confidential because we'd still have to -- I can't

24  present them in court.  I've been asked to not even show them

25  on the Elmo.  I have to file things under seal.  There's

1  still this cloak of secrecy over matters that are incredibly

2  old.

3        In 1914, Your Honor, Louis Brandeis wrote:  "Sunlight

4  is said to be the best of disinfectants; electric light the

5  most efficient policeman."  We are looking for you, Your

6  Honor, to be the cop on the block and illuminate the fact

7  that what we had to do was to prove their contempt.  Taishan

8  defied this Court's order and was held in criminal and civil

9  contempt, and we had to investigate that contempt and make

10  every effort to enforce your court order so we could show to

11  Your Honor in this motion to enforce the wrongs that were

12  done.  Our clients may be able to see it, but there is public

13  interest in this community and, in fact, across the Gulf

14  region and other states where people are affected by the

15  actions of the defendants.

16        They have imported into this country a significant

17  amount of defective drywall, and they have violated this

18  court's orders.  And we would like to make that information

19  public.  And that's a First Amendment right of the entire

20  public.  It's not just the litigants.  It's the public.

21        And we believe that it is vitally important that

22  matters that are under seal that are unnecessarily under

23  seal -- I understand necessity and we've been able to agree

24  on certain points where there is necessity and appropriate

25  use of PTO 16's designations.  But where we seek

1    inappropriate uses over designations, we're going to call

2    that out and we have here, Your Honor.  And it's for that

3    reason that we think that Your Honor should lift the seal on

4    these documents.  And we also believe that the show cause

5    order should be implemented so we can lift the seal on the

6    other documents that are still out there.

7            THE COURT:  I understand both sides.  Let me take it

8    under advisement, and I'll be ruling very quickly on this

9    case.  Thank you.

10

11                          * * * *

12       (WHEREUPON, the proceedings were adjourned at 9:48 p.m.)

13                          * * * *

14                    REPORTER'S CERTIFICATE

15           I, Nichelle N. Drake, RPR, CRR, Official Court
     Reporter, United States District Court, Eastern District of
16   Louisiana, do hereby certify that the foregoing is a true and
     correct transcript, to the best of my ability and
17   understanding, from the record of the proceedings in the
     above-entitled and numbered matter.

18

19               /s/ Nichelle N. Drake
                 Official Court Reporter
20

21

22

23

24

25