# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * * * * * * * | |
| | | CIVIL ACTION |
| | | MDL NO. 2047 |
| | | SECTION L (5) |
| THIS DOCUMENT RELATES TO: ALL CASES | * * * | |

## ORDER & REASONS

Before the Court is a motion to remove confidentiality designations filed by the Plaintiffs' Steering Committee (the "PSC"). R. Doc. 21830. Defendants Taishan Gypsum Co. Ltd. ("Taishan"), China National Building Materials Company, Ltd. ("CNBM"), Beijing New Building Materials Public Limited Company ("BNBM"), and Beijing New Building Material Group ("BNBMG") (collectively the "BNBM Entities") oppose the motion, R. Docs. 21949, 21950, to which the PSC has filed a reply, R. Doc. 21965. The Court heard oral argument on the motion on December 20, 2018. R. Doc. 21996. Having considered the record, the parties' arguments, and the applicable law, the Court is ready to rule.

## I. BACKGROUND

From 2004 through 2006, a housing boom in parts of the United States and rebuilding efforts necessitated by Hurricanes Rita and Katrina in the Gulf South led to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used to construct and refurbish homes in coastal areas of the country, notably the Gulf and East Coasts. Sometime after the Chinese drywall was installed, homeowners began to complain of foul-smelling odors, the corrosion and blackening of metal wiring, surfaces,

and objects, and the breaking down of appliances and electrical devices in their homes. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829–30 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014). Many of these homeowners also began to complain of various physical afflictions believed to have been caused by the Chinese drywall.

These homeowners then began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. Because of the commonality of facts in the various cases, this litigation was designated as a multidistrict litigation. Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation on June 15, 2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 09-2047 before this Court.

The Chinese drywall at issue was largely manufactured by two groups of defendants: (1) the Knauf Entities and (2) the Taishan Entities. The litigation has focused on these two entities and their downstream associates and has proceeded on strikingly different tracks for the claims against each group.[1] Relevant to this Order are the Chinese Defendants. These Defendants include the principal Chinese-based Defendant, Taishan, namely, Taishan Gypsum Co. Ltd. ("TG") and its wholly-owned subsidiary, Taian Taishan Plasterboard Co., Ltd. ("TTP") (collectively "Taishan" or "Taishan Entities"). Other Chinese-based Defendants include China New Building

---

[1] The Knauf Entities are German-based, international manufacturers of building products, including drywall, whose Chinese subsidiary, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), advertised and sold its Chinese drywall in the United States. On December 20, 2011, the Knauf Entities and the PSC entered into a global, class Settlement Agreement ("Knauf Settlement Agreement"), which was designed to resolve all Knauf-related, Chinese drywall claims. In addition to the Knauf Settlement Agreement and after a jury trial in a bellwether case, numerous defendants in the chain-of-commerce with the Knauf Entities have entered into class settlement agreements, the effect of which settles almost all the Knauf Entities' chain-of-commerce litigation. The total amount of the Knauf Settlement is approximately $1.1 billion. Although the Court occasionally had to deal with settlement administration and enforcement issues, with the assistance of Special Master Dan Balhoff, the Knauf portion of this litigation is now resolved.

2

Materials Group ("CNBM Group"), China New Building Materials Co. ("CNBM"), CNBMIT Co. Ltd. ("CNBMIT"), CNBM USA Corp. ("CNBM USA"), and United Suntech Craft, Inc. ("United Suntech") (collectively the "CNBM Entities"), as well as the Beijing New Building Materials Public Limited Company ("BNBM") and Beijing New Building Material Group ("BNBMG") (collectively the "BNBM Entities").

The Court's initial inquiry regarding Taishan involved four cases in this MDL: (1) *Germano v. Taishan Gypsum Co.* (Case No. 09-6687); (2) *The Mitchell Co. v. Knauf Gips KG* (Case No. 09-4115); (3) *Gross v. Knauf Gips KG* (Case No. 09-6690); and (4) *Wiltz v. Beijing New Building Materials Public Ltd.* (Case No. 10-361).

