UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * * * * * * * | |
| | | CIVIL ACTION |
| | | MDL NO. 2047 |
| | | SECTION L (5) |
| THIS DOCUMENT RELATES TO: ALL CASES | * * * | |

### ORDER & REASONS

Before the Court is a Motion to Reconsider the Court's October 15, 2018 Order adopting Special Master Dan Balhoff's Written Reasons Concerning Requests for Discovery. R. Doc. 21860. The Fee Committee has filed a response, recommending the Court deny the motion. R. Doc. 21896. Having considered the record, the parties' arguments, and the applicable law, the Court is ready to rule.

### I. BACKGROUND

From 2004 through 2006, a housing boom in parts of the United States and rebuilding efforts necessitated by Hurricanes Rita and Katrina in the Gulf South led to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used to construct and refurbish homes in coastal areas of the country, notably the Gulf and East Coasts. Sometime after the Chinese drywall was installed, homeowners began to complain of foul-smelling odors, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829–30 (E.D. La. 2012),

*aff'd*, 742 F.3d 576 (5th Cir. 2014). Many of these homeowners also began to complain of various physical afflictions believed to have been caused by the Chinese drywall.

These homeowners began filing suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. Because of the commonality of facts in the various cases, this litigation was designated as a multidistrict litigation. Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation (the "JPML") on June 15, 2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 09-2047 before this Court.

The Chinese drywall at issue was largely manufactured by two groups of defendants: (1) the Knauf Entities and (2) the Taishan Entities. The litigation has focused on these two entities and their downstream associates and has proceeded on strikingly different tracks for the claims against each group. Relevant to this Order are the Knauf Defendants.[1] The Knauf Entities are German-based, international manufacturers of building products, including drywall, whose Chinese subsidiary, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), advertised and sold its Chinese drywall in the United States.

The Knauf Entities are named defendants in numerous cases consolidated with the MDL litigation as well as litigation in state courts. The Knauf Entities did not contest jurisdiction and first entered their appearance in the MDL litigation on July 2, 2009. *See* R. Doc. 18. On November

---

[1] The Chinese Defendants include the principal Chinese-based Defendant, Taishan, namely, Taishan Gypsum Co. Ltd. ("TG") and its wholly-owned subsidiary, Taian Taishan Plasterboard Co., Ltd. ("TTP") (collectively "Taishan" or "Taishan Entities"). Other Chinese-based Defendants include China New Building Materials Group ("CNBM Group"), China New Building Materials Co. ("CNBM"), CNBMIT Co. Ltd. ("CNBMIT"), CNBM USA Corp. ("CNBM USA"), and United Suntech Craft, Inc. ("United Suntech") (collectively the "CNBM Entities"), as well as the Beijing New Building Materials Public Limited Company ("BNBM") and Beijing New Building Material Group ("BNBMG") (collectively the "BNBM Entities").

2, 2009, in Pretrial Order No. 17, KPT agreed to a limited waiver of service. *See* R. Doc. 401. After a period of intense discovery, the Court set various bellwether trials. From March 15–19, 2010, the Court presided over a bellwether trial in *Hernandez v. Knauf Gips KG*, Case No. 09-6050, involving a homeowner's claims against KPT for defective drywall. *See* R. Doc. 2713. For purposes of the trial, Knauf stipulated that KPT Chinese drywall "emits certain reduced sulfur gases and the drywall emits an odor." *Id*. The Court, based on the evidence presented, found the KPT Drywall was a defective product and issued a detailed Findings of Fact and Conclusions of Law in favor of Plaintiff Hernendez ("*Hernandez* FOF /COL"), *see id.*, and entered a Judgment in the amount of $164,049.64, including remediation damages in the amount of $136,940.46, which represented a cost of $81.13 per square foot based on the footprint square footage of the house. *See* R. Doc. 3012.

On October 14, 2010, Knauf agreed to participate in a pilot program to remediate a number of homes using the remediation protocol formulated by the Court in *Hernandez*. The Knauf pilot remediation program has, at present, remediated over 2,800 homes containing KPT Chinese drywall using essentially the same protocol. At the Court's urging, after a number of homes had been remediated, the parties began working together to monetize this program and make it available to a broader class of plaintiffs. Thereafter, the PSC and Knauf entered into settlement discussions, and on December 20, 2011, some two years after the formation of this MDL, the PSC reached a global remediation settlement with Knauf, which is designed to resolve all Knauf-related Chinese drywall claims. R. Doc. 16407-3. This agreement (the "Knauf Class Settlement Agreement") applied to all claimants who filed suit against Knauf on or before December 9, 2011.

