UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 |
| | SECTION: L |
| THIS DOCUMENT RELATES TO: | JUDGE FALLON |
| *ALL CASES* | MAG. JUDGE WILKINSON |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ORAL ARGUMENT REQUESTED

**OBJECTION BY ANDERSON KILL P.C. TO RECOMMENDATION OF SPECIAL MASTER DATED DECEMBER 4, 2018**

Pursuant to this Court's Order dated December 14, 2018 (D.E. 21967), Anderson Kill P.C. ("AK") respectfully objects to the Special Master's recommendation dated December 4, 2018 (D.E. 21945) of an allocation of only $300,000.00 of Anderson Kill's $1,770,088.90 Total Lodestar for AK's extensive and highly valuable common benefit work in the Chinese Drywall Multidistrict Litigation ("MDL").

AK respectfully submits that the Special Master's recommendation fails to recognize and significantly undercompensates AK for numerous aspects of AK's very valuable common benefit work. The Special Master's recommendation significantly undervalued the numerous briefs expressly requested of AK by the Plaintiff's Steering Committee ("PSC") that the PSC took and adopted as the PSC's own, the depositions the PSC expressly asked AK to undertake, the oral arguments before this Court that the PSC expressly asked AK to perform, and AK's central role in initiating the settlement conferences that led to the settlement with the insurance companies and with Knauf. The Special Master's recommended allocation

docs-100023837.3

significantly undervalued the common benefit work that the PSC expressly asked AK to undertake on the PSC's behalf.

## I. CONSIDERATION OF THE JOHNSON FACTORS

Application of the Johnson factors in this case demonstrates that the Special Master's recommended $300,000 allocation to AK is significantly deficient. "[W]hen appointing a committee to allocate a lump-sum fee award, the district court is not relieved of its responsibility to closely scrutinize the attorneys' fee allocation ….." Turner v. Murphy Oil USA, Inc., 582 F. Supp. 2d 797, 808 (E.D. La. 2008) (Fallon, J.); See also Hon. Eldon E. Fallon, 74 La. L. Rev. 371 (Winter 2014) (stating that "the method for distributing [the common benefit fund] should be fair, transparent, and based on accurately recorded data").

In reviewing the allocation of a common benefit fund among attorneys, the "Court will consider the "Johnson factors." Turner, 582 F. Supp. 2d at 813. The Johnson factors consist of:

(1) the time and labor required;

(2) the novelty and difficulty of the issues;

(3) the skill required to perform the legal service adequately;

(4) the preclusion of other employment by the attorney because he accepted this case;

(5) the customary fee for similar work in the community;

(6) whether the fee is fixed or contingent;

(7) time limitations imposed by the client or the circumstances;

(8) the amount involved and the results obtained;

(9) the experience, reputation, and ability of the attorneys;

2

docs-100023837.3

      (10)    the undesirability of the case;

      (11)    the nature and length of the professional relationship with the client; and

      (12)    awards in similar cases.

In re: Vioxx Products Liability Litigation, No. 11-1546, 2013 U.S. Dist. LEXIS 133462, at *12 (E.D. La. Sep. 18, 2013). In this case, the time and labor required, the novelty and difficulty of the issues, the skill required to perform the legal service adequately, and the amount involved and the results obtained particularly weigh in favor of an increase of an allocation to AK to the proportionate share of the overdraft common benefit fee distribution available based on the Total Lodestar without downward deviation from that proportionate share.

### A. AK expended significant time and labor on this litigation

AK began work on this litigation in the fall of 2009. As of October 20, 2014, AK had worked at least 9,026.82 hours on this litigation, valued at $3,390,682.50. Taking out the work done for Judge Robert Pate and the WCI Chinese Dry Wall Trust, AK, however, submitted a common benefit fee contribution claim for only $1,623,834.45. The auditor appointed by this Court, Philip Garrett approved $1,569,533.45 of this amount of AK's common benefit claim as compliant with the dictates of PTO 9. This reflects that AK put a significant amount of time and labor for common benefit in this case. The Total Lodestar for AK recognized by the Fee Committee on May 23, 2018 was $1,770,088.90. The Special Master's recommended allocation of $300,000 will compensate AK for merely 17% of AK's Total Lodestar recognized by the Special Master and of the amount of common benefit fees approved by Phillip Garrett, CPA, the firm this Court approved to assist and provide accounting services to this Court, as compliant with the dictates of PTO 9.

