UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br><br>SECTION: L |
| THIS DOCUMENT RELATES TO: | JUDGE FALLON |
| *ALL CASES* | MAG. JUDGE WILKINSON |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**PARKER WAICHMAN'S OBJECTION TO
THE SPECIAL MASTER'S RECOMMENDATION CONCERNING
THE ALLOCATION OF COMMON BENEFIT FEES AND
THE REIMBURSEMENT OF EXPENSES AND HELD COSTS (R. DOC. 21945)**

Parker Waichman LLP objects to the Special Master's Recommendations Concerning the Allocation of Common Benefit Fees and the Reimbursement of Shared Expenses and Held Costs (the "Recommendation").  R. Doc. 21945.  This objection is a continuation of Parker Waichman's efforts to obtain transparency in this fee allocation proceeding.  Parker Waichman previously objected during Step Five[1] of the fee allocation proceeding based on the inadequate fees available to compensate both common benefit counsel and contractually retained counsel, the absence of an accounting, and the lack of or insufficiency of discovery.  *See* R. Doc. 20993-2 and 21216.

During Step Six of the fee allocation procedure, the Special Master was charged with making a recommendation concerning the allocation of $99,762,099.56 in common benefit attorneys' fees as established by the Court in the Step Five allocation process. R. Doc. 21702 and

---

[1] As provided in Pretrial Order No. 28 (R. Doc. 17379), Step Five involved the division of fees between common benefit and contractually retained counsel.

1

21777.² Although the central issue of this proceeding is "the relative contribution of each common benefit attorney to the outcome of the litigation" (R. Doc. 17379 at 9-10), the Special Master's recommendation was made without all parties having equal access to the information necessary to make that determination. As repeatedly insisted by Parker Waichman and others, there are serious questions about the integrity of the lodestar data for allocating common benefit fees, including the standard for approval and disapproval of hours, the number of hours approved and disapproved and for whom, and the propriety of common benefit fee or expense awards in the aggregate and for specific categories of work (*e.g.*, work pursuing Taishan defendants) and specific costs (*e.g.*, administrative). Without this information, objectors were required to make arguments based on incomplete information and largely in a vacuum.

The Special Master recommended that Parker Waichman receive $2.9 million in common benefit fees which yields an hourly fee of $325.63, well below the firm's loadstar submission. This is a much appreciated increase over the Fee Committee's punitive recommendation of $650,000, but well below the average per-hour return of $428 and far below the yield of certain firms: $1,067 per hour for Gainsburgh, Benjamin, David, Meunier & Warshauer; $626 per hour for Hausfield, LLP; $500 per hour for Seeger Weiss; Herman, Herman & Katz, LLC; Levin Sedran & Berman; and Krupnick Campbell Malone Buser Slama Hancock and Liberman, P.A..³ On the basis of the information provided, there is no explanation for such a discrepancy in the hourly yield

---

² The Court primarily employed the lodestar methodology in the Step Five analysis. See R. Doc 21322 at 8 ("In setting the 52-48 allocation, the Court spent countless hours reviewing the record, and then applied the lodestar method and *Johnson* factors to arrive at its decision.").

³ Of course, using hourly yield as a reliable point of comparison requires a fair metric for allocating and valuing time, the best evidence of which are the time sheets that have been denied to the fee objectors.

of these firms.  Thus, Parker Waichman respectfully objects to the Recommendation of the Special Master.

**I.      Parker Waichman Was Denied Access to Critical Information Regarding the Common Benefit Work Being Compensated.**

The Special Master explained that the Court's process for distributing common benefit fees "envisions that, before the Court makes its own determination, it will have the benefit of recommendations from the [Fee Committee] and from a Special Master."  R. Doc. 21945 at 16.  Parker Waichman has been denied the basic information necessary to mount a meaningful challenge to either recommendation:  the common benefit time submissions, documents related to the process for distributing fees among common benefit counsel, and an accounting of all attorneys' fees received in connection with the Knauf and related settlements which are at issue in this common benefit fee allocation proceeding.  Nevertheless, this information was available to the Special Master and the Fee Committee, which consists of several of the individual attorneys seeking the highest "relative" allocations.

