UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | : : : : : : : : : | MDL NO. 2047 SECTION: L JUDGE FALLON MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO: ALL CASES | | |

GARY, NAEGELE & THEADO, LLC'S
OBJECTIONS TO THE SPECIAL MASTER'S RECOMMENDATIONS
CONCERNING THE ALLOCATION OF COMMON BENEFIT FEES

Gary, Naegele & Theado, LLC ("GNT"), pursuant to this Court's Order of December 14, 2018 (Doc. 21967), respectfully submits its Objections to the Special Master's Recommendations Concerning the Allocation of Common Benefit Fees (Doc. 21945) in which the Special Master recommended a common benefit fee to GNT in the amount of $100,000.00 based on 437.70 approved hours towards the common benefit, in light of the fact that statements contained within the filings of various Objectors to the Special Master's Recommendations substantiate the argument which GNT has made in each of its Objections to the Fee Committee ("FC"), to the Court, and to the Special Master -- that work done by the originating attorney is to be considered common benefit work even if it is done prior to the formation of the MDL; that the originating attorney is in a unique position, and all initial work investigating and determining the underlying facts central to the case is a common benefit for all; and that GNT is entitled to be paid for its pre-MDL work, both factually and legally.

As was stated in GNT's Objections to the Final Recommendation of the Majority of the Fee Committee Regarding the Allocation of Common Benefit Fees (Doc. 21560 filed 7/20/18), the undersigned was the first attorney to discover and investigate the problem of defective drywall in Florida homes.  In January of 2009 a home inspector advised the undersigned that he had discovered an unusual phenomenon in the homes he was inspecting, well before the term "Chinese Drywall" was coined.  Soon after discovering the defective drywall, the undersigned contacted Richard Lewis to ask if he was interested in co-counseling the case with GNT. Subsequently, Mr. Lewis suggested we bring in Arnold Levin.  Mr. Levin then suggested we

invite Ervin Gonzalez to join the group. On February 10, 2009, a master "Working Agreement of Counsel regarding Work, Costs, Fees" was drafted between the undersigned, Richard Lewis, Arnold Levin, Ervin Gonzalez, Richard Serpe, and Richard Stimson ("initial group of attorneys"), a copy of which was attached as Exhibit 4 to GNT's Objections to the Final Recommendation of the Majority of the Fee Committee Regarding the Allocation of Common Benefit Fees (Doc. 21560 filed 7/20/18). Much of the work done by the undersigned and this initial group of attorneys, prior to the appointment of Lead and Liaison Counsel, involved extensive preliminary investigations to determine if there was, in fact, a claim to be brought concerning the defective drywall. The initial team of attorneys and GNT held regular meetings as we continued to learn more about the defective drywall, while obtaining substantiation for possible claims. The team and GNT's initial groundwork laid the foundation for much of the protocol accepted by the MDL. Our initial case was a class action captioned *Vickers, et al. vs. Knauf Gips, KG, et al*. This case, which was ultimately transferred to New Orleans and blended into MDL No. 2047, was not an individual case but rather the class action that laid the foundation for the MDL and what followed.  It has never been acknowledged that GNT was the originating firm, not a tag-along.

The FC's recommended common benefit fee award to GNT in the amount of $47,000.00 represents 16% of its total lodestar of $243,127.50. The remainder of the work done by GNT – 84% or $196,127.50 – investigating the case prior to the inception of the MDL, was excluded by the FC as individual case work. However, in their respective Objections to the Special Master's Recommendation, Messrs. Herman and Levin, both members of the FC, as well as Mr. Montoya who is not a member of the FC, claimed that work done by their firms investigating and determining the underlying facts central to the case was indeed a common benefit for all and, as such, they are entitled to be paid for said pre-MDL work. Mr. Montoya went so far as to say that Colson Hicks deserved better treatment than "others" because his firm had been involved since the pre-MDL investigations began in early 2009.

> **Colson Hicks Eidsons' Objection states, in pertinent part, as follows:**
>
> "**II. COLSON HICKS' SIGNIFICANT CONTRIBUTIONS TO THE WORK PRODUCT OF THE PSC DESERVES BETTER TREATMENT THAN THAT PROVIDED BY THE SPECIAL MASTER IN RELATION TO HIS OTHER RECOMMENDATIONS**
> Colson Hicks began performing substantial common and benefit efforts under the tutelage of Mr. Ervin Gonzalez. Until his untimely death, Mr. Gonzalez and his partner, Patrick Montoya, worked together to significantly contribute to the Drywall litigation. **Colson Hicks was initially involved at the onset of the litigation with the filing of the initial class action, Vickers v. Knauf Gips, KG in the Southern District**

of Florida. The Vickers case was the principal action that spearheaded the petition for consolidation before the Judicial Panel on Multidistrict Litigation."

