**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL NO. 2047**<br><br>**SECTION: L**<br><br>**JUDGE FALLON**<br><br>**MAG. JUDGE WILKINSON** |
| **THIS DOCUMENT RELATES TO:**<br><br>***Brooke et al. v. State-Owned Assets Supervision and Administration Commission of the State Council, et al.*, Case No. 15-4127 (E.D. La.)**<br><br>***Brooke et al. v. State-Owned Assets Supervision and Administration Commission of the State Council, et al.*, Case No. 15-6631 (S.D. Fla.).**<br><br>***Brooke et al. v. State-Owned Assets Supervision and Administration Commission of the State Council, et al.*, Case No. 15-6632 (E.D. Va.)** | |

**TAISHAN'S SUPPLEMENTAL BRIEF IN SUPPORT OF BNBM'S MOTION TO DISMISS THE *BROOKE* COMPLAINTS**

## I.      INTRODUCTION

BNBM moved to dismiss all *Brooke* claims as time-barred. (Rec. Doc. 19967-3 at 14-19). In connection with that motion, the Court recently ordered additional briefing related to "state statutes of limitations." (Rec. Doc. 21914). The Court directed the parties to address cross-jurisdictional tolling in the relevant states and also "whether the states in which the affected properties sit recognize other tolling doctrines." *Id.* at 2.

Some of the relevant states recognize the discovery rule as a tolling doctrine. *See, e.g.*, *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990) (holding that discovery rule "operates to toll the running of the period of limitations until the time that the plaintiff discovers, or through the exercise of reasonable care and diligence should discover, the nature of his injury").

In most of the relevant states, the "discovery rule" involves only discovery of an injury, not discovery of a wrongful cause. Regardless of its doctrinal status in each state, the discovery rule is critical to understanding whether the Court should grant BNBM's motion. But the PSC's Supplemental Brief passed quickly by the discovery rule, offering only a single sentence and a footnote, without any substantive discussion. (Rec. Doc. 21963 at 1).

Taishan files this brief to explain that the PSC's passing reference to the discovery rule and vague assertion of unspecified "individual issues of accrual and/or notice" do not prevent the Court from granting Defendant's motion to dismiss now as to all *Brooke* claims. The *Brooke* complaints were obviously tardy when filed more than six years after the formation of this MDL. Those complaints provided no allegations of delayed manifestation or discovery, which would have been inconsistent with the actual allegations of rapid manifestation. And when given the chance to brief any explanations or examples of delayed manifestation, the PSC gave only a few vague unsupported generalizations. At this late stage in the litigation, the combination of the *Brooke* allegations of rapid manifestation, plus extensive identical litigation beginning in 2009, plus widespread news coverage of drywall issues in that same early period make it clear that all causes of action accrued years ago as a matter of law and that it is appropriate to dismiss all *Brooke* claims as time-barred.

At the very least, the Court should require each claimant to specifically allege case-specific facts of accrual and notice, as Plaintiffs themselves have suggested. *See* Rec. Doc. 21767-2 at 11 ("At the very least, each plaintiff should be afforded the opportunity to come forward with case-specific allegations and/or evidence to establish notice and accrual for prescription purposes . . . ."); Rec. Doc. 21963 at 1 n.3 (asserting that "plaintiffs are entitled and will, if necessary under the discovery rule, present additional allegations in a formal filing"). The Court should then limit

initial *Brooke* discovery to the statute-of-limitations issues if any claimants can provide sufficient allegations of plausible timeliness, and dismiss the rest.

After a short undisputed timeline (Section II), this brief explains in Section III that all *Brooke* claimants had early actual notice of their injury because of the alleged "rapid" and strong effects from allegedly defective drywall, and that all *Brooke* claimants had constructive notice of a wrongful cause of injury before 2010 from the massive publicity in 2009 about drywall and the widespread litigation, including this 2009 national multidistrict litigation. Section IV rebuts the PSC's attempts to avoid dismissal. Section V sets forth the accrual laws of the relevant states, most of which require only knowledge of injury for property damage claims. A few states also require knowledge of wrongful cause, and none require knowledge of the proper defendant. And Section VI requests alternative relief to require the PSC to provide the claimant-specific allegations of accrual and notice that should have been part of the obviously untimely *Brooke* complaints.

## II.    PROCEDURAL AND FACTUAL BACKGROUND

After nine years of litigation and two rounds of briefing on these issues, the following timeline is well-established and undisputed:

- **2004 – 2006**:  The housing boom in Florida and rebuilding efforts necessitated by Hurricanes Rita and Katrina led to a shortage of construction materials, including drywall. [Damages FOFCOL, Rec. Doc. 20741 at 1];

- **2006 – 2007**:  Taishan manufactured and exported drywall to the United States in 2006 and 2007. [TTP Manufacturer Profile Forms, Rec. Docs. 14215-3, 14215-4];

- **2006 – 2007**:   Chinese-manufactured drywall is incorporated into houses, apartments and other structures. [CPSC website[1]];

---

[1]    *Where Has Problem Drywall Been Reported?*, U.S. Consumer Product Safety Commission, https://www.cpsc.gov/safety-education/safety-education-centers/drywall-information-center/where-has-problem-drywall-been-reported (last visited Jan. 16, 2019) (describing 4,051 reports from residents in 44 states "who believe their health symptoms or the corrosion of certain metal components in their homes are related to the presence of drywall produced in China" and reporting that those "**[c]onsumers largely report that their homes were built in 2006 to 2007**" (emphasis added)).

- **2009**:  Property owners who discovered their causes of action began filing complaints against Knauf, Taishan, and other drywall manufacturers. [*See, e.g.*, *Wiltz* and *Germano* complaints, (Case No. 09-3488, Rec. Doc. 1, and Case No. 09-6687, Rec. Docs. 1-1, 1-2)];

- **June 15, 2009**:  The Judicial Panel on Multidistrict Litigation created the Chinese-Manufactured Drywall MDL. [Transfer Order, Rec. Doc. 1];

- **May 25, 2010**:  The United States Consumer Product Safety Commission issued a public release identifying manufacturers of allegedly defective drywall. [Press Release, Consumer Product Safety Commission, CPSC Identifies Manufacturers of Problem Drywall Made in China (May 25, 2010); *see also* Damages FOFCOL, Rec. Doc. 20741 at 13 (referencing CPSC report)];

- **September 4, 2015**:  The PSC filed the Louisiana *Brooke* complaint;

  - *Brooke* alleged that the drywall caused "rapid sulfidation and damage to personal property in Plaintiffs' and Class Members' homes, residences or structures." [Rec. Doc. 1 at ¶ 24 (Case No. 15-4127)];

  - *Brooke* alleged no plaintiff-specific facts.

