UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION<br><br>**THIS DOCUMENT RELATES TO:**<br><br>*Brooke et al. v. State-Owned Assets Supervision and Administration Commission of the State Council, et al.,* **Case No. 15-4127 (E.D. La.);**<br><br>*Brooke et al. v. State-Owned Assets Supervision and Administration Commission of the State Council, et al.,* **Case No. 15-6631 (E.D. La.); 15-cv-24348 (S.D. Fl.);**<br><br>*Brooke et al. v. State-Owned Assets Supervision and Administration Commission of the State Council, et al.,* **Case No. 15-6632 (E.D. La.); 15-cv-506 (E.D. Va.).** | MDL No. 2:09-md-2047<br><br>SECTION L<br><br>JUDGE ELDON E. FALLON<br><br>MAGISTRATE JUDGE JOSEPH C. WILKINSON, JR. |

**BNBM GROUP AND BNBM PLC'S SUPPLEMENTAL BRIEF REGARDING TOLLING ISSUES IN SUPPORT OF MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

ARGUMENT ......................................................................................................................... 3

I.     THE STATUTES OF LIMITATIONS GOVERNING THE ASSERTED
       CLAIMS ..................................................................................................................... 3

II.    CLASS ACTION TOLLING DOES NOT SAVE THE UNTIMELY *BROOKE*
       CLAIMS ..................................................................................................................... 4

       A.    The Jurisdictions at Issue Do Not Recognize Cross-Jurisdictional Tolling .......... 5

       B.    *Silva* Does Not Toll the Claims of Louisiana Property Owners ......................... 13

III.   THE DISCOVERY RULE DOES NOT PRECLUDE THE STATUTES OF
       LIMITATIONS FROM ACCRUING SINCE A REASONABLE PERSON
       WOULD HAVE TIMELY DISCOVERED THE CAUSE OF ACTION ...................... 15

       A.    The Discovery Rule Requires Reasonable Diligence .......................................... 16

       B.    Under a Reasonable Person Standard, the *Brooke* Plaintiffs Did Not Act
             Diligently ....................................................................................................... 18

       C.    Alabama, Georgia, and Virginia Property Owners' Claims Should Be
             Dismissed Because Those States Do Not Recognize the Discovery Rule........... 22

IV.    THE *BROOKE* PLAINTIFFS ARE NOT ENTITLED TO THE
       EXTRAORDINARY REMEDY OF EQUITABLE TOLLING BECAUSE
       BNBM HAS NOT CONCEALED ANY FACTS .......................................................... 22

CONCLUSION ..................................................................................................................... 25

## **TABLE OF AUTHORITIES**

**Cases**

*Andersson Gustafsson Advokatbyra KB v. eScrub Sys., Inc.*,
    2011 WL 3954878 (E.D. Va. Sept. 7, 2011)................................................................22

*Angle v. Koppers, Inc.*,
    42 So.3d 1 (Miss. 2010).............................................................................................19

*In re Atlas Roofing Corp. Chalet Single Prods. Liab.*,
    2018 WL 3497153 (July 20, 2018) ......................................................................23, 24

*Becnel v. Deutsche Bank, AG*,
    507 F. App'x 71 (2d Cir. 2013) ...................................................................................5

*Bell v. Showa Denko K.K.*,
    899 S.W.2d 749 (Tex.App.1995)...............................................................................12

*Bennett v. Advanced Cable Contractors, Inc.*,
    2012 WL 1600443 (N.D. Ga. May 7, 2012) ..............................................................24

*Bennett v. Gen. Motors Corp.*,
    420 So. 2d 531 (La. Ct. App. 1982)....................................................13, 17, 19, 24

*Bernson v. Browning–Ferris Industries of Cal., Inc.*,
    873 P.2d 613 (Cal. 1994) ...........................................................................................19

*Birchwood-Manassas Assocs., L.L.C. v. Birchwood at Oak Knoll*,
    773 S.E.2d 162 (Va. 2015).................................................................................22, 25

*Boone v. Citigroup, Inc.*,
    416 F.3d 382 (5th Cir. 2005) ...............................................................................6, 11

*Bozeman v. Lucent Techs., Inc.*,
    2005 WL 2145911 (M.D. Ala. Aug. 31, 2008)..................................................5, 7 8, 9

*In re BP p.l.c. Sec. Litig.*,
    51 F. Supp. 3d 693 (S.D. Tex. 2014) ...........................................................8, 9, 23, 24

*Casey v. Merck & Co., Inc.*,
    722 S.E.2d 842 (Va. 2012)..................................................................................7, 22, 25

*Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Fin. Corp.*,
    878 F. Supp. 2d 1009 (C.D. Cal. 2011) .....................................................................10

*Chaverri v. Dole Food Co.*,
   546 F. App'x. 409 (5th Cir. 2013) ........................................................................6

*City of Riviera Beach v. Reed*,
   987 So. 2d 168 (Fla. Dist. Ct. App. 2008) .......................................................18

*City of Tupelo v. O'Callaghan*,
   208 So.3d 556 (Miss. 2017) ...............................................................................18

*Clemens v. DaimlerChrysler Corp.*,
   534 F.3d 1017 (9th Cir. 2008) ...................................................................5, 9, 10

*Cochran v. Smith & Nephew, Inc.*,
   260 F. Supp. 3d 979 (C.D. Ill. 2017) ................................................................18

*Corp. of Mercer Univ. v. Nat'l Gypsum Co.*,
   368 S.E.2d 732 (Ga. 1988) .................................................................................22

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
   2015 WL 3988488 (N.D. Ill. June 29, 2015) .............................................5, 6, 7, 10

*In re Deepwater Horizon*,
   808 F.Supp.2d 943 (E.D. La. 2011) ..................................................................16

*DGB, LLC v. Hinds*,
   55 So. 3d 218 (Ala. 2010) ............................................................................22, 24

*Edelson PC v. Bandas Law Firm PC*,
   2018 WL 3496085 (N.D. Ill. Feb. 6, 2018) ........................................................6

*Edmundson v. Amoco Prod. Co.*,
   924 F.2d 79 (5th Cir. 1991) ...............................................................................17

*Exxon Corp. v. Emerald Oil & Gas Co., L.C.*,
   348 S.W.3d 194 (Tex. 2011) ..............................................................................19

*Galvez v. Ford Motor Co.*,
   2018 WL 4700001 (E.D. Cal. Sept. 30, 2018) ..................................................10

*Gates v. Integris Baptist Med. Ctr. of Oklahoma, Inc.*,
   84 P.3d 115 (Okla. Civ. App. 2004) .................................................................12

*GLK, L.P. v. Four Seasons Hotel Ltd.*,
   22 So. 3d 635 (Fla. Dist. Ct. App. 2009) ..........................................................16

*Hicks v. City of Savannah*,
   2008 WL 2677128 (S.D. Ga. July 8, 2008) ........................................................6

*Iles v. State Farm Mut. Auto. Ins. Co.*,
 2018 WL 5816290 (La. App. 3 Cir. Nov. 7, 2018)................................................13

*Jacquez v. Compass Bank*,
 2016 WL 3017418 (W.D. Tex. May 24, 2016) ....................................................18

*Jenkins v. State Farm Fire & Cas. Co*,
 2017 Ill. App. Unpub. LEXIS 1210 (Ill. App. Ct. 2017) .......................................23

*Krause v. Textron Financial Corporation*,
 59 So. 3d 1085 (Fla. 2011)..................................................................................10

*In re Libor*,
 2015 WL 4634541 (S.D.N.Y. Aug. 4, 2015)......................................................8, 10

*Love v. Wyeth*,
 569 F. Supp. 2d 1228 (N.D. Ala. 2008).............................................................5, 9

*Marin v. Exxon MobileCorp.*,
 48 So. 3d 234 (La. 2010) ..............................................................................17, 19

*Masquat v. DaimlerChrylser Corp.*,
 195 P.3d 48 (Okla. 2008)....................................................................................23

*Matthews v. Sun Expl. & Prod. Co.*,
 521 So. 2d 1192 (La. Ct. App. 1988)...................................................................17

*Montegna v. Ocwen Loan Servicing, LLC*,
 2017 WL 4680168 (S.D. Cal. Oct. 18, 2017) .......................................................10

*Morris v. Margulis*,
 197 Ill. 2d 28 (Ill. 2001)......................................................................................23

*Nat'l Credit Union Admin. Bd. v. Bear, Stearns & Co.*,
 2013 WL 4736247 (D. Kan. Sept. 3, 2013) ........................................................10

*Newby v. Enron Corp.*,
 542 F.3d 463 (5th Cir. 2008) ...........................................................................7, 12

*Ottaviano v. Home Depot, Inc., USA*,
 701 F. Supp. 2d 1005 (N.D. Ill. 2010) ...............................................................8, 9

*Page v. Gulf Oil Co.*,
 812 F.2d 249 (5th Cir. 1987) ................................................................................8

*Patel v. Hill-Rom Co., Inc.*,
 2014 WL 12776814 (Miss. Cir. Ct. 2014) .......................................................16, 19

*Pierson v. Orlando Reg'l Healthcare Sys., Inc.*,
   2010 WL 1408391 (M.D. Fla. April 6, 2010)......................................................................25

*Portwood v. Ford Motor Co.*,
   701 N.E.2d 1102 (Ill. 1998)..............................................................................................6

*PSI Res., LLC v. MB Fin. Bank Nat'l Assoc.*,
   55 N.E.3d 186 (Ill. App. 1st 2016) ..................................................................................17

*Quinn v. Louisiana Citizens Prop. Ins. Corp.*,
   118 So. 3d 1011 (La. 2012) ..............................................................................................6

*Ramos v. Le*,
   2018 WL 6537026 (La. App. 4 Cir. Dec. 12, 2018).....................................................16, 19

*Rhynes v. Branick Mfg. Corp.*,
   629 F.3d 409 (5th Cir. 1980) ............................................................................................8

*S. Cent. Bell Tel. Co. v. Texaco, Inc.*,
   418 So. 2d 531 (La. 1982) ..............................................................................................17

*Samuel Roberts Noble Foundation, Inc. v. Vick*,
   840 P.2d 619 (Okla. 1992)..............................................................................................17

*Schmidt v. Household Finance Corp.*,
   661 S.E. 2d 834 (Va. 2008).............................................................................................23

*Seals v. Montgomery*,
   2010 WL 2000021 (M.D. Ga. April 5, 2010) ....................................................................6

*Soward v. Deutsche Bank AG*,
   814 F. Supp. 2d 272 (S.D.N.Y. 2011)................................................................................8

*Strata v. Patin*,
   545 So. 2d 1180 (La. Ct. App.)........................................................................................18

*Tessier v. Moffatt*,
   93 F. Supp. 2d 729 (E.D. La. 1998) ..................................................................................4

