UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 |
| | SECTION: L |
| THIS DOCUMENT RELATES TO: *ALL CASES* | JUDGE FALLON<br>MAG. JUDGE WILKINSON |

*****************************************************************************

# YANCE LAW FIRM, LLC'S MEMORANDUM IN SUPPORT OF MOTION FOR AWARD OF ATTORNEY FEES ON INTEREST EARNED

Comes now Yance Law Firm, LLC ("Yance) and submits YANCE LAW FIRM, LLC'S MEMORANDUM IN SUPPORT OF MOTION FOR AWARD OF ATTORNEY FEES ON INTEREST EARNED.  Yance's motion filed contemporaneously herewith moves this Honorable Court to enter an Order awarding a fair and reasonable attorney fee to Yance in the amount of five hundred thousand dollars ($500,000.00) based upon the amount of interest earned on the Attorney Fee Fund since the time it was moved away from Esquire Bank and into the Court Registry in June 2018 and the fact that said interest would not have been earned without Yance's efforts and many hours of work.  The requested fee can be paid out of interest on the Attorney Fee Fund that has been earned after the effective date set forth in the Court's Common Benefit Order dated February 4, 2019 so that said attorney fee to Yance will not affect the allocations set forth therein.  In support of said motion, Yance states:

1. In 2013, Representatives of Esquire Bank and others convinced this Court to allow Esquire Bank to serve as the Depository Bank for among other things approximately 200 million dollars of attorney fees arising out of the Chinese Drywall settlements with Knauf and other defendants (hereinafter "Funds").

2. The majority of the Funds were paid into Court near the end of 2013, and this Court ordered the Clerk of Court to fund the Attorney Fee Qualified Settlement Funds with Esquire Bank ("QSFs") in January of 2014 (Doc. 17398), with a more specific funding clarification in February 2014 (Doc. 17426).

3. In late 2017, during the "fee dispute phase" of this case, after noticing a shockingly low amount of interest having been earned on the Funds at Esquire Bank (a mere $83,711.98 according to a 2016 affidavit and reconciliation by CPA Phillip Garrett filed with the Court), Yance began to investigate and research the reasoning behind this interest unfairness. (See Exhibit A- Affidavit of R. Tucker Yance). One of the primary driving forces behind Yance's motivation to get to the bottom of the interest issue was that considering how long the Funds had been in existence, it appeared that even a reasonable interest rate on the Funds could increase the amount in the fee pot enough to significantly increase the chances of reaching a resolution of the fee dispute in its entirety, so that all of the attorneys that have worked hard in this case could finally get paid for their work. Moreover, when earned attorney fees of this magnitude remain collected but undistributed for years on end as they have in this case, interest earned on those fees is critically important.

4. After hundreds of hours of investigation and research, Yance drafted and filed on May 18, 2018, Yance Law Firm's Motion to Immediately Transfer Attorney Fee Qualified Settlement Fund To a Different Depository Bank or Back Into the Court Registry. (Rec. Doc. 21338 and attachments-hereinafter "Yance/Esquire Motion").

5. Without diving back into the details of the Yance/Esquire Motion, the related evidence and the Reply Brief related thereto (Rec. Doc. 21467-1- hereinafter "Yance/Esquire

Reply"), suffice it to say that it raised many troubling aspects surrounding the nearly zero interest rate Esquire Bank was paying on the Funds, and it asked the Court to immediately transfer the Funds to the Court Registry or a different depository bank so that the Funds could be protected and earn a reasonable rate.

6. Following the filing of the Yance/Esquire Motion, Yance attended the monthly status conference for the specific purpose of urging the Court to either grant the Yance/Esquire Motion outright as it had remained unopposed well beyond the response deadline, or if the filing of an opposition were to be allowed, then at the very least to take immediate control of the Funds and place them into the Court Registry to protect them and allow them to earn interest.  (See Exhibit B- Transcript of June 12, 2018 Status Conference pp. 2, 10-15).  At the status conference, the Court recognized that the Yance/Esquire Motion had been filed and was one of three matters on the agenda for that day and the Court gave Yance an opportunity to be heard in open Court on the record.  After hearing Yance's argument, the Court agreed to take immediate control of the funds and place them into the Court Registry.  *Id.*

7. That very same day, June 12, 2018, the Court entered an Order for the transfer of the Funds following Yance's recommendation in open Court, and the Funds were transferred from Esquire Bank to the Court Registry shortly thereafter.  (See Exhibit B- Transcript and Exhibit C- June 12, 2018 Court Order regarding the Funds).

