**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL | * | |
| PRODUCTS LIABILITY LITIGATION | * | |
| | * | **CIVIL ACTION** |
| | * | |
| | * | **MDL NO. 2047** |
| | * | |
| | * | **SECTION L (5)** |
| THIS DOCUMENT RELATES TO: | * | |
| ALL *BROOKE* CASES | * | |
| | * | |

**ORDER & REASONS**

Before the Court is the BNBM Defendants' Motion to Dismiss the *Brooke* omnibus

complaint, filed January 15, 2016. R. Doc. 19984. On September 12, 2018, the Plaintiffs' Steering

Committee ("PSC") filed its opposition. R. Doc. 21779. The BNBM Defendants filed a reply on

October 3, 2018. R. Doc. 21818. On November 13, 2018, after reviewing the parties' submissions,

the Court ordered additional briefing on the issue of tolling. R. Doc. 21914. On December 14,

2018, the PSC filed its supplemental brief. R. Doc. 21963. On January 18, 2019, Taishan and the

BNBM entities filed their memoranda in further support of BNBM's motion to dismiss, R. Docs.

22071, 22072, to which the PSC filed a supplemental reply, R. Doc. 22083. The Court heard oral

argument on the motion on February 21, 2019. R. Doc. 22114. Having considered the parties'

arguments, briefing, and the applicable law, the Court is ready to rule.

## I.    BACKGROUND

From 2004 through 2006, a housing boom in parts of the United States and rebuilding

efforts necessitated by Hurricanes Rita and Katrina in the Gulf South led to a shortage of

construction materials, including drywall.  As a result, drywall manufactured in China was brought

into the United States and used to construct and refurbish homes in coastal areas of the country,

notably the Gulf and East Coasts.  Sometime after the Chinese drywall was installed, homeowners

began to complain of foul-smelling odors, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829–30 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014). Many of these homeowners also began to complain of various physical afflictions believed to have been caused by the Chinese drywall.

These homeowners then began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. Because of the commonality of facts in the various cases, this litigation was designated as a multidistrict litigation. Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation ("JPML") on June 15, 2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 09-2047 before this Court.

The Chinese drywall at issue was largely manufactured by two groups of defendants: (1) the Knauf Entities and (2) the Taishan Entities. The litigation has focused on these two entities and their downstream associates and has proceeded on strikingly different tracks for the claims against each group.[1] Relevant to this Order are the Chinese Defendants. These Defendants include the principal Chinese-based Defendant, Taishan, namely, Taishan Gypsum Co. Ltd. ("TG") and its wholly-owned subsidiary, Taian Taishan Plasterboard Co., Ltd. ("TTP") (collectively

---

[1] The Knauf Entities are German-based, international manufacturers of building products, including drywall, whose Chinese subsidiary, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), advertised and sold its Chinese drywall in the United States. On December 20, 2011, the Knauf Entities and the PSC entered into a global, class Settlement Agreement ("Knauf Settlement Agreement"), which was designed to resolve all Knauf-related, Chinese drywall claims. In addition to the Knauf Settlement Agreement and after a jury trial in a bellwether case, numerous defendants in the chain-of-commerce with the Knauf Entities have entered into class settlement agreements, the effect of which settles almost all the Knauf Entities' chain-of-commerce litigation. The total amount of the Knauf Settlement is approximately $1.1 billion. Although the Court occasionally had to deal with settlement administration and enforcement issues, with the assistance of Special Master Dan Balhoff, the Knauf portion of this litigation is now resolved.

"Taishan" or "Taishan Entities"). Other Chinese-based Defendants include China New Building Materials Group ("CNBM Group"), China New Building Materials Co. ("CNBM"), CNBMIT Co. Ltd. ("CNBMIT"), CNBM USA Corp. ("CNBM USA"), and United Suntech Craft, Inc. ("United Suntech") (collectively the "CNBM Entities"), as well as the Beijing New Building Materials Public Limited Company ("BNBM") and Beijing New Building Material Group ("BNBMG") (collectively the "BNBM Entities").

The Court's initial inquiry regarding Taishan involved four cases in this MDL: (1) *Germano v. Taishan Gypsum Co.* (Case No. 09-6687); (2) *The Mitchell Co. v. Knauf Gips KG* (Case No. 09-4115); (3) *Gross v. Knauf Gips KG* (Case No. 09-6690); and (4) *Wiltz v. Beijing New Building Materials Public Ltd.* (Case No. 10-361).

The first issues involving Taishan arose when Taishan failed to timely answer or otherwise enter an appearance in *Mitchell* and *Germano*, despite the fact that it had been properly served in each case. Thus, after an extended period of time, the Court entered preliminary defaults against Taishan in both cases. Thereafter, the Court moved forward with an evidentiary hearing in furtherance of the preliminary default in *Germano* on Plaintiffs' claimed damages. At the hearing, the PSC presented evidence specific to seven individual properties, which served as bellwether cases. Thereafter, on February 19 and 20, 2010, the Court issued detailed Findings of Fact and Conclusions of Law. On May 11, 2010, the Court issued a Default Judgment against Taishan in *Germano* and in favor of Plaintiffs.

On June 10, 2010, the last day to timely appeal the Default Judgment against them, Taishan filed a Notice of Appeal in *Germano* and entered its appearance in *Germano* and *Mitchell*. After Taishan entered its appearance in the MDL, it quickly sought to have the Default Judgment in *Germano* and the Preliminary Default in *Mitchell* vacated for lack of personal jurisdiction.

Because this was the first time Defendants raised jurisdictional issues, the Fifth Circuit remanded the case to this Court to determine whether this Court indeed has jurisdiction over Taishan.

In the fall of 2010, the Court directed the parties to commence the personal jurisdiction discovery necessary to resolve Taishan's motions to vacate. Sometime after the initial discovery, the parties agreed to expand the discovery beyond the *Germano* and *Mitchell* cases to other cases in which Taishan had been served, including *Gross* and *Wiltz*.

Formal personal jurisdiction discovery of Taishan began in October 2010. Discovery included the production of both written and electronic documents as well as depositions of Taishan's corporate representatives, with each type of discovery proceeding in a parallel fashion. This discovery was highly contentious, requiring close supervision by the Court. The Court presided over regularly-scheduled status conferences, conducted hearings, and issued rulings to resolve numerous discovery-related disputes.

In June 2011, the PSC filed identical complaints in Federal district courts in Florida, Virginia, and Louisiana (the "*Amorin* complaints"). The *Amorin* complaints include all Plaintiffs named in the *Wiltz*, *Gross*, *Abel*, and *Haya* actions. The Florida and Virginia actions were transferred by the JPML to the MDL; the PSC filed the Louisiana omnibus complaint directly into the MDL. It is undisputed that the allegations and Plaintiffs named in the *Amoin* complaints are identical. According to the PSC, these identical complaints were filed "out of an abundance of caution," because "there existed a colorable question regarding the application of the jurisdictional tests known as the 'stream-of commerce' test and the 'stream-of-commerce-plus' test reflected in the plurality opinions in *McIntyre* and *Asahi*, as well as Justice Brennan's concurring opinion in *Asahi*."

In April 2012, Taishan filed various motions, including motions to dismiss for lack of personal jurisdiction. On June 29, 2012, over three years since the creation of this MDL and after a year-and-a-half of personal jurisdiction discovery on Taishan, the Court presided over a hearing on Taishan's motions. The Court coordinated its hearing with the Honorable Joseph Farina of the Florida state court, who had a similar motion involving Taishan's challenge to personal jurisdiction.

