**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

IN RE:  CHINESE-MANUFACTURED          MDL NO. 2047
        DRYWALL PRODUCTS LIABILITY
        LITIGATION                      SECTION: L

        THIS DOCUMENT RELATES TO:       JUDGE FALLON

        ALL *CASES*                     MAG. JUDGE WILKINSON

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF MOTION TO LIFT PTO 32 FOR SETTLEMENT
OF INDIVIDUAL CLAIMS ON REMAND WITH VOLUNTARY HOLDBACK FOR
FUTURE FEE ALLOCATION**

MAY IT PLEASE THE COURT:

        The law firms of Parker Waichman LLP, Milstein, Jackson, Fairchild & Wade LLP,

Whitfield, Bryson & Mason LLP, and Mrachek, Fitzgerald, Rose, Konopka, Thomas & Weiss P.A.

(collectively, "Movers") submit this Memorandum in Support of their Motion to Lift PTO 32 for

Settlement of Individual Claims on Remand with Voluntary Holdback for Future Fee Allocation,

as follows:

                    **I.      PROCEDURAL POSTURE**

   **A.  The MDL, Remand, and PTO 32**

        On March 12, 2018, this Court issued a Suggestion of Remand, Opinion and Order

("Suggestion of Remand") (R. Doc. 21242) to return claims involving defective Chinese drywall

to the transferor courts, beginning with *Amorin v. Taishan Gypsum Co., Ltd.*, Case No. 11-cv-

22408 (SDFL) ("Florida Amorin").  The Suggestion of Remand chronicles the history of activity

in the MDL, including coordination of discovery, disposition of jurisdictional and related

motions, bellwether cases involving "evidence specific to seven *individual* properties" (emphasis

added) (R. Doc. 21242 at 4), and the Court's adoption of a formula that can be used to assist in

1

calculating damages caused by defective Chinese drywall.  In sum, the 1700 Florida *Amorin* cases were returned to the Southern District of Florida for adjudication of all issues not resolved in the MDL.  There are many.

Excluded from remand, according to this Court, are issues related to common benefit work:  "The Court suggests that it retains jurisdiction to consider the fair and equitable assessment of any potential recovery for the services performed and expenses incurred by attorneys acting for administration and common benefit of all MDL plaintiffs." *Id*. at 14.  The Suggestion of Remand does not describe how such retained authority should be administered or coordinated with the authority of the transferor court, or how it implicates the rights of private counsel under fee agreements with clients whose claims are no longer subject to the jurisdiction of this Court.

On March 22, 2016, the Judicial Panel on Multidistrict Litigation ("JPML") granted a conditional remand. JPML R. Doc. 482.

On April 3, 2018, the PSC filed a motion in this Court seeking a holdback from future settlements and judgments in remanded cases to secure payment of common benefit fees.  See R. Doc. 21267 ("Remand Holdback Request").  Multiple firms objected to the Remand Holdback Request as premature, excessive, and a threat to chill future negotiations.[1]

---

[1] *See* R. Doc. 21289-1, Primary Counsel's Response in Opposition to Plaintiffs' Lead and Liaison Counsel's Motion Addressing Suggestion of Remand (R. Doc. 21267) by Parker Waichman LLP; Pendley Baudin & Coffin; Ryan Law Firm; Luckey & Mullins; Baron & Budd P.C.; Gentle, Turner Sexton & Harbison LLC; McCallum, Hoaglund, Cook & Irby LLP; Milstein, Jackson, Fairchild & Wade LLP; Roberts and Durkee LLP; Alters Law Firm PA; and Allison Grant P.A.  See also, R. Doc. 21267 by Morgan & Morgan and R. Doc. by Krupnick Campbell Malone Buser Slama Hancock Liberman P.A.

On April 12, 2019, four firms, including Parker Waichman LLP and Roberts & Durkee, filed a Motion to Vacate Conditional Remand Order with the JPML objecting to this Court's suggestion regarding retained jurisdiction over common benefit fee issues.  JPML R. Doc. 504.

