**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE:  CHINESE-MANUFACTURED | : | MDL NO. 2047 |
| DRYWALL PRODUCTS LIABILITY | : | SECTION: L |
| LITIGATION | : | JUDGE FALLON |
| _____ | : | MAG. JUDGE WILKINSON |
| | : | |
| THIS DOCUMENT RELATES TO: | : | |
| *ALL CASES* | : | |
| _____ | : | |

**KRUPNICK CAMPBELL MALONE ET AL.'S MEMORANDUM IN SUPPORT OF MOTION FOR IMMEDIATE DISBURSEMENT OF ATTORNEY'S FEES PURSUANT TO FINAL JUDGMENT**

**I.    Summary.**

On January 10, 2014, this Court appointed a Fee Committee to make recommendations as to the allocation of attorneys' fees. [Doc. 17379].  On January 31, 2018, this Court entered an Order allocating a portion of the available attorneys' fee fund to Individually Retained Counsel. [Doc. 21168].  On February 4, 2019, this Court entered an Order allocating of common benefit amongst the common benefit firms. [Doc. 22089].   This Court entered Final Judgment on February 5, 2019. [Doc. 22092].

Importantly, the Settlement Agreements provided an attorneys' fees fund, to be overseen by this Court, for both attorneys who represented individual homeowners and those who performed common benefit work.  The Settlement Agreements made clear this Court would consider and rule upon the allocation of all attorneys' fees and that any right of appeal as to the Court's determination of attorneys' fee allocation was waived. [Doc. 16407-3, Section 14.2; Doc 15695-2, Section 16.6].

1

A Notice of Appeal was filed, pursuant to Federal Rule of Appellate Procedure 4(a)(1), by three (3) firms on March 5, 2019.[1] [Doc. 22120]. Two additional notices of appeal were filed on March 6, 2019, [Doc. 22123][2], and March 7, 2019, [Doc. 22129].[3] No motion for stay has been filed.[4]

Notably, none of the firms who have to date filed a Notice of Appeal (collectively referred hereinafter as "Appealing Firms") objected to the unequivocal waiver of appellate rights related to allocation of attorneys' fees prior to the settlements being approved by this Court. As a result, by the very terms of the Settlement Agreements to which these Appealing Firms agreed and from which they have the opportunity to obtain any attorneys' fees, the Appealing Firms specifically waived any right to contest the allocation of attorneys' fees once determined by this Court.

Accordingly, the Undersigned law firm, hereby moves this Honorable Court for an Order providing for a disbursement of the attorneys' fees in accordance with the Court's orders of January 13, 2018 [Doc. 21168], February 4, 2019 [Doc. 22089], and the Final Judgment of February 5, 2019 [Doc. 22092].

---

[1] Three law firms who filed a singular and joint Notice of Appeal on March 5, 2018 are: Parker Waichman, LLP; Gentle, Turner, Sexton & Harbison ; and McCallum, Hoaglund, Cook & Irby, LLP (hereinafter referred to as "Parker Appealing Firms"). [Doc. 22120].

[2] The Notice of Appeal was filed by the law firm of Anderson Kill, P.C.

[3] The Notice of Appeal was filed by The Alters Law Firm. The Court previously noted that Mr. Alters, who submitted a claim for common benefit, had been suspended by the Florida Bar. On November 21, 2018 Mr. Alters was disbarred by the Florida Supreme Court. *The Florida Bar v. Jeremy Alters*, SC14-100.

[4] This Court has jurisdiction over the relief requested herein. There is no stay entered. The Court continues to preside over this litigation, including matters involving the settlement.

## II.     **Brief History Of This Dispute.**

Counsel need not set forth the tortured history of this fee dispute which has ensnared law firms and the Court for over six (6) years. Instead, the Court has set forth the pertinent history of this fee dispute in the Orders of January 31, 2018 [Doc. 21168] and February 4, 2019 [Doc. 22089].

