IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L JUDGE FALLON MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO: ALL CASES | |

**CLASS COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF RULE 23(d) MOTION TO PROTECT THE *AMORIN* CLASS**

## I.  INTRODUCTION

"Joint Notice Counsel," *i.e.*, Parker Waichman, LLP (through its counsel, Jimmy Faircloth); Milstein, Jackson, Fairchild & Wade, LLP; Whitfield, Bryson & Mason, LLP; and Mrachek, Fitzgerald, Rose, Konopka, Thomas & Weiss, P.A., have presented to this Court a Joint Notice of Settlement Agreement (Rec. Doc. 22125); Motion to Lift PTO 32 for Settlement of Individual Claims on Remand with Voluntary Holdback for Future Fee Allocation (Rec. Doc. 22126)[1]; and a Motion for Leave to File Settlement Agreement and Release Under Seal (Rec. Doc. 22127).  In the proceedings before Judge Cooke in the Southern District of Florida, these matters (with the exception of the sealing motion) were presented by way of a Notice of Filing.[2]

Collectively, Joint Notice Counsel's filings reflect yet another new and novel approach to circumventing the MDL Court's orders on class leadership and class certification in addition to thwarting Judge Cooke's ability to oversee a potential settlement of a portion of the certified Class. These filings come at a critical moment in the Florida proceedings where Product Identification challenges are before Special Master Tiffani G. Lee, who is scheduled to conduct hearings on the matter next week on March 11-12, 2019, and issue a Report and Recommendation by April 1, 2019, as to whether the Product ID categories at issue in Florida should be attributed to Taishan despite its denials, and by May 31, 2019, as to the total award for Property Damage Claims under the Remediation Formula adopted by this Court.  *See* Trial Plan for Florida *Amorin* Claimants dated November 16, 2018 (Rec. Doc. 21933-1).

Class Counsel are filing this Rule 23(d) motion in the MDL and also filing a response to the Notice of Filing before Judge Cooke in the Southern District of Florida because of the unique

---

[1] Class Counsel will respond to the Motion to Lift PTO 32 in due course.

[2] *Amorin v. Taishan Gypsum Co., Ltd.,* Case No.: 1:11-cv-22408-MGC, Notice of Filing (S.D. Fla. Mar. 7, 2019) (ECF No. 187).

1

disposition of these proceedings where both Courts are expending substantial judicial resources on these cases, as well as the fact that the current filings by Joint Notice Counsel present an effort to avoid the MDL Court's authority. Class Counsel are concerned that Joint Notice Counsel, led by Mr. Faircloth, are seeking to settle some of the Florida *Amorin* cases, representing a subset of the *Amorin* Class, at severely discounted rates without adequate communication to not only their own clients but other members of the Class.[3]  Based upon the limited information available to Class Counsel, it is unclear whether this proposed "settlement" seeks to settle all of the claims of Joint Notice Counsel's clients (i.e. an inventory settlement) and/or instead seeks to offer a little less than one third of the Class the opportunity to take (or reject) a settlement in a quasi-class settlement proceeding that is devoid of any of the procedural safeguards of Rule 23. At the same time, it would appear that this proposed settlement of a quasi-subclass potentially seeks to impair the value of the remaining Class members' claims.

Joint Notice Counsel's conduct ignores the fact that each and every homeowner is a member of the certified Class who **had the opportunity to opt out** prior to certification but chose to stay in the Class to benefit from the advantages of utilizing the class device. In fact, Class members were given ***a second opportunity to opt out*** when provided with notice of the Class damages hearing in 2015, but, again*, elected to stay in the class*. Now, having decided that it would be most beneficial to Joint Notice Counsel to have no constraints that may be imposed by Rule 23, they would like to pretend certification never occurred.

To be sure, Class Counsel fully support the appropriate resolution of Class claims by knowing Class members, and do not have any desire or intention to stand in the way of people

---

[3] At least one of the proposed Settling Claimants is an *Amorin* Priority Plaintiff scheduled for trial before judge Cooke in July.

