# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 |
| | SECTION: L |
| | JUDGE FALLON |
| **This Document Relates to:** | MAGISTRATE WILKINSON |
| *ALL CASES* | |

*******************************************************************************

## OPPOSITION TO YANCE MOTION FOR ATTORNEYS' FEES

Lead Counsel, Arnold Levin, and Liaison Counsel, Russ M. Herman, respectfully submit the following memorandum in Opposition to the Yance Law Firm's Motion for Award of Attorney Fees on Interest Earned [R. Doc. 22108]**:**

**MAY IT PLEASE THE COURT:**

As a procedural matter, Mr. Yance:

- Has not complied with the requirements of Pre-Trial Order No. 9;

- Has not complied with the requirements of Pre-Trial Order No. 28;  and,

- Has not timely sought to alter or amend the Court's February 5, 2019 Judgment[1] within 28 days, as required by Federal Rule of Civil Procedure 59(e).

---

[1] R. Doc. 22092, at p.1 ("IT IS ORDERED, ADJUDGED, AND DECREED that the common benefit fees be awarded in the following amounts, *plus any interest accumulated over this amount* [to] : ") (emphasis supplied).

Yet, even if the Court were to consider Mr. Yance's Motion on the merits, the interest at issue is the product and culmination of the collective efforts and investments of all Common Benefit Attorneys since the commencement of the litigation. Even accepting his representations at face value, Mr. Yance's "estimated" 550 hours constitute a mere 0.2% of the total number of common benefit hours attributed to the Knauf Settlement.[2] Looking to the portion of the funds that are being held for the satisfaction of individual client contract fees, Mr. Yance's approximate $33,000 in anticipated client contract fees constitutes a mere 0.3% of the total individual client contract fee funds.[3] So how could Mr. Yance possibly be entitled to 15% percent of the interest?

Indeed, it is not even clear that Mr. Yance's efforts could even qualify under the Common Benefit Doctrine, as he was only ever seeking to further his own interests, and not the interests of any Plaintiff or member of the Settlement Class.[4]

For these reasons, and for the reasons further outlined below, Yance's Motion should be denied.

## Failure to Comply with Pre-Trial Order No. 9

Pre-Trial Order No. 9 required attorneys seeking common benefit fees to:

- Record their time accurately and contemporaneously; in particular: "Time shall be kept according to these guidelines and specifically in accordance with the Litigation Task Definitions as outlined in Attachment 'A'. All counsel shall keep a daily record of their time spent in connection with this litigation, indicating with specificity the hours, location and particular activity (such as 'conduct of deposition

---

[2] See ORDER AND REASONS SETTING COMMON BENEFIT FEES (Jan. 31, 2018) [R. Doc. 21168] at p.9 ("Counsels performing common benefit work in this litigation have logged 232,309.35 hours on various common benefit tasks through December 31, 2013 (the date of the settlement)").

[3] Based on the available information, it appears that payments to the Yance Firm and its clients will total approximately $231,373.19, out of a total of $669,966,761.24. The total funds available for client contract fees is $97,254,640.59. See ORDER AND REASONS (Feb. 4, 2019) [R. Doc. 22089] at p.4.

[4] See, e.g., PRE-TRIAL ORDER NO. 9, at p.2, Time Reporting ¶1 ("Only time spent on matters common to all *claimants* in MDL 2047 will be considered in determining fees") (emphasis supplied); see also Time Reporting ¶1 ("No time spent on developing or processing any case for an individual client (claimant) will be considered or should be submitted") (emphasis in original).

of A.B.'). The failure to maintain such records, as well as insufficient description of the activity may result in a forfeiture of fees." [5]

- Submit their claimed time and expenses to Phil Garrett timely, on a monthly basis;[6] and,

- Certify the time, each month, by a senior partner.[7]

Yance has not, however, submitted one contemporaneous time record. His unsupported Affidavit suggests an "estimate" of "approximate" hours expended by himself (350 hours) and his paralegal (200 hours).[8] Whether Ms. Yates was performing individual case work, or work specifically related to the firm's objections to the awarded common benefit fees, is not recorded and is simply unknown. Moreover, and with respect to the 200 hours of claimed paralegal time in particular, this Court has been critical of case assessment performed by paralegals and "by those outside of leadership."[9] The Court, for example, disapproved of Anderson Kill's fee submission for enormous amounts of paralegal work – which, unlike the Yance Law Firm's submission, was at least supported by contemporaneous and presumably accurate time records. The Court ruled that "hours spent in case assessment deserve less weight."[10]

As an Objector, Mr. Yance was presumably familiar with Pre-Trial Order No. 9, which specifically required that "any claimants' counsel that may at a later date, seek reimbursement or compensation for common benefit time and expenses (including any state court counsel) shall comply with these guidelines and any submission by such counsel shall be in accordance with this

---

[5] PRE-TRIAL ORDER NO. 9, at p.2, Time Reporting ¶2.

