**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL NO. 2047** |
| **THIS DOCUMENT RELATES TO:** ***Amorin v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.*, Case No. 2:11-cv-01395 (E.D. La.) (LA)** | **SECTION: L**<br>**JUDGE FALLON**<br>**MAG. JUDGE WILKINSON** |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF**
**MOTION TO ADOPT TRIAL PLAN FOR LOUISIANA *AMORIN* CASES**

**MAY IT PLEASE THE COURT:**

## I. RELEVANT HISTORY AND FRCP FRAMEWORK

Enough forests already have been put at risk in reciting the tortured history of this case. For present purposes, it suffices to emphasize the following:

1. In order to seize upon a commercial advantage in the wake of the worst environmental disaster in Louisiana history (Hurricane Katrina), the Taishan Defendants deliberately marketed and sold their drywall products to the citizens of this community.
2. By operation of the law of redhibition, these Defendants are presumed to have been "bad faith" sellers who knew their drywall to be defective at the time of sale.[1]

[1] In default, Defendants must admit liability for both LPLA and redhibition damages, and Plaintiffs herein rightfully seek both those damages recoverable in redhibition, and those separately recoverable under the LPLA.

3. Confident they were not susceptible to enforceable judgments against them in a U.S. court, Defendants strategized to ignore the complaints filed by thousands of Plaintiffs and provoked the entry of default judgments on what may be an unprecedented scale.
4. After finally appearing in the case through counsel, Defendants still were unwilling to hold themselves accountable in default. When ordered to appear in response to a money judgment entered against them by this Court following the *Germano* trial, they announced they would not obey Your Honor's order to do so and fired their attorneys.
5. Held in contempt and subject to sanctions, Defendants then resumed participation in the case, only to later abuse the discovery process by causing an "unjustified" delay of approximately eight months in allowing Plaintiffs to obtain the testimony of a key witness as well as important documents from his computer. *See* Findings of Facts and Conclusions of Law from the November 17, 2015 Evidentiary Hearing (Rec. Doc. 19959), at 17.
6. This litigation has progressed at a pace clearly shaped and influenced by these Defendant tactics (which, Plaintiffs hasten to add, are attributable to the corporate and political decision-makers for these Defendants and not to their current U.S. counsel), and, as a consequence, the composition of the Plaintiff class has changed. It now is a class comprised of many more former (as opposed to current) home owners than at the time complaints were filed. The dual economic impact of a Katrina re-build followed by the second, needed "back-to-studs" remediation of defective drywall, has been unsustainable financially and emotionally for many Louisiana Plaintiffs. Unable to afford remediation, but unable or unwilling to allow their families to live in contaminated living

environments, these Katrina victims have abandoned unremediated homes to foreclosures and short sales.

Plaintiffs do not purport to discount the due process right of a product manufacturer to defend itself in litigation; but when the Taishan Defendants invoke their rights as Defendants, and insist on the need to fully discover and adjudicate each and every claim by each and every class member singly, one at a time, they cannot do so on a clean slate. This is not a case in which the class claimants have been prejudiced by delay due to an isolated decision or action by a defendant in order to postpone clear accountability. Instead, a clear pattern has emerged; and the Louisiana Plaintiffs have paid a compounded price. Like the "sorrows" observed in Shakespeare's *Hamlet* (Act IV, scene X), the hardships suffered by homeowners due to both Defendants' defective products and their conduct in this litigation, have "come not single spies, but in battalions." Hence, even short of the extreme sanction of striking defenses, a district court's authority to reasonably curtail the scope of ordinarily-afforded defense practices is justified by this record.

