# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL NO. 2047** |
| **THIS DOCUMENT RELATES TO:** *Amorin v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.*, Case No. 2:11-cv-01395 (E.D. La.) (LA) | **SECTION: L** **JUDGE FALLON** **MAG. JUDGE WILKINSON** |

**PLAINTIFFS' STEERING COMMITTEE'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR AN ORDER (UNDER FRCP 55(b)) APPLYING THE REMEDIATION DAMAGES FORMULA ADOPTED BY THE FINDINGS OF FACT & CONCLUSIONS OF LAW RELATED TO THE JUNE 9, 2015 DAMAGES HEARING TO <u>THE CLAIMS OF FORMER OWNERS OF AFFECTED PROPERTIES</u>**

## I.    <u>INTRODUCTION</u>

As the Court continues to address the calculation of class wide remediation damages owed by the defaulted Taishan Defendants[1] under FRCP 55(b), the Plaintiffs' Steering Committee respectfully seeks an order applying the remediation damages formula adopted by the Findings of Fact & Conclusions of Law related to the June 9, 2015 damages hearing to the

---

[1] In this Court's Jurisdiction Order & Reasons, the Taishan Defendants were defined to be comprised of Taishan Gypsum Co., Ltd. ("Taishan"); Beijing New Building Materials Limited Co. ("BNBM"); Beijing New Building Materials Group Co., Ltd.; China National Building Materials Co., Ltd.; China National Building Materials Group Corporation ("CNBM Group"); and Tai'an Taishan Plasterboard Co., Ltd.. *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2017 WL 1476595, at *43 n.28 (E.D. La. Apr. 21, 2017). In a separate Order & Reasons of March 10, 2016, this Court dismissed CNBM Group, *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 168 F. Supp. 3d 918, 939 (E.D. La. 2016), and then denied Plaintiffs' request to certify the matter for an interlocutory appeal (Rec. Doc. 21823).

claims of former owners (*In re Chinese-Manufactured Drywall Prod. Liab. Litig*., 2017 WL 1421627 (E.D. La. Apr. 21, 2017)).  For more than nine years, Defendants have manipulated our judicial system and engaged in delay tactics that have denied relief to thousands of property owners damaged by defective Chinese Drywall.  They have even gone so far as to brazenly disregard this Court's Order to appear at a judgment-debtor exam after being cast in judgment based on the adjudicated claims of seven Virginia property owners in *Germano*.  Over time, Defendants' strategy has saddled homeowners with overwhelmingly burdensome costs, destroyed their life-savings, shattered their dreams, and forced many to abandon their unremediated homes or lose them through foreclosure or bankruptcy while the processing of their claims dragged on, through no fault of these Plaintiffs.  It is the latter group of claimants (previously current owners who are now "former owners") to whom this motion is addressed.

There is no question that former owners are *Amorin* class members in this MDL.[2]  The vast majority of Plaintiffs were current owners when they filed suit against the Taishan Defendants, but unfortunately many of these Plaintiffs became former owners during the decade-long protracted Chinese Drywall proceedings.  Plaintiffs contend that any Plaintiff who was a current owner when suit was brought and when the first defaults were entered against Taishan in 2009,[3] is a current owner for purposes of calculating damages in these default proceedings.

But, in any event, regardless of the date that a Plaintiff became a former owner, former owners are entitled to recover the property damages for which Defendants are liable.  Both law and equity warrant that such former homeowners be deemed entitled to the same relief as current

---

[2] Rec. Doc.  21846 (Order & Reasons addressing Notice of Clarification Regarding the Composition of the *Amorin* Class).

[3] Rec. Doc. 277; Rec. Doc. 487.

homeowners in the calculation of damages done to property by defective Chinese Drywall.  Such parity in the award of remediation costs will (a) assure that Defendants' efforts to wrongfully delay the resolution of Plaintiffs' claims do not undermine the purpose and policy of the current default phase of these proceedings, and (b) prevent an effective windfall to the same Defendants whose conduct in this litigation has contributed to the abandonment or loss of unremediated homes by these class members.  The PSC therefore seeks a determination that the Taishan Defendants' responsibility to pay remediation damages on a formulaic basis (as established by this Court) extends to class members who have been obliged to relinquish ownership of unremediated homes over the course of this litigation.

