**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L JUDGE FALLON MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO: ALL CASES | |

**CLASS COUNSEL'S RESPONSE TO JOINT**
**NOTICE COUNSEL'S MOTION TO LIFT PTO 32**

## I.    SUMMARY OF ARGUMENT

After nearly a decade of litigation involving Chinese Defendants, this Court on March 12, 2018, entered a Suggestion of Remand involving 1,700 Florida Taishan cases, which are part of the certified class known as *Amorin*.[1]  On May 14, 2018, this Court entered PTO 32.[2]  The wisdom of this Court's decision to reserve jurisdiction over matters involving any future potential settlements, including how those future settlements may allocate attorneys' fees and common benefit expenses, which could impact Class Members, Class Counsel, common benefit counsel and individually retained counsel and, as a result, the adequacy of any settlements, now seems prophetic.

"Joint Notice Counsel" or "JNC," *i.e.*, Parker Waichman, LLP (through its counsel, Jimmy Faircloth); Milstein, Jackson, Fairchild & Wade, LLP; Whitfield, Bryson & Mason, LLP; and Mrachek, Fitzgerald, Rose, Konopka, Thomas & Weiss, P.A., have filed a Motion to Lift

---

[1] Rec. Doc. 21242.

[2] Rec. Doc. 21328.

PTO 32 for Settlement of Individual Claims on Remand with Voluntary Holdback for Future Fee Allocation.[3]  By seeking such relief before this Court and also by failing to affirmatively engage the Transferor Court to provide oversight and approval, Taishan and the JNC challenge the authority of not only this Court, but also the Transferor Court (Honorable Judge Marcia G. Cooke in and for the United States District Court for the Southern District of Florida).

In effect, JNC's motion challenges this Court, or any court for that matter, to provide any oversight whatsoever, whether related to the terms of the settlement, the impact of attorneys' fee allocation on the Class Members and counsel, or otherwise.  In fact, Taishan and JNC do not affirmatively seek approval for the proposed settlement of Class Members' claims in Florida. Rather, they simply filed a Notice of Filing attaching what they filed in this Court – a Motion to Lift PTO 32.[4]  As a result, without the Court's entry of PTO 32 (which set forth the requirement of notice prior to any individual settlement being funded and the intent of this Court to confer with the Transferor Court in order to ensure adequate protection for homeowner Class Members, Class Counsel, and common benefit counsel) Taishan and the JNC would have proceeded to fund the proposed settlement notwithstanding Rule 23 mandates, as interpreted by courts, meant to ensure protection of the *Amorin* Class Members, both settling and non-settling.

The proposed Taishan Settlement Agreement was negotiated by Taishan and only a few Plaintiffs' firms on behalf of a portion of the certified *Amorin* Class (*i.e.*, 498 claimants in Florida) without any of the procedural safeguards provided by Rule 23, without the involvement or oversight of either this Court or the Transferor Court, and without any input from Class

---

[3] Rec. Doc. 22126.  In addition, JNC have also filed a Joint Notice of Settlement Agreement (Rec. Doc. 22125); and a Motion for Leave to File Settlement Agreement and Release Under Seal (Rec. Doc. 22127).

[4] *Amorin v. Taishan Gypsum Co., Ltd.*, Case No.: 1:11-cv-22408-MGC, Notice of Filing (S.D. Fla. Mar. 7, 2019) (ECF No. 187).

Counsel or any other counsel for *Amorin* Class Members in Florida.  By attempting to conclude claims of Class Members who elected to proceed as part of the litigation class certified by Your Honor and whose claims are now pending before Judge Cooke for adjudication, Taishan and the JNC have also impacted the remaining Class Members.

