UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE-MANUFACTURED      MDL NO. 2047
DRYWALL PRODUCTS LIABILITY
LITIGATION                       SECTION: L

THIS DOCUMENT RELATES TO:        JUDGE FALLON

*ALL CASES*                      MAG. JUDGE WILKINSON

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### RESPONSE IN OPPOSITION TO CLASS COUNSEL'S
### RULE 23(D) MOTION TO PROTECT THE *AMORIN* CLASS

Parker Waichman LLP; Milstein, Jackson, Fairchild & Wade LLP; Whitfield, Bryson & Mason LLP; and Mrachek, Fitzgerald, Rose, Konopka, Thomas & Weiss P.A. (collectively, the "Settling Firms") have negotiated settlement offers for individual clients in the Florida litigation[1] as encouraged by this Court when requesting remand, as required by contractual and ethical obligations owed to the clients, and which has been known by Class Counsel for many months. Inexplicably, Class Counsel are seeking to disrupt, if not thwart, this delicate, painstakingly difficult process by asking this Court to exceed its jurisdiction, claiming that (1) settlements by individual plaintiffs may somehow harm the remaining class members, and (2) that primary counsel for individual plaintiffs may not properly advise their clients. On both scores, nothing is further from the truth.

In particular, Class Counsel are requesting that the Court order the disclosure of Settling Firms' privileged communications with their Florida clients and to allow Class Counsel to issue a Notice under Rule 23(d) "to balance[] the information that Joint Notice Counsel disseminated so that Class members are not misled and make a decision on less than full information." R. Doc.

---

[1] *Amorin v. Taishan Gypsum Co., Ltd.*, Case No. 11-cv-22408 (SDFL) ("Florida Amorin").

22135-1 at 18.² In other words, Class Counsel want to know what Settling Firms told their clients and then be given an opportunity to convince those clients to remain in this 10-year-old litigation – to effectively bid against the advice of the clients' primary attorneys. Even more remarkable, and exceedingly short-sighted, Class Counsel ask for an evidentiary hearing to "better evaluate" or "investigate[]" the matter (*Id*. at 6 and 17) to assure that Settling Firms' clients have "all relevant information that may be pertinent to their decision of whether or not to accept a settlement offer by Taishan." R. Doc. 22135-1 at 4. Is Class Counsel prepared to testify concerning their handling of the litigation and inability to negotiate a resolution, or the value of each claim on the merits and why certain claims may be more valuable than others, or predict if and when an aggregate resolution may occur, or to identify what issues may or may not be the subject of appeal and why, or to opine on the risks of reversal, remand, and/or an uncollectable judgment? Is this Court going to issue an order allowing that inquiry? Will Class Counsel guarantee that settling clients will do better staying in this 10-year-old litigation?

Class Counsel's request is patently improper for many reasons - starting and ending with the lack of jurisdiction in this Court over the settlement of individual remanded claims on the merits - and threatens to jeopardize the carefully constructed settlement offers negotiated by Settlings Firms for the benefit of their individual clients.

---

² Class Counsel's apparent contempt for the obligations and competence of the Settling Firms is undeserved. Settling Firms are highly experienced in mass tort litigation and include a current and former member of the PSC.

## I. BACKGROUND

On March 7, 2019 Settling Firms and Taishan Gypsum Company Ltd., f/k/a Shandong Taihe Dongxin Co. Ltd. and Taian Taishan Plasterboard Co. Ltd. (collectively, "Taishan") filed a Joint Notice of Settlement Agreement ("Joint Notice") (R. Doc. 22125) as required by PTO 32. R. Doc. 21328. In addition, Settling Firms filed a Motion to Lift PTO 32 for Settlement of Individual Claims on Remand with Voluntary Holdback for Future Fee Allocation ("Motion to Lift PTO 32") (R. Doc. 22126). The Settlement Agreement was filed under seal to protect the integrity of the settlement process, which is still ongoing. On that same day, a copy of the Settlement Agreement was forwarded to Class Counsel. Ex. A, Email from B. Villa to F. Longer, *et al.* (March 7, 2019).[3] The vast majority of the background and current procedural posture of this litigation as it relates to the settlement with Taishan are set forth in Settling Firms' Memorandum in Support of Motion to Lift PTO 32 (R. Doc. 22126-1); thus, Settling Firms will not belabor those same points.[4]

