## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **EDUARDO AND CARMEN AMORIN,** *et al.*, **individually, and on behalf of all others similarly situated,** | |
| **Plaintiffs,** | |
| **v.** | **Case No. 1:11-CV-22408-MGC** |
| **TAISHAN GYPSUM CO., LTD. f/k/a SHANDONG TAIHE DONGXIN CO., LTD.; TAIAN TAISHAN PLASTERBOARD CO., LTD.,** *et al.*, | |
| **Defendants.** | |

## MOTION AND INCORPORATED MEMORANDUM IN SUPPORT OF MOTION TO LIFT STAY OF SETTLEMENT AGREEMENT WITH REQUEST FOR HEARING

**MAY IT PLEASE THE COURT:**

The Order Striking Joint Notice of Settlement Agreement ("Order Striking Joint Notice") issued by the Court (1) strikes the Joint Notice of Settlement, (2) stays "execution" of the Settlement Agreement, (3) orders filing of the Settlement Agreement under seal by March 22, 2019, and (4) informs the parties of the Court's intention to provide for procedures for notice and a fairness hearing.  R. Doc. 196.  As directed under item (3), a copy of the Settlement Agreement and Release ("Settlement Agreement") has been filed under seal.[1]  R. Doc. 197 [under seal].

---

[1] The Settlement Agreement was entered by "Settling Firms" (Parker Waichman LLP; Milstein, Jackson, Fairchild & Wade LLP; Whitfield, Bryson & Mason LLP; and Mrachek, Fitzgerald, Rose, Konopka, Thomas & Weiss P.A.) and Taishan Gypsum Company Ltd., f/k/a Shandong Taihe Dongxin Co. Ltd. and Taian Taishan Plasterboard Co. Ltd ("Taishan").

Respectfully, with regard to items (2) and (4), the Order Striking Joint Notice is contrary to clearly established law. The duty of the Court under Rule 23(e) does not extend to the settlement of claims by unnamed individual class members. *See In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1140 (7th Cir. 1979) ("[I]t is only the settlement of the class action itself without court approval that Rule 23(e) prohibits").[2] Class Counsel's urging of the Court to intervene in this quintessentially individualized settlement invites clear legal error and poses a risk of spoiling the opportunity for claimants who are eager to resolve their personal involvement in this ten-year old saga.

The Settlement Agreement was negotiated by individual counsel solely for the benefit of their individual clients, not the class. It allows each and every client to decide whether to settle his or her claim based on their own individual circumstances and poses no threat whatsoever to the class at large or to any class member. The fairness of the offer is immediately obvious from the express terms, as explained as explained in Exhibit "A", without even considering the circumstances outside the litigation that may influence a client's decision. Based on the response of clients thus far, Settling Firms anticipate that the vast majority of their individual clients will accept the offer. Many have done so already, eager to participate in the first tranche of payments.

The stay provision of the Order Striking Joint Notice should be lifted to allow Settling Firms to fulfill their obligation to advise their clients regarding the Settlement Agreement and to permit the clients to accept or decline the Settlement Agreement under its terms based on the advice

---

[2] Quoting *Weight Watchers, Inc. v. Weight Watchers International, Inc.*, 455 F.2d 770,773 (2d Cir. 1972). See also, Section II B, *infra*.

of their chosen, primary attorney.  In addition, the Court should decline Class Counsel's unlawful

request to apply the notice and approval requirements of Rule 23.  R. Doc. 192.

**I.      PROCEDURAL POSTURE**

**A.  MDL PTO 32 Requires Settling Parties to Notify the Court of Any Settlement.**

On March 12, 2018, the MDL Court issued a Suggestion of Remand, Opinion and Order

("Suggestion of Remand") (MDL R. Doc. 21242) to return claims involving defective Chinese

drywall to this Court ("Florida *Amorin*").  The Suggestion of Remand chronicles the history of

activity in the MDL, including coordination of discovery, disposition of jurisdictional and related

motions, bellwether cases involving "evidence specific to seven *individual* properties" (emphasis

added) (MDL R. Doc. 21242 at 4), and the Court's adoption of a formula that can be used to assist

in calculating damages caused by defective Chinese drywall.  In sum, the 1700 Florida *Amorin*

cases were returned to this Court for adjudication of all issues not resolved in the MDL.  There are

many.

Excluded from remand, according to the MDL Court, are issues related to common benefit

work:  "The Court suggests that it retains jurisdiction to consider the fair and equitable assessment

of any potential recovery for the services performed and expenses incurred by attorneys acting for

administration and common benefit of all MDL plaintiffs." *Id*. at 14.  The Suggestion of Remand

does not describe how such retained authority should be administered or coordinated with the

authority of this Court, or how it implicates the rights of individual counsel under fee agreements

with clients whose claims are no longer subject to the jurisdiction of the MDL Court.

On March 22, 2016, the Judicial Panel on Multidistrict Litigation ("JPML") granted a

conditional remand. JPML R. Doc. 482.

3

On April 3, 2018, the PSC filed a motion in the MDL Court seeking a holdback from future settlements and judgments in remanded cases to secure payment of common benefit fees. See MDL R. Doc. 21267 ("Remand Holdback Request"). Multiple firms objected to the Remand Holdback Request as premature, excessive, and a threat to chill future negotiations.[3]

On April 12, 2019, four firms, including Parker Waichman LLP and Roberts & Durkee, filed a Motion to Vacate Conditional Remand Order with the JPML objecting to this Court's suggestion regarding retained jurisdiction over common benefit fee issues. JPML R. Doc. 504.

