UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |
| **THIS DOCUMENT RELATES TO:**<br><br>*Amorin, et al. v. Taishan Gypsum Co., Ltd., et al.*, Case No. 11-cv-1395 | |

### DEFENDANT TAISHAN'S RESPONSE TO
### PSC MOTION TO ADOPT TRIAL PLAN
### FOR LOUISIANA *AMORIN* CASES

A mere 60 days separate the parties' respective trial proposals. The PSC wishes to begin trials on September 23. Defendants suggest starting on December 3, to give the Court sufficient time before the trials to receive briefing, hear argument, and make decisions on issues that will determine what evidence may be offered at trial, and whether any trial issues can be avoided altogether. Defendants' plan is still expedited, but faithfully follows the customary practice in this Court to provide for decisions on *Daubert* questions and other issues that might shorten or even eliminate time ultimately spent in trial. Plaintiffs' plan would unnecessarily overwhelm the Court with multiple simultaneous dispositive and pretrial motions on an already expedited schedule. Plaintiffs' request to rush to begin trial will unnecessarily tax the Court with minimal temporal gain.

As to the rest of the procedural gambits renewed in the PSC motion, this Court has already ruled. During the summer and fall of 2018, the parties submitted extensive briefing on competing structural trial plan proposals. The Court heard argument, and had the additional benefit of supplemental briefing. And then the Court ruled on October 12, 2018, setting its own structure for

resolving these cases, and implicitly rejecting certain aspects of both of the parties' competing proposals. Now, under the guise of scheduling, the PSC seeks to relitigate what this Court has already decided.

The Court should reject the PSC's disguised reconsideration motion as well as its impractical, burdensome, and error-inviting "Plan for the Trial of Louisiana Amorin Cases" attached to their Motion. Instead, the Court should enter a scheduling order that provides for the orderly and efficient adjudication of select Priority Claims before the end of this year, as envisioned by this Court's prior order. A proposed Scheduling Order is attached hereto as Exhibit A.

### A. The Court's Existing Orders Establishing Trial Plans

The Court previously received the parties' competing structural visions for the adjudication of the Louisiana claims in *Amorin*, heard oral argument on those proposed plans, received post-hearing supplemental briefing on the plans, and issued an order. In the October 12, 2018 Order & Reasons (the "Court's Trial Plan Order"), the Court noted that it had "considered the parties' proposed plans and criticisms thereof and issue[d] the following trial plan for the Louisiana cases in the *Amorin* class." (Rec. Doc. No. 21847 at 10). The Court provided for each side to select 20 Louisiana "cases" for a total of 40.[1] The Court ruled that those claims (which the parties refer to as Priority Claims) "will form the discovery pool *from which the cases will be selected for trial* at a later date." (*Id.* (emphasis added)). The Order also set a fact discovery deadline of April 12, 2019 for the Priority Claims, and the parties have adhered to that deadline.

The Trial Plan Order established two important standards:

---

[1] One of Defendants' selected claimants, Dr. Daniel Gammage, was eliminated from the Priority Claims due to health reasons and was not replaced.

- That each side would get to choose an equal number of Priority Claims for the discovery pool; and

- That the 40 Priority Claims were the "discovery pool *from which the cases will be selected* for trial at a later date."

(Rec. Doc. No. 21847 at 10 (emphasis added)). Thus, the Court projected that not all Priority Claims would be immediately tried—instead, there would be a selected subset. And, the Court valued balance in the selection of cases to try, rejecting the Plaintiffs' proposal that the PSC alone choose the cases to try and the order in which to try them.

After the issuance of the Court's Trial Plan Order, the parties conferred and jointly moved for endorsement of additional pretrial discovery activity and deadlines (Rec. Doc. No. 21891), and this Court entered its Order Setting Louisiana *Amorin* Discovery Schedule on November 1, 2018 ("Discovery Order") (Rec. Doc. No. 21897). Fact discovery is scheduled to end by April 12, 2019, and the parties will engage in expert discovery between April 12 and June 27, 2019. Although experts are yet to be formally designated, the parties anticipate multiple expert witnesses on both sides.

