UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * | MDL No. 2:09-md-2047 |
| | * | SECTION L (JUDGE. FALLON) |
| **THIS DOCUMENT RELATES TO:** | * | MAG. (2) (JUDGE WILKINSON) |
| **CIVIL ACTION NO. 11-1395** | * | |

**CNBM AND BNBM ENTITIES' MEMORANDUM IN OPPOSITION TO PSC'S MOTION FOR ORDER (UNDER FRCP 55(b)) APPLYING THE REMEDIATION DAMAGES FORMULA ADOPTED BY THE FINDINGS OF FACT AND CONCLUSIONS OF LAW RELATED TO THE JUNE 9, 2015 DAMAGES HEARING TO THE CLAIMS OF FORMER OWNERS OF AFFECTED PROPERTIES**

The PSC asks this Court to make a blanket ruling, in the abstract, that "former owners" are entitled to remediation damages under the April 21, 2017 formula applicable to current owners, regardless of any relevant facts including actual damages. Plaintiffs posit that, "absent an express assignment," former owners "maintain the right to sue for damage to the property formerly owned" and "equity dictates they receive the same measure of damages applicable to current homeowners." PSC Mem. 14, 17. This Court must deny Plaintiffs' motion because:

(1) Louisiana allows a court to resort to equity only when there is an absence of governing law, which is not the case here.

(2) Settled Louisiana law dictates that a plaintiff may recover only "actual damages," which for former owners incapable of repairing damaged property are based on the difference in the property's value before and after damage—a fact that should come as no surprise given the PSC's acquiescence in removing former owners from the June 2015 hearing that culminated in production of the formula.

(3) This Court cannot determine, in the abstract, whether any former owner is entitled to damages because, as the PSC recognizes, the subsequent purchaser doctrine applies and impacts the viability of claims and recovery rights, even in the Rule 55 context.

For these reasons, as set forth below, the PSC's motion must be denied, or, at a minimum, reserved for resolution after discovery ends later this month.

1

## I.     BACKGROUND

The PSC's Motion relates to the Louisiana Amorin complaint, filed under Civil Action No. 11-1395 in this Court (Rec. 1).  Although Amorin includes plaintiffs with properties in other states, both in the original filing and via interventions, this Court has stayed those claims (Rec. Rec. 21935).  As such, the PSC's motion addresses only Amorin plaintiffs with Louisiana properties.

The Louisiana Amorin plaintiffs consist of both former and current property owners.  At the June 5, 2015, hearing, this Court addressed recovery of remediation damages for ***current owners only***, leaving other damages (such as alternative living expenses, personal injury, foreclosure, and/or lost rents) and former owners' claims for damages for consideration at a later proceeding where appropriate.  April 21, 2017 Order, ¶ 59, p. 30 (Rec. 20741) ("Damages FOFCOL").  On behalf of the Louisiana Plaintiffs who are former owners,[1] the PSC now seeks a determination that the former owners are likewise entitled to recover remediation damages under the formula announced in the Court April 21, 2017 Order following the June 5, 2015 hearing.

## II.    LOUISIANA LAW PROHIBITS A COURT FROM RESORTING TO EQUITY IN THE FACE OF APPLICABLE LOUISIANA LAW

Louisiana law is clear that, when an adequate remedy at law is available, the court may not resort to principles of equity.  *Sheets v. Yamaha Motors Corp*., 849 F.2d 179, 184 (5th Cir. 1988) (citing *Austin v. North American Forest*, 656 F.2d 1076, 1089 (5th Cir. 1981)).  Indeed, Louisiana Civil Code article 4 expressly prohibits a court from resorting to equity in the face of applicable law.  *Minyard v. Curtis Products, Inc*., 205 So. 2d 422, 433 (La. 1967) (former La.

---

[1] The PSC does not define what it means by the term "former owners."  It appears to use that term to include not only the property owner at the time of installation of Chinese drywall, but also any intermediate owner who acquired the property from such person and then later sold the property to another person.  Under that definition and the PSC's novel theory, two, three, or even four or more "former owners" may seek recovery under the remediation formula for the same single property.

Civ. Code art. 21 (now La. Civ. Code art. 4) prohibits resort to principles of equity in cases that allow application of more specific legal actions); *accord Morales v. Trans World Airlines, Inc*., 504 U.S. 374, 380–81 (1992) ("basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving party has an adequate remedy at law . . . .") (citations omitted). Given Louisiana's well-established legal principles governing compensatory damages in tort cases, this Court must decline the PSC's invitation to ignore that law in favor of "equity."

