**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 |
| THIS DOCUMENT RELATES TO:<br>*Amorin v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.*, Case No. 2:11-cv-01395 (E.D. La.) (LA) | SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |

**PLAINTIFFS' MEMORANDUM IN REPLY TO DEFENDANTS'**
**PROPOSED TRIAL PLAN FOR LOUISIANA AMORIN CASES**

**MAY IT PLEASE THE COURT:**

Plaintiffs' original memorandum in support of their proposed trial plan identified four distinct issues as to which the parties fundamentally disagree:

1. The means of resolving product i.d. issues;

2. The identification of trial plaintiffs from among the Louisiana *Amorin* cases currently subject to discovery;

3. The pretrial activity timetable for these cases; and

4. The conduct of trials by "flights," as opposed to "one at a time."

Belying the opening statement in Taishan's brief that now "[a] mere 60 days separate the parties' respective trial proposals," [RD 22214 at p. 1.], Defendants' trial plan makes it clear that the above key differences remain to be resolved by the Court.

Defendants' proposed plan also confirms a more fundamental, underlying difference in how the parties view the adjudication of the Louisiana *Amorin* cases. Defendants invoke the right to participate in selecting "priority" trial cases from the current discovery pool, leaving the remaining claimants still waiting for deadlines and trial dates to be assigned at some future time. This approach, akin to a traditional bellwether trial plan, has been justified in Multi-District Litigation based on the parties' need to gain instruction from representative verdicts and use that information to facilitate global settlement discussions. But the Rule 55(b)(2) damages hearings which now must be conducted for Louisiana *Amorin* cases, are not susceptible to a bellwether trial model. The triable issues of claimant status, product i.d., and quantum[1] are not ones as to which the parties require exhaustive education or instruction at this juncture. Neither are trial results in "representative" cases necessary if the parties were truly and mutually committed to pursuing global settlement resolution. All 39 Louisiana *Amorin* cases now at issue and on remand from the consolidated MDL proceedings, will have been subject to full discovery by the end of June. These post-Katrina, post-CDW contamination property owners have waited long enough for their day in Court, and none should be left in a continuing queue so that Defendants can be allowed to defend only a so-called "priority" segment of the whole.

On the overlapping issue of product identification, Defendants object to Plaintiffs' proposal that a Magistrate/Special Master be assigned the initial task of determining whether each of the Chinese drywall brands at issue was manufactured by Defendants, as part of the broader task of calculating remediation damages for all Louisiana cases entitled to those damages under the Court-

---

[1] In the Order setting forth the process for the selection and discovery of the Louisiana *Amorin* cases, Your Honor expressly limited discovery to only 3 issues: product i.d., claimant status and square footage. *See* 10/12/18 Order [R.D. 21847], at p. 10.

approved remediation formula.  But the objections which Defendants raise are neither logical nor consistent with case management efficiency.  They chiefly complain that the recently-conducted Special Master process in Florida in addressing product identification and the calculation of remediation damages, has turned out to be more "complicated" than expected, and a process which "creates inefficiencies."  (R.D. 22214 at pp. 8 & 9).  Yet it is undeniable that the process in Florida has created an available and relevant record on product identification which can be utilized here, and utilized in a Special Master process which no doubt can be made more streamlined and efficient based on the Florida experience.  The Plaintiffs in Florida, as already noted to this Court in Plaintiffs' original Trial Plan brief (R.D. 22153-1, at p. 5 n. 2), have secured the testimony of a Defendant representative on largely the same drywall product brands at issue in these proceedings.  That two-day transcript, along with brand-specific photographs and documentation, are a matter of record by virtue of the evidentiary hearing before the Florida Special Master.  The latter has made a recommendation to which the parties now object, and which then will be reviewed by District Judge Cooke.[2]

Furthermore, Defendants' complaint that the Florida process proved inefficient is more ironic than accurate, since they themselves presented no less than <u>seventeen</u> categories of "contests" to the application of the remediation formula to the cases at issue in Florida.  If they were to pursue the same strategy here in an apparently continuing effort to adjudicate this litigation

---

[2] In fact, the Special Master's report in Florida was far more favorable to Defendants than Plaintiffs, and Plaintiffs do intend to object to the report.  Most problematic in Plaintiffs' view was the Special Master's decision to place on Plaintiff property owners in this default case a "preponderance of the evidence" burden of proof as to each and every product brand, even though the allegations of complaints under FRCP 55 have been admitted by Defendants, and should give rise to what Plaintiffs' believe is at least a rebuttal presumption that any given brand in question was manufactured by Defendants.

one property and one individual claimant at a time, it is Plaintiffs' expectation that the process would not be undermined in this way but instead protected with proper guidelines from the Court.

