## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 |
| THIS DOCUMENT RELATES TO:<br>*Amorin v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.*, Case No. 2:11-cv-01395 (E.D. La.) (LA) | SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |

### PLAINTIFFS' STEERING COMMITTEE'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR AN ORDER APPLYING THE REMEDIATION DAMAGES FORMULA TO THE CLAIMS OF FORMER OWNERS OF AFFECTED PROPERTIES[1]

At every turn, Defendants seek to reduce their overall financial exposure caused by their introduction of defective Chinese drywall into the stream of commerce in the United States. Defendants' Opposition to the PSC's Motion is no different.

As a result of the financial, emotional and physical stress caused by the presence of defective Chinese drywall in their homes, many homeowners were forced to make difficult decisions. In many cases, homeowners had no choice but to abandon their homes and possessions, unable to fix the toxic Chinese drywall problem themselves. The obvious truth is that most homeowners could not afford to properly remediate their properties, and some were forced out of their homes not by choice, but because they simply could not afford to stay. Now, Defendants want to use the fact that these homeowners were required to leave their homes prior

---

[1] The Plaintiffs' Steering Committee ("PSC") filed its Motion on March 15, 2019. *See* Rec. Doc. 22155 (the "Motion").

to receiving the money required to fix them to their tactical advantage – as a new reason to abandon any sort of collective action and instead proceed with a series of individualized and costly inquiries.

As this Court has previously noted, "Defendants' alternative amounts to cruel and unusual treatment of innocent homeowners.  To now require individuals who have been displaced for more than six years [as of the time of the Class Damages Hearing in 2015] to pursue individual claims and incur individual costs in a case where liability and fault have been established is not only an imposition on the courts, but also and more importantly, a serious injustice to those who have been harmed by the Defendants' actions."[2]  Plaintiffs' alternative moves this case toward an efficient, fair and reasonable resolution.

## I.     APPLICATION OF THE CLASS-WIDE REMEDIATION DAMAGES FORMULA IS CONSISTENT WITH LOUISIANA LAW.

It is well-settled in Louisiana, and Defendants do not dispute, that "'[w]hen property is damaged through the legal fault of another, the primary objective is to restore the property as nearly as possible to the state it was in immediately preceding the damage . . . .'"[3]  *Roman Catholic Church of Archdiocese of New Orleans v. Louisiana Gas Serv. Co.*, 618 So. 2d 874, 876 (La. 1993) (quoting *Coleman v. Victor*, 326 So. 2d 344, 346 (La. 1976)).  Defendants concede that "former" owners retain their right to pursue their claim for property damages in this action under the Louisiana subsequent purchaser rule.[4]  However, they strongly contest the measure of

---

[2] *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2017 WL 1421627, *22 (E.D. La. Apr. 21, 2017).

[3] *See* Taishan's Opposition to the PSC's Motion to Apply the Remediation-Damages Formula to the Claims of Former Owners of Affected Properties Located in Louisiana ("Taishan's Opp.") [Rec. Doc. 22212] at 6-7.  CNBM and BNBM Entities' ("BNBM") Memorandum of Law in Opposition to the PSC'S Motion ("BNBM's Opp.") [Rec. Doc. 22216] at 5-6 (discussing damages that former owners are entitled to).

[4] *See* Taishan's Opp. at 5; BNBM Opp. at 5-6.

those damages claiming that awarding the "diminution-in-value" is the appropriate measure of damages because "former" owners can no longer remediate their properties.[5]

While Plaintiffs would not dispute that "diminution-in-value" may be one means of assessing damage done to real property if a plaintiff *elected* to pursue such damages, that is not a decision for the Defendants to make.  *See Roman Catholic Church*, 618 So. 2d at 879-80 (describing the pursuit of restoration costs versus diminution-in-value as plaintiff's "election"). The normal measure of damages "'is the cost of restoring the property to its former condition.'" *Id*. at 876 (citing *Coleman*, 326 So. 2d at 346-47).  That is the measure of damages that Plaintiffs seek here.

