UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * * * * * * * | CIVIL ACTION<br><br>MDL NO. 2047<br><br>SECTION L (5) |
| THIS DOCUMENT RELATES TO:<br>ALL CASES | * * * | |

## ORDER & REASONS

Before the Court is a Motion for an Award of Attorney Fees on Interest Earned filed by the Yance Law Firm, LLC ("Yance"), R. Doc. 22108. The Motion is opposed. R. Doc. 22148. Yance has filed a reply. R. Doc. 22189. The Court rules as follows.

I. **BACKGROUND**

From 2004 through 2006, the housing boom in Florida and rebuilding efforts necessitated by Hurricanes Rita and Katrina led to a shortage of construction materials in the United States, including drywall. As a result, drywall manufactured in China was brought into the United States and used in the construction and refurbishing of homes in coastal areas of the country, notably the Gulf Coast and East Coast. Sometime after the installation of the Chinese drywall, homeowners began to complain of emissions of foul-smelling gasses, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829 (E.D. La. 2012), *aff'd*, 742 F. 3d 576 (5th Cir. 2014). Many of these homeowners also began to report various physical afflictions allegedly caused by the Chinese drywall.

These homeowners began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. Because of the commonality of facts in the various cases, this litigation was designated as multidistrict litigation. Pursuant to a June 15, 2009 transfer order from the United States Judicial Panel on Multidistrict Litigation, all federal cases involving Chinese-manufactured drywall were consolidated for pretrial proceedings in MDL 2047 in the United States District Court for the Eastern District of Louisiana.

The Chinese drywall at issue was largely manufactured by two groups of defendants: (1) the Knauf entities and (2) the Taishan entities. Because the Taishan entities contested jurisdiction at the outset and refused to accept service of process, it was necessary to conduct this litigation along two tracks. The first track involved the Knauf entities.

The Knauf entities ("Knauf") are German-based, international manufacturers of building products, including drywall, whose Chinese subsidiary, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), advertised and sold its Chinese drywall in the United States. The Knauf entities are named defendants in numerous cases consolidated with the MDL litigation as well as litigation in state courts. The Knauf entities did not contest jurisdiction and first entered their appearance in the MDL litigation on July 2, 2009. *See* Rec. Doc. 18. On November 2, 2009, in Pretrial Order No. 17, KPT agreed to a limited waiver of service. *See* Rec. Doc. 401. After a period of intense discovery, the court set various bellwether trials. From March 15, to March 19, 2010, the Court presided over a bellwether trial in *Hernandez v. Knauf Gips KG*, Case No. 09-6050, involving a homeowner's claims against KPT for defective drywall. *See* Rec. Doc. 2713. For purposes of the trial, Knauf stipulated that KPT Chinese drywall "emits certain reduced sulfur gases and the drywall emits an odor." *Id*. The Court, based on the evidence presented, found the KPT Drywall

was a defective product and issued a detailed Findings of Fact and Conclusions of Law in favor of Plaintiff Hernendez ("*Hernandez* FOF /COL"), *see id.*, and entered a Judgment in the amount of $164,049.64, including remediation damages in the amount of $136,940.46, which represented a cost of $81.13 per square foot based on the footprint square footage of the house. *See* Rec. Doc. 3012.

On October 14, 2010, Knauf agreed to participate in a pilot program to remediate a number of homes using the remediation protocol formulated by the Court in the *Hernandez* case. The Knauf pilot remediation program has remediated over 2,800 homes containing KPT Chinese drywall using essentially the same protocol. At the Court's urging, after a number of homes had been remediated, the parties began working together to monetize this program and make it available to a broader class of plaintiffs.

Thereafter, the PSC and Knauf entered into settlement discussions, and on December 20, 2011, some two years after the formation of this MDL. The PSC reached a global remediation settlement with Knauf, which is designed to resolve all Knauf-related Chinese drywall claims. After a bellwether trial involving the downstream Knauf distributor, North River, numerous other settlement agreements were also reached with other downstream entities in the chain of commerce with the Knauf. These entities included various distributers, builders, and installers (and their insurers) of the Knauf-manufactured Chinese drywall.

On August 12, 2013, Plaintiffs' and Defendants' Liaison counsel entered into a second settlement agreement addressing claims filed after December 9, 2011 (the "New Claims Settlement Agreement"). R. Doc.16978-1. Under the New Claims Settlement Agreement, Claimants who gave notice prior to October 25, 2013 and qualified under the terms of the New Claims Agreement

were eligible to seek benefits under the Knauf Class Settlement Agreement, subject to the requirements set forth in both agreements. R. Doc. 16978-1.

Under the terms of the settlements, the claimants with KPT Chinese drywall (drywall manufactured by Knauf's Chinese subsidiary) were offered several options. Under Option 1, the claimants were offered the opportunity to receive a complete, environmentally certified remediation of their properties. Under Option 2, the claimants were offered cash reimbursement in the event the home was already remediated. Finally, under Option 3, claimants were offered a cash payment instead of remediation as well as the opportunity to receive monetary benefits from the Knauf downstream chain of commerce entities to compensate them for other specifically designated losses.

As part of the Knauf remediation settlement, Defendants also agreed to pay reasonable costs, including the cost of administering the program and an additional amount for attorneys' fees, which includes both the fees for contract counsel and those for common benefit counsel. This payment relieves every claimant of all contingency fee and cost reimbursement obligations to both retained contract counsel and common benefit counsel (with exception of the Virginia litigants), and thus represents an amount which otherwise would have been payable by the claimants out of their settlement recovery.

