Case 2:09-md-02047-EEF-MBN Document 22231 Filed 04/29/19 Page 1 of 48
Applying the Remediation Damages Formula
to the Claims of Former Owners

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

*************************************************************

IN RE:  CHINESE-MANUFACTURED DRYWALL
PRODUCTS LIABILITY LITIGATION

                        MDL No. 09-2047
VS.                     Section "L"
                        New Orleans, Louisiana
                        April 23, 2019

THIS DOCUMENT RELATES TO ALL CASES
*************************************************************

TRANSCRIPT OF MOTION FOR AN ORDER (UNDER FRCP 55(b)) APPLYING
        REMEDIATION DAMAGES FORMULA TO THE CLAIMS OF
                     FORMER OWNERS HEARING
        HEARD BEFORE THE HONORABLE ELDON E. FALLON
                UNITED STATES DISTRICT JUDGE


APPEARANCES:

FOR THE PLAINTIFFS' LIAISON COUNSEL:

                        *LEN DAVIS*
                        *RUSS HERMAN*
                        HERMAN, HERMAN & KATZ
                        820 O'KEEFE AVENUE
                        NEW ORLEANS, LA 70113

                        *ARNOLD LEVIN*
                        *SANDRA L. DUGGAN*
                        LEVIN, FISHBEIN, SEDRAN & BERMAN
                        510 WALNUT STREET, SUITE 500
                        PHILADELPHIA, PA 19106

                        *GERALD E. MEUNIER*
                        GAINSBURGH, BENJAMIN, DAVID,
                        MEUNIER & WARSHAUER, LLC
                        2800 ENERGY CENTRE
                        NEW ORLEANS, LA 70163

                        *RICHARD SERPE*
                        OFFICES OF RICHARD J. SERPE
                        580 EAST MAIN STREET, SUITE 310
                        NORFOLK, VA 23510

Case 2:09-md-02047-EEF-MBN Document 22231 (Filed 04/29/19) Page 2 of 48
Applying the Remediation Damages Formula
to the Claims of Former Owners

FOR THE TAISHAN, BNMB ENTITIES
AND CNMB ENTITIES LIAISON COUNSEL:

> HARRY ROSENBERG
> PHELPS DUNBAR
> 365 CANAL STREET
> SUITE 2000
> NEW ORLEANS, LA 70130

FOR TAISHAN GYPSUM CO., LTD, AND TAI'AN TAISHAN PLASTERBOARD
CO., LTD.:

> CHRISTINA H. EIKHOFF
> DAVID VENDERBUSH
> ALSTON & BYRD
> ONE ATLANTIC CENTER
> 1201 WEST STREET
> ATLANTA, GA 30309

FOR THE LIAISON COUNSEL:

> KERRY J. MILLER
> DANIEL S. DYSART
> FISHMAN HAYGOOD, LLP
> 201 ST. CHARLES AVENUE
> 46TH FLOOR
> NEW ORLEANS, LA 70170

FOR THE BNMB AND CNMB ENTITIES:

> DONNA P. CURRAULT
> GORDON, ARATA, MCCOLLAM,
> DUPLANTIS & EAGAN
> 201 ST. CHARLES AVENUE
> 40TH FLOOR
> NEW ORLEANS, LA 70170

> JAMES L. STENGEL
> ORRICK HERRINGTON & SUTCLIFFE
> 51 WEST 52ND STREET
> NEW YORK, NY 10019

```
ALSO PRESENT:                    JIMMY R. FAIRCLOTH, JR.
                                 9026 JEFFERSON HIGHWAY
                                 BUILDING 2, SUITE 200
                                 BATON ROUGE, LA 70809

                                 TURNER YANCE
                                 YANCE LAW FIRM
                                 169 DAUPHINE STREET
                                 MOBILE, AL 36602

                                 ERIC HOAGLAND
                                 MCCALLUM HOAGLUND
                                 905 MONTGOMERY HIGHWAY
                                 SUITE 201
                                 VESTAVIA HILLS, AL 35216

                                 MICHAEL J. RYAN
                                 KRUPNICK CAMPBELL MALONE BUSER
                                 SLAMA HANCOCK, P.A.
                                 12 S.E. 7TH STREET
                                 SUITE 801
                                 FORT LAUDERDALE, FL 33301

                                 JAMES R. DOYLE
                                 JIM DOYLE LAW FIRM
                                 1018 PRESTON ST
                                 SUITE 850
                                 HOUSTON, TX 77002


Official Court Reporter:         Nichelle N. Drake, RPR, CRR
                                 500 Poydras Street, B-275
                                 New Orleans, Louisiana 70130
                                 (504) 589-7775


     Proceedings recorded by mechanical stenography,
transcript produced via computer.
```

**1**                    **P R O C E E D I N G S**

10:08:47AM   **2**                (Call to order of the court.)

10:08:47AM   **3**        THE COURT:  The next issue is the former owners.  Let

10:08:57AM   **4**    me hear any argument on that.

10:09:29AM   **5**        MR. MEUNIER:  May it please the Court, Your Honor.  I

10:09:41AM   **6**    will endeavor to give voice to the former owner members of

10:09:51AM   **7**    the Louisiana *Amorin* class.

10:09:57AM   **8**        Their numbers are steadily rising, by our count, as

10:10:03AM   **9**    much as 59 percent.  59 percent of the *Amorin* class are now

10:10:14AM   **10**   former owners.  So the numbers are formidable and their

10:10:18AM   **11**   numbers are increasing, but of course, they are more than

10:10:22AM   **12**   just numbers.

10:10:25AM   **13**       These are men and women and families who owned and

10:10:30AM   **14**   lived in homes contaminated by defective drywall.  They were

10:10:38AM   **15**   the owners when they brought suit for the defective drywall.

10:10:45AM   **16**   They were the owners when these suits then were

10:10:48AM   **17**   systematically ignored by the defendants who are responsible

10:10:53AM   **18**   for the harm done.  And perhaps most important, they were the

10:10:59AM   **19**   owners of their homes in September of 2009 when the

10:11:06AM   **20**   defendants deliberately and strategically defaulted which

10:11:11AM   **21**   triggered the defendants' legal accountability and

10:11:14AM   **22**   indebtedness at that time under Rule 55.

10:11:18AM   **23**       So the phrase "former owners," Judge, refers to

10:11:22AM   **24**   individuals who were and have been current owners at critical

10:11:27AM   **25**   junctures in the history of this case and most critically

Case 2:09-md-02047-EEF-MBN Document 22231 Filed 04/29/19 Page 5 of 48
Applying the Remediation Damages Formula
to the Claims of Former Owners

```
10:11:31AM   1   were current owners at the time the defendants' indebtedness
10:11:37AM   2   was established under Rule 55.
10:11:40AM   3        And the sole reason that they must now appear as
10:11:45AM   4   former owners and fight for the same option given to current
10:11:49AM   5   owners which is remediation and monetizing a debt that was
10:11:56AM   6   established almost 10 years ago, the sole reason can be
10:12:01AM   7   summed up in one word, delay.
10:12:04AM   8        Now, last year, the Court conducted a hearing on the
10:12:09AM   9   issue of next steps in this case and specifically addressed
10:12:14AM  10   how and when to conduct trials in these cases going forward.
10:12:18AM  11   That transcript is in the record.  It is Record Doc 21709.
10:12:26AM  12   And here's what Your Honor observed, from your firsthand
10:12:32AM  13   observation and experience in presiding over this
10:12:38AM  14   longstanding matter.
10:12:39AM  15        You say:  Just the problem that I'm faced with is
10:12:43AM  16   that we've been doing this for nine years.  It's now ten.
10:12:47AM  17   Every year, every step of the way, the defendants --
10:12:52AM  18   defendant has resisted looking at the case.  I mean, we've
10:12:57AM  19   had jurisdictional issues and a bunch of other things.  It
10:13:00AM  20   just is apparent -- it appears to me or at least it's a
10:13:04AM  21   strong argument -- that the whole approach is just delay;
10:13:09AM  22   delay because people die, delay because -- delay because they
10:13:15AM  23   lose their homes, delay because they're frustrated and giving
10:13:19AM  24   up.  And it's a method -- and I'm not talking about counsel
10:13:22AM  25   -- that is just -- I don't know how much more I can give you
```

10:13:26AM 1    to look at from the standpoint of bellwethers.

10:13:32AM 2         So, Your Honor, you know, life goes on outside of

10:13:38AM 3    these walls.  Time passes, hard decisions have to be made.

10:13:44AM 4    Finances are stretched.  Emotions are strained to the limit.

10:13:49AM 5    And lay people, not hearing good news from their attorneys.

10:13:54AM 6    When's my case going to trial?  When's my case going to

10:13:58AM 7    settle?  By the way, I heard that my neighborhood who had

10:14:00AM 8    Knauf drywall got remediated years ago?

10:14:04AM 9         What does the lawyer tell them?  I don't know.  And

10:14:07AM 10   now they're fighting us on this.  And now they've left the

10:14:09AM 11   court.  Now they've fired their lawyers.  Now they're in

10:14:12AM 12   contempt.  We got to bring them back.  Now there's a computer

10:14:14AM 13   with stuff on it we can't find.  One thing after another.

10:14:16AM 14   What do we tell our clients?

10:14:19AM 15        So today we're asking the Court to allow these former

10:14:25AM 16   owners who have moved on without penalty and almost as

10:14:34AM 17   importantly without advantaging those who are responsible for

10:14:39AM 18   the delay.  What we're asking the Court is to allow former

10:14:44AM 19   owners who left their homes without remediating the homes

10:14:48AM 20   because they couldn't remediate the homes and had to leave,

10:14:52AM 21   we're asking that the Court treat those people the same way

10:14:56AM 22   you would treat a current owner and make available to them

10:15:00AM 23   the court-approved formula for repair costs to the home.

10:15:05AM 24        The debt that was incurred occurred at a time they

10:15:09AM 25   were current owners.  The only reason they're not still

Case 2:09-md-02047-EEF-MBN Document 22231 (Filed 04/29/19) Page 7 of 48
Applying the Remediation Damages Formula
to the Claims of Former Owners

10:15:14AM  1    current owners has much to do with the unfair litigation

10:15:17AM  2    tactics of these defendants.

10:15:19AM  3         THE COURT:  What about a situation where the former

10:15:22AM  4    owner does lose his house, the current owner buys the house

10:15:26AM  5    and incurs expenses taking the drywall out?  Does the current

10:15:32AM  6    then have a case in that case?

10:15:34AM  7         MR. MEUNIER:  Only if there's been assignment, Judge

10:15:36AM  8    and as I'll get to, under Louisiana law, this much is

10:15:38AM  9    clear -- I don't think the defendants argue this point.

