UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
IN RE:  CHINESE-MANUFACTURED DRYWALL
PRODUCTS LIABILITY LITIGATION

                  MDL No. 09-2047
VS.                 Section "L"
                  New Orleans, Louisiana
                  April 23, 2019

THIS DOCUMENT RELATES TO ALL CASES
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

TRANSCRIPT OF MOTION TO ADOPT
TRIAL PLAN OF LOUISIANA AMORIN CASES
HEARD BEFORE THE HONORABLE ELDON E. FALLON
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE PLAINTIFFS' LIAISON COUNSEL:

                  *LEN DAVIS*
                  *RUSS HERMAN*
                  HERMAN, HERMAN & KATZ
                  820 O'KEEFE AVENUE
                  NEW ORLEANS, LA 70113

                  *ARNOLD LEVIN*
                  *SANDRA L. DUGGAN*
                  LEVIN, FISHBEIN, SEDRAN & BERMAN
                  510 WALNUT STREET, SUITE 500
                  PHILADELPHIA, PA 19106

                  *GERALD E. MEUNIER*
                  GAINSBURGH, BENJAMIN, DAVID,
                  MEUNIER & WARSHAUER, LLC
                  2800 ENERGY CENTRE
                  NEW ORLEANS, LA 70163

                  *RICHARD SERPE*
                  OFFICES OF RICHARD J. SERPE
                  580 EAST MAIN STREET, SUITE 310
                  NORFOLK, VA 23510

FOR THE TAISHAN, BNMB ENTITIES
AND CNMB ENTITIES LIAISON COUNSEL:

> *HARRY ROSENBERG*
> PHELPS DUNBAR
> 365 CANAL STREET
> SUITE 2000
> NEW ORLEANS, LA 70130

FOR TAISHAN GYPSUM CO., LTD, AND TAI'AN TAISHAN PLASTERBOARD
CO., LTD.:

> *CHRISTINA H. EIKHOFF*
> *DAVID VENDERBUSH*
> ALSTON & BYRD
> ONE ATLANTIC CENTER
> 1201 WEST STREET
> ATLANTA, GA 30309

FOR THE LIAISON COUNSEL:

> *KERRY J. MILLER*
> *DANIEL S. DYSART*
> FISHMAN HAYGOOD, LLP
> 201 ST. CHARLES AVENUE
> 46TH FLOOR
> NEW ORLEANS, LA 70170

FOR THE BNMB AND CNMB ENTITIES:

> *DONNA P. CURRAULT*
> GORDON, ARATA, MCCOLLAM,
> DUPLANTIS & EAGAN
> 201 ST. CHARLES AVENUE
> 40TH FLOOR
> NEW ORLEANS, LA 70170

> *JAMES L. STENGEL*
> ORRICK HERRINGTON & SUTCLIFFE
> 51 WEST 52ND STREET
> NEW YORK, NY 10019

```
ALSO PRESENT:                    JIMMY R. FAIRCLOTH, JR.
                                 9026 JEFFERSON HIGHWAY
                                 BUILDING 2, SUITE 200
                                 BATON ROUGE, LA 70809

                                 TURNER YANCE
                                 YANCE LAW FIRM
                                 169 DAUPHINE STREET
                                 MOBILE, AL 36602

                                 ERIC HOAGLAND
                                 MCCALLUM HOAGLUND
                                 905 MONTGOMERY HIGHWAY
                                 SUITE 201
                                 VESTAVIA HILLS, AL 35216

                                 MICHAEL J. RYAN
                                 KRUPNICK CAMPBELL MALONE BUSER
                                 SLAMA HANCOCK, P.A.
                                 12 S.E. 7TH STREET
                                 SUITE 801
                                 FORT LAUDERDALE, FL 33301

                                 JAMES R. DOYLE
                                 JIM DOYLE LAW FIRM
                                 1018 PRESTON ST
                                 SUITE 850
                                 HOUSTON, TX 77002

Official Court Reporter:         Nichelle N. Drake, RPR, CRR
                                 500 Poydras Street, B-275
                                 New Orleans, Louisiana 70130
                                 (504) 589-7775


     Proceedings recorded by mechanical stenography,
transcript produced via computer.
```

1                    **P R O C E E D I N G S**

2                    (Call to order of the court.)

09:20:43AM    3         THE COURT:  All right.  We've got a number of

09:20:45AM    4    motions.  The first motion is the Louisiana *Amorin* trial

09:20:49AM    5    plan.  You all want to discuss that?

09:20:50AM    6         I was hoping we would learn something from the other

09:20:58AM    7    two very talented and wise judges in Florida and Virginia and

09:21:05AM    8    that you all would be able to give me the benefit of your

09:21:09AM    9    experience in those other areas so that we can utilize the

09:21:17AM   10    good work that they've been doing.

09:21:19AM   11         MR. MEUNIER:  To some extent, I think that's

09:21:22AM   12    possible, Judge, as I'll talk about it in a minute.  But I do

09:21:25AM   13    think this Court has been at the forefront of this Chinese

09:21:28AM   14    Drywall litigation, and I think the other judges will

09:21:30AM   15    properly be looking to some extent for guidance from you on

09:21:34AM   16    how to deal with some of the thorny issues and how to

09:21:37AM   17    expeditiously and fairly get this case resolved by trial.

09:21:40AM   18         THE COURT:  That's the unfortunate thing.  You know,

09:21:42AM   19    I didn't have one -- I did not have one Chinese Drywall case,

09:21:46AM   20    and I thought I had escaped this litigation until I find out

09:21:53AM   21    now I have all of the cases.  I guess that's the way it

09:21:54AM   22    works.

09:21:54AM   23         MR. MEUNIER:  There's no exit.

09:21:57AM   24         So, Your Honor, I'm going to talk today about the

09:22:01AM   25    trial plan that the PSC has proposed in order to move forward

09:22:09AM 1    and resolve the Louisiana *Amorin* cases.

09:22:12AM 2         Just to set this in a bit of prospective, there are

09:22:20AM 3    39 Louisiana *Amorin* cases, 39.  We started with 40, but one

09:22:25AM 4    has dropped out.  So there are 39 Louisiana *Amorin* cases,

09:22:29AM 5    which are on remand from the MDL-consolidated proceedings,

09:22:32AM 6    and they're currently before you and are being subject by

09:22:36AM 7    your orders to both fact and expert discovery.

09:22:40AM 8         THE COURT:  And these are all properties in

09:22:42AM 9    Louisiana?

09:22:43AM 10        MR. MEUNIER:  Yes, sir, all Louisiana plaintiffs, all

09:22:46AM 11   governed by Louisiana law.

09:22:47AM 12        So there's discovery being conducted.  The plaintiffs

09:22:50AM 13   are being proposed.  There is a time set aside now for some

09:22:53AM 14   expert discovery to the extent that's needed, and then in our

09:22:57AM 15   view, all 39 of these cases would have been worked up for

09:23:01AM 16   trial.

09:23:01AM 17        So the question now presented to the Court this

09:23:04AM 18   morning is when and how to proceed with the trials of those

09:23:08AM 19   cases.  And when we say "trials," let me be more specific

09:23:12AM 20   from plaintiffs' standpoint.

