UNITED STATES DISTRICT COURT EASTERN

DISTRICT OF LOUISIANA

IN RE: CHINESE -MANUFACTURED MDL

NO. 2047 DRYWALL PRODUCTS

LIABILITY LITIGATION



SECTION: L

JUDGE: ELDON FALLON

MAGISTRATE WILKINSON

## PLAINTIFF GUILFORT DIEUVIL'S OBJECTION TO

## SPECIAL MASTER'S REPORT

Pursuant to Rule 53 of the Rules of the Court of Federal Claims (RCFC), and the MDL Settlement Agreement, Plaintiff/Claimant, Guilfort Dieuvil objects to the Report of Special Master Daniel Balhoff, based on numerous factual inaccuracies, flawed, misleading statements, grossly prejudicial statements, impaired and improper legal conclusions which permeate the Report. Defendant's counsel, Knauf referred this matter to Special Master. Pursuant to MDL settlement agreement, and Rule 60(b)(3), Claimant Mr. Dieuvil hereby requests continuance that the Judge rejects the Special Master Report, and permit Plaintiff to obtain final document discovery, and take depositions of Defendant and related parties, and allow this matter to continue through final proceedings, closing memoranda, and Summary of arguments. The Standard of Review of the Special Master's Report flawed with inaccuracies, bias and shall

---

Exhibit "A" Executed Special Warranty Deed outlined purchased price of the home $1,142,015.00 not including closing cost

Exhibit "B"See copy of Special Master's report

herein considered as de novo pursuant to RCFC 53. The assigned judge must decide de novo all objections to findings of fact, and the honorable court has ultimate right and authority as provided by Rule 6(d) and the MDL settlement agreement to modify the report or reject it in whole or in any part or may receive further evidence or may recommit it with instructions. It appears that Special Master report failed to make his findings based on facts, and conclusions of laws are discernable, misconstruable and are objected in the format set forth herein.

1)       Special Master provided what amounts to prejudicial report at the very least improper advocacy for the Defendant, Knauf, drawing improper inferences, inaccurate statements and impaired legal conclusions without affording and analyzing facts by the Special Master's reckless report.  Due process or even an opportunity was given to address, correct, or provide explanations for Special Master's incorrect assumptions and conclusions prior to their publication. Unfortunately, it appears that the Special Master has taken up the mantle of advocate, and in so doing; has laid down any legitimacy as a neutral adjunct of this Court.

2)       At all material times, Special Master's report cannot be relied upon to provide the Court with unbiased reporting and dependable recommendations, and this report should; therefore, be revoked. Additionally, the Special Master has exposed a rank bias in favor of the Defendant, Knauf and Glhomes, in this case by drafting his Report to read like Claimant is the sole to be condemned and responsible for the fact that Claimant paid almost $1,200,000.00 for the subject property, while Claimant and his family were living into a defective and toxic and defective Knauf's Chinese Drywalls. Special Master's Report is misleading, flawed, fallacious with impaired judgement, improper legal conclusions and insanity.

Exhibit "C" Copies of emails from Glhomes while his counsel repeatedly refused to repair the home, contrary to Master's

BACKGROUND:

3)      In January 2007 Claimant did the closing on a new spec home, built by the builder

Glhomes. While living in the subject property, serious health issues started to take place, and

Claimant and his kids were seeking medical assistance without knowledge that the house

contained defective Chinese Drywalls.


4)      In 2010 the builder (Glhomes) conducted an inspection at the subject property, after

inspection Glhomes advised Claimant that the home was built with Chinese Drywalls. Upon

knowledge of such facts, on April 15, 2010 Claimant rushed to enter into agreement with the

builder to remediate the home, with expectations and agreements to change all corroded studs,

and to use all court orders, regulations and requirements, and to bring the home free from

chemical and toxic Chinese Drywalls. The Builder/Glhomes revealed and noticed during

demolition that the subject property was built in facts with Knauf's drywalls brand and American

Drywalls Brand.

5)      During demolition and initial remediation, Glhomes immediately collected multiple

samples of the KPT Drywalls and other related components as evidences. Glhomes took and

preserved those KPT's samples and American Brand samples as evidences. During remediation

and renovation process of my property, the builder/Glhomes demanded from Mr. Dieuvil/

Claimant to pay $25,000.00 lump sum as contribution for remediation of the home while

Claimant did not do anything to create that defective KPT's Drywalls. However without regards

to facts, Special Master claimed in his report that "Mr. Dievil initially gave GL Homes a chance

to remediate the property, but he pulled them off the job before they completed it."

