

# BAKER DONELSON
## BEARMAN, CALDWELL & BERKOWITZ, PC

201 ST. CHARLES AVENUE
SUITE 3600
NEW ORLEANS, LOUISIANA 70170
PHONE:   504.566.5200
FAX:        504.636.4000

www.bakerdonelson.com

KERRY J. MILLER
Shareholder
Direct Dial:      (504) 566-8646
Facsimile:       (504) 585-6946
Email:             kjmiller@bakerdonelson.com

### \*\*\*PRIVILEGED AND CONFIDENTIAL SETTLEMENT COMMUNICATIONS\*\*\*

September 1, 2017

**Via Email and Federal Express:**
Dan Balhoff
Perry, Balhoff, Mengis & Burns, LLC
2141 Quail Run Drive
Baton Rouge, LA 70808
Balhoff@pabmb.com



EXHIBIT D-1

RE:   **Guilfort Dieuvil, 8757 Baystone Cove, Boynton Beach, FL 33473**

### CONFIDENTIAL POSITION PAPER

Dear Mr. Balhoff:

In regards to the binding mediation of this matter, the Knauf Defendants[1] submit the following confidential position paper regarding the claims listed below.

I.   **Background**

Guilfort Dieuvil ("Claimant") owns property located at 8757 Baystone Cove, Boynton Beach, FL 33473 (the "Property").[2] The Property was built by GL Homes.[3] On or about January

---

[1] The Knauf Defendants include Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Material Products Co., Ltd., Knauf International GmbH, Knauf Insulation GmbH, Knauf AMF GmbH & Co. KG, Knauf UK GmbH, Knauf do Brasil Ltda., Gebr. Knauf Verwaltungsgesellschaft KG, PT Knauf Gypsum Indonesia, or Knauf Gips KG.

Page 2

1, 2010, Boynton Beach Associates XVI conducted an inspection of the Property and observed indications consistent with the presence of reactive Chinese drywall.[4] In March 2010, a building permit was issued for the remediation of the Property by GL Homes.[5] In April 2010, a Scope of Work Agreement was issued by Boynton Beach Associates XVI, LLP and informed Claimant that the Property would be repaired and returned to its original condition at no cost to the Claimant. Claimant executed the Scope of Work Agreement.[6] Between September and December 2010, the remediation of the Property commenced wherein drywall was removed and the plumbing, electrical, and insulation was replaced.[7] At this point in the remediation, without any stated reasons, Claimant refused to allow GL Homes to complete the remediation on the Property.[8]

On March 7, 2013, Claimant signed and submitted a Plaintiff Profile Form to the Knauf Class Settlement Agreement and the PPF indicated that the remediation began but was not completed on the Property.[9] On September 16, 2013, Benchmark conducted an inspection of the Property and identified no corrosion and no existence of KPT drywall in the Property.[10] Also,

---

[2] Exhibit A - Plaintiff Profile Form.

[3] *Id.*

[4] *Id.*

[5] Exhibit B - October 14, 2013 Letter from Boynton Beach and Associates XVI, LLP to Claimant.

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] Exhibit A - Plaintiff Profile Form.

[10] Exhibit C - Benchmark Inspection Report for the Property.

Page 3

there were no drywall samples saved on site.[11]  Therefore, Knauf denied the claim under the Knauf Class Settlement Agreement.

In 2015, Claimant's former counsel included Claimant in a package deal wherein Claimant would be permitted to seek benefits under the Knauf Class Settlement Agreement only if, in addition to complying with all other aspects of the Knauf Class Settlement Agreement, the Claimant could demonstrate "*that evidence was preserved strictly in accordance with the requirements of MDL 2047 Pre-Trial Order 1(B).*"[12] Claimant's former counsel uploaded all documentation related to the claim, which was reviewed by Knauf.  On August 27, 2015, Claimant was informed that his claim was not eligible to proceed under the Knauf Class Settlement Agreement because it did not comply with PTO 1(B).[13]

In 2017, Claimant, in pro se, requested status updates regarding his claim.  He was informed that his claim was previously denied.  Claimant submitted additional photos of samples from an unknown origin.  Despite being required to submit all documentation in 2013, Claimant submitted these new photos of samples for the first time in 2017.[14]  Knauf again reviewed the documentation and informed Claimant that his claim was not compensable under the Knauf Class Settlement Agreement because he failed to comply with PTO 1(B).  Claimant has now sought a decision from the Special Master to determine the issue.

