UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION<br><br>This document relates to *All Cases* | MDL 2047<br><br>SECTION "L"<br><br>JUDGE ELDON FALLON<br><br>MAGISTRATE JOSEPH WILKINSON, JR. |

**REPLY MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO PREVENT CLAIMANT GUILFORT DIEUVIL FROM INTRODUCING ANY NEW TESTIMONY AND/OR EVIDENCE AT THE HEARING REGARDING THE OBJECTION TO THE SPECIAL MASTER'S ORDER AND DECREE**

**MAY IT PLEASE THE COURT:**

The Knauf Defendants[1] file this reply to Mr. Herman's opposition to the Motion in Limine on behalf of Claimant, Guilfort Dieuvil. The opposition fails to address the critical issue decided by the Special Master - Mr. Dieuvil's failure to strictly comply with PTO 1(B), of which he was bound to do.  Furthermore, the opposition fails to present any "new" evidence relevant on the PTO 1(B) issued decided by the Special Master.  Therefore, strictly on the issue of the Motion in Limine, the opposition establishes no reasons whatsoever as to why this Court should not grant the Motion in Limine as set forth by the Knauf Defendants.

However, due to the inflammatory and confusing nature of Mr. Herman's response, the Knauf Defendants will further reply to ensure the record is straight.  Mr. Herman misrepresents

---

[1]The Knauf Defendants include Knauf Plasterboard (Tianjin) Co., Ltd., Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Material Products Co., Ltd., Knauf Gips KG, Gebr. Knauf Verwaltungsgesellschaft KG, Knauf International GmbH, Knauf Insulation GmbH, Knauf UK GmbH, Knauf AMF

Mr. Dieuvil as a helpless, innocent, pro se litigant, and presents an inaccurate timeline of Mr. Dieuvil's claim and his interactions with relevant parties, including the Special Master and the Knauf Defendants. An accurate timeline of Mr. Dieuvil's decade long odyssey, his multiple attorneys, and ongoing disputes and litigation with GL homes has been well-established and previously provided by the Knauf Defendants in submissions to the Special Master and the Court.  (R. Doc. 21176).

**A.     The Opposition Contains No New Relevant Evidence.**

In 2015, one of Mr. Dieuvil's former lawyers included Dieuvil in a package deal wherein Dieuvil would be permitted to seek benefits under the Knauf Class Settlement Agreement only if, in addition to complying with all other aspects of the Knauf Class Settlement Agreement, the Claimant could demonstrate ***"that evidence was preserved strictly in accordance with the requirements of MDL 2047 Pre-Trial Order 1(B)."*** (*See* **attached Exhibit A**).  The Special Master ruled that Mr. Dieuvil's submission did not comply with this standard.

While Mr. Herman opposes the Motion in Limine and argues that "new evidence" has been obtained, the information attached to the opposition is the same PTO 1(B) evidence that Mr. Dieuvil previously submitted to the Special Master. The only new information appears to be two new "expert" opinions created within the last few months that were never-before produced or submitted to the Knauf Defendants or the Special Master.  Neither of the "new" expert reports demonstrate strict compliance with PTO 1(B), however.  The JES report is a cost estimate and does not pertain to PTO 1(B) issues.  The Velez report is basically a one-line conclusion about drywall percentages based on a review of the same evidence that was presented to the Special Master.  However, unlike the Special Master's review which examined the photos within the

---

GmbH & Co. KG, Knauf do Brasil Ltda., and PT Knauf Gypsum Indonesia.

context of compliance with PTO 1(B), the Velez report is completely in the abstract and does not even reference PTO 1(B).  Thus, Velez's report is also not probative of PTO 1(B) compliance.

