# Exhibit A
# Doyle Term Sheet - Redacted

## JIMMY DOYLE SETTLEMENT TERM SHEET

Set forth below are terms reached between Jimmy Doyle ("Doyle") on behalf of his clients, Knauf and Moss as it relates to the settlement of various categories of "new claims" brought by Doyle clients. Doyle, Knauf and Moss acknowledge and agree that this settlement term sheet constitutes a "package deal" meaning that individual terms of this settlement are not enforceable standing alone. The terms are only enforceable as a "package deal."

1. Knauf and Doyle agree that all of Doyle's Exhibit A and Exhibit B clients from the Beane complaint will participate in the Knauf "New Claims Settlement." [Rec. Doc. 16978] (See attached Exhibits A and B).

2. Knauf and Doyle agree that thirteen (13) of Doyle's clients' claims identified on Exhibit C to the Beane settlement will be allowed to participate in the original Knauf New Claims Settlement. (See Exhibit C attached hereto for a list of the 13 claims). Under this provision, any attorney's fees due for the Doyle clients with claims identified on Exhibit C to the Beane settlement will be paid out of the $160 million attorney fee and cost fund in Section 14 of the Knauf Class Settlement Agreement.

3. Knauf and Doyle agree that Doyle's "New, New Claims," which are claims that Doyle put Knauf on notice after August 12, 2013 and prior to October 26, 2013 will be settled pursuant to the terms of the Knauf New Claims Settlement (see attached Exhibit D). Doyle agrees not to sue Knauf in a separate action regarding these clients and the clients identified in No. 4 below. Knauf and Doyle agree that the properties identified on Exhibit D can be settled per the Knauf New Claims Settlement, provided that those claimants purchased the properties without knowledge of the presence of reactive KPT Chinese Drywall, KPT indicia is produced for each property, a confirmatory inspection verifies the presence of reactive KPT Chinese Drywall, and all other requirements of the settlement are met.

4. For Doyle clients in any of the categories mentioned above that are considering Option 2, Moss will include in the scope of work the replacement of appliances, fixtures, and bathroom components attached to the types of drywall that are to be removed pursuant to Exhibit F of the Court approved remediation protocol provided the property owner at the time of the initial walkthrough with Moss identifies the appliances and/or fixtures that are corroded and/or not functioning. In addition, Moss will include in the Xactimate bid scope and final cost estimate the full cost of work to be performed, including the full cost of removing/replacing tile, for bathroom areas implicated by the preceding sentence.

5. In all future initial walkthroughs conducted by Moss, it is the homeowner's burden to point out or identify fixtures and appliances that show evidence of corrosion and/or non-functionality (excluding refrigerators, microwaves, hoods, and

**Privileged and Confidential Settlement Communication Protected by FRE 408.**

5. stoves/ranges, which shall be included in every Xactimate bid scope for properties less than or equal to 3,500 square feet "under air") in order to have these items noted as "remove/replace" in the Xactimate bid scope instead of "detach/reset." For properties over 3,500 square feet "under air," appliances shall only be replaced where evidence of corrosion and/or non-functionality is apparant, as explained in Exhibit F of the Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL no. 2047. It is also agreed that it is Moss' responsibility to provide the full cost of the items addressed in this section and to include the full cost of these items in the final cost estimate.

6. Where Moss has performed a walkthrough prior to the execution of this agreement, it is hereby agreed that any homeowner may provide Moss with evidence that the bid scope is incorrect pursuant to CAP no. 2014-7 of the Chinese Drywall Settlement Program.

7. Moss and Doyle agree that, in order to encourage Doyle clients to select Option 1, Doyle will be able to select prime contractors for his clients' homes from a list provided by Moss/Knauf. At the time of this agreement, Doyle defines the preferred prime subcontractors for each market identified as follows:

    - Alabama—BD Welch; Tri-State
    - Mississippi—Tri-State
    - Louisiana—JES, Stronghold; BD Welch
    - Florida—to be assigned by Moss

8. Moss agrees to review appliance, tile, and fixture issues as they relate to the Xactimate bid scope and final pricing for the following Option 2 homes whose homeowners are represented by Doyle where remediation has already begun or been completed:

    - [REDACTED]
      [Appliances, light fixtures, plumbing fixtures, bathroom tile]

    - [REDACTED]
      [Appliances, light fixtures, plumbing fixtures, bathroom tile]

    - [REDACTED]
      [Appliances, light fixtures, plumbing fixtures, bathroom tile, a/c condenser coil]

    - [REDACTED]
      [Appliances, bathroom jet tub, gas line to fireplace, light fixtures, plumbing fixtures, bathroom tile, insufficient allocation for insulation]

    - [REDACTED]

**Privileged and Confidential Settlement Communication Protected by FRE 408.**

[Appliances, light fixtures, plumbing fixtures, bathroom tile]

9. Knauf and Doyle agree that the Guilfort Dieuvil claim may be allowed to proceed under the terms of the Knauf New Claims Settlement if the following conditions are met:
   - Doyle demonstrates that evidence was preserved strictly in accordance with the requirements of MDL 2047 Pre-Trial Order 1(B).
   - Doyle provides evidence and/or indicia of the construction quality and finishes that existed in the property prior to the start of drywall remediation work. The evidence and/or indicia must be of a sufficient character and quality so as to allow Moss to formulate an accurate bid scope.

10. Moss agrees to assign the following representatives as their points of contact for all Doyle clients:

    Primary Client Contact: William "Colby" Coates
    Secondary and Dispute Resolution Contacts: Chris Krause and Phil Adams

11. Doyle agrees to have his clients, ▬▬▬▬▬▬, execute the settlement agreement that Moss has submitted to the ▬▬▬ with compensation totaling ▬▬▬▬ and a warranty as set forth therein, and that the ▬▬▬ have previously agreed to. (See attached Exhibit E).

12. Doyle and Knauf agree to dismiss (without prejudice) the claims of Nora Caswell previously filed in the Beane complaint.

_____
Jimmy Doyle
On Behalf of Doyle Clients

_____
Kerry J. Miller
As Attorney for Knauf

_____
Joseph L. Harris
On Behalf of Moss & Associates