UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * * * * * * * | CIVIL ACTION<br><br>MDL NO. 2047<br><br>SECTION L (5) |
| THIS DOCUMENT RELATES TO:<br>ALL LOUISIANA *AMORIN* CASES | * * * | |

## ORDER & REASONS

Before the Court is a Motion for the Immediate Disbursement of Attorneys' Fees (the "Motion") filed by Krupnick Campbell ("Movant"), R. Doc. 22130, in which several parties have joined, R. Docs. 22131, 22134, 22141, 22147, 22159, 22164, 22168, 22169.[1] The Motion is opposed, R. Doc. 22172, to which Movant has filed a reply, R. Doc. 22175. Relatedly, on March 20, 2019, Parker Waichman, LLP ("Parker") filed a "Motion for Partial Disbursement of Fees Awarded by the Court." R. Doc. 22170. Thereafter, on March 22, 2019, Parker filed a motion seeking to strike Movant's Motion, R. Doc. 22181, to which Movant filed an opposition, R. Doc. 22183. On March 14, 2019, McCallum, Hoaglund, Cook & Irby, LLP ("McCallum") and Gentle, Turner, Sexton & Harbison ("Gentle Turner") filed a Motion for Disbursement of Individually Retained Counsels' Fees. R. Doc. 22151, 22168. The Court heard oral argument on the motions on April 23, 2019. R. Doc. 22227. The motions being related, the Court now rules on them simultaneously.

---

[1] The joining parties are: (1) The Steckler Law Firm; (2) Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; (3) Whitfield, Bryson & Mason LLP; (4) Taylor Martino, P.C.; (5) The Lambert Firm, PLC; and (6) The Becnel Law Firm, LLC.

I. BACKGROUND

From 2004 through 2006, the housing boom in Florida and rebuilding efforts necessitated by Hurricanes Rita and Katrina led to a shortage of construction materials in the United States, including drywall. As a result, drywall manufactured in China was brought into the United States and used in the construction and refurbishing of homes in coastal areas of the country, notably the Gulf Coast and East Coast. Sometime after the installation of the Chinese drywall, homeowners began to complain of emissions of foul-smelling gasses, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829 (E.D. La. 2012), *aff'd*, 742 F. 3d 576 (5th Cir. 2014). Many of these homeowners also began to report various physical afflictions allegedly caused by the Chinese drywall.

These homeowners began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. Because of the commonality of facts in the various cases, this litigation was designated as multidistrict litigation. Pursuant to a June 15, 2009 transfer order from the United States Judicial Panel on Multidistrict Litigation, all federal cases involving Chinese-manufactured drywall were consolidated for pretrial proceedings in MDL 2047 in the United States District Court for the Eastern District of Louisiana.

The Chinese drywall at issue was largely manufactured by two groups of defendants: (1) the Knauf entities and (2) the Taishan entities. Because the Taishan entities contested jurisdiction at the outset and refused to accept service of process, it was necessary to conduct this litigation along two tracks. The first track involved the Knauf entities.

The Knauf entities ("Knauf") are German-based, international manufacturers of building products, including drywall, whose Chinese subsidiary, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), advertised and sold its Chinese drywall in the United States. The Knauf entities are named defendants in numerous cases consolidated with the MDL litigation as well as litigation in state courts. The Knauf entities did not contest jurisdiction and first entered their appearance in the MDL litigation on July 2, 2009. *See* Rec. Doc. 18. On November 2, 2009, in Pretrial Order No. 17, KPT agreed to a limited waiver of service. *See* Rec. Doc. 401. After a period of intense discovery, the court set various bellwether trials. From March 15, to March 19, 2010, the Court presided over a bellwether trial in *Hernandez v. Knauf Gips KG*, Case No. 09-6050, involving a homeowner's claims against KPT for defective drywall. *See* Rec. Doc. 2713. For purposes of the trial, Knauf stipulated that KPT Chinese drywall "emits certain reduced sulfur gases and the drywall emits an odor." *Id*. The Court, based on the evidence presented, found the KPT Drywall was a defective product and issued a detailed Findings of Fact and Conclusions of Law in favor of Plaintiff Hernendez ("*Hernandez* FOF /COL"), *see id.*, and entered a Judgment in the amount of $164,049.64, including remediation damages in the amount of $136,940.46, which represented a cost of $81.13 per square foot based on the footprint square footage of the house. *See* Rec. Doc. 3012.

