# Exhibit "A"

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

EDUARDO AND CARMEN AMORIN, *et al.*,
*Individually, and on behalf of all*
*Others similarly situated,*

    Plaintiffs,

v.                                              Civil No. 2:11cv377

TAISHAN GYPSUM CO., LTD, F/K/A
SHANDONG TAIHE DONGXIN CO., LTD.,
*et al.*,

    Defendants.

## MEMORANDUM ORDER

This matter is before the Court for determination of a "trial plan" for 175 "Virginia Plaintiffs" who are members of a certified class of property owners (or former property owners)[1] who suffered various forms of damages caused by Defendant Taishan's defective drywall sold in Virginia under the "Venture Supply" brand name.

### A. Procedural Background

The instant case was part of a larger proceeding before the United States Judicial Panel on Multidistrict Litigation, which began in 2009 and involved more than 3,500 properties in Florida, Louisiana, and Virginia. Following remand from the MDL to this

---

[1] The Virginia Plaintiffs consist of 73 current owners and 102 former owners of 175 subject properties (the Court's recitation of the specific number of Plaintiffs falling into stated categories is not a binding factual finding, but is offered for context based on counsel's representations).

Court, the Virginia Plaintiffs and the Defendants submitted competing "trial plans" to the undersigned Judge. Plaintiffs ask this Court to adopt the pre-remand rulings of Judge Fallon, who presided over the MDL in the Eastern District of Louisiana, and Defendants ask this Court to revisit, and reject, various rulings made by Judge Fallon, most notably the "damages formula" adopted to calculate "remediation damages"[2] on a class-wide basis for all Plaintiffs that are current owners of an affected property.

Judge Fallon's MDL rulings did not endeavor to collectively address any of the Plaintiffs "other damages" (including "loss of use" damages) in light of the widely varying facts specific to each Plaintiff, finding instead that remand to the appropriate district court where the properties are situated (Virginia, Florida, and Louisiana) was necessary to allow for individualized damages calculations. Depending on the resolution of various post-remand issues, the instant case could require as many as 175 damages evidentiary hearings.

---

[2] Due to the toxic content of the drywall installed in the thousands of subject properties, Judge Fallon concluded that the "evidence-based and field tested" remediation plan requires homes with toxic drywall to be "stripped to the studs (with all wiring, plumbing, fixtures, cabinets, HVAC systems and insulation [as well as most flooring types] removed), cleaned by wet-wipe and HEPA vacuum, and examined and tested by an independent entity before the property is brought back to its originally intended condition." In re Chinese-Manufactured Drywall Prod. Liab. Litig., No. MDL 2047, 2017 WL 1421627, at *11 (E.D. La. Apr. 21, 2017).

2

There are several unique features of the instant multi-district litigation, including: (1) default judgement was entered against Defendants many years ago, leaving the proper damages calculation as the only issue to be litigated, and this Court therefore emphasizes that its intent is to develop a streamlined and expeditious plan to conduct any necessary damages <u>evidentiary hearings</u>, not "trials," as Defendants have long-since forfeited their trial rights; (2) as characterized by Judge Fallon, Defendants' litigation conduct appears to reveal that their "whole approach is just delay," and even if Defendants did not have the specific intent to delay, their conduct (defaulting, appearing to challenge jurisdiction, appealing jurisdictional rulings, withdrawing from the case after an adverse result on jurisdiction, appearing to challenge class certification <u>after</u> it was completed, filing subsequent interlocutory appeals, etc.) slowed the instant case to a "glacial pace," and effectively deprived Plaintiffs of recovery for nearly a decade even though liability has long been established, Jt. App'x 23, at 24:2-18;[3] (3) before adopting the formula applicable to current owners, Judge Fallon conducted a hearing on "remediation damages, and Defendants fully participated and had the opportunity to cross-examine Plaintiffs' experts, call

---

[3] After transfer back to this Court, Defendants continue to challenge matters already decided in the MDL, including the propriety of Judge Fallon's class certification decision and the damages formula for current owners.

3

their own experts, and otherwise challenge the remediation formula;[4] and (4) the remediation formula adopted in the MDL is being applied by Judge Fallon as to the Louisiana Plaintiffs, and has likewise been adopted by Judge Cooke in the Southern District of Florida as to the remanded Florida Plaintiffs. Jt. App'x 20, 21.

