UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

IN RE:  CHINESE-MANUFACTURED DRYWALL
PRODUCTS LIABILITY LITIGATION

                          MDL No. 2047
VS.                       Section "L"
                          New Orleans, Louisiana
                          May 17, 2019

THIS DOCUMENT RELATES TO ALL CASES
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

TRANSCRIPT OF MOTION HEARING
HEARD BEFORE THE HONORABLE ELDON E. FALLON
UNITED STATES DISTRICT JUDGE

<u>APPEARANCES:</u>

FOR THE PLAINTIFFS' LIAISON COUNSEL:

                          RUSS M. HERMAN
                          HERMAN HERMAN KATZ
                          820 O'KEEFE AVENUE
                          NEW ORLEANS, LA 70113

FOR THE KNAUF LIAISON COUNSEL:

                          KERRY J. MILLER
                          DANIEL S. DYSART
                          FISHMAN HAYGOOD, LLP
                          201 ST. CHARLES AVENUE
                          SUITE 3600
                          NEW ORLEANS, LA 70170

ALSO PRESENT:           GUILFORT DIEUVEL

Official Court Reporter:  Nichelle N. Drake, RPR, CRR
                        500 Poydras Street, B-275
                        New Orleans, Louisiana 70130
                        (504) 589-7775

Proceedings recorded by mechanical stenography,
transcript produced via computer.

1           **P R O C E E D I N G S**

2                    (Call to order of the court.)

09:25:04AM  3           THE COURT:  We're here today to talk about a motion,

09:25:09AM  4   the joint -- one of the matters that we have dealt with over

09:25:19AM  5   the years is the property of -- Mr. Dieuvil, is it,

09:25:29AM  6   D-i-e-u-v-i-l -- who has a home or a building in the Florida

09:25:36AM  7   area.  And he's indicated that it was damaged and that it had

09:25:45AM  8   drywall in it, Knauf drywall.

09:25:49AM  9           There was some issue as to his complying with various

09:25:56AM  10  requirements.  The Special Master was involved in it.  He

09:26:05AM  11  wrote a report indicating that -- he suggested dismissing the

09:26:11AM  12  claim because of failure to comply with requirements.  The

09:26:18AM  13  matter's been appealed to the Court.  This is a motion to --

09:26:26AM  14  motion *in limine* regarding new -- introduction of either new

09:26:35AM  15  testimony or new evidence at the hearing.

09:26:38AM  16          I'll hear from the parties at this time.

09:26:41AM  17          MR. MILLER:  Thank you, Judge Fallon, Kerry Miller on

09:26:47AM  18  behalf of Knauf.

09:26:48AM  19          Your Honor gave an accurate summary of the procedural

09:26:52AM  20  background of this claim.  Our motion *in limine* is Record Doc

09:26:57AM  21  22234, 22234.

09:27:00AM  22          Your Honor, I think some procedural background is

09:27:03AM  23  important to understand some additional procedural background

09:27:07AM  24  that goes beyond what happened in this court is important to

09:27:11AM  25  understand this particular unique claim.

09:27:16AM 1      Your Honor, as you know, this MDL was confected in

09:27:20AM 2  the summer of 2009.  At that point in time, various

09:27:25AM 3  homebuilders primarily in Florida had begun or were in the

09:27:28AM 4  process of beginning their own remediation claims.  That

09:27:33AM 5  process coincided with a recession in the country and in

09:27:36AM 6  Florida where the Florida homebuilders had labor and material

09:27:41AM 7  availability to conduct home remediations.

09:27:43AM 8      So in the course of that, Your Honor, this particular

09:27:47AM 9  home at issue, Mr. Dieuvil's home, located I think in Palm

09:27:53AM 10  Beach County Florida, it was built by a homebuilder called GL

09:27:58AM 11  Homes.  GL Homes is one of the participating homebuilders in

09:28:00AM 12  the MDL settlements in this case.  But at that point in time,

09:28:04AM 13  in 2009 and 2010, GL Homes was going back through the houses

09:28:09AM 14  it had built in 2005 and 2006 and 2007 when Chinese drywall

09:28:16AM 15  was being used as material in South Florida. Mr. Dieuvil's

09:28:20AM 16  home was identified as a home that was in a community that

09:28:22AM 17  had Chinese drywall.  It was inspected.

09:28:25AM 18      In early -- in 2010, at some point, Mr. Dieuvil

09:28:32AM 19  enters into a repair contract with GL Homes.  GL Homes agreed

09:28:36AM 20  to repair, remediate his home, make it free of Chinese

09:28:43AM 21  drywall, put it back in the condition it was in when GL Homes

09:28:46AM 22  had originally constructed it back in 2006.

09:28:47AM 23      GL Homes began the process.  As Your Honor knows the

09:28:50AM 24  first stage of a Chinese drywall remediation involves

09:28:55AM 25  removing the drywall, removing the electrical, removing some

09:28:59AM  1    other components, and then putting the house back together

09:29:00AM  2    again in the shape it was in before the remediation.  So GL

09:29:04AM  3    Homes had effectively by the fall of 2010, Your Honor,

09:29:07AM  4    removed all of the drywall from this house.  It had cleaned

09:29:12AM  5    the house out.  It was then in the process of reinstalling

09:29:18AM  6    the electrical and the insulation when Mr. Dieuvil made a

09:29:24AM  7    demand on GL Homes that he wanted studs removed from the

09:29:29AM  8    house as part of the Chinese drywall remediation because that

09:29:34AM  9    was not part of the protocol that GL Homes or any of the

09:29:37AM  10   homebuilders was using at the time.

