UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE-MANUFACTURED DRYWALL    *
PRODUCTS LIABILITY LITIGATION    *
       *    CIVIL ACTION
       *
       *    MDL NO. 2047
       *
       *    SECTION L (5)
THIS DOCUMENT RELATES TO:    *
ALL CASES    *
       *

## ORDER & REASONS

Before the Court is a Motion to Tax Court Reporter Fees as Costs filed by Parker Waichman LLP; Baron & Budd, P.C.; Milstein, Jackson, Fairchild & Wade, LLP; and Gieger, Laborde & Laperouse, LLC, R. Doc. 22166, in which Krupnick Campbell Malone has joined, R. Doc. 22194. The Motion is opposed. R. Doc. 22193. Movers have filed a reply. R. Doc. 22203. The Court rules as follows.

I.  BACKGROUND

From 2004 through 2006, the housing boom in Florida and rebuilding efforts necessitated by Hurricanes Rita and Katrina led to a shortage of construction materials in the United States, including drywall. As a result, drywall manufactured in China was brought into the United States and used in the construction and refurbishing of homes in coastal areas of the country, notably the Gulf Coast and East Coast. Sometime after the installation of the Chinese drywall, homeowners began to complain of emissions of foul-smelling gasses, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829

(E.D. La. 2012), *aff'd*, 742 F. 3d 576 (5th Cir. 2014). Many of these homeowners also began to report various physical afflictions allegedly caused by the Chinese drywall.

These homeowners began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. Because of the commonality of facts in the various cases, this litigation was designated as multidistrict litigation. Pursuant to a June 15, 2009 transfer order from the United States Judicial Panel on Multidistrict Litigation, all federal cases involving Chinese-manufactured drywall were consolidated for pretrial proceedings in MDL 2047 in the United States District Court for the Eastern District of Louisiana.

The Chinese drywall at issue was largely manufactured by two groups of defendants: (1) the Knauf entities and (2) the Taishan entities. Because the Taishan entities contested jurisdiction at the outset and refused to accept service of process, it was necessary to conduct this litigation along two tracks. The first track involved the Knauf entities.

The Knauf entities ("Knauf") are German-based, international manufacturers of building products, including drywall, whose Chinese subsidiary, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), advertised and sold its Chinese drywall in the United States. The Knauf entities are named defendants in numerous cases consolidated with the MDL litigation as well as litigation in state courts. The Knauf entities did not contest jurisdiction and first entered their appearance in the MDL litigation on July 2, 2009. *See* Rec. Doc. 18. On November 2, 2009, in Pretrial Order No. 17, KPT agreed to a limited waiver of service. *See* Rec. Doc. 401. After a period of intense discovery, the court set various bellwether trials. From March 15, to March 19, 2010, the Court presided over a bellwether trial in *Hernandez v. Knauf Gips KG*, Case No. 09-6050, involving a homeowner's claims against KPT for defective drywall. *See* Rec. Doc. 2713. For purposes of the

trial, Knauf stipulated that KPT Chinese drywall "emits certain reduced sulfur gases and the drywall emits an odor." *Id*. The Court, based on the evidence presented, found the KPT Drywall was a defective product and issued a detailed Findings of Fact and Conclusions of Law in favor of Plaintiff Hernendez ("*Hernandez* FOF /COL"), *see id.*, and entered a Judgment in the amount of $164,049.64, including remediation damages in the amount of $136,940.46, which represented a cost of $81.13 per square foot based on the footprint square footage of the house. *See* Rec. Doc. 3012.

On October 14, 2010, Knauf agreed to participate in a pilot program to remediate a number of homes using the remediation protocol formulated by the Court in the *Hernandez* case. The Knauf pilot remediation program has remediated over 2,800 homes containing KPT Chinese drywall using essentially the same protocol. At the Court's urging, after a number of homes had been remediated, the parties began working together to monetize this program and make it available to a broader class of plaintiffs.

Thereafter, the PSC and Knauf entered into settlement discussions, and on December 20, 2011, some two years after the formation of this MDL. The PSC reached a global remediation settlement with Knauf, which is designed to resolve all Knauf-related Chinese drywall claims. After a bellwether trial involving the downstream Knauf distributor, North River, numerous other settlement agreements were also reached with other downstream entities in the chain of commerce with the Knauf. These entities included various distributers, builders, and installers (and their insurers) of the Knauf-manufactured Chinese drywall.

On August 12, 2013, Plaintiffs' and Defendants' Liaison counsel entered into a second settlement agreement addressing claims filed after December 9, 2011 (the "New Claims Settlement Agreement"). R. Doc.16978-1. Under the New Claims Settlement Agreement, Claimants who gave

notice prior to October 25, 2013 and qualified under the terms of the New Claims Agreement were eligible to seek benefits under the Knauf Class Settlement Agreement, subject to the requirements set forth in both agreements. R. Doc. 16978-1.

Under the terms of the settlements, the claimants with KPT Chinese drywall (drywall manufactured by Knauf's Chinese subsidiary) were offered several options. Under Option 1, the claimants were offered the opportunity to receive a complete, environmentally certified remediation of their properties. Under Option 2, the claimants were offered cash reimbursement in the event the home was already remediated. Finally, under Option 3, claimants were offered a cash payment instead of remediation as well as the opportunity to receive monetary benefits from the Knauf downstream chain of commerce entities to compensate them for other specifically designated losses.

