UNITED STATES DISTRICT COURT
                         EASTERN DISTRICT OF LOUISIANA


        ************************************************************
        IN RE:  CHINESE-MANUFACTURED DRYWALL
        PRODUCTS LIABILITY LITIGATION

                                    MDL No. 09-2047
        VS.                         Section "L"
                                    New Orleans, Louisiana
                                    April 23, 2019

        THIS DOCUMENT RELATES TO ALL CASES
        ************************************************************


        TRANSCRIPT OF MOTION TO STRIKE/DISMISS CERTAIN BENNETT CLAIMS
                 HEARD BEFORE THE HONORABLE ELDON E. FALLON
                         UNITED STATES DISTRICT JUDGE


        APPEARANCES:

        FOR THE PLAINTIFFS' LIAISON COUNSEL:


                                    *LEN DAVIS*
                                    *RUSS HERMAN*
                                    HERMAN, HERMAN & KATZ
                                    820 O'KEEFE AVENUE
                                    NEW ORLEANS, LA 70113

                                    *ARNOLD LEVIN*
                                    *SANDRA L. DUGGAN*
                                    LEVIN, FISHBEIN, SEDRAN & BERMAN
                                    510 WALNUT STREET, SUITE 500
                                    PHILADELPHIA, PA 19106

                                    *GERALD E. MEUNIER*
                                    GAINSBURGH, BENJAMIN, DAVID,
                                    MEUNIER & WARSHAUER, LLC
                                    2800 ENERGY CENTRE
                                    NEW ORLEANS, LA 70163

                                    *RICHARD SERPE*
                                    OFFICES OF RICHARD J. SERPE
                                    580 EAST MAIN STREET, SUITE 310
                                    NORFOLK, VA 23510

MOTION TO DISMISS/STRIKE CERTAIN BENNETT CLAIMS

FOR THE TAISHAN, BNMB ENTITIES
AND CNMB ENTITIES LIAISON COUNSEL:

                              *HARRY ROSENBERG*
                              PHELPS DUNBAR
                              365 CANAL STREET
                              SUITE 2000
                              NEW ORLEANS, LA 70130

FOR TAISHAN GYPSUM CO., LTD, AND TAI'AN TAISHAN PLASTERBOARD
CO., LTD.:

                              *CHRISTINA H. EIKHOFF*
                              *DAVID VENDERBUSH*
                              ALSTON & BYRD
                              ONE ATLANTIC CENTER
                              1201 WEST STREET
                              ATLANTA, GA 30309

FOR THE LIAISON COUNSEL:
                              *KERRY J. MILLER*
                              *DANIEL S. DYSART*
                              FISHMAN HAYGOOD, LLP
                              201 ST. CHARLES AVENUE
                              46TH FLOOR
                              NEW ORLEANS, LA 70170

FOR THE BNMB AND CNMB ENTITIES:

                              *DONNA P. CURRAULT*
                              GORDON, ARATA, MCCOLLAM,
                              DUPLANTIS & EAGAN
                              201 ST. CHARLES AVENUE
                              40TH FLOOR
                              NEW ORLEANS, LA 70170

                              *JAMES L. STENGEL*
                              ORRICK HERRINGTON & SUTCLIFFE
                              51 WEST 52ND STREET
                              NEW YORK, NY 10019

MOTION TO DISMISS/STRIKE CERTAIN BENNETT CLAIMS

```
ALSO PRESENT:                    JIMMY R. FAIRCLOTH, JR.
                                 9026 JEFFERSON HIGHWAY
                                 BUILDING 2, SUITE 200
                                 BATON ROUGE, LA 70809

                                 TURNER YANCE
                                 YANCE LAW FIRM
                                 169 DAUPHINE STREET
                                 MOBILE, AL 36602

                                 ERIC HOAGLAND
                                 MCCALLUM HOAGLUND
                                 905 MONTGOMERY HIGHWAY
                                 SUITE 201
                                 VESTAVIA HILLS, AL 35216

                                 MICHAEL J. RYAN
                                 KRUPNICK CAMPBELL MALONE BUSER
                                 SLAMA HANCOCK, P.A.
                                 12 S.E. 7TH STREET
                                 SUITE 801
                                 FORT LAUDERDALE, FL 33301

                                 JAMES R. DOYLE
                                 JIM DOYLE LAW FIRM
                                 1018 PRESTON ST
                                 SUITE 850
                                 HOUSTON, TX 77002

Official Court Reporter:         Nichelle N. Drake, RPR, CRR
                                 500 Poydras Street, B-275
                                 New Orleans, Louisiana 70130
                                 (504) 589-7775


    Proceedings recorded by mechanical stenography,
transcript produced via computer.
```

1                    **P R O C E E D I N G S**

2                    (Call to order of the court.)

11:50:44AM  3        THE COURT:  Okay.  Let's go to the last issue then

11:50:46AM  4    with Knauf's motions.

11:51:08AM  5        MR. MILLER:  Good morning, Your Honor.  Kerry Miller

11:51:08AM  6    on behalf of Knauf.

11:51:12AM  7        Your Honor, we're here in connection with a motion we

11:51:15AM  8    filed in connection with the *Elizabeth Bennett* case, Record

11:51:23AM  9    Doc -- it's amazing when you read these record docs.  You

11:51:27AM  10   talk about decades.  We've been at it a decade.  It's --

11:51:29AM  11   22206 is our motion.

11:51:35AM  12       And, Your Honor, we've had a number of status

11:51:37AM  13   conferences, both in person and over the phone, on these

11:51:41AM  14   issues, and this relates to, as I indicated, at the last

11:51:45AM  15   status conference we held a couple of weeks ago sort of the

11:51:52AM  16   first badge or the first wave of Plaintiff Fact Sheet,

11:51:57AM  17   Profile Form, Supplemental Profile Form information, that

11:51:59AM  18   we've been looking at in connection with the *Bennett* case.  I

11:52:02AM  19   think the *Bennett* case is an inventory case.  I think it has

11:52:04AM  20   about 120 plaintiffs or properties in that case.

11:52:08AM  21       Your Honor, since so much of this morning has been a

11:52:13AM  22   course on history of this litigation, I think the history of

11:52:16AM  23   this litigation bears on the motion and the purpose of the

11:52:22AM  24   Fact Sheets and the information that's supposed to be

11:52:26AM  25   contained -- because it really is about information.  And

MOTION TO DISMISS/STRIKE CERTAIN BENNETT CLAIMS

11:52:28AM 1 when I heard this morning that Arnie's going home today, I

11:52:28AM 2 thought about a comment I would hear from Arnie often in this

11:52:35AM 3 case. And we talk a lot about the Knauf settlement and how

11:52:39AM 4 we were able to do it as quickly as we could. I think one of

11:52:42AM 5 the aspects of it that goes unnoticed a lot is something that

11:52:49AM 6 Arnie likes to joke with me about and that is two weeks in

11:52:55AM 7 Philadelphia that we sent both client reps and lawyers, teams

11:52:56AM 8 of people to his office.

11:52:57AM 9 Sandy is -- Russ is here. Sandy is not here.

11:52:59AM 10 They'll probably remember it.

