Testimony of

Chuck Stefan
Vice-President
The Mitchell Company

Before the
Subcommittee on Administrative Oversight and the Courts
of the
U.S. Senate Committee on the Judiciary

Hearing on
"Leveling the Playing Field and Protecting Americans:
Holding Foreign Manufacturers Accountable"
Dirksen Office Building Room 226

May 19, 2009
10:00 AM

Submitted by:
Chuck Stefan
The Mitchell Company
P.O. Box 160306
Mobile, Al 36616
[an@mitchellcompany.com

*final version* [handwritten]

DEFENDANT'S EXHIBIT
4

MDL-2047 re Drywall - Mitchell
cb:600067

Chairman Whitehouse, Ranking Member Sessions, and members of the Subcommittee, thank you for allowing me the opportunity to share my experience with you this morning.

My name is Chuck Stefan and I'm one of the owners of The Mitchell Company. Mitchell builds homes in Alabama, Florida and Mississippi. Prior to the current housing crisis we were one of the top 100 single-family builders in the country.

My story today does not originate in Alabama, Florida, or Mississippi but in China and Germany. You see, we currently have 45 houses, including homes in Alabama and Florida, that have been positively identified as containing "Chinese Sheetrock" –the same defective Chinese-made drywall that has recently been in the news. This drywall emits corrosive gases that smell like rotten eggs and quickly damage copper piping and wiring.

We received our first complaints about this problem in 2008, when our customers (homeowners) complained of a "rotten egg" smell in their Mitchell homes. We also discovered that we were replacing the thin copper coils in the air handlers about once a year per house. Further investigation and a Wall Street Journal report confirmed that the smell and corrosion stemmed from the Chinese drywall.

This calamity greatly impacted our business and the homes of our customers. Little did we realize the unnecessary and unfair procedural hurdles we faced simply because the defective product had been manufactured abroad.

First, it was difficult to figure out where the sheetrock came from. Some pieces from our Alabama homes had "Knauf" stamped on the back, while others were simply stamped "Made in China" without any manufacturer designation.

In order to identify the manufacturer of the sheetrock from our Florida homes, we had to pay $2,300 simply to access shipping data from the Customs Department. We had to navigate through many different search terms and descriptions of the possible product, ranging from sheetrock, to drywall, to gypsum board. These searches, along with other information we are obtaining, will allow us to identify the manufacturer, but only after substantial time and expense. If the product had been properly marked, identification would have been as simple as reading the manufacturer's name on the product itself.

We have had a great deal of difficulty holding Knauf accountable through the US court system because the Hague Convention requires us to serve this company as an overseas defendant even though Knauf has extensive operations in the US, is familiar with US language and laws, and sends and receives federal express packages to and from the United States on a daily basis.

The rules vary by country, but under the Hague Convention, we had to translate all of the complaints into both Mandarin Chinese and German. The translators then have to send the complaints to the country involved and get an official there to serve them. We estimate that it will cost $2,100 for the German service and delay our case for an

MDL-2047 re Drywall - Mitchell
cb:600068

additional 12-16 weeks. Serving the two Chinese manufacturers will cost us $3,000 and could take as long as 6 to 8 months.

Unfortunately, all of these delays and expenses ARE especially harmful to our clients. One home had such a severe drywall problem that we had to replace the owner's washer, dryer, and refrigerator after the wiring corroded and ruined these appliances.

We have also relocated one homeowner over her concerns of living in an affected home, and we have offered to move another family to a different house in their subdivision.

As you can see, the lack of registration and identification of these imported products and the difficulties involved in serving a foreign manufacturer have made a challenging task even more daunting. Foreign manufacturers should not be allowed off the hook for harming U.S. consumers and businesses like ours, especially if they are conducting substantial business here in the U.S. If American businesses can't hold foreign manufacturers accountable, it hurts our bottom line in addition to harming US consumers and homeowners. I look forward to answering any questions you may have about my experience, and thank you again for allowing me the opportunity to testify this morning.

MDL-2047 re Drywall - Mitchell
cb:600069