IN THE CIRCUIT COURT OF ESCAMBIA COUNTY, FLORIDA

MINDY LISTER, et al.                            )
                                                )
          Plaintiffs,                           )
                                                )
vs.                                             )
                                                )
THE MITCHELL COMPANY, INC.,                     )
ABSHIELD, LLLP, CONSTRUCTION                    )
INDUSTRY SOLUTIONS, INC.,                       )   CIVIL ACTION NO: CV-2010-CA-1532
ROBERT RIFFE, QUALITY DESIGN &                  )   Section J
CONSTRUCTION, LLC, TAISHAN                      )
GYPSUM CO., LTD., TAI'AN TAISHAN                )
PLASTERBOARD CO., LTD., DEVON                   )
INTERNATIONAL INDUSTRIES, INC.,                 )
f/k/a DEVON INTERNATIONAL                       )
TRADING, INC., NORTH PACIFIC                    )
GROUP, INC., SMOKY MOUNTAIN                     )
MATERIALS, INC., d/b/a EMERALD                  )
COAST BUILDING MATERIALS and                    )
RIGHTWAY DRYWALL, INC.                          )

## THE MITCHELL COMPANY, INC.'S FIRST AMENDED CROSSCLAIMS

Defendant, The Mitchell Company, Inc. ("Mitchell") asserts the following as its first amended crossclaims against co-defendants Taishan Gypsum Co., Ltd., Tai'an Taishan Plasterboard Co., Ltd., Devon International Industries, Inc. f/k/a Devon International Trading, Inc., North Pacific Group, Inc., Smoky Mountain Materials, Inc. d/b/a Emerald Coast Building Materials, Rightway Drywall, Inc., AbShield, L.L.P., and Construction Industry Solutions, Inc.:

The Parties

    1.    Mitchell is an Alabama corporation with its principal place of business which does business in Escambia County, Florida.

    2.    Taishan Gypsum Co., Ltd., ("Taishan") is a Chinese company whose address is Dawenkou, Daiyue District, Shandong Province, China.

{M0072953.1}                                    1

DEFENDANT'S EXHIBIT

*13*

3. Tai'an Taishan Plasterboard Co., Ltd., ("Tai'an") is a Chinese company and a subsidiary of Taishan located in Tai'an City, China.

4. Taishan and Tai'an made and sold some of the drywall used in the house located at 1698 Brightleaf Circle, Escambia County, Florida ("the House").

5. Devon International Industries, Inc. f/k/a Devon International Trading, Inc. ("Devon") is a Pennsylvania corporation with a principal place of business in Pennsylvania. Devon purchased, imported, and sold some of the drywall used in the House.

6. North Pacific Group, Inc. ("North Pacific") is an Oregon corporation with a principal place of business in Oregon. North Pacific bought some of the drywall used in the House from Devon and sold it to Smoky Mountain Materials, Inc. d/b/a Emerald Coast Building Materials. ("Smoky Mountain")

7. Smoky Mountain is a Tennessee corporation with a principal place of business in Tennessee. Smoky Mountain bought some of the drywall used in the House from North Pacific and sold it to Rightway Drywall, Inc. ("Rightway") in Escambia County, Florida.

8. Rightway Drywall, Inc. ("Rightway Drywall") is a Georgia corporation with a principal place of business in Georgia. Rightway bought the drywall used in the House from Smoky Mountain and installed it in the House pursuant to a contract between Rightway and Mitchell.

9. AbShield, L.L.P. ("AbShield") is a Nevada limited liability company with a principal place of business in Florida.

CDW001124

10. Construction Industry Solutions, Inc. ("CIS") is a Florida corporation with a principal place of business in Florida.

11. [Omitted].

12. Robert Riffe ("Riffe") is the owner and principal of AbShield and CIS. His actions described herewith were on behalf of, and/or were ratified by, AbShield, and CIS.

13. At all relevant times: (a) Riffe has been an authorized representative of AbShield and CIS (b) AbShield has been an authorized representative of CIS, and (c) CIS has been an authorized representative of AbShield.