The first issues involving Taishan arose when Taishan failed to timely answer or otherwise enter an appearance in *Mitchell* and *Germano*, despite the fact that it had been properly served in each case. Thus, after an extended period of time, the Court entered preliminary defaults against Taishan in both cases. Thereafter, the Court moved forward with an evidentiary hearing in furtherance of the preliminary default in *Germano* on Plaintiffs' claimed damages. At the hearing, the PSC presented evidence specific to seven individual properties, which served as bellwether cases. Thereafter, on February 19 and 20, 2010, the Court issued detailed Findings of Fact and Conclusions of Law. On May 11, 2010, the Court issued a Default Judgment against Taishan in *Germano* and in favor of Plaintiffs.

On June 10, 2010, the last day to timely appeal the Default Judgment against them, Taishan filed a Notice of Appeal in *Germano* and entered its appearance in *Germano* and *Mitchell*. After Taishan entered its appearance in the MDL, it quickly sought to have the Default Judgment in *Germano* and the Preliminary Default in *Mitchell* vacated for lack of personal jurisdiction.

Because this was the first time Defendants raised jurisdictional issues, the Fifth Circuit remanded the case to this Court to determine whether this Court indeed has jurisdiction over Taishan.

In the fall of 2010, the Court directed the parties to commence the personal jurisdiction discovery necessary to resolve Taishan's motions to vacate. Sometime after the initial discovery, the parties agreed to expand the discovery beyond the *Germano* and *Mitchell* cases to other cases in which Taishan had been served, including *Gross* and *Wiltz*.

Formal personal jurisdiction discovery of Taishan began in October 2010. Discovery included the production of both written and electronic documents as well as depositions of Taishan's corporate representatives, with each type of discovery proceeding in a parallel fashion. This discovery was highly contentious, requiring close supervision by the Court. The Court presided over regularly-scheduled status conferences, conducted hearings, and issued rulings to resolve numerous discovery-related disputes.

In June 2011, the PSC filed identical complaints in Federal district courts in Florida, Virginia, and Louisiana (the "*Amorin* complaints"). The *Amorin* complaints include all Plaintiffs named in the *Wiltz*, *Gross*, *Abel*, and *Haya* actions. The Florida and Virginia actions were transferred by the JPML to the MDL; the PSC filed the Louisiana omnibus complaint directly into the MDL. It is undisputed that the allegations and Plaintiffs named in the *Amoin* complaints are identical. According to the PSC, these identical complaints were filed "out of an abundance of caution," because "there existed a colorable question regarding the application of the jurisdictional tests known as the 'stream-of commerce' test and the 'stream-of-commerce-plus' test reflected in the plurality opinions in *McIntyre* and *Asahi*, as well as Justice Brennan's concurring opinion in *Asahi*."

In April 2012, Taishan filed various motions, including motions to dismiss for lack of personal jurisdiction. On June 29, 2012, over three years since the creation of this MDL and after a year-and-a-half of personal jurisdiction discovery on Taishan, the Court presided over a hearing on Taishan's motions. The Court coordinated its hearing with the Honorable Joseph Farina of the Florida state court, who had a similar motion involving Taishan's challenge to personal jurisdiction.

On September 4, 2012, this Court issued a 142-page Order regarding Taishan's motions in *Germano*, *Mitchell*, *Gross*, and *Wiltz*, in which the Court denied the motions to dismiss and held that it maintained personal jurisdiction over Taishan. *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819 (E.D. La. 2012). The Court also ruled that Taishan was operating as the alter ego of TG and TTP. The Court certified an interlocutory appeal, and the Fifth Circuit granted permission to appeal. In January and May of 2014, two different panels of the Fifth Circuit affirmed this Court's ruling and held that this Court maintained personal jurisdiction over Taishan, TG, and TTP. *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 753 F.3d 521 (5th Cir. 2014); *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576 (5th Cir. 2014). The time for writ of certiorari passed, and the issue of personal jurisdiction over Taishan became firmly and finally settled. Nevertheless, Taishan refused to voluntarily participate in this suit.