On August 12, 2013, Plaintiffs' and Defendants' Liaison counsel entered into a second settlement agreement addressing claims filed after December 9, 2011 (the "New Claims Settlement

Agreement"). R. Doc.16978-1. Under the New Claims Settlement Agreement, Claimants who gave notice prior to October 25, 2013 and qualified under the terms of the New Claims Agreement were eligible to seek benefits under the Knauf Class Settlement Agreement, subject to the requirements set forth in both agreements. R. Doc. 16978-1.

Under the terms of the settlements, the claimants with KPT Chinese drywall (drywall manufactured by Knauf's Chinese subsidiary) were offered several options. Under Option 1, the claimants were offered the opportunity to receive a complete, environmentally certified remediation of their properties. Under Option 2, the claimants were offered cash reimbursement in the event the home was already remediated. Finally, under Option 3, claimants were offered a cash payment instead of remediation as well as the opportunity to receive monetary benefits from the Knauf downstream chain of commerce entities to compensate them for other specifically designated losses. The total amount of the Knauf Settlement is approximately $1.1 billion.

## II. PENDING MOTION

To assist in the adjudication of this MDL, and pursuant to the settlement agreements' terms, the Court appointed Dan Balhoff to serve as Special Master. Relevant to this motion, at the direction of the Court, the Special Master was tasked with "conduct[ing] limited discovery regarding time and expense submission, procedures, . . . and . . . mak[ing] appropriate recommendations" concerning the division of the global fee and cost award between individually-retained counsel and common benefit counsel. R. Doc. 20410. As a part of this process, the Special Master solicited input from the various interested parties, ordered document production, and allowed the attorneys to take depositions. On May 31 and June 1, 2017, the Special Master conducted an evidentiary hearing. The attorneys submitted approximately 750 exhibits and offered the testimony of several witnesses. On September 12, 2017, the Special Master filed his report and

recommendation into the record. R. Doc. 20950. On January 31, 2018, the Court issued its order and reasons, ordering that common benefit counsel be awarded fifty-two percent of the total attorneys' fees from the Knauf settlements and that contract counsel receive forty-eight percent of the total attorneys' fees. R. Doc. 21168. Having determined the amount of fees available to the two categories of counsel, the Court began the process of allotting the funds to the various attorneys.

On July 3, 2018, the Fee Committee made its recommendation regarding the allocation of the common benefit fee award, to which several parties objected. R. Doc. 21455. On September 11, 2018, pursuant to Federal Rule of Civil Procedure 53(B), the Court appointed the Special Master "to conduct limited discovery regarding time and expense submissions, procedures, and the relevant work of Philip Garrett, CPA, to make appropriate recommendations regarding these motions and objections." R. Doc. 21777. Pursuant to this appointment, the Special Master solicited input from the parties regarding whether additional discovery would be necessary. Two firms requested additional discovery; attorneys representing twenty firms opposed any additional discovery.

On September 26, 2018, the Special Master filed his written reasons concerning requests for additional discovery into the record. R. Doc. 21798. On October 15, 2018, having reviewed the record and having received no objection to the Special Master's report, the Court adopted the Special Master's report as its own. R. Doc. 21851. On October 17, 2018, Parker Waichman LLP and Baron & Budd P.C. ("Objectors") moved the Court to reconsider this Order.

In their motion, Objectors argue that, although the Special Master filed his written reasons denying additional discovery into the record at their request, "the parties did not receive formal service through LexisNexis File & Serve. . . . As such, [Objectors] were not aware that the Written

5

Reasons were filed until October 15, 2018 when served with the Court's Order adopting the Written Reasons." R. Doc. 21860-1 at 4. Objectors further contend expanded discovery is necessary for counsel to defend their fee interests, *id.* at 3–4, and request an accounting of the attorneys' fees at issue, *id.* at 8.