3

## B. AK handled novel and complex issues

AK's common benefit contribution necessarily included handling novel and complex issues related to insurance recovery. Those issues included without limitation: application of the pollution exclusion in third party insurance policies to claims arising from Chinese Drywall; personal jurisdiction pursuant to an alter ego theory in connection with a parent-subsidiary corporate relationship; whether subcontractor policyholders constitute indispensable parties in a lawsuit to recover additional insured coverage as a general contractor; and the appropriate trigger theory in the case of Chinese Drywall property damage.

<u>The novelty and complexity of the issues is proven by the fact that the Plaintiffs' Steering Committee expressly and repeatedly asked the experienced insurance coverage counsel at AK to brief and argue them.</u> Attached without limitation and by example only at Horkovich Dec.[1] Tab 1 is the signature page of the PSC motion usurping AK's motion for summary judgment on the pollution exclusion, the PSC's adoption of the jurisdictional discovery AK propounded, <u>the PSC's insistence that AK change AK's signature block on the indispensable party motion AK drafted for this Court to a PSC signature block</u>, and an acknowledgement that AK appeared on behalf of the PSC. <u>The PSC usurped AK's work product and used it as the PSC's own work product and now the Special Master proposes to compensate AK at 17% for the AK work that the PSC usurped.</u>

## C. Substantial skill was required to perform the required legal services adequately

The work that AK performed in connection with this litigation required the input of highly skilled attorneys, paralegals, and insurance policy analysts. <u>Pate v. Am. Int'l Specialty</u>

---

[1] Declaration of Robert M. Horkovich, Esq., in Support of Objections to Recommendation of Special Master Dated December 4, 2018, dated January 4, 2019 ("Horkovich Dec.")

4

docs-100023837.3

Lines Ins. Co., C.A. No. 09-7791 (the "Pate Action") in the MDL, alone named 22 insurance company defendants and raised fundamental issues concerning the insurance companies' obligations to cover Chinese Drywall losses. The PSC's repeated express requests of and reliance on AK to draft substantive motions and pleadings related to insurance – and the PSC's usurpation of those motions and pleadings – demonstrates the substantial skill that AK contributed with regard to the insurance recovery in this action. Those motions and pleadings included without limitation the Pate Action complaint, memoranda in opposition to the insurance companies' motions to dismiss for lack of personal jurisdiction, memoranda in opposition to the insurance companies' motions to dismiss for failure to name indispensable parties, and motions for summary judgment with respect to the pollution exclusion and trigger theory. Acknowledging AK's specialized knowledge, the PSC acknowledged AK's work as "excellent" (see Horkovich Dec. Tab 1). In addition, the PSC expressly solicited AK's analysis of pollution exclusion briefing in the Travco case before the United States Court of Appeals for the Fourth Circuit and named AK's Robert M. Horkovich to its Insurance Committee. (Horkovich Dec. Tab 2)

**D. AK's rates are reasonable**

Given that the attorneys involved in the Chinese Drywall MDL originate from all around the country, the rates customarily charged only in Louisiana should not be dispositive. By way of example, the attorneys in the Pate Action in the MDL before Judge Fallon included:

| Attorney | Location of firm |
|---|---|
| Joseph A. Hinkhouse | Illinois |
| J. Stephen Barry | Georgia |
| Donald E. Elder | Illinois |
| Robert M. Darroch | Georgia |
| John Herndon | Florida |
| Warren Lutz | Washington, D.C. |

| Attorney | Location of firm |
|---|---|
| Pedro Hernandez / Ronald Kammer | Florida |
| David F. Hassett | Massachusetts |

In any event, numerous federal and state courts reviewing AK's rates have found them to be reasonable. U.S. District Court Judge Denny Chin found AK's rates to be reasonable in Harris Trust & Savings Bank v. John Hancock Mutual Life Ins. Co., 137 F. Supp.2d 351, 358 (S.D.N.Y. 2001), vacated on other grounds, 302 F.3d 18 (2d Cir. 2002). Judge Chin stated:

> (13)  Based on my first-hand observations in the case, my review of the entire record, my knowledge of rates charged by comparable law firms in New York City for comparable services, and the experience and credentials of Mr. Kill and his colleagues, I conclude that the rates charged by AKO were fair and reasonable.