From the time the Fee Committee made its recommendation of the common benefit fee award (*see* R. Doc. 21455), Parker Waichman requested targeted discovery aimed at the legitimacy and value of the common benefit time submissions.  It first requested this information in its Objection to the Final Recommendation of the Majority of the Fee Committee Regarding Allocation of Common Benefit Fees. R. Doc. 21589.  The Court then appointed the Special Master "to conduct limited discovery regarding time and expense submissions, procedures, and the relevant work of Philip Garrett, CPA, to make appropriate recommendations regarding these motions and objections. . . ."  R. Doc. 21702.  Thereafter, for the second time, Parker Waichman requested additional targeted discovery, this time as part of the Special Master Proceeding.  *See* Special Master Docket # 18-08-29-0905.  The Special Master denied the majority of the request

3

(R. Doc. 21798), [4] and the Court adopted the Special Master's ruling in this regard. R. Doc. 21851. Parker Waichman then sought reconsideration of the Court's Order and explained, again, why such targeted discovery was essential. R. Doc. 21860. Its motion for reconsideration was denied. R. Doc. 22019.

The essence of Due Process is the sense of fair play. *See Galvan v. Press*, 347 U.S. 522, 530 (1954). As Your Honor has warned, "Disproportionate results and inconsistent standards threaten to damage the public's faith in the judicial resolution of mass tort litigation by creating an impression of inherent unfairness." Eldon E. Fallon, *Common Benefit Fees in Multidistrict Litigation*, 74 La. L. Rev. 371, 380 (2014). "[T]ruth – as well as fairness – is best discovered by powerful statements on both sides . . . ." *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536 (9th Cir. 2016), quoting *Penson v. Ohio*, 488 U.S. 75, 84 (1988). The ultimate question is whether "given the nature and circumstances of the case . . . the parties [had] a fair opportunity to present relevant facts and arguments to the court, and to counter the opponents' submission." *In re High Sulphur Content Gasoline Products Liability Litigation*, 517 F.3d 220, 231 (5th Cir. 2008) (quoting *In re Nineteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 982 F.2d 603, 614 (1st Cir. 1992), citing *In re Fine Paper Antitrust Litigation*, 751 F.2d 562, 584 (3d Cir. 1984)).

The above principles apply with equal force in fee proceedings. Minimum standards of transparency, impartiality and procedural fairness must be maintained. *In re High Sulfur Content*

---

[4] Parker Waichman requested nine categories of documents. All except for one, the Second Affidavits in Connection with Request for Allocation of Common Benefit Fees and Cost Award, were denied. *See* R. Doc. 21860-1. As explained in previous briefing, the Second Affidavits are of limited value. Parker Waichman LLP's Supplemental Objection to the Final Recommendation of the Majority of the Fee Committee Regarding Allocation of Common Benefit Fees, Special Master Docket # 18-10-24-1600-1. The Special Master recognized this: "Of course, the Second Affidavits represent the various firms' own positions concerning their contribution to the common benefit; it is possible that some or all of the Second Affidavits might be mistaken in some way." R. Doc. 21945 at 23.

*Gasoline Products Liab. Litig.*, 517 F.3d at 234. "When a judge constructs a process for setting fees, the process must contain at least the procedural minima that the Due Process Clause requires; and, moreover, those procedures must apply in a fair and evenhanded manner to the parties in interest, without preferring one group of disputants over another." *In re Nineteen Appeals*, 982 F.2d at 614–15. Accordingly, the denial of basic discovery deprives Parker Waichman of a fair and transparent process with equal access to the evidence necessary to adequately evaluate and rebut the Special Master's recommendations and, thereby, deprives it of an equal opportunity to be heard.

Although the Court and Mr. Garrett provided oversight to the process, all qualitative decisions to approve or disapprove common benefit work were made by the PSC leadership, and firms relied fully and exclusively on those decisions. Mr. Garrett's after-the-fact vetting was solely for accounting purposes, as explained in his testimony during the Step Five proceeding. Moreover, while there is no doubt about the authority of or the need for the Court's direct involvement in the common benefit time-submission and approval process, this does not supplant the right of a litigant in the *adjudication* of a fee dispute to gain access to and dispute the evidence and arguments of competing stakeholders. The process of administering the common benefit activities is materially different than the process of adjudicating a disputed fee proceeding.

At a minimum, it is clear that a large number of hours are improperly included in the common benefit lodestar and that the PSC leadership employed a double standard for screening time and assigning value. For example, the lodestar includes thousands of hours in pursuit of claims against non-settling parties.[5] Further, some firms, including Parker Waichman, were

---

[5] As noted in the Minority Fee Committee Report, "[t]hroughout the Fee Committee work, there has been a pervasive theme involving the volume of work performed by HHK and LSB related to the Taishan litigation in contrast to other firms." R. Doc. 21473 at 3. *See also*, Parker Waichman

5

instructed to conduct extensive work in drafting and gathering data for omnibus complaints, but this time was later rejected; while other firms were permitted to log time for this same endeavor. The Cataphora ordeal is an even more extreme example. The Court made no findings on these critical issues during the Step Five proceeding, arguably deferring to Step Six. But at this juncture, these issues must be adjudicated. It is a clear denial of Due Process to deprive a litigant access to highly relevant evidence known to other litigants – particularly those acting simultaneously as Court-appointed advisors - and on which the Court intends to rely to decide the merits of the controversy.