### Herman Herman & Katz's Objection states, in pertinent part, as follows:

"**HHK began its active role in this litigation prior to (FN2) the MDL Panel hearing**, and Russ Herman organized a meeting in New Orleans, of lawyers who had cases involving Chinese Drywall where Russ Herman was unanimously recommended by Plaintiffs' counsel to serve as PLC.
(FN2) **Before the MDL was created, HHK retained an international investigator with networks in both China and Germany who was dispatched overseas to determine the origins of the defective drywall, causes of the defects and retained reliable information regarding the sale and export of materials to the United States.**"

"**This Court should compensate HHK and LSB fairly for the substantial, and indeed incomparable, work, effort** and ongoing, unwavering dedication, which was absolutely essential to securing the Knauf and related settlements, and to the litigation as a whole. **Among other things: HHK commenced pre-suit discovery, which involved investigation as to causation, parties involved in the supply chain of defective drywall, discovery of financial materials, utilization of translators and interpreters, retention of consultants and extensive political and public relation activities.**"

"**HHK undertook and directed extensive efforts to investigate and establish the business relationships between and among various Chinese entities, their relationships to the United States, addressed personal jurisdiction issues, and located the existence of assets both within the United States and which could ultimately be utilized to satisfy judgments from manufacturers of defective Chinese drywall.**"

### Levin Sedran & Berman's Objection states, in pertinent part, as follows:

"**LSB became involved in the Chinese Drywall litigation at its inception, with the March 2009 filing of the principal class action complaint against the major Defendants in Vickers v. Knauf GIPS KG, et al., No. 09-20510-CIV (S.D. Fla.),** and the perfection of foreign service therein pursuant to The Hague Convention. **Thereafter, Mr. Levin presented the consolidation motion before the Judicial Panel on Multidistrict Litigation in Louisville, KY. After the JPML ordered Vickers and other cases transferred to this Court on June 15, 2009**, Mr. Levin was appointed, pursuant to Pre-Trial Order No. 8, as Lead Counsel of the Plaintiffs' Steering Committee ("PSC"). Since then, Mr. Levin has worked virtually full-time on this case for almost 10 years."

On December 4, 2018 the Special Master filed his Recommendations Concerning the Allocation of Common Benefit Fees (Doc. 21945), in which he recommended that GNT be awarded $100,000.00 based on 437.70 approved hours towards the common benefit. The Special Master's recommendation yields an hourly fee of $228.47, well below the firm's lodestar submission in the amount of $243,127.50. Although GNT is greatly appreciative of the Special Master's recommended increase over the FC's punitive recommendation of $47,000.00, it is well below the average per-hour return of $428 and far below the $500 per-hour return of Messrs. Herman and Levin.

As was stated in GNT's Objections to the Final Recommendation of the Majority of the Fee Committee Regarding the Allocation of Common Benefit Fees (Doc. 21560 filed 7/20/18),

the undersigned was approached by Richard Lewis and asked to withdraw my firm from the working arrangement of the initial group of attorneys and in consideration, GNT entered into separate fee-sharing agreements with Hausfeld and with Colson, copies of which GNT attached as exhibits to its Objections to the Final Recommendation of the Majority of the Fee Committee Regarding the Allocation of Common Benefit Fees (Doc. 21560 filed 7/20/18).  Once GNT exited said group, despite our having discovered the case and the undersigned having brought in Richard Lewis, Arnold Levin and Ervin Gonzalez, GNT was given no assignments of any significance by Lead or Liaison Counsel.  It is short-sighted and patently wrong not to take into account the time spent at the very beginning of the case -- the discovery and initial investigation -- which made everything else that followed, including formation of the MDL, possible.  Mr. Herman essentially makes this same point in his Objection, wherein he states:

> "**As a matter of fairness, the Court should evaluate and compensate hours that were reasonably necessary to the overall common benefit of all claimants irrespective of whether, in hindsight, they can be directly traced to a particular benefit or result** (see footnote 5 below)."

For the foregoing reasons, and in light of the fact that 84% of GNT's pre-MDL time was excluded by the FC as individual case work, even though Messrs. Herman and Levin, both members of the FC, as well as Mr. Montoya, who is not a member of the FC, claimed in their respective Objections that all of their firm's pre-MDL time was for the common benefit of all and, as such, that each of them deserve a higher award, GNT's contribution to this case also supports a higher award.

Dated:  January 7, 2019                                   Respectfully submitted,

/s/ Robert D. Gary
Robert D. Gary (0019610)
/s/ Jori Bloom Naegele
Jori Bloom Naegele (0019602)
Gary, Naegele & Theado, LLC
Common Benefit Attorneys
Duane Building
401 Broadway, Unit 104
Lorain, OH  44052
Phone:  (440) 244-4809
Fax:  (440) 244-3462
rdgary@gmail.com
jbnaegele@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing – *Gary, Naegele & Theado, LLC's Objections to the Special Master's Recommendation Concerning the Allocation of Common Benefit Fees* – has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by email and upon all other parties by electronically uploading the same to File & ServeXpress f/k/a LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047.

Dated: January 7, 2019

/s/ *Robert D. Gary*
Robert D. Gary (0019610)
/s/ *Jori Bloom Naegele*
Jori Bloom Naegele (0019602)
Gary, Naegele & Theado, LLC
Common Benefit Attorneys