- **November 23, 2015**:  The PSC filed duplicate *Brooke* complaints in the Southern District of Florida and the Eastern District of Virginia, which were later transferred by the JPML to this MDL. [Rec. Doc. 1 (Case No. 15-6631) and Rec. Doc. 1 (Case No. 15-6632)];

- **June 15, 2017**:  The PSC filed a Motion to Intervene in *Brooke*, seeking to add 218 new claims from Peninsula II Developers, Inc. [Rec. Docs. 20811, 20811-2]. On June 30, the PSC filed an identical Motion to Intervene in the duplicative Florida *Brooke* action. [Rec. Doc. 20845];

- **August 1, 2017**:  The PSC filed additional *Brooke* complaints in the Northern District of Alabama, Northern District of Georgia, Southern District of Mississippi, and Southern District of Texas, which were transferred subsequently to the MDL. [Rec. Doc. 1 (Case No. 17-8284); Rec. Doc. 1 (Case No. 17-8286); Rec. Doc. 1 (Case No. 17-8288); Rec. Doc. 1 (Case No. 17-8294)];

- **November 1, 2017**:  The PSC filed an additional Motion to Intervene in *Brooke*. [Rec. Doc. 21056];

- **December 26, 2017**:  The PSC filed an additional Motion to Intervene in *Brooke*. [Rec. Doc. 21105];

- **January 26, 2018**:  The PSC filed an additional Motion to Intervene in *Brooke*. [Rec. Doc. 21163];

- **May 22, 2018**:  The PSC filed an additional Motion to Intervene in *Brooke*. [Rec. Doc. 21342];

- **July 24, 2018**:  The PSC filed an additional Motion to Intervene in *Brooke*. [Rec. Doc. 21599];

- **October 25, 2018**:  The PSC filed an additional Motion to Intervene in *Brooke*. [Rec. Doc. 21882];

- **November 16, 2018**:  The PSC filed a Motion to Supplement/Substitute Exhibits to Plaintiffs' Motion to Intervene that was filed on October 25, 2018, which sought to include additional plaintiffs. [Rec. Doc. 21932].

## III.   ALL BROOKE CLAIMANTS HAD ACTUAL AND CONSTRUCTIVE NOTICE OF INJURY FROM ALLEGEDLY DEFECTIVE DRYWALL AS A MATTER OF LAW BASED ON RAPID EFFECTS, WIDESPREAD LITIGATION, AND MASSIVE PUBLICITY

The 2015 *Brooke* complaint was untimely when the PSC chose to file it into a mature litigation with a well-developed, undisputed record. That record roots this litigation—and the *Brooke* complaints—in events that undisputedly took place in the prior decade:

- the United States drywall shortage starting in 2004;

- Taishan's drywall shipments to the US from March 2006 to July 2007;

- the use of that drywall to build and remodel homes in the same period;

- the "rapid" manifestation of sulfur odors and problems related to sulfidation;

- massive media coverage of property-owner problems;

- widespread state and federal litigation and formation of an MDL in 2009;

- a well-publicized May 2010 CPSC report describing drywall problems and identifying potential manufacturers.

The PSC has acknowledged that timeline many times over the years, most recently on December 18, 2018, in front of Judge Davis in the Eastern District of Virginia:

> Your Honor, **in the 2005 through 2008 time frame**, after some hurricanes had done some massive damage in the United States, the Chinese saw a market opportunity to sell drywall in U.S. and pushed almost 100 million square feet of drywall in the United States, seven million of which through Venture Supply of Norfolk,

5

> Virginia. **It was incorporated into homes. By the end of 2008 there were suits and litigation that was brewing.** In January, January 23rd, 2009 – it'll be 10 years next month -- Michelle Germano, a woman from Norfolk who owned her home in the Harbor View section of Norfolk, **found out she had Chinese drywall in her home**. . . . By April of 2009, Michelle had moved out of her home, abandoned her possessions in the home because of the contamination from drywall. **Suit was filed a month later**.

(Transcript of Proceedings at 9, *Amorin v. Taishan Gypsum Co.* (Dec. 18, 2018) (E.D. Va. Case No. 11-377)) (emphasis added). The Court should not assess the *Brooke* complaints as if they were the first to be filed in 2009. Those 2015 complaints—filed over six years since this MDL began—were time-barred in the context of the well-established record of this litigation. Each claimant had actual notice of injury and at least constructive notice of wrongful cause, and given those established facts the PSC has not met their burden to allege otherwise.

### A.     All *Brooke* Claimants Initially Discovered Their Injury from Drywall Before 2010.

As discussed above, in most of the relevant states, discovery of manifest injury triggers the limitations period. Given the established facts in this litigation and the *Brooke* allegations (both what is said and what is not said), the only possible conclusion is that all *Brooke* claimants—like the claimants in much earlier omni complaints—discovered some damage for which they are now suing soon after Taishan sent drywall to the U.S. in 2006-2007. For example, the lead plaintiff in *Germano* discovered she had problematic Chinese drywall in her house in early 2009 and filed her lawsuit soon after. *See* 12/18/18 *Amorin* Virginia Tr. at 19 (asserting that Germano "finds out she's got drywall 10 years ago this coming January the 23rd"). And literally thousands of other claimants discovered injuries they ascribed to defective drywall and brought suit in 2009 and 2010 against several manufacturers, including Taishan and Knauf. That timing makes sense: when the drywall shortage caused Chinese drywall to be imported in 2006-2007, that imported drywall was

immediately incorporated into properties, and injuries were immediately discovered, consistent with the filing of lawsuits in 2009. *See, e.g.*, *Germano* Compl., Rec. Doc. 1-2 (Case No. 09-6687).

The same conclusion applies in *Brooke* based on the same Taishan drywall imported in 2006 to 2007 and the same allegations of immediate manifestation. The *Brooke* complaints repeatedly allege that Taishan drywall "caused rapid sulfidation and damage to personal property in Plaintiffs' and Class Members' homes, residences or structures." (Rec. Doc. 1 at ¶ 24 (Case No. 15-4127)); *see also id.* at ¶ 21 ("rapid sulfidation and damage to personal property (such as air conditioning and refrigerator coils, faucets, utensils, electrical wiring, copper, electronic appliances and other metal surfaces and property).") The *Brooke* complaints contain no allegations to suggest that "rapid" was anything other than immediate and immediately discoverable to the claimants.