*U.S. for Use & Benefit of Canion v. Randall & Blake*,
   817 F.2d 1188 (5th Cir. 1987) ..........................................................................................4

*Vaught v. Showa Denko K.K.*,
   107 F.3d 1137 (5th Cir. 1997) .......................................................................................3, 12

*Ex parte VEL, LLC*,
   225 So. 3d 591 (Ala. 2016).............................................................................................23

*Via Net v. TIG Ins. Co.*,
   211 S.W.3d 310 (Tex. 2006)....................................................................................17, 18

*Vincent v. Money Store*,
   915 F. Supp. 2d 553 (S.D.N.Y. 2013)..........................................................................10

*In re Vioxx Prods. Liab. Litig.*,
   522 F. Supp. 2d 799 (E.D. La. 2007).....................................................................3, 8, 9

*In re Vioxx, Prods. Liab. Litig*,
   2007 WL 3334339 (E.D. La. Nov. 8, 2007) ...........................5, 7, 9, 17, 21, 22, 23

*Weatherly v. Pershing, LLC*,
   322 F. Supp. 3d 746 (N.D. Tex. 2018) ...........................................................................6

*West Brook Isles Partner's 1, LLC v. Commonwealth Land Title Ins. Co.*,
   163 So. 3d 635 (Fla. Dist. Ct. App. 2d 2015) ..................................................22, 25

*Wright v. U.S. Rubber Co.*,
   69 F. Supp. 621 (S.D. Iowa 1946) .................................................................................4

*Yi v. BMW of N. Am., LLC*,
   2018 WL 3359016 (C.D. Cal. May 24, 2018) .............................................................10

**Statutes**

33 U.S.C. § 2713 ...................................................................................................................16

Fla. Stat. Ann. § 95.051 (1) ................................................................................................25

Fla. Stat. Ann. § 95.031(2)(b) ...........................................................................................17

Fla. Stat. Ann. § 95.051 .......................................................................................................6

Fla. Stat. Ann. § 95.051(i) ..................................................................................................25

Fla. Stat. Ann. § 95.051(d) .................................................................................................25

Fla. Stat. Ann. § 95.051(g) .................................................................................................25

Fla. Stat. Ann. § 95.051(h) .................................................................................................25

Illinois Code Section 13-215 .............................................................................................23

La. Civ. Code Ann. art. 3492 .............................................................................................17

La. Code Civ. Proc. Ann. art. 596......................................................................................14

Miss Code Ann. § 15-1-49 ................................................................................................17

Miss Code Ann. § 15-1-67 ................................................................................................23

Miss. Code § 15-1-55 .......................................................................................................25

Miss. Code § 15-1-59 .......................................................................................................25

N.C. Gen. Stat. § 1-52 ......................................................................................................17

O.G.C.A. § 9-3-31 ............................................................................................................25

O.G.C.A. § 9-3-99 ............................................................................................................25

Okla. Stat. tit. 12 § 100 ....................................................................................................11

Tex. Bus & Com Code § 17.565 ......................................................................................23

Va. Code Ann. § 8.01-229(A)(2)(a) .................................................................................25

Va. Code Ann. § 8.01-229(A)(2)(b) .................................................................................25

Va. Code Ann. § 8.01-229(B) ..........................................................................................25

Va. Code Ann. § 8.01-229(K) ..........................................................................................25

**Rules**

California Rule of Court 8.1115 ........................................................................................10

**Treatises**

Wright & Miller, 6A Fed. Prac. & Proc. Civ. § 1501 (3d ed.) ..........................................4

**Articles**

Brian Skoloff, *Miami-based home builder Lennar says Chinese drywall in 400 homes*, South Florida Sun Sentinel (July 13, 2009) ................................................20

Consumer Protection, Product Safety, and Insurance Subcommittee, *Hearing on Health and Product Safety Issues Associated with Imported Drywall* (May 21, 2009) ...........................................................................................................................20

Dawn Kent Azok, *Over 400 Birmingham-area owners affected by Chinese-made drywall problem*, Birmingham News (Nov. 22, 2009) ...........................................20

Defective Drywall Information, Lee County Property Appraiser (Sept. 8, 2009) ........................20

Florida Attorney General, *How to Protect Yourself: Chinese Drywall* (posted Feb. 24, 2010) ................................................................................................................20

Imported Drywall Information, Louisiana Department of Health (originally posted June 10, 2009)...................................................................................................20

Julie Schmit and USA Today, *Drywall From China Blamed For Problems In Homes*, ABC News (March 16, 2009) .......................................................................19

Leslie Wayne, *Thousands of Homeowners Cite Drywall for Ills*, N.Y. Times (Oct. 7, 2009) ..................................................................................................................19

Press Release, *CPSC Identifies Manufacturers of Problem Drywall Made in China* (2010) ....................................................................................................20

Rebecca Mowbray, *Chinese Drywall Guidance Offered By National Association of Home Builders*, The Times-Picayune (March 18, 2010) ...................................19

Pursuant to this Court's November 13, 2018 order (Rec. Doc. 21914) and in response to the PSC's supplemental brief (Rec. Doc. 21963) ("PSC Supp. Br."), Defendants Beijing New Building Materials Public Limited Company ("BNBM PLC") and Beijing New Building Material (Group) Co., Ltd. ("BNBM Group") (collectively, "the BNBM Entities") respectfully submit this supplemental brief in support of their Motion to Dismiss (Rec. Doc. 19984).[1]

## INTRODUCTION

This Court's November 13, 2018, order inquired whether there is any basis for tolling the claims set forth in the three *Brooke* complaints.  The PSC's brief goes to great lengths to avoid offering a direct answer.  We provide it.  The answer is no.

None of the state laws at issue recognizes cross-jurisdictional tolling.  That means the only class action tolling available to Plaintiffs is that afforded by the filing of *state* class actions.  But as Plaintiffs readily admit, no class actions have been filed in any state other than Louisiana.  Thus, the only claims that could even conceivably be tolled are those of Louisiana property owners.

And even as to them, the *Silva* state class action complaints cited by the PSC do not bridge the temporal gap.  First, neither of the BNBM Entities were named as defendants in those actions.  Second, even if they were, any tolling ceased when *Silva* was settled, which resulted in expiration of Louisiana's one-year statute of limitations.  Third, *Silva* tolled claims only as to

---

[1] At issue is the BNBM Entities' motion to dismiss in *Brooke* Louisiana, Case No. 15-4127.  Rec. Doc. 19984-1. This Court's order extended the statute of limitations inquiry to all three *Brooke* complaints.  Rec. Doc. 21914 (citing Case Nos. 15-4127, 15-6631, 15-6632).  The PSC's brief identifies eleven states with active properties.  PSC Supp. Br. 2.  However, its addendum identifies only eight states, as did this Court's order.  Rec. Doc. 21914.  For the sake of completeness, the BNBM Entities address all states identified by the PSC.  In addition, they note that following the filing of the *Brooke* complaints, the PSC subsequently filed "protective actions" in various states naming plaintiffs also identified in the *Brooke* complaints.  Because the Court's ruling on these issues could have implications in those actions and others, the BNBM Entities have listed the actions identified by the PSC as implicated in Addendum B.

drywall supplied by Interior Exterior, but the PSC has made no showing that all Louisiana property owners in *Brooke* had their drywall supplied by Interior Exterior.

And so Plaintiffs take refuge in equitable tolling and the discovery rule.  Neither affords them any greater shelter.  As to the latter, the PSC continues to suggest that the inquiry is predicated upon the subjective understanding of each individual plaintiff.  It is not.  The inquiry is what plaintiffs knew or *should have known through reasonable diligence*.  Whatever difficulties that question may pose in other contexts, it is easily resolved here.  The Court need not speculate as to what similarly situated people would have done.  Its own docket supplies the answer: it shows what thousands of people *did do* represented by the same lawyers, having purchased the same drywall during the same time period, confronted by the same issue, and pursuing claims against the same defendants.  Even now, the PSC offers no reasonable explanation for why, with the exercise of reasonable diligence, the property owners in *Brooke* could not have discovered their claims until years after thousands of others did.

Plaintiffs are thus left to place their remaining eggs in the fraudulent concealment basket. This rarely invoked—and even more rarely deployed—exception applies where a defendant obstructs a plaintiff's ability to discover his or her cause of action or file suit.  Here, the PSC's contention centers entirely on the Defendants' post-litigation conduct following the filing of the *Amorin* complaints.  But, even accepting the PSC's contention as true, whatever supposed conduct stymied efforts to bring suit before 2011 has no bearing on the filing of *Brooke* four years later.  More to the point, the PSC identifies nothing the BNBM Entities did that precluded the Plaintiffs in *Brooke* from doing precisely what the Plaintiffs in *Amorin* did years earlier.

- 2 -

## ARGUMENT

Addressing the critical role statutes of limitations play in our system, this Court has explained, they serve to "'promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.'"  *In re Vioxx Prods. Liab. Litig.*, 522 F. Supp. 2d 799, 804 (E.D. La. 2007).  "The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Id.* at 804-05; *see also Vaught v. Showa Denko K.K.*, 107 F.3d 1137, 1142 (5th Cir. 1997) (noting that a "statute of limitations can operate to the detriment of both plaintiffs and defendants.  In essence, the statute is a compromise; on occasion, it can cause seemingly unfair results.")

The BNBM Entities move to dismiss the claims of *Brooke* property owners—claims that were brought years after their statute of limitations expired.  The PSC largely acknowledges as much and so asks that this Court either (1) extend the limitations period through tolling or (2) delay the accrual date by finding that none of the property owners could have discovered their claims, even with reasonable diligence, until many years after thousands of others did.  Rec. Doc. 21767-2.  Neither argument is availing.

### I.     The Statutes Of Limitations Governing The Asserted Claims.

Before this Court can address either argument, it must first ascertain the statute of limitations applicable to each claim.  That requires determining which state's choice-of-law rules and, in turn, which state's substantive laws apply to the claims.  Because the Court's November 13, 2018, Order recognizes that it must "apply the substantive law of the jurisdiction in which the affected properties are situated" (Rec. Doc. 21914 at 1), we set forth in Addendum A the statute

of limitations for each cause of action under the law of the respective states where the affected properties are located. As the Addendum reflects, those jurisdictions largely apply a statute of limitations of two to four years for the common law causes of action.[2]

## II. Class Action Tolling Does Not Save The Untimely *Brooke* Claims.

The *Brooke* claims are presumptively time-barred. *Brooke* Louisiana was filed on September 4, 2015—many years (and, in some cases, nearly a decade) after the drywall at issue was imported and installed (which occurred, by the PSC's admission, between 2005 and 2008).[3] *Brooke* Florida and Virginia were filed even later—on November 23, 2015. Ditto for the "protective" actions and complaints in intervention, which continue to be filed to this day. *U.S. for Use & Benefit of Canion v. Randall & Blake*, 817 F.2d 1188, 1192 (5th Cir. 1987) (noting "unanimous agreement" that "the filing of the motion for intervention … determines the commencement of the action for purposes of the statute of limitations").[4] Accordingly, even taking the latest possible accrual date (2008) and the earliest *Brooke*-related filing date

---

[2] A primary basis of the BNBM Entities' Motion is that the *Brooke* complaint fails to state a claim for many of the asserted causes of action (regardless of compliance or non-compliance with the applicable statute of limitations) and as such, those causes of action are subject to dismissal even under the laws of states that afford a longer prescription period. In addition, BNBM respectfully maintains its suggestion that the claims of the Florida and Virginia *Brooke* Plaintiffs should be resolved on remand to those courts. Rec. Doc. 21801-2 at 7 n.2.