8. Since the transfer of the Funds 7 to 8 months ago, they have been earning a drastically higher interest rate than they did for the four and a half years they had remained at Esquire Bank and a drastically higher rate than they would have earned if they had been allowed to remain at Esquire Bank.

9. By Esquire's own under-oath admission filed in response the Yance/Esquire Motion, a meager $235,866 TOTAL had been earned on the Funds for 2014, 2015, 2016, and 2017 COMBINED. (See Exhibit D- Affidavit of Esquire Bank, National Association- Rec. Doc. 21432-5 para. 15). In this same affidavit, Esquire provided an "estimate" of interest that would be earned for the entire year of 2018 if the Court were to permit Esquire to continue to hold the Funds in the face of the Yance/Esquire Motion. *Id.* Even Esquire's own estimate suggested that Esquire would only pay $673,971 in interest on the Funds for the entire year of 2018. *Id.*

10. Contrarily, because the Funds were moved to the Court Registry as a result of Yance's work, they have already earned MUCH more. Footnote 2 of the Court's Order allocating Common Benefit fees dated February 4, 2019 [Rec. Doc. 22089] appears to plainly indicate that as of October 31, 2018 over five and a half (5.5) million dollars of interest had been earned on the approximately 100 million dollar Common Benefit portion of the Funds alone. That footnote states in regards to the Common Benefit portion of the fees:

> As the Court explained in its January 31, 2018 Order & Reasons, R. Doc. 21168, the figure for attorneys' fees listed in that Order, $99,762,099.56, reflected the total amount available for attorneys' fees as of October 2017, *id*. at 24 & n.9. The amount of attorneys' fees disbursed pursuant to the instant Order, $105,359,193.97, reflects the amount currently available for distribution, as calculated by the Court-appointed CPA. The additional funds available are due to interest earned on the original amount.[1]

---

[1] This statement in footnote 2 of the Order would tend to indicate that over ten and a half (10.5) million dollars of interest must have been earned on the entirety of the Funds. However, the calculations in footnote 1 of the Order seem to indicate that the total interest earned on the Funds is less than that, but greater than five (5) million dollars. Even still, although the undersigned counsel certainly expected a dramatic increase in interest earned once the Funds were moved to the Court Registry, this amount of interest income seems incredibly high considering the Court's effective date used in the Order was October 31, 2018 and thus the Funds had only been in the Court Registry for approximately four (4) months. Because of this, the undersigned counsel reached out to the Court-appointed CPA Phillip Garrett and others for clarification of this issue. The undersigned is still waiting on a complete explanation, but Mr. Garrett did indicate that the $5.5 million increase in the Common Benefit fee portion was due to other things in addition to interest income. In any event, based upon the information provided by Mr. Garrett thus far, it appears

4

Rec. Doc 22089 p. 9 and n.2.

11. The difference between the amount of interest earned by the Funds now that they have been transferred to the Court Registry versus what they would have earned if they had remained at Esquire Bank is already significant. This difference is almost certain to grow substantially, the longer the Funds remain in the Court Registry and undistributed to the attorneys.

12. The undersigned counsel is pleased to see all of the attorneys due to receive fees in this case continue to benefit from the Funds finally earning a reasonable interest rate. Yance is not greedy but deserves to be compensated fairly for conferring this significant benefit on the attorneys. See Eldon E. Fallon, *Common Benefit Fees in Multi-district litigation,* 74 La. L. Rev. 371, 374-379 (2014); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161 (1939) (employing common benefit doctrine to award fees and costs to litigant whose success benefitted unrelated parties by establishing their legal rights); *Internal Imp. Fund Trs. v. Greenough*, 105 U.S. 527, 537–38 (1881); *Cent. R.R. & Banking Co. of Ga. v. Pettus*, 113 U.S. 116, 127–28 (1885); *In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 549 F.2d 1006, 1008 (5th Cir. 1977).