On September 4, 2012, this Court issued a 142-page Order regarding Taishan's motions in *Germano*, *Mitchell*, *Gross*, and *Wiltz*, in which the Court denied the motions to dismiss and held that it maintained personal jurisdiction over Taishan. *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819 (E.D. La. 2012). The Court also ruled that Taishan was operating as the alter ego of TG and TTP. The Court certified an interlocutory appeal, and the Fifth Circuit granted permission to appeal. In January and May of 2014, two different panels of the Fifth Circuit affirmed this Court's ruling and held that this Court maintained personal jurisdiction over Taishan, TG, and TTP. *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 753 F.3d 521 (5th Cir. 2014); *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576 (5th Cir. 2014). The time for writ of certiorari passed, and the issue of personal jurisdiction over Taishan became firmly and finally settled. Nevertheless, Taishan refused to voluntarily participate in this suit.

On June 20, 2014, the Court ordered Taishan to appear in open court on July 17, 2014 to be examined as a judgment debtor. Taishan failed to appear for the July 17, 2014 Judgment Debtor Examination, and the Court held Taishan in contempt, ordering that Taishan pay $15,000.00 in attorneys' fees to Plaintiffs' counsel and $40,000.00 as a penalty for contempt; Taishan and any of its affiliates or subsidiaries be enjoined from conducting any business in the United States until or unless it participates in this judicial process; and if Taishan violates the injunction, it must pay

a further penalty of twenty-five percent of the profits earned by the Company or its affiliate who violate the Order for the year of the violation.

On July 23, 2014, the PSC filed their Omnibus Motion for Class Certification pursuant to Rule 23(b)(3). Taishan did not appear and, on September 26, 2014, this Court certified a class of all owners of real properties in the United States, who are named Plaintiffs on the complaints in *Amorin*, *Germano*, *Gross*, and/or *Wiltz* (*i.e.*, not an absent class member), asserting claims for remediated damages arising from, or otherwise related to Chinese Drywall manufactured, sold, distributed, supplied, marketed, inspected, imported or delivered by the Taishan Defendants. R. Doc. 18028.

Taishan finally entered an appearance with the Court in February 2015, and, to satisfy the contempt, Taishan paid both the sum of $15,000.00 in attorneys' fees to Plaintiffs' counsel and the contempt penalty of $40,000.00 in March 2015. On March 17, 2015, the Court ordered Taishan and the BNBM and CNBM Entities to participate in expedited discovery related to "the relationship between Taishan and BNBM/CNBM, including whether affiliate and/or alter ego status exists."

On March 10, 2016, this Court granted CNBM Group's motion to dismiss, finding it was an "agent or instrumentality of a foreign state" within the meaning of the Foreign Sovereign Immunities Act ("FSIA"), and therefore outside the jurisdiction of this Court under 28 U.S.C. § 1603(b). R. Doc. 20150. The Court determined the tortious activity exception did not apply because the alleged tortious conduct did not occur within the United States under 28 U.S.C. § 1605(a)(5). Further, the Court found the commercial activity exception did not apply, as CNBM Group did not directly manufacture, inspect, sell, or market drywall in the United States. Because the PSC failed to present evidence sufficient to overcome the presumption that CNBM Group was entitled to independent status for purposes of the FSIA, the Court granted the motion and dismissed CNBM Group from the present litigation.

After concluding it lacked personal jurisdiction over CNBM Group, on April 21, 2017, the Court issued a 100-page opinion related to jurisdictional challenges being raised with respect to CNBM, BNBM Group, and BNBM. The Court found Taishan was an agent of BNBM under Florida and Virginia law, such that Taishan's contacts in Florida and Virginia are imputed to BNBM. This Court further found that CNBM, BNBM Group, and BNBM were part of a single business enterprise with Taishan under Louisiana law, such that Taishan's contacts in Louisiana may be imputed to them, and that the Court has jurisdiction over CNBM, BNBM Group, and BNBM in relation to Plaintiffs' claims based on Louisiana law. Also on April 21, 2017, the Court issued its Findings of Fact and Conclusions of Law related to the June 9, 2015 damages hearing and adopted the PSC's damage calculations methodology related to remediation of properties.

On May 22, 2017, Defendants filed a motion pursuant to 28 U.S.C. § 1292(b) to certify an interlocutory appeal from this Court's April 21, 2017 jurisdiction order. Because the Court found the April 21, 2017 Order & Reasons involved a controlling question of law as to which there was substantial ground for difference of opinion, and because the Court further found that an interlocutory appeal might materially advance the ultimate termination of this MDL, on August 4, 2017, the Court certified an interlocutory appeal to the Fifth Circuit pursuant to 28 U.S.C. § 1292(b).

On August 1, 2017, Defendants filed a motion to dismiss for lack of personal jurisdiction following the recent U.S. Supreme Court case of *Bristol-Myers Squibb v. Superior Court of California* ("*Bristol-Myers*"), 137 S. Ct. 1773 (2017). Based on *Bristol-Myers*, Defendants contested this Court's findings of personal jurisdiction, class certification, and agency relationship. On August 14, 2017, Defendants filed a petition for permission to appeal pursuant to 28 U.S.C. § 1292(b) in the Fifth Circuit, in which they argued *Bristol-Myers* impacted questions raised on

appeal. On August 24, 2017, this Court vacated its 28 U.S.C. § 1292(b) certification order to avoid piecemeal litigations, noting its duty to address the effect of *Bristol–Myers* on the jurisdictional issue before certifying the matter to the Fifth Circuit. Subsequently, on November 30, 2017, the Court denied Defendants' motion to dismiss, holding *Bristol-Myers* did not change this Court's jurisdictional findings and class certification.

On January 2, 2018, the Court denied Defendants CNBM, BNBM Group, and BNBM's motion to vacate the default judgments against them. On March 5, 2018, the Court reinstated its order certifying the interlocutory appeal of its April 21, 2017 order. This issue remains with the Fifth Circuit.

## II. PENDING MOTION

The motion presently before the Court involves the *Brooke* omnibus complaint filed by the PSC on September 4, 2015. No. 15-4127, R. Doc. 1. On January 15, 2016, the BNBM Defendants moved to dismiss the *Brooke* complaint. R. Doc. 19984. On September 12, 2018, the PSC filed its opposition. R. Doc. 21779. The BNBM Defendants filed a reply on October 3, 2018. R. Doc. 21818. On November 13, 2018, after reviewing the parties' submissions, the Court ordered additional briefing on the issue of tolling. R. Doc. 21914. On December 14, 2018, the PSC filed its supplemental brief. R. Doc. 21963. On January 18, 2019, Taishan and the BNBM entities filed their memoranda in further support of BNBM's motion to dismiss, R. Docs. 22071, 22072, to which the PSC filed a supplemental reply, R. Doc. 22083. The Court heard oral argument on the motion on February 21, 2019. R. Doc. 22114.

## III. LAW & ANALYSIS

In its motion, the BNBM Defendants seek dismissal of the *Brooke* omnibus complaint, arguing that: (1) they were not properly served; (2) they are not subject to jurisdiction in Louisiana, as Taishan's contacts with the forum cannot be imputed to them; (3) the *Brooke* complaint is barred

by the applicable statutes of limitation; and (4) the *Brooke* complaint should be dismissed for failure to state a claim. This memorandum considers each argument in turn.