On May 15, 2018, the Court issued Pretrial Order No. 32 ("PTO 32") establishing a three-day notification requirement on future settlements and prohibiting the distribution of related funds "until the Court confers with the transferor court regarding proper procedures to allocate a fair and equitable division among plaintiff(s), individually retained counsel, and common benefit counsel." R. Doc. 21328, at 3.

On June 7, 2018, the JPML remanded the Florida *Amorin* Cases.  JPML R. Doc. 524. The JPML expressly noted the objection regarding the suggestion of retained jurisdiction over common benefit assessment, but declined to reach the issue on ripeness grounds:  "In seeking vacatur, movants do not argue against remand *per se*, but, rather, dispute whether the transferee court may retain jurisdiction over the remanded action to determine a future common benefit fee assessment.  We need not reach this issue as plaintiffs have not yet achieved any recovery."  *Id.* at 1.

On August 24, 2018, the Court declared the Remand Holdback Request moot.  R. Doc. 21725.

B. **Litigation on Remand**

The first six months on remand were directed to identifying the remaining issues for adjudication and determining a path forward.  On November 16, 2018, Judge Cooke issued an Order adopting all of this Court's rulings and establishing a Trial Plan for Property Damage Claims and a Trial Plan for Other Damages and Personal Injury Damage Claims.  FLSD R. Doc. 112, attached hereto as Exhibit "C".

The Trial Plan for Property Damage Claims provides a process to identify and refine multiple unresolved issues through discovery and use of a special master.  It divides the unresolved property damage issues into four categories: Product Identification and Responsibility,[2] Ownership Verification, Square Footage, Contests and Requests for Setoffs.  It also permits limited discovery and tasks the special master to resolve disputes and make recommendations.  Thereafter, according the Trial Plan, the special master will apply the baseline damage formula developed by this Court, which yields **$84.73 to $90.02** per square foot for claims in this region.[3]  But the damage formula provides no value for plaintiffs who fully remediated, as Florida law limits recovery to actual damages,[4] and the Trial Plan does not indicate whether or how the damage formula applies to partially remediated properties or properties with mixed drywall.[5]

---

[2] The Trial Plan recognizes the following products:  "1) BNBM/Dragon board; 2) C & K; 3) Chinese Manufacturer #2 (purple stamp); 4) Crescent City Gypsum; 5) DUN; 6) IMT Gypsum; 7) ProWall; 8) Taian Taishan or Taihe Tape; 9) Made in China Meet or Exceeds; 10) various Drywall dimensions, including 4feetx12feetx1/2 inch and 4feet*12feet*1/2inch; 11) Venture Supply; 11) White Edge Tape, boards with no markings or boards with no markings other than numbers; 12) others."  *Id.* at 6, fn 2.  Taishan denies responsibility for the majority of these products.

[3] According to the Court, $105.91 is the national square foot unit price to remediate homes containing Chinese manufactured drywall, subject to adjustment for local building supply and labor costs.  R. Doc. 20741 at 26.  The adjustment factor for the Florida claims ranges from .8 to .85, resulting in a baseline square foot price for remediation of $84.73 to $90.02.  The adjustment factors are reflected in Plaintiffs' Master Excel Spreadsheet with Details of the Florida Plaintiffs' Property Damages Claims ("Plaintiffs' Master Spreadsheet").  Because of the spreadsheet's volume, it was filed conventionally in the Southern District of Florida.  *See* FLSD R. Doc. 56.

[4] According to the Trial Plan, "[P]laintiffs who have completely remediated may only recover the actual cost of remediation."  *Id.* at 6, fn 1.

[5] The PSC claims that these issues were effectively resolved by the default judgments entered by this Court.  Taishan, on the other hand, claims it is entitled to ordinary adjudication of these issues, rather than the abbreviated process adopted by Judge Cooke.  It is highly likely that these issues, and others, will be the subject of appeal to the Eleventh Circuit.