The Court, in assessing 80% of the costs associated with the fee dispute against the fund available to compensate Individually Retained Counsel, concluded that the objecting lawyers were predominately responsible for the vexatious nature of the fee dispute.[5] [Doc. 21168]. In fact, counsel leading the objectors (who were the subject of the Court's assessment as to the litigation behavior of the objectors) were, among others, the Parker Appealing Firms. As a result of their litigation behavior, all Individually Retained Counsel, including those who never objected, were docked a *pro rata* assessment related to the behavior of, among others, the Parker Appealing Firms.

Nonetheless, as has been said by the Parker Appealing Firms in 2016, when they requested this Court to immediately disburse attorneys' fees,

---

[5] As this Court found regarding the conduct of the objectors, including some of the Appealing Firms:

> Contract counsel made an objection, as they had a right to do. But contract counsel "over played" their hand. They filed some 23 objections, commenced unnecessary proceedings, and prolonged the discovery process by filing unnecessary written discovery and seeking pointless depositions of the Court-appointed CPA and various members of the PSC and Fee Allocation Committee. Their accomplished results: havoc and needless delay. Their actions also caused additional expense by requiring the CPA and Special Master to conduct a special hearing and perform other services. Because the Objectors prolonged this process and triggered avoidable added costs—in effect, creating a second, unnecessary litigation—the Court finds it fair and appropriate for contract counsel to bear 80-percent of the CPA and Special Master's fees associated with this dispute, in the amount of $323,877.15.

[Doc. 21168, p. 23].

3

> An important goal of MDL proceedings is to facilitate the "just and expeditious resolution of all actions to the overall benefit of the parties." *In re Vioxx Products Liab. Litig.*, 360 F. Supp. 2d 1352, 1354 (J.P.M.L. 2005). The Court, in connection with this MDL, already has expressed its intention "to expedite certain portions of the [attorneys' fee] award." To achieve that goal, "a district court has inherent authority 'to bring management power to bear upon massive and complex litigation to prevent [the litigation] from monopolizing the services of the court to the exclusion of other litigants.'" Eldon E. Fallon, *Common Benefit Fees in Multi-District Litigation*, 74 La. L. Rev. 371, 377 (2014) (*quoting In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 549 F.2d 1006, 1012 (5th Cir. 1977)).

[Doc. 20434-1, at p. 3] (footnote citations omitted).

As it pertains to claims involving Knauf and the Global Settlement, claims on behalf of virtually all homeowner plaintiffs have been resolved for years. To date, no firms have received any earned attorneys' fees related to the claims of their respective individual homeowner clients through the Court approved settlements.

It is critically important to note that these Parker Appealing Firms actually sought the relief identical to what the undersigned seeks herein. That is, the Parker Appealing Firms actually moved this Court to disburse the entirety of the attorneys' fee funds allocated to Individual Retained Counsel pursuant to the Court's January 31, 2018 Order, long before the Court's common benefit determination, a Final Judgment or even an opportunity to consider filing an appeal. [Doc. 21240]. As a result, the Parker Appealing Firms should be precluded and judicially estopped from now opposing the identical relief sought herein or imposing new conditions on such disbursement.[6]

---

[6] The doctrine of judicial estoppel prohibits parties from deliberately changing positions according to the exigencies of the moment and is designed to protect the integrity of the judicial process. *In re Ark-La-Tex Timber Co., Inc.*, 482 F.3d 319, 332 (5th Cir. 2007). Judicial estoppel

4

### III. The Settlement Agreement Terms Specifically Preclude Appeal of This Court's Fee Determination.

After years of briefing, discovery, argument and hearings before the Special Master and ultimately this Court, the Court entered detailed Orders addressing both the allocation of attorneys' fees to individual retained lawyers and common benefit lawyers.