2

who want to amicably resolve their claims.  Further, Class Counsel believes that Chinese Drywall victims should receive compensation for their damages as soon as possible but are concerned that the proposed settlement with Taishan may have a direct negative impact on the *Amorin* Class members who want full compensation for their damages.  This is particularly true of what appears to be the inclusion of a Most Favored Nation ("MFN") clause in the proposed settlement.

It is the Court's and Class Counsel's responsibility as fiduciaries to ensure that Class members are protected, and that prior to any settlement they are made aware of all relevant information that may be pertinent to their decision of whether or not to accept a settlement offer by Taishan.  The Court appointed Class Counsel to negotiate settlements and make assessments on how to best proceed with the litigation.  While Joint Notice Counsel certainly have the right to communicate with their clients, they share a certain level of representation with Class Counsel as a result of their client's decision, presumably upon their attorney's advice, to be a part of the Class.

Class Counsel are concerned that there is no process for evaluating the information provided to members of the Class as part of any settlement of this case.  Typically, information relating to the status of the litigation, monetary valuation of cases and evaluation of the strengths and weaknesses of the cases moving forward would be provided by Class Counsel to the Court for approval prior to being distributed to the Class.  Unfortunately, at this juncture, it is unclear precisely what information Joint Notice Counsel are sharing with their own clients or others that may have been solicited to participate in the proposed settlement, and it is unclear whether that information presents a clear and accurate picture of the ongoing litigation.  It is also unclear what information Joint Notice Counsel might ***not*** be sharing.  It

3

is essential that Class members be provided a full picture of the ongoing litigation so they can make an informed decision whether to risk participating in the proposed settlement while critical deadlines and decisions are occurring in Florida.

These concerns are heightened in this case at this time. Notably, Judge Cooke issued an order adopting **all** of this Court's rulings including application of the damages formula arising out of the class damages hearing and establishing a schedule and procedure for resolving the Florida *Amorin* Plaintiffs' remediation damages claims by the end of May 2019.[4] In light of this imminent deadline, any Class member with a remediation claim no longer has the risk of delay that has previously been of concern. This is crucial because the "settlement" seeks to resolve claims for a maximum of $60/square foot (purportedly for the virtually uncontested claims), when the Court-approved formula adopted by Judge Cooke provides for at least $105.91/square foot (as of 2015), meaning that those virtually uncontested claims are foregoing at least $45.91/square foot of recovery when judgment should be entered on those remediation claims this summer. In addition, under the proposed settlement, many Class members would be subject to even further discounts presumably based upon contested Product Identification, an issue that is the subject of a hearing in front of Special Master Lee set to occur next week with a Report and Recommendation expected on Product ID contentions by April 1, 2019. In the event Class members are not fully apprised of the relative risks and benefits of participating in the proposed settlement, Joint Notice

---

[4] *See* Order, *Amorin, et al. v. Taishan Gypsum Co., Ltd., et al.*, Civil Action No. 11-22408 (S.D. Fla. Nov. 16, 2018) (Rec. Doc. 21933-1) at 2 (adopting "**all** of Judge Fallon's findings of facts and legal conclusions" (emphasis in original)), at 3 ("[t]he remediation formula represents a reasonable and reliable measure of the remediation damages which the Court will apply to determine the appropriate amount of property damages.").

Counsel may be intentionally or unintentionally complicit in an effort by Taishan to "pick-off" members of the Class.

To ensure fairness and so that all members of the Class are provided with a complete account from which they can make an informed decision whether to settle their claims, Class Counsel respectfully request that the Court, in consultation with Judge Cooke, permit appropriate notice to be provided to all Class members, especially those identified by Joint Notice Counsel. Not only would such a notice provide the necessary information to permit them to make an informed decision, but such a Court-authorized communication would clearly impress upon the Class the significance of the substance of the matter. Furthermore, providing such a notice would allow the MDL Court and Class Counsel to satisfy their obligations to the class without interfering with Joint Notice Counsel's (or any other counsel's) representation of their clients, as they would ultimately be consulting with their clients and offering their own advice on how to proceed.