[6] PRE-TRIAL ORDER NO. 9, at p.2, General Standards ¶4; *see also* p.3, Time Reporting ¶4.

[7] PRE-TRIAL ORDER NO. 9, at p.3, Time Reporting ¶5.

[8] R. Doc. 22108-2.

[9] ORDER AND REASONS (Feb. 4, 2019) [R. Doc. 22089] at p.13.

[10] ORDER AND REASONS (Feb. 4, 2019) [R. Doc. 22089] at p.13.

Pre-Trial Order."[11]  His failure to record, maintain, and submit contemporaneous time records in conformity therewith should preclude any award of common benefit fees on that basis alone.

## Failure to Comply with Pre-Trial Order No. 28

In addition to Pre-Trial Order No. 9, Pre-Trial Order No. 28 (and its various amendments) required any "counsel and their respective law firm which seeks compensation for common benefit time and reimbursement of expenses" to:

- "review their submissions ... and assure that the recorded time and expense records are complete and accurate"[12]

- "conduct an audit of its firm's time and expense submission ... to assure that their firm's information recorded is accurate and correct" and "request that Philip Garrett modify certain time or expenses to amend or correct any submission to disallow" any unnecessary or improper entries or submissions"[13] and,

- "deliver to the Fee Committee a completed and signed Initial Affidavit for Compensation for Common Benefit Time and Reimbursement of Expenses providing all information required in the form Initial Affidavit attached as Exhibit A"[14]

Yance did not comply with any of these requirements.

## Failure to Timely Seek to Alter or Amend Judgment

The Court's Judgment of February 5, 2019, awarded interest on the common benefit fee funds to the common benefit attorneys to whom common benefit fees were allocated. *See* JUDGMENT (Feb. 5, 2019) [R. Doc. 22092] at p.1 ("IT IS ORDERED, ADJUDGED, AND DECREED that the common benefit fees be awarded in the following amounts, *plus any interest*

---

[11] PRE-TRIAL ORDER NO. 9, at p.1, General Standards ¶2; *see also* PRE-TRIAL ORDER NO. 28, at p.3 ¶1 ("Only time and expense records submitted pursuant to Pre-Trial Order Nos. 9 and 9A shall be considered by the Court").

[12] PRE-TRIAL ORDER NO. 28, at p.3 ¶1.

[13] PRE-TRIAL ORDER NO. 28, at pp.3-5 ¶2.

[14] PRE-TRIAL ORDER NO. 28, at p.5 ¶4 and Exhibit A [R. Doc. 17379-1].

*accumulated over this amount* [to]:") (emphasis supplied).  Mr. Yance had 28 days to file a motion to Alter or Amend this Judgment under Rule 59(e), but failed to do so.[15]

## Yance Performed No Common Benefit Work

In the underlying litigation against Knauf, Yance's efforts were limited solely and exclusively to the development or processing of cases for his own individual clients.[16]  Yance performed no common benefit work, and is therefore not entitled to any common benefit fee.

Even as to the additional interest being earned on the attorney fee fund, Yance's efforts were not intended to benefit any "claimant" in the MDL.[17]  Rather, Yance, in raising the interest issue, was simply attempting to further his own personal interests as an Objector to the allocation of common benefit fees – which funds he did nothing to create.

## The Funds Were Placed in Esquire Bank at the Order and Approval of the Court

Implicit in Yance's Motion is the continued suggestion that it was somehow inappropriate to place the funds in Esquire Bank.  Yance overlooks, not only the almost-zero interest rates that existed over much of the relevant time period, but also the fact that the Court gave specific directions that the funds be invested in wholly secured, federally insured investments, with short-notice availability and liquidity – thus limiting the types of returns that could be earned on the money.[18]

---

[15] Indeed, it is unclear the extent to which the District Court maintains jurisdiction to modify or amend the Judgment, in light of the appeals which have been taken.  *See, e.g.*, R. Docs. 22120, 22123, and 22129.

[16] *See* PRE-TRIAL ORDER NO. 9, at p.2, Time Reporting ¶1  ("No time spent on developing or processing any case for an individual client (claimant) will be considered or should be submitted") (emphasis in original).

[17] *See* PRE-TRIAL ORDER NO. 9, at p.2, Time Reporting ¶1 ("Only time spent on matters common to all *claimants* in MDL 2047 will be considered in determining fees") (emphasis supplied).

[18] It is counsel's understanding that funds deposited in the Registry of the Court also generated relatively little interest over the relevant time period.  And it is only because of a fairly recent change in practice that the Court is now optimizing its holdings over a more diverse portfolio.