Plaintiffs further submit that the adoption of the trial plan for the Louisiana *Amorin* claimants presents an apt opportunity for the Court to avail itself of case management efficiencies consistent with FRCP Rules 23 and 55. The Louisiana *Amorin* Plaintiffs remain members of a certified class in which common issues predominate; and the Taishan Defendants remain in default. Each class member is entitled by default to a reasonably prompt quantification of a common legal debt owed to each of them by these Defendants. Indeed, the chief element of recovery (remediation) already is subject to quantification by applying the Court-approved

formula based on square footage and cost calculation through R.S. Means. In the end, Plaintiffs seek a plan to bring these claims to resolution in a way that serves the underlying policies and purposes of Rules 23 and 55. Perhaps there is no better time than the present to invoke the directive of Rule 1 that all FRCP provisions "be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination" of civil actions.

## II. DIFFERENCES IN THE PARITES' PLANS

In advance of this filing, the parties have exchanged written proposals in a failed "meet and confer" effort to confect a joint plan. The unreconciled differences between Plaintiffs' Plan (Exhibit "A") and the Defendants' Plan (to be submitted by April 5 under the Scheduling Order) can be identified at this time:

### (A) ADDRESSING AND RESOLVING THE THRESHOLD ISSUE OF PRODUCT IDENTIFICATION

Section I of Plaintiffs' Plan sets forth a pretrial and trial schedule for the currently-selected "pool" cases only. Section II, however, refers to a process that would occur even sooner in time, and addressed to the common threshold issue of product identification in all Louisiana *Amorin* cases.

In Section II of Plaintiffs' Plan, it is proposed that the Court make a referral this Spring to a Special Master (perhaps a U.S. Magistrate to facilitate close coordination with Your Honor) for the "calculation" of all Louisiana *Amorin* Plaintiffs' damages. This clearly entails application of the updated square footage formula for remediation purposes, but as explained in a footnote to

that section, such a "calculation" process also has been consistently understood between and among the parties to include the threshold question of product identification.

In the Florida proceedings, extensive discovery and a full evidentiary hearing before a Special Master now have been completed on the question of product identification for those remanded cases; and there is considerable overlap between the brands at issue in the Florida proceedings and the brands at issue among the Louisiana Plaintiffs (only two brands, DUN and Crescent City, are at issue in Louisiana but not Florida). It also has been understood and agreed among the parties that no duplicate deposition testimony or discovery will be necessary as to product identification questions common to multiple claimants, so that the product identification evidence and the record already developed in the Florida cases on remand, are transposable to the Louisiana *Amorin* proceedings.[2] The Special Master activity called for under Section II of Plaintiffs' Plan therefore will not commence at "square one."

It is Plaintiffs' expectation that, once the Special Master/Magistrate has made a Report and Recommendation to this Court on product identification issues for the entire Louisiana *Amorin* inventory (presumably prior to the scheduled deadline for currently-selected cases under Section I of the Plan), this Court will be positioned to make all needed rulings on those issues prior to adjudicating the damages claims of any specific Louisiana claimant. The remainder of any other issues to be addressed in the "calculation" process in Section II can be determined in

---

[2] In advance of the recent Special Master hearing in Florida, for example, a designated Taishan representative gave deposition testimony over a two-day period on product identification issues. *See* Plaintiffs' Steering Committee's Notice of Filing Transcript and Exhibits of Taishan 30(b)(6) Deposition Re Product Identification (Occurring January 22-23, 2019) (R.D. 22152).

the scope of the Special Master appointment Order, taking cognizance of the schedule of activity for specific cases set forth in Section I.

On this fundamental, threshold issue of product identification, Defendants' plan is apparently designed to limit and defer any rulings until the trial of only a handful of cases, "one at a time," starting nine months from now (December). Defendants presumably will argue that these few cases are the only cases in which the issue should be subject to resolution at this time. Plaintiffs strongly disagree; and in fact such a limitation is inconsistent with the product identification process already implemented in Florida. The fact that discovery on product identification has proceeded to date on the currently-selected cases only, should not foreclose, much less interfere with, the Special Master process proposed by Plaintiffs. Rather, whatever discovery has taken place as to the current "discovery pool" cases can be made part of the record submitted to the Special Master under a process which Plaintiffs believe can and should begin this Spring, consistent with the Court's schedule and/or appointment of the Special Master.