## II.   <u>FACTUAL BACKGROUND</u>

Purposeful delay has been the signature trademark of the Taishan Defendants' litigation strategy; and they do not appear before the Court with clean hands.  From their initial meeting with their American lawyers in 2009 through today, they have attempted to thwart the American justice system and prejudice the rights of homeowners who fell victim to their inferior and defective drywall.  As this Court has noted, their collective "delay tactics have permeated every aspect of Defendants' litigation strategy: from their initial failure to appear to their now perpetual motions to re-litigate settled matters."[4]

These tactics were demonstrated by the Defendants' practices on multiple occasions of seeking to 1) vacate the defaults against them, 2) move to decertify the *Amorin* class, and 3) obtain an immediate appeal of the Class Damages Order as well as the MDL order denying their

---

[4] *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2018 WL 279629, *9 (E.D. La. Jan. 2, 2018).

decertification motion.[5]  Hence, the very Defendants that seized on the opportunity to profit in

the United States market (including in the wake of Hurricane Katrina's devastation of thousands

of homes), have exploited the United States legal system in order to avoid accountability.  This

Court is aware of this history, having recounted that,

> [d]uring approximately 2005 to 2008, hundreds-of-millions of
> square feet of gypsum wallboard manufactured in China ("Chinese
> drywall") were exported to the United States, primarily along the
> East Coast and Gulf South, as a result of an exceptionally high
> demand for building supplies in the aftermaths of Hurricanes Rita
> and Katrina, as well as a general new-housing boom.[6]

The Defendants' own documents confirm that Taishan Gypsum and BNBM have known

since 2009 that they were named as defendants in lawsuits alleging damages caused by the

Chinese Drywall they manufactured and shipped to the U.S.[7]  Discovery has proven that

Defendants engaged in a calculated strategy to ignore the Chinese Drywall complaints and sit on

the sidelines.  Specifically, the Informational Report on the Class Actions Brought by the U.S.

Parties Against Taishan Gypsum Company Limited expressly stated:

> After analysis, Taishan Company believes that this lawsuit is
> relatively complicated, and it plans not to respond … [T]he reasons
> are as follows… responding to the lawsuit would incur a large
> amount of attorney's fees and traveling fees. . . . [T]here is no
> judicial treaty signed between China and the U.S. on mutual

---

[5] *See id.* at *1-2 (describing BNBM's multiple attempts to vacate defaults); *see also* Defendants'
Motion to Decertify (Rec. Docs. 20627, 20631, 20632); MDL Order & Reasons dated 4/21/2017
re Motion to Decertify (Rec. Doc. 20740) ("Decertification Opinion"); MDL Order & Reasons
dated 8/22/2017 (Rec. Doc. 20910) (denying motions to certify Class Damages Order and
Decertification Opinion for immediate appeal under Section 1292(b)) ("1292(b) Opinion").

[6] *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 894 F. Supp. 2d 819, 829-30 (E.D. La.
2012).  *See also* Summary of Taishan Drywall Imports reflecting that Taishan Gypsum shipped
87.6 million square feet of Chinese Drywall to U.S. (Rec. Doc. 14843-3).

[7] *See* The Course of Events on Hiring Law Firms for the Gypsum Board Litigation in the United
States (Rec. Doc. 21641-192), at 1.

> recognition and enforcement of court judgments, and [since]
> Taishan Company does not have assets within the continental U.S.,
> even if the lawsuit was lost, the U.S. court cannot enforce
> Taishan's assets in China.[8]

Moreover, this strategy has been orchestrated in consultation with counsel from the very beginning of this litigation, since 2009. Defendants' document entitled, "The Course of Events on Hiring Law Firms for the Gypsum Board Litigation in the United States" (Rec. Doc. 21641-192), at 1-2, reveals that "BNBM PLC and its subsidiary Taishan Gypsum discussed the gypsum board lawsuits in the United States, in which BNBM PLC and Taishan Gypsum were involved, with the three candidate law firms were Lovells International Law Firm[,] Orrick, Herrington & Sutcliffe LLP[,] and K&L Gates LLP." *Id.* These counsel advised the Defendants that their legal strategy to avoid the Court would result in default judgments entered against them. The Defendants nonetheless remained undaunted, as, again, their own documents confirm:

> Taishan and BNBM are aware that "Judge Fallon already issued a
> warning to Taishan Gypsum. If Taishan Gypsum did not respond
> to the litigation before September 24, 2009, the judge will hold a
> hearing on September 24, 2009, and issue a default judgment
> against Taishan Gypsum."[9]

The Defendants' strategy was implemented for the collection of entities comprising the Taishan Defendants. In its Jurisdiction Order of April 21, 2017, this Court found that the Taishan Defendants functionally operated as a single business enterprise ("SBE"). "This single business enterprise is therefore considered one entity for the purposes of imputing personal

---

[8] Rec. Doc. 21641-4 at 3.

[9] The Course of Events on Hiring Law Firms for the Gypsum Board Litigation in the United States (Rec. Doc. 21641-192), at 6.

jurisdiction under Louisiana law." *Chinese Drywall*, 2017 WL 1421627, at *37.  This singularity of interests makes the Taishan Defendants collectively liable for all Plaintiffs' injuries.

Because of their potential SBE exposure, the Taishan Defendants recently sought "to go back to square one,"[10] by limiting the *Amorin* class to current owners only, taking the unreasonable position that, "if over the course of nine years any of the Plaintiffs named in the *Amorin* complaints no longer own their homes, they should be excluded from the class, notwithstanding the fact that their homes were allegedly damaged by Taishan's Drywall." *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, No. MDL 2047, 2018 WL 4929199, at *6 (E.D. La. Oct. 11, 2018).  Recognizing that over the course of time many claimants no longer own their properties, through no fault of their own but rather as a direct consequence of delays in the litigation.  Defendants thus seek to avoid accountability by virtue of the very strategy they devised to avoid accountability in the first place.  This should not be countenanced.

With the passage of time, it is hardly surprising that a number of homeowners simply have been unable to continue living in toxic homes that they cannot afford to remediate on their own. Under Defendants' analysis, these claimants now stand to be penalized as a consequence of Defendants' efforts to "game" the system and cause interminable delays. As the Court appropriately noted,

> the whole approach is just delay.  Delay because people die, delay because they lose their homes, delay because they're frustrated and giving up.[11]

---

[10] *See Chinese Drywall*, 2018 WL 279629, at *10 (denying motion to vacate defaults); *see also* Decertification Opinion; 1292(b) Opinion.

[11] *See* August 15, 2018 Hearing Tr., at 24:2-11 (Rec. Doc. 21709).  This reasoning is amply supported at law and by the common-sense notion that one should not benefit from their own misconduct.  *See generally Barnhill v. United States*, 11 F.3d 1360, 1368 (7th Cir.1993) ("Misconduct may exhibit such flagrant contempt for the court and its processes that to allow the

This Court, however, is empowered to fashion appropriate and uniform relief for former owners, given the equities involved, Louisiana law and Defendants' defaults under FRCP 55. Property damages have been owed to all class members, for some time now, since "Defendants' liability was conceded by their default." *See Chinese Drywall*, 2017 WL 1421627, at *8, ¶ 19. The remaining question is the measure of damages, commensurate with "made whole" relief for the property damage suffered by current and former owners alike.

The Court having already determined that class members are entitled to recover remediation damages on a formulaic basis, Plaintiffs submit that this ruling should apply to both current and former owner class members. There is clear precedent for this result, found in Your Honor's Findings of Fact and Conclusions of Law following the *Germano* trial. In that Rule 55(b)(2) proceeding, despite having to declare bankruptcy due to their failed efforts to carry both their Chinese Drywall home mortgage and a rental property, the Plaintiffs Deborah and William Morgan were awarded remediation damages, the value of their lost personal property, their past and future repair costs, economic losses associated with foreclosure and bankruptcy, alternative living costs, and their loss of use and enjoyment. *In re Chinese Manufactured Drywall Prod. Liab. Litig.*, 706 F. Supp. 2d 655, 695-96 (E.D. La. 2010). Their recovery of remediation damages was allowable despite the fact that the Morgans had previously abandoned their home and suffered a foreclosure on their former property. They were, in other words, former owner

---

offending party to continue to invoke the judicial mechanism for its own benefit would raise concerns about the integrity and credibility of the civil justice system that transcend the interest of the parties immediately before the court."); *Assaf v. Trinity Medical Center*, 696 F.3d 681, 686 (7th Cir. 2012) ("[A] classic rule of contract law, is that a party should be prevented from benefitting from its own breach.").

class members, the same group of claimants to which this motion is addressed.  In *Germano*, the Court entered judgment for <u>both</u> current owners and former owners based on the same formulaic methodology to calculate remediation damages.  *See* Order & Reasons (Awarding Disbursement of the *Germano* Intervenors' Judgment) (Rec. Doc. 18725).