The proposed Taishan settlement purports to be an individual settlement that requires no evaluation or approval <u>from any court</u>.  However, to satisfy Class Counsel's ongoing obligation to represent the entire *Amorin* Class,[5] we submit this response to the JNC's motion.  Through this filing, Class Counsel does not intend to impede any Plaintiff's ability to individually resolve his or her claims.  Instead, the authority for this response is the ongoing authority of this Court to continue supervising and protecting the interests of the certified Class, especially in connection with issues over which the Court has specifically retained jurisdiction.[6]

Taishan and JNC contend that the Suggestion of Remand completely divested this Court of any ability to maintain supervisory authority over collateral matters within the ambit of this MDL. Through the refusal to even provide the Transferor Court the opportunity to evaluate the proposed settlement involving members of a certified Class over which the Transferor Court presides, they similarly suggest the Transferor Court lacks any authority.  However, PTO 32 correctly embodies this Court's ongoing capacity to engage in and direct matters regarding attorneys' fees and costs, which could impact both counsel and homeowners in the certified

---

[5] The Court and Class Counsel have a duty to ensure that Class Members are protected, and that prior to approval of any settlement, they are made aware of all relevant information that may be pertinent to their decision whether or not to accept a settlement offer by Taishan.  The Court appointed Class Counsel to negotiate settlements and make assessments on how to best proceed with the litigation.

[6] It is notable that Taishan has not offered any other Class Members any of the terms of this proposed settlement, even homeowner Class Members who may have personal reasons for accepting a compromised resolution as a direct result of Taishan's intentional strategy of forced attrition through delayed litigation and its refusal to accept responsibility for its defective drywall.

Class, over which it retained jurisdiction.[7]  Further, this Court made clear that conferral with the Transferor Court regarding any proposed settlement was appropriate.

Thus, the premise of JNC's motion, and demonstrated through the failure of Taishan to seek review of this proposed settlement by any court, is that this Court and the Transferor Court should be prohibited from any scrutiny of any proposed settlement with Class Members, and that this Court should simply "lift" its carefully crafted pretrial order.  The JNC's motion is not well founded.[8]  By Taishan attempting to offer, and JNC attempting to accept, a quasi-class settlement outside of Court supervision and outside the court-appointed Class leadership structure, multiple concerns are raised, including, but not limited to the following:

(1) without judicial oversight, there is no protection for the *Amorin* Class Members to ensure they will be given accurate, complete or balanced information as to the benefits and/or risks of participating in the settlement;

(2) the Courts and Class Counsel should be involved in crafting a fair, reasonable, and adequate Class notice about the settlement;

(3) the settlement appears to disregard the remediation damages formula approved by this Court and adopted by the Transferor Court;

---

[7] *See* Rec. Doc. 21242 (Florida Suggestion of Remand), at 11, citing *In re Zyprexa Prods. Liab. Litig.,* 467 F. Supp. 2d 256, 274 (E.D.N.Y. 2006); *see also* Rec. Doc. 21695 (Virginia Suggestion of Remand).

[8] While JNC argues the "authority to approve or disapprove a settlement on the merits lies exclusively in the Transferor Court," it is notable that neither Taishan nor JNC have actually sought such approval.  In fact, with a rapidly approaching date for Class Members to accept or reject the proposed Taishan settlement, it was Class Counsel who actually filed an appropriate motion to have Judge Cooke oversee and scrutinize these matters.  *See* Plaintiffs' and Class Counsel's Motion and Memorandum of Law in Support for an Order under Rule 23(d) to Protect the Florida *Amorin* Class [ECF No. 192 (S.D. Fla. Mar. 14, 2019)] (attached hereto as Exhibit "A").