## II. ARGUMENT

**A. The Remand to the Southern District of Florida Divested This Court of Jurisdiction**.

The Settlement Agreement and Release ("Settlement Agreement") offers 498 plaintiffs an opportunity to settle their claims based on a carefully balanced formula. Importantly, the settlement offers only extend to Florida properties and claims which were remanded to and are now being litigated in the Southern District of Florida. *See* R. Doc. 22126-1. These Florida claims are no

---

[3] Class Counsel's claim of limited and incomplete information about the actual settlement terms as of March 8, the date of the instant motion, is not accurate.

[4] Settling Firms' adopt and incorporate the Background section of that memorandum as if set forth fully herein.

longer pending in the MDL.  Nevertheless, Class Counsel argue before this Court that Settling Firms are attempting to "avoid the MDL Court's authority" (R. Doc. 22135-1 at 3) and "broker settlements to a subset of Class members outside of this Court's supervision" (*Id.* at 10).  They demand "strict scrutiny by the presiding Court that is managing and supervising the proceedings." *Id.* at 14.

The burden of establishing jurisdiction rests on the party attempting to invoke it.  *See, e.g., St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir.1998).  By requesting an order pursuant to FRCP 23(d)(1), Class Counsel are improperly seeking to invoke the jurisdiction of this Court over matters and parties which are no longer before it.

On June 7, 2018, the JPML remanded the Florida *Amorin* Cases.  JPML R. Doc. 524.  Respectfully, the remand divested this Court, the transferee Court, of jurisdiction over the Florida cases.  Because the cases were remanded, the Southern District of Florida is now the "presiding Court that is managing and supervising the proceedings," (R. Doc. 22135-1 at 14) and any order issued by this Court related to the Florida claims and/or claimants would be improper.  In direct contrast, Class Counsel have filed pleadings in the Southern District of Florida acknowledging that Court's authority over the settlement offers and chastising Settling Firms for filing the Notice required by PTO 32 in this Court.  FLSD R. Doc. 192 at 5 ("It would be a mistake to allow Settling [Firms] to push this settlement through without proper scrutiny by this Court and Class Counsel."); *Id.* at 11 ("It is incumbent upon Class Counsel and the Court to assure that Class Members' rights and interests are being adequately represented and protected.").  It is beyond astonishing the arrogance of Class Counsel in attempting to interfere in a resolution of almost 500 cases by experienced counsel, some of who were or are on the Chinese drywall PSC.

4

There is simply no doubt that remand divested this Court of jurisdiction over the Florida *Amorin* cases. As observed by the Court when recommending remand: "the effect of an order remanding a case to the transferor court for trial is to divest the transferee court of jurisdiction and to vest the transferor case with jurisdiction." R. Doc. 21242 at 11, quoting *In re FedEx Ground Package Sys., Inc. Employment Protection Litigation*, No. 3:15-MDL-527 RM, 2010 WL 785279, at * 5-6 (N.D. Ind. Mar. 2, 2010) (citing DAVID F. HERR, Multidistrict Litigation Manual, § 10.5 (2005)); *see also, In re Ford Motor Co.,* 591 F.3d 406, 415 (5th Cir. 2009) (emphasis added); *In re Upjohn Co. Antibiotic Cleocin Products Liability Litigation*, 508 F. Supp. 1020, 1021 (E.D. Mich. 1981) ("An order remanding the case back to the transferor court is also a change of venue. . . . Since two courts with exclusive different jurisdiction cannot have jurisdiction over the same single cause of action. . . [the motion filed after remand] is denied.") (internal cit. om.); *Stevens v. Danek Medical, Inc*., 1999 WL 33217282, at *7 (S.D. Fla. 1999) ("Once remand has taken place, any MDL jurisdiction that might have supported law of the case no longer exists.").

For this reason, Class Counsel's motion must be denied without going further.