On May 15, 2018, the MDL Court issued Pretrial Order No. 32 ("PTO 32") which requires settling parties to inform the MDL court of any settlement, compromise or judgment within three days. MDL R. Doc. 21328 at 2. PTO 32 also prohibits the distribution of related funds "until the Court confers with the transferor court regarding proper procedures to allocate a fair and equitable division among plaintiff(s), individually retained counsel, and common benefit counsel." *Id.* at 3.

## B. Taishan Offers to Settle Individual Claims.

Soon after issuance of the Suggestion of Remand on March 12, 2018, counsel for Parker Waichman engaged counsel for Taishan to explore the potential for negotiations towards the settlement of individual claims. Negotiations intensified following remand on June 8, 2018 and have involved extensive time in direct negotiations, travel, client engagement, research, drafting,

---

[3] *See* MDL R. Doc. 21289-1, Primary Counsel's Response in Opposition to Plaintiffs' Lead and Liaison Counsel's Motion Addressing Suggestion of Remand (MDL R. Doc. 21267) by Parker Waichman LLP; Pendley Baudin & Coffin; Ryan Law Firm; Luckey & Mullins; Baron & Budd P.C.; Gentle, Turner Sexton & Harbison LLC; McCallum, Hoaglund, Cook & Irby LLP; Milstein, Jackson, Fairchild & Wade LLP; Roberts and Durkee LLP; Alters Law Firm PA; and Allison Grant P.A. *See also*, MDL R. Doc. 21267 by Morgan & Morgan and R. Doc. by Krupnick Campbell Malone Buser Slama Hancock Liberman P.A.

4

and painstaking analysis to develop a methodology for valuing, funding, and administering settlement of individual claims. Neither the PSC nor Class Counsel were involved in this process.

At the conclusion of this nearly year-long process, Settling Firms and Taishan entered a Settlement Agreement, effective **March 6, 2019** (R. Doc. 197 [under seal]) that offers 498 Participating Plaintiffs an opportunity to settle his or her claim based on a formula that balances all relevant factors.[4] Critically, the Settlement Agreement applies to *individual* claims and does not contain a quota for participation. Each Participating Plaintiff will make a fully informed decision to accept the offer and exit the litigation or reject the offer and remain in the litigation.

The potential total value conferred under this settlement is **$27,713,848.22**. The actual total value will depend on the number of plaintiffs who accept the offer and the value of their claims under the formula. Individual recoveries will range from $9,804 to $322,920 per property with average and median values of $50,591 and $41,465, respectively. The terms of the Settlement Agreement are summarized in Exhibit "A."

As required by PTO 32, on March 7, the Settling Firms filed a Joint Notice of Settlement Agreement with the MDL Court. MDL R. Doc. 22125. This Court was then notified of the parties' filing of a Joint Notice of Settlement Agreement with the MDL Court. R. Doc. 187.

**C. The Request to Lift MDL PTO 32 to Settle Individual Claims.**

On March 7, Settling Firms filed a Motion to Lift PTO 32 for Settlement of Individual Claims on Remand with Voluntary Holdback for Future Fee Allocation with a supporting memorandum in the MDL Court (collectively "Motion to Lift PTO 32"). MDL R. Doc. 22126.

---

[4] Settling Firms, Taishan, and many of the claimants executed the Settlement Agreement prior to the Court's stay order. R. Doc. 196.

The Settlement Agreement was attached to this Motion and filed under seal. MDL R. Doc. 22126-4.[5] This Motion set forth two bases for lifting PTO 32. First was the MDL Court's lack of jurisdiction. As the MDL Court recognized in the Suggestion of Remand, "The effect of an order remanding a case to the transferor court for trial is to divest the transferee court of jurisdiction in the case and to vest the transferor court with jurisdiction." R. Doc. 21242 at 11, quoting DAVID F. HERR, Multidistrict Litigation Manual, § 10:5 (2005). *See also, In re Upjohn Co. Antibiotic Cleocin Prod. Liab. Litig.*, 508 Supp. 1020, 1020-21 (D.C. Mich. 1981); *Stevens v. Danek Medical, Inc.* 1999 WL 33217282, at * 7 (S.D. Fla. 1999). Second, as further explained below, Rule 23(e)'s requirement of judicial approval does not apply to individual settlements. In addition to the jurisdictional arguments, the Motion to Lift PTO 32 suggested a 9% holdback of fees to compensate the work of common benefit counsel.[6]

### D. Class Counsel File Competing Motions in Different Jurisdictions Allegedly to Protect the *Amorin* Class.

In response to the Joint Notice of Settlement Agreement and Motion to Lift PTO 32, Class Counsel filed two motions allegedly to protect the *Amorin* class.[7] The first was filed in the MDL Court on March 8, 2019 and styled as *Class Counsel's Rule 23(d) Motion to Protect the Amorin*

---

[5] The Settlement Agreement was filed under seal to protect the integrity of the settlement process, which is still ongoing. It was not filed under seal because of any "suspect nature" as alleged by Class Counsel. R. Doc. 192 at 16.

[6] A 9% holdback of the total benefit conferred under the Settlement Agreement is **the same fee-to-benefit ratio awarded by the MDL Court under the Knauf settlement** wherein the MDL Court awarded common benefit fees totaling $102,857,943.85 from the Knauf settlement against a total benefit conferred of $1.1 billion (disputed).