### B. Defendants' Proposed Pretrial and Trial Schedule

Defendants' proposed plan conforms to the Court's Trial Plan ruling and principles. *See* Exhibit A. Defendants propose that on the day after the close of expert discovery—June 28, 2019—each side selects *five* of the Priority Claim discovery pool for a total of ten "Select Cases." The trials of those Select Cases should proceed in sequence between a Plaintiffs' pick and a Defendants' pick, back-to-back, starting December 3, 2019, and continuing until the completion of the Select Cases—very likely before the end of the year, taking into account the Court's schedule and holidays. Staging the cases in this way also allows for the parties to learn from the early cases, and to consider resolving the remainder based upon those lessons.

Following those evenly selected and tried Select Cases, the parties and the Court can determine the appropriate sequence and timing of the resolution of the remaining Priority Claims and non-priority claims, whether through settlement or further adjudication. This is a sensible sequence, and consistent with the Court's Trial Plan Order and past practice with bellwether trials in this and other cases.

Leading up to these Select Case trials, the Defendants' plan sets up an orderly schedule for *Daubert* motions a month after the close of expert discovery, with an accelerated briefing schedule and hearing date. Shortly after filing *Daubert* motions on July 29, 2019 (one month after the close of expert discovery), the parties will submit case-specific and other pretrial motions, including motions for summary judgment, on September 6, 2019, just one week after the final *Daubert* replies are due. Finally, with the benefit of rulings or guidance on *Daubert* and pretrial motions, the parties can file Motions in Limine, Final Witness Lists, and Deposition Designations in October.

The parties can complete that orderly, albeit accelerated sequence of motions briefing before submitting a Pretrial Order ("PTO") and attending a Pretrial Conference in November. Working around the holidays, the first Priority Claim can be tried on December 3, 2019, with subsequent Priority Claims to follow immediately.

### C. PSC's Impractical and Inefficient Plan

*1. Impractical Insistence on All 39 Priority Claims*

Ignoring the Court's order designating the Priority Claims as a "discovery pool" from which cases would be selected "for trial at a later date," the PSC insists on trying all 39 before year-end. (Rec. Doc. No. 21847 at 10). In its effort to ramrod all the Priority Claims immediately to trial, the PSC offers no logical method of order or sequencing. It suggests that they can be

4

divided up into "eight 'flights' of cases [in groups of four or five] with similar/overlapping issues" to be "adjudicated over a four-week period." (Rec. Doc. No. 22153-1 at 11). But the discovery that has occurred to date defeats the viability of the PSC's proposal. It has revealed that some case-specific issues are more readily "triable" than others, and most cases present facts and claims that do not "overlap" with others in the discovery pool.

Examples abound. Nadja and Donald Fisher are pursuing their Priority Claim *pro se*. Having assigned their remediation damages to Habitat for Humanity (the builder of their home), (N. Fisher Dep. 67:19-68:14 [Ex. B]), the Fishers uniquely claim **personal injury damages**, *id*. at 108:7-9. Among the Fishers' discovery materials are medical records that they claim will prove their personal injury claims. The Fishers are the only Priority Claimants pursuing personal injury damages. They are also the only *pro se* plaintiffs in the Priority Claimant discovery pool. Trying to shoehorn their case into a consolidated "flight" of three or four others, as the PSC proposes, will be difficult and both procedurally and practically inefficient.

The Fishers are not the only unique claim. The Zhang/Zhao plaintiffs are Chinese speakers, Ms. Zhao had to testify through an interpreter, and they are seeking damages from a foreclosure and a bankruptcy that was ultimately dismissed for failure to comply with court-ordered bankruptcy payments. (Zhang Dep. 99:5-17 [Ex. C]; Ex. D at 1-2). Plaintiff Holly Braselman alleges a short sale and bankruptcy caused by Chinese drywall, but discovery revealed that Ms. Braselman short sold seven other properties between 2009 and 2012 without Chinese Drywall, including one in the same neighborhood as the property at issue. (Ex. E at 30-31). Her 2012 bankruptcy resulted in the discharge of nearly $1.4 million in debt. (Braselman Dep. 115:4-11 [Ex. F]; Ex. E at 6). And Jerry Phillips never owned the property for which he is making a claim

and is seeking $50,000 for loss of use and enjoyment even though he never lived in the home. (Phillips Dep. 13:13-19; 43:19-44:17; 66:8-67:1 [Ex. G]).