## III.  LOUISIANA TORT LAW AUTHORIZES ONLY RECOVERY OF ACTUAL, NOT PUNITIVE, DAMAGES

### A.  Tort Damages to Property Must Be Based on the Particular Facts

In the leading Louisiana case on tort recovery for property damage, *Roman Catholic Church v. La. Gas Serv. Co*., 618 So. 2d 874, 877 (La. 1993), the Louisiana Supreme Court cautioned against application of any "mechanical rule" in assessing compensatory damages. Holding that the assessment of property damage under Article 2315 for "every case must rest on its own facts and circumstances," the Court explained:

> [W]hen a person sustains property damage due to the fault of another, he is entitled to recover damages including the cost of restoration ***that has been or may be reasonably incurred***, or, at his election, the difference between the value of the property before and after the harm. If, however, the cost of restoring the property in its original condition is disproportionate to the value of the property or economically wasteful, unless there is a reason personal to the owner for restoring the original condition or there is a reason to believe that the plaintiff will, in fact, make the repairs, damages are measured only by the difference between the value of the property before and after the harm.

*Id.* at 879–80 (emphasis added). In that case, the $232,677 restoration costs for one of the twelve buildings did not exceed the value of the property because the entire property was acquired by HUD for $3.3 million, renovated at a cost of $3 million and sold to the Roman Catholic Church for $1.7 million upon the condition that it house 200 poor families for 15 years. *Id.* at 880. Moreover, the Roman Catholic Church had in fact fully restored the low-income housing that

3

had been destroyed from fire after defendant's equipment malfunctioned.  *Id*.  Even if the remediation costs exceeded the property's fair market value, the Court allowed the full restoration damages to stand because the Church had in fact already spent that amount for restoration.  *Id*.

Guided by the principles discussed in *Roman Catholic Church*, Louisiana courts typically employ one of three approaches to dispensing tort-based property damages: (1) the cost of restoration, if the property can be adequately repaired; (2) the difference in value prior to and following the damage; or (3) if the value before and after the damage cannot be reasonably determined or the cost of the repairs exceeds the value of the property, then the cost of replacement new, less reasonable depreciation.[2]

### B.  Louisiana Limits Former Owners' Recovery to Actual Damages

Application of Louisiana's well-established damages framework here necessarily turns upon the circumstances of each property owner.  For a property owner who has already remediated the property, he is entitled to either remediation costs or diminution in value.  So too for a property owner who can still remediate, except his remediation cost is yet unknown and will thus be subject to an estimation.  But a property owner who has not remediated *and* cannot remediate is not positioned to incur any remediation costs.  To make him whole, his damages would be equal to any diminution in value in the price of the home at the time it was sold.

But Plaintiffs insist otherwise, claiming that irrespective of circumstances, all former owners should receive the formula adopted by this Court for current owners.  But the formula

---

[2] *Corbello v. Iowa Prod.*, 2002-0826 (La. 2/25/03, 7–8), 850 So.2d 686, 694, *as clarified on reh'g* (6/20/2003) (contrasting Louisiana damages law for tort versus contract cases) (citing *Cutrer v. Illionois Central Gulf R. Co.*, 581 So. 2d 1013, 1020, 1021 (La. Ct. App. 1st Cir. 1991) (citing *Mouton v. State of Louisiana*, 525 So. 2d 1136, 1143 (La. Ct. App. 1st Cir.), *writ denied*, 526 So.2d 1112 (La. 1988))); *see also BellSouth Telecomms., Inc. v. Citizens Utilities. Co.*, 962 F. Supp. 79, 81 (E.D. La. 1996) (Fallon, J.) (depreciation considered when damages would place plaintiff in a better position than before the accident).

does not apply to, and was never intended to apply to, former owners.  That's because it is an estimate of what it *will* cost to repair the property—a task a former owner cannot, and will not, undertake.  *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 2017 U.S. Dist. LEXIS 609114 at *75 (stating that the formula is "the amount it will cost to remediate the properties"); *id*. at *17, *47 (describing the formula as a "remediation estimation methodology," and the formula's output as an "estimation of remediation costs").