In any event, simple logic dictates that the question of product identification, as well as calculations based on the appropriate application of the remediation formula, are best addressed and resolved on as broadly-applicable a basis as possible.  Whether a given drywall brand was or was not manufactured by the Defendants is surely a question to be answered on a product-by-product and not a property-by-property basis.[3]  Using a Magistrate/Special Master to process the product i.d. inquiry needed in Louisiana – even as the Court allows case-specific motion practice in advance of the hearings – is thus an idea buttressed, not refuted, by the Special Master experience in Florida.  And, tellingly, Defendants offer no viable alternative to the resolution of this common, overlapping issue.  By adopting Plaintiffs' plan, the Court appropriately will eliminate the need to try product i.d. one case at a time, and just as appropriately will exercise judicial efficiency by building on what has already occurred in the Florida proceedings.

The Defendants CNBM/BNBM offer an additional objection to Plaintiffs' proposed Magistrate/Special Master process, but it likewise is without merit.  They complain that the status of a given claimant (as either a current or former owner) first must be resolved in order to properly apply the method of calculating remediation damages.  Plaintiffs do not disagree.  But the argument

---

[3] As Plaintiffs acknowledge in their original Trial Plan brief, there are only two drywall brands among the 39 selected cases, Dun and Crescent City, which are not an issue in Florida.  For this reason, some additional discovery as to these two brands might be needed in advance of the evidentiary hearing before a Magistrate/Special Master.  Otherwise, a record has been developed in Florida which is both transferable and relevant herein.

entirely sidesteps the question whether the overlapping issue of product identification, as well as the formulaic calculation of remediation amounts for those categories of claimants found deserving to have the formula applied, is best and most efficiently handled through a Magistrate/Special Master process.

Defendants finally complain that the Court already has rejected an earlier Plaintiffs' proposal of a Special Master process, which they believe ends the debate. But a key difference in these proposals is their timing. When Plaintiffs initially proposed a Special Master process to address class-wide damages, etc., relevant discovery and an evidentiary hearing before a Special Master had not occurred in parallel proceedings. There specifically was no existing record for the Florida cases on remand which can be referenced in resolving: (a) product identification as a predicate to a given claimant's recovery under 55(b)(2); and (b) the applicable offsets to remediation damages and the calculation of those damages under the Court-approved formula in cases found entitled to recover under the formula. Plaintiffs do not agree that the Court has precluded the services of a Special Master or Magistrate to efficiently address these issues, any more than it would be reasonable to proceed herein as if the Special Master activities in Florida had never occurred.

On the selection of trial cases, Defendants construe the Court's 10/12/18 Order as mandating their participation in choosing a "subset" of "priority" trial cases from the current discovery pool. Plaintiffs respectfully submit that no such judicial mandate exists, and that, in any event, no such mandate would be warranted under the circumstances now prevailing. For the reasons already discussed, a role by Defendants in electing which cases from the discovery pool should be tried, is neither necessary nor relevant if the 55(b)(2) hearings to be conducted are part

of a process to resolve <u>all</u> cases expeditiously, rather than a process to resolve only some "instructive" cases in order to discuss settlement.  To put it bluntly, Defendant "buy-in" on which Louisiana cases get tried is simply not necessary, much less desirable, in this phase of the remanded proceedings.

Similarly, the Court's directive in its 2018 Order that cases from the discovery pool would "be selected for trial at a later date," need not be taken to mean that less than all of the cases in the pool are deserving of trial dates at this time.  All 39 of the discovery pool cases are being currently worked up for trial pursuant to the same discovery deadlines.  To set only certain "priority" cases for trial and leave others still waiting for a merits hearing in a long-delayed litigation process, works an unnecessary prejudice on the cases not fortunate enough to be deemed "priority" matters.  Plaintiffs submit that all 39 cases in the pool are "priority" matters at this point, the needed pretrial discovery in all being due for completion in late June.  Plaintiffs' counsel are prepared to present the relevant Rule 55(b)(2) evidence in these cases starting as early as this Fall.  Defendants, represented by large firms with significant resources, are not prejudiced by having to defend all cases in the same time frame.

The respective trial dates by which the parties' plans differ (September for Plaintiffs, as opposed to December for Defendants) are distinguishable by virtue of the motion practice Defendants insist upon prior to the 55(b)(2) hearings in these cases.  Under Defendants' plan, first *Daubert* motions, then other case-specific motions, then other motions *in limine,* will be staged for briefing and hearings over a period from late July 2019 through late October 2019.  Remarkably, this three-month period under Defendant's plan does not even apply to the entire discovery pool but only to 10 "priority" trial cases.  There is no justification for such a prolonged schedule.  The

Court, as noted, has limited discovery in these cases to claimant status, product identification and square footage (for remediation cost calculation).  A parallel Special Master process will expedite the resolution of product i.d. issues as well as the scope of the application of the remediation formula which has been approved by the Court.  Whatever case-specific motion practice is justified is likewise limited by such triable issues.  Again, the Defendants have vast resources at their disposal; and it is Plaintiffs' expectation that the Court itself will not be unduly burdened by a more concentrated, period of time in which to hear and decide motions.[4]  Where the Rule 55(b)(2) issues and evidence are limited, the triable and legal issues likewise are limited.  In these matters, there are only so many arguments and "contests" which can be justified as necessary to present through Defendant motion practice.