Defendants hinge their entire legal analysis on language in cases that say that the proper measure of damages is the cost of restoration when the repair costs "may be reasonably incurred" (citing *Roman Catholic Church*, 618 So. 2d at 879), or the property "can be adequately repaired" (citing *Corbello v. Iowa Prod*., 850 So. 2d 686, 695 (La. 2003) and *Coon v. Placid Oil Co*., 493 So. 2d 1236, 1240 (La. Ct. App. 1986)).[6]  According to Defendants' logic, because the homeowners in question no longer own their homes, they cannot "reasonably incur" repair costs nor can they "adequately repair" their properties.  Defendants' argument misses the mark by completely misreading these cases and their import.

In *Roman Catholic Church*, the Louisiana Supreme Court reviewed cases in other jurisdictions that limited recovery for property damage based upon the fair market value of the damaged property and largely rejected that approach.  *See Roman Catholic Church*, 618 So. 2d at 876-78.  The court found that "'[l]imiting the costs of repairs to the diminution in value of the

---

[5] *See* Taishan's Opp. at 5; BNBM Opp. at 5-6.

[6] *See* Taishan's Opp. at 5; BNBM Opp. at 3-4 & n.2.

property appears to fly in the face of [the rule requiring that the injured party be restored to his former position]." *Id*. at 877 (quoting *"L" Invs., Ltd. v. Lynch*, 212 Neb. 319, 322 N.W. 2d 651, 656 (1982)) (alteration in original).  The question before the court then moved to whether there should be limits on the amount of repair costs that are recoverable: "e.g., the repair costs must be 'practical' and 'reasonable'" – in other words, not excessive in relation to the overall value of the property. *See id*. at 879.  Ultimately, the Louisiana Supreme Court found that ***a person is entitled to the cost of restoration*** that "has been or may be reasonably incurred," the latter phrase referring to the ***cost of the repairs in relation to the value of the house*** and not referring, as Defendants would suggest, to whether the owner still had the ability to repair the house. *See id*. at 879-80.  Defendants' misreading ignores the key word in the analysis – "reasonably."

Defendants' discussion of when a property can be "adequately repaired" is similarly unavailing.  In both *Corbello* and *Coon*, the owner still owned the properties, so the courts were not addressing issues with respect to former owners. *See Corbello*, 850 So. 2d at 692-93, 699; *Coon*, 493 So. 2d at 1238-39.  In fact, there is nothing in any case cited by Defendants to suggest that the reference to a property's ability to "be adequately repaired" refers to ownership status but rather, it appears clear that it refers to the fact that some damage to property simply cannot be repaired.  In other words, reading these cases and the underlying discussions together, there are situations where a property cannot be brought back to its current condition (*i.e.*, cannot be ***adequately*** repaired), irrespective of whether the owner is still living at the property, and therefore, in those instances, an award of the "difference in the value of the property before the damage occurred and just afterwards" would be the appropriate measure of damages.  That is not

4

the case here where no one is claiming that had the Plaintiffs been promptly paid the cost of remediation, the house could not have been repaired.[7]

Despite BNBM's efforts to suggest otherwise, *Roman Catholic Church* supports Plaintiffs' position.[8]  The court in *Roman Catholic Church* made clear that in cases involving real property, people's homes, the Louisiana "constitution does not simply require that the owner of a condemned or damaged property be compensated with the fair market value of the property taken and severance damage to his remainder, but that he be 'compensated to the full extent of his loss' and 'placed in as good a position pecuniarily as [he] enjoyed prior to the taking.'" *Id*. at 876 (quoting *State v. Bitterwolf*, 415 So. 2d 196, 199 (La. 1982) (internal citation omitted).  After noting that limiting damages to the diminution-in-value can "fly in the face" of the rule requiring that the injured property be restored to its original condition, the court stated that there may be times where the diminution-in-value may be minimal based upon the damage in question but that would not be a reason to "excuse the tortfeasor from any liability" and to limit recovery to those damages "'would be to decide that by the wrongful act of another, an owner of land may be compelled to accept a change in the physical condition of his property, or else perform the work of restoration at his own expense.'" *Id*. at 877 (internal citation omitted).

---

[7] Other cases cited by BNBM are equally unavailing.  *See* BNBM's Opp. at 5.  *Dual Drilling Co. v. Mills Equip. Investments, Inc*., 721 So. 2d 853 (La. 1998), did not deal with real property but instead involved a conversion claim where a company had impermissibly dismantled an off-shore drilling rig.  Because the rig had been dismantled it could not be fixed but the damages awarded were equivalent to the cost of refurbishing an existing rig (this actually supports Plaintiffs' position in this case).  *Id*. at 858.  Similarly, *Importsales, Inc. v. Lindeman*, 92 So. 2d 574, 575 (La. 1957), is also a conversion case where the court said that the appropriate measure of damages for conversion is the value of the property at the time it was taken. 92 So. 2d at 669-70.  This has no applicability to this real property case where homeowners had their property damaged by Defendants.