The claimants having received their appropriate portion of the settlement funds, the Court endeavored to allocate attorneys' fees to contract counsel and common benefit counsel pursuant to Pre-Trial Order 28 ("PTO 28"). R. Docs. 17379, 20282. PTO 28 lays out the multi-step process by which the Court disbursed attorneys' fees: (1) a review of time and expenses, (2) the submission of an initial affidavit for compensation for common benefit work and reimbursement of expenses, (3) the filing of a joint fee petition, (4) the filing of a request for common benefit assessment for

any Chinese Drywall case or claim not participating as a Class Member or claimant in any of the various Class Action Settlement Agreements, (5) establishing common benefit and individual fees, and finally (6) allocating the common benefit fees. R. Doc. 17379. Throughout this process, the Court was aided by Special Master Daniel Balhoff, Court-Appointed CPA Philip Garrett, and Court-Appointed Settlement Administrator BrownGreer.

After completing steps one through four, the Court proceeded to step five to "determine the total amount of the common benefit fund and the amount of funds for individual counsel for claimants." *Id.* at ¶ 10. In its January 31, 2018 order, the Court found the appropriate split between contract counsel and common benefit counsel was fifty-two percent for common benefit counsel and forty-eight for contract counsel. R. Doc. 21168. Thereafter, on February 4, 2019, the Court proceeded to step six, allotting the common benefit fund to various firms in differing amounts. R. Doc. 22089. The next day, the Court issued its final judgment regarding common benefit attorneys' fees (the "Final Judgment"). R. Doc. 22092.

## II. PENDING MOTION

On February 19, 2019, Yance filed a motion seeking an award of attorney fees on the interest earned from the Attorney Fee Qualified Settlement Fund (the "Fund") since the Court entered its Final Judgment, claiming that its actions alone caused the Funds to be returned to the Court's registry, which resulted in higher interest returns. R. Doc. 22108. According to Yance, it deserves a fee for its efforts. *Id.* On March 12, 2019, Lead Counsel and Liaison Counsel, Herman, Herman, & Katz ("Herman") and Levin, Sedran & Berman LLP ("Levin"), jointly filed a memorandum in opposition. R. Doc. 22148. On March 26, 2019, Yance filed a reply memorandum. R. Doc. 22189.

## III. LAW & ANALYSIS

On July 28, 2009, the Court issued PTO 9, setting forth the process with which "any counsel seeking fees and/or expense reimbursement" must comply. R. Doc. 147. PTO 9 provides, "All time and expenses submitted must be incurred only for work authorized in advance by the Plaintiffs' Steering Committee," and that,

> These Time and Expense Guidelines are intended for all activities performed and expenses incurred by counsel *that relate to matters common to all claimants in MDL 2047*. Further, any claimants' counsel that may at a later date, seek reimbursement or compensation for common benefit time and expenses (including any state court counsel) shall comply with these guidelines and any submission by such counsel shall be in accordance with this Pre-Trial Order.

*Id.* at 1 (emphasis added).

Relatedly, on January 10, 2014, this Court issued PTO 28 regarding attorney fee and cost reimbursement guidelines. R. Doc. 17379. The Court modified this PTO on May 25, 2016, setting forth additional timelines and other procedural steps with which attorneys seeking a common benefit fee must comply. R. Doc. 20282. Yance has not complied with either PTO 8 or PTO 28 and therefore is not entitled to any monies from the Common Benefit Fund.

Moreover, the Court established the Common Benefit Fund to reimburse attorneys whose work contributed to the common benefit of the *claimants* in this case. Yet, as Yance readily admits, it "has not done work on behalf of any claimants in many years." R. Doc. 22189. The fund was not established to compensate work that did not confer a common benefit to the litigants in this case. Importantly, in the Court's Judgment allocating the common benefit fees, the Court ordered that the fund "be allocated to the following firms in the following amounts, *plus any interest accumulated over this amount*." R. Doc. 22089. Thus, Yance's contention that the Court need not disturb the Court's prior order disbursing the Fund is inaccurate. In addition to not complying with

PTOs 9 and 28, Yance failed to timely move the Court to reconsider its February 2, 2019 Order. As a result, the Court will deny Yance's motion seeking funds from the common benefit as being both untimely and without merit.

Finally, in its motion, Yance contends it is entitled to fees for its having filed a motion to transfer the Fund into the Court's registry, R. Doc. 21338, which the Court denied as moot, R. Doc. 21962. The interest rate available has fluctuated over the period in question. At one time, the rate available for deposits in this Court's registry were lower than the market rate. In addition, it takes longer to access the funds in the registry, and at one time, immediate access was a factor to be considered. Disputes among counsel over attorneys' fees caused delays and necessitated further hearings. This reduced the importance of immediate access to the common benefit funds. In addition, interest rates improved for Court registry deposits. Accordingly, the Court ordered the funds be transferred to the Court's registry. R. Doc. 21405. That Yance at one time filed a motion seeking to transfer the Funds does not entitle it to a fee.

Vigorous disputes between or among parties on different sides of the "v," often occur and are to be expected. In this type of litigation, however, it appears the most contentious disputes occur on one side of the "v," Plaintiffs' side, and the most truculent of these involve attorneys' fees. If the same vigor and creativity were directed toward the legal issues affecting the litigants rather than the issues affecting the attorneys, these cases could have been handled more efficiently and expeditiously.

## IV. CONCLUSION

For the foregoing reasons;

**IT IS ORDERED** that the Motion for an Award of Attorney Fees on Interest Earned filed by the Yance Law Firm, LLC, R. Doc. 22108, be and hereby is **DENIED**.

7

New Orleans, Louisiana on this 26th day of April, 2019.

_____
Eldon E. Fallon
U.S. District Court Judge