10:15:39AM 10    Unless the former owner executes an assignment to the new

10:15:43AM 11    owner of his claim against the manufacturers of bad drywall,

10:15:47AM 12    the former owner keeps the right.  The former owner still has

10:15:52AM 13    the right to sue for damages.

10:15:55AM 14         THE COURT:  And the current owner does not?

10:15:57AM 15         MR. MEUNIER:  And the current owner does not.

10:15:59AM 16         And let me make that clear.  The former owners on

10:16:02AM 17    whose behalf I speak today have not executed assignments.  I

10:16:06AM 18    only speak on behalf of those who have maintained the legal

10:16:09AM 19    right to sue, albeit, they were current owners when the debt

10:16:15AM 20    was incurred and now they're former owners.

10:16:18AM 21         Now, you know, I recognize, Judge, that we are in

10:16:23AM 22    unchartered waters, and I recognize that this requires an

10:16:30AM 23    eerie guess in monetizing this legal indebtedness, because,

10:16:35AM 24    frankly, you will not find case law with these circumstances

10:16:39AM 25    of a default that was 10 years ago and people who needed

10:16:43AM  1    repair costs at that time now have had to give up their homes

10:16:48AM  2    without repairing them and are seeking justice under the debt

10:16:50AM  3    that was owed at the time.

10:16:53AM  4          So I believe that the Court in sailing into these

10:16:55AM  5    waters has to keep certain considerations in mind and one is

10:17:05AM  6    that there is a pre-litigation history for these folks, which

10:17:14AM  7    I believe gave them the right to a special and urgent

10:17:19AM  8    remediation in these cases at a time when they were still

10:17:23AM  9    owners.

10:17:26AM  10         These Louisiana former owners, Your Honor, relived a

10:17:29AM  11   nightmare when they discovered their homes were contaminated

10:17:35AM  12   by defective Chinese drywall.  They had already used just

10:17:39AM  13   about every ounce of patience and resources and emotional

10:17:45AM  14   resilience to get these homes back to being livable and back

10:17:52AM  15   to stud remediation after Hurricane Katrina.  And just as

10:17:59AM  16   their property was becoming livable again, they discovered

10:18:04AM  17   they got to gut their homes all over again.  They got to

10:18:07AM  18   relive that nightmare.

10:18:12AM  19         The law talks about eggshell plaintiffs.  I would

10:18:17AM  20   submit to you that the manufacturers of detective Chinese

10:18:21AM  21   drywall, in making these Louisiana homeowners whole, must

10:18:26AM  22   accept and account for a pre-existing condition because in

10:18:30AM  23   taking these plaintiffs as the defendants found them -- and

10:18:33AM  24   found them by the way as they were taking advantage of a

10:18:36AM  25   business opportunity once the flood waters receded.  But when

10:18:44AM   1   they found these plaintiffs, their indebtedness to make them

10:18:49AM   2   whole was to account for the fact that they needed help.

10:18:55AM   3   They had been resilient, and now they were just plain

10:19:02AM   4   vulnerable.  And that vulnerability limited in real life, in

10:19:10AM   5   real terms, their capacity to remediate on their own.  They

10:19:15AM   6   spent everything they had after Katrina to get the house back

10:19:19AM   7   in shape.  Those are the folks we're talking about.

10:19:26AM   8        And to the extent they've had to wait, fine.  It is

10:19:29AM   9   what it is.  What we're submitting to the Court is that for

10:19:32AM  10  these folks, don't deprive them of the remediation formula

10:19:38AM  11  and restorative repair costs that would and should have been

10:19:42AM  12  made available to them back when this default was taken

10:19:51AM  13  almost 10 years ago.  That's the debt to be monetized.

10:19:57AM  14       I once heard it said wisely that, you know, the true

10:20:03AM  15  measure of harm that's done to a plaintiff in -- in a case of

10:20:12AM  16  wrongdoing is not what was taken away, but what he's left

10:20:20AM  17  with.  So what are these plaintiffs left with, if not an

10:20:24AM  18  unpaid, longstanding debt, the non-payment of, which over a

10:20:30AM  19  decade ago, has cost them the very homes that they managed to

10:20:35AM  20  restore and keep with blood, sweat, and tears after Katrina?

10:20:39AM  21  And, frankly, that's why we resist the

10:20:42AM  22  present-circumstances-only approach in these cases, as if

10:20:47AM  23  these were bifurcated damages trials and we're only supposed

10:20:50AM  24  to look at what is true now.

10:20:51AM  25       That is why we are calling for the monetization of a

10:20:57AM 1    debt under Rule 55(b)(2) that does focus not only on

10:21:00AM 2    circumstances today, but takes history into account,

10:21:04AM 3    particularly the history in this case.  And the nature of the

10:21:06AM 4    debt that was owed at the time, the debt that came into

10:21:11AM 5    existence under Rule 55, came at a time when these folks were

10:21:16AM 6    current owners, and they should be given the same option of

10:21:21AM 7    the remediation formula as the current owners who have been

10:21:25AM 8    able to hang on.  Fellow class members are entitled to that

10:21:28AM 9    option.  They should be too.

10:21:28AM 10           THE COURT:  All right.  I've got your argument.

10:21:35AM 11           MR. MEUNIER:  So, Judge, if I could just quickly go

10:21:38AM 12   through a few points, this one's not in dispute.  Under

10:21:39AM 13   Louisiana law, former owners absent assignment do maintain

10:21:42AM 14   the right to sue for damages due to defective drywall.  We're

10:21:47AM 15   here arguing today about the measure of those damages.

10:21:49AM 16   There's no question that they still have the right to those

10:21:52AM 17   damages.

10:21:52AM 18           The main case that says so is *Eagle Pipe & Supply*,

10:21:56AM 19   and I've quoted from it here that that right survives.  It

10:22:02AM 20   stated here more distinctly:  The former property owners

10:22:05AM 21   still have a personal right of action against the tortfeasor

10:22:08AM 22   for the damage he inflicted on the property while they were

10:22:12AM 23   the owners despite the fact that they no longer own the

10:22:18AM 24   property.

10:22:18AM 25           The second point that I don't think should be

Case 2:09-md-02047-EEF-MBN Document 22231 Filed 04/29/19 Page 11 of 48
Applying the Remediation Damages Formula
to the Claims of Former Owners

10:22:20AM   1    seriously disputed is that these former owners remain class

10:22:26AM   2    members and their property claims -- their property damages

10:22:28AM   3    arise out of a common indebtedness.  In some ways, our motion

10:22:36AM   4    is a motion for parody, motion for parody consistent with the

10:22:41AM   5    commonality guidelines of Rule 23, a motion consistent with

10:22:43AM   6    the monetization of a common indebtedness under Rule 55.

10:22:47AM   7         We are asking that current owners today have an

10:22:52AM   8    option.  They can either take the remediation formula if they

10:22:55AM   9    haven't fixed their home, or they can seek diminution in

10:23:00AM   10   value.  That's the choice Louisiana law gives them.  We say

10:23:04AM   11   give the same choice to those who were current owners at

10:23:15AM   12   critical times but no longer are.

10:23:15AM   13        Judge, this is an excerpt from an important

10:23:22AM   14   precedent.  If you remember that the defendants -- the

10:23:23AM   15   plaintiffs at one point sought to clarify the fact that

10:23:26AM   16   former and current owners remained in the class, despite the

10:23:29AM   17   fact that it was a class for remediation damages certified

10:23:33AM   18   for that.  The defendants say, "No way.  You can't have a

10:23:36AM   19   class that includes former owners."  And here was their

10:23:40AM   20   statement on the record at a hearing on this issue back in

10:23:40AM   21   October of 2018.

10:23:42AM   22        Defendants argued the distinction between remediation

10:23:45AM   23   and non-remediation is important because this Court certified

10:23:48AM   24   a class for remediation only, and this Court also defined a

10:23:54AM   25   formula that can be used for current owners only -- current

Applying the Remediation Damages Formula
to the Claims of Former Owners

10:23:56AM  1   owners only for remediation.

10:23:59AM  2        Here was the plaintiffs' response:  The defendants'

10:24:03AM  3   position with respect to who is included in the class is

10:24:04AM  4   inequitable as it would reward defendants for their dilatory

10:24:08AM  5   tactics in this litigation.  The PSC further contends on

10:24:11AM  6   Louisiana law a former owner maintains the right to sue for

10:24:16AM  7   damages.

10:24:21AM  8        Most importantly, here is what the Court said.  The

10:24:26AM  9   court ruled:  Former owners remain in the class.

10:24:30AM  10       Defendants apparently take the position that if over

10:24:32AM  11  the course of nine years any of the plaintiffs named in the

10:24:35AM  12  *Amorin* complaint no longer own their homes, they should be

10:24:38AM  13  excluded from the class, notwithstanding the fact that their

10:24:42AM  14  homes were allegedly damaged by Taishan's drywall.  That's

10:24:47AM  15  the common indebtedness.  Under defendants' definition, the

10:24:48AM  16  composition of the class would be ever changing and given the

10:24:52AM  17  glacial speed with which this case has progressed, by the

10:24:57AM  18  time the case is resolved, there will be very few class

10:25:01AM  19  members left, if any, such a construction is untenable and

10:25:06AM  20  would lead to absurd results.

10:25:12AM  21       So, Your Honor, I think what we have here is a case

10:25:18AM  22  where both current and former owners are in the class.  Those

10:25:24AM  23  who were forced out of their homes before they could

10:25:27AM  24  remediate were current owners at the critical time the debt

10:25:32AM  25  was incurred.  They should have the same option as current

Case 2:09-md-02047-EEF-MBN   Document 22231   Filed 04/29/19   Page 13 of 48
Applying the Remediation Damages Formula
to the Claims of Former Owners

10:25:35AM   1   owners who have no remediation yet, either the formula or

10:25:40AM   2   diminution of value.

10:25:42AM   3        Now, the defendants say, "Look, this is absurd and

10:25:49AM   4   illogical because first of all these people can't spend the

10:25:54AM   5   money on repair."  But, Your Honor, we have case law in

10:26:03AM   6   Louisiana that holds that there is no obligation of someone

10:26:09AM   7   who seeks repair costs of property to spend it on repair."

10:26:12AM   8   It was a case that involved a private owner, and the only

10:26:16AM   9   thing that happened is that the Legislature of Louisiana

10:26:22AM   10  later said that when you're dealing with groundwater

10:26:24AM   11  contamination, no.  If you're a public defendant looking for

10:26:26AM   12  that or it impacts the public interest, you better spend the

10:26:29AM   13  money on repair.  But there is no legal requirement that a

10:26:32AM   14  former owner who recovered under the remediation formula

10:26:38AM   15  would have to spend on actual repair costs.

10:26:41AM   16       The other thing the defendants argue is, look, when

10:26:44AM   17  you look at the cases that's saying what the repair remedy

10:26:54AM   18  is, they say that the cost you recover have to either have

10:27:02AM   19  been incurred or may reasonably be incurred.  And they cite a

10:27:08AM   20  case and they say that's what that case stands for.