09:23:14AM 21        We view these as evidentiary hearings under the

09:23:19AM 22   default procedures set forth in Rule 55(b)(2).  These are

09:23:23AM 23   hearings that will allow the Court to monetize the

09:23:30AM 24   long-standing and acknowledge legal indebtedness of these

09:23:35AM 25   defendants to these plaintiffs and eventually to others who

MOTION TO ADOPT TRIAL PLAN OF LOUISIANA *AMORIN* CASES

09:23:37AM  1    are members of the certified *Amorin* class.

09:23:39AM  2         So under the plaintiffs' proposed trial plan as

09:23:46AM  3    reflected on page 1 of the two-page plan that we've submitted

09:23:50AM  4    -- and it's Record Doc 22153-2 -- all of the 39 cases in

09:23:57AM  5    which discovery is being conducted -- and that discovery will

09:24:02AM  6    last, Judge, until June 27th and then enter into a motion

09:24:09AM  7    phase between July 12 and August 15 under our plan.

09:24:14AM  8         Then we'll exchange witness and exhibit lists on the

09:24:18AM  9    designation of deposition testimony to be presented at the

09:24:21AM 10    hearings, and that'll be done by September 6th.  And then

09:24:25AM 11    there will be objections to exhibits and deposition

09:24:28AM 12    designations that will occur a week later by September 13.

09:24:31AM 13    And then the hearings in flights will be conducted starting

09:24:34AM 14    in late September.

09:24:38AM 15         So that's the general layout.  It affects all

09:24:42AM 16    39 cases.  It treats them collectively.  Again, I want to

09:24:45AM 17    emphasize that by the time this plan is implemented, each and

09:24:50AM 18    every one of these cases will have been subjected to needed

09:24:54AM 19    fact and expert discovery for trial.  And we'll start with

09:24:58AM 20    motion practice, and then we'll go to exhibits and witness

09:25:02AM 21    lists and deposition designations and then we'll conclude

09:25:09AM 22    with flights of trials.

09:25:11AM 23         THE COURT:  Trial before whom?

09:25:13AM 24         MR. MEUNIER:  Well, Your Honor, that remains to be

09:25:15AM 25    seen.  You've talked before about possibly involving other

09:25:17AM 1   fact-finding judges to preside.  We certainly think

09:25:22AM 2   whatever's the most expeditious and efficient way to proceed

09:25:27AM 3   is best, but that is a case management discussion for the, I

09:25:29AM 4   guess, the Court to give us some guidance on.

09:25:30AM 5        I know that a lot of this impacts your schedule.  A

09:25:35AM 6   lot of this impacts what you already have on your calendar.

09:25:38AM 7   And we propose starting these trials in September.

09:25:38AM 8   Obviously, that's dependent on what the Court can make

09:25:45AM 9   available and whether other judges can get involved.

09:25:47AM 10        But our main effort here, Judge, is in flights to get

09:25:50AM 11   these 39 cases heard.  I mean, we've been here for years.

09:25:54AM 12   They've been discovered.  They're simple cases in that the

09:25:56AM 13   experts -- you've limited discovery to three issues:

09:26:00AM 14   Ownership status, product ID, and square footage.

09:26:04AM 15        So let me address now the three discrete differences

09:26:11AM 16   between our approach and the defendants.  The first has to do

09:26:15AM 17   with the identification of trial plaintiffs under the

09:26:20AM 18   defendants' approach.  They say, "Okay.  We have a pool of

09:26:26AM 19   39 cases.  We, defendants, want to join with you, plaintiffs,

09:26:30AM 20   in selecting 10" -- we'll call them priority cases, the cases

09:26:36AM 21   that go to trial.

09:26:37AM 22        So under their plan, they participate in the

09:26:39AM 23   selection of the trial plaintiffs.  It's not just left to the

09:26:43AM 24   plaintiffs and the firms representing these folks.  We come

09:26:49AM 25   up with 10 out of the 39; the other 39 (sic) go back to the

09:26:54AM   1    queue and continue to wait for their day in court in a case,

09:27:01AM   2    a 55(b)(2) monetization of a 10-year-old debt.  We think

09:27:04AM   3    that's unacceptable.  We just don't think it's fair.

09:27:06AM   4         The idea that the defendants now say, "We want to

09:27:10AM   5    roll.  We want to pick who goes to trial, not just the

09:27:15AM   6    plaintiffs."

09:27:18AM   7         Come on.  You guys are going to cherry-pick.

09:27:21AM   8         "We can only hear the easy case.  We want to decide

09:27:22AM   9    who the judge hears from."

09:27:25AM   10        Why would the defendants deserve buy-in at this point

09:27:29AM   11   on trial plaintiff selection?  This is not a bellwether trial

09:27:33AM   12   exercise in an MDL where global settlement is forecast.  This

09:27:37AM   13   is anything but that.  These are not cases where we're going

09:27:41AM   14   to try to come up with instructions and educate the Court and

09:27:46AM   15   educate both sides and then we'll sit down and try to

09:27:49AM   16   extrapolate for that information.  That ship has sailed, Your

09:27:53AM   17   Honor.  We are not conducting bellwether trials.  And for

09:27:58AM   18   that reason, I do not believe that the defendants are

09:28:01AM   19   entitled, frankly, to say who goes to trial and who doesn't

09:28:03AM   20   go to trial in this group that has been worked up.  And we

09:28:07AM   21   all think -- we think all 39 are priority plaintiffs and all

09:28:10AM   22   39 should proceed.

09:28:12AM   23        THE COURT:  Let me ask you this:  I would assume

09:28:15AM   24   that the -- that the 39 plaintiffs do fall into some

09:28:21AM   25   categories, one category is obviously the present property

09:28:29AM   1   owners who have not remediated their homes.  Another property

09:28:33AM   2   -- another category seems to me to be present property owners

09:28:36AM   3   who have remediated their homes.

09:28:39AM   4        With regard to those two individuals, those two

09:28:41AM   5   groups, it seems to me that a Special Master can simply do

09:28:47AM   6   the identification and the square footage and, utilizing the

09:28:55AM   7   formula, come up with a number.

09:28:59AM   8        MR. MEUNIER:  I agree.  And I'm going to go to

09:29:02AM   9   page 2.  This is page 1 of our trial plan.

09:29:04AM   10       Page 2 is a parallel and, in fact, proceeding,

09:29:07AM   11  special master process where we can work out the overlapping

09:29:11AM   12  issues of product ID.  You today will decide whether former

09:29:16AM   13  owners are entitled to their remediation formula when they

09:29:16AM   14  haven't remediated their property before leaving.  That's a

09:29:20AM   15  big issue.  It's a threshold issue.

09:29:20AM   16       As Mr. Serpe has said, it affects all cases.  But the

09:29:27AM   17  special master, given proper guidance from that ruling in

09:29:30AM   18  particular, can work out the math.

09:29:32AM   19       Judge, in June of 2015, we were in this court trying

09:29:36AM   20  to extend a class-wide remediation formula to all plaintiffs

09:29:41AM   21  and that broke down.  We're back now.  But we do think you've

09:29:46AM   22  approved the formula.  We think it clearly applies to -- to

09:29:49AM   23  current owners who have not remediated.  We will argue today

09:29:54AM   24  it should apply to former owners who were not able to

09:29:57AM   25  remediate as well.

09:29:59AM  1    So I will talk about the flights in a minute.  But

09:30:01AM  2  the other thing before I leave this page, the difference

09:30:05AM  3  aside from the fact the defendants want to select plaintiffs

09:30:06AM  4  for trial and the defendants only want 10 of the 39 to go to

09:30:11AM  5  trial, aside from that, if you look at the defendants'

09:30:14AM  6  proposal, it differs from ours in terms of the timetable.