---

Glhomes made the following request to claimant in writing: "Our cost estimate to replace the metal framing together with this
other necessary work is $25,000. Accordingly, this $25,000 must be paid by you ASAP if you want the metal framing removed.
In order to accommodate your request, we must receive payment in the amount of **$25,000 by Monday January 3, 2011**".

6)      Such payment request from Glhomes went into dispute which resulted Glhomes to stop

all remediation and repairs of the home; without any intent to finish the remediation and repairs

of the home. Claimant sent several emails to Glhomes and asking the builder to fix the premises,

and Claimant has received in writing the followings message from Glhomes: "Dear Mr. Dieuvil

– We are not in a position to help you further in regards to your home or any of your Chinese

drywall related issues. Please understand that no one from our staff will be contacting you or

responding to you any further. If you contact any of our staff, they have been instructed to not

respond to you.," The subject property has remained vacant, into deplorable conditions,

unfinished and inhabitable since 2010. Prior interior demolition of the subject property by

Glhomes, the visual condition of the home was great, with exception Claimant and his kids were

experienced sickness issues while living in the home.

7)      Upon knowledge of the class action lawsuit against Knauf, and based on Knauf's

negligence and liability, Claimant filed this legal  proceeding against Knauf in 2013.

Defendants, knauf failed to come clean and assume its responsibility, without knowledge of

material facts, Defendants knauf has crossed reference and tortuously interfered into other

irrelevant matters, incendiary and false allegations that have no merit whatsoever.

8)      On November 30, 2017 Plaintif/Claimant has received acknowledgement that Special

Master submitted his opinion, and on December 3, 2017 a preliminary draft objection was sent to

Special Master and Knauf from Claimant. On December 4, 2017 Prose Claimant send an email

Exhibit "D" see copy of Email from Special  Master
Exhibit "E" see copy of email to Defendant Knauf with respect to Special Master report
Exhibit "F" Pictures of the subject property prior of initial demolition,
Exhibit "G"Copy of Video Prior Demolition is available at evidentiary hearing.

to Special Master and  Knauf asking them to specify the deadline to file an objection before the court. Special Master and Knauf declined and refused to give Claimant that information. Due process, and MDL settlement agreement as well as Fed.R.Civ.P. 53(f)(2) demand that the Plaintiff has an opportunity to object to the Report prior to the Court imposing its imprimatur and final ruling.

9)      On December 7, 2017 Claimant requested an extension from Defendant, Knauf to file an Objection to Special Master report by December 29, 2017. It implies that Knauf has agreed to allow this Objection to be filed by December 29, 2017. Plaintiff is hereby seeking an extension from the court, in case it is deemed necessary, and for the court to accept this Objection as timely filed. Claimant served this Objection herein within 15 days from the date that Claimant noticed that Special Master 's Report was completed.

10)     Special Master sent his report to Claimant by email that went to spams account, such practices are highly prejudicial to prose Claimant, due process rights, and prejudice from which the Claimant may be unable to recover.

11)     Special Master's Report is not based on hearings conducted on the record or proper notice. Indeed, it is not entirely clear exactly upon what the Special Master bases his conclusions. As such, the findings and conclusions set forth in the Report are not entitled to any presumption of correctness. Special Master's findings and conclusions are demonstrably incorrect. Based on the foregoing, the Court must conduct a de novo review of the Special Master's findings of fact and conclusions of law.

---

Exhibit "H"Copy of AirQuest Environmental, Inc inspection's report conducted under the collective request of Glhomes and/or Defendant, Knauf by an unrelated party which showed the evidence of corrosion in all three AC

12)     Pursuant to Settlement Agreement filed on <u>March 29, 2012</u> section 8.2.1 "The opt-out

request must be postmarked <u>within the 45-day period as described in Section 8.1.1</u> L&W Class,

Counsel shall be obliged to file all opt outs with the Court by a date prior to the Fairness Hearing

to be determined by the Court". Deadline to opt-out- apparently appeared to be expired when

Claimant filed this claim against Knauf in 2013. Master's Report implied that Claimant

voluntarily failed to opt out. In the other hand, it is otherwise revealed to the Court of the due

process ramifications to opt out left Claimant prejudicial.