## II. Position of Knauf Defendants

---

[11] *Id.*

[12] Exhibit D - Redacted Term Sheet between Claimant's former counsel and Knauf Counsel.

[13] Exhibit E - Correspondence between Claimant's former counsel and Knauf Defendants' counsel.

[14] Because the photos of the demolition of the Property show no labeled drywall, there can be no confirmation whether these samples which are now labeled with a location come from the Property.

Page 4

Claimant is ineligible to receive settlement benefits under the Settlement Agreement because he has failed to comply with PTO 1(B) in presenting evidence of KPT Chinese drywall in the Property. Claimant has therefore failed to comply with the preservation protocols of the Knauf Class Settlement Agreement and the Already Remediated Properties Protocol. This has prejudiced the Knauf Defendants and the claim should be disallowed.

Claimants are subject to the Knauf Class Settlement Agreement, which mandates that the review of Already Remediated Home (ARH) claims are done pursuant to PTO 1(B). PTO 1(B) establishes that all Claimants are required to preserve physical evidence by following a few basic procedures, including but not limited to "photograph[ing] the backside of each Chinese drywall board immediately after it is removed on-site, and, document on a floor plan, building diagram, or other similar form of documentation, the location of each full or partial Chinese drywall board removed from the property and its photograph. Photographs of the wall sections should be taken so that any markings on the backside of the drywall sections are most clearly visible in the photographs." Claimant has failed to meet this requirement in the case at hand.

Under the Knauf Class Settlement Agreement, failure to preserve evidence can result in "disallowance" of a claim.[15] The Knauf Class Settlement Agreement states in pertinent part: "The Special Master and the Court will take into consideration, in determining whether to allow a claim...whether the Owner has complied with MDL Pretrial Order 1(B)... for preservation of evidence."[16] Further, subject to review by the Special Master or the Court, "the failure to

---

[15] *See*, Knauf Class Settlement Agreement; Exhibit A at IV(d)(4).

[16] *Id.*

Page 5

preserve evidence as required by law will result in disallowance or reduction in the amount of the claim if the failure has been prejudicial to a determination of the claim."[17]

Of the approximately 560 boards that would be contained in the Property, only five (5) installed KPT boards and only six (6) detached KPT boards were presented in accordance with PTO 1(B).[18] PTO 1(B) and the adoption of the standard by the Knauf Class Settlement Agreement was to adopt objective standards to qualify under the Knauf Class Settlement Agreement for manufacturer identification.[19] Here, Claimant had an opportunity to have his builder remediate the Property, at no cost to him, but Claimant purposely prevented the builder from completing the renovation. Now the renovation is incomplete and Claimant has failed to preserve and present evidence as required under the Knauf Class Settlement Agreement. Based on Claimant's failure to preserve and present evidence of KPT Chinese drywall in the Property in accordance with PTO 1(B) and the Knauf Class Settlement Agreement, the Knauf Defendants have been prejudiced in a determination of the claim. Therefore, the Knauf Defendants submit that Claimant's ARH claim is not compensable under the Knauf Class Settlement Agreement.[20]

                                                                             Respectfully submitted,

---

[17] *Id.*

[18] Exhibit F - Drywall Evidence Submitted by Claimant. In addition, photos of samples were provided in 2017. However, these samples are small in size, contained in ziplock bags, and are not in compliance with PTO 1(B). Furthermore, there is no way to determine that these are not samples from the same boards presented in other evidence as the drywall shown in the demolition photos was not labeled.

[19] Although the Claimant's statements that the Property only contained KPT Chinese drywall are irrelevant to the Special Master's determination, Claimant's credibility is questionable at best. He was formerly indicted for fraud and was named as a defendant in approximately twenty (20) lawsuits involving civil and bankruptcy matters wherein consumer plaintiffs and Chapter 7 Bankruptcy Trustees alleged that Claimant defrauded consumers and creditors. Exhibit G.

[20] The Knauf Defendants also note that should the claim be compensable at all, it must be limited to the amount of Reimbursable Costs multiplied by the percentage of KPT in the Property determined by the Special Master. Already Remediated Properties Protocol, Section IV(C). As set forth above the KPT percentage should be 0%. Claimant has not incurred or set forth any costs associated with the partial remediation of this Property because the costs were borne by the builder, GL Homes.

Page 6

                                BAKER, DONELSON, BEARMAN,
                                CALDWELL & BERKOWITZ, PC


                                */s/ Kerry J. Miller*
                                KERRY J. MILLER