**B.    Mr. Dieuvil Received Knauf's Position Paper and Was Given Plenty of Time to Respond.**

Mr. Herman alleges that the Knauf Defendants submitted a *Confidential* paper to the Special Master, which implies that the same was not provided to Mr. Dieuvil as a pro se litigation.  The fact is, while the paper was marked *Confidential* for purposes of the parties' submissions, Mr. Dieuvil was copied and sent the paper at the time it was sent to the Special Master. **(*See* attached Exhibit B)**.  Mr. Dieuvil was then afforded the opportunity to submit his position, after seeing the Knauf Defendants' position and respond and submit any and all evidence in support of his claim to the Special Master.  The Knauf Defendants made no objections to Mr. Dieuvil's submission or the voluminous exhibits he attached.  Furthermore, Mr. Dieuvil is not an unknowledgeable, pro se litigant.  Prior to being *pro se*, Mr. Dieuvil was represented by Ervin Gonzalez and James Doyle in Chinese Drywall matters in this Court.  He has been represented by multiple law firms in his Florida cases against GL Homes.  Mr. Dieuvil is a multi-lingual, sophisticated owner of multiple businesses, including several companies involved in real estate transactions.  He is or was a licensed mortgage broker and has owned or had an interest in companies that have owned dozens, if not hundreds of rental properties, with total assets valued in the millions of dollars. Furthermore, through his retention of several attorneys or in pro se, he has been a prolific litigant in several civil, criminal and bankruptcy proceedings.

C.   **The Process Afforded to Mr. Dieuvil by the Special Master was Fair and Consistent with how the Special Master Handled Other Appeals.**

Next, Mr. Herman alleges there was no hearing with the Special Master. The Special Master received the submissions and evidence from the parties and either party could have requested a hearing and/or a transcript. In fact, Mr. Dieuvil contemplated the testimony of his wife but questioned "perhaps the information contains (sic) in the package [to the Special Master] may be enough for you [Special Master] to make a final decision with respect to the case." (*See* **attached Exhibit C**). The Special Master responded that the PTO 1(B) issue would turn on the documentary evidence and that "[u]nless your wife's testimony adds to this issue, I do not believe it is necessary." Mr. Dieuvil responded he would inform his wife that her testimony would not be necessary and reiterated his position on compliance with PTO 1(B). Therefore, with that understanding, the Special Master proceeded on the submissions, which is not dissimilar from the dozens of other settlement claims resolved by the Special Master over the last seven (7) years.

D.   **It is Undisputed that the Benchmark Inspection is not Probative of PTO 1(B).**

Mr. Herman alleges the Benchmark inspection was deficient and not probative. The Knauf Defendants agree that it was a complete waste for Mr. Dieuvil to request Benchmark to inspect his residence only after the drywall was removed and Mr. Dieuvil refused to allow GL homes to complete the remediation of his property at no cost to him. Indeed, Mr. Dieuvil only requested the Benchmark inspection after he prevented GL Homes from completing the remediation because GL Homes did not agree to remove and replace the metal studs in his property. Nonetheless, it is clear that when Benchmark went to the property, Benchmark never discovered any KPT drywall installed at the time of the inspection. (*See* R. Doc. 21176).

It is in this context that the Court should understand Mr. Dieuvil's current problems are of his own making. In 2010 at the inception of the Chinese Drywall MDL, Mr. Dieuvil, like hundreds of other homeowners, entered into a repair contract with his builder, GL Homes, to remediate his home. Per the protocol, GL removed the drywall, electrical wires, and insulation and began to re-wire and re-insulate Mr. Dieuvil's home. For no good reason, Mr. Dieuvil kicked GL Homes out of his house and prevented them from completing the remediation. His stated reason at the time was that he wanted new studs. GL responded that was not part of the protocol, but if Mr. Dieuvil wanted new studs, GL would provide them at a cost of $25,000. Mr. Dieuvil refused, and his home has sat halfway remediated since 2010.

Ironically, while Mr. Herman's new expert reports yield no new evidence on PTO 1(B) compliance, it does confirm the absurdity of Mr. Dieuvil's demand for new studs. The JES report, Rec. Doc. 22239-15, p. 1 states at the bottom of the page:

> "Please note that the metal framing structure shows no signs of tarnish or pitting from the Chinese Drywall."