On October 14, 2010, Knauf agreed to participate in a pilot program to remediate a number of homes using the remediation protocol formulated by the Court in the *Hernandez* case. The Knauf pilot remediation program has remediated over 2,800 homes containing KPT Chinese drywall using essentially the same protocol. At the Court's urging, after a number of homes had been remediated, the parties began working together to monetize this program and make it available to a broader class of plaintiffs.

Thereafter, the PSC and Knauf entered into settlement discussions, and on December 20, 2011, some two years after the formation of this MDL. The PSC reached a global remediation settlement with Knauf, which is designed to resolve all Knauf-related Chinese drywall claims. After a bellwether trial involving the downstream Knauf distributor, North River, numerous other settlement agreements were also reached with other downstream entities in the chain of commerce with the Knauf. These entities included various distributers, builders, and installers (and their insurers) of the Knauf-manufactured Chinese drywall.

On August 12, 2013, Plaintiffs' and Defendants' Liaison counsel entered into a second settlement agreement addressing claims filed after December 9, 2011 (the "New Claims Settlement Agreement"). R. Doc.16978-1. Under the New Claims Settlement Agreement, Claimants who gave notice prior to October 25, 2013 and qualified under the terms of the New Claims Agreement were eligible to seek benefits under the Knauf Class Settlement Agreement, subject to the requirements set forth in both agreements. R. Doc. 16978-1.

Under the terms of the settlements, the claimants with KPT Chinese drywall (drywall manufactured by Knauf's Chinese subsidiary) were offered several options. Under Option 1, the claimants were offered the opportunity to receive a complete, environmentally certified remediation of their properties. Under Option 2, the claimants were offered cash reimbursement in the event the home was already remediated. Finally, under Option 3, claimants were offered a cash payment instead of remediation as well as the opportunity to receive monetary benefits from the Knauf downstream chain of commerce entities to compensate them for other specifically designated losses.

As part of the Knauf remediation settlement, Defendants also agreed to pay reasonable costs, including the cost of administering the program and an additional amount for attorneys' fees,

4

which includes both the fees for contract counsel and those for common benefit counsel. This payment relieves every claimant of all contingency fee and cost reimbursement obligations to both retained contract counsel and common benefit counsel (with exception of the Virginia litigants), and thus represents an amount which otherwise would have been payable by the claimants out of their settlement recovery.

The claimants having received their appropriate portion of the settlement funds, the Court endeavored to allocate attorneys' fees to contract counsel and common benefit counsel pursuant to Pre-Trial Order 28 ("PTO 28"). R. Docs. 17379, 20282. PTO 28 lays out the multi-step process by which the Court disbursed attorneys' fees: (1) a review of time and expenses, (2) the submission of an initial affidavit for compensation for common benefit work and reimbursement of expenses, (3) the filing of a joint fee petition, (4) the filing of a request for common benefit assessment for any Chinese Drywall case or claim not participating as a Class Member or claimant in any of the various Class Action Settlement Agreements, (5) establishing common benefit and individual fees, and finally (6) allocating the common benefit fees. R. Doc. 17379. Throughout this process, the Court was aided by Special Master Daniel Balhoff, Court-Appointed CPA Philip Garrett, and Court-Appointed Settlement Administrator BrownGreer.