### B. Ruling on the Remediation Formula

On April 30, 2019, this Court conducted a hearing on the parties' vastly diverging "trial plans." After hearing from counsel from both sides, for the reasons outlined in Judge Cooke's order adopting "**all** of Judge Fallon's [MDL] findings of facts and legal conclusions," Jt. App'x 21, at 2, this Court similarly adopts all of Judge Fallon's findings of fact and legal conclusions made prior to his suggestion of remand. In so ruling, this Court applies Fourth Circuit precedent reflecting an apparent presumptive rule that it "would be improper to permit a transferor judge to overturn orders of a transferee judge even though error in the latter might result in reversal of the final judgment of

---

[4] Defendants also had the opportunity in the MDL to dispute the class certification decision, yet they failed to appear to advance such challenge, thereby undercutting any suggestion that they will be denied due process through application of a class-wide damages process predicated on the "commonality" and "typicality" of the remediation claims. Accordingly, even assuming, for the sake of argument, that such certification decision was in error, this Court would be hesitant to allow Defendants to revisit this previously forfeited matter, especially after efforts to de-certify the class were already denied by another coequal federal judge.

4

the transferor court." In re Food Lion, Inc., Fair Labor Standards Act Effective Scheduling Litig., 73 F.3d 528, 531 (4th Cir. 1996) (quoting Weigle, S.A., The Judicial Panel on Multidistrict Litigation, Transferor Courts and Transferee Courts, 78 F.R.D. 575, 577 (1977)); see 6 Newberg on Class Actions § 18:47 (5th ed.). In other words, the wisdom of the transferee judge's rulings is a matter to be resolved by the appropriate appellate court.

Alternatively, even if this Court applies a lesser degree of deference, in light of the opportunities Defendants have already had in the MDL to contest class-wide remediation damages, and the absence of any changed circumstances, this Court would still adopt Judge Fallon's ruling. See 6 Newberg on Class Actions § 18:47 (identifying the varying degrees of deference applied across different circuits as "no collateral review," "substantial deference" and "law of the case"); Jt. App'x 21 (Judge Cooke's review of the spectrum of approaches from the Fourth Circuit's "bright line rule" precluding review, to the Fifth Circuit's "law-of-the-case" approach, finding that Judge Fallon's rulings should be adopted under any approach); cf. Carlson v. Bos. Sci. Corp., 856 F.3d 320, 325 (4th Cir. 2017) (explaining that, even under law of the case doctrine, a judge should proceed with an added degree of hesitancy when asked to overrule the earlier determination of

another coequal judge).[5] Assuming that the least deferential "law of the case" standard were applicable, Defendants fail to demonstrate that Judge Fallon's damages ruling violates due process and/or conflicts with Virginia law merely because it is derived from a mathematical model tied to square footage rather than being based on an individualized inspection of each subject property followed by an "estimate" of the cost to remediate such structure.[6] Notably, not only did Defendants fully participate in the MDL damages hearing addressing the propriety of the remediation formula, but they were <u>voluntarily absent</u> during the damages class certification process, a process that necessarily involved

---

[5] The Court acknowledges that the Fourth Circuit's recent <u>Carlson</u> opinion addresses a transferor district court's review of an MDL summary judgment ruling without making any reference to the "strict" rule of adherence suggested in <u>Food Lion</u>. <u>Carlson</u>, 856 F.3d at 325. However, Defendants' suggestion that <u>Carlson</u> intended to overrule <u>Food Lion</u> is undercut by the fact that: (1) <u>Food Lion</u> is not even discussed in <u>Carlson</u>; and (2) a panel of the Fourth Circuit lacks authority to overrule an earlier panel's decision. <u>McMellon v. United States</u>, 387 F.3d 329, 332-33 (4th Cir. 2004) (en banc). This Court need not determine whether these published opinions "conflict" because, as discussed herein, this Court would adopt Judge Fallon's ruling under the less deferential standard applied in <u>Carlson</u>.