09:29:38AM  11        It denied that request, but it did tell Mr. Dieuvil

09:29:42AM  12   that if he wanted studs removed, they would do so at a cost

09:29:48AM  13   of $25,000.  And that would have included the cost of

09:29:52AM  14   removing the studs, replacing the studs, but also redoing

09:29:55AM  15   some of the electrical and insulation work that they had just

09:29:58AM  16   done.

09:29:59AM  17        Apparently that was resisted.  GL Homes was

09:30:07AM  18   effectively evicted in December 2010.  And so, Your Honor,

09:30:08AM  19   from that point forward, this house has sat in that

09:30:13AM  20   condition.

09:30:13AM  21        Now, the Knauf Settlement, the pilot program, begins

09:30:17AM  22   I think in 2011.  It evolves into a settlement in 2012.  We

09:30:22AM  23   then have various claim filing deadlines with Brown Greer as

09:30:27AM  24   administrator, Moss as a contractor in 2013 and 2014.

09:30:31AM  25        We first become aware or have dealings with this

09:30:35AM   1   particular property in connection with an agreement that I

09:30:42AM   2   reached with Mr. Jimmy Doyle who had a handful of settlement

09:30:48AM   3   issues.  Mr. Doyle was representing Mr. Dieuvil at the time.

09:30:53AM   4   A term sheet was entered into between myself and Mr. Doyle,

09:30:57AM   5   Mr. Doyle on behalf of his clients, me on behalf of Knauf,

09:31:00AM   6   where it was stated that Mr. Dieuvil's home in order to

09:31:04AM   7   qualify for remediation benefits would have to strictly

09:31:08AM   8   comply with PTO 1(B).

09:31:10AM   9          THE COURT:  Do we have that in writing?

09:31:13AM  10          MR. MILLER:  Yes, Your Honor.  That is -- and it is

09:31:15AM  11   an exhibit to -- let me give you the Rec Doc and the pages.

09:31:26AM  12          Your Honor, I filed a reply brief.  That Record Doc

09:31:30AM  13   is 22240.  The Jimmy Doyle settlement term sheet is Exhibit 1

09:31:37AM  14   to 224 -- 22240.  And the paragraph that pertains to

09:31:45AM  15   Mr. Dieuvil's claim is paragraph 9 to that agreement.  It's

09:31:48AM  16   listed at Record Doc 22240/1, page 4 of 4, paragraph 9.

09:31:55AM  17          And it states Your Honor:  Knauf and Doyle agree that

09:31:59AM  18   the Guilfort Dieuvil claim may be allowed to proceed under

09:32:03AM  19   the terms of the Knauf New Claim Settlement if the following

09:32:07AM  20   conditions are met:  Doyle demonstrates that evidence was

09:32:11AM  21   preserved strictly in accordance with the requirements of MDL

09:32:17AM  22   2047 Pre-Trial Order 1(B).  And, secondly, Doyle provides

09:32:24AM  23   evidence or indicia of the construction quality and finishes

09:32:30AM  24   that existed in the property prior to the start of drywall

09:32:34AM  25   remediation work.

| | |
|---|---|
| 09:32:37AM | 1 |

That information is important, Your Honor, because the Knauf Class Action Settlement from a remediation standpoint, we've had lots of discussions about two buckets under the settlement agreement.  Under the remediation bucket, Your Honor, there were two subcategories to that, the already remediated homes subcategory and the remediation subcategory.

And the reason why the settlement agreement that I just read from required strict compliance was because Mr. Dieuvil's claim was sort of a hybrid.  It wasn't a remediation claim in the classic sense because a remediation claim in the classic sense had had no prior work done by another contractor.  You didn't have another contractor who had pulled construction permits, done demolition, done the cleaning, done part of the reinstallation.

But it also wasn't a classic ARH in a sense that Mr. Dieuvil had not incurred any expenses on his own right. We've talked a lot about binders.  So in the ARH sense, you would have a binder of PTO 1(B) compliance followed by information on expenses directly incurred by the homeowner, and we'd sit together and analyze those claims.

So Mr. Dieuvil's claim was special and his lawyer bound him to agreement of strict compliance with PTO 1(B) because it was kind of -- it was difficult for us to put Humpty Dumpty back together again.  Five years had since past

09:34:21AM  1    since the home was gutted for the purposes of Chinese drywall

09:34:28AM  2    remediation.

09:34:29AM  3         So from that point forward, Mr. Dieuvil's claim made

09:34:32AM  4    its way through the process of the Knauf settlement

09:34:36AM  5    agreement, New Claim Settlement Agreement to be specific, on

09:34:39AM  6    the issue of PTO 1(B) compliance of which he was held to a

09:34:45AM  7    strict compliance standard.  His claim went to Special Master

09:34:52AM  8    Dan Balhoff who Your Honor appointed to deal with these

09:34:53AM  9    issues.  Mr. Balhoff conducted proceedings that lasted for

09:34:57AM  10   quite a long time on the issue of PTO 1(B) compliance.  He's

09:35:02AM  11   probably done a couple of dozen of these for Your Honor over

09:35:06AM  12   the course of things.