As part of the Knauf remediation settlement, Defendants also agreed to pay reasonable costs, including the cost of administering the program and an additional amount for attorneys' fees, which includes both the fees for contract counsel and those for common benefit counsel. This payment relieves every claimant of all contingency fee and cost reimbursement obligations to both retained contract counsel and common benefit counsel (with exception of the Virginia litigants), and thus represents an amount which otherwise would have been payable by the claimants out of their settlement recovery.

The claimants having received their appropriate portion of the settlement funds, the Court endeavored to allocate attorneys' fees to contract counsel and common benefit counsel pursuant to Pre-Trial Order 28 ("PTO 28"). R. Docs. 17379, 20282. PTO 28 lays out the multi-step process by which the Court disbursed attorneys' fees: (1) a review of time and expenses, (2) the submission of an initial affidavit for compensation for common benefit work and reimbursement of expenses,

(3) the filing of a joint fee petition, (4) the filing of a request for common benefit assessment for any Chinese Drywall case or claim not participating as a Class Member or claimant in any of the various Class Action Settlement Agreements, (5) establishing common benefit and individual fees, and finally (6) allocating the common benefit fees. R. Doc. 17379. Throughout this process, the Court was aided by Special Master Daniel Balhoff, Court-Appointed CPA Philip Garrett, and Court-Appointed Settlement Administrator BrownGreer.

After completing steps one through four, the Court proceeded to step five to "determine the total amount of the common benefit fund and the amount of funds for individual counsel for claimants." *Id.* at ¶ 10. In its January 31, 2018 order, the Court found the appropriate split between contract counsel and common benefit counsel was fifty-two percent for common benefit counsel and forty-eight for contract counsel. R. Doc. 21168. Thereafter, on February 4, 2019, the Court proceeded to step six, allotting the common benefit fund to various firms in differing amounts. R. Doc. 22089. The next day, the Court issued its final judgment regarding common benefit attorneys' fees (the "Final Judgment"). R. Doc. 22092.

I.  **PENDING MOTION**

In the instant motion, Movers contend that under Step Five, the Court-appointed Fee Committee made an allocation recommendation to which several firms objected necessitating the appointment of Special Master Balhoff. R. Doc. 22166-1 at 1–2. Movers submit the parties thereafter retained Golkow Litigation Services ("Golkow") to provide court reporting services for the depositions and Professional Shorthand Reporters, Inc. ("PSR") to provide court reporting for the hearing before the Special Master. *Id.* Following the proceeding, Movers contend the Court charged 80% of the Step Five hearing to contract counsel and 20% to common benefit counsel. *Id.* Movers now seek an order taxing these fees as costs. *Id.*

5

Movers argue the Court should issue an order charging Golkow and PSR's fees against the attorneys' fee fund and reimburse the firms who advanced the fees. *Id.* at 3. According to Movers, the transcripts of the depositions were used as evidence during the Step Five fee proceeding, cited by the parties in their briefings to the Special Master and the Court, and used by the Special Master in making his report and recommendation. *Id.* Therefore, Movers contend, Golkow and PSR's charges should be taxed as a cost of the fee allocation proceeding and charged against the fee fund. *Id.*

In opposition, Plaintiffs' Lead and Liaison Counsel (the "Opposition") argue the motion to tax court reporters' fees as costs should be denied if Movers seek to recover costs from common benefit counsel and those law firms that did not make objections to the Fee Committee's allocation recommendation. R. Doc. 22193 at 2. The Opposition submits it has expended fees for Golkow and PRS in connection with fee depositions and hearings before the Special Master. *Id.* Furthermore, the Opposition contends Movers have continued to delay these proceedings in connection with fee matters, and there is no agreement by non-objectors for common benefit counsel to pay for the expenses incurred by the firms making fee objections. *Id.* However, the Opposition avers, it does not object to Movers seeking recovery of expenses from the law firms that objected to the Fee Committee's allocation recommendation. *Id.* at 3.

In their reply, Movers argue the January 2018 Order & Reasons (R. Doc. 21168) directed the expenses related to the fee allocation proceeding to be divided among and assessed against the common benefit counsel and individually retained counsel. R. Doc. 22203 at 1. Movers contend the court reporters' fees are expenses related to the fee allocation proceeding. *Id.* at 2. Furthermore, Movers submit, all firms benefitted from the proceeding because the Fee Allocation committee recommended individual counsel receive only $78,400,054.53, and after

6

the proceeding, the Court awarded individual counsel $94,607,042.00. Therefore, Movers aver the court reporters' fees should be taxed as costs of the fee allocation proceeding. *Id.*

The Court notes at the outset that the process by which each lawyer or entity recovered held costs and were awarded attorneys' fees required strict compliance with mandatory expense reporting procedures with the court-appointed CPA. Movers have not complied with that process. Moreover, in their motion, Movers state, "The parties *agreed upon*" retaining Golkow and PSR, but no agreement was made with respect to what entity would pay the fees. Apparently Movers took it upon themselves to do so. Although the Court appreciates Movants' request, the Court lacks the authority to order the other parties, especially the non-objectors, to contribute to the payment of Golkow and PSR. In the Court's opinion, the issue of recouping payment is a private matter to be resolved among the parties. Accordingly, the Court will deny the motion.

## II.     CONCLUSION

For the foregoing reasons;

**IT IS ORDERED** that the Motion to Tax Court Reporter Fees as Costs filed by Parker Waichman LLP; Baron & Budd, P.C.; Milstein, Jackson, Fairchild & Wade, LLP; and Gieger, Laborde & Laperouse, LLC, R. Doc. 22166, be and hereby is **DENIED**.

New Orleans, Louisiana on this 21st day of May, 2019.

Eldon E. Fallon
U.S. District Court Judge