11:53:00AM 11 And what happened at that point early on in

11:53:03AM 12 litigation, Your Honor, is we had agreed to the profile form

11:53:06AM 13 process, and certain documents were supposed to be attached

11:53:09AM 14 to that process. Very early on -- we got this MDL in the

11:53:12AM 15 summer of 2009 -- Profile form is one of the first things

11:53:15AM 16 that we looked at. We both had subgroups who worked on a

11:53:20AM 17 profile form. We worked from forms and other MDLs and other

11:53:23AM 18 product cases that we thought were helpful. We reached an

11:53:26AM 19 agreement on something. We presented it to the Court. You

11:53:30AM 20 entered an order and then we had certain deadlines. Lawyers,

11:53:30AM 21 plaintiff lawyers, then were supposed to distribute the

11:53:30AM 22 Profile Forms, collect the information. Arnie's office

11:53:30AM 23 became a central depository for that information.

11:53:41AM 24 I think it was the summer of 2010. I think it was

11:53:42AM 25 summertime. We sent a team of people for two weeks to

11:53:45AM  1   Arnie's office.  He put them up in a conference room with all

11:53:48AM  2   these Profile Forms, and they literally went through and

11:53:51AM  3   created a master spreadsheet on all the information.  But the

11:53:54AM  4   process was not just the Knauf team sitting in a conference

11:53:59AM  5   room at Arnie Levin's firm in Philadelphia, it was a real

11:54:03AM  6   process.

11:54:04AM  7        As they were going through the profile forms and

11:54:08AM  8   attachments one by one, if a page was missing or if someone

11:54:11AM  9   had checked off that they had personal property loss but

11:54:15AM  10  didn't have the documentation, we would literally go to

11:54:18AM  11  someone in Arnie's office, realtime, understanding the

11:54:23AM  12  importance of the information and the point of getting this

11:54:26AM  13  information so that we would move the case forward.

11:54:27AM  14       What that person in Arnie's office would do, they

11:54:30AM  15  would identify who the lawyer was on the case, call down to

11:54:34AM  16  that lawyer's firm or that lawyer's assistant or that

11:54:37AM  17  lawyer's paralegal and say, "Hey, on the form you checked,

11:54:40AM  18  yes, you have personal property losses, but you don't attach

11:54:43AM  19  any documentation.  You got to get that documentation to us."

11:54:47AM  20  They would then make a call, look for the documentation, and

11:54:50AM  21  pretty much let us know then or shortly thereafter whether

11:54:54AM  22  they had a claim for personal property loss or not, and if

11:54:58AM  23  they did, here's the information.

11:55:00AM  24       That two-week process gave us a lot of good

11:55:04AM  25  information that we were then able to use and process and

11:55:09AM  1  analyze and come up with the bellwether trials we had in the

11:55:13AM  2  case, the pilot program we had in the case, the settlement

11:55:17AM  3  program we had in the case.  It was then shared with Banner

11:55:19AM  4  and all of the insurers and it was really, really

11:55:22AM  5  fundamentally important to the effort and the efficiency of

11:55:26AM  6  the litigation.

11:55:26AM  7       We're trying to do that in a much smaller way in

11:55:33AM  8  connection with the 120 plaintiffs in *Bennett*.  You know,

11:55:36AM  9  then we were dealing with three or four thousand.  Now it's

11:55:41AM  10  120 and we're nine years after the fact.  And the problem we

11:55:45AM  11  continue to have, Your Honor, and we've had this on the cause

11:55:48AM  12  -- and you remarked you all sound like two ships passing in

11:55:54AM  13  the night.  I think you are probably right.  I think we are.

11:55:55AM  14       We say, "We don't have this information.  We're

11:55:59AM  15  surprised we don't have this information."  Mr. Doyle says,

11:56:02AM  16  "That's all I have.  I've given it to you."  So what do we

11:56:07AM  17  do?  We got 120 cases.

11:56:07AM  18       And the kinds of information we don't have -- and

11:56:10AM  19  Danny -- we put slip sheets in our brief to kind of give you

11:56:14AM  20  some real-world examples of what's missing and what's

11:56:16AM  21  important.  And so also harkening back to something that was

11:56:20AM  22  argued today, what's missing in almost all of the cases we've

11:56:23AM  23  looked at so far -- Danny, do you have the binder?

11:56:32AM  24       In essence, Your Honor, I mean, this is what we do --

11:56:35AM  25  this is what we've done for 10 years in each case.  We get

MOTION TO DISMISS/STRIKE CERTAIN BENNETT CLAIMS

11:56:38AM  1   the information that's attached to the Profile Form and the

11:56:41AM  2   Fact Sheet.  We put it into a binder.  We index it.  We

11:56:46AM  3   organize it.  We put it into a spreadsheet so you have the

11:56:49AM  4   information.

11:56:49AM  5        The first tab in the binder is always product ID.

11:56:53AM  6   That's been an issue in this case from day one.  And what we

11:56:57AM  7   got in Philadelphia in the summer of 2010 in a lot of cases

11:57:03AM  8   were inspection reports.  They might have been crude.  They

11:57:06AM  9   might have been inexpensive.  Some were expensive in detail,

11:57:11AM  10  but we were getting inspection reports.  And when we didn't

11:57:14AM  11  have an inspection report, that was one of the things that

11:57:17AM  12  Arnie's office would call down and say, "Hey, you noted on

11:57:20AM  13  the form you have an inspection report.  There was nothing

11:57:22AM  14  attached.  Round it up."

11:57:24AM  15       In the cases that we've looked at so far, how many

11:57:28AM  16  inspection reports have we seen?  A couple?  A handful?  We

11:57:31AM  17  typically get a picture or two.

11:57:33AM  18       Well, Your Honor knows in connection with one of the

11:57:37AM  19  pretrial orders that you entered -- it was Exhibit C -- back

11:57:40AM  20  in 2011 was an inspection protocol that's been used in this

11:57:45AM  21  case for a long time.  And we first tried to do some

11:57:49AM  22  inspections in connection with the pilot program.  I think

11:57:53AM  23  Your Honor was aware of it.  I don't know if you remember.  I

11:57:54AM  24  think Russ does.  They took all day.  They took two days.  We

11:57:58AM  25  had the lieutenant governor in Florida who was one of the

MOTION TO DISMISS/STRIKE CERTAIN BENNETT CLAIMS

11:58:03AM  1   first houses.  He's got a big house in Tampa.  And they went

11:58:04AM  2   and it took them two days to do it.  And we said, "Yeah, it's

11:58:07AM  3   back to the drawing board."

11:58:09AM  4        On the one hand, the defendants need information to

11:58:11AM  5   make sure that their product is in the home and the areas in

11:58:15AM  6   which their product is in the home.  On the other hand, we

11:58:20AM  7   can't spend more money inspecting the home than it might cost

11:58:25AM  8   to repair the home or a good portion of it.  So we reached a

11:58:27AM  9   compromise, and that compromise called for a room-by-room

11:58:32AM  10  inspection because if you had it -- and we both had experts

11:58:36AM  11  who worked for us on it.  And really the experts worked with

11:58:39AM  12  us, and we came up with a good compromise protocol.  They

11:58:42AM  13  would give the defendants the comfort they needed that their

11:58:45AM  14  product was involved in a particular home to a real extent,

11:58:49AM  15  but if it wasn't their product, it didn't completely tear up

11:58:53AM  16  the home such that you had a home that needed repair that

11:58:57AM  17  failed product ID.  That was a compromise that we reached,

11:59:01AM  18  and that was part of Record Doc 12061-9.