14. This Court has personal jurisdiction over all out-of-state defendants under multiple sections of Florida's "long arm" statute, Fla. Stat. § 48.193. The specific grounds for jurisdiction as to the crossclaim defendants are that the drywall products and AbShield products are alleged to have caused injury to persons or property in Florida, Fla. Stat. § 48.193. As strict products liability is a "tort action," arising from negligence Fla. Stat. § 48.193(1)(b) applies to Taishan, Tai'an, Devon, North Pacific, Smoky Mountain and Rightway. Fla. Stat. § 48.193(1)(g) applies to at least Smoky Mountain, and Rightway Drywall which failed to perform contracts in Florida. Fla. Stat. § 48.193(2) applies to all the crossclaim defendants which have engaged in substantial activities in Florida.

15. Venue is proper in Escambia County, Florida because the House is located in Escambia County, Florida, because the drywall was placed into commerce with the expectation it would be delivered to Escambia County, Florida, because the House was

CDW001125

bought and sold in Escambia County, Florida, and because all the acts involving the AbShield products and/or process and the House occurred in Escambia County, Florida.

Factual Allegations

16.    As documented by the Purchase Order attached as Exhibit 5, Mitchell contracted with Rightway to provide and install drywall in the House.

17.    Upon information and belief, Rightway purchased, directly and/or indirectly, gypsum drywall that was manufactured in China by Taishan and Tai'an, which was imported and/or sold and/or distributed by Devon, North Pacific, and Smoky Mountain.

18.    Some of the drywall in the House has a different composition than standard drywall and is unsuitable for its intended purposes.   Even when properly installed and used for its intended purpose the defective drywall chemically reacts with some metal surfaces in the House which has caused some air conditioning components to fail and has caused dusting of some metallic surfaces.  The Listers claim that the drywall has contributed to physical injuries and damage to personal property.

19.    As a direct consequence of the defective drywall in the House, Mitchell has replaced some of the Listers' personal property and has incurred other expenses . including the costs of temporary relocation of the Listers while remediation efforts were attempted.  Additional future expenses are possible, including the imposition of liability in this litigation, which Mitchell denies would be appropriate.

20.    ·  Taishan and Tai'an improperly designed, tested, manufactured, inspected, marketed, distributed, warranted, advertised, and sold the defective drywall which was installed in the House.

{M0072953.1}

4

21. Devon, North Pacific, and Smoky Mountain improperly tested, inspected, distributed, warranted, and sold the defective drywall which was installed in the House.

22. Rightway improperly tested, inspected, warranted, sold and installed the defective drywall in the House.

23. Taishan, Tai'an, Devon, North Pacific, Smoky Mountain, and Rightway knew, or should have known at or before the time they sold and/or bought and/or installed the drywall that it was defective as described above and would cause damage to property other than itself.

24. Taishan, Tai'an, Devon, North Pacific, Smoky Mountain, and Rightway concealed from Mitchell and/or failed to disclose to Mitchell that the drywall was defective and failed to remove it from the marketplace or take remedial action.

25. In April, 2009 Robert Riffe represented to Mitchell that AbShield had developed a product line and non-destructive method of application to resolve sulfur/aCIS emissions and neutralize and eliminate the adverse effects of defective Chinese drywall. Riffe represented that the end result of application of AbShield's products and process would be a stabilized interior environment equivalent to similar residences that had U.S. gypsum products compliant with ASTM standards.

26. Mitchell relayed the information provided to it by Riffe to Mindy Lister. Mindy Lister agreed to let AbShield and CIS apply the AbShield products to the House with knowledge that AbShield and CIS intended to use the expected positive outcome at the House for promotional purposes.

27. Mitchell agreed to pay for some of the indirect costs associated with the remediation effort of the House using AbShield products including the cost of labor

CDW001127

provided by independent contractors, and the cost of paying independent consultants retained by the Listers. Mitchell also incurred the cost of providing temporary housing to the Listers during the remediation effort.

28.     Mitchell did not pay AbShield, CIS or Riffe for their products or services, and Mitchell was not charged by AbShield, CIS, or Riffe for their products or services.