On June 20, 2014, the Court ordered Taishan to appear in open court on July 17, 2014 to be examined as a judgment debtor. Taishan failed to appear for the July 17, 2014 Judgment Debtor Examination, and the Court held Taishan in contempt, ordering that Taishan pay $15,000.00 in attorneys' fees to Plaintiffs' counsel and $40,000.00 as a penalty for contempt; Taishan and any of its affiliates or subsidiaries be enjoined from conducting any business in the United States until or unless it participates in this judicial process; and if Taishan violates the injunction, it must pay

a further penalty of twenty-five percent of the profits earned by the Company or its affiliate who violate the Order for the year of the violation.

On July 23, 2014, the PSC filed their Omnibus Motion for Class Certification pursuant to Rule 23(b)(3). Taishan did not appear and, on September 26, 2014, this Court certified a class of all owners of real properties in the United States, who are named Plaintiffs on the complaints in *Amorin*, *Germano*, *Gross*, and/or *Wiltz* (*i.e.*, not an absent class member), asserting claims for remediated damages arising from, or otherwise related to Chinese Drywall manufactured, sold, distributed, supplied, marketed, inspected, imported or delivered by the Taishan Defendants. R. Doc. 18028.

Taishan finally entered an appearance with the Court in February 2015, and, to satisfy the contempt, Taishan paid both the sum of $15,000.00 in attorneys' fees to Plaintiffs' counsel and the contempt penalty of $40,000.00 in March 2015. On March 17, 2015, the Court ordered Taishan and the BNBM and CNBM Entities to participate in expedited discovery related to "the relationship between Taishan and BNBM/CNBM, including whether affiliate and/or alter ego status exists."

On March 10, 2016, this Court granted CNBM Group's motion to dismiss, finding it was an "agent or instrumentality of a foreign state" within the meaning of the Foreign Sovereign Immunities Act ("FSIA"), and therefore outside the jurisdiction of this Court under 28 U.S.C. § 1603(b). R. Doc. 20150. The Court determined the tortious activity exception did not apply because the alleged tortious conduct did not occur within the United States under 28 U.S.C. § 1605(a)(5). Further, the Court found the commercial activity exception did not apply, as CNBM Group did not directly manufacture, inspect, sell, or market drywall in the United States. Because the PSC failed to present evidence sufficient to overcome the presumption that CNBM Group was entitled to independent status for purposes of the FSIA, the Court granted the motion and dismissed CNBM Group from the present litigation.

After concluding it lacked personal jurisdiction over CNBM Group, on April 21, 2017, the Court issued a 100-page opinion related to jurisdictional challenges being raised with respect to CNBM, BNBM Group, and BNBM. The Court found Taishan was an agent of BNBM under Florida and Virginia law, such that Taishan's contacts in Florida and Virginia are imputed to BNBM. This Court further found that CNBM, BNBM Group, and BNBM were part of a single business enterprise with Taishan under Louisiana law, such that Taishan's contacts in Louisiana may be imputed to them, and that the Court has jurisdiction over CNBM, BNBM Group, and BNBM in relation to Plaintiffs' claims based on Louisiana law. Also on April 21, 2017, the Court issued its Findings of Fact and Conclusions of Law related to the June 9, 2015 damages hearing and adopted the PSC's damage calculations methodology related to remediation of properties.

On May 22, 2017, Defendants filed a motion pursuant to 28 U.S.C. § 1292(b) to certify an interlocutory appeal from this Court's April 21, 2017 jurisdiction order. Because the Court found the April 21, 2017 Order & Reasons involved a controlling question of law as to which there was substantial ground for difference of opinion, and because the Court further found that an interlocutory appeal might materially advance the ultimate termination of this MDL, on August 4, 2017, the Court certified an interlocutory appeal to the Fifth Circuit pursuant to 28 U.S.C. § 1292(b).