The PSC filed its response on November 1, 2018. R. Doc. 21896. It submits the Special Master's "procedural decision to refuse any additional discovery in this already lengthy fee dispute" should be upheld, as "after 4 ½ years (and counting) of the ongoing fee dispute in this litigation," "enough is enough." *Id.* at 2. Further, the PSC contends the arguments Objectors make simply rehash the arguments rejected by the Special Master and subsequently by this Court. *Id.* at 3. Thus, the PSC argues, Objectors have not met any of the prerequisites for reconsideration. *Id.*

### III. LAW & ANALYSIS

When reviewing a special master's rulings on procedural matters, a district court may set aside those rulings only upon a finding that the special master abused her or his discretion. *Shelter Prods., Inc. v. 296 Southlake, Ltd.*, No. 17-90, 2018 WL 1443781, at *2 (E.D. Tex. Mar. 23, 2018); *see also In re Vioxx Prod. Liab. Litig.*, 544 F. App'x 255, 258 (5th Cir. 2013). In this case, however, the Court has already adopted the Special Master's written reasons for denying additional discovery as its own, thereby tacitly concluding the Special Master did not abuse his discretion. R. Doc. 21851. Thus, the Court will grant Objectors' motion for reconsideration only if Objectors have demonstrated: "(1) [an] intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or to prevent injustice." *In re Vioxx Prod. Liab. Litig.*, 230 F.R.D. 473, 474–75 (E.D. La. 2005).

"Reconsideration of an order is an extraordinary remedy which courts should use sparingly." *Schildkrant v. Bally's Casino New Orleans, LLC*, No. 04-366, 2004 WL 2385004, at

*1 (E.D. La. Oct. 22, 2004). Such a motion should not be used to relitigate old issues, advance new theories, or simply secure a rehearing. *See Fontenot v. Mesa Petrol.*, 791 F.2d 1207, 1219 (5th Cir. 1986).

In this case, it appears Objectors proceed under the third option for reconsideration; namely, that reconsideration is needed to correct a clear error of law or to prevent injustice. In making his determination regarding whether additional discovery would be required, the Special Master allowed extensive input from the parties, reasonably concluding that Objectors' requests for various documents should be denied. The parties have undergone ample discovery throughout this lengthy, over four-year-long process. As the Special Master noted, "request[s] for attorneys' fees should not result in a second major litigation." R. Doc. 21798 at 6 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)); *see also In re: Deepwater Horizon*, 824 F.3d 571, 580 (5th Cir. 2016) (holding that a court is not required to provide attorneys with access to all materials upon which a special master relies in making his or her recommendation). In denying Objectors' request for additional discovery, the Special Master—and subsequently the Court—did not commit an error of law.

Moreover, with respect to Objectors' requests for documents regarding how the Fee Committee came to its recommended allocation, the Court reiterates that,

> [T]he Fee Committee is only one piece of the process the Court utilizes to determine the appropriate allocation of fees. . . . This is only a recommendation, and one of several recommendations received by the Court. . . . Only after careful consideration of all these recommendations, as informed by the Court's familiarity with the efforts reported, does the Court make decisions regarding the appropriate allocation of fees.

R. Doc. 21686 at 1–2. The Court has been intimately involved in this case throughout the process of the settlement administration and meets monthly with the Court-appointed CPA to review

expense, time, and accounting reports. Thus, denying Objectors' motion to reconsider will not result in manifest injustice.

The Special Master's decision to deny Objectors' request for additional discovery was reasonable and, therefore, not an abuse of discretion. As a result, the Court concludes reconsideration is not necessary in this case and will deny Objectors' motion.[2]

## IV. CONCLUSION

Objectors have failed to meet their burden of demonstrating reconsideration of the Court's October 15, 2018 Order adopting Special Master Dan Balhoff's Written Reasons Concerning Requests for Discovery is necessary. Accordingly,

**IT IS ORDERED** that the motion for reconsideration filed by Parker Waichman LLP and Baron & Budd P.C., R. Doc. 21860, be and hereby is **DENIED.**

New Orleans, Louisiana on this 3rd day of January, 2019.

                                           Eldon E. Fallon
                                        U.S. District Court Judge

---

[2] In their motion, Objectors also request an accounting of the attorneys' fees at issue. R. Doc. 21860-1 at 8–9. To the extent Objectors' motion seeking reconsideration can be construed as a motion for an accounting, the motion is denied.