AK's rates also were found reasonable in *In re: Terrorist Attacks on September 11, 2011*, 03-md-1570, Corrected Memorandum Decision and Order, Docket No. 3087, at 13-17 (S.D.N.Y. Oct. 28, 2015); *Chemical Leaman Tank Lines Inc. v. Aetna Casualty & Surety Co.*, 978 F. Supp. 589, 601 (D.N.J. 1997), reversed on other grounds, 177 F.3d 210 (3d Cir. 1999), *Aetna Ins. Co. v. Esselte Corp.*, 02 Civ. 8140 (CLB) (S.D.N.Y. 2005); *ZRZ Realty Co. v. Beneficial Fire and Cas. Ins. Co.*, No. 9709-06226, Award and Order on Plaintiffs' Statement of Attorneys' Fees, at 2 (Or. Cir. Ct. Dec. 13, 2002) (awarding AK fees at the "asserted market rates," finding such rates to be reasonable); *Cascade Corp. v. Am. Home Assur.*, No. 9205-03083, Opinion, at 33 (Or. Cir Ct. Mar. 28, 2000) (court awarding fees at full AK rates based on "experienced, reputable and able" counsel); *Weyerhaeuser Co. v. Comm. Union Ins. Co.*, No. 67694, Ruling on Attorney Fees and Costs, at 2-3 (Wash. 2001); *Wausau Ins. Co. v. Tektronix, Inc.*, No. CV99-08-032, Letter Opinion as to Attorneys' Fees, at 8 (Or. Cir. Ct. Oct. 29, 2004).

6

Calculation of AK's hourly rate utilizing the Special Master's recommended $300,000 allocation demonstrates the inadequacy of that allocation. <u>Philip Garrett approved approximately 4,219.33 hours of AK's work through October 2014 as common benefit work</u> complying with the dictates of PTO 9. Utilizing the $300,000 allocation recommended by the Special Master, AK would be compensated for common benefit work at a rate of only $71.75 per hour. $71.75 is not a reasonable rate for experienced coverage counsel in Louisiana or any other jurisdiction.

### E. AK took this case on a contingency basis

AK took this case on a contingency fee basis and currently anticipates no further fee recovery from the WCI Trust. AK should be compensated for the risk of nonpayment it assumed *and realized* by carrying out this case on a contingency fee basis.

### F. AK sometimes was subject to time limitations and quick turnaround times in connection with the work it performed

At times during the course of this litigation, AK was subject to tight deadlines involving large volumes of work. In response to express requests by the PSC, for instance, AK drafted and filed motions for summary judgment concerning both the pollution exclusion and trigger theory in the span of about one month's time. Furthermore, in response to the filing of the Pate Action complaint in the MDL, the insurance companies filed four duplicative actions in federal court in Florida, requiring AK to litigate five cases in two different fora to preserve this MDL action in this Court. Finally, AK was litigating against 22 insurance companies in the MDL. AK, therefore, often was in the position to have to respond to multiple briefs from multiple insurance companies at the express request of the PSC.

7

### G. A large amount of money was at stake and AK obtained very good results

<u>There would have been no Knauf settlement without insurance company seed money to pay for inspections. There would have been no insurance company settlement without AK's valuable contribution.</u>

AK delivered significant value to the claimants by initiating and following through on mediation efforts and consistently applying pressure to the insurance companies through discovery and motion practice that caused them to settle, thereby creating the fund that Knauf required before Knauf too settled.

<u>AK conceptualized, initiated, organized, and hosted the very first global mediation in the MDL on September 20, 2010.</u> That very first mediation in the MDL took place at AK's Philadelphia office. AK coordinated with John W. Perry, the court-appointed mediator, who attended the mediation. Also in attendance were: Gregory J. Wallance, counsel for Knauf Plasterboard Tianjin ("KPT"); Bruce Steckler of the PSC; Arnold Levin, Plaintiffs' Lead Counsel; and dozens of insurance companies. <u>This was the very first mediation in this MDL case in which Knauf participated.</u> Banner also attended. AK brought this about.

<u>AK conceptualized, initiated, organized, and hosted the second global mediation in the MDL at AK's New York office on December 6, 2010.</u> The attendees included: Gregory J. Wallance, KPT's counsel; Matthew Gaughan and Bruce Steckler of the PSC; Pedro E. Hernandez, counsel for Mid-Continent; Robert M. Darroch, counsel for FCCI; Steven M. Klepper, counsel for Hartford Accident & Indemnity Company; Judge Robert C. Pate; Michael Ryan of the Chinese Drywall Trust Advisory Board; and Sander L. Esserman and Robert M.