## II. Parker Waichman is Unable to Assess Its Relative Contribution or Defend Its Fee Interest.

Not only is Parker Waichman prevented from challenging the lodestar as a result of deficient discovery, it is forced to evaluate and defend its contribution to the litigation in a vacuum, despite the Court's directive that "[t]he over-arching guideline. . . to consider is the relative contribution of each common benefit attorney to the outcome of the litigation." R. Doc. 17379 at 9-10, quoted in Recommendation, R. Doc. 21945 at 18. With this principle in mind, the Special Master further elaborated:

> [W]hen the focus is on the allocation of th[e] fee the lodestar analysis is incomplete because it is necessary to drill down on the hours and prioritize them, consistent with the facts of each MDL. In other words, the first step is to allocate the fee based on a qualitative analysis. Only after the qualitative analysis is complete should the lodestar be referenced to ensure that the result is not grossly unfair.

R. Doc. 21945 at 19 (internal citations and quotes omitted).

---

LLP's Supplemental Objection to the Final Recommendation of the Majority of the Fee Committee Regarding Allocation of Common Benefit Fees, Special Master Docket # 18-10-24-1600-1 (outlining work performed by several firms in pursuit of Taishan and other matters which should not be compensated out of the Knauf attorneys' fee fund).

6

Importantly, the Fee Committee analyzed and summarized the relative common benefit contribution of each firm, and the Special Master's Recommendation supplemented this analysis and summary.  *Id.* at 19.  However, this information was not available to anyone other than the Special Master, the Fee Committee and the Court.   Rather, non-Fee Committee common benefit counsel were given an impossible task – evaluating their "relative" contributions on the basis of the Second Affidavits, which the Special Master himself recognized as potentially self-serving. *Supra,* fn 1.

For this reason, Parker Waichman is unable to provide a well-informed analysis of its <u>*relative*</u> contributions.  It has, however, performed significant work since the inception of this litigation.  The firm, along with Morgan & Morgan, filed the first Federal class action complaint regarding defective Chinese Drywall.  *Allen v. Plasterboard Tianjin Co., LTD, et al*., Case No. 2:09-cv-00054.  Jerry Parker was a member of the Plaintiffs' Steering Committee, chair of the Public Relations Committee, and Chair of the IT Committee.  Upon the PSC's instruction and approval, as thoroughly outlined in its Affidavits (*see* R. Docs. 21589-1 and -2), the firm conducted extensive and valuable work in this MDL.  Further, Parker Waichman timely met all funding obligations for PSC Members.  In addition to Mr. Parker, Jordan Chaikin, a former partner at Parker Waichman, devoted approximately 80% of his practice to this litigation; April Goodwin, a former associate at Parker Waichman, devoted approximately 90% of her time to this litigation; and three full-time and two part-time legal assistants devoted 100% of their time.  This extensive work is reflected in its total hours "approved" by Mr. Garrett:  8,905.75 (following the forced

removal of several thousand common benefit hours for work that *may* have been permitted for other firms).[6]

### III. Conclusion

For the reasons set forth above, Parker Waichman respectfully requests this Court to disregard the Recommendation, order limited discovery on the unresolved lodestar and expense issues, and, thereafter, make a *de novo* recommendation regarding the allocation of the common benefit fee.

Respectfully submitted,

**FAIRCLOTH MELTON SOBEL & BASH, LLC**

By:  /s/ *Jimmy R. Faircloth, Jr.*
Jimmy R. Faircloth, Jr. (LA #20645)
jfaircloth@fairclothlaw.com
Brook L. Villa (LA #31988)
bvilla@fairclothlaw.com
Franklin "Drew" Hoffmann (LA #35824)
dhoffmann@fairclothlaw.com
9026 Jefferson Highway
Building 2, Suite 200
Baton Rouge, LA 70809
Phone: (225) 343-9535
Fax: (225) 343-9538

*Attorneys for Parker Waichman LLP*

### CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was

---

[6] Without the billing records, it is impossible for Parker Waichman to determine the legitimacy of these reductions relative to other firms.

8

electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 4th day of January, 2019.

        /s/ *Jimmy R. Faircloth, Jr.*
        OF COUNSEL