Immediate discovery is also consistent with the Court's findings of severe effects from allegedly defective drywall, which no *Brooke* claimant could have failed to discover soon after moving into a house, condo or other structure. For example, in the Damages FOFCOL, the Court found that "[t]he sulfur gases released by this Chinese drywall cause offending odors in homes, making them hard if not impossible to live in . . . ." (Rec. Doc. 20741 at 13). The Court noted "the wide-spread impact of the corrosive environment, which included corrosion of copper wiring, copper pipes and silver-based components in electronics, including HVAC circuitry and brazing on pipes, causing premature failure of electrical and mechanical devices." *Id.* at 14. The Court also found that "[t]he sulfur gases released by Chinese drywall are irritating to the human body during exposure. Exposed individuals reported irritation of the eyes, respiratory system, and skin, among other things." *Id.* at 13. All claimants would have immediately detected those effects, and the *Brooke* complaint does not allege that any did not.

Of course, thousands of claimants did immediately discover injury from allegedly defective drywall. The Court found in the April 2010 *Germano* FOFCOL that "[t]he Plaintiff-intervenors have reported many premature failures of major appliances and consumer electronics in their homes *during their first three years of use of these homes*." (Rec. Doc. 2380 at 14-15) (emphasis added). Michelle Germano herself discovered she had problematic Chinese drywall in her house ten years ago in 2009. (12/18/18 Virginia *Amorin* Tr. at 19 (asserting that Germano "finds out she's got drywall 10 years ago this coming January the 23rd")). And thousands of other claimants had immediately manifested damages from allegedly defective drywall that permitted them to contact a lawyer and file suit against Knauf, Taishan and other defendants within a few years of Chinese drywall coming into the country in 2006 and 2007.

And the same is true for the *Brooke* claimants. To take the most significant example, Florida claimant Peninsula II Developers, Inc., who intervened in 2017 with 218 *Brooke* claims, had actual notice of its cause of action in 2009 as a matter of the record in this case. On August 23, 2017, one week after the Court granted the PSC's Motion to Intervene, Peninsula II completed and signed a Plaintiff Profile Form ("PPF") (attached as Exhibit A). The Peninsula II PPF admitted that, by June 1, 2009, all properties were inspected and that the inspections determined the presence of Chinese drywall. (PPF at 2). The PPF also admitted that, on March 5, 2009, the *Brooke* Intervenors sent written notice to a "[g]eneral contractor, drywall contractor, supplier and manufacturer" that their properties "contain[ ] Chinese-manufactured drywall." *Id.* Peninsula II admitted in their PPF that they requested repair of these properties from their general contractor (later identified in the form as Gryphon Construction, LLC) on March 5, 2009, and that the drywall remediations were "initiated" and "completed." *Id.*

Publicly available sources confirm the long-ago accrual of claimant Peninsula II's causes of action related to Chinese drywall. Media reports confirm that Peninsula II knew in 2009 that it had problematic Chinese drywall. *See, e.g.*, Paul Brinkmann & Oscar Pedro Musibay, *Chinese Drywall Found in Local Luxury Condos*, South Florida Business Journal (June 15, 2009), https://www.bizjournals.com/southflorida/stories/2009/06/15/story3.html (reporting letter to residents "that Chinese drywall is present in the building" and that "[t]he Peninsula II case would be the first confirmation that Chinese drywall was in a high-rise building in Southeast Florida") (attached as Exhibit B). Federal case law shows that Peninsula II actively participated in insurance litigation on Chinese drywall claims in 2009, and alleged in a 2010 third-party complaint that "Peninsula II has undertaken a program to replace the Chinese drywall and repair property damage to units." *Am. Home Assurance Co. v. Peninsula II Developers, Inc.*, 2010 U.S. Dist. LEXIS 113588, at *5 (S.D. Fla. Oct. 19, 2010) (describing Peninsula II complaint at ¶ 16).[2] Thus, claimant Peninsula II "knew" that its properties "had a problem with its drywall by mid-2009" (more than 8 years before filing its 2017 intervention motion), which is more than sufficient to bar "property damage" claims under Florida's "four-year statutes of limitations." *See Hummer v. Adams Homes of Northwest Fla., Inc.*, 198 So. 3d 750, 751-52 (Fla. Dist. Ct. App. 2016) (affirming dismissal of Chinese drywall property damage claims).

### B.   All *Brooke* Claimants Had Constructive Notice of Drywall As a Potential Wrongful Cause of Their Injury

All claimants also had constructive notice of the potential connection between their immediately discovered injuries and allegedly defective drywall by 2009, and no later than May 2010 based on the massive national and local media attention to Chinese drywall in that

---

[2] And it was reported to this Court in open court five months before the *Brooke* complaint that "the Peninsula II Condo building was fully remediated several years ago." (04/01/2015 Status Conference Tr. at 43, Rec. Doc. 18579).

period. This Court has ruled that "national and local media coverage" of events linked to a mass tort are "sufficient to put the plaintiffs on notice of a potential link between their alleged injuries and the use of" the defendant's product, as a matter of law. *In re Vioxx Prods. Liab. Litig.*, 522 F. Supp. 2d 799, 808 (E.D. La. 2007).

That is consistent with explicit law in several relevant jurisdictions. For example, in *In re Ford Motor Co. Bronco II Product Liability Litigation*, 982 F. Supp. 388, 396 (E.D. La. 1997), then-Chief Judge Sear rejected the plaintiffs' attempt to invoke *contra non valentum* in the face of "extensive media attention" of a product defect. The court ruled that the plaintiffs' failure to discover their cause of action and file suit much earlier was not reasonable because "the rollover problems associated with utility vehicles in general and Bronco IIs in particular had been sufficiently publicized that any amount of diligence would have alerted plaintiffs to the issue." *Id.*; *accord Carey v. Kerr-McGee Chem. Corp.*, 999 F. Supp. 1109, 1116 (N.D. Ill. 1998) (cited in *Vioxx*); *Hues v. Warren Petroleum Co.*, 814 S.W.2d 526, 529 (Tex. Ct. App. 1991) (holding discovery rule inapplicable because plaintiffs were put on notice of the claim by "a great deal of [media] coverage").