[3] Dec. 18, 2018 Hearing Transcript, *Amorin v. Taishan Gypsum*, No. 2:11-cv-377, at 9 (E.D. Va.).

[4] Courts generally apply the relation-back doctrine to determine whether complaints in intervention or amended complaints may piggyback off of an original complaint's filing date for statute of limitations purposes. *See, e.g.*, *Tessier v. Moffatt*, 93 F. Supp. 2d 729, 736 (E.D. La. 1998); *see also Wright v. U.S. Rubber Co.*, 69 F. Supp. 621, 624 (S.D. Iowa 1946) ("it is a general rule that the date of the filing of a petition of intervention is the commencement of a new cause of action, and its filing is treated as of the date of the commencement of the intervening action"). Where, however, a new plaintiff is added, the claim will not relate back unless the new plaintiff is the real party-in-interest. *Tessier*, 93 F. Supp. 2d at 736; *see also* Wright & Miller, 6A Fed. Prac. & Proc. Civ. § 1501 (3d ed.) ("an amendment that seeks to add a new plaintiff who asserts an entirely different claim will not relate back"). That is not the case here. Accordingly, the statutes of limitations for the intervention complaints must be evaluated based on when *they* were filed, not the original *Brooke* complaints.

(September 2015), Plaintiffs would need a seven year statute of limitations for their claims to survive.  Recognizing as much, the PSC turns to tolling, but that does not advance its cause.

### A.  The Relevant Jurisdictions Do Not Recognize Cross-Jurisdictional Tolling.

As the PSC itself recognizes, *none* of the at-issue states has adopted cross-jurisdictional tolling and certain states do not recognize class action tolling *at all*.  PSC Supp. Br. 8-15.  For ease of reference, we summarize the relevant state laws on class action tolling as follows:

| State | Permits Class Action Tolling? | Approved Cross-Jx Tolling? | Legal Authority |
|-------|------|------|-----------------|
| Alabama | Yes. | No | *Love v. Wyeth*, 569 F. Supp. 2d 1228, 1235-1236 (N.D. Ala. 2008) (Alabama plaintiff cannot rely on putative class action filed in another state to toll statute of limitations); *Bozeman v. Lucent Techs., Inc.*, 2005 WL 2145911 at *2 (M.D. Ala. Aug. 31, 2008) (noting that "Plaintiffs have not cited any binding case law that requires this court to toll" Alabama state law claims based on earlier filed New Jersey federal class action). |
| California | No. | No. | *In re Vioxx Prods. Liab. Litig.*, 2007 WL3334339 at *5 (E.D. La. Nov. 8, 2007) ("[t]he California Supreme court has rejected the application of *American Pipe* tolling in mass-tort personal injury cases");[5] *see also Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025 (9th Cir. 2008) ("The weight of authority and California's interest in managing its own judicial system counsel us not to import the doctrine of cross-jurisdictional tolling into California law."); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 2015 WL 3988488, at *31 (N.D. Ill. June 29, 2015) (same, citing *Clemens*). |
| Florida | No. | No. | *Becnel v. Deutsche Bank, AG*, 507 F. App'x 71, 73 (2d Cir. 2013) ("Florida does not allow tolling during the pendency of class action lawsuits no matter where they are filed.") (citing Fla. Stat. § 95.051(2) (2012)); |

---

[5] If the PSC were to assert this is a property damages (rather than personal injuries) case, even under a liberal reading of California law, that contention would have to apply to all requests for damages—e.g., alternative living expenses, loss of use and enjoyment, foreclosure/short sale costs—to allow for class action tolling.

- 5 -

| State | Permits Class Action Tolling? | Approved Cross-Jx Tolling? | Legal Authority |
|---|---|---|---|
| | | | *Weatherly v. Pershing, LLC*, 322 F. Supp. 3d 746, 750 (N.D. Tex. 2018) (noting that Section 95.051 of the Florida Statutes "'delineates an *exclusive* list of conditions' that can toll the running of the statute of limitations" and thus concluding that "[b]ased on the clear language of the Florida Statutes, this Court holds that *American Pipe* tolling does not apply to Florida state law claims"); *see also In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 2015 WL 3988488, at *31 (N.D. Ill. June 29, 2015) (MDL court concluding that "Florida does not allow *American Pipe* tolling at all, let alone in a cross-jurisdictional setting"). |
| Georgia | Yes. | No. | While Georgia allows for class action tolling, no cases approve cross-jurisdictional tolling. *Seals v. Montgomery*, 2010 WL 2000021 at *3 (M.D. Ga. April 5, 2010) ("Georgia's non-statutory doctrine of equitable tolling is extremely limited, the only discussion of which involves the protection of individual class members rights should certification of a class be denied."); *Hicks v. City of Savannah*, 2008 WL 2677128, at *2 (S.D. Ga. July 8, 2008) (same). |
| Illinois | Yes. | No. | *Portwood v. Ford Motor Co.*, 701 N.E.2d 1102, 1103-05 (Ill. 1998) ("we believe it would be unwise to adopt a policy basing the length of Illinois limitation periods on the federal courts' disposition of suits seeking class certification" and thus we "reject[] cross-jurisdictional tolling"); *Edelson PC v. Bandas Law Firm PC*, 2018 WL 3496085, at *6 (N.D. Ill. Feb. 6, 2018) ("Illinois does not recognize 'cross-jurisdictional tolling' for class actions originally filed in federal court that parties later seek to bring in state court"). |
| Louisiana | Yes. | No. | *Quinn v. Louisiana Citizens Prop. Ins. Corp.*, 118 So. 3d 1011, 1020 (La. 2012); *Chaverri v. Dole Food Co.*, 546 F. App'x. 409, 414 (5th Cir. 2013) (state law claims prescribed because Louisiana does not recognize "cross-jurisdictional tolling"); *see also* BNBM Entities' Reply (Rec. Doc. 21801-2) at 6-7. |
| Miss. | No. | No. | *Boone v. Citigroup, Inc.*, 416 F.3d 382, 393 (5th Cir. 2005) ("[M]ississippi does not have class actions and we are cited to no Mississippi court decision applying class action tolling to a Mississippi law cause of action |

| State | Permits Class Action Tolling? | Approved Cross-Jx Tolling? | Legal Authority |
|---|---|---|---|
| | | | allegedly barred by a Mississippi statute of limitations."). |
| North Carolina | Yes. | No. | *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 2015 WL 3988488, at *31 (N.D. Ill. June 29, 2015) ("North Carolina has [not] considered the issue of cross-jurisdictional tolling … This Court likewise refuses to import cross-jurisdictional tolling into the laws of a state that has not addressed the issue.") |
| Oklahoma | Yes. | No. | Defendants are unaware of any Oklahoma decision approving cross-jurisdictional tolling. |
| Texas | Yes. | No. | *Newby v. Enron Corp.*, 542 F.3d 463, 472 (5th Cir. 2008) ("Texas courts have not extended [*American Pipe* tolling] to allow a federal class action to toll a state statute of limitations."); *In re Vioxx*, 2007 WL3334339 at *3 (noting that "Texas has not explicitly adopted cross-jurisdictional tolling"). |
| Virginia | No. | No. | *Casey v. Merck & Co., Inc.*, 722 S.E.2d 842, 845 (Va. 2012) ("there is no authority in Virginia jurisprudence for the equitable tolling of a statute of limitations based upon the pendency of a putative class action in another jurisdiction"). |

Forced to acknowledge that the relevant states have not adopted cross-jurisdictional tolling, the PSC all but asks the Court to proactively expand the states' laws to provide for it. In so doing, the PSC suggests the Court should be comforted by the fact that other states—*none of which is at issue here*—have done so. PSC Supp. Br. (Rec. Doc. 29163) at 4 - 6 (referring to cases citing tolling decisions from Delaware, Missouri, Montana, New Jersey, and the Eighth Circuit Court of Appeals). But federal courts specifically reject expansion of cross-jurisdictional tolling without explicit authority from state courts or statutes. *See Wade v. Danek Medical, Inc.*, 182 F.3d 281, 287 (4th Cir. 1999); *Bozeman*, 2005 WL 2145911 at *3. And the Fifth Circuit, in particular, is unconcerned with what rules states irrelevant to the litigation have adopted or even

"trends" around the country.[6]  As this Court has explained, the Fifth Circuit looks solely to the state laws *at issue* and precludes courts from "presumptuously affect[ing] a 'substantive innovation' on behalf of … states by expanding upon their limited class action tolling holdings."[7] *In re Vioxx*, 522 F. Supp. 2d at 806 (quoting *Rhynes v. Branick Mfg. Corp*., 629 F.2d 409, 410 (5th Cir. 1980)).[8]

Equally unavailing (as a basis for expanding state class tolling rules) is the PSC's invocation of the Class Action Fairness Act ("CAFA").  True, CAFA was designed to "facilitate the adjudication of multi-state class actions in federal court," PSC Supp. Br. 7, but that says nothing about whether it simultaneously intended to undercut state statutes of limitations.[9]  It did not.  Indeed, post-CAFA, federal courts exercising diversity jurisdiction continue to faithfully honor state statutes of limitations and tolling laws.  *See e.g. In re BP p.l.c. Secs. Lit.*, 51 F. Supp. 3d at 699 ("'In diversity cases, of course, federal courts apply state statutes of limitations and

---

[6] Whatever gloss activist courts inclined to expand state cross-jurisdictional tolling laws have employed, these decisions can hardly be viewed as definitive statements of "trends" given that numerous courts have arrived at the opposite conclusion.  *See, e.g., In re BP p.l.c. Sec. Litig.*, 51 F. Supp. 3d 693, 700 (S.D. Tex. 2014) ("the Court's review of case law in other jurisdictions suggests that cross-jurisdictional tolling is a controversial doctrine, and has, to date, been accepted by few states"); *Soward v. Deutsche Bank AG*, 814 F.Supp.2d 272, 281 (S.D.N.Y. 2011) ("Of the federal courts that have considered [cross jurisdictional tolling], most have refused to extend the doctrine into a state that has yet to consider it.").