13. Yance believes a fair and reasonable fee can be paid to Yance out of interest earned after the effective date of the calculations set forth in the February 4, 2019 Order (i.e. October 31, 2018) rather than interest earned before that date, so that the allocation numbers used therein will never have to be adjusted downward as a result of this fee request. In fact the allocation numbers set forth in that Order should continue to increase despite this fee

---

quite certain that the interest income on the Funds is significantly higher than it would have been had Yance remained silent and the Funds had remained at Esquire Bank as will be explained in the paragraphs that follow.

request, as it is almost certain that the fee amount requested in the paragraphs below is less than the interest earned from October 31, 2018 to the present date.

14. Even using the most conservative interpretation of the clarifying data sent by Phillip Garrett to the undersigned counsel as discussed in footnote 1 above (and the undersigned is waiting to receive more specific information), it appears that the Funds in the Court Registry are earning on average at least $309,000 per month or $3.7 million per year. By contrast, at Esquire Bank these Funds earned a mere $14,087 per month on average in 2017 and $169,049 for the year. Even Esquire's own "estimate" for the entire year of 2018 if it were permitted to keep the Funds in the face of the Yance/Esquire Motion was only $673,971 or $56,164 per month on average. Therefore, even using the most conservative figures on the "Yance side" of the equation, and giving Esquire Bank the most aggressive benefit of the doubt on its side of the equation by using Esquire's 2018 "estimates", it appears Yance's efforts have resulted in a benefit of at least $252,000 every month to the Funds. Thus, even using these conservative figures, the Funds appear to be earning over 5 times what Esquire estimated the Funds would earn if Esquire were permitted to continue to hold them in 2018, and the Funds are earning over 21 times what they actually earned at Esquire in 2017.

15. Yance respectfully suggests that these circumstances could justify a fee award of 30% or more to Yance. See Eldon E. Fallon, *Common Benefit Fees in Multi-district litigation,* 74 La. L. Rev. 371, 385 (2014). However, Yance hereby requests a fee in the amount of $500,000. Using the conservative figures described above, this is only around 15% of what the accumulated benefit should equal after a year and only about 25% of the benefit accumulated as of this month. (If however, the interest earned on the Common Benefit

6

portion of the Funds is in fact anywhere near $5.5 million as of October 31, 2018 as set forth in the Court's February 4, 2019 Order, then Yance's requested fee is undoubtedly far less than 10% of the benefit accumulated as of this month).  Obviously, to the extent the attorney fee distribution continues to be delayed as it has for the many years past, the accumulated benefit of Yance's efforts will continue to increase and thus the percentage of this fee request will continue to decrease.

16. Consequently, whether this fee request is analyzed using the "Percentage Method" or the "Blended Method", the results obtained for the attorney beneficiaries and the approximate 550 hours of attorney and staff time spent on this project, more than justify the requested fee (See Exhibit A- Affidavit of R. Tucker Yance).

WHEREFORE, undersigned counsel moves the Court for an Order granting Yance Law Firm, LLC's Motion for Award of Attorney Fees on Interest Earned and thus awarding Yance Law Firm, LLC attorney fees in the amount of Five Hundred Thousand Dollars ($500,000.00).

    Respectfully submitted,

    /s/ R. Tucker Yance
    R. TUCKER YANCE
    Ala. State Bar #- ASB-9775-H71Y
    YANCE LAW FIRM, LLC
    169 Dauphin Street Suite 318
    Mobile, AL  36602
    (251) 432-8003
    (251) 432-8009 FAX
    rty@yancelaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing motion has been served upon Plaintiffs' Liaison Counsel Russ M. Herman and Defendants' Liaison Counsel Kerry Miller, by e-mail and upon all parties by electronically uploading the same to File & ServeXpress in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 19th day of February, 2019.

/s/ R. Tucker Yance
R. TUCKER YANCE
Ala. State Bar #- ASB-9775-H71Y
YANCE LAW FIRM, LLC
169 Dauphin Street Suite 318
Mobile, AL  36602
(251) 432-8003
(251) 432-8009 FAX
rty@yancelaw.com