### A. Whether the BNBM Defendants were properly served

BNBM first argues it was not properly served, requiring dismissal of the *Brooke* action. Defendants' motion to dismiss was filed in January 2016. Since that time, the Court has made several jurisdictional rulings, including orders regarding the sufficiency of service. On April 21, 2017, the Court rejected the BNBM Defendants' argument that they had not been properly served. It held:

> Based on the extensive procedural history of this case, the Court is convinced service on these entities has satisfied due process. Even without considering the agency and alter-ego relationships that exist between many of these related corporations, the evidence demonstrates the entities received adequate notice of this action and sufficient time to present their defenses.

R. Doc. 20739 at 55.

Moreover, in their motion currently before the Court, Defendants "incorporate by reference and adopt in full the arguments they raised in their previously filed Opposition to the Plaintiffs' Steering Committee's Motion to Approve Alternative Service of Process." R. Doc. 19984-1 at 29 n.32. Notably, the Court granted the PSC's motion to approve alternative service on November 9, 2015, stating "In this case, the Court is confident that service upon domestic counsel of the Entities satisfies the requirements of due process and is reasonably calculated to apprise the Chinese Defendants of the pendency of the action and afford them an opportunity to present their objections." R. Doc. 19713 at 14.

Despite these prior orders, in their recent reply in support of their motion to dismiss, filed October 3, 2018, the BNBM Defendants maintain their argument that service was improper. R. Doc. 21818 at 14–15. They contend the Court's prior orders addressing service are "not controlling

as to the facts and circumstances at hand," *id.* at 14, and again point to their opposition to the PSC's motion to approve alternative service of process, an argument the Court has previously rejected. Given the Court's prior orders addressing these issues, and notwithstanding Defendants' assertion to the contrary, this issue is foreclosed by the Court's prior orders, and the Court will not grant Defendants' motion to dismiss on this basis.

### B. Whether the BNBM Defendants are subject to this Court's jurisdiction

Next, Defendants argue they are not subject to personal jurisdiction in Louisiana. They argue "neither BNBM PLC nor BNBM Group has purposefully directed activities toward residents of the forum, and further that exercise of jurisdiction over these Defendants would violate constitutional due process." R. Doc. 21818 at 13. In opposition, the PSC points to this Court's jurisdictional order and reasons, in which the Court concluded the Chinese Defendants operate as a single business enterprise, such that Taishan's contacts with Louisiana may be imputed to BNBM PLC and BNBM Group for purposes of establishing personal jurisdiction. R. Doc. 21779 at 10–11. In reply, Defendants take issue with the PSC's reliance on the Court's April 21, 2016 jurisdictional order, stating it "respectfully disagrees with the Court's conclusion that BNBM was a part of a SBE with Taishan or its alter ego, such that Taishan's contacts should be imputed to BNBM under Louisiana law." R. Doc. 21818 at 14.

In its April 21, 2016 jurisdictional order, following a lengthy analysis, this Court concluded that, "viewing '[a]ll the relevant facts and circumstances surrounding the operations of the[se] parent[s] and subsidiary[ies]' in the light more favorable to Plaintiffs, . . . Taishan is an alter ego of BNBM under Louisiana law." R. Doc. 20739 at 75. The Court further held the Chinese Defendants must be considered a single business enterprise, as

> the entities within the CNBM Group corporate umbrella have integrated their resources to ensure their success as an international building materials company.

Thus, each business within the larger corporate family—including BNBM, BNBM Group, and CNBM—may be held liable for the wrongful acts done in pursuit of that purpose.

*Id.* at 79. Ultimately, the Court found that, "Under the Louisiana single-enterprise doctrine, . . . Taishan, BNBM, BNBM Group, and CNBM constitute a single business enterprise," and "therefore [must be] considered one entity for the purposes of imputing personal jurisdiction under Louisiana law." *Id.*

As a result of the Court's prior jurisdictional order, the Court finds Taishan's contacts with the forum must be imputed on the BNBM Defendants, thereby satisfying sufficient contacts with the forum to establish jurisdiction over the BNBM Defendants.

### C. Whether the *Brooke* complaint is time-barred

BNBM next argues the claims in *Brooke* are time-barred and therefore must be dismissed. According to BNBM, "[t]he only cause of action not time barred is unjust enrichment, with a ten-year statute, but that claim is preempted by the Louisiana Products Liability Act." R. Doc. 19984-1 at 23. They submit that "all [of Plaintiffs' claims] are barred by the applicable statute[s] of limitation," because: (1) the first lawsuit involving allegedly defective Chinese drywall was filed January 30, 2009; (2) CPSC issued a public release identifying manufacturers of problematic drywall on May 25, 2010; and (3) wide-spread press coverage of the issues have continued throughout the litigation. Thus, Defendants submit, "all of Plaintiffs' purported claims against BNBM PLC OR BNBM Group arose well before September 2011," four-years prior to the filing of the *Brooke* complaint. R. Doc. 19984-1 at 25–26.

In opposition the PSC argues that, because the original class of Plaintiffs was certified against the Taishan Defendants by this Court on September 26, 2014, the *Brooke* complaint was timely filed less than a year later, on September 4, 2015. R. Doc. 21779. In support of its argument,

the PSC points to *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), as well as Louisiana Code of Civil Procedure article 596. *Id.* at 15. The PSC also argues in the alternative that the third prong of the doctrine of *contra non valentem* applies in this case, arguing Defendants' actions prevented Plaintiffs from filing suit. Finally, the PSC submits, in the event the Court concludes *American Pipe*, article 596, and *contra non valentem*'s third element do not support a finding that the *Brooke* complaint was timely filed, each Louisiana plaintiff should be afforded the opportunity to come forward with evidence that he or she did not reasonably know of his or her cause of action until or after September 4, 2014.

The *Brooke* complaint includes Plaintiffs from Florida, California, Louisiana, Alabama, Mississippi, Georgia, Texas, North Carolina, Virginia, Illinois, and Oklahoma.[2] *See* No. 15-4127, R. Doc. 1-1. The Supreme Court has instructed that state statutes of limitations are "matters of local law properly to be respected by federal courts sitting" in diversity. *Guar. Trust Co. v. York*, 326 U.S. 99, 110 (1945). Therefore, the Court must ultimately determine which state's statute of limitations applies in each individual lawsuit that is part of this multidistrict litigation. The Court must first determine which set of choice-of-law rules to apply in these cases. Then, pursuant to these rules, the Court must choose the applicable statutes of limitations. Lastly, the Court must determine whether or not the applicable statutes of limitations have been tolled by the pendency of a class action under the *American Pipe* doctrine, the doctrine of *contra non valentem*, or the discovery rule.

---

[2] With respect to the Oklahoma properties, these plaintiffs are part of the *Cole* Omnibus Complaint filed on October 26, 2018 in the District of Oklahoma and only recently transferred into this MDL. The PSC notes in its supplemental briefing that, although the Oklahoma properties were not part of the *Brooke* Omnibus Complaint, these Plaintiffs are subject to the Court's ruling on the instant order. R. Doc. 21963 at 12.

### a. Choice-of-Law Considerations

"[I]n diversity lawsuits, a federal court is ordinarily bound to look to the choice of law rules of the state in which it sits to determine whether the state courts of that state would apply their own state's statute of limitations or the statute of limitations of some other state." *Long Island Trust Co. v. Dicker*, 659 F.2d 641, 645 (5th Cir. 1981); *see Klaxon Co. v. Stentor Mfg. Co.*, 313 U.S. 487, 496-97 (1941). In this case, the *Brooke* omnibus complaint was filed directly into this MDL, suggesting that this Court "sits" in Louisiana and should apply Louisiana's choice-of-law rules. Louisiana's choice-of-law rule for selecting the applicable limitations period in a particular case requires the Court to conduct two separate choice-of-law determinations. First, the Court must determine what state's substantive laws will govern the proceeding. Second, based on that determination, the Court must decide the applicable limitations law.