Separately, the Trial Plan for Other Damages[6] and Personal Injury Claims provides a process and schedule for discovery and trial of the "first 20 Florida claims to be tried." *Id.* at 9. It does not describe how the outcome of these trials will influence the adjudication of the other 1680 *Amorin* cases or a process and schedule for additional trials.

Movers are unaware of any progress towards an amicable aggregate resolution. Hence, individual victims of defective Chinese drywall who have waited over a decade for resolution continue to wait, while the litigation drags on with no realistic end in sight.[7]

## C.  Settlement Offer for Individual Claims

Soon after issuance of the Suggestion of Remand on March 12, 2018, counsel for Parker Waichman engaged counsel for Taishan to explore the potential for negotiations towards the settlement of individual claims. Negotiations intensified following remand on June 8, 2018 and have involved extensive time in direct negotiations, travel, client engagement, research, drafting, and painstaking analysis to develop a methodology for valuing, funding, and administering settlement of individual claims. The PSC was not involved in this process.

At the conclusion of this nearly year-long process, Movers and Taishan entered a Settlement Agreement and Release, effective **March 6, 2019** ("Settlement Agreement") (Exhibit "B" under seal) that offers 498 Participating Plaintiffs an opportunity to settle his or her claim based on a formula that balances all relevant factors. Critically, the Settlement Agreement

---

[6] The Order defines other damage claims as including, but not limited to, "claims for alternative living expenses, loss of use and enjoyment, lost rent, bankruptcy, foreclosure, and short sale." *Id.* at 9, fn 3

[7] The unresolved issues create substantial divergence in the potential risks and benefits of lock-step litigation for the individual claimants, making it difficult, if not impossible, to envision an aggregate solution that satisfies Rule 23(e).

applies to *individual* claims and does not contain a quota for participation.  Each Participating Plaintiff will make a fully informed decision to accept the offer and exit the litigation or reject the offer and remain in the litigation.

The potential total value conferred under this settlement is **$27,713,848.22**.  The actual total value will depend on the number of Participating Plaintiffs who accept the offer and the value of their claims under the formula.   Individual recoveries will range from $9,804 to $322,920 with average and median values of $50,591 and $41,465, respectively.

The terms of the Settlement Agreement are summarized as follows:

1. **Settlement Criteria**

Each claimant who accepts the Settlement Agreement will receive an "Individual Settlement Amount" based on a baseline value of $60 per square foot with discounts tied to the unresolved issues affecting value: square footage, product type, ownership, and remediation status.

**Baseline Value** - The baseline value for damages is $60 per square foot.  This value is based on many factors, including the damage methodology developed by the Court, actual remediation costs, non-remediation damages, setoffs claimed by Taishan for mixed drywall properties and for payments made under other settlements, the time-value of money, the risk of a negative outcome on appeal, and collectability of a judgment.

**Square Footage of the Affected Property** - The amount of under air square footage based on appraisals, public records and/or inspection reports.

**Product Type Based on Product Markings or Labels** - Forty-four (44) different product markings or labels were found on the Chinese manufactured drywall at issue.  Of these, thirty-nine (39) can be traced to the Taishan defendants ("Taishan Markings").  The other five (5) can be

traced to BNBM.[8] *See* SDFL R. Doc. 155-1**.** For purposes of the Settlement Agreement, the Taishan Markings are divided into three categories:

> "<u>Taishan Drywall</u>" includes nine (9) of the thirty-nine (39) markings from the Catalog: 1, 14, 15, 16 and 38 through 42.

> "<u>Generic Drywall</u>" includes fourteen (14) marking numbers from the Catalog:  2, 5 through 11, 13, and 17 through 21.