Importantly, at the time of the underlying settlement of the substantive litigation, the terms of the Knauf Settlement contained a provision addressing how the allocation of attorneys' fees would be determined:

> The PSC shall be entitled to petition the Court for an award of attorneys' fees and costs, and provided that the PSC does not seek an award of attorneys' fees and costs exceeding $160 million from the Knauf Defendants, the Knauf Defendants agree not to oppose any such request. **All attorneys' fees** and costs as well as the allocation of attorneys' fees and costs among the PSC, common benefit counsel authorized and working at the direction of the PSC, other common benefit counsel, Settlement Class Counsel and individual retained counsel **are subject to the approval of the Court and to a determination by the Court** that the common benefit counsel work was valid and bona fide. **The Court's determination shall be final and not subject to appeal.**

*See* Section 14.2 (emphasis add). [Doc. 16407-3].

Similarly, the Global Settlement Agreement, involving builders, installers, suppliers and participating insurers, stated:

---

is an equitable doctrine invoked by the court within its sound discretion. *Id.* Courts consider three factors in determining whether to apply the doctrine: (1) whether the party's later position is clearly inconsistent with its earlier position; (2) whether the party has succeeded in persuading a court to accept that party's earlier position; (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *In re Save our Springs (S.O.S.) Alliance, Inc.*, 632 F.3d 168, 175 (5th Cir. 2011). At the time of motions of the Parker Appealing Firms, obviously the common benefit determination had not yet occurred; however, the principle of full disbursal sought herein is intellectually indistinguishable from the relief the Parker Appealing Firms sought.

> The **determination of any attorneys' fee** or court cost issue, including the allocation between and amongst the Petitioning Attorneys, **shall be determined by the Court and all Parties agree such determination is not appealable and hereby waive all appeals of any such determination**.

*See* Section 16.6. [Doc. 15695-2] (emphasis added).

These specific terms were important to the settlements. The attorneys' fees available for the more than 170 law firms, who represented individual homeowners and/or who performed common benefit work on behalf of homeowners, was limited. The Defendants wanted global peace. Therefore, in light of the limited attorneys' fees, preserving the fund, preventing collateral attack after the time for objections expired and approval by this Court, and preventing unnecessary delay through appeals related to allocation of the limited funds available was in the best interests of all attorneys and parties.

Notably, not a single counsel or homeowner filed an objection to these waivers of appeal. To be sure, there were other objections filed by both attorneys and homeowners, but not to this provision.

More to the point, the record is clear: none of the Appealing Firms filed an objection to Section 14.2 or Section 16.6 of the respective Settlement Agreements. As a result, their ability to raise the allocation of any attorneys' fees on appeal was waived and is precluded.[7] *See Balentine v. Thaler*, 626 F.3d 842, 848 (5th Cir. 2010) ("The general rule is that arguments not

---

[7] Any after-the-fact attempted justifications for why none of the Appealing Firms timely objected to these specific provisions would be specious. If they now suggest for the first time they were for some reason reticent to object to these particular provisions that does not preclude the legal effectiveness of the waiver. The Appealing Firms could have made clear they were asking this Court to cleave these sections and this Court undoubtedly would have considered this provision independently of the homeowner provisions. Frankly speaking, the decision to file a notice of appeal under these circumstances may have triggered Federal Rule of Civil Procedure 11 analysis, including potential fees and costs being assessed for defending this appeal.

raised before the district court are waived on appeal."); *Rosedale Missionary Baptist Church v. New Orleans City*, 641 F.3d 86, 89 (5th Cir. 2011) ("The argument must be raised to such a degree that the district court has an opportunity to rule on it.").