Prior to such notice, the MDL Court should hold an evidentiary hearing, so that the Court and Class Counsel can better evaluate the basis and substance of the proposed settlement (filed under seal) and to determine what information has been and/or should be provided to Class members (particularly those who are not represented by Joint Notice Counsel) and to assess what role, if any, Defendant Taishan has had in Joint Notice Counsel's efforts in this regard.

## II.     RELEVANT BACKGROUND

### A.     The Early Stages of the Litigation.

As the Court is well aware, this MDL was formed on June 15, 2009, when the Judicial Panel on Multidistrict Litigation consolidated the Chinese drywall federal cases in this Court for

pretrial proceedings. *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 626 F. Supp. 2d 1346, 1347 (J.P.M.L. 2009). Shortly after the formation of the MDL, the Court appointed a Plaintiffs' Steering Committee ("PSC") led by Arnold Levin as Lead Counsel and Russ Herman as Liaison Counsel.[5] In these roles, Mr. Levin and Mr. Herman were tasked with guiding the PSC in conducting the litigation; communicating with individual Plaintiffs and their counsel, Defendants and the Court; and importantly, "[e]xplor[ing], develop[ing], and pursu[ing] all settlement options pertaining to any claim or portion thereof or any case filed in this litigation."[6]

Discovery in the MDL revealed that the drywall at issue was manufactured primarily by two groups of Defendants: (1) the Knauf entities (German-based international manufacturers of drywall and other building products, whose Chinese subsidiary Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT") advertised and sold Chinese Drywall in the United States), and (2) the Taishan entities (Chinese-based drywall manufacturers). *See Chinese Drywall*, 2017 WL 1421627, at *1. The litigation proceeded simultaneously against both groups of Defendants and their various downstream associates with Knauf's Chinese subsidiary KPT appearing before the Court early in the litigation in July 2009 while the Taishan entities deliberately failed to respond to the complaints against them and were defaulted as part of their "limited response" strategy to avoid judgments from U.S. courts. *See id.* at *1; *see also In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2014 WL 4809520, at *7-8 (E.D. La. Sept. 26, 2014).

Ultimately, after the conduct of certain bellwether trials and other related proceedings, Knauf and the PSC entered into a pilot remediation program on October 14, 2010 ("KPT Pilot Program"). *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2013 WL 499474, at *2

---

[5] *See* PTO No. 3 (Rec. Doc. 21) (appointing Russ Herman as Liaison Counsel); PTO No. 8 (Rec. Doc. 144-1) (appointing the PSC and Arnold Levin as Lead Counsel).

[6] *See* PTO No. 8 (Rec. Doc. 144-1), at 3-4.

(E.D. La. Feb. 7, 2013). After the KPT Pilot Program had been ongoing for a little over a year, the Knauf entities and the PSC entered into a class settlement agreement that the Court certified as a class action and approved on February 7, 2013 (the "Knauf settlement"). *See id*. at *3. In addition, numerous other downstream Defendants – homebuilders, suppliers, and installers (and most of their insurers) – entered into class action settlement agreements, resulting in the resolution of "almost all of the Knauf Entities' chain-of-commerce litigation." *Chinese Drywall*, 2017 WL 1421627, at *2. In total, the parties negotiated, and the MDL Court approved, nine interrelated class settlements with an aggregate estimated value of $1.1 billion.[7]

### B. The Taishan Entities and Class Certification.

In stark contrast, the litigation against the Taishan entities continues along its tortuous track. Originally, the Taishan entities willfully refused to appear and participate in the litigation, despite having been properly served, and the Court entered a final default judgment in favor of Plaintiffs. *See Chinese Drywall*, 2017 WL 1421627, at *3. Then, Taishan entered an appearance solely to contest the Court's exercise of personal jurisdiction over it, which resulted in substantial litigation, including approximately 18 months of discovery on the jurisdictional issue, multiple motions to compel discovery and for sanctions, several trips to Hong Kong for depositions (which included this Court's personal oversight at the depositions in Hong Kong), a 142-page opinion by this Court finding personal jurisdiction over Taishan and its wholly-owned subsidiary and alter ego TTP in Louisiana, Florida, and Virginia, and two separate panels of the Fifth Circuit affirming that ruling. *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 894 F. Supp. 2d 819 (E.D. La. 2012), *aff'd*, 753 F.3d 521 & 742 F.3d 576 (5th Cir. 2014). That led to Plaintiffs' Omnibus Motion for Class Certification.