As this Court has specifically observed:

> [T]here is no evidence of any improper actions taken by Esquire Bank and that Esquire Bank prudently fulfilled its obligations with respect to Qualified Settlement Fund deposits, all of which were guaranteed by the United States of America.  The Bank safeguarded the funds deposited in the Attorney Fee Qualified Settlement Fund and properly reported all interest received on such funds monthly and annually each year.[19]

Yance's implications to the contrary are nothing but a Red Herring.

Similarly, Yance has raised questions regarding Footnotes 1 and 2 of the Court's February 4, 2019 Order and Reasons.[20]  However, Mr. Garrett has already separately explained the basis of this purported "discrepancy" in correspondence with Mr. Yance.[21]

**Mr. Yance Ignores the Fact that the Fee Fund – and Any Interest Earned Thereon – Is the Product and Culmination of Years of Collective Efforts and Investments by Numerous Common Benefit Attorneys**

The central fallacy in Mr. Yance's Motion is the suggestion that the interest earned on the fee funds is solely and exclusively attributable to Yance – who completely ignores the fact that, but for the time and money invested by the common benefit attorneys from 2008 through the end of the 2013, there wouldn't be any funds, nor any interest.

Even accepting his representations at face value, Mr. Yance's "estimated" 550 hours constitute a mere 0.2% of the total number of common benefit hours attributed to the Knauf Settlement.[22]

---

[19] ORDER (Dec. 13, 2018) [R. Doc. 21962].

[20] R. Doc. 22089.

[21] *See* EXHIBIT 1.  Mr. Garrett has provided a further break-down to Undersigned Counsel, which is being submitted herewith as EXHIBIT 2.

[22] *See* ORDER AND REASONS SETTING COMMON BENEFIT FEES (Jan. 31, 2018) [R. Doc. 21168] at p.9 ("Counsels performing common benefit work in this litigation have logged 232,309.35 hours on various common benefit tasks through December 31, 2013 (the date of the settlement)").

Similarly, Mr. Yance's approximate $33,000 in anticipated client contract fees constitutes a mere 0.3% of the total individual client contract fee funds.[23]

So how could Mr. Yance possibly be entitled to 15% percent of the interest?

## Mr. Yance's Purported "Cross-Check" Methodology is Wholly Insufficient

In addition to the flawed self-attribution of "benefit" in the percentage-of-benefit calculus, the Yance Affidavit is wholly insufficient to conduct a lodestar cross-check for excessiveness. *See* Turner v. Murphy Oil USA, Inc., 472 F.Supp.2d 830, 860-861 (E.D. La. 2007); In re Vioxx Prod. Liab. Litig., 760 F.Supp.2d 640, 652 (E.D. La. 2010); Eldon E. Fallon, Common Benefit Fees in Multi-District Litigation, 74 LA.L.REV. 371, 381 (2014). Apart from the lack of detailed time records already discussed *supra,* the Affidavit is missing any information about the firm's hourly rates. This defect renders any lodestar cross-check impossible to perform. Moreover, because the Yance Law Firm claims approximately 550 hours for work performed on *all* of its Objections, including its fruitless endeavors that, even accepting the inflated value he places on their efforts, the hefty percentage of the interest earned on fee funds that Yance seeks as a fee is plainly excessive.

As the leading class action treatise notes, even where a discrete benefit can be quantified, "courts are not very sympathetic" to awarding objectors a percentage of what they have generated for a class "for the simple reason that a lodestar cross-check tends to reveal that the objectors' lawyers did not spend (*or should not have spent*) huge amounts of time on the objection and hence that a percentage award would generate too high a multiplier, or a windfall," or "since most

---

[23] Based on the available information, it appears that payments to the Yance Firm and its clients will total approximately $231,373.19, out of a total of $669,966,761.24. The total funds available for client contract fees is $97,254,640.59. *See* ORDER AND REASONS (Feb. 4, 2019) [R. Doc. 22089] at p.4.

objections are litigated quickly, a percentage approach is often likely to embody a windfall." 5 William B. Rubenstein, Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS §15.94, at 370 (5th ed. 2015) (emphasis added).

## Conclusion

For the above and foregoing reasons, Yance's Motion for an Award of Fees should be denied.

This 12th day of March, 2019.


Respectfully Submitted,


_____/s/ Russ M. Herman_____
Russ M. Herman (La Bar No. 6819)
Leonard A. Davis (La Bar No. 14190)
Stephen J. Herman (La Bar No. 23129)
HERMAN, HERMAN & KATZ LLC
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
E-Mail: RHerman@hhklawfim.com
*Plaintiffs' Liaison Counsel*

Arnold Levin, Esq.
Fred S. Longer, Esq.
Sandra L. Duggan, Esq.
LEVIN, SEDRAN & BERMAN LLP
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
E-Mail: Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, which will serve a notice of the uploading in accordance with the procedures established in MDL 2047, on this 12th day of March, 2019.

/s/ Stephen J. Herman