As mentioned, the Louisiana Special Master/Magistrate will also have available an extensive record on product identification from the Florida proceedings. In the Florida proceedings the Special Master must issue a report and recommendation to the Court on product identification by April 1, 2019. There is no need or rationale to defer the resolution of a predicate question of product identification for all Louisiana *Amorin* cases, simply because select "discovery pool" have been subject to product identification discovery in this Court. This reasoning ignores the intensive and relevant record now developed in Florida. This Court will have that entire record available to it, including the report and recommendation of a Florida

Special Master in approximately 2 weeks. It now should be possible to efficiently and expeditiously go forward through a parallel and similar Special Master/Magistrate process here, resolving issues of product identification on an inventory-wide basis which includes the currently-selected cases.

(B) THE DESIGNATION OF TRIAL CASES FROM AMONG THE CURRENT GROUP OF CASES SUBJECT TO DISCOVERY

The Court's Order of October 12, 2018 called for the selection of 40 Louisiana *Amorin* cases (20 selected by each side) to form a "discovery pool" from which cases will be "selected for trial at a later time." *See* 10/12/18 Order [R.D. 21847] at p. 10. The Order was silent as to how this selection of trial cases would occur. Of the initially-selected 40 Louisiana cases under this Order, 39 remain in the pool due to the withdrawal and dismissal of one of the cases. *See* Notice of the Parties' Agreement to Amend the *Amorin* Discovery Plan to Remove Daniel Gammage as a Defendants' Select Class Claim [R.D. 22097]. Discovery as to these 39 cases now proceeds with agreed-upon and Court-approved deadlines of April 12, 2019 for fact discovery and June 27, 2019 for any needed expert discovery. *See* Order of 11/1/18, Setting Louisiana *Amorin* Discovery Schedule [R.D. 21897] and Exhibit A [R.D. 21897-1].

Defendants will propose that each side participate in a selection process to determine which 10 of the "discovery pool" of 39 cases should now be tried; and, once this joint selection process is complete, they will propose to limit motion practice and pretrial activity only on those 10 cases. If these were a bellwether trial process, and if it were realistic to expect that the parties would be sitting at a table to negotiate a global settlement after being fully informed and educated about the results of instructive cases, such an approach might make sense. But this is

not a bellwether process and the Court will forgive Plaintiffs' counsel if the latter have scant, if any, trust that good-faith, global settlement discussions are what Defendants have a genuine interest in promoting.[3]

Accordingly, although the Court did afford Defendants the right to participate in the selection of the "discovery pool" cases, Plaintiffs submit that all such cases now should be entitled to proceed to trial, in "flights" as discussed in Section D, *infra*. All of the "pool" cases have been subject to discovery on the only issues relevant for Rule 55(b) adjudication. There is no reason to afford Defendants any further role in a trial "selection" process. Surely, to put only a fraction of the pool cases in line for trial with Defendant input as to selection while the remaining 29 cases have neither a trial date nor a pretrial schedule assigned, is more of the same "slow play" in the name of "defense rights." All 39 of the currently-selected and discovered "pool" claimants are entitled to have their "day in court" after the pretrial activity in all cases has been concluded according to Section I of Plaintiffs' Plan (Exhibit A).

(C) THE TIMETABLE BY WHICH THE "POOL" CASES WILL PROCEED TO TRIAL

As mentioned, Defendants will propose to focus on less than all (i.e., 10) of the "discovery pool" cases through a series of case-specific motions, witness list exchanges, pretrial orders, etc., with the first trial beginning on the cases, "one at a time," in early December 2019. But waiting another nine months before cases are presented "one at a time" to resolve the limited issues remaining to be tried, is not only unnecessary, it is fundamentally unfair given the already-

[3] Indeed, the Taishan Defendants now have instead negotiated so-called "inventory settlements" with only certain firms representing only a portion of the remanded Florida cases. Their interest in a full and final, negotiated global resolution of all cases has never been less evident.

discussed circumstances and history of this litigation. The Plaintiffs are entitled to and deserve much more than an alternative plan which (with all due respect) reflects the same approach taken by these Defendant companies from day one: delay upon delay in the hope that a consolidated default action of thousands of claims finally dies a legal "death by a thousand cuts."