On June 9, 2015, this Court conducted a Class Damages Hearing pursuant to FRCP 55(b)(2), in order to monetize the debt owed by Taishan for all class claims seeking remediation damages.  Just prior to the Class Damages Hearing, Plaintiffs' expert on remediation damages, Mr. Ronald Wright, became unavailable due to a family emergency. His partner George Inglis (who had worked with Mr. Wright side by side throughout this process) was substituted as Plaintiffs' expert, with Court approval.  In the moments leading up to the Damages Hearing, Plaintiffs requested that the hearing be limited to current owners and requested that former owners' damages be calculated at a later date.  *See* Plaintiffs' Reply Brief in Support of Motion for Assessment of Class Damages Pursuant to Rule 55(b)(2)(B) at 22 (Rec. Doc. 21681).  The Court then conducted an evidentiary hearing limited to "only remediation damages for current owners."[12]  Again, the emphasis properly remained on the appropriate means of monetizing a debt owed by Taishan under Rule 55:

> Given that the defectiveness and corrosive effect of Chinese drywall is well-established, defendants are in default, there is no contributory negligence, and this Court already entered a liability judgment, the only issue currently pending before the Court is the amount of damages which should be awarded to the Plaintiffs in order to accomplish the necessary remediation.[13]

---

[12] *Chinese Drywall*, 2017 WL 1421627, at *14, ¶ 59.

[13] *Id.* at *9, ¶ 20.

In the course of evaluating remediation damages this Court further decided that "[i]n the instant case, the class experienced class-wide damages directly tied to liability:  the need to replace the defective drywall. This injury is common to every class member, with the only difference being how much drywall each class member had to replace and how much the contractor charged in order to perform the work."[14]  This "common injury" has been suffered by every owner, current and former, and the same calculation method already determined to result in a fair measure of damages to compensate for this "common injury," likewise should obtain for every owner, current and former.  The Court-approved, formulaic calculation, once applied to all current and former owners, will then leave only the final determination of remediation damages subject to "subsequent set-offs and claims proceedings."[15]

As noted, this Court has already employed this approach with regard to the *Germano* Intervenors.  Further, this Court has addressed the question of an appropriate trial plan for certain, selected cases.  *See* October 12, 2018 Order & Reasons at 8 (Rec. Doc. 21847).  Pursuant to Your Honor's directive, the parties identified 40 Plaintiffs (later reduced to 39) to form a discovery pool, with trials addressing damages in these cases to occur at a later date.  The parties jointly submitted a discovery plan for these selected Louisiana Claims, which was endorsed by the Court on November 1, 2018 (Rec. Doc. 21897).[16]  Mary Haindel is a Louisiana Select Case and she is a former homeowner.  Defendants, in identifying their Select Cases, included six (6)

---

[14] *Id.* at *20, ¶ 76.

[15] *Id.* at *24.

[16] The parties have been unable to reach agreement regarding additional trial plan proceedings for Louisiana *Amorin* Plaintiffs, but have agreed to submit competing plans to the Court for a ruling (Rec. Doc. 22133).

former homeowners:  Colin Berthaut and Colin Gelpi, Holly Braselman, Brian and Barbara Lewis, Dana and Marcus Staub, Rosanne Wilfer, Zhou Zhang and Xug Ying Zhao.[17]  To give more specificity to the relief proposed in the instant motion, the following discussion of Ms. Haindel, whose deposition testimony highlights the significant harm that has befallen former owners, may be instructive.