(4) the settlement appears to ignore the fact that the Special Master proceedings in Florida to calculate remediation damages are currently under way, with a Report and Recommendation on Product Identification expected on April 1, 2019 and a Report and Recommendation on the total remediation damages award for Florida *Amorin* Class Members expected May 31, 2019;

(5) the settlement notice provides no information as to how each specific offer was made to each *Amorin* claimant, and there is no way to evaluate the correctness of the calculations made by Taishan and/or the JNC;

(6) the first deadline for Class Members to approve the Taishan settlement package is March 27, 2019 – which affords these claimants *only 20 days* in which to evaluate the settlement and the specific offer to them; and

(7) the proposed settlement threatens to impair the rights of Class Members who were not offered the settlement and who are actively litigating their claims against Taishan, because not only are the JNC conceding certain factual issues that are in dispute (*e.g.*, product identification, etc.), but the inclusion of the Most Favored Nation ("MFN") clause in the settlement threatens to impair the remaining Class Members' ability to amicably resolve this litigation anytime in the next couple of years.

At this juncture, this Court, the Transferor Court in Florida, Class Counsel, and the *Amorin* Class Members have insufficient information to evaluate the full scope of what the proposed settlement entails so, at a minimum, additional information needs to be elicited prior to the settlement being allowed to proceed or, for that matter, any holdback on attorneys' fees to be

resolved.[9]  Class Counsel believe this should happen in the form of an evidentiary hearing.  Such fact-gathering is completely aligned with the directives of PTO 32, which require notice of any settlement to enable the Court to "confer with the transferor court regarding proper procedures"[10] to address the fair and equitable distribution of funds among clients, counsel and court-appointed common benefit counsel.[11]  A thorough vetting of the proposed Taishan settlement and the appropriate procedures related to (i) ensuring that proper notice of the details of the settlement is given to the Class and (ii) distributing funds among Plaintiff Class Members, their individually retained counsel, and the court-appointed common benefit counsel, is not only appropriate but contemplated by Rule 23 and the interpreting case law.[12]

---

[9] These concerns were so prominent that Class Counsel were compelled to file their own motion pursuant to Fed. R. Civ. P. 23(d) to protect the Class (Rec. Doc. 22135), and seek expedited hearing on the matter (Rec. Doc. 22144).  Recognizing the gravity of the matter, this Court vacated its earlier briefing schedule and expedited briefing by Order dated March 12, 2019 (Rec. Doc. 22146).

[10] PTO 32 at 3.

[11] JNC may argue no matter the concerns, the "Most Favored Nation" clause protects the settling Class Members.  It is curious that Taishan would easily agree to a "Most Favored Nation" term – unless the Defendant believed that at least by resolving the claims of these approximately 500 homeowners (assuming that all eligible participants would accept the proposal), there is some benefit to Taishan.  For instance, Taishan could use the proposed terms to put downward pressure on efforts to produce a better recovery for non-settling homeowners and/or attempt to undermine the efforts to seek rulings more favorable to the non-settling homeowners on such matters as product identification and per square foot recovery.  If that is the motivation of Taishan, or even a potential benefit to the Chinese Defendants, then there is a potential negative impact on the remaining Class Members, which must be considered by this Court and/or the Transferor Court.

[12] The efforts of these same JNC related to challenging attorneys' fees is well known, having been described by the Court as causing "havoc and needless delay."  *See* Common Benefit Fees Order (Rec. Doc. 21168), at 23.  Moreover, through their proposed settlement and efforts to advocate for a lack of oversight involving more than five years of work of common benefit counsel and Class Counsel since the cut-off for common benefit submissions (*see* PTO 28(A) (Rec. Doc. 17402) and PTO 28(F) (Rec. Doc. 20282)), Taishan and JNC appear to discount the significant work of Class Counsel and common benefit counsel, not to mention the significant common benefit expenses before and since remand.