**B. Settlement of Individual Claims, Regardless of Timing, is Permissible.**

Assuming this Court has jurisdiction, which it does not, individual claimants are free to settle their claims outside of the class. Indeed, PTO 32 contemplates this scenario: "[I]ndividually retained counsel may perform significant tasks when the cases are remanded, including work for trials and settlements." R. Doc. 21323 at 2. PTO 32 also outlines the procedure for notifying the Court if and/or when a settlement or compromise is reached between "Plaintiff(s) and Defendants." *Id.* Thus, even as envisioned by PTO 32, the settlement offers extended by Taishan were made to individual claimants who have the right to opt-in to the settlement or who may choose to remain

5

in the litigation. Because this is not an aggregate settlement, the protective mechanisms of Rule 23 simply do not extend in these circumstances.

As aptly explained by the First Circuit:

> We simply have no tradition of court intervention to ensure that similarly victimized plaintiffs who have retained separate counsel and have made different litigation decisions get similar results. . . . Similarly harmed plaintiffs often secure separate representation and subsequently enter into materially different settlements with a common defendant. In such situations, the settling parties have no legally protected interest in having a court scrutinize each settlement to ensure that all plaintiffs receive similar consideration for their releases. A fundamental assumption of our adversary system is that adversaries represented by persons with presumably undivided loyalties will tend to negotiate acceptably fair resolutions of their disputes. As we have implied, courts oversee class-action settlements only because factors unique to the class-action context—the already-noted tendency towards a coincidence of interests between class representatives and the party opposing the class, and the chasm between representatives and faceless, absent class members—call into question whether the representatives' loyalties are in fact undivided.

*Duhaime v. John Hancock Mut. Life Ins. Co.*, 183 F.3d 1, 6 (1st Cir. 1999). The Seventh Circuit likewise has weighed in on this subject:

> [W]e are unable to perceive any legal theory that would endow a plaintiff... with a right to prevent negotiation of settlements between the defendant and other potential members of the class who are of a mind to do this; it is only the settlement of the class action itself without court approval that Rule 23(e) prohibits.

*In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1140 (7th Cir. 1979), quoting *Weight Watchers, Inc. v. Weight Watchers International, Inc.*, 455 F.2d 770,773 (2d Cir. 1972); *see also*, *Titus v. Burns & McDonnell, Inc.*, No. 09-00117-CV-W-DGK, 2010 WL

11618853, at *1 (W.D. Mo. Aug. 10, 2010) ("[T]he Court is unaware of any authority requiring approval of unnamed potential class members' individual claims at any point."). The same reasoning was adopted by this District Court in *In re Shell Oil Refinery*, 152 F.R.D. 526, 536 (E.D. La.1989) when it held: "[A] proposed offer to settle with individual class members requires a lesser degree of judicial scrutiny than a proposed settlement of a class action."

Moreover, Class Counsel disregard the many factors that influence an individual claimant's decision to accept a settlement, including a decade of litigation without any resolution and personal circumstances that may impact individual claimants. Claimants cannot be compelled to participate in litigation unwillingly.

Finally, the timing of the individual settlement offers has no effect on the validity of such offers or their impact on the class as Class Counsel suggest. Specifically, Class Counsel argue that the timing of Taishan's offers poses some significant class-wide risk or concern: "[T]he proposed settlement occurs as Class Counsel are in the midst of presenting significant class-wide remediation damages issues in Florida, not to mention the active litigation of the claims of 20 Priority Claimants at least one of which Joint Notice Counsel have now proposed to settle, as well as the undermining of other rulings established by the Court" R. Doc. 22135-1. Lawsuits frequently settle on the brink of major decisions, orders, judgments, or trial. The pressure and risk of an impending and adverse decision may be a driving force behind the settlement. Further, Class Counsel acknowledge that "the litigation against the Taishan entities continues along its tortuous track." R. Doc. 22135-1 at 7. This decade-long, tortuous track was a major influence in Settling Firms' negotiations with Taishan and surely will be a major factor for individual claimants to consider when weighing their options.