[7] Class Counsel also filed a Response to Joint Notice Counsel's Motion to Lift PTO 32. MDL R. Doc. 22158.

*Class*. MDL R. Doc. 22135.[8]  Therein, Class Counsel requested a show cause hearing "to determine the substance and extent of [Settling Firms'] communications with Class members (including their own clients) and other counsel, and the proper scope of relief, including any necessary notice to the class."  MDL R. Doc. 22135-1 at 18.  They argued that Settling Firms are attempting to "avoid the MDL Court's authority" (MDL R. Doc. 22135-1 at 3) and "broker settlements to a subset of Class members outside of [the MDL] Court's supervision" (*Id.* at 10). They demanded "strict scrutiny by the presiding [MDL] Court that is managing and supervising the proceedings".  *Id.* at 14.  Further, despite receiving a copy of the Settlement Agreement,[9]  they advanced claims of limited and incomplete information about the actual settlement terms.

Nearly a week later, Class Counsel filed a similar motion in this Court, which was styled as *Plaintiffs' and Class Counsel's Motion and Memorandum of Law in Support for an Order to Protect the Florida Amorin Class* (the "Florida Motion to Protect").  R. Doc. 192.  Contrary to previous assertions, Class Counsel argue that the settlement at issue is a "quasi-class settlement" (*Id.* at 192)  which must be overseen by **this Court** (not the MDL Court as previously argued) subject to the full purview of Rule 23 ("Before any settlement of these Class Members' claims is approved by this Court, there would necessarily be a full hearing, after notice to all interested parties, to determine first the preliminary fairness of the settlement and then the final fairness of the settlement."  *Id.* at 3.).  Again, despite having a copy of the Settlement Agreement, Class

---

[8] Settling Firms opposed this motion on March 18, 2019 in accordance with the MDL Court's briefing schedule.  MDL. R. Doc. 22162.

[9] Ex. B, Email from B. Villa to F. Longer, *et al.* (March 7, 2019) (enclosing copy of Settlement Agreement).

Counsel complain that Settling Firms "have not offered any details regarding the methods for calculating Plaintiffs' awards nor have they revealed the terms of the awards." *Id.* at 5. That simply is not true. Disregarding Class Counsel's pending request for a hearing before the MDL Court, the Florida Motion to Protect requests a hearing before this Court.[10]

## II. ARGUMENT

### A. Class Counsel' Motion Misdirects the Court and Enters Hazardous Territory.

Despite Class Counsel's professed intention to not "stand in the way of homeowners who want to amicably resolve their Chinese drywall claims," that is precisely what Class Counsel are doing, by misrepresenting the Court's authority and without a shred of evidence to support their criticism of Settling Firms[11] or that the Settlement Agreement somehow "threatens to impair the rights of class members who were not offered the settlement."[12] This attempt to manufacture the

---

[10] "Class Counsel respectfully request that the Court hold an evidentiary hearing to determine the scope of the settlement and notice that has been provided and if the Court believes that the proposed settlement should proceed, that the Court require a Court-approved notice, drafted by Class Counsel, be sent to all Class Members including those not offered the settlement." R. Doc. 192 at 12.

[11] The unsupported accusation that Settling Firms may misinform their clients and that the "Settlement Papers [] illustrate hostility by individual counsel" is undeserved and arguably defamatory. Doc. 192 at 11. Settling Firms are highly experienced in mass tort litigation and include a current and former member of the PSC. Great care was taken in the negotiation of this settlement to avoid creating any class conflict and to assure that clients are properly informed about the terms of the offer and the benefits and risks of settlement.

[12] *Id.* at 4. The threat, according to Class Counsel, is that Settling Firms have conceded certain disputed facts, which is facially incorrect based on the terms of the Agreement, and that the Most Favored Nations Clause somehow "impairs the remaining Class Members' ability to amicably resolve this litigation anytime in the next couple of years." *Id.* While not true, this claim paints a conflict between the rights of class members. Is Class Counsel asking the Court to strike the MFN, which would be directly adverse to the interests of the individual claimants offered the settlement?

8

appearance of a conflict between class members is hazardous territory that should be avoided. *See Piambino v. Bailey*, 757 F.2d 1112, 1144-46 (11th Cir. 1985).[13]

The Motion to Protect the Class is fraught with misinformation. First, Class Counsel is wrong in stating that Rule 23 provides authority for the Court to approve the Settlement Agreement. *See* Section II.B, below. Second, Class Counsel misrepresents the nature and terms of the Settlement Agreement, wrongly labeling it "a quasi-class settlement to a subset of the *Amorin* class" (*Id*. at 5). In fact, this settlement has none of the critical features of a class settlement[14] and there are no subsets to the class. Third, Class Counsel misrepresent the timing and extent of their knowledge regarding the settlement. In fact, Class Counsel <u>have known for many months</u> that the settlement was being negotiated and were provided the principal terms along with spreadsheets showing how these terms would apply to individual claims. At no time did Class Counsel object, suggest that the settlement may threaten non-participating class members, or ask counsel to stand down. Instead, they simply laid in wait to see how it developed and whether

---

[13] Taishan has signaled its interest in this turn of events. *See* Taishan's Opposition to "Class Counsel's Rule 23(d) Motion to Protect the *Amorin* Class" filed in Judge Fallon's Court, questioning the adequacy of representation for the class based on the "intraclass conflicts" created by Class Counsel. Rec. Doc. 22160 at 3 fn.1.