Under the PSC's plan, the Fishers, Zhang and Zhao, Ms. Braselman, and Mr. Phillips could all be combined into a single "flight," or could be combined with other equally unusual claims. Plaintiffs present no legitimate reason to try all of these claims together, or to try them all this year (along with 35 others), just because they were in the discovery pool established by the Court's Trial Plan Order. It makes much more sense for each party to choose five cases from the discovery pool that will lend themselves to helpful and efficient bellwether trials, and alternate those trials back-to-back with a goal of completion in 2019. That is the Defendants' workable, better plan.

*2. Inefficient and Burdensome Timeline*

The impracticalities of the PSC's insistence on trying all 39 Priority Claims in "flights" in a four-week period are compounded by the PSC's unrealistic proposed timeline for necessary pretrial activities. Per the existing discovery order, expert discovery ends on June 27, 2019, with both parties expecting multiple expert witnesses per side.

Under the PSC's plan, *all* "case-specific and other pretrial motions" for *all* 39 claims would be filed on July 12, 2019. That is all *Daubert* motions, all motions for complete or partial summary judgment, all motions *in limine*, and any other legal motion that must be made before trial. The PSC seeks to burden the Court with the simultaneous submission of all of those motions and the impossible task of argument on all those motions in a single hearing about one month later on August 15, 2019.

The PSC's plan has no regard for the orderly consideration of the issues to be raised by the various motions. Therefore, the parties and the Court will be forced to brief extensively in the alternative, having to imagine different permutations of the outcomes of the simultaneously filed

6

briefs. For example, the parties will need to brief, and the Court will need to consider, summary judgment motions and motions *in limine* without any guidance as to whether certain experts' reports and testimony will or won't have passed *Daubert* muster. Meanwhile, the Court will need to digest every single legal and evidentiary issue for 39 cases at the same time. The Court will not have a reasonable amount of time to tackle and make rulings on all of the issues, because the PSC proposes that the Court will make all of its rulings and actually start trials just *five weeks* after the hearing date on all the motions. In their zeal for expediency, the PSC has abandoned practicality and rationality, disregarding judicial resources, all in a manner that actually could make the trials *less* efficient.

To avoid that undesirable mess, the Defendants' pretrial schedule adds only about 60 days to the PSC's proposed pretrial timeline to rationalize the process in meaningful ways:

- Staging the Court's consideration of *Daubert* motions, then dispositive and other case-specific pretrial motions, then motions *in limine*
- Reducing the number of cases from 39 to 10 for a more manageable first set of trials
- Providing for the preparation of a Pretrial Order (PTO) and a Pretrial Conference

The PSC's plan is simply unworkable, and the Court should reject it in favor of the expedited but rational plan proposed by Defendants.

**D.  The PSC's Attempt to Relitigate Rejected Adjudication Methods**

All of the foregoing discussion has addressed section I of the PSC's "Plan for the Trial of Louisiana Amorin Cases." (Rec. Doc. No. 22153-2). But the PSC also presents section II, self-entitled "Resolution of Issues (including product identification) in All Louisiana Amorin Remediation Claims," which seeks to create a completely separate litigation track overseen by a Special Master or Magistrate "for the 'calculation' of all Louisiana *Amorin* Plaintiffs' damages"—regardless of the trials of the 39 Priority Claims. (*Id.*; Rec. Doc. No. 22153-1 at 4). The PSC

7

already made this pitch, and the Court rejected it. The Court should now reject their tacit request of reconsideration.