Nor is there any basis in Louisiana law for applying the formula to former owners. Indeed, Louisiana law firmly recognizes that, when the property is no longer owned by the plaintiff, recovery is limited to the value of the property at the time of the wrongful act.  *See Dual Drilling Co. v. Mills Equip. Investments, Inc*., 98-0343 (La. 12/1/98), 721 So. 2d 853, 858 (citing *Quealy v. Paine, Webber, Jackson & Curtis, Inc.*, 475 So. 2d 756, 762 (La. 1985); *Importsales, Inc. v. Lindeman*, 231 La. 663, 92 So. 2d 574, 575 (La 1957)).  Given that former owners have ***not*** incurred, and cannot reasonably be expected to incur, any costs for remediation and that the property's value before and after the damage can be reasonably determined, damages "suitable to that case" (PSC Mem. at 16) must be limited to actual damages sustained (i.e., the difference in the value of the property before and after the damage), calculated on a fair market value basis.

Take, for instance, the Priority Claimant identified in the PSC's Motion, Mary Haindel. Rec. 22155, at pp. 9-12.  Assume Ms. Haindel is the relevant "former owner" and then sold her property on November 10, 2010, aware of the Chinese drywall at that time but sold the property before remediation.[3]  As the Louisiana Supreme Court has recognized, when the damaged condition of the property is known, it is taken into account in negotiating the purchase price,

---

[3] Deposition of Mary Haindel (Rec. 22155-2), at p. 22:16-17.

presumably resulting in the buyer paying a lower purchase price.[4]  As the former owner, Ms. Haindel cannot remediate property that she no longer owns; the new owner, who paid a reduced purchase price for the property because of the Chinese drywall is the only party in the position to remediate.  Ms. Haindel's receipt of a reduced purchase price for the property thus establishes her actual damages and basis for recovery.  At most, she may recover the difference between the fair market value of the property absent Chinese drywall and the reduced sales price due to the presence of Chinese drywall because that is the amount necessary to place her in the same position she would have been in with regard to the tort property damage claim, absent Chinese drywall.

## C.  Dispensing Damages Beyond Actual Damages Is Punitive and Contrary to Law

The central principle upon which Louisiana damages law rests is that an injured party should be placed in "as good a position as before his property was damaged, but not a superior position." *Underwriters at Lloyd's London v. OSCA, Inc*., No. 03-20398, 03-20817, 03-21021, 2006 WL 941794, at *11 (5th Cir. Apr. 12, 2006) (citing *Mossy Motors, Inc. v. Sewerage and Water Bd. of New Orleans*, 753 So. 2d 269, 280 (La. Ct. App. 4th Cir. 1999)); *see also Boston Old Colony Ins. Co. v. Tiner Associates Inc*., 288 F.3d 222, 231 (5th Cir. 2002) (citing *Coleman v. Victor*, 326 So. 2d 344, 346 (La. 1976)).  Punitive damages are not available in Louisiana unless expressly authorized by statute. *Warren v. Shelter Mut. Ins. Co.*, 2016-1647 (La. 10/18/17, 27); 233 So.3d 568, 586 (citing *Mosing v. Domas*, 02–0012 (La. 10/15/02), 830 So.2d 967, 973; *Ross v. Conoco, Inc*., 02–0299, p. 14 (La. 10/15/02), 828 So.2d 546, 555).

---

[4] *Eagle Pipe and Supply, Inc. v. Amerada Hess Corp*., 79 So. 3d 246, 267, 272 & 276 (La. 2011).  "With apparent damage to property, the law does not provide to the subsequent purchaser a source of profit by allowing him to negotiate a low purchase price based on the condition of the property and the right to seek damages from the tortfeasor who is responsible for the property's poor condition. With damage that is not apparent, the law does not provide the subsequent purchaser with both the right to sue for rescission of the sale, or a reduction in the purchase price, and the right to sue for damages against the tortfeasor." *Id.* at 276.

The "objective under Louisiana civil law is to oblige the wrongdoers *only* to repair the full extent of damage done by them, and not ever to punish the wrongdoers, no matter how shameful or outrageous their conduct." *Scott v. Am. Tobacco Co.*, 2009-0461 (La. Ct. App. 4th Cir. 4/23/10), 36 So. 3d 1046, 1056 (emphasis in original). While Defendants contest the PSC's characterization of their actions, the fact remains Louisiana does not allow plaintiffs to deploy damages in the very manner the PSC seeks to do here: as a punishment. *Id.* That is the case "no matter how shameful or outrageous the[] conduct." *Id.* Accordingly, Plaintiffs have no legitimate basis to seek an award of formula damages as punishment, rather than compensation for actual damages.