Finally, the parties' trial plans differ on the issue of whether trial should proceed by "flights" or, as Defendants propose, "one at a time."  In their effort to endorse the single plaintiff trial model, Defendants invite the Court to read excerpts from the deposition testimony of various Plaintiffs in the discovery pool.  Presumably, Defendants purport to show individualized differences between and among the cases.  One Plaintiff seeks personal injury damages.  Another Plaintiff requires an interpreter.  Another Plaintiff experienced bankruptcy.  This catalogue of individual circumstances might even expand, if Defendants chose to continue dancing on the head of this pin.  But circumstantial "differences" between and among Plaintiffs should not be magnified

---

[4] The undersigned is familiar with this Court's prior history in MDL bellwether trials.  In those matters, counsel observed the Court to hear and make rulings on as many as 50 motions *in limine* in a single Plaintiff bellwether trial.  Typically, many of these motions are simply alerting the Court to evidentiary problems, with rulings can be deferred until the time of trial.  These are not the kind of pretrial motions which require extensive briefing or argument, unless a challenging legal issue is presented; and if there are any challenging legal issues embedded in the motion practice for these cases, those challenges should be few in number and limited in scope.

beyond reason when the scope of these hearings has been narrowly tailored by Rule 55(b)(2). Where non-pecuniary/non-remediation damages are sought, the factfinder will make a determination as to the nature and amount of such damages based on the testimony of one or two Plaintiffs or family members.  Defendants then will cross-examine.  The credibility of witnesses will be a matter for trial.  These cases are not made complex simply because they presented individualized "stories" to be told; and there is simply no reason why these hearings cannot be accomplished by "flights" of claimants, just as the Court previously has suggested to the parties. Plaintiffs will be prepared to discuss these flights with more specificity at the April 23 hearing.

For the foregoing reasons, Plaintiffs respectfully propose that their Trial Plan be adopted in this matter.

Dated: April 18, 2019                              Respectfully submitted,


BY*: ____*/s/ Leonard A. Davis*____
        Russ M. Herman (LA Bar No. 6819)
        Leonard A. Davis (LA Bar No. 14190)
        Stephen J. Herman (LA Bar No. 23129)
        Herman, Herman & Katz, LLC
        820 O'Keefe Avenue
        New Orleans, LA 70113
        Phone: (504) 581-4892
        Fax: (504) 561-6024
        ldavis@hhklawfirm.com
        *Plaintiffs' Liaison Counsel*
        *MDL 2047 and Class Counsel*

Arnold Levin
Fred S. Longer
Sandra L. Duggan
Levin Sedran & Berman LLP
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*
*MDL 2047 and Class Counsel*

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Robert M. Becnel
Law Office of Robert M. Becnel
425 W. Airline Highway, Suite B
Laplace, LA 70068
Phone: (985) 359-6101
Fax: (985) 651-6101
robbecnel@aol.com

Salvadore Christina, Jr.
Becnel Law Firm, LLC
425 W. Airline Highway, Suite B
Laplace, LA 70068
Phone: (985) 536-1186
Fax: (985) 536-6445
schristina@becnellaw.com

Peter Prieto
Podhurst Orseck, PA
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
pprieto@podhurst.com

Bruce William Steckler
Steckler Gresham Cochran
12720 Hillcrest Road, Suite 1045
Dallas, TX 75230
Phone: (972) 387-4040
Fax: (972) 387-4041
bruce@stecklerlaw.com

Patrick Montoya
Colson, Hicks, Eidson
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
patrick@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
Echsner & Proctor, PA
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
The Lambert Firm
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@thelambertfirm.com

Pete Albanis
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Myers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
palbanis@forthepeople.com

James R. Reeves, Jr.
Reeves & Mestayer, PLLC
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@rmlawcall.com

10

Christopher A. Seeger
Seeger Weiss, LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5002
dan@wbmllp.com

Richard J. Serpe
Law Offices of Richard J. Serpe
Crown Center, Suite 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com

Victor M. Diaz, Jr.
V.M. Diaz and Partners, LLC
119 Washington Ave., Suite 402
Miami Beach, FL 33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

Anthony D. Irpino
IRPINO AVIN HAWKINS LAW FIRM
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

Gerald E. Meunier
Gainsburgh, Benjamin, David,
Meunier & Warshauer, LLC
2800 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2800
Phone:  (504) 522-2304
Fax:  (504) 528-9973
gmeunier@gainsben.com

11

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W., Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to File & Serve Xpress (formerly LexisNexis File & Serve) in accordance with Pre-Trial Order No. 6, which will serve a notice of the uploading in accordance with the procedures established in MDL 2047, on 18th day of April, 2019.

/s/ Leonard A. Davis
Leonard A. Davis
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com
Plaintiffs' Liaison Counsel
MDL 2047

*Co-Counsel for Plaintiffs*