[8] BNBM Opp. [Rec. Doc. 22216] at 4.

After making clear that the decision over which damages to pursue was the choice of the aggrieved property owner, the court noted that there may be times where the diminution-in-value may be the appropriate measure of damages where "the cost of restoring the property in its original condition is disproportionate to the value of the property or economically wasteful." However, those limits are only triggered when repair costs are unreasonably high and even then, do not apply when: (1) "there is a reason personal to the owner for restoring the original condition;" **or** (2) "there is reason to believe that the plaintiff will, in fact, make the repairs." *Id*. at 879-80. The court also raised the importance of the personal nature of someone's home, like the property in question here, finding that: "if a building such as a homestead is used for a purpose personal to the owner, the damages ordinarily include an amount for repairs, ***even though this might be greater than the entire value of the building***." *Id*. (emphasis added)."[9]

Defendants' position boils down to an argument that it is unfair that remediation damages would be paid to someone who is not going to use the money to remediate the property. However, *Corbello* flies directly in the face of that argument. The plaintiffs themselves in *Corbello* had argued that "it is not unusual that a plaintiff who recovers money is not required to use that money a certain way." *Corbello*, 850 So. 2d at 699. As the Louisiana Supreme Court acknowledged, ***there is no general obligation to actually fix damaged property even if a person is awarded remediation damages***. *See id.* at 698-700; *see also State v. Louisiana Land and*

---

[9] BNBM's claim that "the Court allowed the full remediation damages to stand because the Church had in fact already spent that amount for restoration," BNBM's Opp. [Rec. Doc. 22216] at 4, provides no insight into the court's analysis and has little bearing on the issues here. There, the fact that they had repaired ended the conversation over the value of the property, but it was not a prerequisite to the recovery of the repair damages. *Roman Catholic Church*, 618 So. 2d at 880.

*Exploration Co.*, 110 So. 2d 1038, 1048-49 (La. 2013) (discussing *Corbello*).[10]   Here,

Defendants seek to impose such an obligation as a justification for imposing a different measure

of damages.

Louisiana law is clear that the Defendants are liable for the value of restoring the

damaged property to its original condition immediately prior to the damage.  By receiving the

money required to restore the homes to their original state, the homeowners would have been

made whole with respect to their real property damage, plain and simple.  Now, Defendants

claim those very same homeowners would be overcompensated if they received that exact same

amount of money because, in truth, Defendants object that these particular claimants are not

going to spend the money actually fixing their home.[11]   Indeed, BNBM acknowledges that "'the

objective under Louisiana civil law is to oblige the wrongdoers *only* to repair the full extent of

the damage done by them," but then astonishingly argues that ordering them to pay the cost "to

repair the full extent of the damage done by them" is punitive.[12]  This position is untenable.

## II.    APPLICATION OF THE CLASS-WIDE REMEDIATION DAMAGES FORMULA IS ALSO THE EQUITABLE SOLUTION.

Defendants attempt to paint Plaintiffs' argument as one that is purely grounded in equity.

While Defendants claim that equity has no power to change the law, they ignore that the law, as

---

[10] The legislature subsequently passed laws pertaining to remediating property with respect to oil pollution and potential contamination of ground water – changes that are not relevant to this *Chinese Drywall* litigation.  *See Louisiana Land and Exploration Co.*, 110 So. 2d at 1040-41, 1049-50.

[11] BNBM's analysis of Plaintiff Select Case Ms. Haindel is flawed for the same reason.  The entire argument rests upon the faulty premise that if you cannot repair the property, you cannot receive remediation damages.  *See id.* at 6.