10:27:13AM   21       Here's what the case says:  There are two options,

10:27:14AM   22  repair or diminution, but the Courts look at the amount of

10:27:20AM   23  repair cost at issue to decide how it compares to the total

10:27:25AM   24  value of the property.  Because if you're spending more to

10:27:29AM   25  fix the home than it's worth, there's a problem.

| 10:27:32AM | 1 | There is an exception by the way, a personal use |
| 10:27:36AM | 2 | exception, if it's your home and it really means a lot to you |
| 10:27:39AM | 3 | like these homes do, you're not limited to the value of the |
| 10:27:41AM | 4 | house. |
| 10:27:41AM | 5 | So in Louisiana, under the personal use exception, |
| 10:27:44AM | 6 | you can spend more to fix one of these homes than the home is |
| 10:27:49AM | 7 | worth.  But, nonetheless, the case they cite is making that |
| 10:27:53AM | 8 | comparison.  We got to figure out what the repair costs are, |
| 10:27:57AM | 9 | and we got to compare that to the total value to make sure |
| 10:27:59AM | 10 | that's not out of whack. |
| 10:27:59AM | 11 | The Court uses the phrase, costs that have been |
| 10:28:01AM | 12 | incurred or may be reasonably incurred in order to calculate |
| 10:28:05AM | 13 | the repair costs.  If they haven't been done yet, tell us |
| 10:28:07AM | 14 | what they will be.  That way, we'll know what the repair cost |
| 10:28:11AM | 15 | is and compare it to the home value.  That's what the case |
| 10:28:15AM | 16 | is. |
| 10:28:15AM | 17 | Here's what the defense says:  They take that phrase |
| 10:28:17AM | 18 | "or may reasonably be incurred" and say, "Aha, these costs |
| 10:28:22AM | 19 | can't be reasonably -- they may not reasonably be incurred |
| 10:28:23AM | 20 | because they can't be spent on repairs."  Again, no |
| 10:28:26AM | 21 | obligation to spend on repairs, but they have taken that out |
| 10:28:30AM | 22 | of context. |
| 10:28:31AM | 23 | We say equity as a matter of law should inform the |
| 10:28:35AM | 24 | measure of property damages, and, Judge, you know, I'm not |
| 10:28:38AM | 25 | going to recite again the tortured history of the case and |

Case 2:09-md-02047-EEF-MBN Document 22231 Filed 04/29/19 Page 15 of 48
Applying the Remediation Damages Formula
to the Claims of Former Owners

10:28:42AM  **1**   the dilatory tactics, but here's the issue.

10:28:49AM  **2**       I had a great Latin phrase in my original brief.  *Ubi*

10:29:02AM  **3**   *jus ibi remedium.*  I was trained by the Jesuits.  I can't

10:29:04AM  **4**   help it.  And, you know, where there's a right, there's got

10:29:05AM  **5**   to be a remedy.  You can't empty the remedy part.  So, yeah,

10:29:07AM  **6**   former owners have a right, but there's really nothing left

10:29:09AM  **7**   for them to get.

10:29:11AM  **8**       The defendants had an impressive comeback in Latin.

10:29:20AM  **9**   Their comeback was *aequitas sequitur legem*, which is that

10:29:20AM  **10**  equity follows the law.  You know, you can't use equity if

10:29:31AM  **11**  you've got an adequate remedy.

10:29:35AM  **12**      So here's what they're saying:  I got an adequate

10:29:38AM  **13**  remedy, diminution of value.  Come and get it.  That's easy.

10:29:44AM  **14**      They have the temerity to point out Mary Haindel who

10:29:44AM  **15**  is one of the 39 we talked about in our brief.  They said,

10:29:48AM  **16**  "Look at her.  She'll make more under the diminution of value

10:29:52AM  **17**  than she would under the formula.  You're punishing your own

10:29:55AM  **18**  people."

10:29:57AM  **19**      Judge, first of all, Mary Haindel would have an

10:30:01AM  **20**  option.  She will either receive diminution of value if she

10:30:05AM  **21**  wants to go that way or she'll get it through remediation

10:30:05AM  **22**  formula.  That's the choice given to Louisiana plaintiffs.

10:30:09AM  **23**      But to think for a minute that the defendants are not

10:30:12AM  **24**  going to charge in here when Mary Haindel takes that stand

10:30:13AM  **25**  and says, "Huh-Uh.  No.  We got an expert saying that when

Applying the Remediation Damages Formula
to the Claims of Former Owners

10:30:17AM  1    you sold your house short, it was because of the dip in the

10:30:20AM  2    market.  It was because you didn't advertise it correct" --

10:30:25AM  3    they'll come up with everything but Chinese drywall to

10:30:28AM  4    explain the short sale.  So don't think for a moment when

10:30:31AM  5    they talk about this great adequate remedy you've got, you

10:30:34AM  6    got diminution of value, you don't need remediation, you

10:30:37AM  7    don't need equity to take you there, that that is an easy

10:30:41AM  8    road for the plaintiffs.

10:30:42AM  9         And I'm not saying that it's inadequate because it's

10:30:44AM 10    difficult.  What I'm saying that it is inadequate because

10:30:47AM 11    they don't come with clean hands -- hands to remove the

10:30:51AM 12    choice.  The diminution of value is part of a choice.  They

10:30:56AM 13    can't with their delay tactics take away the first half of

10:31:00AM 14    the choice and leave you with the second.

10:31:02AM 15         If I run a red light and damage your favorite

10:31:05AM 16    vehicle, one that you saved after Katrina, you put everything

10:31:08AM 17    into it and I have destroyed it running a red light.

10:31:12AM 18         And I say, "Judge.  I owe you the money."  You know,

10:31:14AM 19    it's fixed.  I'm here -- you know, no fault.  I mean, there's

10:31:20AM 20    no question of fault.

10:31:22AM 21         I am liable to fix your car.  And then I leave for

10:31:26AM 22    ten years, and you can't find me.  And you can't drive the

10:31:32AM 23    car anymore.  And you sell it for what you can get.  And now

10:31:37AM 24    you're a former owner, and I come back after ten -- well,

10:31:41AM 25    what do you mean you want me to pay you what the repair costs

Case 2:09-md-02047-EEF-MBN Document 22231 Filed 04/29/19 Page 17 of 48
Applying the Remediation Damages Formula
to the Claims of Former Owners

10:31:44AM  1    would have been?  I'll pay you what you can prove you sold it

10:31:48AM  2    for less than what it was worth.  That's the adequate remedy

10:31:51AM  3    I've given you.  After by my wrongdoing, I have stripped you

10:31:54AM  4    of the other half of the equation.  So they don't come with

10:31:59AM  5    clean hands.

10:32:00AM  6         And I'm going to take the risk of ending with yet a

10:32:04AM  7    third Latin phrase.  It's a mouthful, but it's the bedrock

10:32:14AM  8    equity argument in this case.  *Commodum ex injuria sua nemo*

10:32:24AM  9    *habere debet*; a wrongdoer should not be enabled by law to

10:32:27AM  10   take advantage from his actions.

10:32:29AM  11        By limiting these former owners to a

10:32:36AM  12   diminution-of-value claim after they were the ones who caused

10:32:40AM  13   them when they were current owners not to have the option

10:32:43AM  14   that the law gives them, they profit from their wrongdoing.

10:32:46AM  15   And that's why the adequate remedy argument fails and that's

10:32:50AM  16   why equity should prevail.

10:32:55AM  17        Thank you, Judge.

10:32:55AM  18        THE COURT:  Thank you.

10:32:56AM  19        Response?

10:33:17AM  20        MR. VENDERBUSH:  Good morning, David Venderbush from

10:33:20AM  21   Alston & Bird for Taishan.  Thank you very much for hearing

10:33:22AM  22   us today.

10:33:24AM  23        I would like to be short because we heard a lot of

10:33:26AM  24   words just then and focus the Court back on what the Court

10:33:30AM  25   asked to be focused on, which was the concept of

10:33:35AM 1    non-pecuniary damages being at play for former owners who

10:33:40AM 2    have a short sale, have a foreclosure, sold their house

10:33:44AM 3    before or after remediation, specific facts and -- and facts

10:33:48AM 4    that are relevant to possible pecuniary damages and possible

10:33:55AM 5    non-pecuniary damages.  And the Court asked the PSC to -- to

10:33:59AM 6    focus the Court on that issue, and instead -- and I don't

10:34:04AM 7    believe Mr. Meunier mentioned non-pecuniary damages at all.

10:34:09AM 8          So we agree with Your Honor for efficiency purposes

10:34:13AM 9    that -- that evidence comes in one time and affects both of

10:34:17AM 10   those.  And so a blanket ruling that says former owners have

10:34:22AM 11   to be treated one way or another is not efficient and not

10:34:27AM 12   appropriate.

10:34:28AM 13         So these are my general points that I'm going to

10:34:33AM 14   touch on very quickly, but I want to remind the Court why

10:34:36AM 15   we're here today on former owners and that's because the

10:34:40AM 16   plaintiffs created this situation back in June of 2015 when

10:34:44AM 17   they removed the former owners from the June 15th damages

10:34:51AM 18   hearings.  And we were only doing an evidentiary hearing on

10:34:54AM 19   current owners and how the formula would affect them and the

10:35:00AM 20   Court ruled specifically that the April 2017 damages

10:35:05AM 21   calculations applied to current owners.