09:30:18AM  7    Under their plan, they'll have 10 trials occurring at

09:30:22AM  8  the end of the year, and, again, the other 29, who knows

09:30:26AM  9  when; 10 trials, end of the year.

09:30:26AM  10    The reason they want to wait until the end of the

09:30:28AM  11  year to try even 10 cases is, if you look at their plan,

09:30:33AM  12  instead of this interval that we propose for motion practice,

09:30:37AM  13  they've got *Daubert* motions separately argued and staged,

09:30:42AM  14  case specific motions other than *Daubert*.  We then get to

09:30:46AM  15  those, and then there's a third and final subpart of the

09:30:50AM  16  motion practice which is motions in limine.

09:30:52AM  17    And just let me say this on motions in limine:  The

09:30:58AM  18  evidentiary problems in these hearings should be quite

09:31:01AM  19  simple.  People are going to get on the stand and tell their

09:31:05AM  20  story.  They're going to present bills for having remediated.

09:31:09AM  21  These are not elaborate complex damages trials.  And so to

09:31:14AM  22  suggest that we need *Daubert* motion practice or that we need

09:31:16AM  23  case-specific motion practice all by itself and then we need

09:31:20AM  24  motions in limine, well, I just think, Judge, that -- this is

09:31:23AM  25  the basic difference.

09:31:25AM  1      I think the defendants are approaching this as if we

09:31:27AM  2  have a bifurcated mass tort case where we've done liability,

09:31:32AM  3  and now we're going to do damages.  And they've got the full

09:31:35AM  4  panoply of all their defenses available to them to go house

09:31:38AM  5  by house and property by property and take another 10 years

09:31:41AM  6  to try these cases.

09:31:45AM  7      This was a case that went into default almost 10

09:31:49AM  8  years ago, and through the delayed tactics of the defendants,

09:31:54AM  9  we're still here waiting for the first case to take the

09:32:00AM 10  stand, tell the story and get paid, a debt that was owed 10

09:32:04AM 11  years ago.  Now, they're going to say, "Oh, due process in

09:32:07AM 12  every case is different, and we got to go one by one and

09:32:09AM 13  property by property and house by house."  It just flies in

09:32:12AM 14  the face of fundamental fairness and equity, Judge, given the

09:32:16AM 15  history in this case.

09:32:17AM 16      So we want to condense it.  We're not trying to push

09:32:21AM 17  the defendants.  They've got large firms and great resources,

09:32:22AM 18  more than we do.  They can handle a condensed schedule if

09:32:26AM 19  anyone can.  We're not trying to deprive them of due process.

09:32:30AM 20  We're not trying to burden the Court.  We're just trying to

09:32:33AM 21  get home.  We're just trying to get 39 cases that have been

09:32:36AM 22  fully discovered in court, telling a simple story that

09:32:42AM 23  results in a fair monetization of a 10-year-old debt.

09:32:47AM 24      So the second page deals -- before I go to the second

09:32:51AM 25  page of the plan, this is a proposed flight grouping for the

09:32:59AM 1   trials.  As the Court mentioned, you asked the question,

09:33:04AM 2   well, of the 39, how many are former owners?  How many are

09:33:07AM 3   current owners?  This is one way to conduct these hearings,

09:33:11AM 4   these 55(b)(2) hearings by way of groupings.

09:33:16AM 5        We have heard Your Honor say in chambers -- and we

09:33:19AM 6   took it to heart -- that it's probably going to be necessary

09:33:24AM 7   to get home by flights.  You can't do this case one plaintiff

09:33:28AM 8   at a time.  It simply will not work.  We will be here another

09:33:32AM 9   decade.

09:33:32AM 10       THE COURT:  Do you have any feeling for how many

09:33:34AM 11  cases fall into these categories?  I know some of them

09:33:39AM 12  probably fall into more than one category.

09:33:41AM 13       MR. MEUNIER:  I don't -- in the total inventory of

09:33:44AM 14  Louisiana, I don't -- I don't have that information, Judge,

09:33:45AM 15  but I can certainly get it to you.

09:33:47AM 16       What we try to do with these 39 is categorize them

09:33:52AM 17  first by subject:  Are they former owners?  Group 1:  Former

09:33:55AM 18  owners who did short sale or foreclosure; in other words,

09:33:59AM 19  they had to sell their home.  It's a critical group.  They

09:34:02AM 20  had to sell their home without being able to remediate it.

09:34:06AM 21  That's Group 1.  And we're going to -- we're going to argue

09:34:09AM 22  today about whether they get the formula or they're limited

09:34:09AM 23  to diminution of value.

09:34:11AM 24       Group 2:  Former owners who remediated and then sold.

09:34:15AM 25  That's Group 2.  They'll have bills.  They will come in and

09:34:19AM  1  talk about the money that was spent to remediate their homes.

09:34:23AM  2      Your Honor mentioned in chambers, you know, we call

09:34:24AM  3  it the "jacuzzi effect."  Did they improve their home in the

09:34:26AM  4  process?  Did they add a wing?

09:34:27AM  5      THE COURT:  And there are only seven of those?

09:34:29AM  6      MR. MEUNIER:  In this group of 39.

09:34:29AM  7      THE COURT:  Yeah.

09:34:32AM  8      MR. MEUNIER:  In this group of 39.

09:34:32AM  9      Group 3 would be current owners who remediated by

09:34:35AM  10  Habitat or Road Home.

09:34:37AM  11      The reason we separately group them is there's going

09:34:40AM  12  to be a question in those cases as to whether Habitat or Road

09:34:45AM  13  Home is entitled to subrogation.

09:34:49AM  14      Now, these are not cases where those plaintiffs

09:34:56AM  15  assigned to Habitat or to Road Home their right to proceed.

09:34:57AM  16  They have maintained their right to sue the companies and

09:35:00AM  17  recover.  The question is:  The work was done by Habitat or

09:35:04AM  18  Road Home.  They stand by and do they get subrogation?

09:35:08AM  19      Group 4:  The current homeowners who remediated.

09:35:13AM  20  And, again, fairly straightforward.  They have bills.  They

09:35:15AM  21  hopefully have the scope and nature of full remediation that

09:35:20AM  22  the Court has deemed necessary to be made whole, and we put

09:35:24AM  23  those witnesses on the stand.  And they talk about what they

09:35:27AM  24  did and they present their bills.

09:35:28AM  25      Group 5 are current owners who remediated.  Again,

09:35:31AM **1**   it's the same -- it's an overlapping group from Group 4.

09:35:34AM **2**       Group 6 are current owners who have not remediated.

09:35:38AM **3**   They have their own story to tell.  They're living in a

09:35:42AM **4**   contaminated house.

09:35:43AM **5**       The Court has asked the question:  Are there

09:35:47AM **6**   non-pecuniary damages in this case?  There are.  And the case

09:35:52AM **7**   generally divides in Louisiana to pecuniary and

09:35:53AM **8**   non-pecuniary.

09:35:53AM **9**       On the non-pecuniary side, people get to tell what

09:35:56AM **10**  it's been like to live in a home with drywall.  They get to

09:35:59AM **11**  tell what it's been like to live through that inconvenience.

09:36:03AM **12**  They get to talk about their mental anguish.  They get to

09:36:07AM **13**  talk about the strain on the family.  That's a tellable.