13)     Separate Report and Inspection were done at the subject property by AirQuest

Environmental, Inc. per collective request of Glhomes and/or Knauf which prove that the levels

of hydrogen sulfide were detected at the subject property also pictures of tarnished, blackened

and corroded coils were were taken which showed the evidence of corrosion in all three (3) AC

units.

14)     In addition to that, Knauf and Special Master have multiples pictures of blackened and

corroded coppers, and coils including samples of the knauf's drywalls that were taken, and

labelled by Glhomes in different areas of the home. Despite Special Master has those evidences

and that report, but Special Master failed to disclose that inspection report to outline those

material facts in his disrepute and fallacious report. In the other hand, Special Master Claimed in

his bias report that "Benchmark conducted an inspection and identified no corrosion and no

existence of KPT drywall. Knauf denied Mr. Dieuvil's claim."

Exhibit "I" Pictures of some coppers and electrical wires that were corroded and impaired due to Knauf's Chinese
Drywalls
Exhibit "J" Pictures of 10x10 Knauf's Drywalls brand & American Brands that were collected at the home.
Exhibit "K" Pictures of some full Knauf's Drywalls boards that were collected at the home.
**There is no ambiguity who collected those physical samples of KPT Drywalls and all other samples of reactive
components as evidence. Glhomes performed the initial demolition of the home, and Glhomes collected all
physical samples of the knauf's drywall case. At all material times, Claimant solely relies on Glhomes to collect
all samples and to meet full compliance of Pretrial Order 1(B), and all court orders and regulations.
OBJECTIONTOSMOD-MDL2047

Case 2:09-md-02047-EEF-MBN   Document 22239-3   Filed 05/07/19   Page 7 of 21
Case 2:09-md-02047-EEF-JCW   Document 21104   Filed 12/21/17   Page 7 of 17

15) At all material times, Claimant solely relies on Glhomes to collect all physical samples of the Knauf's drywalls case in compliance with PTO-1(B) requirements, all court orders, and regulations, as Glhomes represented itself to Affiant as an expert in this environment. Those pictures evidence of the Knauf's drywalls samples and reactive components that were submitted to Knauf and Special Master met the followings criteria:

a)      Physical samples of the Knauf's drywalls were labeled with the subject property subdivision and its lot number, identified in the floor plan/building diagram of the home,

        b)      Upon removal of those physical samples of KPT's Drywalls samples and all reactive components, were labeled including the floor plan/building diagram were handwritten by Glhomes's employees Brad and Jerry Oneil,

c)      Glhomes took videotapes and photographs of the wall sections, so any knauf makings on the backside of the drywall sections are most clearly visible in the photographs,

        d)      HVAC coil material samples were taken, labeled, photographed, preserved and identified in floor plan/building diagram of the home,

e)      Plumbing samples were taken, labeled, photographed, preserved and identified in floor plan/building diagram of the home,

f)      Electrical component samples were taken, labeled, photographed, preserved and identified in floor plan/building diagram of the home,

---

Exhibit "L" Pictures of samples American Gypsum drywalls' brands & copy of website report of the other American Gypsum's drywalls brands that were collected at the subject property with the Knauf's Chinese Drywalls.

\*\* During interior demolition of the home. Glhomes discovered that the subject property was build with Knauf Chinese Drywalls Brands and American Drywall brands. All physical samples of KPT Drywalls and other related evidences were taken, labeled, photographed, preserved and identified in building diagram/floor plan by Glhomes's employee with their own handwritings on those labels, including the floor plan/building diagram.

OBJECTIONTOSMOD-MDL2047                                                          Page 7 of 17

16)     On October 9, 2009, Judge Fallon issued Pretrial Order 1(B), which set forth the protocol

for the preservation of evidence in this MDL. The protocol stated in part: "The parties shall

maintain at least two samples ( of ten inches by ten inches(10" x 10") in size if possible) of every

different drywall brand or marking removed from an affected property, including taking samples

of unmarked drywall)".

17)     While the Pretrial Order 1(B) required the parties to maintain or preserve at least two

samples (10'x10') in size of every different drywall board or making removed from the affected

property. Claimant has received from Glhomes enormous preserved physical samples of the

knauf's drywalls brands, including American Drywalls brands, and physical samples of reactive

components as evidence. Claimant still preserves those two boxes of physical samples of

Knauf's drywalls collected in the subject property by Glhomes / builder.