Had Mr. Dieuvil done the reasonable thing in 2010 and allowed GL to complete the remediation, he would have been back in his home since early 2011, more than eight (8) years ago. It is not Knauf's fault that Mr. Dieuvil made a really bad decision in 2010 when he kicked GL Homes out. Likewise, it is not Knauf's fault that Mr. Dieuvil cannot strictly comply with PTO 1(B).

**E.  Knauf's Pointing Out Issues with Mr. Dieuvil's Credibility Did Not Taint the Special Master Process.**

Next, Mr. Herman alludes to statements as to Mr. Dieuvil's past litigation and other Dieuvil credibility issues raised in a footnote in the submission to the Special Master. Mr. Herman characterizes this as misleading and influential to the Special Master's determination.

However, as set forth in the Knauf Defendant's submissions to the Special Master, the Special Master's opinion and decree, and the Knauf Defendants' opposition to the current objection, it has always been the Knauf Defendants' primary position, and the Special Master agreed, that Mr. Dieuvil failed to comply with PTO 1(B) based on his own submissions to the Special Master. Indeed, it is Mr. Dieuvil, and now Mr. Herman that seek to delve outside the scope of what is required under the terms of the Settlement Agreement in order to comply with PTO 1(B) and recover from the Remediation Fund. It is only in that context that Mr. Dieuvil's credibility concerns may be relevant and should be considered. More specifically, if Mr. Dieuvil wants to "re-create" the file relative to PTO 1(B) compliance nine (9) years after the drywall was removed from his house, his credibility will be at issue.

**F.     Conclusion**

In conclusion, while the Knauf Defendants understand Mr. Herman is "new" to this claim and wants to introduce "new evidence" by "new experts" in support of Mr. Dieuvil, the fact is the Settlement Agreement has been administered to thousands of claims for over seven years and each and every Special Master objection has been reviewed by this Court based on the record before the Special Master. Mr. Dieuvil can continue grasping for straws in search of a different angle to gain compensation from the Knauf Defendants, GL Homes, or someone else in his multi-venue series of lawsuits. However, in the end, the fact is the settlement claim was not accepted by the Knauf Defendants because Mr. Dieuvil did not comply with PTO 1(B) in his submission. All parties were afforded full and fair opportunity to submit evidence and arguments to the Special Master. The Special Master reviewed all of the information and denied the claim based on the failure to comply with the terms of the settlement agreement. Now, this Court has the entire record before it and Mr. Herman and Mr. Dieuvil can make arguments based on that

record as to why the Special Master was wrong. However, the Court should not allow new evidence or arguments because to do so would inevitably allow the hearing to tailspin into a fullblown, merits-based trial. This is exactly what the Settlement Agreement and Special Master process was set up to avoid. Therefore, the Knauf Defendants respectfully request the Court grant the Motion in Limine and limit the objection hearing to the arguments on the evidence submitted to the Special Master.

Respectfully submitted,

**FISHMAN HAYGOOD, L.L.P.**

*/s/ Kerry J. Miller*
**KERRY J. MILLER (#24562), T.A.**
**PAUL C. THIBODEAUX (#29446)**
**DANIEL J. DYSART (#33812)**
201 St. Charles Avenue, 46th Floor
New Orleans, LA  70170
Telephone:    (504) 556-5549
Facsimile:    (504) 310-0275
Email:         kmiller@fishmanhaygood.com
Email:         pthibodeaux@fishmanhaygood.com
Email:         ddysart@fishmanhaygood.com

**Counsel for the Knauf Defendants**

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, and to all parties by electronically uploading the same to File and Serve Xpress in accordance with Pre-Trial Order No. 6, and that the foregoing was filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana, on this the 10th day of May, 2019.

*/s/ Kerry J. Miller*
**KERRY J. MILLER**