After completing steps one through four, the Court proceeded to step five to "determine the total amount of the common benefit fund and the amount of funds for individual counsel for claimants." *Id.* at ¶ 10. In its January 31, 2018 order, the Court found the appropriate split between contract counsel and common benefit counsel was fifty-two percent for common benefit counsel and forty-eight for contract counsel. R. Doc. 21168. Thereafter, on February 4, 2019, the Court proceeded to step six, allotting the common benefit fund to various firms in differing amounts. R. Doc. 22089. The next day, the Court issued its final judgment regarding common benefit attorneys'

fees (the "Final Judgment"). R. Doc. 22092. On March 5, 2019, Parker filed a notice of appeal with respect to the Court's April 5, 2019 judgment, R. Doc. 22123; on March 6, 2019, Anderson Kill, PC also filed a notice of appeal, R. Doc. 22123; and on March 7, 2019, the Alters Law Firm filed a notice of appeal, R. Doc. 22129 (collectively the "Appealing Parties").[2]

## II. PENDING MOTION

### a. Movant's Motion Seeking Immediate Disbursement of Attorneys' Fees [R. Doc. 22130]

On March 8, 2019, Movant filed a motion seeking the immediate disbursement of attorneys' fees pursuant to the Court's Final Judgment, R. Doc. 22130, in which several parties have joined, R. Docs. 22131, 22134, 22141, 22147, 22159, 22164, 22169. In its Motion, Movant argues the Knauf Settlement Agreements "made clear this Court would consider and rule upon the allocation of all attorneys' fees and that any right of appeal as to the Court's determination of attorneys' fee allocation was waived." R. Doc. 22130 at 1. In support of its argument, Movant points to language in both Agreements. *Id.* at 5–6. The Knauf Settlement Agreement states in pertinent part:

> The PSC shall be entitled to petition the Court for an award of attorneys' fees and costs, and provided that the PSC does not seek an award of attorneys' fees and costs exceeding $160 million from the Knauf Defendants, the Knauf Defendants agree not to oppose any such request. All attorneys' fees and costs as well as the allocation of attorneys' fees and costs among the PSC, common benefit counsel authorized and working at the direction of the PSC, other common benefit counsel, Settlement Class Counsel and individual retained counsel are subject to the approval of the Court and to a determination by the Court that the common benefit counsel work was valid and bona fide. *The Court's determination shall be final and not subject to appeal.*

R. Doc. 16407-3 at § 14.2 (emphasis added). Similarly, the Global Settlement Agreement states,

---

[2] The Court notes that the Alters Law Firm, P.A,'s appeal was dismissed on April 10, 2019 for want of prosecution. R. Doc. 22210.

6

> The determination of any attorneys' fee or court cost issue, including the allocation between and amongst the Petitioning Attorneys, shall be determined by the Court and all Parties agree such determination is not appealable and hereby waive all appeals of any such determination.

R. Doc. 15695-2 at § 16.6 (emphasis added).

Movant contends that, pursuant to this language, to which no counsel nor individual Plaintiff objected, the Appealing Parties have waived "their ability to raise the allocation of any attorneys' fees on appeal." R. Doc. 22130-1 at 6. "As a result," Movant argues, "by the very terms of the Settlement Agreements to which these Appealing Firms agreed and from which they have the opportunity to obtain any attorneys' fees, the Appealing Firms specifically waived any right to contest the allocation of attorneys' fees once determined by this Court." *Id.* at 2.

Movant also argues that, even if the Appealing Parties did not waive their right to appeal based on the Settlement Agreements' waiver language, no party has sought a stay of the Court's final judgment, nor should a stay be issued. Therefore, Movant contends, notwithstanding the Appealing Parties' appeal pending before the Fifth Circuit, this Court should disburse the funds to the parties immediately. *Id.* at 8.

Finally, arguing in the alternative, Movant contends the Court "could order a partial disbursement with a holdback." *Id.* at 12. Similarly, in its motion joining Movant's motion, McCallum, Hoaglund, Cook & Irby request an order from the Court:

> (1) providing each individually retained counsel the option to accept a full and final payment for their individually retained counsel fees as calculated in compliance with the Order and Reasons Setting Common Benefit Fees and the formula in PTO 28(f); (2) in consideration for such payment individually retained counsel shall execute a full and final release and waiver of all claims as to any additional individually retained counsel fees regardless of the results of the appellate process.