[6] The Court notes that Virginia law supports relying on <u>reasonable</u> estimates of damages, including estimates based on formulas, as long as the case-specific record supports such approach. See <u>Fairfax Cty. Redevelopment & Hous. Auth. v. Worcester Bros. Co.</u>, 257 Va. 382, 389-91, 514 S.E.2d 147, 151-52 (1999) (acknowledging that "the <u>Eichleay</u> formula" for estimating unabsorbed home office expenses has been criticized as "an inadequate substitute for direct evidence" of actual damages, but nevertheless allowing the plaintiff to rely on such formula); <u>Gwaltney v. Reed</u>, 196 Va. 505, 507-08, 84 S.E.2d 501, 502 (1954) (explaining that the plaintiff has the burden to prove damages "with <u>reasonable</u> certainty" and that a plaintiff may do so by "furnish[ing] evidence of sufficient facts or circumstances to permit at least <u>an intelligent and probable estimate</u> thereof") (emphasis added); Va. Prac. Construction Law § 11:4 (indicating that a plaintiff must set forth sufficient facts "to allow the fact-finder to make an informed estimate of damages").

6

addressing the "commonality" and "typicality" of the various plaintiffs' remediation damages. See In re Chinese-Manufactured Drywall Prod. Liab. Litig., No. MDL 2047, 2014 WL 4809520, at *4, *15 (E.D. La. Sept. 26, 2014) (concluding that the damages class should be certified and that "the average cost of repairing class members' homes is subject to calculation on a formulaic, square footage basis").[7]

While this Court declines to revisit Judge Fallon's MDL rulings, it notes that Judge Fallon based his damages ruling on facially reasonable factual findings based on <u>in-court credibility determinations</u> made after hearing live expert testimony that has not been heard by this Court. Judge Fallon's fact-based findings include the following: (1) the scope of remediation work is consistent regardless of the building type; (2) the cost of the remediation work per square foot is consistent across various states and can be modified to reflect local conditions; and (3) the remediation formula is not tied only to a small sample of seven homes (as argued by Defendants) but rather has been tested by Plaintiffs' experts <u>over years</u>, across <u>various states</u>, and proven

---

[7] As stated at the hearing before this Court, the Court disagrees with Defendants' contention that Judge Fallon's formula is merely an "advisory" ruling entitled to no deference based on the phrasing in his suggestion of remand order. At the time such order was issued, Judge Fallon had already held, at the conclusion of a full adversarial process, that the damages formula was applicable to all current owners of properties containing Taishan drywall. Similarly, this Court disagrees with Defendants' efforts to characterize Judge Fallon's ruling as a matter outside his authority.

7

to be "a reliable measure of the costs on a square foot basis for a full scope remediation of Chinese drywall properties, when adjusted for location and time." In re Chinese-Manufactured Drywall Prod. Liab. Litig., No. MDL 2047, 2017 WL 1421627, at *12 (E.D. La. Apr. 21, 2017).[8]

### C. Remediation Damages - Current Owners

As to any Plaintiff that is a "current owner" of an affected property that has not been fully remediated (seventy one claimants), the damages formula adopted by Judge Fallon will be applied to determine remediation damages. As to current owners that have completely remediated (two claimants), the parties agree that the actual cost of the remediation work is the appropriate property damage award.[9] For those Plaintiffs governed by the formula, the appropriate inputs will be: (1) the litigated "under

---

[8] Judge Fallon expressly concluded that the formula is "most likely" as precise as the case-by-case inspection approach proposed by Defendants, which would still turn on a builder's "estimation" of the cost of extensive remediation repairs. In re Chinese-Manufactured Drywall, 2017 WL 1421627, at *14, 14 n.1.

[9] This Court adopts Judge Fallon's method for determining when a home is completely remediated, which includes wet-wipe/HEPA cleaning, and inspection and certification by an engineering firm that the property has been adequately cleaned of all contaminants emitted by the defective drywall. While Plaintiffs' counsel represents that only two current owners have fully remediated, to the extent relevant evidence suggests inconsistencies regarding whether one or more additional properties were fully remediated, through and including the cleaning and certification stage, such matter may be explored by Defendants through the same limited discovery process applicable to ownership, square footage, etc.

8

air square footage"; and (2) the 2019 RS Means National square foot unit price, adjusted by locality.