09:35:07AM  13        There was an open dialogue with Mr. Dieuvil between

09:35:13AM  14   my office and Mr. Dieuvil, who is now in the process of

09:35:17AM  15   proceeding *pro se*.  We think full and ample opportunity was

09:35:23AM  16   given by Mr. Balhoff for both sides to produce and provide

09:35:29AM  17   any and all information in the way of papers, records,

09:35:32AM  18   exhibits to Mr. Balhoff, that Mr. Balhoff was careful in

09:35:38AM  19   saying that what I'm looking at right now is PTO 1(B) only.

09:35:42AM  20   So the record should be limited to PTO 1(B) evidence, but

09:35:47AM  21   please give me everything you have.  And I think there are

09:35:47AM  22   emails in the records that show that Mr. Dieuvil -- Mr.

09:35:55AM  23   Balhoff, I'm sorry -- understanding that Mr. Dieuvil was *pro*

09:35:57AM  24   *se*, it wasn't Mr. Balhoff's only *pro se* claimant.  He was

09:36:00AM  25   very careful to make sure Mr. Dieuvil understood that he

09:36:01AM   1   needed to get his record to Mr. Balhoff so he could make a

09:36:08AM   2   ruling.  I think there were even warnings from Mr. Balhoff

09:36:12AM   3   that I'm prepared to make a ruling in the next couple weeks;

09:36:12AM   4   if you need to do any supplementation, make sure and get all

09:36:15AM   5   of your information in.  And so that was a process that was

09:36:17AM   6   followed by Mr. Balhoff which was the same process that Mr.

09:36:21AM   7   Balhoff followed in dozens of other claims.

09:36:23AM   8        Mr. Balhoff ultimately, as Your Honor recognized,

09:36:28AM   9   made a Report and Recommendation, and the Report and

09:36:31AM   10  Recommendation was to dismiss the claim for failure to comply

09:36:34AM   11  with PTO 1(B).  From that order, Mr. Dieuvil appeared and

09:36:43AM   12  then later Mr. Herman was involved.

09:36:45AM   13       We filed a motion *in limine* because I had a meet and

09:36:48AM   14  confer with Russ a couple weeks ago at which point in time

09:36:53AM   15  Russ indicated to me and, in fact, told me -- we had a very

09:36:57AM   16  frank and open meet and confer like we always have -- that he

09:36:59AM   17  intended to put on evidence that went beyond the record that

09:37:03AM   18  Mr. Balhoff had.  And that was a reason, Your Honor, why we

09:37:08AM   19  filed the motion *in limine* to limit the appeal to you on the

09:37:13AM   20  record that was before Mr. Balhoff.

09:37:16AM   21       Your Honor, it's unfortunate that this claim is

09:37:20AM   22  coming so late in the game, but we just don't think it would

09:37:24AM   23  be fair to open the record for the last claim in the door

09:37:29AM   24  when years ago Your Honor had dealt with other appeals from

09:37:33AM   25  Mr. Balhoff on PTO 1(B) issues including other *pro se*

09:37:38AM **1** claimants.  And they were limited to the record that was

09:37:41AM **2** before them.  We don't think there's been any demonstration

09:37:43AM **3** in the opposition that there was any compelling reason that

09:37:48AM **4** Mr. Dieuvil was not afforded due process or the same

09:37:52AM **5** opportunity that any and every other settlement claimant who

09:37:55AM **6** is in this situation was given.  In fact, we think that extra

09:37:59AM **7** care and extra attention was given in this case.  And for

09:38:03AM **8** that reason, Your Honor, we would like to limit the record on

09:38:06AM **9** the appeal to you to the record that was before Mr. Balhoff.

09:38:12AM **10**        Quite frankly, Your Honor, if the record does go

09:38:16AM **11** beyond that, Knauf has defenses that go beyond PTO 1(B);

09:38:21AM **12** primarily, the defense would be mitigation of damages and the

09:38:26AM **13** issue of mitigation would be when Mr. Dieuvil kicked out GL

09:38:31AM **14** Homes back in 2010.  I mean, that's the real measure of

09:38:34AM **15** damages.  That was not our decision.  That was his decision.

09:38:37AM **16** And we think that that is a decision that would relate to a

09:38:41AM **17** mitigation of damages argument.

09:38:43AM **18**        So, Your Honor, unless you have any questions right

09:38:49AM **19** now, I will turn the microphone over to Mr. Herman and save a

09:38:53AM **20** few minutes for reply.

09:38:55AM **21**        Thank you, Judge.

09:38:55AM **22**        THE COURT:  That's fine.  Thanks.

09:38:55AM **23**        Any response?

09:38:57AM **24**        MR. HERMAN:  Yes, Your Honor.

09:39:11AM **25**        May I approach, Your Honor?  I would like to hand the

09:39:16AM  1   bench as well as the opposition some Power Points we may use;

09:39:26AM  2   in fact, I know we will use.

09:39:47AM  3        First of all, may it please the Court, thank you for

09:39:49AM  4   the opportunity to appear on argument of this.