11:59:05AM  19       Again, fast forward to 2019, we're getting the

11:59:08AM  20  information in on the *Bennett* homes.  We're not getting the

11:59:11AM  21  kind of inspection reports that would comply with the

11:59:13AM  22  inspection protocol that was entered in 2011 that was a

11:59:18AM  23  product of a compromise that could be followed.  Not even to

11:59:24AM  24  the T, but, in spirit, we're not even seeing it.  So in the

11:59:29AM  25  vast majority of the binders that we're looking at, we get a

MOTION TO DISMISS/STRIKE CERTAIN BENNETT CLAIMS

11:59:32AM  **1**  picture or two.  To us, literally -- and we have literal

11:59:35AM  **2**  clients -- to them, that means, well, there must be one or

11:59:39AM  **3**  two boards in the whole house.  We'll settle that case for

11:59:43AM  **4**  $500.  That's all you have.  We'll make that offer now.

11:59:47AM  **5**      But those are the kind of problems we're having, Your

11:59:49AM  **6**  Honor, with some of this information.  It's not in all cases,

11:59:52AM  **7**  but it's in a lot.  I don't know what to do.  If the

11:59:55AM  **8**  information is not there, then we'll move at the appropriate

11:59:58AM  **9**  time for summary judgment.  But what our client does not want

12:00:01PM  **10**  us to do, if we can avoid it -- "Kerry, why are you doing

12:00:09PM  **11**  inspections?  Why are you taking depositions the

12:00:12PM  **12**  old-fashioned way?  We're issuing subpoenas with our

12:00:14PM  **13**  depositions the old-fashioned way with a return date on the

12:00:17PM  **14**  subpoenas at eight o'clock and we start the deposition at

12:00:20PM  **15**  ten.  We're going to sit and go through the file like the

12:00:23PM  **16**  old-fashioned way."  And I said, "Well, that's what we got to

12:00:28PM  **17**  do to move these cases on."  So why is it not -- those are

12:00:30PM  **18**  the issues, those are the problems we're having.

12:00:32PM  **19**      I'll let Danny speak for a minute on the specifics so

12:00:36PM  **20**  we can get some real-world examples so the Court understands

12:00:41PM  **21**  that this is not just a theoretical or hypothetical dispute

12:00:46PM  **22**  of two ships passing in the night.  We have 120 cases to deal

12:00:49PM  **23**  with.  The Profile Form and Fact Sheet process in lieu of 100

12:00:54PM  **24**  different interrogatories with 17 subparts each has been very

12:00:58PM  **25**  effective and Your Honor has -- is a pioneer on that and has

MOTION TO DISMISS/STRIKE CERTAIN BENNETT CLAIMS

12:01:02PM 1  been very effective in lots of your cases.  For whatever

12:01:06PM 2  reason, it's not having good effect in this case, you know,

12:01:09PM 3  not getting good bang for our buck, and we think this rule to

12:01:11PM 4  show cause process in some batches follow -- we sent

12:01:15PM 5  Mr. Doyle an e-mail yesterday scheduling cases for

12:01:19PM 6  depositions including some of the ones that are in here that

12:01:19PM 7  we think portions of their claim are ready for deposition.

12:01:22PM 8  But ten years into it, the last thing we want to do is be

12:01:27PM 9  taking multiple depositions and getting multiple reams of

12:01:31PM 10 information and doing inspections and paying for inspections

12:01:35PM 11 on property when we get one picture.  And that's the problem

12:01:38PM 12 we're having Your Honor at this stage.

12:01:50PM 13         MR. DYSART:  Good morning, Judge Fallon.

12:01:53PM 14         And just to go over a couple of the points, just to

12:01:55PM 15 give some examples of kind of some of the issues we're seeing

12:01:58PM 16 across the course of those claims and just for the matter of

12:02:02PM 17 the record, I believe the other motion that is set is Record

12:02:05PM 18 Doc 22107.  That motion to dismiss we had filed was regarding

12:02:11PM 19 a handful of claims that either did not file or late filed

12:02:16PM 20 claims, Plaintiff Fact Sheets -- excuse me.  And I believe

12:02:20PM 21 there's only one that's actually at issue and that's

12:02:23PM 22 Rosenaur.  I believe they were late by a day or two.  The

12:02:28PM 23 rest of the claims that we had submitted, which I believe

12:02:29PM 24 were 19 and we attached to the second motion at Record Doc

12:02:35PM 25 22206, relate to the deficiencies, and that's what I'm going

MOTION TO DISMISS/STRIKE CERTAIN BENNETT CLAIMS

12:02:39PM  1    to speak of.

12:02:40PM  2         That motion was really filed, Your Honor, in response

12:02:42PM  3    to the Case Management Order in this case which allowed --

12:02:47PM  4    any party may move for rule to show cause as to why any claim

12:02:50PM  5    should not be dismissed for failure to cure any deficiency,

12:02:54PM  6    answer the PFS after the 60-day deadline.  So, again, trying

12:02:58PM  7    to move these cases, we did this because we really just want

12:03:01PM  8    to draw to a head these issues.  Those issues include, as

12:03:04PM  9    Kerry mentioned, product ID with respect to liability, but

12:03:09PM 10    also percentage in terms of damages and what part of the

12:03:11PM 11    houses, whether it's a single room, a closet, or the entire

12:03:14PM 12    house, that has not only defective Chinese drywall, but does

12:03:19PM 13    it have our defective Chinese drywall.

12:03:19PM 14         THE COURT:  How many of those are still outstanding

12:03:23PM 15    from that standpoint?  I'm not talking about the late file.

12:03:27PM 16    That doesn't concern me.  What is the -- it just seems to me

12:03:32PM 17    that we got to put some structure in this.

12:03:35PM 18         If the whole purpose of the Fact Sheets is to get

12:03:39PM 19    away from interrogatories -- the reason that interrogatories

12:03:43PM 20    are not used in these cases is because it's a weak method in

12:03:50PM 21    the federal rules of obtaining information.  The reason it's

12:03:55PM 22    weak in my opinion is that it's questions formulated by a

12:03:59PM 23    lawyer and it's questions answered by a lawyer.  And the

12:04:04PM 24    lawyer who formulates the questions wants to know everything

12:04:07PM 25    from the beginning of time, and the lawyer who answers the

MOTION TO DISMISS/STRIKE CERTAIN BENNETT CLAIMS

12:04:12PM  1   questions doesn't want to give any information.  So in the

12:04:15PM  2   real world, that generates a lot of motions and you can't

12:04:22PM  3   have a lot of motions in a case of this sort.  It will take

12:04:27PM  4   you generations and generations to complete the case.  So you

12:04:31PM  5   got to come up with some method of doing away with 15 or 20

12:04:40PM  6   motions per case on that particular issue.