29.     Mitchell has no agreement with AbShield, CIS, or Riffe to share in either profits or losses relative to the AbShield products or their application.

30.     Riffe, AbShield, and CIS represented to Mitchell that the AbShield product as applied was meeting expectations by letter dated July 15, 2009. On September 8, 2009 Riffe, AbShield, and CIS stated that all tests of the House were good. On October 20, 2009 Riffe stated that testing of the House reflected that all indicators were positive and "the AbCoat system is performing as designed."

31.     [Omitted].

32.     The AbShield products, as installed, did not work as fast as AbShield, CIS and Riffe stated (before application) they would work, or (after application) had worked.

33.     The Listers claim that the AbShield products, as installed, did not work as effectively as AbShield, CIS, and Riffe stated they would work, or had worked.

34.     The Listers claim that the AbShield products, as installed, have damaged personal property, real property, and diminished the property value of the House.

35.     As a proximate result of the failure of the AbShield products to work as fast as claimed, Mitchell has been damaged by incurring the expense of housing the Listers for a longer period of time, and by paying for costs associated with the remediation effort.

CDW001128

**Count I: Contribution (Against Taishan, Tai'an, Devon, North Pacific, Smoky Mountain, Rightway, AbShield, and CIS)**

36.     Mitchell incorporates by reference the allegations of paragraphs 1-35.

37.     The Listers have alleged that Mitchell is negligent, which Mitchell denies. The Listers have alleged that Mitchell is vicariously liable for the alleged acts or omissions of "the Riffe defendants," which Mitchell also denies. If Mitchell is held jointly or severally liable to the Listers for the Listers' alleged damages then (a) as to damages prior to May 9, 2009 that liability would be common with liability of Taishan, Tai'an, Devon, North Pacific, Smoky Mountain, and/or Rightway. (b) As to damages since May 9, 2009 the liability would be common with liability of Taishan, Tia'an, Devon, North Pacific, Smoky Mountain, Rightway, AbShield, and CIS.

38.     Mitchell has already paid more than its fair share of any allegedly common liability as it is the only party that has incurred costs in connection with addressing the Listers' complaints.

39.     In the event Mitchell is held jointly or severally liable to the Listers, Mitchell is, therefore, entitled to contribution from each of the other named defendants with which it may be held jointly or severally liable.

**Count II: Strict Products Liability (Against Taishan, Tai'an, Devon, North Pacific, Smoky Mountain, and Rightway)**

40.     Mitchell incorporates by reference the allegations of paragraphs 1 -24.

41.     At all relevant times, Taishan and Tai'an were in the business of designing, testing, manufacturing, inspecting, marketing, distributing, advertising, and selling into the stream of commerce the defective drywall in the House.

CDW001129

42.   At all relevant times Devon, North Pacific, and Smoky Mountain were in the business of buying, inspecting, distributing, advertising, and selling into the stream of commerce the defective drywall in the House.

43.   At all relevant times Rightway was in the business of buying, inspecting, advertising, installing, and selling into the stream of commerce the defective drywall in the House.

44.   The drywall which Mitchell paid Rightway to provide and install in the House was, and is, defective and unfit for its intended use.

45.   Taishan, Tai'an, Devon, North Pacific, Smoky Mountain, and Rightway knew and expected that the defective drywall would reach, and it did reach, the House without any substantial change in its condition.

46.   Under normal use, the defective drywall in the House has failed to perform in accordance with the reasonable expectations of Mitchell or the Listers.

47.   The risks of harm posed by the failure of the drywall outweigh the benefits.

48.   Taishan and Tai'an in exercising reasonable care should have produced properly designed and manufactured drywall which does not contain the defects described in preceding paragraphs. Had they done so, it would have prevented the injury and damages suffered by Mitchell.

49.   Taishan's and Tai'an's defective design and/or manufacture of the drywall in the House and the sale into the stream of commerce of the defective drywall in the House by Taishan, Tai'an, Devon, North Pacific, Smoky Mountain, and Rightway proximately caused Mitchell to suffer damages in that Mitchell has incurred, continues to

CDW001130

incur, and may incur in the future in this litigation, the costs of remediating consequent property damages, replacing and/or repairing personal property of the Listers, providing replacement housing to the Listers, costs incurred in the remediation effort, and attorneys' fees.