On August 1, 2017, Defendants filed a motion to dismiss for lack of personal jurisdiction following the recent U.S. Supreme Court case of *Bristol-Myers Squibb v. Superior Court of California* ("*Bristol-Myers*"), 137 S. Ct. 1773 (2017). Based on *Bristol-Myers*, Defendants contested this Court's findings of personal jurisdiction, class certification, and agency relationship. On August 14, 2017, Defendants filed a petition for permission to appeal pursuant to 28 U.S.C. § 1292(b) in the Fifth Circuit, in which they argued *Bristol-Myers* impacted questions raised on

7

appeal. On August 24, 2017, this Court vacated its 28 U.S.C. § 1292(b) certification order to avoid piecemeal litigations, noting its duty to address the effect of *Bristol–Myers* on the jurisdictional issue before certifying the matter to the Fifth Circuit. Subsequently, on November 30, 2017, the Court denied Defendants' motion to dismiss, holding *Bristol-Myers* did not change this Court's jurisdictional findings and class certification.

On January 2, 2018, the Court denied Defendants CNBM, BNBM Group, and BNBM's motion to vacate the default judgments against them. On March 5, 2018, the Court reinstated its order certifying the interlocutory appeal of its April 21, 2017 order. This issue remains with the Fifth Circuit.

## II. PENDING MOTION

On February 9, 2015, the PSC filed its original memorandum in support of its motion to enforce the Court's July 17, 2014 Contempt Order. R. Doc. 18302-1. On February 10, 2016, the PSC filed a substituted memorandum of law in support of its motion to enforce. R. Doc. 20032, 20636. The PSC filed both motions under seal, as Defendants and various third parties had previously designated several exhibits attached thereto as confidential pursuant to Pre-Trial Order 16 ("PTO 16"). R. Doc. 288. In the instant motion, the PSC seeks to remove these confidentiality designations. According to the PSC, these documents fall into five general categories: (1) corporate matters; (2) documents containing a confidentiality provision; (3) documents regarding internal litigation discussions; (4) documents produced by one company, but created by another; and (5) Chinese regulatory compliance.

### a. The PSC's Motion in Support

In its motion, the PSC argues the exhibits listed in Exhibit "A," attached to their motion in support, should be designated as public, as their confidentiality designations are no longer necessary, if they ever were. R. Doc. 21830-1 at 2 (describing the initial confidentiality

8

designations as "suspect"). The PSC notes many of the exhibits that had been marked as confidential have since been included in other filings without confidential designations; thus, with respect to those documents, the PSC submits the confidentiality designations are moot. With respect to the documents that have not since been made public, the PSC contends there is nothing in them that would tend to cause annoyance, embarrassment, oppression, or an undue burden or expense, if they were produced without the confidentiality designations. *Id.* at 5. Finally, the PSC argues the public has a First Amendment right to access the filings in this case, especially since "this litigation represents a matter of grave public importance impacting thousands of homeowners throughout the Gulf Coast." *Id.* at 6.

Notably, since filing this motion, the PSC, CNBM, the BNBM Entities, and Taishan have worked diligently to reach an agreement as to the confidentiality designation of all but three documents relating to those entities. The documents not designated as confidential by Taishan, CNBM or BNBM, but rather by a third party, remain in dispute.

With respect to those third-party documents, the PSC requests the Court issue a rule to show cause to explain why the confidentiality designations should remain. The PSC submits that, in the event those entities do not appear to substantiate their confidentiality designations, the Court should lift the confidentiality designations as to those documents. The Court agrees with the PSC and will issue a rule to show cause by separate order.

    a. **Taishan's Opposition**

Taishan argues each of the documents it designated as confidential must remain so, as the designations were made in good faith and in compliance with PTO 16. R. Doc. 21949 at 1. Taishan points out that the PSC seeks to remove the confidentiality designation of only three Taishan-related documents: (1) the September 2015 deposition of Jia Tongchun (Exhibit 10); (2) the

January 2012 deposition of Peng Shiliang (Exhibit 197); and (3) the August 31, 2015 Declaration of Jia Tongchun (Exhibit 199). Taishan submits the third document, the August 31, 2015 Declaration of Jia Tongchun, is no longer at issue, and therefore addresses only Jia Tongchun's and Peng Shiliang's depositions in its motion in opposition. *Id.* at 2.