8

Horkovich, counsel for the Trust. David J. Shay attended on the court-appointed mediator's behalf. It was at this mediation that KPT's counsel offered to contribute to a settlement.

The PSC expressly reached out and specifically asked AK to attend and participate in the third mediation session in New Orleans on May 10, 2011. At the express request of the PSC, AK drafted the proposed court order requiring attendance at this mediation. See D.E. 7414. Counsel for American International Specialty Lines Insurance Company ("AISLIC"), Steadfast Insurance Company ("Steadfast"), American Guarantee and Liability Insurance Company ("American Guarantee"), Liberty Mutual, and KPT as well as the court-appointed mediator, John W. Perry, attended this mediation. The PSC asked AK to put forward settlement demands that the PSC then compared to Knauf's proposals at that mediation.

In connection with these mediations, AK assembled and produced extensive information related to Chinese Drywall property damage and remediation cost and insurance policy information which the insurance companies requested before the insurance companies would contribute to any settlement in the MDL.

The mediator knew that an insurance settlement was a linchpin in any settlement argument with Knauf. Attached at Horkovich Dec. Tab 3 are a series of e-mails from the court appointed mediator John Perry and from Knauf's counsel Kerry Miller highlighting just how important the mediations initiated, coordinated and hosted by AK were to the insurance and Knauf settlements.

As mentioned above, AK took the lead in various aspects of the litigation at the request of the PSC. At the express request of the PSC, in response to the insurance companies' motions to dismiss in the MDL, AK drafted discovery requests concerning personal jurisdiction

9

and venue, and also proposed areas of testimony for corporate representative depositions of the insurance companies. See D.E. 5293-2, 5293-3, 5293-4. <u>The PSC adopted AK's discovery requests</u>. AK also drafted and arranged for service of deposition notices and subpoenas for the insurance company representatives and other witnesses, including the Louisiana-based producers and insurance agents of Mid-Continent Casualty Company ("Mid-Continent") <u>at the request of the PSC</u>.

In July and August 2010, AK participated in discovery "meet and confer" phone conferences with the insurance companies' counsel <u>at the request of the PSC</u>. Several insurance companies filed motions for protective orders, asking the Court to stay their submission of an insurance profile form and insurance policy. AK drafted the opposition to these motions. This Court denied the insurance companies' motions.

In August of 2010, <u>at the request of the PSC, AK assisted the PSC in drafting a "Joint Motion to Compel,"</u> addressing deficiencies in the insurance companies' discovery responses. See D.E. 5293. <u>At the express request of the PSC, AK argued the motion on the Trust's and the PSC's behalf on September 2, 2010</u>. The Court's Minute Entry <u>lists AK as counsel for the PSC</u>. See D.E. 5450.

AK and the PSC then shared the burden of taking depositions focused on personal jurisdiction in the MDL. AK deposed the corporate designees of NGM Insurance Company and FCCI, respectively. AK obtained affidavits from several of Mid-Continent's producers and insurance agents in Louisiana, demonstrating that Mid-Continent was, in fact, transacting the business of insurance in Louisiana. AK also defended against Mid-Continent's motion for a

10

protective order in the MDL, which sought to preclude the deposition of Mid-Continent's independent insurance agents.

AK also was instrumental in thwarting the insurance companies' attempts at dismissal from the MDL. AK researched and drafted briefs, <u>which the PSC joined and signed</u>, opposing the insurance companies' motions to dismiss for lack of personal jurisdiction and failure to name indispensable parties. See D.E. 5980, 6023. On November 3, 2010, <u>at the request of the PSC</u>, AK argued in opposition to the motions to dismiss based on personal jurisdiction and indispensable parties on behalf of the Trust; the PSC; and Centerline Homes Construction, Inc., Completed Communities II, LLC, Centerline Homes at Georgetown, LLC, and Centerline Homes, Inc.

In a February 9, 2011 decision, this Court denied Mid-Continent's and FCCI's motions to dismiss, holding that Mid-Continent and FCCI maintained sufficient contacts with Louisiana to be subject to personal jurisdiction. See D.E. 7356. Furthermore, this Court held that the drywall subcontractors did not constitute "required parties" and thus denied the insurance companies' motions to dismiss for failure to join indispensable parties. See D.E. 7357. Mid-Continent and FCCI remained part of the MDL proceedings and because of that now are parties to the Builder, Supplier, Installer, and Participating Insurer Settlement Agreement. <u>Had AK not been as successful in performing these tasks the PSC expressly asked AK to undertake, those parties no longer would have been part of the MDL or contribute to any insurance settlement in it</u>. Without an insurance company settlement providing seed money for Knauf remediation, there would not have been a Knauf settlement.