Here the problems with Chinese drywall were sufficiently publicized in national and especially local news outlets throughout the relevant states that all *Brooke* claimants were on notice of the potential problems. A Lexis Advance search for "Chinese Drywall" in news sources returned 3,365 hits for the period of January 1, 2008 to December 31, 2009. *See* Declaration of Pamela Harris (attached as Exhibit C). As early as 2008, media sources were reporting that Chinese drywall "could be causing noxious odors, air conditioning failures and health problems." Mary Wozniak, *Chinese Drywall Causes Concern in Lee*, The News-Press, Dec. 20, 2008 (Fort Myers,

FL) (Ex. D); *see also* Dick Hogan, *Chinese Drywall Fears Widen in SW Fla.*, The News-Press, Dec. 21, 2008, at 1A (Fort Myers, FL) (Ex. E).

That media coverage greatly accelerated in 2009 leading up to and past the filing of the first federal complaints and the formation of this MDL.[3] In that period, over 300 different news stories were published in newspapers throughout Florida on topics ranging from the materials used in the Chinese drywall to what the federal government was planning to do to help homeowners with Chinese drywall. For example, news outlets were speculating that Chinese drywall may have been made with radioactive waste. Nirvi Shah, *Some Chinese Drywall May Be Tainted with Radioactive Materials*, The Miami Herald, July 8, 2009 (Ex. F). And in Louisiana, newspapers were reporting that a hotline had been created to try to quantify how many residents were experiencing Chinese drywall problems in hopes that the federal government would offer assistance. Rebecca Mowbray, *Hotline Set Up to Tally Toxic Drywall; Homeowners Urged to Report Problems*, Times-Picayune, Dec. 8, 2009, at C6 (Ex. G). And numerous articles exist from all the relevant states.[4]

These claimants received even stronger notice in May 2010 when the CPSC issued its report on Chinese drywall, and that report received even more widespread media coverage. As described in that coverage, the CPSC report listed the brands of drywall that "emit[ted] the most

---

[3] A list of news articles in the relevant states in 2008-2009 is attached as Exhibit 1 to the Harris Declaration (Exhibit C).

[4] *See, e.g.*, Rebecca Mowbray, *Saints Coach Plaintiff in Chinese Drywall Lawsuit*, Mobile Register, Dec. 12, 2009, at C2 (Alabama) (Ex. H); Nathan Olivarez-Giles, *Construction; Damage and Nosebleeds in a New Home*, L.A. Times, July 4, 2009, at B5 (California) (Ex. I); William Garwood, *What to Know About Chinese Drywall Issue; 'Rotten Egg' Smell Reported by Some Homeowners*, The Atlanta Journal-Constitution, Nov. 1, 2009, at 2F (Georgia) (Ex. J); Paul Merrion, *USG's Asbestos Flashback; Chinese Drywall Suits Have a Familiar Ring*, Crain's Chicago Business, May 18, 2009 (Illinois) (Ex. K); Michael Newsom, *Attorneys Expect Thousands of Drywall Lawsuits*, The Biloxi Sun Herald, Oct. 4, 2009 (Mississippi) (Ex. L); Brian Skoloff, *Insurers Dropping Policies for Drywall*, Chapel Hill Herald, Oct. 15, 2009, at M7 (North Carolina) (Ex. M); Cain Burdeau, *Tainted Chinese Drywall Shows up in Katrina Homes*, Tulsa World, Apr. 13, 2009, at A10 (Oklahoma) (Ex. N); Brian Skoloff, *Drywall Investigation Expands in U.S. Consumer Agency's Probe Is Its Biggest Ever*, The Houston Chronicle, Nov. 26, 2009, at A14 (Texas) (Ex. O); Veronica Chufo, *Chinese Drywall Turns Dreams to Nightmares*, Daily Press, Oct. 21, 2009, at A5 (Virginia) (Ex. P).

sulfuric gas compounds" and identified drywall made in 2005 and 2006 as the most problematic. Nirvi Shah, *Chinese Drywall Brands with High Emissions ID'd*, L.A. Times, May 27, 2010, at B5 (Ex. Q); Nirvi Shah, *U.S. Tests on Drywall Reveal Most Toxic Brands*, The Miami Herald, May 26, 2010, at C1 (Ex. R). The report specifically identified Taishan as a potential manufacturer, so even crediting the PSC's legally irrelevant excuses about failing to identify specific board markings, that explanation fails as of May 2010, more than five years before the first *Brooke* complaint. The CPSC received widespread coverage in Florida and Louisiana, and put all *Brooke* claimants, as a matter of law, on notice of a potential connection between their injuries and Taishan drywall. By waiting to file suit until more than five years later, the *Brooke* claimants "cannot be said to have acted diligently." *In re Vioxx*, 522 F. Supp. 2d at 814.

## IV.   PLAINTIFFS FAILED TO MEET THEIR BURDEN TO ALLEGE FACTS TO POSTPONE DISMISSAL OF ALL *BROOKE* CLAIMS

Based on the *Brooke* complaints' allegations and the established record into which the PSC filed those complaints in late 2015, the *Brooke* claims were untimely and barred by relevant statutes of limitations. In that context, the *Brooke* claimants had the burden to establish some basis for tolling. Dismissal under Rule 12(b)(6) is proper "where it is evident from the [complaint] that the action is barred and the [complaint] fail[s] to raise some basis for tolling." *Jones v. ALCOA, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003); *accord Boettcher v. Conoco Phillips, Co.*, 721 F. App'x 823, 824 (10th Cir. 2018) (affirming Rule 12(b)(6) dismissal because plaintiff's "complaint did not contain facts sufficient to demonstrate a basis for tolling the applicable statute of limitations"). The *Brooke* complaints raise no basis for tolling the applicable statutes of limitation. The Court should therefore dismiss these time-barred complaints.

Even looking beyond the complaints, the PSC—in two briefs on this issue—provides no valid basis to toll or postpone the running of any statutes of limitation. Plaintiffs' briefs do not

deny the facial untimeliness of complaints filed six years after the formation of this MDL. Implicitly conceding that untimeliness, all of the excuses the briefs do offer are meaningless. **First**, as explained in BNBM's concurrently filed brief, class-action tolling does not save the *Brooke* claims because no relevant state recognizes that cross-jurisdictional tolling. *See generally In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 2d 897, 907-08 (E.D. La. 2007).