[7] In this regard, the district court's statements in *In re Libor*—presuming states would adopt cross-jurisdictional tolling—are diametrically opposed to Fifth Circuit law embracing judicial restraint. 2015 WL 4634541 at *130 (S.D.N.Y. Aug. 4, 2015).  Moreover, there is no need "to predict accurately [whether the] high court of" many of the at-issue states would adopt cross-jurisdictional tolling because they have expressly refused to do so.  *Id.*

[8] *Page v. Gulf Oil Co*., 812 F.2d 249, 250 (5th Cir. 1987) ("it is not our place, as a federal court sitting in diversity-a surrogate state tribunal, to adopt novel legal theories for the jurisprudence of any state"); *see also Ottaviano v. Home Depot, Inc., USA*, 701 F. Supp. 2d 1005, 1012 (N.D. Ill. 2010) ("Regardless of the fact that this case, which already is in federal court on diversity grounds, would not have the harmful impact of overburdening the Illinois courts, the Illinois's Supreme Court's interpretation of Illinois law stands."); *Bozeman*, 2005 WL 2145911 at *3 ("courts that have examined 'cross-jurisdictional tolling' have been reluctant to expand the scope and availability of a state's equitable tolling powers").

[9] The PSC's authority does not hold to the contrary.  PSC Supp. Br. 17 (citing cases noting that CAFA was designed to sweep more class actions into federal court but none which suggest CAFA intended to undercut state statute of limitations or tolling rules).

related state law governing tolling of the limitation period.'") (internal citations omitted); *In re Vioxx*, 522 F. Supp. 2d at 805; *Ottaviano v. Home Depot, Inc., USA*, 701 F. Supp. 2d 1005, 1012 (N.D. Ill. 2010) ("The Supreme Court has held that applying a state's statute of limitations necessarily involves borrowing its tolling rules."). Likewise, they continue to uphold state rules prohibiting cross-jurisdictional tolling. *See, e.g.*, *In re BP p.l.c. Secs. Lit.*, 51 F. Supp. at 700*; In re Vioxx*, 2007 WL3334339 at *3; *Bozeman*, 2005 WL 2145911 at *3.

As to the PSC's state-specific responses,[10] the BNBM Entities respond as follows:

- **Alabama.**  The PSC attempts to distinguish *Bozeman* by noting the claims at issue there were different from those in the earlier filed federal action.  PSC Supp. Br. 8.  But that does nothing to detract from the court's unqualified recognition—equally applicable here—that no Alabama court has ever adopted cross-jurisdictional tolling and, thus, federal courts applying Alabama law should so decline.  *Bozeman*, 2005 WL 2145911 at *3.  Moreover, the PSC appears to have missed *Love v. Wyeth*, 569 F. Supp. at 1237, where the same claims were advanced in both actions and the Alabama federal court construed Alabama law to preclude cross jurisdictional tolling.

- **California**.  The PSC recognizes California has not adopted cross-jurisdictional tolling, PSC Supp. Br. 9-10, and the Ninth Circuit has refused "to import the doctrine … into California law."  *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025 (9th Cir. 2008) (cited in PSC's brief).  Nevertheless, it asks this Court to reject the Ninth Circuit's holding and expand California law, claiming a split of authority.  But the very act of

---

[10] The PSC does not contest that Georgia, Illinois, North Carolina, and Virginia have not approved cross-jurisdictional class action tolling and simply posits that class action tolling is permissible for class actions filed in the respective states' courts.  PSC Supp. Br. 11.  Because the PSC identifies no state class action filed in any of these state courts and offers no distinct arguments beyond those addressed above, *see supra* at pp. 7-9, we provide no state-specific response.

citing to its primary authority (*Smith v. Bayer Corp.*, 2001 WL 166064, at *9 (Cal. Ct. App. Dec. 28, 2011; *see* PSC Supp. Br. 9) constitutes a violation of California law. California Rule of Court 8.1115 ("an opinion … that is not certified for publication or ordered published *must not be cited or relied on by … a party in any other action*") (emphasis added).  The PSC's only other citation is to a decision of a New York federal district court.  PSC Supp. Br. 10 (citing *Libor*, 2015 WL 4634541 at *130).  Yet, courts within that very district have come to the opposite conclusion, citing both the federal policy against expanding state laws and *Clemens.*[11]  *Vincent v. Money Store*, 915 F. Supp. 2d 553, 569 (S.D.N.Y. 2013) ("California has not adopted cross-jurisdictional *American Pipe* tolling and there is no basis to do so in this case.").  Moreover, the PSC disregards the many other cases, beyond *Vincent*, that have refused to import cross-jurisdictional tolling into California law.[12]

- **Florida**.  The PSC acknowledges Florida does not provide for any sort of class action tolling and its reliance on *Krause v. Textron Financial Corporation*, 59 So. 3d 1085 (Fla. 2011), is misplaced.  *Krause* did not involve a class action, did not address class action tolling, and concerned the interpretation of a federal statute (not state tolling law, as is relevant here).  *Id.* at 1090.

---

[11] Moreover, the PSC's selective bracketing misrepresents even that court's holding.  The court did not find it could "comfortably predict the California Supreme Court would accept class-action [*cross-jurisdictional*] tolling generally."  PSC Supp. Br. 10 (emphasis added).  Rather, it "comfortably" concluded California would "accept class-action tolling."  2015 WL 4634541 at *130.  It then separately addressed cross-jurisdictional tolling and went to great pains to parse Ninth Circuit case law to justify its conclusion.  *Id.* at 131-32.

[12] *Galvez v. Ford Motor Co.*, 2018 WL 4700001, at *6 (E.D. Cal. Sept. 30, 2018); *Yi v. BMW of N. Am., LLC*, 2018 WL 3359016, at *8 (C.D. Cal. May 24, 2018); *Montegna v. Ocwen Loan Servicing, LLC*, 2017 WL 4680168, at *8 (S.D. Cal. Oct. 18, 2017); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 2015 WL 3988448, at *31 (N.D. Ill. June 29, 2015); *Nat'l Credit Union Admin. Bd. v. Bear, Stearns & Co.*, 2013 WL 4736247, at *7 (D. Kan. Sept. 3, 2013); *Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Fin. Corp.*, 878 F. Supp. 2d 1009, 1015-17 (C.D. Cal. 2011).

- **Louisiana.**  The PSC acknowledges that Louisiana does not allow for cross-jurisdictional tolling, but contends the parallel *Silva* actions tolled the limitations period for Louisiana property owners in *Brooke*.  As explained in more detail below and in the BNBM Entities' Reply (Rec. Doc. 21801-2 at 7-8), the PSC's arguments are misplaced.

- **Mississippi.**  The PSC acknowledges Mississippi does not have a class action procedure and, thus, would have no basis for adopting class action tolling.  In an apparent effort to mitigate Mississippi law, the PSC misrepresents *Boone v. Citigroup, Inc.*, 416 F.3d 382 (5th Cir. 2005).  PSC Supp. Br. 12.  Nowhere in *Boone* did the Fifth Circuit hold that "tolling under *American Pipe* is afforded to Mississippi residents who 'are indisputably members of the putative class seeking to recover on the identical cause of action.'"  *Id.*  Confronted by a request for tolling, the *Boone* Court expressly recognized, "Mississippi does not have class actions and we are cited to no Mississippi court decision applying class action tolling to a Mississippi law cause of action allegedly barred by a Mississippi statute of limitations."  *Boone*, 417 F.3d at 393.  As to the case cited by the *Boone* plaintiffs in support of tolling (*Piney Woods*), far from embracing that decision (as the PSC seems to suggest), the *Boone* court questioned it, noting the decision's failure to "cite any Mississippi court opinions."  *Id.* at 393-394.  The court went on to explain that even if Mississippi law could be relied upon (though it recognized none exists), *Piney Woods* would still be inapposite because at least there, the earlier class action covered the claims and claimants at issue (whereas the identified action in *Boone* did not).  *Id.*

- **Oklahoma.**  Contrary to the PSC's assertion (PSC Supp. Br. 13), Okla. Stat. tit. 12 § 100, does not, by its terms, provide for cross-jurisdictional tolling and no Oklahoma court has interpreted it to so provide.  The statute simply "permits one refiling of an action within

one year of dismissal otherwise than on the merits where the applicable statute of limitations period expired before the refiling." *Gates v. Integris Baptist Med. Ctr. of Oklahoma, Inc.*, 84 P.3d 115, 117 (Okla. Civ. App. 2004).  The PSC's broader reading of *Gates* is misplaced because the case did not involve a class action, much less a question of class action tolling or cross-jurisdictional tolling.

- **Texas**.  The PSC acknowledges Fifth Circuit authority holding that Texas does not provide for cross-jurisdictional tolling.  PSC Supp. Br. 14.  However, it asserts the Fifth Circuit's adherence to Texas courts' interpretation of their own law was misplaced because the Texas cases all pre-date CAFA.  *Id.*  But, as explained above, CAFA's expansion of federal subject matter jurisdiction does not change principles of federalism and chip away at state statutes of limitations.  Accordingly, just as the Fifth Circuit and federal district courts within the circuit, have faithfully applied *Bell v. Showa Denko K.K.*, 899 S.W.2d 749, 757–58 (Tex.App.1995) (rejecting cross-jurisdictional tolling) following the passage of CAFA, so too should this Court.  *Newby*, 542 F.3d at 471; *Vaught v. Showa Denko K.K.*, 107 F.3d 1137, 1140 (5th Cir. 1997).

* * *

Despite its attempts to inject uncertainty, the PSC cannot—and does not—point to a single opinion from a relevant state approving cross-jurisdictional tolling.  This Court should reject the PSC's efforts to conscript it into effectuating a "substantive innovation" by expanding the laws of nearly a dozen states that have expressly rejected cross-jurisdictional tolling or, at the very least, given no indication they would embrace it.

- 12 -

**B.** *Silva* **Does Not Toll The Claims of Louisiana Property Owners.**

The import of these state tolling laws is clear:  the only class actions that matter are those filed in state courts that have approved class action tolling.  Relatedly, this Court asked that the PSC identify "a class action with a class definition covering the *Brooke* Plaintiffs [that] was filed in state court."  Rec. Doc. 21914 at 2.  The PSC identified one.  Specifically, it referred to "a pair of *Silva* class actions" that it notes were "filed in Louisiana state court prior to removal and transfer to the MDL" and asserts, as an apparent basis for tolling, that "class certification of those actions has never been denied."  PSC Supp. Br. at 15.  The PSC's reliance on the *Silva* petitions to toll the *Brooke* claims, however, is misplaced.