Based on Louisiana's choice-of-law rules, because this case primarily concerns damage to immovable property, the substantive law of each plaintiff's home jurisdiction must be applied to his or her respective claims. *See* La. Civ. Code Ann. art. 3542 (instructing courts to consider the place of conduct and injury, the place of residence, the center of the relationship between the parties, tort law policies, and the parties' expectations); *see also Dickerson v. Scott*, 476 So. 2d 524, 526 (La. 1 Cir. 1985) ("It is well settled that immovable property is governed by the law of its situs . . . ." (citing *Butler v. Bolinger*, 16 La. App. 397, 133 So. 778, 782 (1931))). Accordingly, the Court will apply the substantive law of Florida, California, Louisiana, Alabama, Mississippi, Georgia, Texas, North Carolina, Virginia, Illinois, and Oklahoma to Plaintiffs' claims.

Where, as here, "the substantive law of another state would be applicable to the merits of an action brought in this state," Louisiana prescription law applies except in two circumstances:

(1) If the action would be barred under Louisiana prescription law but allowed under the other state's law, and "maintenance of the action in this state is warranted

13

by compelling considerations of remedial justice," then the Court must apply the limitations law of the state whose substantive law governs.

(2) If the action would not be barred under Louisiana prescription law but would be barred under the law of the state whose substantive law governs, then the Court must apply Louisiana prescription law unless allowing the case to proceed "is not warranted by the policies of [Louisiana] and its relationship to the parties or the dispute nor by any compelling considerations of remedial justice."

La. Civ. Code Ann. art. 3549(B)(1)–(2).

Thus, the Court must determine whether Louisiana prescription law differs from the prescription laws of each Plaintiff's home state, that is, whether Plaintiffs' claims would be prescribed under one statute of limitations but not the other. Although the substantive law of Florida, California, Alabama, Mississippi, Georgia, Texas, North Carolina, Virginia, Illinois, and Oklahoma apply in these cases, Louisiana's prescription law may nevertheless apply. *See Marchesani v. Pellerin-Milnor Corp.*, 269 F.3d 481 (5th Cir. 2001) (Wiener, J.).

In this case, Defendants argue, and Plaintiffs do not dispute, that each of Plaintiffs' causes of action, with the exception of their unjust enrichment claim, are governed by statutes of limitations that run between one and four years. *Compare* R. Doc. 19984-1 at 24 *with* R. Doc. 21779 at 14–15. Thus, for their claims to be timely filed, one or more tolling doctrines must apply to their claims. Plaintiffs first point to the *American Pipe* doctrine, arguing previously filed class actions serve to have tolled every Plaintiffs' claims. Second, Plaintiffs contend Defendants' dilatory conduct obstructed their ability to file suit and therefore contend their claims were tolled by the doctrine of *contra non valentem*. Finally, Plaintiffs argue they neither knew nor could have known of their injuries prior to September 4, 2014 and, therefore, the discovery rule applies to each of their claims, making them timely.

### b. Whether *American Pipe* Tolling Applies to the *Brooke* Complaint

Defendants argue *American Pipe* tolling does not apply to Plaintiffs' claims, as this Court has subject matter jurisdiction over the class action based on diversity, and therefore, "[t]he 'Court cannot uniformly apply the *American Pipe* doctrine . . . , but must instead examine each state's tolling law to determine whether or not the state recognize class-action tolling.'" R. Doc. 19984-1 at 27 (quoting *In re Vioxx Products Liab. Litig.*, 478 F. Supp. 2d 897, 907–08 (E.D. La. 2007)). Thus, Defendants contend, "Plaintiffs may not tack one class-action on top of another and continue to toll the statute of limitations indefinitely." *Id.* (quoting *Smith v. Cutter Biological*, 770 So. 2d 392, 410 (La. Ct. App. 2000)). Finally, Defendants contend, even if *American Pipe* tolling were available to plaintiffs who filed class-actions in a federal court sitting in diversity, *American Pipe* applies to unnamed class members who were members of a class action that was not certified only. *Id.* at 28. Thus, because "85–90% of the *Brooke* class members were not included in the [*Amorin*] class" and the *Amorin* class was ultimately certified, *American Pipe* tolling is not available to them.

In opposition, the PSC argues the Court's certification of the *Amorin* class, as well as the *Silva* class-action filed in state court and subsequently removed to this Court serves to toll the claims of each of the *Brooke* Plaintiffs. Plaintiffs argue "all claims arising out of the transactions and occurrences described in the *Silva* Petitions and the *Germano*/*Gross*/*Wiltz*/*Amorin* Complaints are tolled under Louisiana Code of Civil Procedure Article 596 and/or *American Pipe*, because "unlike the class actions at issue in *Quinn* and *China Agritech*, the class actions in this litigation were *certified*, not denied." R. Doc. 21779 at 19. Finally, addressing Defendants' "piggy-back" argument, Plaintiffs contend that, even assuming *Brooke* "piggy-backs" on the *Amorin* class, "that should only affect the ability of *Brooke* plaintiffs to seek *class certification*, not their ability to assert individual claims in their own names." *Id.* at 19.

In *American Pipe & Construction Co. v. Utah*, the Supreme Court held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 414 U.S. 538, 554 (1974). This rule was initially limited to "purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status," *id.* at 553, but the rule was later extended to apply to "all asserted members of the class, not just as to intervenors." *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 350 (1983) (internal quotation omitted). The Court explained the justification for this doctrine:

> A putative class member who fears that class certification may be denied would have every incentive to file a separate action prior to the expiration of his own limitations. The result would be a needless multiplicity of actions—precisely the situation the Federal Rule of Civil Procedure 23 and the tolling rule of *American Pipe* were designed to avoid.

*Id.* at 350–51.

The *American Pipe* doctrine is a matter of federal common law, or, as the Fifth Circuit has said, a "judge-made federal practice." *Vaught v. Showa Denko K.K.*, 107 F.3d 1137, 1146 (5th Cir. 1997). On the one hand, the U.S. Supreme Court has held that the statute of limitations in a subsequently filed federal question action should be equitably tolled during the pendency of a federal class action. *See American Pipe*, 414 U.S. at 552–53 (applying equitable tolling rule to subsequent motion to intervene in action after denial of class certification in that action); *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353–54 (1983) (extending equitable tolling rule of *American Pipe* to subsequent independent individual action after denial of class certification in separate action). On the other hand, in diversity cases, where state law provides the rules of decision, "a federal court should apply not only state statutes of limitation but also any accompanying tolling rules." *Id.* at 1145 (citing *Walker v. Armco Steel Corp.*, 446 U.S. 740, 750–

53 (1980)).  Indeed, this Court has recognized that *American Pipe* does not automatically apply in

diversity cases:

> The limitations periods of *American Pipe* and *Crown, Cork* were derived from
> federal statutes.  Here, we are dealing with Hawaii's limitation statutes.  Because
> none of them provide for tolling in a situation such as exists here, it is doubtful that
> either *American Pipe* or *Crown, Cork* can be treated as applicable precedent.

*Orleans Parish Sch. Bd. v. U.S. Gypsum Co.*, 892 F. Supp. 794, 805 (E.D. La. 1995). Therefore,

the Court must examine whether Florida, California, Louisiana, Alabama, Mississippi, Georgia,

Texas, North Carolina, Virginia, Illinois, and Oklahoma recognize *American Pipe* tolling, and if

so, whether these states allow for cross-jurisdictional tolling.  It is also necessary to decide which

class action tolls Plaintiffs' claims.