> "<u>Other Drywall</u>" includes *all* of the remaining sixteen (16) marking numbers from the Catalog: 3, 4, 12, 27 through 37, 43 and 44.

**<u>Ownership Status of the Property</u>** - A claimant is treated as a "Current Owner" if he or she owned the property during the period May to August of 2017.[9]  A claimant is a "Former Owner" if they sold or transferred the property *prior* to May to August of 2017.  Importantly, claimants who sold their property after August 2017 are treated as Current Owners if they remediated.

**<u>Remediation Status of the Property</u>** - Property will be considered "Remediated" for purposes of this settlement if the claimant fully or partially remediated the affected property and submitted proof and documentation of this remediation.

2. **Individual Settlement Amount**

Based on the above criteria, each eligible claimant who elects to participate in the settlement will receive an Individual Settlement Amount based on a per square foot settlement value, as follows:

---

[8] BNBM denies responsibility for a variety of reasons.  Claims based on BNBM markings are not included in the Settlement Agreement.

[9] The Settlement Agreement adopts the ownership status of each claimant as reported in Plaintiffs' Master Spreadsheet, which was verified between May and August of 2017.

|  | Discount | Per Square Foot ("PSF") Settlement Value |
|---|---|---|
| Remediation Factor (PSF) |  | $60.00 |
| Taishan Drywall Current Owners and Former Owners Who Remediated (PSF) | None | $60.00 |
| Taishan Drywall Former Owners Who Did Not Remediate (PSF) | 65% | $21.00 |
| Generic Drywall Current Owners and Former Owners Who Remediated (PSF) | 35% | $39.00 |
| Generic Drywall Former Owners Who Did Not Remediate (PSF) | 77.25% | $13.65 |
| Other Drywall (PSF) | 80% | $12.00 |

### 3.  Attorneys' Fee Contribution

In addition to offering *every* Participating Plaintiff an individual recovery for damages caused by the defective Chinese drywall, Taishan will pay an additional sum equal to 10% of each claimant's recovery toward attorneys' fees, effectively reducing each claimant's direct fee obligation under his or her private contract with individual counsel.[10]

### 4.  Most Favored Nations ("MFN") Protection

The Settlement Agreement also includes a provision that allows most Participating Plaintiffs[11] to receive an additional recovery in the event Taishan settles with other claimants on or before March 31, 2021 for a higher square-foot value based on the same product markings. The MFN applies to future settlements equal to 110%, or more, of the per-square-foot value paid under the Settlement Agreement.  If the MFN is triggered, Participating Plaintiffs with the same

---

[10] This component of the settlement was negotiated after Movers had fully exhausted negotiations on the damage formula factors.

[11] The MFN does not apply to claims based on property in the Renaissance Commons complex.

product markings will receive 100% of the difference between the recovery paid under the Settlement Agreement and the future settlement.

## II.   ARUGMENT IN FAVOR OF LIFTNG PTO 32 FOR INDIVIDUAL SETTLEMENTS WITH VOLUNTARY HOLDBACK

### A. The Court Lacks Jurisdiction to Review the Adequacy of a Settlement on Remand.

PTO 32 emphasizes the importance of "balancing the interest of the individual plaintiffs, common benefit counsel, and individually retained counsel" (R. Doc. 21328 at 1) and instructs that "[a]ny distribution of funds resulting from cases that have been remanded will be pursuant to a subsequent order by the Court in accordance with applicable principles of law governing fee awards and consideration of the adequacy of the total recovery for plaintiff(s)." *Id*. at 3. Respectfully, the Court lacks jurisdiction to enforce this provision for two clear reasons. First, the remand divested the Court of jurisdiction to review the adequacy of a settlement on the merits. Second, Rule 23(e)'s requirement of judicial approval does not apply to individual settlements.