Said another way, the Appealing Firms do not have standing to file an appeal in the Fifth Circuit. The burden is on the appellants to establish that they have standing to appeal this Court's order to the Fifth Circuit. *See Rohm & Hass Texas, Inc. v. Ortiz Bros. Insulation, Inc.*, 32 F.3d 205, 208 (5th Cir. 1994); *see also Core-Vent Corp. v. Implant Innovations, Inc.*, 53 F.3d 1252, 1259 (Fed. Cir. 1995) ("Those who employ the judicial appellate process to attack a settlement through which controversy has been set to rest bear a properly heavy burden."). In section 14.2 and section 16.6 of the respective Settlement Agreements, the Appealing Firms expressly agreed that the attorneys' fees allocation is only subject to approval by this Court and that this Court's determination is final and not subject to appeal.

Appeal waivers are valid so long as they are made knowingly, which does not require the waiving party to have knowledge of all of the potential challenges that could be raised on appeal. *See Hill v. Schilling*, 496 Fed. App'x 480, 487-88 (5th Cir. 2012). The Fifth Circuit faced a similar attempt at an appeal over attorneys' fees after lengthy litigation in *Hill*. *Id.* The appellant appealed the district court's award of attorneys' fees to the Fifth Circuit, and the court ruled that the appeal was barred by a valid appeal waiver agreement between the parties. *Id.*

A critical element of standing requires an appellant to demonstrate that it is "likely," as opposed to merely "speculative," that the conduct complained of will be "redressed by a favorable decision" on appeal. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The Appealing Firms cannot satisfy that prong of the standing analysis because there is virtually

no likelihood of redress on appeal because they voluntarily waived any right to appeal.

As a result, disbursement of the available attorneys' fees pursuant to the Court's Final Judgment is appropriate.

## IV. Irrespective of Any Term of the Settlement Precluding Appeal, Immediate Disbursement Pursuant to Final Judgment is Appropriate.

It is irrefutable that the Appealing Firms have not sought a stay of the February 5, 2019 Final Judgment. [Doc. 22092]. Even if they had, they cannot satisfy the prerequisites for a stay. Under Fifth Circuit law, the stay of a case pending appeal constitutes "extraordinary relief." *Reading & Bates Petroleum Co. v. Musslewhite*, 14 F.3d 271, 275 (5th Cir. 1994); *Belcher v. Birmingham Trust National Bank*, 395 F.2d 685, 685 (5th Cir. 1968).

In determining whether to grant a stay, the Court looks to whether (1) the movant has made a strong showing that it is likely to succeed on the merits; (2) it is likely that the movant will be irreparably injured absent a stay; (3) issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) the public interest is served. *ODonnell v. Goodhart*, 900 F.3d 220, 229 (5th Cir. 2018). The movant has the burden to show that a stay is warranted. *Nken v. Holder*, 556 U.S. 418, 433-34, 129 S.Ct. 1749 (2009). Under this four-factor test, even if the Appealing Firms sought a stay, their efforts would fail resoundingly.

Class action fee decisions are reviewed only for an abuse of discretion. *See, e.g*., *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 638 (5th Cir. 2012). This extends to a district court's choice of fee methodology. *Id. at 642*. (district court did not abuse its discretion in choosing method of awarding attorney's fees in common fund class action).

Therefore, to succeed on appeal, the Appealing Firms will have to demonstrate that this Court abused its considerable discretion in (1) awarding individual and common benefit

8

attorneys' fees, and (2) allocating those awards. The Appealing Firms have virtually no likelihood of success. In fact, their appeals only validate the late Justice Brennan's observation that appeals from attorneys' fees awards represent "one of the least socially productive types of litigation imaginable." *Hensley v. Eckerhart*, 461 U.S. 424, 442 (1983) (Brennan, J., concurring in part and dissenting in part).