---

[7] *See* Order & Reasons Setting Common Benefit Fees at 17 (Jan. 31, 2018) (Rec. Doc. 21168).

On September 26, 2014, the Court entered its Findings of Fact and Conclusions of Law with Respect to Plaintiffs' Omnibus Motion for Class Certification Pursuant to Rules 23 (a)(1)-(4) and 23 (b)(3), and the Notice of Pendency of Class Action.[8] The Class Certification Opinion appointed Class Counsel, finding that Russ Herman and Arnold Levin were well qualified to be so appointed. *See In re Chinese-Manufactured Drywall Prod. Liab. Litig*., 2014 WL 4809520, at *14 (E.D. La. Sept. 26, 2014). In addition, the Court approved that notice be provided to Class members providing them an opportunity to opt-out of the class and informed them that if they did not opt-out of the class, they would be bound by the determinations in the Class Action.[9] Even if a member of the class had separate counsel, that class member remained a member of the class if they did not elect to timely and properly opt-out of the certified class.

On December 17, 2014, the Court granted approval of Plaintiff's Motion for Assessment of Class Damages Pursuant to Rule 55(b)(2)(B) and Request for Approval of Supplemental Notice.[10] The form of Supplemental Notice that the Court approved was filed of record on October 29, 2014.[11] The Supplemental Notice informed the class of a proposed methodology for determining the amount of Class Damages to then be allocated to Class members pursuant to a formula. The Supplemental Notice also provided Class members the opportunity, yet again, to opt-out.[12]

---

[8] Rec. Doc. 18028 ("Class Certification Opinion") and 18028-1 ("Class Notice").

[9] *See* Class Notice [Rec. Doc. 18028-1].

[10] Rec. Doc. 18216.

[11] Rec. Doc. 18086-18 ("Supplemental Notice").

[12] *See id*. at 5.

8

On June 9, 2015, the Court held a hearing on class damages. Based on the facts presented at that hearing, the Court entered its Order of April 21, 2017 (Rec. Doc. 20741) and held that the formulaic methodology to determine Class members' remediation damages was appropriate. *See Chinese Drywall*, 2017 WL 142627, at *24-25. Based on then current data, the Court ruled that remediation damages (subject to appropriate zip code refinement) would be set at $105.91. *See id.*

There is no need to recount the tortured history of this litigation that has taken place since that time, except to mention the remand of the Florida and Virginia *Amorin* complaints. Suffice to say that efforts to the move the litigation forward have been thwarted at every turn by Defendants, leading the Court to ultimately remand cases back to Virginia and Florida while moving forward on the Louisiana cases on its own.[13] After the Suggestion of Remand of the Florida *Amorin* cases, Lead and Liaison Counsel filed a motion addressing the Court's suggestion for the need to establish a Plaintiffs' attorneys' fees fund to compensate and reimburse attorneys for services performed for MDL administration and common benefit.[14] Several counsel, again represented by Mr. Faircloth, opposed the Holdback Motion, but not on the grounds that common benefit counsel don't deserve to be compensated for the work they have done benefitting the remand cases but rather because they opposed the creation of a fund from which this Court could award common benefit fees on cases that are resolved after remand. In addition, when a Conditional Remand Order was entered by the JPML with respect to the Florida *Amorin* cases, Mr. Faircloth represented individual counsel in opposing the remand but not because the cases should be remanded but because they did not want this Court to retain

---

[13] Rec. Doc. 21242 (Florida suggestion of remand); Rec. Doc. 21695 (Virginia Suggestion of Remand).

[14] Rec. Doc. 21267 ("Holdback Motion").