As set forth in Section I of their Plan, Plaintiffs instead submit that, at the conclusion of any needed expert discovery on the currently-selected 39 cases, a period of roughly one month is all that is necessary to allow for any case-specific motion practice. Defendants apparently believe that this motion practice itself should be sub-divided through separate deadlines for *Daubert* motions, "other" pretrial motions, and *in limine* motions. While perhaps traditional in bellwether trials at the start of an MDL, or even single-plaintiff trials where no record has been developed through consolidation with thousands of related cases, this staging of motions with separate deadlines does not reflect the reality of where this litigation has been, and where it currently stands. Under Rule 55(b)(2), quantum for these Plaintiffs can be tried in flights before the Court as it is the only issue remaining (particularly once product identification is fully developed on an inventory-wide basis). Especially if certain Plaintiffs ultimately elect to present only claims for remediation, the sole issue of quantum is even further narrowed upon application of the Court's remediation formula. Legal and factual issues have been explored and developed in this litigation which should allow for quick decision-making by the Court on the remaining issues, particularly as now framed by Rules 23 and 55. It is particularly difficult to justify (or reconcile with the mandate of Rule 1) the proposed, stand-alone *Daubert* motion practice, since issues of expertise and methodology do not appear substantial or controversial in cases primarily addressed to remediation.

Under Plaintiffs' proposed Plan, once case-specific motion practice has been allowed over a period of approximately one month at the conclusion of the current discovery deadlines set in the "Louisiana *Amorin* 39," an additional month is afforded for the exchange of witness and exhibit lists and any objections to exhibits or deposition designations. The cases then should be ready in late September 2019 for Rule 55(b)(2) hearings, which Plaintiffs believe will and should be non-jury proceedings consistent with the policy and purpose of that Rule.

In sum, the differences between the parties' proposed resolution timetable are glaring. Under Defendants' Plan a fraction of the currently selected "discovery pool" cases will be adjudicated at the end of calendar year 2019. Under Plaintiffs' Plan, all product identification issues and all the "pool" cases (having been discovered) will be resolved and adjudicated by the end of September of this year. Plaintiffs submit that theirs is a timetable far more suited to, and justified by, the history and status of this MDL. Neither do Plaintiffs believe that this timetable will impair the rights of Defendants to address both product identification and the limited issues of damages remaining to be tried in this matter. To the extent it curtails the full scope of traditional defense activities sought in other cases, Plaintiffs' Plan does so with equity, history and FRCP Rules 1, 23, and 55 in full support.

(D) FLIGHTS OF TRIALS, NOT TRIALS "ONE AT A TIME"

The Court previously has mentioned to the parties that it might be appropriate to try the Louisiana *Amorin* cases not singly but in "flights." In contrast to Defendants' "one at a time" approach to trials, Plaintiffs' Plan endorses this suggestion by Your Honor.

First, the limited issues needing to be resolved for remanded class members under FRCP 55(b)(2) are narrow in scope; and, as to the predominant claim for remediation damages, a

formulaic method for calculating the proper amount of such damages has been fully adjudicated and stands ready to be applied.

Second, the claims of these class members spring from a uniform admission of combined LPLA/redhibition liability by default, and thus have predominant commonality as to both legal and factual issues. The Court, as factfinder, should have no difficulty in adjudicating claims collectively in a case such as this.