Ms. Haindel originally purchased and moved into her home in Mandeville, Louisiana, which was a new construction, in June of 2007 for $316,000.[18]  The defective Chinese Drywall had been installed during the new construction.  Like most Plaintiffs, Ms. Haindel experienced the effects caused by the "gassing from the toxic Chinese drywall," which created a corrosive environment that turned black copper metals, destroyed her central air conditioning unit, and caused an awful "rotten eggs" odor to permeate the house.[19]  But it wasn't just the structure of the house that suffered, Ms. Haindel was consistently sick in the house and suffered respiratory problems and her personal property was destroyed.[20]  Like many homeowners, she suffered not knowing the cause of her problems until she saw a special on the news, around Mardi Gras in 2009, discussing the ill-effects of Chinese Drywall, many of which she was experiencing.[21]

---

[17] Due to medical conditions and disability, Dr. Daniel Gammage (also a former homeowner) was withdrawn from the Defendants' select claimants.  *See* Notice of the Parties' Agreement to Amend the *Amorin* Discovery Plan to Remove Daniel Gammage as a Defendants' Select Class Claim (Rec. Doc. 22097).  Although, Dr. Gammage's case is no longer a Select Case, his claims are still active and will be adjudicated by this Court.

[18] Deposition of Mary Haindel (Feb. 19, 2019) at 15:3-16, 143:19-25, 161:5-8 [Attached hereto as Exhibit "A"].

[19] *Id.* at 62:13-24, 64:9-11, 71:20-25.

[20] *Id.* at 80:10-18, 148:7-150:11.

[21] *Id.* at 23:14-17, 54:9-25.

Having suffered and been sick, Ms. Haindel knew she had to move out of her home, and did so within weeks.[22]  As her brother told her, in a sentiment echoed by many who are forced to live in these toxic environments: "if the drywall is eating copper, what's it doing to you and your dogs' lungs?"[23]  Unlike many, Ms. Haindel had the ability to move out quickly because she owned, along with her two siblings, a house that was local that had been bequeathed to them by their sister who had passed away.[24]  Of course, that brought its own challenges and Ms. Haindel is now in debt to her brothers for the rent that was owed during the time she was forced to find alternate living.[25]  Even though she was not paying the rent in the non-Chinese Drywall family home out of pocket at that time, Ms. Haindel, like most homeowners, incurred substantial other costs associated with an alternative living arrangement.[26]  And, she needed to move out of the alternate home after a couple of years because it was sold, and after all, although her brothers were trying to be helpful, they "didn't expect this [litigation] to take 10 years."[27]  Ms. Haindel then had to relocate, again, to a condominium that she owned in Florida as an investment property, forgoing the rental income she had been receiving.[28]

In addition to all of the relocation stress, Ms. Haindel had to decide whether to attempt to remediate or simply sell her home with Chinese Drywall.  She did not want to remediate the

---

[22] *See, e.g.*, *id*. at 82:8-20.

[23] *Id.* at 82:8-20.

[24] *Id.* at 24:7-26:9.

[25] *Id.*

[26] *Id.* at 117:22-118:23.

[27] *Id.* at 24:21-25:16, 26:10-12.

[28] *See, e.g., id.* at 144:19-145:13.

home because "[a]t the time, when it was discovered, it was – we did not know if it was organic

or inorganic; so we didn't know if it was going to stay in the house, was it going to have to be

torn down.  It was too many unknowns.  And I had just dealt with Katrina.  And I just made the

decision to sell and get – and move out."[29]  Selling was difficult for Ms. Haindel because the

home had Chinese Drywall and in fact, one potential sale fell through.[30]  Ultimately, Ms. Haindel

was forced to sell her home *via* a short sale on December 6, 2010, for $110,000.[31]  To exacerbate

that process, when she wanted to get the bank to work with her toward an eventual short sale, she

discovered they wouldn't talk to her while she was current on her mortgage and so, for that

reason, along with the overall financial hardship caused by the relocation, she needed to stop

making her mortgage payment.[32]

Ms. Haindel has provided sworn testimony that captures the incredible stress and

hardship that she has endured for the past ten years.  Like many Plaintiffs, she feels like her

"whole life is on hold."[33]  As she described the experience of losing one's home as a result of

this situation, "it just turns your life upside down when you lose a house.  Banks won't talk to

you.  Credit won't talk to you."[34]  And, her nightmare did not end when the house was sold – the

short sale compounded the problems.  She noted that to this day: "A bank won't talk to you.