II.     **PROCEDURAL BACKGROUND LEADING TO PRETRIAL ORDER NO. 32**

The history of this prolix litigation is well-known to the Court.  Over the past decade of litigation, the Plaintiffs' Steering Committee ("PSC") has overseen and orchestrated all of the activities by Plaintiffs to prosecute their claims. These efforts began with the assembly and service of the Omni Complaints, which name all the Plaintiffs in the proposed Taishan settlement currently at issue.  The efforts were sustained and substantial, and included a substantial number of legal efforts and activities, including: organizing 108 monthly status conferences; taking over 200 depositions, including depositions from three overseas trips to Hong Kong, China, S.A.R.; reviewing many hundreds of thousands of pages of documents; prosecuting important bellwether cases involving seven individual properties in *Germano* (Rec. Doc. 2380); securing default judgments against Taishan (Rec. Doc. 3031); assembling the Taishan Trial Package, which includes colossal volumes of discovery work product and depositions; and achieving essential jurisdictional victories against Defendants, *see In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 742 F.3d 576 (5th Cir. 2014); *In re Chinese-Manufactured Drywall Prod. Liab. Litig.,* 753 F.3d 521 (5th Cir. 2014).[13]

The efforts of Class Counsel and those performing common benefit work continue to this day, including Product ID discovery of Taishan and BNBM, responding to square footage and ownership discovery, the preparation of responses to Defendants' preliminary contests and requests for set-offs, participating in the recent Product Identification challenges before Special Master Tiffani G. Lee, on March 11, 2019, and ongoing expert discovery and trial preparations

---

[13] *See* PTO 32 at 1-2.

in Florida, trial plan briefing in Virginia, and discovery of Select Cases and trial plan briefing in Louisiana.[14]

Notably, in just the past few months in preparation for trials and hearings of Class Members' claims under very aggressive Court-imposed deadlines in this Court and the Transferor Courts, Class Counsel have incurred over a half-million dollars in common benefit expenses, and they have expended thousands of common benefit hours to establish remediation damages for all the settling Plaintiffs as well as full damages trials for 20 Florida Priority Trial Plaintiffs – including two Class Members who are purportedly included in the proposed settlement.[15]   However, Taishan and JNC directly harm the remaining Class Members by failing to allocate the *pro rata* common benefit expenses incurred to date, so as to actually harm and burden the non-settling Class Members.

To insure "the fair and equitable assessment of any potential recovery for the services performed and expenses incurred by attorneys acting for MDL administration and common benefit of all plaintiffs in this complex litigation," the Court reserved jurisdiction over fee-related matters in its Florida Suggestion of Remand, Opinion and Order at 11, citing *In re FedEx Ground Package Sys., Inc. Employment Practices Litig.*, No. 3:05-MD-527 RM, 2010 WL 785279, at *5-6 (N.D. Ind. Mar. 2, 2010).[16]

Following this Court's Suggestion of Remand of Florida *Amorin* cases, Plaintiffs' Lead and Liaison Counsel filed a Motion Addressing Suggestion of Remand's Reference to the Need

---

[14] *See, e.g.,* Trial Plan for Florida *Amorin* Claimants dated November 16, 2018 (Rec. Doc. 21933-1); Plaintiffs' Memorandum in Support of Motion to Adopt Trial Plan for Louisiana *Amorin* Cases (Rec. Doc. 22153-1).

[15] Counsel for one of the Priority Trial Plaintiffs advises that he will be rejecting the proposed settlement that was negotiated on his behalf and proceeding with his trial.

[16] Rec. Doc. 21242.

to Establish a Plaintiffs' Attorneys' Fee Fund to Compensate and Reimburse Attorneys for Services Performed and Expenses Incurred for MDL Administration and Common Benefit.[17] Therein, the history to date of the PSC's enormous efforts to aggressively pursue the Chinese manufacturers responsible for the damages each of the Plaintiffs in this litigation have suffered was recounted at length.  Because of the unique circumstance posed by this prolonged and complex litigation, Lead and Liaison Counsel proposed that a 32% holdback, *i.e.,* the entire fee award of any recovery, would be sequestered subject to a later allocation.