7

### C. The Individual Settlement Offers Do Not Impact, Much Less Harm, the Class.

Overlooking the jurisdictional concerns and the validity of individual settlements, Class Counsel ask this Court to exercise "discretionary power under Rule 23(d)(1)(b) and permit Class Counsel to communicate or issue a formal Court approved Notice to the Class. . . ." R. Doc. 22135-1 at 17.  Class Counsel propose that this notice be transmitted to "**_all_** Class members." R. Doc. 22135-1 at 5 (emphasis added).

This request is rooted in some ill-defined, purported harm to the class: "[T]here is a risk that the result of this conduct adversely impacts unwitting Class members who, instead of having their rights protected, are instead influenced to act based on potentially misleading and incomplete information." _Id._ at 16.  But it is very telling that Class Counsel, despite contentions to the contrary, have known for many months that this settlement was being negotiated and the principal terms.  At no time did Class Counsel object to the settlement negotiations, suggest that such a settlement threatens non-participating class members, or ask counsel to stand down.[5]  Instead, they simply laid in wait to see how it developed and whether it could be used to their strategic advantage.  Their time would have been better spent attempting to shape and facilitate the negotiations, rather waiting to cry foul after the close of negotiations and with individual claimants facing important deadlines.  Such personal opportunism by a "fiduciary" should not be rewarded.

The Supreme Court has warned against orders issued pursuant to Rule 23(d) limiting communications between counsel and class members.  _Gulf Oil Co. v. Bernard_, 452 U.S. 89, 101

---

[5] If the Court orders an evidentiary hearing, as requested by Class Counsel, evidence of communications with Class Counsel regarding these negotiations and the proposed settlement terms will be introduced.

8

(1981). In *Gulf Oil*, the Court explained that such orders "should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.* This will "ensure that the court is furthering, rather than hindering, the policies embodied in the Federal Rules." *Id.* at 102. Any resulting order should "limit[] speech as little as possible, consistent with the rights of the parties under the circumstances." *Id.* Further:

> [T]o the extent that the district court is empowered ... to restrict certain communications in order to prevent frustration of the policies of Rule 23, it may not exercise the power without a specific record showing by the moving party of the particular abuses by which it is threatened. Moreover, the district court must find that the showing provides a satisfactory basis for relief and that the relief sought would be consistent with the policies of Rule 23 giving explicit consideration to the narrowest possible relief which would protect the respective parties."

*Id.*, quoting *Coles v. Marsh*, 560 F.2d 186, 189 (3d Cir.), *cert. denied*, 434 U.S. 985 (1977). Class Counsel vaguely and in general argue that the settlement offers may harm the class. They fail to establish any specific and concrete danger to the class resulting from the settlement offers.

*In re Community Bank of Northern Virginia*, 418 F.3d 277 (3d Cir. 2005) is likewise instructive wherein the Third Circuit invalidated a district court order limiting communications between counsel and class members. Similar to the order sought by Class Counsel in this instance, the order at issue in *Community Bank* precluded law firms from communicating with their own clients in the pending class litigation. *Id.* at note 28. Quoting *Gulf Oil*, the Court warned, "[S]uch restrictions involve 'serious restraints on expression' and therefore, 'at [a] minimum, [*Gulf Oil*] counsels caution on the part of a district court in drafting such an order, and attention to whether

the restraint is justified by a likelihood of serious abuses." *Id.* at 312, quoting *Gulf Oil*, 452 U.S. 104.

Further, Class Counsel argue that the settlement forces claimants to forego "$45.91/square foot" because the "formula adopted by Judge Cooke provides for at least $105.91/square foot." R. Doc. 22135-1 at 4. These figures are misleading. First, while class damages were set at $105.91/square foot, that figure must be "adjusted by the RS Means location factor." R. Doc. 20741 at 50. In Florida, the RS Means location factor is between .8 to .85; thus, reducing the square foot value to $84.73 to $90.02.[6] Second, the damage formula provides no value for plaintiffs who fully remediated, as Florida law limits recovery to actual damages. Third, Judge Cooke's Trial Plan (*see* R. Doc. 22126-5) does not indicate whether or how the damage formula applies to partially remediated properties or properties with mixed drywall. The formula contained within the settlement negotiated by Settling Firms resolves all of these issues. *See* R. Doc. 22126-1 at 6-7. And finally, there are significant proof hurdles to overcome in going forward with litigation. Some of the cases in the class may not be able to overcome those hurdles and will go without any compensation.