[14] "A private agreement between individuals that has '*many of the characteristics* of a class action [] may be characterized properly as a quasi-class action subject to the general equitable power of the court.'" *Andrews v. Blick Art Material*, LLC, 286 F.Supp.3d 365, (E.D.N.Y. 2017), quoting *In re Zyprexa*, 433 F.Supp.2d 268, 271 (E.D.N.Y. 2006). *See Gardiner v. A.H. Robins Company, Inc.*, 747 F.2d 1180, 1188 (8th Cir. 1984) ("We also reject, for the purpose of reviewing Judge Lord's approval of the agreement, plaintiffs' characterization of the consolidated proceeding as a quasi-class action. The instant litigation may indeed bear many of the characteristics of a class action, however, the record is unequivocal that neither the parties nor the district court regarded the agreement as binding other plaintiffs."); *In re Eagle, U.S.2 LLC*, 2015 WL 4623649 (W.D. La 2015) (rejecting characterization of multiple claims as quasi-class action for purposes of removal).

9

it could be used to their advantage, raising fabricated concern only after the close of negotiations and with individual claimants facing important deadlines. Fourth, Class Counsel falsely accuse Settling Firms of attempting to evade this Court by filing the Joint Notice of Settlement in the Eastern District of Louisiana. In fact, that Notice was filed to comply with an outstanding order issued by Judge Fallon. See PTO 32, MDL R. Doc. 21323. Fifth, Class Counsel incorrectly state that Settling Counsel "concede that the settlement should be subject to Court approval." Doc. 192 at 6. In fact, Settling Counsel acknowledged only that this Court – as opposed to Judge Fallon's Court - is the proper forum to raise questions about the settlement by virtue of the remand, while steadfastly insisting that these individual settlements are not subject to Rule 23 approval. See MDL R. Docs. 22126 and 22162.

In addition, Class Counsel incorrectly argue that the settlement "disregard[s] the remediation damages formula approved in the MDL and adopted by this Court." R. Doc. 192 at 3; *see also*, MDL R. Doc. 22135-1 at 4 (claiming that the settlement forces claimants to forego "$45.91/square foot" because the "formula adopted by Judge Cooke provides for at least $105.91/square foot."). First, while class damages were set at $105.91/square foot, that figure must be "adjusted by the RS Means location factor." MDL R. Doc. 20741 at 50. In Florida, the RS Means location factor is between .8 to .85; thus, reducing the square foot value to $84.73 to $90.02, without regard to the multiple defenses maintained by defendants, the risks on appeal, the time value of money, and the risk of uncollectable judgment.[15] Second, the damage formula

---

[15] The adjustment factors are reflected in Plaintiffs' Master Excel Spreadsheet with Details of the Florida Plaintiffs' Property Damages Claims. Because of the spreadsheet's volume, it was filed conventionally in this Court. *See* R. Doc. 56.

provides no value for plaintiffs who fully remediated, as Florida law limits recovery to actual damages. Third, this Court's Trial Plan (R. Doc. 112) does not expressly indicate whether or how the damage formula applies to partially remediated properties or properties with mixed drywall. The Settlement Agreement resolves all of these issues. *See* Exhibit A.

Finally, Class Counsel have repeatedly informed this Court and Judge Fallon that the unorthodox use of multiple venues is intended as prophylactic protection of the class from the Defendants. But it is now clear that Class Counsel are also using this paradigm as a source of control over class members and individual counsel, which raises concern regarding adequacy of representation. Whipsawing individual class members between jurisdictions has no basis in the Federal Rules or jurisprudence. Further, it allows for mixed messages regarding the law and evidence and, potentially, for inconsistent justice. For example, the Order Striking Joint Notice of Settlement Agreement issued by this Court states that the "Joint Notice of Settlement [] does not comply with the requirements for class action settlement ..." This was wrongly reported by Class Counsel to Judge Fallon as "findings" *on the Settlement Agreement itself*: "In light of the Transferor Court's finding that the proposed Taishan settlement with a subset of the *Amorin* Class 'does not comply with the requirements for a class action settlement' ..." Class Counsel's Reply Brief in Support of Rule 23(d) Motion to Protect Amorin Class, MDL R. Doc. 22171 at 1.

Another example, in the opposite direction, relates to Judge Fallon's retention of jurisdiction under PTO 32, which establishes a three-day notification requirement on future settlements and prohibits the distribution of related funds "until the Court confers with the transferor court regarding proper procedures to allocate a fair and equitable division among plaintiff(s), individually retained counsel, and common benefit counsel." MDL R. Doc. 21328, at

11

3.[16]  As required by PTO 32, Settling Firms filed the Joint Notice of Settlement (MDL R. Doc. 22125) in Judge Fallon's Court along with a Motion to Lift PTO 32 for Settlement of Individual Claims on Remand with Voluntary Holdback for Future Fee Allocation (MDL R. Doc. 22126). Following this Court's entry of the Order Striking Joint Settlement Notice, Judge Fallon dismissed the Motion to Lift PTO 32 as premature (MDL R. Doc. 22174), although the goal of PTO 32, according to Class Counsel, has been accomplished.[17]  Thus, PTO 32 continues to operate as an undefined exercise of authority by Judge Fallon over the settlement of claims now under the exclusive jurisdiction of this Court, leaving the rights of claimants to settle their individual claims hanging somewhere in balance.