In July 2018, the PSC asked the Court to sever and side-track all remediation damages from the rest of the damages claims and hand them over to a special master. Plaintiffs wanted the proposed special master to make global, abstract PID determinations, then consider Defendants' "contests and requests for set-offs" for all Louisiana claims at the same time. Plaintiffs claimed that would help the Court to come to an aggregate, formula-based "Judgment on Remediation Damages for *Amorin* Louisiana Former Owners and New Owners." (Rec. Doc. No. 21527 at 6-11).[2] This Court did not embrace a distinct special master track for one aspect of plaintiffs' damages, instead adopting a traditional bellwether structure in which a single fact-finder tries all damages for certain claims. That was the right decision, as the Florida proceedings—which followed the PSC's suggestion—are bearing out.

Florida's PSC-promoted separate Special Master remediation-damages track has turned out to be, as the PSC has admitted, much more complicated in practice than it was in theory. While the PSC wants the Special Master to perform simple arithmetic to calculate the remediation formula, the Special Master must also consider governing state law and Defendants' "contests," which include claim-specific and global legal defenses. Thus, the Florida Special Master is in the process of making legal and factual determinations about every one of hundreds of claims, the vast majority of which have involved very limited discovery. The PSC has already predicted that those decisions will be challenged by one or both sides to the District Court, who will then need to confront the legal and factual determinations anew. In the ultimate irony, this exceptional severed

---

[2] As Taishan pointed out at the time, a partial judgment of fewer than all of a claimant's damages is barred by Rule 54. *See Monument Mgmt. Ltd. P'ship I v. City of Pearl*, 952 F.2d 883, 885 (5th Cir. 1992).

adjudication track designed to somehow speed up the time-honored American adjudication process actually creates inefficiencies and extensive opportunity for error.

Likely recognizing those risks, this Court did not follow the PSC down that road the first time they suggested it. Under the bellwether process that this Court and many others have used before, a single factfinder can assess *all* of a single plaintiff's damages claims in a single evidentiary setting. The PSC itself conceded, the first time around, that "[i]f this were Day 1 of this MDL, the trial plans of the Taishan Defendants might make sense." (Rec. Doc. 21525 at 2). But Taishan's proposed trial plan makes as much sense today as it would at any time in the past or in the future. It is based on traditional jurisprudential practices that conform to the federal rules and decades of mass and class tort litigation practice. By contrast, the PSC seeks to invent a new way of arriving at an aggregate "award" for just one category of the damages of hundreds of differently situated plaintiffs. This Court was right to reject it.

## CONCLUSION

For the foregoing reasons, the PSC's Motion to Adopt Trial Plan for Louisiana *Amorin* Cases (Rec. Doc. No. 22153) should be DENIED, and the Court should enter the proposed Scheduling Order attached hereto as Exhibit A.


Dated: April 12, 2019

Respectfully submitted,

/s Christina Hull Eikhoff
Michael P. Kenny, Esq.
Georgia Bar No. 415064
Bernard Taylor, Esq.
Georgia Bar No. 669625
Christina Hull Eikhoff, Esq.
Georgia Bar No. 242539
David Venderbush, Esq.
New York Bar No. 2920817
ALSTON & BIRD LLP

9

1201 West Peachtree Street
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
christy.eikhoff@alston.com
*Counsel for Taishan Gypsum Co., Ltd. And Tai'an Taishan Plasterboard Co., Ltd.*

Alan Dean Weinberger
LA Bar No. 13331
HANGARTNER, RYDBERG & TERRELL, LLC
One Shell Square
701 Poydras St., Suite 310
New Orleans, Louisiana 70179
Phone: (504) 434-6815
Fax: (504) 522-5689
aweinberger@hanrylaw.com
*Local Counsel for Taishan Gypsum Co., Ltd. And Tai'an Taishan Plasterboard Co., Ltd.*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, by U.S. mail and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 12th day of April, 2019.

Christina Hull Eikhoff, Esq.
Georgia Bar No. 242539
ALSTON & BIRD LLP
1201 West Peachtree Street NW
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
christy.eikhoff@alston.com
*Counsel for Taishan*