### D. The PSC Cannot Justify An Award of Damages Under the Remediation Formula Based on *Germano*

In support of its contention that this Court should award former owners damages under the April 21, 2017 formula, the PSC relies on this Court's award of damages to former owners in *Germano*. Of course, *Germano* involved only Virginia properties, not Louisiana properties. As such, this Court did not address, and was not called upon to address, Louisiana's limitations on tort recovery for damage to immovable property. Seemingly recognizing as much, the PSC resorts to maxims and appeals to equity to implore this Court's departure from settled Louisiana law. Even then though the PSC goes too far. Indeed, contrary to the PSC's suggestion, this is not a situation of a "wrong without a remedy." Louisiana recognizes both a right of action as well as a measure of damages. The PSC apparently just prefers a *different* measure of damages than that dictated by Louisiana law. Resort to equity in the face of applicable law is error.

## IV.   ANY FORMER OWNER'S RECOVERY RIGHTS CANNOT BE DECIDED IN THE ABSTRACT

There is, of course, a threshold issue—one that counsels in favor of awaiting resolution of this motion until, at a minimum, the completion of fact discovery.  That issue is whether a former owner can recover remediation damages even though he may not own the personal claim to recover for drywall damage, nor may he have owned the property at the time of the drywall installation.  Citing Louisiana's subsequent purchaser doctrine—a legal principle that implicates standing but does not change the proper measure of damages under Louisiana law[5]—the PSC contends "former owners" can recover without regard to claim ownership based on the alleged equities of the litigation.  CNBM and the BNBM Entities submit these fundamental questions cannot be resolved at this juncture and certainly not without considering the facts in evidence.

At the core of the PSC's request is a recognition of the array of factual circumstances before the Court.  Some of the named plaintiffs are the purchasers of Chinese drywall who installed it in their homes during renovations.  Other named plaintiffs are subsequent purchasers, i.e., persons who acquired the property from a predecessor after Chinese drywall had been installed.  Still other named plaintiffs are intermediate owners of the property, i.e., people who purchased property with Chinese drywall from a prior seller and later sold that property to another.  The PSC seeks resolution of any former owner's entitlement to damages without distinguishing among these different categories.

Despite this diversity in claim ownership, the *Amorin* Complaint asserted claims "on behalf of all owners and residents of the subject properties" (Civ. 11-1395, Rec. 1, Complaint, ¶3) without setting forth any well-pleaded factual allegations as to who owned the property when

---

[5] Defendants agree that Louisiana's subsequent purchaser doctrine applies to this case, and that this doctrine impacts the viability of certain claims and recovery rights.  After completion of fact discovery, which deadline is currently April 12, 2019, Defendants intend to timely file a motion addressing that issue.

the damage was inflicted.  Nor has the PSC attached evidence on that issue to this Motion. Nonetheless, the PSC asks this Court to award former owners (an unidentified subset of Amorin plaintiffs) damages based on the April 21, 2017 remediation formula, regardless of the fact that a former owner cannot remediate the property, that such damages may exceed the fair market value of the property, and that such damages may exceed any actual damage sustained by the former owner.  The PSC's motion cannot, however, be decided in the abstract.

This fundamental issue of standing or claim ownership cannot be ignored, even in a Rule 55 context.  *See Wooten v. McDonald Transit Assoc., Inc.*, 788 F.3d 490, 496 (5th Cir. 2015) (default judgment unassailable only insofar as it is supported by well-pleaded allegations assumed to be true, but not conclusory allegations or conclusions of law) (citations omitted); *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206-07 (5th Cir. 1975) (pleadings must demonstrate sufficient basis to support default judgment) (citation omitted).  In the absence of the necessary well-pleaded factual allegations regarding ownership of the personal right of action to recover for property damages, the Amorin Complaint is deficient and cannot support a formula remediation award to "former owners."  This Court cannot simply assume that every "former owner" owns the property damage claim simply because he or she, at some point, owned and sold the property.  Without the required foundational allegations in the Complaint as to who owned the property at the time damage was inflicted or whether any former owner's Act of Sale transferring the property included or omitted an express assignment of the personal right to bring such a claim, this Court cannot resolve the PSC's motion at this time.