[12] Taishan's Opp. [Rec. Doc. 22212] at 3; BNBM Opp. [Rec. Doc. 22216] at 7.

described above, supports Plaintiffs' position.  It so happens that, even if the law were unclear,

the equities would favor applying the remediation damages formula to all owners.[13]

While Defendants' position is presented in the guise of being more "fair," their

"diminution-in-value" proposition is really only intended to delay resolution of these claims of

"former" owners indefinitely and make it difficult for each homeowner to prove their damages

absent costly expert analysis.[14]  Defendants attempt to use the "unfortunate story of [Plaintiff

Select Case] Ms. Haindel" to suggest that some "former" owners will be harmed by using the

remediation damages formula, instead of diminution-in-value, illustrates the reality of

Defendants' intentions.  Defendants note that Ms. Haindel sold her house for $110,000 after

purchasing it for $316,000 "suggest[ing] diminution-in-value damages of $206,000."  In reality,

Defendants will argue when given the chance, as they suggested in her deposition and elsewhere,

that the reduced sales price was not because of the presence of defective Chinese drywall but

instead was because of a downturn in the real estate market and/or any other array of factors

outside of their control (and responsibility).[15]  Hence, the battle of experts will begin and the

dispute will become more costly and protracted.

---

[13] Defendants also fail to address the fact that it is their own litigation misconduct that created the "former" owner status for many of the affected homeowners.  It would be inequitable to allow Defendants to benefit from their own litigation misconduct.

[14] In addition, homeowners whose homes were foreclosed upon or subject to short sale would likely be undercompensated for their losses.  Defendants will argue that the homeowner's reduction in value had nothing to do with Chinese drywall and litigate each homeowner's financial situation. *See, e.g.,* Deposition of Mary Haindel (Feb. 19, 2019), attached to PSC's Mem. in Supp. of its Motion [Rec. Doc. 22155-2] as Exhibit A, at 122:13-124:22.

[15] *See* Deposition of Mary Haindel (Feb. 19, 2019), attached to PSC's Mem. in Supp. of its Motion [Rec. Doc. 22155-2] as Exhibit A, at 129:8-14.  In Florida, Defendants have offered an economist to opine on the impact of market conditions on the fair market value on the homes of the members of the Florida *Amorin* Class. *See also* BNBM Opp. [Rec. Doc. 22216] at 6.

As Plaintiffs have noted repeatedly, the application of the remediation damages formula

will avoid the costly individualized disputes sought by Defendants.[16]  In addition to being more

efficient (and the Plaintiffs' choice), remediation costs to repair the damage caused by

Defendants' defective drywall is the most appropriate measure of damages in this case.[17]  It is

not being sought to "punish" Defendants as they claim, but rather because it most closely

approximates Plaintiffs' actual real property damages.[18]

Remediation damages accurately reflect the harm that befell all *Amorin* Class members,

even those who no longer own their homes.  There is no question that at the time these cases

were filed, and default was first entered against Taishan, a homeowner's right to have his or her

home repaired existed and a debt was owed to these homeowners at that moment.[19]  It cannot be

the law that Defendants can drag out litigation ten-plus years and then argue that a given

homeowner's relatively straightforward damages calculation (for cost of repair) no longer

---

[16] Defendants' do not dispute that their suggestion would create individualized inquiries but instead argue that such inquiries are required by Louisiana law. *See, e.g*., BNBM Opp. [Rec. Doc. 22216] at 8-10. This argument was rejected by the Court when it determined that the class-wide damages formula was appropriate. Rec. Doc. 20741, at ¶ 55.  The "ownership" distinction is a non-issue when it comes to the measure of damages.

[17] Defendants' claim that a former owner who has "incurred" the cost of remediation should be reimbursed only the actual cost of remediation is an over-simplification. *See* Taishan's Opp. [Rec. Doc. 22212] at 6 n.4.  To the extent that homeowners took steps to fix portions of their property to obviate some of the effects of Defendants toxic drywall simply so that they could live in their homes without getting sick does not render a home "remediated." A longer discussion of this issue is beyond the scope of this Motion.

[18] Taishan's Opp. [Rec. Doc. 22212] at 3; BNBM's Opp. at 6.

[19] Simply put, if Defendants had appeared in the litigation in a timely fashion and properly compensated these homeowners for the cost of repairing their properties – as Defendants concede they would have been required to do – then there would be no diminution in value to estimate (notwithstanding any stigma damages).  First, many of these "former" owners would have decided to stay in their homes.  Second, for those who would have decided to move anyway, as some would do after nearly ten years, their houses would have been sold without the presence of defective Chinese drywall thereby eliminating the need for the type of expert evaluation that Defendants now seek to impose.

applies in lieu of an expert-heavy inquiry laden, in Defendants' likely view, with an unlimited number of variables.