10:35:08AM 22         So now they've changed their tune and they want to

10:35:11AM 23   come in and talk about former owners.  But we don't need to

10:35:15AM 24   do that because what they're seeking here is an advisory

10:35:22AM 25   opinion from this Court.  And they -- they brought it on

| | | |
|---|---|---|
| 10:35:27AM | 1 | behalf of Louisiana homeowners, but they want to -- they seem |
| 10:35:32AM | 2 | to want something much different, and the Court I think heard |
| 10:35:37AM | 3 | before we gathered in the courtroom today, a member of the |
| 10:35:41AM | 4 | PSC literally imploring the Court to rule now and somehow |
| 10:35:49AM | 5 | that would bind somebody -- Judge Davis in Virginia.  But |
| 10:35:55AM | 6 | they brought this motion specifically under Louisiana law. |
| 10:35:58AM | 7 | And what -- you've heard the difference on the differences in |
| 10:36:02AM | 8 | Virginia law where they don't have non-pecuniary loss of use |
| 10:36:08AM | 9 | and enjoyment kinds of damages that may be available in |
| 10:36:09AM | 10 | Louisiana. |
| 10:36:10AM | 11 | So it's a completely different issue and we're -- |
| 10:36:12AM | 12 | we're addressing it as well under Florida law which is -- has |
| 10:36:16AM | 13 | its own idiosyncrasies.  We think it's similar to Louisiana |
| 10:36:24AM | 14 | in terms of limiting repair costs, but that's a Florida law |
| 10:36:29AM | 15 | issue.  And we're here specifically on their motion brought |
| 10:36:33AM | 16 | under Louisiana law and argued under Louisiana law as we |
| 10:36:39AM | 17 | heard at the end of Mr. Meunier's speech.  So we don't think |
| 10:36:44AM | 18 | an advisory opinion that somehow binds all the other judges |
| 10:36:50AM | 19 | is appropriate.  And we don't think an advisory opinion at |
| 10:36:53AM | 20 | this time for Your Honor is appropriate when we've heard all |
| 10:36:55AM | 21 | the different situations of former -- that former owners are |
| 10:37:00AM | 22 | in. |
| 10:37:01AM | 23 | And so we don't know how the cases are going to be |
| 10:37:05AM | 24 | tried yet, but I think we do know, whether Your Honor picks |
| 10:37:10AM | 25 | the plaintiffs plan or the defendants plan, we're going to |

Case 2:09-md-02047-EEF-MBN Document 22231 Filed 04/29/19 Page 20 of 48
Applying the Remediation Damages Formula
to the Claims of Former Owners

```
10:37:13AM   1    have individual plaintiffs that we're going to address and

10:37:17AM   2    some of them are going to be former owners.  And the

10:37:20AM   3    plaintiffs themselves have divided their former owners into

10:37:24AM   4    those that have remediated and those that haven't remediated

10:37:29AM   5    and they're in different situations.

10:37:32AM   6         And I want to highlight that today the plaintiffs

10:37:37AM   7    seem to have changed their motion because the motion that was

10:37:41AM   8    submitted to you -- if you look at the memo on page 1 and --

10:37:46AM   9    pages 1 and 2 -- talk about every former owner must get the

10:37:52AM  10    formula.  That's the motion that they've made to you of this

10:37:56AM  11    blanket ruling that they had wanted, but they've changed it

10:38:00AM  12    at the podium today to say, "Oh, no.  Don't do that.  Now

10:38:06AM  13    give everyone an election to prove diminution of value, to

10:38:16AM  14    prove damages from short sale or to prove remediation costs.

10:38:22AM  15    That seems to defeat the motion that they're asking you to

10:38:28AM  16    do.  And they're saying, "No, it's going to be an individual

10:38:32AM  17    election matter."  Okay.  That -- and we'll see whether that

10:38:38AM  18    happens in the ten or the 39 or how -- how they move forward

10:38:45AM  19    on that.

10:38:46AM  20         So one thing that I want to separate, whether former

10:38:52AM  21    owner is a member of the class is a different issue.  That's

10:38:55AM  22    a class definitional issue based on your Rule 23 ruling.

10:39:01AM  23    That is different from how specifically under Rule -- under

10:39:05AM  24    Louisiana law as they had moved whether former owners can

10:39:09AM  25    receive the formula.
```

Case 2:09-md-02047-EEF-MBN Document 22231 Filed 04/29/19 Page 21 of 48
Applying the Remediation Damages Formula
to the Claims of Former Owners

10:39:12AM **1** So they probably showed you better with their 39, how

10:39:19AM **2** many different facts there are in these former owners.  This

10:39:26AM **3** is our -- this was our attempt to do that.  They are all in

10:39:29AM **4** very different situations, some of them remediated, some

10:39:35AM **5** didn't remediate, some had short sales in 2011, some had

10:39:39AM **6** short sales -- some had short sales in 2018.  Those are

10:39:41AM **7** different facts, different sets of stories.

10:39:43AM **8** And Mr. Meunier in his trial plan presentation said

10:39:47AM **9** everybody has their story to tell, and we believe that is

10:39:53AM **10** true.  And we have a plan -- both sides have a plan for

10:39:57AM **11** people to tell those stories and for us to see how those play

10:40:00AM **12** out under Louisiana law and how it applies.

10:40:02AM **13** One thing that we know about Louisiana law -- and I

10:40:05AM **14** think the plaintiffs haven't disputed it, in fact they've

10:40:09AM **15** said the opposite -- that people who have remediated will get

10:40:14AM **16** on the stand and present their bills.  And we think the

10:40:19AM **17** Louisiana law is crystal clear about remediation, and I would

10:40:24AM **18** specifically point, Your Honor, to their reply brief at

10:40:31AM **19** page 9, and footnote 17, where they don't dispute this law,

10:40:35AM **20** but they say it's more factually complicated I think and then

10:40:39AM **21** they say, which is the real tale, that this is -- that

10:40:45AM **22** discussion is beyond the scope of the motion.

10:40:48AM **23** But whether former owners can get the formula or

10:40:53AM **24** whether they need to prove their damages by repair costs,

10:40:57AM **25** that is this motion.  That -- they want a blanket advisory

Applying the Remediation Damages Formula
to the Claims of Former Owners

10:41:02AM  1    ruling before we've tried even one case for how Louisiana law

10:41:06AM  2    can apply with a formula or with repair costs.  And so for

10:41:12AM  3    them not to address that issue to me on its own defeats what

10:41:19AM  4    their former motion was.  I'm going to call it their former

10:41:23AM  5    motion of a blanket across the board ruling, which they

10:41:27AM  6    seemed to have changed today.

10:41:28AM  7        But I think footnote 17 is a real tale there because

10:41:31AM  8    this law -- this law is not disputed.  And Judge Cooke

10:41:34AM  9    recognized that same thing under Florida law, and she's not

10:41:37AM 10    applying the formula to people who have remediated

10:41:42AM 11    properties.  And we think the law is even clearer in

10:41:47AM 12    Louisiana that that -- that that is the situation.

10:41:50AM 13        We also think that a blanket ruling is inappropriate

10:41:54AM 14    at this time because Louisiana law generally says that you

10:41:58AM 15    don't apply mechanical rules across the board.  And Your

10:42:04AM 16    Honor recognized that in the *Bellsouth* case, that every award

10:42:08AM 17    for property damage must be crafted according to the facts

10:42:13AM 18    surrounding each case.

10:42:13AM 19        And the parties have a very spirited legal debate

10:42:16AM 20    about what *Roman Catholic Church* means, properties that can

10:42:20AM 21    be remediated.  But one thing that we don't have a dispute on

10:42:24AM 22    is that *Roman Catholic Church,* Louisiana Supreme Court said

10:42:24AM 23    rules governing the proper measure of damages in a particular

10:42:24AM 24    case are guides only and should not be applied in an

10:42:36AM 25    arbitrary formulaic or inflexible manner.  And we think that

Case 2:09-md-02047-EEF-MBN Document 22231 Filed 04/29/19 Page 23 of 48
Applying the Remediation Damages Formula
to the Claims of Former Owners

10:42:39AM 1   that's exactly what the plaintiffs are trying to do with

10:42:42AM 2   their -- what I'll still call their former motion -- is to

10:42:48AM 3   have an arbitrary rule applied across the board.

10:42:56AM 4          And so if now they want to have an election, well,

10:43:04AM 5   that to us, that makes the point of you don't need an across

10:43:08AM 6   the board blanket advisory ruling right now.

10:43:12AM 7          And we're going to give the example of Ms. Haindel,

10:43:18AM 8   that they seem to now not dispute that she would make some

10:43:23AM 9   sort of election without the need for some sort of blanket

10:43:28AM 10  ruling.

10:43:28AM 11         Just touching back on equities, we think they're --

10:43:33AM 12  they're not irrelevant, but they don't drive and they don't

10:43:38AM 13  change Louisiana law that the Court has to apply to these

10:43:41AM 14  Louisiana claims.

10:43:42AM 15         THE COURT:  How would you deal with former owners?

10:43:45AM 16         MR. VENDERBUSH:  How would I deal with former owners?

10:43:48AM 17         THE COURT:  Yes.

10:43:48AM 18         MR. VENDERBUSH:  I would allow them to come in and

10:43:51AM 19  prove the damages that they have and tell the story that they

10:43:54AM 20  have.  We're not seeking to exclude anyone or -- or Taishan

10:44:00AM 21  is not saying that, no, they don't have damages.  It's just

10:44:05AM 22  that they don't have -- you don't apply the formula in a

10:44:11AM 23  rogue way to people who the formula may not fit the facts of

10:44:17AM 24  their case, or the damages that they actually suffered.

10:44:20AM 25         So for Ms. Haindel, if she can prove that her

Case 2:09-md-02047-EEF-MBN Document 22231 Filed 04/29/19 Page 24 of 48
Applying the Remediation Damages Formula
to the Claims of Former Owners

10:44:23AM 1   diminution in value is greater than the formula, then she may

10:44:28AM 2   be entitled to that under Louisiana law.

10:44:31AM 3         THE COURT:  He says though you created the problem.

10:44:33AM 4   How do you deal with the fact that you created the problem?

10:44:36AM 5         You delay and we've been 10 years out, even had to

10:44:42AM 6   hold you in contempt.  You created the problem.  Can you

10:44:45AM 7   profit from it?

10:44:47AM 8         MR. VENDERBUSH:  I don't think we are profiting from

10:44:49AM 9   it.  We may pay more to Ms. Haindel.  It's just when it comes

10:44:54AM 10  time to have damages and -- we also think that some of the --

10:44:57AM 11  we're not the only cause for delay here because the

10:45:00AM 12  plaintiffs have not gone as expeditiously as they might have

10:45:06AM 13  back in 2015.  We may have gotten somewhere.