09:36:09AM **14**  Those are non-pecuniary damages.  That's a story embedded in

09:36:11AM **15**  all these trials.

09:36:11AM **16**      On the pecuniary damages side, you got real property,

09:36:16AM **17**  personal property, possible impact on your credit -- your

09:36:19AM **18**  credit standing, if you had to go bankrupt or be subject to

09:36:27AM **19**  foreclosure.

09:36:27AM **20**      So there are both pecuniary and non-pecuniary

09:36:30AM **21**  damages, but the major pecuniary damage is the real estate

09:36:35AM **22**  loss and that is recoverable under Louisiana by the cost of

09:36:39AM **23**  repair that takes it back to where it was before the drywall

09:36:43AM **24**  contaminated it.

09:36:44AM **25**      Group 7, again, are current owners who have not

09:36:48AM    1    remediated and overlapped with Group 6.

09:36:49AM    2         There is no magic in this, Your Honor.  This could be

09:36:53AM    3    tweaked.  I am -- we are happy to sit down with the

09:36:56AM    4    defendants and work up a different grouping if they can come

09:37:00AM    5    up with a more sufficient way or a way that they think works

09:37:03AM    6    better for the presentation of the evidence.  But the main

09:37:07AM    7    principle here is to conduct these 55(b)(2) hearings as

09:37:12AM    8    expeditiously and as efficiently as possible.

09:37:17AM    9         So here's what the defendants are going to say:

09:37:23AM   10    They're going to say, "Judge, none of this makes sense

09:37:25AM   11    because every case is different.  They're like snowflakes.

09:37:29AM   12    They're unique.  You can't group them.  You can't do it in

09:37:31AM   13    flights.  You got to do it one at a time."

09:37:34AM   14         So, again, they want to start in December and go one

09:37:36AM   15    at a time for 30 -- for 10, one at a time for 10, starting in

09:37:40AM   16    December, and then I guess we'll hear from them later on how

09:37:41AM   17    we're going to do one at a time for the 29 that have already

09:37:46AM   18    been discovered and then we'll figure out how to do one at a

09:37:50AM   19    time for the thousands who had a debt incurred and

09:37:53AM   20    acknowledged 10 years ago and they're still waiting for the

09:37:56AM   21    debt to be paid.

09:37:57AM   22         So let me give you an example of what they say about

09:37:59AM   23    the uniqueness of plaintiffs.  In Group 1, No. 2, is Holly

09:38:07AM   24    Braselman.  These are cases that they mentioned in their

09:38:09AM   25    briefs to persuade the Court that these are so unique you

09:38:13AM **1**   can't try them to together.

09:38:15AM **2**        Braselman claims damage from a short sale, but they

09:38:18AM **3**   said, "Aha, but she did that before."  That's not a reason to

09:38:23AM **4**   remove her from a flight.

09:38:25AM **5**        That's not a reason to -- to try her alone.  And,

09:38:31AM **6**   interestingly, I think what the defendants here are signaling

09:38:34AM **7**   is that they stand ready to say that you can't prove a short

09:38:39AM **8**   sale was due to drywall.  She's done it before.  She's did it

09:38:42AM **9**   with drywall.  How do we know drywall's the reason for the

09:38:47AM **10**  short sale?  That becomes an important point later when we

09:38:51AM **11**  discuss former owners and the adequacy of the remedy of

09:38:52AM **12**  diminished value.

09:38:53AM **13**       Don't think for a moment it won't be a knockout fight

09:38:55AM **14**  with experts on their part forcing plaintiffs to come in with

09:38:58AM **15**  real estate experts to show that when they did the short sale

09:39:02AM **16**  with unremediated drywall, it wasn't the market, it was the

09:39:06AM **17**  drywall.  Listen to what they're going to say when that

09:39:08AM **18**  happens.

09:39:10AM **19**       And they're basically saying here with Braselman, "We

09:39:11AM **20**  can't believe her.  She's had a short sale before.  How do we

09:39:14AM **21**  know it was due to drywall?"  That's not a reason to take her

09:39:20AM **22**  out of a flight.  That's a reason they could challenge her

09:39:21AM **23**  when she's on the stand.

09:39:22AM **24**       The other thing, the other plaintiff they point out

09:39:23AM **25**  as being too unique to try in a flight is No. 5 in Group 1,

09:39:28AM 1   that's Zhou Zhang, and this is what they say about Zhou

09:39:39AM 2   Zhang.  He's a former owner seeking short sale damages, and

09:39:44AM 3   his bankruptcy petition was dismissed and so he's unique.  We

09:39:51AM 4   say the fact that his bankruptcy petition was dismissed

09:39:55AM 5   should be of no moment.  In fact, it may even simplify

09:40:01AM 6   matters because there won't be a trustee claiming ownership

09:40:04AM 7   of the claim.

09:40:05AM 8        Again, the fact that he's a former owner seeking

09:40:06AM 9   short sale damages is once again subject to the Court's

09:40:10AM 10  ruling today on former owners being entitled to the

09:40:14AM 11  remediation formula, but there's no reason to remove him from

09:40:18AM 12  a flight.

09:40:18AM 13       The next one they mention is -- is the Philips case,

09:40:22AM 14  which is in Group 2, No. 4, Jerry Phillips.  Now, there were

09:40:28AM 15  fundamental defenses to Mr. Phillips.  They say he never

09:40:32AM 16  owned or lived in the property.  So how are we going to try

09:40:36AM 17  his case in a flight?

09:40:37AM 18       The truth is that the property was owned by a trust

09:40:42AM 19  in which Mr. Phillips and his wife had control.  But they're

09:40:46AM 20  entitled to come into court in a flight of plaintiffs and

09:40:49AM 21  say, "Don't give him any money.  He never owned the

09:40:52AM 22  property."  But you don't pull him out and try him by

09:40:55AM 23  himself.  Every one of these cases has unique features,

09:40:58AM 24  Judge, but that still does not disabuse flights.

09:41:03AM 25       And then, finally, they talk about the Fisher case

09:41:05AM 1   which is in Group 3, No. 2.  Now, this is a pro se claimant,

09:41:07AM 2   Fisher, who is seeking personal injury damages, having

09:41:12AM 3   assigned the remediation claim.  Now, it remains to be seen,

09:41:20AM 4   what kind of weight the factfinder will give to any medical

09:41:24AM 5   records or reports or witnesses that Fisher presents on his

09:41:28AM 6   own behalf as a pro se.

09:41:31AM 7        He's assigned his remediation claim to Habitat.  And

09:41:36AM 8   remember, Habitat has been assigned thousands of claims, and

09:41:39AM 9   that is on a separate track to be addressed in and of itself.

09:41:46AM 10  So Fisher is one of those assigned to Habitat, but he's

09:41:51AM 11  represented by himself and wants to talk about his personal

09:41:51AM 12  injury.

09:41:51AM 13       What are we going to do with Fisher?  Are we going to

09:41:55AM 14  say we'll try him in three years, all alone, after we do a

09:41:59AM 15  full workup on *Daubert* and everything else?  He's in a

09:42:02AM 16  flight.  These are unique -- these unique circumstances are

09:42:05AM 17  no reasons to defeat the flight.

09:42:07AM 18       And, finally, I want to go to page 2 of the trial

09:42:12AM 19  plan, and this is the involvement of a Special Master.  Your

09:42:22AM 20  Honor, the -- one of the three issues which you have urged

09:42:26AM 21  the parties to conduct discovery on is product

09:42:30AM 22  identification.  It's a big issue.  It's a big issue.