18)     Special Master's report failed to outline or describe how those pictures of the knauf's

drywalls samples received by Special Master do not meet PTO - 1(B). Defendants Knauf's

counsel himself admitted that 6 of those Knauf's drywalls presented to him by Claimant have

complied with PTO 1(B). In the other hand, Special Master implied that none of those evidence

met PTO 1(B) requirements, and Special Master claimed; "Although Mr. Dieuvil claims that he

complied with Pretrial Order 1(B), the evidence does not support this contention."

---

** Upon information obtained and belief, Glhomes submitted multiple claims in this MDL Class action with respect
to others properties. Defendant Knauf paid and compensated Glhomes for those other claims without hesitance under
similar circumstances. Glhomes removed drywalls in all of those properties, and fully got remunerated by Defendant
without hindrance, in the other hand, Defendant is deliberately playing dirty with Claimant
** It is logical to inference that Glhomes and Knauf may have deliberately conspired to defraud Plaintiff / Claimant,
and to deceive and mislead the court.
** Allowing Claimant to proceed with discoveries and depositions of Defendant, ultimately will shine light to subject
matter.
** Glhomes and Defendant, Knauf's conduct may well constitute as deliberate act of bad faith, and fraud upon the
court

19)     Special Master alleged in his report that "The Settlement Agreement requires proof that
Knauf manufactured the drywall at issue" and "the evidence does not support this contention." in
the order hand, Special Master failed to provide any information or evidence of how those
submitted pictures of drywalls samples that are clearly visible with the Knauf markings on them,
and they were collected and labeled by Glhomes's employees do not justify that Knauf
manufactured those drywalls at issues. it is questionable, if Special Master opinion is not
suborned by made up mindset without regards to facts.

20)     At all materials times, Special Master Knew and/or should have known that all physical
samples of the knauf's drywalls and reactive components were exclusively under full control and
access of the builder "Glhomes", and Claimant was under sole and absolute reliance of Glhomes
to collect all samples in compliance with PTO 1(B). At the very least, Special Master failed to
cross reference that Glhomes collected those physical samples, and Glhomes did not meet his
narrative opinion and expectations. Special Master Claimed that "Knauf denied the claim,
because Mr. Dievil had not complied with Pretrial Order 1(B)." and "the evidence does not
support this contention."

21)     Special Master implied that Claimant was personally under obligations to further expose
his health condition to collect all drywalls samples and reactive components of the KPT during
demolition, instead of relying on Glhomes to collect those samples in compliance with PTO 1(B)
as an expert in this environment; notwithstanding, Claimant as a consumer already paid Glhomes
almost $1,200,000.00 for the subject property, and Claimant and his family have suffered

---

Exhibit "M" Copy of email when Knauf's counsel denied the request to physically inspect the evidence of their
KPT and waived all the opportunity to physically analyze and see their KPT's samples and related evidences that
were installed in the home.

enormous physical and financial damages due to negligence and reckless conduct of Glhomes
and Knauf.

22)  Claimant was informed and belief that Defendant, Knauf already paid and compensated
Glhomes and/or its affiliated entities on about 40 properties claims that Glhomes submitted in
this MDL Class action, under similar circumstances. Glhomes removed all drywalls in those
houses, including Claimant's home, as an expert in this environment that is familiar with PTO
1(B) requirements. Glhomes already got paid by Defendant in other claims, and Defendant is
deliberately playing dirty with Claimant. It is logical to inference that Glhomes and  Knauf may
have well deliberately involved into conspiracy to defraud Plaintiff/Claimant, and to deceive and
mislead the court. Claimant shall be allowed to proceed with discoveries and depositions to
twinkle light in this subject matter.

23)  At all materials times, Special Master Knew for liability purpose and restriction,
Claimant, Mr. Dieuvil was not allowed to be at the subject property during demolition
construction. Glhomes merely handed over two boxes of physical samples of the knauf's
drywalls to Claimant, including reactive components that were installed and removed at the
subject property as evidence. Claimant solely relied on Glhomes to perform all removal
procedures, in compliance with PTO-1(B) as Glhomes represented itself as an expert in subject
matter.