R. Doc. 22169-1 at 1–2; R. Doc. 22168-1 at 1–2.

In opposition, Anderson Kill, P.C. ("Anderson") contends the "[i]mmediate disbursement of all attorneys' fees to all counsel would result in great hardship to the Court and to all counsel should any of the several appeals be successful in any way and a clawback become [*sic*] necessary." R. Doc. 22172 at 1. Next, Anderson addresses Movant's waiver argument, stating it is "incorrect," as Anderson "was not a party in the actions settled" and, therefore, "waived nothing." *Id.* at 2. Finally, Anderson contends the waiver language does not mean attorneys waived their right to appeal the Court's allocation of fees, as the waiver "can be read to apply only to 'such determination,'" and not necessarily the Court's allocation of the fees. *Id.* at 3.

Instead of filing an opposition to Movant's motion seeking the immediate disbursement of fees, on March 20, 2019, Parker filed a "Motion for Partial Disbursement of Fees Awarded by the Court." R. Doc. 22170. In the motion, Parker moves the Court to disburse eighty-percent of the fee award, leaving a twenty-percent holdback to be disbursed following the Fifth Circuit's ruling on the Appealing Parties' appeals. *Id.* at 4. Parker contends, "Because the Fee Fund is ready and available for distribution," the Court should "disburse 80% of the available fees to both common benefit and contract counsel and reimburse all costs and assessments to common benefit counsel." *Id.* at 4–5. Thus, because making the attorneys in this case "wait any longer for at least some fee award [after ten years of litigation] would be grossly unfair," Parker argues making a partial disbursement would "quell the concerns of all involved." *Id.*

In reply, Movant notes that Anderson's opposition does not address Movant's original motion in any meaningful way and that Parker, in failing to oppose Movant's motion, was "silent regarding the effect of the waiver on appeal terms." R. Doc. 22175. "As a result," Movant contends, "there is no persuasive argument to undermine the clear and unambiguous language

8

wherein all counsel agreed to waive any appeal of this Court's determination of the attorneys' fees." *Id.* at 3.

On March 22, 2019, Parker filed a second motion, this time seeking to strike Movant's Motion. R. Doc. 22181. In this motion, Parker addresses for the first time Movant's argument that the waiver language contained in the Settlement Agreements bars the Appealing Parties' appeal. *Id.* at 1. Notably, in the Court's briefing schedule, the Court ordered that any opposition to Movant's Motion be filed by no later than March 20, 2019, R. Doc. 22143, a point Movant emphasizes in its opposition to Parker's motion to strike, R. Doc. 22183. In its motion, Parker belatedly moves the Court to strike Movant's motion, arguing Movant's argument is "improper." R. Doc. 22181-1 at 2. Parker contends it was "forced" to file its motion to strike, as Movant "again presses the waiver argument" in its reply to Anderson's opposition. *Id.* at 2. Ultimately, Parker argues Movant's "argument regarding the waivers is clearly improper and should be stricken." *Id.* at 2.

## III. LAW & ANALYSIS

As an initial matter, the Court addresses Parker's motion to strike Movant's Motion. R. Doc. 22181. Movant filed its Motion on March 8, 2019. R. Doc. 22130. In response, the Court issued a briefing schedule, ordering responses to Movant's Motion as follows:

> **IT IS ORDERED** that any opposition to Krupnick Campbell Malone's Motion for Immediate Disbursement of Attorney's Fees Pursuant to Final Judgment, R. Doc. 22130, be filed into the record by no later than Wednesday, March 20, 2019.
> **IT IS FURTHER ORDERED** that responses be filed by no later than Wednesday, March 27, 2019.

Parker did not file an opposition. Instead, on March 22, 2019, Parker filed a motion to strike Movant's Motion, but did not offer any argument as to why striking Movant's motion would be

9

proper or why Parker failed to oppose Movant's motion in the first instance; instead, Parker simply opposed Movant's March 8, 2019 Motion. R. Doc. 22181-1. The Court considers Parker's filing untimely, notwithstanding the fact that Parker labeled its untimely opposition as a motion to strike. As a result, the Court will **STRIKE** Parker's opposition as untimely. *See Johnson v. Wennes*, No. 08-1798, 2009 WL 506481, at *1 (S.D. Cal. Feb. 26, 2009) (striking opposition as untimely filed).