Although the Court adopts the damages formula for current owners who have not fully remediated, the Court agrees with Defendants that some limited <u>written discovery</u> should be permitted in order to verify ownership and square footage, as well as "set-offs" that must be made based on proceeds that claimants received from earlier settlements with different defendants. Defendants have already been provided preliminary proof of these matters, as well as Plaintiffs' proposed calculations under the formula.

While each current owner may have a claim for "other damages" (loss of use and enjoyment, medical damages, etc.), <u>no discovery</u> will be permitted into these damages at this time. Such limitation will expedite the determination of remediation damages as Plaintiffs' counsel has represented that the vast majority of current owners will likely elect not to pursue the smaller quantum of "other damages" if they can obtain a final and enforceable judgment on the remediation damages within the next several months.

### D. Procedure Forward - Current Owners

To effectuate the expedited calculation of remediation damages for current owners, Magistrate Judge Krask will oversee the limited discovery necessary for application of the formula to each of the seventy-one current owners of a property that has not

9

been completely remediated. As to the two Plaintiffs that have completely remediated, Judge Krask will resolve any disputes that may exist over the actual remediation costs expended by such Plaintiffs.

All "formula discovery" for current owners will proceed on the same expedited timeline, and should culminate in Judge Krask's issuance of an R&R addressing any remaining contests over ownership, under air square footage, set-offs, and/or the completeness of remediation, **within 120 days** after entry of this Order. The discovery sought by Defendants will proceed solely in written form. While the instant Order should not be interpreted to curtail Judge Krask's discretion in any way, the Court reiterates for the purpose of minimizing disputes between the parties, that based on both the representations made to the Court by all counsel and Defendants' long-term exposure to the relevant facts, the Court anticipates the need for minimal discovery to allow for proper application of the remediation formula. No later **than Friday, May 24, 2019**, counsel shall submit to Judge Krask a written proposal for deadlines for remediation discovery. Counsel shall confer prior to making such submissions in an effort to narrow disagreements. The parties proposed discovery plans should have discovery cut-off dates no later than **July 12, 2019**.

After the R&R is issued by Judge Krask, the parties will have fourteen calendar days to file any objections and seven calendar days to respond to the opposing party's objections. By the time the R&R is issued, counsel for Plaintiffs should have spoken individually to each current owner regarding whether he or she intends to pursue "other damages" claims, and Plaintiffs' counsel shall submit the necessary filings to identify those <u>current-owner</u> Plaintiffs electing to waive their claims to further damages. This Court will expeditiously rule on any objections to the R&R and will issue final Rule 54(b) Judgments as to those current-owner Plaintiffs that elect not to pursue "other damages." To the extent a small subset of current owners elect to pursue "other damages," they will be placed on a discovery plan and evidentiary hearing schedule consistent with that of former owners.

### E. Damages - Former Owners

One hundred and two claimants no longer own the property containing, or previously containing, contaminated drywall. Twenty-three of the former owners partially remediated their property prior to transfer, whereas seventy-nine others performed <u>no remediation</u> before they transferred and/or lost ownership, with some former owners losing their "uninhabitable" property through foreclosure or short-sale based on their inability to access the

11

funds <u>owed by Defendants</u> to allow them to remediate (and continue living in) their homes.

Determining the proper measure of remediation damages for former owners is conceptually distinct from current owners for two reasons: (1) Judge Fallon's adoption of the damages formula in the MDL proceedings was <u>limited to current owners</u>; and (2) former owners <u>lack the ability to complete the additional repairs</u> necessary to fully remediate the damage caused by Defendants. On May 3, 2019, Judge Fallon issued an order addressing the extension of the formula to former owners <u>under Louisiana law</u>, and concluded that former owners that performed remediation prior to transfer are entitled to damages under the formula, whereas former owners that did not remediate prior to transfer are not necessarily entitled to formula damages, but are entitled to a rebuttable presumption that formula damages are the proper measure of "diminution in value" of the subject property. <u>In re Chinese-Manufactured Drywall Prod. Liab. Litig.</u>, No. CV MDL 2047, 2019 WL 1984097, at *6 (E.D. La. May 3, 2019).