09:39:53AM  5        This is not an easy matter in the sense that the two

09:40:01AM  6   issues are pretty simple, but facts are tough things like

09:40:08AM  7   gristle.  And this case, when I was asked to look at it, I

09:40:13AM  8   thought I was looking through a kaleidoscope.  And so it's

09:40:17AM  9   taken an appreciable amount of time to look at all the

09:40:22AM  10  evidence.

09:40:24AM  11       And as I'm sitting here, I'm looking at this Kentwood

09:40:35AM  12  Springwater cup.  And this is what Mr. Balhoff had in front

09:40:41AM  13  of him from Knauf.  It looks like a full cup, but it's not

09:40:46AM  14  going to hold water once I'm through explaining what I

09:40:50AM  15  believe and what I think I can prove or happened in this

09:40:54AM  16  matter.

09:40:55AM  17       I want to introduce to the Court the appellant,

09:41:00AM  18  respondent, Mr. Dieuvil, sitting at counsel table.

09:41:08AM  19       Will you sit up, Guilfort?  And I appreciate you

09:41:12AM  20  coming in from Florida to hear your matter.

09:41:16AM  21       It's also -- the issues are so simple, but to get to

09:41:26AM  22  the meat of the matter has been tough.  And sometimes I felt

09:41:32AM  23  like I was in a labyrinth with ten dinosaurs because every

09:41:40AM  24  time I looked -- not dinosaurs, but Minotaurs.  But I'd like

09:41:44AM  25  to begin, Your Honor, with a few fundamentals.

09:42:01AM 1      And, Regina, could I have the first slide?

09:42:09AM 2      Now, on September 1, 2017, it says at this point in

09:42:22AM 3  the remediation -- this is Knauf -- without any stated

09:42:27AM 4  reasons, claimant refused to allow GL Homes to complete the

09:42:33AM 5  remediation on the property.  I intend to show documentary

09:42:40AM 6  evidence that this is not the case.

09:42:44AM 7      It says:  Knauf again reviewed the documentation and

09:42:49AM 8  informed claimant his claim was not compensable because of

09:42:55AM 9  PTO 1(B); principally because the photos showing compliance

09:43:03AM 10 with 1(B) were unintelligible and they couldn't be read.  And

09:43:10AM 11 originally they were sent to Greg Wallance, a very skilled

09:43:15AM 12 lawyer with Kaye Scholer in New York.

09:43:17AM 13     And so, Your Honor, attached to our brief are

09:43:24AM 14 Exhibits 3.  That's the first submission of photographs.  And

09:43:34AM 15 two subsequent -- when you look at 3-A and you see that a lot

09:43:43AM 16 expense went to Mr. Dieuvil out of his pocket to comply with

09:43:49AM 17 photographs that the -- respectfully Knauf, a representative,

09:43:53AM 18 said they couldn't read.

09:43:57AM 19     THE COURT:  Was that in the record and given to

09:44:00AM 20 Mr. Balhoff?

09:44:03AM 21     MR. HERMAN:  There was a final set of photographs

09:44:08AM 22 given to Mr. Balhoff.

09:44:12AM 23     Now, the principal contention of Knauf is only five

09:44:17AM 24 installed KPT boards, and only six detached KPT boards were

09:44:26AM 25 presented in accordance with PTO 1(B).  The samples are small

09:44:32AM 1   in size, Ziplock bags, not in compliance with PTO 1(B).

09:44:39AM 2   There's no way to determine that these are not samples from

09:44:43AM 3   the same board presented in other evidence as the drywall

09:44:49AM 4   shown.

09:44:50AM 5       Now, these are the primary --

09:44:53AM 6       THE COURT:  What number is that?  Is that

09:44:56AM 7   Mr. Balhoff's comments?

09:44:59AM 8       MR. HERMAN:  No.  No.  These are --

09:44:59AM 9       THE COURT:  Knauf's.

09:45:01AM 10       MR. HERMAN:  -- the comments in Knauf's presentation.

09:45:04AM 11       THE COURT:  Okay.  But, I mean, that's all admissible

09:45:09AM 12   then if it's already been admitted by Balhoff.  So there's no

09:45:16AM 13   problem with that.

09:45:18AM 14       MR. HERMAN:  Well, I think there are problems with

09:45:20AM 15   that.

09:45:20AM 16       THE COURT:  I mean, there's problems with it, but the

09:45:23AM 17   issue before me is the admission of evidence.  That evidence,

09:45:28AM 18   it seems to me it would be admissible under hearing.

09:45:33AM 19       MR. HERMAN:  Yes, sir.  That's our position.

09:45:36AM 20       MR. MILLER:  That's right, Your Honor.  I filed the

09:45:37AM 21   motion *in limine* after the meet and confer but before he

09:45:41AM 22   attached the evidence to the opposition.  All the photos that

09:45:43AM 23   went to Mr. Balhoff are part of the record.  That's exactly

09:45:46AM 24   what my motion --

09:45:50AM 25       THE COURT:  Right.

09:45:50AM  1      MR. HERMAN:  Can I see now the next slide?

09:45:53AM  2      This is essentially what the Special Master found on

09:46:00AM  3  November 22, 2017.  Dieuvil's failure to preserve evidence

09:46:06AM  4  prejudiced Knauf's ability to present a defense since

09:46:11AM  5  Mr. Dieuvil had access to the reactive Chinese drywall before

09:46:18AM  6  its disposal, but Knauf did not.  Well, it was never disposed

09:46:25AM  7  of.