12:04:43PM  7        So the way of doing it is simply to prepare Fact

12:04:47PM  8   Sheets, Profile Forms, whatever we want to call them, that

12:04:51PM  9   the lawyers are satisfied that this is the information they

12:04:54PM 10   need on both sides and then they give the information.

12:04:58PM 11   Sometimes the plaintiff won't give the information to his

12:05:04PM 12   lawyer.  When he won't give the information to his lawyer,

12:05:08PM 13   notwithstanding the conscientious efforts of the lawyer, he

12:05:15PM 14   won't even identify what product he used or he won't identify

12:05:19PM 15   what medicine he took or something of that sort.  He won't

12:05:22PM 16   even answer his lawyer's calls.  In that type situation, I

12:05:27PM 17   dismiss the case.  It's obvious to me the plaintiff wants to

12:05:32PM 18   move on.  They don't have to stay with a case that they've

12:05:35PM 19   hired a lawyer for for a long period of time when they move

12:05:38PM 20   and do other things.  They want to get on with their life.

12:05:38PM 21   I'll let them get on with their life.

12:05:43PM 22        There's sometimes a situation where the lawyer gets

12:05:46PM 23   the very best he can or she can and presents it.  In that

12:05:52PM 24   type situation, the issue is not whether the client will

12:05:56PM 25   voluntarily participate, but whether or not the information

12:06:01PM  1   given is sufficient.  In that type of situation, it seems to

12:06:05PM  2   me that that then comes down to a summary judgment motion, is

12:06:12PM  3   that information that is given that the client gave to the

12:06:17PM  4   lawyer, the lawyer gave to you, is that sufficient to satisfy

12:06:21PM  5   whatever he's trying to satisfy, product ID or damage or

12:06:27PM  6   whatever it is, is that sufficient.  If it is sufficient,

12:06:33PM  7   then they pass -- it goes to a jury or goes to a -- if it's

12:06:37PM  8   not sufficient, I dismiss the case.  That's I think what

12:06:41PM  9   we've got to deal with here.

12:06:44PM  10        If there's some information that you can't get and

12:06:48PM  11  the lawyer is trying to get but the client won't give to the

12:06:52PM  12  lawyer, that case ought to be dismissed.  If it's information

12:06:57PM  13  that you're trying to get but in the -- and the lawyer gives

12:07:04PM  14  you the very best that they can, the issue then is whether or

12:07:08PM  15  not that information is sufficient to pass summary judgment.

12:07:13PM  16  And if not, I dismiss the case on summary judgment.

12:07:18PM  17        MR. DYSART:  And, Your Honor, I think -- and, again,

12:07:20PM  18  we've been through some of the claims, the 120 as we put in

12:07:25PM  19  our motions.  All these Fact Sheets were really filed towards

12:07:29PM  20  the end of the deadline at the end of February.  And over the

12:07:31PM  21  last 30, 45 days, we've been plowing through as many as we

12:07:37PM  22  can.  And we've issued the motion on some of these claims and

12:07:41PM  23  they have additional ones that we've identified in the

12:07:42PM  24  future.  We haven't gotten through all of them, but I believe

12:07:44PM  25  it's a combination of the two scenarios you discussed.  And

MOTION TO DISMISS/STRIKE CERTAIN BENNETT CLAIMS

12:07:48PM   **1**   maybe so much a clarification on the form or in terms of is

12:07:53PM   **2**   there documentation that we're not getting or is this

12:07:56PM   **3**   everything you got.

12:07:56PM   **4**       You know, so, for example, for an ARH claim, just to

12:08:04PM   **5**   provide one example, this would be a claim where the

12:08:09PM   **6**   homeowner would have self-remediated.  Now they're seeking

12:08:14PM   **7**   reimbursement back.  In the Plaintiff Fact Sheet, there's

12:08:17PM   **8**   questions with respect -- as to did they comply with PTO

12:08:19PM   **9**   1(B), both in maintaining samples, and did they comply with

12:08:22PM   **10**  PTO 1(B) in terms of photographic evidence when they removed

12:08:29PM   **11**  the boards.  And they checked yes, yes, yes, yes.  And they

12:08:31PM   **12**  all sort of in a formulaic fashion were completed by, you

12:08:35PM   **13**  know, all the plaintiffs in connection -- I guess with

12:08:36PM   **14**  plaintiff's counsel helping them do that.

12:08:37PM   **15**      So they'll check yes on the answers, but what we get

12:08:41PM   **16**  is three photographs of a single board, right?  And while it

12:08:45PM   **17**  may -- so the question that comes up is, well, where are the

12:08:47PM   **18**  photos of the samples or where are the other photographs that

12:08:50PM   **19**  when you removed the board pursuant to PTO 1(B) you would

12:08:53PM   **20**  have photographed the backside and documented it on the floor

12:08:57PM   **21**  plan.  So it's those sorts of things.  Do they have it?  You

12:08:58PM   **22**  know, we don't know.

12:08:59PM   **23**      Other examples are they'll list Exhibits 1 through 15

12:09:04PM   **24**  in a Plaintiff Fact Sheet, and when we go to it, there just

12:09:07PM   **25**  won't be anything there.  So is there just no document?  You

MOTION TO DISMISS/STRIKE CERTAIN BENNETT CLAIMS

12:09:10PM   1    know, is that everything and it's just a blank placeholder,

12:09:16PM   2    or is that something that they had that we just haven't

12:09:18PM   3    received.

12:09:18PM   4         THE COURT:  I hear you, Danny.  The issue -- it just

12:09:21PM   5    seems to me that an efficient way of handling it for both of

12:09:27PM   6    you all is to call Jimmy on the phone or Jimmy call you on

12:09:33PM   7    the phone and get together personally and you say, "This is

12:09:35PM   8    what we need.  What's the answer?"  And if he says, "I don't

12:09:38PM   9    have it.  I don't have it.  I don't have it."  Then he

12:09:40PM   10   doesn't have it.  It's a motion to dismiss the case on

12:09:44PM   11   summary judgment for not having it.

12:09:47PM   12        MR. DYSART:  And, Your Honor -- and that was, you

12:09:50PM   13   know, in a normal sense, but because of the discovery track

12:09:53PM   14   that we had, we were not expecting sort of the gaps that we

12:09:57PM   15   had here.  We were hoping that these claims would have been

12:10:00PM   16   developed in such a way that we would be able to take

12:10:02PM   17   depositions immediately.  We would be able to --

12:10:03PM   18        THE COURT:  I would have hoped to.  You all have done

12:10:05PM   19   it before and haven't had any problem doing it before.

12:10:08PM   20        MR. DYSART:  You know, some of the other issues --

12:10:10PM   21   and these are just kind of one-off issues.  Some of them, we

12:10:13PM   22   have issues where either the claimant didn't sign the PFS or

12:10:16PM   23   there's two claimants, but only one signed so that's supposed

12:10:21PM   24   to be a request -- you know, have the authority of a request

12:10:23PM   25   for admission.  So there's some issues in that regard.