50.     Taishan, Tai'an, Devon, North Pacific, Smoky Mountain, and Rightway knew or should have known of the risks posed by the defective drywall in the House to those who bought the drywall, and to those who bought the House in which it was installed, but they each failed to provide adequate warnings of those risks. Each of these defendants identified in this paragraph had a duty not to put on the market products that posed a serious danger without issuing warnings to Mitchell and/or the Listers.

51.     Taishan, Tai'an, Devon, North Pacific, Smoky Mountain, and Rightway breached their duty to warn by unreasonably failing to provide warnings concerning any of the facts alleged herein to Mitchell and/or the Listers.

52.     The failure to warn by Taishan, Tai'an, Devon, North Pacific, Smoky Mountain and Rightway proximately caused Mitchell to suffer damages in that Mitchell would not have purchased, or permitted Rightway to supply and install, the drywall in the House and would have had other drywall put in the House. Mitchell has incurred, continues to incur, and may incur in the future in this litigation, the costs of remediating consequent property damages, replacing and/or repairing personal property of the Listers, providing replacement housing to the Listers, costs incurred in the remediation effort, and attorneys' fees.

CDW001131

<u>Count III: Negligence (Against Defendants Taishan, Tai'an, Devon, North Pacific,
Smoky Mountain, and Rightway)</u>

53.     Mitchell incorporates by reference the allegations of paragraphs 1-24 and
41-52.

54.     Taishan, Tai'an, Devon, North Pacific, Smoky Mountain, and Rightway
each owed a duty to Mitchell to exercise reasonable and ordinary care in the formulation,
manufacture, testing, design, marketing, and sale of the drywall.  Rightway also owed a
duty to Mitchell to exercise reasonable and ordinary care in the installation of the
drywall.

55.     Taishan, Tai'an, Devon, North Pacific, Smoky Mountain, and Rightway
breached their duties to Mitchell by formulating, manufacturing, testing, designing,
marketing, selling, and/or installing (as alleged above as to each of these defendants) the
defective drywall in the House that is unfit for its intended purpose, by failing to warn of
the defective nature of the drywall, and by failing to promptly remove the defective
drywall from the market and / or to take other appropriate remedial action.

56.     Taishan, Tai'an, Devon International, North Pacific, Smoky Mountain,
and Rightway should also have known that the drywall was defective, could cause
physical damage to personal and other property in the house in which it was installed,
was not suitable for its intended use in construction, and otherwise was not as warranted
and represented.

57.     Taishan, Tai'an, Devon, North Pacific, Smoky Mountain, and Rightway
each had superior knowledge of the composition and defective nature of the drywall as
compared to Mitchell.  Taishan, Tai'an, Devon, North Pacific, Smoky Mountain, and
Rightway knew or reasonably should have known that the defective drywall could cause

CDW001132

physical damage to personal and real property in the houses in which it was installed, could require repair or replacement of personal and other property in the houses in which it was installed, and could inflict significant losses on Mitchell as the homebuilder.

58.     Mitchell has sustained actual damages as a direct and proximate result of the negligence of Taishan, Tai'an, Devon, North Pacific, Smoky Mountain, and Rightway in that it has incurred, continues to incur, and may incur in the future in this litigation, the costs of remediating consequent property damages, replacing and/or repairing personal property of the Listers, providing replacement housing to the Listers, labor costs incurred in the remediation effort, and attorneys' fees.

Count IV: Breach of Implied Warranty (Against Smoky Mountain, and Rightway)

59.     Mitchell incorporates by reference the allegations of paragraphs 1-24 and 41-52.

60.     Smoky Mountain, and Rightway are merchants of drywall.

61.     Smoky Mountain, and Rightway impliedly warranted that the drywall in the House was merchantable and reasonably fit for the ordinary purpose for which drywall is used.