With respect to these depositions, Taishan submits it is willing to have portions of the documents made available to the public, but wishes to maintain the confidentiality designation of other portions. *Id.* Taishan argues the disputed portions relate to privileged attorney-client communications and a private settlement that is unrelated to the case at bar.

Regarding the statements made by Taishan's counsel to his client, Taishan admits the communications are no longer protected by attorney-client privilege; they argue, however, that "even though the documents are not privileged, they are still protected by the highly confidential designation." *Id.* at 5. According to Taishan, this Court has already denied the PSC's attempt to remove the confidentiality designation of these documents, citing the Court's May 4, 2015 order. *Id.* at 5. Notably, the May 4, 2015 Order to which Taishan points does not address the deposition testimony at issue in the instant motion; rather, the Court's May 4, 2015 Order concerns documents produced by Taishan's former counsel that he designated as confidential. Thus, it appears Taishan's argument is that the testimony elicited during the deposition relates to or references the documents the Court previously deemed confidential.

With respect to Mr. Peng Shiliang's statements regarding a privately negotiated settlement, Taishan contends those designations concern the terms of a 2008 settlement and release agreement between Taishan and Guardian Building Products Distribution Inc. ("Guardian") related to the performance of a 2006 sales contract. *Id.* at 6. Taishan maintains this confidentiality designation is proper because the dispute with Guardian was unrelated to the drywall defects alleged by

Plaintiffs and there is no public interest in the disclosure of unrelated, private settlement agreements. *Id.*

### b. CNBM and the BNBM Entities' Opposition

CNBM and the BNBM Defendants contend they have reached an agreement with the PSC regarding every document in dispute, with one exception. R. Doc. 21950 at 1–2. They represent the single document at issue is a mediation position statement submitted by a now-dismissed party in an unrelated matter. *Id.* The BNBM Defendants argue the mediation position paper is protected from disclosure under both Louisiana and Oregon law. *Id.* at 3. They further argue that, even though this position paper is four years old, public disclosure of the document "could chill participation in future alternative dispute resolution." *Id.* at 4.

### c. The PSC's Reply

In reply, the PSC contends the Jia Tongchun deposition does not contain any privileged information and is not highly confidential. The PSC points to a redacted version of the Jia Tongchun deposition, which the PSC avers protects all privileged information. R. Doc. 21965. With respect to whether the deposition includes confidential attorney-client communications, the PSC submits that, while some testimony relates directly to a document created by Taishan's former counsel, Hogan Lovells, much of the testimony was elicited without reference to that document. It argues, "once the context was established, the document became superfluous," and therefore, should be made public. *Id.* at 4.

With respect to the disputed testimony of Mr. Peng Shiliang, the PSC contends the settlement reached between Guardian and Taishan is related to the instant case, as "the document directly pertains to Taishan's notice of problems with its drywall products imported to the United States, in

particular, Florida, where 1,700 cases are pending before Judge Cooke." *Id.* at 6. Thus, the PSC contends, "[t]he matter is relevant both as to notice and the truth of the matter asserted therein." *Id.*

Finally, with respect to the settlement paper designated as confidential by the BNBM Entities, the PSC argues there is no risk of a chilling effect taking place by releasing to the public the contents of that position paper, as the settlement negotiations took place in 2014. *Id.*

### III. LAW & ANALYSIS

Pursuant to the instant motion, the Court is not tasked with determining whether the evidence at issue is privileged under the law, relevant or discoverable; rather, the Court is called upon to consider whether the public has a right of access to the disputed documents. Such a determination requires the Court to balance the public's First Amendment right of access with the possible embarrassment, expense or other burden disclosure might place on Defendants. *S.E.C. v. Van Waevenberghe*, 990 F.2d 845, 848 (5th Cir. 1993).