11

In January and February of 2011, AK researched, drafted, and had filed a "Motion for Partial Summary Judgment On The Pollution Exclusion." See D.E. 7327. <u>The PSC joined in this motion and signed it</u>. The motion challenged what likely would be the insurance companies' main defense to insurance coverage.

In February of 2011, AK also researched, drafted, and had filed a "Motion for Summary Judgment Concerning Insurance Coverage Trigger Theory." See D.E. 7776. <u>The PSC joined in this motion and signed it</u>.

AK's extensive contribution to the MDL are noted in the Declaration of Hon. (Ret.) Robert C. Pate, a Texas Senior District Judge, having been the Presiding Judge of the 28th and 148th Judicial District Courts, Nueces County, Texas, sworn to on October 5, 2018, attached as Horkovich Dec. Tab 4 . Judge Pate declares in relevant part:

> Had anyone from the Fee Committee contacted me, I would have supported full compensation for AK, including its insurance policy analyst paralegal fees, not any reductions.
>
> * * * *
>
> I recall attending a mediation at AK's office in Philadelphia. The mediations at AK's offices were not limited to just WCI Trust issues. The PSC attended that mediation. The MDL mediator attended that mediation. The whole MDL was discussed. All claimants, not just WCI claims, were considered.
>
> * * * *
>
> C. AK's Contribution
>
> 10. AK drafted numerous important briefs in the MDL at the express request of the PSC. The PSC simply re-branded AK's brief as its own. These briefs were significant in the MDL.

12

All of the aforementioned activities succeeded in applying pressure to the insurance companies and in bringing them to the settlement table. <u>That created the fund that Knauf required before Knauf would settle</u>. AK facilitated this through its hard work and successful litigation.

### H. The AK attorneys involved were of solid experience, reputation, and ability

AK put substantial expertise to work in this litigation. Robert Horkovich is a partner in, and the Managing Shareholder of, AK. He worked on this case personally, reviewing and revising all briefs and arguing on the PSC's behalf on several occasions before this Court at the express request of the PSC. He has more than 35 years of experience litigating on behalf of policyholders against insurance companies. Chambers USA has recognized him as a leading insurance recovery attorney every year since 2005. He was named Lexis / Nexis "Policyholder Lawyer of the Year" and most recently Law360's "MVP" in the area of insurance recovery. He has obtained over $5 billion in settlements and judgments from insurance companies for his clients over the past three decades. His victories include one of the top 10 jury verdicts in the United States in 2003, the top insurance recovery jury verdict in the United States in 2005, eight landmark state Supreme Court decisions, eight jury verdicts and nine bench trial decisions in favor of the policyholder since 1994. He was lead environmental liability insurance coverage trial counsel for the State of California. He has been engaged by the United Nations on several insurance coverage projects. He is a Fellow of the American Bar Foundation, an honor bestowed on less than 1/3 of 1% of the Bar.

13

## I. Undesirability of the case

This case was undesirable because there was the potential for a zero return on investment.

## J. Awards in similar cases weigh in favor of a larger award to AK

Even a cursory review of allocations in other cases demonstrates that the Special Master's proposed $300,000 allocation is inadequate compensation for AK's contributions to this case.

AK's contributions can be summarized as follows:

| Attorney | Contribution |
|---|---|
| Anderson Kill | – Initiated, hosted, and attended mediations that led to settlements with the insurance companies and Knauf.<br>– Drafted briefing to oppose insurance companies' motion to dismiss for failure to name indispensable parties at the PSC's request.<br>– Drafted briefing to oppose insurance companies' motion to dismiss for lack of personal jurisdiction at the PSC's request.<br>– Argued in opposition to insurance companies' motions to dismiss on behalf of PSC and other counsel.<br>– Drafted motion for summary judgment on the central issue of the pollution exclusion.<br>– Drafted motion for summary judgment on the central issue of trigger.<br>– Argued motion to compel on behalf of PSC and other counsel.<br>– Drafted jurisdictional discovery requests at the PSC's request.<br>– Took jurisdictional depositions at the PSC's request.<br>– Obtained affidavits to prove minimum contacts of certain insurance companies.<br>– Analyzed the Travco briefing at the PSC's request.<br>– Drafted briefing that largely defeated insurance companies' attempts to litigate this dispute in Florida federal court.<br>– Identified as Insurance Committee member by the PSC.<br>– Worked over 4,219 hours. |