      **Second**, the PSC's accusation that defendants prevented claimants and their counsel from "better determin[ing] which suspected boards were manufactured with defective drywall by which specific companies" (Rec. Doc. 21767-2 at 9) is legally irrelevant because the widespread rule in states that apply discovery rules is that the cause of action accrues regardless of the plaintiff's knowledge about specific defendants. *See, e.g.*, *PPG Indus. v. JMB/Houston Ctrs. Ltd. P'ship*, 146 S.W.3d 79, 93 (Tex. 2004) (discovery rule "tolls limitations only until a claimant learns of a wrongful injury . . . even if the claimant does not yet know . . . the party responsible for it"); *Norgart v. Upjohn Co.*, 87 Cal. Rptr. 2d 453, 464, 981 P.2d 79, 89 (Cal. 1999) ("[F]ailure to discover, or have reason to discover, the identity of the defendant does not postpone the accrual of a cause of action."). Even if knowledge of specific defendants were required, that knowledge was available in 2009 when the PSC sued numerous Chinese drywall manufacturers (including Taishan), and at the latest in May 2010 when the CPSC report listed potential drywall defendants.

      **Third**, given *Brooke*'s allegation of "rapid sulfidation" and the undisputed record of immediate effects and thousands of lawsuits in 2009-2010, it is not sufficient for the PSC to assert generally in a single sentence that "[n]ot all drywall deteriorated at the same rate, and not all plaintiffs identified the fact that their homes had been damaged." (Rec. Doc. 21767-2 at 11). On this record, it is implausible that any *Brooke* claimant discovered damage on a greatly delayed basis, and the *Brooke* complaint alleges no claimant who actually did. And three and half years

later, the PSC purports to rely on "individual issues of accrual and/or notice," but fails to provide any specific *Brooke* claimants who could not have sued within the applicable limitations period, much less provide a critical mass of such claimants to try to justify departing from the obvious accrual effect of their allegations, the 2009 litigation, and the massive drywall media coverage in 2009 and 2010. The PSC has given the Court no legitimate explanation for (1) filing hundreds of claims six years after the formation of this MDL and then (2) continuing to intervene additional claims right up to the end of 2018.[5] The Court should dismiss those facially untimely claims.

## V.   THE LAW OF ALL RELEVANT STATES REQUIRES DISMISSAL OF UNTIMELY *BROOKE* CLAIMS

The *Brooke* complaint filed in September 2015 based on events from 2006 to May 2010 falls outside every applicable statute of limitation for property damage claims in the relevant states.

### A.   Alabama

The 55 Alabama *Brooke* claims are time-barred because those claims were filed more than two years after damage from drywall must have manifested. *See* Ala. Code § 6-2-38(l) (2018) (two-year statute of limitations for noncontractual actions). "Under Alabama law, a noncontract cause of action arises when the first indication of damage becomes apparent to the claimant." *CertainTeed Corp. v. Russell*, 883 So. 2d 1266, 1269 (Ala. Civ. App. 2003) (dismissing claims brought more than two years after plaintiff noticed "a black sooty residue that began to accumulate shortly after [she] moved into the house"); *see also Franklin v. Mitchell*, 87 So. 3d 573, 578 (Ala. Civ. App. 2011) (affirming dismissal because plaintiffs sued more than two years after noticing sagging floors). Here, given the *Brooke* allegations of rapid sulfidation and property damage, it is

---

[5] The PSC's September 8, 2015 letter to the Court (Rec. Doc. 19490-2) stated that the initial *Brooke* complaint filed four days earlier asserted claims not included in *Amorin* for which "individual counsel ha[d] come forward with evidence of Taishan Chinese Drywall contaminated properties since the Certification of the Class, September 26, 2014." That would not qualify as a valid tolling event under any state's law.

implausible that damage from allegedly defective drywall installed before 2009 did not manifest until September 5, 2013. Plaintiffs' briefing suggests no reason to believe that that manifestation was delayed for any Alabama claimant.

The discovery rule has no relevance because Alabama does not apply a discovery rule in building defect cases like these. *See id.* (rejecting argument that cause of action could not accrue until homeowners knew the cause of their sagging floors).[6] As in *CertainTeed*, each *Brooke* Alabama property owner's "cause of action accrued when she observed the damage to her new house, even though she did not know what had caused the damage." 883 So. 2d at 1270.

**B.   California**

The three California *Brooke* claims are time-barred because those claims were filed more than three years after damage from drywall must have manifested. *See* Cal. Civ. Proc. Code § 338(b), (c)(1) (2018) (governing respectively "injury to real property" and "injuring goods or chattels"). "In [California] tort actions, the statute of limitations commences upon the occurrence of the last element essential to a cause of action." *City of San Diego v. U.S. Gypsum Co.*, 35 Cal. Rptr. 2d 876, 881 (Cal. Ct. App. 1994) (citing *Leaf v. City of San Mateo*, 163 Cal. Rptr. 711 (Cal. Ct. App. 1980)). "If the last element to occur is the element of damage, the statute of limitations begins to run upon the occurrence of 'appreciable and actual harm, however uncertain in amount,' that consists of more than nominal damages." *Id.* (quoting *Davies v. Krasna*, 121 Cal. Rptr. 705, 713, 535 P.2d 1161, 1169 (Cal. 1975)). Here, given the *Brooke* allegations of rapid sulfidation and property damage, it is implausible that damage from allegedly defective drywall installed

---

[6] The discovery rule in Alabama products liability law was voided when the Alabama Supreme Court declared a related portion of the statutory scheme containing the discovery rule to be unconstitutional. *See Ridling v. Armstrong World*, 627 F. Supp. 1057, 1061 (S.D. Ala. 1986) (discussing Ala. Code § 6-5-502).

before 2009 did not manifest until September 5, 2012. Plaintiffs' briefing suggests no reason to believe that that occurred for any California claimant.

The discovery rule has no relevance to any California claim because the California claimants failed to plead it in the *Brooke* complaint. To rely on the delayed accrual of the discovery rule, a plaintiff "must specifically plead facts" showing when and how they discovered the cause of action and that they were unable to discover the cause of action earlier despite reasonable diligence. *Fox v. Ethicon Endo-Surgery, Inc.*, 27 Cal. Rptr. 3d 661, 668, 110 P.3d 914, 920-21 (Cal. 2005); *see also Carter v. Amgen, Inc.*, 682 F. App'x 620, 620 (9th Cir. 2017) (citing *Fox* and affirming Rule 12(b)(6) dismissal of diversity action because plaintiff "did not show that her cause of action could not have been discovered earlier despite reasonable diligence"). Even if the discovery rule could apply, the PSC's excuses about board markings would be irrelevant because a plaintiff's inability to know the identity of the defendant does not postpone accrual of the cause of action. *Norgart v. Upjohn Co.*, 87 Cal. Rptr. 2d 453, 464, 981 P.2d 79, 89 (Cal. 1999).