*First*, the "[f]iling of a petition … interrupts prescription only as to defendants *named* in the petition relied upon."  *Bennett v. Gen. Motors Corp.*, 420 So. 2d 531, 539 (La. Ct. App. 1982) (emphasis in original).  The *Silva* petitions list one supplier—Interior Exterior—and its insurers.  *See* Appendix A (*Silva* state court complaints).  Because the *Silva* petitions do not name the defendants at issue in *Brooke*, *Silva* did not toll the *Brooke* plaintiffs' claims.  Nor can the BNBM Entities (or Taishan) be treated as joint or solidary obligors of the *Silva* defendants because *Silva*'s allegations only pertain to Knauf drywall—the drywall they allege to have purchased and which would necessarily circumscribe any certifiable class.  *Id.*  There is no basis in Louisiana law for holding one manufacturer accountable for products another manufacturer produces.  *Cf. Iles v. State Farm Mut. Auto. Ins. Co.*, 2018 WL 5816290, at *3-4 (La. App. 3 Cir. Nov. 7, 2018) (where "there is no 'overlap' in the [parties'] obligation," "they are not solidary obligors").

*Second*, even if prescription could be tolled against unnamed defendants, any potential tolling derived from the *Silva* petitions ceased well before Louisiana's one-year statute of

limitations expired.  Under Louisiana law, where prescription has been suspended by the filing of

a class action, it begins to run again (1) when a class member opts out, (2) following notice that

an individual has been excluded from the class, or (3) following notice the class has been

dismissed, the demand for class relief has been stricken, or class certification has been denied.

La. Code Civ. Proc. Ann. art. 596.  While the PSC notes the filing of the *Silva* petitions and that

class certification was never denied, it neglects to mention much else about the history of the

*Silva* actions.  After the cases were removed to federal court, Interior Exterior and its insurers

settled the claims against them.  The settlement was initially approved on May 13, 2011.  Rec.

Doc. 8818.  Pursuant to that agreement, notice was provided in variety of ways (that complies

with Article 596): via first class mail to all potential class members, via publication in a range of

national and regional media, and on the Court's Chinese Drywall MDL website.  *Id.* at 9-10.

The Court then granted final approval of the settlement on February 7, 2013—over two and a

half years before the *Brooke* complaint was filed and thus well beyond Louisiana's one-year

statute of limitations.  Rec. Doc. 16570; Appendix A; *see also* Rec. Doc. 21801-2 at 7-8

(incorporated by reference).

   *Third*, any benefit that could be derived from the *Silva* petitions would apply only to

Louisiana property owners because, as defined, the class was limited to "citizens of the State of

Louisiana." [13]  Appendix A at A-4, A-12.  Further still, the class would not include all Louisiana

property owners that purchased Chinese drywall.  It was limited to those that purchased Chinese

---

[13] Moreover, as this Court has explained, "the affected properties" are subject to "the substantive law of the
jurisdiction in which *[they] are situated*."  Rec. Doc. 21914 at 1 (emphasis added); *see also* Rec. Doc. 21963 at 12
(asserting that based on the Silva petitions, "prescription was suspended for *Louisiana* Chinese Drywall owners
under Article 596") (emphasis added).  Thus, to toll the claims of non-Louisiana property owners based on the *Silva*
petitions would amount to impermissible cross-jurisdictional tolling.  *See supra* § II.A.

drywall by or through Interior Exterior Building Supply from January 1, 2005 through December 31, 2008. *Id.*

* * *

Accordingly, the *Silva* petitions cannot and do not toll claims against unnamed defendants such as the BNBM Entities; even if they did toll, prescription began to run anew after notice of settlement and thus did not suspend prescription long enough to satisfy Louisiana's prescriptive period; and any tolling would apply to a limited number of *Brooke* claimants—those Louisiana property owners that purchased Chinese drywall through Interior Exterior during the relevant time period.

**III.    The Discovery Rule Does Not Preclude The Statutes of Limitations from Accruing Since a Reasonable Person Would Have Timely Discovered the Cause of Action.**

The PSC presumes, based on this Court's statements, that the *Brooke* claims soldier on because their timeliness presents highly "individual issues of accrual and/or notice under each State's discovery rule." PSC Supp. Br. 1. This contention and (mis-)characterization of the Court's statements is a curious one given that the PSC has never apprised the Court of the relevant standard under the respective state law at issues. Indeed, a number of states do not even recognize a discovery rule. As to those that do, the PSC acts as if the inquiry is an entirely subjective one, dependent on what each individual actually knew. It is not. States generally inquire whether an individual knew *or, through reasonable diligence*, *should have known* their claims exist. That objective inquiry can (and should) be made at this stage of the litigation. And it is easily resolved. After all, there can be no surer sign of what a reasonable person should have known and could have done than what thousands of similarly situated individuals (in *Amorin*) did before him. Acceptance of the PSC's approach would read out the diligence

- 15 -

requirement entirely, contravene settled law, and disincentivize potential claimants from acting diligently.

### A.  The Discovery Rule Requires Reasonable Diligence.

The PSC continues to suggest that the determination of when an individual knew or should have known of his claim is "inherently individualized," and, thus, "each plaintiff should be afforded the opportunity to come forward with case-specific allegations," and dismissal would therefore be inappropriate at this juncture.[14]  Rec. Doc.  21767-2 at 11; PSC Supp. Br. 1.  But the PSC cites no authority holding that courts are prohibited from resolving this issue at the motion to dismiss stage.  In fact, its lone citation—*In re Deepwater Horizon*, 808 F. Supp. 2d 943, 964-965 (E.D. La. 2011)—does not even address the discovery rule at all, much less the appropriate stage for its application.  *Id.* (addressing the presentment requirement under the Oil Pollution Act).[15]

Nothing precludes this Court from resolving the statute of limitations issue now.  *Cf. Ramos v. Le,* 2018 WL 6537026 (La. App. 4 Cir. Dec. 12, 2018) (affirming grant of peremptory exception to prescription where claim was prescribed on face of complaint and plaintiff failed to meet his burden of showing *contra non valentem*).[16]  To proceed otherwise would read out the

---

[14] Though, as we explain, this Court can and should make a categorical determination as to when a reasonable person would have discovered their claim and brought suit, the PSC's assertion that each of the over 1000 claims in *Brooke* requires individual adjudication undermines its contention that *Brooke* should be certified as a class.

[15] Notably, the presentment issue in the Oil Pollution Act contains nothing akin to a reasonable person/reasonable diligence standard.  *Id.* (quoting 33 U.S.C. § 2713).

[16] *Patel v. Hill-Rom Co., Inc*., 2014 WL 12776814 (Miss. Cir. Ct. 2014) (rejecting argument that application of discovery rule precludes granting motion to dismiss); *GLK, L.P. v. Four Seasons Hotel Ltd*., 22 So. 3d 635, 637 (Fla. Dist. Ct. App. 2009) (statute of limitations dismissal affirmed where plaintiff could have discovered injury with due diligence); *see also Mitchell v. Stonecasters, LLC*, 2018 WL 5919477 ¶44  (Ill. App. Ct. 2nd Dist. Nov. 13, 2018) (dismissal affirmed while considering application of discovery rule).  As noted *infra* at § III.C., because Alabama, Georgia, or Virginia do not recognize the discovery rule, they would have no occasion to address the propriety of dismissal in the face of a plaintiff's discovery rule contention.

reasonable diligence requirement, transforming the inquiry entirely into a subjective one.

Indeed, that's precisely what the PSC proposes in claiming the "prescriptive period for property

damage" begins to run on "'*the date the damage becomes apparent*.'" Rec. Doc. 21767-2 at 10

(emphasis added).  But that is not the standard.[17]  *Cf. Bennett v. Gen. Motors Corp*., 420 So. 2d

531, 537 (La. Ct. App. 1982) ("it is not necessary for the party to have actual knowledge of the

conditions")*.*  The inquiry is whether "the cause of action is [] known or *reasonably knowable by

the plaintiff*" where plaintiffs are "deemed to know that which [they] could have learned by

reasonable diligence."[18] (emphasis added); *Matthews v. Sun Expl. & Prod. Co*., 521 So. 2d 1192,

1197-98 (La. Ct. App. 1988) (rejecting application of discovery rule where plaintiff's cause of

action could "have been discovered by him through the exercise of reasonable diligence")

(emphasis added); *see also, e.g.*, *Edmundson v. Amoco Prod. Co*., 924 F.2d 79, 83 (5th Cir.

1991) (the discovery rule should not be "used to excuse parties from using reasonable diligence

---

[17] The PSC's reliance upon *S. Cent. Bell Tel. Co. v. Texaco, Inc*., 418 So. 2d 531, 532 (La. 1982) is misplaced.  That case addressed when prescription begins under former statutory provisions addressing damage to adjacent land.  *Id* (citing LSA-C.C. arts. 3537, 667).  The PSC itself recognizes those provisions do not govern here, directing the Court to La. Civ. Code Ann. art. 3492 and acknowledging that for purposes of the discovery rule, the inquiry is whether the "causes of action were 'neither known nor reasonably knowable by the plaintiff.'"  Rec. Doc. 21767-2 at 10 (quoting *Marin v. Exxon MobileCorp*., 48 So. 3d 234, 245 (La. 2010)).

[18] *See also In re Vioxx*, 2007 WL 3334339 at *4 (under California's discovery rule, limitations period begins to run when "'the plaintiff discovers, or has reason to discover, the cause of action.'"); Fla. Stat. Ann. § 95.031(2)(b) (limitations period for products liability action begins to run "from the date that the facts giving rise to the cause of action were discovered, or should have been discovered with the exercise of due diligence"); *PSI Res., LLC v. MB Fin. Bank Nat'l Assoc.,* 55 N.E.3d 186, 196 (Ill. App. 1st. 2016) ("The discovery rule protects a plaintiff *only* until he knows or reasonably should know of the injury, not until he has actual knowledge.") (internal quotations omitted); Miss. Code Ann. 15-1-49 (cause of action involving latent injury or disease "does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury"); N.C. Gen. Stat. § 1-52 (cause of action for personal injury or property damage shall not accrue until injury becomes apparent or "ought reasonably to have become apparent"); *Samuel Roberts Noble Foundation, Inc. v. Vick*, 840 P.2d 619, 624 (Okla. 1992) ("The discovery rule provides that the limitations period does not begin to run until the date the plaintiff knew or should have known of the injury"); *In re Vioxx*, 2007 WL 3334339 at *2 (E.D. La. Nov. 8, 2007) ("Texas's discovery rule provides that [personal injury] limitations period commences when 'a plaintiff knows or, through the exercise of reasonable care and diligence, should have known of the wrongful act and the resulting injury'"); *see also Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006) ("we have restricted the discovery rule to exceptional cases to avoid defeating the purposes behind the limitations statutes").

in acquiring the information which would justify such a suit").  In other words, the inquiry is an objective one that can be "decided on a categorical rather than case-specific basis.""  *See e.g. Via Net*, 211 S.W.3d at 314 ("the focus is on whether a *type* of injury rather than a *particular* injury was discoverable").[19]  Accordingly, it is appropriate for this Court to resolve whether the *Brooke* claimants acted with reasonable diligence.