The Court first considers whether each state observes cross-jurisdictional tolling before

turning to an analysis of whether the *Brooke* Plaintiffs' claims have been tolled by the applicable

class actions previously filed.

**i.  *Whether the relevant jurisdictions recognize cross-jurisdictional tolling***

Louisiana, Virginia, Texas, Florida, and Illinois do not allow for cross-jurisdictional

tolling.[3] *See Quinn v. La. Citizens Prop. Ins. Corp.*, 118 So. 3d 1011, 1022–23 (La. 2012); *Vaught*

*v. Showa Denko K.K.*, 107 F.3d 1137, 1147 (5th Cir. 1997) (considering Texas law); *Newby v.*

*Enron Corp.*, 542 F.3d 463, 471–72 (5th Cir. 2008) (considering Texas law); *Becnel v. Deutche*

*Bank, A.G.*, 507 F. App'x 71, 73 (2d Cir. 2013) (considering Florida law); *Portwood v. Ford Motor*

*Co.*, 701 N.E.2d 1102 (Ill. 1998); *Casey v. Mereck & Co.*, 722 S.E.2d 842, 845 (Va. 2012)

---

[3] The PSC points out in its brief that many of the state courts that ruled on the issue of cross-jurisdictional
tolling did so prior the issuance of the Class Action Fairness Act ("CAFA") and that CAFA's strong "interest in 'the
efficiency and economy of the class-action procedure' doubly applies to the cases before this Court because of both
their combined MDL and CAFA jurisdictional status." R. Doc. 21963 at 17. Without clear guidance from these state
courts that their decisions not to recognize cross-jurisdictional tolling have been overturned by its MDL and CAFA
jurisprudence, the Court declines the invitation to extend the states' law in such a way.

("[T]here is no authority in Virginia jurisprudence for the equitable tolling of a statute of limitations based upon the pendency of a putative class action in another jurisdiction.").

Although the California courts have not explicitly rejected cross-jurisdictional tolling, "The weight of authority and California's interest in managing its own judicial system counsel[s] [the Court] not to import the doctrine of cross-jurisdictional tolling into California law." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025 (9th Cir. 2008). Similarly, Mississippi, which has no class action procedure, does not appear to have considered whether to adopt the *American Pipe* doctrine; however, because this court was "cited to no Mississippi court decision applying class action tolling to a Mississippi law cause of action allegedly barred by a Mississippi statute of limitations," the Court makes an *Erie* guess that Mississippi would not adopt cross-jurisdictional tolling. *Boone v. Citigroup, Inc.*, 416 F.3d 382, 393 (5th Cir. 2005).

Finally, with respect to Alabama, Georgia, Oklahoma, and North Carolina, these state courts have not addressed the issue of cross-jurisdictional tolling. Because, however, these states have accepted intra-jurisdictional tolling,[4] and "the best prediction is that [such] a state would recognize cross-jurisdictional tolling," the Court concludes these states would adopt the doctrine. *In re Libor-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262, 2015 WL 4634541, at *129 (S.D.N.Y. Aug. 4, 2015), *amended*, No. 11 MDL 2262, 2015 WL 13122396 (Oct. 19, 2015).

The PSC contends the Court should adopt the Eighth Circuit's construction of *American Pipe* and its progeny as articulated in *In re General American Life Insurance Company Sales Practices Litigation*, 391 F.3d 907 (8th Cir. 2004). R. Doc. 21963 at 16. In *General American*, the

---

[4] *See White v. Sims*, 470 So. 2d 1191, 1193 (Ala. 1985); *Bickerstaff v. Suntrust Bank*, 788 S.E. 787, 791 (Ga. 2016); *Scarvey F. First Fed. Sav. & Loan Ass'n of Charlotte*, 552 S.E.2d 655, 661 (N.C. Ct. App. 2001); *American Fuller v. Sight 'N Sound Appliance Cntrs., Inc.*, 982 P.2d 528, 531 n.5 (Okla. Civ. Appl. 1999); *see also* Okla. Stat. tit. 12, § 100.

Eighth Circuit held that, even though Pennsylvania law—which all parties agreed "would have applied to the case if it had not been transferred" to the MDL court—did not allow for cross-jurisdictional tolling, "the federal interest in 'the efficiency and economy of the class-action procedure' outweighs any state interest and therefore justifies tolling in diversity cases where the otherwise-applicable state law provides no relief." *Id.* at 911, 915 (citing *Adams Pub. Sch. Dist. v. Asbestos Corp.*, 7 F.3d 717, 718–19 (8th Cir. 1993)). Although it is true that allowing each claim, regardless of where the effected property is situated, to proceed subject to the same prescription rules would be judicially efficient, especially in the CAFA and MDL context, the Court has found no Fifth Circuit precedent that would allow for such liberties. Absent the Fifth Circuit's explicit (or even tacit) endorsement, the Court respectfully declines to adopt the doctrine articulated by the Eighth Circuit in *General American*.

### ii. *Selecting the Appropriate Class Action for Tolling*

Courts have uniformly held that *American Pipe* operates only with respect to the first class action filed for a specific controversy. If class certification has been denied, plaintiffs cannot receive the benefit of tolling in a second, subsequently filed class action involving the same proposed class and claims. This limitation is known as the prohibition against "stacking" or "piggybacking" class actions for purposes of tolling. *See, e.g., Basch v. Ground Round, Inc.*, 139 F.3d 6, 11 (1st Cir. 1998) ("Plaintiffs may not stack one class action on top of another and continue to toll the statute of limitations indefinitely."); *Griffin v. Singletary*, 17 F.3d 356, 359 (11th Cir. 1994) (same); *Salazar-Calderon v. Presido Valley Farmers Ass'n*, 765 F.2d 1334, 1350 (5th Cir. 1985) ("Plaintiffs have no authority for their contention that putative class members may piggyback one class action onto another and thus toll the statute of limitations indefinitely, nor have we found any.").

The PSC first argues the *Silva* action filed he Civil District Court for the Parish of Orleans suspends prescription as to at least the *Brooke* Plaintiffs who fall within the proposed class definition, notwithstanding the location of their respective properties; second, the PSC points to this Court's September 26, 2014 class certification order of the *Amorin* class, R. Doc. 18028.[5]

The *Silva* action was brought by Stephen and Isis Silva on November 20, 2009 on behalf of themselves and others similarly situated, for damages arising out of the purchase and/or installation of defective Chinese-manufactured drywall. Specifically, the class included:

> All citizens of the State of Louisiana who, between January 1, 2005 and December 31, 2008, purchased Chinese-manufactured drywall, by and/or thru InteriorExterior Building Supply, either directly or through a builder, retailer, contractor, or other supplier, for installation or use in commercial or residential property located within the State of Louisiana.