As the Court recognized in the Suggestion of Remand, "The effect of an order remanding a case to the transferor court for trial is to divest the transferee court of jurisdiction in the case and to vest the transferor court with jurisdiction." R. Doc. 21242 at 11, quoting DAVID F. HERR, Multidistrict Litigation Manual, § 10:5 (2005). *See also, In re Upjohn Co. Antibiotic Cleocin Prod. Liab. Litig*., 508 Supp. 1020, 1020-21 (D.C. Mich. 1981); *Stevens v. Danek Medical, Inc*. 1999 WL 33217282, at * 7 (S.D. Fla. 1999). The Settlement Agreement is a negotiated settlement on the merits. The authority to approve or disapprove a settlement on the merits lies exclusively in the transferor court.

Moreover "(c)lass members are free to accept or reject individual settlement offers" as long as the settlement does not harm the rights of non-settling parties. *In re Shell Oil Refinery*,

152 F.R.D. 526, 535 (E.D. La. 1989).  There is no authority for a court to review the adequacy of recovery on an individual settlement.  "[T]he language of Rule 23(e) is limited to settlement of the class action itself, as opposed to settlements with individual class members."  *Id*. at 536.  "The court's concern in reviewing an individual settlement is not to see that the settlement is fair, but that the offer 'provided data sufficient to enable each [claimant] to make an informed choice to settle or proceed.'"  *Id*.  *See also In re General Motors Corp. Engine Interchange Litig.,* 594 F.2d 1106, 1140 (7th Cir. 1979); *Duhaime v. John Hancock Mut. Life Ins. Co.,* 183 F.3d 1, 4 (1st Cir. 1999); *Weight Watchers of Philadelphia, Inc. v. Weight Watchers Intern., Inc.*, 455 F.2d 770, 773 (2d Cir. 1972).  In this instance, each Participating Plaintiff will be fully informed regarding the terms of the Settlement Agreement.  The authority to evaluate the adequacy of information provided to Participating Plaintiffs lies exclusively in the transferor court.

**B.  The Voluntary Holdback Satisfies the Intention of PTO 32**.

PTO 32 was issued in response to the PSC's Remand Holdback Request.  While acknowledging the contribution of common benefit services, the Court stopped short of issuing the requested holdback due in part to the likelihood that individual or contract counsel would be called upon "to perform significant tasks when the cases are remanded, including work for trials and settlements" and, at that time, it was "unclear what the final value of Plaintiffs' claims will be or the true nature of the work required by contract counsel."  R. Doc. 21328 at 3.  In fact, individual counsel here have performed extensive work on a highly complex settlement opportunity that offers 498 plaintiffs a total benefit conferred of $27,713,848.22, and to receive payment *within months*.  This is far in excess of the role of individual counsel under ordinary circumstances.

Although the PSC was not involved in this process, Movers acknowledge that certain common benefit work was vital to this settlement opportunity and intend to honor the Court's desire to assure the equitable treatment of common benefit counsel.  Under the circumstances, the voluntary holdback proposed by Movers is more than adequate to this objective.[12]

First, the PSC did not participate in the difficult and time consuming process leading to the Settlement Agreement, as expressly noted in the agreement:  "Plaintiffs' Lead Counsel, Plaintiffs' Liaison Counsel, the Plaintiffs' Steering Committee, and any other attorney acting at their direction have not been involved in these negotiations in any way."  Exhibit "B" at 2 (under seal).  Instead, the PSC was busily devoting its efforts to advancing the litigation toward the goal of an aggregate resolution, which at this point seems improbable.

Second, the only common benefit activities warranting fee consideration in connection with the Settlement Agreement are those *not* included in the lodestar under the Knauf settlement.[13]  During the Knauf fee proceedings, individual counsel argued that it was improper to include Taishan-related time in the lodestar for determining common benefit fees.  The PSC and Fee Committee argued that it was impossible to segregate Knauf-related time from Knauf-related time.  The Court did not directly address this issue, but rulings on discovery and the merits reflect that the PSC's argument prevailed.  *See* R. Doc. 21168 and R. Doc. 22092.  To now include the same Taishan-related time in a common benefit lodestar for the current settlement would, at a minimum, create the appearance of double recovery

---

[12] Movers reserve all arguments about the value and extent of common benefit work.