The record is clear – this Court afforded all attorneys a transparent, rigorous and robust process to be heard at every stage of the determination. There was a Fee Committee appointed by the Court; applications for fees were received in multiple stages; individual interviews were undertaken of every firm seeking common benefit; there was extensive briefing on the proposed Fee Committee allocation of the fund as between individually retained attorneys and common benefit attorneys; discovery was undertaken with regard to that recommended allocatin; a Special Master was appointed by this Court to conduct a multi-day hearing on allocation of the fund; additional briefing before this Court was considered as to the allocation between individually retained counsel and common benefit counsel; additional briefing on allocation of common benefit fees was accepted and considered by the Court; a Special Master was appointed to provide a recommendation as to common benefit allocation; and, then additional briefing after the Special Master recommendation was considered by this Court. In short, the extent of due process extended to all counsel for an allocation of attorneys' fees was unprecedented. Moreover, the fee proceedings were anything but abbreviated here, spanning over five (5) years from the appointment of the Fee Committee to the Court's Final Judgment on February 5, 2019.

Further, the Appealing Firms cannot demonstrate irreparable harm. At the outset, mere dissipation of funds is not irreparable harm. *See Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989).

First, in enforcing the Final Judgment and disbursing the available fees, both the Appealing Firms and all other firms would receive attorneys' fees. Notably, the Appealing Firms would actually receive a greater amount than what had been recommended by the Fee Committee and the Special Master. If the Appealing Firms fail in their appeal, there is no harm to them or any of the attorneys.

Second, in order to receive a disbursement, counsel, including Appealing Firms, could sign a binding acknowledgement they commit to return funds in the event of a reversal on appeal, which will help ensure that distributed funds are recovered in the event that one of objectors' appeals succeeds. S*ee Brady v. Airline Pilots Ass'n, Int'l*, No. 02-2917 (JEI/KMW), 2014 WL 12767679, at *1 (D.N.J. Dec. 16, 2014) (allowing class counsel to withdraw portion of its allocated share from settlement fund where class counsel agreed to repayment in event of objectors' success on appeal); *Brown v. Hain Celestial Grp., Inc.*, No. 3:11-CV-03082-LB, 2016 WL 631880, at *10 (N.D. Cal. Feb. 17, 2016) ("The plaintiffs' counsel has the option of being paid fees before resolution of any appeal; they also must return them immediately if the settlement is overturned on appeal.").

Third, the Court could easily, without regard to likelihood of success on appeal, set aside the entirety of the common benefit some of the Appealing Firms seek and disburse the remainder *pro rata* until such time as the Fifth Circuit dismisses the appeals or rules.[8]

As a result, no irreparable harm will result from the final remaining distributions in accordance with the February 5, 2019 Final Judgment in the meantime nor could these Appealing Firms establish such irreparable harm.

Turning to the final two factors, a stay would substantially injure the affected counsel who performed work on behalf of individual homeowners and common benefit; these counsel have labored over the past nine (9) years without compensation. Given the extraordinary

---

[8] Anderson Kill does not and did not have a contract for representation with any individual homeowners. The Court, after considering all the evidence and the arguments of Anderson Kill, addressed in detail its claim for common benefit:

> The firm had a contingency fee contract to represent the WCI Trust and was paid over $340,000.00 by its client. Notably, the Fee Committee, as others seeking common benefit fees, have not been compensated over the extended length of this prolix litigation. The work this firm submitted for common benefit substantially included work that it was already committed to perform for the WCI Trust. Most of the work performed and submitted by this firm was handled by paralegals or policy analysts who are para-professionals and not attorneys, whose billings were deemed excessive and unreasonable. This firm's work was limited solely to a small portion of the insurance portion of the Global Settlement.
>
> \*   \*   \*
>
> The Court notes that a large percentage of this firm's recorded hours were spent in "case assessment" (nearly 50%). While this type of work is necessary and beneficial for the common benefit when it is done by those in leadership positions who have to duty to make decisions on the appropriate course of the litigation, it is not as valuable to the common benefit when done by those outside of leadership. In this instance the hours spent in case assessment deserve less weight.

Doc. 22089 at pp. 13-14.