9

authority over any future common benefit fee awards.[15]  Notably, this Court retained jurisdiction over attorney's fees regarding the Florida *Amorin* Plaintiffs and the Florida Plaintiffs' claims are subject to a stay in the MDL.  *See* Suggestion of Remand (Rec. Doc. 21242).  *See also* Order & Reasons (staying Florida actions in Louisiana) (Rec. Doc. 21935).

### C. Joint Notice Counsel's Efforts Impact the Ongoing Efforts of Class Counsel to Prosecute the Claims of the *Amorin* Claimants.

While Joint Notice Counsel have brokered an unsupervised settlement available only to the subset of the Class that is their clients without any procedural safeguards that are afforded by Rule 23, it is far from clear whether this was accomplished with a full and complete disclosure of facts and information to them and with regard to the fact that their clients are also Class members whose rights are adequately protected by Class Counsel under the supervision of the Court.  By engaging in this rear-guard discussion with Taishan, Joint Notice Counsel also appear to be compromising the interests of other Class members in this proposed settlement. The effect is substantively the same as permitting Defendant Taishan to pick off the Class by using Joint Notice Counsel to broker settlements to a subset of Class members outside of this Court's supervision.

This is especially concerning as the proposed settlement occurs as Class Counsel are in the midst of presenting significant class-wide remediation damages issues in Florida, not to mention the active litigation of the claims of 20 Priority Claimants at least one of which Joint Notice Counsel have now proposed to settle, as well as the undermining of other rulings established by the Court.  To begin, the proposed settlement disregards this Court's formulaic method for calculating damages, by only allowing for the Florida *Amorin* cases a

---

[15] *See* MDL No. 2047, JPML Rec. Doc. 504-1, at 5-7.

10

maximum, ironically referred to as a "baseline," of $60 per square foot for drywall with a limited sub-set of Taishan/Tiahe markings to current owners and former owners (*i.e.*, persons who sold or transferred their property prior to May to August 2017), who remediated.[16]  Other Class members would be subject to steep discounts up to 80%.[17]

However, Judge Cooke's Order of November 16, 2018, adopted **all** of this Court's well-reasoned findings, making any discount, especially the deep discounts agreed to by the Joint Notice Counsel, inappropriate.

This conduct requires Class Counsel and the Court to assure that Class members' rights and interests are being adequately represented and protected.  The "information" Joint Notice Counsel may have presented to their client Class members and others harbor a great concern that they may have incorrectly or incompletely represented to their clients the "proper" valuation of claims of Class members whose properties contain Taishan products and as to the valuation of their claims based on status of remediation or not, without regard to the valuation methodology that Class Counsel has developed, and which was the subject of the Court's Class Damages Order of April 27, 2017, which was entered after the June 9, 2015 Damages Hearing, and which methodology was adopted by Judge Cooke.

Again, Class Counsel have no intention or desire to stand in the way of settlement by knowing and willing participants.  Yet Class Counsel are, at the same time, wary of a possible attempt by Defendant Taishan to undermine this hard-fought and improperly drawn-out litigation by "picking off" Class members, one-by-one.

---

[16] Rec. Doc. 22126-1 at 7.

[17] *Id.* at 7-8.

11

## III. ARGUMENT

### A. Fed. R. Civ. P. 23 (d)(1)(B) Permits This Court to Enter an Order Authorizing Class Counsel to Communicate with Class Members for the Fair Conduct of the Class.

Fed. R. Civ. P. 23 (d)(1) empowers a Court to permit a notice to be disseminated to a Class in a wide variety of circumstances beyond simply informing the Class of class certification, a class settlement and/or a request for an award of fees. Rule 23 (d)(1)(B), states that a Court may issue orders that:

> (B) require--to protect class members and fairly conduct the action--giving appropriate notice to some or all class members of:
>
> (i) any step in the action;
> (ii) the proposed extent of the judgment; or
> (iii) the members' opportunity to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or to otherwise come into the action.