Finally, by grouping claimants into a total of eight "flights" of cases with similar/overlapping issues – the first seven flights of five Plaintiffs each and the final, eighth flight of the remaining four Plaintiffs in the "Louisiana *Amorin* 39" group – the entire inventory of discovered "pool" cases can be adjudicated over a four-week period. As reflected in the final "bullet" point of Section I of Plaintiffs' Plan, this would allow all of these discovered cases to be concluded by mid-to-late October of this year. Even so, Plaintiffs will have waited for judgment for almost a full year since they were selected as "pool" cases and a decade since their cases were filed, in a matter where Defendants have been in default for years.[4]

Considering the prejudice visited on these homeowners by Defendants' strategy of delay and avoidance, each selected Plaintiffs' "day in Court" need not be later than this fall. Flights of trials to accomplish this make sense and are justified at this phase of the proceedings; and

[4] These homeowners also will have waited almost 8 years since the December 2011 class settlement with Knauf put their thousands of "Knauf Plaintiff" counterparts on track to be made whole through "back to studs" remediation.

Plaintiffs will propose that trial flights continue to be used to resolve the balance of the Louisiana inventory, once demonstrated to be efficacious as to the "Louisiana *Amorin* 39."

For the foregoing reasons, Plaintiffs respectfully move the Court to adopt and implement the Plan reflected in Exhibit A.[5]

Dated: March 15, 2019

Respectfully submitted,

**BY: *___/s/ Leonard A. Davis_____***

Russ M. Herman (LA Bar No. 6819)
Leonard A. Davis (LA Bar No. 14190)
Stephen J. Herman (LA Bar No. 23129)
Herman, Herman & Katz, LLC
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
ldavis@hhklawfirm.com
*Plaintiffs' Liaison Counsel*
*MDL 2047 and Class Counsel*

Arnold Levin
Fred S. Longer
Sandra L. Duggan
Levin Sedran & Berman LLP
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*
*MDL 2047 and Class Counsel*

[5] The product identification issues involving all Habitat-remediated properties can and should be addressed in the Special Master/Magistrate process referred to in Section II of Plaintiffs' Plan. But as the Court has directed and as been discussed by the parties, the Habitat claims otherwise will proceed on their own, contemporaneous track; and this will be the subject of separate filings for the Court's consideration.

**PLAINTIFFS' STEERING COMMITTEE**

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Robert M. Becnel
Law Office of Robert M. Becnel
425 W. Airline Highway, Suite B
Laplace, LA 70068
Phone: (985) 359-6101
Fax: (985) 651-6101
robbecnel@aol.com

Salvadore Christina, Jr.
Becnel Law Firm, LLC
425 W. Airline Highway, Suite B
Laplace, LA 70068
Phone: (985) 536-1186
Fax: (985) 536-6445
schristina@becnellaw.com

Peter Prieto
Podhurst Orseck, PA
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
pprieto@podhurst.com

Bruce William Steckler
Steckler Gresham Cochran
12720 Hillcrest Road, Suite 1045
Dallas, TX 75230
Phone: (972) 387-4040
Fax: (972) 387-4041
bruce@stecklerlaw.com

Patrick Montoya
Colson, Hicks, Eidson
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
patrick@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
Echsner & Proctor, PA
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
The Lambert Firm
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@thelambertfirm.com

Pete Albanis
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Myers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
palbanis@forthepeople.com

James R. Reeves, Jr.
Reeves & Mestayer, PLLC
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@rmlawcall.com

Christopher A. Seeger
Seeger Weiss, LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5002
dan@wbmllp.com

Richard J. Serpe
Law Offices of Richard J. Serpe
Crown Center, Suite 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com

Victor M. Diaz, Jr.
V.M. Diaz and Partners, LLC
119 Washington Ave., Suite 402
Miami Beach, FL 33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

Anthony D. Irpino
IRPINO AVIN HAWKINS LAW FIRM
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

Gerald E. Meunier
Gainsburgh, Benjamin, David,
Meunier & Warshauer, LLC
2800 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W., Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax: (202) 540-7201
rlewis@hausfeldllp.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, which will serve a notice of the uploading in accordance with the procedures established in MDL 2047, on this 15th day of March, 2019.

/s/ Leonard A. Davis
Leonard A. Davis
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com
Plaintiffs' Liaison Counsel
MDL 2047

*Co-Counsel for Plaintiffs*