---

[29] *Id.* at 46:14-20.

[30] *Id.* at 40:18-41:21, 96:19-97:15.

[31] *Id.* at 104:19-105:14.

[32] *Id.* at 85:23-86:11.

[33] *Id.* at 148:15.

[34] *Id.* at 148:12-15.

You can't refinance.  I can't buy a house.  I haven't bought a house since.  I mean, that's just part of it.  Credit -- my credit's gone.  I mean, there's not a bank that's going to talk to me."[35]

Unfortunately, Ms. Haindel is not alone.  She is but one example of many who have lived a similar nightmare.  Here, Taishan has clearly used the litigation tactic of years of intentional delay to then argue that as result of the passage of time, class members' damages claims have been reduced to the required proof of loss associated with forced sales, because they have lost their homes and now are deprived of a formulaic calculation of damages meant to compensate the common damages caused by defective drywall. This strategy should not be condoned, and in the interests of equity and under the applicable tort damages laws, these former owners are entitled to be made whole by applying the formula for remediation damages set by this Court. Their property damage recovery, to which they clearly are entitled without any assignment, should not be penalized in comparison to those who had the financial stamina or resources to remain owners during this longstanding case.

Indeed, six of the Defendants' Select Claimants have suffered a similar insult. These Plaintiffs' lives were disrupted, upended and impaired because of the Defendants' refusal to account for the common injury inflicted on all class properties due to their defective drywall.  No doubt these cases will be categorized by Defendants as limited to the proof of value of diminution/short sale loss, even though the common injury of defective drywall inflicted on these owners is the same harm done to all class members.  Defendants' contention that Plaintiffs should be denied full relief because some Plaintiffs no longer own their homes, however, should be rejected on the ground that they have deliberately protracted proceedings in which

---

[35] *Id.* at 154:5-155:17.

Defendants' wrongful conduct should estop them from gaining an economic advantage in the final accounting of damages. Since all Plaintiffs, current and former owners alike, have a common right to be compensated for a common injury, Plaintiffs submit that the Select Claimants and other former owner class members should be entitled to recover remediation damages according to the same methodology, based on the formula set forth in the Findings of Fact & Conclusions of Law related to the June 9, 2015 Damages Hearing.

## III.   ARGUMENT

### A.  Former Owners Have Maintained a Personal Right to Damages to Property Once in their Possession.

Under Louisiana law, former owners of property, absent an express assignment, maintain the right to sue for damage to the property formerly owned. Louisiana has adopted the "subsequent purchaser" rule to determine who has the right to sue for property damage:

> The subsequent purchaser rule is a jurisprudential rule which holds that an owner of property has no right or actual interest in recovering from a third party for damage that was inflicted on the property before his purchase, in the absence of an assignment or subrogation of the rights belonging to the owner of the property when the damage was inflicted.

*Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*, 79 So. 3d 246, 256-57 (La. 2011); *see also Guilbeau v. Hess Corp.*, 854 F.3d 310, 312 (5th Cir. 2017); *Walton v. Exxon Mobil Corp.*, 162 So. 3d 490, 497 (La. Ct. App. 2015); *Boone v. Conoco Phillips Co.*, 139 So. 3d 1047, 1053 (La. Ct. App. 2014). As a personal right, as opposed to a real right, an owner maintains the right to sue the tortfeasor even after the owner sells the property in question. *Eagle Pipe*, 79 So. 3d at 275.

Consequently, under established Louisiana law, former owners of property with defective Chinese Drywall – including former owners like Ms. Haindel, Colin Berthaut and Colin Gelpi, Holly Braselman, Brian and Barbara Lewis, Dana and Marcus Staub, Rosanne Wilfer, Zhou

Zhang and Xug Ying Zhao – still possess the right to recover all damages caused by the defective drywall while they owned their property.  Given that the right to recover for property damage vests with the owner of the property at the time the damage occurs, therefore, the scope of recovery also can be measured as of this point in time, making remediation costs an appropriate method of compensation for former owners.[36]  The Court has leeway to do so in fashioning appropriate class wide relief in this Rule 55(b)(2) phase of the proceedings.