Addressing MDL Leadership's request for a "specific holdback of certain future funds," on May 14, 2018, the Court issued PTO 32, entitled, "Establishing Initial Step to Determine Allocation of Settlement Funds or Judgment Awards to Plaintiffs and Attorneys Resulting from Remanded Cases."[18]  Therein, the Court recognized the "great and valuable contributions" made by the PSC and common benefit counsel, but observed the "uncertainty surrounding remand" and the need to gather more information to resolve "what the final value of Plaintiffs' claim will be or the nature and extent of the work required by contract counsel."[19]  After recounting the PSC's "tireless efforts" to prosecute the claims of all Plaintiffs, the Court established a protocol for all future settlements in remand proceedings:

> Upon any settlement, compromise, or judgment for monetary damages or other monetary relief, Plaintiff(s) and Defendants shall inform the Court within three (3) days of such event. Defendants shall not furnish any payment — to either plaintiff(s) or attorney(s) — until this Court confers with the transferor court regarding proper procedures to allocate a fair and equitable division among plaintiff(s), individually retained counsel, and common benefit

---

[17] Rec. Doc. 21267.

[18] By separate order, the motion was later denied as moot due to its reservation of jurisdiction (Rec. Doc. 21725).

[19] PTO 32 at 2.

counsel. The Court will then promptly make a fair and reasonable
allocation of the available funds to plaintiff(s) and attorney(s).[20]

The protocol established in PTO 32 therefore requires Plaintiffs and Defendants to inform the Court of any settlement within three (3) days of the settlement so as to afford it the opportunity to confer with the transferor courts to address the proper procedures for resolving collateral matters, *e.g.*, common fund. The issue presented by the instant motion is whether there exists a sufficient record to determine whether the proposed quasi-class settlement with Taishan is adequately disclosed and the means by which an appropriate record for setting an appropriate common fund assessment can be established.

## III.   <u>ARGUMENT</u>

Taishan and JNC seek to avoid the requirements of PTO 32 and the supervisory authority of this Court and the Transferor Court. They contend that: 1) this Court lacks jurisdiction to consider the matter of the proposed Taishan settlement, and 2) their proposed set-aside satisfies PTO 32 so that no further consideration of the proposed Taishan settlement should occur. Class Counsel dispute that this MDL Court lacks jurisdiction regarding matters such as attorneys' fees over which it specifically reserved jurisdiction. Further, without an appropriate record, Class Counsel submit is it premature to resolve whether JNC's proposed set-aside satisfies PTO 32. A further discussion on both subjects follows.

### A. The MDL Court Has Ongoing Supervisory Power over Collateral <u>Matters to Enforce its Judgments.</u>

As noted above, the Suggestion of Remand observed that the JPML's transfer order acts to "divest the transferee court of jurisdiction in the case and [vests] the transferor court with jurisdiction." Suggestion of Remand at 11, quoting Herr, Multidistrict Litigation Manual §10:5

---

[20] PTO 32 at 2-3.

(2005).  However, JNC, in reciting the Court's Suggestion of Remand for the proposition that this Court is without jurisdiction to enforce PTO 32, overlook the next paragraph of the Order where this Court notes the exception to the rule by which it retains jurisdiction over attorneys' fees:

> The award of attorney's fees, nevertheless, is a "collateral matter over which a court normally retains jurisdiction even after being divested of jurisdiction on the merits." *Id.*; *In re Zyprexa Prods. Liab. Litig.,* 467 F. Supp. 2d 256, 274 (E.D.N.Y. 2006) (citations omitted); *see also In re Zyprexa Prods. Liab. Litig.*, 594 F.3d 113, 2010 WL 367556, *10 (2d Cir. 2010) (stating that order imposing an assessment to create a fund that could be used to compensate attorneys who demonstrate that their efforts conferred a benefit on the plaintiffs generally is "even less related to the ultimate merits than orders awarding attorney's fees, which are collateral matters over which a court retains jurisdiction even if it ultimately is determined to lack subject matter jurisdiction.").[21]

Plainly this Court has jurisdiction over the ongoing administration and enforcement of its Orders.