## D. Class Counsel's Request Infringes Upon the Attorney Client Privilege.

Class Counsel impermissibly ask this Court to require Settling Firms to divulge communications protected by the attorney-client privilege. Specifically, they seek "the substance and extent of [Settling Firms'] communications with Class members (***including their own clients***).

---

[6] The adjustment factors are reflected in Plaintiffs' Master Excel Spreadsheet with Details of the Florida Plaintiffs' Property Damages Claims. Because of the spreadsheet's volume, it was filed conventionally in the Southern District of Florida. *See* FLSD R. Doc. 56.

. . ." R. Doc. 22135-1 at 18 (emphasis added). "The attorney–client privilege is the oldest of the privileges for confidential communications known to the common law." 8 J. Wigmore, Evidence § 2290 (McNaughton rev. 1961). Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981).

Federal Rule of Civil Procedure 23(c)(2)(B) explicitly provides "that a class member may enter an appearance through counsel if the member so desires." Class members' right to retain individual counsel, regardless of class certification, necessarily contemplates a right to have privileged communications with their chosen counsel. Such sacrosanct communications deserve no less protection than communications between attorney and client outside of class litigation. Thus, granting Class Counsel's request to violate the attorney-client privilege "would essentially eviscerate this right [to retain individual counsel in a class action]." *In re Community Bank of Northern Virginia*, 418 F.3d at 313.

### III. CONCLUSION

For the reasons set forth above, Class Counsel's Rule 23(d) Motion to Protect the *Amorin* Class should be denied.

Respectfully submitted:

| | |
|---|---|
| **FAIRCLOTH MELTON SOBEL & BASH, LLC** | **MILSTEIN, JACKSON, FAIRCHILD & WADE, LLP** |
| By:  /s/ *Jimmy R. Faircloth, Jr.*<br>    Jimmy R. Faircloth, Jr. (LA #20645)<br>    jfaircloth@faircothlaw.com<br>    Brook L. Villa (LA #31988)<br>    bvilla@faircothlaw.com<br>    Franklin "Drew" Hoffmann (LA #35824)<br>    dhoffmann@faircothlaw.com<br>    9026 Jefferson Highway<br>    Building 2, Suite 200<br>    Baton Rouge, LA 70809<br>    Phone: (225) 343-9535<br>    Fax: (225) 343-9538<br><br>*Attorneys for Parker Waichman LLP* | By:  /s/ *Mark Milstein*<br>    Mark Milstein<br>    mmilstein@mjfwlaw.com<br>    10250 Constellation Blvd., 14th Floor<br>    Los Angeles, CA 90067<br>    Phone: (310) 396-9600<br>    Fax: (310) 396-9635 |
| **WHITFIELD BRYSON & MASON, LLP** | **MRACHEK, FITZGERALD, ROSE, KONOPKA, THOMAS & WEISS, P.A** |
| By:  /s/ *Gary Mason*<br>    Gary Mason<br>    gmason@wbmllp.com<br>    900 West Morgan Street<br>    Raleigh, NC 27603<br>    Phone: (919) 600-5002<br>    Fax: (919) 600-5035 | By:  /s/ *Gregory S. Weiss*<br>    Gregory S. Weiss (FL #163430)<br>    gweiss@mrachek-law.com<br>    505 S. Flagler Drive, Suite 600<br>    West Palm Beach, FL 33401<br>    Phone: (561) 655-2250<br>    Fax: (561) 655-5537 |

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing *Response in Opposition to Class Counsel's Rule 23(d) Motion to Protect the Amorin Class* has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed

with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 18th day of March, 2019.

          /s/ *Jimmy R. Faircloth, Jr.*
          JIMMY R. FAIRCLOTH, JR.