## B.  Rule 23(e) Does Not Extend to Individual Settlements.

Individual claimants are free to settle their claims outside of the class without notice to all class members and without a fairness hearing.  Rule 23(e) requires notice and judicial approval of ***class settlements***.  As an individual settlement, the protective mechanisms of Rule 23(e) simply do not extend to the Settlement Agreement at issue.  This is clear from the language of Rule 23(e)(1), which requires reasonable notice be given to all class members "who would be bound" by a proposed dismissal or compromise.  Specifically, this requirement relates to the opportunity

---

[16] This action was challenged before the JPML, which concluded:  "In seeking vacatur, movants do not argue against remand *per se*, but, rather, dispute whether the transferee court may retain jurisdiction over the remanded action to determine a future common benefit fee assessment.  We need not reach this issue as plaintiffs have not yet achieved any recovery." JPML R. Doc. 524 at 1.

[17] According to Class Counsel, "PTO 32 is an effort to make sure the MDL Court is apprised of any settlements of the Florida *Amorin* claims for the purpose of making sure any potential common benefit fees are preserved." R. Doc. 192 at 10.

to contest any action that will adversely affect a class member's rights if that class member would be bound by the dismissal or compromise. Wright, 7B Fed. Prac. & Proc. Civ. § 1797.6 (3d ed.) Further, the Committee Notes on the 2003 Amendment to Rule 23(e) recognized this distinction between class and individual settlements:

> Rule 23(e)(1)(A) resolves the ambiguity in former Rule 23(e)'s reference to dismissal or compromise of "a class action." *__That language could be—and at times was—read to require court approval of settlements with putative class representatives that resolved only individual claims__*. See Manual for Complex Litigation Third, §30.41. The new rule requires approval only if the claims, issues, or defenses of a certified class are resolved by a settlement, voluntary dismissal, or compromise.

Committee Notes on Rules – 2003 Amendment (emphasis added).

Courts of Appeal throughout the country have adopted this approach as well. As aptly explained by the First Circuit:

> We simply have no tradition of court intervention to ensure that similarly victimized plaintiffs who have retained separate counsel and have made different litigation decisions get similar results. . . . Similarly harmed plaintiffs often secure separate representation and subsequently enter into materially different settlements with a common defendant. In such situations, the settling parties have no legally protected interest in having a court scrutinize each settlement to ensure that all plaintiffs receive similar consideration for their releases. A fundamental assumption of our adversary system is that adversaries represented by persons with presumably undivided loyalties will tend to negotiate acceptably fair resolutions of their disputes. As we have implied, courts oversee class-action settlements only because factors unique to the class-action context—the already-noted tendency towards a coincidence of interests between class representatives and the party opposing the class, and the chasm between representatives and faceless, absent class members—call into question whether the representatives' loyalties are in fact undivided.

13

*Duhaime v. John Hancock Mut. Life Ins. Co.*, 183 F.3d 1, 6 (1st Cir. 1999). Similarly, the Seventh Circuit weighed in on this subject when it held that the defendant's "offer to settle, if accepted by individual class members would not amount to a settlement of the class action itself." *In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1138 (7th Cir. 1979). Like the instant settlement, "[i]ndividual class members would be free to reject [the settlement] and continue to have their interests represented in the federal class action." *Id.* For that reason, the settlement was "outside the language and the purpose of Rule 23(3). *Id.* Cautioning against interference with individual settlements, the Court explained:

> [W]e are unable to perceive any legal theory that would endow a plaintiff... with a right to prevent negotiation of settlements between the defendant and other potential members of the class who are of a mind to do this; it is only the settlement of the class action itself without court approval that Rule 23(e) prohibits.

*Id.* at 1139, note 59 (7th Cir. 1979), quoting *Weight Watchers, Inc. v. Weight Watchers International, Inc.*, 455 F.2d 770,773 (2d Cir. 1972); *see also*, *Titus v. Burns & McDonnell, Inc.*, No. 09-00117-CV-W-DGK, 2010 WL 11618853, at *1 (W.D. Mo. Aug. 10, 2010) ("[T]he Court is unaware of any authority requiring approval of unnamed potential class members' individual claims at any point."). The same reasoning was adopted by the Eastern District of Louisiana in *In re Shell Oil Refinery*, 152 F.R.D. 526, 536 (E.D. La.1989) when it held: "[A] proposed offer to settle with individual class members requires a lesser degree of judicial scrutiny than a proposed settlement of a class action."

The validity of individual settlements within a class action is confirmed by the fact that class representatives routinely settle their individual claims, often times reserving their rights to pursue claims on behalf of the class. For example, in *Shores v. Sklar*, the Eleventh Circuit had to

resolve whether a class representative who settled his individual claims also settled his class claims absent an express reservation of the right to pursue the class claims. 885 F.2d 760 (11th Cir. 1989). Answering in the affirmative, the Court explained that a class representative "presents two separate issues for judicial resolution. One is the claim on the merits; the other is the claim that he is entitled to represent a class." 885 F.2d 760, 764 (11th Cir. 1989), quoting *United States Parole Comm. v. Geraghty,* 445 U.S. 388, 402, (1980). Here, the claimants seek to settle their individual claims against Taishan.