Even assuming the PSC could cure the Complaint's deficiencies by introducing evidence with its motion in connection with a Rule 55(b) hearing,[6] the PSC has failed to do so.  At a

---

[6] The Fifth Circuit has not resolved the issue of whether a fatally defective pleading may be corrected by proof taken at a default hearing.  In *Wooten v. McDonald Transit Associates, Inc.*, 775 F.3d 689, 695, *opinion withdrawn and*

minimum, because this issue should not be decided in the abstract, the Court should decline to issue an advisory opinion and instead await factual resolution of claim ownership before resolving the PSC's motion addressing the measure of compensatory damages.

## V.   CONCLUSION

The PSC fails to recognize that Louisiana limits recovery of compensatory damages to actual damage sustained.  Tort recovery on a former owner's property damage claim is thus limited to the difference in the property's value before and after the damage, particularly when the plaintiff cannot actually repair the property and the formula's result would exceed not only the value of the property but also any actual damage sustained by the former owner. The PSC's invocation of equity is but a thinly-veiled end-run around Louisiana law, which precludes using damages "to punish the wrongdoers."  Moreover, nothing in the Complaint or attached to the PSC's current motion establishes that any former owner is entitled to recover damages, which must be established even in a Rule 55 context.  On that basis alone, the PSC's Motion should be denied, or at least delayed.

---

*superseded on reh'g*, 788 F.3d 490 (5th Cir. 2015), the court initially concluded that the district court erred in entering a default judgment based on a deficient complaint, but that the live hearing testimony provided sufficient evidence of each of the elements of the claim to support the entry of default.  On rehearing, the Fifth Circuit vacated that opinion and held that "the complaint itself met the minimum standards of Rule 8" so that consideration of the testimony at the hearing served the limited purpose of establishing the truth of the allegation under Fed. R. Civ. P. 55(b)(2)(C), and therefore did not implicate the *Nishimatsu* quandary.  *Id.* at 498 (citing *Nishimatsu*, 515 F.2d at 1206 n. 5).

Respectfully submitted,

*/s/ L. Christopher Vejnoska*

James L. Stengel (NY Bar No. 1800556)
Xiang Wang (NY Bar No. 4311114)
ORRICK, HERRINGTON & SUTCLIFFE
LLP
51 West 52nd Street
New York, NY, 10019
Tel:  212-506-5000
Email:  jstengel@orrick.com
        xiangwang@orrick.com

L. Christopher Vejnoska (CA Bar No. 96082)
ORRICK, HERRINGTON & SUTCLIFFE
LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105
Tel:  415-773-5700
Email:  cvejnoska@orrick.com

*Counsel for CNBM and BNBM Entities*

Ewell E. Eagan, Jr. (LA Bar No. 5239)
Donna Phillips Currault (LA Bar No. 19533)
GORDON, ARATA, MONTGOMERY,
  BARNETT, MCCOLLAM, DUPLANTIS
  & EAGAN, LLC
201 St. Charles Avenue, 40th Floor
New Orleans, LA 70170-4000
Tel: (504) 582-1111 Fax: (504) 582-1121
Email: eeagan@gordonarata.com
        dcurrault@gordonarata.com

Harry Rosenberg
LA Bar No. 11465
PHELPS DUNBAR LLP
365 Canal St., Suite 2000
New Orleans, LA  70130
Phone: (504) 566-1311
Fax: (504) 568-9130
Email:  Harry.Rosenberg@Phelps.com

*Counsel for BNBM Entities*

*Counsel for CNBM Entities*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing pleading has been served on Plaintiffs'
Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail
and email and upon all parties by electronically uploading the same to File & Serve in
accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the
Clerk of Court of the United States District Court for the Eastern District of Louisiana by using
the CM/ECF System, which will send a notice of electronic filing in accordance with the
procedures established in MDL 2047 on April 12, 2018.

<u>/s/ L. Christopher Vejnoska</u>

L. Christopher Vejnoska (CA Bar No. 96082)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105
Tel:  415-773-5700
Fax: 415-773-5759
Email: cvejnoska@orrick.com

*Counsel for CNBM Co. Ltd., BNBM (Group) Co. Ltd., and
BNBM PLC*