In addition, in Defendants' world, the classification of whether an owner is "current" or "former" is ever-changing until judgment is secured.  As the Court said when Defendants previously attempted to exclude "former" owners from the *Amorin* class (after it was certified): "given the glacial speed with which this case has progressed, by the time the case is resolved, there will be very few class members left, if any. Such a construction is untenable and leads to an absurd result."[20]   An *Amorin* class member who was a current owner when the MDL was established in 2009 (and was entitled to remediation damages when suit was filed), but then lost her home as the case dragged on for years while Defendants did everything they could do to avoid the jurisdiction of the courts, should not be deprived of remediation damages solely on the grounds that she is considered by Defendants to be a "former" owner in 2019 when the approved formula is finally used to calculate remediation damages.

Remediation damages are appropriate for all *Amorin* Class members, and the remediation damages formula is the best means of assessing those damages in this case.

## III.   CONCLUSION.

For the reasons set forth above as well as in Plaintiffs' Memorandum of Law in Support of its Motion,[21] fairness and justice demand that the instant motion be GRANTED.

---

[20] *See* MDL Order & Reasons dated 10/11/2018 [Rec. Doc. 21846].

[21] *See* PSC's Mem. of Law in Supp. of its Motion [Rec. Doc. 22155-1].

Dated:  April 18, 2019

Respectfully Submitted,

By: */s/ Russ M. Herman*
Russ M. Herman (La Bar No. 6819) (on the brief)
Leonard A. Davis (La Bar No. 14190) (on the brief)
Stephen J. Herman (La Bar No. 23129)(on the brief)
Herman, Herman & Katz, LLC
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
RHerman@hhklawfim.com
*Plaintiffs' Liaison Counsel MDL 2047*

Arnold Levin (on the brief)
Fred S. Longer (on the brief)
Sandra L. Duggan (on the brief)
Keith J. Verrier (on the brief)
Levin Sedran & Berman LLP
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
alevin@lfsblaw.com
*Plaintiffs' Lead Counsel MDL 2047*

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Robert M. Becnel,
Law Office of Robert M. Becnel
425 W. Airline Highway, Suite B
Laplace, LA 70068
Phone: (985) 359-6101
Fax: (985) 651-6101
robbecnel@aol.com

Salvadore Christina, Jr.
Becnel Law Firm, LLC
425 W. Airline Highway, Suite B
Laplace, LA 70068
Phone: (985) 536-1186
Fax: (985) 536-6445
schristina@becnellaw.com

Peter Prieto
Podhurst Orseck, PA
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
pprieto@podhurst.com

Bruce William Steckler
Steckler Gresham Cochran
12720 Hillcrest Road, Suite 1045
Dallas, TX 75230
Phone: (972) 387-4040
Fax: (972) 387-4041
bruce@stecklerlaw.com

Patrick Montoya
Colson, Hicks, Eidson
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
patrick@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
Echsner & Proctor, PA
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
The Lambert Firm
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@thelambertfirm.com

Pete Albanis
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Myers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
palbanis@forthepeople.com

James R. Reeves, Jr.
Reeves & Mestayer, PLLC
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@rmlawcall.com

Christopher A. Seeger
Seeger Weiss, LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5002
dan@wbmllp.com

Richard J. Serpe
Law Offices of Richard J. Serpe
Crown Center, Suite 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com

Victor M. Diaz, Jr.
V.M. Diaz and Partners, LLC
1000 Fifth Street, Suite 400
Miami Beach, FL 33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

Anthony D. Irpino
IRPINO AVIN HAWKINS LAW FIRM
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

Gerald E. Meunier (on the brief)
Gainsburgh, Benjamin, David,
Meunier & Warshauer, LLC
2800 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2800
Phone:  (504) 522-2304
Fax:  (504) 528-9973
gmeunier@gainsben.com

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W., Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, which will serve a notice of the uploading in accordance with the procedures established in MDL 2047, on 18th day of April, 2019.

/s/ Leonard A. Davis
Leonard A. Davis
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com
Plaintiffs' Liaison Counsel
MDL 2047

*Co-Counsel for Plaintiffs*