10:45:10AM 14        And I know Your Honor may not feel the same way, but

10:45:14AM 15  we don't think -- we don't think that equity can -- that you

10:45:18AM 16  can change what people can recover in a way to punish the

10:45:23AM 17  defendants.  So we don't believe that we are -- we're here to

10:45:29AM 18  -- to pay what is meant to be paid, but Louisiana law guides

10:45:33AM 19  that and we think that whatever the equities are, when it

10:45:37AM 20  comes time to prove damages -- and we reject the idea that

10:45:40AM 21  it's a debt to be monetized.  I think that's -- this is not a

10:45:45AM 22  bad check case.  There are damages to be proven.  So we would

10:45:49AM 23  -- we would invite the plaintiffs to do that under the trial

10:45:52AM 24  plan that we set forward and that there's no inequity in each

10:45:58AM 25  claimant recovering the damages that they actually suffered.

| | | |
|---|---|---|
| 10:46:09AM | 1 | Thank you. |
| 10:46:23AM | 2 | THE COURT: I understand. Thank you very much. |
| 10:46:23AM | 3 | MS. CURRAULT: Your Honor, I'm Donna Currault. I'm |
| 10:46:26AM | 4 | going to be presenting on behalf of the CNMB and BNMB |
| 10:46:34AM | 5 | entities, and I'm going to try not to be too repetitive. And |
| 10:46:34AM | 6 | I'm going to start out with answering Your Honor's question. |
| 10:46:37AM | 7 | You asked Mr. Venderbush how do you deal with the |
| 10:46:40AM | 8 | former owners. And I think the answer to that is clear, and |
| 10:46:43AM | 9 | it's supported by Louisiana law and I'll show you the cases |
| 10:46:45AM | 10 | that support it. |
| 10:46:46AM | 11 | For a former owner -- and, first, let me back up. A |
| 10:46:50AM | 12 | lot of us are using the words former owner, and nobody |
| 10:46:53AM | 13 | stopped to define what that means. I believe the PSC defined |
| 10:46:57AM | 14 | it this morning as people who were current owners when the |
| 10:47:01AM | 15 | lawsuit was filed, and in the interim, while the lawsuit was |
| 10:47:06AM | 16 | pending, sold their property. That is one definition of a |
| 10:47:10AM | 17 | former owner. That's not the definition that the Louisiana |
| 10:47:13AM | 18 | Supreme Court used when they defined former owner for |
| 10:47:17AM | 19 | purposes of the Subsequent Purchaser Doctrine in Eagle Pipe |
| 10:47:23AM | 20 | -- *Eagle Pipe & Supply*. |
| 10:47:23AM | 21 | That was one of our fundamental problems with this |
| 10:47:27AM | 22 | motion. This motion presumes, it makes a foundational |
| 10:47:34AM | 23 | premise and assumes that everybody in the class is a former |
| 10:47:37AM | 24 | owner under the Subsequent Purchaser Doctrine. And we don't |
| 10:47:40AM | 25 | believe that's true. |

Case 2:09-md-02047-EEF-MBN Document 22231 Filed 04/29/19 Page 26 of 48
Applying the Remediation Damages Formula
to the Claims of Former Owners

10:47:41AM  1    We believe that discovery is needed to determine who

10:47:43AM  2  is and who is not a former owner.  And we've done the

10:47:46AM  3  discovery.  We asked for information in the supplemental

10:47:49AM  4  profile forms.  We've done the depositions and we intend to

10:47:52AM  5  file a motion to address that issue, based on the actual

10:47:56AM  6  facts in this case, not just argument and supposition, but

10:48:00AM  7  the actual facts and that's one of the motions we intend to

10:48:03AM  8  file as part of a trial plan.

10:48:05AM  9    So with that setting aside, on a proper -- I'll say

10:48:08AM 10  relevant former owner or appropriate former owner -- how do

10:48:11AM 11  we deal with them?

10:48:12AM 12    Under Louisiana law, a former owner who did not

10:48:16AM 13  remediate and no longer owns the property and therefore

10:48:21AM 14  cannot remediate is left with the measure of damages based on

10:48:26AM 15  the difference in the value of the property pre-damage and

10:48:31AM 16  post-damage and that's -- and that's what Louisiana law

10:48:33AM 17  provides.

10:48:34AM 18    This motion kind of is -- the fundamental premise of

10:48:41AM 19  the motion is, if the plaintiffs are not entitled to the

10:48:45AM 20  remediation formula, they don't have an adequate remedy at

10:48:49AM 21  law, so you need to resort to equity.  But that's not the

10:48:52AM 22  case at all.  The remediation formula is simply one method

10:48:57AM 23  whereby the Court has provided an estimation formula for

10:49:02AM 24  restoration costs and in the event restoration costs have not

10:49:09AM 25  yet been incurred.  That's just one way to measure one of the

Case 2:09-md-02047-EEF-MBN Document 22231 (Filed 04/29/19 Page 27 of 48
Applying the Remediation Damages Formula
to the Claims of Former Owners

10:49:13AM **1** different methods of establishing damages under Louisiana

10:49:15AM **2** law.

10:49:15AM **3** So not getting the formula doesn't mean there's no

10:49:19AM **4** remedy. Not getting the formula means you get one of the

10:49:23AM **5** other measures of damage recognized by Louisiana law.

10:49:23AM **6** THE COURT: Yeah. So the formula though is relevant

10:49:27AM **7** in your argument?

10:49:28AM **8** MS. CURRAULT: A former owner who has not remediated?

10:49:32AM **9** No, the formula would not even be relevant frankly.

10:49:35AM **10** I mean, they could try to argue that, but what I

10:49:37AM **11** would say is, if you give -- that would be giving more

10:49:41AM **12** damages than had been actually incurred by that plaintiff --

10:49:45AM **13** THE COURT: How do they establish this? It's been 10

10:49:48AM **14** years now.

10:49:49AM **15** How do they establish what the property 10 years ago,

10:49:53AM **16** had it not been damaged, would have been worth?

10:49:56AM **17** MS. CURRAULT: You would look at fair market value,

10:50:00AM **18** and you would look at what properties that were damaged, that

10:50:01AM **19** were sold for versus what a comparable property that was not

10:50:03AM **20** damaged sold for.

10:50:03AM **21** THE COURT: If that was more than the damage, more

10:50:05AM **22** than the formula, they would be entitled to that?

10:50:08AM **23** MS. CURRAULT: That is --

10:50:09AM **24** THE COURT: Right.

10:50:09AM **25** MS. CURRAULT: They would.

Applying the Remediation Damages Formula
to the Claims of Former Owners

10:50:10AM 1    THE COURT:  If it would be less than the damages,

10:50:15AM 2  wouldn't they be entitled to the formula?  Had you not

10:50:18AM 3  delayed them, they would have used it to repair.

10:50:18AM 4    MS. CURRAULT:  But, again --

10:50:21AM 5    THE COURT:  That's the problem I'm having in the case

10:50:24AM 6  really.  You know, we've all been here, folks, for ten years,

10:50:26AM 7  and everybody knows that I had to hold this defendant in

10:50:31AM 8  contempt of court because they wouldn't do anything.  I had

10:50:35AM 9  to go to China to take depositions in it.

10:50:38AM 10    And now we've got a situation where the people either

10:50:42AM 11  are dying or leaving because they cannot stay in the home and

10:50:46AM 12  now there's a situation that's presented that -- that they

10:50:52AM 13  shouldn't either get anything or they can't prove or they're

10:50:56AM 14  put in a position where they can't prove their damages.

10:50:59AM 15    MS. CURRAULT:  Well, I don't think that it's a matter

10:51:00AM 16  of not being able to prove.  I think there is going to be a

10:51:05AM 17  fair market value analysis.  But remember, the concept of

10:51:07AM 18  Louisiana damages here is compensation, not punishment.  And

10:51:10AM 19  I get the desire to want to punish for the past wrongdoing.

10:51:13AM 20  I get that.  That's just not supported by the law.

10:51:15AM 21    And take for instance the plaintiff that PSC used as

10:51:19AM 22  their exemplar in the motion, Ms. Haindel.  Ms. Haindel

10:51:23AM 23  discovered her Chinese drywall in 2009 and filed suit shortly

10:51:28AM 24  thereafter and sold her property in 2010.  No one, you know,

10:51:32AM 25  even the most rocket docket court, wouldn't have gotten that

Case 2:09-md-02047-EEF-MBN Document 22231 Filed 04/29/19 Page 29 of 48
Applying the Remediation Damages Formula
to the Claims of Former Owners

10:51:37AM   1    case resolved before 2010.

10:51:39AM   2          Knauf, they weren't paying people by 2010.  I think

10:51:41AM   3    that settlement was 2012.  And that's my problem with

10:51:45AM   4    addressing this globally without any actual facts because it

10:51:51AM   5    -- the invitation is to do it based on emotion rather than

10:51:57AM   6    fact.  And, unfortunately, the facts are relevant and the law

10:51:59AM   7    applies to the facts.

10:52:00AM   8          So let me run through real quick, if I can.

10:52:00AM   9          THE COURT:  Dean, do you have to do anything?

10:52:13AM  10          MS. CURRAULT:  So I think we need to start out with

10:52:15AM  11    some basic principles in Louisiana -- yeah, I think Chris

10:52:15AM  12    handed those to you guys.

10:52:20AM  13          On damage principles in Louisiana.  Okay.  Damages

10:52:23AM  14    are designed to put the party in as good of a position before

10:52:28AM  15    but not a superior position.  The objective is the full

10:52:31AM  16    repair of damages, but not to punish, no matter how

10:52:35AM  17    outrageous the conduct.

10:52:37AM  18          In the PSC's brief, they tried to say Louisiana

10:52:41AM  19    distinguishes on damages based on real property and I cite a

10:52:46AM  20    case to explain Louisiana does not distinguish on the measure

10:52:50AM  21    of damages for immovable or movable property and that's a

10:52:55AM  22    Judge Drell case from the Western District where he cited the

10:53:01AM  23    measure of damages for a destruction of a building and he

10:53:06AM  24    cited in support of a Louisiana case dealing with an

10:53:09AM  25    automobile.

Case 2:09-md-02047-EEF-MBN Document 22231 Filed 04/29/19 Page 30 of 48
Applying the Remediation Damages Formula
to the Claims of Former Owners

10:53:09AM   1          But it's the same measure that applies, movable or

10:53:12AM   2    unmovable.  And the duty to mitigate applies.  And that's

10:53:16AM   3    part of what we're -- we're addressing.  If someone has sold

10:53:21AM   4    property, then they're mitigating their damages.  And it's

10:53:25AM   5    not appropriate to say, had I not mitigated my damages, I

10:53:28AM   6    would have gotten more.  That's true.

10:53:30AM   7          If I'm in an employment case and I get a new job,

10:53:33AM   8    then I don't get as much damages because I've gotten a new

10:53:38AM   9    job because that's my obligation.  But it's not a -- you

10:53:40AM  10    can't say because I mitigated I should get more.  It's --

10:53:45AM  11    that's just inconsistent with the principle of mitigation.

10:53:51AM  12          Part of what I hear in the briefing and see is that

10:53:56AM  13    there's a desire to invoke the formula and somehow recover

10:54:01AM  14    inflated damages for the repairs because there's a feeling

10:54:06AM  15    that these other factors should come in and boost up that

10:54:14AM  16    number.  For instance, a lot of the brief discussed the

10:54:17AM  17    emotional issues that people have had and the financial

10:54:21AM  18    issues that people have gone through.  And Your Honor touched

10:54:23AM  19    upon this in the meeting prior to coming out here.

10:54:26AM  20          It is not appropriate to inflate the remediation

10:54:29AM  21    damages based on those factors which are themselves

10:54:32AM  22    compensable in certain cases.  So if you get loss of use, you

10:54:37AM  23    can't inflate remediation damages because you didn't get to

10:54:42AM  24    use it or else you're double-dipping and recovering twice.

10:54:46AM  25          After the break, Your Honor, you had asked questions

Applying the Remediation Damages Formula
to the Claims of Former Owners

10:54:49AM   1   about whether mental anguish is recoverable in Louisiana.