09:42:35AM 23       And here's the thing about product ID.  It's an

09:42:40AM 24  overlapping issue.  You cannot try product brand or product

09:42:44AM 25  identification one property at a time.  You have to resolve

09:42:49AM  1   it one brand at a time.  It's the only logical way to go.

09:42:56AM  2   And if you'll notice on that flight I showed you, we did try

09:43:01AM  3   to group plaintiffs as much as possible so that the product

09:43:06AM  4   brands are overlapping.

09:43:08AM  5        So here is what has happened in product ID in

09:43:11AM  6   Florida.  The Special Masters got involved.  The plaintiffs

09:43:15AM  7   took a 30(b)(6) deposition of a company representative to

09:43:18AM  8   talk about these products.  Did you make it?  Did you not

09:43:21AM  9   make it?

09:43:21AM  10       A lot of times the answer is:  We don't know.  We

09:43:25AM  11  could have.  Maybe we didn't.  Maybe we did.  Prove it.

09:43:28AM  12       One of the problems that we frankly had with the

09:43:32AM  13  outcome of the Special Master process in Florida is that that

09:43:38AM  14  Special Master said, "You know, the plaintiffs have the

09:43:39AM  15  burden of proof."

09:43:40AM  16       I mean, forget that the allegations of fault,

09:43:42AM  17  including the allegations of product being manufactured by

09:43:47AM  18  defendant, have been factually deemed admitted by default.

09:43:52AM  19  At the very least, that shifts in our view a burden to the

09:43:57AM  20  defendants to come in and prove it's not theirs.  They have

09:43:59AM  21  the resources to do that.  They don't know what came out of

09:43:59AM  22  that mine.

09:44:02AM  23       Our information is that one mine is the source for

09:44:02AM  24  all of these bad pieces of drywall.  Two companies that use a

09:44:11AM  25  mine can offer Taishan, period.  That's our information.  But

09:44:11AM   1   Taishan is now saying that, oh, you know, you got different

09:44:13AM   2   tape and different markings and we're not so sure.  So

09:44:18AM   3   there's a -- there's a lot of confusion.

09:44:19AM   4        The way to work it out is a way that's been

09:44:24AM   5   endeavored in Florida that I submit -- I submit we do here.

09:44:28AM   6   And we'll learn from experience in Florida.  Defendants said,

09:44:30AM   7   "Don't use that.  It's got complicated, and it's too -- we

09:44:33AM   8   can't do that."  Of course, they made -- I don't know how

09:44:36AM   9   many -- 37 challenges to product ID or, you know.  It can be

09:44:40AM   10  done in an easier way.

09:44:41AM   11       But here's the truth.  There is such an overlap that

09:44:44AM   12  there are only two brands in Louisiana that are not in

09:44:49AM   13  Florida.  So why don't we take the discovery record that's

09:44:52AM   14  been developed through the Special Master process in Florida

09:44:55AM   15  and use it here and conduct discovery as either on the two

09:44:59AM   16  remaining Louisiana brands that have not yet been addressed

09:45:02AM   17  and let the Special Master make a report to you on what he or

09:45:05AM   18  she believes was or was not manufactured using in our view

09:45:15AM   19  the appropriate approach to burden of proof and rebuttable

09:45:17AM   20  presumption.

09:45:17AM   21       So we don't submit to have in these flights the issue

09:45:21AM   22  of product ID decided, potentially by different fact finders

09:45:26AM   23  in inconsistent ways.  Prior to the time these hearings are

09:45:29AM   24  conducted, we submit that there should be a special master

09:45:33AM   25  process on product ID, resulting in a report, a

09:45:34AM 1   recommendation, objections, and then, Judge, you make the

09:45:38AM 2   call on which products likely were manufactured by the

09:45:43AM 3   defendants or not.

09:45:43AM 4        So, essentially, Your Honor, that is our approach to

09:45:51AM 5   have all 39 plaintiffs who are currently being discovered,

09:45:59AM 6   become trial plaintiffs, condense the remaining schedule of

09:46:04AM 7   events that have to happen under the default discovery --

09:46:08AM 8   under the default procedure, group them so that they can be

09:46:12AM 9   logically addressed and then move on.

09:46:15AM 10       Under our plan by the end of the year, you'll at

09:46:18AM 11  least have 39 plaintiffs who have had their day in court.

09:46:23AM 12       Thank you.

09:46:23AM 13       THE COURT:  Okay.  Thank you.  Let me hear from

09:46:30AM 14  defendants.

09:46:34AM 15       MS. EIKHOFF:  Good morning, Your Honor, Christy

09:46:55AM 16  Eikhoff on behalf of Taishan.  I understand that counsel for

09:47:00AM 17  BNMB may also address the plaintiffs' argument.

09:47:00AM 18       THE COURT:  Sure.  Okay.

09:47:04AM 19       MS. EIKHOFF:  Your Honor, this isn't the first time

09:47:05AM 20  that I've stood before this Court talking about how these

09:47:09AM 21  cases should be tried and how they should be adjudicated.  As

09:47:13AM 22  Your Honor is well familiar, we were here before you in

09:47:16AM 23  August of 2018, just several months ago, and we had trial

09:47:21AM 24  plans in front of you then, Your Honor.

09:47:24AM 25       And this is a slide that I'm recycling.  It was my

09:47:28AM  1   first slide in August and it's just as true today as it was

09:47:32AM  2   then.

09:47:32AM  3          Under the Occum's razor principal, the simplest

09:47:37AM  4   solution tends to be the right one.  And we believe that our

09:47:41AM  5   plan is -- is more efficient.  We understand that the PSC is

09:47:45AM  6   trying to push the idea of efficiency and resolution, but

09:47:52AM  7   their plan is actually extremely complex and I think you

09:47:55AM  8   heard some of that in Mr. Meunier's remarks.

09:48:01AM  9          The PSC submitted to this Court a plan back then

09:48:03AM  10  where they would divert some of these damages to a Special

09:48:06AM  11  Master, some of the issues to a Special Master, have other

09:48:09AM  12  issues for the same claimants go on separate tracks.  And

09:48:14AM  13  Your Honor issued the Court's order in October considering

09:48:17AM  14  the arguments and setting up a premise by which the cases --

09:48:25AM  15  each side would pick 20 cases.  That would be a discovery

09:48:29AM  16  pool from which cases will be selected for trial at a later

09:48:34AM  17  date.

09:48:35AM  18         This is -- the Court implemented a simple

09:48:44AM  19  bellwether-type approach; find readily triable useful

09:48:47AM  20  priority claimants, try all of their damages and factual

09:48:49AM  21  issues in one proceeding before the judge, and bring those

09:48:52AM  22  individual claims to judgment.

09:48:54AM  23         THE COURT:  There are 39 Louisiana cases though.

09:48:57AM  24  We're only dealing with 39 cases.

09:49:00AM  25         MS. EIKHOFF:  There are 39 that were selected for

09:49:02AM  1   that discovery pool.  There were originally 40, Your Honor,

09:49:06AM  2   but one of them had to drop out for health reasons.  So there

09:49:10AM  3   are currently 39; 19 that were picked by defendants; 20 that

09:49:15AM  4   were picked by the plaintiffs.  So --

09:49:16AM  5        THE COURT:  Is that the whole scope of the Louisiana

09:49:19AM  6   *Amorin* cases if -- 39 cases?  Are there any more *Amorin* cases

09:49:22AM  7   in Louisiana?