24)  At all materials times, all physical evidences collected and transferred to Claimant by
Glhomes have never been disposed as falsely alleged in Special Master opinion and decree

Exhibit "N" copy of emails correspondence from Glhome's counsel regarding transferring those physical KPT
Drywalls and all other physical related evidences to Claimant Mr. Dieuvil On October 27, 2015.
Exhibit "O" Pictures of Present condition of the subject property as up today's date

paper. Those physical evidences are still being preserved, and they are still in possession of

Claimant, including an unrelated party report that showed the existence of corrosion at the

premises that was done at the collective request of Glhomes and/or Defendant, Knauf.

Defendant, Knauf's counsel himself declined to inspect all physical samples as evidence.

However Special Master himself failed to disclose that facts in his predispose and colorful

report, and as concealment of material facts "The Special Master finds that Mr. Dievil's failure

to preserve evidence prejudiced Knauf's ability to present a defense"

25)     At all materials times, Special Master Knew and/or should have known that Plaintiff/

Claimant gave Defendant, Knauf ample opportunity to have full access to their defective

drywalls's sample and reactive components that were installed at the premises. As a matter of

facts, Knauf and Special Master were well informed that Claimant, Mr. Dieuvil was willing to

travel at his expense from Florida to Defendant's location in New Orleans with all physical

samples of those Knauf's Drywalls and reactive components for inspection and analysis. Knauf's

counsel declined that request, and waived the opportunity to physically inspect their Drywalls

and all other reactive components as evidence.

26)     In light of above facts "The Special Master finds that Mr. Dievil's failure to preserve

evidence prejudiced Knauf's ability to present a defense, since Mr. Dieuvil had access to the

reactive Chinese drywall before its disposal, but Knauf did not."

---

Exhibit "P" Copy of PTO - 1(B) from Honorable Judge Fallon
**Apparently the home was built with Knauf's defective drywalls brand, and with some Good American Drywalls
brands (National Gypsum/GridmarX). "The National Gypsum drywall is a high-quality, safe and environmentally
sound product. Every single false allegation has been rebutted by sound science from the nation's leading
laboratories and safety experts, including Federal District Court's ruling vindicates this company's products
(National Gypsum/GridmarX)."

27)   At all material times, Claimant has not done anything wrong as a consumer to create

Knauf's defective drywalls that were installed in Claimant's home. Due to negligence, greed and

reckless acts of Knauf and Glhomes which have caused Claimant to live into toxic environment

that have caused enormous physical and financial damages to Claimant and his family; in the

other hand Glhomes deprived Claimant of almost $1.200.000 for the home that is still remained

into unlivable condition until today's date.

28)   At all material times, Special Master knew and should have known that Knauf was never

held prejudice or has never been unable to present their defenses, while ample opportunity was

given to Knauf to have full access to inspect all physical samples of their defective drywalls, and

reactive components that were installed at the premises.

29)   Special Master's report flawed and reprehensible from beginning to the end thru

misconstruing facts, bias, misleading statements, impaired judgments, having wrong date of

events, improper legal conclusions, to say the least wrong spelling of my last name.

30)   In light of all facts herein, Special Master claimed: "for these reasons, the Special Master

finds in favor of Knauf and against Mr. Dievil." In addition to this fallacious opinion, impaired

judgment, bias report, Special Master Claimed that he will bill Claimant: "The Special Master

will circulate an invoice in the near future". "the costs associated with the Special Master's

services will be split between the parties (one-half each)"

---

Exhibit "Q" Copy of Business Card - Brad Wall, Home Warranty Service Manager for Glhomes -
Brad Wall & Jerry Oneil are both Glhomes's employees that handwrote & Labeled the KPT's evidences, including
the information in building diagram/floor plan was signed by Jerry Oneil upon removal.

31)     Special Master's conclusions are remarkable and reprehensible when one considers the

degree of inaccuracies, fallacies, bias, flawed, misleading statements. Special Master's opinion

and decree report is predominantly questionable when Special Master is supposed to be a neutral

adjunct of this Court. It is debatable, if Special Master's opinion is suborned by made up mindset

without regards to facts, or by failure to misconstrue facts due to overwhelming tasks and

impairment.


##### LEGAL ARGUMENTS:

32)     The Court must restore the balance between the parties and afford the Claimant due

process by conducting a de novo review of the facts and legal conclusions made by the Special

Master. However, since the Special Master has opined as to the facts in this case, due process

demands that any de novo review of the facts alleged by the Special Master in his Report come

only at hearing before the court, so the the underlying merits can be employed under the Federal

Rules of Evidence applied, and pursuant to the MDL Settlement Agreement, or any manner

deems just and appropriate by the court.