### a. Whether the Court Has the Authority to Order the Disbursal of the Funds

Movant asks the Court to immediately disburse the attorneys' fees awarded pursuant to the Court's February 5, 2019 Final Judgment. R. Doc. 22092. The Appealing Parties having appealed that Final Judgment, the Court first considers whether it has the authority to disburse the fees before considering the judiciousness of disbursing the fees prior to the Fifth Circuit's ruling on the pending appeals. The Court notes at the outset that it has no authority to rule on Movant's waiver argument, as that issue lies unambiguously with the Fifth Circuit. *See Griggs v. Provident Cons. Disc. Co.*, 459 U.S. 56, 58 (1982). Thus, Movant's waiver argument is more appropriately made before that court.

### i. Whether the Court Has the Authority to Distribute the Funds Notwithstanding Appeal

In its brief, Movant points to several cases in which the district court ordered the disbursal of attorneys' fees, despite an appeal having been lodged on the judgment allocating those fees. *See* R. Doc. 22130. Moreover, Federal Rule of Civil Procedure 62 contemplates such a disbursement:

> (a) Automatic Stay. Except as provided in Rule 62(c) and (d), execution on a judgment and proceedings to enforce it are stayed for 30 days after its entry, unless the court orders otherwise.

Fed. R. Civ. P. 62(a). In this case, the judgment currently on appeal was issued on February 5, 2019. R. Doc. 22092. Thus, pursuant to Rule 62(a), the automatic stay on the Court's judgment

allocating attorneys' fees was lifted on March 7, 2019. Since that time, no party has moved for an extension of the automatic stay, and neither has the Fifth Circuit ordered this Court's judgment be stayed pending the appeal. *See* Fed. R. Civ. P. 62(g) (noting the appellate court's authority to order a judgment be stayed "while an appeal is pending"). As a result, the Court concludes it has the authority to disburse the fees pursuant to the February 5, 2019 final judgment, notwithstanding the fact that the judgment is on appeal. *See, e.g.*, *In re Complaint of Clearsky Shipping Corp.*, No. 96-4099, 2003 WL 1090233 (E.D. La. Mar. 10, 2003); *Herbert v. Exxon Corp.*, 953 F.2d 936 (5th Cir. 1992); *Freret Marine Supply v. M/V ENCAHNTED CAPRI*, No. 00-3805, 2002 WL 31324042, at *4–5 (E.D. La. Oct. 16, 2002).

### ii. Whether Disbursal is Appropriate

To obtain a stay pending appeal, the moving party must demonstrate: (1) that it is likely to succeed on the merits; (2) that it would suffer irreparable injury if the stay were not granted; (3) that granting the stay would not substantially harm the other parties; and (4) that granting the stay would serve the public interest. *Nat'l Treasury Employees Union v. Von Raab*, 808 F.2d 1057, 1059 (5th Cir. 1987); *see also Arnold v. Garlock, Inc.*, 278 F.3d 426, 438–439 (5th Cir. 2001). Although no party has moved for a stay of this Court's February 5, 2019 Judgment, even if a party were to file a motion seeking a stay, a cursory review of the criteria for granting a stay of the judgment pending appeal demonstrates no stay should issue.

First, although this Court has been divested of the authority to find the Appealing Parties have waived their right to appeal, the waiver language in the Settlement Agreements is clear. Moreover, this Court has undergone painstakingly careful procedures to allocate the fees and allowed for the parties' input at every turn. As a result, the Appealing Parties' likelihood of success on the merits is slim.

Next, the Court notes Parker has moved the Court repeatedly to immediately disburse the fees. R. Docs. 20434, 21240. Moreover, "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1964). "[L]oss of income alone [does not] constitute[] irreparable harm." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989).

Here, in the absence of a stay, the appealing parties would receive funds, just not the total amount of funds to which they believe they are entitled. Specifically, the Court ordered Parker receive a common benefit fee of $2,037,038.98 plus held costs and the remaining assessment for a total of $2,316,197.07; the Court ordered Anderson receive a common benefit fee of $111,388.91 plus held costs for a total of $132,016.48; the Court ordered Alters receive a common benefit fee of $177,577.00 plus a return of the remaining assessment for a total of $187,577.00. *See* R. Doc. 22089 at 11–13, 53. Receiving these funds can hardly be considered harmful.