Having carefully reviewed Judge Fallon's May 3, 2019 Order (this <u>post-remand</u> ruling is not binding as to the Virginia Plaintiffs), as well as <u>Virginia</u> case law, this Court is unwilling to adopt the formula as a binding measure of damages to compensate any former owners for the physical damage to their former

12

property.[10]  The Court acknowledges the "equitable" argument advanced by Plaintiffs at the hearing, which seeks extension of the formula to former owners due to Defendants' delay tactics purportedly causing many Plaintiffs to transfer their homes in a depreciated condition; however: (1) Plaintiffs have not identified any Virginia case law that would support the award of repair damages to a party that <u>did not perform the repairs</u> and is <u>now incapable</u> of performing such repairs; and (2) any "equities" favoring the Plaintiffs that result from the numerous delays caused by Defendants appear to be more appropriately accounted for through an award of "other damages," including loss of use and enjoyment.[11]

Although this Court does not find that the damages formula is <u>controlling</u> as to any former owners, it agrees with and adopts Judge Fallon's reasoning and conclusions finding that the remediation damage formula is not only relevant to the determination of a former owner's "diminution" damages, but creates a <u>rebuttable presumption</u> of the diminution in market value. Accordingly, in this case-specific default class-action context,

---

[10] Although this Court does not extend the "binding" formula as far as Judge Fallon did, the Court does not foreclose future arguments on this issue if supported by Virginia case law (for example, the calculus would clearly be different if a Plaintiff that transferred a property without effectively remediating was subject to liability to the purchaser based on the transfer of a contaminated property).

[11] It does not appear that Judge Fallon's decision to apply the formula as binding to former owners that performed remediation was grounded in equity.

13

the formula is accepted by the Court as valid and reliable evidence of the diminution in value of the subject property caused by the defective drywall, unless Defendants present contrary evidence demonstrating that such formula should not control as to a specific affected property. Defendants will be afforded some discovery in the Court's discretion, but the case will not proceed with the full extent of discovery applicable outside the default context.

This Court's acceptance of the remediation formula as competent evidence of the diminution in market value is based on Virginia law acknowledging the relevance of repair damages to calculating diminution in value, Defendants' long-term delay tactics (which caused some Plaintiffs to transfer, rather than adequately repair, their homes), the fact that liability has been established for approximately a decade yet no damages have been recovered, and the attendant difficulty in determining the reduction in market value of the subject properties so many years after the harm was suffered by the Plaintiffs (with this difficulty being attributable <u>solely to Defendants</u>).[12] See <u>Averett v. Shircliff</u>, 218 Va. 202, 207-08, 237 S.E.2d 92, 95-96 (1977) (explaining, in a case involving damage to personal property, that the cost of "restor[ing] by repair," and the diminution in "market

---

[12] Judge Fallon's May 3, 2019 order aptly observed that calculating damages based on the decreased property value through market-based evidence will be a "Herculean task" due to Defendants' decade-long course of "delay, delay, delay." <u>In re Chinese-Manufactured Drywall</u>, 2019 WL 1984097, at *6.

14

value," are "merely evidentiary methods for determining the amount which will reasonably compensate the owner for his actual pecuniary loss sustained as a result of a negligent or wrongful act," and that "[t]he reasonable cost of repairs is one of the evidentiary factors in determining the market value of an automobile after it has been damaged"); <u>Lee v. Bell</u>, 237 Va. 626, 629-31, 379 S.E.2d 464, 466-67 (1989) (finding, in a case involving a dispute over damages in a tenant/landlord dispute, that if the defendant seeks to establish that "repair or replacement of wrongfully removed or destroyed property results in an unjustified betterment of the plaintiff, . . . <u>the defendant should have the initial burden</u> of going forward with some evidence of depreciation, unless it appears from the plaintiff's evidence"); <u>see also</u> <u>7-Eleven, Inc. v. Dep't of Envtl. Quality</u>, 42 Va. App. 65, 82-83, 590 S.E.2d 84, 92-93 (2003) (favorably citing to Restatement (Second) of Torts § 929, for the proposition that "damages for injury to real property include compensation for loss of use of the property and other consequential injuries in addition to any permanent property damage, <u>whether measured by restoration or market value</u>") (emphasis added); <u>Huberth v. Holly</u>, 120 N.C. App. 348, 353-54, 462 S.E.2d 239, 243 (1995) (explaining that "the general rule" for negligent damage to real property measures damages through the decrease in market value, and that: (1) repair and replacement

15

costs can inform the decision on diminution in value; and (2) when "the land is used for a purpose that is personal to the owner, the replacement cost is [itself] an acceptable measure of damages"). Such finding fully comports with any "equities" owed to Defendants in light of the timeline of this case, as it appears that a significant number of former owners would have <u>effectively</u> remediated had Defendants' tactics not caused the instant default judgment case to live on for a decade with no compensation to such deserving Plaintiffs.