09:46:28AM  8      Let me, may it please the Court, interrupt for one

09:46:33AM  9  minute.  Let's look, if we can, at the first slide under D-4.

09:46:55AM 10  If you see the plot plan of the property, Your Honor, and --

09:47:06AM 11      THE COURT:  I assume this also was with the report?

09:47:11AM 12      MR. HERMAN:  Yes.

09:47:11AM 13      THE COURT:  So let me just say this:  I'm not going

09:47:14AM 14  to make a decision on the merits of the case at this time.

09:47:17AM 15  What I'm looking at is what can be introduced in evidence

09:47:23AM 16  during the merits argument --

09:47:23AM 17      MR. HERMAN:  And --

09:47:25AM 18      THE COURT:  -- and this is.

09:47:27AM 19      MR. HERMAN:  Let's go to the second page of D-4.

09:47:33AM 20      Now, the claim was made in papers that you don't

09:47:40AM 21  know -- Knauf doesn't know whether there were contemporaneous

09:47:47AM 22  issues and evidence taken and you'll see Jerry O'Neil here.

09:47:56AM 23  9/29/10.  And there are nine types of drywall.  These nine

09:48:05AM 24  types of drywall were identified where they came from in

09:48:10AM 25  accord with a code that was established, and the only

09:48:17AM  1    reactive drywall in the first and second floor was Knauf

09:48:23AM  2    drywall.

09:48:24AM  3         In fact, I personally, was a witness, the

09:48:35AM  4    ombudsman -- because I wanted to be sure that everything was

09:48:38AM  5    done in compliance or substantially in compliance.  United

09:48:49AM  6    Gypsum; one board; GP Gypsum, one board; National Gypsum, 10

09:48:59AM  7    -- 13 boards, and, American -- another American manufacturer.

09:49:05AM  8    Every one of these is an American manufacturer except Knauf,

09:49:11AM  9    and American had seven boards.  So the representation made

09:49:17AM  10   that there were only five KPT boards and six detached is

09:49:25AM  11   inaccurate.

09:49:28AM  12        How do I know that?  I personally went through the

09:49:32AM  13   chain of evidence -- excuse me for turning my back on the

09:49:39AM  14   Court -- and there were 11 boards on electrical maintained.

09:50:05AM  15   There were 13 boards indicating Knauf.

09:50:14AM  16        THE COURT:  Are those all admitted?  Is this material

09:50:18AM  17   admitted?

09:50:19AM  18        MR. HERMAN:  No.

09:50:20AM  19        MR. MILLER:  Your Honor, I think the pictures of that

09:50:23AM  20   material is admitted --

09:50:27AM  21        MR. HERMAN:  The complaint was that they were really

09:50:30AM  22   ineligible -- illegible, Your Honor, the sockets, copper

09:50:40AM  23   tubing, AC, controls, carpet, smoke detectors, and light

09:50:46AM  24   switches.

09:50:48AM  25        Now, just so we can deal with this statement that it

09:50:55AM **1**   can't be identified as something that was done at the time,

09:51:02AM **2**   each bag was identified with a date, where it was located by

09:51:14AM **3**   Jerry O'Neil, who was the contractor/employee, who actually

09:51:21AM **4**   removed the material.

09:51:25AM **5**        There's one other employee.  Every electrical wall

09:51:37AM **6**   socket was likewise identified.  And the other employee that

09:51:46AM **7**   did this work was Brad Wall, and it's got, of course, the

09:51:53AM **8**   date.  And the reason for that is you have to look, not just

09:52:00AM **9**   at the electrical and the wall socket, but you have to look

09:52:08AM **10**  at the board.  These are not small.  They are not illegible.

09:52:17AM **11**       I think, Your Honor, that I just brought this here to

09:52:22AM **12**  show Your Honor why I believe that there is additional

09:52:26AM **13**  evidence, and it's not Mr. Dieuvil's fault at all.

09:52:34AM **14**       THE COURT:  Was that given to the other lawyer?  Did

09:52:36AM **15**  he introduce it?  Do you know?

09:52:39AM **16**       MR. HERMAN:  As far as I know, it was not part of a

09:52:43AM **17**  presentation.  What was part of the presentation was some

09:52:47AM **18**  photographs which Knauf's representatives complained about.

09:52:54AM **19**       THE COURT:  And these boxes weren't introduced into

09:52:57AM **20**  evidence?

09:52:58AM **21**       MR. HERMAN:  No, they were not.  And I'd like -- I'll

09:53:04AM **22**  answer Your Honor's probative question in a moment.

09:53:10AM **23**       Could I have the next slide?

09:53:13AM **24**       D-7 indicates that there was communication between

09:53:20AM **25**  Danny Dysart and Mr. Dieuvil.  Mr. Dieuvil says:  Look, these

09:53:31AM 1   are the largest photographs I can make.  Here.  However --

09:53:36AM 2   and I believe this is the key issue of why we're here.