MOTION TO DISMISS/STRIKE CERTAIN BENNETT CLAIMS

12:10:26PM **1** There's issues in terms of -- for personal property damages,

12:10:29PM **2** also with respect to PTO 1(B), claimants were supposed to

12:10:35PM **3** preserve physical evidence.  Instead, what we get is just a

12:10:37PM **4** list of damages or a list of property without any other, you

12:10:40PM **5** know, inclination with whether there is actual evidence of

12:10:43PM **6** that property being damaged.

12:10:46PM **7**        And then, you know, finally, there's some

12:10:49PM **8** inconsistencies in the Fact Sheets.  There's a lot of

12:10:53PM **9** discussion in terms of the subsequent purchaser doctrine

12:10:54PM **10** today.  And not to just get into those arguments, but a lot

12:10:58PM **11** of these properties were purchased late in the game, so to

12:11:02PM **12** speak, in terms of -- and Your Honor has made rulings in the

12:11:05PM **13** past in terms of when a homeowner purchases a property at a

12:11:09PM **14** certain date after Chinese drywall is well known to the

12:11:13PM **15** public that they've taken a calculated risk and they're

12:11:16PM **16** buying the property as is.  So there's a question in the Fact

12:11:19PM **17** Sheet in that sense in terms of did they purchase the

12:11:23PM **18** property as is, and that's something that they should know

12:11:27PM **19** because they should have their active sale and their closing

12:11:29PM **20** documents and those should be produced.  Instead, what we get

12:11:31PM **21** is an answer that sometimes says:  Yes, and I don't know or

12:11:33PM **22** yes, no, I don't know.

12:11:34PM **23**        So, again, it just kind of goes back to the point we

12:11:37PM **24** thought we would be getting some better substantive answers

12:11:41PM **25** on these things and we would be able to move forward.

MOTION TO DISMISS/STRIKE CERTAIN BENNETT CLAIMS

12:11:43PM 1    Instead, what we have is just a lot of gaps and a lot of

12:11:45PM 2    clarification that needs to be done.

12:11:47PM 3         THE COURT:  Okay.  Let me hear from Jimmy then.

12:11:51PM 4         There's some things, Jimmy, obviously, to me, a

12:11:56PM 5    signed form, that ought to be signed.  I mean, there's no

12:12:01PM 6    reason a person can't sign it.  I don't know why I'm here on

12:12:06PM 7    forms that haven't been signed.  If they haven't been signed,

12:12:07PM 8    they should be signed.

12:12:07PM 9         MR. DOYLE:  Your Honor --

12:12:07PM 10        THE COURT:  Same way --

12:12:07PM 11        MR. DOYLE:  -- I don't -- I don't dispute that --

12:12:09PM 12        THE COURT:  -- same way with the inconsistencies.  If

12:12:14PM 13   there's inconsistency when they purchased the property, if

12:12:17PM 14   they don't know when they purchased the property, then

12:12:19PM 15   they're not going to be in this lawsuit long.

12:12:22PM 16        MR. DOYLE:  Your Honor, I heard the presentation from

12:12:24PM 17   the defense counsel, and, quite frankly, I don't understand

12:12:27PM 18   half of it because I'm just going to walk through what the

12:12:30PM 19   plaintiffs have provided to the defendants through our upload

12:12:32PM 20   in Brown Greer's portal.  100 percent of the plaintiffs have

12:12:37PM 21   provided a signed, verified Plaintiff Fact Sheet.  What

12:12:41PM 22   they're talking about, getting together with Arnie in

12:12:45PM 23   Philadelphia 10 years ago, 100 percent of the plaintiffs have

12:12:49PM 24   provided that, signed it, dated it, provides all the

12:12:52PM 25   information in there.  Of course, it doesn't have anything in

MOTION TO DISMISS/STRIKE CERTAIN BENNETT CLAIMS

12:12:54PM  1    that Plaintiff Fact Sheet about personal property damages.

12:12:58PM  2    As you may recall, personal property damage was handled

12:12:58PM  3    through the 2013 non-manufacturing defendant class

12:13:04PM  4    settlement.  Knauf didn't pay any of it.

12:13:06PM  5         The second document that each and every one of the

12:13:09PM  6    plaintiffs have signed and dated and provided all the

12:13:12PM  7    attachments in their possession is the Supplemental Plaintiff

12:13:17PM  8    Profile Form.  100 percent of them have signed it.  And we've

12:13:19PM  9    gone through and attached all the documents that we have in

12:13:22PM  10   our files, they have in their possession.  We've asked them

12:13:26PM  11   to go and, you know, get together with their closing attorney

12:13:29PM  12   if they can, if they can find them, if they're still

12:13:32PM  13   practicing.  We've had everybody go and try to gather the

12:13:35PM  14   information that would be relevant in this case.

12:13:36PM  15        The final document was the Plaintiff Fact Sheet.  And

12:13:40PM  16   what it was, you know, the attachment that Your Honor

12:13:43PM  17   approved, one at issue in the Case Management Order was, you

12:13:45PM  18   know, a series of questions they just compiled.  We turned it

12:13:49PM  19   into a form, sent it out to each one of the plaintiffs and

12:13:51PM  20   said, "Please complete this form."  And we attached our own

12:13:56PM  21   verification page.

12:13:57PM  22        I'm not aware of anybody not signing it and us

12:14:01PM  23   uploading it.  If there is anybody that hasn't signed it, it

12:14:04PM  24   would be nice if defense counsel would simply send us an

12:14:06PM  25   e-mail or, you know, a letter saying:  Hey, please provide us

MOTION TO DISMISS/STRIKE CERTAIN BENNETT CLAIMS

12:14:09PM  1    this in this period of time.  Otherwise we're going to seek a

12:14:12PM  2    motion to compel, which is typically the avenue that defense

12:14:16PM  3    counsel travel under, under Rule 37.

12:14:19PM  4        But in this case, I haven't heard from them at all

12:14:24PM  5    except for this -- these two motions.  The first motion

12:14:26PM  6    because we had two plaintiffs -- and you're aware of the

12:14:29PM  7    filing, Your Honor.  We had two plaintiffs that got it to us

12:14:33PM  8    a day or two late.  We immediately uploaded it.  They filed

12:14:37PM  9    their motion the next day after the deadline.  And we

12:14:38PM  10   understand, you know, they're anxious to raise these issues

12:14:42PM  11   with the Court, but there really was nothing there to raise.

12:14:45PM  12       The Plaintiff Fact Sheets along with the Supplemental

12:14:48PM  13   Plaintiff Profile Form and the Profile Form plus all exhibits

12:14:52PM  14   are in their possession.  Up to that point, we have not heard

12:14:56PM  15   that any of it was deficient in any way.

12:15:01PM  16       THE COURT:  Look, when I said you all are passing in

12:15:04PM  17   the night, this is -- we've had several status conferences,

12:15:09PM  18   telephone status conferences to talk about this issue.  So

12:15:12PM  19   it's really not the first time.  We've had a lot of

12:15:15PM  20   discussion on what they need and what you have given to them.