62.     Mitchell is an intended third party beneficiary of the warranties given by Smoky Mountain to Rightway through the sale and resale of the defective drywall in the House.   Smoky Mountain delivered the defective drywall to the property then owned by Mitchell, and placed it inside the structure of the house which was then under construction.   Mitchell is the direct recipient of warranties by Rightway.

CDW001133

63. Smoky Mountain, and Rightway breached their implied warranties of merchantability by selling the defective drywall in the House which is not reasonably fit for its ordinary purpose.

64. The defective drywall in the House has, to the extent it may be proven by the Listers, caused damage to personal and other property in the House, and has caused personal injury.

65. Smoky Mountain, and Rightway had notice, or knowledge, of the defective drywall on a timely basis, but have failed to repair or replace the drywall in the House.

66. As a result of the breaches of the implied warranty of merchantability by Smoky Mountain, and Rightway, Mitchell has been damaged. These damages include costs of remediating, consequent property damages, replacing and/or repairing personal property of the Listers, providing replacement housing to the Listers, costs incurred in the remediation effort, and attorneys fees.

Count V: Breach of Express Warranty (Against Taishan, Tai'an, Smoky Mountain, and Rightway)

67. Mitchell incorporates by reference the allegations of paragraphs 1-24 and 41-52.

68. Taishan, Tai'an, Smoky Mountain, and Rightway expressly affirmed that the drywall in the House was gypsum drywall and that it met or exceeded ASTM standards. These are express warranties.

69. Mitchell is an intended third party beneficiary of the warranties given by Smoky Mountain to Rightway through the sale and resale of the defective drywall in the House. Smoky Mountain delivered the defective drywall to the property then owned by

CDW001134

Mitchell, and placed it inside the structure of the house which was then under construction. Mitchell is the direct recipient of warranties by Taishan, Tai'an and Rightway. Rightway dealt directly with Mitchell. Taishan and Tai'an affixed to the defective drywall express warranties with the expectation that those warranties would be provided to the end user of the drywall. Taishan, Tai'an, Smoky Mountain, and Rightway breached these express warranties by selling drywall in the House that varied substantially from domestic drywall in that the drywall in the House has a different chemical composition and has the defects described in the preceding paragraphs, as well as to the extent that it is proven that the drywall in the House does not meet ASTM standards as alleged by the Listers.

70.    The defective drywall in the House has, to the extent it may be proven by the Listers caused damage to personal and other property in the House, and has caused personal injury.

71.    Taishan, Tai'an, Smoky Mountain and Rightway had notice or knowledge of the defective drywall on a timely basis, but have failed to repair or replace the drywall in the House.

72.    As a result of the breaches of warranty by Taishan, Tai'an, Smoky Mountain, and Rightway, Mitchell has been damaged. These damages include costs of remediating, consequent property damages, replacing, and/or repairing personal property of the Listers, providing replacement housing to the Listers, costs incurred in the remediation effort, and attorneys fees.

CDW001135

<u>Count VI: Indemnity (Against Taishan, Tai'an, Devon, North Pacific, Smoky Mountain, and Rightway)</u>

73.    Mitchell incorporates by reference the allegations of paragraphs 1-24, 41-52, 54-58, 60-66, and 68-72.

74.    Taishan, Tai'an, Devon, North Pacific, Smoky Mountain, and Rightway should be declared financially responsible for replacing the defective drywall in the House, and for remediation of all damage to other property resulting from the defective drywall, as well as for all other direct and consequential damages sustained by Mitchell.

75.    Mitchell did not manufacture, market, distribute, inspect, or install the defective drywall in the House. If Mitchell is liable to the Listers (which Mitchell denies) as to any cause of action concerning the drywall, that liability is vicarious, constructive, or derivative liability for the acts and omissions of Taishan, Tai'an, Devon, North Pacific, Smoky Mountain, and Rightway.

76.    If Mitchell is liable to the Listers as to any cause of action concerning the drywall (which Mitchell denies), such liability is imposed without fault.

77.    If Mitchell is found liable vicariously, constructively, or derivatively for the acts and omission of Taishan, Tai'an, Devon, North Pacific, Smoky Mountain, and/or Rightway it is because a "special relationship" will have been proven to exist.