"The First Amendment presumes that there is a right of access to proceedings and documents which have historically been open to the public and where the disclosure of which would serve a significant role in the functioning of the process in question." *Cruz v. City of Hammond*, No. 09-6304, 2015 WL 1525758, at *1 (E.D. La. April 2, 2015). "Public confidence [in our judicial system] cannot long be maintained where important judicial decisions are made behind closed doors and then announced in conclusive terms to the public, with the record supporting the court's decision sealed from public view." *Id.* at *2 (quoting *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 230 (5th Cir. 2008)). However, "restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information," and the public's right to access information on the court's docket is not an unfettered one. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 31 (1984). Thus, a party seeking to keep certain documents confidential

bears the burden of proving "suppression 'is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Cruz*, 2015 WL 1525758, at *1.

### a. The Disputed Taishan Documents
#### i. September 2015 deposition of Jia Tongchun (Exhibit 10)

The disputed lines in the Jia Tongchun deposition largely discuss Taishan's corporate board's decision not to respond to the *In re: Chinese Manufactured Drywall* litigation, the decision to discharge their American attorney, Hogan Lovells, and whether Jia Tongchun directed Taishan not to appear at the judgment debtor examination.

Taishan contends these deposition excerpts directly quote, paraphrase or elicit testimony about the contents of deprivileged email communications by Taishan's prior counsel, Hogan Lovells, "which were designated by Hogan Lovells as Highly Confidential when they were produced and have been confirmed as Highly Confidential by this Court." R. Doc. 21949 at 5. Although the Court did conclude previously that certain communications between Taishan and Mr. Lovells should remain confidential, the contested excerpts from this deposition do not directly implicate those communications. Rather, Mr. Jia Tongchun's testimony confirms Taishan's board of directors made a conscious decision to disregard the litigation against it and to terminate Mr. Lovells as counsel. Although the confidential emails between Taishan and Mr. Lovells reference the same subject matter, the disputed deposition testimony does not directly implicate those emails.

As the party seeking to maintain this document under seal, Taishan bears the burden of showing good cause for the concealment. Because the lines at issue do not reference confidential communications between Taishan and its former counsel and Taishan offers no other reason to keep this testimony concealed from the public, Taishan has not shown suppression of the disputed

lines "is essential to preserv[ing] higher values and is narrowly tailored to serve that interest." *Cruz*, 2015 WL 1525758, at *1. As a result, the Court will grant the PSC's motion with respect to the September 2015 deposition of Jia Tongchun.[2]

### ii. January 2012 deposition of Peng Shiliang (Exhibit 197)

In the disputed portion of this deposition, Mr. Peng Shiliang discusses a 2008 release agreement between it and Guardian that resolved a dispute about the quality of drywall manufactured and sold by Taishan to Guardian. Taishan maintains this confidentiality designation is proper because the dispute with Guardian was unrelated to the drywall defect alleged by Plaintiffs in this MDL. Specifically, during his deposition, Mr. Peng Shiliang explained that the dispute with Guardian concerned the nail puncturing power of the drywall, not whether the drywall had the same defects as alleged in this litigation. R. Doc. 21949 at 6. Taishan further argues there is no public interest in the disclosure of an unrelated, private settlement agreement. *Id.* The PSC contends the settlement is relevant, as "the document directly pertains to Taishan's notice of problems with its drywall products imported to the United States." R. Doc. 21965 at 5–6.

In their papers and during oral argument, Taishan did not argue public disclosure of this testimony would cause them annoyance, embarrassment, oppression, or an undue burden or expense. Rather, Taishan merely argues the public has no interest in the terms of a private settlement agreement. The Court disagrees. The settlement with Guardian was reached in 2008 during the height of the Chinese drywall epidemic in the United States. Further, as the PSC points out, the settlement directly pertains to Taishan's notice of problems with the drywall it sold in the United States. Moreover, the caselaw to which Taishan points in support of maintaining the