14

## II. THE SPECIAL MASTER'S RECOMMENDATION FAILED TO RECOGNIZE NUMEROUS SIGNIFICANT CONTRIBUTIONS MADE BY AK

The Special Master's recommendation (D.E. 21945 at 27) failed to take into account numerous significant contributions made by Anderson Kill at the express requests of the PSC. The Special Master's recommendation nowhere recognized:

(a) extensive briefing in opposing the insurance companies' separate motions to dismiss for (i) lack of personal jurisdiction and (ii) failure to join indispensable parties;

(b) taking depositions establishing personal jurisdiction;

(c) ferreting out evidence presented to the Court demonstrating that the insurance companies transacted business in Louisiana;

(d) arguing those motions before the Court, or

(f) analyzing the pollution exclusion briefing in the Travco case before the United States Court of Appeals for the Fourth Circuit.

Those tasks are just some examples of the numerous tasks the PSC expressly asked AK to undertake on the PSC's behalf for the common benefit.

None of these very important and time consuming tasks undertaken by AK for the common benefit at the express request of the PSC are mentioned anywhere in the Special Master's recommendation.

In addition, AK researched, drafted and filed motions for summary judgment regarding insurance case dispositive issues of the (a) pollution exclusion and (b) trigger adopted

15

by the PSC. The insurance companies settled shortly after AK drafted and filed those insurance case dispositive motions.

The extensive insurance policy analysis of hundreds of insurance policies covering dry wall losses performed by AK's policy analysts also was produced to meet the numerous express urgent requests of the PSC, it expressly was approved by Philip Garrett, the auditor appointed by the Court. The PSC should not have defeated numerous motions to dismiss by dozens of insurance companies and get $80 million from insurance companies for seed money for the Knauf remediation without analyzing their insurance policies. AK's para-professional insurance policy analysts were needed to do that. The PSC relied on AK's para-professional insurance policy analysts to do that. And took the benefit.

## III.   OTHER FACTORS

### A.   Number of cases handled

The number of cases that AK handled also weighs in favor of a significantly upward adjustment of the paltry $300,000 recommended by the Special Master. In determining a proper allocation, the court will consider, among other factors, the number of cases handled and the legal work performed. Turner, 582 F. Supp. 2d at 810.

A number of the insurance companies that the Trust had sued in the MDL filed competing lawsuits against Robert C. Pate, as Trustee for the WCI Chinese Drywall Trust, in the United States District Court for the Middle District of Florida (the "Florida Actions") in order to evade the MDL action before Judge Fallon. The Florida Actions consisted of: (i) Mid-Continent v. Pate, et al., C.A. No. 2:10-cv-00121 (the "Mid-Continent Action"); (ii) Chartis Specialty Insurance Company and Lexington Insurance Company v. Pate, et al., C.A. No. 8:10-cv-01456

(the "Chartis / Lexington Action"); (iii) National Union Fire Insurance Company of Pittsburgh, Pa. and Commerce and Industry Insurance Company v. Pate, et al., C.A. No. 8:10-cv-01541 (the "National Union Action"); and (iv) FCCI v. Pate, et al., C.A. No. 8:10-cv-01567 (the "FCCI Action"). These insurance companies sought to have their insurance coverage issues litigated outside the MDL so to avoid being before Judge Fallon.

In response to the Chartis / Lexington Action, AK drafted and filed a (i) Motion to Dismiss for Lack of Jurisdiction Subject Matter Jurisdiction and (ii) Motion to Dismiss, or in the Alternative, to Stay the Action or Transfer Venue to the United States District Court for the Eastern District of Louisiana. See 8:10-cv-01465, D.E. 11-12. The Florida court granted Pate's motion to transfer the Chartis / Lexington Action, holding that the first-filed rule applied. 8:10-cv-01465, D.E. 24. After the case was transferred to this Court, Chartis and Lexington Insurance Company ("Lexington") filed a voluntary notice of dismissal. 2:10-cv-3243-EEF-JWC, D.E. 26.