### C.    Florida

The 838 Florida *Brooke* claims are time-barred because those claims were filed more than four years after the claimants discovered or should have discovered the facts giving rise to their claim that allegedly defective drywall caused damages. Fla. Stat. § 95.11(3) (2018); § 95.031(2)(b) (2018). A cause of action accrues when "the plaintiff either knows or should know that the last element of the cause of action occurred." *Davis v. Monahan*, 832 So. 2d 708, 709 (Fla. 2002). "The knowledge required to commence the limitation period [for a products liability action] does not rise to that of legal certainty." *Univ. of Miami v. Bogorff*, 583 So. 2d 1000, 1004 (Fla. 1991). Rather, all that is required is "notice, through the exercise of reasonable diligence, of the possible invasion of [plaintiffs'] legal rights." *Id.* Courts have interpreted this to mean that "the statute of limitations on a products liability action begins to run when a plaintiff: (1) knows that he was

injured, *and* (2) has notice of a possible connection between his injury and the product at issue." *E.g.*, *Clements v. 3M Elec. Monitoring*, 2017 U.S. Dist. LEXIS 200825, at \*4 (M.D. Fla. June 29, 2017). Plaintiffs' complaint alleges that the drywall caused "rapid sulfidation and damage to personal property," Compl. ¶ 21, so Plaintiffs knew of their alleged injuries before 2011. The widespread news coverage beginning in 2008—especially in Florida—of the effects of defective drywall gave Florida claimants at least constructive notice of at least the *possible* connection between their property damage and the drywall. And most claimants likely had actual notice. For example, claimant Peninsula Club II knew about damage from defective drywall in 2009 and remediated over 200 units.

### D.      Georgia

The 37 Georgia *Brooke* claims are time-barred because those claims were filed more than four years after damage from drywall must have manifested. *See* Ga. Code Ann. § 9-3-30(a) (2018); *see also Daniel v. Am. Optical Corp.*, 251 Ga. 166, 168, 304 S.E.2d 383, 385 (1983) (holding that the application of statutes of limitations "is determined by the nature of the injury sustained rather than the legal theory underlying the claim for relief"). All causes of action for property damage against a manufacturer whose product was incorporated into real property "accrued upon substantial completion of the project." *Colormatch Exteriors v. Hickey*, 275 Ga. 249, 253, 569 S.E.2d 495, 498 (2002). Given the importation of Taishan drywall in 2006 and 2007, all of the *Brooke* properties would have been completed much earlier than September 2011. Plaintiffs' briefing suggests no reason to believe otherwise for any Georgia claimant.

The discovery rule is irrelevant to the Georgia claims because Georgia applies no discovery rule for property damage. *Corp. of Mercer Univ. v. Nat'l Gypsum Co.*, 258 Ga. 365, 366, 368 S.E.2d 732, 733 (1988); *Stamschror v. Allstate Ins. Co.*, 267 Ga. App. 692, 693, 600 S.E.2d 751, 752 (2004) ("The 'discovery rule' is confined to cases of bodily injury and does not apply to

actions seeking recovery for property damage only."); *Hanna v. McWilliams*, 213 Ga. App. 648, 650, 446 S.E.2d 741, 743 (1994) (holding that a cause of action for damage to personal property accrues upon injury). "[I]gnorance of facts constituting a cause of action does not prevent the running of the statute of limitation." *DeKalb Cty. v. C.W. Matthews Contracting Co.*, 254 Ga. App. 246, 248, 562 S.E.2d 228, 230 (2002) (concluding that injury occurred and, thus, cause of action accrued when pipe was punctured even though plaintiff did not discover the puncture until years later). Thus, under Georgia law, the Court can and must ignore the PSC's excuses about board markings and alleged delay in discovering the identity of the drywall manufacturer.

### E.    Illinois

The two Illinois *Brooke* claims are time-barred because those claims were filed more than five years after damage from drywall must have manifested. *See* 735 Ill. Comp. Stat. Ann. 5/13-205 (2018). "A cause of action for property damages normally accrues on the date of injury." *Pratt v. Sears Roebuck & Co.*, 390 N.E.2d 471, 474 (Ill. App. 1979) (affirming dismissal of time-barred property-damage action against water heater manufacturer). Here, given the *Brooke* allegations of rapid sulfidation and property damage, it is implausible that damage from allegedly defective drywall installed before 2009 did not manifest until September 5, 2010. Plaintiffs' briefing suggests no reason to believe that manifestation was delayed for any Illinois claimant.

Although Illinois has a general discovery rule that postpones the limitations period until a claimant knows or should know of injury and that it was wrongfully caused, *Knox Coll. v. Celotex Corp.*, 430 N.E.2d 976, 979 (Ill. 1981), that rule has no relevance here because the *Brooke* complaint does not invoke it as required by Illinois law. "The discovery doctrine is an exception to the general rule, and, as such, the plaintiff must bring himself within the intent of the rule." *Freeport Mem'l Hosp. v. Lankton, Ziegele, Terry & Assocs., Inc.*, 525 N.E.2d 194, 198 (Ill. App. 1988). Having filed the *Brooke* complaint many years after the operative events in this litigation,

and many years after thousands of litigants filed identical complaints, these claimants failed to meet the requirement to "allege facts showing that the cause of action was not and could not have been discovered through the exercise of due diligence." *Id.* at 199 (affirming the grant of motion to dismiss based on statute of limitations).

Even if the discovery rule could apply here, the claimants had at least constructive notice based on widespread media coverage of Chinese drywall more than five years before September 2015. *See Carey v. Kerr-McGee Chem. Corp.*, 999 F. Supp. 1109, 1117 (N.D. Ill. 1998) (holding that "pervasive media coverage and publicity" surrounding a cause of action commences the statute of limitations, even in the absence of actual knowledge of the claim); *see also In re Vioxx Prods. Liab. Litig.*, 522 F. Supp. 2d 799, 814 (E.D. La. 2007) (applying Illinois law to dismiss product claims as time-barred based on "national and local media coverage").

### F.    Louisiana

The 150 Louisiana *Brooke* claims are time-barred because those claims were filed more than one year after the claimants acquired, or should have acquired, knowledge of the damage. La. Civ. Code art. 3493 (2018); *see also Tilley v. Kennedy*, 605 So. 2d 226, 228 (La. App. 1992) (holding that a "claim by a homeowner against a manufacturer of defective sheetrock mud used by a contractor is subject to the one-year prescriptive period of Art. 3493"). Louisiana courts have held that "prescription will not run against one who is ignorant of the facts upon which his cause of action is based, as long as such ignorance is not 'willful, negligent or unreasonable.'" *Id.* (quoting *In re Med. Review Panel of Howard*, 573 So. 2d 472, 474 (La. 1991)).