### B.  Under a Reasonable Person Standard, the *Brooke* Plaintiffs Did Not Act Diligently.

As the simultaneously-filed Taishan brief further details, the discovery rule does not save the claims of the *Brooke* plaintiffs because a reasonable plaintiff acting with diligence would have discovered the alleged injuries giving rise to the claims well within the controlling statutes of limitations.  *See also* Taishan Supp. Br. ISO Mot. to Dismiss *Brooke* Complaints ("Taishan Br.") (fully incorporated by reference).  As discussed in BNBM's Reply, the *Brooke* plaintiffs— all of whom acquired the drywall no later than 2009—cannot be said to have acted diligently by waiting six years and, in some cases, nearly a decade to file suit.  Rec. Doc.  21801-2 at 5-6. There can be no contention that the symptoms lay dormant for years.  The *Brooke* complaint itself alleges the exact opposite: "[t]he sulfur compounds … exit Defendants' drywall and cause *rapid* sulfidation and damage to personal property."  Rec. Doc. 19625 at 9 (emphasis added); *id.* at 10.  These facts, "appear[ing] on the face of the complaint … establish conclusively that the statute of limitations bars the action as a matter of law."  *City of Riviera Beach v. Reed*, 987 So.

---

[19] *See also City of Tupelo v. O'Callaghan*, 208 So.3d 556, 569-70 (Miss. 2017) ("'[a]n individual may not take shelter in the "discovery rule" when reasonable minds could not differ that the plaintiff possessed sufficient information to bring a claim.'"); *Cochran v. Smith & Nephew, Inc.*, 260 F. Supp. 3d 979, 987-88 (C.D. Ill. 2017) ("[T]he inquiry under the discovery rule is an objective one."); *Jacquez v. Compass Bank*, 2016 WL 3017418 at *7 (W.D. Tex. May 24, 2016) ("'[i]f reasonable minds could not differ about the conclusion to be drawn from the facts in the record, then the start of the limitations period may be determined as a matter of law'"); *Strata v. Patin*, 545 So. 2d 1180, 1189 (La. Ct. App.).

2d 168, 170 (Fla. Dist. Ct. App. 2008).[20]

And it is no answer for the PSC to profess, as it does, Rec. Doc. 21963 at 24, that a plaintiff did not know the cause or source of the injury—knowledge of the injury itself is sufficient. *See, e.g., Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 207 (Tex. 2011) ("Once a claimant learns of a wrongful injury, the statute of limitations begins to run even if the claimant does not yet know 'the specific cause of the injury; the party responsible for it; the full extent of it; or the chances of avoiding it.'"); *Bennett v. Gen. Motors Corp.,* 420 So. 2d 531, 537 (La. Ct. App. 1982) ("mere failure on the part of a plaintiff to ascertain whom to sue within a year does not toll the running of prescription").[21]

And, in any event, both the alleged cause and the alleged source were readily apparent. *First,* national and regional news coverage was extensive. Prior to 2012 alone, over 400 news articles were published concerning Chinese drywall. For instance, in October 2009 (nearly six years before the *Brooke* complaints were filed), the New York Times published a piece detailing

---

[20] *See also, e.g., McCall ex. rel. McCall v. Household Finance Corp.*, 122 So. 3d 832, 838 (Ala. Civ. App. 2013) (affirming dismissal where, from face of complaint, statute of limitations expired); *see also Ramos v. Le*, 2018 WL 6537026 (same); *Copeland v. Miller*, 817 S.E.2d 692, 695 (Ga. App. 2018) (same); *Maniscalco v. Porte Brown*, LLC, 2018 IL App (1st) 180716, ¶ 1 (Ill. App. Ct. 1st Dist. Nov. 30, 2018) (same); *San Diego Unified School District v. Yee*, 2018 WL 6804280 at *11 (Cal. Ct. App. Nov. 30, 2018) (same); *Christ's Legacy Church v. Trinity Grp. Architects, Inc.*, 417 P. 3d 1223 (Ok. Civ. App. 2018) (same); *Asheville Lakeview Properties, LLC v. Lake View Park Commission, Inc.*, 803 S.E. 2d 632, 638 (N.C. Ct. App. 2017); *Patel v. Hill-Rom Co., Inc.*, 2014 WL 12776814 (Miss. Cir. Ct. 2014) (same).

[21] *See also Marin*, 48 So. 3d at 246 ("knowledge sufficient to start the running of prescription 'is the acquisition of sufficient information, which, if pursued, will lead to the true condition of things'"); *Angle v. Koppers, Inc.*, 42 So.3d 1, 7 (Miss. 2010) (cause of action in toxic tort case accrued when plaintiff was diagnosed with an injury, rejecting notion that plaintiff must have knowledge of the cause of the injury before the running of the statute of limitations); *Bernson v. Browning–Ferris Industries of Cal., Inc.*, 873 P.2d 613 (Cal. 1994) ("While ignorance of the existence of an injury or cause of action may delay the running of the statute of limitations until the date of discovery, the general rule in California has been that ignorance of the identity of the defendant is not essential to a claim and therefore will not toll the statute.").

the issue, identifying the symptoms, and highlighting the regions of the country most impacted.[22]
So too did USA Today and ABC News.[23]   The most widely circulated newspapers in Alabama,
Florida, and Louisiana did likewise.[24]   *See also* Taishan Br. § III.B.

 *Second*, the United States Consumer Product Safety Commission released multiple
reports and press releases, which not only listed target manufacturers but ranked sulfur emissions
among them and identified the year of the drywall samples.[25]   By May 2009, Senate committees
were already holding hearings on the issue.[26]   Likewise, numerous state and local government
authorities issued reports and press releases regarding Chinese drywall.[27]

 *Third*, the filing of the *Amorin* complaints themselves identified the source of the
problem as well as the manufacturers.   And, of course, this Court's website—with numerous
questions and answers regarding Chinese drywall—was created long before the *Brooke*
complaints were filed.

---

[22] Leslie Wayne, *Thousands of Homeowners Cite Drywall for Ills*, N.Y. Times (Oct. 7, 2009); *available at* https://tinyurl.com/ybmr9a5d.

[23] Julie Schmit and USA Today, *Drywall From China Blamed For Problems In Homes*, ABC News (March 16, 2009); *available at* https://tinyurl.com/y9m6a6by.

[24] *See* Rebecca Mowbray, *Chinese Drywall Guidance Offered By National Association of Home Builders*, The Times-Picayune (March 18, 2010), *available at* https://tinyurl.com/yaqhdw6p (New Orleans Advocate); Brian Skoloff, *Miami-based home builder Lennar says Chinese drywall in 400 homes*, South Florida Sun Sentinel (July 13, 2009), *available at* https://tinyurl.com/y94vt9ye; Dawn Kent Azok, *Over 400 Birmingham-area owners affected by Chinese-made drywall problem*, Birmingham News (Nov. 22, 2009), *available at* https://tinyurl.com/y74vmrt9.

[25] *See, e.g.*, Press Release, *CPSC Identifies Manufacturers of Problem Drywall Made in China* (2010), *available at* https://tinyurl.com/ych7v9rq.

[26] *See* Consumer Protection, Product Safety, and Insurance Subcommittee, Hearing on Health and Product Safety Issues Associated with Imported Drywall (May 21, 2009) *available at* https://tinyurl.com/y9cxtq7e.

[27] *See, e.g.*, Defective Drywall Information, Lee County Property Appraiser (Sept. 8, 2009), *available at* https://tinyurl.com/yd6vcccb; Florida Attorney General, *How to Protect Yourself: Chinese Drywall* (posted Feb. 24, 2010), *available at* https://tinyurl.com/yaqfwzhb; Imported Drywall Information, Louisiana Department of Health (originally posted June 10, 2009), *available at* http://ldh.la.gov/index.cfm/page/800.

* * *

It is thus entirely unreasonable to claim (as the PSC does) that, over the course of up to a decade, "no amount of reasonable diligence" would have led an individual experiencing symptoms of defective drywall (which, according to the PSC, included persistent physical maladies and rampant disuse of appliances) to ascertain the cause.  Rec. Doc. 21767-2 at 10. Belying this assertion is the PSC's failure to offer even a handful of examples to illustrate some common and reasonable misapprehension among the hundreds of supposedly uninformed *Brooke* claimants.[28]

Whatever may be said of the wisdom of waiting until summary judgment in the case of a single plaintiff where a court must hypothesize what a reasonable person would have done, this Court need not speculate as to that question.  It has the answer 1,000 times over in the form of the *Amorin* complaints.  *See In re Vioxx Prods. Liab. Litig.*, 2007 WL 3334339 at *3, 5 (E.D. La. Nov. 8, 2007) (finding media coverage was sufficient to put plaintiffs on notice of a potential link between their alleged injuries and use of defendant's product, and concluding that by waiting more than two years after withdrawal of product from the market to file suit, plaintiffs could not be said to have acted diligently) (applying Texas and California law); *see also* Taishan Br.  Accordingly, there is no need—and only downside—to waiting years more to ascertain the status of claims that will not change upon further factual development and thus can—and should be—resolved now.

---

[28] What's more, the four-year filing gap between the *Amorin* and *Brooke* complaints undermines the PSC's contention.  If, as the PSC suggests, homeowners individually discovered claims over time, one would expect a steady stream of complaints being filed after the *Amorin* complaint.  That's not what happened.  Instead, there was a four-year hiatus between the *Amorin* and *Brooke* complaints.  This gap reflects a coordinated and categorical approach to the litigation, rendering equally appropriate a categorical resolution.  Stated otherwise, because the PSC did not take an individualized approach to filing Plaintiffs' claims, there is no basis for concluding an individualized discovery rule inquiry is warranted.

### C. Alabama, Georgia, and Virginia Property Owners' Claims Should Be Dismissed Because Those States Do Not Recognize The Discovery Rule.

Not all states recognize the discovery rule. Of those at issue, Alabama, Georgia, and Virginia do not.[29] Accordingly, the statute of limitations in those states commenced when the cause of action arose rather than the date of discovery. Because, at the latest (pursuant to the PSC's own theory) the drywall was shipped to those three states by 2008, the property owners were required to file long before they did in 2015.[30] *See* Addendum A (setting forth respective statute of limitations, all of which are under seven years).

### IV. The *Brooke* Plaintiffs Are Not Entitled to the Extraordinary Remedy of Equitable Tolling Because BNBM Has Not Concealed Any Facts.