*Silva v. InteriorExterior Building Supply*, No.09-12503 (CDC Parish of Orleans, State of La. Nov. 30, 2009), Petition at ¶ VIII. The filing of the *Silva* action serves to toll the statute of limitations only with respect to Louisiana Plaintiffs who purchased Chinese-manufactured drywall directly or indirectly from InteriorExterior Building Supply and installed it in a property located in Louisiana. Thus, the claims brought in *Silva* do not serve to toll Plaintiffs' claims in this action. *See Bennett v. Gen. Motors Corp.*, 420 So. 2d 531, 539 (La. Ct. App. 1982) (holding that the "[f]iling of a

---

[5] Plaintiffs also argue Louisiana Code of Civil Procedure Article 596 serves to make the *Brooke* action timely with respect to *all* Plaintiffs' claims, pointing to the Court's September 26, 2014 class certification order. In *Quinn v. Louisiana Citizens Property Insurance Corporation*, the Louisiana Supreme Court held, "La. C.C.P. art. 596 . . . applies only to 'petition[s] brought on behalf of a class' in the state courts of Louisiana." 118 So. 3d at 1020. As a result, the Court concludes the Court's September 26, 2014 class certification order did not toll the *Brooke* action with respect to all Plaintiffs, as that order pertained to complaints filed in federal court. Moreover, *Silva*, although a class action filed in state court, also did not toll the Brooke complaint, as that case pertained only to Louisiana Plaintiffs who purchased Chinese-manufactured drywall from InteriorExterior, not the BNBM Entities. *See Bennett*, 420 So. 2d at 539.

The PSC also points to Louisiana Civil Code article 3549, arguing it "creates the presumption that an action that is timely filed in Louisiana is timely," again pointing the *Silva* action filed in Louisiana State Court. R. Doc. 21963 at 14. Even assuming *arguendo* that article 3549 would allow for a class action filed in Louisiana state court to toll a subsequent action filed in federal court, the Court reiterates that *Silva* sought relief on behalf of a limited number of plaintiffs against a defendant not currently before this Court.

petition . . . interrupts prescription only as to defendants *named* in the petition relied upon" (emphasis in original)).

The PSC's argument fairs slightly better with respect to the Court's September 26, 2014 class certification order. In that order, the Court certified a class defined as:

> All owners of real properties in the United States, who are named Plaintiffs on the complaints in *Amorin*, *Germano*, *Gross*, and/or *Wiltz* (*i.e.*, not an absent class member), asserting claims for remediated damages arising from, or otherwise related to Chinese Drywall manufactured, sold, distributed, supplied, marketed, inspected, imported or delivered by the Taishan Defendants.

R. Doc. 18028 at 34–35. During oral argument, however, the PSC pointed not to the class ultimately certified by the Court's September 26, 2014 certification order, but rather to the proposed class filed in *Gross*. In *Gross*, the plaintiffs brought their class action on behalf of, "All owners and landlords of real properties located in the United States containing defective Chinese drywall manufactured, sold, distributed, and/or supplied by Defendants."[6] No. 09-6690, R. Doc. 1 at ¶ 191.

The Court ultimately certified the *Gross* class action—along with the class actions filed in *Amorin*, *Germano*, and *Wiltz* on September 26, 2014. That certification order modified the *Gross* plaintiffs' proposed class, limiting the class to named plaintiffs only. The Court agrees with the PSC that the operative class definition for the purposes of *American Pipe* tolling is not the class ultimately certified, but rather the class initially proposed. Thus, because the Court modified the class definition from "All owners and landlords of real properties located in the United States" to "named Plaintiffs on the complaints in *Amorin*, *Germano*, *Gross*, and/or *Wiltz*," class certification

---

[6] In the *Gross* complaint, among others, the plaintiffs named Taishan Gypsum Co. Ltd.; Taian Taishan Plasterboard Co., Ltd.; China National Building Material Group Corporation; China New Building Materials Co.; CNBMIT Co. Ltd.; CNBM USA Corp.; United Suntech Craft, Inc.; Beijing New Building Materials Public Limited Company; and Beijing New Building Material Group Company, Ltd. No. 09-6690, R. Doc. 1 at 3.

was effectively denied for all unnamed class members who would have otherwise fallen within the class definition.

The *Brooke* complaint was filed on September 4, 2015, less than one year after the Court certified the *Amorin* class on September 26, 2014. As a result, the Court concludes this action is timely brought, via *American Pipe* tolling, with respect to the *Brooke* Plaintiffs whose properties are located in Alabama, Georgia, Oklahoma, or North Carolina, the jurisdictions that recognize cross-jurisdictional tolling. Accordingly, the Court will evaluate whether the Louisiana, Virginia, Texas, Florida, Illinois, California, and Mississippi Plaintiffs' claims are timely brought before considering whether the *Brooke* action states a claim for relief.[7]

### c. *Contra Non Valentem*

Next, the PSC argues the Court should not punish Plaintiffs for Defendants' "calculated and strategic decisions to erect as many roadblocks as possible to the plaintiffs' ability to recover for the contamination that Chinese Drywall has caused to their homes," arguing the third element of the doctrine of *contra non valentem* applies in this case.[8] R. Doc. 21963 at 38–39. It points to several instances in which Defendants have chosen to ignore the litigation and the default judgments that have been entered against them. *Id.* at 29.

---

[7] The Court notes that, in their brief, Defendant suggests the Court should evaluate whether Plaintiffs knew or should have known about their causes of action before the Court considers whether *American Pipe* tolling applies to their claims. R. Doc. 22071 at 1–3. Not so. Under the *American Pipe* doctrine, the party whose claims were tolled by the prior class action may be fully aware of his or her cause of action, but simply awaiting the court's decision on class certification—if class certification is denied, the statute of limitations begins to run on the plaintiff's claims, and his having prior knowledge of his injury would not bar him from filing suit seeking relief based on that injury.

[8] The doctrine of *contra non valentem* serves to toll the running of prescription in four instances, "(1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant." *Wells v. Zadeck*, 89 So. 3d 1145, 1150 (La. 2012); *see also* LA. CIV. CODE art. 3492. The PSC argues both the doctrine's third and fourth prongs apply in this case.

As the Louisiana Supreme Court has cautioned, the doctrine of *contra non valentem* or equitable tolling is an extraordinary remedy, to be applied only in "exceptional circumstances." *Marin v. Exxon Mobil Corp.*, 48 So. 3d 234, 245 (citing *Renfroe v. State ex rel. Dept. of Transp. & Dev.*, 809 So. 2d 947 (La. 2002)). Louisiana courts have recognized that the prescription period should not run where, as most relevant here, "the defendant prevents the plaintiff from availing himself of his cause of action or [where] the action was not known or reasonably knowable by the plaintiff." *Edmundson v. Amoco Prod. Co.*, 924 F.2d 79, 81 (5th Cir. 1991). Although Defendants' conduct in the action has been less than superlative, their dilatory tactics did not serve to prevent Plaintiffs from discovering their injuries, nor did such tactics prevent Plaintiffs from filing suit. Thus, the Court finds the third prong of *contra non valentem*, that Defendants have "done some act effectually to prevent [Plaintiffs] from availing [themselves of their] cause[s] of action," does not apply in this case. *See Wells*, 89 So. 3d at 1150.

### d. Whether the Court should allow individual plaintiffs to show cause why they did not know of their cause of action until or after September 4, 2014

Finally, with respect to timeliness, the PSC argues the Court should not dismiss all Plaintiffs named in the *Brooke* action indiscriminately. R. Doc. 21767 at 11. Similarly, in its supplemental brief, Taishan contends, "the Court should require each claimant to specifically allege case-specific facts of accrual and notice." R. Doc. 22071 at 2. The BNBM entities oppose this remedy, arguing this tolling doctrine applies not only to when a plaintiff has actual knowledge of her cause of action but also to when that plaintiff should have had knowledge of her cause of action through reasonable diligence. R. Doc. 22072 at 11.