[13] The Court established a deadline of December 31, 2013 for common benefit fees under the Knauf settlement.  *See* PTO 28(A) (R. Doc. 17402) and 28(F) (R. Doc. 20282).  However, based on the FC's arguments during the fee proceeding, it appears that time after that date may have been included, or at least considered by the FC and perhaps by the Court.

Third, the holdback proposed by Movers is equal to 9% of the total benefit conferred under the Settlement Agreement, which is *the same fee-to-benefit ratio awarded by the Court under the Knauf settlement*.[14] If 9% was equitable for the common benefit for the Knauf settlement where the PSC was solely responsible for negotiating and perfecting the settlement, it is more than equitable here where the PSC did not participate.

## III.   CONCLUSION

The Settlement Agreement offers 498 victims of defective Chinese drywall something that the PSC has not, and likely cannot, deliver – an offer to settle individual claims based on a formula that carefully factors the strengths and weaknesses of the case and the benefits of immediate payment versus more protracted and uncertain litigation.  Respectfully, the Court lacks jurisdiction to prohibit the Settlement Agreement or to alter its terms.  Nevertheless, Movers greatly appreciate the work of the Court on this litigation and thus desire to respect the Court's intention regarding equitable treatment of common benefit counsel.

For the reasons stated herein, Movers request an Order lifting PTO 32 to allow individual settlements under the Settlement Agreement with a voluntary holdback as described herein for future fee allocation proceedings.

Respectfully Submitted,

**FAIRCLOTH MELTON SOBEL & BASH, LLC**

By: ___/s/ *Jimmy R. Faircloth, Jr.*___
    Jimmy R. Faircloth, Jr. (Objectors' Co-
    Liaison Counsel) (LA #20645)
    jfaircloth@fairclothlaw.com
    Brook L. Villa (LA #31988)
    bvilla@fairclothlaw.com

**MILSTEIN, JACKSON, FAIRCHILD & WADE, LLP**

By: ___/s/ *Mark Milstein*___
    Mark Milstein
    mmilstein@mjfwlaw.com
    10250 Constellation Blvd., 14th Floor
    Los Angeles, CA 90067
    Phone: (310) 396-9600

---

[14] The Court awarded common benefit fees totaling $102,857,943.85 from the Knauf settlement against a total benefit conferred of $1.1 billion (disputed).

Franklin "Drew" Hoffmann (LA #35824)        Fax: (310) 396-9635
dhoffmann@fairclothlaw.com
9026 Jefferson Highway
Building 2, Suite 200
Baton Rouge, LA 70809
Phone: (225) 343-9535
Fax: (225) 343-9538

*Attorneys for Parker Waichman LLP*

**WHITFIELD BRYSON & MASON, LLP**      **MRACHEK, FITZGERALD, ROSE,**
                                       **KONOPKA, THOMAS & WEISS, P.A**

By: ___ /s/ *Gary Mason* _____
   Gary Mason                          By: ___ /s/ *Gregory S. Weiss* ___
   gmason@wbmllp.com                       Gregory S. Weiss (FL #163430)
   900 West Morgan Street                  gweiss@mrachek-law.com
   Raleigh, NC 27603                       505 S. Flagler Drive, Suite 600
   Phone: (919) 600-5002                   West Palm Beach, FL 33401
   Fax: (919) 600-5035                     Phone: (561) 655-2250
                                           Fax: (561) 655-5537

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing *Motion to Lift PTO 32 for Settlement of Individual Claims in Remand With Voluntary Holdback for Future Fee Allocation* has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 7th day of March, 2019.

*/s/ Jimmy R. Faircloth, Jr.*
OF COUNSEL