11

settlement for homeowners which has now been fully administered as to all individual plaintiffs, there is no public interest served in simply delaying compensation for counsel.[9]

Therefore, even if the Appealing firms had moved for a stay, they are unable to meet the prerequisites for a stay.[10]

## V. **In The Alternative, The Court Could Order a Partial Disbursement With A Holdback.**

The Undersigned quotes the words of the Parker Appealing Firms in 2016 and 2018:

> A partial disbursement of attorneys' fees is not foreign in the MDL context. In *In Re Diet Drugs*, three funds were created to compensate class counsel and/or common benefit counsel.[11] The funds consisted of money paid directly by the defendant and/or assessments issued against attorneys' fees paid by defendants to individually retained counsel. Similar to the instant case, the court recognized that the litigation had been ongoing for years and counsel had not been compensated. It explained, "To make [the attorneys] wait any longer for at least some fee award would be grossly unfair." *Id*. As such, it issued an interim award of attorneys' fees, which provided "at least partial compensation at a time when the court is not really able to analyze fully [the percentage of recovery factors] and make a final award." *Id*.

[Doc. 20434-1, at p. 4; and, 21240-1, at p. 3].

---

[9] Likewise, the public interest would not be served by withholding the distribution of well-earned fees due to utterly meritless appeals from die-hard objectors whose objective is to achieve nothing but personal gain.  This effort does not attempt to vindicate any public interest.

[10] If the Court was inclined grant some future motion for a stay, the movants for such a stay should be ordered to post a supersedeas bond, in accordance with Fed. R. Civ. P. 62(d).  These appealing firms have acted time and again to undermine the ability of other law firms to obtain earned attorneys' fees. Given their tactics, they should not be entitled to favorable exercise of discretion that might be afforded an ordinary litigant who appeals an unfavorable judgment requiring that litigant to pay money damages.

[11]   *In re Diet Drugs*, No. 99-20593, 2002 WL 32154197, at *12 (E.D. Pa. Oct. 3, 2002), *modified,* 2003 WL 22218322 (E.D. Pa. May 15, 2003), and *judgment entered sub nom.*, 2008 WL 2890878 (E.D. Pa. July 21, 2008).

Admittedly, the Parker Appealing Firms previously opposed a partial disbursement with a holdback. [Doc. 21241]. However, to be clear, they opposed partial distribution because they wanted **full** distribution long before any opportunity to appeal and before any common benefit determination. [Doc. 21240].

Notwithstanding the prior position of the Parker Appealing Firms, this Court, in the alternative, could impose a holdback.

## VI. Conclusion

For the reasons set forth herein, the Undersigned respectfully seeks an Order of this Honorable Court enforcing the February 5, 2019, Final Judgment [Doc. 22092] and providing for the disbursal of the available attorneys' fees in accordance with the Court's Orders of January 31, 2018, [Doc. 21168], and February 4, 2019, [Doc. 22089].

Dated: March 8, 2019.

          Respectfully submitted,

          /s *Michael J. Ryan*
          Michael J. Ryan, Esquire
          Bar No. 975990
          Krupnick Campbell Malone
          Buser Slama Hancock P.A.
          12 S.E. 7 Street, Suite 801
          Fort Lauderdale, FL 33301
          Phone (954) 763-8181
          Fax (954) 763-8292
          pleadings-MJR@krupnicklaw.com
          mryan@krupnicklaw.com
          *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing MEMORANDUM IN SUPPORT OF MOTION FOR IMMEDIATE DISBURSEMENT OF ATTORNEY'S FEES PURSUANT TO FINAL JUDGMENT has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to File & ServeXpress fka LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047. Dated:   March 8, 2019.

/s *Michael J. Ryan*
Michael J. Ryan, Esquire
Bar No. 975990
Krupnick Campbell Malone
Buser Slama Hancock P.A.
12 S.E. 7 Street, Suite 801
Fort Lauderdale, FL  33301
Phone (954) 763-8181
Fax (954) 763-8292
pleadings-MJR@krupnicklaw.com
mryan@krupnicklaw.com
*Attorneys for Plaintiffs*