The plain wording of the Rule authorizes a Class Notice relating to "any step in the action." The operative consideration in issuing Rule 23(d)(2) corrective and injunctive orders[18] is the court's unique fiduciary role to protect the legal rights and interests of class members, and its institutional interest in controlling "the fair conduct of the action." Here, this case has already been certified as a class action, and Joint Notice Counsel's conduct may be impacting unwitting Class members adversely in the event they have not been provided with full information in order to make strategic decisions without a fair and balanced notice authorized by the Court. As *Newberg* notes, one of the infrequent

---

[18] Rule 23(d)(2) orders are typically issued as case management orders, not as classic injunctions under Rule 65. They can thus be requested and obtained expeditiously, without the full evidentiary panoply that attends injunction practice. As recognized by the Eleventh Circuit in *Kleiner v. First National Bank of Atlanta,* 751 F.3d 1193 (11th Cir. 1985), a more relaxed standard applies with respect to findings where a court issues an order pursuant to Rule 23(d) rather than on a Rule 65 injunction motion, and where the order takes the form of a directive to counsel as a party's agent and binds the party in his or her capacity as counsel's principal. *See id.* at 1201.

12

invocations of Notice pursuant to this Rule involves a situation where the Court desires to notify class members of newly relevant information in the case. *See* William B. Rubenstein, *Newberg on Class Actions* § 8.26 (5th ed. June 2018) (citing, *Manual for Complex Litigation, Fourth*, §21.313; *Wright and Miller's Federal Practice and Procedure, Civil* § 1793.) [19]

Rule 23(d) provides this Court with broad authority to manage the conduct of class actions at "any step in the action," not only after class certification. *See Hoffman-La Roche Inc. v. Sperling,* 110 S. Ct. 482, 486 (1989); *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 (1981). In *Gulf Oil*, the Supreme Court was presented with the issue of the limits of the district court's authority to restrict communications between class counsel, plaintiffs' counsel, and prospective class members. *Gulf Oil*, 452 U.S. at 99. The Supreme Court recognized that inherent in the policy underlying Rule 23 is for district courts to protect a class from potential abuse. The Supreme Court held:

> Class actions serve an important function in our system of civil justice. They present, however, opportunities for abuse as well as problems for courts and counsel in the management of cases. Because of the potential for abuse a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties.

*Gulf Oil*, 452 U.S. at 99-100 (emphasis added). Thus, the Supreme Court found that orders regarding communications with class members are appropriate. *Id*. at 101. *See also Manual for Complex Litigation (Fourth)* §21.33 at 360-73 (2018).

---

[19] *See City Select Auto Sales, Inc. v. David/Randall Associates, Inc.,* 2015 WL 6507142, *3 (D.N.J. 2015) (noting that under the Court's discretionary notice power under Rule 23 (d)(1)(B) one of the uses is to notify class members of newly relevant information.).

Any conduct by which a defendant conceivably seeks to undermine Class proceedings should be the subject of strict scrutiny by the presiding Court that is managing and supervising the proceedings. The rationale for this is that "the imbalance in knowledge and skill which exists between class members and defense counsel presents an extreme potential for prejudice to class members' rights." *Bower v. Bunker Hill Co*., 689 F. Supp. 1032, 1033-34 (E.D. Wash. 1985). Without certainty that Joint Notice Counsel are disclosing Class Counsel's position (approved by this Court's Class Damages Order) that class members' remediation damages alone may be proven through formulaic means to be at least $105.91/square foot., it is possible that this Court's directives for the class are not being followed. Slanting discussions towards the Defendant's discounted settlement offer without revealing the value of damages that this Court has already determined to be recoverable threatens severely detrimental consequences to class members. And while Class Counsel are not opposed to the liberty of any contract counsel to discuss strategy or resolution matters with their clients, when those clients are class members, discussions impacting on the class must be fair and balanced to avoid any potential to improperly influence class members' decisions.

Where such transgressions occur, courts have stepped in to staunch the breach. For example, in *Kleiner v First National Bank of Atlanta,* 751 F.2d 1193 (11th Cir. 1985), the United States Court of Appeals for the Eleventh Circuit held that with regard to the solicitation of opt outs from a class action, "[u]nsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal. The damage from misstatements could well be irreparable." *Kleiner,* 751 F.2d at 1203 (citation omitted).