The formulaic damages methodology approved in the Damages Order provides all the groundwork necessary for calculating such damages.  The Court ruled that RS Means keyed to the zip code of the affected property "sufficiently and reliably accounts for location factors in the individual and aggregate damages estimate."[37]  A current owner is entitled to such recovery

---

[36] Although the present motion addresses only the Louisiana *Amorin* class members, the same reasoning is consistent with the other jurisdictions in which other class members reside.  *See, e.g.*, **California:** *Vaughn v. Dame Constr. Co.*, 272 Cal. Rptr. 261, 263 (Cal. Ct. App. 1990), *modified* (Aug. 23, 1990) (property owner's right to sue is considered personal property, not real property); *Siegel v. Anderson Homes, Inc.*, 13 Cal. Rptr. 3d 462, 473–74 (Cal. Ct. App. 2004) ("[T]he cause of action belongs to the owner who first discovered, or ought to have discovered, the property damage."); **Florida:** *Knight v. Empire Land Co.*, 45 So. 1025, 1028 (Fla. 1908); *see also* 55 Fla. Jur 2d Trespass § 6 (an owner's subsequent sale or transfer of the property subject to trespass has no effect on the tortfeasor's liability to the former owner); **Georgia:** *Dougherty Cty. v. Pylant*, 122 S.E.2d 117, 118 (Ga. Ct. App. 1961) ("[I]t is immaterial that the plaintiff no longer owns the property at the time at which suit may be instituted."); **Mississippi:** *Flowers v. McCraw*, 792 So. 2d 339, 342 (Miss. Ct. App. 2001) (recognizing prior trespass doctrine); **Virginia:** *City of Lynchburg v. Mitchell*, 76 S.E. 286 (Va. 1912) (subsequent owner/assignee has the right to pursue claim of original owner); *Morriss v. White*, 131 S.E. 835 (Va. 1926) (recognizing the right to sue for trespass on property belongs to the owner at the time of trespass, but can be assigned). In fact, Judge Cooke has adopted this Court's ruling for all Florida plaintiffs.  *See* Order, *Amorin, et al. v. Taishan Gypsum Co., Ltd., et al.,* Civil Action No. 11-22408 (S.D. Fla. Nov. 16, 2018) (Rec. Doc. 21933-1) [ECF No. 112]_at 2 (adopting "**all** of Judge Fallon's findings of facts and legal conclusions"), at 3 ("[t]he remediation formula represents a reasonable and reliable measure of the remediation damages which the Court will apply to determine the appropriate amount of property damages.").

[37] *Chinese Drywall*, 2017 WL 1421627, at *12, ¶ 41.

whether or not he or she intends to use the recovery to make property repairs.  So should it be with former owners.  Being made whole does not carry an obligation to spend funds recovered in a particular way.

### B.  At Equity, Former Homeowners are Entitled to Equal Relief as Current Homeowners.

The ancient Roman maxim *ubi jus ibi remedium* remains applicable even today.  "It is an elementary maxim of equity jurisprudence that there is no wrong without a remedy." *Leo Feist, Inc., v. Young*, 138 F.2d 972, 974 (7th Cir. 1943).  This principle is even embedded in Louisiana's Civil Code.  Article 2315 expressly states: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."[38]  So too here, Plaintiffs submit that the Defendants' improper behavior cries out for an equitable remedy.  Where there is a right, there is a remedy.  The clear right of former owners to recover property damages done to formerly-owned property, should entail a calculation of damages suitable to the circumstances of the case.  Here, such a calculation based on the Court's approved formula is jusfied in law and equity, and consistent with the aims of FRCP 23 as well as FRCP 55.

As the circumstance of former owners, discussed above, demonstrates, Plaintiff class members continue to suffer immeasurable insults and damages caused by the Taishan Defendants' defective drywall without proper recompense. Over the past ten years of litigation in these MDL proceedings, the record proves that the Taishan Defendants have strategically decided to ignore their obligations to this Court to the point that default judgments have been entered against them.  After targeting American consumers for purposes of selling millions of dollars of their defective products, the Taishan Defendants refused to submit to the jurisdiction

---

[38] LSA-C.C. art. 2315.