Further, JNC contend that this Court, and by extension the Transferor Court, lacks the ability to review the proposed settlement agreement because it is an "individual" settlement and outside the parameters of Rule 23.  However, the authority they rely upon actually supports this Court's authority to supervise any settlement of all or a portion of the Class.  *See*, *e.g.*, *In re Shell Oil Refinery*, 152 F.R.D. 526, 536 (E.D. La. 1989) (noting that individual settlements that "impinge on the substance of the non-settling plaintiffs' individual claims" remain subject to judicial scrutiny);[22] *In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1140

---

[21] Suggestion of Remand at 11.

[22] *Shell Oil* also cautions that "Defense counsel have an ethical obligation to make any offers of individual settlement to the PLC, as well as any additional counsel that might have been retained by the class member." *Id.*, 152 F.R.D. at 536, citing Rule 4.2 of the Rules of Professional Conduct of the Louisiana State Bar Association.  As Taishan is a party before this Court, Your Honor has clear authority to police the actions of Taishan.

(7th Cir. 1979) (noting that "judicial examination of the offer to settle individual claims" permits "consideration of the accuracy and completeness of the disclosure."); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 183 F.3d 1, 4-5 (1st Cir. 1999) (discussing cases where court scrutinized settlement because it may have given rise to a conflict of interest).[23]   Even if this Court were divested of jurisdiction regarding the merits of the settlement, Joint Notice Counsel seemingly concede that Judge Cooke has the authority to review the accuracy and completeness of the disclosures made regarding the proposed settlement, but neither Taishan nor JNC have affirmatively done anything to request Judge Cooke exercise the Transferor Court's authority.[24] Without PTO 32, Class Counsel, this Court and the Transferor Court should wonder if the proposed settlement, notwithstanding the significant concerns, would have been funded within the next few days.

By reaching a proposed settlement with Taishan for some Class Members, Taishan and JNC appear to have compromised the interests of other Class Members in this proposed settlement. Not only are the settling attorneys adopting positions that are directly contrary to the factual positions taken by Class Counsel, but the inclusion of an MFN in the settlement compromises the ability to amicably resolve the ongoing Class litigation, and in that way, impacts directly on those who remain in the Class either because they are not one of settling counsel's clients or because they declined to participate in the settlement.   Moreover, by failing to take into account the full measure of expenses expended by Class Counsel and common benefit counsel, the settling Class Members actually shift a greater burden on the remaining Class Members, thus, directly harming the non-settling Class Members.

---

[23] *See* PTO 32 Mem. at 9-10.

[24] *Id.* at 9.

These conditions, even under the legal authority provided by JNC, lead to the conclusion that this Court retains authority to supervise these actions.

### B. Only the Court Can Make the Determination of an Appropriate Voluntary Holdback, Not Counsel.

Joint Notice Counsel "acknowledge that certain common benefit work was vital to [their] settlement opportunity,"[25] but seek to override the deliberate and methodical approach provided in PTO 32 towards "balancing the interest" of the various stakeholders, by imposing a holdback on their own terms.  They propose a holdback of nine (9%) of the alleged total value of the proposed Taishan settlement with certain *Amorin* Class Members, based on JNC's representation of the benefits conferred on the Class.[26]  But it is too early to evaluate whether JNC's proposal is appropriate for several reasons.

First, the Court has not yet had the opportunity to confer with Judge Cooke over appropriate procedures as contemplated by the protocol of PTO 32.

Second, the uncertainty of what information was shared with Class Members and its accuracy or completeness require a hearing and the development of a record to examine the facts surrounding the settlement and the current notice program to Class Members to ensure they

---

[25] JNC Brf. at 11 (Rec. Doc. 22126-1).