Indeed, PTO 32, issued by the MDL Court, contemplates individual settlements: "[I]ndividually retained counsel may perform significant tasks when the cases are remanded, including work for trials and settlements." R. Doc. 21323 at 2. PTO 32 also outlines the procedure for notifying the Court if and/or when a settlement or compromise is reached between "Plaintiff(s) and Defendants." *Id.* Thus, even as envisioned by PTO 32, the settlement offers extended by Taishan were made to individual claimants who have the right to opt-in to the settlement or who may choose to remain in the litigation.

Finally, the timing of the individual settlement offers has no effect on the validity of such offers or their impact on the class as Class Counsel suggest. Lawsuits frequently settle on the brink of major decisions, orders, judgments, or trial. The pressure and risk of an impending and adverse decision may be a driving force behind the settlement. Further, as acknowledged by Class Counsel, the litigation against Taishan has a "tortured history." R. Doc. 192 at 8. This decade-long, tortuous track was a major influence in Settling Firms' negotiations with Taishan and surely will be a major factor for individual claimants to consider when weighing their options.

## C. The Individual Settlement Offers Do Not Impact, Much Less Harm, the Class.

Aside from the full notice and hearing requirements of Rule 23(e), Class Counsel urge this Court to exercise its discretionary power under Rule 23(d)(1)(b) and permit Class Counsel to communicate or "issue a formal Court-approved Notice to the Class. . . ." R. Doc. 192 at 16. This request is rooted in the theory that class members may be harmed by the incompetence or negligence of their primary attorneys: "[T]here is a risk that the result of this conduct adversely impacts unwitting Class members who, instead of having their rights protected, are instead influenced to act based on potentially misleading and incomplete information." *Id.* at 16. This sinister theory would support extending Rule 23 to all individual settlements in all cases, contrary to clear policy favoring individual rights and guarding against unjustified intrusion into the relationship between attorney and client.

The Supreme Court has warned against orders issued pursuant to Rule 23(d) limiting communications between counsel and class members. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 (1981). In *Gulf Oil*, the Court explained that such orders "should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.* This will "ensure that the court is furthering, rather than hindering, the policies embodied in the Federal Rules." *Id.* at 102. Any resulting order should "limit[] speech as little as possible, consistent with the rights of the parties under the circumstances." *Id.* Further:

> [T]o the extent that the district court is empowered ... to restrict certain communications in order to prevent frustration of the policies of Rule 23, it may not exercise the power without a specific record showing by the moving party of the particular abuses by which it is threatened. Moreover, the district court must find that the showing provides a satisfactory basis for relief and that the relief

> sought would be consistent with the policies of Rule 23 giving
> explicit consideration to the narrowest possible relief which would
> protect the respective parties."

*Id.*, quoting *Coles v. Marsh*, 560 F.2d 186, 189 (3d Cir.), *cert. denied*, 434 U.S. 985 (1977). Vague

and general allegations asserting some speculative harm to the class are insufficient to support a

Rule 23(d) order limiting communications between counsel and class members.

*In re Community Bank of Northern Virginia*, 418 F.3d 277 (3d Cir. 2005) is likewise

instructive wherein the Third Circuit invalidated a district court order limiting communications

between counsel and class members. The order at issue in *Community Bank* precluded law firms

from communicating with their own clients in the pending class litigation. *Id.* at note 28. Quoting

*Gulf Oil*, the Court warned, "[S]uch restrictions involve 'serious restraints on expression' and

therefore, 'at [a] minimum, [*Gulf Oil*] counsels caution on the part of a district court in drafting

such an order, and attention to whether the restraint is justified by a likelihood of serious abuses."

*Id.* at 312, quoting *Gulf Oil*, 452 U.S. 104.

**D. Settling Firms' Communications With Their Clients Are Privileged.**

An order requiring Settling Firms to disclose the substance and extent of their

communications with clients would violate the attorney-client privilege. "The attorney–

client privilege is the oldest of the privileges for confidential communications known to the

common law." 8 J. Wigmore, Evidence § 2290 (McNaughton rev. 1961). Its purpose is to

encourage full and frank communication between attorneys and their clients and thereby promote

broader public interests in the observance of law and administration of justice." *Upjohn Co. v.*

*United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981).

Federal Rule of Civil Procedure 23(c)(2)(B) explicitly provides "that a class member may

enter an appearance through counsel if the member so desires." Class members' right to retain

individual counsel, regardless of class certification, necessarily contemplates a right to have privileged communications with their chosen counsel. Such sacrosanct communications deserve no less protection than communications between attorney and client outside of class litigation. Thus, requiring Settling Firms to divulge such information "would essentially eviscerate this right [to retain individual counsel in a class action]." *In re Community Bank of Northern Virginia*, 418 F.3d at 313.

### III.    REQUEST FOR HEARING

In accordance with S.D. Fla. L.R. 7.1(b), Parker Waichman requests oral argument on this motion. Important legal, factual and procedural issues are raised in this motion with inter-jurisdictional implications for plaintiffs and their counsel. Further, time is of the essence as claimants who have already agreed to accept Taishan's settlement offer are awaiting payment. Oral argument will allow the parties to efficiently and expeditiously answer any questions this Court may have with regard to the Settlement Agreement or the instant motion. Settling Parties estimate that an hour will be sufficient for oral argument.

### IV.    CONCLUSION

For the reasons set forth above, Settling Firms respectfully request an Order lifting the stay on the execution of the Settlement Agreement imposed by this Court's Order Striking Joint Notice of Settlement Agreement. Alternatively, because the Settling Firms, Taishan and many claimants have already executed the agreement, Settling Firms request an order limiting the stay to the deadlines and distributions of funds as set forth in the Agreement, such that all deadlines and delays contained within the agreement be suspended during the pending stay.