10:54:54AM   2   And since you asked in the status conference, I didn't have

10:54:54AM   3   time to slip it into the slide.  I'll give you a relatively

10:55:00AM   4   recent case from January of 2019, a Second Circuit case,

10:55:04AM   5   *Enriquez versus Safeway Insurance* and it's at 264 So.3d 648.

10:55:10AM   6        And that case did a really nice summary of when you

10:55:16AM   7   get loss of use as a special damage item, and when you get

10:55:19AM   8   general damages for mental anguish.  And in Louisiana, you

10:55:22AM   9   can get mental anguish damages in connection with a property

10:55:27AM  10   damage case in some instances, but not all instances.

10:55:30AM  11        And the Court was careful to say any time you have

10:55:33AM  12   property damage, you're going to have the occasional worry

10:55:38AM  13   and inconvenience and those types of things aren't

10:55:39AM  14   compensable.  But if it arises to the level of like a psychic

10:55:43AM  15   trauma that gets you close to a personal injury type damage,

10:55:47AM  16   then you can.  So you can get those types of damages in some

10:55:50AM  17   cases, but not all.  And that case was a pretty good guide

10:55:55AM  18   explaining when you can get it.

10:55:59AM  19        Next, I wanted to talk about the *Roman Catholic*

10:56:02AM  20   *Church* standard.  And you've heard it a lot.  Mr. Meunier

10:56:04AM  21   discussed it.  Mr. Venderbush discussed it.  And it really is

10:56:09AM  22   the pivotal case.

10:56:11AM  23        Incidentally, Judge Dennis wrote the *Roman Catholic*

10:56:11AM  24   *Church* case when he was on the --

10:56:11AM  25        THE COURT:  I remember.

10:56:12AM 1      MS. CURRAULT:  -- Supreme Court before he moved to

10:56:13AM 2  the Fifth Circuit.

10:56:15AM 3      And in that case, Judge Dennis went through and

10:56:19AM 4  analyzed the different types of approaches states have taken

10:56:24AM 5  all over the country on damages.  And the facts of that case

10:56:28AM 6  were critical, and you have to remember, because the question

10:56:30AM 7  that was presented was, when you have damage to a property

10:56:33AM 8  that the restoration costs exceed the fair -- may exceed the

10:56:39AM 9  fair market value, are you entitled to the full restoration

10:56:43AM 10 costs when those costs have, in fact, been incurred or are

10:56:48AM 11 you limited to cost less depreciation?  And the Supreme Court

10:56:55AM 12 said, "No, we're not going do a rigid mechanical rule," and

10:56:59AM 13 when you have -- in certain instances you are entitled to

10:57:02AM 14 full restoration.  But, again, in that case, they had, in

10:57:05AM 15 fact, been made, and that was a critical fact the Supreme

10:57:08AM 16 Court cited.

10:57:09AM 17     The PSC is arguing they're entitled to restoration

10:57:14AM 18 awards when the damages are not incurred and Your Honor asked

10:57:17AM 19 that question.  In *Hornsby versus Bayou Jack Logging* and

10:57:27AM 20 *Coleman versus Victor*, those are both Louisiana Supreme Court

10:57:31AM 21 decisions, and they both make it very clear.  The issue is,

10:57:33AM 22 you can get those damages when they can be made and, here,

10:57:36AM 23 they can't be made.

10:57:38AM 24     So the fact that -- the *Roman Catholic Church*

10:57:44AM 25 standard set forth an election whereby you get remediation

Case 2:09-md-02047-EEF-MBN  Document 22231  Filed 04/29/19  Page 33 of 48
Applying the Remediation Damages Formula
to the Claims of Former Owners

10:57:48AM   1   damages that have been or may be incurred or at the

10:57:51AM   2   plaintiffs' selection, the difference in value of the

10:57:54AM   3   property.  It's critical that you have the ability to make

10:57:56AM   4   that election.  It's only an option if you can do those

10:58:01AM   5   options.  If you have not incurred the damages and you cannot

10:58:05AM   6   incur the damages, then that option is foreclosed.  And

10:58:08AM   7   that's exactly what the Louisiana Appellate Courts have held

10:58:14AM   8   for over 50 years.

10:58:16AM   9        If you look at the *Maryland Casualty versus Rittiner*

10:58:20AM  10   case cited at the bottom of that slide, that was a situation

10:58:21AM  11   where you had a fire damage to a property and shortly after

10:58:25AM  12   the fire, the owner decided to sell the property.  The

10:58:29AM  13   Appellate Court said:  Well, certainly had you still owned

10:58:31AM  14   the property, you would have been entitled to restoration

10:58:34AM  15   damages.  But now that you've sold the property, you're

10:58:36AM  16   limited to the difference in value of the property.  So that

10:58:40AM  17   case explicitly makes clear that the capable, you know, the

10:58:45AM  18   may incur remediation damages is not restricted to situations

10:58:50AM  19   where there's a physical impossibility but, in fact, applies

10:58:56AM  20   when the plaintiff has sold the property.

10:58:58AM  21        In fact, if you read *Roman Catholic Church* carefully,

10:59:03AM  22   when the Supreme Court first starts talking about how

10:59:05AM  23   Louisiana should approach damages, it cites Section 929 of

10:59:09AM  24   the Restatement of Torts, and if you look at that, it's a

10:59:13AM  25   couple of pages ahead of the ultimate holding.  But that --

| | |
|---|---|
| 10:59:18AM 1 | that standard -- it's actually inverted under the |
| 10:59:22AM 2 | restatements.  It says you get the diminution or your |
| 10:59:26AM 3 | election the costs actually incurred or that may be incurred. |
| 10:59:29AM 4 | So it's just an interesting switch.  I don't think Louisiana |
| 10:59:32AM 5 | meant to do something different because it was embracing that |
| 10:59:35AM 6 | Section 929 standard. |
| 10:59:39AM 7 | In any event, I think these other cases make clear |
| 10:59:42AM 8 | it's not a physical impossibility issue.  If you sold the |
| 10:59:45AM 9 | property, it can't be remediated and you're left with the |
| 10:59:48AM 10 | difference in value. |
| 10:59:49AM 11 | The next slide is just a quick summary of what those |
| 10:59:54AM 12 | three approaches to damages are, and I've talked about that |
| 10:59:57AM 13 | already. |
| 10:59:57AM 14 | Of course, the Fifth Circuit has made clear in *Boston* |
| 11:00:02AM 15 | *Old Colony* that the Court's selection of the proper measure |
| 11:00:05AM 16 | of damages is a *de novo* review situation because it's a |
| 11:00:08AM 17 | fundamental issue of how to measure the damages.  And for a |
| 11:00:12AM 18 | former owner, you're going to be -- you're limited to the |
| 11:00:14AM 19 | second option, the difference in value before and after the |
| 11:00:17AM 20 | damage. |
| 11:00:17AM 21 | Okay.  So quick summary, as I saw the plaintiffs' |
| 11:00:23AM 22 | arguments, that their argument embracing the Subsequent |
| 11:00:28AM 23 | Purchaser Doctrine is that former owners should be treated as |
| 11:00:33AM 24 | current owners and receive the formula regardless of the |
| 11:00:36AM 25 | former owners actual damages.  And resorting to equity, this |

Case 2:09-md-02047-EEF-MBN Document 22231 Filed 04/29/19 Page 35 of 48
Applying the Remediation Damages Formula
to the Claims of Former Owners

11:00:40AM  1   Court should issue a blanket ruling in the abstract without

11:00:44AM  2   considering any of the underlying facts, that former owner

11:00:48AM  3   damages should be measured by the estimated remediation

11:00:51AM  4   formula.

11:00:52AM  5         And I note, there wasn't a single case cited by the

11:00:56AM  6   PSC in support of this notion, and to do so is inconsistent

11:00:59AM  7   with *Roman Catholic Church*, the *Rittiner* case, the *Hornsby*

11:01:04AM  8   *versus Bayou Logging* and numerous other cases.

11:01:06AM  9         Quick slide, of course, as Your Honor well knows, the

11:01:09AM 10   Louisiana Civil Code does not allow you to resort to equity

11:01:12AM 11   when there's an adequate remedy at law, and here we have an

11:01:18AM 12   adequate remedy of law, both the Louisiana Products Liability

11:01:22AM 13   Act and the Redhibition Code articles provide an adequate

11:01:26AM 14   remedy.  So resorting to equity is not acceptable.

11:01:28AM 15         THE COURT:  Your feeling is that the amount of

11:01:30AM 16   damages is the value before and after --

11:01:32AM 17         MS. CURRAULT:  The damage.

11:01:34AM 18         THE COURT:  -- yeah, the damage.

11:01:34AM 19         MS. CURRAULT:  Correct.

11:01:35AM 20         THE COURT:  And my question to you is, is the square

11:01:41AM 21   footage relevant or potentially relevant in dealing with that

11:01:45AM 22   value?

11:01:45AM 23         MS. CURRAULT:  Well, the square footage would be

11:01:48AM 24   relevant in reaching the value, certainly.  I mean,

11:01:51AM 25   appraisers all the time are going to look at, you know, where

Case 2:09-md-02047-EEF-MBN Document 22231 Filed 04/29/19 Page 36 of 48
Applying the Remediation Damages Formula
to the Claims of Former Owners

| | |
|---|---|
| 11:01:53AM | 1 |
| 11:01:56AM | 2 |
| 11:01:59AM | 3 |
| 11:02:02AM | 4 |
| 11:02:05AM | 5 |
| 11:02:07AM | 6 |
| 11:02:08AM | 7 |
| 11:02:11AM | 8 |
| 11:02:14AM | 9 |
| 11:02:17AM | 10 |
| 11:02:20AM | 11 |
| 11:02:25AM | 12 |
| 11:02:29AM | 13 |
| 11:02:31AM | 14 |
| 11:02:37AM | 15 |
| 11:02:40AM | 16 |
| 11:02:45AM | 17 |
| 11:02:50AM | 18 |
| 11:02:53AM | 19 |
| 11:02:58AM | 20 |
| 11:03:02AM | 21 |
| 11:03:05AM | 22 |
| 11:03:06AM | 23 |
| 11:03:09AM | 24 |
| 11:03:15AM | 25 |

1  your house is, how many bathrooms you had, and how many

2  square feet.  So it's certainly going to impact those values

3  without a doubt.

4       THE COURT:  I mean, in the cost of remediation,

5  that's the intent of it, to put it back in the same

6  condition.

7       MS. CURRAULT:  Sure.  Right.  But you know you could

8  look at the square footage and what the costs are.  But, you

9  know, you have to think about it in this way for instance.

10      Let's say you have an owner that sells the property.

11  The current buyer buys it for, you know, $150,000 less

12  because they think they can -- they can remediate and make it

13  perfect and, you know, it's a good deal.  So that's the deal.