09:49:23AM  8        MS. EIKHOFF:  There's 750 or somewhere between 725

09:49:27AM  9   and 750.

09:49:29AM  10       THE COURT:  Okay.

09:49:29AM  11       MS. EIKHOFF:  So these were picked to be priority

09:49:31AM  12  claims to examine with discovery, and then that would be a

09:49:35AM  13  discovery pool from which cases would be selected for trial.

09:49:39AM  14       So where are we, Your Honor?  We have completed fact

09:49:43AM  15  discovery on the 39 priority claimants.  That was completed

09:49:48AM  16  April 12th.

09:49:48AM  17       Expert disclosures are coming up, and, Your Honor, in

09:49:52AM  18  Florida, the expert discovery period was before the Louisiana

09:49:55AM  19  discovery period, and both sides identified six experts each.

09:50:00AM  20  So you're looking at 12 experts at least in Florida and would

09:50:06AM  21  expect somewhere around the same number, if not the same

09:50:09AM  22  number, here in Louisiana.  And then pursuant to this court's

09:50:12AM  23  October order, the close of expert discovery is June 28th,

09:50:18AM  24  pursuant to the orders that have been entered in the court.

09:50:21AM  25       Your Honor, our plan is a logical extension of this

09:50:24AM **1**   Court's prior orders and where we are today.  We picked cases

09:50:30AM **2**   from the discovery pool just as this Court's October order

09:50:35AM **3**   anticipated.  We follow an orderly and sensible, but

09:50:39AM **4**   accelerated path to trial and we start turning these cases

09:50:43AM **5**   before the end of the year, and those cases will give us

09:50:46AM **6**   guidance about what to do with the rest of the cases.  We

09:50:50AM **7**   will tackle some of the legal and factual issues that arise

09:50:54AM **8**   in those cases.

09:50:55AM **9**        Now, I heard Mr. Meunier say, "Oh, they're -- that's

09:51:00AM **10**  going to be years and years from now.  They're never going to

09:51:03AM **11**  want to do anything with those other cases.  That ship has

09:51:06AM **12**  sailed."

09:51:07AM **13**       Your Honor, that ship hasn't sailed.  And

09:51:08AM **14**  specifically in terms of pursuing resolution of the remaining

09:51:11AM **15**  700-plus cases, we have a court-ordered mediation scheduled

09:51:17AM **16**  in Florida.  It's actually going to take place in Texas, a

09:51:22AM **17**  month from today, and no party has limited those discussions

09:51:26AM **18**  to just cases in Florida.  So the parties are continuing to

09:51:31AM **19**  discuss and pursue potential resolution that could

09:51:34AM **20**  potentially include the Louisiana cases as well.  So we

09:51:40AM **21**  shouldn't just write off that there's no way we could ever

09:51:45AM **22**  consider resolving the cases that have not -- that are yet to

09:51:47AM **23**  be tried.

09:51:48AM **24**       Now, whereas our plan is the logical extension and

09:51:55AM **25**  gives this Court time to go through the issues that will be

09:51:58AM 1    presented by the select cases, the plaintiffs' plan is really

09:52:03AM 2    unworkable.  And I think that that was actually compounded

09:52:06AM 3    and amplified by Mr. Meunier's presentation today because

09:52:12AM 4    what they have proposed is that this Court will need to

09:52:16AM 5    decide at one time all motions for all 39 cases, *Daubert* for

09:52:25AM 6    approximately 12 experts, all at the same time, same time as

09:52:29AM 7    motions for summary judgment, same time as pretrial motions,

09:52:33AM 8    same time as motions in limine.  Every single motion that can

09:52:37AM 9    be filed for those cases will be submitted to this Court at

09:52:40AM 10   the same time for decision at the same time.

09:52:45AM 11        And, Your Honor, that is just compressed to the point

09:52:48AM 12   of absurdity, but more importantly, it taxes this Court with

09:52:53AM 13   making multiple simultaneous decisions on critical issues.

09:52:57AM 14   Instead of following the normal sequence, what we have laid

09:53:01AM 15   out is the normal sequence in this Court -- in the practice

09:53:06AM 16   of this Court to address *Daubert* first, then to address

09:53:09AM 17   motions of summary judgment because that's going to be

09:53:10AM 18   affected by the *Daubert* decisions and then close to trial,

09:53:14AM 19   doing the motions in limine.

09:53:17AM 20        And, Your Honor, our plan is still very accelerated.

09:53:22AM 21   So going with the plaintiffs' extremely burdensome plan only

09:53:27AM 22   saves about 90 days from the start of trial.  And so we're --

09:53:35AM 23   the cost far out exceeds the benefit, the potential benefit,

09:53:39AM 24   of doing all 39 cases on this extremely accelerated schedule.

09:53:44AM 25        Now, we have a difference of view from the PSC on

09:53:52AM  1    doing 30 -- trying to get 39 done before the end of the year

09:53:56AM  2    versus starting with 10.  Their insistence on trying all 39

09:54:02AM  3    priority claims obediently before the end of the year isn't

09:54:06AM  4    consistent with this Court's October Order and Reasons which

09:54:09AM  5    I had the quote on the screen earlier.  And there's a lot of

09:54:14AM  6    discussion of flights, and we saw for the first time this

09:54:17AM  7    morning the plaintiffs' proposal for how they would group

09:54:22AM  8    these cases.

09:54:22AM  9        And Mr. Meunier went through and he showed this slide

09:54:26AM  10   as their proposed groupings which we've never seen before.

09:54:33AM  11   But, Your Honor, just hearing the facts of some of these

09:54:36AM  12   cases is the illustration of why it's going to be so

09:54:39AM  13   difficult to try to do these together in groups.

09:54:42AM  14       You heard about the Fishers, who are only -- who are

09:54:46AM  15   *pro se* and only seeking personal injury damages.  They are --

09:54:51AM  16   their claims are very different from the other claims in

09:54:55AM  17   here.  And Mr. Meunier went through and told stories about

09:55:01AM  18   several of the examples that we raised and each of those

09:55:06AM  19   stories told a different story.

09:55:07AM  20       So just looking at their proposed Group 1, Group 1:

09:55:11AM  21   Former owner, short sale or foreclosure, each of those short

09:55:15AM  22   sale and foreclosure stories are going to be different.

09:55:18AM  23   People have different facts and circumstances.  In some of

09:55:23AM  24   them, Chinese drywall may have played a big role or exclusive

09:55:28AM  25   role.  In some of them, it may have had little to no role at

09:55:31AM 1    all.

09:55:31AM 2          One of the examples, Ms. Braselman, he said, "well,

09:55:32AM 3    defendants said she had a short sale before.  We should

09:55:35AM 4    disregard it."

09:55:36AM 5          We're not disregarding it.  She had seven short sales

09:55:40AM 6    in the same neighborhood, in the same time period, and the

09:55:43AM 7    other ones didn't have Chinese drywall.  So that's a fact

09:55:46AM 8    that needs to be explored.  And we're not saying -- we're not

09:55:51AM 9    throwing her out or disregarding her.  We're just saying that

09:55:57AM 10   case is going to tell its own story and it's going to make

09:56:00AM 11   more sense and be more efficient to do it in -- when we can

09:56:03AM 12   hear her story and not get it muddled up with all the other

09:56:08AM 13   stories that will be told in a group of five, six, or even

09:56:13AM 14   seven other individual claimants.