33)     See e.g. Allapattah Svcs. Inc. v. Exxon, Corp., 454 F.Supp. 2d 1185, 1198 (S.D.Fla.

2006) (referring to neutral special master); Robinson v. Shelby Cty. Bd. Of Educ., 566 F.3d. 642,

666 (6th Cir. 2009) (referring to District Court's description of special master as "neutral");

Wallace v. Abell, 318 Fed.Appx. 96, 99 (3d Cir. 2009) (describing special master as "neutral

adjudicator"); In re Holocaust Victim Assets Litigation, 424 F.3d. 132, 137 (2d Cir. 2005)

(referring to "neutral special master"); Miyake v. Sec. of Health and Human Svcs., 2009 WL

959563 at * 11 (Fed.Cl. Mar. 19, 2009) ("As the neutral party, the special master shall be in the

---

Exhibit "R" Copy of floor Plan/building diagram identified the location of KPT Drywalls in the subject property and
all related evidences of KPT

best position to consider what is in the best interest of the injured and damaged consumer or person.").

34)     Evidence relied upon by the Special Master in forming his conclusions or to otherwise avail themselves as partial copy and paste verbiage from Defendant, Knauf's submission paper which is an egregious errors in the Special Master's report.

35)     Plaintiff stipulated that the findings of the Special Master be reviewed for clear error, or that the findings of the Special Master is hereby flawed, bias, improper and can not constitute as the final order of the court. "As the use of the phrase de novo commands, the district court's consideration of the factual issue must be independent and based upon the record before the court." LoConte v. Dugger, 847 F.2d 745, 750 (11th Cir. 1988). Case 1:09-cv-20526-ASG Document 883 Entered on FLSD Docket 12/16/2009

36)     The Court must conduct a de novo review of the record with respect to this objection to both factual and legal conclusions made by the Special Master in the Report, and the appropriate and logical time for the Court to conduct its de novo review is at the time of hearing or trial based on the underlying merits of this case.

---

Knauf's toxic and defective drywalls already contaminated, desecrated, tarnished, damaged and impaired the entire house by containing high levels of sulfur, released hydrogen, sulfide gas from bacteria and other toxic chemicals which tarnished, damaged, tainted, and corroded the entire copper, entire plumbings, entire HVAC coils, entire electrical system, also damaged other good drywalls and other metals inside the home; therefore, Knauf and Glhomes  are utterly liable for the interior demolition of the home & liable to bring the home into living conditions.

Instead Glhomes to repair the premises without cost to Claimant, Glhomes made the followings request in writing to Claimant: "Our cost estimate to replace the metal framing together with this other necessary work is $25,000. Accordingly, this $25,000 must be paid by you ASAP if you want the metal framing removed.  In order to accommodate your request, we must receive payment in the amount of **$25,000 by Monday January 3, 2011"**.

37)     The relationship between a special master and the district court is essentially, in the same

manner as the relationship between a trial court and an appellate court. A master can schedule his

own proceedings, subpoena witnesses and conduct hearings subject to the Federal Rules of

Evidence. Any findings made by a special master in a jury trial are presented to the jury, whereas

findings on a report made by a special master in a non-jury trial or evidentiary hearing  shall

typically reviewed under a clearly erroneous standard.


38)     However, where, as here, a special master's report is based upon his own observations

and investigations in the absence of a formal hearing, such a report "not only transcends the

powers traditionally given masters by courts of equity, but denies the parties due process. "For

example, in Ruiz v. Estelle, the Fifth Circuit modified an order of reference to See Cooper-

Houston Southern Ry. Co., 37 F.3d. 603, 604 (11th Cir. 1994); Gutter v. E.I. Dupont De

Nemours, 124 F.Supp.2d. 1291, 1303 (S.D.Fla. 2000).