Third, although it cannot be considered "irreparable," granting a stay would be highly inequitable to the other parties in this case. As Parker notes in its motion seeking disbursement of eighty-percent of the funds, making the attorneys in this case "wait any longer for at least some fee award [after ten years of litigation] would be grossly unfair." R. Doc. 22170 at 4–5.

Finally, granting a stay would not be in the public interest. As this Court has explained in previous orders,

> Consumer class actions . . . have value to society more broadly, both as deterrents to unlawful behavior—particularly when the individual injuries are too small to justify the time and expense of litigation—and as private law enforcement regimes that free public sector resources. If we are to encourage these positive societal effects, class counsel must be adequately compensated—even when significant

12

compensation to class members is out of reach (such as when contact information is unavailable, or when individual claims are very small). An inflexible, categorical rule neglects these additional considerations.

*In re: Vioxx Prods. Liab. Litig.*, No. MDL 1657, 2018 WL 4613941, at *8 (E.D. La. Sept. 26, 2018) (quoting *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 287 (6th Cir. 2016), *cert. denied sub nom. Blackman v. Gascho*, 137 S. Ct. 1065 (2017)). In this case, litigation has been pending before this Court for ten years. As Movant states in its motion, "these counsel have labored over the past [ten] years without compensation." R. Doc. 22130-1 at 11. To demand they wait until the Fifth Circuit resolves the Appealing Parties' appeals to receive the compensation to which this Court feels they are entitled is clearly against the public interest.

### iii. Alternative Relief Agreed to by the Parties

In its reply, Movant notes that all firms, including the Appealing Parties, agree that an eighty-percent disbursement in this case is appropriate. R. Doc. 22175 at 1–2. On March 14, 2019, McCallum and Gentle Turner, both of which filed a notice of appeal, R. Doc. 22120, filed a Motion for Disbursement of Individually Retained Counsels' Fees, R. Doc. 22151, 22168. They reiterated their position in their response to Movant's Motion. R. Doc. 22169. Then, on March 20, 2019, Parker filed its own Motion for Partial Disbursement of Fees Awarded seeking an Order disbursing eighty-percent of the total available attorneys' fees. R. Doc. 22170. Finally, Anderson Kill, alternatively also suggests a twenty percent holdback. R. Doc. 22172.

In seeking or supporting relief from this Court in the form of immediate disbursement of

attorneys' fees, albeit in the alternative or at differing amounts, all of those who have appealed concede the jurisdiction and authority of this Court to enter an order disbursing funds, notwithstanding their respective notices of appeal.[3]

Although the equities way in favor of disbursal and all parties agree that at least a limited disbursal is appropriate, the Court finds taking such an action would be imprudent. There are a significant number of attorneys and firms in this case, and in the (admittedly unlikely) event the Fifth Circuit reverses or alters this Court's fee disbursal order, a claw back of the distributed funds would prove disastrous, highly time consuming, and in some cases infeasible. Moreover, the cost of a claw back in that type of situation would be tremendous. Given this potential catastrophe, the Court will exercise its discretion to deny the motion.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the motion to strike filed by Parker Waichman, LLP, R. Doc. 22181, be and hereby is **STRICKEN** from the record as untimely filed.

**IT IS FURTHER ORDERED** that the Motion for the Immediate Disbursement of Attorneys' Fees filed by Krupnick Campbell, R. Doc. 22130, be and hereby is **DENIED**.

**IT IS FURTHER ORDERED** that Parker Waichman, LLP's Motion for Partial Disbursement of Fees Awarded by the Court, R. Doc. 22170, be and hereby is **DENIED**.

**IT IS FURTHER ORDERED** that the Motion for Disbursement of Individually Retained Counsels' Fees filed by McCallum, Hoaglund, Cook & Irby, LLP and Gentle, Turner, Sexton & Harbison, R. Doc. 22151, 22168, be and hereby is **DENIED**.

---

[3] Despite the position taken in its motion to disburse, during oral argument, Parker argued the Court did *not* have jurisdiction to consider the instant motions.

New Orleans, Louisiana on this 16th day of May 2019.

_____
Eldon E. Fallon
U.S. District Court Judge