### F. Procedure Forward - Former Owners

The Court will utilize the services of a Special Master to resolve all damages claimed by former owners, and the Special Master will be tasked (by separate written order) with overseeing discovery, resolving disputes, and issuing an R&R addressing: (1) diminution in value damages for former owners, with the remediation damages formula serving as a rebuttable presumption of the diminution in value; and (2) "other damages" (loss of use, alternative living expenses, medical damages, bankruptcy losses, etc.). Counsel are instructed to confer and attempt to agree to a Special Master with sufficient experience and availability to handle such matters. If counsel cannot agree to a Special Master by **noon** on **Friday, May 24, 2019**, they shall each file a notice on the docket providing two proposed names with relevant

16

qualifications outlined, no later than **close of business on that same day.**

By **May 29, 2019**, counsel for Plaintiffs and counsel for Defendants shall each file a Notice identifying ten Plaintiffs that no longer own the affected property to serve as "Priority Plaintiffs" for evidentiary hearings. In order to obtain the best representative sample, of the ten Plaintiffs identified by each side, two should have performed partial remediation and eight should have performed no remediation prior to transfer. **On that same date**, counsel shall submit a written proposal for discovery deadlines for the Priority Plaintiffs, including fact discovery and expert discovery relevant to both the diminution in value of the former-owners' affected properties and "other damages." Counsel shall confer prior to making such submissions in an effort to narrow disagreements.

Judge Krask will review the proposed discovery plans, determine whether a scheduling hearing or conference call is necessary, and issue a Scheduling Order. Without curtailing Judge Krask's discretion, it is this Court's intention that the evidentiary hearings before the Special Master be completed for all twenty Priority Plaintiffs before the end of October of this year.[13] After Judge Krask issues the Scheduling Order, the Special

---

[13] The Court acknowledges the May 7, 2019 letter submitted by Taishan and

17

Master will oversee and regulate all relevant proceedings, including discovery disputes.

This Court once again reiterates that, in light of Defendants' default, the Court is authorizing appropriate limited discovery in its discretion prior to a damages evidentiary hearing; accordingly, the scope of discovery and the amount of time allocated for evidentiary hearings will be consistent with a damages evidentiary hearing, not a "trial." After the hearings are completed, the Special Master will issue an R&R, and the parties will have the standard objection periods set forth in Federal Rule of Civil Procedure 53. After the Priority cases are resolved, the Court will afford the parties a short time to determine whether any remaining claims can be settled, and if they cannot, the Court will consider creative alternatives to further expedite the resolution of the remaining claims, including appointing additional Special Masters so that multiple evidentiary hearings can be conducted simultaneously.

---

BNBM's counsel, which suggests the potential for further delays in this Court based on counsel's obligations in the parallel actions in Florida and Louisiana. However, Defendants have no less obligation to the speedy resolution of the Virginia claims than they do to the claims pending in other states. Accordingly, any defense requests for delays in this ten-year-old default judgment case will be viewed with extreme disfavor. As this "timing" issue was raised by Taishan before any formal damages discovery has commenced, it provides more than adequate time for defense counsel to ensure that additional attorneys at its firm are familiarized with the details of the Virginia cases to ensure that defense counsel will be available for any necessary proceedings in this action.

The Clerk is **REQUESTED** to send a copy of this Memorandum Order to all counsel of record.[14]

**IT IS SO ORDERED.**

/s/ [signature]
Mark S. Davis
Chief United States District Judge

Norfolk, Virginia
May 20, 2019

---

[14] In light of the above ruling, the Clerk should administratively terminate Plaintiffs' motion seeking adoption of their trial plan. ECF No. 69.

19