09:53:43AM 3        If I have to argue one point, Mr. Dieuvil even says:

09:53:49AM 4   If this picture's not satisfactory, if you want to send your

09:54:00AM 5   agent to the subject property so he actually sees -- so he

09:54:03AM 6   could actually see the sample of the Knauf drywall, or if you

09:54:05AM 7   want, I can arrange my schedule next week to come to your

09:54:09AM 8   office -- of course, he's coming from Florida -- and bring

09:54:14AM 9   you the multiple samples of Knauf Chinese drywall that were

09:54:18AM 10  taken from the home.  Whatever way that you want to resolve

09:54:22AM 11  the issue will be fine with me.  I will pay for my own

09:54:26AM 12  expense to bring the sample of the drywall if this approach

09:54:31AM 13  will resolve all pending issues.

09:54:34AM 14       No reply.  I submit that if the materials were

09:54:43AM 15  actually brought to Kerry Miller's office, a lot of this

09:54:50AM 16  controversy would come into -- be out the window and come

09:54:53AM 17  into focus.

09:54:55AM 18       Let's look at D-8.

09:54:59AM 19       Again, I forwarded the enlarged photos to Knauf.  In

09:55:07AM 20  the meantime, can you please advise as to the status of the

09:55:12AM 21  property?

09:55:13AM 22       And this is, of course, from Mr. Dysart to

09:55:17AM 23  Mr. Dieuvil:  I sent you multiple -- this is Mr. Dieuvil.  I

09:55:25AM 24  sent you multiple pictures of the Knauf drywall.  Would you

09:55:28AM 25  please let me know when you start fixing my house?  Also, is

09:55:32AM  1   there anything I can do to expertise -- and I assume that is

09:55:42AM  2   a misuse of a word, maybe some problem with spell check --

09:55:47AM  3   that process -- or maybe Mr. Dieuvil.  But it's clear he is

09:55:52AM  4   paying a mortgage.  He needs it fixed.  I'd like to get the

09:55:56AM  5   matter resolved promptly.  All of this occurs in April 26th

09:56:05AM  6   of 2017.

09:56:09AM  7          Now, I want to go back to facts in 2012, and I want

09:56:17AM  8   to set the groundwork that I believe is important.  Mr. Jimmy

09:56:23AM  9   Doyle has five offices in three different states.  He

09:56:28AM  10  advertised or represented his authorities as a lawyer in a

09:56:37AM  11  website.  He sends a contract to Mr. Dieuvil.  He files by

09:56:47AM  12  the 13th -- 2013 a PPF form.  I don't know how the

09:57:01AM  13  negotiation took place between Mr. Miller.  And I don't say

09:57:05AM  14  there's anything improper at all at Mr. Doyle.

09:57:10AM  15         But at any rate, he sent his contract through the

09:57:16AM  16  mail.  He has never seen Mr. Dieuvil.  Mr. Dieuvil tried to

09:57:19AM  17  contact him 2010, 2012, up until the time that he had enough

09:57:29AM  18  and he became *pro se*.  What materials he got, what materials

09:57:42AM  19  Knauf got, I don't know.  I didn't get in this thing until

09:57:46AM  20  the Court asked me -- okay.

09:57:50AM  21         And I'm not making any comment other than -- there

09:57:53AM  22  were -- as learned counsel says, he had two lawyers.  One of

09:57:58AM  23  them was Mr. Doyle.  And the other one was Ervin Gonzalez who

09:58:03AM  24  had a specific, very specific charge; will you please meet

09:58:09AM  25  with the general counsel of GL Homes and determine whether or

09:58:19AM  1   not there's been a breach of contract?  He does that;

09:58:24AM  2   conversations, et cetera.  He determines that there's not at

09:58:29AM  3   that time a breach of contract.  He said, "If there's a

09:58:32AM  4   breach of contract later on, contact me."  Obviously, he

09:58:36AM  5   couldn't do it.  Unfortunately, our colleague who served well

09:58:41AM  6   in this case on the PSC and in another case in federal court,

09:58:47AM  7   the BP oil case, unfortunately, had an early demise.

09:58:54AM  8        So here is a man who has spent considerable money

09:58:59AM  9   trying to get his house remediated.  And I don't fault

09:59:10AM  10  anybody.  I just think there are facts in this case that were

09:59:14AM  11  not before the Special Master.  And I think the light shown

09:59:20AM  12  on this case -- well, he had two lawyers.  Well, okay.  I

09:59:24AM  13  agree with that.  I wish he didn't need a third in my view.

09:59:31AM  14       Let me go again.  Would you give me the next slide,

09:59:34AM  15  D-20?

09:59:35AM  16       THE COURT:  Now, focus me, Counsel, on -- we're

09:59:38AM  17  here -- we're not -- I'm not dealing with the merits of the

09:59:41AM  18  case.

09:59:41AM  19       MR. HERMAN:  Right.

09:59:42AM  20       THE COURT:  I'm dealing with whether or not material

09:59:44AM  21  that was not in the record ought to be allowed into the

09:59:48AM  22  record at this point.

09:59:50AM  23       MR. HERMAN:  At this point, I believe all material

09:59:53AM  24  which should be not -- which was not presented to the Special

10:00:06AM  25  Master -- with whom I have no quarrel, he's a fine special

10:00:12AM **1**  master -- should be allowed at a hearing principally because

10:00:17AM **2**  the only complaint that's been made is that -- is that there

10:00:22AM **3**  is no compliance with PTO 1(B).