12:15:19PM  21   We've got to reach a point where you all can sit down and go

12:15:23PM  22   over each form, and if you can't supply the information or

12:15:28PM  23   don't have the information, then let's file a motion to

12:15:32PM  24   dismiss for summary judgment.  And I may dismiss the case for

12:15:37PM  25   summary judgment.

| | | |
|---|---|---|
| 12:15:37PM | 1 | MR. DOYLE:  Right.  Your Honor -- |
| 12:15:38PM | 2 | THE COURT:  Some of these things are just if you |
| 12:15:40PM | 3 | can't do -- if you can't fill it out, if you can't produce |
| 12:15:45PM | 4 | the fact that you own the property -- |
| 12:15:49PM | 5 | MR. DOYLE:  Your Honor, there's not one person who |
| 12:15:52PM | 6 | hasn't established they own the property.  We've uploaded |
| 12:15:55PM | 7 | warranty deeds where it has it.  It shows they're the owner |
| 12:15:58PM | 8 | of record.  And in the cases where they have a HUD-1, we're |
| 12:16:01PM | 9 | providing that as well.  We asked them to go back and get it |
| 12:16:05PM | 10 | to establish the purchase price.  A lot of them can't do it |
| 12:16:07PM | 11 | because they may have purchased a property in 1975 and then |
| 12:16:11PM | 12 | built a house in, you know, 2006 or 2007, and then they're, |
| 12:16:14PM | 13 | you know, facing this drywall issue.  So it's purchasing a |
| 12:16:17PM | 14 | property back then followed by the cost of building a house |
| 12:16:22PM | 15 | in 2006.  We can provide both of those, but, obviously, we |
| 12:16:25PM | 16 | can't provide every single document in every case. |
| 12:16:29PM | 17 | But I want to stress one thing, Your Honor, because I |
| 12:16:31PM | 18 | heard this from Kerry and Danny that -- you know, they've |
| 12:16:36PM | 19 | referenced the exhibits to a settlement agreement multiple |
| 12:16:40PM | 20 | times over the past few status conferences.  And I just want |
| 12:16:43PM | 21 | to state for the record that doesn't apply in this case. |
| 12:16:46PM | 22 | That is not an extension of the 2011 settlement or the 20 -- |
| 12:16:51PM | 23 | whatever it is -- 2014 and '13 settlement in *Beane* (phonetic) |
| 12:16:53PM | 24 | I believe it was.  Those are different settlements that don't |
| 12:16:57PM | 25 | involve these plaintiffs at all.  They're not class members |

MOTION TO DISMISS/STRIKE CERTAIN BENNETT CLAIMS

12:17:02PM  **1**   in those.  They were filed afterwards.  These were all filed

12:17:03PM  **2**   in 2014 after the plaintiffs discovered that they have this

12:17:06PM  **3**   defective product in their home.  So any agreement that was

12:17:10PM  **4**   reached with Arnold Levin or Russ Herman or any PSC member

12:17:14PM  **5**   that signed off on that agreement is irrelevant in this

12:17:17PM  **6**   context.  What we have here is plaintiffs that are presenting

12:17:20PM  **7**   their case that have shown in 100 percent of the cases,

12:17:24PM  **8**   product ID evidence that they have the defective product in

12:17:24PM  **9**   their home.

12:17:29PM  **10**  Now, the Court has adopted a protocol and I heard

12:17:32PM  **11**  them talk about settling cases for $500 because it may just

12:17:35PM  **12**  be in a bathroom.  There is a court established protocol for

12:17:40PM  **13**  remediating homes with Chinese drywall in it.  And it doesn't

12:17:44PM  **14**  mean pull out one or two boards where you find it and then

12:17:47PM  **15**  say, "Oh, the rest of the house is okay."  That's not the

12:17:49PM  **16**  protocol.  That's not what the Court has adopted.  And this

12:17:51PM  **17**  is what we've explained to the plaintiffs and asked them to

12:17:54PM  **18**  provide us, you know, the inspection reports if they have it.

12:17:57PM  **19**  In many cases, they don't.  They may have found during the

12:18:02PM  **20**  course of having air conditioner repairs, AC repairman gets

12:18:04PM  **21**  up in the attic, finds the board.  They take a picture of it,

12:18:06PM  **22**  send it to us.  The defective product is in the house.

12:18:12PM  **23**  So have we established that they have a claim, yes?

12:18:14PM  **24**  Are they required to have an inspection report?  No.  There

12:18:17PM  **25**  is not a pretrial order that this Court has entered that

MOTION TO DISMISS/STRIKE CERTAIN BENNETT CLAIMS

12:18:19PM 1    requires each plaintiff to get an inspection report done.

12:18:22PM 2    Now, in many cases, we've recommended that they do that just

12:18:25PM 3    to make sure that, you know, if there is a chance there might

12:18:29PM 4    be multiple products in there.  There may be Taishan, you

12:18:32PM 5    know, or a Dunn product or Crescent City or whatever.  We've

12:18:36PM 6    asked them you know, if we looked at the neighborhood, if

12:18:36PM 7    there are other claims for -- you know, with that builder or

12:18:40PM 8    in that neighborhood that have Taishan claims, go and get an

12:18:45PM 9    inspection report.  And we provided any inspection reports

12:18:49PM 10   that they have in their possession.

12:18:51PM 11        But to say they haven't established, you know, the

12:18:53PM 12   basic case of product ID I think is disingenuous, Your Honor.

12:18:58PM 13   They have in their possession 100 percent of the pictures or

12:19:03PM 14   inspection reports that demonstrate the defective product in

12:19:06PM 15   100 percent of these homes.

12:19:08PM 16        THE COURT:  You see, that's why I say you all are

12:19:10PM 17   passing in the night.  You tell me you don't.  He tells me he

12:19:13PM 18   does.  So I guess at this point the only thing I can do is

12:19:16PM 19   file a motion to dismiss the case for summary judgment.  If

12:19:21PM 20   you can't -- if he can't prove it, that he owned the

12:19:26PM 21   property, or he can't prove that it's in more than one

12:19:29PM 22   location, you know, the case looks like it's gone.

12:19:34PM 23        MR. DOYLE:  Your Honor, I --

12:19:35PM 24        THE COURT:  I don't know what else to do in a case.

12:19:37PM 25   I mean, if you all can get together and talk about it and see

MOTION TO DISMISS/STRIKE CERTAIN BENNETT CLAIMS

12:19:40PM  1    -- and every question you ought to have an answer to.  If the

12:19:44PM  2    answer is we don't have it, we don't have it.  If the answer

12:19:47PM  3    is that's the only thing he gave me, put that in.  That's the

12:19:52PM  4    only thing he gave me.  And then the issue is whether or not

12:19:55PM  5    that's sufficient.

12:19:56PM  6         That's the -- you know, we got to move off of this,

12:19:59PM  7    guys.  In talking with you all, I talked to you now about

12:20:06PM  8    three times and I get the same thing.  Danny, you say you

12:20:09PM  9    don't have it.  Jimmy, you say he does have it.

12:20:13PM 10         MR. DOYLE:  Your Honor, I just want to make one last

12:20:15PM 11    point and I'll sit down and let defense counsel speak again.

12:20:20PM 12    This process -- and there are actually two motions, and I

12:20:21PM 13    think you already said that you're not as concerned about the

12:20:23PM 14    two plaintiffs that have -- of the ten that they listed, only

12:20:26PM 15    eight of which are still in the case, of those two, they

12:20:32PM 16    turned in their Plaintiff Fact Sheets a day or two late.