78.    Taishan, Tai'an , Devon, North Pacific, Smoky Mountain, and Rightway each owed Mitchell duties under contract and/or express or implied warranty as alleged above.

79.    Mitchell's damages for which it is entitled to indemnification include, but are not limited to, the costs expended of repairing or replacing the Listers' property, the cost of providing a temporary replacement house to the Listers, costs incurred in the

CDW001136

remediation effort, as well as any amounts for which Mitchell is adjudicated to be liable to the plaintiffs, and the costs and attorneys' fees incurred by Mitchell.

<u>Count VII: Strict Products Liability (Against AbShield and CIS)</u>

80.     Mitchell incorporates by reference the allegations of paragraphs 1-35.

81.     AbShield and CIS are the manufacturers, wholesalers, suppliers, marketers, installers, and/or retailers of the AbShield products in the House.

82.     Mitchell was specifically targeted by AbShield and CIS as a potential consumer of their products.

83.     The AbShield products were used in the House for the purpose which they were intended to be used and in the manner dictated by AbShield and CIS.

84.     The AbShield products were in the same condition when applied in the House that they were when in they left the hands of AbShield and CIS.

85     The AbShield products are defective and unfit for their intended use, as they have not worked as quickly or as effectively as AbShield and CIS stated (before application) they would, or (after application) they did.

86.     AbShield and CIS are strictly liable in tort for defective product on account of manufacturing defect, in that the AbShield products do not function according to the reasonable expectations of Mitchell or the Listers (such expectations being based on the statements of AbShield and CIS) and do not work for their intended purpose.

87.     The risks of harm posed by the failure of the AbShield products outweighs the benefits.

CDW001137

88.     AbShield and CIS in exercising reasonable care should have produced and applied a product which would perform as they stated it would. Had they done so, it would have prevented the injuries and damages suffered by Mitchell.

89.     AbShield and CIS's defective design, manufacture, and/or application of the AbShield products in the House and the placing of those products in the stream of commerce proximately caused Mitchell to suffer damages in that Mitchell has incurred, continues to incur, and may incur in the future in this litigation, the costs of remediating consequent property damages, providing replacement housing to the Listers, costs incurred in the remediation effort, and attorneys' fees.

90.     AbShield and CIS knew or should have known of the risks posed by the failure to the AbShield products to perform as they stated it would, but each failed to provide adequate warning of those risks.

91.     The failure to warn by AbShield and CIS proximately caused Mitchell to suffer damages in that Mitchell would not have incurred costs associated with the attempted remediation. Mitchell has incurred, continues to incur, and may incur in the future in this litigation, the costs of remediating consequent property damages, providing replacement housing to the Listers, costs incurred in the remediation effort, and attorneys' fees.

92.     AbShield and CIS are all strictly liable in tort for defective product on account of failure to warn of a latent, material defect which could not be reasonably discovered by the Listers or Mitchell.

CDW001138

93.     The Listers have alleged that they have suffered damages to other physical property and consequential damages due to defects in the AbShield products and, allegedly, needing to remediate both the unknown AbShield chemicals and the Chinese drywall.

Count VIII: Negligence (Against AbShield and CIS)

94.     Mitchell incorporates by reference the allegations of paragraphs 1-35 and 81-93.

95.     Abshield and CIS each owed a duty of care to Mitchell in manufacturing, processing, distributing, delivering, supplying, inspecting, marketing, and installing the AbShield products in the House including a duty to assure that the AbShield products would perform as intended and would not cause damage to persons or property.

96.     Abshield and CIS breached duties to Mitchell (a) by failing to exercise ordinary care in the manufacturing, processing, distributing, delivering, supplying, inspecting, marketing, and installation of the AbShield products in that they knew or should have known that their products, as they applied them, did not function as intended, (b) by failing to warn that the AbShield products did not work as fast or effectively as stated, (c) by failing to promptly take action to render their products effective, or to remove their products or take other appropriate remedial action, (d) by designing a chemical remediation protocol that does not perform as claimed, (e) by marketing a chemical remediation protocol that does not perform as claimed, and (f) by failing to design adequate tests to detect whether the chemical remediation protocol sued in the House would perform as claimed.