---

[2] The Court will grant the PSC's motion to the extent it seeks to make public those disputed lines highlighted in yellow in their redacted version of Mr. Jia Tongchun's deposition. R. Doc. 21965-6.

confidentiality designation of Mr. Peng Shiliang's deposition concerns the disclosure of private settlement agreements. In this case, however, the PSC does not seek to disclose the settlement agreement itself, but rather Mr. Peng Shiliang's deposition during which some of the settlement agreement's terms were discussed. Thus, "balanc[ing] the public's common law right of access against the interests favoring nondisclosure," the Court concludes the public interest in accessing the deposition testimony outweighs the need for secrecy. *Van Waevenberghe*, 990 F.2d at 848. As a result, the Court will grant the PSC's motion with respect to this document.[3]

### b. The Disputed BNBM Document

#### i. CNCM Canada's Confidential Mediation Brief (Exhibit 82)

This document is a July 2, 2014 confidential mediation position paper prepared by CNBM in preparation for a settlement conference with Westerlund Log Handlers, LLC. The BNBM Entities submit this document is protected from disclosure by both Louisiana and Oregon law.

Pursuant to Louisiana Revised Statute 9:4112(A), "All oral and written communications and records made during mediation, whether or not conducted under this Chapter and whether before or after the institution of formal judicial proceedings, are not subject to disclosure, and may not be used as evidence in any judicial or administrative proceeding." *See also* OR. REV. STAT. § 36.220(1)(a) ("Mediation communications are confidential and may not be disclosed to any other person."). Moreover, Local Rule 16.3.1 provides that "[a]ll alternative dispute resolution proceedings are confidential." E.D. La. L.R. 16.3.1; *see also Benson v. Rosenthal*, No. 15-782, 2016 WL 3001129, at *9 (E.D. La. May 25, 2016).

---

[3] The Court will grant the PSC's motion to the extent it seeks to make public those disputed lines noted in the PSC's reply brief. R. Doc. 21965-7 at 99:5–111:15.

The PSC points to Louisiana Revised Statute § 9:4112(D), which provides an exception to the mediation privilege where "other legal requirements for disclosure of communication or materials" are met. The PSC does not, however, explain how any "other legal requirements" for disclosure have been met in this case. The PSC also points to an exception in Oregon law, which provides that "[t]he terms of any mediation agreement are not confidential." OR. REV. STAT. § 36.220 (2)(a). In this case, however, the PSC does not seek to disclose the terms of the settlement itself, which Oregon law would allow, but rather the PSC seeks to disclose the entity's confidential position paper created in anticipation of the settlement negotiation. As a result, the Court will deny the PSC's motion with respect to this document.

The Court reiterates that the issue before it is not whether the terms of this settlement negotiation paper are relevant, nor is the question whether the mediation position paper is discoverable. Indeed, PTO 16—pursuant to which the BNBM Entities designated the document at issue as confidential—allows for "all documents marked 'Highly Confidential-Restricted' [to] be circulated to and used by 'parties to the litigation, outside counsel for parties in this action, certain in-house counsel, deponents, the Court, and other specified persons. . . .'" R. Doc. 288 at ¶ 14. PTO 16 also allows the parties to use these materials, even those materials marked as confidential, in any proceeding related to "those actions transferred to this Court by the Judicial Panel on Multidistrict Litigation pursuant to its Transfer Order of June 15, 2009, any 'tag-along' actions transferred to this Court by the Panel, and all related actions that have been or will be originally filed in, transferred to, or removed to this Court and assigned thereto." *Id.* at ¶ 1. Thus, the parties to this litigation will be permitted to use this document in the proceedings that have since been remanded by this Court.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the PSC's motion be **GRANTED IN PART AND DENIED IN PART**. With respect to the September 2015 deposition of Jia Tongchun and the January 2012 deposition of Peng Shiliang, the motion is **GRANTED**. With respect to CNCM Canada's Confidential Mediation Brief, the motion is **DENIED**.

New Orleans, Louisiana on this 2nd day of January, 2019.

                                                Eldon E. Fallon
                                          U.S. District Court Judge