In response to the FCCI Action, AK drafted and filed a Motion to Dismiss, or in the Alternative, to Stay the Action or Transfer Venue to the United States District Court for the Eastern District of Louisiana. Shortly thereafter, FCCI voluntarily dismissed the FCCI Action.

In response to the Mid-Continent Action, AK arranged for the filing of a "Notice of Related Action" with the JPML, which resulted in a Conditional Transfer Order ("CTO") of the action to the MDL. Mid-Continent then filed a motion to vacate the CTO, which AK opposed. The CTO ultimately was vacated. Along with attorneys from Broad and Cassel and Barnett, Bolt, Kirkwood, Long & McBride – whose clients Mid-Continent also sued in Florida – AK drafted and filed of a motion for reconsideration, which was denied.

17

In successfully opposing the Chartis / Lexington and FCCI Actions, AK preserved the MDL as the forum in which to resolve insurance coverage issues arising out of Chinese Drywall actions and created leverage against the insurance companies for settlement. Furthermore, in obtaining a conditional transfer of the Mid-Continent Action, and tenaciously (but unsuccessfully) defending that transfer, AK put pressure on Mid-Continent, which then became a participant in the Builder, Supplier, Installer, and Participating Insurer Settlement Agreement. <u>These parties would not have settled and contributed to the insurance settlement in the MDL that permitted the Knauf settlement but for the successful litigation of AK to keep them from evading MDL jurisdiction.</u>

**B. Philip Garrett's determination supports a greater allocation to AK**

Pre-Trial Order No. 28 confirms Mr. Garrett's role in this regard, stating:

> (14)   "The guidelines set forth in this Order are addressed specifically to common benefit attorneys' fees, as well as expenses, which shall be evaluated by the FC in a manner <u>consistent with the standards already employed by the accounting firm of Philip A. Garrett</u>, CPA pursuant to PTO No. 9 and 9A."
> PTO 28 (emphasis added).

Philip Garrett and his staff already rejected certain AK time where they felt it did not relate to the common benefit but approved $1,569,533.45 as common benefit work compliant with the dictates of PTO 9, not $300,000.

**CONCLUSION**

In summary, we respectfully ask that this Court adjust the Special Master's proposed allocation to AK proportionately upward based on application of the <u>Johnson</u> factors. The Special Master recognized AK's Total Lodestar as $1,770,088.90. The percentage of all common benefit fees available for distribution to all of the Lodestar amounts is 43.6%.  43.6%

times $1,770,088.90 is $843,002. An award of $843,002 to AK would compensate AK proportionately for its share of the Lodestar compared to the total funds available for common benefit fees. Anything less would not. There is no justification for a downward deviation from a proportionate allocation.

Based on application of the <u>Johnson</u> factors, we respectfully ask this Court to increase the allocation to AK in light of (1) the highly valuable role AK played in bringing about the insurance company settlement that provided the seed money for the Knauf remediation program, (2) the extensive services AK provided at the express request of the PSC, keeping the insurance company defendants in this action, and (3) the amount of AK's Total Lodestar as well as the common budget fees approved by this Court's appointed auditor, Philip Garrett, as compliant with the dictates of PTO 9. As there is no basis for a downward deviation, AK respectfully asks this Court to increase AK's allocation to $843,002, the proportionate share of the overall common benefit fee distribution available based on the Total Lodestar.

Dated: January 4, 2019

Respectfully submitted,
/s/ Robert M. Horkovich

Robert M. Horkovich
State Bar No. 1679778
Anderson Kill P.C.
1251 Avenue of the Americas
New York, New York 10020
P: 212-278-1000
F: 212-278-1733
rhorkovich@andersonkill.com

19

## CERTIFICATE OF SERVICE

I hereby certify that the above and forgoing Objection by Anderson Kill P.C. To Recommendation of Special Master Dated December 4, 2018 and Declaration of Robert M. Horkovich, Esq. dated January 4, 2019 and Exhibits thereto have been served on Plaintiffs' Liaison Counsel, Russ Herman and Defendants' Liaison counsel, Kerry Miller, Esquire, and upon all parties by electronically uploading the same to File & ServeXpress f/k/a/ LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing were filed electronically with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047.

Dated: January 4, 2019

/s/ Robert M. Horkovich

Robert M. Horkovich
State Bar No. 1679778
Anderson Kill P.C.
1251 Avenue of the Americas
New York, New York 10020
P: 212-278-1000
F: 212-278-1733
rhorkovich@andersonkill.com