But "[w]hen a party has enough notice to excite attention, put him on guard, and call for inquiry, he has sufficient knowledge to start the running of prescription." *Id.* (affirming dismissal of property damage claim). "When prescription begins to run depends on the reasonableness of a plaintiff's action or inaction." *Id.* A claimant's ignorance is not reasonable when there has been

"extensive media coverage" about a product and its possible defects. *In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 982 F. Supp. 388, 396 (E.D. La. 1997); *see also Hosp. Serv. Dist. No. 1 v. Alas*, 657 So. 2d 1378, 1383 (La. App. 1995) (holding that "a plaintiff will be deemed to know that which he could have learned from reasonable diligence"). "[A] plaintiff bears the responsibility to reasonably inquire into a possible injury he may have sustained" and to "seek[ ] out those whom he believes may be responsible." *Asbestos v. Bordelon, Inc.*, 726 So. 2d 926, 975 (La. App. 1998). Thus, the *Tilley* court held that the one-year prescriptive period began to run when the homeowners learned from a paint contractor that their property damage was caused by the defendant's sheetrock product, which barred their property damage claim. 605 So. 2d at 228.

Here, given the *Brooke* allegations of rapid sulfidation and property damage, the damage from allegedly defective drywall installed years ago would have been recognized immediately and well before 2014. Neither the *Brooke* complaint nor the PSC's briefing alleges any specific facts to support the argument that drywall damage occurred any later. The widespread news coverage beginning in 2008 of the effects of defective drywall then gave Louisiana claimants at least constructive notice of at least the connection between their property damage and the drywall much earlier than 2014.

### G. Mississippi

The 29 Mississippi *Brooke* claims are time-barred because those claims were filed more than three years after the first damage from drywall became apparent. *See* Miss. Code Ann. § 15-1-49 (2018). "Under § 15-1-49, a cause of action accrues when the plaintiff has knowledge of the injury, not knowledge of the injury and its cause." *Barnes ex. rel. Barnes v. Koppers, Inc.*, 534 F.3d 357, 361 (5th Cir. 2008); *accord Angle v. Koppers, Inc.*, 42 So. 3d 1, 5 (Miss. 2010). A claim based on damage to a house accrues when the occupants "first recognized" the damage, and "after the lapse of three years from the 'first visible and sensible appearance of the injury,' their

action is barred." *City of Tupelo v. O'Callaghan*, 208 So. 3d 556, 571-72 (Miss. 2017) (quoting *Seven Lakes Reservoir Co. v. Majors*, 69 Colo. 590, 595, 196 P. 334, 336 (1921)).

Here, given the *Brooke* allegations of rapid sulfidation and property damage, the damage from allegedly defective drywall installed years ago would have been recognized immediately and well before 2012. Neither the *Brooke* complaint nor the PSC's briefing alleges any specific facts to support the argument that drywall damage occurred any later. *See Boettcher v. Conoco Phillips, Co.*, 721 F. App'x 823, 824 (10th Cir. 2018) (affirming Rule 12(b)(6) dismissal because plaintiff's "complaint did not contain facts sufficient to demonstrate a basis for tolling the applicable statute of limitations").

### H.     North Carolina

The three North Carolina *Brooke* claims are time-barred because those claims were filed more than three years after the first damage from drywall became apparent. *See* N.C. Gen. Stat. § 1-52(16) (2018). Under that statute, a cause of action for property damage accrues when the injury "becomes apparent or ought reasonably to have become apparent to the claimant." *Id.* In North Carolina, as soon as "some physical damage has been discovered the injury springs into existence and completes the cause of action." *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 69 N.C. App. 505, 509, 317 S.E.2d 41, 43 (1984) (limitations period triggered by first leak of allegedly defective roof). The limitations period does not wait for claimants to get an "inspection report" or otherwise discover the cause of their injury. *See id.* "[W]hether a plaintiff 'discovered or ought reasonably to have discovered' damages is a question of law to be determined by the Court." *Id.* at 508, 317 S.E.2d at 43.

Here, given the *Brooke* allegations of rapid sulfidation, the damage from allegedly defective drywall installed years ago would have occurred immediately and before 2012. Neither the *Brooke* complaint nor the PSC's briefing alleges any specific facts to support the argument that

drywall damage occurred any later. *See Boettcher v. Conoco Phillips, Co.*, 721 F. App'x 823, 824 (10th Cir. 2018) (affirming Rule 12(b)(6) dismissal because plaintiff's "complaint did not contain facts sufficient to demonstrate a basis for tolling the applicable statute of limitations").

### I.     Oklahoma

The two Oklahoma *Brooke* claims are time-barred because those claims were filed more than two years after the first damage from drywall occurred. *See* Okla. Stat. tit. 12, § 95(A)(3) (2018). In Oklahoma, the "discovery rule" applies to only discovery of the injury, so that "the limitations period does not begin to run until the date the plaintiff knew or should have known of the injury." *Samuel Roberts Noble Found., Inc. v. Vick*, 1992 OK 140, ¶ 22, 840 P.2d 619, 624. It is not necessary for a plaintiff to know the reason behind the injury before the statute of limitations can begin to run. *See id.* at ¶ 31, 840 P.2d at 626 ("It is uncontroverted that the defects in the building began to appear almost immediately. Even though there was some uncertainty as to the reasons for the problem, the observation of doors sticking and tiles popping off alerted the Foundation that a problem existed."). The Oklahoma Supreme Court has specifically rejected the PSC's argument that "uncertain[ty] as to who was responsible for the defects" has any relevance to the limitations period. *Id.* at ¶ 27, 840 P.2d at 625.

Here, given the *Brooke* allegations of rapid sulfidation and property damage, the damage from allegedly defective drywall would have occurred immediately and well before 2013. Neither the *Brooke* complaint nor the PSC's briefing alleges any specific facts to support the argument that drywall damage occurred any later for either Oklahoma claimant. *See Boettcher v. Conoco Phillips, Co.*, 721 F. App'x 823, 824 (10th Cir. 2018) (applying Oklahoma law and affirming Rule 12(b)(6) dismissal because plaintiff's "complaint did not contain facts sufficient to demonstrate a basis for tolling the applicable statute of limitations").