"Equity aids the vigilant, not those who sleep on their rights." *Birchwood-Manassas Assocs., L.L.C. v. Birchwood at Oak Knoll*, 773 S.E.2d 162, 164 (Va. 2015). Consequently, as the PSC acknowledges, to rely on equitable tolling, a plaintiff must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way.'" Rec. Doc. 21963 at 17.[31] A plaintiff attempting to rely on equitable tolling bears the burden of

---

[29] *DGB, LLC v. Hinds*, 55 So. 3d 218, 225 n.4 (Ala. 2010) ("This Court has stated that § 6-2-3 [codifying discovery rule for fraud or fraudulent concealment claims] does not provide a 'discovery rule' for non-fraud claims."); *Corp. of Mercer Univ. v. Nat'l Gypsum Co.*, 368 S.E.2d 732, 733 (Ga. 1988) (discovery rule limited to cases of bodily injury and did not apply to actions for damages in tort against manufacturers of asbestos-containing construction products); *Andersson Gustafsson Advokatbyra KB v. eScrub Sys., Inc.*, 2011 WL 3954878 at *2 (E.D. Va. Sept. 7, 2011) ("Virginia follows the general rule that 'the applicable period of limitations begins to run from the moment the cause of action arises rather than from the time of discovery of injury or damage, and [ ] difficulty in ascertaining the existence of a cause of action is irrelevant.'"); *see also Casey*, 722 S.E.2d at 845 (**"**It is well-established that 'statutes of limitations are strictly enforced and must be applied unless the General Assembly has clearly created an exception to their application.'")

[30] Nor were there any state class actions filed in those three states that would toll. *See* PSC Supp. Br. 15 (identifying no state class actions in Alabama, Georgia, or Virginia).

[31] *See In re Vioxx*, 2007 WL 3334339 at *4 ("pursuant to California's fraudulent concealment doctrine, '[a] defendant's fraud in concealing a cause of action against him will toll the statute of limitations, and that tolling will last as long as a plaintiff's reliance on the misrepresentations is reasonable.'"); *West Brook Isles Partner's 1, LLC v. Commonwealth Land Title Ins. Co.*, 163 So. 3d 635, 639 (Fla. Dist. Ct. App. 2d 2015) ("Generally, two elements are required before the equitable principle of fraudulent concealment will be utilized to toll the statute of limitations, to-wit: plaintiff must show both successful concealment of the cause of action and fraudulent means to [achieve] that

establishing "extraordinary circumstances" to justify application of the doctrine. *Ex parte VEL*, LLC, 225 So. 3d at 604. As an initial matter, the PSC cannot prove the first element necessary to establish equitable tolling, namely that Plaintiffs acted diligently, as discussed in Section IV.B *supra*.

And it cannot show the Defendants fraudulently concealed Plaintiffs' causes of action or somehow stood in the way of Plaintiffs filing the *Brooke* Complaint. To be sure, the PSC spends a considerable portion of its brief recounting the various ways it contends Defendants failed to timely respond to the litigation. PSC Supp. Br. 15-25. But the PSC never explains how that conduct "misled," "deceived," or otherwise amounted to a "misrepresentation" of Plaintiffs'

---

concealment."); *In re Atlas Roofing Corp. Chalet Single Prods. Liab.*, 2018 WL 3497153 at *4  (July 20, 2018) (interpreting Georgia statute regarding "Tolling of Limitations," O.G.C.A. 9-3-96) ("In order to toll the statute of limitations, "a plaintiff must prove that (1) the defendant committed actual fraud involving moral turpitude, (2) the fraud concealed the cause of action from the plaintiff, and (3) the plaintiff exercised reasonable diligence to discover his cause of action."); *Jenkins v. State Farm Fire & Cas. Co* 2017 Ill. App. Unpub. LEXIS 1210, *20-21 (Ill. App. Ct. 2017) ("A plaintiff must plead and prove that the defendant made misrepresentations or performed act which were known to be false, with the intent to deceive the plaintiff, and upon which the plaintiff detrimentally relied," interpreting fraudulent concealment tolling doctrine codified in Section 13-215 of the Illinois Code) (internal citation omitted); *Morris v. Margulis*, 197 Ill. 2d 28, 38 (Ill. 2001) (Section 13-215 will not toll the running of a limitations period if the plaintiff discovers the fraudulent concealment when a "reasonable time" remains within the statute of limitations); Miss Code Ann. § 1-1-67 ("If a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered."); *Masquat v. DaimlerChrylser Corp.*, 195 P.3d 48, 55 (Okla. 2008) ("'One relying on fraudulent concealment to toll the statute of limitations must not only show that he did not know the facts constituting a cause of action, but that he exercised reasonable diligence to ascertain said facts.'"); *In re Vioxx*, 2007 WL 3334339 at *2 (discussing Texas law and stating that "where a defendant 'fraudulently conceals the existence of a cause of action from the party to whom it belongs, the defendant is estopped from relying on the defense of limitations until the party learns of the right of action or should have learned thereof through the exercise of reasonable diligence.'"); Tex. Bus & Com Code § 17.565 (Texas CPA claims may only be extended for a period of 180 days where "the plaintiff proves that failure to timely commence the action was caused by the defendant's knowingly engaging in conduct solely calculated to induce the plaintiff to refrain from or postpone the commencement of the action"); *In re BP p.l.c. Secs. Litig.*, 51 F. Supp. 3d 693, 700 (S.D. Tex. 2014) (equitable tolling should apply "'[w]hen the plaintiff is actively misled by the defendant ... or is prevented in some extraordinary way from exerting his rights."); *Ex parte VEL, LLC*, 225 So. 3d 591, 604 (Ala. 2016) ("equitable tolling is available in extraordinary circumstances that are beyond the [plaintiff's] control and that are unavoidable even with the exercise of diligence."); *Schmidt v. Household Finance Corp.*, 661 S.E. 2d 834, 840 (Va. 2008) ("equitable relief is available only when a defendant misled or deceived a plaintiff in order to prevent the plaintiff from either discovering the existence of a cause of action or filing a timely claim").

claims in a way that would preclude the *Brooke* Plaintiffs from bringing suit.[32]  To the point, the actions the PSC identifies, including supposed concealment from counsel of the manufacturers' identities, clearly did not stop the thousands of Plaintiffs from bringing suit in *Amorin*.  PSC Supp. Br. 24; *see also Bennett v. Gen. Motors Corp.*, 420 So. 2d 531, 535 (La. Ct. App. 1982) (defendant's "silence did not excuse plaintiff's failure to ascertain what party might be responsible").  And it offers no basis for how they further hampered the ability of the *Brooke* Plaintiffs—much less for *years* after.

Moreover, the PSC attempts to rely on the Court's findings in its order denying Defendants' motion to set aside defaults in *other* actions (*Amorin, Gross, and Wiltz*), stating that Defendants had notice of those litigations.  Rec. Doc. 21963 at 23-24 (citing Rec. Doc. 21108).  Whether Defendants had notice of claims by other drywall plaintiffs in earlier lawsuits does not convey notice of the claims of the *Brooke* Plaintiffs.  To allow tolling on such a basis would undermine the purpose of the statute of limitations: to protect a defendant against stale claims.  And to allow tolling based on a defendant's post-litigation "legal strategies" or the fact that it denied liability (*see* PSC Supp. Br. 19, 24), would provide for equitable tolling in nearly every case, thereby undercutting what is meant to be an extraordinary remedy.  *Bennett v. Advanced Cable Contractors, Inc.*, 2012 WL 1600443 at *6 (N.D. Ga. May 7, 2012) ("Equitable tolling, however, is an 'extraordinary remedy which should be extended only sparingly.'")

---

[32] *In re BP p.l.c. Securities Litigation*, 51 F. Supp. 3d at 700; *Bennett v. Advanced Cable Contractors, Inc.*, 2012 WL 1600443 at *6 (noting that equitable tolling doctrine has been applied when a defendant misleads a plaintiff into allowing the limitations period to lapse); *see also supra* fn 31.  Indeed, the *Brooke* complaint lacks any particularized allegations that might establish that BNBM concealed critical facts, as needed to support fraudulent concealment.  *See e.g. In re Atlas Roofing Corp. Chalet Single Prods. Liab.*, 2018 WL 3497153 at *5 (under Georgia law, "because tolling the statute of limitations requires proof of fraud, the allegations must be pleaded with particularity"); *DGB, LLC*, 55 So. 3d at 226 (under Alabama law, complaint must allege the time and circumstances of the discovery of the cause of action, as well as the facts or circumstances by which the defendant concealed the action and what prevented the plaintiff from discovery the facts surrounding the injury).

When, as here, "there was no active concealment and a party with the exercise of due diligence could have discovered the facts, the statute of limitations is not tolled." *West Brook Isles Partner's 1, LLC*, 163 So. 3d at 639; *Birchwood-Manassas Assocs., L.L.C.*, 773 S.E.2d at 164 (plaintiff not entitled to equitable tolling where it "ha[d] not proven the existence of an extraordinary circumstance that could not have been avoided by the exercise of due diligence") (cited in PSC Supp. Brief 17).[33]  Accordingly, the Court should conclude that Plaintiffs have failed to justify the "extraordinary" remedy of equitable tolling.

## CONCLUSION

For the foregoing reasons and the reasons set forth in the BNBM Entities' Motion to Dismiss and supporting memorandum, Reply in support thereof, and any declarations, and exhibits, BNBM PLC and BNBM Group respectfully move the Court to dismiss the *Brooke* complaints.

---

[33] A few of the states at issue provide statutory tolling provisions; however, the grounds covered by those statutes are inapplicable here and include bases such as incapacity (Va. Code Ann. § 8.01-229(A)(2)(b), Fla. Stat. Ann. § 95.051(d)) or disability (Miss. Code § 15-1-59, O.G.C.A. § 9-3-31); death (Va. Code Ann. § 8.01-229(B), Miss. Code § 15-1-55); actions by a minority (Va. Code Ann. § 8.01-229(A)(2)(a), Fla. Stat. Ann. § 95.051(i), Miss. Code § 15-1-59); pending arbitration or intervening bankruptcy (Fla. Stat. Ann. § 95.051(g) and (h)) or criminal proceeding (Va. Code Ann. § 8.01-229(K), O.G.C.A. § 9-3-99).  Furthermore, courts in those jurisdictions generally refuse to read in additional equitable tolling grounds not specifically enumerated by the state legislatures.  *See e.g. Pierson v. Orlando Reg'l Healthcare Sys., Inc.*, 2010 WL 1408391 at *15 (M.D. Fla. April 6, 2010) ("Equitable tolling is not available in civil actions in Florida. Section 95.051(1), Florida Statutes, sets forth a list of events that toll a statute of limitations, and equitable tolling is not among them."); *Casey*, 722 S.E.2d at 845 (Va. 2012) ("A statute of limitations may not be tolled, 'or an exception applied, in the absence of a clear statutory enactment to such effect.'")