In support of its argument that the discovery rule does not serve to toll Plaintiffs' claims, Defendants first contend Virginia does not recognize the discovery rule.[9] R. Doc. 22072 at 31, R. Doc. 22071 at 1. Next, Defendants submit, with respect to the states that do recognize the discovery rule, Plaintiffs in those states either knew or should have known of their cause of action well before September 4, 2014, making their claims untimely. In support of their argument that Plaintiffs either knew or should have known of their causes of action, Defendants point to media reports, the CPSC's public release identifying manufacturers of problematic drywall, and the various other timely-filed complaints around the country. R. Doc. 19984-1 at 26.

Under Virginia law, a cause of action accrues "from the date the injury is sustained . . . and not when the resulting damage is discovered." Va. Code Ann. § 8.01-230 (2018). In cases in which the plaintiff alleges damage to property, "the applicable period of limitation begins to run from the moment the cause of action arises rather than from the time of discovery of injury or damage." *Comptroller of Va. ex rel. Va. Military Inst. v. King*, 232 S.E.2d 895, 900 (Va. 1977). As the Supreme Court of Virginia explained in *King*,

> The inequities that may arise from the general rule which may trigger a statute of limitations when the injury or damage is unknown or difficult or even incapable of discovery are apparent. Nevertheless, we believe that any change in a rule of law that has been followed in our jurisdiction and relied on by bench and bar for so many years should be made not by us, but by the General Assembly, which thus far has not approved any modification.

---

[9] Defendants also argue Georgia and Alabama do not recognize the discovery rule. R. Doc. 22072 at 31; R. Doc. 22071 at 1. Under Georgia law "ignorance of facts constituting a cause of action does not prevent the running of the statute of limitation." *DeKalb Cty. v. C.W. Matthews Contracting Co.*, 562 S.E.2d 228, 230 (2002) (concluding that injury occurred and, thus, cause of action accrued when pipe was punctured even though plaintiff did not discover the puncture until years later); *see also Stamschror v. Allstate Ins. Co.*, 600 S.E.2d 751, 752 (Ga. App. 2004) ("The 'discovery rule' is confined to cases of bodily injury and does not apply to actions seeking recovery for property damage only."). Further, it appears that under Alabama law, the date upon which the statute of limitations begins to run is the date upon which the injury is discovered, regardless of whether the injured party is aware of its cause. *Utilities Bd. of City of Opp v. Shuler Bros., Inc.*, 138 So. 3d 287 (Ala. 2013); *CertainTeed Corp.*, 883 So. 2d at 1269; *Franklin v. Mitchell*, 87 So. 3d 573, 579–80 (Ala. Civ. Ct. App. 2011) (holding that the statute of limitations began to accrue on the date the claimant observes the damage in his or her home). Because the *Gross* complaint served to toll the claims of the *Brooke* Plaintiffs with properties located in Georgia and Alabama (among others), however, Georgia's lack of a discovery rule with respect to property damage and Alabama's limited discovery rule is of no consequence here.

*Id.* (citation omitted). Thus, under Virginia law, any alleged "difficulty in ascertaining the existence of a cause of action is irrelevant." *Id.*

Generally—other than Virginia—each of the state laws at issue in this case recognize substantially similar elements for tolling a cause of action pursuant to the discovery rule. *See, e.g.*, *CertainTeed Corp.*, 883 So. 2d at 1269; *City of San Diego v. U.S. Gypsum Co.*, 35 Cal. Rptr. 2d 876, 881 (Cal. Ct. App. 1994) ("If the last element to occur is the element of damage, the statute of limitations begins to run upon the occurrence of 'appreciable and actual harm, however uncertain in amount,' that consists of more than nominal damages."); *Davis v. Monahan*, 832 So. 2d 708, 709 (Fla. 2002) (holding that a cause of action accrues when "the plaintiff either knows or should know that the last element of the cause of action occurred"); *Knox Coll. v. Celotex Corp.*, 430 N.E.2d 976, 979 (Ill. 1981) (holding that the discovery rule that postpones the limitations period until a claimant knows or should know of injury and that it was wrongfully caused); *Tilley v. Kennedy*, 605 So. 2d 226, 228 (La. App. 1992) ("[P]rescription will not run against one who is ignorant of the facts upon which his cause of action is based, as long as such ignorance is not 'willful, negligent or unreasonable.'"); *Barnes ex. rel. Barnes v. Koppers, Inc.*, 534 F.3d 357, 361 (5th Cir. 2008) ("Under [Mississippi law,] § 15-1-49, a cause of action accrues when the plaintiff has knowledge of the injury, not knowledge of the injury and its cause."); N.C. Gen. Stat. § 1-52(16) (2018) (stating that cause of action for property damage accrues when the injury "becomes apparent or ought reasonably to have become apparent to the claimant"); *Samuel Roberts Noble Found., Inc. v. Vick*, 840 P.2d 619, 624 ("[T]he limitations period does not begin to run until the date the plaintiff knew or should have known of the injury."); *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990) (holding that discovery rule "operates to toll the running of the period

of limitations until the time that the plaintiff discovers, or through the exercise of reasonable care and diligence should discover, the nature of his injury").

Having concluded that the fourth prong of Louisiana law's doctrine of *contra non valentem* could serve to toll the Louisiana-based Plaintiffs' claims, but that Virginia's discovery rule—or lack thereof—would not toll the Virginia-based Plaintiffs' claims, the Court now considers whether the Virginia-based Plaintiffs' claims are subject to Louisiana's prescriptive rules, and are therefore potentially timely. As explained *supra*, pursuant to Louisiana Civil Code article 3549(B)(2),

> If the action would not be barred under Louisiana prescription law but would be barred under the law of the state whose substantive law governs, then the Court must apply Louisiana prescription law unless allowing the case to proceed "is not warranted by the policies of [Louisiana] and its relationship to the parties or the dispute nor by any compelling considerations of remedial justice.

The Court concludes Louisiana's prescriptive law applies to the Virginia-based Plaintiffs' claims, as no exception to article 3548(B)(2) applies here. *See* La. Civ. Code Ann. art. 3549(B)(2).

Thus, when each Plaintiff's cause of action arose depends on when she or he knew or should have known of her or his cause of action. Although Defendants make much of advertisements notifying the public of issues with Chinese-manufactured drywall, the statutes of limitations relevant to Plaintiffs' causes of action began, at the earliest, when the defect manifested itself in some way in the Plaintiff's homes or Plaintiffs should have known their properties were built using defective drywall through some other means.[10] As a result, Plaintiffs' whose claims were not tolled by *American Pipe* principles,[11] as discussed *supra*, will be required to prove they

---

[10] Unlike the advertising in *In re Vioxx Products Liability Litigation*, 478 F. Supp. 2d 897 (E.D. La. 2007), the case to which Defendants point in support of their argument that national advertising puts potential plaintiffs on notice of their causes of action, a person would know whether he or she was taking the drug Vioxx and therefore an advertisement informing the viewer that the drug is defective would put that person on notice of his or her cause of action, whereas a person who sees a notice that Chinese manufactured drywall is defective might not know his or her home was built or remodeled using a particular kind of drywall.

[11] Alabama, Georgia, Oklahoma, and North Carolina.

neither knew or should have known of their causes of action sufficient to satisfy their respective jurisdictions' discovery law,[12] a highly fact based inquiry not appropriate for a motion to dismiss. *See USPPS, Ltd. v. Avery Dennison Corp.*, 326 F. App'x 842, 850 (5th Cir. 2009). As a result, the Court will deny Defendants' motion to dismiss based on prescription as premature.

### D. Whether the *Brooke* complaint should be dismissed for failure to state a claim

Finally, Defendants argue Plaintiffs have failed to state a claim for relief against them. The Court addresses each cause of action brought by Plaintiffs in turn.