"Concomitantly, a solicitations scheme relegates the essential supervision of the court to the status of an 'afterthought.'" *Id.* (citation omitted).

Similarly, in the *Diet Drugs* litigation, Judge Bechtle issued a temporary restraining order, which ultimately became a final injunction by consent, forbidding one of plaintiffs' counsel from including certain language on the firm's website that sought to persuade class members to opt-out from the Settlement. There, the absent class members were retained by private counsel who sought to separate themselves from other class members. *See In re Diet Drugs Prod. Liab. Litig.*, MDL 1203, PTO 1061 (E.D. Pa. Jan. 14, 2000) ("Naploi is ...restrained from the use of any form of the phrase 'ORANGE OPT OUT FORM - protect your rights to obtain a money award - mail in an Orange Opt-Out pursuant to the Court's order by March 30, 1999 or lose your rights' or any substantially similar phrase on the Internet or otherwise until a hearing.") [Attached hereto as Exhibit "A"]. *See also Erhardt v. Prudential Group, Inc.*, 629 F.2d 843, 846 (2nd Cir. 1980) ("Unapproved notices to class members which are factually or legally incomplete, lack objectivity and neutrality, or contain untruths will surely result in confusion and adversely affect the administration of justice."); *Haffer v. Temple Univ.*, 115 F.R.D. 506 (E.D. Pa. 1987) (ordering corrective notice where the defendant made false and misleading statements to class members intended to discourage them from meeting with class counsel); *Tedesco v. Mishkin,* 629 F. Supp. 1474, 1484 (S.D.N.Y. 1986) (to prevent the potential for abuse, the court ordered the defendant be restrained from further communicating with class members so as to discourage their participation or to induce class members to 'opt out' of the class.").[20]

---

[20] The relief sought under Rule 23(d) is akin to that available under the All Writs Act, 28 U.S.C. § 1651, which provides the Court with broad authority to protect its jurisdiction over a matter, and the Anti-Injunction Act, 28 U.S.C. §2283, which also empowers the Court to take action where "necessary in aid of its jurisdiction, or to protect or effectuate its judgments." Courts liberally invoke the "necessary in aid

15

This Court's authority is further augmented by E.D. La. L.R. 23.1 (D), which sets forth the standard for an order prohibiting communication with class members. Under L.R. 23.1 (D), Class Counsel must show with "particularity" a) "specific consequences the motion seeks to prevent" and b) "the need for the order, weighing the consequences sought to be corrected and the effect of the order on the right of a party to proceed pursuant to Rule 23 without interference."

Here, the need for inquiry into the proposed settlement is patent. There is no question that certain (but not all) Class members have been offered a settlement by Taishan, without input from or involvement with Class Counsel, and it is unknown what facts have been communicated to those Class members by Joint Notice Counsel and/or Taishan. These efforts (intended or otherwise) supplant the carefully crafted Court-approved Notice that was issued regarding Assessment of Class Damages and orderly processing of this Class Action case. Moreover, there is a risk that the result of this conduct adversely impacts unwitting Class members who, instead of having their rights protected, are instead influenced to act based on potentially misleading and incomplete information. If not investigated by the

---

of its jurisdiction" exception "to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atlantic Coast Line R.R. v. Brotherhood of Locomotive Eng'rs,* 398 U.S. 281,295 (1970); *In re Baldwin-United Corp.,* 770 F.2d 328, 337 (2nd Cir. 1985) (same); *In re Corrugated Container Antitrust Litigation,* 659 F.2d 1332, 1334 (5th Cir. 1981), *cert. denied,* 456 U.S. 936 (1982) (same); *In re Diet Drugs,* 282 F.3d 220, 235 (3rd Cir. 2002) (recognizing "a category of federal cases for which state court actions present a special threat to the jurisdiction of the federal court"-namely, where "a federal court [is] entertaining complex litigation, especially when it involves a substantial class of persons from multiple states, or represents a consolidation of cases from multiple districts...."). Had Joint Notice Counsels' actions taken place in a state court proceeding, this Court would unquestionably have the power to protect its continuing jurisdiction over this complex class litigation and ongoing global litigation efforts from competing rogue efforts that could threaten to derail the achievements of this MDL.