16

of our courts to pay for their wrongdoing.  Instead, they chose to hide behind a wall preventing Plaintiffs from enforcing U.S. judgments in China, all the while knowing that each procedural obstacle they presented would delay these proceedings and cause ever-mounting affliction to financially stressed homeowners, who would be forced to ultimately surrender to the crises and pressures by selling their homes, or losing them in foreclosure or bankruptcy.  Former homeowners are equally deserving of the same remedy available to current homeowners.

Where, as here, a ready formula exists to measure the damages to property caused by the Defendants' faulty drywall, equity dictates that the same measure of damages applicable to current homeowners should be applied equally to former homeowners.  *See generally Brown v. Bd. of Educ. of Topeka, Kan*., 349 U.S. 294, 300 (1955) ("Traditionally, equity has been characterized by a practical flexibility in shaping its remedies and by a facility for adjusting and reconciling public and private needs.").  The former homeowners suffered the same common injury to property as current homeowners or more, having lost their homes.  To relegate them to lesser relief than current owners is to reward the same condemnable delay tactics which have caused current owners to become former owners.  Affording these former owners the same pecuniary relief available to current owners in the same class is therefore justified not only by the legal principles and policies of FRCP 23 and 55(b), but also by the equitable principle of fundamental fairness.

## IV.  <u>CONCLUSION</u>

For the reasons set forth above, fairness and justice demand that the instant motion be GRANTED.

17

Dated:  March 15, 2019                  Respectfully Submitted,

By: */s/ Russ M. Herman*
Russ M. Herman (La Bar No. 6819) (on the brief)
Leonard A. Davis (La Bar No. 14190) (on the brief)
Stephen J. Herman (La Bar No. 23129)(on the brief)
Herman, Herman & Katz, LLC
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
RHerman@hhklawfim.com
*Plaintiffs' Liaison Counsel MDL 2047*

Arnold Levin (on the brief)
Fred S. Longer (on the brief)
Sandra L. Duggan (on the brief)
Keith Verrier (on the brief)
Levin Sedran & Berman LLP
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
alevin@lfsblaw.com
*Plaintiffs' Lead Counsel MDL 2047*

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios (on the brief)
Emma Kingsdorf Schwab (on the brief)
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Robert M. Becnel,
Law Office of Robert M. Becnel
425 W. Airline Highway, Suite B
Laplace, LA 70068
Phone: (985) 359-6101
Fax: (985) 651-6101
robbecnel@aol.com

Salvadore Christina, Jr.
Becnel Law Firm, LLC
425 W. Airline Highway, Suite B
Laplace, LA 70068
Phone: (985) 536-1186
Fax: (985) 536-6445
schristina@becnellaw.com

Peter Prieto
Podhurst Orseck, PA
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
pprieto@podhurst.com

Bruce William Steckler
Steckler Gresham Cochran
12720 Hillcrest Road, Suite 1045
Dallas, TX 75230
Phone: (972) 387-4040
Fax: (972) 387-4041
bruce@stecklerlaw.com

Patrick Montoya
Colson, Hicks, Eidson
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
patrick@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
Echsner & Proctor, PA
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
The Lambert Firm
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@thelambertfirm.com

Pete Albanis
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Myers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
palbanis@forthepeople.com

James R. Reeves, Jr.
Reeves & Mestayer, PLLC
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@rmlawcall.com

Christopher A. Seeger
Seeger Weiss, LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5002
dan@wbmllp.com

Richard J. Serpe (on the brief)
Law Offices of Richard J. Serpe
Crown Center, Suite 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com

Victor M. Diaz, Jr.
V.M. Diaz and Partners, LLC
1000 Fifth Street, Suite 400
Miami Beach, FL 33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

Anthony D. Irpino
IRPINO AVIN HAWKINS LAW FIRM
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

Gerald E. Meunier (on the brief)
Rachel Naquin (on the brief)
Gainsburgh, Benjamin, David,
Meunier & Warshauer, LLC
2800 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2800
Phone:  (504) 522-2304
Fax:  (504) 528-9973
gmeunier@gainsben.com

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W., Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, which will serve a notice of the uploading in accordance with the procedures established in MDL 2047, on 15th day of March, 2019.

<u>/s/ Leonard A. Davis</u>
Leonard A. Davis
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com
Plaintiffs' Liaison Counsel
MDL 2047

*Co-Counsel for Plaintiffs*