[26] Interestingly, JNC Parker Waichman objected to and litigated vehemently against the percentage allocation of the attorneys' fund as between common benefit and individually retained attorneys proposed by the Fee Committee, and Parker Waichman sought a higher allocation for the individually retained counsel.  Even after this Court provided a more beneficial allocation to the individually retained counsel, Parker Waichman filed a notice of appeal. However, in this proposed settlement with Taishan, Parker Waichman actually endorses the identical percentage of allocation for common benefit fees as compared to the stated value of the settlement, which this firm presently seeks to appeal in the Fifth Circuit.  Parker Waichman's litigation tactics certainly conjure up the old saying, "Where you stand depends on where you sit."

receive a full and clear picture of the litigation, their claims, the defenses at issue, and the value of the settlement to them.

Third, the Knauf Defendants have filed a Motion to Enforce Settlement Agreement Assignment Rights.[27]  Because the Taishan Settlement Agreement is filed under seal and because the process for calculating awards to Class Members has not been revealed, it is unknown whether or not the parties to that proposed Settlement Agreement contemplated the further reduction in recovery for some homeowners impacted by a potential lien from Knauf.[28] Establishing a baseline for per square foot recovery without regard to potential liens against recovery for some homeowners would be ill-advised for the settling and non-settling Class Members.  For the settling Class Members, if permitted to proceed, should these Class Members later discovery there is a further reduction in recovery, the Court may be faced with chaotic motion practice attempting to avoid the settlement after-the-fact.  That chaos is not in the interests of any of the parties or the Court.

Fourth, there has not yet been any consideration as to whether this Court's existing order regarding the voluntary deposit of funds to compensate and reimburse common benefit counsel provides a better and more appropriate holdback, given the circumstances of this lengthy, costly and prolix litigation.

---

[27] Rec. Doc. 22145.

[28] While the Motion to Lift PTO 32 has some information related to the Settlement Agreement, it is silent as to the impact of any lien Knauf could assert against the recovery for certain homeowners.  It would appear, from Knauf's Motion to Enforce Settlement Agreement Assignment Rights, that Knauf and its counsel were unaware of the potential settlement and were not contacted to understand the scope of such liens for individual homeowners potentially covered by the Settlement Agreement.

Finally, given the significant expenditure of costs associated with pre-remand and post-remand litigation, the failure of Taishan and JNC to allocate those costs across settling Class Members directly harms the remaining Class Members.

Lacking the record necessary to make an informed decision about whether the Joint Notice Counsel's proposed holdback is fair, reasonable and adequate, it is premature for this Court to resolve the instant motion.

## IV.    **CONCLUSION**

Until such time as this Court (after conferring with the Transferor Court) resolves the appropriate procedures by which it intends to allocate a fair and equitable division of attorneys' fees among Plaintiff(s)' individually retained counsel and common benefit counsel, Joint Notice Counsel's Motion to Lift PTO 32 should be denied.

Respectfully submitted,


Dated:  March 18, 2019                    By: */s/ Russ M. Herman*
                                          Russ M. Herman (Bar No. 6819) (on the brief)
                                          Leonard A. Davis (Bar No. 14190) (on the brief)
                                          Stephen J. Herman (Bar No. 23129) (on the brief)
                                          Charles King (Bar No.34621) (on the brief)
                                          Herman, Herman & Katz, LLC
                                          820 O'Keefe Avenue
                                          New Orleans, LA 70113
                                          Phone: (504) 581-4892
                                          Fax: (504) 561-6024
                                          RHerman@hhklawfim.com
                                          *Plaintiffs' Liaison Counsel MDL 2047*
                                          *Class Counsel*

Arnold Levin (on the brief)
Fred S. Longer (on the brief)
Sandra L. Duggan (on the brief)
Keith Verrier (on the brief)
Levin Sedran & Berman LLP
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
alevin@lfsblaw.com
*Plaintiffs' Lead Counsel MDL 2047*
*Class Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, which will serve a notice of the uploading in accordance with the procedures established in MDL 2047, on this 18th day of March, 2019.

<u>/s/ Leonard A. Davis</u>
Leonard A. Davis
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
<u>Ldavis@hhklawfirm.com</u>
Plaintiffs' Liaison Counsel
MDL 2047

*Class Counsel*