## CERTIFICATION OF PRE-FILING CONFERENCE
## PURSUANT TO S.D. FLA. L.R. 7.1(A)(3)

Parker Waichman LLP has conferred with Interim Lead Counsel for Plaintiffs in a good

faith effort to resolve the issues raised in this motion and has been unable to do so.

Date: March 22, 2019        Respectfully submitted,

       /s/ Jay P. Dinan
       Jay P. Dinan
       FL Bar No.: 876593
       Email: jdinan@yourlawyer.com
       Francisco A. Albites
       FL Bar No.: 78046
       Email: falbites@yourlawyer.com
       Parker Waichman LLP
       27300 Riverview Center Boulevard, Suite 103
       Bonita Springs, Florida 34134
       Office: 239.390.1000
       Fax: 239.390.0055
       *Counsel for Parker Waichman LLP Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Motion and

Incorporated Memorandum in Support of Motion to Lift Stay with Request for Hearing was served

on March 22, 2019, by electronically filing the foregoing with the Clerk of Court using the

CM/ECF system, which automatically served all parties authorized to receive service via CM/ECF.

       */s/ Jay P. Dinan*
       OF COUNSEL

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| EDUARDO AND CARMEN AMORIN, *et al.*, individually, and on behalf of all others similarly situated,<br><br>       **Plaintiffs,**<br><br>       **v.**<br><br>TAISHAN GYPSUM CO., LTD. f/k/a SHANDONG TAIHE DONGXIN CO., LTD.; TAIAN TAISHAN PLASTERBOARD CO., LTD., *et al.*,<br><br>       **Defendants.** | **Case No. 1:11-CV-22408-MGC** |

**MOTION AND INCORPORATED MEMORANDUM IN SUPPORT OF
MOTION TO LIFT STAY OF SETTLEMENT AGREEMENT**

**EXHIBIT "A"**

**SETTLEMENT FRAMEWORK**

The following summarizes the terms of the Settlement Agreement and Release:

**1. Settlement Criteria**

      Each claimant who accepts the Settlement Agreement will receive an "Individual Settlement Amount" based on a baseline value of $60 per square foot with discounts tied to the unresolved issues affecting value: square footage, product type, ownership, and remediation status.

      **Baseline Value** - The baseline value for damages is $60 per square foot. This value is based on many factors, including the damage methodology developed by the Court, actual remediation costs, non-remediation damages, setoffs claimed by Taishan for mixed drywall properties and for payments made under other settlements, the time-value of money, the risk of a negative outcome on appeal, and collectability of a judgment.

A-1

**Square Footage of the Affected Property** - The amount of under air square footage based on appraisals, public records and/or inspection reports.

**Product Type Based on Product Markings or Labels** - Forty-four (44) different product markings or labels were found on the Chinese manufactured drywall at issue. Of these, thirty-nine (39) can be traced to the Taishan defendants ("Taishan Markings"). The other five (5) can be traced to BNBM.[1] *See* SDFL R. Doc. 155-1**.** For purposes of the Settlement Agreement, the Taishan Markings are divided into three categories:

"Taishan Drywall" includes nine (9) of the thirty-nine (39) markings from the Catalog: 1, 14, 15, 16 and 38 through 42.

"Generic Drywall" includes fourteen (14) marking numbers from the Catalog: 2, 5 through 11, 13, and 17 through 21.

"Other Drywall" includes *all* of the remaining sixteen (16) marking numbers from the Catalog: 3, 4, 12, 27 through 37, 43 and 44.

**Ownership Status of the Property** - A claimant is treated as a "Current Owner" if he or she owned the property during the period May to August of 2017.[2] A claimant is a "Former Owner" if they sold or transferred the property *prior* to May to August of 2017. Importantly, claimants who sold their property after August 2017 are treated as Current Owners if they remediated.

---

[1] BNBM denies responsibility for a variety of reasons. Claims based on BNBM markings are not included in the Settlement Agreement.

[2] The Settlement Agreement adopts the ownership status of each claimant as reported in Plaintiffs' Master Excel Spreadsheet with Details of the Florida Plaintiffs' Property Damages Claims, which was verified between May and August of 2017. Because of the spreadsheet's volume, it was filed conventionally in this Court. *See* FLSD R. Doc. 56.

**Remediation Status of the Property** - Property will be considered "Remediated" for purposes of this settlement if the claimant fully or partially remediated the affected property and submitted proof and documentation of this remediation.