14  So that former owner's value, their damage is going to be the

15  $150,000.  If the current owner remediates and is happy in

16  their house and they do it for $100,000, then that owner,

17  they got a good deal, you know.  They did it less than they

18  expected.  And that's the negotiation and what happens in the

19  transaction.  But you wouldn't say the former owners' damage

20  was based on the square footage formula, because we know that

21  owner may have sold it for $150,000 less.

22      Does that make sense?

23      THE COURT:  Yeah.  But what I'm struggling with --

24  and I understand that the feeling of everybody, I assume, is

25  the fact that they're in former owner position, they should

11:03:19AM   1    -- it doesn't exclude them from recovering anything.

11:03:22AM   2            MS. CURRAULT:  It doesn't exclude them from

11:03:24AM   3    recovering anything.  They'll still get recovery, but they're

11:03:27AM   4    not going to get --

11:03:27AM   5            THE COURT:  The question is, how much recovery?

11:03:29AM   6            MS. CURRAULT:  Correct.  And I say it needs to be

11:03:31AM   7    based on the value -- difference in value of the property.

11:03:34AM   8    That's their actual loss in damage and to restore that

11:03:37AM   9    plaintiff to the position he should be in would be to have

11:03:41AM  10    him had sold his property for what it would have been worth

11:03:45AM  11    absent Chinese drywall.  So that's where that damage goes.

11:03:47AM  12    It's not based on what it would have cost to fix.  Because in

11:03:50AM  13    the open market, that may not be -- those may not correlate

11:03:52AM  14    directly.

11:03:53AM  15            THE COURT:  But that's the whole purpose of restoring

11:03:56AM  16    it, to put it back to the way it was; isn't it?

11:03:58AM  17            MS. CURRAULT:  Well, you're -- it's not putting the

11:04:02AM  18    property back, it's putting the plaintiff in the position he

11:04:05AM  19    would have been in had it not happened.  So whether or not he

11:04:08AM  20    remediated and sold his property -- okay.  Let's say -- let's

11:04:11AM  21    look at a former owner who did remediate.

11:04:15AM  22            Former owner damage property, remediates, spends

11:04:19AM  23    $200,000 remediating, sells his house for 500,000, that's

11:04:24AM  24    fair value.  His loss is going to be the 200,000 he spent

11:04:29AM  25    remediating.  Same hypo for the plaintiff who doesn't

| | | |
|---|---|---|
| 11:04:29AM | 1 | remediate, same what would be a 500,000 home, doesn't |
| 11:04:31AM | 2 | remediate, sells it for 300,000.  So the difference there is |
| 11:04:37AM | 3 | 200,000.  In that instance, that would be the difference and |
| 11:04:42AM | 4 | that's what that owner would need to receive to put him in |
| 11:04:45AM | 5 | the position he would have been in had there not been Chinese |
| 11:04:48AM | 6 | drywall.  It doesn't matter what the square footage is |
| 11:04:51AM | 7 | because it's -- you're getting him back to where he should |
| 11:04:54AM | 8 | have been and that's what Louisiana law is designed to do. |
| 11:04:57AM | 9 | THE COURT:  It seems to me the square footage formula |
| 11:05:01AM | 10 | may well be relevant in showing the value before and the |
| 11:05:04AM | 11 | value after. |
| 11:05:05AM | 12 | MS. CURRAULT:  You know, I mean, I would imagine |
| 11:05:09AM | 13 | appraisers would consider that as well in the analysis, but I |
| 11:05:12AM | 14 | think based on the fair market value of the property pre and |
| 11:05:17AM | 15 | post is the critical factor. |
| 11:05:19AM | 16 | Quick discussion of subsequent purchaser issues and |
| 11:05:19AM | 17 | some of this I mentioned, so I'm going to try not to repeat |
| 11:05:24AM | 18 | it.  I think it's really important to understand it's not |
| 11:05:28AM | 19 | just former owners who owned the property at the time of the |
| 11:05:32AM | 20 | lawsuit under the Subsequent Purchaser Doctrine and *Eagle* |
| 11:05:36AM | 21 | *Pipe*.  Former owner is the owner of the property at the time |
| 11:05:39AM | 22 | of the damage.  And that's critical.  We believe and will be |
| 11:05:43AM | 23 | filing a motion, as I mentioned, to address that specific |
| 11:05:45AM | 24 | issue based on the specific facts that we obtained in |
| 11:05:48AM | 25 | discovery and we'll address it more thoroughly at that point. |

Case 2:09-md-02047-EEF-MBN Document 22231 (Filed 04/29/19) Page 39 of 48
Applying the Remediation Damages Formula
to the Claims of Former Owners

| | |
|---|---|
| 11:05:52AM | **1** |
| 11:05:54AM | **2** |
| 11:05:58AM | **3** |
| 11:06:00AM | **4** |
| 11:06:01AM | **5** |
| 11:06:05AM | **6** |
| 11:06:07AM | **7** |
| 11:06:08AM | **8** |
| 11:06:09AM | **9** |
| 11:06:15AM | **10** |
| 11:06:17AM | **11** |
| 11:06:17AM | **12** |
| 11:06:20AM | **13** |
| 11:06:22AM | **14** |
| 11:06:23AM | **15** |
| 11:06:27AM | **16** |
| 11:06:29AM | **17** |
| 11:06:37AM | **18** |
| 11:06:38AM | **19** |
| 11:06:41AM | **20** |
| 11:06:44AM | **21** |
| 11:06:48AM | **22** |
| 11:06:50AM | **23** |
| 11:06:53AM | **24** |
| 11:06:57AM | **25** |

THE COURT:  But that is one in the same, isn't it?  I mean, obviously, if they sued, they own the property.  They wouldn't have bought the property and sued?

MS. CURRAULT:  See, but that's not one in the same, and that's my point, and that's why it really is not appropriate to address it in the abstract without looking at the facts.

THE COURT:  But, I mean, in this particular case, I assume they owned the property when they put the drywall in.

MS. CURRAULT:  That's an assumption that the facts are not going to bear out, Your Honor, and that's why we think it's important.

And I call it -- you can have what I would refer to as intermediate purchasers, the person who put in the drywall, who sold it, who then sold it, who then sold it, and then they file suit.  In that instance, under the PSC's definition, the owner, when suit was filed, is who they're calling the former owner.  But really the former owner is two owners before that, and we need to see, did those sales have an assignment so that this person who owns the property at the time of suit is filed, is, in fact, the correct owner.

So, again -- and we will be filing on that motion and it's an important one, Your Honor.  And I appreciate the distinction you've raised.

And then to conclude, just to summarize very quickly,

Case 2:09-md-02047-EEF-MBN Document 22231 Filed 04/29/19 Page 40 of 48
Applying the Remediation Damages Formula
to the Claims of Former Owners

```
11:07:02AM   1    for former owners, actual damages are established.  It's the
11:07:07AM   2    difference between the pre and post -- that damage value.  It
11:07:10AM   3    is not permissible to estimate damages when actual damages
11:07:13AM   4    are known, and that throughout the case, the PSC has not
11:07:17AM   5    cited any Louisiana case to support their argument that
11:07:22AM   6    former owners should get recovery based on the estimated
11:07:26AM   7    formula, even if they're not going to use the funds to repair
11:07:28AM   8    the property.
11:07:29AM   9         And I'll mention that Mr. Meunier referenced
11:07:33AM  10    Louisiana cases where that was allowed, and I'll highlight,
11:07:36AM  11    Your Honor, I assume he's talking about Corbello, which Your
11:07:40AM  12    Honor well knows Corbello was a major case and it did result
11:07:44AM  13    in various legislative actions to ensure that money was used
11:07:48AM  14    for the purposes of remediating.
11:07:49AM  15         But the critical distinction in Corbello remember is
11:07:52AM  16    that after discussing the Roman Catholic Church standard, the
11:07:56AM  17    Supreme Court says but that's in a tort case.  This is a
11:07:58AM  18    contract case where you can contractually agree to do much
11:08:01AM  19    more, and it's a different standard.  So you can't really
11:08:05AM  20    apply Corbello to this situation without recognizing that
11:08:08AM  21    you're talking about tort versus contract.  And those are
11:08:11AM  22    very different situations.
11:08:12AM  23         So if Your Honor has any questions, I'm happy --
11:08:16AM  24         THE COURT:  No, I don't have any.
11:08:19AM  25         MS. CURRAULT:  Thank you, Your Honor.
```

Case 2:09-md-02047-EEF-MBN Document 22231 Filed 04/29/19 Page 41 of 48
Applying the Remediation Damages Formula
to the Claims of Former Owners

11:08:23AM 1          THE COURT:  Let's take five minutes for rebuttal.

11:08:27AM 2          MR. MEUNIER:  Judge, I did say in chambers I was

11:08:34AM 3   going to use something.  I neglected to do it.  So I want

11:08:39AM 4   to -- I'm sorry for the handwriting.

11:08:47AM 5          You know, this thing we're arguing about fits into an

11:08:51AM 6   overall damage recovery picture.  So what's going to be at

11:08:55AM 7   issue in these hearings are both pecuniary and non-pecuniary

11:08:59AM 8   damages.

11:09:00AM 9          Under the category of pecuniary, you have real

11:09:02AM 10  property damage.  Within the property damage category, you

11:09:08AM 11  have ways of establishing and recovering or proving property

11:09:12AM 12  damage:  Remediation or diminution of value.  You also have

11:09:17AM 13  personal property damage, impact on credit.  And then

11:09:20AM 14  non-pecuniary damage is mental anguish, inconvenience and

11:09:23AM 15  loss of use.  So all of those are in play.

11:09:26AM 16         The reason I put the asterisk where I did, what we're

11:09:30AM 17  addressing today is one category, although it's probably the

11:09:34AM 18  most important category, monetarily, of the claims to be

11:09:38AM 19  addressed, and that is the remediation formula.

11:09:41AM 20         You know, *Roman Catholic Church*, we mentioned

11:09:49AM 21  distinguished jurist, Judge Dennis, and it's a very important

11:09:52AM 22  case to the present discussion.  And I just want to be clear

11:09:56AM 23  on where the parties disagree.

11:09:58AM 24         What the Church says, this is the quote from the

11:10:01AM 25  decision -- is that the owner gets to recover damages

11:10:07AM  1   including the cost of restoration that has been or may

11:10:13AM  2   reasonably be incurred -- that's one option -- or it is the

11:10:16AM  3   election of the difference in the value.

11:10:18AM  4         The reason I'm focusing on this is that what the

11:10:22AM  5   defendants are arguing is, Judge, former owners can't get the

11:10:27AM  6   first option because they can't say that the costs have

11:10:33AM  7   reasonably been incurred.  And they have taken that out of

11:10:38AM  8   context.