09:56:18AM 15         Now, in terms of the Special Master plan, this is a

09:56:25AM 16   renewal of the argument that they made back in August that

09:56:28AM 17   was not adopted at that time by the Court.  Your Honor, it is

09:56:31AM 18   not a simplification to separate out some damages and put

09:56:37AM 19   them on a different track than the rest of the damages for

09:56:41AM 20   the same claimant, separating the egg from the yoke, as -- as

09:56:47AM 21   the saying goes, is going to be very difficult.  And we heard

09:56:51AM 22   a lot in their brief and today about, well, you got to look

09:56:56AM 23   to what Florida did and get some efficiencies from Florida

09:57:01AM 24   and specifically focused on product identification.

09:57:07AM 25         But, Your Honor, I really need to point out to you

09:57:09AM  1   that the plaintiffs are not seeking to use the Florida

09:57:12AM  2   Special Master's findings on PID in this Court, not at all.

09:57:18AM  3   And they are also not limiting the role of the Special Master

09:57:21AM  4   to product identification.

09:57:23AM  5       So what's happening in terms of PID and what happened

09:57:27AM  6   in Florida is that the Special Master in Florida did issue on

09:57:31AM  7   April 8th for special -- her Report and Recommendation, and

09:57:36AM  8   it was not entirely favorable to the plaintiffs and they are

09:57:41AM  9   now seeking to object to that, and they have said in footnote

09:57:46AM  10  2 of their reply brief to this Court that they intend to

09:57:50AM  11  object and now that they are saying that there is a -- they

09:57:56AM  12  have a new theory of -- on burden of proof, which they had

09:57:59AM  13  never once articulated in any court.  They are asking the

09:58:02AM  14  district court in Florida to throw out all of the PID work

09:58:06AM  15  that was done by the Special Master, and they are asking the

09:58:10AM  16  district court there to apply a new standard of proof which

09:58:13AM  17  we heard articulated, which is that they don't have any

09:58:18AM  18  burden of proof because of defaults, again, a completely new

09:58:22AM  19  argument they had not made before.

09:58:22AM  20      So they are not planning to use the Special Master's

09:58:27AM  21  PID Report and Recommendation here in Louisiana.  What

09:58:30AM  22  they're really seeking is a do-over so they can get a

09:58:33AM  23  different Special Master, and they're hoping to get a

09:58:35AM  24  different result than they got here.

09:58:37AM  25      Now, how would we propose to treat product ID under

09:58:43AM 1    our plan?  The select cases have various product ID, and you

09:58:47AM 2    can see that from the plaintiffs' proposed grouping.  They

09:58:51AM 3    have in parentheses the different markings.  I know that Mr.

09:58:58AM 4    Meunier said that they tried to group them by markings, but

09:59:00AM 5    that does not appear at all to be the case.  You can see that

09:59:03AM 6    every flight that they have proposed has at least two, if not

09:59:06AM 7    more, variations of product ID.  But we believe that product

09:59:14AM 8    ID determinations can be made in select cases, and so a

09:59:17AM 9    determination can be made if a particular marking is

09:59:22AM 10   Taishan's marking or not, was it manufactured by Taishan or

09:59:25AM 11   not.  And then that decision has been made in -- by this

09:59:29AM 12   Court and will certainly have an influential, if not

09:59:36AM 13   preclusive, effect on the same markings held by other

09:59:41AM 14   claimants.  And we also believe that this Court can take

09:59:45AM 15   judicial notice of Florida's Special Master PID findings of

09:59:49AM 16   course.  So that -- so that could also come into play in the

09:59:56AM 17   adjudications of these cases.

09:59:58AM 18          And there is no dispute that the discovery that we

10:00:02AM 19   did on PID for Florida can be used in these cases as well.

10:00:07AM 20   We agree to that ahead of time, that it would be useable in

10:00:13AM 21   Louisiana, it would be useable in Virginia.  So that's not a

10:00:15AM 22   problem.

10:00:16AM 23          So the Special Master track that they're proposing

10:00:19AM 24   first of all was not adopted by this Court when they proposed

10:00:23AM 25   it the first time.  And second of all, it is only going to

10:00:26AM  1    complexify the adjudication of these cases, and they're

10:00:30AM  2    pushing for it so hard, especially focusing on PID because

10:00:36AM  3    they want a do-over of how it went for them in Florida.

10:00:39AM  4         But, also, their Special Master plan is not limited

10:00:43AM  5    to just PID, having a Special Master look at categories of

10:00:50AM  6    PID.  They want this Court to delegate all remediation

10:00:54AM  7    damages adjudication in consideration of factual and legal

10:00:58AM  8    defenses to a Special Master.  So segregate out from these

10:01:03AM  9    cases, even the priority cases, whether there's 10 or 39,

10:01:07AM 10    separate those damages out and have a Special Master decide

10:01:10AM 11    them along with 700-plus others, and then have this Court,

10:01:15AM 12    when it's adjudicating the select priority cases ignore the

10:01:22AM 13    evidence that relates to their property damages, can only

10:01:26AM 14    look at other categories of damages, that's -- that's just

10:01:28AM 15    not efficient, and it just doesn't make sense.  It's not the

10:01:32AM 16    best way to get to resolution of these cases.

10:01:42AM 17         THE COURT:  Okay.

10:01:50AM 18         MR. STENGEL:  Good morning, Your Honor, Jim Stengel,

10:01:53AM 19    from Orrick Herrington for CNMB and BNMB.

10:01:56AM 20         We're uniquely situated in this litigation that all

10:02:01AM 21    of our liabilities derivative of Taishan's product sales --

10:02:03AM 22    and I won't burden you or the record with a recital of the

10:02:06AM 23    ways that we think we preserve the objections to the

10:02:08AM 24    procedure here, but we don't believe we're in default.  We

10:02:11AM 25    think we have full rights.  We don't need to get to that here

MOTION TO ADOPT TRIAL PLAN OF LOUISIANA *AMORIN* CASES

10:02:17AM 1 though, because what you heard from Mr. Meunier on behalf of

10:02:18AM 2 the PSC is a very different and I would say extra-legal

10:02:21AM 3 perception of where the burdens reside in the damages portion

10:02:25AM 4 of this proceeding.

10:02:26AM 5      The plaintiffs still have the burden to conform with

10:02:28AM 6 evidence of damage, and they have to do it in a procedurally

10:02:31AM 7 appropriate way.  And what you're seeing here with the

10:02:33AM 8 proposal from the PSC does real violence to due process

10:02:38AM 9 rights to the defendants.  There's a premise with what Mr.

10:02:44AM 10 Meunier said which I think we have to address which is

10:02:44AM 11 frankly unfair in this context.  He was basically saying

10:02:47AM 12 there's no utility in bellwethers in this case.  We're past

10:02:50AM 13 that.  That ship has sailed I think was the expression he

10:02:54AM 14 used.

10:02:54AM 15      Well, Your Honor, and we don't need to get into the

10:02:57AM 16 how's, why's, and who's on this, but this case has settled

10:03:01AM 17 once.  And, obviously, none of us are sitting here saying we

10:03:03AM 18 can't resolve this case by an individual adjudication of

10:03:07AM 19 every one of three thousand cases.  But for a variety of

10:03:10AM 20 historical reasons, we have not had a true contested

10:03:14AM 21 bellwether process at all of this litigation.