39)     See Dept. of Educ., Hawaii v. Karen I., 2009 WL 3378587 at *2, (D.Hawai'i, Oct. 20,

2009) ("Pursuant to Rule 53(f) of the Federal Rules of Civil Procedure, this court reviews de

novo all objections to findings of fact and conclusions of law made or recommended by a special

master."); Grace v. City of Detroit, 341 F.Supp. 2d 709, 714 (E.D.Mich. 2004) ("The parties have

not stipulated to make the Special Master's factual findings final or reviewable only for clear

error. Accordingly, pursuant to Rule 53(g) and the settlement agreement, this Court must decide

---

The premises has never been fully remediated and has not been in living conditions for the past 7 years, while
Claimant is paying the mortgage. Knauf is acting in bad faith; despite, Defendants Knauf by negligence provided
defective KPT drywalls that caused serious problems and damages to Claimant. Knauf and Glhomes are ultimately
liable to fix the problem that they have created themselves by negligence.
Knauf is liable for all physical and financial damages that knauf has engendered  to Claimant.

the Plaintiff's objections to the Special Master's findings of fact and conclusions of law in his

Report(s) de novo.").See Fed.R.Civ.P. 53(c). Ruiz v. Estelle, 679 F.2d 1115, 1162-63 (5th Cir.

1982) vacated in part, on other grounds 688 F.2d 266 (5th Cir. 1982) cert denied, 460 U.S. 1042

(1983) (emphasis added).

40)     Based on the fact that the Special Master has exceeded the scope of his authority

ultimately the Report must be disregarded and rejected. The Special Master's Report is Factually

and Legally Inaccurate Moreover, the Special Master refrained from describing with any

particularity why those Glhomes sample drywalls as evidence with respect to my property do not

meet PTO - 1(B) requirements or why the subject property is not considered as a mixed property

under the settlement agreement.

41)     The Report exposes the Special Master's rank bias against the Claimant. In some

instances, the bias is exhibited through the Special Master's unsupported opinions and beliefs, in

others it is exhibited by the Special Master's failure to acknowledged that Glhomes collected

those physical samples, and how Glhomes failed to meet his narrative opinion and expectation to

meet PTO-1 (B) requirements. In the other hand, Glhomes got paid and compensated from

Defendant Knauf.

42)     Special Master falsely and solely accused Claimant of failure to comply with PTO 1(B)

while such accusations ignored all facts and failed to provide any information to support such

Defendants Knauf by negligence and reckless conduct provided those defective KPT drywalls, and Glhomes by
negligence and greed to pay lower costs; therefore, they have caused and instigated serious physical, financial problems
and damages to Claimant.

imputation. In the other hand, many inaccurate factual statements, improper inferences and impaired arguments and improper conclusions were found in the Report. Claimant is entitled to challenge the resource evidences used by the Special Master that forms the basis of his incendiary and false allegations and assumptions against Claimant, It appears that Special Master's opinions and decree report is subterfuge, flawed and fallacious without regards to facts.

WHEREFORE: for the reasons set forth herein, Claimant/Plaintiff respectfully requests that the Court (1) disregard the factual and legal conclusions made in the Special Master's Report; (2) order that no party may refer to the factual or legal conclusions made in the Report as determined fact or law; (3) order that this Objection be valid (4) remove, reject the Special Master's Report and (5) order Defendant Knauf to fix Claimant's home, and to assume its liability for all damages engender to Claimant (6) granting such other and further relief as this Court deems just and proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 15, 2017, I electronically email this foregoing document to Defendant's counsel and Special Master, and I file this foregoing document with the Clerk of the Court. I also certify that the foregoing document is being served this day on Defendant's counsel by mail as well.

Guilfort Dieuvil /Prose Claimant
PO BOX 740533
Boynton Beach, Fl 33473
Phone: 786 344-5497
guilf5@hotmail.com

---

See exhibit "S" Sworn Affidavit of Guilfort Dieuvil with respect to Special Master's Report.

**UNITED STATES DISTRICT COURT EASTERN**

**DISTRICT OF LOUISIANA**

IN RE: CHINESE -MANUFACTURED MDL

NO. 2047 DRYWALL PRODUCTS

LIABILITY LITIGATION



EXHIBIT
D C

SECTION: L

JUDGE: ELDON FALLON

MAGISTRATE WILKINSON

SWORN AFFIDAVIT OF GUILFORT DIEUVIL IN REGARDS

TO OBJECTION TO SPECIAL MASTER OPINION AND DECREE

1. My name is Guilfort Dieuvil, and I am over the age of eighteen (18) years.

2. I swear under oath that all facts and statements made in this Sworn Affidavit are true and correct to the best of my knowledge and understanding.

3. Affiant is one of the owners of the subject property located at: 8757 Baystone Cove Boynton Beach Fl 33473, and I did the closing in the subject property in 2007 with purchase price of $ 1,142,015.00 not including closing cost.