10:00:30AM **4**  I'm going to try to --

10:00:32AM **5**  THE COURT:  Just expedite it for me.  I got your --

10:00:38AM **6**  what I'm hearing is that he was represented but that he was

10:00:41AM **7**  not either -- I don't say you said it, but whether or not he

10:00:44AM **8**  was properly represented.  And the material wasn't given, the

10:00:50AM **9**  boxes, and you feel they should have been given and they do

10:00:53AM **10**  reveal things.  But Counsel says that he was represented at

10:00:58AM **11**  the time and the representation -- the lawyer didn't present

10:01:02AM **12**  that to the Special Master.  The issue is whether or not that

10:01:06AM **13**  should be redone at this time.

10:01:10AM **14**  MR. HERMAN:  I believe that synopsizes the issue very

10:01:16AM **15**  well.

10:01:16AM **16**  I just want to point out, again, in June 2012, he

10:01:21AM **17**  said, "Look, just certify for me that those posts aren't --

10:01:28AM **18**  that you claim are $25,000 don't have to be removed because

10:01:35AM **19**  they're not reactive."  And he never gets a reply.

10:01:41AM **20**  He says, "You go ahead with the work.  Just certify

10:01:44AM **21**  to me that I don't need to replace those posts."  And he

10:01:50AM **22**  never got a certification.

10:01:52AM **23**  THE COURT:  And he's talking to his builder at that

10:01:57AM **24**  time?

10:01:57AM **25**  MR. HERMAN:  Yes, that's --

10:01:58AM  1          THE COURT:  I have it.

10:02:00AM  2          MR. HERMAN:  Okay, Your Honor.  Now --

10:02:02AM  3          THE COURT:  Page 8.

10:02:08AM  4          MR. HERMAN:  -- I want to cover one more issue if

10:02:10AM  5  Your Honor will indulge me, please.

10:02:12AM  6          Put D-13 up.

10:02:18AM  7          In the presentation which Knauf made to the Special

10:02:22AM  8  Master -- it's D-12 in the materials -- they claim that he's

10:02:36AM  9  disreputable.  Well, I absolutely do not believe that.  This

10:02:39AM  10 is before the Special Master ever ruled.  And the criminal

10:02:44AM  11 charges alleged were all thrown out, and as a matter of fact,

10:02:50AM  12 the -- what we would call the assistant DA was criticized and

10:02:58AM  13 eventually had to leave.

10:03:03AM  14         The issue came up in Knauf's papers before the

10:03:07AM  15 Special Master -- can you give me the next line, please --

10:03:15AM  16 that his property was foreclosed upon.  Well, that

10:03:19AM  17 foreclosure was set aside before the Special Master ruled.

10:03:27AM  18         Last, one of the other issues -- would you give me

10:03:31AM  19 the next slide -- that Knauf raised in their papers was that

10:03:48AM  20 somehow he had been involved in five or six lawsuits.  Well,

10:03:55AM  21 he bought them -- brought two of them.  He was successful and

10:03:59AM  22 the others were dismissed because there could be no proof.

10:04:03AM  23 Now, I don't know if your case is that strong, whether it's

10:04:08AM  24 necessary to put in material that doesn't hold out, and how

10:04:14AM  25 -- it's taken three or four months just to accumulate the

| | | |
|---|---|---|
| 10:04:24AM | 1 | material that rebuts these allegations. |
| 10:04:26AM | 2 | Your Honor, I know I'm off base in what we're here |
| 10:04:29AM | 3 | for.  We're here for two things; No. 1, a motion *in limine* |
| 10:04:33AM | 4 | and, No. 2, the Special Master's ruling that flowed that a |
| 10:04:43AM | 5 | hearing will be conducted on. |
| 10:04:50AM | 6 | You can take that off. |
| 10:05:01AM | 7 | I don't have any comment at all about prior |
| 10:05:04AM | 8 | representation.  I don't have a comment.  I think Knauf has |
| 10:05:09AM | 9 | very skilled lawyers.  They do what advocates do. |
| 10:05:14AM | 10 | In my view, however, this is what I look like after |
| 10:05:22AM | 11 | going eight months trying to find out what the facts are in |
| 10:05:28AM | 12 | this case.  Every time I put a foot down I either had a hole |
| 10:05:34AM | 13 | in my shoe or it rained on me. |
| 10:05:37AM | 14 | What looks like a very easy appeal to Your Honor, if |
| 10:05:43AM | 15 | it's -- if a hearing is necessary, has become complicated, |
| 10:05:51AM | 16 | has become a challenge to justice.  And I think both |
| 10:06:03AM | 17 | Mr. Miller and I agree in that this is the proper tribunal |
| 10:06:13AM | 18 | and neither one of us would choose someone else, another |
| 10:06:17AM | 19 | judge, another tribunal, to deal with this issue because for |
| 10:06:24AM | 20 | us it's been ten years.  And Your Honor has the best |
| 10:06:27AM | 21 | knowledge of what happened here. |
| 10:06:29AM | 22 | And so I want to conclude with -- with this remark. |
| 10:06:40AM | 23 | There was a -- Aristotle:  Second rule in rhetoric is attack |
| 10:06:51AM | 24 | the opponent.  I believe that these various charges of Mr. -- |
| 10:06:57AM | 25 | at -- levelled at Mr. Dieuvil were unnecessary, not |

10:07:02AM   1   probative, and in a real sense, violated the federal code of

10:07:07AM   2   evidence.