12:20:34PM 17         THE COURT:  That's not a problem.

12:20:36PM 18         MR. DOYLE:  Yes, sir.  Okay.  So I'm not going to

12:20:36PM 19    talk about it.

12:20:37PM 20         But they were seeking a show cause process and what

12:20:39PM 21    they want to do is extend it for all the discovery issues

12:20:43PM 22    they got in this case.  The only way for me -- when they're

12:20:46PM 23    not citing any particular rule of civil procedure, it looks

12:20:50PM 24    to me like the only way that I can rebut that is to attach

12:20:53PM 25    every one of the documents, plus all the exhibits into the

12:20:56PM **1** record, and we're talking probably thousands of pages.

12:21:00PM **2** That's the only way I can see to rebut, you know, this type

12:21:03PM **3** of motion where they haven't provided me with a legal

12:21:06PM **4** standard for seeking dismissal or to strike these claims.

12:21:10PM **5**      I don't have Rule 12.  I don't have Rule 37.  I don't

12:21:14PM **6** have any Rule 56.  I don't have anything that provides the

12:21:16PM **7** basis for their motion.  I don't want to have to come back

12:21:18PM **8** here --

12:21:19PM **9**      THE COURT:  I don't -- I dismiss it under 37.  I

12:21:22PM **10** dismiss it in the situation where -- where the plaintiff just

12:21:27PM **11** refuses to contact the lawyer.  The lawyer calls him and

12:21:31PM **12** says, "I need you to sign a document."  He says, "I'm not

12:21:34PM **13** home" or "I'm not going to sign the document," or whatever it

12:21:38PM **14** is.  That to me is he's not participating in a settlement.

12:21:43PM **15**      MR. DOYLE:  A failure to prosecute.

12:21:45PM **16**      THE COURT:  Failure to prosecute.  So I dismiss the

12:21:47PM **17** case.

12:21:48PM **18**      If he says, "I don't know what type of drywall I have

12:21:51PM **19** in my house, I can't show you at all," that to me is

12:21:55PM **20** something that I can dismiss because he won't participate in

12:21:58PM **21** the settlement.  If he sends a photograph and the photograph

12:22:01PM **22** says "Knauf Drywall," then the question is, where did he get

12:22:05PM **23** the photograph?  Did he take it in his neighbor's house or

12:22:09PM **24** did he take it in his house?  And if he took it in his house,

12:22:12PM **25** was there only one sheet or were there a lot of sheets?  That

12:22:17PM **1**    may be an issue for summary judgment, and it may be that the

12:22:21PM **2**    summary judgment is that he's only entitled one sheet.  The

12:22:26PM **3**    rest of the house is not provable.  So you get a summary

12:22:33PM **4**    judgment on every piece of the house except this one sheet.

12:22:38PM **5**    If it's more than that, then it's more than that.  But that's

12:22:42PM **6**    a way of dealing with it.  I mean, it's -- I've got to deal

12:22:45PM **7**    with it in some way.

12:22:47PM **8**         MR. DOYLE:  Sure.  Your Honor, I understand that

12:22:50PM **9**    completely.  And I think that's probably where we need to

12:22:55PM **10**   head.

12:22:55PM **11**        If there truly is a genuine issue of material fact,

12:22:59PM **12**   obviously, rule -- summary judgment is inappropriate and in

12:23:01PM **13**   these cases where we have proven the presence of their

12:23:04PM **14**   defective product in these homes the --

12:23:04PM **15**        THE COURT:  Well --

12:23:05PM **16**        MR. DOYLE:  -- my understanding of the way this has

12:23:08PM **17**   worked in the past and the adoption of the protocol by this

12:23:10PM **18**   Court would require, whether it's one sheet or one hundred --

12:23:13PM **19**   it would require -- it would require complete remediation --

12:23:15PM **20**        THE COURT:  But there's some issues, like, for

12:23:19PM **21**   example, we've had cases where somebody has installed one

12:23:23PM **22**   sheet of drywall in a carport outside of the house.  Now,

12:23:29PM **23**   it's not fair to make them pay for the whole house when the

12:23:36PM **24**   only thing is one sheet in an open-air garage or an open-air

12:23:39PM **25**   carport.  So, you know, that's the situation.  If it's -- if

MOTION TO DISMISS/STRIKE CERTAIN BENNETT CLAIMS

12:23:42PM  1   it's a picture that he took out of the carport or he took in,

12:23:46PM  2   you know, the garage because that's the only thing that

12:23:50PM  3   was -- that was mildewed, then your case is dismissed for the

12:23:56PM  4   house and you got a case for the garage.

12:24:00PM  5        MR. DOYLE:  Sure.  And I think that's something that

12:24:02PM  6   can be developed during discovery, you know.  These

12:24:05PM  7   depositions that they've now noticed I think will help flush

12:24:07PM  8   that out.

12:24:08PM  9        Thank you.

12:24:09PM  10        MR. DYSART:  And just very briefly, Your Honor, Jimmy

12:24:10PM  11   is right.  This is not a settlement claim.  This is in

12:24:13PM  12   litigation.  It's going to be plaintiffs' burden to prove

12:24:17PM  13   both liability and their damages.

12:24:18PM  14        And just, again, to harp back, if he can report to us

12:24:21PM  15   that everything in Brown Greer is all the evidence that his

12:24:24PM  16   clients have in consideration of their damages, then that

12:24:29PM  17   simplifies a lot of this thing where we have exhibits --

12:24:30PM  18        THE COURT:  Is that what your position is, you've

12:24:32PM  19   given everything?

12:24:34PM  20        MR. DOYLE:  We've given everything the plaintiffs

12:24:34PM  21   have in their possession right now.  There are some things --

12:24:39PM  22   based on what they filed here, we made them aware that the

12:24:42PM  23   defendants would like to have those items.  We've asked them

12:24:45PM  24   to go look for them.  If they have them, we're going to

12:24:49PM  25   provide them to the defendants.

MOTION TO DISMISS/STRIKE CERTAIN BENNETT CLAIMS

12:24:51PM 1        MR. DYSART:  For example, if there is a late

12:24:53PM 2   purchaser that purchased the property in 2013 or 2014 from

12:24:57PM 3   somebody that knew they had Chinese drywall, if there is an

12:25:01PM 4   assignment that's been provided in Brown Greer, has it?

12:25:03PM 5        THE COURT:  Let's do this.  Let's get this in

12:25:06PM 6   writing.  You write him saying whatever you have he's got.

12:25:09PM 7   Then I will freeze it and you can't produce any other

12:25:13PM 8   information.

12:25:15PM 9        MR. DYSART:  Understood.

12:25:16PM 10       THE COURT:  Then file a motion for summary judgment

12:25:18PM 11  in it.

12:25:19PM 12       MR. DYSART:  Your Honor, just to give you an example,

12:25:20PM 13  he spoke about, you know, boards and product ID.  So this is

12:25:25PM 14  one example and this is clients Van Pham and Bich Nguyen.