CDW001139

97.   The negligence of Abshield and CIS was the proximate cause of damages, injuries, harm, and economic loss to Mitchell which it suffered and will continue to suffer.

Count IX: Breach of Implied Warranty (Against Abshield and CIS)

98.   Mitchell incorporates by reference the allegations of paragraphs 1-35.

99.   Abshield and CIS are merchants of AbShield products.  The AbShield products installed in the House were used in the intended manner.

100.  Abshield and CIS impliedly warranted to Mitchell and the Listers that the AbShield products were merchantable and reasonably for their ordinary purpose which was to neutralize the adverse effects of defective Chinese drywall.

101   Mitchell was an intended third party beneficiary of the warranties given by Abshield and CIS to the Listers.

102.  AbShield and CIS implicitly warranted that the AbShield products would work, were working, and/or had worked in the House by: (a) inspecting the House, testing the House, monitoring the House, and advising Mitchell and the Listers that the AbShield products had worked as intended and that its test results showed that the process had worked; and (b) by assuming responsibility for the outcome of the process.

103.  AbShield and CIS made implied warranties that (a) their products would be fit for their intended use of restoring the interior of the House to the same condition it would be in if it had standard drywall, and (b) that their products would be merchantable.

104.  Abshield and CIS had notice, or knowledge, on a timely basis, that the AbShield products they installed had not performed as intended.

105.  Abshield and CIS have not fulfilled their warranties.

CDW001140

106. Mitchell has been damaged as a proximate result of the breaches of implied warranty.

107. Abshield and CIS are liable for breach of implied warranty.

Count X: Breach of Express Warranty (Against Abshield and CIS)

108. Mitchell incorporates by reference the allegations of paragraphs 1-35.

109. AbShield, CIS, and Riffe extended express warranties to Mitchell, specifically by representing: (a) That the AbShield products would neutralize the results of off-gassing from the drywall; and (b) that the AbShield products were working as intended; and; (c) by extending an express written warranty for AbShield products.

110. Mitchell agreed with the Listers' decision to remediate the House with the AbShield products, and incurred costs associated with the remediation.

111. Abshield and CIS have not fulfilled their warranties.

112. Mitchell has been damaged as a proximate result of the breaches of express warranty.

113. Abshield and CIS are liable for breach of express warranty.

Count XI: Breach of Warranty of Fitness For A Specific Purpose (Against Defendants Abshield and CIS)

114. Mitchell incorporates by reference the allegations of paragraphs 1-35.

115. Abshield and CIS knew that Mitchell would incur some costs associated with the remediation effort at the House if the Listers accepted the proposal to apply the AbShield products.

CDW001141

116.   Abshield and CIS proposed application of the AbShield products to the House for the specific purpose of neutralizing the adverse effects of the defective drywall in the House.

117.   Mitchell agreed with the Listers' decision to remediate with the AbShield products, and incurred costs associated with the remediation.

118.   The AbShield products have not fulfilled their specific purpose.

119.   Abshield and CIS have not fulfilled their warranties.

120.   Mitchell has been damaged as a proximate result of the breaches of express warranty.

121.   Abshield and CIS are liable for breach of express warranty.

Count XII: Indemnity (Against Defendants Abshield and CIS)

122.   Mitchell incorporates by reference the allegations of paragraphs 1-24, 81-93, 95-97, 99-107, 109-113, and 115-121.

123.   Abshield and CIS should be declared financially responsible for replacing the AbShield products that have not performed as represented, for restoring the interior environment of the House to one equivalent to a similar home constructed with standard drywall, for the expense of the prolonged remediation effort, as well as for other direct and consequential damages sustained by Mitchell.

124.   Mitchell did not design, manufacture, market, distribute, inspect, or install the AbShield products.  If Mitchell is liable to the Listers (which Mitchell denies) as to any cause of action concerning the AbShield products, that liability is vicarious, constructive, or destructive liability for the acts and omissions of Abshield and CIS.