### J.      Texas

The two Texas *Brooke* claims are time-barred because those claims were filed more than two years after the first damage from drywall occurred. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (2017). In Texas, a cause of action based on property damage accrues when the property owner "first experienced and discovered" the "injury" to property. *Dalon v. Desoto*, 852 S.W.2d 530, 533 (Tex. Ct. App. 1992). Here, given the *Brooke* allegations of rapid sulfidation and property damage, the damage from allegedly defective drywall first occurred when the drywall was installed before 2010. Plaintiffs' briefing suggests no reason to believe that drywall damage occurred any later for any Texas claimant.

The discovery rule is irrelevant for Texas claimants because rapid sulfidation from allegedly defective drywall is not "inherently undiscoverable" as required by Texas law. *HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998) (holding that, for the discovery rule to apply, "the nature of the injury must be inherently undiscoverable"). Whether an injury is inherently undiscoverable is a legal question "decided on a categorical rather than case-specific basis; the focus is on whether a *type* of injury rather than a *particular* injury was discoverable." *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 314 (Tex. 2006). "An injury is inherently undiscoverable if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence." *S.V. v. R.V.*, 933 S.W.2d 1, 7 (Tex. 1996).

The drywall damages here are not inherently difficult for property owners to discover; indeed, thousands of claimants actually did discover those damages and brought suit as early as 2009. The widespread media attention starting even earlier further shows that those damages were discoverable, and that a discovery rule does not apply here. *See Crofton v. Amoco Chem. Co.*,  1999 Tex. App. LEXIS 9126, at *14-15 (Ct. App. Dec. 9, 1999) (holding claims were not inherently undiscoverable due to various area newspaper articles regarding basis of claim despite

claimants' objections that they were not aware of the media coverage); *accord Hues v. Warren Petroleum Co.*, 814 S.W.2d 526, 529 (Tex. Ct. App. 1991) (holding discovery rule inapplicable because plaintiffs were put on notice of the claim by "a great deal of [media] coverage").

And even if the discovery rule could apply, the Court should ignore the PSC's excuses about board markings and knowledge of particular manufacturers because the discovery rule "tolls limitations only until a claimant learns of a wrongful injury . . . even if the claimant does not yet know[ ] the specific cause of the injury; the party responsible for it; [or] the full extent of it." *PPG Indus. v. JMB/Houston Ctrs. Ltd. P'ship*, 146 S.W.3d 79, 93-94 (Tex. 2004); *accord Childs v. Haussecker*, 974 S.W.2d 31, 40 (Tex. 1998) (once the injury is discovered, "limitations commences, even if the plaintiff does not know the exact identity of the wrongdoer").

### K.      Virginia

The 30 Virginia *Brooke* claims are time-barred because those claims were filed more than five years after the first damage from drywall occurred. *See* Va. Code Ann. § 8.01-243(B) (2018) (action for injury to property). In Virginia, a cause of action accrues "from the date the injury is sustained . . . and not when the resulting damage is discovered." Va. Code Ann. § 8.01-230 (2018). Here, given the *Brooke* allegations of rapid sulfidation and property damage, the damage from allegedly defective drywall actually occurred when the drywall was installed before 2010. Plaintiffs' briefing suggests no reason to believe that drywall damage occurred any later for any Virginia claimant.

The discovery rule is irrelevant because Virginia courts refuse to apply a discovery rule in tort cases like these. *See Comptroller of Va. ex rel. Va. Military Inst. v. King*, 217 Va. 751, 759, 232 S.E.2d 895, 900 (1977). In such cases, "the applicable period of limitation begins to run from the moment the cause of action arises rather than from the time of discovery of injury or damage." *Id.*; *accord Smithfield Packing Co. v. Dunham-Bush, Inc.*, 416 F. Supp. 1156, 1162 (E.D. Va.

1976) ("Virginia has followed religiously the rule that the limitation statute is triggered when the harm is done and not when the plaintiff discovers the injury."). Thus, the Court should ignore the PSC's excuses about board markings because, in Virginia, any alleged "difficulty in ascertaining the existence of a cause of action is irrelevant." *King*, 217 Va. at 759, 232 S.E.2d at 900 (citing *Housing Auth. v. Laburnum Corp.*, 195 Va. 827, 838, 80 S.E.2d 574, 580-81 (1954)).

## VI.   ALTERNATIVELY, THE COURT SHOULD ORDER EACH *BROOKE* PLAINTIFF TO ALLEGE A VALID BASIS FOR DELAYED ACCRUAL.

If the Court is not inclined to grant the motion to dismiss, the Court should require each claimant to specifically allege case-specific facts of accrual and notice, as Plaintiffs themselves have suggested. *See* Rec. Doc. 21767-2 at 11 ("At the very least, each plaintiff should be afforded the opportunity to come forward with case-specific allegations and/or evidence to establish notice and accrual for prescription purposes . . . ."); Rec. Doc. 21963 at 1 n.3 (asserting that "plaintiffs are entitled and will, if necessary under the discovery rule, present additional allegations in a formal filing"). The Court should then limit initial *Brooke* discovery to the statute-of-limitations issues for those few claimants with plausible timeliness allegations and dismiss the rest.

Dated: January 18, 2019

Respectfully submitted,

/s/ *Michael P. Kenny*
Michael P. Kenny, Esq.
Georgia Bar No. 415064
Bernard Taylor, Esq.
Georgia Bar No. 669625
Christina Hull Eikhoff, Esq.
Georgia Bar No. 242539
David Venderbush, Esq.
New York Bar No. 2920817
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
Phone: (404) 881-7000

Fax: (404) 881-7777
mike.kenny@alston.com
*Counsel for Taishan Gypsum Co., Ltd. And Tai'an*
*Taishan Plasterboard Co., Ltd.*

Alan Dean Weinberger
LA Bar No. 13331
HANGARTNER, RYDBERG & TERRELL, LLC
One Shell Square
701 Poydras St., Suite 310
New Orleans, Louisiana 70179
Phone: (504) 434-6815
Fax: (504) 522-5689
aweinberger@hanrylaw.com
*Local Counsel for Taishan Gypsum Co., Ltd. And*
*Tai'an Taishan Plasterboard Co., Ltd.*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, by U.S. mail and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 18th day of January, 2019.

<u>Michael P. Kenny, Esq.</u>
Georgia Bar No. 415064
ALSTON & BIRD LLP
1201 West Peachtree Street NW
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
mike.kenny@alston.com
*Counsel for Taishan*