Dated: January 18, 2019

Respectfully submitted,

*/s/ L. Christopher Vejnoska*

Harry Rosenberg (LA Bar No. 11465)
PHELPS DUNBAR LLP
365 Canal Street, Suite 2000
New Orleans, LA 70130-6534
T:  (504) 584-9219
Email:  harry.rosenberg@phelps.com

L. Christopher Vejnoska (CA Bar No. 96082)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
San Francisco, CA  94105
T:  415-773-5700
Email:  cvejnoska@orrick.com

James L. Stengel (NY Bar No. 1800556)
Xiang Wang (NY Bar No. 4311114)
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY, 10019
T:  212-506-5000
Email:  jstengel@orrick.com
         xiangwang@orrick.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing BNBM GROUP AND BNBM PLC'S SUPPLEMENTAL BRIEF REGARDING TOLLING ISSUES IN SUPPORT OF MOTION TO DISMISS has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail and upon all parties by electronically uploading the same to File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 18th day of January, 2019.

*/s/ L. Christopher Vejnoska*

# ADDENDUM A

## Common Law Claims

|  | Negligence | Negligence Per Se | Strict Liability | Breach of Warranty | Private Nuisance | Unjust Enrichment |
|---|---|---|---|---|---|---|
| AL | 2 years Ala. Code § 6-2-38(l) | 2 years Ala. Code § 6-2-38(l) | 2 years Ala. Code § 6-2-38(l) | 4 years Ala. Code § 7-2-725(1) | 2 years Ala. Code § 6-2-38(l) | 2 years (in tort) Ala. Code § 6-2-38(l) |
| CA | 2 years (personal injury) Cal. Civ. Proc. Code § 335.1<br><br>3 years (injury to property) Cal. Civ. Proc. Code § 338(c) | 2 years (personal injury) Cal. Civ. Proc. Code § 335.1<br><br>3 years (injury to property) Cal. Civ. Proc. Code § 338(c) | 2 years (personal injury) Cal. Civ. Proc. Code § 335.1<br><br>3 years (injury to property) Cal. Civ. Proc. Code § 338(c) | 2 years (personal injury) Cal. Civ. Proc. Code § 335.1<br><br>4 years Cal. Com. Code § 2725(1) | 3 years Cal. Civ. Proc. Code § 338(b) | Governed by statute of limitation of underlying wrong because there is no cause of action for unjust enrichment in California. *Melchoir v. New Line Productions, Inc.*, 106 Cal. App. 4th 779, 793 (Cal. Ct. App. Feb. 28, 2003) |
| FL | 4 years Fla. Stat. § 95.11(3)(a) | 4 years Fla. Stat. § 95.11(3)(a) | 4 years Fla. Stat. § 95.11(3)(a) | 4 years (unwritten contract) Fla. Stat. § 95.11(3)(k) | 4 years Fla. Stat. §§ 95.11(3)(g) & (p) | 4 years (unwritten contract) Fla. Stat. §§ 95.11(3)(k) |
| GA | 2 years (personal injury) O.C.G.A. § 9-3-33<br><br>4 years (injury to property) O.C.G.A. § 9-3-30(a) & 9-3-31 | 2 years (personal injury) O.C.G.A. § 9-3-33<br><br>4 years (injury to property) O.C.G.A. § 9-3-30(a) & 9-3-31 | 2 years (personal injury) O.C.G.A. § 9-3-33<br><br>4 years (injury to property) O.C.G.A. § 9-3-30(a) & 9-3-31 | 4 years O.C.G.A. § 11-2-725(1) | 4 years O.C.G.A. § 9-3-30(a) & 9-3-31 | 4 years *See Engram v. Engram*, 463 S.E.2d 12, 15 (Ga. 1995) |

|  | Negligence | Negligence Per Se | Strict Liability | Breach of Warranty | Private Nuisance | Unjust Enrichment |
|---|---|---|---|---|---|---|
| IL | 2 years (personal injury) 735 Ill. Comp. Stat. Ann. 5/13-202<br><br>5 years (injury to property) Ill. Comp. Stat. Ann. 5/13-205 | 2 years (personal injury) 735 Ill. Comp. Stat. Ann. 5/13-202<br><br>5 years (injury to property) Ill. Comp. Stat. Ann. 5/13-205 | 2 years (personal injury) 735 Ill. Comp. Stat. Ann. 5/13-202<br><br>5 years (injury to property) Ill. Comp. Stat. Ann. 5/13-205 | 4 years 810 Ill. Comp. Stat. Ann. 5/2-725 | 5 years (injury to property) Ill. Comp. Stat. Ann. 5/13-205 | 5 years 735 Ill. Comp. Stat. Ann. 5/13-205 |
| LA | 1 year La. Civ. Code Art. 3492/3493 | 1 year La. Civ. Code Art. 3492/3493 | 1 year La. Civ. Code Art. 3492/3493 | 1 year (date of discovery)/ 4 years (date of delivery) La. Civ. Code Art. 2534 | 1 year La. Civ. Code Art. 3492/3493 | 10 years La. Civ. Code Art. 3499 |
| MS | 3 years Miss Code Ann. § 15-1-49(1) | 3 years Miss Code Ann. § 15-1-49(1) | 3 years Miss Code Ann. § 15-1-49(1) | 6 years Miss Code Ann. § 75-2-725(1) | 3 years Miss Code Ann. § 15-1-49(1) | 3 years Miss Code Ann. § 15-1-49(1) |
| NC | 3 years N.C. Gen. Stat. Ann. § 1-52(16) | 3 years N.C. Gen. Stat. Ann. § 1-52(16) | *Cause of action not recognized* (N.C. Gen. Stat. Ann. § 99B-1.1) | 3 years (non-UCC) N.C. Gen. Stat. Ann. § 1-52(1) | 3 years N.C. Gen. Stat. Ann. § 1-52(3) | 3 years N.C. Gen. Stat. Ann. § 1-52(1) |
| OK | 2 years Okla. Stat. Ann. tit. 12, § 95(A)(3) | 2 years Okla. Stat. Ann. tit. 12, § 95(A)(3) | 2 years Okla. Stat. Ann. tit. 12, § 95(A)(3) | 2 years Okla. Stat. Ann. tit. 12, § 95(A)(3) | 2 years Okla. Stat. Ann. tit. 12, § 95(A)(3) | 3 years Okla. Stat. Ann. tit. 12, § 95(A)(2) |
| TX | 2 years V.T.C.A. Civ. Prac. & Rem. Code | 2 years V.T.C.A. Civ. Prac. & Rem. Code Ann. | 2 years V.T.C.A. Civ. Prac. & Rem. | 4 years V.T.C.A. Bus. & Co. §2.725(a) | 2 years V.T.C.A. Civ. Prac. & Rem. | 2 years V.T.C.A. Civ. Prac. & Rem. Code Ann. |

- 29 -

|  | Negligence | Negligence Per Se | Strict Liability | Breach of Warranty | Private Nuisance | Unjust Enrichment |
|---|---|---|---|---|---|---|
|  | Ann. §16.003(a) | §16.003(a) | Code Ann. §16.003(a) |  | Code Ann. §16.003(a) | §16.003(a) |
| VA | 2 years (personal injury) Va. Code. Ann. § 8.01-243(A)

5 years (injury to property) Va. Code. Ann. § 8.01-243(B) | 2 years (personal injury) Va. Code. Ann. § 8.01-243(A)

5 years (injury to property) Va. Code. Ann. § 8.01-243(B) | 2 years (personal injury) Va. Code. Ann. § 8.01-243(A) | 2 years (personal injury) Va. Code. Ann. § 8.01-243(A) 4 years (contract for sale) Va. Code. Ann. § 8.2-725(1)

5 years (injury to property) Va. Code. Ann. § 8.01-243(B) | 5 years Va. Code. Ann. § 8.01-243(B) | 3 years Va. Code. Ann. § 8.01-246(4) |

**State Statutory Claims**

| | |
|---|---|
| Louisiana Redhibition | First of discovery (1 year) or delivery (4 years) La. Civ. Code Art. 2534(A)(1) |
| Louisiana Products Liability Act | 1 year La. Civ. Code Art. 3492/3493 |
| Louisiana Unfair Trade Practices & Consumer Protection Law | 1 year La. Civ. Code Art. 3492/3493 |
| Alabama Deceptive Trade Practices Act | 1 year from discovery or 4 years from transaction Ala. Code § 8-19-14 |
| North Carolina Consumer Protection Act | 4 years N.C. Gen. Statute § 75-16.2 |
| Florida Deceptive & Unfair Trade Practices Act | 2 years F.S. § 95.11(3)(f) |
| Virginia Consumer Protection Act | 2 years Va. Code § 59.1-204.1(A) |
| | |

| Texas Deceptive Trade Practices Consumer Protection Act | 2 years<br>Tex. Bus. & Com. Code § 17.565 |
|---|---|
| Mississippi Consumer Protection Act | 3 years<br>Miss Code Ann. § 15-1-49 |

**ADDENDUM B**

| State | Case Name | Case Numbers |
|---|---|---|
| AL | *Bayne, et al., v. Taishan Gypsum Co., Ltd. et al.* | Case No. 17-cv-8284 (E.D. La.); 17-cv-1286 (N.D. Ala.) |
| AL | *Ellison, et al., v. Taishan Gypsum Co., Ltd. et al* | Case No. 17-cv-9827 (E.D. La.); 16-cv-1839 (N.D. Ala.) |
| AL | *Little v. Taishan Gypsum Co., Ltd.,* | Case No. 14-cv-587 (E.D. La); 13-cv-612 (S.D. Ala.) |
| CA | *Abner, et al. v. Taishan Gypsum Co., Ltd. et al* | Case No. 11-3094 (E.D. La.); 11-1787 (C.D. Ca.) |
| GA | *Bentz, et al. v. Taishan Gypsum Co., Ltd. et al.,* | Case. No. 17-cv-08286 (E.D. La.); 17-cv-02892 (N.D. Ga.) |
| IL | *Stutzman, et al. v. Taishan Gypsum Co., Ltd., et al.,* | Case No. 17-cv-12511 (E.D. La.); 17-cv-51 (S.D. Ill.) |
| MS | *Allen, et al. v. Taishan Gypsum Co., Ltd., et al.* | Case No. 17-cv-08288 (E.D. La.); 17-cv-217 (S.D. Miss.) |
| NC | *Allman, et al. v. Taishan Gypsum Co., Ltd., et al.* | Case No. 17-cv-12513 (E.D. La.); 17-cv-51 (E.D.N.C.) |
| OK | *Cole, et al. v. State-Owned Assets Supervision and Administration Commission of the State Council, et al* | Case No. 18-cv-11407 (E.D. La.); 18-cv-562 (N.D. Ok.) |
| TX | *Lochhead, et al. v. Taishan Gypsum Co., Ltd.., et al.* | Case No. 17-cv-8294 (E.D. La.); 17-cv-294 (S.D. Tex.) |