### a. Whether Louisiana law allows Plaintiffs to bring claims for negligence, negligence per se, strict liability, express or implied warranty, private nuisance, or unjust enrichment

Defendants first argue the majority of Plaintiffs' claims are barred by the Louisiana Product Liability Act ("LPLA"), as pursuant to the Pursuant "Plaintiffs' claims against Defendants for strict liability, negligence and negligence per se are not viable as independent theories of recovery outside of the LPLA framework." R. Doc. 19984 (quoting *King v. Bayer Pharm. Corp.*, No. 09-0465, 2009 WL 2135223, at *3 (W.D. La. Jul. 13, 2009)).

The LPLA provides "the exclusive theories of liability for manufacturers for damage caused by their products." La. Rev. Stat. § 9:2800.52. A plaintiff "may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in [the LPLA]." *Id.*; *see also Jefferson v. Lead Indus. Ass'n*, 930 F. Supp. 241, 245 (E.D. La. 1996). Notably, however, the statute defines "damage" by explicitly excluding amounts recoverable under redhibition for damage to the product and other economic loss. Thus, "Courts have interpreted the LPLA as preserving redhibition as a cause of action only to the extent the

---

[12] Except for the Virginia-based Plaintiffs' claims, which may be toll pursuant to the fourth prong of Louisiana's doctrine of *contra non valentem*, "where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant." *Wells*, 89 So. 3d at 1150.

claimant seeks to recover the value of the product or other economic loss." *De Atley v. Victoria's Secret Catalogue, LLC*, 2004-0661 (La.App. 4 Cir. 5/14/04), 876 So.2d 112, 115.

The PSC concedes that the LPLA, together with the claims in redhibition, provide the sole avenues of recovery for the claims asserted by the members of *Brooke* who are domiciled in Louisiana. The PSC argues, however that the limitations placed on the Louisiana-based Plaintiffs do not apply to the members of *Brooke* who live in states other than Louisiana. The Court agrees.

The LPLA does not apply to non-Louisiana Plaintiffs. *See* La. Civ. Code Ann. art. 3545 (noting that the Act applies only "(1) when the injury was sustained *in this state by a person domiciled or residing in this state*; or (2) when the product was manufactured, produced, or acquired in this state and caused the injury either in this state or in another state *to a person domiciled in this state*." (emphasis added)). Therefore, the Court will not dismiss the non-Louisiana Plaintiffs' claims for negligence, negligence per se, strict liability, express or implied warranty, private nuisance, and unjust enrichment. However, the Court will dismiss the Louisiana-based Plaintiffs' claims for the causes of action barred by the LPLA and will dismiss the non-Louisiana Plaintiffs' claims brought under the LPLA.

### b. Louisiana-based Plaintiffs' Redhibition and Warranty of Fitness Claims

The Louisiana-based Plaintiffs also bring claims for Defendants' alleged violations of the warranty against redhibitory defects and the warranty of fitness. A redhibitory defect is one that renders a product "useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect [or] without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price." La. Civ. Code art. 2520. Similarly, an item is not fit for its ordinary use when the seller knows how the buyer intends to use it, the buyer relies on the seller

to select it for that use, and the thing sold does not fit the buyer's intended use. La. Civ. Code art. 2524. Defendants contend these causes of action may not be brought together in the same action. R. Doc. 19984-1 at 36.

In *Stroderd v. Yamaha Motor Corp., U.S.A.*, No. 04-3040, 2005 WL 2037419, at *3 (E.D. La. Aug. 4, 2005), this Court held that the two causes of action could not be brought together, pointing to Article 2524's Revision Comment (b), which reads:

> Under this Article when the thing sold is not fit for its ordinary use, even though it is free from redhibitory defects, the buyer may seek dissolution of the sale and damages, or just damages, under the general rules of conventional obligations. The buyer's action in such a case is one for breach of contract and not the action arising from the warranty against redhibitory defects.

In the present case, the drywall at issue was not free from defects. Comment (b) implies that a breach of the warranty of fitness for ordinary use claim is only an independent cause of action when an item is free from redhibitory defects. This proposition has been consistently endorsed by the Louisiana court system. *See, e.g.*, *PPG Indus. v. Industrial Laminates Corp.*, 664 F.2d 1332, 1335 (5th Cir. 1982) ("[C]ourts in Louisiana have held unequivocally that actions based on a breach of warranty against defects are to be brought in redhibition instead of as a breach of contract."). The Court therefore concludes that the Louisiana-based Plaintiffs' breach of the warranty of fitness for ordinary use actions under La. Civ. Code art. 2524 are precluded by their redhibition claims.[13]

### c. Plaintiffs' Consumer Protection Act Claims and Plaintiffs' Private Nuisance Claims

Plaintiffs do not oppose Defendants' argument that Plaintiffs have failed to state a Consumer Protection Act cause of action under the various states' laws, nor do they oppose

---

[13] The Court notes these claims are brought on behalf of the Louisiana-based Plaintiffs only. No. 15-4127, R. Doc. 1 at 19.

Defendants' argument that Plaintiffs have failed to state a claim for private nuisance; therefore, the Court will dismiss these claims.[14]

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Defendants' motion be and hereby is **DENIED** in part and **GRANTED** in part. To the extent Defendants argue dismissal is proper for lack of jurisdiction and improper service, the motion is **DENIED**. Moreover, the claims of those Plaintiffs whose homes are located Alabama, Georgia, Oklahoma, or North Carolina are timely pursuant to the *Gross* Complaint and *American Pipe* tolling principles. With respect to the remaining Plaintiffs, their claims may be timely pursuant to the respective discovery rules applicable to their claims; thus, Defendants' motion to dismiss with respect to these Plaintiffs is premature. Therefore, with respect to Defendants' argument that Plaintiffs' claims are not timely filed, the motion is **DENIED**.

**IT IS FURTHER ORDERED** that the Louisiana-based Plaintiffs' claims for negligence, negligence per se, strict liability, private nuisance, breach of the warranty of fitness, and unjust enrichment be and hereby are **DISMISSED WITH PREJUDICE**. With respect to the Louisiana-based Plaintiffs' claims brought pursuant to Defendants' alleged breach of the warranty against redhibitory defects and violations of the Louisiana Products Liability Act, Defendants' motion is **DENIED**.

**IT IS FURTHER ORDERED** that all Plaintiffs' claims pursuant to the various states' Consumer Protection Acts and all Plaintiffs' Private Nuisance Claims be and hereby are **DISMISSED WITH PREJUDICE**.

---

[14] With respect to the non-Louisiana Plaintiffs' remaining claims—negligence, negligence per se, strict liability, and unjust enrichment—the Court notes Defendants briefed dismissal of these claims based entirely on the substantive law of Louisiana. Because Louisiana's substantive law does not apply to these claims with respect to the non-Louisiana based Plaintiffs and the Court has dismissed these claims with respect to the Louisiana-based Plaintiffs, the Court will deny Defendants' motion to dismiss these claims as brought by the non-Louisiana based Plaintiffs.

**IT IS FURTHER ORDERED** that the non-Louisiana based Plaintiffs' claims brought pursuant to the Louisiana Products Liability Act be and hereby are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that with respect to the non-Louisiana based Plaintiffs' remaining claims, specifically those based in negligence, negligence per se, strict liability, and unjust enrichment, Defendants' motion be and hereby is **DENIED**.

New Orleans, Louisiana on this 6th day of March, 2019.

Eldon E. Fallon
U.S. District Court Judge