Court, the collateral consequence of Joint Notice Counsel's communications with Class members will inure to Taishan's benefit.

The Court has carefully structured this case to proceed in an orderly fashion, on behalf of the persons who now comprise the Class, and who chose not to opt out. It is unquestionably proper for this Court to exercise its powers to ensure that Class members' rights are protected. [21] Joint Notice Counsel's actions warrant the Court exercising its discretionary power under Rule 23 (d)(1)(B) and permit Class Counsel to communicate or issue a formal Court approved Notice to the Class with information that balances the information that Joint Notice Counsel disseminated so that Class members are not misled and make a decision on less than full information.[22] Class Counsel is willing to develop the form of Notice to use and of course submit same to the Court for approval prior to communicating the Notice to the Class.[23]

---

[21] Joint Notice Counsel are officers of the MDL Court who are currently appearing before the Court (one of the lawyers is a member of the Plaintiffs' Steering Committee) and therefore are subject to the Court's jurisdiction.

[22] Beyond Rule 23 (d), this MDL Court has inherent authority to manage its affairs and control its docket expeditiously. The Court has inherent authority "outside the explicit language of the rules of civil procedure." *G. Heileman Brewing Co., Inc. v. Joseph Oat Corp.,* 871 F.2d 648, 651 (7th Cir. 1989). "Inherent authority remains the means by which district judges deal with circumstances not proscribed or specifically addressed by rule or statute, but which must be addressed to promote the just, speedy, and inexpensive determination of every action." *Id*. at 653. Additionally, Rule 83 also provides authority for the Court to issue the order sought here. *See* Fed. R. Civ. P. 83(b) ("A judge may regulate practice in any manner consistent with federal law, rules adopted under 28 U.S.C. §§ 2072 and 2075, and the district's local rules.").

[23] Since it may take a brief period of time for the form of Notice to be approved by the Court and then for the Notice to be disseminated, Class Counsel would request that both Courts (the MDL and Judge Cooke) also issue an Order that stays implementation of the proposed settlement and requires Taishan and Joint Notice Counsel refrain from continuing their actions until the Notice issues so that Class members will have full information before making any decision.

## IV. CONCLUSION

The proposed Settlement Agreement that was filed under seal with the Court demonstrates a concerted effort by Taishan to undercut the MDL Court's formulaic damages model. The mere fact that these parties sought to file their Settlement Agreement under seal highlights the suspect nature of its purpose. This unauthorized conduct affects the Class and threatens the class proceedings and both Courts' supervision (the MDL and the Florida remand court) over the Chinese Drywall litigation. Relief is available under a wide-variety of authority as demonstrated.

Accordingly, a Show Cause hearing should be scheduled before the MDL Court to determine the substance and extent of Joint Notice Counsel's communications with Class members (including their own clients) and other counsel, and the proper scope of relief, including any necessary notice to the class.

Respectfully submitted,

Dated: March 8, 2019     By: */s/ Russ M. Herman*
Russ M. Herman (Bar No. 6819) (on the brief)
Leonard A. Davis (Bar No. 14190) (on the brief)
Stephen J. Herman (Bar No. 23129) (on the brief)
Charles King (Bar No.34621) (on the brief)
Herman, Herman & Katz, LLC
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
RHerman@hhklawfim.com
*Plaintiffs' Liaison Counsel MDL 2047*

Arnold Levin (on the brief)
Fred S. Longer (on the brief)
Sandra L. Duggan (on the brief)
Keith Verrier (on the brief)
Nicola F. Serianni (on the brief)
Levin Sedran & Berman LLP

510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
alevin@lfsblaw.com
*Plaintiffs' Lead Counsel MDL 2047*
*CLASS COUNSEL*