**2. Individual Settlement Amount**

Based on the above criteria, each eligible claimant who elects to participate in the settlement will receive an Individual Settlement Amount based on a per square foot settlement value, as follows:

|  | Discount | Per Square Foot ("PSF") Settlement Value |
|---|---|---|
| Remediation Factor (PSF) |  | $60.00 |
| Taishan Drywall Current Owners and Former Owners Who Remediated (PSF) | None | $60.00 |
| Taishan Drywall Former Owners Who Did Not Remediate (PSF) | 65% | $21.00 |
| Generic Drywall Current Owners and Former Owners Who Remediated (PSF) | 35% | $39.00 |
| Generic Drywall Former Owners Who Did Not Remediate (PSF) | 77.25% | $13.65 |
| Other Drywall (PSF) | 80% | $12.00 |

A-3

### 3. Attorneys' Fee Contribution

In addition to offering *every* Participating Plaintiff an individual recovery for damages caused by the defective Chinese drywall, Taishan will pay an additional sum equal to 10% of each claimant's recovery toward attorneys' fees, effectively reducing each claimant's direct fee obligation under his or her private contract with individual counsel.[3]

### 4. Most Favored Nations ("MFN") Protection

The Settlement Agreement also includes a provision that allows most Participating Plaintiffs[4] to receive an additional recovery in the event Taishan settles with other claimants on or before March 31, 2021 for a higher square-foot value based on the same product markings. The MFN applies to future settlements equal to 110%, or more, of the per-square-foot value paid under the Settlement Agreement. If the MFN is triggered, Participating Plaintiffs with the same product markings will receive 100% of the difference between the recovery paid under the Settlement Agreement and the future settlement.

---

[3] This component of the settlement was negotiated after Settling Firms fully exhausted negotiations on the damage formula factors.

[4] The MFN does not apply to claims based on property in the Renaissance Commons complex.

A-4

## Brook Landry Villa

| | |
|---|---|
| **From:** | Brook Landry Villa |
| **Sent:** | Thursday, March 7, 2019 12:33 PM |
| **To:** | Jimmy Faircloth; Fred Longer |
| **Cc:** | Arnold Levin; Sandra L. Duggan; Russ Herman; Steve Herman (SHERMAN@hhklawfirm.com); Lenny Davis |
| **Subject:** | RE: CDW - Motion to File Settlement Agreement Under Seal |
| **Attachments:** | Ex B to Motion to Lift PTO 32 - Settlement Agreement and Release - FILED UNDER SEAL DO NOT FILE.pdf |

Fred,

The Settlement Agreement and Release that we filed this morning under seal is attached.

Sincerely,

Brook Landry Villa
Attorney
FAIRCLOTH MELTON SOBEL & BASH, LLC
9026 Jefferson Highway
Suite 200
Baton Rouge, LA  70809
(225) 343-9535 (direct)
(225) 205-7819 (cell)
(225) 343-9534 (fax)

CONFIDENTIALITY STATEMENT
This electronic message contains information from Faircloth Melton Sobel & Bash, LLC, and is confidential or privileged. The information is intended for the use of the individual or entity named above. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this message is prohibited. If you have received this electronic message in error, please notify us immediately by telephone at (225) 343-9535.

---

**From:** Jimmy Faircloth <jfaircloth@fairclothlaw.com>
**Sent:** Thursday, March 7, 2019 12:25 PM
**To:** Fred Longer <FLonger@lfsblaw.com>
**Cc:** Brook Landry Villa <bvilla@fairclothlaw.com>; Arnold Levin <ALevin@lfsblaw.com>; Sandra L. Duggan <sduggan@lfsblaw.com>; Russ Herman <RHERMAN@hhklawfirm.com>; Steve Herman (SHERMAN@hhklawfirm.com) <SHERMAN@hhklawfirm.com>; Lenny Davis <LDAVIS@hhklawfirm.com>
**Subject:** Re: CDW - Motion to File Settlement Agreement Under Seal

Yes, Please treat discretely.  Brook, please send.

Sent from my iPhone

On Mar 7, 2019, at 12:18 PM, Fred Longer <FLonger@lfsblaw.com> wrote:

> Jimmy,
> We have your papers which were filed today but have not received the under seal filing of the
> Settlement Agreement and Release.
> Please advise if you will produce the document(s) to us so that we may properly respond to your
> papers.
> Thank you.
> FSL
>
> Frederick S. Longer
> Levin Sedran & Berman LLP
> 510 Walnut Street
> Suite 500
> Philadelphia, PA 19106
> 215-592-1500

[WARNING: This email is from an external source. Do not click links or attachments unless you recognize the

sender and know the content is safe.]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

**EDUARDO AND CARMEN AMORIN,** *et al.***, individually, and on behalf of all others similarly situated,**

        **Plaintiffs,**

           **v.**

**TAISHAN GYPSUM CO., LTD. f/k/a SHANDONG TAIHE DONGXIN CO., LTD.; TAIAN TAISHAN PLASTERBOARD CO., LTD.,** *et al.***,**

        **Defendants.**

**Case No. 1:11-CV-22408-MGC**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### <u>ORDER GRANTING MOTION TO LIFT STAY</u>

THIS MATTER is before the Court on the Motion and Incorporated Memorandum in Support of Motion to Lift Stay of Settlement Agreement with Request for Hearing, filed March 22, 2018 (the "Motion").

The Court, having reviewed the Motion and being fully advised in the premises, hereby ORDERS and ADJUDGES as follows:

The Motion is GRANTED. The Court hereby:

____ Lifts the stay on the execution of the Settlement Agreement and Release previously imposed by this Court's Order Striking Joint Notice of Settlement Agreement

*– or –*

____ Limits the stay on the execution of the Settlement Agreement and Release previously imposed by this Court's Order Striking Joint Notice of Settlement Agreement to the deadlines and distributions of funds as set forth in the Agreement, such that all deadlines and delays contained within the agreement be suspended during the pending stay.

DONE AND ORDERED in Chambers, Miami, Florida, this ___ day of

_____2019.

_____
MARCIA G. COOKE
UNITED STATES DISTRICT JUDGE

Copies furnished to: All Counsel of Record