11:10:38AM  9         What the Court was saying was that the actual cost of

11:10:40AM 10   restoration or the cost that may be reasonably incurred, that

11:10:45AM 11   refers to a number that you then have to compare to total

11:10:47AM 12   value.  It's a way to get to the number.  And, Judge, the

11:10:51AM 13   formula gives you the way.

11:10:53AM 14         So let me just say this:  Former owners, fact

11:10:57AM 15   question, whether you owned it when it was contaminated,

11:11:01AM 16   owned it at the time the damage occurred, fact question,

11:11:05AM 17   easily established.  You still belong to the class, same as

11:11:08AM 18   current owners.  What we're saying is, when the debt was

11:11:11AM 19   incurred, they were current owners.  They should still be

11:11:14AM 20   coming to court as current owners but for the inequities of

11:11:18AM 21   delay.  They should get the same option.

11:11:20AM 22         It's not -- I keep hearing the defendants say, you

11:11:23AM 23   know, you can't do this on a blanket basis.  Your Honor, it's

11:11:25AM 24   a simple ruling that says, that even if you are a former

11:11:29AM 25   owner but you establish that you were a current owner when

11:11:34AM 1    the contamination occurred and you were a current owner when

11:11:36AM 2    this debt was incurred 10 years ago, if you establish that,

11:11:38AM 3    you get the same option as an current owner because it's

11:11:42AM 4    inequitable otherwise.  And we don't throw you into this to

11:11:45AM 5    prove the diminution in value.  You talk about something that

11:11:49AM 6    makes a simple trial complicated.  Take the application of

11:11:51AM 7    your formula to develop the cost and restoration for Chinese

11:11:55AM 8    drywall on the one hand and then take warring experts about

11:11:59AM 9    what a property sold for, what it was worth on the market, et

11:11:59AM 10   cetera.

11:12:03AM 11         Plaintiffs have already been close to giving up.  Now

11:12:06AM 12   you're going to make them -- because of this default trap

11:12:10AM 13   that they've been in, be forced with anything other than a

11:12:13AM 14   simple just remedy.

11:12:14AM 15         And the final thing I'll say is this, you know, it

11:12:17AM 16   was mentioned, well, you're only deciding this in Louisiana

11:12:20AM 17   and you still got the former owner issue in Virginia, you

11:12:25AM 18   still got it in Florida, that's true.  I say this Court is in

11:12:29AM 19   a position to give the appropriate guidance, because in all

11:12:33AM 20   states, the former owner maintains the right to recover for

11:12:37AM 21   damage to property at the time he owned the property;

11:12:40AM 22   Virginia, Florida, and Louisiana all give that right.  The

11:12:42AM 23   question is the measurement of the recovery.

11:12:45AM 24         We didn't mention *Germano*, but that has important

11:12:50AM 25   precedent because *Germano* was decided under Virginia law in a

11:12:54AM   **1**   55(b)(2) hearing to monetize the debt, and the Morgans in

11:12:59AM   **2**   *Germano* had been foreclosed on, had left the home, they were

11:13:01AM   **3**   former owners, and Your Honor applied the remediation formula

11:13:04AM   **4**   appropriately in that case.  It's important precedent.

11:13:09AM   **5**        Finally, Judge, I'll just say, you know, the

11:13:12AM   **6**   defendants seem to be on the one hand apologetic for where

11:13:18AM   **7**   they brought us, but on the other hand saying don't punish

11:13:21AM   **8**   us.  We're not trying to punish them.  We're trying to seek

11:13:25AM   **9**   justice that is appropriate given the history of this case.

11:13:28AM   **10**        Your Honor, I appreciate your attention.  Thank you.

11:13:30AM   **11**        THE COURT:  Let me just for a minute think out loud

11:13:35AM   **12**   just about the type of trial or whatever it is.  It seems to

11:13:39AM   **13**   me that there's two issues obviously:  One is the property

11:13:44AM   **14**   damages and the other is the other losses.

11:13:46AM   **15**        Now, with regard to the property damage, it seems to

11:13:49AM   **16**   me that *Germano* and those cases that we tried are relevant in

11:13:57AM   **17**   showing that a method, an efficient method, of deciding the

11:14:02AM   **18**   property damage is square footage and the formula that we

11:14:08AM   **19**   made, bringing it up to speed or down to speed depending upon

11:14:14AM   **20**   whether the price of that goes up or down.  But in any event,

11:14:20AM   **21**   bringing it up to current deal.

11:14:23AM   **22**        That seems to me to be clear with certain owners that

11:14:34AM   **23**   it's relevant and it can be done.  And it can be done really

11:14:38AM   **24**   efficiently, more efficiently, with a Special Master.

11:14:42AM   **25**        Now, the other losses, as in Louisiana, is different

11:14:46AM 1    from other places.  That seems to me to be as triable to a

11:14:51AM 2    jury, not to a Special Master or to a Court even, and in that

11:14:58AM 3    type situation, we're dealing with other losses.  And the

11:15:09AM 4    thing that creates some problem with the former owner is that

11:15:14AM 5    the former owner, unlike the present owner, the former owner,

11:15:18AM 6    has some potentially additional other losses for pain and

11:15:29AM 7    suffering, embarrassment, loss of use, all of that sort of

11:15:33AM 8    thing -- maybe loss of use is the same -- but embarrassment,

11:15:40AM 9    pain and suffering, things of that sort.

11:15:43AM 10          Should I have a Special Master dealing with the

11:15:45AM 11   property damage and then a jury dealing with the other losses

11:15:53AM 12   in those cases or should a jury decide that whole thing for

11:16:02AM 13   the past former owners, whether I could split that damage

11:16:09AM 14   aspect in those particular cases and have -- because I don't

11:16:16AM 15   know whether it's introducible into evidence if the jury's

11:16:22AM 16   not going to decide on it.

11:16:26AM 17          I'm trying to figure in my own mind how I deal with

11:16:32AM 18   that from the standpoint of the trial plan, if I deal with

11:16:37AM 19   the jury adjusting other losses or whether the jury ought to

11:16:43AM 20   also deal with the former property owners who have other

11:16:49AM 21   issues involved that the other people don't.  I mean, there's

11:16:56AM 22   a splitting damages there that doesn't exist in the other

11:17:01AM 23   cases as I see it.  I haven't really thought it through.  But

11:17:08AM 24   that's an issue.

11:17:08AM 25          MR. MEUNIER:  Your Honor, may I say something?

Applying the Remediation Damages Formula
to the Claims of Former Owners

11:17:10AM 1    First of all, I want to remind you of *Germano* where

11:17:13AM 2  Morgan, for example, and the other set of intervenors had

11:17:15AM 3  both pecuniary and non-pecuniary damages.  And you, a single

11:17:19AM 4  fact finder, did award damages for both.  You gave

11:17:23AM 5  remediation damages to the Morgans.  You also gave them the

11:17:25AM 6  impact on their credit, et cetera.

11:17:26AM 7    But, you know, the -- first of all, I'm not

11:17:32AM 8  necessarily convinced that we have to have jury trials.  I

11:17:35AM 9  mean, I think in these 55(b)(2) evidentiary hearings, if

11:17:40AM 10  they're simplified previously by appropriate motion practice,

11:17:42AM 11  I don't know why they can't be tried to the bench.

11:17:46AM 12    But even a current owner -- let's stay with

11:17:51AM 13  Louisiana.  Even a current owner who is living in an

11:17:54AM 14  unremediated house has the right to ask for the formula

11:17:58AM 15  remediation cost of repair and non-pecuniary damages, what

11:18:02AM 16  it's been like to live with the stuff, how it's affected his

11:18:06AM 17  quality, et cetera.  So even for the current owner, you've

11:18:11AM 18  got that split, Judge, between the formulaic and

11:18:12AM 19  non-formulaic.  I don't think the fact that you got a former

11:18:14AM 20  owner impacts that question.  I think both current and former

11:18:17AM 21  have the same division.

11:18:19AM 22    The question is this:  If you make a ruling, as we

11:18:23AM 23  suggest that the formula does apply to both current and

11:18:27AM 24  former owners and we know the square footage and we establish

11:18:30AM 25  ownership status and we got product ID done, it's a

11:18:33AM  1    mechanical operation, whether the Special Master does it,

11:18:38AM  2    serves it up to you for a blessing or whether you do it in a

11:18:41AM  3    half hour in court, it's the application of math.

11:18:45AM  4         The other thing you have to hear, and I submit you

11:18:47AM  5    have to hear it no matter whether you have a former or

11:18:48AM  6    current owner in Louisiana is what other non-pecuniary

11:18:53AM  7    damages you have.

11:18:56AM  8         THE COURT:  You want to speak on that, Christy?

11:18:56AM  9         MS. EIKHOFF:  Thank you, Your Honor.  I was going to

11:18:57AM  10   make the point that Mr. Meunier just made, and I appreciate

11:19:00AM  11   that he made it, that he emphasized to the Court that there

11:19:03AM  12   are pecuniary and non-pecuniary damages for all of these

11:19:06AM  13   claims, which is why we think it's so problematic to propose

11:19:11AM  14   that some parts of some of the claims go one way and other

11:19:15AM  15   parts go another.

11:19:16AM  16        We think that the simplest, most efficient plan and

11:19:23AM  17   the one that does comport with due process is to just -- to

11:19:23AM  18   face these facts -- factual and legal issues as they come

11:19:26AM  19   through the priority cases that are selected for trial.

11:19:29AM  20   Those -- then the Court will have the opportunity to face

11:19:35AM  21   these issues in the context of a specific case, and that will

11:19:39AM  22   give us guidance for the rest of the claims.

11:19:42AM  23        THE COURT:  Okay.  Let me look at it a little more

11:19:44AM  24   closely.  I oftentimes dictate my opinion while you all are

11:19:50AM  25   here, but this issue takes a little more study.

Case 2:09-md-02047-EEF-MBN Document 22231 Filed 04/29/19 Page 48 of 48
Applying the Remediation Damages Formula
to the Claims of Former Owners

11:19:58AM  1          Thank you very much for your attention.

11:19:58AM  2          Let's take a break here, and I'll come back for the

11:20:01AM  3      rest of the motions.

4                              * * * *

5        (WHEREUPON, the Motion for an Order (Under 55(b)) Applying

6        Remediation Damages Formula to the Claims of Former Owners

7           concluded with Motions for Attorneys' Fees to follow.)

8                              * * * *

9                          REPORTER'S CERTIFICATE

10              I, Nichelle N. Drake, RPR, CRR, Official Court
    Reporter, United States District Court, Eastern District of
11  Louisiana, do hereby certify that the foregoing is a true and
    correct transcript, to the best of my ability and
12  understanding, from the record of the proceedings in the
    above-entitled and numbered matter.

13

14                  ___/s/ Nichelle N. Drake___
                    Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25