10:03:16AM 22      And we started this process of these trials with the

10:03:19AM 23 idea that we would gain valuable information as to the

10:03:22AM 24 evaluation of these claims, the strengths and weaknesses of

10:03:24AM 25 both sides' positions, and that I think was the Court's

MOTION TO ADOPT TRIAL PLAN OF LOUISIANA *AMORIN* CASES

10:03:26AM **1** perception and our perception where we started.  That didn't

10:03:31AM **2** involve a streamlined administrative process.  It didn't

10:03:34AM **3** involve sort of flights which in our view would violate due

10:03:37AM **4** process under Rule 42.  There's no basis for consolidation

10:03:41AM **5** here.  But it would strip out the utility of this process.

10:03:42AM **6**       Mr. Meunier's right, that there's no reason for us to

10:03:45AM **7** get intelligence or information about this population of

10:03:48AM **8** cases, that we are all consigned to an endless process of

10:03:54AM **9** individual case adjudication.  We all need to sit back and

10:03:56AM **10** figure out how we do that.  It's going to be difficult to

10:03:58AM **11** figure out how we figure out how to do that consistent with

10:04:01AM **12** due process and the rules of this Circuit, et cetera.  I

10:04:04AM **13** don't think that's where we are.  And I'm more optimistic

10:04:07AM **14** that this process, if done properly -- and I think the

10:04:10AM **15** defendants proposal is this process done properly -- can

10:04:14AM **16** yield valuable intelligence that we could use in deciding

10:04:16AM **17** what to do in these cases.

10:04:18AM **18**       Now, the experience we've had in Florida so far I

10:04:21AM **19** think helps inform this.  Because one of the things I think

10:04:24AM **20** we are learning, perhaps painfully in some ways, is that the

10:04:29AM **21** categories of property damage here are in large measure

10:04:31AM **22** impacted by state law limitations.  And I know Your Honor's

10:04:35AM **23** going to hear former owners in a moment, and I won't get into

10:04:38AM **24** the merits of that dispute.

10:04:40AM **25**       But if you look at whether you're in Florida or

10:04:42AM   1   Louisiana or anywhere else, those issues impact substantially

10:04:45AM   2   how cases are going to be evaluated and what proof the

10:04:48AM   3   plaintiffs have to put on.  And what the defendants have

10:04:51AM   4   proposed here is a process that I think will get us valuable

10:04:54AM   5   information, will tease out the places where the state law

10:04:59AM   6   limitations truly bind.  They impact case valuations.  And

10:05:03AM   7   what we're suggesting is we have a -- yet, again, a point of

10:05:08AM   8   inflexion or choice here.

10:05:09AM   9        The defendants are proposing a very accelerated path

10:05:12AM   10  that gives us and this Court a chance to do the pretrial

10:05:16AM   11  adjudication that you would normally do in a way that we

10:05:19AM   12  think is fair and likely to be accurate and useful for all of

10:05:23AM   13  these cases.  The compression that the PSC urges runs the

10:05:28AM   14  risk of decisions that aren't made on a full record with full

10:05:32AM   15  consideration and are less useful going forward.

10:05:35AM   16       The idea of the flights, again, we view is an

10:05:38AM   17  inappropriate due process validating consolidation.  It

10:05:42AM   18  shouldn't happen and it's not necessary.  If we're trying to

10:05:45AM   19  deal with what we do with these 39 priority claimant

10:05:51AM   20  population, that's addressable.  That's doable.  And the

10:05:53AM   21  defendants have made it quite clear we're willing to live

10:05:57AM   22  with fairly stern acceleration of what the normal procedures

10:06:01AM   23  and timelines would be.  That's okay.  We understand that.

10:06:03AM   24  But what we aren't willing to do is see our due process

10:06:07AM   25  rights truncated or eliminated in a sort of process that's

10:06:13AM  1   stumbling forward in a way that we don't think purports with

10:06:17AM  2   the law of due process or frankly rationality.

10:06:21AM  3          Thank you, Your Honor.

10:06:23AM  4          THE COURT:  Okay.  Thank you very much.

10:06:24AM  5          Why don't you shorten it as quickly as you can.  I

10:06:28AM  6   got the issue.

10:06:29AM  7          MR. MEUNIER:  What about the due process rights of

10:06:33AM  8   the plaintiffs?

10:06:34AM  9          Your Honor, we're not saying there's no reason to

10:06:37AM  10  learn something from the trials that we are proposing, but

10:06:43AM  11  you'll forgive us if we have some hesitation in believing

10:06:47AM  12  that this needed learning process that the defendants insist

10:06:51AM  13  on, which will drag this thing on for years and years, is

10:06:55AM  14  going to lead to anything fruitful.

10:06:59AM  15         The condensed motion practice is not a problem when

10:07:03AM  16  there are only discrete narrow issues to be tried.  The

10:07:08AM  17  different facts and circumstances don't change that.  There

10:07:12AM  18  are only certain triable issues.  We don't need extensive

10:07:18AM  19  *Daubert* motion practice.

10:07:19AM  20         And, you know, the product ID approach that the

10:07:27AM  21  defendants are taking is really hard to comprehend.  They

10:07:31AM  22  say, "Try product ID one plaintiff at a time."  And I think

10:07:39AM  23  the words I heard were:  Your ruling on that would be

10:07:43AM  24  influential, if not preclusive.

10:07:46AM  25         They're not even admitting that the call on product

10:07:50AM  1    ID for one plaintiff in one trial is going to mean anything

10:07:55AM  2    for others with the same product.  We've got to do product ID

10:07:58AM  3    by product, not by plaintiff.

10:07:59AM  4         And it's true, Judge.  The Special Master proposal

10:08:02AM  5    that we made previously was not one accepted at that time by

10:08:06AM  6    the Court, but what's changed is that we have a track record

10:08:09AM  7    now in Florida and a discovery record in Florida that can be

10:08:16AM  8    used particularly on product ID.  And it makes sense for the

10:08:19AM  9    Special Master to do that.

10:08:20AM  10        The only final thing I'll say about the Special

10:08:24AM  11   Master, once it's determined which plaintiffs are entitled to

10:08:27AM  12   the remediation formula and once it's known what the square

10:08:32AM  13   footage in that property is, it is a math question.  That's

10:08:37AM  14   why the Special Master makes sense to do those calculations.

10:08:41AM  15   They can challenge them.  That recommendation is made to the

10:08:45AM  16   Court and then you decide.

10:08:46AM  17        Thank you, Judge.

10:08:47AM  18        THE COURT:  All right.  Thank you very much.

19                          * * * *

20        (WHEREUPON, the Motion to Adopt Trial Plan of Louisiana

21             *Amorin* Cases concluded with Motion for an Order

22             Applying Remediation Damages Formula to the

23                Claims of Former Owners to follow.)

24                          * * * *

25

1                    REPORTER'S CERTIFICATE

2          I, Nichelle N. Drake, RPR, CRR, Official Court
   Reporter, United States District Court, Eastern District of
3  Louisiana, do hereby certify that the foregoing is a true and
   correct transcript, to the best of my ability and
4  understanding, from the record of the proceedings in the
   above-entitled and numbered matter.

5

6                      ___/s/ Nichelle N. Drake___
                       Official Court Reporter

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25