4. In 2010 Affiant learned that the property contained reactive Chinese drywalls in 2010, and 2013 Affiant filed a claim against Defendant, Knauf in this MDL legal proceeding.

5. While Glhomes starting remediation and repair of the subject property, Glhomes made the following request to Claimant in writing: "Our cost estimate to replace the metal

DIEUVILAFFIDAVITMDL122017

Page 1 of 4

framing together with this other necessary work is $25,000. Accordingly, this $25,000 must be paid by you ASAP if you want the metal framing removed. In order to accommodate your request, we must receive payment in the amount of **$25,000 by Monday January 3, 2011**. " Glhomes ordered his staff to stop all works and communication to Affiant.

6. It is my understanding that AirQuest Environmental, Inc. was referred by Glhomes and/or Knauf to conduct an inspection and report for the subject property. At that time, AirQuest Environmental, Inc. took pictures of the coils for all (3) three AC units at the subject property which showed evidence of corrosion in those AC coils.

7. It is my understanding that multiples physical samples of coppers, piece of coils in every section to the home which showed evidence of corrosion at the subject property. Such evidence was collected by Glhomes during initial interior demolition of the subject property, and Defendant, Knauf already received copies of the air report and photographs that showed evidence of corrosion that existed at the subject property due to Knauf's defective drywalls.

8. It is my understanding that Glhomes took multiples physical samples of the followings: Knauf's drywalls, electrical switches, electrical outlets, coils, electrical wires, coppers/ plumbings, American National Gypsum's drywalls brands and piece of carpet as well.

9. On October 27, 2015 around 2:00 PM, Glhomes gave Claimant two boxes that contained some physical samples of those evidence as described in paragraph 8 above, and both boxes of physical samples have never been disposed.

10. At all material times, Affiant solely relied on Glhomes to collect all physical samples of the Knauf's drywalls case to be in full compliance with PTO-1(B) requirements, as Glhomes represented itself to Affiant as an expert in this environment. Glhomes collected multiples

knauf's defective drywalls samples, and reactive components samples, and they were preserved by Glhomes/builder and those samples were also labelled by the handwriting of Brad and Jerry Oneil as Glhomes's employees and/or associates.

11. At all material times, ample opportunity was given to Defendant, Knauf to have full access to inspect all physical samples of Knauf's defective drywalls, and reactive components that were installed at the subject property. and Knauf has deliberately declined to see and inspect those physical samples as evidence, and at no material times, Knauf has never been held prejudice or unable to present defenses or never denied access to see samples of their defective drywalls, and those physical samples are still available for Knauf to inspect them even today's date.

12. At all material times, Affiant /Plaintiff has preserved and maintained those physical samples as evidence, and they have never been disposed, misplaced or disregarded as falsely alleged and misconstrued by special master in his opinion and decree report.

13. PTO 1(B) in page 2 section (A) required; *"The parties shall maintain at least two samples ( of ten inches by ten inches(10" x 10") in size if possible) of every different drywall brand or marking removed from an affected property, including taking samples of unmarked drywall)".* Glhomes as the builder removed those drywalls, collected and preserved multiples physical Knauf's drywalls samples brands including all other brands.

14. At all material times, Knauf was never held prejudice or has never been unable to present their defenses, Knauf's counsel declined to have full access to inspect and see those physical evidences. As a matter of facts, Affiant was willing at his own expense to travel and give those physical samples to Defendant, Knauf for inspection and analysis.

15. UNDER PENALTIES OF PERJURY, I DECLARE THAT I HAVE READ THE

FOREGOING AFFIDAVIT AND THE FACTS STATED IN IT ARE TRUE. AND

CORRECT FURTHER AFFIANT SAYETH NAUGHT.

Guilfort Dieuvil, Affiant

STATE OF FLORIDA

COUNTY OF India River

SWORN TO AND SUBSCRIBED before me this 20th day of December 2017,

Guilfort Dieuvil, ___ who is personally known to me, or ___ who produced the following

identification: FL lil $\varnothing$ .

Print Name: Page L Jarriel

Notary Public, State of Florida



PAGE L. JARRIEL
Commission # FF 968344
Expires April 14, 2020
Bonded Thru Troy Fain Insurance 800-385-7019

DIEUVILAFFIDAVITMDL122017