10:07:07AM   3        I want to thank you for giving me the opportunity to

10:07:11AM   4   argue before you.

10:07:14AM   5        THE COURT:  Any rebuttal?

10:07:17AM   6        MR. MILLER:  Yes, very briefly, Your Honor.

10:07:18AM   7        And you do look much better than that picture, Russ.

10:07:28AM   8   Don't sell yourself short.

10:07:31AM   9        Judge, quickly on the issue of evidence, like I said,

10:07:37AM   10  I met with Russ.  We had a meet and confer.  My motion *in*

10:07:40AM   11  *limine* was a bit prophylactic or preemptive.  I didn't know

10:07:46AM   12  exactly what he was going to append to his opposition

10:07:50AM   13  although he did show me a lot of information.

10:07:52AM   14       At the end of the day, there are three pieces of

10:07:55AM   15  evidence relative to PTO 1(B) issues that weren't before the

10:08:01AM   16  Special Master or three pieces of evidence that have been

10:08:05AM   17  submitted by Mr. Herman that weren't before the Special

10:08:08AM   18  Master.  I want to clarify that's what I mean.

10:08:09AM   19       The three pieces of evidence Your Honor are, No. 1,

10:08:12AM   20  the boxes sitting over there.  Your Honor, we have no

10:08:14AM   21  opposition to your consideration of the boxes.  What

10:08:20AM   22  Mr. Balhoff had were pictures of what's in the boxes.  So we

10:08:24AM   23  have no opposition to physical samples instead.

10:08:28AM   24       And then in our reply brief, Your Honor, the two

10:08:31AM   25  pieces of evidence that were attached to the opposition brief

```
10:08:36AM   1    that we do object to because they go beyond what was before

10:08:40AM   2    the Special Master were the two expert reports that

10:08:46AM   3    Mr. Herman submitted, and that's set forth in our reply brief

10:08:54AM   4    at page 2 of 7.  And that would be the Velez report.  It's

10:09:05AM   5    really just a one-page conclusion and he's commenting on his

10:09:09AM   6    review of the evidence that the Special Master looked at, but

10:09:11AM   7    he's not doing it in the context of PTO 1(B) and then the JES

10:09:13AM   8    report which is a repair estimate.

10:09:15AM   9         So those are the only two pieces of evidence that we

10:09:15AM  10    actually object to.  The third piece is the physical samples

10:09:20AM  11    and we don't object to those.

10:09:21AM  12         Your Honor, one more thing just to clear the record,

10:09:25AM  13    I just want to make sure, Your Honor -- this was exhibit D-7.

10:09:28AM  14    And Mr. Herman read what was highlighted, but if you look at

10:09:32AM  15    it, it's an e-mail of April 20, 2017, at 2:00 p.m. from

10:09:36AM  16    Mr. Dieuvil to Mr. Dysart in my office.  Mr. Dysart answers

10:09:40AM  17    him back an hour and 15 minutes later, and what he says is:

10:09:44AM  18    An inspection is not necessary.  If you can submit pictures

10:09:47AM  19    of all samples in your possession with readable markings on

10:09:51AM  20    the drywall, the ones below are readable.  Could you please

10:09:57AM  21    do the same for all samples?

10:10:00AM  22         MR. HERMAN:  May it please the Court, I do want to

10:10:03AM  23    clear something up.  Mr. Velez was not sought as an expert.

10:10:08AM  24    He was only there to confirm what was in these boxes.

10:10:12AM  25         Mr. -- the other expert, JES, was there for my
```

10:10:18AM **1**   purpose to confirm the square footage, to give me accurate

10:10:27AM **2**   charts, and then get Xactimate to do an Xactimate estimate of

10:10:34AM **3**   reconstruction.  I don't plan to use or offer Mr. Velez or

10:10:39AM **4**   JES as an expert.

10:10:41AM **5**          THE COURT:  Okay.

10:10:42AM **6**          MR. MILLER:  Your Honor, with that said, our remarks

10:10:44AM **7**   are concluded.  To the extent that we do delve into the

10:10:44AM **8**   merits of this case at a later time, obviously, we reserve

10:10:50AM **9**   defense as a mitigation and witness credibility issues if and

10:10:52AM **10**  when we need that in the proceeding.

10:10:54AM **11**         Thank you, Judge.

10:10:55AM **12**         THE COURT:  Thank you, both.

**13**  MR. HERMAN:  Thank you, Your Honor.

**14**                    *  *  *  *

**15**     (WHEREUPON, the proceedings were adjourned.)

**16**                    *  *  *  *

**17**

**18**

**19**

**20**

**21**

**22**

**23**

**24**

**25**

REPORTER'S CERTIFICATE

        I, Nichelle N. Drake, RPR, CRR, Official Court
Reporter, United States District Court, Eastern District of
Louisiana, do hereby certify that the foregoing is a true and
correct transcript, to the best of my ability and
understanding, from the record of the proceedings in the
above-entitled and numbered matter.


                     ___/s/ Nichelle N. Drake___
                     Official Court Reporter