12:25:30PM 15  They're in Baton Rouge, Louisiana.  And so what we got is a

12:25:33PM 16  Plaintiff Fact Sheet that lists Exhibits 1 through 14 and

12:25:38PM 17  what we essentially have is one partial close-up photo of

12:25:43PM 18  what indicates what potentially may be a Knauf KPT board.

12:25:48PM 19  And other than that, the only other document in support of

12:25:51PM 20  the claim or the damages is just a spreadsheet of -- just a

12:25:54PM 21  listing of TVs and freezers and that sort of thing.  There's

12:25:57PM 22  no invoices.  There's no pictures.

12:26:01PM 23       MR. MILLER:  We got exhibit references with

12:26:04PM 24  nothing under the exhibit --

12:26:04PM 25       MR. DYSART:  And that's fine.  If there's nothing

MOTION TO DISMISS/STRIKE CERTAIN BENNETT CLAIMS

12:26:06PM   1   else, then we can go forward with depositions, and we'll do

12:26:11PM   2   that in depositions.  But, again, the way that the CMO is

12:26:12PM   3   scheduled and because of the short time frames, these are

12:26:15PM   4   things that we want to bring --

12:26:16PM   5        THE COURT:  No.  I'm glad you did.  Let's do it this

12:26:19PM   6   way too, that if you find other things in depositions that is

12:26:23PM   7   inconsistent with that, then it's a question of who pays for

12:26:26PM   8   the deposition and who pays for the cost of pursuing it and

12:26:31PM   9   that -- that is something that we can deal with.  But we've

12:26:37PM   10  got to get it in some fashion that I'm able to deal with it.

12:26:42PM   11       MR. MILLER:  Your Honor, it may be the case that in

12:26:44PM   12  some of these we might file summary judgments now.  They were

12:26:48PM   13  obligated under the Fact Sheet and the Profile Form to submit

12:26:52PM   14  information to establish liability and damages.  You know, I

12:26:55PM   15  don't want to see a Rule 56(f) saying:  We'll go take his

12:27:00PM   16  deposition.  He may bring more to his deposition.  I don't

12:27:03PM   17  think that's fair to us to have to incur that cost at this

12:27:06PM   18  point in time.  So we may file some now.  I just don't think

12:27:08PM   19  I want to see an 56(f).  We asked him again; well, maybe he

12:27:12PM   20  will bring it to his deposition.  I don't think that's a fair

12:27:14PM   21  response.

12:27:14PM   22       THE COURT:  The question then is, if it goes to the

12:27:17PM   23  deposition, the question is, who pays for it and who pays for

12:27:20PM   24  the deposition and the cost of counsel to go to the

12:27:23PM   25  deposition.

12:27:25PM  **1**     MR. DOYLE:  Sure.  And we can come up with some

12:27:28PM  **2** regime to have a cutoff date before the deposition's taken.

12:27:33PM  **3** I'm not too concerned about that.  We're going to get them

12:27:34PM  **4** everything we can.

12:27:35PM  **5**     I want to address this confusion about the Plaintiff

12:27:38PM  **6** Fact Sheet and the exhibit lists, you know, some of which

12:27:40PM  **7** have nothing behind it.  We made it plainly obvious.  Your

12:27:42PM  **8** Honor, if necessary, I'll attach one as an exemplar so you

12:27:47PM  **9** can understand what it is that we did for these Plaintiff

12:27:50PM  **10** Fact Sheets.

12:27:51PM  **11**     There's a form and we broke it into subgroups, you

12:27:56PM  **12** know, whether it was plaintiff ID -- product ID or if it was

12:28:00PM  **13** already remediated homes.  There is a whole section on where

12:28:06PM  **14** there were requests for production of documents and there

12:28:09PM  **15** were also questions or interrogatories related to that

12:28:11PM  **16** section.  And it's plainly obvious in the form that if there

12:28:14PM  **17** are any exhibits, you know, most of which are related to

12:28:19PM  **18** already remediated home claims, under that particular

12:28:22PM  **19** question, it says -- and one after another they're all

12:28:24PM  **20** numbered.  And it says under question, for instance, 25,

12:28:27PM  **21** Exhibit 1:  Attached hereto will be all documents responsive

12:28:32PM  **22** to this request.  And if they're -- if they didn't remediate

12:28:36PM  **23** it, they checked earlier that they did not remediate the

12:28:39PM  **24** home, obviously, they're not going to have anything to put

12:28:42PM  **25** behind Exhibit 15 in the Plaintiff Fact Sheets.

12:28:45PM  **1**    I don't know why there's any confusion.  If there was

12:28:47PM  **2**  personal property damage, a list of personal property damage

12:28:50PM  **3**  that they're going to testify to at their deposition and,

12:28:52PM  **4**  again, at trial about what it is that they lost as a result

12:28:56PM  **5**  of the drywall gases that have, you know, affected their home

12:29:01PM  **6**  and their health -- so I don't understand why there's any

12:29:04PM  **7**  confusion here but I would be happy to provide the Court with

12:29:07PM  **8**  one if it will be --

12:29:08PM  **9**    THE COURT:  I don't need it.  If you got a form that

12:29:11PM  **10**  doesn't supply information and you take the deposition and

12:29:16PM  **11**  the person comes to the deposition and says, "Oh, yeah.  I've

12:29:18PM  **12**  got additional material," then you need to let me know so

12:29:25PM  **13**  that I can shift costs of the deposition, shift costs for the

12:29:30PM  **14**  attorney having to go to the deposition.  That's one

12:29:35PM  **15**  situation.

12:29:35PM  **16**    Another situation is if a person says, "That's all I

12:29:39PM  **17**  have," the question is whether or not it's sufficient.

12:29:42PM  **18**  That's a motion for summary judgment, and I'll deal with it

12:29:46PM  **19**  on summary judgment.  So it's either cost or summary judgment

12:29:49PM  **20**  is the way we have to deal with it as I see it.

12:29:53PM  **21**    I would suggest to counsel though, particularly, you,

12:30:00PM  **22**  Jimmy, that you meet with Danny and look over what his

12:30:03PM  **23**  problem is on specific forms and either say that's it, that's

12:30:09PM  **24**  all I have, or give me a week or give me a day, and I'll ask

12:30:13PM  **25**  my client again on that particular and then write in that

MOTION TO DISMISS/STRIKE CERTAIN BENNETT CLAIMS

12:30:18PM 1   question Jimmy asked for one day on whatever it is, April or

12:30:23PM 2   May, whatever the date is today, and fill it in.  I mean,

12:30:29PM 3   that's some structure that we ought to be able to follow.

12:30:33PM 4          All right, guys.  Everybody go eat something.  Court

5   will stand in recess.  Thank you.

6                            * * * *

7          (WHEREUPON, the proceedings were adjourned.)

8                            * * * *

9                    REPORTER'S CERTIFICATE

10          I, Nichelle N. Drake, RPR, CRR, Official Court
Reporter, United States District Court, Eastern District of
11   Louisiana, do hereby certify that the foregoing is a true and
correct transcript, to the best of my ability and
12   understanding, from the record of the proceedings in the
above-entitled and numbered matter.

13

14          ___/s/ Nichelle N. Drake___
            Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25