{M0072953.1}                                  20

CDW001142

125.   If Mitchell is liable to the Listers as to any cause of action concerning the AbShield products (which Mitchell denies), such liability is imposed without fault.

126.   If Mitchell is found liable vicariously, constructively, or derivatively for the acts and omission of AbShield and/or CIS it is because a "special relationship" will have been proven to exist.

127.   AbShield and/or CIS each owed Mitchell duties under contract and/or express or implied warranty as alleged above.

128.   Mitchell's damages for which it is entitled to indemnification include, but are not limited to, the costs expended of repairing or replacing the Listers' property, the cost of providing a temporary replacement house to the Listers', costs incurred in the remediation effort, as well as any amounts for which Mitchell is adjudicated to be liable to the plaintiffs, and the costs and attorneys' fees incurred by Mitchell.

Wherefore:   Mitchell demands judgment against the cross-claim defendants for the compensatory damages stated herein; pre-judgment interest at the legal rate; and such other relief as it is entitled to.

IAN D. ROSENTHAL
Florida Bar #105244
Attorney for Defendant The Mitchell
Company, Inc.

OF COUNSEL:

CABANISS, JOHNSTON,
GARDNER,
 DUMAS & O'NEAL LLP
Attorneys at Law
P.O. Box 2906
Mobile, Alabama 36652
(251) 415-7300 - Phone
(251) 415-7350 – Fax

{M0072953.1}

21

## CERITFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been

served via e-mail on this 2nd day of June, 2011, to:

William F. Cash, III
LEVIN, PAPANTONIO, THOMAS,
MITCHELL, ECHSNER, RAFFERTY &
PROCTOR, P.A.
316 South Baylen Street Suite 600
Pensacola, Florida 32502-5996
bcash@levinlaw.com
CJohnson@levinlaw.com
*Attorney for Plaintiffs*

Mitchell D. Adler
GREENSPOON, MARDER, P.A.
Trade Centre South, Suite 700
100 West Cypress Creek Road
Fort Lauderdale, Florida 33309-2140
mitchell.adler@gmlaw.com
rebeca.morales@gmlaw.com
*Attorney for Defendants Abshield, LLLP,*
*Construction Industry Solutions, Inc., and*
*Robert Riffe*

S. Greg Burge
BURR & FORMAN
420 North 20th Street, Suite 3400
Birmingham, Alabama 35203
gburge@burr.com
*Attorney for Rightway Drywall, Inc.*

Ganesh Chatani
BANKER LOPEZ GASSLER, P.C.
111 N. Calhoun St.
Tallahassee, FL 32301
gchatani@bankerlopez.com

Frank H. Gassler
BANKER LOPEZ GASSLER, P.C.
501 E. Kennedy Blvd.
Suite 1500
Tampa, FL 33602
fgassler@bankerlopez.com
*Attorneys for Devon International Group*

Elizabeth J. Ferry
Edward J. Briscoe
FOWLER, WHITE, BURNETT
Espirito Santo Plaza
1395 Brickell Avenue, 14th Floor
Miami, Florida 33131
eferry@fowler-white.com
ebriscoe@fowler-white.com
aareco@fowler-white.com
SHoag@fowler-white.com
*Attorneys for Smoky Mountain*

Stephen M. Cozart
Karl W. Labertew
KUBICKI DRAPER, P.C.
125 W. Romana Street, Suite 550
Pensacola, Florida 32502
smc@kubickidraper.com
kwl@kubickidraper.com
msd@kubickidraper.com
paula.dunne@kubickidraper.com
*Attorneys for North Pacific Group*

IAN D. ROSENTHAL

CDW001144

Florida Bar #105244
Attorney for Defendant The Mitchell
Company, Inc.

OF COUNSEL:

CABANISS, JOHNSTON, GARDNER,
  DUMAS & O'NEAL LLP
Attorneys at Law
P.O. Box 2906
Mobile, Alabama  36652
(251) 415-7300 - Phone
(251) 415-7350 – Fax

{M0072953.1}

23

CDW001145